```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3   ****************************************************************

 4   IN RE:  OIL SPILL BY THE
     OIL RIG DEEPWATER HORIZON
 5   IN THE GULF OF MEXICO ON
     APRIL 20, 2010
 6
                              CIVIL ACTION NO. 10-MDL-2179 "J"
 7                            NEW ORLEANS, LOUISIANA
                              THURSDAY, MAY 26, 2011, 1:30 P.M.
 8

 9   THIS DOCUMENT RELATES TO
     ALL ACTIONS
10
     ****************************************************************
11
           TRANSCRIPT OF DISCOVERY STATUS CONFERENCE PROCEEDINGS
12            HEARD BEFORE THE HONORABLE SALLY SHUSHAN
                 UNITED STATES MAGISTRATE JUDGE
13

14   APPEARANCES:

15   FOR THE PLAINTIFFS'
     LIAISON COUNSEL:          DOMENGEAUX WRIGHT ROY & EDWARDS
16                             BY:  JAMES P. ROY, ESQUIRE
                                    WILLIAM F. LARGE, ESQUIRE
17                             P. O. BOX 3668
                               556 JEFFERSON STREET
18                             LAFAYETTE, LA  70502

19
                               HERMAN HERMAN KATZ & COTLAR
20                             BY:  STEPHEN J. HERMAN, ESQUIRE
                               820 O'KEEFE AVENUE
21                             NEW ORLEANS, LA  70113

22

23   FOR THE PLAINTIFFS:       CUNNINGHAM BOUNDS
                               BY:  ROBERT T. CUNNINGHAM, ESQUIRE
24                             1601 DAUPHIN STREET
                               MOBILE, AL  36604
25
```

1  APPEARANCES CONTINUED:

2

3                              LEWIS, KULLMAN, STERBCOW & ABRAMSON
                               BY:  PAUL M. STERBCOW, ESQUIRE
4                              PAN AMERICAN LIFE BUILDING
                               601 POYDRAS STREET, SUITE 2615
5                              NEW ORLEANS, LA  70130

6
                               BRUNO & BRUNO
7                              BY:  JOSEPH M. BRUNO, ESQUIRE
                               855 BARONNE STREET
8                              NEW ORLEANS, LA  70113

9

10 FOR THE FEDERAL
   GOVERNMENT INTERESTS:       U.S. DEPARTMENT OF JUSTICE
11                             TORTS BRANCH, CIVIL DIVISION
                               BY:  R. MICHAEL UNDERHILL, ESQUIRE
12                                  SARAH HIMMELHOCH, ESQUIRE
                               450 GOLDEN GATE AVENUE
13                             7TH FLOOR, ROOM 5395
                               SAN FRANCISCO, CA  94102
14

15 FOR THE UNITED STATES
   OF AMERICA:                 ENVIRONMENTAL ENFORCEMENT SECTION
16                             U.S. DEPARTMENT OF JUSTICE
                               BY:  STEVEN O'ROURKE, ESQUIRE
17                             P.O. BOX 7611
                               WASHINGTON, DC  20044
18

19 FOR STATE INTERESTS:        ALABAMA ATTORNEY GENERAL'S OFFICE
                               BY:  COREY L. MAZE, ESQUIRE
20                             500 DEXTER AVENUE
                               MONTGOMERY, AL  36130
21

22

23

24

25

```
 1  APPEARANCES CONTINUED:

 2


 3  FOR TRANSOCEAN HOLDINGS
    LLC, TRANSOCEAN
 4  OFFSHORE DEEPWATER
    DRILLING INC., AND
 5  TRANSOCEAN DEEPWATER
    INC.:                       FRILOT
 6                              BY:   KERRY J. MILLER, ESQUIRE
                                ENERGY CENTRE, 36TH FLOOR
 7                              1100 POYDRAS STREET
                                NEW ORLEANS, LA  70163
 8

 9                              ROYSTON RAYZOR
                                BY:  JOHN M. ELSLEY, ESQUIRE
10                              PENNZOIL PLACE
                                711 LOUISIANA STREET, SUITE 500
11                              HOUSTON, TX  77002

12

13  FOR BP AMERICA INC.,
    BP AMERICA PRODUCTION
14  COMPANY, BP COMPANY
    NORTH AMERICA INC.,
15  BP CORPORATION NORTH
    AMERICA INC.,
16  BP EXPLORATION &
    PRODUCTION INC.,
17  BP HOLDINGS NORTH
    AMERICA LIMITED,
18  BP PRODUCTS NORTH
    AMERICA INC.:               KIRKLAND & ELLIS
19                              BY:   J. ANDREW LANGAN, ESQUIRE
                                      RYAN S. BABIUCH, ESQUIRE
20                                    TIMOTHY E. DUFFY, ESQUIRE
                                300 N. LASALLE
21                              CHICAGO, IL  60654

22                              COVINGTON & BURLING
23                              BY:  DAVID B. GOODWIN, ESQUIRE
                                ONE FRONT STREET
24                              SAN FRANCISCO, CA  04111

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR CAMERON INTERNATIONAL
      CORPORATION:                 STONE PIGMAN WALTHER WITTMANN
 4                                 BY:  CARMELITE M. BERTAUT, ESQUIRE
                                   546 CARONDELET STREET
 5                                 NEW ORLEANS, LA 70130

 6

 7    FOR HALLIBURTON
      ENERGY SERVICES, INC.:   GODWIN RONQUILLO
                                   BY:  DONALD E. GODWIN, ESQUIRE
 8                                      JENNY L. MARTINEZ, ESQUIRE
                                        STEFANIE K. MAJOR, ESQUIRE
 9                                 1201 ELM STREET, SUITE 1700
                                   DALLAS, TX  75270
10

11                                 GODWIN RONQUILLO
                                   BY:  R. ALAN YORK, ESQUIRE
12                                      GAVIN HILL, ESQUIRE
                                   1331 LAMAR, SUITE 1665
13                                 HOUSTON, TX  77010

14
      FOR ANADARKO
15    PETROLEUM CORPORATION,
      ANADARKO E&P COMPANY LP,
16    MOEX USA CORPORATION,
      AND MOEX OFFSHORE 2007
17    LLC:                         KUCHLER POLK SCHELL
                                   WEINER & RICHESON
18                                 BY:  DEBORAH D. KUCHLER, ESQUIRE
                                   1615 POYDRAS STREET, SUITE 1300
19                                 NEW ORLEANS, LA  70112

20
                                   BINGHAM MCCUTCHEN
21                                 BY:  WARREN A. FITCH, ESQUIRE
                                        DAVID B. SALMONS, ESQUIRE
22                                 2020 K STREET, NW
                                   WASHINGTON, DC  20006
23

24                                 BINGHAM MCCUTCHEN
                                   BY:  JAMES J. DRAGNA, ESQUIRE
25                                 355 SOUTH GRAND AVENUE, SUITE 4400
                                   LOS ANGELES, CA  90071
```

```
 1   APPEARANCES CONTINUED:

 2

 3                              REED SMITH
                               BY:  JOHN D. SHUGRUE, ESQUIRE
 4                             10 SOUTH WACKER DRIVE, 40TH FLOOR
                               CHICAGO, IL  60606
 5

 6   FOR M-I L.L.C.:           MORGAN, LEWIS & BOCKIUS
                               BY:  DENISE SCOFIELD, ESQUIRE
 7                                  JAMES B. TARTER, ESQUIRE
                               1000 LOUISIANA STREET, SUITE 4000
 8                             HOUSTON, TX  77002

 9

10   FOR MARINE SPILL
     RESPONSE CORPORATION:     BLANK ROME
11                             BY:  ALAN M. WEIGEL, ESQUIRE
                               THE CHRYSLER BUILDING
12                             405 LEXINGTON AVENUE
                               NEW YORK, NY  10174
13

14   FOR O'BRIEN'S RESPONSE
     MANAGEMENT, INC.,
15   SEACOR HOLDINGS, INC.,
     SEACOR OFFSHORE LLC,
16   SEACOR MARINE, LLC,
     SEACOR WORLDWIDE, INC.,
17   SEACOR MARINE, INC.,
     SEACOR MARINE
18   INTERNATIONAL, INC.,
     AND SIEMENS FINANCIAL,
19   INC.:                     WEIL GOTSHAL & MANGES
                               BY:  MICHAEL J. LYLE, ESQUIRE
20                             1300 I STREET, NW, SUITE 900
                               WASHINGTON, DC  20005
21

22                             WEIL GOTSHAL & MANGES
                               BY:  THEODORE E. TSEKERIDES, ESQUIRE
23                             767 FIFTH AVENUE
                               NEW YORK, NY  10153
24

25
```

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR WEATHERFORD U.S.,
     L.P.:                    JONES WALKER
 4                            BY:  WILLIAM C. BALDWIN, ESQUIRE
                              PLACE ST. CHARLES
 5                            201 ST. CHARLES AVENUE
                              NEW ORLEANS, LA  70170

 6

 7   FOR TRANSOCEAN
     EXCESS UNDERWRITERS:     PHELPS DUNBAR
 8                            BY:  EVANS M. MCLEOD, ESQUIRE
                              CANAL PLACE
 9                            365 CANAL STREET, SUITE 2000
                              NEW ORLEANS, LA  70130

10

11   FOR MDL 2185:            METHOFF LAW FIRM
                              BY:  WILLIAM STRADLEY, ESQUIRE
12                            3450 ONE ALLEN CENTER
                              500 DALLAS STREET
13                            HOUSTON, TX  77002

14

15   ALSO PRESENT:           VINCENT MORGAN, ESQUIRE
                              SHAUN CLARKE, ESQUIRE
16                            BRIAN KAVANAUGH, ESQUIRE
                              ALLAN MOORE, ESQUIRE

17

18                            KYLE MORAN, ESQUIRE
                              DAVID POTE, ESQUIRE
19                            MICHAEL SAMPLE, ESQUIRE
                              DAVID CANNON, ESQUIRE

20

21                            MITCHELL LANSDEN, ESQUIRE
                              BEN GOODHUE, ESQUIRE
22                            MICHAEL MONICO, ESQUIRE
                              MICHAEL MALONEY, ESQUIRE

23

24

25
```

1    APPEARANCES CONTINUED:

2

3    OFFICIAL COURT REPORTER:       CATHY PEPPER, CRR, RMR, CCR
                                    CERTIFIED REALTIME REPORTER
4                                   500 POYDRAS STREET, ROOM HB406
                                    NEW ORLEANS, LA   70130
5                                   (504) 589-7779
                                    Cathy_Pepper@laed.uscourts.gov
6

     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
7    PRODUCED BY COMPUTER.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**I N D E X**

AGENDA ITEMS                                                    PAGE

DISPUTE AROSE IN A DEPOSITION THIS MORNING REGARDING      11
MS. SKELTON..........................................

FIFTH AMENDMENT WITNESSES ISSUE.......................    19

INSURANCE ISSUE.......................................    27

SETTLEMENT CONFIDENTIALITY ORDER......................    53

ANADARKO'S LETTER REGARDING THE PRESERVATION OF          53
SAMPLES..............................................

JUNE 20TH DEADLINE FOR COMPLETING RESPONSES TO           53
DISCOVERY RELATING TO THE EVENT......................

PROPOSAL FROM COREY MAZE RELATIVE TO DISCOVERY           54
PROPOUNDED TO THE STATES.............................

JUNE AND JULY DEPOSITIONS.............................    54

MR. ALBERTY...........................................    54

MR. ALBERTIN..........................................    54

ROBERT NEAL...........................................    55

MR. JOHN WRIGHT.......................................    55

PAT O'BRYAN...........................................    63

MR. LINDNER...........................................    64

ADDITIONAL DEPOSITIONS BEFORE JULY 31ST...............    64

EDDY REDD.............................................    64

1   MR. MOREL............................................   65

2   MR. HAFLE...........................................   65

3   WITNESSES THAT WE NEED TO SCHEDULE OR HOPE TO SCHEDULE   66

4   PRIOR TO JULY 31ST..................................

5   ANGEL RODRIGUEZ.....................................   66

6   BARBARA YALMAZ......................................   66

7   MR. SANNON..........................................   67

8   RICHARD DUBOIS......................................   67

9   PRIORITY REQUESTS FOR ADDITIONAL TIME...............   68

10  CATHLEENIA WILLIS...................................   68

11  POST-JULY 31ST DEPOSITIONS FOR PHASE ONE............   69

12  TO ADD PEOPLE, WHY DON'T WE SET A DEADLINE OF A WEEK   69

13  FROM TOMORROW, JUNE 3RD.............................

14  JUNE 10TH TO OBJECT TO ANY FURTHER ADDITIONS........   69

15  DEFAULT FOR THESE WITNESSES TO BE ONE DAY AND NOT      69

16  TWO-DAY DEPOSITIONS.................................

17  SCHEDULING THESE DEPOSITIONS COMMENCING AFTER THE      69

18  LABOR DAY BREAK.....................................

19  BP/MOEX SETTLEMENT PRODUCTION ISSUE.................   72

20  ORDER OF PRESENTATION OF EVIDENCE...................   73

21  DEPOSITION CUTS.....................................   74

22  MASTER WITNESS LIST.................................   75

23  CAMERON'S REQUEST FOR ADDITIONS.....................   76

24  DEPOSITIONS OF FACT WITNESSES REQUIRED FOR PREPARATION  83

25  OF EXPERT REPORTS FOR PHASE TWO.....................

1   NOT NECESSARILY REQUIRED TO BE PRESENT FOR THESE        83

2   STATUS CONFERENCES......................................

3   EXPERT REPORTS.........................................  84

4   NEXT FRIDAY, JUNE 3RD, THE DRY RUN.....................  85

5   WE HAVE NO CONFERENCE THE 3RD OF JUNE, OTHER THAN THE    85

6   DRY RUN CONFERENCE.....................................

7   CLAIMANTS TO THE GCCF..................................  86

8   STATES CAN OFFER 30 MINUTES FOR MR. ROTH, 20 MINUTES    87

9   FOR MR. AMBROSE AND 20 MINUTES FOR MR. HAYE...........

10  MEDICAL RECORDS........................................  88

11  DEADLINE FOR HALLIBURTON TO RESPOND TO THE PSC'S        89

12  ROLLING DOCUMENT PRODUCTION REQUEST....................

13  LONDON DRY RUN, JUNE 3, 2011, 8:00 A.M.................  91

14  NEXT CONFERENCE, FRIDAY, JUNE 17, 2011, 9:30 A.M.......  91

15

16

17

18

19

20

21

22

23

24

25

1                    **P-R-O-C-E-E-D-I-N-G-S**

2                  THURSDAY, MAY 26, 2011

3                A F T E R N O O N   S E S S I O N

4                  (COURT CALLED TO ORDER)

5

6

7        THE DEPUTY CLERK:  All rise.

8        THE COURT:  Hi, everybody.  Have a seat, please.

9        VOICES:  Good afternoon, Your Honor.

10       THE COURT:  Have we got the phone participants?

11            Ladies and gentlemen on the phone, can you hear us?

12       VOICES:  Yes, we can hear.

13       THE COURT:  Wonderful.  We're getting ready to roll.

14       VOICES:  We're ready.

15       THE COURT:  Now, there must be a reason Mr. Sterbcow is

16  already at the podium, so let's find out what that is.

17       MR. STERBCOW:  I wish it was that my boat is waiting to

18  take me away, but it's not.

19       THE COURT:  I wish it was mine, as well.

20       MR. STERBCOW:  A dispute arose in a deposition this

21  morning.  Rather than -- we figured we would just deal with it

22  right now.

23            Apparently -- Joe Bruno is here.  He's taking the

24  deposition for the PSC.  Apparently, during the course of PSC

25  questioning, Ms. Skelton was instructed by her criminal counsel

1   not to answer a question on the basis of privilege and relevance,

2   which, obviously, we have a problem with.  Joe can describe it

3   more fully, but I wanted to just set the stage so we can handle

4   it right now.

5           THE COURT:  Thank you.

6                Good morning.  Oh, good afternoon.

7           MR. BRUNO:  Good afternoon, Judge.

8                I think Paul laid it out pretty clearly, Judge.  In

9   a very real sense, it doesn't even matter what the question is

10  because it's inappropriate to instruct a witness not to answer

11  based upon prejudice or relevance.  I'm happy to disclose the

12  question.  It's not terribly hard.

13          THE COURT:  Let's hear it.

14          MR. BRUNO:  I asked Ms. Skelton if anybody at BP,

15  excluding anyone who was a lawyer, had advised her that she

16  needed counsel in connection with these depositions.

17               At that point -- yesterday, counsel said that he

18  had instructed her not to answer, but he would think about it.

19  So, as I was drawing to a close of my time, I said, I need to get

20  my answer so I can, frankly, close.

21               That's where we are, Judge.  I'll invite opposing

22  counsel to respond.

23          THE COURT:  Who is opposing counsel?

24          MR. BRUNO:  It's the criminal counsel.  I forgot his

25  name.

1          MR. MONICO:  I'm here.  My name is Michael Monico,

2    Your Honor.

3          THE COURT:  Hello, Michael.  How are you?

4          MR. MONICO:  Hi, Your Honor, I'm doing fine.

5               I have the question right here.  I'll read it.

6               By Mr. Bruno:  "Let me ask you this, and this is

7    not intended to provoke" -- it looks like it's either --

8          THE REPORTER:  You need to read slowly.  Spell your last

9    name for me.

10         MR. MONICO:  I apologize.  M-O-N-I-C-O.

11              I'll read it again.  Examination of Mr. Bruno.

12              Question:  "Let me ask you this, and this is not

13   intended to provoke" -- and then the transcript said "out ran," I

14   think it's either "outrage" or "a rant," I'm not sure -- by

15   counsel -- oh, outrage -- "it's not intended to provoke outrage

16   by counsel, but did any employee of BP, okay, who is not a

17   lawyer, suggest to you that you ought to" -- I'm missing a word.

18   The court reporter is going to come and read this.

19         MR. STERBCOW:  It's a rough transcript, Judge.

20         THE DEPOSITION REPORTER:  -- "ought to have private

21   counsel."

22         MR. MONICO:  -- "ought to have private counsel at their

23   deposition?"

24              "I object, and I instruct the witness not to

25   answer."

1           Your Honor, it seems to me this goes right to the

2    heart of my client's decision to seek an attorney, and I object

3    to the questioning.  It seems to have -- it goes directly to her

4    decision-making regarding seeking counsel.  That's why I

5    objected, Your Honor.

6           THE COURT:  I think the question asked whether anyone

7    other than an attorney suggested.  That's just a question of

8    fact, it seems to me.  She can answer yes or no.  If it's yes, I

9    believe the follow-up question would be, who suggested it.  I

10   don't believe that the identification of the person or persons

11   would be privileged.  So I'm not really sure I understand the

12   basis of the objection.

13          MR. MONICO:  The objection, Judge, is I believe it goes

14   to why she's seeking -- why she sought counsel.  I don't think

15   her decision-making regarding why she sought counsel is open to

16   discussion or open for interrogation at this deposition; but,

17   obviously, I'll follow Your Honor's advice.

18           Your Honor, is it your suggestion, then, that they

19   should be -- that she should answer the question, did anyone

20   suggest that you have counsel, and then who that person is; is

21   that what Your Honor's ruling is?

22          THE COURT:  Right.  If it was somebody that was in-house

23   or an attorney with BP, I think the question is off limits, and I

24   think Mr. Bruno agrees with that.

25          MR. BRUNO:  Correct.

1    THE COURT:  So, in other words, if somebody that is an

2    attorney instructed her or advised her that she should seek legal

3    advice, I think that's off limits.  If, however, a coemployee

4    might have suggested it to her, then I think that's a factual

5    matter that Mr. Bruno may inquire into.

6        MR. MONICO:  I think part of the problem is, Your Honor,

7    that the lawyer -- the nonlawyers who spoke to her, spoke to her,

8    I believe, on the basis of what they heard lawyers for BP tell

9    them.  But I will follow Your Honor's advice.

10       THE COURT:  Remember that if it was lawyers who rendered

11   the advice, or if such advice was given by lawyers, then I think

12   that information you can probably instruct her not to answer;

13   but, I think Mr. Bruno is just trying to find out if anyone other

14   than lawyers suggested that to her.

15       MR. MONICO:  I understand that, Judge, but let me ask

16   you this:  What if those people -- her testimony will be people

17   told her that lawyers for BP told them that they have a right to

18   have personal counsel?

19       THE COURT:  I think that's probably fair game.

20       MR. MONICO:  Okay.  Thank you, Your Honor.

21       MR. LANCASTER:  Your Honor, Walter Lancaster for BP.  I

22   just need some additional guidance.

23       THE REPORTER:  I'm sorry, I can't hear you.  Could you

24   get closer to the phone and speak up.

25       THE COURT:  Go ahead.  I'm sorry.

1          MR. LANCASTER:  Walter Lancaster for BP.  Can you hear

2    me?

3          THE COURT:  Yes, I can.

4          MR. LANCASTER:  My overarching concern -- because,

5    obviously, this may come up in other depositions -- I joined in

6    the objection because there is no relevance for this question and

7    any response, and at trial it would never come into evidence.

8              There is the potential for the witness, potential

9    for embarrassment or for some improper motive or interpretation

10   of her decision to hire counsel.

11             One of my concerns is that the PSC has been very

12   rigorous in contesting confidentiality designations.  I would ask

13   the Court to consider that if you do allow these questions to go

14   forward, that this is actually an area that should be considered

15   as being confidential because I don't think that there is any

16   purpose for this Q&A to find itself into the public domain, and

17   the dangers of Ms. Skelton reading it and thinking, well, somehow

18   need to hire a lawyer, and they start thinking [inaudible], you

19   know, there would be no purpose whatsoever.

20         THE COURT:  Mr. Bruno, do you want to address that?

21   That's different than a privilege issue.

22         MR. BRUNO:  As I understand it, the rule is that

23   everything is confidential until it's declassified --

24   de-designated.

25         THE COURT:  It is for ten days.

1          MR. BRUNO:  So it's already confidential, Judge.

2               As I said, all I know is the rules of engagement in

3    a deposition, there is a legal basis for it.  In fairness to me,

4    I will ask more than just who.  I want to know what they told

5    this person, obviously.

6          THE COURT:  But let's not stretch it out.  This is not

7    an important area of inquiry, and I think you agree with that.

8          MR. BRUNO:  It depends, Judge.  I mean, if there is a

9    pattern of practice here -- again, for my record here, every

10   single witness from BP has their own private counsel.  We find it

11   difficult to believe that every single person at BP could be

12   liable for prosecution.  We think that there is a potential that

13   it might influence a person's testimony.

14              So I'll be quite candid in my reason for asking

15   that question.  I'm not just throwing darts.

16         THE COURT:  Okay.

17         MR. BRUNO:  Thank you, Judge.

18         THE COURT:  We are going to go ahead and allow the

19   questioning, Gentlemen, but I caution Mr. Bruno that we don't

20   want to spend a lot of time on the area, a limited amount of

21   questioning into whether anyone other than attorneys so advised;

22   if so, who they were; and, briefly what the advice was should do

23   it for you.

24         MR. BRUNO:  Thank you, Judge.  Thank you very much.

25   Thank you for accommodating me.

```
 1              THE COURT:  Thank you, guys.
 2                    Now, Mr. Godwin, why were you late for the
 3     conference?
 4              MR. GODWIN:  I was having lunch with Jim Roy and
 5     Steve Herman.
 6              THE COURT:  I ask Mr. Roy the question, as well.  Did
 7     you all have fine dining today?
 8              MR. GODWIN:  We did over at the Cafe on the Park, one of
 9     your favorites.
10              (WHEREUPON, at this point in the proceedings, there was
11     an off-the-record discussion.)
12              MR. LANGAN:  In terms of sequencing, I know we have
13     insurance counsel for a couple parties here, I thought it would
14     be logical, and maybe then the Fifth Amendment thing, because
15     then I think we may be able to release a bunch of people if we
16     knock those two out.
17              THE COURT:  Wouldn't that be grand.
18              MR. LANGAN:  It won't be me, but it will accommodate
19     others, so just a thought.
20              THE COURT:  Do you want to do insurance before
21     Fifth Amendment?
22              MR. LANGAN:  You're the judge.
23              MR. CLARKE:  Your Honor, if I get a vote, I'll go with
24     Fifth Amendment.
25              THE COURT:  We'll give you a vote, and we'll go with
```

1    Fifth Amendment first.

2              Anybody who came in late, particularly Mr. Godwin,

3    if you all would sign the sheet, please, to let us know you were

4    here; although, I guess the record will reflect both you and

5    Mr. Roy are here.

6              MR. GODWIN:  Do I get to buy the drinks at

7    Swizzle Stick, Judge?

8              THE COURT:  This afternoon would be a good afternoon.

9              Do we have the phone?  Phone participants, are you

10   on?

11             VOICES:  Yes, ma'am.

12             THE COURT:  Sorry about that.  I don't know what

13   happened; but, anyway, we're back.

14             We're going to go forward on the agenda with the

15   Fifth Amendment witnesses issue.  Let's see.  We had Deb's

16   suggestion relative to the Fifth Amendment.  We had the response

17   by Andy.  Then, we had Shaun Clarke e-mailing us telling us what

18   his thoughts were.

19             Come on up, Shaun.

20             MR. CLARKE:  Your Honor, I think I could title this as a

21   motion to save everybody hundreds of thousands to millions of

22   dollars plus several days of time.  The fact finder here is

23   Judge Barbier --

24             THE COURT:  But it might not be in a later stage.

25             MR. CLARKE:  That's true.  The Court at that time could

1   decide to reopen the issue, in other words, to actually have

2   videotaped depositions.

3          But, frankly, is Judge Barbier going to be any more

4   influenced by a person sitting there at a videotaped deposition

5   than if we simply, by declaration, the parties submit their

6   questions, the witnesses state a Fifth Amendment response, and

7   then, frankly, we could avoid this whole process until and unless

8   there is a jury trial?

9          So I would suggest that that would serve everyone's

10  legitimate purpose, which is to ask questions from which an

11  adverse inference can be drawn.  So that's my first point.

12         In the event we decide not to save us all millions

13  of dollars and several days of testimony, you know, I'm not aware

14  that any court has ever issued a dogmatic word response that a

15  witness is required to use when invoking the Fifth.  Indeed, I

16  think there may actually be First Amendment concerns there.

17         But I do believe if everybody simply submitted

18  their questions in writing -- and I know Mr. Morel and

19  Mr. Hafle's lawyers have authorized me to speak for them -- we

20  will invoke the Fifth Amendment privilege, and then everyone will

21  have a record from which adverse inferences that they want to use

22  can be drawn.

23         THE COURT:  I think what you propose, Shaun, is

24  reasonable; however, I have some parties who believe that the

25  caselaw requires that they ask the question and that the Fifth be

1    invoked.

2            MR. CLARKE:  I agree.

3            THE COURT:  So they want to go through the entire

4    script, and they want to video it so they don't have to go back

5    later and redo.

6            MR. CLARKE:  Well, the thing is, they have to write the

7    script anyway.

8            THE COURT:  Yes, they do.

9            MR. CLARKE:  So if they write the script, submit it to

10   us, and we invoke the Fifth, then they have a

11   question-by-question response that Judge Barbier can use at the

12   February trial.

13           If, after the February trial, there is going to be

14   a jury trial, and there is a legitimate reason to videotape it,

15   then so be it, but they don't have to redo anything because they

16   will have written the script.  All we'll have to do is go through

17   the videotaping that, frankly, we haven't had to do already,

18   because, again, Judge Barbier is not going to be influenced by a

19   videotape versus a written invocation.

20           THE COURT:  No, and I would suggest to you that

21   Judge Barbier will probably read the transcript and not watch the

22   video.

23           MR. CLARKE:  Exactly.  You know, we'll be happy if they

24   submit them in writing.  I mean, we can give a blanket

25   declaration, or we can say in response to each question; but, it

1   sure would save us all a lot of time and loosen up a deposition

2   schedule where people are scrambling to get this done.

3           THE COURT:  Let's hear from Mr. Sterbcow.

4           MR. LANGAN:  Your Honor, just for the record, BP

5   supports Mr. Clark's initiative in this regard, and we stand

6   behind it.

7           THE COURT:  I have no strong feelings one way or the

8   other, but I think Mr. Sterbcow does.

9           MR. STERBCOW:  Your Honor, on behalf of the PSC, we

10  would like to keep the depositions as noticed, video depositions

11  where we sit across from a deponent on video.  Whether

12  Judge Barbier looks at it or not, we have taken every deposition

13  we've taken so far by video.  There is no reason to except these

14  from that pattern.

15           In addition, it was my understanding that these

16  depositions are not being taken now, and will be taken in July

17  because there is a possibility that the Fifth Amendment will not

18  be invoked.

19           THE COURT:  True.

20           MR. STERBCOW:  So, if we cancel this now, and then we're

21  told in July, well, now they are ready to talk, from a logistics

22  standpoint we're going to have a very difficult time getting

23  these back up and running as video depositions as previously

24  noticed.  In fact, it will be impossible.

25           Then, we run into an expert cutoff date problem,

1   etcetera.  I don't know if experts will use these or not.  Maybe

2   they will.  I'm very loathed to change the system, in addition to

3   the fact that the code allows us to take these depositions in the

4   manner that we deem is appropriate.

5          THE COURT:  Shaun, come on up.

6          MR. CLARKE:  Well, let me respond point by point

7   because, respectively, being loathed to change it isn't a legal

8   argument.

9               Number one, no reason to except these.  Yes, there

10  is.  These are different.  Every deposition taken of a fact

11  witness is taken for the purpose under Rule 26 or 27 of gathering

12  evidence or that will lead to admissible evidence.  These

13  depositions are for no purpose other than to create an adverse

14  inference because witnesses, quite frankly, can't testify due to

15  the battalion of prosecutors across the street.

16         THE COURT:  Upstairs.

17         MR. CLARKE:  Certainly, in terms of it may not be

18  invoked, I agree with Mr. Sterbcow.  I don't think there is any

19  reason to take these off the calendar now.

20             But, if, in fact, in July the people are going to

21  invoke, then it would save us all a lot of time and money to

22  simply do it in writing.

23             Again, the Court can easily order that if, in fact,

24  it proceeds past the bench trial, that then videotaped

25  depositions can be taken.

1          Again, it seems to me this serves everyone's

2   purpose.  Sure, it saves my client the, frankly, humiliating

3   exercise of having to sit there being asked questions that he

4   would love to answer but cannot; and, it would give them,

5   legitimately, what they want, adverse inferences to be drawn.

6          THE COURT:  Thank you, Shaun.

7          Does anybody else want to chime in on this?

8          MR. ROY:  Your Honor, Jim Roy.

9          I would like to add one thing, if I could.  Paul

10  tells me it has not yet been mentioned, but, as the MDL

11  court-appointed PSC, we have an obligation to prepare testimony

12  for all potential cases that have common threads, for ultimately

13  when those that go back to their home turf court get tried.

14          I know you talked about potential jury trials.

15  It's our obligation to do that now, not waiting for them to do it

16  individually later.

17          THE COURT:  Yes, I think that's an overriding concern is

18  that we don't know --

19          I'm sorry, Deb.

20          MS. KUCHLER:  That's okay.

21          THE COURT:  I'll get to you in a minute.

22          -- that we don't know what's going to happen down

23  the road.  We've got some attorneys who are clamoring for their

24  cases to go back to Texas for jury trial, etcetera, etcetera.  We

25  are trying to do everything once.

1              Shaun, I'm not trying to infringe on anyone's right

2    to invoke the Fifth Amendment.  The particular situation that we

3    are trying to deal with is a witness who spent a good five or so

4    minutes at the beginning of the deposition invoking the Fifth in

5    every form you could imagine, and then, for every answer to every

6    question, repeating that five-minute response.

7              That's the situation we're trying to get to, which

8    is some kind of shortened, abbreviated answer to the individual

9    questions, with as much as you want to put at the front end, the

10   front end being applicable to every answer.

11             So I'm not trying to infringe on anybody's right,

12   including First Amendment rights, which is the first time I've

13   thought about First Amendment rights.  But I think that we are,

14   by allowing that introductory statement, affording the

15   First Amendment opportunity to say anything and everything the

16   witness wants to say.

17             If, on the other hand, you want to shorten the

18   statement and just say, Fifth Amendment, great.  If you want to

19   shorten it further and go to Fifth, that's fine.  I'm not trying

20   to syllable-by-syllable micromanage.  We are just trying to speed

21   the depositions up.

22        MR. CLARKE:  Well, Your Honor, again, I submit that we

23   can do that without having to videotape them; but, if I lose on

24   that point, here is what I'd propose.

25             The parties submit in advance to the

1    Fifth Amendment deponents the questions they want to ask.  The

2    Court orders that we meet and confer to see if we have any

3    objections, and that can be worked out.  We also meet and confer

4    to see if we can agree on the way in which the privilege will be

5    invoked.

6              Quite frankly, I'm not -- my client is not going to

7    give a five-minute speech.  I observed a portion of that

8    deposition.  But my client will be happy to say, same answer.

9              So if we get the questions in advance, we meet and

10   confer, we may then have no objections on the record, and we can

11   quickly go through this and they can get a clean record without

12   even objection from defense counsel.  So that's what I'd propose.

13             I do understand they have a legitimate reason to

14   want to have adverse inferences drawn; but, I think that can be

15   done in an expeditious way if we meet and confer in advance.

16   Then, again, they can have a record without a single objection,

17   at least from the witness' counsel.

18             THE COURT:  Any objection to -- yes, there is an

19   objection.

20             MR. STERBCOW:  Your Honor, I don't know if -- I don't --

21   the PSC's position is simple.  We want to take these depositions

22   in the same manner that we've taken every other deposition.  We

23   see nothing different about these.

24             I understand counsel's position in terms of

25   expediting or avoiding objections; but, the fact of the matter

 1    is, the PSC has an obligation to preserve this record in full

 2    for -- as Jim said, for us and future proceedings, including

 3    potential future jury trials.  We don't want to submit any

 4    questions in advance to any party for any reason, and these

 5    depositions and these questions are no exception.

 6              MR. CLARKE:  Judge, respectfully, these depositions are

 7    fundamentally different.  These are not depositions from which

 8    evidence is going to be gathered.  They are not depositions where

 9    there will be follow-up questions based on what the witness says,

10    because the witness is going to say, Fifth Amendment.

11              You know, there is no legitimate reason to not

12    simply give the questions in advance.  Other than, we want to

13    preserve the record, I don't -- we're preserving the record with

14    what I've proposed.

15              So I submit that, again, it's expeditious, it's

16    economic, and, frankly, it's fairer to the people who,

17    unfortunately, are in a situation where the President of the

18    United States has sent an army down to find a crime, so they

19    can't testify.

20              THE COURT:  All right.  Thank you, I appreciate it,

21    Mr. Clarke.  We'll take that under advisement and issue a ruling

22    shortly.  Thanks.

23              MR. CLARKE:  Thank you, Your Honor.

24              THE COURT:  You're off the hook for the afternoon.

25              Andy, you wanted to go to the insurance issue next,

1  right?

2          MR. LANGAN:  Your Honor, if I could -- I'm sorry,

3  Mr. Godwin.

4          MR. GODWIN:  I was just going to ask, Your Honor, we had

5  invited Mr. Arbuckle, the attorney by Mr. John Wright, to join by

6  phone.  I don't know if he is on the phone; but, if he is, you

7  may want to get that out of the way.  If not, we'll take it up

8  later.

9          THE COURT:  All right.

10              Mr. Arbuckle, are you on the phone?

11          MR. GODWIN:  We provided him the information, so we'll

12  just take it up in due course, Judge.

13          THE COURT:  Great.  Thank you.

14          MR. GODWIN:  Thank you, Your Honor.

15          MR. LANGAN:  Your Honor, this is David Goodwin, my

16  colleague from the Covington firm who is BP's coverage counsel.

17  I know there are other coverage lawyers here, as well.

18          THE COURT:  How are you today?

19          MR. GOODWIN:  Okay.  Thank you very much, Your Honor.

20              I have an extra O over my namesake over there,

21  although occasionally Judge Barbier's law clerk sends me e-mails

22  that --

23          THE COURT:  You probably don't eat as well as

24  Mr. Godwin.

25          MR. GODWIN:  It's my day in the barrel.

1        MR. GOODWIN:  I had a tuna sandwich for lunch.

2        THE COURT:  I ate a Subway sandwich for lunch.

3        MR. GOODWIN:  So, Your Honor, let me give you one second

4   about what the insurance cases are, and then talk for another

5   minute or so about the process, and then get to the meat of it.

6        The drilling contract between BP and Transocean

7   requires Transocean to name BP as an additional insured on a

8   variety of insurance policies that Transocean purchased.

9   Transocean, for the liability coverage, purchased a billion

10  dollars of insurance, and BP is an additional insured, it

11  contends, on that billion dollars of insurance.

12        750 million of the billion filed two different

13  lawsuits against BP in Houston.  They filed in Houston because

14  the insurance policy says that the sole forum for resolution of

15  the dispute shall be the courts of the State of Texas, and that

16  Texas law governs.  The JPML then transferred the cases,

17  nonetheless, to this Court, which -- and so it's now here.

18        The complaints make the following allegation.  The

19  insurers allege that the coverage that they provide to BP is

20  identical to the hold harmless that Transocean gave to BP in the

21  drilling contract, which is basically -- it involves many things,

22  but the principal one is for personal injury to Transocean

23  employees, and the insurers seek a declaration that they provide

24  no coverage for any pollution-related liabilities that BP may

25  face.  BP counterclaimed for a declaration of coverage, and then

1   other people were brought in; but, that's how they started.

2           So we've had a number of discussions with counsel

3   for the bulk of the insurers, everyone from 50 million to

4   750 million, which we generally call insurers of Lloyds insurers;

5   although, there are actually 35 separate insurers.

6           In addition, there is a primary insurer, which is

7   an insurance company that's owned by Transocean, and it's called

8   Ranger Insurance Company.  They're represented separately by

9   Mr. Maloney, who, I believe, is in the courtroom.

10          We have, through these scheduling discussions,

11  managed to get close on quite a number of things.  I will hand

12  Your Honor before I sit down a chart that we prepared -- I should

13  say a nonargumentative chart that just simply says issue, BP's

14  position, insurer's position, so that you have something to go

15  by.

16          I think the other thing that, I must confess, that

17  neither side did, which we will rectify, is to give Your Honor a

18  Word copy of the proposed scheduling orders, because I think we

19  both sent PDFs, for which I apologize on behalf of both sides.

20          So many things we're in agreement on, but I would

21  like to highlight three areas where there are disagreements.  The

22  first area is that BP would like to get on with this case.  It

23  thinks that the declaration that the insurers seek in their

24  complaints fail as a matter of law.

25          There is a Texas Supreme Court decision from 2009,

 1   I believe, and a Fifth Circuit case from the same era, but that

 2   both, BP's submits -- I'm not going to argue the merits, but

 3   submits dispose of the declaration that the insurers seek.

 4          So what BP proposes is to file that motion two

 5   weeks from now and let it be heard by Judge Barbier this summer.

 6   If we're successful and the complaint is eliminated, then what

 7   will be left will be BP's counterclaim and some related claims.

 8          The insurers say the motion should not be filed

 9   till the end of September, and there should be a 30-day, 30-day,

10   30-day briefing schedule, which gets us into December.

11   Presumably, there would be a hearing at some point thereafter,

12   which may, because of the schedule, likely be January, which is

13   when Judge Barbier is preparing for the February 27th trial.  As

14   a result, it may take -- I imagine he's probably got things that

15   are more pressing than deciding the motion for judgment on the

16   pleadings; whereas, if we presented it to him in August, his

17   schedule might be a little freer.  So that's issue one.

18          Issue two has to do with the scope of discovery in

19   the insurance cases.  One thing that we're very sensitive to is

20   all of the work that Your Honor has put into regulating

21   discovery.  I've only attended two of these status conferences,

22   but I've seen the way the depositions go and how Your Honor

23   monitors everything.

24          The problem that we identified and have discussed

25   with the insurers and have been unable to delineate is, could the

1    discovery in the insurance cases be used to get a second bite of

2    the apple beyond the discovery that Your Honor has been

3    monitoring.

4            For example, if a BP witness were deposed, could

5    the witness then be questioned on the same issues that would be

6    fair game for discovery that's pending right now?  If these

7    depositions occur in September, October or November, and people

8    think, well, gosh, I wish I had asked Mr. Smith this thing back

9    in June, can we basically evade all of the restrictions on

10   discovery that Your Honor has put into effect for the insurance

11   cases?

12           So what BP has proposed is that discovery in the

13   insurance cases be limited to insurance subjects defined very

14   carefully, when was the insurance policy issued, did you have

15   negotiations with the underwriter, what was your claim

16   submission, what's the reinsurance like, you know, things that

17   insurance people do.  So that's issue number two.

18           Issue number three are some limits on the amount of

19   discovery.  This is quite straightforward.  What BP proposes is

20   to start with fairly circumscribed limits in discovery,

21   25 interrogatories and 30 document requests, and do it per side.

22   Insurers plus Transocean on one side; BP, MOEX and Anadarko on

23   the other side.  Each side gets that amount.  If we need more, we

24   come back to Your Honor.

25           The insurers say, no, no, let's go by the

1    Federal Rules.  What that is, by way of example, as I understand

2    it, is, for example, 25 interrogatories per party; but, since

3    there are 35 general liability insurers, 13 marine package

4    insurers in Transocean, that gets me to 1,225 interrogatories.

5             So that's why we propose it be by side and we take

6    it in stages.  If, after we do the first 25, everyone says, we

7    need more, and we can't stipulate to it, we come back and

8    Your Honor decides it.

9             So those are the broad issues.

10            As I mentioned, I have a chart that we prepared.

11   I'm trying to see whoever I can hand it to.  If I may approach.

12   Thank you.

13            THE COURT:  Great.

14            MR. GOODWIN:  I don't mean to go over this at all.  It's

15   a simply an item-by-item comparison of the two proposals, again,

16   with no argument.

17            THE COURT:  Good.

18            MR. GOODWIN:  I thought it might be helpful for

19   Your Honor to have for reference.  Those are -- that's our basic

20   points.  I don't know if Your Honor has any --

21            THE COURT:  No, I really don't.  Let's hear from Marty,

22   and then we'll see where we are at that point.

23            MR. MCLEOD:  Good morning, Judge.  Marty McLeod for

24   Transocean's excess underwriters.  I've got Kyle Moran, my law

25   partner, here, as well; John Elsley, for Transocean; and,

1    Mike Maloney, for Ranger; so, they may want to speak separately.

2              As we see this, there is really -- in the context

3    of the scheduling order, there is really just one issue, and it's

4    a timing issue.  We all know this case really has two sides.

5    It's the personal injury and death and the pollution claims side,

6    and then there's what's going to happen between Halliburton, BP,

7    Cameron on the contracts.  So those are the two issues.  The AI

8    part that we're here litigating over is a small part of the

9    contract issue.

10             Early on in the case, Transocean wrote a letter to

11   BP and said, look, we've got a drilling contract.  The drilling

12   contract says you've got to indemnify us for any pollution below

13   the waterline, basic stuff like in every other drilling contract.

14             Rather than step up to the plate and respond

15   affirmatively to that demand, BP has said no.  Richard Godfrey,

16   who is not here, wrote a letter in July of 2010, and said, oh,

17   thank you for your demand for indemnity, but we can't respond.

18   We think the focus in this case needs to be on handling the

19   personal injury and death claims.  We think the focus in the case

20   needs to be on handling the pollution claims.  At an appropriate

21   time, we'll look at the indemnity and the contracts and we'll

22   work that out.  That makes sense on its face.

23             Then, what they also said, though, was, and by the

24   way, on this indemnity issue, Transocean had some contractual

25   obligations, to provide a safe workplace, those types of things,

 1    and we think that that might have amounted to a breach of

 2    contract.  So there might be a breach of contract, and so,

 3    because of that breach of contract, the indemnity obligations may

 4    not be enforceable.  That's their position.  I'm not saying

 5    that's right, but that's what BP's stated position is.

 6              They also went on to say, Judge, that, by the way,

 7    we also think Transocean may have been grossly negligent, we

 8    don't know, and that might affect the drilling contract and the

 9    interpretation of the drilling contract.

10              Again, I'm not agreeing with that, but that's their

11    position; breach of contract or gross negligence, and that might

12    affect the drilling contract and how the terms are enforced.

13        If you take BP, what they say is true, then what is good

14    for the goose is also good for the gander, because what would

15    happen would be is, if, for some reason, BP breached the

16    contract, well, BP was grossly negligent.  Well, then what does

17    that mean?  Assuming that that would invalidate indemnity

18    provisions, it could invalidate other provisions, as well,

19    including whether or not they are entitled to additional insured

20    status under our policies at all.

21              So what we're trying to communicate is, look, you

22    know, the focus of the case is on the personal injury and death,

23    pollution; resolve that, fine.  At some point, the parties are

24    going to either litigate or settle the contract claims, and why

25    not go ahead and resolve that; and, then, when you want to get to

1  the insurance coverage cases after that's been decided, so that

2  you can have the full picture, fair enough.  If that were

3  tomorrow, we would be ready to hear motions on it tomorrow.

4          But, unfortunately, there is a process.  Just as

5  the Court has gone through the process of one trial, two trials

6  in the three-phrase process, we think that the correct approach

7  is to resolve those issues, the contract issues, and then see how

8  they affect the AI, because they could, if you take BP at their

9  word.

10          THE COURT:  Yes.

11          MR. MCLEOD:  So that's really the core of the issue,

12  what's the best way to handle it.  We think our position is the

13  best way to handle it, decide the contract issues.

14          THE COURT:  More generally, though, I think that if you

15  can bring up a motion for judgment on the pleadings, and if the

16  moving party is correct, that's the way to go.  Isn't that just

17  generally how you look at things?

18          MR. MCLEOD:  Absolutely.  Assuming that you get to the

19  first step, that they are even an AI, as required by the drilling

20  contract.

21          THE COURT:  Correct.

22          MR. MCLEOD:  If you look at what BP says very carefully,

23  they are talking about a judgment on the pleadings or partial

24  summary judgment, so they are going to want to try to introduce

25  the drilling contract, and they want to limit the scope of the

1  discovery just to what favors them and not to what also might

2  favor us.

3          So that's the issue, which is that they want to -- they

4  don't want to respond to Transocean's indemnity demand for the

5  case, but, on the flip side of the coin, they are walking the

6  tight rope and saying, look at this issue in a vacuum, we want

7  your entire tower of coverage, which is not fair.

8          THE COURT:  So you don't anticipate a straight-up motion

9  for judgment on the pleadings?

10         MR. MCLEOD:  If they want to file a motion for judgment

11 on the pleadings or a motion to dismiss, they are entitled to do

12 that.  We would just say that just do that after the time to

13 answer pleadings, file counterclaims, those type things are done.

14         We don't object in concept to a motion to dismiss

15 or a motion for judgment on the pleadings.  They are entitled to

16 that.  But if you start getting into evidentiary issues, we think

17 the correct approach is to let the contract issues be decided,

18 and then decide this issue in that context, because it could

19 affect it if you take BP at their own word.

20         THE COURT:  Okay.

21         MR. MCLEOD:  The other part is, in terms of discovery,

22 look, these parties have been working hard.  I've been in some of

23 these conferences.  We're not going to want to take any

24 deposition that's been taken again.  We just had a concern the

25 way they tried to limit the insurance specific.

 1              We haven't even done initial disclosures to each

 2    other in the case; so, our concept is, let's do initial

 3    disclosures, let's see who needs to be deposed.  We're not going

 4    to depose anybody who's already been deposed.  We don't have the

 5    time or resources or the need to do that.

 6              The same thing with respect to the scope of

 7    limitation on discovery.  They want to limit us to ten

 8    depositions.  I respect his comment about, well, there are

 9    35 subscribers.  We all know I'm one party.  I'm not going to

10    send a thousand interrogatories.  I'm not smart enough to make up

11    a thousand interrogatories, or a hundred, probably.  But the

12    point is, is that's not a fair characterization of what the facts

13    are.

14              We just say, look, let's do it according to the

15    Federal Rules.  If we don't need ten depositions, we're not going

16    to take ten depositions; but, otherwise, if there becomes an

17    issue where we think there needs to be more discovery outside of

18    what is required by the Federal Rules, then we'll either work it

19    out between ourselves or we'll come address the Court again.  So

20    that's the approach that we think is correct, and that's what I

21    wanted to point out.  Thank you.

22              THE COURT:  I want to understand what BP's motion is

23    contemplating.  Is it a strict judgment on the pleadings or

24    motion to dismiss, or is it alternatively for summary judgment,

25    because that does make a difference?

1          MR. GOODWIN:  David Goodwin.  Thank you.

2              I don't speak as quickly as Mr. McLeod.  I find it

3  unfathomable, given the pace at which he speaks, that he couldn't

4  write 1200 interrogatories.

5          MR. MCLEOD:  I can't read my handwriting.

6          THE COURT:  He said he wasn't bright enough.  He wasn't

7  talking about whether he could write it.

8          MR. GOODWIN:  Here is the issue.  Let me take a step

9  back and then answer Your Honor's question.

10             The insurers filed this lawsuit in May of 2010,

11  before the letter that was the basis of Mr. McLeod's comment.

12  They seek in their complaint a declaration that the coverage that

13  they provide to BP as an additional insured is limited to the

14  indemnity that Transocean gave BP in the drilling contract.

15             BP's position, and what it would intend to move,

16  and it's shared the legal authority with the insurers, is that

17  under a case called *Atofina v. Evanston*, which is a Texas Supreme

18  Court case, once you're an additional insured on the contract,

19  then the coverage that you're entitled to get is determined by

20  the insurance policy; it's not determined by the underlying

21  construction or service contract, unless the insurance policy has

22  language in it that says all you get is the limits in the

23  underlying contract.

24             The people who do this for a living, there is

25  actually a standard insurance services office form called --

1   originally called CG 20 10, and it's got other numbers, that says

2   that expressly.  But Transocean's policies don't have that.

3   Therefore, the *Atofina* decision, BP would argue, applies

4   directly.

5            Now, the insurers are going to respond by saying

6   there is a triable issue of fact or something as to whether BP

7   breached the drilling contract and, therefore, lost its

8   additional insured rights.

9            Without getting into the merits of that, either

10  here or in front of Judge Barbier in that motion, which I don't

11  think we would do, we would point out that under Texas

12  Supreme Court authority, that once you're an additional insured,

13  you're an additional insured.

14           If there is -- you know, an alleged breach of the

15  underlying contract does not deprive you of the insurance that

16  the contract was intended to provide.

17           So we would like to make that motion.  What would

18  it be based on?  We think, under Fifth Circuit authority, that we

19  can simply ask Judge Barbier to take judicial notice of the

20  insurance policy and the drilling contract and do it by motion

21  for judgment on the pleadings.

22           But, to be -- you know, out of prudence, we would

23  do it as an alternative motion for partial judge, unless

24  Judge Barbier had any concerns about taking judicial notice of

25  those two documents.  But, as far as I can recall, those two

1  documents would be the sum and substance of the record.

2          Now, let me just make two other points.  Again,

3  Mr. McLeod speaks quickly, so I don't always pick up everything

4  he says; but, I think he said, well, okay, BP can file a motion

5  for judgment on the pleadings, but they should file it a while

6  from now.  Their proposal is September 30th, which, as I

7  mentioned, means that Judge Barbier would have to rule on it at

8  the same time as he's doing the February 27th trial.

9          Then, the issue about the scope of the depositions.

10 I don't think that it's necessarily correct to say that the

11 insurers will limit their questions to underwriting issues.

12 There are several things going on here.

13         First of all, Transocean is also a party.  They've

14 intervened.  Transocean is not an insurer, and Transocean has a

15 different agenda.

16         Second, you know, I'm going to have to defer to

17 Mr. Langan and my other colleagues here, I don't know whether

18 other people can show up and listen and ask questions, whether

19 Your Honor has to grant them permission to do this, but that's

20 another concern.

21         Third, there is going to be -- I think it's

22 something like 110 depositions, where anyone who has anything

23 that they want to ask on the facts can ask about the facts.  They

24 don't need to use the insurance cases to ask about the facts.  So

25 that's why we think it's very important to place this kind of

1   limitation.

2           We've proposed, in our proposed order, a definition

3   of insurance issues.  We've asked the insurers to come up with an

4   alternative, and they haven't.  So that's what is separating us.

5           THE COURT:  All right.  Thank you.

6               Anybody else?

7           MR. MALONEY:  Your Honor, I'm Mike Maloney.

8           THE COURT:  I'm sorry, Paul, did I take you out of -- do

9   you want to be taken out of order?

10          MR. STERBCOW:  Your Honor, for the record, the PSC,

11  obviously, is not directly involved in this.  Clearly, we're

12  indirectly involved and very interested.

13              Our only point is two points.  To the extent that

14  fact discovery and a determination of the issue of gross

15  negligence amongst these parties to this contract needs to be

16  determined, we would like to push all of this off so we don't

17  deflect our attention.

18              Also, to the extent that this insurance proceeding,

19  I'll call it, is going to take time and resources from the Court,

20  both Your Honor and Judge Barbier, that we need to reach our

21  February 27 goal, we would like to see these issues put to the

22  side to the extent they have to be.  We don't want anything to

23  get in our way, depositions, arguments, anything.

24          THE COURT:  So you would suggest, on behalf of the PSC,

25  basically staying this portion of the case until after we've

1    finished phase one?

2              MR. STERBCOW:  Phase one.

3              THE COURT:  Got you.  Thank you.

4              MR. ROY:  Your Honor, there would be one caveat to that.

5              THE COURT:  What's that?

6              MR. ROY:  That would be we would suggest that to the

7    extent gross negligence is an issue that needs to be resolved in

8    that section of the litigation, that that issue be tried with us

9    in February.

10             THE COURT:  Well, I assume, guys, that nobody wants to

11   redevelop that case.  So I'm assuming that the insurance

12   litigants will be relying on the parties to the underlying case,

13   that is, the PSC and BP and Cameron and everyone, to put that

14   case on.

15             Am I incorrect on that, Marty?

16             MR. MCLEOD:  No, Judge.  The underwriters would be

17   prepared to stipulate that we're going to abide by that gross

18   negligence discovery; and, that relates to a counterclaim not

19   only excess liability, but on the marine liability for whole

20   subrogation against BP for the --

21             THE COURT:  Yes, you are not going to relitigate that

22   case.

23             MR. MCLEOD:  No, no, we have no interest.

24             In terms of -- and Mr. Goodwin, he speaks slower,

25   so I tend to fall asleep, but -- so the point being is, is that

1    in terms of the fact discovery, there is not -- I can promise

2    you, Judge, there is not going to be a situation where one of the

3    defendants asks somebody, needs to go back and take a second bite

4    of the apple.  We have no interest in that.

5              The reason that we're reluctant to stipulate to

6    their insurance specific definition -- and, by the way, I don't

7    necessarily feel like that we need a separate scheduling order.

8    I was doing this out of accommodation to BP because they wanted

9    to file these motions.  So we would be fine to just say, look,

10   we're party to the MDL discovery, and we'll conduct discovery

11   according to the MDL.

12             But, be that as it may, we are where we are, and

13   the way that they defined insurance specific discovery was only

14   related to the policies, and there was no reference to the

15   drilling contract.  Obviously, that's the core of the issue.

16             We know that the parties intended that the

17   insurance coverage would be limited to the liability that

18   Transocean assumed by that contract.  That's why the contract is

19   important to us.  To BP, they want just the Court to look at the

20   policy, and not look at the contract, and not look to see what

21   was really going on there.

22             THE COURT:  Yes.  Marty, I do think they raise a

23   legitimate concern about your scheduling coming up right when

24   Judge Barbier is doing final pretrial on phase one.  What do you

25   think about that, and is there a way we can skin that cat?

1          MR. MCLEOD:  My main point was, is when those
2     preliminary motions, as I call them, 12(b)(6) motions or judgment
3     on the pleadings motions, if that's truly what it is, where they
4     are not trying to insert evidence, then, you know, if we want to
5     speed up the time for responsive pleadings or something, just to
6     make sure we have all the preliminary pleadings completed, and
7     then file the motion.  Whether it's September or whatever the
8     date is, I just want those pleadings complete.

9          THE COURT:  Do you agree that on a motion for judgment
10    on the pleadings, the judge can be asked to take judicial notice
11    of the insuring contract?

12          MR. MCLEOD:  I don't think we would agree with that.

13          THE COURT:  I didn't think you would.

14          All right.  Thank you.  All right, Mr. Maloney, I'm
15    sorry we skipped you.

16          MR. MALONEY:  No problem, Your Honor.  I'm Mike Maloney.
17    I represent Ranger Insurance, Ltd, which is the first 50 million
18    coverage.  Phelps has the 700 million above me.  There is the
19    additional 250 million above that.

20          So, although I am primary, I'm really sort of the
21    tail end of the dog, given the relative sizes of the policies.

22          I would like to start off by saying, Your Honor,
23    that BP and Transocean actually have a written signed agreement
24    with regard to this issue.  It is the drilling contract.  The
25    drilling contract provides that BP shall be named as an

1    additional insured in each of the Transocean policies, but the

2    obligation is the limited to, quote, liabilities assumed, quote,

3    under the terms of the drilling contract.

4            So it's our position that they are only an

5    additional insured pursuant to those liabilities which we have

6    assumed.  BP's argument is that they are an additional insured as

7    if they were a first party insured for all purposes.

8            Now, as a result, the core dispute we have in

9    regard to the scheduling order really isn't the timing of the

10   motion.  Under the Federal Rules, they could file the motion

11   whenever they wanted to.  The issue is the scope of discovery,

12   what is relevant.

13           They want discovery limited just to the

14   construction and the formation of the insuring agreement.  We

15   say, wait a minute, that is not the sole basis of your right to

16   coverage.  Your right to coverage is limited by the drilling

17   contract.  Therefore, issues relating to liability, gross

18   negligence, whether you've breached the drilling contract or not,

19   are relevant to whether you are covered.

20           Now, that's why we're here in the first place,

21   because these cases did relate to the core issue of liability

22   under the MDL.  BP made this exact same argument in their motion

23   to vacate the conditional transfer order.  They said, there is no

24   relationship between the MDL issues and the declaratory judgment

25   issues; therefore, the case should be sent back to Houston.

1           Well, the MDL Panel didn't buy that argument for

2    two reasons, one of them, reading from the MDL Panel's order,

3    they held that the insurance policies at issue here involved

4    coverage issues with respect to events at the core of the MDL,

5    the April 20, 2010 explosion and fire on the DEEPWATER HORIZON.

6           Now, they also pointed out there is another reason

7    why the dec actions relate to the MDL, and that is that when BP

8    was named in the declaratory judgment by Ranger and the excess

9    underwriters, BP then third-partied in the marine package

10   insurers.  The marine package insurers were the insurers that

11   paid the hull value on the policy.

12          The marine package insurers, in turn, cross acted

13   against BP saying, wait a minute, if you are guilty of gross

14   negligence, then you have breached the drilling contract.  Then,

15   under the drilling contract, the waiver of subrogation goes away.

16   Therefore, we have a right to sue you, BP, for the hundreds of

17   millions that we paid in the hull coverage.

18          As a result, the MDL Panel said, well, that issue

19   clearly relates to the findings of fault that are at the core of

20   the MDL, and, therefore, it also relates.

21          Now, I would suggest, Your Honor, that we suggest,

22   in terms of the scheduling order, that all those issues ought to

23   be open to discovery.  BP wants to limit it, and that is the core

24   difference in the discovery.  In terms of the timing of when they

25   file their motion, I don't think we really care.  If it's too

 1    soon, we can always argue these other issues need to be

 2    determined first, and it would be then delayed; but, they can

 3    file it whenever they want to.

 4            The point is, is that we don't intend to redo the

 5    discovery on the liability issues or the gross negligence issues;

 6    and, whatever finding Judge Barbier determines, it would be

 7    *res judicata* with regard to BP, so we're not going to relitigate

 8    those issues.

 9            All we want is the discovery to be open to the

10    issues that we think are relevant in the case.  That's the issue.

11            THE COURT:  That's a good summary.  Thank you.

12            MR. ELSLEY:  Good afternoon, Your Honor.  John Elsley

13    for Transocean.

14            I would just reiterate what Mr. Maloney said and

15    Mr. McLeod.  We agree with the scheduling order.  We have

16    submitted a joint scheduling order.

17            You really cannot determine the insurance -- the

18    scope of the insurance obligation to BP without looking at the

19    drilling contract.  They are intertwined.

20            We have fundamental disagreement on what the

21    discovery ought to be.  They want to limit us to just looking at

22    what -- you know, who took out the insurance and what the

23    communications were; but, you have to look at the drilling

24    contract because they are both connected, Your Honor.

25            THE COURT:  Good.  Mr. Goodwin wants to come back up.

1        MR. GOODWIN:  May I have a last word, Your Honor?

2        THE COURT:  All right.

3        MR. GOODWIN:  The Texas Supreme Court held that the

4   underlying contract is irrelevant in the *Atofina* case.  Once

5   you're on the policy, you're on the policy, and you only look to

6   the policy to determine coverage rights.

7              That's our position.  We think we're right.  We

8   have a Fifth Circuit case, and we have a Texas Supreme Court

9   case, and it's governed by Texas law.

10              So we would like to tee that up.  If Judge Barbier

11   agrees with us, then most of the discovery that Mr. Maloney and

12   Mr. Elsley just described that they really are desperate to take,

13   or at least to abide by in this MDL, will go away.  It won't be

14   necessary.

15        THE COURT:  Okay.

16        MR. GOODWIN:  The other issue is simply the limitation

17   on the scope of discovery.  It's limited to insurance issues.  If

18   Judge Barbier disagrees with us, we'll deal with it; but, again,

19   these issues may be decided in the scope of the trial.

20              But let's get on with it.  The case has been

21   pending for more than a year now.  Thank you very much.

22        THE COURT:  Thanks.  I appreciate it.

23              We're going to take a look at that, compare the new

24   chart you've given us, and hopefully get something out on it this

25   coming week.

```
 1                    Deb, you wanted to get in line?
 2           MR. FITCH:  Anadarko, Judge --
 3           MR. MCLEOD:  I'm sorry, can I --
 4           THE COURT:  I'm going to give you the opportunity to
 5  talk fast on the hand mic.
 6           MR. MCLEOD:  Marty McLeod for Transocean's excess
 7  underwriters.
 8                    Obviously, the proposal and the counterproposals
 9  that have been submitted, I need to take a look at what BP
10  submitted to make sure that it's accurate.  So could I file
11  something, you know, say, Monday next week to respond to it if I
12  need to?  To make sure that it's accurate.  I don't know that
13  it's accurate.  It's been presented as accurate.
14           THE COURT:  You don't need to file anything.  You can
15  just e-mail me.
16           MR. MCLEOD:  Thank you very much.
17           MR. SHUGRUE:  I'm sorry, Your Honor.  John Shugrue,
18  S-H-U-G-R-U-E.  I'm with Reed Smith, and I'm Anadarko's insurance
19  coverage counsel.
20                    I thought, at the risk of taking the last word from
21  Mr. Goodwin, Anadarko is also a party to these issues and to this
22  litigation concerning the insurance coverage because Anadarko
23  believes that it, like BP and MOEX, has additional insured rights
24  under the policies.
25                    I think, in terms of the timing and the need and
```

1    the urgency to move these issues forward and to the try to reach

2    an early resolution on what we agree is a threshold legal issue

3    that doesn't require any discovery, really, at all, one of the

4    things that needs to be kept in mind is that these are insurance

5    policies that are paying out money on different claims and

6    defense costs.

7              In order for Anadarko and BP and MOEX, to the

8    extent that we do have rights under these policies as insureds,

9    to have those rights adequately protected, we need these issues

10   resolved at the soonest possible date because, if these issues

11   are pushed off until next year, for example, when the issues are

12   finally resolved, there may not be money left in the policies, or

13   certainly the policy proceeds will have been significantly

14   dissipated.  So we do feel a need to have these issues resolved

15   early, and that they can't simply be put to the end of the day.

16             I think one thing that's clearer in all of this is

17   that these issues about gross negligence and liability and the

18   like, those are issues that are going to be resolved as part of

19   the main trial in this case, and not separately as part of the

20   insurance coverage.

21             THE COURT:  Right.

22             MR. SHUGRUE:  We don't need those issues resolved or

23   addressed in order to get to this initial threshold question,

24   which is what determines the scope of the additional insured

25   coverage; is it the insurance policies or the drilling contract.

1        THE COURT:  Right.  That seems to be the only thing that

2   everybody in the insurance litigation can agree on, that they are

3   not interested in getting involved in the liability issues, gross

4   negligence.

5        MR. SHUGRUE:  Thank you, Your Honor.

6        THE COURT:  Thank you.

7        MR. MCLEOD:  I just need to respond, on the payment of

8   claims issue --

9        THE COURT:  Yes.

10       MR. MCLEOD:  -- we have not paid out anything in terms

11  of -- there are no payments that have been made under our policy.

12  There is no issue that the underlying has been --

13       THE COURT:  Depleted.

14       MR. MCLEOD:  -- insurance has been depleted, and we're

15  not under any, you know, pressure to do so.  So that's not an

16  issue.

17        Thank you, Your Honor.

18       THE COURT:  Thank you, Marty.

19        Back to the agenda.

20       MS. KUCHLER:  Your Honor, may the insurance counsel be

21  excused now?

22       THE COURT:  Absolutely.

23       MR. LANGAN:  Can you require it?

24       THE COURT:  Absolutely.

25        You all warm the seats for us at the Swizzle Stick.

1              Let's see, where do I want to start?  Have we got

2    Sarah on the line?

3              MS. HIMMELHOCH:  Yes, Your Honor.

4              THE COURT:  How are you doing?  How are you doing,

5    Sarah?

6              MS. HIMMELHOCH:  I'm good.  How are you?

7              THE COURT:  Fine, thank you.  Do you have anything to

8    report?

9              MS. HIMMELHOCH:  Yes, the settlement confidentiality

10   order, I circulated to the parties for final comment and expect

11   to be able to file that tonight, unless I get objection.  The

12   deadline for comment was 6:00 p.m. this evening.  So that should

13   be filed this week and taken care of.

14              We are still in the process of gathering

15   information in response to Anadarko's letter regarding the

16   preservation of samples and are awaiting some information.  BP

17   wanted to weigh in, and we wanted to see their position before we

18   reengage with Anadarko.  So that still is percolating.  I don't

19   [inaudible] any time in the immediate future.  I think this is

20   something you may have to face after London.

21              The last thing I just wanted to apprise you of is

22   that the order after the last discovery conference or the one

23   before that said set a June 20th deadline for completing

24   responses to discovery relating to the event.

25              We are working with Anadarko, MOEX and BP, who are

1    the only parties who have served us with formal discovery.  We

2    know we can't make that date.  We're working as fast as we can to

3    complete discovery.  We've requested BP and Anadarko/MOEX's

4    agreement to going past that June 20th date and are awaiting

5    their formal response to that request.

6            THE COURT:  That sounds good.  All good.  Thank you.

7            Let's see, yesterday we got a proposal from

8    Corey Maze relative to discovery propounded to the states.  He

9    circulated a proposal.  I just wanted to make sure that everybody

10   saw a copy of it, and set a deadline for Tuesday for anybody to

11   let Corey know that there are objections or modifications.

12           If there are not, Corey, you go ahead and put that

13   in the form of an ex parte motion with no opposition, and that

14   will be that.  I didn't see any problem with it at all, but I

15   didn't flyspeck it the way some of these guys do.

16           MR. MAZE:  Very good.

17           THE COURT:  Has anybody got any thoughts on it, because,

18   if not, we'll just move on?

19           Corey, do you want to get up to the calendar, and

20   we will start with June and July depositions.

21           We have confirmed that Mr. Alberty and Mr. Albertin

22   are different people, which was my bet.

23           MR. LANGAN:  Yes.

24           Andy Langan.

25           They are.

1          THE COURT:  They are.  We've confirmed Mr. Albertin for

2     July 12 and 13.

3          MR. LANGAN:  Correct.

4          THE COURT:  Mr. Alberty, I assume, Andy, that you've not

5     had an opportunity to get dates as to him.

6          MR. LANGAN:  We are working on it.  As I mentioned in my

7     corrective e-mail, he is a retired BP employee, and we have --

8          THE COURT:  Which means he has nothing but time.

9          MR. LANGAN:  Perhaps so.  So we have reached -- we've

10    started the process of reaching out to him.  I have no reason to

11    think we can't get him before July 31.

12         THE COURT:  Good.

13              Let's see, next up was MMS employee, Robert Neal.

14         MR. LANGAN:  Mr. Neal, yes.  Thanks to Mr. Underhill's

15    good offices, July 19 and 20, I understand, are confirmed dates.

16         MR. YORK:  What's his first name?

17         MR. LANGAN:  Robert.  This is Robert Neal.

18         THE COURT:  N-E-A-L.

19              We wanted to talk about Mr. John Wright.  We had

20    tentative dates.  We were hoping that he could make himself

21    available for June 9 and 10.

22         MR. GODWIN:  Yes, Your Honor.  May I?

23         THE COURT:  Sure.

24         MR. GODWIN:  Thank you, Judge.  Don Godwin for

25    Halliburton.

1          Judge, we have, through my office, spoken with

2    Mr. Wright's lawyer, a gentleman named Kurt Arbuckle, and he has

3    written about a three-quarters of a page e-mail.  I would just

4    like to read it.  It lays out everything, his conditions on which

5    he's willing to make his client available.

6          I'll go forward.  It says:  "I have spoken to

7    Mr. Wright.  The following information answers your questions and

8    should give you the information you need to present to

9    Judge Shushan, the parties wanting the deposition, or both.

10         "Number one, Mr. Wright has no documents related to

11   his work on the well.  He did his report over a year ago and is

12   not going to remember details unless he is given a copy of this

13   report is advance.  It is lengthy" -- "it is a lengthy technical

14   report and would take at least two days of review for Mr. Wright

15   to come up to speed.

16         "Number two, Mr. Wright is still available on

17   June 9 and 10, and is willing to come to New Orleans for the

18   deposition; but, arrangements need to be made in advance to pay

19   him for his time and expenses, including the expenses he is

20   incurring in being required to have me work on what should have

21   been easy arrangements to make, particularly given the

22   familiarity of many of the parties with customary practices,

23   paren, I count almost 50 e-mails back and forth so far, amazing,

24   including e-mails to Mr. Wright to inform him of the status, as

25   it changes frequently, close paren.  Permission has been received

1   from BP, so the confidentiality agreement is no longer an issue.

2            "Number three, Mr. Wright will appear without a

3   subpoena as long as he is paid to attend.  If he is not paid, he

4   will not agree to appear.  Mr. Wright was not a witness, and he

5   is being asked to testify about a report he did as an expert.  It

6   seems obvious that he is entitled to be paid under

7   26(b)(4)(E)(i), and it is mandatory.  I do not know what you mean

8   when you refer to the, quote, protocol" --

9            That's what we told him was needed.

10           -- "but I do not believe it is Mr. Wright's

11  responsibility to apply to the court to get paid.  The party or

12  the parties who want to depose him should get authorization they

13  need from the Court to pay him and then pay him.

14           "If Mr. Wright is going to been given an

15  opportunity to review the report before the deposition, that will

16  be two days, in addition to two days for the deposition itself.

17  He will have travel expenses and attorney's fees.  His rate is

18  $8,000 per day, which is what he was paid to do the report.  He

19  needs to be provided with a copy of the report and paid in

20  advance the following:  Two days preparation, $16,000; two days

21  testimony, $16,000; legal fees, 9 hours so far at $425 per hour,

22  $3,825; travel, food, lodging and miscellaneous expenses, an

23  estimate, $4,000.  Total" -- the laughing part is not in the

24  e-mail -- total, Your Honor, "$39,825.  Mr. Wright will account

25  for his time and expenses and will either refund any overpayment

 1  or invoice for any additional amount due."

 2          MR. MILLER:  Just send him your credit card.

 3          MR. GODWIN:  Mr. Goodwin's.

 4              "While we had assumed this would have been first

 5  discussed with whoever wants the deposition, if it needs to be

 6  presented to the Court first, please do so.  Best regards, Kurt

 7  Arbuckle."

 8          THE COURT:  Lovely.  Mr. Arbuckle, are you on the phone?

 9          MR. MILLER:  He was smart.

10          MR. ROY:  He was in the courtroom today.

11          THE COURT:  Let me ask you all something, seriously.  If

12  he says he has no custodial file --

13          MR. GODWIN:  Here is what happened, Judge.  He told us

14  that he had given -- Mr. Wright had given all of his files upon

15  completion of his work to BP.

16              We contacted Andy and told him that it was our

17  understanding that the files were there.  Andy was going to look

18  into it, and we presume that he is, and would get back to us.

19  Andy had indicated there may not be a requirement that they

20  retain those files as they would for employees or ex-employees.

21  Of course, I trust Andy when he says that.

22          THE COURT:  Yes.

23          MR. GODWIN:  But having said that, we understand from

24  the lawyer that Mr. Wright gave his file to BP.  Whether or not

25  he did, whether or not it exists, we don't know; but, there was a

1  file at one point, according to his lawyer.

2          THE COURT:  Well -- I'm sorry, Andy.  Go ahead, let's

3  hear your update on that.

4          MR. LANGAN:  I don't disagree with Mr. Godwin except in

5  this respect.  What I tried to convey was not that there was a

6  retention issue, but, rather, since Mr. Wright is not our

7  employee or our ex-employee, the rules under Pretrial Orders 17

8  and 27 about an obligation for us to produce a custodial file do

9  not strictly apply.

10         THE COURT:  They don't.

11         MR. LANGAN:  I did not mean to imply there was not a

12  retention issue.  We are checking.  I don't know.

13         THE COURT:  I understand the difference.  It just seems

14  to me, first after all, that we are three weeks away from June 9

15  and 10.  We don't have this gentleman's custodial file.  I'm sure

16  that they are probably voluminous, and he's going to charge you

17  for every moment that he spends reviewing those files.  That we

18  probably don't have enough time to see if we can get the

19  custodial files, produce them to him, have him review them, bill

20  you for it, and make himself available on the 9th and the 10th.

21         It also sounds like a deposition under the

22  circumstances described by Mr. Arbuckle will not be worth

23  $32,000.

24         MR. GODWIN:  $39,825.

25         MR. MILLER:  Don't shortchange him, Your Honor.

1          THE COURT:  I mean, it just doesn't sound like you all

2     are going to get anything, he has very little recollection of his

3     report, and then he'll testify.

4          MR. GODWIN:  Don't forget the $4,000 in miscellaneous

5     expenses.

6          THE COURT:  He travels like you do.

7          MR. GODWIN:  Judge, that being the case, that number

8     would be higher.

9          THE COURT:  But, you know, I mean, I think we really

10    have to talk about whether it's -- come on up, Bobo.  Let's see

11    what you've got to say.

12             But, I mean, under the current circumstances, it

13    doesn't sound like it's worth it.

14         MR. CUNNINGHAM:  Here is what Mr. Wright is all about.

15    He did one report that we want to establish that he did for BP,

16    and that he said what he said in the report.  We don't need his

17    custodial file.

18         THE COURT:  I think Andy will stipulate to that.

19         MR. LANGAN:  Well, I think, to skin this cat, if the

20    issue is here is his report, it's authentic or whatever,

21    certainly my client will consider that to skin this cat.

22         THE COURT:  Absolutely.

23         MR. CUNNINGHAM:  And admissible, not just authentic.

24         MR. LANGAN:  I have a few questions like that for you

25    guys.

1          THE COURT:  I understand.

2          MR. LANGAN:  So, I mean, the whole issue of

3    admissibility --

4          THE COURT:  It is what it is.  Mr. Wright prepared it on

5    behalf of BP.

6          MR. LANGAN:  Sure.  Can we look into that?  We'll work

7    with these guys on that.

8          MR. CUNNINGHAM:  It's a very, very important report, and

9    the conclusions he reaches are very, very important.

10          MR. LANGAN:  If Mr. Cunningham keeps telling me how

11    important it is, I might retreat.

12          THE COURT:  Of course, you know, his deposition won't

13    make it more or less admissible.

14          MR. LANGAN:  But why don't you send me what you have in

15    mind.  If Mr. Godwin or Mr. Cunningham can send me what you have

16    in mind, we'll run it to ground, yep, that's from our files, or

17    whatever it is.  We'll work with them on that.

18          MR. CUNNINGHAM:  And it's admissible.

19          MR. LANGAN:  Issues about admissibility at trial, I

20    mean, you know, I want to talk about.

21          MR. GODWIN:  One suggestion, Your Honor.  In the event

22    that, for whatever reason, Andy is unable to get his client to

23    agree that it would be authentic, as well as admissible, because

24    the PSC needs it and I need it, and I'm sure others do, we could

25    go over and take a deposition in Houston where Mr. Wright is.

1          THE COURT:  That would probably save you $6,000.

2          MR. GODWIN:  Well, it wouldn't cost anything -- we

3    wouldn't be paying the lawyer or Mr. Wright for his time.  You

4    could go over there and back in a day.  Simply put the report in

5    front of him, have him prove it up that he prepared it, and get

6    on an airplane and come back.

7          THE COURT:  Why does that, however, make it more

8    admissible if Andy merely stipulates this is authentic,

9    Mr. Wright prepared it on BP's behalf?

10          MR. GODWIN:  Well, if Mr. -- if Andy will also be able

11    to say that it's admissible, because just saying it's --

12          THE COURT:  Mr. Wright can't make it admissible.  Only

13    Judge Barbier can make it admissible.

14          MR. GODWIN:  Well, I understand that, but if Mr. Wright

15    says that he prepared it.

16          THE COURT:  I think Andy will stipulate that Mr. Wright

17    prepared it on behalf of BP, it is genuine and it is authentic.

18          MR. LANGAN:  Right.

19          MR. CUNNINGHAM:  Your Honor, we're also interested in

20    demonstrating that Mr. Wright is a highly qualified expert on the

21    particular subject about which he wrote.

22          THE COURT:  Get a resumé.  Andy will stipulate to the

23    résumé.

24          MR. GODWIN:  We'll submit it to him, Judge.

25          MR. CUNNINGHAM:  Thank you.

1      THE COURT:  Then, once we have that in place, who wants

2  to call Mr. Arbuckle and thank him, but --

3      MR. LANGAN:  We're streamlining things.

4      THE COURT:  -- yes, we're streamlining things.

5      MR. GODWIN:  I'll be happy to, Judge.

6      MR. FITCH:  Judge, let's leave open the possibility of

7  going and taking his deposition in Houston, because once you put

8  a report in front of people and start asking them under oath what

9  they could say about it and what this gobbledygook means and what

10  this technical stuff means, you do start getting stuff.  So let's

11  at least leave that possibility open.

12      THE COURT:  Let's leave it open.  I like the cheapened

13  and streamlined version, but I will leave it open.

14          Next up.

15      MR. LANGAN:  A couple more scheduling things on your

16  June, July thing.

17      THE COURT:  Yes.

18      MR. LANGAN:  We have not talked about Mr. Pat O'Bryan

19  for some period of time.  He's a BP witness.  He's in July, I

20  believe.

21          Corey, do you have Mr. O'Bryan?

22      MR. CUNNINGHAM:  7 and 8.

23      MR. MAZE:  7 and 8.  I've got a question.

24      MR. LANGAN:  Yes, I think it was tentative, right?

25      MR. MAZE:  It is.

 1          MR. LANGAN:  July 14 and 15 are what I'm now told, in

 2     New Orleans, that he could actually do it, and his personal

 3     counsel.  There is personal counsel involved here.

 4          THE COURT:  Let's go to July 14 and 15, and that's

 5     confirmed --

 6          MR. LANGAN:  Correct.

 7          THE COURT:  -- Mr. O'Bryan.

 8          MR. LANGAN:  Correct.

 9          I think I mentioned to you that Mr. Lindner is

10     actually the 14th and 15th of July.  I think we talked about that

11     in an e-mail.

12          THE COURT:  You did.

13          MR. LANGAN:  Mr. Lindner.

14          THE COURT:  We've got him in red on the 15th.

15          MR. MAZE:  Because we only had him for one day last

16     time.

17          THE COURT:  But we've confirmed the second day.

18          MR. MAZE:  Adding the second day.

19          MR. LANGAN:  It's 14 and 15, I believe, yes.

20          THE COURT:  Good.  Confirmed July 14 and 15.  Okay.

21     Thanks.

22          We sent out the minute entry letting you know what

23     days we saw that were available on the calendar to put some of

24     these what we call additional depositions before July 31st in.

25          Oh, yes, Eddy Redd, I'm sorry.  Kerry, do you have

1   anything on Mr. Redd?  Do you want to use your handheld?

2          MR. MILLER:  Kerry Miller on behalf of Transocean.

3              No, Your Honor, it's been radio silence.  I have

4   his e-mail address.  I'm happy to turn it over to you, turn it

5   over to Jim, Steve, whomever.  We have been e-mailing him.  We've

6   gotten two responses over the course of two months, but nothing

7   in the last several weeks.

8          THE COURT:  Don't turn it over to me, but I think that

9   Paul Sterbcow would like it.

10         MR. MILLER:  We're trying.  We're e-mailing him.  I

11  don't know what other buttons you can push, but I'm happy to give

12  you his e-mail address --

13         THE COURT:  I'm just carrying it over.

14         MR. MILLER:  -- if you want to give him a better

15  understanding as to why he is needed.

16         THE COURT:  Paul will take it.

17         MR. ROY:  We're going to send Paul to Russia.

18         THE COURT:  We wanted to see if Paul got anything on

19  Mr. Morel in July.

20         MR. STERBCOW:  There is one change, Judge.  Instead of

21  20, 21, it's 19, 20.

22         THE COURT:  19, 20.

23         MR. STERBCOW:  Remove him from the 21st, put him on the

24  19th, and that's it.  That's a done deal.

25             Hafle is a done deal on 20 and 21.

 1            THE COURT:  Let's let Corey catch up.

 2            MR. YORK:  Hafle is 20 and 21 or 21 and 22?

 3            MR. STERBCOW:  21 and 22, I'm sorry.

 4                Brian Morel is 19, 20; Hafle 21, 22.

 5            THE COURT:  So, anyway, we were talking about these

 6   witnesses that we need to schedule or hope to schedule prior to

 7   July 31st.  We gave you the dates that are available.  We're

 8   still not sure if we're going to free up the dates that we had

 9   for Mr. Wright, but those are possible dates if we can reach a

10   stipulation, so let's just keep that in mind and add that as a

11   possibility.

12                Does anyone have people that they have contacted

13   that they believe they can slot into those available dates?

14                Andy.

15            MR. LANGAN:  I do have a couple dates for people that

16   were identified this week, believe it or not.  I don't know if

17   they match exactly, but --

18            THE COURT:  Let's take a look.

19            MR. LANGAN:  Angel Rodriguez, which I think Kerry was

20   asking for, July 29th.  That was a one-day dep.  July 29th.

21                I think that's New Orleans.  I'm not a hundred

22   percent sure.  I think that's around here.

23                Barbara Yalmaz, Y-A-L-M-A-Z or E-Z.

24            THE COURT:  Yalmaz.

25            MR. LANGAN:  Yes.  July 20.

1          THE COURT:  July 20.

2          MR. LANGAN:  That's another one-day dep.

3          THE COURT:  Yes.

4          MR. LANGAN:  So we can -- so that's some progress.

5          THE COURT:  You bet it is.  Thank you.

6               Anybody else have anybody that they've contacted

7  with regard to availability from that list of eight -- well, it's

8  sort of 11.  There's two nines on the list.

9          MR. MILLER:  Your Honor, I've e-mailed Mr. Sannon, and

10 maybe we don't need to wait until we get back together again.

11 I'll just send an e-mail to this group as to what dates I got

12 back.

13              He hasn't responded yet, but I won't wait until

14 next Friday or the Friday after that, whenever we're doing it.

15 I'll just send an e-mail, because I think he's my only one.

16         THE COURT:  I think that's good.  I think if everybody

17 would please do that, we want to get these dates filled up.  We

18 want to try to get these witnesses slotted in as early as June 6,

19 7 and 8.  I would like not to lose those dates because you're

20 going to need them.

21         MR. GODWIN:  Your Honor, Don Godwin for Halliburton.

22              Richard Dubois with Halliburton was a one-day

23 deposition.  He's out of town.  He's one of the lab guys, as

24 you'll recall.  We can let everybody know by e-mail Monday

25 morning by nine o'clock.

1            We know it's Memorial Day, but -- we'll hopefully

2   get it out over the weekend; but, if not, by Monday morning,

3   we'll have a confirmed date --

4            THE COURT:  Great.

5            MR. GODWIN:  -- of the available dates you've given us.

6            THE COURT:  Great, great, great.

7            If everybody would take a look at those and start

8   contacting the witnesses on the list, and focusing on the dates

9   that are available, that would be great.

10           We had the priority requests for additional time.

11  I wanted to especially thank Mr. Underhill for his generosity in

12  the past week.  I can't particularly give kudos to anyone else.

13           I'm going to rule on those before I leave next

14  week, so any final donations --

15           Deb, are you standing up to donate?

16           MS. KUCHLER:  I am.

17           THE COURT:  Come to the podium.

18           MS. KUCHLER:  We did donate for one of the witnesses.

19  On DNV, we gave up, I think, 30 minutes.

20           THE COURT:  You did?

21           MS. KUCHLER:  Yes, we did.

22           For Cathleenia Willis, we can cede all but

23  30 minutes.  So we need 30 minutes, and whatever else we have on

24  top of that, you can distribute elsewhere.

25           THE COURT:  Wonderful.  Thank you.

1          MS. KUCHLER:  That's just Anadarko needs 30 minutes.

2          THE COURT:  Anybody else want to be generous today?

3          All right.  If anybody decides that they can be

4   generous this week before Wednesday, let me know.  Otherwise,

5   we'll just go ahead and get out the order on that.

6          I'm just going to go ahead and take care of the

7   rest of them in the next order.  I'm tired of looking at them.

8          Let's talk about post-July 31st depositions for

9   phase one.  We've got ourselves a list of about 41 people.  Has

10  anybody got any ideas of how they would like to skin the cat;

11  because, if not, I've got some ideas?

12          All right.  Why don't we spend the next week

13  thinking about anyone else that should be added to the list.  I'm

14  not suggesting that anyone should be added; but, if you want to

15  add people, why don't we set a deadline of a week from tomorrow,

16  June 3rd.  Then let's go for June 10th to object to any further

17  additions.

18          I think we should think about the default for these

19  witnesses to be one day and not two-day depositions; but, if you

20  all believe they should be two-day depositions, I'm not shutting

21  the door on you.  But let's make the default one day.

22          I think we should start looking at scheduling these

23  depositions commencing after the Labor Day break.  So if you all

24  want to start contacting the witnesses and giving them dates in

25  September, October, early October, I think we can.

1              Any problem with those ideas?

2         MR. GODWIN:  Your Honor, are you suggesting that we

3    would not have any depositions in August?

4         THE COURT:  I'm not.  If you can get some witnesses

5    lined up in August, I think that's fine.

6              I kind of envisioned everybody working with their

7    experts in August; but, we will have some free time, so if you

8    can slot people in in August, I think that's fine.  If some of

9    these witnesses are available, I think that's fine.  I'm not

10   precluding it.

11             But, certainly, August and looking into September,

12   we've got 40-some witnesses, plus whatever else y'all want to add

13   if you need to, so we just need to start focusing on getting

14   those witnesses for phase one done.

15             Mr. Herman, hello.

16        MR. HERMAN:  Good afternoon, Your Honor.  I understand

17   this dovetails a little bit with the trial plan issues, which

18   aren't completely resolved --

19        THE COURT:  They are not.

20        MR. HERMAN:  -- but is it the Court's thinking that at

21   the same time, starting in September, we would also be starting

22   the phase two or segment two depos?

23        THE COURT:  Yes.  We're cleaning up phase one is how I'm

24   looking at it, which is why I'm thinking by default one day.

25   These cannot be crucial deponents.  I'm sure you'll find

1  exceptions, but I'm just kind of looking at these witnesses as

2  cleanup witnesses you guys want.  So we'll be finishing up.

3            That's why, Don, I think your idea is good.  Let's

4  target for August, if the witnesses are available, and get as

5  many of them done in August as possible.

6            MR. GODWIN:  That might help eliminate the need for

7  double and triple tracking in September.

8            THE COURT:  Absolutely.

9            MR. UNDERHILL:  Your Honor, Paul and I drew straws.  I

10  drew the short one.  So my role is to ask, what list of 41 are we

11  talking about?

12            THE CLERK:  We didn't distribute it.

13            THE COURT:  Oh, we didn't distribute it.  Michael tells

14  me we didn't distribute it.

15            We had, I thought, solicited from everybody the

16  witnesses who are not necessary for formulation of expert

17  opinions in phase one who didn't need to be deposed before

18  July 31st.

19            MR. LANGAN:  For instance, Cameron had a long list.

20            THE COURT:  Cameron had a long list.

21            MR. LANGAN:  People that you did not say okay for

22  July 31st --

23            THE COURT:  And who didn't make the July 31st.

24            MR. LANGAN:  -- defaulted to this list of 41.  That's my

25  read.

1          THE COURT:  We will circulate that list to you either

2    this afternoon or tomorrow, and you'll have till next Friday to

3    add to that list.  I'm just thinking clean-up deponents.

4             You don't need to add to them.  Don't feel like

5    that's an order or an invitation.  But look at it and see if

6    we've missed anybody.  Okay.

7             We will get that out to you.  I'm sorry, I thought

8    we'd circulated it.

9             Let's talk about the BP/MOEX settlement production

10   issue.

11            Andy.

12        MR. LANGAN:  You gave us till noon on Tuesday to file a

13   response to the 15th omnibus request, whatever it was.  15th,

14   6th, whatever it was.  It's a lot.  So we will do that.

15            Your Honor, we may well take the position that,

16   given Rule 408 and everything, that it's not discoverable, and

17   we'll have a legal position and then we'll figure it out.

18        THE COURT:  Right, exactly.

19            It seems to me that, look, if you do, in fact,

20   oppose production -- I'm not presuming, but if you do -- why

21   don't you all meet and confer.  If you can't get things worked

22   out, let me know, and we will set for you a fairly quick briefing

23   schedule and bring that on.

24        MR. LANGAN:  Very good, Your Honor.

25        THE COURT:  I don't know why I haven't seen it, but the

1   PSC was going to prepare a plan for the trial as far as

2   presentation of evidence.  Remember all that?

3             I don't know what you've been doing in the last

4   week, Mr. Herman.  You haven't gotten it to me.  Order of

5   presentation of evidence, do you remember all that?

6             MR. HERMAN:  We received from the defendants a proposed

7   order.

8             THE COURT:  Yes.

9             MR. HERMAN:  I'm not sure if it's different or the same

10  as what --

11            THE COURT:  I don't know.  What did you all send out?

12            MR. FITCH:  Tony Fitch for Anadarko.

13            I think what the Judge is discussing is, in fact,

14  different.

15            THE COURT:  What did you send out?

16            MR. FITCH:  Pursuant to the liaison counsel conference

17  with you and Special Master McGovern and, of course,

18  Judge Barbier about two or three Fridays ago, the Judge gave some

19  indication of his tentative inclinations.

20            We were tasked to float a proposed, what would

21  become a PTO, and I imagine would become, also, a CMO Number 3

22  regarding trial phases, subsequent trial phases --

23            THE COURT:  Right.

24            MR. FITCH:  -- what's going to happen in those, what

25  kind of findings, those issues that were discussed.

1            That has been floated first among defendants.

2    There is disagreement among defendants that may or may not be

3    overcome, and Andy reported on that this morning, but some

4    version of that has been distributed.

5            Now, that's one thing.  But, in addition, I do

6    recall that you wanted to drill down a little bit and talk about

7    order of evidence issues --

8            THE COURT:  Designations, depositions, order of

9    evidence.

10           MR. FITCH:  -- and mechanical types of things that are

11   going to be in any trial, no matter how structured.  I'm not sure

12   any of us thought that you wanted it this week.

13           THE COURT:  I didn't.

14           MR. FITCH:  Good.

15           THE COURT:  I think Mr. Herman knew that.  He sounded

16   like he was pretty prepared for oral argument this morning.

17           MR. HERMAN:  Thank you.

18           No, Deb just reminded me, on the deposition cuts,

19   for lack of a better word, we did -- we have a proposal, and

20   we're waiting to hear back from the defendants -- we've heard

21   from several of them -- how color coordinated their defenses are

22   going to be.

23           There was some suggestion that every defendant

24   would get a different color.  I'm not sure there are enough

25   colors for all of that.  Plus, you're probably going to have --

1        THE COURT:  The underwriters.  Don't forget each of the

2    underwriters.

3        MR. HERMAN:  But you're also going to have multiple

4    defendants, I would think, designating or counter-designating the

5    same portions.

6            Then there was some suggestion, I thought, that

7    maybe we would use more than one color to designate which

8    defendant we thought it pertained to, which seems completely

9    beyond the rainbow of colors available that Your Honor can read,

10   as you mentioned, that, you know, dark green does not work well.

11           But we'll continue to work through that with

12   defendants.  Whatever the color scheme is, the plaintiffs, on our

13   side, and we're going to work with both coordinating counsel for

14   the states and the United States to get everybody onboard,

15   assuming there is some consolidation with respect to the US,

16   we're kind of working on an internal deadline to get our depo

17   cuts done, whatever the color coordination is, so that we can get

18   them to the defense.

19       THE COURT:  Perfect.  Why don't we do this -- Steve,

20   when you're ready to discuss it, we'll just put it on the

21   calendar, but we won't raise it until you guys think you're ready

22   to discuss it.

23       MR. HERMAN:  Thank you.

24           The only thing is, I think, last week, we had

25   stupidly volunteered, I think, to put together the master witness

1  list.

2              THE COURT:  That's right.  I remember that.

3              MR. HERMAN:  We circulated the Excel spreadsheet, but

4  it's not complete because we need some information from some of

5  the defendants.  So I guess I'm just reminding them, through you,

6  to get some feedback for us so we can continue to compile and

7  fill out the master witness list.

8              THE COURT:  We'll put that on the agenda for week after

9  next.  We do have to start peeling away at that.

10             Who wants to talk about Cameron's request for

11  additions?

12             MR. WITTMANN:  Good afternoon, Your Honor, Phil Wittmann

13  for Cameron.

14             THE COURT:  How are you doing?

15             MR. WITTMANN:  Your Honor, Cameron has moved to expand

16  the deposition notice, the 30(b)(6) deposition notice to BP, to

17  cover the cross actions and the third-party actions that have

18  been made against Cameron by BP since the finalization of the

19  deposition notice.

20             As Your Honor knows, notice was finalized and filed

21  on March 23rd, that includes five discrete topics covering

22  blowout preventer issues.

23             On April 20th of this year, BP then filed a

24  third-party action and cross action against Cameron in which it

25  asserted allegations concerning, generally, the use of the

1  blowout preventer on the DEEPWATER HORIZON, and it raised issues

2  that had not been raised before.

3         They alleged that the blowout preventer was

4  unreasonably dangerous, and that alternative designs that did not

5  have these flaws were available.  They alleged Cameron was

6  negligent in the maintenance of the blowout preventer, and that

7  Cameron was negligent in the modification of the blowout

8  preventer.

9         None of the five BOP topics already the subject of

10  the BP designation cover the factual allegations made by BP in

11  these claims.  So all we're saying is we want three additional

12  topics added to the list of 30(b)(6) topics.  We could have added

13  a lot more, but we have just basically three.  We were careful to

14  select only the three we thought we needed.

15         They relate to identification of the alleged

16  alternative BOP designs and BP's knowledge or awareness of such

17  alternative BOP designs; number two is the allegations that BP

18  has made concerning the negligent acts of maintenance or

19  modification of the blowout preventer; and, finally, we ask for a

20  witness to be provided under 30(b)(6) to deal with BP's past and

21  present use of Cameron's Subsea BOP devices.

22         We submit that Cameron is entitled to discover from

23  BP in a Rule 30(b)(6) deposition what BP knew about these three

24  topics, and specifically the allegedly poor maintenance and

25  modification and so forth.

1          Now, although the BP notice was finalized and filed

2     on March 23rd, the portion of the BOP -- notice relating to the

3     BOP issues was only set for deposition in the last 10 days.

4          So we've got a date almost two months away.

5     July 14 and 15 is when that 30(b)(6) is going to be taken.

6     Surely, two months is plenty enough time for a witness to get

7     familiar with these issues, if they are not already familiar with

8     them.

9          The witness, as I understand it, is a man named

10    Mike Byrd, who would be the corporate representative for BP on

11    the proposed alternative design and those other issues.  I just

12    submit to the Court, fairness would indicate that we would be

13    entitled to add those three additional topics.

14         After all, remember, Judge, BP has requested

15    additional testing of the blowout preventer.  At this point, its

16    expert, DNV, has requested extensive data from Cameron to conduct

17    its testing; and, Cameron, as I think Your Honor knows, is doing

18    its best to comply with requests for information.  BP, yet,

19    doesn't want to provide a 30(b)(6) witness to state its position

20    on the claims that it's making against Cameron.

21         I submit, Your Honor, they should be required to do

22    that.  I don't think it's a major request.

23         THE COURT:  Okay, thanks.

24         MR. LANGAN:  Your Honor, Mr. Duffy was going to handle

25    this.  I don't know if he's on the phone.

```
 1              THE COURT:  Yes.  Mr. Duffy.
 2              MR. DUFFY:  Yes, Your Honor, I am.
 3              Your Honor, I think -- hopefully, you had time to
 4    take a look at our letter that we sent late this morning.  I
 5    apologize for the short notice.
 6              THE COURT:  No, I've looked at it.
 7              MR. DUFFY:  You know, our points are two-fold.  First of
 8    all, that to pretend that these are new issues when they appeared
 9    in BP's crossclaims against Cameron is not correct.  Other
10    parties have raised these same issues and concerns; and, if
11    Cameron was interested in taking of discovery on BP on these
12    issues, they had ample opportunity to get them included into the
13    30(b)(6) notice process.
14              I don't need to recount all of the detail and all
15    of the time and agony we all spent narrowing down that list of
16    105 to 35.  There are six topics related to the BOP.  Surely, if
17    these were important topics, they would have been included, and
18    Cameron had every opportunity to do that.
19              Also incorrect is the notion that this is simply a
20    little bit of an add-on to Mr. Byrd's anticipated testimony.  We
21    set out in the letter how one of the requests asks for
22    information about any blowout preventer and any well for the last
23    10 years.  This is obviously a topic that somebody would have to
24    get educated on.  It may or may not be Mr. Byrd; but, regardless,
25    it requires more effort and more deposition time.
```

1    We have to draw the line here somewhere.  All of us

2  could go back to the pleadings we all received at the same time

3  in April and think up new discovery in light of newly asserted

4  crossclaims and present exactly the same justification.

5    But the schedule is the schedule for a reason.  You

6  know, the notices are finalized.  People had the ability to add

7  claims and crossclaims, and they did, and we're all in the same

8  boat.  If we open up this door, I think it's a big mistake.  We

9  would have multiple requests.  There would really be no end to

10  the addition to the topics.

11    MR. WITTMANN:  May I respond to that, Your Honor?

12    THE COURT:  Sure, Phil, come on up.

13    MR. WITTMANN:  Just briefly, Your Honor, with respect to

14  the suggestion that we had other parties who have made similar

15  claims against Cameron before BP filed its crossclaims and

16  third-party claims, I would point out that with respect to the

17  plaintiffs, while they did make general allegations about

18  deficiencies in the blowout preventer and the negligence of

19  Cameron, we moved to dismiss the plaintiffs' allegation on *Iqbal*

20  and *Twombly* basis, as they were too vague for us to respond to.

21    BP came forward with more specific allegations,

22  which alerted us to what we wanted to get into with BP, and

23  that's why we've asked for this, what I think is a minor

24  additional request of the Court.

25    THE COURT:  I don't know if it's minor, but it does seem

1  to me, Tony, that there is a difference between general

2  allegations that the plaintiffs are making and specific

3  allegations that BP is making.

4          I can't suggest that they should have anticipated

5  that BP was going to file a crossclaim against Cameron when the

6  30(b)(6) notice was being drafted.  Had they anticipated it, they

7  certainly would have included questions about what you think the

8  deficiencies in our blowout preventer were.

9          So I don't think it's a minor addition.  I can't

10 say that.  But I do think that we need to allow them to inquire

11 into BP's knowledge and basis for the allegations that the BOP

12 was defective or that there were alternative designs that could

13 have been used.

14         Now, that being said, Phil, I have looked at your

15 three designations.  I would like you to confer with BP, because

16 I do think that the topics are too broad, most especially your

17 footnote two in your letter where you want identification of all

18 wells drilled by or on behalf of BP with Cameron Subsea BOPs

19 and/or control systems and identification of the rigs used, blah,

20 blah, blah.

21         That's an awful lot of information that I'm not

22 sure you need based on the allegation.  The allegations here are

23 that this particular BOP was defective, that there were

24 alternative designs available, and -- what was the other one?

25         MR. WITTMANN:  Modification.

1        THE COURT:  -- and that the modifications made by

2   Cameron --

3        MR. WITTMANN:  And maintenance.

4        THE COURT:  -- were not state of the art.

5            So I do think you need to work on the scope of the

6   three designations, most especially the third designation -- I

7   think it's your third designation.

8        MR. WITTMANN:  That's the one about the past and present

9   use, yes.

10       THE COURT:  I think that's too broad.

11           So why don't you work on that and work with BP.  I

12   don't know whether they are going to designate the same witness

13   as to the topics you want to cover.

14           So let them start thinking about it, and I would

15   like you to work on those topics and maybe get a revision out to

16   them and, if you would like me to look at it, to me, early next

17   week.

18       MR. WITTMANN:  We'll do that, certainly, Judge, and get

19   back to you, by, say, next Wednesday.

20       THE COURT:  How about next Tuesday?

21       MR. WITTMANN:  Tuesday.  Thank you, Your Honor.

22       THE COURT:  Thank you.

23       MR. DUFFY:  Your Honor, we're happy to do that.  I guess

24   I would just also point out that they were able to serve

25   contention interrogatories on this point.

1          THE COURT:  I read them in detail.  I read them.  I

2     agree with you, that should help them a lot on preparation for

3     this portion of the 30(b)(6).  If you give them answers to that,

4     that should really give everybody a leg up.  They were very

5     detailed contention interrogatories.

6          MR. DUFFY:  I was actually going to say if we do a

7     30(b)(6), maybe we don't have to answer the interrogatories; but,

8     we'll talk about that with them.

9          THE COURT:  Why don't you cover that with them.  I mean,

10    if y'all can work that out, that's fine.  Maybe this is an

11    advance on the script, right?

12         MR. DUFFY:  Exactly.

13         THE COURT:  As we said, post-Labor Day break we want to

14    start focusing on the depositions of fact witnesses required for

15    preparation of expert reports for phase two.  So would you all

16    keep massaging that witness list, because you know we're not

17    going to tackle 400 witnesses.  Everybody knows that.  You don't

18    want me to make a decision because I don't know who the people

19    are.

20              So take your scalpels out and start massaging, and

21    let's see what we can get done, because we really do need to

22    target for September for starting with those witnesses.

23              Let me remind you guys that you're not necessarily

24    required to be present for these status conferences with me.  You

25    can see that I hear fine, I can handle business fine.  If you all

1  have more important things to do in the office, including Mr. Roy

2  and Mr. Herman, you're more than welcome to participate by phone.

3         I think we're going to try it out, we'll pick a

4  date where everybody participates by phone, so nobody feels like

5  they are being left in the cold, and we'll see how it goes.

6         I think that gets me through the agenda, but

7  Mr. Herman, obviously, has something on his mind.

8         MR. HERMAN:  Steve Herman for the plaintiffs.

9         It sounds like you don't want to hear from us,

10 Judge --

11        THE COURT:  Sure, I want to hear from you.

12        MR. HERMAN:  -- but, belts and suspenders, Jim and I

13 were just discussing, we think everybody has a working

14 understanding, but, in terms of the actual written orders, we're

15 concerned that technically all of our expert reports are due

16 August 15th.

17        It seems like everybody has kind of agreed that

18 that would really only be for phase one.  I think we had

19 suggested in our joint trial plan that the phase two would be due

20 maybe December 15th or something like that.  But I guess we just

21 want some kind of clarification from the Court that whatever is

22 due on August 15th from the plaintiffs only relates to phase one?

23        THE COURT:  Phase one.  Is that clarification?

24        MR. HERMAN:  Thank you.

25        THE COURT:  No problem.  Look, you need to remind us

1  because we keep forgetting.  We know we're working on phase one,

2  and we need to be clear.

3          MR. LANGAN:  I'm delighted to hear that Mr. Roy and

4  Mr. Herman have gotten religion on this issue.

5          THE COURT:  I agree with you.  They finally agreed that

6  we've got phase one.

7          MR. LANGAN:  I was actually getting up to ask, next

8  Friday, June 3rd, the dry run, will you be here, or are you on

9  your way to London?

10          THE COURT:  I'm on my way to London, and Michael will be

11  in charge of the dry run.

12          MR. LANGAN:  So we're not having an in-person conference

13  on the 3rd of June here.

14          THE COURT:  We are not.  We have no conference the 3rd

15  of June, other than the dry run conference.

16          MR. LANGAN:  Which is 8:00 a.m. in chambers, with Mike

17  running the show.

18          THE COURT:  That is right.

19          MR. LANGAN:  Sounds great.

20          THE COURT:  Then anybody else who wants to participate

21  in the dry run, obviously, can, but there won't be a status

22  conference next Friday.

23              Corey.

24          MR. MAZE:  I'm kind of scared, that look on your face.

25          THE COURT:  Don't be scared.

1          MR. MAZE:  I have two things.  I'll end with the better

2   one.

3               The first one is something that doesn't need to be

4   addressed today, but the Attorney General wanted to raise it to

5   the Court's attention.  I know Mr. Herman has had discussions, as

6   well.

7               We've had a lot of calls this week at our office,

8   and the PSC, as well, as claimants to the GCCF who have been told

9   by the fund that they can no longer be talked to and their claims

10  are now going offline where they can't see the status of their

11  claims anymore because they filed the short form.

12              I believe that Judge Barbier may know this.  I know

13  that Mr. Herman said that BP has been notified and is working

14  with the fund, but we wanted to put the Court on notice.

15              Again, we don't need to do anything about it today,

16  but we'll keep the Court updated with how that goes.  But we've

17  had many, many calls this week at our office --

18          THE COURT:  I had not heard that.  What do you know

19  about that, Andy?

20          MR. LANGAN:  Andy Langan for BP.

21              Here is the issue.  We are working with the fund to

22  address this.

23              Going back in time, there were concerns raised

24  about the GCCF communicating with people --

25          THE COURT:  I remember.

1          MR. LANGAN:  -- who are represented by attorneys.

2          THE COURT:  Right.

3          MR. LANGAN:  They've been, as I understand it, extremely

4   cautious to avoid any missteps in that regard.

5              When thousands of short forms get filed with the

6   Court, and the GCCF is made aware of that, the GCCF assumed that

7   the short forms were filed by people who were represented by

8   counsel.

9              Now, all of us in this room know that's not

10  necessarily the case --

11         THE COURT:  No.

12         MR. LANGAN:  -- but, when the GCCF connected the dots,

13  they reversed that, and they now know it's not that simple.

14             But that's how it arose.  They were trying to do

15  the right thing, and maybe went too far, and now they have to

16  undue it a little bit.

17         MR. MAZE:  We don't dispute that they are going to try

18  to do the right thing.  The problem on our end is we can't

19  contact everyone because we don't know who they are, and, quite

20  frankly, we don't represent them.

21             So we are just hoping that the fund can do it on

22  their end, to get notice out to have it fixed across the board.

23             The better news is the states can offer 30 minutes

24  for Mr. Roth, 20 minutes for Mr. Ambrose and 20 minutes for

25  Mr. Haye.

```
 1            THE COURT:  Roth, Ambrose.

 2            MR. MAZE:  Haye, H-A-Y-E.

 3            THE COURT:  H-A-Y-E.  30, 20 and 20.

 4            MR. MAZE:  30, 20, 20.

 5            THE COURT:  Great.  Thank you, Corey.  That is a high

 6    note.  Y'all pay attention to Corey.

 7            MR. HERMAN:  Steve Herman for the plaintiffs.

 8                 I was asked to bring something to the Court's

 9    attention by Mr. Kennedy, who represents Mr. Rhodes in a PI case

10    with Transocean.

11                 I spoke to Kerry briefly before the status

12    conference, and they are trying to settle with Transocean.  They

13    need to get some medical records.  They are having trouble.

14    Doesn't want to violate the stay.  I think, wants the Court's

15    intervention, doesn't want to violate the stay.

16                 I'm sensing the fact that when a subpoena was

17    issued before, Judge Barbier was concerned that it might set off

18    a flurry of people trying to do case-specific discovery, but that

19    was on the economic side.

20                 I know that Your Honor is trying to settle these TO

21    cases; and, I'm thinking that because this is a PI case, the

22    Court might want to get involved.

23                 Should I just have Mr. Kennedy contact you

24    directly --

25            THE COURT:  That would be fine.
```

1        MR. HERMAN:  -- or Kerry or --

2        THE COURT:  Kerry, this is a Transocean employee?

3        MR. MILLER:  Correct.

4        THE COURT:  The doctor is not producing records for you?

5        MR. MILLER:  Apparently, that's -- I got that from

6   Steve.  I've not heard that from my forks.  I will follow up

7   today.

8        THE COURT:  Let's do that.

9        MR. MILLER:  But, apparently, the doctor, I think, wants

10  to charge the plaintiff's lawyer a lot of money to turn the

11  records over.

12        THE COURT:  Let's do this.  I'll tell you what to do.

13  Tell Mr. Kennedy not to worry.  I'm going to ask Kerry to contact

14  the company.  They should have all these medical records because

15  they are paying maintenance and cure.  I'll have the company give

16  Mr. Kennedy the medical records.

17           Kerry, will that work?

18        MR. MILLER:  I think so.  Yes, I'll give it a try.

19  We'll see.

20        THE COURT:  I think that will work.  I mean, the company

21  has all of the medical records on any of the cases I've worked

22  on.  They just copy them and send them out.

23        MR. GODWIN:  Judge, Don Godwin for Halliburton.

24           One quick final point.  Tomorrow is the deadline

25  for Halliburton to respond to the PSC's rolling document

1   production request.

2         We, by tomorrow, will have produced just over

3   90 percent of everything that has been requested, unless there

4   are privilege assertions.

5         Our third-party vendor we have been working with

6   ran into a glitch in some of the documents.  We're not going to

7   have somewhere between seven to 10 percent, at the outside, of

8   the total requested tomorrow.  We're hoping early next week to

9   have that finished.  I don't know exactly what day it will be,

10  but I wanted to give everyone a heads-up that it wouldn't be done

11  tomorrow, but they'd know I'll be working on it to make sure that

12  hopefully by mid week we ought to have it to them.

13        If I see there is an additional need for time, I'll

14  talk to Jim or Steve about it.

15        MR. HERMAN:  Thanks, Don.

16        THE COURT:  Thanks, Don, for the heads-up on that.

17        MR. GODWIN:  Thank you, Your Honor.

18        THE COURT:  Anybody else?

19        Let's see.  I think that I would like to speak to

20  Mr. Underhill and Mr. Langan in my office.

21        Mr. Large, did you want to speak to me about that

22  issue we had spoken about before?

23        MR. LARGE:  We did, except Mr. Nomellini is not here.

24        THE COURT:  He's not here.  We'll carry it over to the

25  next time he's here.

1             MR. LARGE:  Thank you, Your Honor.

2             THE COURT:  Thanks, guys.  Everybody have a good

3   weekend.

4                  (WHEREUPON, at 3:27 p.m., the proceedings were

5   concluded.)

6                         *    *    *

7

8                    REPORTER'S CERTIFICATE

9

10      I, Cathy Pepper, Certified Realtime Reporter, Registered

11   Merit Reporter, Certified Court Reporter of the State of

12   Louisiana, Official Court Reporter for the United States District

13   Court, Eastern District of Louisiana, do hereby certify that the

14   foregoing is a true and correct transcript, to the best of my

15   ability and understanding, from the record of the proceedings in

16   the above-entitled and numbered matter.

17

18

19                              *s/Cathy Pepper*
                              _____

20                              Cathy Pepper, CRR, RMR, CCR
                              Certified Realtime Reporter
21                              Official Court Reporter
                              United States District Court
22                              Cathy_Pepper@laed.uscourts.gov

23

24

25

## $

**$16,000** [2] - 57:20, 57:21
**$3,825** [1] - 57:22
**$32,000** [1] - 59:23
**$39,825** [2] - 57:24, 59:24
**$4,000** [2] - 57:23, 60:4
**$425** [1] - 57:21
**$6,000** [1] - 62:1
**$8,000** [1] - 57:18

## 0

**04111** [1] - 3:24

## 1

**1,225** [1] - 33:4
**10** [8] - 5:4, 40:1, 55:21, 56:17, 59:15, 78:3, 79:23, 90:7
**10-MDL-2179** [1] - 1:6
**1000** [1] - 5:7
**10153** [1] - 5:23
**10174** [1] - 5:12
**105** [1] - 79:16
**10TH** [1] - 9:14
**10th** [2] - 59:20, 69:16
**11** [2] - 8:6, 67:8
**110** [1] - 41:22
**1100** [1] - 3:7
**12** [1] - 55:2
**12(b)(6** [1] - 45:2
**1200** [1] - 39:4
**1201** [1] - 4:9
**13** [2] - 33:3, 55:2
**1300** [2] - 4:18, 5:20
**1331** [1] - 4:12
**14** [5] - 64:1, 64:4, 64:19, 64:20, 78:5
**14th** [1] - 64:10
**15** [5] - 64:1, 64:4, 64:19, 64:20, 78:5
**15th** [7] - 64:10, 64:14, 72:13, 84:16, 84:20, 84:22
**1601** [1] - 1:24
**1615** [1] - 4:18
**1665** [1] - 4:12
**17** [2] - 10:14, 59:7
**1700** [1] - 4:9
**19** [5] - 8:8, 55:15, 65:21, 65:22, 66:4
**19th** [1] - 65:24

**1:30** [1] - 1:7

## 2

**20** [20] - 1:5, 10:8, 10:9, 40:1, 47:5, 55:15, 65:21, 65:22, 65:25, 66:2, 66:4, 66:25, 67:1, 87:24, 88:3, 88:4
**2000** [1] - 6:9
**20005** [1] - 5:20
**20006** [1] - 4:22
**20044** [1] - 2:17
**2007** [1] - 4:16
**2009** [1] - 30:25
**201** [1] - 6:5
**2010** [4] - 1:5, 34:16, 39:10, 47:5
**2011** [4] - 1:7, 10:13, 10:14, 11:2
**2020** [1] - 4:22
**20TH** [1] - 8:13
**20th** [3] - 53:23, 54:4, 76:23
**21** [6] - 65:21, 65:25, 66:2, 66:3, 66:4
**2185** [1] - 6:11
**21st** [1] - 65:23
**22** [3] - 66:2, 66:3, 66:4
**23rd** [2] - 76:21, 78:2
**25** [3] - 32:21, 33:2, 33:6
**250** [1] - 45:19
**26** [3] - 1:7, 11:2, 23:11
**26(b)(4)(E)(i** [1] - 57:7
**2615** [1] - 2:4
**27** [4] - 8:9, 23:11, 42:21, 59:8
**27th** [2] - 31:13, 41:8
**29th** [2] - 66:20

## 3

**3** [2] - 10:13, 73:21
**30** [9] - 10:8, 32:21, 68:19, 68:23, 69:1, 87:23, 88:3, 88:4
**30(b)(6** [9] - 76:16, 77:12, 77:20, 77:23, 78:5, 78:19, 79:13, 81:6, 83:7
**30(b)(6)** [1] - 83:3
**30-day** [3] - 31:9, 31:10
**300** [1] - 3:20

**30th** [1] - 41:6
**31** [1] - 55:11
**31st** [6] - 64:24, 66:7, 69:8, 71:18, 71:22, 71:23
**31ST** [1] - 9:11
**31ST.............** [1] - 8:24
**31ST.........................** **......... [1]** - 9:4
**3450** [1] - 6:12
**35** [4] - 30:5, 33:3, 38:9, 79:16
**355** [1] - 4:25
**36130** [1] - 2:20
**365** [1] - 6:9
**36604** [1] - 1:24
**3668** [1] - 1:17
**36TH** [1] - 3:6
**3:27** [1] - 91:4
**3rd** [4] - 69:16, 85:8, 85:13, 85:14
**3RD** [2] - 10:4, 10:5
**3RD.........................** **.... [1]** - 9:13

## 4

**40-some** [1] - 70:12
**400** [1] - 83:17
**4000** [1] - 5:7
**405** [1] - 5:12
**408** [1] - 72:16
**40TH** [1] - 5:4
**41** [3] - 69:9, 71:10, 71:24
**4400** [1] - 4:25
**450** [1] - 2:12

## 5

**50** [3] - 30:3, 45:17, 56:23
**500** [4] - 2:20, 3:10, 6:12, 7:4
**504** [1] - 7:5
**53** [3] - 8:10, 8:11, 8:13
**5395** [1] - 2:13
**54** [4] - 8:15, 8:17, 8:18, 8:19
**546** [1] - 4:4
**55** [2] - 8:20, 8:21
**556** [1] - 1:17
**589-7779** [1] - 7:5

## 6

**6** [1] - 67:18
**601** [1] - 2:4
**60606** [1] - 5:4
**60654** [1] - 3:21
**63** [1] - 8:22
**64** [3] - 8:23, 8:24, 8:25
**65** [2] - 9:1, 9:2
**66** [3] - 9:3, 9:5, 9:6
**67** [2] - 9:7, 9:8
**68** [2] - 9:9, 9:10
**69** [5] - 9:11, 9:12, 9:14, 9:15, 9:17
**6:00** [1] - 53:12
**6th** [1] - 72:14

## 7

**7** [3] - 63:22, 63:23, 67:19
**700** [1] - 45:18
**70112** [1] - 4:19
**70113** [2] - 1:21, 2:8
**70130** [2] - 2:5, 4:5, 6:9, 7:4
**70163** [1] - 3:7
**70170** [1] - 6:5
**70502** [1] - 1:18
**711** [1] - 3:10
**72** [1] - 9:19
**73** [1] - 9:20
**74** [1] - 9:21
**75** [1] - 9:22
**750** [2] - 29:12, 30:4
**75270** [1] - 4:9
**76** [1] - 9:23
**7611** [1] - 2:17
**767** [1] - 5:23
**77002** [3] - 3:11, 5:8, 6:13
**77010** [1] - 4:13
**7TH** [1] - 2:13

## 8

**8** [3] - 63:22, 63:23, 67:19
**820** [1] - 1:20
**83** [2] - 9:24, 10:1
**84** [1] - 10:3
**85** [2] - 10:4, 10:5
**855** [1] - 2:7
**86** [1] - 10:7
**87** [1] - 10:8
**88** [1] - 10:10

**89** [1] - 10:11
**8:00** [2] - 10:13, 85:16

## 9

**9** [4] - 55:21, 56:17, 57:21, 59:14
**90** [1] - 90:3
**900** [1] - 5:20
**90071** [1] - 4:25
**91** [2] - 10:13, 10:14
**94102** [1] - 2:13
**9:30** [1] - 10:14
**9th** [1] - 59:20

## A

**a.m** [1] - 85:16
**A.M......** [1] - 10:14
**A.M................** [1] - 10:13
**abbreviated** [1] - 25:8
**abide** [2] - 43:17, 49:13
**ability** [2] - 80:6, 91:15
**able** [4] - 18:15, 53:11, 62:10, 82:24
**above-entitled** [1] - 91:16
**ABRAMSON** [1] - 2:3
**absolutely** [5] - 36:18, 52:22, 52:24, 60:22, 71:8
**accommodate** [1] - 18:18
**accommodating** [1] - 17:25
**accommodation** [1] - 44:8
**according** [3] - 38:14, 44:11, 59:1
**account** [1] - 57:24
**accurate** [4] - 50:10, 50:12, 50:13
**acted** [1] - 47:12
**action** [2] - 76:24
**ACTION** [1] - 1:6
**actions** [2] - 47:7, 76:17
**ACTIONS** [1] - 1:9
**acts** [1] - 77:18
**actual** [1] - 84:14
**add** [9] - 24:9, 66:10, 69:15, 70:12, 72:3, 72:4, 78:13, 79:20, 80:6
**ADD** [1] - 9:12
**add-on** [1] - 79:20

**added** [4] - 69:13, 69:14, 77:12
**adding** [1] - 64:18
**addition** [7] - 22:15, 23:2, 30:6, 57:16, 74:5, 80:10, 81:9
**ADDITIONAL** [2] - 8:24, 9:9
**additional** [23] - 15:22, 29:7, 29:10, 35:19, 39:13, 39:18, 40:8, 40:12, 40:13, 45:19, 46:1, 46:5, 46:6, 50:23, 51:24, 58:1, 64:24, 68:10, 77:11, 78:13, 78:15, 80:24, 90:13
**additions** [2] - 69:17, 76:11
**ADDITIONS..........** [1] - 9:14
**ADDITIONS...............** ........ [1] - 9:23
**address** [5] - 16:20, 38:19, 65:4, 65:12, 86:22
**addressed** [2] - 51:23, 86:4
**adequately** [1] - 51:9
**admissibility** [2] - 61:3, 61:19
**admissible** [9] - 23:12, 60:23, 61:13, 61:18, 61:23, 62:8, 62:11, 62:12, 62:13
**advance** [9] - 25:25, 26:9, 26:15, 27:4, 27:12, 56:13, 56:18, 57:20, 83:11
**adverse** [5] - 20:11, 20:21, 23:13, 24:5, 26:14
**advice** [6] - 14:17, 15:3, 15:9, 15:11, 17:22
**advised** [3] - 12:15, 15:2, 17:21
**advisement** [1] - 27:21
**affect** [4] - 35:8, 35:12, 36:8, 37:19
**affirmatively** [1] - 34:15
**affording** [1] - 25:14
**AFTER** [1] - 9:17
**afternoon** [10] - 11:9, 12:6, 12:7, 19:8, 27:24, 48:12, 70:16, 72:2, 76:12
**agenda** [2] - 19:14,

41:15, 52:19, 76:8, 84:6
**AGENDA** [1] - 8:4
**ago** [2] - 56:11, 73:18
**agony** [1] - 79:15
**agree** [13] - 17:7, 21:2, 23:18, 26:4, 45:9, 45:12, 48:15, 51:2, 52:2, 57:4, 61:23, 83:2, 85:5
**agreed** [2] - 84:17, 85:5
**agreeing** [1] - 35:10
**agreement** [5] - 30:20, 45:23, 46:14, 54:4, 57:1
**agrees** [2] - 14:24, 49:11
**ahead** [7] - 15:25, 17:18, 35:25, 54:12, 59:2, 69:5, 69:6
**AI** [3] - 34:7, 36:8, 36:19
**airplane** [1] - 62:6
**AL** [2] - 1:24, 2:20
**ALABAMA** [1] - 2:19
**ALAN** [2] - 4:11, 5:11
**Albertin** [2] - 54:21, 55:1
**ALBERTIN................** ....................... [1] - 8:19
**Alberty** [2] - 54:21, 55:4
**ALBERTY.................** ....................... [1] - 8:18
**alerted** [1] - 80:22
**ALL** [1] - 1:9
**ALLAN** [1] - 6:16
**allegation** [3] - 29:18, 80:19, 81:22
**allegations** [9] - 76:25, 77:10, 77:17, 80:17, 80:21, 81:2, 81:3, 81:11, 81:22
**allege** [1] - 29:19
**alleged** [4] - 40:14, 77:3, 77:5, 77:15
**allegedly** [1] - 77:24
**ALLEN** [1] - 6:12
**allow** [3] - 16:13, 17:18, 81:10
**allowing** [1] - 25:14
**allows** [1] - 23:3
**almost** [2] - 56:23, 78:4
**ALSO** [1] - 6:15
**alternative** [8] - 40:23, 42:4, 77:4, 77:16,

77:17, 78:11, 81:12, 81:24
**alternatively** [1] - 38:24
**amazing** [1] - 56:23
**AMBROSE** [1] - 10:9
**Ambrose** [2] - 87:24, 88:1
**AMENDMENT** [1] - 8:8
**Amendment** [17] - 18:14, 18:21, 18:24, 19:1, 19:15, 19:16, 20:6, 20:16, 20:20, 22:17, 25:2, 25:12, 25:13, 25:15, 25:18, 26:1, 27:10
**AMERICA** [7] - 2:15, 3:13, 3:13, 3:14, 3:15, 3:17, 3:18
**AMERICAN** [1] - 2:4
**amount** [4] - 17:20, 32:18, 32:23, 58:1
**amounted** [1] - 35:1
**ample** [1] - 79:12
**ANADARKO** [2] - 4:14, 4:15
**Anadarko** [9] - 32:22, 50:2, 50:21, 50:22, 51:7, 53:18, 53:25, 69:1, 73:12
**ANADARKO'S** [1] - 8:11
**Anadarko's** [2] - 50:18, 53:15
**Anadarko/MOEX's** [1] - 54:3
**AND** [6] - 3:4, 4:16, 5:18, 8:17, 9:15, 10:9
**ANDREW** [1] - 3:19
**Andy** [20] - 19:17, 27:25, 54:24, 55:4, 58:16, 58:17, 58:19, 58:21, 59:2, 60:18, 61:22, 62:8, 62:10, 62:16, 62:22, 66:14, 72:11, 74:3, 86:19, 86:20
**angel** [1] - 66:19
**ANGEL** [1] - 9:5
**ANGELES** [1] - 4:25
**answer** [16] - 12:1, 12:10, 12:18, 12:20, 13:25, 14:8, 14:19, 15:12, 24:4, 25:5, 25:8, 25:10, 26:8, 37:13, 39:9, 83:7
**answers** [2] - 56:7, 83:3
**anticipate** [1] - 37:8

**anticipated** [3] - 79:20, 81:4, 81:6
**ANY** [1] - 9:14
**anyway** [3] - 19:13, 21:7, 66:5
**apologize** [3] - 13:10, 30:19, 79:5
**appear** [2] - 57:2, 57:4
**APPEARANCES** [7] - 1:14, 2:1, 3:1, 4:1, 5:1, 6:1, 7:1
**appeared** [1] - 79:8
**apple** [2] - 32:2, 44:4
**applicable** [1] - 25:10
**applies** [1] - 40:3
**apply** [2] - 57:11, 59:9
**appointed** [1] - 24:11
**appreciate** [2] - 27:20, 49:22
**apprise** [1] - 53:21
**approach** [4] - 33:11, 36:6, 37:17, 38:20
**appropriate** [2] - 23:4, 34:20
**April** [3] - 47:5, 76:23, 80:3
**APRIL** [1] - 1:5
**Arbuckle** [7] - 28:5, 28:10, 56:2, 58:7, 58:8, 59:22, 63:2
**area** [6] - 16:14, 17:7, 17:20, 30:22
**areas** [1] - 30:21
**argue** [3] - 31:2, 40:3, 48:1
**argument** [6] - 23:8, 33:16, 46:6, 46:22, 47:1, 74:16
**arguments** [1] - 42:23
**army** [1] - 27:18
**AROSE** [1] - 8:6
**arose** [2] - 11:20, 87:14
**arrangements** [2] - 56:18, 56:21
**art** [1] - 82:4
**asleep** [1] - 43:25
**asserted** [2] - 76:25, 80:3
**assertions** [1] - 90:4
**assume** [2] - 43:10, 55:4
**assumed** [5] - 44:18, 46:2, 46:6, 58:4, 87:6
**assuming** [4] - 35:17, 36:18, 43:11, 75:15
**ate** [1] - 29:2
**Atofina** [3] - 39:17, 40:3, 49:4

**attend** [1] - 57:3
**attended** [1] - 31:21
**attention** [4] - 42:17, 86:5, 88:6, 88:9
**ATTORNEY** [1] - 2:19
**attorney** [5] - 14:2, 14:7, 14:23, 15:2, 28:5
**Attorney** [1] - 86:4
**attorney's** [1] - 57:17
**attorneys** [3] - 17:21, 24:23, 87:1
**August** [10] - 31:16, 70:3, 70:5, 70:7, 70:8, 70:11, 71:4, 71:5, 84:16, 84:22
**authentic** [5] - 60:20, 60:23, 61:23, 62:8, 62:17
**authority** [3] - 39:16, 40:12, 40:18
**authorization** [1] - 57:12
**authorized** [1] - 20:19
**availability** [1] - 67:7
**available** [14] - 55:21, 56:5, 56:16, 59:20, 64:23, 66:7, 66:13, 68:5, 68:9, 70:9, 71:4, 75:9, 77:5, 81:24
**AVENUE** [7] - 1:20, 2:12, 2:20, 4:25, 5:12, 5:23, 6:5
**avoid** [2] - 20:7, 87:4
**avoiding** [1] - 26:25
**awaiting** [2] - 53:16, 54:4
**aware** [2] - 20:13, 87:6
**awareness** [1] - 77:16
**awful** [1] - 81:21

## B

**BABIUCH** [1] - 3:19
**BALDWIN** [1] - 6:4
**BARBARA** [1] - 9:6
**Barbara** [1] - 66:23
**Barbier** [21] - 19:23, 20:3, 21:11, 21:18, 21:21, 22:12, 31:5, 31:13, 40:10, 40:19, 40:24, 41:7, 42:20, 44:24, 48:6, 49:10, 49:18, 62:13, 73:18, 86:12, 88:17
**Barbier's** [1] - 28:21
**BARONNE** [1] - 2:7
**barrel** [1] - 28:25

**based** [4] - 12:11, 27:9, 40:18, 81:22
**basic** [2] - 33:19, 34:13
**basis** [8] - 12:1, 14:12, 15:8, 17:3, 39:11, 46:15, 80:20, 81:11
**battalion** [1] - 23:15
**BE** [2] - 9:15, 10:1
**become** [2] - 73:21
**becomes** [1] - 38:16
**BEFORE** [2] - 1:12, 8:24
**beginning** [1] - 25:4
**behalf** [8] - 22:9, 30:19, 42:24, 61:5, 62:9, 62:17, 65:2, 81:18
**behind** [1] - 22:6
**believes** [1] - 50:23
**below** [1] - 34:12
**belts** [1] - 84:12
**BEN** [1] - 6:21
**bench** [1] - 23:24
**BERTAUT** [1] - 4:4
**best** [5] - 36:12, 36:13, 58:6, 78:18, 91:14
**bet** [2] - 54:22, 67:5
**better** [4] - 65:14, 74:19, 86:1, 87:23
**between** [7] - 29:6, 34:6, 38:19, 46:24, 81:1, 90:7
**beyond** [2] - 32:2, 75:9
**big** [1] - 80:8
**bill** [1] - 59:19
**billion** [2] - 29:9, 29:11, 29:12
**BINGHAM** [2] - 4:20, 4:24
**bit** [4] - 70:17, 74:6, 79:20, 87:16
**bite** [2] - 32:1, 44:3
**blah** [3] - 81:19, 81:20
**BLANK** [1] - 5:10
**blanket** [1] - 21:24
**blowout** [10] - 76:22, 77:1, 77:3, 77:6, 77:7, 77:19, 78:15, 79:22, 80:18, 81:8
**board** [1] - 87:22
**boat** [2] - 11:17, 80:8
**Bobo** [1] - 60:10
**BOCKIUS** [1] - 5:6
**BOP** [9] - 77:9, 77:16, 77:17, 77:21, 78:2, 78:3, 79:16, 81:11, 81:23
**BOPs** [1] - 81:18

**BOUNDS** [1] - 1:23
**BOX** [2] - 1:17, 2:17
**BP** [96] - 3:13, 3:13, 3:14, 3:15, 3:16, 3:17, 3:18, 12:14, 13:16, 14:23, 15:8, 15:17, 15:21, 16:1, 17:10, 17:11, 22:4, 29:6, 29:7, 29:10, 29:13, 29:19, 29:20, 29:24, 29:25, 30:22, 31:4, 32:4, 32:12, 32:19, 32:22, 34:6, 34:11, 34:15, 35:13, 35:15, 35:16, 36:8, 36:22, 37:19, 39:13, 39:14, 40:3, 40:6, 41:4, 43:13, 43:20, 44:8, 44:19, 45:23, 45:25, 46:22, 47:7, 47:9, 47:13, 47:16, 47:23, 48:7, 48:18, 50:9, 50:23, 51:7, 53:16, 53:25, 54:3, 55:7, 57:1, 58:15, 58:24, 60:15, 61:5, 62:17, 63:19, 76:16, 76:18, 76:23, 77:10, 77:17, 77:23, 78:1, 78:10, 78:14, 78:18, 79:11, 80:15, 80:21, 80:22, 81:3, 81:5, 81:15, 81:18, 82:11, 86:13, 86:20
**BP's** [13] - 28:16, 30:13, 31:2, 31:7, 35:5, 38:22, 39:15, 46:6, 62:9, 77:16, 77:20, 79:9, 81:11
**BP/MOEX** [2] - 9:19, 72:9
**BRANCH** [1] - 2:11
**breach** [5] - 35:1, 35:2, 35:3, 35:11, 40:14
**breached** [4] - 35:15, 40:7, 46:18, 47:14
**break** [2] - 69:23, 83:13
**BREAK....................
.................** [1] - 9:18
**Brian** [1] - 66:4
**BRIAN** [1] - 6:16
**briefing** [2] - 31:10, 72:22
**briefly** [3] - 17:22, 80:13, 88:11
**bright** [1] - 39:6
**bring** [3] - 36:15, 72:23, 88:8

**broad** [3] - 33:9, 81:16, 82:10
**brought** [1] - 30:1
**BRUNO** [12] - 2:6, 2:7, 12:7, 12:14, 12:24, 14:25, 16:22, 17:1, 17:8, 17:17, 17:24
**Bruno** [8] - 11:23, 13:6, 13:11, 14:24, 15:5, 15:13, 16:20, 17:19
**BUILDING** [2] - 2:4, 5:11
**bulk** [1] - 30:3
**bunch** [1] - 18:15
**BURLING** [1] - 3:22
**business** [1] - 83:25
**buttons** [1] - 65:11
**buy** [2] - 19:6, 47:1
**BY** [29] - 1:4, 1:16, 1:20, 1:23, 2:3, 2:7, 2:11, 2:16, 2:19, 3:6, 3:9, 3:19, 3:23, 4:4, 4:7, 4:11, 4:18, 4:21, 4:24, 5:3, 5:6, 5:11, 5:19, 5:22, 6:4, 6:8, 6:11, 7:6, 7:7
**Byrd** [2] - 78:10, 79:24
**Byrd's** [1] - 79:20

## C

**CA** [3] - 2:13, 3:24, 4:25
**Cafe** [1] - 18:8
**calendar** [4] - 23:19, 14:19, 64:23, 75:21
**CALLED** [1] - 11:4
**CAMERON** [1] - 4:3
**Cameron** [22] - 34:7, 43:13, 71:19, 71:20, 76:13, 76:15, 76:18, 76:24, 77:5, 77:7, 77:22, 78:16, 78:17, 78:20, 79:9, 79:11, 79:18, 80:15, 80:19, 81:5, 81:18, 82:2
**CAMERON'S** [1] - 9:23
**Cameron's** [2] - 76:10, 77:21
**CAN** [1] - 10:8
**CANAL** [2] - 6:8, 6:9
**cancel** [1] - 22:20
**candid** [1] - 17:14
**CANNON** [1] - 6:19
**cannot** [2] - 24:4, 48:17, 70:25
**card** [1] - 58:2

**care** [3] - 47:25, 53:13, 69:6
**careful** [1] - 77:13
**carefully** [2] - 32:14, 36:22
**CARMELITE** [1] - 4:4
**CARONDELET** [1] - 4:4
**carry** [1] - 90:24
**carrying** [1] - 65:13
**case** [28] - 30:22, 31:1, 34:4, 34:10, 34:18, 34:19, 35:22, 37:5, 38:2, 39:17, 39:18, 42:25, 43:11, 43:12, 43:14, 43:22, 46:25, 48:10, 49:4, 49:8, 49:9, 49:20, 51:19, 60:7, 87:10, 88:9, 88:18, 88:21
**case-specific** [1] - 88:18
**caselaw** [1] - 20:25
**cases** [13] - 24:12, 24:24, 29:4, 29:16, 31:19, 32:1, 32:11, 32:13, 36:1, 41:24, 46:21, 88:21, 89:21
**cat** [4] - 44:25, 60:19, 60:21, 69:10
**catch** [1] - 66:1
**CATHLEENIA** [1] - 9:10
**Cathleenia** [1] - 68:22
**CATHY** [1] - 7:3
**Cathy** [2] - 91:10, 91:20
**cathy_Pepper@laed.
uscourts.gov** [1] - 7:5
**Cathy Pepper@laed
.uscourts.gov** [1] - 91:22
**caution** [1] - 17:19
**cautious** [1] - 87:4
**caveat** [1] - 43:4
**CCR** [2] - 7:3, 91:20
**cede** [1] - 68:22
**CENTER** [1] - 6:12
**CENTRE** [1] - 3:6
**certainly** [6] - 23:17, 51:13, 60:21, 70:11, 81:7, 82:18
**CERTIFICATE** [1] - 91:8
**CERTIFIED** [1] - 7:3
**Certified** [3] - 91:10, 91:11, 91:20
**certify** [1] - 91:13
**CG** [1] - 40:1

**chambers** [1] - 85:16
**change** [3] - 23:2, 23:7, 65:20
**changes** [1] - 56:25
**characterization** [1] - 38:12
**charge** [3] - 59:16, 85:11, 89:10
**CHARLES** [2] - 6:4, 6:5
**chart** [4] - 30:12, 30:13, 33:10, 49:24
**cheapened** [1] - 63:12
**checking** [1] - 59:12
**CHICAGO** [2] - 3:21, 5:4
**chime** [1] - 24:7
**CHRYSLER** [1] - 5:11
**Circuit** [3] - 31:1, 40:18, 49:8
**circulate** [1] - 72:1
**circulated** [4] - 53:10, 54:9, 72:8, 76:3
**circumscribed** [1] - 32:20
**circumstances** [2] - 59:22, 60:12
**CIVIL** [2] - 1:6, 2:11
**claim** [1] - 32:15
**CLAIMANTS** [1] - 10:7
**claimants** [1] - 86:8
**claims** [14] - 31:7, 34:5, 34:19, 34:20, 35:24, 51:5, 52:8, 77:11, 78:20, 80:7, 80:15, 80:16, 86:9, 86:11
**clamoring** [1] - 24:23
**clarification** [2] - 84:21, 84:23
**Clark's** [1] - 22:5
**CLARKE** [13] - 6:15, 18:23, 19:20, 19:25, 21:2, 21:6, 21:9, 21:23, 23:6, 23:17, 25:22, 27:6, 27:23
**Clarke** [2] - 19:17, 27:21
**clean** [2] - 26:11, 72:3
**clean-up** [1] - 72:3
**cleaning** [1] - 70:23
**cleanup** [1] - 71:2
**clear** [1] - 85:2
**clearer** [1] - 51:16
**clearly** [3] - 12:8, 42:11, 47:19
**clerk** [1] - 28:21
**CLERK** [2] - 11:7, 71:12
**client** [6] - 24:2, 26:6,

26:8, 56:5, 60:21, 61:22
**client's** [1] - 14:2
**close** [4] - 12:19, 12:20, 30:11, 56:25
**closer** [1] - 15:24
**CMO** [1] - 73:21
**code** [1] - 23:3
**coemployee** [1] - 15:3
**coin** [1] - 37:5
**cold** [1] - 84:5
**colleague** [1] - 28:16
**colleagues** [1] - 41:17
**color** [5] - 74:21, 74:24, 75:7, 75:12, 75:17
**colors** [2] - 74:25, 75:9
**coming** [2] - 44:23, 49:25
**commencing** [1] - 69:23
**COMMENCING** [1] - 9:17
**comment** [4] - 38:8, 39:11, 53:10, 53:12
**common** [1] - 24:12
**communicate** [1] - 35:21
**communicating** [1] - 86:24
**communications** [1] - 48:23
**COMPANY** [3] - 3:14, 4:15
**company** [4] - 30:7, 89:14, 89:15, 89:20
**Company** [1] - 30:8
**compare** [1] - 49:23
**comparison** [1] - 33:15
**compile** [1] - 76:6
**complaint** [2] - 31:6, 39:12
**complaints** [1] - 29:18, 30:24
**complete** [3] - 45:8, 54:3, 76:4
**completed** [1] - 45:6
**completely** [2] - 70:18, 75:8
**completing** [1] - 53:23
**COMPLETING** [1] - 8:13
**completion** [1] - 58:15
**comply** [1] - 78:18
**COMPUTER** [1] - 7:7
**concept** [2] - 37:14, 38:2
**concern** [5] - 16:4,

24:17, 37:24, 41:20, 44:23
**concerned** [2] - 84:15, 88:17
**concerning** [3] - 50:22, 76:25, 77:18
**concerns** [5] - 16:11, 20:16, 40:24, 79:10, 86:23
**concluded** [1] - 91:5
**conclusions** [1] - 61:9
**conditional** [1] - 46:23
**conditions** [1] - 56:4
**conduct** [2] - 44:10, 78:16
**confer** [6] - 26:2, 26:3, 26:10, 26:15, 72:21, 81:15
**conference** [8] - 18:3, 53:22, 73:16, 85:12, 85:14, 85:15, 85:22, 88:12
**CONFERENCE** [3] - 1:11, 10:5, 10:14
**CONFERENCE..........** ......................... [1] - 10:6
**conferences** [3] - 31:21, 37:23, 83:24
**CONFERENCES.......** ..............................[1] - 10:2
**confess** [1] - 30:16
**confidential** [3] - 16:15, 16:23, 17:1
**CONFIDENTIALITY** [1] - 8:10
**confidentiality** [3] - 16:12, 53:9, 57:1
**confirmed** [7] - 54:21, 55:1, 55:15, 64:5, 64:17, 64:20, 68:3
**connected** [2] - 48:24, 87:12
**connection** [1] - 12:16
**consider** [2] - 16:13, 60:21
**considered** [1] - 16:14
**consolidation** [1] - 75:15
**construction** [2] - 39:21, 46:14
**contact** [3] - 87:19, 88:23, 89:13
**contacted** [3] - 58:16, 66:12, 67:6
**contacting** [2] - 68:8, 69:24
**contemplating** [1] - 38:23

**contends** [1] - 29:11
**contention** [2] - 82:25, 83:5
**contesting** [1] - 16:12
**context** [2] - 34:2, 37:18
**continue** [2] - 75:11, 76:6
**CONTINUED** [6] - 2:1, 3:1, 4:1, 5:1, 6:1, 7:1
**contract** [45] - 29:6, 29:21, 34:9, 34:11, 34:12, 34:13, 35:2, 35:3, 35:8, 35:9, 35:11, 35:12, 35:16, 35:24, 36:7, 36:13, 36:20, 36:25, 37:17, 39:14, 39:18, 39:21, 39:23, 40:7, 40:15, 40:16, 40:20, 42:15, 44:15, 44:18, 44:20, 45:11, 45:24, 45:25, 46:3, 46:17, 46:18, 47:14, 47:15, 48:19, 48:24, 49:4, 51:25
**contracts** [2] - 34:7, 34:21
**contractual** [1] - 34:24
**control** [1] - 81:19
**convey** [1] - 59:5
**coordinated** [1] - 74:21
**coordinating** [1] - 75:13
**coordination** [1] - 75:17
**copy** [5] - 30:18, 54:10, 56:12, 57:19, 89:22
**core** [7] - 36:11, 44:15, 46:8, 46:21, 47:4, 47:19, 47:23
**COREY** [2] - 2:19, 8:15
**Corey** [9] - 54:8, 54:11, 54:12, 54:19, 63:21, 66:1, 85:23, 88:5, 88:6
**corporate** [1] - 78:10
**CORPORATION** [5] - 3:15, 4:3, 4:15, 4:16, 5:10
**correct** [13] - 14:25, 36:6, 36:16, 36:21, 37:17, 38:20, 41:10, 55:3, 64:6, 64:8, 79:9, 89:3, 91:14
**corrective** [1] - 55:7
**cost** [1] - 62:2
**costs** [1] - 51:6

**COTLAR** [1] - 1:19
**counsel** [29] - 11:25, 12:16, 12:17, 12:22, 12:23, 12:24, 13:15, 13:16, 13:21, 13:22, 14:4, 14:14, 14:15, 14:20, 15:18, 16:10, 17:10, 18:13, 26:12, 26:17, 28:16, 30:2, 50:19, 52:20, 64:3, 73:16, 75:13, 87:8
**COUNSEL** [1] - 1:15
**counsel's** [1] - 26:24
**count** [1] - 56:23
**counter** [1] - 75:4
**counter-designating** [1] - 75:4
**counterclaim** [2] - 31:7, 43:18
**counterclaimed** [1] - 29:25
**counterclaims** [1] - 37:13
**counterproposals** [1] - 50:8
**couple** [3] - 18:13, 63:15, 66:15
**course** [6] - 11:24, 28:12, 58:21, 61:12, 65:6, 73:17
**Court** [28] - 16:13, 19:25, 23:23, 26:2, 29:17, 30:25, 36:5, 38:19, 39:18, 40:12, 42:19, 44:19, 49:3, 49:8, 57:13, 58:6, 78:12, 80:24, 84:21, 86:14, 86:16, 87:6, 88:22, 91:11, 91:12, 91:13, 91:21, 91:21
**court** [5] - 13:18, 20:14, 24:11, 24:13, 57:11
**COURT** [206] - 1:1, 7:3, 11:4, 11:8, 11:10, 11:13, 11:15, 11:19, 12:5, 12:13, 12:23, 13:3, 14:6, 14:22, 15:1, 15:10, 15:19, 15:25, 16:3, 16:20, 16:25, 17:6, 17:16, 17:18, 18:1, 18:6, 18:17, 18:20, 18:25, 19:8, 19:12, 19:24, 20:23, 21:3, 21:8, 21:20, 22:3, 22:7, 22:19, 23:5, 23:16, 24:6, 24:17, 24:21, 26:18, 27:20, 27:24, 28:9, 28:13,

28:18, 28:23, 29:2, 33:13, 33:17, 33:21, 36:10, 36:14, 36:21, 37:8, 37:20, 38:22, 39:6, 42:5, 42:8, 42:24, 43:3, 43:5, 43:10, 43:21, 44:22, 45:9, 45:13, 48:11, 48:25, 49:2, 49:15, 49:22, 50:4, 50:14, 51:21, 52:1, 52:6, 52:9, 52:13, 52:18, 52:22, 52:24, 53:4, 53:7, 54:6, 54:17, 55:1, 55:4, 55:8, 55:12, 55:18, 55:23, 58:8, 58:11, 58:22, 59:2, 59:10, 59:13, 60:1, 60:6, 60:9, 60:18, 60:22, 61:1, 61:4, 61:12, 62:1, 62:7, 62:12, 62:16, 62:22, 63:1, 63:4, 63:12, 63:17, 64:4, 64:7, 64:12, 64:14, 64:17, 64:20, 65:8, 65:13, 65:16, 65:18, 65:22, 66:1, 66:5, 66:18, 66:24, 67:1, 67:3, 67:5, 67:16, 68:4, 68:6, 68:17, 68:20, 68:25, 69:2, 70:4, 70:19, 70:23, 71:8, 71:13, 71:20, 71:23, 72:1, 72:18, 72:25, 73:8, 73:11, 73:15, 73:23, 74:8, 74:13, 74:15, 75:1, 75:19, 76:2, 76:8, 76:14, 78:23, 79:1, 79:6, 80:12, 80:25, 82:1, 82:4, 82:10, 82:20, 82:22, 83:1, 83:9, 83:13, 84:11, 84:23, 84:25, 85:5, 85:10, 85:14, 85:18, 85:20, 85:25, 86:18, 86:25, 87:2, 87:11, 88:1, 88:3, 88:5, 88:25, 89:2, 89:4, 89:8, 89:12, 89:20, 90:16, 90:18, 90:24, 91:2
**Court's** [4] - 70:20, 86:5, 88:8, 88:14
**court-appointed** [1] - 24:11
**courtroom** [2] - 30:9, 58:10
**courts** [1] - 29:15

cover [4] - 76:17, 77:10, 82:13, 83:9
coverage [21] - 28:16, 28:17, 29:9, 29:19, 29:24, 29:25, 36:1, 37:7, 39:12, 39:19, 44:17, 45:18, 46:16, 47:4, 47:17, 49:6, 50:19, 50:22, 51:20, 51:25
covered [1] - 46:19
covering [1] - 76:21
COVINGTON [1] - 3:22
Covington [1] - 28:16
create [1] - 23:13
credit [1] - 58:2
crime [1] - 27:18
criminal [2] - 11:25, 12:24
cross [3] - 47:12, 76:17, 76:24
crossclaim [1] - 81:5
crossclaims [4] - 79:9, 80:4, 80:7, 80:15
CRR [2] - 7:3, 91:20
crucial [1] - 70:25
Cunningham [2] - 61:10, 61:15
CUNNINGHAM [9] - 1:23, 1:23, 60:14, 60:23, 61:8, 61:18, 62:19, 62:25, 63:22
cure [1] - 89:15
current [1] - 60:12
custodial [5] - 58:12, 59:8, 59:15, 59:19, 60:17
customary [1] - 56:22
cutoff [1] - 22:25
cuts [2] - 74:18, 75:17
CUTS.......................
............. [1] - 9:21

**D**

DALLAS [2] - 4:9, 6:12
dangerous [1] - 77:4
dangers [1] - 16:17
dark [1] - 75:10
darts [1] - 17:15
data [1] - 78:16
date [8] - 22:25, 45:8, 51:10, 54:2, 54:4, 68:3, 78:4, 84:4
dates [14] - 55:5, 55:15, 55:20, 66:7, 66:8, 66:9, 66:13,

66:15, 67:11, 67:17, 67:19, 68:5, 68:8, 69:24
defaulted [1] - 71:24
defective [2] - 81:12, 81:23
defendant [2] - 74:23, 75:8
defendants [8] - 44:3, 73:6, 74:1, 74:2, 74:20, 75:4, 75:12, 76:5
defense [3] - 26:12, 51:6, 75:18
defenses [1] - 74:21
defer [1] - 41:16
deficiencies [2] - 80:18, 81:8
defined [2] - 32:13, 44:13
definition [2] - 42:2, 44:6
deflect [1] - 42:17
delayed [1] - 48:2
delighted [1] - 85:3
delineate [1] - 31:25
demand [3] - 34:15, 34:17, 37:4
demonstrating [1] - 62:20
DENISE [1] - 5:6
dep [2] - 66:20, 67:2
DEPARTMENT [2] - 2:10, 2:16
depleted [2] - 52:13, 52:14
depo [2] - 75:16
deponent [1] - 22:11
deponents [3] - 26:1, 70:25, 72:3
depos [1] - 70:22
depose [2] - 38:4, 57:12
deposed [4] - 32:4, 38:3, 38:4, 71:17
deposition [30] - 11:20, 11:24, 13:23, 14:16, 17:3, 20:4, 22:1, 22:12, 23:10, 25:4, 26:8, 26:22, 27:24, 56:9, 56:18, 57:15, 57:16, 58:5, 59:21, 61:12, 61:25, 63:7, 67:23, 74:18, 76:16, 76:19, 77:23, 78:3, 79:25
DEPOSITION [3] - 8:6, 9:21, 13:20
depositions [33] - 12:16, 16:5, 20:2, 22:10, 22:16, 22:23, 23:3, 23:13, 23:25,

69:21, 70:24
defaulted [1] - 71:24
defective [2] - 81:12, 81:23
defendant [2] - 74:23, 75:8
defendants [8] - 44:3, 73:6, 74:1, 74:2, 74:20, 75:4, 75:12, 76:5
defense [3] - 26:12, 51:6, 75:18
defenses [1] - 74:21
defer [1] - 41:16
deficiencies [2] - 80:18, 81:8
defined [2] - 32:13, 44:13
definition [2] - 42:2, 44:6
deflect [1] - 42:17
delayed [1] - 48:2
delighted [1] - 85:3
delineate [1] - 31:25
demand [3] - 34:15, 34:17, 37:4
demonstrating [1] - 62:20
DENISE [1] - 5:6
dep [2] - 66:20, 67:2
DEPARTMENT [2] - 2:10, 2:16
depleted [2] - 52:13, 52:14
depo [2] - 75:16
deponent [1] - 22:11
deponents [3] - 26:1, 70:25, 72:3
depos [1] - 70:22
depose [2] - 38:4, 57:12
deposed [4] - 32:4, 38:3, 38:4, 71:17
deposition [30] - 11:20, 11:24, 13:23, 14:16, 17:3, 20:4, 22:1, 22:12, 23:10, 25:4, 26:8, 26:22, 27:24, 56:9, 56:18, 57:15, 57:16, 58:5, 59:21, 61:12, 61:25, 63:7, 67:23, 74:18, 76:16, 76:19, 77:23, 78:3, 79:25

25:21, 26:21, 27:5, 27:6, 27:7, 27:8, 31:22, 32:7, 38:8, 38:15, 38:16, 41:9, 41:22, 42:23, 54:20, 64:24, 69:8, 69:19, 69:20, 69:23, 70:3, 74:8, 83:14
DEPOSITIONS [4] - 8:24, 9:11, 9:17, 9:24
DEPOSITIONS..........
................. [1] - 8:17
DEPOSITIONS..........
...................... [1] - 9:16
deprive [1] - 40:15
DEPUTY [1] - 11:7
describe [1] - 12:2
described [2] - 49:12, 59:22
design [1] - 78:11
designate [2] - 75:7, 82:12
designated [1] - 16:24
designating [3] - 75:4
designation [3] - 77:10, 82:6, 82:7
designations [4] - 16:12, 74:8, 81:15, 82:6
designs [5] - 77:4, 77:16, 77:17, 81:12, 81:24
desperate [1] - 49:12
detail [2] - 79:14, 83:1
detailed [1] - 83:5
details [1] - 56:12
determination [1] - 42:14
determine [2] - 48:17, 49:6
determined [4] - 39:19, 39:20, 42:16, 48:2
determines [2] - 48:6, 51:24
devices [1] - 77:21
DEXTER [1] - 2:20
difference [4] - 38:25, 47:24, 59:13, 81:1
different [11] - 16:21, 23:10, 26:23, 27:7, 29:12, 41:15, 51:5, 54:22, 73:9, 73:14, 74:24
difficult [2] - 17:11, 22:22
dining [1] - 18:7

directly [4] - 14:3, 40:4, 42:11, 88:24
disagree [1] - 59:4
disagreement [2] - 48:20, 74:2
disagreements [1] - 30:21
disagrees [1] - 49:18
disclose [1] - 12:11
disclosures [2] - 38:1, 38:3
discover [1] - 77:22
discoverable [1] - 72:16
DISCOVERY [3] - 1:11, 8:14, 8:15
discovery [37] - 31:18, 31:21, 32:1, 32:2, 32:6, 32:10, 32:12, 32:19, 32:20, 37:1, 37:21, 38:7, 38:17, 42:14, 43:18, 44:1, 44:10, 44:13, 46:11, 46:13, 47:23, 47:24, 48:5, 48:9, 48:21, 49:11, 49:17, 51:3, 53:22, 53:24, 54:1, 54:3, 54:8, 79:11, 80:3, 88:18
discrete [1] - 76:21
discuss [2] - 75:20, 75:22
discussed [3] - 31:24, 58:5, 73:25
discussing [2] - 73:13, 84:13
discussion [2] - 14:16, 18:11
discussions [3] - 30:2, 30:10, 86:5
dismiss [3] - 37:11, 37:14, 38:24, 80:19
dispose [1] - 31:3
dispute [4] - 11:20, 29:15, 46:8, 87:17
DISPUTE [1] - 8:6
dissipated [1] - 51:14
distribute [4] - 68:24, 71:12, 71:13, 71:14
distributed [1] - 74:4
DISTRICT [2] - 1:1, 1:1
District [3] - 91:12, 91:13, 91:21
DIVISION [1] - 2:11
DNV [2] - 68:19, 78:16
doctor [2] - 89:4, 89:9
document [2] - 32:21, 89:25
DOCUMENT [2] - 1:9, 10:12

**documents** [4] - 40:25, 41:1, 56:10, 90:6
**dog** [1] - 45:21
**dogmatic** [1] - 20:14
**dollars** [4] - 19:22, 20:13, 29:10, 29:11
**domain** [1] - 16:16
**DOMENGEAUX** [1] - 1:15
**Don** [6] - 55:24, 67:21, 71:3; 89:23, 90:15, 90:16
**DON'T** [1] - 9:12
**DONALD** [1] - 4:7
**donate** [2] - 68:15, 68:18
**donations** [1] - 68:14
**done** [11] - 22:2, 26:15, 37:13, 38:1, 65:24, 65:25, 70:14, 71:5; 75:17, 83:21, 90:10
**door** [2] - 69:21, 80:8
**dots** [1] - 87:12
**double** [1] - 71:7
**dovetails** [1] - 70:17
**down** [5] - 24:22, 27:18, 30:12, 74:6, 79:15
**drafted** [1] - 81:6
**DRAGNA** [1] - 4:24
**draw** [1] - 80:1
**drawing** [1] - 12:19
**drawn** [4] - 20:11, 20:22, 24:5, 26:14
**drew** [2] - 71:9; 71:10
**drill** [1] - 74:6
**drilled** [1] - 81:18
**DRILLING** [1] - 3:4
**drilling** [24] - 29:6, 29:21, 34:11, 34:13, 35:8, 35:9, 35:12, 36:19, 36:25, 39:14, 40:7, 40:20, 44:15, 45:24, 45:25, 46:3, 46:16, 46:18, 47:14, 47:15, 48:19, 48:23, 51:25
**drinks** [1] - 19:6
**DRIVE** [1] - 5:4
**dry** [4] - 85:8, 85:11, 85:15, 85:21
**DRY** [3] - 10:4, 10:6, 10:13
**Dubois** [1] - 67:22
**DUBOIS**.....................
.................... [1] - 9:8
**due** [6] - 23:14, 28:12, 58:1, 84:15, 84:19,

84:22
**DUFFY** [6] - 3:20, 79:2, 79:7, 82:23, 83:6, 83:12
**Duffy** [2] - 78:24, 79:1
**DUNBAR** [1] - 6:7
**during** [1] - 11:24

### E

**E&P** [1] - 4:15
**e-mail** [10] - 50:15, 55:7, 56:3, 57:24, 64:11, 65:4, 65:12, 67:11, 67:15, 67:24
**e-mailed** [1] - 67:9
**e-mailing** [3] - 19:17, 65:5, 65:10
**e-mails** [3] - 28:21, 56:23, 56:24
**E-Z** [1] - 66:23
**early** [7] - 34:10, 51:2, 51:15, 67:18, 69:25, 82:16, 90:8
**easily** [1] - 23:23
**EASTERN** [1] - 1:1
**Eastern** [1] - 91:13
**easy** [1] - 56:21
**eat** [1] - 28:23
**economic** [2] - 27:16, 88:19
**Eddy** [1] - 64:25
**EDDY** [1] - 8:25
**educated** [1] - 79:24
**EDWARDS** [1] - 1:15
**effect** [1] - 32:10
**effort** [1] - 79:25
**eight** [1] - 67:7
**either** [7] - 13:7, 13:14, 35:24, 38:18, 40:9, 57:25, 72:1
**eliminate** [1] - 71:6
**eliminated** [1] - 31:6
**ELLIS** [1] - 3:18
**ELM** [1] - 4:9
**elsewhere** [1] - 68:24
**Elsley** [3] - 33:25, 48:12, 49:12
**ELSLEY** [2] - 3:9, 48:12
**embarrassment** [1] - 16:9
**employee** [6] - 13:16, 55:7, 55:13, 59:7, 89:2
**employees** [3] - 29:23, 58:12
**end** [9] - 25:9, 25:10, 31:9, 45:21, 51:15,

80:9, 86:1, 87:18, 87:22
**ENERGY** [2] - 3:6, 4:7
**enforceable** [1] - 35:4
**enforced** [1] - 35:12
**ENFORCEMENT** [1] - 2:15
**engagement** [1] - 17:2
**entire** [2] - 21:3, 37:7
**entitled** [8] - 35:19, 37:11, 37:15, 39:19, 57:6, 77:22, 78:13, 91:16
**entry** [1] - 64:22
**ENVIRONMENTAL** [1] - 2:15
**envisioned** [1] - 70:6
**era** [1] - 31:1
**especially** [3] - 68:11, 81:16, 82:6
**ESQUIRE** [47] - 1:16, 1:16, 1:20, 1:23, 2:3, 2:7, 2:11, 2:12, 2:16, 2:19, 3:6, 3:9, 3:19, 3:19, 3:20, 3:23, 4:4, 4:7, 4:8, 4:8, 4:11, 4:12, 4:18, 4:21, 4:21, 4:24, 5:3, 5:6, 5:7, 5:11, 5:19, 5:22, 6:4, 6:8, 6:11, 6:15, 6:15, 6:16, 6:16, 6:18, 6:18, 6:19, 6:19, 6:21, 6:21, 6:22, 6:22
**establish** [1] - 60:15
**estimate** [1] - 57:23
**etcetera** [3] - 23:1, 24:24
**evade** [1] - 32:9
**EVANS** [1] - 6:8
**Evanston** [1] - 39:17
**evening** [1] - 53:12
**event** [3] - 20:12, 53:24, 61:21
**EVENT**.......................
[1] - 8:14
**events** [1] - 47:4
**evidence** [9] - 16:7, 23:12, 27:8, 45:4, 73:2, 73:5, 74:7, 74:9
**EVIDENCE**................
..... [1] - 9:20
**evidentiary** [1] - 37:16
**ex** [3] - 54:13, 58:20, 59:7
**ex-employee** [1] - 59:7
**ex-employees** [1] - 58:20

**exact** [1] - 46:22
**exactly** [6] - 21:23, 66:17, 72:18, 80:4, 83:12, 90:9
**examination** [1] - 13:11
**example** [4] - 32:4, 33:1, 33:2, 51:11
**Excel** [1] - 76:3
**except** [4] - 22:13, 23:9, 59:4, 90:23
**exception** [1] - 27:5
**exceptions** [1] - 71:1
**excess** [4] - 33:24, 43:19, 47:8, 50:6
**EXCESS** [1] - 6:7
**excluding** [1] - 12:15
**excused** [1] - 52:21
**exercise** [1] - 24:3
**exists** [1] - 58:25
**expand** [1] - 76:15
**expect** [1] - 53:10
**expediting** [1] - 26:25
**expeditious** [2] - 26:15, 27:15
**expenses** [6] - 56:19, 57:17, 57:22, 57:25, 60:5
**EXPERT** [2] - 9:25, 10:3
**expert** [7] - 22:25, 57:5, 62:20, 71:16, 78:16, 83:15, 84:15
**experts** [2] - 23:1, 70:7
**EXPLORATION** [1] - 3:16
**explosion** [1] - 47:5
**expressly** [1] - 40:2
**extensive** [1] - 78:16
**extent** [5] - 42:13, 42:18, 42:22, 43:7, 51:8
**extra** [1] - 28:20
**extremely** [1] - 87:3

### F

**face** [4] - 29:25, 34:22, 53:20, 85:24
**FACT** [1] - 9:24
**fact** [15] - 14:8, 19:22, 22:24, 23:3, 23:10, 23:20, 23:23, 26:25, 40:6, 42:14, 44:1, 72:19, 73:13, 83:14, 88:16
**facts** [4] - 38:12, 41:23, 41:24

**factual** [2] - 15:4, 77:10
**fail** [1] - 30:24
**fair** [5] - 15:19, 32:6, 36:2, 37:7, 38:12
**fairer** [1] - 27:16
**fairly** [2] - 32:20, 72:22
**fairness** [2] - 17:3, 78:12
**fall** [1] - 43:25
**familiar** [1] - 78:7
**familiarity** [1] - 56:22
**far** [6] - 22:13, 40:25, 56:23, 57:21, 73:1, 87:15
**fast** [2] - 50:5, 54:2
**fault** [1] - 47:19
**favor** [1] - 37:2
**favorites** [1] - 18:9
**favors** [1] - 37:1
**February** [6] - 21:12, 21:13, 31:13, 41:8, 42:21, 43:9
**FEDERAL** [1] - 2:10
**Federal** [4] - 33:1, 38:15, 38:18, 46:10
**feedback** [1] - 76:6
**feelings** [1] - 22:7
**fees** [2] - 57:17, 57:21
**few** [1] - 60:24
**FIFTH** [2] - 5:23, 8:8
**Fifth** [21] - 18:14, 18:21, 18:24, 19:1, 19:15, 19:16, 20:6, 20:15, 20:20, 20:25, 21:10, 22:17, 25:2, 25:4, 25:18, 25:19, 26:1, 27:10, 31:1, 40:18, 49:8
**figure** [1] - 72:17
**figured** [1] - 11:21
**file** [21] - 31:4, 37:10, 37:13, 41:4, 41:5, 44:9, 45:7, 46:10, 47:25, 48:3, 50:10, 50:14, 53:11, 58:12, 58:24, 59:1, 59:8, 59:15, 60:17, 72:12, 81:5
**filed** [12] - 29:12, 29:13, 31:8, 39:10, 53:13, 76:20, 76:23, 78:1, 80:15, 86:11, 87:5, 87:7
**files** [6] - 58:14, 58:17, 58:20, 59:17, 59:19, 61:16
**fill** [1] - 76:7
**filled** [1] - 67:17
**final** [4] - 44:24, 53:10,

68:14, 89:24
**finalization** [1] - 76:18
**finalized** [3] - 76:20, 78:1, 80:6
**finally** [3] - 51:12, 77:19, 85:5
**FINANCIAL** [1] - 5:18
**finder** [1] - 19:22
**findings** [2] - 47:19, 73:25
**fine** [13] - 13:4, 18:7, 25:19, 35:23, 44:9, 53:7, 70:5, 70:8, 70:9, 83:10, 83:25, 88:25
**finished** [2] - 43:1, 90:9
**finishing** [1] - 71:2
**fire** [1] - 47:5
**FIRM** [1] - 6:11
**firm** [1] - 28:16
**first** [18] - 19:1, 20:11, 25:12, 30:22, 33:6, 36:19, 41:13, 45:17, 46:7, 46:20, 48:2, 55:16, 58:4, 58:6, 59:14, 74:1, 79:7, 86:3
**First** [4] - 20:16, 25:12, 25:13, 25:15
**Fitch** [1] - 73:12
**FITCH** [8] - 4:21, 50:2, 63:6, 73:12, 73:16, 73:24, 74:10, 74:14
**five** [5] - 25:3, 25:6, 26:7, 76:21, 77:9
**five-minute** [1] - 25:6, 26:7
**fixed** [1] - 87:22
**flaws** [1] - 77:5
**flip** [1] - 37:5
**float** [1] - 73:20
**floated** [1] - 74:1
**FLOOR** [3] - 2:13, 3:6, 5:4
**flurry** [1] - 88:18
**flyspeck** [1] - 54:15
**focus** [3] - 34:18, 34:19, 35:22
**focusing** [3] - 68:8, 70:13, 83:14
**fold** [1] - 79:7
**follow** [5] - 14:9, 14:17, 15:9, 27:9, 89:6
**follow-up** [2] - 14:9, 27:9
**following** [3] - 29:18, 56:7, 57:20
**food** [1] - 57:22

**footnote** [1] - 81:17
**FOR** [28] - 1:15, 1:23, 2:10, 2:15, 2:19, 3:3, 3:13, 4:3, 4:6, 4:14, 5:6, 5:10, 5:14, 6:3, 6:7, 6:11, 8:13, 9:9, 9:11, 9:15, 9:23, 9:24, 9:25, 10:1, 10:8, 10:9, 10:11
**foregoing** [1] - 91:14
**forget** [2] - 60:4, 75:1
**forgetting** [1] - 85:1
**forgot** [1] - 12:24
**forks** [1] - 89:6
**form** [4] - 25:5, 39:25, 54:13, 86:11
**formal** [2] - 54:1, 54:5
**formation** [1] - 46:14
**forms** [2] - 87:5, 87:7
**formulation** [1] - 71:16
**forth** [2] - 56:23, 77:25
**forum** [1] - 29:14
**forward** [5] - 16:14, 19:14, 51:1, 56:6, 80:21
**FRANCISCO** [2] - 2:13, 3:24
**frankly** [9] - 12:20, 20:3, 20:7, 21:17, 23:14, 24:2, 26:6, 27:16, 87:20
**free** [2] - 66:8, 70:7
**freer** [1] - 31:17
**frequently** [1] - 56:25
**Friday** [5] - 67:14, 72:2, 85:8, 85:22
**FRIDAY** [2] - 10:4, 10:14
**Fridays** [1] - 73:18
**FRILOT** [1] - 3:5
**FROM** [2] - 8:15, 9:13
**FRONT** [1] - 3:23
**front** [5] - 25:9, 25:10, 40:10, 62:5, 63:8
**full** [2] - 27:1, 36:2
**fully** [1] - 12:3
**fund** [4] - 86:9, 86:14, 86:21, 87:21
**fundamental** [1] - 48:20
**fundamentally** [1] - 27:7
**FURTHER** [1] - 9:14
**future** [3] - 27:2, 27:3, 53:19

## G

**game** [2] - 15:19, 32:6
**gander** [1] - 35:14
**GATE** [1] - 2:12
**gathered** [1] - 27:8
**gathering** [2] - 23:11, 53:14
**GAVIN** [1] - 4:12
**GCCF** [5] - 86:8, 86:24, 87:6, 87:12
**GCCF.......................
..........** [1] - 10:7
**general** [3] - 33:3, 80:17, 81:1
**General** [1] - 86:4
**GENERAL'S** [1] - 2:19
**generally** [4] - 30:4, 36:14, 36:17, 76:25
**generosity** [1] - 68:11
**generous** [2] - 69:2, 69:4
**gentleman** [1] - 56:2
**gentleman's** [1] - 59:15
**Gentlemen** [1] - 17:19
**gentlemen** [1] - 11:11
**genuine** [1] - 62:17
**given** [11] - 15:11, 39:3, 45:21, 49:24, 56:12, 56:21, 57:14, 58:14, 68:5, 72:16
**glitch** [1] - 90:6
**goal** [1] - 42:21
**gobbledygook** [1] - 63:9
**Godfrey** [1] - 34:15
**Godwin** [9] - 18:2, 19:2, 28:3, 28:24, 55:24, 59:4, 61:15, 67:21, 89:23
**GODWIN** [30] - 4:7, 4:7, 4:11, 18:4, 18:8, 19:6, 28:4, 28:11, 28:14, 28:25, 55:22, 55:24, 58:3, 58:13, 58:23, 59:24, 60:4, 60:7, 61:21, 62:2, 62:10, 62:14, 62:24, 63:5, 67:21, 68:5, 70:2, 71:6, 89:23, 90:17
**GOLDEN** [1] - 2:12
**GOODHUE** [1] - 6:21
**Goodwin** [5] - 28:15, 39:1, 43:24, 48:25, 50:21
**GOODWIN** [11] - 3:23, 28:19, 29:1, 29:3,

33:14, 33:18, 39:1, 39:8, 49:1, 49:3, 49:16
**Goodwin's** [1] - 58:3
**goose** [1] - 35:14
**gosh** [1] - 32:8
**GOTSHAL** [2] - 5:19, 5:22
**governed** [1] - 49:9
**GOVERNMENT** [1] - 2:10
**governs** [1] - 29:16
**GRAND** [1] - 4:25
**grand** [1] - 18:17
**grant** [1] - 41:19
**great** [9] - 25:18, 28:13, 33:13, 68:4, 68:6, 68:9, 85:19, 88:5
**Great** [1] - 68:6
**green** [1] - 75:10
**gross** [9] - 35:11, 42:14, 43:7, 43:17, 46:17, 47:13, 48:5, 51:17, 52:3
**grossly** [2] - 35:7, 35:16
**ground** [1] - 61:16
**group** [1] - 67:11
**guess** [4] - 19:4, 76:5, 82:23, 84:20
**guidance** [1] - 15:22
**guilty** [1] - 47:13
**GULF** [1] - 1:5
**guys** [10] - 18:1, 43:10, 54:15, 60:25, 61:7, 67:23, 71:2, 75:21, 83:23, 91:2

## H

**H-A-Y-E** [2] - 88:2, 88:3
**Hafle** [3] - 65:25, 66:2, 66:4
**Hafle's** [1] - 20:19
**HAFLE.......................
......................** [1] - 9:2
**Halliburton** [6] - 34:6, 55:25, 67:21, 67:22, 89:23, 89:25
**HALLIBURTON** [2] - 4:6, 10:11
**hand** [4] - 25:17, 30:11, 33:11, 50:5
**handheld** [1] - 65:1
**handle** [5] - 12:3, 36:12, 36:13, 78:24,

83:25
**handling** [2] - 34:18, 34:20
**handwriting** [1] - 39:5
**happy** [7] - 12:11, 21:23, 26:8, 63:5, 65:4, 65:11, 82:23
**hard** [2] - 12:12, 37:22
**harmless** [1] - 29:20
**HAVE** [1] - 10:5
**Haye** [2] - 87:25, 88:2
**HAYE............** [1] - 10:9
**HB406** [1] - 7:4
**heads** [2] - 90:10, 90:16
**heads-up** [2] - 90:10, 90:16
**hear** [14] - 1:11, 11:12, 12:13, 15:23, 16:1, 22:3, 33:21, 36:3, 59:3, 74:20, 83:25, 84:9, 84:11, 85:3
**heard** [5] - 15:8, 31:5, 74:20, 86:18, 89:6
**HEARD** [1] - 1:12
**hearing** [1] - 31:11
**heart** [1] - 14:2
**held** [2] - 47:3, 49:3
**hello** [2] - 13:3, 70:15
**help** [2] - 71:6, 83:2
**helpful** [1] - 33:18
**hereby** [1] - 91:13
**HERMAN** [17] - 1:19, 1:20, 70:16, 70:20, 73:6, 73:9, 74:17, 75:3, 75:23, 76:3, 84:8, 84:12, 84:24, 88:7, 89:1, 90:15
**Herman** [11] - 18:5, 70:15, 73:4, 74:15, 84:2, 84:7, 84:8, 85:4, 86:5, 86:13, 88:7
**hi** [2] - 11:8, 13:4
**high** [1] - 88:5
**higher** [1] - 60:8
**highlight** [1] - 30:21
**highly** [1] - 62:20
**HILL** [1] - 4:12
**HIMMELHOCH** [4] - 2:12, 53:3, 53:6, 53:9
**himself** [2] - 55:20, 59:20
**hire** [2] - 16:10, 16:18
**hold** [1] - 29:20
**HOLDINGS** [3] - 3:3, 3:17, 5:15
**home** [1] - 24:13

**Honor** [78] - 11:9, 13:2, 13:4, 14:1, 14:5, 14:18, 15:6, 15:20, 15:21, 18:23, 19:20, 22:4, 22:9, 24:8, 25:22, 26:20, 27:23, 28:2, 28:4, 28:14, 28:15, 28:19, 29:3, 30:12, 30:17, 31:20, 31:22, 32:2, 32:10, 32:24, 33:8, 33:19, 33:20, 41:19, 42:7, 42:10, 42:20, 43:4, 45:16, 45:22, 47:21, 48:12, 48:24, 49:1, 50:17, 52:5, 52:17, 52:20, 53:3, 55:22, 57:24, 59:25, 61:21, 62:19, 65:3, 67:9, 67:21, 70:2, 70:16, 71:9, 72:15, 72:24, 75:9, 76:12, 76:15, 76:20, 78:17, 78:21, 78:24, 79:2, 79:3, 80:11, 80:13, 82:21, 82:23, 88:20, 90:17, 91:1
**Honor's** [4] - 14:17, 14:21, 15:9, 39:9
**HONORABLE** [1] - 1:12
**hook** [1] - 27:24
**HOPE** [1] - 9:3
**hope** [1] - 66:6
**hopefully** [4] - 49:24, 68:1, 79:3, 90:12
**hoping** [1] - 55:20, 87:21, 90:8
**HORIZON** [3] - 1:4, 47:5, 77:1
**hour** [1] - 57:21
**hours** [1] - 57:21
**house** [1] - 14:22
**HOUSTON** [4] - 3:11, 4:13, 5:8, 6:13
**Houston** [5] - 29:13, 46:25, 61:25, 63:7
**hull** [2] - 47:11, 47:17
**humiliating** [1] - 24:2
**hundred** [2] - 38:11, 66:21
**hundreds** [2] - 19:21, 47:16

## I

**idea** [1] - 71:3
**ideas** [3] - 69:10, 69:11, 70:1

**identical** [1] - 29:20
**identification** [4] - 14:10, 77:15, 81:17, 81:19
**identified** [2] - 31:24, 66:16
**IL** [2] - 3:21, 5:4
**imagine** [3] - 25:5, 31:14, 73:21
**immediate** [1] - 53:19
**imply** [1] - 59:11
**important** [8] - 17:7, 41:25, 44:19, 61:8, 61:9, 61:11, 79:17, 84:1
**impossible** [1] - 22:24
**improper** [1] - 16:9
**IN** [3] - 1:4, 1:5, 8:6
**in-house** [1] - 14:22
**in-person** [1] - 85:12
**inappropriate** [1] - 12:10
**inaudible** [2] - 16:18, 53:19
**INC** [14] - 3:4, 3:5, 3:13, 3:14, 3:15, 3:16, 3:18, 4:7, 5:14, 5:15, 5:16, 5:17, 5:18, 5:19
**inclinations** [1] - 73:19
**included** [3] - 79:12, 79:17, 81:7
**includes** [1] - 76:21
**including** [6] - 25:12, 27:2, 35:19, 56:19, 56:24, 84:1
**incorrect** [2] - 43:15, 79:19
**incurring** [1] - 56:20
**indeed** [1] - 20:15
**indemnify** [1] - 34:12
**indemnity** [7] - 34:17, 34:21, 34:24, 35:3, 35:17, 37:4, 39:14
**indicate** [1] - 78:12
**indicated** [1] - 58:19
**indication** [1] - 73:19
**indirectly** [1] - 42:12
**individual** [1] - 25:8
**individually** [1] - 24:16
**inference** [2] - 20:11, 23:14
**inferences** [3] - 20:21, 24:5, 26:14
**influence** [1] - 17:13
**influenced** [2] - 20:4, 21:18
**inform** [1] - 56:24

**information** [10] - 15:12, 28:11, 53:15, 53:16, 56:7, 56:8, 76:4, 78:18, 79:22, 81:21
**infringe** [1] - 25:1, 25:11
**initial** [3] - 38:1, 38:2, 51:23
**initiative** [1] - 22:5
**injury** [4] - 29:22, 34:5, 34:19, 35:22
**inquire** [2] - 15:5, 81:10
**inquiry** [1] - 17:7
**insert** [1] - 45:4
**instance** [1] - 71:19
**instead** [1] - 65:20
**instruct** [3] - 12:10, 13:24, 15:12
**instructed** [3] - 11:25, 12:18, 15:2
**insurance** [43] - 18:13, 18:20, 27:25, 29:4, 29:8, 29:10, 29:11, 29:14, 30:7, 31:19, 32:1, 32:10, 32:13, 32:14, 32:17, 36:1, 37:25, 39:20, 39:21, 39:25, 40:15, 40:20, 41:24, 42:3, 42:18, 43:11, 44:6, 44:13, 44:17, 47:3, 48:17, 48:18, 48:22, 49:17, 50:18, 50:22, 51:4, 51:20, 51:25, 52:2, 52:14, 52:20
**Insurance** [2] - 30:8, 45:17
**INSURANCE** [1] - 8:9
**insured** [14] - 29:7, 29:10, 35:19, 39:13, 39:18, 40:8, 40:12, 40:13, 46:1, 46:5, 46:6, 46:7, 50:23, 51:24
**insureds** [1] - 51:8
**insurer** [2] - 30:6, 41:14
**insurer's** [1] - 30:14
**insurers** [23] - 29:19, 29:23, 30:3, 30:4, 30:5, 30:23, 31:3, 31:8, 31:25, 32:22, 32:25, 33:3, 33:4, 39:10, 39:16, 40:5, 41:11, 42:3, 47:10, 47:12
**insuring** [2] - 45:11, 46:14

**intend** [2] - 39:15, 48:4
**intended** [5] - 13:7, 13:13, 13:15, 40:16, 44:16
**interest** [2] - 43:23, 44:4
**interested** [4] - 42:12, 52:3, 62:19, 79:11
**INTERESTS** [2] - 2:10, 2:19
**internal** [1] - 75:16
**INTERNATIONAL** [2] - 4:3, 5:18
**interpretation** [2] - 16:9, 35:9
**interrogation** [1] - 14:16
**interrogatories** [9] - 32:21, 33:2, 33:4, 38:10, 38:11, 39:4, 82:25, 83:5, 83:7
**intertwined** [1] - 48:19
**intervened** [1] - 41:14
**intervention** [1] - 88:15
**introduce** [1] - 36:24
**introductory** [1] - 25:14
**invalidate** [2] - 35:17, 35:18
**invitation** [1] - 72:5
**invite** [1] - 12:21
**invited** [1] - 28:5
**invocation** [1] - 21:19
**invoice** [1] - 58:1
**invoke** [4] - 20:20, 21:10, 23:21, 25:2
**invoked** [4] - 21:1, 22:18, 23:18, 26:5
**invoking** [2] - 20:15, 25:4
**involved** [6] - 42:11, 42:12, 47:3, 52:3, 64:3, 88:22
**involves** [1] - 29:21
**Iqbal** [1] - 80:19
**irrelevant** [1] - 49:4
**issue** [46] - 16:21, 19:15, 20:1, 27:21, 27:25, 30:13, 31:17, 31:18, 32:17, 32:18, 34:3, 34:4, 34:9, 34:24, 36:11, 37:3, 37:6, 37:18, 38:17, 39:8, 40:6, 41:9, 42:14, 43:7, 43:8, 44:15, 45:24, 46:11, 46:21, 47:3, 47:18, 48:10, 49:16, 51:2,

52:8, 52:12, 52:16, 57:1, 59:6, 59:12, 60:20, 61:2, 72:10, 85:4, 86:21, 90:22
**ISSUE.................** [1] - 9:19
**ISSUE....................** [1] - 8:8
**ISSUE....................** ............... [1] - 8:9
**issued** [3] - 20:14, 32:14, 88:17
**issues** [45] - 32:5, 33:9, 34:7, 36:7, 36:13, 37:16, 37:17, 41:11, 42:3, 42:21, 46:17, 46:24, 46:25, 47:4, 47:22, 48:1, 48:5, 48:8, 48:10, 49:17, 49:19, 50:21, 51:1, 51:9, 51:10, 51:11, 51:14, 51:17, 51:18, 51:22, 52:3, 61:19, 70:17, 73:25, 74:7, 76:22, 77:1, 78:3, 78:7, 78:11, 79:8, 79:10, 79:12
**item** [2] - 33:15
**item-by-item** [1] - 33:15
**ITEMS** [1] - 8:4
**itself** [2] - 16:16, 57:16

## J

**JAMES** [3] - 1:16, 4:24, 5:7
**January** [1] - 31:12
**JEFFERSON** [1] - 1:17
**JENNY** [1] - 4:8
**Jim** [6] - 18:4, 24:8, 27:2, 65:5, 84:12, 90:14
**Joe** [2] - 11:23, 12:2
**John** [5] - 28:5, 33:25, 48:12, 50:17, 55:19
**JOHN** [3] - 3:9, 5:3, 8:21
**join** [1] - 28:5
**joined** [1] - 16:5
**joint** [2] - 48:16, 84:19
**JONES** [1] - 6:3
**JOSEPH** [1] - 2:7
**JPML** [1] - 29:16
**Judge** [52] - 12:7, 12:8, 12:21, 13:19, 14:13, 15:15, 17:1, 17:8, 17:17, 17:24,

19:7, 19:23, 20:3, 21:11, 21:18, 21:21, 22:12, 27:6, 28:12, 28:21, 31:5, 31:13, 33:23, 35:6, 40:10, 40:19, 40:24, 41:7, 42:20, 43:16, 44:2, 44:24, 48:6, 49:10, 49:18, 50:2, 55:24, 56:9, 58:13, 62:13, 62:24, 63:5, 63:6, 65:20, 73:13, 73:18, 78:14, 82:18, 84:10, 86:12, 88:17

**JUDGE** [1] - 1:12

**judge** [6] - 18:22, 40:23, 45:10, 56:1, 60:7, 89:23

**judgment** [15] - 31:15, 36:15, 36:23, 36:24, 37:9, 37:10, 37:15, 38:23, 38:24, 40:21, 41:5, 45:2, 45:9, 46:24, 47:8

**judicata** [1] - 48:7

**judicial** [3] - 40:19, 40:24, 45:10

**July** [26] - 22:16, 22:21, 23:20, 34:16, 54:20, 55:2, 55:11, 55:15, 63:16, 63:19, 64:1, 64:4, 64:10, 64:20, 64:24, 65:19, 66:7, 66:20, 66:25, 67:1, 69:8, 71:18, 71:22, 71:23, 78:5

**JULY** [4] - 8:17, 8:24, 9:4, 9:11

**June** [14] - 32:9, 53:23, 54:4, 54:20, 55:21, 56:17, 59:14, 63:16, 67:18, 69:16, 85:8, 85:13, 85:15

**JUNE** [8] - 8:13, 8:17, 9:13, 9:14, 10:4, 10:5, 10:13, 10:14

**jury** [5] - 20:8, 21:14, 24:14, 24:24, 27:3

**JUSTICE** [2] - 2:10, 2:16

**justification** [1] - 80:4

## K

**KATZ** [1] - 1:19

**KAVANAUGH** [1] - 6:16

**keep** [5] - 22:10, 66:10, 83:16, 85:1, 86:16

**keeps** [1] - 61:10

**Kennedy** [4] - 88:9, 88:23, 89:13, 89:16

**kept** [1] - 51:4

**Kerry** [8] - 64:25, 65:2, 66:19, 88:11, 89:1, 89:2, 89:13, 89:17

**KERRY** [1] - 3:6

**kind** [9] - 25:8, 41:25, 70:6, 71:1, 73:25, 75:16, 84:17, 84:21, 85:24

**KIRKLAND** [1] - 3:18

**knock** [1] - 18:16

**knowledge** [2] - 77:16, 81:11

**knows** [3] - 76:20, 78:17, 83:17

**KUCHLER** [8] - 4:17, 4:18, 4:20, 52:20, 62:16, 68:18, 68:21, 69:1

**kudos** [1] - 68:12

**KULLMAN** [1] - 2:3

**Kurt** [2] - 56:2, 58:6

**Kyle** [1] - 33:24

**KYLE** [1] - 6:18

## L

**L.L.C** [1] - 5:6

**L.P** [1] - 6:3

**LA** [10] - 1:18, 1:21, 2:5, 2:8, 3:7, 4:5, 4:19, 6:5, 6:9, 7:4

**lab** [1] - 67:23

**LABOR** [1] - 9:18

**Labor** [2] - 69:23, 83:13

**lack** [1] - 74:19

**ladies** [1] - 11:11

**LAFAYETTE** [1] - 1:18

**laid** [1] - 12:8

**LAMAR** [1] - 4:12

**LANCASTER** [3] - 15:21, 16:1, 16:4

**Lancaster** [2] - 15:21, 16:1

**LANGAN** [53] - 3:19, 18:12, 18:18, 18:22, 22:4, 28:2, 28:15, 52:23, 54:23, 55:3, 55:6, 55:9, 55:14, 55:17, 59:4, 59:11, 60:19, 60:24, 61:2, 61:6, 61:10, 61:14, 61:19, 62:18, 63:3, 63:15, 63:18, 63:24, 64:1, 64:6, 64:8,

64:13, 64:19, 66:15, 66:19, 66:25, 67:2, 67:4, 71:19, 71:21, 71:24, 72:12, 72:24, 78:24, 85:3, 85:7, 85:12, 85:16, 85:19, 86:20, 87:1, 87:3, 87:12

**Langan** [4] - 41:17, 54:24, 86:20, 90:20

**language** [1] - 39:22

**LANSDEN** [1] - 6:21

**LARGE** [3] - 1:16, 90:23, 91:1

**Large** [1] - 90:21

**LASALLE** [1] - 3:20

**last** [11] - 13:8, 49:1, 50:20, 53:21, 53:22, 64:15, 65:7, 73:3, 75:24, 78:3, 79:22

**late** [3] - 18:2, 19:2, 79:4

**laughing** [1] - 57:23

**law** [5] - 28:21, 29:16, 30:24, 33:24, 49:9

**LAW** [1] - 6:11

**lawsuit** [1] - 39:10

**lawsuits** [1] - 29:13

**lawyer** [9] - 12:15, 13:17, 15:7, 16:18, 56:2, 58:24, 59:1, 62:3, 89:10

**lawyers** [7] - 15:8, 15:10, 15:11, 15:14, 15:17, 20:19, 28:17

**lays** [1] - 56:4

**lead** [1] - 23:12

**least** [4] - 26:17, 49:13, 56:14, 63:11

**leave** [5] - 63:6, 63:11, 63:12, 63:13, 68:13

**left** [3] - 31:7, 51:12, 84:5

**leg** [1] - 83:4

**legal** [7] - 15:2, 17:3, 23:7, 39:16, 51:2, 57:21, 72:17

**legitimate** [5] - 20:10, 21:14, 26:13, 27:11, 44:23

**legitimately** [1] - 24:5

**lengthy** [2] - 56:13

**less** [1] - 61:13

**letter** [7] - 34:10, 34:16, 39:11, 53:15, 79:4, 79:21, 81:17

**LETTER** [1] - 8:11

**letting** [1] - 64:22

**LEWIS** [2] - 2:3, 5:6

**LEXINGTON** [1] - 5:12

**liabilities** [3] - 29:24, 46:2, 46:5

**liability** [10] - 29:9, 33:3, 43:19, 44:17, 46:17, 46:21, 48:5, 51:17, 52:3

**liable** [1] - 17:12

**liaison** [1] - 73:16

**LIAISON** [1] - 1:15

**LIFE** [1] - 2:4

**light** [1] - 80:3

**likely** [1] - 31:12

**limit** [6] - 36:25, 37:25, 38:7, 41:11, 47:23, 48:21

**limitation** [3] - 38:7, 42:1, 49:16

**limited** [8] - 17:20, 32:13, 39:13, 44:17, 46:2, 46:13, 46:16, 49:17

**LIMITED** [1] - 3:17

**limits** [5] - 14:23, 15:3, 32:18, 32:20, 39:22

**Lindner** [2] - 64:9, 64:13

**LINDNER**.................... ........................ [1] - 8:23

**line** [3] - 50:1, 53:2, 80:1

**lined** [1] - 70:5

**list** [16] - 67:7, 67:8, 68:8, 69:9, 69:13, 71:10, 71:19, 71:20, 71:24, 72:1, 72:3, 76:1, 76:7, 77:12, 79:15, 83:16

**LIST**.......................... ........ [1] - 9:22

**listen** [1] - 41:18

**litigants** [1] - 43:12

**litigate** [1] - 35:24

**litigating** [1] - 34:8

**litigation** [3] - 43:8, 50:22, 52:2

**living** [1] - 39:24

**LLC** [4] - 3:3, 4:17, 5:15, 5:16

**Lloyds** [1] - 30:4

**loathed** [2] - 23:2, 23:7

**lodging** [1] - 57:22

**logical** [1] - 18:14

**logistics** [1] - 22:21

**LONDON** [1] - 10:13

**London** [3] - 53:20, 85:9, 85:10

**look** [26] - 34:11, 34:21, 35:21, 36:17,

36:22, 37:6, 37:22, 38:14, 44:9, 44:19, 44:20, 48:23, 49:5, 49:23, 50:9, 58:17, 61:6, 66:18, 68:7, 72:5, 72:19, 79:4, 82:16, 84:25, 85:24

**looked** [2] - 79:6, 81:14

**looking** [7] - 48:18, 48:21, 69:7, 69:22, 70:11, 70:24, 71:1

**looks** [2] - 13:7, 22:12

**loosen** [1] - 22:1

**LOS** [1] - 4:25

**lose** [2] - 25:23, 67:19

**lost** [1] - 40:7

**LOUISIANA** [4] - 1:1, 1:7, 3:10, 5:7

**Louisiana** [2] - 91:12, 91:13

**love** [1] - 24:4

**lovely** [1] - 58:8

**LP** [1] - 4:15

**Ltd** [1] - 45:17

**lunch** [3] - 18:4, 29:1, 29:2

**LYLE** [1] - 5:19

## M

**M-O-N-I-C-O** [1] - 13:10

**ma'am** [1] - 19:11

**MAGISTRATE** [1] - 1:12

**mail** [10] - 50:15, 55:7, 56:3, 57:24, 64:11, 65:4, 65:12, 67:11, 67:15, 67:24

**mailed** [1] - 67:9

**mailing** [3] - 19:17, 65:5, 65:10

**mails** [3] - 28:21, 56:23, 56:24

**main** [2] - 45:1, 51:19

**maintenance** [5] - 77:6, 77:18, 77:24, 82:3, 89:15

**major** [1] - 78:22

**MAJOR** [1] - 4:8

**MALONEY** [3] - 6:22, 42:7, 45:16

**Maloney** [7] - 30:9, 34:1, 42:7, 45:14, 45:16, 48:14, 49:11

**man** [1] - 78:9

**managed** [1] - 30:11

**MANAGEMENT** [1] -

5:14
**mandatory** [1] - 57:7
**MANGES** [2] - 5:19,
5:22
**manner** [2] - 23:4,
26:22
**March** [2] - 76:21, 78:2
**MARINE** [4] - 5:10,
5:16, 5:17, 5:17
**marine** [5] - 33:3,
43:19, 47:9, 47:10,
47:12
**MARTINEZ** [1] - 4:8
**Marty** [6] - 33:21,
33:23, 43:15, 44:22,
50:6, 52:18
**massaging** [2] -
83:16, 83:20
**MASTER** [1] - 9:22
**master** [2] - 75:25,
76:7
**Master** [1] - 73:17
**match** [1] - 66:17
**matter** [6] - 12:9, 15:5,
26:25, 30:24, 74:11,
91:16
**MAY** [2] - 1:7, 11:2
**MAZE** [12] - 2:19,
8:15, 54:16, 63:23,
63:25, 64:15, 64:18,
85:24, 86:1, 87:17,
88:2, 88:4
**Maze** [1] - 54:8
**MCCUTCHEN** [2] -
4:20, 4:24
**McGovern** [1] - 73:17
**McLeod** [5] - 33:23,
39:2, 41:3, 48:15,
50:6
**MCLEOD** [18] - 6:8,
33:23, 36:11, 36:18,
36:22, 37:10, 37:21,
39:5, 43:16, 43:23,
45:1, 45:12, 50:3,
50:6, 50:16, 52:7,
52:10, 52:14
**McLeod's** [1] - 39:11
**MDL** [13] - 6:11, 24:10,
44:10, 44:11, 46:22,
46:24, 47:1, 47:2,
47:4, 47:7, 47:18,
47:20, 49:13
**mean** [13] - 17:8,
21:24, 33:14, 35:17,
57:7, 59:11, 60:1,
60:9, 60:12, 61:2,
61:20, 83:9, 89:20
**means** [4] - 41:7, 55:8,
63:9, 63:10
**meat** [1] - 29:5

**mechanical** [1] -
74:10
**MECHANICAL** [1] -
7:6
**MEDICAL** [1] - 10:10
**medical** [4] - 88:13,
89:14, 89:16, 89:21
**meet** [5] - 26:2, 26:3,
26:9, 26:15, 72:21
**Memorial** [1] - 68:1
**mentioned** [6] - 24:10,
33:10, 41:7, 55:6,
64:9, 75:10
**merely** [1] - 62:8
**Merit** [1] - 91:11
**merits** [2] - 31:2, 40:9
**METHOFF** [1] - 6:11
**MEXICO** [1] - 1:5
**MI** [1] - 5:6
**mic** [1] - 50:5
**MICHAEL** [5] - 2:11,
5:19, 6:19, 6:22,
6:22
**Michael** [4] - 13:1,
13:3, 71:13, 85:10
**micromanage** [1] -
25:20
**mid** [1] - 90:12
**might** [14] - 15:4,
17:13, 19:24, 31:17,
33:18, 35:1, 35:2,
35:8, 35:11, 37:1,
61:11, 71:6, 88:17,
88:22
**Mike** [5] - 34:1, 42:7,
45:16, 78:10, 85:16
**Miller** [1] - 65:2
**MILLER** [12] - 3:6,
58:2, 58:9, 59:25,
65:2, 65:10, 65:14,
67:9, 89:3, 89:5,
89:9, 89:18
**million** [6] - 29:12,
30:3, 30:4, 45:17,
45:18, 45:19
**millions** [3] - 19:21,
20:12, 47:17
**mind** [5] - 51:4, 61:15,
61:16, 66:10, 84:7
**mine** [1] - 11:19
**minor** [3] - 80:23,
80:25, 81:9
**minute** [7] - 24:21,
25:6, 26:7, 29:5,
46:15, 47:13, 64:22
**MINUTES** [3] - 10:8,
10:9
**minutes** [8] - 25:4,
68:19, 68:23, 69:1,
87:23, 87:24

**miscellaneous** [2] -
57:22, 60:4
**missed** [1] - 72:6
**missing** [1] - 13:17
**missteps** [1] - 87:4
**mistake** [1] - 80:8
**MITCHELL** [1] - 6:21
**MMS** [1] - 55:13
**MOBILE** [1] - 1:24
**modification** [4] -
77:7, 77:19, 77:25,
81:25
**modifications** [2] -
54:11, 82:1
**MOEX** [6] - 4:16, 4:16,
32:22, 50:23, 51:7,
53:25
**moment** [1] - 59:17
**Monday** [3] - 50:11,
67:24, 68:2
**money** [4] - 23:21,
51:5, 51:12, 89:10
**Monico** [1] - 13:1
**MONICO** [9] - 6:22,
13:1, 13:4, 13:10,
13:22, 14:13, 15:6,
15:15, 15:20
**monitoring** [1] - 32:3
**monitors** [1] - 31:23
**MONTGOMERY** [1] -
2:20
**months** [3] - 65:6,
78:4, 78:6
**MOORE** [1] - 6:16
**Moran** [1] - 33:24
**MORAN** [1] - 6:18
**Morel** [3] - 20:18,
65:19, 66:4
**MOREL**.....................
......................... [1] -
9:1
**MORGAN** [2] - 5:6,
6:15
**morning** [8] - 11:21,
12:6, 33:23, 67:25,
68:2, 74:3, 74:16,
79:4
**MORNING** [1] - 8:6
**most** [3] - 49:11,
81:16, 82:6
**motion** [24] - 19:21,
31:4, 31:8, 31:15,
36:15, 37:8, 37:10,
37:11, 37:14, 37:15,
38:22, 38:24, 40:10,
40:17, 40:20, 40:23,
41:4, 45:7, 45:9,
46:10, 46:22, 47:25,
54:13
**motions** [5] - 36:3,

44:9, 45:2, 45:3
**motive** [1] - 16:9
**move** [3] - 39:15, 51:1,
54:18
**moved** [2] - 76:15,
80:19
**moving** [1] - 36:16
**MR** [236] - 8:18, 8:19,
8:21, 8:23, 9:1, 9:2,
9:7, 10:8, 10:9,
11:17, 11:20, 12:7,
12:14, 12:24, 13:4,
13:10, 13:19, 13:22,
14:13, 14:25, 15:6,
15:15, 15:20, 16:1,
16:4, 16:22, 17:1,
17:8, 17:17, 17:24,
18:4, 18:8, 18:12,
18:18, 18:22, 18:23,
19:6, 19:20, 19:25,
21:2, 21:6, 21:9,
21:23, 22:4, 22:9,
22:20, 23:6, 23:17,
24:8, 25:22, 26:20,
27:6, 27:23, 28:2,
28:4, 28:11, 28:14,
28:15, 28:19, 28:25,
29:1, 29:3, 33:14,
33:18, 33:23, 36:11,
36:18, 36:22, 37:10,
37:21, 39:1, 39:5,
39:8, 42:7, 42:10,
43:2, 43:4, 43:6,
43:16, 43:23, 45:1,
45:12, 45:16, 48:12,
49:1, 49:3, 49:16,
50:2, 50:3, 50:6,
50:16, 50:17, 51:22,
52:5, 52:7, 52:10,
52:14, 52:23, 54:16,
54:23, 55:3, 55:6,
55:9, 55:14, 55:16,
55:17, 55:22, 55:24,
58:2, 58:3, 58:9,
58:10, 58:13, 58:23,
59:4, 59:11, 59:24,
59:25, 60:4, 60:7,
60:14, 60:19, 60:23,
60:24, 61:2, 61:6,
61:8, 61:10, 61:14,
61:18, 61:19, 61:21,
62:2, 62:10, 62:14,
62:18, 62:19, 62:24,
62:25, 63:3, 63:5,
63:6, 63:15, 63:18,
63:22, 63:23, 63:24,
63:25, 64:1, 64:6,
64:8, 64:13, 64:15,
64:18, 64:19, 65:2,
65:10, 65:14, 65:17,

65:20, 65:23, 66:2,
66:3, 66:15, 66:19,
66:25, 67:2, 67:4,
67:9, 67:21, 68:5,
70:2, 70:16, 70:20,
71:6, 71:9, 71:19,
71:21, 71:24, 72:12,
72:24, 73:6, 73:9,
73:12, 73:16, 73:24,
74:10, 74:14, 74:17,
75:3, 75:23, 76:3,
76:12, 76:15, 78:24,
79:2, 79:7, 80:11,
80:13, 81:25, 82:3,
82:8, 82:18, 82:21,
82:23, 83:6, 83:12,
84:8, 84:12, 84:24,
85:3, 85:7, 85:12,
85:16, 85:19, 85:24,
86:1, 86:20, 87:1,
87:3, 87:12, 87:17,
88:2, 88:4, 88:7,
89:1, 89:3, 89:5,
89:9, 89:18, 89:23,
90:15, 90:17, 90:23,
91:1
**MS** [10] - 8:7, 24:20,
52:20, 53:3, 53:6,
53:9, 68:16, 68:18,
68:21, 69:1
**multiple** [2] - 75:3,
80:9
**must** [2] - 11:15,
30:16

**N**

**N-E-A-L** [1] - 55:18
**name** [5] - 12:25, 13:1,
13:9, 29:7, 55:16
**named** [4] - 45:25,
47:8, 56:2, 78:9
**namesake** [1] - 28:20
**narrowing** [1] - 79:15
**Neal** [3] - 55:13,
55:14, 55:17
**NEAL**.........................
.................. [1] - 8:20
**NECESSARILY** [1] -
10:1
**necessarily** [4] -
41:10, 44:7, 83:23,
87:10
**necessary** [2] - 49:14,
71:16
**need** [46] - 12:19,
13:8, 15:22, 16:18,
32:23, 33:7, 38:5,
38:15, 41:24, 42:20,
44:7, 48:1, 50:9,

50:12, 50:14, 50:25, 51:9, 51:14, 51:22, 52:7, 56:8, 56:18, 57:13, 60:16, 61:24, 66:6, 67:10, 67:20, 68:23, 70:13, 71:6, 71:17, 72:4, 76:4, 79:14, 81:10, 81:22, 82:5, 83:21, 84:25, 85:2, 86:3, 86:15, 88:13, 90:13
**NEED** [1] - 9:3
**needed** [4] - 12:16, 57:9, 65:15, 77:14
**needs** [12] - 34:18, 34:20, 38:3, 38:17, 42:15, 43:7, 44:3, 51:4, 57:19, 58:5, 61:24, 69:1
**negligence** [10] - 35:11, 42:15, 43:7, 43:18, 46:18, 47:14, 48:5, 51:17, 52:4, 80:18
**negligent** [5] - 35:7, 35:16, 77:6, 77:7, 77:18
**negotiations** [1] - 32:15
**never** [1] - 16:7
**new** [3] - 49:23, 79:8, 80:3
**NEW** [12] - 1:7, 1:21, 2:5, 2:8, 3:7, 4:5, 4:19, 5:12, 5:23, 6:5, 6:9, 7:4
**New** [3] - 56:17, 64:2, 66:21
**newly** [1] - 80:3
**news** [1] - 87:23
**next** [18] - 27:25, 50:11, 51:11, 55:13, 63:14, 67:14, 68:13, 69:7, 69:12, 72:2, 76:9, 82:16, 82:19, 82:20, 85:7, 85:22, 90:8, 90:25
**NEXT** [2] - 10:4, 10:14
**nine** [1] - 67:25
**nines** [1] - 67:8
**NO** [2] - 1:6, 10:5
**nobody** [2] - 43:10, 84:4
**Nomellini** [1] - 90:23
**nonargumentative** [1] - 30:13
**none** [1] - 77:9
**nonetheless** [1] - 29:17
**nonlawyers** [1] - 15:7

**noon** [1] - 72:12
**NORTH** [4] - 3:14, 3:15, 3:17, 3:18
**NOT** [2] - 9:15, 10:1
**note** [1] - 88:6
**nothing** [3] - 26:23, 55:8, 65:6
**notice** [14] - 40:19, 40:24, 45:10, 76:16, 76:19, 76:20, 78:1, 78:2, 79:5, 79:13, 81:6, 86:14, 87:22
**noticed** [2] - 22:10, 22:24
**notices** [1] - 80:6
**notified** [1] - 86:13
**notion** [1] - 79:19
**November** [1] - 32:7
**Number** [4] - 56:10, 56:16, 57:2, 73:21
**number** [7] - 23:9, 30:2, 30:11, 32:17, 32:18, 60:7, 77:17
**numbered** [1] - 91:16
**numbers** [1] - 40:1
**NW** [2] - 4:22, 5:20
**NY** [2] - 5:12, 5:23

## O

**O'BRIEN'S** [1] - 5:14
**O'Bryan** [2] - 63:18, 63:21, 64:7
**O'BRYAN.................**
**.......................** [1] - 8:22
**o'clock** [1] - 67:25
**O'KEEFE** [1] - 1:20
**O'ROURKE** [1] - 2:16
**oath** [1] - 63:8
**object** [4] - 13:24, 14:2, 37:14, 69:16
**OBJECT** [1] - 9:14
**objected** [1] - 14:5
**objection** [8] - 14:12, 14:13, 16:6, 26:12, 26:16, 26:18, 26:19, 53:11
**objections** [4] - 26:3, 26:10, 26:25, 54:11
**obligation** [6] - 24:11, 24:15, 27:1, 46:2, 48:18, 59:8
**obligations** [2] - 34:25, 35:3
**observed** [1] - 26:7
**obvious** [1] - 57:6
**obviously** [10] - 12:2, 14:17, 16:5, 17:5,

42:11, 44:15, 50:8, 79:23, 84:7, 85:21
**occasionally** [1] - 28:21
**occur** [1] - 32:7
**October** [3] - 32:7, 69:25
**OF** [13] - 1:1, 1:5, 1:11, 2:10, 2:15, 2:16, 8:11, 9:12, 9:20, 9:24, 9:25, 10:5
**off-the-record** [1] - 18:11
**offer** [1] - 87:23
**OFFER** [1] - 10:8
**office** [6] - 39:25, 56:1, 84:1, 86:7, 86:17, 90:20
**OFFICE** [1] - 2:19
**offices** [1] - 55:15
**OFFICIAL** [1] - 7:3
**Official** [2] - 91:12, 91:21
**offline** [1] - 86:10
**OFFSHORE** [3] - 3:4, 4:16, 5:15
**OIL** [2] - 1:4, 1:4
**omnibus** [1] - 72:13
**ON** [1] - 1:5
**onboard** [1] - 75:14
**once** [6] - 24:25, 39:18, 40:12, 49:4, 63:1, 63:7
**ONE** [3] - 3:23, 6:12, 9:15
**one** [55] - 16:11, 18:8, 22:7, 23:9, 24:9, 29:3, 29:22, 31:17, 31:19, 32:22, 34:3, 36:5, 38:9, 43:1, 43:2, 43:4, 44:2, 44:24, 47:2, 51:3, 51:16, 53:22, 56:10, 59:1, 60:15, 61:21, 64:15, 65:20, 66:20, 67:2, 67:15, 67:22, 67:23, 68:18, 69:9, 69:19, 69:21, 70:14, 70:23, 70:24, 71:10, 71:17, 74:5, 75:7, 79:21, 81:24, 82:8, 84:18, 84:22, 84:23, 85:1, 85:6, 86:2, 86:3, 89:24
**one-day** [1] - 66:20, 67:2, 67:22
**ONE.............** [1] - 9:11
**open** [9] - 14:15,

14:16, 47:23, 48:9, 63:6, 63:11, 63:12, 63:13, 80:8
**opinions** [1] - 71:17
**opportunity** [6] - 25:15, 50:4, 55:5, 57:15, 79:12, 79:18
**oppose** [1] - 72:20
**opposing** [2] - 12:21, 12:23
**opposition** [1] - 54:13
**OR** [1] - 9:3
**oral** [1] - 74:16
**order** [22] - 23:23, 34:3, 42:2, 42:9, 44:7, 46:9, 46:23, 47:2, 47:22, 48:15, 48:16, 51:7, 51:23, 53:10, 53:22, 69:5, 69:7, 72:5, 73:4, 73:7, 74:7, 74:8
**ORDER** [2] - 9:20, 11:4
**ORDER.....................**
**.....** [1] - 8:10
**Orders** [1] - 59:7
**orders** [3] - 26:2, 30:18, 84:14
**originally** [1] - 40:1
**ORLEANS** [10] - 1:7, 1:21, 2:5, 2:8, 3:7, 4:5, 4:19, 6:5, 6:9, 7:4
**Orleans** [3] - 56:17, 64:2, 66:21
**OTHER** [1] - 10:5
**otherwise** [2] - 38:16, 69:4
**ought** [6] - 13:17, 13:20, 13:22, 47:22, 48:21, 90:12
**ourselves** [2] - 38:19, 69:9
**outrage** [2] - 13:14, 13:15
**outside** [2] - 38:17, 90:7
**overarching** [1] - 16:4
**overcome** [1] - 74:3
**overpayment** [1] - 57:25
**overriding** [1] - 24:17
**own** [2] - 17:10, 37:19
**owned** [1] - 30:7

## P

**p.m** [2] - 53:12, 91:4
**P.M** [1] - 1:7

**P.O** [1] - 2:17
**pace** [1] - 39:3
**package** [4] - 33:3, 47:9, 47:10, 47:12
**page** [1] - 56:3
**PAGE** [1] - 8:4
**paid** [9] - 47:11, 47:17, 52:10, 57:3, 57:6, 57:11, 57:18, 57:19
**PAN** [1] - 2:4
**Panel** [2] - 47:1, 47:18
**Panel's** [1] - 47:2
**paren** [2] - 56:23, 56:25
**Park** [1] - 18:8
**part** [7] - 15:6, 34:8, 37:21, 51:18, 51:19, 57:23
**parte** [1] - 54:13
**partial** [2] - 36:23, 40:23
**participants** [2] - 11:10, 19:9
**participate** [2] - 84:2, 85:20
**participates** [1] - 84:4
**particular** [3] - 25:2, 62:21, 81:23
**particularly** [3] - 19:2, 56:21, 68:12
**partied** [1] - 47:9
**parties** [16] - 18:13, 20:5, 20:24, 25:25, 35:23, 37:22, 42:15, 43:12, 44:16, 53:10, 54:1, 56:9, 56:22, 57:12, 79:10, 80:14
**partner** [1] - 33:25
**party** [13] - 27:4, 33:2, 36:16, 38:9, 41:13, 44:10, 46:7, 50:21, 57:11, 76:17, 76:24, 80:16, 90:5
**past** [5] - 23:24, 54:4, 68:12, 77:20, 82:8
**PAT** [1] - 8:22
**Pat** [1] - 63:18
**pattern** [2] - 17:9, 22:14
**PAUL** [1] - 2:3
**Paul** [8] - 12:8, 24:9, 42:8, 65:9, 65:16, 65:17, 65:18, 71:9
**pay** [4] - 56:18, 57:13, 88:6
**paying** [3] - 51:5, 62:3, 89:15
**payment** [1] - 52:7
**payments** [1] - 52:11
**PDFs** [1] - 30:19

**peeling** [1] - 76:9
**pending** [2] - 32:6, 49:21
**PENNZOIL** [1] - 3:10
**people** [24] - 15:16, 18:15, 22:2, 23:20, 27:16, 30:1, 32:7, 32:17, 39:24, 41:18, 54:22, 63:8, 66:12, 66:15, 69:9, 69:15, 70:8, 71:21, 80:6, 83:18, 86:24, 87:7, 88:18
**PEOPLE** [1] - 9:12
**Pepper** [3] - 91:10, 91:19, 91:20
**PEPPER** [1] - 7:3
**per** [4] - 32:21, 33:2, 57:18, 57:21
**percent** [3] - 66:22, 90:3, 90:7
**percolating** [1] - 53:18
**perfect** [1] - 75:19
**perhaps** [1] - 55:9
**period** [1] - 63:19
**permission** [2] - 41:19, 56:25
**person** [6] - 14:10, 14:20, 17:5, 17:11, 20:4, 85:12
**person's** [1] - 17:13
**personal** [7] - 15:18, 29:22, 34:5, 34:19, 35:22, 64:2, 64:3
**persons** [1] - 14:10
**pertained** [1] - 75:8
**PETROLEUM** [1] - 4:15
**phase** [13] - 43:1, 44:24, 69:9, 70:14, 70:22, 70:23, 71:17, 83:15, 84:18, 84:19, 84:22, 85:1, 85:6
**PHASE** [2] - 9:11, 9:25
**Phase** [2] - 43:2, 84:23
**phases** [2] - 73:22
**Phelps** [1] - 45:18
**PHELPS** [1] - 6:7
**Phil** [3] - 76:12, 80:12, 81:14
**phone** [12] - 11:10, 11:11, 15:24, 19:9, 28:6, 28:10, 58:8, 78:25, 84:2, 84:4
**phrase** [1] - 36:6
**PI** [2] - 88:9, 88:21
**pick** [2] - 41:3, 84:3
**picture** [1] - 36:2
**PIGMAN** [1] - 4:3

**place** [3] - 41:25, 46:20, 63:1
**PLACE** [3] - 3:10, 6:4, 6:8
**plaintiff's** [1] - 89:10
**plaintiffs** [6] - 75:12, 80:17, 81:2, 84:8, 84:22, 88:7
**PLAINTIFFS** [1] - 1:23
**plaintiffs'** [1] - 80:19
**PLAINTIFFS'** [1] - 1:15
**plan** [3] - 70:17, 73:1, 84:19
**plate** [1] - 34:14
**pleadings** [16] - 31:16, 36:15, 36:23, 37:9, 37:11, 37:13, 37:15, 38:23, 40:21, 41:5, 45:3, 45:5, 45:6, 45:8, 45:10, 80:2
**plenty** [1] - 78:6
**plus** [4] - 19:22, 32:22, 70:12, 74:25
**podium** [2] - 11:16, 68:17
**point** [22] - 12:17, 18:10, 20:11, 23:6, 25:24, 31:11, 33:22, 35:23, 38:12, 38:21, 40:11, 42:13, 43:25, 45:1, 48:4, 59:1, 78:15, 80:16, 82:24, 82:25, 89:24
**pointed** [1] - 47:6
**points** [12] - 29:8, 41:2, 42:13, 79:7
**policies** [9] - 29:8, 35:20, 40:2, 44:14, 45:21, 46:1, 47:3, 50:24, 51:5, 51:8, 51:12, 51:25
**policy** [12] - 29:14, 32:14, 39:20, 39:21, 40:20, 44:20, 47:11, 49:5, 49:6, 51:13, 52:11
**POLK** [1] - 4:17
**pollution** [5] - 29:24, 34:5, 34:12, 34:20, 35:23
**pollution-related** [1] - 29:24
**poor** [1] - 77:24
**portion** [4] - 26:7, 42:25, 78:2, 83:3
**portions** [1] - 75:5
**position** [5] - 26:21, 26:24, 30:14, 35:4, 35:5, 35:11, 36:12,

39:15, 46:4, 49:7, 53:17, 72:15, 72:17, 78:19
**possibility** [4] - 22:17, 63:6, 63:11, 66:11
**possible** [3] - 51:10, 66:9, 71:5
**post** [2] - 69:8, 83:13
**POST** [1] - 9:11
**post-July** [1] - 69:8
**POST-JULY** [1] - 9:11
**post-Labor** [1] - 83:13
**POTE** [1] - 6:18
**potential** [6] - 16:8, 17:12, 24:12, 24:14, 27:3
**POYDRAS** [4] - 2:4, 3:7, 4:18, 7:4
**practice** [1] - 17:9
**practices** [1] - 56:22
**precluding** [1] - 70:10
**prejudice** [1] - 12:11
**preliminary** [2] - 45:2, 45:6
**PREPARATION** [1] - 9:24
**preparation** [3] - 57:20, 83:2, 83:15
**prepare** [2] - 24:11, 73:1
**prepared** [9] - 30:12, 33:10, 43:17, 61:4, 62:5, 62:9, 62:15, 62:17, 74:16
**preparing** [1] - 31:13
**PRESENT** [2] - 6:15, 10:1
**present** [5] - 56:8, 77:21, 80:4, 82:8, 83:24
**PRESENTATION** [1] - 9:20
**presentation** [2] - 73:2, 73:5
**presented** [3] - 31:16, 50:13, 58:6
**preservation** [1] - 53:16
**PRESERVATION** [1] - 8:11
**preserve** [2] - 27:1, 27:13
**preserving** [1] - 27:13
**President** [1] - 27:17
**pressing** [1] - 31:15
**pressure** [1] - 52:15
**presumably** [1] - 31:11
**presume** [1] - 58:18
**presuming** [1] - 72:20

**pretend** [1] - 79:8
**pretrial** [1] - 44:24
**Pretrial** [1] - 59:7
**pretty** [2] - 12:8, 74:16
**preventer** [10] - 76:22, 77:1, 77:3, 77:6, 77:8, 77:19, 78:15, 79:22, 80:18, 81:8
**previously** [1] - 22:23
**primary** [2] - 30:6, 45:20
**principal** [1] - 29:22
**PRIOR** [1] - 9:4
**PRIORITY** [1] - 9:9
**priority** [1] - 68:10
**private** [3] - 13:20, 13:22, 17:10
**privilege** [5] - 12:1, 16:21, 20:20, 26:4, 90:4
**privileged** [1] - 14:11
**problem** [9] - 12:2, 15:6, 22:25, 31:24, 45:16, 54:14, 70:1, 84:25, 87:18
**proceeding** [1] - 42:18
**proceedings** [4] - 18:10, 27:2, 91:4, 91:15
**PROCEEDINGS** [3] - 1:11, 7:6, 11:1
**proceeds** [2] - 23:24, 51:13
**process** [8] - 20:7, 29:5, 36:4, 36:5, 36:6, 53:14, 55:10, 79:13
**produce** [2] - 59:8, 59:19
**produced** [1] - 90:2
**PRODUCED** [1] - 7:7
**producing** [1] - 89:4
**production** [3] - 72:9, 72:20, 90:1
**PRODUCTION** [4] - 3:13, 3:16, 9:19, 10:12
**PRODUCTS** [1] - 3:18
**progress** [1] - 67:4
**promise** [1] - 44:1
**proposal** [5] - 41:6, 50:8, 54:7, 54:9, 74:19
**PROPOSAL** [1] - 8:15
**proposals** [1] - 33:15
**propose** [4] - 20:23, 25:24, 26:12, 33:5
**proposed** [8] - 27:14, 30:18, 32:12, 42:2, 73:6, 73:20, 78:11

**proposes** [2] - 31:4, 32:19
**propounded** [1] - 54:8
**PROPOUNDED** [1] - 8:16
**prosecution** [1] - 17:12
**prosecutors** [1] - 23:15
**protected** [1] - 51:9
**protocol** [1] - 57:8
**prove** [1] - 62:5
**provide** [6] - 29:19, 29:23, 34:25, 39:13, 40:16, 78:19
**provided** [3] - 28:11, 57:19, 77:20
**provides** [1] - 45:25
**provisions** [2] - 35:18
**provoke** [3] - 13:7, 13:13, 13:15
**prudence** [1] - 40:22
**PSC** [12] - 11:24, 16:11, 22:9, 24:11, 27:1, 42:10, 42:24, 43:13, 61:24, 73:1, 86:8
**PSC's** [2] - 26:21, 89:25
**PSC'S** [1] - 10:11
**PTO** [1] - 73:21
**public** [1] - 16:16
**purchased** [2] - 29:8, 29:9
**purpose** [6] - 16:16, 16:19, 20:10, 23:11, 23:13, 24:2
**purposes** [1] - 46:7
**pursuant** [2] - 46:5, 73:16
**push** [2] - 42:16, 65:11
**pushed** [1] - 51:11
**put** [15] - 25:9, 31:20, 32:10, 42:21, 43:13, 51:15, 54:12, 62:4, 63:7, 64:23, 65:23, 75:20, 75:25, 76:8, 86:14

# Q

**Q&A** [1] - 16:16
**qualified** [1] - 62:20
**quarters** [1] - 56:3
**question-by-question** [1] - 21:11
**questioned** [1] - 32:5
**questioning** [4] -

11:25, 14:3, 17:19, 17:21
**questions** [1] - 16:13, 20:6, 20:10, 20:18, 24:3, 25:9, 26:1, 26:9, 27:4, 27:5, 27:9, 27:12, 41:11, 41:18, 56:7, 60:24, 81:7
**quick** [2] - 72:22, 89:24
**quickly** [3] - 26:11, 39:2, 41:3
**quite** [6] - 17:14, 23:14, 26:6, 30:11, 32:19, 87:19
**quote** [3] - 46:2, 57:8

## R

**radio** [1] - 65:3
**rainbow** [1] - 75:9
**raise** [3] - 44:22, 75:21, 86:4
**raised** [4] - 77:1, 77:2, 79:10, 86:23
**ran** [2] - 13:13, 90:6
**Ranger** [4] - 30:8, 34:1, 45:17, 47:8
**rant** [1] - 13:14
**rate** [1] - 57:17
**rather** [3] - 11:21, 34:14, 59:6
**RAYZOR** [1] - 3:9
**RE** [1] - 1:4
**reach** [3] - 42:20, 51:1, 66:9
**reached** [1] - 55:9
**reaches** [1] - 61:9
**reaching** [1] - 55:10
**read** [11] - 13:5, 13:8, 13:11, 13:18, 21:21, 39:5, 56:4, 71:25, 75:9, 83:1
**reading** [2] - 16:17, 47:2
**ready** [6] - 11:13, 11:14, 22:21, 36:3, 75:20, 75:21
**real** [1] - 12:9
**really** [18] - 14:11, 33:21, 34:2, 34:3, 34:4, 36:11, 44:21, 45:20, 46:9, 47:25, 48:17, 49:12, 51:3, 60:9, 80:9, 83:4, 83:21, 84:18
**Realtime** [2] - 91:10, 91:20

**REALTIME** [1] - 7:3
**reason** [15] - 11:15, 17:14, 21:14, 22:13, 23:9, 23:19, 26:13, 27:4, 27:11, 35:15, 44:5, 47:6, 55:10, 61:22, 80:5
**reasonable** [1] - 20:24
**reasons** [1] - 47:2
**received** [3] - 56:25, 73:6, 80:2
**recollection** [1] - 60:2
**record** [14] - 17:9, 18:11, 19:4, 20:21, 22:4, 26:10, 26:11, 26:16, 27:1, 27:13, 41:1, 42:10, 91:15
**RECORDED** [1] - 7:6
**records** [6] - 88:13, 89:4, 89:11, 89:14, 89:16, 89:21
**RECORDS**................. ...................... [1] - 10:10
**recount** [1] - 79:14
**rectify** [1] - 30:17
**red** [1] - 64:14
**Redd** [2] - 64:25, 65:1
**REDD**..................... ...................... [1] - 8:25
**redevelop** [1] - 43:11
**redo** [3] - 21:5, 21:15, 48:4
**REED** [1] - 5:3
**Reed** [1] - 50:18
**reengage** [1] - 53:18
**refer** [1] - 57:8
**reference** [2] - 33:19, 44:14
**reflect** [1] - 19:4
**refund** [1] - 57:25
**regard** [6] - 22:5, 45:24, 46:9, 48:7, 67:7, 87:4
**regarding** [4] - 14:4, 14:15, 53:15, 73:22
**REGARDING** [2] - 8:6, 8:11
**regardless** [1] - 79:24
**regards** [1] - 58:6
**Registered** [1] - 91:10
**regulating** [1] - 31:20
**reinsurance** [1] - 32:16
**reiterate** [1] - 48:14
**relate** [3] - 46:21, 47:7, 77:15
**related** [5] - 29:24, 31:7, 44:14, 56:10,

79:16
**RELATES** [1] - 1:9
**relates** [4] - 43:18, 47:19, 47:20, 84:22
**RELATING** [1] - 8:14
**relating** [3] - 46:17, 53:24, 78:2
**relationship** [1] - 46:24
**RELATIVE** [1] - 8:15
**relative** [3] - 19:16, 45:21, 54:8
**release** [1] - 18:15
**relevance** [2] - 12:1, 12:11, 16:6
**relevant** [3] - 46:12, 46:19, 48:10
**religion** [1] - 85:4
**relitigate** [2] - 43:21, 48:7
**reluctant** [1] - 44:5
**relying** [1] - 43:12
**remember** [7] - 15:10, 56:12, 73:2, 73:5, 76:2, 78:14, 86:25
**remind** [2] - 83:23, 84:25
**reminded** [1] - 74:18
**reminding** [1] - 76:5
**remove** [1] - 65:23
**rendered** [1] - 15:10
**reopen** [1] - 20:1
**repeating** [1] - 25:6
**report** [15] - 53:8, 56:11, 56:13, 56:14, 57:5, 57:15, 57:18, 57:19, 60:3, 60:15, 60:16, 60:20, 61:8, 62:4, 63:8
**reported** [1] - 74:3
**reporter** [1] - 13:18
**Reporter** [6] - 91:10, 91:11, 91:12, 91:20, 91:21
**REPORTER** [5] - 7:3, 7:3, 13:8, 13:20, 15:23
**REPORTER'S** [1] - 91:8
**reports** [2] - 83:15, 84:15
**REPORTS** [1] - 9:25
**REPORTS**................. ...................... [1] - 10:3
**represent** [2] - 45:17, 87:20
**representative** [1] - 78:10
**represented** [3] - 30:8,

87:1, 87:7
**represents** [1] - 88:9
**request** [6] - 54:5, 72:13, 76:10, 78:22, 80:24, 90:1
**REQUEST** [1] - 9:23
**REQUEST**................. .. [1] - 10:12
**requested** [5] - 54:3, 78:14, 78:16, 90:3, 90:8
**requests** [5] - 32:21, 68:10, 78:18, 79:21, 80:9
**REQUESTS** [1] - 9:9
**require** [2] - 51:3, 52:23
**required** [7] - 20:15, 36:19, 38:18, 56:20, 78:21, 83:14, 83:24
**REQUIRED** [2] - 9:24, 10:1
**requirement** [1] - 58:19
**requires** [3] - 20:25, 29:7, 79:25
**res** [1] - 48:7
**resolution** [2] - 29:14, 51:2
**resolve** [3] - 35:23, 35:25, 36:7
**resolved** [7] - 43:7, 51:10, 51:12, 51:14, 51:18, 51:22, 70:18
**resources** [2] - 38:5, 42:19
**respect** [7] - 38:6, 38:8, 47:4, 59:5, 75:15, 80:13, 80:16
**respectfully** [1] - 27:6
**respectively** [1] - 23:7
**RESPOND** [1] - 10:11
**respond** [11] - 12:22, 23:6, 34:14, 34:17, 37:4, 40:5, 50:11, 52:7, 80:11, 80:20, 89:25
**responded** [1] - 67:13
**RESPONSE** [2] - 5:10, 5:14
**response** [10] - 16:7, 19:16, 20:6, 20:14, 21:11, 21:25, 25:6, 53:15, 54:5, 72:13
**RESPONSES** [1] - 8:13
**responses** [1] - 53:24, 65:6
**responsibility** [1] - 57:11

**responsive** [1] - 45:5
**rest** [1] - 69:7
**restrictions** [1] - 32:9
**result** [3] - 31:14, 46:8, 47:18
**resumé** [1] - 62:22
**retain** [1] - 58:20
**retention** [2] - 59:6, 59:12
**retired** [1] - 55:7
**retreat** [1] - 61:11
**reversed** [1] - 87:13
**review** [3] - 56:14, 57:15, 59:19
**reviewing** [1] - 59:17
**revision** [1] - 82:15
**Rhodes** [1] - 88:9
**RICHARD** [1] - 9:8
**Richard** [2] - 34:15, 67:22
**RICHESON** [1] - 4:17
**RIG** [1] - 1:4
**rights** [7] - 25:12, 25:13, 40:8, 49:6, 50:23, 51:8, 51:9
**rigorous** [1] - 16:12
**rigs** [1] - 81:19
**rise** [1] - 11:7
**risk** [1] - 50:20
**RMR** [2] - 7:3, 91:20
**road** [1] - 24:23
**Robert** [2] - 55:13, 55:17
**ROBERT** [2] - 1:23, 8:20
**Rodriguez** [1] - 66:19
**RODRIGUEZ**............. ...................... [1] - 9:5
**role** [1] - 71:10
**roll** [1] - 11:13
**rolling** [1] - 89:25
**ROLLING** [1] - 10:12
**ROME** [1] - 5:10
**RONQUILLO** [2] - 4:7, 4:11
**ROOM** [2] - 2:13, 7:4
**room** [1] - 87:9
**rope** [1] - 37:6
**Roth** [2] - 87:24, 88:1
**ROTH** [1] - 10:8
**rough** [1] - 13:19
**Roy** [6] - 18:4, 18:6, 19:5, 24:8, 84:1, 85:3
**ROY** [7] - 1:15, 1:16, 24:8, 43:4, 43:6, 58:10, 65:17
**ROYSTON** [1] - 3:9

**rule** [3] - 16:22, 41:7, 68:13
**Rule** [3] - 23:11, 72:16, 77:23
**Rules** [4] - 33:1, 38:15, 38:18, 46:10
**rules** [2] - 17:2, 59:7
**ruling** [2] - 14:21, 27:21
**run** [6] - 22:25, 61:16, 85:8, 85:11, 85:15, 85:21
**RUN** [2] - 10:6, 10:13
**RUN**.................... [1] - 10:4
**running** [2] - 22:23, 85:17
**Russia** [1] - 65:17
**RYAN** [1] - 3:19
**résumé** [1] - 62:23

# S

**S-H-U-G-R-U-E** [1] - 50:18
**s/Cathy** [1] - 91:19
**safe** [1] - 34:25
**SALLY** [1] - 1:12
**SALMONS** [1] - 4:21
**SAMPLE** [1] - 6:19
**samples** [1] - 53:16
**SAMPLES**................ .............................. [1] - 8:12
**SAN** [2] - 2:13, 3:24
**sandwich** [2] - 29:1, 29:2
**Sannon** [1] - 67:9
**SANNON**................... .............................. [1] - 9:7
**Sarah** [2] - 53:2, 53:5
**SARAH** [1] - 2:12
**save** [5] - 19:21, 20:12, 22:1, 23:21, 62:1
**saves** [1] - 24:2
**saw** [2] - 54:10, 64:23
**scalpels** [1] - 83:20
**scared** [2] - 85:24, 85:25
**schedule** [9] - 22:2, 31:10, 31:12, 31:17, 66:6, 72:23, 80:5
**SCHEDULE** [2] - 9:3
**SCHEDULING** [1] - 9:17
**scheduling** [11] - 30:10, 30:18, 34:3,

44:7, 44:23, 46:9, 47:22, 48:15, 48:16, 63:15, 69:22
**SCHELL** [1] - 4:17
**scheme** [1] - 75:12
**SCOFIELD** [1] - 5:6
**scope** [10] - 31:18, 36:25, 38:6, 41:9, 46:11, 48:18, 49:17, 49:19, 51:24, 82:5
**scrambling** [1] - 22:2
**script** [5] - 21:4, 21:7, 21:9, 21:16, 83:11
**SEACOR** [6] - 5:15, 5:15, 5:16, 5:16, 5:17, 5:17
**seat** [1] - 11:8
**seats** [1] - 52:25
**second** [6] - 29:3, 32:1, 41:16, 44:3, 64:17, 64:18
**SECTION** [1] - 2:15
**section** [1] - 43:8
**see** [27] - 19:15, 26:2, 26:4, 26:23, 33:11, 33:22, 34:2, 36:7, 38:3, 42:21, 44:20, 53:1, 53:17, 54:7, 54:14, 55:13, 59:18, 60:10, 65:18, 72:5, 83:21, 83:25, 84:5, 86:10, 89:19, 90:13, 90:19
**seek** [6] - 14:2, 15:2, 29:23, 30:23, 31:3, 39:12
**seeking** [2] - 14:4, 14:14
**seem** [1] - 80:25
**segment** [1] - 70:22
**select** [1] - 77:14
**send** [10] - 38:10, 58:2, 61:14, 61:15, 65:17, 67:11, 67:15, 73:11, 73:15, 89:22
**sends** [1] - 28:21
**sense** [2] - 12:9, 34:22
**sensing** [1] - 88:16
**sensitive** [1] - 31:19
**sent** [5] - 27:18, 30:19, 46:25, 64:22, 79:4
**separate** [2] - 30:5, 44:7
**separately** [3] - 30:8, 34:1, 51:19
**separating** [1] - 42:4
**September** [9] - 31:9, 32:7, 41:6, 45:7, 69:25, 70:11, 70:21, 71:7, 83:22

**sequencing** [1] - 18:12
**seriously** [1] - 58:11
**serve** [2] - 20:9, 82:24
**served** [1] - 54:1
**serves** [1] - 24:1
**service** [1] - 39:21
**SERVICES** [1] - 4:7
**services** [1] - 39:25
**set** [8] - 12:3, 53:23, 54:10, 69:15, 72:22, 78:3, 79:21, 88:17
**SET** [1] - 9:12
**settle** [3] - 35:24, 88:12, 88:20
**SETTLEMENT** [2] - 8:10, 9:19
**settlement** [2] - 53:9, 72:9
**seven** [1] - 90:7
**several** [7] - 12:9, 20:13, 41:12, 65:7, 74:21
**shall** [2] - 29:15, 45:25
**shared** [1] - 39:16
**Shaun** [6] - 19:17, 19:19, 20:23, 23:5, 24:6, 25:1
**SHAUN** [1] - 6:15
**sheet** [1] - 19:3
**short** [5] - 71:10, 79:5, 86:11, 87:5, 87:7
**shortchange** [1] - 59:25
**shorten** [2] - 25:17, 25:19
**shortened** [1] - 25:8
**shortly** [1] - 27:22
**show** [2] - 41:18, 85:17
**SHUGRUE** [4] - 5:3, 50:17, 51:22, 52:5
**Shugrue** [1] - 50:17
**SHUSHAN** [1] - 1:12
**Shushan** [1] - 56:9
**shutting** [1] - 69:20
**side** [11] - 30:17, 32:21, 32:22, 32:23, 33:5, 34:5, 37:5, 42:22, 75:13, 88:19
**sides** [2] - 30:19, 34:4
**SIEMENS** [1] - 5:18
**sign** [1] - 19:3
**signed** [1] - 45:23
**significantly** [1] - 51:13
**silence** [1] - 65:3
**similar** [1] - 80:14
**simple** [2] - 26:21, 87:13

**simply** [11] - 20:5, 20:17, 23:22, 27:12, 30:13, 33:15, 40:19, 49:16, 51:15, 62:4, 79:19
**single** [3] - 17:10, 17:11, 26:16
**sit** [3] - 22:11, 24:3, 30:12
**sitting** [1] - 20:4
**situation** [4] - 25:2, 25:7, 27:17, 44:2
**six** [1] - 79:16
**sizes** [1] - 45:21
**Skelton** [3] - 11:25, 12:14, 16:17
**SKELTON**.................. ......................... [1] - 8:7
**skin** [4] - 44:25, 60:19, 60:21, 69:10
**skipped** [1] - 45:15
**slot** [2] - 66:13, 70:8
**slotted** [1] - 67:18
**slower** [1] - 43:24
**slowly** [1] - 13:8
**small** [1] - 34:8
**smart** [2] - 38:10, 58:9
**SMITH** [1] - 5:3
**Smith** [2] - 32:8, 50:18
**sole** [2] - 29:14, 46:15
**solicited** [1] - 71:15
**somewhere** [2] - 80:1, 90:7
**soon** [1] - 48:1
**soonest** [1] - 51:10
**sorry** [13] - 15:23, 15:25, 19:12, 24:19, 28:2, 42:8, 45:15, 50:3, 50:17, 59:2, 64:25, 66:3, 72:7
**sort** [2] - 45:20, 67:8
**sought** [2] - 14:14, 14:15
**sound** [2] - 60:1, 60:13
**sounded** [1] - 74:15
**sounds** [4] - 54:6, 59:21, 84:9, 85:19
**SOUTH** [2] - 4:25, 5:4
**speaks** [3] - 39:3, 41:3, 43:24
**Special** [1] - 73:17
**specific** [4] - 37:25, 44:6, 44:13, 80:21, 81:2, 88:18
**specifically** [1] - 77:24
**speech** [1] - 26:7
**speed** [3] - 25:20, 45:5, 56:15

**spell** [1] - 13:8
**spend** [2] - 17:20, 69:12
**spends** [1] - 59:17
**spent** [2] - 25:3, 79:15
**SPILL** [2] - 1:4, 5:10
**spoken** [3] - 56:1, 56:6, 90:22
**spreadsheet** [1] - 76:3
**ST** [2] - 6:4, 6:5
**stage** [2] - 12:3, 19:24
**stages** [1] - 33:6
**stand** [1] - 22:5
**standard** [1] - 39:25
**standing** [1] - 68:15
**standpoint** [2] - 22:22
**start** [16] - 16:18, 32:20, 37:16, 45:22, 53:1, 54:20, 63:8, 63:10, 68:7, 69:22, 69:24, 70:13, 76:9, 82:14, 83:14, 83:20
**started** [2] - 30:1, 55:10
**starting** [3] - 70:21, 83:22
**State** [2] - 29:15, 91:11
**state** [3] - 20:6, 78:19, 82:4
**STATE** [1] - 2:19
**statement** [2] - 25:14, 25:18
**States** [4] - 27:18, 75:14, 91:12, 91:21
**STATES** [4] - 1:1, 1:12, 2:15, 10:8
**states** [3] - 54:8, 75:14, 87:23
**STATES**.................... ......... [1] - 8:16
**status** [7] - 31:21, 35:20, 56:24, 83:24, 85:21, 86:10, 88:11
**STATUS** [2] - 1:11, 10:2
**stay** [2] - 88:14, 88:15
**staying** [1] - 42:25
**STEFANIE** [1] - 4:8
**STENOGRAPHY** [1] - 7:6
**step** [3] - 34:14, 36:19, 39:8
**STEPHEN** [1] - 1:20
**Sterbcow** [5] - 11:15, 22:3, 22:8, 23:18, 65:9
**STERBCOW** [13] - 2:3, 2:3, 11:17, 11:20, 13:19, 22:9, 22:20,

26:20, 42:10, 43:2, 65:20, 65:23, 66:3
**Steve** [7] - 18:5, 65:5, 75:19, 84:8, 88:7, 89:6, 90:14
**STEVEN** [1] - 2:16
**Stick** [2] - 19:7, 52:25
**still** [4] - 53:14, 53:18, 56:16, 66:8
**stipulate** [6] - 33:7, 43:17, 44:5, 60:18, 62:16, 62:22
**stipulates** [1] - 62:8
**stipulation** [1] - 66:10
**STONE** [1] - 4:3
**STRADLEY** [1] - 6:11
**straight** [1] - 37:8
**straight-up** [1] - 37:8
**straightforward** [1] - 32:19
**straws** [1] - 71:9
**streamlined** [1] - 63:13
**streamlining** [2] - 63:3, 63:4
**street** [1] - 23:15
**STREET** [16] - 1:17, 1:24, 2:4, 2:7, 3:7, 3:10, 3:23, 4:4, 4:9, 4:18, 4:22, 5:7, 5:20, 6:9, 6:12, 7:4
**stretch** [1] - 17:6
**strict** [1] - 38:23
**strictly** [1] - 59:9
**strong** [1] - 22:7
**structured** [1] - 74:11
**stuff** [3] - 34:13, 63:10
**stupidly** [1] - 75:25
**subject** [2] - 62:21, 77:9
**subjects** [1] - 32:13
**submission** [1] - 32:16
**submit** [11] - 20:5, 21:9, 21:24, 25:22, 25:25, 27:3, 27:15, 62:24, 77:22, 78:12, 78:21
**submits** [2] - 31:2, 31:3
**submitted** [4] - 20:17, 48:16, 50:9, 50:10
**subpoena** [2] - 57:3, 88:16
**subrogation** [2] - 43:20, 47:15
**subscribers** [1] - 38:9
**Subsea** [2] - 77:21, 81:18
**subsequent** [1] -

73:22
**substance** [1] - 41:1
**Subway** [1] - 29:2
**successful** [1] - 31:6
**sue** [1] - 47:16
**suggest** [9] - 13:17, 14:20, 20:9, 21:20, 42:24, 43:6, 47:21, 81:4
**suggested** [5] - 14:7, 14:9, 15:4, 15:14, 84:19
**suggesting** [2] - 69:14, 70:2
**suggestion** [6] - 14:18, 19:16, 61:21, 74:23, 75:6, 80:14
**SUITE** [9] - 2:4, 3:10, 4:9, 4:12, 4:18, 4:25, 5:7, 5:20, 6:9
**sum** [1] - 41:1
**summary** [3] - 36:24, 38:24, 48:11
**summer** [1] - 31:5
**supports** [1] - 22:5
**Supreme** [5] - 30:25, 39:17, 40:12, 49:3, 49:8
**surely** [2] - 78:6, 79:16
**suspenders** [1] - 84:12
**Swizzle** [2] - 19:7, 52:25
**syllable** [2] - 25:20
**syllable-by-syllable** [1] - 25:20
**system** [1] - 23:2
**systems** [1] - 81:19

## T

**tackle** [1] - 83:17
**tail** [1] - 45:21
**target** [2] - 71:4, 83:22
**TARTER** [1] - 5:7
**tasked** [1] - 73:20
**technical** [2] - 56:13, 63:10
**technically** [1] - 84:15
**tee** [1] - 49:10
**ten** [4] - 16:25, 38:7, 38:15, 38:16
**tend** [1] - 43:25
**tentative** [3] - 55:20, 63:24, 73:19
**terms** [13] - 18:12, 23:17, 26:24, 35:12, 37:21, 43:24, 44:1, 46:3, 47:22, 47:24,

50:25, 52:10, 84:14
**terribly** [1] - 12:12
**testify** [4] - 23:14, 27:19, 57:5, 60:3
**testimony** [6] - 15:16, 17:13, 20:13, 24:11, 57:21, 79:20
**testing** [2] - 78:15, 78:17
**Texas** [9] - 24:24, 29:15, 29:16, 30:25, 39:17, 40:11, 49:3, 49:8, 49:9
**THAN** [1] - 10:5
**THAT** [1] - 9:3
**THE** [225] - 1:4, 1:5, 1:12, 1:15, 1:23, 2:10, 2:15, 5:11, 8:11, 8:14, 8:16, 9:17, 10:4, 10:5, 10:7, 10:11, 11:7, 11:8, 11:10, 11:13, 11:15, 11:19, 12:5, 12:13, 12:23, 13:3, 13:8, 13:20, 14:6, 14:22, 15:1, 15:10, 15:19, 15:23, 15:25, 16:3, 16:20, 16:25, 17:6, 17:16, 17:18, 18:1, 18:6, 18:17, 18:20, 18:25, 19:8, 19:12, 19:24, 20:23, 21:3, 21:8, 21:20, 22:3, 22:7, 22:19, 23:5, 23:16, 24:6, 24:17, 24:21, 26:18, 27:20, 27:24, 28:9, 28:13, 28:18, 28:23, 29:2, 33:13, 33:17, 33:21, 36:10, 36:14, 36:21, 37:8, 37:20, 38:22, 39:6, 42:5, 42:8, 42:24, 43:3, 43:5, 43:10, 43:21, 44:22, 45:9, 45:13, 48:11, 48:25, 49:2, 49:15, 49:22, 50:4, 50:14, 51:21, 52:1, 52:6, 52:9, 52:13, 52:18, 52:22, 52:24, 53:4, 53:7, 54:6, 54:17, 55:1, 55:4, 55:8, 55:12, 55:18, 55:23, 58:8, 58:11, 58:22, 59:2, 59:10, 59:13, 60:1, 60:6, 60:9, 60:18, 60:22, 61:1, 61:4, 61:12, 62:1, 62:7, 62:12, 62:16, 62:22, 63:1,

63:4, 63:12, 63:17, 64:4, 64:7, 64:12, 64:14, 64:17, 64:20, 65:8, 65:13, 65:16, 65:18, 65:22, 66:1, 66:5, 66:18, 66:24, 67:1, 67:3, 67:5, 67:16, 68:4, 68:6, 68:17, 68:20, 68:25, 69:2, 70:4, 70:19, 70:23, 71:8, 71:12, 71:13, 71:20, 71:23, 72:1, 72:18, 72:25, 73:8, 73:11, 73:15, 73:23, 74:8, 74:13, 74:15, 75:1, 75:19, 76:2, 76:8, 76:14, 78:23, 79:1, 79:6, 80:12, 80:25, 82:1, 82:4, 82:10, 82:20, 82:22, 83:1, 83:9, 83:13, 84:11, 84:23, 84:25, 85:5, 85:10, 85:14, 85:18, 85:20, 85:25, 86:18, 86:25, 87:2, 87:11, 88:1, 88:3, 88:5, 88:25, 89:2, 89:4, 89:8, 89:12, 89:20, 90:16, 90:18, 90:24, 91:2
**THEODORE** [1] - 5:22
**thereafter** [1] - 31:11
**therefore** [6] - 40:3, 40:7, 46:17, 46:25, 47:16, 47:20
**THESE** [3] - 9:15, 9:17, 10:1
**they've** [3] - 41:13, 67:6, 87:3
**thinking** [8] - 16:17, 16:18, 69:13, 70:20, 70:24, 72:3, 82:14, 88:21
**thinks** [1] - 30:23
**third** [8] - 41:21, 47:9, 76:17, 76:24, 80:16, 82:6, 82:7, 90:5
**third-partied** [1] - 47:9
**third-party** [4] - 76:17, 76:24, 80:16, 90:5
**THIS** [2] - 1:9, 8:6
**thoughts** [2] - 19:18, 54:17
**thousand** [2] - 38:10, 38:11
**thousands** [2] - 19:21, 87:5
**threads** [1] - 24:12
**three** [14] - 30:21, 32:18, 36:6, 56:3,

57:2, 59:14, 73:18, 77:11, 77:13, 77:14, 77:23, 78:13, 81:15, 82:6
**three-phrase** [1] - 36:6
**three-quarters** [1] - 56:3
**threshold** [2] - 51:2, 51:23
**throwing** [1] - 17:15
**THURSDAY** [2] - 1:7, 11:2
**tight** [1] - 37:6
**TIME.................** [1] - 9:9
**timing** [4] - 34:4, 46:9, 47:24, 50:25
**TIMOTHY** [1] - 3:20
**tired** [1] - 69:7
**title** [1] - 19:20
**TO** [18] - 1:9, 8:13, 8:14, 8:15, 8:16, 9:3, 9:4, 9:12, 9:14, 9:15, 10:1, 10:7, 10:11, 11:4, 88:20
**today** [7] - 18:7, 28:18, 58:10, 69:2, 86:4, 86:15, 89:7
**together** [2] - 67:10, 75:25
**tomorrow** [8] - 36:3, 69:15, 72:2, 89:24, 90:2, 90:8, 90:11
**TOMORROW** [1] - 9:13
**tonight** [1] - 53:11
**Tony** [2] - 73:12, 81:1
**took** [1] - 48:22
**top** [1] - 68:24
**topic** [1] - 79:23
**topics** [12] - 76:21, 77:9, 77:12, 77:24, 78:13, 79:16, 79:17, 80:10, 81:16, 82:13, 82:15
**TORTS** [1] - 2:11
**total** [3] - 57:23, 57:24, 90:8
**tower** [1] - 37:7
**town** [1] - 67:23
**tracking** [1] - 71:7
**TRANSCRIPT** [2] - 1:11, 7:6
**transcript** [4] - 13:13, 13:19, 21:21, 91:14
**transfer** [1] - 46:23
**transferred** [1] - 29:16
**TRANSOCEAN** [4] - 3:3, 3:3, 3:5, 6:7

**Transocean** [25] - 29:6, 29:7, 29:8, 29:9, 29:20, 29:22, 30:7, 32:22, 33:4, 33:25, 34:10, 34:24, 35:7, 39:14, 41:13, 41:14, 44:18, 45:23, 46:1, 48:13, 65:2, 88:10, 88:12, 89:2
**Transocean's** [4] - 33:24, 37:4, 40:2, 50:6
**travel** [2] - 57:17, 57:22
**travels** [1] - 60:6
**triable** [1] - 40:6
**trial** [19] - 16:7, 20:8, 21:12, 21:13, 21:14, 23:24, 24:24, 31:13, 36:5, 41:8, 49:19, 51:19, 61:19, 70:17, 73:1, 73:22, 74:11, 84:19
**trials** [3] - 24:14, 27:3, 36:5
**tried** [4] - 24:13, 37:25, 43:8, 59:5
**triple** [1] - 71:7
**trouble** [1] - 88:13
**true** [4] - 19:25, 22:19, 35:13, 91:14
**truly** [1] - 45:3
**trust** [1] - 58:21
**try** [6] - 36:24, 51:1, 67:18, 84:3, 87:17, 89:18
**trying** [16] - 15:13, 24:25, 25:1, 25:3, 25:7, 25:11, 25:19, 25:20, 33:11, 35:21, 45:4, 65:10, 87:14, 88:12, 88:18, 88:20
**TSEKERIDES** [1] - 5:22
**Tuesday** [4] - 54:10, 72:12, 82:20, 82:21
**tuna** [1] - 29:1
**turf** [1] - 24:13
**turn** [5] - 47:12, 65:4, 65:8, 89:10
**TWO** [1] - 9:16
**two** [37] - 18:16, 29:12, 31:4, 31:18, 31:21, 32:17, 33:15, 34:4, 34:7, 36:5, 40:25, 41:2, 42:13, 47:2, 56:14, 56:16, 57:16, 57:20, 65:6, 67:8, 69:19, 69:20, 70:22, 73:18, 77:17,

78:4, 78:6, 79:7, 81:17, 83:15, 84:19, 86:1
**two-day** [2] - 69:19, 69:20
**TWO-DAY** [1] - 9:16
**two-fold** [1] - 79:7
**TWO** ...................... [1] - 9:25
**Twombly** [1] - 80:20
**TX** [5] - 3:11, 4:9, 4:13, 5:8, 6:13
**type** [1] - 37:13
**types** [2] - 34:25, 74:10

## U

**U.S** [3] - 2:10, 2:16, 6:3
**ultimately** [1] - 24:12
**unable** [2] - 31:25, 61:22
**under** [20] - 23:11, 27:21, 35:20, 39:17, 40:11, 40:18, 46:3, 46:10, 46:22, 47:15, 50:24, 51:8, 52:11, 52:15, 57:6, 59:7, 59:21, 60:12, 63:8, 77:20
**Underhill** [2] - 68:11, 90:20
**UNDERHILL** [2] - 2:11, 71:9
**Underhill's** [1] - 55:14
**underlying** [6] - 39:20, 39:23, 40:15, 43:12, 49:4, 52:12
**underwriter** [1] - 32:15
**underwriters** [6] - 33:24, 43:16, 47:9, 50:7, 75:1, 75:2
**UNDERWRITERS** [1] - 6:7
**underwriting** [1] - 41:11
**undue** [1] - 87:16
**unfathomable** [1] - 39:3
**unfortunately** [2] - 27:17, 36:4
**UNITED** [3] - 1:1, 1:12, 2:15
**United** [4] - 27:18, 75:14, 91:12, 91:21
**unless** [6] - 20:7, 39:21, 40:23, 53:11,

56:12, 90:3
**unreasonably** [1] - 77:4
**up** [45] - 14:9, 15:24, 16:5, 19:19, 22:1, 22:23, 23:5, 25:21, 27:9, 28:7, 28:12, 34:14, 36:15, 37:8, 38:10, 41:3, 41:18, 42:3, 44:23, 45:5, 48:25, 49:10, 54:19, 55:13, 56:15, 60:10, 62:5, 63:14, 66:1, 66:8, 67:17, 68:15, 68:19, 70:5, 70:23, 71:2, 72:3, 80:3, 80:8, 80:12, 83:4, 85:7, 89:6, 90:10, 90:16
**update** [1] - 59:3
**updated** [1] - 86:16
**upstairs** [1] - 23:16
**urgency** [1] - 51:1
**US** [1] - 75:15
**USA** [1] - 4:16

## V

**vacate** [1] - 46:23
**vacuum** [1] - 37:6
**vague** [1] - 80:20
**value** [1] - 47:11
**variety** [1] - 29:8
**vendor** [1] - 90:5
**version** [2] - 63:13, 74:4
**versus** [1] - 21:19
**video** [6] - 21:4, 21:22, 22:10, 22:11, 22:13, 22:23
**videotape** [3] - 21:14, 21:19, 25:23
**videotaped** [3] - 20:2, 20:4, 23:24
**videotaping** [1] - 21:17
**VINCENT** [1] - 6:15
**violate** [2] - 88:14, 88:15
**VOICES** [4] - 11:9, 11:12, 11:14, 19:11
**voluminous** [1] - 59:16
**volunteered** [1] - 75:25
**vote** [2] - 18:23, 18:25

## W

**WACKER** [1] - 5:4
**wait** [4] - 46:15, 47:13, 67:10, 67:13
**waiting** [3] - 11:17, 24:15, 74:20
**waiver** [1] - 47:15
**WALKER** [1] - 6:3
**walking** [1] - 37:5
**Walter** [2] - 15:21, 16:1
**WALTHER** [1] - 4:3
**wants** [10] - 25:16, 43:10, 47:23, 48:25, 58:5, 63:1, 76:10, 85:20, 88:14, 89:9
**warm** [1] - 52:25
**WARREN** [1] - 4:21
**WASHINGTON** [3] - 2:17, 4:22, 5:20
**watch** [1] - 21:21
**waterline** [1] - 34:13
**WE** [3] - 9:3, 9:12, 10:5
**WEATHERFORD** [1] - 6:3
**Wednesday** [2] - 69:4, 82:19
**week** [18] - 49:25, 50:11, 53:13, 66:16, 68:12, 68:14, 69:4, 69:12, 69:15, 73:4, 74:12, 75:24, 76:8, 82:17, 86:7, 86:17, 90:8, 90:12
**WEEK** [1] - 9:12
**weekend** [2] - 68:2, 91:3
**weeks** [3] - 31:5, 59:14, 65:7
**WEIGEL** [1] - 5:11
**weigh** [1] - 53:17
**WEIL** [2] - 5:19, 5:22
**WEINER** [1] - 4:17
**welcome** [1] - 84:2
**wells** [1] - 81:18
**whatsoever** [1] - 16:19
**whereas** [1] - 31:16
**WHEREUPON** [2] - 18:10, 91:4
**whole** [3] - 20:7, 43:19, 61:2
**WHY** [1] - 9:12
**WILLIAM** [3] - 1:16, 6:4, 6:11
**willing** [2] - 56:5, 56:17

**Willis** [1] - 68:22
**WILLIS** ..................... .............. [1] - 9:10
**wish** [3] - 11:17, 11:19, 32:8
**WITNESS** [1] - 9:22
**witness** [22] - 12:10, 13:24, 16:8, 17:10, 20:15, 23:11, 25:3, 25:16, 27:9, 27:10, 32:4, 32:5, 57:4, 63:19, 75:25, 76:7, 77:20, 78:6, 78:9, 78:19, 82:12, 83:16
**witness'** [1] - 26:17
**witnesses** [20] - 19:15, 20:6, 23:14, 66:6, 67:18, 68:8, 68:18, 69:19, 69:24, 70:4, 70:9, 70:12, 70:14, 71:1, 71:2, 71:4, 71:16, 83:14, 83:17, 83:22
**WITNESSES** [4] - 8:8, 9:3, 9:15, 9:24
**Wittmann** [1] - 76:12
**WITTMANN** [10] - 4:3, 76:12, 76:15, 80:11, 80:13, 81:25, 82:3, 82:8, 82:18, 82:21
**wonderful** [2] - 11:13, 68:25
**Word** [1] - 30:18
**word** [7] - 13:17, 20:14, 36:9, 37:19, 49:1, 50:20, 74:19
**words** [2] - 15:1, 20:1
**workplace** [1] - 34:25
**WORLDWIDE** [1] - 5:16
**worry** [1] - 89:13
**worth** [2] - 59:22, 60:13
**WRIGHT** [1] - 1:15
**Wright** [24] - 28:5, 55:19, 56:7, 56:10, 56:14, 56:16, 56:24, 57:2, 57:4, 57:14, 57:24, 58:14, 58:24, 59:6, 60:14, 61:4, 61:25, 62:3, 62:9, 62:12, 62:14, 62:16, 62:20, 66:9
**Wright's** [2] - 56:2, 57:10
**WRIGHT** .................... .................... [1] - 8:21
**write** [4] - 21:6, 21:9, 39:4, 39:7

**writing** [3] - 20:18, 21:24, 23:22
**written** [5] - 21:16, 21:19, 45:23, 56:3, 84:14
**wrote** [3] - 34:10, 34:16, 62:21

## Y

**y'all** [3] - 70:12, 83:10, 88:6
**Yalmaz** [2] - 66:23, 66:24
**YALMAZ** [1] - 66:23
**YALMAZ....................
.................... [1] - 9:6
**year** [4] - 49:21, 51:11, 56:11, 76:23
**years** [1] - 79:23
**yesterday** [2] - 12:17, 54:7
**YORK** [5] - 4:11, 5:12, 5:23, 55:16, 66:2