# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>This Document relates to:<br><br>2:10-CV-02771 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

# TRANSOCEAN'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE UNITED STATES OF AMERICA TO DISMISS [Dkt. No. 2404]

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ....................................................................................................................... 10

I.  SOVEREIGN IMMUNITY AND THE "DISCRETIONARY FUNCTION"
    DOCTRINE ARE NOT A BAR TO AN AFFIRMATIVE
    DEFENSE/COUNTERCLAIM FOR RECOUPMENT IN AN ACTION
    BROUGHT BY THE UNITED STATES ...................................................................... 10

II. RULE 14(C) IS AN APPROPRIATE PROCEDURE TO OBTAIN AN
    ALLOCATION OF FAULT AS TO THE UNITED STATES IN THE
    LIMITATION ACT PROCEEDING WHICH CAN THEN BE USED IN
    CONNECTION WITH THE AFFIRMATIVE DEFENSE/COUNTERCLAIM
    FOR RECOUPMENT IN THE ACTION BROUGHT BY THE UNITED
    STATES ....................................................................................................................... 15

III. NOTICE PLEADING AS TO THE FAULT OF THE UNITED STATES IS
     SUFFICIENT WHERE, AS HERE, THE UNITED STATES HAS AMPLE
     ACTUAL NOTICE OF THE NATURE OF THE CLAIM ........................................... 19

CONCLUSION ..................................................................................................................... 20

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Akerly v. New York Cent. R.R. Co.*,
    168 F.2d 812 (6th Cir. 1948) ........................................................................16

*Am. Fid. & Cas. Co. v. Greyhound Corp.*,
    232 F.2d 89 (5th Cir. 1956) ..........................................................................17

*Ashcroft v. Iqbal*,
    --- U.S. ---, 129 S.Ct. 1937 (2009)...............................................................19

*Bateman v. FDIC*,
    112 F.Supp. 2d 89 (D. Mass. 2000) ..............................................................13

*Bell Atl. Corp. v Twombly*,
    550 U.S. 544 (2007).......................................................................................19

*Berrey v. Asarco Inc.*,
    439 F.3d 636 (10th Cir. 2006) .................................................................12, 13

*Bowen v. Mass.*,
    487 U.S. 879 (1988)....................................................................................7, 18

*Bull v. United States*,
    295 U.S. 247 (1935).......................................................................................11

*Caytrans BBC, LLC v. Equip. Rental & Contractors Corp.*,
    2009 WL 3248044 (S.D. Ala. Oct. 6, 2009) .................................................15

*Cox v. Kurt's Marine Diesel of Tampa, Inc.*,
    785 F.2d 935 (11th Cir. 1986) ......................................................................12

*East Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC*,
    2007 WL 2489832 (E.D. La. Aug. 30, 2007) ...............................................18

*EEOC v. First Nat'l Bank of Jackson*,
    614 F.2d 1004 (5th Cir. 1980) .................................................................12, 14

*Falls Indus., Inc. v. Consol. Chem. Indus., Inc.*,
    258 F.2d 277 (5th Cir. 1958) ........................................................................17

*FDIC v. Bierman*,
    2 F.3d 1424 (7th Cir. 1993) ..........................................................................13

## TABLE OF AUTHORITIES
(continued)

Page(s)

*FDIC v. Carter,*
    701 F. Supp. 730 (C.D. Cal. 1987) ...................................................................13

*First Nat'l Bank v. Genina Marine Servs., Inc.,*
    136 F.3d 391 (5th Cir. 1998) ..........................................................................12

*Frederick v. United States,*
    386 F.2d 481 (5th Cir. 1967) ................................................................... passim

*Garcia & Sons Dev., LLC v. United States,*
    2003 WL 25944551 (S.D. Miss. Mar. 3, 2003) .......................................................18

*Great W. Cas. Co. v Marathon Oil Co.,*
    2001 WL 699957 (N.D. Ill. June 21, 2001) .........................................................16

*In re Am. Export Lines, Inc.*
    568 F. Supp. 956 (S.D.N.Y. 1983) ...................................................................13

*In re S. Scrap Metal Material Co., LLC,*
    713 F. Supp. 2d 568 (ED La. 2010) (Feldman, J.).............................................13, 14

*Jupiter Energy Corp. v. F.E.R.C.,*
    407 F.3d 346 (5th Cir. 2005) ..........................................................................18

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.,*
    924 F. Supp. 1436 (E.D. Va. 1996 ...................................................................14

*Reiter v. Cooper,*
    507 U.S. 258 (1993)......................................................................................13

*United States v. City of New Orleans,*
    2003 WL 22208578 (E.D. La. Sept 19, 2003) (Livaudais, J) .................................13

*United States v. Gordon,*
    2010 WL 2643531 (M.D. Fla. June 30, 2010).....................................................12

*United States v. Johnson,*
    853 F.2d 619 (8th Cir.1988) ..........................................................................12

*United States v. Reliable Transfer Co., Inc.,*
    421 U.S. 397 (1975)......................................................................................14

*United States v. Sierra Pac.Indus.,*
    No. 2:09-cv-02445-JAM-EFB, 2010 WL 2205924 (E.D. Cal. Mar. 15, 2010)......................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wyandotte Nation v. City of Kansas City, Kansas,*
200 F. Supp. 2d 1279 (D. Kan. 2002) ......................................................................................12

## FEDERAL STATUTES

5 U.S.C. § 701(b)(1) ...............................................................................................................18

5 U.S.C. § 702 ....................................................................................................................7, 17

5 U.S.C. § 706(2)(A) .............................................................................................................18

28 U.S.C. § 1346 .....................................................................................................................4

28 U.S.C. § 2680(a) .................................................................................................................4

33 U.S.C. § 1321 .....................................................................................................................1

33 U.S.C. § 2701 *et seq.* ..........................................................................................................1

33 U.S.C. § 2709 ...................................................................................................................14

## FEDERAL RULES

FRCP Rule 8(c)(2) .................................................................................................................13

FRCP Rule 14(c) ...................................................................................................................16

## TREATISES

3 Moore's Federal Practice, § 13.50(2)(c) (3d ed. 2010) .........................................................3

5 Wright & Miller, Federal Practice & Procedure § 1275 (2d ed. 2009) ................................13

6 Wright, Miller & Kane, Federal Practice and Procedure § 1427 (3d ed. 1990) ....................3

## OTHER AUTHORITIES

*Black's Law Dictionary*, 927 (7th ed, 1999) ..........................................................................16

National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling,
Chief Counsel's Report (2011) ...........................................................................................8

*Stopping the Spill: The Five-Month Effort to Kill the Macondo Well,*
National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling,
Staff Working Paper No. 6 (2011) ......................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Webster's Unabridged Dictionary* (2d ed. 1935) ........................................................................16

## INTRODUCTION AND SUMMARY OF ARGUMENT

Petitioners Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC and Triton Asset Leasing GmbH (collectively "Transocean") hereby oppose the Motion of the United States of America **[Dkt. No. 2404]** which seeks to dismiss the Third-Party Complaint **[Dkt. No. 1320]** and the Cross-Claim **[Dkt. No. 2068]** filed by Transocean, including the Rule 14(c) tender of the United States to Plaintiffs.

The United States has filed a Complaint against Transocean and other defendants seeking civil penalties under the Clean Water Act ("CWA"), 33 U.S.C. § 1321, and declaratory relief under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*. The United States also purports to reserve a right to amend its Complaint to seek damages for response costs and injury to natural resources under OPA and to allege additional claims for relief. Case No. 2:10-cv-04536, Complaint, filed Dec. 15, 2010, ¶ 92. The United States' action has been consolidated for pre-trial purposes with MDL 2179, and counsel for the United States has regularly appeared at MDL hearings, including participation in the development of a trial plan. *See, e.g.*, **Dkt. No. 1946** (trial plan submission of United States).

The relative fault of the United States in connection with the oil spill is clearly a factual issue that will need to be decided at some point in the United States' lawsuit. In its answer **[Dkt. No. 1420]** to the United States' complaint, Transocean asserted the following affirmative defense/counterclaim of "Set off and Recoupment":

> 24. The incident and resulting damages may have been caused in part by the comparative fault of the Plaintiff [United States]. The Transocean Defendants are entitled to a credit, set off and/or recoupment with respect to any monetary claim of the Plaintiff (whether asserted in the present Complaint or in any amended

complaint the Plaintiff may seek leave to file) to the extent that the Transocean Defendants are held liable to any person or entity, either in this action or in any other action arising from the incident, for any amounts attributable to the comparative fault and/or negligence of the Plaintiff.  The Transocean Defendants reserve the right to seek an apportionment of fault through any appropriate procedure, and to obtain contribution through a credit, setoff and/or recoupment based on such apportionment.  To the extent a formal counterclaim rather than an affirmative defense is necessary to preserve such right to obtain contribution through a credit, setoff and/or recoupment, the Transocean Defendants file this Paragraph 24 as a Counterclaim pursuant to Rule 13(a) of the Federal Rules of Civil Procedure."  **[Dkt. No. 1420]**, pp. 25-26.

The other defendants in the action brought by the United States have likewise asserted the comparative fault of the United States as an affirmative defense/counterclaim.  Answer of BPXP, **[Dkt. No. 1858]** (asserting in Sixth and First Affirmative Defenses that "Plaintiff is not entitled to recover any costs or purported damages to the extent that those costs or alleged damages were incurred as a result of Plaintiffs' acts or omissions determined to be wrongful", and reserving the right to amend its answer to assert "any potential affirmative defenses and counterclaims [] in response to any claim for damages under OPA"); Answer of Anadarko, **[Dkt. No. 1860]** and Answer of Moex, **[Dkt. No. 1859]** (both answers asserting in Eighth Affirmative Defense that "damages alleged by Plaintiff were the result of the comparative fault or negligence of the Plaintiff" and asserting in Thirteenth Affirmative Defense that Anadarko and Moex have a "right to obtain contribution from any potentially liable party, including the Plaintiff [United States]"

and deeming the affirmative defense a counterclaim against the United States "[t]o the extent a counterclaim rather than an affirmative defense is necessary to preserve such right to obtain contribution."); Answer of QBE Syndicate, **[Dkt. No. 1507]** (adopting all affirmative defenses asserted by Transocean).[1]   The United States has not moved to strike or otherwise challenged these affirmative defenses/counterclaims as a matter of law, and nowhere mentions them in its present motion.

As we will show, it is well established that an affirmative defense/counterclaim against the United States by way of recoupment is not barred by sovereign immunity or the "discretionary function" exception to the Federal Tort Claims Act.  *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967) ("Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment -- arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims …"); 6 Wright, Miller & Kane, Federal Practice and Procedure § 1427, at 197 (3d ed. 1990) ("Despite the sovereign immunity doctrine . . . when the United States institutes an action, [a] defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery."); 3 Moore's Federal Practice, § 13.50(2)(c) (3d ed. 2010) ("[W]hen the United States brings a suit, it does waive its sovereign immunity as to any recoupment claims of the defendant).

---

[1] The relative fault of other parties has also been put in issue in the CWA/OPA lawsuit filed by the United States. BPXP, one of the defendants, has filed a third-party complaint for contribution against Halliburton **[Dkt. No. 2083]**, a third-party complaint for contribution against Cameron **[Dkt. No. 2065]**, and a cross-complaint and third-party complaint against several Transocean entities **[Dkt. No. 2075]**.  The Transocean entities have answered the BPXP cross-claim and third-party complaint, and in turn have asserted their own cross-claims and third-party complaints naming as third-party defendants all of the same entities that have been named as defendants in the MDL, with the exception of the so-called responder defendants. **[Dkt. Nos. 2574, 2585]**.

If the United States had not brought suit, sovereign immunity and the "discretionary function" exception to the Federal Tort Claims Act[2] arguably would bar Transocean from pursuing a contribution claim seeking a monetary judgment against the United States.[3] When, however, the United States has filed suit seeking monetary relief in its favor, sovereign immunity and the "discretionary function" doctrine do not bar Transocean from using any liability of the United States arising from the same transaction or occurrence as a recoupment against the monetary claims that the United States has asserted or may in the future assert.

The United States obviously believes that some factual issues in its case can be consolidated for trial with the February 27, 2012 "fault allocation" trial in the Limitation Act proceeding.  Otherwise, there would be no basis for the United States to participate in the planning for that fault trial, or to have standing as a plaintiff in that fault trial.  Indeed, the United States has told the Court that it should consolidate common factual issues from its case with the Limitation Act "fault trial."  "Very simply, avoiding a months-long repetition of the first trial is precisely what Rule 42(a) is designed for …."  **[Dkt. No. 2671]**, at p. 6. The question, then, is whether the alleged **relative fault of the United States** is an issue that can properly be tried as part of the February 27, 2012 fault allocation trial.   Common sense and efficient case management dictate that this Court should consider the relative fault of all parties at the same time.  It would make no sense whatsoever to have a trial in 2012 to allocate the relative fault of all parties other than the United States, and then to have a different trial in 2013 or later to consider the relative fault of the United States with respect to the same underlying event.

The real issue presented by the present motion, then, is purely procedural -- whether a Rule 14(c) tender is an appropriate procedural device for Transocean to have used to bring the

---

[2] 28 U.S.C. § 1346.  The "discretionary function" exception to the  FTCA is codified at 28 U.S.C. § 2680(a).
[3] Because Transocean's affirmative defense/counterclaim for recoupment relies on implied consent rather than a statutory waiver as the basis for the waiver of sovereign immunity, the Court need not reach the issue of whether the government's actions at issue here all fall within the "discretionary function" exception to the FTCA, or whether there are issues of fact such that the "discretionary function"  issue cannot be decided as a matter of law.

United States into the Limitation Act proceeding for the purpose of trying its relative fault **at the same time that the relative fault of all other parties is tried**.  As the Court is aware, Transocean filed a Limitation Act complaint.  In the Limitation Act case, Bundle Master Complaints were filed.  In response to the Master Complaints, Transocean and other defendants asserted cross-claims and third-party complaints, and Transocean also tendered the cross-claim/third-party-claim defendants to the Bundle Plaintiffs under Rule 14(c).  Transcoean's cross-claim, third-party claim and Rule 14(c) tender named the United States.

Transocean made clear in its pleading that it was cognizant of the sovereign immunity issue and that it was cross-claiming and tendering the United States into the Limitation Act proceeding solely for the purpose of obtaining an allocation of fault which could then be used for purposes recoupment -- not for purposes of obtaining affirmative monetary relief from the United States. Transocean's Rule 14(c) Third-Party Complaint **[Dkt. No. 1320]**, which tendered the United States and other parties to the Plaintiffs, specifically stated:

> "As to the United States of America, the Plaintiffs/Claimants are entitled to a Declaration regarding the relative fault of the United States of America.  By filing this Rule 14(c) Third-Party Complaint, the Third-Party Plaintiffs [i.e., Transocean] **do not seek a recovery of money damages against the United States of America**.  As the Court has indicated that all fault determinations will be made in the trial of this matter during the Spring, 2012, this Court announced timetable has necessitated this pleading, and it should not be interpreted as Third-Party Plaintiffs' failure to acknowledge the discretionary function and sovereign immunity rights of the United States.

In addition to the above recited allegations as to the United States of America, and to the extent necessary to preserve Third-Party Plaintiffs' rights, the Third-Party Plaintiffs have served notice of their affirmative defense in *United States of America v. BP Exploration & Production Inc., et al.,* 2:10-cv-04536 (E.D. La. 2010) (filed December 15, 2010), that the Incident of April 20, 2010 and the BP Oil Spill and any resulting damages therefrom may have been caused in part by the comparative fault and/or negligence of the United States of America.  As such, the Third-Party Plaintiffs are entitled to a credit, set-off and/or recoupment with respect to any monetary claim of the United States of America against the Third-Party Plaintiffs to the extent that the Third-Party Plaintiffs are held liable to any person or entity, either in that action, or in any other action, arising from the Incident of April 20, 2010 or the BP Oil Spill, for any amounts attributable to the comparable fault and/or negligence of the United States of America.  The Third-Party Plaintiffs seek only to reserve any right to apportionment of fault in any appropriate procedure, and to obtain contribution through a credit, set-off and recoupment based on such apportionment.

*Id.* at pp. 33-34 (emphasis added).

Given the broad case-management discretion that the Court has in a Limitation Act proceeding and in a complex MDL proceeding such as presented here, the Rule 14(c) tender is procedurally appropriate. Transocean has, in essence, tendered the United States to the Plaintiffs

under Rule 14(c) not for purposes of obtaining any monetary judgment in favor of Plaintiffs and against the United States, **but solely for the purpose of obtaining a declaration** as to the relative fault of the United States which declaration can then be used to support Transocean's affirmative defense/counterclaim of recoupment in the United States' lawsuit.   Where the purpose of seeking judicial review of government action is not to obtain a judgment for damages against the United States, but to seek a determination as to the lawfulness of the government's actions, sovereign immunity is not a bar.  5 U.S.C. § 702; *Bowen v. Mass.,* 487 U.S. 879 (1988) (under section 702, action for declaratory judgment and other equitable relief not barred by sovereign immunity).

There may well be other procedural techniques that would achieve the same goal.  For example, the Court could use Rule 42 to consolidate for trial all issues pertaining to the relative fault of the United States raised in affirmative defenses or counterclaims in the United States action with the February 27, 2012 "fault allocation" issues set for trial in the Limitation Act proceeding.  Such consolidation would essentially moot the issues raised in this motion, and would be a procedurally acceptable substitute for the Rule 14(c) tender.[4]

Finally, the United States argues that Transocean's pleadings are insufficient because they did not allege in detail in what manner the United States was at fault, and in what manner that fault contributed to the spill, the failure to cap the well or the damages caused by the spill. This argument is disingenuous.  This is not a case where the pleadings have left the United States in the dark as to the nature of the claims.  The United States itself, through the Oil Spill Commission established by President Obama, has published reports that have detailed how the

---

[4] Transocean has outlined factual issues that could be consolidated for trial pursuant to Rule 42 in its Brief in Response to the Court's Order re Requested Briefing on Trial Plan Issues.  **[Dkt No. 2665].**  The United States, in its response to the Court's order for briefing on trial plan issues, agrees that all fault issues from its lawsuit should be joined for trial with the fault trial in the Limitation Act proceeding, but ignores that the relative fault of the United States has been raised by all defendants as an affirmative defense/counterclaim in the United States' action.  **[Dkt. No. 2671],** at pp. 3-6.

fault of the BOEMRE (then the MMS) and the Coast Guard contributed to the loss of well control on April 20, 2010, the failure to control the well for almost three months thereafter, and the damages caused by the spill.[5]

The Commission identified two key areas in which the United States was at fault:

First, the MMS approved BP's last minute change in the temporary abandonment plan for the well and obtained MMS authorization to depart from MMS regulations that then allowed BP to set a "surface" plug 3,000 feet below the mudline (when the applicable MMS regulations required that the surface plug be no deeper than 1,000 feet below the mudline).[6]  This decision led to having to displace a great deal more drilling mud during temporary abandonment, thereby creating a "severe hydrostatic underbalance in the well" which "stressed the cement more than usual -- to an extent never before seen by many in the industry."[7]  MMS approved BP's request for an exception to the MMS surface-plug-depth regulatory requirement 90 minutes after the request was submitted by BP.  Even though MMS regulations provide that exceptions can only be granted if the proposed procedure provides a level of safety equal to or greater than the regulatory requirement, BP submitted no safety analysis supporting its request for an exception, and the MMS official conducted none.  The MMS official who approved the exception said he thought the deeper surface plug would facilitate setting a lockdown sleeve, but "admitted that he had no training or expertise in lockdown sleeve procedures or best practices."[8]

Second, the Commission found that the technique that ultimately was used to stop the flow of oil -- the capping stack -- could have been used much earlier, but had been shelved by both BP and the government because of well integrity concerns that proved later to be

---

[5] While Transocean agrees with many of the findings of the Presidential Commission, it has taken issue with some of its conclusions, including some issues where significant new evidence has come to light after the Presidential Commission issued its report.
[6] National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, Chief Counsel's Report, at 127-128 (2011) (hereinafter "Chief Counsel's Report").
[7] Chief Counsel's Report, at 135.
[8] Chief Counsel's Report, at 258-259.

unfounded.  Moreover, when the capping stack option was revisited after alternative well-control efforts had failed, the government was responsible for various delays in implementing the capping stack solution.[9]

Neither of these issues is new to these cases.  The displacement of an unusually large amount of drilling mud which was caused by the BP/MMS decision to allow the "surface" plug to be set 3,000 feet below the mudline is one of the specific allegations of negligence asserted in the Master Complaints.[10]  Discovery on the "capping stack" issues has included the United States.  In trial planning briefs filed over a month ago, the parties acknowledged, for example, that trial would consider post-April 20 well control, and that they were well on their way to identifying "key personnel" for purposes of discovery, "with the overwhelming majority being BP and U.S. Government employees."  PSC Trial Plan Memorandum, **[Dkt. No. 1951]**, at 15-16[11].  The United States told the Court in its trial planning memorandum that it was working on identifying witnesses and documents -- both those with pre-April 20, 2010 involvement in the Macondo well and those involved in sub-sea efforts to cap or contain the well.  **[Dkt. No. 1946]**, at 7-9.

In these circumstances, the notice pleading used by Transocean should be deemed sufficient.  If not, the Court should allow Transocean leave to amend to incorporate by reference the government's own conclusions as to the United States' fault.

---

[9] National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, *Stopping the Spill: The Five-Month Effort to Kill the Macondo Well,* Staff Working Paper No. 6, at 26-29 (2011).

[10] *E.g.,* B-1 Bundle Master Complaint, **[Dkt. No. 879]**, ¶ 329, at pp. 84-85.

[11] The PSC represented that the U.S. believes "there are only a half-dozen to a dozen material witnesses with personal knowledge of the source control efforts on behalf of the U.S."  **[Dkt. No. 1951],** at 16.

# ARGUMENT

I.     **SOVEREIGN IMMUNITY AND THE "DISCRETIONARY FUNCTION" DOCTRINE ARE NOT A BAR TO AN AFFIRMATIVE DEFENSE/COUNTERCLAIM FOR RECOUPMENT IN AN ACTION BROUGHT BY THE UNITED STATES**

The government's moving papers are largely devoted to a misdirected discussion of the discretionary function exception to the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity, and the similar discretionary function exception which has been read into the Suits in Admiralty Act.  That discussion is misdirected -- and the Court need not decide whether the government's actions at issue all fall within the "discretionary function" exception to the FTCA or the Suits in Admiralty Act -- because the sole purpose of Transocean's tendering the United States under 14(c) is to obtain an allocation of fault which can then be used for the affirmative defense/counterclaim for recoupment that Transocean has asserted in the lawsuit filed by the United States.  Transocean did not tender the United States to the plaintiffs so that plaintiffs could seek to obtain a monetary judgment against the United States.  Transocean did not cross-claim or bring a third-party claim against the United States to seek a monetary judgment in favor of Transocean and against the United States.  With respect to the United States, the cross-claim, third-party claim and Rule 14(c) tender were solely for the purpose of having the United States participate in the fault allocation trial.  Any fault the Court may allocate to the United States can then be used later in the recoupment affirmative defense/counterclaim which Transocean has asserted when the Government seeks an assessment of monetary liability on its OPA and CWA claims.

In *Frederick v. United States,* 386 F.2d 481, 488-89 (5th Cir. 1967), the Fifth Circuit held that, by filing suit, the federal government waives sovereign immunity for a claim in recoupment, notwithstanding the absence of an applicable statutory waiver.  The court explained:

> [W]hen the sovereign sues it waives immunity as to claims of the
> defendant which assert matters in recoupment -- arising out of the
> same transaction or occurrence which is the subject matter of the
> government's suit, and to the extent of defeating the government's
> claim but not to the extent to a judgment against the government
> which is affirmative in the sense of involving relief different in
> kind or nature to that sought by the government or in the sense of
> exceeding the amount of the government's claims; but the
> sovereign does not waive immunity as to claims which do not meet
> the "same transaction or occurrence test" nor to claims of a
> different form or nature than that sought by it as plaintiff nor to
> claims exceeding in amount that sought by it as plaintiff.

*Id.* at 488 (citations and footnotes omitted).  The *Frederick* court permitted a defendant sued by the Small Business Administration on a guaranty to counterclaim in recoupment for related fraud.  *Id.* at 489-90.[12]

The implied waiver of sovereign immunity applicable to a recoupment claim need not also fall within a statutory waiver of sovereign immunity.  The Fifth Circuit has made clear that sovereign immunity is not a bar to a claim within the scope of *Frederick* even if the claim would ordinarily be barred by the FTCA's "discretionary function" exception if asserted as a claim for damages rather than a defense/counterclaim for recoupment.  Statutory waiver of sovereign immunity, and the implied waiver as to recoupment that arises when the government files suit,

---

[12] *Frederick* was based on the Supreme Court's decision in *Bull v. United States*, 295 U.S. 247 (1935), where the Court held that sovereign immunity -- there represented by the government's limited statutory consent to be sued for a wrongly collected tax only within a particular timeframe -- could not bar an action for recoupment.  Although the taxpayer in *Bull* would have been barred from independently suing the government to recover the wrongly paid estate tax, the Court held it could set up the same payment as a defense where the government sought to recover an inconsistent tax based on the same transaction.

are independent of one another.  "The United States can consent to be sued '**either** by specific statutory consent **or** by instituting a suit as to which a defendant may plead matters in recoupment.'"  *First Nat'l Bank v. Genina Marine Servs., Inc.,* 136 F.3d 391, 394 (5th Cir. 1998), *quoting EEOC v. First Nat'l Bank,* 614 F.2d 1004, 1007 (5th Cir. 1980) (emphasis added).[13]  As the Court of Appeals explained:

> Although the government provides extensive briefing as to why Genina cannot bring suit against it under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, or the Tucker Act, 28 U.S.C. § 1491, Genina specifically disclaims any attempt to use these avenues for bringing suit against the government and instead relies exclusively on *Frederick.* A recoupment claim within the scope of *Frederick* need not also fall within another statutory waiver of sovereign immunity. *See Frederick,* 386 F.2d at 488 (noting that waiver of sovereign immunity can be by statute or by institution of suit); *United States v. Johnson,* 853 F.2d 619, 621 (8th Cir.1988) (holding that when the government waives sovereign immunity as to matters in recoupment, "it does so even as to those claims that ordinarily are barred by the FTCA").

136 F.3d at 395 n.5.  *See, e.g., Cox v. Kurt's Marine Diesel of Tampa, Inc.,* 785 F.2d 935 (11th Cir. 1986) (allowing a counterclaim for recoupment based on misrepresentation, even though the FTCA expressly excepts from its waiver of sovereign immunity claims against the United States arising out of misrepresentation); *Berrey v. Asarco Inc.,* 439 F.3d 636, 644-45 (10th Cir. 2006) ("Waiver under the doctrine of recoupment, however, does not require prior waiver by the

---

[13] The United States has dismissively referred to *Frederick* as "an outdated 5th Circuit decision that a counterclaim in recoupment falls within an implied waiver of sovereign immunity."  *United States v. Sierra Pac.Indus.,* No. 2:09-cv-02445-JAM-EFB (E.D. Cal. Mar. 15, 2010) (Memorandum of Points and Authorities in Support of the United States of America's Motion to Dismiss Spi's Counterclaims and to Strike Certain of its Affirmative Defenses), at n.4, available at 2010 WL 2205924.  *Frederick* is not outdated, and is clearly still the law of this Circuit.  Moreover, it continues to be frequently cited and followed outside the 5th Circuit.  *See, e.g.,United States v. Gordon,* 2010 WL 2643531, at * 2 (M.D. Fla. June 30, 2010); *Wyandotte Nation v. City of Kansas City, Kansas,* 200 F. Supp. 2d 1279, 1285 (D. Kan. 2002).

sovereign or an independent congressional abrogation of immunity.  If the defendant's

counterclaims are already permitted under an independent congressional abrogation of immunity,

there would be no need for implied waiver under the recoupment doctrine."); *Bateman v. FDIC,*

112 F.Supp. 2d 89, 94 (D. Mass. 2000) ("It is true that when the United States sues it waives

immunity as to compulsory counterclaims for recoupment even if those claims would ordinarily

be barred by the FTCA."); *In re S. Scrap Metal Material Co., LLC,* 713 F. Supp. 2d 568, 582-83

(ED La. 2010) (Feldman, J.) ("The United States cannot be sued, however, unless it specifically

consents to be sued, **either** by statutory consent, **or** by instituting a suit to which a defendant

may plead matters in recoupment.") (emphasis added); *In re Am. Export Lines, Inc.* 568 F. Supp.

956, 961 (S.D.N.Y. 1983) ("However, counterclaims against the United States in the nature of

recoupment do not require a statutory waiver of sovereign immunity.").[14]

The affirmative defense/counterclaim for contribution[15] based on the government's

relative fault which Transocean has asserted in the government's action clearly meets the

requirements for a recoupment claim outlined by the Fifth Circuit -- that is, it asserts a claim

arising out of the same transaction or occurrence which is the subject of the government's suit,

and seeks relief only to the extent of diminishing or defeating the government's recovery.

---

[14] *See also United States  v. City of New Orleans,* 2003 WL 22208578, at *4 (E.D. La. Sept 19, 2003) (Livaudais, J)
(as court decides that CERCLA provides waiver of sovereign immunity, court does not decide City of New Orleans'
argument that "no waiver of sovereign immunity is required for a compulsory counterclaim seeking only
recoupment or set-off against the government when the government has sued the counterclaimant in the first place
…."). *But see FDIC v. Carter,* 701 F. Supp. 730, 736-737 (C.D. Cal. 1987) (holding that discretionary function
exception should apply to compulsory counterclaims for recoupment in certain actions brought by FDIC, but that,
with respect to "proprietary functions, the FDIC is liable to the directors and officers of a bank for its own
negligence.  This negligence can be the basis of either an affirmative defense or a compulsory counterclaim for
recoupment.").  *Carter's* holding that the FTCA's substantive provisions should be applied in certain recoupment
contexts is an anomaly.  *See FDIC v. Bierman,* 2 F.3d 1424, 1440 n. 18 (7th Cir. 1993) (noting that *Carter's*
application of the FTCA's substantive provisions in a recoupment context "has never garnered a following.").
[15] Transocean asserted the defense as an affirmative defense, but preserved the right to have it characterized as a
counterclaim, because recoupment claims -- which can only reduce the plaintiffs' recovery -- can fairly be
characterized either way.  *Cf.* 5 Wright & Miller, Federal Practice & Procedure § 1275 (2d ed. 2009) ("[I]t is not
clear whether set-offs and recoupment should be viewed as defenses or counterclaims …."). *Cf.*  FRCP Rule 8(c)(2)
("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if
justice requires, treat the pleading as though it were correctly designated …."); *Reiter v. Cooper,* 507 U.S. 258, 263
(1993) ("[I]t makes no difference that petitioners may have mistakenly designated their counterclaims as defenses
….").

*EEOC v. First Nat'l Bank of Jackson,* 614 F.2d 1004, 1007-1008 (5th Cir. 1980), *cert. denied,* 450 U.S. 917 (1981).   As the Court is aware, OPA and maritime law allow for contribution based on relative fault.[16]  If Transocean is held liable for any of the Bundle Plaintiffs' damages, and if the damages were caused in part by the relative fault of the United States, then Transocean is entitled to contribution from the government.  Transocean should be entitled to seek recoupment for such amounts to reduce or offset any damages the government seeks to recover from Transocean under its Clean Water Act and OPA claims.  The Bundle Plaintiffs allege that BP, Transocean and other parties are all  partly responsible for the blowout of the well and the resulting spill.  Transocean contends that the United States' negligence is also partly responsible for the same blowout and the same spill.[17]   It is difficult to imagine claims and counterclaims more logically intertwined.

It is also hard to imagine a stronger case for allowing a recoupment defense/counterclaim. The government is seeking billions in penalties under the CWA and is preserving the right to seek billions in response costs and natural resource damages under OPA.  Simple fairness dictates that the government not be allowed to hold parties 100% liable for harms if the evidence establishes that the government's negligence or wrongdoing itself contributed to causing those harms.

---

[16] 33 U.S.C. § 2709 ("A person may bring a civil action for contribution against any other who is liable or potentially liable under this Act or another law."); *Nat'l Shipping Co. of Saudi Arabia  v. Moran Mid-Atlantic Corp.,* 924 F. Supp. 1436, 1450 (E.D. Va. 1996), *aff'd,* 122 F.3d  1062 (4th Cir. 1997) (unpublished), *cert. denied.,* 523 U.S. 1021 (1998) (contribution under OPA governed by general maritime law); *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397 (1975) (adopting comparative fault principle over longstanding admiralty rule that liability was to be divided equally, regardless of fault).

[17] In *In re Southern Scrap Material Co., supra,* Judge Feldman concluded that the recoupment claim did not arise from the same transaction or occurrence because it was premised on alleged governmental negligence occurring in the 1950's and 1960's, while the government's complaint sought recovery for costs incurred in removing Southern Scrap's drydock from navigable waters at the end of 2005.  In contrast,  Transocean's recoupment claim concerns the same well, the same blowout incident and the same time frame as the government's claim.

II.     **RULE 14(C) IS AN APPROPRIATE PROCEDURE TO OBTAIN AN ALLOCATION OF FAULT AS TO THE UNITED STATES IN THE LIMITATION ACT PROCEEDING WHICH CAN THEN BE USED IN CONNECTION WITH THE AFFIRMATIVE DEFENSE/COUNTERCLAIM FOR RECOUPMENT IN THE ACTION BROUGHT BY THE UNITED STATES**

This massive litigation poses unique case management challenges.  There are many thousands of plaintiffs, alleging claims based on strict liability and based on fault, against many defendants.  The defendants in turns have filed cross-claims and third-party claims for contribution based on relative fault.  While the exact details are still evolving, the Court has wisely determined to use the Limitation Act proceeding to have a single phased "fault allocation" trial to allocate fault and determine degrees of fault.  The government's lawsuit, while part of the MDL, has not been filed as a complaint in the Limitation Act proceeding.  The question then arises as to how the fault issues related to the recoupment claim should be tried.  Should there be one fault trial with all parties involved, including the government?  Or should the government's fault be considered separately, in a later trial?  Transocean submits that common sense and efficient case management support the "one fault trial" approach.[18]  The question then becomes how can this be accomplished procedurally.

One approach is the Rule 14(c) tender of the United States in the Limitation Act proceeding.  Another possible approach is consolidation of fault allocation issues for trial under Rule 42.  The Court has recently directed the parties to address issues related to consolidation. **[Dkt. No. 2402].**

At the time its answers were due to the Master Complaints filed in the Limitation Act proceeding, Transocean tendered the United States to plaintiffs in order to preserve its right to an allocation of fault -- at the same time making it clear that the tender was not for the purpose of

---

[18] *See, e.g., Caytrans BBC, LLC v. Equip. Rental & Contractors Corp.,* 2009 WL 3248044, at *2 (S.D. Ala. Oct. 6, 2009) ("Simply stated, it would be far more sensible and efficient to litigate all issues of fault and liability arising from the August 23, 2008 incident about the M/V BBC ARAMIS in a single proceeding than to do so piecemeal in multiple actions.").

the Bundle Plaintiffs obtaining a monetary judgment from the United States, but solely for the purpose of obtaining a declaration of the relative fault of the United States that could be used for the recoupment defense/counterclaim in the United States' action.

Both Rule 14(c) and the doctrine of sovereign immunity allow this procedure.  Rule 14(c) provides in pertinent part that the defendant in a maritime claim "may, as a third-party plaintiff, bring in a third party defendant **who may be wholly or partly liable** -- either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, **or otherwise** on account of the same transaction, occurrence, or series of transactions or occurrences." FRCP 14(c)(emphasis added). On its face, the Rule applies whenever the third party defendant may be "liable."  It is not limited to cases in which the third party defendant is liable "for money damages" to the Plaintiff.  The term "liable" is broad, and its accepted definition includes various forms of being liable, including being "responsible or answerable in law" and being "bound or obliged in law or equity.".  *See, e.g., Great W. Cas. Co. v Marathon Oil Co.,* 2001 WL 699957, at *1 n.1  (N.D. Ill. June 21, 2001), *quoting Black's Law Dictionary,* 927 (7th ed, 1999); *Akerly v. New York Cent. R.R.  Co.,* 168 F.2d 812, 814 (6th Cir. 1948), *quoting Webster's Unabridged Dictionary* (2d ed. 1935).  Moreover, the Rule's use of the term "or otherwise" is broad enough to include Transocean's rights of recoupment in the lawsuit filed by the United States.

It is therefore appropriate for Transocean to use Rule 14(c) to tender the United States to the Bundle Plaintiffs for purposes of obtaining a declaration -- an equitable remedy -- as to the United States' relative fault.  Nor is such a claim fictional when viewed from the perspective of the Bundle Plaintiffs.  Through the recoupment that defendants seek,[19] any fault allocated to the government would reduce the amounts that the government could collect from defendants.  In

---

[19] As discussed earlier, although Transocean is the only defendant that has tendered the United States to the Bundle Plaintiffs via a third-party complaint and Rule 14(c) tender, all of the defendants in the United States' action have alleged affirmative defenses/counterclaims in that action based on the United States' relative fault.

the event total liabilities exceed the assets of any of the defendants -- a possibility that Bundle Plaintiffs themselves recognize as evidenced by their also attempting to go after the ultimate parent corporations of the various defendants -- Bundle Plaintiffs have a real interest in reducing the amounts the government can recover.

Moreover, including the United States in the allocation of fault to be made in the Limitation Act proceeding's February 2012 trial -- rather than requiring another allocation of fault trial limited to the recoupment claims asserted in the United States' action -- clearly serves the fundamental purpose of Rule 14 which is "to avoid circuity of actions and to obtain consistent results." *Am. Fid. & Cas. Co. v. Greyhound Corp.,* 232 F.2d 89, 92 (5th Cir. 1956). "Rule 14 … is intended to liberalize and simplify federal procedure. … Its purpose is to reduce litigation by having one lawsuit do the work of two." *Falls Indus., Inc. v. Consol. Chem. Indus., Inc.,* 258 F.2d 277, 283 (5th Cir. 1958).

Nor does tendering the United States for purposes of obtaining a declaration as to its relative fault violate sovereign immunity.  Under the recoupment doctrine of *Frederick, supra,* the United States is deemed to have impliedly consented to having its fault determined for purposes of recoupment.  No statutory waiver of sovereign immunity is necessary.  Even if one were necessary, it may be found in the Administrative Procedure Act, 5 U.S.C. § 702, which provides in pertinent part:

> "A person suffering legal wrong because of agency action, or
> adversely affected or aggrieved by agency action within the
> meaning of a relevant statute, is entitled to judicial review thereof.
> An action in a court of the United States **seeking relief other than**
> **money damages** and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official capacity or

under color of legal authority shall not be dismissed nor relief

therein be denied on the ground that it is against the United States

…." (emphasis added).[20]

The purpose of this statutory language "was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity." *Bowen v. Mass., supra,* 487 U.S. at 891-92,  When a complaint arising from agency action seeks declaratory relief as opposed to "money damages," it comes within the plain language of the statute and is not barred by sovereign immunity.  *Id.* at 893.[21]  Transocean's Rule 14(c) tender satisfies this test. The pleading tendering the United States could not have been more clear:

> As to the United States of America, the Plaintiffs/Claimants are
>
> entitled to a Declaration regarding the relative fault of the United
>
> States of America.  By filing this Rule 14(c) Third-Party
>
> Complaint, the Third-Party Plaintiffs [i.e., Transocean] **do not**
>
> **seek a recovery of money damages against the United States of**
>
> **America**.  **[Dkt. No. 1320],** p. 33 (emphasis added).[22]

---

[20] With exceptions not applicable here, the APA defines "agency" to include "each authority of the Government of the United States."  5 U.S.C. §701(b)(1).

[21] *See, e.g., Garcia & Sons Dev., LLC v. United States,* 2003 WL 25944551, at *3 (S.D. Miss. Mar. 3, 2003) ("The Administrative Procedure Act … contains a waiver of sovereign immunity, however; it does not apply to cases in which 'statutes preclude judicial review.'").  In *East Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC,* 2007 WL 2489832, at *4 (E.D. La. Aug. 30, 2007), this court held that the Declaratory Judgment Act, 28 U.S.C. § 2201, "provides a remedy, not a waiver of sovereign immunity nor jurisdiction in the absence of an independent basis for subject matter jurisdiction."  The Court's opinion does not discuss jurisdiction or waiver of sovereign immunity under the APA.

[22] The APA also provides further support that the "discretionary function" exception to the FTCA does not mean that discretionary decisions and actions of government agents are immune from judicial review.  A basic principal of administrative law, codified in the APA, is that actions committed to agency discretion may nevertheless be challenged in court and held unlawful where they are arbitrary or constitute an abuse of discretion.  5 U.S.C. § 706(2)(A).  *See, e.g., Jupiter Energy Corp. v. F.E.R.C.,* 407 F.3d 346 (5th Cir. 2005).

### III.   NOTICE PLEADING AS TO THE FAULT OF THE UNITED STATES IS SUFFICIENT WHERE, AS HERE, THE UNITED STATES HAS AMPLE ACTUAL NOTICE OF THE NATURE OF THE CLAIM

Transocean acknowledges that its pleading did not provide details as to the alleged fault of the United States.  Transocean relied on notice pleading and a general allegation of "relative fault" and "comparative fault" -- as a matter of courtesy and comity, and to avoid any suggestion that it was seeking headlines when it named the United States.

Not willing to rest its motion to dismiss on the sovereign immunity ground, the government now asserts that it does not have adequate notice of the basis of the relative fault claim.  As outlined earlier in the Memorandum, however, the United States is well aware from its own investigations of the factual basis for a claim that its fault played a role in causing the blowout of the well and the resulting spill and in delaying efforts to close in the well.

The Supreme Court's recent pleading standards have not abandoned notice pleading, but have emphasized that a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly,* 550 U.S. 544, 570 (2007).  "Asking for plausible grounds ….does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" sufficient to prove a claim.  *Id.* at 556.  The plausibility analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,*--- U.S. ---, 129 S.Ct. 1937, 1950 (2009).

Here, that judicial experience and common sense should take into account that Transocean's third-party complaint and Rule 14(c) tender were filed months after discovery was underway, and months after extensive government investigations that had themselves outlined the ways in which the United States contributed to causing the blowout and played a role in delaying efforts to control the well.  In these circumstances, the assertions by all defendants that

they are entitled to an offset or recoupment based on the alleged fault of the United States constitute a "plausible" claim. No more should be required at the pleading stage. If the Court concludes otherwise, Transocean respectfully requests that it be given leave to amend its third-party complaint and Rule 14(c) tender so that it can incorporate specific factual allegations of wrongdoing by the government, taken from the government's own investigations.

## CONCLUSION

For the foregoing reasons, Transocean respectfully requests that the United States' motion be denied.

Respectfully submitted,

By:   /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:   /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:   /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2011, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/ Kerry J.  Miller