## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | § § § § § § | **MDL No. 2179** |
| This document relates to: *State of Quintana Roo v. BP, PLC, et al.* (No. 2:10-cv-04241.) *State of Tamaulipas v. BP, PLC, et al.,* (No. 2:10-cv-04240); *State of Veracruz v. BP, PLC, et al.* (No. 2:10-cv-04239) | § § § § § § | **SECTION:  J** <br><br> **JUDGE BARBIER** <br><br> **MAG. JUDGE SHUSHAN** |

## HALLIBURTON ENERGY SERVICES, INC.'S,
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
## FIRST AMENDED COMPLAINTS

Defendant Halliburton Energy Services, Inc. ("HESI") submits this Reply in Support of

Its Motion to Dismiss Plaintiffs' First Amended Complaints[1] and respectfully shows the Court as

follows:

---

[1] Plaintiffs previously sought leave to amend their First Amended Complaints.  *See* Dkt No. 2150.  The Court denied Plaintiffs' request.  Dk. No. 2403.  Therefore, Plaintiffs' live pleadings are their First Amended Complaints.  *See* Exhibits A-1, A-2, and A-3.

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL BACKGROUND.........................................................................4

III.   ARGUMENT ........................................................................................................5

    A.   Regardless of the Jurisdictional Bases Invoked, State Law is Inapplicable to
       Plaintiffs' Claims...........................................................................................5

    B.   The Court Should Make Timely Jurisdictional and Choice of Law
       Determinations...............................................................................................7

    C.   OPA is Plaintiffs' Exclusive Remedy for the Damages Alleged. ...........................9

       1.   OPA displaces Plaintiffs' maritime law claims.............................................9

       2.   Because OPA provides the sole remedy for the compensatory
            damages alleged, Plaintiffs cannot, as a matter of law, recover
            punitive damages. ...................................................................................11

    D.   Even If Plaintiffs' General Maritime Claims Were Not Displaced By OPA, the
       Economic Loss Rule Still Bars Plaintiffs' Recovery. .............................................12

       1.   Plaintiffs' attempt to limit the economic loss rule contradicts clear
            precedent.................................................................................................12

       2.   Plaintiffs do not allege the requisite physical harm to a proprietary
            interest....................................................................................................13

    E.   Plaintiffs' Failure To Comply With OPA's Mandatory Pre-Suit Presentment
       Requirement Warrants Dismissal of Their Claims. ...............................................16

       1.   The weight of authority demonstrates that non-compliance with
            OPA's presentment requirements is a jurisdictional defect requiring
            dismissal.................................................................................................16

       2.   OPA § 2717(f)(2) Does not Relieve Plaintiffs of their Obligation to
            Comply with OPA's Pre-suit Presentment Requirements........................17

    F.   The Court Should Dismiss Plaintiffs' OPA Claims Because HESI Is Not a
       "Responsible Party" Under the Plain Language Of OPA. ....................................19

    G.   Plaintiffs Do Not Allege Compliance With 33 U.S.C. § 2707(a)........................21

    H.   To the Extent They Seek Recovery For Future Injuries, Plaintiffs' Claims
       Are Not Ripe and/or Plaintiffs Lack Standing.....................................................22

    I.   Plaintiffs Fail to Satisfy the *Twombly/Iqbal* Pleading Standard. ..........................23

IV.    CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

CASES

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ................................................................................ 4, 23-24

Bartholomew v. CNG Producing Co.,
832 F.2d 326 (5th Cir. 1987) .................................................................................6

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..................................................................................... 4, 23-24

Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,
51 F.3d 235 (11th Cir. 1995) ........................................................................ 16-17

Broussard v. John E. Graham & Sons,
798 F. Supp. 370 (M.D. La. 1992)..........................................................................6

Demette v. Falcon Drilling Co.,
280 F.3d 492, 499 (5th Cir. 2002) .........................................................................7

E. River S.S. Corp. v. Transamerica Delaval, Inc.,
476 U.S. 858 (1986).................................................................................................1

Gabarick v. Laurin Mar. (Am.) Inc.,
623 F. Supp. 2d 741 (E.D. La. 2009) ..............................................................Passim

Gabarick v. Laurin Mar. (America) Inc.,
2009 U.S. Dist. LEXIS 20974 (E.D. La.) .............................................................17

Gulf Offshore Co. v. Mobil Oil Corp.,
453 U.S. 473 (1981)................................................................................................7

Hemi Grp., LLC v. City of New York,
__ U.S. __, 130 S. Ct. 983 (2010).........................................................................23

Holmes v. Sec. Investor Prot. Corp.,
503 U.S. 258 (1982)...............................................................................................24

Isla Corp. v. Sundown Energy, LP,
2007 U.S. Dist LEXIS 31259 at *4 (E.D. La. 2007) ...........................................11

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,
513 U.S. 527 (1995)................................................................................................8

Johnson v. Colonial Pipeline Co.,
830 F. Supp. 309 (E.D. Va. 1993) ......................................................................17

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,*
  754 F.2d 1223 (5th Cir. 1985) ...................................................................8

*Leboeuf v. Texaco,*
  9 F. Supp. 2d 661 (E.D. La. 1998) ...........................................................16

*Lovelace v. Software Spectrum Inc.,*
  78 F.3d 1015 (5th Cir. 1996) ...................................................................22

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.,*
  944 F. Supp. 476 (E.D. La. 1996) ...........................................................16

*Norwood v. Raytheon Co.,*
  2006 U.S. Dist LEXIS 75159 (W.D. Tex.) ...............................................22

*In re Oil Spill,*
  747 F. Supp. 2d 704 (E.D. La. 2010) ...................................................6, 8

*Posavina Shipping Co. v. Alex C Corp.,*
  2010 U.S. Dist. LEXIS 116381 (D. Mass. Nov. 1, 2010) ......................12

*Robins Dry Dock & Repair Co. v. Flint,*
  275 U.S. 303 (1927)............................................................................3, 13

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
  234 F.3d 58, 66 (1st Cir. 2000) ..........................................................11-12

*In re Settoon Towing LLC,*
  2009 U.S. Dist. LEXIS 113534 (E.D. La. Dec. 4, 2009).........................10

*Sisson v. Ruby,*
  497 U.S. 358 (1990).....................................................................................9

*State of Louisiana v. M/V Testbank,*
  752 F.2d 1019 (5th Cir. 1985) ......................................................3, 12-13

*Tanguis v. M/V Westchester,*
  153 F. Supp. 2d 859 (E.D. La. 2001) ..................................................10-11

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,*
  87 F.3d 150 (5th Cir. 1996) .......................................................................5

*Texaco Exploration and Production, Inc. v. Amclyde Engineered Prods.,*
  448 F.3d 760 (5th Cir. 2006) ....................................................................8

*U.S. v. M/V Cosco Busan,*
  557 F. Supp. 1058 (N.D. Cal. 2008) ...................................................17-18

*Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,*
   895 F.2d 1043 (5th Cir. 1990) ........................................................................................8

**STATUTES**

33 U.S.C. 2702(d)(1)(A)..................................................................................................21

33 U.S.C. § 2701(32) ......................................................................................................19

33 U.S.C. § 2701(36) ......................................................................................................18

33 U.S.C. § 2702(a) ........................................................................................................19

33 U.S.C. §§ 2702(d)(1)(A) ...........................................................................................21

33 U.S.C. § 2707(a)(1)(B) ..............................................................................................21

33 U.S.C. § 2751 ...............................................................................................................9

33 U.S.C. § 2751(e) ..........................................................................................................9

43 U.S.C. § 1349(b)(1) ..................................................................................................5-8

**OTHER AUTHORITIES**

House Report No. 101-653 (1990)...................................................................................11

## I.    <u>INTRODUCTION</u>

On March 28, 2011, HESI filed its Motions to Dismiss Plaintiffs' First Amended Complaints, demonstrating that Plaintiffs' claims are not legally viable because: (1) Plaintiffs' claims, if any, arise exclusively under this Court's admiralty jurisdiction; (2) the adjacent-state law provision of the Outer Continental Shelf Lands Act ("OCSLA") does not require the application of state law; (3) the Oil Pollution Act provides the exclusive remedy for Plaintiffs' alleged damages; (4) to the extent Plaintiffs failed to present their claims through the OPA mandated claims process, this Court lacks subject matter jurisdiction; and (5) Plaintiffs' claims are not ripe and thus Plaintiffs lack standing. In their Opposition, Plaintiffs assert that numerous jurisdictional bases support their state law claims and that HESI's Motion only addresses the propriety of jurisdiction under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2720, *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356A, *et seq.* Plaintiffs conclude that those other jurisdictional allegations preserve their state law claims even if OPA and OCSLA do not.  Opposition at pp. 4-5.  Plaintiffs, however, fatally mischaracterize HESI's arguments and overlook the application of OCSLA jurisdiction, which supplies the applicable choice of law rules.  Those rules, along with Supreme Court precedent, mandate that maritime law, not state law, governs this case.  Further, Plaintiffs provide no rationale for deviating from the general rule that "with admiralty jurisdiction comes the application of substantive admiralty law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 865 (1986).  Thus, Plaintiffs' ostensible state law claims are properly construed as maritime claims.

Plaintiffs also maintain in their Opposition that it is premature for the Court to rule on certain issues, such as the applicability of OCSLA.  Opposition at pp. 26-31.  This argument too fails.  The Court should resolve choice of law questions at an early stage of this litigation to

properly frame and posture the issues, both procedurally and substantively, and to facilitate reasoned decision-making and establishment of an efficient trial plan.  Moreover, Plaintiffs' own allegations, and those they purport to incorporate by reference,[2] are sufficient to allow this Court to conduct the relevant choice of law analysis pursuant to OCSLA's provisions.  The issue is ripe for consideration and resolution.

Disingenuously, Plaintiffs also argue that OPA preserves state law claims.  This, however, misses the point and is not responsive to HESI's Motion.  HESI did not maintain in its Motion that OPA preempts Plaintiffs' state law claims.  Rather, Plaintiffs have no viable state law claims because maritime law, not state law, governs this case.  And, of course, OPA displaces maritime law claims.  Plaintiffs' unsupported suggestion that OPA does not preempt or displace[3] maritime law claims directly contradicts this Court's case law, as Plaintiffs implicitly concede.[4]  This case law establishes that OPA displaces Plaintiffs' maritime claims, which seek

---

[2] *See* Opposition at 1-2 ("In addition to the arguments and grounds relied upon in this document, Plaintiffs also rely on the analysis and authority cited in the Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted by the Plaintiffs' Steering Committee [the "Omnibus Opposition"] (Doc. No. 2110), filed April 24, 2011.  Accordingly, Plaintiffs herein incorporate by reference, *verbatim,* as though fully set forth herein the above-referenced [Omnibus Opposition]").  Importantly, Plaintiffs, however, do not indicate which document controls in the event of a conflict between the two pleadings.  To the extent that the Omnibus Opposition is incorporated into Plaintiffs' Opposition, HESI hereby incorporates the arguments in its Reply to the Omnibus Opposition, which has yet to be filed.

[3] The doctrine of "preemption" generally pertains to the effect of federal law on state law, where there are concerns associated with federalism and balancing states' rights.  However, the discussion herein regarding OPA's effect on federal common law (*i.e.*, maritime law) pertains to the effect of a federal statute on a body of federal law, not state law.  In such instances, the federal statute more accurately "displaces" the federal common law, and there are no corresponding federalism issues.  Nevertheless, in discussing OPA's effect on federal common law, certain courts have referred to this issue as one of "preemption" and other courts seem to use "preemption" and "displacement" interchangeably.  *See, e.g., Gabarick v. Laurin Mar. (Am.) Inc.,* 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (holding that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA").  To avoid confusion with supporting case law, HESI's discussion of OPA asserts that the statute "preempts or displaces" federal maritime law.

[4] *See* Opposition at p. 21 n. 3 (citing cases, including one from this Court, that demonstrate that OPA preempts or displaces maritime law claims but suggesting that "[i]n any event, these cases do not appear

compensation for damages recoverable under OPA.  Thus, OPA provides the sole remedy for the damages Plaintiffs allege.

And under that sole remedy, although Plaintiffs may be able to recover economic damages under OPA, the economic loss rule established in *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303 (1927) and followed by the Fifth Circuit in *State of Louisiana v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985) precludes recovery of such damages under maritime law.  Moreover, Plaintiffs' allegations fail to satisfy the rule.  Therefore, even if Plaintiffs' maritime law claims are not found to be displaced or preempted by OPA, their claims must be dismissed to the extent they allege economic damages absent physical harm to a proprietary interest.

Plaintiffs next argue in their Opposition that a failure to comply with OPA's presentment requirement is not jurisdictional; an argument previously dismissed by several courts, including this one.  In any event, even the authorities cited by Plaintiffs instruct that Plaintiffs' OPA claims, for which they have not alleged compliance with OPA's pre-suit presentment requirements, are subject to dismissal regardless of whether those requirements are deemed "jurisdictional" or "mandatory conditions precedent."  Either way, dismissal follows.

Furthermore, in arguing that HESI can be liable under OPA, Plaintiffs disregard the plain language of the statute.  OPA provides liability only against a "responsible party" as defined in the statute.  And Plaintiffs' belated attempts to allege compliance with OPA's pre-conditions for recovery by foreign claimants fail since Plaintiffs cannot cure a defect in their Complaints by making allegations in response to a motion to dismiss.  Moreover, the numerous treaties Plaintiffs cite do not establish that their recovery of damages and/or removal costs is authorized.

---

to be based on a full reading of the legislative history or all of the statutory provisions in OPA such as § 2715").

Finally, the bulk of Plaintiffs' claims are premised on speculative, future developments regarding the alleged spread of oil to their coastal properties. Such claims should dismissed because Plaintiffs lack standing to bring them. Moreover, Plaintiffs' assertions of claims against HESI are so vague and conclusory that they do not "state a claim to relief that is plausible on its face[,] as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) because they do not suggest a plausible inference that any alleged act or omission of HESI proximately caused Plaintiffs' alleged economic damages. Thus, regardless of how temporal and geographically distant Plaintiffs' alleged damages are, dismissal is proper.

## II.   PROCEDURAL BACKGROUND

On September 15, 2010, the States of Quintana Roo, Tamaulipas and Veracruz (collectively, the "Mexican States" or "Plaintiffs"), of the Republic of Mexico, filed their initial Complaints in the United States District Court for the Western District of Texas. The Mexican States filed their First Amended Complaints (the "Complaints")[5] on September 16, and on November 8, 2010, these cases were transferred to MDL 2179. *See* Exhibit A-1, A-2, and A-3.

HESI moved to dismiss the Complaints on March 28, 2011 (Dkt. Nos. 1781, 1782, 1783), and filed an accompanying consolidated Memorandum in Support of these Motions to Dismiss ("HESI's Motion") (Dkt. No. 1784). On April 26, 2011, the Mexican States filed their "Consolidated Memorandum in Response and Opposition" (the "Opposition") (Dkt. No. 2139) and a Motion for Leave to Amend the Complaints (Dkt. No. 2150). In their Opposition, Plaintiffs asserted that "many, if not all, of HESI's challenges to the allegations herein will be mooted by such Second Amended Complaint." Opposition at p. 2. However, the Court denied

---

[5] The three Complaints are substantially identical. Therefore, a citation to a paragraph in the Complaints is a citation to each of the Complaints, unless otherwise noted.

Plaintiffs' Motion for Leave to Amend on May 18, 2011, (Dkt. No. 2403), and the fatal defects remain.

## III.    ARGUMENT

### A.    Regardless of the Jurisdictional Bases Invoked, State Law is Inapplicable to Plaintiffs' Claims.[6]

In their Complaints, Plaintiffs allege, pursuant to OCSLA, that federal question jurisdiction exists for their claims.  *See* Compl. ¶ 28.  However, in their Opposition, Plaintiffs maintain that, regardless of this Court's ruling on the applicability of OCSLA and OPA, their state law claims survive because they have alleged other jurisdictional bases for those claims, including diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(4).  *See* Opposition at pp. 5-6; Compl. ¶ 27.

As a threshold matter, it is undisputed that OCSLA jurisdiction applies in this case. OCSLA contains a very broad grant of federal jurisdiction, *see Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996),[7] over "cases and controversies arising out of, or in connection with … any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf[.]"  43 U.S.C. § 1349(b)(1).  Plaintiffs' own allegations confirm the existence

---

[6] Plaintiffs suggest that HESI has "judicially abandoned" its contention that OPA is Plaintiffs' sole remedy by asserting state law cross claims against certain co-defendants.  In fact, HESI has consistently maintained that maritime law governs this case.  However, it noted the following in support of its cross-claims:  "Presently, there are several motions pending before this Court seeking clarification regarding the applicable law in this matter.  HESI alleges its claims herein, without reference to any specific jurisdiction's law.  HESI reserves its right to amend its pleadings as necessary after this Court determines the applicable law.  In the meantime, each claim and cause of action should be read as if arising under maritime and/or the law of any state under which Claimants/Plaintiffs have made a claim."  Dkt. No. 2086 at p. 12 n. 2.  It is not inconsistent for HESI to assert non-OPA claims for HESI's damages that are not covered by the statute.

[7] Plaintiffs contend that HESI relied on this case "for its proposition that only OPA – not state claims – is applicable herein."  Opposition p. 35.  This is a misrepresentation of HESI's argument.  HESI cited *Tenn. Gas* for the proposition that when maritime law applies of its own force, OCSLA's adjacent state law provision does not apply.

of OCSLA jurisdiction pursuant to Section 1349.  *See* Compl. ¶ 3 ("The Deepwater Horizon oil rig had been drilling for oil" when it "exploded and caught fire[,]" leading to the oil spill that allegedly caused Plaintiffs' damages); Compl. ¶ 16 ("BP[8] held and/or holds the lease granted by the U.S. Minerals Management Services ("MMS") allowing BP to drill for oil and perform oil-production related operations at the site of the explosion and oil spill"); Compl. ¶ 34 ("On April 20, 2010, the Deepwater Horizon was in the final phases of converting the oil well from an exploratory well into a production well").  Further, Plaintiffs concede that "Title 43 U.S.C. Section 1331(1) extends exclusive Federal jurisdiction to the outer continental shelf."  Compl. ¶ 28.  Finally, in another case arising from the Incident, this Court acknowledged that it had original jurisdiction over similar claims pursuant to 43 U.S.C. § 1349(b)(1).  *See In re Oil Spill,* 747 F. Supp. 2d 704, 709 (E.D. La. 2010) (Barbier, J.).

Because OCSLA jurisdiction indisputably applies in this case, Plaintiffs' argument that other alleged jurisdictional bases would permit the application of state law must be rejected.  *See Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 328 (5th Cir. 1987) (concluding that even where both parties to the lawsuit asserted diversity jurisdiction, "[s]ince the accident occurred on an offshore platform located on the outer Continental Shelf, the appropriate basis for jurisdiction for this claim is the OCSLA; therefore the applicable law in the instant case is defined by the OCSLA"); *see also Broussard v. John E. Graham & Sons,* 798 F. Supp. 370, 375 (M.D. La. 1992) (where federal question jurisdiction exists pursuant to OCSLA, the Court "need not consider whether [it] also has jurisdiction based on diversity of citizenship").

---

[8] Plaintiffs identified defendants BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration and Production, Inc., and BP, PLC collectively as "BP."  *See* Compl. ¶15.

Indeed, where OCSLA jurisdiction applies, its mandatory choice of law rules likewise apply.  *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 482 n. 8 (1981) (noting that "OCSLA does supersede the normal choice of law rules that the forum would apply").  Thus, as the Fifth Circuit has made clear, the *only* avenue for state law to apply to Plaintiffs' claims, which arose on the outer continental shelf ("OCS"),[9] is pursuant to OCSLA's choice of law rules, including the "adjacent state law" provision.  *See Demette v. Falcon Drilling Co.,* 280 F.3d 492, 499 (5th Cir. 2002) ("Since the incident occurred on the [OCS] beyond the territorial waters of Louisiana, the only way state law could apply was by incorporation into federal law under OCSLA"), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 782-83 (5th Cir. 2009).  Accordingly, Plaintiffs cannot, as they contend, "maintain their state claims based on other jurisdictional bases."  Opposition at p. 5.  The application of OCSLA precludes Plaintiffs" facile invocation of other ostensible jurisdictional bases.

**B.      The Court Should Make Timely Jurisdictional and Choice of Law Determinations.**

Plaintiffs also contend that it is premature to make choice of law and jurisdictional determinations in this case.  Opposition at pp. 26-31.  Plaintiffs suggest that this Court delay making these determinations until more discovery has been conducted.  *See* Opposition at p. 27.  This argument, however, likewise fails because the Court must resolve jurisdictional issues at an early stage, and the jurisdiction and choice of law determinations do not require an in-depth analysis of all of the facts of the case or lengthy discover.  Rather, the analysis first requires the

---

[9] *See* Compl. ¶ 3 (alleging that the "Deepwater Horizon oil rig had been drilling for oil in the Gulf of Mexico *via* a well located on the Macondo Prospect Mississippi Canyon 252 approximately 100 miles off the coast of the United States").  OCSLA, by reference to the Submerged Lands Act, 43 U.S.C. § 1301, defines the OCS generally as the submerged lands lying seaward beyond the three-mile belt of territory ceded to the states.  This definition and Plaintiffs' allegation that the Macondo prospect was located 100 miles off the coast of the United States establish that the Incident occurred on the OCS.

Court to determine whether OCSLA jurisdiction exists under 43 U.S.C. § 1349(b)(1).  Courts routinely make this determination at early stages in litigation proceedings and on the basis of allegations in pleadings.  *See Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223 (5th Cir. 1985) (deciding on appeal of the district court's ruling on a motion to dismiss for lack of subject matter jurisdiction that OCSLA jurisdiction and the adjacent state law provision applied); *see also Texaco Exploration and Production, Inc. v. Amclyde Engineered Prods.,* 448 F.3d 760, 769 (5th Cir. 2006) (finding OCSLA jurisdiction pursuant to 43 U.S.C. § 1349(b)(1) on the basis that "[t]he parties' own characterization of the events surrounding the [incident] reveals that [the plaintiff's] cause arises out of and in connection with the development of the Outer Continental Shelf").  Indeed, this Court has already made such a finding in a related case arising out of the Incident.  *See In re Oil Spill,* 747 F. Supp. 2d at 709.  Plaintiffs' allegations similarly demonstrate that OCSLA jurisdiction attaches pursuant to 43 U.S.C. § 1349(b)(1).  *See supra* III.A.

Next, OCSLA's choice of law rules call for a determination of whether "[f]ederal maritime law . . . appl[ies] of its own force."  *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).  As HESI previously demonstrated, admiralty jurisdiction applies on its own force on the basis of Plaintiffs' own allegations.  *See* HESI's Motion at IV.A.2. Moreover, making the determination whether maritime law applies at this point in the proceedings is entirely consistent with the Supreme Court's guidance regarding how courts should inquire into the existence of admiralty jurisdiction.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* 513 U.S. 527, 538 (1995) (noting that the inquiry focuses "*not on the specific facts* at hand but on . . . the general features of the incident").  Focusing on the general characteristics of the case is sensible because jurisdictional inquiries normally precede factual inquiries such as causation.

Here, Plaintiffs ask the Court to delay making jurisdictional and choice of law rulings until it has sorted out "unresolved facts" relevant to this case.  This request runs counter to clear guidance from the Supreme Court.  *See Sisson v. Ruby,* 497 U.S. 358, 364-65 (1990) ("Were courts required to focus more particularly on the causes of the harm, they would have to decide to some extent the merits of the causation issue to answer <u>the legally and analytically antecedent jurisdictional question</u>") (emphasis added).  As demonstrated in HESI's Motion, the general character of the Incident, as alleged in the Complaints, establishes the existence of admiralty jurisdiction and, thus, the application of substantive maritime law, not state law.  *See* HESI's Motion at IV.A.2.

**C.     OPA is Plaintiffs' Exclusive Remedy for the Damages Alleged.**

> **1.     *OPA displaces Plaintiffs' maritime law claims.***

Because Plaintiffs' claims are governed by maritime law, they are displaced by OPA,[10] which provides their exclusive remedy.  Citing OPA's "Savings Provision," 33 U.S.C. § 2751, Plaintiffs argue that OPA does not preempt or displace their claims.  Opposition at p. 20.  However, Plaintiffs ignore the express language in the first phrase of this statutory provision.

Section 2751 provides:

> *Except as otherwise provided in this Act,* this Act does not affect –
> (1) admiralty and maritime law; or (2) the jurisdiction of the
> district courts of the United States with respect to civil actions
> under admiralty and maritime jurisdiction, saving to suitors all
> other remedies to which they are otherwise entitled.

33 U.S.C. § 2751(e) (emphasis added).  Plaintiffs read the "Savings Provision" as if the first phrase does not exist.

---

[10] Plaintiffs apparently misunderstand HESI's argument to mean that OPA directly displaces their state law claims and, consequently, argue at length against a position HESI did not take in its Motion.  *See* Opposition at pp. 18-26, 31-35.

In overlooking this clause, Plaintiffs fall into the trap this Court identified in *Gabarick v. Laurin Maritime (America), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009) (Lemelle, J.).   In *Gabarick*, this Court held that "all claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA."   *Id*. at 750-51.   The *Gabarick* court specifically noted that "[c]laimants[] ignore[] the first part of *section (e)* . . . [and] cloud the issue at bar by arguing that OPA does not preempt general maritime law claims rather than focusing on preemption solely of the damages specifically covered by OPA."   *Id.* at 746.

Similarly, Plaintiffs cloud the issues here.   As this Court explained in *Gabarick*, consistent with the text of the savings clause, OPA does not preempt all general maritime claims. Rather, it preempts only those maritime claims seeking damages of the type recoverable under OPA.   *Id.* at 746-47.[11]  Thus, the savings provision, properly interpreted, provides that OPA does not affect admiralty and maritime law, except with respect to claims for damages of the types recoverable under OPA.   *Id.* at 746.

Consistent with *Gabarick*, other decisions from this Court likewise interpret OPA's preemptive effect on maritime law.   For instance, in *In re Settoon Towing LLC,* this Court dismissed the general maritime claims brought by the United States because OPA exclusively provided relief for the United States' damages.   2009 U.S. Dist. LEXIS 113534 at **9-10 (E.D. La. Dec. 4, 2009).   In *Tanguis v. M/V Westchester,* this Court held that OPA claims are removable and noted that "OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills" and that "[t]his new

---

[11] Since OPA does not cover bodily injury claims or collision damage, or Exoneration/Limitation Petitions, for example, the savings provision operates to preserve such maritime claims, and OPA does not preempt them.  *Gabarick*, 623 F. Supp. at 745; *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (Clement, J.) (noting that "certain maritime remedies are preempted by OPA, while others survive").

scheme includes new remedies, which, in many respects, preempt traditional maritime remedies." 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (Clement, J.) (citing *National Shipping Co. of Saudi Arabia, v. Moran Mid-Atlantic Corp.,* 924 F. Supp. 1436 (E.D. Va. 1996)). Similarly, in *Isla Corp. v. Sundown Energy, LP,* this Court noted, albeit in *dicta,* that "OPA is the exclusive federal remedy" for oil spill liability. 2007 U.S. Dist LEXIS 31259 at *4 (E.D. La. 2007) (Lemelle, J.).

Plaintiffs do not, and indeed cannot, cite any case law contradicting *Gabarick* or other authorities holding that OPA displaces maritime law claims seeking OPA-type damages. Instead, Plaintiffs suggest that "these cases do not appear to be based on a full reading of the legislative history or all of the statutory provisions in OPA such as § 2715" without citing any support for that observation. Opposition at p. 22 n. 3. The text of *Gabarick* belies this suggestion, specifically evidencing the Court's review of House Report No. 101-653 (1990), reprinted in 1990 U.S.C.A.N. 779. *Gabarick*, 623 F. Supp. at 747. The Court reviewed OPA's legislative history and the plain language of the statute, and nevertheless recognized that OPA displaces maritime law when damages recoverable under OPA are sought. *Gabarick*, 623 F. Supp. at 747. Accordingly, under prevailing jurisprudence, OPA supplies Plaintiffs' sole remedy for the damages alleged. *See* HESI's Motion at IV.A.4.

> **2.** ***Because OPA provides the sole remedy for the compensatory damages alleged, Plaintiffs cannot, as a matter of law, recover punitive damages.***

Plaintiffs' assertion[12] of punitive damages under OPA runs afoul of the holding of the only federal appellate court addressing the issue. Contrary to Plaintiffs' assertion that punitive damages are available, the United States First Circuit Court of Appeals in *S. Port Marine*, *LLC v.*

---

[12] Plaintiffs do not make a unified argument for the availability of punitive damages, but assert their availability in several instances in the Opposition. *See* Opposition at pp. 24-25, 32, 34.

*Gulf Oil Ltd. P'ship* acknowledged that OPA supplants all prior, existing federal law governing oil spill pollution and specifically held that Congress intended to prohibit the recovery of punitive damages under OPA.  234 F.3d 58, 66 (1st Cir. 2000).

Courts continue to follow *S. Port Marine's* holding that punitive damages are not available under OPA.  *See Posavina Shipping Co. v. Alex C Corp.,* 2010 U.S. Dist. LEXIS 116381 at *39 (D. Mass. Nov. 1, 2010) (concluding that "Congress intended the enactment of the OPA to supplant the existing general admiralty and maritime law, which allowed punitive damages under certain circumstances in the area of oil pollution").  As demonstrated in HESI's Motion, courts throughout the United States, including this Court, have recognized that Congress intended the enactment of OPA to supplant existing general admiralty and maritime law, which allowed punitive damages (albeit in certain, limited circumstances) in the area of oil pollution. Punitive damages are not recoverable under OPA, which is Plaintiffs' sole remedy, if any, for the compensatory damages they allege.  Therefore, punitive damages are not available to them.

**D.     Even If Plaintiffs' General Maritime Claims Were Not Displaced By OPA, the Economic Loss Rule Still Bars Plaintiffs' Recovery.**

*1.     Plaintiffs' attempt to limit the economic loss rule contradicts clear precedent.*

In their Opposition, Plaintiffs contend that HESI relies on "an overly broad application of the rule expressed in *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303 (1927)."  Opposition at p. 12.  To the contrary, HESI relies on a straight forward application of the holding; the Fifth Circuit has acknowledged that this case stands for "the prevailing rule [that] denied a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest."  *State of Louisiana v. M/V Testbank,* 752 F.2d 1019 (5th Cir. 1985) (*en banc*).  Stated otherwise, the well-established rule in *Robins Dry Dock* holds that "there [can] be no recovery for economic loss absent physical injury to a proprietary interest[.]"  *M/V*

*Testbank,* 752 F.2d at 1023.   Without "this pragmatic restriction on the doctrine of foreseeability", the doctrine "loses much of its ability to function as a rule of law."  *Id.* at 1021. Thus, the Fifth Circuit in *M/V Testbank* "decline[d] the invitation" "to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic losses in cases of unintentional maritime tort."  *Id.* at 1020.  This Court should, consistent with precedent, similarly decline Plaintiffs' invitation.

In their Complaints, Plaintiffs assert unintentional maritime tort claims, including negligence, gross negligence, negligence *per se*, private nuisance and public nuisance claims. *See* Compl. ¶¶ 49-83  However, in the event this Court finds that Plaintiffs' maritime law claims are not displaced by OPA, such claims would fail under the general maritime law economic loss rule to the extent that Plaintiffs seek recovery of economic damages absent an accompanying physical harm to a proprietary interest.  *See Robins Dry Dock,* 275 U.S. at 309; *M/V Testbank,* 752 F.2d at 1020.

### 2. *Plaintiffs do not allege the requisite physical harm to a proprietary interest.*

Plaintiffs insist that they satisfy the economic loss rule by alleging the requisite physical harm to a proprietary interest and cite to several paragraphs of their Complaints.  Opposition at p. 13.  The text of these and other portions of the Complaints, however, demonstrates that Plaintiffs' alleged damages are not accompanied by physical injury to a proprietary interest.  For example, in Paragraph 41 of the Complaints, Plaintiffs focus largely on economic damages and allege that they "ha[ve] been injured and damaged by the contaminating and destructive oil that has killed and tainted fish and other maritime life."  Compl. ¶ 41.  However, Plaintiffs do not suggest that they have a proprietary interest in these fish and wildlife.  Rather, they assert that "[f]ishing operations in the Gulf of Mexico and/or the Caribbean have been and will be injured and damaged by the contaminating and destructive oil that has killed and tainted fish and other

13

marine life, thus significantly reducing the quantities of fish and other marine life that can be harvested for safe human consumption."  *Id.*  Such allegations do not satisfy the economic loss rule because Plaintiffs do not allege a proprietary interest in the fish and other marine life allegedly harmed.[13]

Likewise, Paragraph 45 reads:  "Defendants knew or should have known that their negligent, grossly negligent, willful, wanton, and/or reckless conduct would result in the oil disaster, causing past, present, and future damages to all of the shorelines and waters adjacent to the Gulf of Mexico."  Compl. ¶ 45.  In addition to being conclusory and overbroad, Paragraph 45 contains no allegation of physical harm to a proprietary interest and does not satisfy the economic loss rule.

Further, in Paragraph 80 of the Complaints, Plaintiffs assert that:

Defendants' acts and omissions with respect to the release of oil, dispersants, and other materials and substances will cause and continue to cause a material, substantial and unreasonable interference with the use and enjoyment of the waters, property, estuaries, seabed, animals, plants, beaches, shorelines, coastlines, marshlands, and other natural and economic resources of the [Mexican States].  Furthermore, Defendants have caused damage and injury to same and to Plaintiff[s].

---

[13] Plaintiffs also refer the Court to paragraphs 3, 6, 8, 46, 55, 61, 72, 76, and 79 which purportedly allege "past and actual damage to Plaintiffs' proprietary and governmental interests."  *See* Opposition at p.13.  A review of these paragraphs reveals precisely the contrary.  *See e.g.*, Compl. ¶ 3 (detailing general facts regarding the DEEPWATER HORIZON); ¶ 8 (alleging that as a result of the Incident, "Plaintiff has suffered and will continue to suffer injuries, losses, and damages which well exceed the minimum jurisdictional amounts of this Court"); ¶ 46 (alleging that "the past, present, and future injuries to the State were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the dangers associated with their operations"); ¶ 55 (detailing Plaintiffs' alleged damages, including "expenses incurred in preparation for the oil's appearance on or in the waters, property, estuaries, seabed, …;" "expenses incurred in gathering and analyzing information necessary to monitor the oil spill;" "expenses incurred in providing periodic disseminations of information regarding the oil spill …;" "expenses related to meetings with the Mexican Environmental Agency …;" "expenses incurred in preparing for and conducting multiple exercises and mock clean-up activities;" and "expenses incurred in conducting clean up exercises and simulations."

Compl. ¶ 80.  Paragraph 80 plainly makes two general damages allegations, the first of which is nothing more than a speculative, *future* physical injury.  The second is a broad and conclusory allegation of "damage and injury," which is unsupported by and apparently unrelated to the initial allegation of future physical injury.

Similarly, in Paragraph 81 of the Complaints, Plaintiffs allege only economic damages in the form of "past, present and future losses, by way of example, loss of income; loss of revenue for the State[s]; expenditures of substantial amounts to combat, abate, and prepare for the oil spill; and other damages."  Compl. ¶ 81.

Paragraph 7 contains an allegation that the Mexican States "rel[y] on the natural resources found in the Gulf of Mexico and such natural resources are now damaged and further endangered by the wrongful acts of Defendants."  Compl. ¶ 7.  Nowhere in this paragraph do Plaintiffs aver that they have a proprietary interest in any natural resources that have been physically damaged.

Moreover, other statements in the Complaints demonstrate that Plaintiffs have not incurred any physical damages.  For example, Plaintiffs admit that the oil spill has not reached their borders.  *See* Compl. ¶ 39 ("After creating havoc and destruction along the shores of the United States, the oil that spewed from the well, according to scientific evidence and analysis, *will* migrate westward across the Gulf of Mexico, devastating, killing, and contaminating marine life as it sweeps toward the shores of [the Mexican States;] . . . the oil spill *will* cause and *will* continue to cause severe injury to the Plaintiff[s'] coastal waters[;]" and "will cause for decades thereafter severe damage") (emphasis added).  Tellingly, moreover, Plaintiffs' list of "damages incurred to date" includes only economic damages in the form of expenses incurred in preparation for the future arrival of oil.  *See* Compl. ¶ 55(A)-(J).  Accordingly, Plaintiffs'

15

argument that they have alleged the requisite physical damage to a proprietary interest fails and, to the extent that Plaintiffs have maritime claims for unintentional torts, their claims are precluded by the economic loss rule as applied in the Fifth Circuit.

**E.     Plaintiffs' Failure To Comply With OPA's Mandatory Pre-Suit Presentment Requirement Warrants Dismissal of Their Claims.**

> **1.      *The weight of authority demonstrates that non-compliance with OPA's presentment requirements is a jurisdictional defect requiring dismissal.***

HESI maintained in its Motion[14] that OPA's pre-suit presentment requirements created a mandatory condition precedent to recovery under OPA, *see Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235, 240 (11th Cir. 1995), and that Plaintiffs' failure to comply with OPA's pre-suit presentment requirements constituted a jurisdictional defect, citing *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) (citing *Boca Ciega* and concluding that "[t]he Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant"). In their Opposition, Plaintiffs argue that OPA's pre-suit presentment requirement is not jurisdictional.  Opposition at pp. 35-42.  Plaintiffs cite numerous cases interpreting statutes *other than OPA* for the proposition that OPA's pre-suit presentment requirement is not jurisdictional. They also rely upon one decision in which this Court ruled that the presentment requirements in § 2713 were not jurisdictional "so as to preclude removal until a state court determines whether those requirements have been met."  *Leboeuf v. Texaco,* 9 F. Supp. 2d 661, 666 (E.D. La. 1998) (Porteous, Jr., J.); *but see id.* at 665 (specifically distinguishing that case from *Marathon* because in *Marathon* the issue was before Judge Clement pursuant to a motion to dismiss and because the plaintiff in that case filed its case originally in federal court).   This Court recently cited

---

[14] *See* HESI's Motion at IV.A.5.

*Marathon* with approval, dismissing the plaintiff's OPA claim for his failure to comply with §

2713. *Gabarick v. Laurin Mar. (America) Inc.,* 2009 U.S. Dist. LEXIS 20974, *20 (E.D. La.)

(Africk, J.).

Other federal courts have similarly confirmed that a failure to comply with OPA's pre-

suit presentment requirement is jurisdictional. *See Boca Ciega,* 51 F.3d at 240 (holding that

because § 2713 created "a mandatory condition precedent to bringing any claims under OPA[,] .

. . "the district court was correct when it granted the Appellees' motions to dismiss for lack of

subject matter jurisdiction");[15] *Johnson v. Colonial Pipeline Co.,* 830 F. Supp. 309, 311 (E.D.

Va. 1993) (concluding that the failure to comply with OPA's presentment requirement was a

"profound jurisdictional defect" and dismissing the plaintiff's OPA claim).  Accordingly, the

weight of authority interpreting OPA's presentment requirement mandates that Plaintiffs' failure

to comply results in a jurisdictional defect as to their OPA claim.  At the very least, even if this

Court determines that the pre-suit presentment requirement is not jurisdictional, Plaintiffs have

not complied with a mandatory condition precedent.  Whether jurisdictional or not, Plaintiffs'

failure in this regard warrants dismissal.

###### 2.  *OPA § 2717(f)(2) Does not Relieve Plaintiffs of their Obligation to Comply with OPA's Pre-suit Presentment Requirements.*

Further attempting to avoid OPA's presentment requirements, Plaintiffs contend that the

operation of § 2717(f)(2) somehow exempts public entities such as the Mexican States from

being required to comply with § 2713's presentment requirement.  *See* Opposition at p. 40 (citing

*U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058, 1062 (N.D. Cal. 2008)).  However, neither the

plain language of OPA nor *Cosco Busan* supports that assertion.

---

[15] Plaintiffs incorrectly suggest that *Boca Ciega* cannot support a conclusion that the presentment requirement is jurisdictional.  Opposition at p. 40.

In *Cosco Busan*, the defendants asserted that the court lacked jurisdiction because the United States had failed to comply with OPA's presentment procedures before asserting its OPA claim for removal costs.  557 F. Supp. at 1060.  The Northern District of California ruled that § 2717(f) of OPA released the United States from the presentment requirement.  *Id.* at 1061.  OPA section 2717(f)(2) provides that:

> An action for recovery of removal costs referred to in section 1002(b)(1) [33 U.S.C. § 2702(b)(1)] must be commenced within 3 years after completion of the removal action.  In any such action described in this subsection, the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages.  Except as otherwise provided in this paragraph, an action may be commenced under this title for recovery of removal costs at any time after such costs have been incurred.

The defendants in *Cosco Busan* argued that if this provision were applied literally, it would entirely nullify the pre-suit presentment requirements in § 2713.  557 F. Supp. 2d at 1061.  The *Cosco Busan* court explained that this provision only applies, as it plainly states, to "recovery of removal costs referred to in [§ 2702(b)(1)]."  *Id.*  Section 2702(b)(1), in turn, clarifies that it only applies to removal costs incurred by the United States, a State, an Indian tribe, or a person acting pursuant to the National Contingency Plan.  33 U.S.C. § 2702(b)(1); 557 F. Supp. 2d at 1061.  *Cosco Busan* does not stand for the proposition that the exception to the pre-suit notice requirements is applicable to foreign plaintiffs like the Mexican States.

Section 2702(b)(1) cannot relieve the Mexican States from the statutory presentment requirements because OPA's definition of "State" clearly excludes foreign states such as Plaintiffs.  *See* 33 U.S.C. § 2701(36) ("'United States' and 'State' mean the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession of the United States").  Nor, interestingly, have Plaintiffs

demonstrated that their suits are for recovery of removal costs as understood by the statute. Accordingly, OPA's pre-suit presentment requirements apply to Plaintiffs' OPA claims and their failure to comply with these jurisdictional, mandatory conditions precedent warrants dismissal of those claims.

**F.      The Court Should Dismiss Plaintiffs' OPA Claims Because HESI Is Not a "Responsible Party" Under the Plain Language Of OPA.**

Plaintiffs incorrectly assert that it would be premature to dismiss claims against HESI because HESI *could* be found directly liable under OPA.  *See* Opposition at pp. 4-46.  While acknowledging that HESI has not been designated a "responsible party" under OPA, Plaintiffs first argue that this is merely an administrative designation that does not preclude direct liability for a party not so designated.  *See* Opposition at p. 44.  Plaintiffs' argument ignores the plain language of OPA, which provides for direct liability **only** against a "responsible party."  *See* 33 U.S.C. § 2702(a) ("Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged . . . is liable for the removal costs and damages specific in subsection (b) that result from such incident"); *see also* 33 U.S.C. § 2701(32) (defining "responsible party" in the context of an oil release originating from a vessel or offshore facility as "any person owning, operating, or demise chartering the vessel" or the "lessee or permittee of the area in which the facility is located").   The designation of a "responsible party" is more than a mere administrative requirement.  The designation identifies and limits the parties against whom claimants can bring OPA claims for removal costs and/or damages.  The starting point for direct liability must necessarily be with designated "responsible parties", notwithstanding Plaintiffs' varying efforts to somehow attach nonexistent liability to HESI.

Importantly, this Court has confirmed that the limitation of direct liability to "responsible parties" has its roots in Congressional intent:

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA . . ., it appears that Claimants should pursue claims covered under OPA *only against the responsible party* and in accordance with the procedures established by OPA.  Then, the responsible party can take action to recover against third parties.

*Gabarick*, 623 F.Supp.2d at 750 (emphasis added).  Despite Plaintiffs' mischaracterizations to the contrary, OPA does not exonerate all third parties, but instead allows the responsible party to "take action to recover against" such third parties who might be liable for contribution. Plaintiffs' remedy under OPA is exclusively against the responsible party or parties.

Understandably, Plaintiffs have not alleged any facts indicating that HESI meets the definition of a "responsible party."  *See* Compl. ¶ 24 (alleging only that HESI was "engaged in the cementing operations of the well and well cap" and that "[i]ts activities, services, and work related to the well were ostensibly conducted with the intent and purpose of preventing any blowouts, leakage of oil, and/or the disastrous results that occurred on the Deepwater Horizon"). Nor have Plaintiffs provided any authority suggesting that OPA allows a claimant to seek damages or removal costs against a third party such as HESI.  Because HESI is not a responsible party and direct liability only attaches to responsible parties, Plaintiffs' sole remedy for its OPA claims lies as to designated responsible parties, and not against HESI.  Time will not cure or change this fact.

Next, Plaintiffs suggest that HESI could be designated a "responsible party" under OPA by operation of 33 U.S.C. § 2702(d)(1)(A).  Opposition at p. 44.  Plaintiffs misunderstand § 2702(d)(1)(A), which provides that third parties will be treated as responsible parties "in any case in which a responsible party establishes that a discharge or threat of a discharge and the

resulting removal costs and damages were caused solely by an act or omission of one or more third parties described in [33 U.S.C. § 2703(a)(3)]"  33 U.S.C. 2702(d)(1)(A).  In turn, 33 U.S.C. § 2703(a), provides a complete defense to a responsible party if the damages or removal costs "were caused solely by – . . . (3) an act or omission of a third party, other than . . . a third party whose act or omission occurs in connection with any contractual relationship with the responsible party[.]"  This statutory section provides no authority for Plaintiffs' argument.

Here, there can be no doubt that HESI was performing activities on the Macondo well pursuant to its contract with BP.  *See* Dkt. 2082 [P's Cross-Compl. and Third-Party Compl. Against Halliburton ¶¶ 31-38 (establishing that HESI's activities on the Macondo well were performed pursuant to a well services contract with BP).  Accordingly, by operation of 33 U.S.C. §§ 2702(d)(1)(A) and 2703(a)(3), HESI cannot be an OPA responsible party because any act or omission by HESI alleged to have caused Plaintiffs' damages necessarily occurred in connection with its contractual relationship with BP, a designated responsible party under OPA.  Dismissal of Plaintiffs' OPA claims is proper.

**G.     Plaintiffs Do Not Allege Compliance With 33 U.S.C. § 2707(a).**

As demonstrated in HESI's Motion, Plaintiffs do not allege that compliance with OPA's provisions pertaining to foreign claimants.  These provisions require a claimant to demonstrate that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General . . . has certified that the claimant's country provides a comparable remedy for United States claimants."  33 U.S.C. § 2707(a)(1)(B).  Plaintiffs attempt, in their Opposition, to cure this defect.  *See* Opposition at p. 43 (listing several agreements and conventions without citing any language expressly authorizing Plaintiffs' recovery).

Plaintiffs' effort fails.  Defects in an underlying pleading cannot be cured in a response to a motion to dismiss.  *See Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996) ("Normally in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint"); *Norwood v. Raytheon Co.,* 2006 U.S. Dist LEXIS 75159, *11 (W.D. Tex.) (finding "that additional information put forth in Plaintiffs' Response [to a motion to dismiss] cannot cure defects in the complaint itself").  Plaintiffs acknowledge this in their Opposition by pointing out that their proposed Second Amended Complaints would "specify the treaties authorizing them to maintain this suit."  Opposition at p. 43.  Of course, this Court denied Plaintiffs' Motion for Leave to Amend.  Dkt. No. 2403.  And nothing in their live pleading satisfies the mandatory requirements of the statute.  Plaintiffs' failure to demonstrate compliance with OPA Section 2707(a) warrants dismissal of their OPA claims.

**H.     To the Extent They Seek Recovery For Future Injuries, Plaintiffs' Claims Are Not Ripe and/or Plaintiffs Lack Standing.**

In its Motion, HESI demonstrated that Plaintiffs' claims should be dismissed for lack of standing and/or ripeness to the extent they depend on the future, speculative arrival of oil in their territories.  *See* HESI's Motion at IV.A.8.  In their Opposition, Plaintiffs respond merely by showing that they do allege *some* present damages.  *See* Opposition at pp. 8-11.  However, the most specific and comprehensive list of Plaintiffs' current damages is set forth in Paragraph 55 of the Complaints.  *See supra* III.D (describing the content of this list of damages "incurred to date").

HESI does not maintain that Plaintiffs have alleged *only* future damages, but contends, as it did in its Motion, that the Complaints, on their face, allege largely future damages dependent

on the uncertain arrival of oil in the Mexican States' territory.[16]  Plaintiffs concede that some of

their damages are future damages.  *See* Opposition at pp. 8-11.  Further, they do not cite any

authority tending to show that they have standing with respect to these future damages or that

such claims are ripe.  Thus, to the extent Plaintiffs' claims are based on assertions of future,

uncertain damages, those claims should be dismissed.

**I.**      **Plaintiffs Fail to Satisfy the *Twombly/Iqbal* Pleading Standard.**

Finally, Plaintiffs aver in their Opposition that they have stated factually plausible claims

against HESI.  Opposition at pp. 15-17.  In order to satisfy the applicable pleading requirements

in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009),

Plaintiffs' Complaints "must contain sufficient factual material, accepted as true, to state a claim

to relief that is plausible on its face."  *Iqbal,* 129 S. Ct. at 1949.  However, the allegations in the

Complaints fail to suggest a plausible inference as to how HESI proximately caused Plaintiffs'

alleged damages, regardless of how geographically and temporally remote they are.  The element

of "[p]roximate cause . . . requires some direct relation between the injury asserted and the

injurious conduct alleged."  *Hemi Grp., LLC v. City of New York,* __ U.S. __, 130 S. Ct. 983, 989

(2010).  Moreover, "[a] link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."

*Id.* (citations omitted).  Traditionally, proximate cause has been interpreted to "demand some

direct relation between the injury asserted and the injurious conduct alleged[,]" and, therefore, "a

plaintiff who complained of harm flowing merely from the misfortunes visited upon a third

---

[16] Again, Plaintiffs acknowledge the need to cure a defect in the Complaints and aver that "[s]ince the filing of [the Complaints], the negative effects and damages resulting from the oil spill and dispersants have been aggravated by winds, tides and weather – allegations which Plaintiffs are in the process of seeking leave to file a Second Amended Complaint with the Court's permission.  Accordingly, many of HESI's arguments herein will be mooted by such Second Amended Complaint."  Opposition at p. 7 n.1.  In light of the denial of leave for Plaintiffs to amend, these fatal defects remain.

person by the defendant's acts was generally said to stand at too remote a distance to recovery." *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268-69 (1982).

In their Complaints, Plaintiffs allege damages in the form of "lost fees, taxes and revenues" as a result of the oil spill's alleged impact on Plaintiffs' citizens who pay such fees and taxes and contribute to such revenue. *See* Compl. ¶ 41. They also allege damages in the form of expenses incurred in anticipation of the future, possible arrival of oil, *see* Compl. ¶ 55(A)-(I), and future losses such as "[d]amages arising from diminished tourism" and "damages associated with the long-term stigma of the oil disaster[.]" Compl. ¶ 55(vii), (ix).

Here, Plaintiffs' vague and conclusory allegations are deficient and fail to establish a plausible connection between HESI's conduct on the DEEPWATER HORIZON and Plaintiffs' indirect economic damages allegedly incurred hundreds of nautical miles from the Macondo well. Accordingly, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for their failure to satisfy the pleading requirements set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

## IV.   CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs' claims and, separately, they have failed to plead viable claims against HESI as a matter of law. Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI in their entirety.

Dated:  June 14, 2011

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**  /s/  *Donald E. Godwin, T.A.*
Donald E. Godwin, T.A.
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
BBowman@GodwinRonquillo.com
Jenny L. Martinez
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
FHartley@GodwinRonquillo.com
Gavin Hill
GHill@GodwinRonquillo.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 14th day of June, 2011.

 /s/  Donald E. Godwin
Donald E. Godwin