# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | **MDL NO. 2179**<br><br>**SECTION J** |
| **This document relates to:** | * | |
| *No. 10-1757; No. 10- 1758; No. 10- 1759;* | * | **Honorable CARL J. BARBIER** |
| *No. 10-1760; No. 10- 2087; No. 10- 2731;* | * | |
| *No. 10- 2996; No. 10- 2997; No. 10- 4185;* | * | **Magistrate Judge SHUSHAN** |
| *No. 10-4239; No. 10-4240;  No. 10-4241* | * * | |

## BP'S REPLY IN SUPPORT OF MOTION TO DISMISS
## CERTAIN COMPLAINTS IN PLEADING BUNDLE C

| | |
|---|---|
| Richard C. Godfrey, P.C. | Don K. Haycraft (Bar #14361) |
| J. Andrew Langan, P.C. | R. Keith Jarrett (Bar #16984) |
| Andrew B. Bloomer, P.C. | LISKOW & LEWIS |
| Catherine L. Fitzpatrick | 701 Poydras Street, Suite 5000 |
| Elizabeth A. Larsen | New Orleans, Louisiana  70139-5099 |
| Kirkland & Ellis LLP | Telephone:     (504) 581-7979 |
| 300 North LaSalle Street | Facsimile:     (504) 556-4108 |
| Chicago, IL  60654 | |
| Telephone:     (312) 862-2000 | |
| Facsimile:     (312) 862-2200 | Robert C. "Mike" Brock |
| | Covington & Burling LLP |
| | 1201 Pennsylvania Avenue, NW |
| | Washington, DC  20004-2401 |
| | Telephone:     (202) 662-5985 |

*Attorneys for BP*

## TABLE OF CONTENTS

*Page*

Introduction .......................................................................................................................1

I.    Plaintiffs' Response Briefs Confirm That OCSLA, OPA, and the CWA Bar Plaintiffs' Maritime and State Law Claims.......................................................2

    A.    The Outer Continental Shelf Lands Act Applies to Plaintiffs' Claims and Makes the Applicable Law Exclusively Federal. ....................2

    B.    *Ouellette* and the Clean Water Act Preempt Plaintiffs' State Law Claims. .....................................................................................................4

    C.    OPA's Savings Clauses Cannot Save Plaintiffs' Claims From Preemption By the Outer Continental Shelf Lands Act and the Clean Water Act...........................................................................................5

II.    The Louisiana Oil Spill Act Precludes the Parish District Attorneys' Claims for Penalties Under the Wildlife Statute......................................................7

III.    The Mexican States' and the Alabama Cities' OPA Claims Must Be Dismissed Because They Have Not Complied with OPA's Mandatory Requirements. ....................................................................................................9

    A.    The Mexican States and the Alabama Cities Did Not Present Their Claims to BP Before Filing Suit. .................................................9

    B.    The Mexican States Have Not Alleged or Demonstrated Compliance with OPA's Additional Requirements for Foreign Claimants. ....................................................................................15

IV.    The Mexican States' and Alabama Cities' Conclusory Allegations Must Be Disregarded and They Have Not Alleged a Plausible Claim For Relief..........19

    A.    The Mexican States' Response Confirms That They Cannot Plausibly Allege OPA Causation.............................................................19

    B.    The PSC Seeks a Lower Causation Standard on Behalf of Parties Not at Issue in this Motion.......................................................21

Conclusion ......................................................................................................................24

## TABLE OF AUTHORITIES

*Page(s)*

### Cases

*Abundiz v. Explorer Pipeline Co.*,
   Civ. A. Nos. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018
   (N.D. Tex. Nov. 25, 2003) ................................................................................................ 10

*Abundiz v. Explorer Pipeline Co.*,
   No. Civ. A. 3:00-CV-2029-H, 2003 WL 23594054 (N.D. Tex. Mar. 7, 2003) ...................... 15

*American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*,
   524 U. S. 214 (1998) ............................................................................................................ 6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................. 2, 10, 19

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ......................................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 19, 20, 21

*Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*,
   51 F.3d 235 (11th Cir. 1995) ......................................................................................... 10, 12

*California Department of Toxic Substances Control v. Hearthside Residential Corp.*,
   613 F.3d 910 (9th Cir. 2010) .............................................................................................. 14

*City of Clinton, Arkansas v. Pilgrim's Pride Corp.*,
   632 F.3d 148 (5th Cir. 2010) ......................................................................................... 20, 21

*City of DeQuincy v. Henry*,
   __ So. 3d __, No. 2010-C-0070, 2011 WL 880377 (La. March 15, 2011) ............................... 8

*Consumer Product Safety Commission v. GTE Sylvania, Inc.*,
   447 U.S. 102 (1980) ............................................................................................................ 23

*Cooper Industries, Inc. v. Aviall Services, Inc.*,
   543 U.S. 157 (2004) .............................................................................................................. 5

*Deculus v. Welborn*,
   964 So. 2d 930 (La. 2007) ..................................................................................................... 9

*Demette v. Falcon Drilling Co.*,
   280 F.3d 492 (5th Cir. 2002) ................................................................................................ 3

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ........................................................................................................... 23

*Ebanks v. Offshore Lifeboats, LLC,*
   Civ. A. No. 08-1340, 2009 WL 3834365 (E.D. La. Nov. 10 2009)........................................... 3

*Gabarick v. Laurin Mar. (Am.),*
   Civ. A No. 08-4007, 2009 WL 102549 .......................................................................... 13, 15

*Geier v. American Honda Motor Co.,*
   529 U.S. 861 (2000) ............................................................................................................. 6

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,*
   589 F.3d 778 (5th Cir. 2009)................................................................................................. 3

*Gulf Offshore Co. v. Mobil Oil Corp.,*
   453 U.S. 473 (1981) ............................................................................................................. 4

*Hallstrom v. Tillamook County,*
   493 U.S. 20 (1990) ........................................................................................... 10, 11, 12, 15

*Hatten v. Schwerman Trucking Co.,*
   889 So. 2d 448 (La. Ct. Ap. 2004) ........................................................................................ 9

*Hensley v. Redi-Med of Mandeville,*
   Civ. A. No. 09-47, 2009 WL 2408319 (E.D. La. Aug. 4, 2009)...................................... 10, 21

*International Paper Co. v. Ouellette,*
   479 U.S. 481 (1987) ..................................................................................................... 1, 4, 5

*Isla Corp. v. Sundown Energy, LP,*
   Civ. A. No. 06-8645, 2007 WL 1240212 (E.D. La. Apr. 27, 2007) ........................................ 13

*Johnson v. Colonial Pipeline Co.,*
   830 F. Supp. 309 (E.D. Va. 1993)........................................................................................ 10

*Leboeuf v. Texaco,*
   9 F. Supp. 2d 661 (E.D. La. 1998) ....................................................................................... 12

*Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board,*
   586 So. 2d 1354 (La. 1991)................................................................................................... 9

*Marathon Pipe Line Co. v. LaRoche Industries, Inc.,*
   944 F. Supp. 476 (E.D. La. 1996) ....................................................................................... 13

*Matter of Sinclair,*
   870 F.2d 1340 (7th Cir. 1989)............................................................................................. 23

*Monterey Coal Co. v. Federal Mine Safety & Health Review Commission*,
    743 F.2d 589 (7th Cir. 1984) ................................................................................................. 23

*Sanford v. Louisiana*,
    228 Fed.Appx. 492 (5th Cir. 2007) .............................................................................. 10, 21

*State v. Madere*,
    352 So. 2d 666 (La. 1977) ...................................................................................................... 9

*State v. Williams*,
    __ So. 3d __, No. 2010-KK-1514, 2011 WL 880281 (La. March 15, 2011) ............................ 9

*Texas & Pacific Railroad Co. v. Abilene Cotton Oil Co.*,
    204 U. S. 426 (1907) .............................................................................................................. 6

*Toomy v. Louisiana State Employees' Retirement System*,
    __ So. 3d __, No. 2010 CA 1072, 2011 WL 1206477 (La. Ct. App. Mar. 25, 2011) ................ 8

*Turner v. Murphy Oil USA*,
    No. 05-4206 (E.D. La. Dec. 29, 2005) .................................................................................. 13

*United States v. M/V Cosco Busan*,
    557 F. Supp. 2d 1058 (N.D. Cal. 2008) .......................................................................... 13, 15

*United States v. Murphy Exploration and Production Co.*,
    939 F. Supp. 489 (E.D. La. 1996) ....................................................................................... 13

## Statutes

33 U.S.C. § 2702(b) ....................................................................................................................... 22

33 U.S.C. § 2702(b)(1)(B) ............................................................................................................. 14

33 U.S.C. § 2702(b)(2)(A) ............................................................................................................. 18

33 U.S.C. § 2702(b)(2)(D) ............................................................................................................... 1

33 U.S.C. § 2706(a)(4) ................................................................................................................... 18

33 U.S.C. § 2706(b)(5) ................................................................................................................... 18

33 U.S.C. § 2707(a)(1)(B) ............................................................................................................. 16

33 U.S.C. § 2707(c)(3) ................................................................................................................... 18

33 U.S.C. § 2709 ............................................................................................................................. 2

33 U.S.C. § 2710(c) ......................................................................................................................... 2

33 U.S.C. § 2713 ............................................................................................ 12, 13

33 U.S.C. § 2713(a) ............................................................................................ 9

33 U.S.C. § 2713(c) ........................................................................................... 11

33 U.S.C. § 2714(a) ............................................................................................ 9

33 U.S.C. § 2715 ................................................................................................. 2

33 U.S.C. § 2717 ............................................................................................... 14

33 U.S.C. § 2718 ................................................................................................. 5

42 U.S.C. § 6972 ............................................................................................... 11

43 U.S.C. § 1333 ................................................................................................. 4

46 U.S.C. § 30501 *et. seq.* ................................................................................. 5

La. Rev. Stat. § 30:2453 ..................................................................................... 8

La. Rev. Stat. § 30:2491(A) ............................................................................... 8

La. Rev. Stat. § 30:2491(B) ............................................................................... 7

La. Rev. Stat. § 30:2496 ..................................................................................... 8

La. Rev. Stat. § 56:40.1 *et. seq.* ....................................................................... 7

### Other Authorities

136 CONG. REC. H6933, H6939 (Aug. 3, 1990) ..................................... 23

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE
  § 1216 (3d ed. 2004) .................................................................... 20

8 Bus. & Com. Litig. Fed. Cts. § 95:45 (2d ed.) .................................. 14

Danielle Marie Stager, Comment, *From Kepone to Exxon Valdez Oil
  and Beyond: An Overview of the Natural Resource Damage Assessment,*
  29 U. Rich. L. Rev. 751 (1995) ................................................................... 7

H.R. REP. NO. 95-1474 (1978) (Conf. Rep.) ......................................... 3

Restatement (Third) Torts § 26 and cmt. (b) .......................................... 22

Restatement (Third) Torts § 26 cmt. (a) ................................................. 22

**Rules**

Fed. R. Civ. P. 12(b) .............................................................................................................. 2, 10

Fed. R. Civ. P. 9(h) .................................................................................................................... 1

## INTRODUCTION

Plaintiffs' responses demonstrate a fundamental misunderstanding of the governing federal statutes, which are straightforward and unambiguously defeat plaintiffs' claims:

- Plaintiffs do not dispute that the incident giving rise to this case occurred outside of any State on the Outer Continental Shelf, a federal enclave.  Under the Outer Continental Shelf Lands Act ("OCSLA"), federal law is exclusive for claims arising from drilling for oil and other mineral exploration and development activities on the OCS.  The Court may borrow the adjacent state's law as surrogate federal law but only to fill gaps in federal law.  *See* 43 U.S.C. § 1333

- For oil spills occurring outside of any State on the OCS, the applicable federal laws, in addition to OCSLA, are the Oil Pollution Act, which establishes a comprehensive liability and remedial scheme, and the Clean Water Act, which establishes a comprehensive penal scheme.  *See* 33 U.S.C. § 2702(b)(2)(D). Hence there are no gaps in federal law and no basis under OCSLA for borrowed state law.

- A state has no independent authority, under common law or otherwise, to regulate pollution that originated from a source outside its territory, even if the effects of the pollution are felt within the state.  *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987).[1]

Plaintiffs respond that their state-law claims are preserved under OPA, that OPA's presentment requirement is not jurisdictional, and that proximate cause should not be decided on a motion to dismiss.  But none of these arguments change the basic principles set forth above. First, OPA's savings clauses cannot save plaintiffs' state law claims from preemption by other federal statutes, namely, OCSLA and the Clean Water Act, which unambiguously bar such

---

[1] Federal statutes are also presumed to displace the common law, including maritime law, and numerous courts have confirmed that OPA displaces maritime law.  In its opening brief, BP noted that none of the Pleading Bundle C plaintiffs alleged that maritime law applied to its claims or designated an admiralty claim under Fed. R. Civ. P. 9(h).  Out of an abundance of caution, BP argued that to the extent any of the plaintiffs were nonetheless alleging claims under maritime law, such claims were displaced by OPA for the reasons discussed in Part I.A of BP's Motion to Dismiss the First Amended Master Complaint for the B1 Bundle.  In its opposition brief, the PSC argues that OPA does not preempt maritime law claims.  Neither the Mexican States nor the Louisiana District Attorneys address maritime law, however, and given that the Alabama Cities did not file a brief, it still remains unclear whether any of these Bundle C plaintiffs are even asserting maritime claims. To the extent the viability of maritime law claims is an issue with respect to this motion, BP incorporates the arguments in its B1 Bundle Reply demonstrating that OPA displaces maritime law.  (*See* B1 Bundle Reply (Doc. 2312) Section I.)

claims.[2]  Second plaintiffs cannot meet a mandatory requirement under OPA, so their claims fail regardless of whether or not the presentment requirement is jurisdictional.  Finally, the Mexican States' conclusory allegations of proximate cause do not relieve them of pleading facts that plausibly demonstrate harm directly caused by the oil spill.  A valid complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Plaintiffs do not allege proper facts supporting a right to relief under state or federal law. Their claims are legally insufficient and their complaints should be dismissed in their entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.   PLAINTIFFS' RESPONSE BRIEFS CONFIRM THAT OCSLA, OPA, AND THE CWA BAR PLAINTIFFS' MARITIME AND STATE LAW CLAIMS.

### A.   The Outer Continental Shelf Lands Act Applies to Plaintiffs' Claims and Makes the Applicable Law Exclusively Federal.

The Louisiana District Attorneys and the Mexican States assert that the *Deepwater Horizon* was not an OCSLA situs and thus OCSLA itself does not apply to this action.  (*See, e.g.*, La. District Attorneys' Br. at 6 ("[T]he Deepwater Horizon vessel was not a fixed platform or other structure attached to the seabed within the scope [of] OCSLA."); Mex. States' Br. at 25-30

---

[2]   The Mexican States argue that BP's claims against various co-defendants, "although purportedly brought as OPA or admiralty claims" are actually state law claims, and that BP "is quick to abandon its own preemption arguments when *its* interests and claims are being presented to the Court.  (Mex. States' Br. at 2, 4 (emphasis in original).)  BP's claims against its co-defendants are brought under OPA and maritime law, and the Mexican States' unsupported attempt to characterize them as state law claims has absolutely no basis in fact or law. Thus, there is no conflict between BP's arguments that plaintiffs' state law claims are preempted and BP's own claims under different sources of law.

Nor is there any conflict between BP's arguments on OPA's displacement of maritime claims, *see* n.1, *supra*, and BP's own maritime claims against certain co-defendants.  OPA expressly provides responsible parties such as BP with federal contribution and subrogation remedies, *see* 33 U.S.C. §§ 2709, 2715, and preserves non-OPA claims that a responsible party has against other parties.  *See* 33 U.S.C. § 2710(c) ("Nothing in this Act, including the provisions of subsection(b) of this section [preventing indemnification agreements from transferring OPA liability], bars a cause of action that a responsible party subject to liability under this Act, or a guarantor, has or would have, by reason of subrogation *or otherwise, against any person*.") (emphasis added). Therefore, by its plain language, OPA does not displace maritime law claims that BP has against other parties.

(arguing that the OCSLA status of the *Deepwater Horizon* is uncertain).)[3]  They are wrong. Both the Fifth Circuit and this Court have made clear that "the use of the term 'temporarily' [in OCSLA] implies that devices that can detach from the seabed and are capable of movement on the sea — *i.e.*, vessels — can fall within the scope of the OCSLA."  *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 n.19 (5th Cir. 2002), *overruled in irrelevant part by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009); *Ebanks v. Offshore Lifeboats, LLC*, Civ. A. No. 08-1340, 2009 WL 3834365, at *6 (E.D. La. Nov. 10, 2009) (applying *Demette* and stating that "an offshore oil drilling platform that is temporarily or permanently attached to the seabed is considered an OCSLA situs").   Moreover, the *Deepwater Horizon* was a mobile offshore drilling unit ("MODU") under OPA.  As a MODU in use at an offshore facility over Shelf waters at the time of the incident, the *Deepwater Horizon* clearly qualified as an "Outer Continental Shelf facility," and thus as an OCSLA *situs*.  "Under [OCSLA's] conference report language, ***Federal law is to be applicable to all activities on all devices in contact with the seabed for exploration, development, and production***."  H.R. REP. NO. 95-1474, at 80 (1978) (Conf. Rep.) (emphasis added).  And after the *Deepwater Horizon* sank, the leak continued from the subsea well, clearly an offshore facility embedded within the Shelf.  The Macondo well was indisputably an OCSLA *situs*.[4]

---

[3]   BP's March 29, 2011 motion to dismiss was directed at the complaints filed by Quintana Roo, Tamaulipas, and Veracruz (collectively, the "Mexican States"); four municipalities in Alabama (collectively, the "Alabama Cities"); and eight Louisiana Parish District Attorneys (collectively the "District Attorneys").  This reply addresses the arguments made in the three briefs filed in opposition to BP's motion:  the brief of the Mexican States, Doc. 2138 ("Mex. States' Br."); the brief of the District Attorneys, Doc. 2161 ("La. District Attorneys' Br."); and the brief of the Plaintiffs' Steering Committee, Doc. 2110 ("PSC's Br.").  The Alabama Cities did not file an opposition to BP's motion to dismiss.  While the motion was pending, the Alabama Cities filed short forms to join the Local Government Entity Master Complaint, but they have not indicated they would rely on the PSC's response.

[4]   The Mexican States argue that whether OCSLA applies can only be determined after discovery, and that the issues "are to be determined by facts, not arguments in memoranda."  (Br. at 30 (citing cases having nothing to do with OCSLA).)  Although there may be situations when it is not clear whether a MODU is under way or attached to the Shelf, thereby requiring fact discovery, here there is no dispute that the *Deepwater Horizon* was

Given these facts, OCSLA applies and makes federal law exclusive here.  *See* 43 U.S.C. § 1333.  Although the law under OCSLA is exclusively federal, its content may be borrowed from the law of the adjacent State.  But the adjacent State's law may apply (if at all) (i) only indirectly as *surrogate federal law* and (ii) only *if necessary to fill a gap in federal law*.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981).  In this case, because OPA and the Clean Water Act provide comprehensive remedial and penal schemes to address oil spills, there is no place for state law, and all state law claims brought by the Alabama Cities, the Mexican States, and the Louisiana District Attorneys are preempted.  (*See also* BP's Bundle C Mem. (Doc. 1786-1) Section II.A.)

## B.   *Ouellette* and the Clean Water Act Preempt Plaintiffs' State Law Claims.

In an effort to avoid preemption under the Clean Water Act, plaintiffs contend that BP's arguments rely on an "overextended misrepresentation" of the holding of *Ouellette*.  (Mex. States' Br. at 30-32; *see also* La. District Attorneys' Br. at 7-8; PSC's Br. at 28-31.)  On the contrary, *Ouellette*'s holding is squarely on point:  *Ouellette* held that only the federal NPDES system and the law of the source State can regulate discharges of pollution within such a State, whereas other States (even if affected by the pollution) lack the power to regulate water pollution beyond their borders.  *Ouellette*, 479 U.S. at 494.  Here, the oil spill did not arise in any source State, but on the Outer Continental Shelf, a federal enclave, and therefore, therefore no state's. (*See also* BP's B1 Bundle Reply (Doc. 2312) Section III.A for further discussion of preemption

---

in the process of drilling at the time of the incident, and was therefore temporarily attached to the seabed floor, as the Mexican States' own allegations make clear:  "The Deepwater Horizon oil rig had been **drilling for oil** in the Gulf of Mexico *via* a well located on the Macondo Prospect Mississippi Canyon 252 approximately 100 miles off the coast of the United States.  On April 20, 2010, the Deepwater Horizon exploded and caught fire. It burned for two days before tipping into the sea and sinking.  During the course of the destruction of the Deepwater Horizon, the **riser pipe carrying oil to the ocean surface** from below the sea floor bent and/or broke."  (Quintana Roo Compl. ¶ 3 (emphasis added).)

under the Clean Water Act and why plaintiffs' arguments attempting to distinguish *Ouellette* fail.)[5]

### C. OPA's Savings Clauses Cannot Save Plaintiffs' Claims From Preemption By the Outer Continental Shelf Lands Act and the Clean Water Act.

Plaintiffs seek to rely on OPA's savings clauses to assert state law claims, arguing that "***OPA*** clearly provides that it does not affect or preempt state law." (Mex. States' Br. at 18 (citing 33 U.S.C. § 2718) (emphasis added); *see also* La. District Attorneys' Br. at 3 ("State laws . . . are expressly preserved under OPA."); PSC's Br. at 5-6 (citing 33 U.S.C. § 2718).) This misses the point: under OCSLA, state law ***never*** applies of its own force on the OCS and thus there are no applicable state law claims to "save" under OPA's savings clause. Put differently, OPA's savings clauses neither create a state claim where none exists nor revive state claims that are preempted by other laws. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166-67 (2004) (holding that CERCLA's savings clause did not itself create any cause of action; its sole purpose was to preserve existing remedies).

Furthermore, *Ouellette* held that a savings clause framed in terms of "nothing in this section" was, by its own terms and basic common sense, limited to preemption caused only by that particular section of the statute. *See* 479 U.S. at 493 (clause "does not purport to preclude pre-emption of state law by other provisions of the Act"). The same analysis applies to OPA's savings clauses, which by their terms are limited to OPA preemption (or in some cases to saving against preemption by the Limitation Act of 1851, 46 U.S.C. § 30501 *et seq*.). In addition, unless savings clauses explicitly state otherwise, they do not prevent the ordinary operation of

---

[5]   The Mexican States suggest that even if the Court rules in BP's favor "based on OPA and/or OCSLA," their state law claims "remain viable under this Court's alternate diversity and constitutional jurisdiction." (Mex. States' Br. at 5-6.) The Mexican States misunderstand BP's arguments. If the Court rules that federal law exclusively applies, ***the state law claims cannot proceed because they are preempted***; the basis of the Court's jurisdiction is irrelevant.

conflict preemption as found in cases such as *Ouellette*.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000).  It would be quite a feat for one federal statute (OPA), by silence, to strip other federal statutes (the CWA and OCSLA) of the preemption necessary for their operation. Where, as here, Congress expressly limited a savings clause to save only those claims that would otherwise be preempted by a defined statute, it could not possibly have intended (without any indication in the text) that the same narrow savings clause could save claims that are expressly preempted ***by an entirely different and preexisting federal statute***.  To conclude otherwise would be even more illogical than interpreting a statute's savings clause to save claims that the statute itself preempts—reasoning the Supreme Court flatly rejected recently in *AT&T Mobility LLC v. Concepcion*:

> "***Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives***. . . .  As we have said, a federal statute's saving clause 'cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act.  In other words, the act cannot be held to destroy itself.'"

131 S. Ct. 1740, 1748 (2011) (*citing Am. Tel. & Tel. Co. v. Cent. Office Tel, Inc.*, 524 U. S. 214, 227–228 (1998) (quoting *Tex. & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 446 (1907)) (internal citations omitted) (emphasis added).

Contrary to the Louisiana District Attorneys' arguments, BP's preemption argument does not "render the savings clauses of Section 2718 utterly meaningless."  (La. District Attorneys' Br. at 4.)  Section 2718 would still operate to save appropriate state law claims for oil spills occurring ***within a state's territorial boundaries***.  But because the oil spill occurred ***on the Outer Continental Shelf***, state law claims are preempted despite Section 2718.

## II.    THE LOUISIANA OIL SPILL ACT PRECLUDES THE PARISH DISTRICT ATTORNEYS' CLAIMS FOR PENALTIES UNDER THE WILDLIFE STATUTE.

Although the Louisiana Parish District Attorneys insist that a savings clause for wildlife penalty cases in LOSPRA preserves their claims, they neglect to quote the actual language of the clause, which plainly refutes their argument:

> "[N]othing herein shall be construed to preclude the **Department of Wildlife and Fisheries** from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to R.S. 56:40.1 et seq."

La. Rev. Stat. § 30:2491(B) (emphasis added).  The District Attorneys focus on the reference to La. Rev. Stat. § 56:40.1 *et seq*. (the "Louisiana Wildlife Statute"), which authorizes the district attorneys to bring civil suits in cases not involving oil spills.  But they ignore the fact that the clause does not save *every civil suit* brought pursuant to the Wildlife Statute but explicitly preserves *only a civil suit brought by the Department* itself, not by District Attorneys or other governmental agencies.[6]

The Louisiana District Attorneys also argue that they do not need to rely on the savings clause in Section 2491(B) because Section 2491(A) does not bar their claims.  The District Attorneys' interpretation of Section 2491(A) must be rejected, however, because it renders Section 2491(B) entirely superfluous; the Legislature would not have needed to explicitly preserve the Department's wildlife claims if Section 2491(A) did not supersede them.  *See*, *e.g.*,

---

[6]    Given the plain language of the statute, it is unnecessary to go beyond it.  Nonetheless, as BP pointed out in its opening brief, the legislature carefully assigned roles to various departments and agencies, including numerous roles to the Department.  (BP's Bundle C Mem. (Doc. 1786-1) at 18.)  Given this, it is clear that the Legislature's choice of the Department as sole enforcer of the Wildlife Statute in oil spill matters should be respected.  *See also* Danielle Marie Stager, Comment, *From Kepone to Exxon Valdez Oil and Beyond: An Overview of the Natural Resource Damage Assessment*, 29 U. Rich. L. Rev. 751, (1995) ("In Louisiana, a comprehensive state Oil Spill Prevention and Response Act complements the federal Act, but adds original language aimed at avoiding jurisdictional disputes during a spill response…. The emphasis on jurisdictional boundaries is one of the Act's main attractions.  James Hanifen, project coordinator for the Department of Wildlife and Fisheries, points out that the jurisdictional delineations are important, because '[t]hat was one of the first things I noticed upon my visit to Valdez during the response to the Exxon Valdez spill.  It was never clear who was supposed to be in charge of what.'") (citing Louisiana's Legislature Passes a Spill Bill in Seven-Day Special Session, Oil Spill U.S. Law Rep., May 1991 available in LEXIS, Nexis Library, ZLW1 File).

*City of DeQuincy v. Henry*¸ __ So. 3d __, No. 2010-C-0070, 2011 WL 880377, at *4 (La. March 15, 2011) ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found."); *Toomy v. La. State Employees' Retirement Sys.*, __ So. 3d __, No. 2010 CA 1072, 2011 WL 1206477, at *3 (La. Ct. App. Mar. 25, 2011) ("It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given each such provision, and that no unnecessary words or provisions were used.") (internal citation omitted).

Moreover, the Louisiana District Attorneys' interpretation does not comport with the plain meaning of the statute.  Section 2491(A) provides:

> "When applicable, the limitations of liability and immunities provided in this Chapter shall be exclusive and shall supersede any other liability provisions provided by any other applicable state law.  The provisions of this Chapter shall supersede, but not repeal, any conflicting laws of this state. Any conflicting applicable federal law shall take precedence over this Chapter."

La. Rev. Stat. § 30:2491(A).  Section 2496 likewise states that "[t]he provisions of this Chapter shall be the exclusive authority on oil spill prevention, response, removal, and the limitations of liability." *Id.* § 30:2496.

These provisions demonstrate that LOSPRA supersedes other sources of liability related to oil spills, except for the very limited exception for suits under the Wildlife Statute brought by the Department set out in Section 30.2491(B).  The meaning of a law is determined "by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law." *City of DeQuincy*¸ 2011 WL 880377, at *3.  The intent of LOSPRA is "to support and complement" OPA.  La. Rev. Stat. § 30:2453.  Like OPA,

LOSPRA provides a comprehensive and exclusive approach to oil spills.  It therefore supersedes alternate sources of liability, including the penalties sought by the Parish District Attorney.[7]

## III.   THE MEXICAN STATES' AND THE ALABAMA CITIES' OPA CLAIMS MUST BE DISMISSED BECAUSE THEY HAVE NOT COMPLIED WITH OPA'S MANDATORY REQUIREMENTS.

### A.   The Mexican States and the Alabama Cities Did Not Present Their Claims to BP Before Filing Suit.

The presentment requirement is a mandatory condition precedent that must be satisfied before a plaintiff may sue an OPA responsibly party for OPA damages or removal costs in court. Because the Mexican States and the Alabama cities have failed to present their OPA claims, they must be dismissed.

First, contrary to the Mexican States' argument, issues of "prejudice" and "futility" play no part in the presentment analysis.  (Mex. States' Br. at 39 (arguing that "BP has not suffered any prejudice [from the Mexican States' failure to present].  Courts should not require a plaintiff to undertake futile actions.").)  The plain language of OPA requires that "[e]xcept as provided in subsection (b) of this section, ***all claims for removal costs or damages*** shall be presented first to the responsible party or guarantor of the source designated under 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis added).  None of the exceptions in Subsection (b) excuse lack of presentment on the grounds that the responsible party will not be prejudiced or presentment is allegedly futile, and BP has found no case that remotely supports that proposition.  Indeed, allowing an exception to the presentment requirement in such circumstances is impermissible

---

[7]     It is instructive that the title of Section 30.2491 is "Exclusive remedies," and the title of Section 30.2496 is "Exclusive authority."  Although BP asserts that the exclusive nature of the Louisiana Oil Spill Act and its remedies is clear from the text, should the Court find any ambiguity, it may consider the title in "interpret[ing] legislative intent."  *See State v. Williams*, __ So. 3d __, No. 2010-KK-1514, 2011 WL 880281, at *6 (La. March 15, 2011) (citing *State v. Madere*, 352 So. 2d 666, 668 (La. 1977)); *see also Deculus v. Welborn*, 964 So. 2d 930, 933 (La. 2007) (title instructive in "ascertaining [an act's] meaning"); *Hatten v. Schwerman Trucking Co.*, 889 So. 2d 448, 450 (La. Ct. App. 2004) (title "may be used to determine legislative intent") (citing *La. Associated Gen. Contractors, Inc. v. Calcasieu Parish Sch. Bd.*, 586 So. 2d 1354, 1367 (La. 1991)).

because it is contrary to the plain language of the statute. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 25-26, 31 (1990) ("the starting point for interpreting a statute is the language of the statute itself," and "[t]he language of this provision could not be clearer"); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 239 (11th Cir. 1995) (*Hallstrom*'s construction of a "similar" notice provision was instructive on why there was no justification in "departing from the plain meaning" of OPA's mandatory presentment provision).

The Mexican States' argument that evaluation of presentment requires factual development and discovery fares no better.  First, presentment is a mandatory prerequisite to suit, and there is no authority for the Court to defer a decision on presentment while permitting OPA claims to proceed past the motion to dismiss stage.  As the authority previously cited by BP shows, numerous courts have granted Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) motions to dismiss OPA claims for failure to present.[8]  (*See, e.g.*, Bundle C Mem. (Doc. 1786-1) at 8); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Sanford v. Louisiana*, 228 Fed.Appx. 492, 492-93 (5th Cir. 2007); *Hensley v. Redi-Med of Mandeville*, Civ. A. No. 09-47, 2009 WL 2408319, *2 (E.D. La. Aug. 4, 2009) (Barbier, J.).  Given that the Mexican States have within their possession

---

[8]     Of course, conclusory allegations of presentment are insufficient under the case law, and courts will closely examine plaintiffs' allegations or the documentary evidence supporting their allegations to determine if OPA's requirements of a sum certain and substantiation have been satisfied.  *See, e.g.*, *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing OPA claims for lack of presentment; holding that letter purporting to present an OPA claim was "plainly inadequate" under the statute because plaintiffs had made "no effort to describe the nature or extent of the[ir] alleged damages, much less to explain the basis for claiming that these damages have been sustained," and also "fail[ed] to state a sum certain for any of the types of damages alleged"); *Gabarick v. Laurin Mar. (Am.), Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, at *2 (E.D. La. Jan. 12, 2009) (granting motions to dismiss; invoice submitted by plaintiff did not satisfy OPA's "statutory requirements for a proper claim" because the plaintiff "has not described the manner in which the oil spill impacted it, nor has it cited evidence in support of its purported claim."); *Abundiz v. Explorer Pipeline Co.*, Civ. A. Nos. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018, at *3-5 (N.D. Tex. Nov. 25, 2003) (holding that plaintiff failed to comply with presentment requirement because it did not establish the amount in dispute; spreadsheets and letter were ambiguous and lacked the necessary specificity).

any documents or information related to whether or not they have presented their claims, they need no discovery from BP or any other party in order to make the necessary showing.

Furthermore, no factual development is necessary in this situation given that the Mexican States allege absolutely nothing about presentment in their First Amended Complaint and concede in their Opposition brief that they have not yet satisfied the requirement but may do so in the future.  (*See* Mex. States' Br. at 45 ("Plaintiffs note that they intend to submit such a presentation [of OPA claims] in the near future.").)[9]

The Mexican States also argue that the presentment requirement is not jurisdictional, but this does not avoid dismissal.  Because they failed to present, their claims must be dismissed— whether the deficiency is jurisdiction or not is immaterial.  *See Hallstrom v. Tillamook Cnty.,* 493 U.S. 20, 31 (1990).  In *Hallstrom,* the Supreme Court held that compliance with a Resource Conservation and Recovery Act ("RCRA") provision requiring citizens to provide notice before commencing suit, *see* 42 U.S.C. § 6972, is a "mandatory precondition to suit that cannot be disregarded by the district court at its discretion."  *Id.* at 23.  The Court explained that "***[u]nder a literal reading of the statute, compliance*** with the 60-day notice provision ***is a mandatory, not optional, condition precedent for suit.***"  *Id.* at 25-26 (emphasis added).  The Court rejected petitioners' call for a "flexible or pragmatic construction" of the RCRA notice provision that would allow courts to stay an action for 60 days in the event notice was not provided prior to

---

[9]     On or about June 7, 2011, the Mexican States sent purported OPA claims to the GCCF, contradicting their argument that they need not present their claims.  Leaving aside any deficiencies in their submissions, such belated attempts at presentment while their lawsuit is pending cannot cure the Mexican States' failure to present prior to filing suit and confirms that their claims should be dismissed.  OPA claimants "may elect to commence an action in court against the responsible party" ***only after*** the responsible party denies liability or the claim is not settled by payment within 90 days after the claim was presented or advertising was begun.  33 U.S.C. § 2713(c); see *Abundiz v. Explorer Pipeline Co.*, No. Civ. A. 3:00-CV-2029-H, 2003 WL 23594054, at *3 (N.D. Tex. Mar. 7, 2003) (holding that plaintiffs, by sending letters that purported to cure defects in presentment while lawsuit was pending, "***did nothing to cure the defect in the timing of the presentment***") (emphasis added); see also discussion of why dismissal rather than a stay of plaintiffs' OPA claims is necessary at p. 15, *infra*.

filing suit, holding that such an interpretation of Section 6972 "flatly contradicts the language of the statute."  *Id.* at 26-27 ("[W]e are not at liberty to create an exception where Congress has declined to do so.").  Noting that "***[t]he parties have framed the question presented in this case as whether the [RCRA] notice provision is jurisdictional or procedural,***" the Supreme Court determined that "***[i]n light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict sense of the term.  As a general rule, if an action is barred by the terms of a statute, it must be dismissed.***"  *Id.* at 31 (citations omitted, emphasis added).

As the Eleventh Circuit observed in *Boca* Ciega, OPA's pre-suit presentment requirement is "very similar" to the RCRA notice provision at issue in *Hallstrom*.  51 F.3d at 239.  The Eleventh Circuit found *Hallstrom* instructive in reaching its holding that OPA's presentment requirement is a "mandatory condition precedent" to filing an OPA claim in court.  51 F.3d at 239 (finding nothing in OPA's text or legislative history to "justify departing from the plain meaning of [the] statute's text").  Pointing to *Hallstrom*, the Eleventh Circuit opined:

> "We are not at liberty to create an exception where Congress has declined to do so. . . .  If Appellants perceive a policy shortcoming caused by OPA's claims presentation requirement, that shortcoming 'arises as a result of the balance struck by Congress, and is properly remedied by congressional action.'"

*Id.* (quoting *Hallstrom*, 493 U.S. at 26, 30).

This Court has consistently followed the sound reasoning of the Eleventh Circuit in *Boca Ciega* to hold that OPA's presentment requirement is ***mandatory and cannot be waived***.  This includes *Leboeuf v. Texaco*, 9 F. Supp. 2d 661 (E.D. La. 1998), relied upon by the Mexican States (Mex. States' Br. at 43-44), in which "this Court agree[d] with the Eleventh Circuit that [the presentment requirements of 33 U.S.C. § 2713] are mandatory conditions precedents to filing an action in either state or federal court."  *Id.* at 666; *see also Gabarick v. Laurin Maritime*

*(Am.) Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, at *2 ("Having failed to comply with § 2713(c)'s mandatory condition precedent to a lawsuit, claimants' OPA claims must be dismissed."); *Isla Corp. v. Sundown Energy, LP*, Civ. A. No. 06-8645, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007) ("Presentment of a claim in accordance with section 2713 is a 'mandatory condition precedent' for OPA claims."); *Turner v. Murphy Oil USA*, No. 05-4206, at 9-12 (E.D. La. Dec. 29, 2005) (BP's B1 Bundle Mot. to Dismiss, Ex. 19 (Doc. 1440-23)) ("Although Plaintiffs ask the Court to waive the notice requirement, the case law indicates that notice in the form of presentment of a claim is a 'mandatory condition precedent' to bringing suit under OPA."); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477-78 (E.D. La. 1996) (§ 2713 "mandates dismissal when that provision is applicable and not complied with by the claimant"); *United States v. Murphy Exploration and Prod. Co.*, 939 F. Supp. 489, 491-92 (E.D. La. 1996) (noting lack of support for Government's position that Section 2713's presentment requirement could be disregarded, but finding that stipulated facts showed that government had nonetheless fulfilled the requirement, so dismissal was not warranted).

Finally, the Mexican States' reliance on OPA Section 2717(f)(2) and its interpretation in *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1061-62 (N.D. Cal. 2008), is misplaced. The *Cosco Busan* court held that OPA Section 2717(f)(2)—providing that "an action may be commenced . . . for recovery of removal costs at any time after such costs have been incurred"—allows the U.S. government to bring an action for response costs without satisfying presentment. *See Cosco Busan*, 557 F. Supp. 2d at 1060-61. According to the Mexican States, "there is no practical or policy reason why [the *Cosco Busan* holding] should not also apply for foreign states." (Mex. States Br. at 42.)

The problem for the Mexican States is that the *Cosco Busan* court's reasoning is contrary to the plain language of the statute and would render the mandatory language of the presentment requirement meaningless in any action seeking removal costs.   The relevant language in 33 U.S.C. § 2717 does not address, much less alter, the presentment requirement; instead, it clarifies that although the three-year statute of limitations for removal costs under OPA does not begin to run "until after completion of the removal action," the cause of action nonetheless *accrues* before that time, assuming, of course, that other requirements such as presentment are also met.  *See California Dept. of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 915 n.5 (9th Cir. 2010) (analyzing virtually identical language in CERCLA; "[a]lthough these events trigger the statute of limitations, a remediator need not wait until removal is complete or remediation is initiated to file suit.  *A CERCLA recovery action accrues 'at any time after [recovery] costs have been incurred*.'") (alteration in original; emphasis added); *see also* 8 Bus. & Com. Litig. Fed. Cts. § 95:45 (2d ed.) ("The Oil Pollution Act of 1990 ("OPA") mirrors the provisions of CERCLA with respect to discharges of oil.").

In addition, the *Cosco Busan* court misreads the scope of 2717(f)(2) to apply only to *government* removal costs, whereas the statute actually refers to *all* removal costs defined in OPA under Section 2702(b)(1), including those incurred by "any person" consistent with the National Contingency Plan (NCP).  *Compare* 33 U.S.C. § 2702(b)(1)(B) (removal costs include those incurred by "any person" if "consistent" with the NCP) *with* 557 F. Supp. 2d at 1061 (Sections "2702(b)(1) and 2717( f)( 2) permit only the United States, a State, or an Indian tribe to bring an action at any time to recover removal costs.").  Section 2717(f)(2) must be understood to start the clock running for accrual purposes, not as an exception that swallows the presentment requirement rule.

Furthermore, the additional holding of the *Cosco Busan* court—permitting not only the United States' removal costs claims but also its damages claims to proceed without presentment—is not based on the statutory text (or even that court's erroneous interpretation of Section 2717). Instead the court permitted the damages claims to proceed "[i]n the interest of judicial economy," which only underscores the court's fundamental misreading of the statute and disregard of its terms. 557 F. Supp. 2d at 1062.

Finally, the Mexican States request that if the Court rules against them on presentment, it abate or stay their OPA claims until the States have satisfied presentment. This contravenes OPA's mandatory language requiring pre-suit presentment. Dismissal is required when the condition precedent of OPA presentment is not met. *Gabarick*, 2009 WL 102549, at *3 (holding that OPA claims must be "dismissed without prejudice, rather than stayed" when plaintiffs did not comply with OPA pre-suit presentment); *Abundiz v. Explorer Pipeline Co.*, No. Civ. A. 3:00-CV-2029-H, 2003 WL 23594054, at *3 (N.D. Tex. Mar. 7, 2003) (dismissing OPA claims because "a plaintiff's failure to make a proper presentment of OPA claims to a defendant before filing a lawsuit, is not amenable to cure by amending his presentment of claims during the pendency of the proceedings"); *see also Hallstrom*, 493 U.S. at 26 (holding that a 60-day stay of court proceedings would not cure a plaintiff's failure to wait 60 days after giving notice before filing a lawsuit; "[w]hether or not a stay is in fact the functional equivalent of a precommencement delay, such an interpretation . . . flatly contradicts the language of the statute…. Staying judicial action once the suit has been filed does not honor this prohibition.").

**B.      The Mexican States Have Not Alleged or Demonstrated Compliance with OPA's Additional Requirements for Foreign Claimants.**

The Mexican States concede that, because they are foreign claimants, OPA requires that they "shall demonstrate" that recovery is "authorized" by a treaty or executive agreement

between the United States and Mexico.   (Mex. States' Br. at 45 (citing 33 U.S.C. § 2707(a)(1)(B)).)   In their Opposition, the Mexican States cite four treaties that they contend "provid[e] for the protection of the environment" and thus "'authorize' their claims."   (Mex. States' Br. at 46.)

Leaving aside that the Mexican States' complaints fail to assert that there are any relevant treaties or executive agreements, the Mexican States even now do not point to any specific provision in any of the four agreements that authorizes recovery of removal costs or damages under OPA or any other law.   Nor can they—none of the three agreements to which the United States is a party contains such provisions.[10]   These agreements touch on certain environmental or boundary issues, but do not authorize recovery of removal costs or damages, as required by OPA if a foreign claimant is to recover.

In the Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances ("Hydrocarbon Pollution Agreement"), the United States and Mexico "agree[d] to establish a United States-Mexico joint contingency plan regarding pollution of the marine environment by discharges of hydrocarbons and other hazardous substances . . ., with the object of developing measures to deal with such polluting incidents and ensuring an adequate response."   32 U.S.T. 5899, 1981 WL 375827, at *2.   The Agreement does not

---

[10]   The 1992 Civil Liability Convention (the "1992 Convention") is not even "a treaty or executive agreement between the United States" and Mexico, because the United States is not party to the 1992 Convention.   (*See* Int'l Oil Pollution Compensation Funds website listing states party to the 1992 Convention, available at http://www.iopcfund.org/92members.htm (last visited June 14, 2011).   Accordingly, this instrument cannot authorize recovery within the meaning of OPA since OPA expressly limits its applicability to treaties or executive agreements to which the United States is a party.

authorize Mexican claimants to pursue damages under OPA or any other law, or otherwise mention compensation.[11]

In the Cartagena Convention, Mexico, the United States, and other parties agreed to "take all appropriate measures . . . to prevent, reduce and control pollution of the Convention area and to ensure sound environmental management, using for this purpose the best practicable means at their disposal and in accordance with their capabilities."   (Cartagena Convention. Art. 3, available at http://www.cep.unep.org/cartagena-convention (last visited June 14, 2011.)   The Cartagena Convention does not authorize recovery within the meaning of OPA.[12]

Finally, the Treaty on Maritime Boundaries between the United States of America and the United Mexican States, as its name implies, merely establishes the maritime boundaries between the two countries.  1978 U.S.T. LEXIS 320.  Establishment of these boundaries is its "sole purpose," *id.* at *12; it does not mention claims or similar matters and cannot be considered authorization for recovery.[13]

Even if the Mexican States could overcome the hurdles of presentment and an authorizing treaty or executive agreement—which they cannot—the states may not maintain their OPA claims for natural resource damages.  As BP explained in its opening brief, liability under OPA for natural resource damages is to the foreign country itself, not to a political

---

[11]   The later agreements related to the Hydrocarbon Pollution Agreement cited by the Mexican States likewise do not mention OPA or compensation.

[12]   The Cartagena Convention does provide that "[t]he Contracting Parties shall co-operate with a view to adopting appropriate rules and procedures, which are in conformity with international law, in the field of liability and compensation for damage resulting from pollution of the Convention area," art. 14, but such a promise to "co-operate" "to adopt[ ] appropriate rules" does not authorize recovery under OPA.  It simply evinces an intent to work together in the future to see if such rules and procedures might be developed.

[13]   33 U.S.C. § 2707(a)(1)(B) provides, alternatively, that a foreign claimant may pursue an OPA claim in the absence of a relevant treaty or executive agreement if the "Secretary of State … has certified that the claimant's country provides a comparable remedy for United States claimants."  No such certification has been pled or even suggested by the Mexican state plaintiffs, and to BP's knowledge no such certification has been considered by the Secretary of State, much less made.

subdivision, 33 U.S.C. § 2706(a)(4), and natural resource damages can only be requested by a "foreign trustee."  33 U.S.C. § 2702(b)(2)(A).  Although "[t]he head of any foreign government may designate the trustee who shall act on behalf of that government as trustee for natural resources under this Act," 33 U.S.C. § 2706(b)(5), the Mexican States do not allege that they were so designated by the president of Mexico.[14]

The Mexican States' reliance on the definition of "foreign claimant" likewise is misplaced.  (Mex. States' Br. at 46 (citing 33 U.S.C. § 2707(c)(3)).)  BP does not dispute that as to non-natural resource damages under OPA, the Mexican States fall within the definition of "foreign claimant" and could bring OPA claims for such damages, assuming other statutory requirements such as presentment and an authorizing treaty have been met—which they have not.  But as to natural resource damages, the Mexican States may not recover unless they demonstrate that they are a foreign trustee, which they fail to do.

The Mexican States' arguments that they are "assert[ing] *their* interests, claims, and requests for damages" (Mex. States' Br. at 46 (emphasis in original)), are therefore misguided.  Under OPA, the Mexican States have *no claims* for natural resource damages unless they are designated as foreign trustees by the head of the Mexican government.[15]

---

[14]   The Mexican States assert in their brief that their claims have "been the subject of conferring and consultation with the Republic."  (Mex. States Br. at 47.)  This bare assertion, which does not even appear in their pleading, is patently insufficient to demonstrate designation as foreign trustees.

[15]   The logic behind vesting all interest in a foreign country's natural resources with the country itself in the first instance is clear:  otherwise, a responsible party might be presented with competing claims for damages to the same natural resources and be faced with the task of determining which foreign political entity has a proper interest in such resources.  This task is better left to the foreign governments themselves.

IV.   **THE MEXICAN STATES' AND ALABAMA CITIES' CONCLUSORY ALLEGATIONS MUST BE DISREGARDED AND THEY HAVE NOT ALLEGED A PLAUSIBLE CLAIM FOR RELIEF.**

The Mexican States and the PSC do not dispute that OPA requires proof of causation. The Mexican States assert that they have adequately alleged proximate cause.  (Mex. States' Br. at 6.)  The PSC contends that causation is a very weak standard and that Congress intended OPA to reimburse claims by groups of plaintiffs not at issue in this motion.  (*See* PSC's Br. at 22 n.22.)  Both arguments fail.

A.   **The Mexican States' Response Confirms That They Cannot Plausibly Allege OPA Causation.**

In their Responses, the Mexican States recite the conclusory allegations of their complaint in an effort to establish OPA causation.  (*See* Mex. States' Br. at 8-10.)  None of these, however, contain facts entitled to belief for purposes of a motion to dismiss.  For example:

- "As a **direct and proximate result** of the mismanagement, omissions and negligence which permeated Defendants' operations and activities on and related to the Deepwater Horizon…, Plaintiff **has suffered** and in the future will suffer severe economic, environmental, and other damages as further set forth below.  (Par. 3 of Plaintiffs' Complaints)."  (Mex. States' Br. at 8 (emphasis in original).)

- "With the wellhead's prolonged gushing…into the waters of the Gulf of Mexico and/or the Caribbean, Plaintiff **has suffered, is suffering**, and will continue to suffer **serious financial losses and damages**, including, but not limited to, lost profits, incurred present and future expenses related to preventive measures and scientific studies, lost business, diminution of the tourist and related industries, and other damages and injuries.  (Par. 6, of Plaintiffs' Complaints)."  (*Id.*)

- "[Plaintiffs] rel[y] on the natural resources found in the Gulf of Mexico and Caribbean waters and such natural resources are **now damaged** and further endangered **by the wrongful acts** of Defendants.  (Par. 7, of Plaintiffs' Complaints)."  (*Id.*)

These are precisely the sorts of "labels and conclusions, and [] formulaic recitation of the elements of a cause of action" the Supreme Court rejected in *Bell Atlantic Corp. v. Twombly* as insufficient to meet plaintiff's obligation to show the "grounds" of its "entitle[ment] to relief." 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Thus, the Mexican State's OPA claim is legally insufficient on its face and failed to establish proximate cause.  Indeed, as BP pointed out in its opening brief, the Mexican States did not even allege that oil had reached their shores, let alone provide facts establishing actual harm from the oil spill.  (*See* BP's Mem. at 11.)

Tellingly, in their response the Mexican States do not point to ***any non-conclusory fact*** showing that they suffered any harm whatsoever, much less harm directly caused by the incident. Instead, they point out that that Mexico's waters are adjacent to the United States' (Mex. States' Br. at 7) and there is no physical barrier between the U.S. waters and Mexican waters.  (*Id.* at 14).  But the Mexican States' proximity to U.S. waters does not establish or suggest they were directly harmed by the oil spill.  At best, it suggests that the Mexican States *could have* suffered direct harm or *could have* suffered harm derivatively, from areas actually affected by the oil spill.  A mere possibility of harm, however, is plainly insufficient on a motion to dismiss. *Twombly*, 550 U.S. at 555 ("'[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action'") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see Iqbal*, 129 S. Ct. at 1950-51 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (affirming dismissal when necessary element of claim was supported only by conclusory allegations).[16]

---

[16]   For similar reasons, the Mexican States' and the PSC's attempt to avoid the economic loss rule also fails.  (Mex. States' Br. at 15-17; PSC's Br. at 37-40.)  Other than conclusory allegations, plaintiffs do not allege any harm to a proprietary interest caused by the oil spill.  The PSC's arguments also fail, as discussed in Section I.B of BP's B1 Reply (Doc. 2312).

Plaintiffs' failing is no mere technicality; it suggests they are **unable** to allege the facts necessary to state a claim.  Plaintiffs maintain these are issues to be developed at discovery or trial, "making a determination of proximate cause inappropriate at this stage" (Mex. States' Br. at 14)—all but admitting that the Mexican States cannot now allege facts showing a plausible claim for relief.  Equally important, the Mexican States are not entitled to any discovery unless and until they can adequately allege a right to relief.  According to the Supreme Court, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Twombly*, 550 U.S. at 558; *see also Iqbal*, 129 S. Ct. at 1950 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").    Regardless of the causation standard, the Mexican States have not alleged facts showing a plausible right to recovery under OPA and their complaint must therefore be dismissed.  *Id.*; *City of Clinton*, 632 F.3d at 155; *Sanford v. Louisiana*, 228 Fed. Appx. 492, 492-93 (5th Cir. 2007); *Hensley*, 2009 WL 2408319, at *2.[17]

**B.     The PSC Seeks a Lower Causation Standard on Behalf of Parties Not at Issue in this Motion.**

The PSC neither represents the parties whose complaints are at issue in BP's motion nor connects its arguments to the complaints filed by the Mexican States and Alabama Cities.  The PSC's arguments, which focus on parties not at issue in this motion, are hence irrelevant to the question whether the Mexican States and Alabama Cities have adequately alleged OPA causation.  Regardless, the PSC's arguments lack merit.

---

[17]   The Alabama Cities did not respond to BP's motion, but their complaint fails for similar reasons.  They have not alleged, and cannot show, that they lost revenues as a "result" of the oil spill or "due to the injury, destruction, or loss of real property, personal property, or natural resources."  For example, they cannot and do not explain how such an "injury, destruction, or loss" directly and proximately caused any lost revenues over 100 miles away.  (*See* BP's Bundle C Mem. (Doc. 1786-1) at 12.)  By itself, this glaring failure shows that the Alabama Cities have no valid claim.

*First*, the PSC asserts it is inappropriate on a motion to dismiss to decide "the extent to which these governmental entities incurred response costs or suffered loss of tax revenue." (PSC's Br. at 21.)   But BP has not raised any issue about "the extent" of the entities' losses. Rather, BP's arguments are directed at testing the sufficiency of plaintiffs' factual allegations to show proximate cause.   And if plaintiffs cannot allege facts showing proximate causation, a motion to dismiss is exactly the right time to decide that issue.

*Second*, the PSC's assertion that the causation standard under OPA is "clearly more relaxed than traditional concepts" is both unsupported and misleading.   It ignores the statute's express requirement that damages "result from" an oil spill and also be "due to" injury to property or a natural resource.   And their assertion that the "prevailing default test for factual causation is the but-for test," is of little help because proximate cause is entirely distinct from "factual causation"—a point made abundantly clear in comment (a) of the Restatement section the PSC relies on.   *See* Restatement (Third) Torts § 26 cmt. (a) (noting that "factual cause" and proximate cause are "two distinct inquiries"); (*cf.* PSC's Br. at 21 n.21 (citing Restatement § 26 and cmt. (b).   The reference to a "mere 'threat' of an oil spill," is also misleading because no one is suggesting that proximate cause would not be satisfied by harm directly caused by a threatened spill.   In either case, proximate cause would require a direct connection between the ***actual*** (not threatened) harm and the oil spill or threatened oil spill.   *See* 33 U.S.C. § 2702(b) .

*Third*, the PSC's selective citation to snippets of OPA's legislative history—while ignoring the plain language of the Act itself—reveals nothing about Congress' intent concerning causation.   For example, the PSC asserts that Congress considered and rejected language that would have imposed stricter causation standards but a statute's drafting history is notoriously unreliable in discerning legislative intent.   *See Dist. of Columbia v. Heller*, 554 U.S. 570, 590

(2008) ("[i]t is always perilous to derive the meaning of an adopted provision from another provision deleted in the drafting process."). The PSC's principal point is that Congress "specifically referred to broad classes of individuals" who had been affected by an oil spill. (PSC's Br. at 24) From this, the PSC concludes that "Congress intended those parties be compensated for their damages" and thus presumably authorized a weak causation standard under OPA. (*E.g.*, PSC's Br. at 24 & *id.* n.25.) But the PSC's point is built on statements of individual members of Congress—another unreliable indicator of Congressional intent. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980) ("the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history"); *Monterey Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 743 F.2d 589, 596 (7th Cir. 1984) ("remarks of a single legislator, even a sponsor or conferee, do not control the analysis of legislative history"); *cf. Matter of Sinclair*, 870 F.2d 1340, 1343 (7th Cir. 1989) ("Often there is so much legislative history that a court can manipulate the meaning of a law by choosing which snippets to emphasize"). And the statements of various members of Congress about what particular groups may have experienced is utterly remote from the PSC's conclusion about what Congress intended the causation standard to be.[18]

---

[18] The PSC omits that other pieces of the legislative history tell a different story. For example, a statement by Representative Strangeland during the House hearings on the adoption of the Conference Report confirms that Congress did not intend to impose unlimited liability: "Throughout development of H.R. 1465, bill sponsors and conferees have been concerned about opening up *a floodgate of meritless lawsuits by plaintiffs seeking recovery of speculative damages. The conferees do not intend for such results to occur*. Documentation of prior profits and earnings should be evidenced to support claims for lost profits and diminished earning capacity. In addition, any plaintiff or claimant under this act is obligated to meet his or her duty to mitigate damages. *See* 136 CONG. REC. H6933, H6939 (Aug. 3, 1990) (emphasis added); *see also* H. Rep. No. 101242, Part 2, at 56 ("The Committee intends that this section [the Senate version of Section 2702(a)] will be strictly interpreted in a manner so that *speculative costs and damages will not be permitted*.") (emphasis added).

The issue on this motion is whether the Mexican States and Alabama Cities have adequately alleged proximate cause.  They have not and their OPA claims should be dismissed.

## CONCLUSION

Federal law applies exclusively to claims arising from an oil spill on the Outer Continental Shelf and preempts plaintiffs' state law claims.  The plaintiffs' Oil Pollution Act claims also fail because plaintiffs failed to fulfill the statute's mandatory requirements (including presentment) and have not alleged facts showing harm proximately caused by the oil spill.  BP therefore respectfully asks this Court to dismiss the complaints of the Mexican States, the Alabama Cities, and the Louisiana District Attorneys in their entirety.

Date: June 14, 2011                          Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Elizabeth A. Larsen
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

**Attorneys for BP Exploration & Production
Inc. and BP America Production Company**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of June, 2011.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft