**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| No. 10-4239; No. 10-4240; No. 10-4241 | * | |
| * * * * * * * * * * * * | | |

**REPLY IN SUPPORT OF MOTION OF DEFENDANT**
**ANADARKO PETROLEUM CORPORATION TO DISMISS**
**THE COMPLAINTS OF THE MEXICAN STATES ["PLEADING BUNDLE C"]**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 3

    A.      OPA Alone Governs the Mexican States' Claims, and Their State Law
        Claims Must be Dismissed .......................................................................... 3

        1.      OCSLA Mandates the Exclusive Applicability of Federal Law in
            this Case ............................................................................................ 4

        2.      There Is No Factual Dispute that the Deepwater Horizon Was an
            OCSLA Situs under Section 1333(a)(1) ................................................ 7

    B.      The Mexican States Fail to Satisfy the Mandatory Pre-Suit Requirements
        for Filing a Claim Under OPA, and Their Claims Must Be Dismissed ................. 8

        1.      The Mexican States' OPA Claims Must Be Dismissed Because
            They Do Not Allege Compliance with OPA's Pre-Suit Presentment
            Requirement ..................................................................................... 8

        2.      The Mexican States' OPA Claims Must Be Dismissed Because the
            Mexican States are Foreign Claimants and Have Not Alleged any
            Treaty or Executive Agreement Permitting Them to Recover
            Under OPA ....................................................................................... 11

    C.      Even If the Mexican States' Claims Were Not Preempted, Their Claims
        Under Maritime or State Law Must Be Dismissed ............................................. 14

        1.      The Complaints Do Not Clear the Low Bar Set by Rule 8(a) ................. 14

        2.      The Mexican States Fail to State Cognizable Claims for
            Negligence Per Se ............................................................................. 15

        3.      The Mexican States Fail to State Cognizable Claims for Private
            Nuisance Against Anadarko .............................................................. 18

        4.      The Economic Loss Rule Precludes the Mexican States' Recovery
            Under Maritime and State Law .......................................................... 21

III.    CONCLUSION ................................................................................................... 21

**MAY IT PLEASE THE COURT:**

## I.   INTRODUCTION

Defendant Anadarko Petroleum Corporation ("Anadarko") respectfully submits this Reply in support of its Motion to Dismiss the First Amended Complaints of the three Mexican States: Veracruz, Tamaulipas, and Quintana Roo (together "Mexican States"), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  In Anadarko's Motion to Dismiss, Anadarko made three primary arguments:

> (1)   All of the Mexican States' state law claims must be dismissed because state law does not apply to this case under the Outer Continental Shelf Lands Act ("OCSLA") choice of law rules and as a matter of preemption;

> (2)   The Oil Pollution Act ("OPA") provides the only potential remedy for the Mexican States, but the Mexican States' OPA claims fail because they do not allege compliance with OPA's pre-filing presentment requirement and do not address special OPA requirements that foreign claimants must prove, and;

> (3)   Even under state law or general maritime law, the Mexican States' claims fail because they do not allege in more than the barest of conclusory terms that Anadarko exercised operational control over any activity or instrumentality that allegedly caused the Mexican States harm.

The Mexican States responded by both filing an Opposition to the Motion to Dismiss ("Opp.") (Rec. Doc. 1820) and by seeking leave to amend their deficient complaints in an attempt to address Anadarko's and others' arguments. (Rec. Doc. 2150).  The Court denied leave to amend.  (Rec. Doc. 2403).  This Reply responds to the Mexican States' arguments in their Opposition, and demonstrates that (1) state law claims and remedies are unavailable under

---

[1]   Anadarko E&P Company LP and MOEX Offshore 2007 LLC joined in Anadarko's Memorandum in Support of Motion to Dismiss (Rec. Doc. 1426), which also sought dismissal of the September 9, 2010 complaint filed against all three defendants (collectively the "Non-Operating Defendants") by the City of Greenville, the City of Evergreen, the City of Georgiana, and the Town of McKenzie (together "Cities").  Subsequently, the Cities dismissed their separate complaint.  Accordingly, this Reply is limited to the Mexican States' opposition brief and is submitted by Anadarko only, as Anadarko E&P and MOEX Offshore 2007 LLC are not named as Defendants in the Mexican States' First Amended Complaints.

OCSLA and in accordance with federal preemption principles; (2) the Mexican States fail to allege compliance with OPA's mandatory pre-suit presentment requirement and other requirements applicable to foreign claimants; and (3) even if state law or maritime law applied, the Mexican States' allegations against Anadarko are insufficient to state viable claims.

## II.   ARGUMENT

### A.   OPA Alone Governs the Mexican States' Claims, and Their State Law Claims Must be Dismissed.

As demonstrated in Anadarko's Motion to Dismiss, state law does not apply to this case because, under OCSLA's mandatory choice of law provisions, federal law applies to the exclusion of state law.[2]  The applicable federal law is OPA.  The Mexican States first attempt to resurrect their state law causes of action by refuting an argument that Anadarko does not make: that OPA preempts state law.  Opp. at 10.  The Mexican States then attempt to avoid the conclusion that OCSLA mandates the exclusive application of federal law to this case by erroneously contending that OCSLA's applicability remains a matter of factual dispute.  Both arguments are meritless.

### 1.   OCSLA Mandates the Exclusive Applicability of Federal Law in this Case.

As argued in the Non-Operating Defendants' Consolidated B1 and B3 Reply (Rec. Doc. 2088) which is incorporated expressly herein, all cases arising under OCSLA Section 1333(a)(1) are subject to the exclusive sovereignty and regulation of the federal government and are governed only by federal law and, sometimes, by state law as surrogate federal law.  Rec. Doc. 2088 at 4-7. OCSLA Section 1333(a)(1) subjects the soil and subsoil of the OCS and all

---

[2]      Anadarko incorporates by reference all arguments made in the "Consolidated Reply to the Plaintiffs' Steering Committee's Omnibus Oppositions to Defendants' Motion to Dismiss the Master Complaints for Pleading Bundles B1 and B3" ("Consolidated B1 and B3 Reply") (Rec. Doc. 2208) into

(Footnote Continued on Next Page.)

extraction operations performed there to exclusive federal jurisdiction and control.  It provides:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

The purpose of Section 1333(a)(1) is "'to assert the exclusive jurisdiction and control of the Federal Government of the United States over the seabed and subsoil of the outer Continental Shelf, and to provide for the development of its vast mineral resources.'" *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479–480 & n.7 (1981) (quoting S. REP. NO. 83-411, at 2 (1953)).  Thus, "[a]ll law applicable to the Outer Continental Shelf is federal law," and all cases "involving events occurring on the Shelf [are] governed by federal law . . . ." *Id.* at 480–81. The consequence of Section 1333(a)(1) is that state law does not and cannot apply of its own force to cases arising from events on a 1333(a)(1) OCSLA situs.  *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969); *see also Olsen v. Shell Oil Co.*, 708 F.2d 976, 980 n.2 (5th Cir. 1983); *cf. Paul v. United States*, 371 U.S. 245, 268 (1962).

The Mexican States fail to confront the consequences of Section 1333(a)(1), and instead construct a straw man argument.  They contend that Anadarko's choice of law analysis rests on two "untenable propositions: 1) that OPA preempts all state law claims [which it does not]; and 2) that OCSLA is the only applicable federal jurisdictional basis herein [which it is not]."  Opp. at 9.  In fact Anadarko argues <u>neither</u>, and as a result the Mexican States' Opposition is largely *non sequitur*.

---

(Footnote Continued from Previous Page.)

this Reply.

In arguing that OPA does not preempt their state law claims, the Mexican States contend that OPA's savings clause permits them to bring claims under state law, and that excluding state law under OCSLA would be inconsistent with OPA.  The plain text of OPA's savings clause belies this notion.  By its own terms, OPA's savings clause saves state law from preemption only by OPA itself; it has no impact on OCSLA or general principles of federal preemption.[3] Because it is OCSLA—not OPA—that precludes application of state law, OPA's savings clause is irrelevant.  *See* 33 U.S.C. § 2718.  Furthermore, by its plain language, OPA saves only state law remedies that might otherwise be available; it does not open up new areas to state remedies where none previously existed.  *See* 33 U.S.C. § 2718(a) (OPA does not "affect . . . the authority of any State . . . from imposing any additional liabilities . . . or affect . . . in any way the obligations or liabilities of any person under . . . State law, including common law") (emphasis added).

Anadarko does not contend that OCSLA is the only applicable jurisdictional basis for this case, nor does it have to for OCSLA's choice of law provisions to govern and oust state law. The Fifth Circuit has held that even where there are multiple bases for federal jurisdiction over a case, where there is OCSLA jurisdiction under Section 1349, Section 1333's substantive law provisions in turn apply.  *See Bartholomew v. CNG Producing Co*., 832 F.2d 326, 328 (5th Cir. 1987) (even where both parties asserted diversity jurisdiction, "[s]ince the accident occurred on an offshore platform located on the outer Continental Shelf, the appropriate basis for jurisdiction for this claim is the OCSLA; therefore the applicable law in the instant case is defined" by

---

[3]     *See* Consolidated Memorandum of Law in Support of Motions of Defendants Anadarko Petroleum Corporation, Anadarko E&P Company LP, and MOEX Offshore 2007 LLC to Dismiss the Complaints of the Alabama Cities and the Mexican States ["Pleading Bundle C"] ("Memorandum of Law in Support of Motion to Dismiss") (Rec. Doc. 1426) at 10.

Section 1333); *see also EP Operating LP v. Placid Oil Co.*, 26 F.3d 563, 569 & n.14 (5th Cir. 1994) ("the most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333"); *Toussaint v. Chevron Phillips Chem. Co.*, 2006 WL 2349465, at *2 (E.D. La. Aug. 11, 2006) (when a "case arises in connection with a mineral production operation on the Outer Continental Shelf[,] it falls within the scope of OCSLA," and Section 1333 "in turn" applies).   Accordingly, the Mexican States' invocation of other jurisdictional bases for their claims simply has <u>no impact</u> on the choice of law, and their state law claims must be dismissed.

For the same reasons, there is no merit to the Mexican States' argument that actions or omissions that "occurred away from the [OCS site]," Opp. at 19, such as the use of dispersants or decisions regarding design or the well or its components, are not controlled by Section 1333(a)(1).   *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n. 8 (1981) (noting that "OCSLA does supersede the normal choice of law rules that the forum would apply").   As demonstrated in the Non-Operating Defendants' Consolidated B1 and B3 Reply (Rec. Doc. 2088 at 4-6), even if the Mexican States alleged that their injuries occurred in state territorial waters or otherwise off of the OCS (they do not), the case still would be subject to exclusive federal law under Section 1333(a)(1).   *See also* Memorandum of Law in Support of Motion to Dismiss at 11–17.

### 2.   There Is No Factual Dispute that the *Deepwater Horizon* Was an OCSLA Situs under Section 1333(a)(1).

Contrary to their assertion, "whether the *Deepwater Horizon* was a 'vessel' or an artificial island 'attached' to the seabed" is manifestly <u>not</u> a matter of "sharp dispute" in this case.  Opp. at 24.  The *Deepwater Horizon* was at all times a vessel as a matter of well settled Fifth Circuit law.  *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 498 (5th Cir. 2002)

(concluding that OCSLA applied when an injury arose on vessel temporarily attached to OCS). It is also well established that a vessel such as the *Deepwater Horizon* is an OCSLA situs under Section 1333(a)(1) when it is "temporarily affixed to the [OCS] seabed . . . for the purpose of exploring for, developing, or producing resources therefrom . . . ." *Id.* Thus, the Mexican States' argument that whether the *Deepwater Horizon* is a vessel or an OCSLA situs is a factual matter to be determined by discovery is based entirely on a false premise. Vessels can be, and often are, OCSLA situses.

Even if the status of the *Deepwater Horizon* was seriously disputed by some other litigant (it is not) the <u>Mexican States</u> do not dispute that the *Deepwater Horizon* was a vessel, they expressly invoke OCSLA jurisdiction, and they specifically allege that the *Deepwater Horizon* was temporarily attached to the seabed in their Complaints when they refer to the *Deepwater Horizon's* "riser pipe carrying oil to the ocean surface from below the sea floor . . . ." *See, e.g.*, Veracruz First Amend. Compl. at ¶ 3.[4] Thus, the Mexican States admit all facts necessary for the Court to conclude as a matter of law that the *Deepwater Horizon* was an OCSLA 1333(a)(1) situs at the time of the incident allegedly giving rise to the Mexican States' claims.

B.     **The Mexican States Fail to Satisfy the Mandatory Pre-Suit Requirements for Filing a Claim Under OPA, and Their Claims Must Be Dismissed.**

Because federal law alone governs the Mexican States' Claims, OPA provides their only remedy. Yet the Mexican States: (1) fail to comply with OPA's pre-suit presentment requirement, and (2) fail to comply with OPA's requirement that foreign claimants allege the

---

[4]     Because the three Mexican States' Complaints are virtually identical, even down to the enumeration of substantive allegations, this Reply cites only the First Amended Complaint of the State of Veracruz.

existence of a treaty or executive agreement permitting them to make claims under OPA, or allege any certification by the Secretary of State that Mexico provides a reciprocal remedy. Because the Mexican States fail to meet these conditions precedent to bringing suit under OPA, their claims must be dismissed.

> **1.      The Mexican States' OPA Claims Must Be Dismissed Because They Do Not Allege Compliance with OPA's Pre-Suit Presentment Requirement.**

The Mexican States' OPA claims must be dismissed because they do not allege compliance with OPA's mandatory presentment requirement.  The Mexican States argue that the Court should waive the mandatory presentment requirement for two reasons, both of which are contrary to established law.

First, the Mexican States contend that the mandatory presentment requirement should be excused because presentment would be "futile."  Opp. at 26.  There is no futility exception to OPA's presentment requirement.  "[T]he clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims . . . ." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995).  Even if there were such an exception, the Mexican States make no serious effort to demonstrate futility. They argue that presentment would be futile because "Anadarko does not assert that it would pay any claim that would be presented to it by Plaintiffs."[5]  Opp. at 26.  Anadarko does not argue that the Mexican States must present their claims to Anadarko.  As the Mexican States allege, "[t]he U.S. Coast Guard has designated BP and Transocean as the responsible parties under the

---

[5]      Furthermore, OPA does not require that a responsible party pay "<u>any</u> claim presented to it," as the Mexican States suggest, and that cannot be the basis for demonstrating futility.  Presentment is intended to facilitate settlement discussions, and the claimant must submit sufficient evidence to demonstrate an entitlement to recovery under OPA; just "<u>any claim</u>" will not suffice.

Federal Oil Pollution Act," and BP has established a well publicized claims procedure of which the Court may take judicial notice. Veracruz First Amend. Compl. at ¶ 70. The Mexican States must present their claims to the <u>designated</u> responsible party.

Second, the Mexican States contend that OPA's presentment requirement is not jurisdictional and is instead a claims-processing rule, but that distinction has no substance. Opp. at 26–33. Courts in this and other circuits have held that OPA's presentment requirement is jurisdictional in nature.[6] Those courts that have declined to apply the jurisdictional label have instead characterized presentment as "a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims . . . ."[7] Whatever label is applied, every court to consider the issue has held that an OPA claim must be dismissed unless and until the claimant has properly presented its claims and awaited either denial of the claim or the statutory 90 days. The Mexican States cite no authority to the contrary, and there is none.

Contrary to the Mexican States' contention, *U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008), even if decided correctly, would not excuse the Mexican States from the

---

[6]     *See Gabarick v. Laurin Mar. (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009) (describing presentment as a "jurisdictional condition precedent"); *Eastman v. Coffeyville Res. Ref. & Mktg., LLC*, No. 10-1216-MLB-KGG, 2010 WL 4810236, at *2 (D. Kan. Nov. 19, 2010) (holding "the court lacks subject matter jurisdiction over any claim brought under the OPA" where plaintiffs fail to comply with the presentment requirement); *Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *2 (N.D. Cal. Apr. 29, 2010) (citing, *inter alia*, *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018 at, *5 (N.D. Tex. Nov. 25, 2003)); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp 309, 311 (E.D. Va. 1993) (describing lack of presentment as a "profound jurisdictional defect"); *see also* STACY L. DAVIS ET AL., 11A FED. PROC., L. ED., § 32:1054 (2011) (describing presentment as a jurisdictional requirement and citing *Boca Ciega*, 51 F.3d 235).

[7]     *Boca Ciega*, 51 F.3d at 240 (affirming dismissal of OPA claims for failure to present); *see also Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 665 (E.D. La. 1998) (following *Boca Ciega* and holding that OPA presentment is a mandatory condition precedent); *Turner v. Murphy Oil USA*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (declining to waive presentment requirement, holding that "the case law indicates that notice in the form of presentment of a claim is a mandatory condition to bringing suit under the OPA") (internal citations omitted).

presentment requirement.  In that case, the U.S. Government filed suit for removal costs under OPA.  The defendants argued that the U.S. Government had not complied with OPA's presentment requirements and that the court should dismiss its claim.  The court (erroneously) held that 33 U.S.C. § 2717(f)(2) permitted the U.S. Government to bring an action "at any time" for removal costs, and that therefore the U.S. Government was not required to comply with the presentment requirement.  *Id.* at 1061.[8]  In so holding, the court held that the "at any time" language in § 2717(f)(2) applied only to the "recovery of removal costs referred to in section 2702(b)(1)," and that § 2702(b)(1) applied only to "removal costs incurred by the United States, a State, an Indian tribe, or a person acting pursuant to the National Contingency Plan" that was "prepared and published by the President."  *Id.* (citations and internal quotation marks omitted). The *M/V Cosco Busan* case thus offers the Mexican States no assistance in avoiding the presentment requirement.  The Mexican States, as foreign claimants, are not a "state" as defined by OPA, 33 U.S.C. § 2701(36), and, in any event, have alleged no basis for claiming recovery of "removal costs."

    The Mexican States alternatively argue that if the Court finds that presentment is required, "the appropriate course would be to abate or stay the OPA claims until such time as Plaintiffs have made their presentation."  Opp. at 33.  That approach is contrary to law and would eviscerate the purpose of the presentment requirement in encouraging pre-litigation settlements. As the court in *Boca Ciega* held, the only correct remedy for failure to present is dismissal.  "[I]f and when [plaintiffs] comply" with the presentment requirement, then they can refile their OPA

---

[8]      A full discussion of the court's opinion in *M/V Cosco Busan* is beyond the scope of this Reply. Anadarko respectfully submits that the case was wrongly decided and that, like any other claimant, the United States and other governmental entities are not exempt from the mandatory pre-suit presentment requirement.  Solely for purposes of this Reply, even if *M/V Cosco Busan* was decided correctly, it is of no help to the Mexican States.

claim.  *Boca Ciega*, 51 F.3d at 240; *see also Abundiz*, 2003 WL 23594055, at *3; *Gabarick*, 2009 WL 102549, at *3 (holding that plaintiffs' claims "must be dismissed"); *Turner*, 2007 WL 4208986, at *2 (dismissing for failure to comply with OPA's presentment requirement and permitting refiling only "if and when" plaintiff complied).

> **2.      The Mexican States' OPA Claims Must Be Dismissed Because the Mexican States are Foreign Claimants and Have Not Alleged any Treaty or Executive Agreement Permitting Them to Recover Under OPA.**

The Mexican States' OPA claims also fail to satisfy OPA section 2707(a)(1)(B), which provides that "a foreign claimant shall demonstrate that . . . recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or [that] the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." 33 U.S.C. § 2707(a)(1)(B).  The Mexican States do not contend that the Secretary of State has provided the required certification.  Instead, they list four agreements and treaties and assert without explanation that these agreements authorize their recovery of removal costs or damages under OPA.  Opp. at 34.  This effort fails from the outset, because the fatal defects in the Mexican States' allegations cannot be cured by new contentions in response to a motion to dismiss.  *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("Normally in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint.").  Nevertheless, even if the Court considers the treaties and agreements that the Mexican States' now contend permit their OPA claims, in fact none of them does.

The Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32

U.S.T. 5899, does not purport to deal with the recovery of removal costs or damages.  Rather, that treaty constitutes an agreement to establish a joint contingency plan for oil spills, "with the object of developing measures to deal with such polluting incidents and ensuring an adequate response . . . ."  *Id.*, Art. I.  It says nothing at all about the recovery of removal costs or damages. The resulting joint contingency plan, called the MEXUS Plan, is similarly silent with respect to the recovery of removal costs or damages.[9]  According to the MEXUS Plan, its only purpose is to "provide standard operational procedures, in accordance with the 1980 Agreement, to coordinate bilateral responses . . . ."  *Id.* § 105.

The MEXUS Plan's Annex for the Gulf of Mexico Region also says nothing about the recovery of removal costs or damages and states that the purpose of the annex is "to augment the MEXUS Plan with regional details."[10]  The Annex "provides standard operational procedures with respect to coordination, planning, logistics, and response in case of pollution incidents . . . ." *Id.*  It does not authorize the recovery of removal costs of damages, which the Mexican States must show to satisfy OPA § 2707(a)(1)(B).

Nor do the Cartagena Convention and its accompanying Oil Spill Protocols purport to authorize the recovery of removal costs or damages.[11]  Like the MEXUS Plan, the Cartagena Convention focuses on the prevention, reduction, and control of pollution using "the best

---

[9]     The Joint Contingency Plan Between the United Mexican States and The United States of America Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances, U.S.-Mex., Feb. 25, 2000, *available at* http://www.epa.gov/region6 /6sf/pdffiles/mexusplan.pdf.

[10]     Letter of Signature, ¶ 1, Annex of the Joint Contingency Plan Between the United Mexican States and the United States of America Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons or Other Hazardous Substances, U.S.-Mex., Nov. 7, 2007, available at http://www.rrt9.org/external/content/document/2763/540935/1/ 2007%20MEXUSGULF%20Annex.pdf.

[11]     Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean

(Footnote Continued on Next Page.)

practicable means[.]"  Convention, Art. 4.  Parties to the convention are required to establish measures for cooperating in emergencies, planning development along the coastline, and undertaking scientific and technical research.  *Id.*, Art. 11–13.  Article 14 of the Convention, which covers "Liability and Compensation," says only that "[t]he Contracting Parties shall co-operate with a view to adopting appropriate rules and procedures, which are in conformity with international law, in the field of liability and compensation for damage resulting from pollution of the Convention area."  In other words, the Cartagena Convention does not authorize recovery; rather, it carves out that subject for some other law to address.  The Oil Spill Protocol of the Cartagena Convention says nothing about cost recovery or liability and requires only that the parties cooperate in establishing preventative and remedial measures and the development of response a plan, and in reporting information regarding oil spills.  *Id.*, Oil Spill Protocol, Art. 3–4.

To the extent that the Mexican States' ambiguous citation to the "1992 Civil Liability Convention" refers to the 1992 International Convention on Civil Liability for Oil Pollution Damage, that convention also does not avail them.  The United States has not ratified that treaty, its predecessors, or its attendant protocols.[12]  Absent ratification by the United States, the convention is not "a treaty . . . between the United States and the claimant's country," as required by OPA.  33 U.S.C. § 2707(a)(1)(B).

---

(Footnote Continued from Previous Page.)

Region, Mar. 24, 1983, T.I.A.S. No. 11,085 (hereinafter "Cartagena Convention").

[12]    INTERNATIONAL MARITIME ORGANIZATION, STATUS OF MULTILATERAL CONVENTIONS AND INSTRUMENTS IN RESPECT OF WHICH THE INTERNATIONAL MARITIME ORGANIZATION OR ITS SECRETARY-GENERAL PERFORMS DEPOSITARY OR OTHER FUNCTIONS, May 31, 2011 at 224 (noting that the United States has not ratified the convention), *available at* http://www.imo.org/About/Conventions/StatusOfConventions/Documents/Status%20-%202011.pdf.

Finally, the Treaty on Maritime Boundaries between the United States of America and the United Mexican States does not authorize the recovery of removal costs or damages. U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978).  Article III of the treaty states the following:

> The sole purpose of this Treaty is to establish the location of the maritime boundaries between the United States of America and the United Mexican States. The maritime boundaries established by this Treaty shall not affect or prejudice in any manner the positions of either Party with respect to the extent of internal waters, of the territorial sea, of the high seas or of sovereign rights or jurisdiction for any other purpose.

*Id.* (emphases added).   That treaty provides no authorization for the Mexican States' OPA claims.

The Mexican States have identified no treaty or executive agreement that satisfies OPA § 2707(a)(1)(B).  Their OPA claims must therefore be dismissed.

**C.     Even If the Mexican States' Claims Were Not Preempted, Their Claims Under Maritime or State Law Must Be Dismissed.**

**1.     The Complaints Do Not Clear the Low Bar Set by Rule 8(a).**

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The Mexican States have not satisfied this minimal notice-pleading standard.  They respond to Anadarko's arguments by referring to the same single vague and conclusory allegation that Anadarko "in whole or in part, owned, controlled, managed, supervised, and/or oversaw Deepwater Horizon and the well that is the subject of this suit."  Veracruz Compl. at ¶ 21.  As discussed at length in Anadarko's moving papers, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added).  The Complaints set forth no factual content tending to show that any agent or employee of Anadarko controlled, managed, supervised, and/or oversaw the *Deepwater Horizon*.

Anadarko further argued that the Mexican States' Complaints fail notice pleading requirements because they are replete with general, undifferentiated allegations that lump together entities that are differently situated into the term "Defendants."  Memorandum of Law in Support of Motion to Dismiss at 25 (citing, *inter alia*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).  In their response, the Mexican States again refer to the same generic allegations and provide no notice of what, if any, conduct Anadarko is alleged to have engaged in causing the Mexican States' alleged injuries. Opp. at 38 (quoting Complaint at ¶ 32).  Under *Magluta* and other cases already cited by Anadarko, the Mexican States have not satisfied Rule 8.

### 2.    The Mexican States Fail to State Cognizable Claims for Negligence *Per Se*.

The Mexican States' claims for negligence *per se* are defective because they do not identify any statute or regulation that Anadarko supposedly violated.  *See Marshall v. Isthmian Lines, Inc*., 334 F.2d 131, 134 (5th Cir. 1964) (maritime law).  In their Opposition, the Mexican States contend that they should not be required to identify any particular statutes or regulations at the pleading stage because to do so would be premature.  Opp. at 40–41.  Courts have squarely rejected this contention: "[w]here plaintiff fails to identify the statute upon which the [negligence *per se*] claim is based, it is impossible to determine if the plaintiff was in a class sought to be protected by the statute or whether the injury suffered by the plaintiff was the type of injury the statute was designed to prevent.  It is also impossible to assess whether the defendant breached a duty imposed by statute."  *Anchundia v. Northeast Utils. Serv. Co.*, No. CV 07-4446(AKT), 2010 WL 2400154, at *5 (E.D.N.Y. June 11, 2010); *see also Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1243–44 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se*").

14

The Mexican States also list six statutes in their Opposition that they argue potentially could form the basis of a negligence *per se* claim.  Opp. at 41.  They offer no explanation of exactly how those statutes could form the basis of a negligence *per se* claim and identify no facts that would be relevant to those statutes.  Nevertheless, even considering the proposed statutes, each fails to support a negligence *per se* claim as a matter of law.

First, even if state law applied (it does not), the Mexican States cannot base a negligence *per se* claim on the Texas Oil Spill Prevention and Response Act of 1991 ("TOSPRA"), TEX. NAT. RES. CODE ANN. §§ 40.001–40.304, because the Mexican States do not fall within the class of persons intended to be protected by TOSPRA.  *See Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App 2000); *see also* TEX. NAT. RES. CODE ANN. § 40.002(a) and (b) (establishing that TOSPRA is intended to preserve and protect the Texas Coast and Texas's natural resources, for the benefit of citizens of the state).

Second, OPA cannot support a claim of negligence *per se*.  As set forth above, the Mexican States have not satisfied OPA's mandatory presentment requirement and cannot avoid OPA's statutory requirements by means of a negligence *per se* claim.  Moreover, OPA specifically defines the class intended to be protected, and <u>excludes</u> foreign claimants—such as the Mexican States—when there is no treaty that extends OPA's protection to them, and no certification by the Secretary of State of reciprocal remedies.  33 U.S.C. § 2707(a)(1)(B).

Third, the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP") also cannot form the basis of a negligence *per se* claim.  The Clean Water Act requires the President to publish the NCP "for removal of oil and hazardous substances . . . ."  33 U.S.C. § 1321(d).  The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") requires the President to "revise and republish" the NCP "to reflect and effectuate

the responsibilities and powers created by [CERCLA]."  42 U.S.C. § 9605(a); *see also* 40 C.F.R. § 300.2 (stating that these provisions of the Clean Water Act and CERCLA authorize the promulgation of the NCP).  Neither the CWA nor CERCLA provides a private right of action under the NCP.  As noted, there is no private right of action to sue under the Clean Water Act, which precludes the indirect creation of such a right of action under the negligence *per se* doctrine.  Nor does CERCLA include a private right of action under the NCP.  *See* 42 U.S.C. §§ 9607(a), 9613(f); *Miller v. E.I. Du Pont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994) (when Congress does not provide a private right of action, courts will not do so indirectly via a negligence per se claim).

Fourth, even if state law applied (which it does not), the Mexican States cannot base a negligence *per se* claim on the Florida Pollutant Discharge Prevention and Control Act ("FPDPCA"), FLA. STAT. §§ 376.011–376.21, because the Mexican States are not members of the class that the FPDPCA is designed to protect.  *Compare Lingle v. Dion*, 776 So. 2d 1073, 1077 (Fla. Dist. Ct. App. 2001) ("[A] cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, <u>of which the plaintiff is a member</u>, against a particular type of harm") (emphasis added) (citation and internal quotation marks omitted), *with* FLA. STAT. §§ 376.021(1) and (3)(b) (the statute is designed to protect "the seacoast of the state [of Florida]," the "environment of the state," the "citizens of the state," and "the beauty of the Florida coast.").

Finally, even if state law applied, the Mexican States cannot premise a negligence *per se* claim on the Louisiana Oil Spill Prevention and Response Act ("LOSPRA"), LA. REV. STAT. ANN. §§ 30:2451–2496, because they are not members of the class that the statute is intended to protect.  *See Spradlin v. Acadia-St. Landry Med. Found.*, 711 So. 2d 699, 701 (La. Ct. App.

1998).  The purpose of LOSPRA is "to protect, conserve, and replenish the natural resources <u>of this state</u> [Louisiana] . . . ."  LA. REV. STAT. ANN. § 30:2453(A) (emphasis added).  In addition, LOSPRA provides that it "shall be the <u>exclusive authority</u> on oil spill prevention, response, removal, and the limitations of liability."  *Id.* § 30:2496 (emphasis added).  Louisiana courts will not create a cause of action for negligence *per se* based on a statutory violation where the legislature has declared that the statutory remedy is exclusive.  *See Kelley v. Hanover Ins. Co.*, 722 So.2d 1133, 1137 (La. Ct. App. 1998) (rejecting negligence per se claim against manufacturer concerning an alleged deficiency in an aerosol warning on the ground that the Louisiana Product Liability Act is "the exclusive cause of action against a manufacturer").

Even considering the Mexican States' tardy assertion of purported statutory bases for their negligence *per se* claims in their Opposition, those claims lack merit and must be dismissed.

### 3.    The Mexican States Fail to State Cognizable Claims for Private Nuisance Against Anadarko.

In its moving papers, Anadarko explained that the Mexican States by definition cannot assert a claim for private nuisance because they are public entities.  *See* Memorandum of Law in Support of Motion to Dismiss at 34.  Anadarko also explained that maritime law likely does not recognize private nuisance as viable cause of action.  *See id.* (citing *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1013 (E.D. La. 1993)).  The Mexican States do not respond directly to either argument, instead relying only on Louisiana and Texas case law to support their claims.  Opp. at 44–47.  Even if Louisiana or Texas law applied, the Mexican States' private nuisance claim fails as a matter of law.  *See* Memorandum of Law in Support of Motion to Dismiss at 34.

The plain language of the Louisiana private nuisance statute requires that one must be a "neighbor" to sue for private nuisance.  LA. CIV. CODE ANN. Art. 667 (2010).  Ignoring the language of the statute, the Mexican States argue only that *Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 WL 3913403, at *8 (E.D. La. Nov. 20, 2006), is inapplicable.  *See* Opp. at 44.  However, *Barasich* expressly held that "[t]he scope of articles 667–669 is limited to the obligations proprietors owe to their neighbors."  *Barasich*, 2006 WL 3913403, at *8.  The Mexican States cannot contest that they are remote from the operations on the OCS that allegedly caused the complained-of nuisance.

Alternatively, the Mexican States contend that they <u>are</u> neighbors of Mississippi Canyon Block 252 because Mexico's "Exclusive Economic Zone" extends into the Gulf of Mexico pursuant to the 1978 maritime treaty.  Opp. at 44.  However, Article III of the treaty states that its "sole purpose" is "to establish the location of the maritime boundaries between the United States of America and the United Mexican States."  Treaty on Maritime Boundaries, U.S.-Mex., art. III, May 4, 1978, 17 I.L.M. 1073 (1978).  It does not allocate ownership interest of Gulf waters to political subdivisions within either country.  To the contrary, the treaty states that "this Treaty shall not affect . . . in any manner the positions of either Party with respect to the extent of internal waters . . . or of sovereign rights or jurisdiction for any other purpose."  *Id.*

In Texas, a plaintiff must have "title or vested interest" in the lands <u>affected</u> by the alleged nuisance.  *See Freedman v. Briarcroft Property Owners, Inc*., 776 S.W.2d 212, 215 (Tex. App. 1989) (citing 66 C.J.S. NUISANCES § 81 (1950)).  Anadarko does not at this time dispute the Mexican States' allegations of their ownership interest in physical property or shorelines.  Rather, assuming that they may have such an ownership interest, the issue is that the Complaints

contain no non-conclusory allegation of an injury to the Mexican States' physical property or shorelines, a precondition to a suit for private nuisance.[13]

The Mexican States contend that they have alleged "affected lands" because they allege "Mexican <u>shorelines</u> and waters have already been severely impacted."  Opp. at 5 (emphasis added); *id.* at 44 (arguing that the Complaints include "numerous allegations . . . asserting actual and past damage to [Plaintiffs'] <u>physical property</u>, natural resources, and other interests") (emphasis added).  However, the Complaints contain no allegation of actual damage to Mexican shorelines or physical property <u>of the Mexican States in this case</u>.  The closest they come is the allegation that oil may eventually reach Mexican shores.  Veracruz Compl. at ¶¶ 4–5.  Every other allegation that the Mexican States quote in their Opposition refers only to <u>economic harm</u>, such as lost revenue from taxes because of damage to the fishing industry or the decline in tourism.  Opp. at 3–8.  The Opposition contains no non-conclusory allegation of damage to their shorelines or physical property, and a private nuisance claim under Texas law—even if Texas law applied—must fail.

### 4.    The Economic Loss Rule Precludes the Mexican States' Recovery Under Maritime and State Law.

As argued in the Motion to Dismiss, a plaintiff cannot recover economic losses resulting from negligence if it lacks a proprietary interest in the damaged property.  *See* Memorandum of Law in Support of Motion to Dismiss at 36 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275

---

[13]    The Mexican States cite several cases holding that damages for personal injuries can also be recovered in a private nuisance action and that the measure of recovery is not limited to the damage to the land.  *See* Opp. at 45 (citing *Vann v. Sewerage Co.*, 90 S.W.2d 561, 563 (Tex. 1936); *Vestal v. Gulf Oil Corp.*, 235 S.W.2d 440, 441–42 (Tex. 1951); *City of Uvalde v. Crow*, 713 S.W.2d 154, 158–59 (Tex. App. 1986)).  Those cases are inapplicable because the Mexican States are suing for injury to property "and other natural and economic resources . . . ."  Veracruz Compl. at ¶ 75.  As governmental entities, the Mexican States cannot and do not assert claims for personal injury.

U.S. 303 (1927)).  This "economic loss rule" governs unintentional maritime tort cases in the Fifth Circuit.  *See Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*); *Dunham-Price Grp., LLC v. Citgo Petroleum Corp.*, 2010 WL 1285446, at *3 (W.D. La. Mar. 31, 2010).  The Mexican States do not dispute that the economic loss rule applies, but argue only that they <u>have</u> alleged present physical injury to Mexican property as a result of the spill. Opp. at 42–43.  However, as shown, the Mexican States can point to no non-conclusory allegation of actual damage to their property, and their vague and conclusory allegations—even though in some instances phrased in the "past tense"—are not entitled to any assumption of truth, and fail on their own to state a claim.

## III.   CONCLUSION

For the foregoing reasons, Anadarko respectfully requests that the Court dismiss all claims against it in the Mexican States' Complaints.

Respectfully submitted,

DATED:  June 14, 2011          BINGHAM McCUTCHEN, LLP


_/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400

Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Tel: (504) 592-0691
Fax: (504) 592-0696

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 14, 2011.


_____*/s/ Ky E. Kirby*_____
Ky E. Kirby

22