**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 <br><br> This Document Relates To: *Cases in Pleading Bundles A, B1, B3, and C As Enumerated At Attachment 1.* | MDL NO. 2179 <br><br> SECTION: J <br><br> JUDGE BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

<u>**MEMORANDUM IN SUPPORT OF MOTION OF MOEX OFFSHORE 2007 LLP TO DISMISS OR, IN THE ALTERNATIVE, BIFURCATE ALTER EGO CLAIMS**</u>

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Facsimile (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**COUNSEL FOR MOEX OFFSHORE 2007 LLC**

## <u>**TABLE OF CONTENTS**</u>

I.   INTRODUCTION ......................................................................................................... 1

    A.  The Moving Party ............................................................................................. 1

    B.  The Relief Sought ............................................................................................. 3

II.  ARGUMENT .............................................................................................................. 4

    A.  The Alter Ego Claims Should Be Dismissed for Lack of Ripeness ................... 4

    B.  Alternatively, the Court Should Bifurcate the Alter Ego Claims for
        Discovery and Trial ........................................................................................... 9

        1.  Discovery Relating to the Alter Ego Claims Is Irrelevant to the
            Threshold Issues of Liability and Quantum of Damages and Should Be
            Stayed ........................................................................................................ 10

        2.  MOEX Offshore Is Likely to be Able to Pay Any Damages that May
            Be Assessed, Rendering the Alter Ego Claims Speculative ....................... 11

        3.  [Bifurcating Alter Ego Issues Would Also Allow the Court and the
            Parties to Focus on Threshold Liability and Damages Issues] ................... 12

III. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Amato v. City v. Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999) ................................... 9

*Ashcroft v. Mattis*, 431 U.S. 171 (1977) ..................................................................... 4

*Certain Underwriters at Lloyd's London and Other Companies v. St. Joe Minerals Corp.*, 90 F.3d 671 (2d Cir. 1996) ........................................................................ 5

*Daniels v. Kerr McGee Corp.*, 841 F. Supp. 1133 (D. Wyoming 1993) ....................... 8

*Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530 (1st Cir. 1995) ....................................................................................................... 3, 8

*Federal Election Commission v. Lance*, 635 F.2d 1132 (5th Cir. 1981) .................................. 4, 7

*Halder v. Standard Oil Co.*, 642 F.2d 107 (5th Cir. 1981) ......................................... 4

*Hewitt v. Bay State Gas Co.*, 63 Mass. App. Ct. 1121 (Mass. App. Ct. 2005) .............................. 8

*Joiner v. Ryder System Inc.*, 966 F. Supp. 1478 (C.D. Ill. 1996) ...................... 8

*Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998) ................................................ 3, 9

*Mag Instrument, Inc. v. J. Baxter Brinkmann Intern. Corp.*,123 F.R.D. 543 (N.D. Tex. 1988) ........................................................................................................ 9

*Malin Int'l Ship Repair and Drydock, Inc. v. Veolia Special Services, Inc.*, 369 Fed. Appx. 553 (5th Cir. 2010) ............................................................................. 9

*Monumental Life Insurance Co. v. Executive Risk Specialty Insurance Co.*, Civ. No. 99-2676 C/W § "A"(1), 2000 U.S. Dist. LEXIS 14150 (E.D. La. Sept. 20, 2000) ...................................................................................................... 5

*Nissho Iwai Corp. v. Mizushima Marinera S.A.*, Case No. 95-3771, 1996 WL 904562 (D.N.J. April 23, 1996) ................................................................... 6

*Novopharm, Ltd. v. TorPharm, Inc.*, 181 F.R.D. 308 (E.D.N.C. 1998) ....................... 10

*O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494 (5th Cir. 1985) .......................... 9

*Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith,*
 *Inc.*, 587 F. Supp. 1112 (D. Del. 1984) ................................................................... 10

*Radaszewski v. Telecom Corp.*, 981 F.2d 305 (8th Cir. 1992) .................................... 8

*Safety Nat'l Cas. Corp. v. Am. Special Risk Ins. Co.*, No. 02-3752, 2004 U.S. App.
 LEXIS 7106 (6th Cir. Apr. 9, 2004) ........................................................................ 6

*Schattner v. Girard, Inc.*, 668 F.2d 1366 (D.C. Cir. 1981) ...................................... 3, 6

*Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 569 (1985) ............................ 4

*United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334 (7th Cir.
 1992) ...................................................................................................................... 6

**Statutes and Codes**

Fed. R. Civ. P. 42(b) ................................................................................................ 3, 9

Defendant and Third-Party Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") hereby moves to dismiss for lack of ripeness the alter ego claims alleged in those complaints filed by personal injury and wrongful death plaintiffs (PTO No. 11 [CMO No. 1] Section III.A ["A Bundle"]) (hereinafter "Bundle A Complaints"); the First Amended Master Complaint, Cross-Claim, and Third Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III.B(1) (as amended, Doc. No. 1128, filed 02/09/2011) (hereinafter "Bundle B1 Amended Complaint"); the First Amended Master Complaint in Accordance with PTO No. 11 [CMO No. 1] Section III.B(3) (as amended, Doc. No. 1812, filed 03/30/2011) (hereinafter "Bundle B3 Amended Complaint"); and in all complaints filed by government entities (PTO No. 11 [CMO No. 1] Section III.C ["C Bundle"]) (hereinafter "Bundle C Complaints")[1].  In the alternative, MOEX Offshore respectfully urges the Court to bifurcate the alter ego claims for discovery and trial, to defer the costly and possibly unnecessary examination of these issues until MOEX Offshore's liability, the amount thereof, and ability to pay a judgment in that amount have been determined.

I.    INTRODUCTION

    A.    The Moving Party

MOEX Offshore is a subsidiary of MOEX USA Corporation ("MOEX USA").[2]  MOEX USA in turn is a subsidiary of Mitsui Oil Exploration Co., Ltd. ("MOECO").[3]  Along with MOEX USA, MOEX Offshore is currently a defendant in four bundles in this action.  In

---

[1]  More specifically this Memorandum is addressed to the cases *in Pleading Bundles A, B1, B3, and C as enumerated at Attachment 1.*

[2]  MOEX USA is filing its own motion herewith.

[3]  Although named as a defendant in certain of the actions, MOECO has not been served with process.

addition, MOEX Offshore and MOEX USA have each been named as third-party defendants in Transocean's 14(c) Third-Party Complaint.

At present, the complaint filed by the State of Alabama and the Bundle A Complaints name MOECO, MOEX USA and MOEX Offshore as defendants, and treat those entities as one by using the generic term "MOEX."  Similarly, the amended complaint filed by the State of Louisiana groups the three entities and refers to them generically as the "MOEX Defendants."  In addition, the Bundle B1 Amended Complaint, the Bundle B3 Amended Complaint, and the Bundle C Voluntary Complaint (PTO No. 11 [CMO No. 1] Section III (C) ["C Bundle"] (Doc. No 1510, filed 03/03/2011)), include claims against MOECO that are limited to allegations that MOECO so dominated and controlled the activities of MOEX Offshore and MOEX USA that any liability should be imputed to MOECO (the "alter ego allegations").[4]

Beyond the above-described pleadings, plaintiffs have propounded discovery to MOEX Offshore in support of their alter ego claims against MOECO.  Specifically, plaintiffs have delivered a Rule 30(b)(6) deposition notice to MOEX Offshore that includes topics focused on the alter ego claims.  Plaintiffs have also served a number of interrogatories on MOEX Offshore seeking information that, in whole or in part, focuses on the alter ego issues.

In these circumstances, MOEX Offshore may seek to dismiss the alter ego claims.  Such claims necessarily rely upon the premise that MOEX Offshore is not an independent entity, that MOEX USA dominates and controls it, and that MOEX USA is in turn dominated and controlled

---

[4]  *See, e.g.*, Bundle B1 Amended Complaint at ¶¶ 235-237, 248-250, 575; Bundle B3 Amended Complaint at ¶¶ 44-47, 57-59, 221; Bundle C Voluntary Complaint at ¶¶ 204-206, 217-219. Transocean's 14(c) Third-Party Complaint (Doc. No. 1320, filed 02/18/2011), also references these claims, thereby bringing the Bundle B1 Master Complaint claims into the limitations actions.

by MOECO.  MOEX Offshore's interest in upholding its corporate integrity is underscored by the discovery that has been served upon it concerning these very issues.

### B.     The Relief Sought

Any alter ego claims against MOEX Offshore, MOEX USA and/or MOECO in this matter are premised upon two uncertain future events, namely (1) a potential future judgment against MOEX Offshore; and (2) MOEX Offshore's potential inability to pay any such future judgment.  Consequently, those claims do not currently present a justiciable controversy and are not ripe for decision.  *See, e.g., Schattner v. Girard, Inc*., 668 F.2d 1366, 1369 (D.C. Cir. 1981) (per curiam) (issue of veil-piercing became ripe only after defendant proved unable to satisfy judgment rendered against it).  As such, they must be dismissed.  *See Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir. 1995) ("a court has no alternative but to dismiss an unripe action").

Should the Court disagree regarding the ripeness of the alter ego claims, MOEX Offshore respectfully urges, in the alternative, that the Court should exercise its discretion under Federal Rule of Civil Procedure 42(b) to bifurcate and defer the alter ego issues until the threshold determinations of liability, quantum and ability to pay have been determined.  *See* Fed. R. Civ. P. 42(b); *accord Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir. 1998) ("Bifurcation is appropriate where convenient, economical, or necessary to avoid prejudice.").

Bifurcation for discovery and trial is appropriate here because the alter ego claims raise issues that are factually and legally distinct from those relevant to the other claims made against MOEX Offshore and all legal and factual issues relating to the liability of all other parties to this proceeding.  Indeed, the Court's definition of the issues to be explored in connection with Phase I discovery – by omission – excludes material relating to the alter ego claims.  Pretrial Order No.

11 specifies that Phase I of discovery will be focused on causality and spill liability, limitation and related issues.  (PTO 11 at V(B)).

Moreover, the alter ego claims are entirely contingent on a finding of liability against MOEX Offshore and the subsequent assessment of damages against it in an amount that it is unable to pay.  Because MOEX Offshore did not operate the rig, any damages against it are likely to be limited in scope.  Further, because MOEX Offshore is indemnified as to nearly all damages that may be assessed against it in these actions, there is a low probability that the alter ego claims will ever be litigated.  Bifurcation of those claims would therefore spare the Court and the parties the time and expense of engaging in premature and likely unnecessary discovery proceedings.

## II.   ARGUMENT

### A.   The Alter Ego Claims Should Be Dismissed for Lack of Ripeness

A federal court's jurisdiction is limited to "actual controversies" that are ripe for adjudication.  *See, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171 (1977).  A federal court does not have jurisdiction to decide "abstract, hypothetical, or contingent questions," which would result in "an opinion advising what the law would be upon a hypothetical state of facts."  *Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. 1981).  Ripeness has been described as "peculiarly a question of timing.  Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."  *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 569, 580 (1985) (internal citations omitted).

An important factor in determining whether an issue is ripe is "whether the tendered issue involves 'uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Federal Election Commission v. Lance*, 635 F.2d 1132, 1138 (5th

Cir. 1981) (quoting 13 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3532 (1975)).  In other words, the possibility of some future controversy involving potential future rights will not support federal court intervention – there must be a *present* controversy involving actual rights.

Applied here, the issue of whether either MOECO or MOEX USA is liable as MOEX Offshore's alter ego is not ripe for decision because MOECO's and/or MOEX USA's alleged liability on an alter ego theory is wholly contingent upon MOEX Offshore's liability on the underlying claims, which itself is contested and unresolved.

Federal courts have, in similar situations, dismissed alter ego claims as not ripe where the liability of the principally responsible party had not yet been determined.  For example, in *Monumental Life Insurance Co. v. Executive Risk Specialty Insurance Co.*, Civ. No. 99-2676 C/W § "A"(1), 2000 U.S. Dist. LEXIS 14150, at *5 (E.D. La. Sept. 20, 2000), the Eastern District of Louisiana found that liability claims based on an alter ego theory "simply are not ripe/justiciable" because the liability of the underlying subsidiary had yet to be determined, and therefore addressing the merits of the alter ego claim would "constitute a prohibited advisory opinion."[5]  *Id.* at 7-8.  The court granted the defendant's motion to dismiss the claims based on an alter ego theory, even though there were other direct claims against the same defendants that were to proceed to trial.

---

[5]  In *Monumental Life*, the plaintiff claimed that a particular defendant was merely an alter ego of various other entities and therefore liable for the contract debts of those entities. That defendant moved to dismiss or alternatively stay all of the claims against it that were based on an alter ego theory, arguing that: (1) any decision as to whether it was an alter ego of other entities would constitute an advisory opinion; (2) the alter ego claims were premature and not justiciable; (3) a final and binding determination of the other entities was an essential element of plaintiff's claims based on an alter ego theory; (4) the other entities'' liability was contested and undetermined; and (5) federal and Louisiana law supported dismissal – or at least stay – of these claims as premature.  *Monumental Life* at 3-4.

Similarly, in *Certain Underwriters at Lloyd's London and Other Companies v. St. Joe Minerals Corp.*, 90 F.3d 671, 674 (2d Cir. 1996), in which excess liability insurers sought a "no coverage" declaration, in a case where the insured was a potentially responsible party under CERCLA (42 U.S.C. § 9607 *et seq.*), the case was not ripe for decision because the extent of the insured's liability had not yet been determined.  Still other federal courts have concluded that a veil-piercing claim is not ripe for decision until liability has been determined *and* the party against which judgment is rendered proves unable to pay.  *See, e.g., Schattner*, 668 F.2d at 1369 ("[I]t was only when it became clear that Girard could not make good on the arbitration award that the issue of veil-piercing became ripe for consideration."); *Nissho Iwai Corp. v. Mizushima Marinera S.A.*, Case No. 95-3771, 1996 WL 904562 at *5 (D.N.J. April 23, 1996) (declining to determine alter ego issue because "it would be premature to adjudicate the issue because the question of Mizushima's liability remains to be determined by arbitration.  If Mizushima is found not to be liable, then the alter ego issue would be moot.  Moreover, if Mizushima is found liable, then the alter ego issue would only need to be resolved if Mizushima lacked sufficient assets to cover the arbitral award.").[6]

The situation here is the same.  Plaintiffs are pursuing alter ego claims against MOECO and, by extension, MOEX Offshore and MOEX USA, based solely on the anticipated liability of

---

[6]  In an analogous context, federal courts have declined to determine the question of an insurer's duty to indemnify an insured prior to a determination of the liability of the insured.  *See, e.g.*, *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992) ("Put simply, a declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe for adjudication.") (citation omitted); *Safety Nat'l Cas. Corp. v. Am. Special Risk Ins. Co.*, No. 02-3752, 2004 U.S. App. LEXIS 7106, at *6 (6th Cir. Apr. 9, 2004) (holding that an excess insurer's suit to compel arbitration of a coverage dispute was not ripe in part because the underlying liability claims were unlikely to exceed the insurance limits).

MOEX Offshore, and the further assumption that MOEX Offshore will be unable to pay any judgment rendered against it.  These are "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all," rendering the question of alter ego liability unripe for decision.  *Lance*, 635 F.2d at 1138.  Any alter ego claim against MOECO or MOEX USA is not ripe for decision unless and until there is a both judgment against MOEX Offshore, and it becomes clear that MOEX Offshore is unable to pay that judgment.

Even assuming that MOEX Offshore will be found liable and some quantum of damages will be assessed against it, the alter ego claims remain moot unless and until MOEX Offshore proves unable to pay the damages assessed.  For a number of reasons, that scenario is highly unlikely.

First, MOEX Offshore is a non-operating investor with no role in the management or operation of the Macondo rig.  As such, its liability to private plaintiffs, if any, is limited. MOEX USA, while it wholly owns MOEX Offshore, had no direct involvement in the operations of the Macondo project.  Its potential liability is limited, if any, to claims based on its ownership of MOEX Offshore.  Second, as to public plaintiffs, MOEX Offshore's liability is also relatively insubstantial, given its lack of involvement in the operations and management of the project.

Finally, MOEX Offshore has, in addition to its assets, indemnification for substantially all of its liability arising out of this action.  On May 20, 2011, as disclosed in a May 20, 2011 Form 6-K filed with the Securities and Exchange Commission by BP p.l.c., the text of which was also issued as a press release, certain BP subsidiaries are obligated to indemnify and hold MOEX

Offshore harmless on the substantive claims at issue in these proceedings, thereby ensuring that MOEX Offshore will be able to satisfy judgments against it.[7]

Courts will not assess alter ego liability against a corporate parent when its subsidiary is able to satisfy the judgments against it.  *See, e.g.*, *Joiner v. Ryder System Inc*., 966 F. Supp. 1478, 1488 (C.D. Ill. 1996) (refusing to pierce the corporate veil where the subsidiaries could easily satisfy a large judgment against them); *Daniels v. Kerr McGee Corp*., 841 F. Supp. 1133, 1137 (D. Wyoming 1993) (granting summary judgment in favor of the parent company  where subsidiary corporation had sufficient assets and would be capable of satisfying any potential judgment that might be entered against it in this matter). The same is true when the subsidiary will satisfy the judgment with funds from a third party, such as an insurer or indemnitor.  *See, e.g., Radaszewski v. Telecom Corp*., 981 F.2d 305 (8th Cir. 1992) (holding plaintiff could not pierce corporate veil when subsidiary's insurance policy would allow it to satisfy any judgment against it); *Hewitt v. Bay State Gas Co*., 63 Mass. App. Ct. 1121, 2005 WL 1514343, at *3 (Mass. App. Ct. 2005) (finding no need to pierce corporate veil where subsidiary had $51 million in insurance coverage available for liability judgments against it).

Because the claim of alter ego liability against MOEX Offshore, MOEX USA and MOECO is based on the as-yet undetermined liability of MOEX Offshore, the alter ego claims against MOECO (and indirectly against MOEX Offshore and MOEX USA) are not justiciable and must be dismissed.  *Halder*, 642 F.2d at 110; *Depositors Economic Protection Corp.*, 45 F.3d at 535.

---

[7]  The indemnity, as set out in Exhibit A, is subject to exceptions for civil penalties, to which the plaintiffs in Bundles A, B1, and B3 are not entitled; and punitive damages, which the Bundle B1 plaintiffs have not sought against MOEX Offshore, MOEX USA, or MOECO.  *See* Bundle B1 Amended Complaint at ¶¶ 748-769.

**B.     Alternatively, the Court Should Bifurcate the Alter Ego Claims for Discovery and Trial**

Should the Court disagree that the alter ego claims must be dismissed as unripe, the Court nonetheless should exercise its authority under Federal Rule of Civil Procedure 42(b) to bifurcate the alter ego claims for discovery and trial.  Bifurcation would spare the Court and the parties the time and expense of premature – and likely unnecessary – discovery relating to these issues.  *See* Fed. R. Civ. P. 42(b); *accord Lindsey*, 161 F.3d at 892.

Bifurcation is "particularly" appropriate where, as here, "trying one issue could dispose of the others. …This type of bifurcation is an effective method of simplifying factual presentation, reducing costs, and saving time." *Mag Instrument, Inc. v. J. Baxter Brinkmann Intern. Corp.*,123 F.R.D. 543, 544-545 (N.D. Tex. 1988) (citations omitted); *see also Malin Int'l Ship Repair and Drydock, Inc. v. Veolia Special Services, Inc.*, 369 Fed. Appx. 553, 555 (5th Cir. 2010) (bifurcation of the issues of entitlement to and quantum of attorney's fees appropriate in the interest of judicial economy because "[t]hese issues were clearly separable, since the issue of quantum would not come into question unless the district court first found that Malin was in fact entitled to attorney's fees").

The alter ego allegations against MOECO – and inferentially against MOEX USA – will not become relevant in this litigation unless and until (1) liability is assessed against MOEX Offshore; and (2) damages are then assessed in an amount that MOEX Offshore is unable to pay. Prior to a determination of liability and damages against MOEX Offshore, discovery that relates only to alter ego claims  is therefore premature and a distraction from the central issues in these proceedings.  Consequently, bifurcation of the alter ego claims in this instance is  appropriate and will promote judicial efficiency.  *See O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (bifurcating determination of insurance coverage from liability, where

finding of no coverage would obviate need to hear issue of bad faith denial of coverage); *see also Amato v. City v. Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) (court properly bifurcated claims against individual officers from claims against municipalities where plaintiffs' failure to establish liability of individuals would moot claims against municipality).

> 1.    **Discovery Relating to the Alter Ego Claims Is Irrelevant to the Threshold Issues of Liability and Quantum of Damages and Should Be Stayed**

When bifurcation is ordered so that the threshold question of liability can be determined, courts routinely also stay discovery of the bifurcated issues.  This is because "[o]ne of the purposes of bifurcation under Rule 42(b) is to defer costly discovery and trial preparation costs pending the resolution of preliminary liability issues." *Novopharm, Ltd. v. TorPharm, Inc.*, 181 F.R.D. 308, 312 (E.D.N.C. 1998).  Courts have found that the mere possibility of saving such substantial resources is reason enough to order bifurcation and a stay of discovery.  *See, e.g., Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 587 F. Supp. 1112, 1117 (D. Del. 1984) (bifurcating proceedings "in the interest of expedition and economy to defer costly and possibly unnecessary discovery proceedings on the damages issues pending the resolution of the liability issues.") (citation omitted).

Discovery relating to the alter ego claims is wholly separable from discovery relating to the direct claims against MOEX Offshore.[8]  Indeed, although there has been no formal

---

[8]  The direct claims alleged against MOEX Offshore include: (1) by virtue of its real-time access to date transmitted from the *Deepwater Horizon* they knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010 and had a duty to Plaintiffs to warn those on the rig of the impending blow-out; (2) by virtue of contractual rights of MOEX Offshore of access and inspection, MOEX Offshore was on notice of potentially disastrous conditions on the well site and owed Plaintiffs a duty to take steps to address them; and (3) MOEX Offshore ignored expert well-kill advice in order to preserve the ability to re-tap the well. *See, e.g.,* Bundle B1 Amended Complaint (Doc. No. 1128) at ¶¶ 486, 573, 575; Bundle B3 Amended Complaint Doc. No. 1812) at ¶¶ 219-220; Bundle C Voluntary

bifurcation ordered in this case, the Court has already effectively excluded information relating to the alter ego claims from Phase I of discovery, which is limited to the events leading up to the Macondo well incident, the causation of the incident, and damages arising out of the incident. *See* Pretrial Order No 11 (Doc. No. 569, entered October 19, 2010) ("PTO 11").[9]

Because plaintiffs have nonetheless propounded discovery seeking information relevant only to alter ego claims,[10] MOEX Offshore requests, in the interest of judicial efficiency, that the Court formally bifurcate the alter ego issues and stay discovery relating to those issues until the threshold questions of liability, quantum of damages and ability to pay have been determined.[11]

### 2.    MOEX Offshore Is Likely to be Able to Pay Any Damages that May Be Assessed, Rendering the Alter Ego Claims Speculative

---

Complaint (Doc. No. 1510) at ¶¶ 251-54, 455, 546.  The remaining claims against the MOEX Offshore include claims under OPA, the Florida Pollutant Discharge Prevention and Control Act (Fla. Stat. § 376.011, *et seq.*), the Louisiana Oil Spill Prevention and Response Act (La. R. S. 30:2451, *et* seq.), the Texas Oil Spill Prevention and Response Act of 1991 (Tex. Nat. Res. Code Ann. § 40.001, *et seq.*), and certain claims for punitive damages.

[9]  Specifically, the Court has ordered that for Phase I "Discovery will be focused on the activities and events leading up to and including [the] April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include cause of causes and extent of the associated oil spill and the cause or causes of damages alleged to have resulted therefrom."  PTO 11 at 8-9.

[10]    For example, Request for Production No. 9 of Plaintiffs' Omnibus Discovery Requests on All Defendants requests "organizational charts in effect from January 1, 2010, thru the present, including organizational charts reflecting and/or containing … "the parents, subsidiaries, sister entities and/or other affiliates of each Defendant entity; the officers, directors, members and/or managers of the parents, subsidiaries, sisters and/or other affiliates of each Defendant entity; and, the parents, subsidiaries, sister entities and/or other affiliates of each entity supervising and/or providing services in connection with the Deepwater Horizon and/or Macondo Well."

[11]  With respect to the deposition of Naoki Ishii scheduled for June 29-30, 2011, MOEX Offshore's counsel John Pritchard of Pillsbury Winthrop Shaw Pittman LLP spoke with Steven E. Fineman of Lieff Cabraser Heimann & Bernstein, LLP.  They reached an understanding that the plaintiffs will not examine Mr. Ishii about facts that would relate principally to a veil-piercing claim, including such matters as the extent of control exercised by one company over another.  Mr. Fineman noted that the Plaintiffs' Steering Committee is reserving its rights to ask for such discovery in the future.

As discussed above in § II(A),  MOEX Offshore is likely to be able to satisfy any judgment rendered in these proceedings, making adjudication of the alter ego claims unlikely and the claims themselves not justiciable.   The indemnification agreement with BP, as a practical matter, ensures that MOEX Offshore will be able to satisfy judgments against it, making it highly unlikely that the alter ego claims will ever need to be decided.  Thus, bifurcation of the alter ego claims at this stage of these proceedings will avoid a waste of judicial resources and the time and expense of the parties on what will almost certainly prove to be a non-issue.

### 3.      Bifurcating Alter Ego Issues Would Also Allow the Court and the Parties to Focus on Threshold Liability and Damages Issues

This litigation is complex and largely unprecedented in scope.  To manage the volume of claims and parties involved efficiently, a careful and aggressive discovery schedule has been set, and the scope of Phase 1 discovery limited to the issues of casualty, spill, and limitation.   This schedule is designed to focus the parties' attention and resources on discovery related to the issues to be tried in February 2012 – *i.e.* the allocation of fault for the incident.  By design, the discovery schedule leaves little room for inquiry into collateral issues, and no room for inquiry into issues or claims that will not be addressed in the February 2012 trial – indeed, that potentially may never be addressed.

Permitting discovery into alter ego allegations that ultimately may never be ripe for adjudication will needlessly distract the parties and divert judicial resources from completing the discovery contemplated by the Court's Procedural Order No. 11.  Because the alter ego allegations are distinct from any of the issues on which the February 27, 2012 trial will focus, responding to discovery on the alter ego issues would put MOEX Offshore to unnecessary and undue burden and expense.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant MOEX Offshore's motion to dismiss the alter ego claims for lack of ripeness.  In the alternative, the Court should, in the interest of efficiency, bifurcate and defer the alter ego claims until the threshold issues of liability, quantum of damages and ability to pay have been resolved.

Date:  June 15, 2011                                  Respectfully submitted,

                                                                  s/  John F. Pritchard_____
                                                                  John F. Pritchard
                                                                  Edward Flanders
                                                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                                  1540 Broadway
                                                                  New York, NY 10036-4039
                                                                  Telephone (212) 858-1000
                                                                  Facsimile (212) 858-1500
                                                                  john.pritchard@pillsburylaw.com
                                                                  edward.flanders@pillsburylaw.com

                                                                  Christopher McNevin
                                                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                                  725 South Figueroa Street, Suite 2800
                                                                  Los Angeles, CA 90017-5406
                                                                  Telephone (213) 488-7507
                                                                  Fax (213) 629-1033
                                                                  chrismcnevin@pillsburylaw.com

                                                                  **COUNSEL FOR MOEX OFFSHORE 2007 LLC**

**Attachment 1**

| CAPTION | CASE NUMBER |
|---------|-------------|
| Vision Bank v. 145, LLC and James Dalton, Third Party Plaintiffs v. | 1:10-cv-00521 |
| Papa Rod, Inc. et al. v BP, PLC, et al. | 2:10-cv-03250 |
| Ferguson et al v. BP, PLC et al | 2:10-cv-03251 |
| Ford et al v. BP, P.L.C. et al | 2:10-cv-03252 |
| Moore (Sarah) et al v. BP, PLC | 2:10-cv-03253 |
| Wright (Glynis) et al. v. BP, PLC | 2:10-cv-03263 |
| Dai "Mike" Tran v. BP America et al. | 2:10-cv-03279 |
| Peter Tran v. BP America, et al. | 2:10-cv-03280 |
| Cajun Maid, LLC et al v. BP, PLC et al | 2:10-cv-02675 |
| T & D Fishery, LLC et al v. BP, PLC et al | 2:10-cv-01332 |
| James Kirk Mitchell et al v. BP, PLC et al | 2:10-cv-01472 |
| Karl W. Rhodes v. Transocean, Ltd. | 2:10-cv-01502 |
| Doug Crawford et al v. BP, PLC et al | 2:10-cv-01540 |
| Brondum et al v. BP P.L.C., et al | 2:10-cv-01613 |
| Dinet v. BP P.L.C., et al. | 2:10-cv-01615 |
| Danzig v. BP, PLC et al | 2:10-cv-01726 |
| Nguyen (Kha Van) et al v. BP America, et al | 2:10-cv-01741 |
| J&M Boat Rentals, LLC v. BP, PLC, et al | 2:10-cv-01747 |
| Fruge et al v. BP, P.L.C., et al | 2:10-cv-01752 |
| Harmon et al v. BP, plc | 2:10-cv-01931 |
| Inter-Tour Louisiane, Inc. et al v. Transocean Ltd. et al | 2:10-cv-02103 |
| Le (Tam Ve) et al v. BP PLC et al | 2:10-cv-02114 |
| Sea Eagle Fisheries, Inc. et al v. BP, PLC et al | 2:10-cv-02661 |
| Ocean Reef Realty Inc. v. Transocean Holdings Inc. et al | 2:10-cv-02663 |
| Destin et al v. BP, PLC et al | 2:10-cv-02668 |
| Avocato v. BP P.L.C. et al | 2:10-cv-02770 |
| Triton Asset Leasing GmbH et al v. U.S. Dept of Justice, et al | 2:10-cv-02771 |
| CJK Fab & Consulting v. BP, P.L.C., et al | 2:10-cv-02839 |
| Susan Davis et al v. BP P.L.C. et al | 2:10-cv-02984 |
| Professional Bars, Inc. d/b/a Brass Monkey v. BP P.L.C. et al | 2:10-cv-02985 |
| Vacation Key West, Inc. v. BP P.L.C. et al | 2:10-cv-02986 |
| Carden Simcox et al v. BP, PLC et al | 2:10-cv-02999 |

| CAPTION | CASE NUMBER |
|---|---|
| State of Louisiana v. Triton Asset Leasing, GmbH et al | 2:10-cv-03059 |
| Shepardson, d/b/a Lower Keys Charters et al v. BP P.L.C. et al. | 2:10-cv-03112 |
| McCarthy v. BP PLC et al | 2:10-cv-03114 |
| Ware v. BP P.L.C. et al | 2:10-cv-03115 |
| Daniel Barker et al v. BP, PLC | 2:10-cv-03267 |
| Nguyen (Kimberly) and Do Nguyen d/b/a Shrimp Guy, et al. v. BP | 2:10-cv-03269 |
| Wilson (Bobby) et al v. BP, P.L.C. | 2:10-cv-03272 |
| Roberts v. BP, PLC et al | 2:10-cv-03815 |
| Smiling Fish Cafe, Inc. et al v. BP, PLC et al | 2:10-cv003089 |
| Schorr et al v. BP, PLC et al | 2:10-cv-02989 |
| Murphy v. BP P.L.C. | 2:10-cv-03085 |
| Barber's Seafood, Inc. v. BP, plc et al | 2:10-cv-03098 |
| Adams et al v. BP P.L.C. et al | 2:10-cv-03100 |
| Le Discount Seafood, Inc. et al v. BP, PLC et al | 2:10-cv-03102 |
| Raffield Fisheries, Inc. et al v. BP, plc et al | 2:10-cv-03102 |
| Hao Van Le d/b/a Bluewater Seafood et al v. BP, PLC et al | 2:10-cv-03103 |
| Woods Fisheries, Inc. v. BP, plc et al | 2:10-cv-03104 |
| Richard, d/b/a Richard's Seafood Patio et al v. BP, PLC et al | 2:10-cv-01438 |
| State of Alabama v. Transocean, Ltd. et al | 2:10-cv-04183 |
| City of Greenville et al v. BP, PLC et al | 2:10-cv-04185 |
| Carlisle v. BP P.L.C. et al | 2:10-cv 04188 |
| Worldwide Interiors, LLC v. BP, PLC et al | 2:10-cv-04191 |
| The Fish Market Restaurant, Inc. et al v. BP, PLC et al | 2:10-cv-04192 |
| Hill v. BP, PLC et al | 2:10-cv-04193 |
| Monroe et al v. BP, PLC et al | 2:10-cv-04194 |
| Hudley v. BP, PLC, et al | 2:10-cv-04200 |
| Capt Ander Inc. v. BP PLC et al | 2:10-cv-4205 |
| Contender Boats v. Anadarko et al | 2:10-cv-04208 |
| Trehern et al v. BP, plc et al | 2:10-cv-04213 |
| JRKW Enterprises, LLC d/b/a Huck Finn's Cafe v. BP P.L.C., et al. | 2:10-cv-02846 |
| Stricker et al v. BP P.L.C. et al | 2:10-cv-03095 |
| Wetzel et al v. Transocean Ltd. et al | 2:10-cv-01222 |

| CAPTION | CASE NUMBER |
|---|---|
| Shemper, et al. v. BP plc, et al. | 2:10-cv-00138 |
| Wunstell et al v. BP PLC et al | 2:10-cv-02543 |
| Floyd, Floyd, Pearce of Beaumont, et al. v. BP, PLC, et al | 2:10-cv-03116 |
| Ireland v. BP PLC et al | 2:10-cv-04202 |
| Hudson v. BP PLC et al | 2:10-cv-04203 |
| United State of America v. BP Exploration & Production Inc. et al | 2:10-cv-04536 |
| Plaquemines Parish School Board v. Anadarko E&P Co. LP et al | 2:11-cv-00348 |
| Jones et al v. Transocean Ltd. et al. | 2:10-cv-01196 |
| State of Louisiana Office of the Attorney General v. BP Exploration | 2:11-cv-00516 |
| Kleppinger v. Transocean Offshore Deepwater Drilling Inc. | 2:10-cv-03168 |
| QMCD, LP et al. v. BP Exploration & Production | 2:11-cv-00552 |
| Certain Underwriters at Lloyd's v. BP, P.L.C., et al | 2:11-cv-02751 |
| Synovus Bank v. Plash Island Resort LLC et al | 2:11-cv-00551 |
| Plaquemines Parish v. BP PLC, et. al | 2:11-cv-00916 |
| Plaquemines Port, Harbor and Terminal District v. BP PLC, et al | 2:11-cv-00917 |
| State of Louisiana (St. Charles Parish) v. BP Exploration & | 2:11-cv-01106 |
| Gonzalez v. BP, PLC, et al. | 2:11-cv-00805 |
| Grupo Turistico Tamaulipas S.A. de C.V v. BP, P.L.C. et al | 2:11-cv-01055 |
| Trung M. Le, et al. v. BP Exploration & Production, et al. | 2:11-cv-01008 |
| State of Louisiana (Jefferson Parish) v. BP Exploration & Production | 2:11-cv-01113 |
| Ferrara et al. v. BP, PLC, et al. | 2:11-cv-01157 |
| Lynch v. Transocean, Ltd. et al. | 2:11-cv-01160 |
| Luu et al v. BP Exploration and Production, Inc. | 2:11-cv-01188 |

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 15, 2011.


<u>s/  John F. Pritchard                              </u>
John F. Pritchard