UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>This Document relates to:<br><br>All Cases | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

TRANSOCEAN'S REPLY BRIEF REGARDING
CLEAN WATER ACT AND RIGHT TO JURY TRIAL

Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC and Triton Asset Leasing GmbH (collectively "Transocean") respectfully submit this supplemental memorandum regarding whether there is a right to jury trial on the Clean Water Act claims asserted by the United States.

In its response to the Court's Order Re: Requested Briefing on Trial Plan Issues [Dkt. 2402], Anadarko has argued that there is a right to a jury trial on the Clean Water Act claim asserted by the United States. Dkt. 2674, at pp. 10-12. Specifically, Anadarko argues that "the CWA is concerned not with compensation but with punishment of culpable conduct and deterrence." Dkt. 2674, at p. 11. Anadarko notes that the United States is considering criminal prosecutions arising from the Macondo incident. Anadarko also argues that the United States Supreme Court has held that there is a right to jury trial on CWA liability, citing *Tull v. United*

*States*, 481 U.S. 412, 422 (1987). Dkt. 2674, at p. 12. Anadarko therefore argues that no CWA issues can be tried to the bench in the February 2012 trial. A key CWA issue is the total amount of oil discharged.

Anadarko's analysis is wrong for three reasons:

1.  The United States' civil penalty claim in this case is brought under Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), under which there is **strict liability** for a civil penalty for a discharge of oil in violation of Section 1321(b)(3), which prohibits the discharge of oil in harmful quantities in navigable waters.[1] *See* United States Complaint, First Claim for Relief for "Civil Penalties Under Section 311(b) of the Clean Water Act." The CWA's criminal provision, in contrast, requires proof of negligence and is in a different section of the CWA. *See* 33 U.S.C. § 1319(c)(1)(A) (anyone who <u>negligently</u> violates Section 1321(b)(3) shall be subject to fine or imprisonment). *See, e.g., United States v. Hanousek,* 176 F.3d 1116 (9th Cir. 1999) (discussing negligence standard applicable to CWA criminal prosecution).

2.  In *United States v. Ward*, 448 U.S. 242 (1980), the United States Supreme Court held that the civil penalty imposed by Section 311(b) of the CWA[2] was not criminal or quasi-criminal in nature, but rather was a "civil, remedial mechanism" and that "the penalty is much more analogous to traditional civil damages." 448 U.S. at 249 & 254. *See also* 448 U.S. at 256

---

[1] The President is authorized to define "harmful quantities," 33 U.S.C. § 1321(b)(4), and the so-called "sheen test" has been adopted for that purpose.

[2] In 1970, in response to the Santa Barbara oil spill, Congress enacted the Water Quality Improvement Act of 1970, which added a new section 11 to the Federal Water Pollution Control Act (FWPCA). Pub. L. 91-224, 84 Stat. 91 (1970). Section 11 imposed the basic strict liability scheme carried forward into today's law, which became Section 311 of the FWPCA and is now codified at 33 U.S.C. § 1321. When *Ward* was decided, the civil penalty could only be assessed administratively, subject to judicial review. In Section 4301 of OPA, Congress amended the civil penalty subsections of Section 311 into their current form. Pub. L. 101-380, 104 Stat. 484 (Aug. 18, 1990). The OPA amendments gave the government the choice of assessing the penalty administratively (§ 1321(b)(6)) or through an action in a district court (§ 1321(b)(7)), and the maximum penalty was increased. However, OPA did not change Section 311's substantive strict liability scheme, which has remained essentially unchanged since 1970.

("§311(b)(6) serves remedial purposes dissociated from punishment.") (Blackmun, J., concurring).

Any oil spill civil penalties collected by the United States are required to be deposited into the Oil Spill Liability Trust Fund, which is used to compensate oil spill damages when the designated OPA responsible party is unable (or has refused) to pay.[3]

Other cases have confirmed that oil spill civil penalties under Section 311(b) of the CWA should be analyzed no differently than oil spill cleanup costs. *See, e.g., Montauk Oil Transp. Corp. v. Tug "El Zorro Grande",* 54 F.3d 111 (2d Cir. 1995) (holding that owner of barge assessed with civil penalty for an oil spill that was caused by tug's negligence can seek equitable indemnity from tug owner for amount of civil penalty). As the Court there said: "[A]s between the federal government and the barge owner, the issue of fault for oil spillage is not a liability-determinative issue. However, as between the tug and the barge it is a very material issue." 54 F.3d at 115.

When Congress adopted OPA, and included a section that substantially increased the amount of civil penalties recoverable under Section 311(b) of the CWA, Congress made it clear that the fundamental purpose of civil penalties was not punitive, but rather to provide the same economic incentives that are reflected in OPA's strict liability regime:

> Each spill will involve a unique set of circumstances. Typically, oil spills involve a large element of human error. Civil penalties should serve primarily as an additional incentive to minimize and eliminate human error and thereby reduce the number and seriousness of oil spills. There are strong operational and economic incentives within the Conference substitute that should encourage responsible parties to prevent oil spills. In determining the amount of a civil penalty, particular weight should be given to

---

[3] OPA, Section 4304, Pub. L. 101-380, 104 Stat. 484 (Aug. 18, 1990).

14192729.1                                     3

> the rapidity and effectiveness of the response actions by the responsible party.

H.R. Conf. Rep. 101-653, 101st Cong., 2d Sess. 1990, 1990 WL 132747, 1990 U.S.C.C.A.N. 779 (Leg. Hist.), at 833.

3.  *Tull v. United States, supra*, on which Anadarko relies, involved a civil penalty under Section 1319, not under Section 1321.  *Tull* is also inapposite because it involved an intentional dumping of waste on wetlands rather than on navigable waters.  The basic issue before the Supreme Court in *Tull* was whether the statutory action for a civil penalty was analogous for Seventh Amendment purposes to an action which, at the time the Seventh Amendment was adopted, would have been brought at law (with a right to jury trial) or at equity (without a right to jury trial).

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. See, e.g., Pernell v. Southall Realty, 416 U.S. 363, 378, 94 S.Ct. 1723, 1731, 40 L.Ed.2d 198 (1974); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). Second, we examine the remedy sought and determine whether it is legal or equitable in nature. See, e.g., Curtis v. Loether, supra, 415 U.S., at 196, 94 S.Ct., at 1009; Ross v. Bernhard, 396 U.S. 531, 542, 90 S.Ct. 733, 740, 24 L.Ed.2d 729 (1970).

481 U.S. at 417-18.

This "law/equity" analysis has no bearing on claims arising from the blowout of BP's well, since the incident at issue here occurred on and under navigable waters.  At the time the Seventh Amendment was adopted, claims arising from an analogous maritime incident would have been tried neither in a court of law nor in a court of equity, but rather in an admiralty court, without a jury.  The absence of a right to jury trial in admiralty jurisprudence has already been extensively briefed by the parties, and we will not burden the Court further on that issue.

14192729.1                                          4

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

**Of Counsel:**
John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth GerenEasterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

14192729.1                    5

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2011, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller

14192729.1

6