## STONE PIGMAN WALTHER WITTMANN L.L.C.

COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

45,600

June 8, 2011

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

      Re:    MDL No. 2179
                In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
                In the Gulf of Mexico on April 20, 2010

Dear Judge Shushan:

      We write to ask the Court's resolution of the objections of DNV to the Rule 3(b)(6) deposition subpoena duces tecum that was issued in the MDL. For the reasons more fully set forth, DNV's objections are legally faulty and/or factually unsupported and should be overruled.

      Because DNV has refused to meet and confer with Cameron's counsel concerning its objections, Federal Rule of Civil Procedure 37(a)(1) has been satisfied and this matter is now ripe for Court resolution.

    1.    **FACTUAL BACKGROUND**

      As the Court is aware, the Rule 30(b)(6) deposition of DNV has been noticed for June 21 and 22. DNV, appearing herein through its counsel, has agreed to the dates for its deposition. The deposition notice was issued by Anadarko, pursuant to the Court's directive that a single Rule 30(b)(6) deposition issue per witness, reflecting all parties' input. Anadarko also issued a subpoena duces tecum, again at the Court's suggestion, which subpoena reflects all parties' input, including Cameron's, and is returnable on June 16, 2011, in advance of the Rule 30(b)(6) deposition. Thus, although Anadarko issued the deposition notice and subpoena, Cameron has a direct interest in securing DNV's compliance therewith.

      DNV is a third-party witness who examined the Deepwater Horizon blowout preventer at the request of the U.S. Bureau of Ocean Energy, Management, Regulation and Enforcement ("BOEMRE"). DNV completed its investigation and on April 20, 2011 issued a Final Report to BOEMRE, which disclosed the Final Report to the public. Later, representatives

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 2

June 8, 2011

of DNV testified about the Final Report in open proceedings before the BOEMRE and U.S. Coast Guard, Joint Investigation Team ("JIT") in April 2011.[1] Thus, DNV's work is now part of the public record.

In its Final Report, DNV made factual findings, reached conclusions and made recommendations. In its testimony before the JIT, DNV representatives testified that its investigation was complete.[2] After it issued its report and testified, however, pursuant to an order issued on BP's motion, DNV entered into a contract with BP to conduct certain additional testing on the BOP. That testing is on-going and will continue until the day before the deposition of DNV is scheduled. DNV has represented to the Court that it will not draw any conclusions, nor state any opinions, but is "investigating, collecting and publishing data and no more." Transcript of May 23, 2011. Rec. d. 2532, p. 20."[3]

2. **Subpoena Duces Tecum and Objections**

The subpoena duces tecum seeks ten categories of documents, each of which is explicitly limited to materials related to the Macondo Well and/or the Deepwater Horizon. See Exhibit A. Nevertheless, on May 31, 2011, counsel for DNV objected to the subpoena duces tecum. See Exhibit B. DNV has issued eight general objections and specific objections to each of the ten groups of items subpoenaed. The general objections include objections as to manner of service, breadth and scope of the subpoena, relevance, burden and attorney client and work product protections.

DNV's specific objections repeatedly assert one or more of five broad grounds for non-disclosures.

> (1) DNV objects to requests for any underlying data that it generated in the preparation of its findings, conclusions and recommendations set out in its MBI report because "the request seeks information that was prepared and produced to the

---

[1] Although DNV released its report and publicly testified, DNV has never released certain underlying data which it contends support its findings and conclusions. Those findings are included in topic #4 in the DNV subpoena duces tecum.

[2] Nevertheless, because of the various fundamental errors in DNV's Final Report which were identified during the JIT hearing, on April 30, 2011, DNV issued an "Addendum to Final Report" in an attempt to correct those errors.

[3] While it is anticipated that DNV will not issue any narrative report concerning its testing for BP, that fact does not mean that the current testing does not require or reflect DNV's opinions: given the complexity of the machinery, the very design of DNV's individual tests requires expertise.

1059176v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 3

June 8, 2011

government during the JIT ["Joint Investigative Team"] work. A request for such documents is properly directed to the Joint Investigation Team." (Topic #1, 2, 3 and 9.)

(2)   DNV objects to producing the raw data that it has generated in its work under the BP contract because "it seeks information that is not within DNV USA's care, custody or control, as the original raw data generated in connection with Phase II BOP testing is within the care, custody, control of third-party contractor KPMG, and pursuant to court order [Doc. No.2016] is being disclosed simultaneously to all MDL participants in the testing on a rolling basis." (Topic #1, 2 3, and 4.)

(3)   DNV objects to production of certain material, claiming that it is protected by attorney client communications and/or attorney work product protection, "as party communications." DNV has not produced any log to support these objections. (Topic # 5, 6 and 9.)

(4)   DNV claims the material sought is "*potentially* confidential and proprietary." (Topic # 8 and 9.) (emphasis added).

(5)   DNV objects to production of its communications with parties in the MDL because such a request "potentially seeks records not within DNV USA's care, custody, possession and control. Further, it places an undue burden on DNV USA, as it seeks information available from a party to the MDL" (Topic # 7, 8 and 10.)

On Monday, June 6, counsel for Cameron wrote to DNV's counsel and asked for a meet and confer regarding the objections. DNV refused, claiming that Cameron had no standing to address the objections because it was not the issuing party and that any discussion of the objections was premature in that the subpoena was not returnable until June 16. See Exhibit C. Later that same day, counsel for Anadarko reaffirmed Cameron's declaration that the Court had required that all parties collaborate on a single Rule 30(b)(6) deposition notice and thus, any and all parties to the MDL could participate in a meet and confer with DNV concerning its Rule 30(b)(6) deposition. *Id.* Notwithstanding that communication, DNV has not communicated further with Cameron on the subject of DNV's objections.

> A.   <u>DNV has failed to support its assertion that its underlying data in support of a public report is protected from disclosure because it was produced to the government.</u>

1059176v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 4

June 8, 2011

The first four groups of documents seek reports and information generated at any time by DNV in its examination of the Deepwater Horizon BOP. In objecting to production, DNV contends that the information was prepared for "the government" and that the request is "properly directed to the Joint Investigation Team." DNV does not cite any statute or other controlling law for the proposition that disclosure by DNV is prohibited or that such requests need to be addressed to the JIT. Such information is clearly within the possession, custody or control of DNV. Accordingly, it must be produced.

B.  **DNV cannot refuse production of materials that it generated because KPMG has the information.**

The Court authorized DNV to have access to the BOP for the work requested by BP. While DNV contracted with KPMG for certain functions associated with that testing, those functions remain the responsibility of DNV. In allowing the sub-contracting of certain tasks, the Court was facilitating DNV's discharge of certain functions, in light of the tight timeline. Cameron does not believe that the Court intended to relieve DNV of its primary obligations owed to the Court and the parties with respect to the dissemination of the data. As the one who generated the data, DNV is the only entity in any position to certify that KPMG has in fact disseminated all data and information.

Moreover, KPMG's dissemination of DNV's data does not mean that such materials do not remain under the "possession, custody or control" of DNV, subject to DNV's disclosure. As the plain language of Federal Rule of Civil Procedure 34 provides, the obligation to produce covers more than just those tangible items in one's possession; it extends to items under one's custody or control. DNV's subcontractor is an entity that remains subject to DNV's "custody or control" here. DNV cannot avoid its obligations to affirm that the parties to the MDL have in fact received all of the data that DNV has generated, regardless of what KPMG has/has not done to date.

C.  **DNV's claims of attorney client privilege and attorney work product protections are inadequate as a matter of law.**

DNV's bare assertions of work product and attorney client privilege are insufficient. A nonparty served with a subpoena is subject to the same scope of discovery as a party. See Fed.R.Civ.P. 45 advisory committee note (1991 amendment). However, not all privileges equally apply. As stated in *Smith v. Fifthian*, No. 03-2076 (W.D. La. Mar. 2, 2006), 2006 WL 548529 at *1:

> The work product immunity, as set forth in Federal Rule of Civil Procedure 26(b)(3), does not protect documents prepared by or for a non-party. Federal courts have repeatedly held that a non-party witness may not invoke work product protection to preclude production of materials prepared by or for that witness, even if

1059176v.1

created in contemplation of the witness's own pending or anticipated litigation. See, e.g., *Ramsey v. NYP Holding, Inc.*, 2002 U.S. Dist. Lexis 11728 (S.D. N.Y. June 27, 2002); *Hunter v. Heffernan*, 1996 U.S. Dist. Lexis 9244 (E.D.PA. July 1, 1996). In Wright, Miller & Marcus, *Federal Practice and Procedure*, § 2024 at p. 354, the authors state: 'Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.'

Similar language appears in *Hawkins v. South Plains International Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991), in which a third party's investigative report on an industrial accident was sought via subpoena. The third party objected, asserting work product privileges, but the district court ruled in favor of the requesting party noting that the third party was not qualified to assert the work product privilege in relation to the litigation surrounding the accident: "The language of the rule limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. All recent case law is in accord." (citing *In re California Public Utilities Commission*, 892 F.2d 778, 780 (9th Cir.1989); *Gomez v. City of Nashua*, 126 F.R.D. 432, 434 (D.N.H.1989); *Chaney v. Slack*, 99 F.R.D. 531, 533 (S.D.Ga.1983); *Galambus v. Consolidated Freightways Corp.*, 64 F.R.D. 468, 473 (N.D.Ind.1974)). See also *Ricoh Co., Ltd. v. Aeroflex, Inc.*, 219 F.R.D. 66, 69-70 (S.D. N.Y. 2003) ("Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit. See *Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055, 2002 U.S. Dist. LEXIS 11728 (S.D.N.Y. June 26, 2002) (collecting cases); *Polycast Tech. v. Uniroyal*, No. 87 Civ. 3297, 1990 U.S. Dist. LEXIS 12444 (S.D.N.Y. Sept. 20, 1990) ("The work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). ")

Even if the privileges asserted by DNV could be properly asserted by a non-party, the objections are insufficient as written. It is absolutely insufficient for a party to simply invoke a privilege in the absence of a privilege log establishing the requisite foundation for how the privilege applies to a given item. *Cacamo v. Liberty Mutual*, 99-1903 (La. App. 4th Cir. 10/10/01), 798 So.2d 1210, 1216. ("a mere statement that the privilege applies does not satisfy Liberty Mutual's burden of proof.") No privilege log or further explanation has been provided, and this bare assertion of privilege is thus insufficient to satisfy DNV's burden of proof.

    D.    <u>The potential that information *may be* confidential or proprietary does not justify DNV refusing production.</u>

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 6

June 8, 2011

DNV's claims of *potential* confidentiality and proprietary nature are legally inadequate to support non-production. The Court has entered a protective order which sets out the manner of protection of legitimately confidential material. To the extent that DNV has any information that is truly "confidential," it should simply comply with the protective order.

E. DNV cannot refuse production of its communications with parties to the MDL because such communications could be obtained from the parties with whom DNV has corresponded.

DNV objects to production of communications with parties to the MDL because production could be obtained from those parties. But the fact that others may also possess what is sought does not preclude production. For example, BP may well have complete documentation of its communications with DNV--but that does not mean Cameron has those same documents. Moreover, DNV intentionally and voluntarily injected itself into this litigation. In that context, DNV is not unduly burdened with having to produce, *perhaps*, what some other (but not necessarily all other) parties may possess.

3. **CONCLUSION**

Time is clearly of the essence here. The parties cannot wait until June 16, five days before the corporate deposition of DNV, to learn what DNV believes it is required to produce in response to the subpoena duces tecum served upon it. Accordingly, Cameron asks that the Court take up the matter of DNV's objections at its earliest convenience.

With kind regards, I remain,

Sincerely,

Phil Wittmann

Phillip A. Wittmann

PAW:cmb
cc: Defense Liaison Counsel
 Defense Steering Committee
 Plaintiff's Liaison Counsel
 Mr. R. Michael Underhill
 Mr. Luther Strange
 Mr. Corey L. Maze
 Ms. Kat Shea
 Mr. Michael O'Keefe

1059176v.1