**STONE PIGMAN WALTHER WITTMANN L.L.C.**

COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

45,600

June 6, 2011

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

      Re:    MDL No. 2179
                In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
                In the Gulf of Mexico on April 20, 2010

Dear Judge Shushan:

      We write on behalf of our client Cameron to respectfully request the following modifications to section 14 of the Court's May 23, 2011 Order, relating to time allocations for depositions:

      1.    That Cameron's base allocation of time be expanded from 45 minutes to 75 minutes; and

      2.    That the total time allocated for a two-day deposition be expanded from 15 to 15.5 hours, not generally but on a deposition-by-deposition basis, as needed in the unlikely event that one or more parties does not cede at least a half hour of the total time allocated to the parties under the Court's Order.

      On April 20, 2011, BP filed cross claims in the limitation and MDL No. 2179 proceedings, which included cross claims against Cameron. These cross claims include claims – which Cameron vigorously disputes – that blowout preventer equipment originally manufactured by Cameron, and which BP used in connection with the operations of the Deepwater Horizon, was "unreasonably dangerous," and that Cameron was negligent in maintaining this equipment.

1058927v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 2

June 6, 2011

Following the filing of this claim, Cameron has developed evidence in the depositions that goes directly to the lack of merit of BP's cross claims. This evidence includes, among other things:

1. Evidence of the failure of BP representatives (along with others) to use the BOP equipment as designed and intended to prevent the Macondo blowout.

2. Evidence of BP's detailed specifications for the precise equipment originally manufactured and supplied by Cameron.

3. Evidence of BP's failure to institute coherent and sufficiently detailed well control policies and procedures that, if installed and enforced, would have prevented the Macondo disaster.

Cameron understands that in entering this Order, and allocating 45 minutes of deposition time to Cameron, it was not the Court's intent to limit in any form or fashion Cameron's defense of any claims made against Cameron, including these more recently filed cross claims. Rather, the Court expressly notes in its May 23 Order, below the time allocations, that "(w)hen a witness is testifying about BOP issues, Cameron's time is increased and another defendant's time is decreased."

As the Court is well aware, Cameron never agreed to a time allocation less than that of the other defendants. However, in the early days of deposition and prior to the filing of cross claims, Cameron counsel generally did not use as much time in depositions as other defendants. This situation has changed, however, as the witnesses have become more significant and the claims have expended upon the recent filing of cross and third party claims. Now, Cameron respectfully requests that its base allocation of time correspond to that given to other defendants in these proceedings, such as BP, Transocean, Halliburton, and Anadarko.

Cameron makes this request in light of the fact that many depositions, both recent and scheduled, concern not only the BOP equipment but also issues of "well control," both generally and specifically with respect to the Macondo well. Whether a particular deposition will implicate the BOP equipment and well control issues is not always apparent when a deposition begins. Thus, it is not always possible for Cameron to know when it may need the full 75 minutes, and so ad hoc arrangements currently available to Cameron are not workable.

Whether apparent prior to the deposition, or raised by questioning during a deposition, these well control issues relate directly to Cameron's defense of the cross claims. These claims assert blame on the design of the BOP equipment rather than the manner in which the equipment was in fact used (or not used) and maintained, by BP and persons other than Cameron.

1058927v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 3

June 6, 2011

        The importance of this issue and its likely recurrence is illustrated by the recent deposition of a former BP Vice President, Kevin Lacy. Through the professionalism of counsel for plaintiffs and defendants other than BP, the situation at the Lacy deposition was resolved, and the deposition was concluded. Cameron seeks the Court's assistance so as to avoid a repeat of this situation as depositions go forward. (Attached to this letter is a rough transcript of a relevant passage of the Lacy transcript.)

        Importantly, Cameron's proposed "fix" does not disadvantage other parties. The addition of a half-hour to a two-day schedule would mean that no other party's time allocation would be reduced. It is expected that the parties will rarely need the full 15.5 hours of allocated time, but when they do, it is only because the witness is significant to many parties, including Cameron.

        Because of the pace of the deposition schedule, Cameron respectfully requests that the Court convene a hearing on this request at its earliest convenience.

        With kind regards, I remain,

                Sincerely,

                *Phil Wittmann*

                Phillip A. Wittmann

PAW:cmb  
Attachment  
cc:    Defense Liaison Counsel  
       Defense Steering Committee  
       Plaintiff's Liaison Counsel  
       Mr. R. Michael Underhill  
       Mr. Luther Strange  
       Mr. Corey L. Maze  
       Ms. Kat Shea  
       Mr. Michael O'Keefe

1058927v.1