UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig    *    MDL No. 2179
"Deepwater Horizon" in the Gulf    *
of Mexico, on April 20, 2010       *    SECTION: J
                                   *
Applies to: *D1 Bundle*            *    JUDGE BARBIER
            Master Complaint       *    MAGISTRATE SHUSHAN
 *    *    *    *    *    *    *    *    *    *    *

ORDER AND REASONS
[As to D1 Master Complaint]

This multi-district litigation consists of hundreds of cases, with over 100,000 individual claimants, presently pending before this Court. Each of the cases arise from the April 20, 2010 explosion, fire and capsizing of the Deepwater Horizon, a mobile offshore drilling unit owned by Defendant Transocean and under contract to Defendant BP. As a result of the casualty, millions of gallons of oil were released into the Gulf of Mexico before the well was finally contained approximately three months later.

In accordance with Pretrial Order No. 11 (Case Management Order No. 1), the Court created several "pleading bundles" for the purposes of filing master complaints, answers, and any Rule 12 motions. Pleading Bundle D1 includes claims for injunctive relief

brought against private parties. The Plaintiffs' Steering Committee ("PSC") filed a D1 Master Complaint (Rec. Doc. 880), which contains claims for injunctive relief filed by certain individual and organizational Plaintiffs. The First through Fifth Claims of the D-1 Master Complaint allege violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1311 *et seq.*, with regard to discharge of pollutants into the Gulf of Mexico (First), discharge of oil and hazardous substances into the Gulf of Mexico (Second), discharge of toxic pollutants into the Gulf of Mexico (Third), discharge of pollutants in violation of National Standards of Performance (Fourth), and gross negligence or willful misconduct (Fifth). Plaintiffs further seek injunctive relief in connection with violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9603 (Sixth), violations of Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"), 42 U.S.C. § 11004 (Seventh), and violations of Endangered Species Act ("ESA"), 16 U.S.C. § 1538 (Eighth).

Additionally, Plaintiffs seek injunctive relief for trespass and nuisance under General Maritime and State Law (Ninth) and injunctive relief regarding removal to more stringent risk based

standards under state law (Tenth).  To the extent that Plaintiffs assert claims under General Maritime Law and/or state law, the Court will consider those claims separately when it addresses the pending motions to dismiss the B1 bundle Master Complaint.

Before the Court are Transocean Defendants' **Motion to Dismiss the D1 Master Complaint (Rec. Doc. 1407)**, BP Defendants' **Motion to Dismiss (Rec. Doc. 1441)**, Plaintiffs' **Opposition (Rec. Doc. 1819)**, and BP Defendants' **Reply (Rec. Docs. 2225)**.

**LEGAL STANDARD:**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff

pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949-50.

**DISCUSSION:**

"Article III, § 2 of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102 (1998). Jurisprudence scrutinizes the case-or-controversy limitation through the application of the doctrines of standing and mootness.

**I. Plaintiffs lack standing to bring their claims for injunctive relief.**

In Lujan v. Defenders of Wildlife, the Supreme Court clarified that to satisfy Article III's standing requirements, a plaintiff must show that (1) it has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. 504 U.S. 555, 560-61(1992). The question of standing translates to "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975).

Plaintiffs seek a declaration of Defendants' violations of the CWA, CERCLA, EPCRA, and ESA and an injunction to prevent Defendants "from operating their offshore facility in such manner as will result in further violation of the CWA, CERCLA, and EPCRA." D1 Master Complaint at ¶ 196(b)-(c). The issue is whether the Court's granting of Plaintiffs' request for injunctive relief is likely to redress the injury.

### A. Plaintiffs lack standing to bring their CWA, CERCLA, ESA, and state law claims.

To sustain their claims for injunctive relief, Plaintiffs must show that the injuries they allege will be redressed if they prevail. Although an injunction need not return the waters to the pre-spill state, it must, however, provide some benefit or reduction in pollution. See Public Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 73 (3d Cir.

1990). In this case, no such benefit may be achieved by the Court's injunction. In fact, the injunction at this stage would be useless, as not only is there no ongoing release from the well, but there is also no viable offshore facility from which any release could possibly occur.[1] The Macondo well is dead, and what remains of the Deepwater Horizon vessel is on the ocean floor, where it capsized and sank in 5,000 feet of water.

Moreover, BP and the agencies comprising the Unified Area Command have been and are cleaning up the Gulf of Mexico. An injury is not redressable by a citizen suit when the injury is already being redressed. See, e.g., SPPI-Somersville, Inc. v. TRC Cos., No. 07-5824, 2009 WL 2612227, *15 (N.D. Cal. Aug. 21, 2009) ("Plaintiffs seek relief that [has] already been provided outside of this lawsuit and . . . 'ha[ve] identified nothing whatsoever that this Court could order defendant to do to supplement [already existing remediation] efforts.'") (citing 87th St. Owners Corp. v. Carnegie-Hill-87th St. Corp., 251 F. Supp. 2d 1215, 1220-21

---

[1] Plaintiffs argue that the Court should not take judicial notice of the fact that there is no ongoing release in the Gulf of Mexico. However, Plaintiffs do not and cannot dispute the fact that the Macondo well was capped on July 15, 2010, which stopped the flow of oil from the well. The well was permanently sealed in September 2010, when a relief well was used to pump cement into the well.

(S.D.N.Y. 2002)). Plaintiffs here do not assert any deficiency in the federal and state remediation efforts, nor can Plaintiffs or the Court second guess existing governmental remediation decision making.

Further, an injury is not redressable for purposes of Article III standing when a claim depends on the actions of actors not before the court. See Young America's Found. v. Gates, 573 F.3d 797, 801 (D.C. Cir. 2009) (plaintiff lacked standing because redressability depended on undisputed discretion of third party); Fund for Animals v. Norton, 295 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Courts have been loath to find standing when redress depends largely on policy decisions yet to be made by government officials."). The D1 Defendants do not unilaterally direct the cleanup activities in the Gulf; such activities have been under the control of the National Incident Commander, Federal On Scene Coordinator, Unified Area Command, and the Coast Guard in cooperation with other federal agencies. Thus, Plaintiffs cannot show that an order from this Court would actually resolve any potential deficiency in the ongoing cleanup. See ASARCO Inc. v. Kadish, 490 U.S. 605, 614-615 (1989) (where redressability "depends on the unfettered choices made by independent actors not before the courts," a court should "have much less confidence in concluding that relief is likely to follow from a favorable decision"). For

the foregoing reasons, Plaintiffs' First through Sixth and Eighth Claims should be dismissed for lack of standing.

**B.    Plaintiffs lack standing to bring their EPCRA Claim.**

The EPCRA provides "a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release." Steel Co., 523 U.S. at 86. One of the main enforcement mechanisms to ensure compliance with the EPCRA reporting requirements is the citizen suit provision. Assuming that the operations fifty miles out in the Gulf were subject to EPCRA, it is unclear how the data collected under EPCRA can remedy the injury alleged by Plaintiffs. In light of the fact that there is no on-going release of oil and that data regarding the spill and its cleanup are easily accessible, the Court's grant of injunctive relief will not redress the injury claimed to have been sustained by Plaintiffs. Accordingly, the Seventh Claim should be dismissed for lack of standing.

**II. Plaintiffs' claims for injunctive relief are moot.**

As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006). A case will become moot where "there are no longer adverse parties with sufficient legal interests to maintain the litigation" or "when the parties lack a legally

cognizable interest in the outcome" of the litigation. <u>In re Scruggs</u>, 392 F.3d 124, 128 (5th Cir. 2004). As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; . . . [t]he parties must continue to have a personal stake in the outcome of the lawsuit." <u>Lewis v. Cont'l Bank Corp</u>., 494 U.S. 472, 477-78 (1990).

<u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u> presents the Supreme Court's take on the doctrine of mootness in the specific context of environmental citizen suits. 528 U.S. 167 (2000). <u>Laidlaw</u>'s facts centered around the defendant's repeated mercury discharge in violation of the established limits. The plaintiffs secured civil fines payable to the U.S. Treasury based on their suit, but the district court declined to order injunctive relief. Plaintiffs chose not to appeal the denial of injunctive relief. The Fourth Circuit vacated the district court's order as moot after the defendant had come into compliance with its CWA permit. The Supreme Court held that the mere fact of substantial compliance with the discharge permits did not render the plaintiffs' civil penalties claim moot because an award of civil penalties to the Treasury could still have had a deterrent effect.

The D1 bundle Plaintiffs are not seeking the type of civil monetary penalties that saved the <u>Laidlaw</u> case from mootness. According to the Court's PTO #11, the D1 bundle does not encompass

9

claims for monetary relief and is limited to claims for injunctive relief. In order to prevail on their claims for injunctive relief, Plaintiffs must demonstrate an ongoing violation of various statutes on which Plaintiffs' claim for relief is based. Because the Macondo well is dead and is no longer discharging oil, Plaintiffs' only claims are confined to seeking environmental citizen suit injunctive relief of a prospective nature to stop noncompliance in the form of a continued release of oil. Thus, the citizen suit claims brought by the Plaintiffs are moot, because no future-oriented injunction can provide any meaningful relief for Plaintiffs in terms of stopping discharges that already concluded in mid-July 2010. See Raymond Proffitt Found. v. Army Corps of Eng'rs, 175 F. Supp. 2d 755, 773 (E.D. Pa. 2001) ("However, the only relief being sought by plaintiffs is prospective injunctive relief against further storage. The grant of such a remedy will not provide plaintiffs with any relief from the violations that they are challenging."). Therefore, Plaintiffs' D1 bundle claims must be dismissed as moot.

**III. Plaintiffs' claims for injunctive relief must be dismissed because Defendants are not "in violation," as is required by the statutes.**

Under the CWA, the ESA, the EPCRA, and CERCLA, a plaintiff must show that the defendant is in violation in order to have an

actionable claim. See 33 U.S.C. § 1365(a); 16 U.S.C. § 1540; Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987). While a court may have jurisdiction in those limited situations where a citizen plaintiff can show a reasonable likelihood of reoccurrence, Plaintiffs' mere assertion of possible recurrence is insufficient to trigger that limited exception. First, there is no longer any facility from which a release could occur. Second, there have been multiple closures of the well, which leaves no reasonable possibility that there will be any release in the future. Accordingly, without an ongoing violation, without a facility from which any future violation could occur, there is no likelihood that the release can reasonably be expected to reoccur. Hence, the First through Eighth Claims for Relief in Plaintiffs' D1 Master Complaint must be dismissed.

### A. CWA citizen suit claims (First through Fifth) should be dismissed under Gwaltney's holding.

The citizen-suit provision of the CWA states that "any citizen may commence a civil action on his own behalf against any person . . . who is . . . alleged to be in violation . . . of an effluent standard or limitation." 33 U.S.C. § 1365(a). In Gwaltney, the United States Supreme Court held that the provision of CWA authorizing citizen suits for injunctive relief or civil penalties against persons allegedly in violation of CWA did not confer federal jurisdiction over citizen suits for wholly past violations;

rather it conferred citizen suit jurisdiction only based on good-faith allegations of "continuous" or "intermittent" violations. 484 U.S. at 57. Thus, under <u>Gwaltney</u>, a court does not have subject matter jurisdiction over a CWA citizen suit where there is not a continuing discharge of pollutants. Because the release of oil occurred in the past, the CWA claims must be dismissed.

### B. Endangered Species Act (ESA) Claim (Eighth) should be dismissed because there is no ongoing violation.

Under the ESA, a citizen suit may be used "to enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). Thus, a defendant may be enjoined if the defendant is taking endangered or threatened species. <u>See, e.g.</u>, <u>Animal Welfare Inst. v. Beech Ridge Energy, LLC</u>, 675 F. Supp. 2d 540, 560 (D.Md. 2009) ("[T]he ESA's citizen suit provision provides for injunctive relief which by design prevents *future* actions that will take listed species."); <u>see also</u> <u>Forest Conservation Council v. Rosboro Lumber Co.</u>, 50 F.3d 781, 785 (9th Cir. 1995) ("[T]he injunctive relief authorized by the citizen suit provision, 16 U.S.C. § 1540(g), is by its very nature directed at future actions."). Plaintiffs' Eighth Claim must be dismissed because the alleged violations –– the release of oil — occurred in the past.

### C. EPCRA and CERCLA Claims (Sixth and Seventh Claim) should be dismissed because there is no ongoing violation.

Similarly, to be actionable, claims under the EPCRA and CERCLA must allege ongoing violations. See, e.g., Steel Co., 523 U.S. at 109 (in dismissing wholly past EPCRA violations, the Court noted that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'") (quoting O'Shea v. Littleton, 414 U.S. 488, 4950-96 (1974) (alteration in original)); Coalition for Health Concern v. LWD, Inc., 60 F.3d 1188, 1193 (6th Cir. 1995) (dismissing CERCLA citizens suit for failure to allege continuous or intermittent violations); Lutz v. Chromatex, Inc., 718 F. Supp. 413, 420-22 (M.D. Pa. 1989) (applying Gwaltney to CERCLA). Therefore, the Sixth and Seventh Claims should be dismissed. Accordingly,

**IT IS ORDERED** that Defendants' **Motions to Dismiss (Rec. Docs. 1407 and 1441)** are **GRANTED**, dismissing in its entirety the D1 Master Complaint. To the extent that Plaintiffs assert claims under General Maritime Law and/or state law, the Court will consider those claims separately when it addresses the pending motions to dismiss the B1 bundle Master Complaint.

New Orleans, Louisiana this 16th day of June, 2011.

_____
United States District Judge