# COHEN, GORMAN & PUTNAM, L.L.P.

### ATTORNEYS AND COUNSELORS AT LAW

1010 LAMAR STREET, SUITE 1000
HOUSTON, TEXAS 77002-6314
TELEPHONE: (713) 224-0628
FACSIMILE: (713) 224-7487

Email: rgorman@cgptexas.com

June 11, 2011

***Via Email (pdf): Sally_Shushan@laed.uscourts.gov***

Hon. Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street
Room B - 345
New Orleans, Louisiana 70130

> C.A. No. MDL-2179 *In Re: Oil Spill by the Oil Rig*
> *"DEEPWATER HORIZON"* -
> Submission in Response to Doc. No. 2713  Order
> Regarding DNV Objections to Rule 30(b)(6)
> Subpoena -
> Our File: 01699

Dear Magistrate Judge Shushan:

This letter serves as the response of Det Norske Veritas (U.S.A.), Inc. (hereinafter "DNV USA") to this Court's June 9, 2011 Order [Doc. No. 2713] and Cameron's June 8, 20011 letter to the Court. The letter is being provided for the Court's information only, and should not be construed by the Court or any party as a waiver of any objection asserted by DNV USA to either the Anadarko Petroleum Corporation or BP Exploration & Production Inc. subpoena. Further, no general waiver of the attorney-client and/or work product privilege is intended or should be construed.

As has been communicated to the Court and interested parties already, although DNV USA objected to the subpoena, as is provided for under Rule 45(c)(2)(B), it has since taken significant steps to gather and segregate information for review by the various interested parties, so that the documents can be made available for release by Monday, June 13, 2011. As this Court is now aware, DNV USA's position in general (as to the vast majority of the information in its possession), is that it wants the various parties in contractual, proprietary or otherwise at interest with the

documents to make the decision on what items can and cannot be produced, and what items should be identified to be protected. DNV USA takes this position because it has contractual relationships governing to various degrees the right to release information. Certainly, in terms of releasing information, the parties to the lawsuit are in the best position to understand what has been produced in the litigation already, and what objections have been made by each party to documents in DNV USA's possession, so that information can be protected as is necessary, and so the documents do not have to be unnecessarily duplicated. Additionally, DNV USA is of the view that under the atypical circumstances that exist here, each entity, and not DNV USA, is the correct party to assert any privilege or right to protect documents, and to prepare privilege logs for the documents under their "control." Such is the case because the control right arises by contract, or by other potential means, such as patent, trademark or otherwise, about which DNV USA may or may not know.

Kindly note that this letter is not intended to discuss in detail all potential issues involved in DNV USA's objections to the Anadarko subpoena, but is merely a response to the issues raised in Cameron's letter. With this background, DNV USA's responds as follows.

1.    **Rule 37(a)(1).**  Cameron asserts that its letter is ripe for Court resolution under Rule 37(a)(1). This is incorrect. The Rule that applies to this situation is Rule 45(c)(2)(B), and not Rule 37(a)(1). Rule 37(a)(1) applies only after a "party" has failed to timely disclose requested information, and the situation could not be resolved between the parties. Here, even if the Rule 37 applied, there has been no requisite failure to disclose, as the time to do so is not here. Procedurally, as is applicable to the subpoena issued to non-party DNV USA, under Rule 45, there has been no motion to compel filed by the "serving party," and no court order under Rule 45(c)(2)(B)(ii). There is a specific procedure for dealing with Rule 45 subpoenas, and the Rule 45 required procedure is not being followed. There can be no doubt that we are dealing with a Rule 45 subpoena, because the Rule 45 form was used.

Regarding communications that took place about the subpoena, it is important for the Court to be aware that there were post-service of subpoena communications in which DNV USA tried to get the scope of the subpoena narrowed. No agreement was reached, but it was suggested by Anadarko's counsel to DNV USA's counsel that DNV USA object if it had issues, because the Anadarko lawyer did not have the authority to decide.[1] Simply put, DNV USA was put in a position of having to try to deal with multiple parties piecemeal, because no one lawyer apparently had authority to speak for the group. This was not an acceptable position to DNV USA, and certainly is not one that sought to minimize the burden on DNV USA, as is contemplated under Rule 45.

2.    **Issues Raised by Cameron are Premature.** The deadline for response has not occurred. DNV USA has merely preserved its objections to the subpoena as allowed under Rule 45. Subject to and without waiving its objections, DNV USA's plan has been to produce certain non-

---

[1]        *See* Exhibit A attached.

privileged, relevant documents and other information, to the extent it is authorized by the various entities controlling the information to do so.  DNV USA has tried to work to complete this effort over the weekend, and continues to move forward with this work.

      3     **Rights of Third Parties are at Issue.** The majority of documents and other information requested by the Anadarko subpoena do not belong to DNV USA, as they were provided to DNV during the course of its forensic investigation by parties to the litigation or by the United States.  Many of these documents by contract are controlled by parties other than DNV USA, or because the records are proprietary or confidential to an entity other than DNV USA.  DNV USA has no direct knowledge as to what the various parties think is proprietary or confidential, so it is DNV USA's position that each party must do this work for itself.

      As outlined in my email to the Court yesterday, the undersigned counsel has contacted all parties which it reasonably believes to have an interest in the documents or other data now in its possession, and invited or otherwise made arrangements for each party's counsel to review its client's documents before production of same, so that each party can preserve its rights, object as deemed necessary, and designate documents  "confidential" or "highly confidential."  DNV USA is of the view that this process is the best way to protect its own interests, so that it does not get accused of improper disclosure, and the interests of others.

      4.     **BOP Phase I Material Requires Government Approval Before Release.** The documents and other data in DNV USA's possession which relate to Phase I of the BOP testing is the property of the U.S. Government. Cameron is correct that DNV USA did not make the government's arguments. Simply put, DNV USA is not the proper party to make any arguments for the government.  DNV USA brought attention to the issue, by way of objection.  DNV USA is leaving the government's work to the government, in the same way it wants to leave the similar work of each party to that party.  As to the BOP Phase I documents and information, DNV USA by contract must be guided by what the government has to say on this issue.

      The contract for the Phase I BOP testing expressly prohibits releasing any of the information without written approval of the Contracting Officer. DNV USA promptly notified the United States that subpoenas were issued and requested written instructions on how it should proceed. So far DNV USA has not received written approval for release of BOP Phase I data and other documents, so it objected to production on those grounds. DNV USA understands that the U.S. Department of Justice and other government entities are working on the issue, but to date, the United States has not issued formal instructions to DNV USA. Counsel for DNV USA understands that the United States intends to file a brief with the Court explaining its position.

      DNV USA maintains the view that this is an issue that must be resolved between the United States and the Court, or others, to the extent an agreement can be reached.  Until the issue is

resolved, whether by Court process or instructions issued by the government, DNV USA must stand by.

5.    **BOP Phase II Material Has Already Been Produced.** Cameron takes issue with DNV USA's objection to re-producing the BOP Phase II material that is currently being immediately updated and provided to the Parties on a daily basis.  DNV stands on its objection and will not re-produce BOP Phase II information that has already been produced, and is being produced on a rolling basis pursuant to this Court's Order approving the BOP Phase II contract.  *See* Court's Order approving contract for further testing of BOP, Doc. No. 2016 at p. 2. The distribution process was set up by agreement of the parties and the Court to expedite production of this material and prevent the very dispute Cameron has raised here. A contractor was hired to facilitate immediate production of the BOP Phase II material. The process is working.

Unless otherwise directed by the Court, DNV USA shall not re-produce the BOP Phase II material that has already been produced to the parties in response to the subpoenas.  DNV USA would add that its view is that Cameron or others must make some showing that there is a potential problem with the current process before the requested duplicate production can be ordered.  There are safeguards in place to verify the information transfer, and Cameron has not even attempted to show, nonetheless shown, that there has been a problem with the data and information transfer.

The premise of Rule 45 is to not create an undue burden on the non-party.  Duplication of the information would be burdensome, due to the immense volume of information.  To the extent the Court is even willing to entertain such a request, note well that the on site DNV USA representatives have advised that such an undertaking cannot take place, if at all, until after all of the Michoud work is complete, and all demobilization is finished. The demobilization work could take up to one month to complete, which means a late July, early August finish.  After that, the data reproduction work would take at least one month, if not more, at a projected expense in excess of $100,000.00.  The costs could exceed $200,000.00, or more.  These are guesstimates.

6.    **Attorney-Client Privilege and Work Product.**  This issue is governed by Pretrial Order No. 14, ¶ 2. [Doc. 655].  Cameron claims that DNV USA should be subjected to the same rules as a party.  That being the case, if the parties do not have to keep a log,[2] it does not make sense that a non-party should keep a log.  The Court Order contemplates through the definition of Producing Party that the rule applies to a non-party like DNV USA who is producing documents.  Certainly Cameron is not suggesting that DNV USA's counsel should have to log all of its communications with its client.  I am certain that none of the parties want to log all of their

---

[2]           The order states: "Privilege log identification is not required for post-April 20, 2010 communications exchanged between the Producing Party and their counsel or among counsel for the producing party....  The same is true for communications between counsel.  Pretrial Order No. 14, Doc. No. 655 ¶ 2.

June 11, 2011                                                                                          Page 5

communications with their clients and witnesses. Further, Cameron cannot be suggesting that communications between the lawyers and a company witness in preparing for testimony are somehow discoverable or need to be logged. Any such suggestion must and does run afoul with the undue burden requirements of Rule 45, and the core foundational basis for the attorney-client and work product privileges.

To the extent Cameron believes DNV is trying to protect the BOP Phase I work as privileged, DNV USA is not asserting a work product privilege as to the BOP Phase I final report. As for the other work done on Phase I, that issue has been discussed already, and will not be repeated here. The government must address that situation.

DNV USA reserves its right under Federal Rule 45 to seek its costs and attorney's fees incurred in connection with all work required to object and respond to the subpoenas, including the determination of its legal rights and obligations under the Federal Rules. *Orbit One Comms., Inc. v. Numerex Corp.*, 2009 U.S. DIST. LEXIS 29188 at 11-17 (E.D. La. 2009).

DNV USA looks forward to discussing these matters with the Court on Monday afternoon.

Very truly yours,

COHEN, GORMAN & PUTNAM, L.L.P.

By:_____
Richard L. Gorman

RLG/SDG:akr
01699/Ltr.Shushan.06/11/11

# Exhibit A

**From:** Mark Cohen
**Sent:** Monday, May 30, 2011 12:36 PM
**To:** Fitch, Warren Anthony
**Subject:** RE: DNV

Tony,

   May DNV limit the response range in the subpoena to something bearable, such as 5 years predating the incident?  This is how BP set it up.
   regards,
   Mark


Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
***********************
CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are
intended for the use of the addressee(s) only, and may contain
information that is PRIVILEGED, CONFIDENTIAL, and may contain
ATTORNEY WORK PRODUCT.  If you are not the intended recipient of
this communication, you are hereby notified that dissemination of
this communication is strictly prohibited.  If you have received
this communication in error,  please delete all electronic copies
of this message and its attachments, destroy any hard copies you
may have created and notify Mark Cohen or the Office Manager the
above email address and telephone number 713-224-0628.


**From:** Fitch, Warren Anthony [mailto:Tony.Fitch@bingham.com]
**Sent:** Tuesday, May 17, 2011 4:29 PM
**To:** 'Mark Cohen'
**Subject:** DNV

Mark --

    As previously discussed, attached please find a copy of the subpoena *duces tecum* formally seeking the documents listed in the document request section of the Rule 30(b)(6) Notice.  As always, please call me with any questions or concerns.

Warren Anthony Fitch
*Partner*
T 202.373.6695
F 202.373.6001
tony.fitch@bingham.com

B I N G H A M
Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806

The information in this transmittal (including attachments, if any) is privileged and
confidential and is intended only for the recipient(s) listed above. Any review, use,
disclosure, distribution or copying of this transmittal is prohibited except by or on behalf
of the intended recipient. If you have received this transmittal in error, please notify me
immediately by reply email and destroy all copies of the transmittal. Thank you.

Confidentiality Notice: The information in this e-mail (including attachments,
if any) is considered confidential and is intended only for the recipient(s)
listed above. Any review, use, disclosure, distribution or copying of this e-mail
is prohibited except by or on behalf of the intended recipient. If you have
received this email in error, please notify me immediately by reply email,
delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS
requirements, we inform you that any U.S. federal tax advice contained in
this communication is not intended or written to be used, and cannot be used
by any taxpayer, for the purpose of avoiding any federal tax penalties. Any
legal advice expressed in this message is being delivered to you solely for
your use in connection with the matters addressed herein and may not be
relied upon by any other person or entity or used for any other purpose
without our prior written consent.

**From:** Fitch, Warren Anthony [mailto:Tony.Fitch@bingham.com]
**Sent:** Monday, May 30, 2011 1:37 PM
**To:** 'Mark Cohen'
**Subject:** RE: DNV

Hello Mark --

   I really don't have the final say on such matters.  I suggest that you either send an e-mail to the normal, entire distribution list proposing, say, production of documents since January 1, 2005 OR serve formal objections that include this point.


**Warren Anthony Fitch**
*Partner*
**T 202.373.6695**
**F 202.373.6001**
**tony.fitch@bingham.com**

**B I N G H A M**
**Bingham McCutchen LLP**
**2020 K Street NW**
**Washington, DC 20006-1806**


The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.


**From:** Mark Cohen [mailto:mcohen@cgptexas.com]
**Sent:** Monday, May 30, 2011 1:36 PM
**To:** Fitch, Warren Anthony
**Subject:** RE: DNV

Tony,

   May DNV limit the response range in the subpoena to something bearable, such as 5 years predating the incident?  This is how BP set it up.
   regards,
   Mark

Mark Cohen
Cohen, Gorman & Putnam, L.L.P.

1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314

Office Phone: 713-224-0628
Fax:  713 224-7487
Email: mcohen@cgptexas.com
Mobile Phone: 832-725-6750
* * * * * * * * * * * * * * * * * * * * * * *
CONFIDENTIALITY STATEMENT
This communication, all related responses and any attachments are
intended for the use of the addressee(s) only, and may contain
information that is PRIVILEGED, CONFIDENTIAL, and may contain
ATTORNEY WORK PRODUCT.  If you are not the intended recipient of
this communication, you are hereby notified that dissemination of
this communication is strictly prohibited.  If you have received
this communication in error,  please delete all electronic copies
of this message and its attachments, destroy any hard copies you
may have created and notify Mark Cohen or the Office Manager the
above email address and telephone number 713-224-0628.

---

**From:** Fitch, Warren Anthony [mailto:Tony.Fitch@bingham.com]
**Sent:** Tuesday, May 17, 2011 4:29 PM
**To:** 'Mark Cohen'
**Subject:** DNV

Mark --

As previously discussed, attached please find a copy of the subpoena *duces tecum*
formally seeking the documents listed in the document request section of the Rule
30(b)(6) Notice.  As always, please call me with any questions or concerns.

**Warren Anthony Fitch**
*Partner*
**T 202.373.6695**
**F 202.373.6001**
**tony.fitch@bingham.com**

**B I N G H A M**
**Bingham McCutchen LLP**
**2020 K Street NW**
**Washington, DC 20006-1806**

The information in this transmittal (including attachments, if any) is privileged and
confidential and is intended only for the recipient(s) listed above. Any review, use,
disclosure, distribution or copying of this transmittal is prohibited except by or on behalf

of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.