# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:                                    (312) 862-2000                                    Facsimile:
(312) 862-2064                                                                                                (312) 862-2200
alangan@kirkland.com                                      www.kirkland.com

June 14, 2011

**Via E-mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

RE:   MDL 2179 - *In re: Deepwater Horizon*

Dear Judge Shushan:

We write in response to: (1) Cameron's June 6th letter requesting modifications to the
Court's May 23, 2011 Working Group Order regarding deposition questioning time, and (2)
Anadarko's June 12th letter regarding the allocation of MOEX's deposition time, and also (3) to
address several other related issues that have arisen during recent depositions.

1. <u>**Cameron's requests for additional questioning time and for lengthening each
deposition to 15.5 hours should be denied.**</u>

In its June 6th letter, Cameron asks the Court to grant it an additional 30 minutes of
deposition time for each witness, with this additional allocation being created by expanding the
default length of each deposition from 15 hours to 15.5 hours.  We respectfully request that the
Court deny both requests.

The default length of depositions in MDL 2179 should not be extended beyond the
current 15 hours.  After lengthy discussion and debate, the Court already doubled the default
length of each deposition when it entered Pre-Trial Order ("PTO") #27 in late January 2011.[1]
Since then, BP and the other parties have been furnishing the vast majority of their witnesses for
15-hour depositions -- which result in two long days and hundreds of pages of testimony from

---

[1] Prior to the entry of PTO #27, in a January 18, 2011 letter to the Court, Cameron argued that the Court should limit
the default time of depositions to 8 hours, stating that "Cameron International Corporation opposes any expansion of
the time limits established by Pretrial Order #17 for deposition of witnesses in the absence of counsel agreement to
modify the limits."

Hong Kong        London        Los Angeles        Munich        New York        Palo Alto        San Francisco        Shanghai        Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 2

each deponent.  Extending the default time even further would unnecessarily burden the deponents and the producing parties.  We note that, at the date of this submission, BP has produced more than half of the total witnesses in these proceedings (46), while Cameron produced its first witness for deposition last week.  While it is no trouble for parties such as Cameron, which produce few deponents, to ask for the depositions of others to be lengthened, going beyond the current default length in an already packed deposition schedule poses an unwarranted additional burden on the producing parties, many of whom already are meeting very significant discovery responsibilities on a short schedule leading up to the February 2012 phase one  trial.

Moreover, the Court has already addressed Cameron's concerns by creating processes for parties with particular interests in certain deponents to get extra time for those depositions.  Those parties can either: (a) coordinate their questioning with other parties with similar interests; (b) ask other parties to cede all or part of their time; or (c) be allocated additional time by showing good cause to the Court -- a process through which the depositions are often extended beyond 15 hours, but only after a party shows a particular need for additional time and that it was not able to secure additional time through other means.  Cameron has utilized this procedure to request extra deposition time for a number of deponents, including DNV, Bill Ambrose, and Mark Haye of Transocean, as shown in this Court's May 9, 2011 memo re time requests.

In its June 6 letter, Cameron did not show that these processes are insufficient to meet its needs or demonstrate that it has a material need for additional questioning time.  Nor could it.  In the vast majority of the depositions that have taken place to date, Cameron has not asked a single question.  In those few depositions that Cameron has asked questions, its counsel generally have not taken nearly the 45 minutes that Cameron is currently allocated.  In fact, in 20 randomly-selected depositions that have taken place thus far -- including 6 depositions that occurred after the cross-claims were filed against Cameron on April 20th -- Cameron did not ask a single question in 17 of them (85%).  After using less than 90 minutes of questioning time in those 20 depositions *combined*, Cameron is asking for 75 minutes for *each* deposition going forward.  Particularly based on the evidence before the Court and the processes that have already been put in place for parties to seek additional time when needed, we respectfully submit that there is no reason for the Court to extend the default length of depositions to 15.5 hours as Cameron has requested.

Additionally, in response to Cameron's letter, we would like to correct the record regarding the June 1-2 deposition of Kevin Lacy, which took place more than a week after the Court distributed its May 23rd Working Group Order (Doc. 2508) ("Order").  The Order explicitly stated that Cameron was allotted 45 minutes of questioning time in depositions.  *See* Doc. 2508, Order on 5/20/11 Working Group Conference at 6.  As with any counsel attending

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 3

depositions in this case, Cameron's counsel had an obligation to be aware of -- and to follow -- the Order's time allocation.  During the deposition, however, Cameron's counsel stubbornly professed ignorance of the Order, demanding that BP counsel provide him with a hard-copy of the Order, and later that same counsel flung aside the Court reporter's 5-minute warning card in trying to continue on with questioning beyond Cameron's court-ordered  allotment.  *See, e.g.*, Ex. A, 6/2/2011 Tr. at 674, 692-93.  While Cameron argues in its letter to the Court that it "never agreed to" the Order's time allocation, unless and until the Court amends or rescinds the Order, Cameron is bound to comply by the terms of the Order -- which Cameron did not appeal.[2]  Cameron's counsel should have been aware of the time allocation before Mr. Lacy's deposition began and should have chosen to comply with its provisions.  Its counsel's conduct at the Lacy deposition -- deliberately ignoring an order of this Court that counsel had an obligation to know of and follow -- was inappropriate.  That conduct deserves reprimand, not a reward of more deposition time.

2.  **MOEX remains a defendant in these proceedings and, accordingly, should retain its deposition time, which should be set at 37.5 minutes in a 2 day deposition.**

After the settlement agreement between BP and MOEX ("Settlement") was executed and the settlement was publicly announced, both during the May 20, 2011 Working Group meeting, and then in Anadarko's June 12th letter to the Court, a variety of defendants have claimed that they are entitled to the deposition time that the Court has already allocated to MOEX.  These parties' positions grossly misstate MOEX's continuing role as a defendant in these proceedings.  The claims brought by and against MOEX have not been changed by the Settlement.[3]  MOEX has not withdrawn its cross-claims against other defendants, and no party suing MOEX has, to our knowledge, withdrawn its claims against MOEX as a result of the Settlement.  Despite the Settlement, MOEX remains a defendant in these proceedings.  In fact, as Anadarko has recently (and successfully) argued in briefing its motion to compel discovery, MOEX must be allowed to take discovery in order to defend the significant number of claims against it -- even apart from

---

[2] "It is an undeniable proposition that parties to a court proceeding are obligated to comply with a court order that issues from that proceeding."  *Diamond v. U.S. Agency for Int'l Dev.*, 108 F.3d 312, 315 (Fed. Cir. 1997).  *See, also, Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").

[3] The only potential, known exception is that MOEX will no longer be pursuing its cross-claims against BP. But as explained in BP's pending Motion to Stay, those claims are subject to arbitration.  Thus, the discontinuation of these claims does not affect the amount of discovery that MOEX needed, or to which it was entitled, in this MDL.  Your Honor's ruling on Anadarko and MOEX's Motion to Compel Discovery against BP referred to discovery relating to Anadarko and MOEX's defenses (and their claims against non-BP defendants), not their offensive claims against BP, which remain subject to the pending Motion for Stay.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 4

the claims by MOEX against BP.[4]  Anadarko cannot, now that it happens to be expedient,
pretend it did not make these statements.  MOEX (or its indemnitors) must be allowed to defend
the claims against MOEX to the same extent Anadarko must defend itself against virtually the
same claims.

It is true, as has been announced by both BP and MOEX, that the Settlement involves BP
indemnifying MOEX.  However, that indemnification is not unlimited or unqualified.  Even after
the Settlement, MOEX has exposure to a variety of plaintiffs and defendants.  Since MOEX is
still prosecuting and defending against claims now as it did pre-Settlement, its need for discovery
is unchanged.  MOEX should maintain its deposition time -- which should logically be set at half
of the 75 minutes that Anadarko and MOEX have been sharing up to this point, as set forth in the
Court's May 23 Order (Doc. 2508) -- and be free to either use, trade, or cede its allocated time as
it sees fit, as is the right of each of the other parties in these proceedings.

3.  **Anadarko's June 12 Letter is Inaccurate as to Time Allocation Issues with
MOEX in Recent Depositions.**

In its July 12th letter to the Court, Anadarko attempts to recount "several conversations
with [MOEX] attorneys concerning the allocation of deposition time" between Anadarko and
MOEX.  These alleged conversations formed the basis for Anadarko's counsel's repeated
representations to the parties and the Court that MOEX had ceded all of its time in the deposition
of Dr. Hayward to Anadarko -- representations which, in turn, formed the basis for the Court's
June 8 ruling that Anadarko could question Dr. Hayward for 75 minutes.

The record, however, tells a different story.  During the deposition of Dr. Hayward, Ms.
Hertz -- counsel for Anadarko -- stated that Kathy McCollum of MOEX represented to Ms.
Kuchler of Anadarko that Anadarko could take MOEX's portion of their shared deposition time
to question Dr. Hayward:

> **MS. HERTZ:** There -- there is -- there
> 14  are no coun -- there is nobody here representing MOEX.
> 15  I intend -- and -- and we have been repre -- Kathy
> 16  McCollum, who's in-house at MOEX, represented to Deb
> 17  Kuchler, who you know, that there was no problem with

---

[4] See, e.g., Dkt. 1965-1 at 2 ("[T]he Non-Operating Defendants are defending against approximately 40,000 claims
brought by various plaintiffs."); Dkt. 2255 at 2 ("[MOEX is] among the many targets of claims brought by
approximately 130,000 plaintiffs, cross-claims brought by numerous co-defendants other than BP, . . . as well as
claims by the United States and state governments . . . .").) "Because [of] the defenses asserted by the Non-
Operating Defendants, . . . MOEX Offshore must be permitted to gather relevant, discoverable information . . . .".
(Dkt. 1965-1 at 9.)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 5

> 18   the time that we could have if they weren't coming to
> 19   London. I have, based on the representation, prepared
> 20   to examine Mr. Hayward, Dr. Hayward, for an hour and
> 21   fifteen minutes.

Ex. B, 6/8/2011 Tr. at 656-57. After counsel for BP objected and stated that BP was not aware of this cessation of time, Anadarko counsel again explicitly represented to the Court that MOEX ceded its time in this deposition to Anadarko.  *Id.* at 659.  Due to the time difference between London and the United States, none of the parties were able to confirm at that time whether MOEX did, in fact, cede its time to Anadarko for Dr. Hayward's deposition.  As a result, expressly based on Anadarko's representation, the Court allowed Anadarko 75 minutes to question Dr. Hayward:

> **MAGISTRATE SHUSHAN:** And it's your
> 23   representation that the time has been ceded to you?
> 24   **MS. HERTZ:** That's what I was told.
> 25   **MAGISTRATE SHUSHAN:** And --
> 1   **MS. HERTZ:** And that's the inception of
> 2   the --
> 3   **MAGISTRATE SHUSHAN:** -- it is my
> 4   understanding that, by agreement, cessation of time has
> 5   been agreed to, right?
> 6   **MS. HERTZ:** Many times.
> 7   **MAGISTRATE SHUSHAN:** Does anybody besides
> 8   BP disagree with the ceding of time? I'm sorry, but
> 9   we're going to allow the ceding of time.

*Id.* at 660.  Later, during the Hayward deposition, BP was able to contact MOEX's current counsel and determine that neither Kathy McCollum of MOEX nor Tom Campbell of Pillsbury agreed to cede MOEX's time to Anadarko for Dr. Hayward's deposition.[5]  *Id.* at 897-900.  After BP's counsel made this point on the record, Anadarko's counsel again represented that she "was told" that MOEX did cede its time during the Hayward deposition to Anadarko.  *Id.* at 900-901.

The next day, prior to the deposition of Mr. Harry Thierens of BP, the Court asked Ms. Kuchler to clarify what, if any, representations were made by MOEX to Anadarko regarding time allocations for Dr. Hayward's deposition.  At this point, after Anadarko had already questioned Dr. Hayward for 75 minutes, Ms. Kuchler disavowed any explicit ceding of time from MOEX for Dr. Hayward's deposition.  Indeed, Anadarko's June 12th letter to the Court

---

[5] In fact, Kathy McCollum -- whom Anadarko identified as the person who ceded MOEX's time for this deposition - - has explicitly stated that she never ceded MOEX's time to Anadarko for Dr. Hayward's deposition.

### KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 6

also does **not** allege that MOEX ever explicitly ceded its deposition time to Anadarko for the Hayward deposition, but rather recounts a conversation in which MOEX stated that "it was not planning to attend the London depositions" and "that the amount of deposition time to be allocated between Anadarko and MOEX would therefore not be an issue for the London depositions." Anadarko's strained, after-the-fact representations made during the Thierens deposition and then in its June 12th letter to the Court do not match the representation that it made to the Court in order to secure the additional time to question Dr. Hayward.

4.   **As the "target defendant," BP should be allocated more time for questioning deponents, including for direct examination of its own witnesses**.

According to the PSC's May 11th letter to the Court, "from the PSC's perspective, BP is the 'target defendant' and everybody knows it." This fact has been clearly demonstrated throughout the depositions that have been taken thus far. To be clear, BP is not complaining about being the PSC's and other parties' "target defendant," but is merely stating that the deposition time allocations should be altered prospectively to reflect this reality, in order to ensure that BP has a fair opportunity to prosecute its claims and to defend itself against claims brought by others. As the Court is now aware from direct observation last week, allotting BP 30 minutes to defend itself is insufficient when every other party uses the other 14.5 hours to try to make a record versus BP. This is the pattern seen in almost every deposition.

Under the current system, BP has only 30 minutes to conduct a direct examination of its own deponents in order to create a record. On some occasions, this 30 minutes has been increased somewhat if other parties yield time to BP. As an initial matter, this amount of time is often insufficient to rebut the over 14 hours of aggressive questioning from the other parties -- a recurring issue that is compounded by the fact that BP has produced more than half of the witnesses that have been deposed during these proceedings. Moreover, as occurred in the deposition of Dr. Hayward, even after BP was able to secure additional time from one of its co-defendants, the PSC still had more time available to it to re-cross-examine Dr. Hayward than BP spent examining Dr. Hayward in total. Given BP's status as the "target defendant" and the fact that more than half of the testimonial record is being provided by BP deponents,[6] BP requests that the Court allocate it an additional 60 minutes to conduct direct examinations of the witnesses that it produces. This arrangement would leave at least 13.5 hours for adverse questioning of

---

[6] For example, to date, BP has produced 46 deponents. Assuming that each of these were 15-hour depositions conducted in accordance with the time allocations set-out in the May 23rd Working Group Order (most but not all were), BP would have had a total of 23 hours of direct examination time for these deponents while the adverse parties would have questioned these deponents for a total of 667 hours -- placing BP at a significant disadvantage.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 7

these witnesses by the other parties -- depending on whether a party is able to show cause for additional time.[7]  Especially if those parties coordinate their examinations where they have similar interests, this arrangement will leave more than sufficient time for the parties to question these witnesses.

Particularly considering the fact that the other parties have clearly targeted BP throughout these proceedings, BP's time allowance has become fundamentally unfair and raises basic due process concerns.  Please see footnote 6 for an example.  BP must be allocated more time to prosecute its claims and to defend itself going forward.

5. **Agreements between parties to trade or cede deposition time should be made in writing or announced by the ceding party on the record during the deposition.**

As a result of the informal process that has been established whereby parties can trade and cede deposition time to each other, there has been significant confusion during several depositions regarding the amount of time that each party has to question a given deponent.  Because it falls to the producing party (which is generally not involved in these transactions) to enforce the time restrictions, such confusion can lead to unfairness.  BP does not object to the trading/ceding process.  Rather, in order to avoid confusion, we request that:

(A) If counsel for the party ceding time will not be physically present at the deposition, the agreement between the two parties shall be documented in writing with the written ceding document physically present at the deposition.

 (B) If counsel for the party ceding time is physically present at the deposition, such counsel will identify on the record the amount of time that was ceded to a given party.

This arrangement is not meant in any way to discourage the parties from trading and ceding time either before or during the course of a deposition.  Rather, it is meant to ensure that the parties can adhere to the rules that the Court has created to ensure a fair deposition process.

Thank you for the Court's consideration of these issues.

---

[7] BP respectfully suggests that part of this additional time can be taken from the States with claims pending in the MDL, which are currently allocated 2 hours of questioning time for each deposition.  It is clear that the States do not need the 2 hours of time that are allocated.  Using the same 20 randomly-selected depositions that were used to examine the amount of time Cameron has spent questioning deponents, the States: (a) did not question 8 of the 20 deponents at all; and (b) spent approximately an hour or less in questioning 8 of the other deponents.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 14, 2011
Page 8

Sincerely,

J. Andrew Langan, P.C.

cc:     Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill, Esq.
        Hon. Attorney General Luther Strange
        Cory Maze
        Donald E. Godwin
        James P. Roy
        Stephen J. Herman
        Mike O'Keefe
        Robert Cunningham