# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § § | MDL No. 2179<br><br>SECTION: J |
| This document relates to:<br><br>2:10-cv-02771 | § § § § § | Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |

---

### MEMORANDUM OF LAW IN SUPPORT OF M-I L.L.C.'s MOTION TO DISMISS CARNIVAL CORPORATION'S CROSS-CLAIM AND/OR THIRD PARTY COMPLAINT

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**

MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:   (305) 415-3000
Facsimile:   (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:   (713) 890-5000
Facsimile:   (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C**

June 17, 2011

By: */s/ Hugh E. Tanner*
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:   (713) 890-5000
    Facsimile:   (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

## INTRODUCTION AND SUMMARY OF ARGUMENT

Third Party Plaintiff Carnival Corporation, d/b/a, Carnival Cruise Lines ("Carnival"), alleges economic losses and damages against Defendant M-I L.L.C. ("M-I") and other parties related to the blowout on on the *Deepwater Horizon* in its Cross Claim in Limitation and/or Third Party Complaint ("Complaint" or "Compl."). Although M-I was merely a service provider without authority to direct drilling operations on the *Deepwater Horizon* and is not a "Responsible Party" under relevant law, Carnival contends that M-I is fully liable for alleged economic losses and damages suffered following the blowout and oil spill. Carnival's Complaint fails to state a claim on which relief can be granted and must be dismissed. *See* FED. R. CIV. P. 12(b)(6). Carnival's claims also fail for lack of subject-matter jurisdiction and must be dismissed on this basis as well. *See* FED. R. CIV. P. 12(b)(1).[1]

Two federal statutes govern the resolution of Carnival's claims: the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*. OPA provides Carnival with sweeping remedies for its alleged harms— including remedies for the precise kinds of harms allegedly suffered. OCSLA directs the Court's choice of law analysis and forecloses claims asserted against M-I under general maritime, federal, and state law.

First, OPA was created to provide a comprehensive statutory framework to address economic harms caused by an oil spill. It provides the sole remedy for Carnival's economic loss and property damage claims as OPA preempts and displaces general maritime law claims for

---

[1] Carnival improperly seeks to recover both in its individual case (Case No. 2:11-cv-00952-CJB-SS) filed as part the "B1 Bundle" as well as through this alleged "cross-claim." This cross-claim against M-I is procedurally improper. Out of an abundance of caution, M-I moves to dismiss the cross-claim to the extent this Court considers it procedurally proper and not part of the B1 Bundle.

damages recoverable under its provisions.  *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750 (E.D. La. 2009).  Because Carnival seeks to recover damages specifically provided for by OPA, its general maritime and federal law claims must be dismissed.

OPA, through its interaction with OCSLA, also forecloses Carnival's state law claims. Through OCSLA, Congress made clear its intention that oil and gas exploration and development on the Outer Continental Shelf be subject to exclusive federal jurisdiction and that, with few exceptions not applicable here, federal law alone governs conduct and liability related to such activities.  *See* 43 U.S.C. § 1333(a).  Under OCSLA, it is only the law of an adjacent state—in this case, Louisiana—that may *potentially* be borrowed as surrogate federal law, but only where necessary to fill a "substantial gap[]" or "void[]" in federal law on "artificial islands and fixed structures" on the Outer Continental Shelf.  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480 (1981) (internal quotations omitted); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 358 (1969).  The *Deepwater Horizon* is not an artificial island or fixed structure, and there is no such gap or void in federal law here.  Accordingly, Carnival's state law claims must be dismissed.

Second, this Court cannot exercise jurisdiction over Carnival's claims because it has not fulfilled OPA's presentment requirement.  OPA is the exclusive law governing claims for oil spill-related damages.  Through OPA, Congress created a mandatory condition precedent that all claims for oil spill-related damages must be presented to the Responsible Party before filing suit. *See* 33 U.S.C. § 2713.  To the extent that Carnival has failed to satisfy this mandatory presentment requirement under OPA, this Court lacks jurisdiction to hear Carnival's claims, and the suit should be dismissed.

DB1/ 67244909.5

Moreover, even if Carnival subsequently satisfies OPA's presentment requirement and can invoke this Court's jurisdiction, Carnival may seek relief only from the Responsible Parties. By its plain language, OPA provides for recovery of oil spill-related damages directly and exclusively from the Responsible Parties, who can in turn seek contribution against any other person believed to be liable or potentially liable for causing the damages. *See* 33 U.S.C. §§ 2702, 2709. Consistent with Congress's goal to provide a streamlined process for injured persons to recover oil spill-related damages, OPA does not permit direct actions against non-responsible third parties such as M-I. Thus, even if Carnival properly presents its claims under OPA, it does not have a direct right of action against M-I for oil spill-related damages. All claims seeking such damages must be dismissed.

Third, notwithstanding OPA preemption, Carnival's maritime law claims are barred under the Economic Loss Rule, which precludes recovery for pure economic losses in the absence of physical injury to a proprietary interest. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Carnival fails to allege a physical injury, which is fatal to its claims.

Fourth, to the extent state claims are not preempted by federal law, Carnival has failed to plead cognizable claims for relief under applicable state law.

Finally, to the extent Carnival is seeking punitive damages from M-I, its claims are foreclosed under applicable law.

## STATEMENT OF FACTS

On April 20, 2010, an explosion and fire occurred aboard the *Deepwater Horizon*, a semi-submersible mobile drilling rig, while it was in the final stages of drilling a well in the Outer Continental Shelf. Compl. ¶¶ 39, 52. Defendant Transocean owned and operated the rig, and Defendant BP contracted with Transocean to perform drilling services on the *Deepwater Horizon* on the site. *Id.* ¶¶ 52, 57. BP also contracted with other service providers, including M-

4

I, which provided drilling fluids on the rig.  M-I, as a service provider for BP, did not and is nowhere alleged to have exercised responsibility for drilling operations on the rig.  In fact, Carnival specifically alleges that "[a]t all material times, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean, BP, MOEX USA, MOEX Offshore, Mitsui, MOECO Anadarko E&P and/or Anadarko Petroleum."  *Id.* ¶ 57. After the explosion, the rig sank, severing a pipe connecting the vessel to the wellhead on the ocean floor and leading to the release of oil.  *Id.* ¶ 39.  In the aftermath of the accident, the Coast Guard designated BP the Responsible Party for the subsea release of oil under the Oil Pollution Act ("OPA") and Transocean a Responsible Party for the release of oil on the surface of the water.  *Id.* ¶ 64.

Carnival filed this Complaint, alleging six causes of action against 18 Defendants.  The only cross claims alleged against M-I are negligence and gross negligence under general maritime, federal, and state law.  *See* Compl. ¶ 74(t).  Each of these claims should be dismissed.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original); *accord Rutherford v. Louisiana*, Civil Action No. 10-1987, 2011 WL 692031, at *2 (E.D. La. Feb. 17, 2011).

The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  This standard "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation."  *Id.*; *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  The plaintiff must plead facts establishing its causes of action against each defendant; blanket assertions against all "Defendants" will not suffice.  *See*, *e.g.*, *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 580 (N.D. Tex. 2009).

In considering a motion to dismiss, the Court must accept factual allegations as true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Where a complaint pleads facts that suggest the "mere possibility of misconduct," it must be dismissed.  *Iqbal*, 129 S. Ct. at 1950.  In addition, where a successful defense appears on the face of the pleadings, the plaintiff has failed to demonstrate a plausible claim, and the claim must be dismissed.  *See Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008).

## I.    OPA AND OCSLA PREEMPT ALL MARITIME, FEDERAL, AND STATE LAW CLAIMS FOR OIL SPILL-RELATED DAMAGES.

A comprehensive federal regulatory and liability scheme, set forth in OCSLA and OPA, governs the discharge of oil relating to oil exploration and development on the Outer Continental Shelf.  The Outer Continental Shelf has long been subject to special congressional attention and oversight.  OCSLA establishes "national authority over the [Outer Continental Shelf] at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996).  In enacting OCSLA and

6

assuming such broad authority over subsea lands outside of the territorial control of the states, Congress sought to address the country's energy needs while protecting the environment and the public and private interests impacted by oil and gas development on the Outer Continental Shelf. *See* 43 U.S.C. § 1802.

Following the Exxon *Valdez* oil spill in 1989, Congress revisited its approach to compensating parties injured by an oil spill. Passed in 1990, OPA is "a comprehensive federal scheme for oil pollution liability." *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000). Under Congress's scheme, persons damaged as a result of an oil spill are entitled to wide-ranging recovery from a federally designated "Responsible Party" under strict liability provisions intended to provide quick compensation "without resort to cumbersome litigation." 135 CONG. REC. H7954, H7965 (1989). Injured private parties are entitled to prompt payment from the Responsible Party for, *inter alia*: (i) removal costs—"costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan" (33 U.S.C. § 2702(b)(1)(B)); (ii) real or personal property damage—"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property" (*id.* § 2702(b)(2)(B)); (iii) revenues—"[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof" (*id.* § 2702(b)(2)(D)); and (iv) profits and earning capacity—"[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant" (*id.* § 2702(b)(2)(E)). Litigation, where necessary, is designed to take place among the Responsible

7

Party and potentially liable companies via indemnity, subrogation, and contribution actions brought by the Responsible Party.  *See* 33 U.S.C. § 2709; *Gabarick*, 623 F. Supp. 2d at 750. [2]

OPA provides the sole and exclusive federal remedy for persons harmed by an oil spill anywhere within the federal government's jurisdiction.  And where, as here, injuries occur as a result of alleged wrongdoing on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties are compensated without upsetting Congress's intent that OCSLA "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (citation omitted).

As set forth below, Carnival's maritime, federal, and state law claims against M-I are not cognizable under governing law.  Recognition of such claims would disrupt Congress's carefully considered compensatory regime and frustrate clearly stated congressional intent with respect to operations on the Outer Continental Shelf.  Carnival's claims against M-I must, therefore, be dismissed.

### A.    OPA Displaces All Carnival's Maritime and Federal Law Claims Against M-I.

Carnival's Complaint seeks damages from M-I under general maritime and federal law for both negligence and gross negligence.  *See* Compl. ¶¶ 71-74.   These claims must be dismissed because they are foreclosed by well-settled law—recognized unanimously by courts across the country—that OPA provides the exclusive federal remedy for economic damage caused by an oil spill.  *See S. Port Marine*, 234 F.3d at 64-66; *Gabarick*, 623 F. Supp. 2d at 746; *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V*

---

[2] Consistent with this scheme, on April 20, 2011, BP, as the Responsible Party under OPA, filed claims for contribution pursuant to OPA against certain of its MDL co-defendants, including Transocean, Halliburton, and Cameron.

*Westchester*, 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).

It is well-recognized that federal common law must cede to congressional enactments. "[O]nce Congress addresses a subject, even a subject previously governed by federal common law, … the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981).  Here, "[b]ecause OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages." *Nat'l Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1447.

Indeed, courts in this district have at least twice addressed this very issue, and both times have held that OPA displaces general maritime law.   A decade ago, in *Tanguis v. M/V Westchester*, the court first considered the preemptive effect of OPA, noting that the plain language of the statute—consistent with and confirmed by legislative history—made clear Congress's intent to fully occupy the field and establish an "entirely new federal cause of action."  153 F. Supp. 2d at 867-68 (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)); S. REP. NO. 101-94, at 9 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.

More recently, in *Gabarick v. Laurin Maritime (Am.) Inc.*, this Court considered the exact question presented here and concluded that "the plain language of [OPA] indicates its mandatory and exclusive nature with respect to its covered damages." 623 F. Supp. 2d at 746.  In *Gabarick*, a collision between a barge and a tow boat led to the release of approximately 500,000 gallons of fuel oil into the Mississippi River.  *Gabarick v. Lauren Mar. (Am.), Inc.*, Civil Action Nos. 08-

04007, 08-04023, 08-04046, 2008 WL 3560426, at *1 (E.D. La. Aug. 11, 2008).  The *Gabarick* plaintiffs alleged that the oil contaminated the shoreline and drinking water and that they suffered business losses as a result of the spill.  *Id.*

In reaching its holding that OPA preempted the plaintiffs' claims, the Court conducted a detailed and thorough analysis of the four "*Oswego*" preemption factors:

    (1)    legislative history;

    (2)    the scope of the legislation;

    (3)    whether judge made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and

    (4)    likeliness of Congress's intent to preempt "long established and familiar principles of the common law or the general maritime law."

*Gabarick*, 623 F. Supp. 2d at 747 (quoting *United States v. Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981)).[3]

As to the first *Oswego* factor, the Court reviewed OPA's legislative history and concluded that "Congress's intent in enacting OPA [was] the creation of a single Federal law regarding liability for oil pollution."  *Id.* at 748.  On the second factor, the Court found the scope of OPA all-encompassing:  "It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful."  *Id.*  As to the third factor, the Court held that because of the comprehensiveness of OPA, "there is no gap" that needed to be filled by judge-made law.  *Id.*  Finally, under the fourth factor, the Court held "the intent of Congress … articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment

---

[3] The Fifth Circuit adopted the *Oswego* analysis in *United States v. M/V Big Sam*, 681 F.2d 432, 441-42 (5th Cir. 1982).

DB1/ 67244909.5

of comprehensive federal legislation that provides cleanup authority, penalties, and liability for oil pollution." *Id.* at 750 (citation and internal quotation marks omitted).

Accordingly, the Court held that OPA preempted the *Gabarick* plaintiffs' maritime law claims seeking "supplemental" remedies against an alleged oil polluter—a holding that has since been repeated without question in other cases in this district. *See In re Settoon Towing LLC*, Civil Action No. 07-1263, 2009 WL 4730969, at *3 (E.D. La. Dec. 4, 2009) ("[T]he OPA damages provision preempts the general maritime law.") (citing *Gabarick*, 623 F. Supp. 2d at 746); *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730971, at *4 (E.D. La. Dec. 4, 2009) (granting summary judgment in favor of the vessel owner on a general maritime claim seeking recovery for oil spill-related claims because OPA preempted the general maritime law for the damages sought).

Carnival has alleged general maritime and federal law causes of action and seeks damages for fuel costs, additional vessel cleaning costs, loss of revenue, and loss of bookings. *See* Compl. ¶ 77. No matter how Carnival captions or presents its claims, because these damages under general maritime and federal law are identical to those recoverable under OPA, they are preempted and must be dismissed.

**B.    OCSLA Forecloses Carnival's State Law Claims.**

Carnival alleges that M-I is liable for negligence under unspecified state law. Compl. ¶ 74(t). Congress has made clear that state law claims cannot be brought for oil spill-related injuries stemming from oil exploration and development activities on a rig such as the *Deepwater Horizon* that is engaged in activities on the Outer Continental Shelf. *See Tenn. Gas Pipeline*, 87 F.3d at 153 ("OCSLA makes federal law exclusive in its regulation of the OCS….") (footnote omitted); *see also* 43 U.S.C. § 1332(1) ("the subsoil and seabed of the outer Continental Shelf  appertain to the United States and are subject to its jurisdiction, control, and

11

power of disposition"). Courts have had no trouble finding that OCSLA governs claims arising out of or in connection with the operation of oil exploration activities on the Outer Continental Shelf—such as the claims alleged by Carnival. *See Tenn. Gas Pipeline*, 87 F.3d at 154; *EP Operating*, 26 F.3d at 569. Indeed, this Court has already held that OCSLA governs this dispute. Oct. 16, 2010 Order (Dkt. No. 470) 6-8.

Congress has long asserted plenary control over operations on the Outer Continental Shelf. *See generally Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981); *United States v. California*, 332 U.S. 19 (1947). Congress's aims with respect to the Outer Continental Shelf require careful balancing of competing goals, such as protecting the environment and encouraging energy production. *See* 43 U.S.C. § 1802; *see also W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1289 (9th Cir. 1990) (OCSLA "declares the policy of the United States that the Outer Continental Shelf should be available for expeditious and orderly development subject to environmental safeguards."). Through OCSLA, Congress has extended an "expansive substantive reach" over "a wide range of activity occurring beyond the territorial waters of the states." *EP Operating*, 26 F.3d at 569; *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006). To that end, Congress has declared federal law "exclusive" with respect to activities on the Outer Continental Shelf. *See Tenn. Gas Pipeline*, 87 F.3d at 153; *see also* 43 U.S.C. § 1349(b)(1).

State law applies to activity on the Outer Continental Shelf only in certain narrowly defined circumstances. With respect to activity occurring on "artificial islands" or "fixed structures" that are "erected" on the Outer Continental Shelf, the adjacent state's law may be adopted as surrogate federal law, but *only* when necessary to fill a "substantial gap[]" or "void[]" that exists in the applicable federal law. *Gulf Offshore Co.*, 453 U.S. at 480 (internal quotation

12

marks omitted); *Rodrigue*, 395 U.S. at 357-58; *see also* 43 U.S.C. § 1333(a)(2)(A).   The *Deepwater Horizon* is not alleged to be—and indeed, is not—an "artificial island" or a "fixed structure" that was "erected" on the seafloor.  It is a semi-submersible mobile drilling rig.  Thus, by OCSLA's explicit terms, state law is inapplicable in this case.

Nonetheless, to the extent the door is even open to state law on the facts presented in this case, it can only apply to the extent it is "applicable and not inconsistent with" federal law. *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 507 (5th Cir. 1985).  The Fifth Circuit "has consistently held that '"applicable" must be read in terms of necessity—necessity to fill a significant void or gap.' " *Id.* at 509 (quoting *Nations v. Morris*, 483 U.S. 577, 585 (5th Cir. 1973)); *see also Gulf Offshore Co.*, 453 U.S. at 480 (state law may be adopted only to fill a "substantial gap[] in the coverage of federal law" (citing 43 U.S.C. § 1333(a)(2) (internal quotation marks omitted))).  Because Carnival claims economic loss as a result of an oil spill, it can—and indeed, must—seek relief through OPA, which provides a remedy for all of the economic losses sought under state law.  There is no "significant void or gap" in federal law for state law to fill under OCSLA.  *LeSassier*, 776 F.2d at 509; *see also S. Port Marine*, 234 F.3d at 64 (holding that OPA is intended to be the sole and exclusive federal law governing action for oil spill-related damages).  Thus, Carnival cannot pursue its state law negligence claims.

Nothing in OPA changes this result.   While OPA provides that states may impose additional liability for "the discharge of oil or other pollution by oil within such State," 33 U.S.C. § 2718(a)(1)(A), nothing in OPA or its legislative history evinces an intent to displace OCSLA or disrupt decades of well-settled law about the limited applicability of state law to activities on the Outer Continental Shelf.   OPA's so-called "savings clause" instead operates where it is needed most:  in state territorial waters where state interests are high, federal interests are lower,

and there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.

Congress, through OCSLA, has deemed federal law exclusive on the Outer Continental Shelf and permits the adoption of state law only on a defined subset of *situses* on the Outer Continental Shelf, and then only in limited situations where there is a significant gap or void in federal law. *See LaSassier*, 776 F.2d at 509. Through OPA, Congress has provided a complete and comprehensive federal regime governing and providing recovery for damages stemming from oil spills occurring on the Outer Continental Shelf. *See Gabarick*, 623 F. Supp. 2d at 746. Carnival's alleged injuries are compensable through OPA; therefore, there is no gap or void in the federal law, and Carnival's state law claims against M-I should be dismissed.

## II. PURSUANT TO OPA, PERSONS INJURED BY AN OIL SPILL CANNOT DIRECTLY SUE M-I.

### A. Because Carnival Has Not Satisfied OPA's Presentment Requirement, This Court Lacks Jurisdiction to Consider Its Claims.

Because OPA provides the exclusive remedy for any alleged oil spill-related damages, Carnival—who is seeking to recover such damages—must comply with OPA's presentment requirement before filing suit. Carnival's allegations do not demonstrate that it has satisfied this requirement, and therefore this Court lacks jurisdiction to decide its claims.

OPA's remedial scheme depends on the concept of the "Responsible Party" and the creation of a strict liability compensation procedure intended to provide prompt, complete resolution of claims outside of litigation. OPA's mandatory presentment requirement is key to this procedure, providing that "all claims for removal costs or damages" covered by OPA "shall" be presented to the Responsible Party. 33 U.S.C. § 2713(a). The claims must be sufficiently detailed about the nature and extent of the claimant's alleged injury so as to allow for genuine settlement negotiations between the claimant and the Responsible Party. *See, e.g., Johnson v.*

*Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993). If the Responsible Party denies liability for the claim or a sufficiently presented claim is not settled within 90 days, only then may the claimant elect to commence an action in court "against the responsible party." 33 U.S.C. § 2713(c).

"The clear text of § 2713 creates a *mandatory condition precedent barring all OPA claims* unless and until a claimant has presented [its] claims" to the Responsible Party and had them denied. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. La Roche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); S. REP. NO. 101-94, at 10 (1989) (noting that "the bill requires claims to be presented in the first instance to the discharger, where known"). Regardless of whether an OPA claim has been alleged against a Responsible Party or a non-responsible third party, until OPA's presentment requirement has been met, litigation for oil spill-related claims is foreclosed. Allowing Carnival to bypass the presentment requirement and immediately sue third parties who have not been designated Responsible Parties would frustrate (and indeed, render unworkable) Congress's intent to provide through OPA a prompt, comprehensive remedial scheme that avoids complex and piecemeal litigation.

In this case, Carnival alleges that it presented its claims to BP and Transocean four times, but it does not allege that its claims were either denied or not settled within the statutorily mandated 90-day period. Compl. ¶¶ 65-68. This step is mandatory in the presentment process.

*See* 33 U.S.C. § 2713(c).  Because Carnival has not alleged facts showing the completion of the presentment process, OPA's mandatory condition precedent acts as an absolute bar to Carnival's suit and divests this Court of jurisdiction to hear its claims.  Therefore, Carnival's claims against M-I must be dismissed for lack of subject matter jurisdiction.  *See* FED. R. CIV. P. 12(b)(1).

**B.      Even If Carnival Satisfies OPA's Presentment Requirement, Its Sole Remedy Lies Against The Responsible Parties Designated Under OPA—Not Against M-I.**

Even if Carnival has satisfied OPA's presentment requirement and properly invokes this Court's jurisdiction, its claims for oil spill-related damages against M-I must nonetheless be dismissed because M-I has not been named an OPA "Responsible Party."

Carnival's sole remedy for oil spill-related damages lies against the Responsible Parties under OPA.  *See* 33 U.S.C. § 2713 (If a claim properly presented to the Responsible Party is denied, "the claimant may elect to commence an action in court against the responsible party…..").  This statutory language is supported by and consistent with clearly stated congressional intent that "[t]he system of liability and compensation provided for in the bill … is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation."  135 CONG. REC. at H7965.  Indeed, as this Court has explained, "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA … Claimants should pursue claims covered under OPA only against the responsible party and in accordance with the procedures established by OPA."  *Gabarick*, 623 F. Supp. 2d at 750.  "Then, the responsible party can take action to recover from third parties," *id.*, as provided for by OPA:

> If the responsible party alleges that the discharge … was caused solely by an act or omission of a third party, the responsible party—
>
> (i)      … shall pay removal costs and damages to any claimant; and

> (ii)    shall be entitled by subrogation to all rights of the … claimant to recover removal costs or damages from the third party … paid under this subsection.

33 U.S.C. § 2702(d)(1)(B); *see also* 33 U.S.C. § 2709 (providing for rights of contribution); 33 U.S.C. § 2710 (permitting indemnity agreements among potentially responsible parties).

The statutory language makes clear Congress's intent that persons allegedly injured by an oil spill not be additionally inconvenienced by cumbersome and time-consuming litigation. Claimants are entitled to prompt, non-judicial resolution of their claims by a Responsible Party. Should litigation be necessary, claimants benefit because they must litigate against only the Responsible Party and recovery is on a strict liability basis.  Complex multi-party litigation— with all of its attendant costs and burdens—is shifted to the Responsible Parties and other parties who are potentially liable for the spill, who may allocate fault and damages among themselves through subrogation, contribution, and indemnity.  *See* 33 U.S.C. §§ 2702(d), 2709.

Carnival's claims for oil spill-related damages are not cognizable against M-I because M-I is not a designated Responsible Party under OPA.  To the extent Carnival brings direct claims against M-I for oil spill-related damages covered by OPA, these claims should be dismissed because they are displaced or preempted by OPA.

## III.    TO THE EXTENT ANY MARITIME LAW CLAIMS SURVIVE, THE ECONOMIC LOSS RULE BARS THESE CLAIMS.

Even if OPA did not displace Carnival's maritime law claims, its claims must nonetheless be dismissed to the extent damages sought are not recoverable under the long-standing "Economic Loss Rule."  *See Robins Dry Dock*, 275 U.S. at 303.  Under the rule, which has been consistently reaffirmed by the Fifth Circuit, "physical injury to a proprietary interest is a

prerequisite to recovery of economic losses in cases of unintentional maritime tort[s]."[4]  *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.").  The rule is a "pragmatic limitation on the doctrine of foreseeability."  *Reserve Mooring Inc.*, 251 F.3d at 1071 (internal quotation marks omitted).

Here, Carnival has not alleged physical damage to a property interest.  Rather, it claims damages such as increased fuel and vessel cleaning costs and decrease revenue.  Compl. ¶ 76.  Liability for such damages is squarely foreclosed by the Economic Loss Rule.  Because Carnival has failed to allege physical damage to a proprietary interest, its maritime law claims must be dismissed for this reason as well.

## IV.  HAVING FAILED TO ALLEGE ANY FACTS REGARDING M-I'S ACTIVITIES OR CONDUCT WITH RESPECT TO THE ACCIDENT, CARNIVAL HAS FAILED TO ALLEGE A NEGLIGENCE CLAIM AGAINST M-I.

Even if Carnival's maritime, federal, and state law negligence claims survive OPA and OCSLA analysis, the claims must still be dismissed because Carnival has not properly pleaded them.

### B.  Carnival Has Failed To State A Claim For Negligence Against M-I.

Carnival has not alleged one single fact regarding M-I's involvement with the *Deepwater Horizon*.  While Carnival offers a litany of alleged failures by "defendants" which allegedly caused losses and damages, none of those failures involve drilling fluids, and M-I is nowhere

---

[4] Congress, apparently recognizing the limitation of the Economic Loss Rule, has expressly permitted more expansive remedies for parties under OPA.  *See, e.g.*, 33 U.S.C. § 2702(b)(2)(C) (allowing the recovery for subsistence use of natural resources "without regard to the ownership or management of the resources").

DB1/ 67244909.5

alleged to have exercised authority or control over the drilling operations and employees on the rig.  In fact, Carnival alleges that it was Transocean, BP, MOEX USA, MOEX Offshore, Mitsui, MOECO Anadarko E&P and/or Anadarko Petroleum—not M-I—that, "[a]t all material times … owned, manned, possessed, managed, controlled, chartered and/or operated" the *Deepwater Horizon*.  Compl. ¶ 57.

A plaintiff must plead facts establishing its causes of action against each defendant; blanket assertions against all "defendants" will not suffice.  *See*, *e.g.*, *Two Old Hippies, LLC v. Catch the Bus, LLC*, No. CIV 10-0459 JB/RLP, 2011 WL 831302, at *14 (D.N.M. Feb. 11, 2011) (stating that it is particularly important to avoid collective allegations against multiple defendants when the liability of some defendants "turns on their individual participation in the alleged activities"); *Powell v. Residential Mortg. Capital*, No. C 09-04928 JF (PVT), 2010 WL 2133011, at *3 (N.D. Cal. May 24, 2010) ("Treating disparate parties identically without explanation, as Plaintiff does throughout the complaint, deprives each individual defendant a fair and meaningful opportunity to defend itself."); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 580 (N.D. Tex. 2009) (dismissing claims based on "blanket allegations against all Defendants" because the lack of specificity "fail[s] to give the [defendants] … notice of what they would be required to defend against").  Carnival has not alleged any facts to demonstrate that M-I plausibly breached any duty owed to Carnival or that the breach proximately caused its injuries.  Carnival's "naked assertion[s]" that are "devoid of further factual enhancement" here, as in *Twombly*, are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (alteration in original, internal quotation marks omitted).  Accordingly, Carnival's negligence claims should be dismissed.

### C.   Carnival Has Pleaded No Facts Establishing A Negligence-Based Products Liability Claim Against M-I.

As part of its general negligence allegations against all Defendants, Carnival alleges that the accident and oil spill were "caused by defective equipment, including but not limited to the blowout preventers, which were in the care, custody, and control of the Defendants."  Compl. ¶ 75.  Carnival has entirely failed to plead facts establishing the existence of any negligence-based products liability claim against M-I:  it does not allege what other equipment was defective, how it was defective, who manufactured it, or how the defect was the cause of its injury.[5]  These blanket allegations against all Defendants, tied in no way specifically to M-I, fail to provide M-I fair notice of the claims against it.  *See Two Old Hippies*, 2011 WL 831302, at *14; *Residential Mortgage*, 2010 WL 2133011, at *3; *Dallas Morning News*, 610 F. Supp. 2d at 580.  Such bare-bone allegations, with no factual detail, are fatal to Carnival's negligence claims, which must be dismissed.  *See Iqbal*, 129 S. Ct. at 1949.

## V.   CARNIVAL HAS PLEADED NO CLAIM ENTITLING IT TO PUNITIVE DAMAGES AGAINST M-I.

It is unclear from Carnival's Complaint whether and to what extent it is seeking punitive damages against M-I.  *See* Compl. ¶ Prayer for Relief (d).  Regardless, and notwithstanding that Carnival has failed to plead cognizable claims against M-I, punitive damages are not available under OPA or the general maritime law.  *See, e.g.*, *S. Port Marine, LLC*, 234 F.3d at 64-65.  To the extent Carnival is seeking punitive damages from M-I, its claims must be dismissed.

Additionally, even if Louisiana law applies, which it does not, punitive damages would not be recoverable for negligence.  "In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages

---

[5] M-I notes that Carnival did not sue M-I under other products liability theories as it did Cameron (Compl. ¶¶ 79-97), and Weatherford (*id.* ¶¶ 98-116).

are not allowable unless expressly authorized by statute." *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002). There is no statute in Louisiana allowing for the recovery of punitive damages for negligence. To the extent Plaintiffs are seeking punitive damages from M-I, their claim must be dismissed.

## CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court dismiss all claims asserted against M-I in Carnival's Third Party Complaint and Cross Claim.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:     (305) 415-3000
Facsimile:     (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:     (713) 890-5000
Facsimile:     (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C**

By:   */s/ Hugh E. Tanner*
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas 77002
    Telephone:     (713) 890-5000
    Facsimile:     (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum of Law In Support Of M-I L.L.C.'s Motion To Dismiss Carnival Corporation's Cross-Claim and/or Third Party Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of June, 2011.

  _/s/ Hugh E. Tanner_
Hugh E. Tanner