UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL NO. 2179<br><br>SECTION: J |
| This Document Relates to: All Cases | : : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### MOTION FOR APPROVAL OF CEMENT TESTING

The United States moves for entry of the attached proposed "Order Re: Cement Testing," which permits certain testing on the cement that is subject to this Court's October 29, 2010 Order. The United States has proposed this Order to all Liaison and Coordinating Counsel, and no party has expressed opposition to this testing. However BP has suggested one additional test, which as explained below, should not be required.

### BACKGROUND

As the Court is aware, the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") convened a Joint Board of Investigation under the authority of 46 U.S.C. §6301, et seq. and 43 U.S.C. §1348. For brevity sake, the Joint Investigation Team will be referred to as the "JIT."

The JIT sits as an independent investigatory body authorized by Congress pursuant to enabling statutes and regulations. *See*, 46 U.S.C. §§ 6301, *et seq*.; 43 U.S.C. § 1348; 14 U.S.C. § 141; 33 C.F.R. § 140, Supbart C; and 30 C.F.R. §§ 250.186-191.[1] Congress vested the JIT with the power to require relevant documents and any other evidence to be submitted for these same

---

[1] The joint investigation is classified as a Coast Guard Marine Board of Investigation within the meaning of 46 U.S.C. §§ 6301, *et seq*., and 46 C.F.R. § 4.09. Likewise, the joint investigation is classified as a BOEMRE "panel investigation" under 43 U.S.C. § 1348 and 30 C.F.R. § 250.191.

purposes.  46 U.S.C. § 6304(a).  Pursuant to this power, the JIT issued a subpoena to Halliburton Energy Services, Inc. (HESI) for certain items (collectively called the "Cementing Components").

On October 29, 2010, the Court entered an Order [Doc. 617] requiring HESI to transfer those Cementing Components to the custody of the JIT and the Office of the Inspector General for the United States Department of the Interior.  The order required production of two different types of materials.

First, the Order required production of materials from the Deepwater Horizon, which we call herein the "Rig Cementing Components," which were "the physical samples from the Deepwater Horizon project" that were listed in the JIT's subpoena to Halliburton.  Exhibit 1.[2]

Second, the Order required production of two Liquid Cementing Components.  These materials were not from the Deepwater Horizon itself, but were rather stock samples. Specifically, the Order required production of 1quart of "ZoneSeal – 2000" and 2 gallons and one quart of "SCR-100," from the same lots used in the cementing job conducted on the Deepwater Horizon project on April 19, 2010.

In that same order, the Court directed that no destructive testing on any of these Cementing Components could be conducted without further order of the Court.

Now the JIT has developed two protocols for proposed testing of the cement.  Exhibit 2 (Cement Lab Protocol); Exhibit 3 (Analytical Testing Protocol).  Tests would be performed on just one of the several Rig Cementing Components ("Dry Blend Rig Cementing Component"). On Exhibit 1 the sample is highlighted in yellow, and is described as

---

[2] This list, which we call Exhibit 1 here, was also called "Attachment A" in the JIT's subpoena, and was also called "Attachment C" to Halliburton's Energy Service, Inc.'s Response to U. S. Chemical Safety & Hazard Investigation Board's Subpoena.

> Material: Cement Blend
> Ingredients: Lafarge Class H + .25% D-Air-3000 + .07% EZ-FLO + 1.88 Ibs/sk KCL + .20% SA-541 + 20% SSA-1 + 15% SSA-2
> Note: Sample came from Tank #8
> Barcode Sample Date: April 5th, 2010
> Lab Sample 10# 67314
> Container Type: 5-gallon Bucket
> Quantity: Approximately 1.5 gallons.

A tiny portion of this Dry Blend Rig Cementing Component will be subjected to three types of analytical testing: x-ray powder diffraction; scanning electron microscopy, and thermal gravimetric analysis. These tests will be destructive. *See* Proposed Analytical Testing Protocol at 13 (Ex. 2). The remainder of the Dry Blend Rig Cementing Component, and the Liquid Cementing Component, will be subject to foam stability testing pursuant to Section 11 of the Proposed Laboratory Testing Protocol. *See* Proposed Lab Testing Protocol (Ex. 2). There may not be enough of the Dry Blend Rig Cementing Component to conduct all of the foam stability tests proposed in Section 11. These tests also will be destructive.

Finally, the JIT's Lab Testing Protocol (Sections 1 through 10) (but not the Analytical Protocol) will also be followed to test some new, off-the-shelf product that Halliburton will produce to the JIT under a new subpoena (*i.e.*, these new stock samples are *not* subject to the October 29, 2010 Order [Doc. 617]). We refer to this as "New Stock Samples." The JIT can conduct these tests without the Court's permission, as these New Stock Samples are not subject to the October 29, 2010 Order and are not evidence subject to PTO # 1 ¶ 14 (*i.e.* they are just warehouse stock).

### THE POSITIONS OF THE OTHER PARTIES

The JIT solicited suggestions for the Lab Testing Protocol in the Fall of 2010, and prepared protocols with those comments in mind. The JIT circulated the Lab Testing Protocol and the Analytical Testing Protocol to the JIT Parties in Interest last month.

Counsel for the United States then circulated these protocols to all Liaison Counsel and Coordinating Counsel, requested any objection on or before May 26, 2011, and received no objections from any party other than BP.  *See* Himmelhoch, Email to Liaison Counsel (Ex. 4).[3]

The United States received a comment from counsel for BP, Gasaway Letter to Himmelhoch (Ex. 5), and the United States adopted one of the two proposals by BP.  *See* Himmelhoch, Email to Eisert (Ex. 6).  Therefore, this motion is unopposed with the exception of one proposed change by BP, which is addressed below.

## ARGUMENT

The testing proposed by the JIT is appropriate and consistent with the obligation of the JIT to investigate the causes of the explosion, fire, and oil spill.  The protocols are documented and the results of the tests will be available to all parties.  Accordingly, the Court should enter the proposed Order filed with this Motion.

The only objection posed the proposed testing is BP's request related to an additional test to be performed on the representative blend.[4]  Specifically, BP requests that the JIT perform "a few foam stability tests at 60% foam quality" because it contends that the foamed cement actually used on the *Deepwater Horizon* had a very high gas content and that the high gas content affected the cement's stability.  *See* Gasaway, Letter to Himmelhoch at 3 (Ex. 5).

---

[3] The United States did receive a comment from counsel for Anadarko.  In response to these comments, the United States revised the protocol to adopt the testing proposed by Anadarko and, obviated Anadarko's objection.  *See* Emails between Kirby and Himmelhoch (Ex. 7).

[4] BP had originally wanted the test run on the Cementing Components, but withdrew that request because there was not enough of the sample to run all the tests in the Protocol plus BP's test. Letter, Gasaway to Himmelhoch, June 8, 2001 (Ex. 5).  BP now instead requests that the high has test be conducted on New Stock Samples or "representative off-the-shelf product."  Email, Gasaway to Himmelhoch (Ex. 8).

Notably, BP requests this testing not on the rig sample but on the representative blend.  *See* Gasaway, Email to Himmelhoch (Ex. 8).

The JIT has not agreed to this proposed test requested by BP because the method is not supported by any industry standard.  The United States pointed out to BP that such testing is not provided for or contemplated by API RP 10B-4.  *See* Himmelhoch, Email to Gasaway (Ex. 8).  In response, BP provided no alternate industry standard for such tests.  *See* Gasaway, Email to Himmelhoch (Ex. 8).  Thus, in essence, BP is inappropriately seeking to substitute its own judgment as to the appropriate tests to run for that of the JIT.  As reflected in 46 U.S.C. § 6308, Congress specifically provided that litigation should not interfere with the proceedings of a Marine Casualty Board investigation, such as the JIT.  Allowing BP to substitute its judgment for that of the JIT as to the appropriate testing would be tantamount to using the JIT investigation to support litigation in direct contravention of the Congressional purpose.

However, the United States, including the JIT, has no objection to BP performing such a test itself.  Should BP believe the testing it proposes is necessary to prove a claim or defense in this action, BP is free to subpoena off-the-shelf materials from Halliburton to perform its own tests, using the same protocols.  But it would not be appropriate for the JIT to hand over samples to BP for such tests, nor to use its subpoena power to obtain such samples for BP.  First, the JIT is subject to the October 29, 2010 Order.  Second, the JIT obtained the samples using its subpoena powers, and is not willing to exercise such power to the benefit of private parties.  Obviously, if ordered by this Court to supply some of the New Stock Samples from the JIT to BP, the JIT would comply.

BP however, believes that the tests should be performed by the JIT's contractor to avoid "indirect and unnecessary" efforts. Letter, Gasaway to Himmelhoch, June 8, 2001 (Ex. 9).  But

the JIT does not agree. To be clear, neither time nor expense is the issue; rather, the JIT does not want to give its imprimatur – even by implication – to the 60% foam quality test because it is not an industry standard. Obviously, if ordered to conduct BP's 60% foam quality test, the JIT will authorize its contractor to perform the test and report out the results. But any such Order should expressly note that the JIT believes that the tests are not supported by industry standards or recommended practices, the tests are not regularly performed in the industry, the results of any such testing would not be useful or reliable for the JIT's purposes, and that the JIT is not conducting the test as part of its official investigation.

For these reasons, the only objection to the proposed testing provides no grounds for preventing the JIT from performing its proposed testing. BP is free to conduct its own discovery, but such discovery should not be permitted to interfere with the JIT's investigation.

## CONCLUSION

The United States respectfully requests entry of the attached proposed order authorizing the testing proposed by the JIT and set forth in the protocol attached to the order.

Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO | TONY WEST |
| Assistant Attorney General | Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| | |
| JAMES NICOLL | PETER F. FROST |
| Senior Counsel | Director, Torts Branch, Civil Division |
| NANCY FLICKINGER | Admiralty and Aviation |
| Senior Attorney | STEPHEN G. FLYNN |
| SARAH HIMMELHOCH | Assistant Director |
| Senior Litigation Counsel | MICHELLE DELEMARRE |
| DEANNA CHANG | SHARON SHUTLER |
| SCOTT CERNICH | JESSICA SULLIVAN |
| A. NATHANIEL CHAKERES | JESSICA MCCLELLAN |
| JUDY HARVEY | DAVID PFEFFER |
| MATT LEOPOLD | MALINDA LAWRENCE |
| Trial Attorneys | Trial Attorneys |

Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
SARAH D. HIMMELHOCH
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779/202-514-0180
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov
         sarah.himmelhoch@usdoj.gov

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of June, 2011.

/s/ Sarah D. Himmelhoch