UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| **THIS DOCUMENT RELATES TO** | : | |
| **10-4536,** *United States v. BP Exploration* | : | JURY TRIAL DEMANDED |
| *and Production Inc., et al.* | : | |
| | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

**ANSWER OF THIRD-PARTY DEFENDANT
CAMERON INTERNATIONAL CORPORATION
TO THIRD-PARTY COMPLAINT, TOGETHER
WITH COUNTERCLAIM AND CROSS-CLAIMS**

Pursuant to the Federal Rules of Civil Procedure and Pretrial Order No. 11 in this proceeding, and without waiving its motion to dismiss the third-party complaint filed against it by the B1 claimants and Local Government claimants in this proceeding, Third-Party Defendant Cameron International Corporation ("Cameron") respectfully answers the Third-Party Complaint of Defendant BP Exploration and Production Inc. (Document 2065), and files counterclaims against BP Exploration and Production, Inc. ("BPXP") as Counter-Defendant, and cross-claims against the remaining Defendants as Cross-Defendants, as follows:

**Jury Demand**

Cameron demands trial by jury of all issues in this action so triable.

1060460v.1

**Reservation of Right to Amend**

Discovery is ongoing. Cameron therefore reserves its right to amend this pleading.

**Responding to Allegations in the Third-Party Complaint**

1.      Cameron admits that BPXP and its co-lessees are leaseholders with respect to federal Outer Continental Shelf property referred to as the Macondo prospect or MC252, that an exploratory well was drilled by BPXP and others pursuant to the Macondo lease, that BPXP hired a Transocean entities or entity to assist with drilling the well, and that pursuant to the terms of a Drilling Contract dated December 9, 1998, as amended, the *Deepwater Horizon* mobile offshore drilling unit was deployed and latched up to the well to continue drilling the Macondo well on behalf of BPXP and its co-lessees, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 1.

2.      Cameron admits that pursuant to written contracts, it sold to an R&B Falcon entity certain specified equipment component parts and assembled those parts into what is commonly referred to as a "blowout preventer" or BOP; that a Transocean entity is the successor to the contracts for the R&B Falcon purchase orders; and that on specific occasions after transfer of title of the assembled BOP to R&B Falcon/Transocean, when required by a Transocean entity under the supervision of BP, Cameron performed repair services in connection with the BOP that were specified by Transocean entities under the supervision of BP pursuant to the terms of specific agreements executed by or binding on R&B Falcon/Transocean and specific work orders issued by Transocean entities, but denies the remaining allegations in paragraph 2.

3.      Cameron denies the allegations in paragraph 3.

4.      Cameron denies the allegations in the first sentence of paragraph 4. Cameron admits that because BPXP is a designated "responsible party" under the Oil Pollution Act of 1990 ("OPA") and because of its own complicity in the blowout of the Macondo well and the resulting oil spill, BPXP has incurred and will incur costs in connection the oil spill, but denies the remaining allegations in the second sentence of paragraph 4.

5.      Cameron admits that the United States filed the complaint in this action on December 15, 2010, but states that the pleading speaks for itself.

6.      Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.

7.      Cameron admits the allegations in paragraph 7, except that the address listed in paragraph 7 is just one of the addresses of Cameron.

8.      In response to paragraph 8, Cameron states that the United States' lawsuit speaks for itself.

9.      In response to paragraph 9, Cameron states that the United States' lawsuit speaks for itself, but denies that the claims of the United States for oil spill response costs and other recovery under OPA are subject to admiralty jurisdiction or are "maritime claims."

10.     Cameron denies the allegations contained in the first and third sentences of paragraph 10.  In response to the second sentence of paragraph 10, Cameron denies that Rule 14(c)(2) impleader is proper in this case – the claims asserted by the United States are statutory non-admiralty claims to which non-admiralty jurisdiction applies under 33 U.S.C. § 1321(n) and 33 U.S.C. § 2717(b), so that Rule 14(c)(2) applicable in admiralty cases has no application in this

1060460v.1

case.  In response to the fourth sentence of paragraph 10, Cameron states that the pleading of BPXP speaks for itself.

11.     Cameron states that this Court has exclusive original jurisdiction over the third-party complaint pursuant to OPA, 33 U.S.C. § 2717(b), and therefore denies that jurisdiction exists under 28 U.S.C. § 1333.

12.     Cameron states that the Court has venue over the third-party complaint, but avers that venue is established exclusively by OPA, 33 U.S.C. § 2717(b).

13.     Cameron admits that BPXP and other energy companies purchase equipment and related services from Cameron, but lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13.

14.     Cameron admits the allegations in paragraph 14.

15.     Cameron admits that it designs and manufactures blowout preventers or BOPs; that a BOP is attached to the wellhead to provide secondary well control functions; and that if maintained and operated properly, BOPs can and do seal wells to confine well fluids to the well bore under well conditions encountered during properly conducted well drilling and development activities, but denies the remaining allegations in paragraph 15.

16.     Cameron admits that it manufactured to its customer's specifications as required by BP or its predecessor some, but not all, features of the BOP as modified and deployed at the wellhead of the Macondo well on April 20, 2010, and provided certain repair services in connection with that BOP at the request of Transocean entities under the supervision of BP prior to 2010, but denies the remaining allegations in paragraph 16.

1060460v.1

17.     Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.

18.     Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19.     Cameron admits the allegations contained in paragraph 19.

20.     Cameron admits that BP America Production Company succeeded to the rights and obligations of Vastar under the Drilling Contract and that a Transocean entity succeeded to the rights and obligations of R&B Falcon under the Drilling Contract.

21.     Cameron admits that the *Deepwater Horizon* was equipped with a BOP, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 21.

22.     Cameron admits that BOPs are specialized assemblies; that when an offshore drilling rig is latched up to an oil and gas well, a BOP is attached to the top of the well at the sea floor; that BOPs in general and the *Deepwater Horizon* BOP specifically are designed, when properly maintained and timely and properly operated by properly trained and supervised personnel, to control and stop flow in the well under certain conditions; that BOPs in general should be, and the *Deepwater Horizon* specifically should have been, used as one part of a comprehensive well control system to prevent or control unwanted well flow during the drilling of subsea wells; and that when the *Deepwater Horizon* was latched up to the Macondo well, its BOP was attached to the top of the well at the sea floor, but denies the remaining allegations in paragraph 22.

- 5 -

23.     Cameron admits that when properly maintained, the *Deepwater Horizon* BOP would have been equipped with various systems that when timely and properly operated by properly trained and supervised personnel could be deployed for flow control in certain circumstances involving loss of well control by other primary systems for well control; that the BOP was equipped with an EDS that when properly maintained could have been activated by a properly trained and supervised rig crew at any time prior to loss of electrical connection between the rig and the BOP, but denies the remaining allegations in the first sentence of paragraph 22.   Cameron admits that if maintained properly and operated properly at an appropriate time, the *Deepwater Horizon* BOP's EDS would have been capable of closing the BOP's blind shear rams, shearing the drill pipe, sealing particular openings to the well, and disconnecting the rig from the well so that the *Deepwater Horizon* could have been able to sail away, but denies the remaining allegations in paragraph 23.

24.     Cameron admits that R&B Falcon placed orders in 1999 with Cameron concerning the sale of a BOP manufactured to the specifications of R&B Falcon (based in turn on the requirements of Vastar) for installation on the *Deepwater Horizon*, but denies the remaining allegations in paragraph 24.

25.     Cameron admits that some, but not all, of the features of the BOP and its control system as initially installed on the *Deepwater Horizon* were manufactured by Cameron to the specifications of R&B Falcon/Transocean (based in turn on the requirements of Vastar/BP), but denies the remaining allegations in paragraph 25.

26.     Cameron admits the allegations in paragraph 26.

27.     Cameron admits the allegations in paragraph 27.

28.     Cameron admits the allegations in the first sentence of paragraph 28. Cameron admits that, assuming proper maintenance of the BOP and proper operation of the BOP by properly trained and supervised personnel, upon activation of certain functions of the BOP, including the EDS, the LMRP would have separated from the lower section of the BOP stack; and that, assuming proper maintenance of the BOP and proper operation of the BOP by properly trained and supervised personnel, upon activation, each annular preventer could close against the outer surface of the drill pipe in the well and seal the well, but denies the remaining allegations in paragraph 28.

29.     Cameron admits the allegations in the first sentence of paragraph 29. Cameron admits that, assuming proper maintenance of the BOP and proper and timely operation of the BOP by properly trained and supervised personnel, the blind shear ram when activated was capable of shearing drill pipe and sealing the well under known conditions, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 29.

30.     Cameron admits the allegations in the first sentence of paragraph 30. Cameron admits that, assuming proper maintenance of the BOP and proper and timely operation of the BOP by properly trained and supervised personnel, the casing shear ram was capable of cutting well casing or drill pipe that might be present in the casing shear ram portion of the BOP stack, and that the casing shear ram would not normally have sealed the well upon activation, but denies the remaining allegations in paragraph 30.

31.     Cameron admits the allegations in the first two sentences of paragraph 31. Cameron admits that, assuming proper maintenance of the BOP and proper operation of the BOP

by properly trained and supervised personnel, the pipe rams if activated were capable of sealing the well by closing against drill pipe in the well at the location of the particular pipe ram in the BOP stack, but denies the remaining allegations in paragraph 31.

32.     Cameron admits that in 2004, at the direction of BP, Transocean converted the lower pipe ram to an inverted test ram that was not normally capable of sealing the well against pressure applied from the formation side of the BOP, and admits that as inverted, the test ram was not as capable of sealing the well as it would have been absent inversion, but denies the remaining allegations in paragraph 32.

33.     Cameron admits that so long as a sufficient electrical connection was maintained, the BOP, if properly maintained, could be manually activated from operator panels on the rig by a properly trained and supervised crew, and that upon activation of the BOP at the control panel, an electrical signal would travel down an electrical cable to the control pods attached to the BOP, but denies the remaining allegations in paragraph 33.

34.     Cameron admits that the yellow and blue control pods as manufactured by Cameron were operationally identical, that the pods controlled the BOP's hydraulic system through electronic modules, that multiple SEMs sent electrical signals that opened or closed solenoid valves, and the valves permitted hydraulic fluid to flow where needed in the BOP, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 34.

35.     Cameron admits the allegations in the first sentence of paragraph 35. Cameron admits that, assuming proper maintenance of the BOP, the AMF system activated automatically upon certain loss of communication, loss of hydraulics, and/or loss of power and

- 8 -

upon activation was capable of closing the BOP's blind shear ram to shear the drill pipe and seal off certain flow in the well, but denies the remaining allegations in the second and third sentences of paragraph 35.

36.     Cameron admits that the BOP required a particular level of maintenance by its owners and operators, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 36.

37.     Cameron admits that under the supervision of BP, Transocean was responsible for operating and maintaining the *Deepwater Horizon* BOP, and that on certain occasions, Transocean, under the supervision of BP, hired Cameron to perform particular repairs on features of the BOP, but denies the remaining allegations in paragraph 37.

38.     Cameron admits that evidence to date indicates that at some time around 9:00 p.m. on April 20, 2010, oil and gas from the Macondo formation entered the wellbore and flowed past the BOP up the riser toward the *Deepwater Horizon*, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 38.

39.     Cameron admits that some time after 9:00 p.m. on April 20, 2010, hydrocarbons from the Macondo formation ignited on the *Deepwater Horizon*, resulting in explosions and fires that caused damage to the rig, marine riser, and BOP, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 39.

40.     In response to paragraph 40, Cameron admits that the *Deepwater Horizon* BOP was designed to be used to close a well and states that the BOP did operate to seal the well

on April 20, 2010; denies that the BOP was consciously designed to close a well in response to the wholly unprecedented and unanticipated loss of control over the Macondo well caused in part by a wholly unpredictable series of negligent acts and omissions by BPXP and BP America; and admits that hydrocarbons flowed out of the well after April 20, 2010; but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 40.

41.     Cameron admits that the flow from the well was not shut off in April 2010 and for some months thereafter, but denies the remaining allegations in paragraph 41.

42.     Cameron admits that the well was not sealed in April 2010, but denies the remaining allegations in paragraph 42.

43.     Cameron admits the allegations in paragraph 43.

44.     Cameron admits that at the direction of BP, Cameron provided technical assistance to BP as BP removed the yellow control pod from the BOP, but denies the remaining allegations in paragraph 44.

45.     Cameron denies that solenoid 103Y was necessary for operating the AMF system, but admits the remaining allegations in paragraph 45.

46.     Cameron admits that if the AMF was activated on April 20, 2010 and solenoid 103Y did not function, the high pressure blind shear ram close function in the AMF sequence would not have operated from the yellow control pod, but denies the remaining allegations in paragraph 46.

47.     Cameron admits that the blue control pod of the BOP provided redundancy to the yellow control pod, but denies the remaining allegations in the first sentence

- 10 -

of paragraph 47.  In response to the second sentence of paragraph 47, Cameron admits only that upon recovery days after April 20, 2010, one or more of the battery packs in the blue pod did not on that later recovery date have sufficient charge to activate the AMF deadman system. Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of paragraph 47.

48.    Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48.

49.    Cameron admits the allegations in the first sentence of paragraph 49. Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 49.

50.    Cameron admits that DNV has issued a report, which speaks for itself, but states that the report is inadmissible to prove the allegations of BPXP and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 50.

51.    In response to paragraph 51, Cameron avers that the DNV report speaks for itself and states that the report is inadmissible to prove the allegations of BPXP.

52.    Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.

53.    Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53.

54.    Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54.

1060460v.1

55.     In response to paragraph 55, Cameron avers that the complaint in this case speaks for itself.

56.     In response to paragraph 56, Cameron avers that the complaint in this case speaks for itself.

57.     Cameron denies the allegations in paragraph 57.

58.     Cameron denies the allegations in paragraph 58.

59.     Cameron denies the allegations in paragraph 59.

60.     Cameron denies the allegations in paragraph 60.

61.     Cameron denies the allegations in paragraph 61.

62.     Cameron denies the allegations in paragraph 62.

63.     Cameron denies the allegations in paragraph 63.

64.     Cameron denies the allegations in paragraph 64.

65.     Cameron denies the allegations in paragraph 65.

66.     Cameron denies the allegations in paragraph 66.

67.     Cameron denies the allegations in paragraph 67.

68.     Cameron denies the allegations in paragraph 68.

69.     Cameron denies the allegations in paragraph 69.

70.     Cameron denies the allegations in paragraph 70.

71.     Cameron admits that pursuant to request of Transocean under the approval and supervision of BP, it performed specifically requested repair services with respect to the *Deepwater Horizon* BOP at certain times and on occasion replaced control pod battery packs, but otherwise denies the allegations in paragraph 71.

- 12 -

72.     Cameron admits that it had a contractual duty, owed to the specific entity hiring Cameron, to perform with reasonable care any repairs on the BOP for which it was specifically hired, but otherwise denies the allegations in paragraph 72.

73.     In response to paragraph 73, Cameron denies that it is or was responsible for any failure to maintain batteries in the BOP, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 73.

74.     Cameron denies the allegations in paragraph 74.

75.     Cameron denies the allegations in paragraph 75.

76.     Cameron denies the allegations in paragraph 76.

77.     Cameron admits the allegations in paragraph 77.

78.     Cameron admits that as part of BP's conversion of the lower pipe ram of the *Deepwater Horizon* BOP, Transocean hired Cameron to modify certain bonnets, but denies the remaining allegations in paragraph 78.

79.     Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.

80.     Cameron admits that it had a contractual duty, owed to the specific entity hiring Cameron, to perform with reasonable care any repairs on the BOP for which it was specifically hired, but otherwise denies the allegations in paragraph 80.

81.     Cameron denies the allegations in paragraph 81.

82.     Cameron denies the allegations in paragraph 82.

83.     Cameron denies the allegations in paragraph 83.

1060460v.1

84. Cameron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 84.

85. In response to paragraph 85, Cameron admits that BPXP has a statutory duty under OPA to pay certain claims stemming from the oil spill from the Macondo well, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 85.

86. Cameron denies the allegations in paragraph 86.

87. Cameron denies the allegations in paragraph 87.

88. In response to paragraph 88, Cameron restates its responses to paragraphs 1-87.

89. In response to paragraph 89, Cameron states that OPA speaks for itself.

90. In response to paragraph 90, Cameron states that the DOJ complaint speaks for itself.

91. Cameron denies the allegations in paragraph 91.

92. Cameron denies the allegations in paragraph 92.

93. Cameron denies the allegations in paragraph 93.

94. Cameron admits the allegations in the first sentence of paragraph 94. Cameron denies the allegations in the second sentence of paragraph 94.

- 14 -

**Failure to State a Claim**

95.     The Third-Party Complaint fails to state a claim upon which relief may be granted against Cameron under the contribution provision of OPA, 33 U.S.C. § 2709, for the following reasons:

      a.     Cameron is not a statutorily designated "responsible party" and therefore is not "liable or potentially liable under" OPA itself within the meaning of section 2709.

      b.     For the reasons stated in the following paragraph, Cameron is not "liable or potentially liable" for OPA recovery under "another law" within the meaning of section 2709.

96.     Cameron is not liable for claims of the United States under "another law," and is therefore not liable to BPXP under OPA § 2709, for the following reasons:

      a.     Under the Outer Continental Shelf Lands Act, which is applicable in this case, federal law exclusively applies to determine the liability of Cameron for an oil spill from an OCS well resulting from oil and gas drilling and development activities, and the only federal law that could create liability under "another law" for such an oil spill would be the law of the "adjacent state," here Louisiana, adopted under OCSLA as surrogate federal law.   43 U.S.C. § 1333(a)(1), (2).

      b.     OCSLA displaces maritime law as a basis for the liability of Cameron in connection with an oil spill from a well drilled on an OCS lease resulting from oil and gas drilling operations.

c.      OPA correspondingly preempts admiralty jurisdiction and the application of maritime law to liability for oil spills covered by OPA.  33 U.S.C. § 1717(b); *see id.* § 1751(e) (because liability for and jurisdiction over oil spill claims is "provided by" OPA, maritime law liability and admiralty jurisdiction for oil spill claims are not preserved).

d.      No claim for recovery based on the oil spill from the Macondo well is valid under Louisiana law except to the extent that it is permitted under the Louisiana Oil Spill Prevention and Response Act ("LOSPRA"), L.S.A. R.S. § 2491.A.

e.      The Third-Party Complaint fails to state a claim upon which relief can be granted against Cameron because it contains no allegation stating any element of any theory of liability permitted by LOSPRA.  L.S.A. R.S. §§ 2451 et seq.

g.      The Third-Party Complaint fails to state a claim upon which relief can be granted against Cameron because it contains no allegation stating or alleging facts that would support a conclusion that Cameron is a "responsible party" under LOSPRA.  L.S.A. R.S. § 2454(22).

h.      Cameron is not liable under "another law" in any event for claims barred by the economic loss rule.

## Affirmative Defense – Contractual Indemnity

97.     The BPXP claims against Cameron are barred by the hold harmless and indemnity provisions of the Drilling Contract, which are applicable to the oil spill from the Macondo well.

## Affirmative Defense – Non-Contractual Indemnity

98.     BPXP may be found to be directly liable to the United States, whereas Cameron is not liable to the United States, so that to the extent that Cameron may be held liable under admiralty law for sale of a product, its liability will be derivative, whereas the oil spill was caused by the gross negligence of BPXP and its agents and the negligence of its subcontractors. To the extent that admiralty law is applied, Cameron would be entitled in these circumstances to complete indemnity from BPXP.

## Affirmative Defense – Gross Negligence

99.     Cameron states that BPXP should not be entitled to recover any relief from Cameron under OPA because the oil spill leading to BPXP's OPA liability was the direct result of the gross negligence of BPXP and its instrumentality BP America Production Company.

## Affirmative Defenses – Louisiana Oil Spill Prevention and Response Act

100.    The claims of BPXP against Cameron are barred by LOSPRA, which, according to BP, establishes the exclusive basis for liability under Louisiana law for oil spill claims, L.S.A. R.S. § 30:2491.A.

101.    Cameron (a) states that it is not a "responsible party" within the meaning of LOSPRA § 2454(22), and (b) in the alternative, pleads all of the limitations and defenses set forth in LOSPRA, *id.* §§ 2451-96.

102.   While denying that it is a "responsible party" within the meaning of LOSPRA § 2454(22)(c), Cameron states that recovery against Cameron for oil spill claims is barred under LOSPRA because all the alleged acts of Cameron provided assistance "in response to a threatened discharge of oil by another person" within the meaning of subsection 2454(22)(c).  L.S.A. R.S. § 30:2454(22)(c).

103.   While denying that it is a "responsible party" within the meaning of LOSPRA, Cameron states that recovery against Cameron for oil spill claims is barred by LOSPRA because of the misconduct and negligence of third parties within the meaning of L.S.A. R.S. § 30:2481(4).

104.   While denying that it is a "responsible party" within the meaning of LOSPRA, Cameron states that LOSPRA would limit the liability of Cameron in any event. L.S.A. R.S. § 30:2479.

### Alternative Affirmative Defenses – Louisiana Products Liability Act

105.   If LOSPRA is not applicable to Cameron as product manufacturer, the BPXP claims against Cameron are barred by the Louisiana Products Liability Act ("LPLA"), which establishes the exclusive theories of liability for product manufacturers, and Cameron respectfully pleads all of the limitations and defenses set forth in the LPLA.  L.S.A. R.S. 9:2800.51 *et seq.*

106.   While denying that any Cameron product contained any defect within the meaning of LPLA, Cameron states that any alleged defect in a Cameron product at the time of the alleged injurious event was the result of changes to or in the product or its operation because

- 18 -

the product did not receive reasonable care and/or maintenance by its owners or users.  L.S.A. R.S. §§ 9:2800.53(8)(c).

107.    While denying that any Cameron product contained any defect within the meaning of LPLA, Cameron states that any alleged defect in a Cameron product at the time of the alleged injurious event either did not exist at the time the product left the control of Cameron or did not result from a reasonably anticipated alteration or modification of the product.  L.S.A. R.S. §§ 9:2800.54.C.

108.    While denying that Cameron failed to provide adequate warnings about its products, Cameron states that it had no duty to provide any warning about its products in use at the time of the alleged injurious event because the products were not dangerous to an extent beyond that which would have been contemplated by the ordinary user or handler of the product, with the knowledge within the relevant community of the product's characteristics.  L.S.A. R.S. §§ 9:2800.57B(1).

109.    While denying that Cameron failed to provide adequate warnings about its products, Cameron states that it had no duty to provide any warning about its products in use at the time of the alleged injurious event because the users and handlers of the products already knew or reasonably should have known of any alleged dangerously injurious characteristic of the product.  L.S.A. R.S. §§ 9:2800.57B(2).

110.    Cameron's products met any applicable express warranty applicable to those products.  *See* L.S.A. R.S. §§ 9:2800.58.

111.    While denying that Cameron breached any express warranty, Cameron states that any express warranty applicable to Cameron's products in use at the time of the alleged injurious event had expired years before that time.  *See* L.S.A. R.S. §§ 9:2800.58.

112.    While denying that any Cameron product contained any defect within the meaning of LPLA, Cameron states that at the time the alleged products left Cameron's control, Cameron (a) did not know and, in light of then-existing reasonably available scientific and technical knowledge could not have known of the design characteristic that caused any alleged damage or the danger of that characteristic; (b) Cameron did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of any alternative design that any Claimant may identify; or (c) any alternative design that any Claimant may identify was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.   LA. REV. STAT. §§ 9:2800.59A.

113.    While denying that any Cameron product contained any defect within the meaning of LPLA, Cameron states that at the time the alleged products left Cameron's control, Cameron did not know and, in light of then-existing reasonably available scientific and technical knowledge could not have known of the design characteristic that caused any alleged damage or the danger of that characteristic. LA. REV. STAT. §§ 9:2800.59B.

### Affirmative Defense – Contractor Immunity Under Louisiana Law

114.    While denying that any Cameron product contained any defect within the meaning of LPLA, Cameron states that to the extent any alleged defect in a Cameron product is

- 20 -

the result of Cameron's construction of that product in accordance with its customer's specifications, Cameron is immune from liability for that defect.  L.S.A. R.S. § 9:2771.

## Alternative Affirmative Defenses – General Maritime Law

115.   While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron asserts in the alternative, as a protective matter, the affirmative defenses stated in paragraphs 103-12 above.

116.   While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that no Cameron product in use at the time of the alleged injurious incident departed from its intended design at the time it left the control of Cameron.

117.   While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that at the time that any Cameron product in use at the time of the alleged injurious incident left the control of Cameron, the reasonably foreseeable risks of harm posed by the product could not have been reduced or avoided by the adoption of a reasonable alternative design.

118.   While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and

while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that at the time that any Cameron product in use at the time of the alleged injurious incident left the control of Cameron, there were no feasible alternative designs of the product known by or reasonably available to Cameron.

119.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that in light of reasonably available scientific or technical knowledge or information at the time any Cameron product in use at the time of the alleged injurious incident left the control of Cameron, Cameron could not have known of any feasible alternative design that would have reduced or avoided the reasonably foreseeable risks of harm posed by the product.

120.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that at the time that any Cameron product in use at the time of the alleged injurious incident left the control of Cameron, the Cameron warnings and instructions concerning that product were adequate to reduce or avoid the reasonably foreseeable dangers of the product.

121.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime

1060460v.1

law for product defect, Cameron states that no Cameron product in use at the time of the alleged injurious incident was dangerous to an extent beyond that which would have been contemplated by the ordinary user or handler of the product.

122.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that after any Cameron product in use at the time of the alleged injurious incident left the control of Cameron, Cameron issued warnings and instructions concerning the product that were adequate to reduce or avoid the reasonably foreseeable dangers of the product.

123.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that at the time of the injurious incident, the users of any Cameron product in use at the time of the alleged injurious incident knew or should have known of the dangers associated with that use.

124.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that at the time and place of the alleged injurious incident, any failure of a Cameron product to function as intended was caused solely by either the failure of owners, users and/or handlers of the product to take reasonable care of and/or properly

- 23 -

maintain the product and/or its constituent parts or an alteration or modification of the product that could not have been reasonably foreseen by Cameron.

125.    While maintaining and without waiving its position that OCSLA makes Louisiana law applicable to any claims in this action as surrogate and exclusive federal law and while denying that BPXP can carry its burden of proving Cameron liable under general maritime law for product defect, Cameron states that the methods, standards, and techniques used by Cameron to design, manufacture, and label or provide instructions for or warnings about any Cameron product designed, manufactured, or labeled by Cameron that was in use at the time of the alleged injurious incident complied and were in conformity with the generally recognized state of the art at the time the products were designed, manufactured, or labeled by Cameron.

**Affirmative Defenses – Sole or Intervening Causation/Any Applicable Law**

126.    Any oil spill injury sustained was caused in whole by the lack of due care and fault of others for whom Cameron had no responsibility or control.  In particular, BPXP through its instrumentality BP Production America had the last clear chance to avoid the loss of well control that resulted in the oil spill, but negligently and irresponsibly failed to do so.

127.    Any oil spill injury was caused in whole by intervening or superseding events, factors, occurrences or conditions which were not caused by Cameron and for which Cameron is not liable.

**Affirmative Defense – Reduction of Recovery Based on Fault of Others**

128.    Under any applicable law, any liability of Cameron is to be reduced and/or allocated to reflect the contributory fault of others, including the Cross-Defendants named below,

- 24 -

and perhaps others revealed as discovery and pertinent investigations progress.  *See* LA. CIV. CODE art. 2323.

### Affirmative Defense – Economic Loss Rule

129.    Recovery by BPXP against Cameron is barred to the extent that any payment by or claim against BPXP is made or was made with respect to a claim or cause of action barred by the economic loss rule.

### Affirmative Defense – No Joint Liability

130.    Recovery by BPXP against Cameron is barred to the extent that any payment by or claim against BPXP is made or was made with respect to any claim or cause of action for which Cameron does not share joint liability with BPXP.

### Affirmative Defense – Failure to Mitigate Damages

131.    Recovery by BPXP against Cameron is barred to the extent that BPXP failed to mitigate damages.

### Affirmative Defense – Payment and/or Release

132.    To the extent that BPXP has received payment from another party or a collateral source and/or claims against Cameron have been released, Cameron is entitled to be relieved of any liability in this action to the extent of any such payment or release.

### Counterclaim and Crossclaims

Now acting as Counter-Plaintiff and Cross-Plaintiff, Cameron International Corporation ("Cameron") seeks indemnity and/or contribution as follows from Counter-Defendant BPXP and from Transocean Holdings, LLC ("TO Holdings"); Transocean Offshore Deepwater Drilling, Inc. ("TO Offshore"); Transocean Deepwater, Inc. ("TO Deepwater"); and Triton Asset Leasing

GMBH ("Triton") (collectively the "Transocean Cross-Defendants"); BP America Production Company ("BP America"); Halliburton Energy Services, Inc. ("Halliburton"); Anadarko Petroleum Corporation ("Anadarko Corp."); Anadarko E&P Company, LP ("Anadarko E&P"); and MOEX Offshore 2007 LLC ("MOEX Offshore") (collectively "Cross-Defendants").

## Jurisdiction

133.    This Court has supplemental jurisdiction over the following counterclaims and cross-claims pursuant to 28 U.S.C. § 1367(a), and/or exclusive jurisdiction over the counterclaims and cross-claims under 43 U.S.C. § 1349(b).  Because the contractual indemnity crossclaims asserted by Cameron below are derived from express provisions of maritime contracts, this Court has jurisdiction over those contractual cross-claims under 28 U.S.C. § 1333(1).  Because certain of the contribution claims asserted below arise under OPA, 33 U.S.C. § 2709, this Court has exclusive jurisdiction over those crossclaims under 33 U.S.C. § 2717(b).  Because the non-contractual indemnity crossclaims and non-OPA contribution cross-claims, which are being asserted below in the alternative solely as a protective matter, are all premised on application of general maritime law, this Court would have jurisdiction over those crossclaims under 28 U.S.C. § 1333(1) to the extent that such jurisdiction is not excluded by 43 U.S.C. § 1349(b) and/or 33 U.S.C. § 2717(b).

## Parties

134.    Counter-Defendant, Cross-Defendants and Cameron have been named parties in this action, either as original defendants or as third-party defendants

135.    Cameron incorporates by reference the allegations contained in paragraphs 30-87 of its Answer to Verified Complaint for Exoneration, Claims, Counter-Claims, and Cross-

1060460v.1

Claims of Cameron International Corporation, Document 412 in 10-2771 ("Cameron Limitation Claim").

136.    BPXP selected BP America to perform the obligations of BPXP as lead lessee of the Macondo Prospect and operator of the Macondo well and as stated in the Third-Party Complaint of BPXP, hired TO Holdings LLC to assist in drilling the Macondo well under the terms of the Drilling Contract between BP America and TO Holdings, LLC.  Accordingly, BP America became the instrumentality of BPXP with respect to the Macondo well.  In the alternative, BPXP stepped into the shoes of BP America with respect to the Drilling Contract.  In any event, BPXP assumed the obligations of BP America under the Drilling Contract.

## Causes of Action

### First Claim – Contractual Indemnity Against TO Offshore, TO Deepwater and Triton

137.    Pursuant to the terms of the MSA, Cameron is entitled to complete indemnity from TO Offshore, TO Deepwater, and Triton for any liability that Cameron may have to BPXP in this action.  To the extent that Cameron pays any judgment covered by the indemnity, Cameron is entitled to be reimbursed by these Cross-Defendants for breach of the indemnity provisions of the MSA.

138.    Pursuant to the terms of the MSA, Cameron is entitled to recover from TO Offshore, TO Deepwater, and Triton the attorneys' fees and other costs that it will have reasonably incurred to defend any claims in this action.

139.    Pursuant to the terms of the MSA, Cameron is entitled to recover from TO Offshore, TO Deepwater, and Triton its reasonable attorneys' fees incurred in enforcing the indemnity obligations described in paragraphs 41-44 of the Cameron Limitation Claim.

1060460v.1

*Second Claim – Declaratory Judgment Concerning Contractual Indemnity Obligations of TO Offshore, TO Deepwater and Triton*

140.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that under the terms of the MSA, Cameron is entitled to complete indemnity from TO Offshore, TO Deepwater, and Triton without limitation under 46 U.S.C. 30501 et seq. for any liability that Cameron may incur to any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

141.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that Cameron is entitled by the terms of the MSA to recover from TO Offshore, TO Deepwater, and Triton all costs that Cameron incurs to defend against the claim of any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

142.    Pursuant to the terms of the MSA, Cameron is entitled to recover from TO Offshore, TO Deepwater, and Triton its reasonable attorneys' fees and other costs incurred in enforcing the indemnity obligations described in paragraphs 41-44 of the Cameron Limitation Claim.

*Third Claim – Contractual Indemnity Against TO Holdings*

143.    Pursuant to the terms of the TERMS AND CONDITIONS, Cameron is entitled to complete indemnity from TO Holdings for any liability that Cameron may have to BPXP in this action.  To the extent that Cameron pays any judgment covered by the indemnity, Cameron is entitled to be reimbursed by TO Holdings for breach of the indemnity provisions of the TERMS AND CONDITIONS.

- 28 -

144.    Pursuant to the terms of the TERMS AND CONDITIONS, Cameron is entitled to recover from TO Holdings the attorneys' fees and other costs that it incurs to defend the claims of any party in this action.

*Fourth Claim – Declaratory Judgment Concerning Contractual Indemnity Obligations of TO Holdings*

145.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that under the indemnity provisions of the TERMS AND CONDITIONS, Cameron is entitled to complete indemnity without limitation under 46 U.S.C. § 30501 from TO Holdings for any liability that Cameron may incur to any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

146.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that, without limitation under 46 U.S.C. § 30501, Cameron is entitled by the indemnity provisions of the TERMS AND CONDITIONS to recover from TO Holdings all attorneys' fees and other costs that Cameron reasonably incurs to defend against the claim of any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

*Fifth Claim – Contractual Indemnity Under the ADT Agreement*

147.    Pursuant to the terms of the ADT Agreement, Cameron is entitled to complete indemnity from the Transocean Cross-Defendants as successors to ADT under the ADT Agreement for any liability that Cameron may have to BPXP in this case.  To the extent that Cameron pays any judgment covered by the indemnity, Cameron is entitled to be reimbursed by the Transocean Cross-Defendants for breach of the indemnity provisions of the ADT Agreement.

- 29 -

148.    Pursuant to the terms of the ADT Agreement, Cameron is entitled to recover from the Transocean Cross-Defendants the attorneys' fees and other costs that it will have reasonably incurred to defend any claims in this action.

*Sixth Claim – Declaratory Judgment Concerning Contractual Indemnity Obligations Under the ADT Agreement*

149.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that under the terms of the ADT Agreement, Cameron is entitled to complete indemnity from the Transocean Cross-Defendants Defendants for any liability that Cameron may incur to any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

150.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that Cameron is entitled by the terms of the ADT Agreement to recover from the Transocean Cross-Defendants all costs that Cameron incurs to defend against the claim of any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

*Seventh Claim – Contractual Indemnity Under the Terms of Repair Quotes*

151.    Pursuant to the terms of the Repair Quotes, Cameron is entitled to complete indemnity from one or more Transocean Cross-Defendants for any liability that Cameron may have to BPXP in this case.  To the extent that Cameron pays any judgment covered by the indemnity, Cameron is entitled to be reimbursed by one or more Transocean Cross-Defendants for breach of the indemnity provisions of the Repair Quotes.

1060460v.1

152.    Pursuant to the hold harmless terms of the Repair Quotes, Cameron is entitled to recover from the Transocean Cross-Defendants the attorneys' fees and other costs that it will have reasonably incurred to defend any claims in this action.

*Eighth Claim – Declaratory Judgment Concerning Contractual Indemnity Obligations Under the Repair Quotes*

153.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that under the terms of the Repair Quotes, Cameron is entitled to complete indemnity from the Transocean Cross-Defendants for any liability that Cameron may incur to any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

154.    Pursuant to 28 U.S.C. § 2201, Cameron is entitled to a declaratory judgment that Cameron is entitled by the hold harmless terms of the Repair Quotes to recover from the Transocean Cross-Defendants all costs that Cameron incurs to defend against the claim of any person seeking to recover damages related to the casualty of the *Deepwater Horizon* beginning April 20, 2010.

*Ninth Claim – Non-Contractual Indemnity*

155.    Cameron asserts that it is not liable for any damages in connection with the oil spill from the Macondo well and that general maritime law does not govern the liability of Cameron or any Cross-Defendant for those events.  To the extent that general maritime law applies and Cameron is held liable to any claimant but is not indemnified by Counter-Defendants by reason of the express indemnity provisions of the MSA, TERMS AND CONDITIONS, ADT Agreement, or Repair Quotes, Cameron is entitled to complete non-contractual indemnity jointly and severally from BPXP, the Transocean Cross-Defendants, and Cross-Defendants BP America

and Halliburton because of their negligent contribution to the events leading to any such Cameron liability that is not based on Cameron's negligence.

*Tenth Claim – Contribution Under OPA*

156.    OPA provides that any "person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."  33 U.S.C. § 2709.  The Transocean Cross-Defendants, BPXP, Anadarko Corp., Anadarko E&P, and MOEX Offshore are designated and/or defined "responsible parties" under the terms of OPA with respect to the Macondo well oil spill and are therefore "liable or potentially liable under this Act" within the meaning of section 2709 for certain damages covered by OPA.  *See* 33 U.S.C. §§ 2701(32), 2702(a), (b).  Each such Cross-Defendant may also be held "liable or potentially liable under another law," be it Louisiana law as surrogate federal law under the Outer Continental Shelf Lands Act as Cameron asserts, or general maritime law as others assert.  Cameron asserts that it is not liable for any damages in connection with the events of April 20, 2010 on the MODU or the ensuing oil spill. To the extent that Cameron is held jointly liable with any Cross-Defendant to BPXP in this action, Cameron is entitled to contribution from all such Cross-Defendants under the terms of 33 U.S.C. § 2709.

*Eleventh Claim – Contribution from Petitioners and Cross-Defendants Under General Maritime Law*

157.    Cameron asserts that it is not liable for any damages in connection with the Macondo well oil spill and that general maritime law does not govern the liability of Cameron or Cross-Defendants for those events.  To the extent that general maritime or other law nevertheless applies and any party succeeds with proof of any allegations so that Cameron is held jointly liable with any Cross-Defendant to BPXP under general maritime or other law in this

- 32 -

action, Cameron is entitled to contribution from all such Cross-Defendants on the basis of comparative fault.

### Demand for Judgment

WHEREFORE, Cameron International Corporation ("Cameron") demands judgment from Petitioners as follows:

1. That BPXP take nothing from Cameron;

2. That Cameron recover indemnity from the Transocean Cross-Defendants for any liability that Cameron incurs to BPXP in this action, including repayment of any amount paid by Cameron to resolve any such liability;

3. That Cameron recover from the Transocean Cross-Defendants the attorneys' fees and other costs it incurs in defending the claim of any person based on the casualty of the *Deepwater Horizon* beginning April 20, 2010;

4. That Cameron be awarded a declaratory judgment that the Transocean Cross-Defendants are obligated by written agreement to indemnify Cameron for any liability incurred by Cameron to any person asserting claims based on the casualty of the *Deepwater Horizon* beginning April 20, 2010;

5. That Cameron be awarded a declaratory judgment that the Transocean Cross-Defendants are obligated by written agreement to reimburse Cameron for all attorneys' fees and other costs reasonably incurred by Cameron defending the claim of any person based on the casualty of the *Deepwater Horizon* beginning April 20, 2010;

1060460v.1

6. That Cameron recover from the Transocean Cross-Defendants its reasonable attorneys' fees and other costs incurred in enforcing their indemnity obligations under the MSA;

7. That in the alternative, Cameron recover complete indemnity from the Transocean Cross-Defendants, BP America, and Halliburton for any liability that Cameron incurs to BPXP in this action on the ground that Cameron is not a negligent defendant;

8. That in the event Cameron is held jointly liable with any Cross-Defendant for damages covered by 33 U.S.C. § 2702(b), Cameron recover contribution from such Cross-Defendant pursuant to the terms of 33 U.S.C. § 2709;

9. That in the alternative, in the event Cameron is held jointly liable with any Cross-Defendant for damages under general maritime or other law, Cameron be awarded contribution from such Cross-Defendant under general maritime law or other law;

10. That Cameron recover from BPXP and Cross-Defendants its costs of court in this action; and

11. That Cameron recover such other and further relief from BPXP and the Cross-Defendants to which it may show itself entitled.

1060460v.1

Respectfully submitted,

David J. Beck, T.A.
        dbeck@brsfirm.com
Joe W. Redden, Jr.
        jredden@brsfirm.com
David W. Jones
        djones@brsfirm.com
Geoffrey Gannaway
        ggannaway@brsfirm.com
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney, Suite 4500
Houston, TX  77010-2010
713-951-3700
713-951-3720 (fax)

and


*/s/ Phillip A. Wittmann*
Phillip A. Wittmann, 13625
        pwittman@stonepigman.com
Carmelite S. Bertaut, 3054
        cbertaut@stonepigman.com
Keith B. Hall, 24444
        khall@stonepigman.com
Jared Davidson, 32419
        jdavidson@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT CAMERON
INTERNATIONAL
CORPORATION**

- 35 -

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Answer of Third-Party Defendant Cameron International Corporation to Third-Party Complaint, Together with Counterclaim and Cross-Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

 /s/ *Phillip A. Wittmann*
Phillip A. Wittmann