## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION: J |
| | * | |
| This Document Relates to: | * | JUDGE BARBIER |
| All Cases and Cause No. 2:10-CV-02771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| * * * * * * * * * * * | * | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT MOEX OFFSHORE 2007 LLC TO DISMISS FIRST AMENDED CROSS-CLAIMS OF DEFENDANT HALLIBURTON ENERGY SERVICES INC.

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT FACTUAL ALLEGATIONS IN HALLIBURTON'S CROSS-CLAIMS. ......... 3

III. ARGUMENT ....................................................................................................... 5

    A.  Count I for Indemnity Under General Maritime Law Fails to State a Claim for which
Relief can be Granted ........................................................................................ 6

        1.  Halliburton fails to allege any viable theory of indemnity against MOEX Offshore for
the maritime personal injury claims of the Plaintiffs in Pleading Bundles A and B3. . 6

        2.  Halliburton's general maritime law indemnity and contribution claims do not apply to
the claims of the Bundle B1 and C Plaintiffs, because OPA displaces general
maritime law contribution and indemnity claims for OPA-covered damages............. 8

    B.  Count I for Contribution Under the General Maritime Law Fails to State a Claim for
Which Relief can be Granted. ........................................................................... 9

    C.  Count III for Negligence Fails to State a Claim for Which Relief can be Granted. ......... 11

        1.  BP was not MOEX Offshore's agent. ....................................................... 12

        2.  MOEX Offshore lacked operational control. ................................................ 12

        3.  Halliburton fails to allege plausibly that MOEX Offshore owed any duty to Plaintiffs
or to it. ........................................................................................... 16

CONCLUSION ....................................................................................................... 19

## **TABLE OF AUTHORITIES**

**CASES**

*Adams v. Texaco,*
    640 F.2d 618 (5th Cir. Unit A 1981) ..................................................................9

*Ainsworth v. Shell Offshore, Inc.,*
    829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).......................10, 13, 16

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).............................................................................5, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................5

*Bolivar v. R & H Oil and Gas Co.,*
    789 F. Supp. 1374 (S.D. Miss. 1991)..............................................................12

*Citigroup Erisa Litigation, No. 07 Civ. 9790,*
    2009 WL. 2762708 (S.D.N.Y. Aug. 31, 2009).................................................13

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ..........................................................................12

*Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC,*
    615 F.3d 599 (5th Cir. 2010) .........................................................................2, 9

*Cooper Stevedoring Co. v. Kopke,*
    417 U.S. 106 (1974)..........................................................................................9

*Croley v. Matson Navigation Co.,*
    434 F.2d 73 (5th Cir. 1970) ............................................................................17

*Delta Commodities, Inc. v. M/T JO OAK, ETC.,*
    No. 88-1349, 1989 WL. 149253 (E.D. La. Dec. 6, 1989) ................................18

*Duplantis v. Shell Offshore, Inc.,*
    948 F.2d 187 (5th Cir. 1991) ..........................................................................14

*Ferrer v. Chevron Corp.,*
    484 F.3d 776 (5th Cir. 2007) ..........................................................................12

*In re Great Lakes Dredge & Dock Co.,*
    624 F.3d 201 (5th Cir. 2010) ..........................................................................16

*Gulf Oil Corp. v. Bivins,*
    276 F.2d 753 (5th Cir. 1960) ..........................................................................17

*Halliburton Co. v. Norton  Drilling Co.*,
   313 F.2d 380 (5th Cir. 1963) ......................................................................5

*Hardy v. Gulf Oil Corp.*,
   949 F.2d 826 (5th Cir. 1992) ..................................................................2, 7

*Hershey v. Energy Transfer Partners*,
   610 F.3d 239 (5th Cir. 2010) ......................................................................5

*Jones v. Bock*,
   549 U.S. 199 (2007).....................................................................................5

*Kane Enterprises v. MacGregor (USA) Inc.*,
   322 F.3d 371 (5th Cir. 2003) ....................................................................12

*In re Katrina Canal Breaches Litigation*,
   495 F.3d 191 (5th Cir. 2007) ....................................................................12

*Kramer v. Lockwood Pension Services, Inc.*,
   653 F. Supp. 2d 354 (S.D.N.Y. 2009).......................................................13

*Landry v. Huthnance Drilling Co.*,
   889 F.2d 1469 (5th Cir. 1989) ..................................................................13

*In re Liberty Seafood*,
   38 F.3d 755 (5th Cir. 1994) ........................................................................9

*Loose v. Offshore Navigation, Inc.*,
   670 F.2d 493 (5th Cir.1982) ........................................................................7

*Marathon Pipe Line Co. v. Drilling Rig  ROWAN/ODESSA*,
   761 F.2d 229 (5th Cir. 1985) ......................................................................7

*McFadyen v. Duke University*,
   No. 1:07CV953, 2011 WL. 1260207 (M.D.N.C. March 31, 2011)...................13

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
   924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) ........................6

*Rogers v. Shell Oil Co.*,
   No. 92-1040, 1993 WL. 30052 (E.D. La. Feb. 3, 1993)....................................16

*Ronquille v. MMR Offshore Services, Inc.*,
   353 F. Supp. 2d 680 (E.D. La. 2004).............................................10, 13, 16

*Thibodeaux v. Vamos Oil & Gas Co., No. Civ. A. 03-1883*,
   2005 WL. 3019773 (W.D. La. Nov. 10, 2005).............................................13

*Thomas v. Burlington Resources Oil & Gas Co., No. Civ. A. 99- 3904*,
    2000 WL. 1528082 (E.D. La. Oct. 13, 2000) (citations omitted)..........................10, 13, 16

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968), *aff'd in part and rev'd in part*, 424 F.2d 684
    (5th Cir.), *cert. denied*, 400 U.S. 832 (1970) ....................................................................12

*Two-J Ranch, Inc. Limitation Proceeding M/V Carla J*,
    534 F. Supp. 2d 671 (W.D. La. 2008)................................................................................7

*U.S. v. Atlantic Research Corp.*,
    551 U.S. 128 (2007)............................................................................................................2

*United Gas Corp. v. Guillory*,
    206 F.2d 49 (5th Cir. 1953) ..............................................................................................5

*United States v. Reliable Transfer Co.*,
    421 U.S. 397 (1975)............................................................................................................7

## STATUTES

33 U.S.C. § 2701, *et seq.*..........................................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1


## MISCELLANEOUS

Restatement (Second) of Torts § 886A(2) ..............................................................................9, 14

MOEX Offshore 2007 LLC ("MOEX Offshore")  respectfully submits this memorandum in support of its motion to dismiss the cross-claims of defendant Halliburton Energy Services, Inc. ("Halliburton") pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.[1]

# I.
## INTRODUCTION

On May 20, 2011, Halliburton asserted cross-claims against MOEX Offshore for contribution, indemnity and negligence under general maritime law.[2]  *See* First Amended Cross-Claims of Defendant Halliburton Energy Services, Inc. [Rec. Doc. 445] (hereafter "Cross-Claims").

Halliburton alleges that MOEX Offshore, as a co-lessee and 10% interest-holder, is liable the acts and omissions of BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") because BP acted as the agent of MOEX Offshore.  Cross-Claims ¶¶13, 46-50.  Further, Halliburton alleges that MOEX Offshore was negligent because it (a) approved, authorized, and participated in BP's design and operations of the well; (b) knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so the drilling vessel crew could take action; and (c) trusted BP to make decisions relative to the Lease and to the Deepwater Horizon's drilling operations.  *Id.* ¶50.  Halliburton's Cross-Claims against MOEX Offshore suffer

---

[1]  This motion is directed at the pleading pursuant to Rule 12(b)(6) and, as such, accepts all well-pleaded allegations as true.  Should the case proceed, MOEX Offshore reserves its right to bring forth evidence to refute the allegations against it.

[2]  While the Cross-Claims also include allegations of gross negligence and willful misconduct, the Cross–Claims specify that such claims apply only to Anadarko Exploration and Production Company LP ("Anadarko E&P") and Anadarko Petroleum Corporation ("Anadarko Petroleum"), not to MOEX Offshore.  Cross-Claims ¶50 n.4.

from fatal infirmities and should be dismissed.  Halliburton fails to allege any facts showing that MOEX Offshore owed any duty to the Plaintiffs (or to Halliburton) or that MOEX Offshore bears any measure of fault for the blowout, fire, explosion and eventual sinking of the *Deepwater Horizon*.  Taken as true, Halliburton's allegations in fact show that there was no fault on the part of MOEX Offshore, and therefore doom each of Halliburton's Cross-Claims.

Specifically, Count I fails to state a prima facie claim for indemnity against MOEX Offshore.  Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829-30 (5th Cir. 1992).  Halliburton does not allege any facts that would demonstrate that MOEX Offshore bears any share of the fault for the incident giving rise to Halliburton's putative liability to the Plaintiffs, let alone the entirety of the fault.  Nor do the Cross-Claims allege that MOEX Offshore had any contractual relationship with Halliburton that would give rise to an obligation of indemnity.  *See* Cross-Claims ¶¶34-35.

Count I also fails to state a claim for contribution under general maritime law. *See* Cross-Claims ¶¶34-35.  "Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010) (*quoting U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007)).  Halliburton's allegations affirmatively show that MOEX Offshore is not in any way "responsible for

the same tort," and that MOEX Offshore should not bear any "percentage of fault" for the damages alleged by Plaintiffs. *See* § III.B.

Finally, Count III fails to state a claim for negligence against MOEX Offshore. Cross-Claims ¶¶42, 46-50. Because Halliburton does not allege that MOEX Offshore had a right to exercise operational control over any of the events, operations or instrumentalities that caused the blowout, fire, explosion and sinking of the *Deepwater Horizon*, the Cross-Claims fail to state a plausible claim that MOEX Offshore owed any duty to Plaintiffs or Halliburton. Halliburton's negligence claim against MOEX Offshore therefore must be dismissed.

## II.
## RELEVANT FACTUAL ALLEGATIONS IN HALLIBURTON'S CROSS-CLAIMS.

Halliburton alleges that MOEX Offshore was a party to the Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Act, Serial No. OCS-G 37306 (the "Lease"), and that MOEX Offshore was a co-lessee and held a 10% interest in the lease. Cross-Claims ¶14. BP was the primary owner of the Lease and was the sole Operator at a well in Mississippi Canyon, Block 252, the location known as "Macondo" (the "Macondo Well"). *Id.* ¶43. Halliburton alleges that MOEX Offshore and others (collectively referred to in the Cross-Claims as the "Non-Operating Cross-Defendants") entered into an operating agreement ("Operating Agreement") with BP regarding the Lease. *Id.* ¶46.

Halliburton alleges that, under the terms of the Operating Agreement, BP was required to "obtain the approval of the Non-Operating Cross-Defendants to proceed with nondiscretionary operations in connection with the Lease by, inter alia, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations." *Id.* The Operating Agreement allegedly also

required BP to provide the Non-Operating Cross-Defendants with (i) detailed technical information regarding exploration and other operations performed in connection with the Lease; (ii) access to "real time" data from the rig; and (iii) detailed technical information regarding operations conducted in connection with the Lease and the Operating Agreement. *Id.* ¶47. Halliburton further alleges that the Operating Agreement provided the Non-Operating Cross-Defendants with "a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease." *Id.* at  ¶48. The Cross-Claims assert that the Non-Operating Cross-Defendants each designated BP as "their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations." *Id.* ¶49.

On April 20, 2010, there was a blowout and explosion on board the *MODU Deepwater Horizon* ("*Deepwater Horizon*"). (Cross- Claims ¶1). Subsequently, the *Deepwater Horizon* sank into the Gulf of Mexico and oil was released. (*Id.*)

There is no allegation in Halliburton's pleading showing that MOEX Offshore had operational control or owed any duty of care directly to Halliburton. Halliburton does not allege that MOEX Offshore had operational involvement in, control of, or supervisory authority over the engineering or design of the Macondo Well; the *Deepwater Horizon* or its crew; the drilling operations conducted at the Macondo Well; or the completion operations conducted on the Macondo Well. Absent such a right of operational control, MOEX Offshore owed no duty to the Plaintiffs, and cannot be liable to Halliburton for contribution, indemnity, or negligence.

**III.**
**ARGUMENT**

**HALLIBURTON FAILS TO STATE ANY CLAIM FOR**
**WHICH RELIEF CAN BE GRANTED.**

The rules of pleading applicable to complaints are also applicable to third-party complaints, cross-claims and counterclaims for indemnity and contribution.  *See United Gas Corp. v. Guillory*, 206 F.2d 49, 52 (5th Cir. 1953); *Halliburton Co. v. Norton Drilling Co.*, 313 F.2d 380, 380 (5th Cir. 1963) (third party complaint for contribution was properly dismissed where third-party plaintiff could not recover as a matter of law).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245-46 (5th Cir. 2010).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 556).  If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), the claim should be dismissed.  Under this standard, Halliburton fails to state any claims against MOEX Offshore for which relief can be granted.

5

**A.     Count I for Indemnity Under General Maritime Law Fails to State a Claim for which Relief can be Granted.**

Halliburton's claim under general maritime law for indemnity from MOEX Offshore "for any and all sums it may be compelled to pay Claimants/Plaintiffs as a result of the incident made the basis of this proceeding"(Cross-Claims ¶34) fails as a matter of law.  Halliburton alleges no viable legal basis for imposing an indemnity obligation on MOEX Offshore and fails to allege any fault on MOEX Offshore's part.

**1.     Halliburton fails to allege any viable theory of indemnity against MOEX Offshore for the maritime personal injury claims of the Plaintiffs in Pleading Bundles A and B3.**

Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy*, 949 F.2d at 833- 34.  Although Halliburton does not specifically allege any theory on which its indemnity claims against MOEX Offshore are based, under maritime law's comparative fault system there are only three viable theories of maritime indemnity: (1) where a contract expressly provides for indemnification; (2) where the "Ryan Doctrine" applies; and (3) where a "vicariously liable or non-negligent tortfeasor is entitled to indemnity 'from a co-debtor guilty of actual fault.'" *Id.* at 833-34.[3]  None is applicable to Halliburton's claims against MOEX Offshore.

The first two potential indemnity theories are dispensed with easily.  Halliburton does not allege any agreement – and there is none – by which MOEX Offshore agreed to indemnify Halliburton in connection with operations on the Macondo Well.  The Ryan

---

[3]   In U*nited States v. Reliable Transfer Co.*, 421 U.S. 397 (1975), the Supreme Court instituted a system of comparative fault in maritime cases, obviating resort to indemnity in almost all maritime cases. *See, e.g., Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir.1982) ("A comparative fault system not only eliminates the doctrine of contributory negligence but also apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none.").

Doctrine also is plainly inapplicable because it applies only to permit a vessel to recover where a stevedore breached a warranty of workmanlike performance. *Two-J Ranch, Inc. Limitation Proceeding M/V Carla J*, 534 F. Supp. 2d 671, 687 (W.D. La. 2008).

The third theory of indemnity also does not avail Halliburton. In the Fifth Circuit, "a vicariously liable or non-negligent tortfeasor may be entitled to indemnity 'from a co-debtor *guilty of actual fault*.'" *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985) (emphasis added; internal citation omitted).[4]

As discussed more fully below, Halliburton fails to allege any "actual fault" on the part of MOEX Offshore. A party who "neither caused nor contributed" to an alleged tort is not liable for actual fault. *Marathon Pipe Line Co.*, 761 F.2d at 236. Further, a party who "had no control" over the alleged tort is not guilty of actual fault. *Id.* Halliburton fails to make plausible allegations that MOEX Offshore "caused or contributed" to the torts giving rise to Plaintiffs' injuries, let alone that the <u>entire</u> fault for those injuries lay with MOEX Offshore. Halliburton's maritime indemnity claim therefore fails as a matter of law.

---

[4]   No plaintiff alleges that Halliburton is vicariously liable for the alleged torts of MOEX Offshore. Indeed, the Plaintiffs expressly disclaim any theory of vicarious liability applicable to MOEX Offshore. Plaintiffs' Memorandum of Law in Opposition to MOEX Offshore and other Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 1803] at 9.  Nor does Halliburton allege any relationship with MOEX Offshore, such as respondeat superior, joint venture, agency or partnership, that would provide any basis for a finding of vicarious liability (and there is none).

**2.      Halliburton's general maritime law indemnity and contribution claims do not apply to the claims of the Bundle B1 and C Plaintiffs, because OPA displaces general maritime law contribution and indemnity claims for OPA-covered damages.**

The Plaintiffs in Pleading Bundles B1 and C assert claims for property damage and economic loss that are recoverable only under OPA.[5]  OPA specifically provides for contribution and the subrogation of claims.  *See* 33 U.S.C. § 2709; 33 U.S.C. § 2702(d)(1)(A) and (B); 33 U.S.C. § 2715.  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons. . . . [I]t, therefore, preempts the general maritime law as to recovery of cleanup expenses and the cost of compensating third parties."  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997).  To the extent Halliburton's claim for indemnity and contribution under general maritime law (Count I) is intended to apply to the B1 and C Plaintiffs' economic loss and damage claims recoverable under OPA, Halliburton "is restricted to the contribution scheme provided in [OPA]" with respect to damages paid pursuant to OPA, and cannot resort to general maritime law.  *Id.* at 1449.  The only claims for which Halliburton seeks indemnity or contribution that are not displaced by OPA are the personal injury claims of plaintiffs in Pleading Bundles A and B3.

---

[5]   *See* Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 1414-1] ("Non-Operating Defendants' MTD Mast. B1 Compl."); Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third Party Complaint for Local Governmental Entities Pursuant to Fed. R. Civ. P. 12(b)(6) [Pleading Bundle C] [Rec. Doc. 2220-1] at 8.

**B.    Count I for Contribution Under the General Maritime Law Fails to State a Claim for Which Relief can be Granted.**

Halliburton alleges that, pursuant to general maritime law, Halliburton is entitled to contribution from MOEX Offshore "for any and all sums it may be compelled to pay Claimants/Plaintiffs as a result of the incident made the basis of this proceeding."  Cross-Claims ¶34.  The claim fails because Halliburton alleges no facts showing that MOEX Offshore bears any fault for Plaintiffs' alleged personal injuries.

When a party is entitled to contribution, that entitlement is proportional to the responding party's negligence or fault. *Combo Mar., Inc.*, 615 F.3d at 602; *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *In re Liberty Seafood*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. Unit A 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . to the extent occasioned by its fault"); RESTATEMENT (SECOND) OF TORTS § 886A(2) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability."). "[A] non-negligent tortfeasor is 0% at fault."  2-I BENEDICT ON ADMIRALTY § 13.  It follows that a non-negligent tortfeasor cannot be liable for contribution.  *Id.*

Halliburton alleges only that MOEX Offshore possessed a non-operating interest in the Lease, was entitled to obtain certain information from BP, and had "a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease."  Cross-Claims ¶¶46-48.  Halliburton's pleading does not state what that "mechanism" was, how the "mechanism" worked, whether the "mechanism" applied in the context of the situation that occurred on April 20, or whether

the "mechanism" could have prevented the Plaintiffs' injuries and, if so, how.  More fundamentally, Halliburton does not allege that MOEX Offshore had a right to exercise or in fact exercised operational control over any activity allegedly giving rise to Plaintiffs' injuries.  Therefore, Halliburton fails to state a claim for contribution because it has not alleged any basis for finding that MOEX Offshore was at fault.

As argued in the Motions to Dismiss for Pleading Bundles B1 and B3 filed by MOEX Offshore and others,[6] a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the activity.  *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550-51 (5th Cir. 1987) (holding that Louisiana law requires operational control to impose liability upon defendant in cases arising from oil drilling activities), *cert. denied*, 485 U.S. 1034 (1988).  It is also settled law that where a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence.  *See Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99- 3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.) (holding that an independent contractor's injured employee was not owed a duty by the principal where the contractor created the hazard) (citations omitted).  Even where a principal without operational control has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede.  *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to

---

[6]  MOEX Offshore expressly incorporate by reference its Motions to Dismiss for Pleading Bundles B1 [Rec. Doc. 1414] and B3 [Rec. Doc. 1416] and the local governmental entity master complaint [Rec. Doc. 2220].

create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

Halliburton fails to allege that MOEX Offshore had a right to control any aspect of the *Deepwater Horizon*'s drilling operations, or any other instrumentality or operation allegedly giving rise to the Plaintiffs' injuries.  To the contrary, Halliburton specifically alleges that "BP was the primary owner of the Lease and was the sole Operator at the Macondo Well," that "BP controlled most, if not all, of the actions of BP's sub-contractors"; that "BP decided on the well design [and] decided when to conduct rig activities"; and that "BP decided what products and services to use, and whether to accept or reject its contractors recommendations regarding those products and services."  Cross-Claims ¶43.  Thus, as a matter of law, Plaintiffs have no claim for negligence against MOEX Offshore for which relief can be granted.  Accordingly, Halliburton has no claim for contribution against MOEX Offshore because a non-negligent defendant is not liable for contribution.  Halliburton's contribution claim therefore must be dismissed.

## C.  Count III for Negligence Fails to State a Claim for Which Relief can be Granted.

Finally, Halliburton claims that the "damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of," among others, MOEX Offshore, and that "[t]hese acts of negligence render these Cross-Defendants liable pursuant to the provisions of 46 USC §30104 and the general maritime law, or other applicable law."  Cross-Claims ¶42.  Because Halliburton has not set forth allegations sufficient to state a plausible claim for negligence against MOEX Offshore, Halliburton's negligence claim must be dismissed.

### 1.    BP was not MOEX Offshore's agent.

Halliburton's first theory of negligence liability against MOEX Offshore is based on the allegation that MOEX Offshore and the other Non-Operating Cross-Defendants "are liable for the acts and omissions of their agent, BP."  Cross-Claims ¶50.  But, BP was not MOEX Offshore's agent.  To the contrary, the Operating Agreement specifically disclaimed any such relationship, setting forth plainly that the Operator was not the agent of the non-operating parties.  Operating Agreement Art. 5.1.[7]  Moreover, the Operating Agreement provided that it constituted the parties' final and entire agreement as to its subject matter and could not be modified except by written agreement of the parties, thereby excluding the possibility of any other agency arrangement between them.[8] Operating Agreement Art. 26.5.5.

### 2.    MOEX Offshore lacked operational control.

Halliburton's other theories of liability against MOEX Offshore are based on conclusory allegations that MOEX Offshore (a) "approved, authorized, and participated

---

[7]   Halliburton's cross-claims expressly reference the Operating Agreement as the basis for Halliburton's claims against MOEX Offshore.  *See* Cross-Claims ¶¶46-48.  Therefore, MOEX Offshore may refer to the relevant provisions of the Operating Agreement in this motion to dismiss.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 781 n.13 (5th Cir. 2007); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  A copy of the Operating Agreement was attached as an exhibit to Anadarko Petroleum Corporation's Form 8-K, filed with the U.S. Securities and Exchange Commission on June 21, 2010, and separately as Exhibit A to the Non-Operating Defendants' MTD Mast. B1 Compl.  The portions of the Operating Agreement referred to herein can be found in those filings.

[8]   The Cross-Claims do not allege that MOEX Offshore is vicariously liable as a principal of or joint venture partner with BP, and do not plead a vicarious liability theory against MOEX Offshore.  In any event, the Cross-Claims' allegations and the Operating Agreement establish that MOEX Offshore is not vicariously liable for any actions or omissions by BP, because MOEX Offshore is not alleged to have (and does not have) any right to control BP's operations.  *See, e.g.*, *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating investor who has no right to control oil and gas operations may not be held vicariously liable as joint venturer).

in BP's design and operations of the well," (b) "knew, or should have known, of the

presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn

the drilling vessel crew of the imminent blowout so that the drilling vessel crew could

take action," and (c) "entrusted BP to make decisions relative to the Lease and to the

*Deepwater Horizon*'s drilling operations."  Cross-Claims ¶50.  Applying the heightened

pleading standards under *Iqbal*, courts have found that allegations that a defendant "knew

or should have known" are insufficient to state a claim.  *See McFadyen v. Duke*

*University*, No. 1:07CV953, 2011 WL 1260207, at *59 (M.D.N.C. March 31, 2011);

*Kramer v. Lockwood Pension Services, Inc.*, 653 F.Supp.2d 354, 381 (S.D.N.Y. 2009); In

re Citigroup Erisa Litigation, No. 07 Civ. 9790, 2009 WL 2762708, at *25 (S.D.N.Y.

Aug. 31, 2009)

Moreover, Halliburton's negligence claim fails as a matter of law because the

Cross-Claims do not allege that MOEX Offshore had a right to control the operations of

BP or any other defendant.  As noted above, only entities with operational control have a

duty to prevent harm from oil and gas operations.  *See, e.g.*, *Ainsworth*, 829 F.2d at 550.

A principal neither assumes nor owes any duty to protect others from the negligence of

an independent contractor.  *Thomas*, 2000 WL 1528082, at *2; *Ronquille*, 353 F. Supp.

2d at 682 (E.D. La. 2004).

The Cross-Claims allege, at most, that MOEX Offshore owned a minority non-

operational stake in the Lease.  None of the alleged rights and activities of MOEX

Offshore constituted operational control over BP's operations at the Macondo Well.

MOEX Offshore's alleged rights under the Operating Agreement to review or request

information about operations conducted by BP and its contractors did not amount to

authority over operations or control of the well or the rig.  *See Thibodeaux v. Vamos Oil & Gas Co.*, No. Civ. A. 03-1883, 2005 WL 3019773, at *1 (W.D. La. Nov. 10, 2005) (The "reservation of the right to monitor contractor safety does not give rise to operational control so as to make the principal liable for the contractor's actions") (citations omitted); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (holding under the general maritime law that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (*quoting* RESTATEMENT (SECOND) OF TORTS §414 cmt. c (1965)); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) (applying Louisiana law) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and therefore does not lead to any liability of the principal).  In short, the Cross-Claims do not, and cannot, allege that MOEX Offshore had the operational control over the activities aboard the *Deepwater Horizon* that would be necessary to support negligence liability.

The allegations instead show that MOEX Offshore *lacked* the requisite operational control.  As noted above, the Cross-Claims specifically allege that "BP was the primary owner of the Lease and was the sole Operator at the Macondo Well," that "BP controlled most, if not all, of the actions of BP's sub-contractors," that "BP decided on the well design [and] decided when to conduct rig activities," and that "BP decided what products and services to use, and whether to accept or reject its contractors recommendations regarding those products and services."  Cross-Claims ¶43.  The

Operating Agreement further confirms that MOEX Offshore did not have operational control, specifically designating BP Exploration & Production Inc. as the Operator and granting to BP the exclusive right and duty to conduct all activities or operations under the Operating Agreement.  Operating Agreement Arts. 4.1, 5.1.  The Operating Agreement further stated that the Operator was an independent contractor in performing services under the agreement, and not subject to the control or direction of the non-operating parties.  *Id.* Art. 5.1.  MOEX Offshore's lack of authority to operate or to participate in operation of the well is supported by Halliburton's own treatment of the parties in its Cross-Claims, where MOEX Offshore is defined as a "Non-Operating Cross-Defendant."  Cross-Claims ¶46.

Halliburton's conclusory allegations concerning MOEX Offshore not only are unsupported by factual allegations of operational control, but also are patently implausible.  An allegation of mere access to information is insufficient to establish that off-rig observers could or should have interpreted the available data and concluded that hydrocarbons had entered the well.[9]  Even if MOEX Offshore had been monitoring the data (which itself is not alleged), the Cross-Claims do not assert that the information available was sufficient to have allowed any of MOEX Offshore's off-rig personnel to conclude that a blowout was imminent.  Critically, the Cross-Claims do not allege that MOEX Offshore had authority to direct the crew of the *Deepwater Horizon*.  Based only upon alleged access to information, Halliburton cannot impose on MOEX Offshore a duty to intercede in the operations of an independent contractor (BP) and unrelated

---

[9]   Indeed, the crew on the *Deepwater Horizon* undoubtedly was aware of the same information allegedly available to MOEX Offshore and, unlike MOEX Offshore, was also present during the events occurring aboard the *Deepwater Horizon* and/or had the authority to control operations of those events.

contractors, where there is no allegation that MOEX Offshore had any right, authority or ability to control them.

Halliburton's theory contravenes settled law in this Circuit and elsewhere.  When, as here, a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from hazards caused by the contractor.  *See Ronquille*, 353 F. Supp. 2d at 682 (holding that no duty existed where principal did not direct or perform the activities) (citation omitted); *Thomas*, 2000 WL 1528082, at *2 (holding that an independent contractor's injured employee was not owed a duty by the principal where the contractor created the hazard) (citations omitted).

Without operational control, "[a] principal has no duty . . . to intercede when an independent contractor's actions have created a dangerous situation." *Rogers v. Shell Oil Co.*, No. 92-1040, 1993 WL 30052, at *2 (E.D. La. Feb. 3, 1993) (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987)).  Thus, allegations that MOEX Offshore "knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action" and "entrusted BP to make decisions relative to the Lease and to the *Deepwater Horizon*'s drilling operations" (Cross-Claims ¶50) are insufficient as a matter of law to state a claim for negligence. Accordingly, the negligence claim against MOEX Offshore must be dismissed.

### 3.     Halliburton fails to allege plausibly that MOEX Offshore owed any duty to Plaintiffs or to it.

To state a claim for negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the]

plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (internal citations and quotations omitted). Halliburton fails to set forth any allegations that MOEX Offshore, as a "Non-Operational Cross-Defendant," owed any duty to Plaintiffs or Halliburton.

Halliburton does not identify the source of any duty on the part of MOEX Offshore to warn BP, the drilling vessel crew, Plaintiffs, or Halliburton of danger. That is unsurprising, because no such duty exists. Mere possession of a non-operational interest in a lease does not give rise to a duty to third parties such as the Plaintiffs and Halliburton; nor does it establish that MOEX Offshore breached any duty or caused the Plaintiffs' alleged injuries. Nor does Halliburton point to any duty under the Operating Agreement that would give rise to claims of negligence against MOEX Offshore, particularly since the Operating Agreement entrusts operations on the leased property exclusively to BP as an independent contractor. Operating Agreement Art. 5.1.

Indeed, the very notion that MOEX Offshore had a duty to alert the drilling vessel crew to information that MOEX Offshore received from BP is specious. A leaseholder such as MOEX Offshore owes no duty to warn independent contractors of hazardous conditions on the leased property when the independent contractors "know or should know of the existence of a particular condition and [] appreciate or should appreciate its dangers." *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger") (negligence). The alleged connection is even more tenuous here because

Halliburton is not even MOEX Offshore's independent contractor.  MOEX Offshore and Halliburton had no contractual relationship whatsoever.

At most, Halliburton alleges only that MOEX Offshore had access to the same information that was available to BP and other contractors and employees on the rig. Halliburton does not allege that MOEX Offshore was monitoring rig data at the precise moment that hydrocarbons allegedly entered the well, or at any relevant time thereafter.[10] Nevertheless, taking Halliburton's implausible allegations at face value, it must follow that if MOEX Offshore "knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010," then BP, its contractors and the *Deepwater Horizon*'s crew also "knew or should have known" of the same information.  Under those circumstances,  MOEX Offshore had no duty to warn BP or, by extension, the drilling vessel crew simply because MOEX Offshore had access to information, since BP and its contractors already possessed the same information.  *See Delta Commodities, Inc. v. M/T JO OAK, ETC.*, No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989) (holding that no duty to warn arose where those in control of the vessel possessed knowledge and were in control of vessel's operations).  Thus, even if a duty existed (and none did), Halliburton still has not stated a claim for negligence against MOEX Offshore.  Based upon Halliburton's factual allegations, Halliburton's negligence claim against MOEX Offshore is foreclosed as a matter of law, and must be dismissed.

---

[10] Indeed, the information allegedly available second-hand to MOEX Offshore was necessarily incomplete because without knowledge of the rig's contemporaneous operations, MOEX Offshore had no way of interpreting the data transmitted by the rig.

**CONCLUSION**

For the foregoing reasons, Halliburton's Cross-Claims against MOEX Offshore

2007 LLC must be dismissed in their entirety.

Dated:  June 20, 2011

Respectfully submitted,

s/  John F. Pritchard_____

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 20, 2011.

s/  John F. Pritchard
John F. Pritchard
