IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| THIS DOCUMENT RELATES TO: ALL CASES AND 2:10-CV-02771 IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL., IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

### DEFENDANT DRIL-QUIP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS HALLIBURTON'S CROSS-CLAIMS

#### SUMMARY

This lawsuit arises out of an incident that occurred while the *Deepwater Horizon*, a mobile offshore drilling unit owned and operated by Transocean entities, was drilling the Macondo No. 1 well for BP Exploration and Production, Inc., the lessee. Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

On April 20, 2011, Halliburton Energy Services, Inc. ("HESI") filed its Original Cross-Claims. On May 20, 2011, HESI filed its First Amended Cross Claims ("the Cross-Claims"). The Cross-Claims named 25 parties, including Dril-Quip, Inc. ("Dril-Quip"), as cross-defendant. The Cross-Claims alleged that:

   1.    Dril-Quip "was involved with providing wellhead systems to the *Deepwater Horizon*, including the Macondo Well."[1]

---

[1] Cross-Claims ¶ 18, at 8.

2. HESI is entitled to contribution and indemnity from Dril-Quip, as a Cross-Defendant, "for any and all sums it may be compelled to pay Claimants/Plaintiffs as a result of the incident made the basis of this proceeding."[2]

3. "The damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of Dril-Quip."[3]

4. "Dril-Quip was negligent in at least the following ways:
    (a) Failing to exercise reasonable care while participating in the drilling operations related to the Macondo Well;
    (b) Failing to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill; and
    (c) Providing wellhead systems for the Macondo Well which failed to operate, were improperly designed, and/or possessed product defects."[4]

5. "Dril-Quip, Inc. is liable for strict products liability for its actions in defectively designing, manufacturing, and/or marketing the wellhead system for the DEEPWATER HORIZON. Specifically:
    (a) Dril-Quip designed and manufactured the wellhead system that failed to prevent the escape of hydrocarbons;
    (b) Dril-Quip's wellhead system did not act as a barrier to hydrocarbon flow;
    (c) Dril-Quip's wellhead system failed to operate properly or at all;
    (d) Dril-Quip's wellhead system was defective because it failed to operate as intended;
    (e) Dril-Quip's wellhead system was in a defective condition and unreasonably dangerous;"[5]

This account contains or refers to all references to Dril-Quip made by HESI in its Cross-Claims.

As the Eastern District of Pennsylvania recently noted,

> … the pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to crossclaims, counterclaims, and third-party complaints. *See, e.g., Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n. 13 (3d Cir. 2010) (applying *Iqbal* to crossclaims); *Tes Franchising, LLC v. Dombach*, 2010 U.S. Dist. LEXIS 124751 at *6 (E.D.Pa. November 24, 2010) (applying *Iqbal* to

---

[2] *Id.* ¶ 34, at 11-12.

[3] *Id.* ¶ 42, at 13.

[4] *Id.* ¶ 54, at 18-19.

[5] *Id.* ¶ 59, at 21.

2

counterclaims); *Simon Prop. Gr. v. Palombaro,* 682 F.Supp.2d 508, 511 (W.D.Pa.2010) (same).

*Schmolz+Bickenback USA, Inc. v. Dauble*, No. 09-751, 2011 WL 285123, *3 (E.D.Pa., Jan. 28, 2011); *see also Reishus v. Almaraz,* No. CV-10-01760-PHX-LOA, 2011 WL 42679, *3 (D. Ariz., Jan. 06, 2011); *West v. American Electric Power Co.*, No. 2:09-cv-00985, 2010 WL 3910189, *4 (S.D.W.Va., Oct. 4, 2010); *Miami Valley Fair Housing Ctr. v. Steiner & Assocs., Inc.,* No. 08-00150, 2010 WL 2631110, at *7 (May 13, 2010) (applying *Twombly* and *Iqbal* to third-party complaint); *Colon v. Blades*, 268 F.R.D. 143, 2010 WL 1731666, at *2 (D.P.R. Apr. 29, 2010) (same).  Under these standards, the Cross-Claims fail to state a claim against Dril-Quip because HESI failed to plead a predicate for a plausible claim against Dril-Quip.

Except for changes in verb tenses, HESI's Paragraph 54 tracks allegations made by the Transocean parties in their Third-Party Complaint, which itself acknowledged that it borrowed the allegations from Plaintiffs/Claimants.[6]  HESI's Paragraph 59 alleges conclusions and unwarranted inferences from innocent and/or unpled facts, neither of which type of assertion is entitled to the presumption of truth.

Thus, to date HESI has made no creditable allegations against Dril-Quip.  Several of these claims are admittedly borrowed from others and stated in conclusory terms, and none contains or is accompanied by any operative facts.  Because HESI fails to plead sufficient facts

---

[6]As to Dril-Quip, the following allegations, among others, have been made by the Plaintiffs/Claimants:
1. Dril-Quip participated in drilling operations related to the Macondo Well and failed to exercise reasonable care while participating in these drilling operations;
2. Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures and resources were available to prevent and/or mitigate the effects of an oil spill; and
3. Dril-Quip provided wellhead systems for the Macondo Well which suffered the blow-out which subsequently led to the BP Oil Spill which failed to operate, were improperly designed, or possessed product defects.

Third-Party Complaint, ¶XLVIII.

against Dril-Quip and thus fails to satisfy the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007), the Court should dismiss the Cross-Claims against Dril-Quip under Federal Rule 12(b)(6). Even if the pleading insufficiencies are overlooked, the Cross-Claims fail as a matter of law to state a claim for negligence under the general maritime law against Dril-Quip, because its own allegations conclusively establish that Dril-Quip owed no legal duty to Plaintiffs/Claimants, or to state a valid claim for indemnity. These insufficiencies mandate dismissal of all of HESI's claims against Dril-Quip.

**ARGUMENT AND AUTHORITIES**

**The Cross-Claims Fails to State a Claim Against Dril-Quip**

**A.     The Cross-Claims Must Meet Federal Pleading Standards.**

As noted, *supra* at 2-3, courts that have considered the issue have repeatedly held that the *Twombly-Iqbal* plausibility standards apply not only to plaintiffs' complaints, but to claims of all types among defendants as well. *See Schmolz+Bickenbach*, 2011 WL 285123 at *3. Federal courts sitting in this state have followed suit. In *Martco Ltd. Partnership v. Bruks-Klockner, Inc.*, No. 2:07 CV 2002, 2010 WL 2265145 (W.D.La., Jan. 1, 2010) the court applied *Twombly* to dismiss a third-party complaint:

> Merely alleging possible liability on the face of a complaint is not sufficient. As provided in the United States Supreme Court case of *Bell Atlantic v. Twombly*, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56. Bruks' Third-Party Complaint provides no basis on which

> derivative liability could arguably be supported. Bruks has failed to meet the threshold requirements of pleading a viable legal indemnity claim.

*Id.* at *6. And, in *Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363-C-M2, 2010 WL 3385117 (M.D.La., Apr. 30, 2010), the court ordered repleading of a third party complaint against a marine surveyor that had alleged fraud, negligent misrepresentation and breach of contract in general language tracking the elements of the causes of action. *Id.* at *4. The Court noted:

> While those facts may be set forth generally in the Third Party Complaint, [Third Party Plaintiff] does not allege…how those facts satisfy the required elements of causes of action in contract, tort, or fraud under general maritime law. To conclude that such facts satisfy the elements…without more specific allegations in that regard would be speculative under the *Twombly* standard…. Moreover, without more specific allegations…, it will be difficult for [Third Party Defendant] to frame a responsive pleading.

*Id.* at n.2.

These cases recognize, as did the Supreme Court in *Twombly* and *Iqbal*, *see* 550 U.S. at 558 and 556 U.S. at ___, 129 S.Ct. at 1953, that requiring a person, natural or legal, to come into court and defend an action "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources…." *Id.*; *see also Twombly*, 550 U.S. at 557-58 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 233-34) (claim should be tested for basic deficiency at "point of minimum expenditure of time and money by the parties and the court"). That is certainly the case here. The effect of the Cross-Claims on Dril-Quip, if allowed, will be to lump Dril-Quip together with more obviously culpable parties in hundreds, perhaps thousands, of lawsuits when in a year's time, marked by repeated public investigation of the facts leading to

and away from the *Deepwater Horizon* incident, barely a score of suits have directly named Dril-Quip.[7]

Dril-Quip respectfully contends that, as the Supreme Court has held, Rule 8 of the Federal Rules of Civil Procedure entitles it to dismissal from cases in which no party pleads facts and legal theories sufficient to render it plausible that it bears or shares liability for wrongful injury. The principal protection for a defendant like Dril-Quip, which has been sued in only a handful of cases and only on the sketchiest of grounds, is the vigilance of the district court in performing the gatekeeping function assigned to it by Rules 8 and 12. Unless extraordinary relief is granted, only this Court can assure that such a defendant, properly will escape claims "shy of a plausible entitlement to relief," *Twombly*, 550 U.S. at 559, at its earliest opportunity.

### B. The Complaint Fails to Allege Facts Sufficient to Establish Any Cause of Action

Today, to survive a motion to dismiss under Rules 8 and 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *see also Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009)(allegations must push claim past

---

[7] Those suits are no better pled than the Cross-Claim/Counterclaim and the Third-Party Complaint, and Dril-Quip has filed or will file motions to dismiss each of them. So far, Dril-Quip submits, no plaintiff anywhere has alleged a claim against it on which relief may be granted. Even after the February 18, 2011, Third-Party Complaint, which explicitly named Dril-Quip, only two groups of plaintiffs amended their complaints to name Dril-Quip, and one group has since recanted and dismissed as to Dril-Quip. *See* Docts. 1669 & 1713. The other names Dril-Quip only by incorporating language from the Third-Party Complaint. See Doct. 1524, ¶8 at 3 (Dril-Quip is named in Paragraph XIX of the Third-Party Complaint).

"conceivable" to "plausible"). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56, *quoted in In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (2010)(quoting *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at *4. *See also Great Lakes,* 624 F.3d at 210 (quoting *Iqbal* to effect that "legal conclusions can provide the complaint's framework, [but] must be supported by factual allegations"); *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 127, 1333 (11th Cir. 2010)(quoting *Iqbal,* ___ U.S. at ___, 129 S.Ct. at 1949). Under the standard set forth in *Twombly*, a complaint must plead "enough fact[s] to raise a reasonable expectation" that a plaintiff has a right to relief. *See* 550 U.S. at 557.

A qualitative review of HESI's allegations against Dril-Quip, *see* pages 1-2, *supra*, plainly reveals the failure of the Cross-Claims to meet current pleading requirements.

1. Dril Quip's "… involve[ment] with providing wellhead systems …" is an innocent fact that neither states nor implies wrongdoing.

2. HESI's alleged entitlement to contribution states a legal conclusion.

3. So does the allegation that "the damages and injuries … occurred as a result of the negligence of … Dril-Quip."

4. Subparagraph 54(n) ("failing to exercise reasonable care while participating in the drilling operations") assumes a fact nowhere pled ("participation") and states a conclusion without support.

5. Subparagraph 54(o) wrongly assumes that an equipment manufacturer, by shipping a product to an operating party, undertakes a duty to "prevent and/or mitigate the effects of an oil spill" and conclusorily alleges breach of that duty.

6. Subparagraph 54(p) states three unwarranted conclusions without any supporting operative facts.

7. Subparagraph 59(a) states two innocent facts ("Dril-Quip designed and manufactured the wellhead system") and one unwarranted factual inference ("failed to prevent the escape of hydrocarbons") that sounds like a wrongful act or omission but in fact is innocent unless it is alleged or shown that "escape" refers to an improper place and, more importantly, that the wellhead was intended to perform that function. Otherwise, the allegations contribute nothing to the plausibility analysis dictated by *Twombly* and *Iqbal*.

8. Subparagraph 59(b) similarly alleges that Dril-Quip's wellhead system failed to do something without showing it was supposed to do that something in the first place.

9. Subparagraph 59(c) states a conclusion without supporting facts.

10. Subparagraph 59(d) states a conclusion based on another conclusion.

11. Subparagraph 59(e) recites a conclusory legal formula.

In the past, such summary allegations might have effectively provided notice of a plaintiff's claim to a defendant, *see Conley v. Gibson,* 355 U.S. 41, 47 (1957), but *Twombly* and *Iqbal* have clarified the standard. HESI's allegations contain no operative facts that make it "plausible" that Dril-Quip is liable to HESI or to any Plaintiffs/Claimants. Specifically, the Cross-Claims fail to allege any facts that tend to establish any elements of Plaintiffs/Claimants' causes of action; instead, only innocent facts[8] and conclusory assertions[9] are set forth. But, as noted in *Gentilello* and *Plotkin*, *supra* at 8, such makeweights do not help to establish the plausibility of claims that *Twombly* and *Iqbal* require. It is thus impossible to ascertain what Dril-Quip did or failed to do that caused injury to any party.

---

[8] *E.g.,* "…Dril-Quip provided wellhead systems …" Cross-Claims ¶18, at 8.

[9] *E.g.,* "…[the systems] failed to operate, were improperly designed, or possessed product defects …." *Id.* ¶54, at 18-19.

Halliburton's allegations that "Dril-Quip provided wellhead systems for the Macondo Well … which failed to operate, were improperly designed, or possessed product defects"[10] fatally fails to provide facts or adequate legal theory to support a claim for product liability.

### C. The Complaint Alleges Facts that Negate Liability For Negligence on the Part of Dril-Quip.

Further, the Cross-Claims contain no facts that, if true, would render Dril-Quip directly liable for maritime negligence. Instead, its allegations negate any such liability. As a matter of law, Dril-Quip did not owe HESI or any Plaintiff/Claimant any duty of care.

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.' " *Canal Barge Co. v. Torco Oil Co*., 220 F.3d 370, 376 (5th Cir. 2000)(quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)). The duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations. *See, e.g., Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). Further, it is settled that where a principal retains an independent contractor to conduct oil and gas operations but does not retain control over or participate in the actions of the contractor, the principal neither assumes nor owes any duty to the contractor's employees. *Thomas v. Burlington Res. Oil & Gas Co.,* No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even when a principal without control over, or participation in, the operation has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.; Ronquille v. MMR Offshore Servs., Inc*., 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is

---

[10] *Id*. ¶54, at 18-19.

insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

*Ainsworth* is cited by courts applying both Louisiana law and the general maritime law. *See, e.g., Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law). In *Ainsworth*, Shell hired an independent contractor, Hercules, to erect an offshore drilling rig. 829 F.2d at 549. Hercules worked its crews around the clock, with no lights in the work area, and a worker fell as a result. *Id*. Shell had a "company man" on the rig who was aware of the hazardous conditions, but Shell retained no control over and did not participate in the operation of the rig. The Fifth Circuit rejected the plaintiff's argument that Shell's knowledge of the danger made it directly liable for the injury and held instead that because Shell lacked control over the operation, it had no duty to intervene. *Id.* at 551.

HESI's allegations fall far short of even the *Ainsworth* facts. HESI pleads that its own entities were owners and operators of the *Deepwater Horizon*, which was leased to BP. By contrast, Dril-Quip "was involved with providing wellhead systems."[11] Furnishing equipment for use in a drilling project owned and operated by others cannot plausibly create a duty to someone else's employee working onboard someone else's vessel. *Cf. In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (no duty owed by rig operator to transportation contractor hired by third party). The Cross-Claims lack any facts alleging conduct by Dril-Quip in breach of any duty, or that any of Plaintiffs' injuries resulted from any act by Dril-Quip; the conclusory assertion that Dril-Quip "participat[ed] in drilling operations … and failed to exercise reasonable

---

[11] *Id.* at ¶ 23.

care while participating …," *supra* at 3, are not facts but unwarranted inferences and carry no weight in alleging liability on Dril-Quip's part. *See Gentilello,* 677 F.3d at 544.

The Cross-Claims allege no facts from which the Court could infer that Dril-Quip owed HESI any legal duty because it does not allege that Dril-Quip controlled or had any right to control any of the operations of the *Deepwater Horizon*.  To the contrary, the express allegations that BP and Transocean owned the lease and the rig, respectively, and made the operating decisions that led to the blowout and explosion negate any inference that Dril-Quip conducted any of the *operations* on the *Deepwater Horizon* that allegedly led to any person's injuries and establish that such person is not entitled to relief.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("if the allegations, taken as true, show the plaintiff is not entitled to relief," then the "complaint is subject to dismissal").

If in *Ainsworth* a company man on the rig with actual knowledge of a dangerous situation had no duty to intercede because he lacked control over the operations on the rig, it necessarily follows that Dril-Quip had no duty to Plaintiffs/Claimants or HESI.  It possessed no contractual rights to control rig operations and is not alleged to have had any actual knowledge of a dangerous situation.

The Fifth Circuit recently affirmed the dismissal of a complaint for failure to state a manufacturing defect claim in a non-maritime context because the complaint "does not specify the manufacturing defect, nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury.  Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process." *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011).  Like the complaint dismissed in *Funk*, the Cross-Claims fail to allege any facts

11

relating to show the elements of a products liability claim are met. Accordingly, this claim should be dismissed.

## CONCLUSION

Dril-Quip respectfully requests that the Court dismiss HESI's Cross-Claims as to Dril-Quip pursuant to Federal Rules of Civil Procedure 12(b)(6).

Date:   June 20, 2011

                                                Respectfully submitted,

                                                **WARE, JACKSON, LEE & CHAMBERS, LLP**

                                                BY:   /s/ C. Dennis Barrow, Jr.
                                                     Don Jackson
                                                     Texas Bar No. 10476000
                                                     Fed ID No. 6915
                                                     C. Dennis Barrow, Jr.
                                                   Texas Bar No. 00796169
                                                    Fed ID No. 20624
                                                   2929 Allen Parkway, 42nd Floor
                                                   Houston, TX 77019
                                                   Phone :  (713) 659-6400
                                                   Fax    :  (713) 659-6262
                                                   Counsel for Defendant, Dril-Quip, Inc.

**CERTIFICATE OF SERVICE**

    I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

    /s/ C. Dennis Barrow, Jr._____
    C. Dennis Barrow, Jr.