## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | **SECTION: J** |
| | * | |
| **This Document Relates to:** | * | |
| **All Cases and No. 2:10-CV-02771,** | * | **JUDGE BARBIER** |
| | * | |
| | * | |
| | * | **MAGISTRATE SHUSHAN** |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT MOEX OFFSHORE 2007 LLC'S MOTION TO DISMISS
### DEFENDANT M-I L.L.C.'S FIRST AMENDED CROSS-CLAIMS

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................... 1

II. RELEVANT FACTUAL ALLEGATIONS IN M-I'S CROSS-
CLAIMS. ...................................................................................................................................... 2

III. ARGUMENT ......................................................................................................................... 4

   A.  Standard of Review............................................................................................................ 4

   B.  Count IV for Indemnity Under General Maritime Law Fails to State a Claim for
      which Relief can be Granted................................................................................................ 5

      1.  M-I fails to allege any viable theory of indemnity against MOEX Offshore for
         the maritime personal injury claims of the Plaintiffs in Pleading Bundles A
         and B3. ......................................................................................................................... 5

      2.  BP was not MOEX Offshore's agent. ......................................................................... 7

      3.  M-I's general maritime law indemnity and contribution claims, based on the
         claims of the Bundle B1 and C Plaintiffs, fail as a matter of law because OPA
         displaces general maritime law contribution and indemnity claims for OPA-
         covered damages. ......................................................................................................... 8

   C.  Count IV for Contribution Under the General Maritime Law Fails to State a
      Claim for Which Relief can be Granted. ........................................................................... 9

CONCLUSION.......................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Adams v. Texaco*,
  640 F.2d 618 (5th Cir. Unit A 1981) .................................................................9

*Ainsworth v. Shell Offshore, Inc.*,
  829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)....................11

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).....................................................................................4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................4, 5

*Bolivar v. R & H Oil and Gas Co.*,
  789 F. Supp. 1374 (S.D. Miss. 1991).................................................................7

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................7

*Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*,
  615 F.3d 599 (5th Cir. 2010) .........................................................................2, 9

*Cooper Stevedoring Co. v. Kopke*,
  417 U.S. 106 (1974)..........................................................................................9

*Duplantis v. Shell Offshore, Inc.*,
  948 F.2d 187 (5th Cir. 1991) ..........................................................................11

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) ............................................................................7

*Hardy v. Gulf Oil Corp.*,
  949 F.2d 826 (5th Cir. 1992) .........................................................................2, 5

*Hershey v. Energy Transfer Partners*,
  610 F.3d 239 (5th Cir. 2010) ............................................................................5

*Jones v. Bock*,
  549 U.S. 199 (2007)...........................................................................................5

*Kane Enterprises v. MacGregor (USA) Inc.*,
  322 F.3d 371 (5th Cir. 2003) ............................................................................7

*In re Katrina Canal Breaches Litigation*,
    495 F.3d 191 (5th Cir. 2007) .........................................7

*Landry v. Huthnance Drilling Co.*,
    889 F.2d 1469 (5th Cir. 1989) ......................................10

*In re Liberty Seafood*,
    38 F.3d 755 (5th Cir. 1994) .........................................9

*Loose v. Offshore Navigation, Inc.*,
    670 F.2d 493 (5th Cir.1982) .........................................6

*M-I Co. v. Norton Drilling Co.*,
    313 F.2d 380 (5th Cir. 1963) .........................................4

*Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*,
    761 F.2d 229 (5th Cir. 1985) .........................................6

*National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) .........................8

*Ronquille v. MMR Offshore Services, Inc.*,
    353 F. Supp. 2d 680 (E.D. La. 2004) ...............................12

*Thibodeaux v. Vamos Oil & Gas Co., No. Civ. A. 03-1883*,
    2005 WL. 3019773 (W.D. La. Nov. 10, 2005) ...............................10

*Thomas v. Burlington Resources Oil & Gas Co., No. Civ. A. 99- 3904*,
    2000 WL. 1528082 (E.D. La. Oct. 13, 2000) (citations omitted) ...............11

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968) ...............................7

*Two-J Ranch, Inc. Limitation Proceeding M/V Carla J*,
    534 F. Supp. 2d 671 (W.D. La. 2008) ...............................6

*U.S. v. Atlantic Research Corp.*,
    551 U.S. 128 (2007) ...............................2

*United Gas Corp. v. Guillory*,
    206 F.2d 49 (5th Cir. 1953) ...............................4

*United States v. Reliable Transfer Co.*,
    421 U.S. 397 (1975) ...............................6

## STATUTES

33 U.S.C. §2702(d)(1)(A) and (B)........................................................................8

33 U.S.C. §2709.................................................................................................8

33 U.S.C. §2715.................................................................................................8

Fed. R. Civ. P. 12(b)(6).................................................................................1, 8

## MISCELLANEOUS

Restatement (Second) of Torts §886A(2) .......................................................9, 11

MOEX Offshore 2007 LLC ("MOEX Offshore") respectfully submits this memorandum in support of its motion to dismiss the cross-claims of defendant M-I LLC ("M-I") pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.[1]

## I.
## INTRODUCTION

On May 24, 2011, M-I asserted cross-claims against MOEX Offshore for contribution and indemnification under general maritime law.  *See* Defendant M-I L.L.C.'s First Amended Cross-Claims [Rec. Doc. 2531] ("Cross-Claims").

M-I alleges that MOEX Offshore, as a co-lessee and 10% interest-holder in the Macondo well, is liable for the acts and omissions of BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") because BP purportedly acted as MOEX Offshore's agent.  Cross-Claims ¶¶64-65.  Further, M-I alleges that MOEX Offshore was negligent because it (a) knew of, approved, and authorized BP's negligent design and operations of the well; and (b) knew or should have known of the presence of hydrocarbons in the well on the evening of April 20, 2010 in time to warn the drilling vessel crew of the imminent blowout, but failed to do so.  *Id.* ¶66.

As against MOEX Offshore, M-I's Cross-Claims suffer from fatal infirmities and should be dismissed.  M-I fails to allege any facts showing that MOEX Offshore owed any duty to M-I (or to the Plaintiffs), or that MOEX Offshore bears any measure of fault for the blowout, fire, explosion and eventual sinking of the *Deepwater Horizon*.

---

[1]  This motion is directed at the pleading pursuant to Rule 12(b)(6) and, as such, accepts all well-pleaded allegations as true.  Should the case proceed, MOEX Offshore reserves its right to bring forth evidence to refute the allegations against it.

Specifically, Count IV fails to state a prima facie claim for indemnity against MOEX Offshore.  Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829-30 (5th Cir. 1992).  M-I does not allege any facts that would demonstrate that MOEX Offshore bears any share of the fault for the incident giving rise to M-I's putative liability to the Plaintiffs, let alone the "entirety" of the fault.  Nor do the Cross-Claims allege that MOEX Offshore had any contractual relationship with M-I that would give rise to an obligation of indemnity.  *See* Cross-Claims ¶¶68-69.  *See* §III.B.

Count IV also fails to state a claim for contribution under general maritime law. *See* Cross-Claims ¶¶68-69.  "Contribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602 (5th Cir. 2010) (*quoting U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007)).  M-I's allegations affirmatively show that MOEX Offshore is not in any way "responsible for the same tort," and thus, MOEX Offshore should not bear any "percentage of fault" for the damages alleged by Plaintiffs.  *See* §III.C.

## II.
## RELEVANT FACTUAL ALLEGATIONS IN M-I'S CROSS-CLAIMS.

M-I alleges that MOEX Offshore was a party to the Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Act, Serial No. OCS-G 37306 (the "Lease"), and that MOEX Offshore was a co-lessee with a 10% interest in the Lease. Cross-Claims ¶60.  BP is alleged to be the "primary leaseholder" and was "sole operator

of the well." *Id.* ¶53.  M-I alleges that MOEX Offshore and its direct and indirect parent companies (referred to in the Cross-Claims as the "MOEX Parties"), along with Anadarko Exploration & Production Company L.P. and Anadarko Petroleum Corporation (referred to in the Cross-Claims as the "Anadarko Parties"), entered into an operating agreement ("Operating Agreement") with BP regarding the Lease.  *Id.* ¶61.

M-I alleges that, under the terms of the Operating Agreement, BP was required to "obtain the approval of the Anadarko Parties and the MOEX Parties to proceed with nondiscretionary operations in connection with the lease, including by seeking the authorization of the Anadarko Parties and the MOEX Parties for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations."  *Id.* M-I also alleges that the Operating Agreement also required BP to provide the Anadarko Parties and the MOEX Parties with (i) detailed technical information regarding exploration and other operations performed in connection with the Lease; (ii) access to "real time" data from the rig; and (iii) detailed technical information regarding operations conducted in connection with the Lease and the Operating Agreement.  *Id.* ¶62.  M-I further alleges that the Operating Agreement provided the Anadarko Parties and the MOEX Parties with "a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues."  *Id.* ¶63.

The Cross-Claims assert that the Anadarko Parties and the MOEX Parties each designated BP as "their operator and local agent, with full authority to act on their behalf in complying with the requirements of the lease and applicable regulations."  *Id.* ¶64.  M-I further alleges that MOEX Offshore was negligent because it (a) knew of, approved, and BP's negligent design and operations of the well; and (b) knew or should have

known of the presence of hydrocarbons in the well on the evening of April 20, 2010 in time to warn the drilling vessel crew of the imminent blowout, but failed to do so.  *Id.* ¶66.

There is no allegation in M-I's pleading showing that MOEX Offshore had operational control over the Macondo Well or its operations, or owed any duty of care directly to M-I.  M-I does not allege that MOEX Offshore had operational involvement in, control of, or supervisory authority over the engineering or design of the Macondo Well; the *Deepwater Horizon* or its crew; the drilling operations conducted at the Macondo Well; or the completion operations conducted on the Macondo Well.  Because there was no such a right of operational control, MOEX Offshore owed no duty to the Plaintiffs, and cannot be liable to M-I for contribution or indemnity.

### III.
### ARGUMENT

**A.      Standard of Review**

The rules of pleading applicable to complaints are also applicable to third-party complaints, cross-claims and counterclaims for indemnity and contribution.  *See United Gas Corp. v. Guillory*, 206 F.2d 49, 52 (5th Cir. 1953); *M-I Co. v. Norton Drilling Co.*, 313 F.2d 380, 380 (5th Cir. 1963) (third party complaint for contribution was properly dismissed where third-party plaintiff could not recover as a matter of law). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245-46 (5th Cir. 2010).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), the claim should be dismissed. Under this standard, M-I fails to state any claims against MOEX Offshore for which relief can be granted.

**B.     Count IV for Indemnity Under General Maritime Law Fails to State a Claim for which Relief can be Granted.**

M-I's claim under general maritime law for indemnity from MOEX Offshore "for any and all damages that may be assessed against M-I as a result of the explosion and oil spill" (Cross-Claims ¶68) fails as a matter of law. M-I alleges no viable legal basis for imposing an indemnity obligation on MOEX Offshore and fails to allege any fault on MOEX Offshore's part.

**1.     M-I fails to allege any viable theory of indemnity against MOEX Offshore for the maritime personal injury claims of the Plaintiffs in Pleading Bundles A and B3.**

Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy*, 949 F.2d at 833- 34. Although M-I does not specifically allege any theory on which its indemnity claims against MOEX Offshore are based, under maritime law's comparative

fault system there are only three viable theories of maritime indemnity: (1) where a contract expressly provides for indemnification; (2) where the "Ryan Doctrine" applies; and (3) where a "vicariously liable or non-negligent tortfeasor is entitled to indemnity 'from a co-debtor guilty of actual fault.'" *Id.* at 833-34.[2]  None is applicable to M-I's claims against MOEX Offshore.

The first two potential indemnity theories are dispensed with easily.  M-I does not allege any agreement – and there is none – by which MOEX Offshore agreed to indemnify M-I in connection with operations on the Macondo Well.  The Ryan Doctrine also is plainly inapplicable because it applies only to permit a vessel owner (which M-I is not) to recover where a stevedore breached a warranty of workmanlike performance. *Two-J Ranch, Inc. Limitation Proceeding M/V Carla J*, 534 F. Supp. 2d 671, 687 (W.D. La. 2008).

The third theory of indemnity also does not avail M-I.  In the Fifth Circuit, "a vicariously liable or non-negligent tortfeasor may be entitled to indemnity 'from a co-debtor *guilty of actual fault.*'" *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985) (emphasis added; internal citation omitted).[3]

---

[2]  In U*nited States v. Reliable Transfer Co.*, 421 U.S. 397 (1975), the Supreme Court instituted a system of comparative fault in maritime cases, obviating resort to indemnity in almost all maritime cases. *See, e.g., Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir.1982) ("A comparative fault system not only eliminates the doctrine of contributory negligence but also apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none.").

[3]  No plaintiff alleges that M-I is vicariously liable for the alleged torts of MOEX Offshore.  Indeed, the Plaintiffs expressly disclaim any theory of vicarious liability applicable to MOEX Offshore.  Plaintiffs' Memorandum of Law in Opposition to MOEX Offshore and other Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 1803] at 9.  Nor does M-I allege any relationship with MOEX Offshore, such as respondeat superior, joint venture, agency or partnership, that would provide any basis for a finding of vicarious liability (and none exists).

As discussed more fully in §III.C, M-I fails to allege any "actual fault" on the part of MOEX Offshore.  A party who "neither caused nor contributed" to an alleged tort is not liable for actual fault.  *Marathon Pipe Line Co.*, 761 F.2d at 236.  Further, a party who "had no control" over the alleged tort is not guilty of actual fault.  *Id.*  M-I fails to make plausible allegations that MOEX Offshore "caused or contributed" to the torts giving rise to Plaintiffs' injuries, let alone that the *entire* fault for those injuries lay with MOEX Offshore.  M-I's maritime indemnity claim therefore fails as a matter of law.

### 2.    BP was not MOEX Offshore's agent.

M-I also alleges that it is entitled to indemnity and contribution from MOEX Offshore based on the allegation that MOEX Offshore is "fully liable for the acts and omissions" of BP, its alleged agent.  Cross-Claims ¶65.  But, BP was not MOEX Offshore's agent.  To the contrary, the Operating Agreement specifically disclaimed any such relationship, setting forth plainly that the Operator was not the agent of the non-operating parties.  Operating Agreement Art. 5.1.[4]  Notably, the Operating Agreement provided that it constituted the parties' final and entire agreement as to its subject matter and could not be modified except by written agreement of the parties, thereby excluding

---

[4]   M-I's cross-claims expressly cite the Operating Agreement as the basis for M-I's claims against MOEX Offshore.  *See* Cross-Claims ¶¶61-63.  Therefore, MOEX Offshore may refer to the relevant provisions of the Operating Agreement in this motion to dismiss.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 781 n.13 (5th Cir. 2007); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  A copy of the Operating Agreement was attached as an exhibit to Anadarko Petroleum Corporation's Form 8-K, filed with the U.S. Securities and Exchange Commission on June 21, 2010, and separately as Exhibit A to the Memorandum of Law in Support of Motion of Defendant Anadarko Petroleum Corporation and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 1414-1].  The portions of the Operating Agreement referred to herein can be found in those filings.

the possibility of any other agency arrangement between them.  Operating Agreement

Art. 26.5.5.[5]

### 3. M-I's general maritime law indemnity and contribution claims, based on the claims of the Bundle B1 and C Plaintiffs, fail as a matter of law because OPA displaces general maritime law contribution and indemnity claims for OPA-covered damages.

The Plaintiffs in Pleading Bundles B1 and C assert claims for property damage

and economic loss that are recoverable only under the Oil Pollution Act ("OPA").[6]  OPA

specifically provides for contribution and the subrogation of claims.  *See* 33 U.S.C.

§2709; 33 U.S.C. §2702(d)(1)(A) and (B); 33 U.S.C. §2715.  "OPA clearly preempts

maritime law as to recovery of cleanup expenses and the cost of compensating injured

persons. . . . [I]t, therefore, preempts the general maritime law as to recovery of cleanup

expenses and the cost of compensating third parties."  *Nat'l Shipping Co. of Saudi Arabia

v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d

1062 (4th Cir. 1997).

---

[5] The Cross-Claims do not allege that MOEX Offshore is vicariously liable as a principal of or joint venture partner with BP, and do not plead a vicarious liability theory against MOEX Offshore.  In any event, the Cross-Claims' allegations and the Operating Agreement establish that MOEX Offshore is not vicariously liable for any actions or omissions by BP, because MOEX Offshore is not alleged to have (and does not have) any right to control BP's operations.  *See, e.g.*, *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating investor who has no right to control oil and gas operations may not be held vicariously liable as joint venturer).

[6] *See* Memorandum of Law in Support of Motion of Defendants MOEX Offshore 2007 LLC and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 1414-1] ("Non-Operating Defendants' MTD Mast. B1 Compl."); Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third Party Complaint for Local Governmental Entities Pursuant to Fed. R. Civ. P. 12(b)(6) [Pleading Bundle C] [Rec. Doc. 2220-1] at 8.  The only claims for which M-I seeks indemnity or contribution that are not displaced by OPA are the personal injury claims of plaintiffs in Pleading Bundles A and B3, which, for the reasons set forth in § III.B.1, *supra*, are also legally insufficient.

M-I fails to articulate a legal theory for its claim for contribution.  To the extent that it seeks contribution under general maritime law for the B1 and C Plaintiffs' economic loss and damage claims recoverable under OPA, M-I "is restricted to the contribution scheme provided in [OPA]" and the Cross-Claim brought under general maritime law must be dismissed.  *Id.* at 1449.

**C.  Count IV for Contribution Under the General Maritime Law Fails to State a Claim for Which Relief can be Granted.**

M-I alleges that, pursuant to general maritime law, M-I is entitled to contribution from MOEX Offshore "for any and all damages that may be assessed against M-I as a result of the explosion and oil spill."  Cross-Claims ¶68.  The claim fails because M-I alleges no facts plausibly showing that MOEX Offshore, a non-operating passive investor, bears any fault for Plaintiffs' alleged personal injuries.

When a party is entitled to contribution, that entitlement is proportional to the responding party's negligence or fault. *Combo Mar., Inc.*, 615 F.3d at 602; *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *In re Liberty Seafood*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. Unit A 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . to the extent occasioned by its fault"); RESTATEMENT (SECOND) OF TORTS §886A(2) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability."). "[A] non-negligent tortfeasor is 0% at fault."  2-I BENEDICT ON ADMIRALTY §13.  It follows that a non-negligent tortfeasor cannot be liable for contribution.  *Id.*

M-I alleges only that MOEX Offshore possessed a non-operating interest in the Lease, was entitled to obtain certain information from BP, and had "a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues." Cross-Claims ¶¶60-63.  M-I's pleading does not state what that "mechanism" was, how the "mechanism" worked, whether the "mechanism" applied in the context of the situation that occurred on April 20, or whether the "mechanism" could have prevented the Plaintiffs' injuries and, if so, how.

M-I fails to allege that MOEX Offshore had a right to control any aspect of the *Deepwater Horizon*'s drilling operations, or any other instrumentality or operation allegedly giving rise to the Plaintiffs' injuries.  To the contrary, M-I specifically alleges that BP was "the primary leaseholder of the Macondo well and the sole operator of the well," was "responsible for controlling—and did control—the activities of M-I and other contractors on the Deepwater Horizon," and was "responsible for all major decisions regarding drilling and well control at the Macondo well."  Cross-Claims ¶53.

Further, the Operating Agreement, which M-I expressly cites as a basis for its allegations (*see* Cross-Claims ¶¶61-63), establishes that MOEX Offshore had no right to control any aspect of the *Deepwater Horizon*'s drilling operations, or any other activity that allegedly caused Plaintiffs' injuries.  Indeed, the Operating Agreement confirms that MOEX Offshore did not have operational control, specifically designating BP Exploration & Production Inc. as the Operator and granting to BP the exclusive right and duty to conduct all activities or operations under the Operating Agreement.  Operating Agreement Arts. 4.1, 5.1.  The Operating Agreement further stated that the Operator was

an independent contractor in performing services under the agreement, and not subject to the control or direction of the non-operating parties.  *Id.* Art. 5.1.

Limited in such a fashion, MOEX Offshore's rights under the Operating Agreement did not create any duty running from MOEX Offshore to M-I (or to the Plaintiffs).  *See Thibodeaux v. Vamos Oil & Gas Co.*, No. Civ. A. 03-1883, 2005 WL 3019773, at *1 (W.D. La. Nov. 10, 2005) (The "reservation of the right to monitor contractor safety does not give rise to operational control so as to make the principal liable for the contractor's actions") (citations omitted); *Landry v. Huthnance Drilling Co*., 889 F.2d 1469, 1471 (5th Cir. 1989) (holding under general maritime law that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (*quoting* RESTATEMENT (SECOND) OF TORTS §414 cmt. c (1965)); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991) ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control" and therefore does not lead to any liability of the principal.) (applying Louisiana law).

Tellingly, M-I does not even allege that MOEX Offshore had a right to exercise or in fact exercised operational control over any activity allegedly giving rise to Plaintiffs' injuries.  Therefore, M-I fails to state a claim for contribution.  As argued in the Motions to Dismiss for Pleading Bundles B1 and B3 filed by MOEX Offshore and

others,[7] it is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the activity.  *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550-51 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988) (holding that Louisiana law requires operational control to impose liability upon defendant in cases arising from oil drilling activities).

It is also settled law that where a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence.  *See Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99- 3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, D.J.) (holding that an independent contractor's injured employee was not owed a duty by the principal where the contractor created the hazard) (citations omitted).  Even where a principal without operational control has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede.  *See id.*; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp.2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

Thus, as a matter of law, M-I has no claim for contribution against MOEX Offshore because a non-negligent defendant is not liable for contribution.  M-I's contribution claim therefore must be dismissed.

---

[7]   MOEX Offshore expressly incorporate by reference its Motions to Dismiss for Pleading Bundles B1 [Rec. Doc. 1414] and B3 [Rec. Doc. 1416] and the Local Governmental Entity Master Complaint [Rec. Doc. 2220].

## CONCLUSION

For the foregoing reasons, M-I's Cross-Claims against MOEX Offshore must be dismissed in their entirety.

Dated:  June 20, 2011

Respectfully submitted,

s/  John F. Pritchard_____

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 20, 2011.

s/  John F. Pritchard _____
John F. Pritchard