UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179  SECTION: J |
| This Document Relates To: All Cases and No. 2:10-cv-2771 (*In re The Complaint And Petition Of Triton Asset Leasing GmbH, et al.*) ………………………………………………... | : : : : : | JUDGE BARBIER  MAGISTRATE JUDGE SHUSHAN |

## THE BP PARTIES' COUNTER-COMPLAINT AGAINST M-I L.L.C.

Counter-Plaintiffs BP Exploration & Production Inc. ("BPXP") and BP America Production Company ("BPAP") (collectively or individually, the "BP Parties") bring this action under Federal Rule of Civil Procedure 13 against M-I L.L.C., also known as M-I SWACO ("M-I").

## THE PARTIES

1.  BPXP is a Delaware corporation with its principal place of business in Houston, Texas.  The address of BPXP is 501 Westlake Park Boulevard, Houston, Texas 77079.

2.  BPAPC is a Delaware corporation with its principal place of business in Warrenville, Illinois.  The address of BPAPC is 4101 Winfield Road, Warrenville, Illinois, 60555.

3.  M-I is a Delaware corporation with its principal place of business in Houston, Texas.  The address of M-I is 5950 North Course Drive, Houston, Texas 77072.

## JURISDICTION

4.  This counter-claim arises out of and in connection with drilling operations by the *Deepwater Horizon*, a vessel.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1333.  The counter-claims presented in this counter-complaint are admiralty or maritime claims, or claims under other law if applicable, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and the BP Parties designate this case as an admiralty or maritime case as provided in that Rule.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)-(c).

## FACTS COMMON TO ALL CLAIMS

A.      **Background Of The Parties.**

7.      BP is an energy company that uses sophisticated technologies and techniques to find and extract oil and gas.  BPXP obtained a lease for Mississippi Canyon, Block 252, commonly known as the Macondo prospect.  In exploring for and extracting oil, BP must rely on various companies that are themselves expert in equipment and technologies related to drilling.  One of the companies on which BP and other energy companies rely is M-I.

8.      M-I is one of the leading providers of drilling fluids engineering for the worldwide oil and gas industry.  M-I, as the drilling fluids service provider on board the *Deepwater Horizon*, worked with the crew to assist in the drilling operations.  M-I was responsible for the drilling fluids used at the Macondo well and developed a master drilling fluids program for the well when the *Deepwater Horizon* began drilling.  M-I participated in all drilling fluids decisions and made recommendations about how to handle lost circulation events, what drilling fluids to utilize during drilling, and how to mix the drilling fluids.

9.      On February 27, 2009, BPXP and M-I entered into a Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services ("Well Services Contract").  The Well Services Contract covers a number of products and professional services, including managing displacement activities and spacer construction, which are individually and collectively in the contract by the term "WORK."  Under the contract, M-I represents that "it has the requisite skill,

2

experience and resources to carry out the WORK to the reasonable satisfaction of [BPXP] in accordance with the terms and conditions specified." Well Services Contract § 1. M-I further warranted that "it shall exercise all reasonable skill, care, and diligence in the performance of the WORK and shall carry out the WORK in accordance with the requirements of the contract and to internationally recognized good oilfield practices and standards." *Id.* at § 2 ¶ 29.1(a). Under the contract, M-I made additional representations and promises, including, among others, to "manage[] all completion activities, including well-bore displacement … [and] spacers and pill construction," *id.* at § 3 Appendix 5 ¶ 9.6.15, and that "all tools, materials, and equipment used for the execution of the WORK shall be fit for purpose and maintained in accordance with manufacturers' recommendations," *id.* at § 3 ¶ 4.8.

> **B.    M-I's Role In The Procedures And Spacer Used In The Displacement Of The Macondo Well.**

10.    Prior to the *Deepwater Horizon* leaving the Macondo well, the synthetic oil-based mud ("SOBM") in the well was to be displaced with seawater. Displacement is the act of removing one liquid from a wellbore and replacing it with another. This can be accomplished by pumping a spacer fluid that is benign to both the first and second fluid, followed by the new fluid, down the wellbore. The spacer acts as a buffer between the SOBM already in the wellbore and the seawater being used for displacement. While the spacer and seawater are pumped into the top of the wellbore, the SOBM is forced out of the well.

11.    Among other activities, M-I drafted and circulated the displacement procedures for the Macondo well, which instructed rig personnel on how to implement the displacement. M-I also recommended and designed the spacer used during displacement of the Macondo well, and was responsible for testing and analyzing that spacer.

3

### C. The Claims, Lawsuits, And Expenses Asserted Against BP As Result Of The *Deepwater Horizon* Incident.

12. Oil and gas flowed from the Macondo well into the Gulf of Mexico from the latter part of April 2010 until July 15, 2010. The scale of the response program was massive and unprecedented. Under the dictates of and as required by the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA"), BPXP has committed to paying all legitimate claims for damages pursuant to the requirements and terms of OPA, while reserving its right to seek reimbursement, contribution, and indemnification from M-I and other responsible parties. BP faces hundreds of lawsuits and thousands of claims arising out of the *Deepwater Horizon* incident.

13. The total amounts that will ultimately be paid by BP under OPA or otherwise in relation to the incident are subject to significant uncertainty. The ultimate exposure and cost to BP will depend on many factors, including the amount of claims that become payable by BP, the amount of fines ultimately levied against BP (including any determination of negligence by BP), the outcome of lawsuits and claims, and any costs arising from any longer-term environmental consequences of the oil spill.

14. As of the end of 2010, BP's incurred costs relating to the incident were $17.7 billion. BP's group income statement for 2010 reflects a pre-tax charge of $40.9 billion in relation to the Gulf of Mexico oil spill.

### D. Pending Claims Against M-I.

15. Certain lawsuits and claims related to the *Deepwater Horizon* incident pending in federal court have been consolidated in MDL No. 2179. Such claims and lawsuits include, among others: (a) the First Amended B1 Master Claim in Limitation [No. 10-2771] (Rule 9(h)) and First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"],

4

Dkt No. 1128; (b) complaints and claims designated under Pleading Bundle A pursuant to PTO No. 11 [CMO No. 1]; (c) cross-claims and third-party claims filed by co-defendants in MDL No. 2179, including but not limited to Petitioners' Rule 14(c) Third-Party Complaint, Dkt No. 1320; Transocean's Rule 13 Cross-Claims/Counter-Claims, Dkt. No. 2068; the Claim, Answer and Cross-Claims of Third-Party Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP, Dkt. No. 338 in Case No. 2:10-cv-02771; and the First Amended Cross-Claims of Defendant Halliburton Energy Services Inc., Dkt. No. 445 in Case No. 2:10-cv-02771.  The complaints, claims, cross-claims, third-party claims and all other lawsuits pending in MDL No. 2179 are referred to as the "Complaints."  These Complaints include allegations against M-I.

## THE BP PARTIES' CLAIMS AGAINST M-I

### COUNT I: CONTRIBUTION

16. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

17. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

18. The Complaints allege that M-I is at fault for the *Deepwater Horizon* incident because, among other things:

    (a)    M-I failed to provide, control, and monitor the mud and spacer solutions used on the *Deepwater Horizon* in a reasonably safe manner;

    (b)    M-I breached its duties of ordinary and reasonable care in connection with the drilling operations;

    (c)    M-I recommended and used an untested, abnormally large volume of mixed spacer solutions;

    (d)    M-I failed to assess or communicate that fluid and pressure levels indicated hydrocarbons were coming up the well; and

    (e)    M-I failed to provide services in a workmanlike manner.

19. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, then the *Deepwater Horizon* incident is, in whole or in part, due to the fault, breach of contract, negligence, and other violations of law and contract by M-I.

20. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, the BP Parties are entitled to contribution from M-I for all or a part of the damages resulting from the *Deepwater Horizon* incident, resulting oil spill, and related damages.

### COUNT II: CONTRIBUTION UNDER THE OIL POLLUTION ACT OF 1990

21. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

22. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

23. OPA states that "A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law." 33 U.S.C. § 2709.

24. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, M-I is liable or potentially liable "under [OPA] or another law" for the *Deepwater Horizon* incident, resulting oil spill and other damages for the reasons explained in the preceding allegations, including paragraph 19.

25. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, the BP Parties are entitled to contribution under OPA from M-I for all and/or a part of the damages resulting from the *Deepwater Horizon* incident, resulting oil spill, and related damages.

## COUNT III: SUBROGATION

26. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

27. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

28. BPXP has a statutory duty to pay, has paid, and will continue to pay damages to resolve claims brought against BP resulting from the casualty and oil spill.

29. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, M-I is wholly and/or partly at fault for the *Deepwater Horizon* incident, resulting oil spill, and related damages for the reasons explained in the preceding allegations, including paragraph 19.

30. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, the BP Parties are entitled to recover from M-I reimbursement for all and/or a part of the damages related to the *Deepwater Horizon* incident and resulting oil spill that the BP Parties have paid or will pay.

## CLAIM IV: SUBROGATION UNDER OPA

31. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

32. OPA states that "Any person … who pays compensation pursuant to this Act [OPA] to any claimant for removal costs or damages shall be subrogated to all rights, claims, and cause of action that the claimant has under any other law." 33 U.S.C. § 2715(a).

33. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

34. BPXP has a statutory duty to pay, has paid, and will continue to pay damages to resolve claims brought against BP resulting from the casualty and oil spill.

35. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, M-I is wholly and/or partly at fault for the *Deepwater Horizon* incident, resulting oil spill, and related damages for the reasons explained in the preceding allegations, including paragraph 19.

36. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, the BP Parties are entitled to recover from M-I reimbursement for all and/or a part of the damages related to the *Deepwater Horizon* incident and resulting oil spill that the BP Parties have paid or will pay.

**CLAIM V: DECLARATORY JUDGMENT REGARDING M-I'S RESPONSIBILITY FOR THE *DEEPWATER HORIZON* INCIDENT AND OIL SPILL**

37. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

38. To the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, M-I is wholly and/or partly at fault for the *Deepwater Horizon* incident and resulting damages for the reasons explained in the preceding allegations.

39. The BP Parties have paid, and will continue to pay, various costs related to the casualty and oil spill.

40. M-I has not reimbursed the BP Parties for damages, costs, and expenses related to the blowout of the Macondo well, the resulting explosion and fire onboard the *Deepwater Horizon*, the effort to regain control of the Macondo well, the oil spill that ensued before control

of the Macondo well could be regained, and claims related to the *Deepwater Horizon* incident and oil spill.

41. An actual and justiciable controversy has arisen and now exists between the BP Parties and M-I as to the parties' duties and obligations. As a result, to the extent that the evidence establishes the Complaints' allegations against M-I, including those set forth in paragraph 18, the BP Parties seek a declaratory judgment that M-I is wholly and/or partly responsible for the *Deepwater Horizon* incident, resulting oil spill, and related damages, costs and expenses; determining M-I's proportionate responsibility for the *Deepwater Horizon* incident, resulting oil spill, and related damages; and requiring M-I to pay its proportionate share of all damages, costs and expenses related to the *Deepwater Horizon* incident and resulting oil spill.

## **PRAYER FOR RELIEF**

WHEREFORE, the BP Parties respectfully ask that this Court:

A. Enter judgment in the BP Parties' favor against M-I.

B. Award the BP Parties, in proportion to M-I's fault, compensatory and economic damages for costs and expenses incurred by the BP Parties to clean up and remediate the oil spill, the amount of claims paid by the BP Parties under OPA, the amount of any judgments or settlements that the BP Parties incur or pay, the amount of any OPA financial liability that the BP Parties are liable for, the lost profits from and/or diminution in value of the Macondo prospect, and all other costs and damages incurred by the BP Parties related to the *Deepwater Horizon* incident and resulting oil spill, plus interest.

C. Declare that M-I caused or contributed to the *Deepwater Horizon* incident and subsequent oil spill and is responsible in whole or in part for all damages incurred by the BP Parties related to the *Deepwater Horizon* incident and resulting oil spill.

9

D. Declare that the BP Parties are not liable in contribution, indemnification, or otherwise to M-I for damages, costs, or other expenses arising from the *Deepwater Horizon* incident and resulting oil spill under any applicable law or contract.

E. Award the reasonable costs and attorneys' fees incurred by the BP Parties in prosecuting this action.

F. Award such other relief as the Court may deem appropriate and just.

Dated: June 20, 2011

Respectfully submitted,

/s/ Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

                /s/ Don K. Haycraft