UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Cases and No. 2:10-cv-2771 (*In re The Complaint And Petition Of Triton Asset Leasing GmbH, et al.*)<br>………………………………………………... | : : : : : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

## THE BP PARTIES' COUNTER-COMPLAINT AGAINST DRIL-QUIP, INC.[1]

Counter-Plaintiffs BP Exploration & Production Inc. ("BPXP") and BP America Production Company ("BPAP") (collectively or individually, the "BP Parties") bring this action under Federal Rule of Civil Procedure 13 against Dril-Quip, Inc. ("Dril-Quip").

## THE PARTIES

1. BPXP is a Delaware corporation with its principal place of business in Houston, Texas. The address of BPXP is 501 Westlake Park Boulevard, Houston, Texas 77079.

2. BPAPC is a Delaware corporation with its principal place of business in Warrenville, Illinois. The address of BPAPC is 4101 Winfield Road, Warrenville, Illinois, 60555.

3. Dril-Quip is a Delaware corporation with its principal place of business in Houston, Texas. The address of Dril-Quip is 13550 Hempstead Highway, Houston, Texas 77040.

---

[1] The BP Parties reserve all rights to mediate and/or arbitrate any disputes with Dril-Quip under the Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads between BPAP and Dril-Quip with an effective date of July 1, 2003. The BP Parties note that they have not previously filed any cross-claims or other complaints against Dril-Quip and are filing this counter-complaint under Federal Rule of Civil Procedure 13 as defendants to Dril-Quip's cross-claim.

## JURISDICTION

4. This counter-claim arises out of and in connection with drilling operations by the *Deepwater Horizon*, a vessel.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1333. The counter-claims presented in this counter-complaint are admiralty or maritime claims, or claims under other law if applicable, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and the BP Parties designate this case as an admiralty or maritime case as provided in that Rule.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)-(c).

## FACTS COMMON TO ALL CLAIMS

**A.     Background Of The Parties.**

7. BP is an energy company that uses sophisticated technologies and techniques to find and extract oil and gas. BPXP obtained a lease for Mississippi Canyon, Block 252, commonly known as the Macondo prospect. In exploring for and extracting oil, BP must rely on various companies that are themselves expert in equipment and technologies related to drilling. One of the companies on which BP and other energy companies rely is Dril-Quip.

8. Dril-Quip manufactures offshore drilling and production equipment for use in deepwater and other applications. It designs and manufactures subsea, surface and offshore rig equipment for use by oil and gas companies in offshore areas throughout the world. Dril-Quip provided wellhead systems used for the Macondo well. Dril-Quip manufactured and built the wellhead that connects to the blow-out preventer at the seafloor and the lockdown seal assembly.

9. BPAP and Dril-Quip entered into a Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads with an effective date of July 1, 2003 ("Well Services Contract"). Under the Well Services Contract, "Work" refers to all system design, assembly manufacturing/fabrication, and other services to be performed, and Items of Work to be

procured, manufactured, assembled, completed, tested and warranted by [Dril-Quip] pursuant to and in accordance with this Contract." *Id.* at § 2.13. "Items" refer to all tangible property including materials, equipment, supplies or machinery provided under the terms hereof and intended for incorporation into the Work. *Id.* at § 2.10. The contract provides that the "Work shall be performed in accordance with this Contract, with all due skill, care and diligence and in accordance with good and sound construction practices and to the satisfaction of [BPAP] and [BPAP's] representative." *Id.* at § 3.03. Dril-Quip was responsible for ensuring that all work was in accordance with any applicable specifications and standards. *Id.* at §§ 3.04, 3.05. Dril-Quip also agreed "to accept the duty of and bear the responsibility for inspecting … all other things in any way associated with or utilized in the Work, at the commencement of the Work and as often thereafter as may be necessary to discover any and all defects, potential sources of injury or dangerous or defective conditions and operations." *Id.* at § 6.04.

      **B.    The Claims, Lawsuits, And Expenses Asserted Against BP As Result Of The *Deepwater Horizon* Incident.**

      10.    Oil and gas flowed from the Macondo well into the Gulf of Mexico from the latter part of April 2010 until July 15, 2010. The scale of the response program was massive and unprecedented. Under the dictates of and as required by the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA"), BPXP has committed to paying all legitimate claims for damages pursuant to the requirements and terms of OPA, while reserving its right to seek reimbursement, contribution, and indemnification from Dril-Quip and other responsible parties. BP faces hundreds of lawsuits and thousands of claims arising out of the *Deepwater Horizon* incident.

      11.    The total amounts that will ultimately be paid by BP under OPA or otherwise in relation to the incident are subject to significant uncertainty. The ultimate exposure and cost to BP will depend on many factors, including the amount of claims that become payable by BP, the

3

amount of fines ultimately levied against BP (including any determination of negligence by BP), the outcome of lawsuits and claims, and any costs arising from any longer-term environmental consequences of the oil spill.

12. As of the end of 2010, BP's incurred costs relating to the incident were $17.7 billion. BP's group income statement for 2010 reflects a pre-tax charge of $40.9 billion in relation to the Gulf of Mexico oil spill.

### C. Pending Claims Against Dril-Quip.

13. Certain lawsuits and claims related to the *Deepwater Horizon* incident pending in federal court have been consolidated in MDL No. 2179. Such claims and lawsuits include, among others: (a) the First Amended B1 Master Claim in Limitation [No. 10-2771] (Rule 9(h)) and First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"], Dkt No. 1128; (b) complaints and claims designated under Pleading Bundle A pursuant to PTO No. 11 [CMO No. 1]; (c) cross-claims and third-party claims filed by co-defendants in MDL No. 2179, including but not limited to Petitioners' Rule 14(c) Third-Party Complaint, Dkt No. 1320; Transocean's Rule 13 Cross-Claims/Counter-Claims, Dkt. No. 2068; the Claim, Answer and Cross-Claims of Third-Party Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP, Dkt. No. 338 in Case No. 2:10-cv-02771; and the First Amended Cross-Claims of Defendant Halliburton Energy Services Inc., Dkt. No. 445 in Case No. 2:10-cv-02771. The complaints, claims, cross-claims, third-party claims and all other lawsuits pending in MDL No. 2179 are referred to as the "Complaints." Certain of these Complaints include allegations against Dril-Quip.

## **THE BP PARTIES' CLAIMS AGAINST DRIL-QUIP**

### **COUNT I: CONTRIBUTION**

14. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

15. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

16. Certain Complaints allege that Dril-Quip is at fault for the *Deepwater Horizon* incident because, among other things:

   (a) Dril-Quip's wellhead systems were defectively designed;

   (b) Dril-Quip's wellhead systems were defectively manufactured;

   (c) Dril-Quip's wellhead systems were unreasonably dangerous as supplied;

   (d) Dril-Quip failed to exercise reasonable care while participating in the drilling operations related to the Macondo well; and

   (e) Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill.

17. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, then the *Deepwater Horizon* incident is, in whole or in part, due to the fault, breach of contract, negligence, products liability, and other violations of law and contract by Dril-Quip.

18. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, then the BP Parties are entitled to contribution from Dril-Quip for all or a part of the damages resulting from the *Deepwater Horizon* incident, resulting oil spill, and related damages.

Case 2:10-md-02179-CJB-DPC   Document 2918   Filed 06/20/11   Page 6 of 11

## COUNT II: CONTRIBUTION UNDER THE OIL POLLUTION ACT OF 1990

19. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

20. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

21. OPA states that "A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law." 33 U.S.C. § 2709.

22. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, Dril-Quip is liable or potentially liable "under [OPA] or another law" for the *Deepwater Horizon* incident, resulting oil spill and other damages for the reasons explained in the preceding allegations, including paragraph 17.

23. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, then the BP Parties are entitled to contribution under OPA from Dril-Quip for all and/or a part of the damages resulting from the *Deepwater Horizon* incident, resulting oil spill, and related damages.

## COUNT III: SUBROGATION

24. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

25. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

26. BPXP has a statutory duty to pay, has paid, and will continue to pay damages to resolve claims brought against BP resulting from the casualty and oil spill.

27. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, Dril-Quip is wholly and/or partly at fault for

the *Deepwater Horizon* incident, resulting oil spill, and related damages for the reasons explained in the preceding allegations, including paragraph 17.

28. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, then the BP Parties are entitled to recover from Dril-Quip reimbursement for all and/or a part of the damages related to the *Deepwater Horizon* incident and resulting oil spill that the BP Parties have paid or will pay.

### CLAIM IV: SUBROGATION UNDER OPA

29. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

30. OPA states that "Any person … who pays compensation pursuant to this Act [OPA] to any claimant for removal costs or damages shall be subrogated to all rights, claims, and cause of action that the claimant has under any other law." 33 U.S.C. § 2715(a).

31. The *Deepwater Horizon* incident has caused and continues to cause harm, loss, injuries, and damages to the BP Parties.

32. BPXP has a statutory duty to pay, has paid, and will continue to pay damages to resolve claims brought against BP resulting from the casualty and oil spill.

33. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, Dril-Quip is wholly and/or partly at fault for the *Deepwater Horizon* incident, resulting oil spill, and related damages for the reasons explained in the preceding allegations, including paragraph 17.

34. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, the BP Parties are entitled to recover from Dril-Quip reimbursement for all and/or a part of the damages related to the *Deepwater Horizon* incident and resulting oil spill that the BP Parties have paid or will pay.

## CLAIM V: DECLARATORY JUDGMENT REGARDING DRIL-QUIP'S RESPONSIBILITY FOR THE *DEEPWATER HORIZON* INCIDENT AND OIL SPILL

35. The BP Parties reallege and incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated here.

36. To the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, Dril-Quip is wholly and/or partly at fault for the *Deepwater Horizon* incident and resulting damages for the reasons explained in the preceding allegations, including paragraph 17.

37. The BP Parties have paid, and will continue to pay, various costs related to the casualty and oil spill.

38. Dril-Quip has not reimbursed the BP Parties for damages, costs, and expenses related to the blowout of the Macondo well, the resulting explosion and fire onboard the Deepwater Horizon, the effort to regain control of the Macondo well, the oil spill that ensued before control of the Macondo well could be regained, and claims related to the *Deepwater Horizon* incident and oil spill.

39. An actual and justiciable controversy has arisen and now exists between the BP Parties and Dril-Quip as to the parties' duties and obligations. As a result, to the extent that the evidence establishes the Complaints' allegations against Dril-Quip, including those set forth in paragraph 16, the BP Parties seek a declaratory judgment that Dril-Quip is wholly and/or partly responsible for the *Deepwater Horizon* incident, resulting oil spill, and related damages, costs and expenses; determining Dril-Quip's proportionate responsibility for the *Deepwater Horizon* incident, resulting oil spill, and related damages; and requiring Dril-Quip to pay its proportionate share of all damages, costs and expenses related to the Deepwater Horizon incident and resulting oil spill.

## **PRAYER FOR RELIEF**

WHEREFORE, the BP Parties respectfully ask that this Court:

A. Enter judgment in the BP Parties' favor against Dril-Quip.

B. Award the BP Parties, in proportion to Dril-Quip's fault, compensatory and economic damages for costs and expenses incurred by the BP Parties to clean up and remediate the oil spill, the amount of claims paid by the BP Parties under OPA, the amount of any judgments or settlements that the BP Parties incur or pay, the amount of any OPA financial liability that the BP Parties are liable for, the lost profits from and/or diminution in value of the Macondo prospect, and all other costs and damages incurred by the BP Parties related to the *Deepwater Horizon* incident and resulting oil spill, plus interest.

C. Declare that Dril-Quip caused or contributed to the *Deepwater Horizon* incident and subsequent oil spill and is responsible in whole or in part for all damages incurred by the BP Parties related to the *Deepwater Horizon* incident and resulting oil spill.

D. Declare that the BP Parties are not liable in contribution, indemnification, or otherwise to Dril-Quip for damages, costs, or other expenses arising from the *Deepwater Horizon* incident and resulting oil spill under any applicable law or contract.

E. Award the reasonable costs and attorneys' fees incurred by the BP Parties in prosecuting this action.

F. Award such other relief as the Court may deem appropriate and just.

Dated: June 20, 2011                                  Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985
Facsimile: (202) 662-6291

Attorneys for BP Exploration & Production
Inc. and BP America Production Company

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

      /s/ Don K. Haycraft_____