# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 2:11-cv-04536<br>……………………………………………... | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

## THE BP PARTIES' ANSWER TO TRANSOCEAN'S RULE 13 CROSS-CLAIMS/COUNTER-CLAIMS[1] AND RULE 14 THIRD-PARTY COMPLAINT

BP Exploration & Production Inc. ("BPXP"), BP America Production Company ("BPAP"), and BP p.l.c. ("collectively, the BP Parties"), by their undersigned Counsel, and, pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and

---

[1] Transocean's Rule 13 Cross-Claim/Counter-Claim and Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company. The Drilling Contract's "ARBITRATION" provision provides:

> 35.4 <u>ARBITRATION</u>
>
> Any controversy or claim arising out of or related to this CONTRACT, or the breach thereof, which cannot be resolved satisfactorily between the parties, shall be settled by arbitration in Houston, Texas, in accordance with the rules of the American Arbitration Association Commercial Disputes. If no agreement can be reached by the parties on discovery disputes, then the Federal Rules of Civil Procedure shall govern and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

Accordingly, Transocean reserves for arbitration in Houston, Texas any and all claims it may have against BP Exploration & Production, Inc., BP America Production Company, and BP p.l.c. under the Drilling Contract's "ARBITRATION" provision.

<u>ANSWER</u>:

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract. The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

Transocean Deepwater Inc.'s (collectively, "Transocean") Rule 13 Cross-Claims/Counter-Claims and Rule 14 Third-Party Complaint as follows:

COME NOW Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (hereinafter collectively referred to as "Transocean") and, pursuant to Rules 13(a), (b) and (g)[2] and Rule 14 file this Transocean's Cross-Claims/Counter-Claims and Third-Party Complaint against BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a.k.a MOECO), Weatherford International, Inc., Weatherford U.S. L.P., and Dril-Quip, Inc., and, in support thereof, would respectfully show as follows:

## THE PARTIES

## TRANSOCEAN

### 1.

Cross-Plaintiff and Third-Party Plaintiff Triton Asset Leasing GmbH is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the Swiss Confederation with its principal office in Zug, Switzerland.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

---

[2]    To the extent that a Cross-Claim should be designated a Counter-Claim under Rule 13, it is filed as both a compulsory Counter-Claim under Rule 13(a) and/or a permissive Counter-Claim under Rule 13(b). To the extent that a Cross-Claim should be designated a Counter-Claim, the references to "Cross-Claim" shall mean "Counter-Claim", the references to "Cross-Plaintiff" shall mean "Counter-Plaintiff", and the references to "Cross-Defendant(s)" shall mean "Counter-Defendant(s)". Fed. R. Civ. P. 8(c).

**2.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Holdings LLC is, and was at all material time hereinafter mentioned, a limited liability company organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**3.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Offshore Deepwater Drilling Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**4.**

Cross-Plaintiff and Third-Party Plaintiff Transocean Deepwater Inc. is, and was at all material time hereinafter mentioned, a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**5.**

Hereinafter, Cross-Plaintiffs and Third-Party Plaintiffs Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc. are referred to collectively, where appropriate, as "Transocean" or the "Transocean Defendants."

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**6.**

One or more of the Transocean Defendants was at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice, and/or Operators of the MODU *Deepwater Horizon*. A blow-out, explosion, fire, and sinking of the MODU *Deepwater Horizon* occurred on or following April 20, 2010 (and is hereinafter referred to as the "Incident of April 20, 2010"). Following the Incident, there was a resulting Oil Spill (hereinafter referred to as the "BP Oil Spill"). Transocean has filed a Petition for Exoneration from or Limitation of Liability in the United States District Court for the Southern District of Texas, C.A. No. 4:10-cv-l721 which was subsequently transferred to the Eastern District of Louisiana (after transfer, 10-2771), seeking exoneration from, or limitation of liability, as to all Claims arising out of the Incident of April 20, 2010, the BP Oil Spill and the voyage of the *Deepwater Horizon* which commenced on January 30, 2010 and ended on or about April 20, 2010 (hereinafter referred to as the "Voyage").

**ANSWER:**

The BP Parties admit that one or more of the Transocean entities was at all material times the Owner and/or Operator of the MODU *Deepwater Horizon* for purposes of the Limitation of Liability Act, 46 U.S.C. §§ 30501, et seq.; that Transocean filed a Petition as described; that the voyage of the of the *Deepwater Horizon* commenced on January 30, 2010 and ended on April 22, 2010 when the rig sank; and that on April 20, 2010 there was a loss of control of the Macondo Well and there occurred one or more explosions and/or fires aboard the *Deepwater Horizon*. The BP Parties deny the remaining allegations of this paragraph.

**THE CROSS-DEFENDANTS AND THIRD-PARTY DEFENDANTS**

**7.**

Cross-Defendant BP Exploration & Production Inc. ("BP Exploration") is a Delaware Corporation with its principal place of business in Warrenville, Illinois. BP Exploration was a lease-holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS"), now re-organized as the Bureau of Ocean Energy Management Regulation & Enforcement ("BOEMRE"), allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon, Blk. 252, the location known as "Macondo," where the Macondo well was located and from which the Incident of April 20, 2010 originated. This Court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. BP Exploration has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that BPXP is a Delaware Corporation; that BPXP was the holder of a lease granted by the MMS/BOEMRE pursuant to which it was allowed to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, in which the Macondo Well was located and from which the Oil Spill originated; and that BPXP is subject to this Court's jurisdiction.  The BP Parties deny the remaining allegations of this paragraph.

### 8.

Third-Party Defendant BP America Production Company ("BP America") is a Delaware Corporation with its principal place of business in Houston, Texas. BP America was a party to the Drilling Contract with Petitioner Transocean Holdings LLC for the drilling of the Macondo Well by the MODU *Deepwater Horizon*. This Court  has personal jurisdiction over BP America because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. BP America Production Company has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that BPAP is a Delaware Corporation; and that it is subject to this Court's jurisdiction.  The BP Parties deny the remaining allegations of this paragraph.

### 9.

Third-Party Defendant BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the world-wide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division in which BP Exploration and BP America fall, through vertical business arrangements. BP Exploration and BP America are wholly-owned subsidiaries of BP p.1.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. BP p.l.c. does business in Louisiana, has had continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court also has specific jurisdiction over BP p.l.c. pursuant to Louisiana's long-ann specific jurisdiction provision, *see* LA. REV. STAT. § 13:3201 (A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Transocean's

Third-Party Claim arises out of conduct committed by BP p.l.c. directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi offense committed through an act or omission outside of Louisiana, and BP p.l.c. regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. BP p.l.c. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that BP p.l.c. is a British Public Limited Company organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England, and that BP p.l.c. is not contesting the jurisdiction of this Court in this case.  The BP Parties deny the remaining allegations of this paragraph.

**10.**

Cross-Defendants and Third-Party Defendants BP Exploration, BP America and BP p.l.c. are generally referred to herein collectively as "BP". As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing its contractors and working on various aspects of the well and drilling operations.

**ANSWER:**

The BP Parties admit that Transocean refers to the BP Parties and BP p.l.c. collectively as "BP," but they deny such references are accurate or appropriate.   The BP Parties admit that BPXP had certain responsibilities with regard to assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing its contractors and working on various aspects of the well and drilling operations.  The BP Parties deny the remaining allegations of this paragraph.

**11.**

Third-Party Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware Corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon,* as well

as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo Well at and before the time of the Macondo Well blow-out. Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Through its division Sperry Drilling Services (f/k/a Sperry Sun Drilling Services), Halliburton Energy Services, Inc. was responsible for mud logging personnel and equipment on the *Deepwater Horizon,* including down-hole drilling tools. Halliburton and Sperry Drilling Services' mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations. This Court has personal jurisdiction over Halliburton because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Halliburton Energy Services, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Halliburton and/or its affiliates provided products and services related to cementing operations at the Macondo Well. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## 12.

Third-Party Defendant M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. M-I was, at all relevant time, registered to do, and was doing, business in Louisiana and within this district. M-I, also known as M-I Swaco, supplies drilling and completion fluids and additives to oil and gas companies in Louisiana and elsewhere, providing pressure control, vessel instrumentation, and drilling waste management products and services. On the *Deepwater Horizon,* M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out. This Court has personal jurisdiction over M-I because M-I is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. M-I, LLC has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that M-I and/or its affiliates provided products and services related to drilling fluids used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### 13.

Third-Party Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied and/or installed the *Deepwater Horizon's* sub-sea emergency well-closure device known as a blowout-preventer ("BOP") which was installed at the Macondo Wellhead. This Court has personal jurisdiction over Cameron, because Cameron is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cameron International Corporation Cooper-Cameron Corporation has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Cameron International Corporation manufactured, designed, supplied, and/or installed the *Deepwater Horizon's* blowout preventer.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### 14.

Cross-Defendant Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is registered to do and does business in the State of Louisiana. Anadarko E&P is an oil and gas exploration production company. On various dates, BP and Anadarko E&P became co-lessees under the terms of a lease executed on or about May 8, 2008, by BP, as Lessee, and the United States, by and through the MMS, as Lessor, for the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, Serial No. OCS-G 32306" (hereinafter the "Lease"), pertaining to "All of Block 252, Mississippi Canyon OSC Official Protraction Diagram, N.H. 16-10," which Lease became effective on June 1,2008. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in

the Lease. This Court has personal jurisdiction over Anadarko E&P because Anadarko E&P is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Anadarko Exploration & Production Company LP has been made a party to these proceedings pursuant to the filing of Transocean's Rule l4(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that on or about May 8, 2008, BPXP executed the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act" with "Serial No. OCS-G 32306." The BP Parties admit that at certain times prior to April 20, 2010, BPXP and Anadarko E&P were co-lessees under the Lease but deny that Anadarko E&P held a 22.5% interest in the Lease as of April 20, 2010. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## 15.

Cross-Defendant Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko is registered to do and does business in the State of Louisiana. Anadarko is an oil and gas exploration and production company. On various dates, BP and Anadarko became co-Lessees under the terms of the Lease. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko held a 2.5% interest in the Lease. This Court has personal jurisdiction over Anadarko because Anadarko is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Anadarko Petroleum Corporation Co. has been made a party to these proceedings pursuant to the filing of Transocean's Rule l4(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that as a result of various agreements, BPXP and Anadarko were co-lessees under the Lease but deny that Anadarko held a 2.5% interest in the Lease as of April 20, 2010. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.

Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. On various dates, BP and MOEX became co-Lessees under the terms of the Lease. As of April 20, 2010 and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease. This Court has personal jurisdiction over MOEX Offshore because MOEX Offshore is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. MOEX Offshore 2007 LLC has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

### ANSWER:

The BP Parties admit that as a result of various agreements, BPXP and MOEX Offshore were co-lessees under the Lease and that MOEX Offshore held a 10% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

17.

Third-Party Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Art. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. MOEX USA does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's long-arm specific jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Third-Party Claim arises out of conduct committed by MOEX USA directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOEX USA regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. MOEX USA Corporation has been made a party to these proceedings pursuant to the filing of Transocean's Rule l4(c) Third-Party Complaint.

10

**ANSWER:**

The BP Parties admit that MOEX USA is an affiliate of MOEX Offshore. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**18.**

Third-Party Defendant Mitsui Oil Exploration Company, Ltd. ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan. Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore and/or MOEX USA Corporation, which holds a 10% stake in the Macondo prospect lease. MOECO is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to Louisiana's long-arm general jurisdiction provisions, *see* LA. REV. STAT. § 13:3201(B) and LA. CODE CIV. PROC. Alt. 6, in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. MOECO does business in Louisiana, and has continuous and systematic contacts with Louisiana (and the U.S. more generally). This Court has specific jurisdiction over MOECO pursuant to Louisiana's specific jurisdiction provision, *see* LA. REV. STAT. § l3:3201(A), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. The Third-Party Claim arises out of conduct committed by MOECO directly or indirectly, by its agents, that caused injury or damage in Louisiana by an offense or quasi-offense committed through an act or omission outside of Louisiana, and MOECO regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. Mitsui Oil Exploration Company, Ltd. has been made a party to these proceedings pursuant to the filing of Transocean's Rule l4(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that MOECO is an affiliate of MOEX and MOEX Offshore. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**19.**

Third-Party Defendant Weatherford U.S. L.P. ("Weatherford") is a Louisiana limited partnership but maintains its principal place of business in Houston, Texas, and at all pertinent time was registered to do, and was doing business, in Louisiana and within this District. Weatherford designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore. This Court has

personal jurisdiction over Weatherford because Weatherford is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Weatherford U.S. L.P. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Weatherford and/or its affiliates provided products and services related to the casing used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**20.**

Third-Party Defendant Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas. Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components such as the float collar, shoe, and centralizers and provided the personnel and equipment for running the casing and casing components into the well bore. This Court has personal jurisdiction over Weatherford International because Weatherford International is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Weatherford International, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Weatherford International and/or its affiliates provided products and services related to the casing used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**21.**

Third-Party Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas. Dril-Quip, Inc. was involved in providing wellhead systems to the *Deepwater Horizon,* including the Macondo Well that suffered the Incident of April 20, 2010. Dril-Quip manufactured and built the wellhead that connects to the blow-out preventer at the seafloor and the lockdown seal assembly. This Court has personal jurisdiction over Dril-Quip, Inc., because Dril-Quip, Inc. is registered to do business

in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Dril-Quip, Inc. has been made a party to these proceedings pursuant to the filing of Transocean's Rule 14(c) Third-Party Complaint.

**ANSWER:**

The BP Parties admit that Dril-Quip provided wellhead products and services to the *Deepwater Horizon*.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### 22.

Cross-Defendants and Third-Party Defendants BP Exploration, BP America, BP p.l.c., Halliburton, M-I, Cameron, Anadarko E & P, Anadarko, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International, and Dril-Quip, are collectively referred to as the "Cross-Defendants and Third-Party Defendants"

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### JURISDICTION AND VENUE

### 23.

The Court has exclusive and original subject matter jurisdiction over Transocean's Rule 13 Cross-Claims/Counter-Claims and Transocean's Rule 14 Third-Party Claims pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

### 24.

Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

## FACTUAL ALLEGATIONS

### 25.

At all time material hereto, the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001. It was contracted to BP America Production Company through 2013 pursuant to the December 9, 1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co and the amendments thereto. BP used the *Deepwater Horizon* to drill exploratory wells at the Macondo prospect site in Mississippi Canyon Block 252, a location on the Outer Continental Shelf off the coast of Louisiana.

**ANSWER:**

The BP Parties admit that the *Deepwater Horizon* was an ultra-deepwater dynamic positioned semi-submersible vessel built in 2001, that BPAP had contracted for Transocean to use the *Deepwater Horizon* to drill wells, and that Transocean used the *Deepwater Horizon* at the Macondo prospect.  The BP Parties deny the remaining allegations of this paragraph.

### 26.

On April 20, 2010, a blow-out from BP's Macondo well occurred, resulting in explosion(s) and a fire on the *Deepwater Horizon*. The fire burned for two days, and the vessel began to list progressively until it finally sank on April 22, 2010.

**ANSWER:**

The BP Parties admit that on April 20, 2010, there were one or more fires and/or explosions aboard the *Deepwater Horizon* which caused the vessel to sink on April 22, 2010. The BP Parties deny the remaining allegations of this paragraph.

### 27.

Both prior to and following the sinking of the *Deepwater Horizon* on April 22, 2010, oil flowed from BP's Macondo Well, and continued to flow until approximately July 15, 2010, when BP finally capped the Macondo Well.

**ANSWER:**

The BP Parties admit that following the sinking of the *Deepwater Horizon* oil flowed from the Macondo Well until the well was capped on July 15, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### 28.

After the Incident of April 20, 2010, BP began implementing a Response Plan including relief and recovery efforts to prevent oil from escaping from the Macondo Well, to manually contain the oil, and to disperse oil in the water using chemical dispersants.

**ANSWER:**

The BP Parties admit that under the direction of the Unified Command established to respond to the oil spill, BP participated in implementing a Response Plan.  The BP Parties deny the remaining allegations of this paragraph.

### 29.

As a direct result of the Incident of April 20, 2010, the BP Oil Spill, and BP's Response Plan, including BP's relief and recovery efforts, the Plaintiff, the United States of America, and Cross-Claimant BP have filed or will file Claims and/or Complaints against Transocean. Transocean's Cross-Claims/Counter-Claims and Third-Party Claims arise out of the transaction or the occurrence that is the subject matter of these Claims and Complaints against Transocean. Furthermore, the Cross-Defendants and Third-Party Defendants are or may be liable to Transocean for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences made the basis of these Claims and Complaints.

**ANSWER:**

The BP Parties admit that claims have been filed or will be filed versus Transocean, and Transocean's Cross-Claims/Counter-Claims arise out of the subject matter of these complaints. The BP Parties further admit that Transocean seeks remedies.  The BP Parties deny that they are

liable to Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other defendants.

30.

Transocean's Rule 13 Cross-Claims/Counter-Claims and Rule 14 Third-Party Claims asserted herein apply to all Claims and Complaints filed against Transocean in Case No. 2:10-CV-04536-CJB-SS as a result of the Incident of April 20, 2010 and/or the BP Oil Spill.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

31.

The Bundle A Claimants are various individuals who have or will file Claims, Petitions and/or Complaints for personal injury and/or death as a result of the Incident of April 20, 2010, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts. The Bundle A Claimants have also made claims against Transocean under the general maritime law for maintenance, cure, and unearned wages and for negligence under the Jones Act and unseaworthiness under the general maritime law.

**ANSWER:**

The BP Parties admit that some Bundle A Claimants have filed claims against Transocean.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore deny them.

32.

The Bundle B Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting claims for Non-Governmental Economic Loss and Property Damages, RICO Claims, Post-Explosion Clean-up Claims and other Claims, seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence, willful misconduct and intentional acts, nuisance, public nuisance, trespass, fraudulent concealment claims, claims under OPA, claims under various states' mini-OPA statutes, and other claims under state law, federal law and under the general maritime law.

**ANSWER:**

The BP Parties admit that some Bundle B Claimants have filed claims against Transocean. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore deny them.

**33.**

The Bundle C Claimants are various governmental entities who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Public Damage Claims for loss of resources, loss of tax revenues, response costs and civil fines and/or penalties seeking to recover damages against Transocean and others, alleging various causes of action, including but not limited to, negligence, gross negligence and willful misconduct, nuisance, public nuisance, trespass, fraudulent concealment, claims under the Oil Pollution Act, 33 U.S.C. § 2702 *et seq.,* ("OPA"), claims under the Clean Water Act, 33 U.S.C. § 1251, *et seq.,* ("CWA"), claims under various states' mini-OPA statutes, and other claims under state law, federal law, and under the general maritime law.

**ANSWER:**

The BP Parties admit that some Bundle C Claimants have filed claims against Transocean. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore deny them.

**34.**

The Bundle D Claimants are various private parties who have or will file Claims, Petitions, Complaints and/or Short Form Joinders asserting Injunctive and Regulatory Claims against Transocean and others, alleging various causes of action, including but not limited to, claims under federal and state law, claims under the CWA, trespass, nuisance and other claims under state and federal law.

**ANSWER:**

The BP Parties admit that some Bundle D Claimants have made claims against Transocean. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore deny them.

**35.**

The allegations and contentions which have been asserted against BP by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to Document 1440, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Plaintiffs' First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses Filed in Accordance with PTO No. 11 (CMO No. 1), Section III.B1 ("B1 Bundle") (hereafter "BP's Motion to Dismiss B1 Bundle Complaint"), filed and served on all counsel on February 28, 2011, Document 1406, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Master Complaint in Accordance With PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["Pleading Bundle B3"] (hereafter "BP's Motion to Dismiss B3 Bundle Complaint"), filed and served on all counsel on February 28, 2011, Document 1786, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) Complaints Filed By Certain Governmental Entities in Pleading Bundle C (hereafter "BP's Motion to Dismiss Governmental Entities"), filed and served on all counsel on March 28, 2011, and Document 1441, the BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7) the Master Complaint for Injunctive Relief Claims Against Private Parties, Filed in Accordance with PTO No. 11 (CMO No.1), Section III (D1) ("D1

Bundle") (hereafter "BP's Motion to Dismiss D1 Bundle Complaint"), filed and served on all counsel on February 28, 2011.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**36.**

The allegations and contentions which have been asserted against Anadarko E&P, Anadarko, MOEX Offshore, MOEX USA and MOECO by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein for more particular reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**37.**

The allegations and contentions which have been asserted against Cameron by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**38.**

The allegations and contentions which have been asserted against Weatherford by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.   To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**39.**

The allegations and contentions which have been asserted against Halliburton by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III(B1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.   To the extent any more specific response is required to any purportedly incorporated allegations, the BP

Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**40.**

The allegations and contentions which have been asserted against M-I by the Bundle A, B, C and D Claimant(s) in their Claims, including, but not limited to the allegations and contentions set forth in the First Amended Master Complaint, Cross-Claim and Third-Party Complaint for private economic losses in accordance with PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint, Dkt. No. 1510, are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**41.**

The allegations and contentions which have been asserted against Dril-Quip by the Bundle A, B, C and D Claimant(s) in the Petitions, Complaints and/or Short-Form Joinders filed

as a result of the Incident of April 20, 2010 and/or the BP Oil Spill are incorporated herein by reference, as if set forth herein, and are adopted by Transocean pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**42.**

The true facts and circumstances regarding the Incident of April 20, 2010 and the BP Oil Spill are that the April 20, 2010 incident and the BP Oil Spill were caused not by any negligent acts, omissions, or culpable conduct of Transocean, but were caused in whole or in part by the negligent acts, omissions or culpable conduct of the Cross-Defendants and Third-Party Defendants, and/or the breach of warranties of workmanlike performance of the Cross-Defendants and Third-Party Defendants, and/or by conditions for which the Cross-Defendants and Third-Party Defendants are strictly liable under law, and as a result, the losses and damages alleged to have been sustained by the United States of America were proximately caused by the Cross-Defendants and Third-Party Defendants.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**43.**

Each of the Cross-Defendants and Third-Party Defendants named herein is jointly, severally, and/or solidarily liable under various principles of the general maritime law and/or applicable state and/or applicable federal tort laws.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 1 -INDEMNITY

### Applies to All Cross-Defendants and Third-Party Defendants[3]

Transocean incorporates all previous paragraphs 1-43 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-43 set out above as if

completely restated herein.

**44.**

Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its

---

[3]   With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

Cross-Claim and Third Party Complaint, together with pre-and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint. In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants under state law.

## ANSWER:

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### COUNT 2 -CONTRIBUTION/COMPARATIVE FAULT

### Applies to All Cross-Defendants and Third-Party Defendants[4]

Transocean incorporates all previous paragraphs 1-44 set out above as if completely restated herein.

### 45.

Transocean alleges further that, pursuant to the general maritime law, Transocean is entitled to indemnity against Cross-Defendants and Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third Party Complaint. In the unlikely event that the general maritime law is held not to apply, Transocean is entitled to contribution or a finding of comparative fault against Cross-Defendants and Third-Party Defendants under state law.

---

[4]   With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration Party any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 3 BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE

### Applies to Third-Party Defendants Halliburton and M-I

Transocean incorporates all previous paragraphs 1-45 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-45 set out above as if completely restated herein.

**46.**

Transocean further incorporates the contentions and allegations asserted against Halliburton and M-I by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"], Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, Dkt. 1510, as if set forth specifically herein.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties adopt and incorporate by reference all pleadings and motions filed in response to any matter that Transocean purports to incorporate by reference, including but not limited to BP's Motion to Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the extent any more specific response is required to any purportedly incorporated allegations, the BP Parties deny them unless expressly admitted in a pleading responsive to any document from

which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## 47.

Transocean alleges further that, pursuant to the general maritime law, Third-Party Defendants Halliburton and M-I owed express and/or implied warranties of workmanlike performance to Transocean with respect to the services which they performed onboard the *Deepwater Horizon.* Transocean further alleges that the services which Third-Party Defendants Halliburton and M-I performed aboard the *Deepwater Horizon* were not performed in a workmanlike manner. Accordingly, Third-Party Defendants Halliburton and M-I are liable to Transocean on the basis of the breach of these express and/or implied warranties of workmanlike performance by these Third-Party Defendants, for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 4 -STRICT LIABILITY FOR MANUFACTURING AND DESIGN DEFECT

### Applies to Third-Party Defendants Cameron, Weatherford, Weatherford International and Dril-Quip

Transocean reiterates all previous paragraphs 1-47 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-47 set out above as if completely restated herein.

**48.**

Transocean further incorporates the contentions and allegations asserted against Cameron, Weatherford and Weatherford International by the "Plaintiffs" in the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint For Private Economic Losses In Accordance With PTO No. 11 [CMO No. 1] Section III.B(1) ["B1 Bundle"] Dkt. No. 1128, and the Local Government Entity Voluntary Master Complaint, Cross-Claim and Third-Party Complaint, Dkt. 1510, as if set forth specifically herein.

**ANSWER:**

To the extent allegations of this paragraph are directed at the BP Parties, the BP Parties

adopt and incorporate by reference all pleadings and motions filed in response to any matter that

Transocean purports to incorporate by reference, including but not limited to BP's Motion to

Dismiss B1 Bundle Complaint, BP's Motion to Dismiss B3 Bundle Complaint, BP's Motion to

Dismiss Governmental Entities, and BP's Motion to Dismiss D1 Bundle Complaint.  To the

extent any more specific response is required to any purportedly incorporated allegations, the BP

Parties deny them unless expressly admitted in a pleading responsive to any document from

which Transocean has purportedly incorporated allegations.  The BP Parties lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations of this

paragraph, and therefore deny them.

**49.**

Transocean alleges further that Third-Party Defendant Cameron is liable to Transocean for its defective design and/or manufacture of the BOP pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorney's fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**50.**

Alternatively, in the unlikely event that maritime law is held not to apply, Cameron is liable to Transocean for its defective design and/or manufacture of the BOP, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.);* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.);* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**51.**

Transocean alleges further that Third-Party Defendant Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**52.**

Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.*); the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.*); the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

**53.**

Transocean alleges further that Third-Party Defendant Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

**54.**

Alternatively, in the unlikely event that maritime law is held not to apply, Weatherford International is liable to Transocean for its defective design and/or manufacture of the float collar, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.*); the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.*); the Mississippi Products Liability Act (Miss. Code Ann. § I I I-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**55.**

Transocean alleges further that Third-Party Defendant Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems pursuant to Section 402A of the Restatement (Second) of Torts, as adopted by maritime law. Accordingly, Transocean is entitled to recover against Third-Party Defendants for any amount Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**56.**

Alternatively, in the unlikely event that maritime law is held not to apply, Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems, under the Louisiana Products Liability Act (La. Rev. St. Ann. § 9.2800.51, *et seq.);* the Texas Products Liability Act of 1993 (Tex. Civ. Prac. & Rem. Code Ann. § 82.002, *et seq.);* the Mississippi Products Liability Act (Miss. Code Ann. § 11-1-63); the Alabama Extended Manufacturer's Liability Doctrine; and/or Florida law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT 5 -CONTRIBUTION UNDER OPA

### Applies to All Cross-Defendants and Third-Party Defendants[5]

Transocean incorporates all previous paragraphs 1-56 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-56 set out above as if completely restated herein.

### 57.

Transocean alleges further that, pursuant to 33 U.S.C. § 2709, Transocean is entitled to contribution against the Cross-Defendants and Third-Party Defendants under the provisions of OPA, 33 *U.S.C.* § 2701, *et seq.,* for any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

---

[5]    With respect to the BP Cross-Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the Drilling Contract dated December 9, 1998 between Transocean Holdings LLC and BP America Production Company.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

## COUNT 6 - SUBROGATION UNDER OPA

### Applies to All Cross-Defendants and Third-Party Defendants[6]

Transocean reiterates all previous paragraphs 1-57 set out above as if completely restated herein.

**ANSWER:**

The BP Parties incorporate all previous answers to paragraphs 1-57 set out above as if completely restated herein.

### 58.

Transocean alleges further that, pursuant to 33 U.S.C. § 2702(d)(1)(A) and (B), to the extent that Transocean has been designated by the United States Coast Guard to be a responsible party under OPA, and to the extent that Transocean pays or has paid any removal costs and/or damages in accordance with 33 U.S.C. § 2713 as a result of the BP Oil Spill or as a result of the release of diesel from the surface, Transocean is entitled to recover from the Cross-Defendants and Third-Party Defendants a sum equal to the amount of any payments made by Transocean to any Claimant for removal costs or damages. In the alternative, Transocean is entitled to recover from the Cross-Defendants and Third-Party Defendants pursuant to 33 U.S.C. § 2715 under any other law.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

---

[6]   With respect to the BP Cross-Defendants and Third-Party Defendants, Transocean's Rule 13 Cross-Claim/Counter-Claim and Transocean's Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the December 9,1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. and the amendments thereto.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract.  The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

## COUNT 7 - BREACH OF EXPRESS CONTRACT

### Applies to BP Cross-Defendants and Third-Party Defendants

**59.**

Transocean's Rule 13 Cross-Claim/Counter-Claim and Rule 14 Third-Party Complaint is filed subject to, and without waiver of, Transocean's rights to invoke and compel arbitration of any and all arbitrable disputes which arise out of or are related to the December 9, 1998 Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. and the amendments thereto.

**ANSWER:**

The BP Parties deny that any of Transocean's claims, cross-claims, or counter-claims in this matter are arbitrable disputes under the Drilling Contract. The BP Parties are not pursuing any arbitration rights they have under the Drilling Contract and Transocean has, by its conduct in this Court, waived any claimed right to arbitrate any aspect of the parties' dispute.

**60.**

Subject to its reservation of rights set forth in Footnote 1 of this Cross-Claim/Counter-Claim and Third-Party Claim, Transocean reiterates all previous paragraphs set out above as if completely restated herein.

**ANSWER:**

The BP Parties reiterate all answers to previous paragraphs set out above as if completely restated herein.

**61.**

On or about December 9, 1998, Vastar Resources, Inc., the predecessor of BP America, and R&B Falcon Drilling Co., the predecessor of Transocean Holdings, entered into the "Drilling Contract for RBS -8D", which vessel was later known as the *Deepwater Horizon.*

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**62.**

The Drilling Contract was amended on numerous occasions between December 9, 1998 and April 20, 2010.

**ANSWER:**

The BP Parties admit the allegations of this paragraph.

**63.**

Pursuant to the terms of the December 9, 1998 Drilling Contract, Transocean brings this action against BP for breach of express contract. On information and belief, BP Exploration (i) was the agent, assignee, joint venturer and/or alter ego of BP America with respect to the Drilling Contract; (ii) performed some or all of the obligations of BP America under the Drilling Contract, including the obligations to specify, direct and/or instruct performance of drilling, testing and sampling operations under Article 15 of the Drilling Contract and the obligation to finish materials under Article 8 of the Drilling Contract; and (iii) exercised the rights of BP America to observe and inspect operations under Article 18.2 of the Drilling Contract. By virtue of the foregoing, BP Exploration is jointly and severally liable for the indemnity obligations owed to Transocean under the Drilling Contract. Respondent BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is a parent of BP America, is entitled to the benefit of the indemnities owed by Transocean Holdings in the Drilling Contract and is a third party beneficiary of Transocean Holdings' obligations to provide indemnity under the Contract. On information and belief, BP p.l.c. was the agent, assignee, joint venturer and/or alter ego of BP America and/or BP Exploration with respect to the Macondo well through, inter alia, the direct participation of BP p.l.c. employees in the post-casualty investigation conducted by BP, the direct participation of BP p.l.c. officers and employees in the governmental post-casualty investigations, the direct participation of BP p.l.c. officers and employees in the post-casualty control efforts, and the direct participation of BP p.l.c. in the establishment and/or funding of an escrow fund and claims facility to pay claims arising from the incident. By virtue of the foregoing, BP p.l.c. is jointly and severally liable for the indemnity obligations owed to Transocean under the Drilling Contract.

**ANSWER:**

The BP Parties admit that Transocean brought this action against BP and that BP p.l.c. is

the indirect parent company of BPAP.  The BP Parties deny the remaining allegations of this

paragraph.

**64.**

This count concerns the failure of BP to honor its express, written contractual commitments to Transocean arising from the Incident of April 20, 2010 and the BP Oil Spill.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**65.**

The Drilling Contract contains reciprocal obligations to "protect, release, defend, indemnify and hold harmless." Article 21.1 requires Transocean to defend and indemnify BP and hold it harmless for all claims for personal injury or death of Transocean personnel, regardless of whether those claims arise in whole or in part from BP's negligence. Article 21.2, in turn, requires BP to defend and indemnify Transocean and hold it harmless for all claims for personal injury or death of BP personnel, or third-party personnel (employees of non-Transocean contractors) regardless of whether those claims arise in whole or in part from Transocean's negligence. In addition, Article 24 requires BP to defend and indemnify Transocean and hold it harmless for all claims for pollution or contamination, including control and removal thereof (except with respect to discharges originating on or above the surface of the land or water).

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself. The BP Parties deny the remaining allegations of this paragraph.

**66.**

The reciprocal indemnity obligations in the Drilling Contract are broad and comprehensive. Article 24.2, for example, states in pertinent part that BP "shall assume full responsibility for and shall protect, release, defend, indemnify, and hold [Transocean] harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability for pollution or contamination, including control and removal thereof, arising out of or connected with operations under this Contract hereunder and not assumed by Contractor in Article 24.1 above, without regard for negligence of any party or parties and specifically without regard for whether the pollution or contamination is caused in whole or in part by the negligence or fault of Contractor."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself. The BP Parties deny the remaining allegations of this paragraph.

**67.**

Article 25.1 provides that "the parties intend and agree that the phrase 'shall protect, release, defend, indemnify, and hold harmless the indemnified or parties from and against any and all claims, demands, causes of action, damages, costs, expenses (including reasonable attorneys fees), judgments and awards of any kind or character ...'" Article 25 further provides that the obligations of the indemnifying party apply:

1    "without limit and without regard to the cause or causes;"

2    "without regard to ... preexisting conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels (including the drilling unit), breach of representation or warranty, expressed or implied, breach of contract, strict liability, tort or the negligence of any person or persons;" and

3    "without regard to ... the negligence of any person or persons, including that of the indemnified party ...whether such negligence be sole, joint or concurrent, active, passive or gross or any other theory of legal liability."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

**68.**

Transocean has honored its contractual obligations to BP and has offered to defend and indemnify BP and its subcontractors and hold them harmless for the personal injury or death claims of Transocean personnel that arose from the Incident of April 20, 2010, notwithstanding claims that the Incident of April 20, 2010 resulted from BP's negligence and/or gross negligence. Despite Transocean's repeated requests, however, BP has reserved its rights and to date has refused to confirm in writing that it will honor its contractual obligations to Transocean, including BP's obligation to defend and indemnify Transocean and hold it harmless for claims for pollution or contamination, as well as for claims for personal injury or death of BP or third-party personnel.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**69.**

On or about September 2009, BP America and Transocean Holdings entered into Amendment No. 38 to the Drilling Contract. Amendment No. 38 states that its provisions become effective on the "Renewal Date," which is defined as September 18, 2010. Among other changes, Amendment No. 38 amends the indemnity provisions of the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

**70.**

BP is required to defend and indemnify Transocean and hold it harmless with respect to claims for pollution or contamination, and claims for personal injury or death of BP personnel, irrespective of whether the governing indemnity provisions are those in the original Drilling Contract or those in the Drilling Contract as amended by Amendment No. 38.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**71.**

Article 21.5(b)(ii) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall assume all responsibility for, including control, clean-up and removal of and shall release, defend, indemnify and hold harmless [Transocean] from all CLAIMS, however caused and arising in relation to pollution or contamination which may result from fire, blow-out, cratering, seepage, or any other uncontrolled flow of oil, gas, wastes or other substance from any WELL arising out of the CONTRACT."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

**72.**

Article 21.3(c) of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[BP] shall release, defend, indemnify and hold [Transocean] harmless ... from ... and against any and all liability for sickness, injury, or death to any of COMPANY GROUP

personnel arising out of the CONTRACT or in tort and against all CLAIMS resulting therefrom."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself. The BP Parties deny the remaining allegations of this paragraph.

### 73.

Article 21.0 of the Drilling Contract, as amended by Amendment No. 38, provides that CLAIMS "means all claims, liens, liabilities, fines, penalties, judgments, losses, damages, and expenses (including without limitation legal costs and expenses and other costs of defense), and shall, except as otherwise expressly provided, include claims based on contractual indemnity."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself. The BP Parties deny the remaining allegations of this paragraph.

### 74.

Article 21.8 of the Drilling Contract, as amended by Amendment No. 38, provides in pertinent part that "[t]he release, defense, indemnity and hold harmless obligations as provided in the CONTRACT shall apply whether or not any injury, death, illness, loss or damage is occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, gross, joint, active, or passive, of either PARTY (or any person or entity to whom indemnity is owed), breach of contract, any theory of tort, strict liability, breach of duty (statutory, expressed, implied or otherwise provided in law or equity), breach of warranty (expressed or implied), or WILFUL MISCONDUCT, products liability or any other theory of liability.... "

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself. The BP Parties deny the remaining allegations of this paragraph.

### 75.

The treatment of indemnity for claims for employees of third-party contractors working on the *Deepwater Horizon* differs under the original Drilling Contract and under the Drilling

Contract as amended by Amendment No, 38, Under Article 21.2 of the original Drilling Contract, BP is required to indemnify Transocean for claims of personal injury or death of employees of contractors other than Transocean, Under Article 21.3 (a) & (b) of the Drilling Contract as amended by Amendment No, 38, BP is required to indemnify Transocean for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [BP]" while Transocean is required to indemnify BP for sickness, injury or death of any "THIRD PARTY" "to the extent of any negligent act or default on the part of [Transocean]."

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


**76.**

Article 27.3 of the Drilling Contract provides that the termination of the Drilling Contract shall be immediate in the event of actual or constructive total loss of the Drilling Unit.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


**77.**

Article 27.4 of the Drilling Contract provides that, notwithstanding the termination of the Drilling Contract, the parties shall continue to be bound by the provisions of the contract "that reasonably require some action or forbearance after the expiration" of the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which

speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.


**78.**

The *Deepwater Horizon* became a total loss when the blowout of the Macondo well on April 20, 2010 caused an explosion and fire aboard the vessel, which then caused the vessel to sink on April 22, 2010.

**ANSWER:**

The BP Parties admit the total loss of the *Deepwater Horizon* as a result of one or more explosions and/or fires, and the sinking of the vessel.  The BP Parties deny the remaining allegations of this paragraph.

**79.**

By virtue of Article 27.4, the parties to the Drilling Contract remain bound by the indemnity provisions of the Drilling Contract.

**ANSWER:**

The BP Parties admit the existence of a Drilling Contract, as amended, the text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph.

**80.**

Transocean has honored its obligations under the Drilling Contract by offering to defend and indemnify BP and hold it harmless for all claims for personal injury and death of Transocean personnel. To date, BP has not accepted this offer.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**81.**

Transocean has timely demanded that BP honor its obligations under the Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for pollution and contamination. To date, BP has stated that it is reserving its rights and has yet to defend and indemnify Transocean and hold it harmless.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**82.**

Transocean has timely demanded that BP honor its obligations under the Drilling Contract to defend and indemnify Transocean and hold it harmless for all claims for personal injury and death of BP and third-party personnel. To date, BP has stated it is reserving its rights and has yet to defend and indemnify Transocean and hold it harmless.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**83.**

BP's reservation of its rights and its failure to date to confirm in writing that it will honor its contractual obligations in the Drilling Contract constitute a breach of contract, proximately resulting in damages to Transocean.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**84.**

As a result of BP's reservation of its rights and its failure to date to confirm in writing that it will honor its contractual obligation to defend Transocean, Transocean has incurred and will continue to incur substantial attorneys' fees. As of the present date, Transocean and/or its insurers have incurred attorneys' fees and expenses in an amount according to proof to defend Transocean against claims that should have been defended by BP.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

**85.**

Accordingly, Transocean seeks a judgment in Transocean's favor against Cross-Defendants and Third-Party Defendants BP for any amounts Transocean may be held liable to pay in judgment and/or settlement to, or as a result of, the Claims of the United States of America and/or the Claims asserted by BP Exploration in its Cross-Claim and Third Party Complaint, together with pre- and post-judgment interest, plus Court costs and attorneys' fees for defending said Claims, and attorneys' fees and Court costs for pursuing this Cross-Claim/Counter-Claim and Third-Party Complaint.

**ANSWER:**

The BP Parties deny the allegations of this paragraph.

## PRAYER

WHEREFORE, the Transocean Defendants pray that their defenses to the Cross-Claim and Third-Party Complaint of BPXP be deemed good and sufficient; that after due proceedings are had there be judgment in favor of the Transocean Defendants, dismissing all claims asserted by BPXP, with prejudice, at BPXP's costs; and for any and all other just and equitable relief deemed appropriate, and

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the

BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations of this paragraph, and therefore deny them.

WHEREFORE, in the event that BPXP recovers anything from any of the Transocean Defendants on its Cross-Claim and Third-Party Complaint, that Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., Cross-Plaintiffs and Third-Party Plaintiffs herein, have judgment on their Rule 13 Cross-Claims/Counter-Claims and their Rule 14 Third-Party Complaint against BP America Production Company, BP Exploration & Production Inc., BP p.l.c., Halliburton Energy Services, Inc., M-I, LLC, Cameron International Corporation f/k/a Cooper Cameron Corporation, Anadarko Petroleum Corporation, Anadarko E&P Company, LP, MOEX Offshore 2007 LLC, MOEX USA Corporation, Mitsui Oil Exploration Company, Ltd. (a/k/a MOECO), Weatherford International, Inc., Weatherford U.S.L.P., and Dril-Quip, Inc., as follows:

1.    That process in due form of law, according to the practice of this Court and the Federal Rules of Civil Procedure, issue against Cross-Defendants and Third-Party Defendants, requiring them to appear and answer this Cross-Claims/Counter-Claims and Third-Party Complaint;

2.    That Transocean have judgment against Cross-Defendants and Third-Party Defendants on Counts 1, 2, 5 and 6 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

3.    That Transocean have judgment against Third-Party Defendants Halliburton and M-I on Count 3 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

4.    That Transocean have judgment against Third-Party Defendants Cameron, Weatherford, Weatherford International and Dril-Quip on Count 4 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

5.     That Transocean have judgment against Cross-Defendants and Third-Party Defendants BP America and BP Exploration on Count 7 of its Cross-Claims/Counter-Claims and Third-Party Complaint;

6.     That Transocean recover pre- and post-judgment interest;

7.     That Transocean recover its attorneys' fees;

8.     That Transocean recover its costs; and

9.     That Transocean have such other and further relief available under applicable law and any relief the Court deems just and appropriate.

**ANSWER:**

The BP Parties deny the allegations of this paragraph to the extent they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of the Cross-Claims fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU Deepwater Horizon, and/or unseaworthy conditions, breach of contract or breaches of duty and breaches of warranty, express or implied, attributable to the Petitioners and the negligence of employees, agents, officers and directors of Petitioners. The aforesaid unseaworthiness and negligence was within the knowledge or privity of Petitioners and accordingly, the Cross-Claims should be dismissed as to the BP Parties.

### THIRD DEFENSE

Petitioners' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

44

## FOURTH DEFENSE

The events culminating in the injuries and damage to Petitioners were not the result of any negligence, fault, or want of due care on the part of BP Parties.  Furthermore, Petitioners have the burden of proof on this issue, and Petitioners cannot meet that burden.

## FIFTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Petitioners' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## SIXTH DEFENSE

Petitioners' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.  The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

## SEVENTH DEFENSE

To the extent the BP Parties are found liable to Petitioners for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to indemnity from other parties or entities.

**TENTH DEFENSE**

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to contribution from other parties or entities.

**ELEVENTH DEFENSE**

To the extent that the BP Parties are found liable to Petitioners for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

**TWELFTH DEFENSE**

Petitioners' claims are barred, in whole or in part, because Petitioners are not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**THIRTEENTH DEFENSE**

Petitioners' damages are barred, in whole or in part, by a failure to mitigate damages.

**FOURTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Cross-Claims, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Petitioners as a result of the allegations contained in the Cross-Claims and for any other damages or claims which exist or may arise, but have not been specifically pled.


The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.


Dated:  June 20, 2011                                        Respectfully submitted,


                                                            /s/ Don K. Haycraft_____
                                                            Don K. Haycraft (Bar #14361)

46

R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

/s/  Don K. Haycraft