**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Cases AND No. 2:10-cv-2771 (*In re The Complaint And Petition Of Triton Asset Leasing GmbH, et al.*) | : : : : : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| ………………………………………….... | : | |

### THE BP PARTIES' ANSWER TO DEFENDANT
### M-I L.L.C.'S FIRST AMENDED CROSS-CLAIMS

BP Exploration & Production Inc. ("BPXP"), BP America Production Company ("BPAP"), and BP p.l.c. ("collectively, the BP Parties"), by their undersigned Counsel, and, pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer M-I L.L.C.'s First Amended Cross-Claims as follows:

Defendant M-I L.L.C., pursuant to Federal Rule of Civil Procedure 13(g), states as follows for its cross-claims against Cross-Defendants.[1]

### THE PARTIES

1.       M-I, LLC ("M-I") is a Delaware limited liability company with its principal place of business in Houston, Texas.  M-I has been served with a summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 Section III(B)(1) (B1 Bundle) and/or a First Amended Master Complaint, has been named as a Third-Party Defendant in Petitioners' Rule 14(c) Third-Party Complaint, and has been served with other summonses and complaints related to the *Deepwater Horizon* explosion and the resulting oil spill. M-I denies any negligence or fault in connection with the explosion or the oil spill.  The *Deepwater Horizon* explosion and the resulting oil spill were caused by the negligence of other parties, including the Cross-Defendants herein.  M-I has a contractual right to indemnification from the BP Parties, and statutory and/or common law rights to indemnification and/or contribution from Cross-Defendants herein, in whole or in part, for any damages that may be assessed against M-I as a result of the events alleged in the Rule 14(c) Third Party Complaint,

---

[1]      M-I files these cross-claims in the Limitation Action pursuant to the Stipulated Order dated March 24, 2011 (Rec. Doc. 1730).  These cross-claims also apply to the complaints in Pleading Bundles B and C.

the First Amended B1 Master Complaint, and other complaints that have been or may be filed arising out of the *Deepwater Horizon* explosion and oil spill.

**ANSWER**

The BP Parties admit that M-I has been served with the claims described.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

2. Cross-Defendant BP America Production Company, Inc. ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana and does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties admit that BPAP is a Delaware corporation, that BPAP is subject to this Court's jurisdiction, that various parties have served complaints on BPAP, and that Transocean filed a Rule 14(c) Tender against BPAP.  The BP parties deny the remaining allegations of this paragraph.

3. Cross-Defendant BP Exploration & Production, Inc. ("BP Exploration & Production") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  This Court has personal jurisdiction over BP Exploration & Production because it is registered to do business in Louisiana and does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties admit that BPXP is a Delaware corporation, that BPXP is subject to this Court's jurisdiction, that various parties have served complaints on BPXP, and that Transocean filed a Rule 14(c) Tender against BPXP.  The BP parties deny the remaining allegations of this paragraph.

4. Cross-Defendant BP p.l.c. is a British limited company with its corporate headquarters in London, United Kingdom.  BP p.l.c. is the global parent company of the

worldwide business operating under the "BP" tradename.  Cross-Defendants BP America and BP Exploration & Production are wholly-owned subsidiaries of BP p.l.c.  This Court has personal jurisdiction over BP p.l.c. pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. §13:3201, because BP p.l.c. has continuous and systemic contacts with Louisiana and/or because the causes of action asserted in the complaints against BP p.l.c., the Rule 14(c) tender, and by MI herein arise out of BP p.l.c.'s contacts with Louisiana.  BP America Production Company, Inc., BP Exploration & Production, Inc., and BP p.l.c. are sometimes referred to collectively as the "BP Parties."

**ANSWER**

The BP Parties admit that BP p.l.c. is a British Public Limited Company organized under the laws of England and Wales, with its headquarters in London, England, that BP p.l.c. is not contesting jurisdiction in this case, and that Transocean filed a Rule 14(c) Tender against BP p.l.c.  The BP parties deny the remaining allegations of this paragraph.

5.       Cross-Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Halliburton because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

6.       Cross-Defendant Anadarko Exploration & Production Company, L.P. ("Anadarko E&P") is a limited partnership organized under Delaware law, with its principal place of business in The Woodlands, Texas.  This Court has personal jurisdiction over Anadarko E&P because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

7.       Cross-Defendant Anadarko Petroleum Corporation ("Anadarko Petroleum") is a Delaware corporation with its principal place of business in The Woodlands, Texas.  This Court

has personal jurisdiction over Anadarko Petroleum because it is registered to do business in Louisiana and does business in Louisiana.  Anadarko Exploration & Production Company, L.P. and Anadarko Petroleum Corporation are sometimes referred to collectively as the "Anadarko Parties."

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

8.      Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a limited liability company organized under Delaware law, with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over MOEX Offshore because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

9.      Cross-Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over MOEX USA pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. §13:3201, because MOEX USA has continuous and systemic contacts with Louisiana, and/or because the causes of action asserted in the complaints against MOEX USA, the Rule 14(c) tender, and by M-I herein arise out of MOEX USA's contacts with Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

10.      Cross-Defendant Mitsui Oil Exploration Company, Ltd. ("Mitsui") is a corporation organized under Japanese law, with its principal place of business in Tokyo, Japan. Upon information and belief, Mitsui is a corporate parent and/or alter ego of MOEX Offshore. This Court has personal jurisdiction over Mitsui pursuant to the Louisiana long-arm statute, La. Rev. Stat. Ann. § 13:3201, because Mitsui has continuous and systemic contacts with Louisiana, and/or because the causes of action asserted in the complaints against Mitsui, the Rule 14(c) tender, and by M-I herein arise out of Mitsui's contacts with Louisiana.  Mitsui Oil Exploration Company, Ltd, MOEX Offshore 2007 LLC, and  MOEX USA Corporation are sometimes referred to collectively as the "MOEX Parties."

4

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

11.     Cross-Defendant Cameron International Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

12.     Cross-Defendant Weatherford U.S. L.P. ("Weatherford U.S.") is a limited partnership organized under Louisiana law, with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Weatherford U.S. because it is registered to do business in Louisiana and does business in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

13.     Cross-Defendant Weatherford International, Inc. ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Weatherford U.S., L.P. and Weatherford International, Inc. are sometimes referred to collectively as the "Weatherford Parties."

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

14.     Cross-Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Dril-

Quip because Dril-Quip is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

15.     Cross-Defendant Triton Asset Leasing GmbH is a limited liability company organized under the laws of Switzerland, with its principal place of business in Zug, Switzerland. This Court has personal jurisdiction over Triton Asset Leasing GmbH because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third-Party Complaint.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

16.     Cross-Defendant Transocean Holdings LLC ("Transocean Holdings") is a Delaware limited liability company with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Transocean Holdings because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

17.     Cross-Defendant Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Transocean Offshore because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

18.     Cross-Defendant Transocean Deepwater Inc. ("Transocean Deepwater") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over Transocean Deepwater because it does business in Louisiana and because it voluntarily submitted to the jurisdiction of this Court by filing the Rule 14(c) Third Party Complaint.  Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. are sometimes collectively referred to as the "Transocean Parties."

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

19.     Cross-Defendant Marine Spill Response Corporation ("MSRC") is a Tennessee non-profit corporation with its principal place of business in Herndon, Virginia. This Court has personal jurisdiction over MSRC because MSRC was doing business in the State of Louisiana at all pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

20.     Cross-Defendant Airborne Support, Inc. ("ASI") is a Florida corporation with its principal place of business in Houma, Louisiana. This Court has personal jurisdiction over ASI because ASI was doing business in the State of Louisiana at all pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

21.     Cross-Defendant Airborne Support International, Inc. ("ASI International") is a Florida corporation with its principal place of business in Houma, Louisiana. This Court has personal jurisdiction over ASI International because ASI International was doing business in the State of Louisiana at all pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.


22.     Cross-Defendant Lynden, Inc. ("Lynden") is a Washington corporation with its
principal place of business in Seattle, Washington. This Court has personal jurisdiction over
Lynden because at all pertinent times, Lynden was doing business in the State of Louisiana by
virtue of its one hundred percent ownership interest in Lynden Air Cargo, LLC.  Lynden Air
Cargo, LLC is an Alaska limited liability company with its principal place of business in Seattle,
Washington.  At all pertinent times, Lynden Air Cargo, LLC, together with Lynden, Inc., was
doing business in the State of Louisiana.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.


23.     Cross-Defendant Dynamic Aviation Group, Inc. ("Dynamic") is a Virginia
corporation with its principal place of business in Bridgewater, Virginia. This Court has personal
jurisdiction over Dynamic because Dynamic was doing business in the State of Louisiana at all
pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.


24.     Cross-Defendant International Air Response, Inc. ("IAR") is an Arizona
corporation with its principal place of business in Coolidge, Arizona. This Court has personal
jurisdiction over IAR because IAR was doing business in the State of Louisiana at all pertinent
times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth

of the allegations of this paragraph, and therefore deny them.

25.     Cross-Defendant Lane Aviation ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas. This Court has personal jurisdiction over Lane because Lane was doing business in the State of Louisiana at all pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

26.     Cross-Defendant National Response Corporation ("NRC") is a Delaware corporation with its principal place of business in Great River, New York. This Court has personal jurisdiction over NRC because at all pertinent times, NRC, along with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware (of which NRC is a wholly-owned subsidiary), was doing business in the State of Louisiana.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

27.     Cross-Defendant O'Brien Response Management, Inc. ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, Louisiana.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

28.     Cross-Defendant The Modern Group, Ltd. ("Modern Group") is a Texas for profit business entity, with its principal place of business in Beaumont, Texas. Individually, and/or through one or more of its partners, subsidiaries and/or affiliated entities, including, but not limited to, The Modern Group GP SUB and/or Tiger Rentals, Ltd. (collectively "Modern Group"), the Modern Group, upon information and belief, participated in the post-explosion Oil Spill remediation and response efforts, through its ventures "Tiger Safety" and/or "Tiger Rentals", the names under which The Modern Group does business in the Parish of Broussard, State of Louisiana.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

29.    Cross-Defendant Tiger Safety, LLC ("Tiger") is a Louisiana limited liability company with its principal place of business in the Parish of East Baton Rouge, State of Louisiana.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

30.    Cross-Defendant DRC Emergency Services, LLC ("DRC") is an Alabama limited liability company. At all pertinent times, DRC was doing business in the State of Louisiana. DRC participated in the post-blowout remediation and response efforts.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

31.    Cross-Defendant Nalco Company ("Nalco") is a Delaware corporation and is wholly owned by Nalco Holdings LLC, a Delaware limited liability company. This Court has personal jurisdiction over Nalco because Nalco was doing business in the State of Louisiana at all pertinent times.

**<u>ANSWER</u>**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

32.    The cross-defendants described in Paragraphs 19-31 are referred to collectively as the "Responder Parties."

**<u>ANSWER</u>**

The BP Parties admit the allegations of this paragraph.

33.     Each of the above-described Cross-Defendants has been served with a summons and Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 Section III(B)(1) (B1 Bundle) and/or a First Amended Master Complaint, and has been served with other summonses and complaints related to the *Deepwater Horizon* explosion and the resulting oil spill. With the exception of the Transocean Parties, each of the above-described Cross-Defendants has also been served with a Rule 14(c) tender by Triton Asset Leasing GMBH, Transocean Holdings LLC, Transocean Deepwater Drilling Inc., and Transocean Deepwater Inc.

**<u>ANSWER</u>**

The BP Parties admit the allegations of this paragraph.

## <u>JURISDICTION AND VENUE</u>

34.     Jurisdiction over M-I's cross-claims is proper pursuant to the rules governing cross-claims against co-parties.  This Court also has supplemental and/or ancillary jurisdiction over these cross-claims and counterclaims because the Court already has jurisdiction over Petitioners' Rule 14(c) Complaint and the Amended B1 Master Complaint pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction), 43 U.S.C. § 1349(b) (the Outer Continental Shelf Lands Act (OCSLA)), and 28 U.S.C. § 1331 (because the claims in the Rule 14(c) Complaint and the Master Complaint arise under OCSLA and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.).

**<u>ANSWER</u>**

The BP Parties admit that this Court has jurisdiction over M-I's cross-claims under 28 U.S.C. § 1333.  The BP Parties deny the remaining allegations of this paragraph.

35.     This Court also has original jurisdiction over M-I's cross-claims pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction) and 43 U.S.C. § 1349(b) (OCLSA).

**<u>ANSWER</u>**

The BP Parties admit that this Court has jurisdiction over M-I's cross-claims under 28 U.S.C. § 1333.  The BP Parties deny the remaining allegations of this paragraph.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**<u>ANSWER</u>**

The BP Parties admit the allegations of this paragraph.

## CLAIMS

37.     When the *Deepwater Horizon* explosion occurred on April 20, 2010, each of the Cross-Defendants identified above had personnel and/or equipment on the rig, were otherwise directly involved with the *Deepwater Horizon*'s drilling operations at the Macondo well, or were involved in the remediation and clean-up efforts that followed the blowout.

## ANSWER

The BP Parties deny the allegations of this paragraph.

38.     In the Amended B1 Master Complaint and in other complaints, Plaintiffs/ Claimants have sought to hold M-I and the Cross-Defendants liable for the injuries they allegedly suffered as a result of the *Deepwater Horizon* explosion and fire and/or the resulting oil spill.

## ANSWER

The BP Parties admit the allegations of this paragraph.

39.     The *Deepwater Horizon* explosion, the resulting oil spill, and the injuries alleged by Claimants/Plaintiffs were not caused, in whole or in part, by the conduct of M-I.  Instead, they were caused by the negligence of Cross-Defendants, as further described herein, and others against whom M-I has already asserted counter-claims.  As such, M-I is entitled to contractual indemnity, common law indemnity, and/or statutory or common law contribution, in whole or in part, for any damages that may be assessed against M-I as a result of the events alleged in the Rule 14(c) Third Party Complaint, the First Amended B1 Master Complaint, and other complaints that have been or may be filed arising out of the *Deepwater Horizon* explosion and oil spill.

## ANSWER

The BP Parties deny the allegations of this paragraph to the extent that they are directed

at the BP Parties.  The BP Parties lack knowledge or Information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT I
### (Against the BP Parties for Contractual Indemnification)

40.     Paragraphs 1-39 are incorporated by reference as if fully set forth.

**<u>ANSWER</u>**

The BP Parties incorporate their answers to paragraphs 1 through 39 as if fully set forth herein.

41.     M-I and BP Exploration & Production, Inc. are parties to contract BPM-0900209, a Contract For Gulf of Mexico Strategic Performance Unit Offshore Well Services (the BP Contract). The effective date of the contract was February 1, 2009.

**<u>ANSWER</u>**

The BP Parties refer M-I to the Contract, the full text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph to the extent they allege anything other than the express terms of the Contract, taken as a whole.

42.     The BP Contract is in full force and effect, and was in full force and effect at all relevant times, including on April 20, 2010 and thereafter.

**<u>ANSWER</u>**

The BP Parties refer M-I to the Contract, the full text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph to the extent they allege anything other than the express terms of the Contract, taken as a whole.

43.     Pursuant to the BP Contract, the parties agreed that BP Exploration & Production

> shall save, indemnify, release, defend and hold harmless [M-I] from and against *any claim of whatsoever nature arising from pollution and/or contamination* including without limitation such pollution or contamination from the reservoir or from the property or equipment of [BP] arising from or related to the performance of the CONTRACT.

(BP Contract Section 19.4(a)) (emphasis added).

**<u>ANSWER</u>**

The BP Parties refer M-I to the Contract, the full text of which speaks for itself.  The BP

Parties deny the remaining allegations of this paragraph to the extent they allege anything other

than the express terms of the Contract, taken as a whole.

44.     BP Exploration & Production and M-I further agreed that "notwithstanding
anything contained elsewhere in the CONTRACT to the contrary," BP Exploration & Production
would "save, indemnify, release, defend and hold harmless [M-I] against all claims, losses,
damages, costs (including legal costs) expenses and liabilities resulting from:

> (a)     loss or damage to any well or hole (including the cost to re-drill);
>
> (b)     *blowout, fire, explosion, cratering or any uncontrolled well condition (including the costs to control a wild well and the removal of debris);*
>
> (c)     damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom;
>
> (d)     the use of radioactive sources in relation to the WORK or any contamination resulting therefrom (including retrieval and/or containment, clean up and/or containment of contamination from naturally occurring radioactive materials)."

(BP Contract Section 19.6) (emphasis added).

**<u>ANSWER</u>**

The BP Parties refer M-I to the Contract, the full text of which speaks for itself.  The BP

Parties deny the remaining allegations of this paragraph to the extent they allege anything other

than the express terms of the Contract, taken as a whole.

45.     The BP Contract (including the indemnity provisions quoted above) is a binding,
valid, and enforceable contract.

**ANSWER**

The BP Parties refer M-I to the Contract, the full text of which speaks for itself.  The BP

Parties deny the remaining allegations of this paragraph to the extent they allege anything other

than the express terms of the Contract, taken as a whole.

46.     The injuries alleged by Claimants/Plaintiffs in the Amended B1 Master Complaint
and in other complaints in which M-I has been named as a defendant, and the claims tendered to
M-I in the Rule 14(c) Third-Party Complaint all "aris[e] from pollution or contamination" –
namely, from pollution or contamination resulting from the oil spill at the Macondo well.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed

at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.

47.     In addition, the injuries alleged by Claimants/Plaintiffs in the Amended B1
Master Complaint and in other complaints in which M-I has been named as a defendant, and the
claims tendered to M-I in the Rule 14(c) Third-Party Complaint "result from the blowout, fire,
explosion, cratering, or [an] uncontrolled well condition."  Specifically, the injuries were caused
by the blowout of the Macondo well and the explosion of the *Deepwater Horizon*, which
proximately caused the oil spill that caused the injuries complained of in the Amended B1
Master Complaint and in other complaints in which M-I has been named as a defendant, and the
claims tendered to M-I in the Rule 14(c) Third-Party Complaint.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed

at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.

48.     Pursuant to the provisions of the BP Contract, the BP Parties are obligated to
save, indemnify, release, defend, and hold harmless M-I against all claims made, and  losses or
damages assessed against, M-I in any claim for economic damages of any nature, consequential
damages, or punitive damages arising from the *Deepwater Horizon* explosion or the subsequent
oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

## COUNT II
### (Against the BP Parties for Declaratory Judgment)

49.     The allegations in Paragraphs 1-48 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 48 as if fully set forth

herein.

50.     Pursuant to 28 U.S.C. § 2201, M-I is entitled to a declaration that, under the terms of the BP Contract (including the provisions quoted above), M-I is entitled to indemnification from the BP Parties, without limitation, for any liability that M-I may incur to any person seeking economic damages of any nature, consequential damages, or punitive damages arising from the *Deepwater Horizon* explosion or the subsequent oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

51.     M-I is also entitled to a declaratory judgment that, under the terms of the BP Contract, M-I is entitled to recover all legal fees and costs that M-I incurs defending against such claims.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

## COUNT III
### (Against the BP Parties for Contribution/Indemnification)

52.     Paragraphs 1-51 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 51 as if fully set forth

herein.

53.    The BP Parties were the primary leaseholder of the Macondo well and the sole operator of the well.  The BP Parties were responsible for controlling—and did control—the activities of M-I and other contractors on the *Deepwater Horizon*.  The BP Parties were responsible for all major decisions regarding drilling and well control at the Macondo well.

## **ANSWER**

The BP Parties deny the allegations of this paragraph.

54.    In operating the Macondo well, the BP Parties failed to meet their duties and responsibilities. The BP Parties were negligent in at least the following ways:

(a)    Failing to exercise ordinary and reasonable care in connection with designing and executing the Macondo well;

(b)    Failing to exercise reasonable care while conducting drilling operations to ensure that a blowout did not occur;

(c)    Failing to exercise reasonable care after the blowout to prevent an oil spill from occurring;

(d)    Failing to exercise reasonable care to quickly contain the oil that spilled from the Macondo well;

(e)    Failing to exercise reasonable care to ensure that adequate safeguards, protocols, and resources would be available to respond to and mitigate the effects of an uncontrolled oil spill from the Macondo well;

(f)    Failing to properly interpret pressure tests relating to well control and integrity;

(g)    Failing to adequately train employees in management of the *Deepwater Horizon*'s complex systems;

(h)    Failing to take appropriate action to avoid the release of oil into the Gulf of Mexico;

(i)    Failing to timely control the release of oil;

(j)    Failing to exercise reasonable care in designing, operating, and executing the relief and recovery efforts following the oil spill; and

(k)    Violating applicable statutes, regulations, and industry standards.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

55.     The *Deepwater Horizon* explosion and the subsequent oil spill resulted from the negligence of the BP Parties as set forth above.  M-I was not negligent and was not at fault in the explosion or oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

56.     As a result of the BP Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the BP Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

57.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the BP Parties, to the extent of those parties' adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

**COUNT IV**
**(Against The Anadarko Parties and the MOEX Parties for Contribution/Indemnification)**

58.     Paragraphs 1-57 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 57 as if fully set forth

herein.

59.     Cross-Defendants the Anadarko Parties were co-lessees under the terms of the lease executed on May 8, 2008 by BP, as lessee, and the United States, as lessor, for oil and gas

exploration and production at the Macondo well site.  Cross-Defendant Anadarko Exploration & Production held a 22.5% interest in the lease as of April 20, 2010. Cross-Defendant Anadarko Petroleum Corporation held a 2.5% interest in the lease as of April 20, 2010.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these

allegations are not directed at the BP Parties.


60.    Cross-Defendant MOEX Offshore 2007 LLC was also a co-lessee of the Macondo well, holding a 10% interest in the lease as of April 20, 2010.  Cross-Defendant MOEX USA is the parent corporation of MOEX Offshore.  Cross-Defendant Mitsui is a parent corporation and/or alter ego of MOEX USA.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these

allegations are not directed at the BP Parties.


61.    The BP Parties, the Anadarko Parties, and the MOEX Parties entered into a Joint Operating Agreement ("JOA").  The JOA required the BP Parties to obtain the approval of the Anadarko Parties and the MOEX Parties in order to proceed with nondiscretionary operations in connection with the lease, including by seeking the authorization of the Anadarko Parties and the MOEX Parties for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations.  The JOA also provided that the parties would share any oil and gas discovered in connection with the lease and any losses in amounts proportionate to each party's interest.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these

allegations are not directed at the BP Parties.


62.    The JOA also required BP to provide the Anadarko Parties and the MOEX Parties with detailed technical information regarding operations performed in connection with the lease. The Anadarko Parties and the MOEX Parties had the right to obtain and did obtain "real time" data as set forth in the JOA.  The Anadarko Parties and the MOEX Parties received detailed technical information regarding operations at the Macondo well, including daily reports, access to a secure web site containing sampling and other data, and access to other real time data from the *Deepwater Horizon*.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

63.     The JOA provided for the prompt invoicing by the BP Parties of costs incurred under the JOA and prompt payment by the Anadarko Parties and the MOEX Parties of their agreed-upon share.  The JOA also provided the Anadarko Parties and the MOEX Parties with a mechanism to object to, prevent, control, address, and abate discharges of oil or health and safety issues.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

64.     The Anadarko Parties and the MOEX Parties each designated the BP Parties as their operator and local agent, with full authority to act on their behalf in complying with the requirements of the lease and applicable regulations.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

65.     The Anadarko Parties and the MOEX Parties are fully liable for the acts and omissions of their agents the BP Parties, including the negligence of the BP Parties.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

66.     Furthermore, the Anadarko Parties and the MOEX Parties were negligent because they knew of, approved, and authorized the BP Parties' negligent design and operation of the well; and because they knew or should have known of the presence of hydrocarbons in the well on the night of April 20, 2010 and failed to warn the crew of the vessel of the imminent blowout.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

67.     The *Deepwater Horizon* explosion and the subsequent oil spill resulted from the negligence of the Anadarko Parties and the MOEX Parties as set forth above.  M-I was not negligent and was not at fault in the explosion or oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

68.     As a result of the Anadarko Parties' and the MOEX Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Anadarko Parties and the MOEX Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

69.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Anadarko Parties and the MOEX Parties, to the extent of those parties' adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

**COUNT V**
**(Against Halliburton for Contribution/Indemnification)**

70.     Paragraphs 1-69 are incorporated herein as if fully set forth.

**<u>ANSWER</u>**

The BP Parties incorporate their answers to paragraphs 1 through 69 as if fully set forth herein.

71.    Halliburton was responsible for providing cementing services on the *Deepwater Horizon*.  These cementing services included providing technical advice about the design, placement, modeling, and testing of the cement that was in use at the Macondo well at the time of the blow-out.  Halliburton was engaged in cementing operations at the time of the blow-out. Halliburton was also responsible for mud logging personnel and equipment on the *Deepwater Horizon*, and partially responsible for monitoring mud operations on the *Deepwater Horizon.*

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

72.    Halliburton breached its duty of reasonable care in planning, supervising, and engaging in cementing operations on the *Deepwater Horizon*.  Among other things, Halliburton was negligent in:

> (a)    Failing to properly design the cement for the conditions at the Macondo well, including designing cement that was unstable and prone to nitrogen breakout;
>
> (b)    Adding defoamer which destabilized the foam cement slurry;
>
> (c)    Failing to add appropriate loss control additives;
>
> (d)    Failing to properly test the cement slurry design;
>
> (e)    Pouring cement that was unstable and that Halliburton knew or had reason to believe was unstable;
>
> (f)    Failing to properly evaluate the effectiveness of its cement job;
>
> (g)    Failing to provide personnel who were competent and adequately trained;
>
> (h)    Failing to properly monitor the status of the well, including by abandoning its station at a critical time during the capping of the well;

(i)     Missing or ignoring data indicators and alarms that indicated the well was flowing; and

(j)     Failing to take appropriate steps to ensure that its conduct did not lead to blowout, explosion, or uncontrolled well condition.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

73.     As a result of Halliburton's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Halliburton for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

74.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Halliburton, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

## COUNT VI
### (Against Cameron for Contribution/Indemnification)

75.     Paragraphs 1-74 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 74 as if fully set forth herein.

76.    Cameron manufactured, designed, supplied, and installed the *Deepwater Horizon*'s blow-out preventer (BOP).  Cameron contracted with Transocean Deepwater Drilling for the provision of the BOP that was installed at the Macondo wellhead.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

77.    Cameron breached its duty of reasonable care in connection with the design, manufacture, and supply of the BOP, and this negligence caused the blow-out and the subsequent oil spill. M-I was not negligent and was not at fault in the explosion or oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

78.    Cameron failed to ensure that the BOP was suitable for use at the Macondo wellhead; failed to provide adequate warnings, instructions, and guidelines regarding use of the BOP; and failed to design the BOP to function as it was intended to do.  As a result, the BOP was defective and unreasonably dangerous when supplied.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

79.    As a result of Cameron's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Cameron for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

80.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Cameron, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

## COUNT VII
### (Against the Weatherford Parties for Contribution/Indemnification)

81.     Paragraphs 1-80 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 80 as if fully set forth herein.

82.     The Weatherford Parties designed, manufactured, marketed, and distributed the casing components (such as the float collar, shoe, and centralizers), and provided the personnel and equipment for running these components into the well bore.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

83.     The Weatherford Parties breached their duty of reasonable care in connection with the design and manufacture of the float collar, and this negligence caused the blow-out and the subsequent oil spill.  As a result, the float collar failed to seal the well properly, which allowed hydrocarbons to back-flow into the casing.  The float collar was defective and unreasonably dangerous as supplied because it failed to operate as intended.  M-I was not negligent and was not at fault in the explosion or oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

84.     As a result of the Weatherford Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Weatherford Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

85.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Weatherford Parties, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

**COUNT VIII**
**(Against Dril-Quip for Contribution/Indemnification)**

86.     Paragraphs 1-85 are incorporated herein as if fully set forth.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 85 as if fully set forth herein.

87.     Dril-Quip was involved in providing wellhead systems to the *Deepwater Horizon* at the Macondo well.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

88.     Dril-Quip breached its duty of reasonable care while participating in drilling operations at the Macondo well. The wellhead systems Dril-Quip provided failed to operate,

26

were improperly designed, and/or were defective and unreasonably dangerous as supplied because they failed to operate as intended.  M-I was not negligent and was not at fault in the explosion or oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

89.     As a result of Dril-Quip's negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from Dril-Quip for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

90.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from Dril-Quip, to the extent of its adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

**COUNT IX**
**(Against The Transocean Parties for Contribution/Indemnification)[2]**

91.     Paragraphs 1-90 are incorporated herein as if fully set forth.

---

[2]     M-I filed a cross-claim against the Transocean Parties in the Limitation Action only on April 20, 2011, pursuant to the Stipulated Order of March 24, 2011.  In an abundance of caution, M-I files its cross-claim against the Transocean Parties here to make it applicable to the other complaints and pleadings in MDL 2179.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 90 as if fully set forth herein.

92.     The Transocean Parties were at all material times the Owners, Managing Owners, Owners Pro Hac Vice, and/or Operators of the *Deepwater Horizon*.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

93.     When the *Deepwater Horizon* explosion occurred on April 20, 2010, the Transocean Parties were the owners and/or operators of the rig.  In addition to providing the *Deepwater Horizon* itself, the Transocean Parties also conducted, participated in, supervised, and/or oversaw drilling activities, made or participated in critical decisions regarding same, and had personnel and equipment on the *Deepwater Horizon*, and were otherwise directly involved in the *Deepwater Horizon*'s drilling operations at the Macondo well.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

94.     The Transocean Parties breached their duty of reasonable care in conducting, participating in, supervising, and overseeing drilling operations on the *Deepwater Horizon*. The Transocean Parties failed to take reasonable steps to ensure that the drilling operations conducted on April 20, 2010 were done in a reasonably safe manner, and failed to mitigate the risk of blowout and oil spill that led to Plaintiffs/Claimants' alleged damages.  The Transocean Parties' negligence caused, in whole or in part, the blowout and the subsequent oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

95.     The Transocean Parties breached their duty to at all times maintain the *Deepwater Horizon* in a seaworthy condition.   The unseaworthy condition of the *Deepwater Horizon* caused, in whole or in part, the blowout and subsequent oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

96.     M-I denies that it is liable for any damages alleged by Plaintiffs/Claimants in the Amended B1 Master Complaint, for any damages alleged in the Rule 14(c) Third Party Complaint, for any damages alleged in applicable Bundle A and C complaints, and for any and all other claims for damages against M-I arising out of or associated with the *Deepwater Horizon* explosion and/or the resulting oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

97.     The alleged damages were caused, in whole or in part, by the conduct of the Transocean Parties, as alleged above.   As such, the Transocean Parties are or may be liable for all or part of the claims asserted against M-I, and M-I is entitled to indemnity from the Transocean Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

98.     In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Transocean Parties, to the extent of their adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

## COUNT X
**(Against The Responder Parties for Contribution/Indemnification)**

99.     Paragraphs 1-96 are incorporated herein as if fully set forth.

## ANSWER

The BP Parties incorporate their answers to paragraphs 1 through 96 as if fully set forth

herein.

100.     The Responder Parties participated in the remediation and response efforts that followed the blowout of the Macondo well.   Cross-Defendant NALCO manufactured the chemical dispersants that were used by the BP Parties in the clean-up and containment efforts that followed the blowout.

## ANSWER

The BP Parties deny the allegations of this paragraph solely on the grounds that these

allegations are not directed at the BP Parties.

101.     The Responder Parties breached their duty of reasonable care in performing their duties following the Macondo well blowout. The Responder Parties failed to exercise reasonable care, including but not limited to their conduct in designing, implementing, and executing the response and recovery efforts; failed to equip and protect against the harmful effects of crude oil, chemical dispersants, and other hazardous substances used or encountered in connection with the response efforts; failed to warn of the harmful effects of crude oil, chemical dispersants, and other hazardous substances used or encountered in connection with the response efforts; and failed to abide by the provisions of the National Contingency Plan and the regulatory standards set forth in the Clean Water Act and the Oil Pollution Act.  M-I was not negligent and was not at fault in the explosion or oil spill.

## ANSWER

The BP Parties deny the allegations of this paragraph solely on the grounds that these

allegations are not directed at the BP Parties.

102.     As a result of the Responder Parties' negligence that proximately caused or contributed to the *Deepwater Horizon* explosion and subsequent oil spill, M-I is entitled to indemnity from the Responder Parties for any and all damages that may be assessed against M-I as a result of the explosion and oil spill.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

103.    In the alternative, to the extent that M-I is found liable for any part of the alleged damages, M-I has a right to contribution from the Responder Parties, to the extent of their adjudicated proportion of liability, pursuant to general maritime law or other applicable law.

**ANSWER**

The BP Parties deny the allegations of this paragraph solely on the grounds that these allegations are not directed at the BP Parties.

## PRAYER FOR RELIEF

WHEREFORE, M-I LLC requests that Plaintiffs/Claimants take nothing by reason of their pleadings and/or that M-I be entitled to indemnity and/or contribution from the Cross-Defendants identified herein as to the claims of Plaintiffs/Claimants, and for all other relief as may be just and proper.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of Cross-Plaintiff's Cross-Claims fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU Deepwater Horizon, and/or unseaworthy conditions, breach of

contract or breaches of duty and breaches of warranty, express or implied, attributable to the Cross-Plaintiff and the negligence of employees, agents, officers and directors of Cross-Plaintiff. The aforesaid unseaworthiness and negligence was within the knowledge or privity of Cross-Plaintiff and accordingly, the Cross-Claims should be dismissed as to the BP Parties.

### THIRD DEFENSE

Cross-Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

### FOURTH DEFENSE

The events culminating in the injuries and damage to Cross-Plaintiff were not the result of any negligence, fault, or want of due care on the part of BP Parties.  Furthermore, Cross-Plaintiff has the burden of proof on this issue, and Cross-Plaintiff cannot meet that burden.

### FIFTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Cross-Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

### SIXTH DEFENSE

Cross-Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

### SEVENTH DEFENSE

To the extent the BP Parties are found liable to Cross-Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## TENTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

## ELEVENTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

## TWELFTH DEFENSE

Cross-Plaintiff's claims are barred, in whole or in part, because Cross-Plaintiff is not entitled under the law to the damages that it seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## THIRTEENTH DEFENSE

Cross-Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

## FOURTEENTH DEFENSE

The BP Parties deny that they are liable to any extent as alleged in the Cross-Claims, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by

Cross-Plaintiff as a result of the allegations contained in the Cross-Claims and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

Dated:  June 20, 2011                                  Respectfully submitted,

                                                       /s/ Don K. Haycraft_____
                                                       Don K. Haycraft (Bar #14361)
                                                       R. Keith Jarrett (Bar #16984)
                                                       LISKOW & LEWIS
                                                       701 Poydras Street, Suite 5000
                                                       New Orleans, Louisiana 70139-5099
                                                       Telephone: (504) 581-7979
                                                       Facsimile: (504) 556-4108

                                                       and

                                                       Richard C. Godfrey, P.C.
                                                       J. Andrew Langan, P.C.
                                                       Timothy A. Duffy, P.C.
                                                       Kirkland & Ellis LLP
                                                       300 North LaSalle Street
                                                       Chicago, IL 60654
                                                       Telephone: (312) 862-2000
                                                       Facsimile: (312) 862-2200

                                                       and

                                                       Robert C. "Mike" Brock
                                                       Covington & Burling LLP
                                                       1201 Pennsylvania Avenue, NW
                                                       Washington, DC 20004-2401
                                                       Telephone: (202) 662-5985

                                                       *Attorneys for the BP Parties*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

/s/  Don K. Haycraft