**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


In re:   Oil Spill by the Oil Rig "Deepwater     :          MDL No. 2179
      Horizon" in the Gulf of Mexico, on        :
      April 20, 2010                            :          SECTION: J
                                                :
This Document Relates To:                        :          JUDGE BARBIER
No. 10-2771 (Limitation Action)                  :          MAGISTRATE JUDGE SHUSHAN
……………………………………………...


**MEMORANDUM IN SUPPORT OF BP'S MOTION TO DISMISS ANADARKO'S**
**CROSSCLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**
**AND IMPROPER VENUE**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT..................................................................................................................................8

I.       BP Has Not Waived Its Arbitration Rights.......................................................................8

         A.       Anadarko Should Be Judicially Estopped from Arguing that BP's
                  Discovery Somehow Waived its Arbitration Rights.................................................9

         B.       BP's Discovery Is Consistent with the Magistrate Judge's Order re Motion
                  to Compel, and Is Therefore Consistent with Its Arbitration Rights. ....................10

         C.       BP Has Sought Only Minimal Discovery From Anadarko. ...................................12

         D.       Anadarko Has Not Been Prejudiced in Any Way by BP's Conduct. .....................13

II.      Rules 12(b)(1) and 12(b)(3) Permit the Court to Dismiss All Arbitrable Claims. ............13

III.     BP p.l.c. Is Not a Proper Party to this Case. ....................................................................14

CONCLUSION.............................................................................................................................15

**INTRODUCTION**

Anadarko's crossclaims against BP should be dismissed because they are subject to a mandatory arbitration agreement. BP has filed a motion to stay these same claims, and that motion is still pending. But Fifth Circuit precedent is clear that dismissal of arbitrable claims is a valid alternative to granting a stay. The arguments that support a stay are in many respects the same as those supporting this Motion to Dismiss. In the end, whether the Court decides to stay Anadarko's claims or dismiss them, the effect remains the same: Anadarko should be forced to arbitrate its claims against BP.

Last Thursday, the Court issued an initial order on BP's motion to stay, affirming that the Operating Agreement's arbitration clause governs the parties' disputes. The Court's order "conclude[d], essentially for the reasons advanced by BP, that the[ arbitration] provisions of [the] JOA constitute a 'broad' arbitration clause covering all disputes between the parties having a significant relationship to the contract." (MDL 2179 Dkt. 2774 at 2–3.)

In its sur-reply brief in opposition to the motion, however, Anadarko raised for the first time an argument that BP had waived its right to compel arbitration. The Court, in its order, asked for further briefing on the issue of whether BP "somehow waived its right to compel arbitration by its previous conduct in this litigation." (MDL 2179 Dkt. 2774 at 3.) The parties are to submit supplemental briefing on July 6 on the issue of waiver.

From the outset, BP has acted consistent with its intent to arbitrate, and has explicitly asserted its right to arbitrate its disputes with Anadarko for months. BP initiated the alternative dispute resolution procedure required by the Operating Agreement, including serving a "Notice of Dispute" on April 1, 2011, and has refrained from filing any claims against Anadarko in court. The discovery BP has sought from Anadarko was sought only after Magistrate Judge Shushan ordered that discovery between BP and Anadarko related to MDL defenses is consistent with a

1

stay of all claims between BP and Anadarko pending arbitration.  Under Fifth Circuit case law, BP's conduct does not even raise serious questions about BP's right to arbitrate, much less constitute waiver.  *See infra* Part I.

Because the claims are arbitrable, they should be dismissed.  The Fifth Circuit has consistently approved of dismissing arbitrable claims.  The claims should be dismissed under Federal Rule 12(b)(3) because this Court is an improper venue, and under Rule 12(b)(1) because the Court lacks subject matter jurisdiction.  *See infra* Part II.

Finally, at a minimum, Anadarko's crossclaims should be dismissed as against BP p.l.c.  Anadarko has pled almost no particularized allegations against BP p.l.c., and it is not a proper party to this case.  *See infra* Part III.

### STATEMENT OF FACTS

As the Court knows, the Anadarko cross-claimants[1] became co-owners of the Macondo lease and entered into an Operating Agreement[2] with BPXP.[3]  As the Court has also found (MDL 2179 Dkt. 2774), the JOA contains an arbitration clause prohibiting the parties from litigating their disputes relating to the Macondo prospect in court. (Operating Agreement art. 22.9, Ex. H (Boles Decl. Ex. A at 144, 216–224).)  The arbitration provision also bars "resort to court remedies" except in certain narrowly-defined situations.  (*Id.* Ex. H § I.A(i) (Boles Decl. Ex. A at 216).)

---

[1] Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AEP").

[2] Macondo Prospect Offshore Deepwater Operating Agreement (Boles Decl. Ex. A); *see also* Ratification and Joinder of Operating Agreement (Boles Decl. Ex. B).

[3] BP Exploration & Production Inc.

The parties have filed a total of seven briefs over the last nine weeks pertaining to the issue of whether the JOA arbitration clause bars Anadarko from litigating its crossclaims.[4]  It was not until Anadarko filed a "sur-reply" opposing BP's motion to stay—the last of those seven briefs—that Anadarko raised, for the first time, the argument that BP's right to arbitrate had been waived.  (*See* MDL 2179 Dkt. 2662 at 7–8.)  While Anadarko had referred to BP "discovery against Anadarko" in its earlier briefing, it never suggested that the conduct constituted waiver.  Indeed, it did the opposite.  In order to promote its motion to compel discovery against BP, Anadarko argued that BP's conduct showed that discovery in the MDL was *consistent* with the parties' agreement to arbitrate their disputes.  (MDL 2179 Dkt. 1965-1 at 3–4, 14–15; MDL 2179 Dkt. 2278 at 17–19; MDL 2179 Dkt. 2353 at 12–14.)[5]

BP has already begun the arbitration process required by the Operating Agreement.  On April 1, BPXP—in fulfillment of a prerequisite to arbitration under the JOA—sent Anadarko a "Notice of Dispute."  (*See* Operating Agreement Ex. H § I.C (Boles Decl. Ex. A at 217).)  Anadarko responded on April 16, 2011, itself following the Operating Agreement procedures by designating a "Management Representative" to engage in negotiations with BPXP.  (*See id.*)  Meanwhile, BP refrained from filing crossclaims against Anadarko in these MDL proceedings, even though BP filed crossclaims against other defendants.

---

[4] Anadarko filed a motion to compel on April 15, 2011.  (MDL 2179 Dkt. 1965-1.)  BP filed a combined motion to stay and opposition to Anadarko's motion to compel on April 27.  (MDL 2179 Dkt. 2169-1.)  On May 9, Anadarko filed its reply in support of its motion to compel, and BP filed its sur-reply.  (MDL 2179 Dkts. 2278, 2310.)  On May 12, Anadarko filed its opposition to BP's motion to stay.  (MDL 2179 Dkt. 2353.)  On May 27, BP filed its reply in support of its motion to stay.  (MDL 2179 Dkt. 2562.)  And on June 6, Anadarko filed a sur-reply.  (MDL 2179 Dkt. 2662.)

[5] Anadarko did, in its opposition to BP's motion to stay, reference the possibility of a waiver argument, but stated that "it [was] not yet clear whether BP's legal theory [with respect to its Transocean contract] means that it, too, has waived the right to arbitration."  (MDL 2179 Dkt. 2353 at 13 n.9.)  This statement, too, shows that Anadarko did not believe BP's conduct constituted a waiver.

Indeed, it is Anadarko whose statements to the Court have been most illustrative of how nothing done in this litigation by BP can amount to waiver.  Prior to belatedly raising its "waiver" argument in its sur-reply, when Anadarko was still trying to get Magistrate Judge Shushan to permit Anadarko's discovery against BP, Anadarko was emphatic that conducting discovery was *consistent* with contractual arbitration—the very antithesis of its recent contention of "waiver."  For example, on April 15, 2011, Anadarko brought a motion to compel against BP America Inc. ("BPA"), BPXP, BP America Production Company ("BPAP"), and BP p.l.c. (together, "BP").  (MDL 2179 Dkt. 1965.)  The motion sought additional discovery responses beyond those provided by BP on February 22, 2011.  BP opposed Anadarko's motion to compel on the basis that Anadarko had agreed to arbitrate its disputes with BP, and had promised in the Operating Agreement "not resort to court remedies."  (MDL 2179 Dkts. 2169-1, 2310.)  Anadarko retorted that discovery was compatible with the Operating Agreement's arbitration requirement.  Anadarko pointed to four instances of BP's supposed "discovery" to support the proposition that discovery and arbitration can coexist.  Now Anadarko has reversed course 180 degrees and points to the same "discovery" as somehow indicating BP's intent to waive arbitration.

The four BP "discovery" actions alleged by Anadarko in its opening brief were that: (1) "BP responded to [interrogatories and requests for production] served" by Anadarko; (2) "BP has not raised any objection when [Anadarko] participated in the questioning of BP witnesses"; (3) BP included in its "List of Potential Priority Deponents" four "employees or representatives of" Anadarko; and (4) "BP . . . has served discovery requests on other parties seeking evidence about" Anadarko. (Dkt. 1965-1 at 3–4, 14–15.)  Anadarko argued that these actions showed that Anadarko has not "sought information beyond the proper scope of discovery," that "discovery by

4

and between the parties to the [Operating Agreement] is relevant to defending against the plaintiffs' claims," and that BP did not "truly believe[] that the [Operating Agreement] prohibited the parties bound by its arbitration provisions from pursuing <u>any</u> discovery." (*Id.* at 3, 14 (emphasis in original).)  And again in its May 9, 2011 reply in support of its motion to compel, Anadarko argued that BP should not "be prohibited from retaining the discovery it has sought and obtained; rather, [Anadarko is] entitled to no less in their defense against the plaintiffs' claims." (MDL 2179 Dkt. 2278 at 19.) Throughout pursuing its motion to compel, Anadarko argued that BP's conduct was *consistent with* arbitration, never suggesting that the actions were a waiver of BP's arbitration rights.

On April 19, 2011, Anadarko filed a "Claim, Answer and Cross-Claims" in this Limitation Action.  (Dkt. 338.)  The first 16 crossclaims in Anadarko's pleading name as defendants BPXP, BPAP, and BP p.l.c.  (*Id.* at 27–37.)  BP moved to stay all litigation between BP and Anadarko on April 27, including the 16 crossclaims Anadarko had filed against BP, due to the Operating Agreement's arbitration clause.  (MDL 2179 Dkt. 2169.)

True to its arguments in support of its motion to compel, on May 12 Anadarko opposed the motion to stay, pointing to the same discovery conduct it identified in support of its motion to compel.[6]  Anadarko argued that "litigating gross negligence and proportional fault" in the MDL is *not* "exclusively reserved for future arbitrations under the Operating Agreement," and called it "extraordinary" that BP would assert "that it is a breach of the Operating Agreement for [BP and Anadarko] to take any discovery that might be used against one another." (MDL 2179 Dkt. 2353 at 12–13.)

---

[6] Anadarko also pointed to deposition questions BP asked of a Halliburton employee, Jesse Gagliano, as another example of BP's seeking evidence from other parties about Anadarko.

And while Anadarko was serving significant discovery on BP (ultimately, eight sets totaling 122 requests for documents, 62 requests for admissions, and 66 interrogatories), BP did not serve a single set of written discovery on Anadarko until the very last day permitted by this Court's scheduling order. And even then, on April 29, BP informed Anadarko in boldfaced capital letters that no response was required until the arbitrability issues were resolved: ***BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO THIS DISCOVERY UNLESS OR UNTIL THE COURT DENIES BP'S MOTION TO STAY LITIGATION***. (Boles Decl. Ex. C (emphasis in original).) Nor has BP, at any point, noticed a single deposition of an Anadarko witness.[7]

On May 13, Magistrate Judge Shushan granted Anadarko's motion to compel, holding that Anadarko could obtain from BP discovery related to other claims properly pending in the MDL. (MDL 2179 Dkt. 2358.) The Magistrate Judge held that "[t]he arbitration agreement does not prevent the Non-Operators from discovering evidence from BP relevant to their defenses of the claims made against them by parties other than BP simply because the evidence is relevant to an arbitration with BP"; "[d]iscovery that is relevant to pending litigation is not barred merely because it is relevant to an arbitration proceeding." (*Id.* at 4.)[8] In her analysis, the Magistrate Judge assumed, without deciding, that Anadarko's crossclaims are arbitrable. (*See id.* at 2–3 (assuming the claims were arbitrable).) Thus her ruling stands for the proposition that certain discovery is not incompatible with the contractual arbitration clause, contrary to the argument now advanced by Anadarko.

---

[7] BP did include four Anadarko employees on a court-ordered, non-binding "Master List of Potential Deponents." (*See* MDL 2179 Dkt. 1346 (Feb. 11, 2011 Discovery Conference Tr.) at 48 (Magistrate Judge: "Everybody knows that these are nonbinding lists.").) Notably, *other parties*, not BP, served deposition notices on those employees.

[8] *See id.* at 6 ("[The Operating Agreement] does not preempt the right of the Non-Operators to obtain discovery from BP relevant to the claims made in MDL 2179 by parties other than BP even though the discovery is relevant to the arbitrable claims.").

6

Until the Magistrate Judge issued her order, BP did not examine a single Anadarko deponent. After the order permitting discovery between BP and Anadarko, BP questioned Robert Quitzau, an Anadarko drilling engineer, for approximately 75 minutes of his two-day deposition. (Quitzau Dep. 367:7–443:6 (Boles Ex. D).) BP did not ask questions concerning Anadarko's failure to comply with its obligation to pay its share of the joint interest billings, relating to Anadarko's numerous breaches of the Operating Agreement, or in any other way related exclusively to arbitrable issues. Instead, according to Anadarko, BP's questions went to "Anadarko's knowledge and/or approval of BP's conduct," including "Anadarko's ability to monitor the well and its position on various safety decisions made by BP." (MDL 2179 Dkt. 2662 (Anadarko's Sur-Reply in Opp'n to BP's Mot. to Stay) at 7–8.) BP's questions went to its defenses of the claims against it in the MDL.

On May 27, BP filed its reply in support of its motion to stay. (MDL 2179 Dkt. 2562.) Because of the intervening order on Anadarko's motion to compel, BP narrowed its requested stay to "(a) the affirmative claims brought by Anadarko against BP, and (b) discovery by Anadarko that does not relate to its defenses against the claims of other parties in this litigation." (*Id.* at 1.)

On June 6, 2011, Anadarko filed a sur-reply opposing BP's motion to stay. (MDL 2179 Dkt. 2662.) After seven weeks and six briefs—and after it was too late for BP to submit a response—Anadarko for the first time asserted that BP had "waived" its rights to arbitration. (*Id.* at 7.) Importantly, this was the first brief that Anadarko had filed since the Magistrate Judge's order permitting Anadarko to seek discovery from BP. Pointing to essentially the same actions that it had previously,[9] plus BP's recent examination of Mr. Quitzau, Anadarko now argues that

---

[9] Anadarko no longer mentioned BP's inclusion of Anadarko employees on a Master List of Potential Deponents, or its allowance of Anadarko questions at depositions of BP employees.

BP's conduct somehow constitutes "substantial discovery" that warrants waiver.  Anadarko did

not, and could not, argue that BP's discovery was *unrelated* to its defenses in the MDL, instead

arguing only that the discovery *was* related to arbitrable issues.  (*Id.* at 7–8.)  Until now, BP has

not had an opportunity to respond to Anadarko's unsupported charges.

On June 16, 2011, the Court issued an order regarding BP's motion to stay.  (MDL 2179

Dkt. 2774.)  In that order, "[t]he Court conclude[d], essentially for the reasons advanced by BP,

that the[ arbitration] provisions of [the] JOA constitute a 'broad' arbitration clause covering all

disputes between the parties having a significant relationship to the contract."  (*Id.* at 2–3.)  The

Court, however, left open a single issue with respect to whether Anadarko's crossclaims are

arbitrable:  whether BP has "somehow waived its right to compel arbitration by its previous

conduct in this litigation."  (*Id.* at 3.)  The Court ordered further briefing on that issue, which will

be submitted on July 6.  (*Id.*)

Pursuant to the Court's pretrial orders, BP must respond to Anadarko's crossclaims by

June 20, 2011—before the Court will resolve BP's motion to dismiss.  Accordingly, BPXP,

BPAP, and BP p.l.c. bring the present motion to dismiss Anadarko's crossclaims against BP on

the basis that they are arbitrable.

**ARGUMENT**

**I.      BP HAS NOT WAIVED ITS ARBITRATION RIGHTS.**

The Court has already ruled that Anadarko's crossclaims against BP are subject to the

arbitration clause in the Operating Agreement.  After the Court's June 16, 2011 order, the only

remaining issue is whether BP has waived its right to compel arbitration.  (MDL 2179 Dkt.

2774.)  It has not.

The Fifth Circuit has held that a party waives its arbitration rights only when it "invoke[s]

the judicial machinery to the detriment or prejudice of the other party."  *Keytrade USA, Inc. v.*

8

*Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (internal quotation marks omitted).  To have waived its arbitration rights, BP must have acted inconsistently with an intent to arbitrate. *See id.*  "There is a well-settled rule in this circuit that waiver of arbitration is not a favored finding, and there is a presumption against it." *Id.* (internal quotation marks omitted).  Anadarko has not met this high burden.

Anadarko's waiver argument fails for four independent reasons.  First, having prevailed on its motion to compel discovery based on the contention that the Operating Agreement arbitration clause did not preclude discovery, Anadarko should be judicially estopped from taking a position—that discovery waives arbitration—that presumes the contrary.  Second, all of BP's discovery has been related to defending against claims in the MDL, and it is therefore completely consistent with the Magistrate Judge's order, which was based on a premise of arbitrability.  Third, BP's conduct involves only discovery, and of that, a modest, even minimal amount, given the scope of this case, and comes nowhere near the type of substantial conduct that cases have required to find waiver.  And fourth, Anadarko has not shown any cognizable prejudice.[10]

### A.    Anadarko Should Be Judicially Estopped from Arguing that BP's Discovery Somehow Waived its Arbitration Rights.

In its motion to compel discovery responses from BP, Anadarko advocated for, and received, a ruling from the Magistrate Judge that permitted discovery on issues related to the claims properly pending in the MDL—even if those issues also related to arbitrable claims. (MDL 2179 Dkt. 2358.)  In fact, Anadarko explicitly argued that the parties' right to obtain

---

[10] In opposing BP's motion to stay, Anadarko argued that BP's arguments here are inconsistent with its position that Transocean has waived its rights to arbitration.  But Transocean has filed three separate complaints against BP, while BP has not filed any claims against Anadarko.  Transocean also has argued that its arbitration clause with BP prohibits discovery, while at the same time taking dozens of depositions of BP witnesses.  By contrast, BP did not depose any Anadarko witnesses until after the Magistrate Judge ordered discovery between Anadarko and BP.

discovery from one another in this proceeding is consistent with their obligation to arbitrate disputes.  Anadarko argued that its discovery requests to BP were not "beyond the proper scope of discovery," that "discovery by and between the parties to the [Operating Agreement] is relevant to defending against the plaintiffs' claims," and that BP did not "truly believe[] that the [Operating Agreement] prohibited the parties bound by its arbitration provisions from pursuing any discovery."  (MDL 2179 Dkt. 1965-1 at 3, 14 (emphasis in original).)  And again in its May 9, 2011 reply in support of its motion to compel, Anadarko argued that BP should not "be prohibited from retaining the discovery it has sought and obtained; rather, [Anadarko is] entitled to no less in their defense against the plaintiffs' claims."  (MDL 2179 Dkt. 2278 at 19.)

Anadarko prevailed on that motion, convincing the Magistrate Judge that "[d]iscovery that is relevant to pending litigation is not barred merely because it is relevant to an arbitration proceeding."  (MDL 2179 Dkt. 2358 (Order re Motion to Compel) at 4.)  Having sought and obtained this relief from the Court, Anadarko is judicially estopped from taking the contrary view now.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (internal quotation marks omitted)).

**B.      BP's Discovery Is Consistent with the Magistrate Judge's Order re Motion to Compel, and Is Therefore Consistent with Its Arbitration Rights.**

The Magistrate Judge has ruled that BP and Anadarko can conduct discovery on one another so long as that discovery is relevant to their respective defenses to the claims pending against them in this MDL.  (MDL 2179 Dkt. 2358.)  That decision presumed, without deciding, that the disputes between BP and Anadarko were arbitrable.  (*Id.* at 3.)  Thus, BP's seeking of

10

discovery related to its defenses is completely consistent with its right to arbitrate, and therefore cannot suggest any waiver of that right.

And BP's discovery has all been related to its MDL defenses.  BP is seeking discovery from Anadarko related to, in Anadarko's words, "Anadarko's ability to monitor the well and its position on various safety decisions made by BP."  (MDL 2179 Dkt. 2662 (Sur-Reply) at 8.) And Anadarko has already conceded that these topics are relevant to the MDL.  According to Anadarko, the issue of "what decisions and conduct [Anadarko] did and did not have information about, as well as the extent, timing and completeness of the information [it] did have" is "*necessary*" to its MDL defense.  (Dkt. 2278 at 6; *see id.* at 5 (noting that Anadarko's knowledge and approval of BP conduct is "directly targeted to . . . allegations made by the plaintiffs against which [Anadarko] must defend").)   BP, therefore, is acting completely consistently with the Magistrate Judge's order by now seeking discovery from Anadarko on this issue.  The fact that BP's discovery is *also* related to issues that will be arbitrated is no longer of any import.[11]

To be clear, BP initially sought and would welcome an order from this Court holding that all discovery related to arbitrable claims is barred—even if it also relates to issues in the MDL. But even if the Court did make such a ruling, Anadarko's waiver argument would fail.  BP took actions in accordance with, and in reliance on, the Magistrate Judge's order to begin seeking discovery from Anadarko on issues related to its MDL defenses.  Even if that order is later overruled, it does not alter the fact that BP's reliance on the order to take discovery was not an act evidencing any intent to waive arbitration.

---

[11] BP's conduct in seeking discovery from Anadarko also comes too late—being after BP filed its motion to stay— to be of relevance to a waiver argument.  (*See infra* Part I.C.)

### C.     BP Has Sought Only Minimal Discovery From Anadarko.

A party can only be found to waive its arbitration rights if it "substantially utilize[s] the legal process *before moving for a stay*." *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985) (emphasis added).  Before moving for a stay in this case, BP engaged in *no* discovery against Anadarko.  The only pre-motion conduct that Anadarko has identified is (1) sending *Halliburton* a single request for production that mentioned Anadarko,[12] (2) sending *Transocean* a single request for production that called for communications between Transocean and "*any other third party*," without any reference to Anadarko, and (3) adding four Anadarko employees to a non-binding "Master List of Potential Deponents."[13]  In *Tenneco*, however, a party had engaged in eight months of discovery before seeking a stay.  Nevertheless, the Fifth Circuit held that "this and other courts have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate."  *Id.* at 420–21 (collecting cases).  The conduct BP engaged in before filing its motion to stay simply does not rise to the level required for this Court to find a waiver.

And after BP's motion to stay was filed, its discovery was still restrained.  Once again, the discovery conduct that Anadarko has raised is minimal:  (1) BP asked a handful of questions of a *Halliburton* deponent mentioning Anadarko, and (2) after the Magistrate Judge ruled that discovery was compatible with the arbitration clause, BP spent 75 minutes during a two-day deposition questioning an Anadarko witness.  BP also served requests for production on Anadarko, but those requests were explicitly contingent on the Court's resolution of the parties' disagreement over whether discovery should proceed *notwithstanding* the ongoing arbitration

---

[12] This request was served on April 3, 2011, two days *after* BP had already initiated the contractual arbitration process with Anadarko.

[13] On a conference call on June 17, Anadarko's attorney, W. Anthony Fitch, represented that Anadarko no longer intends to argue that BP's *responses* to Anadarko's discovery affect the waiver issue.

process.  (Boles Decl. Ex. C.)  Even if the Court were to consider this conduct that dates from after BP unquestionably signaled its definitive intent to arbitrate by filing its motion to stay, BP's conduct still does not constitute the "substantial" conduct necessary to find waiver.

> **D.      Anadarko Has Not Been Prejudiced in Any Way by BP's Conduct.**

Having already had four opportunities to do so, Anadarko has not presented a single argument suggesting it was somehow prejudiced by BP's conduct in the MDL.  (*See* MDL 2179 Dkt. 2662 (Anadarko's Sur-Reply) at 7–8.)  Nor could Anadarko present any such argument. The small amount of discovery that BP has sought from Anadarko, and the usefulness of that discovery in the MDL, means that Anadarko has not suffered any harm.

## II.     RULES 12(B)(1) AND 12(B)(3) PERMIT THE COURT TO DISMISS ALL ARBITRABLE CLAIMS.

It is well settled that, when a claim must be submitted to arbitration, the claim can be dismissed.  *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 37 (5th Cir. 1997) (per curiam)[14]; *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Blaustein v. Huete*, 2009 WL 2982928, at *3 (E.D. La. Sept. 11, 2009) (Barbier, J.) ("[A] dismissal of all claims is the most appropriate remedy to resolve this dispute; all the claims . . . are covered under the [arbitration] agreement.").  Courts in the Fifth Circuit have granted motions to dismiss arbitrable claims under both Federal Rule 12(b)(3) for improper venue, as well as under Rule 12(b)(1) for lack of subject matter jurisdiction.

The Fifth Circuit has confirmed that arbitrable claims can be dismissed under Rule 12(b)(3) because venue in federal court is improper.  *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d

---

[14] *Mitsui & Co.* concerned a forum-selection clause, but the Supreme Court has confirmed that an arbitration clause is a species of forum-selection clause.  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

898, 902 (5th Cir. 2005) ("[O]ur court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause . . . ."). Rule 12(b)(3) thus permits the dismissal of Anadarko's claims against BP.

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of a claim for lack of subject matter jurisdiction. Some courts have held that arbitrable claims can be dismissed for lack of subject matter jurisdiction under Federal Rule 12(b)(1). *E.g.*, *Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*, 255 Fed. App'x 24, at 25–26 (5th Cir. 2007) (affirming dismissal under Rule 12(b)(1) due to arbitration clause); *Phelps v. Baton Rouge Radiology Group, Inc.*, 2011 WL 2174030, at *1, *5 (M.D. La. June 2, 2011) (dismissing claims under Rule 12(b)(1) due to arbitration clause); *Jones v. Fujitsu Network Commc'ns, Inc.*, 81 F. Supp. 2d 688, 689, 693 (N.D. Tex. 1999) (same); *Satarino v. A.G. Edwards & Sons, Inc.*, 941 F. Supp. 609, 610, 613–14 (N.D. Tex. 1996) (same); *see also AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 149, 152 (2d Cir. 1984) (affirming dismissal under Rule 12(b)(1) due to forum-selection clause); *Mercer v. Raildreams, Inc.*, 702 F. Supp. 2d 176, 177 (E.D.N.Y. 2010) (dismissing under Rule 12(b)(1) due to forum-selection clause). Accordingly, dismissal of Anadarko's claims against BP is also proper under Federal Rule 12(b)(1).

## III.   BP P.L.C. IS NOT A PROPER PARTY TO THIS CASE.

Anadarko's first 16 crossclaims are alleged equally "against BP," defined earlier by Anadarko to consist of BPXP, BPAP, and BP p.l.c. (Dkt. 338 at 8, 27–37.) But Anadarko's only particularized allegation against BP p.l.c. is that it is a "British Public Limited Company with its corporate headquarters in London, England." (Dkt. 338 at 8.) BP p.l.c. is not alleged to own any portion of the Macondo Prospect leasehold (it does not), BP p.l.c. is not alleged to have had any employees on the *Deepwater Horizon* (it did not), BP p.l.c. is not alleged to be a party to the drilling rig contract for the Macondo Prospect (it is not), BP p.l.c. is not alleged to be a

responsible party under the Oil Pollution Act (it is not), and BP p.l.c. is not alleged to be a party to the Operating Agreement (it is not).  There is no allegation—or basis for an allegation—that BP p.l.c. has violated any duty or obligation it owes to Anadarko.  Accordingly, Anadarko's crossclaims should be dismissed for failure to state a claim against BP p.l.c.[15]

## CONCLUSION

For the reasons above, as well as those set forth in BP's briefs on Anadarko's motion to compel and BP's motion to stay, the Court should dismiss Counts I through XVI of Anadarko's Crossclaims.

DATE:  June 20, 2011

By:   /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

---

[15] BP p.l.c. is specifically referenced again on page 33 of Anadarko's crossclaims.  But those allegations relate to *BPXP's* rights under the Operating Agreement to charge certain costs to Anadarko.

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for BP America Production
Company, BP Exploration & Production
Inc., and BP p.l.c.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 20th day of June 2011.


/s/ Martin R. Boles