# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig "Deepwater      :      MDL No. 2179
        Horizon" in the Gulf of Mexico, on       :
        April 20, 2010                            :      SECTION: J
                                                  :
This Document Relates To: All Cases AND No.      :      JUDGE BARBIER
        2:10-cv-2771 (*In re The Complaint And*   :      MAGISTRATE JUDGE SHUSHAN
        *Petition Of Triton Asset Leasing GmbH,*  :
        *et al.*)                                 :
                                                  :
                                                  :
…………………………………………………...   :

## THE BP PARTIES' ANSWER TO THE FIRST AMENDED
## CROSS-CLAIMS  OF DEFENDANT HALLIBURTON ENERGY SERVICES INC.

BP Exploration & Production Inc. ("BPXP"), BP America Production Company

("BPAP"), and BP p.l.c. ("collectively, the BP Parties"), by their undersigned Counsel, and,

pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer Halliburton Energy

Services, Inc.'s Original Cross-Claims as follows:

NOW COMES Defendant Halliburton Energy Services, Inc. ("HESI") acting as cross-
plaintiff, and makes and files this, its First Amended Cross-Claims, and in support thereof, would
respectfully show this Court as follows:[1]

# I.
# BACKGROUND

1.      On April 20, 2010, there was a blowout and explosion on board the MODU
DEEPWATER HORIZON ("DEEPWATER HORIZON") during efforts to temporarily abandon

---

[1]     While HESI has not included any of the Transocean Entities in this particular pleading, HESI has asserted its
        claims against the Transocean Entities in Halliburton Energy Services Inc.'s Answer to Petitioner's Complaint
        and Petition for Exoneration From or Limitation of Liability and Original Claim in Limitation (Cross Claim)
        Against Petitioners, ("HESI's Cross Claim against the Transocean Entities"), a separate pleading filed with this
        Court.  HESI incorporates herein, as if set out in full, the allegations contained within HESI's Cross Claim
        against the Transocean Entities.

**ANSWER**

The BP Parties deny the allegations of this footnote to the extent that they are directed at the BP Parties.
The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations
of this paragraph, and therefore deny them.

a well in Mississippi Canyon, Block 252, the location known as "Macondo" (the "Macondo Well"). Subsequently, the DEEPWATER HORIZON sank into the Gulf of Mexico and oil was released. Numerous individual and class action lawsuits have been filed in state and federal courts for alleged injuries and damages resulting from the blowout and subsequent remediation and response efforts. Additional claims are expected.  Many of these lawsuits have been transferred to this Court for pretrial proceedings.

**ANSWER**

The BP Parties admit the allegations of this paragraph.


2.      Claimants/Plaintiffs have filed a number of claims against HESI and others under maritime law and state common law.  Generally, Claimants/Plaintiffs allege damages resulting from the acts of various defendants, including HESI, that allegedly caused the fire and explosion on board the DEEPWATER HORIZON, its sinking, and the subsequent oil spill.  These claims were tendered to HESI by the Transocean Entities' Rule 14(c) Tender, in Civil Action No. 10-2771, (the "Rule 14(c) Tender"). HESI denies that it is liable and/or responsible for any of the alleged injuries and/or damages claimed by Claimants/Plaintiffs.

**ANSWER**

The BP Parties admit the allegations of this paragraph.


## II.
## JURISDICTION AND VENUE

3.      This Court has admiralty and maritime jurisdiction of this Cross Action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

**ANSWER**

The BP Parties admit the allegations of this paragraph.


4.      Venue is proper in this District pursuant to the Order transferring this case to the Eastern District of Louisiana, dated August 16, 2010.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

## III.
## THE PARTIES

5.     HESI is a Delaware corporation with its principal place of business in Houston, Texas.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

6.     Cross-Defendant BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.   BP Exploration was the lessee and the designated operator of the Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Act, Serial No. OCS-G 37306 (the "Lease"). The Lease was granted by the former Mineral Management Services ("MMS"), which is now reorganized as the Bureau of Ocean Energy Management Regulation & Enforcement ("BOEMRE"). The Lease allowed BP to perform oil exploration, drilling, and production-related operations in Mississippi Canyon, Block 252, where the Macondo Well was located. This Court has personal jurisdiction over BP Exploration because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant BP Exploration has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that BPXP is a Delaware corporation, that BPXP is subject to this

Court's jurisdiction, that various parties have served complaints on BPXP, and that Transocean

filed a Rule 14(c) Tender against BPXP.  The BP Parties also admit that BPXP was the lessee

and designated operator of the lease described above and that the lease allowed BP to perform oil

exploration, drilling, and production-related operations in Mississippi Canyon, Block 252, where

the Macondo Well was located.  The BP parties deny the remaining allegations of this paragraph.

7.     Cross-Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant BP America has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that BPAP is a Delaware corporation, that BPAP is subject to this Court's jurisdiction, that various parties have served complaints on BPAP, and that Transocean filed a Rule 14(c) Tender against BPAP.  The BP parties deny the remaining allegations of this paragraph.


8.     Cross-Defendant BP p.l.c. is a British Limited Company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the world-wide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration & Production" division that includes BP Exploration and BP America, through vertical business arrangements.  Cross-Defendants BP Exploration and BP America are wholly owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the US more generally.  This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm General Jurisdiction Provision (13 Louisiana Statute §3201 (B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure.  This Court has specific jurisdiction over BP p.l.c. pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute §3201(B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure.  BP p.l.c. regularly does or solicits business, or engages in other persistent courses of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana.  These acts and/or omissions occurred prior to and after the blowout that occurred on the DEEPWATER HORIZON. Cross-Defendant BP p.l.c. has been served with various complaints and summonses as well as the Rule 14(c) Tender.  The BP Defendants identified in paragraphs 6-8 are collectively referred to as "BP."

**ANSWER**

The BP Parties admit that BP p.l.c. is a British Public Limited Company organized under the laws of England and Wales, with its headquarters in London, England, that BP p.l.c. is not contesting jurisdiction in this case, and that Transocean filed a Rule 14(c) Tender against BP p.l.c.  The BP parties deny the remaining allegations of this paragraph.


9.     Cross-Defendant M-I, LLC a/k/a M-I Swaco ("M-I") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.  M-I was, at all relevant times, registered to do, and was doing, business in Louisiana and within this district.  MI supplies drilling and completion fluids and additives, as well as pressure control, vessel instrumentation, and drilling waste management products and services to oil and gas companies in Louisiana and elsewhere. On the DEEPWATER HORIZON, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such

as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blowout.  This Court has personal jurisdiction over M-I because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant M-I has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that M-I and/or its affiliates provided products and services related to drilling fluids used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

10.     Cross-Defendant Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana. Cameron manufactured, designed, supplied, installed, maintained and/or modified the sub-sea emergency well-closure device known as a blowout-preventer ("BOP") on the DEEPWATER HORIZON and, at all pertinent times, contracted with Cross-Defendant Transocean Deepwater Drilling, Inc. for the provision of the BOP which was installed at the Macondo wellhead. This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cameron has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Cameron International Corporation manufactured, designed, supplied, and/or installed the *Deepwater Horizon's* blowout preventer.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

11.     Cross-Defendant Anadarko Exploration & Production Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. Anadarko E&P is an oil and gas exploration and production company. Through various agreements, Anadarko E&P became a co-lessee under the terms the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko E&P held a 22.5% interest in the Lease. This Court has personal jurisdiction over Anadarko E&P because it is registered to do business

in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Anadarko E&P has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that on or about May 8, 2008, BPXP executed the "Oil & Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act" with "Serial No. OCS-G 32306."  The BP Parties admit that at certain times prior to April 20, 2010, BPXP and Anadarko E&P were co-lessees under the Lease but deny that Anadarko E&P held a 22.5% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

12.  Cross-Defendant Anadarko Petroleum Corporation, or ("Anadarko Petroleum") is a Delaware corporation with its principal place of business in The Woodlands, Texas. Anadarko Petroleum is registered to do and does business in the State of Louisiana.  Anadarko Petroleum is an oil and gas exploration and production company. Through various agreements, Anadarko Petroleum became a co-lessee under the terms of the Lease. As of April 20, 2010, and continuing until at least April 28, 2010, Anadarko Petroleum held a 2.5% interest in the Lease.  This Court has personal jurisdiction over Anadarko Petroleum because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant Anadarko Petroleum has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that as a result of various agreements, BPXP and Anadarko were co-lessees under the Lease but deny that Anadarko Petroleum held a 2.5% interest in the Lease as of April 20, 2010.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

13.  Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore") is a Delaware corporation with its principal place of business in Houston, Texas.  Through various agreements, MOEX Offshore became a co-lessee under the terms of the Lease.  As of April 20, 2010, and continuing until at least April 28, 2010, MOEX Offshore held a 10% interest in the Lease.  This

Court has personal jurisdiction over MOEX Offshore because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant MOEX Offshore has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that as a result of various agreements, BPXP and MOEX Offshore were co-lessees under the Lease and that MOEX Offshore held a 10% interest in the Lease as of April 20, 2010. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

14.     Cross-Defendant MOEX USA Corporation ("MOEX USA") is a Delaware corporation with its principal place of business in Houston, Texas. MOEX USA is the parent company of MOEX Offshore 2007 LLC. This Court has general jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute §3201 (B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. MOEX USA does business in Louisiana, has continuous and systematic contacts with Louisiana (and the U.S. more generally), and has been served with a Summons and individual Complaints that are the subject of the Master Claim in Limitation. This Court has specific jurisdiction over MOEX USA pursuant to Louisiana's Long-Arm Specific Jurisdiction Provision (13 Louisiana Statute §3201(B)), in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. MOEX USA regularly does or solicits business, or engages in other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Louisiana. These acts or omissions took place before and after the blowout. Cross-Defendant MOEX USA has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that MOEX USA is an affiliate of MOEX Offshore. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

15.     Cross-Defendant Mitsui Oil Exploration Company, Ltd., ("MOECO") is a Japanese corporation with its principal place of business in Tokyo, Japan. Upon information and belief, MOECO is a corporate parent and/or alter ego of MOEX Offshore, which holds a 10% stake in the Lease. Cross-Defendant MOECO has been served with various complaints and summonses as well as the Rule 14(c) Tender.

7

**ANSWER**

The BP Parties admit that MOECO is an affiliate of MOEX and MOEX Offshore.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

16.     Cross-Defendant Weatherford U.S. L.P., ("Weatherford"), is a Louisiana limited partnership that maintains its principal place of business in Houston, Texas.  At all pertinent times, Weatherford was registered to do, and was doing business, in Louisiana and within this District. Weatherford designed, manufactured, marketed, sold, and/or distributed the casing components for the Macondo Well, including the float equipment and centralizers, and provided the personnel and equipment for running the casing and casing components into the well bore. This Court has personal jurisdiction over Weatherford because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Weatherford has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Weatherford and/or its affiliates provided products and services related to the casing used at the Macondo Well.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

17.     Cross-Defendant Weatherford International, Inc., ("Weatherford International") is a Delaware corporation with its principal place of business in Houston, Texas.  Weatherford International designed, manufactured, marketed, sold and/or distributed the casing components for the Macondo Well, including the float collar, shoes, and centralizers, and provided the personnel and equipment for running the casing and casing components into the well bore.  This Court has personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana. Cross-Defendant Weatherford International has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Weatherford International and/or its affiliates provided products and services related to the casing used at the Macondo Well.  The BP Parties lack

knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

18.     Cross-Defendant Dril-Quip, Inc. ("Dril-Quip") is a Delaware corporation which maintains its principal place of business in Houston, Texas.  Dril-Quip was involved in providing wellhead systems to the DEEPWATER HORIZON, including the Macondo Well.  This Court has personal jurisdiction over Dril-Quip because Dril-Quip is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.  Cross-Defendant Dril-Quip has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**<u>ANSWER</u>**

The BP Parties admit that Dril-Quip provided wellhead products and services to the *Deepwater Horizon*.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

19.     Cross-Defendant Marine Spill Response Corporation ("MSRC") is a Tennessee non-profit corporation with its principal place of business in Herndon, Virginia.  At all pertinent times, MSRC was doing business in the State of Louisiana.  MSRC participated in the post-blowout remediation and response efforts.  Cross-Defendant MSRC has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**<u>ANSWER</u>**

The BP Parties admit that MSRC provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

20.     Cross-Defendant Airborne Support, Inc., ("ASI"), is a Florida corporation with its principal place of business in Houma, Louisiana.  At all pertinent times, ASI was doing business in the State of Louisiana. ASI participated in the post-blowout remediation and response efforts.  Cross-Defendant ASI has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that ASI provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

21.    Cross-Defendant Airborne Support International, Inc., ("ASI International"), is a Florida corporation with its principal place of business in Houma, Louisiana.  At all pertinent times, ASI International was doing business in the State of Louisiana.  ASI International participated in the post-blowout remediation and response efforts. Cross-Defendant ASI International has been served with various complaints  and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that ASI International provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

22.    Cross-Defendant Lynden, Inc. ("Lynden") is a Washington corporation with its principal place of business in Seattle, Washington.  At all pertinent times, Lynden was doing business in the State of Louisiana by virtue of its one hundred percent ownership interest in Lynden Air Cargo, LLC, an Alaskan limited liability company with its principal place of business in Seattle, Washington.  At all pertinent times, Lynden Air Cargo, LLC, (together with Lynden, Inc., "Lynden") was doing business in the State of Louisiana.  Lynden participated in the post-blowout remediation and response efforts.  Cross-Defendant Lynden has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Lynden provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

23.    Cross-Defendant Dynamic Aviation Group, Inc., ("Dynamic"), is a Virginia corporation with its principal place of business in Bridgewater, Virginia.  At all pertinent times, Dynamic was doing business in the State of Louisiana.  Dynamic participated in the post-

blowout remediation and response efforts. Cross-Defendant Dynamic has previously been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Dynamic provided response services.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

24.    Cross-Defendant International Air Response, Inc., ("IAR") is an Arizona corporation with its principal place of business in Coolidge, Arizona.  At all pertinent times, IAR was doing business in the State of Louisiana.  IAR participated in the post-blowout remediation and response efforts. Cross-Defendant IAR has been served with various complaints  and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that IAR provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

25.    Cross-Defendant Lane Aviation, ("Lane") is a Texas corporation with its principal place of business in Rosenberg, Texas.  At all pertinent times, Lane was doing business in the State of Louisiana.  Lane participated in the post-blowout remediation and response efforts. Cross-Defendant Lane has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Lane provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

26.    Cross-Defendant National Response Corporation, ("NRC"), is a Delaware corporation with its principal place of business in Great River, New York.  At all pertinent times, NRC, along with SEACOR Holding, Inc., a Delaware corporation with its principal place of business in Delaware, of which NRC is a wholly-owned subsidiary, was doing business in the State of Louisiana.  NRC participated in the post-blowout remediation and response efforts.

Cross-Defendant NRC has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that NRC provided response services. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

27.     Cross-Defendant O'Brien Response Management, Inc., ("O'Brien") is a Louisiana corporation with its principal place of business in the Parish of St. Tammany, State of Louisiana. At all pertinent times, O'Brien was doing business in the State of Louisiana. O'Brien participated in the post-blowout remediation and response efforts. Cross-Defendant O'Brien has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that O'Brien provided response services. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

28.     Cross-Defendant Tiger Safety, LLC, ("Tiger"), is a Louisiana limited liability company with its principal place of business in the Parish of East Baton Rouge, State of Louisiana. Tiger participated in the post-blowout remediation and response efforts. Cross-Defendant Tiger has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Tiger provided response services. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

29.     Cross-Defendant DRC Emergency Services, LLC, ("DRC"), is an Alabama limited liability company. At all pertinent times, DRC was doing business in the State of Louisiana. DRC participated in the post-blowout remediation and response efforts. Cross-Defendant DRC has been served with various complaints and summonses as well as the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that DRC provided response services.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

30.      Cross-Defendant Nalco Company ("Nalco") is a Delaware corporation.   At all pertinent times, Nalco was doing business in the State of Louisiana.   Nalco is the manufacturer of the chemical dispersants purchased by the BP Defendants for use in connection with the clean-up efforts in response to the blowout.   Cross-Defendant Nalco has been named and served as a Third-Party Defendant in the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that Nalco provided chemical dispersants for use in the clean-up efforts.   The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

31.      The parties identified in paragraphs 6-30 are collectively referred to as Cross-Defendants.

**ANSWER**

The BP Parties admit the allegations of this paragraph.

## VI.
## CAUSES OF ACTION

32.      Pursuant to Rule 13(g), Defendant/Third Party Plaintiff HESI alleges the following causes of action against Cross-Defendants:[2]

---

[2]   Presently, there are several motions pending before this Court seeking clarification regarding the applicable law in this matter.   HESI alleges its claims herein, generally, without reference to any specific jurisdiction's law. HESI reserves its right to amend its pleadings as necessary after this Court determines the applicable law. In the meantime, each claim and cause of action should be read as if arising under maritime law and/or the law of any state under which Claimants/Plaintiffs have made a claim.

**ANSWER**

The BP Parties admit that HESI alleges the following causes of action.  The BP Parties deny they are liable to HESI.

**COUNT I**
**(CONTRIBUTION AND INDEMNITY)**

33.     Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 32 as if fully set forth herein.

34.     Third Party Plaintiff is entitled to contribution and indemnity from Cross-Defendants BP Exploration, BP America, BP p.l.c. (collectively "BP"), M-I, Cameron, Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, MOECO, Weatherford, Weatherford International, Dril-Quip, MSRC, ASI, ASI International, Lynden, Dynamic, IAR, Lane, NRC, O'Brien, Tiger, DRC, and Nalco[3] for any and all sums it may be compelled to pay Claimants/Plaintiffs as a result of the incident made the basis of this proceeding.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

35.     Any alleged injuries or damages claimed by Claimants/Plaintiffs were proximately caused by the actions and/or omissions of Cross-Defendants and not by any conduct on the part of HESI. Accordingly, HESI is entitled to a determination of proportionate responsibility and allocation of fault, pursuant to general maritime law, or other applicable law.

---

[3]     As referenced collectively herein, the Responder Defendants include: MSRC, NRC, IAR, ASI, ASI International, Lane, Lynden, Dynamic, O'Brien, Tiger, DRC and Nalco.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

36.    HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT II
## (CONTRACTUAL INDEMNITY)

37.    Paragraphs 1 through 36 are incorporated by reference as if fully set forth herein.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 36 as if fully set forth herein.

38.    HESI is entitled to contractual indemnity as a third party beneficiary from Cross-Defendants M-I, Weatherford, and Weatherford International, for any and all sums it may be compelled to pay Claimants/Plaintiffs relating to certain claims made as a result of the incident made the basis of this proceeding.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

39.     Certain alleged injuries or damages claimed by Claimants/Plaintiffs were proximately caused by the actions and/or omissions of these Cross-Defendants and not by any conduct on the part of HESI. Accordingly, pursuant to the parties' contractual agreements, to which HESI is a third party beneficiary, HESI is entitled to indemnification for any damages, sums, and/or settlements HESI may be compelled to pay and/or incur relating to certain claims.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed

at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.

40.     HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed

at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about

the truth of the remaining allegations of this paragraph, and therefore deny them.

## COUNT III
## (NEGLIGENCE/GROSS NEGLIGENCE/WILLFUL MISCONDUCT)

41.     Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 40 as if fully set forth

herein.

42.     The damages and injuries alleged by Plaintiffs/Claimants occurred as a result of the negligence of BP, Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, MOECO, Cameron, Weatherford, Weatherford International, M-I, Dril-Quip, and the Responder Defendants. These acts of negligence render these Cross-Defendants liable pursuant to the provisions of 46 USC §30104 and the general maritime law, or other applicable law, for negligence.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

## The BP Defendants

43.     BP was the primary owner of the Lease and was the sole Operator at the Macondo Well. In this dual role, BP controlled most, if not all, of the actions of BP's sub-contractors.  BP decided on the well design. BP decided when to conduct rig activities. BP decided what products and services to use, and whether to accept or reject its contractors recommendations regarding those products and services. BP decided whether critical well integrity tests were properly conducted and whether it was safe to proceed to the next scheduled rig activity.  BP decided how many rig activities to conduct simultaneously.  BP decided the speed at which the well was drilled and the steps to be taken, or not taken, in order to ensure that the rig stayed as close as possible to its drilling schedule, with every day of delay costing BP at least $500,000.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

44.     BP utterly failed to meet its duties and obligations, and BP knew so at the time. BP recklessly sacrificed safety for monetary savings and gain. BP carelessly ignored failed well integrity test results to move forward with procedures that put the well into an underbalanced condition that led to the blowout.  BP ignored and disregarded HESI's recommendation regarding the necessary number of centralizers and ignored and disregarded HESI's warning that using an inadequate number of centralizers would result in the well having a severe gas flow problem.  BP proceeded in an irresponsible manner with its temporary abandonment plan despite repeated warning signs that there were serious issues with the well.  BP allowed multiple rig activities to be conducted simultaneously, masking subtle indicators of a well control issue.  This callous and grossly irresponsible conduct by BP, whether acting alone or in concert with the actions and inactions of other Cross-Defendants, represents the absolute and undeniable cause of the horrific explosion and blowout that occurred on April 20, 2010, taking the lives of 11 men and injuring many others, as well as the tragic events that have occurred since that never-to-be forgotten night. BP knew that its greed and reckless disregard for its responsibilities as the Operator of the Macondo Well might have such tragic consequences.  It should now be held fully accountable for its conduct.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

45.     BP was negligent, grossly negligent, and/or acted with willful misconduct in at least the following ways:

(a)     Failing to exercise ordinary and reasonable care in connection with its drilling design and operations;

(b)     Failing to exercise reasonable care while conducting drilling operations to ensure that a blowout did not occur;

(c)     Failing to exercise reasonable care after blowout to ensure that an oil spill did not occur;

(d)     Failing to exercise reasonable care to ensure that oil would expeditiously and adequately be contained within the immediate vicinity of the DEEPWATER HORIZON in the event of an oil spill;

(e)     Failing to exercise reasonable care to ensure that adequate safeguard, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico;

(f)     Choosing and implementing a long string well design instead of a liner/tie back design;

(g)     Using pipe material that it knew, and which it recognized before the blowout, might collapse under high pressure;

(h)     Using too few centralizers to ensure that the casing was centered into the well bore;

(i)     Failing to implement a full "bottoms up" circulation of mud between the running of the casing and the beginning of the cement job;

(j)     Cancelling the cement bond log test that would have confirmed the integrity of the cement job;

(k)     Failing to deploy a casing hanger lock down sleeve to prevent the wellhead seal from being blown out by pressure from below;

(l)     Failing to properly interpret pressure test results relating to well control and well integrity;

(m)     Failing to train its employees in the management of complex systems like those found on the DEEPWATER HORIZON;

(n)     Requiring simultaneous operations in an effort to expedite the project, making it difficult to track fluid volumes in the wellbore;

(o)    Failing to take appropriate action to avoid or mitigate the release of oil into the Gulf of Mexico;

(p)    Failing to timely bring the oil release under control;

(q)    Failing to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the relief and recovery efforts following the oil spill;

(r)    Violating statutory and regulatory standards set forth in the Clean Water Act, the Oil Pollution Act, and other applicable statutes, regulations, and industry standards; and

(s)    Failing to warn others on the rig of an influx of hydrocarbons in the wellbore.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

## The Anadarko/MOEX Defendants

46.    At all times material herein, the Joint Operating Agreement ("JOA") entered into by and between Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, and MOECO (collectively, the "Non-Operating Cross-Defendants") and BP required BP to obtain the approval of the Non-Operating Cross-Defendants to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations. The JOA also provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.

**ANSWER**

The BP Parties refer HESI to the JOA, the full text of which speaks for itself.  The BP

Parties deny the remaining allegations of this paragraph to the extent they allege anything other

than the express terms of the JOA, taken as a whole.

47.    The JOA further required BP to provide the Non-Operating Cross-Defendants with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information.  The Non-Operating Cross-Defendants had the right to and did obtain "real time" data as set forth in Section 5.7 of the JOA.  The Non-Operating Cross

Defendants received detailed technical information regarding operations conducted in connection with the Lease and the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig.

**ANSWER**

The BP Parties refer HESI to the JOA, the full text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph to the extent they allege anything other than the express terms of the JOA, taken as a whole.

48.     The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Non-Operating Cross-Defendants, including, based upon information and belief, the costs of the well casing and wellhead and other materials purchased by BP.  The JOA provided the Non-Operating Cross-Defendants with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease.

**ANSWER**

The BP Parties refer HESI to the JOA, the full text of which speaks for itself.  The BP Parties deny the remaining allegations of this paragraph to the extent they allege anything other than the express terms of the JOA, taken as a whole.

49.     On various dates, the Non-Operating Cross-Defendants each designated BP as their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations.

**ANSWER**

The BP Parties deny the allegations of this paragraph.

50.     The Non-Operating Cross-Defendants are liable for the acts and omissions of their agent, BP.[4]   The Non-Operating Cross-Defendants were further negligent, grossly negligent, and/or acted with willful misconduct because they approved, authorized, and participated in BP's grossly negligent design and operations of the well.  The Non-Operating

---

[4]     There are factual differences regarding the involvement of MOEX Offshore, Anadarko E&P, and Anadarko Petroleum.  Based on these differences, HESI's allegation of gross negligence and willful misconduct regarding the Non-Operating Cross-Defendants go only to Anadarko E&P and Anadarko Petroleum.

Cross-Defendants were further negligent, grossly negligent, and/or acted with willful misconduct because they knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action. Alternatively, the Non-Operating Cross-Defendants were negligent, grossly negligent, and/or acted with willful misconduct by entrusting BP to make decisions relative to the Lease and to the DEEPWATER HORIZON'S drilling operations.

## ANSWER

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

### Cameron

51.     Cameron was negligent in at least the following ways:

(a)     Failing to properly maintain the blowout preventer on the DEEPWATER HORIZON;

(b)     Failing to exercise reasonable care in the design, manufacture, supply, and modification of the blowout preventer on the DEEPWATER HORIZON;

(c)     Failing to ensure and verify that the blowout preventer it designed and manufactured was suitable for the types of drill pipe and casing assembly design which would reasonably be used during the DEEPWATER HORIZON's drilling and explorations operations;

(d)     Designing the blowout preventer in a dangerous and/or unsafe manner by subjecting it to a single-point failure;

(e)     Failing to install a backup activation system for the blowout preventer;

(f)     Failing to provide adequate warnings, instructions, and guidelines on the permissible uses, modifications, and applications of the blowout preventer; and

(g)     Failing to effectively design the blowout preventer with a backup activation system, or provide adequate warnings, instructions and/or guidelines on the permissible uses, modifications, and applications of the blowout preventer.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

### The Weatherford Defendants

52.     Weatherford and Weatherford International were negligent, grossly negligent, and/or committed willful misconduct in at least the following ways:

> (h)     Failing to exercise ordinary and reasonable care in the design, manufacture, and supply of the DEEPWATER HORIZON's float equipment; and
>
> (i)     Designing and manufacturing a float equipment that failed to seal properly and which allowed hydrocarbon back-flow into the casing.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

### M-I

53.     M-I was negligent in at least the following ways:

> (j)     Failing to provide, control and monitor the mud and spacer solutions utilized in the drilling operations of the DEEPWATER HORIZON;
>
> (k)     Breaching its duties of ordinary and reasonable care in connection with the drilling operations;
>
> (l)     Failing to guard against and/or prevent the risk of an oil spill; and
>
> (m)     Failing to warn those on the DEEPWATER HORIZON of an influx of hydrocarbons in the wellbore.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

### Dril-Quip

54.     Dril-Quip was negligent in at least the following ways:

(n)     Failing to exercise reasonable care while participating in the drilling operations related to the Macondo Well;

(o)     Failing to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill; and

(p)     Providing wellhead systems for the Macondo Well which failed to operate, were improperly designed, and/or possessed product defects.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

### The Responder Defendants

55.     The Responder Defendants were negligent in at least the following ways:

(q)     Failing to exercise reasonable care in the operation, maintenance, handling, design, implementation, and execution of the response and recovery efforts, including, but not limited to, efforts to control and extinguish the fire aboard the rig, efforts to stop the flow of oil, and efforts to control the flow of oil;

(r)     Failing to warn of the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(s)   Failing to train regarding the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(t)   Failing to equip and protect against the harmful effects of crude oil, chemical dispersants, and hazardous substances to be encountered in connection with the response efforts;

(u)   Failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk to vessels and crewmembers being exposed to aerial chemical dispersants;

(v)   Failing to abide by the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and in shallow waters;

(w)   Violating statutory and regulatory standards set forth in the Clean Water Act and the Oil Pollution Act;

(x)   Nalco knew or should have known that its Corexit dispersant was unreasonably dangerous to the public;

(y)   The Corexit dispersant was improperly designed and contained defects in that the Corexit was toxic to humans and could cause physical injury, health hazards, and damage to property; and

(z)   The Corexit was defectively inspected, tested, marketed, and sold.

HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

## <u>ANSWER</u>

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

## COUNT III
## (STRICT PRODUCTS LIABILITY)

56.   Paragraphs 1 through 55 are incorporated by reference as if fully set forth herein.

24

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 55 as if fully set forth herein.

57.    Cameron is liable for strict products liability for its actions in defectively designing, manufacturing, marketing, maintaining and/or modifying the blowout preventer on the DEEPWATER HORIZON. Specifically:

(aa)    Cameron's blowout preventer was defective in design because its emergency modes of system operation did not provide a fully-independent means of closing the blowout preventer which rendered the blowout preventer abnormally dangerous;

(bb)    Cameron's blowout preventer was defectively designed and/or manufactured because its blind shear rams were vulnerable to the failure of a single shuttle valve carrying hydraulic fluid to the ram blades;

(cc)    Cameron's blowout preventer was defectively designed and/or manufactured because it failed to operate as intended, if at all;

(dd)    Cameron's blowout preventer was defectively designed and/or manufactured such that it did not operate as intended to prevent or minimize blowouts;

(ee)    Cameron's blowout preventer was in a defective condition and unreasonably dangerous;

(ff)    The blowout preventer left Cameron's control in a defective condition; and

(gg)    The blowout preventer left Cameron's control with over two hundred and sixty (260) known defects and failure modes.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

58.     Weatherford and Weatherford International, (collectively "Weatherford"), are liable for strict products liability for their actions in defectively designing, manufacturing, and/or marketing the float equipment on the DEEPWATER HORIZON.  Specifically:

(hh)    Weatherford designed and manufactured the float equipment that failed to seal properly and that allowed hydrocarbon back-flow into the casing;

(ii)    Weatherford's float equipment did not seal properly;

(jj)    Weatherford's float equipment failed to operate properly or at all;

(kk)    Weatherford's float equipment was defective because it failed to operate as intended;

(ll)    Weatherford's float equipment was in a defective condition and unreasonably dangerous.

**<u>ANSWER</u>**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

59.     Dril-Quip is liable for strict products liability for its actions in defectively designing, manufacturing, and/or marketing the wellhead system for the DEEPWATER HORIZON. Specifically:

(a)    Dril-Quip designed and manufactured the wellhead system that failed to prevent the escape of hydrocarbons;

(b)    Dril-Quip's wellhead system did not act as a barrier to hydrocarbon flow;

(c)    Dril-Quip's wellhead system failed to operate properly or at all;

(d)    Dril-Quip's wellhead system was defective because it failed to operate as intended; and

(e)    Dril-Quip's wellhead system was in a defective condition and unreasonably dangerous.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

60.     HESI reserves its right to amend the allegations against these Cross-Defendants as additional discovery and evidence warrants.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

WHEREFORE, PREMISES CONSIDERED, Defendant Halliburton Energy Services, Inc. prays that upon the trial of this cause that Claimants/Plaintiffs take nothing by reason of their pleadings and that HESI be entitled to contribution and/or indemnity from Cross-Defendants as to the claims of Claimants/Plaintiffs, and that HESI be dismissed and have such other and further relief to which it may show itself justly entitled.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties.  The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of the Cross-Claims fail to state a claim upon which relief may be granted.

## SECOND DEFENSE

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU Deepwater Horizon, and/or unseaworthy conditions, breach of contract or breaches of duty and breaches of warranty, express or implied, attributable to the Cross-Plaintiff and the negligence of employees, agents, officers and directors of Cross-Plaintiff. The aforesaid unseaworthiness and negligence was within the knowledge or privity of Cross-Plaintiff and accordingly, the Cross-Claims should be dismissed as to the BP Parties.

## THIRD DEFENSE

Cross-Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

## FOURTH DEFENSE

The events culminating in the injuries and damage to Cross-Plaintiff were not the result of any negligence, fault, or want of due care on the part of BP Parties.  Furthermore, Cross-Plaintiff has the burden of proof on this issue, and Cross-Plaintiff cannot meet that burden.

## FIFTH DEFENSE

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Cross-Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

## SIXTH DEFENSE

Cross-Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

## SEVENTH DEFENSE

To the extent the BP Parties are found liable to Cross-Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## EIGHTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

## NINTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

## TENTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

## ELEVENTH DEFENSE

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

## TWELFTH DEFENSE

Cross-Plaintiff's claims are barred, in whole or in part, because Cross-Plaintiff is not entitled under the law to the damages that it seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## THIRTEENTH DEFENSE

Cross-Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

## FOURTEENTH DEFENSE

The BP Parties deny that they are liable to any extent as alleged in the Cross-Claims, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Cross-Plaintiff as a result of the allegations contained in the Cross-Claims and for any other damages or claims which exist or may arise, but have not been specifically pled.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

Dated:  June 20, 2011                    Respectfully submitted,

                         /s/ Don K. Haycraft _____
                         Don K. Haycraft (Bar #14361)
                         R. Keith Jarrett (Bar #16984)
                         LISKOW & LEWIS
                         701 Poydras Street, Suite 5000
                         New Orleans, Louisiana 70139-5099
                         Telephone: (504) 581-7979
                         Facsimile: (504) 556-4108

                         and

                         Richard C. Godfrey, P.C.
                         J. Andrew Langan, P.C.
                         Timothy A. Duffy, P.C.
                         Kirkland & Ellis LLP
                         300 North LaSalle Street
                         Chicago, IL 60654
                         Telephone: (312) 862-2000
                         Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

/s/  Don K. Haycraft