UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Cases AND No. 2:10-cv-2771 (*In re The Complaint And Petition Of Triton Asset Leasing GmbH, et al.*) | : : : : : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………………... | : | |

## THE BP PARTIES' ANSWER TO THIRD PARTY DEFENDANT DRIL-QUIP, INC.'S CROSS-CLAIMS

BP Exploration & Production Inc. ("BPXP"), BP America Production Company ("BPAP"), and BP p.l.c. ("collectively, the BP Parties"), by their undersigned Counsel, and, pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer Dril-Quip, Inc.'s Cross-Claims as follows:

Following the April 20, 2010 blowout and explosion aboard the MODU Deepwater Horizon, numerous plaintiffs filed individual and class action lawsuits against various defendants in state and federal courts throughout the country. Many of those actions, which include claims under maritime and state law for damages that allegedly arose out of the explosion and subsequent oil spill, are before this Court for pretrial proceedings.

Triton Asset Leasing GmbH, Transocean Holdings, LLC and Transocean Offshore Deepwater Drilling, Inc. (the "Transocean Entities") tendered subsets of the claims to Dril-Quip, Inc. ("Dril-Quip") and others under Federal Rule of Civil Procedure 14(c) in Civil Action No. 2771 (the "Rule 14(c) Tender") and filed related cross-claims against various third-party defendants, including Dril-Quip. After the Transocean Entities tendered the claims to Halliburton Energy Services, Inc. ("HESI") and Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), HESI and Cameron filed their own cross-claims against Dril-Quip, Inc. and numerous other third-party defendants.

Dril-Quip, has moved to dismiss, or will move to dismiss, every complaint asserting claims against it, including the Rule 14(c) Tender, the Transocean Entities' cross-claim, HESI's cross-claim and Cameron's cross-claim, on the ground that no claim upon which relief may be granted has been stated against Dril-Quip. Because the motions to dismiss have not yet been heard, and in order to comply with this court's orders, however, Dril-Quip respectfully files this

1

instrument and requests that the Court regard its submission and content as subject to and not inconsistent with those motions.

Pursuant to Federal Rules of Civil Procedure 13(g) and 14(c), this Court's Pretrial Order No. 1, and this Court's March 24, 2011 Stipulated Order Governing Deadlines In Connection With the Third-Party Complaint, therefore, Dril-Quip states as follows for its cross-claims against Cross-Claim Defendants BP Exploration & Production, Inc. ("BP Exploration"), BP America Production Company ("BP America"), BP p.l.c. (collectively "BP"), HESI, M-I, LLC ("M-I"), Cameron, Anadarko Petroleum Corporation Co. ("Anadarko"), Anadarko E&P Company LP ("Anadarko E&P"), MOEX Offshore 2007 LLC ("Moex Offshore"), MOEX USA Corporation ("Moex USA"), Mitsui Oil Exploration Co., Ltd. ("Moeco"), Weatherford U.S. L.P. ("Weatherford") and Weatherford International, Inc. ("Weatherford International"):

**ANSWER**

The BP Parties admit that the filings referenced above have occurred, and that Dril-Quip purports to assert cross-claims as set forth above. The BP Parties deny that they are liable to Dril-Quip. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph and therefore deny them.

**PARTIES**

1. Dril-Quip is a Delaware corporation with its principal place of business in Houston, Texas. Dril-Quip has been served with the Rule 14(c) Tender, the Transocean Entities' cross-claim, HESI's cross-claim and Cameron's cross-claim, and various other summonses and complaints related to the Deepwater Horizon explosion and the resulting oil spill. Dril-Quip denies any negligence or fault in connection with the explosion or the oil spill. It, however, has statutory and/or common law rights to contribution, in whole or in part, from Cross-Claim Defendants for any liability Dril-Quip may face as a result of the events alleged in the Rule 14(c) Tender or any other complaint filed in connection with the explosion or the oil spill, to which Dril-Quip has been made a party or joined in issue.

**ANSWER**

The BP Parties admit that Dril-Quip has been served with the claims described. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

2. Upon information and belief, Cross-Claim Defendant BP Exploration is a Delaware Corporation with its principal place of business in Warrenville, Illinois. This Court

has personal jurisdiction over BP Exploration because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on BP Exploration, and the Transocean Entities made BP Exploration a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that BPXP is a Delaware corporation, that BPXP is subject to this Court's jurisdiction, and that various parties have served complaints on BPXP, and that Transocean filed a Rule 14(c) Tender against BPXP. The BP parties deny the remaining allegations of this paragraph.

3. Upon information and belief, Cross-Claim Defendant BP America is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on BP America, and the Transocean Entities made BP America a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that BPAP is a Delaware corporation, that BPAP is subject to this Court's jurisdiction, and that various parties have served complaints on BPAP, and that Transocean filed a Rule 14(c) Tender against BPAP. The BP parties deny the remaining allegations of this paragraph.

4. Upon information and belief, Cross-Claim Defendant BP p.l.c. is a British Public Limited Company with its corporate headquarters in London, England. The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over BP p.l.c. and that it is the corporate parent of BP Exploration and BP America. Various parties have served summonses and complaints on BP p.l.c., and the Transocean Entities made BP p.l.c. a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties admit that BP p.l.c. is a British Public Limited Company organized under the laws of England and Wales with its headquarters in London, England, that BP p.l.c. is not

contesting jurisdiction in this case, and that Transocean filed a Rule 14(c) Tender against BP p.l.c.  The BP parties deny the remaining allegations of this paragraph.

5. Upon information and belief, Cross-Claim Defendant HESI is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over HESI because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on HESI, and the Transocean Entities made HESI a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

6. Upon information and belief, Cross-Claim Defendant M-I is a Delaware Limited Liability Company with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over M-I, also known as M-I Swaco, because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana.  Various parties have served summonses and complaints on M-I, and the Transocean Entities made M-I a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

7. Upon information and belief, Cross-Claim Defendant Cameron is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Cameron because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Cameron, and the Transocean Entities made Cameron a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

8. Upon information and belief, Cross-Claim Defendant Anadarko is a Delaware Corporation with its principal place of business in the Woodlands, Texas. This Court has personal jurisdiction over Anadarko because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Anadarko, and the Transocean Entities made Anadarko a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

9. Upon information and belief, Cross-Claim Defendant Anadarko E&P is a Delaware Limited Partnership with its principal place of business in the Woodlands, Texas. This Court has personal jurisdiction over Anadarko E&P because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Anadarko E&P, and the Transocean Entities made Anadarko E&P a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

10. Upon information and belief, Cross-Claim Defendant Moex Offshore is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Moex Offshore because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Moex Offshore, and the Transocean Entities made Moex Offshore a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

11. Upon information and belief, Cross-Claim Defendant Moex USA is a Delaware Corporation with its principal place of business in Houston, Texas. The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over Moex USA and that it is a corporate parent of Moex Offshore. Various parties have served summonses and complaints on Moex

USA, and the Transocean Entities made Moex USA a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

12. Upon information and belief, Cross-Claim Defendant Moeco is a Japanese Corporation with its principal place of business in Tokyo, Japan. The Plaintiffs/Claimants have alleged that this Court has personal jurisdiction over Moeco and that it is a corporate parent of Moex Offshore and Moex USA. Various parties have served summonses and complaints on Moeco, and the Transocean Entities made Moeco a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

13. Upon information and belief, Cross-Claim Defendant Weatherford is a Louisiana Limited Partnership and maintains its principal place of business in Houston, Texas. This Court has personal jurisdiction over Weatherford because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Weatherford, and the Transocean Entities made Weatherford a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

14. Upon information and belief, Cross-Claim Defendant Weatherford International is a Delaware Corporation and maintains its principal place of business in Houston, Texas. This Court has personal jurisdiction over Weatherford International because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana. Various parties have served summonses and complaints on Weatherford International, and the Transocean Entities made Weatherford International a party to the limitation proceedings when they filed the Rule 14(c) Tender.

**ANSWER**

The BP Parties lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore deny them.

### JURISDICTION AND VENUE

15.     Jurisdiction over Dril-Quip's cross-claims is proper pursuant to the rules governing cross-claims against co-parties.  This Court also has supplemental and/or ancillary jurisdiction over these cross-claims because the Court already has jurisdiction over the Rule 14(c) Tender and related complaints pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction), 43 U.S.C. § 1349(b) (the Outer Continental Shelf Lands Act (OCSLA)), and 28 U.S.C. § 1331 (because the claims in the Rule 14(c) Tender arise under OCSLA and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.).

**ANSWER**

The BP Parties admit that this Court has jurisdiction over Dril-Quip's cross-claims under 28 U.S.C. § 1333.  The BP Parties deny the remaining allegations of this paragraph.

16.     This Court also has original jurisdiction over Dril-Quip's cross-claim pursuant to 28 U.S.C. § 1333 (admiralty jurisdiction) and 43 U.S.C. § 1349(b) (OCLSA).

**ANSWER**

The BP Parties admit that this Court has jurisdiction over Dril-Quip's cross-claims under 28 U.S.C. § 1333.  The BP Parties deny the remaining allegations of this paragraph.

17.     Venue for this cross-claim is proper pursuant to the rules governing cross-claims against co-parties and 28 U.S.C. § 1391(b)(2).

**ANSWER**

The BP Parties admit the allegations of this paragraph.

## FACTS

*Claims Against BP*

18. BP entity, BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS").  BP Exploration was, thus, allowed to perform oil exploration, drilling and production related operations at Mississippi Canyon Block 252, a location which is also known as "Macondo" and which is where the spill originated. BP Exploration has also been designated a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714.

## ANSWER

The BP Parties admit the allegations of this paragraph.

19. However, BP Entity, BP America was the party to the Drilling Contract with Transocean Ltd. related to the development of the Macondo well by the Deepwater Horizon vessel.

## ANSWER

The BP Parties admit that BPAP was the party to a Drilling Contract with Transocean Holdings LLC.  The BP Parties deny the remaining allegations of this paragraph.

20. The Plaintiffs/Claimants allege that BP breached its duty to exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care by:

    (a)    choosing and implementing a long string well design, which had few barriers against a gas blowout, instead of a safer liner/tieback design which would have provided additional barriers to a gas blowout;

    (b)    using pipe material that might collapse under high pressure;

    (c)    using too few centralizers to ensure that the casing was centered in the wellbore;

    (d)    failing to implement a full "bottoms-up" circulation of mud between the running of casing and the beginning of the cement job;

    (e)    failing to require comprehensive lab testing to ensure the density of the cement;

  (f)  misinterpreting negative pressure test data that indicated that the cement job was defective;

  (g)  cancelling the cement bond log test;

  (h)  using an abnormally large quantity of mixed and untested spacer fluid;

  (i)  failing to hire and train drilling vessel workers and onshore employees qualified in risk assessment and management of complex systems like that found on the Deepwater Horizon; and

  (j)  requiring simultaneous operations in an effort to expedite the project.

**ANSWER**

The BP Parties admit that the Plaintiffs/Claimants have made the allegations set forth above. The BP Parties deny the remaining allegations of this paragraph.

*Claims Against HESI*

21. HESI provided engineering services and materials, testing services and mixing and pumping services for the cement operations. It also maintained onshore engineering support for its operations. HESI was responsible for the provision of technical advice about the design, modeling, placement and testing of the cement that was used in the Macondo well, and, before and during the blowout, HESI was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

22. HESI division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels and pressure levels.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

23. The Plaintiffs/Claimants contend that HESI breached its duties to Plaintiffs/Claimants by failing to exercise reasonable care in conducting its cementing, testing and monitoring of the well when it:

(a) failed to use a full "bottoms-up" circulation of mud between the running of the casing and the beginning of the cement job;

(b) failed to require comprehensive lab testing to ensure the density of the cement;

(c) misinterpreted negative pressure test data which indicated that the cement job was defective; and

(d) cancelled, or acquiesced in the cancellation of, the cement bond log test.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

*Claims Against M-I*

24. M-I provided mud products, including drilling fluids and spacers, engineering services and mud supervisory personnel to manage the use of the fluids at the well. M-I employees planned and supervised certain fluid-related activities at Macondo, including the displacement that was occurring at the time of the April 20, 2010 blowout.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

25. The Plaintiffs/Claimants allege that M-I breached its duties to Plaintiffs/Claimants by failing to provide, control and monitor the mud and spacer solutions used on the Deepwater Horizon in a reasonably safe manner.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

*Claims Against Cameron*

26. Cameron manufactured, designed, supplied, and/or installed the blowout preventer ("BOP") that served as the Deepwater Horizon's sub-sea emergency well-closure device.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

       27.    As the designer of the BOP, the Plaintiffs/Claimants allege that Cameron owed and breached duties of ordinary and reasonable care to the Plaintiffs/Claimants in connection with the design, manufacture and supply of the BOP by:

       (a)    failing to ensure and verify that the BOP it designed and manufactured was suitable for the types of drill pipe and casing assembly design which would be used during the Deepwater Horizon's drilling and exploration operations;

       (b)    designing the BOP such that it was vulnerable to a single-point failure;

       (c)    failing to install a backup activation system for the BOP; and

       (d)    failing to provide adequate warnings, instructions and guidelines on the permissible uses, modifications and applications of the BOP appurtenant to the vessel.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

       28.    The Plaintiffs/Claimants allege that these failures caused the BOP not to operate properly to prevent the blowout.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

*Claims Against Anadarko and Anadarko E&P*

       29.    Anadarko was a party to the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement") and held a 2.5% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

11

30. Anadarko E&P was a party to the Operating Agreement and held a 22.5% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

31. The Plaintiffs/Claimants allege that as a condition to acquiring their leasehold interest, BP required Anadarko and Anadarko E&P to execute BP's well plan and Authorizations for Expenditure and that this put Anadarko and Anadarko E&P on notice of: (a) the location of the well; (b) the anticipated timeline for the operation; (c) the total depth and target zones; (d) the proposed drilling and completion plans, including the casing programs and directional details; (e) the details of all coring, logging and other evaluation operations conducted; and (f) information about the drilling rig to be used. The Plaintiffs/Claimants further assert that the Operating Agreement also gave Anadarko and Anadarko E&P the right to suggest alternative well plans, to place their own personnel on drilling and well development teams and to receive information and data about operations on an ongoing basis.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

32. The Plaintiffs/Claimants contend that these rights to information regarding the Macondo well put Anadarko and Anadarko E&P on actual or constructive notice of the conditions at the well site. According to the Plaintiffs/Claimants, having been put on actual or constructive notice of those conditions and having negotiated for and obtained the right to be privy to health, safety and environment ("HSE") information, HSE inspections and to call HSE meetings, it was incumbent upon Anadarko and Anadarko E&P to perform the check and balance role that they had carved out for themselves. The Plaintiffs/Claimants allege that the failure to exercise this role given the purportedly known history of specific problems at the wellsite constitutes negligence.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

*Claims Against Moex Offshore, Moex USA and Moeco*

33. Moex Offshore was a party to the Operating Agreement and held a 10% ownership interest in the lease of the Macondo Prospect site in the Mississippi Canyon Block 252 in the Gulf of Mexico.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

       34.    The Plaintiffs/Claimants allege that as a condition to acquiring its leasehold interest, BP required Moex Offshore to execute BP's well plan and Authorizations for Expenditure and that this put Moex Offshore on notice of: (a) the location of the well; (b) the anticipated timeline for the operation; (c) the total depth and target zones; (d) the proposed drilling and completion plans, including the casing programs and directional details; (e) the details of all coring, logging and other evaluation operations conducted; and (f) information about the drilling rig to be used. The Plaintiffs/Claimants further assert that the Operating Agreement also gave Moex Offshore the right to suggest alternative well plans, to place its own personnel on drilling and well development teams and to receive information and data about operations on an ongoing basis.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

       35.    The Plaintiffs/Claimants contend that these rights to information regarding the Macondo well put Moex Offshore on actual or constructive notice of the conditions at the well site. According to the Plaintiffs/Claimants, having been put on actual or constructive notice of those conditions and having negotiated for and obtained the right to be privy to HSE information, HSE inspections and to call HSE meetings, it was incumbent upon Moex Offshore to perform the check and balance role that it had carved out for itself. The Plaintiffs/Claimants allege that the failure to exercise this role given the purportedly known history of specific problems at the wellsite was negligence.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

       36.    The Plaintiffs/Claimants purportedly named Moex USA as a party because it serves as part of the corporate construct through which Moeco owns, dominates, controls and benefits from the activities of Moex Offshore.

**ANSWER**

       The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

*Claims Against Weatherford*

37. Weatherford and/or Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components, such as the float collar, shoe and centralizers used at Macondo and provided personnel and equipment for running the casing and casing components into the well bore.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

38. The Plaintiffs/Claimants allege that as the designer of the float collar, Weatherford owed and breached duties of ordinary and reasonable care to the Plaintiffs/Claimants by designing and manufacturing a float collar that failed to seal properly and which allowed hydrocarbon backflow into the casing, thereby causing the blowout and subsequent fire and oil spill.

**ANSWER**

The BP Parties admit that Cross-Plaintiff asserts the stated allegations of this paragraph.

**COUNT I**
**(Cross-claim for Contribution Against Cross-Claim Defendants)**

39. Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

**ANSWER**

The BP Parties incorporate their answers to paragraphs 1 through 38 as if fully set forth herein.

40. Dril-Quip denies that it is liable for any damages alleged against it as a result of the incident made the basis of this proceeding.

**ANSWER**

The BP Parties admit that Cross-Plaintiff alleges it is not liable for any damages. The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other parties.

41.     The Plaintiffs/Claimants have alleged that their damages were caused, in whole or in part, by the conduct of Cross-Claim Defendants, as set forth above. As such, the Cross-Claim Defendants are or may be liable to Dril-Quip for all or part of the claims asserted against Dril-Quip.

**ANSWER**

The BP Parties admit that Cross-Plaintiff alleges Cross-Claim Defendants may be liable to Cross-Plaintiff for all or part of the claims asserted against Cross-Plaintiff. The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other parties.

42.     To the extent that Dril-Quip is found liable for any part of the alleged damages, Dril-Quip has a right to contribution from other parties found liable, including Cross-Claim Defendants, to the extent of those parties' adjudicated proportion of liability.

**ANSWER**

The BP Parties admit that Cross-Plaintiff alleges it has a right to contribution from other parties found liable. The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding other parties.

**PRAYER FOR RELIEF**

WHEREFORE, Dril-Quip requests a declaration that if Dril-Quip is found liable for any portion of damages alleged against it as a result of the incident made the bases of this proceeding, and Dril-Quip pays more than its adjudicated share of liability, Dril-Quip is entitled to contribution from Cross-Claim Defendants to the extent of their adjudicated proportionate shares of liability.

**ANSWER**

The BP Parties deny the allegations of this paragraph to the extent that they are directed at the BP Parties. The BP Parties lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore deny them.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

The allegations of the Cross-Claims fail to state a claim upon which relief may be granted.

**SECOND DEFENSE**

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU Deepwater Horizon, and/or unseaworthy conditions, breach of contract or breaches of duty and breaches of warranty, express or implied, attributable to the Cross-Plaintiff and the negligence of employees, agents, officers and directors of Cross-Plaintiff. The aforesaid unseaworthiness and negligence was within the knowledge or privity of Cross-Plaintiff and accordingly, the Cross-Claims should be dismissed as to the BP Parties.

**THIRD DEFENSE**

Cross-Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

**FOURTH DEFENSE**

The events culminating in the injuries and damage to Cross-Plaintiff were not the result of any negligence, fault, or want of due care on the part of BP Parties. Furthermore, Cross-Plaintiff has the burden of proof on this issue, and Cross-Plaintiff cannot meet that burden.

**FIFTH DEFENSE**

Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Cross-Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.

**SIXTH DEFENSE**

Cross-Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible.

**SEVENTH DEFENSE**

To the extent the BP Parties are found liable to Cross-Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

**EIGHTH DEFENSE**

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contractual indemnity from other parties or entities.

**NINTH DEFENSE**

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to indemnity from other parties or entities.

**TENTH DEFENSE**

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to contribution from other parties or entities.

**ELEVENTH DEFENSE**

To the extent that the BP Parties are found liable to Cross-Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

**TWELFTH DEFENSE**

Cross-Plaintiff's claims are barred, in whole or in part, because Cross-Plaintiff is not entitled under the law to the damages that it seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

**THIRTEENTH DEFENSE**

Cross-Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

**FOURTEENTH DEFENSE**

The BP Parties deny that they are liable to any extent as alleged in the Cross-Claims, and claim exoneration from any and all liability for all losses, damages, and injuries incurred by Cross-Plaintiff as a result of the allegations contained in the Cross-Claims and for any other damages or claims which exist or may arise, but have not been specifically pled.

**FIFTEENTH DEFENSE**

Cross-Plaintiff's claims are subject to the mediation and/or arbitration provisions in the Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads entered into between BPAP and Dril-Quip with an effective date of July 1, 2003, and the BP Parties reserve all rights to seek mediation and/or arbitration.

The BP Parties specifically reserve the right to amend or supplement their affirmative defenses and this Answer as additional facts concerning their defenses become known to them.

Dated: June 20, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of June, 2011.

/s/  Don K. Haycraft__