# STONE PIGMAN WALTHER WITTMANN L.L.C.

## COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

45,600

June 20, 2011

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

    Re:    MDL No. 2179
                 In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
                 In the Gulf of Mexico on April 20, 2010

Dear Judge Shushan:

       Cameron International Corporation ("Cameron") objects to the assertion of deliberative process privilege by the U.S. Department of Justice concerning the subpoena duces tecum served upon Der Norske Veritas ("DNV"). (Rec. Doc. 2799).

       Citing 46 U.S.C. § 6308, the United States, on behalf of the Joint Investigative Team ("JIT"), has asserted a "deliberative process" privilege as to all material subpoenaed from DNV but has requested that only certain material be withheld from production:

> The United States does, however, assert the § 6308 protection against discovery for anything . . . involving DNV's deliberations not ultimately included in its final report (or addendum). The Court should prohibit document production and testimony on such matters. Thus, for example, the Court should prohibit discovery of:· Communications between DNV and the JIT, including supporting agencies, particularly communications regarding materials that were not included in DNV's final report.

(Rec. Doc. 2799, p 4.)

       This blanket refusal to produce documents that reflect the "deliberations" of DNV is insufficient to avoid production. Moreover, there is no general statutory or specific factual support for the United States' claim of privilege here. Lastly, even if the information subpoenaed

1060388v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE    2

June 20, 2011

may have been subject to the deliberative privilege, the JIT waived the privilege when DNV testified before the Marine Board of Inquiry.

1.  **The Absence of a Privilege Log Prejudices Cameron in Responding to this Assertion of Privilege**

Other than very broad classifications of the kinds of information, the United States has not provided any specificity as to what it has asked DNV to withhold from production.

At the most basic level, it is insufficient for a party to simply invoke a privilege without establishing the requisite foundation for how the privilege applies to a given item: "the mere assertion of a lawyer that responsive materials or information are [privileged] is not evidence establishing that the information is privileged." *Estate of Manship v. United States*, 232 F.R.D. 552, 561 (M.D. La. 2005). No privilege log or further explanation has been provided, and this bare assertion of privilege is thus insufficient to satisfy DNV's burden of proof. *Taylor Energy Co., v. Underwriters at Lloyds London*, No. 09-6383, 2010 WL 3952208 at *1 (E.D. La. Oct. 7, 2010) (Knowles, J.) ("Where descriptions in the privilege log fail to meet this standard, 'then disclosure is an appropriate sanction.'"). As required by F.R.C.P. 26(b)(5)(A), when:

> a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; *and* (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(Emphasis added.)

This is particularly important when a party attempts to assert a "deliberative process" privilege as a blanket protection against disclosure. The court "requires specificity and detail in support of a deliberative process claim," such that the party claiming the privilege must provide "provide especially specific circumstances of the documents, [such as information regarding] why the document was created, who the author and recipients were (i.e., whether they are the communications of subordinates to superiors recommending potential outcomes), and whether or not the documents were shared and circulated within the [agency] (as part of a consultative process)." *Proctor & Gamble Co. v. United States*, No. 8-608, 2009 WL 5219726 at *3 (S.D.Ohio, Dec. 31, 2009) (citing *Schell v. United States H.H.S.*, 843 F.2d 933, 940 n. 5 (6th Cir.1988); *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir.1980)). As set forth in *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1990), the privilege-asserting government agency "cannot expect the district court to simply assume the fundamental prerequisites [to assertion of the deliberative process privilege] which are its burden to establish." The JIT cannot broadly describe as privileged all "communications," without further

Stone Pigman Walther Wittmann l.l.c.

Page 3

June 20, 2011

information as to the types of documents it hopes to protect and the reason that those specific documents should in fact be protected. And, in turn, Cameron cannot adequately object and assert its rights to review documents relevant to its defenses without a proper and legal privilege log.

In the interest of time, Cameron will proceed to explain its objections to the privilege claim based on the limited information now before the Court, but expressly reserves its right to demand the production of a privilege log in full compliance with Federal Rule of Civil Procedure 26. By proceeding to address the substance of the privilege claims herein, Cameron does not waive its right to supplement its submission upon receipt of a proper privilege log.

2.  **The § 6308 Privilege Does Not Protect DNV'S Information**

    a.  The Governing Statute Does Not Provide Such A Privilege.

There is no legal basis for the claim that the "deliberative process" privilege available to the Coast Guard via 46 U.S.C. § 6308 can be applied to protect information held by DNV. 46 U.S.C. § 6308 (a) states:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

The United States, in its letter, claims that "*every* part of a marine casualty investigation" is privileged, notwithstanding its lack of legal support for this claim. (Rec. Doc. 2799, p. 2, emphasis added.).[1]

The United States claims that the DNV was acting " as an extension of the JIT." (Rec. Doc. 2799, p. 3.) But even if that were true, there is no basis in the statute that would allow the § 6308 deliberative process privilege to be extend beyond the conclusions and deliberations contained in the actual, final marine casualty investigative report - for example, to extend to communications and work performed by a third party who is not a government

---

[1] The term "report" is not defined in the statute or regulations, but in context, the term is intended to mean the Board's report. See 46 C.F.R. § 4.07-10 ("At the conclusion of the investigation the investigating officer shall submit to the Commandant via the Officer in Charge, Marine Inspection, and the District Commander, a full and complete report of the facts as determined by his investigation, together with his opinions and recommendations in the premises.").

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 4

June 20, 2011

employee. The statute itself plainly only applies to "members or employees of the Coast Guard." *See, e.g.,* 46 U.S.C. 6308(b) ("Any *member or employee of the Coast Guard* investigating a marine casualty pursuant to section 6301 of this title shall not be subject to deposition or other discovery, or otherwise testify in such proceedings relevant to a marine casualty investigation, without the permission of the Secretary."). There is no indication in the statute or its history that would indicate any intent by Congress to allow the provisions to be applied to non-Coast Guard personnel. *See* Senate Report No. 104-160 (Oct. 19, 1995); House Conference Report No. 104-854 (Sept. 27, 1996); *see also* Lambert, LeRoy, "The Use of Coast Guard Casualty Investigation Reports in Civil Litigation," 34 J. MAR. L. & COM. 75 (2003). DNV plainly does not fall under the protections intended by this statute, as it is not a Coast Guard "member or employee."

In addition to the statutory language, courts have held that the purpose of the privilege in section § 6308 is "to prevent the Coast Guard from becoming embroiled in private litigation resulting from marine accidents." *See In re Cozy Cove Marina, Inc.*, 521 F. Supp.2d 504, 507 (E.D. N.C. 2007); *Falconer v. Penn Mar., Inc.*, 397 F. Supp.2d 68, 70 (D. Me. 2005). The Coast Guard here does not face any risk of "becoming embroiled in private litigation" based on the work performed **by DNV.**

    b.    <u>The Governing Order Establishing the JIT Does Not Provide Such a Privilege.</u>

In addition, the Order that established the JIT under 46 U.S.C. § 6308 did not establish consultants as team members, nor did it give the involved agencies the authority to delegate governmental authority to outside parties. *See* "Joint Department of the Interior and Department of Homeland Security Statement of Principles and Convening Order Regarding Investigation into the Marine Casualty, Explosion, Fire, Pollution, and Sinking of Mobile Offshore Drilling Unit Deepwater Horizon, with Loss of Life in the Gulf of Mexico, 21-22 April 2010" (April 27, 2010).[2]

    c.    Case Law Establishes that the Deliberative Process Privilege Does Not Apply to "Communications" Between Consultant and Government Agency.

The actual term "deliberative process privilege" has not been defined with accuracy in the statute or cases that apply § 6308. In applications of the privilege created by other statutes, however, the privilege has been closely studied and defined. In *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866, 868 (D.C. Cir. 1990), the Court of Appeals explained the limits of the privilege when refusing to prevent the disclosure of various auditing documents:

---

[2]     Available at http://www.deepwaterinvestigation.com/external/content/document /3043/ 546551/1/DHS-DOI%20Deepwater%20Horizon%20Investigation%20Final.pdf.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE   5

June 20, 2011

> In deciding whether a document should be protected by the privilege we look to whether the document is 'predecisional' whether it was generated before the adoption of an agency policy and whether the document is 'deliberative' whether it reflects the give-and-take of the consultative process..-.-.
>
> Characterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word. No 'decision' is being made or 'policy' being considered; rather the documents discuss established policies and decisions the agency regulations [sic] in the light of a specific, and often hypothetical, fact pattern.

In short, documents that discuss hypothetical or alternate scenarios or other parts of the underlying investigation that may be discarded or eliminated before final recommendations are made in the complete report should *not* fall under the deliberative process privilege. *See also id.* at 868 ("[I]t is readily apparent that the memoranda in issue bear little resemblance to the types of documents intended to be protected under the deliberative process privilege. The documents were not suggestions or recommendations as to what agency policy should be. . . the memoranda are not advice to a superior, nor are they suggested dispositions of a case . . . They are not one step of an established adjudicatory process, which would result in a formal opinion . . . There is nothing subjective or personal about the memoranda; they are simply straightforward explanations of agency regulations in specific factual situations.").

While *Coastal States Gas, supra,* dealt with the inapplicability of the deliberative process privilege to an agency's own internal tests and hypothetical scenarios, other cases have noted that the privilege should not be applied to communications between retained consultants and the government entity claiming the privilege. For example, *Tuck-It-Away Assocs., L.P. v. Empire State Dev. Corp.*, 54 A.D.3d 154, 165-66 (N.Y. A.D. 2008), closely analyzed the deliberative process privilege under New York's state law equivalent to the Freedom of Information Act and determined that consultant communications with an agency are not necessarily subject to the same privilege enjoyed by the government agency. *See id.* at 166 ("[T]he communications between . . . the agency and . . . an outside consultant retained by the agency to prepare a neighborhood conditions (blight) study in connection with a proposed condemnation and a related City Map override, are not subject to FOIL's intra-agency exemption."); *see also Proctor & Gamble Co. v. United States,* No. 08-608, 2009 WL 5219726, at *6 (S.D. Ohio, Dec. 31, 2009). ("[T]he Government fails to articulate why documents exchanged between the IRS and its outside, non-governmental consultants would be protected by the intra-governmental deliberative process privilege.").

1060388v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 6

June 20, 2011

### 3. Even if a Deliberative Process Privilege Applies to DNV, Any Facts Contained in DNV's Materials are Nonetheless Subject to Disclosure

Factual information that is part of the underlying investigation process is not considered to be the "part of the report" that is subject to the § 6308 privilege, even where that factual information is contained in the actual report. In *In re Complaint of Danos & Curole Marine Contractors, Inc.*, 278 F.Supp.2d 783, 785 (E.D. La. 2003), the court allowed portions of the report - specifically, photographs taken for inclusion in the report that showed the position of a ship - to be considered as evidence. "[T]he photographs do not provide findings of fact, opinions, recommendations, deliberations, nor conclusions, in stead, they merely illustrate the condition of the objects depicted in the photos as they existed on September 19, 2002 *at the time that the pictures were taken*. . . . While the Court agrees with the assertions of the Claimant that the list provided in 46 U.S.C. § 6308(a) is illustrative and not exclusive, the Court does not believe that the photographs are the type of conclusory items which the statute seeks to exclude." (Emphasis in original.) The court also allowed deposition testimony from Coast Guard officers who were fact witnesses. *Id.; see also Eckstein Marine Serv., Inc. v. Crescent Marine Towing, Inc.*, No. 98-1467, 1998 WL 850523 at *2 (E.D.La. Dec. 8, 1998) (Africk, J.) (ordering disclosure of missing witness's statement given to Coast Guard investigators); *Kluth v. City of Converse, Texas*, No. 04-0798, 2005 WL 1799555 (W.D. Tex. July 27, 2005) (allowing witness statements from government investigation to be considered evidence, overriding claimed executive deliberative process privilege).

In short, the §6308 privilege was never intended to be applied to all information developed in the inquiry, nor to internal investigative steps involving fact patterns and hypotheses that do not fall under the definition of "deliberative process."

### 4. The § 6308 Privilege Does Not Apply To Internal DNV Communications

Even if the "deliberative process" privilege could be applied to communications between the JIT and DNV (which it cannot), any purely internal investigations and communications of DNV reflected in documents or testimony would not be similarly protected. "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views *of the agency*, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas*, 617 F.2d at 866 (emphasis added). "A document is 'deliberative' if disclosure of the document at issue would expose an agency's decision-making process in such a way as to chill candid discussion *within the agency* and undermine the agency's ability to perform its functions." *W & T Offshore, Inc. v. U.S. Dept. of Commerce*, 03-2285, 2004 WL 2115418 at *3 (E.D. La. Sept. 21, 2004) (emphasis added). *See also id.* at *3 (finding deliberative process privilege applied because "the source of the documents is an employee of a government agency.")

Any communication that was internal to DNV could not "suggest an agency position" or disclose agency views. Because the views of the agency itself must be implicated in

1060388v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE   7

June 20, 2011

order for the privilege to be applied, there is no legal basis for asserting the privilege over any internal DNV communications or deliberations that were not shared with the JIT or its employees.

    **5.**    **Regardless of Any Privilege Claims, the JIT Has Already Waived Any Privilege Over the Subject Matter of DNV's Work Involving the Deepwater Horizon**

    Finally, even if DNV internal communications were once protected by the deliberative process privilege established in § 6308 - which they were not - the JIT's decision to call DNV as witnesses as a public hearing waives any such privilege. Once the "deliberative processes" employed by DNV in assisting the JIT in reaching its conclusions were exposed to the world through public hearings, any privilege over their internal deliberations, including any tests, models, hypotheticals and assumptions made or discarded along the way, is waived.

    The fact that the JIT sought and obtained testimony from DNV on the nature of its investigation of the Deepwater Horizon changes the nature of any information which might ever have been protected by any privilege assertable by JIT, regardless of whether DNV could have qualified as a retained, non-testifying expert witness had the company not testified at the JIT hearings. See, e.g. F.R.C.P. 26(b)(4)(A) - (B) (distinguishing between parties' ability to depose expert who will testify at trial and non-testifying retained expert).

    To the extent § 6308 creates any deliberative process privilege, that privilege in fact disappears when the report is used "in an administrative proceeding initiated by the United States." 46 USC § 6308. This follows the more general case law definition of the deliberative process privilege, which includes the caveat that " even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas,* 617 F.2d at 866.

    A finding of waiver here is also mandated by Federal Rule of Evidence 502(a), which states that

> When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver *extends to an undisclosed communication or information* in a Federal or State proceeding only if:
>
> (1) the waiver is *intentional*;
>
> (2) the disclosed and undisclosed communications or information concern the *same subject matter*; and
>
> (3) they ought in fairness to be considered together.

Stone Pigman Walther Wittmann l.l.c.

Page 8

June 20, 2011

"[B]y requiring a fairness analysis, Congress recognized that "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005); *see also* Fed.R.Evid. 502 advisory committee note (2008) ("[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."). In *Coleman v. Sterling*, 09-1594, 2011 WL 2005227 (S.D. Cal. May 23, 2011), the district court determined that a magistrate judge had correctly allowed the full contents of investigative reports, including those sections claimed to be privileged, to be disclosed to the opposing parties, due to the 502 rule of fairness: "these redacted sections that contain factual findings and legal analysis would provide important context for a proper understanding of the protected materials." *See also Lerman v. Turner*, 10-2169, 2011 WL 494623, at *2 (N.D. Ill. Feb. 4, 2011) (applying rule of fairness to require complete disclosure of partially disclosed investigative reports). "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.2 (3d ed.1995, Supp. 2010).

All the requisites of Rule 502(a) apply here: The waiver of DNV's deliberative process and other privileges was *intentional*, as the JIT plainly called DNV personnel as key witnesses throughout the public hearings and subjected their findings, conclusions and opinions to cross examination. The disclosed and undisclosed communications all concern the *same*, very specific *subject matter*, i.e., the work that DNV performed at the behest of the JIT in its Deepwater Horizon analysis. Finally, *in fairness*, the disclosed and undisclosed communications of DNV *should be considered together*, as it is plain that DNV's processes and procedures used in tracing the issues that led to the Deepwater Horizon explosion, fire and spill, would "provide important context" for the proper understanding of how conclusions were reached. Without this knowledge, it will not be clear whether or why certain assumptions were considered, adopted or abandoned and whether or why theories of cause and effect were pursued and discarded. Moreover, DNV is the only party who has been granted access to the BOP, and fairness requires that parties such as Cameron whose liability here rests exclusively on the BOP, be given wide latitude in questioning DNV.

6. **Conclusion**

The material at issue is discoverable because § 6308 does not shield communications or analysis of testifying experts in this JIT Investigation as more fully set out above. However, if the Court believes that the statute does apply to the information sought, then Cameron requests that the US be required to submit a privilege log in compliance with Federal

1060388v.1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE   9

June 20, 2011

Rule of Civil Procedure 26(b)(5)(A) and that Cameron be afforded the opportunity to respond further.

    With kind regards, I remain,

        Sincerely,

        Phil Wittmann

        Phillip A. Wittmann

PAW:cmb

cc:    Defense Liaison Counsel
       Defense Steering Committee
       Plaintiff's Liaison Counsel
       Mr. R. Michael Underhill
       Mr. Luther Strange
       Mr. Corey L. Maze
       Mr. Richard L. Gorman
       Mr. Mark Cohen
       Ms. Ruth Colvin
       Mr. Scott Bickford
       Ms. Carolyn Raines
       Ms. Heather S. Kennealy
       Mr. Steve O'Rourke
       Mr. Chuck Wallace
       Ms. Kat Shea
       Mr. Michael O'Keefe

1060388v.1