# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Timothy A. Duffy, P.C.
To Call Writer Directly:
(312) 862-2445
tim.duffy@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

June 21, 2011

**VIA E-MAIL**

Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:   In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL 2179""

Dear Judge Shushan:

I write in response to Mr. Wittman's letter of yesterday regarding the BP 30(b)(6) deposition topics concerning the BOP.  The first sentence of Mr. Wittman's letter of yesterday states that Cameron has narrowed its requests.  This is inaccurate.  As the chronology below demonstrates, Cameron has continued to insist on topics the Court has already indicated are too broad, and it has rejected reasonable proposals by BP to agree on compromise.

*First*, on May 24, 2011, Mr. Wittman asked the Court to Order that the 30(b)(6) topics be expanded to include:

1. BP's identification of any alleged alternative BOP designs and its knowledge or awareness of such alternative BOP designs;

2. BP's identification of each allegedly negligent act of maintenance or modification of the BOP and its participation in, knowledge or awareness of any such maintenance or modification; and

3. BP's past and present use of Cameron subsea BOPs and/or control systems in connection with the drilling of wells by or on behalf of BP from 2000 to the present, including (a) the identification of the wells drilled by or on behalf of BP with Cameron subsea BOPs and/or control systems; (b) the identification of the rigs used to drill such wells; (c) the configuration of the BOP stack on such wells; (d) the control of any kick(s) on such wells; (e) the activation of the EDS on such wells; (f) any

## KIRKLAND & ELLIS LLP

Honorable Sally Shushan
June 21, 2011
Page 2

        activation of the AMF on such wells; and (g) and use of a secondary BOP control system on such wells.

(Whittman Letter at 1-2 & n.2 (5/24/2001)).

    ***Second***, at the Working Group Conference on May 26, 2011, the Court instructed Mr. Wittmann to narrow these topics:

        I do think that the topics are too broad, most especially your footnote two in your letter where you want identification of the rigs used, blah, blah, blah.

        That's an awful lot of information that I'm not sure you need based on the allegation. The allegations here are that this particular BOP was defective, that there were alternative designs available, and … that the modifications made by Cameron … were not state of the art.

        So I think you need to work on the scope of the three designations, most especially the third designation . . . . I think that's too broad.

(Transcript at 81-82 (5/26/2011)).

    ***Third***, on May 31, 2011, Mr. Wittmann proposed the following topics in an e-mail to the Court:

1. The identification of any alleged alternative BOP designs "that did not have … flaws" as alleged in para. 56 of BP's Cross-Claim Against Cameron and BP's knowledge or awareness of any such alleged alternative BOP designs.

2. The identification of each allegedly negligent act of maintenance or modification of the BOP and BP's participation in or knowledge or awareness of any such maintenance or modification.

3. BP's past and present use of Cameron subsea BOPs and/or control systems in connection with the drilling of wells by or on behalf of BP from 2000 to the present, including (a) the identification of the wells drilled by or on behalf of BP with Cameron subsea BOPs and/or control systems; (b) the identification of the rigs used to drill such wells; (c) the configuration of the BOP stack on such wells; (d) the control of any kick(s) on such wells; and (e) any use of a secondary BOP intervention or

## KIRKLAND & ELLIS LLP

Honorable Sally Shushan
June 21, 2011
Page 3

>   control system on such wells including activation of an Emergency Disconnect System, activation of an Automatic Mode Function (or "deadman"), activation of an acoustic system, activation of an autoshear, or use in a well control event of ROV intervention.

(Whittmann E-mail (5/31/11 @ 5:20 PM))  These "proposals" did not differ from Mr. Wittmann's original proposals in any meaningful respect.  Indeed, in some respects they were arguably *broader* than the topics already deemed too broad by the Court at the May 26 conference.

*Fourth*, on June 3, 2011, I responded to Mr. Wittmann via e-mail, telling him I did not think he had narrowed his proposed topics as the Court directed, and offered up a reasonable, narrower formulation that would allow Cameron to take testimony related to the allegations in BP's claim, but not unduly expand the scope of the requests.  I proposed the following:

1. The alternative BOP designs alleged in para. 56 of BP's Cross-Claim Against Cameron.

2. The maintenance of or modifications to the BOP by Cameron alleged in BP's Cross-Claim Against Cameron.

3. BP's use of Cameron subsea BOPs in Gulf of Mexico deepwater wells (other than Macondo) during the period April 20, 2005-Apr 20, 2010; namely, (a) the identity of the rigs that used such BOPs; (b) the configuration of the BOP stack on such rigs, including the number and type of ram-type and annular preventers; and (c) the use of secondary intervention or secondary control systems on such BOPs during an emergency situation.

(Duffy E-mail (6/3/11 @ 4:08 PM))  Eliminated from these topics were, for items one and two, inquiries into BP's "knowledge" of alternative designs and modifications, a concept of certainly more tangential to the issues in dispute.  BP's allegation is that there were better designs and that Cameron did inappropriate maintenance and modifications; whether BP "knew" about these at the time may be relevant, but it is by no means central to the claim, and would require a much more in the way of preparation for the witness, if it could even be done at all.  For item three, the principle difference was limiting the time period to five years prior to the Incident, and that, while BP was willing to prepare a witness to identify rigs, wells, configurations, and uses of control systems, it was not willing to identify every "kick" – an effort that would require combing through volumes of drilling information, again assuming it could be done at all.

## KIRKLAND & ELLIS LLP

Honorable Sally Shushan
June 21, 2011
Page 4

*Fifth*, I had intermittent correspondence with Mr. Wittmann over the next two weeks, but there was no change to his position on the topics. He and I spoke again after last Friday's conference, but again, he was unwilling to modify his proposals from his original position. We finally agreed that there was nothing more to do but submit the dispute to the Court for resolution. This culminated in Mr. Wittmann's letter of yesterday, and my letter today.

Mr. Wittmann's letter accurately identifies the disagreements, namely:

(a) Whether the first two topics should also include "BP's knowledge" of the alternative designs, maintenance, and modifications alleged in BP's complaint;

(b) Whether BP should be required to testify as to BOP information more than five years prior to the Incident; and

(c) Whether the laundry list of BOP information should include a discussion of any "kicks" that occurred in drilling those wells.

As shown above, however, Mr. Wittmann's letter does not, however, accurately characterize how Cameron's proposal has not changed one iota from its original request, despite the Court's specific instruction to narrow the topics.

BP respectfully requests that the Court endorse its proposed version of the new topics on the ground that they cover the information sought by Cameron – ostensibly to examine BP on the key factual allegations in BP's complaint – and offers a reasonable compromise on the practical scope of Topic 3 by limiting it to a five-year inquiry and the subcategories of information requested.

Very truly yours,

/s/ Timothy A. Duffy, P.C.

cc:   Richard C. Godfrey, P.C.
      J. Andrew Langan, P.C.
      Don K. Haycraft
      Sarah D. Himmelhoch
      Corey Maze
      Bill Large
      Anthony Irpino
      MDL 2179 Defense Liaison Counsel