

**U.S. Department of Justice**

Environment and Natural Resources Division

90-5-1-1-10026

*Steven O'Rourke*
*Environmental Enforcement Section*  *Telephone (202) 514-2779*
*U.S. Mail:  P.O. Box 7611, Washington, DC  20044-7611*  *Facsimile (202) 514-2583*
*Overnight Mail:   601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

June 23, 2011

*Via E-Mail (Sally_Shushan@laed.uscourts.gov)*

Honorable Sally Shushan
United States Magistrate Judge
United States Courthouse, Room B-345
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA. 70130

      Re:    *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,*  Civ. No. 10-MD-2179-CJB-SS (E.D. LA.)

Dear Judge Shushan:

      The United States submits this letter in response to Mr. Wittmann's letter to you on behalf of Cameron International Corporation ("Cameron"), dated June 20, 2011.  Cameron opposes the United States' assertion of 46 U.S.C. § 6308 protection against the production of documents from, and the testimony of, Det Norske Veritas USA ("DNV").

      Cameron principally argues that the United States is invoking a "deliberative process privilege," that Cameron submits has been waived. The issue in question, however, does not involve privilege but an express statutory protection from discovery and admissibility under 46 U.S.C. § 6308.  Similarly, because the statutory protection is more than a privilege, it cannot be waived, Fed. R. Evid. 502 notwithstanding.  Rather, the issue of discovery and admissibility is controlled by Section 6308's broad applicability expressly provided by Congress to relevant Government investigations.

**I.**      **Background and Status**

      The Joint Coast Guard/Bureau of Ocean Energy, Management, Regulation and Enforcement ("BOEMRE") Investigation at issue here was specifically convened under Title 46, § 6301 *et seq.* on April 27, 2010 by the Department of Homeland Security and Department of the Interior.  The "Statement of Principles and Convening Order" (cited in Mr. Wittmann's letter of

1

June 20 at footnote 2, with a website), provides that the Joint Investigation Team ("JIT") will conduct its investigations "in accordance with the provisions of 43 U.S.C. § 1348, 46 U.S.C. § 6301, *et* seq., and the applicable regulations thereunder." The Convening Order further states that if procedures for the agencies differ, "the procedures for a Marine Board of Investigation shall govern."

In the United States' June 10, 2011 letter to the Court, we noted that 46 U.S.C. § 6308(a) provides statutory protections against discovery sought by the May 16, 2011 30(b)(6) subpoena to DNV. Thereafter, attorneys from the Coast Guard and Department of the Interior promptly mobilized to Houston last week, at the request of DNV and the urging of the Court, and conducted a review of the documents. This review was conducted in the context of last week's conference calls wherein Cameron seemed to argue that intra-DNV communications should be produced but offered little further comment regarding the parameters of the Government's review. We understood that the Court generally indicated that the review was appropriate and that no privilege log would be needed.

Based upon the United States' review of the DNV documents there are three categories of documents that are protected from discovery and inadmissible pursuant to §6308. They are:

(1) Communications between DNV and JIT Members, or among JIT members, and including supporting government agency personnel when acting in furtherance of the investigation itself rather than ancillary roles such as contract administration (on the order of a 6 inch stack of paper);

(2) DNV interim and draft reports and other project memoranda submitted to the JIT for review and comment that were never made public (about 200 pages or so).

(3) Internal DNV communications reflecting deliberations about the JIT's blowout preventer (BOP) examination (about 4 pages).

Moreover, the United States seeks an order prohibiting deposition testimony on the same topics, which would allow the attorney for the United States to instruct the witness not to answer questions on these topics.

**II.    Argument.**

    **A.    Factual Materials Have Been Disclosed.**

As to Cameron's Point # 3 (factual material is not protected), we disagree as a technicality, but in this particular instance the JIT already offered to produce all factual material, and, as the Court knows, such materials have already been produced. The United States is and has been sharing the DNV's factual findings, data, and media for review and evaluation by all MDL party experts. The United States also agrees to permit DNV's deposition as limited to the

2

factual findings in the BOP examination on behalf of the JIT.[1]  Thus, Cameron's Point # 3 is not really at issue.

### B.     46 U.S.C. § 6308 Can Apply to DNV's Papers and Witnesses.

Cameron argues that Section 6308 applies only to the final report and not to communications or discussions, and not to DNV.  *See* Cameron's Point # 2(a), 2(b), (Section 6308 generally) and point # 4 (6308 does not apply to DNV).  That is incorrect.  The case law on § 6308 has not so limited the scope of the protection.  *See In re Am. Milling Co.*, 270 F. Supp. 2d 1068, 1074-75 (E.D. Mo. 2003) ("a transcript of the Coast Guard investigatory hearing" was excluded from evidence because the "admissibility of a documents produced in the course of a Coast Guard casualty investigation is governed by 46 U.S.C. § 6308").  Moreover, such a narrow view is contrary to the statute's purpose.  S*ee* 46 C.F.R. § 4.07-1(b) (investigations of marine casualties "are for the purpose of taking appropriate measures promoting safety of life and property at sea and are not intended to fix civil or criminal responsibility").

Cameron further argues that the Section 6308(b) protection does not apply because DNV is not a "member or employee" of the Coast Guard as prescribed in Section 6308(b).  *See* Cameron's Point 2(a).  The United States, however, has asserted the Section 6308(a) protection that applies to marine casualty investigations as an activity and not to specific categories of personnel.  Cameron's argument is thus misplaced to the extent that Cameron relies upon § 6308(b).  It is irrefutable that DNV was hired specifically to support the JIT's mission under the Convening Order, and to provide specific technical expertise that the JIT needed.  Members of the investigating body met with DNV engineers regularly; protocols and procedures were reviewed jointly; and as the Court is well aware, the testing took place on a government facility specifically chosen by the JIT.  By virtue of its relationship with the government, DNV acted as an extension of the JIT whose members supported the DNV investigation directly and indirectly throughout the testing process.

Government investigations of marine casualties under Section 6301, *et seq.*, serve important federal interests and are not intended to fix civil liability.  To that end, Congress gave Section 6308 broad application with its enactment in 1996.  Courts have accepted this broad application and even expanded it to include items that are not specifically identified in the statute to ensure the purpose of the statute is fulfilled.[2]  Now, Cameron seeks to intercept the JIT's

---

[1]  As the court reasoned in *In Re Complaint of Danos & Curole Marine Contractors, Inc.* in allowing photographs from a marine investigator to be admissible, "all inferences drawn therefrom are to be left to the trier of fact".  278 F. Supp. 2d 783, 785 (E.D. La. 2003).

[2]  *See Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, No. 06-3043, 2007 U.S. Dist. LEXIS 71675, at *12 (E.D. La. Sept. 26, 2007) (stating that "there is no indication that the list of parts of an investigative report is exclusive," but rather that "the term 'including' suggests that it is only illustrative"); *see also In re Atl. Marine Prop. Holding Co.*, No. 06-0100, 2008 U.S. Dist. LEXIS 61830, at *5-6 (S.D. Ala. Aug. 13, 2008) (finding that a party could not introduce pieces of a marine casualty investigation on the basis that they "[did] not reference any findings, conclusions or submissions to the Coast Guard" because the list in 46 U.S.C. § 6308 ''is not exclusive'' and ''no part of a report'' is admissible (citing *In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 363 (D. Md. 2006)); *see also*

communications, made during the investigation, with its technical advisor that specifically relate to the BOP testing that was performed by DNV on behalf of the investigation. Should these communications be discoverable as outside the scope of § 6308, it would have a chilling effect on any future marine casualty investigation's function and purpose—discouraging, in order to maintain the protection of § 6308, retention of expert services that presumably benefit the investigation.

### C. 46 U.S.C. § 6308 is not the Deliberative Process Privilege, and has not been Waived.

Cameron submits in Point # 2(c) (deliberative process privilege) and Point # 5 (waiver), that the United States is relying on the "deliberative process privilege," but has waived that privilege.

While Cameron's characterization of the § 6308 protection as nothing more than a deliberative process privilege is misplaced, examination of deliberative process privilege caselaw may be instructive.[3] In reviewing whether FOIA's deliberative process privilege applies to experts retained by the Government, the courts have determined that the nature of the relationship warrants extending the protection.[4] *See Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) ("in some circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum") (citing *Hoover*, *supra.*; *Lead Indus. Assn. v. OSHA*, 610 F.2d 70, 83 (2d Cir. 1979). The Supreme Court specifically recognized that records submitted by "outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel." *Klamath Water Ass'n* at 10 (citing *Gov't Land Bank v. GSA*, 671 F.2d 663, 665 (1st Cir. 1982)). Here, the relationship between the JIT and DNV is more robust than a typical government agency and its consultants because DNV was acting on behalf of the JIT and in furtherance of the objectives of an investigation to which Congress has expressly provided a statutory protection from discovery and admissibility. If FOIA's deliberative process protection extends to Government consultants for routine agency operations,

---

*Falconer v. Penn. Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Me. 2005) (determining that "[t]he phrase 'no part' excludes the entire report and the list of specifically excluded contents is 'illustrative and not exclusive'" (*quoting In re Complaint of Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d at 785).

[3] The United States agrees that Section 6308 and the deliberative process privilege share a common rationale: the purpose of both is to allow agencies and investigating bodies to freely explore possibilities, engage in internal debates, and encourage frank discussion internally and with retained consultants. *See Hoover v. U.S. Dep't of Interior*, 611 F.2d 1132, 1139-1140 (5th Cir. 1980). Both are meant to promote candid discussion and enhance the agency's ability to perform its functions. *Dudman Communications Corp., v Dep't of Air Force*, 815 F. 2d 1565, 1568 (D.C. Cir. 1987); *See also* H.R. Rep. No. 106, 104th Cong., 1st Sess. (1995) ("The amendments made by this section will ensure that the deliberative process of Coast Guard casualty investigations will be unaffected by the prospects of future litigation.").

[4] These cases arise in the context of "exemption 5" under the Freedom of Information Act, 5 U.S.C. § 552(a).

certainly § 6308 extends to a technical expert retained to further an investigation convened under § 6301 *et seq*.

Cameron also argues that the United States "waived the [deliberative process] privilege" when DNV testified before the Joint Investigation Team panel. However, Section 6308 is simply not subject to waiver. The statute specifically contemplates that the investigations are inadmissible and not discoverable, 46 U.S.C. § 6308(a), while at the same time the investigations "shall be open to the public," i*d*. § 6302, and that parties in interest (such as Cameron) may attend and examine witnesses. *Id.* § 6303. Moreover, the final report of the investigation must be made public, but such publication expressly does not waive privileges under FOIA. *Id.* § 6305(b). Given these provisions requiring public disclosure, Section 6308(a) simply cannot be the type of protection that can be waived by holding public hearings.

It is also clear that the § 6308 protection does not require that the protected information be confidential or not otherwise released to the public and that because the protection benefits not only the Government but third party subjects of the investigation, it cannot be waived by unilateral Government act.

The JIT has indeed held public hearings throughout its investigation. These hearings have been open to the public and have included the participation of entities designated as "Parties in Interest" (including, but not limited to Cameron, BP, and Transocean). The Parties in Interest were given an opportunity to ask questions of witnesses called by the JIT. These hearings, like the DNV forensic investigation, and marine investigator interviews, are all central to the JIT's deliberations, findings of facts, and opinions. Testimony of witnesses taken during a marine casualty investigation is therefore protected from discovery and admissibility by Section 6308(a). *See In re Eternity Shipping, Ltd*., 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006) (finding that a transcript of an interview was inadmissible because in part the "facts and opinions" of the USCG investigator are shared during the course of the interview. It is these "facts and opinions" of the report that "the statute explicitly seeks to exclude.").

Although transcripts of the testimony may be made public and available via a web-site or the FOIA, that in no way diminishes the statutory prohibitions against the use of or discovery of Section 6308 materials in civil litigation. Producing a marine casualty investigation report in response to a FOIA request, for example, does not waive the 46 U.S.C. § 6308 protection. *See Ward Hornblower Proesche, Limitation Proceedings, M/V JACK LONDON COMMODORE* 1999 AMC 1612, 1615-1616 (N.D. Cal. 1999) (rejecting the claimant's argument that production of the marine casualty investigation report "in response to her [FOIA] request" operated as a waiver of 46 U.S.C. § 6308 because: (1) "the Coast Guard ha[d] a duty to produce the [report] under other statutory sections and such disclosure is consistent with its duty to promote marine safety" (citing 46 U.S.C. § 6302, 6305 and 49 C.F.R. part 7 and 46 C.F.R. § 4.13-1; (2) the privilege operates "regardless of 'any other provision of law' which includes the FOIA provisions;" and (3) the Coast Guard does not have the authority "to waive, on Limitation Plaintiffs' behalf, the privilege"). DNV's testimony at the JIT administrative hearing furthered the marine casualty investigation and did not serve to waive the statutory protections afforded the investigation with regard to civil litigation. *See* 46 C.F.R. § 4.07-1(b); s*ee also Conagra, Inc. v. Weber Marine, Inc.*, No. 97-1019, 1999 U.S. Dist. LEXIS 14221 (E.D.La. Sept. 8, 1999) (if the

Coast Guard allows a marine investigator to testify, or be subject to discovery, it does not result in a waiver of 46 U.S.C. § 6308(a)).

### D. Privilege Log

Finally, as to Cameron's Point # 1, Cameron seeks a privilege log of all the communications between the JIT and DNV, including internal DNV communications, which are withheld pursuant to § 6308. This is an unnecessary and time consuming exercise. By way of analogy, this Court has determined that communications between in-house counsel and their clients need not be logged consistent with Paragraph 2 of Pretrial Order No.14.[5] *See* J. Shushan Order dated April, 11, 2011 (Doc. 1912). While the United States is not claiming an attorney-client privilege over these communications, the purpose of the provision is the same for this narrow group of communications between the JIT and DNV.

## III. Conclusion

The United States requests the entry of an Order prohibiting production of documents and prohibiting testimony in the following categories:

> Communications between DNV and JIT Members, or among JIT members, and including supporting government agency personnel when acting in furtherance of the investigation itself rather than ancillary roles such as contract administration;
>
> DNV interim and draft reports and other project memoranda submitted to the JIT for review and comment that were never made public; and
>
> Internal DNV communications reflecting deliberations about the JIT's blowout preventer (BOP) examination.

Respectfully submitted,

s/ Steve O'Rourke
Steven O'Rourke

cc: Mike O'Keefe, Law Clerk to Magistrate Judge Shushan
(Mike_OKeefe@laed.uscourts.gov)
PSC Liaison Counsel, Steve Herman and Jim Roy
States Coordinating Counsel, Attorney General Luther Strange
Defense Liaison Counsel
DNV Counsel
Mike Underhill, U.S. DOJ
AUSA Sharon Smith

---

[5] Paragraph 2 of PTO 14 states, "Privilege log identification is not required for post-April 20, 2010 communications exchanged between the Producing Party and their counsel or among counsel for the Producing Party."

6