

LEXISNEXIS® FILE & SERVE
38124540
E-SERVICE
Jun 18 2011
9:09PM

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| Relates To: *All Cases* | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

## PLAINTIFFS' STEERING COMMITTEE'S
## OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSIONS

Plaintiffs, by and thru the Plaintiffs' Steering Committee, respectfully submit the following Objections, Responses, Limitations and Reservations to Defendants' Requests for Admissions:

### PREFACE

The Plaintiffs' Steering Committee does not believe that it would be appropriate to make formally binding "admissions" with respect to facts and/or other disputed issues on behalf of all Plaintiffs and/or Claimants-in-Limitation. Many (if not all) of the plaintiffs and/or claimants-in-limitation are without personal knowledge as to the facts at issue with respect to the ("Incident"/"Casualty") Phase One Trial on Limitation, Liability, Fault Allocation, Gross Negligence and other issues scheduled to commence on February 27, 2012. Moreover, Plaintiffs understand that the Phase One Liability discovery authorized by the Court at this time is directed to the Plaintiffs' Steering Committee. The PSC, in this regard, respectfully responds to these Requests on behalf of all Plaintiffs and/or Claimants-in-Limitation, based upon the documents

and other information collected, obtained and otherwise developed by the PSC and other

common benefit Work Group Members, in coordination with the Coordinating Counsel for the

States.  To the extent that Defendants' Requests for Admissions might be construed to require

the PSC to seek and obtain knowledge and/or consent from each and every plaintiff or claimant-

in-limitation, Plaintiffs would object to such Requests as unduly burdensome, overbroad, not

reasonably calculated to lead to the discovery of admissible evidence, and unauthorized by the

Court.  In any event, for these and other reasons, the PSC will respond to Defendants' Requests

for Admissions by indicating those facts or other contentions to which the PSC would be willing

to stipulate for the purposes of the Phase One Trial.


## GENERAL OBJECTIONS

1. Plaintiffs object to Defendants' Requests to the extent they are not directly related to the Incident/Casualty issues scheduled to be tried in Phase One of the February 2012 Limitation, Liability, Gross Negligence and Fault Allocation Trial.

2. Plaintiffs object to the "Definitions" and "Instructions" set forth in Defendants' Requests to the extent they differ from the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Louisiana, or the Orders of this Court.[1]

---

[1] *See generally,* PRE-TRIAL ORDERS NOS. 1, 8, 11, 24 and 25; ORDER [Doc 2291] (May 9, 2011), ¶7; PREFACE, *supra.*

3. Plaintiffs object to Defendants' Requests to the extent they seek information or documents outside the scope of discovery permissible under the Federal Rules of Civil Procedure, or the Orders of this Court.[2]

4. Plaintiffs object to Defendants' Requests to the extent that they seek admissions or other information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, including the Joint-Prosecution and/or Common-Interest Privilege.[3]

5. Plaintiffs object to Defendants' Requests to the extent they seek admissions or other information not in the possession, custody or control of Plaintiffs' Steering Committee.[4]

6. Plaintiffs object to Defendants' Requests to the extent that they contain vague or ambiguous terms or are overly broad, unduly burdensome and oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence.

7. Plaintiffs object to Defendants' Requests to the extent they seek to establish second-hand, legal, technical and/or scientific knowledge, opinions, theories, characterizations, and/or conclusions – as opposed to *facts.*

8. Plaintiffs object to Defendants' Requests to the extent they seek to establish facts which are beyond the personal knowledge of some or all Plaintiffs.

9. Plaintiffs object to Defendants' Requests to the extent they are premature.[5]

10. Plaintiffs object to Defendants' Requests to the extent they seek admissions or other information about confidential settlement negotiations or communications or other information which would not be admissible under Federal Rule of Evidence 408.

11. Plaintiffs reserve all objections as to the admissibility of their responses until such time as they might be sought to be introduced into evidence and/or otherwise used in these proceedings.

---

[2] *See generally,* PRE-TRIAL ORDERS NOS. 1, 8, 11, 24 and 25; ORDER [Doc 2291] (May 9, 2011), ¶7; PREFACE, *supra.*

[3] *See generally,* FED. RULE EVID. 502; FED. R. CIV. PRO. 26(b)(3); FED. R. CIV. PRO. 26(b)(4). *See also,* PRE-TRIAL ORDER NO. 1, ¶ 20; PRE-TRIAL ORDER NO. 14, ¶ 2; PRE-TRIAL ORDER NO. 18.

[4] *See* PREFACE, *supra.*

[5] *See, e.g.,* FED. RULE CIV. PRO. 33(a)(2); M.A. Everett v. U.S. Air Group, Inc., 165 F.R.D. 1, 3 (D.D.C. 1995); B. Braun Medical v. Abbott Labs, 155 F.R.D. 525, 527 (E.D.Pa. 1994); In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 334 (N.D.Cal. 1985).

## RESERVATION OF RIGHTS TO SUPPLEMENT AND AMEND

Plaintiffs respectfully reserve the right to supplement and amend these discovery responses as formal expert reports are finalized and served, and/or as different or additional facts or information may come to light through discovery or is otherwise uncovered or developed.

**AND NOW,** subject to, and without waiving, each and every one of the General Objections, Limitations and Reservations, which apply to each and every one of Defendants' Requests for Admissions, as though restated in full therein, Plaintiffs respectfully respond as follows:

## THE BP PARTIES' REQUESTS FOR ADMISSIONS[6]

REQUEST FOR ADMISSION NO. 1

Admit that the United States Government approves long string production casing designs for deepwater wells in the Gulf of Mexico.

RESPONSE

Upon confirmation, acceptance and joinder of the United States, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 2

Admit that the United States Government has approved long string production casing designs for deepwater wells in the Gulf of Mexico.

RESPONSE

Upon confirmation, acceptance and joinder of the United States, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

---

[6] Requests 1-58 are being propounded by only the BP Parties

REQUEST FOR ADMISSION NO. 3

Admit that a long string production casing design is an acceptable design for deepwater wells in the Gulf of Mexico.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to the Request on the basis that the term "acceptable" is vague and ambiguous and without sufficient context. Plaintiffs deny that the long string casing design utilized in the drilling of the Macondo Well was acceptable.

REQUEST FOR ADMISSION NO. 4

Admit that the United States Government does not require a negative pressure test during temporary abandonment procedures.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to the Request on the basis that the term "require" is vague and ambiguous. Plaintiffs deny that a negative pressure test was not required of BP in order to fulfill BP's responsibilities under the applicable MMS Regulations.

REQUEST FOR ADMISSION NO. 5

Admit that the United States Government does not have guidelines for interpreting negative pressure tests.

RESPONSE

Upon confirmation, acceptance and joinder of the United States, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 6

Admit that there are no federal regulations regulating negative pressure tests during temporary abandonment procedures.

RESPONSE

*See* Objections and Responses to Requests Nos. 4 and 5.

REQUEST FOR ADMISSION NO. 7

Admit that there are no federal laws regulating negative pressure tests during temporary abandonment procedures.

RESPONSE

*See* Objections and Responses to Requests Nos. 4 and 5.

REQUEST FOR ADMISSION NO. 8

Admit that there are no MMS regulations regulating negative pressure tests during temporary abandonment procedures.

RESPONSE

*See* Objections and Responses to Requests Nos. 4 and 5.

REQUEST FOR ADMISSION NO. 9

Admit that there are no established industry standards relating to negative pressure tests during temporary abandonment procedures.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to the Request on the basis that the term "established industry standards" is vague and ambiguous.  Subject to, and without waiving such objections, the Request is denied.

REQUEST FOR ADMISSION NO. 10

Admit that there were no safety advisories issued by the MMS in effect at the time of the Incident requiring backup control systems on blowout preventers above and beyond what is required by 30 C.F.R. § 250.440-250.451.

RESPONSE

Upon confirmation, acceptance and joinder of the United States, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 11

Admit that the Flag State did not identify failures in Transocean's Safety Management System's risk assessment, maintenance, or material condition in time to ensure the safety of the *Deepwater Horizon.*

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that it is vague and ambiguous.  In particular, the term "failures" and the phrase "in time to ensure" are vague, ambiguous, and lack sufficient context. Moreover, it is not clear how or to whom such conditions would have been "identif[ied]".

REQUEST FOR ADMISSION NO. 12

Admit that the United States Coast Guard did not identify failures in Transocean's Safety Management System's risk assessment, maintenance, or material condition in time to ensure the safety of the *Deepwater Horizon.*

RESPONSE

*See* Objections to Request No. 11.

REQUEST FOR ADMISSION NO. 13

Admit that the United States Coast Guard regulations for dynamic positioned vessels do not properly address the current design, operation, and manning found aboard these vessels.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that it is vague and ambiguous.  In particular, the terms "properly" and "address" are vague, ambiguous, and lack sufficient context.  Further, Plaintiffs do not believe that such contention, if established, would be legally or factually relevant.  Subject to, and without waiving, the above and foregoing objections, the Request is denied.

REQUEST FOR ADMISSION NO. 14

Admit that there is no evidence of any communications from the American Bureau of Shipping to Det Norske Veritas regarding possible Safety Management System deficiencies found aboard the *Deepwater Horizon.*

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objections No. 9).  Plaintiffs further object to the insufficiently defined time-frame. Subject to, and without waiving, the above and foregoing objections, based upon available information, the PSC would be willing to discuss, at the conclusion of discovery, a potential stipulation regarding this contention, (subject to objections on the basis of foundation, relevance, and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 15

Admit that the United States Government's approval of BP's Application for Permit to Drill a New Well (Form MMS 123A/123S), dated May 13, 2009, was made pursuant to 30 CFR 250, 410 and 30 CFR 250.418.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that "pursuant to" is vague and ambiguous and without sufficient context.  Subject to, and without waiving, the above and foregoing objections, the PSC would be willing, upon confirmation, acceptance and joinder of the United States, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 16

Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated September 28, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 17

Admit that the United States Government's approval of BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted September 29, 2009, was made pursuant to 30 CFR 250.403.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 18

Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123AI123S), dated October 15, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 19

Admit that the United States Government's approval of BP's Form MMS-124, dated October 21,2009, was made pursuant to 30 CFR 250.465.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 20

Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated October 29,2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 21

Admit that the United States Government's approval of BP's Incident Report, dated November 30, 2009, was made pursuant to 30 CFR 250.190.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 22

Admit that the United States Government's approval of BP's Form MMS-124, dated December 28,2009, was made pursuant to 30 CFR 250.465.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 23

Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS l23A/123S), dated January 12,2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

   *See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 24

   Admit that the United States Government's approval of BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted January 28, 2009, was made pursuant to 30 CFR 250.403.

RESPONSE

   *See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 25

   Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS l23A/123S), dated January 25, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

 RESPONSE

   *See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 26

   Admit that the United States Government's approval of BP's Application for Permit to Modify (Form MMS-124), dated March 10, 2010, was made pursuant to 30 CFR 250.465.

RESPONSE

   *See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 27

   Admit that the United States Government's approval of BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

   *See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 28

Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS l23A/l23S), dated March 25, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 29

Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/l23S), dated March 26, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 30

Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 14, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 31

Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 32

Admit that the United States Government's approval of BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010, was made pursuant to 30 CFR 250.465.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 33

Admit that the United States Government's approval of BP's Application End of Operations Report (Form MMS 125), accepted April 21, 2010, was made pursuant to 30 CFR 250.465.

RESPONSE

*See* Objections and Response to Request No. 15.

REQUEST FOR ADMISSION NO. 34

Admit that, at the time of the Incident, no country had mandated the installation of an acoustic control system on any blowout preventer without allowing alternatives.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objections Nos. 5, 6, 8 and 9). Plaintiffs further object to the use of the term "mandated" as vague and ambiguous.

REQUEST FOR ADMISSION NO. 35

Admit that the design, manufacture, and installation of blowout preventers is governed by 30 CFR §§ 250.441-250.444.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that the term "governed" is vague and ambiguous.  Further, the Request, as phrased, seems to imply that no other Law or Regulations relate or apply to the design, manufacture, and installation of blowout preventers.  Subject to, and without waiving, the above and foregoing objections, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 36

Admit that on April 20, 2010, the *Deepwater Horizon* BOP had at least four remote-controlled, hydraulic-operated devices within the BOP.

RESPONSE

Subject to the GENERAL OBJECTIONS, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 37

Admit that on April 20, 2010, the *Deepwater Horizon* BOP comprised two annular BOPs, two ram bodies equipped with pipe rams, and one ram body equipped with blind-shear rams.

RESPONSE

Subject to the GENERAL OBJECTIONS, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 38

Admit that on June 30, 2003, the *Deepwater Horizon* performed an emergency riser disconnect using the BOP's Emergency Disconnect System ("EDS") operation during a hurricane.

RESPONSE

Subject to the GENERAL OBJECTIONS, upon confirmation, acceptance and joinder of the Transocean Defendants, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 39

Admit that on June 30, 2003, the blind-shear rams of the *Deepwater Horizon* BOP sheared 5.5" drill pipe and secured the well during an EDS operation

RESPONSE

Subject to the GENERAL OBJECTIONS, upon confirmation, acceptance and joinder of the Transocean Defendants, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 40

Admit that on June 30, 2003, the Lower Marine Riser Package ("LMRP") of the *Deepwater Horizon* BOP disconnected from the BOP stack during an EDS operation.

RESPONSE

Subject to the GENERAL OBJECTIONS, upon confirmation, acceptance and joinder of the Transocean Defendants, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 41

Admit that the *Deepwater Horizon* BOP passed all its federally-mandated function tests while located at the Macondo Well.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this request on the basis that "federally-mandated" and "function tests" are vague, ambiguous and lacking in sufficient context.  Subject to, and without waiving, the above and foregoing objections, the PSC would be willing, upon confirmation, acceptance and joinder of the United States, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 42

Admit that the *Deepwater Horizon* BOP passed all its federally-mandated pressure tests while located at the Macondo Well.

RESPONSE

*See* Objections and Responses to Request No. 41.

REQUEST FOR ADMISSION NO. 43

Admit that the *Deepwater Horizon* BOP sealed the annulus between the drill pipe and the BOP inner wall during both the positive and negative pressure tests conducted on April 20, 2010.

RESPONSE

See GENERAL OBJECTIONS, (particularly General Objections Nos. 4-9).

REQUEST FOR ADMISSION NO. 44

Admit that Transocean personnel were required to activate the *Deepwater Horizon* BOP to shut in the well as quickly as possible after the detection of a kick or flow in the well.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that the terms "required" and "activate" and "detection" and the phrase "as quickly as possible" are vague, ambiguous, and lacking in sufficient context. Subject to, and without waiving, the above and foregoing objections, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 45

Admit that on March 8, 2011, Transocean personnel waited at least 30 minutes from the time when they had incontrovertible evidence that the Macondo Well was flowing before activating the Deepwater Horizon BOP in an attempt to shut in the Macondo Well.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that the "the time when they had incontrovertible evidence" is vague, ambiguous, and lacking in sufficient context. Subject to, and without waiving, the above and foregoing objections, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 46

Admit that on April 20, 2010, Transocean personnel waited at least 28 minutes from the time when they had incontrovertible evidence that the Macondo Well was flowing before activating the *Deepwater Horizon* BOP in an attempt to shut in the Macondo Well.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that the "the time when they had incontrovertible evidence" is vague, ambiguous, and lacking in sufficient context. Subject to, and without waiving, the above and foregoing objections, the PSC, at the conclusion of the fact discovery process, would likely be willing to enter into an appropriate stipulation regarding the time period in question.

REQUEST FOR ADMISSION NO. 47

Admit that at the time of the March 8, 2011 flow from the Macondo Well and the April 20, 2010 flow from the Macondo Well, the same individual, Dewey Revette, was serving as the driller.

RESPONSE

Subject to the GENERAL OBJECTIONS, and upon confirmation, acceptance and joinder of the Transocean Defendants, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation, relevance and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 48

Admit that no Transocean employee attempted to activate the EDS on the *Deepwater Horizon* BOP until after the first explosion on the *Deepwater Horizon* on April 20, 2010.

RESPONSE

Subject to the GENERAL OBJECTIONS, and upon confirmation, acceptance and joinder of the Transocean Defendants, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 49

Admit that Transocean had responsibility for maintaining, inspecting, and testing the *Deepwater Horizon* BOP.

RESPONSE

In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that "responsibility" is vague, ambiguous and lacking in sufficient context. Subject to, and without waiving, the above and foregoing objections, the PSC would be willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 50

Admit that following the blowout, explosion, and fire on April 20, 2010, the necessary conditions for activation of the automatic mode function of the *Deepwater Horizon* BOP were met.

RESPONSE

 In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that that "necessary conditions for activation" is vague, ambiguous and lacking in sufficient context. Subject to, and without waiving the above and foregoing objections, the PSC is willing, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 51

 Admit that solenoid 103 of the yellow control pod of the *Deepwater Horizon* BOP did not work as expected on April 20, 2010, preventing the automatic mode function from closing the BOP's blind-shear rams using the yellow control pod.

RESPONSE

 In addition to the GENERAL OBJECTIONS, Plaintiffs object to this Request on the basis that it is worded in a confusing fashion, and that the phrase "work as expected" is vague, ambiguous and lacking in sufficient context.  Subject to, and without waiving the above and foregoing objections, the PSC is willing, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 52

 Admit that on April 20, 2010, the blue control pod batteries did not have sufficient charge to operate the automatic mode function for the *Deepwater Horizon* BOP.

RESPONSE

 The PSC is willing, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 53

 Admit that Transocean hired Cameron to maintain the batteries of the control pods of the *Deepwater Horizon* BOP.

RESPONSE

The PSC is willing, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 54

Admit that Transocean hired Cameron to convert the lower variable bore ram to a test ram of the *Deepwater Horizon* BOP.

RESPONSE

The PSC is willing, upon confirmation, acceptance and joinder of the Transocean Defendants and Cameron, to enter into a stipulation regarding this fact, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 55

Admit that Transocean's *Deepwater Horizon* rig was unseaworthy as of April 20, 2010.

RESPONSE

The PSC takes the position that Transocean's *Deepwater Horizon* rig was unseaworthy as of April 20, 2010, and would be willing to enter into a stipulation, if and as appropriate, to that effect.

REQUEST FOR ADMISSION NO. 56

Admit that Transocean negligently operated the *Deepwater Horizon* rig on April 20, 2010.

RESPONSE

The PSC takes the position that Transocean negligently operated the *Deepwater Horizon* rig on April 20, 2010, and would be willing to enter into a stipulation, if and as appropriate, to that effect.

REQUEST FOR ADMISSION NO. 57

Admit that Transocean had privity and/or knowledge of the unseaworthiness of the Deepwater Horizon rig on April 20, 2010.

RESPONSE

The PSC takes the position that Transocean had privity and/or knowledge of the unseaworthiness of the Deepwater Horizon rig on April 20, 2010, and would be willing to enter into a stipulation, if and as appropriate, to that effect.

REQUEST FOR ADMISSION NO. 58

Admit that Transocean had privity and/or knowledge of the negligent operations of the *Deepwater Horizon* rig on April 20, 2010.

RESPONSE

The PSC takes the position that Transocean had privity and/or knowledge of the negligent operations of the *Deepwater Horizon* rig on April 20, 2010, and would be willing to enter into a stipulation, if and as appropriate, to that effect.

## THE ANADARKO NON OPERATING PARTY DEFENDANTS REQUESTS FOR ADMISSION[7]

REQUEST FOR ADMISSION NO. 59

Admit that you have no evidence of Communications on April 20, 2010 between any of the Anadarko Non Operating Party Defendants and any person on the *Deepwater Horizon* regarding the Macondo Well.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "communications" is vague, ambiguous and lacking in sufficient context. Otherwise, the Request is denied.

REQUEST FOR ADMISSION NO. 60

Admit that you have no evidence of Communications on April 20, 2010 regarding the Macondo Well between any of the Anadarko Non Operating Party Defendants and any persons or entity operating the *Deepwater Horizon* or drilling the Macondo Well.

RESPONSE

*See* Objections and Response to Request No. 59.

---

[7] Requests 59-72 are propounded only by the Anadarko Non Operating Party Defendants.

REQUEST FOR ADMISSION NO. 61

Admit that you have no evidence of Communications on April 20, 2010 between any of the Anadarko Non Operating Party Defendants and BP, Transocean, or Halliburton with respect to the *Deepwater Horizon* or the Macondo Well.

RESPONSE

*See* Objections and Response to Request No. 59.

REQUEST FOR ADMISSION NO. 62

Admit that you have no evidence that the Anadarko Non Operating Party Defendants made any design decisions relating to the Macondo Well.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  Subject to, and without waiving, the above and foregoing objections, Plaintiffs respectfully state that, at this stage in the proceedings, the PSC is not able to either stipulate nor deny.

REQUEST FOR ADMISSION NO. 63

Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well:

(a)     The April 2010 decision to use a long string versus a liner with tieback for the final casing segment of the Macondo Well;

(b)     Any cement design for the Macondo Well;

(c)     Any cement recipe for the Macondo Well;

(d)     The use of six rather than 21 centralizers on the final long string production casing for the Mocondo Well;

(e)     The April 19-20 decision not to run a cement bond long even after having Schlumberger personnel present on the rig;

(f)     The Temporary Abandonment procedure sent to the rig on April 20, 2010;

(g)     Displacing to seawater from 3300' below mud level to above (or across) the Blow Out Preventer before performing a negative pressure test.

(h)     Deeming the negative pressure test a success on April 20, 2010;

  (i)   Continuing with displacement of the riser after the final negative pressure test on April 20, 2010;

  (j)   Setting the cement plug at 3300' below mud level, setting it in seawater rather than mud, and its thickness as part of temporary abandonment;

  (k)   Bypassing the Sperry Sun meters on April 20, 2010 during displacement of the Macondo Well and riser to seawater and offloading of mud to the *Damon Bankston*.

  (l)   Diversion of the gas to the mud gas separator on April 20, 2010.

<u>RESPONSE</u>

 *See* Objections and Responses to Request No. 59.

<u>REQUEST FOR ADMISSION NO. 64</u>

 Admit that you have no evidence that the Anadarko Non Operating Party Defendants made any operational decisions regarding drilling the Macondo Well.

<u>RESPONSE</u>

 *See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "made any operational decisions" and "regarding drilling" are vague, ambiguous and lacking in sufficient context. Otherwise, the Request is denied.

<u>REQUEST FOR ADMISSION NO. 65</u>

 Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any decisions or actions regarding temporary abandonment of the Macondo Well.

<u>RESPONSE</u>

 *See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "were involved in any decisions or actions" and "regarding temporary abandonment" are vague, ambiguous and lacking in sufficient context. Otherwise, the Request is denied.

REQUEST FOR ADMISSION NO. 66

Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any decisions or actions regarding cementing of the long string production casing at the Macondo Well.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "were involved in any decisions or actions" and "regarding cementing" are vague, ambiguous and lacking in sufficient context. Otherwise, the Request is denied.

REQUEST FOR ADMISSION NO. 67

Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in decisions or actions regarding process safety (i.e. the set of processes to prevent catastrophic losses which focus on design of facilities, hazard assessment, management of change, inspection, testing, maintenance of equipment, alarms, effective process control, procedures, training, and human factors) either aboard the *Deepwater Horizon* or with respect to drilling of the Macondo Well.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "were involved in any decisions or actions" and "regarding process safety" are vague, ambiguous and lacking in sufficient context. Otherwise, the Request is denied.

REQUEST FOR ADMISSION NO. 68

Admit that you have no evidence that any of the Anadarko Non Operating Party Defendants ever were aboard the *Deepwater Horizon* while the rig was drilling the Macondo Well.

RESPONSE

This is not a proper Request for Admission.  Nevertheless, upon confirmation, acceptance and joinder of the BP Defendants, Plaintiffs will enter into a stipulation regarding the fact that Anadarko personnel were not on the *Deepwater Horizon* while it was at the Macondo, with respect to the February 2012 Trial, (subject to objections on the basis of foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 69

Admit that you have no evidence that the Anadarko Non Operating Party Defendants were given authority by any Person to make decisions regarding methodologies and activities and/or to control activities in connection with the relief efforts to cap, contain, or otherwise control the source of the Oil Spill after the Incident or in connection with efforts to control the fire aboard the *Deepwater Horizon.*

RESPONSE

*See* GENERAL OBJECTIONS, (in particular General Objections Nos. 1-3, 5, 6, 7, 8 and 9); this is not a proper Request for Admission.  In addition, Plaintiffs object to this Request on the basis that "authority" is vague, ambiguous and lacking in sufficient context. Subject to, and without waiving, the above and foregoing objections, the PSC is willing, upon confirmation, acceptance and joinder of the BP Defendants and the United States, to stipulate to this fact, with respect to the February 2012 Trial, (subject to foundation and/or other evidentiary objections).

REQUEST FOR ADMISSION NO. 70

Admit that BP had exclusive authority to make all decisions concerning the cement job for the Macondo Well including decisions to approve the cementing recipes and designs submitted by Halliburton and any decisions to alter or accept those recipes or designs.

RESPONSE

Upon confirmation, acceptance and joinder of the BP Defendants, Plaintiffs are willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial.

REQUEST FOR ADMISSION NO. 71

Admit that BP had exclusive authority to make all final decisions concerning the design and drilling of the Macondo Well and any decisions to alter the design or drilling of that well.

RESPONSE

Upon confirmation, acceptance and joinder of the BP Defendants, Plaintiffs are willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial.

REQUEST FOR ADMISSION NO. 72

Admit that BP had exclusive authority to make all decisions concerning the selection and suitability of the *Deepwater Horizon* to complete the drilling of the Macondo Well, including but not limited to the status, configuration, use, and testing of the Blowout Preventer.

RESPONSE

Upon confirmation, acceptance and joinder of the BP Defendants, Plaintiffs are willing to enter into a stipulation regarding this fact, with respect to the February 2012 Trial.


## HALLIBURTON ENERGY SERVICES, INC.'S REQUESTS FOR ADMISSION[8]

REQUEST FOR ADMISSION NO. 73

Admit that modeling by Halliburton Energy Services, Inc., prior to the cementing of the Macondo Well indicated that the use of twenty-one centralizers would result in a minor gas flow problem.

RESPONSE

For the purposes of the February 2012 Trial, the PSC will enter into a stipulation that an OptiCem Report was generated by Halliburton on April 14, 2010, which stated "[relevant language]" and/or to the relevance and admissibility of the report.

REQUEST FOR ADMISSION NO. 74

Admit that modeling by Halliburton Energy Services, Inc., prior to the cementing of the Macondo Well indicated that the use of seven centralizers would result in a severe gas flow problem.

RESPONSE

See Response to Request No. 73.

REQUEST FOR ADMISSION NO. 75

Admit that no decisions by Halliburton Energy Services, Inc., related to cementing of the Macondo Well were based upon cost-cutting measures considerations.

RESPONSE

Subject to the GENERAL OBJECTIONS, denied.

---

[8] Requests 73-78 are being propounded only by Halliburton Energy Services, Inc.

REQUEST FOR ADMISSION NO. 76

Admit that Plaintiffs have identified no decisions by Halliburton Energy Services, Inc., related to cementing of the Macondo Well based upon cost-cutting measures.

RESPONSE

*See* GENERAL OBJECTIONS, (particularly General Objection No. 7, as well as General Objections Nos. 5, 6, 8 and 9); this is not a proper Request for Admission. Otherwise, the Request is denied.

REQUEST FOR ADMISSION NO. 77

Admit that the cement slurry tested in February 2010 was not identical to the cement slurry ultimately used in cementing the Macondo Well.

RESPONSE

*See* GENERAL OBJECTIONS. At this stage in the discovery process, the PSC is not prepared to either stipulate or deny.

REQUEST FOR ADMISSION NO. 78

Admit that a test of the cement slurry ultimately used in the Macondo Well in April 2010 did indicate that the slurry would be stable.

RESPONSE

*See* GENERAL OBJECTIONS. At this stage in the discovery process, the PSC is not prepared to either stipulate or deny.

## INTERROGATORIES[9]

INTERROGATORY NO. 17

For each of your responses to the above requests for admission that is anything but an unqualified admission, please state each fact in support of your response, identify each person with knowledge of each such fact, and identify each document that supports your response.

---

[9] Interrogatory No. 17 is being propounded by the BP Parties with respect to Requests for Admission 1-58, by the Anadarko Non Operating Defendants with respect to Requests for Admission 59-72, and by Halliburton with respect to Requests for Admission 73-78.

RESPONSE

Subject to, and without waiving, the GENERAL OBJECTIONS stated herein, and GENERAL OBJECTIONS NOS. 4, 6, 7, 8, 9 and 10 to the PLAINTIFFS' STEERING COMMITTEE'S OBJECTIONS AND RESPONSES TO VARIOUS DEFENDANTS' (CORRECTED) FIRST JOINT DISCOVERY REQUESTS TO PLAINTIFFS dated June 11, 2011:

*See* OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION NOS. 1, 13 and 25, *and,* OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4 contained within PLAINTIFFS' STEERING COMMITTEE'S OBJECTIONS AND RESPONSES TO VARIOUS DEFENDANTS' (CORRECTED) FIRST JOINT DISCOVERY REQUESTS TO PLAINTIFFS dated June 11, 2011.

This 13th day of June, 2011.


Respectfully submitted,


___/s/   Stephen J. Herman_____              ___/s/ James Parkerson Roy_____
Stephen J. Herman, La. Bar No. 23129            James Parkerson Roy, La. Bar No. 11511
HERMAN HERMAN KATZ & COTLAR LLP                 DOMENGEAUX WRIGHT ROY & EDWARDS LLC
820 O'Keefe Avenue                              556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113                    Lafayette, Louisiana 70501
Telephone: (504) 581-4892                       Telephone: (337) 233-3033
Fax No. (504) 569-6024                          Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                        E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*                    *Plaintiffs Liaison Counsel*


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Discovery Responses have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, this 13th day of June, 2011.


___/s/ Stephen J. Herman and James Parkerson Roy