

U.S. Department of Justice

Civil Division, Torts Branch
Admiralty & Aviation
P.O. Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463

Telephone: (415) 436-6648
Facsimile:  (415) 436-6632
Email:  mike.underhill@usdoj.gov

*Overnight Delivery Address:*
*7th Floor, Room 7-5395*
*450 Golden Gate Avenue*
*San Francisco, CA 94102-3463*

June 23, 2011

Via E-Mail

Magistrate Judge Sally Shushan
United States Magistrate Judge
United States Courthouse, Room B-345
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA.  70130

    Re:   *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*
          USDC, EDLA, Civ. No. 10-MD-2179-CJB-SS
          DJ #62-32-260

Dear Magistrate Judge Shushan:

     On June 17, 2011, the Court directed all parties to respond to a list of questions regarding potential preservation of the *Deepwater Horizon's* Blow-Out Preventer (BOP). The United States respectfully responds to those questions by noting that the litigation interests of the Department of Justice, the Joint Investigators of the Coast Guard and BOEMRE, the Deepwater Horizon Criminal Task Force, and all other offices participating in the multi-district litigation have completed work with the BOP necessary for their respective efforts, and have no need to retain the BOP further, with the following minor exceptions.

     The United States requests that the "Pods" associated with the BOP, all pieces and parts of the Pods, including solenoids, batteries, *etc.*, and the PETUs (Portable Electronic Testing Units), including their computer support components and interconnect cable used for testing the Pods, be retained. Without going into technical detail, the Pods served as the undersea "brains" of the BOP stack and its operation. The Pods consist of various electrical, mechanical, and hydraulic components that, among other things, affected

and/or controlled the ability of the *Deepwater Horizon* to disconnect itself and the marine riser from the BOP upon (a) initiation of the EDS procedure from the vessel itself and (b) by the automated AMF function which colloquially is referred to as a "deadman function." Again without going into detail, these two failed emergency procedures are central to issues in the MDL cases. The PETUs were used to test components of the Pods within the last few weeks, and issues have arisen concerning the PETUs themselves.

All of the foregoing equipment is small scale. Each of the Pods, including their components, are measured in relatively small numbers of feet. For comparison sake only, each would easily fit inside a small commercial dumpster and can and would be stored inside a secure facility that would not be subject to outside hurricane influences. The PETUs are about the size of a breadbox and likewise would be stored inside.

The United States will also retain the drill pipe pieces recovered from the BOP stack, as well as the 45 foot section of riser pipe recovered from the scene of the events. The drill pipe is not part of the BOP in the first instance and therefore is not the subject of the Court's Order regarding preservation of the BOP stack. As the drill pipe and riser pipe may be critical to certain issues in the case, we nevertheless advise the Court of the intent to retain them at NASA Michoud in a secure area.

Finally, the Court will recall that at the conclusion of the JIT testing of the BOP and the beginning of the subsequent litigation related testing requested and sponsored by BP, an independent federal agency, the Chemical Safety Board (CSB), sought additional tests. The Court noted at that time that entities that were not parties to the litigation would not be permitted to participate in the litigation related testing, but left open the opportunity for additional testing after the litigation related work was completed. Hoping to pursue that opportunity, the Chemical Safety Board (CSB) has noted that it would appreciate the chance to explore the options and costs of additional testing of the BOP and/or its components to support its safety investigation. CSB recognizes that the cost of such testing, and of any preservation necessitated by such testing, would have to be borne by the agency. To determine the financial and practical limits of its options, CSB would appreciate the opportunity to coordinate with current federal custodians of the equipment in order to conclude any arrangements and cost reimbursement issues regarding access and/or preservation it believes necessary and appropriate for its safety investigation.

With the exception of that potential for additional tests by the CSB, and with the exception of the specific equipment and parts noted above, the United States has no objection to the remainder of the BOP's being returned to Transocean as the equipment's owner. That said, the United States observes that the Court's existing Order regarding preservation of evidence would continue to apply, without exception, to Transocean.

The United States does not request that Judge Barbier view the BOP, but likewise has no objection if another party so wishes or if the Court desires to do so *sua sponte*.

Finally, at this time the United States does not intend to use a physical model of the BOP at trial.

                    Very truly yours,

                    /s/ R. Michael Underhill
                    R. Michael Underhill
                    Attorney in Charge
                    Dept. Of Justice, Torts Branch
                    West Coast and Pacific Rim Office

cc: (via e-mail)

    Plaintiffs' Liaison Counsel
    Defendants' Liaison Counsel
    States Coordinating Counsel
    Steve O'Rourke, U.S. DOJ
    AUSA Sharon Smith
    Heather Kennealy (USCG)
    Charles Wallace (DOI)