## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig       **MDL NO. 2179**
     "Deepwater Horizon" in the Gulf
     of Mexico, on April 20, 2010       **SECTION J**

Applies to:
*Case No. 10-4536-CJB-SS*       **JUDGE BARBIER**
      **MAGISTRATE JUDGE SHUSHAN**

### ORDER

**[Regarding the Motion of the Sierra Club, Inc. to Intervene (Rec. Doc. 1115)]**

On December 15, 2010, the United States of America ("United States"), filed a complaint in this proceeding against BP, Anadarko, MOEX, Transocean, and certain insurers.[1] The United States alleges that as a result of the uncontrolled well event of April 20, 2010, millions of barrels of oil were discharged into and upon the waters of the Gulf of Mexico and adjoining shorelines of the United States. It seeks: (1) civil penalties under Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7), for the discharge of the oil; (2) a declaratory judgment that all defendants are liable under the Oil Pollution Act ("OPA"), 33 U.S.C. §2702(a); and (3) injunctive relief as appropriate. Civil Action 10-4536 (Rec. doc. 1).

On February 7, 2011, the Sierra Club, Inc. ("Sierra Club") filed a motion for leave to intervene in the action brought by the United States pursuant to Fed. R. Civ. P. 24(a)(2) (intervention

---

[1] The defendants are BP Exploration & Production, Inc. ("BP"), Anadarko Exploration & Production LP, Anadarko Petroleum Corporation (collectively "Anadarko"), MOEX Offshore 2007 LLC ("MOEX"), Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc. (collectively "Transocean"), QBE Underwriting Ltd., and Lloyd's Syndicate 1036 ("Lloyd's").

of right), or in the alternative, pursuant to Fed. R. Civ. P. 24(b) (permissive intervention).[2]   The

United States (Rec. doc. 1411), BP (Rec. doc. 1438), Anadarko and MOEX (Rec. doc. 1428) oppose

the application to intervene.

### A.   Intervention under CWA and OPA

BP contends that CWA and OPA prevent Sierra Club from intervening in the action brought

by the United States.  CWA Section 505 authorizes citizens' suits against any person who is alleged

to be in violation of: (1) an effluent standard or limitation under Chapter 26 (water pollution

prevention and control); or (2) an order issued by the EPA Administrator or a State with respect to

such a standard or limitation.  33 U.S.C. § 1365(a)(1).  Unlike Section 311 which is retrospective,

Section 505 is concerned with ongoing violations.  If the EPA Administrator or a State has

commenced and is diligently prosecuting a civil or criminal action to require compliance with the

standard, limitation, or order, the citizen may not bring an action, but may intervene as a matter of

right in such an action.  33 U.S.C. § 1365(b)(1).  The United States has not alleged an ongoing

violation of an effluent standard or limitation and it  is not proceeding under Section 505.  Sierra

Club acknowledges that "[b]ecause the discharge of oil has stopped, it cannot bring an action of its

own under the CWA citizens' suit provision."  Rec. doc. 1115 at 4, n. 2.

Pursuant to OPA, "each responsible party for a vessel or a facility from which oil is

discharged . . . into or upon the navigable waters or adjoining shorelines . . . is liable for the removal

costs and damages . . . that result from such incident."  33 U.S.C. § 2702 (a).  "In the case of natural

resource damages . . . liability shall be . . . to the United States Government for natural resources

_____

[2]Sierra Club does not contend that it has an unconditional right to intervene by federal statute.  Fed. R. Civ. P. 24(a)(1)

belonging to, managed by, controlled by, or appertaining to the United States. . . . ." 33 U.S.C. § 2706(a)(1). "The President . . . shall act on behalf of the public . . . as trustee of natural resources to present a claim for and to recover damages to the natural resources." 33 U.S.C. § 2706(b)(1). "The President shall designate the Federal officials who shall act on behalf of the public as trustees . . . ." 33 U.S.C. § 2706(b)(2). These Federal officials "shall assess natural resource damages . . . for the natural resources under their trusteeship; . . . [and] shall develop and implement a plan for the restoration, rehabilitation, replacement, or acquisition of the equivalent, of the natural resources under their trusteeship." 33 U.S.C. § 2706(c)(1)(A) and (C). "Plans shall be developed and implemented . . . only after adequate public notice, opportunity for a hearing, and consideration of all public comment." 33 U.S.C. § 2706(c)(5). There is no provision under OPA for private enforcement suits with respect to natural resource damages. Thus, Sierra Club has no right of action under the statute.[3]

BP argues that intervention of right under Rule 24(a)(2) cannot be expanded to CWA situations in which Congress did not provide for such intervention. Sierra Club responds that BP is attempting to write out Rule 24(a)(2). It urges that its motion to intervene is not an attempt to bring claims covered by the citizen suit provision. Rather, it argues that its intervention is critical because CWA does not provide for penalties under both Section 505, the citizen suit provision, and Section 311, the provision under which the United States is proceeding. If there is no right to intervene in the Government's Section 311 action, it contends that no environmental group will be

---

[3] The person who owns or leases the property which is damaged by the discharge of oil has the right of action to recover damages for injury to or economic losses resulting from the destruction of the property. 33 U.S.C. § 2702 (b)(2)(B). Here, Sierra Club does not allege any damages of its own under OPA.

a party to the assessment of civil penalties against BP.  Sierra Club urges that this was not the intent of Congress in authorizing citizen suits under Section 505.  It contends that Trbovich v. United Mine Workers of America, 404 U.S. 528, 92 S.Ct. 630 (1971), demonstrates that intervention of right exists for it because that is the only means to protect the interests of its members.

In Trbovich, a union member filed an initial complaint with the Secretary of Labor challenging a union election.  The Secretary filed suit to set aside the election.  The union member sought to intervene in the suit.  The statute under which the Secretary was proceeding prohibited union members from initiating a private suit to set aside an election.  The Secretary opposed the intervention and argued that the statute stripped union members of any right to challenge an election and vested that right exclusively in the Secretary.  The Supreme Court found that the Secretary's position was not supported by the legislative history.  It held that the statute did not impose a bar to intervention by a union member, so long as the intervention was limited to the claims of illegality presented by the Secretary.

Congress gave citizens an unconditional right to intervene in an action brought under CWA Section 505.[4]  CWA is silent about a right to intervene in an action for civil penalties brought by the Government under Section 311.  If Congress had intended to deny a right to intervene in such an action, it could have so provided.  Therefore, the issues are whether Sierra Club has a right to intervene under Rule 24(a)(2), and if it does not, whether it may be granted leave to intervene under Rule 24(b).

_____

[4] Pursuant to Rule 24(a)(1), a citizen may intervene in an action by the EPA Administrator under Section 505.

**B. Rule 24(a)(2)**.

Pursuant to Rule 24(a)(2),

On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Id.  In New Orleans Public Service, Inc. v. United Gas Pipeline Company, 732 F.2d 452 (5th Cir. 1984) (*en banc*)(hereafter "NOPSI"),[5] the Fifth Circuit denied intervention and stated:

It is well-settled that to intervene as of right each of the four requirements of the rule must be met: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

Id. at 463 (quotation marks omitted).[6]

In Ross v. Marshall, 426 F.3d 745 (5th Cir. 2005), the Fifth Circuit stated:

Although failure to satisfy any one element precludes the applicant's right to intervene, we have noted that the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application, and concluded that intervention of right must be measured by a practical rather than technical yardstick.  Intervention should generally be allowed where no one would be hurt and greater justice could be attained.

426 F.3d at 753 (footnotes and quotation marks omitted).

---

[5]  One of the circuit judges filed a dissenting opinion in which four judges joined.  The dissent expressed "full agreement with that portion of the opinion which holds that the Mayor and City Council of New Orleans, are not entitled to intervention as a matter of right. . ." under Rule 24(a)(2).  732 F.2d at 474.  The dissent objected to the denial of permissive intervention.

The parties do not dispute that Sierra Club's application is timely.

[6]  See also Sierra Club v. Espy, 18 F.3d 1202 (5th Cir. 1994); Sierra Club v. Glickman, 82 F.3d 106, 109 (5th Cir. 1996); and Ross v. Marshall, 426 F.3d 745, 753 (5th Cir. 2005).

### 1.  What kind of interest is required?

In <u>NOPSI</u>, the Fifth Circuit stated that intervention of right requires a direct, substantial,

legally protectable interest in the proceeding.  <u>Id</u>. at 463.

> By requiring that the applicant's interest be not only "direct" and "substantial," but also "legally protectable," it is plain that something more than an economic interest is necessary.  What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.  This is reflected by the requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest.  The real party in interest requirement of Rule 17(a), Fed.R.Civ.P., "applies to intervenors as well as plaintiffs," as does also the rule that "a party has no standing to assert a right if it is not his own."

<u>Id</u>. at 464 (emphasis in original).  The Fifth Circuit noted that, "intervention has been held subject

to the prudential standing requirement that the presence of harm to a party does not permit him to

assert the rights of third parties in order to obtain redress himself." <u>Id</u>. at 464 (quotation marks

omitted).  The Fifth Circuit held:

> [A]n economic interest alone is insufficient, as a legally protectable interest is required for intervention under Rule 24(a)(2), and such intervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action.

<u>Id</u>. at 466.

Sierra Club argues that <u>NOPSI</u> is distinguishable because it is concerned with a dispute over

a private contract and was not a public law case.  The Fifth Circuit acknowledged it was not a public

law case, but considered intervention in such cases:

> In public law cases where statutory or constitutional violations are asserted as a basis for recovery, it has been said that standing is present when the complainant suffers injury and the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.  As a recognized text has observed, this zone of interest standing test in public law cases is somewhat analogous to the Rule 17(a) standard that the party possess a substantive right under the applicable law.  In a sense, a party

within the zone of interests protected by a statute may possess a type of substantive
right not to have the statute violated.

Id. at 464-65 (citations and quotation marks omitted).  The NOPSI applicants contended that the

Rule 24(a)(2) principles described above, including the comments on public law cases, were

inapplicable because Trbovich authorized intervention under circumstances where the intervenor

could not have initiated the suit.  Id. at 465.  Sierra Club also contends that Trbovich demonstrates

that intervention of right exists because it is the only means available to protect its interests.  The

Fifth Circuit responded that "*Trbovich,* however, cannot be read to allow Rule 24(a)(2) intervention

for the purpose of asserting the substantive rights of others, or as recognizing for that purpose an

interest based on a substantive right not belonging to the intervenor."  Id. at 465.  It found that the

interest of the union member in a proper election was within the zone of interest protected by the

statute.  It acknowledged that it is "often a difficult matter to determine the zone of interests

protected or regulated by a constitutional provision or statute of general application."  Id. at 465.[7]

---

[7] In a footnote in Ross v. Marshall, 426 F.3d 745, 757 n. 46 (5th Cir. 2005) the Fifth Circuit
stated:

> We articulated the "real party in interest" requirement in *New Orleans Public
> Service, Inc.,* 732 F.2d at 464, in which we observed that the real party in interest
> requirement of Fed. R. Civ. Proc. 17(a) applies to potential intervenors as well as
> parties.  Our application of this rule here is complicated by the fact that "Rule 17(a)
> applies only to those who are asserting a claim and thus is of most importance with
> regard to *plaintiffs.*" 6A Charles Alan Wright, et al., Federal Practice and Procedure
> § 1543 (1990) (emphasis added). With respect to a potential intervenor seeking to
> *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that
> the intervenor is a real party in interest when the suit was intended to have a "direct
> impact" on the intervenor. *See Sierra Club v. Glickman,* 82 F.3d 106, 109 (5th
> Cir.1996)

Id.

The United States, relying on NOPSI, contends that Sierra Club must establish that it is a "real party at interest" with respect to the claims at issue and it suffers a harm beyond that suffered by the public generally.  The United States argues that Sierra Club is not a real party at interest because it cannot enforce the claims described by the United States in its complaint.  It contends that because Sierra Club has only a generalized interest, it cannot demonstrate a legally protectable interest in natural resource damages obtained pursuant to OPA. [8]

Sierra Club responds that it is the real party in interest regarding its claims because it asserts its interest in protecting and restoring the natural resources of the Gulf of Mexico.  It contends that this is a public law case so the proper inquiry is whether Sierra Club is within the zone of interest. It contends that the zone of interest is not meant to be especially demanding.[9]

Although NOPSI did not involve a public law question, it contains a detailed discussion of the interest required for intervention in a public law case.  While Sierra Club is not required to satisfy the real party in interest test, it is required to demonstrate that the interests urged by it are within the zone of interests protected by the substantive provisions of CWA and OPA under which the United States is proceeding against the defendants.  732 F.2d at 465.

---

[8] The United States cites Ross to demonstrate that the Fifth Circuit employs a more relaxed assessment of whether an applicant is a real party in interest when seeking to defend an interest, but the stricter standard described in NOPSI is employed when the applicant seeks to prosecute and the Government is the plaintiff and is enforcing the law.

[9] Sierra Club cites Clarke v. Securities Industry Ass'n, 479 U.S. 388, 399, 107 S.Ct. 750 (U.S.).  The statement arises in the context of agency review, where the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.  Id.  Clarke is not helpful in determining what kind of interest is required for Rule 24(a)(2).

2.  **Sierra Club's interests.**

Sierra Club contends that the following interests satisfy the second requirement of Rule 24(a)(2): (1) its interest in potential settlement; (2) the relationship between the action by the United States under CWA and OPA and other BP oil spill litigation to which the Sierra Club is a party; (3) its members' interests in protecting, restoring, and improving water quality and the health of the impacted ecosystems; and (4) its interest in ensuring that the responsible parties are held fully accountable for the damages to the natural resources and assessing maximum penalties to deter future acts.

a.    <u>Settlement</u>.

Sierra Club notes that CWA penalty actions are often settled with consent decrees that involve Supplemental Environmental Projects ("SEPs").  It describes SEPs as environmental mitigation projects that defendants agree to undertake in addition to paying penalties.  It urges that a settlement should address comprehensive restoration of the damaged coastal and marine ecosystems and the future protection of these sensitive resources.  It contends it is uniquely qualified to identify potential SEPs.

In <u>Ross</u>, the Fifth Circuit required that an applicant's interest be sufficiently direct to permit intervention of right.  It stated that "an interest sufficient to justify intervention under Rule 24(a) must be direct, as opposed to remote or contingent. . . ." 426 F.3d at 758 (quotation marks omitted). The United States argues that Sierra Club's interest in the development of SEPs is too contingent to be considered direct, substantial and legally protectable.  BP contends that there is no authority that an interest in the disposition of settlement proceeds justifies intervention under Rule 24(a)(2). It urges that if an interest in the development of SEPs is sufficient to allow direct intervention of

right, hundreds of individuals and groups might contend that they have an interest in determining how a SEP might be directed.  Sierra Club replies that any further applications to intervene would not meet the test of timeliness.

Even if further applications would not be timely, the Court cannot ignore the precedent established in concluding that an interest in the development of SEPs is sufficient.  Many persons have an interest in environmental projects to mitigate the results of an oil spill and that fact confirms that such an interest is too contingent to be considered direct and substantial.  It is well beyond the zone of interests protected by the substantive provisions of CWA and OPA under which the United States is proceeding.  Moreover, pursuant to OPA, any plans for the restoration of natural resources are developed only after adequate public notice, opportunity for a hearing, and consideration of all public comment.  33 U.S.C. § 2706(c)(5).

    b.    Other litigation.

The Sierra Club is a co-plaintiff in a suit challenging the approval by the MMS of BP's 2009 Gulf of Mexico Regional Oil Spill Response Plan ("Plan").  See "Gulf Restoration Network, et al v. Dep't of Interior," CA 10-1156 (E.D.La.).  It also intervened as a defendant in the challenges to the drilling moratorium.  See "Hornbeck Offshore Services, LLC v. Salazar," CA 10-1663 (E.D.La.), and "ENSCO Offshore Co. v. Salazar," CA 10-1941 (E.D.La.).   It contends that these are related to the instant action.  It argues that if it is prohibited from intervening in this case based on the interest requirement, its ability to protect its interest in these other matters will be impaired.[10]

The United States responds that Sierra Club's pursuit of other actions arising out of the spill

---

[10]  It does not explain how a denial of the right to intervene in the instant action will impair its interest in other litigation to which it is a party.

does not establish that it has a direct and substantial interest in the instant action. While BP assumes that Sierra Club holds a direct and substantial interests in the other actions, it contends that Sierra Club cannot use such interests to demonstrate a direct and substantial interest in this action.  It notes that the instant action by the United States is retrospective and the outcome of the moratorium litigation has no effect on the instant action.

If Sierra Club is to intervene, it must present a direct and substantial interest in the subject matter of the instant action by the United States without regard to whether or not it has an interest in other actions.

        c.      <u>Aesthetic and environmental interests</u>.

Sierra Club states:

> [I]t has a legally protectable interest in protecting, restoring, and improving water quality and the health of the impacted ecosystems. The specific interests of representative Sierra Club members are described in the attached declarations, and include canoeing, kayaking, protecting and restoring wildlife habitat and lands and waters impacted by the oil and dispersants for their aesthetic and recreational enjoyment.  These Sierra Club members also describe how the oil spill has affected them, e.g., by diminishing their enjoyment of these activities, causing them to avoid certain areas, to avoid seafood, to clean their boats of oil and to refrain from swimming.

Rec. doc. 1115 at 13.  Sierra Club submitted seven declarations from its members in support of its motion to intervene.  By way of example, it submitted a declaration from Devin Martin of Lafayette, Louisiana who reports that: (1) he grew up hunting, fishing and swimming in Louisiana's salt water marshes near Barataria Bay and Grand Isle; (2) after the spill, he took trips to Grand Isle and boat trips in Barataria Bay to document oil covering the marsh and beach; (3) his ability to enjoy swimming, fishing and seafood was adversely impacted by the spill and the use of dispersants; (4) he organized rallies at Grand Isle and in Baton Rouge concerning oil spill issues; (5) he works to

restore habitats for migrating birds, to force agencies to address concerns of ciguatera toxins, and to raise awareness of coastal erosion issues; and (6) he is concerned that a learning opportunity has been lost and the long term, cultural, environmental, and economic consequences will not be addressed adequately.  Rec. doc. 1115 (Exhibit D).  Sierra Club contends that these declarations establish far more than a generalized interest in the subject matter of the action.  It contends that its aesthetic and environmental interests are legally protected interests and they meet the direct and substantial requirement for intervention.  It urges that its request for injunctive relief provides it with a direct and concrete interest in the potential injunctive relief in this action.

The United States responds that: (1) Sierra Club has no more than a generalized interest in ensuring that the federal environmental laws are enforced; (2) its asserted interests and those of its members are generalized and diffuse; (3) its interests relate to the protection of the Gulf of Mexico in a nonspecific way; (4) Sierra Club cannot demonstrate a legally protectable interest in natural resource damages obtained pursuant to OPA; (5) the interests described by the Sierra Club, for example the contention that the amount of any penalty may have future impact on its members' aesthetic and environmental interests, are speculative, indirect and contingent; and (6) the asserted interests do not directly, substantially, or legally relate to the subject matter of the underlying litigation.

While BP agrees that environmental interests are legally protectable, it argues that is not a sufficient Rule 24 (a)(2) interest in the United States' suit for collection of penalties for past conduct.[11]

---

[11]  BP states that it is not aware of any case in a which a court has granted a Rule 24(a)(2) motion where the underlying claim arose under OPA.  Rec. doc. 1438 at 14-15.  No such case has been cited.

Sierra Club and its members assert no more than a generalized interest in ensuring that the environmental laws as they relate to Gulf of Mexico and its natural resources are enforced.  The undersigned finds that Sierra Club's interests fall outside of the zone of interests of  the statutes under which the United States is proceeding.

        d.      <u>Responsible parties held fully accountable</u>.

Sierra Club cites <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc</u>., 528 U.S. 167, 194, 120 S.Ct. 693(2000), for the deterrent effect of civil penalties on future CWA violations.  It contends it has an interest in assessment of the maximum civil penalties and ensuring that responsible parties are held fully accountable for the natural resource damages.  It urges that its long-standing interest in CWA enforcement provides it with a right to intervene.

<u>Laidlaw</u> concerned the operation of the CWA citizen suit provisions.  Pursuant to CWA Section 505, injunctive relief may be granted and/or civil penalties may be imposed.  After the suit was filed, the defendant became compliant with its discharge permit and injunctive relief was deemed inappropriate, but civil penalties were assessed.  The Supreme Court held that a defendant's compliance with its permit after the commencement of litigation did not moot claims for CWA civil penalties.  528 U.S. at 180.  It stated that civil penalties "may serve, as an alternative to an injunction, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation."  <u>Id</u>. at 174.  It reaffirmed the holding in <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 106-107, 118 S.Ct. 1003 (1998), that citizen suit suitors lack standing to seek civil penalties for violations that have abated at the time of suit.

> In short, *Steel Co.* held that private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations, but our decision in that case did not reach the issue of standing to seek penalties for violations that are ongoing at the time of the complaint and that could continue into the future if undeterred.

Laidlaw, 528 U.S. at 188.

This action by the United States for civil penalties is retrospective.[12]  Thus, under Laidlaw, Sierra Club has no standing to assert its claim as it has not demonstrated that the penalties sought by the United Sates is within its zone of interest.

### 3.  Disposition may impair Sierra Club's interests.

Rule 24(a)(2) requires that the applicant be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest.  The possible outcomes are: (1) either the defendants are found liable for CWA penalties or they are not; (2) if they are liable for penalties, the penalties may be increased for gross negligence; (3) the defendants are liable to pay damages to the United States under OPA or they are not; (4) injunctive relief is imposed or it is not; and (5) the case is settled or it is not.

Sierra Club contends that its interest in the action may be impaired because: (1) it will not be able to bring its expertise to bear on the enforcement of CWA, the pursuit of a finding of gross negligence and other issues; (2) a settlement may not protect its interests; (3) it will not be able to coordinate the instant action with the other cases in which it is involved; (4) its interests are adverse to the interests of the United States; and (5) if any ultimate penalties and injunctive relief are insufficient, their will be no deterrent effect.

BP and the United States respond that Sierra Club may present its expertise to the Court by means of *amicus* filings.  Its interest in the terms of any settlement are protected by the provisions requiring public comment.  28 C.F.R. § 50.7.

Sierra Club contends that the determination of issues in this litigation would have direct

---

[12]  The United States does seek to deter future incidents.  Rec. doc. 1411 at 16.

consequences on its other legal actions.  It contends that because CWA Section 311 must consider the history of prior violations and other factors, the adequacy of the Plan may be an aggravating factor in the Section 311 claim.  The United States argues that Sierra Club's other cases bear so tenuous a relation to this CWA and OPA action, that they do not support intervention.  BP argues that Sierra Club's other cases do not involve CWA and OPA claims.[13]  Although the Plan and evidence concerning the effect of the dispersants may be relevant to the United States' Section 311 claim, this does not demonstrate the possibility of inconsistent results.

Sierra Club contends that anything less than the maximum amount of civil penalties will adversely effect its interests because without the maximum civil penalties BP and others will not be deterred from engaging in future violations.  It urges that the United States has not stated that it will seek maximum penalties.  The United States responds that Sierra Club does not present authority that a private party can hold a legally protectable interest in the deterrent effect of any penalty recovered by the United States.

Sierra Club has not demonstrated that it is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interests.

**4.  Adequacy of representation**.

In Edwards v. City of Houston, 78 F.3d 983 (5th Cir. 1996), the Fifth Circuit stated:

> The final requirement for intervention of right under Rule 24(a)(2) is that the would-be intervenor's interest not be adequately represented by existing parties.  The burden of establishing inadequate representation is on the applicant for intervention.  The Supreme Court has decided this requirement is satisfied if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal.

---

[13] Sierra Club states that its interests are adverse to the United States.  This will be considered on the issue of adequate representation.

>   Although the applicant's burden of showing inadequate representation is minimal, it cannot be treated as so minimal as to write the requirement completely out of the rule.  Accordingly, our jurisprudence has created two presumptions of adequate representation.

Id. at 1005 (citations, quotation marks and brackets omitted).

>   a.   First presumption.

>   First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity.  To overcome this presumption, the applicant must show that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it.  This presumption, and the heightened showing required to overcome it, is restricted, however, to those suits involving matters of sovereign interest. . . .

78 F.3d at 1005 (citations, quotation marks and brackets omitted).  The United States is proceeding in a matter of sovereign interest in its action against defendants.  Sierra Club must demonstrate that its interests are in fact different from the United States and will not be represented adequately by it.

Sierra Club argues that while the United States is required to represent the public in general, it represents specific environmental interests.  It acknowledges that while they both seek enforcement of the CWA, it asserts they have different overall interests contending that it has localized and focused environmental interests, whereas the United States represents economic and political interests that must be balanced against the environmental interests.  The United States responds that its objectives in the enforcement of this action are statutorily prescribed by CWA and OPA, and they are aligned with Sierra Club's interests.  It urges that they both seek to deter the defendants from future incidents.  BP asserts that at best Sierra Club and United States have different operational approaches, but they do not have different ultimate objectives.  BP contends that: (1) the objective of the United States is a determination that defendants must pay penalties under CWA and

16

are liable under OPA; and (2) Sierra Club seeks the same outcome.

Sierra Club contends that while it opposes more offshore drilling, the United States supports it.  It contends that the United States has exhibited a pattern, practice and policy of indifference to regulating BP's offshore oil drilling.  BP responds that Sierra Club does not indicate how the different objectives regarding the future of offshore drilling are implicated by the United States' action for CWA penalties or liability under OPA.

Sierra Club urges that the United States and it have different interests in the Natural Resources Damages Assessment process under OPA.  It contends that it has a heightened interest in this process and it urged the US to establish a committee of environmental community leaders to formally engage in the long-term restoration process.  BP responds that Sierra Club has not shown how its interests in the Natural Resource Damages Assessment process differ from that of the United States.

Sierra Club argues that the United States' policy on settlement may differ.  BP responds that any differing interests regarding settlement are resolved by Sierra Club's right to comment on a proposed settlement.

The responses of the United States and BP are persuasive.  Sierra Club has not demonstrated that its interests are in fact different from or inadequately represented by  the United States.  It has not overcome the first presumption of adequate representation.

     b. <u>Second presumption</u>.

     The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit.  In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption.

78 F.3d at 1005 (citations, quotation marks and brackets omitted); and <u>see</u> <u>Haspel & Davis Milling</u>

& Planting Company Ltd., 493 F.3d 570, 578-579 (5th Cir. 2007).  Sierra Club and the United States have the same ultimate objective.  Sierra Club does not contend that there is collusion.

Sierra Club reports that it is suing the United States for its approval of BP's Plan.  It alleges that the United States was complicit in the inadequate Plan, and it is culpable with BP for its failure.[14]  The United States responds that its approval of the Plan is not relevant to defendants' liability or whether the release of hydrocarbons was the result of wilful misconduct or gross negligence.  It urges that any allegation of culpability on its part is not at issue in the CWA penalty action.  It notes that OPA does not permit BP to use agency approval of the Plan as a defense to liability under OPA.  33 U.S.C. § 1321(j)(5)(H).

Sierra Club urges that it is in an adversarial position to the United States regarding dispersants.  It contends that because of the role of the United States in the approval of the use of dispersants, the United States is unlikely to raise or press the improper use of dispersants in assessing civil penalties against BP.  The United States responds that its approval of the dispersant use is not relevant to willful misconduct or gross negligence because the claim relates to the actions which led to the release and not those taken to remove the oil from the water once it was discharged.

The United States further argues that given the breadth and diversity of institutional interests represented by the federal government and by national environmental organizations like Sierra Club and the fact that at any given time they may be adverse in some matters, Sierra Club's adverse position in other litigation is not sufficient to demonstrate that its interests in the instant litigation

---

[14] Sierra Club's suit against the MMS alleges that the MMS approval of the Plan was arbitrary and capricious.  This suit was severed from MDL 2179.  District Judge Barbier found that the action against the MMS was not sufficiently related to the MDL and should be de-consolidated.  Rec. doc. 842.

are not adequately represented by the United States.[15]

Sierra Club contends that rulings in this action regarding the Plan and dispersants may have a preclusive effect on its claims in other litigation.  BP responds that none of the other actions overlap with the United States' instant CWA and OPA action and they are all brought under different statutes and concern different issues.  BP urges that the outcome in the instant action will not affect Sierra Club's other actions.  Sierra Club has not identified any potential rulings in this action which will have a preclusive effect on other Sierra Club actions.

Sierra Club has not demonstrated an adversity of interest on the part of the United States to overcome the second presumption of adequate representation.

c.   Other issues.

Sierra Club contends that the United States is a party to numerous contracts with oil companies, including BP, and therefore it has a conflict of interest "in seeking the maximum civil penalties against its business partners."  Rec. doc. 1115 at 27.  It urges that the Coast Guard is conflicted because it relies on such contracts for fuel for its air and vessel fleets, while it has responsibility for oil spill response and cleanup.  Sierra Club argues that because its goal is for the United States to transition to cleaner energy, it has no conflict in seeking maximum civil penalties.  BP responds that it is unsound to suggest that the United States will forgo penalties because of fuel supply contracts with oil companies, including BP.  Sierra Club urges that unlike the United States, it is immune to changes inherent in electoral politics.

---

[15] In Doe v. Glickman, 256 F.3d 371 (5th Cir. 2001), there were two separate cases against the federal government which raised the identical issue.  The government's position in one action was contrary to its position in the other action.  The Fifth Circuit concluded that the government did not adequately represent the applicant's position.  Id. at 380-81.  Although Sierra Club relies on Glickman, it has not demonstrated any circumstance where the United States is taking a position in the instant CWA and OPA action which is contradictory to a position it is taking in other litigation.

Even if Sierra Club has the same general goal as the United States, Sierra Club contends that the representation will be inadequate because it will raise arguments that will not be made by the United States.  The United States responds that this is wholly speculative.  It reserved its right to bring additional claims, including additional CWA claims.  BP responds that one of the arguments suggested by Sierra Club is actually a new claim (prohibition on discharges without a permit) and it cannot justify intervention to bring claims which have not been brought by the United States.

These additional arguments do not demonstrate that the representation of Sierra Club's interest by the United States will be inadequate.  Sierra Club has not made a minimal demonstration that the United States' representation of its interest is inadequate.  Sierra Club's motion for intervention of right under Rule 24(a)(2) will be denied.

**C.  <u>Permissive intervention under Rule 24(b)(1)</u>.**

In the alternative, Sierra Club seeks to intervene under Rule 24(b)(1).

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).  Sierra Club contends that its claims have questions of law and fact in common with the action by the United States.  It urges that its intervention would aid and enhance the resolution of the action by the United States and it will not delay the adjudication of the original parties' rights.  It states that it will confer with the United States to avoid conflict and redundancy and defer to it as the lead plaintiff when appropriate.  It urges that *amicus* participation is insufficient to protect its interests.  It requires party status to enable it to develop and present its case for maximum civil penalties.

The United States responds that Sierra Club is not legally entitled to seek relief for the CWA

and OPA claims asserted by the United States and therefore, it does not assert a valid claim for permissive intervention.  The United States contends that if Sierra Club is permitted to intervene, the rights of the United States would be materially diminished by denying it exclusive control over the prosecution of its claims.  It argues that the presence of the state and private plaintiffs seeking relief in tort on issues of negligence and gross negligence supports Sierra Club's participation as an *amicus* rather than as an intervening party.

BP argues that the analysis of Sierra Club's request to intervene of right weighs against a finding that it should be allowed to intervene permissively.  It urges that the intervention of Sierra Club would further complicate the case without added benefit.

Intervening party status is not required to permit Sierra Club to present its positions.  It may present *amicus* briefs.  In the event there is a settlement, it will be able to present public comment. These are sufficient to enable permit Sierra Club to make its positions known to the Court.  Its motion for permissive intervention will be denied.[16]  Accordingly;

IT IS ORDERED that Sierra Club's motion to intervene (Rec. Doc. 1115) is DENIED.

New Orleans, Louisiana, this 28 day of June, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**

---

[16]  Anadarko and MOEX contend that: (1) Sierra Club did not provide notice of its asserted CWA claim against them; and (2) the United States is prosecuting the claims against them.  They contend that these two facts divest the Court of jurisdiction over Sierra Club's CWA claims.  They argue that Sierra Club's OPA claims also suffer from jurisdictional defects.  It is not necessary reach these issues because Sierra Club is not entitled to intervene under either Rule 24(a)(2) or Rule 24(b).