# STONE PIGMAN WALTHER WITTMANN L.L.C.

## COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

45,600

June 28, 2011

Honorable Sally Shushan
Magistrate Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

    Re:    MDL No. 2179
                In Re:  Oil Spill by the Oil Rig "Deepwater Horizon"
                In the Gulf of Mexico on April 20, 2010

Dear Judge Shushan:

        Thank you for granting Cameron International Corporation ("Cameron") an opportunity to respond to the letter of June 23, 2011, from the U.S. Government and its assertion of a statutory privilege over communications of Det Norske Veritas ("DNV"). (Rec. Doc. 3010).

        At the outset, Cameron notes that the U.S. has now expanded the scope of its previous request for protection to now include (1) communications between DNV and JIT members; (2) DNV interim report and other project memoranda; and (3) internal DNV communications reflecting deliberations.[1]

        The U.S. now asks that an interim report and internal considerations of an expert retained for litigation be shielded from discovery even though that expert is *the only* expert with hands-on access to the product at issue and the expert's opinions and factual findings will be the foundational predicate for other experts in the litigation. Moreover, the government seeks to shield its own communications with this expert notwithstanding F.R.C.P. 26(b)(4)(C) 's provision which obligates the disclosure of certain communications between a party and its

---

[1] In its initial response to the subpoena duces tecum, the U.S. only claimed it sought protection over "anything related to deliberations and communications involving the JIT members and supporting government agencies, or involving DNV's deliberations not ultimately included in its final report (or addendum)." (Rec. Doc. 2799.) Interim report and other project memoranda were not mentioned.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 2

June 28, 2011

testifying expert. Lastly, not withstanding the alleged paucity of materials in dispute, the government refuses to log the documents as required by F.R.C.P. 26(b)(5)(A).[2]

**1.   The Government Continues To Ignore The Legal Requirement of A Privilege Log.**

In its June 23 letter, the government has entirely ignored Federal Rule 26(b)(5)(A)'s requirement of privilege log. Rather, the U.S. stands simply on the language of the statute, which does not even mention a log. As such, the statute does not relieve the government of its Rule 26 obligations.[3]

Moreover, without a log, neither the Court nor the parties have the tools necessary to evaluate the legitimacy of the U.S.' invocation of the 46 U.S.C. §6308(a) privilege on DNV's behalf.

**2.   Section 6308 Does Not Apply To Marine Casualty Investigations "As An Activity," Nor Can Its Protections Be Unilaterally Extended.**

The U.S. now argues that § 6308(a) applies to communications, interim reports, and project memoranda that remained entirely internal within DNV. This ignores the clear language of § 6308 and the expressed legislative purpose of the statute. These materials confirm that the statutory privilege was intended to apply to Coast Guard investigations and to Coast Guard personnel specifically. The U.S. simply declares that "Section 6308(a) protection . . . applies to marine casualty investigations *as an activity* and not to specific categories of personnel." (Emphasis added.) The government's attempt to include this "as an activity" language is unsupportable. With it, the U.S. seeks to spread a large, undefined blanket of § 6308 protection over all aspects of any marine casualty investigation. Such a broad blanket disregards the language in the statute and the stated purpose of the statute, which is to keep the U.S. - and not its hired consultants - from becoming involved in private civil litigation. But the U.S. is now embroiled in civil litigation, having filed suit and been sued. Thus, it is unfair to allow the government to assert a privilege designed to protect the government from involvement in civil litigation when the government has elected to participate in the litigation.

The U.S. further argues that the "DNV acted as an extension of the JIT." But the authorizing Order establishing the JIT does not grant it the authority to delegate governmental

---

[2]   The U.S. has claimed orally and in their June 23 letter that just slightly over 6 inches of paper represent the totality of documents subject to this dispute.

[3]   The Federal Rules of Civil Procedure note that they will apply in all proceedings other than certain enumerated statutory exceptions, such as prize proceedings in admiralty under 10 U.S.C. §§7651-7681, but there is no such exception for proceedings such as this action, or for assertions of privilege pursuant to 46 U.S.C. § 6308. F.R.C.P. 1, 81.

status, including special and specific government-only protections to third party contractors. The U.S. also fails to explain how the JIT has the authority to grant government-specific statutory privileges over non-governmental entities, without order, warning or debate.

The cases cited by the U.S. do not support the government's position. For example, in *In re Am. Milling Co.*, 270 F. Supp. 2d 1068, 1074-75 (E.D. Mo. 2003) (an opinion reversed in part on appeal, *see* 409 F.3d 1005 (8th Cir. 2005)), the court ruled that a Coast Guard investigation hearing transcript would not be admitted into evidence. Significantly, in dispute here are the DNV's communications, not the Coast Guard's. Moreover, that portion of the proffered transcript was not described in the opinion, and it may well have included protected "deliberations." Numerous other documents from that same proceeding *were admitted into evidence* despite objections, including charges of negligence brought by the Coast Guard. *See* 270 F. Supp. 2d at 1075.

3. **The FOIA Deliberative Process Privilege Is Not Applicable Here and, In Any Event, Would Not Protect The DNV Communications If It Did Apply.**

When it first asserted the privilege, the government referred to it as a "deliberative process" privilege. (Rec. Doc. 2799, p. 3.) In responding, Cameron purposefully did not invoke the very specific Freedom of Information Act (FOIA) "deliberative process privilege," which the government now embraces. First, FOIA is not § 6308. For example, in *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C.Cir.1984), the court explained that "it is unsound to equate the FOIA exemptions and similar discovery privileges," because the two sets of rules are driven by different, and sometimes conflicting, considerations. *See id.* at 1344.

Assuming in its letter that FOIA could somehow apply to this situation, the government cites "Exemption 5" to FOIA, which protects intra-agency communications from FOIA disclosure. That argument is unavailing here.

First, FOIA, by its own terms, does not apply here, as the request here was not a FOIA request but rather arose out of a subpoena duces tecum directed to a third party witness in litigation. Thus, FOIA's "Exemption 5" does not apply. But, even if FOIA and Exemption 5 did somehow apply, the statute would *still require disclosure* of the documents the U.S. seeks to withhold. Exemption 5 is not absolute. The Fifth Circuit has recognized an exception to Exemption 5: The Fifth Circuit has held that as an exception to Exemption 5, "[m]aterials involving the deliberative process may not be withheld *if they would be discoverable in private litigation*." *Cazalas v. U.S. Dept. of Justice*, 709 F.2d 1051, 1055 (5th Cir. 1983) (emphasis added). This exception to FOIA's Exemption 5 was developed by the U.S. Supreme Court and other appellate courts in response to attempts by the government to invoke the Exemption 5 deliberative process privilege in response to nearly every request under FOIA as, without limiting Exemption 5, "the exception carved out of FOIA's overarching policy of disclosure will quickly swallow up the rule." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Ct. App. 1996). The Supreme Court, in *EPA v. Mink*, 410 US 73 (1973), drew from the

language and intent of FOIA and from Exemption 5 in particular (5 U.S.C. s. 552(b)(5)) to conclude that "the public is entitled to all such memorandum or letters that a private party could discover in litigation with the agency."

F.R.C.P. 26(a) broadly establishes what is "discoverable in private litigation." It establishes that a complete statement of all opinions the witness will express and the basis and reasons for them;" and "the data or other information considered by [expert] witness informing his opinions" are clearly discoverable. F.R.C.P. 26(a)(2)(B).

Moreover, not all communications between a testifying expert and the party who retained him are protected from disclosure in private litigation. F.R.C.P. 26 provides, in part, the following materials must be disclosed: "(ii) . . . facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; (iii) . . assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." F.R.C.P. 26(b)(4)(C).

In the absence of a privilege log, the Court and the parties are unable to evaluate whether the withheld material falls within Rule 26's ambit of discoverable material. What we do know is that the government has intentionally withheld "internal deliberations" and an "interim report" of DNV as well as communications between DNV and the JIT. Without disclosure of DNV's internal communications and deliberations and JIT communications, Cameron may be unable to learn why certain assumptions were considered, adopted or abandoned, and whether or why theories of cause and effect were pursued and discarded. More from the government is required to support its claim of privilege.

4.  **The Government Has Waived Any Protections It May Have Had, Pursuant to F.R.E. 502.**

The government claims that the § 6308 privilege is not subject to waiver. Other than citing to the statute - which does not address waiver - the government does not explain why. Notably, none of the cases cited by the government involve a testifying expert or a situation in which the government itself is a party to the civil litigation.

The government's claim also fails to address F.R.E. 502's requirement of complete disclosure after partial disclosure of a privileged document is made. Rule 502 requires full disclosure of any protected material partially disclosed in a federal proceeding if the waiver was intentional, the disclosed and undisclosed communications concern the same subject matter, and in fairness all of the materials should be considered together. Fairness requires that parties such as Cameron, whose liability here rests exclusively on the BOP, be given wide latitude in questioning DNV, as its ultimate conclusions will no doubt play a significant role in any liability finding against or involving Cameron, and Cameron must be permitted to fairly defend itself by probing those conclusions.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 5

June 28, 2011

### 5. Cameron Has Good Cause to Require the Disclosure of This Information Pursuant to F.R.C.P. 26.

Federal Rule of Civil Procedure 26(b)(3)(A) directs that a party may obtain discovery of items typically protected from disclosure if they are relevant and if the party shows that it has substantial need for the materials and cannot obtain their substantial equivalent by other means. The materials sought are all directly related to the DNV's investigation of the Deepwater Horizon incident and are clearly relevant to this MDL action. Cameron in particular has substantial need for the materials sought, and DNV is the only party who has been granted access to the BOP, making it impossible to obtain the "substantial equivalent" of these investigatory communications by any other means. According to Rules 1 and 81 of the F.R.C.P., these rules govern in all actions with certain limited statutory exceptions - exceptions that do not include marine casualty investigations under 46 U.S.C. § 6308.

For all these reasons, the materials should be ordered produced.

With kind regards, I remain,

Sincerely,

*Phil Wittmann*

Phillip A. Wittmann

PAW:cmb

cc: Defense Liaison Counsel
    Defense Steering Committee
    Plaintiff's Liaison Counsel
    Mr. R. Michael Underhill
    Mr. Luther Strange
    Mr. Corey L. Maze
    Mr. Richard L. Gorman
    Mr. Mark Cohen
    Ms. Ruth Colvin
    Mr. Scott Bickford
    Ms. Carolyn Raines
    Ms. Heather S. Kennealy
    Mr. Steve O'Rourke
    Mr. Chuck Wallace
    Ms. Kat Shea
    Mr. Michael O'Keefe