UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | * * * * | MDL No. 2179 |
| | * | Member Case No. 11-01476 |
| | * | |
| STEPHEN B. MURRAY, SR. | * * | SECTION J – JUDGE CARL J. BARBIER |
| VERSUS | * * | DIVISION 1- MAGISTRATE JUDGE SALLY SHUSHAN |
| JAMES R. DUGAN, II, ESQ. | * * | |

**************************************

## ANSWER TO PETITION FOR DAMAGES AND COUNTERCLAIM

NOW INTO COURT, through undersigned counsel, comes Defendant, James R. Dugan, II, who responds to the Petition for Damages, Declaratory Relief, Injunctive Relief, and Jury Demand filed by Stephen B. Murray, Sr., as follows:

I.

The allegations contained in Paragraphs 1 through 4 are denied.

II.

The allegations contained in Paragraphs 5 and 6 as to the domicile and status of Plaintiff and Defendant are admitted.

III.

The allegations contained in Paragraphs 7 and 8 regarding jurisdiction and venue are denied for the reasons set forth in Defendant's Notice of Removal filed on June 22, 2011 (Doc. 1).

IV.

The allegations contained in Paragraphs 9 through 11 are admitted.

V.

The allegations contained in Paragraph 12 are denied as written.

VI.

The allegations contained in Paragraphs 13 and 14 are denied.

VII.

The allegations contained in Paragraphs 15 are denied as written.

VIII.

The allegations contained in Paragraph 16 are denied for lack of sufficient information to justify a belief therein.

IX.

The allegations contained in Paragraphs 17 are denied.

X.

The allegations contained in Paragraphs 18 through 19 are denied written.

XI.

The allegations contained in Paragraphs 20 through 30 are denied.

XII.

The allegations contained in Paragraphs 31 through 33 are denied as written.

XIII.

The allegations contained in Paragraphs 34 through 39 are denied.

XIV.

The allegations contained in Paragraphs 40 are admitted.

XV.

The allegations contained in Paragraph 41 are denied as written.

XVI.

The allegations contained in Paragraphs 42 through 43 are denied.

XVII.

The allegations contained in Paragraph 44 are admitted.

XVIII.

The allegations contained in Paragraphs 45 through 89 are denied.

XIX.

The allegations contained in Paragraph 90 are denied for lack of sufficient information to justify a belief therein.

XX.

The allegations contained in Paragraphs 91 through 95 are denied.

XXI.

The allegations of fact contained in Plaintiff's Jury Demand and in Paragraph 96 are denied.

XXII.

The allegations of the prayer for relief, opening paragraph, and any unnumbered or mis-numbered paragraphs are denied.

XXIII.

AND NOW, further answering, Dugan asserts the affirmative defenses of contributory negligence, estoppel, failure of consideration, fraud, res judicata, and extinguishment of obligation.

XXIV.

AND NOW, further answering, Dugan takes the position of Plaintiff-in-Counterclaim and asserts the following Counterclaim.

**PARTIES**

XXV.

Made Plaintiff-in-Counterclaim is James R. Dugan, II, a person of the full age of majority and domiciled in the Parish of Orleans.

XXVI.

Made Defendant-in-Counterclaim is Stephen B. Murray, Sr., a person of the full age of majority and domiciled in the Parish of Orleans.

**VENUE AND JURISDICTION**

XXVII.

Because this Court has original jurisdiction over claims arising from the Deepwater Horizon oil spill pursuant to 28 U.S.C. §1331, 43 U.S.C. §1331, *et seq.*, and 33 U.S.C. 2701, *et seq.,* and this attorney fee dispute involves oil spill claims administered by the GCCF, jurisdiction exists in this Court for this dispute.

XXVIII.

Further, as this Court is aware, the Hold-Back Agreement executed in connection with claims being paid by the GCCF requires that any dispute over fees be decided by this Court. Specifically, section 4 of the Agreement gives Judge Barbier exclusive venue and jurisdiction over any disputes that arise under the Agreement.

XXIX.

While the funds at issue at the moment might not be "hold-back" amounts, Dugan maintains that because of this Court's jurisdiction over GCCF claims, then it is the proper venue for this dispute.

## FACTUAL BACKGROUND

### 2006 Agreement

XXX.

James Dugan first set up his own law firm as a corporation in 2002, and that corporation remains in operation to this day as the Dugan Law Firm.

XXXI.

On May 1, 2006, Murray and Dugan entered into an agreement whereby Dugan was to bring certain class actions, mass tort actions, and Attorney General cases which he already had to the Murray Law Firm for joint prosecution by the two firms.

XXXII.

In exchange for Murray's agreement to reimburse Dugan for costs incurred in those cases and to front certain other future costs, expenses, and overhead, Dugan agreed to split the attorneys' fees generated in those cases with Murray.

XXXIII.

Instead of becoming an "employee" of the Murray Law Firm under the 2006 Agreement, Dugan maintained the Dugan Law Firm as a completely separate entity from the Murray Law Firm, and he continued working on numerous other cases solely under the Dugan Law Firm name. Murray was aware that Dugan continued to maintain his own separate caseload in addition to the shared cases.

XXXIV.

Dugan essentially had an independent contractor, or more fittingly an "of counsel," relationship with Murray. Murray never maintained any control over Dugan such as to be his employer. Although Dugan and Murray agreed to work together on certain class and mass tort actions, Murray exercised no control over Dugan in the prosecution of the cases.

XXXV.

Nearly from the beginning, Murray breached the 2006 Agreement by failing to cover in a timely manner the expenses associated with office space at 650 Poydras Street.

XXXVI.

Additionally, Murray failed to front the costs and expenses associated with the cases which Dugan brought to the Murray Law Firm, so Dugan was the one who carried the costs of the cases.

XXXVII.

Dugan had to ask repeatedly for the case costs and expenses to be paid, and the last time that Murray paid any costs and expenses was in **December 2009** despite the fact that Dugan made several requests in 2010 for reimbursements.

XXXVIII.

Subsequently, Murray became involved with litigation that created a conflict with Dugan's main client, Blue Cross Blue Shield of Louisiana ("BCBS"). Murray advised that instead of breaking off the association of the two firms, Dugan should write a letter to BCBS withdrawing from any past and future representation. As BCBS had been a long-time client of Dugan's, he did not want to end his representation of BCBS, so he decided to withdraw from the arrangement with Murray.

6

XXXIX.

Dugan and Murray met on October 14, 2010, so that Dugan could tell Murray he needed to end their association. Dugan also reiterated to Murray at that time that he owed Dugan over $600,000 in case costs and that he had not paid one dime to Dugan since December 2009.

XL.

Dugan again met with Murray on October 15 and reiterated that his departure was in the best interests of himself and his family, and he even suggested that they continue working together on cases and sharing some office space.

XLI.

Dugan sent Murray an email notification on October 17, 2010, of his official break with the Murray Law Firm.

XLII.

Subsequently, when Dugan was in New York on October 21 negotiating settlements for two GCCF clients, Murray had his assistant Beryl Fisse go to Dugan's office and tell the Dugan Law Firm employees that they had to pack their belongings and leave. Murray then told Dugan that the office locks would be changed, and he would only have access to the office to remove his belongings. Also during this lockout, Murray and/or one of his agents sifted through Dugan's personal office and desk searching for information and documents in a clear violation of privacy and common decency.

XLIII.

On June 1, 2011, Murray contacted another attorney with whom Dugan has a contractual working relationship with regard to the handling of certain Avandia cases, and he told that

attorney to not distribute any attorneys' fees from those Avandia cases to Dugan as they are allegedly controlled by the 2006 Agreement.

XLIV.

This act has caused financial harm to Dugan and caused damage to the contractual relations with said attorney. Dugan is entitled to be compensated as a result thereof.

XLV.

Dugan avers that Murray breached his obligations under that 2006 Agreement early on, and he continued to breach the Agreement until the time Dugan formally withdrew from the arrangement with Murray on October 17, 2010.

**2010 Joint Venture Agreement**

XLVI.

After the April 20, 2010 Deepwater Horizon oil spill took place, Dugan recommended to Murray that they approach Phil Cossich of Cossich, Sumich, Parsiola & Taylor regarding the possibility of working together to pursue claims arising from the oil spill.

XLVII.

Thereafter, in September 2010, agreements were reached with four particular clients[1] as to the contingency fees that Cossich and Dugan would receive from settlements reached for those clients. Notably, Murray was not a part of those agreements.

XLVIII.

On October 18, 2010, Dugan received $535,000 in fees earned in settlement of claims submitted to the Gulf Coast Claims Facility ("GCCF") on behalf of two particular clients. At

---

[1] So as to not reveal any confidential information about these clients, their names will not be revealed herein.

Murray's request a few days later, Dugan wired the entire $535,000 to Murray even though Dugan and Murray disputed their respective shares of said fees.

XLIX.

Murray claimed that the division of those fees was governed by the 2006 Agreement; however, besides the fact that that Agreement had long since been breached by Murray, there was no basis under the May 2006 agreement for such a claim by Murray as those two GCCF matters were simply not included in or contemplated by the May 2006 agreement. Further, those two GCCF clients never agreed in writing to Murray's representation, and they were certainly never advised that Murray planned to divide the fees based on the **2006 agreement.**

L.

Nonetheless, Murray distributed said disputed fees in violation of Rule of Professional Conduct 1.15(e), which provides as follows:

> (e) When in the course of representation a lawyer is in possession of property in which two or more persons **(one of whom may be the lawyer)** claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

LI.

Subsequently, on October 25 and November 3, 2010, Dugan, Murray, and Cossich met to discuss reaching a formal agreement with regard to sharing fees and pursuing claims arising from the BP oil spill.

LII.

On November 8, 2010, the Dugan Law Firm, the Murray Law Firm, and the Cossich firm entered into a joint venture agreement (hereinafter "JVA") with regard to the handling of the BP claims.

LIII.

This JVA provided that the Cossich firm would receive 50% of attorneys' fees generated in connection with these claims, and that Murray and Dugan would each receive 30% and 20%, respectively, of the fees. However, the agreement also plainly states that "Murray and Dugan dispute their respective entitlements to 50% of such fees, but acknowledge Cossich's entitlement to 50% of same."

LIV.

Further, this agreement was confected after several meetings during which Dugan was led to believe certain conditions would be met under the agreement. For example, he believed that oil spill fees received on October 18 would be divided pursuant to the JVA terms, that he would be getting committee assignments, and that he would be included in common benefit time.

LV.

As Dugan discovered later, though, these conditions were apparently not included, implicitly or explicitly, in the JVA. Further, the JVA itself notes there was no meeting of the minds as it clearly notes that Dugan and Murray dispute their shares of fees under the agreement.

LVI.

On March 25, 2011, Dugan filed in the Deepwater Horizon MDL a Motion to Deposit Funds into the Registry of the Court. This Motion was granted by this Court that same day; thus, $631,125.00 was placed in the registry of the Court by Dugan. These funds represent fees generated in the handling of GCCF claims, and they are still in the registry of the Court.

LVII.

According to Murray, the $631,125.00 in fees are governed by the 2010 JVA; however, this JVA purports to divide contingency fees between several unrelated law firms. As such, it

**must** meet the requirements of Rule 1.5(e) to be enforceable. If the JVA violates 1.5(e), then it cannot be enforced.

LVIII.

On March 30, 2011, Dugan filed a Second Motion to Deposit Funds into the Registry of the Court. Therein, he asked this Court to order Plaintiff to deposit disputed funds of $535,000.00 into the registry. This disputed $535,000 represents fees generated in the handling of GCCF claims, and these fees are the ones discussed in Murray's Petition for Damages in paragraphs 40 through 52.

LIX.

On or about April 18, 2011, the GCCF made another payment to a GCCF client. The funds were wired to Phil Cossich, and he is currently holding approximately $1,261,000 million in disputed fees in trust pursuant to Rule of Professional Conduct 1.15(e) pending the resolution of this matter.

## CAUSES OF ACTION

### Count I: Breach Of Conventional Obligation

LX.

Murray and Dugan entered into a conventional obligation, the 2006 Agreement, to work on certain cases together under particular terms and conditions.

LXI.

Dugan satisfied his obligations under the 2006 Agreement.

LXII.

Murray, however, breached his obligations under the 2006 Agreement as discussed above.

11

LXIII.

Dugan has suffered harm as a result of Murray's acts or omissions.

LXIV.

Civil Code article 2013 provides that when an obligor fails to perform, the obligee has the right to the judicial dissolution of the contract or the right to regard the contract as dissolved.

LXV.

Because of Murray's unilateral breach of the 2006 Agreement, Dugan is entitled to judicial dissolution of the 2006 Agreement as well as damages due to Murray's breach.

**Count II  Violation of Louisiana Unfair Trade Practices Act**

LXVI.

The acts and omissions described above have caused Dugan to suffer ascertainable loss of money or movable property, corporeal or incorporeal, namely his substantial interest in the legal fees earned in the above-discussed matters.

LXVII.

The ascertainable loss of money or movable property suffered by Dugan was caused by the use or employment by Murray of unfair or deceptive methods, acts, or practices.

LXVIII.

The acts and omissions of Murray described above constitute "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

LXIX.

Dugan is entitled to recover statutory damages, for Murray's violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*

LXX.

Dugan is also entitled to treble damages as set forth in the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*

LXXI.

Dugan is also entitled to attorneys' fees, as set forth in the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*

LXXII.

Dugan avers that a conformed copy of this petition is being filed with the office of the Louisiana Attorney General, pursuant to La. R.S. 51:1409(B).

### Count III:  Conversion

LXXIII.

As discussed above, Murray distributed disputed funds in the amount $535,000 even though he had full knowledge of Dugan's claim to a portion of those fees.

LXXIV.

Said distribution constitutes conversion of property belonging to Dugan, and Dugan is entitled to recover damages arising from said conversion.

### Count IV:  Delictual Harm

LXXV.

The above-discussed negligence and/or intentional acts and omissions of Murray constitute a breach of duty of care owed to Dugan.

LXXVI.

These negligent and/or intentional breaches of duty caused harm to Dugan.

LXXVII.

Pursuant to Louisiana Civil Code articles 2315 and 2317, among others, Murray is obligated to repair the harm caused by his negligent and/or intentional acts or omissions, and Dugan is entitled to recover all damages caused by Murray.

**Count V:  Fraud**

LXXVIII.

Murray's actions and inactions set forth hereinabove amount to fraud, as that term is defined in the Louisiana Civil Code articles 1953, *et seq.*

LXXIX.

Dugan alleges that Murray conspired to commit this fraud to his mutual enrichment and to the detriment of Dugan.

LXXX.

Dugan is further entitled to attorneys' fees, pursuant to the provisions of Louisiana Civil Code article 1958.

**Count VI:  Intentional Interference with Contractual Relations**

LXXXI.

As noted above, Murray has contacted at least one other attorney with whom Dugan has a contractual working relationship with regard to the handling of certain cases, and has told that attorney to not distribute any attorneys' fees to Dugan.

LXXXII.

This act has caused financial harm to Dugan and caused damage to the contractual relations with said attorney.  Dugan is entitled to be compensated as a result thereof.

## Count VII:  Quantum Meruit

LXXXIII.

Louisiana's Rule of Professional Conduct 1.5(e) controls situations such as these in which attorneys in different firms agree to share attorneys' fees.

LXXXIV.

As a result of Murray's breach of the 2006 Agreement, Dugan avers that that Agreement cannot govern the apportionment of legal fees earned in connection with any cases allegedly covered by that Agreement.  Instead the fees must be divided on a *quantum meruit* basis according to the services the attorneys performed and the responsibilities they assumed.

LXXXV.

As there was no meeting of the minds as to the 2010 Joint Venture Agreement, and that Agreement does not comply with Rule of Professional Conduct 1.5(e), it cannot govern the apportionment of legal fees earned in connection with any cases allegedly covered by that Agreement.  Instead the fees must be divided between Murray and Dugan on a *quantum meruit* basis according to the services each attorney performed and the responsibilities he assumed.

LXXXVI.

Rule of Professional Conduct 1.5(e), which became effective in its current form on April 1, 2006, provides as follows:

> (e) A division of fee between lawyers who are not in the same firm may be made only if:
>
>> (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive;
>>
>> (2) the total fee is reasonable; and

(3) each lawyer renders meaningful legal services for the client in the matter.

LXXXVII.

When there is not an enforceable agreement as to the division of fees, the fees must be divided on the basis of *quantum meruit*. Under *quantum meruit* basis, an attorney may receive payment only for the services he performed and the responsibilities he assumed.

LXXXVIII.

Further, under general contract law, and as stated above, if either the 2006 Agreement or the JVA violates the Rules of Professional Conduct, then they cannot be enforced.

**Count VIII: Declaratory Judgment**

LXXXIX.

Dugan is entitled to have this Court declare that the 2006 Agreement is null and void and that the 2010 Joint Venture Agreement is not binding as to the rights and obligations between Dugan and Murray.

**REQUEST FOR JURY**

XC.

Dugan requests a trial by jury.

**WHEREFORE**, Defendant and Plaintiff-in-Counterclaim, James R. Dugan, II, prays that his Answer be deemed good and sufficient and that after due proceedings had, there be judgment rendered herein in favor of Dugan, dismissing Stephen B. Murray, Sr.'s Petition for Damages, with prejudice, and at Murray's cost. Dugan further prays for judgment in his favor and against Murray based on the causes of action set forth in his Counterclaim, and for all such general, equitable and special relief as law, equity, or the nature of the case may permit as well as costs of these proceedings.

RESPECTFULLY SUBMITTED:

/s/ Jacques F. Bezou
_____
JACQUES F. BEZOU (T.A.) (3037)
STACY R. PALOWSKY (25203)
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, LA 70433
Telephone: (985) 892-2111
Facsimile: (985) 892-1413
Email: jbezou@bezou.com
Email: spalowsky@palowsky-law.com
*Attorneys for James R. Dugan, II*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Notice of Removal has been served on all counsel of record via this Court's ECF system and/or via electronic mail transmission this 29th day of June, 2011.

/s/ Jacques F. Bezou
_____
JACQUES F. BEZOU