## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § § | MDL No. 2179 SECTION "J" JUDGE BARBIER |
| This Document Relates to: | § § | MAGISTRATE |
| 10-4239 10-4240 10-4241 | § § § | SHUSHAN |

## SUR-REPLY IN OPPOSITION TO REPLY IN SUPPORT OF MOTION OF DEFENDANT ANADARKO PETROLEUM CORPORATION TO DISMISS THE COMPLAINTS OF THE MEXICAN STATES ["PLEADING BUNDLE C"]

# **TABLE OF AUTHORITIES**

FED. R. CIV. P. 12(B)(6)…………………………....……………………………………1

28U.S.C.§1961…………………………………………………………………………11

33 U.S.C. § 2701……………………………………………………………………17

33 U.S.C. § 2702……………………………………………………………………16

33 U.S.C. § 2706……………………………………………………………………16,17

33 U.S.C. § 2707……………………………………………………………………15,16

33 U.S.C. § 2718 (1) and (2)………………………………………………………5

33 U.S.C. § 2713……………………………………………………………………12

33 U.S.C. § 2717(c)………………………………………………………………6

33 U.S.C. § 2719 (a)(2)……………………………………………………………5

33 U.S.C. § 2718(c)………………………………………………………………5

43 U.S.C. §1333(2)(A)……………………………………………………………9

Cartagena Convention………………………………………………………18,19

Constitution of the State of Quintana Roo Article 1 and 3…..……………………………15

Constitution of the United Mexican States Article 40………………………..……………15

Constitution of the State of Tamaulipas Article 77……………………………….…...……15

Constitution of the State of Veracruz Article 1 and 15……………………….…...……15

Florida's Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.011………...…..21,22

MEXUS PLAN………………..……………………………………….…………………17

Tex. Nat. Res. Code Ann. § 40.001……………………………..……………….………21

Treaty on Maritime Boundaries between the United States of America and the United Mexican States………………………………………………………….…...…18

1992 Civil Liability Convention…………………………..……………………18,20

*Askew, Gov. of Fla. v. American Waterways Operators, Inc.*, 411 U.S. 325, 343 (1972)....…..6,10

*Bartholomew v. CNG Producing Co.,* 832 F. 2d 326, 328 (5th Cir. 1987)……………….8,9,10,11

*Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235, 240 (11th Cir. 1995).....14

*Doucet v. Gulf Oil Corp.,* 788 F. 2d 250, 252 (5th Cir. 1986)……………..……………….…..9

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 485-6 (1981)………………..…….…..8,9,10

*Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011)………..…14

*In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623, 631 (1st Cir. 1994)….…………..5

*Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007)………..……5

*Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998)……………………………..……………14

*Matte v. Zapata Offshore Co.,* 784 F. 2d 628, 630 (5th Cir. 1986), cert. den., 479 U.S. 872 (1986)……………………………………………………………………………………….....9

*Rodrigue v. AETNA,* 395 U.S. 352, 357 (1969)……………………………………..……………9

*S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58, 65 (1st Cir. 2000)………………...….…..…5

*Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90 (1998)…………………...……13

*Tangius v. M/V Westchester,* 153 F. Supp. 2d 859, 863  (E.D. La. 2001)…………………….…5

*The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011)………………………………………………………………………………..…..5

*Turner v. Murphy Oil USA, Inc.,* 2007 U.S. Dist. LEXIS 94304 *6(E.D. La. 2007)………...…14

*Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584, 175 (2009)…………………………………………….……13,14

*U.S. v. Locke*, 529 U.S 89, 106 (2000)………………………………………….....……………5

*U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058 (N.D. Ca. 2008)……………………...……….…5

*Walter Oil & Gas Corp. v. NS Group, Inc.*, 867 F. Supp. 549, 553 (S.D. Tex. 1994)…...…8

*Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561, 565 (D. Md. 2000)……...………5

COME NOW, Plaintiffs, the State of Tamaulipas, the State of Veracruz, and the State of Quintana Roo and file this their Sur-Reply In Opposition To Reply In Support Of Motion Of Defendant Anadarko Petroleum Corporation To Dismiss The Complaints Of The Mexican States ["Pleading Bundle C"], and in support thereof would respectfully show the Court as follows:

In the interests of brevity, Plaintiffs will not reiterate all of the arguments and authorities presented in their Consolidated Memorandum In Response And Opposition By Plaintiffs' State Of Veracruz, State Of Tamaulipas, And State Of Quintana Roo To Motion Of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint Of The State Of Tamaulipas, Republic Of Mexico Pursuant To FED. R. CIV. P. 12(B)(6); Motion Of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint Of The State Of Quintana Roo, Republic Of Mexico Pursuant To FED. R. CIV. P. 12(B)(6); And Motion Of Defendants Anadarko Petroleum Corporation And Anadarko E &P Company LP To Dismiss The First Amended Complaint Of The State Of Veracruz, Republic Of Mexico Pursuant To FED. R. CIV. P. 12(B) (6) (hereinafter "Plaintiffs' Response"). However, Plaintiffs do incorporate Plaintiffs' Response in its entirety by reference herein. Plaintiffs also adopt and hereby incorporate by reference all of the arguments and authorities presented in the Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Certain Bundle C Complaints Submitted by the Plaintiffs' Steering Committee. (Doc. 2110).

1.      CONTEXT OF ANADARKO'S ARGUMENTS.

Any assessment of Anadarko's arguments (as well as those of the other defendants herein) must take into account two salient factors. Having been responsible for the most disastrous and widespread oil spill in the history of the world, Anadarko [and other Defendants],

nevertheless, argue that they do not have *any* liability under any of the bases asserted by the various plaintiffs, including these Plaintiffs. Thus, Anadarko argues that it cannot be held liable under common-law state laws, maritime law, the Oil Pollution Act (OPA), Outer Continental Shelf Act (OCSLA), and/or any other statutory or legal basis asserted by the Mexican States or other plaintiffs. In essence, Anadarko assumes a "you can't catch me" approach that it argues allows it to escape all liability for its actions.

Secondly, notwithstanding its contentions that it cannot be held liable to Plaintiffs under state law and maritime law, Anadarko (and the other Defendants herein) do not hesitate to assert their own claims seeking to hold their co-defendants liable to them under the same legal bases asserted by Plaintiffs. In Anadarko's "Claim, Answer and Cross-Claims of Third-Party Defendants Anadarko Petroleum Corporation and Anadarko E &P Company LP" (Doc. No. 338), Anadarko raises numerous maritime and state law claims against other Defendants herein, although asserting the state claims in the alternative. By way of illustration only, Anadarko alleges: Maritime claims against BP for negligence (Count I and II) and Tort Indemnification (Count III); Breach of Contract [presumably a state claim] (Count VI); State law claims for Negligence and Willful Misconduct against BP (Count XII); State law claims for negligence (Count XIII); State law claims for indemnity in tort and contract (Count XIV). Other state claims against BP and other Defendants permeate Anadarko's filing, for example, Counts XV, XXII, XXIII, XXIV, XXX, XXXI,XXXIII, XXXVIII,XXXIX, XLV *etc.* Yet, in stark contradiction of these allegations, Anadarko's Reply urges that OCSLA "precludes application of state law" and that OCSLA's provisions "oust state law." (P. 4, Anadarko's Reply).

BP also asserted its own **state** law claims against other co-defendants, although they are disguised as OPA or admiralty claims. (BP's Cross-Complaint and Third-Party Complaint

2

Against Halliburton (Doc. No. 2082)). Regardless of how characterized, BP's claims against Halliburton resound as tort claims: Fraudulent Conduct (Count I--Par. 117, *etc.*); Fraudulent Concealment (Count II—Par. 125, *etc.*); and Negligence and Fault (Count III—Par. 132, *etc.*). Additionally, BP raised numerous state claims (also masked as OPA and/or maritime claims) against another co-defendant, Cameron: Negligence in design and maintenance of the blow out preventer. (Section J, Par. 57, *etc.*); Negligence in the Maintenance of the Blowout Preventer (Section K. Par. 71, etc.); Negligent Modification of the Blow Out Preventer (Section L. Par. 77 *etc.*). (BP Exploration & Production Inc.'s Third-Party Complaint Against Cameron International Corp., (Doc. No. 2065).

Similarly, Halliburton has also contradicted its contentions that state law claims cannot be maintained herein and asserted what are essentially state law claims against BP. (Original Cross-Claims of Defendant Halliburton Energy Services, Inc. (Doc. No. 2085)). By way of example, Halliburton alleges: *"*Count III—NEGLIGENCE/GROSS NEGLIGENCE/WILLFUL MISCONDUCT"); negligence claims against Cameron (Par. 51); negligence, gross negligence, and willful misconduct against Weatherford (Par. 52); Negligence against M-1, Dril-Quip, and others (Par. 53, 54, 55, respectively); strict products liability against Cameron in Count III (Par. 57-60).

Transocean, too, has filed claims based on state law seeking affirmative relief thereunder. (See, Transocean's Rule 13 Cross-Claims/Counter-Claims (Doc. No. 2068, Par. 65 and Par. 129). Thus, Transocean asserts: "Each of the Cross-Defendants named herein is jointly, severally, and/or solidarily liable under various principles of general maritime law *and/or applicable state and/or applicable federal tort law."* (emphasis added). *Id.* at Par. 66).

The credibility of Defendants' arguments that state and maritime claims cannot be maintained by Plaintiffs in this action must be assessed in the context of the Defendants' own pleadings in which they do not hesitate to assert similar claims against each other.

**2.      STATE CLAIMS ARE PRESERVED BY BOTH OPA AND OCSLA.**

   **A.      OPA Saves and Permits State Claims.**

Plaintiffs are mindful of Anadarko's spurious argument that it is OCSLA, not OPA, which precludes the assertion of state claims herein. (Page 4, Anadarko's Reply). In essence, Anadarko argues that through the incorporation of OPA, OCSLA sweeps away any and all state claims. Anadarko's arguments are incorrect. The proper starting point in this analysis is OPA's robust language preserving state claims. In Plaintiffs' Response, Plaintiffs have already noted the overwhelming number of court decisions (and OPA's statutory provisions) demonstrating that OPA's savings clauses expressly contemplate and permit the assertion of state claims and that OPA, therefore, does not displace or preempt state law claims. OPA, § 2718 (1) and (2); § 2719(a)(2); § 2718 (c) ("*Nothing*" in OPA "affects" or "modifies" "*in any way*" obligations or "liabilities" under "State law, *including common law*." (emphasis added)); *U.S. v. Locke*, 529 U.S 89, 106 (2000) ("We have upheld state laws imposing liability for pollution caused by oil spills . . . Our view of OPA's saving clauses preserves this important role for the states."); *In re Ballard Shipping Co. v. Beach Shellfish,* 32 F. 3d 623, 631 (1st Cir. 1994) ("The act [OPA] also expressly provides that it does not preempt state imposition of additional liability requirements."); *Isla Corp. v. Sundown Energy, LP,* 2007 U.S. Dist. LEXIS 31259 (E.D. La. 2007); *Tangius v. M/V Westchester,* 153 F. Supp. 2d 859, 863  (E.D. La. 2001)("OPA does not preempt state law in the area of oil spill liability and compensation."); *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.,* 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011) (". .

4

. prior to OPA, state law was applicable to sea-to-shore pollution. OPA's saving clauses preserve this conclusion even following enactment of OPA."); *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F. 3d 58, 65 (1st Cir. 2000) ("We have indeed acknowledged that congress did not intend the OPA to bar the imposition of additional liability by the states."); *Williams v. Potomac Elec. Power Co.,* 115 F. Supp. 2d 561, 565 (D. Md. 2000)(OPA does not preempt 'state laws of a scope similar to the matters contained in Title I of OPA such as the state common law actions pleaded here.); *U.S. v. M/V Cosco Busan,* 557 F. Supp. 1058 (N.D. Ca. 2008) ("OPA contains an unambiguous savings clause that expressly preserves the authority of the United States [and states] to impose liability pursuant to statutes other than OPA."). Moreover, it is a longstanding principle that sea-to-shore pollution historically has been within the reach of the police power of the states. *Askew, Gov. of Fla. v. American Waterways Operators, Inc.*, 411 U.S. 325, 343 (1972). OPA thus recognizes and reaffirms this principle through its savings clauses.

Furthermore, as also noted in its previously filed Plaintiffs' Response, acceptance of Anadarko's preemption or displacement argument would create anomalous results. Since state courts may maintain OPA claims **and state claims** under 33 U.S.C. § 2717(c), Anadarko's arguments that OPA precludes the assertion of state claims in federal courts would diminish the jurisdiction (or statutory authority) of federal courts and give state courts *broader* jurisdiction to handle state claims and remedies (along with OPA claims) than if those same claims had been brought in federal court. Clearly, this would be an absurd result under § 2717(c).

Ignoring all of the foregoing statutory language and case law, Anadarko, nevertheless, asserts, "The plain text of OPA's savings clause belies this notion [that state claims can be maintained]." (P. 4, Anadarko's Reply). In reality, Anadarko's argument ignores the plain text of OPA and the plain text of numerous decisions holding that OPA neither displaces nor preempts

state common-law claims or other state remedies. Anadarko attempts to complicate (and thereby obfuscate) what is abundantly clear. OPA's savings provisions unambiguously allow the assertion of state law claims, including state common-law tort claims. This conclusion is both inexorable and crystal clear.

Anadarko raises a curious contention erroneously implying that Plaintiffs seek to create "new areas" of state law remedies. (P. 4, Anadarko's Reply). Anadarko thus makes the inapposite assertion that "OPA saves only state law remedies that might otherwise be available; it does not open up new areas to state remedies where none previously existed." (*Id.*). Although Plaintiffs disagree with this unsupported assertion, it is irrelevant herein and Plaintiffs need not address it further. Plaintiffs do not seek to create new areas of state law liability. The traditional torts alleged (well-established in common-law) provide the basis for Plaintiffs' state claims. Thus, Plaintiffs are not intending to create "new" causes of action herein. Rather, they rely solely on what is already in existence and "otherwise available" under well-established state law.

### B.     OCSLA Allows The Assertion of State Claims.

Having already demonstrated that state claims can be asserted even in the context of OPA, the analysis turns to the impact of OCSLA. The result is not any different—state claims can also be asserted even in the OCSLA framework. As seen below, state claims and state remedies coexist with OCSLA in two separate and independent ways:

1.      State laws are applied under OCSLA (although redesignated as "federal") where applicable and consistent with federal law. There is no inconsistency between any state claim asserted herein and the federal law Defendant asserts applies—OPA;

2.      If OPA is the federal law that applies under OCSLA, OPA itself permits and "saves" Plaintiffs' state claims. Therefore, if OPA is to be applied through OCSLA, its savings provisions must also be applied and these provisions necessarily inject and permit the state claims.

Anadarko urges this Court to accept the untenable proposition that state law is inapplicable to the OCSLA legal framework. Anadarko thus argues that only "federal" law applies herein and that the federal law is OPA. (P. 2, Anadarko Reply).[1] As noted above, Anadarko argues that OCSLA "ousts" state law. Anadarko's arguments rely on a curtailed analysis which inappropriately omits important segments of the opinions it quotes and ignores the language in OCSLA. In citing such cases as *Bartholomew v. CNG Producing Co.,* 832 F. 2d 326, 328 (5th Cir. 1987). Anadarko emphasizes the court's reasoning that the applicable law was defined by § 1333 and/or that the applicable law must be "federal". (P. 4-5, Anadarko Reply). However, a proper analysis cannot stop with that pronouncement for that is only half of the relevant inquiry. A reading of § 1333 reveals that this provision does not contain any substantive law provisions (*e.g.,* listing of elements that create liability or available elements of relief). Therefore, merely asserting that OCSLA applies does not address all of the issues to be addressed by the Courts, *i.e*., which substantive or remedial laws should apply. *See, Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 485-6 (1981) ("Our first task is to determine the source of law that will govern whether such an instruction [jury instruction] must be available in an OCSLA case. OCSLA … mandates that state laws apply as federal laws" to the extent that they are applicable and not inconsistent with federal laws); *Walter Oil & Gas Corp. v. NS Group, Inc.*, 867 F. Supp. 549, 553 (S.D. Tex. 1994) ("First, under OCSLA, [the issue is] what law should be applied: Federal common law or state law (and if state law, the law of which state)?"

---

[1] Plaintiffs dispute that OPA would be the federal law that would be applicable through OCSLA. Indeed, there is no basis urged by Anadarko as to why OPA would need OCSLA in order for it to have effect as opposed to its having operative effect on its own, outside of the OCSLA framework. Nevertheless, for purposes of this Sur-reply, Plaintiffs, assume *arguendo*, that OPA would be the federal law injected through OCSLA, although Plaintiffs do dispute this contention.

Rather than "ousting" state law as Anadarko argues, OCSLA provides a wide arena for the application of state laws:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary … the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . .

43 U.S.C. § 1333 (2) (A).

Clearly, state laws are to be applied where they are "applicable and not inconsistent" with other federal laws. *Id.; Rodrigue v. AETNA,* 395 U.S. 352, 357 (1969); *Walter Oil & Gas Corp. v. NS Group, Inc.,* 867 F. Supp. at 552-3; Although state laws (including court-made law) become "surrogate federal law" on OCSLA sites, these state laws, nevertheless, are applied as they exist in the state of origin. *Doucet v. Gulf Oil Corp.,* 788 F. 2d 250, 252 (5th Cir. 1986)(applying *Rodrique*); *Matte v. Zapata Offshore Co.,* 784 F. 2d 628, 630 (5th Cir. 1986), cert. den., 479 U.S. 872 (1986)(applying Louisiana statute invalidating indemnification agreement in face of contention that federal common law and contract language was to the contrary). As explained by the Supreme Court, OCSLA "borrows" the applicable and not inconsistent state laws as "surrogate" federal law. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. at 480-1. Therefore, although the courts may be applying what is characterized as "federal" law, "the *content*" of that federal law is actually *state* law. *Id.* The law that is applied in this manner is federal in name only and the substantive provisions and remedies are those provided by the applicable state law. *Id.*

Therefore, contrary to Anadarko's argument (and its misreading of its cited cases), OCSLA does not preclude the application of state law; although state law *may* be redesignated as

"federal" law since it is adopted as surrogate law. *Bartholomew v. CNG Producing Co.*, 832 F. 2d 326, 328 (5th Cir. 1987)("[T]he Act mandates that we *technically* apply federal law to the instant case, but also apply the law of the adjacent state, Louisiana, as *surrogate* federal law to the extent that it is not inconsistent with federal laws and regulations."(emphasis added)). Instead of sweeping state law completely off its analytical framework, the Court in *Bartholomew* applied state common-law principles derived from state court decisions to determine whether a principal was liable for the negligence of a subcontractor. *Id. at* 329. Therefore, regardless of whether denominated "federal" or "state" the same state derived common-law rules were applied to find the principal liable. *Id.*

Lest it be argued that the application of state law might create varying standards on OCSLA sites, it should be noted that OCSLA does not have the goal of establishing uniformity. *Gulf Offshore Co.*, 453 U.S. at 484.  Rather, OCSLA contemplates a lack of uniformity since it borrows state laws and "There is no need for uniform interpretation of laws that vary from State to State." *Id.* As the Supreme Court further emphasized, "[I]n OCSLA Congress borrowed a remedy provided by state law and thereby "specifically rejected national uniformity" as a paramount goal. *Id at 487.* Anadarko's arguments, therefore, overlook the overriding principle under OCSLA that state law *will* apply although it may be cloaked as "federal" law under the provisions of OCSLA.

Furthermore, in order for the state law to be inapplicable because of its "inconsistency" with federal law, there must be an explicit conflict between the two. *E.g., Askew, Gov. of Fla. v. American Waterways Operators, Inc.*, 411 U.S. 325, 341 (1972)(Upholding Florida's statutory imposition of strict liability for oil pollution against contention that it conflicted with Clean Water Act: "Even though Congress has acted in the admiralty area, state regulation is

permissible absent a clear conflict with the federal law."); *Bartholomew v. CNG Producing Co.,* 832 F. 2d 326, 328 (5th Cir. 1987)(federal postjudgment interest formula applied rather than higher state postjudgment rate). The application of the federal/state dichotomy is illustrated by the fact that the Court upheld the award of prejudgment interest under state law [since federal law did not prohibit it], but upheld the award of postjudgment interest at the rate authorized by *federal* statute rather than the rate provided by state statute since there was a direct conflict between the two. With regard to the postjudgment interest, the Court noted that the state provision allowing a higher interest rate conflicted with the interest calculations specifically mandated in 28 U.S.C. §1961. The Court's holding, therefore, demonstrates that state law will be supplanted only where a federal law expressly conflicts with the state law or when federal law expressly prohibits a state law remedy. Where the federal law is silent on the issue, state law (although renamed as federal law) becomes operative even if it provides for an additional remedy (e.g., prejudgment interest or punitive damages). Additional remedies do not constitute an inconsistency which precludes the application of state law. *Id.* Accordingly, there is ample legal space for the application of state law remedies, even though they may be redesignated as federal remedies under OCSLA. In other words, the state claims and remedies do and will continue to exist, *albeit*, under a different name.

To the extent that OPA would be the federal law to be applied in the OCSLA context, there is nothing inconsistent between OPA and state law. In fact, OPA itself preserves state remedies, including common-law claims. (See, Part 2A, above). Therefore, even if OPA were the federal law to be brought into the OCSLA context, state law claims survive.

**C.     OPA in the OCSLA Context, Necessarily Brings State Law Into Play.**

As noted above, OCSLA provides for the application of state law, even if it necessitates characterizing it as "federal".   Even if one assumes that OPA is injected into the OCSLA framework as Anadarko argues, state substantive law, along with state remedies, still remains viable. Anadarko attempts to sweep away state law by arguing that OPA is the federal law that is brought into play by OCSLA. However, Anadarko fails to appreciate that by applying OPA, state law is also rendered applicable as provided by OPA. Thus, OPA's own language expressly provides and allows for the application of state law remedies, independently of OCSLA's provisions. (Part 2A, above). One cannot distort OPA (or any other statute) by applying it piecemeal and excluding a substantial and crucial part of the statute, *i.e.*, the savings provisions. Therefore, if OPA is to be applied through OCSLA, its savings clauses (and state laws) are necessarily brought into the OCSLA framework. In other words, Plaintiffs' state law claims are brought into the OCSLA framework by OPA itself when OPA is applied through OCSLA.

**3.      THE PRESENTATION ISSUE UNDER OPA.**

Anadarko urges dismissal of Plaintiffs' OPA claims, arguing that Plaintiffs did not comply with OPA's claims filing procedure in Section 2713. Perhaps unknown to Anadarko is the fact that Plaintiffs herein *have* filed their presentations with the Gulf Coast Claims Fund, doing so without waiver of their positions herein that such filing is not a jurisdictional requirement. The States of Veracruz and Quintana Roo filed their GCCF claims on June 9, 2011, and the State of Tamaulipas filed its presentation on June 10, 2011.[2] Therefore, Anadarko's argument has been mooted.

---

[2] BP acknowledges the submission of these presentations by these Plaintiffs. (Page 11, fn. 9 in BP's Reply in Support of Motion to Dismiss Certain Complaints in Pleading Bundle C [Doc. 2741]).

With respect to Anadarko's argument that the presentation should have been made *prior* to the institution of Plaintiffs' lawsuit, Plaintiffs note that Anadarko fails to contend that it has in any manner been harmed or otherwise prejudiced. It has not established any settlement fund or contributed to any existing one. With respect to any contention that Anadarko could have initiated settlement discussions if a presentation had been made earlier through a claims filing procedure, Plaintiffs note that notwithstanding the filing of their claims in this litigation, Anadarko has made no effort to even hint at opening up settlement discussions. Therefore, there is a resoundingly hollow ring to Anadarko's argument that somehow Anadarko has been deprived of the opportunity to discuss settlement and/or that the purpose of promoting settlement discussions through OPA presentations has been thwarted.

In any event, as Plaintiffs noted in Plaintiffs' Response, "jurisdiction" "is a word of many, too many, meanings." *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment, Central Region,* 130 S. Ct. 584, 175 (2009); *Arbaugh v. Y & H Corp*., 546 U.S. at 510; *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90 (1998). Therefore, "drive-by jurisdictional rulings" should be accorded no precedential effect. 546 U.S. at 511; *Steel Co.,* 523 U.S. at 91.

As Anadarko acknowledges, OPA's presentation requirement is clearly one aimed at processing claims. ("BP has established a well publicized claims procedure…" p. 8, Anadarko's Reply). The claims filing character of the process is evident from the very name of the Gulf Coast *Claims* Fund, as well as the claims filing forms and process adopted therein.  However, it is well-established that such "claim-processing rules" should **not** be described as jurisdictional. *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. Of Adjustment,*

*Central Region,* 130 S.Ct. 584, 175 (2009); *Henderson v. Eric Shinsekie, Secretary of Veterans Affairs,* 131 S. Ct. 1197 (2011).

Although there are indeed district court cases that have made "drive-by" jurisdictional pronouncements, these cases do not address the various statutory language and interpretative principles already noted in Plaintiffs' Response. Moreover, numerous cases convincingly establish that the presentation requirement is not jurisdictional. *E.g., Leboeuf v. Texaco,* 9 F. Supp. 2d 661 (E.D. La. 1998); in § 2713. Significantly, even where the courts have required compliance with the presentation requirement, they have allowed the plaintiffs to refile their OPA claims upon the making of such a presentation. *E.g., Boca Ciega Hotel, Inc. v. Brouchard Transportation Co.,* 51 F. 3d 235, 240 (11th Cir. 1995)("[plaintiffs] remain free to refile this action, if and when they comply . . ."); *Turner v. Murphy Oil USA, Inc.,* 2007 U.S. Dist. LEXIS 94304 *6(E.D. La. 2007)( "This dismissal, however, will be treated as a dismissal without prejudice and [plaintiff] remains free to refile this action if and when it complies with the OPA procedure. [Citing *Boca Ciega*]."  Even Anadarko agrees that under *Boca Ciega,* Plaintiffs would have the opportunity to refile "if and when" they submit their presentations. (P. 10, Anadarko's Reply).  As noted above, Plaintiffs *have* submitted their presentations, and, consequently, Anadarko's arguments in this respect are moot.

Therefore, it is respectfully submitted that even though the presentation requirement has been described as "jurisdictional," a careful scrutiny of the statute and cases interpreting same, along with application of sound interpretative principles demonstrates that it is not of that character. Moreover, Plaintiffs respectfully submit that they have already complied with this provision in OPA by making their presentations to the GCCF. Should the Court determine that a

specific allegation in this regard is necessary, Plaintiffs would more than willing to amend the complaints to assert same, with the Court's permission.

4.     **TREATIES.**

    A.     **Background.**

It is crucial to note at the outset that the Plaintiffs are not attempting to assert any claims on behalf of the federal government of the Republic of Mexico. Rather, they assert only their own claims for damages herein—with the consent and authorization of the appropriate representatives of the federal Mexican government. Although Mexico's federation is similar to the federal system in the United States, the status of Mexican States differs. Thus, Mexican States are "free and sovereign" states. (Art. 40 of the Mexican Constitution). The Constitution of the State of Tamaulipas refers to the governor as the "Constitutional Governor of the Free and Sovereign State of Tamaulipas. (Art. 77, Constitution of Tamaulipas). Similarly, the Constitutions of Veracruz and Quintana Roo echo the free and autonomous powers of the State. (*E.g.*, Art. 1 and 50 of the Constitution of the State of Veracruz; Art. 1 and 3 of Quintana Roo's Constitution.).

As foreign claimants under §2707(c) (3), OPA allows the Plaintiffs "to make a claim for removal costs and damages resulting from a discharge…" without any limitation or condition on the nature of damages sought. §2707(b).  Lest it be argued that the President of Mexico must appoint a trustee to present the claim for damages to natural resources, Plaintiffs note that §2707(b) (5) does not compel such an appointment since the language is only permissive: "The head of any foreign government **may** designate the trustee who shall act on behalf of **that** government as trustee for natural resources under this Act." (emphasis added) (§ 2706(b)(5). Thus, the head of the government may or may not [but is not required to do so] appoint a trustee

14

to act for it. Here, the Plaintiff States are acting for themselves as OPA allows. OPA does not prohibit the Governor of a Mexican State from acting on behalf of the state as a *de facto* or *de jure* trustee. Section 2707 (b)(1) only describes the capacity (*i.e.*, the fiduciary capacity) in which a trustee would act if one were to be appointed, but this provision does not require a trustee.

It is also crucial to note important distinctions in OPA's language that obviates any requirement that the claimant be a "trustee" or that the claimant even have ownership in the personal or real property damaged. Significantly, § 2702(b)(2)(E), allows for the recovery of lost profits and earning capacities for the damage to real or personal property or "*natural resources*" by "*any* claimant"--without the requirement that the claimant be or have a trustee and without even requiring ownership in the property. [In the instant case, Plaintiffs do manage, own, lease and have other rights in the property damaged.]. Moreover, Section 2702(b)(2)(B) allows recovery by "a claimant" of damages for injury to or economic losses resulting from the destruction of real or personal property, without any requirement that the claimant be or have a "trustee." Plaintiffs clearly fall within this provision since they own or lease (or possess other proprietary interests in) real or personal property that has been damaged. Subsection C further underscores that damages to natural resources and other property may be recovered without regard to any trustee status or even ownership: "Damages for loss of subsistence use of *natural resources,* which shall be recoverable by *any claimant* who so uses *natural resources* which have been injured, destroyed, or lost, *without regard to the ownership or management of the resources."* Thus, *any* claimant can recover in this manner for *natural resources* even if the claimant does not own or manage the resources. §2706(2)(C). Subsections D and F further provide for the recovery by Plaintiffs herein without any requirement of "trustee". Accordingly, any contention that Plaintiffs would have to obtain "trustee" status from the President of Mexico

15

would be unsupported by the language of OPA. In any event, as noted above, the Republic of Mexico and the Mexican States have agreed to the Mexican States separately filing and maintaining their causes of action herein, and the Governors of Plaintiffs, as trustees for their states, have acted as such in authorizing these lawsuits.

  **B.  Authority Under Treaties.**

  Plaintiffs submit that their actions under OPA are "authorized" under various treaties to which the United States and the Republic of Mexico are parties. Anadarko takes the position that, in essence, argues Plaintiffs' OPA claims must fail since none of these specifically reference OPA or recovery under OPA. However, OPA does not impose such a heightened standard of specificity. Rather, OPA merely provides that a foreign claimant show that "recovery is authorized by a treaty…" (§2707(1) (B). Plaintiffs submit that the following treaties and agreements "authorize" their OPA actions:

- Agreement of Cooperation Between the United States of America and the United Mexican States Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances (signed 1980); MEXUS Plan ("Joint Contingency Plan Between the United Mexican States, Mexican Sovereign States and the United States of America and some States of the United States Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances"; MEXUS Plan's Gulf Geographic Annex ("MEXUS GULF ANNEX")(Signed Nov. 7, 2007). Parenthetically, it is noted that the MEXUS GULF ANNEX recognizes the particularly environmentally and economically sensitive regions along Plaintiffs' coastlines and the paramount need to protect these. (§G406.1.2.1 andG406.1.3.1);
- Cartagena Convention (effective June 8, 2000) ("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region"), as supplemented by its Protocols.
- 1992 Civil Liability Convention;
- Treaty on Maritime Boundaries between the United States of America and the United Mexican States (ratified October 23, 1997);

  With the exception of the Treaty on Maritime Boundaries (but see discussion below), all of the treaties and agreements cited by Plaintiffs address oil spills and the need to undertake

precautions for preventing them and they further address remedial responses to such spills. Defendant does not cite to any authority or language in any of these that would prohibit these lawsuits. Rather, as appears from the language of the treaties, Plaintiffs are entitled to sue under them for the protections afforded by such treaties under the treaties themselves and/or OPA. Indeed, the treaties would be of little value if Plaintiffs could not enforce their rights to be free from oil pollution as contemplated therein.

With respect to the Treaty on Maritime Boundaries, it should be noted that this agreement between the United States and Mexico delineated which waters in the Gulf were "exclusive" to Mexico and which were "exclusive" to the United States. Therefore, the treaty set up clear lines of demarcation regarding territorial, possessory, and jurisdictional rights. Such rights would vanish if a party did not have the right to protect its "exclusivity" rights against the uninvited and tortious interference, trespass, and harm by others. In other words, the treaty clearly confers proprietary interests which the Plaintiffs, as States of Mexico, have the rights to protect and develop, as well as to seek relief for damages caused by tortious intrusions into their economic zones. The language of the purpose of the treaty (as quoted by Anadarko on page 13 of Anadarko's Reply) clearly contemplates and reserves the rights of the parties to undertake actions (including lawsuits) to preserve their "sovereign rights or jurisdiction for any other purpose." (Art. III).

As another example, the Cartagena Convention ("Convention for the Protection and Development of the Marine Environment in the Wider Caribbean Region") is intened to safeguard and protect the wider Caribbean area (which under the treaty's Art. II specifically includes the Gulf of Mexico). Among other things, it emphasizes the following:

- "[T]he responsibility to protect the marine environment of the wider Caribbean region for the benefit and enjoyment of present and future generations,

- "[T]he protection of the ecosystems of the marine environment of the wider Caribbean region" as one of the principal objectives.

(Preamble to Treaty)

Article 4 imposes upon the parties to the treaties the obligation to "**…individually** or jointly, take *all appropriate measures* in conformity with international law and in accordance with this Convention and those of its protocols in force to which they are parties to prevent, reduce and control pollution of the Convention area … using for this purpose *the best practicable means* at their disposal and in accordance with their capabilities. " Art. 4(1). Thus, the treaty not only authorizes "all appropriate measures," but requires them. Article 8 also mandates that the contracting parties "shall take all appropriate measures to prevent, reduce and control pollution of the Convention area [including the Gulf of Mexico] resulting directly or indirectly from exploration and exploitation of the sea-bed and its subsoil." Similarly, Art. 10 mandates the taking of all appropriate measures to protect and preserve rare or fragile ecosystems. Undeniably, a suit to recover damages for the oil spill at issue herein in order to clean up polluted areas and remedy damages is both "the best practicable means" (Art. 4(1)) and an "appropriate measure" to fulfill the obligations and remedy the rights conferred by the Treaty. Certainly, the initiating of legal proceedings (such as this suit) is contemplated and sanctioned by Art. 14 ("Liability and Compensation") which provides for the adoption of rules pursuant to international law "in the field of liability and compensation for damage resulting from pollution of the Convention area." For purposes of Plaintiffs' actions herein, no additional rules need be adopted since OPA provides a remedy consistent with international law.

Further authorization for Plaintiffs' actions is found in the Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region (adopted as a protocol of the

Cartagena Convention. This protocol again reemphasizes the need to protect against oil spills and take remedial action when necessary. (Preamble). As one of the mandatory obligations of the contracting parties, Art. 3 provides: "The Contracting parties **shall**, within their capabilities, co-operate **in taking all necessary measures,** both preventive **and remedial**, for the protection of the marine and coastal environment of the Wider Caribbean Region, particularly the coastal areas of the islands of the region, from oil spill incidents." (Art. 3(1). Again, a lawsuit seeking recovery of damages is an undeniable "remedial" and "necessary measure" authorized by this protocol.

Accordingly, the treaties cited by Plaintiffs amply authorize and mandate these lawsuits and Anadarko's arguments are not substantiated.

## 5.    NEGLIGENCE *PER SE*.

Plaintiffs have cited various statutes as standards that were violated by Defendants, including Anadarko, thus forming the basis for their negligence *per se* cause of action. Anadarko's efforts to vitiate reliance on these provisions is without any merit.

With respect to the Texas Oil Spill Prevention and Response Act of 1991 ("TOSPRA"), Tex. Nat. Res. Code Ann. § 40.001 *et seq.,* Anadarko argues that the scope of the class protected by the statute does not include Plaintiffs. Anadarko fails to note that Texas and the State of Tamaulipas share a common border, the Rio Grande River that at times is only dozens of yards wide. Moreover, except for the interruption by the mouth of the Rio Grande River flowing into the Gulf, Texas' coastline flows seamlessly into the coast of Tamaulipas. Pollution of Texas coastal shores, therefore, inevitably injures Mexican coasts. In any event, it is clear that the Texas legislature did not limit the scope of those who were protected by TOSPRA and who could sue thereunder. In creating a private cause of action under TOSPRA, the legislature

granted its protections (and rights to sue) to "any person." §40.256. The legislature did not require state residency for a party to be protected under TOSPRA.

Anadarko also argues that Plaintiffs are not members of the class Florida's Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.011 is intended to protect. (p. 16, Anadarko's Reply). However, a careful reading of the statute reflects that the scope of those protected (and conferred rights) by the statute is defined in expansive terms. In creating a private cause of action and describing who may maintain such a lawsuit, Section 376.205 provides that "**any** person may bring a cause of action resulting from a discharge or other condition of pollution…" There is no limitation as to location or residence. This broad permission to sue is further underscored by additional language providing that "the person" need not prove negligence and that "such person" need only prove the pollution. Given this expansive right of "any" person to sue, Anadarko's contention that Plaintiffs herein fall outside the scope of the class protected by Florida's Pollutant Discharge Prevention and Removal Act is without merit.

Similarly, Anadarko's contention that Plaintiffs cannot rely on OPA to establish their negligence *per se* claims is unfounded. As noted elsewhere, Plaintiffs have satisfied all of the requirements for instituting suit thereunder. Moreover, even if the contrary were to be found, there is no indication in OPA or elsewhere that the class of those protected by OPA is to be strictly limited to those who have complied with its statutory requirements. Rather, OPA is intended to have a broad protective effect extending to the public in general, as well as other specified beneficiaries of the Act.

## 6.   CONCLUSION.

In view of the foregoing, as well as the other arguments presented in previous filings which are incorporated herein, it is clear that Anadarko's Motion to Dismiss must be denied in

all respects. Therefore, Plaintiffs respectfully request that this Honorable Court deny Anadarko's

Motion to Dismiss.

Dated: June 27, 2011

Respectfully submitted,

**SERNA & ASSOCIATES PLLC**

/s/ Enrique G. Serna
Enrique G. Serna
enrique@serna-associates.com
20985 IH 10 W
San Antonio, Texas
Telephone: 210.472.2222
Facsimile: 210.228.0839

## CERTIFICATE OF SERVICE

I hereby Certify that the above and foregoing pleading, **SUR-REPLY IN OPPOSITION TO REPLY IN SUPPORT OF MOTION OF DEFENDANT ANADARKO PETROLEUM CORPORATIO TO DISMISS THE COMPLAINTS OF THE MEXICAN STATES ["PLEADING BUNDLE C"]** has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and that the foregoing was electronically filed by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this the 27th day of June, 2011.

/s/ Enrique G. Serna
Enrique G. Serna