UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : | MDL NO. 2179 SECTION J |
| THIS DOCUMENT RELATES TO: | : : | JUDGE BARBIER |
| 2:10-CV-02771 | : : : | MAGISTRATE JUDGE SHUSHAN |

**REPLY IN SUPPORT OF UNITED STATES' MOTION TO DISMISS THIRD-PARTY COMPLAINT, CROSS-CLAIM, AND RULE 14(C) TENDER**

**INTRODUCTION**

THE UNITED STATES OF AMERICA hereby replies to the response of Petitioners Triton Asset Leasing GmbH, Transocean Holding LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. ("Transocean") to the United States' Motion To Dismiss.

As a threshold matter, Transocean's allegations are not supported by law. To sue the United States, Transocean must have a claim against the government based on law, including a statutory basis for jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-101 (1998) (holding that a court may not resolve contested questions of law when its statutory jurisdiction is in doubt, thus rejecting the doctrine of "hypothetical jurisdiction"). Artful procedural posturing is not sufficient to establish a proper

jurisdictional basis for a claim against the United States.  Transocean is prohibited from suing the United States under the statutory scheme of the Oil Pollution Act of 1990 ("OPA"), which limits Transocean's defenses to those listed at 33 U.S.C. § 2703, and does not permit a contribution action against the United States.  The only other statute Transocean cites for a jurisdiction basis is the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (Opp'n at 7, 17-18), which by its own terms does not apply here.

Transocean identifies no legitimate jurisdictional basis for bringing this case because there is none.  Transocean cannot bring a claim against the United States under the Oil Pollution Act, the Clean Water Act, the Federal Tort Claims Act, the Suits in Admiralty Act, the Admiralty Extension Act, or the Administrative Procedure Act.  No procedural rule or equitable doctrine can confer jurisdiction where there is no explicit jurisdictional basis for the claim.  Transocean's Third-Party Complaint, Cross-Claim, and Rule 14(c) tender are simply inappropriate here and should be dismissed for lack of subject matter jurisdiction.

Of important note, Transocean did not respond to the primary argument in the United States' motion, which is that a similarly situated private person cannot be held liable for the alleged negligent acts.  Rather, Transocean responds as if the government raised the discretionary function exception, which is a doctrine the United States did not raise in its motion.  In failing to identify a private party analogue, Transocean has conceded that its claims should be dismissed under *Johnson v. Sawyer*, 47 F.3d 716, 727-28 (5th Cir. 1995).  There simply is no state or maritime law under which a private party could be held liable for the facts now cited by Transocean as the basis for its claim.

2

(Opp'n at 8-9.)  Accordingly, the United States respectfully requests that the Court grant its Motion to Dismiss.  Fed. R. Civ. P. 12(b)(1).

## 1. Transocean Has No Jurisdictional Basis for an Action Against the United States.

Transocean must allege a jurisdictional basis for its claim.  Even if its allegations are based on equitable recoupment (discussed below), the doctrine of recoupment does not confer jurisdiction.  "To date, we have not allowed equitable recoupment to be the sole basis for jurisdiction."  *United States v. Dalm*, 494 U.S. 596, 608 (1990).

The jurisdictional basis for Transocean's claim cannot be OPA.  OPA sets forth a comprehensive scheme for oil pollution liability, enacted in response to the *Exxon Valdez* disaster.  OPA is a strict liability statute.  *See, e.g., Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001).  The Fifth Circuit has noted that OPA "contains a detailed and comprehensive scheme governing liability for oil-pollution prevention and cleanup." *United States v. EX-USS CABOT/ DEDALO*, 297 F.3d 378, 385 n.31 (5th Cir. 2002). Under OPA's statutory scheme, the United States is entitled to wide-ranging recovery from responsible parties.  33 U.S.C. § 2702.  In the absence of a clear indication from Congress that the federal courts have subject matter jurisdiction over equitable recoupment, contribution, the Rule 14(c) tender, or any other claims alleged by Transocean against the United States, the Court has no jurisdiction over these allegations under OPA.

### a.    Transocean's Defenses Under OPA Are Exclusive.

As a responsible party under OPA, Transocean has three exclusive defenses. "The *only* defenses to strict liability under CERCLA and OPA are that removal costs were caused *solely* by (1) an act of God, (2) an act of war, or (3) a third party not in a contractual relationship with the responsible party. See 33 U.S.C. § 2703(a); 42 U.S.C. § 9607(b)." *Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 652 (E.D. La. 2002) (emphasis added). When Congress establishes specific statutory defenses in a strict liability statute, those enumerated statutory defenses are exclusive. *See Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004), and cases cited therein.[1]

The legislative history of OPA shows that Congress intended the statutory defenses to be exclusive: "The Committee emphasizes that the defenses specifically enumerated are intended to be the only defenses available to a responsible party and no other defenses are allowed to the strict, joint, and several liability which is established in the bill." Comm. on Pub. Works and Transp., *Oil Pollution Prevention, Response, Liab.*

---

[1]    Courts look to cases brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in analyzing the statutory defenses in OPA because the defenses are the same in both statutes. (*See* Appendix A, demonstrative comparison of the enumerated statutory defenses under CERCLA and OPA.) The same is true for some other strict liability statutes with the same defenses, such as the National Marine Sanctuaries Act ("NMSA") and the Park System Resource Protection Act ("PSRPA"). *See Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 943-44 & n.7 (11th Cir. 2001) (PSRPA statutory defenses are exclusive); *United States v. Barlow*, 576 F. Supp. 2d 1375, 1381-82 (S.D. Fla. 2008) (NMSA statutory defenses are exclusive).

*& Comp. Act of 1989*, H.R. Rep. No. 101-242, Part 1, at 32 (1989). "Defenses available to a responsible party are limited to those specifically enumerated in the bill." *Id.* at 39.

Equitable defenses, such as equitable recoupment, are not permitted under strict liability statutes with enumerated defenses, such as OPA and CERCLA. *Neville*, 358 F.3d at 672; *see also United States v. Tug Colette Malloy*, 507 F.2d 1019, 1023 (5th Cir. 1975) (denying defendants' indemnity claim under the Suits in Admiralty Act and the Federal Tort Claims Act because it would undermine strict liability imposed by the Rivers and Harbors Act). Transocean cannot pursue defenses through a Third-Party Complaint, Cross-Claim, or Rule 14(c) tender that it cannot raise under OPA. Simply renaming an impermissible defense as a "claim" does not make it permissible under the federal statutory scheme. Because equitable doctrines such as recoupment are not permitted as affirmative defenses under OPA, such equitable doctrines are also prohibited as defensive claims against the United States under OPA. *See generally* 33 U.S.C. § 2701-02 (defining responsible party and elements of liability under OPA).

  **b.**  **OPA Does Not Permit a Contribution Action Against the United States.**

Transocean argues that it is entitled to maintain a claim for contribution against the United States under OPA. (Opp'n at 14.) The statute provides: "A person may bring a civil action for contribution against any other *person* who is liable or potentially liable under this Act or another law. The action shall be brought in accordance with section 2717 of this title." 33 U.S.C. § 2709 (emphasis added). This provision does not apply to the United States. Congress excluded the United States from the statutory definition of a "person" as used in § 2709. A person under OPA is defined as "an individual,

5

corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 2701(27). OPA's exclusion of the United States from the definition of person in 33 U.S.C. § 2701(27) was not mere oversight, as OPA separately defines the United States in 33 U.S.C. § 2701(36). *Accord* Dictionary Act, 1 U.S.C. § 1 (definition of person does not include the United States).[2] Because the United States is not included in the definition of person, it is not subject to a contribution action under OPA.

Transocean argues that "simple fairness" should permit it to pursue this action against the United States. Evidently Congress did not agree, as it did not create any such cause of action under OPA. Transocean's assertions of comparative fault, contribution, equitable recoupment, and the Rule 14(c) tender are contrary to the structure and goals of OPA. Unless Congress explicitly provides otherwise, the responsible parties' liability under OPA is determined by the provisions of OPA itself, and not through any back-door "equitable" claims in the MDL. Accordingly, Transocean's allegations against the United States are impermissible under the explicit statutory scheme, and should be dismissed.

**2.   Transocean Has No APA Claim Against the United States.**

Aside from OPA, the only statute mentioned by Transocean as a possible jurisdictional basis for its Third-Party Complaint, Cross-Claim, and Rule 14(c) tender is

---

[2]   Of note, CERCLA includes the United States in its definition of person, further indicating that Congress deliberately omitted the United States from the definition of person in OPA.  *See* 42 U.S.C. § 9601(21). CERCLA also contains a waiver of sovereign immunity that is not contained in OPA, *see* 42 U.S.C. § 9620, showing that Congress intended to protect the United States from suit as part of the overarching scheme of OPA.

6

the Administrative Procedure Act.  (Opp'n at 7, 17-18.)  The APA cannot provide a jurisdictional basis for Transocean's allegations.

To invoke the APA's waiver of sovereign immunity, Transocean must identify a specific final agency action that is subject to review.  5 U.S.C. § 704; *see generally Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-94 (1990) (the challenged action must be "reviewable" under the terms of the APA).  Under the APA, the Court's scope of review would be limited by 5 U.S.C § 706, which provides a reviewing court with two options: (1) compel the agency action unlawfully withheld or unreasonably delayed; or (2) hold unlawful and set aside the agency action.

Transocean mentions only two actions that could conceivably be construed as challenged agency actions:  MMS's approval of BP's request to set a plug during the temporary abandonment, and the government's alleged delay in BP's installation of a capping stack to seal in the well after the blowout.  (Opp'n at 8-9.)  Transocean fails to explain how either of these decisions could be deemed reviewable, and does not even ask the Court to review those decisions under the APA.  More importantly, Transocean would lack standing to challenge either of those decisions, and both of the actions are now complete, so Transocean could obtain no effective relief under the APA.

The Court addressed the issue of Article III standing in a recent decision, citing *Lujan* for the proposition that a plaintiff must show that (1) it has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  (Order and Reasons as to D1 Master Complaint, Doc. # 2784, June 16, 2011,

citing *Lujan*, 504 U.S. at 560-61.)  Transocean lacks standing for an APA action because it cannot prove that its alleged injuries would be redressed by the APA.  *See* 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).  It would be pointless to set aside any agency action related to the drilling or capping of the well, as "the Macondo well is dead."  (Order, Doc. # 2784 at 6.)  In addition to lacking standing, any challenge to the drilling permit and the capping stack under the APA claim must be deemed moot.  (Order, Doc. # 2784 at 8-10, discussing mootness.)

Finally, the fact that Transocean seeks to tender the United States to the Plaintiffs under Rule 14(c) further complicates any possible jurisdictional basis under the APA.  Transocean has not pled that the Plaintiffs have standing to bring an APA claim, nor have the Plaintiffs claimed standing for an APA challenge.  Plaintiffs make no APA claim in their Complaints, so the challenged action has not been identified, nor does Transocean have any law to support that an APA claim can be made via a Rule 14(c) tender.

Accordingly, Transocean has failed to establish that the APA provides a jurisdictional basis for the Third-Party Complaint, Cross-Claim, and Rule 14(c) tender to Plaintiffs.

### 3.     The Doctrine of Equitable Recoupment Does Not Apply Here.

To the extent Transocean can establish the threshold jurisdictional basis for its claim, which it cannot, the doctrine of equitable recoupment does not apply here.  The doctrine allows a defendant to assert a defensive recoupment claim that arises out of the same transaction as the plaintiff's claim to reduce the plaintiff's recovery.  *See generally Dalm*, 494 U.S. at 606-11.  Recoupment is equitable in nature, so a defendant in certain

cases may be allowed to bring a claim by way of recoupment even if the statute of limitations has expired on that claim. *See, e.g., Bull v. United States*, 295 U.S. 247, 258-62 (1935).

The leading case on recoupment in the Fifth Circuit is *Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967). Since that decision, however, the Supreme Court has narrowed the doctrine. *See United States v. Nordic Village Inc.*, 503 U.S. 30, 39 (1992) (noting the narrowing of the doctrine of equitable recoupment). The Supreme Court set forth the doctrine in the case of *Bull v. United States*, *supra*, which was cited by the Circuit Court in *Frederick*. In the more recent case of *Dalm*, the Supreme Court explained that its holding in *Bull* was limited to "the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *Dalm*, 494 U.S. at 608. The Supreme Court further explained that the doctrine of equitable recoupment in *Bull* applied when "there was no question" that the court already had jurisdiction. *Id.* The Fifth Circuit has clarified *Frederick* in subsequent decisions, such as *First Nat. Bank v. Genina Marine Servs., Inc.*, 136 F.3d 391, 396 (5th Cir. 1998) (holding that *Frederick* did not permit a defendant to bring a recoupment claim as a third-party claim against the government).

To recover on a claim of recoupment against the government, a defendant must bring a counterclaim, asserting the following: 1) a claim that arises from the same transaction or occurrence as the government's claim; 2) a claim that seeks relief of the same form or nature as that sought by the government; and 3) a claim that does not

9

exceed the relief sought by the government.  *Frederick*, 386 F.2d at 488; *In re S. Scrap Material Co., L.L.C.*, 713 F. Supp. 2d 568, 584 (E.D. La. 2010).

      **a.    Recoupment Runs from Defendant to Plaintiff, Not Via Third-Party Action, Cross-Claim, or Rule 14(c) Tender.**

Transocean cites no legal support for bringing an equitable recoupment claim as a Third-Party Complaint, Cross-Claim, and/or Rule 14(c) tender.  Indeed, the Fifth Circuit does not permit recoupment as a third-party claim.  *First Nat'l Bank*, 136 F.3d at 395-96.  Transocean cites no legal authority for its novel application of recoupment to a Rule 14(c) tender.  The United States has not sued the Plaintiffs, so obviously they have no recoupment claim against the government.  Because the underlying Plaintiffs have no claims to recoup against the government, the Rule 14(c) tender styled as recoupment makes no sense.  Recoupment runs from a defendant to a plaintiff, not via a third-party action, cross-claim, or Rule 14(c) tender.  Permitting Transocean's actions to proceed under the doctrine of equitable recoupment against the United States would be a remarkable case of first impression, and should simply be rejected.

      **b.    Transocean Has Not Alleged the Same Transaction or Occurrence, and Does Not Seek the Same Form or Nature of Relief.**

Recoupment must arise from the same transaction or occurrence as the government's claim, and must seek the same form or nature of relief as that sought by the government.  The United States brought suit in Case No. 10-cv-4536, seeking a declaration that BP, Transocean, and others are responsible and subject to strict liability for unlimited removal costs and damages under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2761.  The United States also seeks civil penalties under the Clean Water Act.

10

33 U.S.C. § 1321(b)(7). Transocean's Third-Party Complaint, Cross-Claim, and Rule 14(c) tender are of a different nature. The government's lawsuit sounds in strict liability, whereas Transocean's recoupment allegations sound in tort or some vague notion of "fairness." (Opp'n at 14.) Transocean's liability as a defendant in the government's claim flows from its status as a responsible party under OPA, whereas Transocean's recoupment allegations seek no such declaration under OPA. Accordingly, Transocean's purported recoupment allegations cannot stand against the United States. *See In re S. Scrap Material*, 713 F. Supp. 2d at 585 (dismissing purported recoupment claim when the United States sued the defendant for wreck-removal restitution under admiralty law and defendant brought a counterclaim as a non-admiralty negligence action); *United States v. Towers*, No. 93-4260, 1994 WL 382610, at *4 (E.D. La. July 15, 1994) (dismissing counterclaim sounding in tort for lack of subject matter jurisdiction because it did not arise from the same transaction or occurrence as the United States' Fair Housing Act violation claim).

4.     **Transocean Cannot Sue the United States for Response Activities.**

With respect to the post-blowout capping stack issue, the Clean Water Act, as amended by OPA, prohibits suit on those allegations:

> (8) United States Government Not Liable. The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section.

33 U.S.C.§ 1321(j)(8). Transocean has alleged no legal basis for its argument that equitable recoupment would deprive the United States of this explicit grant of immunity under OPA. Simply saying that the United States has waived its sovereign immunity by

11

bringing suit against Transocean in Case No. 10-4536 goes against the language and intent of OPA, as the statute is designed for the United States to be able to bring suit against a responsible party and still be immune from suit based on its involvement in the oil spill response. If Congress had intended an affirmative suit by the United States to negate the immunity of § 1321(j)(8), Congress certainly could have drafted the statute to say so.

## 5. Transocean Fails To Provide a Local Law Under Which a Similarly Situated Private Party Could Be Held Liable.

Although Transocean does not say so, its purported allegations sound in negligence. (Opp'n at 8-9.) As such, Transocean's claim must be dismissed because it fails to allege that a similarly situated private person could be held liable under local law for these allegations of negligent regulatory action. (USA Mem., Doc. # 2404 at 6-12.) In its response, Transocean failed to respond to the government's primary argument in support of dismissal of any negligence claims, which is that a similarly situated private person cannot be held liable for Transocean's allegations under local law.[3] *See Johnson v. Sawyer*, 47 F.3d 716, 727-28 (5th Cir. 1995).

---

[3] Oddly, Transocean argues about the discretionary function exception, (Opp'n at 4, 10, 11), which the United States did not raise in its motion. This motion is based on the "private party analogue" requirement, not the discretionary function exception. Should it become necessary, the United States may raise the discretionary function exception at a later time, as a Rule 12(b)(1) motion (*see* Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action."). For reference, the discretionary function exception is addressed in *United States v. Gaubert,* 499 U.S. 315 (1991), *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984), and *Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009).

Under the application of any body of federal tort law, the United States may be held liable only to the extent that local law would hold a similarly situated private person liable. Thus, Third-Party Plaintiffs must allege a cause of action applicable to private parties under maritime or state law. *United States v. Olson*, 546 U.S. 43, 46-47 (2005).

Transocean has not even attempted to locate a cause of action under state or maritime law that would be analogous to the claims it makes against the government. Transocean makes two factual allegations in its response: that MMS is at fault for approving BP's request to set a plug at 3,000 feet, and that, after the blowout, the government allegedly delayed BP's installation of a capping stack. (Opp'n at 8-9.) These types of allegations are exactly the basis for this motion because there is no local law that would hold a private party liable for negligent regulatory action, especially actions such as approving a temporary abandonment plan on an Outer Continental Shelf well.

As the Sixth Circuit explained, "[c]ases against regulatory agencies based solely on an alleged 'failure to prevent' are unique within the FTCA. These are not situations in which a private person's participation can be readily imagined . . . . These are situations in which *only* governments can find themselves and, therefore, ordinary state-law principles of private liability do not, and cannot, apply." *Myers v. United States*, 17 F.3d 890, 905 (6th Cir. 1994). The failure of an agency employee to properly follow federal regulations cannot be the basis of a tort lawsuit unless there is a similar cause of action for private parties under state or maritime law. *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009).

As noted above, the Clean Water Act prohibits suit based on the United States' response to the oil spill, 33 U.S.C.§ 1321(j)(8), so even if Transocean could find an analogous local law, it could not maintain this suit against the government.[4]  Accordingly, Transocean's allegations should be dismissed, as conceded, for lack of subject matter jurisdiction.

### 6. Transocean Has Not Satisfied the Pleading Standard.

With respect to the United States' argument that Transocean failed to meet the pleading standards, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Transocean has responded that the United States is on "notice" of its unpled factual allegations because various entities have conducted investigations into the blowout.  (Opp'n at 7-9, 19-20.) Transocean cites no law in support of its argument that the existence of an accident investigation satisfies the pleading standards required by the Federal Rules of Civil Procedure.  Even the suggestion that a party may divine the basis of suit from newspapers and "outside reports" is a novel proposition.  It is the pleader's job to provide notice to a party for the basis of suit and to do so in accordance with the standards required by *Twombly*.

Transocean's reliance on investigation reports does not help clarify its allegations, especially as it asserts that it "has taken issue" with some of the investigators'

---

[4] Moreover, to the extent Transocean might look to state law, Louisiana no longer provides a cause of action for contribution.  La. Civ. Code Ann. art. 2323, 2324(B); *Dumas v. State*, 828 So. 2d 530, 538 (La. 2002).

14

conclusions. (Opp'n at 8 n.5.) It thus remains unknown which of the investigatory findings Transocean seeks to incorporate as factual pleadings.

Transocean claims that pages 258-59 of the Chief Counsel's Report state facts upon which it bases its claim. On those pages, the Chief Counsel's report cites the regulation that gave MMS the authority to grant departures from otherwise-applicable regulations, and nowhere states that MMS acted in error in granting any applications made to it in connection with the Macondo well. (Chief Counsel's Rep. at 258-59.) The report does not state that any government employee acted negligently or even improperly. Indeed, the Report states that MMS regulations "did not address many of the key issues that the Chief Counsel's team identified as risk factors for the blowout," (Chief Counsel's Rep. at 253), which, if incorporated as part of Transocean's allegations, indicates that federal regulators were not involved in the actions leading to the blowout. In other words, simply seeking to incorporate one of a number of accident investigation reports does not set forth a plausible entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009).

With respect to the post-blowout capping stack issue, Transocean fails to plead any facts showing that the United States' actions somehow fall outside the scope of OPA immunity, 33 U.S.C. § 1321(j)(8). Accordingly, even if the Court were to incorporate the "Staff Working Paper" that Transocean cites as an attempt to comply with the *Twombly* pleading standards, (Opp'n at 9 n. 9), the purported allegations fail to set forth a plausible entitlement to relief.

## CONCLUSION

Transocean seeks to explain why it filed the Third-Party Complaint, Cross-Claim, and Rule 14(c) tender, arguing that "this massive litigation poses unique case management challenges." (Opp'n at 15.) Transocean's brief is short on legal authority, but long on complaints about the complexity of the litigation. Transocean is apparently hoping the Court will overlook the lack of statutory subject matter jurisdiction here, and instead assert some sort of equitable or procedural authority to retain this improper Third-Party Complaint, Cross-Claim, and Rule 14(c) tender. (Opp'n at 4.) Transocean admits that it is the only party to have brought a Third-Party action and Rule 14(c) tender against the United States. (Opp'n at 16 n.19.)

Transocean's wide-ranging discussion about case management and the scope of the upcoming trial has no importance for the present motion. Before the Court is simply a motion to dismiss the Third-Party Complaint, Cross-Claim, and Rule 14(c) tender for lack of subject matter jurisdiction. Given the opportunity to set forth the statutory jurisdictional basis for its claims, Transocean has failed to do so. The Court has provided ample opportunities for the parties to brief the Court on procedural issues and the scope of the litigation. This is not the place for such a discussion.

For the reasons set forth above and in the United States' opening Memorandum, the United States respectfully requests that the Court grant its Motion to Dismiss because Transocean has failed to plead a jurisdictional basis for its allegations. Fed. R. Civ. P. 12(b)(1).

Dated: July 1, 2011

                                          Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources
Division

JAMES NICOLL
Senior Counsel
NANCY FLICKINGER
Senior Attorney
SARAH HIMMELHOCH
Senior Attorney
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
MATT LEOPOLD
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 20044
(202) 514-2779
steve.o'rourke@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Aviation & Admiralty Litigation

STEPHEN G. FLYNN
Assistant Director
MICHELLE T. DELEMARRE
SHARON K. SHUTLER
JILL DAHLMANN ROSA
JESSICA SULLIVAN
JESSICA L. MCCLELLAN
MALINDA LAWRENCE
DAVID J. PFEFFER
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
PO Box 14271
Washington, DC 20044
(202) 616-4100
(202) 616-4002 fax

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

17

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 1st day of July, 2011.

/s/ Jill Dahlmann Rosa
U.S. Department of Justice