UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in<br>the GULF OF MEXICO, on<br>APRIL 20, 2010 | §<br>§<br>§<br>§<br>§ | MDL NO. 2179<br><br>SECTION:  J<br><br> |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | §<br>§<br>§ | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF FOURTH
MOTION FOR CONFIRMATION OF NON-APPLICABILITY OF
PRESERVATION OF EVIDENCE OBLIGATIONS AS TO CERTAIN
SUBPOENAED ITEMS AND CERTAIN NON-EVIDENTIARY ITEMS**

BP America Inc., BP America Production Company, and BP Exploration & Production Inc. (collectively, the "BP Defendants" or "BP") submit this Memorandum in Support of BP's Motion, which respectfully seeks confirmation of the non-applicability of Pretrial Order No. 1's preservation-of-evidence obligations as applied to certain equipment items lacking evidentiary value.

On November 19, 2010, January 28, 2011, and February 25, 2011, this Court entered Orders granting BP's First, Second, and Third Motions for Confirmation of Non-Applicability of Preservation of Evidence Obligations as to Certain Subpoenaed Items and Certain Non-Evidentiary Items (Document Nos. 780, 1081, and 1379) (the "First Confirmation Order," the "Second Confirmation Order," the "Third Confirmation Order," and together, the "Confirmation Orders").  The Confirmation Orders prescribed a common sense procedure for the disposition of equipment bereft of evidentiary value.

The First Confirmation Order released BP from its preservation-of-evidence obligations as to 104 specific systems and items that were used in the Macondo response, including systems

that flowed hydrocarbons from the well to the surface. The Second Confirmation Order released BP from its preservation-of-evidence obligations as to several hundred items described on two exhibits. The items covered by the Second Motion included items and systems that were staged on shore but never deployed for the Macondo response, and it included installation aids, rigging, and tooling used to install and operate the systems that comprised the Macondo response. The Second Motion further extended relief to similar equipment items — that is, other tools, rigging and installation aids and other items staged but never used — that BP might later locate and notice for future inspection, but that BP had not specifically identified in the exhibit presented to the Court with the Motion. Finally, the Third Confirmation Order released BP from its preservation-of-evidence obligations as to several "systems" that were designed specifically to respond to oil well incidents, and that BP planned to turn over to the Marine Well Containment Company ("MWCC") to become part of the MWCC's oil well incident response kit.

The procedure set out in the Confirmation Orders has proven effective in permitting disposition of non-evidentiary equipment without prejudice to any party. Specifically, the procedures permitted under the Confirmation Orders authorize the routine release of equipment items, provided that MDL parties are notified regarding the contemplated release; the items are photographed; and the items are made available for inspection by MDL parties for five (5) business days prior to release.

Accordingly, BP hereby moves for a Fourth Order permitting the release of equipment lacking evidentiary value. Here again, as before, BP proposes using the "disclose, photograph, inspect" regime established by the previous Confirmation Orders. This Motion seeks the release of the following items and systems: (1) the drill string from the *Q4000*; (2) the drill string from the *Discoverer Enterprise*; (3) the offloading hose from the *Discoverer Enterprise*; (4) the DR30

2

Choke, (5) some of the remaining portion of an Oceaneering pressure measurement system used late in the response to help measure well shut in; (6) equipment items that were staged offshore, but not used or installed during the response; (7) raw materials, components, and spare parts; (8) utility and waste liquids retained from the response; and (9) "trash". Further this Motion asks the Court, just as BP asked in the Second Motion, that BP be permitted, upon proper notice to the parties, to release other items similar to those identified in this Motion that BP may locate in the future.

In advance of this filing, BP shared drafts of this Motion with the appropriate liaison counsel, including counsel for the United States, and no party has opposed entry of the proposed Order releasing these items. BP has made these items available for inspection beginning the week of June 13, 2010, and BP will continue to make these items available for five days after entry of the proposed Order. BP produced photos of these items during the week of June 13, 2011.

## ARGUMENT

BP has gone to substantial lengths and incurred significant costs to retain physical items of equipment relating to the *Deepwater Horizon* incident and associated response efforts. As this Court has recognized in granting BP's previous equipment motions, a substantial amount of the material that BP has retained has little or no evidentiary value, and BP's interests, as well as the interests of others, can best be served by permitting BP to put those items to other uses. The specific systems and items that are the subject of this motion are described as follows:

**<u>Q4000 Drill String</u>**—The Q4000 drill strings are listed on Exhibit A to the Pabon Declaration (Ex. A.). The *Q4000* drill strings are those drill strings that were attached to the *Q4000* to support its operations during the response. The drill strings used on the *Q4000* during

3

the response consisted of 6-5/8 inch OD GTM69 drill pipe.  The *Q4000* used a 6-5/8 inch OD, 0.522 inch wall thickness (34 ppf), V-150 grade, IPC, 8.500 x 5.500 GTM-69 drill string from May 18, 2010 to July 24, 2010, at which point the drill pipe was recovered to evade Tropical Storm Bonnie.  Then, after standing by for the storm, a replacement drill string was used from July 27, 2010 to August 28, 2010.  The replacement string consisted of a combination of 6-5/8 inch OD, 0.625 inch wall thickness (40 ppf), S-135 grade, IPC, 8.500 x 5.250 GTM-69 drill pipe and 6-5/8 inch OD, 0.522 inch wall thickness (34 ppf), V-150 grade, IPC, 8.500 x 5.500 GTM-6 drill pipe.  The drill strings were used both to flow hydrocarbons from the well to the *Q4000* (where the hydrocarbons were flared off), and to pump fluids down to the well for the Top Kill and Static Kill operations.  When the Macondo response operations were complete, the drill strings were removed from the *Q4000* and stored on shore.  There are no measurement tools or devices associated with either drill string (Ex. A, Pabon Decl. ¶ 4 .)

*Discoverer Enterprise* **Drill String—**The Discoverer Enterprise drill strings are listed on Exhibit A to the Pabon Declaration. (Ex. A.) The *Discoverer Enterprise* drill string is the drill string that was attached to the *Discoverer Enterprise* to support its operations during the response.  The drill string consisted of 6-5/8 inch OD, 0.625 inch wall thickness (40 ppf), S-135 grade, IPC, 8.500 x 5.250 GTM-69 drill pipe.  The drill string was used to flow hydrocarbons from the well to the *Discoverer Enterprise* (where they were stored and off loaded to tanker vessels).  When Macondo response operations were complete, the drill string was removed from the *Discoverer Enterprise* and stored on shore.  There are no measurement tools or devices associated with the drill string. (*Id.* ¶ 5.)

*Discoverer Enterprise* **Offloading Hose—**The *Discoverer Enterprise* offloading hose is listed on Exhibit A to the Pabon Declaration. (Ex. A.)  This hose is a twelve inch (12") diameter

4

Manuli brand hose that was used to transfer hydrocarbons from the *Discoverer Enterprise* to tanker vessels (principally the *Massachusetts*). It is similar to the Helix Producer offloading hose that was released with BP's first equipment motion.[1] (*Id.* ¶ 6.)

**_DR30 Choke_**—The DR 30 Choke is listed on Exhibit A to the Pabon Declaration. (Ex. A.) This choke was designed to control the back pressure in the CDP manifold by allowing adjustment of the flow through the choke. The choke was installed initially on the CDP manifold. It was later removed from the CDP manifold and subsequently installed on the Three-Ram Capping Stack. On the Three-Ram Capping Stack, the choke was used to control flow of containment fluid to the environment. The DR30 choke was on the Three Ram Capping Stack only a short time; it was replaced on the Three Ram Capping Stack by another type of choke. (*Id.* ¶ 7.)

**Remaining Portion of the Oceaneering Pressure Measurement System**—Attached to this Motion as Exhibit B to the Pabon Declaration is a list of some items that remain from an Oceaneering Pressure Measurement System that was deployed during the response. (*See* Ex. A. Pabon Decl.) These are various components of one of the systems used to measure well shut in. This is not the complete system. The items on Exhibit B to the Pabon Declaration consist primarily of "new" materials that were spare parts, or of empty cases used to transport other components not listed here. Various components of this system were turned over to the Coast Guard and stored with other potential evidence in the "evidence yard" at Michoud. Various

---

[1] Indeed the photographs for the *Discoverer Enterprise* offloading hose were originally produced mixed with the photographs of the *Helix Producer* offloading hose because the two hoses look virtually identical. The photographs of the *Discoverer Enterprise* offloading hose can be found at BP-HZN-2179MDL00273729 through 00273731. The two hoses can be distinguished because the *Helix Producer* hose is a Yokohama hose, and the *Discoverer Enterprise* offloading hose is a Manuli hose.

5

other components, including gauges, are at present retained by BP. The components retained by BP could be considered generic, "off the shelf" type materials. (*Id.* ¶ 8.)

**Items Staged Offshore**— Attached to this Motion as Exhibit C to the Pabon Declaration is a list of items of equipment that BP offshore on vessels operating in the Gulf of Mexico for possible installation or use during the incident. (*See* Ex. A, Pabon Decl.) All of this equipment was available for use in the Response, but in fact none of these items ever were used. (*Id.* ¶ 9.) Accordingly, these items lack any evidentiary value.

**Raw Materials, Components, and Spare Parts**— Attached to this Motion as Exhibit D to the Pabon Declaration is a list of items such as raw materials, components, and spare parts. (*See* Ex. A, Pabon Decl.) Significantly, these items were never installed at the well site. Instead, these are items that sat on the shelf and were available to the response either as a resource from which items could have been constructed, or as a source of materials to be used for repair. (*Id.* ¶ 10.) These items are clearly are of no evidentiary value.

**Utility and Waste Liquids**—Attached to this Motion as Exhibit E to the Pabon Declaration is a list of various liquids associated with the spill response. (*See* Ex. A, Pabon Decl.) These are not oil samples, dispersant samples, or environmental media samples. This set of liquids consists of various items, primarily lubricating or hydraulic fluids, used to support various operational needs. (*Id.* ¶ 11.)

**Trash**—Attached to this Motion is Exhibit F to the Pabon Declaration with a list of items best described as trash. (*See* Ex. A, Pabon Decl.) The majority of items currently listed as "trash" are bags filled with sand. The sand was used for "ballasting baskets" which would have been anchored to the Coffer Dam containment chamber had the Coffer Dam proven successful. The "lead pour port" listed here was used to pour led for ballasting. (*Id.* ¶ 12.)

Out of an abundance of caution BP has photographed the items described in this Motion and made those photographs available to all parties to MDL 2179.  Moreover, BP has made all of these items available for inspection, and plans to make these items available for an additional inspection period at a secure location for a period of five business days after entry of the proposed Order in the event that any interested parties wish to request additional inspections.  For the convenience of the parties, the exhibits attached to the Pabon Declaration describe the various items and identify the Bates numbers of the photographs of those items.

BP respectfully requests, that if no party raises an objection to the release and reuse of such item(s) before the close of the five day inspection period, then the items shall be confirmed and consented-to as falling outside the scope of BP's preservation of evidence obligations set forth in Paragraph 14 of Pretrial Order No. 1.  If, for whatever reason, a party requests a further hold of a specific item during the five day period, then BP and the party will work to resolve the issue as to the specific item at issue, with the assistance as necessary of this Court.

Finally, BP asks this Court to relieve BP of the obligation to seek additional relief from the Court should BP locate or recover additional items that are similar to those items described in Exhibits A, B, C, D, E, and F to the Pabon Declaration. (*See* Ex. A, Pabon Decl.)  BP's windup of its response to the Macondo incident is ongoing.  BP believes it is possible that it may locate additional similar items, particularly items that could be described as "spare parts" or "trash."

BP respectfully requests that, as BP locates and identifies such items, BP be authorized to release those items by employing the same "notice and inspection" regime that this Court has approved regarding BP's three previous Equipment Motions.

## **CONCLUSION**

BP respectfully requests that the Court grant this Fourth Confirmation Motion and enter the proposed Order submitted herewith.

Dated:  July 6, 2011                             Respectfully submitted,

              By: /s/ Don K. Haycraft

                 Don K. Haycraft (Bar #14361)
                 (dkhaycraft@liskow.com)
                 R. Keith Jarrett (Bar #16984)
                 (rkjarrett@liskow.com)
                 LISKOW & LEWIS
                 One Shell Square
                 701 Poydras Street, Suite 5000
                 New Orleans, Louisiana  70139-5099
                 Telephone:   (504) 581-7979
                 Facsimile:   (504) 556-4108

                 Richard C. Godfrey, P.C.
                 (richard.godfrey@kirkland.com)
                 J. Andrew Langan, P.C.
                 (andrew.langan@kirkland.com
                 KIRKLAND & ELLIS LLP
                 300 North LaSalle Street
                 Chicago, Illinois  60654
                 Telephone:   (312) 862-2000
                 Facsimile:   (312) 862-2200

                 Robert R. Gasaway
                 (robert.gasaway@kirkland.com)
                 Joseph A. Eisert
                 (joseph.eisert@kirkland.com)
                 KIRKLAND & ELLIS LLP
                 655 Fifteenth Street, N.W.
                 Washington, D.C.  20005
                 Telephone:   (202) 879-5000
                 Facsimile:   (202) 879-5200
                 ***Attorneys for BP America Inc.,***
                 ***BP America Production Company, and***
                 ***BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 6, 2011, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

/s/ Don K. Haycraft
Don K. Haycraft