# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *All cases in Pleading Bundles B1 and B3*; | * | |
| 10-2771; 10-3815; 10-1540; 10-1502 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

## MEMORANDUM OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP ON THE BP DEFENDANTS' WAIVER OF ARBITRATION RIGHTS

**MAY IT PLEASE THE COURT:**

## I.
## INTRODUCTION

This memorandum is submitted pursuant to the Court's June 16, 2011, Order on BP's Motion for a Stay of Proceedings Between BP and Anadarko and MOEX (the "Order") [Rec. Doc. 2774]. The Order directed BP and Anadarko to submit to the Court "a detailed and specific account, not exceeding twenty-five pages, of any and all discovery or other actions undertaken by BP which pertain to the dispute existing between BP and Anadarko." Order at 3.

In this Circuit, a party waives arbitration by "demonstrating a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344-45 (5th Cir. 2004) *quoting, Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999). This is done by engaging in discovery and other conduct in the litigation. *See Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159, 1162 (5th Cir. 1986) (holding that the party moving for arbitration had waived that right because it had "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration"). *See also* BP's Opposition To Transocean's Motion For A Protective Order ("BP Waiver Brief") at 6 [Rec. Doc. 2470] (arguing that Transocean waived its right to arbitrate claims against BP by engaging in the discovery process).

Applying the foregoing legal principles to the record of BP's discovery conduct in this action compels the conclusion that BP has waived its right to arbitrate its dispute with Anadarko.

First, BP has made use of written discovery requests and deposition questions to attempt to link Anadarko to operational control over activities on the *Deepwater Horizon* and to attempt to prove Anadarko's knowledge of and acquiescence in BP's conduct. BP previously admitted

that discovery on these subjects "go[es] to the heart of the arbitrable disputes between BP and Anadarko."  BP's Motion for a Stay of Proceedings Between BP and Anadarko and MOEX [Rec. Doc. 2169] at 14 ("BP Stay Motion").  As shown below, there is no legitimate interest related to the claims and defenses in these proceedings that justifies such discovery.  BP's use of discovery exclusively for arbitral purposes is compelling evidence that it waived its arbitration rights.

Second, when BP sought to avoid a similar arbitration agreement with Transocean, it advanced arguments that are flatly inconsistent with the positions it is now taking concerning its own discovery activities -- namely, that by participating in the MDL discovery, Transocean waived any right to compel BP to arbitrate.  BP's prior statements about the effect of Transocean's discovery conduct leave no doubt that when BP chose to take discovery against Anadarko for use in a dispute allegedly subject to arbitration, it waived its right to arbitrate.

Third, BP's substantial delay in asserting its arbitration rights provides compelling, additional grounds for a finding of waiver.

Fourth, as BP itself has admitted in arguing that Transocean waived its arbitration rights, the discovery conduct engaged in by BP was prejudicial to Anadarko.

Finally, in the face of BP's inconsistent positions, its argument that Anadarko somehow is estopped from asserting that BP waived its arbitration rights is meritless.  To paraphrase BP's own argument against arbitration with Transocean, "for months [BP] has been using this Court's processes and procedures to take discovery on issues that [BP] now asserts are arbitrable.  [BP's] conduct constitutes waiver, pure and simple."  BP's Waiver Brief at 12.

## II.
## ARGUMENT

**A.   BP Has No Legitimate Reason to Take Discovery Against Anadarko in these Proceedings Other than to Gather Evidence in Support of Issues which it Describes as being at the Heart of the Arbitrable Disputes.**

In seeking to stay Anadarko's cross-claims, BP repeatedly has urged the Court to consider the intent of the party propounding discovery in order to decide whether the discovery was sought for use in arbitration rather than in litigation.  BP Stay Motion at 1, 16, 21 and 22. Examining BP's discovery conduct through that same lens conclusively demonstrates that BP waived its arbitration rights by making use of the discovery process to obtain evidence for a dispute with Anadarko that BP now claims is subject to mandatory arbitration.

BP argues that if Anadarko has a right to take discovery of BP concerning issues relevant to the claims and defense in these proceedings, as Magistrate Judge Shushan ruled in her May 13, 2011 order granting Anadarko's motion to compel discovery from BP [Rec. Doc. 2538], then BP must have had the right to take the discovery it has obtained against Anadarko.  This argument is premised on an obvious fallacy.  Anadarko's principal defense against the plaintiffs' claims in this litigation is predicated on demonstrating that BP and its contractors controlled all of the operations, events and instrumentalities giving rise to Plaintiffs' alleged injuries.  But BP's defense is not the reverse: BP does not, and cannot, attempt to defend against the claims in this litigation by arguing that Anadarko somehow caused plaintiffs' injuries.  In fact, BP has failed to demonstrate that it has <u>any</u> legitimate reason <u>in these proceedings</u> for the discovery it has taken against Anadarko.

As the Court is aware, BP contends that its arbitrable dispute with Anadarko centers on Article 22.5 of the Operating Agreement.  *See* Operating Agreement, attached as Exhibit A to BP's Motion to Stay [Rec. Doc. 2169-4 at 43 of 47].  Article 22.5 provides that liabilities

imposed on the parties "shall be borne by each Party in proportion to its Participating Interest Share in the activity or operation out of which that liability arises, except that when liability results from the gross negligence or willful misconduct of a Party, that Party shall be solely responsible for liability resulting from its gross negligence or willful misconduct."  Operating Agreement, Art. 22.5.  BP contends that, under Article 22.5, it was not grossly negligent and did not engage in willful misconduct.  Therefore, BP argues, Anadarko is obligated to pay 25% (its Participating Interest Share) of all liabilities imposed in these proceedings on parties to the Operating Agreement, and BP is required to pay 65% of all such liabilities (perhaps more now given BP's recent settlement with MOEX).

But if Article 22.5 of the Operating Agreement lawfully exonerates BP from liability for the negligence of BP and its contractors, and if BP also is correct that it did not engage in gross negligence or willful misconduct, then BP cannot benefit from establishing any liability on the part of Anadarko:  Doing so only would increase BP's liability by 65% under the Operating Agreement on a dollar-for-dollar basis.

If, on the other hand, BP incorrectly characterizes the workings of the Operating Agreement or the nature of its conduct here, the situation is even worse for BP:  Under the Operating Agreement, if BP is not exonerated for its negligence or that of its contractors, or if BP acted with gross negligence or committed willful misconduct, it will be "solely responsible" for all liabilities in this MDL imposed on Anadarko.  Art. 22.5.  BP thus has absolutely no legitimate reason related to these proceedings to take any discovery that might establish or increase Anadarko's potential liability.  Accordingly, BP's purpose in taking such discovery obviously was to obtain evidence for use in a dispute BP claims is subject to mandatory arbitration, a waiver of BP's right to arbitration.

Moreover, wholly apart from Article 22.5, the notion that BP needs to conduct any discovery from a Non-Operating Party such as Anadarko to defend against the claims BP faces as the Operator of the Macondo Well is not credible.  The Operating Agreement explicitly provides that BP Exploration, as the Operating Party, was responsible for conducting <u>all</u> exploration, drilling, and associated activities at the Macondo Well.  BP Exploration had the "exclusive right and duty to conduct (or cause to be conducted) all [such] activities or operations," and was "not subject to [Anadarko's] control or direction," except in limited circumstances that did not involve well design, drilling, operations or well control.  BP also had the duty to "conduct all activities or operations" in connection with the Macondo Well "in a good and workmanlike manner, as would a prudent operator under the same or similar circumstances," and to take certain actions "in compliance with all applicable laws and regulations, including avoiding significant and unintended impact on (i) the health or safety of people, (ii) property, or (iii) the environment . . . ." Operating Agreement, § 5.2.  Given the undisputed nature of BP's contractual rights and obligations, BP cannot credibly claim that the discovery it has taken from or about Anadarko was needed to defend against the plaintiffs' claims or against the cross-claims asserted by various defendants.  Instead, BP has sought discovery that goes to issues it claims are subject to mandatory arbitration.

**B.     BP Waived Its Arbitration Rights by Knowingly Engaging in Discovery with Anadarko Rather than Asserting its Right to Arbitration.**

BP has attempted to obfuscate the nature and extent of its discovery conduct against Anadarko by variously claiming (1) that it "has refrained from serving <u>any</u> discovery on Anadarko," BP Stay Motion at 23 (emphasis added); (2) that "[b]efore moving for a stay in this case [on April 27, 2011], BP engaged in <u>no</u> discovery against Anadarko," BP Reply at 8 (emphasis added); and, most recently, that "[b]efore the Magistrate Judge's May 13 Order

[granting Anadarko's motion to compel discovery], BP had not attempted to take discovery <u>of</u> Anadarko."  Memorandum in Support of BP's Motion to Dismiss Anadarko's Crossclaims for Lack of Subject Matter Jurisdiction and Improper Venue ("BP MTD") at 1-2 [Rec. Doc. 2944-1] (emphasis added).  As shown below, each of these statements, besides establishing BP's shifting tactics, is either false or is so misleading as to be false.

> **1.     BP Actively Used Rule 34 Requests and Depositions to Obtain Evidence for Its Dispute with Anadarko under the Operating Agreement.**

As explained in Section A above, BP has no rational reason to seek the discovery it sought from Anadarko in these proceedings because, at a minimum, any judgment entered against Anadarko only increases BP's liability.   An examination of BP's conduct further demonstrates that it has taken discovery intended only for use in BP's ongoing dispute with Anadarko, and not in connection with these proceedings.

On April 3, 2011, just two days after serving Anadarko with a Notice of Dispute claiming that taking any discovery related to arbitrable disputes was a breach of the Operating Agreement, BP served a document request on Halliburton seeking evidence of all communications with <u>Anadarko</u> relating to the Macondo well.  Exhibit A hereto (RFP no. 42).  On April 29, 2011, two days after moving to stay all discovery sought by Anadarko against BP, BP served a set of document requests on the States of Alabama and Louisiana, the Mexican States Of Quintana Roo, Tamaulipas, and Veracruz, and Local Government Entities.   The document requests included a request for "All documents referring or relating to <u>Anadarko's</u> involvement, participation or conduct with respect to the *Deepwater Horizon* Incident."   Exhibit B hereto (RFP No. 34) (emphasis added).

On May 11, 2011, two days <u>before</u> Magistrate Judge Shushan's order granting Anadarko's motion to compel, BP deposed Mr. Jesse Gagliano, a Halliburton employee.  During

the deposition, BP asked Mr. Gagliano targeted questions about <u>Anadarko's</u> purported knowledge of well conditions and whether Anadarko "should have taken all the same actions that BP should have taken with regard to" the Macondo well.  Gagliano Dep. Tr. at 292:3-294:14 (relevant portions attached as Exhibit C hereto).

BP followed the Gagliano deposition with a May 26, 2011 deposition of Anadarko drilling engineer Robert Quitzau.  BP used 100% of its allotted questioning time to depose Mr. Quitzau on issues concerning Anadarko's ability to monitor the well and its position on various safety decisions made by BP.  Quitzau Dep. Tr. at 367:7-443:6, relevant portions attached as Exhibit D hereto.

In BP's recently filed motion to dismiss Anadarko's cross-claims, BP described its questioning of Mr. Quitzau as not involving any questions "relating to Anadarko's numerous breaches of the Operating Agreement, or in any other way related exclusively to arbitrable issues."  BP MTD at 7.  To support that contention, BP adopted Anadarko's statement that the deposition questions went to "Anadarko's knowledge and/or approval of BP's conduct," including "Anadarko's ability to monitor the well and its position on various safety decisions made by BP."  BP MTD at 7.  Accordingly, BP claimed, the "questions went to its defenses of the claims against it in the MDL" and not to BP's dispute with Anadarko.

BP has a short, albeit convenient, memory.  Here is how BP previously described *the very same discovery subjects* that it now says are unrelated to its dispute with Anadarko under the Operating Agreement:

> Anadarko's … knowledge and/or approval of BP's conduct . . . *go[es] to the heart of the arbitrable disputes between BP and Anadarko* ….  For example, evidence about what Anadarko … knew about well design and operation could impeach post hoc allegations that [BP's] conduct was 'grossly negligent.'  . . . [W]hether [Anadarko] had control, provided input, approved, or

otherwise had knowledge of the actions at Macondo goes to the credibility of [Anadarko's] attempt … to avoid [its] contractual obligation to pay [BP]" [and] on its face . .  is relevant to the arbitrable claims.

Stay Motion at 14, 15 (emphasis added).

Given BP's prior admission that the subject matter of the discovery it sought from and about Anadarko "goes to the heart of the arbitrable disputes between BP and Anadarko" -- and the topic's complete irrelevance to BP's defenses in these proceedings -- the underlying purpose of the discovery demonstrates that BP waived its right to arbitration by using the discovery process in this litigation to pursue arbitrable claims.

### 2. BP Made Use of the Litigation Process by Identifying Six Non-Operating Party Witnesses as "Priority" Deponents.

In February 2011, BP identified four Anadarko witnesses and two MOEX/MOECO witnesses on the "Master List of Priority Defendants" filed with Magistrate Shushan.  No other party listed these individuals as potential deponents, priority or otherwise.  A copy of the combined Master List of Potential Deponents and Master List of Priority Deponents is attached hereto as Exhibit E.[1]

In its Stay Motion filed on April 27, 2011, BP tried to diminish the significance of its "List of Potential Priority Deponents," by describing it as nothing but a preliminary document which happened to be filed as a result of an order of the Court.  BP Stay Motion at 23-24.

Just three days later, however, when BP argued that Transocean waived its arbitration rights by "conduct[ing] substantial deposition discovery against BP," the lists of potential

---

[1]     The witnesses solely requested by BP were:  (1) Darrell Hollek, Anadarko Vice President, Operations; (2) Paul Chandler, Anadarko's Project Geological Advisor; (3) Nick Huch, Anadarko's Land/Drilling Engineer; (4) Robert Quitzau, Anadarko Contract Drilling Engineer; (5) Shinjiro Naito, Senior Manager, Geologist/Unit General Manager, Mitsui Oil Exploration Co., Ltd. ("MOECO"); and (6) Kyoko Yamamoto, an administrative assistant, MOECO.  *See* Combined Master List at 14, 17, Exhibit E attached hereto.

priority deponents had gained a far greater significance in BP's eyes.  BP Waiver Brief at 4.  As

BP then explained: "Transocean has listed numerous BP witnesses on Transocean's deposition

witness list that do not appear on the PSC's list in this litigation. [Citation omitted.]  *In many

instances, Transocean is the only party to list a BP witness for deposition, underscoring

Transocean's use of the litigation process*."  BP Waiver Brief at 5.

Having argued that Transocean's list of BP witnesses -- including BP witnesses not

identified by other parties -- is compelling evidence that Transocean waived its arbitration rights,

BP cannot credibly argue that it did not understand the significance of its own conduct when it

identified Anadarko employees as potential "priority deponents."

### 2.    BP Made Extensive Use of Written Discovery Requests to Obtain Evidence Solely Relevant to Arbitrable Issues.

On April 29, 2011, BP served on Anadarko ninety-seven requests for production of

documents.  A copy of the requests for production is attached as Exhibit F.  Like the discovery

requests and deposition questions described above, virtually all of the document requests seek

evidence of Anadarko's alleged knowledge of and acquiescence in BP's conduct as the operator

of the Macondo Well, as well as information that only can be described as exclusively relevant to

the allegedly arbitrable dispute under the Operating Agreement.  Among the subjects covered by

the requests are the following:

- All drafts of the Operating Agreement (Request 29);

- All documents related to the "analysis or decision by the Anadarko Defendants to file claims against BP in the Multidistrict Litigation instead of pursuing such claims under the Dispute Resolution Procedures of the JOA" (Request 66);

- All documents supporting the proposition that "the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill" (Request 94);

- All documents that "question or otherwise discuss the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill" (Request 95);

- All documents "relating to or referring to JIB invoices, including all drafts and internal correspondence related to the JIB invoices" (Request 61);

- Documents concerning Anadarko's financial benefits and costs related to the Macondo Well, including potential exposure from the *Deepwater Horizon* incident (Requests 57-67); and

- Communications related to various topics concerning drilling activities at the Macondo Well (Requests 1-28) and concerning various aspects of BP's drilling activities (Requests 34-56), all intended to gather evidence concerning Anadarko's knowledge of and acquiescence in BP's conduct.

More recently, on July 1, 2011, BP served the following requests for admissions on

Anadarko:

1. Admit that, from April 1, 2010, through April 20, 2010, Anadarko had uninterrupted real-time access to drilling data from the Macondo Well through INSITE Anywhere.

2. Admit that, from April 1, 2010, through April 20, 2010, Anadarko had uninterrupted access to the WellSpace site for the Macondo Well.

3. Admit that Anadarko approved BP's decision to temporarily abandon the Macondo Well in accordance with the Authorization for Expenditure signed by Anadarko on April 15, 2010.

*See* The BP Parties' First Set Of Requests For Admission To Anadarko (Exhibit G hereto).

On July 2, 2011, BP also served a set of interrogatories on Anadarko. The BP Parties'

Corrected First Set of Interrogatories to Anadarko (Exhibit H hereto).  BP's Interrogatories to

Anadarko include the following questions:

- Please describe in detail all reasons you contend that you are not required to pay any portion of any Joint Interest Billing related to the Macondo Well.

- Please describe in detail all ways in which you contend that BP has breached the JOA.

- Please describe in detail all ways in which you contend BP's conduct constituted gross negligence or willful misconduct, as those terms are used in your crossclaims against BP.

- Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the *Deepwater Horizon*, *Deepwater Horizon* Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

- Please identify and describe in detail all internal discussions at Anadarko before April 21, 2010, discussing the safety of the Macondo Well.

*See* The BP Parties' Corrected First Set of Interrogatories to Anadarko (Exhibit H hereto), Interrogatories, 41, 42, and 43, 1, and 36.

BP attempts to justify these discovery requests by explaining that it "did not serve a single set of written discovery on Anadarko until the very last day permitted by this Court's scheduling order."  BP MTD at 6.  "And even then," BP claims, it "informed Anadarko in boldfaced capital letters that no response was required until the arbitrability issues were resolved."  BP MTD at 6.  After Anadarko's Motion to Compel BP's Discovery Responses was granted, however, BP reversed course and demanded responses to its discovery requests before its Motion to Stay was ruled on, even asserting that its own responses to Anadarko's discovery requests suddenly were contingent upon first receiving Anadarko's responses to these previously deferred discovery request.  *See* Letter of Darin T. Beffa to Warren Anthony Fitch, Conference re BP Parties Responses to Anadarko Petroleum Corporation's First Set of Interrogatories and Document Requests, June 10, 2011; Letter of Charles L. Solomont to Darin T. Beffa, Re: BP Parties' Responses to Anadarko Petroleum Corp.'s Discovery, June 14, 2011, attached together hereto as Exhibit I.

Even if BP had not reneged on its reservation "notice," it surely did not believe that a notice purportedly reserving its arbitration rights was sufficient to prevent a waiver of its right to arbitration.  In order to make such a claim, BP would have to admit that it failed to heed its own warnings.  As BP emphatically advised Transocean:  "Transocean's position that it can litigate against BP while reserving its arbitration rights simply by providing notice has been categorically rejected by the Fifth Circuit."  BP Waiver Brief at 17, citing *MC Asset Recovery, LLC v. Castex Energy, Inc.*, 2009 WL 900745 (N.D. Tex. Apr. 3, 2009), *aff'd sub nom. In re Mirant*, 613 F.3d 584 (5th Cir. 2010). ("Use of the federal court system to advance one's legal position only to seek to finish the suit in arbitration when the suit could have proceeded to arbitration immediately is not viewed with favor in this circuit.").  BP underscored the point, noting that the Fifth Circuit had affirmed the trial court's ruling in *Castex*, "holding that Castex had waived its arbitration rights notwithstanding its purported written reservation of those rights."  *Id.*

Nor is BP aided by asserting that it did not serve the document requests "until the very last day permitted by this Court's scheduling order."  BP MTD at 6.  BP has adamantly insisted that complying with a court deadline does not prevent a waiver of arbitration rights:

> Transocean does not cite any authority for the proposition that filing a complaint because of a court deadline prevents a waiver of arbitration. . . . Moreover, Transocean's argument proves far too much. Almost all litigation actions—from filing motions to dismiss, *serving discovery*, filing for summary judgment, and even going to trial—take place pursuant to court deadlines. If compliance with a court deadline could excuse invocation of the judicial process, then there would almost never be waiver. But this is not the law, and the Fifth Circuit has held that filing such motions *or conducting discovery* waives arbitrations rights. *E.g., Mirant*, 613 F.3d at 590-91. If Transocean had wanted to preserve its arbitration rights, it should have filed an arbitration demand and moved to compel arbitration.

BP Waiver Brief at 17-18 (emphasis added).

These admissions by BP establish that it waived its arbitration rights by serving extensive written discovery requests on Anadarko on subjects that, as BP admits, "goes to the heart of the arbitrable disputes between BP and Anadarko," *i.e.*, "evidence about what Anadarko … knew about well design and operation," and "whether [Anadarko] had control, provided input, approved, or otherwise had knowledge of the actions at Macondo."  BP Stay Motion at 14, 15. At the very least, they are entirely inconsistent with BP's attempt to restrict Anadarko to pre-arbitration discovery of ten document requests and no depositions or other pre-hearing discovery. BP Stay Motion at 8, 19.

3.    **BP Responded to Anadarko's Initial Discovery Requests without Asserting a Right to Arbitration.**

On February 22, 2011, the BP Parties served their Responses And Objections To Anadarko Petroleum Corporation's Interrogatories and Requests for Production of Documents. BP's discovery responses reflected careful deliberations on its part.  At the time, BP knew that, in its words, "[o]ne of the policies recognized under the FAA is the parties' right to contract for arbitration that curtails discovery."  BP Stay Motion at 17.  BP also knew that the arbitration provisions of the Operating Agreement permitted only ten document requests and no interrogatories, and that its responses exceeded those limitations.  BP Stay Motion at 8, 19, 20.

BP's responses included ten pages of comprehensive objections (exclusive of objections to specific requests).  The responses parsed through and objected to terms such as "and", "or", "government", and "meeting."  Despite this attention to detail, nowhere in the 60 pages of Responses and Objections did BP raise any objection to providing discovery that exceeded the Operating Agreement's restrictive limitations on discovery, nor did BP suggest that Anadarko had breached the Operating Agreement by serving the discovery requests.

The significance of responding without objection to the document requests could not

have been lost on BP.  For example, when Transocean argued that the rules of the Limitation Action required it to implead BP and that filing a third-party complaint therefore did not waive its arbitration rights, BP chastised Transocean for not "purport[ing] to reserve any arbitration rights" in the complaint, BP Waiver Brief at 3, and for not having "file[d] an arbitration demand against BP in lieu of [the] complaint."  BP Waiver Brief at 4.  BP also could have chosen to file a motion for relief from the Court (as it later did when, after receiving a second set of discovery requests, it belatedly decided to assert its arbitration rights).  Under these circumstances, BP's decision to engage in the discovery process without objection is additional, compelling evidence that it waived any right to arbitration.

### C. BP Delayed Asserting its Right to Arbitration in Order to Take Advantage of Discovery in these Proceedings.

The dispute BP now claims it wishes to arbitrate -- whether BP is solely responsible for liabilities resulting from the *Deepwater Horizon* incident -- arose before many of the claims in these proceedings were filed, and predates the order of the United States Judicial Panel on Multidistrict Litigation establishing these MDL proceedings.  *See, e.g.*, BP Stay Motion at 3 (citing statements made by Anadarko in June and July 2010 concerning the parties' dispute).  In recognition of the dispute, back in July 2010, BP and Anadarko agreed to retain separate and independent counsel, rather than participate in the joint defense arrangement contemplated by Article 22.4 of the Operating Agreement.  *See* July 10, 2010 BP Correspondence (filed as Exhibit J under seal).

On August 11, 2010, the day after the consolidation and transfer order initiated these proceedings, BP took formal action against Anadarko, serving a Notice of Default under the Operating Agreement.  BP claimed that Anadarko was in default for, among other things, refusing to pay Joint Interest Bills ("JIBs") issued by BP for the costs of the oil spill.  The Notice

of Default also declared BP's intent to restrict Anadarko's right to information concerning the

*Deepwater Horizon* on the basis of the alleged defaults:

> (i) Anadarko shall have no further access to any rigs, Production Systems, Facilities, any Confidential Data or other maps, records, data, interpretations, or other information obtained in connection with activities or operations under the Operating Agreement; (ii) shall not be allowed to participate in meetings or Vote or make any Elections; (iii) shall be deemed a Non-Participating Party as to all operations approved while Anadarko is in default, except as to operations for which approval is binding on all Parties or Participating Parties, as applicable, all as provided in Article 6.3(b) at Exhibit "F" to the Operating Agreement.  (Emphasis added.)

*See* August 11, 2010 Notice of Default (Exhibit K hereto, filed under seal).

Despite declaring Anadarko in default, it was not until April 1, 2011, almost one year after the *Deepwater Horizon* incident, that BP served on Anadarko a "Notice of Dispute," a prerequisite to triggering the mandatory waiting periods required by the Operating Agreement before actually commencing an arbitration.   Although BP has described the Notice of Dispute as "beg[inning] the arbitration process required by the Operating Agreement," BP MTD at 3, in fact, an arbitration under the Operating Agreement is not commenced until service of a "Notice of Intention to Arbitrate," not a Notice of Dispute.  A Notice of Dispute, in contrast, requires the parties to appoint Management Representatives who "shall meet and confer as often as they deem reasonably necessary, in good faith negotiations, to try to resolve the Dispute amicably." *See* Operating Agreement, Exhibit H at §I.C, attached as Exhibit A to BP Stay Motion, Rec. Doc. 2169-5 at 42 of 71.  Because of mandatory waiting periods contained in Exhibit H to the Operating Agreement, an arbitration under the Operating Agreement cannot be commenced until at least October 2011.   Operating Agreement, Exhibit H at §II.A.   Even then, there is no obligation that either party serve the Notice of Intention to Arbitrate needed to commence an

arbitration.[2]

Had BP wished to arbitrate, it could have issued a Notice of Dispute at or about the time it declared Anadarko in default back on August 11, 2010, followed by a timely Notice of Intention to Arbitrate.  *See* BP Waiver Brief at 15 ("The decision whether to arbitrate is one best made at the onset of the case.") (citation and quotations omitted).  Had BP done so, the arbitration process that BP touts as "expeditious, economical, and less burdensome and adversarial than litigation" already would be well underway.  BP Stay Motion at 7-8.  Instead, BP decided to use the discovery process in the MDL to obtain discovery for use in its dispute with Anadarko, while belatedly invoking arbitration to prevent Anadarko from doing the same.  *Compare* BP Waiver Brief at 2 n.1 ("Transocean also could have served an arbitration demand and filed a motion to compel arbitration months ago, before waiving any arbitration rights."); *see also Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986) ("where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced.").

> ## D.  BP's Discovery Conduct Has Prejudiced Anadarko.

BP's Waiver Brief addressed the minimal showing of prejudice needed to prove a waiver

---

[2]    BP inaccurately quotes Exhibit H as stating that if the negotiations fail, "the matter *shall* be submitted to arbitration." BP Stay Motion at 14 (emphasis in original). The full clause cited by BP in fact states:

> If the Parties are unable to resolve the Dispute within ninety (90) days following the end of the negotiation period between the Management Representatives described in I.C., or such additional time as may be mutually agreed upon, *the matter shall be submitted to arbitration in accordance with the procedures set forth below*.

Exhibit H, § II.A (emphasis added).  BP thus has no obligation to proceed with arbitration regardless of the outcome of any negotiations with Anadarko.

of arbitration rights:

> "While the mere failure to assert the right of arbitration does not alone translate into a waiver of that right … such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred." *Petroleum Pipe*, 575 F.3d at 480 (internal quotations omitted).

> Moreover, the Fifth Circuit has "recognized that, where a party fails to demand arbitration, and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced." *Nicholas*, 565 F.3d at 910 (internal modifications omitted).

BP Waiver Brief at 13-14.

When it suited its purposes, BP asserted that "there is clear prejudice … in having to engage in and respond to discovery from parties subject to an arbitration agreement on claims subject to that same arbitration agreement."  BP Waiver Brief at 14 (internal citations omitted). BP also claimed that the costs of responding to such discovery requests, and of preparing witnesses for hostile questioning, constituted prejudice sufficient to support a claim of waiver. *Id.*  *See also* BP Stay Motion at 18 ("Allowing a party to an arbitration clause to conduct discovery on a counterparty because of litigation with a third party would inspire the kind of 'abuse and opportunistic behavior' that the Fifth Circuit [has] warned about").  Nor has BP "provided any indication that it will not take discovery of [other Anadarko] deponents as well." BP Waiver Brief at 11.  BP's discovery conduct -- including taking discovery that relates exclusively to arbitrable claims -- has been and will continue to be prejudicial to Anadarko.  *See generally E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 559 F. 2d 268, 269 ( 5th Cir. 1977) ("Substantially invoking the litigation machinery qualifies as the kind of prejudice ... that is the essence of waiver.").

### E.      BP's Estoppel Argument Is Meritless.

Based on the arguments BP made in its recently filed motion to dismiss Anadarko's cross-claims, it appears that BP will argue that Anadarko is estopped from arguing that BP has waived its arbitration rights.  The short response to this argument is that if there ever was a party estopped from raising the issue of estoppel, that party is BP.  More fundamentally, however, BP's estoppel argument depends on inaccurate descriptions of the purpose of discovery engaged in by the parties.

As Anadarko established in its motion to compel BP to respond to discovery requests, it has legitimate grounds to take discovery concerning BP in order to defend against the claims and cross-claims asserted against it in these proceedings, and in order to pursue its cross-claims against parties other than BP.  Magistrate Judge Shushan so ruled in Anadarko's favor on that motion, in an order from which BP did not appeal.

BP's estoppel argument simply ignores the distinctions between the discovery sought by Anadarko and the discovery BP has taken.  BP does not need discovery to obtain evidence about the conduct of the Operator of the Macondo Well.  Anadarko does.  BP has no rational basis for attempting to allocate any percentage of fault to any other party to the Operating Agreement.  Anadarko does.  And, unlike BP, Anadarko has not engaged in discovery for the sole purpose of obtaining evidence for use in its dispute with BP, and then invoked the arbitration provisions of the Operating Agreement to prevent BP from exercising its discovery rights.

BP also criticizes Anadarko for not making more of its waiver argument in its earlier submissions opposing BP's motion to stay.  BP admits, however, that Anadarko's prior filings expressly raised the issue of BP's discovery conduct as a reason to deny the motion to stay.  It also conveniently ignores that those filings pre-dated BP's Waiver Brief.  As shown above, BP's Waiver Brief contains numerous admissions that preclude BP from denying that it understood

full well that the discovery it sought from and about Anadarko was entirely inconsistent with preserving any right to arbitration.

There also is ample reason to conclude that if BP's motion for a stay is granted, its attempts at discovery mischief will continue unabated.  For example, although BP chose not to appeal from Magistrate Judge Shushan's order granting Anadarko's motion to compel, the papers BP recently filed in support of its motion to dismiss Anadarko's cross-claims raised the possibility, without further explanation, that the Magistrate's order might be "later overruled," a clear indication that BP's efforts to manipulate discovery are far from over.  BP MTD at 11.

Finally, any claim of estoppel made on behalf of BP America Production Company is even more far-fetched.  BP America Production Company is <u>not</u> a party to the Operating Agreement, but <u>is</u> a party to the Drilling Contract with Transocean and has argued that Transocean has waived its right to arbitrate under that contract.  A party that seeks to avoid its contractual obligations to arbitrate with one party while, at the same time, asserting a right to arbitrate against a party with which it has no contractual relationship, is not a worthy estoppel advocate.

BP should not be allowed to use discovery in this case to support claims it says must be arbitrated, while holding arbitration in abeyance so that it can prevent Anadarko from asserting its interests.  Nor should it be allowed to advance one theory of waiver of arbitration rights against Transocean and then advance an entirely different theory against Anadarko, while at the same time denying that it was aware of the consequences of its own discovery conduct.  *See generally Hotard v. State Farm Fire and Cas. Co.*, 286 F. 3d 814, 818 (5th Cir. 2002) ("a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument").  Because BP has

engaged in pretrial activity entirely inconsistent with an intent to arbitrate, its motion for a stay should be denied.

### III.
### CONCLUSION

BP improperly attempts to use the arbitration provision in the Operating Agreement as both a sword and a shield. BP used the discovery process in this case to gather evidence on what it calls the "heart of the arbitrable dispute." BP has thereby invoked the judicial process to pursue its claims and arguments against Anadarko that otherwise would be heard in arbitration, and now that BP has invoked the judicial process, it cannot prevent Anadarko from doing the same and asserting its claims in this Court. And, BP's position is completely opposite to the position it has taken with Transocean. BP should not be permitted to pursue or benefit from such contradictory positions. BP's Motion for a stay of these proceedings should be denied.

Respectfully submitted,

DATED: July 6, 2011              BINGHAM McCUTCHEN, LLP

/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
Tony Fitch
tony.fitch@bingham.com
David B. Salmons
david.salmons@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

Jonathan M. Albano
jon.albano@bingham.com
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726
Telephone (617) 951-8360

Facsimile (617) 345-5002

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on July 6, 2011.


_____ /s/ *Ky E. Kirby* _____
                 Ky E. Kirby