# EXHIBIT I



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| This Document Relates To:  All Cases | * | JUDGE BARBIER |
| | * | MAGISTRATE JUDGE SHUSHAN |
| * * * * * * * * * * * * * * | * | |

### THE BP PARTIES' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO HALLIBURTON

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following Requests for Production of Documents to Defendant Halliburton Energy Services, Inc. ("Halliburton") to be responded to within 30 days of service.  The BP Parties request that all documents and electronically stored information responsive to the following Second Request for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654.

### DEFINITIONS

1. "You," "your," and "yours" shall mean Halliburton, including without limitation all of Halliburton's present or former employees, agents or representatives, or anyone acting or purporting to act for or on Halliburton's behalf for any purpose whatsoever, and includes any and all affiliates, subsidiaries, contractors and divisions, such as Sperry Drilling, and includes the present employees, agents and representatives of those affiliates, subsidiaries, contractors and divisions.

Exhibit I
Page 1

2.      "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3.      "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail (including both business and personal email), text messages, computer linkups, written memoranda, and face-to-face conversations; "communication" also includes all documents and ESI containing, summarizing, or memorializing any communication.

4.      "Document" or "documents" includes "communications" as defined above, and has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including electronically stored information ("ESI"), and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and

statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

5. "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

6. "Including" or "includes" means "including but not limited to" and "including without limitation."

7. "Relating to" or "related to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

8. The words "and" and "or" should be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

9. "Any" should be construed, when possible, to mean "any and all."

10. "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

11. The singular includes the plural, and the plural includes the singular.

12. "MC252 well" and "Macondo well" refer to the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the

outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

      13.      "Halliburton" means Halliburton Energy Services, Inc. and all of its affiliates, subsidiaries, contractors and divisions, such as Sperry Drilling, and includes the present employees, agents and representatives of those affiliates, subsidiaries, contractors and divisions.

      14.      "BP" means BP p.l.c and all of its affiliates and subsidiaries.

      15.      "Kick," whether or not capitalized, means the intrusion of hydrocarbons into a wellbore.

      16.      "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

      17.      "OptiCem" means Halliburton's proprietary software used to model cement slurry operations and as that term was used by Halliburton in communications with BP.

## INSTRUCTIONS

      1.      All documents are to be produced in accordance with Pre-Trial Order No. 16.

      2.      Produce all documents in the order in which they appear in your files.  Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in this same condition.

      3.      Produce all documents within your possession, custody, or control including all documents in the possession, custody or control of your affiliates, partners, employees, agents, attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected with you or subject to your control.

4. If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction or removal.

5. If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

6. Each request is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular request.

7. If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

8. If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

9. Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

## REQUESTS FOR PRODUCTION

1. Please produce all of Jesse Gagliano's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

2. Please produce all of Vincent Tabler's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

3. Please produce all of Nathaniel Chaisson's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

4. Please produce all of Tim Quirk's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

5. Please produce all of Richard Vargo's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account,

OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

6. Please produce all documents discussing, reflecting or relating to Richard Vargo's conversations with Paul Anderson, Nathaniel Chaisson, Jesse Gagliano, Vincent Tabler, Christopher Haire, Ronnie Faul, Tommy Roth, or Anthony Badalamente regarding the Macondo well, including the notes that Mr. Vargo testified at his deposition that he took.

7. Please produce all of Kris Ravi's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

8. Please produce all of Anthony Badalamente's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

9. Please produce all of Tommy Roth's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

10. Please produce all of Carl Blanchard's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

11. Please produce all of Michael Serio's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

12. Please produce all of Ronnie Faul's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

13. Please produce all documents discussing, reflecting or relating to Ronnie Faul's conversations discussing, reflecting or relating to the cement slurry for the Macondo well, including the notes that Mr. Faul took of his conversation with Mr. Quirk relating to the cement tests.

14. Please produce all of Tony Angel's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts),

laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

15. Please produce all of Charles Kendrick's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

16. Please produce all of Mark Edwards's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

17. Please produce all of Vincent Tabler's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

18. Please produce all of Christopher Haire's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

19. Please produce all of Paul Anderson's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

20. Please produce all of John Gisclair's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

21. Please produce all of Joseph Keith's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from his work and personal computer(s).

22. Please produce all of Cathleenia Willis's documents discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from his business and personal account, OptiCem data files, OptiCem simulations and reports, cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from her work and personal computer(s).

23. Please produce all documents of Halliburton personnel involved in the relief efforts discussing, reflecting or relating to the Macondo well, including correspondence, e-mail from their business and personal account, OptiCem data files, OptiCem simulations and reports,

cement reports (including drafts), laboratory test requests and results (including drafts), notes or tally books, text messages, and files from work and personal computer(s).

24. Please produce all documents discussing, reflecting or relating to complaints about Jesse Gagliano, including complaints about his performance.

25. Please produce all documents discussing, reflecting or relating to complaints about the foam stability testing, including complaints about its accuracy, utility and appropriateness.

26. Please produce all documents discussing, reflecting or relating to Safety Observation Cards for the Halliburton laboratory in Broussard, Louisiana.

27. Please produce all documents discussing, reflecting or relating to Safety Observation Cards for the Halliburton laboratory in Duncan, Oklahoma.

28. Please produce all documents discussing, reflecting or relating to any analysis of the BP Internal Investigation Report.

29. Please produce all documents discussing, reflecting or relating to any analysis of the findings in the Presidential Commission's Report or in the Chief Counsel's Report.

30. Please produce all documents discussing, reflecting or relating to any communication where Halliburton informed or warned BP or any other party that the cement job pumped on April 19-20, 2010 would fail to achieve zonal isolation.

31. Please produce the data files underlying the OptiCem runs for the Macondo well, including all data used to generate the Fluid Positions graph in the OptiCem reports dated April 14, 15 and 18, 2010.

32. Please produce all documents discussing, reflecting or relating to any communications and materials provided to any body conducting an investigation, including any

Congressional committee, the Department of Justice, the Federal Bureau of Investigation, the National Commission on the BP Deepwater Horizon Oilspill, or the Bureau of Ocean Energy Management.

33. Please produce all documents discussing, reflecting or relating to Halliburton's analysis on flow path, including Richard Vargo's analysis, on or before his testimony before the Presidential Commission on November 8, 2010.

34. Please produce all documents discussing, reflecting or relating to Halliburton's analysis on flow path, including Richard Vargo's analysis, after his testimony before the Presidential Commission on November 8, 2010.

35. Please produce all documents supporting a theory of hydrocarbon flow up the annulus as described by Richard Vargo on November 8, 2010 before the Presidential Commission and at his deposition on March 30-31, 2011.

36. Please produce all documents discussing, reflecting or relating to the "pressure drop" that Richard Vargo described on November 8, 2010 before the Presidential Commission and at his deposition on March 30-31, 2011, including the analysis that Mr. Vargo performed.

37. Please produce all documents discussing, reflecting or relating to the "volumetric analysis" that Richard Vargo described on March 31, 2011 at his deposition, including the analysis that Mr. Vargo performed.

38. Please produce all documents discussing, reflecting or relating to any guideline or best practice, Halliburton's or otherwise, for interpreting foamed cement stability testing, including documents stating that a one pound-per-gallon difference between the target cement slurry density and the cured cement density indicates a stable foamed cement.

39. Please produce all documents discussing, reflecting or relating to any pre-incident or post-incident testing at the Halliburton laboratory in Duncan, Oklahoma 's discussing, reflecting or relating to the Macondo well, including laboratory testing of any slurry to investigate the slurry used at the Macondo well, including the conductivity tests identified by Tim Quirk and Richard Vargo at their depositions.

40. Please produce all documents discussing, reflecting or relating to Halliburton's involvement in the pressure tests conducted at the Macondo well on April 20, 2010.

41. Please produce all documents discussing, reflecting or relating to the real-time data from the April 19-20, 2010 cement job data, including communications between Richard Vargo, Nathaniel Chaisson, Paul Anderson and Vincent Tabler discussing, reflecting or relating to the pressure drop.

42. Please produce all documents discussing, reflecting or relating to communications between Halliburton and Anadarko discussing, reflecting or relating to the Macondo well.

43. Please produce all documents discussing, reflecting or relating to communications between Halliburton and Mitsui Offshore Exploration or MOEX discussing, reflecting or relating to the Macondo well.

44. Please produce all documents discussing, reflecting or relating to cementing operations for the relief effort, including increased supervision and additional testing.

45. Please produce all documents discussing, reflecting or relating to communications between Halliburton and Transocean discussing, reflecting or relating to the Macondo well.

46. Please produce all versions of U.S. Work Methods for Land and Offshore, including drafts.

47. Please produce all documents discussing, reflecting or relating to U.S. Work Methods for Land and Offshore.

48. Please produce all documents discussing, reflecting or relating to Halliburton's "yellow flag" and "red flag" process.

49. Please produce all documents discussing, reflecting or relating to critical wells in the Gulf of Mexico, including any processes for critical wells.

50. Please produce all documents discussing, reflecting or relating to any "playbook" for the Gulf of Mexico within the preceding ten years.

51. Please produce all documents discussing, reflecting or relating to irregular job reports or IJRs for the Gulf of Mexico.

52. Please produce all documents discussing, reflecting or relating to the Opticem software, including, but not limited, standards, practices, protocols, guidelines and recommendations for inputs and outputs.

53. Please produce all documents discussing, reflecting or relating to the shelf life of the components of the cement slurry pumped at the Macondo well, including the shelf life of the cement, the dry blend and each of the dry and liquid additives.

54. Please produce documents sufficient to identify the User ID in the Viking system for each Halliburton employee.

55. Please produce all documents discussing, reflecting or relating to the recorded testimony or interview, including transcripts or notes, of any Halliburton employee discussing, reflecting or relating to the Macondo well, including testimony or interview given to any Congressional committee, the Department of Justice, the Federal Bureau of Investigation, the

National Commission on the BP Deepwater Horizon Oilspill, or the Bureau of Ocean Energy Management.

56. Please produce all documents discussing, reflecting or relating to the data in the Viking database for the Macondo well.

57. Please produce all documents describing the roles or responsibilities of Halliburton's cementing personnel, including the roles or responsibilities of the account representative, cement engineer, foam cementer, cementer, lab technician, chemist, lab manager, and region manager for cementing.

58. Please produce all documents describing the roles or responsibilities of Halliburton's mud logging personnel.

59. Please produce all documents describing the Halliburton safety procedures or practices, including HSE and HSSE policies, stop work programs and safety rules.

60. Please produce all documents discussing, reflecting or relating to Halliburton's preservation of evidence from the *Deepwater Horizon* incident, including rig samples or representative samples of the cement slurry used on the production interval of the Macondo well.

61. Please produce all documents discussing, reflecting or relating to Halliburton's preservation of electronic data from Halliburton's work on the Macondo well.

Dated: April 3, 2011

Respectfully submitted,

/s/ J. Andrew Langan, P.C.
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:     (504) 581-7979
Facsimile:      (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:     (202) 662-5985

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

17

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 3rd day of April, 2011.

                                           /s/ J. Andrew Langan, P.C.