# EXHIBIT R



Apr 29 2011
11:06PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Cases | : | DISTRICT JUDGE BARBIER |
| | : | MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….. | : | |

## THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO TRANSOCEAN INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. ("BPXP") and BP America Production Company (the "BP Parties") propound the following Requests for Production of Documents to Transocean Inc. to be responded to within 30 days of service.  The BP Parties request that all documents and electronically stored information responsive to the following Requests for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654.

## DEFINITIONS

1.      "You," "your," and "yours" shall mean the Transocean Inc., including without limitation all of the Transocean Inc.'s present or former agents or representatives, or anyone acting or purporting to act for or on the Transocean Inc.'s behalf for any purpose whatsoever.

2.      "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3.      "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda,

and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

4.      "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including ESI, and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

5.      "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known

Exhibit R
Page 2

address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and document control number(s).

6.      "Including" or "includes" means "including but not limited to" or "including without limitation."

7.       "Relating to" or "relating to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

8.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

9.      "BP" means BPXP and all of its affiliates and subsidiaries.

10.      *Deepwater Horizon* Incident" or "Incident" means the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

11.      "MC252 Well" means the exploratory well that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

12.      "Oil Spill" means the oil and other hydrocarbons released from the MC252 Well as a result of the Incident.

13.      "Transocean" means Transocean Ltd. and all of its affiliates and subsidiaries.

14.      "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

15.      "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

16.      "Lost circulation," whether or not capitalized, means a reduced amount or total absence of drilling fluids returning to the drilling rig after being pumped down a well.

17.      "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

18.      Other terms are defined within the requests for production.

### **INSTRUCTIONS**

1.      All documents are to be produced in accordance with Pre-Trial Order No. 16.

2.      Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of your affiliates, partners, employees, agents, attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected with you or subject to your control.

3.      Unless otherwise specified, respond to all requests for production that reference the *Deepwater Horizon*, including its crew, equipment, and appurtenances, by searching for documents created at any time.  Unless otherwise specified, respond to all requests for production that do not reference the *Deepwater Horizon* by searching for documents created on or after April 20, 2005.

4.      If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

5.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

4

6.      Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

7.      If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.  Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

8.      If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

9.      Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents requested by, or produced in response to, requests for production and interrogatories served on Transocean Inc. by any other party in MDL No. 2197, including but not limited to Plaintiffs, Anadarko Petroleum Corporation, and MOEX Offshore 2007 LLC.

2.      All documents relating to any inspections, audits, certifications, or surveys of the *Deepwater Horizon*, including but not limited to documents relating to inspections, audits, certifications, or surveys by the Marshall Islands, American Bureau of Shipping, Det Norske Veritas, the United States Coast Guard, the Minerals Management Service (now known as the Bureau of Ocean Energy Management, Regulation and Enforcement), BP, Lloyd's Register EMEA, West Engineering Services, and ModuSpec USA, Inc.

5

3.      All documents relating to Transocean's responses to the findings of any inspections, audits, certifications, or surveys of the *Deepwater Horizon*, including but not limited to Transocean's decisions whether to take any action in response to such findings; any repairs or maintenance undertaken in response to such findings; or Transocean's rejection of, objection to, or disagreement with such findings.

4.      All documents relating to any maintenance, inspection, or testing of the *Deepwater Horizon* recommended by any person that Transocean did not implement.

5.      All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* blowout preventer stack ("BOP") and all of its components.

6.      All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* BOP and all of its components.

7.      All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* BOP and all of its components.

8.      All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* BOP complied with Transocean's policies, practices, procedures, standards, requirements, protocols, and/or planning regarding maintenance, inspection, and testing of BOPs.

9.      All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* emergency disconnect system ("EDS").

10.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* EDS.

11.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* EDS.

12.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* EDS complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of EDS's.

13.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* mud-gas separator ("MGS").

14.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* MGS.

15.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* MGS.

16.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* MGS complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of MGS's.

17.    All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* diverter system.

18.    All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* diverter system.

19.    All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* diverter system.

20.    All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* diverter system complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of diverter systems.

21.    All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the *Deepwater Horizon* designed or intended to stop or control the flow of hydrocarbons.

22.    All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the *Deepwater Horizon* designed or intended to stop or control the flow of hydrocarbons.

23.    All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the *Deepwater Horizon* designed or intended to stop or control the flow of hydrocarbons.

24.     All documents relating to whether the actual maintenance, inspection, and testing of equipment on the *Deepwater Horizon* designed or intended to stop or control the flow of hydrocarbons complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of equipment on deepwater drilling rigs designed or intended to stop or control the flow of hydrocarbons.

25.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* alarm systems.

26.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* alarm systems.

27.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* alarm systems.

28.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* alarm systems complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of alarm systems.

29.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* emergency shutdown system ("ESD").

30.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* ESD.

31.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* ESD.

32.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* ESD complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of ESDs.

33.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* rig savers.

34.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* rig savers.

35.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* rig savers.

36.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* rig savers complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of rig savers.

37.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* overspeed controls.

38.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* overspeed controls.

39.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* overspeed controls.

40.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* overspeed controls complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of overspeed controls.

41.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the *Deepwater Horizon* designed or intended to keep the rig safe in the event hydrocarbons flow onto the rig.

42.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the *Deepwater Horizon* designed or intended to keep the rig safe in the event hydrocarbons flow onto the rig.

43.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding equipment on the

11

*Deepwater Horizon* designed or intended to keep the rig safe in the event hydrocarbons flow onto the rig.

44.     All documents relating to whether the actual maintenance, inspection, and testing of equipment on the *Deepwater Horizon* designed or intended to keep the rig safe in the event hydrocarbons flow onto the rig complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of equipment on deepwater drilling rigs designed or intended to keep the rig safe in the event hydrocarbons flow onto the rig.

45.     All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* firefighting equipment.

46.     All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* firefighting equipment.

47.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* firefighting equipment.

48.     All documents relating to whether the actual maintenance, inspection, and testing of the *Deepwater Horizon's* firefighting equipment complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance, inspection, and testing of firefighting equipment.

12

49.      All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* generators.

50.      All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* generators.

51.      All documents relating to whether the actual maintenance and inspection of the *Deepwater Horizon's* generators complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance and inspection of generators.

52.      All documents relating to any maintenance, including maintenance policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* computer system, controls, and displays for the driller's and assistant driller's control chairs.

53.      All documents relating to any inspections, including inspection policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon's* computer system, controls, and displays for the driller's and assistant driller's control chairs.

54.      All documents relating to whether the actual maintenance and inspection of the *Deepwater Horizon's* computer system, controls, and displays for the driller's and assistant driller's control chairs complied with Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding maintenance and inspection of computer system, controls, and displays for the driller's and assistant driller's control chairs.

55.      All documents relating to any maintenance, inspections, and/or testing of the *Deepwater Horizon* and its equipment that was outstanding or overdue on April 20, 2010.

56.      All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for informing or not informing BP regarding any maintenance, inspections, and/or testing of the *Deepwater Horizon* and its equipment.

57.      All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for informing or not informing BP of any outstanding or overdue maintenance, inspections, and/or testing of the *Deepwater Horizon* and its equipment.

58.      All documents relating to the *Deepwater Horizon's* systems for scheduling, conducting, and monitoring maintenance (including but not limited to Rig Management System II) generating duplicative work orders, work orders meant for a different rig, work orders for maintenance that had already been performed, or work orders that were otherwise erroneous or irrelevant.

59.      All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for conducting "condition-based maintenance" on the *Deepwater Horizon* and its equipment, including the BOP.

60.      All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for conducting "condition-based maintenance" on its deepwater drilling rigs and their equipment, including their BOPs.

61.      All documents relating to Transocean's use of "condition-based maintenance" instead of the American Petroleum Institute ("API") standards, specifications, and/or recommended practices in maintaining, inspecting, and/or testing on its deepwater drilling rigs and their equipment, including their BOPs.

62.     All documents relating to the costs associated with Transocean's use of "condition-based maintenance" on the *Deepwater Horizon* and Transocean's other deepwater drilling rigs and their equipment including their BOPs, including but not limited to comparisons of the cost of using "condition-based maintenance" with the cost of alternative maintenance planning.

63.     All documents relating to Transocean's use of "condition-based maintenance" instead of requirements or standards set forth in federal laws or regulations in maintaining, inspecting, and/or testing on its deepwater drilling rigs and their equipment, including their BOPs.

64.     All documents relating to Cameron International Corporation's recommended policies, practices, procedures, standards, requirements, and/or protocols for maintaining, inspecting, and testing the *Deepwater Horizon's* BOP.

65.     All documents related to whether the *Deepwater Horizon*, its crew, and equipment were in compliance with the International Safety Management Code ("ISM").

66.     All documents related to whether the *Deepwater Horizon*, its crew, and equipment were in compliance with the International Convention for the Safety of Life at Sea ("SOLAS").

67.     All documents related to whether the *Deepwater Horizon*, its crew, and equipment were in compliance with United States Coast Guard regulations.

68.     All documents related to whether the *Deepwater Horizon*, its crew, and equipment were in compliance with regulations of the Minerals Management Service ("MMS"), now known as the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE").

69.     All documents relating to schematics, diagrams, drawings, or blueprints for the *Deepwater Horizon's* BOP both as manufactured and as it existed at the time of the Incident.

70.     All documents relating to any leaks from any part or component of the *Deepwater Horizon's* BOP.

71.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for addressing leaks from any part or component of a BOP.

72.     All documents relating to any modifications Transocean or any other entity made to the *Deepwater Horizon's* BOP.

73.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for making, or allowing a third party to make, modifications to a BOP.

74.     All documents relating to Transocean's replacement of any parts in the *Deepwater Horizon's* BOP.

75.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for replacing parts in a BOP.

76.     All documents relating to American Petroleum Institute Recommended Practice 53 ("API RP 53").

77.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for complying with API RP 53.

78.     All documents relating to the subsea electronic modules or control pods for the *Deepwater Horizon's* BOP.

79.     All documents relating to how frequently Transocean re-charged or replaced the batteries in the *Deepwater Horizon's* BOP's subsea electronic modules or control pods.

16

80.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for re-charging or replacing the batteries in a BOP's subsea electronic modules or control pods.

81.     All documents relating to solenoid 103 of the *Deepwater Horizon* BOP's yellow control pod.

82.     All documents relating to the effects of uncontrolled well flow on a BOP, including but not limited to documents relating to whether and how uncontrolled well flow can damage a BOP.

83.     All documents relating to the *Deepwater Horizon* BOP's automatic mode function or deadman function.

84.     All documents relating to any testing, including testing policies, practices, procedures, standards, requirements, protocols, and/or planning, regarding the *Deepwater Horizon* BOP's automatic mode function or deadman function.

85.     All documents relating to the alarms, including but not limited to the gas and general alarms, on the *Deepwater Horizon*.

86.     All documents relating to Transocean inhibiting or operating in manual mode the alarm systems on the *Deepwater Horizon*.

87.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for inhibiting or operating in manual mode the alarm systems on its deepwater drilling rigs.

88.     All documents relating to the training that each *Deepwater Horizon* crew member received on when and how to activate the *Deepwater Horizon's* alarms, including its gas and general alarms.

17

89.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for when and how to activate the *Deepwater Horizon's* alarms, including its gas and general alarms.

90.     All documents relating to the *Deepwater Horizon's* overspeed controls.

91.     All documents relating to any loss of power by the *Deepwater Horizon*, including but not limited to the blackout that occurred on the *Deepwater Horizon* in August 2008.

92.     All documents relating to the failure of the *Deepwater Horizon's* overspeed controls for engine no. 3 causing a blackout on the *Deepwater Horizon* in August 2008.

93.     All documents relating to any maintenance, repairs, replacement, inspection, and/or testing of the *Deepwater Horizon's* overspeed controls as a result of the August 2008 blackout on the *Deepwater Horizon*.

94.     All documents relating to the *Deepwater Horizon's* rig savers.

95.     All documents relating to the *Deepwater Horizon's* emergency shutdown system.

96.     All documents relating to any of the *Deepwater Horizon's* equipment intended to prevent gas flow to the engine control room or shut down the rig's engines if combustible gas is detected.

97.     All documents relating to the *Deepwater Horizon's* heating, ventilation, and air conditioning system.

98.     All documents relating to the *Deepwater Horizon's* MGS.

99.     All documents relating to the *Deepwater Horizon's* diverter system.

100.    Documents sufficient to show all types of data shown on the *Deepwater Horizon's* computer system, controls, and displays for the driller's and assistant driller's control chairs.

101.    All documents relating to the *Deepwater Horizon's* computer system, controls, and displays for the driller's and assistant driller's control chairs failing to show data, showing data on a delayed basis, or showing erroneous data.

102.    All documents relating to all prior activations of the *Deepwater Horizon's* EDS.

103.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding when a drilling rig's EDS should be activated.

104.    All documents relating to when the *Deepwater Horizon's* EDS was activated or attempted to be activated on April 20, 2010, including but not limited to when orders were given to activate or not activate the *Deepwater Horizon's* EDS.

105.    All documents relating to the training that each crew member received on when and how to activate the *Deepwater Horizon's* EDS.

106.    All documents relating to the MC252 Well Control Event on April 20, 2010.

107.    All documents relating to the data from the Hitec sensors and Sperry-Sun sensors collected on the *Deepwater Horizon* on April 20, 2010.

108.    All documents relating to the *Deepwater Horizon* crew's monitoring for kicks on April 20, 2010.

109.    All documents related to the training the *Deepwater Horizon* crew received regarding monitoring for kicks.

110.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding monitoring for kicks during drilling or temporary abandonment procedures.

19

111.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding what data should be monitored to determine whether a kick is occurring, and what changes in that data indicate that a kick is occurring.

112.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding the use of drill pipe pressure data and changes in such data to determine whether a kick is occurring.

113.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding the use of flow-out and flow-in data and changes in such data to determine whether a kick is occurring.

114.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for determining whether a kick is occurring.

115.    All documents related to the training the *Deepwater Horizon* crew received to determine when a kick is occurring.

116.    All documents relating to the actions the Transocean crew took in response to the MC252 Well Control Event on April 20, 2010.

117.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding how the crew of a deepwater drilling rig should respond to a kick.

118.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding how the crew of a deepwater drilling rig should respond to a blowout.

119.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding how the crew of a deepwater drilling rig should respond when gas enters into the riser of a deepwater drilling rig.

120.     All documents relating to the use of the *Deepwater Horizon's* MGS on April 20, 2010.

121.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding when and how the crew of a deepwater drilling rig should use the MGS in response to a well control event.

122.     All documents relating to the use of the diverter system's overboard lines on April 20, 2010.

123.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding when and how the crew of a deepwater drilling rig should use the diverter system's overboard lines in response to a well control event.

124.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding when the crew of a deepwater drilling rig should use the diverter system's overboard lines instead of the MGS, or vice versa, in response to a well control event.

125.     All documents relating to the use of the *Deepwater Horizon's* BOP on April 20, 2010.

126.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding how the crew of a deepwater drilling rig should use the BOP in response to a well control event.

127.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding when the crew of a deepwater drilling rig should use the BOP's blind shear rams in response to a well control event.

128.    All documents related to the training the *Deepwater Horizon* crew received in responding to kicks.

129.    All documents related to the training the *Deepwater Horizon* crew received in responding to blowouts.

130.    All documents related to the training the *Deepwater Horizon* crew received in responding to gas in the riser.

131.    All documents related to the training the *Deepwater Horizon* crew received in whether to use the MGS or diverter system's overboard lines in response to a blowout.

132.    All documents related to the training the *Deepwater Horizon* crew received in using the BOP to control a kick.

133.    All documents related to the training the *Deepwater Horizon* crew received in using the BOP to control a blowout.

134.    All documents relating to the March 8, 2010 kick experienced when the *Deepwater Horizon* was drilling the MC252 Well.

135.    All documents relating to the most likely causes of a blowout, including whether a blowout is more likely to arise from human error or equipment failure rather than reservoir conditions.

136.    All documents relating to the displacement of drilling fluid from the MC252 Well with seawater on April 20, 2010.

137.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding displacing drilling fluid with seawater as part of a temporary abandonment process for an exploratory deepwater well.

138.    All documents relating to the spacer used for displacing the drilling fluids from the MC252 Well on April 20, 2010.

139.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols regarding spacer used for displacing drilling fluids as part of a temporary abandonment process for an exploratory deepwater well.

140.    All documents relating to negative pressure tests of the MC252 Well on April 20, 2010.

141.    All documents relating to the training each crew member on the *Deepwater Horizon*, including but not limited to each Offshore Installation Manager ("OIM"), driller and toolpusher, received regarding performing and interpreting negative pressure tests.

142.    All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for performing and interpreting negative pressure tests on the *Deepwater Horizon* and other rigs.

143.    All documents relating to bladder effects or annular compression when performing or interpreting negative pressure tests.

144.    All documents relating to any statements made by any member of the *Deepwater Horizon* crew that one or both of the negative pressure tests conducted on April 20, 2010 regarding the MC252 Well were successful.

145.    All documents relating to any statements made by Jason Anderson regarding the negative pressure tests conducted on April 20, 2010 regarding the MC252 Well.

23

146.     All documents relating to any statements made by Dewey Revette regarding the negative pressure tests conducted on April 20, 2010 regarding the MC252 Well.

147.     All documents relating to the monitoring or measuring the flow-in and flow-out of drilling fluids on the *Deepwater Horizon* on April 20, 2010.

148.     All documents relating to drilling fluids being transferred to any other vessel or being discharged overboard from the *Deepwater Horizon* on April 20, 2010.

149.     All documents relating to Transocean's policies, practices, procedures, standards, requirements, and/or protocols for monitoring, measuring, transferring, or discharging drilling fluids during temporary abandonment procedures.

150.     All documents relating to the *Deepwater Horizon's* engines and generators, including but not limited to the operation of those engines and generators on April 20, 2010.

151.     All documents relating to orders or commands given by the OIM and Captain or Master relating to the Incident.

152.     All documents relating to the sinking of the *Deepwater Horizon*, including but not limited to any documents relating to any investigation of why the *Deepwater Horizon* sank and all communications to Transocean's insurers regarding the sinking of the *Deepwater Horizon*.

153.     All documents relating to efforts to fight the fires on board the *Deepwater Horizon* on and after April 20, 2010, including but not limited to firefighting efforts both before and after the evacuation of the *Deepwater Horizon*.

154.     All documents relating to the training the *Deepwater Horizon's* crew received in fighting fires on the *Deepwater Horizon*.

155.     All documents relating to the Transocean Command Center initially set up in response to the *Deepwater Horizon* Incident, including but not limited to documents relating to

communications between the Transocean Command Center and the United States Coast Guard, the BP Command Center, or any other third party.

156.    All documents relating to efforts by any person or entity to activate the BOP after the *Deepwater Horizon* Incident.

157.    All documents relating to the flow rate of oil or other hydrocarbons from the MC252 Well after the *Deepwater Horizon* Incident.

158.    All documents relating to efforts to contain or clean up the Oil Spill.

159.    All documents consisting of or relating to the personnel files of all crew members of the *Deepwater Horizon*, including but not limited to all performance evaluations of the crew members.

160.    All documents consisting of or relating to the personnel files of all on-shore personnel who supervised or were responsible for the *Deepwater Horizon*, including but not limited to all performance evaluations.

161.    All documents relating to changes in the number of the crew on board the *Deepwater Horizon*.

162.    All documents relating to the duties, responsibilities, and authority of the OIM on Transocean drilling rigs.

163.    All documents relating to the duties, responsibilities, and authority of the Captain or Master on Transocean drilling rigs.

164.    All documents relating to the designation of the person-in-charge on Transocean drilling rigs.

165.    All documents relating to the circumstances under which the person-in-charge on a Transocean drilling rig may change.

166.    All documents relating to who the person-in-charge on a Transocean drilling rig is during an emergency.

167.    All documents relating to the training received by Captain Curt Kuchta and OIM Jimmy Harrell, including but not limited to training relating to addressing emergencies.

168.    All documents relating to Transocean's policies and procedures for training OIMs and Captains or Masters, including but not limited to training relating to addressing emergencies.

169.    All documents relating to training for the OIM, toolpushers, drillers, and other members of the *Deepwater Horizon* crew in preventing, detecting, and addressing well control events.

170.    All documents relating to the work-related licenses held by the *Deepwater Horizon* crew, including but not limited to the licenses of the rig's captains.

171.    All documents relating to any interviews of or statements made by any person on the *Deepwater Horizon* or *Damon B. Bankston* on April 20, 2010.

172.    All documents relating to any interviews of or statements made by any person who was interviewed, questioned, or contacted as part of any Transocean investigation regarding the *Deepwater Horizon* Incident or the Oil Spill.

173.    All documents relating to any investigation being conducted by Transocean regarding the *Deepwater Horizon* Incident or the Oil Spill, including but not limited to drafts of reports relating to any such investigation and all documents investigators reviewed or relied on in the course of such investigation.

174.    All documents relating to any reason why the *Deepwater Horizon* crew did not recognize the April 20, 2010 well control event earlier.

175.     All documents relating to any reason why the *Deepwater Horizon* crew did not take well control measures earlier in response to the April 20, 2010 well control event.

176.     All documents relating to any reason why the *Deepwater Horizon* crew did not use the BOP's blind shear ram in response to the April 20, 2010 well control event.

177.     All documents relating to any reason why the *Deepwater Horizon* crew used the MGS rather than the diverter system's overboard lines in response to the April 20, 2010 well control event.

178.     All documents relating to any reason why the *Deepwater Horizon* crew did not activate the EDS earlier in response to the April 20, 2010 well control event.

179.     All documents relating to the failure of the BOP to shut in the MC252 Well in response to the April 20, 2010 well control event.

180.     All documents relating to the failure of the BOP's deadman or automatic mode function to shut in the MC252 Well in response to the April 20, 2010 well control event.

181.     All documents relating to the ESD not preventing the ignition of gas on the *Deepwater Horizon* on April 20, 2010.

182.     All documents relating to the rig savers not preventing the ignition of gas on the *Deepwater Horizon* on April 20, 2010.

183.     All documents relating to the overspeed controls not preventing the ignition of gas on the *Deepwater Horizon* on April 20, 2010.

184.     All documents relating to all well control events that occurred when the *Deepwater Horizon* was drilling or latched up to a well.

185.     All documents relating to all well control events that occurred during the drilling of the MC252 Well.

186.     All documents relating to any events or accidents on the *Deepwater Horizon* that damaged the rig itself or injured any person, including but not limited to any internal assessment of such events or accidents.

187.     All documents relating to any events or accidents on the *Deepwater Horizon* that posed a risk to the rig itself or to the safety of any person, including but not limited to any internal assessment of such events or accidents.

188.     All documents relating to any government citations, warnings, penalties, notices of noncompliance, or similar documents relating to the *Deepwater Horizon*.

189.     All documents relating to the U.S. Minerals Management Service, Bureau of Ocean Energy Management, Regulation and Enforcement, or Coast Guard's investigations of events on the *Deepwater Horizon*.

190.     All documents relating to the safety performance on the *Deepwater Horizon*, including but not limited to documents relating to the *Deepwater Horizon's* total recordable incident rate ("TRIR"), total potential severity rate ("TPSR"), and high-potential dropped objects measure ("HPDO").

191.     All documents relating to any blowouts or any well control events where hydrocarbons from a well reached the riser on or after January 1, 2000, that have occurred when any Transocean drilling rig was drilling or latched up to a well.

192.     All documents relating to the well control event that occurred on December 23, 2009, when Transocean's *Sedco 711* rig was drilling a well in the North Sea, including but not limited to any internal reports regarding that event.

28

Dated:  April 29, 2011

Respectfully submitted,

/s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

and

Don K. Haycraft (Bar # 14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:     (202) 662-5985

*Attorneys for BP Exploration & Production
Inc. and BP America Production Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

/s/ J. Andrew Langan, P.C.