# EXHIBIT T



Apr 29 2011
11:06PM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION: J |
| Applies to: *All Cases* | * * | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

*   *   *   *   *   *   *   *   *   *   *   *   *

### THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION
### TO THE ANADARKO DEFENDANTS

*IN ACCORDANCE WITH THE ARBITRATION PROVISION IN THE MACONDO PROSPECT OFFSHORE DEEPWATER OPERATING AGREEMENT, BP RECENTLY FILED A MOTION TO STAY ANADARKO'S AND MOEX OFFSHORE 2007'S ATTEMPTS TO LITIGATE CLAIMS AGAINST BP IN COURT.  THE COURT HAS NOT YET RULED ON BP'S MOTION.  BUT OUT OF AN ABUNDANCE OF CAUTION AND TO COMPLY WITH THE COURT'S DISCOVERY SCHEDULING ORDER, BP IS SERVING THE FOLLOWING DISCOVERY IN CASE THE COURT DENIES BP'S MOTION TO STAY.  BY SERVING THESE DISCOVERY REQUESTS, BP DOES NOT—AND DOES NOT INTEND TO—WAIVE ANY RIGHTS UNDER THE MACONDO PROSPECT DEEPWATER OPERATING AGREEMENT, INCLUDING THE ARBITRATION RIGHTS UNDER THE AGREEMENT.  BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO THIS DISCOVERY UNLESS OR UNTIL THE COURT DENIES BP'S MOTION TO STAY LITIGATION.*

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following requests for production to Anadarko Petroleum Corporation and Anadarko E&P Company LP (the "Anadarko Defendants") to be responded to no later than May 31, 2011.  The BP Parties request that all documents and electronically stored information responsive to the following Request for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, by May 31, 2011.

# REQUESTS FOR PRODUCTION

## General Requests

1. All documents or communications relating to or referring to the design and use of spacers at the Macondo Well.

2. All documents or communications relating to or referring to temporary abandonment procedures at the Macondo Well.

3. All documents or communications relating to or referring to negative pressure test procedures at the Macondo Well.

4. All documents or communications relating to or referring to positive pressure test procedures at the Macondo Well.

5. All documents or communications relating to or referring to cementing procedures at the Macondo Well.

6. All documents or communications relating to or referring to the use of centralizers at the Macondo Well.

7. All documents or communications relating to or referring to the tubular or casing design used at the Macondo Well.

8. All documents or communications relating to or referring to the use of a long string production casing at the Macondo Well.

9. All documents or communications relating to or referring to the use or potential use of a liner with tie back casing string at the Macondo Well.

10. All documents or communications relating to or referring to the lock down sleeve and lock down sleeve procedure for use at the Macondo Well.

11. All documents or communications relating to or referring to gas flow potential at the Macondo Well.

12. All documents or communications relating to or referring to drilling fluids used at the Macondo Well.

13. All documents or communications relating to or referring to well control events at the Macondo Well.

14. All documents or communications relating to or referring to fluid loss at the Macondo Well.

15. All documents or communications relating to or referring to the decision to call terminal depth at the Macondo Well.

16. All documents or communications relating to or referring to converting the float collar at the Macondo Well.

17. All documents or communications relating to or referring to the use of foamed cement slurry at the Macondo Well.

18. All documents or communications relating to or referring to performing a bottoms up circulation at the Macondo Well.

19. All documents or communications relating to or referring to the drilling plan for the Macondo Well.

20. All documents or communications relating to or referring to any applications for or permitting of the Macondo Well.

21. All documents or communications relating to or referring to analysis of the Macondo Well and BP's operations on the Macondo Well.

22. All documents or communications relating to or referring to any non-BP entity's operations on the Macondo Well, including the Transocean defendants, any other defendants in this litigation, or any other service provider involved with the operations of the well.

23.     All other documents or communications that mention or refer to the MC252 or the Macondo Well, including but not limited to any well activity reports, drilling activity reports, weekly drilling reports, weekly summary of operations, executive summaries, exploration weekly reports, or exploration activity reports.

### Communications with BP Pre-Incident

24.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any data (including real time, and non-real time, data), daily reports, and other documents or communications generated during the course of drilling the Macondo Well.

25.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through INSITEAnywhere.

26.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through the Well Space system.

27.     All documents or communications relating to or referring to discussions regarding the Macondo Well.

28.     All documents or communications relating to or referring to the Macondo Prospect Well Participation Agreement, Deepwater Gulf of Mexico, between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Kerr-McGee Oil & Gas Corporation; the Macondo Prospect Offshore Deepwater Operating Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC ("JOA"); the Lease Exchange Agreement between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Anadarko E&P Company LP; and the Lease Exchange Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC.

29.     All drafts of the JOA.

30. All documents relating to or referring to your February 18, 2010 authorization for use of the *Deepwater Horizon* rig.

31. All documents or communications relating to or referring to the authorizations for expenditures for the Macondo Well.

32. All documents or communications by, to or from COPAS related to the terms of the JOA.

33. All documents or communications referring to, relating to, or analyzing COPAS guidelines or other model contract form interpretations.

### GoM Engineering Practices

34. All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

35. All documents relating to or referring to the design and use of spacers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

36. All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

37. All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

38. All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

39. All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

40. All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

41. All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

42. All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

43. All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

44. All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

45. All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

46. All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

47. All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

48. All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

49. All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

50. All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

51. All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

52. All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

53. All drilling plans for each deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or an affiliate of the Anadarko Defendants.

54. All documents or communications relating to any applications for or permitting of any deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or any affiliate of the Anadarko Defendants.

55. All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

56. All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

**Financial Information And Analysis of Potential Claims**

57. All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

58. All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising from their investment in the MC252 lease.

59. All documents relating to or referring to any statement issued by Anadarko Petroleum Corporation regarding the MC252 well, including all submissions to the Securities Exchange Commission ("SEC"), such as 10-Qs, 10-Ks or other documents submitted to the SEC.

60. All documents or communications, including internal, external or drafts, related to the *Deepwater Horizon* incident.

61. All documents or communications relating to or referring to JIB invoices, including all drafts and internal correspondence related to the JIB invoices.

62. All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

63. All documents or communications relating to or referring to certifications of oil spill responsibility submitted to the MMS or any Governmental agency related to the Macondo Well or any other well in the Gulf of Mexico.

64. All documents provided to or received from any insurer, including the insurers for the Anadarko Defendants.

65. All documents related to or referring to the *Deepwater Horizon* incident provided to or received from any potential purchaser of the Anadarko Defendants' stock or properties.

66. All documents related to or referring to the analysis or decision by the Anadarko Defendants to file claims against BP in the Multidistrict Litigation instead of pursuing such claims under the Dispute Resolution Procedures of the JOA.

67. All documents containing or referring to any calculation or analysis of potential exposure or reserve of the Anadarko Defendants arising from or related to the *Deepwater Horizon* incident, including those that may have been shared or forwarded to any investor, external auditor, or Board of Directors member.

## Documents Supporting Public Statements

68. All documents supporting any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

69. All documents questioning or otherwise commenting on any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

70. All documents reviewed or relied upon in preparing James T. Hackett's July 22, 2010 statement to Congress or related testimony.

71. All documents relating to or referring to any statement or testimony by any representative of the Anadarko Defendants provided to Congress.

72. All documents provided by the Anadarko Defendants to UBS Warburg or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

73. All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

74. All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

75. All documents related to or constituting communications with any member of the media or press regarding or referring to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

76. All documents or communications related to press interviews or statements, including any with the Financial Times, regarding the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same.

77. All marketing or public relations materials relating to or referring to the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same, including

internal and external drafts and correspondence relating to or referring to marketing or public relations materials.

### Investigation Requests

78. All documents relating to the *Deepwater Horizon* incident.

79. All documents relating to the flow rate of oil from MC252 after the *Deepwater Horizon* incident on April 20, 2010.

80. All documents relating to efforts to contain or clean up the oil spill after the *Deepwater Horizon* incident on April 20, 2010.

81. All documents relating to any interviews of or statements made by any person who was on the *Deepwater Horizon* or *Damon Bankston* on April 20, 2010.

82. All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

83. All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts of reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

84. All documents relating to or referring to BP's internal investigation report titled *Deepwater Horizon* Accident Investigation Report, dated September 8, 2010.

85. All documents relating to or referring to any investigation, presentation or analyses conducted by or on behalf of the Transocean Defendants.

86. All documents relating to or referring to any investigation, presentation or analysis conducted by or on behalf of the Halliburton Defendants.

### Requests re Correspondence and Settlement

87. All documents sent to or received from any person or entity related to settlement or compromise, or potential settlement or compromise, of any claims arising from or relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

88. All documents that the Anadarko Defendants have sent to or received from any person or entity relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to all documents that the Anadarko Defendants have sent to or received from any investigative panel, government agency, member of the press or media, or any other defendant in this litigation.

### Requests Related To The Anadarko Defendants' Claims and Evidence

89. All documents mentioned or referenced in any pleading, motion or brief filed by the Anadarko Defendants in this action.

90. All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

91. All documents that have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action.

92. All documents that you contend support the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

93. All documents that question or discuss the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

94. All documents that you contend support the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

95. All documents that question or otherwise discuss the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

96. All other communications relating to or referring to MC252 or the Macondo Well.

97. All other documents relating to or referring to MC252 or the Macondo Well.

## DEFINITIONS

1. "You," "your," and "yours" shall mean the Anadarko Defendants, including without limitation all of the Anadarko Defendants' present or former agents or representatives, or anyone acting or purporting to act for or on the Anadarko Defendants' behalf for any purpose whatsoever.

2. "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3. "COPAS" shall mean the Council of Petroleum Accountants Societies.

4. "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and ESI containing, summarizing, or memorializing any communication.

5. "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) including electronically stored information ("ESI"), and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing

or record of any type or description, including but not limited to, all writings; records; contracts; agreements; communications (intra- or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

6. "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

7. "Including" or "includes" means "including but not limited to" or "including without limitation."

8. "JOA" shall mean the Macondo Prospect Offshore Deepwater Operating Agreement.

9. "Relating to" or "related to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

10. "MC252 well" means the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "*Deepwater Horizon* Incident" and "Incident" means the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

12. "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

13. "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

14. "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

15. "Lost circulation," whether or not capitalized, means a reduced amount or total absence of drilling fluids returning to the drilling rig after being pumped down a well.

## INSTRUCTIONS

1. All documents are to be produced in accord with Pre-Trial Order No. 16.

2. Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of your affiliates, partners, employees, agents,

attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected with you or subject to your control.

3. If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

4. If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

5. Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

6. If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

7. If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

8. Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

9. Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

Dated:  April 29, 2011	Respectfully submitted,

By:  /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for the BP Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 29th day of April, 2011.

/s/ Martin R. Boles