IN RE: DEEPWATER HORIZON LITIGATION
MDL NO. 2179

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards LLC
556 Jefferson St. Suite 500
Lafayette, LA 70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Direct: (337) 593-4190
Fax: (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
E-Mail: sherman@HHKC.com
Telephone: (504) 581-4892
Direct: (504) 680-0554
Fax: (504) 561-6024

June 30, 2011

*VIA* E-MAIL

Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130
E-Mail: Sally_Shushan@laed.uscourts.gov

Re:  Redactions to Board Minutes (and/or Other Documents)

Dear Judge Shushan,

The unilateral redaction of admittedly responsive documents based on "non-responsiveness" interjects unnecessary dispute, diversion and delay. Neither the plaintiffs nor anyone else have the time nor inclination to focus on information that is truly irrelevant. Even assuming *arguendo* that such redactions do not create evidentiary issues, (*e.g.,* lack of completeness, authenticity, or lack of foundation), the redaction of information inevitably raises questions, confusion or concern about what is missing, and thereby diverts attention from the relevant information at hand. In many cases, it will prompt disputes about whether the redactions were proper or improper, which takes up not only the parties' time, but also judicial resources. Finally, and particularly in this case, given the scope and deadlines under which everyone is working, PTOs 13 and 16, and the claw-back provisions contained within PTO 14, were intentionally crafted to facilitate the free and expeditious flow of documents which may be necessary for the ongoing depositions, expert reports, etc., without prejudice to the producing party, despite the absence of a meticulous and individualized review process; it makes no sense for such discovery to have been delayed - or to be further delayed - while defendants or their attorneys conduct a line-by-line review for what he or she considers to be "relevant" or "responsive" to the plaintiffs' requests.

Redactions based on "non-responsiveness" allow the producing party to cloak in secrecy portions of a responsive document without any support or documentation. In essence, with respect to allegedly "non-responsive" portions of a responsive document, the Defendants are asking for all of the protections attributable to the attorney-client privilege without any of the corresponding requirements associated therewith, (*e.g.,* providing a log, describing the information withheld, providing a basis for the redaction, etc.). In light of PTO #13, which already protects from disclosure any documents of the Defendants' choosing, this redundant protection – which has the effect of preventing/delaying discovery and consuming time and resources – is unnecessary.

Contrary to BP's claim, the PSC is not alleging that BP's conduct was in bad faith. What is at issue is having in place a procedure which allows for fairness, accuracy and convenience to the parties and to the Court. The redaction procedure being implemented by BP (and possibly other defendants) is one which delay into the process, is not fair (at least not for the PSC), prone to error, and not convenient. The ultimate question here is: With PTO #13 in place, why should the Defendants also be able to unilaterally redact portions of responsive documents (which are already designated "confidential" or "highly confidential") without the PSC having the opportunity to review same?

**I.    FAIRNESS AND EFFICIENCY**

Defendants' proffered basis for allowing the redaction of responsive documents is that PTO #13 does not provide "sufficient protection." This is fundamentally flawed not just because this Court's orders do in fact have meaning, but also because of the fact that Defendants negotiated and agreed to the language and requirements of PTO #13. Indeed, PTO #13 allows not just for "CONFIDENTIAL" designations, but also for "HIGHLY CONFIDENTIAL" designations. Fairness and protection for the producing party is already being afforded pursuant to PTO #13.

The unilateral redaction of allegedly non-responsive information is not fair to and does not protect the receiving party. By definition, the redactions at issue are being made upon a document which itself is responsive. The receiving party should be afforded the opportunity to determine which portions of the responsive document may provide helpful information. One attorney can deem irrelevant what another attorney deems critical. "One man's garbage is another man's treasure." Even in complete and utter good faith, BP's counsel may not perceive the potential relevance of a given piece of information. Further, the redaction process is one which is typically conducted by less experienced document reviewers as opposed to seasoned attorneys. As such, unnecessary and/or overly aggressive redaction mistakes can and do happen. Moreover, because these "non-responsive" redactions are neither logged, described or supported in any way, there is no convenient or reasonable method for the receiving party to analyze or follow-up on same.

The end result of BP's redaction process is that discovery is suppressed and delayed. With the Defendants "making the call" on the "non-responsiveness" of the redacted information, the PSC is stripped of the rights and/or abilities to: a) view responsive documents in their full context, b) learn about potentially important information, and c) decide which portions of a responsive document are useful. These unnecessary limits are, in and of themselves, not fair. However, the prejudice to the PSC extends beyond document review. The majority of these documents are

produced just days before the respective depositions. The PSC already has a very short time frame to review all of the documents and properly prepare for a deposition. This short time frame simply does not allow for the PSC to also identify each questionable redaction, raise the matter with the Defendants, schedule a meet and confer, have the meet and confer and then come to the Court thereafter if/when the issue cannot be resolved. As such, for all practical purposes, redacted portions of documents are eliminated from deposition preparation and from use at depositions.

Moreover, this process is extremely inefficient. In addition to the delays caused on the front-end, the PSC (or others) will undoubtedly feel compelled to challenge numerous redactions, in the course of their due diligence on behalf of Plaintiffs, which – even where the information redacted turns out to be "non-responsive" and/or "irrelevant" – will have wasted a significant amount of the parties', not to mention the Court's, time.

The Federal Rules (and the PTOs entered in this case) are designed to prevent these types of disputes, diversions and delays, which are the inevitable result of a "trust me" discovery process.

## II.   SPECIFIC EXAMPLES

While this issue has been framed as an issue of "non-responsive" redactions, it is worth noting that the PSC has faced various types of redactions, none of which are listed on any type of log. As outlined in more detail below, BP's redactions have been labeled as follows: "REDACTED," "NON RESPONSIVE" and UNTITLED. The PSC cannot discern the reasoning behind, or difference between, redactions which are not titled or which are simply titled "REDACTED." For purposes of this reply, the PSC assumes that the reason behind all of BP's redactions is "non-responsive."

Similarly, while this dispute was prompted by BP's recent redaction of Board Minutes, the PSC does not solely object to the redaction of Board Minutes. Since BP alleges that the PSC's complaints are "entirely abstract" and/or "phantom", the PSC hereby attaches additional specific examples of BP's redactions. (*See* Exhibits A, B, C & D). If the Court would like further examples, the PSC has many more; however, in order to be brief, the following are examples of hundreds of BP's redacted documents:

> **Exhibit A: "Background Talking Points: July 19th"**
> These are "current talking points on media issues" INVOLVING THE APRIL 20th SPILL. By definition they are responsive. Moreover, they should not involve any deep dark BP secrets (other than possibly some in connection with the spill - which should be discoverable anyway). Finally, the redactions are varied and random. There are sixteen (16) <u>unexplained</u> redactions in this document. Moreover, within a two page span, the redactions change from "REDACTED" to "PRIVILEGED, REDACTED" to no description given. (*See* Bates Nos. BP-HZN-2179MDL01881921 - 2). Thus, the PSC and the Court are left to guess as to the basis for nearly all of the redactions on this document.

### Exhibit B: June 22, 2010 E-Mail Chain Re: Tar Balls

This is an e-mail chain regarding (at least in part) releasing tar ball data INVOLVING THE APRIL 20th SPILL. This certainly is responsive to the PSC's discovery, and should not involve any proprietary BP information. The title of the redaction is "REDACTED." Thus, the PSC and the Court are left to guess as to the basis of this redaction.

### Exhibit C: July 20, 2010 Gulf Oil Spill Media and Social Media Summary

This document provides a summary of stories INVOLVING THE APRIL 20th SPILL occurring on shows ranging from ABC's "Good Morning America" to MSNBC's "Morning Joe." The PSC finds it difficult to believe that BP is entitled to be shielded from an internal summary of what Katie Couric reported about the spill. None of the redactions are titled or otherwise described. Thus, the PSC and the Court are left to guess as to the basis of this redaction.

### Exhibit D: Untitled Document

This document appears to be a listing of BP talking points for public relations purposes. Whatever the actual title, the document clearly INVOLVES THE APRIL 20th SPILL. Unlike the other examples, the redactions on this document are titled "NON RESPONSIVE." However, it is reasonable to believe that the information in this document would be related to this case. For example, there are "NON RESPONSIVE" redactions under sections titled: "Doug Suttles letter to Incident Commanders," "24 June press release" and "Ad campaign to support Gulf states tourism."

While much of the information from the above appears to be responsive, the parties and the Court should not have to go through this process in order to determine same. If BP actually limited its redactions only to "non-responsive" information which was also truly highly sensitive, then we would truly be dealing with a very limited number of documents, and BP could show them (behind closed doors if necessary) to the PSC to see if there is anything to argue about. Otherwise, the parties and the Court will have to engage in continued motion practice over each redaction where the PSC has to "guesstimate" as to its importance.

### III. POTENTIAL ALTERNATIVE PROCEDURE

The PSC respectfully suggests that, particularly with PTO #13 in place, the only allowable redactions should be those for attorney-client and work product privileges. This would allow for fairness and transparency, while saving time and resources. However, if the Court is still concerned that, even with PTO #13 in place, the production of highly sensitive and allegedly "non-responsive" information may still be harmful to a particular party, then the PSC proposes a procedure which should eliminate any such concern. Specifically, the party claiming that "partially responsive" documents contain highly sensitive and non-responsive information can make un-redacted versions of those documents available to the PSC.

The PSC's alternative production procedure can be done either on a conditional sequestered basis (much like the attorney-client privilege claw-back process) or in the same way as the BP/Moex settlement agreement was handled (by making the documents available for a "private viewing"). Then the PSC can decide for itself if the proposed redactions are non-responsive or if further discussion should be had. Thereafter, the parties can meet and confer in order to agree about the scope of the redactions, or at the least, eliminate documents and narrow which ones are in dispute. A procedure such as this would surely protect the producing party as well as limit the number of documents and/or disputes which would have to be brought before the Court.

As always, we appreciate the Court's time and consideration in this matter.


Respectfully submitted,

James Parkerson Roy
Stephen J. Herman
*Plaintiffs' Liaison Counsel*



Enclosures
cc: Defense Liaison Counsel
    Mike Underhill, Esq.
    Hon. Luther Strange
    Anthony Irpino, Esq.