# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20,
2010

APPLIES TO:  11-274 c/w 11-275

MDL NO. 2179

SECTION "J" (1)

JUDGE BARBIER

MAGISTRATE SHUSHAN

## BP PARTIES' MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Allan B. Moore
Seth A. Tucker
Christopher J. Wenk
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Tel:  (202) 662-6000
Fax:  (202) 778-5575
E-mail:  abmoore@cov.com
E-mail:  stucker@cov.com
E-mail:  cwenk@cov.com

David B. Goodwin
M. Alexia dePottere-Smith
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA  94111
Tel:  (415) 591-6000
Fax:  (415) 591-6091
E-mail:  dgoodwin@cov.com
E-mail:  adepottere@cov.com

*Counsel for BP Exploration & Production Inc., BP America Production Company,
BP Corporation North America Inc., BP Company North America Inc., BP Products North
America Inc., BP America Inc., BP Holdings North America Limited, and BP plc*

Dated:  July 8, 2011

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

FACTUAL AND CONTRACTUAL BACKGROUND ................................................................3

A.      The Drilling Contract...................................................................................................4

B.      The Insurance Policies ................................................................................................7

C.      The Insurer Complaints.............................................................................................10

ARGUMENT .....................................................................................................................11

I.       THE ISSUE PRESENTED IS RIPE FOR JUDGMENT ON THE PLEADINGS............11

II.      TEXAS LAW GOVERNS THE INSURANCE POLICIES AT ISSUE AND
REQUIRES THAT ANY REASONABLE DOUBT BE CONSTRUED IN
FAVOR OF THE INSURED AND ITS COVERAGE CLAIM ......................................13

III.     THE INSURERS HAVE ADMITTED, AND IT CANNOT REASONABLY BE
DISPUTED, THAT THE DRILLING CONTRACT IS AN "INSURED
CONTRACT" WITHIN THE MEANING OF THE POLICIES ......................................15

IV.     UNDER GOVERNING TEXAS LAW, THE SCOPE OF THE INSURERS'
COVERAGE OBLIGATIONS TO BP IS DETERMINED BY REFERENCE TO
THE POLICIES THEY ISSUED, NOT THE DRILLING CONTRACT .........................17

V.      WHETHER BP IS LIABLE TO TRANSOCEAN UNDER THE INDEMNITIES
IN THE DRILLING CONTRACT IS IRRELEVANT TO THE SCOPE OF BP'S
"ADDITIONAL INSURED" COVERAGE UNDER THE INSURANCE
POLICIES ....................................................................................................................26

CONCLUSION.....................................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>**CASES**</small>

*Alcala v. Texas Webb County*,
620 F. Supp.2d 795 (S.D. Tex. 2009) .......................................................................12

*American States Ins. Co. v. Bailey*,
133 F. 3d 363 (5th Cir. 1998) .................................................................................13

*Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*,
566 F.3d 483 (5th Cir. 2009) ...........................................................................passim

*Bartley v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
824 F.Supp. 624 (N.D.Tex. 1992) ...........................................................................12

*Certain Underwriters at Lloyd's, London v. Oryx Energy Co.*,
142 F.3d 255 (5th Cir. 1998) ..................................................................................28

*Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*,
256 S.W.3d 660 (Tex. 2008)..............................................................................passim

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
246 S.W.3d 653 (Tex. 2008)....................................................................................28

*GATX Leasing Corp. v. National Union Fire Ins. Co.*,
64 F.3d 1112 (7th Cir. 1995) ...................................................................................12

*Grain Dealers Mut. Ins. Co. v. McKee*,
943 S.W.2d 455 (Tex. 1997).....................................................................................14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ....................................................................................11

*In re Great Lakes Dredge & Dock Co. LLC*,
624 F.3d 201 (5th Cir. 2010) ....................................................................................12

*Lubrizol Corp. v. Gray Ins. Co.*,
209 WL 348820 (5th Cir. 2009) ..........................................................................21, 22

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)......................................................................................................14

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*,
811 S.W.2d 552 (Tex. 1991)......................................................................................14

*New York Life Ins. Co. v. Travelers Ins. Co.,*
    92 F.3d 336 (5th Cir. 1996) ..................................................................................13

*Tanner v. Nationwide Mut. Fire Ins. Co.*,
    289 S.W.3d 828 (Tex. 2009) ................................................................................28

*Travelers Lloyds Ins. Co. v. Pacific Empls. Ins. Co*.,
    602 F.3d 677 (5th Cir. 2010) ...............................................................................28

*Tuepker v. State Farm Fire & Cas. Co.*
    507 F.3d 346 (5th Cir. 2007) ...............................................................................12

*Westchester Fire Ins. Co. v. Admiral Ins. Co.*,
    152 S.W.3d 172 (Tex. Ct. App. 2004) .................................................................28

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
    348 U.S. 310 (1955) .............................................................................................13

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(c) ............................................................1, 3, 4, 5, 11, 12, 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(c) and the Court's applicable case management orders (docket nos. 2593, 2849), the BP Parties[1] submit this memorandum in support of their motion for judgment on the pleadings in Case Nos. 11-274 (the "*Ranger* suit") and 11-275 (the "*Lloyd's* suit") (collectively, the "Insurance Actions").

The Insurance Actions are two declaratory judgment actions filed, respectively, by a primary liability carrier, Ranger Insurance Ltd. ("Ranger"), and various excess liability carriers led by London market syndicates ("Excess Insurers" and together with Ranger, "Insurers").  The Insurers issued liability insurance policies to Transocean Holdings LLC and its affiliates ("Transocean"), which provide insurance coverage to BP as an "additional insured."

The sole issue presented by both cases, as pleaded by the Insurers, is the scope of BP's "additional insured" coverage under the identified insurance policies.  Specifically, the Insurers "seek a judicial declaration of their rights and duties as to BP, if any, *under the policies* in connection with BP's *pollution-related liabilities* for the oil emanating from BP's well" as a result of the fire, explosion, and sinking of Transocean's *Deepwater Horizon* on April 20, 2010 (the "*Deepwater Horizon* Incident").[2]

---

[1]  The "BP Parties" (or "BP") are all BP-affiliated defendants and counterclaimants in two pending insurance coverage actions that are part of this MDL proceeding (Nos. 11-274 and 11-275):  namely, BP plc, BP Exploration & Production, Inc., BP America Production Company, BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP America, Inc., and BP Holdings North America Limited.

[2]  *See Ranger* Am. Compl., ¶ 21 (docket no. 2 in Action No. 10-cv-2009 (S.D. Tex.)) (emphasis added), *filed here as* Exhibit A to Declaration of Christopher J. Wenk in Support of BP Parties' Motion for Judgment on the Pleadings ("Wenk Decl."); *Lloyd's* Compl., ¶ 21 (docket no. 1 in Action No. 10-cv-1823 (S.D. Tex.)) (same), *filed here as* Wenk Decl., Ex. B.  Although different plaintiffs filed them, the *Ranger* and *Lloyd's* complaints are identically worded in all material respects and are referred to collectively as the "Insurer Complaints."

The BP Parties submit that they are entitled to the following two judicial declarations, as a matter of law, on the face of the Insurer Complaints:

1.      that BP is an "additional insured" under the insurance policies at issue; and

2.      that the _scope_ of BP's coverage rights as an "additional insured" is governed by the terms and conditions of _the insurance policies themselves_; it is not limited to the scope of Transocean's contractual indemnity of BP in the _underlying drilling contract_ between Transocean and BP pursuant to which the _Deepwater Horizon_ was operating in April 2010 (the "Drilling Contract") — a contract to which none of the Insurers is a party.

BP's first requested declaration is uncontested.  The Insurers do not dispute that BP is an "additional insured" under the insurance policies; indeed, they plead in their complaints that the Drilling Contract qualifies as an "Insured Contract," as that term is defined in the policies, and accordingly, that BP is an "additional insured" under the policies.  _See_ Insurer Complaints, ¶ 11 (acknowledging that "the drilling contract requires additional insured protection in favor of certain BP entities"); _see generally id._, ¶¶ 5, 12-16, 17, 20-23.

The second declaration that BP requests, regarding the scope of its "additional insured" coverage rights, is the sole issue in dispute under the Insurer Complaints.  The Insurers assert that BP's "additional insured" protection "is limited in _scope_ to the liabilities assumed by Transocean under the terms of the drilling contract," and that "reference to the drilling contract is necessary to determine the scope of [BP's] additional insured protection."  _Id._, ¶ 11 (emphasis added).  However, the Insurers' position is contrary to established Texas law, which governs the insurance policies at issue.  In _Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc._, 256 S.W.3d 660 (Tex. 2008), the Texas Supreme Court held that an insurer's obligations to an "additional insured" (like BP) are determined solely by reference to the terms and conditions of the insurance policies themselves — not by indemnities in the underlying contract to which the

insurance relates.  Thus, *ATOFINA* concluded, in determining the scope of an additional

insured's coverage rights, a court must look not "to the indemnity agreement in the service

contract" that underlies an insurance policy (a contract to which the insurer is not a party) but,

rather, to "the terms of the insurance policy itself."  *Id.* at 664.  The Fifth Circuit recognized and

applied *ATOFINA* as controlling Texas law in *Aubris Resources LP v. St. Paul Fire and Marine*

*Ins. Co.*, 566 F.3d 483 (5th Cir. 2009).

> *ATOFINA* and *Aubris* fully control and dispose of the sole issue presented in the

Insurer Complaints, and they entitle BP to a declaratory judgment on this issue, as a matter of

law, under Rule 12(c) of the Federal Rules of Civil Procedure.[3]

## FACTUAL AND CONTRACTUAL BACKGROUND

> On April 22, 2010, the *Deepwater Horizon* sank into the Gulf of Mexico, after

burning for two days following an onboard explosion, resulting in the deaths of 11 people,

physical injury to others and property damage.  The *Deepwater Horizon* was a semi-submersible

mobile offshore drilling unit owned by Transocean Ltd.  At the time of the accident, it was

engaged in exploratory drilling activities at the Macondo Well (Mississippi Canyon Block 252),

pursuant to the Drilling Contract between Transocean and BP.[4]

---

[3]  If the Court grants this motion, it will dispose of the Insurer Complaints in Action Nos. 11-274 and 11-275.  These two consolidated cases then would proceed in respect to BP's counterclaims for coverage under the Ranger and Excess Policies at issue, certain third-party coverage claims that BP has asserted under a "marine package" policy (which is not at issue in the Insurer Complaints), and certain pending claims by intervenors.

[4]  The Drilling Contract (Wenk Decl., Ex. C) was executed on December 9, 1998, between Vastar Resources Inc. and R&B Falcon Drilling Co.  As recognized in amendments to the Drilling Contract, BP America Production Co. and Transocean Holdings Inc. are successors to Vastar and R&B Falcon, respectively.  *See* Drilling Contract, at TRN-MDL-00027652-53.

A.      **The Drilling Contract**

    The Drilling Contract contains cross-indemnities between Transocean ("Contractor") and BP ("Company"), under which each of the two parties committed to hold the other harmless from certain specified liabilities.  For example, each party agreed to defend and indemnify the other from and against all "claims, demands and causes of action" asserted by itself or its own subsidiaries, officers, agents, employees, and their relatives for "personal injury," including death, arising out of or related to work performed under the Drilling Contract. Drilling Contract, arts. 21.1 & 21.2, at TRN-MDL-00027337 (full capitalization and boldfacing removed).  Insofar as pollution-related liabilities are concerned, the Drilling Contract provides, in part, in regard to Transocean:

> CONTRACTOR shall assume full responsibility for and shall protect, release, defend, indemnify, and hold COMPANY and its joint owners harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability for pollution or contamination, including control and removal thereof, *originating on or above the surface of the land or water*, from spills, leaks, or discharges of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, air emissions, bilge sludge, garbage, or any other liquid or solid whatsoever in possession and control of CONTRACTOR and without regard to negligence of any party or parties and specifically without regard to whether the spill, leak, or discharge is caused in whole or in part by the negligence or other fault of COMPANY … .

*Id.*, art. 24.1, at TRN-MDL-00027340 (emphasis added; full capitalization and boldfacing removed).

> As for  BP, the Drilling Contract provides in regard to pollution-related liabilities:

> COMPANY shall assume full responsibility for and shall protect, release, defend, indemnify, and hold CONTRACTOR harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability for pollution or contamination, including control and removal thereof, arising out of or connected with operations under this CONTRACT hereunder and *not assumed by CONTRACTOR in Article 24.1 above*, without regard for negligence of any party or

- 4 -

> parties and specifically without regard for whether the pollution or
> contamination is caused in whole or in part by the negligence or fault
> of CONTRACTOR.

*Id.*, art. 24.2, at TRN-MDL-00027340-41 (emphasis added; full capitalization and

boldfacing removed); *see also id.*, arts. 22-23, at TRN-MDL-00027337-40 (further cross-

indemnities).

Wholly separate and apart from these various cross-indemnity provisions, the

Drilling Contract imposes an insurance requirement upon Transocean.  Article 20 of the Drilling

Contract, entitled "INSURANCE," contains a single sentence, which precedes the indemnity

provisions in the contract and reads in full as follows:

> Without limiting the indemnity obligation or liabilities of
> CONTRACTOR or its insurer, at all times during the term of this
> CONTRACT, CONTRACTOR shall maintain insurance covering the
> operations to be performed under this CONTRACT as set forth in
> Exhibit C.

*Id.*, art. 20.1, at TRN-MDL-00027337.  Exhibit C to the Drilling Contract, captioned "Insurance

Requirements," then sets forth the types and minimum amounts of coverage that Transocean is

required to purchase and maintain.  *See id.*, Drilling Contract Ex. C, ¶ 1, at TRN-MDL-

00027434.  Exhibit C provides that "[a]ll the insurance shall be carried by CONTRACTOR at

CONTRACTOR'S expense with an insurance company or companies authorized to do business

in the jurisdictions where the work is to be performed and satisfactory to [BP]," and "[a]ll

policies shall be endorsed to provide that there will be no recourse against [BP] for payment of

premium."  *Id.*, Drilling Contract Ex. C, ¶¶ 2, 6, at TRN-MDL-00027435, 00027436.  Exhibit C

further provides that "[BP], its subsidiaries and affiliated companies, co-owners, and joint

venturers, if any, and their employees, officers, and agents shall be named as *additional insureds*

in each of CONTRACTOR'S policies, except Workers' Compensation for liabilities assumed by

CONTRACTOR under the terms of this Contract."  *Id.*, Drilling Contract Ex. C, ¶ 3, at TRN-MDL-00027435 (emphasis added).

No Insurer is a party to the Drilling Contract, and Article 25, entitled "INDEMNITY OBLIGATION," makes clear that the benefits and limitations of the contract's indemnities do not extend to any of the Insurers as third-party beneficiaries.  Specifically, Article 25.3, entitled "Third Party Beneficiaries," provides as follows:

> Except as otherwise specifically agreed nothing in this Contract shall be construed or applied so as to permit any person or entity not a direct signatory hereto (except for a successor or permitted assignee of such direct signatory party) to enforce or seek damages against either signatory party hereto for any breach of this Contract.  The definition of CONTRACTOR and COMPANY herein shall not be construed to enable or entitle any person or entity other than the signatory parties hereto or a successor or permitted assignee of such a signatory party to directly sue or seek relief against the other signatory party hereto except to the extent that any Extended Beneficiary of Indemnification (as defined in Article 25.2) shall be expressly permitted to enforce such rights of indemnification against the indemnitor.  *Except for any EXTENDED BENEFICIARY OF INDEMNIFICATION, no persons or entities are intended to be or become third party beneficiaries of this Contract.*

*Id.*, art. 25.3, at TRN-MDL-00027342 (emphasis added).

Article 25.2 defines "Extended Beneficiary of Indemnification."  It states that, "[t]o the extent a party is entitled to indemnification in Articles 21, 22, 23, and 24, such party's parent, subsidiaries, affiliates, co-owners and joint venturers (if any), and their respective officers, directors, agents and employees, the drilling unit and its legal and beneficial owners, in rem or in personam shall also be entitled *to such indemnification and defense thereunder*," and "[a]ny such person *so entitled to indemnification and defense* under this Article 25.2 [is] hereinafter referred to as an 'Extended Beneficiary of Indemnifications.'"  *Id.*, at 25.2, at TRN-MDL-00027341-42 (emphasis added; full capitalization and boldfacing removed).  The term thus

excludes Insurers, consistent with the self-evident fact (as discussed further below) that they are the insurers of risks related to the Drilling Contract, not its intended beneficiaries or indemnitees.

**B.**    **The Insurance Policies**

In furtherance of its insurance obligations under Article 20 of the Drilling Contract, and presumably also to cover other risks and obligations, Transocean has maintained a general liability insurance program.  At the time of the *Deepwater Horizon* Incident, the program included the insurance policies at issue in the Insurance Actions.  These policies include, insofar as they are pleaded in the Insurer Complaints and the subject of this motion:  (a) a primary liability policy issued by Ranger ("Ranger Policy"), which provides $50 million of general liability coverage, and (b) eight excess liability policies ("Excess Policies"), which combine to form four excess layers that sit directly above the Ranger Policy and provide an additional $700 million of general liability coverage on materially identical terms to the Ranger Policy.[5] For purposes of the issues presented here, there is no material difference between any of the policies, and if the Court grants this motion, its holding will apply equally to all of the insurance policies at issue.[6]

---

[5]  The Ranger Policy, which is the subject of Ranger's complaint in the *Ranger* suit (No. 11-274), is set forth as Exhibit D to the Wenk Declaration, as filed herewith.  The Excess Policies, which are the subject of the Excess Insurers' complaint in the *Lloyd's* suit (No. 11-275), are listed in Exhibit A to that complaint and set forth as Exhibits E-L of the Wenk Declaration.  *See* Wenk Decl., Exs. A-B; *Ranger* Am. Compl., ¶ 6; *Lloyd's* Compl., ¶ 6 & Ex. A.

[6]  The general liability coverage provisions of the Ranger and Excess Policies (as set forth in Sections II.A and II.B of each policy) are all materially identical because, as headings in the Ranger Policy indicate, they are all written on 2002 London market umbrella policy forms for marine risks.  All of the policies also contain (as set forth in Section I of each policy) so-called protection and indemnity ("P&I") coverage — again, on materially identical terms across the entire program.  This motion only concerns the general liability coverages (Sections II.A and II.B) of each policy; BP is not moving at this time in respect of the P&I coverages as they are not the subject of the Insurer Complaints.

The general liability coverage grant of the Ranger Policy (which is materially identical to the general liability coverage grant in each of the Excess Policies) provides, in relevant part:

> … Underwriters agree, subject to the Insuring Agreements, Conditions, Exclusions, Definitions and Declarations contained in this Policy, to pay on behalf of the *"Insured"* in respect of their operations anywhere in the World, for "Ultimate Net Loss" by reason of liability:
>
> (a)   imposed upon the "*Insured*" by law or
>
> (b)   assumed by the "*Insured*" under an "*Insured Contract*",
>
> for damages in respect of:
>
> (i)   "Bodily Injury"
>
> (ii)   "Personal Injury"
>
> (iii)   "Property Damage"
>
> (iv)   "Advertising Injury",
>
> caused by or arising out of an "Occurrence" during the Policy Period as set out in item 5 of the Declarations [*i.e.*, May 1, 2009 through May 1, 2010].

Ranger Policy (Wenk Decl., Ex. D), Section II.A, ¶ I.1, *as amended by* Endmt. 4, ¶ 1, at TRN-MDL-00237624 (emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E (at TRN-MDL-00235769), Ex. F (at TRN-MDL-00235664), Ex. G (at TRN-MDL-00235942), Ex. H (at TRN-MDL-00236098), Ex. I (at TRN-MDL-00236171-72); Ex. J (at TRN-MDL-00237856-60)). Each term that appears in quotation marks above is defined in the insurance policies.  For purposes of the judicial declarations sought by the Insurer Complaints, and the countervailing declarations sought by BP in this motion, the key terms are "Insured" and "Insured Contract."

The policies define "Insured" to include, in part, each and all of the following:

(a)   the Named Insured set out in Item 1 of the Declarations
      [*i.e.*, Transocean Ltd., its subsidiaries and affiliates, and others
      identified in the policy's eight-page Named Insured Clause];

(b)   the Named Insured's subsidiary, owned or controlled companies
      which have been declared to and accepted by Underwriters at the
      inception of this Policy;

(c)   *any person or entity to whom the "Insured" is obliged by any*
      *oral or written "Insured Contract" (including contracts which*
      *are in agreement but have not been formally concluded in*
      *writing) entered into before any relevant "Occurrence", to*
      *provide insurance such as is afforded by this Policy*; [and]

(d)   any person or organization, other than the Named Insured,
      included as an additional insured in the policies listed in the
      Schedule of Underlying [Insurance] … .[7]

The policies define "Insured Contract" as follows:

The words "Insured Contract", whenever used in this Policy, shall
mean *any written or oral contract or agreement entered into by the*
*"Insured"* (including contracts which are in agreement but have not
been formally concluded in writing) *and pertaining to business under*
*which the "Insured" assumes the tort liability of another party to pay*
*for "Bodily Injury", "Property Damage", "Personal Injury" or*
*"Advertising Injury" to a "Third Party" or organization*.  Tort
Liability means a liability that would be imposed by law in the absence
of any contract or agreement.[8]

---

[7]   Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.13 at TRN-MDL-00237575-76,
TRN-MDL-00237597-98, *as amended by* Endmt. 4, ¶¶ 27-28, at TRN-MDL-00237629-30
(emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E, (at TRN-MDL-00235775), Ex. F
(at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104),
Ex. I (at TRN-MDL-00236176, 00236182).  Unlike all of the other policies, Policy
No. ARS4925 (Ex. J) is an "Excess Marine Package" policy, but it also provides excess general
liability coverage through Section 6 of the policy.  *See* Wenk Decl., Ex. J, Endmt. No. 1 "Excess
Liabilities"(at TRN-MDL-00237856-60).  This policy does not contain the term "Insured
Contract," but it defines "Insured" in materially identical terms to include "any person,
organization, trustee or estate to which the Named Insured is obligated by virtue of contract or
agreement to provide insurance such as is afforded by this Policy," and it also follows the terms
and conditions of the London Umbrella Policy 2002.  *Id.* at TRN-MDL-00237773, 00237857.

[8]   Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.14 at TRN-MDL-00237576,
TRN-MDL-00237598, *as amended by* Endmt. 4, ¶ 32, at TRN-MDL-00237630 (emphasis
(continued…)

## C.    __The Insurer Complaints__

In May and June 2010, Ranger and the Excess Insurers filed two materially identical complaints, which have since been transferred to and consolidated before this Court. *See* Agreed Case Management Order Governing Insurance Actions (docket no. 2849), ¶ 1.

The *Lloyd's* Suit.  The Excess Insurers filed the *Lloyd's* action on May 21, 2010, in the Southern District of Texas in Houston.  *See Lloyd's* Compl. (Wenk Decl., Ex. B).  Their complaint seeks a declaration that the Excess Insurers have "no additional-insured obligation to BP with respect to pollution claims against BP for oil emanating from BP's well" as a result of the *Deepwater Horizon* Incident.  *Id.*, ¶ 5; *see also id.*, ¶ 22.  They further allege that "reference to the drilling contract is necessary to determine the scope of [BP's] additional insured protection" under the policies they issued.  *Id.*, ¶ 11.  Specifically, the Excess Insurers allege that BP's pollution-related insurance coverage rights are limited to the scope of the indemnities that Transocean extended to BP in the Drilling Contract.  *See id.*, ¶¶ 11, 22.  Their complaint also avers (and thus accepts) that Texas law governs the interpretation of the insurance policies, pursuant to the policies' choice-of-law provisions.  *Id.*, ¶ 18.

The *Ranger* Suit.  On June 7, 2010, shortly after the *Lloyd's* suit was filed, Ranger, acting as sole plaintiff, filed its own coverage action against BP, also in the Southern District of Texas in Houston.  On the following day, Ranger filed an Amended Complaint (Wenk Decl., Ex. A) setting forth a purely technical revision.  The allegations of Ranger's Amended Complaint are identical to those of the complaint in the *Lloyd's* suit:  in virtually identical

---

added); *see also* Excess Policies (Wenk Decl., Ex. E, (at TRN-MDL-00235775), Ex. F (at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at TRN-MDL-00236177, 00236182).

language, Ranger seeks a declaration that it has no obligation to provide coverage to BP, as an additional insured, for the pollution-related liabilities in question and asserts that the scope of its coverage obligations to BP are limited to, and must be construed by reference to, the scope of Transocean's indemnities of BP in the Drilling Contract.  *Id.*, ¶¶ 5, 22.  Like the Excess Insurers, Ranger also pleads, and thus accepts, that its policy is governed by Texas law.  *Id.*, ¶ 18.

## ARGUMENT

## I.  THE ISSUE PRESENTED IS RIPE FOR JUDGMENT ON THE PLEADINGS.

The Court's applicable case management order and Rule 12(c) of the Federal Rules of Civil Procedure expressly provide for the filing of this motion at this time.  *See* Agreed Case Management Order Governing Insurance Actions (June 20, 2011) (docket no. 2849), ¶ V.A (setting Rule 12(c) motion schedule); Fed. R. Civ. P. 12(c).

Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co., Inc. v. Touchstone Props.*, Ltd., 914 F.2d 74, 76 (5th Cir. 1990)).  The Drilling Contract and insurance policies at issue are properly before the Court on this motion, as documents attached to or referred to in the pleadings, as the Court has already ruled in anticipation of this very motion.  *See* Order Regarding CMO for Insurance Actions (May 31, 2011) (docket no. 2593), at 2 (providing that "BP may proceed with a Rule 12(c) motion for judgment on the pleadings and attach the drilling contract and the insurance policies," and that "[t]here is no need for [BP] to request, in the alternative, summary judgment," because the drilling contract and policies are central to the Insurers' complaints and may properly be considered in deciding a motion under

Rule 12(c)) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), and

5C Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §1371 at 276 (3d ed. 2004)).

      The standard for granting a motion under Rule 12(c) is the same as that for a

motion under Rule 12(b)(6):  the movant is entitled to judgment if, as a matter of law, the

plaintiff has failed to state a claim upon which relief can be granted.  *See In re Great Lakes*

*Dredge & Dock Co. LLC*, 624 F.3d 201, 209-10 (5th Cir. 2010) (citations omitted).  To avoid

dismissal, the complaint must "'state a claim to relief that is plausible on its face.'"  *Id.* at 210

(quoting *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009)).  The "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  *Id.* (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint also must state a legal claim or theory

that would entitle the plaintiff to the relief it seeks, assuming the facts as alleged are proven.  *See*

*Alcala v. Texas Webb County*, 620 F. Supp.2d 795, 801 (S.D. Tex. 2009) ("[D]ismissal can be

based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under

a cognizable legal theory.") (quotations omitted).  In an insurance coverage case governed by

Texas law, this means that the plaintiff's reading of the contracts at issue (*i.e.*, the policies) must

be legally valid.  *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112 (7th

Cir. 1995) (applying Texas law to affirm judgment on the pleadings because plaintiff's reading

of insurance policy provision at issue was invalid as a matter of law); *Bartley v. National Union*

*Fire Ins. Co. of Pittsburgh, Pa.*, 824 F.Supp. 624, 630 (N.D.Tex. 1992) (granting motion to

dismiss where no coverage was provided on the "face of the [insurance] contract" ).

      Insurance coverage suits that, like the Insurer Complaints here, seek nothing but

declaratory relief present strictly legal questions that are particularly appropriate for resolution at

an early stage and without trial.  *See, e.g., Tuepker v. State Farm Fire & Cas. Co.* 507 F.3d 346,

357 (5th Cir. 2007) (deciding an insurance coverage case under Rule 12 because the policy at issue was unambiguous as a matter of law); *American States Ins. Co. v. Bailey,* 133 F. 3d 363, 366 (5th Cir. 1998) (granting summary judgment for declaratory relief after interpreting policies as a matter of law).  Further, under Texas law, the proper interpretation of an insurance policy is generally a question of law for the Court.  *See New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir. 1996).  For all of these reasons, the issue presented here is ripe for a Rule 12(c) judgment on the pleadings.

## II.    TEXAS LAW GOVERNS THE INSURANCE POLICIES AT ISSUE AND REQUIRES THAT ANY REASONABLE DOUBT BE CONSTRUED IN FAVOR OF THE INSURED AND ITS COVERAGE CLAIM.

The Insurers and BP agree that Texas law governs BP's coverage rights under the Ranger and Excess Policies.  Each policy contains a choice-of-law provision stating that "[t]he proper and exclusive law of this insurance policy shall be Texas law."  *See* Ranger Policy (Wenk Decl., Ex. D), Declarations, Item 10, at TRN-MDL-00237547; *see also* Excess Policies (Wenk Decl., Ex. E (at TRN-MDL-00235686), Ex. F (at TRN-MDL-00235582), Ex. G (at TRN-MDL-00235860), Ex. H (at TRN-MDL-00236014), Ex. I (at TRN-MDL-00236190), Ex. J (at TRN-MDL-00237744)).  Further, the Insurers have affirmatively pleaded that "the proper and exclusive law" of the polices is Texas law, and BP has admitted this averment.  *See* Wenk Exs. A-B (Insurer Complaints, ¶ 18; BP Answer (*Ranger* suit, docket no. 39; *Lloyd's* suit, docket no. 24), ¶ 18.  The Court thus should apply Texas law, in accordance with common practice and binding precedent.[9]

---

[9]  *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955) (holding, in an insurance coverage action relating to a maritime loss, that applicable state law governs because "[t]he whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine [insurance] policy terms and (continued…)

Like the law in many states, Texas law requires courts to resolve any reasonable doubt in favor of the insured when interpreting an insurance policy.  "[I]f a contract of insurance is susceptible of more than one reasonable interpretation, a court must resolve the uncertainty by adopting the construction that most favors the insured."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) ("if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted").

Thus, insurance policy provisions that seek to limit or exclude coverage are strictly construed against the insurer and in favor of the insured.  "[A] court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, *even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent*."  *See Hudson Energy*, 811 S.W.2d at 555 (emphasis added); *see also Aubris Resources LP*, 566 F.3d at 486 ("If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided the interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable.") (emphasis in original).  That means that, to the extent that the Insurers are advancing a coverage-defeating interpretation of their policies, their interpretation must be rejected, even if reasonable,

---

warranties" and that "[t]he control of all types of insurance companies and contracts has been primarily a state function since the States came into being"); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8-17 (1972) (federal courts sitting in admiralty must apply a contractual choice of forum, in keeping with the general rule that such provisions apply except where manifestly unreasonable or unjust); *Great Lakes Reinsurance (UK) plc v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009) (same with respect to a contractual choice of law).

unless BP's alternative interpretation of the policies is unreasonable.  Insurance, after all, is risk transfer, and it is the insurer who bears the risk.

III.    **THE INSURERS HAVE ADMITTED, AND IT CANNOT REASONABLY BE DISPUTED, THAT THE DRILLING CONTRACT IS AN "INSURED CONTRACT" WITHIN THE MEANING OF THE POLICIES.**

The Insurers admit in their complaints, and it cannot reasonably be disputed, that the Drilling Contract is an "Insured Contract," as that term is defined in the Ranger and Excess Policies, and accordingly, that BP is an "additional insured" under the policies — at least for some types of loss.

In paragraph 11 of the *Ranger* Complaint, and likewise in paragraph 11 of the *Lloyd's* Complaint, the Insurers admit that, "[a]s is customary in the industry, the drilling contract requires additional insured protection in favor of certain BP entities[.]"  Insurer Complaints, ¶ 11.  The Insurers thus accept that, with respect to "liabilities assumed by Transocean under the terms of the drilling contract" (*id.*, ¶ 11) — *i.e.*, liabilities for which Transocean has agreed to indemnify BP in the Drilling Contract — BP is properly entitled to "additional insured" protection under the policies.  So, for example, to the extent that BP is subjected to claims for which Transocean has agreed to indemnify BP in Article 21.1 of the Drilling Contract — *i.e.*, any personal injury or wrongful death claims by any "officers, directors, agents, invitees, [or] employees" (or "any of their relatives") of Transocean or of any Transocean subsidiaries, affiliates, or subcontractors — the Insurers accept that they, too, are obligated to indemnify BP.  Drilling Contract (Wenk Decl., Ex. C), art. 21.1.  Likewise, if and to the extent that Transocean may be liable to indemnify BP under Article 24.1 of the Drilling Contract, which requires Transocean to indemnify BP insofar as any pollution or contamination may have "originated on or above the surface of the land or water," the Insurers also apparently

- 15 -

accept (by virtue of paragraph 11 of their complaints) that they are obligated to indemnify BP. *Id.*, art. 24.1.

The fact that BP has "additional insured" coverage rights under the policies is readily apparent from the plain language of the policies.  As noted above, the policies define the term "Insured" to include not only the "Named Insured" but also, as additional insureds, "any person or entity to whom the 'Insured' is obliged by any oral or written '*Insured Contract*' (including contracts which are in agreement but have not been formally concluded in writing) entered into before any relevant 'Occurrence', to provide insurance such as is afforded by this Policy."[10]

The policies state further that:

> The words "Insured Contract", whenever used in this Policy, shall mean any written or oral contract or agreement entered into by the "Insured" (including contracts which are in agreement but have not been formally concluded in writing) and *pertaining to business under which the "Insured" assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization*.  Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.[11]

As the Insurers acknowledge, Transocean (*i.e.*, the "Named Insured" and thus, also an "Insured") has "assume[d] the tort liability of another party" [BP] because, *inter alia*,

---

[10]  Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.13(c) at TRN-MDL-00237575-76, TRN-MDL-00237597-98, *as amended by* Endmt. 4, ¶ 27, at TRN-MDL-00237629 (emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E (at TRN-MDL-00235775), Ex. F (at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at TRN-MDL-00236176, 00236182)).  For the language in Policy No. ARS4925, *see* note 7, *supra*.

[11]  Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.14 at TRN-MDL-00237576, TRN-MDL-00237598, *as amended by* Endmt. 4, ¶ 32, at TRN-MDL-00237630 (emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E (at TRN-MDL-00235775), Ex. F (at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at TRN-MDL-00236177, 00236182)).

Transocean has agreed to indemnify BP under Articles 21.1, 24.1, and various other provisions of the Drilling Contract.  The Court thus should declare that the Drilling Contract is an "Insured Contract" and that BP is entitled to "additional insured protection," *at least* for "liabilities assumed by Transocean under the terms of the drilling contract."  Insurer Complaints, ¶ 11.

IV.  **UNDER GOVERNING TEXAS LAW, THE SCOPE OF THE INSURERS' COVERAGE OBLIGATIONS TO BP IS DETERMINED BY REFERENCE TO THE POLICIES THEY ISSUED, NOT THE DRILLING CONTRACT.**

The Court also should issue the second judicial declaration that BP has requested. Specifically, it should declare that the *scope* of BP's coverage rights as an "additional insured" under the Ranger and Excess Policies is controlled by the terms and conditions of the *insurance policies themselves*; it is not limited to the scope of Transocean's contractual indemnity of BP in the *underlying Drilling Contract* between Transocean and BP, pursuant to which the *Deepwater Horizon* was operating in April 2010 — a service contract to which none of the Insurers is a party.

Under governing Texas law, the Insurers' legal obligations to BP are determined by the policies they issued, not by the indemnity provisions (or any other provisions) in the Drilling Contract.  This issue is directly controlled by *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008).  In *ATOFINA*, the Texas Supreme Court held that, when determining the scope of a company's rights as an "additional insured" under liability policies procured by its contractor, a court must look *not* "to the indemnity agreement in the service contract" but rather to "the terms of the insurance policy itself."  *Id.* at 664.

The *ATOFINA* court set out to "examine the interplay between a contractual indemnity provision and a service contract's requirement to name an additional insured."  *Id.* at 662.  The service contract in question was entered into between ATOFINA Petrochemicals, Inc. ("ATOFINA") and a contractor, Triple S Industrial Corporation ("Triple S"), which had agreed

to perform maintenance and construction work at ATOFINA's Port Arthur refinery.  As the

Texas Supreme Court explained:

> The service contract contained an indemnity provision and a requirement
> that Triple S carry certain minimum levels of liability insurance
> coverage.  Triple S agreed to indemnify ATOFINA from all personal
> injuries and property losses sustained during the performance of the
> contract, "except to the extent that any such loss is attributable to the
> concurrent or sole negligence, misconduct, or strict liability of
> [ATOFINA]."  Triple S also agreed to carry at least $500,000 of primary
> comprehensive general liability (CGL) insurance, "[i]ncluding coverage
> for contractual liability insuring the indemnity agreement," and an
> excess (or "umbrella") liability policy "following form for [the CGL
> policy]" of at least $500,000.  Finally, the contract required Triple S to
> furnish certificates of insurance to ATOFINA evidencing the required
> insurance coverages and showing ATOFINA as an additional insured on
> the policies.

*Id.* at 662-63.

Triple S complied with its contractual obligations by purchasing a $1 million

primary CGL policy from Admiral Insurance Company ("Admiral") and a $9 million umbrella

policy from Evanston Insurance Company ("Evanston") — *i.e.*, 10 times the minimum level of

coverage that it committed to provide in the service contract — and by furnishing the required

certificates of insurance.  *Id.* at 663.  During the policy period, a Triple S employee working at

the ATOFINA facility died on the job when he drowned, after falling through the corroded roof

of a fuel-oil storage tank.  The Triple S employee's survivors then sued both Triple S and

ATOFINA for wrongful death, and after Admiral tendered its full policy limits to fund the first

$1 million of a $6.75 million settlement, ATOFINA demanded coverage from Evanston as an

"additional insured" under Evanston's umbrella policy.  *Id.*  Evanston denied ATOFINA's claim.

In refusing coverage of ATOFINA's "additional insured" claim, Evanston made

materially the same argument that the Insurers have pleaded in their complaints here.  Evanston

noted that, *in the service contract between ATOFINA and Triple S*, ATOFINA disclaimed

indemnification from Triple S for losses resulting from ATOFINA's own negligence.  Further,

Evanston noted that its policy was a "following form" policy, as required by the service contract,

meaning that its coverage was no broader than that of the underlying policy, which identified

ATOFINA as an additional insured "'only with respect to liability arising out of [Triple S's]

ongoing operations performed for [ATOFINA], but in no event for [ATOFINA's] sole

negligence.'"  *Id.* (quoting service contract).

      The Texas Supreme Court unanimously rejected Evanston's arguments on the

scope of its "additional insured" coverage obligations, refusing to engraft onto the insurance

policy issued by Evanston any limitations contained in the service contract's indemnity

provision.  The court began its analysis by acknowledging that, in the service contract,

ATOFINA disclaimed any right of indemnification for losses attributable to its concurrent or

sole negligence.  *Id.* at 663.  It then explained:

> Under the terms of the service contract, ATOFINA is not entitled to be
> indemnified by Triple S if the [wrongful death] loss was occasioned in
> any way by ATOFINA's negligence.  But ATOFINA does not seek
> indemnification from Triple S; it claims instead that it is entitled to
> indemnification from Evanston by virtue of its status as an additional
> insured on the umbrella policy Evanston issued to Triple S.  *Instead of*
> *looking, as the court of appeals did, to the indemnity agreement in the*
> *service contract to determine the scope of any coverage, we base our*
> *decision on the terms of the umbrella insurance policy itself.*

*Id.* at 663-64 (emphasis added).  The court noted pre-existing Texas law holding that, "where an

additional insured provision is separate from and additional to an indemnity provision, the scope

of the insurance requirement is not limited by the indemnity clause."  *See ATOFINA*, 256 S.W.3d

at 664 n.5 (citing *Getty Oil Co. v. Ins. Co. of North Am.*, 845 S.W.2d 794 (Tex. 1992)).  It then

observed that the requirement in the service contract at issue that ATOFINA be named as an

"additional insured" in each of Triple S's policies was a separate and independent requirement

from the indemnity provision of the contract and extended "*direct* insured status to ATOFINA as an additional insured" under the policies.  *Id.* at 670 (emphasis in original).  Thus, ATOFINA's coverage as an "additional insured" under the policy issued by Evanston was not limited in scope to the terms contained in the separate indemnity provision of the service contract between ATOFINA and Triple S, and ATOFINA was entitled to coverage for the liability at issue.  *Id.*

The Fifth Circuit subsequently applied *ATOFINA* as controlling Texas law in *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009).  There, the Court considered "what effect a general indemnity provision in an oilfield services agreement ha[d] on the scope of additional insured coverage required by that same agreement."  *Id.* at 485. In that case, an oilfield owner had engaged a contractor to service its fields, and the parties' agreement provided for the owner to be an "additional insured" under the contractor's policies, "except with respect 'to any obligations for which [the oilfield owner] has specifically agreed to indemnify'" the contractor.  *Id.* at 485-86 (quoting services agreement).  When claims arose from an explosion at one of the fields, the insurer denied coverage to the oilfield owner, citing an indemnity provision in the services agreement, whereby the owner had agreed to indemnify the contractor for the owner's own negligence.  *Id.*

The *Aubris* court considered the question presented to be "virtually the same" as that presented to the Texas Supreme Court in *ATOFINA*:  *i.e.*, "whether the parties' indemnity agreement operated to limit the scope of ATOFINA's additional insured coverage."  566 F.3d at 488.  The insurer argued that the services agreement's "additional insured" provision and general indemnity provision must be read together, "such that there is no coverage in causes of action arising from [the oilfield owner's] own negligence."  *Id.* at 486.  By contrast, the oilfield owner contended that there was no necessary relationship between the two provisions and that coverage

is determined by reference only to the additional insured provision and the insurance policy itself. *Id*. at 486-87. Further, the oilfield owner interpreted the "additional insured" provision to provide that the owner is an additional insured "unless it separately and extra-contractually agrees to indemnify [the contractor]." *Id.* at 486.

The Fifth Circuit sided with the oilfield owner. Finding *ATOFINA* directly on point, it looked to the additional insured provision "as it stands by itself" to determine the scope of the contractor's obligation to provide "additional insured" coverage: "We take from [*ATOFINA*] that in determining whether there is coverage, a court looks only to the additional insured provision itself; that indemnity is a separate, and later arising, question from coverage." *Id*. at 488. Relying on *ATOFINA*, the Court held:

> The separate indemnity provision is not applied to limit the scope of coverage. Indeed, on this point the Texas Supreme Court could not have been clearer: 'We have noted that where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity clause.'

*Id.* at 489 (quoting *ATOFINA*, 256 S.W.3d at 664 (citing *Getty Oil*)). Like the *ATOFINA* court, the *Aubris* court recognized that the insured was not seeking indemnity under the indemnity provisions of the service contract but instead, was seeking to enforce its coverage rights as an additional insured under an insurance policy. *Id*. at 488-89.[12]

---

[12]  An unpublished Fifth Circuit decision also addresses "the intersection of indemnity and insurance provisions" and provides further support for BP's position. In *Lubrizol Corp. v. Gray Ins. Co.*, No. 08-20289, Slip Copy, 2009 WL 348820 at *3 (5th Cir. 2009), a company (Lubrizol) engaged a contractor (Pat Tank, Inc.) to repair a storage tank. The parties' contract contained an indemnity clause requiring Pat Tank to indemnify Lubrizol for any injuries that Pat Tank intentionally or negligently caused and also contained a second clause that obligated Pat Tank to purchase a general liability policy and add Lubrizol as an additional insured. *Id*. at *1. Two of Pat Tank's employees were injured on the job and sued Lubrizol, but because they did not allege that their injuries were caused by Pat Tank, Lubrizol could not seek indemnity from (continued…)

In reaching its holding, the *Aubris* Court cited and applied the staunchly pro-coverage interpretive canons of Texas insurance law:

> If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided that interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable.  "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured."  We therefore adopt [the oilfield owner's] interpretation in this case if in our review we conclude it is at least reasonable.

*Id.* at 486 (citing and quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991)).

*Aubris* also took into account the manifest purpose of the service agreement's "additional insured" provision, noting that an important purpose of the services agreement was to secure (rather than limit) insurance coverage for the "additional insured" during the course of work performed under the contract.  *Id.* at 490.  The Court thus found it untenable to read the plain language of the general indemnity provision of the agreement as a *limit* on the scope of an *insurer's* additional insured obligation:  "To hold otherwise arguably would ignore the parties' true intent in negotiating insurance coverage for the operations performed under the [services agreement]."  *Id*.; *cf. Ranger* Am. Compl. ¶ 11; *Lloyd's* Compl. ¶ 11 (admitting that "the drilling contract requires additional insured protection in favor of certain BP entities").

---

Pat Tank under the terms of the indemnity provisions of the contract.  *Id.*  Lubrizol claimed that Pat Tank's general liability insurer should cover the claim, citing its "additional insured" status under its contract with Pat Tank.  The insurer argued that the additional insured requirement was limited to the scope of Pat Tank's indemnity obligation to Lubrizol.  *Id.* at *2.  The Court of Appeals disagreed.  Citing *ATOFINA*, it held that the contractual obligation to add Lubrizol as an "additional insured" was distinct from the contractual indemnity obligation and that Lubrizol's insurance coverage was not limited to the scope of the contractual indemnity.  *Id*. at *5.

The same reasoning applies here.  In a stand-alone "INSURANCE" provision — separate and apart from the Drilling Contract's indemnity provisions and expressly without limiting (or being limited by) those provisions — the Drilling Contract provides that Transocean must maintain liability insurance for BP's benefit as well as for its own:

> Without limiting the indemnity obligation or liabilities of CONTRACTOR or its insurer, at all times during the term of this CONTRACT, CONTRACTOR shall maintain insurance covering the operations to be performed under this CONTRACT as set forth in Exhibit C.

Drilling Contract (Wenk Decl., Ex. C), art. 20.1, at TRN-MDL-00027337.  Exhibit C of the Drilling Contract, captioned "Insurance Requirements," then provides, in relevant part:

> Vastar [*i.e.*, BP America Production Co.], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents shall be named as additional insureds in each of CONTRACTOR'S [*i.e.*, Transocean Holdings Inc.'s] policies, except Workers' Compensation for liabilities assumed by CONTRACTOR under the terms of this Contract.

*Id.* (Wenk Decl., Ex. C), Drilling Contract Ex. C, ¶ 3, at TRN-MDL-00027435.  There is manifestly no restriction in these insurance provisions on the scope of the general liability coverage that Transocean might maintain, or is required to obtain, for BP's protection as an "additional insured," in regard to any pollution-related liability arising from or related to performance of the Drilling Contract.

Indeed, if the insurance provision in the services agreement at issue in *Aubris* was insufficient, as a matter of law, to impose any substantive limit on the "additional insured" coverage in that case, it follows *a fortiori* that the insurance provision of the Drilling Contract imposes no such limit on BP's coverage here.  In *Aubris*, the services agreement provided for the oilfield owner to be an "additional insured" under the contractor's policies, "except with respect 'to *any* obligations for which [the owner] has specifically agreed to indemnify'" the contractor.

- 23 -

*Aubris*, 566 F.3d. at 485-86 (quoting services agreement) (emphasis added).  If, as the Court of Appeals held, this more restrictive language imposed no limit on general liability coverage for an "additional insured," then Article 20 and Exhibit C to the Drilling Contract impose no such limit either.[13]

Even more fundamentally, the Ranger and Excess Policies (*i.e.*, the contracts that are directly at issue here) contain no language limiting the scope of BP's "additional insured" coverage to the scope of Transocean's indemnities of BP under the Drilling Contract.  If the Insurers had wanted a narrower coverage obligation, it was incumbent upon them to limit the scope of coverage for any "additional insured" in the policies they issued.  They did not do so.

The policies define "Insured" to include "any person or entity to whom the 'Insured' is obliged by any oral or written 'Insured Contract' (including contracts which are in agreement but have not been formally concluded in writing) entered into before any relevant 'Occurrence', to provide insurance such as is afforded by this Policy."  *See* pages 8-9 & n.7, *supra*.  There is no limitation in this definition on the scope of an "Insured's" coverage rights.  If an entity qualifies as an "Insured," then it is entitled under *ATOFINA* to all coverage that the policies provide (*i.e.*, all "insurance such as is afforded by this Policy").

Nor is there anything in the definition of "Insured Contract" that imposes any substantive coverage limitation.  The policies define "Insured Contract" to include "any written or oral contract or agreement entered into by the 'Insured' … and pertaining to business under

---

[13]  As noted above, the oilfield owner in *Aubris* argued that the language at issue there required "additional insured" coverage "unless [the owner] *separately and extra-contractually* agree[d] to indemnify" the contractor for the *specific* liability in question, and the Court found this interpretation not unreasonable.  *Aubris*, 566 F.3d at 486 (emphasis added); *see also id.* at 489-90.

which the 'Insured' assumes the tort liability of another party to pay for 'Bodily Injury',

'Property Damage', 'Personal Injury' or 'Advertising Injury' to a 'Third Party' or

organization."[14]  As noted above, it is common ground that the Drilling Contract qualifies as an

"Insured Contract."  *See* Insurer Complaints, ¶ 11.

        If the policy language at issue in *ATOFINA* imposed no limit on the general

liability "additional insured" coverage provided there, then the definitions of "Insured" and

"Insured Contract" in the Ranger and Excess Policies can provide no such limit here.  The policy

at issue in *ATOFINA* "followed form" to the underlying primary policy, which identified

ATOFINA as an additional insured "'only with respect to liability arising out of [Triple S's]

ongoing operations performed for [ATOFINA], but in no event for [ATOFINA's] sole

negligence.'"  *ATOFINA*, 256 S.W.3d at 663 (quoting service contract).  By any standard, this

language imposes a more substantive restriction in regard to the "additional insured's" general

liability coverage than anything in the definitions of "Insured" and "Insured Contract" in the

policies at issue here.  The Texas Supreme Court ruled, however, that coverage was still

available for ATOFINA, insofar as the claims at issue were settled without a finding of "sole

negligence" on the part of ATOFINA.  *Id*. at 667-68.

        Further, just as BP and Transocean could have taken steps to limit Transocean's

obligation to maintain general liability insurance for BP in the Drilling Contract (but did not), so

too could the Insurers have written their policies to limit the scope of BP's coverage in the

---

[14] Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.14 at TRN-MDL-00237576,
TRN-MDL-00237598, *as amended by* Endmt. 4, ¶ 32, at TRN-MDL-00237630 (emphasis
added); *see also* Excess Policies (Wenk Decl., Ex. E, (at TRN-MDL-00235775), Ex. F (at TRN-
MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at
TRN-MDL-00236177, 00236182).  For the language in Policy No. ARS4925, *see* note 7, *supra*.

manner that they now claim (but did not).  As the Texas Supreme Court observed in *ATOFINA*, "had the parties intended to insure ATOFINA for [a narrower scope of liability], 'language clearly embodying that intention was available.'" *ATOFINA*, 256 S.W.3d at 666 (quoting *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993)).  For example, the policies could have been drafted to extend "additional insured" coverage "only to liabilities for which the Named Insured is expressly obligated to indemnify such other Insured under an Insured Contract."  But no such language is included in the Ranger and Excess Policies, and the Insurers cannot retroactively add such language now.

In sum, *ATOFINA* and *Aubris* require judgment in BP's favor on the claims pleaded in the Insurer Complaints.  As both cases recognize, insurance and indemnity are two different things, with the former provided and governed by insurance policies and the latter provided and governed by the terms of contractual indemnities in service contracts.  There is nothing in the Ranger and Excess Policies that restricts BP's status as an "additional insured" for general liabilities arising from the *Deepwater Horizon* Incident and, more specifically, for pollution-related liabilities arising from oil emanating from the Macondo Well.

**V.      WHETHER BP IS LIABLE TO TRANSOCEAN UNDER THE INDEMNITIES IN THE DRILLING CONTRACT IS IRRELEVANT TO THE SCOPE OF BP'S "ADDITIONAL INSURED" COVERAGE UNDER THE INSURANCE POLICIES.**

Finally, the Insurer Complaints seek a judicial declaration that "BP assumed full responsibility in the drilling contract for any and all liabilities arising out of or in any way related to the release of oil from BP's well" (*i.e.*, the Macondo Well).  Insurer Complaints, ¶ 22.A.  The Insurers are not entitled to this declaration, and in any event, the issue is irrelevant to the scope of BP's "additional insured" coverage rights under the Ranger and Excess Policies.

As explained above, the scope of BP's "additional insured" rights is governed by the terms and conditions of the insurance policies themselves.  Whether and to what extent BP

may have contractual liability to Transocean under the Drilling Contract is an entirely separate and independent question.  This, after all, is the core holding of *ATOFINA*, which *Aubris* expressly embraced:

> The separate indemnity provision is not applied to limit the scope of coverage.  Indeed, on this point the Texas Supreme Court could not have been clearer:  "We have noted that where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity clause."

*Aubris*, 566 F.3d at 489 (quoting *ATOFINA*, 256 S.W.3d at 664).  The Insurers' obligation under the policies to provide coverage to BP for pollution-related, third-party property damage and bodily injury claims simply does not hinge, in any respect, on the relative contractual obligations of BP and Transocean to each other under the Drilling Contract's indemnities.

Further, as also discussed above, the Insurers have no legal basis for requesting a determination of BP's obligations to Transocean (or anyone else) under the Drilling Contract.  The Insurers are not parties to the Drilling Contract, and the Drilling Contract grants them no rights as third-party beneficiaries.  On the contrary, it expressly provides that they have no such rights.  *See* Drilling Contract (Wenk Decl., Ex. C), arts. 25.2-25.3.

In any event, the Insurers' suggestion that BP could be denied coverage if it has "full responsibility" (under the Drilling Contract or otherwise) "for any and all liabilities arising out of or in any way related to the release of oil" from the Macondo Well has the matter backwards.  Legal liability does not *preclude* coverage; it generally triggers coverage.  An insured only needs its insurance coverage to the extent that it has either potential or actual liability for the losses in question.  That, after all, is what liability insurance is for.  Texas law is especially robust on this point.  Under Texas law, a finding that a party is negligent, or even

grossly negligent, is no bar to coverage.[15]  Texas law also will enforce an insurer's coverage

obligation to an "additional insured," even where a related contractual indemnity is void.[16]

      For all of these reasons, the respective rights and obligations of BP and

Transocean under the Drilling Contract are irrelevant to the scope of BP's rights as an

"additional insured" under the Ranger and Excess Policies.

## CONCLUSION

      In light of the foregoing, the BP Parties respectfully request that the Court grant

their motion for judgment on the pleadings in respect to the Insurer Complaints and that the

Court declare (1) that BP is an "additional insured" under the Ranger and Excess Policies; and

(2) that the scope of BP's coverage rights as an "additional insured" under these policies is

governed by the terms and conditions of the insurance policies themselves and is not limited to

the scope of Transocean's contractual indemnity of BP in the Drilling Contract.

---

[15]  *See, e.g., Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 832-33 (Tex. 2009) (finding coverage for recklessness relating to an insured's conduct in a high-speed chase to evade police where resulting injuries were unintended); *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 670 (Tex. 2008) (finding coverage permissible for gross negligence and punitive damages relating to an employer's conduct in causing a fatal workplace accident); *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 181-85 (Tex. Ct. App. 2004) (finding coverage for gross negligence and punitive damages relating to a nursing home's treatment of a patient).

[16]  *See Travelers Lloyds Ins. Co. v. Pacific Empls. Ins. Co*., 602 F.3d 677, 684 (5th Cir. 2010) (enforcing additional insured coverage obligations in respect to contracts where the indemnity provisions were void); *Certain Underwriters at Lloyd's, London v. Oryx Energy Co.*, 142 F.3d 255, 258 (5th Cir. 1998) (enforcing additional insured coverage obligations and observing that "[t]here is no justification for an argument that Texas courts would engraft a limit on coverage to match [a] Texas law defense [under the Texas Oilfield Anti-Indemnity Act] as if the suit were only to enforce the indemnity itself").

For the same reasons, BP submits that the Court should deny the four judicial declarations requested in paragraph 22 of the Insurer Complaints and instead, should declare with respect to each of those matters as follows:

a. that whether and to what extent "BP assumed … responsibility" in the Drilling Contract "for any and all liabilities arising out of or in any way related to the release of oil" from the Macondo Well is, as a matter of law, not relevant to the Insurers' coverage obligations to BP under the Ranger and Excess Policies (Insurer Complaints, ¶ 22.A);

b. that BP's "additional insured" status under the Drilling Contract is not defined or otherwise limited to exclude "the pollution liabilities BP has incurred and will incur with respect to oil emanating from" the Macondo Well (*id.*, ¶ 22.B);

c. that Ranger and the Excess Insurers have coverage obligations to BP as an "additional insured" under the Ranger and Excess Policies for "the pollution liabilities BP has incurred and will incur with respect to the oil emanating from" the Macondo Well that are not limited by the indemnities in the Drilling Contract (*id.*, ¶ 22.C); and

d. that BP is "entitled to coverage under the [Ranger and Excess Policies] for the pollution liabilities BP has incurred and will incur with respect to the oil emanating from" the Macondo Well, if and as the substantive terms and conditions of those policies provide, without reference to the Drilling Contract (*id.*, ¶ 22.D).

Respectfully submitted,

/s/ David B. Goodwin

Allan B. Moore
Seth A. Tucker
Christopher J. Wenk
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Tel:  (202) 662-6000
Fax:  (202) 778-5575
E-mail:  abmoore@cov.com
E-mail:  stucker@cov.com
E-mail:  cwenk@cov.com

David B. Goodwin
M. Alexia dePottere-Smith
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA  94111
Tel:  (415) 591-6000
Fax:  (415) 591-6091
E-mail:  dgoodwin@cov.com
E-mail:  adepottere@cov.com

*Counsel for BP Exploration & Production Inc., BP America Production Company,*
*BP Corporation North America Inc., BP Company North America Inc., BP Products North*
*America Inc., BP America Inc., BP Holdings North America Limited, and BP plc*

Dated:  July 8, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of July, 2011.

/s/ Christopher J. Wenk
Christopher J. Wenk