# EXHIBIT B

**STATE OF LOUISIANA'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
<u>THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT</u>**

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 2 of 22

Westlaw.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

## LOUISIANA 1991 SESSION LAW SERVICE
### 1991 First Extraordinary Session
### 2281

Additions and deletions are not identified in this document.
Vetoed provisions within tabular material are not displayed.

## ACT NO. 7
### H.B. No. 5
### OIL SPILL PREVENTION AND RESPONSE ACT

AN ACT to enact Chapter 19 of Subtitle II of Title 30 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 30:2451 through 2496, and to enact R.S. 36:4(M); to enact the Oil Spill Prevention Response Act; to provide for oil spill prevention and response in certain waters of the state and the administration, and coordination thereof; to provide relative to liability for removal costs and damages; to provide for responder immunity; to provide for enforcement and adjudication; to provide penalties; to create the Oil Spill Contingency Fund and to provide for the levy, collection, and expenditure of revenues thereof; to create the office of the Louisiana oil spill coordinator and the powers, duties, functions, and responsibilities thereof; to create the interagency council and its membership and responsibilities; and to provide for related matters.

Be it enacted by the Legislature of Louisiana:

Section 1. Chapter 19 of Subtitle II of Title 30 of the Louisiana Revised Statutes of 1950, comprising R.S. 30:2451 through 2496, is hereby enacted to read as follows:

<< LA Prec. R.S. 30:2451 >>

## CHAPTER 19. OIL SPILL PREVENTION AND RESPONSE ACT
### PART I. GENERAL PROVISIONS

<< LA R.S. 30:2451 >>

§ 2451. Title

This Chapter may be cited as the Oil Spill Prevention and Response Act.

<< LA R.S. 30:2452 >>

§ 2452. Legislative findings

A. Louisiana is subject to greater exposure to a major oil spill disaster than any other state. This is the result of the large volumes of stored oil, numerous production platforms and miles of pipelines, large numbers of inland barges, and heavy tanker traffic, including the Louisiana Offshore Oil Port which receives fifteen percent of the oil imported into the United States. This exposure, coupled with the limited adequate highway accessiblity [1] to

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

the coast and remote inland areas for rapid transport of oil spill equipment and few areas suitable for staging fa-
cilities, creates great potential for a major oil spill event and its consequences in a state which has twenty-six
percent of the nation's commercial fisheries, has the nation's highest marine recreational fishery catches, leads
the nation in fur production and the world in alligator production, and has more overwintering waterfowl than
any other state. Commercial and recreational marine fisheries are concentrated within a few miles inshore and
offshore of the coastline where oil from a major coastal spill would concentrate.

B. Added to the high exposure and inaccessibility of large portions of the coast and inland areas is the vulnera-
bility of Louisiana's nearshore and wetland environments. The numerous shallow interconnecting waterways and
gentle slope of the coastal areas would allow deep penetration of oil into the state's estuaries. The vast expanses
of Louisiana's soft unconsolidated marshes lying just a few inches above sea level would, in the event of an oil
spill, soak up large amounts of oil.

<< LA R.S. 30:2453 >>

§ 2453. Legislative intent

A. The legislature finds and declares that the release of oil into the environment presents a real and substantial
threat to the public health and welfare, to the environment, the wildlife and aquatic life, and to the economy of
the state. Further, the legislature declares that the purpose of this Chapter is to assist the legislature in fulfilling
its duties to protect, conserve, and replenish the natural resources of this state in accordance with Article IX,
Section 1 of the Constitution of Louisiana.

B. The legislature declares that it is the intent of this Chapter to support and complement the Oil Pollution Act
of 1990 (P.L. 101–380) and other federal law, specifically those provisions relating to the national contingency
plan for cleanup of oil spills and discharges, including provisions relating to the responsibilities of state agencies
designated as natural resources trustees. The legislature intends this Chapter to be interpreted and implemented
in a manner consistent with federal law.

<< LA R.S. 30:2454 >>

§ 2454. Definitions

In this Chapter:

(1) "Barrel" means forty-two United States gallons at sixty degrees Fahrenheit.

(2) "Coastal waters" means the waters and bed of the Gulf of Mexico within the jurisdiction of the state of
Louisiana, including the arms of the Gulf of Mexico subject to tidal influence, estuaries, and any other waters
within the state if such other waters are navigated by vessels with a capacity to carry ten thousand gallons or
more of oil as fuel or cargo.

(3) "Coordinator" means the Louisiana oil spill coordinator.

(4) "Crude oil" means any naturally occurring liquid hydrocarbon at atmospheric temperature and pressure com-
ing from the earth, including condensate.

(5) "Damages" means and includes any of the following:

(a) Natural resources—damages for injury to, destruction of, loss of, or loss of use of, natural resources as
defined in this Section, including the reasonable costs of assessing the damages, which shall be recoverable by
the state of Louisiana.

(b) Immovable or corporeal movable property—damages for injury to, or economic loss resulting from destruc-
tion of, immovable or corporeal movable property, which shall be recoverable by a person who owns or leases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 4 of 22

that property. For purposes of this Chapter, "immovable property" shall have the same meaning as "immovables" as provided in C.C. Art. 462. For purposes of this Chapter, "corporeal movable property" shall have the same meaning as "corporeal movables" as provided in C.C. Art. 471.

(c) Subsistence use—damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(d) Revenues—damages equal to the net loss of taxes, royalties, rents, fees, or net profit share due to the injury, destruction, or loss of immovable or corporeal movable property, or natural resources, which shall be recoverable by the state of Louisiana.

(e) Profits and earning capacity—damages equal to loss of profits, or impairment of earning capacity due to the injury, destruction, or loss of immovable or corporeal movable property, or natural resources, which shall be recoverable by those persons entitled to recovery under Subparagraph (b) or (c) of this Paragraph.

(f) Public services—damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, recoverable by the state of Louisiana or any of its political subdivisions.

(6) "Deepwater port" is a facility licensed in accordance with the Deepwater Port Act of 1974 (33 U.S.C. 1501–1524).

(7) "Discharge of oil" means an intentional or unintentional act or omission by which harmful quantities of oil are spilled, leaked, pumped, poured, emitted, or dumped into or on coastal waters of the state or at any other place where, unless controlled or removed, they may drain, seep, run, or otherwise enter coastal waters of the state.

(8) "Discharge cleanup organization" means any group or cooperative, incorporated or unincorporated, of owners or operators of vessels or terminal facilities and any other persons who may elect to join, organized for the purpose of abating, containing, removing, or cleaning up pollution from discharges of oil or rescuing and rehabilitating wildlife or other natural resources through cooperative efforts and shared equipment, personnel, or facilities. Any third-party cleanup contractor, industry cooperative, volunteer organization, or local government shall be recognized as a discharge cleanup organization, provided the coordinator properly certifies the organization.

(9) "Emergency" means an emergency declared by the governor in accordance with state law.

(10) "Facility" means any structure, group of structures, equipment, or device other than a vessel which is used for one or more of the following purposes: exploration for, drilling for, producing, storing, handling, transferring, processing, or transporting oil. This term includes any motor vehicle, rolling stock, or pipeline used for one or more of these purposes.

(11) "Federal fund" means the federal Oil Spill Liability Trust Fund.

(12) "Fund" means the Oil Spill Contingency Fund.

(13) "Harmful quantity" means that quantity of oil the discharge of which is determined by the coordinator to be harmful to the environment or public health or welfare or may reasonably be anticipated to present an imminent and substantial danger to the public health or welfare.

(14) "Hotline" means the emergency telephone number established in accordance with the provisions of this Chapter to respond to a threatened or unauthorized discharge of oil.

(15) "Marine terminal" means any terminal facility within the state of Louisiana used for transferring crude oil to or from vessels.

(16) "National contingency plan" means the plan prepared and published, as revised from time to time, under the Federal Water Pollution Control Act (33 U.S.C. §§ 1321 et seq.) and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. §§ 9601 et seq.).

(17) "Natural resources" means all land, fish, shellfish, fowl, wildlife, biota, vegetation, air, water, groundwater

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

supplies, and other similar resources owned, managed, held in trust, regulated, or otherwise controlled by the state.

(18) "Oil" means oil of any kind or in any form, including but not limited to crude oil, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not include petroleum, including crude oil or any fraction thereof, which is specifically listed or designated as a hazardous substance under Subparagraphs (A) through (F) of Section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. §§ 9601 et seq.) and which is subject to the provisions of that Act.

(19) "Oil spill" shall have the same meaning as "discharge of oil" as defined in this Section.

(20) "Owner" or "operator" means:

(a) Any person owning, operating, or chartering by demise a vessel; or

(b)(1) Any person owning a terminal facility, excluding a political subdivision of the state that as owner transfers possession and the right to use a terminal facility to another person by lease, assignment, or permit; or

(2) A person operating a terminal facility by lease, contract, or other form of agreement.

(21) "Person in charge" means the person on the scene who is directly responsible for a terminal facility or vessel when a threatened or unauthorized discharge of oil occurs or a particular duty arises under this Chapter.

(22) "Person responsible", "responsible person", or "responsible party" means:

(a) The owner or operator of a vessel or terminal facility from which an unauthorized discharge of oil emanates or threatens to emanate.

(b) In the case of an abandoned vessel or terminal facility, the person who would have been the responsible person immediately prior to the abandonment.

(c) Any other person, but not including a person or entity who is rendering care, assistance, or advice in response to a discharge or threatened discharge of another person, who causes, allows, or permits an unauthorized discharge of oil or threatened unauthorized discharge of oil.

(23) "Plan" means the state oil spill contingency plan.

(24) "Pollution" means the presence of harmful quantities of oil in waters of the state or in or on adjacent shorelines, estuaries, tidal flats, beaches, or marshes.

(25) "Removal costs" means, with respect to an actual or threatened discharge of oil, all costs incurred in an attempt to prevent, abate, contain, and remove pollution from the discharge, including costs of removing vessels or structures under this Chapter, and costs of any reasonable measures to prevent or limit damage to the public health, safety, or welfare, public or private property, or natural resources.

(26) "Tank vessel" means a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue, and that:

(a) Is a vessel of the United States;

(b) Operates on the navigable waters; or

(c) Transfers oil or hazardous material in a place subject to the jurisdiction of the state of Louisiana.

(27) "Terminal facility" means any waterfront or offshore pipeline, structure, equipment, or device used for the purposes of drilling for, pumping, storing, handling, or transferring oil and operating where a discharge from the facility could threaten waters of the state, including but not limited to any such facility owned or operated by a public utility or a governmental or quasi-governmental body.

(28) "Unauthorized discharge of oil" means any actual or threatened discharge of oil not authorized by a federal or state permit.

(29) "Vessel" includes every description of watercraft or other contrivance used or capable of being used as a means of transportation on water, whether self-propelled or otherwise, including barges.

<< LA Prec. R.S. 30:2455 >>

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LA LEGIS TES 7 (1991)                                                                      Page 5

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 6 of 22

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

### PART II. ADMINISTRATION

<< LA R.S. 30:2455 >>

§ 2455. Office of the Louisiana oil spill coordinator

The office of the Louisiana oil spill coordinator is hereby created within the office of the governor and shall exercise the powers and duties set forth in this Chapter or otherwise provided by law. The office shall be administered by the coordinator who shall be appointed by the governor, subject to Senate confirmation. The initial coordinator shall not perform any official duties prior to confirmation.

<< LA R.S. 30:2456 >>

§ 2456. General powers and duties of the coordinator

A. The coordinator, under the direction and control of the governor, shall:

(1) Develop a statewide oil spill prevention and response plan, taking into account the rules being developed by the federal government in accordance with the federal Oil Pollution Act of 1990 (P.L. 101–380) and similar plans being developed by other states.

(2) Provide a coordinated response effort from all appropriate state agencies in the event of an unauthorized or threatened discharge of oil affecting or potentially affecting the land, coastal waters, or any other waters of Louisiana.

(3) Coordinate the operational implementation and maintenance of the oil spill prevention program as provided in this Chapter.

(4) Administer a fund to provide for funding these activities.

(5) Provide clear delineation for state coordinated response efforts in relation to jurisdictional authorities and use of state and federal funds for removal costs under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. §§ 9601 et seq.), Water Pollution Control Act (33 U.S.C. §§ 321 et seq.), and the Oil Pollution Act of 1990 (P.L. 101–380).

B. The coordinator, upon approval of the interagency council, as provided in this Chapter, shall adopt and promulgate rules necessary and convenient to the administration of this Chapter in accordance with the Louisiana Administrative Procedure Act.

C. The coordinator shall by rule establish procedures under the Louisiana Administrative Procedure Act for all hearings required by this Chapter. The coordinator is hereby authorized to administer oaths, receive evidence, issue subpoenas to compel attendance of witnesses and production of evidence related to hearings, and make findings of fact and decisions with respect to administering this Chapter.

D. (1) The coordinator may contract with any public agency or private person or other entity, including entering into cooperative agreements with the federal government, acquire and dispose of nonresponse related real or personal property, delegate responsibility for implementing the requirements of this Chapter, and perform any other act within or without the boundaries of this state necessary to administer this Chapter.

(2) The coordinator may enter into any contracts for the purchase of goods or for services in accordance with the Louisiana Procurement Code and upon approval by the interagency council, including the emergency procurement procedures provided in R.S. 39:1598.

E. If the coordinator finds it necessary to enter property to conduct a vessel or terminal-facility audit, inspection, or drill authorized under this Chapter or to respond to an actual or threatened unauthorized discharge, the coordinator may enter the property after making a reasonable effort to obtain consent to enter the property.

<< LA R.S. 30:2457 >>

§ 2457. Regulatory authority; coordinator

A. The coordinator shall from time to time adopt, amend, repeal, and enforce reasonable regulations not in conflict with federal law or regulations, including but not limited to those relating to the following matters regarding the threatened or actual unauthorized discharge of oil:

(1) Standards and requirements for discharge prevention programs and response capabilities of terminal facilities and vessels.

(2) Standards, procedures, and methods consistent with federal law or regulations for designating persons in charge and reporting threatened or actual unauthorized discharges and violations of this Chapter.

(3) Standards, procedures, methods, means, and equipment to be used in the abatement, containment, and removal of pollution.

(4) Development and implementation of criteria and plans of response to unauthorized discharges of various degrees and kinds, including realistically foreseeable worst-case scenarios consistent with federal regulations.

(5) Requirements for complete and thorough audits of vessel contingency and response plans covered by this Chapter.

(6) Requirements for complete and thorough inspections of terminal facilities covered by this Chapter.

(7) Certification of discharge cleanup organizations.

(8) Requirements for the safety and operation of vessels, motor vehicles, motorized equipment, and other equipment involved in the transfer of oil at terminal facilities and the approach and departure from terminal facilities.

(9) Requirements that required containment equipment be on hand, maintained, and deployed by trained personnel.

(10) Standards for reporting material changes in discharge prevention and response plans and response capability for purposes of terminal facility certificate reviews.

(11) Such other rules and regulations consistent with this Chapter and appropriate or necessary to carry out the intent of this Chapter, consistent with federal law or regulations.

B. The coordinator may establish as a prerequisite for certification of any discharge cleanup organization, other than the Marine Spill Response Corporation and any discharge cleanup operated for profit or that has multi-state response jurisdiction, that the organization maintain on its governing body a minimum of two representatives from local governments within the area served by the organization.

C. (1) Any rule, regulation, guideline, or plan authorized by this Chapter, excluding Part VI, shall be proposed or adopted pursuant to the rulemaking procedures set forth in the Louisiana Administrative Procedure Act and shall be subject to approval by the House Committee on Natural Resources, Senate Committee on Natural Resources, and the Senate Committee on Environmental Quality. Such approval shall be presumed unless either committee submits objections or notification of a hearing in writing to the coordinator within fifteen days after receipt of the proposed rule, regulation, guideline, or plan. Provided that each written objection or disapproval shall be subject to override by the governor within five days after receipt of the objections or notice of disapproval by the governor.

(2) Any rule or regulation authorized to be adopted or promulgated in Part VI shall be subject to approval by the House Committee on Ways and Means and the Senate Committee on Revenue and Fiscal Affairs. Such approval shall be presumed unless either committee submits objections or notification of a hearing in writing to the coordinator within fifteen days after receipt of the proposed rule, regulation, or guideline. Provided that such written objections or disapproval shall be subject to override by the governor within five days after receipt of the objections or notice of disapproval by the governor.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 8 of 22

(3) The coordinator shall submit an annual budget to the Joint Legislative Committee on the Budget for the approval of a majority of members of the committee. The budget shall show all proposed expenditures by the office from the fund or otherwise.

<< LA R.S. 30:2458 >>

§ 2458. Interagency council

A. The coordinator shall convene at least twice annually and as deemed necessary and serve as chairperson to a cooperative council, the interagency council, composed of the following:

(1) Four people, who are not legislators, one selected by each of the following.
(a) The chairman of the Senate Committee on Natural Resources.
(b) The chairman of the Senate Committee on Environmental Quality.
(c) The chairman of the House Committee on Natural Resources.
(d) The chairman of the House Committee on Appropriations.
(2) The secretary of the Department of Wildlife and Fisheries or his designee.
(3) The secretary of the Department of Public Safety and Corrections or his designee.
(4) The secretary of the Department of Natural Resources or his designee.
(5) The secretary of the Department of Environmental Quality or his designee.
(6) The attorney general or his designee, who shall serve as a nonvoting member.
(7) The executive assistant for coastal activities in the office of the governor.
(8) The executive assistant for environmental affairs in the office of the governor.
(9) The assistant director of the office of emergency preparedness.
(10) The Louisiana oil spill coordinator.

B. The council shall consider matters relating to the coordination of state prevention, response, and cleanup operations related to unauthorized discharges of oil, including but not limited to:

(1) Assisting the coordinator in the development of a statewide oil spill prevention and contingency plan.
(2) Assisting the coordinator in preparing and approving an annual work plan, identifying state agency needs which must be met in order to comply with the state oil spill contingency plan.
(3) Developing recommendations for additional legislation.
(4) Assisting the coordinator in preparing and approving a budget necessary to implement the provisions of this Chapter.

<< LA Prec.R.S. 30:2459 >>

PART III. STATE OIL SPILL CONTINGENCY PLAN

<< LA R.S. 30:2459 >>

§ 2459. State oil spill contingency plan

A. The coordinator shall adopt and promulgate, in accordance with the procedures provided herein, a state oil spill contingency plan of response for actual or threatened unauthorized discharges of oil and clean up of pollution from such discharges. In addition, the Department of Environmental Quality, in cooperation with the coordinator, shall recommend provisions of the plan relating to unauthorized discharges of oil. The Department of Wildlife and Fisheries, in cooperation with the coordinator, shall recommend provisions of the plan providing for protection, rescue, and rehabilitation of aquatic life and wildlife and appropriate habitats on which they de-

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 9 of 22

pend under its jurisdiction. The Department of Natural Resources, in cooperation with the coordinator, shall recommend provisions of the plan providing for protection and rehabilitation of appropriate resources under its jurisdiction. The Department of Public Safety and Corrections, in cooperation with the coordinator, shall recommend provisions of the plan providing for emergency response coordination to protect life and property, excluding prevention, abatement, containment, and removal of pollution from an unauthorized discharge.

B. In promulgating the plan, the coordinator shall provide for clear designation of responsibilities and jurisdiction and avoid unnecessary duplication and expense. In promulgating the plan, the coordinator shall also provide for participation by local political subdivisions contiguous to coastal waters.

C. The plan shall be fully operational and implemented not later than one year after the latest effective date of the area and regional contingency plans designated for Louisiana pursuant to federal law and implemented by the United States Coast Guard and Environmental Protection Agency.

D. Prior to adopting the state oil spill contingency plan, the coordinator shall, by rule, adopt a fully delineated inland boundary for coastal waters as defined in this Chapter, which boundary shall be based upon data provided by, including but not limited to the United States Army Corps of Engineers, United States Department of the Interior, Minerals Management Service, the Louisiana Department of Natural Resources, and the oil and gas industry. The coordinator shall be authorized to amend the boundary by rule as conditions may warrant. The boundary, as adopted, shall be clearly marked on large scale maps or charts, official copies of which shall be available for public inspection in the office of coastal restoration and management in the Department of Natural Resources, in each agency comprising the interagency council, and in the parish seat of each parish located within the boundary.

<< LA R.S. 30:2460 >>

§ 2460. Contingency plan provisions

A. The plan shall include all of the following:

(1) Detailed emergency operating procedures for initiating actions in response to unauthorized discharges.

(2) A response command structure and state response team.

(3) An inventory of public and private equipment and its location and a list of available sources of supplies necessary for response.

(4) A table of organizations with the names, addresses, and telephone numbers of all persons and agencies responsible for implementing each phase of the plan and provisions for notification to such persons and agencies in the event of an unauthorized discharge.

(5) Plans for practice drills for the response command structure and the state response team.

(6) Establishment of a single state hotline for reporting incidents that will satisfy all state notification requirements under this Chapter and R.S. 32:1501 et seq., R.S. 30:2025(J), and R.S. 30:2361 et seq.

(7) Provisions for notifying the Department of Environmental Quality under the state oil spill contingency plan.

(8) Plans for volunteer coordination and training.

(9) Use of both proven and innovative prevention and response methods and technologies.

(10) The circumstances under which an unauthorized discharge may be declared to be a state of emergency under applicable law.

(11) The circumstances under which the unauthorized discharge may be declared to be abated and pollution may be declared to be satisfactorily removed.

(12) Designation of environmental and other priority zones to determine the sequence and methods of response and cleanup.

(13) Procedures for disposal of removed oil or hazardous substances.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LA LEGIS TES 7 (1991)                                                                                    Page 9

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 10 of 22

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

(14) Procedures established in cooperation with the Department of Environmental Quality, Department of Wildlife and Fisheries, and Department of Natural Resources for assessment of natural resources damages and plans for mitigation of damage to and restoration, protection, rehabilitation, or replacement of damaged natural resources.

(15) Any plan developed by the coordinator pursuant to this Chapter shall include appropriate local governmental authorities and shall provide for the participation and involvement of the appropriate local governmental authorities that may be affected by or involved in the prevention, response, and removal of an oil spill.

(16) Any other matter necessary or appropriate to carry out response activities, including but not limited to pre-approval of the use of dispersants.

B. (1) The coordinator shall promulgate rules and a state contingency plan that, to the greatest extent practicable, conform to the national contingency plan and rules promulgated under federal law.

(2) The coordinator may impose requirements under such rules and the state oil spill contingency plan that are in addition to or vary materially from federal requirements if the state interests served by the requirements substantially outweigh the burdens imposed on those subject to the requirements.

C. The plan shall be filed with all state agencies participating in response operations and federal officials responsible for federal discharge response within waters of the state, and local political subdivisions deemed appropriate by the coordinator.

<< LA Prec.R.S. 30:2461 >>

PART IV. OIL SPILL PREVENTION AND RESPONSE

<< LA R.S. 30:2461 >>

§ 2461. Coordinator; notification

On notification of an actual or threatened unauthorized discharge of oil, the coordinator shall take immediate action to assess the discharge and prevent, abate, or contain any pollution from the discharge.

<< LA R.S. 30:2462 >>

§ 2462. Administration of oil spill response and cleanup

A. The coordinator, in consultation with the Department of Environmental Quality, is authorized to administer this Chapter and direct all state discharge response and cleanup operations resulting from unauthorized discharges of oil in coastal waters, as directed by the governor or upon a declaration of emergency as declared by the governor. The Department of Environmental Quality, under the direction and control of the coordinator, is lead technical agency of the state for response to actual or threatened unauthorized discharges of oil and for cleanup of pollution from unauthorized discharges of oil.

B. All persons and all other officers, agencies, and subdivisions of the state shall carry out response and cleanup operations related to unauthorized discharges of oil subject to the authority granted to the coordinator under this Chapter.

C. In the event of an unauthorized discharge of oil nothing in this Chapter shall preclude the Department of Environmental Quality from, at the earliest time practicable, assuming response and cleanup duties for the discharge of oil pursuant to R.S. 30:2001 et seq., provided, however, the coordinator is notified within twenty-four hours.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

<< LA R.S. 30:2463 >>

§ 2463. Notification and response

A. Any person responsible for an unauthorized discharge of oil or the person in charge of any vessel or a terminal facility from or at which an unauthorized discharge of oil has occurred, as soon as that person has knowledge of the discharge, shall:

(1) Immediately notify the hotline of the discharge.

(2) Undertake all reasonable actions to abate, contain, and remove pollution from the discharge.

B. If the persons responsible or in charge are unknown or appear to the coordinator to be unwilling or unable to abate, contain, and remove pollution from an unauthorized discharge of oil in an adequate manner, the coordinator may abate, contain, and remove pollution from the discharge and may contract with and appoint agents who shall operate under the direction of the coordinator to abate, contain, or remove pollution from the discharge.

<< LA R.S. 30:2464 >>

§ 2464. Response coordination

A. In responding to actual or threatened unauthorized discharges of oil, the coordinator shall appoint a state-designated on-scene coordinator to act in the coordinator's absence in the event that the coordinator is unable to be physically present at the scene of the discharge.

B. If the unauthorized discharge of oil is subject to the national contingency plan, in responding to the discharge the coordinator or the state-designated on-scene coordinator shall act in accordance with the national contingency plan as is practicable under the circumstances and cooperate with the federal on-scene coordinator or other federal agency or official exercising authority under the national contingency plan.

C. The coordinator or the state-designated on-scene coordinator may act independently to the extent no federal on-scene coordinator or authorized agency or official of the federal government has assumed federal authority to oversee, coordinate, and direct response and cleanup operations.

D. The coordinator or the state-designated on-scene coordinator may act to protect any interests of the state that are not covered by the national contingency plan, and are consistent with the state or national contingency plans.

<< LA R.S. 30:2465 >>

§ 2465. Assistance and compensation

A. Subject to the coordinator's authority as authorized by this Chapter to determine otherwise, any person or discharge cleanup organization may assist in abating, containing, or removing pollution from any unauthorized discharge of oil.

B. Any person or discharge cleanup organization that renders assistance in abating, containing, or removing pollution from any unauthorized discharge of oil may receive compensation from the fund for removal costs, provided the coordinator approves compensation prior to the assistance being rendered. Prior approval for compensation may be provided for in the state oil spill contingency plan. The coordinator, on petition and for good cause shown, may waive the prior approval prerequisite.

<< LA R.S. 30:2466 >>

§ 2466. Qualified immunity for response actions

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 12 of 22

A. No action or omission taken by any person, including any discharge cleanup organization, to abate, contain, remove, clean up, or otherwise respond to pollution from a threatened or actual unauthorized discharge of oil or refined petroleum product, or to otherwise render care, assistance, or advice, whether such action or omission is taken voluntarily, or pursuant to or consistent with the national contingency plan or state oil spill contingency plan, or pursuant to or consistent with a response plan required under this Chapter, or pursuant to or consistent with the request of an authorized federal or state official, or pursuant to or consistent with the request of the responsible person, shall be construed as an admission of responsibility or liability for the discharge.

B. Notwithstanding any other provision of law, and except for the responsible person, no person, including any discharge cleanup organization, that voluntarily, pursuant to or consistent with the national contingency plan or the state oil spill contingency plan, or pursuant to or consistent with any response plan required under this Chapter, or pursuant to or consistent with the request or direction of an authorized federal or state official, or pursuant to or consistent with the the [2] request of the potentially responsible person, renders care, assistance, or advice in abating, containing, removing, cleaning up, or otherwise responding to pollution from an unauthorized discharge or threat of discharge of oil or refined petroleum products is liable for removal costs, damages, or civil penalties, whether under this Chapter or other laws of this state, resulting from acts or omissions committed in rendering such care, assistance, or advice. This Section shall not apply to actions for personal injury or wrongful death or for acts or omissions of gross negligence or willful misconduct. A party responsible for the initial discharge is liable for any removal costs or damages for which another person is relieved under this Subsection.

<< LA R.S. 30:2467 >>

### § 2467. Equipment and personnel

The coordinator may contract with any private person or entity for the use of equipment and personnel at places the coordinator determines may be necessary for response and prevention operations, in accordance with the state oil spill contingency plan. The coordinator may contract with any public agency, via interagency transfer of funds, to conduct baseline environmental, wetlands, water quality, habitat, wildlife, and natural resources assessments, or for any other matter deemed necessary to comply with the state and national oil spill contingency plans.

<< LA R.S. 30:2468 >>

### § 2468. Refusal to cooperate

A. If a responsible person, or a person or discharge cleanup organization under the control of a responsible person, participating in operations to abate, contain, and remove pollution from any unauthorized discharge of oil, reasonably believes that any directions or orders given by the coordinator or the coordinator's designee under this Chapter will unreasonably endanger public safety or natural resources or conflict with directions or orders of the federal on-scene coordinator, the party may refuse to comply with the direction or orders.

B. The party shall state at the time of refusal the reasons for his failure to comply. The party shall give the coordinator written notice of the reason or the reasons for the refusal within forty-eight hours of the refusal.

<< LA R.S. 30:2469 >>

### § 2469. Derelict vessels and structures

A. A person may not leave, abandon, or maintain any structure or vessel involved in an actual or threatened un-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 13 of 22
1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

authorized discharge of oil in coastal waters or on public or private lands or at a public or private port or dock, in a wrecked, derelict, or substantially dismantled condition, without the consent of the coordinator.

B. The coordinator may remove any vessel or structure described in Subsection A of this Section and may recover the costs of removal from the owner or operator of the vessel or structure. In the event that the owner or operator cannot be located, the coordinator may use the monies in the fund up to one million dollars in any fiscal year for the removal of any vessel or structure described in Subsection A of this Section.

C. The Department of Environmental Quality may petition the coordinator for the removal of any vessel or structure as described in Subsection A of this Section and the coordinator shall either comply or submit the matter to the interagency council for review.

<< LA R.S. 30:2470 >>

§ 2470. Registration of terminal facilities

A. A person may not operate or cause to be operated a terminal facility without a discharge prevention and response certificate issued pursuant to rules promulgated under this Chapter; however, such facility may be operated without a certificate for those purposes that do not involve the transfer or storage of oil.

B. (1) As a condition precedent to the issuance or renewal of a certificate, the coordinator shall require satisfactory evidence that:

(a) The applicant has implemented a discharge prevention and response plan consistent with state and federal plans and regulations for prevention of unauthorized discharges of oil and abatement, containment, and removal of pollution when such discharge occurs.

(b) The applicant can provide, directly or through membership or contract with a discharge cleanup organization, all required equipment and personnel to prevent, abate, contain, and remove pollution from an unauthorized discharge of oil as provided in the plan.

(2) A terminal facility response plan that complies with requirements under federal law and regulations for a terminal facility response plan satisfies the requirements of Subparagraph (1)(a) of this Subsection.

C. Notwithstanding other provisions of this Chapter, the owner of a facility shall qualify for a certificate if all persons leasing or operating the facility have received a certificate.

<< LA R.S. 30:2471 >>

§ 2471. General terms

A. Discharge prevention and response certificates are valid for a period of five years. The coordinator by rule shall require each registrant to report annually on the status of its discharge prevention and response plan and response capability.

B. The coordinator may review a certificate at any time there is a material change affecting the terminal facility's discharge prevention and response plan or response capability.

C. Certificates shall be issued subject to such terms and conditions as the coordinator may determine are reasonably necessary to carry out the purposes of this Chapter.

D. Certificates issued to any terminal facility shall take into account the vessels used to transport oil to or from the facility.

E. The coordinator, by rule, shall establish and require payment of a reasonable fee for processing applications for certificates. This fee is in addition to the fee levied under R.S. 30:2486 and must be reasonably related to the administrative costs of verifying data submitted pursuant to obtaining the certificates and reasonable inspections.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 14 of 22

LA LEGIS 7ES 7 (1991)                                                          Page 13
1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

<< LA R.S. 30:2472 >>

§ 2472. Information

Each applicant for a discharge prevention and response certificate shall submit information, in a form satisfactory to the coordinator, describing all of the following:

(1) The barrel or other measurement capacity of the terminal facility.

(2) The dimensions and barrel capacity of the largest vessel docking at or providing service from the terminal facility.

(3) The storage and transfer capacities and average daily throughput of the terminal facility.

(4) The types of oil stored, handled, or transferred at the terminal facility.

(5) Information related to implementation of the applicant's discharge prevention and response plan, including:

(a) All response equipment including but not limited to vehicles, vessels, pumps, skimmers, booms, bioremediation supplies and application devices, dispersants, chemicals, and communication devices to which the terminal facility has access, as well as the estimated time required to deploy the equipment after an unauthorized discharge.

(b) Personnel available to deploy and operate the response equipment, as well as the estimated time required to deploy the personnel after an unauthorized discharge.

(c) The measures employed to prevent unauthorized discharges.

(d) The terms of agreement and operation plan of any discharge cleanup organization to which the owner or operator of the terminal facility belongs.

(6) The source, nature of, and conditions of financial responsibility for removal costs and damages.

(7) Any other information necessary or appropriate to the review of a registrant's discharge prevention and response capabilities.

<< LA R.S. 30:2473 >>

§ 2473. Issuance

Upon compliance with the applicable provisions of this Chapter and upon payment of the certificate application fee, the coordinator shall issue the applicant a discharge prevention and response certificate covering the terminal facility.

<< LA R.S. 30:2474 >>

§ 2474. Suspension

If the coordinator determines that a registrant does not have a suitable or adequate discharge prevention and response plan or that the registrant's preventive measures or containment and cleanup capabilities are inadequate, the coordinator may, after an adjudicatory hearing pursuant to the regulatory authority provided in Part II of this Chapter, suspend the registrant's certificate until such time as the registrant complies with the requirements of this Chapter.

<< LA R.S. 30:2475 >>

§ 2475. Contingency plans for vessels and facilities

Every owner or operator covered by this Chapter shall provide to the coordinator the tank vessel and facility re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

sponse plans as provided in Section 4202(a)(5) of the Oil Pollution Act of 1990 (P.L. 101–380).

<< LA R.S. 30:2476 >>

§ 2476. Entry into port

In conjunction with the United States Coast Guard and prior to being granted entry into any port in this state, the person in charge of a vessel subject to the provisions of this Chapter may be required to report or show to the coordinator:

(1) Any unauthorized discharges from the vessel since leaving the last port.

(2) Any mechanical or operational problem on the vessel creating the possibility of an unauthorized discharge.

(3) Any denial of entry into any port during the current voyage of the vessel.

(4) That the vessel has a discharge prevention and response plan and the personnel and equipment to implement it as required under this Chapter.

(5) That the vessel has evidence of financial responsibility as required under this Chapter.

<< LA R.S. 30:2477 >>

§ 2477. Audits, inspections, and drills

The coordinator, in conjunction with the United States Coast Guard, may subject a vessel covered by this Chapter as a condition to being granted entry into any port in this state, or a terminal facility to an announced or unannounced audit, inspection, or drill to determine the discharge prevention and response capabilities of the terminal facility or vessels.

<< LA Prec. R.S. 30:2478 >>

PART V. LIABILITY OF PERSONS RESPONSIBLE

<< LA R.S. 30:2478 >>

§ 2478. Financial responsibility

A. Each owner or operator of a tank vessel with a capacity to carry ten thousand gallons or more of oil as fuel or cargo subject to the provisions of this Chapter operating within coastal waters or a terminal facility shall maintain and furnish evidence of their financial responsibility for costs and damages from unauthorized discharges of oil in accordance with the Oil Pollution Act of 1990 (P.L. 101–380).

B. If a tank vessel with a capacity to carry ten thousand gallons or more of oil as fuel or cargo covered by this Chapter or terminal facility is not required under federal law to establish and maintain evidence of financial responsibility, the owner or operator of that vessel or terminal facility shall establish and maintain evidence in a form prescribed by rules promulgated under this Chapter that such registrant or vessel has the ability to meet liability that may be incurred under this Chapter.

C. After an unauthorized discharge of oil, a vessel shall remain in the jurisdiction of the coordinator until the owner, operator, or person in charge has shown the coordinator evidence of financial responsibility. The coordinator may not detain the vessel longer than twelve hours after proving financial responsibility.

D. In addition to any other remedy or enforcement provision, the coordinator may suspend a registrant's discharge prevention and response certificate or may deny a vessel entry into any port in waters of the state for failure to comply with this Section.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

<< LA R.S. 30:2479 >>

§ 2479. Limitation of liability

A. The total of the liability of a responsible party for all damages and removal costs shall not exceed the following:

(1) For a tank vessel, the greater of:

(a) One thousand two hundred dollars per gross ton; or

(b)(i) In the case of a vessel greater than three thousand gross tons, ten million dollars.

(ii) In the case of a vessel of three thousand gross tons or less, two million dollars.

(2) For any other vessel, six hundred dollars per gross ton or five hundred thousand dollars, whichever is greater.

(3) For an offshore facility except a deepwater port, the total of all removal costs plus seventy-five million dollars.

(4)(i) For any onshore facility or a deepwater port, three hundred fifty million dollars; provided that, for onshore facilities, where the president of the United States, in accordance with Section 1004(d)(1) of the Oil Pollution Act of 1990 (P.L. 101–380), has established a limitation of less than three hundred fifty million dollars, the limitation of liability provided under this Paragraph shall be the limitation of liability established by the president of the United States.

(ii) Provided that for a deepwater port, where the secretary designated by Section 1004(d)(2)(C) of the Oil Pollution Act of 1990 (P.L. 101–380) has established a limitation of less than three hundred fifty million dollars, in accordance with Section 1004(d)(2)(C) of the Oil Pollution Act of 1990 (P.L. 101–380), the limitation of liability under this Paragraph shall be the limitation of liability established by the secretary.

B. (1) For the purposes of determining the responsible party and applying this Chapter, and except as provided in Paragraph (2) of this Subsection, a mobile offshore drilling unit which is being used as an offshore facility is deemed to be a tank vessel with respect to the discharge, or substantial threat of discharge, of oil on or above the surface of the water.

(2) To the extent that removal costs and damages from any incident described in Paragraph (1) of this Subsection exceed the amount for which a responsible party is liable, as that amount may be limited under R.S. 30:2479(A)(1), the mobile offshore drilling unit is deemed to be an offshore facility. For the purposes of applying R.S. 30:2479(A)(3) the amount specified by that provision shall be reduced by the amount for which the responsible party is liable under R.S. 30:2479(A)(1).

C. (1) The limits of liability provided for in this Section do not apply if the incident was primarily caused by gross negligence or willful misconduct of, or the violation of an applicable federal, state, or local safety, construction, or operating regulation by the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party, except where the sole contractual arrangement arises in connection with carriage by a common carrier by rail.

(2) The limits of liability provided for in this Section do not apply if the responsible party fails or refuses:

(a) To report the incident as required by law and the responsible party knows or has reason to know of the incident; or

(b) To provide all reasonable cooperation and assistance requested by a responsible state or federal official in connection with removal activities.

<< LA R.S. 30:2480 >>

§ 2480. Presumption of natural resources damages

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

A. In any action to recover natural resources damages, the amount of damages established by the coordinator in conjunction with state-designated natural resources trustees, according to the procedures and plans contained in the state oil spill contingency plan, shall create a rebuttable presumption of the amount of such damages.

B. The coordinator may establish the rebuttable presumption by submitting to the court a written report of the amounts computed or expended according to the state plan. The written report shall be admissible in evidence.

<< LA R.S. 30:2481 >>

### § 2481. Defenses

A person shall not be liable under the provisions of this Chapter if the discharge resulted solely from any of the following:

(1) An act of God, war, or terrorism.

(2) An act of government, either state, federal, or local.

(3) An unforeseeable occurrence exclusively occasioned by the violence of nature without the interference of any human act or omission.

(4) The willful misconduct or a negligent act or omission of a third party, other than an employee or agent of the person responsible or a third party whose conduct occurs in connection with a contractual relationship with the responsible person, unless the responsible person failed to exercise due care and take precautions against foreseeable conduct of the third party.

(5) Any combinations of Paragraphs (1), (2), and (3).

<< LA R.S. 30:2482 >>

### § 2482. Claims against third parties

If a responsible person alleges a defense under R.S. 30:2481 the responsible person shall pay all removal costs and damages; however, the responsible person shall be subrogated to any rights or cause of action belonging to those to whom such payment is made.

<< LA Prec.R.S. 30:2483 >>

PART VI. OIL SPILL CONTINGENCY FUND

<< LA R.S. 30:2483 >>

### § 2483. Oil Spill Contingency Fund

A. "Secretary" as used in this Part shall mean the secretary of the Department of Revenue and Taxation.

B. In order to fulfill the constitutional mandate of Article IX, Section 1 of the Constitution of Louisiana to protect, conserve, and replenish the natural resources of the state, the legislature hereby declares that sufficient funds shall be made available to the Oil Spill Contingency Fund, in order for prevention of and response to unauthorized discharges of oil.

C. The purpose of the fund is to immediately provide available funds for response to all threatened or actual unauthorized discharges of oil, for clean up of pollution from unauthorized discharges of oil, natural resources damages, damages sustained by any state agency or political subdivision, and removal costs from threatened, unauthorized discharges of oil.

D. All fees, taxes, penalties, judgments, reimbursements, charges, and federal funds collected pursuant to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

provisions of this Chapter shall be deposited immediately upon receipt into the state treasury.

E. After compliance with the requirements of Article VII, Section 9(B) of the Constitution of Louisiana relative to the Bond Security and Redemption Fund, and prior to monies being placed in the state general fund, an amount equal to that deposited, as required in Subsection D hereof, and monies appropriated by the legislature shall be credited to a special fund hereby created in the state treasury to be known as the "Oil Spill Contingency Fund". The monies in this fund shall be used solely as provided in this Section and only in the amounts appropriated by the legislature. All unexpended and unencumbered monies in this fund at the end of the fiscal year shall remain in the fund. The monies in this fund shall be invested by the state treasurer in the same manner as monies in the state general fund, and interest earned on the investment of these monies shall remain in the fund. The balance of the fund shall not exceed thirty million dollars, exclusive of all fees, other than all fees collected pursuant to R.S. 30:2485 and 2486, penalties, judgments, reimbursements, charges, interest, and federal funds collected pursuant to the provisions of this Chapter.

<< LA R.S. 30:2484 >>

§ 2484. Uses of fund

Money in the fund may be disbursed for the following purposes and no others:

(1) Administrative and personnel expenses of the office of the coordinator, not to exceed two hundred fifty thousand dollars in any fiscal year.

(2) Removal costs related to abatement and containment of actual or threatened unauthorized discharges of oil incidental to unauthorized discharges of hazardous substances.

(3) Removal costs and damages related to actual or threatened unauthorized discharges of oil as provided in this Chapter.

(4) Protection, assessment, restoration, rehabilitation, or replacement of or mitigation of damage to natural resources damaged by an unauthorized discharge of oil as provided in this Chapter.

(5) Grants, with the approval of the interagency council, for interagency contracts as provided in R.S. 30:2495, not to exceed seven hundred fifty thousand dollars in any fiscal year.

(6) Operating costs and contracts for response and prevention as provided in this Chapter not to exceed five hundred thousand dollars in any fiscal year.

(7) Other costs and damages authorized by this Chapter.

<< LA R.S. 30:2485 >>

§ 2485. Oil spill contingency fee

A. There is hereby imposed a fee on every person owning crude oil in a vessel at the time such crude oil is transferred to or from a vessel at a marine terminal within the state of Louisiana. This fee is in addition to all taxes or other fees levied on crude oil.

B. The operator of the marine terminal shall collect the fee from the owner of the crude oil and remit the fee to the secretary. The fee shall be imposed only once on the same crude oil. The fee shall be paid quarterly by the last day of the month following the calendar quarter in which liability for the fee is incurred. Fees collected during a quarter must be remitted to the state even if the fee is suspended during that quarter. For the expenses of collecting this fee, the operator is authorized to withhold one and one-half percent of the fees collected during each quarter provided that the amount due was not delinquent at the time of payment.

C. The fee levied by this Part shall be subject to the provisions of Chapter 18 of Subtitle II of Title 47 of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-2   Filed 07/08/11   Page 19 of 22

Louisiana Revised Statutes of 1950. The coordinator in conjunction with the secretary shall adopt rules for the collection and administration of the fee provided for in this Section.

<< LA R.S. 30:2486 >>

§ 2486. Determination of fee

A. Except as otherwise provided in this Section, the rate of the fee shall be two cents per barrel of crude oil until the state treasurer certifies that the balance in the fund has reached fifteen million dollars. The state treasurer shall certify to the secretary of the Department of Revenue and Taxation the date on which the balance in the fund equals fifteen million dollars. The fee shall not be collected or required to be paid on or after the first day of the second month following the treasurer's certification to the secretary.

B. If the balance in the fund falls below eight million dollars, the treasurer shall certify such fact to the secretary of the Department of Revenue and Taxation. On receiving the state treasurer's certification, the secretary of the Department of Revenue and Taxation shall resume collecting the fee until suspended in the manner provided in Subsection A of this Section.

C. Notwithstanding the provisions of Subsection A or B of this Section, the fee shall be levied at the rate of four cents per barrel if the state treasurer certifies to the secretary of the Department of Revenue and Taxation a written finding of the following facts:

(1) The balance in the fund is less than eight million dollars.

(2) An unauthorized discharge of oil in excess of one hundred thousand gallons has occurred within the previous thirty days as certified by the coordinator.

(3) Expenditures from the fund for damages and removal costs are reasonably expected by the coordinator and interagency council to deplete the fund by more than fifty percent of the balance of the fund, and certification of this expectation and the estimated damages and removal costs have been submitted to the state treasurer.

D. In the event of a certification to the secretary under Subsection C of this Section, the secretary shall collect the fee at the rate of four cents per barrel until the balance in the fund reaches fifteen million dollars. The state treasurer shall certify to the secretary the date on which the balance in the fund equals fifteen million dollars. The fee shall not be collected or required to be paid on or after the first day of the second month following the state treasurer's certification to the secretary.

E. For the purposes of this Section, the balance of the fund shall be determined by the cash balance of the fund at the end of each month or on the date of a finding under Subsection C of this Section.

<< LA R.S. 30:2487 >>

§ 2487. Administration of fee

A. The state treasurer shall notify the coordinator when the balance of the fund reaches fifteen million dollars or falls below eight million dollars as specified in R.S. 30:2486, whereupon the coordinator shall publish the finding in the Louisiana Register. In the event of any suspension or other reinstatement of the fee, and upon notice thereof, the coordinator shall publish the suspension or reinstatement in the Louisiana Register at least thirty days prior to the scheduled effective date of the suspension or reinstatement.

B. In the event of a declaration of emergency or as provided in R.S. 30:2486(B) and (C), the secretary shall reinstate the fee in accordance with rules promulgated for that purpose.

C. The fee levied under this Part shall be due and collected beginning on the first day of the first month beginning sixty days after the effective date of this Chapter.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1991 La. Sess. Law Serv. 1st Ex. Sess. Act 7 (H.B. 5) (WEST)

D. If refunds are determined to be due, they shall be paid only from the fund.

<< LA R.S. 30:2488 >>

§ 2488. Liability of the fund

A. The coordinator shall prescribe appropriate forms and requirements and by rule shall establish procedures for filing claims for compensation from the fund and for removal costs reimbursements to other state agencies from the fund.

B. The fund shall not be liable to any person for damage to equipment resulting from an oil spill discharge and which are compensable under the Fisherman's Gear Compensation Fund.

C. The fund shall be liable for the following removal costs and damages, provided that such are not recoverable under the federal Oil Pollution Act of 1990 (P.L. 101–380) and the claimant has exhausted all federal remedies:

(1) All proven, reasonable damages and removal costs incurred by state agencies or local governing authorities, authorized by this Chapter from a threatened or unauthorized discharge of oil.

(2) All natural resources damages from an unauthorized discharge of oil.

<< LA R.S. 30:2489 >>

§ 2489. Reimbursement of fund

A. The coordinator shall diligently pursue reimbursement to the fund of any sum expended or paid from the fund in accordance with the state and national oil spill contingency plans.

B. The coordinator shall recover for the use of the fund, either from persons responsible for the unauthorized discharge or otherwise liable, or from the federal Oil Spill Liability Trust Fund, all sums owed to or expended from the fund.

C. In any action to recover such sums, the coordinator shall submit to the court a written report of the amounts paid from or owed by the fund to claimants. The amounts paid from or owed by the fund to the claimants stated in the report shall create a rebuttable presumption of the amount of the fund's damages. The written report shall be admissible in evidence.

<< LA R.S. 30:2490 >>

§ 2490. Awards exceeding fund

A. In the event that the awards against the fund exceed the existing balance of the fund, the claimant or claimants shall be paid from the future income of the fund. Each claimant or claimants applying for reimbursement shall receive a pro rata share of all money available in the fund until the total amount of awards is paid.

B. The coordinator by rule may make exceptions to Subsection A of this Section in cases of hardship. Amounts collected by the fund from the prosecution of actions shall be used to satisfy the claims as to which such prosecutions relate to the extent unsatisfied.

<< LA Prec.R.S. 30:2491 >>

PART VII. REMEDIES AND ENFORCEMENT

<< LA R.S. 30:2491 >>

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

§ 2491. Exclusive remedies

A. When applicable, the limitations of liability and immunities provided in this Chapter shall be exclusive and shall supersede any other liability provisions provided by any other applicable state law. The provisions of this Chapter shall supersede, but not repeal, any conflicting laws of this state. Any conflicting applicable federal law shall take precedence over this Chapter.

B. Notwithstanding any other provision of this law, nothing herein shall be construed to preclude the Department of Wildlife and Fisheries from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to R.S. 56:40.1 et seq.

<< LA R.S. 30:2492 >>

§ 2492. Enforcement

Any violation of the provisions of this Chapter shall be subject to the enforcement, penalty, procedural, and adjudicatory provisions of this Subtitle. In addition to other factors required to be considered by the secretary in such proceedings, the coordinator shall submit his report regarding a violation of this Chapter to the secretary, and the secretary shall give due consideration to the report.

<< LA Prec.R.S. 30:2493 >>

PART VIII. MISCELLANEOUS PROVISIONS

<< LA R.S. 30:2493 >>

§ 2493. Federal funds

A. In implementing this Chapter, the coordinator to the greatest extent practicable shall employ federal funds unless federal funds will not be available in an adequate period of time.

B. All federal funds received by the state relating to removal costs for threatened or unauthorized discharges of oil under this Chapter shall be deposited in the fund.

<< LA R.S. 30:2494 >>

§ 2494. Interstate compacts

The coordinator may enter into agreements with other states consistent with and to further the purposes of this Chapter and may recommend legislation establishing interstate compacts consistent with federal law. The coordinator may also participate in initiatives to develop multistate and international standards and cooperation on unauthorized discharge prevention and response.

<< LA R.S. 30:2495 >>

§ 2495. Institutions of higher education

The coordinator by interagency contract, as budgeted by the interagency council, may provide grants to state institutions of higher education for research, testing, and development of discharge prevention and response technology, discharge response training, wildlife and natural resources protection, rescue, and rehabilitation, devel-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

opment of computer models to predict the movements and impacts of discharges, and other purposes consistent with and in furtherance of the purposes of this Chapter. Contracts or agreements relating to wildlife, aquatic resources, and habitats under the jurisdiction of the Department of Wildlife and Fisheries shall be made in coordination with that department. Contracts or agreements relating to wetlands and coastal resources under the jurisdiction of the Department of Natural Resources shall be made in coordination with that department. To the greatest extent possible, contracts shall be coordinated with studies being done by other state agencies, the federal government, or private industry to minimize duplication of efforts.

<< LA R.S. 30:2496 >>

§ 2496. Exclusive Authority

The provisions of this Chapter shall be the exclusive authority on oil spill prevention, response, removal, and liability and the limitations of liability.
Section 2. R.S. 36:4(M) is hereby enacted to read as follows:

<< LA R.S. 36:4 >>

§ 4. Structure of executive branch of state government

UNAFFECTED MATERIAL IS NOT DISPLAYED.

M. The office of the Louisiana oil spill coordinator (R.S. 30:2451 et seq.) shall be placed within the office of the governor and shall perform and exercise is [3] powers, duties, functions, and responsibilities as provided by law.
Section 3. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.

Approved April 23, 1991.

[1] In the third sentence of R.S. 30:2452(A) in Act 7, "accessibility" is as it appears in the enrolled bill.

[2] In R.S. 30:2466(B), "the the request" in the first sentence is as it appears in the enrolled bill.

[3] In R.S. 36:4(M) in Act 7, "exercise is" is as it appears in the enrolled bill.

LA LEGIS 1ES 7 (1991)

LA LEGIS 1ES 7 (1991)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.