# EXHIBIT C

**STATE OF LOUISIANA'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
<u>THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT</u>**

LA LEGIS 740 (1995) Page 1
1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

LOUISIANA 1995 SESSION LAW SERVICE
1995 Regular Session
0643

Additions and deletions are not identified in this document.
Vetoed provisions within tabular material are not displayed.

ACT NO. 740
S.B. No. 1310
OIL SPILL PREVENTION AND RESPONSE—TECHNICAL AMENDMENTS—OIL SPILL COORDINATOR; FUNDS; INVENTORY OF DISCHARGES, ETC.

AN ACT to amend and reenact R.S. 30:2452(A), 2454(5)(a), (c), and (d), 2456(B) and (D)(2), 2457(B), 2458(B)(2) and (4), 2459(A) and (D), 2462(A), 2469(B), 2480, 2484(5), (6), and (7), 2486(A) and (D), 2487(A), 2489(B), 2495, and 2496 and to enact R.S. 30:2454(30) and (31), 2469(E), 2484(8), (9), and (10) and 2489(D) and to repeal R.S. 30:2454(5)(e) and (f) and 2469.1, relative to the office of the oil spill coordinator; to provide for technical amendments; to provide for funds to be used by the office of conservation; to provide for inventory of threatened or actual discharges; to provide for appropriations from the fund; and to provide for related matters.

Be it enacted by the Legislature of Louisiana:

Section 1. R.S. 30:2452(A), 2454(5)(a), (c), and (d), 2456(B) and (D)(2), 2457(B), 2458(B)(2) and (4), 2459(A) and (D), 2462(A), 2469(B), 2480, 2484(5), (6), and (7), 2486(A) and (D), 2487(A), 2489(B), 2495, and 2496 are hereby amended and reenacted and R.S. 30:2454(30) and (31), 2469(E), 2484(8), (9), and (10) and 2489(D) are hereby enacted to read as follows:

<< LA R.S. 30:2452 >>

§ 2452. Legislative findings

A. Louisiana is subject to greater exposure to a major oil spill disaster than any other state. This is the result of the large volumes of stored oil, numerous production platforms and miles of pipelines, large numbers of inland barges, and heavy tanker traffic, including the Louisiana Offshore Oil Port which receives fifteen percent of the oil imported into the United States. This exposure, coupled with the limited adequate highway access to the coast and remote inland areas for rapid transport of oil spill equipment and few areas suitable for staging facilities, creates great potential for a major oil spill event and its consequences in a state which has twenty-six percent of the nation's commercial fisheries, has the nation's highest marine recreational fishery catches, leads the nation in fur production and the world in alligator production, and has more overwintering waterfowl than any other state. Commercial and recreational marine fisheries are concentrated within a few miles inshore and offshore of the coastline where oil from a major coastal spill would concentrate.

* * *

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-3   Filed 07/08/11   Page 3 of 10

<< LA R.S. 30:2454 >>

§ 2454. Definitions

In this Chapter:

* * *

(5) "Damages" means and includes any of the following:
(a) Natural resources—damages for injury to, destruction of, or loss of natural resources as defined in this Section, include the reasonable and any direct, documented cost to assess, restore, rehabilitate, or replace injured natural resources, or to mitigate further injury, and their diminution in value after such restoration, rehabilitation, replacement, or mitigation, which shall be recoverable by the state of Louisiana.

* * *

(c) Revenues—damages equal to the net loss of taxes, royalties, rents, fees, or net profit share due to the injury, destruction, or loss of immovable or corporeal movable property, or natural resources, which shall be recoverable by the state of Louisiana.
(d) Public services—damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, recoverable by the state of Louisiana or any of its political subdivisions.

* * *

(30) "Comprehensive assessment method" means a method including sampling, modeling, and other appropriate scientific procedures to make a reasonable and rational determination of injury and cost-effective restoration alternatives to natural resources resulting from an unauthorized discharge of oil.
(31) "Negotiated assessment" means a restoration plan agreed upon by the coordinator, in consultation and agreement with any other state trustees, and the responsible party.

* * *

<< LA R.S. 30:2456 >>

§ 2456. General powers and duties of the coordinator

* * *

B. The coordinator, in consultation with the interagency council, as provided in this Chapter, shall adopt and promulgate rules necessary and convenient to the administration of this Chapter in accordance with the Louisiana Administrative Procedure Act.

* * *

D.   * * *
(2) The coordinator may enter into any contracts for the purchase of goods or for services in accordance with the Louisiana Procurement Code and in consultation with the interagency council, including the emergency procurement procedures provided in R.S. 39:1598.

* * *

<< LA R.S. 30:2457 >>

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

§ 2457. Regulatory authority; coordinator

\* \* \*

B. The coordinator may establish as a prerequisite for certification of any discharge cleanup organization, other than the Marine Spill Response Corporation and any discharge cleanup organization operated for profit or that has multi-state response jurisdiction, that the organization maintain on its governing body a minimum of two representatives from local governments within the area served by the organization.

\* \* \*

<< LA R.S. 30:2458 >>

§ 2458. Interagency council

\* \* \*

B. The council shall consider matters relating to the coordination of state prevention, response, and cleanup operations related to unauthorized discharges of oil, including but not limited to:

\* \* \*

(2) Assisting the coordinator in preparing an annual work plan, identifying state agency needs which must be met in order to comply with the state oil spill contingency plan.

\* \* \*

(4) Assisting the coordinator in preparing a budget necessary to implement the provisions of this Chapter.

\* \* \*

<< LA R.S. 30:2459 >>

§ 2459. State oil spill contingency plan

A. The coordinator shall develop and distribute to the public a state oil spill contingency plan of response for actual or threatened unauthorized discharges of oil and clean up of pollution from such discharges. In addition, the Department of Environmental Quality, in cooperation with the coordinator, shall recommend provisions of the plan relating to unauthorized discharges of oil. The Department of Wildlife and Fisheries, in cooperation with the coordinator, shall recommend provisions of the plan providing for protection, rescue, and rehabilitation of aquatic life and wildlife and appropriate habitats on which they depend under its jurisdiction. The Department of Natural Resources, in cooperation with the coordinator, shall recommend provisions of the plan providing for protection and rehabilitation of appropriate resources under its jurisdiction. The Department of Public Safety and Corrections, in cooperation with the coordinator, shall recommend provisions of the plan providing for emergency response coordination to protect life and property, excluding prevention, abatement, containment, and removal of pollution from an unauthorized discharge.

\* \* \*

D. Prior to adopting the state oil spill contingency plan, the coordinator shall adopt a fully delineated inland boundary for coastal waters as defined in this Chapter, which boundary shall be based upon data provided by, including but not limited to the United States Army Corps of Engineers, United States Department of the Interior, Minerals Management Service, the Louisiana Department of Natural Resources, and the oil and gas industry.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LA LEGIS 740 (1995) Page 4
1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

Case 2:10-md-02179-CJB-DPC   Document 3213-3   Filed 07/08/11   Page 5 of 10

The coordinator shall be authorized to amend the boundary by rule as conditions may warrant. The boundary, as adopted, shall be clearly marked on large scale maps or charts, official copies of which shall be available for public inspection in the office of coastal restoration and management in the Department of Natural Resources, in each agency comprising the interagency council, and in the parish seat of each parish located within the boundary.

\* \* \*

<< LA R.S. 30:2462 >>

§ 2462. Administration of oil spill response and cleanup

A. The coordinator, in consultation with the Department of Environmental Quality, is authorized to administer this Chapter and direct all state discharge response and cleanup operations resulting from unauthorized discharges of oil or threatened unauthorized discharges of oil in coastal waters, the land, or any other waters of Louisiana as directed by the governor or upon a declaration of emergency as declared by the governor. The Department of Environmental Quality, under the direction and control of the coordinator, is lead technical agency of the state for response to actual or threatened unauthorized discharges of oil and for cleanup of pollution from unauthorized discharges of oil.

\* \* \*

<< LA R.S. 30:2469 >>

§ 2469. Derelict vessels and structures

\* \* \*

B. The coordinator shall locate, identify, mark, and analyze the contents of any abandoned or derelict vessels or structures found within the state. If the vessel or structure contains oil or oil based materials he shall establish a priority for removal of those vessels and structures on the basis of highest risk to human health and safety, the environment, and wildlife habitat. The coordinator shall compile a computerized list of all vessels or structures indicating the location, identity, and contents of each.

\* \* \*

E. The office of conservation in the Department of Natural Resources may petition the coordinator to abate an unauthorized discharge or the threat of a discharge from a facility or structure which the secretary certifies to be involved in an actual discharge or poses a threat of a discharge and for which the secretary certifies that the office of conservation cannot immediately locate a viable responsible party. Upon approval of the department's petition the coordinator shall reimburse the office of conservation for all expenses incurred, within the limits of provisions of this Section, and he shall seek reimbursement for the fund as provided elsewhere in this Chapter. The coordinator shall use monies in the fund for this purpose, which shall not exceed two million dollars in any fiscal year.

\* \* \*

<< LA R.S. 30:2480 >>

§ 2480. Natural resource damages

A. In any action to recover natural resources damages, the coordinator, in consultation with any other state trust-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LA LEGIS 740 (1995) Page 5
1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

Case 2:10-md-02179-CJB-DPC   Document 3213-3   Filed 07/08/11   Page 6 of 10

ees, shall make the determination whether to assess natural resource damages and the amount of damages according to the procedures and plans contained in the state oil spill contingency plan, and such determination shall create a rebuttable presumption of the amount of such damages.

B. The coordinator may establish the rebuttable presumption by submitting to the court a written report of the damages computed or state funds expended according to the state plan. The written report shall be admissible in evidence, but the facts surrounding the cause of the unauthorized discharge of oil as set out in the report shall be subject to de novo review.

C. (1) The coordinator, in consultation with the state trustees, shall develop an inventory that identifies and catalogs the physical locations, the seasonal variations in location, and the current condition of natural resources; provides for data collection related to coastal processes, abandoned pits, facilities, sumps, reservoirs and oil spills; and identifies the recreational and commercial use areas that are most likely to suffer injury from an unauthorized discharge of oil. The inventory shall be completed by September 1, 1998; and shall be incorporated into the state oil spill contingency plan after public review and comment.

(2)(a) The physical locations surveyed for the inventory of natural resources shall consist of coastal waters as defined in this Chapter and depicted on the official state inland boundary map for coastal waters.

(b) The inventory shall initially concentrate on areas exhibiting a high probability for oil spills.

(3) The current condition of selected natural resources inventoried and cataloged shall be determined by, at a minimum, a baseline sampling and analysis of current levels of constituent substances selected after considering the types of oil most frequently transported through and stored near coastal waters.

(4)(a) The inventory shall consist of Phase I and Phase II. In Phase I of the inventory, the coordinator shall define and coordinate the formulation of the Oil Spill Technical Assistance Program which shall consist of a management and implementation plan for coastal waters as defined in this Chapter. The management and implementation plan shall provide for data gathering techniques, monitoring protocols, maintaining the state inland coastal waters boundary map and data management during the actual inventory and during any response and natural resources damages assessment phase of an unauthorized discharge of oil. The coordinator shall solicit input from the state trustees and other interested parties. Phase I shall be completed by September 1, 1996.

(b) Phase II of the inventory shall consist of the coordinator retaining a manager and program staff within the office of the coordinator for the Oil Spill Technical Assistance Program. In Phase II the coordinator, in consultation with the trustees, shall conduct and maintain an environmental baseline inventory. The environmental baseline inventory shall be developed and maintained in such a manner that it will provide the coordinator with the technical data regarding the coastal waters before, during and after an unauthorized discharge of oil. This data shall also be available to the trustees, other agencies of the state and to the potentially responsible party within twenty-four hours after being collected.

(5) The coordinator shall adopt administrative procedures and protocols for the assessment of natural resource damages from an unauthorized discharge of oil in accordance with the Louisiana Administrative Procedure Act. As developed with the trustees and other interested parties, the procedures and protocols shall require the trustees to assess natural resource damages by considering the unique characteristics of the spill incident and the location of the natural resources affected. These procedures and protocols shall be incorporated by reference in the state oil spill contingency plan by September 1, 1996.

(6) The administrative procedures and protocols shall include provisions which address the following:

(a) Notification by the coordinator to all trustees in the event of an unauthorized discharge of oil.

(b) Coordination with and among trustees, spill response agencies, potentially responsible parties, experts in science and economics, and the public.

(c) Participation in all stages of the assessment process by the potentially responsible party, as is consistent with trustee responsibilities.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

LA LEGIS 740 (1995) Page 6
1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

Case 2:10-md-02179-CJB-DPC   Document 3213-3   Filed 07/08/11   Page 7 of 10

(7) The administrative procedures and protocols shall also require the trustees to do the following:

(a) Assist the on-scene coordinator, during spill response activities and prior to the time that the state on-scene coordinator determines that the cleanup is complete, in predicting the impact of the oil and in devising the most effective methods of protection for the natural resources at risk.

(b) Identify appropriate sampling and data collection techniques to efficiently determine the impact on natural resources of the unauthorized discharge of oil.

(c) Initiate, within twenty-four hours after approval for access to the site by the on-scene coordinator, an actual field investigation which may include sampling and data collection; the protocols shall require that the responsible party and the trustees be given, on request, split samples and copies of each other's photographs and videos utilized in assessing the impact of the unauthorized discharge of oil.

(d) Establish plans, including alternatives that are cost-effective and efficient, including natural recovery, to satisfy the goal of restoring, rehabilitation, replacing, and/or acquiring the equivalent of the injured natural resources.

(8)(a) The administrative procedures and protocols shall also include the following types of assessments procedures and deadlines for their completion:

(i) An expedited assessment procedure which may be used in situations in which the spill has limited observable mortality and restoration activities can be speedily initiated and/or in which the quantity of oil discharge does not exceed one thousand gallons; the purpose of utilizing the expedited assessment procedure is to allow prompt initiation of restoration, rehabilitation, replacement, and/or acquisition of an equivalent natural resource without lengthy analysis of the impact on affected natural resources; this procedure shall, at a minimum, require that the trustees consider the following items:

(aa) the quantity and quality of oil discharged;

(bb) the time period during which coastal waters are affected by the oil and the physical extent of the impact;

(cc) the condition of the natural resources prior to the unauthorized discharge of oil; and

(dd) the actual costs of restoring, rehabilitation, and/or acquiring the equivalent of the injured natural resources;

(ii) a comprehensive assessment procedure for use in situations in which expedited or negotiated assessment procedures are not appropriate; and

(iii) any other assessment method agreed upon between the responsible person and the trustees, consistent with their public trust duties.

(b) The coordinator, in consultation with the trustees, shall determine, within sixty days of the determination by the on-scene coordinator that the cleanup is complete, whether:

(i) Action to restore, rehabilitate, or acquire an equivalent natural resource is required;

(ii) An expedited assessment which may include early commencement of restoration, rehabilitation, replacement, and/or acquisition activities, may be required; and

(iii) A comprehensive assessment is necessary.

(9) At any time the coordinator, in consultation and with the agreement of the state trustees, deems appropriate, the coordinator may enter into a negotiated assessment.

D. The trustees may petition the coordinator for a longer period of time to make the determinations under Subsection C of this Section by showing that the full impact of the discharge on the affected natural resources cannot be determined in sixty days.

E. The coordinator shall complete the comprehensive assessment procedure within twenty months of the date of the determination by the state on-scene coordinator that the cleanup is complete. The trustees may petition the coordinator for a longer period of time to complete the assessment by showing that the full impact of the discharge on the affected natural resources cannot be determined in twenty months.

F. Any assessment generated by the coordinator shall use the protocols and the procedures implemented pursu-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ant to this Chapter and shall be reasonable and have a rational connection to the costs of conducting the assessment and of restoring, rehabilitating, replacing and/or acquiring the equivalent of the injured natural resources. The coordinator shall ensure that the cost of any restoration, rehabilitation, replacement, or acquisition project shall not be disproportionate to the value of the natural resource before the injury. The coordinator shall utilize the most cost-effective method to achieve restoration, rehabilitation, replacement, or acquisition of an equivalent resource. Furthermore, the coordinator shall take into account the quality of the actions undertaken by the responsible party in response to the spill incident, including but not limited to containment and removal actions and protection and preservation of natural resources.

G. The potentially responsible party shall make full payment or initiate restoration, rehabilitation, replacement, or mitigation of damages to natural resources within sixty days of the completion of the assessment by the coordinator or, if mediation pursuant to this Subsection is conducted, within sixty days of the conclusion of the mediation. To facilitate an expedited recovery of funds for natural resource restoration and to assist the coordinator and the responsible party in the settlement of disputed natural resource damage assessments at their discretion and at any time, all disputed natural resource damage assessments shall be referred to mediation as a prerequisite to the jurisdiction of any court. Results of the mediation and any settlement offers tendered during the mediation shall be treated as settlement negotiations for the purposes of admissibility in a court of law. Either the coordinator or the potentially responsible person may initiate the mediation process, after an assessment has been issued, by giving written notice to the coordinator within forty-five days of the date all assessment documents are received, who shall in turn give written notice to all parties. One mediator shall be chosen by the coordinator and one mediator shall be chosen by the responsible parties. Within forty-five days of the receipt of the assessment from the trustees, the mediators shall be designated. The mediation shall end no later than one hundred thirty-five days after the receipt of the assessment from the coordinator.

H. For the purposes of this Section, mediation shall consist of a minimum of three meetings whereby the mediators seek to facilitate a consensus decision by trustees and the potentially responsible party concerning all aspects of the assessment.

I. Any assessment issued by the coordinator shall be subject to a public hearing and comment period not to exceed ten working days.

\* \* \*

<< LA R.S. 30:2484 >>

§ 2484. Uses of fund

Money in the fund may be disbursed for the following purposes and no others:

\* \* \*

(5) Grants, with the approval of the interagency council, for interagency contracts as provided in R.S. 30:2495, not to exceed seven hundred fifty thousand dollars in any fiscal year. However, in Fiscal Year 96–97 and each fiscal year thereafter until Fiscal Year 2000–2001 the monies expended from the fund for grants pursuant to this Subsection shall be decreased by one hundred thousand dollars each fiscal year whereupon funding for such grants shall cease in its entirety.

(6) Beginning in Fiscal Year 96–97 and each fiscal year thereafter, until Fiscal Year 1999–2000 the monies expended from the fund for the Oil Spill Technical Assistance Program established in R.S. 30:2480(C)(4) shall be increased by one hundred thousand dollars each fiscal year whereupon funding for the Oil Spill Technical Assistance Program shall reach five hundred thousand dollars during Fiscal Year 2000–2001.

(7) Operating costs and contracts for response and prevention as provided in this Chapter not to exceed five hun-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

dred thousand dollars in any fiscal year.
(8) Other costs and damages authorized by this Chapter.
(9) Any state agency or political subdivision seeking an appropriation from the fund or proposing expenditures utilizing money from the fund must notify the coordinator in writing before submitting the appropriation request to the legislature.
(10) An inventory under R.S. 30:2480, to be completed by September 1, 1998, in an amount not to exceed eight million dollars in total and in an amount not to exceed two and one-quarter million dollars, in total, in any fiscal year.

* * *

<< LA R.S. 30:2486 >>

§ 2486. Determination of fee

A. Except as otherwise provided in this Section, the rate of the fee shall be two cents per barrel of crude oil until the state treasurer certifies that the balance in the fund has reached ten million dollars. The state treasurer shall certify to the secretary of the Department of Revenue and Taxation the date on which the balance in the fund equals ten million dollars. The fee shall not be collected or required to be paid on or after the first day of the second month following the treasurer's certification to the secretary.

* * *

D. In the event of a certification to the secretary under Subsection C of this Section, the secretary shall collect the fee at the rate of four cents per barrel until the balance in the fund reaches ten million dollars. The state treasurer shall certify to the secretary the date on which the balance in the fund equals ten million dollars. The fee shall not be collected or required to be paid on or after the first day of the second month following the state treasurer's certification to the secretary.

* * *

<< LA R.S. 30:2487 >>

§ 2487. Administration of fee

A. The state treasurer shall notify the coordinator when the balance of the fund reaches ten million dollars or falls below eight million dollars as specified in R.S. 30:2486, whereupon the coordinator shall publish the finding in the Louisiana Register. In the event of any suspension or other reinstatement of the fee, and upon notice thereof, the coordinator shall publish the suspension or reinstatement in the Louisiana Register at least thirty days prior to the scheduled effective date of the suspension or reinstatement.

* * *

<< LA R.S. 30:2489 >>

§ 2489. Reimbursement of fund

* * *

B. The coordinator shall recover for the use of the fund, either from persons responsible for the unauthorized discharge or otherwise liable, or from the federal Oil Spill Liability Trust Fund, all sums owed to or expended from the fund. The coordinator, on behalf of the state of Louisiana and the trustees, shall seek reimbursement

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 3213-3   Filed 07/08/11   Page 10 of 10

LA LEGIS 740 (1995) Page 9
1995 La. Sess. Law Serv. Act 740 (S.B. 1310) (WEST)

from the federal fund for damages to natural resources in excess of the liability limits prescribed by this Act. If that request is denied or additional money is required following receipt of the federal money, the coordinator has the authority to pay the requested reimbursement from the fund for a period of two years from the date the federal fund grants or denies the request for reimbursement.

\* \* \*

D. The coordinator shall ensure that there will be no double recovery of damages or response costs.

\* \* \*

<< LA R.S. 30:2495 >>

§ 2495. Institutions of higher education

The coordinator by interagency contract may provide grants to state institutions of higher education for research, testing, and development of discharge prevention and response technology, discharge response training, wildlife and natural resources protection, rescue, and rehabilitation, development of computer models to predict the movements and impacts of discharges, and other purposes consistent with and in furtherance of the purposes of this Chapter. Contracts or agreements relating to wildlife, aquatic resources, and habitats under the jurisdiction of the Department of Wildlife and Fisheries shall be made in coordination with that department. Contracts or agreements relating to wetlands and coastal resources under the jurisdiction of the Department of Natural Resources shall be made in coordination with that department. To the greatest extent possible, contracts shall be coordinated with studies being done by other state agencies, the federal government, or private industry to minimize duplication of efforts.

<< LA R.S. 30:2496 >>

§ 2496. Exclusive Authority

The provisions of this Chapter shall be the exclusive authority on oil spill prevention, response, removal, and the limitations of liability.

Section 2. R.S. 30:2454(5)(e) and (f) and 2469.1 are hereby specifically repealed in their entirely. [1]

Approved June 22, 1995.

[1] The language "repealed in their entirely" is as it appears in the enrolled bill (Acts 1995, No. 740).

LA LEGIS 740 (1995)

LA LEGIS 740 (1995)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.