**EXHIBIT F**

I. RFP #9: Cameron has produced the Cameron Drilling & Production Systems Quality Management System Manual, Blowout Preventers & Related Equipment Quality Plans, Quality Inspection Procedures, as well as Quality Plans associated with the bill of materials for the Deepwater Horizon.

II. RFP #23: Cameron has produced Engineering Bulletin 852D, which describes and compares the models in its Shear Ram Product Line, as well as catalogs of BOP components and replacement parts.

III. RFP #28: Cameron has produced its Engineering Reports, which would describe such tests. For example, CAM_CIV_0356133 describes temperature testing of Shearing Blind Ram Packers.

IV. RFP #29: Cameron stands on its objection to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Asking for Board of Director materials for any "concern" applicable to subsea blowout preventers is unlikely to yield admissible evidence, particularly considering that Cameron has produced its Field Performance Reports regarding a number of components, which report non-conformances and performance issues for Cameron products which occur or are discovered in the field.

V. RFP #31: Cameron stands on its objection to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Asking for anything exchanged with the government about subsea blowout preventers, regardless of subject matter, goes far afield from the issues that might be relevant to this litigation.

VI. RFP #32: This request asks for documents evidencing a model or computer simulation which performed a risk assessment that predicted the need for a blind-shear device to cut through various materials in the wellbore. Cameron is aware of no model or simulation that might "predict the need . . . to cut through various materials." However, Cameron has produced Engineering Bulletin 702D, which provides the method by which Cameron assists customers in determining what materials can be sheared by Cameron equipment. Cameron has also produced a number of Engineering Reports detailing the results of shear tests on various materials in the wellbore.

VII. RFP #35: This asks for warnings by Cameron regarding limitations of blind shears to cut through a given material. Please see Cameron's discussion, *supra*, of RFP #32.

VIII. RFP #36: This request asks for procedures for testing subsea BOPs and their components. While Cameron objects to producing records for all subsea BOPs and all components, it has produced a number of testing documents that would be relevant to the Deepwater Horizon equipment, including those related to shearing blind rams, solenoid valves, accumulators, fail safe kits, and the deadman/AMF system.

IX. RFP #40: As described in the body of the letter, a number of Safety Alerts, Product Advisories, and Engineering Bulletins regarding a number of different components have been produced.

X. RFP #41: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular subsea BOP or any particular component.

XI. RFP #43: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular subsea BOP or any particular component.

XII. RFP #44: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular subsea BOP or any particular component.

XIII. RFP #49: This request asks for warnings, bulletins, updates, etc. for the Deepwater Horizon Blowout Preventer. Cameron has produced such documentation.

XIV. RFP #61: Plaintiffs requested risk studies/cost-benefit analyses regarding the deadman and emergency disconnect systems in the Deepwater Horizon Blowout Preventer. Cameron has produced a *Risk Assessment of the Deepwater Horizon Blowout Preventer (BOP Control System)* from April 2000, which contains a Fault Tree analysis for failure of the Emergency Disconnect System. In addition, a *HAZOP of Cameron MUX System* was conducted in 1999, and related documents have been produced. Cameron believes it has produced all studies and analyses for the Deepwater Horizon Blowout Preventer, in full satisfaction of this request.

XV. RFP #64: Cameron stands on its overbreadth objection to this request, which asks for communications with Transocean, regardless of subject matter.

XVI. RFP #66: Cameron stands on its overbreadth objection to this request, which asks for documents provided to various entities, regardless of subject matter. Cameron has agreed to produce documents provided to those entities that relate to the Deepwater Horizon.

XVII. RFP #68: Plaintiffs have requested communications with purchasers/users of the Deepwater Horizon BOP regarding changes to subsea BOPs. Like plaintiffs' other requests, this request spans well over a decade and apparently encompasses every one of the thousands of components that comprise a BOP stack. Cameron stands on its overbreadth objection, but notes that it has produced documentation regarding changes made and contemplated for the Deepwater Horizon, as well as communications regarding maintenance/repairs/changes to the Deepwater Horizon BOP.

XVIII. RFP #70: Cameron has produced Engineering Bulletin 702D, which provides the method by which Cameron assists customers in determining what materials can be sheared by Cameron equipment. Cameron has also produced a number of Engineering Reports detailing the results of shear tests on various materials in the wellbore.

XIX. RFP #71: Cameron has produced Engineering Bulletin 702D, which provides the method by which Cameron assists customers in determining what materials can be sheared by Cameron equipment. Cameron has also produced a number of Engineering Reports detailing the results of shear tests on various materials in the wellbore.

XX. RFP #75: Cameron has produced communications with BP, Transocean, and their predecessors regarding accumulators on the Deepwater Horizon, and does not believe it has further responsive materials.

XXI. RFP #85: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular issues or any particular components. In addition, Cameron has produced its Field Performance

|          |          |
|----------|----------|
|          | Reports regarding a number of components, which report non-conformances and performance issues for Cameron products which occur or are discovered in the field. |
| XXII.    | RFP #86: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular issues or any particular components. Cameron's Engineering Bulletins, Product Advisories, Safety Alerts, and marketing materials that have been produced are responsive to this request generally, as well as information specific to the Deepwater Horizon. |
| XXIII.   | RFP #88: Cameron stands on its overbreadth objection to this request, which asks for communications with Transocean, regardless of subject matter. |
| XXIV.    | RFP #89: This is one of a series of requests asking for support or confirmation of certain statements made by Cameron CEO Jack Moore. Cameron has produced documents in which Cameron recommends maintenance of blowout preventers and replacement of mechanical rubber elements, thus supporting Mr. Moore's statement that "You have to maintain it . . . You have to replace the mechanical and rubber elements." |
| XXV.     | RFP #90: This is one of a series of requests asking for support or confirmation of certain statements made by Cameron CEO Jack Moore. Cameron has produced documents indicating the reliable performance of Cameron equipment, including CAM_CIV_0309455-0309456. Cameron has also produced a *Risk Assessment of the Deepwater Horizon Blowout Preventer (BOP Control System)* from April 2000, which addresses reliability issues. |
| XXVI.    | RFP #91: This is one of a series of requests asking for support or confirmation of certain statements made by Cameron CEO Jack Moore. As described in the body of the letter, a number of Safety Alerts, Product Advisories, and Engineering Bulletins regarding a number of different components have been produced, regardless of whether related to the Deepwater Horizon. |
| XXVII.   | RFP #93: This is one of a series of requests asking for support or confirmation of certain statements made by Cameron CEO Jack Moore. Cameron has produced Engineering Bulletin 702D, which provides the method by which Cameron assists customers in determining what materials can be sheared by Cameron equipment. Cameron has also produced a number of Engineering Reports detailing the results of shear tests on various materials in the wellbore. |
| XXVIII.  | RFP #94: This is one of a series of requests asking for support or confirmation of certain statements made by Cameron CEO Jack Moore. Cameron has produced documentation regarding its Emergency, Back-up and Deepwater Safety Systems, which describes the deadman as "[a] system to automatically close the shear rams when there is catastrophic loss of the riser systems." |
| XXIX.    | RFP #95: This is one of a series of requests asking for post-incident actions related to a statement made by Cameron CEO Jack Moore. Cameron does not believe it has any non-privileged responsive documents. |
| XXX.     | RFP #96: Cameron stands on its overbreadth objection to this request, which is not limited to any particular issue, modifications, BOP, or component that is in any way relevant to this litigation. |
| XXXI.    | RFP #103: Documents responsive to the request have been produced. |
| XXXII.   | RFP #104: Diagrams of the Deepwater Horizon BOP have been produced. Cameron stands on its objections to being asked to "indicat[e]" items on those diagrams. |

XXXIII. RFP #107: Cameron has produced non-privileged responsive documents.
XXXIV. RFP #108: Cameron stands on its overbreadth objection to this request, which asks for documents provided to various entities, regardless of subject matter. Cameron has agreed to produce documents provided to those entities that relate to the Deepwater Horizon.
XXXV. RFP #109: Cameron has produced non-privileged responsive documents.
XXXVI. RFP #110: Cameron stands on its overbreadth objection to this request, which is not limited to any particular subsea BOP or any particular component.
XXXVII. RFP #111: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular subsea BOP or any particular component.
XXXVIII. RFP #117: Documents responsive to the request have been produced.
XXXIX. RFP #118: Cameron stands on its overbreadth objection to this request, which is not limited to any particular subsea BOP or any particular component.
XL. RFP #121: This request is overbroad, asking for information regarding alternative designs or design modifications considered, discussed, or analyzed over more than a decade for any of the thousands of component parts in a BOP stack. Cameron's Engineering Bulletins, Product Advisories, Safety Alerts, and marketing materials have been produced that are responsive to this request generally, as well as information specific to the Deepwater Horizon.
XLI. Interrogatory #2: This interrogatory seeks information regarding "well control risks" considered by Cameron in designing the Deepwater Horizon BOP. Cameron has produced documents reflecting issues regarding the configuration and design of the Deepwater Horizon BOP, including communications beginning in 1999 among RB Falcon (Transocean's predecessor), Vastar (BP's predecessor), and Cameron regarding the configuration and design to be used. Cameron has produced a *Risk Assessment of the Deepwater Horizon Blowout Preventer (BOP Control System)* from April 2000, which contains a Fault Tree analysis for failure of well control operations.
XLII. Interrogatory #3: Cameron stands on its overbreadth objection to this request, which is not limited to any particular subsea BOP or any particular component. Cameron has produced a *Risk Assessment of the Deepwater Horizon Blowout Preventer (BOP Control System)* from April 2000, which contains a Fault Tree analysis for failure of the Emergency Disconnect System. In addition, a *HAZOP of Cameron MUX System* was conducted in 1999, and related documents have been produced.
XLIII. Interrogatory #4: Cameron stands on its overbreadth objection to this request, which is not limited to any particular subsea BOP or any particular component. Cameron has produced a *Risk Assessment of the Deepwater Horizon Blowout Preventer (BOP Control System)* from April 2000, which contains a Fault Tree analysis for failure of the Emergency Disconnect System. In addition, a *HAZOP of Cameron MUX System* was conducted in 1999, and related documents have been produced.
XLIV. Interrogatory #6: Cameron stands on its overbreadth objection to this request, which spans from 1997 to the "current date," and is not limited to any particular component. Cameron has produced documents reflecting issues regarding the configuration and design of the Deepwater Horizon BOP, including communications beginning in 1999 among RB Falcon (Transocean's predecessor), Vastar (BP's predecessor), and

|       |       |
|-------|-------|
| | Cameron regarding the configuration and design to be used. Cameron has also produced documentation regarding changes made and contemplated for the Deepwater Horizon, as well as communications regarding maintenance/repairs/changes to the Deepwater Horizon BOP. |
| XLV. | Interrogatory #7: Cameron stands on its overbreadth objection to this request, which is not limited to any particular component or any particular issue. However, Cameron has produced Field Performance Reports, regardless of whether related to the Deepwater Horizon in any way, that address blind shear rams, shearing/sealing buckled or off-centered drill pipe, elastomers (for annulars, blind shear rams, and VBRs), deadman batteries, solenoids, blowouts, well control, and kicks. |
| XLVI. | Interrogatory #10: Cameron has produced documentation regarding its Emergency, Back-up and Deepwater Safety Systems, which describe various remote actuation devices. Cameron stands on its objection to overbreadth and burdensomeness to identify every person who ever participated in any communication regarding various methods of remote actuation of BOPs. |
| XLVII. | Interrogatory #15: Cameron has produced the files it maintains related to the deadman batteries. Cameron has produced Field Performance Reports, regardless of whether related to the Deepwater Horizon in any way, that address deadman batteries. Cameron stands on its objection to overbreadth and burdensomeness to the remainder of the request. |
| XLVIII. | Interrogatory #21: Cameron stands on its overbreadth objection to this request, which is not limited to any particular subsea BOP or any particular component. |
| XLIX. | Interrogatory #22: Cameron has produced documents reflecting issues regarding the configuration and design of the Deepwater Horizon BOP, including communications beginning in 1999 among RB Falcon (Transocean's predecessor), Vastar (BP's predecessor), and Cameron regarding the configuration and design to be used. |
| L. | Interrogatory #23: Cameron stands on its objections to this request. Plaintiffs served 50 separate Requests for Admission. To require Cameron to "fully explain the reason and factual basis for" not unqualifiedly admitting each Request for Admission is overbroad, unduly burdensome, and in violation of the Court's limitation of the Plaintiffs to 50 interrogatories. |
| LI. | Interrogatory #29: Cameron stands on its objection to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Asking for any communication with the government about blowout preventers, regardless of subject matter, goes far afield from the issues that might be relevant to this litigation. |
| LII. | Interrogatory #35: Cameron stands on its objection to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. It seeks information from almost ten years ago regarding issues that are not alleged to have played any role in the Deepwater Horizon incident. |