IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL., IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | SECTION: J |
| THIS DOCUMENT RELATES TO: 10-CV-02771 and 10-CV-2179 | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

### DEFENDANT DRIL-QUIP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE BP PARTIES' COUNTER-COMPLAINT FOR FAILURE TO STATE A CLAIM

**SUMMARY**

This lawsuit arises out of an incident that occurred while the *Deepwater Horizon*, a mobile offshore drilling unit owned and operated by Transocean entities, was drilling the Macondo No. 1 well for BP Exploration and Production, Inc. ("BPXP"), the lessee.[1]  Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

On June 20, 2011, the BP Parties filed their Counter-Complaint (the "Counter-Complaint") against eighteen entities, including Dril-Quip.  In pertinent part, the Counter-Complaint alleged that:

---

[1] BP America Production Company ("BPAPC") is also a party to the Counter-Complaint; Dril-Quip refers to the two entities herein as they refer to themselves, as "the BP Parties."  Counter-Complaint [Doct. 2918] at 1.

1. Dril-Quip entered into a contract with BP for design and manufacture of subsea wellheads, in which it undertook certain quality control and inspection responsibilities.[2]
2. Certain Complaints allege that Dril-Quip is at fault for the *Deepwater Horizon* incident because, among other things:
   a. Dril-Quip's wellhead systems were defectively designed;
   b. Dril-Quip's wellhead systems were defectively manufactured;
   c. Dril-Quip's wellhead systems were unreasonably dangerous as supplied;
   d. Dril-Quip failed to exercise reasonable care while participating in the drilling operations related to the Macondo well; and
   e. Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill.[3]

This account contains or refers to all allegations against Dril-Quip of an arguably factual character made by the BP Parties in their Counter-Complaint.

As the Eastern District of Pennsylvania recently noted,

> … the pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to crossclaims, counterclaims, and third-party complaints. *See, e.g., Travelers Indem. Co. v. Dammann & Co., Inc.,* 594 F.3d 238, 256 n. 13 (3d Cir. 2010) (applying *Iqbal* to crossclaims); *Tes Franchising, LLC v. Dombach*, 2010 U.S. Dist. LEXIS 124751 at *6 (E.D.Pa. November 24, 2010) (applying *Iqbal* to counterclaims); *Simon Prop. Gr. v. Palombaro,* 682 F.Supp.2d 508, 511 (W.D.Pa.2010) (same).

*Schmolz+Bickenback USA, Inc. v. Dauble*, No. 09-751, 2011 WL 285123, *3 (E.D.Pa., Jan. 28, 2011); *see also Reishus v. Almaraz,* No. CV-10-01760-PHX-LOA, 2011 WL 42679, *3 (D. Ariz., Jan. 06, 2011); *West v. American Electric Power Co.*, No. 2:09-cv-00985, 2010 WL 3910189, *4 (S.D.W.Va., Oct. 4, 2010); *Miami Valley Fair Housing Ctr. v. Steiner & Assocs., Inc.,* No. 08-00150, 2010 WL 2631110, at *7 (May 13, 2010) (applying *Twombly* and *Iqbal* to third-party complaint); *Colon v. Blades*, 268 F.R.D. 143, 2010 WL 1731666, at *2 (D.P.R. Apr. 29, 2010) (same). Under these standards, the Counter-Complaint fails to state a claim against

---

[2] *See id*. ¶¶ 9 & 10, at 2-3.
[3] Counter-Complaint ¶ 16, at 5.

Dril-Quip because the BP Parties failed to plead a predicate for a plausible claim against Dril-Quip.

Because BP the Parties fail to plead any facts against Dril-Quip and thus fail to satisfy the standard set forth in *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007), the Court should dismiss the Counter-Complaint against Dril-Quip under Federal Rule 12(b)(6). Even if the pleading insufficiencies are overlooked, the Counter-Complaint fails as a matter of law to state a claim for negligence or products liability under the general maritime law against Dril-Quip. These insufficiencies mandate dismissal of all of the BP Parties' claims against Dril-Quip.

### ARGUMENT AND AUTHORITIES

### The Counter-Complaint Fails to State a Claim Against Dril-Quip

**A.    The Counter-Complaint Must Meet Federal Pleading Standards.**

As noted, *supra* at 2-3, courts that have considered the issue have repeatedly held that the *Twombly-Iqbal* plausibility standards apply not only to plaintiffs' complaints, but to claims of all types among defendants as well. *See Schmolz+Bickenbach*, 2011 WL 285123 at *3. Federal courts sitting in this state have followed suit. In *Martco Ltd. Partnership v. Bruks-Klockner, Inc.*, No. 2:07 CV 2002, 2010 WL 2265145 (W.D.La., Jan. 1, 2010) the court applied *Twombly* to dismiss a third-party complaint:

> Merely alleging possible liability on the face of a complaint is not sufficient. As provided in the United States Supreme Court case of *Bell Atlantic v. Twombly*, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56. Bruks' Third-Party Complaint provides no basis on which

derivative liability could arguably be supported. Bruks has failed to meet the threshold requirements of pleading a viable legal indemnity claim.

*Id*. at *6. And, in *Cashman Equip. Corp. v. Rozel Operating Co*., No. 08-363-C-M2, 2010 WL 3385117 (M.D.La., Apr. 30, 2010), the court ordered repleading of a third party complaint against a marine surveyor that had alleged fraud, negligent misrepresentation and breach of contract in general language tracking the elements of the causes of action. *Id.* at *4. The Court noted:

> While those facts may be set forth generally in the Third Party Complaint, [Third Party Plaintiff] does not allege…how those facts satisfy the required elements of causes of action in contract, tort, or fraud under general maritime law. To conclude that such facts satisfy the elements…without more specific allegations in that regard would be speculative under the *Twombly* standard…. Moreover, without more specific allegations…, it will be difficult for [Third Party Defendant] to frame a responsive pleading.

*Id.* at n.2.

These cases recognize, as did the Supreme Court in *Twombly* and *Iqbal*, *see* 550 U.S. at 558 and ____ U.S. at ___, 129 S.Ct. at 1953, that requiring a person, natural or legal, to come into court and defend an action "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources…." *Id.*; *see also Twombly*, 550 U.S. at 557-58 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 233-34) (claim should be tested for basic deficiency at "point of minimum expenditure of time and money by the parties and the court"). That is certainly the case here, where the effect of the Counter-Complaint on Dril-Quip, if allowed, will be to lump Dril-Quip together with more obviously culpable parties in hundreds, perhaps thousands, of lawsuits even though in a year's time, marked by repeated public

4

investigation of the facts leading to and away from the *Deepwater Horizon* incident, barely a score of suits have directly named Dril-Quip.[4]

Dril-Quip respectfully suggests that, as the Supreme Court has held, Rule 8 of the Federal Rules of Civil Procedure entitles it to dismissal from cases in which no party pleads facts and legal theories sufficient to render it plausible that it bears or shares liability for wrongful injury. The principal protection for a defendant – particularly a defendant like Dril-Quip, which has been sued in only a handful of cases and only on the sketchiest of grounds – is the vigilance of the district court in performing the gatekeeping function assigned to it by Rules 8 and 12. Unless extraordinary relief is granted, only this Court can assure that such a defendant, properly will escape claims "shy of a plausible entitlement to relief," *Twombly*, 550 U.S. at 559, at its earliest opportunity.

### B. The Complaint Fails to Allege Facts Sufficient to Establish Any Cause of Action

Today, to survive a motion to dismiss under Rules 8 and 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ____ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *see also Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009)(allegations must push claim past

---

[4] Those suits are no better pled than the Counter-Complaint, and Dril-Quip has filed or will file motions to dismiss each of them. So far, Dril-Quip submits, no plaintiff, cross-plaintiff, or counter-plaintiff anywhere has alleged a claim against it on which relief may be granted. Even after the February 18, 2011, Third-Party Complaint, which explicitly named Dril-Quip, only two groups of plaintiffs amended their complaints to name Dril-Quip, and one group has since recanted and dismissed as to Dril-Quip. *See* Docts. 1669 & 1713. The other names Dril-Quip only by incorporating language from the Third-Party Complaint. See Doct. 1524, ¶8 at 3 (Dril-Quip is named in Paragraph XIX of the Third-Party Complaint).

"conceivable" to "plausible"). These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56, *quoted in In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (2010)(quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at *4. *See also Great Lakes,* 624 F.3d at 210 (quoting *Iqbal* to effect that "legal conclusions can provide the complaint's framework, [but] must be supported by factual allegations"); *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 127, 1333 (11th Cir. 2010)(quoting *Iqbal,* ___ U.S. at ___, 129 S.Ct. at 1949). Under the standard set forth in *Twombly*, a complaint must plead "enough fact[s] to raise a reasonable expectation" that a plaintiff has a right to relief. *See* 550 U.S. at 557.

The Counter-Complaint alleges only claims for contribution, subrogation, and a declaratory judgment and a laundry list of legal theories, with almost no facts to support them. See Counter-Complaint ¶¶ 14-39, at 5-8. In the past, such summary allegations might have effectively provided notice of a plaintiff's claim to a defendant, *see Conley v Gibson,* 355 U.S. 41, 47 (1957), but *Twombly* and *Iqbal* have raised the bar. The BP Parties' allegations contain no facts that make it "plausible" that Dril-Quip is liable to the BP Parties or to any Plaintiffs/Claimants. Specifically, the Counter-Complaint fails to allege any facts that would establish any elements of Plaintiffs/Claimants' causes of action; instead, only innocent facts[5] and

---

[5] *E.g.,* "…Dril-Quip provided wellhead systems used for the Macondo well." Counter-Complaint ¶ 8, at 2.

conclusory assertions[6] are set forth.  But, as noted in *Gentilello* and *Plotkin*, *supra* at 5, such makeweights do not help to establish the plausibility of claims that *Twombly* and *Iqbal* require. It is thus impossible to ascertain what Dril-Quip did or failed to do that caused injury to any party.  The Court should therefore dismiss the Counter-Complaint against Dril-Quip for failure to state a claim.

      **C.**    **The Counter-Complaint Alleges Facts that Negate Liability For Negligence on the Part of Dril-Quip.**

Further, the Counter-Complaint contains no facts that, if true, would render Dril-Quip directly liable for maritime negligence.  Instead, its allegations negate any such liability.  As a matter of law, Dril-Quip did not owe the BP Parties or any Plaintiff/Claimant any duty of care. "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.' " *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)(quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

The Counter-Complaint alleges no facts from which the Court could infer that Dril-Quip owed the BP Parties any legal duty (other than those created by contract, for which the BP parties make no claim) because it does not allege that Dril-Quip controlled or had any right to control any of the operations of the *Deepwater Horizon*.  The duty to prevent harm resulting from oil and gas operations arises as a consequence of control over the operations.  *See, e.g., Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988).  Even when a principal without control over, or participation in, the operation has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede.

---

[6] *E.g.,* "…Dril-Quip's wellhead systems were unreasonably dangerous as supplied." *Id.* ¶ 16(c), at 5.

*See id.; Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

*Ainsworth* is cited by courts applying both Louisiana law and the general maritime law. *See, e.g., Gremillion v. Gulf Coast Catering Co.*, No. 88-4544, 1989 WL 104100, at *6 (E.D. La. Sept. 5, 1989), *aff'd*, 904 F.2d 290 (5th Cir. 1990) (citing *Ainsworth* in tort case under maritime law); *Fontenot v. Southwestern Offshore Corp.*, 787 So.2d 588, 594 (La. Ct. App. 2001) (tort case under maritime law).

The BP Parties' allegations fall far short of even the *Ainsworth* facts. Furnishing equipment pursuant to a contract for use in a drilling project owned and operated by others cannot plausibly create a duty of care to someone else's employee working onboard someone else's vessel. *Cf. In re Graham Offshore, Inc.*, 287 F.3d 352, 359 (5th Cir. 2002) (no duty owed by rig operator to transportation contractor hired by third party). The Counter-Complaint lacks any facts alleging conduct by Dril-Quip in breach of any duty, or that any person's injuries resulted from any act by Dril-Quip.

### D.     The Counter-Complaint Fails to State a Claim for Product Liability

The BP Parties repeat allegations that Dril-Quip's wellhead system for the Macondo well was defectively designed and or manufactured and unreasonably dangers as supplied.[7] These allegations fail to state a claim for product liability.

The Fifth Circuit recently affirmed the dismissal of a complaint for failure to state a manufacturing defect claim in a non-maritime context because the complaint "does not specify

---

[7] *Id.* ¶ 16, at 5.

the manufacturing defect, nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process." *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011). Like the complaint dismissed in *Funk*, the Counter-Complaint fails to allege any facts to show how the elements of a products liability claim are met. Accordingly, this claim should be dismissed.

## CONCLUSION

Dril-Quip respectfully requests that the Court dismiss the BP Parties' Counter-Complaint as to Dril-Quip pursuant to Federal Rules of Civil Procedure 12(b)(6).

Date:  July 11, 2011

                                              Respectfully submitted,

                                              **WARE, JACKSON, LEE & CHAMBERS, LLP**

                                              BY:  /s/ C. Dennis Barrow, Jr._____
                                                  Don Jackson
                                                  Texas Bar No. 10476000
                                                  Fed ID No. 6915
                                                  C. Dennis Barrow, Jr.
                                                  Texas Bar No. 00796169
                                                  Fed ID No. 20624
                                                  2929 Allen Parkway, 42nd Floor
                                                  Houston, TX 77019
                                                  Phone :  (713) 659-6400
                                                  Fax    :  (713) 659-6262
                                                  Counsel for Defendant, Dril-Quip, Inc.

**CERTIFICATE OF SERVICE**

      I certify that the above and foregoing document will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of July, 2011.

      /s/ C. Dennis Barrow, Jr.
      C. Dennis Barrow, Jr.