**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| No. 10-2771 | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| * * * * * * * * * * * * | | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF ANADARKO PETROLEUM CORPORATION AND
ANADARKO E&P COMPANY LP TO DISMISS THE CROSS-CLAIMS OF
HALLIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL
CORPORATION, DRIL-QUIP, INC., M-I, LLC, AND WEATHERFORD U.S., L.P.**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    RELEVANT FACTUAL ALLEGATIONS ........................................... 4

    A.    Relevant Allegations in HESI's Cross-Claims ................................... 5

    B.    Relevant Allegations in Cameron's Cross-Claims .............................. 6

    C.    Relevant Allegations in Dril-Quip's Cross-Claims ............................ 7

    D.    Relevant Allegations in M-I's Cross-Claims..................................... 8

    E.    Relevant Allegations in Weatherford's Cross-Claims.......................... 9

III.    ARGUMENT ...................................................................................... 9

    A.    HESI, M-I, and Weatherford Fail to State an Indemnity Claim under the General Maritime Law or Any Other Law Against Anadarko for which Relief Can Be Granted ...................................................................... 10

    B.    The Plaintiffs in Cross-Claim Fail to State a Claim against Anadarko for Contribution under the General Maritime Law ................................... 12

        1.    The Plaintiffs in Cross-Claim do not allege that Anadarko exercised operational control over any event or instrumentality allegedly causing harm, and therefore fail to state a claim for contribution .............................................................................. 13

        2.    HESI and M-I's vicarious liability theory fails as a matter of law .......... 15

            a.    The Operating Agreement does not give rise to any vicarious liability ................................................................ 15

            b.    The MMS standard "Designation of Operator" form does not create an agency relationship giving rise to vicarious liability ........................................................................... 17

        3.    The Plaintiffs in Cross-Claim are each litigating defendants, and therefore have no claim against Anadarko for contribution ................... 20

    C.    Cameron Fails to State a Claim for Contribution under OPA against Anadarko for which Relief Can Be Granted...................................... 21

    D.    HESI Fails to State a Claim against Anadarko for Negligence, Gross Negligence, or Willful Misconduct.................................................. 22

        1.    HESI's allegations fail to state a claim for negligence ........................... 23

        2.    HESI's allegations fail to state a claim for gross negligence or willful misconduct ................................................................... 25

    E.    Weatherford Fails to State a Claim Against Anadarko Under Any Theory of Liability ................................................................................. 26

IV.    CONCLUSION................................................................................. 28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Texaco*,
    640 F.2d 618 (5th Cir. 1981) ................................................................3

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988)..............14, 20, 23

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..............................................................10, 27, 28

*Bayer Corp. v. British Airways*,
    PLC, 210 F.3d 236 (4th Cir. 2000) ..................................................26

*Becker v. Tidewater, Inc.*,
    586 F.3d 358 (5th Cir. 2009) ..........................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................9, 25

*Bolivar v. R & H Oil and Gas Co.*,
    789 F. Supp. 1374 (S.D. Miss. 1991)................................................16

*Bourg v. Texaco Oil Co.*,
    578 F.2d 1117 (5th Cir. 1978) ........................................................19

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ..........................................................15

*Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*,
    615 F.3d 599 (5th Cir. 2010) ..................................................2, 12, 20

*Cooper Stevedoring Co. v. Kopke*,
    417 U.S. 106 (1974)..................................................................13

*Croley v. Matson Navigation Co.*,
    434 F.2d 73 (5th Cir. 1970) ..........................................................24

*Delta Commodities, Inc. v. M/T JO OAK, ETC.*,
    Civ. A. No. 88-1349, 1989 WL 149253 (E.D. La. Dec. 6, 1989)............................25

*Dupre v. Chevron U.S.A., Inc.*,
    913 F. Supp. 473 (E.D. La. 1996))..................................................20

A/74363154.1

*Entente Mineral Co. v. Parker*,
　　956 F.2d 524 (5th Cir. 1992) ...................................................................................18

*Essex Builders Grp, Inc. v. Amerisure Ins. Co.*,
　　429 F.Supp.2d 1274 (M.D. Fla. 2005)....................................................................21

*Fla. Fuels, Inc. v. Citgo Petroleum Corp.*,
　　6 F.3d 330 (5th Cir. 1993), ....................................................................................25

*Fruge ex. rel. Fruge v. Parker Drilling Co.*,
　　337 F.3d 558 (5th Cir. 2003) ......................................................................15, 18, 19

*Grammer v. Patterson Servs., Inc.*,
　　860 F.2d 639 (5th Cir. 1988) .....................................................................................4

*Guillory v. Conoco, Inc. v. Cont'l Oil Co.*,
　　521 So.2d 1220 (La. App. 3d Cir.) ..............................................................12, 14, 21

*Gulf Oil Corp. v. Bivins*,
　　276 F.2d 753 (5th Cir. 1960) .....................................................................................4

*Halliburton Co. v. Norton Drilling Co.*,
　　313 F.2d 380 (5th Cir. 1963) .....................................................................................9

*Hardy v. Gulf Oil Corp.*,
　　949 F.2d 826 (5th Cir. 1992) .................................................................................2, 11

*Hershey v. Energy Transfer Partners, L.P.*,
　　610 F.3d 239 (5th Cir. 2010) ...................................................................................10

*Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners*,
　　334 F.3d 423 (5th Cir. 2003) ...................................................................................26

*In re ALEX C Corp.*,
　　Civil Action Nos. 00-12500-DPW, 01-12186-DPW,
　　2010 WL 4292328 (D. Mass. 2010) ........................................................................21

*In re Great Lakes Dredge & Dock Co. LLC*,
　　624 F.3d 201 (5th Cir. 2010) ..............................................................................23, 27

*In re Katrina Canal Breaches Litig.*,
　　495 F.3d 191 (5th Cir. 2007) ...................................................................................15

*In re Liberty Seafood, Inc.*,
　　38 F.3d 755 (5th Cir. 1994) .....................................................................................12

*Jones v. Bock*,
　　549 U.S. 199 (2007)..................................................................................................10

*Kane Enters. v. MacGregor Inc.*,
    322 F.3d 371 (5th Cir. 2003) ...................................................................15

*Liberty Servs., Inc. v. Amoco Prod. Co.*,
    Civ. A. No. 90-4490, 1991 WL 278673 (E.D. La., Dec. 23, 1991)....................................13, 17

*Loose v. Offshore Navigation, Inc.*,
    670 F.2d 493 (5th Cir. 1982) ...................................................................11

*Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*,
    761 F.2d 229 (5th Cir. 1985) ...................................................................12

*Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc.*,
    329 F.3d 1311 (11th Cir. 2003) ...................................................................20

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
    924 F.Supp. 1436 (E.D. Va. 1996) ...................................................................21

*Romero v. Mobil Exploration and Producing North America, Inc.*,
    939 F.2d 307 (5th Cir. 1991) ...................................................................19

*Ronquille v. MMR Offshore Servs., Inc.*,
    353 F. Supp. 2d 680 (E.D. La. 2004) ...................................................................14

*Royal Ins. Co. of Am. v. Southwest Marine*,
    194 F.3d 1009 (9th Cir. 1999) ...................................................................25

*Thomas v. Burlington Res. Oil & Gas Co.*,
    No. Civ. A. 99-3904, 2000 WL 1528082 (E.D. La. Oct. 13, 2000) ...................................14

*Transcon. Gas Pipe Line Corp. v. Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968) ...................................................................16

*Two-J Ranch, Inc. Limitation Proceeding M/V Carla J*,
    534 F. Supp. 2d 671 (W.D. La. 2008) ...................................................................11

*United Gas Corp. v. Guillory*,
    206 F.2d 49 (5th Cir. 1953) ...................................................................9, 19

*United States v. Reliable Transfer Co.*,
    421 U.S. 397, 411 (1975) ...................................................................11

*Webre v. Azalea Fleet, Inc.*,
    No. 03-1190, 2005 U.S. Dist. LEXIS 4845 (E.D. La. 2005) ...................................................28

**STATUTES**

22 U.S.C. § 2701, *et. seq.* ...................................................................3

33 U.S.C. § 2709 ..................................................................................................21, 22

46 U.S.C. § 30104 ......................................................................................................22

OTHER AUTHORITIES

2-I BENEDICT ON ADMIRALTY § 13 .............................................................................12

30 C.F.R. § 250.143 ....................................................................................................17

6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
    § 1431, at 240-41 (2d ed. 1990) ...........................................................................21

Fed. R. Civ. P. 14(c) ....................................................................................................1

H.R. CONF. REP. NO. 653, 101ST CONG., 2D SESS. 1990, *REPRINTED IN* 1990 U.S.C.C.A.N.
    779 (1990) ............................................................................................................21

RESTATEMENT (SECOND) OF TORTS, § 886A(2) ..........................................................13

**MAY IT PLEASE THE COURT:**

## I.
## INTRODUCTION

On May 20, 2011, Halliburton Energy Services, Inc. ("HESI"), Cameron International Corporation ("Cameron"), Dril-Quip, Inc. ("Dril-Quip"), M-I, LLC ("M-I"), and Weatherford U.S., L.P. and Weatherford International, Inc. (collectively, "Weatherford"), (collectively, "Plaintiffs in Cross-Claim"), asserted Cross-Claims against Anadarko Petroleum Corporation and Anadarko E&P Company, LP ("Anadarko E&P") (collectively, "Anadarko")[1] in the Limitation Action, 2:10-cv-02771. The Plaintiffs in Cross-Claim generally assert Cross-Claims for contribution, indemnity, negligence, gross negligence, and/or willful misconduct under the general maritime law or other applicable law (if available); contribution under the Oil Pollution Act ("OPA"); and assorted breach of contract and other breach of duty theories of liability.[2]

Because the cross-claims of the Plaintiffs in Cross-Claim mirror the Plaintiffs' and Transocean's fatally flawed claims and cross-claims against Anadarko, the claims of the Plaintiffs in Cross-Claim are similarly flawed and must be dismissed. The Plaintiffs in Cross-Claim fail to allege any facts that show that Anadarko owed any duty to the Plaintiffs or, by extension, to the Plaintiffs in Cross-Claim, or that Anadarko appropriately bears any measure of fault for the blowout, fire, explosion, and eventual sinking of the *Deepwater Horizon*. Indeed,

---

[1] Simply for ease, this Motion refers to the movants together as "Anadarko." All movants are independent and distinct corporate entities, and by using the shorthand, movants do not suggest or acknowledge otherwise.

[2] The Cross-Claims asserted against Anadarko are as follows: First Amended Cross-Claims of Defendant HESI [Limitation Rec. Doc. 445]; Master Answer of Rule 14(c) Defendant Cameron to Tendered Claims, Together with Cross-Claims [MDL Rec. Doc. 2472; Limitation Rec. Doc. 412]; Third Party Defendant Dril-Quip's Cross-Claims [MDL Rec. Doc. 2467]; Defendant M-I's Cross-Claims [MDL Rec. Doc. 2500] and Defendant M-I's First Amended Cross-Claims [MDL Rec. Doc. 2531]; and Answer, Defenses and Counter-Claims/Cross-Claims of Weatherford Against Anadarko Petroleum Corporation and Anadarko E&P Company LP [MDL Rec. Doc. 2501].

A/74363154.1

taken as true, the Cross-Claim allegations show that there was <u>no fault</u> on the part of Anadarko, and therefore doom each of the Cross-Claims, which should be dismissed in their entirety.

### Cross-Claims for Indemnity

HESI, M-I, and Weatherford fail to state *prima facie* indemnity claims against Anadarko. HESI at ¶¶ 34-36; M-I at ¶ 68; Weatherford at ¶ 7. Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829-30 (5th Cir. 1992). HESI, M-I, and Weatherford all fail to allege any relationship with Anadarko that would support a claim for indemnity, nor do they allege any facts that would demonstrate that Anadarko bears <u>any</u> share of the fault for the incident giving rise to their putative liability to the Plaintiffs, let alone the <u>entirety</u> of the fault. HESI at ¶¶ 34-36; M-I at ¶ 68; Weatherford at ¶ 7.

### Cross-Claims for Contribution

Similarly, each of the Plaintiffs in Cross-Claim fails to state a claim for contribution under the general maritime law. HESI at ¶¶ 34-36; Cameron at ¶ 200; Dril-Quip at ¶¶ 39-42; M-I at ¶ 69; Weatherford at ¶ 8. "'Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602-03 (5th Cir. 2010) (*quoting United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004))). The Plaintiffs in Cross-Claim's allegations affirmatively show that Anadarko is not in any way "responsible for the same tort" and that Anadarko should not bear any "percentage of fault" for the damages that the Plaintiffs seek from the Plaintiffs in Cross-Claim.

Correspondingly, Cameron fails to state a claim for contribution from Anadarko under the Oil Pollution Act ("OPA"), 22 U.S.C. § 2701, *et. seq.* Cameron at ¶ 107. Like contribution under the general maritime law, a claim for contribution for damages or removal costs paid to claimants under OPA requires a showing of fault on the part of Anadarko — which Cameron fails to allege.

### Cross-Claims for Negligence/Vicarious Liability

HESI fails to state a claim for negligence, gross negligence, or willful misconduct against Anadarko. HESI at ¶ 50. Because HESI does not allege that Anadarko had a right to exercise operational control over any of the events, operations, or instrumentalities that caused the blowout, fire, explosion and sinking of the *Deepwater Horizon*, HESI fails as a matter of law to allege that Anadarko owed any duty to the Plaintiffs, or by extension, to HESI. HESI's cross-claims against Anadarko asserting negligence, gross negligence, and willful misconduct must therefore be dismissed.

For the same reason, HESI's and M-I's claims that Anadarko is vicariously liable for the negligence of its independent contractor, BP, fail as a matter of law. Anadarko executed a strictly limited designation of BP as the operator of the leasehold, making BP Anadarko's agent for the sole purpose of interacting with the Minerals Management Service and fulfilling the obligations of the MMS lease. That designation, and the obligations of the lease and the MMS regulations to which it refers, do not give rise to any right or duty to third parties, and provides HESI no private right of action. Absent a right of operational control Anadarko cannot be liable for the negligence of BP under a theory of vicarious or direct liability; therefore HESI's and M-I's vicarious liability theory fails as a matter of law.

### Miscellaneous Cross-Claims

Finally, it is unclear from its vague and ambiguous cross-claims whether, in addition to its claims for indemnity or contribution, Weatherford intends to assert claims against Anadarko under other theories of liability.  Weatherford at ¶ 4.  To the extent that Weatherford purports to bring claims against Anadarko for "breach of contract, fault, negligence, inattention to duty, breach of duty, breach of warranty both implied and express, breach of statutory duty, rules and regulations, or other violations of law and contract," those claims must fail, because Weatherford fails to allege even the *prima facia* elements of any claim, let alone sufficient allegations of fact to support those claims.  *Id.*

## II.
## RELEVANT FACTUAL ALLEGATIONS

The Plaintiffs in Cross-Claim fail to state any viable claims against Anadarko and fail to allege any facts showing that Anadarko is at fault for the Plaintiffs' alleged injuries.  The Plaintiffs in Cross-Claim do not allege that Anadarko had any right of operational control of, or supervisory authority over, the engineering or design of the Macondo well; the *Deepwater Horizon* or its crew; the drilling operations conducted at the Macondo Prospect; or the completion operations conducted on the Macondo well.  Absent a right of operational control over the events or instrumentalities alleged to have caused harm, Anadarko owed no duty to the Plaintiffs or to the Plaintiffs in Cross-Claim and cannot be held liable for indemnity, contribution, negligence, gross negligence, or willful misconduct.  While the Plaintiffs in Cross-Claim' allegations are markedly similar, the relevant allegations of each set of cross-claims are summarized below.

**A.      Relevant Allegations in HESI's Cross-Claims.**

HESI alleges that BP "was the primary owner of the Lease and was the sole Operator at the Macondo Well."  HESI at ¶ 43.  HESI further alleges that BP determined the "well design," determined "when to conduct rig activities," determined "what products and services to use," determined "whether critical well integrity tests were properly conducted and whether it was safe to proceed to the next scheduled rig activity," determined "how many rig activities to conduct simultaneously," and ultimately determined "the speed at which the well was drilled and the steps to be taken, or not taken, in order to ensure that the rig stayed as close as possible to its drilling schedule, with every day of delay costing BP at least $500,000."  HESI at ¶ 43.  HESI does not allege that Anadarko had any role in any of these operational decisions.

In contrast, HESI alleges that Anadarko, an "oil and gas exploration and production company," was a co-lessee and held a minority ownership interest in the lease.  HESI at ¶¶ 11-12.  HESI alleges that the Operating Agreement required BP to obtain Anadarko's approval "to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations."  HESI at ¶ 46.  HESI further alleges that Anadarko had the right to receive, and did receive, "real time" data "regarding exploration or other operations performed in connection with the Lease."  HESI at ¶ 47.  HESI alleges that this information included "daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig."  HESI at ¶ 47.  HESI also alleges that the Operating Agreement provided that BP would promptly invoice Anadarko for costs, including "the costs of the well casing and wellhead and other materials purchased by BP."  HESI at ¶ 48.  HESI further alleges that the Operating Agreement provided Anadarko with a "mechanism to

object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease." HESI at ¶ 48.

HESI alleges that Anadarko is vicariously liable for BP's negligence, because Anadarko "designated BP as their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations." HESI at ¶¶ 49-50. HESI further alleges that Anadarko was negligent, grossly negligent, and/or acted with willful misconduct either because Anadarko "knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action," or "by entrusting BP to make decisions relative to the Lease and to the *Deepwater Horizon*'s drilling operations." HESI at ¶ 50.

## B.   Relevant Allegations in Cameron's Cross-Claims.

Through the incorporation of previous allegations in its Answer to Verified Complaint for Exoneration, Claims, Counter-Claims, and Cross- Claims of Cameron International Corporation (Limitation Rec. Doc. 412), Cameron alleges that "[o]n April 20, 2010, explosions and fires occurred in connection with oil development and well control activities conducted in the subsoil of the Outer Continental Shelf from the *Deepwater Horizon* in significant part by authorized agents of [Transocean] acting within the scope of their employment." Rec. Doc. 412 at ¶ 57. Cameron further alleges that, "[t]hereafter, oil was released underwater from the oil well in the subsoil that was the subject of those oil development activities." Rec. Doc. 412 at ¶ 57. Cameron alleges that, in October 2009, BP began drilling the Macondo Well and that BP "resumed drilling the Macondo well" after the *Deepwater Horizon* rig was connected. Rec. Doc. Doc. 412 at ¶¶ 63, 64. Cameron alleges that the drilling occurred "[u]nder the direction of BP."

Cameron Doc. 412 at ¶ 65. Cameron further alleges that BP, Transocean, and Halliburton "contributed to the explosions, fire, and oil spill." Rec. Doc. 412 ¶ 74-76.

In contrast, beyond generally identifying Anadarko's place of incorporation and principal place of business, Cameron sets forth no allegations specific to Anadarko.

**C.      Relevant Allegations in Dril-Quip's Cross-Claims.**

Dril-Quip alleges that BP "was a lease holder and the designated operator in the lease granted by the former Minerals Management Service ("MMS")." Dril-Quip at ¶ 18. Dril-Quip further alleges that BP was "allowed to perform oil exploration, drilling, and production" at the Macondo well. Dril-Quip at ¶ 18. Dril-Quip alleges that "BP breached its duty to exercise reasonable care to design, create, manage and control the well and the flow of hydrocarbons therefrom in a safe and prudent manner and to conduct its drilling operations with reasonable and ordinary care." Dril-Quip at ¶ 20.

Dril-Quip alleges that Anadarko was "a party to the Operating Agreement" and held a minority ownership interest in the lease. Dril-Quip at ¶¶ 29-30. Dril-Quip alleges that BP required Anadarko "to execute BP's well plan and Authorizations for Expenditure," which allegedly put Anadarko "on notice of (a) the location of the well; (b) the anticipated timeline for the operation; (c) the total depth and target zones; (d) the proposed drilling and completion plans, including the casing programs and directional details; (e) the details of all coring, logging and other evaluation operations conducted; and (f) information about the drilling rig to be used." Dril-Quip at ¶ 31. Dril-Quip further alleges that the Operating Agreement gave Anadarko "the right to suggest alternative well plans, to place their own personnel on drilling and well development teams and to receive information and data about operations on an ongoing basis." Dril-Quip at ¶ 31.

Dril-Quip, mirroring the allegations in Plaintiffs' Amended Master Complaint for Pleading Bundle B1, alleges that Anadarko's "rights to information" regarding the well put Anadarko on "actual or constructive notice of the conditions at the well site," and that when combined with Anadarko's alleged "right to be privy to health, safety and environment ('HSE') information, HSE inspections and to call HSE meetings," Anadarko negligently failed "to perform the check and balance role" it "carved out."  Dril-Quip at ¶ 32.

**D.      Relevant Allegations in M-I's Cross-Claims.**

M-I alleges that the "[w]hen the *Deepwater Horizon* explosion occurred on April 20, 2010, each of the Plaintiffs in Cross-Claim . . . had personnel and/or equipment on the rig, were otherwise directly involved with the *Deepwater Horizon*'s drilling operations at the Macondo well, or were involved in the remediation and clean-up efforts that followed the blowout."  M-I at ¶ 37.

M-I alleges that Anadarko was a co-lessee with BP and held a minority ownership interest in the lease.  M-I at ¶ 59.  M-I alleges that, under the Operating Agreement, the BP parties were required to obtain Anadarko's approval "in order to proceed with nondiscretionary operations in connection with the lease, including by seeking" Anadarko's authorization "for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations."  M-I at ¶ 61.  M-I further alleges that Anadarko obtained "real time" data regarding the operations performed in connection with the lease.  M-I at ¶ 62.  M-I alleges that the Operating Agreement provided for the "prompt invoicing" by BP "of costs incurred" under the Operating Agreement.  M-I at ¶ 63. Additionally, M-I alleges that the Operating Agreement provided Anadarko "with a mechanism to object to, prevent, control, address, and abate discharges of oil or health and safety issues."  M-I at ¶ 63.

M-I alleges that Anadarko designated BP as its "operator and local agent, with full authority to act on [its] behalf in complying with the requirements of the lease and applicable regulations." M-I at ¶ 64. M-I alleges that Anadarko is liable for the negligence of BP, its agent. M-I further alleges that Anadarko was negligent because it "knew of, approved, and authorized" BP's "negligent design and operation of the well" and because Anadarko "knew or should have known of the presence of hydrocarbons in the well on the night of April 20, 2010 and failed to warn the crew of the vessel of the imminent blowout." M-I at ¶ 66.

**E.    Relevant Allegations in Weatherford's Cross-Claims.**

Weatherford U.S., L.P. and Weatherford International, Inc. (collectively, "Weatherford") assert that Anadarko is liable "for all damages, losses and expenses and defense costs incurred by Weatherford" and assert indemnification and contribution claims against Anadarko. Weatherford at ¶¶ 7-8.

Weatherford alleges that Anadarko was a party to the Operating Agreement "which governed drilling, exploration and production of oil and gas at the Macondo well." Weatherford at ¶ 2. Weatherford alleges that the April 20, 2010 "blowout, explosions, fire and oil spill were caused by the breach of contract, fault, negligence, inattention to duty, breach of duty, breach of warranty both implied and express, breach of statutory duty, rules and regulations, and other violations of law and contract" by Anadarko. Weatherford at ¶ 4.

### III.
### ARGUMENT

### THE CROSS-CLAIMS FAIL TO STATE ANY CLAIM AGAINST ANADARKO FOR WHICH RELIEF CAN BE GRANTED.

The rules of pleading applicable to complaints are equally applicable to third-party complaints, cross-claims, and counterclaims for indemnity and contribution. *See United Gas Corp. v. Guillory*, 206 F.2d 49, 52 (5th Cir. 1953); *Halliburton Co. v. Norton Drilling Co.*, 313

F.2d 380, 380-81 (5th Cir. 1963) (third party complaint for contribution properly dismissed where third party complainant could not recover as a matter of law). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555); *see also Hershey v. Energy Transfer Partners*, *L.P.,* 610 F.3d 239, 245–46 (5th Cir. 2010) (same).

To state a claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), a claim should be dismissed. Under this standard, the Plaintiffs in Cross-Claim fail to state any claims against Anadarko for which relief can be granted.

**A. HESI, M-I, and Weatherford Fail to State an Indemnity Claim under the General Maritime Law or Any Other Law Against Anadarko for which Relief Can Be Granted.**

The claims of HESI, M-I, and Weatherford under the general maritime law for indemnity from Anadarko fail as a matter of law. HESI at ¶¶ 34-36; M-I at ¶ 68; Weatherford at ¶ 7. HESI, M-I, and Weatherford allege no viable legal basis for imposing an indemnity obligation on Anadarko and fail to allege any fault on the part of Anadarko.

Indemnity "permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss." *Hardy*, 949 F.2d at 829-30. Though HESI, M-I, and Weatherford do not specifically allege <u>any</u> theory on which their indemnity claims against Anadarko are based, under maritime law's comparative fault system there are only three viable theories of maritime indemnity: (1) where a contract expressly provides for indemnification, (2) where the "*Ryan* doctrine" applies, and (3) where a "vicariously liable or non-negligent tortfeasor is entitled to indemnity 'from a co-debtor guilty of actual fault.'" *Hardy*, 949 F.2d at 833-34 (quoting *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985)).[3] None is applicable to HESI, M-I, or Weatherford's Cross-Claims against Anadarko.

The first two potential indemnity theories are dispensed with easily. HESI, M-I, and Weatherford do not allege any agreement -- and there is none -- by which Anadarko agreed to indemnify them in connection with operations on the Macondo Prospect. The *Ryan* doctrine also is plainly inapplicable because it applies only to permit a vessel to recover where a stevedore breached a warranty of workmanlike performance. *In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 687 (W.D. La. 2008).

The third theory of indemnity also does not avail HESI, M-I, or Weatherford. As noted, the Fifth Circuit rule is that "a vicariously liable or non-negligent tortfeasor may be entitled to

---

[3]     Maritime law imposes joint and several liability among joint tortfeasors, permitting a plaintiff to "to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries." *Hardy*, 949 F.2d at 829. Thus, joint and several liability potentially can create the inequitable result that a defendant is required to bear the entire burden of multiple defendants' wrongs. *Id.* "The courts developed the principles of indemnity and contribution to alleviate this potentially unfair allocation of responsibility." *Id.* In *United States v. Reliable Transfer Co.*, the Supreme Court instituted a system of comparative fault in maritime cases, obviating resort to indemnity in almost all maritime cases. 421 U.S. 397, 411 (1975); *see, e.g., Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir. 1982) ("A comparative fault system not only eliminates the doctrine of contributory negligence but also apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none.").

indemnity 'from a co-debtor guilty of <u>actual fault</u>.'" *Marathon Pipe Line Co.*, 761 F.2d at 236 (emphasis added). As discussed more fully below, the Plaintiffs in Cross-Claim fail to allege any "actual fault" on the part of Anadarko. A party who "neither caused nor contributed" to an alleged tort is not liable for actual fault. *Id.* Further, a party who "had no control" over the alleged tort is not guilty of actual fault. *Id.* HESI, M-I, and Weatherford fail to allege that Anadarko in any way "caused or contributed" to the torts giving rise to Plaintiffs' injuries, let alone that Anadarko should appropriately bear the <u>entire</u> share of fault for Plaintiffs' injuries. HESI, M-I, and Weatherford's maritime indemnity claims fail as a matter of law.

**B.     The Plaintiffs in Cross-Claim Fail to State a Claim against Anadarko for Contribution under the General Maritime Law.**

All of the Plaintiffs in Cross-Claim allege that they are entitled to contribution from Anadarko. HESI at ¶¶ 34-36; Cameron at ¶ 200; Dril-Quip at ¶¶ 39-42; M-I at ¶ 69; Weatherford at ¶ 8. None state a claim for which relief can be granted. Contribution is the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, <u>the shares being determined as a percentage of fault</u>." *Combo Mar., Inc.*, 615 F.3d at 602 (*quoting Atl. Research Corp.*, 551 U.S. at 138 (2007) (quoting BLACK'S LAW DICTIONARY 353)) (emphasis added). The Plaintiffs in Cross-Claim allege no facts showing that Anadarko bears <u>any</u> fault for Plaintiffs' alleged personal injuries, and therefore fail to state a claim for maritime contribution.[4]

---

[4]     With the exception of Cameron, the Plaintiffs in Cross-Claim, like Anadarko, argue that federal law and the general maritime law exclusively govern this case. Like Anadarko in its own cross-claims, [Limitations Rec. Doc. 338 at ¶ 90], the Plaintiffs in Cross-Claim (other than Cameron) assert their claims under the general maritime law, or other law if available. *See, e.g.,* HESI at ¶ 35. Accordingly, Anadarko does not here challenge the Plaintiffs in Cross-Claim's assertions of claims under law other than federal law. Anadarko reserves the right to contest the Plaintiffs' in Cross-Claim's entitlement to contribution or any other form of relief under state law in the event the Court rules that state law may be applicable to this case.

1.     **The Plaintiffs in Cross-Claim do not allege that Anadarko exercised operational control over any event or instrumentality allegedly causing harm, and therefore fail to state a claim for contribution.**

It is well-established that where a party is entitled to contribution, that party is only entitled to contribution in proportion to the <u>negligence or fault</u> of a third party. *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *In re Liberty Seafood, Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . . to the extent occasioned by its fault"); RESTATEMENT (SECOND) OF TORTS § 886A(2) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability.").  "[A] non-negligent tortfeasor is 0% at fault."  2-I BENEDICT ON ADMIRALTY § 13.  It follows that a non-negligent tortfeasor cannot be liable for contribution. *Id*.

The Plaintiffs in Cross-Claim fail to state a claim for contribution.  All of the Plaintiffs in Cross-Claim allege only that Anadarko possessed a non-operating interest in the MMS lease, had a right to conduct health and safety inspections, and had a right to receive and did receive information from the rig.  HESI and M-I further allege that Anadarko designated BP as its agent, though for the reasons set forth below, this theory does not avail them.

Critically, the Plaintiffs in Cross-Claim do not allege that Anadarko had a right to exercise or in fact exercised operational control over any activity allegedly giving rise to Plaintiffs' injuries.  HESI and M-I allege that the Operating Agreement provided Anadarko with a mechanism to object to, prevent, control, address, and abate discharges of oil or health and safety issues.  M-I at ¶ 63; HESI at ¶ 48.  Their allegations in this regard do not amount to allegations that Anadarko had a right to exercise operational control over any activity that could

have given rise to Plaintiffs' injuries, because "operational control" requires "direct supervision over the step-by-step process of accomplishing the work." *Guillory v. Conoco, Inc. v. Cont'l Oil Co.*, 521 So.2d 1220, 1223 (La. App. 3d Cir.), *cert. denied*, 526 So.2d 801 (La. 1988); *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989) (same).

As argued in Anadarko's B1 Motion to Dismiss and B3 Motion to Dismiss, and in Anadarko's Motion to Dismiss Transocean's Cross-Claims, it is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the activity. *See, e.g.*, *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988). It is also settled law that where a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence. *Thomas v. Burlington Res. Oil & Gas Co.*, No. Civ. A. 99-3904, 2000 WL 1528082, at *1-2 (E.D. La. Oct. 13, 2000) (Barbier, J.). Even where a principal without operational control has actual knowledge of dangerous conditions on an oil rig, the principal has no legal duty to intercede. *See id.* at *2; *Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 (E.D. La. 2004) (the presence of a company representative on an oil platform with knowledge of the rig's operations "is insufficient to create a duty; therefore, the law does not support the imposition of liability for any failure to intercede").

The Plaintiffs in Cross-Claim fail to allege that Anadarko had a right to operational control over any aspect of the *Deepwater Horizon*'s drilling operations, or any other instrumentality or operation allegedly giving rise to the Plaintiffs' injuries. Therefore, according to the Plaintiffs in Cross-Claim's allegations, Anadarko owed no duty to the Plaintiffs and bears

14

no measure of fault or negligence for the Plaintiffs' injuries as a matter of law. The Plaintiffs in Cross-Claim thus have no claim for contribution against Anadarko because a non-negligent defendant is not liable for contribution. The Plaintiffs in Cross-Claim' maritime contribution claims must be dismissed.

### 2. HESI and M-I's vicarious liability theory fails as a matter of law.

HESI and M-I both allege that Anadarko is liable for BP's negligence because BP acted as Anadarko's agent. HESI and M-I's vicarious liability theory fails as a matter of law, because the contract between BP and Anadarko specifically disclaims any relationship giving rise to vicarious liability, and the MMS (BOEM) regulations and lease do not impose vicarious liability on non-operating lessees.

### a. The Operating Agreement does not give rise to any vicarious liability.

The Fifth Circuit has held that when a contract involving oil and gas drilling on the OCS "assigns the independent contractor responsibility for its own activities, the principal does not retain operational control" and cannot be liable for the negligence of the independent contractor. *Fruge ex. rel. Fruge*, 337 F.3d 558, 564 (5th Cir. 2003). The Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement") makes clear that BP was an independent contractor and that Anadarko retained no operational control over BP's drilling operations on the leased property. Ex. A, Macondo Prospect Offshore Deepwater Operating Agreement.[5] Specifically, the Operating Agreement vests all authority to control the drilling

---

[5] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (internal citation and quotation marks omitted); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motion to dismiss, the contracts were referred to in the complaints, and the contracts are central to plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss"); *Kane Enters. v. MacGregor Inc*., 322 F.3d 371, 374 (5th Cir. 2003) ("[T]he court may review the documents attached to the motion to dismiss, *e.g.*, the contracts in issue

operations in BP.  Article 4.1 designates "BP Exploration & Production Inc." as the "Operator." Ex. A at 14. Article 5.1, entitled "Exclusive Right to Operate," provides that "the Operator [BP] has the <u>exclusive right</u> and duty to conduct (or cause to be conducted) <u>all activities or operations</u> under this Agreement."  *Id.* at 20 (emphases added).  In performing services under the Operating Agreement, BP is an "<u>independent contractor, not subject to the control or direction of Non-Operating Parties</u> . . . ."  *Id*. (emphasis added).  Article 5.1 further unambiguously provides that the "Operator is not the agent or fiduciary of the Non-Operating Parties."  *Id.*

Indeed, the allegations by the Plaintiffs in Cross-Claim together with the Operating Agreement conclusively establish that Anadarko is <u>not</u> vicariously liable for any actions or omissions by BP, because Anadarko is not alleged to have (and does not have) any right to control BP's operations. *See, e.g.*, *Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (no indirect liability under maritime law for non-operating co-owners of oil and gas lease where designated operator, but not non-operators, was negligent), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating investor who has no right to control oil and gas operations may not be held vicariously liable as joint venturer).  Thus, the Plaintiffs in Cross-Claim's own allegations establish that BP was an independent contractor, and nothing in the Operating Agreement supports the contention that Anadarko had any duty or ability to intercede in BP and its contractors' drilling operations.

---

here, where the complaint refers to the documents and they are central to the claim") (internal citation omitted).  Because the Plaintiffs in Cross-Claim's claims against Anadarko are based solely upon Anadarko's alleged leasehold interest in the Macondo Prospect and alleged contractual relationship with BP, the Court may consider the Agreement in ruling on this motion to dismiss.

### b. The MMS standard "Designation of Operator" form does not create an agency relationship giving rise to vicarious liability.

HESI and M-I further allege that BP acted as Anadarko's "agent" in operating on the Macondo Prospect because Anadarko "designated BP as [its] operator and local agent, with full authority to act on [its] behalf in complying with the terms of the Lease and applicable regulations." HESI at ¶ 49; M-I at ¶ 62. HESI and M-I allege that by operation of this regulatory designation, Anadarko is liable for the "acts and omissions of [its] agent, BP." HESI at ¶ 50. This vicarious liability theory also fails because the designation of BP as operator required by 30 C.F.R. § 250.143 does not create vicarious liability *vis-à-vis* unrelated third parties, and even if it did, the agency created by the designation is strictly limited to compliance with the terms of the MMS lease and MMS regulations, and there is no private right of action for breach of the MMS Lease or MMS regulations.[6]

The Fifth Circuit and the courts of this district have considered variations of HESI and M-I's precise argument in the past and rejected any contention that a lessee's designation of an operator for purposes of compliance with lease obligations or regulations gives rise to any liability or duty to third parties or contractors such as HESI and M-I. In *Liberty Servs., Inc. v. Amoco Prod. Co.*, Civ. A. No. 90-4490, 1991 WL 278673 at *5 (E.D. La., Dec. 23, 1991) (Mentz, J.), the court considered whether the designation of operator form required by the regulations creates an agency relationship giving rise to vicarious liability. There, the plaintiff brought suit against the non-operator lessee (Amoco) of an offshore mineral block for unpaid

---

[6]     30 C.F.R. § 250.143 provides in relevant part:

(a) You must provide the Regional Supervisor an executed Designation of Operator form (Form MMS-1123) unless you are the only lessee and are the only person conducting lease operations. …
(b) This designation is authority for the designated operator to act on your behalf and to fulfill your obligations under the Act, the lease, and the regulations in this part.

labor and materials owed pursuant to the plaintiff's contract with the operator (Alliance). The
court correctly held that:

> [t]he designation of operator form merely provides that Alliance
> may be Amoco's agent for "complying with the *terms of the lease*
> and the applicable regulations thereto." Thus, the agency
> relationship created by the designation of operator form is limited
> in scope to acts in compliance with the lease and the regulations.
> The designation of operator form does not make Alliance the agent
> of Amoco for all purposes related to Block 196.

*Id.* (emphasis in original). The same analysis pertains here. As in *Liberty Servs.*, the designation

of operator form executed by Anadarko specifically provides that the operator is an agent

authorized only to "act in the lessee's behalf in complying with the terms of the lease and

applicable regulations." Ex. B, Designation of Operator, MMS form MMS-1123. A principal

can only be vicariously liable for the torts of an agent that are committed within the scope of the

agency, which in this case is limited solely to compliance with the terms of the lease and MMS

regulations. *Entente Mineral Co. v. Parker*, 956 F.2d 524 (5th Cir. 1992) (citing RESTATEMENT

(SECOND) OF AGENCY § 219(1) (1958)). The designation of operator form thus creates no

potential for vicarious liability to third parties for breach of those contractual and regulatory

obligations, because the Fifth Circuit has long held that there is no private right of action for

breach of MMS lease or regulatory requirements.

For example, in *Fruge ex. rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir.

2003), an oil worker who had been injured on a rig in the Gulf of Mexico asserted that Anadarko

(there the operating leaseholder) was jointly and severally responsible for his injuries. *Id.* at 561.

In that case, Anadarko had contracted with co-defendant Parker Drilling to conduct operations on

the well, and had designated Parker to operate the rig. *Id*. at 560. In affirming summary

judgment against the plaintiff, the Fifth Circuit reiterated its long-held view that "operating rights

owners and lessees are jointly and severally responsible for nonmonetary lease obligations as

well as obligations to comply with MMS regulations . . . " (emphasis added), but "that a violation of the MMS regulations does not give rise to a private cause of action … [because] [t]he regulations govern the parties' joint and several liabilities *vis-à-vis* the Government, not amongst themselves" or third parties. *Fruge*, 337 F.3d at 562 n.4; 563.

Similarly, in *Bourg v. Texaco Oil Co.*, 578 F.2d 1117, 1121 (5th Cir. 1978), the Fifth Circuit held that, notwithstanding certain MMS regulations requiring lessees to ensure operations on the leasehold are performed in a good and workmanlike manner, it was not the intent of OCSLA or its implementing regulations to hold lessees vicariously liable for the actions of independent contractors. The Fifth Circuit explained:

> [i]t is the plaintiff's position that because of these regulations, a platform owner who is otherwise free of negligence and who hires an experienced independent contractor and assigns to that contractor some rather routine work should be legally responsible for the negligent work methods utilized by that contractor. We feel that it would be error to so interpret these regulations absent a clear indication from Congress that this was their intent. Our reading of the legislative history of the Outer Continental Shelf Lands Act uncovers no such intent.

*Bourg*, 578 F.2d at 1121-22 (citing *Olsen v. Shell Oil Co.*, 561 F.2d 1178 (5th Cir.1977), *cert. denied*, 444 U.S. 979 (1979)); *see also Romero v. Mobil Exploration and Producing North America, Inc.*, 939 F.2d 307 (5th Cir. 1991) (reaffirming that breach of MMS safety regulations does not give rise to private right of action).

A holding that the designation of operator form -- itself required by regulation -- creates an agency relationship giving rise to vicarious liability to third parties would be fundamentally at odds with this long line of Fifth Circuit cases holding that the MMS regulations do not create vicarious liability to third parties. Moreover, any such holding would constitute an "end-run" around the rule of *Ainsworth* that a principal engaged in oil exploration and production without operational control over an independent contractor owes no duty to third parties to intervene in

19

the independent contractor's operations.  *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 551 (5th Cir. 1987); *see also Dupre v. Chevron U.S.A., Inc.*, 913 F. Supp. 473, 483 (E.D. La. 1996), *aff'd per curiam*, 109 F.3d 230 (5th Cir. 1997) (holding that any distinction between "vicarious" and "direct" theories of liability under the circumstances would constituted an "end-run" around *Ainsworth*).  HESI and M-I's vicarious liability theory based on the designation of operator form must fail, and should be dismissed as a matter of law.

> **3.     The Plaintiffs in Cross-Claim are each litigating defendants, and therefore have no claim against Anadarko for contribution.**

Under maritime law, "federal courts allocate damages based upon the parties' respective degrees of fault."  *Combo Mar., Inc.*, 615 F.3d at 602 (citations omitted).  "Because a right of contribution requires that a defendant pay more than he owes, and the proportionate share rule dictates that a defendant pays only his share of the judgment -- no more, no less -- a litigating defendant could never have a contribution claim, by definition."  *Id.* at 604.  *See also Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc.*, 329 F.3d 1311, 1316 (11th Cir. 2003) (stating that, under maritime law, "[n]o suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made").  Only by alleging that they have settled with a plaintiff and procured a global release for all potential defendants, including Anadarko, could the Plaintiffs in Cross-Claim obtain a right to seek contribution from other potentially liable parties.

While the Fifth Circuit has held that no damages or settlement need have been paid to any claimant to state a <u>contingent</u> claim for contribution or indemnity, *see Guillory*, 206 F.2d at 52,[7]

---

[7]     *See also* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1431 (2d ed. 1990) (Fed. R. Civ. P. 13(g) "does not require that the claim be mature at the time of pleading[;]" hence, "a cross-claim can be contingent upon the ultimate adjudication of the cross-

the Plaintiffs in Cross-Claim are actively defending against the claims asserted by the Bundle A, B, C, and D Claimants.  Thus, as a matter of law, the Plaintiffs in Cross-Claim cannot assert a maritime contribution claim against Anadarko.

**C.      Cameron Fails to State a Claim for Contribution under OPA against Anadarko for which Relief Can Be Granted.**

Cameron asserts an OPA contribution claim against Anadarko pursuant to 33 U.S.C. § 2709.  Cameron at ¶ 107.  Section 2709 provides: "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."  33 U.S.C. § 2709.

Courts applying OPA contribution under Section 2709 have employed the same standards for allocating proportional fault among jointly liable parties as are used in analogous contribution actions under the general maritime law.  *See In re ALEX C Corp.*, Civil Action Nos. 00-12500-DPW, 01-12186-DPW, 2010 WL 4292328 at *15 (D. Mass. Nov. 10, 2010) (allocating proportional fault among two parties liable under OPA by reference to general maritime law); *Nat'l Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1446 n.4 (applying maritime negligence principles to OPA contribution claim).  Legislative history also confirms that Congress intended contribution under Section 2709 to be made upon findings of relative fault for the discharge.  *See* H.R. CONF. REP. NO. 101-653, at 111 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 789 (explaining that if the "action or omission" of a third party not designated a responsible party "contributed to the discharge" then the third party could be held "accountable financially in part or in whole" under Section 2709).

---

claimant's liability to plaintiff"); *Essex Builders Grp, Inc. v. Amerisure Ins. Co.*, 429 F.Supp.2d 1274, 1279 (M.D. Fla. 2005) (permitting contingent cross-claim for equitable subrogation and contribution).

Adjudication of a contribution claim under OPA is no different than adjudication of a contribution claim under the general maritime law. As discussed above, a non-negligent party cannot be liable for contribution because a non-negligent party appropriately bears 0% of the proportional fault for the discharge. Beyond generally identifying Anadarko's place of incorporation and principal place of business, Cameron sets forth no allegations specific to Anadarko. Thus, Cameron fails to set forth any allegations showing that Anadarko bears <u>any</u> measure of fault for the discharge. Cameron's claim for contribution under OPA must be dismissed.

**D.     HESI Fails to State a Claim against Anadarko for Negligence, Gross Negligence, or Willful Misconduct.**

HESI fails to state a claim for negligence, gross negligence, or willful misconduct. HESI at ¶ 50. It bears noting at the outset that HESI's assertion that Anadarko may be held liable for negligence under the Jones Act, 46 U.S.C. § 30104, is meritless, because the Jones Act is patently inapplicable to HESI's cross-claims. HESI ¶ 42. The Jones Act provides redress for "[a] seaman injured in the course of employment . . . against the employer." *Id.* HESI obviously has not alleged that it is a seaman, nor that Anadarko is its employer, nor that Anadarko employed any of the plaintiffs allegedly injured as a result of the *Deepwater Horizon* incident.

HESI further asserts a claim for negligence under the general maritime law, contending that Anadarko is liable for negligence, gross negligence, and/or willful misconduct, either because of its own negligence or because it is liable for the negligence of BP, its agent. HESI's allegations fail as a matter of law. HESI at ¶ 42. As discussed above, HESI fails to allege that Anadarko had a right of operational control over any of the activities that allegedly caused harm to any Plaintiff or to HESI, and therefore fails to state a claim for which relief can be granted. *See, e.g., Ainsworth*, 829 F.2d at 550. As also discussed above, BP was not Anadarko's agent,

and there can be no vicarious liability. Thus, HESI's allegations fail to state a claim for negligence, gross negligence, and/or willful misconduct. Beyond HESI's failure to allege operational control, HESI fails even to set forth the *prima facia* elements of a claim for negligence.

### 1. HESI's allegations fail to state a claim for negligence.

To state a claim for negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (internal citations and quotations omitted). HESI fails to allege in what way it was injured. Moreover, HESI fails to allege that Anadarko -- a non-operational leaseholder of mineral rights to the Macondo Prospect -- owed it any duty that allegedly was breached. Accordingly, HESI failed to state a claim for negligence.

HESI's theory of liability is apparently based primarily on its conclusory allegation that by virtue of access to data from the rig, Anadarko "knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2011 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action." HESI at ¶ 50. HESI nowhere alleges that Anadarko owed <u>HESI</u> any duty to "warn the drilling vessel crew." *Id.* Nor does HESI identify the source of any duty on the part of Anadarko to warn BP or HESI of danger, because none exists. HESI does not allege an obligation under the Operating Agreement between Anadarko and BP, which entrusts operations on the leased property exclusively to BP as an independent contractor. Ex. A to B1 Motion to Dismiss at 14, Article 5.1 [MDL Rec. Doc. 1414-2]. Even if such a contractual duty existed, it would not run to unrelated third parties such as HESI.

Nor is any such duty to be found in the case law. Leaseholders such as Anadarko owe no duty to warn independent contractors of hazardous conditions on the leased property when the independent contractors "know or should know of the existence of a particular condition and []appreciate or should appreciate its dangers." *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger") (negligence). The alleged connection is even more tenuous here: HESI is not even Anadarko's independent contractor -- Anadarko has no contractual relationship with HESI whatsoever.

Indeed, <u>HESI's</u> allegation of a duty to warn the rig of information transmitted from the rig indicating that <u>HESI's</u> cement job had failed and permitted the entry of hydrocarbons into the well makes little sense. At most, HESI alleges only that Anadarko had access to the <u>same data</u> that was available to BP, Transocean and other contractors and employees actually on the rig, including HESI. HESI does not allege that Anadarko was monitoring rig data at the precise moment that hydrocarbons allegedly entered the well or at any pertinent time thereafter. Indeed, the information available second-hand to Anadarko was necessarily incomplete because without knowledge of the rig's contemporaneous operations, Anadarko had no way of interpreting the data transmitted by the rig. Nevertheless, taking HESI's implausible allegations at face-value, it must follow that if Anadarko knew, or should have known, of the presence of hydrocarbons in the well, then BP, Transocean, and BP's other contractors also "knew or should have known" of the same information, and Anadarko therefore had no duty to warn BP, or by any extension, a duty to warn HESI.

Moreover, not only would such a warning have been futile, but also as a matter of law, the failure to alert BP and others on the rig to the information HESI alleges could not have proximately caused the loss of the *Deepwater Horizon*, because BP and Transocean took the actions they did while already in possession of the same information. *See Delta Commodities, Inc. v. M/T JO OAK, ETC*., Civ. A. No. 88-1349, 1989 WL 149253, at *4–5 (E.D. La. Dec. 6, 1989). Thus, even if a duty existed, which it does not, HESI still has not stated a claim for negligence against Anadarko. *See Fla. Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993) (maritime law elements of negligence are "<u>a causal connection between the negligence and the injury</u>, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability") (emphasis added), *cert. denied*, *Authement v. Citgo Petroleum Corp*., 511 U.S. 1019 (1994). HESI's negligence claim against Anadarko is foreclosed as a matter of law, and must be dismissed.

### 2. HESI's allegations fail to state a claim for gross negligence or willful misconduct.

Given that HESI fails to state a claim for negligence, HESI fails to state a claim against Anadarko for gross negligence or willful misconduct. *Becker v. Tidewater, Inc*., 586 F.3d 358, 367 (5th Cir. 2009) ("Gross negligence . . . has been defined as harm willfully inflicted or caused by gross or wanton negligence") (quoting *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982); *Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) (defining gross negligence under maritime law as "the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . .") (*quoting* BLACK'S LAW DICTIONARY 1185 (4th ed. 1968); *Bayer Corp. v. British Airways,* PLC, 210 F.3d 236, 239 (4th Cir. 2000) (defining "willful misconduct" as "the intentional performance of an act with knowledge that the . . . act will probably result in injury or

damage or the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences") (citation omitted).  HESI has not alleged that Anadarko owed it a duty.  HESI has not alleged that Anadarko took any action that caused the *Deepwater Horizon* incident, let alone that Anadarko acted to cause the incident with "reckless disregard of the probable consequences."  *Bayer Corp.*, 210 F.3d at 239.  Thus, HESI has not stated a claim for gross negligence or willful misconduct.

### E.     Weatherford Fails to State a Claim Against Anadarko under Any Theory of Liability.

It is unclear from Weatherford's vague and ambiguous cross-claims whether it intends to state cross-claims against Anadarko beyond its claims for indemnity and contribution.[8]  To the extent that Weatherford intends to assert claims against Anadarko for "breach of contract, fault, negligence, inattention to duty, breach of duty, breach of warranty both express and implied, breach of statutory duty, rules and regulations, or any other violation of law or contract," Weatherford fails to state any claims for which relief can be granted.

Weatherford fails to state a *prima facia* claim for breach of contract.  "A successful breach of contract claim consists of: (1) a valid contract, (2) performed by the plaintiff, and (3) breached by the defendant, (4) resulting in damage to the plaintiff*."  Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners,* 334 F.3d 423, 427 (5th Cir. 2003).  Weatherford has not alleged that it had a contract -- valid or otherwise -- with Anadarko, nor that it performed under

---

[8]     Weatherford vaguely and generally alleges that "[u]pon information and belief, the blowout, explosions, fire, and oil spill were caused by the breach of contract, fault, negligence, inattention to duty, breach of duty, breach of warranty both implied and express, breach of statutory duty, rules and regulations, and other violations of law and contract, which will be shown at the time of trial, on the part of Anadarko."  Weatherford at ¶ 4.  Weatherford further alleges that Anadarko is liable to Weatherford for "all damages, loses and expenses and defense costs," but at no point states any clear cause of action against Anadarko other than one for contribution.  *Id*. at ¶ 5.

such a contract while Anadarko failed to perform. Weatherford's claim for breach of contract must be dismissed.

Weatherford also fails to state a *prima facia* claim for negligence against Anadarko. To state a claim for negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 211. Weatherford's only factual allegation is that Anadarko "was a party to a Joint Operating Agreement which governed drilling, exploration and production of oil and gas at the Macondo well site at Mississippi Canyon Block 252." Weatherford at ¶ 2. This single allegation is patently insufficient to support any claims asserted against Anadarko. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Weatherford fails to do so, and its claims must be dismissed. Moreover, Weatherford does not allege that Anadarko owed it any duty, or allege any factual basis from which the Court could infer that such a duty existed. Weatherford fails to state a claim for negligence, and correspondingly, fails to state claims for "fault, inattention to duty, or breach of duty" (to the extent such causes of action exist under governing law and differ in any way from an ordinary claim of negligence).

Weatherford likewise fails to state even the bare minimum necessary to sketch out a claim for breach of warranty. Weatherford does not allege: (1) what warranty Anadarko supposedly breached; (2) the manner of its breach; (3) how it was injured by Anadarko's purported breach; or (4) any causal connection between its unspecified injury and Anadarko's equally unspecified breach. *Webre v. Azalea Fleet, Inc*., No. 03-1190, 2005 U.S. Dist. LEXIS

4845, at *7 (E.D. La. 2005) (to establish a breach of warranty, plaintiff must "establish a causal connection between his injury and the breach of duty"). Weatherford's shotgun claim for breach of warranty must be dismissed.

Finally, Weatherford fails to state a claim for "breach of statutory duty, rules and regulations, or any other violation of law or contract" because Weatherford fails to identify <u>any</u> statutory duty, rule or regulation that Anadarko allegedly breached, or what other law or contract Anadarko allegedly violated. There is simply no way for Anadarko to defend against this utterly vague claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Weatherford has not even bothered to recite the elements of its cause of action, let alone sufficient factual matter to support a claim. Weatherford's claims for "breach of statutory duty, rules and regulations or any other violation of law or contract," whatever that entails, must be dismissed.

In sum, Weatherford fails to state any claims against Anadarko for which relief can be granted. Weatherford's cross-claims must be dismissed.

## IV.
## CONCLUSION

For all the foregoing reasons, the Cross-Claims of HESI, Cameron, Dril-Quip, MI, and Weatherford against Anadarko Petroleum Corporation and Anadarko E&P Company LP must be dismissed in their entirety.

Respectfully submitted,

DATED: June 20, 2011                    BINGHAM McCUTCHEN, LLP


/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 20, 2011.


_____ /s/ *Ky E. Kirby* _____
KY E. KIRBY