IN UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN WRIGHT | § | CIVIL ACTION NO. 4:11-mc-00296 |
| | § | |
| | § | (REGARDING MDL NO. 2179 |
| v. | § | PENDING IN THE |
| | § | UNITED STATES DISTRICT |
| UNIDENTIFIED PLAINTIFFS FROM | § | COURT FOR THE EASTERN |
| IN RE: OIL SPILL BY THE OIL RIG | § | DISTRICT OF LOUISIANA, |
| "DEEPWATER HORIZON" IN THE | § | SECION: J |
| GULF OF MEXICO, MDL NO. 2179 | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN) |

JOHN WRIGHT'S REPLY TO RESPONSE TO
JOHN WRIGHT'S MOTION TO QUASH SUBPOENA

TO THE HONORABLE JUDGE OF SAID COURT:

John Wright ("Wright") files this Reply to the Response to John Wright's Motion to Quash Subpoena and would respectfully show the Court as follows:

1. Suppose a person is injured in an automobile collision. The injured patient goes to a doctor who performs a diagnosis of the injured condition and its causes. It is determined that surgery is in order, and the physician performs the surgery. After that, the patient files a lawsuit against the other party to the collision. One of the parties decide they want to take the physician's deposition, but they do not want to pay for the doctor's time. That party attempts to subpoena the doctor claiming that he is a fact witness. The doctor files a motion to quash on the grounds that he is a medical professional, and is entitled to be paid for his time in attending the deposition.

2. That situation is virtually isomorphic with the matter currently before this Court. There was an explosion and subsequent oil spill at the Deepwater Horizon rig. Wright, as an employee of Boots and Coots, was brought in to investigate certain aspects of that catastrophe. He made his diagnosis. Ultimately, it was determined that to cure the leaking oil, a relief well should be drilled. Wright, again as an employee of Boots and Coots, performed the "surgery" (he was in charge of drilling the relief well).

3. In the litigation over the oil spill, some of the parties want to take Wright's deposition. Wright has told them that he would agree to go to New Orleans, and provide two days of testimony, if they would pay his fees for his time and his expenses. Wright even agreed to specific dates in June that he was available. What happened next is set out in the motion and exhibits, and will not be repeated here. However, much of the response that has been filed by the parties wanting the deposition needs to be corrected and clarified. Matters will be replied to in the order that they are presented in the response.

4. Wright has not been uncooperative regarding his deposition. He even agreed to dates for his deposition if the fee arrangements could be agreed. He was ultimately told that the deposition would not be taken on the agreed dates, and then he was subpoenaed for dates that he had not agreed to and had no notice of before being served with the subpoena. It is inaccurate to say that Wright is to blame for any failure to negotiate a fee. There were negotiations until Wright's counsel was informed "I am sorry, but it does not look like we will be able to work this out. There are too many individuals and parties involved and it is hard to get a consensus." This was delivered

by email on Saturday, June 18, 2011, by Ervin A. Gonzalez, one of the attorneys for the Plaintiffs. **IT WAS ONLY AFTER COUNSEL FOR WRIGHT WAS TOLD THAT THE MATTER COULD NOT BE WORKED OUT THAT THIS MOTION TO QUASH WAS FILED.**

5. The parties seeking the subpoena state in their response that the Court in New Orleans has determined that Wright's deposition should be allowed for two full days, instead of the normal rule that it should be for one day, not more than 7 hours. Neither Wright nor his counsel has ever been informed of that fact. If there has been a determination by the Court in New Orleans, that determination did not involve either Wright or his counsel. Neither has appeared in New Orleans. The reason is that such matters are to be determined in the Court where the deposition is to be taken. That is the Southern District of Texas. However, as has been stated many times, Wright is quite willing to appear for a two-day deposition, as long as he is paid his usual fees for doing so.

6. The Court need only look at the subpoena to see that it is not adequate. Furthermore, the party serving the subpoena never filed any miscellaneous action in the Southern District of Texas, so even the part of the subpoena that claims to have been issued out of the Southern District of Texas is inaccurate. In fact, it is Wright who has had to file a miscellaneous action in order to bring this Motion to Quash. While one page of the subpoena does at least claim to be from the Southern District of Texas, the more substantive part of the subpoena says it is issued out of Florida.

7.      Wright does agree, however, that the defects in the subpoena are not the most important issues before the Court. That is why those issues appear toward the end of the Motion to Quash. (At the time the Motion to Quash was filed, the extent to which the parties wishing to take the deposition would attempt to enforce the original dates in the subpoena was uncertain from mixed messages. Under those circumstances, any prudent attorney would surely point out all of the defects in the subpoena itself.) Wright has been and remains willing to appear for his deposition on agreeable dates, as long as he is paid his usual fee and his expenses.

8.      Perhaps the most disappointing position taken by the parties wishing to take the deposition is that Wright is somehow a fact witness to the explosion and oil spill. He may not be a retained expert, but he is unquestionably an expert. All of his work and all of his analysis occurred after the operative events giving rise to the litigation had already occurred. He cannot be a fact witness to any of that, and every piece of information he has is a result of his investigation as an expert responding to an oil well catastrophe.

9.      When the parties issuing the subpoena finally do confront Rule 45(c)(3)(B)(ii), they claim it does not apply because "a party to the litigation (BP) requested Wright to prepare this report." It is tempting to reply that this point is so hyper technical as to completely miss the point of the rule. However, if the point is acceptable, then so would a hyper technical reply be acceptable. Namely, BP was not a party to any litigation when it hired Boots and Coots to have its employee, Wright, investigate certain aspects of the catastrophe. Going back to the earlier analogy, the

4

parties wanting the subpoena are essentially arguing that because the doctor treated the patient who is now a party, they should be allowed to take the doctor's deposition without paying him or her.

10.     The parties seeking the subpoena have agreed not to try to enforce the July 13 and 14 days of the deposition. However, this agreement was not reached until after the Motion to Quash was filed. (There was an indication in an email dated June 16, that new dates could be worked out, but then on June 18, there was an email that things could not be worked out.) In any event, as Wright has stated over and over through his counsel, the dates can be agreed upon quickly, as long as the issue concerning his fees is resolved. Wright has already agreed to dates once without that issue being resolved, and the result was an amazing amount of correspondence and attorney's fees with no resolution. There is no point going down that road again and expecting to arrive at a different destination. Once the fee issue is resolved, a date and location for the deposition will be easy. The only reason the dates became an issue, was because the subpoenaing parties picked the dates without consultation with Wright, when he is scheduled to be in Europe on business. Now that they have agreed not to enforce those dates, the issue is the fees.

11.     With regard to that fee issue, some of the statements made in the response to the Motion to Quash may be a little misleading. Wright has always been willing to simply appear for his deposition (assuming his fees and expenses are paid) without further preparation. In response to questions asked of Wright's counsel, attorneys for Halliburton were informed that Wright has no documents related to his

5

report, nor does he have a copy of his report. These were all turned over as part of a confidentiality agreement with BP. (The confidentiality issue has been resolved.) Wright's counsel informed Halliburton's counsel that if they wished Wright to prepare beforehand, it would take approximately two days, and he would need to receive the documents.

12. In the response, the parties seeking the deposition seem to imply that Wright is insisting on $4,000.00 in expenses to have his deposition taken in Houston. That is incorrect, the estimation of expenses was for travel and lodging in New Orleans, which was where the parties wanted to take Wright's deposition. If the parties wish to take Wright's deposition in Houston, he would not incur those expenses. The only reason the parties seeking the deposition have scheduled it in Houston, is because that is the only place they are entitled to take it under the rules by subpoena. If they could subpoena Wright for New Orleans, they would.

13. As stated earlier, it is not Wright who cut off negotiations concerning his fees. It was counsel for the parties seeking the deposition who told Wright's counsel that it could not be worked out.

14. While counsel for Wright does not know Magistrate Judge Shushan, Judge Shushan is obviously doing an excellent job in managing the multidistrict litigation. However, when it comes to a distant deposition, the deposition and all issues surrounding it are, under the rules, to be determined by a court in the district where the deposition is subpoenaed. That is this Court, not a court in New Orleans. The idea that a person subpoenaed should have to incur the expense of going to another state to

present issues surrounding that deposition goes against the spirit of the rules which are to avoid a burden on the witness, as well as the letter of the rules that require issues of that nature to be determined by the court in the district where the deposition is to take place or is subpoenaed. It is unknown as to what the parties requesting the subpoena are referring to when they refer to Judge Shushan's expertise on what is reasonable. What is reasonable is the usual and customary charge. Wright has provided an Affidavit establishing what the usual and customary charge is, and that it is based on his experience, not only his usual charge, but approximately what other people are charging in a similar circumstance. It is what he was paid to do the work they want to depose him about. **ON THE OTHERHAND, THE PARTIES SEEKING THE DEPOSITION HAVE PRESENTED ABSOLUTELY NO EVIDENCE OF ANY KIND THAT WOULD REFUTE OR REBUT THE REASONABLENESS OF THOSE FEES.**

15. With regard to legal fees, it cannot be stated enough times: Wright's counsel has never refused to negotiate about Wright's fees. Alternative proposals have been made, and rejected by the parties seeking the subpoena. It would be unfair to Wright to tell the Court what those are, as his attempts to be flexible and compromise should not be held against him when the parties seeking the subpoena have stated categorically that it cannot be worked out.

16. Wright is seeking attorney's fees from the law firm that purports to issue the subpoena, because that is the only law firm identified to him. If there is a plaintiffs' steering committee, and it is an entity from which the Court can order the award of attorney's fees, and the Court determines that it should do that, then Wright has no

objection to that being done. It is not altogether obvious that even if there is a plaintiffs' steering committee, that it is an entity against which attorney's fees can be awarded. Certainly, the law firm can seek its attorney's fees from the other parties involved, and Wright has no objection if the law firm attempts to do that.

17. The undue burden or expense that is being imposed on Wright is not only the dates for the deposition. In fact, that is an issue that appears to be worked out at this point. The undue burden is that Wright is being subpoenaed for a two-day deposition and will not be paid his fees or expenses.

18. The parties seeking the deposition admit at one point that "Mr. Wright . . . also possesses key facts and *opinions* regarding the negative pressure test that essentially caused the blowout and subsequent oil spill." What they call "key facts" are actually the conclusions Wright drew on investigating the negative pressure test. Any data on which he based his investigation would be contained in documents and evidence that is available to all parties in this case. If the parties wish to have the conclusions and "opinions" of an expert, they can go hire one. If they want the opinions and findings of Wright, they should pay him for his time.

CONCLUSION

For the reasons stated in this Reply, and in the original Motion and Exhibits, Wright requests the Court to either quash the subpoena in question, or condition the subpoena on the payment to him in advance of two-days of his usual rate at $8,000 per day. Wright also requests his attorney's fees which continue to increase, and are now approximately $7,500.00 after this reply has been drafted and filed. If the deposition is

to be held in any other location other than Houston, Wright requests that he be awarded his expenses. While it is anticipated that the parties will be able to agree on dates, it is also requested that the dates be set at a reasonable time convenient to all parties' schedules. Wright requests any other relief to which he may be entitled.

>Respectfully submitted,
>
>KURT ARBUCKLE, P.C.
>
>By: /S/ Kurt Arbuckle
> KURT ARBUCKLE
> Texas Bar No. 01284500
> Federal ID No. 6613
> 2700 Post Oak Blvd., Suite 950
> Houston, Texas 77056
> 713 961-5353
> 713 961-5236 Fax
>ATTORNEY FOR JOHN WRIGHT

CERTIFICATE OF SERVICE

I hereby certify that on the 30th of June 2011, a true and correct copy of John Wright's Reply to Response to John Wright's Motion to Quash Subpoena was sent via fax and certified mail, return receipt requested, to counsel listed below:

>Guy E. Matthews
>Terry Joseph
>Matthews, Lawson & Johnson, PLLC
>2000 Bering Drive, Suite 700
>Houston, Texas 77057
>
>Ervin A. Gonzalez
>Colson Hicks Eidson
>255 Alhambra Circle, Penthouse
>Coral Gables, Florida 33134

Stephen J. Herman
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

James Parkerson Roy
Domengeaux Wright Roy & Edwards LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501

/S/ Kurt Arbuckle
KURT ARBUCKLE