1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5

6     IN RE:  OIL SPILL BY THE          *   Docket 10-2179 "J"
      OIL RIG DEEPWATER HORIZON         *
7     IN THE GULF OF MEXICO ON          *   April 1, 2011
      APRIL 20, 2010                    *
8                                       *   9:30 a.m.
                                        *
9     This Document Relates to:         *
                                        *
10    All cases.                        *
                                        *
11    * * * * * * * * * * * * * * * * * *

12                      PROCEEDINGS BEFORE THE
13                    HONORABLE SALLY SHUSHAN
                    UNITED STATES DISTRICT JUDGE
14

15    APPEARANCES:

16

17    Plaintiffs' Liaison        Domengeaux, Wright, Roy & Edwards
      Counsel:                   BY:  JAMES P. ROY, ESQ.
                                 556 Jefferson Street
18                               Suite 500
                                 Post Office Box 3668
19                               Lafayette, Louisiana 70502

20
                                 Herman, Herman, Katz & Cotlar
21                               BY:  STEPHEN J. HERMAN, ESQ.
                                 820 O'Keefe Avenue
22                               New Orleans, Louisiana 70113

23

24

25

APPEARANCES CONTINUED:

For the Plaintiffs:                Lewis, Kullman, Sterbcow &
                                     Abramson
                                   BY:  PAUL M. STERBCOW, ESQ.
                                   2615 Pan American Life Center
                                   601 Poydras Street
                                   New Orleans, Louisiana 70130


For the Federal                    U.S. Department of Justice
Government Interests:              Torts Branch, Civil Division
                                   BY: R. MICHAEL UNDERHILL, ESQ.
                                   450 Golden Gate Avenue
                                   7th Floor, Room 5395
                                   San Francisco, California 94102


For State Interests:               Office of the Attorney General
                                   State of Alabama
                                   BY:  COREY L. MAZE, ESQ.
                                   501 Washington Avenue
                                   Montgomery, Alabama  36130


For the State of                   BY:  HENRY DART, ESQ.
Louisiana:                         Attorney at Law
                                   510 North Jefferson Street
                                   Covington, Louisiana  70433


For BP:                            Liskow & Lewis
                                   BY:  DON K. HAYCRAFT, ESQ.
                                   701 Poydras Street
                                   Suite 5000
                                   New Orleans, Louisiana 70139


                                   Kirkland & Ellis
                                   BY:  J. ANDREW LANGAN, ESQ.
                                   300 North LaSalle
                                   Chicago, Illinois 60654

```
 1    APPEARANCES CONTINUED:

 2    For Transocean:              Frilot, Partridge, Kohnke
                                     & Clements
 3                                 BY:  KERRY J. MILLER, ESQ.
                                   1100 Poydras Street
 4                                 Suite 3600
                                   New Orleans, Louisiana 70163
 5

 6
       For Halliburton:            Godwin Ronquillo
 7                                 BY:  DONALD E. GODWIN, ESQ.
                                   BY:  JENNY L. MARTINEZ, ESQ.
 8                                 Renaissance Tower
                                   1201 Elm Street
 9                                 Suite 1700
                                   Dallas, Texas 75270
10

11
                                   Godwin Ronquillo
12                                 BY:  R. ALAN YORK, ESQ.
                                   1331 Lamar
13                                 Suite 1665
                                   Houston, Texas  77010
14

15
       For Anadarko and MOEX:      Kuchler Polk Schell Weiner &
16                                   Richeson, LLC
                                   BY:  DEBORAH D. KUCHLER, ESQ.
17                                 1615 Poydras Street
                                   Suite 1300
18                                 New Orleans, Louisiana 70112

19

20    For O'Brien's Response       Weil Gotshal & Manges
      Management, Seacor           BY: THEODORE E. TSEKERIDES, ESQ.
21    and Siemens Financial:       767 Fifth Avenue
                                   New York, New York 10153
22

23
       For Cameron International:   Stone Pigman Walther Wittmann
24                                 BY:  CARMELITE M. BERTAUT, ESQ.
                                   546 Carondelet Street
25                                 New Orleans, Louisiana  70130
```

```
1   APPEARANCES-CONTINUED:

2   For MI-Swaco:              Morgan, Lewis & Bockius
                               BY:  STEVEN LUXTON, ESQ.
3                              1000 Louisiana Street
                               Suite  4000
4                              Houston, Texas  77002

5

6   For Weatherford:           Jones, Walker, Waechter,
                                 Poitevent, Carrère & Denègre
7                              BY:  GLENN GOODIER, ESQ.
                               BY:  EDWARD DIRK WEGMANN, ESQ.
8                              201 St. Charles Avenue
                               50th Floor
9                              New Orleans, Louisiana 70170

10

11  Also Present:              ANTHONY FITCH, ESQ.
                               WILLIAM TAYLOR, ESQ.
12

13

14  Official Court Reporter:   Jodi Simcox, RMR, FCRR
                               500 Poydras Street
15                             Room HB-406
                               New Orleans, Louisiana 70130
16                             (504) 589-7780

17

18  Proceedings recorded by mechanical stenography, transcript

19  produced by computer.

20

21

22

23

24

25
```

1              **PROCEEDINGS**

2              **(April 1, 2011)**

3       **THE DEPUTY CLERK:**  All rise.

4       **THE COURT:**  Hi, phone participants.  How are you?

5  Everybody have a seat.

6           If you-all could put us on mute, that would be

7  helpful.  Don, I thought you had switched sides there for a

8  minute.  What happened?

9       **MR. HAYCRAFT:**  I don't want to mislead anybody.  I'll

10 sit back down over here.

11      **MR. HERMAN:**  We would welcome Don on our side.

12      **THE COURT:**  I know you would.

13           All right.  Guys, how's everybody today?  Good.

14 All right.  Let's get rolling.

15           We've got the calendar up and ready.  I guess

16 there's a couple of things -- a couple of comments that I want

17 to make about the calendar, because it's filling up rapidly.

18 We look like we have some time in the last two weeks of April;

19 and to the extent that we can, it seems to me we should try to

20 target some witnesses to fill up those dates.  That would be

21 helpful, rather than backloading May, and then June looks like

22 it's pretty full at this point.

23           So to the extent that we're still scheduling, if

24 you-all could try to see if we could slide in late April, that

25 would be great.

 1                    Relative to rescheduling depositions, there's

 2    always things that happen, people get sick, emergencies happen,

 3    but other than that let's try to avoid any kind of

 4    rescheduling, because that would be a hiccup in the road.

 5                    So if witnesses call and they say it would be

 6    more convenient to reschedule, we're not trying to be

 7    convenient.  It seems to me we're past the convenience stage.

 8    If you'll communicate that to them, obviously, there are other

 9    circumstances that, you know, we're going to have to

10    accommodate.

11                    Last week we talked on document production about

12    the idea of setting a cutoff date for the PSC to submit request

13    for production of documents beyond which leave of court would

14    have to be granted.

15                    Has the PSC given that any thought?  You can

16    talk into the mic if you want to, Steve.

17           **MR. HERMAN:**  Steve Herman for the PSC.

18                    I think we're waiting for the defendants to make

19    a proposal, but another month maybe.

20           **MR. LANGAN:**  Andy Langan for BP, Your Honor.

21                    Mr. Herman and I are in sync today.  We were

22    going to suggest like a May 1st propoundment date.  It sounds

23    like that's what they're saying and that's fine.  In terms of

24    like a commitment, at least for BP, about responses, and what I

25    mean by that is finishing production, we were kind of thinking

1    July 1.

2                    I mean, that would give 30 days to respond and

3    make objections, meet and confer, an additional 30 days to do

4    what we need to do to get all that done.  Now, I have no doubt

5    that there will be issues, especially on the response side of

6    the case.  Because the outstanding requests that relate to the

7    response side already are far more than anyone could possibly

8    do between now and the end of July.

9            **THE COURT:**  Let's talk about -- well, hold on a

10    second, Steve, and we're going to come back to you.

11            **MR. HERMAN:**  I'm sorry.

12            **THE COURT:**  That's okay.

13            **MR. HERMAN:**  Okay.

14            **THE COURT:**  Andy, when you talk about the response

15    side, let's get a little more specific about what the scope of

16    that is and what's coming across your desk.  Is it what I refer

17    to as the *capping issue*?

18            **MR. LANGAN:**  Well containment, well control, relief

19    wells, top kill, static kill, junk shot, on and on and on.

20            **THE COURT:**  Okay.  But it is the capping issue?

21            **MR. LANGAN:**  Correct, and well control.

22            **THE COURT:**  And not the response as in dispersants,

23    et cetera?

24            **MR. LANGAN:**  Well, you could look at it that way.

25    That's correct.  That's what -- they're both big.  But if you

1    add cleaning up the oil and all the beaches.

2            THE COURT:  That's why I want to try to be focused on

3    -- I think we've been pretty loose on what we've said about

4    response.

5            MR. LANGAN:  Right.

6            THE COURT:  And we all kind of know that when we say

7    *response* we mean the capping issue and the efforts that were

8    made to stop the oil flow and not -- not respond to the oil

9    itself.  Is that a fair segregation?

10           MR. LANGAN:  I would call that well control,

11   personally.

12           THE COURT:  Okay.

13           MR. LANGAN:  But I think the response effort captures

14   well control and a whole bunch of other stuff too.

15           THE COURT:  Okay.  So maybe we can start talking in

16   terms of well control.

17           MR. TSEKERIDES:  That would be helpful for the

18   responders, Judge.

19           THE COURT:  That was the -- how did you know who I

20   was focusing my comments on?

21           MR. TSEKERIDES:  My ears were tingling.

22           THE COURT:  Ted, that's you, huh?

23           MR. TSEKERIDES:  That's me.

24           THE COURT:  That's you.  Okay.

25                   So we're going to talk from now about well

1     control.  Do you like that?  Ted likes that.

2            Okay.  So, Andy, what I'm hearing you say is

3     that you have recently been served with a lot of discovery

4     relative to well control.

5           **MR. LANGAN:**  And other things.

6           **THE COURT:**  Yes.

7           **MR. LANGAN:**  I mean, that include things like

8     dispersants, cleanup, and I mean, they cover the gamut, I

9     believe.

10          **THE COURT:**  Do you-all want to comment on that,

11    Steve, about whether you-all are going to be getting into

12    dispersants and cleanup and...

13          **MR. HERMAN:**  It's always been our view, and perhaps

14    we haven't articulated it as well as we should have, but it's

15    always been our view that the trial that would happen in

16    February of 2012 would include the actual blowout and explosion

17    of April 20th and what we're describing now as well control and

18    would not exclude cleanup, booms, dispersants, *in-situ* burning,

19    et cetera.

20           One thing that we tried to do to make that,

21    hopefully, a little bit clearer was when we recently moved to

22    amend our B3 master complaint was to make it absolutely clear

23    in case there was any doubt that there are no economic loss

24    claims being asserted against those B3 defendants.  There may

25    be a few contractual issues; but from a tort liability

1   standpoint, and to make it clear from our point of view,

2   they're not part of the trial, they shouldn't be part of the

3   trial, their fault shouldn't be allocated and we don't need

4   discovery on those issues right now.

5              The two responses that I have to opposing

6   counsel's comments are:  Our basic -- I mean, it may be a lot

7   of documents, and we understand it's a rolling production, et

8   cetera, but our basic well control discovery went out, if it

9   wasn't there before, on January 23rd when we served our third

10  set of omnibus discovery requests.  So it's not like they just

11  got it.  They've had several months, at least, to start working

12  on it.

13             The other thing is one thing I was unclear about

14  in terms of their final deadline for responses of July 1, I

15  think it was, is that for everything or just things that we're

16  going to serve them as of May 1st?  Because July 1st, if they

17  have until July 1st to give us everything, that sounds like a

18  long time, particularly since most of the depositions will be

19  already concluded by that point.

20             **MR. LANGAN:**  Back to me?

21             **THE COURT:**  Yeah, I guess it's back to you.  I mean,

22  you are doing rolling discovery now and you've got the

23  additional custodial production going.

24             **MR. LANGAN:**  Right.

25             **THE COURT:**  So when you set the July 1st date, I

COX, RMR, FCRR - OFFICIAL COURT REPORTER  UNITED STATES DISTRICT COURT  EASTERN DISTR

1    assume that excludes the custodial production, meaning that

2    will be done before the July 1st date, and that also does not

3    include the rolling production that you're doing.

4              In other words, that would be your final date

5    for production of documents responsive to anything served on

6    you on or before May 1st.

7         MR. LANGAN:  Generally, I agree with that.  I was

8    really offering that date in response to the May 28th order of

9    paragraph 2B which says that we're supposed to suggest a

10   deadline for the defendants to respond to all requests for

11   production of documents.  So that's -- we were trying to give

12   you a date.

13             I realize that we will have earlier dates for

14   custodial file things.  I get that.  They've now served, I

15   think, seven sets of document requests on us, plus five omnibus

16   requests on everybody.  So 12 sets of document requests to BP

17   plus the custodial file stuff.

18             I'd like to make a couple other comments, if I

19   could, Your Honor.  I think the question of what the trial's

20   going to look like, there are going to be some agreements and

21   perhaps some disagreements about that.  So I don't want to -- I

22   don't think we're arguing about that day.

23        THE COURT:  No.

24        MR. LANGAN:  Okay.  So I don't necessarily agree with

25   what the PSC has said about that, and that's really for another

1    day.

2              Also, I believe that in the course of seeking

3    discovery in MDL-2179, the PSC has served requests on us -- and

4    I'm not being critical, it's just a fact -- that go beyond the

5    issues that are going to be tried in February 2012.  So I think

6    the conversation we're having today, I believe, relates to

7    deadlines and a time line for production of documents to get

8    the trial ready.

9              **THE COURT:**  I think that's absolutely correct.  And

10   that's why I'm asking the question about response versus well

11   control.

12             **MR. LANGAN:**  Correct.

13             **THE COURT:**  Because we got to get ready for the

14   February trial and that's really all I think this group is

15   concerned with right now.  There's lots more concerns beyond

16   that, but I agree with you, we just have to get ready for the

17   February trial.

18             **MR. LANGAN:**  And the only reason I emphasize the

19   point is is that Your Honor a few minutes ago, I think, said

20   something like, "Well, is July 1 the date for you to get

21   everything produced?"  And when I heard that, I said, "Now,

22   wait a minute.  If everything means things like dispersant

23   discovery --" and I don't think anybody means that, but I

24   wanted the record to be clear.

25             **THE COURT:**  Okay.  Steve?

```
 1            MR. HERMAN:  Steve Herman for the PSC.

 2                 Not only do we agree with that, but we don't

 3     want unfocused discovery, shotgun discovery, to slow down what

 4     we really need.  In fact, my understanding is that we're

 5     working collaboratively with BP on prioritization so that even

 6     within what we think will be relevant to the February 2012

 7     trial, we can have some prioritization.

 8                 And my understanding is that they're working

 9     with us on that, and I hope that continues.

10            MR. LANGAN:  Mine as well.  My understanding as well.

11            THE COURT:  Absolutely, guys.  I guess my one comment

12     would be that if there is discovery or request for production

13     of documents out there that you believe are relevant to the

14     issues in the MDL, but not relevant to the issues that will be

15     involved in the February trial, put that on your plate and

16     agree that those will be deferred and we'll get to them on

17     another day.

18            MR. HERMAN:  Yes, Your Honor.

19            THE COURT:  Okay.  Good.

20            MR. LANGAN:  Your Honor, do you want to talk about

21     the custodial file?  Because I know that in paragraph 2 here

22     you also ask us to consider --

23            THE COURT:  I do.  First, I want to agree that we

24     have an agreement on May 1st, July 1st; does that sound right?

25            MR. HERMAN:  Yes, Your Honor.
```

 1            THE COURT:  Okay.  Good.

 2            MR. LANGAN:  I'm just speaking for BP.  I mean, there

 3   are other counsel here.

 4            THE COURT:  Well... May 1st, July 1st.

 5            MR. LANGAN:  Let's keep that in mind when it's time

 6   to talk about deposition time then.

 7            THE COURT:  Well, exactly.  Exactly.  Okay, guys.  I

 8   am very concerned that we keep on track and accomplish what

 9   we're setting out to do for the London depositions.  So, yes,

10   Andy, I do want to talk about custodial file production for the

11   London deponent.

12            MR. LANGAN:  Okay.  What I said last time holds true,

13   which is I don't think we'll be able to deliver complete

14   custodial file production before the first lawyer leaves for

15   London in, I guess, late May or early June.

16                 However, what I would like to do, Your Honor, is

17   come back and say we'll develop a schedule for what we think we

18   can do.  I don't have that today, but we've thought about it

19   and we hear you, we want to make that happen.

20            THE COURT:  Everybody wants it to go smoothly.  So,

21   you know, if you can propose something so that the attorneys

22   who will be questioning the deponents have some lead time, that

23   will be very helpful, okay?

24            MR. LANGAN:  Okay.

25            MR. ROY:  Your Honor, in regard -- Jim Roy.

1            In regard to anything that is physically

2    produced in London for our team, while we'll have adequate

3    support staff there with computers, et cetera, and search

4    capability on-site, can we make sure, Andy, that whatever is

5    physically produced -- hopefully, Judge, as you've intimated,

6    we get that before we ever leave for London -- but to the

7    extent we get stuff in London, Andy, could we make sure that we

8    get it on actual hard drives delivered to us there so that we

9    can plug them into our computers and do searches there?

10           **MR. LANGAN:**  I'm sure we can work with counsel on

11   that.

12           **THE COURT:**  All right.  Good.  Good.  Good.  Okay.

13   We'll carry that over to next week, huh?

14           All right.  Now, where is Mr. Miller?  Hello,

15   Mr. Miller.  How are you?

16           **MR. MILLER:**  I'm doing fine.  How are you

17   Magistrate Shushan?

18           **THE COURT:**  Why don't you come on down to the podium

19   because I guess you're going to be here for a while.

20           So, Kerry, you sent out an e-mail, which you

21   assume everybody's had the opportunity to look at, requesting

22   additional time for how many witnesses?

23           **MR. MILLER:**  I think it was four or five, Your Honor.

24           **THE COURT:**  One, two -- yeah.  Okay.  And instead of

25   your allotted 1.25 hours, you are asking for an additional

1   2.5 -- I'm sorry, a total of 2.5 hours.

2           **MR. MILLER:**  A total of 2.5.  I'm not necessarily

3   asking for an additional 2.5.

4           **THE COURT:**  I understand.  You're asking for two and

5   a half hours and the issue being how we're going to accommodate

6   the request.

7           **MR. MILLER:**  Your Honor, there's been some

8   development on that.  I've been talking to some of the other

9   folks as to how we may be able to do that for these five

10  witnesses only, given who they are and where the issues are

11  coming out.  It may be that we can do it within the 15 hours by

12  obtaining -- or obtaining an hour's time from some of the folks

13  on this side of the table.

14          And, you know, the discussions are -- we had

15  them last night, we had them this morning.  I only sent the

16  e-mail out about 12 hours ago -- 16 hours ago.  I really wanted

17  to limit the issue.  I didn't want to say everybody in April.

18  And then you were very precise.  You wanted to know who in

19  April do you need additional time and give me a paragraph or a

20  couple of sentences as to why.

21          And I know Andy followed up with some

22  information and Alan York, I think, this morning also copied

23  the same group.  Like I say, I've been trying to work within

24  the 15-hour time deadline and see what we can do on the front

25  end to give us adequate time to do what we need to do to

1    represent our client, which is what I set forth in the memo,

2    and not so much as upset other things that are going on, which

3    hopefully is a win/win for all here.

4              THE COURT:  Yes.  Absolutely.  And it did occur to

5    me, and I'm glad that you-all are having those discussions,

6    that the PSC probably has similar interests in these deponents

7    as does Transocean, maybe not completely aligned but to the

8    extent that you can share time.

9              Maybe what we can do is see what you can work

10   out to accommodate your request for a total of 2.5 hours.  And

11   if you come up short, why don't you update me and we can figure

12   out what to do from there.

13             MR. MILLER:  Yes.  I think that's fine and I think we

14   may be able to do that by the end of this afternoon after lunch

15   maybe or certainly by Monday morning.

16             THE COURT:  So that really, I mean, that impacts next

17   week.  So maybe you-all could have lunch together.

18             MR. MILLER:  Yes.  I think the request incepts with

19   Mr. Simms on April the 6th, which starts on Wednesday.

20             THE COURT:  Yes.  Exactly.  I think you've got the

21   4th through the 6th, huh?

22             MR. MILLER:  6th and 7th I think is the first

23   witness.

24             THE COURT:  Oh, you're right, 6, 7.  6, 7, yeah.

25             MR. MILLER:  Yeah, we didn't seek extra time for

1   LeBleu.

2          **THE COURT:**  So at least that one we've got to really

3   hop on.  But I'm inclined to work with you to make sure that

4   you do get some extra time with these witnesses.  So see what

5   you can work out and then let me know where you stand.

6          **MR. MILLER:**  I sure will.  I think we can let you

7   know probably by 2:30, 3:00 this afternoon.

8          **THE COURT:**  Good.  I might still be around.

9          **MR. MILLER:**  I was hoping not to, but I don't think

10  it's going to work out that way.

11          **THE COURT:**  I will still be around.

12          Okay.  I guess that takes care of you for the

13  moment, huh?

14          **MR. MILLER:**  Yeah, I think so.  I think so.

15          **THE COURT:**  Next up is BP's request for additional

16  time.  And, Andy, you had already suggested not extending the

17  length of the depositions but instead borrowing time from

18  others.

19          **MR. LANGAN:**  Correct.

20          **THE COURT:**  Which I think is a good idea.  Obviously,

21  you were ahead of the game; Kerry was following you on that

22  one.

23          **MR. LANGAN:**  Well, sort of.  He was definitely ahead

24  of the game in terms of making his request.  I think both

25  Transocean and BP were trying to be responsive to your order.

```
 1              THE COURT:  And you were.
 2              MR. LANGAN:  And just to say, I guess we'd prefer to
 3    work it out informally too.  I don't seem to have the
 4    relationships Mr. Miller does.
 5              MR. MILLER:  On that one, I can't help you, Andy.
 6              THE COURT:  Well, I'll tell you what I'd like you to
 7    do.
 8              MR. MILLER:  You've got to be a little nicer.
 9              THE COURT:  Why don't you offer to take General
10    Strange to lunch today and see what you can work out with him.
11              I do think that, again, you know, we can think
12    about -- how soon are these people coming up, Andy?
13              MR. LANGAN:  Our first one is -- I did them in chron
14    order --
15              THE COURT:  April 11.
16              MR. LANGAN:  April 11th, right.
17              THE COURT:  Pretty quickly.
18              MR. LANGAN:  A week from Monday, I guess.
19              THE COURT:  Well, let's see, do we have any
20    volunteers?
21              MR. STERBCOW:  For?
22              THE COURT:  To work with Andy.
23              MR. LANGAN:  No April Fool's jokes, please.
24              THE COURT:  I think the April Fool's joke is going on
25    now as a matter of fact.
```

1      **MR. STERBCOW:**  Are we specifically talking about time

2  allotments?

3      **THE COURT:**  Yes.

4      **MR. STERBCOW:**  Paul Sterbcow for the PSC.  We made a

5  foray into this some time back.  We decided that we would try

6  to work out a situation where if we didn't notice a deposition,

7  we wouldn't go first and this and that and it turned out to

8  be -- we created more problems than we solved.

9          So since that time our position has been we go

10  first as the party carrying the burden of proof, we take our

11  five hours or any part thereof that we want to take.  From that

12  point forward, if there is time sharing going on, we have

13  stayed out of it.  We've not objected.  We haven't said

14  anything.  Whatever anybody else wants to do is fine.

15          We will consider ceding time, but it's hard for

16  us to do that because we don't know, first of all, going in how

17  long it's going to take; and then we don't know what we're

18  going to hear, if we reserve an hour or whatever it is, what

19  we're going to hear from the parties.  And, again, because we

20  bear the burden of proof, we want to have the right to come

21  back and clean anything up that we need to clean up.

22          To the extent we can give time in a particular

23  deposition, we'll do it.  But I will say, for the record, I

24  don't anticipate us having any additional time on any of the

25  depositions that Kerry mentioned, because those are all very

1    important.

2         **THE COURT:**  Right.  I understand.

3         **MR. STERBCOW:**  But I'm happy -- I mean, to the extent

4    that we need to work with defendants on their time sharing

5    arrangement, we'll do whatever we need to do to help them.

6         **THE COURT:**  Which I appreciate.  You just can't make

7    a commitment now.

8         **MR. STERBCOW:**  Right.

9         **THE COURT:**  Okay.  So that's not going to help Andy's

10   situation.

11        **MR. STERBCOW:**  I tried though.

12        **THE COURT:**  But I appreciate the cooperation.  That's

13   great.

14        **MR. MILLER:**  Your Honor, the reason for coming

15   forward, I think there are two issues -- Kerry Miller again,

16   for the record -- is it's great if you're there the day of the

17   deposition and you trade 5 minutes here or 10 minutes there,

18   that's fine.  But when you're coming up to what we believe are

19   the most critical witnesses for the defense of our case, it

20   really does impact your planning and your preparation and

21   getting the documents --

22        **THE COURT:**  Yeah, you need a commitment.

23        **MR. MILLER:**  -- and we need to know in advance, do I

24   have an hour and 15 minutes or do I have two and a half hours

25   or do I have four hours?

1          THE COURT:  No, you need a commitment and Andy needs

2    a commitment.

3              Andy, it sounds to me like you probably want to

4    work with the defense group to see if anybody wants to

5    cooperate.  Does anybody want to cooperate?

6          MR. HAYCRAFT:  Silence.

7          THE COURT:  Well, I mean, the point being, I guess,

8    that it seems to me, and I am not clear on the alignment of the

9    parties, but it seems to me that the defense group generally

10   should be aligned in their questioning of the witnesses Andy

11   has said BP needs more time on.

12         MR. LANGAN:  You know, Your Honor, that may be

13   over-simplistic.  It could be more complex than that.

14         MR. FITCH:  Judge, Tony Fitch on behalf of Anadarko

15   and MOEX.  Andy's right.  It's hard already with -- these

16   witnesses have gotten increasingly important to -- and even

17   though counsel has really been efficient, I think, it's hard to

18   do what you think you need to do in an hour and 15 or an hour

19   and 18 minutes.

20              So I didn't want you to think that anybody's

21   lying in the woods here and just being obstinate.

22         THE COURT:  No, I don't think that.

23         MR. FITCH:  It's hard to justify ahead of time that

24   any of us would turn over additional time to Andy or to Kerry.

25         THE COURT:  Okay.  Well, Andy, let's do this, because

 1    I am inclined to, like with Kerry, give you additional time.

 2    Would you see if anyone will cede you additional time --

 3               **MR. LANGAN:**  Absolutely.

 4               **THE COURT:**  -- and if not, let me know whether one or

 5    two witnesses you've been accommodated and not been

 6    accommodated on others and then --

 7               **MR. LANGAN:**  Okay.

 8               **THE COURT:**  -- we will take it from there.

 9    Obviously, we've got a little bit more time on your schedule,

10    April 11th, but the sooner the better so we get you straight

11    and you know what you've got.

12               **MR. LANGAN:**  Thank you, Your Honor.  That's perfect.

13    Thank you.

14               **THE COURT:**  Now, Alan, I didn't see anything from

15    you.  Did you send something in with regard to witnesses and

16    needing more time?

17               **MR. GODWIN:**  Yes, Your Honor, we have --

18               **THE COURT:**  That's Don Godwin responding to my

19    question to Alan York.

20               **MR. GODWIN:**  Since I'm taking the depositions, Your

21    Honor, I thought it would be appropriate that I responded.

22    Yes, Mr. Fred Sabins with CSI, Your Honor, for the 28th and

23    29th, we normally would have an hour and a quarter, but I'm

24    asking for two hours.  I'm not asking you to extend it here

25    today.  I believe I can work this out with other lawyers and

1    I'm endeavoring to do that; and if I see that I'm not able to

2    do it, then next week I may come back to you.  But, hopefully,

3    between now and then I'll be able to get some additional time.

4              THE COURT:  Perfect.  Thank you.  I appreciate that,

5    Don.  I'm sorry I missed that communication.  I don't know how

6    that happened.

7              MR. GODWIN:  No, that's fine, Judge.  Thank you.

8              THE COURT:  Thank you.

9              MR. GODWIN:  I think we sent it in maybe late last

10   night.

11                   Alan said it was sent early this morning.

12   Pardon me, Judge.

13             THE COURT:  Okay.

14             MR. GODWIN:  But, anyway, we apologize for the late

15   notice --

16             THE COURT:  No problem.

17             MR. GODWIN:  -- but that's the only one we need

18   additional time on in April.

19             THE COURT:  Great.  Thank you.

20             MR. GODWIN:  Thank you.

21             THE COURT:  Then, guys, once we get that taken care

22   of it seems to me next week let's look into May.  And then the

23   week after let's look into June.  And then the week after July,

24   although we don't have much scheduled yet for July.  But let's

25   take it up month by month and look forward so that we can try

 1    to get some handle on that issue.

 2                Now, I saw something come across the desk about

 3    scheduling 30(b)(6) notices.  Who wrote me on that issue?  Was

 4    that you, Andy?

 5         MR. LANGAN:  Your Honor, your paragraph 7 of your

 6    March 28th order suggested that you would like to have further

 7    conversations about people to take responsibility for getting

 8    notices completed and out.  And everyone's very, very busy, and

 9    I don't know that a lot of that falls in advance a whole lot,

10    but I thought we'd at least step forward and say we'll do the

11    USA, DNV and Stress and just take responsibility for three of

12    them.

13         THE COURT:  Right.

14         MR. LANGAN:  I mean, the PSC is obviously doing a lot

15    too.  I don't want to minimize that.

16         MR. STERBCOW:  And Tony Fitch sent us a response on

17    that.

18         THE COURT:  And Tony, you sent us a response also,

19    huh?

20         MR. FITCH:  Yes, ma'am.  That's right.  We had -- we

21    are probably the only ones requesting some of these

22    depositions, or almost the only one.  With respect to Add

23    Energy, Baker Risk, CSI and Stress, Andy is coordinating their

24    available dates.  But when I get those dates, I'll be happy to

25    distribute and serve the notices.

1          **THE COURT:**  Great.

2          **MR. FITCH:**  And then you would also assign the Nexen

3    and Randy Smith and they've already been scheduled.  And then,

4    finally, with respect to DNV, we had done a draft notice.  I've

5    had communications with DNV, but Andy wrote you this morning

6    that he'd like for BP take over that notice.  And I have a

7    feeling that he may want to do a more detailed notice than we

8    did.  So I'm happy to have him take the DNV lead.

9               If you want to discuss DNV now or later, I have

10   the dates -- some dates in June that you requested last week

11   that I try to obtain.

12         **THE COURT:**  Well, it looks to me like Mr. Maze is at

13   the ready, relative to the ELMO and the calendar, so we'll ask

14   him to step up and take that information.

15         **MR. FITCH:**  You had asked that we shoot for the last

16   week of June.  I tried, I got rebuffed.  I tried again.  They

17   have their people available the next to the last week in June

18   in the June 23rd, 24th, 25th period.  I don't know whether more

19   than -- whether Andy thinks, or others think, that more than

20   two days are needed for DNV or not.

21         **THE COURT:**  Well, everybody is sitting here with

22   their heads in their hands looking at that week, because it is

23   a busy week.

24         **MR. FITCH:**  Well, that's why you wanted it the

25   following week.  I understand that.  Like I said, I asked for

```
 1    that, not available.  I pushed back and I was unsuccessful.
 2              THE COURT:  Beggars can't be choosers, huh?  Is it
 3    any time that week?
 4              MR. FITCH:  June 23 and/or 24 and/or 25.
 5              THE COURT:  23 --
 6              MR. FITCH:  I think two days is enough, but others
 7    may disagree with that.
 8              THE COURT:  Wait.
 9              MR. MAZE:  25 is a Saturday.
10              THE COURT:  Yeah, the 23rd, that's a weekend.
11              MR. MAZE:  23 is the day we talked about last time
12    being the worst on the schedule.
13              THE COURT:  Yes, 23 is the worst on the schedule, 24,
14    and then 25 is a Saturday.
15              MR. FITCH:  That's a fair -- it's June 21 and 23.
16              THE COURT:  I'm sorry.  June 21st and 23rd.  Oh, for
17    goodness sakes.
18              MR. FITCH:  21, 22 and/or 23.
19              THE COURT:  Okay.  And/or 23.  So now we got it down
20    to 21, 22, which I assume everybody agrees are the better of
21    those three days?
22              MS. BERTAUT:  Judge, it's Carmelite Bertaut for
23    Cameron.  I believe I have this schedule correct in my head.
24    Under the order that's been entered with respect to additional
25    testing that will end on or about, is it June 15th?
```

1      THE COURT:  Yes.

2      MS. BERTAUT:  You-all may have talked about this in

3 more detail last week, but you're not giving the parties a lot

4 of time to digest whatever that is if we start noticing

5 June 23rd for DNV or any earlier than that.  That's a very

6 short turnaround.

7      THE COURT:  It is short term.  There's no question.

8 But remember, not only does the testing have to be done by the

9 15th, but the report has to be out.

10      MS. BERTAUT:  I understand, Your Honor.  And I really

11 don't know how significant the June 15th additional testing

12 report will be.  We're many, many weeks away.  I'm just

13 suggesting that, regardless of what the schedule looks like,

14 there's another schedule which is the ability of folks to

15 process that information in a meaningful manner to take what

16 may be a very critical deposition.  And I'd suggest that maybe

17 eight days isn't quite -- especially given the schedule of

18 other things going on.

19           So, you know -- and I don't know June -- you

20 know, I don't know why June, given until the middle of June

21 they're still going to be producing tests.

22      THE COURT:  Right.  I understand.  Andy, how do you

23 feel about trying to get dates in July for DNV?

24      MR. LANGAN:  I guess we prefer late June, but --

25 because July is going to get crazy for the reasons that the PSC

```
 1   has said.
 2          MR. FITCH:  Judge, I raised the issue with DNV
 3   counsel of a July possibility just in case, and I got -- I was
 4   essentially in a very courteous way told to pound sand with
 5   respect to their schedules for July.
 6          THE COURT:  Really?  That wasn't --
 7          MR. FITCH:  That colloquial term is a little --
 8          THE COURT:  I understand.  I understand.
 9          MR. LANGAN:  I had a related issue about DNV, Your
10   Honor, that's a scheduling issue.  Can I put it out there?
11          THE COURT:  Yes.
12          MR. LANGAN:  Witness 110, Mr. David McKay, is a DNV
13   surveyor.  I guess it's the same firm.
14          MR. HAYCRAFT:  Well, it's a different part of DNV.
15          MR. LANGAN:  It's a different part of DNV.  We were
16   told -- that was one of our responsibilities and we were told
17   like June 27th, 28th for Mr. McKay.  And I just wanted to put
18   that out there because it seems like it -- it feels like it
19   kind of relates to this.  Maybe it doesn't, but...
20          THE COURT:  I don't know.  Does the PSC want to
21   weight in on this, guys?
22          MR. STERBCOW:  Paul Sterbcow for the PSC, Your Honor.
23          The only thing I would say is that, you know, if
24   we have to take them when they say they're available, that's
25   fine.  To this point, the parties in this litigation have done
```

1   a remarkable job cooperating and setting God knows how many

2   depositions.  And at the end of the day, it's going to be the

3   PSC's position is if DNV won't play ball with us, then we'll

4   start issuing subpoenas and do what we have to do so they play

5   on our terms.

6              I hate to be that way, but that's the way it's

7   going to have to be.

8              THE COURT:  Well, and that's the question, do we want

9   to accept 21, 22 and is that enough time, number one?

10             MR. STERBCOW:  Are they all in the United States?

11  Are all these depositions in the United States?

12             MR. LANGAN:  I believe so.

13             THE COURT:  Yeah, they're all going to be New Orleans

14  depos.

15             MR. STERBCOW:  If we have a final report on any

16  additional testing by June 15th, we take those depositions on

17  the 21st, and the 22nd.

18             THE COURT:  Then we'll go ahead and put DNV down for

19  21, 22 and take it from there.

20             MR. LANGAN:  Do you want to do McKay?  McKay might be

21  able to do the prior week if that's better.  That's one of

22  those crazy days.  So is the 27th and the 28th.

23             THE COURT:  When you say the prior week, are we

24  talking --

25             MR. LANGAN:  I meant the week that we just set DNV

1   30(b)(6).

2           THE COURT:  Well, I think that we better go on the

3   28th.  Doesn't the PSC prefer going that week?

4           MR. STERBCOW:  Yes, Your Honor.  Absolutely.

5           MR. LANGAN:  Is one day enough?

6           MR. STERBCOW:  I don't know.

7           THE COURT:  He's the surveyor.

8           MR. HAYCRAFT:  He's a pre-incident surveyor.

9           THE COURT:  Pre-incident surveyor.

10          MR. STERBCOW:  Of the *HORIZON*?  I don't see us taking

11  five hours with a pre-incident surveyor.  I doubt that

12  seriously.

13          THE COURT:  Do you-all want to put him down for one

14  day?

15          MR. LANGAN:  That may be dangerous.  I don't know.

16          THE COURT:  Okay.  Let's put him down -- what did you

17  say, 28, 29?

18          MR. LANGAN:  I actually said 27th, 28th.

19          THE COURT:  I'm sorry, 27th, 28th.

20          MR. LANGAN:  Your Honor, you'll recall -- this is

21  actually part of your order -- they've raised the issue of cost

22  reimbursement.  And your order says if it's reasonable, you'll

23  consider it.  I guess that's where we are.

24          THE COURT:  That's where we are.  I'm wondering if we

25  could get some kind of projection from them so that they don't

1  come in under false pretenses.

2  **MR. FITCH:**  Judge, Tony Fitch again.  I reported last

3  week that DNV is not only -- is requesting not only

4  reimbursement for travel expenses, as is the case with one or

5  two other non-party 30(b)(6) deponents, but they are also

6  requesting reimbursement of time costs and gave the projection

7  of $14,000.

8  And you may recall that on behalf of Anadarko

9  and MOEX, Deb Kuchler and I both expressed disagreement with

10  that.  That's where it was left last week, as I recall.

11  **THE COURT:**  Okay.

12  **MS. BERTAUT:**  Judge, can we just for a moment go back

13  to the DNV 30(b)(6) deposition?

14  **THE COURT:**  Tap on your mic and see if it's not on.

15  **MS. BERTAUT:**  I note that there is already a Cameron

16  deposition noted for that Tuesday and that Wednesday -- or that

17  Monday and that Tuesday.

18  **THE COURT:**  Right.

19  **MS. BERTAUT:**  And if, in fact, Thursday and Friday is

20  available to DNV, I would request that that -- of that week

21  that that deposition be taken then.  Again, Your Honor, I am

22  concerned about the time line that we're going to need --

23  **THE COURT:**  No, I understand.

24  **MS. BERTAUT:**  -- and we're already putting a witness

25  up Monday and Tuesday.

1          THE COURT:  Well, but my problem is, Carmelite, and I
2     hear you, but Tony the end of that week was not an option, was
3     it?
4          MR. FITCH:  That is correct, Judge.  I was given --
5     although, I misspoke at first, I was given June 21, 22, and 23.
6          MS. BERTAUT:  I'm sorry.  I thought I had understood
7     23, 24, and 25.  Did I misunderstand, Mr. Fitch?
8          MR. FITCH:  I misspoke at the beginning of this
9     discussion.
10          MS. BERTAUT:  Well, even if we -- whatever you can
11     give us, Judge.  If you can give us the 22nd and the 23rd, then
12     at least we're not overlapping with the other Cameron
13     witnesses.
14          THE COURT:  No, I'm with you.  But I'm looking at the
15     23rd.  And what have we got there?  We've got -- one, two,
16     three, four, five -- six, witnesses already scheduled that day.
17     I guess that's the PSC's call.
18          MS. BERTAUT:  Well...
19          THE COURT:  Uh-oh.  We've got trouble coming to the
20     podium.
21          MS. KUCHLER:  Deb Kuchler for Anadarko and MOEX.  I
22     just want to put this on the table as we consider this:  I'm
23     not taking a position one way or the other, but we're starting
24     to stretch our logistical capability on the 23rd in terms of
25     court reporters, videographers, and conference rooms, not

1   only -- I mean the lawyers, I guess we have enough teams that
2   we'll find a way to staff it.  But at some point, our logistics
3   can't grow any bigger.
4              We had originally been thinking in terms of
5   triple tracking, which we can accommodate.  The court reporters
6   and the videographers, when they saw the schedule for the 23rd,
7   they're going to have some scrambling to do already.  So I just
8   raise that issue for consideration.
9              MR. STERBCOW:  We have building issues, too, because
10  the Pan AM may not be able to accommodate all the depositions
11  on that date.
12             THE COURT:  Okay.  Carmelite, I'd like to accommodate
13  you, but I don't see any way we're going to be able to carry it
14  over.  We're constrained by what DNV is giving us.  Now, if as
15  a group you-all decide you're just going to subpoena them, that
16  would be different, but --
17             MS. BERTAUT:  Can I make a suggestion, Your Honor?
18             THE COURT:  Yes.
19             MS. BERTAUT:  Which is I know Mike Underhill was not
20  physically going to be present.  Somebody from --
21             THE COURT:  Mike is on the phone.
22             MS. BERTAUT:  Oh, Mike's on the phone.  I wonder if
23  the government's talking with DNV will make any difference as
24  opposed to Anadarko.
25             THE COURT:  Mike, are you on the phone?

1          **MR. UNDERHILL:**  I'm back.

2          **THE COURT:**  I knew you were on the phone, Mike.

3               Do you have any info on DNV and their

4     availability?

5          **MR. UNDERHILL:**  I don't, Your Honor.

6               And I think that BP has been dealing with DNV on

7     the BOP testing issue.  And I purposely tried to stay out --

8     too many cooks spoil the broth, so I tried to stay out of that.

9               If you wish me to contact them, I've heard the

10    discussion about timing and about costs, I would have no

11    problem telling them that I don't think they're presenting very

12    well if -- with the request, or however it was phrased, about

13    $14,000 to appear for a deposition.  I mean, I'd be glad to put

14    it to them bluntly:  You can appear on a subpoena for free or

15    you can play ball reasonably.  I'd be happy to pass that on.

16               I note that DNV -- I don't know whose -- whether

17    it's their request or the outside attorney has been putting

18    themself as a road block.  But I think that most of the

19    communications have been through outside counsel -- maybe

20    Tony's had a different experience -- and that's the gentleman

21    that I've dealt with.  I'd be happy to have a conversation with

22    him and explain that people are trying to get along in this

23    litigation and somebody playing litigation hardball isn't

24    really going to go over well with either the Court or the

25    parties.  And I'd put it bluntly to him like that.  I have no

1    problem with that.

2            **THE COURT:**  Okay.  Let's hear what Paul Sterbcow has

3    to say.

4            **MR. STERBCOW:**  Your Honor, Paul Sterbcow for the PSC.

5            I was going to say to Mr. Underhill, we would

6    join in the phone call and I would be happy to speak to DNV's

7    in-house or outside counsel.  And the PSC would also be happy

8    to take a very long, hard look at DNV's pre-accident vessel

9    surveying; and to the extent we found something that was maybe

10   faulty in terms of their surveying, we could certainly let them

11   know we'd be happy to take a long look at that and that would

12   resolve any cost issues.

13           **THE COURT:**  That's interesting.

14           Why don't the two of you guys coordinate a time

15   to speak to counsel for DNV and see if we can't work out dates

16   that are better suited for taking the depositions.

17           Mike, Paul will call you and coordinate that.

18           **MR. UNDERHILL:**  Sounds good.

19           **THE COURT:**  But we're going to leave it where it is

20   for the time being and we'll make it tentative, okay?

21           Mr. York.  Good morning.

22           **MR. YORK:**  Good morning.  Alan York for Halliburton,

23   Judge.

24           And the continuing reports on the 30(b)(6)

25   responsibilities and notices, Halliburton had responsibility

1  for the Drilquip 30(b)(6) notice.  We have had -- we've
2  provided the topics to counsel for Drilquip, had conversations
3  with them this week.  There are only a couple that they had any
4  concerns about.  They're to provide red lines back to me that
5  I'll share with all counsel, but they did provide dates for the
6  Drilquip 30(b)(6) and that's May 26th and 27th.
7              THE COURT:  Okay.  Good.
8              MR. YORK:  We also had Weatherford.  And I have been
9  in contact with Weatherford's counsel, Mr. Wegmann, and they
10 also have a couple of issues with the breadth of a couple of
11 the requests.  I pointed them actually to the PSC because they
12 were originally plaintiff's requests.  They're going to talk
13 directly.  But we should have a final list on those by next
14 week.  And I believe Weatherford is actually already on the
15 schedule for the deposition.
16             THE COURT:  Right.
17             MR. YORK:  We also had Vector Magnetics.  We have
18 prepared that notice, but that's one of the ones that falls
19 into the category of a BP contractor that Andy was going to see
20 about getting notice -- giving notice to them and making
21 contact.
22             THE COURT:  Good.
23             MR. YORK:  And finally, Your Honor, on the Kongsberg
24 deposition that is actually set for Monday and Tuesday --
25             THE COURT:  Right.

1          **MR. YORK:**  -- we had provided some topics --
2    Mr. Sterbcow and I visited about this briefly -- they sent an
3    e-mail last night, I think, providing the names of two
4    individuals.
5          **MR. STERBCOW:**  Right.
6          **MR. YORK:**  Jan Simonsen and Alaric Durkan.
7          **THE COURT:**  Okay.
8          **MR. YORK:**  And I'll let Mr. Sterbcow address how
9    we're going to handle that.
10         **THE COURT:**  Good.  Thank you.
11         **MR. STERBCOW:**  Your Honor, as you know, Kongsberg is
12   a third party.  It's been a rolling production, if you will;
13   and, in fact, they rolled another 17,000 pages this morning.  I
14   just found that out.  We're going to get that out as quickly as
15   we possibly can.  All the documents we have to date have been
16   put on CD and have been provided to the parties.
17              We are going to have both -- or they will have
18   both of their representatives at the table throughout the
19   entire two days because we don't know -- or we can't predict,
20   and we shouldn't put any lawyer in the position of having to
21   ask one question of another guy and have to reserve another
22   question for the second guy, so they're both going to be there
23   the whole time.
24              And, hopefully, it will solve any time sharing
25   issues, flow issues, et cetera.  I don't know if they're going

1  to show up with additional documents on Monday.  It's just the
2  way this has gone.
3          MR. O'KEEFE:  Kongsberg may be on the phone.  They
4  called in and asked for the information.
5          THE COURT:  Oh, okay.  Is somebody on the phone for
6  Kongsberg?
7          MR. STERBCOW:  One thing I would like to bring up and
8  maybe we can get an agreement on now, Judge, is in terms of the
9  documents that have been produced, and I don't know if this
10  will ever be an issue, I would like to try to reach agreement
11  now so we avoid issues tomorrow, that any documents that
12  Kongsberg produces, we can just attach globally to this
13  deposition, consider them produced pursuant to 30(b)(6),
14  consider them business records, et cetera, so we don't have to
15  try to cull through all of these -- we certainly can't do it by
16  Monday.
17          And it's just going to make things -- and not
18  all documents will be used or even attempt to be introduced,
19  but at least let's get past that threshold issue.  It will make
20  it a lot easier for everybody.
21          THE COURT:  I agree.  Does anybody have an objection
22  to that suggestion?  Okay.
23          MR. MILLER:  I'm sorry, Your Honor.  Paul, what was
24  the name of the two, that Jan Simonsen and who was the other
25  one?  My Norwegian is not as good as it used to be.

1          **MR. STERBCOW:**  Alaric Durkan.

2          **THE COURT:**  All right.  Mr. Herman, do you want to

3    come up?  Mr. Sterbcow.

4          **MR. HERMAN:**  We're splitting off.

5          **MR. FITCH:**  Judge, Tony Fitch.  Before we leave the

6    30(b)(6) topic, may I raise an issue?

7          **THE COURT:**  Sure.  We haven't left it yet.  We have

8    three more to cover, but go ahead, Tony.

9          **MR. FITCH:**  I thought maybe you were moving to PSC

10   reports, but I'll wait until Steve finishes.

11         **THE COURT:**  Okay.  It's Paul Sterbcow.  We're now

12   considering them to be interchangeable.

13         **MR. STERBCOW:**  Right.  Paul Sterbcow for the PSC.

14              In terms of the Oceaneering deposition, I know

15   counsel for Oceaneering has not gotten back to Duke Williams.

16   I talked to Duke this morning.  I don't think anything's

17   changed.  We are going to make an effort next week to get to

18   the bottom of this one way or the other.

19         **THE COURT:**  Okay.

20         **MR. STERBCOW:**  The truth be known, Judge, from the

21   PSC's standpoint, the Oceaneering deposition is not critical.

22   It's informational, but it's not going to be dispositive.  It

23   mainly deals with the ROV and how they used it after the

24   blowout.  So it's not something that's important.  We just need

25   to get it out of the way.

 1          THE COURT:  Who's got information on Cobalt and Wild
 2  Well?
 3          MS. KUCHLER:  Not me.  But, Judge, I had a question.
 4          THE COURT:  That was not helpful.
 5          MS. KUCHLER:  I'm sorry.  This is Deb Kuchler for
 6  Anadarko and MOEX.
 7              So is the Oceaneering deposition on for the 12th
 8  or not?
 9          MR. STERBCOW:  No, it is not on.  As of now, it is
10  not on for the 12th.
11          THE COURT:  Okay.
12          MS. KUCHLER:  Thank you.
13          THE COURT:  So we'll make that adjustment to the
14  calendar.
15          MR. LANGAN:  Wild Well.
16          THE COURT:  Wild Well.
17          MR. LANGAN:  This also comes up on page 4 of your
18  order.
19          THE COURT:  Well, that's right.  We wanted to make
20  sure we knew who was noticing it and we were looking for dates;
21  is that right?
22          MR. LANGAN:  I believe so.
23          MR. HERMAN:  Steve Herman for the PSC.  We already
24  noticed the deposition.  I think that 30(b)(6) notice has been
25  in circulation for a long time.  The question is the dates.

```
 1              Mr. Williamson promised, committed, represented
 2   to Wild Well's counsel that we would not discuss it today, so
 3   I'm already breaching his agreement.
 4         THE COURT:  Okay.  Then we're not going to discuss
 5   it.
 6         MR. HERMAN:  But the bottom line is I think they're
 7   getting -- they're on target to get us the documents in June
 8   and are working with us on an available date.
 9         THE COURT:  Okay.
10         MR. HERMAN:  On Cobalt, I think, as Mr. Williamson
11   reported last week, as of this point in time we're not going to
12   take Cobalt.
13         THE COURT:  All right.  Isn't that nice.
14         MR. WEGMANN:  Your Honor, this is Dirk Wegmann.  We
15   represent Wild Well Control as well.
16              And counsel is correct.  Mr. Williamson, we have
17   agreed to produce a witness and provide the documents by late
18   June, early July.  And as a related witness, Pat Campbell, who
19   I've talked to Andy about this morning about coordinating a
20   final date for his deposition.  So we're still in communication
21   and haven't arrived at a final conclusion, but everything seems
22   to be falling into place.
23         THE COURT:  Good.
24         MR. LANGAN:  Your Honor, my interest here is
25   Mr. Campbell, who Dirk just mentioned, is witness 113, and we
```

```
 1    have responsibility for lining up that date, which was
 2    tentatively for July 12th and 13th.  And I think Your Honor
 3    will recall, you said, "Can't you go back to him and make it
 4    earlier?"  And I think counsel is saying that maybe late June
 5    might work.  I think that's what I'm understanding.  So I just
 6    wanted to report on that.  It's not final yet.
 7              MR. WEGMANN:  That's correct.  Just subject to
 8    confirmation.  So we still have some details to work through.
 9              THE COURT:  Okay.  But we'll keep it tentative, but
10    work on trying to move it forward.
11              All right.  Thanks.
12              MR. LANGAN:  So, Your Honor, did I understand that
13    Cobalt is now off the list?
14              THE COURT:  Off the list.  Off the list.
15              MR. HERMAN:  That's my understanding.
16              THE COURT:  Yes.  Now, Tony, did you have something
17    else you wanted to add?
18              MR. FITCH:  I did, Judge.  Actually, two things.
19              As you may recall, all of the Anadarko and MOEX
20    30(b)(6) representatives have been scheduled.  We need to --
21    one of our topics is a fairly broad financial and accounting
22    topic.  So it's most efficient for us, and for everybody else,
23    to add a person for that topic.  His name is Jerry Byrd and we
24    suggest July 13th.
25              THE COURT:  Jerry B-Y-R-D or B-I-R-D?
```

```
 1            MR. FITCH:  B-Y-R-D.
 2            THE COURT:  Okay.  And no availability before July?
 3            MR. FITCH:  I'll check again, but let's go ahead and
 4   put him down for the 13th and I'll let our people know that we
 5   need to try to do it earlier.
 6            THE COURT:  Yes, if we possibly can.  Because, as you
 7   know, I'm worried about keeping things open to do cleanup in
 8   July.  But July 13th, Mr. Byrd, we'll put him down.
 9            MR. FITCH:  Now, my second point, we're moving into
10   depositions where some representatives are not also fact
11   representatives, they are only purely 30(b)(6) representatives.
12   My question is as to the applicability of the custodial file
13   certification requirement for such purely 30(b)(6)
14   representative witnesses.  Should the custodial file
15   certification apply to them?  I'm not sure it should; if it
16   should, it seems like it should encompass only their custodial
17   files pertinent to their deposition topics.
18            THE COURT:  Okay.  Well, we're going to ask the PSC
19   to comment on that.
20            MR. FITCH:  Fair enough.
21            THE COURT:  These are not fact witnesses, Paul.
22   These are witnesses who are being designated for certain areas
23   of testimony.  So it seems to me that the idea that, if they
24   had in their file, documents that are responsive to the areas
25   they're being designated for, that should be produced and
```

1  certified; otherwise, their custodial files really are not

2  pertinent to the litigation.

3          **MR. STERBCOW:**  Agreed, Your Honor.

4          **MR. FITCH:**  It may be responsive to other document

5  requests that we've already produced on.

6          **THE COURT:**  Correct.  Obviously, you're not exempt

7  from that.

8          **MR. STERBCOW:**  My only question is who makes that

9  call?  Who decides that?

10          **THE COURT:**  Tony, how would you approach making that

11  call?  Would you go ahead then for these designees and advise

12  everybody as to who they are and whether or not, in your view,

13  their custodial files will be produced in part or not produced

14  and why, and then we can take a look at it and see if there's a

15  problem?

16          **MR. FITCH:**  I think that's fair enough.  That ball

17  should be in our court or the court of others who are in the

18  same position.  We are largely prepared to -- to notify

19  everybody, all of our representatives, for all the topics.

20          The only problem is that the topics haven't been

21  100 percent finalized yet.  We sent very minor modification

22  suggestions a few days ago and we're waiting to hear back from

23  Steve and Jim or others on the PSC.  As soon as that happens,

24  they can go ahead and serve us and we'll do our -- we'll

25  formalize our designations.

1        THE COURT:  Okay.  Steve, do you --

2        MR. FITCH:  We worked on a topic by topic --

3        THE COURT:  Steve, do you recall that?

4        MR. HERMAN:  We'll take care of it.

5        THE COURT:  Steve doesn't recall that but he will get

6   on it.  How about that?

7        MR. FITCH:  Okay.

8        THE COURT:  Okay.  All right.

9             Anybody else on that topic?  Because we're now

10  going to go through -- let's see.  Andy, you're up next -- oh,

11  I'm sorry.

12       MR. HERMAN:  Your Honor, Mr. Sterbcow reminds me that

13  I do know what opposing counsel was talking about.  In fact, I

14  talked to Deb this morning and promised to get the final notice

15  out in accordance with the revisions this weekend.

16       THE COURT:  Tony, you got it this weekend.

17       MR. FITCH:  I can hardly wait.

18       THE COURT:  That's good.  It's coming your way.  And

19  you don't get this weekend off, do you?  Oh, yeah, you do.  You

20  do get a weekend off, so you won't get it until Sunday.

21       MR. LANGAN:  Your Honor, is there going to be a

22  schedule of fines for violation of that?

23       THE COURT:  You know what we'll do, we'll put it on

24  the -- on my criminal docket under "Miscellaneous Fines."

25  Yeah, I mean, I really think you-all should try to abide by it.

1  Do your best.  If you've got to send it out on Sunday morning,
2  send it out on Sunday morning.  I don't know if we'll call it a
3  misdemeanor or not.  We'll have to think about that.
4           **MS. KUCHLER:**  What if we just collect a bar tab by
5  the offenders?  You know, we can put so much toward a pot for
6  beer after a long deposition.
7           **THE COURT:**  How did she know to direct that question
8  to me?  I think that's a great idea.  We can run a tab at the
9  Swizzle Stick bar right down the street and for every
10 violation -- and this is going to cost something -- for every
11 violation every person on the e-mail distribution list gets a
12 free drink.
13          **MR. HERMAN:**  Just to satisfy due process so we know
14 what the penalty is in advance, when you say a violation, is
15 that any e-mail on a Saturday or every single e-mail is one
16 drink?
17          **THE COURT:**  Oh, no, every single violation on a
18 Saturday is a free drink for everybody else on the distribution
19 list, and I'd like to be added to the distribution list.
20          **MS. KUCHLER:**  Judge, I'm a little cheap.  I had in
21 mind like if you violate it with an e-mail you put 10 bucks
22 towards the tab, you know.
23          **THE COURT:**  No.  No.
24          **MS. KUCHLER:**  No, the whole distribution?
25          **THE COURT:**  I want to be on the Saturday distribution

```
 1   list.  It's a great idea, Deb.  Thank you.
 2              All right, Andy.
 3              MR. LANGAN:  All right, Your Honor.  We're now on
 4   page 5 of your March 28th order.  I do have some additional BP
 5   30(b)(6) designees and names and topics that I wanted to pass
 6   along to the parties here.  Again, as I said last week, as
 7   Mr. Miller did, when we have a substantially complete list,
 8   we'll put it in writing all in one place.
 9              THE COURT:  Just not on a Saturday.
10              MR. LANGAN:  Okay.  All right.  So Mr. Paul Tooms,
11   who is on the schedule already for June 13th, 14th, will cover
12   portions of topics 4 and 5.
13              In addition to that, there is -- I believe this
14   witness has not been previously listed, Mark Mazzella,
15   M-A-Z-Z-E-L-L-A.  Mr. Mark Mazzella can handle other portions
16   of topics 4 and 5 plus topics 12 and 32.  I do not yet have
17   dates for Mr. Mazzella.
18              For topic 2 -- I'm really going to butcher this
19   name, but is a Mr. Liu, last name is L-I-U, and his first name
20   is spelled X-U-E-M-E-I, Xuemei perhaps.
21              THE COURT:  Sounds good to me.
22              MR. LANGAN:  Topic 2, Mr. Liu.
23              Topic 30, Kirk Wardlaw, W-A-R-D-L-A-W,
24   June 9th and 10th.
25              MR. MAZE:  Is that New Orleans or London?
```

1           **MR. LANGAN:**  I'm pretty sure that's New Orleans.

2     Topic 30, Wardlaw.  I think it's W-A-R-D-L-A-W.

3                 Then for topic 31, Mr. David Rich, who is

4     already on the schedule for May 31st and June 1st.  I should

5     also note, especially for Mr. O'Keefe's benefit, that there is

6     no topic 10, 27 or 29 in our notice.

7           **MR. O'KEEFE:**  Thank you.

8           **MR. LANGAN:**  So we are making substantial progress,

9     Your Honor.  And as to the remaining topics, we continue to

10    work diligently to try to fill them out.

11          **THE COURT:**  Great, Andy.  That's very helpful.

12                Okay.  We've got Daryl Kellingray.

13          **MR. LANGAN:**  I don't have dates yet.  It's on our

14    radar.

15          **THE COURT:**  That's Kellingray, K-E-L-L-I-N-G-R-A-Y.

16          **MR. LANGAN:**  Correct.  Your Honor, Sir William

17    Castell, no change.  I believe the only significance is I do

18    believe he will have personal counsel.  So I wanted to mention

19    that.  Again, I don't want to rule out the possibility, and

20    when new counsel get involved, they're going to start talking

21    about the Hague Convention.  I don't know.  I hope they don't.

22    I don't know if they will, but, again, I can't rule that out.

23          **THE COURT:**  I understand.

24          **MR. LANGAN:**  Then for Mr. Inglis, No. 17, no change,

25    although -- and I don't even know if this is worth marking

1    down -- if counsel's trial should go away, which was the holdup

2    as footnote 2 says, June 30th and July 1st are possible days

3    for the Inglis deposition.  So if we could move it up and maybe

4    that will help.  I wanted to mention that because I had that

5    information.

6            **THE COURT:**  That's great.

7            **MR. LANGAN:**  I guess I'll just keep going here, Your

8    Honor.

9            **THE COURT:**  You're on a roll.

10           **MR. LANGAN:**  All right.  With respect to the CSI

11   technology stuff, I guess the question was raised one day or

12   two for Mr. Brown.  I mean, our opinion is one day is probably

13   enough, but there are other stakeholders here.  He's pretty

14   limited on his 30(b)(6) topic.  It's just the modeling, as I

15   recall.  So we would urge just one day for that.  I don't know

16   if anybody else wants to speak to that.

17           **THE COURT:**  Has anybody else thought about that?

18           **MR. GODWIN:**  Judge, Anadarko -- Don Godwin for

19   Halliburton -- and we think we're going to need him two days

20   for David Brown.

21           **THE COURT:**  Nice try.

22           **MR. LANGAN:**  That's it?  He just says it and that's

23   it?

24           **THE COURT:**  I had two of them saying it.

25           **MR. GODWIN:**  Well, our understanding, Judge, is we've

1  been scheduling depositions for two days unless there was some

2  good showing that it ought to be one.  So we simply would like

3  to stay with the plan that we've all been using and that is two

4  days.  We think we're going to need him for two days.  And not

5  just we, but a lot of people.

6          MR. LANGAN:  Okay.

7          MR. GODWIN:  So I get an hour and a quarter and I

8  can't imagine if we're doing it one day doing what Halliburton

9  needs to do with this witness in 30 minutes, because CSI is

10  more or less the expert that has challenged a lot of what the

11  Halliburton folks have done.  So I'm going to need some time

12  with him.

13          THE COURT:  All right, Andy.  Yes, I guess it is that

14  easy.

15          MR. LANGAN:  All right.  Your Honor, No. 86, Baker

16  Risk.  We do have dates for Baker Risk and we can look at the

17  third week in May, I believe.

18          THE COURT:  Good.  I'm tired of hearing June, I can

19  tell you.

20          MR. LANGAN:  Right.  So 18th, 19th or 20th, and I

21  guess the PSC or others, if you have a preference.

22          THE COURT:  I don't know.  I mean, I don't know who

23  to talk to.  Mr. Cunningham is not here.

24          MR. STERBCOW:  I'm up.

25          MR. LANGAN:  I'm going to suggest 18th, 19th.

1      **MR. STERBCOW:**  Yes, that's what I was going to say.

2      **THE COURT:**  Okay.  We'll go for the 18th and 19th.

3      **MR. LANGAN:**  Your Honor, the next two, Stress

4   Engineering and Vector, we are in active contact with Stress

5   and we just can't get counsel to return calls to firm up dates.

6   I'm a little farther behind the curve on Vector -- behind the

7   eight ball on Vector, but we will definitely get something from

8   Vector.

9      **THE COURT:**  And, Andy, to the extent that you can

10  convince them to go late April/early May, that would be really

11  helpful because those areas are still more open than later.

12     **MR. LANGAN:**  Understood.

13     **THE COURT:**  Okay.  You're still up, Mr. Mogford.

14     **MR. LANGAN:**  Yes.  We have been in touch with

15  Mr. Mogford.  We do not represent him.  Contact has been made.

16  I will tell you that he is raising an issue of compensation; in

17  other words, he feels, "I've got a new job.  You know, I'm

18  going to be taken away from my new job, what about

19  compensation?"  So I just want to put that out there.  We

20  haven't made any decision.  We certainly haven't made any

21  commitments.  We understand there are issues related to that.

22     **THE COURT:**  Where is he located?

23     **MR. LANGAN:**  He's in the UK, I believe, Your Honor.

24  So I guess I'd just like to try to resolve it as far as BP's

25  concerned whether we can meet his demand for compensation and

1   do so within the ABA guidelines or whatever and try to figure

2   out how we're going to make this happen.  There may come a time

3   when we're just going to say, you know, someone's going to have

4   to seek process on him, I guess.  I hope it doesn't come to

5   that.

6          **THE COURT:**  Why don't you-all think about that.  I

7   mean, has he made any particular monetary projection of what

8   he's looking for?  Is he looking for replacement of wages lost?

9          **MR. LANGAN:**  Yes.

10          **MR. HERMAN:**  The PSC doesn't have any objection.

11          **THE COURT:**  I mean, if that's what it is, if it's

12   just wage's lost, if he's losing a day's work, then, you know,

13   maybe --

14          **MR. LANGAN:**  The kind of amounts that I've heard,

15   they're more than wages.  I mean, it's professional fees kind

16   of thing.  So it's not like 10 bucks an hour.

17          **THE COURT:**  It's like a doctor who's taking the day

18   off to testify in court?

19          **MR. LANGAN:**  Correct.  Right.

20          **MR. STERBCOW:**  We can't afford that.

21          **THE COURT:**  No.

22          **MR. HERMAN:**  I'm not sure if it's a contribution

23   issue or an ethics issue.  I mean, as long as it's disclosed, I

24   don't see any problem with it from an ethical standpoint.  I'm

25   not sure we're going to agree to pay for part of it.  That's a

```
 1    different issue.
 2              THE COURT:  Yes.  Maybe what we can do is induce him
 3    to give us dates and give us a projection of what he's talking
 4    about and then we'll just carry that on to the next session and
 5    discuss how much.
 6              MR. LANGAN:  Very good.
 7                   Ross Skidmore.
 8              THE COURT:  Did you get anything further on
 9    Mr. O'Bryan tentative July 7th, 8th?
10              MR. LANGAN:  No.  Your Honor, this is like the same
11    song, different verse.  It sort of depends on Inglis.  If
12    Inglis moves up, you know --
13              THE COURT:  Gotcha.  We'll keep it tentative until.
14                   Mr. Ross Skidmore.
15              MR. LANGAN:  Yes.  He's a guy that's on again/off
16    again on rigs, but we have May dates.  It could be --
17    Mr. Sterbcow, Mr. Herman, we could do like May 12th, 13th.
18              THE COURT:  That looks good.
19              MR. STERBCOW:  That works.
20              THE COURT:  Okay.
21              MR. LANGAN:  I would like to put a tentative box
22    around that because I guess there's some supervisors that have
23    to be consulted, but I feel pretty good about May 12th, 13th.
24              THE COURT:  Good.  Next up is Mr. Bierne,
25    B-I-E-R-N-E.
```

1          **MR. LANGAN:**  Yes.  I do have dates.  The very popular

2     June 27th and 28th.

3          **THE COURT:**  Oh, you're killing us.

4          **MR. LANGAN:**  Part of the reason for this, Your Honor,

5     is that Mr. Bierne, which is B-I-E-R-N-E, has personal counsel

6     and this personal counsel is also representing other witnesses

7     and has his own stacking up of depositions.  So the 27th or

8     28th of June.

9          **THE COURT:**  All right.  Mr. Sterbcow's going to

10     accept it.

11          **MR. STERBCOW:**  Yes, ma'am.  We accept it, as we

12     always do.

13          **THE COURT:**  All right.  William Haynie, H-A-Y-N-I-E.

14          **MR. LANGAN:**  We are working on dates with him.  We

15     expect to secure dates for Mr. Haynie.

16          **THE COURT:**  We covered Mr. McKay, huh?

17          **MR. LANGAN:**  We did.  We covered Mr. McKay, and

18     Mr. Campbell.

19          **THE COURT:**  And Mr. Campbell.  All right.

20          **MR. LANGAN:**  Your Honor, with respect to

21     Mr. Dupriest, Mr. Bourgoyne, that is 114, 128, 129, 142 and

22     143, we don't intend to take their depositions.  They can be

23     dropped.

24          **THE COURT:**  Wow.  So what I'm going to ask everybody

25     else to do is look at them, declare yourselves, in the absence

1   of a declaration, they're gone.

2              MR. MILLER:  Give us those again.

3              THE COURT:  No. 114 --

4              MR. LANGAN:  Mr. Dupriest from Exxon.

5              THE COURT:  -- Exxon Mobile.  No. 128, Bourgoyne with

6   LSU, who had tentatively been scheduled for May 17th and 18th.

7   Mr. Tyagi, T-Y-A-G-I, No. 129, LSU.  And --

8              MR. LANGAN:  Mr. Hartmann and Mr. Williams, 142 --

9              THE COURT:  Number 142, Hartmann, and 143 Williams,

10  both with Shell.

11             MR. GODWIN:  Your Honor, Don Godwin, Halliburton.

12             We will not need any of those witnesses either.

13             THE COURT:  Okay.  We will cover those next week and

14  if nobody wants them, they're gone.

15             Then last but not least, Andy, would be No. 146,

16  Cargol.

17             MR. LANGAN:  Yes, Your Honor.  I believe that Mike

18  Cargol and Subsea is related in some way to Wild Well Control,

19  if I'm not mistaken.  Maybe I'm wrong, but I think -- is

20  that --

21             MR. WEGMANN:  Don't know.

22             MR. LANGAN:  Yeah.  So I think that's part of the

23  same discussion, if I'm not mistaken.  I'll have to check that

24  out myself, but that's what my notes say.

25             THE COURT:  All right.  Good.  Good.  Good.  Okay.

```
 1  Well, that's good news, Andy.  You're upping your rankings
 2  today.
 3            MR. LANGAN:  Maybe I can get some more deposition
 4  time.
 5            THE COURT:  All right.  Mr. Miller, my notes show
 6  that you're up next, huh?  I believe you've gotten out a memo
 7  or an e-mail to everybody on topics for the 30(b)(6) designees.
 8  That's out; right?
 9            MR. MILLER:  That went out yesterday, yes, Your
10  Honor.
11            THE COURT:  I thought I saw that.
12            MR. MILLER:  Your Honor, one point of clarification,
13  and it's in my e-mail on 30(b)(6) designees, their areas of
14  inquiry and their dates and that is Randy Ezell, and I think we
15  had changed this three or four conferences ago, but with all
16  that goes on it was changed on the calendar but not in the
17  official report.  He is confirmed for April 27th and 28th.
18  It's on the calendar, I think, for those dates and has been for
19  a couple of weeks, but it needs to be carried over into the
20  order.
21            THE COURT:  So that would be a court error is what
22  you're suggesting?
23            MR. MILLER:  Nicely.
24            MR. O'KEEFE:  That's all right.
25            THE COURT:  I see.
```

1    **MR. MILLER:** His full name is Miles Randall Ezell. I

2   think he goes by Randy. It's one and the same, as you know.

3        **THE COURT:** Right. Sorry about that error.

4        **MR. MILLER:** One other modification that's set forth

5   in the e-mail I sent out yesterday about 30(b)(6) witnesses,

6   but No. 60, Mr. James Kent, previously I had not designated him

7   for any 30(b)(6) topics. He is a designee I think only for one

8   topic, but it was in my e-mail of last night. His dates remain

9   the same.

10        **THE COURT:** Good. So there's no change there.

11        **MR. MILLER:** Other than he will be a corporate

12  witness, I think just for one topic, and it's set forth in my

13  letter of yesterday.

14        **THE COURT:** All right. Then you have some present or

15  former people you wanted to talk about dates on hopefully.

16        **MR. MILLER:** Yes. I think let's just work through

17  the list. Eddy Redd has been, you know, in this report a

18  couple of weeks now. I have not, honestly, have not had

19  success in getting dates from Mr. Redd. When I reported on

20  Mr. Redd first to Your Honor and to the other folks in the

21  working group, I did identify the name of his employer.

22            He is mostly working in Russia, but he does come

23  back to the United States. I would suggest, Your Honor, give

24  me one more week. We have the name of his employer. If I

25  can't get it by next Friday, then we're going to have to figure

59

```
 1    out another way to get his deposition done.  I will have
 2    exhausted my avenues --
 3              THE COURT:  Your avenues.
 4              MR. MILLER:  -- to try and get him to succumb to a
 5    deposition.
 6                   And, by the way, we'll talk about this later, I
 7    don't think Mr. Redd is going to be a limitation claimant.  So
 8    it's not as if he's going to file.  He wasn't on the rig.  So
 9    it's not as if maybe after April 20th that issue will be
10    solved.  So it may need to be solved after next week for a
11    subpoena when he's in the states.
12              THE COURT:  Let's see.  Mr. Breland.
13              MR. MILLER:  Yes, I think we can plug into one of the
14    cancelations we just had, May 18th and 19th.  I think we just
15    had a cancelation for those dates.
16              THE COURT:  That's good.  That's the way to do it.
17    Good.  All right.  We had Doug Brown.
18              MR. MILLER:  He's a Steve Gordon client, Your Honor.
19    He may be someone we can take care of after April the 20th,
20    assuming he's going to file a claim on the limitation.
21              THE COURT:  Okay.  And we had Mark Hay, is that the
22    same issue?
23              MR. MILLER:  No.  He's got -- he's got individual
24    counsel, but he has not -- he may file a claim on the
25    limitation.  I don't know.  But he's not represented by
```

COX, RMR, FCRR – OFFICIAL COURT REPORTER   UNITED STATES DISTRICT COURT   EASTERN DISTR

```
 1   personal injury counsel that are not cooperating with the
 2   discovery process.  Let me leave it at that.  I think just
 3   looking at the list and where we have some slots.
 4            MR. MAZE:  The 29th and the 30th.
 5            MR. MILLER:  You think so?  Okay.  Well, put him down
 6   for those dates if that's --
 7            THE COURT:  What were the dates, I'm sorry?
 8            MR. MILLER:  Corey's got his eye on the calendar.
 9   He's telling me -- he's looking at my date ranges for him and
10   the 29th and the 30th are the least congested dates.
11            THE COURT:  So that's June 29th and 30th?
12            MR. MAZE:  Yes.  Hay, H-A-Y.
13            MR. MILLER:  Unfortunately, his other dates are on
14   more congested dates.
15            MR. MAZE:  They want the week before when we're --
16            THE COURT:  Yes, the week before is pretty full.
17   Okay.  You're ready for your next homework assignment?
18            MR. MILLER:  Yes.  I think it's going to all be
19   cobbled together on the PI track, unfortunately.  Let's go
20   through the list of them.
21            THE COURT:  Okay.
22            MR. MILLER:  No. 154, Caleb Holloway, client of Ernie
23   Cannon.
24            THE COURT:  Okay.
25            MR. MILLER:  158, McWhorter.  I think I can get dates
```

1     for him next Friday.  We're working on that.  Mike Walsh is his

2     individual counsel and he's been pretty cooperative in getting

3     dates set up.  So I'm optimistic about Mr. McWhorter.

4             THE COURT:  Patrick Morgan.

5             MR. MILLER:  I'm not as optimistic about the rest.

6     Mr. Buzbee's client.

7             THE COURT:  Buzbee, okay.

8               Micha Sandell.

9             MR. MILLER:  Mr. Buzbee's client.

10            THE COURT:  Okay.  Mr. Seriale.

11            MR. MILLER:  Mr. Arnold's client.

12            THE COURT:  Okay.  And Mr. Wheeler.

13            MR. MILLER:  The Court, you know Mr. Wheeler and his

14     situation.  He's represented by Hortman Harlow.

15            THE COURT:  Okay.  I'm sorry.  I had forgotten about

16     that.  And then Mr. Williams.

17            MR. MILLER:  I'll turn him over to Mr. Sterbcow.

18     He's represented by Penton, Bickford and Mr. Sterbcow.

19            THE COURT:  I would hope we would get some

20     cooperation from Mr. Sterbcow.

21            MR. STERBCOW:  You would hope so, Your Honor.

22              He was scheduled to testify before the grand

23     jury.  They called him the day before and canceled it and we

24     don't know what his situation is.  We've asked the DOJ to

25     please let us know if they need him to -- nobody's hiding him,

 1   he's available, he's ready, just do it.

 2              We'd just feel more comfortable if we let him

 3   get that out of the way before we produce him for a civil case

 4   deposition.  There's no Fifth Amendment issue whatsoever.  We

 5   just want to get that behind us.

 6          **THE COURT:**  Okay.  I think that's fair.  All right.

 7   Next up on my calendar I see Halliburton up.

 8          **MR. ROY:**  Your Honor --

 9          **THE COURT:**  Oh, I'm sorry.

10          **MR. ROY:**  -- Jim Roy.  Before we leave Transocean,

11   Kerry is also checking one other individual that -- whose name

12   we discovered about a week ago when they made a document

13   production, a gentleman in Switzerland, and Kerry is contacting

14   him for dates.  What's his name, Kerry, Bouchard (phonetic).

15          **MR. MILLER:**  I think that is.  It may be helpful to

16   me, though, if we can get his name and put that into your

17   minute entry that comes out next week.  It's just as easy for

18   me to --

19          **MR. ROY:**  Kerry and I will get together and put him

20   on the agenda.

21          **THE COURT:**  Yes, why don't you pop me an e-mail and

22   we'll put him in the agenda for next week.

23          **MR. ROY:**  Thank you, ma'am.

24          **MR. DART:**  Good morning, Your Honor.

25          **THE COURT:**  Good morning, Mr. Dart.

 1          **MR. DART:**  Hank Dart for the State of Louisiana.

 2              I want to report on my punish work assignment

 3   for missing last Friday.  I submitted to the Court reasons why

 4   we wanted to take Mr. Bob Long and there are actually two main

 5   areas we wanted to cover, one of which addresses jurisdictional

 6   issues.  And I spoke with Kerry today that we're trying to set

 7   up these jurisdictional discovery depositions with Transocean

 8   Limited.  So we will defer that questioning to those

 9   depositions.

10              The other is substantive.  And Kerry said that,

11   well, he might be a 30(b)(6) witness on a particular subject or

12   we could do him separately as a fact witness and maybe combine

13   them.  But I just wanted to report to the Court that I'm

14   working with Mr. Miller to try and schedule Mr. Long's

15   deposition.

16          **MR. MILLER:**  Your Honor, I think we've told you a

17   couple of times, we didn't even put the jurisdictional track on

18   the map because Steve Fineman on behalf of the PSC and some

19   folks who I work with have been doing their own little thing.

20   There's a stipulated order, a scheduling order, with respect to

21   jurisdictional and alter ego depositions.  Whatever they're

22   doing appears to be working because we're not getting any

23   flags.  So they're producing documents, they're scheduling

24   depositions, so on and so forth.

25              Mr. Long, as I reported last week, is a former

1    board member and former CEO.  Even when I read Mr. Dart's

2    explanation, it just seemed to me that those issues were more

3    along the lines of the jurisdictional discovery type stuff.

4    And I would ask Hank and the Court that that issue become part

5    of whatever it is the folks are doing.

6              Now, BP may become a part of that because they

7    might file a third-party claim against Transocean Limited; but

8    heretofore, the claim has been by the PSC.  And there's a

9    separate group working on that issue and they appear to be

10   working well.

11        THE COURT:  Hank, I'm going to take that request

12   under consideration and, hopefully, get something out on it

13   this week.

14        MR. DART:  Thank you.

15        THE COURT:  Thank you.

16        MR. GODWIN:  Thank you, Your Honor.  Don Godwin for

17   Halliburton.

18        THE COURT:  Yes.

19        MR. GODWIN:  Judge, Richard Vargo is confirmed for

20   March 30th and 31st.  We've already finished him.  We finished

21   Mr. Vargo.  Excuse me.  We finished him.

22        THE COURT:  Yeah, you're done on that.

23        MR. GODWIN:  Yeah, we've finished with him.

24              There were some that said during the deposition

25   they may want to depose him at a later date.  They know they

1    would have to seek court approval for that.  We opposed it.  So

2    we'll see where that goes, if anywhere.  But I did want to

3    disclose that to the Court, that that suggestion was made.

4                    Mr. John Gisclair has been deposed.  We think

5    we've complied with all 30(b)(6) topics that he was to be

6    deposed on, Your Honor.  The same with Mr. Tim Quirk.

7    Drilquip.  We're continuing to visit with counsel for Drilquip

8    about their notice.  Jesse Gagliano, Your Honor, is going to be

9    taking the Fifth.  Confirmed for May 11 with his attorney.

10             **THE COURT:**  So that's confirmed and not tentative?

11             **MR. GODWIN:**  It's confirmed, Your Honor.

12             **THE COURT:**  Okay.  So Mr. Maze, that's no longer got

13   a *tentative* behind it for May 11th.

14             **MR. GODWIN:**  May 11th, Jesse Gagliano.

15                    Tim Probert, Your Honor, is confirmed for May 9

16   and 10.

17             **THE COURT:**  Right.

18             **MR. GODWIN:**  And Dr. Kris Ravi, Andy and I are

19   working on that issue.  No reason -- he and I see no reason to

20   bring that to the Court at this point.  We'll continue talking

21   about it.

22                    Tommy Roth, Your Honor, is confirmed for

23   June 27th and 28th, No. 121.  Vince Tabler is confirmed, Your

24   Honor, for June 13th and 14th.  Your Honor, 127, Mr. Neal

25   Adams, Andy and I are continuing to talk about that.  There's

1   not been any further developments on it.  When and if it does

2   come up, again, he and I will work on that.  And if we need to

3   we'll see you, but we anticipate being able to work out a date,

4   if that becomes necessary.

5                    Leo Lindner, Your Honor.  I've been informed

6   that Tony Buzbee has spoken to you about Mr. Lindner.  He's

7   No. 130.  So that's where we are on Mr. Lindner.  Joshua

8   Kritzer, Your Honor, 139, and Heath Lambert, as we reported at

9   the last hearing, we have issued notices for both of those

10  gentlemen.

11            THE COURT:  Good.  So that's 139 and 140 are

12  confirmed notices issued?

13            MR. GODWIN:  Yes, they have been, Your Honor.

14            THE COURT:  Good.  Now, let me ask you this, Don, we

15  had some issue of some remaining designees for a couple of

16  little areas, didn't we?

17            MR. GODWIN:  There was one, Your Honor, as I recall,

18  with regard to Sperry on a contractual issue.

19            THE COURT:  Right.  Is that the only one remaining?

20            MR. GODWIN:  We're still looking for that --

21  hopefully, next week when we come back next Friday, if not

22  before, we'll be able to give you a name for that person.  I

23  think that's the lone remaining item so far as I know.

24                    Alan, are you aware of any others?

25                    That's it, Your Honor.

```
 1              THE COURT:  Now, let me ask you one other thing, Don.
 2              MR. GODWIN:  Okay.
 3              THE COURT:  I noted that you-all objected to the
 4   second request for production of documents, which was included
 5   in the amended agreed to 30(b)(6) notice.
 6              MR. GODWIN:  Right.
 7              THE COURT:  Is that an issue that we need to take up
 8   today?
 9              MR. GODWIN:  I'm not aware of anyone asking it to be
10   heard today, Your Honor.  Maybe Alan has --
11              THE COURT:  I saw it and I thought we better ask the
12   question.
13              MR. GODWIN:  All right.  Thank you, Judge.
14              MR. YORK:  We put the objection on the record, Your
15   Honor, just before the deposition went forward just so we would
16   preserve the objection.  We produced, as the PSC requested, the
17   documents that were reviewed by Mr. Vargo in preparation for
18   his 30(b)(6) topics.  We produced his CV and prior testimonies,
19   that was topics 1 and 3.
20              Topic 2 was any document associated with any of
21   these 30(b)(6) topics in any way.  We objected on the basis of
22   overbreadth and, nonetheless, we believe most of those will be
23   made a part of our rolling production in response to other
24   requests.
25              MR. GODWIN:  Your Honor, Paul and I did have a
```

1   conversation this morning and he said that rather than have it

2   heard here, whatever issues, if any, there are with regard to

3   Halliburton's response to the document request, we would take

4   that up outside the Court and likely work that out.

5           THE COURT:  Okay.

6           MR. STERBCOW:  That's fine, Your Honor.  We put all

7   this on Vargo's deposition record to make sure it was there.

8   We just need a chance to work through it.  If we have to come

9   back, we'll come back.

10          THE COURT:  Good.  Thank you.  It looks like

11  Mr. Langan, however, wants to say something about that.  Is

12  that correct, Mr. Langan?

13          MR. LANGAN:  Yes, Your Honor, just briefly.

14              I let Mr. Godwin and Mr. York know in the last

15  day or so there are a couple more of Halliburton people that

16  we'd like to put on the list and get in the scheduling hopper.

17          THE COURT:  Have you got names and we'll add them?

18          MR. LANGAN:  I do.  Paul Anderson.

19          THE COURT:  Was he -- these are new people that were

20  not on the master list?

21          MR. LANGAN:  You know, I can't swear to that.

22          THE COURT:  Okay.  We'll check it.  Paul Anderson.

23          MR. LANGAN:  Mike Serio, S-E-R-I-O, and Ron Faul.

24          THE COURT:  F-A-L-L?

25          MR. LANGAN:  I believe so.

1          **MR. YORK:**  F-A-U-L.

2          **THE COURT:**  F-A-U-L.

3          **MR. LANGAN:**  Since the Court is so diligent about

4    listing names, I thought I'd just get them in the hopper.  I

5    don't expect anything today.

6               Thank you.

7          **MR. GODWIN:**  Judge with regard -- I've mentioned,

8    Andy, here very briefly moments ago, but with regard to

9    Mr. Faul, Mr. Anderson and Mr. Serio, we'll have him dates,

10   hopefully, early in the week; if not, when we come back next

11   Friday.

12         **THE COURT:**  Good.  Thank you.

13         **MR. GODWIN:**  Thank you, Your Honor.

14         **THE COURT:**  All right.  Let's hear from Carmelite on

15   Cameron production of documents.

16         **MS. BERTAUT:**  Judge, I believe our production is

17   continuing.  I know we had a conference with one of our

18   co-defendants this week and I understand that there's an

19   additional 5- or 10,000 pages that are coming due in the next

20   week.

21         **THE COURT:**  Good.

22         **MS. BERTAUT:**  But, actually, what I actually stood to

23   discuss was the Cameron 30(b)(6).

24         **THE COURT:**  Okay.

25         **MS. BERTAUT:**  We actually, on further reflection,

1  believe that Mr. McWhorter will be our 30(b)(6) witness.

2          THE COURT:  For all purposes?

3          MS. BERTAUT:  For all topics, that's correct, Your

4  Honor.  So these depositions stay as noticed.  It's just that

5  Mr. Whitby will not be a 30(b)(6), instead he'll --

6          THE COURT:  He'll be a fact witness.

7          MS. BERTAUT:  Exactly.  At somebody's request.

8          THE COURT:  So everybody just make note of that,

9  Mr. McWhorter will do the entire 30(b)(6) notice.

10         MS. BERTAUT:  Thank you.

11         THE COURT:  Okay.  Let's see.  I think we covered

12 this, but the designee from Nexen's procurement department,

13 we're still working on that, huh, Tony?

14         MR. FITCH:  That -- well, *working* may be -- I

15 apologize.  I don't have the name yet.

16         THE COURT:  Well, that's working.  Put it back on

17 your list.

18              Okay.  We have a non-party deponent requested by

19 Anadarko and MOEX which is Kate Paine.  How are you-all coming

20 on that, Tony?

21         MR. FITCH:  That's a real paled woe there, Judge.  We

22 finally located a name and address -- an address and telephone

23 number.  After numerous calls, I'm told that it's the wrong

24 person.  I'd respectfully ask for another week to do a little

25 additional investigation.

1          **THE COURT:**  Not a problem.

2          **MR. FITCH:**  And we'll bring it to a head next week.

3          **THE COURT:**  Okay.  No problem.  Let's turn our

4  attention to MI-Swaco and we had a tentative date for JR Smith.

5  Can we take *tentative* off?

6          **MR. LUXTON:**  Good morning, Your Honor, Steve Luxton

7  for MI-Swaco.

8               I'm not sure what the tentative date was.  We

9  had offered a July --

10          **THE COURT:**  You had offered a July.  And I had

11  offered, "Gee, can't you do it sooner than that?"  So that made

12  it tentative.

13          **MR. LUXTON:**  The e-mail distribution that I got from

14  Ms. Scofield, who usually attends the hearings, she had sent an

15  e-mail to Mr. Langan and said, you know, if he wanted Mr. Smith

16  earlier in June that something could be worked out and

17  possibly -- I wouldn't think they would need more than a day,

18  although I know that there are other stakeholders for that, but

19  that was something that the two of them were going to discuss.

20  I don't know that that's been resolved.

21               But I can certainly put that on our continued

22  to-do list and talk to Ms. Scofield.

23          **THE COURT:**  That would be great.  For instance, I'm

24  looking at the calendar, if you could perhaps target the 15th,

25  16th, 17th, that looks like a fairly light stretch of three

1  days.

2           MR. LUXTON:  We'll certainly look into those dates

3  and get in touch with Mr. Smith.

4           THE COURT:  That would be really helpful.  Thank you.

5           MR. LUXTON:  Thank you.

6           MR. LANGAN:  So we'll keep you down tentative.

7           MR. LUXTON:  Okay.

8           THE COURT:  Thank you.

9               Let's see.  We were looking for Weatherford

10 employees.  Glenn, come on up.

11              Hello, Mr. Goodier.

12          MR. GOODIER:  Hello.

13              Well, we've had the 30(b)(6) set for quite some

14 time and we've named Mr. Lirette.  He's more of an engineer

15 type.  If you look below, Bryan Clawson is named as an

16 individual, but Mr. Clawson will also be involved in the

17 30(b)(6).  So it may be that all of the questions can be asked

18 in the 15 hours in the 30(b)(6).

19          THE COURT:  That would be my thought.  I think that's

20 everybody's thought.

21          MR. GOODIER:  Okay.  Daniel Oldfather, we were --

22          THE COURT:  Hold on.  Alan's questioning that.  I'm

23 sorry.  Mr. Clawson hasn't been scheduled yet for an individual

24 deposition, so --

25          MR. GODWIN:  No, but we're putting him on the same

```
 1    day as a part of the 30(b)(6) response.  So he'll be --
 2              THE COURT:  Okay.  I misunderstood.  What date is
 3    that?
 4              MR. GOODIER:  That's the 6th and 7th of June.
 5              THE COURT:  Okay.  And he will be designated for all
 6    portions of the 30(b)(6)?
 7              MR. GOODIER:  No.  No.  Certain portions, but I can't
 8    tell you that right this second.  But he and Lirette will
 9    cover -- and there's some other areas that we may need another
10    witness, but those are under discussion, so...
11              MR. YORK:  So just for clarification, both Lirette
12    and Clawson will be June 6th and 7th, covering all the 30(b)(6)
13    topics plus the factual issues that Clawson would have?
14              MR. GODWIN:  Correct.
15              MR. YORK:  Okay.
16              MR. GOODIER:  There may be another witness if there
17    are other issues that we can't work out.
18              THE COURT:  So Clawson and Lirette for sure will be
19    30(b)(6) designees.  And, Glenn, if you could take a look and
20    let everybody know which topics they'll be testifying
21    concerning.  We've got them down currently for the 30(b)(6) on
22    the 6th and the 7th, huh?
23              MR. GOODIER:  Yeah, that's always been set.  That
24    date has been set.
25              THE COURT:  Okay.  Then we were looking for Daniel
```

1   Oldfather.

2          **MR. GOODIER:**  Well, Mr. Oldfather has a medical

3   issue.  He has a seizure disorder, I found out.  And he is

4   presently off of work and we are waiting -- the company is

5   waiting to get a clearance from his doctors on that.  So as

6   soon as we are able to get a clearance on his doctors -- he

7   wasn't on the rig at the time.  But, I mean, he just happens to

8   have this seizure disorder.

9          **THE COURT:**  Right.  Glenn, if you have anybody else

10  that's going to be a 30(b)(6) designee, could we know --

11         **MR. GOODIER:**  Well, as soon as the other areas are

12  worked out and if they are deleted, then we don't have to have

13  somebody; and if they're included, we will.  And there are a

14  lot of areas where someone would just stand up and say, "We

15  have no information."  So we may be able to use Mr. Lirette to

16  say that.

17         **THE COURT:**  To say that.  Okay.

18         **MR. GOODIER:**  Okay.

19         **THE COURT:**  Good enough.  Thank you.

20              All right.  I think I'm next up to report.

21              We've been in touch with Bob Habans,

22  H-A-B-A-N-S, who is counsel for Donald Vidrine.  He is still

23  having some serious health issues.  We're going to go ahead and

24  free up the dates that we had for him of May 18th and 19th.  So

25  those are target dates, guys, that we can certainly try to fill

 1   people in for.  We will revisit this issue after April 20th.

 2           **MR. STERBCOW:**  Right.  Your Honor, Paul Sterbcow for

 3   the PSC.

 4               I just want to -- all I'm doing is bringing this

 5   up:  Vidrine is clearly one of the critical witnesses in the

 6   whole case.  We are endeavoring and will meet all of our

 7   deadlines to get our expert reports done timely.

 8               However, if there is a factual gap that will not

 9   permit an expert to finalize his opinion because we don't have

10   the company man who made the calls, we're going to begin to

11   have a problem.

12           **THE COURT:**  As I understand it, he has not

13   testified --

14           **MR. STERBCOW:**  Anywhere.

15           **THE COURT:**  -- anyway.

16           **MR. STERBCOW:**  Correct.

17           **THE COURT:**  And we're going to have to, it seems to

18   me, bring this to a head, but it will depend on April 20th.

19           **MR. STERBCOW:**  Right.

20           **THE COURT:**  We'll have to go one way or another

21   post-April 20th, and it's on our radar.

22           **MR. STERBCOW:**  Okay.  Great.

23           **THE COURT:**  Have you been in touch with Mr. Habans?

24           **MR. STERBCOW:**  I talked to Bob about two weeks ago

25   and he told me the same thing.  He's being cooperative.  He's

1  certainly not --

2          **THE COURT:**  Yes, he is being very cooperative.

3          **MR. STERBCOW:**  Right, and I understand.  I

4  understand, and I'm not questioning what he's telling us.  I

5  just wanted to bring that up.  Because we don't want to be

6  caught in late June and all of a sudden the PSC looks up and

7  goes, "Oh, my goodness.  We have a problem."

8          **THE COURT:**  Well, it may be.

9          **MR. STERBCOW:**  Right.  And if we have to proceed

10  without him at all, then I guess we'll just have to, like you

11  said, bring it to a head and figure it out.

12          **THE COURT:**  Exactly.  So it's our radar and it won't

13  be coming off.

14          Next up is Andrea Fleytas, F-L-E-Y-T-A-S, No. 57

15  on the master list.  We also have been in touch with

16  Mr. Arnold, who is her counsel.  She is saying that she has a

17  medical condition.  We are going to bring that up

18  post-April 20th as well.

19          Andy, have you got something on --

20          **MR. LANGAN:**  No.  You're going to get to a couple

21  people that I do have, so I just want to be at the podium when

22  we got there.

23          **THE COURT:**  Christopher Haire, H-A-I-R-E, No. 117.

24  Mr. Buzbee reports that he is available for deposition any time

25  from May 15th to May 30th.  Since we've had a cancelation on

1    the 18th, 19th, or we could do the 23rd, 24th.  Do you guys

2    have any preference?  Oh, and while we're looking at it --

3              MR. STERBCOW:  23rd, 24th, that's the best date.

4              MR. LANGAN:  May 23rd, 24th, and I think we agreed to

5    notice Mr. Haire and we'll do that.  May 23 and 24.

6              THE COURT:  Okay.  So May 23rd, 24th for Christopher

7    Haire.

8                   Now, let me raise an issue that Mr. Buzbee

9    raised with me, which is he is concerned that the deposition go

10   forward without having a lot of stop and start time for

11   reviewing the documents that are being used with the witness,

12   because he's not reviewed most of the documents and is not part

13   of the production.

14                  His request is that he be given the documents to

15   be used with Mr. Haire in advance of the deposition so he could

16   review them in advance and not have to review them one by one

17   as they're presented.

18             MR. LANGAN:  I'm just concerned about the precedent.

19             THE COURT:  Well, I understand.  I'm expressing

20   Mr. Buzbee's concern that if that does not happen it will slow

21   the deposition down.  Let's think about that and --

22             MR. LANGAN:  Can we go back to April -- or go back to

23   February and have that rule retroactive?  I mean, we'd love to

24   have the documents for our witnesses.  Yeah, it would move

25   things along.

1          MR. STERBCOW:  So would we, Your Honor.

2          THE COURT:  Okay.  Moving right along.  Leo Lindner.

3          MR. LANGAN:  I'm sorry, Stephen Bertone, Your Honor.

4          THE COURT:  That's coming up next.

5          MR. GODWIN:  Your Honor, Don Godwin, Halliburton.

6               With regard to the files -- or file for

7    Mr. Haire, what we would suggest is whenever we produce the

8    custodial file to everyone else the ten days ahead of time,

9    we'll be happy to give it to Mr. Buzbee at that time, which

10   should alleviate any concerns that he might have.

11         THE COURT:  That would be very helpful, Don.  Thank

12   you.

13         MR. GODWIN:  We'll do it.

14         THE COURT:  Thank you.

15         MR. GODWIN:  Thank you, Your Honor.

16         THE COURT:  Next up for me, Andy, is Leo Lindner,

17   it's L-I-N-D-N-E-R, No. 130.  Also represented by Mr. Buzbee

18   and he also is available May 15th through 30th.  Since we have

19   taken Mr. Haire on the 23rd, 24th, do you want to take

20   Mr. Lindner the next two days while Mr. Buzbee's in town?

21         MR. STERBCOW:  That's okay with us.

22         THE COURT:  Any objection to that?

23         MR. LANGAN:  May 25th, 26th for Lindner.

24         MS. BERTAUT:  Judge, I thought we had Lindner on the

25   April calendar.

1          **THE COURT:**  We did and Mr. Buzbee confirms that he

2    would like his deposition during that two-week period when he's

3    available for his calendar.

4          **MR. MAZE:**  So he's off for the 25th and 26th?

5          **THE COURT:**  So April 25th, 26th comes off and let's

6    put him, without any objection, obviously, following Mr. Haire

7    on the 25th, 26th.

8          **MR. STERBCOW:**  Sure.  We'll make it work.

9          **THE COURT:**  And then everybody pay attention to those

10   freed up days in late April.  Okay.  Andy, you're up for

11   Mr. Bertone.

12         **MR. LANGAN:**  Yes, Your Honor.  Again, I think we'd

13   like that deposition and I guess Mr. Arnold was saying no.

14         **THE COURT:**  No, he's not saying no.  I spoke to him

15   this week.  He said that he expected to speak to Mr. Bertone's

16   criminal counsel this week and will follow-up with me,

17   hopefully, early next week.  I believe I spoke to Mr. Arnold

18   Monday or Tuesday of this week.

19              So we'll just follow-up.  I'll call Mr. Arnold

20   early next week and see if we can make some further progress.

21         **MR. LANGAN:**  Your Honor, there's one issue that's

22   come up with Mr. Bertone in another courtroom that I wanted

23   Your Honor to be aware of because in connection with a

24   jurisdictional dispute in a case in Texas, Mr. Bertone filed an

25   affidavit, like, this week.

1          And so I guess my point was if Mr.-- and

2  Mr. Arnold's not here, I understand that -- but if they're

3  going to say, "Well, he's going to take the Fifth," or, "He's

4  not going to testify," or whatever, he's filing affidavits in

5  state court in Texas.  Would you like a copy?

6          **THE COURT:**  I would.

7          **MR. LANGAN:**  Counsel, here's a copy.  May I approach?

8          **THE COURT:**  Please.  Thank you.

9          **MR. LANGAN:**  I'm not saying this is a game changer,

10  but it might be something Your Honor would want to know in case

11  they start saying, "Well, he can't testify."  Well --

12          **THE COURT:**  Okay.  I appreciate that.  No, that's

13  something I do want you to call to my attention.  Thank you.

14          **MR. LANGAN:**  Your Honor, the only other point is

15  going back to item No. 6 on your agenda, Cathleenia Willis, I

16  just wanted to mention that she is on the witness list for the

17  Marine Board for next week.  Whether she shows up or not, I

18  don't know.

19          **THE COURT:**  I'd like next week to get a report from

20  you guys on what's going on over there, who's testifying, et

21  cetera, because I'm not keeping track of that.

22          **MR. STERBCOW:**  While we're on that topic, Your

23  Honor -- Paul Sterbcow for the PSC -- we will have probably

24  Mr. Penton, maybe another, and I'll be there in and out as I

25  can.  And it was our intent to come back to you with sort of a

1   summary of who testified -- a very broad summary of why, what
2   they said, et cetera, because I think we're at the tail end,
3   that's important now.
4           THE COURT:  Exactly right.  So we need to keep track
5   of it, it's just that I'm not.
6           MR. MILLER:  Your Honor, back on the issue of
7   Mr. Bertone.  Andy is right, there was a jurisdictional issue
8   that kind of got itself on the front burner in federal court in
9   Houston involving a potential remand of a related case.
10  Mr. Bertone and Transocean and BP cooperated really well to try
11  and manage that situation.  But Mr. Bertone's medical records
12  and medical issues also became an issue in that particular
13  exchange a couple days ago in the Southern District of Texas.
14          So that if he does give a deposition here, as
15  we've requested for the other April 20th --
16  post-April 20th type witnesses, because while he didn't submit
17  an affidavit, it certainly became part of the issues and part
18  of the evidence, we'd certainly want to plug him in on the
19  personal injury track as well if he is going to give a
20  deposition.  Because, again, that became part of the evidence
21  in connection with this jurisdictional issue in Texas earlier
22  this week.
23          THE COURT:  What was the relationship?
24          MR. MILLER:  I was afraid you were going to ask me
25  that.

1          THE COURT:  I'm sorry.

2          MR. MILLER:  The matter is called *Meinert* (phonetic),

3    and it was an attempted remand in Judge Rosenthal's court.

4    And, basically, Your Honor, affidavits were submitted to

5    counter what Mr. Bertone had to say in the affidavit that

6    Mr. Langan passed out that relate to allegations that he has

7    made about his medical condition and how that is relevant to

8    certain other things in the capacity he claims in the affidavit

9    he submitted.

10         THE COURT:  Okay.  Thank you.  All right.

11         MR. STERBCOW:  Could we take one thing out of turn,

12   Your Honor, and the only reason I say that is I know Bill

13   Taylor is the phone and he's got to leave.

14         THE COURT:  Bill?

15         MR. TAYLOR:  Yes, I'm here, Your Honor.

16         THE COURT:  How are you doing?  What have you got?

17         MR. STERBCOW:  We've got --

18         MR. TAYLOR:  Your Honor, I just wanted to report to

19   you, with Mr. Sterbcow there, with his cooperation we have

20   agreed on a protocol which will abort any further litigation of

21   the marital privilege issues.  The protocol is that we have

22   sent to them proposed redactions which would eliminate the

23   personal material that's in the Morell e-mail that leave for

24   use in this litigation anything that is remotely relevant to

25   the issues.

 1          We are in the process of finalizing that.  We

 2   are going to present to you an order in the hopes that you will

 3   sign it to make it clear that the unredacted e-mails, which I

 4   think are -- have been produced by BP and they are in a

 5   depository or a facility somewhere, that those unredacted

 6   e-mails would not be available for either, you know,

 7   depositions or public distribution.

 8          They are probably labeled *confidential*, but my

 9   guess is that that label won't last because it's -- they're --

10   for other reasons.

11          So I don't want to take much of your time this

12   morning, but because you had given us a Monday deadline to

13   decide whether to appeal, I think this system that we've worked

14   out will protect the Morells' privacy in their, you know,

15   matters that don't relate to this litigation, of which there

16   are many, and will permit the parties to have access to

17   anything that he said that is remotely related to the well or

18   the aftermath.

19          **THE COURT:**  Bill, that's great.

20          **MR. TAYLOR:**  Paul, I think I got it right.

21          **THE COURT:**  I think you got it right.  And two

22   things:  One, I apologize.  I should have taken you number one

23   today and let you get off the phone.  So I'm sorry about that.

24   And number two, I absolutely think that the redaction is

25   warranted and I in no way in my ruling meant to open up this

```
 1   couple to personal scrutiny.  And I think it is a really good
 2   resolution of the issue.  So I appreciate you working with Paul
 3   on it.
 4              They sound like a nice young couple, and I
 5   certainly don't want to open them up to more than what they are
 6   already exposed to.  So thank you for working on that.
 7        MR. TAYLOR:  Well, thank you, Your Honor.  I think
 8   this will do it.  I just want to be sure that this protocol
 9   will bind everybody.
10        MR. STERBCOW:  That's what I was going to say.
11        MR. TAYLOR:  In other words, that, you know, we've
12   made this deal with the PSC, I think it needs to be embodied in
13   an order from you so that we don't somehow let it -- let
14   something slip through a crack.  And I think we're going to
15   submit to you an order that will do that.
16        THE COURT:  That's no problem, and I like the
17   resolution of it.  So thank you very much.  I don't -- I assume
18   I'm going to get no objections from anybody on that.  I mean,
19   so if you-all submit the agreed to order, it will be signed.
20        MR. TAYLOR:  From my observations thus far, you have
21   been very persuasive on all these issues, Your Honor.
22        THE COURT:  Thank you.  I appreciate that.  I don't
23   know if I'm persuasive.
24        MR. TAYLOR:  Thank you very much.  I appreciate you
25   taking me out of order.
```

1          THE COURT:  Thank you, Bill.  I'm sorry we didn't

2    take you number one.

3          MR. TAYLOR:  Not at all.  Not at all.  It's okay.

4          MR. STERBCOW:  So to be clear, Your Honor, whatever

5    the PSC and Mr. Taylor comes up with as the final redacted set

6    of e-mails that will be used in the litigation is okay with

7    everybody and we just go forward from there?

8          THE COURT:  I think we have agreement on that.

9          MR. STERBCOW:  Great.

10         THE COURT:  Thank you.  All right.  How are the

11   deputy clerk and court reporter holding up?  You ready?  She's

12   ready for a quick break.  I think she's ready for a quick

13   break.  We're almost finished.  Wait.  Hold on.  Hold on.  Let

14   me look.  I think we're almost done and can recess.  Mike, come

15   here for a second.

16                     **(OFF THE RECORD)**

17         THE COURT:  I think we're almost done, unless Andy

18   has a long list of things.

19         MR. LANGAN:  I have a short off-agenda item when it's

20   convenient for Your Honor.

21         THE COURT:  Don't forget your May 1st deadline for

22   filing preliminary lists of all witnesses who may be called to

23   testify and documents which may be used at the

24   February 27th trial.  And, of course, your May 2nd

25   identification of one or more PI and wrongful death limitation

```
 1    action cases, Robins Dry Dock cases.
 2                 Andy, I don't want to put something out there
 3    that you don't want to talk about yet, but Judge Barbier said
 4    to mention the laptop issue, the BP laptop.
 5              MR. LANGAN:  Oh, that was in the media?
 6              THE COURT:  Anything we need to know?
 7              MR. LANGAN:  I read the papers too.
 8              THE COURT:  Thank you.  That was your report.
 9                 Now, what's your non-agenda item?
10              MR. LANGAN:  Just as I mentioned it to the counsel
11    for the PSC, Mr. Lucas was deposed about 28 or 29 days ago --
12    or the transcript was produced.  He needs a few extra days to
13    read and sign and fill out an errata form.  The PSC said, "How
14    about 21 days," that sounded great to us.  I'm advised that
15    court permission should be sought for this sort of thing,
16    therefore, I'm asking for the Court's permission for Mr. Lucas
17    to have an additional 21 days.
18              THE COURT:  That will be fine.
19              MR. LANGAN:  Thank you.
20              MR. TSEKERIDES:  Your Honor, it's Ted Tsekerides.  I
21    have one item when you're done.
22              THE COURT:  I don't know, my court reporter is
23    looking nervous.
24              MR. TSEKERIDES:  It's really short.  Last night --
25    the other group of responders that we represent are certain
```

1   vessels and last night one of the plaintiffs filed a motion for

2   approval to use the short form claim in what is essentially the

3   B4 bundle.  And we just -- we noted that on the ECF it said it

4   was going to be assigned to you.

5           THE COURT:  Yes, I saw that this morning.

6           MR. TSEKERIDES:  We do intend to respond to that so

7   that it doesn't get entered.  We think there's some issues with

8   what he's done.  We're going to reach out to the plaintiff's

9   lawyer in that matter.

10          THE COURT:  I saw that this morning.  Thank you.  I

11  did see that.

12          MR. TSEKERIDES:  I just wanted to make sure that

13  nothing gets ordered before we have a chance to reach out to

14  him.

15          THE COURT:  So don't get hasty with my pen, huh?

16          MR. TSEKERIDES:  Yes, if you wouldn't mind.

17          MR. HERMAN:  The PSC objects to that motion, by the

18  way, and we'll be happy to address it as the Court may desire.

19          THE COURT:  Okay.

20          MR. LANGAN:  Your Honor, on the laptop issue, I don't

21  mean to be flip about it.  I can provide, if Your Honor and

22  Judge Barbier want, I can get some information, perhaps next

23  Friday, either in writing or orally, and tell you what we know.

24  Would that be fair?

25          THE COURT:  That will be fine.

1          MR. LANGAN:  That's what we'll do.

2          MR. HERMAN:  Steve Herman, Your Honor.  One

3    housekeeping thing, I was just noticing my calendar, May 1st is

4    a Sunday.  Should the witness and preliminary witness list be

5    due the 2nd?

6          THE COURT:  I think that will be good.  I think we

7    saw that before, didn't we?  I think Kat called it to our

8    attention.

9          MR. LANGAN:  That happened on the motion to dismiss.

10         THE COURT:  We saw that on the motion to dismiss.  So

11   if it's a May 1st date, let's make it May 2nd.

12         MR. HERMAN:  Thank you.

13         THE COURT:  You're welcome.  All right.  I think

14   we're done.  Why don't we have a good weekend, good traveling

15   home, all of that good stuff.  And the guys on the phone, we're

16   going to disconnect now.

17         (WHEREUPON, the proceedings were concluded.)

18                              *****

19                         **CERTIFICATE**

20         I, Jodi Simcox, RMR, FCRR, Official Court Reporter
     for the United States District Court, Eastern District of
21   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
22   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

23

24

25                    S/ Jodi Simcox, RMR, FCRR
                        Jodi Simcox, RMR, FCRR
                        Official Court Reporter