**Siegert, Renee M.**

| | |
|---|---|
| **From:** | David Beck [DBECK@brsfirm.com] |
| **Sent:** | Thursday, June 23, 2011 4:29 PM |
| **To:** | Sally_Shushan@laed.uscourts.gov |
| **Cc:** | Andy Langan; Bertaut, Carmelite; cmaze@ago.state.al.us; David Jones; dsc2179@liskow.com; jimr@wrightroy.com; liaison2179@liskow.com; lstrange@ago.state.al.us; Mike_Okeefe@laed.uscourts.gov; Wittmann, Phillip A.; Siegert, Renee M.; sally_shushan@laed.uscourts.gov; sherman@hhkc.com |

**Subject:** [FS#238623] RE: Fw: MDL 2179 -- BP Submission regarding pre July 31 and post July 31 Deponent Issues

Dear Judge Shushan:

I am writing in response to Mr. Langan's additional comments concerning the depositions of Messrs. Emmerson, Allen, and Fleming.

In its original June 10 objection to those depositions, BP claimed that (1) these individuals' knowledge was "essentially duplicative" of Feredouin Abbassian; (2) Cameron's request to depose these individuals was "late"; and (3) BP has already produced more witnesses than any other party. My earlier email addressed each of these points.

In his comments below, Mr. Langan nevertheless contends that Cameron has not set forth a "compelling need" for the depositions. Aside from the fact that "compelling need" is not the standard to take a deposition under the Federal Rules, Cameron believes that there *is* a compelling need to depose these individuals. According to Dr. Abbassian, Messrs. Emmerson, Allen, and Fleming were each responsible for specific aspects of BP's internal investigation which led to substantial findings concerning the maintenance and performance of the Deepwater Horizon BOP. Based in whole or in part on those findings, BP has now sued Cameron seeking to hold it responsible for the BP oil spill. Under these circumstances, Cameron should be permitted to discover what these individuals know about BOPs and to test their findings.

Obviously, Cameron cannot know the full extent of these witnesses' knowledge until it takes their depositions. However, what we do know from Dr. Abbassian's deposition testimony is that their knowledge is not "essentially duplicative" to his knowledge with respect to the BP internal investigation. Moreover, from the deposition testimony of others, we know that these individuals have information relating to BOPs beyond that obtained during the BP investigation. Among other things, we know that:

- Mr. Fleming had technical knowledge regarding BOPs prior to his involvement with the BP internal investigation (deposition of J. Wetherbee, at 347).

- Mr. Fleming was involved in making interim recommendations concerning BOPs after April 20 (deposition of N. Wong, at 379-382).

- Mr. Fleming and Mr. Emmerson were identified by the head of BP rig audit team as two of the three people involved in BP internal investigation with the most knowledge concerning BOPs (Dr. Abbassian was not one of them) (deposition of N. Wong, at 131-33).

- Mr. Emmerson was the source control leader as of April 26, 2010 (deposition of R. Lynch, at 95), and he was present during and witnessed BOP intervention activities after the incident (deposition of H. Thierens, at 672-74).

- Mr. Allen was involved in the preparation of an appendix to a key rig audit for the Deepwater Horizon (deposition of N. Wong, at 394-95).

BP has sued Cameron over the BOP. It should not be permitted to shield its employees with knowledge directly relevant to its claims.

Thank you for your consideration.

David J. Beck



EXHIBIT

1

David J. Beck, Esq.
Beck, Redden & Secrest, L.L.P.
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Tel:  (713) 951-3700
Fax: (713) 951-3720
dbeck@brsfirm.com

---

**From:** Andrew Langan [mailto:alangan@kirkland.com]
**Sent:** Thursday, June 23, 2011 10:29 AM
**To:** Carmelite Bertaut; Sally_Shushan@laed.uscourts.gov
**Cc:** 'cmaze@ago.state.al.us'; David Beck; David Jones; 'dsc2179@liskow.com'; jimr@wrightroy.com;
'liaison2179@liskow.com'; 'lstrange@ago.state.al.us'; 'Mike_Okeefe@laed.uscourts.gov'; Philippe Wittmann; Siegert,
Renee M.; 'sally_shushan@laed.uscourts.gov'; 'sherman@hhkc.com'
**Subject:** Re: Fw: MDL 2179 -- BP Submission regarding pre July 31 and post July 31 Deponent Issues

Dear Judge Shushan:

I write in response to Cameron's continued request (below) to depose Messrs. Allen, Fleming and Emmerson, who were
supporting members of the BOP investigation for the BP Incident Investigation Team (IIT).  As an initial matter, although
Cameron may have submitted a request to depose these witnesses on May 3, BP produced documents and presented
witnesses for deposition from the BP IIT early this year.  Cameron, therefore, had ample opportunity prior to May 3 to
identify and request Messrs. Allen, Fleming and Emmerson for deposition.  Indeed, BP presented numerous witnesses
from the BP IIT in February and March of this year, and in many instances, including witnesses involved with the BOP
investigation (*e.g.*, Walter Guillot), Cameron elected to ask no questions.

More significant, Messrs. Allen, Fleming and Emmerson had no involvement with the *Deepwater Horizon* BOP prior to the
April 20 incident, and therefore Cameron's only basis for seeking their deposition is the supporting role that these
witnesses provided to the post-incident BOP investigation for the BP IIT, as the testimony cited from Mr. Abbassian
indicates.  As Cameron concedes, Dr. Fereidoun Abbassian, the head of the IIT's BOP team, has already testified
extensively regarding BP's investigation regarding the BOP, and the testimony that Cameron cites does not establish that
Dr. Abbassian was unable to answer meaningful questions regarding BP's investigation or the conclusions that it reached.
With respect to the testimony that Cameron cites for each proposed witness, I provide the following:

- **Tony Emmerson**.  The cited Abbassian testimony indicates that Mr. Emmerson was Dr. Abbassian's deputy for the
BOP investigation, but does not establish that Mr. Emmerson would know more or have any relevant information
that would not be duplicative of Dr. Abbassian.  Indeed, the one testimony snippet that Cameron cites only
establishes that Mr. Emmerson may have information regarding the names of individuals who observed a leak
during ROV intervention.  If this is the primary basis for Mr. Emmerson's deposition, there are other witnesses,
including Cameron's own employees, who were part of the incident response, who would have more direct access
to this information than Mr. Emmerson.

- **Ray Fleming**.  The cited Abbassian testimony indicates that Mr. Fleming, who reported to Dr.  Abbassian for the
BOP investigation, investigated the control system performance for the *Deepwater Horizon* BOP, but once more
does not establish that Mr. Fleming would know more or have any relevant information about the investigation
beyond Dr. Abbassian.  Cameron cites Abbassian testimony indicating that Mr. Fleming would know more about
the *Deepwater Horizon* BOP control system.  But to the extent that Mr. Fleming's knowledge of the characteristics
and specifications of the *Deepwater Horizon* BOP control system learned after the incident is the basis for
Cameron's request, Cameron only has to request such information from its own employees, who engineered,
manufactured and serviced the *Deepwater Horizon* BOP.
- 
- **Tim Allen**.  The cited Abbassian testimony indicates that Mr. Allen had responsibility for "looking at the BOP
system and its performance" for the BOP investigation, but once more does not establish that Mr. Allen, who
reported to Dr. Abbassian, would know more or have any relevant information beyond Dr. Abbassian's testimony
about the investigation.   Cameron cites testimony from Dr. Abbassian that Mr. Allen performed a shear calculation
for the BOP investigation, but this alone does not indicate a need for his testimony.  Indeed, the formula that Mr.
Allen used, according to Dr. Abbassian's testimony, is from a Cameron engineering bulletin, and therefore,
Cameron has full knowledge regarding it.
- 

7/5/2011

Although Cameron's hand-picked Abbassian testimony indicates that Messrs. Allen, Fleming and Emmerson had certain roles with the BOP investigation that the BP IIT conducted, it does not set forth a compelling need for their depositions. These witnesses obtained information about the *Deepwater Horizon* BOP after the incident, and in furtherance of an investigation about which Dr. Abbassian has already ably testified. BP also has presented numerous witnesses who Cameron has had the opportunity to question about BP's knowledge of the *Deepwater Horizon* BOP, and BP will present shortly a Rule 30(b)(6) witness who will testify regarding numerous BOP-related topics, including 3 new BOP-related topics that Cameron was granted permission to add.

To conclude, given the dozens of witnesses that BP has willingly presented in this matter, and the substantial burden to BP for presenting three witnesses whose testimony is likely duplicative or of limited value, BP respectfully requests that the Court deny Cameron's request to depose Messrs. Allen, Fleming and Emmerson.

Respectfully submitted,

Andy Langan

**J. Andrew Langan, P.C.| Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com
**"Bertaut, Carmelite" <CBertaut@stonepigman.com>**

06/23/2011 06:27 AM

To "<sally_shushan@laed.uscourts.gov>" <sally_shushan@laed.uscourts.gov>

cc "'Mike_Okeefe@laed.uscourts.gov'" <Mike_Okeefe@laed.uscourts.gov>, "'dsc2179@liskow.com'" <dsc2179@liskow.com>, "'liaison2179@liskow.com'" <liaison2179@liskow.com>, "'sherman@hhkc.com'" <sherman@hhkc.com>, "'jimr@wrightroy.com'" <jimr@wrightroy.com>, "'lstrange@ago.state.al.us'" <lstrange@ago.state.al.us>, "'cmaze@ago.state.al.us'" <cmaze@ago.state.al.us>, "'djones@brsfirm.com'" <djones@brsfirm.com>, "Wittmann, Phillip A." <PWittmann@stonepigman.com>, "Siegert, Renee M." <rsiegert@stonepigman.com>, "'dbeck@brsfirm.com'" <dbeck@brsfirm.com>

Subject Fw: MDL 2179 -- BP Submission regarding pre July 31 and post July 31 Deponent Issues

Judge Shushan,
Set out below was Cameron's response to BP's objection to our request to depose Tim Allen, Tony Emmerson and Ray Fleming that David Beck sent to Andy Langan yesterday.
Please advise if the Court requires or would like any further response regarding Cameron's request.
Sincerely,
Carmelite Bertaut Sent by BlackBerry

---

**From:** David Beck <DBECK@brsfirm.com>
**To:** Andy Langan <alangan@kirkland.com>
**Cc:** Don Haycraft <dkhaycraft@liskow.com>; Wittmann, Phillip A.; Bertaut, Carmelite
**Sent:** Wed Jun 22 14:24:47 2011
**Subject:** RE: MDL 2179 -- BP Submission regarding pre July 31 and post July 31 Deponent Issues

Andy, thank you for your recent email.  I will comment on each of your points, in turn.

We have no further issue relative to Childers and Linenberger, given your representation that they will not be fact witnesses.  As to the other witnesses to which you have objected (Tim Allen, Tony Emmerson and Ray Fleming), Cameron respectfully disagrees with your objections.

First, Cameron's designation of these witnesses is timely and is in accord with the Court's scheduling orders.  We identified these witnesses on May 9 in our Preliminary Witness list (attached) as "witnesses whom [Cameron] would like to depose prior to the February 27, 2012 trial."  On May 27, the Court noted that Cameron had requested these witnesses and directed all parties that they could identify additional names through June 3 (attached).  In short, there is no factual or legal basis for BP's assertion that our requests are "late."  Indeed, Cameron notes that BP has requested additional depositions even *after* Cameron identified Messrs. Allen, Emmerson, and Fleming.

Second, your objection that these witnesses should not be deposed because their knowledge is "essentially duplicative" of Mr. Abbassian's testimony is unfounded.  To our knowledge, the Court has never precluded the

deposition of a witness because that witness' supervisor has testified.  In terms of witnesses who collaborated on the Bly Report, there are numerous instances in which multiple individuals assigned to a particular issue have been deposed in addition to the team leaders--all without any objection from BP.

Third, any suggestion that these witnesses have no knowledge other than that possessed by Mr. Abbassian is contradicted by Mr. Abbassian's own testimony:

Q. What were the names of the people directly underneath you?
A. Norman Wong was looking after maintenance. Tony Emmerson was looking after testing, and also he was acting as my -- was, when I was away, and that was my, essentially right-hand man, put it that way, as a deputy team leader. Tim Allen was looking after BOP system and its performance. So anything he was involved with, BOP rating and any tests that we had to do to determine, for example, the impact of flow rate on elastomeric parts, so that was Tim Allen. And let me recall everybody. And then -- Nik Politis was looking after -- Nik Politis was reporting to Tim Allen. It was Ray Fleming who was leading the control system performance, so that is all the leaks, the performance of the parts, everything was under -- so Tim was the hardware, Tim Allen, and Ray Fleming was the control maintenance testing. Those are the four individuals. (Vol I, pp. 365-66, emphasis added)

Q. But, again, the answer to who -- my question was focused on identifying the person who I can go to for BP and say, what did you see and why do you think that is consistent with an accumulator discharging? You don't know who that person is?
A. No. Many people on my team may have the names. Tony Emmerson could be one individual who would be able to tell you the name of the individuals who actually observed the ROV, but more importantly the leak. (Vol II, p 701, emphasis added)

Q. So you don't know -- so there were people on your team with more knowledge about the operation of the control system, is that true?
A. I had a team of multidiscipline experts, yes.
Q. Who would those people be that could answer the question that I just asked?
A. Ray Fleming. (Vol II, p. 491, emphasis added)

Q. On Page 157, you have a graph showing among other things Cameron shearing pressure BOP at surface. Do you see that?
A. That's right here.
Q. Do you know who on your team made those calculations?
A. Yes, I do. Tim Allen was the name of the individual who did it.
Q. Did Mr. Allen make all the -- well, there's also the calculation for BOP at seabed. Did Mr. Allen make that calculation as well?
A. Using Cameron spreadsheet.
Q. Using Cameron EB702D?
A. Oh, yes, this was based on Cameron formulas, yes.
Q. And was Mr. Allen aware of EB702D before getting involved with the BP investigation?
A. I can't answer this question because I don't know. (Vol II, p. 708-09, emphasis added)

Q. And that's Tab 3 in the -- on the CD. Did you prepare Exhibit H? I'm sorry, Appendix H?
A. Appendix H [the description of the Horizon BOP contained in the Bly Report] was primarily written by a combination of Tim Allen and Ray Fleming because Tim was looking at the stack and -- pressure rating of the stack and Ray Fleming -- I have full accountability for what's in this, however. (Vol II, p. 715, emphasis added)

Fourth, while we appreciate that BP has produced more witnesses than any other party--fittingly, inasmuch as BP is the statutorily designated "responsible party" for OPA damages--that fact is utterly irrelevant to our request.  Simply because other parties asked for and took depositions of multiple BP witnesses does not justify an attempt to preclude Cameron's investigation of BP witnesses knowledgeable about the BOP.  Moreover, Cameron has requested only five BP depositions (and have withdrawn two of those).

Of course, we will be happy to continue to confer with you about your objections and look forward to hearing from you further.

**From:** Andrew Langan [mailto:alangan@kirkland.com]
**Sent:** Wednesday, June 22, 2011 6:30 AM
**To:** Philippe Wittmann; Carmelite Bertaut; David Beck

**Cc:** Don Haycraft
**Subject:** Fw: MDL 2179 -- BP Submission regarding pre July 31 and post July 31 Deponent Issues

Dear Phil, Carmelite and David:

Per the Court's June 20 order, I believe the Court would appreciate hearing from us today in case we are able to resolve any issues about depositions of BP witnesses requested by Cameron.    Our position is set forth below .

And so, is there any remaining issue re Messrs. Childers and Linenberger at this time, given our prior email discussions about them (see below)?

And further, as to Messrs. Allen, Emmerson and Fleming, does Cameron wish to press for all three witnesses (despite what we say below) or is there any room for discussion as to eliminating some or all of them from the list?


Thanks for considering this.

Best regards

Andy



**J. Andrew Langan, P.C.|  Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com
----- Forwarded by Andrew Langan/Chicago/Kirkland-Ellis on 06/22/2011 06:24 AM -----

| | |
|---|---|
| Andrew Langan/Chicago/Kirkland-Ellis | To Sally_Shushan@laed.uscourts.gov |
| 06/10/2011 03:29 PM | cc mike_o'keefe@laed.uscourts.gov, James Roy <JIMR@wrightroy.com>, "Herman, S" <sherman@hhkc.com>, "robert cunningham" <RTC@cunninghambounds.com>, "Paul M. Sterbcow" <sterbcow@lksalaw.com>, "Defense Committee MDL 2179" <dsc2179@liskow.com>, "michael underhill" <Mike.Underhill@usdoj.gov>, deepwater.horizon@usdoj.gov, "Corey Maze" <CMaze@ago.state.al.us>, liaison2179@liskow.com |
| | Subject MDL 2179 --  BP Submission regarding pre July 31 and post July 31 Deponent Issues |



Dear Judge Shushan:

This is BP 's submission as requested by the Court relating to remaining pre July 31 and post July 31 phase 1 deponents.

**1.  Scheduling of Certain BP Deponents.**

To keep the process moving ahead on depositions the Court has allowed to go forward per Your Honor's May 31 memo, BP has arranged for the following additional dates:

**Keith Daigle**:  July 19-20 in NOLA

**Galina Skripnikova**:  July 7-8 in NOLA

7/5/2011

**Curtis Jackson:**   July 21 in NOLA [tentative date please]

We are working on dates for other BP deponents identified by the Court as proper, both pre July 31 (and post July 31) depositions.

## 2.  Certain Witnesses Requested By Cameron:

Cameron recently stated that as to proposed BP affiliated deponents Mark Childers and Ralph Linenberger; Cameron will withdraw its request for their depositions if BP disclaims them as witnesses, fact or otherwise.    BP responds as follows:

**Mark Childers:**  This will confirm that BP will not call Mr. Childers as a fact witness.  If BP identifies Mr. Childers as a testifying expert, we will make him available for deposition in accordance with the Court's schedule for expert discovery.

**Ralph Linenberger:**  As to Mr. Linenberger, BP currently has no intention of calling him as a fact witness.   Like Mr. Childers, if BP decides to identify Mr. Linenberger as an expert, we will make him available  for deposition in accordance with the Court's schedule for expert discovery.

Accordingly, BP does not believe a fact deposition of either Childers or Linenberger need proceed at this time.

## 3.  Objections to Other Suggested BP deponents:

**Mark Mazalla**
Halliburton has requested more deposition time with Mazella.   But Mazzella's one-day dep per 30(b)(6) was on the pre-incident well control topics that fall within his factual knowledge/responsibility as the BP Segment Engineering Technical Authority (SETA) for Well Control.  Also, Halliburton already asked him about flow path as part of the static kill & the relief well topics.  To the extent Halliburton feels the need to ask him more about flow path or his role in the response outside the 30b6 topics they can do so in September (or later) as part of Phase 2, where he is already on the deponent list.  There is no need to bring him back now in the event phase.

**Tony Emmerson**
Tony Emmerson is a BP employee.  He was a member of the BOP group of BP's internal investigation team.  Prior to the Incident, Mr. Emmerson was not involved with the Macondo well or the *Deepwater Horizon.*  Mr. Emmerson's supervisor on the internal investigation team, Feredouin Abbassian, was already deposed on May 3 and 4, and Mr. Emmerson's relevant knowledge is essentially duplicative of Mr. Abbassian's.   Furthermore, Cameron's late notification of this deposition is unjustified, as the internal investigation team documents, including documents identifying team roles, were produced early in the discovery process, and other members of the internal investigation team were deposed as early as January 2011.  Last, BP has already produced 46 witnesses, substantially more than any other party, and to produce another witness with knowledge duplicative to that of another BP deponent is completely unnecessary.

**Tim Allen**
Tim Allen is a BP employee.  He was a member of the BOP group of BP's internal investigation team.  Prior to the Incident, Mr. Allen was not involved with the Macondo well or the *Deepwater Horizon.*  Mr. Allen's supervisor on the internal investigation team, Feredouin Abbassian, was already deposed on May 3 and 4, and Mr. Allen's relevant knowledge is essentially duplicative of Mr. Abbassian's.   Furthermore, Cameron's late notification of this deposition is unjustified, as the  internal investigation team documents, including documents identifying team roles, were produced early in the discovery process, and other members of the  internal investigation team were deposed as early as January 2011.  Last, BP has already produced 46 witnesses, substantially more than any other party, and to produce another witness with knowledge duplicative to that of another BP deponent is completely unnecessary.

**Ray Fleming**
Ray Fleming is a BP employee.  He was a member of the BOP group of BP's internal investigation team.  Prior to the Incident, Mr. Fleming was not involved with the Macondo well or the *Deepwater Horizon.*  Mr. Fleming 's supervisor on the internal investigation team, Feredouin Abbassian, was already deposed on May 3 and 4, and Mr. Fleming's relevant knowledge is essentially duplicative of Mr. Abbassian's.   Furthermore, Cameron's late notification of this deposition is unjustified, as the internal investigation team documents, including documents identifying team roles, were produced early in the discovery process, and other members of the  internal investigation team were deposed as early as January 2011. Last, BP has already produced 46 witnesses, substantially more than any other party, and to produce another witness with knowledge duplicative to that of another BP deponent is completely unnecessary.

Thank you as always for the Court's consideration.


Respectfully submitted,

Andy Langan


**J. Andrew Langan, P.C.| Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

7/5/2011

**Siegert, Renee M.**

**Subject:** FW: [FS#239050] FW: MDL 2179 -- BP's report on Certain Deposition Issues and BP Response to Objections to Additional Halliburton Witnesses as Phase One Deponents

**From:** "Andrew Langan" <alangan@kirkland.com>
**Date:** June 22, 2011 5:07:46 PM CDT
**To:** <Sally_Shushan@laed.uscourts.gov>
**Cc:** <mike_o'keefe@laed.uscourts.gov>, "Defense Committee MDL 2179" <dsc2179@liskow.com>, <liaison2179@liskow.com>, "James Roy" <JIMR@wrightroy.com>, "Herman, S" <sherman@hhkc.com>, "robert cunningham" <RTC@cunninghambounds.com>, "Paul M. Sterbcow" <sterbcow@lksalaw.com>, "Corey Maze" <CMaze@ago.state.al.us>, "michael underhill" <Mike.Underhill@usdoj.gov>
**Subject: MDL 2179 -- BP's report on Certain Deposition Issues and BP Response to Objections to Additional Halliburton Witnesses as Phase One Deponents**

Dear Judge Shushan:

The Court's June 20 Order (at page 5) (Doc 2881) requests updated information prior to the Court ruling on objections to post July 31 depositions.  Accordingly,  BP provides this report regarding certain deposition issues, as well as additional argument on certain other related issues.

1. **Messrs. Linenberger and Childers** ---BP and Cameron have no further dispute at this time regarding Ralph Linenberger and Mark Childers, and their depositions are no longer requested by Cameron, based on BP's communications with Cameron that BP does not intend to call them as fact witnesses at this time (if that should change, we would advise the parties and discuss a deposition at that time).

2. **Messrs. Allen, Emmerson and Fleming** --- BP and Cameron have **not** been able to resolve their dispute about BP's objections, as set forth in my June 10 note to the Court, regarding the requested depositions of Tony Emmerson, Tim Allen and Ray Fleming.

3. **Mark Mazella** -- as set forth in my June 10 note, BP continues to object to the requested deposition by HESI of Mark Mazzella for the event phase.  Mr. Mazzella previously testified as the designee for two very broad categories on BP's well control policies and practices, which would be the same the areas for which he is responsible as a Segment Engineering Technical Authority for Well Control.  All parties, including Halliburton, had the opportunity to question Mr. Mazzella on issues of pre-incident well control.  In its designations, BP already disclaimed him as a fact witness for the event phase.

Further, the parties already asked Mr. Mazzella about flow path and response activities - both in his corporate and individual capacities - as part of the static kill & the relief well topics.  To the extent Halliburton feels the need to ask Mr. Mazzella additional questions about his personal role in the response effort they can do so in September as part of Phase 2 discovery, where he is already on the deponent list.

There is no need to bring Mr. Mazzella back now in the event phase.

4. **Deposition Limits**:  More generally, per the Court's June 20 order, there are already more than 50 deponents listed as "requested" by one party or another for post July 31 deposition.  That 51 does not include more recent requests that have rolled in.  This is all on top of a very intensive deposition program through July 31 that we are in the midst of completing.   We respectfully request that the Court set a firm limit on the number of additional depositions that will be allowed in the post July 31 period,  and thereby hold the parties to their original "priority list" selections, unless truly good cause is shown.  Further, post July 31 depositions should be limited to a single day.

5. **BP Requested depositionsand HESI objections to  same:**  As to Halliburton's objections to deponents sought by BP, we respectfully disagree with those objections.  In the text below we reproduce Halliburton's argument with a short rebuttal as to why the

depositions requested by BP are necessary and appropriate:

## HESI Objections to Additional Halliburton Post-July 31 Depositions and BP Response

**Melissa Bergman**: BP seeks to depose Melissa Bergman about HSE training materials, including stop work authority, and an email she authored stating that Halliburton was remotely monitoring the realtime data during the incident. Bergman's job duties include conducting training with Halliburton's HSE group, and she reports directly to Tim Probert, the Chief HSE Officer. *Bergman's involvement with HSE involving process safety issues began post-incident, with the implementation of Halliburton's new HSE plan in 2011. Any information Bergman possesses regarding HSE process safety training materials therefore post-dates the incident and is not relevant to Phase One of the trial. Bergman does not have any personal knowledge regarding the Macondo incident.* Further, upon inquiry, Ms. Bergman has informed regarding the email referenced in BP's deposition request, that she was merely reporting information told to her by another person. She has no personal knowledge of the monitoring of real time data before, during, or after the Incident. For this reason, Bergman should not be included on the Phase One deponent list.

- **BP Response:** Ms. Bergman is Halliburton's head of HSE and has responsibility for issuing and disseminating training materials related to stop work authority.   Mr. Probert has contended that Halliburton employees only stop work when there is a "clear and present" danger to health, safety or environment.  However, he was unable to explain how training for this claimant worked and testified that Ms. Bergman would have knowledge about Halliburton's stop-work training materials.[1] Halliburton contends that its employees were not required to stop the cement job unless there was a "clear and present" danger and that a cement job does not raise this type of concern.  Thus, Ms. Bergman should be included on the Phase One deponent list.

**Karl Blanchard**: BP seeks to depose Karl Blanchard because he is Halliburton's Vice President in charge of the Cementing Service Line and is Richard Vargo's direct supervisor, and also because he "would have information related to cement training and guidance materials, including on the design and testing of cement slurries." *However, Blanchard was not Vice President of the Cementing Service Line at the time of the Incident, nor did he have anything to do with Macondo.* Tommy Roth served in this Vice President role during the relevant time period, and his deposition is set for June 27-28. For his reason, Blanchard should not be included on the Phase One deponent list.

- **BP Response:** Mr. Blanchard ran the Testing and Subsea division of Halliburton before the incident, and his understanding of Halliburton services and cementing principles extends broadly.  Regardless of Mr. Blanchard's actual position within the cementing service line during the time of the Macondo incident, Tim Probert testified that Mr. Blanchard would have information related to cement training materials.  The training of Halliburton personnel on cement design, testing and operations is important to the issues for the Phase One trial.  As such, Mr. Blanchard should be included on the Phase One deponent list.

**Jim Prestidge**: BP seeks to depose Jim Prestidge because he is the Vice President of HSE and he was identified in a deposition as having information regarding the practices and standards governing Halliburton's provision of services to customers, including any process safety standards. Prestidge reports directly to Tim Probert, the Chief HSE Officer. *Prestidge's involvement with HSE began post-Incident, with the implementation of Halliburton's new HSE plan in 2011. Therefore, any information he possesses in his role as Vice President of HSE, including the practices, standards and process safety standards sought by BP, post-dates the Incident and is not relevant to Phase One of the trial.* Prestidge therefore should not be included on the Phase One deponent list.

- **BP Response:** Tim Probert stated in his deposition that Mr. Prestidge is the best person to ask regarding the new process safety protocols and strategies that have been implemented at Halliburton following the incident.  Such information is highly relevant because the person in charge of implementing changes and improvements to Halliburton's safety protocols or strategies would be able to shed light on the deficiencies in its prior practices.[2] The process safety protocols and training of Halliburton is relevant to the actual performance of its services at the Macondo well.  As such, Mr. Prestidge's deposition should occur during Phase One discovery.

**Simon Turton and/or Anthony Badalamenti**: BP (and Transocean as to Badalamenti) seeks to depose either Simon Turton or Anthony Badalamenti because it "believe[s] they have information regarding Halliburton's post-incident cement testing and investigation." Tim Quirk, the Area Lab Manager for the Gulf of Mexico, was

deposed on March 21-22. During his deposition, Quirk testified about post-Incident cement testing and investigation. Tommy Roth and Ronnie Faul will be deposed on June 27-28 and June 29-30, respectively. Both Roth and Faul are likely to provide additional information regarding post-Incident cement testing and investigation, making the testimony of Simon Turton and/or Anthony Badalamenti unnecessary for Phase One. For these reasons, neither Turton nor Badalamenti should be included on the Phase One deponent list.

- **BP Response:** Mr. Quirk testified that Mr. Turton and Mr. Badalamenti asked him to conduct post-incident testing on the Macondo slurry.[3]Mr. Quirk ran that testing and reported the results of the testing to Mr. Turton and Mr. Badalamenti.[4] There is no evidence that Mr. Faul or Mr. Roth attended this phone conference or received the information.[5] Mr. Turton and Mr. Badalamenti likely took further actions with the post-incident testing results, and possibly discussed the significance of the test results and the defects in the slurry design used at the Macondo well with others within Halliburton. Very few, if any, documents related to this testing and apparently no documents related to communications about the testing have been produced. Thus the deposition of Mr. Turton and/or Mr. Badalamenti is necessary during Phase One to discover the results and communications about this post-incident testing that Halliburton conducted.

**Jim Brown**: BP seeks to depose Jim Brown, Halliburton's President--Western Hemisphere. BP claims that Brown would purportedly know if any guidance was issued to Halliburton's engineers after the *Deepwater Horizon* incident. BP also notes that Brown sent a letter to employees on 10/28/10 sharing Halliburton's post-Incident investigation, and BP vaguely claims he "may have information concerning Halliburton's investigation" as a result. Jim Brown is a senior executive and Halliburton's President of Operations in the Western Hemisphere. He was not personally involved in any Halliburton internal investigation. Further, Brown did not have involvement in or responsibility for the Macondo well during Phase One events. He therefore has no first-hand knowledge of any facts that are relevant to Phase One. For these reasons, Brown should not be included on the Phase One deponent list.

- **BP Response:** Mr. Brown is the president of operations in the Western Hemisphere, which would include Halliburton's operations in the Gulf of Mexico for the Macondo well. Further, Tim Probert testified that Mr. Brown is the best source of information regarding the existence of technical guidance documents issued to Halliburton engineers in the Western Hemisphere.[6] Although Halliburton claims that Mr. Brown had no involvement in any Halliburton internal investigation, Mr. Brown sent an update to all Halliburton employees regarding Halliburton's positions relating to the incident, which shows that he has knowledge of Halliburton's post-incident investigation and some knowledge on the facts of the incident.[7] Thus, Mr. Brown should be included on the Phase One deponent list.

**James Bement**: BP seeks the deposition of James Bement, the Vice President of Sperry, because BP thinks he has knowledge of Sperry performance issues and non-productive time on the *Deepwater Horizon*. John Gisclair was deposed as Halliburton's primary 30(b)(6) designee for Sperry issues on March 14-15, and an additional 30 (b)(6) designee, Skip Clark, is tentatively scheduled to testify regarding contractual issues between BP and Sperry. Such contractual issues would include the topics sought by BP. In his personal capacity, Bement knows nothing about issues related to the blowout, thus he lacks any information relevant to Phase One. For these reasons, Bement should not be included on the Phase One deponent list.

**BP Response:** As the vice-president of Sperry Drilling, Mr. Bement would have information on the mud logging services that Halliburton provided on the Deepwater Horizon. Mr. Gisclair's deposition topics did not include Sperry Drilling's performance issues. Further, Mr. Probert testified at his deposition that Mr. Bement would be the best person to ask about safety information on the drilling and mud logging services provided by Halliburton/Sperry Drilling.[8] Mr. Probert also testified that Mr. Bement provided him with information about Sperry Drilling for Mr. Probert's public statements on behalf of Halliburton regarding the incident.[9] Mr. Bement has knowledge of the incident and is the proper person to offer information on Sperry's safety guidance and practices given to its mud loggers on the *Deepwater Horizon*, as well contractual issues between BP and Sperry. As such, Mr. Bement should be included on the Phase One deponent list.

---

[1] Q. Okay. So let me restate the question. For Halliburton Ms. Bergman would have the responsibility for issuing those types of training materials relating to stop work authority; is that right?
A. At a high level. Then it would be disseminated down through the organization, yes. (5-9-2011 Probert Dep. Tr. at 385:16-23).

[2] Q. Right. But in terms of process safety 2011 strategy, not focused just on nonproductive time but on other issues, who would be the best person to ask whether such documents exist?
A. Mr. Prestidge, who heads up our health, safety, environmental and service within the organization. (5-10-2011 Probert Dep. Tr. at 458: 2-9).

[3] 3-21-2011 Quirk Dep. Tr. at 92-93.

[4] 3-21-2011 Quirk Dep. Tr. at 104-105.

[5] 3-21-2011 Quirk Dep. Tr. at 91-93.

[6] Q. Who is the best person to ask at Halliburton if such documents existed? Who should -- who would know?
A. I mean, if it was issued by Mr. Brown, then Mr. Brown would be the person that would know about it. (5-10-2011 Probert Dep. Tr. at 457-58: 21-1)

[7] 5-10-2011 Probert Dep. Tr. at 608-610.

[8] Q. Mr. Karl Blanchard. Okay. With respect to the mud logging services, if I wanted to ask about what Halliburton expects of its employees with respect to safety and mud logging services, who would be the best person at Halliburton to -- in a position to answer that question?
A. That would be James Bement, who heads up the Sperry Drilling Services product line. (5-10-2011 Probert Dep. Tr. at 424: 14-23)

[9] 5-10-2011 Probert Dep Tr. at 426:2-12.

************************************************************

Thank you for the Court's consideration

Respectfully submitted,

Andy Langan


**J. Andrew Langan, P.C.| Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com
—— Forwarded by Andrew Langan/Chicago/Kirkland-Ellis on 06/22/2011 02:52 PM ——

**"York, R. Alan" <**AYork@GodwinRonquillo.com**>**

06/21/2011 09:33 AM

To <Sally_Shushan@laed.uscourts.gov>, Kat Shea <Kat_Shea@laed.uscourts.gov>, <Mike_OKeefe@laed.uscourts.gov>
cc <SHERMAN@hhkc.com>, <jimr@wrightroy.com>, <RTC@cunninghambounds.com>, <Mike.Underhill@usdoj.gov>, L Strange <lstrange@ago.state.al.us>, <CMaze@ago.state.al.us>, DWH Defense Steering Committee <Dsc2179@liskow.com>
Subject Objections to Additional Halliburton Witnesses as Phase One Deponents


Judge Shushan and counsel:

In reviewing the list of potential additional phase one deponents attached to the Working Group Order issued yesterday, we noted that two proposed Halliburton witnesses, Anthony Badalamenti and Simon Turton, are listed as there being no opposition to their depositions being added. We wanted to correct the record to note that Halliburton has objected to these depositions as set out in the attached June 10, 2011 email. We just wanted to make sure everyone was on the same page prior to this Friday's conference.

Thank you.

7/8/2011

Alan York


**R. Alan York**
Board Certified - Civil Appellate Law
Texas Board of Legal Specialization

<ATT4347003.jpg>

1331 Lamar, Suite 1665
Houston, Texas 77010
713.595.8301 Direct   (800.662.8393 Toll Free)
713.595.8333 Fax
AYork@GodwinRonquillo.com
GodwinRonquillo.com

This electronic transmission (and/or the documents accompanying it) may contain confidential information
belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections
2510 and 2521 and may be legally privileged. This message (and any associated files) is intended only for the
use of the individual or entity to which it is addressed and may contain information that is confidential, subject
to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any
dissemination, copying or distribution of this message, or files associated with this message, is strictly
prohibited. If you have received this communication in error, please notify Godwin Ronquillo PC immediately
by telephone (800.662.8393) and destroy the original message. Messages sent to and from us may be monitored.

IRS Circular 230 Required Notice--IRS regulations require that we inform you as follows: Any U.S. federal tax
advice contained in this communication (including any attachments) is not intended to be used and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any transaction or tax-related matter[s].

---

**From:** York, R. Alan
**Sent:** Friday, June 10, 2011 9:39 AM
**To:** Sally_Shushan@laed.uscourts.gov; 'Kat_Shea@laed.uscourts.gov'; 'Mike_OKeefe@laed.uscourts.gov'
**Cc:** 'SHERMAN@hhkc.com'; 'jimr@wrightroy.com'; Robert Cunningham; 'mike.underhill@usdoj.gov';
'lstrange@ago.state.al.us'; 'cmaze@ago.state.al.us'; dsc2179 distribution list
**Subject:** Objections to Additional Halliburton Witnesses as Phase One Deponents

Judge Shushan:

In compliance with your May 27 memorandum regarding additional phase one deponents, Halliburton
provides the following objections to other parties' requests for additional Halliburton witnesses as
phase one deponents.

### Objections to Additional Halliburton Post-July 31 Depositions

**Richard Dubois**: Halliburton has no objection to the addition of Richard Dubois to the Phase One
deponent list, and has provided a proposed deposition date of July 19.

**Halliburton 30b6 designee on Sperry contractual issues**:  Halliburton has no objection to this
Phase One deposition and has provided a proposed deposition date of July 29.

**Melissa Bergman**: BP seeks to depose Melissa Bergman about HSE training materials, including
stop work authority, and an email she authored stating that Halliburton was remotely monitoring the

7/8/2011

realtime data during the incident.  Bergman's job duties include conducting training with Halliburton's HSE group, and she reports directly to Tim Probert, the Chief HSE Officer.  *Bergman's involvement with HSE involving process safety issues began post-incident, with the implementation of Halliburton's new HSE plan in 2011.  Any information Bergman possesses regarding HSE process safety training materials therefore post-dates the incident and is not relevant to Phase One of the trial.  Bergman does not have any personal knowledge regarding the Macondo incident.*  Further, upon inquiry, Ms. Bergman has informed regarding the email referenced in BP's deposition request, that she was merely reporting information told to her by another person.  She has no personal knowledge of the monitoring of real time data before, during, or after the Incident.  For this reason, Bergman should not be included on the Phase One deponent list.

**Karl Blanchard**: BP seeks to depose Karl Blanchard because he is Halliburton's Vice President in charge of the Cementing Service Line and is Richard Vargo's direct supervisor, and also because he "would have information related to cement training and guidance materials, including on the design and testing of cement slurries."  *However, Blanchard was not Vice President of the Cementing Service Line at the time of the Incident, nor did he have anything to do with Macondo.*  Tommy Roth served in this Vice President role during the relevant time period, and his deposition is set for June 27-28.  For his reason, Blanchard should not be included on the Phase One deponent list.

**Jim Prestidge**: BP seeks to depose Jim Prestidge because he is the Vice President of HSE and he was identified in a deposition as having information regarding the practices and standards governing Halliburton's provision of services to customers, including any process safety standards.  Prestidge reports directly to Tim Probert, the Chief HSE Officer.  *Prestidge's involvement with HSE began post-Incident, with the implementation of Halliburton's new HSE plan in 2011.  Therefore, any information he possesses in his role as Vice President of HSE, including the practices, standards and process safety standards sought by BP, post-dates the Incident and is not relevant to Phase One of the trial.*  Prestidge therefore should not be included on the Phase One deponent list.

**Simon Turton or Anthony Badalamenti**: BP (and Transocean as to Badalamenti) seeks to depose either Simon Turton or Anthony Badalamenti because it "believe[s] they have information regarding Halliburton's post-incident cement testing and investigation."  Tim Quirk, the Area Lab Manager for the Gulf of Mexico, was deposed on March 21-22.  During his deposition, Quirk testified about post-Incident cement testing and investigation.  Tommy Roth and Ronnie Faul will be deposed on June 27-28 and June 29-30, respectively.  Both Roth and Faul are likely to provide additional information regarding post-Incident cement testing and investigation, making the testimony of Simon Turton and/or Anthony Badalamenti unnecessary for Phase One.  For these reasons, neither Turton nor Badalamenti should be included on the Phase One deponent list.

**Jim Brown**: BP seeks to depose Jim Brown, Halliburton's President--Western Hemisphere.  BP claims that Brown would purportedly know if any guidance was issued to Halliburton's engineers after the *Deepwater Horizon* incident.  BP also notes that Brown sent a letter to employees on 10/28/10 sharing Halliburton's post-Incident investigation, and BP vaguely claims he "may have information concerning Halliburton's investigation" as a result.  Jim Brown is a senior executive and Halliburton's President of Operations in the Western Hemisphere.  He was not personally involved in any Halliburton internal investigation.  Further, Brown did not have involvement in or responsibility for the Macondo well during Phase One events.  He therefore has no first-hand knowledge of any facts that are relevant to Phase One.  For these reasons, Brown should not be included on the Phase One deponent list.

**James Bement**: BP seeks the deposition of James Bement, the Vice President of Sperry, because BP thinks he has knowledge of Sperry performance issues and non-productive time on the *Deepwater Horizon*.   John Gisclair was deposed as Halliburton's primary 30(b)(6) designee for Sperry issues on March 14-15, and an additional 30(b)(6) designee, Skip Clark, is tentatively scheduled to testify regarding contractual issues between BP and Sperry.  Such contractual issues would include the topics sought by BP.  In his personal capacity, Bement knows nothing about issues related to the blowout, thus he lacks any information relevant to Phase One.  For these reasons, Bement should not be included on the Phase One deponent list.

Thank you.

Alan York

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Siegert, Renee M.**

| | |
|---|---|
| **From:** | Wittmann, Phillip A. [PWittmann@stonepigman.com] |
| **Sent:** | Thursday, June 23, 2011 11:18 AM |
| **To:** | Bertaut, Carmelite; Siegert, Renee M. |
| **Subject:** | [FS#238624] FW: MDL 2179 -- Cameron's response to BP's report on Certain Deposition Issues and BP Response to Objections to Additional Halliburton Witnesses as Phase One Deponents |
| **Attachments:** | (10-2771)(Limitation) Cameron_s Preliminary Witness and Exhibit List.pdf; 05-27-11 memo to counsel on post July 31 depos.pdf; 5-27-11 Post July 31 Phase One Depositions.pdf |

-----------------------------------------

**From:** David Beck[SMTP:DBECK@BRSFIRM.COM]
**Sent:** Thursday, June 23, 2011 11:20:55 AM
**To:** Sally_Shushan@laed.uscourts.gov
**Cc:** Andy Langan; mike_o'keefe@laed.uscourts.gov;
Defense Committee MDL 2179; liaison2179@liskow.com; jimr@wrightroy.com;
Herman, S; robert cunningham; Paul M. Sterbcow; Corey Maze;
michael underhill
**Subject:** MDL 2179 -- Cameron's response to BP's report on Certain Deposition Issues and BP
Response to Objections to Additional Halliburton Witnesses as Phase One Deponents
**Auto forwarded by a Rule**


Dear Judge Shushan:

      Cameron makes the following response to item no. 2 of Mr. Langan's "report" of yesterday, and BP's objections of June 10, 2011 to Cameron's request to depose Messrs. Emmerson, Allen, and Fleming.

      First, Cameron's designation of these witnesses is timely and is in accord with the Court's scheduling orders.  We identified these witnesses on May 9 in our Preliminary Witness list (attached) as "witnesses whom [Cameron] would like to depose prior to the February 27, 2012 trial."  On May 27, the Court noted that Cameron had requested these witnesses and directed all parties that they could identify additional names through June 3 (attached).  In short, there is no factual or legal basis for BP's assertion that our requests are "late."  Indeed, BP has requested additional depositions even *after* Cameron identified Messrs. Allen, Emmerson, and Fleming.

      Second, BP's objection that these witnesses should not be deposed because their knowledge is "essentially duplicative" of Mr. Abbassian's testimony is unfounded.  To our knowledge, the Court has never precluded the deposition of a witness because that witness' supervisor has testified.  In terms of witnesses who collaborated on the Bly Report, there are numerous instances in which multiple individuals assigned to a particular issue have been deposed in addition to the team leaders--all without any objection from BP.

      Third, any suggestion that these witnesses have no knowledge other than that possessed by Mr. Abbassian is contradicted by Mr. Abbassian's own deposition testimony:

Q. What were the names of the people directly underneath you?
A. Norman Wong was looking after maintenance. Tony Emmerson was looking after testing, and also he was acting as my -- was, when I was away, and that was my, essentially right-hand man, put it that way, as a deputy team leader. Tim Allen was looking after BOP system and its performance. So anything he was involved with, BOP rating and any tests that we had to do to determine, for example, the impact of flow rate on elastomeric parts, so that was Tim Allen. And let me recall everybody. And then -- Nik Politis was looking after -- Nik Politis was reporting to Tim Allen. It was Ray Fleming who was leading the control system performance, so that is all the leaks, the performance of the parts, everything was under -- so Tim was the hardware, Tim Allen, and Ray Fleming was the control maintenance testing. Those are the four individuals. (Vol I, pp. 365-66, emphasis added)

Q. But, again, the answer to who -- my question was focused on identifying the person who I can go to for BP and say, what did you see and why do you think that is consistent with an accumulator discharging? You don't know who that person is?
A. No. Many people on my team may have the names. Tony Emmerson could be one individual who would be able to tell you the name of the individuals who actually observed the ROV, but more importantly the leak. (Vol II, p 701, emphasis added)

7/5/2011

Q. So you don't know -- so there were people on your team with more knowledge about the operation of the control system, is that true?
A. I had a team of multidiscipline experts, yes.
Q. Who would those people be that could answer the question that I just asked?
A. <u>Ray Fleming</u>. (Vol II, p. 491, emphasis added)

Q. On Page 157, you have a graph showing among other things Cameron shearing pressure BOP at surface. Do you see that?
A. That's right here.
Q. Do you know who on your team made those calculations?
A. Yes, I do. <u>Tim Allen</u> was the name of the individual who did it.
Q. Did Mr. Allen make all the -- well, there's also the calculation for BOP at seabed. Did Mr. Allen make that calculation as well?
A. Using Cameron spreadsheet.
Q. Using Cameron EB702D?
A. Oh, yes, this was based on Cameron formulas, yes.
Q. And was <u>Mr. Allen</u> aware of EB702D before getting involved with the BP investigation?
A. I can't answer this question because I don't know. (Vol II, p. 708-09, emphasis added)

Q. And that's Tab 3 in the – on the CD. Did you prepare Exhibit H? I'm sorry, Appendix H?
A. Appendix H [the description of the Horizon BOP contained in the Bly Report] was primarily written by a combination of <u>Tim Allen</u> and <u>Ray Fleming</u> because Tim was looking at the stack and -- pressure rating of the stack and Ray Fleming -- I have full accountability for what's in this, however. (Vol II, p. 715, emphasis added)

    Finally, while we appreciate that BP has produced more witnesses than any other party--fittingly, inasmuch as BP is the statutorily designated "responsible party" for OPA damages--that fact is irrelevant to our request.  Simply because other parties asked for and took depositions of multiple BP witnesses does not justify an attempt to preclude Cameron's interrogation of BP witnesses knowledgeable about the BOP.  Moreover, Cameron does not request depositions unnecessarily.  We have requested only five BP depositions (and have withdrawn two of those requests).

    We respectfully request that BP's objections be denied.  Thank you for your consideration.

    David J. Beck

David J. Beck, Esq.
Beck, Redden & Secrest, L.L.P.
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Tel:  (713) 951-3700
Fax: (713) 951-3720
<u>dbeck@brsfirm.com</u>

*****************************************************************************************************
 CONFIDENTIALITY NOTICE: Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this e-mail message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, immediately notify the sender by telephone at 713-951-3700 and return the original message to Beck, Redden & Secrest, L.L.P. at brs@brsfirm.com. Thank you.
*****************************************************************************************************

7/5/2011



May  9 2011
5:44PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG     :    MDL NO. 2179
      "DEEPWATER HORIZON" in the  :
      GULF OF MEXICO, on         :    SECTION:  J
      APRIL 20, 2010            :
                                 :    JUDGE BARBIER
**THIS PLEADING APPLIES TO:**  :    MAG. JUDGE SHUSHAN
**No. 10-2771**                  :
                                 :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### CAMERON INTERNATIONAL CORPORATION 'S PRELIMINARY WITNESS LIST, LIST OF WITNESSES TO BE DEPOSED PRIOR TO THE FEBRUARY 27, 2012 TRIAL, AND PRELIMINARY EXHIBIT LIST

**1.**     **PRELIMINARY LIST OF WITNESSES**

        In addition to witnesses identified by other parties, Defendant Cameron International Corporation ("Cameron") respectfully submits the following preliminary list of witnesses who may be called to testify at the trial of this matter set for February 27, 2012.

        1.    Carter Erwin - Cameron employee

        2.    William LeNormand - Cameron employee

        3.    Melvin Whitby - Cameron employee

        4.    David McWhorter - Cameron employee

**2.**     **LIST OF DEPONENTS**

        Cameron respectfully submits the following list of witnesses whom it would like to depose prior to the February 27, 2012 trial.

        1.    Jeremy Clements - Transocean employee

        2.    Al Cotton - R&B Falcon employee

        3.    Steve Crichton - Transocean employee

1055595v.1

4.      Fred Foreman - InSpec, Inc. employee

5.      Todd Gray - Transocean employee

6.      John Kennedy - R&B Falcon employee

7.      Ralph Linenberger - BP consultant

8.      Scott McGrath - Transocean employee

9.      Brad Rodger - Transocean employee

10.     Peter Silverman - R&B Falcon employee

11.     Linda Wetherell - R&B Falcon employee

12.     Kevin Wink - R&B Falcon employee

13.     Mike Fry - Transocean employee

14.     Geoff Boughton - Transocean employee

15.     Mark Childers - BP consultant

16.     Tony Emerson - BP employee

17.     Tim Allen - BP employee

18.     Ray Fleming - BP employee

19.     Mike Byrd - BP employee

20.     Gary D. Kenney, Ph.D. - Sine Rivali, LLC principal, DNV consultant

21.     Neil G. Thompson, Ph.D. - DNV employee

1055595v.1

3.      **PRELIMINARY EXHIBIT LIST**

      Cameron respectfully submits its preliminary exhibit list as those exhibits introduced and marked in the depositions completed in this action through May 9, 2011.

      Cameron hereby reserves its right to amend the above lists, as discovery in this matter is ongoing and the issues to be tried at the February 27, 2012 trial have not been resolved.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A. | */s/ Phillip A. Wittmann* |
|    dbeck@brsfirm.com | Phillip A. Wittmann, 13625 |
| Joe W. Redden, Jr. |    pwittman@stonepigman.com |
|    jredden@brsfirm.com | Carmelite S. Bertaut, 3054 |
| David W. Jones |    cbertaut@stonepigman.com |
|    djones@brsfirm.com | Keith B. Hall, 24444 |
| Geoffrey Gannaway |    khall@stonepigman.com |
|    ggannaway@brsfirm.com | Jared Davidson, 32419 |
| |    jdavidson@stonepigman.com |
| BECK, REDDEN & SECREST, L.L.P. | |
| One Houston Center | STONE PIGMAN WALTHER WITTMANN L.L.C. |
| 1221 Mckinney, Suite 4500 | 546 Carondelet Street |
| Houston, TX  77010-2010 | New Orleans, Louisiana  70130 |
| 713-951-3700 | 504-581-3200 |
| 713-951-3720 (fax) | 504-581-3361 (fax) |
| | |
| | **ATTORNEYS FOR CAMERON** |
| | **INTERNATIONAL CORPORATION** |

1055595v.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing Preliminary Witness List of Defendant Cameron International Corporation has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May, 2011.

*/s/ Phillip A. Wittmann*

1055595v.1

**Memorandum**

To:     Liaison Counsel and Coordinating Counsel

From:  Magistrate Judge Shushan

Re:     Post July 31, 2011 Depositions for Phase One

Date:   May 27, 2011

       Attached is the list of persons that have been requested for depositions after July 31, 2011 for **Phase One** of the February 2012 trial.  It has grown to 47.  Since it includes witnesses, we could not accommodate before July 31st.

       By **Friday, June 3, 2011**, please report whether there are any additions or corrections to the list.

       By **Friday, June 10, 2011**, please state any objections to deposing these persons from August 1, 2011 through about October 14, 2011.  Thereafter the parties shall promptly meet-and-confer on the objections.  If the parties are unable to resolve the objections, I will resolve them at or following the June 17th status conference.

       Please begin contacting the persons identified on the list so that they may be scheduled for their depositions.  The default time limit for these depositions will be 7.5 hours.

**Post July 31 Phase One Depositions** - May 27, 2011

|     | Name | Employer | Requesting Party |
|-----|------|----------|------------------|
| 1.  | Allen, Tim | BP | Cameron |

Member of BOP sub-team in connection with the Bly investigation.

|     | Name | Employer | Requesting Party |
|-----|------|----------|------------------|
| 2.  | Badalamenti, Anthony | Halliburton | Transocean |

Mr. Quirk testified that Badalamenti and Simon Turton contacted him after the incident for additional lab testing on the cement slurry used at Macondo. It is believed that they have information concerning Halliburton's post-incident cement testing and investigation.

|     | Name | Employer | Requesting Party |
|-----|------|----------|------------------|
| 3.  | Bement, James | Halliburton/Sperry | BP |

VP of Sperry. He is responsible for the Sperry Drilling product service line. He has knowledge of factual issues surrounding the Sperry Drilling performance issues and non-productive time on the DWH.

|     | Name | Employer | Requesting Party |
|-----|------|----------|------------------|
| 4.  | Bergman, Melissa | Halliburton | BP |

The head of HSE and someone who could testify about Halliburton HSE training materials on various topics, including stop work authority. She is the author of an email stating that Halliburton was remotely monitoring the realtime data during the incident and may be able to provide information concerning that Halliburton monitoring. Halliburton contends that Bergman's involvement began post-incident.

|     | Name | Employer | Requesting Party |
|-----|------|----------|------------------|
| 5.  | Birrell, Gordon | BP | Anadarko |

Technology VP for operations from 2009 through April 20, 2010. Assigned to Doug Suttles to develop programs for the implementation of Process Safety policies. His files should include BP's written policies, procedures and standards relating to Process Safety.

| | Name | Employer | Requesting Party |
|---|---|---|---|
| 6. | Blanchard, Karl | Halliburton | BP |

VP in charge of the Cementing Service line and also Richard Vargo's direct supervisor. Mr. Probert testified that Mr. Blanchard would have information relating to Halliburton's cement training and guidance materials, including on the design and testing of cement slurries. Halliburton contends that Blanchard should not be a Phase One witness.

| | | | |
|---|---|---|---|
| 7. | Bondurant, Charles | BP | Halliburton |

He is a prospect geologist, who was directly involved in the Tiger Team's efforts surrounding the March 8 kick event. He was involved on numerous emails assessing the Tiger Team's performance surrounding the March 8 kick event.

| | | | |
|---|---|---|---|
| 8. | Brock, Tony | BP | PSC |

Weatherbee interview.

| | | | |
|---|---|---|---|
| 9. | Brown, Jim | Halliburton | BP |

Responsible for Western Hemisphere operations. Mr. Probert testified that Mr. Brown would know if any guidance was issued to Halliburton's engineers after the Deepwater Horizon incident. He is the sender of an October 28, 2010 email to Halliburton employees sharing information on Halliburton's post-incident investigation, and may have information concerning it. Halliburton contends he should not be a Phase One witness.

| | | | |
|---|---|---|---|
| 10. | Childers, Mark | BP Consultant | Cameron |

Cameron describes him as BP representative during the JIT investigation. BP objects on the ground that Childers is a non-testifying litigation consultant. He was not employed by BP and had no involvement with DWH or the Macondo well.

2

|  | Name | Employer | Requesting Party |
|---|---|---|---|
| 11. | Clements, Jeremy | Transocean | Cameron |

Transocean employee assigned to Deepwater Horizon and worked in maintenance of the Deepwater Horizon BOP.

|  |  |  |  |
|---|---|---|---|
| 12. | Cotton, Al | R&B Falcon | Cameron |

Witness may have had role in selection, design and configuration of equipment on Deepwater Horizon BOP.

|  |  |  |  |
|---|---|---|---|
| 13. | Crichton, Steve | Transocean | Cameron |

Witness was involved in inspection, maintenance and repair of Deepwater Horizon BOP.

|  |  |  |  |
|---|---|---|---|
| 14. | Douglass, Sherrie | BP | Halliburton and TO |

She works in BP's regulatory department and has been identified as the person responsible for submitting to MMS variance requests for the drilling plan including, but not limited to, variances regarding pore pressure margins.

|  |  |  |  |
|---|---|---|---|
| 15. | Emerson, Tony | BP | Cameron |

Member of BOP sub-team in connection with the Bly investigation.

|  |  |  |  |
|---|---|---|---|
| 16. | Fleming, Ray | BP | Cameron |

Member of BOP sub-team in connection with the Bly investigation.

|  |  |  |  |
|---|---|---|---|
| 17. | Foreman, Fred | InSpec, Inc. | Cameron |

Witness may have had role in selection, design and configuration of equipment on Deepwater Horizon, including BOP (BP's Answers to PLC's Master Interrogatories and Requests for Production #32).

3

| Name | Employer | Requesting Party |
|------|----------|------------------|

18.  Fry, Mike          Transocean          Cameron

Witness was involved in inspection, maintenance and repair of Deepwater Horizon BOP.

19.  Gaude, Ed          Cameron          BP

Engineer whose role has been more fully identified through recent review of Cameron documents. He is a necessary fact witness. He was involved in the design and construction of the control system of the DWH blowout preventer. While other Cameron witnesses can speak to the design, construction, and maintenance of the BOP in general, he can testify about the control system in particular. Testimony about the control system of the BOP is necessary to continue evaluation of whether the BOP control system contributed to the failure of the BOP to work as expected during the incident.

20.  Gray, Todd          Transocean          Cameron

Witness was involved in inspection, maintenance and repair of Deepwater Horizon BOP.

21.  Johnson, Stephen          MI          Halliburton

Mud Engineer who BP asked to have replaced prior to the incident.

22.  Kennedy, John          R&B Falcon          Cameron

Witness was involved in selection, design and configuration of equipment on Deepwater Horizon BOP.

23.  Kenney, Gary D.          Sine Rivali/DNV          Cameron

Lead investigator for DNV in connection with the JIT BOP forensic investigation; believed to be the lead investigator in connection with BP's ongoing testing of the BOP; signed DNV's "Final Report" concerning the BOP and the addendum thereto.

4

| | Name | Employer | Requesting Party |
|---|---|---|---|
| 24. | Keplinger, Yancey | Transocean | BP |

Dynamic Positioning Officer (DPO) on the Deepwater Horizon, and has significant information concerning the operation of the vessel and emergency procedures generally, specific information and knowledge concerning the operation and functionality of the various alarm systems on board the Deepwater Horizon, and the events of April 20, 2010.  He was stationed on the bridge at the time of the incident and has knowledge of the actions of the personnel located on the bridge immediately following the blowout and the actions that were taken in response to the various alarms on the bridge.

| | | | |
|---|---|---|---|
| 25. | Linenberger, Ralph | BP consultant | Cameron |

Cameron describes him as BP's representative in the current BOP testing.  BP objects on the ground that Linenberger is a non-testifying litigation consultant.  He was not employed by BP and had no involvement with DWH or the Macondo well.

| | | | |
|---|---|---|---|
| 26. | Maxie, Doyle | MI | Halliburton and BP |

Project Engineer who was directly involved in MI's work performed relating to Macondo; and an on shore supervisor of the mud engineers on board the Deepwater Horizon and participated in various M-I Swaco decisions and recommendations regarding the lost circulation materials used downhole.

| | | | |
|---|---|---|---|
| 27. | McGrath, Scott | Transocean | Cameron |

Witness was involved in inspection, maintenance and repair of Deepwater Horizon BOP.

| Name | Employer | Requesting Party |
|------|----------|------------------|
| 28. McKay, Lamar | BP | Halliburton |

McKay's deposition was not required for the preparation of reports of experts for Phase One of the February 27, 2012 trial.

| | | |
|------|----------|------------------|
| 29. Meche, Gregory | MI | Halliburton |

Compliance specialist who Halliburton understands was on the rig at the time of the incident.

| | | |
|------|----------|------------------|
| 30. Moore, Jimmy | Transocean | BP |

Director of Quality, Health, Safety and Environmental Services for Transocean, is the "Designated Person (DP)" under the International Safety Management (ISM) Code. He is the onshore "direct contact between the company between the company and the MODU with access to the highest levels of management." He is in the best position to address at the corporate level the very serious questions relating to the implementation of, and compliance with, the ISM Code in connection with Transocean's operation of the Deepwater Horizon. He was called to testify during several of the MBI hearings, but never appeared before the panel.

| | | |
|------|----------|------------------|
| 31. Morrison, Richard | BP | Anadarko |

VP for Operations in the GOM Strategic Performance Unit with responsibilities for Process Safety.

| | | |
|------|----------|------------------|
| 32. Newman, Steven | Transocean | BP |

Chief Executive Officer of Transocean. He is responsible for the approval and implementation of Transocean's policies and procedures. He participated in Safety Steering Committee meetings, has direct relevant knowledge concerning Transocean's compliance with the International Safety Management (ISM) code, and was directly involved in the creation and approval

| Name | Employer | Requesting Party |
|------|----------|------------------|

of significant documents that govern Transocean's safety and operations, not the least of which is Transocean's Subsea Maintenance Philosophy that bears directly on Transocean's policies concerning the maintenance of Transocean blowout preventers and other subsea equipment necessary for effective well control.

33.  Oldfather, Daniel        Weatherford                BP

Service operator, who testified at MBI hearing.  He was sent to the DWH to install the additional 14 centralizers which were never installed.

34.  Peyton, Dawn        Anadarko                Halliburton

Reservoir analyst who was heavily involved in assessing the Macondo find, the reservoirs, costs and budgets, and was in meetings regarding Anadarko's desire to persuade BP to drill deeper than 18,360'.

35.  Powell, Heather        BP                Transocean

Member of the Macondo engineering regulatory department.  She was responsible for preparing and submitting permit modification requests to MMS and the communication of potential regulatory violations to the BP engineering team.

36.  Prestidge, Jim        Halliburton                BP

VP of health, safety, environment and service quality.  He has information on the practices and standards governing Halliburton's provision of services to customers, including any process safety standards for Halliburton's work.  Halliburton objects that Prestidge's involvement began post-incident.

| | Name | Employer | Requesting Party |
|---|---|---|---|
| 37. | Quibodeaux, John | MI | Halliburton |

Toolhand and mud engineer who Halliburton understands was on the rig at the time of the incident.

| 38. | Rodger, Brad | Transocean | Cameron |
|---|---|---|---|

Witness was involved in inspection, maintenance and repair of Deepwater Horizon BOP.

| 39. | Shaw, Neil | BP | Anadarko |
|---|---|---|---|

The Chief Operations Officer for Development. He reported to Doug Suttles and was directly responsible for the facilities design aspect of Process Safety. Anadarko describes this a "place holder" until it can determine whether "facilities design" includes drilling rig.

| 40. | Silverman, Peter | R&B Falcon | Cameron |
|---|---|---|---|

Contracts Manager who was involved in selection, design and configuration of equipment on Deepwater Horizon BOP.

| 41. | Strife, Stuart | Anadarko | Halliburton |
|---|---|---|---|

VP in charge of reviewing and approving AFE's sent by BP and was involved in meetings regarding cost estimates, budgets, and time expectations relating to the Macondo well.

| 42. | Thompson, Neil | DNV | Cameron |
|---|---|---|---|

Project manager for DNV in connection with the JIT BOP forensic investigation; believed to be the project manger in connection with BP's ongoing testing of the BOP; signed DNV's "Final Report" concerning the BOP and the addendum thereto.

| 43. | Trahan, Buddy | Transocean | BP |
|---|---|---|---|

Division Manager, Assets and was one of two Transocean representatives that were part of

| Name | Employer | Requesting Party |
|------|----------|------------------|

the leadership visit to the rig on the day of the incident. He was scheduled to testify during the MBI hearings but never appeared before the panel. He has significant knowledge of the shore-based management of the Deepwater Horizon, including knowledge of the maintenance, safety, and performance of the Deepwater Horizon.

44.   Turton, Simon            Halliburton           BP, Transocean

Mr. Quirk testified that these individuals contacted him after the incident for additional lab testing on the cement slurry used at Macondo. It is believed that they have information concerning Halliburton's post-incident cement testing and investigation.

45.   Wetherell, Linda        R&B Falcon            Cameron

Witness was involved in selection, design and configuration of equipment on Deepwater Horizon BOP.

46.   Wink, Kevin             R&B Falcon            Cameron

Witness was involved in selection, design and configuration of equipment on Deepwater Horizon BOP.

47.   Young, David            Transocean            BP

Chief mate onboard the Deepwater Horizon and was on duty at the time of the incident. He testified at the MBI hearings, and has significant relevant knowledge concerning both the events on the day of the incident, as well as the maintenance and operation of the Deepwater Horizon. He was also responsible for firefighting duties aboard the Deepwater Horizon, and will likely provide significant, relevant information regarding the onboard firefighting efforts and capabilities.