# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br>*All cases* | * * * * * * | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

### BP'S RESPONSE TO THE PSC'S JUNE 30, 2011 SUBMISSION REGARDING THE ADMISSIBILITY OF THE BOOT & COOTS DRAFT REPORT AUTHORED BY JOHN WRIGHT

The PSC asks this Court to rule that a draft hearsay report by an independent contractor, based on preliminary, incomplete information he learned from others, is admissible as an "admission" by BP under Federal Rule of Evidence 801(d)(2). The report, however, meets none of the requirements of the Rule: Mr. Wright was not granted specific authority to speak on BP's behalf; he was not BP's "agent"; and he submitted his work *after* he was removed from his assignment to the BP Investigation Team. Furthermore, the PSC just ignores and does not even try to provide a basis for admitting the second-level hearsay upon which Wright based his conclusions. But lay witnesses, of course, may not testify based on hearsay or to the sort of opinions in Mr. Wright's draft.[1] Nevertheless, the PSC seeks to admit those opinions without

---

[1] "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

any Daubert proceedings by simply calling them "admissions." The Court should deny the PSC's attempted end-run around the hearsay and expert witness rules and refuse to admit the draft report.

I. **John Wright Was Not Authorized To Speak On BP's Behalf; The Draft Report Is Therefore Not Admissible Under Fed. R. Evid. 801(d)(2)(C).**

In its June 30 letter, the PSC claims that two subsections (C and D) of Fed. R. Evid. 801(d)(2) "establish the admissibility of [Wright's] report." (Letter, 3). Not so. At the threshold, the PSC improperly fails to distinguish between the two subsections and argues them as if they were one. But the two provisions have clearly different requirements; "there is a significant distinction between" the one and the other, and attempts to combine them in arguments for admissibility are inappropriate. *Morris v. State of New York, Department of Correctional Services et al.*, No. 91-CV-634, 1995 WL 155953, at *8 (N.D.N.Y. Apr. 5, 1995); *see Glendale Federal Bank, FSB v. United States*, 39 Fed. Cl. 422, 424 (Fed. Cl. 1997) ("FRE 801(d)(2)(C) and (D) are presented in the disjunctive and "should not be collapsed into one rule."); *Hall v. Wal-Mart Stores, Inc.*, No. 4:05CV00050, 2006 WL 1075015, at *2 (W.D. Va. Apr. 21, 2006) (the two Subsections "cover different forms of admissions.").

Under Rule 801(d)(2)(C), the focus is on the declarant's specifically granted authority to speak: an out-of-court statement may be admitted if a party "authorized" the declarant "to make a statement concerning the subject[.]" *See* Fed. R. Evid. 801(d)(2)(C). "Authorized" in this context has a precise, narrow meaning: that the party gave the declarant "'***authority to speak*** ' on a ***particular subject*** [and] ***on behalf of*** [the party]." *Precision Piping and Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619 (4th Cir. 1991) (emphasis added). "'Merely hiring someone to do some task does not impart authority to speak[.]'" *United States v. Bonds*,

2

No. CR 07-00732 SI, 2009 WL 416445, at *4 (N.D. Cal. Feb. 19, 2009) (quoting Christopher B. Mueller & Laird C. Kirpatrick, *Federal Evidence* § 8:50, 4th ed. 2009).[2]

Thus, the PSC's assertions that BP "hired and paid" for John Wright and he "did exactly what he was employed to do" (Letter, 3) are irrelevant to the questions of whether BP authorized Wright to speak on its behalf and whether any such authority applied to the particular subject of his report. *See Precision Piping*, 951 F.2d at 619. Indeed, as courts have warned, if Rule 801(d)(2)(C) were satisfied by assertions that the statement "relates to the employee[']s specific job responsibilities[]" this would "in effect write out … [Rule] 801(d)(2)(C) and permit exclusion only [under] the requirements of [Rule] 801(d)(2)(D) …." *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 851 n.2 (E.D. Mich., 2010); *see also White Indus. Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1063-64 (D.C. Mo. 1985).

Moreover, the PSC's assertion that "Wright was hired … to write [the report,]" (Letter, 5-6), is supported by nothing more than the report itself. This is insufficient. Under Rule 801(d)(2), courts may consider the contents of the statement, but the contents "are not alone sufficient to establish the declarant's authority under subdivision (C) [or] the agency or

---

[2] The PSC also relies on a five-decades -old case, *Cox v. ESSO Shipping Co.*, 247 F.2d 629, 632 (5th Cir. 1957), for the odd proposition that for an admission, there is no "need to lay a predicate for its [evidentiary] use." (Letter. 3.) Of course, this is incorrect: there is a clear requirement for a predicate to be laid before a statement may be admitted under Rule 801(d)(2)(C) or (D), and a failure to lay this predicate will result in the statement being deemed inadmissible. *See, e.g.*, *United States v. Hendricks*, No. 95-21072, 1997 WL 304169, at *3 (5th Cir. May 15, 1997); *Beaudoin v. Westlake Stryene LP, WPE Corp.*, No. 2:06 CV 0900, 2007 WL 4622779, at *3 n.26 (W.D. La. Dec. 28, 2007); *Sowders v. TIC United Corp.*, Civil Action No. SA-05-CA-309-OG, 2007 WL 3171797, at *2 n.6 (W.D. Tex. Aug. 15, 2007).

This may be part and parcel of a larger problem: each of the three cases that the PSC cites at length in its letter for various evidentiary propositions was penned *well before* the enactment of the Federal Rules of Evidence in 1975: *Cox* was written in 1957 (Letter, 3); *Compagnie De Navigation Fraissinet & Cypriene Fabre, S.A. v. Mondial United Corp.* was written in 1963 (*Id.* at 4); and *Brown & Root, Inc. v. American Home Assurance Co.* was written in 1965 (*Id.*). The PSC's reliance on these outdated cases might account for some of the erroneous positions stated in its letter.

employment relationship and scope thereof under subdivision (D)." Fed. R. Evid. 801(d)(2). Equally important, the authority to speak on the principal's behalf must emanate from the principal, and not the other way around. "Actual authority … is created by a … *principal's* manifestation … that … the agent take action on the principal's behalf." *Restatement (Third) of Agency* § 3.01 (Creation of Actual Authority) (2006) (emphasis added). Accordingly, "proof of authority must be based on the statements and acts of the alleged principal." *United States v. Lawson*, Criminal Action No. 08-21-KSF, 2009 WL 4720325, at *3 (E.D. Ky. Dec. 9, 2009).

Despite the PSC's access to countless volumes of internal BP communications and documentation from the relevant time and despite its questioning of eight witnesses about the report, it has offered *no* proof—beyond Wright's own in-document statement—that BP *ever* authorized Wright to create a report on its behalf concerning its negative pressure testing policies. This is not surprising. The May 15, 2010 retainer agreement between Boots & Coots (with Wright as one of its employees) and BP set out the work that Boots & Coots was to do for the Investigation Team. [Exhibit A]. *Nowhere* in that document—or anywhere else—was a report on the Company's negative testing policies specifically authorized.

The PSC's failure to offer any evidence that BP authorized such a report is fatal to its argument that Wright's work may be admitted under Rule 801(d)(2)(C). Indeed, in similar circumstances where no showing of specific authorization has been made, courts have rejected arguments for admissibility under Rule 801(d)(2)(C) out of hand. *See, e.g.*, *McClain v. National Fire & Marine Insurance Co.*, No. 2:05-CV-00706-LRH-RJJ, 2008 WL 5501105, at *8 (D. Nev. June 23, 2008) (finding a geotechnical report inadmissible under Rule 801(d)(2)(C) for failure to meet "threshold requirement" that the report's author was a person specifically authorized to

4

write a report on the particular subject); *Fry v. Mansfield City School*, No. 1:07-cv-2403, 2008 WL 2225722, at *5 (N.D. Ohio May 27, 2008) (finding conversations between teachers on the subject of "testing irregularities" to be inadmissible under Rule 801(d)(2)(C) for lack of evidence that teachers were authorized by the school board to make such statements); *Maritime Ventures International, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 722 F. Supp. 1032, 1035 (S.D.N.Y. 1989) (refusing to admit testimony under Rule 801(d)(2)(C) for lack of evidence that declarant was "authorized by [the party]" to discuss the specific subject matter).

## II.  John Wright's Report Is Not Admissible Under Fed. R. Evid. 801(d)(2)(D).

The PSC also relies on Rule 801(d)(2)(D), but its position is similarly unsupported by the law and inconsistent with the facts.  Under Rule 801(d)(2)(D), the focus is on the purported agency relationship and its scope and duration.  Thus, a statement otherwise inadmissible as hearsay may be admitted if all three requirements of the Rule are met:  "[1.] [the] statement [was made] by the party's agent or servant[; 2.] concerning a matter within the scope of the agency or employment[; and] [3.] made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D); *see also Travessi v. Saks Fifth Avenue, Inc.*, No. 00 Civ. 8970(FM), 2005 WL 1981705, at *6 (S.D.N.Y. Aug. 15, 2005).  The PSC failed to show that the draft report meets these requirements.

*First*, the PSC asserts that Wright was BP's "agent at all times." (Letter, 3). But when Wright wrote the contested report, by law and in fact, he was operating as an independent contractor, not an agent or employee.

"[I]ndependent contractors are not ordinarily agents" for purposes of Rule 801(d)(2)(D). *United States v. Bonds*, 608 F.2d 495, 505 (9th Cir. 2010).  Therefore, if a declarant is an

independent contractor, generally, his statements *will not* be admissible under Rule 801(d)(2)(D). *See, e.g.*, *Lippay v. Christos*, 996 F.2d 1490, 1499 (3d Cir. 1993) (finding declarant to have "functioned" as an independent contractor and therefore overturning district court authorization of testimony under Rule 801(d)(2)(D)); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 885 (E.D.N.Y. 2004). The Fifth Circuit Court of Appeals has endorsed this reasoning, rejecting the admissibility under Rule 801(d)(2)(D) of a physician's statements and pointing to the likelihood that the declarant was an independent contractor rather than an agent as a basis for the rejection. *See Sanford v. Johns-Manville Sales Corp.*, 923 F.3d 1142, 1149-50 n.18 (5th Cir. 1991).

Uncontested facts show that throughout its relationship with BP, Boots & Coots—Wright's *employer*—operated as an independent contractor, and that this legal status was meant to apply to Wright as an employee of the firm as well. In a May 15, 2010, engagement letter signed by BP and by Wright (on behalf of Boots & Coots), the parties expressly agreed that Wright was an independent contractor:

> *Independent Contractor:* Boots & Coots and any personnel Boots & Coots engages in connection with Boots & Coots' services **shall act as independent contractors for [BP] and the BP Incident Investigation Team**, rather than as employees of BP or the BP Incident Investigation Team. [Exhibit A] (emphasis added).

Thus, Boots & Coots was not BP's agent, and even if it was, its employee, John Wright, "cannot be an agent of the principal entity unless [a] legal construct establishes such a relationship." *See United States v. Langston*, 590 F.3d 1226, 1233 (11th Cir. 2009). Here, the May 15 agreement establishes that there was no such relationship.

Wright's actions in creating the report bear out his status as an independent contractor rather than an agent. By the time Wright drafted his report, his assignment to the Incident Investigation Team had ended; BP had asked him to work on a fully separate project, preparing relief wells and other well control efforts in the Gulf of Mexico. Corser Dep. Tr. 257:20-259:17 [Exhibit C]. Wright nevertheless continued to draft his report, acting outside the bounds of BP's superseding instructions. Such unilateral action is a quintessential indicator of a lack of agency status. *See Griffin Whitaker, LLC v. Torres*, Civil Action No. DKC 10-0725, 2010 WL 2696704, at *4 (D. Md. July 7, 2010).

***Second***, under Rule 801(d)(2)(D), the statement must be made "*during* the existence of the [agency] relationship." Fed. R. Evid. 801(d)(2)(D) (emphasis added). A lack of alignment between the timing of the statement and the timing of the relationship will be fatal to any admissibility argument under Rule 801(d)(2)(D). *See, e.g., United States v. Pena*, 527 F.2d 1356, 1361 (5th Cir. 1976) (even if informant had the "power to make admissions on the government's behalf, the statements … were made at a time when his relationship with the government had ceased" and were inadmissible)*; Lizotte v. Praxair, Inc.*, 640 F. Supp. 2d 1335, 1339 (W.D. Wash. 2009); *Turner v. Pro-Solutions for Chiropractic, Inc.*, Civil Action No. 07-1269, 2009 WL 1683287, at *6 (W.D. Pa. June 15, 2009); *Blue Mountain Environmental Management Corp. v. Chico Enterprises, Inc.*, Civil Action No. 01-460, 2006 WL 3227784, at *1 (W.D. Pa. Nov. 2, 2006).

Here again, the facts show that, by the time Wright got around to actually generating his report, he had already been "moved over" from the investigation work to the live well control efforts. Corser Dep. Tr. 257:20-259:17 [Exhibit C]. In other words, even if, contrary to fact,

7

there was an agency relationship for the purpose of investigating the *Deepwater Horizon* accident, by the time Wright wrote his report, any such agency relationship had ceased to exist. Corser's deposition testimony—taken well before this evidentiary dispute was underway—establishes this sequence of events and is particularly probative, since Wright himself asserted that it was Corser who had asked him to do the investigative work. [Exhibit B].

Thus, this failure of alignment between the time span of Wright's purported agency and the timing of the report stands as a separate and independent ground prohibiting the report's admissibility under Rule 801(d)(2)(D).

### III. Wright Lacks Personal Knowledge of the Matters in His Report and the Report Is Hearsay Within Hearsay.

Wright's declaration contains two levels of hearsay: the report is (i) Wright's out-of-court statement used to prove the truth of the matters asserted and is (ii) based on out-of-court statements by others. Under Rule 805, such hearsay within hearsay is excluded unless "each part of the combined statements conforms with an exception to the hearsay rule." Fed. R. Evid. 805. According to Wright's declaration, ***he was "not a fact witness to anything that happened before the explosion on the rig. [Wright] had no involvement with the well or rig until after the explosion had [occurred].***" [Exhibit B, at "Exhibit 'B'"] (emphasis added). Furthermore, according to Wright, "[t]he report contains [his] findings and conclusions and is a product of [his] education, training, and experience." *Id.* He has no personal knowledge of the events that are the subject of the report and hence his conclusions are based on what others told him. *See Incident Investigation of Well MC252#1 Review of 9-7/8" x 7" Casing Negative Test* ("I emphasize that these findings are based on my knowledge of the incident provided to me as part of the investigation time up to the date of this writing.") [Exhibit G].

Under the law, the PSC had the burden of establishing that the second-level hearsay was independently admissible. *Watts v. Kroger Co.*, 955 F. Supp. 674, 679 (N.D. Miss. 1997) (citing *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983). The PSC did not even *attempt* to do so and the report is therefore inadmissible. *See, e.g., United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) (rejecting double hearsay); *Ryals v. American Airlines, Inc.,* Civil Action No. 4:08-CV-460-Y, 2010 WL 3582605, at *11 (N.D. Tex. Sept. 13, 2010) (same)*; Johnson v. Saks Fifth Avenue Texas, LP,* Civil Action No. H-05-1237, 2007 WL 781946, at *11-13 (S.D. Tex. Mar. 9, 2007) (same).[3]

### IV.   Wright's Report Is Inaccurate, Irrelevant, Will Cause Delay and Waste the Court's Time.

"There can be little question but that allocation of scarce court time among various litigants is an important component of the administration of justice." Fed. Prac. & Proc § 5219, 22 Fed. Prac. & Proc. Evid. § 5219 (1st ed.); 1 Handbook of Fed. Evid. § 403:1 (6th ed.) ("In recognition of the legitimate concern of the court with expenditures of time, Rule 403 provides for exclusion of evidence where its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence."); *Savarese v. Pearl River Nav., Inc.*, CIV.A. 09-129, 2010 WL 3070376 at 2 n. 12 (E.D. La. Aug. 2, 2010) ("Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power...."); *United States v. Bouye,* 688 F.2d 471, 476

---

[3] The fact that a witness might be an expert does not justify admitting his multi-level hearsay report. Just the opposite; such reports generally are not admitted into evidence. *See Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 323 (10th Cir. 1989) (exclusion of medical expert's testimony of conversations with other physicians regarding cases which supported his opinion); *Bryan v. John Bean Div. of FMC Corp*., 566 F.2d 541, 544-47 (5th Cir. 1978) (excluded hearsay evidence in the form of opinions of non-testifying experts contained in two reports used by testifying expert in reaching his conclusion).

(7th Cir. 1982) (affirming exclusion of evidence as a waste of time); *Harpring v. Cont'l Oil Co.*, 628 F.2d 406, 410 (5th Cir. 1980) (same).

  The report has little probative value.  It was no more than a draft, based on incomplete information obtained very early in the investigation.  *See* Corser Dep. Tr. 97:8-15, 100:5-11 [Exhibit D].  Yet the PSC has already used the report in eight depositions—each time quoting at length from the report and unfairly attempting to get testimony about the report from BP witnesses through repeated questioning that continued long after the witness denied knowledge.  *See*, *e.g.*, Guillot Dep. Tr. 123:7-132:22 [Exhibit E]; DeFranco Dep. Tr. 118:3-128:1 [Exhibit F].  This conduct no doubt presages the PSC's intended tactics at trial.  Such unproductive and sharp use of the report further and independently supports this Court's denial of the document's admission.

## CONCLUSION

  For the foregoing reasons, BP respectfully asks the Court to rule that Wright's May 15, 2010 draft report is inadmissible.

Date: July 14, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

***Attorneys for BP Exploration & Production Inc. and BP America Production Company***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of July, 2011.

/s/ Don K. Haycraft  
Don K. Haycraft