UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| Applies to: B2 Master Complaint | * | JUDGE BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### ORDER AND REASONS

### [As to B2 Master Complaint]

Within MDL 2179, the Court consolidated and organized the relevant claims into "pleading bundles." The B2 pleading bundle includes claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1961-68.

The Plaintiffs' Steering Committee ("PSC") filed a RICO Case Statement (Rec. Doc. 1059) and an Amended RICO Case Statement (Rec. Doc. 1814). Before the Court are the **Motion to Dismiss (Rec. Doc. 1437)** filed by Defendants BP Exploration, BP America, and BP p.l.c. (collectively "BP"), Plaintiffs' **Opposition (Rec. Doc. 1788)**, and BP's **Reply in Support (Rec. Doc. 2123)**. The United States has also filed two statements of interest (Rec. Docs. 1779 and 1797).[1]

### BACKGROUND FACTS AND PROCEDURAL HISTORY

---

[1] In its Statements of Interests, the United States urges the Court to reject BP's argument that false statements to obtain regulatory permits and approvals to drill for oil from a federal lease do not amount to claims for property. The Court does not rest its holding on this particular argument presented by BP.

1

Plaintiffs' Complaint alleges that BP committed unlawful conduct in violation of 18 U.S.C. § 1962(c) and § 1962(d).[2] According to the Complaint, BP allegedly defrauded government regulators in connection with the safety of its drilling operations, its ability to respond to any oil spill, and its response to the spill at the Macondo Well. Plaintiffs allege that BP's "racketeering activity" consisted of predicate acts, including mail and wire fraud, which are listed in 18 U.S.C. § 1961(1).

The named Plaintiffs in this consolidated Complaint originally brought separate RICO complaints. They claim injuries as follows:

- Plaintiff Robert Rinke, owner of a penthouse in Pensacola Beach, alleges that as a result of

---

[2]18 U.S.C. § 1962 provides that:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer. . . .

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

the oil spill, he has suffered loss and diminution of value of his property.

- Plaintiff Armand's Bistro, LLC, a former seafood restaurant inside a Laplace, Louisiana Holiday Inn, alleges that as a result of the spill, it could not obtain seafood and had to close operations.

- Plaintiffs Roland and Barbara Hingle, commercial shrimpers from Buras, Louisiana, allege that they lost property and earnings from the spill.

- Plaintiff Alan Sheen, M.D., a Louisiana resident who owns a condo in Navarre Beach, Florida, alleges that he lost rental income as a result of the spill.

- Plaintiff Mid South Seafood, Inc., a Mississippi seafood business, alleges that it lost earnings and business as a result of the spill.

Plaintiffs also seek to certify a class of plaintiffs including "[a]ll individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting spill."

## PARTIES' ARGUMENTS

BP moves to dismiss Plaintiffs' Complaint on seven grounds: (1) the RICO claims fail for lack of proximate causation; (2) the RICO claims fail for lack of racketeering activity; (3) the RICO claims fail for lack of participation in an enterprise; (4) the RICO claims fail for lack of a pattern; (5) the RICO claims fail for lack of injury; (6) the RICO claims fail for lack of a conspiracy; and (7) the Florida RICO claims likewise fail.

With respect to its first argument, BP contends that the Complaint fails to satisfy RICO's proximate-causation requirement. Specifically, BP argues that the Complaint alleges that BP

defrauded federal and state regulators, not that BP defrauded the Plaintiffs. According to BP, Plaintiffs' theory depends on "speculative assumptions" to demonstrate a causal connection between the fraud and the resulting injuries from the spill. Because the causal chain is dependent on the actions of a third party, namely MMS[3], it is therefore too speculative and attenuated as a matter of law to establish RICO proximate causation. BP argues the cause of the Plaintiffs' asserted injuries are entirely distinct from the alleged RICO violation. Therefore, it was the government, not the Plaintiffs, that was the "direct victim" of BP's alleged fraud.

In their opposition, Plaintiffs argue that the facts presented in the Complaint satisfy the proximate cause requirement. Specifically, the injuries suffered by the Plaintiffs were direct, foreseeable, and proximately caused by BP's alleged pattern of racketeering. If the safety efforts and containment ability of BP were as represented, then the injuries to the Plaintiffs would have been prevented or mitigated. Plaintiffs reject BP's argument that first-person reliance is necessary for proximate cause, relying on Bridge v. Phoenix, 553 U.S. 639 (2008).

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A court "must . . . accept

---

[3] Minerals Management Services ("MMS") was a government agency responsible for managing natural gas, oil, and other mineral resources on the Outer Continental Shelf. MMS no longer exits–the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") has assumed all responsibilities of MMS.

all factual allegations in the complaint as true" and "must draw all reasonable inferences in the plaintiff's favor." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009). The Court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949-50.

Plaintiffs allege that the oil spill, and their resulting injuries, occurred because BP defrauded government regulators in connection with the safety of its drilling operations, its ability to respond to any oil spill, and its response to the spill at the Macondo Well. BP challenges Plaintiffs' RICO claim on the grounds that Plaintiffs have not sufficiently alleged proximate causation. After reviewing the parties' memoranda and applicable case law, the Court agrees with BP that Plaintiffs have alleged a causal connection between BP's alleged fraud and Plaintiffs' injuries that is too attenuated to state a RICO violation.

The statutory provision governing civil RICO actions provides:

Any person injured in his business or property **by reason of** a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).

In Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), the Supreme Court announced that proximate cause was the standard governing civil RICO actions, explaining that "some direct relation between the injury asserted and the injurious conduct alleged" was required. Id. at 269. In Holmes, the Securities Investor Protection Corporation ("SIPA") filed a RICO claim

5

against parties who had allegedly "conspired in a stock-manipulation scheme that disabled two broker-dealers from meeting obligations to customers, thus triggering SIPC's statutory duty to advance funds to reimburse the customers." Id. at 261. In finding that SIPA had failed to state a RICO claim, the Court explained that "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." Id. at 271.

Applying Holmes, the Supreme Court later reiterated that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). There, Ideal Steel Supply Corporation alleged that Anza defrauded the New York tax authority and "used the proceeds from the fraud to offer lower prices designed to attract more customers." Id. at 457-58. Again, the Court found that the plaintiffs failed to state a civil RICO claim on proximate causation grounds, explaining that "[t]he cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the state)." Id. at 458.

Plaintiffs in the instant case have not sufficiently alleged proximate causation as required by Holmes and Anza. Like the plaintiffs in Holmes, Plaintiffs urge the Court to accept a link between BP's alleged defrauding of regulators and the economic harms suffered by Plaintiffs that is "too remote." 503 U.S. at 271. BP points out that Plaintiffs' theory of causation "depends on a series of speculative assumptions to link the alleged fraud with the spill." (Opposition at 12.) Specifically, BP explains that Plaintiffs' theory depends on the following assumptions:

- If MMS had known the truth about BP's safety practices and capacity to respond to a spill, then MMS would have concluded that these were

6

>> insufficient to meet regulatory standards;
> - If MMS had concluded that BP's safety practices and capacity to respond to a spill were insufficient to meet regulatory standards, then MMS would have required BP to adopt alternative practices;
> - If MMS had required BP to adopt alternative practices, those practices would have prevented the blowout or lessened the impact of the spill.

(Id.) The Court agrees with BP. In order for Plaintiffs to prevail on their theory of causation, they must rely on this particular domino effect stemming from BP's alleged fraud. In Holmes, the Supreme Court found that "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." 503 U.S. at 271. Similarly, here, Plaintiffs' harm is "purely contingent" on MMS potentially requiring BP to conduct different practices and those practices preventing or lessening the effects of the spill. Likewise, Plaintiffs' claims suffer from the same defect as the plaintiffs' claim in Anza. The cause of Plaintiffs' harm rests on inactions (MMS's failure to demand that BP comply with regulations and BP's subsequent alleged failure to maintain better safety practices) that are "entirely distinct from the alleged RICO violation" (defrauding government regulators). 547 U.S. at 458.

Furthermore, in Anza, the Supreme Court noted that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." Id. at 460. There, the Supreme Court concluded that the real victim of the alleged fraud was the State of New York, who could seek redress and pursue the violators itself. "There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." Id. Analogously, as BP correctly points out, the United States has already filed suit against BP in this MDL and is capable of redressing any alleged fraud committed upon its regulators.

Plaintiffs argue unpersuasively that Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639

7

(2008) demands that this Court reach the opposite conclusion. At issue in <u>Bridge</u> were competing bidders at a county tax-lien auction, with prospective buyers stating their bids "as percentage penalties the property owner must pay the winning bidder in order to clear the lien." <u>Id.</u> at 642. The "county's solution" for cases in which multiple bidders placed bids of 0% was to "allocate parcels 'on a rotational basis' in order to ensure that liens are apportioned fairly among 0% bidders." <u>Id.</u> at 643. To prevent bidders from exploiting the system in tie scenarios by partnering with others to obtain a "disproportionate share of liens," "the county adopted the 'Single, Simultaneous Bidder Rule,' which requires each 'tax buying entity' to submit bids in its own name . . . ." <u>Id.</u> (internal citations omitted). In <u>Bridge</u>, regular participants in county auction sales brought RICO claims against parties whom they alleged to have violated the Single, Simultaneous Bidder Rule, depriving the plaintiffs of their fair share of liens.

The Supreme Court held that the <u>Bridge</u> plaintiffs had stated a valid RICO claim, properly alleging that their injuries were proximately caused by defendants' fraud. The instant Plaintiffs attempt to use the <u>Bridge</u> holding to support their own claims, insisting that "first-party reliance is not required" for RICO claims. <u>Id.</u> at 642. Plaintiffs, of course, are correct in explaining the holding of <u>Bridge</u>, but they miss the larger point. A direct relationship between the fraud and the injury is still required. Plaintiffs' failure to allege a direct relationship between BP's alleged defrauding of government regulators and their economic injuries is the fatal flaw in their RICO claims–not failure to allege first-party reliance.

The Supreme Court in <u>Bridge</u> elaborated on this very point:

> Respondents' [original plaintiffs] alleged injury–the loss of valuable liens–is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens. And here, unlike in <u>Holmes</u> and <u>Anza</u>, there are no independent

> factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations.

Id. at 658. The Plaintiffs' allegations in this case are a far cry from the Bridge plaintiffs' allegations. Unlike in Bridge, the instant Plaintiffs are not the only parties injured by BP's alleged fraud. Rather, the government regulators were the direct victims. Another dissimilar element of Plaintiffs' case is that the government is a more-immediate victim capable of pursuing the alleged misconduct. In addition, there are other independent factors that may account for the Plaintiffs' injury. BP's alleged fraud is hardly the sole cause from which the oil spill stemmed. And, the most important difference is that in Bridge, the injury was a direct result of the alleged fraud. Here, that is simply not the case.

The Supreme Court decision in Hemi Group, LLC v. City of New York, 130 S. Ct. 983 (2010), reinforces and adds further support to this Court's conclusion. In Hemi Group, LLC, the Supreme Court had the opportunity to evaluate a civil RICO claim for proximate causation under Holmes, Anza, and Bridge, and determined that the plaintiff had failed to allege proximate causation. The original plaintiff in Hemi Group, LLC was the City of New York, who claimed that a vendor of online cigarettes had injured the City by failing to report cigarette sales to the State of New York as required by federal law. According to the City, therefore, the State was unable to provide the City with information to identify residents who were evading taxes on cigarettes.

The Supreme Court held that the City had failed to allege proximate cause and emphasized that the City's theory of causation required the Court to assume that multiple steps between the fraud and the injury had occurred. The Court explained, "[b]ut as we reiterated in Holmes, '[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step. Our cases

9

confirm that the 'general tendency' applies with full force to proximate cause inquires under RICO. Because the City's theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement." 130 S. Ct. at 989 (internal citations omitted). The Supreme Court proceeded to contrast the Hemi Group, LLC case (in which "[t]he City's theory of liability rests on the independent actions of third and even fourth parties") from Bridge ("where there were no independent factors that account[ed] for [the plaintiff's] injury"). Id. at 992 (internal citations omitted). Just as in Hemi Group, LLC, the instant Plaintiffs ask the Court to assume multiple steps occurring between BP's alleged fraud and Plaintiffs' injuries–namely that MMS would have mandated BP to take certain safety precautions and that those precautions would have prevented or lessened the effect of the spill. And, just as in Hemi Group, LLC, this theory of causation is insufficient to allege proximate causation under RICO. Accordingly, Plaintiffs' RICO claims must be dismissed.

Because the Court finds that Plaintiffs have failed to allege proximate causation, it need not address BP's alternative arguments in support of its Motion to Dismiss. Accordingly,

**IT IS ORDERED** that **BP's Motion to Dismiss (Rec. Doc. 1437)** is hereby **GRANTED** and Plaintiffs' RICO claims are dismissed.

New Orleans, Louisiana this 15th day of July, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT