THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" In the GULF OF MEXICO, On April 20, 2010 | * * * * * * | MDL NO.: 2179 |
| | * | SECTION J |
| This document relates to: | * * | |
| 10-3895, 10-3896, 10-3897, 10-4168 10-4169, 11-58, and All Cases in Pleading Bundle B4 | * * * * | JUDGE CARL L. BARBIER |
| | * | MAGISTRATE SHUSHAN |

*****************************************************************************

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

NOW COME Claimants E.S. & A., Inc. d/b/a Daiquiris Paradise, 208 Bourbon, L.L.C. d/b/a/ La-Bayou, 307 Chartres, L.L.C. d/b/a Fleur-de-Lis, 407 Bourbon, L.L.C. d/b/a Big Easy of Bourbon, 409 Decatur, L.L.C. d/b/a Big Easy of Conti, 426 Bourbon, L.L.C. d/b/a Pier 424, Canal Management Group, Inc. d/b/a Big Easy of Canal, Pierre Maspero's L.L.C. d/b/a Original Pierre Maspero's, 441 Royal, L.L.C. d/b/a Royal House, 501-A Bourbon, L.L.C. d/b/a Big Easy of St. Louis, 501-B Bourbon, L.L.C. d/b/a Cajun Cabin, 541 Decatur, L.L.C. d/b/a Riverfront Restaurant, Chartres House, L.L.C. d/b/a Chartres House Café, 617 Decatur, L.L.C d/b/a Big Easy of Wilkinson, Trattoria Paesano, Inc. d/b/a Daiquiri Paradise Island and 5131 Lapalco, L.L.C. d/b/a Boudreaux's Roadhouse, through undersigned counsel, who respectfully request that this Honorable Court deny Defendants' Motion to Dismiss pursuant to Rule 12(B)(6) and (C) for the reasons as more fully stated herein.

## I. INTRODUCTION

The "Emergency Responder Defendants" are before the Court because they negligently, without forethought, and in violation of clear and explicit proper maritime firefighting procedures, sunk the Deepwater Horizon rig. In so doing, they transformed a potentially serious oil spill into one of epic and historic proportions. The Deepwater Horizon did not sink minutes – or even hours – after Defendants began inundating the rig with water. Instead, it was only after *days* of spraying thousands of tons of water of the rig that the Deepwater Horizon ultimately gave way and sunk. This occurred long after any emergency response or rescue mission had ended. When the Deepwater Horizon sunk, the actions of Defendants are best characterized as a salvage mission and not a rescue mission.

Additionally, these Defendants, at the time of the sinking of the Deepwater Horizon, had been hired to address the fire on the rig. The assertion that at the time of the sinking these Defendants were doing anything other than firefighting is belied by the facts.

## II. FACTUAL BACKGROUND.

The Claimants in this pleading – in an effort not to inundate this honorable Court with unnecessary paperwork in an already voluminous record – adopt, as if copied herein, the factual background as set forth by the other plaintiffs in these actions, with respect to the timeline relevant to this currently-pending motion.

In addition, these Claimants would state that the Emergency Responders are ***incorrect*** that all Claimants have filed claims in the Transocean limitation action; it is the understanding of the undersigned that these Claimants have *not* done so. As a result, granting the motion in this case would, in fact, mean that these Claimants would be without a remedy in this matter.

2

### III. LAW AND ARGUMENT

The Claimants hereby adopt by reference, as if copied herein, the arguments and citations made by the other plaintiffs/claimants in this action. For those reasons, as well as those set forth generally below, the motion to dismiss must be denied.

### A. Plaintiffs' Complaints Meet the Rule 12(B)(6) Standards.

When ruling on a Rule 12(B)(6) motion to dismiss such as that filed by Defendants herein, the court must accept as true all well-pleaded allegations and resolve all doubts in favor of the plaintiffs. *Oppenheimer v. Prudential Security, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lorman v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). In other words, a motion to dismiss an action for failure to state a claim, "admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts." *Tel-Phonic Services, Inc., v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

Rule 12 motions to dismiss "'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Master Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). In ruling on a Rule 12(b)(6) Motion to Dismiss, courts are obliged to "accept all factual allegations in the complaint as true." *Id.* (internal citations omitted). The Plaintiff must only plead sufficient factual allegations that, if true, "raise a right to relief above the speculative level." *Id.* (internal quotations omitted).

To defeat a motion to dismiss, a plaintiff must merely plead enough facts to state a claim to relief that is plausible on its face. "A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Wright v. Shell Offshore, Inc.*, No. 10-2108, 2011 U.S. Dist. LEXIS 16290, at 5-6 (E.D. La. Feb. 17, 2011).

Recently, in *Matrixx Intuitives, Inc., v. Siracusano*, 131 S. Ct. 1309 (2011), the United States Supreme Court affirmed that there are no bright line pleading requirements and that the functional test is whether the complaint, taken as a whole, raises a reasonable expectation that discovery will reveal evidence that could enable the ultimate trier of fact, weighing contested evidence and opinion and making the allowable inferences, to decide the case for plaintiffs. 1324-1325. The court in *Matrixx* recognized that the ultimate proof of liability as to such elements as materiality and causation require considerations, often complex and nuance, of source, content, and context that go beyond what can or should be required in a pleading. *Id.* Reviewing Plaintiffs' Complaint in its entirety as is required, Plaintiffs' have stated facially plausible claims that raise a reasonable expectation that discovery may reveal evidence to support their claims at trial. The motion to dismiss should be denied.

### B. Plaintiffs' Foreseeability Argument Must Fail.

The Defendants cite *In re Great Lakes*, 624 F.2d 201 (2010) as the most recent example of the Fifth Circuit's application of the *Consolidated Aluminum* foreseeability test, but *In re Signal International, LLC*, 579 F.3d 478, 493 (5th Cir. 2009) applies the test in a factual scenario more analogous to this case. In *Signal*, two barges owned by a Pascagoula, MS marine fabricator broke from their moorings during Hurricane Katrina and the storm surge floated the barges inland a distance of almost five miles where they eventually allided with a bridge on Interstate 10. Signal knew that Katrina was bearing down on the Mississippi Gulf Coast but failed to properly moor the barges under those conditions, despite the fact that Signal's own procedure called for specific moorings when a hurricane was imminent. The Fifth Circuit found the damage

4

to the bridge foreseeable because the barges were moored shortly before Katrina made landfall and a reasonable person could foresee both that an insufficiently moored barge would break from its moorings during a hurricane and that the barge would travel in an uncontrolled manner and allide with objects in its path. The court held that foreseeability was a test of "whether the harm that does occur is within the *scope of danger* created by the defendant's negligent conduct." *Id.* at 492. Foresseability is not based on ordinary conditions, but rather all those that "were anticipated or reasonably should have been anticipated. *Id.* at 493.

Furthermore, for a duty to exist, defendants need foresee only *general* harm, not the particular harm that resulted. *In re Signal Int'l, LLC*, 579 F.3d 478, 493 (5th Cir. 2009) (holding "[w]e find no principled reason to break with our precedent that guides our determination of duty by reference to the general sorts of harms that are reasonably foreseeable consequences of the scope of danger risked by the negligence involved." Even where the risk of harm is small, it can still be foreseeable. *Id.* (citing *In re City of New York*, 522 F.3d 279, 284 (2d Cir. 2008) ("The probability that the injury would occur in this case ... is very small. But the risk, while small, is undoubtedly foreseeable."). Indeed, the exact nature and geography of the particular injury need not be foreseeable. All that is required is that it is foreseeable that the type of injury could occur and impact the class of people ultimately harmed by the injury. *Id.* at 492. "Under a negligence theory an actor is held accountable only on the basis of the knowledge he could, or should, have had at the time he acted; negligence is measured from the actor's perspective and the then foreseeable future." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1084 (5th Cir. 1986).

Here, the responders had, or should have had, the basic knowledge of any maritime responder concerning the risks of continually pumping large amounts of water on a semi-

5

submersible oil rig for thirty-six hours: namely, that such actions could cause the rig to sink and that its uncapped riser pipe could leak a *tremendous* amount of oil into the Gulf.

At some point, the Defendants had to (or *should have* had to) reassess their actions. The longer the Responder Defendants sprayed water on this oil fire on a semi-submersible rig, the more foreseeable it was that the rig would sink. A semi-submersible rig cannot maintain buoyancy, and will sink, if it fills up with water. At some point, perhaps after several hours, the Responder Defendants should have made an assessment of the situation in front of them. Even if putting water on an oil fire was the correct way to suppress the fire for a rescue attempt (which it is not), after more than a day and a half had passed, defendants were no longer in a rescue phase, but rather were engaged in a an attempt (using improper methods) to salvage the property of other defendants.

The fact of the matter is, through all of the evidence that is currently available, the April 20th explosion on the Deepwater Horizon did not damage the structures stability such that it was in any danger of sinking. It was only after over a day of constant inundation with water that the structure began to list. Even after this listing, Defendants continued pouring thousands and thousands of gallons of water onto the structure resulting in the Deepwater Horizon's sinking on the morning of April 22nd. After being sprayed with water for nearly 48 hours. This well-pleaded argument should be developed more thoroughly through formal discovery; but even now is sufficient to defeat the motion to dismiss.

### C. The OPA Does Not Preempt Plaintiffs' Maritime and State Law Claims.

The Claimants hereby adopt the arguments and citations of the other plaintiffs with respect to the OPA defenses asserted in this matter. These Claimants would add only that it does appear that the movers want the benefit of the OPA when it suits their interests, and to claim

inapplicability at other points. Claimants argue that the OPA does not preempt the claims asserted against these Defendants.

### D. Plaintiffs' Economic Loss Claims Are Not Barred.

*Robin's Dry-dock and Repair Company v. Flint*, 275 U.S. 303 (1927) is typically interpreted to stand for the proposition that no duty is owed under general maritime law to a plaintiff that suffers only economic loss as a result of the alleged wrongful act, absent personal injury or damage to physical property in which the plaintiff has some proprietary interest. With respect to OPA claims, it is clear and cannot reasonably be argued otherwise that the limitation from *Robin's Dry-dock* does not apply.

Claimants hereby adopt the arguments and citations advanced by the other plaintiffs in this action. Claimants would, however, echo the notion that laws enacted after the *TESTABANK* decision, and subsequent legislation (as well as jurisprudence) did away with the limitations Defendants seek to enforce in this action through their motion to dismiss. As it relates to this matter, Congress, under OPA, has chosen to provide a measure of damages in the event of an oil spill which includes recovery for economic loss even in the absence of physical damage to a proprietary interest of the claimant. Congress has likewise expressly provided for the recovery under CERCLA against the owner or operator of a vessel even in, "the absence of any physical damage to the proprietary interest of the claimant." 42 U.S.C. §9607(h).

The *Robin's Dry-dock* decision essentially represented a policy determination made in 1927 where damages, although foreseeable, were not recoverable having been deemed by the court as too remote. However, Congress, more recently, has chosen to explicitly and expressly move away from that general maritime law principle, and to allow recovery absent any physical damage to a proprietary interest of the claimant. The Defendants' motion must be denied.

7

## IV.     CONCLUSION.

The motion to dismiss must, at this point, be denied.  Plaintiffs have set forth numerous well-pleaded theories upon which recovery may be had in this action, and deserve the opportunity to develop those theories through discovery.  Taking all well-pleaded facts as true, as this Court must, the reasons above (as well as those advanced by the other Plaintiffs) dictate that the motion to dismiss cannot be granted.

Respectfully submitted,

/s/ Alexander R. Saunders
RAYMOND A. PELLETERI, JR. #10391
ALEXANDER R. SAUNDERS #28753
Pelleteri & Wiedorn, L.L.C.
636 Carondelet Street
New Orleans, LA 70130
Telephone:(504) 523-2650
Facsimile: (504) 523-2141
asaunders@pwclawfirm.com

ATTORNEY FOR CLAIMANTS,
**E.S. & A., Inc. d/b/a Daiquiris Paradise**
**208 Bourbon, L.L.C. d/b/a/ La-Bayou**
**307 Chartres, L.L.C. d/b/a Fleur-de-Lis**
**407 Bourbon, L.L.C. d/b/a Big Easy of Bourbon**
**409 Decatur, L.L.C. d/b/a Big Easy of Conti**
**426 Bourbon, L.L.C. d/b/a Pier 424**
**Canal Management Group, Inc.d/b/a**
	**Big Easy of Canal**
**Pierre Maspero's L.L.C. d/b/a**
	**Original Pierre Maspero's**
**441 Royal, L.L.C. d/b/a Royal House**
**501-A Bourbon, L.L.C. d/b/a Big Easy of**
	**St. Louis**
**501-B Bourbon, L.L.C. d/b/a Cajun Cabin**
**541Decatur, L.L.C. d/b/a Riverfront Restaurant**
**Chartres House, L.L.C. d/b/a**
	**Chartres House Café**
**617 Decatur, L.L.C d/b/a Big Easy of Wilkinson**
**Trattoria Paesano, Inc. d/b/a**
	**Daiquiri Paradise Island**
**5131 Lapalco, L.L.C. d/b/a**
	**Boudreaux's Roadhouse**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically filing with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 15th day of July, 2011.

/s/ Alexander R. Saunders
ALEXANDER R. SAUNDERS