

U.S. Department of Justice

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0180*
*Sarah.Himmelhoch@usdoj.gov*

**BY ELECTRONIC MAIL**               July 15, 2011

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179: Request for Discovery from Federal Employees in the Executive Office of the President

Dear Judge Shushan:

      I write on behalf of the United States in response to Defendant BP's July 7, 2011 letter ("July 7 Letter") concerning document discovery from employees working in the Executive Office of the President ("EOP") at the time of the *Deepwater Horizon* blowout and immediately thereafter.

      In recognition of the difficulties inherent in discovery for a case of this size, the United States has actively worked to accommodate Defendants' discovery requests. Though valid objections were available, the United States has agreed to produce documents of high ranking officials such as Secretary Stephen Chu, Secretary Kenneth Salazar, Secretary Jane Lubchenco, and Administrator Lisa Jackson. It has committed to search the files of more custodians than any other party, at great expense to taxpayers. As part of its response, it is in the process of collecting all non-privileged communications between agencies and the EOP related to this matter from several agencies, including the Department of the Navy, the Army Corps of Engineers, the Environmental Protection Agency, the Department of the Interior, the Coast Guard, the National Oceanic and Atmospheric Administration, and the Department of Energy. Overall, the United States has been hesitant to draw lines in the sand over discovery requests due to the importance of this case.

With that in mind, and in the spirit of practicality, the United States is simultaneously offering BP the following compromise in response to its request for production of documents from the four custodians in the EOP:

> The United States would consent to a limited search of the emails of Drs. Miller and Moran in return for an agreement not to seek any further discovery of any other custodians or information directly from the Executive Office of the President. The specific search terms are identified below, but the general proposition is that the United States would search emails dated between April 20, 2010 and September 19, 2010 in the email box of these two custodians. The United States would search Dr. Miller for information related to quantification efforts and the emails of Dr. Moran for information related to source control efforts, a reflection of their respective roles in the response activities.

Email, Himmelhoch to Gassaway (July 15, 2011) (Appendix A). Because, however, BP requested that the United States respond to its letter to the Court on or before July 15, 2011, the United States submits this response in the event that BP is unwilling to accept the United States' offer.

If the parties are unable to reach agreement, the Court should not, however, *order* the United States to conduct any discovery of the Executive Office of the President, and especially not any discovery of Ms. Browner, the former Assistant to the President for Energy and Climate Change, or Heather Zichal, the Deputy Assistant to the President for Energy and Climate Change. BP's demand for a broad ranging search of these four EOP employees' email accounts, would require the United States to run a series of searches using terms designed to respond to numerous requests for production. *See* United States' Search Terms (Appendix B). This list of search terms is broad. For example, BP's proposed search of EOP employee emails would collect almost all, if not all, internal White House emails mentioning the Macondo well or BP or any other major defendant in the MDL. After months of cooperation and accommodation, the United States cannot entertain this request: it is a bridge too far.

The United States respectfully asks the Court to allow the United States to decline to order searches of the files of EOP custodians, especially Ms. Browner and Ms. Zichal, for three reasons. First, though largely unaddressed by BP's July 7 Letter, much of the information BP seeks will be produced as a result of searches the United States has already agreed to conduct. Second, BP mischaracterizes relevant case law and cites irrelevant authority in support of its position that broad access to the email of presidential advisors is owed to them under the Federal Rules of Civil Procedure. Finally, the importance of protecting candid communications among the President's advisors warrants limiting BP's discovery.

**1.    The United States has already agreed to give BP the information it seeks.**

The United States has already agreed to search for and produce non-privileged communications between the agencies and departments involved in the Source Control and Quantification aspects of response and the EOP using agreed upon search terms. To the greatest

extent practicable, the United States will complete production of those communications on or before August 31, 2011. These communications are sufficient to answer BP's inquiry as presented in its July 7 Letter.

BP seeks "discovery of documents needed to understand the government's own oil flow rate and oil spill volume estimates…." July 7 Letter at 5. The United States is already committed to producing all of the non-privileged information considered by the individuals at the agencies and departments involved in developing the published flow rate estimates. Accordingly, the additional discovery BP seeks is not necessary to "understand the government's own flow rate and oil spill volume estimates."

BP implies that it must have the additional discovery of the four EOP custodians – two White House and two Office of Science and Technology Policy (OSTP) custodians – because it is entitled to discover whether there was some political influence from the EOP on the flow rate estimate. *See, e.g.*, *id.* at 3 at ¶¶ 2–3; 4 at ¶ 1. The United States' previous agreement to search for and produce communications with the EOP found in the agencies' files will allow BP to discover whether there was any such influence without the need for the additional discovery BP seeks.

In large part, the information that will not be captured by the search of the agencies' records will be *internal* communications within the EOP. There may be some non-privileged internal communications, but many of these *internal* communications will be privileged. The burden of searching for, reviewing, and logging these privileged communications is significant and the expected additional information to be obtained from this additional burden is slight at best.

BP also implies that the EOP employees' inclusion on some of the emails already produced through FOIA suggests that the White House was controlling agency discussions on the *Deepwater Horizon* incident. BP attempts to read far too much into these emails. For instance, BP cites to the fact that Ms. Browner was cc'd on an email as "compelling evidence" that she was "substantially and personally involved in the decision-making process." July 7 Letter at 3. In the context of this case, the Court has become fully aware just how many people are copied on emails when they have not had "substantial" or "personal" involvement in the subject matter of the email. If Ms. Browner's involvement was as "substantial" as BP claims, how could it be necessary to search the *internal* communications of the Assistant to the President to find evidence of that involvement? Any such "substantial" involvement would be revealed by the non-privileged communications between Ms. Browner and the agencies and departments, which will be produced as a result of searches of the records of the agencies and departments.

Rather than prove BP's point, these emails demonstrate the soundness of the United States' position. BP has been able, even from the redacted emails, to determine the role of the EOP and to determine what involvement the EOP had in the flow rate estimates. With the additional non-privileged communications produced by the United States in the course of discovery, BP will have the information it requires.

2. *Cheney* **supports the United States' assertion that the EOP documents BP seeks are privileged.**

Contrary to BP's contention, the United States does not suggest that EOP employees enjoy carte blanche confidentiality. However, in cases where discovery requests seek *purely internal* EOP documents, the Supreme Court's decision in *Cheney v. United States District Court for the District of Columbia* (542 U.S.367 (2004)) supports withholding such documents, especially when other avenues for discovering sought after information exists.

BP's July 7 Letter truncates the Supreme Court's decision in *Cheney*. *Id*. While correctly citing the case for the proposition that the President may, in some cases, be required to participate in civil discovery (July 7 Letter at 6), BP failed to disclose that *Cheney* also stands for the proposition that "special considerations control when the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id.* at 385. Specifically, *Cheney* instructs that when "asked to enforce against the Executive Branch unnecessarily broad subpoenas," courts should verify a party's need for the documents requested and "explore other avenues, short of forcing the Executive to invoke privilege," for providing a requesting party with information it desires. *Id.* at 388, 390. For example, courts may narrow the scope of the moving party's discovery request to avoid forcing the disclosure of internal EOP documents. *Id.* at 388–89.

Especially as to Ms. Browner and Ms. Zichal, BP is seeking the very advice of high-level advisors to the President that *Cheney* instructs should be produced only (1) when a demonstrable need has been established and (2) other avenues of obtaining the information do not exist. BP has not established a demonstrable need for its proposed fishing expedition of the internal EOP records. Moreover, BP already has an alternative avenue because, as described above, BP will already be receiving copies of communications between the agencies and departments leading the response effort and the EOP. These communications are sufficient to address BP concerns about the role of the EOP in the flow rate analyses.

The other cases cited by BP are not applicable to the facts at bar. For example, none of the EOP employees whose email accounts BP is requesting access to were members of an advisory committee under the Federal Advisory Committee Act ("FACA"). Therefore, the holdings in the cases cited by BP are inapposite. *See Cummock v. Gore* (180 F.3d 282 (D.C. Cir. 1999) (determining whether an advisory group fell under FACA for discovery purposes)), *Association of American Physicians and Surgeons, Inc. v. Clinton* (997 F.2d 898 (D.C. Cir. 1993) (same)), and *Alexander v. F.B.I.* (194 F.R.D. 299 (D.D.C. 2000) (holding materials provided to an advisory committee from the FBI were discoverable))

As in *Cheney*, "this case can be resolved far short of the wide-ranging inquiries … proposed." 542 U.S. at 388 (quoting a Brief filed by the United States). The United States' production of communications between the agencies and departments and the EOP will satisfy BP's need to understand the basis for the United States' published flow rate calculations without imposing the additional practical and policy burdens of searching for and producing *purely internal* EOP communications.

3.      **The Executive Office's interest in candid advice supports the exclusion of internal EOP from discovery.**

In *United States v. Nixon*, (*Nixon I*), the Supreme Court explained that Presidential advisors must enjoy the confidentiality provided by executive and presidential communications privileges when formulating advice for the President: "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately."  418 U.S. 683, 708 (1974).  No controlling precedent since the *Nixon* cases were decided undermines this proposition.

A case cited by BP in support of its discovery request articulates that both EOP employees' advice and the information gathering process necessary to render their advice should be protected as confidential.  In *Association of American Physicians and Surgeons, Inc.*, the D.C. Circuit Court of Appeals explained that Presidential advisors that do not fall under FACA have the ability to advise the President confidentially:

> The President's confidentiality interest is strong regardless of the particular role the Task Force is playing on any given day.  Indeed, the two functions naturally interrelate and can only be divided artificially.  If public disclosure of the real information-gathering process is required, the confidentiality of the advice-giving function inevitably would be compromised…. A group directly reporting and advising the President must have confidentiality at each stage in the formulation of advice to him.

997 F.2d 898, 910 (D.C. Cir. 1993).  Therefore, even while advisors are collecting information before speaking with the President, their communications and work product should be protected.

Because the United States is already producing communications between the EOP and agencies, the remaining documents BP requests represent predominantly *internal* opinions that were meant to advise and educate the White House's policy decisions.  The effectiveness of such advice and information is reliant on an author's ability to speak frankly, and the confidentiality of internal EOP communications is essential to support the candor, and arguably accuracy, of these communications.  This principle is especially applicable to Ms. Browner and Ms. Zichal, but also applies to the *internal* communications of Drs. Moran and Miller.

*        *        *        *

Through its exhaustive searches and ongoing production, including documents created by high level government officials outside the EOP, the United States has shown its willingness to compromise and facilitate other parties' sweeping discovery requests in this case.  BP has not articulated a reasonable basis for demanding the search for and production of duplicative information or intruding into the *internal* communications of the EOP.  As this Court once remarked, BP will not be forced to go to the Caspian Sea for this case.  In the same spirit, the United States should not be forced to intrude on the internal communications of the EOP.

In the event that BP will not accept the United States' offer with respect to the two custodians within the EOP, the United States respectfully requests that the Court deny BP's request to search the files of EOP custodians, especially those of Ms. Browner and Ms. Zichal.

Sincerely,

/s/ Sarah D. Himmelhoch

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery