UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 <br><br> SECTION: J |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

**BP'S BRIEF IN RESPONSE TO CAMERON INTERNATIONAL CORPORATION'S APPEAL OF MAGISTRATE JUDGE SHUSHAN'S ORDER REGARDING OBJECTIONS TO DEPOSITIONS**

Cameron's appeal of a portion of a discovery order that it does not like -- which properly limits its request for duplicative depositions in this massive litigation -- should be rejected out of hand. Magistrate Judge Shushan's June 29 Order (Doc. 3090) (the "June 29 Order") struck an appropriate balance in allowing certain additional depositions to proceed and refusing others as unnecessary and cumulative, all as part of Magistrate Judge Shushan's ongoing management of discovery in this complex case. Other parties, including BP, were also denied requested depositions in the June 29 Order; yet only Cameron appeals. Judge Shushan's decision regarding Cameron's requested deponents appropriately avoided compelling cumulative depositions of limited value. It was not "clearly erroneous or contrary to law[,]" 28 U.S.C. §636(b)(1)(A), but rather, correctly limits Cameron's attempt to obtain needless discovery from additional BP deponents.

As this Court is aware, in preparation for the Phase 1 Trial in February 2012, the parties to this litigation have undertaken a massive discovery effort encompassing nearly 200 fact

depositions, more than 18 million pages of documents produced, and literally thousands of interrogatories and requests for admission, all in just over 6 months.  Throughout these proceedings, Magistrate Judge Shushan has worked closely with the parties to establish deadlines and ensure that all parties have a fair opportunity to request depositions from each other and from third-parties.  As Judge Shushan has managed discovery and strived to keep the parties on schedule for the trial, balances have been struck.  As a result, none of the parties has been permitted to take every deposition that it has sought.  Many of the parties -- including BP, Halliburton, Cameron, and the State of Louisiana -- have had deposition requests denied, despite submitting materials supplementing and seeking to justify those requests.  Indeed, in the very order that Cameron is now appealing, BP was denied the ability to depose 5 of the 7 Halliburton witnesses that it had requested.

Magistrate Judge Shushan has established a process whereby parties can request depositions from each other, and the party from whom the deposition is sought has the opportunity to object.  This process is fair and open to all parties -- including Cameron.  In the June 29 Order, the Court allowed Cameron to choose one of its three requested witnesses for deposition over BP's objection.  Cameron does not seek to depose these three witnesses because they had any involvement with the Macondo well or the *Deepwater Horizon* prior to the incident, but only because each witness was a member of BP's internal investigation conducted after the incident.  In this regard, all three of these requested deponents would provide testimony that is cumulative of the testimony that has already been provided, or that could have been provided, by their direct supervisor during the investigation, Dr. Fereidoun Abbassian, and by the 13 other members of BP's Incident Investigation Team (the "BP IIT") who have been deposed.

As the June 29 Order allowing Cameron to choose one of its three requested deponents is more than fair to Cameron, BP respectfully requests that the Court deny Cameron's appeal seeking to compel two additional unnecessary depositions. In establishing reasonable limits on the discovery sought by Cameron, Judge Shushan was acting within her discretion. Her decision was not "clearly erroneous or contrary to law[,]" 28 U.S.C. §636(b)(1)(A), and thus is entitled to the appropriate deference afforded to magistrates managing discovery in complex litigation. Cameron has failed to meet its "heavy burden" to prove otherwise. *See Hamilton v. First American Title Insurance Co.*, Civil Action No. 3:07-CV-1442-G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010).

**I.     FACTUAL BACKGROUND**

    **A.     The Discovery Guidelines and Deadlines Have Been Clear and Applied Reasonably to All Parties.**

On October 19, 2010, the Court entered Case Management Order #1 ("CMO #1") (Doc 569), which established a schedule and guidelines for the discovery process for Phase 1 of the Limitation Trial, which is set to commence in February of 2012. Since that time, all parties have understood that these proceedings would include very extensive discovery taking place over a limited amount of time and that the parties would need to work collaboratively and make sacrifices in order to make the schedule work. CMO #1 set January 18, 2011 as the beginning date for Phase 1 fact depositions. Due to increased discovery demands, the complexity of the legal and factual issues, and the amount of depositions being taken, the Court entered Pre-Trial Order #27 (Doc. 1075) ("PTO #27") -- creating a default of 2-day, 15-hour depositions for fact witnesses and establishing a multi-track deposition schedule -- less than 10 days later. (PTO #27 at II.B.1, II.D.1). As a result, it has not been unusual for 6, 7, and even 8 depositions, sometimes occurring on two continents, to be taken on the same day. After setting a Phase 1 fact discovery

3

deadline of July 31, 2011 (*Id.* at 1), the Court allowed the parties even more time to take the depositions of Phase 1 fact witnesses who were not necessary for expert reports beyond the July 31 cut-off. (Ex. A, 5/27/2011 Mem. From M.J. Shushan on Post July 31, 2011 Depositions for Phase One).

Since the entry of CMO #1, each change to the discovery schedule has allowed for additional fact discovery. The deposition guidelines and deadlines have been clear, have allowed for very extensive fact discovery, have applied to all parties, and have given all parties -- including Cameron -- a reasonable opportunity to request depositions.

### B. Magistrate Judge Shushan Has Taken A Very Active Role In Managing The Discovery Process.

Since January 2011, Magistrate Judge Shushan has been meeting with all of the parties for several hours almost every Friday to schedule depositions and to assist the parties in working through discovery issues and disputes. During that time, Magistrate Judge Shushan has taken an active role in helping the parties schedule depositions and narrow the scope of discovery to the most pertinent issues in order to ensure that the parties have a fair opportunity to prepare for the Phase 1 trial in February 2012. Indeed, on February 9, 2011, the parties submitted a 57-page Master List of Potential Deponents comprised of 973 individuals (not including designated plaintiffs and experts) that the parties tentatively sought to depose during Phase 1 discovery. (Ex. B). All parties -- including Cameron -- had an opportunity to submit names for this list. Through the efforts of the Discovery Conference Working Group, this list was narrowed over time to a smaller but still remarkable 182 fact depositions that have been taken or are scheduled to be taken during Phase 1 discovery. To create a workable discovery schedule, virtually all parties -- not just Cameron -- have had to sacrifice parts of their discovery "wish lists."

Additionally, due to the Phase 2 testing of the *Deepwater Horizon* blowout preventer ("BOP") -- which commenced on April 15, 2011 and was completed on June 22 (3/25/2011 Order, Doc. 1757; 6/24/2011 Order, Doc. 3062) -- Magistrate Judge Shushan has closely monitored the details of the testing and preservation of the BOP, as this subject has been discussed in great detail at many Friday Discovery Conferences and at separate hearings over the past several months.

### C. Magistrate Judge Shushan Has Implemented a Process to Request and Object To Depositions That Has Been Applied Reasonably To All Parties, Including Cameron.

In May 2011, with the completion of Phase 1 fact discovery approaching, Magistrate Judge Shushan established a process whereby parties could request additional witnesses for deposition both prior to the July 31 formal cut-off date and thereafter. As was true earlier during the Phase 1 fact discovery period, any requesting party was permitted to submit a short statement explaining why it sought a specific fact deposition and providing the employer or former-employer of the requested deponent an opportunity to object to the taking of the deposition and to provide reasons for its objection. (Ex. A, 5/27/2011 Mem. From M.J. Shushan on Post July 31, 2011 Depositions for Phase One). Regardless of the requesting party, if the producing party did not object to the requested deposition, Magistrate Judge Shushan ordered that the deposition go forward. (June 29 Order) This occurred for 35 of the approximately 50 requested deponents. *Id*. Similarly, regardless of the requesting party, if the producing party did object to the deposition, the Court allowed each side to present their respective positions before making a determination regarding whether the depositions would be taken.

Cameron was far from the only party unable to depose each of the deponents that it requested. In fact, in the same June 29 Order allowing Cameron to depose its choice of one of

5

the three requested BP deponents that are at issue on this appeal (depositions to which BP had objected), the Court also ordered that BP would not be allowed to depose 5 of the 7 Halliburton deponents that it requested to whom Halliburton objected. (June 29 Order at 2). Also contrary to Cameron's assertion, this was not the first time where a party was asked to justify its deposition request and the producing party allowed an opportunity to object.[1]

### D. BP Has Provided Extensive Discovery Thus Far in MDL 2179 -- Including On the Very Same Issues For Which Cameron Seeks Additional Depositions.

As stated above, 182 fact deponents have been deposed or are scheduled to give their deposition in connection with Phase 1 discovery. Of those 182 deponents, 82 have been or will be produced by BP or are otherwise associated with BP. BP has produced 14 members of its Internal Investigation Team, including Mark Bly, the team head, Fereidoun Abbassian, the direct supervisor of the three witnesses during the incident investigation, and other members of the team on which each of these witnesses worked, including Norman Wong and Walter Guillot. Moreover, BP has, to date, been served with 26 sets of requests for production from various parties comprised of 666 individual requests (including 1 set of requests for production from Cameron), 177 total interrogatories (including 43 from Cameron), and 485 requests for admission.

## II. Law and Argument

### A. Magistrate Judges' Rulings in Discovery Disputes Are Afforded Deference—Particularly Where, As Here, the Magistrate Judge Has An Active and Extensive Role Managing the Discovery of a Complex Litigation.

Magistrate judges are empowered to "hear and determine" pretrial matters pending before a federal district court. 28 U.S.C. § 636(b)(1)(A). This power extends to matters of pretrial

---

[1] On April 20, 2011, after receiving the positions of both parties, Magistrate Judge Shushan denied the State of Louisiana's request for 9 of 10 requested Transocean deponents. (4/20/2011 Order, Doc. 2067) The Court undertook a similar process in regards to the requested depositions of Dr. Kris Ravi (Halliburton) and Mr. Lamar McKay (BP).

discovery.  *Beechgrove Redevelopment, LLC v. Carter & Sons, Civil* Action No. 07-8446, 2009 WL 159287, at *1 (E.D. La. Jan. 21, 2009) (Barbier, J.).  Once tasked with this responsibility, a magistrate judge's determinations are given broad deference, and a party such as Cameron "who seeks to overturn a magistrate judge's order disposing of a discovery matter shoulders a heavy burden."  *See Hamilton*, 2010 WL 791421, at *4.

To prevail, the challenging party must show the magistrate judge's discovery ruling was "clearly erroneous or contrary to law."  28 U.S.C. §636(b)(1)(A)  This standard is applied with "great deference afforded to the decision[s] of the magistrate" in the particular discovery matter. *See Seiferth v. Helicopteros Atuneros*, 2008 WL 5234416, at *2 (N.D. Miss. Dec. 12, 2008). Thus, barring "unusual and exceptional" circumstances, a magistrate judge's handling of a discovery dispute will be upheld.  *See Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970).

Affording deference to a magistrate judge's determinations is especially appropriate in proceedings such as these where—as Cameron correctly recognizes —Magistrate Judge Shushan has taken a direct and hands-on approach to managing the discovery process and has developed a strong working knowledge of the facts and legal issues.  (Memorandum in Support of Cameron International Corporation's Objection to and Appeal from Magistrate Judge's Order Regarding Objections to Depositions ("Cameron Memo.") at 1).  In such circumstances, federal courts have typically deferred to the magistrate judge's resolution of discovery disputes.  *See, e.g., Sherman v. Harrah's New Orleans Casino*, Civil Action No. 06-2379, 2008 WL 3914970, at *3 (E.D. La. Aug. 20, 2008) (acknowledging that the magistrate judge was "intimately familiar with the details surrounding the parties' discovery dispute" when affirming the magistrate judge's pretrial discovery order); *Phillips v. Greben*, Civil No. 04-5590 (GEB), 2006 WL 3069475, at *7 (D. N.J. Oct. 27, 2006) (referencing the magistrate judge's being "actively involved in discovery"

7

and having "a thorough knowledge of the proceedings" in its decision affirming the magistrate judge's pretrial order); *Cornell Univ. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2006 WL 5097358, at *1 (N.D.N.Y. Feb. 27, 2006) ("deference is particularly appropriate in a case … which presents exceptionally complex discovery issues requiring intensive involvement on the part of the magistrate judge ….").

> **B.     In Complex Litigation, the Court Takes An Active Role In Managing and—When Necessary—Narrowing the Scope of Discovery.**

Limiting depositions is nothing new in federal practice, especially in MDL proceedings. Recognizing that "[d]epositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation[,]" *Manual for Complex Litigation* § 11.45, 4th ed. 2004, it is to the judge's basic task to manage the litigation "so as to avoid unnecessary depositions, *limit the number and length of those ... taken*, and ensure that the process of taking depositions is as fair and efficient as possible." (*Id.*) (emphasis added). The deference afforded to magistrate judges in these circumstances encourages such efficient management.

Fifth Circuit courts have emphasized the importance of this task in complex litigation and MDL proceedings. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (discussing the "wide discretion afforded district judges over the management of discovery" when dealing with "the complex issues and potential burdens on defendants and the court in mass tort litigation."); *In re Silica Products Liab. Litig.*, 398 F. Supp. 2d 563, 576 n.18 (S.D. Tex. 2005) (justifying the prior entry of a pretrial discovery order as an "exercise of [the] wide discretion over the management of pretrial discovery" afforded to the court, "especially when handling the complex issues and potential burdens on defendants and the court" in the context of a large-scale tort litigation) (citation and internal quotations omitted).

**C.   Courts in the Fifth Circuit Routinely Uphold Orders Denying or Modifying Parties' Deposition Requests -- Particularly Where Such Requests Are Cumulative and Duplicative.**

In light of the foregoing, it is unsurprising that courts in the Fifth Circuit routinely uphold orders of district and magistrate judges denying or modifying deposition requests from parties. *See, e.g.*, *Ramon v. Tex. Dep't of Criminal Justice*, No. 10-10260, 2011 WL 197200, at *2 (5th Cir. Jan 20, 2011) (no abuse of discretion for lower court judge to deny in full party's motion for depositions); *Becker v. Tidewater, Inc.*, 586 F.3d 358, 368 n.7 (5th Cir. 2009) (no abuse of discretion for lower court judge to deny in part party's motion for depositions); *Bedingfield v. Deen*, Civil Action No. 09-369, 2011 WL 1044397, at *2 (W.D. La. Mar. 18, 2011) (affirming magistrate judge's complete denial of party's deposition request for failure to show that deposition was "'vital and necessary'" and rejecting party's reliance on conclusory statements of relevance).[2]

In upholding such orders, courts in the Fifth Circuit have emphasized that requests for depositions that are cumulative, lack sufficient probative value, or appear unnecessary given other available sources of evidence can and should be denied. *See, e.g., Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985) (upholding district court's denial of request for additional depositions on grounds that already subpoenaed witnesses would testify to subject matter at issue); *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 483 (N.D. Tex. 2001) (upholding district court's denial of request for additional depositions on grounds that additional depositions would be "cumulative and would … serve[] no proper purpose" given extensive depositions

---

[2]   Cameron makes much of the fact that the three-decade-old case of *Salter v. Upjohn* concluded that it would be uncommon for a court to "prohibit the taking of a deposition altogether" in the absence of "extraordinary circumstances[.]" *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); Cameron Memo., at 10-11. But, as demonstrated above, courts in the Fifth Circuit have had little difficulty upholding such determinations. Indeed, one decade after *Salter* was decided, the Fifth Circuit cited to the case as it upheld a lower court judge's denial of a party's request to depose, reasoning that the sought-after deposition was "of limited probative value and largely cumulative." *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989).

9

already taken); *see also United States v. Blakley*, 250 F.3d 744 (5th Cir. 2001) (unpublished) (affirming district court's denial of deposition request on grounds that the deposition's "probative value" would be "clearly outweighed" by pre-existing testimony in the record).

### D. Compelling the Depositions of Messrs. Emmerson, Fleming, and Allen Would Be Duplicative and Unnecessary.

In addition to the deference to which Magistrate Judge Shushan's June 29 Order is entitled, and in light of the relevant discovery already produced, BP's original grounds for objecting to the requested depositions remain valid and Judge Shushan by no means committed "clear error" in her ruling. That is, although BP will certainly comply with Magistrate Judge Shushan's order generously allowing Cameron to depose one of the three requested witnesses over BP's objection, it is clear that the depositions of *any* of Messrs. Emmerson, Fleming, and Allen will prove duplicative and unnecessary. Compelling any additional depositions beyond what BP has already produced or will be producing would be unduly burdensome. As Cameron identifies no area of testimony for which these individuals could provide new information, the June 29 Order should be affirmed.

Cameron does not -- and cannot -- contend that Messrs. Emmerson, Fleming, or Allen had any involvement with the Macondo well or the *Deepwater Horizon*'s BOP prior to the incident on April 20, 2010. Thus, Cameron's alleged basis for seeking their testimony is apparently knowledge that they obtained concerning the *Deepwater Horizon* BOP derived solely from their roles as members of the BP IIT. Dr. Fereidoun Abbassian, who supervised these three individuals in their work on the BP IIT, and to whom they reported their findings, has already provided two days of relevant testimony concerning BP's post-incident testing and analysis of the BOP. Moreover, two other members of the BOP team on which these witnesses worked have already been deposed. Tellingly, for one of these witnesses, Walter Guillot, Cameron elected not

to ask any questions.  BP also recently produced a Rule 30(b)(6) designee who testified regarding various BOP-related issues on July 13-14, 2011.  Indeed, Cameron requested and received more than 3 hours to question this designee.  (7/6/2010 Order, Doc. 3140).

Cameron's memorandum distorts the instances where Dr. Abbassian mentioned these witnesses' supporting role in BP's investigation, cherry-picking a handful of answers over a 15-hour deposition to wrongly suggest that Dr. Abbassian lacked sufficient knowledge to testify extensively and meaningfully concerning BP's post-incident testing and analysis of the *Deepwater Horizon* BOP.  (Cameron Memo. at 4-9).  To the contrary, in the course of the investigation, Dr. Abbassian "constantly review[ed]" the work of his team members on the BP IIT, including Messrs. Emmerson, Fleming, and Allen, and he was "heavily" and "personally . . . involved with every single recommendation" of his BOP team that was incorporated into the Bly Report.  (Deposition of Fereidoun Abbassian, Vol. 1, May 3, 2011 ("Abbassian Tr.," Attached hereto as Ex. C) at 339-40).  Cameron was provided the opportunity to question Dr. Abbassian, other members of the BOP investigation, and BP's Rule 30(b)(6) designee on BOP-related issues.  Given this opportunity -- in addition to the voluminous document productions and written discovery that BP has produced and will continue to produce regarding these issues -- Cameron's asserted bases for seeking these depositions are not compelling.  Indeed, Cameron's arguments on the proposed deponents were presented to Judge Shushan; BP countered with its objections; and Judge Shushan made her ruling.  While Cameron may have preferred a different result, the ruling Judge Shushan made was not clearly erroneous or contrary to law.

### Tony Emmerson

Although Dr. Abbassian testified that Mr. Emmerson served as his "deputy team leader" in the BOP investigation, there is simply nothing in Dr. Abbassian's testimony to suggest that

11

Mr. Emmerson possesses knowledge beyond that of Dr. Abbassian or beyond that of Cameron's own employees.  Cameron relies heavily on Dr. Abbassian's statement that "Tony Emmerson could be one individual who would be able to tell you the name of the individuals who" observed a leak during ROV intervention (Ex. C, Abbassian Tr. at 701) and that another witness identified Mr. Emmerson as having witnessed an attempt to cut through the autoshear trigger pin of the *Deepwater Horizon* on April 22, 2010.  (Cameron Memo. at 4-5; Deposition of Henry Matthew Thierens, Vol. 2, June 10, 2011, (attached hereto as Ex. D) at 46).  Notably, Mr. Thierens simultaneously testified that he also spoke with a Cameron employee, Mel Whitby, about witnessing the very same incident.  *Id.*  Mr. Whitby recently confirmed in his deposition that he viewed this attempt, and that there was an ROV feed of the incident.  (Deposition of Melvyn Whitby, Vol. 1, July 18, 2011 (attached hereto as Ex. E.) at 46) (Q. . . .[W]ere you watching the feed when the auto shear pin was cut April 22nd?  . . . . Were you watching the feed at that time?  A.  I was watching the feed at that time.").  Thus, it is plain that there are other witnesses – including Cameron's own employees who responded to the incident – with the same knowledge that Cameron now asserts as its basis for deposing Mr. Emmerson.

### Ray Fleming

Cameron similarly does not identify any topic that would necessitate compelling the deposition of Ray Fleming concerning his post-incident investigation of the *Deepwater Horizon* BOP control system under Dr. Abbassian's supervision.  Cameron relies on the fact that, in response to a single hypothetical question concerning the operation of Solenoid 103 on the yellow control pod, Dr. Abbassian indicated that Mr. Fleming may have knowledge to answer that question.  (Cameron Memo. at 8-9; Ex. C, Abbassian Tr. at 490-92).  Yet to the extent that Cameron merely seeks to understand how the solenoid operates, Cameron -- the designer,

12

manufacturer, and servicer of the *Deepwater Horizon* BOP and its components -- would already have that information. This is especially true because Cameron does not dispute that Mr. Fleming had no involvement with the *Deepwater Horizon* BOP until after the incident. Moreover, while Cameron notes that the head of BP's rig audit team identified Messrs. Emmerson and Fleming as "two of the three people involved in the BP internal investigation with the most knowledge concerning BOP's," (Cameron Memo. at 9), the third person identified, Michael Byrd, was in fact recently deposed. Mr. Byrd was also questioned regarding the operation of the solenoid valves in the BOP control system, which now forms the basis for Cameron's request for Mr. Fleming's deposition:

> Q. Okay. Are the control pods powered by a power source from the rig or battery power or both?
>
> A. I believe the pods are powered by a source from the rig.
>
> Q. Do you know if the control pods -- if the power source from the rig was cut off, did the control pods have battery power?
>
> A. That's my understanding. That if the power source from the rig is lost, that the -- which is what initiates the dead man system, that that is done by the batteries.
>
> Q. Okay. If those batteries are insufficiently charged, could that result in a failure of the AMF to operate?
>
> A. It could, yes.
>
> Q. And if the solenoid valves that operate the blind shear rams were miswired, could that result in a failure of the AMF to operate?
>
> MR. BAAY: Objection; form.
>
> A. Yes, it could.

(Deposition of Michael Byrd, July 13, 2011, Vol. 1, (attached hereto as Ex. F) at 320-21).

### Tim Allen

Finally, there is no reason to compel the deposition of Tim Allen, a third member of the BP IIT under Dr. Abbassian's supervision. Mr. Allen, who had no relevant knowledge of the

13

*Deepwater Horizon* prior to the incident, analyzed the "BOP system and performance" for the BP IIT under Dr. Abbassian's guidance. (Ex. C, Abbassian Tr. at 366). Cameron's insistence on deposing Mr. Allen relies upon Dr. Abbassian's testimony that Mr. Allen performed shearing pressure calculations after the incident for Dr. Abbassian's team. (Cameron Memo. at 5-7; Ex. C, Abbassian Tr. at 708-09; 743-45). Dr. Abbassian has already testified that Mr. Allen performed these calculations, "based on Cameron formulas" found in Cameron engineering bulletin EB702D, and that the results of the graph were provided in BP's IIT report. (Ex. C, Abbassian Tr. at 709). While Dr. Abbassian understandably could not provide a detailed explanation of the graph without "having the formula in front of [him]," *id.* at 745, Cameron has not expressed why it needs to depose Mr. Allen to understand the graph based on Cameron's own formula. In any event, Dr. Abbassian confirmed that he had reviewed Mr. Allen's calculations and "the formula provided in [the] Cameron Engineering Bulletin," and had "satisfied [him]self" of the "authenticity of th[e] data" applied. *Id.* As Cameron fails to specify any other relevant topic for which Mr. Allen's testimony would not be cumulative of Dr. Abbassian's deposition or the testimony provided by other witnesses who have already been produced, deposing Mr. Allen is unwarranted.

In conclusion, far from demonstrating any "unusual and exceptional" circumstances (*Brown*, 430 F.2d at 1216) that would justify disturbing the magistrate judge's order under the statutory "clearly erroneous or contrary to law" standard, 28 U.S.C. § 636(b)(1)(A), Cameron has failed to identify any BOP-related topic upon which Messrs. Allen, Fleming or Emmerson could provide testimony or information that BP has not already disclosed through prior witnesses or that Cameron does not already possess. Especially in light of the extensive discovery that BP has presented in this matter – including Dr. Abbassian, more than a dozen other members of the

BP IIT, and the recent deposition of BP's 30(b)(6) designee on BOP issues – Magistrate Judge Shushan's order granting Cameron the right to depose only one of Messrs. Emmerson, Fleming, and Allen was entirely reasonable to prevent duplicative discovery and is clearly entitled to the deference typically applied to a magistrates judge's handling of such discovery issues. Cameron's request to depose all three witnesses on this appeal should thus be denied.

## CONCLUSION

For the foregoing reasons, BP respectfully requests that this Court deny Cameron's Appeal of Magistrate Judge Shushan's June 29 Order (Doc 3090) Regarding Objections to Depositions and affirm the Magistrate Judge's ruling.

Dated: July 20, 2011                    Respectfully submitted,

By: /s/ Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc. &*
*BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of July, 2011.

/s/ Don K. Haycraft