**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

_____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| **In Re:  Oil Spill by the Oil Rig** | ) | **MDL No. 2179** |
| **"Deepwater Horizon" in the** | ) |  |
| **Gulf of Mexico, on** | ) |  |
| **April 20, 2010** | ) | **SECTION: J** |
|  | ) |  |
|  | ) |  |
| **This Document Relates to:** | ) | **Judge Barbier** |
| _Case No. 2:10-cv-04536-CJB-SS_ | ) | **Mag. Judge Shushan** |
|  | ) |  |

_____)

**PROPOSED INTERVENOR SIERRA CLUB INC.'S MEMORANDUM OF
LEGAL AUTHORITY IN SUPPORT OF OBJECTIONS TO
ORDER OF THE MAGISTRATE JUDGE
<u>DENYING SIERRA CLUB, INC.'S MOTION TO INTERVENE [REC. DOC. 3065]</u>**

Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th Street, Suite 102W
Boulder, CO 80301
tel (303) 449-5595
fax (303) 449-6520
eric.huber@sierraclub.org

Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
tel (415) 977-5721
fax (415) 977-5793
devorah.ancel@sierraclub.org

## <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………………………………………..i

INTRODUCTION…………………………………………………………….....……1

DISCUSSION……………………………………………………………………….2

I.      Sierra Club's Motion is Timely……………………………………….....……2

II.     Sierra Club's Interests are Substantial and Legally Protectable…………..……………3

     A.     The Magistrate Erred in Concluding that the Sierra Club Asserts
           no more than a Generalized Interest in the Litigation Insufficient for
           Intervention…………………………………………………………..……3

           1.     Article III Standing is Not Required………………………………3

           2.     Sierra Club's Substantial and Particularized Interests in
                the Litigation are Legally Protectable and Satisfy Standing
                Requirements…………………………………………………..………3

           3.     Sierra Club has a Legally Protectable Interest in the
                Settlement of this Action Beyond Potential
                "Supplemental Environmental Projects"……………………..……6

           4.     The Sierra Club has Specific Interests Beyond that of the
                 Public at Large………………………………………………………7

           5.     U.S. Supreme Court Precedent Applies - Intervention of Right
                Exists when it is the Only Means by which to Protect the
                Applicant's Interests in the Action………………………………..……7

     B.     The Magistrate Judge Erred in Concluding that the Sierra Club
            Failed to Demonstrate that the Relief Sought by the United States is
            within its Zone of Interest…………………………………………………10

           1.     The Fifth Circuit's Zone of Interest Standard for
                 Public Law Cases Applies…………………………………………10

            2.     The Magistrate's Distinction under Laidlaw is Irrelevant to the
                 Determination of the Zone of Interest of Penalties…………………...13

III.    Disposition of this Action may, as a Practical Matter, Impair or Impede the
           Sierra Club's Interests…………………………………………………..……15

IV.     Sierra Club's Interests are not Adequately Represented in this Action by the
        United States………………………………………………………………….…17

        A.      Sierra Club's Interests are In Fact Different than that of
                the United States……………………………………………..…………..18

        B.      The United States' Complicity in the Events Leading up to the
                Spill Demonstrate Adversity of Interest…………………………………19

        C.      The Posture of Litigation Related to this Action Pits the Sierra Club
                and the United States as Adversaries……………………………………22

V.      Sierra Club Should be Granted Permissive Intervention
        Under Rule 24(b)(1) as an Alternative to Intervention of Right………………...……23

CONCLUSION………………………………………………………………………..25

Certificate of Service

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994)…………………….....8

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989)…………………………………………...8

*Clarke v. Securities Industry Ass'n*, 479 U.S. 388 (1987)………………………………………..11

*Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970)…………………………………. 8

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996)………………………………17, 18, 19

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)………………15

*Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*,
478 F. Supp. 2d 11 (D.D.C. 2007)…………………………………………………………………11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*,
528 U.S. 167 (2000)……………………………………………………………………………13, 14

*Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)……………………………………15

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977)………………………….3

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*,
712 F. Supp. 1019 (D. Mass. 1989)……………………………………………………...9, 10

*Jones v. Prince George's County*, 348 F.3d 1014 (D.C. Cir. 2003)……………………………… 8

*John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001)……………………………………..22

*Lacoste v. Crochet*, 751 So. 2d 998 (La. Ct. App. 2000)………………………………………...13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)…………………………………………… 6

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)…………………………………………….11

*Massachusetts v. EPA*, 549 U.S. 497 (2007)…………………………………………………….. 5

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996)……………………………………………….18

*Natural Res. Def. Council v. Nuclear Regulatory Comm'n*,
578 F.2d 1341 (10th Cir. 1978)………………………………………………………………….15

*Natural Resources Def. Council, Inc. v. Jamison*, 787 F. Supp. 231 (D.D.C. 1990)…………… 11

*Newby v. Enron Corp.*, 443 F.3d 416 (5th Cir. 2006)………………………………………………..3

*New Orleans Public Service, Inc. v. United Gas Pipeline Company*,
732 F.2d 452 (5th Cir. 1984)………………………………………………………………10, 11, 12

*Ouachita Watch League v. Jacobs*, 463 F.3d 1163 (11th Cir. 2006)…………………………….. 3

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998)…………………………………………………..3, 8

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)………………………………17

*San Juan County, Utah v. U.S.*, 420 F.3d 1197 (10th Cir. 2005)……………………………... 24

*Sanguine, Ltd. v. United States Department of Interior*,
736 F.2d 1416 (10th Cir.1984)………………………………………………………………… 23

*Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992)………… 11

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)……………………………………………… 17

*Sierra Club v. Morton*, 405 U.S. 727 (1972)……………………………………………………... 5

*Sierra Club v. Robertson*, 960 F.3d 83 (8th Cir. 1992)………………………………………… 18

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)………………………………14

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1971)……………………… 7, 8, 17

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002)………………………………………6

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008)………………………………………6

*United States v. Telluride Co.*, 146 F.3d 1241 (10th Cir. 1998)………………………………… 11

*Utah State Dept. of Health v. Kennecott Corp.*, 232 F.R.D. 392 (D. Utah 2005)……………… 24

*Wesson v. United States*, 48 F.3d 894 (5th Cir. 1995)……………………………………………..13

**FEDERAL STATUTES**

33 U.S.C. § 1251(a)……………………………………………………………………………... 11

33 U.S.C. § 1321(b)(1)…………………………………………………………………………... 11

33 U.S.C. § 1321(b)(7)……………………………………………………………………… 1

33 U.S.C. § 1321(b)(8)……………………………………………………………………… 20

33 U.S.C. § 1321(s)……………………………………………………………………….... 13

33 U.S.C. § 1365……………………………………………………………………………14

33 U.S.C. § 2702(a)………………………………………………………………………… 1

33 U.S.C. § 2704(a)(3)………………………………………………………………………20

33 U.S.C. § 2704(c)(1)…………………………………………………………………….....20

## FEDERAL RULES

Fed. R. Civ. P. 24(a)(2)……………………………………………………………….......1, 2, 15

Fed. R. Civ. P. 24(b)……………………………………………………………………….24

Fed. R. Civ. P. 24(b)(1)(B)……………………………………………………………… 1, 23

Fed. R. Civ. P. 24(b)(3)……………………………………………………………………24

## FEDERAL REGULATIONS

15 C.F.R. § 990.51(e)………………………………………………………………………21

## MISCELLANEOUS

David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,*
81 Harv. L. Rev. 721, 726 (1968)……………………………………………………………8

## INTRODUCTION

On December 15, 2010 the United States of America commenced this action against BP Exploration & Production, *et. al.* arising out of the oil spill into the Gulf of Mexico that began on April 20, 2010. The United States' Complaint alleges *inter alia* that the spill was caused by the negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations of Defendants BP, Anadarko Exploration, Anadarko Petroleum, MOEX and one or more of the Transocean Defendants (hereafter referred to jointly and severally as "Defendants"). The United States' Complaint asserts two claims for relief: 1) for the imposition of civil penalties under Clean Water Act ("CWA") § 311(b)(7), 33 U.S.C. § 1321(b)(7); and 2) for a declaratory judgment that Defendants are liable under Section 1002(a) of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2702(a), for the United States' recovery of costs and damages. The United States' Prayer for Relief also seeks "injunctive relief as appropriate."

On February 7, 2011, Sierra Club filed a motion to intervene as a plaintiff in this lawsuit. Sierra Club seeks to intervene in this action to protect its members' recreational, aesthetic, scientific and economic interests in the lands and waters impacted by the oil spill, as well as to protect Sierra Club's interests in the imposition and disposition of maximum civil penalties, which are available to be used for remedial projects and which serve to deter similar conduct and events in the future. The United States, BP, Anadarko and MOEX opposed Sierra Club's intervention.

As set forth below, and in its Opening and Reply to Oppositions memoranda, Sierra Club is entitled to intervene under Fed. R. Civ. P. 24(a)(2), because (1) Sierra Club's motion to intervene is timely; (2) Sierra Club has direct, substantial and legally protected interests in this

1

action; (3) the disposition of this action may, as a practical matter, impair or impede those interests; and (4) the present parties to the action do not adequately represent Sierra Club's interests. In the alternative, permissive intervention is appropriate pursuant to Fed. R. Civ. P. 24(b)(1)(B).

On June 28, 2011, Magistrate Judge Shushan issued an order denying Sierra Club's intervention of right and permissive intervention under Rule 24(a)(2) and 24(b)(1)(B). Sierra Club objects to the Magistrate's order and respectfully submits that the order was based on several errors, including but not limited to finding that: 1) Sierra Club's interest in the litigation is too generalized and therefore Sierra Club does not have standing to intervene; 2) Sierra Club does not fall within the "zone of interest" protected by the Clean Water Act and Oil Pollution Act; and 3) Sierra Club failed to demonstrate that its interests are not adequately represented by the existing parties.

## DISCUSSION

Sierra Club meets each of the four elements required for intervention of right under Fed. R. Civ. P. 24(a)(2):

**I.      Sierra Club's Motion is Timely**

There is no dispute that Sierra Club's motion is timely. *See* Order Regarding the Motion of the Sierra Club, Inc. to Intervene (hereafter "Order") 5, FN 5.

II.     **Sierra Club's Interests are Substantial and Legally Protectable**

    A.     **The Magistrate Erred in Concluding that Sierra Club Asserts
No More than a Generalized Interest in the Litigation Insufficient for
Intervention**

        1.     **Article III Standing Is Not Required**

The Magistrate found that Sierra Club does not have standing to intervene and denied Sierra Club's motion because she found Sierra Club has "no more than a generalized interest in ensuring that the environmental laws, as they relate to the Gulf of Mexico and its natural resources, are enforced." Order 13. As an initial matter, this conclusion is in error because Article III standing is not required for intervention in the Fifth Circuit. *See Newby v. Enron Corp.,* 443 F.3d 416, 422 (5th Cir. 2006) ("In contrast, there is no Article III requirement that intervenors have standing in a *pending* case … In *Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998), we held 'that Article III does not require intervenors to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so.'" *Id.* at 830 (emphasis added)).

        2.     **Sierra Club's Substantial and Particularized Interests in
the Litigation are Legally Protectable and Satisfy Standing
Requirements**

Even if Article III standing was required, Sierra Club satisfies that here. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ("An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). *See also*, *Ouachita Watch League v.*

*Jacobs*, 463 F.3d 1163, 1171-72 (11th Cir. 2006) (detailed declarations illustrating substantive injury to scientific use and recreational and aesthetic enjoyment of the ecosystem at issue provided basis for the court's conclusion that plaintiff's interests would be harmed.) In the instant case, Sierra Club submitted <u>seven</u> <u>declarations</u> that demonstrate specific, direct injury in fact of the oil spill disaster to its members, their interests in avoiding future events of this type, and their ongoing interests in other legal proceedings and public participation related to this lawsuit. (For the court's convenience, these declarations are attached as Exhibits A-G.)

Specifically, many Sierra Club members' continued recreational use, boating, fishing and swimming in the Gulf of Mexico have been severely impacted by the spill and are threatened by inadequate deterrence of future spills. *See, e.g., Sierra Club Motion to Intervene*, Ex. G, Decl. of Dean Wilson ¶ 6-7 (describing how his swimming has been severely impacted by the oil spill). *See also* Ex. B, Decl. of David Underhill ¶ 5-11; Ex. D, Decl. of Devin Martin ¶ 6-9; Ex. E, Decl. of Linda St. Martin ¶ 5-8. Sierra Club members' enjoyment and consumption of seafood has also been dramatically reduced due to concerns over oil persistence and the application of chemical dispersants. *See, e.g.,* Ex. G, Decl. of Dean Wilson ¶ 6-7 (describing how his consumption of Gulf seafood has decreased since the oil spill). *See also* Ex. D, Decl. of Devin Martin ¶ 6-9; Ex. F, Decl. of Colleen Morgan ¶ 4-10. Sierra Club members' health has also been impacted. *See, e.g.,* Ex. B, Decl. of David Underhill ¶ 5-11 ("I also suffer from recurring respiratory infections and congestions … Fear of aggravating these conditions steers me away from waters that might contain some of BP's oil that is tainting the adjacent air."). The oil spill disaster and the threat of future spills also directly impacts the livelihoods of Sierra Club members, including their long-time efforts to study, protect and restore the Gulf of Mexico ecosystems. *See, e.g.,* Ex. C, Decl. of Robert Hastings ¶ 6-8 (describing his long-time experience

4

as a biologist with expertise on the ecology of the Gulf coast). *See also* Ex. G, Decl. of Dean Wilson ¶ 6-7; Ex. B, Decl. of David Underhill ¶ 5-11; Ex. D, Decl. of Devin Martin ¶ 6-9; Ex. E, Decl. of Linda St. Martin ¶ 5-8; Ex. F, Decl. of Colleen Morgan ¶ 4-10.

Finally, the United States' request for injunctive relief in its Prayer for Relief could include requiring BP to carry out necessary testing, corrective actions and removal of the pollution contamination. It could also include continued removal of oil even after the government decides the mission will be complete, such as skimming of waters where new oil surfaces, cleaning of beaches and wetlands as oil continues to wash ashore, ongoing monitoring of ecosystem damages and testing for the persistence of toxic chemicals in waters and in future generations of fish and wildlife. Sierra Club members' direct interests in seeing that this injunctive relief is adequate is described in the declarations. *See, e.g.*, Ex. A, Decl. of Jill Mastrototaro ¶ 6-7; Ex. C, Decl. of Robert Hastings ¶ 4-7; Ex. F, Decl. of Colleen Morgan ¶ 7, 9-10 (noting concerns over harmful impacts of ongoing cleanup efforts and the extent of long-term clean up and restoration). Thus, Sierra Club has a direct, concrete interest in the potential injunctive relief in this action that stands un-rebutted.

In sum, Sierra Club's exhaustive declarations establish far more than a "generalized" interest in this matter. Moreover, contrary to the United States and BP's arguments, whether members of the broader public have an interest in this case does not diminish or divest Sierra Club's interests. "[T]he fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). *See also Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (rejecting EPA's argument that "because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle"). "[I]t

does not matter how many persons have been injured by the challenged action" as long as the "party bringing suit ... show[s] that the action injures him in a concrete and personal way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 581 (1992).

### 3.    Sierra Club Has a Legally Protectable Interest in the Settlement of this Action Beyond Potential "Supplemental Environmental Projects"

The Magistrate further erred in concluding that Sierra Club's substantial interest and expertise in the development of "Supplemental Environmental Projects" ("SEPs") is too contingent to establish an interest that warrants intervention of right. Order 9-10. However, an interest solely related to the terms of a settlement does provide a basis for intervention of right under Rule 24(a)(2) and, therefore, Sierra Club's interests in potential settlement are protectable. *See e.g., United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) (reversing the district court's denial of an environmental group's motion to intervene as a plaintiff in an action brought by the U.S., and holding that the group was entitled to intervene as of right to object to a proposed settlement that was contrary to the group's interests and was a substantial departure from the position that the government maintained throughout litigation).[1]

The Magistrate's conclusion misses the point by focusing on Sierra Club's interest in SEPs that could result from a settlement. Sierra Club, in its motion, uses SEPs simply by way of example to demonstrate its particular interest in settlement. Sierra Club is interested in a comprehensive settlement that ensures restoration of the scope of coastal and marine ecosystems damaged, ensures the future protection of these sensitive resources, and provides mechanisms that deter actions that could lead to another oil spill disaster. Thus, Sierra Club's interest in settlement is sufficient to support intervention of right.

---

[1] BP attempts to restrict that holding to the timeliness of intervention, but that is wrong since the Ninth Circuit emphasized in a later opinion that its holding was not limited to timing, and that the environmental group's interests supported intervention of right. *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008).

**4.      Sierra Club Has Specific Interests Beyond that of the Public at Large**

The Magistrate further erred by concluding that if Sierra Club is permitted to intervene, then a precedent would be established to allow many persons to intervene. Order 10. Notably, Sierra Club has demonstrated specific interests beyond the public at large. The Magistrate's conclusion is in error, since although this action has been pending for five months there have been no other applications to intervene (and if there were later they would arguably be untimely). Regardless of the interests of others, Sierra Club has a legally protectable interest in this lawsuit, which is all that Rule 24(a)(2) requires. Moreover, the practical effect of Judge Barbier's Order, Docket #2784, dismissing the D1 Master Complaint (which includes CWA and ESA actions against Defendants by other environmental groups) forecloses formal participation in the litigation by other environmental groups. Thus, denial of Sierra Club's intervention would effectively bar any formal participation by groups with substantial and particularized interests in the litigation.

**5.      U.S. Supreme Court Precedent Applies - Intervention of Right Exists when It Is the Only Means by Which to Protect the Applicant's Interests in the Action**

The Magistrate appropriately applies Supreme Court precedent set out in *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1971) to the United States' CWA Section 311 action. *Trbovich* established that a statute, which prohibits a party from initiating a private suit, does not impose a bar to intervention, so long as the intervention is limited to the claims presented by the existing party. *Id.* at 530-31. Recognizing that under CWA Section 311 Sierra Club does not have a right to bring a citizen suit or an unconditional right to intervene, the Magistrate states "[i]f Congress had intended to deny a right to intervene in such an action, it could have so provided. Therefore, the issues are whether Sierra Club has a right to intervene

under Rule 24(a)(2), and if it does not, whether it may be granted leave to intervene under 24(b)." Order 4. Contrary to the United States and BP's arguments, *Trbovich* demonstrates, and the Magistrate affirms, that intervention of right exists in this situation because it is the only means by which to protect the applicant's interests in the action.

*Trbovich* must be applied similarly to the United States OPA claim, for which the Magistrate correctly states "there is no provision under OPA for private enforcement suits with respect to natural resource damages." Order 3. Properly applied, the holding in *Trbovich* paves the way to intervention under Rule 24(a)(2).

Underscoring the holding in *Trbovich*, *Rule 24(a)(2) does not require an intervenor to have an independent cause of action against the defendant or have a right to sue under the law on which the principle plaintiff is suing the defendant*. In determining the interest for intervention it is not necessary that "the interest has to be of a legal nature identical to that of the claims asserted in the main action." *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir. 1970). *See also Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989) (standing to initiate a lawsuit is not required in order to intervene into a pending suit); *Associated Builders & Contractors v. Perry,* 16 F.3d 688, 690 (6th Cir. 1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing," citing *Trbovich v. United Mine Workers,* 404 U.S. 528 (1972)). As set forth in Sierra Club's opening memorandum at 8, the Fifth Circuit follows the rule that an intervenor need not have its own cause of action against the defendant. *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998), quoting David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv. L. Rev. 721, 726 (1968). *See also, Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) ("As the Rule's plain text indicates,

intervenors of right need only an 'interest' in the litigation – not a 'cause of action' or 'permission to sue.'").

Sierra Club has a special interest in the OPA claim because it may be tried first, separate from the CWA § 311 claim. *See* Pre-trial Order No. 11 at 11 [doc. 569], indicating the Court's intent to schedule one or more OPA test cases for trial by June 2011 and the Order at Doc. 986. The "gross negligence" determination that will be made in the OPA case, at least in regards to the Defendants who are contesting it, will have a direct effect on the "gross negligence" determination in the later CWA § 311 trial. Thus, to protect its interests in the penalty assessment under CWA § 311 for establishing the Defendants' gross negligence, it is necessary for Sierra Club to be a party to the trial of that issue under OPA.

Further, there is precedent for public interest groups to intervene in natural resource damages cases under statutes like OPA in which the government, as the trustee for the natural resources, has enforcement authority. *See* Sierra Club's Reply to Opposition memo 14-15, citing *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 1019, 1024-25 (D. Mass. 1989) (environmental group was permitted to intervene in the natural resource damages litigation between the natural resource trustees and the responsible parties because of the divergence of views between the government and environmental group, and to provide a balance of opinion and expertise in the resolution of a complex matter.)

Similarly, Sierra Club has demonstrated a stark difference between the organization's and the government's evaluation of the extent of the damages to the natural resources. As set forth in Sierra Club's declarations, its members and affiliated experts embody a wealth of independent knowledge and expertise that have, on multiple occasions since the disaster began, rebutted the findings of the government in its assessment of the magnitude of the spill and evaluation of the

natural resource damages. In addition, Sierra Club pressed the government to halt the use of toxic dispersants due to concerns over their unknown long-term impacts. The government's continued approval of these chemicals has raised concern over the extent to which the government is willing to assess the full scope of natural resource damages from dispersants pursuant to OPA. Like in *In re Acushnet River,* there is a "substantial divergence of views on the proper measure of damages" and "the cleanup and natural resource damages issues remain unresolved." *Id*. Therefore, the position that an intervenor must have its own claim under the statute is plainly wrong, and intervention on this claim should be allowed.

**B.** **The Magistrate Erred in Concluding that Sierra Club Failed to Demonstrate that the Relief Sought by the United States is Within its Zone of Interest**

**1.** **The Fifth Circuit's Zone of Interest Standard for Public Law Cases Applies**

The Magistrate makes the important distinction between public and private law cases in determining the interest required for intervention set out by the Fifth Circuit in *New Orleans Public Service, Inc. v. United Gas Pipeline Company*, 732 F.2d 452 (5th Cir. 1984) (*en banc*) (hereafter "*NOPSI*"). "While Sierra Club is not required to satisfy the real party in interest test [required for cases that fall into the private law realm], it is required to demonstrate that the interests urged by it are within the zone of interests protected by the substantive provisions of CWA and OPA under which the United States is proceeding against the defendants." Order 8, citing *NOPSI*, 732 F.2d at 465. Yet, the Magistrate erred by misapplying the zone of interest standard set out by the Fifth Circuit in *NOPSI*.

*NOPSI* involved a utility company suing a gas supplier over the validity of contracts between them. Consumers and certain city officials claimed an interest because *inter alia* they were purchasers of electricity subject to increased rates. *NOPSI*, 732 F.2d at 460. They were

denied intervention of right because they did not have legally protectable interests. Significantly, the *NOPSI* court was careful to distinguish the contract dispute before it from "public law cases," such as the case *sub judice*. *Id.* at 465. The *NOPSI* Court explained:

> In public law cases where statutory or constitutional violations are asserted as a basis for recovery, it has been said that standing is present when the complainant suffers injury and 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' [cit. omitted] As a recognized text has observed, this zone of interest standing test in public law cases is somewhat analogous to the Rule 17(a) standard that the party possess a substantive right under the applicable law....Wright & Miller, *Federal Practice and Procedure: Civil* § 1542 at 642. In a sense, a party within the zone of interests protected by a statute may possess a type of substantive right not to have the statute violated.

*NOPSI*, 732 F.2d at 464-65. *NOPSI* supports Sierra Club's intervention because the instant case is a public law case.[2]

Because this is a public law case, the proper inquiry under *NOPSI* is whether Sierra Club is "within the zone of interests protected by [the] statute." *NOPSI*, 732 F.2d at 465. The Sierra Club is within the zone of interests to be protected by the Clean Water Act generally and CWA § 311 in particular, and by the Oil Pollution Act. The zone of interest test is not meant to be "especially demanding." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399 (1987). Inasmuch as the purpose of the Clean Water Act is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and the purpose of CWA § 311 in particular is to protect the waters of the United States from pollution from oil spills, 33 U.S.C. § 1321(b)(1), Sierra Club's interests fall within the zone of interests covered by these statutes.[3] Sierra Club is in an analogous position to the plaintiffs in *Save Ourselves, Inc. v.*

---

[2] A public law is one that addresses injury to public resources, and in which a sanction or punishment in the form of a penalty may be imposed that goes beyond compensation for the injury caused by the violation. *United States v. Telluride Co.*, 146 F.3d 1241 (10th Cir. 1998).

[3] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 872 (1990); *Natural Resources Def. Council, Inc. v. Jamison*, 787 F.Supp. 231, 243 (D.D.C. 1990); *Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478

*U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992), where the Court found: "Plaintiffs state that they are organizations 'interested in protecting and preserving the clean water and public health in Ascension Parish, Louisiana, the State of Louisiana, and the United States. It is undisputed that this interest falls within the 'zone of interests' protected by the relevant provisions of the Clean Water Act.'" *Id.* at 661. Therefore, unlike the putative intervenors in *NOPSI*, who attempted to intervene in a private contract dispute, Sierra Club *does* have a legally protectable interest in intervention. In sum, *NOPSI* makes clear that in a public law case, the applicant is not held to the same requirement that the claim in which the applicant seeks intervention be a claim as to which the applicant is the real party in interest. *NOPSI*, 732 F.2d at 464.

Though the Magistrate properly concludes that the Fifth Circuit's zone of interest standard applies because it is a public law case, she misapplies the facts to that standard. "Sierra Club's interests fall outside of the zone of interests of the statutes under which the United States is proceeding" because "Sierra Club and its members assert no more than a generalized interest in ensuring that the environmental laws as they relate to Gulf of Mexico and its natural resources are enforced." Order 13. As supported by law described above and as set out in the attached declarations, Sierra Club's particularized and substantial interest in the litigation demonstrate that it has far more than a "generalized interest" in the litigation, unequivocally supporting intervention of right. *See* Section I, *supra*.

---

F.Supp.2d 11, 16 n.5 (D.D.C. 2007) (These cases demonstrate that conservation groups' interests fell within the broad zone of interest protected by public environmental laws such as FLPMA, NEPA, and the National Park Service Organic Act.)

### 2.    The Magistrate's Distinction Under *Laidlaw* Is Irrelevant to the Determination of the Zone of Interest of Penalties

The Magistrate erred by concluding that the penalties sought by the United States are not within Sierra Club's zone of interest. The Magistrate's conclusion is based on an improper interpretation of *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 194 (2000). Order 14. In *Laidlaw*, the Supreme Court held that an environmental group does have an interest in civil penalties and that penalties redress the injuries even though they go to the U.S. Treasury for general use. *Laidlaw*, 528 U.S. 167, 185-88, (2000) (holding that the deterrent effect of civil penalties provides a form of redress by preventing the recurrence of illegal activity causing injury to plaintiffs). That was so even though the violations had stopped in *Laidlaw* and could not recur -- in fact the facility there had "shutdown." *Id.* at 189. Here, there is future conduct to deter inasmuch as the United States continues to issue permits for offshore deepwater drilling.

The interest in penalties in the instant case is stronger than in *Laidlaw* since the civil penalties here go not into the general Treasury but to the federal Oil Spill Liability Trust Fund, which is dedicated to respond to oil pollution disasters. 33 U.S.C. § 1321(s). Therefore, the imposition and amount of civil penalties in this action will impact Sierra Club's interests.

*Laidlaw* further supports recognizing Sierra Club's interest because it emphasized that civil penalties under the Clean Water Act are similar to punitive damages. 528 U.S. at 197 (Stevens, J., concurring). Punitive damages punish the actor not just for past conduct, they have a deterrent effect on its future conduct as well as a general deterrent effect on similar conduct by others. *Wesson v. United States,* 48 F.3d 894, 899 (5th Cir. 1995). *See also Lacoste v. Crochet*, 751 So. 2d 998, 1007 (La. Ct. App. 2000) (concurring opinion).

Sierra Club's substantial and direct interest in the imposition of civil penalties against Defendants to deter future misconduct is well established by the government's ongoing approval of deepwater drilling.[4] Furthermore, Judge Wilkinson recognized, that ongoing deepwater drilling threatens the interests of Sierra Club's members, provides the basis for intervention of right in the industry's challenge to the government's six-month drilling moratorium, and is an interest not represented by the government. As the Court stated in *Laidlaw*: "A would-be polluter may or may not be dissuaded by the existence of a remedy on the books, but a defendant once hit in its pocketbook will surely think twice before polluting again." 528 U.S. at 186. Thus, BP's argument that deterrence is irrelevant since this particular spill has been capped does not hold.

The Magistrate ignores the holding of *Laidlaw* and the Supreme Court's underlying position that penalties have a prospective deterrent effect on future actions. Instead, she attempts to cast the instant case as purely retrospective to reach the conclusion that Sierra Club does not fall within the zone of interest of penalties. Order 11, 14. The Magistrate attempts to do this first by making the inconsequential distinction between *Laidlaw* and the instant case that, in *Laidlaw*, the defendants came into compliance with their permit after the commencement of litigation. In *Laidlaw*, that fact is important only because the CWA citizen suit provision, § 505, under which that case was brought, requires that a defendant's violation be ongoing at the time a citizen plaintiff initiates an action. The Magistrate also relies on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106-07 (1998), for the proposition that citizen suit plaintiffs lack standing to seek civil penalties for violations that have abated at the time of suit.

Importantly, Sierra Club has not initiated a citizen suit and does *not* bring this intervention motion pursuant to CWA § 505, 33 U.S.C. § 1365; the instant case was brought by the United States under CWA § 311, which does not have that same "ongoing violation"

---

[4] Eighteen permit applications for deepwater drilling are pending approval with the government.

14

requirement. In fact, it is precisely because Sierra Club cannot bring a citizen suit for penalties under CWA § 311 that it is moving for intervention under Rule 24(a)(2), in order to protect its interests in the imposition of civil penalties against BP. The Magistrate's attempt to cast this case, and thus the assessment of penalties, as exclusively retrospective is misplaced. As such, the distinction between this case and *Laidlaw* is irrelevant in determining whether Sierra Club falls within the zone of interest of penalties. Penalties are prospective and have a deterrent effect. As described in detail above, Sierra Club and its members have a substantial and particularized interest in penalties that are directed at oil spill cleanup and restoration, and that serve to deter future actions that could lead to another catastrophic spill event.

## III.   Disposition of this Action may, as a Practical Matter, Impair or Impede the Sierra Club's Interests

The Magistrate also erred in concluding that Sierra Club has not demonstrated that it is so situated that the disposition of the action may, as a practical matter impair or impede its ability to protect its interests. Order 15. An intervenor as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the intervenor's ability to protect that interest. Fed. R. Civ. P. 24(a)(2) (emphasis added). The Court should "look to the 'practical consequences' of denying intervention …." *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Such an inquiry "is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (quoting *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). Sierra Club meets this standard in several respects.

Sierra Club's interests would be impaired by the assessment of anything less than the maximum amount of penalties in this case because that would fail to fully deter BP and others from engaging in similar future conduct. The United States has not stated an intent to seek

15

maximum penalties against Defendants. Nor has it denied that it would <u>not</u> make all of Sierra Club's arguments that could lead the court to assess maximum penalties, such as those pertaining to BP's overuse of dispersants. Therefore, Sierra Club's absence from this litigation may impair or impede its interests in seeing the maximum amount of penalties assessed.

Sierra Club also has an interest in ensuring that any resolution of this matter, including settlement, adequately protects Sierra Club's interests, holds the responsible parties fully accountable for the injuries to the natural resources of the Gulf of Mexico, and assesses penalties at a level that will deter any future illegal discharges of oil into the Gulf of Mexico. The outcome of this action will determine whether there is sufficient general and specific deterrence of similar actions in the future. If the relief obtained is not sufficient, this may impair Sierra Club's interest in enjoying and protecting these ecosystems and others impacted by deep water drilling.

It is unavoidable that determinations of issues in this litigation would have direct consequences on Sierra Club's legal actions against the United States on issues directly related to this litigation. As described in more detail in Section IV C *infra*, Sierra Club is a party in several other pending actions related to the oil spill disaster, including challenges to the United States' approval of BP's Oil Spill Response Plan, ongoing approval of Exploration Plan drilling permits in the Gulf of Mexico, and the large-scale use of dispersants. Because the United States is forced to defend its actions against Sierra Club on issues related to Defendants' culpability in this litigation, Sierra Club's absence in this litigation could, as a practical matter, impair or impede its interests on these issues as well. Intervening as a plaintiff in the instant lawsuit will enable Sierra Club to ensure that conflicting or inconsistent results are not reached in the instant case and these overlapping actions.

**IV.    Sierra Club's Interests Are Not Adequately Represented in this Action by the
         United States**

The Magistrate's conclusion, that the Sierra Club has not demonstrated an adversity of

interest to meet the adequate representation standard for intervention, is in error. Order 18. The

Magistrate reaches this conclusion by relying on the fact that Sierra Club does not contend that

there is collusion. A lack of collusion however does not mean that the putative intervenor fails to

overcome the standard for adequate representation.

As an initial matter, U.S. Supreme Court and Fifth Circuit authority establish, where the

government is the plaintiff, "[T]he requirement of inadequacy of representation is satisfied if the

applicant shows that representation of its interests 'may be' inadequate and ... the burden of

making that showing is minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538

n.10 (1972). *See also Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), stating: "The

government must represent the broad public interest, not just the economic concerns of the

timber industry. *Given the minimal burden on the movants to satisfy this requirement*, we

conclude that the government's representation of the intervenors' interest is inadequate." *Id.* at

1207-08 (emphasis added).[5]

In *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996), as the Magistrate lays out,

the court held that there is a presumption of adequate representation when the putative

representative is a governmental body, but that presumption is overcome when the applicant

shows "that its interest is in fact different from that of the [governmental entity] and that the

interest will not be represented by [it]." *Id.* at 1005. A presumption of adequate representation

---

[5] *See, e.g., Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528-29 (9th Cir. 1983) (To assess "adequacy of representation, we consider several factors, including whether the Secretary will … make all of the intervenor's arguments, whether the Secretary is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected … there is no indication of collusion or of any other conduct detrimental to the applicant's interest. Nevertheless, such a showing is not required.").

also arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit, but that is overcome when the applicant shows "adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* Applying these standards shows that the United States does not adequately represent Sierra Club in this case. Although Sierra Club does not show collusion, it demonstrates that the United States was complicit in the events leading up to the spill and that the posture of related litigation pits the United States against Sierra Club on matters directly related to the instant litigation. This unequivocally demonstrates adversity of interest on the part of the United States.

### A. Sierra Club's Interests Are In Fact Different than that of the United States

First, as Sierra Club has set out over and over again, its interests are different than that of the United States and, therefore, the first presumption set out in *Edwards* is met. This difference is further illustrated by the United States' pattern, practice and policy of indifference to regulating BP's offshore oil drilling that contributed to this disaster, and that undermines its credibility to now diligently prosecute the party it was charged with regulating. Moreover, the government's representation of all the people (as the United States and BP argue) means that it does *not* represent Sierra Club's unique interests.[6] In addition, neither the United States nor BP rebutted the inarguable point that Sierra Club, unlike the government and the U.S. Department of Justice, is not subject to shifting politics and policies, which further supports the finding that the government's interests differ from Sierra Club's.

---

[6] *See Mausolf v. Babbitt,* 85 F.3d 1295, 1303 (8th Cir. 1996); *See also Sierra Club v. Robertson*, 960 F.3d 83, 86 (8th Cir. 1992) (government did not represent Sierra Club since it represents all citizens, has an interest in promoting the economy, and "protecting its tax revenues.").

B.     **The United States' Complicity in the Events Leading up to the Spill Demonstrate Adversity of Interest**

Second, the adversity of interests exhibited by the United States' complicity leading up to and in the wake of the disaster, and its hostile posture in other related litigation directly connected to matters in this action meets the second presumption under *Edwards*. Adversity of interests in this case is especially acute given that the United States approved BP's phony Oil Spill Response Plan.[7] That Plan was woefully inadequate on its face for a multitude of reasons (See Sierra Club's memo in support at 18-19 [doc. 1115-1]), and as a result, the oil, *totaling approximately 200 million gallons,* continued to spew into the Gulf for nearly *five months* before the government and BP could devise a plan to shut it off.

Thus, it appears that the United States was complicit in this inadequate Plan and is culpable with BP for its failure. At a minimum, it was arbitrary and capricious for the United States to approve it, and this exhibits negligence or indifference by the federal agency charged with overseeing it. Therefore, it is very unlikely that the United States will raise the issue of improper conduct by BP or others in the preparation, review or approval of the plan, despite the relevance of this process to assessing civil penalties against BP to penalize it for its lack of planning and response to the largest oil spill in U.S. history.

The United States' position, that the Plan is not relevant to defendants' liability and that any allegation of the United States' culpability is not at issue in the CWA penalty action, is plainly wrong. In making these assertions, the United States has pointedly ignored the Plan's

---

[7] Since the Deepwater Horizon disaster, the government has changed its practice of approving new drilling without conducting Oil Spill Response Plan approvals. Instead, the government has approved new drilling using a temporary, two-year certification that lacks any formal analysis or approval of a drilling operator's oil spill response capabilities. Rather, it relies simply on the operator's own certification that it can adequately respond to a spill event. Based on these new facts, Sierra Club has moved to voluntarily dismiss, without prejudice, its lawsuit challenging the United States' approval of BP's Oil Spill Response Plan, and is presently considering filing a new lawsuit challenging the use of the less rigorous two-year drilling certification and the government's failure to approve Oil Spill Response Plans prior to drilling.

relevance in the CWA § 311 action. CWA § 311 provides for penalties based on "the degree of culpability involved, … any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require." 33 U.S.C. § 1321(b)(8). This clearly brings the adequacy of the Oil Spill Response Plan into issue as an aggravating factor in the CWA § 311 claims. The United States further argues that compliance with the Plan is not a defense in the OPA action. Order 18. Even if the Plan cannot be used as a defense under OPA, it can be used as a defense or mitigating factor under the CWA and is therefore relevant here. BP did not deny that it would raise the United States' approval of the Plan or its compliance with it as a mitigating factor in its defense. It is telling that the United States argues its approval of the Oil Spill Response Plan is "not relevant" since that betrays its intent to not argue the inadequacy of the Oil Spill Response Plan in this case.

Moreover, whether BP and its affiliates were grossly negligent may not be an issue in the OPA claims since BP waived the $75 million cap on those claims that would apply in the absence of gross negligence. 33 U.S.C. § 2704(a)(3) and (c)(1); *Order re Applicability of Limit of Liability under Oil Pollution Act of 1990 to BP Exploration & Production Inc.*, MDL no. 2179, Dec. 23, 2010 [doc. 925]. However, that order does not affect any other Defendant's defenses on OPA liability and it does not mean BP and its affiliates have admitted anything about their conduct. To Sierra Club's knowledge, there has been no waiver of the "gross negligence" element of civil penalties under CWA § 311(b)(7)(D) by any defendant and that will be an issue in the CWA claims. Thus, the approval and use of the Plan as a mitigating factor to limit penalties underscore the United States and Sierra Club's adversity of interests.

The Magistrate's order also discounts Sierra Club's adversarial position to the United States related to the approval and use of dispersants. Order 18. The United States is plainly wrong in arguing that dispersant approval is not relevant to willful misconduct or gross negligence because its claims relate to the actions which led to the release and not those taken to remove the oil from the water once it was discharged. *Id.* First, as described above, the Oil Spill Response Plan that was approved by the United States as a *prerequisite to drilling*, relies on the use of dispersants as a mechanism for clean up. Notably, at the time of approval, the United States knew that dispersants were only 33 percent effective, but nonetheless approved a Plan (and drilling) that assumed an effectiveness rate of 90 percent. In its petition for rulemaking and in its CWA notice of intent to sue the U.S. Environmental Protection Agency, Sierra Club discusses the harmful impacts of dispersants that were known or should have been known by the government and BP prior to their unprecedented approval and use in this case.

Second, OPA regulations require the restoration of natural resources damages caused by the event itself as well as damages caused by any cleanup or response activities. 15 C.F.R. § 990.51(e). The large-scale use of dispersants has had adverse impacts on the natural resources of the Gulf of Mexico and therefore damages assessed under OPA must encompass those resulting from dispersant use. Reports indicate the dispersants may have caused more harm than benefit to the Gulf's ecosystems, exacerbating natural resource damages to sensitive deep-water ecosystems, causing adverse health effects to cleanup workers and coastal residents, and causing uncertainty over the safety of Gulf seafood. *See* Exhibits A-G.

Given the impacts of dispersants on the natural resources, the approval and use of dispersants both in the lead up to the spill and during the response are in fact relevant as aggravating and/or mitigating factors in the assessment of gross negligence under the United

States' CWA and OPA claims. However, due to its role in this, the United States is unlikely to raise or press the improper use of dispersants in assessing civil penalties against BP.

### C. The Posture of Litigation Related to this Action Pits Sierra Club and the United States as Adversaries

Furthermore, Sierra Club and the United States are adversaries in related litigation.[8] The Fifth Circuit has held that the existence of other overlapping lawsuits indicates a lack of representation by the government, and the government's representation of the broad public interest is not enough. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 380-81 (5th Cir. 2001) (finding intervention of right in a federal Freedom of Information Act case because the government's representation was inadequate due to its contrary position to the environmental group in another related lawsuit; concluding that the government's representation was inadequate given the organization's minimal burden of showing inadequate representation and the government's duty to represent the broad public interest, not just that of the environmental group). Sierra Club is engaged in litigation challenging the United States' approval of Exploration Plan drilling permits in the Gulf of Mexico without conducting the legally required National Environmental Policy Act analyses. This litigation pits Sierra Club against the United States on offshore drilling issues, forcing the United States to defend its actions against Sierra Club on issues related to Defendants' culpability. BP's argument that these actions do not

---

[8] Sierra Club's related cases and other legal actions include: *Gulf Restoration Network (GRN), Florida Wildlife Federation, and Sierra Club v. Dep't of Interior*, (11th Cir. 2011), challenging the government's May 2011 approval of Shell's deepwater exploration plan; *Hornbeck Offshore Services, LLC v. Salazar*, E.D. La. no. 10-1663, and *ENSCO Offshore Co. v. Salazar*, E.D. La. no. 10-1941, in which Sierra Club successfully intervened as of right under Rule 24(a)(2) ("The intervenors assert a substantial interest in the subject moratoria. Their interest may be impeded if they cannot protect it in this case, and no other party adequately represents their particular interests."); *GRN and Sierra Club v. Salazar*, Case No. 10-60417 (5th Cir. 2010), challenging the MMS approval of oil drilling Exploration Plans; *Sierra Club v. Dep't of Interior*, Case No. 10-60411 (5th Cir. 2010), challenging approval of five drilling exploration plans in areas of relatively untested deep water in the Gulf of Mexico; Petition to the U.S. EPA to rewrite dispersant approval regulations; CWA Notice of Intent to file suit for failure to identify the waters in which the dispersants can be applied and the quantities at which dispersants can be applied safely.

overlap with the instant action based on the simple fact that they are brought under different statutes is nonsensical. The issues in these cases are clearly intertwined and implicate the ability of the United States to adequately represent Sierra Club's interests in this action. The adversarial posture of Sierra Club and the United States in related litigation supports intervention of right.

Contrary to the Magistrate's conclusion, Sierra Club has made a strong showing of inadequate representation. Because Sierra Club is making claims against the United States in related litigation, and expects to make arguments that the United States and BP were complicit in events leading up to the spill and the deficient remediation afterwards, its interests are adverse to those of the government. Moreover, the United States ignores the conflict of interest established by its numerous contracts with oil companies, including BP, as set forth in Sierra Club's opening memorandum at 21. This business relationship, worth billions of dollars, along with the government's continued approval of additional offshore deepwater drilling, provide a disincentive for the United States to seek the maximum punitive civil penalties against BP.

In conclusion, when a party possesses interests adverse to those of a prospective intervenor, that party cannot adequately represent the intervenor's interests. *See Sanguine, Ltd. v. United States Department of Interior,* 736 F.2d 1416, 1419 (10th Cir.1984) (an applicant may meet the burden of showing inadequate representation by showing that the representative has an interest adverse to the applicant). That succinctly describes the situation in this case; Sierra Club has more than demonstrated that the United States will not fully or adequately represent its interests in the instant litigation. In this respect, the Magistrate's order is in error. Order 18-19.

**V.      Sierra Club Should be Granted Permissive Intervention Under Rule 24(b)(1) as an Alternative to Intervention of Right**

Under Fed. R. Civ. P. 24(b)(1)(B), the Court may allow permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law

or fact." "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Sierra Club's claims have questions of law and fact in common with the instant litigation. The facts on these claims are described above and pled in Sierra Club's Complaint in Intervention.

In addition, Rule 24(b) "dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *San Juan County, Utah v. U.S.*, 420 F.3d 1197, 1206 n.4 (10th Cir. 2005). Rather, courts consider whether intervention will likely contribute to developing the factual issues and to reaching a just and equitable adjudication of the legal issues presented. *Utah ex rel. Utah State Dept. of Health v. Kennecott Corp*., 232 F.R.D. 392, 398 (D. Utah 2005). Given Sierra Club's unique perspective with respect to the oil spill and the parties' response to it, Sierra Club's intervention would aid and enhance the Court's understanding of the underlying legal and factual issues and thereby assist the efficient resolution of this action. Sierra Club can add its knowledge and expertise to help develop and clarify the factual and legal issues in this lawsuit, and will add to the proceedings by asserting arguments in support of civil penalties that the United States will not make.

Further, Sierra Club's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Sierra Club has moved expeditiously to intervene and has made clear its intention not to prolong this litigation, *e.g.*, by not duplicating discovery and to abide by the same schedule as the existing parties. The United States is concerned that it would lose "control" of the litigation if intervention were granted; however, as Sierra Club has stated before, it would gladly confer with the United States prior to filings, discovery and argument to avoid conflict and redundancy, and defer to the United States as the lead plaintiff when appropriate.

Finally, contrary to the Magistrate's conclusion, *amicus* participation would be wholly

insufficient given Sierra Club's substantial interests in protecting the interests of its thousands of members connected to the natural resources that are the subject of this action and its interests in related actions. Given the divergence between Sierra Club and the United States, and its adversarial posture in related actions, Sierra Club's arguments likely will not be prosecuted as vigorously as they would be if Sierra Club is granted leave to intervene. First, by engaging in independent discovery Sierra Club might uncover facts affecting the amount of penalties or injunctive relief in a manner favorable to it or that would materially influence any settlement. Secondly, the United States and Defendants may each be reluctant to advance an argument that would support a finding of fault against its opponent, but might, at the same time, expose that party to increased culpability. Finally, since Sierra Club is pressing claims against the United States in other ongoing litigation, there exists a genuine possibility that, in the absence of intervention, the existing parties will "bargain away" Sierra Club's interests rather than vigorously represent those interests at the possible expense of their own. *Amicae* status would deny Sierra Club any discovery, allow Sierra Club only one chance at briefing and no right to participate at any other stage of the litigation, much less any right to appeal. Sierra Club's ability to submit public comment is also wholly inadequate and no substitute for intervention. Only intervention, with party status, would enable Sierra Club to fully develop and present its case in support of maximum civil penalties against Defendants.

## CONCLUSION

For the reasons set forth above, the Magistrate's order denying Sierra Club's intervention into this action should be reversed. Sierra Club should be granted intervention of right under Rule 24(a)(2). In the alternative, Sierra Club should be granted permissive intervention under Rule 24(b)(1)(B).

**(Attorney's Signature Appears on the Following Page)**

Respectfully submitted,

**s/ Eric E. Huber**
Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th St. Ste. 102W
Boulder, CO 80301
Tel: (303) 449-5595
Fax: (303) 449-6520
eric.huber@sierraclub.org

**s/ Devorah Ancel**
Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Tel: (415) 977-5721
Fax: (415) 977-5793
devorah.ancel@sierraclub.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of July, 2011.

I HEREBY CERTIFY that the above and foregoing was served on Defendant QBE Underwriting Ltd., Lloyds Syndicate 1036 via first class U.S. Mail, postage prepaid, on this 25th day of July, 2011, to George Gilly and Marty McLeod at Phelps Dunbar LLP Canal Place 365 Canal Street, Suite 2000 New Orleans, Louisiana 70130-6534.


**s/ Eric E. Huber**
Eric E. Huber