# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
alangan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

July 22, 2011

**Via E-mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

> **RE:   In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179**

Dear Judge Shushan:

This letter is submitted in response to your July 19, 2011 order [Dkt. 3365] overruling Halliburton's main argument, on timeliness of BP's requested discovery, but directing BP to respond to Halliburton's secondary complaint regarding BP's Third Set of Requests for Admission.  Specifically, BP writes to address Halliburton's complaint that "the unreasonable volume and scope of the Third RFAs – 510 requests – renders the RFAs unreasonably burdensome and untimely."  [Dkt. 3318]  Halliburton's motion and brief did not raise any issue about the volume or scope of BP's Third Set of Interrogatories (comprising 19 interrogatories).

## I.   Requests for Admission Promote Efficiency

Under the Federal Rules, a party may serve "a written request to admit ... (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  *See* Fed. R. Civ. P. 36(a)(1).  The Advisory Committee Notes explain that requests for admission serve "two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."  *See* Fed. R. Civ. P. 36 advisory committee's note (1970 Amend.).  Accordingly, requests for admissions promote efficiency by "avoid[ing] both a delay during the trial and the unnecessary expense of proving a matter which is not in dispute."  *Berry v. Federated Mut. Ins. Co.*, 110 F.R.D. 441, 443 (N.D. Ind. 1986).

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 2

      The thrust of Halliburton's complaint is related to the number of requests for admission. Neither the Federal Rules of Civil Procedure nor the local rules for the Eastern District of Louisiana set a presumptive limit on the number of requests for admission that may be propounded by a party. No such limits were set by any Pretrial Order in this proceeding. Interrogatories were limited by PTO #11 to 50 per party (defined to include related entities); but no such limit was established for RFAs. Indeed, for some perspective, BP has currently been served with 485 RFAs in these proceedings. Clearly the other MDL 2179 parties do not think that having to answer a relatively large number of RFAs is excessive.

      More generally, although Rule 26(b)(2)(A) allows courts to "limit the number of requests [for admission] under Rule 36," courts have recognized that a large number of requests for admission may be entirely appropriate in complex cases such as MDL 2179. *See*, *e.g.*, *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 381611, at *6 (D. Kan. Jan. 25, 2011) (denying motion for protective order where defendant propounded 606 requests for admission and complexity of case justified the extent of requests propounded). For example, in *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 3171768 at *2 (D. Kan. Oct. 29, 2007), multiple defendants served a total of 1,351 requests for admission on the plaintiff, 734 of which were propounded by a single defendant. Despite the number of requests, the court denied plaintiff's motion for protective order, noting that the case was a "multi-defendant, complicated antitrust conspiracy case." *See id* at *3. The court found that the extent of requests propounded was neither unreasonable nor surprising given the multiple allegations of conspiracy, the complexity of the claims, and the hundreds of millions of dollars at stake. *See id.*; *see also Photon, Inc. v. Harris Intertype, Inc.*, 28 F.R.D. 327 (D. Mass. 1961) (permitting requests covering 114 legal-size pages and calling for 704 separate answers, sustaining some objections based only on vagueness); *Moscowitz v. Baird*, 10 F.R.D. 233 (S.D.N.Y. 1950) (ordering responses to 265 requests). Rather than an arbitrary limit to the number of requests for admission allowable, the nature and complexity of the issues in the case is the better guide. *See Heartland*, 2007 WL 3171768 at *3 (number of requests reasonable given the "complicated" case); *Moscowitz*, 10 F.R.D. at 234 (number of requests not unreasonably large given nature of the case).

      The absence of an arbitrary limit on the number of requests for admission allows the parties to a complex litigation such as this matter to reduce the issues for trial in an efficient manner without resorting to more resource-consuming forms of discovery such as depositions. This is consistent with the enunciated purpose of requests for admission and the spirit of the Federal Rules.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 3

**II. BP's Requests to Halliburton**

  1. Admissibility Requests

Halliburton admits that the purpose of Rule 36 is "to winnow down the facts for trial, so that the parties may focus their energies and resources on disputed matters." BP agrees. And, as described above, the Federal Rules specifically provide for use of requests to establish the "the genuineness of any described documents." Fed. R. Civ. P. 36. For this reason, courts have found that requests for admission are particularly useful for defining "which documents will have foundational problems and which will not." *See*, *e.g.*, *Heartland*, 2007 WL 3171768 at \*5 (noting that "parties will eventually be required to consider the authenticity of one another's exhibits prior to trial" and that it is not more burdensome for the parties to do so in response to Rule 36 requests to admit); *Estate of Manship v. United States*, 232 F.R.D. 552, 559-60 (M.D. La. 2005) (allowing requests to admit in excess of local limit where purpose was authentication of certain documents); *Berry*, 110 F.R.D. at 442-43 (requests to admit the foundation and authenticity of 244 documents, including insurance policy, letters, office memoranda, checks and other documents, were appropriate); *United States v. Watchmakers of Switzerland Info. Ctr., Inc.*, 25 F.R.D. 346, 347 (S.D.N.Y. 1960) (holding that requests for admission concerning genuineness of documents in a case with voluminous documents is "proper" and "desirable").

To that end, half of the challenged requests (246 of the 510) that were served on Halliburton were requests to admit the admissibility of Halliburton documents at trial.[1] (A copy of the Third Set of Requests for Admission is submitted herewith for the Court's review.) These requests should not be difficult for Halliburton to answer as the substantial majority of these documents are Halliburton's own business records produced in this litigation. A response to these requests will help "winnow down the issues for trial" so that the parties may focus their effort on disputed matters.

  2. Clean-up Requests

The remaining half of BP's Third Set of Requests for Admission are fairly considered "clean up" discovery in nature as the parties have understood the Court's order. The matters covered in these requests relate to matters raised by Halliburton's documents or in the recent depositions. It is also noteworthy that the Court recently denied BP's request to depose five Halliburton deponents who could have testified as to some of these issues, (7/29/2011 Order

---

[1] These requests for admission are particularly appropriate in these proceedings, where deposition time is limited and better spent questioning witnesses regarding their underlying factual knowledge than establishing the foundation of a document.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 4

Regarding Objections To Depositions, Doc. 3090), making BP's requests for admission even more appropriate. The following chart sets forth the general categories of topics:

| RFA Nos. | General description |
|---|---|
| 1-3 | These requests relate to Halliburton's mud logging activities during the cement job and confirm facts learned from Halliburton witnesses during depositions. |
| 4-17 | These requests relate to Halliburton's design, testing and stability of the foam cement, and confirm facts learned from Halliburton witnessed during depositions. |
| 19-27 | These requests relate to Halliburton's presentation at the morning meeting on April 20, 2010 that the cement job was pumped successfully, and confirm facts learned from Halliburton witnesses during depositions. |
| 28-31 | These requests relate to actions that Halliburton did not take based on the number of centralizers to be run, and confirm facts learned from Halliburton witnesses. |
| 32-40 | These requests relate to the purchase, storage and use of dry cement blend on the *Deepwater Horizon*, and clarify issues raised in depositions about the dry blend. |
| 41-58 | These requests relate to Jesse Gagliano's knowledge of and actions taken in response to the cement lab test results. These requests seek a response on matters that Mr. Gagliano did not testify to at his deposition. |
| 59-83 | These requests relate to cement jobs that Halliburton has performed for other operators where the operator has made similar design and operation decisions as BP. These requests address topics raised during the depositions and confirm facts from Halliburton witnesses. |
| 84-95 | These requests relate to the foam cement jobs performed by Halliburton for other operators at various depths, and relate to documents produced by and testimony by Halliburton witnesses. |

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 5

| RFA Nos. | General description |
|---|---|
| 96-181 | These requests relate to Halliburton's advertising and technical literature (with a focus on foam cementing and OptiCem) and seek to clarify whether these technologies were used at the Macondo well.  Many of these requests include direct quotes from Halliburton's documents. |
| 182-187 | These requests relate to Halliburton's policies and whether Mr. Gagliano followed those policies.  These requests relate to documents produced by Halliburton and matters that Mr. Gagliano did not testify to at his deposition. |
| 188-190 | These requests confirm that Halliburton had not previously used D-Air 3000 in a foam cement job at certain depths, and did not inform BP of that fact.  These requests confirm the testimony of Halliburton witnesses. |
| 191-212 | These requests relate to Halliburton's OptiCem and post-job reports and confirm facts from the testimony of Halliburton witnesses. |
| 213-218 | These requests relate to the morning meeting on April 20, 2010 and that no Halliburton employee expressed concerns to BP on April 19-20, 2010.  These requests confirm the testimony of Halliburton witnesses. |
| 219-230; 251-253 | These requests relate to whether Halliburton had the inputs required to run the OptiCem program and address testimony by Halliburton witnesses. |
| 231-250 | These requests address Halliburton's document production and the positions it has taken in recent meet-and-confers. |
| 254-257 | These requests address Halliburton's document production and its position that it will not produce board minutes even if they contain requested information. |
| 258-264 | These requests confirm Halliburton's representations to Congress and other investigative bodies that it would release the results of its internal investigation.  In response to Halliburton testimony that the results may not be released, these requests establish that portions of the investigation have been selectively released. |

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 6

| RFA Nos. | General description |
|---|---|
| 265-510 | These requests seek admission that certain documents are admissible at trial under the business records exception or otherwise. |

      Certainly Halliburton cannot have its cake and eat it too. In contrast to BP's third set of requests for admission and interrogatories, Halliburton served *all* of its requests for admission and *two-thirds* of its interrogatories in late June. Specifically, on June 21, 2011, near the end of the "clean-up" discovery period that Halliburton wants to invoke as a limit on BP, Halliburton itself served 192 requests for admission and 38 interrogatories. Halliburton itself waited until well into the last days of Phase 1 fact discovery yet complains when BP does the same.

      The Court has already overruled Halliburton's primary argument that BP's written discovery was not timely served. It should likewise make short work of Halliburton's backup claim—made in passing—that the discovery is "burdensome." In reviewing the purpose and type of requests that BP has served, as well as the significant written discovery served in late June by Halliburton on BP, the Court should find that this discovery promotes the efficient disposition of issues from trial and follows the spirit of the Court's orders to conclude discovery in time for the Phase I trial in February 2012. As such, the Court should deny Halliburton's request and order it to respond to BP's Third Set of Requests for Admission.

      Thank you for the Court's consideration of this issue.

                                               Sincerely,

                                               J. Andrew Langan, P.C.

cc:    Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill, Esq.
        Hon. Attorney General Luther Strange
        Cory Maze
        Donald E. Godwin

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2011
Page 7

    James P. Roy
    Stephen J. Herman
    Mike O'Keefe
    Robert Cunningham