

DONALD E. GODWIN - SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

GodwinRonquillo.com

July 25, 2011

Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana  70130

      Re:    In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179 – Reply on HESI's Motion for Protective Order as requested by Order, Rec. Doc. 3365

Dear Judge Shushan,

      This letter shall constitute Halliburton Energy Services, Inc.'s ("HESI") reply pursuant to your July 19, 2011 order regarding BP's Third Request for Admissions to HESI ("Third RFAs") and BP's Third Set of Interrogatories to HESI ("Third Interrogatories").

## I.    BP Utilized its 50 Allowed Interrogatories in its First and Second Set of Interrogatories.

      BP incorrectly claims that HESI's motion and brief do not complain about the volume and scope of the Third Interrogatories.  July 22, 2011, Ltr. at 1.  To the contrary, HESI explicitly reserved the right to complain about the scope and number of both the Third RFAs and the Third Interrogatories.  *See* Rec. Doc. 3318 at 1 n.1; Rec. Doc. 3318-1 at 1 n.1.  The Court should issue a protective order regarding the Third Interrogatories because they are cumulative and they exceed the numerical limit allowed by the Court.

      The Federal Rules of Civil Procedure limit the number of interrogatories and prevent parties from escaping that limit by simply including discreet subparts.  "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, *including all discrete subparts*." FED. R. CIV. P. 33(a)(1) (emphasis added). "[P]arties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." FED. R. CIV. P. 33(a) Adv.

July 25, 2011
Page 2

Comm.'s Note, 1993 amds. Judge Barbier increased the number of interrogatories to 50 given the complexity of this MDL proceeding. *See* Pre-Trial Order No. 11 at V.D. Rec. Doc. 569.

Interrogatory subparts should be counted as separate interrogatories when a "full and complete answer" to one will not answer the other. *See Nottingham v. Murphy Oil USA, Inc*., No. 07-4211, 2010 U.S. Dist. LEXIS 36758, *3-5 (E.D. La. Mar. 19, 2010); *Estate of Manship v. United States*, 232 F.R.D. 552, 554-55 (M.D. La. 2005); *Dimitrijevic v. TV&C GP Holding Inc*., No. H-04-3457, 2005 U.S. Dist. LEXIS 41399, *8-11 (S.D. Tex. Aug. 24, 2005). If a subpart is not "factually subsumed within and necessarily related to the primary question" such that a party can "fully and completely" answer the first without answering the subpart, then the subpart shall count as a separate interrogatory. *Nottingham*, 2010 U.S. Dist. LEXIS 36758, *4-5; *Estate of Manship*, 232 F.R.D. at 555. In other words, if a party can answer the first question "fully and completely" without answering the second question, the second is independent of the first and should be counted as a separate interrogatory. *Estate of Manship*, 232 F.R.D. at 555.

Although BP's First Set of Interrogatories are numbered 1 to 23, several have numerous subparts. Similarly, BP's Second Set of Interrogatories, numbered 24 to 31, contain numerous subparts. Attached as Exhibit A is a chart analyzing the number of interrogatories and discreet subparts in accordance with the "full and complete answer" test. This analysis reveals that BP clearly exceeded its limit of 50 interrogatories in its Second Set of Interrogatories. Utilizing a conservative count of subparts, BP's First and Second Sets of Interrogatories add up to 60. BP's First and Second Sets of Interrogatories are attached as Exhibits B and C.

BP's Third Interrogatories purport to be numbers 32 to 50, however, they contain the same discreet subpart proliferation as the First and Second Sets. Additionally, the Third Interrogatories overlap with interrogatories already answered. *E.g., cf*. Interrog. No. 32 *to* Interrog. No. 13 (Gulf of Mexico foamed cement jobs); Interrog. Nos. 36 and 43 *to* Interrog. No. 25 (Gagliano communications); Interrog. No. 45 *to* Interrog. Nos. 24 and 26 (real-time data monitoring); Interrog. No. 46 *to* Interrog. No. 13 (foamed cement jobs).

A court may protect a party against answering interrogatories that are excessive and lack appropriate focus by overlapping with previously propounded written discovery. *See Nottingham*, 2010 U.S. Dist. LEXIS 36758, *5-7. Because BP's Third Interrogatories exceed 50 and many of the them overlap with the First and Second Interrogatories, this Court should grant a protective order and relieve HESI of any obligation to respond to the Third Interrogatories.

**II.    The Third RFAs are excessive, abusive, burdensome, and do not serve as "clean up" questions.**

BP's First and Second RFAs, attached hereto as Exhibits D and E, total 320. BP now wants HESI to answer an additional 510 "clean-up" RFAs, for a grand total of **830**. Because BP's Third RFA's are excessive, abusive, and burdensome — particularly because of their late service — this Court should grant HESI a protective order against answering them.

July 25, 2011
Page 3

BP complains that it has been served with 485 RFAs from all parties — not a surprising number for a responsible party. BP is correct that this number offers some "perspective" to HESI's Motion for Protective Order. The perspective is that BP's additional 510 requests are excessive. The Third RFAs alone exceed the 485 total RFAs propounded upon BP by all parties. Excluding the Third RFAs, HESI — who is not a responsible party — has answered 574 RFAs from all parties.

BP claims its excessive requests are proper as "clean up" discovery because they purportedly relate to matters raised in documents or information BP could not obtain because the Court would not allow the depositions of five additional HESI employees. Ltr. at 3-4. Yet, BP fails to identify a single document justifying the 510 RFAs or specific information obtainable only through these excessive RFAs.[1]

Many of the topics of the Third RFAs overlap with those of the First and Second RFAs. Believing there is no limit to the number of RFAs it may ask, BP propounds RFAs that are slightly different iterations of others that HESI has already answered. Exhibit F provides a few examples of the overlapping iterations. These additional RFAs are burdensome, oppressive, cumulative, and unlikely to provide a benefit that exceeds the burden on HESI in answering them. *See* FED. R. CIV. P. 26(b)(2)(C)(i), (iii). Like the Third Interrogatories, the Third RFAs lack focus and overlap prior RFAs that HESI has already answered. Such redundancies do not serve to narrow the issues for trial and are improper.

The Third RFAs also ask questions inappropriate for this form of discovery, such as asking HESI to admit or deny language that appears to be quoted or paraphrased from HESI documents (without even identifying any such documents). *See* Third RFAs Nos. 96-97, 103-14, 118-22, 124-27, 129, 131-33, 135-38, 142-46, 158-59, 161-62. Numerous RFAs ask HESI to admit that certain statements are or are not in certain documents that can speak for themselves. *See* Third RFAs Nos. 191-212. Other requests seek to address discovery issues better left to meet and confers or weekly status conferences, such as the completeness of production or the existence of certain information. *See* Third RFAs Nos. 231-264.

Finally, a significant portion of the Third RFAs seek admissions that specific deposition exhibits "should not be excluded from evidence by the hearsay rule." *See* Third RFAs Nos. 265-510. Although Rule 36 allows RFAs to establish "the genuineness of any described document," these 245 RFAs do no such thing. Rather, the RFAs seek a waiver of hearsay objections. BP's authority on this point is inapposite, as those cases concern proper requests for genuineness, not waivers of hearsay objections. *See Estate of Manship*, 232 F.R.D. at 559 n.9 (request admission that documents are "a true and correct copy"); *Berry v. Federated Mut. Ins. Co*., 110 F.R.D. 441,

---

[1] BP complains about HESI's service of its RFAs and interrogatories on BP on June 21. This discovery was in no way excessive — especially when compared to the discovery BP had previously served on HESI. At the time HESI propounded its 192 RFAs and 38 interrogatories on BP, BP had already served 320 RFAs and over 50 interrogatories on HESI.

July 25, 2011
Page 4

442 (N.D. Ind. 1986) (requesting admission that exhibit is "a true and correct copy of the original so as to dispense with any foundational authentication requirement").

  Although authentication is a foundation for admissibility, it does not establish admissibility or eliminate application of the hearsay rule. *See* FED. R. EVID. 901, 902 (authentication of documents). The Third RFAs Nos. 265-510 are clearly outside the scope of Rule 36. Moreover, this Court eliminated the need for RFAs propounded under Rule 36(a)(1)(B) by its Order Regarding Authenticity of Documents. *See* Rec. Doc. 3067. Per the Order, all documents produced by a party and used in a deposition are presumed to be authentic under Federal Rule of Evidence 901(a) unless authenticity is specifically challenged.

  Because the Third RFAs are excessive, duplicative, and seek admissions outside the scope of Rule 36, this Court should grant HESI's request for a protective order and relieve HESI of any obligation to respond to the Third RFAs.

         Sincerely,

         Donald E. Godwin

cc: Plaintiffs Liaison Counsel
   Defense Liaison Counsel
   Mike Underhill, Esq.
   Attorney General Luther Strange
   Corey Maze, Esq.
   J. Andrew Langan