*UNITED STATES DISTRICT COURT*

*EASTERN DISTRICT OF LOUISIANA*

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | CIVIL ACTION |
| | MDL NUMBER: 2179 |
| | SECTION "J" |
| THIS DOCUMENT RELATES TO: | |
| | JUDGE BARBIER |
| 10-3895, 10-3896, 10-3897, 10-4168, 10-4169, 11-58, AND ALL CASES IN PLEADING BUNDLE B4 | MAGISTRATE SHUSHAN |

**JOINT REPLY MEMORANDUM OF EMERGENCY RESPONDER DEFENDANTS IN SUPPORT OF JOINT MOTION TO DISMISS PURSUANT TO RULES 12(B)(6) & 12(C)**

## I.   INTRODUCTION

The Claimants' opposition memoranda (Rec. Docs. 3338 & 3343) completely fail to address the gravamen of the Emergency Responder Defendants' joint motion to dismiss, namely that the Emergency Responder Defendants did not owe the Claimants a legal duty as a matter of law because their alleged damages were not foreseeable.[1] Indeed, although the Claimants spend considerable time discussing the sinking of the DEEPWATER HORIZON, the Claimants do not—and cannot—attempt to explain how a reasonable boat captain could have foreseen that the

---

[1] By filing two separate opposition briefs, the Claimants have also violated Judge Shushan's Scheduling Order (Rec. Doc. 2539), which required only one "joint opposition."

act of spraying water onto and around the burning rig would *probably*, not just possibly, result directly and sequentially not only in the sinking of the rig, but also in damage to the riser and well, the loss of well control, and then an inability to stop the flow of millions of barrels of oil, eventually causing alleged economic damage months later to Claimants located tens or hundreds of miles away and with no connection at all to the DEEPWATER HORIZON or even, in most cases, to the Gulf of Mexico.

The duty/foreseeability issue is an issue of law that can and should be resolved now—no discovery is necessary—and the resolution of this issue compels granting the Emergency Responder Defendants' joint motion to dismiss.  Similarly, because the Claimants have no cogent responses to the Emergency Responder Defendants' *Robins Dry Dock* and OPA displacement arguments, both of those arguments provide additional bases for dismissal.[2]

Although it ultimately makes no difference to the outcome of any of the above legal issues, the Emergency Responder Defendants must note that the Claimants' opposition memoranda are replete with improper assertions of supposed fact and blatantly inappropriate citations to the United States Coast Guard's draft Report of Investigation into the Circumstances Surrounding the Explosion, Fire, Sinking and Loss of Eleven Crew Members Aboard the MOBILE OFFSHORE DRILLING UNIT DEEPWATER HORIZON (portions of the draft report were even attached as an exhibit to one of the opposition briefs).  The bulk of the factual

---

[2] The Emergency Responder Defendants reconfirm an assertion made in their original joint memorandum, namely that every Claimant in the above-captioned limitation proceedings has also filed a claim in the Transocean limitation proceeding.  Although the Claimants dispute this reality in one of the two opposition memoranda (Rec. Doc. 3338), the Emergency Responder Defendants attach a table to this reply memorandum as Exhibit A which shows the record document number of each claim in the Transocean limitation filed by each of the Claimants.  Some of these claims were filed in the Transocean limitation by a different attorney than the attorney representing the Claimants in these proceedings, which may explain why counsel was unaware that claims had also been filed in the Transocean limitation.

statements in the opposition memoranda are pure fabrication of counsel and are not alleged in the

individual claims (nor in the *Robin* complaint that they adopt) and, thus, the Court need not

accept such statements as true for purposes of the instant motion.[3]   Moreover, even if the

Claimants were granted leave to add all of those statements to their claims, the Court would still

not be required to accept them as true because most of them are "conclusory allegations,

unwarranted factual inferences, or legal conclusions."[4]   Additionally, it is contrary to United

States statutory law to cite, or rely upon, the factual findings or conclusions found in a Coast

Guard report of investigation, even when that report is final (which this one is not).[5]   But even in

improperly citing the Coast Guard's draft report, the Claimants have selectively omitted the

---

[3] *See Rodriguez v. Rutter*, No. 07-51423, 2009 WL 301835, at *3 (5th Cir. Feb. 9, 2009) ("It is well-established that, in deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'"); *Lovoi v. Alitalia Airlines*, No. 00-0597, 2001 WL 1287113, at *3 (E.D. La. Oct. 23, 2001) (holding that because the plaintiff did not raise the fact that she was Sicilian/American in her complaint and raised this fact "for the first time" in her opposition brief, the fact could not be considered by the court on the defendants' motion to dismiss).   There are too many examples of counsel's hyperbole to mention them all (and none of them are relevant in any event to the Court's Rule 12 analysis), but one instance stands out.   At one point, counsel says without any supporting reference that "it has been universally accepted that the riser pipe did not start leaking until after the rig sank."   Needless to say, this "fact" has not been "universally accepted."

[4] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (noting that the court cannot "accept as true conclusory allegations or unwarranted deductions of fact" in evaluating a Rule 12(b)(6) motion); *Johnson v. City of Slidell*, No. 04-1851, 2005 WL 2050291, at *2 (E.D. La. Aug. 11, 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (quotation omitted).

[5] *See* 46 U.S.C. § 6308 ("No part of a report of a marine casualty investigation . . . including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings."); *see also In re MNM Boats, Inc.*, No. 07-1938, 2009 WL 4723178, at *1 n.1 (E.D. La. Dec. 4, 2009) (Berrigan, J.) (noting that although "[a] Coast Guard Investigation Report was submitted as evidence . . . the Court deliberately did not review [it, since it] is inadmissible under 46 U.S.C. § 6308"); *Nexen Petroleum U.S.A. Inc., v. Sea Mar Div. of Pool Well Services Co.*, No. 06-3043, 2007 WL 2874805, at *4 (E.D. La. Sept. 26, 2007) (Vance, J.) (holding that the Coast Guard Report's enforcement summary is "part of the [Coast Guard's] investigative report" and "reveals the findings of fact, opinions, and conclusions of the investigation," which are inadmissible pursuant to 46 U.S.C. § 6308).

PD.5345356.1

ultimate conclusion of that draft report concerning the application of water by emergency response vessels:

> In the absence of the volume of firefighting water applied to DEEPWATER HORIZON, the MODU's structure would likely have been exposed to more extreme heat, which could have expedited a catastrophic structural failure. It is therefore not possible to conclude that the water from the firefighting vessels accelerated its sinking.[6]

In sum, the Claimants' heavy reliance on improper assertions of supposed fact and blatantly inappropriate citations to the Coast Guard's draft report should be seen by the Court for what they are—efforts to distract the Court from the fatal legal shortcomings of the Claimants' theories and arguments. Ultimately, the Claimants' opposition memoranda fail to detract from the arguments set forth in the Emergency Responder Defendants' original joint memorandum and confirm that the motion to dismiss should be granted.[7]

## II.   ARGUMENT

### A.   Claimants Fail to Respond to the Emergency Responder Defendants' Foreseeability Argument

Fundamentally, the Claimants fail to acknowledge or address what the Fifth Circuit has determined is the dispositive test of foreseeability in the context of maritime torts. As quoted in

---

[6] *See* United States Coast Guard draft Report at pg. xvi.

[7] In response to the observation that only sixty-six (66) claims have been filed in the above-captioned limitation actions, as compared to over 100,000 claims in the Transocean limitation action, the Claimants contend that they will be representatives of classes of "hundreds of thousands" of claimants one day. This is pure fantasy. The Fifth Circuit has clearly held that class actions may not be maintained in the context of limitation of liability proceedings. *See Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir. 1990) ("[A] class action may not be instituted in a limitation proceeding."). Moreover, pursuant to Court order, anyone who wished to assert a claim against the limitation petitioners was required to file a claim by April 20, 2011, and the Court has recently entered orders defaulting all potential claimants who did not meet that deadline. *See* Rec. Docs. 3197, 3198, 3199, 3200, 3204, and 3205.

PD.5345356.1

the original joint memorandum of the Emergency Responder Defendants, that test is whether a reasonably thoughtful person would anticipate a particular harm as being the "probable" result of the alleged negligent act or omission.  Thus, the issue presented by the joint motion to dismiss is whether reasonably thoughtful vessel captains should have considered it "probable" that the act of spraying water on a burning rig miles offshore would cause economic damage months later to the individuals and businesses who are the Claimants here.[8]  But the Claimants make no attempt to explain how the captains of the Emergency Responder Vessels should have reasonably foreseen that the act of spraying water onto and around the burning rig would *probably*, not just possibly, result directly in the alleged economic damages months later to Claimants located tens or hundreds of miles away and with no connection at all to the DEEPWATER HORIZON or even, in most cases, to the Gulf of Mexico.

Claimants gloss over this omission by relying on *In re Signal International, LLC*, in which a negligently moored barge broke free and allided with a bridge during Hurricane Katrina.[9]  The barge owner in that case conceded that it was generally foreseeable that a barge which breaks away from its moorings might come into contact with and damage the property of another.  The barge owner argued, however, that it was not foreseeable that its barge would come into contact with a particular structure, namely a bridge located miles away in an area that would

---

[8] It is revealing that the Claimants have totally abandoned one of the two theories of fault alleged in the *Robin* complaint.  That abandoned allegation was that the Emergency Responder Defendants should have used their dynamic positioning (DP) systems to maintain the DEEPWATER HORIZON in place while it burned out of control.   In their original memorandum, the Emergency Responder Defendants characterized this allegation as "ridiculous" and "implausible."   Given that the Claimants do not dispute these characterizations in their opposition memoranda, or even mention this theory of fault at all, it must be concluded that they have acquiesced and abandoned this absurd theory.

[9] 579 F.3d 478 (5th Cir. 2009).

not have been navigable absent the hurricane storm surge.  The Fifth Circuit rejected this argument as too narrow and held simply that the test of foreseeability does not require that the risk of allision with a particular structure be foreseeable.  It was sufficient, the court held, that it be generally foreseeable that a break-away barge could allide with and damage property.

In contrast, in this case it cannot be said that it was foreseeable that spraying water on a burning rig would cause well control loss and, from that, catastrophic pollution resulting in economic damages months in the future to Claimants located miles away.  Indeed, it was on this basis that the Fifth Circuit later distinguished *In re Signal* in *In re Great Lakes Dredge & Dock Co. LLC*.[10]  Referring to *In re Signal*, the court wrote:

> We distinguished that case from *Consolidated Aluminum* and *Lloyd's Leasing*, noting, "the harms in those cases did not arise from the risk of danger created by negligence and instead involved [an] improbable interplay of natural and human forces . . . and the party at fault was able to identify events that would not have been foreseen by a reasonable person."
>
> . . . [I]t cannot be said that any dredger could have foreseen that performing its dredging activities negligently—as opposed to in conformity with the Corps of Engineers' specifications—would probably result in the series of events culminating in the catastrophic damages that occurred during Hurricane Katrina.  *No reasonable dredger could have anticipated that its negligence would make the difference between the levee systems holding or failing in the event of a hurricane.*[11]

Here, no reasonable boat captain responding to an emergency distress signal by spraying water on a raging rig fire could have anticipated that any negligence in doing so would *probably*

---

[10] 624 F.3d 201 (5th Cir. 2010).

[11] *Id.* at 213 (emphasis added and internal citations omitted).

6

cause the massive pollution (let alone the Claimants' alleged economic losses) which resulted when control of the Macondo Well was lost.

As the Emergency Responder Defendants noted in their original joint memorandum (and as the Fifth Circuit recognized in the *In re Signal* case that Claimants rely upon), this question of duty is a legal issue that the Court must decide. No discovery is needed; nor would any discovery change the necessary analysis.[12] Because no reasonable boat captain could have anticipated that spraying water onto a burning rig would probably result in the sinking of the rig, ultimate loss of control of the Macondo Well, the release of millions of barrels of oil, the worst environmental disaster this country has ever faced, and the Claimants' alleged economic damages, the joint motion to dismiss should be granted.

### B.    The Rule of *Robins Dry Dock* Also Compels Dismissal

Although the Court need not go any further than the above duty/foreseeability analysis to resolve the instant motion and dismiss all of the claims that have been asserted against the Emergency Responder Defendants, the *Robins Dry Dock* rule provides an alternative basis for dismissal of all but three of the Claimants. Curiously, the Claimants argue that "commercial fisherman like oysterman Terry Robin are clearly covered" by an exception to the *Robins Dry Dock* rule, failing to recognize that in footnote 35 of their original joint memorandum, the Emergency Responder Defendants carved Mr. Robin, along with two non-employee alleged personal injury claimants, out of their *Robins Dry Dock* argument.

---

[12] *See id.* at 211 ("Determination of the tortfeasors' duty is a question of law and thus a function of the court.") (quoting *In re Signal*, 579 F.3d at 490).

The Claimants' only other argument on *Robins Dry Dock* is a desperate request that this Court chart a new path and disregard the *Robins Dry Dock* rule altogether (and the many Fifth Circuit cases in which it has been faithfully applied for nearly a century) based on the fact that OPA and CERCLA allow recovery of economic losses from a Responsible Party without an associated showing of damage to a propriety interest.  Aside from the fact that these statutory schemes only apply to claims against Responsible Parties (and that CERCLA does not even apply in the context of an oil spill),[13] we respectfully submit that this Court should adhere to well-established precedent and reject Claimants' invitation to discard the *Robins Dry Dock* rule.[14]  It also bears noting that the wisdom of the bright line rule of *Robins Dry Dock* is particularly evident here where there are claims asserted by individuals and businesses located far away from the scene of the casualty and with only the remotest of connections to the events giving rise to the alleged damages.  As the Fifth Circuit stated in *TESTBANK*, the *Robins Dry Dock* rule has stood the test of time because it is a "pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful."[15]

## C.    OPA and the Displacement of General Maritime Law

Claimants' contention that the Emergency Responder Defendants seek to "have it both ways" with respect to OPA and that the courts which have held that OPA displaces the general

---

[13]   *See* 42 U.S.C. § 9601(14) (carving "petroleum and crude oil" out of the definition of "hazardous substances" subject to CERCLA); *see also Exxon Corp. v. Hunt*, 475 U.S. 355, 359 (1986) ("CERCLA does not include oil spills within its definition of hazardous substance releases.").

[14]   As the Emergency Responder Defendants noted in their original joint memorandum, the Fifth Circuit continues to faithfully apply the rule of *Robins Dry Dock*, and has done so even after the enactment of OPA and CERCLA. *See, e.g., Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*, 639 F.3d 207, 210 (5th Cir. 2011); *Reserve Mooring Inc. v. American Commercial Barge Line, LLC*, 251 F.3d 1069, 1070-71 (5th Cir. 2001).

[15]   *State of Louisiana v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1985).

PD.5345356.1

maritime law simply have it wrong shows that the Claimants misunderstand the statute as well as the defendants' arguments.   The Emergency Responder Defendants' position with respect to OPA is simple.   First, OPA damages are recoverable only against those entities designated as Responsible Parties, and the Emergency Responder Defendants have not been so designated. Claimants do not seem to contest this point and, therefore, their OPA claims should be dismissed.   Second, OPA displaces general maritime law claims to the extent that, as in these cases, the claims are of the type that can be brought against the Responsible Parties under OPA. There is nothing contradictory in these dual contentions; rather, they are a reflection of the clear statutory scheme devised by Congress for the purpose of streamlining the process of presenting and paying pollution-related claims.

Certainly, contrary to the Claimants' suggestion, OPA does not contemplate that a negligent non-Responsible Party would in all cases be able to avoid liability altogether.   What OPA does envision, though, is that claims against a negligent non-Responsible Party may be asserted only by Responsible Parties in an indemnity or contribution action.[16]   Channeling legitimate claims through the Responsible Parties in this fashion is intended to avoid the inevitable delays that would be associated with the normal process of multi-party litigation in which payments to tort victims are delayed until there is a final allocation of fault between various adverse defendants.   Unable to cite any authority for their contrary interpretation of OPA, the Claimants are left simply to criticize broadly the decisions which are fatal to their argument.   Simply put, although the Court need not reach this issue, the precedents fully support

---

[16] *See* 33 U.S.C. §§ 2709, 2715.   It bears repeating that none of the Responsible Parties for the DEEPWATER HORIZON casualty have filed claims of any kind against any of the Emergency Responder Defendants.

the Emergency Responder Defendants on this point and they provide an additional basis for dismissing the Claimants' general maritime law claims.

### D.     Claimants' Salvage Argument Does Not Salvage Their Claims

Without explaining the purported legal significance, Claimants repeatedly assert that by the time the rig sank the Emergency Responder Vessels were no longer in a search-and-rescue mode trying to save the lives of missing rig crew, but were instead engaged "only" in an attempt to *salvage* the rig.  Tellingly, as part of this argument, Claimants concede that it was reasonable for the Emergency Responder Vessels to put water on the rig in the initial hours of the fire, but contend that at some point amid the chaos of the rig inferno they should have somehow magically known that all of the missing crew were by that time beyond help and that any further efforts to locate and rescue them were fruitless.  This callous argument is made with the supposed benefit of hindsight yet in complete disregard of the horrible circumstances existing after the massive rig explosion and in the midst of the raging fire that ensued.  Regardless, the issue is irrelevant for purposes of the instant motion.

Moreover, the Claimants' contention that at the time the rig sank the Emergency Responder Defendants were engaged in a salvage operation, as opposed to search and rescue, only means that the Claimants' legal burden is even higher than it would be under a simple reasonable care standard.  In *The Oil Screw Noah's Ark v. Bentley & Felton Corp.*,[17] Judge John R. Brown of the Fifth Circuit authored what has come to be viewed as the authoritative decision on salvor liabilities in this circuit.  The Court held that alleged salvor negligence leading to "indistinguishable harm" (*i.e.*, where the claimed damage or injury to the salved vessel is the

---

[17] 292 F.2d 437 (5th Cir. 1961).

same as the damage or injury the vessel was exposed to before the salvage efforts were undertaken) is nothing more than ineffectual salvage, and that the general maritime law treats ineffectual salvage "with considerable lenience."[18]   In circumstances of ineffectual salvage, Judge Brown concluded, the salvor can be held liable for damages *only* upon a showing of gross negligence or willful misconduct.[19] The rationale of the holding is clear and is important for this case as well:   the law should encourage and protect those who in good faith respond to an emergency and attempt to save lives and the property of others.   The Claimants are effectively advocating a course that, to the contrary, would punish the Emergency Responder Vessels for being Good Samaritans.   If the Court reaches the issue and accepts the Claimants' contention that the Emergency Responder Defendants should be treated as salvors rather than as vessels engaged in a search and rescue operation, this only raises the hurdle the Claimants must clear in order to overcome a Rule 12 motion to dismiss.   For all of the above reasons, Claimants have not and cannot clear this hurdle.

## III.    CONCLUSION

The Claimants concede that the Emergency Responder Vessels were trying to save lives when they responded to the rig's distress signals and that their efforts were "well-meaning", but nevertheless they seek to recover substantial damages from the Emergency Responder Defendants.   If the Court accepts the Claimants' arguments and allows these claims to proceed to the discovery phase, then the next time a vessel is in grave distress and lives at sea are in

---

[18]   *Id.* at 441.

[19]    *Id.*; *see also In re Oil Spill by the AMOCO CADIZ off the Coast of France on March 16, 1978*, 1984 AMC 2123, 2189, 1984 WL 304041 (N.D. Ill. 1984) ("A salvor whose efforts are unsuccessful is not liable for losses sustained either by the owners of the property he has endeavored to salve or by third parties, in the absence of proof of causative gross negligence or willful misconduct.").

PD.5345356.1

imminent danger, a vessel in a position to respond and possibly save lives and property would be well advised to stand down and stay clear.  Otherwise, they will run the risk that their efforts to assist others in need will expose them to second-guessing and embroil them in expensive and protracted litigation.  But the Court need not engage in such second-guessing nor embark on a path leading to such an unjust result because, for the reasons stated above and in their original joint memorandum, the Emergency Responder Defendants' motion to dismiss should be granted.

Respectfully submitted,

/s/ *Gary A. Hemphill*
Gary A. Hemphill, T.A. (#6768)
Hugh Ramsay Straub (#12525)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
**WEIL, GOTSHAL & MANGES LLP**
1300 Eye Street, NW, Suite 900
Washington, DC 20005
Telephone:  (202) 682-7157
Facsimile:  (202) 857-0940

Theodore E. Tsekerides (NY Bar #2609642)
Jeremy T. Grabill (NY Bar #4501755)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

PD.5345356.1

*Attorneys for Seacor Holdings, Inc., Seacor Offshore, LLC, Seacor Marine LLC, Seacor Worldwide, Inc., and Siemens Financial, Inc.*

/s/ *Robert P. McCleskey*
Robert P. McCleskey, Jr. (#9151)
Raymond T. Waid (#31351)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

*Attorneys for Island Ventures II, LLC and Nautical Solutions, LLC*

/s/ *William J. Riviere*
William J. Riviere, T.A. (#20593)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

*Attorneys for Monica Ann, L.L.C., JNB Operating, L.L.C., and Gulf Offshore Logistics, L.L.C.*

13

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Joint Reply Memorandum of Emergency Responder Defendants in Support of Joint Motion to Dismiss Pursuant to Rules 12(b)(6) & 12(c) has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of July, 2011.

*/s/ Gary A. Hemphill*
GARY A. HEMPHILL
HUGH RAMSAY STRAUB