UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : : : | MDL NO. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| **THIS DOCUMENT RELATES TO:** Pleading Bundle C and Nos. 10-2771; 10-3059; 10-516; 10-4183; 10-4185 | : : : : : : | JURY TRIAL DEMANDED |

## CONSOLIDATED REPLY BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTIONS TO DISMISS BUNDLE C COMPLAINTS

Defendant Cameron International Corporation ("Cameron") respectfully submits this consolidated reply brief in support of its motions to dismiss the claims against Cameron in the various Bundle C complaints: Doc. 2636 (motion to dismiss the Local Government Master Complaint); Doc. 2637 (motion to dismiss the amended complaint of the State of Louisiana); Doc. 2639 motion to dismiss the amended complaint of the State of Alabama); and Doc. 1152 (motion to dismiss the complaint of four Alabama municipalities). This brief addresses the following oppositions: Doc. 3186 (the Omnibus opposition to dismissal of the Local Government Master Complaint, hereafter "Local Government Opposition"); Doc. 3213 (the opposition of the State of Louisiana, hereafter "Louisiana Opposition"); and Doc. 3203 (the opposition of the State of Alabama, hereafter "Alabama Oppositions") (collectively the "Bundle C Oppositions"). To

- 1 -

Cameron's knowledge, no formal response has ever been filed in opposition to Cameron's motion to dismiss the complaint of the four Alabama municipalities (Doc. 1152).

**SUMMARY OF REPLY**

1. Congress has enacted two statutes that govern oil and gas activities on the Outer Continental Shelf and oil spills in navigable waters: the Outer Continental Shelf Lands Act ("OCSLA") and the Oil Pollution Act of 1990 ("OPA"). Largely ignoring these controlling statutes, the Bundle C Oppositions assert an array of state and maritime claims against Cameron arising from the oil spill from the Macondo well on the Outer Continental Shelf. These oppositions have no foundation in law. They run counter to Congress' deliberate choice in OCSLA – confirmed in a series of Supreme Court decisions – to apply federal law to the exclusion of state law to oil and gas accidents on the Outer Continental Shelf, but ***not*** to apply general maritime law. The legal theories advocated in the Bundle C Oppositions also run counter to Congress's explicit intent to channel all litigation over oil spill compensation claims through OPA – the federal law unquestionably applicable to the Bundle C complaints.

2. OCSLA makes federal law the "exclusive" law governing the oil and gas drilling and development activities leading to the oil spill in this case. 43 U.S.C. § 1333(a); *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 357 (1969). With this language, OCSLA expressly preempts application of any state law (other than the law of the "adjacent state" – here Louisiana – potentially borrowed as surrogate federal law). Under controlling Supreme Court precedent, OPA does not preserve any state law as such from OCSLA's express preemption of state law. *See United States v. Locke*, 529 U.S. 89, 106 (2000) (OPA § 2718 does not extend state law preservation to "subjects addressed in . . . other Acts"). In short, OCSLA

expressly preempts the state law claims asserted in the Bundle C pleadings, and under *Locke*, OPA does not and cannot change that result: OPA does not authorize state law claims that have been expressly pre-empted by OCSLA.

      3. The Supreme Court has announced and consistently followed the precept that in enacting OCSLA, Congress "deliberately eschewed the application of admiralty principles to" accidents arising from oil and gas operations on the outer continental shelf. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 356 (1969); *accord, Chevron Oil Co. v. Huson*, 404 U.S. 97, 101 (1971) ("comprehensive admiralty law remedies [do not] apply under" OCSLA); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218 (1985) ("the operative assumption underlying the statute [is] that admiralty jurisdiction generally should not be extended to accidents in areas covered by OCSLA"). The Supreme Court's reasoning in *Locke* confirms that the OPA maritime law savings clause, 33 U.S.C. § 2751(e), does not disrupt or countermand OCSLA's displacement of maritime law. In short, OCSLA displaces maritime law with respect to the claims in the Bundle C pleadings, and OPA does not alter that result.

      4. The Bundle C Oppositions fail to counter dispositive arguments submitted by Cameron in support of its dismissal motions.

      a. In the face of Cameron's pointed demonstration from the Bundle C pleadings themselves, the Bundle C Oppositions do not dispute that the discharge of oil at issue in this proceeding originated from an oil well. Correspondingly, none of the Bundle C Oppositions addresses Cameron's showing that general maritime law cannot and does not govern oil spill claims based on a discharge **from an OCS well**. This omission is telling and dispositive.

b.  Cameron also argued pointedly that direct prosecution of oil spill claims under Louisiana law would be "inconsistent with" OPA's comprehensive remedial scheme, so that OCSLA does not allow the borrowing of Louisiana law as surrogate federal law for this purpose, 43 U.S.C. § 1333(a)(2).  Not one of the Bundle C Oppositions attempts to refute this argument.  Cameron submits that its argument is in fact unanswerable and dispositive of the Louisiana law claims asserted in the Bundle C pleadings.

## REPLY TO OPPOSITIONS

Cameron's basic position with respect to Bundle C can be briefly summarized.  These oil spill compensation cases arise from the activities of "exploring for, developing, or producing resources" from "the subsoil and seabed of the outer Continental Shelf," 43 U.S.C. § 1333(a)(1), *i.e.*, activities explicitly encompassed by OCSLA.  As such, the case is governed by OCSLA and not by state law or by general maritime law.

Controlling Supreme Court precedent mandates this conclusion.  As recently concluded by John Costonis, Chancellor-Emeritus and Professor of Law at LSU Law Center, "the Supreme Court is unlikely to abandon its own precedents," which have consistently held that "***exploration and development of the Continental Shelf are not themselves maritime commerce.***"  J. Costonis, *The Macondo Well Blowout: An Admiralty Tort?* JUNE/JULY 2011 LA. B.J. 30, 31 (emphasis in original), quoting *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 425 (1986) (copy of article attached).

OCSLA extends federal law to oil and gas activities on the OCS and establishes "an area of exclusive Federal jurisdiction." 43 U.S.C. § 1333(a)(1). This leaves no room for the application of state law; OCSLA expressly preempts state law as such.

It is undisputed that in this area of exclusive federal jurisdiction, OPA is the single federal statute governing the oil spill claims of the Bundle C plaintiffs. OCSLA does permit federal statutes such as OPA to be supplemented by the law of the "adjacent state," borrowed as surrogate federal law, but only to the extent that such state law is "applicable and not inconsistent with" the federal law. 43 U.S.C. § 1333(a)(2). However, that provision does not operate as an escape hatch from OPA's elaborate and carefully articulated remedial scheme. The efforts of the Bundle C plaintiffs to secure remedies under adjacent state (here Louisiana) against persons who are not defined "responsible parties" under OPA would disrupt, conflict with, and thereby be "inconsistent with" the comprehensive remedial scheme that Congress created in enacting OPA. In these circumstances, OCSLA does not sanction and does not permit the borrowing of Louisiana law to allow Bundle C plaintiffs to recover directly against Cameron.

It is important to add in this context that OCSLA preemption or displacement of the Bundle C claims against Cameron does not relieve Cameron of potential liability in connection with the Bundle C claims. OPA contains explicit subrogation and contribution provisions, 33 U.S.C. §§ 2709, 2715(a). These sections authorize potential recovery by persons ("responsible parties") who themselves are made strictly liable under OPA to pay Bundle C claims. 33 U.S.C. § 2702(a), (b)(1), (2)(A), (B), (D), (F). BP and Transocean have already filed actions seeking recovery from Cameron under OPA's subrogation and contribution provisions. Document 2064, Counts V, ¶¶ 88-92, and VII, ¶¶ 98-103 (BP); Document 2068, Count V, ¶¶ 84-

85 (Transocean).  The point here is that the express OPA remedies of contribution and subrogation are the exclusive remedial provisions potentially leading to recovery against Cameron in the circumstances of this case.  They are provisions by which Congress deliberately streamlined the OPA remedial scheme: claimants recover from responsible parties, who then may seek to recover from third parties like Cameron.  In this context, the direct Bundle C claims against Cameron are worse than superfluous; they defeat the congressional effort to establish a streamlined procedure, and they threaten to replace order with chaos.

For these reasons, the Bundle C plaintiffs themselves have no valid cause of action against Cameron for oil spill compensation.  The Bundle C claims against Cameron should therefore be dismissed.

## I. STATE LAW AS SUCH DOES NOT APPLY HERE

In its initial supporting briefs, Cameron explained that under governing Supreme Court precedent, OCSLA expressly preempts the application of state law as such.  Doc. 2636-1, pp. 20-22; Doc. 2639-1, pp. 21-22.  Cameron then explained why, under the Supreme Court's controlling decision in *United States v. Locke*, OCSLA's express preemption of state law was not affected by the state law preservation clause in OPA, 33 U.S.C. § 2718.  Doc. 2636-1, pp. 22-23; Doc. 2639-1, pp. 22-24.  In *Locke*, the Supreme Court held that by its terms, section 2718 only controls or limits the preemptive effect of OPA, the maritime limitation statute, and a certain provision of the federal tax code, and does not affect or limit the preemptive effect of other federal legislation.  529 U.S. at 104-06.  Accordingly, OPA § 2718 does not limit the preemptive effect of OCSLA – i.e., it does not change the OCSLA rule barring the application of state law as

such to oil and gas drilling and development activities on the Outer Continental Shelf. None of the Bundle C Oppositions confronts, much less refutes, the Cameron argument.

The Local Governments rely generally on section 2718 to defend the assertion of state law claims. Doc. 3186, pp. 8-13. They quote a single descriptive sentence from *Locke* (p. 9), but ignore altogether both the Supreme Court's insistence on a narrow interpretation of section 2718 and the Court's ultimate holding. The Local Governments then address only arguments made by Transocean (pp. 10-12), not the argument made by Cameron, for which they have no answer.

Alabama argues that its own state law applies despite OCSLA, but addresses neither the Supreme Court's seminal decision in *Rodrigue* nor the Supreme Court's definitive interpretation of section 2718 in *Locke*. Doc. 3203, pp. 3-8. Alabama quotes the applicable provisions of OCSLA in full, but inexplicably concludes, in the face of Congress's express assertion of "exclusive" federal legal authority, that OCSLA does not preempt application of state law. *Id.* pp. 6-7. That assertion, of course, is directly contradicted by the Supreme Court's definitive interpretation of OCSLA in *Rodrigue*, 395 U.S. at 356. Making no attempt to deal with the actual language of section 2718, Alabama simply asserts (Doc. 3203 at p. 3) that OPA "trumps" state law preemption under OCSLA. That conclusion flies in the face of the Supreme Court's reasoning and holding in *Locke*.

Taking yet another tack, Louisiana pays lip service to OCSLA and acknowledges *Rodrigue* and *Locke*. Doc. 3213, pp. 5-9. However, it does not address the reasoning or holdings of either decision. Instead, Louisiana argues (at p. 7) that maritime law not only survives OCSLA, but somehow, mysteriously, authorizes the application of state law "of its own

force" to oil and gas drilling and development on the Outer Continental Shelf. That convoluted argument is contradicted by the unambiguous language of OCSLA, which calls for the application of federal law to the exclusion of state law, and the Supreme Court's decision in *Rodrigue* determining that OCSLA displaces maritime law with respect to those activities. *See* 395 U.S. at 356-66.

Alabama (Doc. 3203 at p. 4) and Louisiana (Doc. 3213 at p. 4) both note correctly that OPA repealed the oil spill compensation provisions of Title III of OCSLA (added in 1978). But that legislative repeal – the explicit purpose of which was to consolidate oil spill compensation in OPA -- is largely beside the point. OPA did not repeal the choice of law provisions of Title I of OCSLA. And in OPA § 2718, as the Supreme Court held in *Locke*, Congress preserved state law in a limited way that does not alter OCSLA's express preemption of state law with respect to oil and gas activities on the outer continental shelf.

Louisiana argues (Doc. 3213 at pp. 7-9) that state law applies to pollution migrating from the outer continental shelf into state waters because states have police power to regulate "ship-to-shore" pollution, citing *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973), together with the favorable reference to *Askew* in *Locke*. The Local Governments also rely on *Askew*. Doc. 3186 at pp. 12-13. This is an obvious misreading of those Supreme Court decisions. Both *Askew* and *Locke* involved pollution discharged from vessels in port within a state's waters, not oil and gas activities on the outer continental shelf. The principle reaffirmed in *Askew* (and *Locke*) was that a state "statute so far as applied to conduct **within the territorial waters of** [a state], **in the absence of conflicting federal legislation**, is within the police power of the state." *Skiriotes v. Florida*, 313 U.S. 69, 75 (1941), quoted with approval in *Askew*, 411

U.S. at 334 (emphasis added).  The territorially and legislatively circumscribed state police power confirmed in *Askew* and *Locke,* therefore, does not extend to oil and gas activities on the outer continental shelf, decidedly ***outside*** a state's waters and explicitly governed by OCSLA as an area of exclusive federal jurisdiction.  Under the Supremacy Clause of the U.S. Constitution, no state police power can be asserted in conflict with the exclusively federal jurisdiction established by OCSLA on the outer continental shelf.

## II. GENERAL MARITIME LAW DOES NOT APPLY HERE

The Bundle C Oppositions all assert a right to recover under general maritime law.  *See* Doc. 3186, pp. 18-22; Doc. 3203, pp. 11-13, Doc. 3213, pp. 7, 68-69.  However, a large body of Supreme Court and Fifth Circuit case law makes clear that general maritime law does not apply to a spill from an oil well on the outer continental shelf.  Contrary to the Bundle C Oppositions, litigation over this oil spill is governed by OCSLA and OPA, which leave no room for the application of maritime law.

In its initial supporting briefs, Cameron discussed at some length the Supreme Court precedents governing choice of law under OCSLA and the limited reach of maritime law in that context.  Doc. 2636-1, pp. 12-15; Doc. 2637-1, pp. 11-13; Doc. 2639-1, pp. 14-16.  The abiding principle underlying that body of Supreme Court jurisprudence is that Congress purposefully rejected the application of general maritime law to oil and gas operations on the outer continental shelf.  *Rodrigue*, 395 U.S. at 356 (Congress "deliberately eschewed the application of admiralty principles to" accidents arising from oil and gas operations on the outer continental shelf); *Chevron Oil*, 404 U.S. at 101 ("comprehensive admiralty law remedies [do not] apply under" OCSLA); *Herb's Welding,* 470 U.S. at 422 ("exploration and development of

the Continental Shelf are not themselves maritime commerce"); *Offshore Logistics*, 477 U.S. at 218 ("the operative assumption underlying the statute [is] that admiralty jurisdiction generally should not be extended to accidents in areas covered by OCSLA").  These decisions mandate the conclusion that OCSLA displaces general maritime law with respect to claims, like all the Bundle C claims against Cameron, based on a spill from an oil well on the outer continental shelf.  *See AmClyde Engineered Products*, 448 F.3d at 771.

As Cameron has shown, the numerous detailed allegations of each of the applicable complaints demonstrate that the Bundle C claims are all based on the discharge of oil from the Macondo oil well located on the seabed and in the subsoil of the outer continental shelf, and that this discharge resulted from a failure to maintain control over oil in the subsoil.  Doc. 2636-1, pp. 10-12; Doc. 2637-1, pp. 9-10; Doc. 2639-1, pp. 10-12.  The oil well was a quintessential OCSLA situs.  Because the *Deepwater Horizon* mobile offshore drilling unit was attached to the well on the seabed and in the subsoil, it also was an OCSLA situs, but that consideration is secondary; unlike the situation with the *Exxon Valdez*, this oil in this case flowed out of the subsoil, not out of any vessel.  Doc. 2636-1, pp. 18-19; Doc. 2637-1, pp. 16-17; Doc. 2639-1, p. 19.  As Cameron has shown, therefore, the Bundle C claims for oil spill compensation unquestionably stem from an event originating at an OCSLA situs, so that the governing Supreme Court and Fifth Circuit authorities, including the *PLT* test, establish that OCSLA displaces general maritime law with respect to those claims.  Doc. 2636-1, pp. 12-20; Doc. 2637-1, pp. 11-18; Doc. 2639-1, pp. 13-21.

None of the Bundle C Oppositions acknowledges, much less disputes, Cameron's showing that the Bundle C allegations locate the oil spill ***at the well***.  None of the Bundle C

- 10 -

1065662v.1

Oppositions acknowledges, much less disputes, Cameron's analysis of the applicable law. None of the Bundle C Oppositions suggests, much less demonstrates, that Cameron's analysis of the stated allegations in any way misapplies the applicable *PLT* test for application of OCSLA versus maritime law. This stark silence should be dispositive.

To bolster the assertion of general maritime law without addressing Cameron's specific arguments, each of the Bundle C Oppositions attempts to invoke OPA's maritime law savings clause, 33 U.S.C. § 2751(e). Doc. 3186, p. 18; Doc. 3213, pp. 6, 71; Doc. 3203, pp. 12, 17, 19. But a savings clause, and section 2751(e) is no exception, can only save or preserve a pre-existing and applicable body of law. Because OCSLA already had displaced general maritime law for purposes of oil and gas activities on an OCSLA situs, there was no general maritime law for § 2751(e) to save in this case.

Section 2751(e) provides in pertinent as follows:

> Except as otherwise provided in this chapter, ***this chapter does not affect*** –
>
> (1) admiralty or maritime law; . . ..

33 U.S.C. § 2751(e) (emphasis added). In other words, the savings clause addresses only the extent to which "this chapter" – i.e., OPA – "does not affect" maritime law. Under the Supreme Court's definitive reasoning in *Locke*, section 2751(e) simply does not govern or affect the extent to which other federal legislation – specifically OCSLA – displaces maritime law. *See* 529 U.S. at 104-06; *see also* Doc. 2636-1, pp. 22-23. Properly read in light of *Locke*, OPA § 2751(e) does not alter the conclusion that OCSLA displaces maritime law in this case. (Moreover, as the PSC virtually concedes, the OPA oil spill compensation scheme independently displaces maritime law for purposes of the Bundle C claims under OPA § 2702 and the preamble to section 2751(e).)

### III. LOUISIANA REMEDIAL LAW MAY NOT BE BORROWED

In its initial supporting briefs, Cameron demonstrated that OCSLA does not permit the adoption of Louisiana remedial law as surrogate federal law to supplement OPA, because allowing remedies under Louisiana law for the Bundle C oil spill claims would be inconsistent with the comprehensive remedial structure of OPA.  Doc. 2636-1, pp. 24-31; Doc. 2637, pp. 19-26; Doc. 2639, pp. 25-32.   Put another way, for oil and gas activities on the Outer Continental Shelf, there is no gap in OPA's remedial scheme for surrogate state law to fill.  None of the Bundle C Oppositions refute this showing.

The Bundle C Plaintiffs all contend that they are entitled to recover their alleged economic losses from other defendants who are statutorily defined "responsible parties" under OPA.  If so, then they have no need or any legitimate reason also to recover from Cameron.  But that is not all.  To the extent that Bundle C claimants do recover from a statutory "responsible party" under OPA, then that party will be subrogated to the Bundle C claims under OPA.  33 U.S.C. § 2715(a).  This streamlined remedial procedure, which OPA mandates, is both efficient and fair.  It allows all Bundle C claimants to recover their proved statutory compensation from the statutory responsible parties; and it affords the responsible parties who pay those damages an opportunity to recover from Cameron if they can show that Cameron indeed is liable under substantive Louisiana law, made applicable by OCSLA as surrogate federal law.

In short, the Bundle C Oppositions fail to offer any reason whatsoever for denying Cameron's motion for dismissal without prejudice.  This Court should not hesitate to follow the lead of Judge Lemelle in *Gabarick v. Laurin Maritime (America) Inc.,* 623 F.Supp.2d 741 (E.D. La. 2009), and dismiss the Bundle C claims against Cameron without prejudice to the assertion

of claims for contribution or subrogation under the provisions of OPA that specifically allow such claims.

### IV. THERE IS NO VALID CLAIM UNDER LOUISIANA LAW IN ANY EVENT

Cameron stands by its showings that (1) like OPA, governing Louisiana law does not provide any Bundle C plaintiff with any valid claim against Cameron, Doc. 2636-1, pp. 32-34; Doc. 2637-1, pp. 28-29; and (2) the State of Alabama, as confirmed by its Opposition (Doc. 3203), has consciously rejected reliance on Louisiana law, Doc. 2639-1, p. 34.

### V. CONCLUSION

Cameron's motions to dismiss the claims against it in the Bundle C complaints should be granted, with prejudice as to the direct claims of Bundle C plaintiffs against Cameron, but without prejudice to the pursuit of OPA contribution or subrogation claims.

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com

BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 Mckinney, Suite 4500
Houston, TX  77010-2010
713-951-3700
713-951-3720 (fax)

/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittman@stonepigman.com
Carmelite M. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Consolidated Reply Brief of Defendant Cameron International Corporation in Support of its Motions to Dismiss Bundle C Complaints has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of August, 2011.

                                                          */s/ Phillip A. Wittmann*