**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:   OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § | **MDL NO. 2179** |
| | § | **SECTION: J** |
| **Applies to:** *Pleading Bundle C* | § § | **JUDGE BARBIER** |
| No. 10-2771 | § § | **MAGISTRATE SHUSHAN** |
| No. 11-0516 | § | |
| No. 10-3059 | § § | |
| No. 10-4182 | § § | |
| No. 10-4183 | § § | |

**REPLY IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS' MASTER COMPLAINT ["BUNDLE C"], THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT, AND THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION      ...................................................................................................1

II.    SUMMARY OF REPLY ARGUMENTS ..........................................................2

III.   ARGUMENT AND AUTHORITIES.................................................................3

       A.    Plaintiffs' State Law Claims Must Be Dismissed. ...................................3

             1.    OPA's application does not foreclose the impact of OCSLA
                   and the Clean Water Act on Plaintiffs' claims. ............................3

                   a.    OCSLA prohibits the application of state law...................3

                         (i)    OCSLA applies to all matters arising in exclusively
                                federal waters.......................................................3

                         (ii)   OCSLA applies maritime law, not state law. ......................4

                   b.    The Clean Water Act also forecloses the application of state
                         law to an out-of-state discharge of pollution. ...................8

                   c.    OPA displaces general maritime law and provides Plaintiffs'
                         exclusive remedy for the damages they seek....................8

             2.    Dismissal of Plaintiffs' claims is not premature because HESI has not
                   been and cannot be named a responsible party under OPA.....................11

             3.    Dismissal is proper for any Plaintiff who failed to comply with OPA's
                   mandatory presentment requirement.........................................13

       B.    Dismissal of Plaintiffs' Claims Under General Maritime Law is
             Likewise Proper. ..................................................................................15

             1.    The economic loss rule bars recovery of purely economic damages.........15

             2.    Plaintiffs' claims for nuisance under general maritime law should be
                   dismissed..................................................................17

       C.    Plaintiffs' State Law Claims Fail as a Matter of Law. ...........................18

             1.    Plaintiffs' Claims for fraudulent concealment fail. ...................18

             2.    Plaintiffs' state law nuisance claims fail. ...................................19

             3.    Louisiana law bars Plaintiffs' claims to the extent they seek
                   economic damages absent a physical injury to a proprietary interest........20

i

        4.       Alabama has not stated a claim for civil penalties under the Alabama Hazardous Waste Disposal Act.................................................................21

   D.     Any Claim for the Recovery of Punitive Damages Must be Dismissed................21

        1.       Plaintiffs may not recover punitive damages under OPA..........................21

        2.       Plaintiffs' reliance on *Baker* and *Townsend* is misplaced. ..........................22

IV.   CONCLUSION.............................................................................................................24

## **TABLE OF AUTHORITIES**

**CASES**

*Am. Electric Power Co. v. Connecticut,*
  180 L. Ed. 435, 2011 U.S. Lexis 4565 (2009) ........................................................................9

*Askew v. Am. Waterways Operators, Inc.,*
  411 U.S. 325 (1973)................................................................................................................5

*Atlantic Sounding Co. v. Townsend,*
  129 S. Ct. 2561 (2009).................................................................................................... 22-23

*Barasich v. Columbia Gulf Transmission Co.,*
  467 F. Supp. 2d 676 (E.D. La. 2006)...................................................................................19

*Barasich v. Shell Pipeline Co., LP,*
  2006 U.S. Dist. LEXIS 84389 (E.D. La. Nov. 20, 2006) ....................................................20

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,*
  51 F.3d 235 (11th Cir. 1995) ................................................................................................13

*Chrysler Credit Corp. v. Whitney Nat'l Bank,*
  824 F. Supp. 587, 598 (E.D. La. 1993)................................................................................18

*Coastal Iron Works, Inc. v. Petty Ray Geophysical,*
  783 F.2d 577 (5th Cir. 1986) .............................................................................................5-6

*Demette v. Falcon Drilling Co.,*
  280 F.3d 492 (5th Cir. 2002) .................................................................................................4

*Exxon Shipping Co. v. Baker,*
  554 U.S. 471 (2008)........................................................................................................ 22-23

*Fernandez v. Aliff,*
  2008 U.S. Dist. LEXIS 108281 (D. P.R.) .............................................................................4

*In re Ford Motor Cor. Vehicle Paint Litig.,*
  1997 U.S. Dist. Lexis 13124 (E.D. La. 1997)). ...................................................................18

*Gabarick v. Laurin Mar. (Am.), Inc.,*
  2009 U.S. Dist. Lexis 20974 (E. D. La. 2009) ....................................................................12

*Gabarick v. Laurin Maritime (Am.), Inc.,*
  623 F. Supp. 2d 741 (E.D. La. 2009)...................................................................... *passim*

*Gen. Motors Corp. v. Bell,*
  714 So.2d 268 (Ala. 1996)....................................................................................18

*Golnoy Barge Co. v. M/T Shinoussa,*
  1991 WL 267956 (S.D. 1991)................................................................................17

*Green v. Vermilion Corp.,*
  144 F.3d 332 (5th Cir. 1998) ................................................................................6

*Gulf Ins. Co. v. Employers Liability Assurance Corp.,*
  170 So.2d 125 (La. Ct. App. 1964).......................................................................19

*Hercules Carriers, Inc. v. State of Florida,*
  720 F.2d 1201 (11th Cir. 1983) ............................................................................16

*Illinois v. Milwaukee,*
  731 F.3d 403 (7th Cir. 1984) ................................................................................5

*Int'l Paper Co. v. Ouellette,*
  479 U.S. 481 (1987)................................................................................................8

*Isla Corp. v. Sundown Energy, LP,*
  2007 U.S. Dist LEXIS 31259, (E.D. La. 2007) ....................................................10

*J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,*
  457 F.2d 815 (5th Cir. 1972) ................................................................................6

*Kadlec v. Med. Ctr. v. Lakeview Anesthesia Assocs.,*
  527 F.3d 412 (5th Cir. 2008) ................................................................................18

*In re Katrina Canal Breaches Consol. Litig.,*
  647 F. Supp. 2d 644 (E.D. La. 2009) ...................................................................19

*La. Crawfish Producers Ass'n v. Amerada Hess Corp.,*
  935 So. 2d 380 (La. Ct. App. 2006).......................................................................20

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.,*
  944 F. Supp. 476 (E.D. La. 1996) .........................................................................13

*Mobil Oil Corp. v. Higginbotham,*
  436 U.S. 618 (1978)................................................................................................9

*Nat'l Sea Clammers Ass'n v. City of New York,*
  453 U.S. 1 (1981)....................................................................................................17

*Nat'l Shipping Co. of Saudi Arabia, v. Moran Mid-Atl. Corp.,*
  924 F. Supp. 143 (E.D. Va. 1996) ........................................................................10

*Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC,*
   251 F.3d 1069 (5th Cir. 2001) .................................................................17

*Roberts v. Cardinal Servs., Inc.,*
   266 F.3d 368 (5th Cir. 2001) ...................................................................19

*Robins Dry Dock & Repair Co. v. Flint et al.,*
   275 U.S. 303 (1927).......................................................................... 15-16

*Rogers v. Coastal Towing, L.L.C.,*
   723 F. Supp. 2d 929 (E.D. La. 2010) ...................................................5-7

*Seko Energy v. M/V Margaret Chouest,*
   820 F. Supp. 1008 (E.D. La. 1993).........................................................17

*In re Settoon Towing LLC,*
   No. 07-1263, 2009 U.S. Dist. LEXIS 113534, (E.D. La. 2009) ..............10

*Smith v. Mid-Valley Pipeline Co.,*
   2007 WL 1309612 (E.D. Ky. 2007) ........................................................11

*South Port Marine v. Gulf Oil Ltd P'ship,*
   234 F.3d 58 (1st Cir. 2000)............................................................ *passim*

*State Farm Fire & Cas. v. Owen,*
   729 So.2d 834 (Ala. 1998)......................................................................18

*State of Louisiana v. M/V Testbank,*
   752 F.2d 1019 (5th Cir. 1985) ...................................................... *passim*

*In re Taira Lynn Marine Ltd No. 5,*
   444 F.3d 371 (5th Cir. 2006) ..................................................................16

*Tanguis v. M/V Westchester,*
   153 F. Supp. 2d 859 (E.D. La. 2001)............................................ *passim*

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,*
   87 F.3d 150 (5th Cir. 1996) .....................................................................3

*TS&C Inv., L.L.C. v. Beusa Energy,*
   637 F. Supp 2d 370 (W.D. La. 2009)................................................ 19-20

*U.S. v. M/V Cosco Busan,*
   557 F. Supp. 1058 (N.D. Cal. 2008) ...............................................13, 15

*United States v. Locke,*
   529 U.S. 89 (2000)....................................................................................5

*United States v. Murphy Exploration & Prod. Co.*,
  939 F. Supp. 489 (E.D. La. 1996) ..........................................................................14

*Yamaha Motor Corp. v. Calhoun*,
  516 U.S. 199 (1996) ........................................................................................ 4-6

**STATUTES**

33 U.S.C. § 1251 *et seq.* ................................................................................... *passim*

33 U.S.C. § 2701 *et seq.* ................................................................................... *passim*

33 U.S.C. § 2713 *et seq.* ................................................................................... *passim*

33 U.S.C. § 2751 *et seq.* ................................................................................... *passim*

43 U.S.C. §  1301 *et seq.* ................................................................................... *passim*

43 U.S.C. §1331 *et seq.* ................................................................................... *passim*

43 U.S.C. § 1349 *et seq.* ................................................................................... *passim*

1995 La. Act 740 § 2 ..........................................................................................20

Defendant Halliburton Energy Services, Inc. ("HESI"), respectfully submits this Reply in Support of Its Motion to Dismiss Plaintiffs' Master Complaint [Bundle C] ("Master Complaint"), the State of Alabama's First Amended Complaint ("Al. Complaint"), and the State of Louisiana's First Amended Complaint ("La. Complaint") (the "Motion"), and respectfully shows the Court as follows:

## I.      INTRODUCTION

Plaintiffs the State of Louisiana ("Louisiana"), the State of Alabama ("Alabama"), and the Local Governmental Entities oppose HESI's Motion to Dismiss their complaints on numerous grounds, filing over 185 pages of briefing in opposition to the various defendants' motions to dismiss and incorporating by reference several hundred additional pages.[1]   But despite the volume, none of their arguments have merit.  It is clear that OPA's[2] comprehensive remedial scheme applies to Plaintiffs' claims because those clams indisputably arise from an oil spill in exclusively federal waters.  Accordingly, Plaintiffs' purported state and general maritime claims must be dismissed.  The same holds true for Plaintiffs' OPA claims against HESI.  HESI is not a responsible party under OPA; thus, Plaintiffs' claims against it should be dismissed. None of the authorities Plaintiffs cite suggest otherwise.  Therefore, HESI's Motion to Dismiss should be granted.

---

[1] *See* State of Louisiana's Memorandum of Law in Opposition to Defendants' Motions to Dismiss The State of Louisiana's First Amended Complaint ("La. Opp.") (incorporating Louisiana's Memorandum of Law in Interest In and Opposition to Defendants' Pending Motions to Dismiss); The State of Alabama's Brief in Opposition to the Various Defendants' Motions to Dismiss ("Ala. Opp.") (incorporating portions of the PSC's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B-1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint); Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss the Voluntary Master Complaint for Local Governmental Entities ("Bundle C") ("Local Gov't Ent. Opp.") (incorporating no fewer than seven oppositions to various motions to dismiss).  HESI does not respond in this Reply to arguments incorporated by reference but rather incorporates all of its briefing related to the documents incorporated by Louisiana, Alabama, and the Local Governmental Entities.

[2] "OPA" means the Oil Pollution Act of 1990, 33 U.S.C.§ 2701 *et seq.*

## II.    <u>SUMMARY OF REPLY ARGUMENTS</u>

On June 3, 2011, HESI moved to dismiss the Master Complaint, the Louisiana Complaint, and the Alabama Complaint because: (1) Plaintiffs' state-law claims are foreclosed by operation of OCSLA and the CWA;[3] (2) OPA provides the exclusive remedy for Plaintiffs' damages; (3) to the extent that Plaintiffs failed to present their claims through OPA's statutorily-mandated claims process, they must be dismissed; and (4) OPA claims cannot survive against HESI, in any event, because HESI is not a responsible party under OPA.  HESI also moved to dismiss Plaintiffs' general maritime claims because, even if OPA did not displace general maritime law, Plaintiffs cannot recover for economic damage absent a physical injury.  Finally, HESI moved to dismiss various state-law claims on additional grounds.

Plaintiffs' Opposition Memoranda demonstrate a fundamental error in their understanding of the applicable choice of law rules.  State law is inapplicable in this proceeding.  OCSLA provides the choice of law framework for this matter, which revolves around an incident occurring on the outer continental shelf, outside the territorial waters of any state.  Under OCSLA's choice of law rules, maritime law applies to the exclusion of state law.  OPA then displaces maritime law as Plaintiffs' exclusive remedy for the damages they seek requiring that Plaintiffs comply with OPA's mandatory presentment requirements.  The CWA also forecloses the application of state law to a discharge of pollutants outside the state's boundaries, where, as here, the discharge occurred outside the boundaries of <u>any</u> state.

Moreover, to the extent OPA does not displace Plaintiffs' maritime claims, Plaintiffs cannot recover for economic losses absent a physical injury.  Finally, punitive damages are not recoverable under OPA because OPA supplants all prior, existing federal law governing oil spill

---

[3] "OCSLA" means the Outer Continental Shelf Lands Act, 43 U.S.C. § 1301 *et seq.*  The "CWA" means the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

pollution under certain circumstances and <u>does not</u> allow for the recovery of punitive damages. For all of these reasons, this Court should grant HESI's Motion.

### III.   <u>ARGUMENT AND AUTHORITIES</u>

**A.   Plaintiffs' State Law Claims Must Be Dismissed.**

> ***1.   OPA's application does not foreclose the impact of OCSLA and the Clean Water Act on Plaintiffs' claims.***

Plaintiffs concede that OPA "provides the exclusive federal remedy for the categories of oil-spill related damages alleged by Plaintiffs here."  HESI's Memorandum in Support of its Motion ("Memorandum" or "Mem.") at 7; *see* La. Opp. at 5; Ala. Opp. at 5.  But OPA's application does not foreclose OCSLA and the CWA's application as well, despite Plaintiffs' mistaken contention to the contrary.  OCSLA and the CWA supply the choice of law framework applicable to this case, and that choice of law analysis leads to the conclusion that OPA (and only OPA) provides Plaintiffs' remedies.

> a.   <u>OCSLA prohibits the application of state law</u>.

> > (i)   *OCSLA applies to all matters arising in exclusively federal waters.*

Plaintiffs cite no authority that OCSLA is inapplicable to an incident such as the *Deepwater Horizon* incident, which occurred on the outer continental shelf.  To the contrary, and as the Fifth Circuit recognized in *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996), OCSLA contains a very broad grant of federal jurisdiction over "cases and controversies arising out of, or in connection with … any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf[.]"  *Id.*; *see also* 43 U.S.C. § 1349(b)(1).  In fact, Plaintiffs' own allegations confirm the existence of OCSLA jurisdiction pursuant to Section 1349.  *See* Master Complaint*,* at ¶ 241; La. Complaint at ¶¶ 4, 38; Ala. Complaint at ¶¶ 8, 38.

(ii)     *OCSLA applies maritime law, not state law.*

Louisiana and Alabama concede that OCSLA's choice of law rules call for the application of maritime law.  43 U.S.C. §1331 (a)(1); La. Opp. at 7; Ala. Opp. at 5.  Nevertheless, they argue that OCSLA's choice of maritime law does not foreclose the application of state law.  Louisiana and Alabama are wrong.   The only time state law applies to claims arising on the outer continental shelf is where it operates as a proxy for federal law.  Mem. at 13; 43 U.S.C. §1331 (a)(1) and (2); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 499 (5th Cir. 2002) ("Since the incident occurred on the [outer continental shelf] beyond the territorial waters of Louisiana, the only way state law could apply was by incorporation into federal law under OCSLA."), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.2d 782-83 (5th Cir. 2009) (emphasis added).[4]

Plaintiffs rely on *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199 (1996), in support of their contention that state law should "supplement" federal law by filling gaps or providing relief for "claims not included in the covered damages specified in OPA."  La. Opp. at 8; *see also* Ala. Opp. at 7-8; Loc. Gov't Ent. Opp. at 11.  But *Yamaha*, which "preserve[d] the application of state statutes to deaths within territorial waters," provides no justification for supplementing federal law with state law in this admiralty case arising outside the territorial waters of any state.  516 U.S. at 216.  The *Yamaha* Court recognized that "[f]ederal maritime law has long accommodated the States' interest in regulating maritime affairs within their territorial waters."  *Id*. at 215, n. 13; *see also Fernandez v. Aliff,* 2008 U.S. Dist. LEXIS 108281, at *15 (D. P.R.).  That interest is absent here because as Plaintiffs concede, this case arose out of activities that took place outside

---

[4] If that were the case, Louisiana's law would apply as adjacent state law under 43 U.S.C. §1331(a)(2)(A).  Mem. at 14, n.19.  In no case could the laws of Alabama, Florida, Texas or Mississippi apply.

the territorial waters of any state.  Master Complaint at ¶ 241; La. Complaint at ¶¶ 4, 38; Ala. Complaint at ¶¶ 8, 38.  Plaintiffs' reliance upon *Yamaha* is misplaced.

Plaintiffs' other authorities are similarly inapposite because none of the claims at issue in those cases arose from incidents that transpired outside state territorial waters.  *See, e.g, Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 580 (5th Cir. 1986) (arising from a fire aboard a ship undergoing repairs in a shipyard); *Rogers v. Coastal Towing, L.L.C.,* 723 F. Supp. 2d 929, 932 (E.D. La. 2010) (arising from injuries sustained by a paramedic as he tried to jump from the dock on board a ship to treat the ship's captain who had suffered a heart attack); *United States v. Locke*, 529 U.S. 89, 107-109 (2000) (holding that Washington's regulation of oil tankers was preempted by the Ports and Waterways Safety Act notwithstanding OPA's savings clause; a state can "regulate its ports and waterways," but where "state laws bear upon national and international maritime commerce," "there is no beginning assumption that concurrent regulation by the state is a valid exercise."); *Askew v. Am. Waterways Operators, Inc.,* 411 U.S. 325, 327 (1973) (Florida Oil Spill Prevention and Pollution Control Act which "imposes strict liability for any damage incurred by the State or private persons as a result of an oil spill in the State's territorial waters" was not preempted by the Federal Water Quality Improvement Act of 1970); *see also Illinois v. Milwaukee*, 731 F.3d 403, 409, n.1 (7th Cir. 1984) (recognizing that *Askew* dealt with Florida's ability to impose liability for oil spills occurring within its own territorial waters).  Indeed, Plaintiffs can point to no case that, like this one, involved an incident arising exclusively in federal waters on the outer continental shelf and in which the court, sitting in admiralty, applied state law.

Likewise, there is no need to "supplement" maritime law with state law as Plaintiffs fail to identify any gap that needs to be filled.  In *Yamaha*, the Supreme Court recognized that neither

maritime nor federal law provided a remedy for the wrongful death of a non-seafarer in territorial waters. 516 U.S. at 215. So, there, state law was applied to supply a remedy not otherwise provided by the controlling federal law. *Id.* at 216. By contrast, Congress, through OPA, has comprehensively prescribed remedies for the damages Plaintiffs seek. *See, e.g.,* Master Complaint at ¶ 178; La. Complaint at ¶ 142; Ala. Complaint at ¶¶ 82; *see also* 33 U.S.C. § 2702(b)(2) (outlining the damages recoverable under OPA); *Tanguis v. M/V Westchester,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (describing OPA as comprehensive federal legislation covering oil spill liability and compensation). Therefore, because OPA provides relief for the kinds of oil-spill related damages Plaintiffs seek, there is no gap in the federal law for state law to fill. *See J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,* 457 F.2d 815, 817-18 (5th Cir. 1972) (declining to apply a Louisiana statute after it "perceive[d] no void in the statutory scheme" of the federal Ship Mortgage Act).

Louisiana maintains that "[c]ourts have allowed the application of state law to supplement where maritime law is silent," but in the cases Louisiana cites, the courts did not apply state law. *Rogers,* 723 F. Supp. 2d at 936; *Coastal Iron Works, Inc.,* 783 F.2d at 582. Further, in these cases, the courts recognized that state law could be used to supplement maritime law only if such application would not disrupt the uniformity or harmony of maritime law. *Rogers,* 723 F. Supp. 2d at 935 (noting that state law may not supplement maritime law where state law "(i) conflicts with an applicable act of Congress, (ii) works a material prejudice to a characteristic feature of the general maritime law, or (iii) interferes with the proper harmony and uniformity of the general maritime law in its international or interstate relations"); *Coastal Iron Works, Inc.*, 783 F. Supp. at 582 ("[S]tate law may not be applied where it would conflict with maritime law."); *see also Green v. Vermilion Corp.,* 144 F.3d 332, 341 (5th Cir. 1998) ("That

uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction."). Thus, in *Rogers,* this Court declined to apply Louisiana's Professional Rescuer's Doctrine because "the application of the non-uniform doctrines espoused by the several States would necessarily produce a non-uniform national result, creating discord in the general maritime law." *Rogers,* 723 F. Supp. 2d at 935. The same concern implicated here. Plaintiffs propose to apply the laws of no fewer than five states in addition to OPA and general maritime law. *See, e.g.,* Ala. Complaint at ¶¶220-345; La. Complaint at ¶¶293-385; Master Complaint at ¶¶ 672, 680, 728, 739. Such application would unavoidably and unquestionably produce a non-uniform result and create discord and confusion in general maritime law.

Finally, with little authority or support, Louisiana argues that by enacting OPA, Congress "explicitly repealed and replaced the oil liability and compensation provisions in other statutes, including all such provisions formerly contained in OCSLA." La. Opp. at 5. Likewise, Alabama argues that OPA "trumps older, more general statutes like OCSLA and the CWA." Ala. Opp. at 3-5. But Plaintiffs do not explain why, by enacting OPA, Congress is presumed to have impliedly repealed any portion of other completely separate federal statutes. Nor has Alabama pointed to any conflict between OPA and OCSLA or the CWA, much less one that would justify elevating OPA over the choice of law provisions of OCSLA or the CWA. Finally, Plaintiffs cite no authority that OPA's savings clause can resurrect state law claims that are not otherwise available by virtue of OCSLA's choice of law provisions.

Plaintiffs have offered no justification to supplement general maritime law and OPA with state law. Even the authorities Plaintiffs cite actually weigh against the application of state law in this case. As such, Plaintiffs' state law claims must be dismissed.

b.    The Clean Water Act also forecloses the application of state law to an out-of-state discharge of pollution.

As HESI pointed out in its Memorandum, under the CWA, the law of an affected state cannot apply to a source of pollution outside that state's boundaries.  Only the federal National Pollution Discharge Elimination System and the law of the state in which the source is located can apply to such a discharge.  Mem. at 10-12; *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987).  Plaintiffs argue that *Ouellette* is inapposite because it involved an intentional permitted discharge, authorized by the EPA, while the discharge at issue here was unpermitted and accidental.  La. Opp. at 10-11; Ala. Opp. at 9-11; *see also* Local Gov't Ent. Opp. at 12, n.7.  But Plaintiffs fail to say why that matters, and nothing in *Ouellette* suggests it should be read so narrowly.  In *Ouellette*, the Supreme Court recognized that the result of allowing the application of the statutory and common law of every potential affected state would result in a "chaotic" regulatory structure, one Congress could hardly have intended. 479 U.S. 496-97.[5]  The same is true here, where the incident in question occurred outside the territory of <u>any state</u> (meaning that every state is an affected state for the purposes of a *Ouellette* analysis), and Plaintiffs seek the application of federal statutory and general maritime law along with the statutory and common law of no fewer than <u>five</u> states.

c.    OPA displaces general maritime law and provides Plaintiffs' exclusive remedy for the damages they seek.

As the Supreme Court recently recognized, "[w]hen Congress addresses a question previously governed by a decision rested on federal common law,". . . "the need for such an

---

[5] Alabama's argument that *Ouellette* cannot apply because Defendants could have complied with all of the affected state's laws by not spilling any oil is overly simplistic. Ala. Opp. at 10.  Obviously, the defendant in *Ouellette* could have avoided the operation of Vermont law by not discharging any pollutants, but that was not the point of the Supreme Court's holding, which was that application of the law of every possible affected state to a discharge created an unworkable system.  The Supreme Court did not sanction a case-by-case review of each potential fact pattern to determine whether the affected state's laws were consistent, or hold that an affected state's law could apply if a discharge violated the law of more than one state.  In fact, as explained above, the defendant in *Ouellette* was alleged to have been in violation of its state mandated permit.  479 U.S. at 498, n.18.

unusual exercise of law-making by the federal courts disappears." *Am. Electric Power Co. v. Connecticut*, 180 L. Ed. 435, 2011 U.S. Lexis 4565, *21 (June 20, 2009). "The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute at issue 'speak[s] directly to the question' at issue." *Id.* (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)). Thus, in *American Electric Power Co.*, the Court held that the Clean Air Act displaces "any federal common law right to seek abatement of carbon-dioxide emissions from [certain] power plants." *Id.* at *22. Here, because OPA "speaks directly to the question" of remedies for oil-spill related damages, any general maritime law remedies are displaced.[6]

Alabama and Louisiana disagree, citing OPA's "savings clause," in support of their contention. La. Opp. at 6; Alabama Opp. at 11-13. But they ignore the express language of this provision:

> **Except as otherwise provided in this Act**, this Act does not affect – (1) admiralty and maritime law; or (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors all other remedies to which they are otherwise entitled.

33 U.S.C. § 2751(e) (emphasis added). Plaintiffs read the "Savings Provision" as if the first phrase does not exist. In overlooking this clause, Plaintiffs fall into the trap identified in *Gabarick v. Laurin Maritime (Am.), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009).[7] In *Gabarick*,

---

[6] The Local Government Entities quote *American Electric Power Co.* for this proposition as though it supports their argument, stating that OPA does not speak directly to the issues at hand. Loc. Gov't Ent. Opp. at 22. This argument is without merit and the Local Government Entities do not explain how "Congress's attempt to provide a comprehensive framework in the area of marine oil pollution," does not speak to the issue of remedies for oil-spill related damages. *Tanguis*, 153 F. Supp. 2d at 867 (citations omitted).

[7] The Local Government Entities state that the phrase "[e]xcept as otherwise provided in this Act" means "where not specifically provided within the statute." Loc. Gov't Ent. Opp. at 18. Thus, the Local Government Entities conclude that "general maritime law is likely displaced to the extent that a person or entity seeks the removal costs or damages 'provided in' OPA from the responsible party," but not with respect to traditional maritime remedies against other parties or for claims such as punitive damages not provided for in OPA. *Id.* The Local Government Entities cite no authority for this construction, which directly conflicts with the analysis in *Gabarick*, 623 F. Supp. 2d at 746-51,

the Court held that "all claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Id*. at 750-51.  The *Gabarick* court specifically noted that "[c]laimants[] ignore[] the first part of *section (e)* . . . [and] cloud the issue at bar by arguing that OPA does not preempt general maritime law claims rather than focusing on preemption solely of the damages specifically covered by OPA." *Id*. at 746.

Plaintiffs similarly attempt to cloud the issues here.  As this Court explained in *Gabarick*, consistent with the text of the savings clause, OPA does not preempt <u>all</u> general maritime claims. Rather, it preempts only those maritime claims seeking damages of the type recoverable under OPA.  *Id*. at 746-47.  Thus, the savings provision, properly interpreted, provides that OPA does not affect admiralty and maritime law, except with respect to claims for damages of the types recoverable under OPA.  *Id*. at 746.

Other decisions from this Court likewise interpret OPA's displacing effect on maritime law consistently with *Gabarick*.  For instance, in *In re Settoon Towing LLC,* this Court dismissed general maritime claims brought by the United States because OPA provided relief for the damages asserted in the United States' general maritime claims.  No. 07-1263, 2009 U.S. Dist. LEXIS 113534, at **9-10 (E.D. La. Dec. 4, 2009).  Likewise, in *Tanguis,* this Court held that "OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills" and that "[t]his new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies."  153 F. Supp. 2d at 867 (citing *Nat'l Shipping Co. of Saudi Arabia, v. Moran Mid-Atl. Corp.,* 924 F. Supp. 143 (E.D. Va. 1996)).  Similarly, in *Isla Corp. v. Sundown Energy, LP,* this Court noted that "OPA is the

which holds, for example, that the mandatory language of OPA means that a claimant should pursue claims covered under OPA only against the responsible party and *South Port Marine v. Gulf Oil Ltd P'ship,* 234 F.3d 58, 65 (1st Cir. 2000), in which the First Circuit held that OPA does not permit the recovery of punitive damages (discussed herein at III.V.D.).

exclusive federal remedy" for oil spill liability.  2007 U.S. Dist LEXIS 31259, at *4 (E.D. La. 2007).

Alabama cites provisions of legislative history in support of its contention that OPA does not displace general maritime law.  But the *Gabarick* court specifically considered and rejected the contention that OPA's legislative history supports Plaintiffs argument here and recognized OPA's displacing effect on maritime law.  *Gabarick*, 623 F. Supp. at 747.  Accordingly, OPA supplies Plaintiffs' sole remedy for the damages they allege to the exclusion of state law claims.

**2.      Dismissal of Plaintiffs' claims is not premature because HESI has not been and cannot be named a responsible party under OPA.**

As argued in HESI's Memorandum, since OPA is Plaintiffs' sole remedy and OPA only permits claims against a responsible party, Plaintiffs' claims against HESI must be dismissed. Mem. at 25-26.  Louisiana incorrectly asserts that it would be premature to dismiss its claims against HESI, because HESI might later be named a responsible party and that its non-OPA claims should survive because those claims need not be brought solely against a responsible party. La. Opp. at 17-19.  Louisiana's arguments must fail.  As previously discussed, Plaintiffs' "non-OPA" state law claims must be dismissed because application of state law is foreclosed under OCSLA and the CWA.  Moreover, any "non-OPA" general maritime law claims are likewise displaced as OPA is Plaintiffs' exclusive remedy.  Thus, *Smith v. Mid-Valley Pipeline Co.,* No. 3:07-CV-13-KKC, 2007 WL 1309612 (E.D. Ky. 2007), a non-OCSLA case cited by Louisiana in which the court permitted state law claims to proceed while dismissing OPA claims against a non-responsible party, has no application here.

Moreover, dismissal is not premature.  The designation of a "responsible party" is more than a mere administrative requirement.  The designation identifies and limits the parties against whom claimants can bring OPA claims for removal costs and/or damages.  Importantly, this

Court has confirmed that the limitation of direct liability to "responsible parties" has its roots in Congressional intent:

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA . . ., it appears that Claimants should pursue claims covered under OPA *only against the responsible party* and in accordance with the procedures established by OPA. Then, the responsible party can take action to recover against third parties.

*Gabarick*, 623 F. Supp. 2d at 750 (emphasis added). Louisiana argues that "the ultimate determination of which party or parties is a responsible party, within the meaning of 33 U.S.C. § 2702(a), is to be made by the court." La. Opp. at 18. In support of its position, Louisiana cites *Gabarick v. Laurin Mar. (Am.), Inc.*, 2009 U.S. Dist. Lexis 20974 (E. D. La. 2009) (Africk, J.)[8]. In *Gabarick*, the Court refused to dismiss the OPA claims of a responsible party (ACL) against a non-responsible party (DRD), because ACL sought to preserve its right to have DRD designated as a responsible party. *Id.* at *21-24.[9] Nothing in that opinion stands for the proposition that a Plaintiff can make OPA claims against a defendant who is not a responsible party. Nor is there any other authority to support such a contention.

In any event, however, Louisiana neither alleges nor argues any basis for HESI to be designated as a responsible party. Louisiana states that "[t]he facts alleged in the State's First Amended Complaint when taken as true establish that the acts or omissions of Defendants Cameron, Halliburton, M-I, and Weatherford (as well as Anadarko, BP, MOEX and Transocean) caused the spill." La. Opp. at 18. While untrue, Louisiana nonetheless fails to trace "the acts or

---

[8] Note, there are a series of opinions issued by the Eastern District of Louisiana pertaining to the suit by and between Stephen Gabarick and Laurin Maritime (America) Inc. *et al.* The particular opinion cited by the state of Louisiana concerns whether the court had subject matter jurisdiction over counter-claims filed by the owner of the barge involved in the personal injury suit. The particular *Gabarick* opinion cited by Louisiana is not the same as, and in fact did not address the issues involved in *Gabarick v. Laurin Maritime (Am.), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009), where the Court opined regarding the propriety of pursuing OPA claims against parties who are not designated as "responsible" parties under OPA.

[9] DRD's motion to dismiss the Plaintiffs' OPA claims against it was not opposed and those claims were in fact dismissed. *Gabarick*, 2009 U.S. Dist. Lexis 20974, at *23-24

omissions of. . . Halliburton. . . [that] caused the spill" to any basis for Halliburton being named a responsible party under OPA at some undetermined time in the future.  *See* 33 U.S.C. § 2701 (32); § 2702 (d).  The only basis for a third party to be treated as a responsible party under OPA is for a responsible party (not a Plaintiff) to establish that a discharge was caused solely by an act or omission of one or more third parties not in connection with any contractual relationship with the responsible party. 33 U.S.C. §§ 2702 (d), 2703(a).[10]  Louisiana has not alleged any facts indicating that HESI meets the definition of a "responsible party."  *See* La. Complaint at ¶ 159. Nor has Louisiana provided any authority suggesting that OPA allows a claimant to seek damages or removal costs against a third party who is not a responsible party.  Plaintiffs' sole remedy for their OPA claims lies against designated responsible parties, a fact that additional time cannot change .

### 3.   Dismissal is proper for any Plaintiff who failed to comply with OPA's mandatory presentment requirement.

OPA's pre-suit presentment requirements create a mandatory condition precedent to recovery under OPA (*see Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235, 240 (11th Cir. 1995)), and failure to comply with OPA's pre-suit presentment requirements constitutes a jurisdictional defect, warranting dismissal.  *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996).  The Local Government Plaintiffs cite no authority to the contrary.  However, the Local Government Plaintiffs do argue that they are excused from presentment of their removal costs by operation of OPA § 2717(f)(2), citing *U.S. v. M/V Cosco Busan*, 557 F. Supp. 1058, 1062 (N.D. Cal. 2008).  Loc. Govt.  Opp. at 23-25.  But neither the text of OPA nor *Cosco Busan* supports this assertion.  First, § 2713's presentment

---

[10] Given that HESI maintained a contractual relationship with BP Exploration & Production, a party designated by the Coast Guard as an OPA "responsible party," there is no basis for HESI's status under OPA to ever change.

requirement is specific and mandatory, and does not except removal costs for a governmental entity or anyone else.  Rather, "all claims for removal costs or damages shall be presented first to the responsible party…" 33 U.S.C. § 2713(a).  Section 2717(f) is a limitations provision addressing generally when an action for removal costs may be brought.  It does not mention presentment and cannot be construed to provide an exception to § 2713's specific requirement for presentment.  *See also United States v. Murphy Exploration & Prod. Co.*, 939 F. Supp. 489, 492 (E.D. La. 1996) (acknowledging lack of support for the government's position that it could disregard §2713, but finding that the government had met its requirements).[11]

But even if § 2717(f)(2) could provide an exception to § 2713's presentment requirement, and it does not, it would not do so for the Local Government Plaintiffs.  Section 2717(f)(2) applies only to "recovery of removal costs referred to in [§ 2702(b)(1)]."  Section 2702(b)(1) applies only to removal costs incurred by the United States, a State, an Indian Tribe," or a person acting consistent with the National Contingency Plan.  OPA's definition of "United States" and "State" is "the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession of the United States."  33 U.S.C. § 2701(3).  The Local Government Plaintiffs are "local government entities or officials, including cities, towns, counties, villages, parishes, municipalities, special districts, school boards, sheriffs, district attorneys, public boards, institutions, departments, commissions, districts, corporations, agencies, authorities, and any agencies or subdivisions of any of these,

---

[11] Alabama argues that §2713(b) makes an exception for claims for removal costs made by a State's Governor.  Ala. Opp. at 22.  But §2713 (b) merely provides that the Governor of a State may first present claims for removal costs to the Oil Spill Liability Trust Fund.  Alabama further argues that non-responsible parties have no standing to object to lack of presentment.  Ala. Opp. at 26.  Of course, OPA does not permit claims against a non-responsible party at all, and Alabama did not assert OPA claims against HESI.  But, in the event that Plaintiffs were to assert OPA claims against HESI, Alabama cites no authority that HESI cannot object to Plaintiffs' failure to comply with, at a minimum, a mandatory condition to bringing suit.

and any other local public or governmental bodies of any kind which are not state agencies, in Florida, Alabama, Mississippi, Louisiana, and Texas…."  Master Complaint at ¶ 178.  As such, they do not fall within the definition of "State."  They also do not allege that they acted pursuant to the National Contingency Plan.  *Cosco Busan*, which dealt with removal claims and damages sought by the United States, does not stand for the proposition that the Local Government Entities are excused from OPA's presentment requirements.  557 F. Supp. at 1062.

Accordingly, OPA's pre-suit presentment requirements apply to Plaintiffs' OPA claims and any failure to comply with these jurisdictional, mandatory conditions precedent warrants dismissal of those claims.

**B.    Dismissal of Plaintiffs' Claims Under General Maritime Law is Likewise Proper.**

**1.    *The economic loss rule bars recovery of purely economic damages.***

*Robins Dry Dock & Repair Co.* stands for "the prevailing rule" that denies any Plaintiff "recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest."  *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985).  Stated otherwise, the well-established rule in *Robins Dry Dock* holds that "there [can] be no recovery for economic loss absent physical injury to a proprietary interest[.]"  *M/V Testbank*, 752 F.2d at 1023.  Thus, even if not displaced by OPA, Plaintiffs' general maritime claims fail to the extent that they seek recovery for economic losses absent a physical injury.  Mem. at 26-27. In their Complaints, Plaintiffs assert unintentional maritime tort claims, including negligence, gross negligence, negligence *per se*, private nuisance and public nuisance claims.  *See* Master Complaint at ¶¶542-658; ¶¶La. Complaint at 239-292; ¶¶Ala. Complaint at 94-204.  Those claims would fail under the general maritime economic loss rule to the extent that Plaintiffs seek recovery of economic damages absent an accompanying physical harm to a proprietary interest.

*See Robins Dry Dock & Repair Co. v. Flint et al.*, 275 U.S. 303, 309 (1927); *M/V Testbank,* 752 F.2d at 1020.

Alabama and the Local Governmental Entities argue that the 1986 amendments to CERCLA, codified at 42 U.S.C. § 9607(h), abrogate the *Testbank* rule.  Ala. Opp. at 33; Loc. Gov't Ent. Opp. at 26.   But CERCLA did not overrule *Robins Dry Dock* or *Testban*k, and Plaintiffs cite no cases in support of their argument.   In fact, the Fifth Circuit has continued to apply *Testbank* since 1986.   *See e.g., In re Taira Lynn Marine Ltd No. 5*, 444 F.3d 371, 377 (5th Cir. 2006).   Moreover, no Plaintiff has alleged a CERCLA claim against HESI and, even if it did, Alabama demonstrates that the provision at issue applies only to a vessel owner or operator.  Ala. Opp. at 34 ("Section 107 of CERCLA is amended to clarify that a vessel owner would be liable in accordance with section 107 under maritime tort law. . . ").   HESI was neither the owner nor the operator of the *Deepwater Horizon*.

Alabama and the Local Government Entities further argue that their general maritime claims are not subject to the *Testbank* rule because *Robins Dry Dock* should only be construed to apply in cases where the Plaintiff is damaged because of injury to a party in privity with the Plaintiff.   Ala. Opp. at 34-35 (relying upon *Hercules Carriers, Inc. v. State of Florida*, 720 F.2d 1201, 1203 (11th Cir. 1983) *vacated and affirmed*, 728 F.2d 1359 (11th Cir. 1984)); Loc. Gov't Ent. Opp. at 26 (same).   *Testbank* and the Fifth Circuit do not recognize or follow this limitation on the economic loss rule.   *See Testbank*, 752 F.2d at 1023 (rejecting the Plaintiff's invitation to confine *Robins Dry Dock* to "losses suffered for inability to perform contracts between a Plaintiff and others").

Finally, Alabama and the Local Governmental Entities argue that the *Testbank* rule does not apply to intentional torts or ultrahazardous activity.  Ala. Opp. at 35-36; Loc. Gov't Ent. Opp.

16

at 26-27.  As an initial matter, *Testbank* addressed the question whether to "abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort."  752 F.2d at 1020.  *Testbank* did not address "intentional tort or ultrahazardous activity."  *Id.* at 1020, n.1.  Thus, *Testbank* did not hold that the economic loss rule does not apply to intentional torts or ultrahazardous activity because it did not address intentional torts or ultrahazardous activity.  Louisiana further argues that this Court should abandon the economic loss rule in the case of a governmental entity, following a single unreported opinion from the Southern District of Texas.  La. Opp. at 68; *Golnoy Barge Co. v. M/T Shinoussa*, No. H-902414, 1991 WL 267956 (April 29, 1991).  In *Golnoy*, the court decided that the Port of Houston Authority, a governmental entity, falls within a specially protected category of claimants similar to "commercial fishermen, crabbers, shrimpers and oystermen" for the purpose of the economic loss rule, and that there is no requirement of physical damage to property before recovery for economic loss is permitted.  1991 WL 267956, at *4-5.  But the Fifth Circuit has never recognized such an exception to the economic loss rule and, in fact, such an exception would be contrary to the Fifth Circuit's preference for a "the predictability afforded by the 'bright line rule' that allows Plaintiffs to recover economic losses only where the Plaintiff has suffered a physical injury to a proprietary interest."  *See Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also Testbank*, 752 F.2d at 1026 ("[W]e disagree with a case-by-case approach because we think the value of a rule is significant in these maritime decisions.").

   **2.    *Plaintiffs' claims for nuisance under general maritime law should be dismissed.***

   HESI moved for dismissal as to Louisiana's maritime nuisance claims on the ground that no such claim exists.  *See* HESI's Mot. at V.B.2 (citing *Seko Energy v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1014 (E.D. La. 1993) and *Nat'l Sea Clammers Ass'n v. City of New York*, 453

U.S. 1 (1981)).  Louisiana did not respond on this point.  Accordingly, Louisiana's maritime nuisance claim must be dismissed.

**C.**      **Plaintiffs' State Law Claims Fail as a Matter of Law.**

      *1.*      *Plaintiffs' Claims for fraudulent concealment fail.*

In its Motion, and in the alternative, HESI pointed out that if any state law applies to Plaintiffs' claims it is Louisiana state law, and that Plaintiffs have not alleged a duty to disclose under Louisiana law.  Mem. at 28-29 (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993) and *In re Ford Motor Cor. Vehicle Paint Litig.*, 1997 U.S. Dist. Lexis 13124 at *9-10 (E.D. La. 1997)).  Louisiana and the Local Governmental Entities did not respond to this argument.  Accordingly, HESI's Motion should be granted as to these Plaintiffs. Alabama did not respond to HESI's argument under Louisiana law, except to say that Alabama law applies and, under Alabama law, Alabama sufficiently alleges a duty to disclose.  Ala. Opp. at 53.

Even if Alabama law could apply (which is not the case, as HESI has already demonstrated), Alabama still requires a duty to disclose.  First, despite the state of Alabama's assertions to the contrary, whether there is a duty to speak is a question of law, under Alabama or Louisiana law.  *State Farm Fire & Cas. v. Owen*, 729 So.2d 834, 837-39 (Ala. 1998); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 421 (5th Cir. 2008).

Second, Alabama's sole allegation on this point is located in ¶274 of its First Amended Complaint:  "Halliburton had a duty to disclose because of the dire consequences of these facts and the risks attendant with the failure to disclose."  But duty "requires a relationship between two or more parties, a relationship that can be shown only through a history of contacts, conversations, and circumstances."  *Owen*, 729 So.2d at 840; *see also Gen. Motors Corp. v. Bell*, 714 So.2d 268 (Ala. 1996).  Alabama does not allege to whom HESI owed a duty to disclose;

nor does it allege any relationship between itself and HESI that would give rise to such a duty. Accordingly, under any applicable law, Plaintiffs' fraudulent concealment claims against HESI must be dismissed.

### 2.        Plaintiffs' state law nuisance claims fail.

In response to HESI's Motion to Dismiss its state-law nuisance claim, Louisiana responds that Louisiana law does not require that the property at issue be proximate to the wrongdoer's property and the property may be remote.  La. Opp. at 41 (citing *Gulf Ins. Co. v. Employers Liability Assurance Corp.*, 170 So.2d 125, 129 (La. Ct. App. 1964) and *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001)).  In *Roberts*, the Fifth Circuit cited several authorities, including *Gulf Ins. Co.*, for the proposition that, in order to be a "neighbor," and therefore "legally entitled. . . to maintain [a nuisance] action, a Plaintiff must show some type of ownership interest in immovable property *near that of the proprietor*."  266 F.3d at 386-87 (citing *Gulf Ins. Co.*, 170 So.2d at 129) (emphasis added).  This is consistent with other courts' treatment of the issue.   In *TS&C Inv., L.L.C. v. Beusa Energy*, the court, citing *Roberts*, recognized that proximity is necessary to be considered a "neighbor."  637 F. Supp 2d 370 (W.D. La. 2009).  There, representative Plaintiffs sought to bring a class action for damages sustained as the result of a well blowout near Interstate 10, asserting damage to their businesses as a result of the closure of the interstate.  *Id.* at 372, 381.  According to the *TS&C* court, the Louisiana Supreme Court had not spoken on the issue.  In recognizing the import of proximity, the Western District of Louisiana concluded that businesses located 20 miles away (including nine of the ten representative Plaintiffs) were not "neighbors" as contemplated in Article 667, the applicable statutory provision governing nuisance claims.  *Id.* at 384; *see also In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644 (E.D. La. 2009) (distance of three miles too attenuated for Plaintiffs to be considered "neighbors."); *Barasich v. Columbia Gulf Transmission Co.*, 467 F.

Supp. 2d 676, 690 (E.D. La. 2006) (definition of "neighbor" under Article 667 does not contemplate the relationship between parties that are in some cases hundreds of miles apart; "the restrictive meaning of the statutory language would be eviscerated.").  Thus, the proximity of any property allegedly harmed is fundamental to any claim for nuisance.  Because the proximity of Plaintiffs' property allegedly harmed is too remote and attenuated to support a nuisance claim, dismissal is proper.

### 3.    Louisiana law bars Plaintiffs' claims to the extent they seek economic damages absent a physical injury to a proprietary interest.

Similar to the economic loss rule under general maritime law, to the extent Louisiana substantive law applies, Plaintiffs' claims remain barred by the state economic loss rule.  *See* Mem. at 31-32.  In response to this argument, Louisiana concedes the application of the economic loss rule under Louisiana law, and otherwise makes the same arguments that it made in response to HESI's argument regarding the applicability of the economic loss rule to Louisiana's general maritime claims.  Those arguments are addressed in Part V.B.1, *supra*.

Louisiana further argues that the economic loss rule does not apply to its LOSPRA claims. La. Opp. at 65-67.  Plaintiff argues that LOSPRA, "as the State's statutory complement and supplement to OPA" is not subject to the economic loss rule, "nor could [it be] without an act of the Legislature." La. Opp. at 66.  However, as shown in HESI's Memorandum, LOSPRA no longer allows for the recovery of purely economic losses, effectively adopting and incorporating the economic loss rule in its text.  *See* 1995 La. Act 740, § 2 (repealing La. Rev. Stat. 30:2454(5)(e)).  Moreover, case law is clear.  Damages of the type recoverable under LOSPRA (and alleged by the state of Louisiana) are subject to the economic loss rule.  *See La. Crawfish Producers Ass'n v. Amerada Hess Corp.,* 935 So. 2d 380, 382 (La. Ct. App. 2006); *see also TS&C Invs. L.L.C.,* 637 F. Supp. 2d at 376, 381; *see also Barasich v. Shell Pipeline Co., LP,*

2006 U.S. Dist. LEXIS 84389 *25-26 (E.D. La. Nov. 20, 2006) (Barbier, J.). Accordingly, Louisiana's claims for purely economic damages must be dismissed.

### 4.      Alabama has not stated a claim for civil penalties under the Alabama Hazardous Waste Disposal Act.

HESI argued in its Motion that Alabama did not state a claim under the Alabama Hazardous Waste Disposal Act because Alabama's Complaint demonstrates that Alabama does not allege that HESI was involved in the discharge of chemical dispersants. Alabama did not respond to this argument in its Opposition. Accordingly, Alabama's claim under the Alabama Hazardous Waste Disposal Act must be dismissed.

## D.    Any Claim for the Recovery of Punitive Damages Must be Dismissed.

Louisiana and Alabama argue that punitive damages are available because OPA neither displaces maritime law nor preempts state law, which purportedly allow for the recovery of punitive damages. La. Opp. at 71-73;[12] Ala. Opp. at 17-19. No OPA preemption analysis is necessary, however, because HESI argues that OCSLA applies maritime law to the exclusion of state law, and HESI does not argue that OPA directly preempts state claims for the types of damages Plaintiffs assert. *See* Mem. at 19-23; *S. Port Marine LLC v. Gulf Oil Ltd. Pshp.* 234 F.3d 58, 65 (1st Cir. 2000).

### 1.      Plaintiffs may not recover punitive damages under OPA.

Plaintiffs' argument in favor of punitive damages under OPA runs afoul of the holding of the only federal appellate court addressing the issue, which neither Louisiana nor Alabama even address. In *South Port Marine*, the First Circuit recognized that OPA supplants all prior, existing federal law governing oil spill pollution under certain circumstances and specifically held that Congress intended not to allow for the recovery of punitive damages under OPA. 234 F.3d at 66.

---

[12] Louisiana did not assert a punitive damages claim against HESI.

Nevertheless, like the Plaintiffs in *South Port Marine,* Alabama contends that in enacting OPA, "Congress reacted to the *Valdez* disaster by providing broader protection and remedies to Spill-victims.  It is incomprehensible that the same Congress desired OPA shield Defendants from punishment for willful, reckless and otherwise reprehensible conduct upon proof of such conduct."  Ala. Opp. at 18 (emphasis omitted); *cf S. Port Marine,* 234 F.3d at 66.  The *South Port Marine* court responded to this argument by observing that "it would be naïve to adopt so simpleminded a view of congressional policymaking in light of the competing interests addressed by [OPA]."  *Id.*  The First Circuit explained that such policymaking is evidenced by OPA's remedial scheme which "imposes strict liability for oil discharges, provides both civil and criminal penalties for violations of the statute, and even removes the traditional limitation of liability in cases of gross negligence or willful misconduct[,]" while "preserv[ing] the liability caps in most cases and declin[ing] to impose punitive damages."  *Id.*  The Court concluded that "the resolution of these difficult policy questions is better suited to the political mechanisms of the legislature than to our deliberative process."  *Id.*  Thus, the only authority addressing the recovery of punitive damages for OPA damages prohibits such a recovery and this Court should, respectfully, follow suit.

### 2.        *Plaintiffs' reliance on* **Baker** *and* **Townsend** *is misplaced.*

Finding no support in OPA case law for the recovery of punitive damages, Plaintiffs rely instead on two non-OPA cases, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) and *Atlantic Sounding Co. v. Townsend,* 129 S. Ct. 2561 (2009).  La. Opp. at 71-72; Ala. Opp. at 17-18; Loc. Gov't Ent. Opp. at 21.  This reliance is misplaced.

In *Baker*, the Supreme Court held that the CWA, which did not provide a recovery for the kinds of damages sought by Plaintiffs there and which Exxon conceded did not displace compensatory remedies for the Plaintiffs' injuries, could not displace punitive damages.  554

U.S. at 489.  Recognizing that Exxon's claim to the contrary was "untenable," the Court stated that "nothing in the statute points to that result" and the proposed application of the CWA would "sever remedies from their causes of action"—an interpretation unsupported by the statute or its legislative history.  *Id.*  Reasoning that the recovery of punitive damages for private harms would unlikely have any frustrating effect on the CWA's remedial scheme, the Court held that punitive damages were not displaced by the CWA.  But this is not the case here.  OPA's remedial scheme includes a comprehensive list of available remedies intended to fully compensate the victims of oil spills for their losses.  *See* 33 U.S.C. § 2702(b).  Indeed, OPA's remedial scheme supplies remedies for all of the compensatory damages Plaintiffs allege.  *See* Mem. at 20-21.

In *Townsend,* the Supreme Court found that the Jones Act, in creating a statutory cause of action for negligence, "did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure."  129 S. Ct. at 2570.  The Court held that "nothing in the statutory scheme for maritime recovery restricts the availability of punitive damages for maintenance and cure for those, like respondent, who are not precluded from asserting the general maritime claim.*"  Id.*  Thus, the availability of punitive damages in *Townsend* depended on a finding that the cause of action on which the punitive damages claim was based survived displacement by the federal statute.  Unlike *Townsend,* the court in *South Port Marine* was not inquiring whether a general maritime claim survived OPA.  Rather, it inquired whether an OPA claim could support an award of punitive damages, and held that one could not.

The *South Port Marine* court correctly held that, for oil spill-related claims, OPA supplants the general maritime law allowing punitive damages.  Plaintiffs cannot recover punitive damages in this case as a matter of law.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, HESI's Motion to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third Party Complaint for Local Governmental Entities (Dkt. No. 1510), the State of Alabama's First Amended Complaint (Dkt. No. 1872), and the State of Louisiana's First Amended Complaint (Dkt. No. 2031) should be granted, and the Court should dismiss Plaintiffs' claims against HESI in their entirety.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**   /s/  _Donald E. Godwin, T.A._
Donald E. Godwin, T.A.
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
BBowman@GodwinRonquillo.com
Jenny L. Martinez
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
FHartley@GodwinRonquillo.com
Gavin Hill
GHill@GodwinRonquillo.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply in Support of Halliburton Energy Services, Inc's Motion to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 5th day of August, 2011.

 /s/  Donald E. Godwin
Donald E. Godwin