# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Case No. 2:11-cv-00516; | * | |
| Case No. 2:10-cv-03059 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*


# DEFENDANT MOEX OFFSHORE 2007 LLC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF THE STATE OF LOUISIANA

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 3

   A.  Louisiana's Claims Under Maritime Law Have Been Displaced By
       OPA.................................................................................................................... 3

   B.  Louisiana's OPA Claims Must Be Dismissed For Failure To
       Comply With OPA's Presentment Requirements................................................ 5

   C.  Louisiana Fails To State A Claim Against Offshore for Negligence
       Under General Maritime Law............................................................................. 8

   D.  OCSLA's Choice-of-Law Provision Applies to Activities on the
       OCS and Requires Exclusive Application of Federal Law in this
       Case.................................................................................................................. 10

   E.  Louisiana's State-Law Claims Must Be Dismissed.......................................... 15

III. CONCLUSION............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page**

### CASES

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988)....................................9

*Askew v. America Waterways Operators, Inc.*,
    411 U.S. 325 (1973)....................................................................................................12

*Boca Ciega Hotel, Inc. v. Bouchard Transport Co. Inc.*,
    51 F.3d 235 (11th Cir. 1995) .................................................................................6, 7

*Bowen v. Georgetown University Hospital*,
    488 U.S. 204 (1988)....................................................................................................17

*Burks v. United States*,
    633 F.3d 347 (5th Cir. 2011) ....................................................................................17

*Burnett v. Stewart Title, Inc. (In re Burnett)*,
    635 F.3d 169 (5th Cir. 2011) ......................................................................................6

*Chevron U.S.A. v. NRDC*,
    467 U.S. 837  (1984)..................................................................................................17

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ......................................................................................9

*Diamond Offshore Co. v. A&B Builders, Inc.*,
    302 F.3d 531 (5th Cir. 2002) ....................................................................................11

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ......................................................................................9

*Gabarick v. Laurin Maritime (Am.), Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009)..........................................................................5

*Grammer v. Patterson Services, Inc.*,
    860 F.2d 639 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989)......................................10

*Guillory v. Conoco, Inc.*,
    521 So. 2d 1220 (La. App. 3d Cir. 1988) ......................................................................10

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981)....................................................................................................13

*Hallstrom v. Tillamook County*,
    493 U.S. 20 (1989)......................................................................................................8

*Henderson v. Shinsekie*,
    __U.S.__, 131 S. Ct. 1197 (2011) ..................................................................6, 7

*Hufnagel v. Omega Serv. Industries, Inc.*,
    182 F.3d 340 (5th Cir. 1999) ...............................................................................12

*Int. Paper Co. v. Ouellette*,
    479 U.S. 481 (1987)..............................................................................................14

*Kane Enterprises v. MacGregor (USA) Inc.*,
    322 F.3d 371 (5th Cir. 2003) .................................................................................9

*In re Katrina Canal Breaches Litigation*,
    495 F.3d 191 (5th Cir. 2007) .................................................................................9

*Marathon Pipe Line Co. v. LaRouche Industrial Inc.*,
    944 F. Supp. 476 (E.D. La. 1996)..........................................................................6

*Norfolk Shipbuilding & Drydock Corp. v. Garris*,
    532 U.S. 811 (2001)...........................................................................................3, 4

*Rodrigue v. Aetna Casualty & Surety Co.*,
    395 U.S. 352 (1969)............................................................................................11

*Rogers v. Coastal Towing, LLC*,
    723 F. Supp. 2d 929 (E.D. La. 2010) ..................................................................15

*Russo v. M/T Dubai Star*
    2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) ......................................................6

*South Port Marine, LLC  v. Gulf Oil LP*,
    234 F.3d 58 (1st Cir. 2000)...................................................................................4

*Tanguis v. M/V Westchester*,
    153 F. Supp. 2d 859 (E.D. La. 2001)..............................................................4, 13

*Thomas v. Burlington Resources Oil & Gas Co.*
    2000 WL 1528082 (E.D. La. Oct. 13, 2000) .......................................................9

*Turner v. Murphy Oil USA, Inc.*,
    2007 WL 4208986 (E.D. La. Nov. 21, 2007) .......................................................6

*Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*,
 895 F.2d 1043 (5th Cir. 1990) ...................................................................................11, 12

*United States and State of Louisiana v. Citgo Petroleum Corp.*,
 2010 WL 1754167 (W.D. La. June 24, 2008) ................................................................17

*United States v. Locke*,
 529 U.S. 89 (2000)..........................................................................................................12

*United States v. M/V Cosco Busan*,
 557 F. Supp. 2d 1058 (N.D. Cal. 2008) ..........................................................................6

*Yamaha Motor Corp. v. Calhoun*,
 516 U.S. 199 (1996).......................................................................................................15

## STATUTES AND RULES

30 C.F.R. 250.280 ....................................................................................................................14

33 U.S.C. §2413 .........................................................................................................................5

33 U.S.C. §2701 ......................................................................................................................1, 8

33 U.S.C. §2702 ......................................................................................................................3, 5

33 U.S.C. §2713 .............................................................................................................5, 6, 7, 8

33 U.S.C. §2751 .........................................................................................................................4

43 U.S.C. §1333.............................................................................................................11, 12, 13

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 9, 10, 15

La. Rev. Stat. Ann. § 30:2025 ................................................................................................16

## OTHER

135 Cong. Rec. H7954-02 (daily ed. Nov. 2, 1989) ......................................................................7

H.R. Rep. No. 101-242 (1989)......................................................................................................7

H.R. Rep. No. 101-653 (1990).......................................................................................................4

H.R.Rep. No. 95-590 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1450 ..........................................13

S. Rep. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722.....................................................13

Defendant MOEX Offshore 2007 LLC ("Offshore") submits this Reply Brief in further support of its Motion to Dismiss the First Amended Complaint of the State of Louisiana pursuant to Fed. R. Civ. P. 12(b)(6), and in response to the State of Louisiana's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the State of Louisiana's First Amended Complaint (Doc. 3213) ("L. Mem.").[1]

## I.    INTRODUCTION

The State of Louisiana's First Amended Complaint asserts five categories of claims against Offshore: (1) claims for damages and removal costs under OPA, 33 U.S.C. §§2701-2762 (Counts I and V); (2) claims for damages and removal costs under state statutes (Counts II, IV, and VI); (3) claims for damages for negligence, trespass and nuisance under maritime law (Counts VII-IX); (4) claims for civil penalties under various Louisiana statutes (Count III): and (5) claims for damages under various state tort statutes (Counts XI-XV, and XXIII).  Louisiana First Amended Complaint (Doc. 2031) ("Complaint") at ¶¶153-167, 190-194, 168-180, 195-221, 222-238, 239-269, 181-189, 293 - 327, 379-385.  Offshore has moved to dismiss these claims.

Central to Offshore's motion to dismiss is the authority of the Oil Pollution Act, 33 U.S.C. §2701, *et seq.* (2010)and the federal regulatory scheme for the Outer Continental Shelf on the claims at bar.  Louisiana's opposition memorandum acknowledges that OPA provides a uniform and comprehensive process for addressing oil spills.  L. Mem. 5.  Indeed, Louisiana takes full advantage of OPA's remedial scheme, asserting claims for the broad categories of damages available to it under OPA's comprehensive damages provision.  *See* Complaint ¶203.  Yet, even while acknowledging OPA's effective replacement of multiple statutory and maritime

---

[1]  Except where otherwise defined, the abbreviations and citation forms adopted in the Consolidated Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC to Dismiss the First Amended Complaints of the State of Louisiana and the State of Alabama (Doc. 2649-1) ("D. Mem.") are continued herein.

law regimes and the statute's creation of a single liability regime for oil spills, Louisiana argues that OPA's savings clauses preserve the pre-existing state liability schemes and allow for duplicative, additional claims.  Louisiana additionally attempts to subvert the federal scheme by asserting that state law should also apply to an oil spill occurring at a situs under federal jurisdiction, despite provisions of Outer Continental Shelf Liability Act (OCSLA) which mandate the application of federal law.  Ignoring the fact that its multiple claims are duplicative and overlapping, as well as the broad reach of the remedial provisions of OPA, Louisiana would have the Court believe that granting Offshore's motion would leave the State without a remedy.[2]

The seriousness of the Deepwater Horizon spill does not justify ignoring or misinterpreting the provisions of OPA, which Congress enacted after another major oil spill to assure that injured parties in future spills would obtain appropriate compensation.  Louisiana's claims under maritime law seek remedies that Congress has made available to it under OPA; therefore, Louisiana's right to seek such remedies has been displaced by the passage of OPA.  Likewise, the remedies for an oil spill from a source on the Outer Continental Shelf, outside state waters, are federal under the provisions of OCSLA.  Indeed, even if maritime law were not displaced by OPA, or if state law could be applied to the Deepwater Horizon spill under OCSLA, Louisiana's tort claims under general maritime and state law for negligence, gross negligence and wantonness must fail because Offshore cannot be held liable for the acts of an independent contractor such as BP Exploration & Production ("BP E&P").

Therefore, as set forth more fully below, Louisiana's claims against Offshore, both under maritime and state law, should be dismissed as a matter of law.  Louisiana's claims under OPA should also be dismissed, at a minimum for failure to comply with the statute's presentment

---

[2]  In identifying the motions to which it responded, Louisiana did not list the motion to dismiss filed by Offshore, Doc. 2649-1.  *See*  L. Mem. 1.  That omission was apparently an error.

provisions.

## II.     ARGUMENT

### A.     Louisiana's Claims Under Maritime Law Have Been Displaced By OPA.

Offshore argued that Louisiana's general maritime claims must be dismissed because the exclusive federal remedy for claimants seeking "covered damages" following an oil spill is provided under OPA.  D. Mem. at 3-4.  In opposition, Louisiana asserts that OPA's plain language preserves maritime law.  L. Mem. 11-13.  Louisiana is incorrect:  the claims brought against Offshore under maritime law are duplicative of existing claims under OPA, and are thus displaced.

Louisiana does not dispute that, through OPA, Congress intended to provide a comprehensive process governing cleanup, penalties and liability related to oil spills in the United States.  *See* L. Mem. 5, 55.  Where a federal statute squarely addresses an issue or provides a remedy, duplicative or supplemental remedies under the general maritime law are *automatically* displaced.  *See Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811, 817 (2001) ("[E]ven in admiralty, `we have no authority to substitute our views for those expressed by Congress in a duly enacted statute' ... when a statute resolves a particular issue, we have held that the general maritime law must comply with that resolution.") (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 626 (1978)).  OPA provides a private right of action for recovery of economic losses resulting from injuries to natural resources, real or personal property, subsistence use, loss of revenues, profits and earning capacity, and costs associated with additional public services, where those losses result from an oil spill in navigable waters. 33 U.S.C. §2702(b)(2)(A)-(F). It also allows for recovery of removal costs incurred. *Id.* §2702(b)(1).

Accordingly, courts uniformly hold that Congress intended OPA to be the exclusive federal law governing oil spills, displacing maritime causes of action, including requests for punitive damages. *See* D. Mem. 3-4 and cases cited.

Louisiana seeks to recover numerous types of damages and costs from Offshore, including removal costs, natural resources damages, property damage and related economic loss, loss of revenues, and costs associated with additional public services. *See* Complaint ¶239-269. All of these categories are clearly covered by OPA. Thus, absent a clear statement of Congress to the contrary, OPA is the only recourse that federal law affords for these covered removal costs and damages. *See Norfolk Shipbuilding & Drydock Corp.,* 532 U.S. at 817.

Although OPA includes a savings provision related to admiralty and maritime law, it does not save Louisiana's general maritime claims. The provision states: "[e]xcept as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law." 33 U.S.C. §2751. In other words, "there is no change in current law *unless there is a specific provision to the contrary."* H.R. Rep. No. 101-653, at 159 (1990) (Conf. Rep.) (emphasis added). Under current (and longstanding) law, maritime remedies are automatically displaced by an on-point federal statute. *See Norfolk Shipbuilding & Drydock Corp.,* 532 U.S. at 817. Nothing in the OPA savings clause changes this principle. Intending to establish a uniform system for dealing with compensation for oil spill injuries, Congress would not have simply overlaid them with yet another compensation system. Instead, it supplanted them. Every court that has ever considered the issue has held that OPA preempts traditional maritime remedies. *See, e.g., South Port Marine,* 234 F.3d 58, 65-66; *Tanguis v. M/V Westchester,* 153 F.Supp.2d 859, 867-68 (E.D. La. 2001) ("the first subsection of the admiralty and maritime savings clause recognizes that certain maritime remedies are preempted by OPA"); *see also id.* at 867 (stating that OPA "includes new

remedies, which, in many respects, preempt traditional maritime remedies"); *Gabarick v. Laurin Maritime (Am.), Inc.,* 623 F.Supp.2d 741, 750-51 (E.D. La. 2009) (holding specifically that covered damages enumerated in 33 U.S.C. §2702 are displaced by OPA).

Thus, because OPA displaces maritime negligence claims for covered damages and removal costs arising out of oil pollution, Louisiana's claims against Offshore under general maritime law (Counts VII-IX) must be dismissed.

**B.      Louisiana's OPA Claims Must Be Dismissed For Failure To Comply With OPA's Presentment Requirements.**

Offshore moved to dismiss Louisiana's claims under OPA because Louisiana failed to comply with OPA's requirement of presentment.  D. Mem. 4-6.  Louisiana responds that OPA's presentment requirements are minimal, and possibly optional in the Court's discretion.  L. Mem. 11-14.  Louisiana is wrong.  OPA's plain language, as well as case law decided under the statute, make clear that claims must first be presented to responsible parties before a court action is commenced.

Louisiana has asserted OPA claims against Offshore, both for removal costs and damages and for declaratory relief.  Yet, Louisiana's presentment allegations (Complaint ¶¶143-152) fail to plead that presentment was made to Offshore, and do not meet the statute's requirements.

OPA's presentment requirements are clear.  With exceptions not relevant here, under 33 U.S.C. §2713(a), all claims for removal costs or damages shall be presented first to the responsible party.  If liability is denied or a claim is not settled within sixty days, the claimant, at its election, may then commence an action against the responsible party or guarantor in court. *See* 33 U.S.C. §2413(d).  Louisiana has made no presentment to Offshore.

Louisiana asserts that its failure to comply with that mandatory statutory prerequisite is essentially irrelevant, because presentment is not "jurisdictional" (L. Mem. 11).  Yet, courts

consistently hold that OPA's presentment requirement "mandates dismissal when ... not complied with by the claimant." *Marathon Pipe Line Co. v. LaRouche Indus. Inc.,* 944 F. Supp. 476, 477 (E.D. La. 1996); *see also Russo v. M/T Dubai Star,* No. C 09-05158 SI, 2010 WL 1753187, at *2-3 (N.D. Cal. Apr. 29, 2010) (collecting cases).

Whether analyzed as a requirement for jurisdiction or not, "the clear text of §2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co. Inc.,* 51 F.3d 235, 240 (11th Cir. 1995); *see also Turner v. Murphy Oil USA, Inc.,* No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (presentment provision is a "'mandatory condition precedent' to bringing a suit under OPA) (quoting *Boca Ciega,* 51 F.3d at 240). This Court has ruled that dismissal, not some lesser remedy, is the proper course when a party files an OPA claim in court before presenting it to a responsible party. *Gabarick,* 623 F. Supp. 2d at 751 (dismissing OPA claims for failure to comply with OPA's presentment requirement and denying plaintiff s request for a stay in lieu of dismissal).[3]

Arguing the contrary position, Louisiana cites the Supreme Court's recent decision in *Henderson v. Shinsekie,* __U.S.__, 131 S.Ct. 1197 (2011). That decision provides no support for Louisiana's position. In *Henderson,* the Supreme Court characterized the Veterans Court in which a claim was proceeding as presenting "singular," and congressionally mandated, solicitude for veterans' claims in contrast to "ordinary civil litigation." *Id.*, 131 S.Ct. at 1205. Moreover,

---

[3]   One district court in California has held that OPA does not require a State to present a claim for removal costs to a responsible party before filing a lawsuit in court. *United States v. M/V Cosco Busan, LR/IMO Ship. No. 9231743,* 557 F.Supp.2d 1058, 1060-63 (N.D. Cal. 2008). We respectfully submit that decision, which does not bind the Eastern District of Louisiana, was wrongly decided. OPA clearly states that "all claims *for removal costs* or damages" *must* be presented first to the responsible party. 33 U.S.C. §2713(a) (emphasis added). In *Cosco Busan,* the district court ignored the plain language of 33 U.S.C. §2713(a). Allowing OPA's presentment requirement to be avoided in that manner would render terms in §2713(a) superfluous, which is contrary to fundamental canons of statutory construction. *See Burnett v. Stewart Title, Inc. (In re Burnett),* 635 F.3d 169, 172-73 (5th Cir. 2011) ("When interpreting a statute, it is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent or devoid of meaning.")(citation and internal quotation omitted).

the OPA presentment requirement is not a mere "claims processing rule" (*compare* L. Mem. 11-12).  The presentment requirements are central to OPA; they were included in the statute because Congress wanted to promote settlement without resort to litigation.[4]  Therefore, OPA mandates that lawsuits are appropriate only "where attempts to reach a settlement with the responsible party . . . were unsuccessful." H.R. Rep. No. 101-242, pt. 2, at 66 (1989).  The presentment requirement reflects a legislative compromise "to temper the Act's increased liability with a congressional desire to encourage settlement and avoid litigation." *Boca Ciega,* 51 F.3d at 238-39 (citing OPA's legislative history). This central Congressional purpose -- a fundamental premise of OPA -- cannot be ignored.

Congress could not have been more clear in requiring that all OPA claimants attempt to settle their claims with responsible parties *before* heading to court. OPA requires that "all claims for removal costs or damages *shall* be presented *first* to the responsible party or guarantor."  33 U.S.C. §2713(a) (emphases added). Only after presenting a claim, and only after a responsible party either denies liability or does not settle, "may [the claimant] elect to commence an action in court against the responsible party." 33 U.S.C. §2713(c). Claimants that fail to comply with this presentment requirement have not satisfied Congressionally mandated prerequisites to filing suit, and their OPA claims must be dismissed.

Louisiana suggests that dismissal of its damage claims is not an appropriate remedy for its failure to comply with presentment requirements.  However, OPA's presentment requirement applies expressly to "all claims for removal costs or damages."  33 U.S.C. §2713(a) (emphasis added).  As the Supreme Court has noted, "the starting point for interpreting a statute is the

---

[4]  *See* 135 Cong. Rec. H7954-02 at \*H7965 (daily ed. Nov. 2, 1989) (statement of Rep. Hammerschmidt) (OPA is "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation"); *id.* at \*H7962 (statement of Rep. Lent) ("The thrust of [OPA] is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process . . ..").

language of the statute itself," *Hallstrom v. Tillamook County,* 493 U.S. 20, 25-26 (1989) (citation omitted), and here the language is clear.

While 33 U.S.C. §2713(b) provides that certain claims "may be presented first to the Fund," including claims "by the Governor of a State for removal costs incurred by that State," this does not change the result. Presentment to the Fund under §2713(b) is optional ("*may* be presented"), but presentation to the responsible party or guarantor under §2713(a) is mandatory ("all claims … *shall* be presented"). OPA defines "claimant" as "any person or government who presents a claim for compensation under this subchapter," and "person" to include States. 33 U.S.C. §2701(4), (27). Thus, a State has the option of presenting claims both to the Fund and to the responsible party, but must in any event present them to the responsible party. Section 2713(b) nowhere eliminates the requirement that claims be presented to the designated responsible party prior to commencing an action *in court* under 33 U.S.C. §2713(c).

C.    **Louisiana Fails To State A Claim Against Offshore for Negligence Under General Maritime Law.**

As argued in Section A above and at D. Mem. 6, Louisiana's general maritime negligence claims against Offshore, along with its nuisance and trespass claims, must be dismissed because OPA has displaced general maritime law. However, even if general maritime law were to apply, Louisiana has no claim for negligence against Offshore because Offshore lacked the requisite operational control of the well. *See* D. Mem. 7-12. In its opposition brief, Louisiana does not rebut Offshore's position; instead, Louisiana continues to rely on the allegations in its complaint that the Operating Agreement between BP, Anadarko and "Moex" is sufficient proof of control. L. Mem. Ex. A at 5 ("The foregoing contractual rights [arising out of the Operating Agreement with BP] put Moex in the position of being able to oversee all operations at the Macondo Well and to intervene to prevent the Incident from occurring.").

Louisiana's response falls short, however, because Offshore's possession of a non-operational interest in a lease does not give rise to the duty needed to sustain Louisiana's negligence claim.

In its opening memorandum, Offshore demonstrated that the elements of maritime negligence are (i) a duty owed by the defendant to the plaintiff; (ii) a breach of the duty; (iii) injury; and (iv) a causal connection between the defendant's conduct and the plaintiff's injury. D. Mem. 7 and cases cited.

Under the Operating Agreement, Offshore was, at most, a minority (10%) non-operational leaseholder of the Macondo Prospect, under an operating agreement with BP. *See* Complaint ¶39 (pleading that BP E&P was the "designated operator" for the Macondo Prospect). Louisiana does not allege that Offshore had any *right to control* the operations of BP or any other defendant, which is fatal to its maritime negligence claims.  Only entities with operational control have a duty to prevent harm from oil and gas operations.  *See* D. Mem. 7-12; *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988).[5]

As demonstrated in Offshore's Opening Memorandum, a principal has no duty to protect others from the negligence of an independent contractor. *Thomas v. Burlington Res. Oil & Gas Co.,* No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).  In addition to establishing that BP E&P was the "Operator" (Arts. 2.49, 4.1), the Operating Agreement provided BP E&P with "the <u>exclusive</u> right and duty to conduct (or cause to be conducted) <u>all</u> activities or operations under the Agreement" (Art. 5.1; emphasis added).[6]  In

---

[5]   *See also* the argumentation at pages 5-16 of the Reply to Plaintiffs' Steering Committee's Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P (Doc. 2217), which we adopt herein.

[6]   Louisiana's First Amended Complaint expressly relies upon the Operating Agreement as a basis for its claims against Offshore.  *See* Complaint ¶¶39, 104-105.  Therefore, Offshore may refer to the relevant provisions of the Operating Agreement in this motion.  *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007); *Ferrer v. Chevron Corp.,* 484 F.3d 776, 781 n.13 (5th Cir. 2007); *Kane Enters. v. MacGregor (USA) Inc.,* 322 F.3d 371, 374 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  A copy of the Operating Agreement was attached as Exhibit A to the Memorandum of Law in Support of Motion of

performing services under the agreement (with narrow exceptions not applicable here), BP E&P was "an <u>independent contractor, not subject to the control or direction</u> of Non-Operating Parties." *Id.* (emphasis added). Thus, the very document relied upon by Louisiana belies any contention that Offshore had any right or duty to intercede in BP E&P's or its contractors' operations.

Limited in such a fashion, Offshore's rights under the Operating Agreement did not create any duty running from Offshore to Louisiana. *See* D. Mem. 10 and authorities cited. Offshore lacked the operational control required to establish maritime negligence. *See Guillory v. Conoco, Inc.,* 521 So.2d 1220, 1223 (La. App. 3d Cir. 1988) (holding that defendant did not have operational control over its independent contractor even where it monitored the contractor's work progress and performed field tests, and intimating that operational control only arises if the principal "exercise[s] direct supervision over the step-by-step process of accomplishing the work"), *writ denied,* 526 So.2d 801 (La. 1988); *accord Grammer v. Patterson Servs., Inc.,* 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989).

**D.      OCSLA's Choice-of-Law Provision Applies to Activities on the OCS and Requires the Exclusive Application of Federal Law in this Case.**

Offshore explained in its Opening Memorandum that Louisiana's state-law claims must be dismissed because federal law applies exclusively to claims for damages and costs arising from oil spills on the OCS under an OCSLA choice-of-law analysis. D. Mem. 15-17. Plaintiffs respond that OPA is the paramount controlling federal statute, and OPA's savings clause trumps OCSLA's mandate, thus preserving state law. L. Mem. 5. Plaintiffs additionally assert that even

---

Defendant Anadarko Petroleum Corporation and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc 1414-1), and was attached separately as an exhibit to Anadarko Petroleum Corporation's Form 8-K filed with the U.S. Securities and Exchange Commission on June 21, 2010. The portions of the Operating Agreement referred to herein can be found in those filings.

if the federal prong of OCSLA's choice-of-law provision were to apply, state police power may still apply of its own force.  L. Mem. 3-8.

Yet, unlike in state waters, in the case of an oil spill on the OCS, OPA's authority over oil spill liability shares the field of regulation with OCSLA. Consistent with the federal interest in uniform regulation of the OCS, OCSLA serves as the authority for choice-of-law issues in cases that arise there.

Under OCSLA's choice-of-law provision, State law applies to cases arising on the OCS where two requirements are met:  (1) The case must arise from an occurrence on "artificial island [or] fixed structure[] erected thereon."  43 U.S.C. §1333(a)(2).  Second, if the case arises on such a permanent situs, state law will apply only (a) as surrogate federal law, and (b) only if necessary to fill a gap in federal law. *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the [OCS] be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357-58 (1969) ("it is evident … that federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law.").

Here, state law does not apply because the Deepwater Horizon was a temporary situs under 1333(a)(1), not permanent situs under 1333(a)(2), *see Diamond Offshore Co. v. A&B Builders, Inc.,* 302 F.3d 531, 544-45 (5th Cir. 2002) (recognizing that a semi-submersible drilling vessel is an OCSLA situs under §1333(a)(1) when it is temporarily attached to the OCS for purposes of exploring for resources).

Louisiana's contrary arguments fail for several reasons.

*First*, Louisiana concedes that OCSLA's choice of law provision applies here.  L. Mem. 7 (choice of law analysis "required" by OCSLA).  OCSLA clearly dictates that, on the OCS, federal law applies exclusively, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State."  43 U.S.C. §1333(a)(1).

*Second*, the Court should reject Louisiana's argument that, even under §1333(a)(1), state law applies of its own force where maritime law is silent.  L. Mem. 8.  That argument would defeat the purpose of the two-pronged choice-of-law provision.  If state law were available under both subsections (a)(1) and (a)(2), there would be no need to differentiate between the choices.  Section 1333(a)(2) is supposed to delineate those cases in which state law applies, and to address the very issue of whether maritime law or federal law is adequate.  *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990) (in determining whether state law acts as a surrogate for federal law under OCSLA, a court must determine whether maritime law applies of its own force).

*Third*, Louisiana's citation to *United States v. Locke*, 529 U.S. 89 (2000) and *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973), to demonstrate that state law applies is inapposite because neither of those cases concerned an activity on the OCS where both OCSLA and OPA are applicable.  *See Locke*, 529 U.S. at 106 (validating the preservation of state law where an accident occurred on state waters and the state had a historical police power); *Askew*, 411 U.S. at 343 (upholding state law pre-OPA where an accident occurred on state waters and the state had a historical police power).  Because of §1333(a)(1), state law does not and cannot apply of its own force to cases arising from events on the OCSLA.  *See Hufnagel v. Omega Serv. Industries, Inc.*, 182 F.3d 340, 349 (5th Cir. 1999) ("it is evident from … this [legislative history] that federal law is 'exclusive' in its regulation of this area, and that *state law is adopted only as*

*surrogate federal law*") (emphasis added) (quoting *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969)).

 *Fourth*, OPA did not eliminate the federal government's interest in establishing uniform regulation of activities on the OCS, to the exclusion of state law.  To the contrary, OPA is federal law, and state laws that are "inconsistent with" OPA cannot apply under 43 U.S.C. §1333(a)(2)(A).  When OPA was enacted, it was designed to provide uniformity in oil spill recovery claims.  S. Rep. 101-94, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.  That interest overlaps with the federal government's interests in regulating the OCS, but does not override or conflict with them.

 The regulation of activities on the Shelf as a federal territory has been of federal concern since 1953.  H.R.Rep. 95-590, at 122 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1528.  In 1978, amendments to OCSLA were enacted to provide a comprehensive framework for the expeditious and orderly development of the OCS, and thereby reduce reliance on foreign energy sources. *Id.*; *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479-80 & n.7 (1981) (OCSLA's purpose is to assert "exclusive jurisdiction and control of the Federal Government of the United States over the seabed and subsoil of the outer Continental Shelf, and to provide for the development of its vast mineral resources") (*quoting* S. Rep. No. 83-411, at 2 (1953)). Congress intended OPA to co-exist with OCSLA.  *See* L. Mem. 5; *Tanguis v. M/V Westchester,* 153 F.Supp.2d 859, 867 (E.D. La. 2001) (OPA was not designed to address all relevant fields of law as pertains to drilling operations on the Outer Continental Shelf, but rather to provide a "comprehensive federal scheme for the recovery of … costs and the compensation of those injured.").

Simultaneously, Congress repealed OCSLA's (and the Clean Water Act's) liability provisions, addressing those sections of other federal laws that would have created real conflict between the statutes. *See* P.L. 101-380, Section 2002 (Congress repealed only those portions of the CWA and OCSLA governing oil spill liability). OCSLA's authority over choice-of-law on the Shelf was preserved, and remains applicable consistent with a continued federal interest in OCS management.  Plaintiffs have failed to show why OCSLA's choice-of-law provision is not relevant in this case where claims arise from activities occurring on the OCS.

*Fifth*, the activities in this case were subject to the comprehensive federal regulatory scheme for exploratory activities occurring on the OCS.  Defendants' activities on the OCS were authorized by the Mineral Management Service under federal regulations requiring a series of approval requirements, and providing for enforcement actions where compliance is breached. *See* 30 C.F.R. 250.280 (2009) (federal regulations require OCS lessees to conduct all activities according to approved Exploration Plan, or suffer civil penalties or forfeiture or cancellation of its lease).  Complementing MMS regulations are OCSLA and OPA, which address related and anticipated concerns, including choice-of-law based on situs, and oil spills.  In light of this federal scheme, state common law claims are preempted.  *See* D. Mem. at 17, *citing Int. Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).

Plaintiffs challenge *Ouellette*'s controlling force, asserting that the CWA program deemed to preempt state common law claims was unique and not analogous to the statutory scheme here. *See* L. Mem. 9-10.  Yet, *Ouellette*'s underlying principle remains robust:  where a clearly delineated federal regulatory scheme exists and where a state does not have authority in the regulatory process – *i.e.*, where Congress reveals "considered judgment as to the best method of serving the public interest and reconciling the often competing concerns of those affected by

the pollution" – it would be "extraordinary" for Congress, after devising a "system that sets clear standards, to tolerate common-law suits that have the potential to undermine this regulatory structure." *Ouellette*, 479 U.S. at 497. Allowing states to rush in with common law claims where the federal scheme already provides a remedy would "undermine the important goals of efficiency and predictability" in the federal leasing system. *Id*. at 496.

*Finally*, Plaintiffs also try to preserve state claims by relying on *Rogers v. Coastal Towing, LLC*, 723 F.Supp.2d 929, 933 (E.D. La. 2010) and *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996) to argue that state claims supplement federal law. Those cases, however, did not arise out of events on the OCS, where under OCSLA's choice-of-law analysis, the adequacy of federal law and its resulting primacy have already been established.

### E.     Louisiana's State Law Claims Must Be Dismissed.

In its opening Memorandum, Offshore reserved the right to address Louisiana's state claims after the Court has ruled on the broader issues outlined above regarding the scope of the actions available to the state. D. Mem. 19. To the extent this Court determines that a ruling on the state-law issues is now appropriate, Offshore respectfully adopts the arguments made by other Defendants with respect to Louisiana's state-law claims, insofar as those claims are made against Offshore.[7]

---

[7]  Specifically, Offshore adopts the arguments in (i) Consolidated Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the State of Alabama's First Amended complaint and the State of Louisiana's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ["Pleading Bundle C"] (Doc. 2645-1) at 9-65; (ii) Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the State of Louisiana's First Amended Complaint (Doc. 2656-1), at 23-35; (iii)  BP Defendant's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) the First Amended Complaints of the States of Alabama and Louisiana, at 5-65 (Doc. 2644-1);  (iv) Memorandum in Support of Halliburton Energy Services, Inc.'s Motion to Dismiss Plaintiffs' Master Complaint ["Bundle C"], the State of Alabama's First Amended Complaint, and the State of Louisiana's First Amended Complaint, at 9-24, 26-32 (Doc. 2642-1); (v) Memorandum in Support of Defendant Cameron International Corporation's Motion to Dismiss the State of Louisiana's First Amended Complaint, at 6-29 (Doc. 2637-1); (vi) Memorandum in Support of Weatherford U.S., L.P.'s Motion to Dismiss the Local Government Entity's Voluntary Master Complaint, Cross-Claim, Third-Party Complaint (Bundle C) and the First Amended Complaints of the States of Alabama and Louisiana, at 9-29 (Doc. 2638-1); and corresponding portions of those Defendants'

In particular, even if state law were to apply (and it does not), Louisiana's claim for civil penalties of up to $1 million per day is without foundation.  LEQA provides for "a penalty of not more than thirty-two thousand five hundred dollars <u>for each day of violation</u>."  LA. REV. STAT. ANN. § 30:2025(E)(1)(a) (2011).  The statute then goes on to provide that, where violations are (among other things) intentional, willful or knowing, the violators may be liable for "<u>an</u> additional penalty of <u>not more than</u> one million dollars."  *Id.*  While the statute expressly makes the $32,500 base penalty apply to "each day of violation," the $1 million additional penalty contains no such language.  Nothing in the statute suggests that the $1 million enhancement is anything other than a single lump sum. If the state legislature had intended the $1 million additional penalty to apply per day, rather than per incident, it could easily have said so.  It did not.

Further, the legislative history shows that the $1 million additional penalty was intended to be a lump sum amount, not a per-day penalty.  *See* House Committee on Natural Resources, Minutes of June 7, 1989 Meeting, at 7; Audio Transcript of May 17, 1990 Meeting of Louisiana House of Representatives.

Louisiana cites regulations that take the statutory "per day" penalty provision and equate it to a "penalty event."  Louisiana then asserts that the $1 million lump sum provision applies to each "penalty event."  Louisiana's argument ignores the fact that the statute nowhere uses the term "penalty event."  Moreover, the statute says nothing about the $1 million enhancement applying "per day," let alone "per penalty event."

Needless to say, we are aware of no instance in which the $1 million additional penalty was applied per day.  In fact, in a recent case involving a major oil spill, Louisiana did not allege

---

Reply Memoranda. Offshore also adopts the arguments of its co-defendants regarding federal issues, to the extent those arguments may be applicable to Offshore.

this interpretation of La. Rev. Stat. 30:2025E(1)(a).[8]  Louisiana's suggestion that the position it now espouses in litigation is entitled to deference under *Chevron U.S.A. v. NRDC,* 467 U.S. 837 (1984) (L. Mem. 38 & n.48) is not supported by law.  *Burks v. United States*, 633 F.3d 347, 360 n.9 (5th Cir. 2011) ("[d]eference to what appears to be nothing more than an agency's convenient litigating position" is "entirely inappropriate"), *quoting Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

## III.   CONCLUSION

For the foregoing reasons, the claims in the State of Louisiana Complaint against MOEX Offshore 2007 LLC should be dismissed in their entirety.

Dated:  August 5, 2011

Respectfully submitted,

_____/s/  John F. Pritchard_____
John F. Pritchard
john.pritchard@pillsburylaw.com

Edward Flanders
edward.flanders@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Facsimile (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

---

[8]  *See United States and State of Louisiana v. Citgo Petroleum Corp.*, No. 2:08-cv-893, 2010 WL 1754167 (W.D. La. June 24, 2008), Complaint ¶27 (calling the $1 million enhancement "an additional penalty of not more than $1,000,000").

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 5, 2011.


_____/s/___ John F. Pritchard_____