UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Case No. 2:10-cv-04182 | * | |
| Case No. 2:10-cv-04183 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

*   *   *   *   *   *   *   *   *   *   *   *

**DEFENDANT MOEX OFFSHORE 2007 LLC'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT OF THE STATE OF ALABAMA**

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

    A.  Alabama's Claims Under Maritime Law Have Been Displaced By
        OPA .................................................................................................................. 3

    B.  Alabama's OPA Claims Must Be Dismissed For Failure To
        Comply With OPA's Presentment Requirements ............................................ 6

    C.  Alabama Fails To State A Claim Against Offshore for Negligence
        Under General Maritime Law ......................................................................... 10

    D.  OCSLA's Choice of Law Provision Applies to Activities on the
        OCS and Requires Exclusive Application of Federal Law in this
        Case ................................................................................................................ 14

    E.  Alabama's State-Law Claims Must Be Dismissed ......................................... 19

III. CONCLUSION .................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988)..............................10, 14

*Alabama Department of Env. Management v. Wright Brothers Const.*,
    604 So. 2d 429 (Ala. Civ App. 1992) ...............................................................................21

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)......................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................7

*Boca Ciega Hotel, Inc. v. Bouchard Transport Co. Inc.*,
    51 F.3d 235 (11th Cir. 1995) ...........................................................................................9

*Bolivar v. R&H Oil and Gas Co.*,
    789 F. Supp. 1374 (S.D. Miss. 1991)..............................................................................13

*Burnett v. Stewart Title, Inc. (In re Burnett)*,
    635 F.3d 169 (5th Cir. 2011) ...........................................................................................8

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .........................................................................................11

*Coulter v. Texaco, Inc.*,
    117 F.3d 909 (5th Cir. 1997) .........................................................................................13

*Darr v. Chevron U.S.A.*,
    1997 WL 470153 (E.D. La. Aug. 12, 1997) ...................................................................12

*Davidson v. Enstar Corp.*,
    848 F.2d 574 (5th Cir.), *modified on reh'g*, 860 F.2d 167 (5th Cir. 1988) ........................11

*Diamond Offshore Co. v. A&B Builders, Inc.*,
    302 F.3d 531 (5th Cir. 2002) .........................................................................................15

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) .........................................................................................11

*Gabarick v. Laurin Maritime (Am.), Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009)...............................................................................5

*Graham v. Amoco Oil Co.*,
    21 F.3d 643 (5th Cir. 1995) .......................................................................................14

*Grammer v. Patterson Services, Inc.*,
    860 F.2d 639 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989).....................................11

*Guillory v. Conoco, Inc.*,
    521 So. 2d 1220 (La. App. 3d Cir. 1988) ........................................................................11

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981)......................................................................................................16

*Heavin v. Mobil*,
    697 F. Supp. 1408 (E.D. La. 1988), *rev'd on reh'g on other grounds*, 710 F. Supp.
    1073 (E.D. La. 1989), *affirmed* 913 F.2d 178 (5th Cir. 1990) ..........................................12

*Henderson v. Shinsekie*,
    __ U.S.__, 131 S. Ct. 1197 (2011)...................................................................................8

*Hufnagel v. Omega Serv. Industries, Inc.*,
    182 F.3d 340 (5th Cir. 1999) .......................................................................................18

*Hyde v. Chevron, U.S.A., Inc.*,
    697 F.2d 614 (5th Cir. 1983) .......................................................................................13

*Int. Paper Co. v. Ouellette*,
    479 U.S. 481 (1987).................................................................................................17, 18

*James v. Nico Energy Corp.*,
    838 F.2d 1365 (5th Cir. 1988) .....................................................................................13

*Kane Enterprises v. MacGregor (USA) Inc.*,
    322 F.3d 371 (5th Cir. 2003) .......................................................................................11

*In re Katrina Canal Breaches Litigation*,
    495 F.3d 191 (5th Cir. 2007) .......................................................................................11

*Marathon Pipe Line Co. v. LaRouche Industrial Inc.*,
    944 F. Supp. 476 (E.D. La. 1996)....................................................................................7

*Navarro-Miranda v. Ashcroft*,
    330 F.3d 672 (5th Cir. 2003) .........................................................................................6

*In re Nobleman*,
    968 F.2d 483 (5th Cir. 1992) .........................................................................................6

iii

*Norfolk Shipbuilding & Drydock Corp. v. Garris,*
    532 U.S. 811 (2001) ............................................................................................3, 4

*Parker v. McDermott Inc.,*
    1990 WL 223011 (E.D. La. Dec. 18, 1990) ....................................................12

*Reeves v. B&S Welding,*
    897 F.2d 178 (E.D. La. 1990) .........................................................................20

*Rodrigue v. Aetna Casualty & Surety Co.,*
    395 U.S. 352 (1969) ...................................................................................15, 19

*Russo v. M/T Dubai Star*
    2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) ..................................................7

*Snyder Oil. Corp. v. Samedan Oil Corp.,*
    208 F.3d 521 (5th Cir. 2000) ...........................................................................20

*South Port Marine, LLC v. Gulf Oil LP,*
    234 F.3d 58 (1st Cir. 2000) ................................................................................5

*Tanguis v. M/V Westchester,*
    153 F. Supp. 2d 859 (E.D. La. 2001) ...........................................................5, 16

*Taylor v. Getty Oil Co.,*
    637 F. Supp. 886 (E.D. La. 1986) ...................................................................12

*Thomas v. Burlington Resources Oil & Gas Co.,*
    2000 WL 1528082 (E.D. La. Oct. 13, 2000) ...................................................10

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or  Vessel Mr. Charlie,*
    294 F. Supp. 1025 (E.D. La. 1968) .................................................................12

*Union Tex. Petroleum Corp. v. PLT Engineering, Inc.,*
    895 F.2d 1043 (5th Cir. 1990) .........................................................................15

*United States v. M/V Cosco Busan,*
    557 F. Supp. 2d 1058 (N.D. Cal. 2008) .............................................................8

*Wallace v. Oceaneering International,*
    727 F.2d 427 (5th Cir 1984) ............................................................................13

*West v. Kerr-McGee Corp.,*
    586 F. Supp. 493 (D.C. La. 1984), *rev'd and remanded on other grounds*, 765
    F.2d 526 (5th Cir. 1985) ..................................................................................12

*Wyeth v. Levine*,
555 U.S. 555, 129 S. Ct. 1187 (2009)........................................................................18

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996)..................................................................................................19

## STATUTES AND RULES

33 U.S.C. §§ 901-950 ..............................................................................................12

33 U.S.C. § 1251 *et seq.*........................................................................................1, 2

33 U.S.C. §2413........................................................................................................6

33 U.S.C. §2701....................................................................................................1, 9

33 U.S.C. §2702....................................................................................................3, 5

33 U.S.C. §2713......................................................................................2, 6, 7, 8, 9, 10

33 U.S.C. §2714........................................................................................................7

33 U.S.C. §2717........................................................................................................6

33 U.S.C. §2751........................................................................................................4

43 U.S.C. §1333..........................................................................................14, 15, 18

43 U.S.C. §1801 *et seq.*............................................................................................2

30 C.F.R. 250.280...................................................................................................17

Ala. Code § 22-22-1................................................................................................20

Ala. Code § 335-6-11..............................................................................................20

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 10, 11, 19

## OTHER

H.R. Rep. No. 122-590 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1450 .....................16

135 Cong. Rec. H7954-02 (daily ed. Nov. 2, 1989) ..................................................8

H.R. Rep. No. 101-242, pt. 2 (1989)................................................................................................8

H.R. Rep. No. 101-653 (1990)..........................................................................................................4

S. Rep. No. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722.............................................1, 15

Defendant MOEX Offshore 2007 LLC ("Offshore") respectfully submits this Reply Brief in further support of its Motion to Dismiss the First Amended Complaint of the State of Alabama pursuant to Fed. R. Civ. P. 12(b)(6), and in response to the State of Alabama's Brief in Opposition to the Various Defendants' Motions to Dismiss (Doc. 3203) ("A. Mem.").[1]

## I.    INTRODUCTION

Alabama's Complaint asserts four categories of claims against Offshore: (1) claims for damages and removal costs under general maritime law based on negligence and gross negligence (Causes of Action I.A., I.B.); (2) claims for damages and removal costs under OPA, 33 U.S.C. §§2701-2762 (Cause of Action II); (3) claims for penalties under various Alabama statutes (State law claims for relief III.H., III.I., III.J., III.K., III.L., III.M.); and (4) claims for damages and removal costs under state common law for negligence and wantonness (State law claims for relief III.M., III.N.).[2]  Alabama's First Amended Complaint (Doc. 1887) ("Complaint") at ¶¶94-147, 205-219, 282-338, and 328-345.

Central to Offshore's motion to dismiss these claims is the role of the Oil Pollution Act, 33 U.S.C. §2701 *et seq.* (2010), and the federal regulatory scheme for the Outer Continental Shelf.  Alabama's opposition memorandum acknowledges that Congress enacted OPA to create a uniform and comprehensive process for addressing oil spills:

> "[C]ongress enacted OPA to serve as a <u>comprehensive law</u> to cover future oil spills: 'The [OPA] builds upon §311 of the [CWA] to <u>create a single Federal law</u> providing cleanup authority, penalties, and liability for oil pollution.'"

A. Mem. 9, *quoting* S. Rep. No. 101-94, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730; *accord* A. Mem. 5.

---

[1]   Except where otherwise defined, the abbreviations and citation forms adopted in the Consolidated Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC to Dismiss the First Amended Complaints of the State of Louisiana and the State of Alabama (Doc. 2647-1) ("D. Mem.") are continued herein.

[2]   Alabama's First Amended Complaint lists Section III.M. twice.  *See* Complaint ¶324 and ¶328.

Despite recognizing OPA's primacy in its Opposition, Alabama's Complaint ignores the Congressionally-mandated framework.  It asserts claims for removal costs, damages and penalties relating to the Deepwater Horizon spill under general maritime law as well as under Alabama state law, although those matters are covered by OPA.  Moreover, in asserting OPA claims against Offshore, Alabama has made no effort to comply with the mandatory presentment requirements established under 33 U.S.C. §2713 as a precondition to filing suit.

In its response to Offshore's motion to dismiss, Alabama relies upon OPA's "savings" clauses to justify its assertion of maritime and state law claims.  A. Mem. 11, 13.  Alabama also asserts that it did present some claims to BP (although not to any other alleged responsible party).  However, Alabama takes the position that OPA's presentment requirement is a non-jurisdictional "claim-processing rule." A. Mem. 21, 29.

As set forth below, all of those arguments fail.  The Court is not free to simply ignore the processes mandated by Congress under OPA.  Likewise, Alabama's arguments based on the savings clauses misconstrue the statute and ignore the numerous judicial decisions that accurately depict Congress's intent:  in providing a comprehensive remedial structure for oil spills, Congress displaced those remedies previously provided by the Outer Continental Shelf Lands Act ("OCSLA"),[3]  the Clean Water Act ("CWA")[4] and general maritime law.  Yet, Congress did not replace OCSLA's choice-of-law provision, which mandates the application of federal law to oil spills occurring in areas solely under federal jurisdiction on the Outer Continental Shelf.

Even if maritime law were not displaced by OPA, or if state law could be applied to the

---

[3]  43 U.S.C. §1801 *et seq.* (2009).
[4]  33 U.S.C. § 1251 *et seq.*

Deepwater Horizon spill under OCSLA, Alabama's maritime and state-law claims for

negligence, gross negligence and wantonness would fail because Offshore cannot be held liable

for the acts of an independent contractor such as BP Exploration & Production ("BP E&P").

Thus, as set forth more fully below, Alabama's claims against Offshore, both under

maritime and state law and under OPA, should be dismissed as a matter of law.

## II.    ARGUMENT

### A.    Alabama's Claims Under Maritime Law Have Been Displaced By OPA.

Offshore moved to dismiss Alabama's maritime law claims because OPA is the exclusive

federal remedy for claimants seeking "covered damages" following an oil spill.  D. Mem. 3-4.  In

opposition,  Alabama replies that OPA preserves maritime law.  A. Mem. 11-13.  Alabama is

incorrect:  the claims brought under maritime law against Offshore are covered, and thus

displaced, by OPA.

Alabama does not dispute that, through OPA, Congress intended to provide a

comprehensive process governing cleanup, penalties and liability related to oil spills in the

United States.  *See* A. Mem. 5, 9.  Where a federal statute squarely addresses an issue or

provides a remedy, duplicative or supplemental remedies under the general maritime law are

*automatically* displaced.  *See Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811,

817 (2001) ("when a statute resolves a particular issue, we have held that the general maritime

law must comply with that resolution") (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S.

618, 626 (1978)).

OPA provides a private right of action for recovery of economic losses resulting from

injuries to natural resources, real or personal property, subsistence use, loss of revenues, profits

and earning capacity, and costs associated with additional public services, where those losses

result from an oil spill in navigable waters. 33 U.S.C. §2702(b)(2)(A)-(F).  It also allows for the

recovery of removal costs.  *Id.* §2702(b)(1).  Accordingly, courts have held uniformly that Congress intended OPA to be the exclusive federal law governing liability for oil spills, displacing maritime causes of action, including requests for punitive damages.  *See* D. Mem. 3-4 and cases cited; *see also* A. Mem. 17 (conceding that "OPA itself does not provide for punitive damages").

Alabama seeks to recover numerous types of damages and costs from Offshore, including removal costs, natural resources damages, property damage and related economic loss, loss of revenues, and costs associated with additional public services.  *See* Complaint ¶135.  All of these categories are covered by OPA.  Thus, absent a clear statement of Congress to the contrary, OPA is the only recourse that federal law affords for these covered removal costs and damages.  *See Norfolk Shipbuilding*, 532 U.S. at 817.  This same analysis applies to Alabama's claims for negligence and gross negligence under maritime law.

Alabama acknowledges that, absent a clear statement by Congress to the contrary, OPA would displace the general maritime law claims it is asserting.  A. Mem. 12.  Alabama purports to find such a statement in OPA's savings clause, 33 U.S.C. §2751 of OPA, and snippets of legislative history.  A. Mem. 12-13.  Although OPA includes a savings provision related to admiralty and maritime law, that provision does not save Alabama's general maritime claims.  It states: "[e]xcept as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law." 33 U.S.C. §2751.  In other words, "there is no change in current law *unless there is a specific provision to the contrary."* H.R. Rep. No. 101-653, at 159 (1990) (Conf. Rep.) (emphasis added).  Under current (and longstanding) law, maritime remedies are *automatically* displaced by an on-point federal statute. *See Norfolk Shipbuilding,* 532 U.S. at 817.  Nothing in OPA's savings clause changes that principle.

In its efforts to establish a uniform system for compensating oil spill injuries, Congress would not have overlaid what Alabama describes as "a hodgepodge of federal statutes," A. Mem. 4, with yet another compensation system.  Instead, it supplanted them.  Every court to consider this issue has held that OPA preempts traditional maritime remedies.  *See, e.g., South Port Marine, LLC v. Gulf Oil LP,* 234 F.3d 58, 65-66 (1st Cir. 2000) (absence of punitive damages from OPA meant that general maritime law, which traditionally provided for punitive damages, was supplanted); *Tanguis v. M/V/ Westchester*, 153 F.Supp.2d 859, 867 (E.D. La. 2001) (OPA "includes new remedies, which, in many respects, preempt traditional maritime remedies"; "the first subsection of the admiralty and maritime savings clause recognizes that certain maritime remedies are preempted by OPA"); *Gabarick v. Laurin Maritime (Am.), Inc.*, 623 F.Supp.2d 741, 750-51 (E.D. La. 2009) (holding that covered damages enumerated in 33 U.S.C. §2702 are displaced by OPA).

Alabama nonetheless avers that Defendants can comply with "OPA, Alabama law, Louisiana law, or any other State's law" so long as they "**[d]on't spill any oil**."  A. Mem. 10 (emphasis retained), 16.  We wish to be clear:  **Offshore did not spill any oil.**  Offshore was not the operator of the well or the rig.  It was a passive, 10% minority investor in the lease for the Macondo well.  Nonetheless, Alabama has sued Offshore –  and its parent company, and its parent company's parent company – baselessly asserting "gross negligence" (Complaint ¶145), liability for punitive damages (*id.* ¶345), and a raft of state-law theories.  Alabama has sued Offshore and two levels of parent companies not because they "spilled oil," but because it perceives them to be "deep pockets."

The fact that Offshore and its parent companies were sued to begin with shows the flaw in Alabama's argument.  State-law and maritime *remedies* conflict with OPA, including in

particular state-law penalties and punitive damages.  OPA's carefully crafted remedial scheme must be held to supplant such claims.  While Alabama maintains that it would be "incomprehensible that the same Congress desired OPA *shield* Defendants from punishment for willful, reckless, and otherwise reprehensible conduct upon proof of such conduct" (A. Mem. 18), OPA in fact eliminated the unpredictable and capricious concept of punitive damages in favor of a rational and legally accountable system of compensation.  As the State of Louisiana observed in its Opposition Memorandum, OPA's "extensive legislative history" reflects that the statute "was ultimately a compromise that addresses various, and often competing, interests." Doc 3213 at 55.

Thus, because OPA displaces maritime negligence claims, Alabama's claims against Offshore under general maritime law must be dismissed.

**B.     Alabama's OPA Claims Must Be Dismissed For Failure To Comply With OPA's Presentment Requirements.**

Offshore moved to dismiss Alabama's claims under OPA because Alabama failed to comply with OPA's requirement of presentment. D. Mem. 4-6.  Alabama responds that OPA's requirements are minimal and Alabama need not present more than one claim.  A. Mem. 27-29. Alabama is wrong.  OPA's plain language and decisional law both make clear that all claims must be presented to the allegedly responsible parties.

OPA's presentment requirements are clear.  With exceptions not relevant here, "<u>all</u> claims for <u>removal costs or damages</u> shall be presented <u>first</u> to the responsible party."  33 U.S.C. §2713(a) (emphasis added).[5]  If liability is denied or a claim is not settled within 60 days, the

---

[5]     The presentment requirement also applies to claims for a declaratory judgment (*see* Complaint ¶¶4, 218 & Prayer for Relief ¶1).  Under OPA, the *only* provision under which Alabama may obtain a declaration of Offshore's alleged liability is 33 U.S.C. §2717(f)(2).  That subsection provides for declaratory relief as an additional *remedy* in properly filed actions; those actions cannot be litigated in court without first being presented to the allegedly responsible party.  *See* 33 U.S.C. §§ 2713, 2717(f)(2). The Declaratory Judgment Act, a general provision for

claimant, at its election, may then commence an action against the responsible party or guarantor in court. *See* 33 U.S.C. §2413(d).

The Complaint asserts, without any detail, that Alabama has "satisfied the presentment requirement of 33 U.S.C. §§2713(a) and (b)." Complaint ¶217.  That is the sort of "formulaic recitation of the elements of a cause of action" or "[t]hreadbare recital[] of the elements" that is insufficient to overcome a motion to dismiss under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  In fact, Alabama's Opposition Memorandum makes clear its position that it need only present claims to BP E&P (A. Mem. 26-27), notwithstanding the fact that Alabama has also sued Offshore.

OPA required Alabama to present its claims against Offshore to Offshore for resolution. Alabama's contention that "BP … set up the only functioning claims procedure" (A. Mem. 27) is irrelevant.  OPA requires that "all claims for removal costs or damages be presented first <u>to the responsible party</u> or guarantor of the source designated under section 2714(a) of this title."  This means that, if Alabama is going to claim that Offshore or any other party is responsibile for its losses, Alabama must present those claims to effectuate the statute's scheme for consensual resolution.  The target of a claim need not set up a  special procedure to receive it.  Similarly, it was not necessary for Offshore to have been "designated" for presentment to be required; the statute's phrase "designated under section 2714(a)" refers to the <u>source</u> of the discharge, not to the party being sued.  *Compare* A. Mem. 26 *with* 33 U.S.C. §§2713(a), 2714(a).

Alabama further argues that presentment is not "jurisdictional."  A. Mem. 19.  Regardless of whether presentment is "jurisdictional," it still is *mandatory.  See* D. Mem. 4-5 and cases cited.  Courts consistently hold that OPA's presentment requirement "mandates dismissal when

---

declaratory relief, does not control here because of the "fundamental rule of statutory interpretation" that "specific provisions trump general provisions." *Navarro-Miranda v. Ashcroft,* 330 F.3d 672, 676 (5th Cir. 2003) (citing *In re Nobleman,* 968 F.2d 483, 487 (5th Cir. 1992)).

... not complied with by the claimant." *Marathon Pipe Line Co. v. LaRouche Indus. Inc.,* 944 F. Supp. 476, 477 (E.D. La. 1996); *accord Russo v. M/T Dubai Star,* No. C 09-05158 SI, 2010 WL 1753187, at *2-3 (N.D. Cal. Apr. 29, 2010).  This Court has ruled that dismissal, not some lesser remedy, is the proper course when a party files an OPA claim in court before presenting it to the allegedly responsible party.  *Gabarick,* 623 F. Supp. 2d at 751 (dismissing OPA claims for failure to comply with OPA's presentment requirement and denying plaintiff's request for a stay in lieu of dismissal).[6]

Taking a contrary stance, Alabama cites the Supreme Court's recent decision in *Henderson v. Shinsekie,* __ U.S. __, 131 S.Ct. 1197 (March 1, 2011) (*see* A. Mem. 20-21).  That decision provides no support for Alabama's position.  In *Henderson*, the Supreme Court characterized the Veterans Court in which a claim was proceeding as presenting "singular" Congressionally-mandated solicitude for veterans' claims, in contrast to "ordinary civil litigation." *Id*., 131 S.Ct. at 1205.

Unlike the structure in *Henderson*, OPA's presentment requirement is not a mere "claim-processing rule" (*compare* A. Mem. 21).  The presentment requirement is central to OPA:  it was included in the statute because Congress wanted to promote settlement without resort to litigation.[7]  Therefore, OPA mandates that lawsuits are appropriate only "where attempts to reach

---

[6]   One district court in California has held that OPA does not require a State to present a claim for removal costs to a responsible party before filing a lawsuit in court.  *United States v. M/V Cosco Busan, LR/IMO Ship. No. 9231743,* 557 F. Supp. 2d 1058, 1060-63 (N.D. Cal. 2008).  We respectfully submit that decision, which does not bind the Eastern District of Louisiana, was wrongly decided.  OPA clearly states that "all claims *for removal costs* or damages" must be presented first to the responsible party. 33 U.S.C. §2713(a) (emphasis added).  In *Cosco Busan*, the district court ignored the plain language of 33 U.S.C. §2713(a). Allowing OPA's presentment requirement to be avoided in that manner would render terms in §2713(a) superfluous, which is contrary to fundamental canons of statutory construction. *Burnett v. Stewart Title, Inc. (In re Burnett),* 635 F.3d 169, 172-73 (5th Cir. 2011) ("When interpreting a statute, it is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent or devoid of meaning.") (citation and internal quotation omitted).

[7]   *See*, *e.g.,* 135 Cong. Rec. H7954-02 at *H7965 (daily ed. Nov. 2, 1989) (statement of Rep. Hammerschmidt) (OPA is "intended to allow for quick and complete payment of reasonable claims without resort to

a settlement with the responsible party … were unsuccessful." H.R. Rep. No. 101-242, pt. 2, at 66 (1989).  The presentment requirement reflects a legislative compromise "to temper the Act's increased liability with a Congressional desire to encourage settlement and avoid litigation." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co. Inc.,* 51 F.3d 235, 238-39 (11th Cir. 1995) (citing OPA's legislative history).  This central Congressional purpose – a fundamental premise of OPA – cannot be ignored.

Congress could not have been more clear in its intent that all OPA claimants attempt to settle their claims with responsible parties <u>before</u> heading to court. OPA requires that "<u>all</u> claims for removal costs or damages <u>shall</u> be presented <u>first</u> to the responsible party or guarantor." 33 U.S.C. §2713(a) (emphasis added). Only after presenting a claim, and only after a responsible party either denies liability or does not settle, "may [the claimant] elect to commence an action in court against the responsible party." 33 U.S.C. §2713(c).  Claimants that fail to comply with this presentment requirement have not satisfied Congressionally mandated prerequisites to filing suit, and their OPA claims must be dismissed.

While 33 U.S.C. §2713(b) provides that certain claims "may be presented first to the Fund," including claims "by the Governor of a State for removal costs incurred by that State," this does not change the result.  Presentment to the Fund under §2713(b) is optional ("*may* be presented), but presentation to the responsible party or guarantor under §2713(a) is mandatory ("all claims … *shall* be presented"). OPA defines "claimant" as "any person or government who presents a claim for compensation under this subchapter," and "person" to include States. 33 U.S.C. §2701(4), (27).  Thus, a State has the option of presenting claims both to the Fund and to the responsible party, but must in any event present them to the responsible party.  Section

---

cumbersome litigation"); *id.* at *H7962 (statement of Rep. Lent) ("The thrust of [OPA] is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process . . ..").

2713(b) nowhere eliminates the requirement that claims be presented to the designated responsible party prior to commencing an action *in court* under 33 U.S.C. §2713(c).

### C.  Alabama Fails To State A Claim Against Offshore for Negligence Under General Maritime Law.

Even if general maritime law were to apply, Offshore argued that Alabama has no claim for negligence because Offshore lacked the requisite operational control of the well.  *See* D. Mem. 7-12.  Alabama responds that the Operating Agreement between BP, Anadarko and Offshore is sufficient proof of control.  A. Mem. 58-65.  Alabama's argument collapses, however, because Offshore's possession of a <u>non</u>-operating interest in a lease did not give rise to the tort duties necessary to sustain a negligence claim.

Alabama expressly (and correctly) alleges that Offshore was a "non-operational leaseholder[]."  Complaint ¶31; *accord id.* ¶8 (pleading that BP E&P was "the designated operator"); ¶11 ("As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.").

Alabama does not allege that Offshore had any *control* over the operations of BP E&P or any other defendant.  That omission is fatal to the maritime negligence claims.  Only entities with operational control have a duty to prevent harm from oil and gas operations.  *See* D. Mem. 7-9 and cases cited; *see, e.g., Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988); *Thomas v. Burlington Res. Oil & Gas Co.,* No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).[8]

---

[8]  *See also* the Reply to Plaintiffs' Steering Committee's Mem. of Law in Opposition to the MOEX and Anadarko Defendants' Mot. to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P (Doc. 2217) at 5-16; Mem. of Law in Support of Mot. Of Defendants Anadarko Petroleum Corp.,

Here, in addition to establishing that BP E&P was the "Operator" (Arts. 2.49, 4.1), the Operating Agreement provided BP E&P with "the <u>exclusive</u> right and duty to conduct (or cause to be conducted) <u>all</u> activities or operations under the Agreement" (Art. 5.1; emphasis added).  In performing services under the agreement, BP E&P was an "<u>independent contractor, not subject to the control or direction</u> of Non-Operating Parties." *Id.* (emphasis added).  Thus, the very document relied upon by Alabama belies any contention that Offshore had any right or duty to intercede in BP E&P's or its contractors' operations.[9]

Limited in that fashion, Offshore's rights under the Operating Agreement did not create any duty running from Offshore to Alabama. See D. Mem. 7-10 and authorities cited.  Offshore lacked the operational control required to establish maritime negligence. *See Guillory v. Conoco, Inc.,* 521 So.2d 1220, 1223 (La. App. 3d Cir. 1988), *writ denied,* 526 So.2d 801 (La. 1988) (holding that defendant did not have operational control over its independent contractor even where it monitored the contractor's work progress and performed field tests, and intimating that operational control only arises if the principal "exercise[s] direct supervision over the step-by-step process of accomplishing the work"); *accord Grammer v. Patterson Servs., Inc.,* 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989).

---

Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, and MOEX USA Corp. to Dismiss First Am. Mast. Compl., Cross-Claim, and Third-Party Compl. For Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] Section III (B1) ["B1 Bundle"] Pursuant to Fed. R. Civ. P. 12(B)(6) (Doc. 1414-1) at 18-20, which we adopt herein.

[9]  Alabama's Complaint expressly relies upon the Operating Agreement as a basis for its claims against Offshore. *See* Complaint ¶¶31, 129, 145; *accord* A. Mem. 59-60.  Therefore, Offshore may refer to the relevant provisions of the Operating Agreement in this motion.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 781 n.13 (5th Cir. 2007); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). A copy of the Operating Agreement was attached as Exhibit A to the Memorandum of Law in Support of Motion of Defendant Anadarko Petroleum Corporation and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] Section III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc 1414-1), and was attached separately as an exhibit to Anadarko Petroleum Corporation's Form 8-K filed with the U.S. Securities and Exchange Commission on June 21, 2010.  The portions of the Operating Agreement referred to herein can be found in those filings.

Alabama seeks to create liability for Offshore based on the broad "*Davidson*" test for "joint ventures".  A. Mem. 62, *citing Davidson v. Enstar Corp.,* 848 F.2d 574, 577-78 (5th Cir.), *modified on reh'g*, 860 F.2d 167 (5th Cir. 1988).  Alabama fails to note, however, that the *Davidson* test is not used to establish tort liability, but rather for the limited purpose of determining whether a party to a joint operating agreement would be entitled to protection from liability under the Longshore and Harbor Workers Compensation Act ("LHWCA").[10]  The *Davidson* court pointed out that there is a strong federal policy favoring the application of the LHWCA in order to provide injured longshore and harbor employees the right to recover compensation benefits from their employers. *See Davidson,* 848 F.2d at 577.

In the oil and gas field, in contrast, the key issue determining tort liability is a party's "control" over the drilling, and "non-operating" parties to an operating agreement cannot be liable in tort unless there is evidence of their direct involvement.  The article relied upon by Alabama not only noted that this proposition is the law, but also that it is supported by a "sizable body of cases" requiring "actual participation in operational matters" as a predicate for liability.[11]

Urging this Court to ignore the Operating Agreement's terms, Alabama cites several cases applying the *Davidson* test and finding joint ventures.  *See* A. Mem. 61-65.  Like *Davidson,* however, all of those cases were decided in the narrow context of determining immunity under the LHWCA.[12]   In cases arising <u>outside</u> the LHWCA, the Fifth Circuit has

---

[10] 33 U.S.C. §§ 901–950 (1976).

[11] Boigon, *Liability of Nonoperating Oil and Gas Interest Owners,* Rocky Mountain Mineral Law Foundation (1983) ("There is, however, a sizeable body of authority – developed exclusively in oil and gas cases – which purports to require actual participation in operational matters in order to support the imposition of partnership or joint venture responsibility on parties to a mineral venture.").

[12] *Darr v. Chevron U.S.A.*, 1997 WL 470153 at *3 (E.D. La. 1997), *West v. Kerr-McGee Corp.*, 586 F. Supp. 493 (D.C. La. 1984), *rev'd and remanded on other grounds*, 765 F.2d 526 (5th Cir. 1985), *Taylor v. Getty Oil Co.*, 637 F. Supp. 886 (E.D. La. 1986); *Heavin v. Mobil*, 697 F.Supp. 1408, 1411 (E.D. La. 1988), *rev'd on reh'g on other grounds*, 710 F. Supp. 1073 (E.D. La. 1989), *affirmed* 913 F.2d 178 (5th Cir. 1990) and *Parker v. McDermott Inc.,* 1990 WL 223011, *4 (E.D. La. 1990).

recognized that where exclusive control of operations belongs to one party, the "essential element" of "mutual control" necessary to a joint venture does not exist.  *See James v. Nico Energy Corp.,* 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement was limited to investment of capital and another party had sole right of control in drilling and operating of wells);  *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part in rev'd in part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R&H Oil and Gas Co*., 789 F. Supp. 1374, 1381-82 (S.D. Miss. 1991).

Finally, Alabama's negligence claims cannot be saved by the allegation that Offshore "had access to" data transmitted from the *Deepwater Horizon* on April 20, 2010 (Complaint ¶31).  The Fifth Circuit "has consistently held" that a principal (such as Offshore) that entrusts an independent contractor (such as BP under Article 5.1 of the Operating Agreement) with operational control of an offshore drilling operation owes no duty to third parties to "discover and remedy hazards created" by that independent contractor, *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir 1984), or to "intervene in and correct the work processes selected by an independent contractor."  *Thomas*, 2000 WL 1528082 at *2; *accord Hyde v. Chevron, U.S.A., Inc.* 697 F.2d 614, 630 (5th Cir. 1983) ("A principal cannot be held answerable for failing to supervise an independent contractor … [this] rule applies to employees of the independent contractor as well as to other third parties.").

Nor does the mere fact that a principal contractually "reserves the right to monitor its contractor's performance," and thereafter actively exercises that right, thereby imply that it retains any control over its contractor's activities.  *See, e.g., Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) ("the fact that a principal like Texaco stations a 'company man' on the

platform who observes the contractor's activities, has the right to make safety recommendations to the contractor, and is obliged to report continuing unsafe work practices or conditions to his (Texaco) superiors, does not mean the principal controls the methods or details of the contractor's work." ).  Even in cases where the principal's monitoring activity results in the principal's *actual knowledge* of a hazard created by its independent contractor, the principal owes no duty to intervene in the independent contractor's operations.  *See, e.g., Ainsworth*, 829 F.2d at 551; *Graham v. Amoco Oil Co.*, 21 F.3d 643, 646 (5th Cir. 1995) (presence of "company man" who observed unsafe working conditions and who did not stop operation did not amount to operational control or implicit authorization of those unsafe conditions that led to injury); *Thomas*, 2000 WL 1528082 at *2.   Where, as here, "the principal did not create the danger, the principal has no liability."  *Thomas*, 2000 WL 1528082 at *2.

In sum, the facts pleaded by Alabama are insufficient, as a matter of law, to impose tort duties on Offshore.

### D.   OCSLA's Choice of Law Provision Applies to Activities on the OCS and Requires Exclusive Application of Federal Law in this Case.

Offshore explained in its Opening Memorandum that Alabama's state law claims must be dismissed because federal law applies exclusively to claims for damages and costs arising from oil spills on the Outer Continental Shelf under OCSLA's choice-of-law analysis.  D. Mem. 15-17.  In opposition, Alabama takes the position that OPA supersedes OCSLA and thus renders OCSLA irrelevant.  Alabama additionally asserts that even if OCSLA's choice of law provision were to apply, its state law claims would not be preempted.  A. Mem. 3-8.  Yet, OPA does not provide guidance on OCS choice of law issues, nor does it conflict with OCSLA's choice-of-law provision.  Consistent with the federal interest in uniform regulation of the Outer Continental Shelf, OCSLA remains the authority for choice-of-law issues in cases that arise there.

Under OCSLA's choice-of-law provision, State law applies to cases arising on the OCS where two requirements are met:  (1) The case must arise from an occurrence on "artificial island [or] fixed structure[] erected thereon."  43 U.S.C. §1333(a)(2).   Second, if the case arises on such a permanent situs, state law will apply only (a) as surrogate federal law, and (b) only if necessary to fill a gap in federal law. *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the [OCS] be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Rodrigue v. Aetna Cas. & Sur. Co*., 395 U.S. 352, 357-58 (1969) ("it is evident … that federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law.").

Here, state law does not apply because the Deepwater Horizon was a temporary situs under 1333(a)(1), not permanent situs under 1333(a)(2), *see Diamond Offshore Co. v. A&B Builders, Inc.,* 302 F.3d 531, 544-45 (5th Cir. 2002) (recognizing that a semi-submersible drilling vessel is an OCSLA situs under Section 1333(a)(1) when it is temporarily attached to the OCS for purposes of exploring for resources).

Alabama's contrary arguments fail for several reasons.

*First*, OCSLA clearly dictates that on the OCS, federal law applies exclusively, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State."  43 U.S.C. §1333(a)(1).  State laws apply only "[t]o the extent that they are applicable and not inconsistent with [OCSLA] or with other Federal laws."  43 U.S.C. §1333(a)(2)(A).

*Second*, OPA provides the comprehensive remedy oil spills and does not leave any "gaps" to be filled by state law.  OPA is federal law, and state laws that are "inconsistent with"

OPA cannot apply under 43 U.S.C. §1333(a)(2)(A).  When OPA was enacted, it was designed to provide uniformity in oil spill recovery claims.  S. Rep. 101-94, at 9 (1990).  That interest overlaps with the federal government's interests in regulating the OCS, but does not override or conflict with them. [13]

The regulation of activities on the Shelf as a federal territory has been of federal concern since 1953.  H.R. Rep. No. 122-590 (1978), *reprinted in* 1978 U.S.S.C.A.N. 1450, 1528.  In 1978, amendments to OCSLA were enacted to provide a comprehensive framework for the expeditious and orderly development of the OCS, and thereby reduce reliance on foreign energy sources. *Id.*; *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479-80 & n.7 (1981) (OCSLA's purpose is to assert "exclusive jurisdiction and control of the Federal Government of the United States over the seabed and subsoil of the outer Continental Shelf, and to provide for the development of its vast mineral resources") (*quoting* S. Rep. No. 83-411 (1953)).  Congress intended OPA to coexist with OCSLA.  *See* L. Mem. 5; *Tanguis v. M/V Westchester,* 153 F.Supp.2d 859, 865 (E.D. La. 2001) (OPA was not designed to address all relevant fields of law as pertains to drilling operations on the Outer Continental Shelf, but rather to provide "a comprehensive federal scheme for the recovery of … costs and the compensation of those injured.").

Simultaneously, Congress repealed OCSLA's (and the Clean Water Act's) liability provisions, addressing those sections of other federal laws that would have created real conflict between the statutes. *See* P.L. 101-380, Section 2002 (1990) (Congress repealed only those portions of the CWA and OCSLA governing oil spill liability). OCSLA's authority over choice-

---

[13] Alabama argues that under rules of statutory construction, OPA supersedes OCSLA because it is more recent and more specific.  However, the statutory construction principles upon which Alabama relies are relevant only in instances of "irreconcilable conflicting statutes."  Norman J. Singer, Statutes and Statutory Construction, Section 51.02 at 186-87 (6th ed. 2000).  Alabama has not demonstrated how OPA and OCSLA are irreconcilably in conflict.

of-law on the Shelf was preserved, however, since those provisions were not repealed. Consistent with a continued federal interest in OCS management, OCSLA's choice-of-law provisions remain applicable.  Plaintiffs have failed to show why OCSLA's choice-of-law provision does not control here, where the claims arise from activities occurring on the OCS.

*Third*, the activities in this case were subject to the comprehensive federal regulatory scheme for exploratory activities occurring on the OCS.  Defendants' activities on the OCS were authorized by the Mineral Management Service under federal regulations requiring a series of approval requirements, and providing for enforcement actions where compliance is breached. *See* 30 C.F.R. 250.280 (2009) (federal regulations require OCS lessees to conduct all activities according to approved Exploration Plan, or suffer civil penalties or forfeiture or cancellation of its lease).  Complementing MMS regulations are OCSLA and OPA, which address related and anticipated concerns, including choice-of-law based on situs, and oil spills.  In light of this federal scheme, state common law claims are preempted.  *See* D. Mem. 17*, citing Int. Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).

Alabama challenges *Ouellette*'s controlling force, asserting that, in *Ouellette,* "the CWA preempt[ed] an affected State's laws because it would wreak havoc on a permittee if he had to understand and comply with federal law, source State law, *and* the differing laws of every other State to which permitted discharges might flow" (A. Mem. 10; emphasis retained).  Yet, the same is true here:  both Alabama and Louisiana have argued for application of their own laws, rather than Federal law, and the Bundle C Local Governments have added claims under Florida and Texas law to the mix.  *See* Doc. 1993 at 28-32 (Louisiana Opp. Mem.); Doc 3186 at 13-18 (Local Gov't Opp. Mem.).

*Ouellette*'s underlying principle remains robust:  where a clearly delineated federal regulatory scheme exists and where a state does not have authority in the regulatory process – *i.e.*, where Congress reveals "considered judgment as to the best method of serving the public interest and reconciling the often competing concerns of those affected by the pollution" – it would be "extraordinary" for Congress, after devising a "system that sets clear standards, to tolerate common-law suits that have the potential to undermine this regulatory structure." *Ouellette*, 479 U.S. at 497.  Where the federal scheme already provides a comprehensive remedy, allowing states to rush in with common law claims, or state statutory claims for penalties and punitive damages, would "disrupt the important goals of efficiency and predictability" in the federal leasing system.  *Id*. at 496.

*Finally*, the Court should reject Alabama's argument that absent "clear and manifest purpose" of Congress to preempt state law under 1333(a)(1), state law claims remain available.  *See* A. Mem. 6, citing *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1194-95 (2009).  To begin with, Alabama's approach defeats the purpose of the two-pronged choice-of-law provision.  If state law were available under both options, there would be no need to differentiate between the choices.  The very purpose of §1333(a)(2) is to delineate those cases in which state law applies; by eliminating §1333(a)(2) from the analysis, the state law option is also eliminated.

Alabama's reliance on the Supreme Court's statement in *Wyeth* that "historic police powers of the States were not to be superseded by the … Federal Act unless that was the clear and manifest purpose of Congress," *Wyeth*, 129 S. Ct. at 1194-5, is misplaced.  *Wyeth* does not apply to the analysis of OCSLA's choice-of-law provision because states have not historically enacted laws governing the OCS.  The consequence of applying §1333(a)(1) is that state law does not and cannot apply of its own force to cases arising from events on the OCS.  *See*

*Hufnagel v. Omega Serv. Industries, Inc.*, 182 F.3d 340, 349 (5th Cir. 1999) ("it is evident from … this [legislative history] that federal law is 'exclusive' in its regulation of this area, and that *state law is adopted only as surrogate federal law*.") (emphasis added), quoting *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969).

Alabama's attempt to preserve state law by relying on *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996), is equally unavailing. The event at issue in Yamaha occurred in state waters, not on the OCS. The ordinary maritime choice-of-law rules in *Yamaha* do not apply on the OCS.

### E.     Alabama's State-Law Claims Must Be Dismissed.

In its opening Memorandum, Offshore reserved the right to address Alabama's state-law claims after the Court has ruled on the broader issues outlined above regarding the scope of the actions available to the state. D. Mem. 19. To the extent this Court determines that a ruling on the state-law issues is now appropriate, Offshore respectfully adopts the arguments made by other Defendants with respect to Alabama's state-law claims, insofar as those claims are made against Offshore.[14]

In particular, we wish to stress two points.

---

[14] Specifically, Offshore would adopt the arguments in (i) BP Defendant's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) the First Amended Complaints of the States of Alabama and Louisiana, at 5-56 (Doc. 2644-1); (ii)  Memorandum in Support of Halliburton Energy Services, Inc.'s Motion to Dismiss Plaintiffs' Master Complaint ["Bundle C"], the State of Alabama's First Amended Complaint, and the State of Louisiana's First Amended Complaint, at 9-24, 26-32 (Doc. 2642-1); (iii) Memorandum of Law in Support of Defendant M-I LLC's Motion to Dismiss the State of Alabama's First Amended Complaint, at 4-12, 14-29 (Doc. 2630-1); (iv) Consolidated Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the State of Alabama's First Amended Complaint and the State of Louisiana's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) "Pleading Bundle C"], at 9-65 (Doc. 264501); (v) Memorandum in Support of Defendant Cameron International Corporation's Motion to Dismiss State of Alabama's First Amended Complaint, at 6-35 (Doc, 2639); (vi) Memorandum in Support of Weatherford U.S., L.P.'s Motion to Dismiss the Local Government Entity's Voluntary Master Complaint, Cross-Claim, Third-Party Complaint (Bundle C) and the First Amended Complaints of the States of Alabama and Louisiana, at 9-29 (Doc. 2638-1); and corresponding portions of those Defendants' Reply Memoranda. Offshore also adopts the arguments of its co-defendants regarding federal issues, to the extent those arguments may be applicable to Offshore.

*First*, OCSLA bars the application of Alabama law.  Under OCSLA, only <u>one</u> state can qualify as "adjacent," determined either by the outward projection of state boundaries onto the OCS or proximity of the platform or vessel to the state's coastline. *See, e.g., Snyder Oil. Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000) (holding that a federal oil and gas lease on the OCS was adjacent to Alabama because it fell on the Alabama side of the Mississippi-Alabama boundary projection); *Reeves v. B&S Welding*, 897 F.2d 178, 179 (E.D. La. 1990) (District Court determined that offshore gas production platform was "adjacent" to Texas where platform was closer to Texas coast than to Louisiana coast).

Here, the nearest adjacent state is Louisiana.  43 U.S.C. §1333(2)(A) (the laws of "each adjacent state … for that portion of the subsoil and seabed of the outer Continental Shelf … which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf" shall apply).  Consequently, if State law were to apply under OCSLA, it would be the law of Louisiana, the sole adjacent state.  Alabama's claims under its own law must therefore be dismissed.

*Second,* Alabama has improperly attempted to inflate its claim for civil penalties for discharges of oil to "waters of the state" by arbitrarily separating the "waters" of the state into forty-three separately designated  bodies of water (Complaint ¶293).  Alabama overreaches by seeking a separate civil penalty for each body of water, rather than litigating a single penalty for discharge to "waters of the state," which are defined collectively as "<u>all</u> waters of any … coastal water … wholly or partially within the state."  Ala. Code § 22-22-1(b)(2) (2007).  Alabama's effort to grossly expand the size of any applicable penalty in fact ignores the statute's clear wording.  *See* Ala. Code § 22-22-1(b)(8).

In the case cited by Alabama, *Alabama Dept of Env. Mgmt v. Wright Bros. Const.*, 604 So.2d 429, 433 (Ala. Civ App. 1992), the State court of appeals simply affirmed that, assuming the facts could be established, the applicable State law did not preclude imposing multiple penalties where it was found that multiple releases occurred.  That case does not support the imposition of multiple penalties for a single discharge.  As argued convincingly by BP in its motion to dismiss (Doc. 2644-1 at 35-38), the alleged division of waters was intended to address water use classifications, not liability for unpermitted discharges.  Ala. Code § 335-6-11.  Indeed, the list of allegedly separate and distinct water body segments is contradictory on its face, including, e.g., three separate sections of Mobile Bay, including one that has both a specific description and adds "all other portions of Mobile Bay."  *See* Complaint ¶293 (c)-(e).

## III.    CONCLUSION

For the foregoing reasons, the State of Alabama's complaint against MOEX Offshore 2007 LLC should be dismissed.

Dated:  August 5, 2011

Respectfully submitted,

_____/s/  John F. Pritchard_____
John F. Pritchard
john.pritchard@pillsburylaw.com
Edward Flanders
edward.flanders@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Facsimile (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 5, 2011.


_____/s/___John F. Pritchard_____