UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | Section "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *Pleading Bundle C*, | * | |
| No. 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT MOEX OFFSHORE 2007 LLC'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS THE VOLUNTARY MASTER
COMPLAINT, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT FOR LOCAL
GOVERNMENT ENTITIES ["PLEADING BUNDLE C"]**

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Ph. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 3

    A.  Plaintiffs' Claims Against Offshore Under Maritime Law
        Have Been Displaced By OPA. ................................................................... 3

    B.  The Local Governments' OPA Claims Must Be Dismissed
        For Failure to Comply With OPA's Presentment
        Requirements. ............................................................................................. 5

    C.  The Local Governments' Claims for Removal Costs Under
        OPA are Improperly Pleaded ...................................................................... 7

    D.  The Local Governments Have No Claim Against Offshore
        For Negligence Under General Maritime Law. ........................................... 9

    E.  The Local Governments Cannot Recover Economic Losses
        Without Alleging Physical Injury to a Proprietary Interest ....................... 14

    F.  OCSLA's Choice-of-Law Provision Applies to Activities on
        the OCS and Requires the Exclusive Application of Federal
        Law in this Case. ....................................................................................... 15

    G.  The Local Governments' State Law Claims Must Be
        Dismissed. ................................................................................................. 17

III. CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Ainsworth v. Shell Offshore, Inc.*,
    829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988) .................................... 9, 13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 8

*Boca Ciega Hotel, Inc. v. Bouchard Transport Co. Inc.*,
    51 F.3d 235 (11th Cir. 1995) ......................................................................................... 6

*Bolivar v. R&H Oil and Gas Co.*,
    789 F. Supp. 1374 (S.D. Miss. 1991) ............................................................................ 12

*Burnett v. Stewart Title, Inc. (In re Burnett)*,
    635 F.3d 169 (5th Cir. 2011) ......................................................................................... 7

*Clausen v. M/V New Carissa*,
    171 F. Supp. 2d 1127 (D. Or. 2001) ............................................................................. 4

*Coulter v. Texaco, Inc.*,
    117 F.3d 909 (5th Cir. 1997) ......................................................................................... 13

*Darr v. Chevron U.S.A.*,
    1997 WL 470153 (E.D. La. 1997) ................................................................................. 11

*Davidson v. Enstar Corp.*,
    848 F.2d 574 (5th Cir.), *modified on reh'g*, 860 F.2d 167 (5th Cir. 1988) ............................ 11

*Diamond Offshore Co. v. A&B Builders, Inc.*,
    302 F.3d 531 (5th Cir. 2002) ......................................................................................... 16

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ......................................................................................... 10

*Gabarick v. Laurin Maritime (Am.), Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009) ............................................................................ 4

*Graham v. Amoco Oil Co.*,
    21 F.3d 643 (5th Cir. 1995) ........................................................................................... 13

*Grammer v. Patterson Services, Inc.*,
    860 F.2d 639 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989) .......................................... 11

*Guillory v. Conoco, Inc.*,
    521 So. 2d 1220 (La. App. 3d Cir. 1988) .............................................................................. 10

*Heavin v. Mobil*,
    697 F. Supp. 1408 (E.D. La. 1988), *rev'd on reh'g on other grounds*, 710 F. Supp.
    1073 (E.D. La. 1989), *affirmed* 913 F.2d 178 (5th Cir. 1990) ............................................ 11

*Hyde v. Chevron, U.S.A., Inc.*,
    697 F.2d 614 (5th Cir. 1983) ................................................................................................ 13

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
    761 F. Supp. 2d 504 (S.D. Tex. 2011) ................................................................................. 8, 9

*Int. Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) .............................................................................................................. 17

*James v. Nico Energy Corp.*,
    838 F.2d 1365 (5th Cir. 1988) .............................................................................................. 11

*Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995) .............................................................................................................. 17

*Louisiana ex rel. Guste v. M/V TESTBANK*,
    752 F.2d 1019 (5th Cir. 1995) .............................................................................................. 14

*Marathon Pipe Line Co. v. LaRouche Industrial Inc.*,
    944 F. Supp. 476 (E.D. La. 1996) .......................................................................................... 7

*Miles v. Melrose*,
    882 F.2d 976 (5th Cir. 1989) .................................................................................................. 4

*Norfolk Shipbuilding & Drydock Corp. v. Garris*,
    532 U.S. 811 (2001) ............................................................................................................ 3, 4

*Parker v. McDermott* Inc.,
    1990 WL 223011 (E.D. La. Dec. 18, 1990) ......................................................................... 11

*Reeves v. B&S Welding*,
    897 F.2d 178 (E.D. La. 1990) ........................................................................................... 18-19

*Rodrigue v. Aetna Casualty & Surety Co.*,
    395 U.S. 352 (1969) .............................................................................................................. 16

*Russo v. M/T Dubai Star*,
    2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) ........................................................................ 7

iii

*Snyder Oil. Corp. v. Samedan Oil Corp.*,
208 F.3d 521 (5th Cir. 2000) ..................................................................... 18

*South Port Marine, LLC  v. Gulf Oil LP*,
234 F.3d 58 (1st Cir. 2000) ......................................................................... 4

*In re Taira Lynn Marine Ltd. No. 5*,
444 F.3d 371 (5th Cir. 2006) ..................................................................... 14

*Tanguis v. M/V Westchester*,
153 F. Supp. 2d 859 (E.D. La. 2001) ........................................................... 4

*Taylor v. Getty Oil Co.*,
637 F. Supp. 886 (E.D. La. 1986) ............................................................. 11

*Thomas v. Burlington Resources Oil & Gas Co.*,
2000 WL 1528082 (E.D. La. Oct. 13, 2000) .............................................. 9

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
294 F. Supp. 1025 (E.D. La. 1968) ........................................................... 11

*Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*,
895 F.2d 1043 (5th Cir. 1990) ................................................................... 15

*United States v. M/V Cosco Busan*,
557 F. Supp. 2d 1058 (N.D. Cal. 2008) ....................................................... 5

*Wallace v. Oceaneering International*,
727 F.2d 427 (5th Cir 1984) ..................................................................... 13

*West v. Kerr-McGee Corp.*,
586 F. Supp. 493 (D.C. La. 1984), *rev'd and remanded on other grounds*, 765 F.2d
526 (5th Cir. 1985) ................................................................................... 11

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996) ................................................................................. 15

## STATUTES AND RULES

33 U.S.C. §§ 901-950 ................................................................................ 11

33 U.S.C. §1251 *et seq.*............................................................................... 2

33 U.S.C. §2413 ......................................................................................... 5

33 U.S.C. §2701. .......................................................................................... 1

33 U.S.C. §2702 ................................................................................... 3, 4, 8

33 U.S.C. §2713 ................................................................................................................ 5, 6

33 U.S.C. §2717 ................................................................................................................... 6

33 U.S.C. §2751 ................................................................................................................... 3

43 U.S.C. §1333 ..................................................................................................... 15, 16 18

43 U.S.C. §1801 *et seq.* ..................................................................................................... 2

30 C.F.R. 250.280 ............................................................................................................. 16

Fed. R. Civ. P. 12(B)(6) ........................................................................................... 1, 9, 10

La. Rev. Stat. Ann. §30:2491 ........................................................................................... 18

**OTHER**

135 Cong. Rec. H7954-02 (daily ed. Nov. 2, 1989) ........................................................... 6

H.R. Rep. No. 101-242 (1989) ............................................................................................ 6

H.R. Rep. No. 101-653 (1990) ............................................................................................ 3

S. Rep. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722 ........................................ 16

Defendant MOEX Offshore 2007 LLC ("Offshore") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint for Local Governmental Entities pursuant to Fed. R. Civ. P. 12(B)(6) ["Pleading Bundle C"], and in response to the Omnibus Memorandum in Opposition to Defendants' Motion to Dismiss the Voluntary Master Complaint for Local Governmental Entities (Doc 3186) ("LG Mem.").[1]

## I.      INTRODUCTION

The Master Local Government Complaint (Doc 1510; "LG Complaint") asserts several claims against Offshore on behalf of a putative class of local government entities ("Local Governments").   These claims include (1) claims for damages and removal costs based on negligence under general maritime law (Claim I.A); (2) claims for damages and removal costs under the Oil Pollution Act ("OPA") (Claim II); (3) claims for damages under LOSPRA and penalties under the Louisiana Wildlife and Fisheries statute (Claim III.F); (4) claims for damages and response costs under TOSPRA (Claim III.G), and claims for damages under the Florida Pollutant Prevention and Control Act (Claim III.E).  LG Compl. ¶¶546, 662, 731, 741.

Central to Offshore's motion to dismiss is the role of the Oil Pollution Act, 33 U.S.C. §2701 *et seq.* (2010), and the federal regulatory scheme on the Outer Continental Shelf.  The Local Governments' complaint seeks to circumvent that Congressionally-mandated framework.  The Local Governments assert claims against Offshore for removal costs, damages and penalties relating to the *Deepwater Horizon* spill under general

---

[1]   Except as otherwise stated, Offshore continues herein the abbreviations and citation forms adopted in the Memorandum of Law in Support of Motion of Defendant MOEX Offshore 2007 LLC to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint for Local Governmental Entities Pursuant to Fed. R. Civ. P. 12(b)(6) ["Pleading Bundle C"] (Doc. 2220-1) ("D. Mem.").

maritime law as well as under Texas, Florida and Louisiana state law.  Yet, those remedies are also covered by OPA, which thereby displaced State law.  Moreover, in asserting its OPA claims, Plaintiffs have proceeded without even a perfunctory effort to comply with the mandatory presentment requirements established under §2713 of that statute as a precondition to filing suit.

In its response to Offshore's motion to dismiss, Plaintiffs rely upon OPA's "savings" clauses as justification for its assertion of maritime and state law claims.  LG Mem. 8-13, 18-19.  The Local Governments also assert that they did present some claims to BP (although not to any other alleged responsible party).  However, the Local Governments take the position that OPA's presentment requirement is effectively optional.  LG Mem. 24.

As set forth below, all of those arguments fail.  The Court is not free to ignore the processes mandated by Congress under OPA.  Likewise, Local Governments' arguments based on the savings clauses misconstrue the statute and ignore the numerous judicial decisions that accurately depict Congress's intent:  in providing a comprehensive remedial structure for oil spills, Congress displaced those remedies previously provided by the Outer Continental Shelf Lands Act ("OCSLA"),[2] the Clean Water Act ("CWA")[3] and general maritime law.  Yet, Congress did <u>not</u> replace OCSLA's choice-of-law provision, which mandates the application of federal law to oil spills occurring in areas solely under federal jurisdiction on the Outer Continental Shelf.

Even if maritime law were not displaced by OPA, or if state law could be applied to the Deepwater Horizon spill under OCSLA, the Local Governments' negligence claims

---

[2]  43 U.S.C. §1801 *et seq.* (2009).

[3]  33 U.S.C. §1251 *et seq.*

would fail because Offshore cannot be held liable for the acts of an independent contractor such as BP Exploration & Production ("BP E&P").

Thus, for the reasons set forth below and in Offshore's Opening Memorandum, the Local Governments' claims against Offshore should be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs' Claims Against Offshore Under Maritime Law Have Been Displaced By OPA.

Offshore argued that the Local Governments' claims under general maritime law must be dismissed because OPA provides the exclusive federal remedy for claimants seeking "covered damages" following an oil spill.   D. Mem. 8-9.   The Local Governments concede in their reply that general maritime law is "likely displaced" to the extent that the plaintiff seeks damages or costs already provided in OPA.  LG Mem 18.

The damages and costs alleged against Offshore under maritime law are covered by OPA. *Compare* LG Complaint ¶585 *with* 33 U.S.C. §2702(b)(1), (2).  Absent a clear statement of Congress to the contrary, OPA is the only recourse that federal law affords for these covered removal costs and damages.  *See Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811, 817 (2001) ("when a statute resolves a particular issue, we have held that the general maritime law must comply with that resolution") (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 626 (1978)).

OPA's savings clause for maritime law, 33 U.S.C. §2751, does not change the result.  It states: "[e]xcept as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law." 33 U.S.C. §2751.  In other words, "there is no change in current law *unless there is a specific provision to the contrary."* H.R. Rep. No. 101-653, at 159 (1990) (Conf. Rep.) (emphasis added).   Under current (and longstanding) law,

maritime remedies are *automatically* displaced by an on-point federal statute. *See Norfolk Shipbuilding,* 532 U.S. at 817. Nothing in OPA's savings clause changes that principle.

Every court to consider this issue has held that OPA preempts traditional maritime remedies – <u>including punitive damages</u>. *See, e.g., South Port Marine, LLC v. Gulf Oil LP,* 234 F.3d 58, 65-66 (1st Cir. 2000) (absence of punitive damages from OPA meant that general maritime law, which traditionally provided for punitive damages, was supplanted; "We think that the OPA embodies Congress's attempt to balance the various concerns at issue, and trust that the resolution of these difficult policy questions is better suited to the political mechanisms of the legislature than to our deliberative process.... For the reasons set forth above, we agree with the district court that punitive damages were not available to plaintiff [under OPA]."); *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001) (Congress "intended OPA defendants not be subject to punitive damages for any property damage claim under federal law arising out of an oil spill"); *see also Tanguis v. M/V Westchester*, 153 F.Supp.2d 859, 867-68 (E.D. La. 2001) (OPA includes new remedies that preempt traditional remedies in many respects); *Gabarick v. Laurin Maritime (Am.), Inc.*, 623 F.Supp.2d 741, 750-51 (E.D. La. 2009) (holding that covered damages enumerated in 33 U.S.C. §2702 are displaced by OPA).

Moreover, the LG Complaint seeks punitive damages against Offshore on only a single claim – Count I.A for ordinary negligence. Yet, maritime law does not authorize the imposition of punitive damages for ordinary negligence; rather, "[b]ecause punitive damages are designed to punish the wrongdoer, more than simple negligence is required. The defendant must have been guilty of 'gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct.'" *Miles v.*

*Melrose*, 882 F.2d 976, 989 (5th Cir. 1989), *quoting In re Marine Sulphur Queen*, 460 F.2d 89, 102 (2nd Cir. 1972), *cert. denied,* 409 U.S. 982 (1972).  Count I.A does not allege anything more than simple negligence – nor could the Local Governments plausibly allege the conduct necessary to support punitive damages against Offshore, which did not operate the well or the rig, but rather was a passive, minority investor in the lease.  *See* LG Complaint ¶204.

In short, neither governing law nor allegations in the LG Complaint support the Local Governments' attempt to play the "punitive damages lottery" and threaten Offshore with this capricious and unpredictable cost.

### B.     The Local Governments' OPA Claims Must Be Dismissed For Failure to  Comply With OPA's Presentment Requirements.

Offshore sought dismissal of the OPA claims because the Local Governments had not properly alleged compliance with OPA's presentment requirements.  D. Mem. 9-10. The Local Governments respond that they are not required to present their removal claims before filing suit against responsible parties.  They cite *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008), for the principle that OPA allows parties to initiate actions in court without presenting removal cost claims *at all*.  LG Mem. 24.  The Local Governments are wrong.  OPA's plain language and decisional law both make plain that all claims must be presented to the allegedly responsible parties.

OPA's presentment requirements are clearly stated.  With exceptions not relevant here, "all claims for removal costs or damages shall be presented first to the responsible party."  33 U.S.C. §2713(a) (emphasis added).   If liability is denied or a claim is not settled within 60 days, the claimant, at its election, may then commence an action against the responsible party or guarantor in court.  See 33 U.S.C. §2413(d).  The presentment

requirement is central to OPA:  it was included in the statute because Congress wanted to promote settlement without resort to litigation.[4]  Therefore, OPA mandates that lawsuits are appropriate only "where attempts to reach a settlement with the responsible party … were unsuccessful."  H.R. Rep. No. 101-242, pt. 2, at 66-67 (1989).  The presentment requirement reflects a legislative compromise "to temper the Act's increased liability with a Congressional desire to encourage settlement and avoid litigation."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co. Inc*., 51 F.3d 235, 238-39 (11th Cir. 1995) (citing OPA's legislative history).  This central Congressional purpose – a fundamental premise of OPA – cannot be ignored.

The statutory section relied upon by the Local Governments, 33 U.S.C. §2717(f)(2), simply sets forth a three-year statute of limitations.  The provision's statement that suit may be commenced "at any time" within those three years (*see* LG Mem. 25) assumes that all prerequisites to suit have been met – it does not purport to remove the prerequisites established in OPA's other sections.

Similarly, the Local Governments' reliance on *Cosco Busan* for the premise that they are not required to present their removal claims before filing suit (*see* LG Mem. 24-25) is misplaced.  Offshore respectfully submits that *Cosco Busan*, a single district court decision from California which does not bind this Court, was wrongly decided.  OPA clearly states that "all claims for removal costs or damages" must be presented first to the responsible party. 33 U.S.C. §2713(a) (emphasis added).  In *Cosco Busan*, the district court ignored the plain language of 33 U.S.C. 2713(a).  Allowing OPA's presentment

---

[4]   *See, e.g.*, 135 Cong. Rec. H7954-02 at *H7965 (daily ed. Nov. 2, 1989) (statement of Rep. Hammerschmidt) (OPA is "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation"); *id*. at *H7962 (statement of Rep. Lent) ("The thrust of [OPA] is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process …").

requirement to be avoided in that manner would render terms in §2713(a) superfluous, which is contrary to fundamental canons of statutory construction. *Burnett v. Stewart Title, Inc. (In re Burnett)*, 635 F.3d 169, 172-73 (5th Cir. 2011) ("When interpreting a statute, it is a cardinal rule that a statute is to be read as a whole, in order not to render portions of it inconsistent or devoid of meaning.") (citation and internal quotation omitted).

Most critically, the LG Complaint does not allege presentment <u>to Offshore</u>. Rather, it alleges that the presentment requirement was satisfied "as to each and all defendants, by the submission of [the Local Governments'] claims to the Gulf Cost Claims Facility (the 'GCCF') and/or BP and/or its agents or designees." LG Complaint ¶668. The Local Governments nowhere allege that GCCF or BP equals Offshore. Without presentment to Offshore, the Local Governments cannot sue Offshore.

This Court and others have held that OPA's presentment requirement "mandates dismissal when … not complied with by the claimant." *Marathon Pipe Line Co. v. LaRouche Indus. Inc*., 944 F. Supp. 476, 477 (E.D. La. 1996); *accord Russo v. M/T Dubai Star*, No. C 09-05158 SI, 2010 WL 1753187, at *2-3 (N.D. Cal. Apr. 29, 2010). The Local Government's OPA claims against Offshore must therefore be dismissed.

**C.      The Local Governments' Claims for Removal Costs Under OPA are Improperly Pleaded**

Offshore contended that Local Governments' claims for "removal costs" under OPA were improperly pleaded because, among other things, they do not show that removal costs have actually been incurred and do not allege that costs were consistent with the National Contingency Plan. D. Mem. 10-12. The Local Governments respond that their Complaint references "removal costs" in paragraphs 172 and 515. *See* LG Mem. 22-23. The cited allegations are insufficient. Paragraph 515 refers to "the costs of response,

removal, clean-up, restoration <u>and/or</u> remediation" (emphasis added).  That "and/or"

indicates the Local Governments <u>might</u> have incurred removal costs, but also might not

have.  Paragraph 172 mentions "removal costs" in a list of various types of costs allegedly

caused by the oil spill.  That glancing reference does not contain the "factual matter"

required to avoid dismissal under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Local Governments further assert that they are under no obligation to allege

that their removal costs were consistent with the NCP.  LG Mem. 23.  Yet, that is a

required element under OPA before a party may recover such costs.  *See* 33 U.S.C.

§2702(b)(1)(B) ("The removal costs referred to … are … any removal costs incurred by

any person for acts taken by the person <u>which are consistent with the National</u>

<u>Contingency Plan</u>.").  The Local Governments cite no authority excusing them from

alleging this element of their claims.  *Cf. In re Enron Corp. Securities, Derivative &*

*ERISA Litig.,* 761 F.Supp.2d 504, 546 n.40 (S.D. Tex. 2011) (observing that "*Twombly* and

*Iqbal* required the pleading of sufficient facts for each element to assert a plausible

claim").

The Local Government's suggestion that consistency with the NCP may be

"reasonably inferred" from their pleading is unconvincing, particularly since (a) the Local

Governments cite no legal authority whatsoever for "reasonably inferred" as the operative

pleading standard; and (b) the Local Governments do not identify a single allegation in the

LG Complaint from which such an inference could be made.

In sum, the Local Governments' claims for removal costs must be dismissed as

against Offshore.

**D.    The Local Governments Have No Claim Against Offshore For Negligence Under General Maritime Law.**

Offshore argued that it cannot be charged with negligence under maritime law because it lacked operating control at the Macondo Well:  only entities with operational control have a duty to prevent harm from oil and gas operations.  D. Mem. 12-18.  In response, the Local Governments claim that the Operating Agreement between BP, Anadarko, and Offshore constitutes sufficient proof of control.  LG Mem. 58-65.  Their argument collapses, however, because Offshore's <u>non</u>-operating interest under that Agreement did not afford it the operational control necessary to sustain a negligence claim.

The Local Governments expressly (and correctly) allege that Offshore was a "<u>non</u>-operational leaseholder[]." LG Complaint ¶251; *accord id.* ¶179 (pleading that BP E&P was "the designated operator"); ¶188 ("As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.").

In contrast, the Local Governments do not allege that Offshore had any *control* over the operations of BP E&P or any other defendant.  That omission is fatal to the maritime negligence claims.  Only entities with operational control have a duty to prevent harm from oil and gas operations.  *See* D. Mem. 12-18 and cases cited; *see, e.g., Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied,* 485 U.S. 1034 (1988); *Thomas v. Burlington Res. Oil & Gas Co.,* No. Civ. A. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.).[5]

---

[5]  *See also* the Reply to Plaintiffs' Steering Committee's Mem. of Law in Opposition to the MOEX and Anadarko Defendants' Mot. to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P (Doc. 2217) at 5-16; Mem. of Law in Support of Mot. Of Defendants

Here, in addition to establishing that BP E&P was the "Operator" (Arts. 2.49, 4.1), the Operating Agreement provided BP E&P with "the <u>exclusive</u> right and duty to conduct (or cause to be conducted) <u>all</u> activities or operations under the Agreement" (Art. 5.1; emphasis added). In performing services under the agreement, BP E&P was an "<u>independent contractor, not subject to the control or direction</u> of Non-Operating Parties." *Id.* (emphasis added). Thus, the very document relied upon by the Local Governments belies any contention that Offshore had any right or duty to intercede in BP E&P's or its contractors' operations.[6]

Limited in that fashion, Offshore's rights under the Operating Agreement did not create any duty running from Offshore to Local Governments. See D. Mem. 12-17 and authorities cited. Offshore lacked the operational control required to establish maritime negligence. *See Guillory v. Conoco, Inc.,* 521 So.2d 1220, 1223 (La. App. 3d Cir. 1988) *writ denied,* 526 So.2d 801 (La. 1988) (holding that defendant did not have operational control over its independent contractor even where it monitored the contractor's work progress and performed field tests, and indicating that operational control arises only if the principal "exercise[s] direct supervision over the step-by-step process of accomplishing the work");

---

Anadarko Petroleum Corp., Anadarko E&P Co. LP, MOEX Offshore 2007 LLC, and MOEX USA Corp. to Dismiss First Am. Mast. Compl., Cross-Claim, and Third-Party Compl. For Private Economic Losses in Accordance with PTO No. 11 [CMO No. 1] § III (B1) ["B1 Bundle"] Pursuant to Fed. R. Civ. P. 12(B)(6) (Doc. 1414-1) at 18-20, which Offshore adopts herein.

[6]  The LG Complaint expressly relies upon the Operating Agreement as a basis for its claims against Offshore. *See* Complaint ¶¶204, 216, 250; *accord* LG Mem. 29-33. Therefore, Offshore may refer to the relevant provisions of the Operating Agreement in this motion. *See* D. Mem. 13 n. 8 and cases cited; *Ferrer v. Chevron Corp.*, 484 F.3d 776, 781 n.13 (5th Cir. 2007). A copy of the Operating Agreement was attached as Exhibit A to the Memorandum of Law in Support of Motion of Defendant Anadarko Petroleum Corporation and others to Dismiss First Amended Master Complaint, Cross-Claim and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO. No. 1] § III (B1) Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc 1414-1), and was attached separately as an exhibit to Anadarko Petroleum Corporation's Form 8-K filed with the U.S. Securities and Exchange Commission on June 21, 2010. The portions of the Operating Agreement referred to herein can be found in those filings.

*accord Grammer v. Patterson Servs., Inc.,* 860 F.2d 639, 644 (5th Cir. 1988), *cert. denied,* 491 U.S. 906 (1989).

The Local Governments attempt to stretch negligence liability until it reaches Offshore by advancing the broad "*Davidson*" test for "joint ventures".  LG Mem. 31-35, *citing Davidson v. Enstar Corp.,* 848 F.2d 574, 577-78 (5th Cir.), *modified on reh'g*, 860 F.2d 167 (5th Cir. 1988).  They omit to mention, however, that the *Davidson* test is not used to establish tort liability, but rather for the limited purpose of determining whether a party to a joint operating agreement would be entitled to protection from liability under the Longshore and Harbor Workers Compensation Act ("LHWCA").[7]  The *Davidson* court pointed out that there is a strong federal policy favoring the application of the LHWCA in order to provide injured longshore and harbor employees the right to recover compensation benefits from their employers.  *See Davidson,* 848 F.2d at 577.  Like *Davidson,* the cases cited by the Local Governments applying *Davidson* (*see* LG Mem. 31-35) were all decided in the narrow context of determining immunity under the LHWCA.[8]

In cases arising <u>outside</u> the LHWCA, the Fifth Circuit has recognized that where exclusive control of operations belongs to one party, the "essential element" of "<u>mutual control</u>" necessary to a joint venture does not exist.  *See James v. Nico Energy Corp.,* 838 F.2d 1365, 1373 (5th Cir. 1988) (no joint venture where one party's involvement was limited to investment of capital and another party had sole right of control in drilling and operating of wells);  *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in relevant part in rev'd in*

---

[7] 33 U.S.C. §§ 901–950 (2009).

[8] *Darr v. Chevron U.S.A.*, 1997 WL 470153 at *3 (E.D. La. 1997), *West v. Kerr-McGee Corp.*, 586 F. Supp. 493 (D.C. La. 1984), *rev'd and remanded on other grounds*, 765 F.2d 526 (5th Cir. 1985), *Taylor v. Getty Oil Co.*, 637 F. Supp. 886 (E.D. La. 1986); *Heavin v. Mobil*, 697 F.Supp. 1408, 1411 (E.D. La. 1988), *rev'd on reh'g on other grounds*, 710 F. Supp. 1073 (E.D. La. 1989), *affirmed* 913 F.2d 178 (5th Cir. 1990) and *Parker v. McDermott Inc.*, 1990 WL 223011, *4 (E.D. La. Dec. 18, 1990).

*part on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R&H Oil and Gas Co*., 789 F. Supp. 1374, 1381-82 (S.D. Miss. 1991).

The sections of the Operating Agreement cited by the Local Governments to show that Offshore had "joint control" say nothing of the kind, and do not plausibly establish that Offshore could have intervened in BP E&P's or Transocean's operation of the well or the rig on April 20, 2010.  The "voting interest" of Offshore under Art. 8.1.1 was 10% -- not sufficient to outvote BP E&P or Anadarko.  *Compare* LG Mem. 33 *with* LG Complaint ¶203.  The "procedures to challenge the operator's conduct" under Art. 4.2 applied only if the Operator became a Non-Participating Party or failed to commence drilling operations, neither of which is alleged to have happened here.  *Compare* LG Mem. 33 *with* Operating Agreement  Arts. 4.2.1 – 4.2.6.  Article 4.4 provided for removal of the Operator only if it assigned part of its Working Interest, was found liable for gross negligence or willful misconduct by a final judicial or arbitral decision, committed a substantial breach and failed to cure it within 30 days after receiving written notice, became insolvent, went into receivership, or failed to timely commence work on the Development System – none of which conditions is alleged to have happened here.  *Compare* LG Mem. 33 *with* Operating Agreement Art. 4.4.2.  The Operating Agreement's various provisions regarding the sharing of costs or royalty payments did not give Offshore any control over the operation of the rig or the well.  *Compare* LG Mem. 33 *with* Operating Agreement ¶¶6.1, 19.2.2, 20.2, 21.1.

Finally, the Local Governments' negligence claims cannot be saved by the allegation that Offshore "had access to" data transmitted from the *Deepwater Horizon* on April 20, 2010 (Complaint ¶246).  The Fifth Circuit "has consistently held" that a principal

(such as Offshore) that entrusts an independent contractor (such as BP under Art. 5.1 of the Operating Agreement) with operational control of an offshore drilling operation owes no duty to third parties to "discover and remedy hazards created" by that independent contractor, *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir 1984), or to "intervene in and correct the work processes selected by an independent contractor." *Thomas*, 2000 WL 1528082 at *2; *accord Hyde v. Chevron, U.S.A., Inc.* 697 F.2d 614, 630 (5th Cir. 1983) ("A principal cannot be held answerable for failing to supervise an independent contractor … [this] rule applies to employees of the independent contractor as well as to other third parties.").

Nor does the mere fact that a principal contractually "reserves the right to monitor its contractor's performance," and thereafter actively exercises that right, thereby  imply that it retains any control over its contractor's activities.  *See, e.g., Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) ("the fact that a principal like Texaco stations a 'company man' on the platform who observes the contractor's activities, has the right to make safety recommendations to the contractor, and is obliged to report continuing unsafe work practices or conditions to his (Texaco) superiors, does not mean the principal controls the methods or details of the contractor's work." ).  Even in cases where the principal has *actual knowledge* of a hazard created by its independent contractor, the principal owes no duty to intervene in the independent contractor's operations.  *See, e.g., Ainsworth*, 829 F.2d at 551; *Graham v. Amoco Oil Co.*, 21 F.3d 643, 646 (5th Cir. 1995) (presence of "company man" who observed unsafe working conditions and who did not stop operation did not amount to operational control or implicit authorization of those unsafe conditions that led to injury); *Thomas*, 2000 WL 1528082 at *2. Where, as here, "the principal did not create the danger, the principal has no liability."  *Thomas*, 2000 WL 1528082 at *2.

13

In sum, the test for tort duties in oil and gas extraction is whether a defendant had operational control over the drilling.  "Non-operating" parties to an operating agreement cannot be liable in tort unless there is evidence of their direct involvement.  The academic publication cited by the Local Governments not only accepted this proposition as the law, but also observed that it is supported by a "sizable body of cases" requiring "actual participation in operational matters" as a predicate for liability.[9]  There can be no plausible allegation that Offshore, a passive 10% minority investor in the lease, had the requisite control.

Thus, the facts pleaded by Local Governments are insufficient, as a matter of law, to impose tort duties on Offshore.

## E.   The Local Governments Cannot Recover Economic Losses Without Alleging Physical Injury to a Proprietary Interest.

Offshore argued that the Local Governments' claims for economic losses must be dismissed under the "economic loss rule" which requires that each individual local government allege suffering a "physical injury to a proprietary interest."  D. Mem. 18-19, quoting *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 379 (5th Cir. 2006).  The Local Governments respond that the economic loss rule does not apply to OPA claims, "intentional torts" or "ultrahazardous activity."  LG Mem. 26.  Their arguments do not respond to Offshore's motion.

*First,* the Local Governments' argument with respect to the application of OPA, whatever its merit, does not apply to the claims asserted by Local Governments against

---

[9]   *See* Boigon, *Liability of Nonoperating Oil and Gas Interest Owners,* Rocky Mountain Mineral Law Foundation (1983) ("There is, however, a sizeable body of authority – developed exclusively in oil and gas cases – which purports to require actual participation in operational matters in order to support the imposition of partnership or joint venture responsibility on parties to a mineral venture."), *cited at* LG Mem. 29 n.22, 35.

Offshore for maritime negligence, which was the subject of the discussion in *Taira Lynn Marine*, *supra.*  With respect to maritime claims for unintentional torts, the "bright line" test of TESTBANK, which denied tort recovery for purely economic losses, remains the law.  *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1995) (en banc).

*Second,* the LG Complaint does not allege – nor could it plausibly allege – that Offshore committed any "intentional tort[]."

*Finally,* because Offshore was not the Operator, it cannot be alleged to have engaged in any "ultrahazardous activity," even if such activity had occurred.  *Compare* LG Mem. 27 *with* LG Complaint ¶198 (defining "Drilling Defendants" as BP, Transocean, Halliburton and M-I – not Offshore); Operating Agreement Art. 5.1.

### F.    OCSLA's Choice-of-Law Provision Applies to Activities on the OCS and Requires the Exclusive Application of Federal Law in this Case.

Offshore explained in its Opening Memorandum that the Local Governments' state-law claims must be dismissed because federal law applies exclusively to claims for damages and costs arising from oil spills on the Outer Continental Shelf under an OCSLA choice-of-law analysis.  D. Mem. 19-23.   In response, the Local Governments adopt other plaintiffs' arguments[10] and cite *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206 (1996) for the proposition that the exercise of maritime law does not result in the automatic preemption or displacement of state law.  *See* LG Mem. 11.

Unlike in State waters,  in the case of an oil spill on the OCS, OPA's authority over oil spill liability shares the field of regulation with OCSLA. Consistent with the federal

---

[10] In response to which Offshore incorporates by reference the arguments in its Consolidated Reply to Plaintiffs' Steering Committee's Omnibus Opposition to Dismiss the Master Complaints for Pleading Bundles B1 and B3 (Doc 2208), at 4-12.

interest in uniform regulation of the OCS, OCSLA serves as the authority for choice-of-law issues in cases that arise there.  When OPA was adopted, other portions of OCSLA were repealed, but not its choice-of-law rule, which remains in effect.

Under OCSLA's choice-of-law provision, State law applies to cases arising on the OCS where two requirements are met:  (1) The case must arise from an occurrence on "artificial islands [or] fixed structure[] erected thereon."  43 U.S.C. §1333(a)(2).  Second, if the case arises on such a permanent situs, state law will apply only (a) as surrogate federal law, and (b) only if necessary to fill a gap in federal law. *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the [OCS] be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Rodrigue v. Aetna Cas. & Sur. Co*., 395 U.S. 352, 357-58 (1969) ("it is evident … that federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law.").

Here, state law does not apply because the Deepwater Horizon was a temporary situs under 1333(a)(1), not permanent situs under 1333(a)(2), *see Diamond Offshore Co. v. A&B Builders, Inc.,* 302 F.3d 531, 544-45 (5th Cir. 2002) (recognizing that a semi-submersible drilling vessel is an OCSLA situs under Section 1333(a)(1) when it is temporarily attached to the OCS for purposes of exploring for resources).

Further, OPA provides the comprehensive remedy for oil spills and does not leave any "gaps" to be filled by state law.  OPA did not eliminate the federal government's interest in establishing uniform regulation of activities on the OCS, to the exclusion of state law.  To the contrary, OPA is federal law, and State laws that are "inconsistent with"

OPA cannot apply under 43 U.S.C. §1333(a)(2)(A).   OPA was enacted to provide uniformity in the treatment of oil spill recovery claims.  *See* S. Rep. 101-94, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.   That interest overlaps with the federal government's interests in regulating the OCS, but does not override or conflict with them.

Thus, the activities in this case were subject to the comprehensive federal regulatory scheme for exploratory activities occurring on the OCS.  Defendants' activities on the OCS were authorized by the Mineral Management Service under federal regulations requiring a series of approval requirements, and providing for enforcement actions where compliance is breached.  *See* 30 C.F.R. 250.280 (2009) (federal regulations require OCS lessees to conduct all activities according to approved Exploration Plan, or suffer civil penalties or forfeiture or cancellation of its lease).  Complementing MMS regulations are OCSLA and OPA, which address related and anticipated concerns, including choice-of-law based on situs, and oil spills.  In light of this federal scheme, state common law claims are preempted.  *See* D. Mem. 17, *citing Int. Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).

State claims cannot properly be considered to supplement federal law in this context.  *Compare* LG Mem. 11.  The cases relied upon by the Local Governments – *Yamaha Motor Corp.* and *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995) – did not concern events on the OCS where, under OCSLA's choice-of-law analysis, the adequacy of federal law and its resulting primacy have already been established.

### G.    The Local Governments' State Law Claims Must Be Dismissed.

Even if State law were to apply (and it does not), Offshore has demonstrated that the claims based on Texas, Florida and Louisiana law should be dismissed because (1) Texas and Florida are not "adjacent" states under OCSLA for the purposes of providing

surrogate law, and do not provide private rights of action under their statutes, and (2) the

Local Governments (i) do not plead sufficient factual allegations to support each element

of the Louisiana state claims against Offshore, and (ii) raise claims under the Louisiana

Wildlife and Fisheries Statute that are preempted by OPA and LOSPRA.  D. Mem. 24-

31.[11]

The Local Governments argue that they have stated claims for relief under the

Texas Oil Spill Prevention and Response Act (LG Mem. 16-18) and the Florida Pollution

Discharge Prevention and Control Act (LG Mem. 13-14), as well as Louisiana's Wildlife

and Fisheries Statute, Title 56 (LG Mem. 38-45).

OCSLA bars the application of Texas and Florida law.  Under OCSLA, only <u>one</u>

state can qualify as "adjacent," determined either by the outward projection of state

boundaries onto the OCS or proximity of the platform or vessel to the state's coastline.

*See, e.g., Snyder Oil. Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000)

(holding that a federal oil and gas lease on the OCS was adjacent to Alabama because it

fell on the Alabama side of the Mississippi-Alabama boundary projection); *Reeves v. B&S*

---

[11] Offshore herein adopts the the state-law arguments of its co-defendants, as set forth in (i) Memorandum in Support of BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) the Local Government Entity Master Complaint (Doc. 2214-1) at 3-18;  (ii) Memorandum of Law in Support of Motion of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Voluntary Master Complaint, Cross-Claim, and Third-Party Complaint for Local Government Entities Pursuant to Fed. R. Civ. P. 12(b)(7) ["Pleading Bundle C"] (Doc. 2218-1) at 7-33; (iii) Memorandum of Law in Support of Defendant M-I L.L.C.'s Motion to Dismiss Local Government Entity Voluntary Master Complaint (Bundle C) (Doc. 2224-1) at 5-24;  (iv) Memorandum in Support of Motion of Dril-Quip, Inc. to Dismiss Bundle C Complaints (Doc. 2442-1) at 17-32; (v) Memorandum of Defendant Cameron International Corporation in Support of Its Motion to Dismiss the Local Government Master Complaint (Doc. 2636-1) at 7-34; (vi)  Memorandum in Support of Weatherford U.S., L.P.'s Motion to Dismiss the Local Government Entity's Voluntary Master Complaint, Cross-Claim, Third-Party Complaint (Bundle C) and the First Amended Complaints of the States of Alabama and Louisiana, at 9-29 (Doc. 2638-1); (vii) Memorandum in Support of Halliburton Energy Services, Inc.'s Motion to Dismiss Plaintiffs' Master Complaint ["Bundle C"], the State of Alabama's First Amended Complaint, and the State of Louisiana's First Amended Complaint, at 9-24, 26-32 (Doc. 2642-1); and corresponding portions of those Defendants' Reply Memoranda. Offshore also adopts the arguments of its co-defendants regarding federal issues, to the extent those arguments may be applicable to Offshore.

*Welding*, 897 F.2d 178, 179 (E.D. La. 1990) (District Court determined that offshore gas production platform was "adjacent" to Texas where platform was closer to Texas coast than to Louisiana coast).

Here, the nearest adjacent state is Louisiana.   43 U.S.C. §1333(2)(A) (the laws of "each adjacent state … for that portion of the subsoil and seabed of the outer Continental Shelf … which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf" shall apply).   Consequently, if State law were to apply under OCSLA, it would be the law of Louisiana, the sole adjacent state.  The Local Governments' claims under Florida and Texas law must therefore be dismissed.

With respect to Louisiana law, LOSPRA by its terms is trumped by "[a]ny conflicting applicable federal law." LA. REV. STAT. ANN. §30:2491(A).  The penalties under that statute and Title 56 are essentially natural resources damages recoverable under OPA.  *See* D. Mem. 29-31.  The Local Governments fail to address that argument; their LOSPRA and Title 56 claims should consequently be dismissed.

While OPA does not affect a state's authority to "impos[e]" additional liability or requirements," 33 U.S.C. §2718(a)(1), (c)(1), the recovery sought under LOSPRA and title 56 is not "additional" liability but rather the <u>same</u> type of relief available under OPA: damages for alleged injuries to natural resources.  *See* LG Complaint ¶¶735-37 (seeking "the value of each fish, each wild bird, each wild quadruped, and other wildlife and aquatic life" harmed by oil spill).  Because Local Governments' LOSPRA and title 56 claims thus conflict with OPA provisions by imposing duplicative liability, OPA takes "precedence" over LOSPRA.

## III.     CONCLUSION

For the foregoing reasons and those cited in our Opening Memorandum, the Local Government's Complaint should be dismissed as against MOEX Offshore 2007 LLC should be dismissed.

Dated:  August 5, 2011

Respectfully submitted,

_____/s/  John F. Pritchard_____
John F. Pritchard
john.pritchard@pillsburylaw.com

Edward Flanders
edward.flanders@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Telephone (212) 858-1000
Facsimile (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 5, 2011.

_____/s/___John F. Pritchard_____