# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | |
| "DEEPWATER HORIZON" in the | § | **MDL No. 2179** |
| GULF OF MEXICO on | § | |
| APRIL 20, 2010 | § | **SECTION: J** |
| | § | |
| This document applies to: | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| *Pleading Bundle "C"* | § | |
| | § | |
| This document applies to: | § | |
| | § | |
| *No. 2:10-CV-2771* | § | |
| | § | |

## REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE LOCAL GOVERNMENT ENTITY VOLUNTARY MASTER COMPLAINT (BUNDLE C)

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

By:      /s/ *Hugh E. Tanner*

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001

    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:  (713) 890-5000
    Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

August 5, 2011

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument .................................................................. 1

Argument ................................................................................................................ 1

I.      Plaintiffs Chose Not to Dispute That Several Of Their Claims Lack Merit .......... 1

II.     Plaintiffs' Claims Under General Maritime Law Fail For Three Reasons ............ 3

    A.      The Legal Authority Is Unanimous:  OPA Displaces Plaintiffs'
        General Maritime Law Claims Against M-I ................................................ 3

        1.      OPA Displaces Claims Against Non-Responsible Parties............. 3

        2.      OPA Forbids Plaintiffs' Claim For Punitive Damages
            Under General Maritime Law. ......................................................... 5

    B.      This Court Lacks Jurisdiction Over Plaintiffs' Claims Because
        They Failed To Satisfy OPA's Presentment Requirement ........................ 7

        1.      The Busan Court Misconstrued OPA ............................................. 8

        2.      Even Under The Flawed Busan Approach, Plaintiffs Are
            Required To First Present Their OPA Claims To The
            Responsible Party ........................................................................ 11

    C.      The Economic Loss Rule Remains Good Law ....................................... 12

        1.      The Fifth Circuit Applies The Economic Loss Rule In All
            General Maritime Negligence Claims Where There Is No
            Showing Of Physical Damage To A Proprietary Interest ............ 12

        2.      CERCLA Did Not Overrule The Economic Loss Rule .............. 14

        3.      The Ultrahazardous Activity Doctrine Does Not Modify
            The Analysis ................................................................................ 14

III.    Along With Being Inapplicable, Plaintiffs' State Law Claims Fail On
    Their Own Terms ................................................................................................ 15

    A.      OCSLA Prohibits All State Law Claims In The Master Complaint ........ 15

    B.      Plaintiffs Fail To State A Claim For Trespass Under Louisiana
        Law ...................................................................................................... 17

    C.      Plaintiffs Fail To Plead A Cognizable Claim Under TOSPRA ............... 17

Conclusion ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abundiz v. Explorer Pipeline Co.*,
  Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H,
  2003 WL 23096018, at*1 (N.D. Tex. Nov. 25, 2003) ............................................................. 7

*Ainsworth v. Shell Offshore, Inc.*,
  829 F.2d 548 (5th Cir. 1987) ................................................................................................. 15

*Am. Elec. Power Co. v. Connecticut*,
  131 S. Ct. 2527 (2011) ............................................................................................................ 6

*Am. River Transp. Co. v. Kavo Kaliakra SS*,
  206 F.3d 462 (5th Cir. 2000) ................................................................................................. 13

*Atlantic Sounding Co. v. Townsend*,
  129 S. Ct. 2561 (2009) ............................................................................................................ 6

*Avitts v. Amoco Prod. Co.*,
  840 F. Supp. 1116 (S.D. Tex. 1994),
  *rev'd on other grounds*, 53 F.3d 690 (5th Cir. 1995) .......................................................... 18

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
  51 F.3d 235 (11th Cir. 1995) ............................................................................................ 7, 11

*Borland v. Sanders Lead Co.*,
  369 So. 2d 523 (Ala. 1979) ................................................................................................... 17

*Bourquard v. L.O. Ausauma Enters., Inc.*,
  52 So. 3d 248 (La. Ct. App. 2010) ........................................................................................ 17

*In re Burnett*,
  635 F.3d 169 (5th Cir. 2011) ................................................................................................... 9

*Chowdhury v. I.N.S.*,
  249 F.3d 970 (9th Cir. 2001) ................................................................................................... 9

*City of Arlington v. City of Fort Worth*,
  873 S.W.2d 765 (Tex. App.—Fort Worth 1994) ................................................................... 17

*Clausen v. M/V New Carissa*,
  171 F. Supp. 2d 1127 (D. Or. 2001) ....................................................................................... 4

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*,
  71 F.3d 198 (5th Cir. 1995) ................................................................................................... 13

**TABLE OF AUTHORITIES**
**(continued)**

                                                                                        **Page**

*Coulter v. Texaco, Inc.*,
    117 F.3d 909 (5th Cir. 1997) ........................................................................15

*Donald v. Amoco Prod. Co.*,
    735 So. 2d 161 (Miss. 1999)..........................................................................17

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008)..........................................................................................5

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009)..........................................................4, 7

*Gov't of the Canal Zone v. Burjan*,
    596 F.2d 690 (5th Cir. 1979) ........................................................................19

*Hallstrom v. Tillamook Cnty.*,
    493 U.S. 20 (1989)..........................................................................................11

*Hercules Carriers, Inc. v. Florida*,
    720 F.2d 1201 (11th Cir. 1983) ....................................................................13

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
    284 F. Supp. 2d 15 (D.D.C. 2003),
    *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ........................................................1, 2

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ..................................................................7

*Lanier v. Sallas*,
    777 F.3d 321 (5th Cir. 1985) ..........................................................................6

*Louisiana ex rel Guste v. M/V Testbank*,
    752 F.2d 1019 (5th Cir. 1985) ......................................................................14

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
    944 F. Supp. 476 (E.D. La. 1996)....................................................................7

*Med. Ctr. Pharmacy v. Mukasey*,
    536 F.3d 383 (2008)........................................................................................10

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996),
    *aff'd*, 122 F.3d 1062 (4th Cir. 1997)..............................................................4

# TABLE OF AUTHORITIES
## (continued)

Page

*Pennzoil Producing Co. v. Offshore Express, Inc.*,
  943 F.2d 1465 (5th Cir. 1991) ....................................................................13

*Petroleum Prods. Corp. v. Clark*,
  248 So. 2d 196 (Fla. Dist. Ct. App. 1971) ..................................................17

*Res. Mooring Inc. v. Am. Com. Barge Line, LLC*,
  251 F.3d 1069 (5th Cir. 2001) ....................................................................13

*Robins Dry Dock & Repair Co. v. Flint*,
  275 U.S. 303 (1927)......................................................................................12

*Ronquille v. MMR Offshore Servs., Inc.*,
  353 F. Supp. 2d 680 (E.D. La. 2004) ..........................................................19

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship.*,
  234 F.3d 58 (1st Cir. 2000)........................................................................4, 5

*Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*,
  257 F.3d 449 (5th Cir. 2001) ........................................................................6

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
  444 F.3d 371 (5th Cir. 2006) ......................................................................13

*Tanguis v. M/V Westchester*,
  153 F. Supp. 2d 859 (E.D. La. 2001)............................................................4

*The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc.*,
  --- F. Supp. 2d ---, 2011 WL 915300, at *1 (D. Del. Mar. 15, 2011) ....................16

*Tosco Corp. v. Koch Indus., Inc.*,
  216 F.3d 886 (10th Cir. 2000) ....................................................................14

*United States v. $92,203.00 in U.S. Currency*,
  537 F.3d 504 (5th Cir. 2008) ........................................................................9

*United States v. Locke*,
  529 U.S. 89 (2000)........................................................................................16

*United States v. M/V Cosco Busan*,
  557 F. Supp. 2d 1058 (N.D. Cal. 2008) ......................................8, 9, 10, 11, 12

## STATUTES, REGULATIONS AND OTHER AUTHORITIES

33 U.S.C. § 2702.........................................................................................passim

## TABLE OF AUTHORITIES
### (continued)

**Page**

33 U.S.C. § 2709 ............................................................................................................3

33 U.S.C. § 2713 .....................................................................................................passim

33 U.S.C. § 2715 ............................................................................................................5

33 U.S.C. § 2717 ...........................................................................................8, 9, 10, 11

33 U.S.C. § 2718 ......................................................................................................5, 16

42 U.S.C. § 9601 ..........................................................................................................14

42 U.S.C. § 9607 ..........................................................................................................14

43 U.S.C. § 1333 ..........................................................................................................15

33 C.F.R. § 136.103 ......................................................................................................8

La. Rev. Stat. § 56:40.1 *et seq* ...................................................................................2

Tex. Nat. Res. Code § 40.255 .....................................................................................18

Tex. Nat. Res. Code § 40.003 ...............................................................................18, 19

135 Cong. Rec. H7854 (1989) ..............................................................................4, 10

## INTRODUCTION AND SUMMARY OF ARGUMENT

Under governing law, this Court should dismiss all claims against M-I precisely because federal statutes allow Plaintiffs to efficiently recover *all* of their damages from the Responsible Parties. Through the Oil Pollution Act of 1990 ("OPA") and the Outer Continental Shelf Lands Act ("OCSLA"), Congress provided a comprehensive legal framework for addressing oil spill damages, providing injured parties with remedies greater than those available in almost any other area of law. Specifically, any entity that the Coast Guard designates as a "Responsible Party" is strictly liable for all damages. This relieves an injured party from the significant burden, inconvenience, and expense of proving culpability.

If the injured party is unsatisfied with its compensation from the Responsible Party, the governing statute gives the party a cause of action to sue the Responsible Party (and only the Responsible Party). It is for the Responsible Party to bring contribution actions against other potentially liable parties if it so chooses. Because federal law has expressly created a comprehensive statutory remedy, this Court should dismiss claims for the same damages outside the exclusive context of OPA and OCSLA.

## ARGUMENT

### I.    Plaintiffs Chose Not to Dispute That Several Of Their Claims Lack Merit.

Plaintiffs did not dispute several of M-I's grounds for dismissal. Surprisingly, Plaintiffs nowhere dispute M-I's arguments that several of their purported claims fail as a matter of law. Therefore, based on the reasons stated in M-I's moving brief and the lack of objection from Plaintiffs, this Court should dismiss this Complaint as to those grounds. *See*, *e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citations omitted) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only

certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

Plaintiffs chose not to dispute these arguments:

- Louisiana law is the only potentially applicable state law under OCSLA, and Plaintiffs' claims against M-I under the law of any other state must be dismissed. M-I's Memorandum of Law in Support of Its Motion to Dismiss ("M-I MTD") 18-19.

- LOSPRA does not provide a cause of action to anyone other than the state-wide coordinator, and because the state-wide coordinator is not a party to this suit, claims against M-I under LOSPRA must be dismissed. *Id.* at 21-23.[1]

- Even if the state-wide coordinator were a party to this suit, any suit by the state-wide coordinator would have to be dismissed as premature. *Id.* at 22.

- Claims brought by district attorneys under LA. REV. STAT. § 56:40.1 *et seq*, are duplicative of the State of Louisiana's suit and must be dismissed. *Id.* at 22-23.

- M-I has not been, and cannot be, named a Responsible Party under OPA, and thus it is not liable to Plaintiffs under federal law. *Id.* at 12-14.

- Plaintiffs fail to state a claim for the tort of nuisance under the only potentially applicable state law (Louisiana), and so the claim for nuisance must be dismissed. *Id.* at 19-20.

- Punitive damages are not available under the only possible state law that might apply (Louisiana).  M-I MTD 25.

---

[1] At Opp. 14-15, Plaintiffs do assert in a heading that their complaint "states a claim for relief under [LOSPRA]," but nowhere in that section do they discuss M-I's claim that LOSPRA does not create a right of action for political entities.  M-I's argument is not that LOSPRA preempts claims, but simply that it does not create a right of action for anyone other than the state-wide coordinator to sue under LOSPRA.

Because Plaintiffs do not disagree with M-I's articulation of the governing law, this Court should dismiss these claims.

## II.   Plaintiffs' Claims Under General Maritime Law Fail For Three Reasons.

### A.   The Legal Authority Is Unanimous:  OPA Displaces Plaintiffs' General Maritime Law Claims Against M-I.

Claims I(A) and I(B) of Plaintiffs' Voluntary Master Complaint seek damages from M-I under "general maritime law" for "negligence" and "gross negligence and willful misconduct." *See* Compl. ¶¶ 542-95.  These claims should be dismissed because they seek economic damages caused by an oil spill, damages expressly provided for in OPA at 33 U.S.C. § 2702(b).

#### 1.   OPA Displaces Claims Against Non-Responsible Parties.

Plaintiffs concede that OPA displaces general maritime law for oil spill-related damages. After referencing their prior arguments that OPA does not displace general maritime law, Plaintiffs allow that "general maritime law is likely displaced to the extent that a person or entity seeks the removal costs or damages 'provided in' OPA [33 U.S.C. § 2702(b)] from the responsible party." Opp. 18.  Plaintiffs follow this admission with the assertion that "general maritime law is *not* displaced with respect to traditional maritime claims against other parties, nor with respect to maritime claims for remedies such as punitive damages that are not provided in . . . OPA against the responsible party." *Id.* at 18-19.

Plaintiffs cite no authority in support of this curious assertion.  They accept the premise of M-I's argument (that where a statute speaks directly, it replaces the common law), but then artificially limit the application of that principle.  OPA is a comprehensive statute:  it provides not only the procedures by which an injured party recovers from the Responsible Party, but also how the Responsible Party recovers from other potentially-liable tortfeasors.  *See* 33 U.S.C. § 2709.  Thus, the statute provides the complete structure for the liability and obligations among

injured persons, the Responsible Parties, and other potentially liable parties.  Because, as Plaintiffs concede, OPA displaces general maritime causes of action against the Responsible Party, it also displaces causes of action against potentially liable third parties.  This is the only logical conclusion:  because OPA directs that the Responsible Party is liable for all damages, there is no need to provide a cause of action against other potentially liable parties.  Furthermore, Plaintiffs' argument is contrary to the statutory structure.  OPA's purpose is to afford injured parties efficient compensation outside of court.  *See* 135 CONG. REC. H7954, H7965 (1989).  But Plaintiffs' unprecedented reading defeats this purpose by requiring a plaintiff to seek compensation from the Responsible Party while simultaneously pursuing complex litigation against all other potentially liable third parties.  Plaintiff's position has no support and is contrary to the purpose, structure, and text of the statute.

As M-I explained in its memorandum, courts across the county have unanimously held that OPA provides the exclusive federal remedy for economic damages caused by an oil spill. *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 746 (E.D. La. 2009); *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867-68 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).  These holdings are not limited to claims against the Responsible Party, but instead, recognize that OPA displaces the common law where it provides a framework for recovery.

M-I's interpretation is consistent with statutory intent.  OPA requires claimants to seek payment for their oil spill-related damages in a quick and efficient manner under OPA—and only under OPA—from the Responsible Party when those claims arise from a discharge of oil on the

Outer Continental Shelf.  OPA does nothing to prevent a state from enforcing stricter requirements for discharges of oil within its territorial boundaries.  *See* 33 U.S.C. § 2718(c).  Further, OPA gives the Responsible Party the right to seek recovery from potentially liable third parties through contribution and subrogation rights.  *See id.* §§ 2709, 2715.  OPA thus creates a method of expedient and efficient recovery by allowing claimants to avoid the delay and costs associated with litigation and by shifting the burden to the Responsible Party to seek contribution through litigation.

        **2.     OPA Forbids Plaintiffs' Claim For Punitive Damages Under General Maritime Law.[2]**

OPA provides a comprehensive list of damages available for the harms alleged.  Plaintiffs seek to judicially amend the statute by adding "punitive damages" as one of the available damages.  As every Court directly considering the issue has held, OPA forbids the recovery of punitive damages for OPA-covered harms.  *See*, *e.g.*, *S. Port Marine*, 234 F.3d at 64 ("Absent from that list of recoverable damages [under OPA] is any mention of punitive damages.").

The general cases Plaintiffs cite are not to the contrary.  Plaintiffs' reliance (at Opp. 21-22) on *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 484-89 (2008), to save their punitive damages claim from preemption is misplaced.  The Supreme Court in *Exxon Shipping* held that the Clean Water Act did not preempt punitive damages under common law claims.  Specifically Exxon asserted that "the CWA's penalties for water pollution preempt[ed] the common law punitive-damages remedies at issue here."  *Id.* at 488 (internal citation omitted).  However, M-I has made no such argument in this case.  M-I's argument is a simple two-step analysis:  (1) OPA displaces general maritime claims for oil spill-related damages and (2) punitive damages are not available under OPA.  Nothing Plaintiffs have said is contrary to M-I's position.  For Plaintiffs'

---

[2] As discussed *supra*, Plaintiffs concede that they do not have a claim for punitive damages under their state law claims.

argument to have merit, there would have to be a free-standing cause of action under federal law for punitive damages—but there is none. *Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 460 (5th Cir. 2001) ("A cause of action for punitive damages is not . . . separate and distinct from the underlying claim for compensatory damages." (quoting *Lanier v. Sallas*, 777 F.3d 321, 325 (5th Cir. 1985) (internal quotation marks omitted))).  The only federal claims Plaintiffs can bring are OPA claims, and OPA does not afford for the recovery of punitive damages.

Additionally, Plaintiffs direct this Court to *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009).  But that case does not help their cause either.  In *Townsend*, the Supreme Court held that the Jones Act does not preempt a right to claim punitive damages in an action for failure to pay maintenance and cure.  *Id.* at 2575.  In *Townsend*, a common law cause of action separate from the statutory cause of action allowed the recovery of punitive damages.  *Id.* at 2571 ("Nothing in the text of the Jones Act or this Court's decisions issued in the wake of its enactment undermines the continued existence of the *common-law cause of action* providing recovery for the delayed or improper provision of maintenance and cure." (emphasis added)).  Here, because OPA replaces the common law cause of action, the only remedies available are those specified under OPA.

Plaintiffs also cite *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011) for the proposition that the statute must speak "directly to [the] question at issue."  Opp. 22 (internal quotation marks omitted).  Here, OPA does exactly that.  It specifies who is liable to whom (the Responsible Party to those injured), for what types of damages (compensatory), under what standard (strict liability), and how the Responsible Party can go about obtaining

6

contribution and subrogation from others.   OPA speaks directly to these issues and omits punitive damages from the list of recoverable damages.

> **B.      This Court Lacks Jurisdiction Over Plaintiffs' Claims Because They Failed To Satisfy OPA's Presentment Requirement.**

Plaintiffs do not allege that they have satisfied OPA's presentment requirement.   *See* Opp. 23-25.  They simply argue that their suits should be allowed to proceed anyway.  Opp. 25.

As explained in M-I's MTD (at 10-12), Plaintiffs ignore the plain language of 33 U.S.C. § 2713(a) which provides that "*all* claims for removal costs or damages" must be presented to the responsible party.  (Emphasis added.)  Plaintiffs' OPA claims must be dismissed because section 2713(a) creates a mandatory condition precedent to the existence of jurisdiction over all OPA claims.  *See Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995); *Gabarick*, 623 F. Supp. 2d at 750 (stating that only "once claimants have exhausted the OPA administrative remedies" are they "then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court"); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H, 2003 WL 23096018, at *5 (N.D. Tex. Nov. 25, 2003) ("[T]he Court holds that the Plaintiffs did not successfully meet the sum certain presentation requirement of the OPA for property damage claims.  The Court therefore lacks subject matter jurisdiction for these OPA claims."); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing claims because of plaintiff's failure to first present claims to Responsible Party).  In fact, this very Court has previously "agree[d] that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant." *LaRoche Indus.*, 944 F. Supp. at 477.

Section 136.103 of the Code of Federal Regulations implements the rules regarding presentment. Subsection (a) mirrors section 2713(a) and states claims must be presented to the Responsible Party. 33 C.F.R. § 136.103(a). Subsection (b) mirrors § 2713(b) and states certain claims may first be presented to the Fund, such as claims by governors. *Id.* § 136.103(b). Subsection (c) then states "[i]f a claim is presented *in accordance with paragraph (a) of this section* and" the claim has been denied or not settled within 90 days, "the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund." 33 C.F.R. § 136.103(c) (emphasis added). The language of section 136.103 makes clears that presentment is required before commencing an action in court, with no exceptions. 33 C.F.R. § 136.103.

Plaintiffs ignore the authority cited by M-I, and instead, hang their hat entirely on one district court case out of California that has never been reviewed by any appellate court.

### 1.    The *Busan* Court Misconstrued OPA.

Plaintiffs rely solely on *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008), in support of their position that they are not required to follow OPA's presentment requirement. In *Busan*, a cargo ship discharged more than 50,000 gallons of heavy bunker fuel into the San Francisco Bay after striking a bridge. *See id.* at 1059. Subsequently, the United States government filed suit under OPA, among other statutes, seeking to recover removal costs and other damages. *See id.* at 1060. The defendants argued the court lacked jurisdiction over the government's OPA claims because the government failed to comply with § 2713(a)'s presentation requirement. *See id.* The court rejected the defendants' position, finding that the government need not comply with § 2713(a) based on the court's understanding of § 2717(f)(2), a subsection concerning limitations issues. *Id.* at 1060-61. Section 2717(f)(2) reads as follows:

> An action for recovery of removal costs referred to in section 2702(b)(1) of this title must be commenced within 3 years after completion of the removal action. In any such action described in this subsection, the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages. *Except as otherwise provided in this paragraph, an action may be commenced under this subchapter for recovery of removal costs at any time after such costs have been incurred.*

(Emphasis added.)  The *Busan* court focused on the final sentence of this paragraph. *See Busan*, 557 F. Supp. 2d at 1060-61. Using this sentence, the court turned to § 2702(b)(1)(A), which defines those removal costs recoverable by "the United States, a State, or an Indian tribe." *See id.* at 1061.  Based on these two sections, the court found that the reference to § 2702(b)(1) in § 2717(f)(2) created an exception to the presentment requirement of § 2713(a).  *See id.*

The court's untenable interpretation would render the inclusion of the term "removal costs" in the presentment requirement of § 2713(c) superfluous since § 2717(f)(2) does not distinguish between the claims of governmental entities and private parties.   In reaching its conclusion, the *Busan* court disregarded the structure and plain language of the statute in violation of the cardinal rules of statutory construction.  *See In re Burnett*, 635 F.3d 169, 172-73 (5th Cir. 2011) (a statute is to be read as a whole to avoid rendering portions of it inconsistent or devoid of meaning); *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 509-10 (5th Cir. 2008) ("We are to read a statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." (citation and internal quotation marks omitted)); *Chowdhury v. I.N.S.*, 249 F.3d 970, 973 (9th Cir. 2001) ("When analyzing a statute we compare the language used in different sections and read it as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (citation and internal quotation marks omitted)).

Section 2702(b)(1) defines removal costs depending on the entity or person incurring them.  Section 2702(b)(1)(A) defines those removal costs recoverable by "the United States, a State, or an Indian tribe"; section 2702(b)(1)(B) defines removal costs recoverable by "any person."  Unlike the two types of removal costs defined by section 2702(b)(1), section 2713(a) explicitly requires that "*all claims for removal costs* or damages shall be presented first to the responsible party."  (Emphasis added.)  Section 2713(a) does not except from the presentment requirement removal costs incurred by "the United States, a State, or an Indian tribe" under section 2702(b)(1)(A).  The *Busan* court's exception is found not in the relevant section of the statute setting forth the claims procedure, section 2713, but in section 2717(f), the sole purpose of which is to set the limitations periods for OPA claims.   This final sentence of section 2717(f)(2), in conjunction with the sentence before it, merely clarifies that a suit for removal costs may be instituted at any time after such costs are incurred, even where additional removal costs may be incurred in the future. *See* § 2717(f)(2).   In any event, it is not appropriately construed as an exception to the presentment requirement.  If Congress had desired to provide such an exception, Congress could have explicitly done so.  *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 405-06 (2008) (rejecting a request to find an "implicit" exception in the statute "wholly apart from the narrow, conditional and explicit exceptions enumerated" because it would render those explicit exceptions superfluous).

The *Busan* court's exception to section 2713(a)'s presentment requirement is contrary not only to the plain language of OPA, but to congressional intent. *See* 135 CONG. REC. at 7965 ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.").

The court itself seemed to recognize that it was deviating from the language of the statute and congressional intent to arrive at its conclusion:

> Congress *likely recognized* that the United States, a State, or a Tribe seeking to recover removal and cleanup costs *should be allowed greater flexibility* in its recovery efforts than individuals seeking damages. Under the statutory framework, *it is entirely conceivable* that the United States, a State, or a Tribe *would prefer* to seek recovery of removal costs through the claims procedure, thus avoiding costly litigation. *One can imagine* that this option *would be attractive* in situations where removal costs are relatively small and undisputed. On the other hand, *one can imagine* situations where, given the size of the spill, the scope of the cleanup process, the complexity of the legal issues, or the intransigence of the Responsible Party, it *would be preferable* to proceed directly to a court to seek recovery costs.

*See Busan*, 557 F. Supp. 2d at 1061 (emphases added). Had the court relied on the actual language and structure of the statute, a lengthy justification couched in conditional language would not have been necessary.  "'In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  *Boca Ciega*, 51 F.3d at 239 (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)).   If Plaintiffs perceive a policy shortcoming in OPA's presentment requirement, it should be addressed to Congress and properly remedied by congressional action. *See id.*  The district court's analysis was erroneous, and that is why it has not been followed by any other court, and why the Eleventh Circuit reached a different outcome.

> **2.    Even Under The Flawed *Busan* Approach, Plaintiffs Are Required To First Present Their OPA Claims To The Responsible Party.**

Even under the *Busan* court's exception to the presentment requirement, Plaintiffs are political subdivisions and thus not among the class of parties entitled to file suit without first presenting their claims.   The *Busan* court based its exception to section 2713(a) on section 2717(f)(2)'s reference to the language of section 2702(b)(1)(A), defining removal costs recoverable by "the United States, a State, or an Indian tribe."   33 U.S.C. § 2702(b)(1)(A).

According to the court, "§§ 2702(b)(1) and 2717(f)(2) permit only the United States, a State, or an Indian tribe to bring an action at any time to recover removal costs. All other claimants seeking damages or recovery costs must first present their claims to the responsible party, pursuant to § 2713[(a)]." *Busan*, 557 F. Supp. at 1061.  Plaintiffs, by their own admission, are not the United States, a State, or an Indian tribe.  *See* Compl. ¶ 28 ("Claimants herein include local government entities and officials, such as cities, towns, counties, villages, parishes, municipalities . . . and other local public or governmental bodies that *are not state agencies*, in Florida, Alabama, Mississippi, Louisiana and Texas." (emphasis added)).  Therefore, even if this Court were to accept the *Busan* court's exception, Plaintiffs have pleaded themselves beyond the reach of that exception, and their OPA claims should be dismissed.

> C.     **The Economic Loss Rule Remains Good Law.**

Plaintiffs fail to demonstrate how their general maritime claims against M-I, even if not displaced by OPA, withstand the application of the Economic Loss Rule.  Plaintiffs point out that the Economic Loss Rule does not apply to OPA claims.  *See* Opp. 26.  M-I does not dispute that the OPA provides certain remedies that might otherwise be barred by the Economic Loss Rule.  *See* M-I MTD 14 n.5 ("Congress, apparently recognizing the limitation of the economic loss rule, has expressly permitted more expansive remedies for parties under OPA.").  It is, however, Plaintiffs' general maritime claims that are at issue.  The fact that the Economic Loss Rule does not bar certain types of OPA claims fails to explain how, even if not displaced, it does not foreclose Plaintiffs' general maritime claims.  *See* Opp. 26-27.

> 1.     **The Fifth Circuit Applies The Economic Loss Rule In All General Maritime Negligence Claims Where There Is No Showing Of Physical Damage To A Proprietary Interest.**

Plaintiffs assert that the Economic Loss Rule, as announced by the Supreme Court in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), should apply only in cases where

the plaintiff suffers an economic loss as a result of an injury, caused by the defendant, to a party in privity with the plaintiff. *See* Opp. 26. As explained in M-I's memorandum, the Fifth Circuit applies the economic loss rule in all maritime negligence lawsuits where purely economic damages are sought and the plaintiff has suffered no physical injury to a proprietary interest. *See Res. Mooring Inc. v. Am. Com. Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *Am. River Transp. Co. v. Kavo Kaliakra SS*, 206 F.3d 462, 464 (5th Cir. 2000) (noting "this circuit consistently applies the *Robins Dry Dock* rule to bar recovery for economic damages in negligence that are unconnected to an injury to a property interest"); *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 201 (5th Cir. 1995); *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1473 (5th Cir. 1991) (reaffirming that, "Despite stiff criticism and several potent challenges, the principle announced by Justice Holmes [in *Robins Dry Dock*] survives to this day; it is the law in this Circuit that a plaintiff in an admiralty case cannot recover negligently inflicted economic losses where there is no physical damage to any property in which the plaintiff has a proprietary interest.").

Plaintiffs' only support for their assertion is a special concurrence from nearly 30 years ago. This concurrence does not reflect the law of the Fifth Circuit. Even the special concurrence Plaintiffs cite does not interpret the law as being different. Rather, that concurring judge recognized that *Robins Dry Dock* has been extended to situations such as these, but thought that extension should be reversed. *See Hercules Carriers, Inc. v. Florida*, 720 F.2d 1201, 1203 (11th Cir. 1983) (Clark, J., specially concurring). *Robins Dry Dock*, and Fifth Circuit precedent applying its rule, remain binding law.

### 2.     CERCLA Did Not Overrule The Economic Loss Rule.

Plaintiffs do not bring a claim under CERCLA, yet they suggest that an amendment to CERCLA implicitly overruled *Robins Dry Dock*.  Opp. 26.  Plaintiffs cite no authority for this proposition.  *See id.*

CERCLA does not apply to the *Deepwater Horizon* incident and claims arising from the incident because CERCLA specifically excludes coverage for "petroleum, including crude oil or any fraction thereof." 42 U.S.C. § 9601(14); *see also id.* § 9601(33).  This "petroleum exclusion" was intended to address oil spills.  *See Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 893 (10th Cir. 2000).  Moreover, the CERCLA provision Plaintiffs cite, by its own terms, applies only to "[t]he owner or operator of a vessel," 42 U.S.C. § 9607(h), and M-I is neither.   Given CERCLA's inapplicability to this litigation against M-I and the lack of any authority for Plaintiffs' assertion, this Court should reject Plaintiffs' suggestion that CERCLA implicitly overrules a well-developed line of Supreme Court precedent directly applicable to the present situation.

### 3.     The Ultrahazardous Activity Doctrine Does Not Modify The Analysis.

Plaintiffs argue that "to the extent that Defendants are found to have engaged in the willful or intentional misconduct alleged against them . . . they cannot rely on [the Economic Loss Rule] to shield them from liability for damages for economic loss."  Opp. 26-27.  Plaintiffs' only authority in support of this conclusion is the first sentence and footnote in *Louisiana ex rel Guste v. M/V Testbank*, 752 F.2d 1019, 1020 & n.1 (5th Cir. 1985).  *Testbank* was the seminal case applying the *Robins Dry Dock* precedent in the Fifth Circuit.  The introductory sentence and footnote on which Plaintiffs rely merely state the subject of the case, recovery for economic loss in an unintentional maritime tort, and notes that intentional torts or "ultrahazardous activity, such as blasting" are not before the court.  *See id.*

Moreover, Plaintiffs simply announce their conclusion that "deepwater drilling qualifies as ultrahazardous activity, as it creates a high degree of risk to persons, land and chattels, and poses special and different challenges not faced on land or in shallow water" without any supporting authority.  Opp. 27.  The Fifth Circuit, applying Louisiana law, has held precisely the opposite.  *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987) (under Louisiana law, drilling operations on offshore platform presented risk of harm that could be eliminated through exercise of due care and were not "ultrahazardous activity"); *see also Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).  Plaintiffs' unsupported and conclusory statements do not excuse the strict application of the Economic Loss Rule as the Fifth Circuit has consistently required.  The Economic Loss Rule remains good law, and even if Plaintiffs' general maritime law claims were not displaced, they would fail under this rule.

## III.  Along With Being Inapplicable, Plaintiffs' State Law Claims Fail On Their Own Terms.

### A.  OCSLA Prohibits All State Law Claims In The Master Complaint.

Plaintiffs focus their response on the argument that OPA preempts state law, but that is non-responsive to M-I's position that OCSLA prohibits the application of state law in this circumstance.  As this Court has already held, OCSLA applies to the Deepwater Horizon oil spill.  *See* Oct. 16, 2010 Order (Dkt. No. 470) 6-8.  OCSLA makes federal law exclusive on the Outer Continental Shelf.  *See* M-I MTD 15-18.  The only time OCSLA allows for state law to operate is when the requirements of 43 U.S.C. § 1333(a)(2) are satisfied.  As M-I explained in its memorandum, the requirements of § 1333 are not satisfied because the *Deepwater Horizon* was not "subsoil and seabed of the outer Continental Shelf, [nor] artificial islands and fixed structures erected thereon."  43 U.S.C. § 1333(a)(2)(A). Plaintiffs do not express any disagreement with this analysis that they do not meet the requirements of section 1333(a)(2)(A).  *See* Opp. 8-13.

This lack of disagreement effectively concedes state law does not apply to the oil spill-related claims.

Plaintiffs focus almost exclusively on OPA's "savings clauses," 33 U.S.C. § 2718, but they make no effort to respond to M-I's analysis explaining how OCSLA forecloses the application of all state law to this incident.  M-I does not dispute that OPA's "savings clause" preserve certain state laws which "establish liability rules and financial requirements relating to oil spills."  *United States v. Locke*, 529 U.S. 89, 105 (2000).  OCSLA makes federal law, OPA in this case, exclusive with respect to activities on the Outer Continental Shelf.  OPA's "savings clauses" operates where it is needed most, in state territorial waters, where there is little risk of multiple inconsistent laws and legal regimes being applied to the same conduct.  Plaintiffs do not counter this argument.

Instead, Plaintiffs spend nearly a page of their response discussing *The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc.*, --- F. Supp. 2d ---, 2011 WL 915300 (D. Del. Mar. 15, 2011).  As Plaintiffs explain, "Transocean argued that [33 U.S.C. §] 2718(a)(1) applies only to state statutory regimes, while [§] 2718(a)(2) is limited to state law . . . relating to waste disposal."  Opp. 10.  Plaintiffs go on to explain why the district court rejected this argument.  *See id.* at 10-11.  This discussion is irrelevant to M-I's argument.  To the extent Plaintiffs come close to addressing the fact that OCSLA makes federal law exclusive, they cite several cases standing for the proposition that "the exercise of admiralty jurisdiction does not result in the automatic preemption or displacement of state law" and that admiralty courts may borrow from general common law.  *See id*. at 11.  Again, this is not responsive to M-I's argument because, as explained above, Congress has displaced general maritime law with regard to economic damages resulting from oil spills by enacting OPA.  OCSLA makes OPA exclusive where OCSLA's

limited exceptions allowing application of state law are not met.  Plaintiffs' state law claims should be dismissed.

**B.      Plaintiffs Fail To State A Claim For Trespass Under Louisiana Law.**

M-I sought dismissal of Plaintiffs' trespass claims insofar as "any Plaintiffs . . . were not the owners of real property that was 'invaded' by oil have failed to allege a cognizable claim for trespass under Louisiana law."  M-I MTD 20.  Plaintiffs' response on this issue is the bare assertion that "Plaintiffs have stated a claim for trespass under the common law and the law of each of the Gulf States, and the claim is available to those who own or lease properly damaged by the oil spill."  Opp. 36.  However, even taking into account Plaintiffs' reference to their briefing on a similar issue involving different parties, Plaintiffs still fail to counter address M-I's analysis.

Plaintiffs do not dispute M-I's argument that to state a claim for trespass, Plaintiffs must allege "an unlawful physical invasion of the property or possession of another."  *Bourquard v. L.O. Ausauma Enters., Inc.*, 52 So. 3d 248, 251 (La. Ct. App. 2010) (citation and internal quotation marks omitted).[3]  Any plaintiffs not suffering an actual physical invasion of their property have not pleaded a cognizable trespass claim against M-I, and their claims should be dismissed.

**C.      Plaintiffs Fail To Plead A Cognizable Claim Under TOSPRA.**

As discussed above, Plaintiffs concede that to the extent any state law *might* apply, it is only the law of Louisiana.  But even if the law of Texas applied to the oil spill (which it does not), Plaintiffs fail to plead a claim under TOSPRA.

---

[3] This is the case in each of the Gulf Coast states.  *See Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 169 (Miss. 1999); *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527-28 (Ala. 1979); *Petroleum Prods. Corp. v. Clark*, 248 So. 2d 196, 198-99 (Fla. Dist. Ct. App. 1971); *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 769 (Tex. App.—Fort Worth 1994).  Thus, to the extent that these states' trespass laws could apply, the claims of all non-property owners must be dismissed as well.

TOSPRA creates a cause of action only for the State of Texas.  *See* M-I MTD 24.
Plaintiffs acknowledge that in *Avitts v. Amoco Production Co.*, 840 F. Supp. 1116, 1121 (S.D.
Tex. 1994), *rev'd on other grounds*, 53 F.3d 690 (5th Cir. 1995), the Southern District of Texas
held that the plain statutory language provided that the administrative compensation scheme is
the only type of claim TOSPRA authorizes for private parties.  *See* Opp. 17.  The text of the
statute, along with the case law, supports the conclusion that TOSPRA provides a cause of action
only for the State itself.

Plaintiffs attempt to extrapolate from the holding in *Avitts* that local governments may
maintain the same claim rejected by the *Avitts* court where it was brought by a private party.  *See
id.* at 17-18.  Nothing in *Avitts* supports such a distinction.  Plaintiffs do not explain why *Avitts*'s
rationale does not apply equally to a local government's cause of action since the statute
explicitly authorizes a cause of action only for the State of Texas, brought by the state attorney
general.  *See* TEX. NAT. RES. CODE § 40.255(b).  The plain statutory text establishes that only the
State may sue under TOSPRA, and Plaintiffs offer nothing to counter this plain-text
interpretation of the statute.  The State of Texas is not party to this claim, and because it is the
only plaintiff to which TOSPRA gives a cause of action, the claim under TOSPRA must be
dismissed.

But even if the claim could be brought by someone other than Texas, the claim still fails
on its own merits.  In its opening brief, M-I demonstrated how the blowout and explosion did not
qualify as an "oil spill" of the type covered under TOSPRA.  M-I MTD 23.  Plaintiffs argue that
the Macondo Well qualifies as a "terminal facility" because it is a "waterfront or offshore
pipeline, structure, equipment, or device used for the purpose of drilling for, pumping, storing,
handling, or transferring oil."  Opp. 17 (citing TEX. NAT. RES. CODE. § 40.003(23)).  But the oil

spill was from the ocean floor, not from any equipment, and thus the source of the spill does not qualify as a terminal facility as defined in the statute.

Additionally, M-I explained how the Deepwater Horizon oil spill did not qualify as a "discharge of oil" as defined in the statute because the spill did not occur "on coastal waters or at a place adjacent to coastal waters." TEX. NAT. RES. CODE § 40.003(8). As M-I explained, and Plaintiffs themselves assert, the *Deepwater Horizon* was adjacent to Louisiana, not Texas. *See* M-I MTD 18-19; Compl. ¶ 241 (describing the location as "48 miles off the coast of Louisiana") Plaintiffs' only response is to assert, without citation, that "[t]he location of the Macondo well was 'adjacent to' the coastal waters of Texas." Opp. 17. This assertion is incorrect. First, Plaintiffs themselves allege that the *Deepwater Horizon* was located "off the coast of Louisiana." Compl. ¶ 30; *see also id.* ¶ 241 (alleging the Macondo well was located "in Mississippi Canyon Block 252, 48 miles off the coast of Louisiana"). Second, this Court has held that sites in the Mississippi Canyon Block, even farther off the Louisiana coast than the Macondo well, were adjacent to Louisiana for OCSLA purposes. *See Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 681 n.3 (E.D. La. 2004). Finally, the Court can take judicial notice that if the boundaries of the State of Louisiana were extended seaward, the location of the Macondo well would fall within its borders. *See Gov't of the Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) ("[O]fficial government maps have long been held proper subjects of judicial notice."). There is simply no basis for Plaintiffs' assertion that the Macondo well was adjacent to the coastal waters of Texas under TOSPRA or any other statute.

## CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss with

prejudice all claims asserted against it in Plaintiffs' Voluntary Bundle C Master Complaint and the Bundle C complaints addressed therein.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *Hugh E. Tanner*

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:      (305) 415-3000
Facsimile:      (305) 415-3001

    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:      (713) 890-5000
    Facsimile:      (713) 890-5001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:      (713) 890-5000
Facsimile:      (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

August 5, 2011

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that the above and foregoing Reply in Further Support of Defendant M-I L.L.C.'s Motion To Dismiss The Local Government Entity Voluntary Master Complaint ("Bundle C") has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the Court's CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, on this 5th day of August, 2011.

       /s/ *Hugh E. Tanner*_____
      Hugh E. Tanner