UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the<br>Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION "J" |
| **THIS PLEADING APPLIES TO ALL CLAIMS AND CASES IN PLEADING BUNDLE C, INCLUDING ALL COMPLAINTS IN THE C BUNDLE NAMING WEATHERFORD AS DEFENDANT** | *<br>*<br>*<br>*<br>*<br>*<br>* | JUDGE:  BARBIER<br><br>MAGISTRATE:  SHUSHAN |
| **This Pleading also applies to 10-CV-2771, 10-CV-04182, 10-CV-04183, 11-CV-0516, 10-CV-03059, 10-CV-1758, 10-CV-1757, 10-CV-1759, 10-CV-1760, 10-CV-2087, 10-CV-2731, 10-CV-2996, 10-CV-2997** | *<br>*<br>*<br>*<br>* | |

\*    \*    \*    \*    \*    \*    \*

### WEATHERFORD U.S., L.P.'S REPLY MEMORANDUM TO THE OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE VOLUNTARY MASTER COMPLAINT FOR LOCAL GOVERNMENTAL ENTITIES ("BUNDLE C"), THE STATE OF ALABAMA'S BRIEF IN OPPOSITION, AND THE STATE OF LOUISIANA'S MEMORANDUM OF LAW IN OPPOSITION

**MAY IT PLEASE THE COURT:**

In accordance with Pre-Trial Order No. 33 (Rec. Doc. 1549) and the Court's Stipulated Order Regarding Pleading Deadlines Concerning the Local Government Entity Master

{N2337348.7}

1

Complaint, Complaints by the States of Alabama and Louisiana and Individual Civil Actions Filed by Local Government Entities (Rec. Doc. 2273), Defendant, Weatherford U.S., L.P. ("Weatherford"), submits this Reply Memorandum to the Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss the Voluntary Master Complaint for Local Governmental Entities ("Bundle C") ("the Omnibus Opposition") (Rec. Doc. 3186), the State of Alabama's Brief in Opposition to the Various Defendants' Motions to Dismiss ("Alabama's Opposition") (Rec. Doc. 3203), and the State of Louisiana's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the State of Louisiana's First Amended Complaint ("Louisiana's Opposition") (Rec. Doc. 2113).[1]  The Bundle C Plaintiffs, the State of Alabama, and the State of Louisiana are collectively referred to herein as the "Government Plaintiffs."

## I. OPA IS EXCLUSIVE AND MANDATORY AND PROVIDES NO CAUSE OF ACTION AGAINST WEATHERFORD

Despite all of the Government Plaintiffs' advocacy and demands for equity in these proceedings, the Government Plaintiffs, like the B1 Plaintiffs, overlook the fact, whether intentionally or otherwise, that the inquiry before the Court is not what types of claims might be asserted against Weatherford, but what categories of damages are sought by the Government Plaintiffs against Weatherford.  The Government Plaintiffs seek OPA-enumerated damages against Weatherford under the General Maritime Law and various state laws, including claims under the following statutes: Louisiana Oil Spill Prevention and Response Act ("LOSPRA"), La. R.S. 30:2451, *et seq.*; the Wildlife Statute, La. R.S. 56:40.1, *et seq.*; the Louisiana Environmental Quality Act ("LEQA"), La. R.S. 30:2025; and the Alabama Water Pollution

---

[1] This Reply also responds in part to the State of Louisiana's Memorandum of Law in Interest in and Opposition to Defendants' Pending Motions to Dismiss, Rec. Doc. 1993, and the Louisiana Parish District Attorneys' Joint Opposition to BP Defendants' Motion to Dismiss, Rec. Doc. 2161.

{N2337348.7}
2

Control Act ("AWPCA"), ALA. CODE ANN. § 22-22-1.[2] Under the very wording of OPA itself, the damages sought by the Government Plaintiffs against Weatherford are OPA damages, nothing more, nothing less.

Similar to the claimants in *Gabarick v. Laurin Maritime (America), Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009), the Government Plaintiffs "cloud the issue at bar" by arguing that OPA does not preempt the General Maritime Law or state law "rather than focusing on preemption solely of the damages specifically covered by OPA." *Id.* at 746. The Government Plaintiffs can only offer arguments which have been tested and specifically rejected by Judge Lemelle in *Gabarick*; and the Government Plaintiffs offer no authority to support their position. *Id.* The Government Plaintiffs' claims for "covered damages" are preempted by OPA; and the Government Plaintiffs cannot avoid OPA's claims presentment requirement by attempting to re-characterize their OPA damage claims as General Maritime Law claims or state law claims. Judge Lemelle's opinion to that effect in *Gabarick* could not be clearer, is absolutely a correct statement of the law and should be dispositive of the Government Plaintiffs' claims.

Moreover, even if the Government Plaintiffs satisfy the presentment requirements, OPA clearly does not provide a right of action against a third party like Weatherford alleged to be concurrently at fault. Under OPA, the Government Plaintiffs' claims for damages can only be sought against the designated responsible party. 33 U.S.C. §§ 2702, 2713. There is no other alternative basis under which the Government Plaintiffs might recover the types of economic loss and property damages sought against Weatherford. In *Gabarick*, the court dismissed all claims asserted against the third-party vessel, Tintomara, for damages covered under OPA,

---

[2] For the reasons more specifically set forth in Weatherford's Motion to Dismiss, Rec. Doc. 2638, pp. 15-17, the Government Plaintiffs' claims for damages under LOSPRA, the LEQA, the Wildlife Statute, and the AWPCA constitute enumerated damages under OPA.

specifically those damages enumerated in 33 U.S.C. § 2702. *Id.* at 750-51. Like the Tintomara, Weatherford "is regarded as a third party" in this case in light of the Coast Guard's designation of BP and Transocean as responsible parties. Weatherford's liability, if any, in this case can be only as a "contributor"; and Weatherford's liability, if any, can only be fixed in a separate proceeding by BP and Transocean for subrogation or contribution. *Id.* By failing to state a claim against Weatherford under OPA, the Government Plaintiffs confirm that they do not possess a cause of action under OPA against Weatherford.

OPA's deliberate liability scheme is in keeping with Congress' intent to provide an exclusive and comprehensive remedy for oil pollution and to avoid piecemeal litigation. *Gabarick*, 623 F. Supp. 2d at 744-46. This is just the opposite of what the Government Plaintiffs advocate here. Congress could not have made its intent more clear: "The bill requires claims to be presented in the first instance to the discharger, where known." S. Rp. 101-94, S. Rep. No. 94, 101st Cong., 1st Sess. 1989, 1990 U.S. Code Cong. & Admin. News 722, 1989 WL 225005 (Leg. Hist.). Congress stated that "wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages." *Id.* "Then, the responsible party can take action to recover from third parties." *Gabarick*, 623 F. Supp. 2d at 750. "OPA explicitly states the damages to which it applies and the remedy to be pursued." *Id.* at 747. As Judge Lemelle noted, "[t]he courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law prior to proper submission of the claims as articulated in OPA." *Id.* This Court should not allow the Government Plaintiffs to subvert Congress' clear mandate.

{N2337348.7}

4

Despite the argument of the Government Plaintiffs, this is not a case where the Government Plaintiffs are left without a remedy. The Government Plaintiffs may proceed in court against the responsible parties under OPA if they satisfy the presentment requirements. Moreover, this is not a case of the General Maritime Law or state law being a "gap filler" due to OPA's failure to include or cover a situation. Rather, OPA provides a comprehensive remedy for a party who has "covered damages" as defined by OPA. Congress expressly legislated that these OPA claims must first be administratively presented before an OPA claimant can file suit. This is a classic example of federal preemption as there is no alternative basis upon which the Government Plaintiffs can seek recovery of the damages enumerated under OPA. The Government Plaintiffs do not have the right to elect which law/set of laws under which to prosecute their claims. Congress has spoken to the liability scheme to be applied in cases of marine oil pollution; and as a result, the Court cannot "supplement" with remedies not otherwise provided under OPA. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 31-32, 111 S. Ct. 317, 325, 112 L. Ed. 2d 275 (1990) (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S. Ct. 2010, 56 L. Ed. 2d 581 (1978)).

    A.    *Gabarick* **Dictates that OPA Displaces the Government Plaintiffs' General Maritime Law Claims**

As noted in Weatherford's Reply Memorandum to the Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint, Rec. Doc. 2212, pp. 6-7, Judge Lemelle in *Gabarick* rejected the exact argument put forth by the Government Plaintiffs in this case: that Section 2751(e) of OPA preserves their General Maritime Law claims. *Gabarick*, 623 F. Supp. 2d at 746. OPA displaces the Government Plaintiffs' General Maritime Law claims for

OPA-enumerated damages.[3] Accordingly, all of the Government Plaintiffs' General Maritime Law claims should be dismissed.

### B. OPA Does Not Preserve State Law Claims for OPA-Enumerated Damages

OPA's "savings" provision, Section 2718, is a limited "savings" clause, preserving only the states' authority to enact mini-OPAs and laws modeled after the Solid Waste Disposal Act. It does not preserve state law claims for OPA-enumerated damages. In arguing that Section 2718 preserves all state law claims, including common law claims, the Government Plaintiffs place "more weight" on OPA's "savings" provision than it "can bear, either from a textual standpoint or from a consideration of the whole federal regulatory scheme of which OPA is a part." *U.S. v Locke*, 529 U.S. 89, 105, 120 S. Ct. 1135, 1146, 146 L. Ed. 2d 69 (2000).

Similar to the claimants in *Gabarick*, the Government Plaintiffs "cloud the issue at bar" by focusing on preemption of state law as a whole instead of preemption or displacement of the types of damages afforded by OPA. 623 F. Supp. 2d at 746. The Government Plaintiffs direct the Court to a series of federal district court cases which have addressed the scope of Section 2718 in part.[4] However, none of these district court cases is binding upon this Court, and each case stands in direct conflict with proper statutory construction, the text of Section 2718, and the Congressional intent in passing OPA. As discussed below, the proper interpretation of

---

[3] In further support of this argument, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Weatherford hereby adopts and fully incorporates the arguments set forth in its Reply Memorandum to the Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint, Rec. Doc. 2212, pp. 6-7.

[4] *See e.g.*, Bundle C Oppos., Rec. Doc. 3186, pp. 8-11 (citing *Isla Corp. v. Sundown Energy LP*, No. 06-8645, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007); *Russo v. M/T DUBAI STAR*, 2010 U.S. Dist. LEXIS 50967, at *3 (N.D. Cal. Apr. 29, 2010); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 565 (D. Md. 2000); *U.S. v. Bodenger*, No. 03-0272, 2003 WL 22228517, at *3 (E.D. La. Sept. 25, 2003); *The St. Joe Co. v. Transocean Offshore Deepwater Drilling, Inc.*, No. 10-968, 2011 U.S. Dist. LEXIS 26391 (D. Del. 2011)).

Section 2718 limits the scope of the provision to preserving state laws of a similar type to Title I of OPA and the Solid Waste Disposal Act.

In providing the appropriate framework for statutory construction, the Supreme Court has stated that the "words of a statute should be interpreted consistent with their neighbors to avoid giving unintended breadth to an Act of Congress." *Locke*, 529 U.S. at 105 (citing *Gutierrez v. Ada*, 528 U.S. 250, 255, 120 S. Ct. 740 (2000)); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ("[A] word is known by the company it keeps."); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S. Ct. 1579, 1582, 6 L. Ed. 2d 859 (1961) ("The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."). Therefore, interpretation of a statute must be consistent with the intent of Congress in enacting the legislation. *Locke*, 529 U.S. at 105. Moreover, the Supreme Court has also instructed that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text." *INS v. Nat'l Ctr for Immigrants' Rights, Inc.*, 502 U.S. 183, 190, 112 S. Ct. 551, 556 (1991) (finding that paragraph's title in immigration legislation applied to interpretation of language within paragraph).

With respect to the interpretation of savings provisions, the Supreme Court has held that a savings provision "'cannot in reason be construed as continuing in . . . a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'" *See ATT&T v. Central Office Telephone, Inc.*, 524 U.S. 214, 227-28, 118 S. Ct. 1956, 141 L. Ed. 2d 222 (1998) (quoting *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446, 27 S. Ct. 350, 358, 51 L. Ed. 553) (1907)); *see also Morales v. Trans World Airline, Inc.*, 504 U.S. 374, 385, 112 S. Ct. 2031, 119

L. Ed. 2d 157 (1992); *International Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S. Ct. 805, 812, 93 L. Ed. 2d 883 (1987) ("[W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause.").

In this case, the proper interpretation of Section 2718 of OPA is central to the parties' dispute. Weatherford submits that Section 2718 does not preserve state law claims for OPA-enumerated damages. The pertinent provisions of Section 2718 are as follows:

§ 2718. Relationship to other law

(a) Preservation of State authorities; Solid Waste Disposal Act

Nothing in this Act or the Act of March 3, 1851 shall--

   (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to--

      (A) the discharge of oil or other pollution by oil within such State; or

      (B) any removal activities in connection with such a discharge; or

   (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.

(b) Preservation of State funds

Nothing in this Act or in section 9509 of Title 26 shall in any way affect, or be construed to affect, the authority of any State--

   (1) to establish, or to continue in effect, a fund any purpose of which is to pay for costs or damages arising out of, or directly resulting from, oil pollution or the substantial threat of oil pollution; or

   (2) to require any person to contribute to such a fund.

(c) Additional requirements and liabilities; penalties

Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of Title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof--

>    (1) to impose additional liability or additional requirements; or
>
>    (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law;
>
> relating to the discharge, or substantial threat of a discharge, of oil.
>
> . . .

33 U.S.C. § 2718(a)-(c).  The Government Plaintiffs point to the language of Sections 2718(a)(1), 2718(a)(2), and 2718(c) as evidence of the preservation of any and all possible state law claims arising out of marine oil discharges.[5]  However, when the text of Section 2718 as a whole, the titles of the various subsections of Section 2718, and the Congressional intent in passing OPA are considered, it is clear that Section 2718 does not preserve state law claims for OPA-enumerated damages.  Rather, Section 2718 preserves only a state's right to enact/maintain "mini-OPAs"; and it also preserves the Solid Waste Disposal Act, along with state laws modeled after the Solid Waste Disposal Act and jurisprudence interpreting same.

### 1. *Section 2718(a)(1) and Section 2718(c) Preserve Only Mini-OPAs*

Section 2718(a) is titled "Preservation of state authorities; Solid Waste Disposal Act" and contains two subprovisions, Section 2718(a)(1) and Section 2718(a)(2), which correspond to "Preservation of state authorities" and "Solid Waste Disposal Act," respectively.  By its clear language, Section 2718(a)(1) preserves "state authorities" by maintaining a state's right to enact legislation providing more stringent or enhanced liability for oil discharges on top of OPA's liability scheme.  Section 2718(a)(1) allows states to impose *additional* liability or requirements; it does not preserve state law claims for OPA-enumerated damages as argued by the Government Plaintiffs.  Weatherford's interpretation of Section 2718(a)(1) is directly supported by the

---

[5] *See* Bundle C Oppos., Rec. Doc. 3186, pp. 8-11; Al. Oppos., Rec. Doc. 3203, pp. 13-17; La. Oppos., Rec. Doc. 3213, pp. 6, 19, 26-27; La. Memo of Law in Interest, Rec. Doc. 1993, pp. 15-21.

legislative history regarding the savings clause; and any contrary reading would render OPA meaningless.[6] Section 2718(a)(1) cannot be read to destroy OPA and its deliberate liability scheme by allowing state common law claims for OPA-enumerated damages. *See ATT&T.*, 524 U.S. at 227-28 ("'Th[e saving] clause . . . cannot in reason be construed as continuing in . . . a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'") (quoting *Texas & Pac. R. Co.*, 204 U.S. at 446; *see also Morales*, 504 U.S. at 385; *Ouellette*, 479 U.S. at 494 ("[W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause."). Therefore, Section 2718(a)(1) must be construed narrowly to preserve only legislation imposing additional liability or requirements on top of OPA.

Similarly, Section 2718(c) preserves a state's right "to impose ***additional*** liability or ***additional*** requirements." 33 U.S.C. § 2718(c) (emphasis added). The clear language of Section 2718(c) preserves only the state's authority to enact legislation of a type similar to OPA to impose additional or more stringent liability and/or requirements for a marine oil discharge. This interpretation is supported by the title of Section 2718(c): "Additional requirements and liabilities; penalties." *See INS*, 502 U.S. at 190 ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). The designation of ***additional*** requirements and liabilities in the title of Section 2718(c) bolsters the interpretation that Section 2718(c) preserves only state legislation which imposes greater or more stringent liability and/or requirements than OPA provides. Further, this interpretation of Section 2718(c) is also

---

[6] In Weatherford's Reply Memorandum to the Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint, Rec. Doc. 2212, pp. 8-11, Weatherford fully briefed the legislative history supporting the limited scope of Section 2718. In further support of Weatherford's arguments herein and pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Weatherford hereby adopts and fully incorporates the arguments set forth in its Reply Memorandum to the Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint, Rec. Doc. 2212, pp. 8-11.

supported by the legislative history;[7] and any contrary reading would neuter the effect of OPA and run contrary to the purpose of avoiding litigation and encouraging settlement by allowing claimants to completely avoid OPA's deliberate liability scheme. As with Section 2718(a)(1), Section 2718(c) cannot be read to destroy OPA. *See ATT&T.*, 524 U.S. at 227-28 ("'Th[e saving] clause . . . cannot in reason be construed as continuing in . . . a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'") (quoting *Texas & Pac. R. Co.*, 204 U.S. at 446; *see also Morales*, 504 U.S. at 385; *Ouellette*, 479 U.S. at 494 ("[W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause.").

### 2. *Section 2718(a)(2) Preserves Only the Solid Waste Disposal Act and State Law Equivalents of the Federal Act*

Section 2718(a)(2) preserves the federal Solid Waste Disposal Act, as well as state laws which model the Solid Waste Disposal Act and jurisprudence interpreting same. This narrow interpretation of Section 2718(a)(2) is bolstered by the title of the provision and by the limiting language of the provision itself. As noted above, Section 2718(a)'s title references the preservation of state authorities and the Solid Waste Disposal Act. Section 2718(a)(1) pertains to "preservation of state authorities" whereas Section 2718(a)(2) pertains to the "Solid Waste Disposal Act." The title of Section 2718(a) makes no reference to the preservation of state common law. The lack of reference to common law in the provision's title supports the interpretation that Section 2718(a)(2)'s scope is limited to preserving only the Solid Waste Disposal Act and state laws and jurisprudence of a scope similar to the Solid Waste Disposal Act.

---

[7] *See* note 4, *supra*, which is incorporated by reference herein.

Further, Weatherford's interpretation of Section 2718(a)(2)'s limited scope is supported by reading Section 2718(a)(2) as a whole and keeping in mind the intent and purpose of OPA. The reference to "common law" in Section 2718(a)(2) is qualified by the previous reference to the Solid Waste Disposal Act in the same sentence. Under the maxim *noscitur a sociis*, "state law, including common law" must therefore be interpreted as qualified. To give effect otherwise would give an unintended breadth to an Act of Congress. *Locke*, 529 U.S. at 105 (citation omitted) ("[W]ords of a statute should be interpreted consistent with their neighbors to avoid giving unintended breadth to an Act of Congress.").

More importantly, the broad reading of Section 2718(a)(2) suggested by the Government Plaintiffs would completely frustrate the purpose of OPA, a polluter pays first statute. S. Rp. 101-94, S. Rep. No. 94, 101st Cong., 1st Sess. 1989, 1990 U.S. Code Cong. & Admin. News 722, 1989 WL 225005 (Leg. Hist.) ("[W]herever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages."). If Section 2718(a)(2) were interpreted to preserve state law claims for OPA-enumerated damages as argued by the Government Plaintiffs, then OPA would be rendered meaningless; and a claimant could seek to pursue state law claims against responsible and non-responsible parties for OPA-enumerated damages without proceeding under OPA. The flood of claims in this MDL is exactly the situation which OPA was supposed to avoid; and yet, the Government Plaintiffs wish to turn the statute on its head and avoid the presentment procedures of OPA. *See Gabarick*, 623 F. Supp. 2d at 747-48 ("As previously recognized by this Court, the legislative intent of OPA was to encourage settlement and reduce litigation in oil spill cases.").[8]

---

[8] The Court in *Gabarick* also cited to and relied upon the following legislative history regarding the comprehensive nature of OPA and purpose of same:

It is important to note that following enactment of this Act, liability and compensation for

{N2337348.7}
12

In sum, Section 2718 cannot be read as a "general remedies" savings clause because it would effectively destroy OPA. *See AT&T.*, 524 U.S. at 227-28 ("'Th[e saving] clause . . . cannot in reason be construed as continuing in . . . a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'") (quoting *Texas & Pac. R. Co.*, 204 U.S. at 446; *see also Morales*, 504 U.S. at 385; *Ouellette*, 479 U.S. at 494 ("[W]e do not believe Congress intended to undermine this carefully drawn statute through a general saving clause."). Section 2718 must be read narrowly and does not preserve state-law claims for OPA-enumerated damages.

## II. OCSLA CAN BE HARMONIZED WITH OPA AND SUPPLIES THE CHOICE OF LAW FOR ANY CLAIM NOT DISPLACED BY OPA

To the extent that OPA does not fully displace all of the Government Plaintiffs' claims against Weatherford, then OCSLA's choice of law provision controls the determination of what law applies to the remaining claims, if any. Contrary to the suggested analytical framework for statutory construction offered by Alabama, Rec. Doc. 3203, p.3, two applicable federal statutes should be harmonized if possible. It is only when such harmonization is not possible where the more recent or specific statute should prevail over the older or more general statute. *See In re Southern Scrap Material Co.*, 541 F.3d 584, (5th Cir. 2008) ("Courts generally adhere

---

petroleum oil pollution damages caused by a discharge from a vessel or facility will be determined in accordance with this Act. H.R. Conf. Rpt., p. 802.

The bill requires claims to be presented in the first instance to the discharger, where known. Senate Rpt., p. 732.

Wherever possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages. Senate Rpt., p. 732.

One intent was to "provid[e] strong incentive to the discharger to undertake removal operations at its own initiative to cooperate with Federal and State authorities, and to provide prompt compensation." Senate Rpt., p. 732.

OPA "create[s] a single Federal law providing cleanup authority, penalties, and liability for oil pollution." Senate Rpt., p. 730.

to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones.'") (quoting *U.S. v. Lara*, 181 F.3d 183, 198 (1st Cir. 1999); *Panama Canal Co. v. Anderson*, 312 F.2d 98,100 (5th Cir. 1963) ("Where there are two or more statutes dealing with the same subject they are to be read in pari material and harmonized, if possible. If there is any repugnancy between them the specific or particular statute will control over and supersede a general statute even though the general measure be more recently enacted.") (citations omitted).

While OPA provides the liability and compensation scheme for the oil spill in question, OCSLA provides the proper choice of law provision to any claims not preempted or displaced by OPA. *See* 43 U.S.C. §§ 1333(a)(1), 1333(a)(2)(A); *Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848 (5th Cir. 1991) (holding that OCSLA mandates that the applicable substantive law be that of the adjacent state and refusing to consider the application of the adjacent state's choice-of-law rules to determine the applicable substantive law). As noted by Alabama in its Opposition, OPA replaced the liability scheme once found in OCSLA, thereby removing any direct conflict between the two statutes. Al. Oppos., Rec. Doc. 3203, pp. 4-5. This Court has already found that OCSLA gives rise to subject matter jurisdiction for the oil spill. *In re Oil Spill by the Oil Rig "DEEPWATER HORIZON" in the Gulf of Mexico*, MDL No. 2179, 2010 WL 3943451, at *3 (E.D. La. Oct. 6, 2010). Additionally, OPA also provides original jurisdiction for this Court. *Tanguis v. M/V WESTCHESTER*, 153 F. Supp. 2d 859, 863 (E.D. La. 2001). The statutes clearly relate to the same subject matter in that they both apply to this incident and both give rise to original jurisdiction before the Court. Accordingly, a court should first attempt to harmonize the statutes if possible.

OCSLA's choice of law provision and principles can be harmonized with OPA's liability scheme and mandatory procedural requirements for the claimants herein. OCSLA provides that either the General Maritime Law or the law of the adjacent state, here Louisiana, applies to any claim not displaced by OPA. *See Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990) (setting forth the criteria to determine whether the adjacent state's law applies under OCSLA). While OPA contains a limited savings provision for state law, OCSLA limits the potentially applicable state law to that of Louisiana. *See* 43 U.S.C. § 1333(a)(2)(A). Under this harmonization of the two statutes, the laws of Texas, Mississippi, Alabama, and Florida cannot apply to claims arising out of the oil spill. Accordingly, all claims under the laws of Texas, Mississippi, Alabama, and Florida should be dismissed.

### III.    ALABAMA'S CLAIMS FOR CIVIL PENALTIES UNDER THE AHWMA AND ASWDA FAIL AS A MATTER OF LAW

#### A.    Alabama's Claims for Civil Penalties under the Hazardous Waste Management Act and the Solid Waste Disposal Should be Dismissed

The State of Alabama seeks penalties under the Alabama Hazardous Waste Management Act ("AHWMA"), and the Alabama Solid Waste Disposal Act ("ASWDA"). (Rec. Doc. 1872, pp. 57-59). However, the AHWMA and the ASWDA provide only for criminal penalties and do not provide for civil penalties.[9]

Specifically, the AHWMA provides that "[a]ny person who intentionally, knowingly, recklessly or with criminal negligence . . . [v]iolates any provision of this chapter . . . shall, upon conviction, be subject to a term of imprisonment of not more than 10 years nor less than one year and one day and in addition, may be fined not more than $50,000.00 for each violation. . ."

---

[9] Under Alabama's statutory framework, the State of Alabama can seek civil penalties for violations of the AHWMA and the ASWDA only through the Alabama Environmental Management Act ("AEMA"). ALA. CODE ANN. § 22-22A-5(18).

ALA. CODE. ANN. § 22-30-19(e)(6). It is clear from the plain language of this provision that the penalties imposed under the AHWMA are criminal in nature. In fact, Alabama courts have expressly held that these penalties are criminal – not civil – in nature. *Byrd v. State,* 588 So.2d 929, 932-933 (Ala. Crim. App. 1991) (the punishment provided in the AHWMA falls in the felony range and, as such, is subject to felony statute of limitations). In its Opposition, Alabama simply states that the AHWMA does not foreclose the recovery of civil penalties under the Act;[10] however, since the AHWMA does not provide for the recovery of civil penalties, Alabama appears to seek civil penalties under common law. Alabama provides no authority for the proposition that it is entitled to seek civil penalties under common law. Indeed, there is no common law recovery for civil penalties, and Alabama's claim for civil penalties under the AHWMA, Rec. Doc. 1872 ¶ 323, should be dismissed.

Similar to the AHWMA, the penalty provision of the ASWDA is criminal in nature and provides "[a]ny person violating any provision of this article . . . shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $50.00 nor more than $200.00. . ." ALA. CODE. ANN. § 22-27-7. Alabama courts have expressly held that the penalties under the ASWDA are criminal – not civil – in nature. *Beard v. State,* 627 So.2d 1122, 1125 (Ala. Crim. App. 1993) (The [ASWDA] clearly authorizes criminal prosecutions and provides for criminal penalties). In its Opposition, Alabama points to the provision of the ASWDA that allows recovery of abatement costs as apparent evidence that the ASWDA affords the recovery of civil penalties.[11] However, the fact that the ASWDA provides for the recovery of abatement costs is not tantamount to providing for the recovery of civil penalties. The statute provides only for

---

[10] Al. Oppos., Rec. Doc. 3203, p. 47.

[11] Al. Oppos., Rec. Doc. 3203, p. 47.

{N2337348.7}

16

fines of a criminal nature, and therefore, Alabama's claim for civil penalties under the ASWDA, Rec. Doc. 1872, ¶ 327, should be dismissed.

> **B.** **Alabama's Claims under the AHWMA and ASWDA Should Be Dismissed as a Matter of Law as Oil and Dispersants Are Not "Solid Wastes" as Defined under the Statutes**

Oil and dispersants do not constitute "solid wastes" under either the AHWMA or the ASWDA; and therefore, those materials do not trigger the application of either statute. "Hazardous waste" is defined by the AHWMA as "a *solid waste*, or any combination of solid wastes, which, because of its quantity, concentration or physical, chemical or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or dispose of, or otherwise managed." ALA. CODE ANN. § 22-30-3(5)(b) (emphasis added). The ASWDA provides the definition of "solid waste" as "any other *discarded* materials, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, or agricultural operations or community activities. . ." ALA. CODE ANN. §§ 22-27-2(32); 22-30-3(11) (emphasis added).

Thus, under the definitions above, for the AHWMA or the ASWDA to be triggered, the material in question must be a "discarded material." The term "discarded" is not defined in either the AHWMA or the ASWDA, nor has it been defined by any Alabama court in the context of these statutes. However, "when a term is not defined in a statute, the commonly accepted definition of the term should be applied." *Bean Dredging, L.L.C. v. Alabama Dep't of Revenue,* 855 So.2d 513, 517 (Ala. 2003). The commonly accepted definition of the term "discard" is "to get rid of especially as useless or unwanted." *Merriam-Webster's Collegiate Dictionary* 355 (11th Ed. 2003).

While the State of Alabama has alleged that there has been a "disposal" of oil and/or dispersants, it has not alleged that the oil and/or dispersants allegedly disposed were "discarded materials" as necessary to meet the definition of "solid waste" under the AHWMA and the ASWDA.[12] As such, its allegations do not establish a violation of either the AHWMA or the ASWDA. Accordingly, the State of Alabama's claims for the recovery of civil penalties as a result of violations of the AHWMA and the ASWDA, including those brought pursuant to the AEMA, should be dismissed.

### IV. *ROBINS DRY DOCK* BARS THE GOVERNMENT PLAINTIFFS' GENERAL MARITIME LAW CLAIMS FOR PURELY ECONOMIC LOSS

To the extent that any of the Government Plaintiffs' claims fall outside of OPA's preemptive effect, the United States Supreme Court's seminal opinion of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S. Ct. 134, 72 L. Ed. 290 (1927), requires the dismissal of all claims by the Government Plaintiffs under the General Maritime Law for purely economic loss without physical damage to property in which the claimant has a proprietary interest.[13] Similarly, for the reasons set forth in Weatherford's Motion to Dismiss, Rec. Doc. 2638, pp. 27-28, Louisiana law precludes the recovery of purely economic loss; and the Government Plaintiffs' Louisiana law claims for purely economic loss should be dismissed.

### V. CONCLUSION

In their various Oppositions, the Government Plaintiffs seek to have the Court legislate and overrule established precedent within the Eastern District of Louisiana. The Government Plaintiffs also seek to disrupt well-established principles of the General Maritime Law as set

---

[12] *See* Al. 1st Am. Compl., Rec. Doc. 1872, ¶¶ 317-27.

[13] In further support of this argument and in accordance with Rule 10(c) of the Federal Rules of Civil Procedure, Weatherford hereby adopts and fully incorporates the arguments set forth in its Reply Memorandum to the Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint, Rec. Doc. 2212, pp. 12-14.

forth in *Robins Dry Dock* and its progeny.  To do as the Government Plaintiffs suggest and allow a multitude of claimants to pursue OPA-covered damages via state law and General Maritime Law claims would effectively abrogate OPA in its entirety.  As evidenced by the thousands of claimants who have already filed suit as a result of the oil spill, the Government Plaintiffs' claims completely frustrate the Congressional intent behind OPA of promoting settlement and avoiding piecemeal litigation.  For the reasons set forth above, the Government Plaintiffs' arguments fail as a matter of law.

OPA is exclusive and mandatory.  The Government Plaintiffs cannot seek damages from Weatherford under non-OPA theories of liability, including LOSPRA, the LEQA, the Wildlife Act, and the AWPCA, when the damages sought by the Government Plaintiffs are clearly enumerated damages under OPA.  Moreover, OPA does not provide a cause of action against a third party like Weatherford.  OPA also does not provide for the recovery of punitive damages.  Therefore, all claims by the Government Plaintiffs against Weatherford should be dismissed with prejudice.

Even in the absence of OPA, both the General Maritime Law and Louisiana law bar claims for purely economic loss, and all claims for purely economic loss should be dismissed with prejudice.

{N2337348.7}

19

This 5th day of August, 2011.

Respectfully submitted:

*/s/ Glenn G. Goodier*

GLENN G. GOODIER (#06130)
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue. 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8174
Facsimile:      (504) 589-8174

MICHAEL G. LEMOINE, T.A. (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
600 Jefferson Street, Suite 1600
Lafayette, , Louisiana  70501-5100
Telephone:     (337) 262-9024

*Counsel for Weatherford U.S., L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

*/s/ Glenn G. Goodier*

{N2337348.7}

20