# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179 SECTION: J |
| This document applies to: | § § § | Judge Carl J. Barbier Magistrate Judge Sally Shushan |
| 2:10-cv-03059; 2:11-cv-00516 | § § § § § | |

## REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:   (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:   (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

August 5, 2011

MORGAN, LEWIS & BOCKIUS LLP


By:  /s/ Hugh E. Tanner
        Hugh E. Tanner
        htanner@morganlewis.com
        Texas Bar No. 19637400
        1000 Louisiana, Suite 4000
        Houston, Texas  77002
        Telephone:  (713) 890-5000
        Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument ............................................................ 1

Argument ............................................................................................................. 1

I.     Louisiana Concedes That It Does Not Seek Punitive Damages From M-I .......... 1

II.    Louisiana's Maritime Claims Fail Under Rules 12(b)(1) And 12(b)(6) .............. 2

    A.    OPA Displaces Louisiana's General Maritime Law Claims For Oil
        Spill-Related Damages .................................................................... 2

        1.    The Legislative History Shows That Congress Intended To
            Replace General Maritime Law Claims With A Statutory
            Scheme ................................................................................. 3

        2.    The Vast Scope Of The Legislation Demonstrates That
            OPA Creates An Exclusive Remedy .............................................. 4

        3.    OPA Leaves No Gap For Judge-Made Law To Fill ..................... 5

        4.    In Enacting OPA, Congress Intended To Displace Long-
            Established And Familiar Principles Of The Common Law ........ 5

III.    Because The State Has Not Complied With The Statutory Presentment
    Requirement, This Court Lacks Jurisdiction Over Its Claims ............................. 7

    A.    M-I Is Not, Has Not Been, And Cannot Be, Designated A
        Responsible Party Under OPA ........................................................ 7

    B.    Even If M-I Were A Responsible Party, Louisiana's Suit Must Still
        Be Dismissed For Lack Of Presentment .......................................... 8

        1.    OPA's Presentment Requirement Is A Jurisdictional Barrier
            To The State's Recovery ............................................................. 8

        2.    Louisiana Has Failed To Adequately Plead Presentment ........... 11

        3.    Section 2713's Presentment Requirement Is Not Abrogated
            When A Governmental Entity Brings Claims For Damages
            In Tandem With Claims For Removal Costs ............................... 11

IV.    Additionally, The Economic Loss Rule Bars Recovery Under General
    Maritime Law .................................................................................................... 15

    A.    Congress's Exemption Of OPA From The Economic Loss Rule
        Did Not Affect The Doctrine's Application To General Maritime
        Law Claims ...................................................................................... 15

    B.    *Robins Dry Dock* Applies To Government Entities ........................... 15

    C.    *Golnoy* Was Wrongly Decided And Is Contrary To Binding Fifth
        Circuit Law ...................................................................................... 16

V.    OCSLA Prohibits Louisiana's State-Law Claim ............................................... 18

**TABLE OF CONTENTS**
(continued)

**Page**

VI.   The Possibility Of Claim Preclusion Does Not Warrant The Continuation
Of Claims That Are Otherwise Foreclosed ........................................................ 20

Conclusion ................................................................................................................ 21

# TABLE OF AUTHORITIES

Page

## CASES

*Abundiz v. Explorer Pipeline Co.*,
  Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H,
  2003 WL 23096018, at *1 (N.D. Tex. Nov. 25, 2003)............................................................8

*Altria Group, Inc. v. Good*,
  555 U.S. 70, 129 S. Ct. 538 (2008)......................................................................................6

*Am. River Transp. Co. v. Kavo Kaliakra SS*,
  206 F.3d 462 (5th Cir. 2000) ..............................................................................................15

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
  51 F.3d 235 (11th Cir. 1995) ....................................................................................8, 10, 14

*In re Burnett*,
  635 F.3d 169 (5th Cir. 2011) ..............................................................................................12

*Chowdhury v. I.N.S.*,
  249 F.3d 970 (9th Cir. 2001) ..............................................................................................13

*Clausen v. M/V New Carissa*,
  171 F. Supp. 2d 1127 (D. Or. 2001) .....................................................................................6

*In re Complaint of Transocean Offshore (U.K.), Inc.*,
  Nos. CIV.A. 00-760, CIV.A. 00-2154,
  2001 WL 1490867, at *1 (E.D. La. Nov. 20, 2001) ............................................................16

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*,
  71 F.3d 198 (5th Cir. 1995) ..................................................................................15, 16, 17

*Davis v. Dallas Area Rapid Transit*,
  383 F.3d 309 (5th Cir. 2004) ..............................................................................................20

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
  26 F.3d 563 (5th Cir. 1994) ................................................................................................18

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
  --- F.3d ---, 2011 WL 2652438, at *1 (5th Cir. June 24, 2011)............................................8

*Gabarick v. Laurin Mar. (Am.) Inc.*,
  623 F. Supp. 2d 741 (E.D. La 2009)............................................................................ passim

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Golnoy Barge Co. v. M/T Shinoussa,*
   Civ. A. Nos. H-90-2414, H-90-2476, H-90-2488, H-91-180,
   1991 WL 267956, at *1 (S.D. Tex. Apr. 29, 1991) ............................................................15, 16

*Hallstrom v. Tillamook Cnty.,*
   493 U.S. 20 (1989) .........................................................................................................10, 14

*Henderson v. Shinseki,*
   131 S. Ct. 1197 (2011) ......................................................................................................9, 10

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
   284 F. Supp. 2d 15 (D.D.C. 2003),
   *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ....................................................................................2

*Johnson v. Colonial Pipeline Co.,*
   830 F. Supp. 309 (E.D. Va. 1993) ..........................................................................................9

*LeSassier v. Chevron USA, Inc.,*
   776 F.2d 506 (5th Cir. 1985) ................................................................................................19

*Leboeuf v. Texaco,*
   9 F. Supp. 2d 661 (E.D. La. 1998) ........................................................................................10

*Lopez v. City of Houston,*
   617 F.3d 336 (5th Cir. 2010) ................................................................................................10

*Louisiana ex. rel. Guste v. M/V Testbank,*
   752 F.2d 1019 (5th Cir. 1985) (*en banc*) ......................................................................16, 17

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.,*
   944 F. Supp. 476 (E.D. La. 1996) .......................................................................................8, 9

*Med. Ctr. Pharmacy v. Mukasey,*
   536 F.3d 383 (5th Cir. 2008) ...........................................................................................13, 14

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,*
   924 F. Supp. 1436 (E.D. Va. 1996),
   *aff'd*, 122 F.3d 1062 (4th Cir. 1997)....................................................................................4, 6

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.,*
   451 U.S. 77 (1981)..................................................................................................................3

*In re Oswego Barge Corp.,*
   664 F.2d 327 (2d Cir. 1981).....................................................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Pennzoil Producing Co. v. Offshore Express, Inc.,*
  943 F.2d 1465 (5th Cir. 1991) .......................................................................15, 16

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ...................................................................................8

*Res. Mooring Inc. v. Am. Com. Barge Line, LLC,*
  251 F.3d 1069 (5th Cir. 2001) ..............................................................................15

*Rice v. Harken Exploration Co.,*
  89 F. Supp. 2d 820 (N.D. Tex. 1999) ......................................................................5

*Rogers v. Coastal Towing, L.L.C.,*
  723 F. Supp. 2d 929 (E.D. La. 2010) ....................................................................19

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
  234 F.3d 58 (1st Cir. 2000) ................................................................................4, 5

*Tanguis v. M/V Westchester,*
  153 F. Supp. 2d 859 (E.D. La. 2001) ...............................................................4, 5, 6

*United States v. $92,203.00 in U.S. Currency,*
  537 F.3d 504 (5th Cir. 2008) ..........................................................................12, 13

*United States v. M/V Big Sam,*
  681 F.2d 432 (5th Cir. 1982) ..................................................................................3

*United States v. M/V Cosco Busan,*
  557 F. Supp. 2d 1058 (N.D. Cal. 2008) ....................................................11, 12, 14

*Wiltz v. Bayer Cropscience, Ltd. P'ship,*
  --- F.3d ---, 2011 WL 2535552, at *1 (5th Cir. June 28, 2011) .......................16, 17

### FEDERAL STATUTES, REGULATIONS AND OTHER AUTHORITIES

33 U.S.C. § 2701 ......................................................................................................7

33 U.S.C. § 2702 ....................................................................................4, 8, 12, 13

33 U.S.C. § 2712 ....................................................................................................20

33 U.S.C. § 2713 ............................................................................................. passim

33 U.S.C. § 2717 ..............................................................................................12, 13

33 U.S.C. § 2718 ......................................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

33 U.S.C. § 2751 ...................................................................................................4, 5

43 U.S.C. § 1333 ......................................................................................................19

33 C.F.R. § 136.103 ..................................................................................................9

135 Cong. Rec. H7954 (1989) ................................................................................14

H.R. Rep. No. 101-653 (1990) (Conf. Rep.) ........................................................3, 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

The main thrust of the State of Louisiana's ("Louisiana" or the "State") opposition to M-I's Motion to Dismiss is that granting the motion will somehow extinguish its ability to recover damages arising from the *Deepwater Horizon* oil spill.  *See* Opp. 2.  That is not the case.  Under governing law, this Court should dismiss all claims against M-I precisely because federal statutes allow Louisiana to efficiently recover *all* of its damages from the Responsible Parties.

Through the Oil Pollution Act of 1990 ("OPA") and the Outer Continental Shelf Lands Act ("OCSLA"), Congress provided a comprehensive legal framework for addressing oil spill damages, providing injured parties with remedies greater than those available in almost any other area of law.  Specifically, any entity that the Coast Guard designates as a "Responsible Party" is strictly liable for all damages.  This relieves an injured party from the significant burden, inconvenience, and expense of proving culpability.

If the injured party, Louisiana in this case, is unsatisfied with its compensation from the Responsible Party, the governing statute gives the State a cause of action to sue the Responsible Party (and only the Responsible Party).  It is for the Responsible Party to bring contribution actions against other potentially liable parties if it so chooses.  Because federal law has expressly created a comprehensive statutory remedy, this Court should dismiss claims for the same damages outside the exclusive context of OPA and OCSLA.

## ARGUMENT

**I.    Louisiana Concedes That It Does Not Seek Punitive Damages From M-I.**

In its Memorandum of Law in Support of its Motion to Dismiss ("M-I MTD"), M-I established that Louisiana failed to plead a claim entitling it to punitive damages from M-I.  M-I MTD 19.  In its Opposition, Louisiana concedes that it does not seek punitive damages from M-I.  *See* Opp. 73 ("Here, Louisiana has a claim for punitive damages *against BP and*

*Transocean . . . .*") (emphasis added).  For this reason alone, any punitive damages claim must be dismissed.

Moreover, even without that concession, this Court must still enter an Order that punitive damages are unavailable, because Louisiana never responded to the grounds on which M-I moved to dismiss its punitive damages claim.  *See, e.g., Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted)), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).  Hence, insofar as the State's First Amended Complaint seeks such relief from M-I, its claim for punitive damages must be dismissed for this reason and for the reasons stated in M-I's MTD.  M-I MTD 19.

## II.     Louisiana's Maritime Claims Fail Under Rules 12(b)(1) And 12(b)(6).

### A.     OPA Displaces Louisiana's General Maritime Law Claims For Oil Spill-Related Damages.

In its Opposition, Louisiana acknowledges that OPA is the paramount controlling federal statute that "exclusively governs liability and compensation for all oil discharges" into U.S. waters.  Opp. 5.  Because OPA is the comprehensive statute for these types of damages, it displaces claims under general maritime law for the same damages.

Louisiana attempts to side-step M-I's well-supported argument that OPA displaces general maritime law claims that seek recovery for *damages* that are recoverable under OPA.  Its indirect response is that maritime law applies of its own force.  Opp. 7.  But that is no answer to the unanimous authorities cited in M-I's opening brief (at 7-10) confirming that OPA displaces duplicative claims under general maritime law.  Louisiana's response also ignores the well-settled rule that "once Congress addresses a subject, even a subject previously governed by

federal common law, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981).  The binding test from this circuit (ignored by Louisiana in its opposition), makes clear that OPA displaces general maritime law claims seeking damages recoverable through OPA.

Four factors determine whether a statute displaces a provision of general maritime law: (1) legislative history; (2) the scope of the legislation; (3) whether judge-made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and (4) the likelihood of Congress's intent to displace long-established and familiar principles of common or general maritime law.  *United States v. M/V Big Sam*, 681 F.2d 432, 442 (5th Cir. 1982) (citing *In re Oswego Barge Corp.*, 664 F.2d 327, 344 (2d Cir. 1981).  As all courts have agreed, these factors establish that OPA displaces general maritime law claims for oil spill-related damages.

### 1.    The Legislative History Shows That Congress Intended To Replace General Maritime Law Claims With A Statutory Scheme.

Congress's resolution of the differences between the proposed Senate and House bills demonstrate that it intended to displace federal common-law claims for oil spill-related damages. The House Conference Report on § 2751 reveals that the Senate bill did not have a savings provision regarding maritime and admiralty law and that "the House bill clarifies that the House bill does not affect admiralty and maritime law or the jurisdiction of the District Courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases *other remedies to which they are otherwise entitled*."  H.R. REP. NO. 101-653, at 159 (1990) (Conf. Rep.) (emphasis added).  Limiting the savings provision to claims for "other remedies to which [claimants] are entitled," demonstrates Congress's intent to displace maritime

and admiralty law when the claim is not seeking "other remedies"—that is, claims for something other than oil spill-related damages provided for by OPA.

The Conference Report goes on to state, "Therefore, there is no change in current law *unless there is a specific provision to the contrary.*"  H.R. REP. NO. 101-653 at 159 (emphasis added).  As the First Circuit has noted:

> The OPA sets forth a comprehensive list of recoverable damages, including: removal costs; damage to natural resources and real or personal property; loss of subsistence use of natural resources; loss of government revenues, lost profits and earning capacity; and costs of increased or additional public services occasioned by the unlawful act.

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000).  Various other courts have relied on this language to conclude that general maritime claims for oil spill-related damages specifically enumerated in OPA are displaced.  *See id.*; *see also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) ("This new scheme includes new remedies, which, in many respects, preempt traditional maritime remedies."); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."), *aff'd*, 122 F.3d 1062 (4th Cir. 1997) (table).  There can be no doubt that Congress intended to displace general maritime claims for oil spill-related damages.

### 2.    The Vast Scope Of The Legislation Demonstrates That OPA Creates An Exclusive Remedy.

OPA is a comprehensive statute.  While its own terms limit it to claims for oil spill-related damages, within that narrow field its scope is broad and sweeping.  *See* 33 U.S.C. §§ 2702, 2751.  As this Court in *Gabarick v. Laurin Maritime (America) Inc.* noted, "OPA defines its scope explicitly through its statutory text."  623 F. Supp. 2d 741, 748 (E.D. La 2009).

"It defines what damages are covered and the process for pursuing a claim, and allows suit in federal court should that process be unsuccessful." *Id.*  OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution."  *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999).  Given its broad and comprehensive scope, it is evident that Congress intended for OPA to displace general maritime law claims for oil spill-related damages.

### 3.    OPA Leaves No Gap For Judge-Made Law To Fill.

OPA provides a comprehensive scheme with no gaps to be filled regarding oil spill-related claims.  *See S. Port Marine*, 234 F.3d at 64 ("In 1990, in the wake of the *Exxon Valdez* and other oil spill disasters, Congress established a comprehensive federal scheme for oil pollution liability in the OPA."); *Tanguis*, 153 F. Supp. 2d at 867 ("OPA creates a new, comprehensive federal scheme for the recovery of oil spill cleanup costs and the compensation of those injured by such spills").  As acknowledged by courts around the country, OPA leaves no room for judge-made law.  *See, e.g.*, *S. Port Marine*, 234 F.3d at 65; *Tanguis*, 153 F. Supp. 2d at 867 ("This new scheme includes new remedies, which, in many respects, *preempt traditional maritime remedies*." (emphasis added)).

### 4.    In Enacting OPA, Congress Intended To Displace Long-Established And Familiar Principles Of The Common Law.

Contrary to the State's argument (at 5), OPA's plain language makes clear that it displaces general maritime law wherever OPA applies.  Section 2751(e) states, "Except as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law."  33 U.S.C. § 2751(e).  The State misinterprets this language to mean that OPA does not displace any maritime law claims (Opp. 5-6), but in doing so it overlooks the first words of the section: "*except as otherwise provided in this Act*."  This language makes clear that Congress intended to

displace maritime law to the extent that OPA provides for recovery.  *See Gabarick*, 623 F. Supp. 2d at 748; *Tanguis*, 153 F. Supp. 2d at 867.  "[S]ection 2751 only preserves admiralty claims which are not addressed in OPA."  *Nat'l Shipping*, 924 F. Supp. at 1447.  And, that Congress did not expressly use the words "preemption" or "displace" to express its intent is not controlling. *Gabarick*, 623 F. Supp. 2d at 748.  As the Supreme Court has stated, "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S. Ct. 538, 543 (2008).

OPA displaces any claims that seek the same recovery that OPA provides.  The converse is also true.  So as one court has noted, OPA does not provide damages for personal injury; therefore, those claims are not displaced.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001).[1]

That OPA displaces general maritime claims for damages from the discharge of oil in federal waters fits with the intent of the statutory scheme.  That scheme requires claimants to seek their oil spill-related damages in a quick and efficient manner under OPA—and only under OPA—from the Responsible Party when those claims arise from a discharge of oil on the Outer Continental Shelf.  But it does not prevent a state from enforcing stricter requirements for discharges of oil *within* its territorial boundaries.  Further, OPA gives the Responsible Party the right to seek recovery from potentially liable third parties through contribution and subrogation. *See* 33 U.S.C. § 2718.  OPA thus allows claimants to avoid the substantial delay and costs associated with litigation.

Aside from having no support in the text, structure, or history of the statute, the State's reading of OPA's savings clauses would undermine its purpose.  If the State's interpretation

---

[1]  Also, in making this argument, the State mistakenly conflates claims with damages.

were correct, which it is not, OPA would continue to require claimants to seek oil spilled-related damages through litigation, with all of its substantial barriers to recovery.

III.   **Because The State Has Not Complied With The Statutory Presentment Requirement, This Court Lacks Jurisdiction Over Its Claims.**

    A.   **M-I Is Not, Has Not Been, And Cannot Be, Designated A Responsible Party Under OPA.**

The State may recover against a defendant under OPA only if the United States has designated a defendant a Responsible Party as that term is defined in the statute. *See* 33 U.S.C. § 2713. Louisiana concedes that the U.S. Coast Guard has not designated M-I as a Responsible Party, but insists that "it is improper and premature to dismiss any party simply because that party has not been designated a 'responsible party' by the Coast Guard." Opp. 18-19. That argument lacks support and it conflicts with the express language of the statute. OPA provides that a "claimant [may] elect to commence an action in court against the responsible party . . ." *only* if a claim is properly presented to a Responsible Party who then denies that claim. 33 U.S.C. § 2713(e). Thus, the Coast Guard must designate the Responsible Party *before* a claimant may commence suit so that the plaintiff may satisfy its presentment burden. Otherwise, a plaintiff could completely avoid OPA's presentment requirement. The State, therefore, cannot simply bring suit against any and all entities it wishes, with the intention that at some unknown point in the future, the Coast Guard may designate one or more defendants a Responsible Party.

Moreover, M-I cannot possibly be designated a Responsible Party under OPA because it does not meet the statutory definition of Responsible Party. Under OPA, when addressing liability arising from a vessel, a Responsible Party is "any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32)(A). As Louisiana's own Complaint makes clear, M-I was not the owner or operator and had not chartered the *Deepwater Horizon*. Compl. ¶¶ 39, 41-42. Furthermore, under the statute, a third party such as M-I shall be treated as a Responsible

Party *only if* the act or omission of that third party was the *sole* cause of the spill.  33 U.S.C. § 2702(d)(1)(A).  Here, the State does not allege that such is the case; nor can it.  As a matter of law, M-I cannot be a Responsible Party.

**B.      Even If M-I Were A Responsible Party, Louisiana's Suit Must Still Be Dismissed For Lack Of Presentment.**

Whether or not M-I is a Responsible Party, this action still must be dismissed for lack of subject-matter jurisdiction because the State did not satisfy OPA's presentment requirement. The assertion that non-OPA claims need not be presented is a non-starter because OPA is the exclusive remedy for oil spill-related damages sought by Louisiana.

**1.      OPA's Presentment Requirement Is A Jurisdictional Barrier To The State's Recovery.**

"'The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.'"  *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, --- F.3d ---, 2011 WL 2652438, at *1 (5th Cir. June 24, 2011) (quoting *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).  Louisiana failed to carry its burden.

OPA's presentment requirement is not merely a procedural rule as the State contends, but rather is a prerequisite to bringing suit that, if not satisfied, prevents this Court from exercising subject-matter jurisdiction over the State's claims.  Courts around the United States, including federal appellate courts, have so held.[2]  In fact, this very Court has previously "agree[d] that

---

[2] *See, e.g., Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (holding "the district court correctly interpreted § 2713(a) as creating a mandatory condition precedent to bringing any claims under OPA," and therefore, "was correct when it granted the Appellees' motions to dismiss for lack of subject matter jurisdiction"); *Gabarick*, 623 F. Supp. 2d at 750 (stating that only "once claimants have exhausted the OPA administrative remedies" are they "then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court"); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H, 2003 WL 23096018, at *5 (N.D. Tex. Nov. 25, 2003) ("[T]he Court holds that the Plaintiffs did not successfully meet the sum certain presentation requirement of the OPA for property damage claims.  The Court therefore lacks subject matter jurisdiction for these OPA claims."); *Marathon Pipe Line Co. v. LaRoche Indus.*

§ 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant." *LaRoche Indus.*, 944 F. Supp. at 477.

Section 136.103 of the Code of Federal Regulations implements the rules regarding presentment.  Subsection (a) mirrors § 2713(a) and instructs that claims must be presented to the Responsible Party.  33 C.F.R. § 136.103(a).  Subsection (b) mirrors § 2713(b) and explains that certain claims may first be presented to the Fund, such as claims by governors.  *Id.* § 136.103(b). Subsection (c) then states, "If a claim is presented *in accordance with paragraph (a) of this section* and" the claim has been denied or not settled within 90 days, "the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund."  33 C.F.R. § 136.103(c) (emphasis added).  The language of § 136.103 makes two things clear:  (1) a State may present a claim to the Fund without presentment under subsection (a) and (2) presentment under subsection (a) is a requirement prior to commencing an action in court, with no exceptions.  33 C.F.R. § 136.103.

Relying on *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011), the State contends that OPA's presentment requirement has been incorrectly "branded" as jurisdictional.  *Id*.  But *Henderson* is inapposite, because it did not address OPA at all.  Instead, it discussed whether "claim-processing rules" that "seek to promote the orderly progress of litigation" should be considered jurisdictional.  *Id.*  Furthermore, *Henderson* applied "'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor."  *Id.* at 1206.  No such presumption is at issue in this matter.

According to the Supreme Court, requirements such as "[f]iling deadlines . . . are quintessential claim-processing rules," but rules that "govern[] a court's adjudicatory capacity"

---

*Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing claims because of plaintiff's/claimant's failure to first present claims to responsible party).

are jurisdictional.  *Id.* at 1202-03.  Thus, *Henderson* has no impact on the Supreme Court's prior holdings that, "[a]s a general rule, if an action is barred by the terms of the statute, it must be dismissed."  *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989).  Moreover, *Henderson* does not stand for the proposition that all rules regarding claim processing are non-jurisdictional, but instead that "[t]here must be a 'clear' indication that Congress wanted the rule to be 'jurisdictional.'"  131 S. Ct. at 1203.  To discern such intent, courts must examine the context of the provision.  *Id*.  As set forth in M-I's MTD, the context reveals Congress's clear intent to establish the presentment requirement as a jurisdictional one.

Louisiana may not bring an action under OPA unless it first satisfies the presentment requirement.  *See Boca Ciega*, 51 F.3d at 240; *see also Leboeuf v. Texaco*, 9 F. Supp. 2d 661, 665 (E.D. La. 1998).  Specifically, section 2713(a) states that "all claims for removal costs and damages shall be presented first to the responsible party."  33 U.S.C. § 2713(a).  Only after a claim has been presented and either denied or not settled within 90 days, can the party "elect to commence an action in court against the responsible party."  33 U.S.C. § 2713(c).  This language demonstrates Congress's intent that a party has no authority to commence a suit until it has satisfied the presentment requirement.   As *Boca Ciega* explained, until the presentment requirement is met, the claimant does not have a ripe claim.  51 F.3d at 237; *see also Gabarick*, 623 F. Supp. 2d at 751 (stating that only "once claimants have exhausted the OPA administrative remedies" are they "then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court").  And it is black-letter law that "[r]ipeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).  The State has not satisfied OPA's

presentment requirement with regard to M-I.   Therefore, this Court lacks subject-matter jurisdiction to adjudicate the State's claims for oil spill-related damages.

### 2.   Louisiana Has Failed To Adequately Plead Presentment.

The State asserts that it "has pleaded facts sufficient to demonstrate that it has presented claims and provided Defendants with adequate notice."  Opp. 12.  It then quotes passages from its First Amended Complaint alleging only that it sent some of its claims to BP.  *Id.*  But § 2713(c) has *two* elements which must be adequately pleaded:  (1) presentment and (2) denial of all liability or failure to settle within 90 days.  33 U.S.C. § 2713(c) (a claimant may commence an action in court against the responsible party only after "each person to whom the claim is presented denies all liability for the claim," or the "claim is not settled by any person by payment within 90 days").  Even if Louisiana had adequately pleaded that it "presented" its claims to BP—which it has not—it has nonetheless failed to plead denial or failure to settle its claims. Louisiana's averment that "[s]ome of the State's presented . . . claims have been rejected by BP . . . while other claims have been subjected by BP to . . . reservations" is insufficient.  Opp. 12. The State must allege specifically that its claims were either denied or were not settled within 90 days of their presentment to the Responsible Party.  Louisiana has pleaded neither, and therefore, its OPA claims must be dismissed.

### 3.   Section 2713's Presentment Requirement Is Not Abrogated When A Governmental Entity Brings Claims For Damages In Tandem With Claims For Removal Costs.

Ignoring the plain text of the statute and the interpretation of the statute by courts of appeals, Louisiana asserts that it is somehow exempt from OPA's presentment requirement because "presentment does not apply to government claims for damages brought in tandem with claims for removal costs."  Opp. 13.  Plaintiffs rely solely on *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008).  In *Busan*, a cargo ship discharged more than 50,000

gallons of heavy bunker fuel into the San Francisco Bay after striking a bridge.  *See id.* at 1059.

Subsequently, the United States government filed suit under OPA, among other statutes, seeking

to recover removal costs and other damages.  *See id.* at 1060.  The defendants argued that the

court lacked jurisdiction over the government's OPA claims because the government had failed

to comply with § 2713(a)'s presentation requirements.  *See id.*  The court rejected that argument,

holding that the Government need not comply with § 2713(a) based on the court's understanding

of § 2717(f)(2), a subsection concerning limitations issues.  *Id.* at 1060-61.  Section 2717(f)(2)

states:

> An action for recovery of removal costs referred to in section 2702(b)(1) of this
> title must be commenced within 3 years after completion of the removal action.
> In any such action described in this subsection, the court shall enter a declaratory
> judgment on liability for removal costs or damages that will be binding on any
> subsequent action or actions to recover further removal costs or damages.  *Except
> as otherwise provided in this paragraph, an action may be commenced under this
> subchapter for recovery of removal costs at any time after such costs have been
> incurred.*

(Emphasis added.)   Focusing on the final sentence of this paragraph, the court turned to

§ 2702(b)(1)(A), which defines those removal costs recoverable by "the United States, a State, or

an Indian tribe[.]"  *See Busan*, 557 F. Supp. 2d at 1061.  Based on these two sections, the court

found that the reference to § 2702(b)(1) in § 2717(f)(2) created an exception to the presentment

requirement of § 2713(a).  *See id.*

        This interpretation, however, impermissibly renders "removal costs" (in the presentment

requirement of § 2713(c)) superfluous because § 2717(f)(2) does not distinguish between the

claims of governmental entities and private parties.   Thus, *Busan* violated a cardinal rule of

statutory construction—statutes must be read "as a whole, so as to give effect to each of its

provisions without rendering any language superfluous."  *In re Burnett*, 635 F.3d 169, 172-73

(5th Cir. 2011) (citing *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 509-10 (5th

Cir. 2008) (internal quotation marks omitted)); *Chowdhury v. I.N.S.*, 249 F.3d 970, 973 (9th Cir. 2001) ("When analyzing a statute we compare the language used in different sections and read it as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (citation and internal quotation marks omitted)).

The definition of removal costs in § 2702(b)(1) depends on the entity or person incurring them.  Section 2702(b)(1)(A) defines those removal costs recoverable by "the United States, a State, or an Indian tribe[;]" section 2702(b)(1)(B) defines removal costs recoverable by "any person[.]"  Unlike the two types of removal costs defined by § 2702(b)(1), section 2713(a) explicitly requires that "*all claims for removal costs* or damages shall be presented first to the responsible party[.]"  (Emphasis added.)  Section 2713(a) does not provide an exception from the presentment requirement for removal costs incurred by "the United States, a State, or an Indian tribe" under § 2702(b)(1)(A).

Furthermore, *Busan*'s exception is not in the relevant section of the statute setting forth the claims procedure, section 2713, but in § 2717(f), the sole purpose of which is to set the limitations periods for claims under the OPA.  This final sentence of § 2717(f)(2), in conjunction with the sentence before it, merely clarifies that a suit for removal costs may be instituted at any time after such costs are incurred, even where additional removal costs may be incurred in the future.  *See* 33 U.S.C. § 2717(f)(2).

In any event, it is not appropriately construed as an exception to the presentment requirement of § 2713(a).  If Congress had wished to provide the additional exception the State now seeks, Congress could have explicitly done so, but it did not.  *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 405-06 (5th Cir. 2008) (rejecting a request to find an "implicit"

exception in the statute "wholly apart from the narrow, conditional and explicit exceptions enumerated" because it would render those explicit exceptions superfluous).

*Busan*'s exception to § 2713(a)'s presentment requirement is contrary not only to OPA's plain language, but to congressional intent.  *See* 135 CONG. REC. H7954, H7965 (1989) ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.").   The court itself seemed to recognize that some substantial deviation from the language of the statute and congressional intent was required to arrive at its exception to the presentment requirement:

> Congress *likely recognized* that the United States, a State, or a Tribe seeking to recover removal and cleanup costs *should be allowed greater flexibility* in its recovery efforts than individuals seeking damages.   Under the statutory framework, *it is entirely conceivable* that the United States, a State, or a Tribe *would prefer* to seek recovery of removal costs through the claims procedure, thus avoiding costly litigation.  *One can imagine* that this option *would be attractive* in situations where removal costs are relatively small and undisputed.  On the other hand, *one can imagine* situations where, given the size of the spill, the scope of the cleanup process, the complexity of the legal issues, or the intransigence of the Responsible Party, it *would be preferable* to proceed directly to a court to seek recovery costs.

*See Busan*, 557 F. Supp. 2d at 1061 (emphases added).   Had the court relied on the actual language and structure of the statute, a lengthy justification couched in conditional language would not have been necessary.   "'In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  *Boca Ciega*, 51 F.3d at 239 (quoting *Hallstrom*, 493 U.S. at 31.   In short, the district court's analysis was erroneous—no court has followed its reasoning and the Eleventh Circuit rejects its holding.

14

IV.    **Additionally, The Economic Loss Rule Bars Recovery Under General Maritime Law.**

A.    **Congress's Exemption Of OPA From The Economic Loss Rule Did Not Affect The Doctrine's Application To General Maritime Law Claims.**

Louisiana avers in a footnote that "OPA clearly abrogated the common law economic loss doctrine, also known as '*Robins Dry Dock*' or '*Testbank*.'"  Opp. 53 n.68.  While the State is correct that Congress intended claimants under OPA to be able to recover for pure economic losses, OPA did not change or eliminate the Economic Loss Rule in other areas of law, including general maritime law.  None of the cases cited by the State stand for such a proposition and the decisions of the Fifth Circuit following passage of OPA in 1990 confirm that the Economic Loss Rule of *Robins Dry Dock* and *Testbank* continues to be strictly applied to non-OPA claims.[3]  Hence, to the extent the State is arguing that OPA abrogated the Economic Loss Rule as to non-OPA claims, this proposition has been soundly rejected.

B.    ***Robins Dry Dock* Applies To Government Entities.**

Despite contrary Fifth Circuit authority, Louisiana insists that the Economic Loss Rule of *Robins Dry Dock* (reaffirmed by the Fifth Circuit in *Testbank*) should not apply to it because it is a government entity.  The State points (at 68) to only one *unpublished* district-court decision as support—*Golnoy Barge Co. v. M/T Shinoussa*, Civ. A. Nos. H-90-2414, H-90-2476, H-90-2488, H-91-180, 1991 WL 267956, at *1 (S.D. Tex. Apr. 29, 1991).   There, the district court analogized the Port of Houston's rights to regulate commerce and garner revenue on a public waterway to a commercial fisherman's right to use the public waters to earn his livelihood.  On

---

[3] *See, e.g.*, *Res. Mooring Inc. v. Am. Com. Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("Under [*Testbank*], physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort.  Because Reserve suffered no physical injury, its claim for purely economic damages must be denied."); *Am. River Transp. Co. v. Kavo Kaliakra SS*, 206 F.3d 462, 464 (5th Cir. 2000) (same); *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 201 (5th Cir. 1995) (same); *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1473 (5th Cir. 1991) (same).

that basis, the court disregarded the Fifth Circuit's rejection of a case-by-case approach and carved out a one-time exception to the well-established rule that prevents recovery of purely economic damages absent physical injury.  *Id.* at *4-5.  The *Golnoy* case is an anomaly in the case law that is not binding on this Court and should not be followed.

### C.   *Golnoy* Was Wrongly Decided And Is Contrary To Binding Fifth Circuit Law.

Louisiana argues (at 69) that *Golnoy* created a broad new exception to the Economic Loss Rule for governmental entities.  But the Fifth Circuit has never made such a distinction; instead, it has applied the doctrine to all plaintiffs.  *See Corpus Christi*, 71 F.3d at 201 ("In this circuit, an admiralty plaintiff cannot recover negligently inflicted economic losses where there is no physical damage to the plaintiff's property."); *Pennzoil Producing*, 943 F.2d at 1473 ("[I]t is the law in this circuit that a plaintiff in an admiralty case cannot recover negligently inflicted economic losses where there is no physical damage to any property in which the plaintiff has a proprietary interest."); *Louisiana ex. rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1024 (5th Cir. 1985) (*en banc*) ("If a plaintiff connected to damaged chattels by contract cannot recover, others more remotely situated are foreclosed *a fortiori*.").  Consequently, no court has followed *Golnoy* in the twenty years since it was rendered.  *See, e.g., In re Complaint of Transocean Offshore (U.K.), Inc.*, Nos. CIV.A. 00-760, CIV.A. 00-2154, 2001 WL 1490867, at *5 (E.D. La. Nov. 20, 2001) (rejecting the reasoning of *Golnoy* as unpersuasive).

Accepting the State's invitation to create a broad new exception for governmental entities would also undercut the justifications for the Fifth Circuit's adoption of a "bright-line rule." *Corpus Christi*, 71 F.3d at 200.  For example, "without some pragmatic limitation on the tort doctrine of foreseeability, a defendant could be held liable for 'wave upon wave of successive economic consequences.'"  *Wiltz v. Bayer Cropscience, Ltd. P'ship*, --- F.3d ---, 2011 WL

16

2535552, at *4 (5th Cir. June 28, 2011) (quoting *Testbank*, 752 F.2d at 1028). Yet, if there is an exception for all governmental entities—or even just Louisiana—defendants could be liable for precisely the unforeseeable economic consequences the rule was designed to eliminate. Moreover, although bright-line application of the rule "may produce seemingly unfair outcomes in certain cases, a case-by-case approach is no less arbitrary" because, "ultimately, some plaintiffs will be allowed to recover and others will be found too remote." *Wiltz*, 2011 WL 2535552, at *4 (citation and internal quotation marks omitted).

"A case-by-case approach has the additional drawback of producing unpredictable results that are 'less judicial and more the product of a managerial, legislative or negotiated function.'" *Id.* (quoting *Testbank*, 752 F.2d at 1028). Thus, the Fifth Circuit has consistently held that the Economic Loss Rule operates as a threshold to recovery for all plaintiffs, private and public.

> We adopted the "bright-line" *Testbank* rule to exclude entire categories of potential plaintiffs who had suffered only economic harm. These would-be plaintiffs, whose claims were potentially indeterminate and indefinite, created the specter of wave upon wave of successive economic consequences. We drew our bright line with full recognition that some plaintiffs with foreseeable economic injury would be denied recovery. Nonetheless, our rule of law is not only consistent with established precedent, but also with the appropriate adjudicative role of our courts.
>
> Thus *Testbank* operates as a threshold to recovery. Those plaintiffs with physical injury to a proprietary interest may enter; those without may not.

*Corpus Christi*, 71 F.3d at 205 (Benavides, J., concurring in part and dissenting in part). "Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability," a limitation the Fifth Circuit has found to be "both workable and useful." *Testbank*, 752 F.2d at 1032. This Court should not diverge from such a reliable and workable doctrine merely because of what Louisiana may perceive to be its "special nature" as a government entity. Opp. 69. Accordingly, the Court should reject the State's assertion that the Economic Loss Rule should not apply merely because it is a government entity.

## V.    OCSLA Prohibits Louisiana's State-Law Claim.

Louisiana's opposition incorrectly asserts that OPA's savings clause somehow allows it to bring a state law claim, despite the fact that state law claims are foreclosed by operation by OCSLA.   Opp. 6.   This mischaracterizes OCSLA's interaction with OPA and incorrectly suggests that OCSLA has no application here.   Although OPA applies of its own force, OCSLA is not affected by OPA's savings clauses.   Where, as here, injuries occur as a result of energy exploration on the Outer Continental Shelf, OCSLA's "broad substantive net" operates in conjunction with OPA to ensure that injured parties receive compensation without upsetting Congress's intent that OCSLA continue to "govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (internal citation and quotation marks omitted).   Hence, OPA "saves" state law only to the extent that state law applies through OCSLA, which is not the case here.

OPA's savings clause does not somehow overrule OCSLA's long-recognized restriction on applying state law to activities on the Outer Continental Shelf.   Rather, the purpose of OPA's savings clause is to ensure that state law can continue to supplement federal law in limited circumstances.   But here, the State's single state law claim against M-I under the Louisiana Environmental Quality Act does not fit in that narrow exception and therefore Louisiana state law does not apply. *See* M-I MTD 15-18.   Accordingly, there is nothing for OPA to save.

As this Court already has held, OCSLA applies to the *Deepwater Horizon* oil spill and governs this dispute.   Oct. 16, 2010 Order (Dkt. No. 470) 6-8.   OCSLA makes federal law exclusive on the Outer Continental Shelf, and nothing in OPA or its legislative history suggests that Congress intended OPA to displace OCSLA or its limitations on the application of state law. As the State admits, "OCSLA defines the body of law applicable to the seabed, subsoil and fixed

structures on the Outer Continental Shelf and chooses states law as surrogate federal law in certain circumstances."[4]  Opp. 6 (citations omitted).  Those circumstances occur only when (1) it becomes necessary to fill a "significant void or gap" that exists in the applicable federal law and (2) the claim involved a "fixed structure" or artificial island.  *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (citation and quotation marks omitted); 43 U.S.C. § 1333(a)(2)(A).  Neither condition is present in this case.  The "response action costs" that Louisiana seeks to recover under state law are already addressed by OPA, and the *Deepwater Horizon* was not a "fixed structure" or artificial island as required for the application of state law to the OCS.  43 U.S.C. § 1333(a)(2)(A).

Nonetheless, Louisiana maintains that state law applies to an oil spill on federal waters regardless of any applicable federal law.  Opp. 7-9.  The State's argument on this point is completely unsupported by case law or statute; the cases cited by the State do not even involve OCSLA.  Opp. 8-9.  If anything, those non-OCSLA decisions support M-I, because they hold that state law applies only when federal law has a gap.[5]  But federal law is not silent here, because OCSLA speaks directly on when state law may apply.  Louisiana cannot argue that its state law applies to activities that occurred on the OCS while ignoring the very statute that specifies when state law may apply to activities on the OCS.[6]

In sum, OCSLA continues to govern when state law claims relating to activities occurring on the Outer Continental Shelf may apply.  OPA's savings provisions preserve only state law claims that (1) involve a fixed structure or artificial island and (2) are necessary to fill a

---

[4] Acknowledging the weakness of its argument, the State then argues, "Because federal maritime law applies of its own force to the Spill, state law does not apply as surrogate federal law."  Opp. 7.

[5] *See, e.g.*, *Rogers v. Coastal Towing, L.L.C.*, 723 F. Supp. 2d 929, 933 (E.D. La. 2010).

[6] Louisiana also relates its argument here to maritime law applying by its own force (Opp. 6-7), but as M-I explained *supra*, maritime law does not apply of its own force because Congress has legislated on this specific question, displacing the common law.

substantial gap in federal law.  Neither condition is present here.  Thus, the State's claim under the Louisiana Environmental Quality Act must be dismissed.

**VI.**     **The Possibility Of Claim Preclusion Does Not Warrant The Continuation Of Claims That Are Otherwise Foreclosed.**

Louisiana asserts that its claims must be allowed to proceed in order to avoid improper claim-splitting and the risk of claim preclusion.  Opp. 15.  In support, it cites Fifth Circuit law foreclosing re-litigation of claims that *could have been advanced* in support of a cause of action. *Id.* (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-13 (5th Cir. 2004)).  This argument is a nonstarter, because Louisiana has no general maritime or state law claims that it can advance.  Specifically, claims that have not been properly presented under OPA cannot be advanced in support of a cause of action.   And Louisiana admits that its First Amended Complaint "may well include claims that Defendants assert have not been 'properly' presented, given that a claimant has three years to gather information to present a claim for damages to a responsible party."  *Id.* (citing 33 U.S.C. § 2712(h)(2)).

## CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of

Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss with

prejudice all claims asserted against it in the State of Louisiana's First Amended Complaint.

Respectfully submitted,

**OF COUNSEL:**                          MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                            By: /s/ *Hugh E. Tanner*
dleon@morganlewis.com                        Hugh E. Tanner
Texas Bar No. 24002463                       htanner@morganlewis.com
5300 Wachovia Financial Center               Texas Bar No. 19637400
200 South Biscayne Boulevard                 1000 Louisiana, Suite 4000
Miami, Florida  33131                        Houston, Texas  77002
Telephone:  (305) 415-3000                   Telephone:  (713) 890-5000
Facsimile:  (305) 415-3001                   Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934                   **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

August 5, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply in Further Support of Defendant M-I L.L.C.'s Motion to Dismiss the State of Louisiana's First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of August, 2011.

  /s/ *Hugh E. Tanner*
Hugh E. Tanner