# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| 10-cv-0516; 10-cv-03059; | * | MAGISTRATE NO. 1 |
| 10-cv-04182; 10-cv-04183; | * | |
| 10-2771 | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

**CONSOLIDATED REPLY IN SUPPORT OF MOTIONS OF
ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP
TO DISMISS THE AMENDED COMPLAINTS OF THE STATE OF ALABAMA,
THE STATE OF LOUISIANA, AND THE VOLUNTARY LOCAL GOVERNMENT
ENTITY MASTER COMPLAINT [BUNDLE "C"]**

**TABLE OF CONTENTS**

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT ....................................................................................................................... 4

I.   THE BUNDLE C PLAINTIFFS CAN BRING ONLY OPA CLAIMS ............................ 4

    A.   Under OCSLA, The Bundle C Plaintiffs Have No State Law Claims .................. 6

        1.   OPA's savings clause applies only to OPA and has no impact on OCSLA's mandatory choice of law rules .................................. 6

        2.   Maritime choice of law rules are ousted by OCSLA and do not permit application of state law .................................. 9

    B.   Federal Law Governs All Cross-Border Water Pollution .................................. 11

    C.   OPA Displaces the Bundle C Plaintiffs' General Maritime Claims .................... 13

II.   THE BUNDLE C PLAINTIFFS' OPA CLAIMS MUST BE DISMISSED ................... 14

    A.   Failure to Meet the OPA Presentment Requirements is Fatal to the Bundle C Plaintiffs' OPA Claims .................................. 15

    B.   Governmental Entities Are Not Exempt from OPA Presentment ....................... 17

    C.   Louisiana Fails To State A Claim Under OPA Or Under The Declaratory Judgment Act .................................. 20

        1.   Louisiana fails to sufficiently allege presentment ................................... 20

        2.   Louisiana's concerns about issue preclusion and claim splitting are unfounded .................................. 22

        3.   Louisiana's claims for declaratory judgment must be dismissed ........... 23

    D.   Alabama Fails To State A Claim Under OPA .................................... 25

    E.   The PSC Fails To Sufficiently Allege OPA Claims ........................................... 26

        1.   The PSC fails to allege the requisite elements of presentment ............... 26

        2.   The PSC fails to allege recoverable removal costs under OPA .............. 26

III.   EVEN IF THE BUNDLE C PLAINTIFFS' STATE AND GENERAL MARITIME LAW CLAIMS WERE NOT BARRED, THEIR TORT CLAIMS AGAINST ANADARKO FAIL .................................. 28

    A.   The Bundle C Plaintiffs' Complaints Allege Only Direct-Liability Negligence Claims Against Anadarko, Which They Have Now Abandoned .................................. 29

Page

B.    Alabama's And The PSC's New "Joint Venture" Claims Are Improperly Raised And Utterly Meritless................................................................ 30

    1.    Plaintiffs cannot raise vicarious liability for the first time in their opposition to Anadarko's Motion to Dismiss .......................... 30

    2.    Imposition of vicarious liability—including based on a theory of joint venture—requires a showing of operational control, which as a matter of law is absent here................................... 30

C.    Cases Involving The LHWCA Do Not Involve Vicarious Liability And Are Entirely Inapposite ....................................................................... 32

IV.    THE PSC'S NEW ULTRAHAZARDOUS ACTIVITY THEORY MUST BE REJECTED .................................................................................................... 35

V.    EVEN IF IT APPLIED, THE BUNDLE C PLAINTIFFS HAVE NO CLAIMS UNDER STATE LAW ................................................................................... 37

A.    LOSPRA Is The "Exclusive" Remedy For Oil Spills Under Louisiana Law...... 37

B.    Louisiana Fails To State A Claim Against Anadarko Under LOSPRA .............. 38

C.    The PSC Does Not Dispute that the Master Local Government Complaint Fails to State a Claim Against Anadarko Under LOSPRA................................. 39

D.    Natural Resources Damages Are Only Recoverable Pursuant to OPA ............. 39

CONCLUSION............................................................................................................... 43

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### FEDERAL CASES

*Abundiz v. Explorer Pipeline Co.,* Nos. Civ. A. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018 (N.D. Tex. Nov. 25, 2003) ................................25

*Actiesselskabet Ingrid v. Central R.R. Co. of N.J.*, 216 F. 72 (2d Cir. 1914) ...................36

*Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988) ...........................................................................................32, 36

*Askew v. America Waterways*, 411 U.S. 325 (1973) ..........................................................9

*Baker v. Chevron U.S.A., Inc.*, No. 92-2346, 1993 WL 8300 (E.D. La. Jan. 8, 1993) ...................................................................................35

*Bank of Sacramento v. Stewart Title Guaranty Co.*, No. 09-00771-JAM-KJN, 2010 WL 3784096 (E.D. Cal. Sept. 27, 2010)............................................................30

*Barbetta v. Berm. Star*, 848 F.2d 1364 (5th Cir. 1988) ....................................................31

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235 (11th Cir. 1995) ........16, 25

*Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374 (S.D. Miss. 1991) ........................31

*Bowles v. Russell*, 551 U.S. 205 (2007).............................................................................16

*Branch v. Smith*, 538 U.S. 254 (2003) ................................................................................8

*Burlington Resources v. United National Insurance Co.*, 481 F. Supp. 2d 567 (E.D. La. 2007) ......................................................................31

*Champagne v. McDermott, Inc.*, No. 91-1221, 1992 WL 178661 (E.D. La. July 17, 1992)..................................................................35

*In re Complaint of Weeks Mar., Inc.*, No. 04-494(FLW), 2005 WL 2290283 (D.N.J. Sept. 20, 2005), *aff'd*, 270 Fed. Appx. 97 (3d Cir. 2008)..............................36

*Cont'l Oil Co. v. London S.S. Owner's Mutual Insurance Association, Ltd.*, 417 F.2d 1030 (5th Cir. 1969) ................................................................10

*Crosby-Miss. Resources Ltd. v. Saga Petroleum U.S., Inc.*, 767 F.2d 143 (5th Cir. 1985)......................................................................35

Page

*In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir. 1991) ..................................18

*Darr v. Chevron, U.S.A., Inc.*, 141 F.3d 1163, 1998 WL 197808 (5th Cir. 1998) ...........34

*Darr v. Chevron U.S.A., Inc.*, No. 96-2818, 1997 WL 470151 (E.D. La.
    Aug. 12, 1997) ........................................................................34

*Davidson v. Enstar Corp.*, 848 F.2d 574 (5th Cir. 1988) ..................................33

*Davidson v. Enstar Corp.*, 860 F.2d 167 (5th Cir. 1988) .............................33, 34

*Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977 (N.D. Ill. 2010)....................25

*EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715 (1st Cir. 1984) ........................36

*Ferry v. Deeper Life Christian Church, Inc. of Tampa, Fla.*, No. 99-2955,
    2002 WL 1974112 (E.D. La. Aug. 27, 2002) ...........................................31

*Gabarick v. Laurin Maritime (Am.) Inc.*, 623 F. Supp. 2d 741 (E.D. La. 2009) ..............13

*Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 WL 102549
    (E.D. La. Jan 12, 2009)................................................................21

*General Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653
    (E.D. Tex. 2006) ...................................................................22, 27

*Golnay Barge Co. v. M/T Shinoussa*, 3 F.3d 439 (5th Cir. 1994)......................38

*Grammer v. Patterson Services, Inc.*, 860 F.2d 639 (5th Cir. 1988), *cert. denied*,
    109 S. Ct. 3190 (1989)..............................................................29

*In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201 (5th Cir. 2010).....................19

*In re Great Lakes Dredge & Dock Co.*, No. 92 C 6754, 1996 WL 210081
    (N.D. Ill. Apr. 26, 1996) ............................................................36

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981) .............................5

*Hagen v. Utah*, 510 U.S. 399 (1994) ....................................................9

*Hajtman v. NCL (Bah.) Ltd.*, 526 F. Supp. 2d 1324 (S.D. Fla. 2007) ..............................32

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989).......................................25

*Heavin v. Mobil Oil Exploration. & Prod. Inc.*, 913 F.2d 178 (5th Cir. 1990) ................35

Page

*Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011)...........................15, 16

*Hinson v. M/V CHIMERA*, 661 F. Supp. 2d 614 (E.D. La. 2009) ....................................31

*Holloway v. Gaylord Chemical*, 922 F. Supp. 1154 (E.D. La. 1996).........................27, 28

*Hoogerheide v. IRS*, 637 F.3d 634 (6th Cir. 2011) ............................................................16

*ICC v. S. Railway Co.*, 543 F.2d 534 (5th Cir. 1976) ..........................................................8

*International Paper Co. v. Ouellette*, 479 U.S. 481 (1987)......................10, 11, 12, 13, 38

*James v. Nico Energy Corp.*, 838 F.2d 1365 (5th Cir. 1988) .............................................32

*Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309 (E.D. Va. 1993) .......................21, 22

*Kushindana v. Blue Ctr, Inc.*, No. 10-00472-FJP-DLD, 2010 WL 4977499
    (M.D. La. Oct. 20, 2010), *report and recommendation adopted by*
    2010 WL 4977110 (M.D. La. Dec. 2, 2010)..............................................................19

*Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989)...................................29

*Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27 (1980) ..............................................7

*Louisiana ex. rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) ..................36

*Lyrick Studios, Inc. v. Big Idea Products, Inc.*, 420 F.3d 388 (5th Cir. 2005) .................20

*Margin v. Sea-Land Services, Inc.*, 812 F.2d 973 (5th Cir. 1987)....................................22

*Martin v. Revere Smelting & Refining Corp.*, No. 3:03-cv-2589,
    2005 WL 280326 (N.D. Tex. Feb. 2, 2005)...............................................................27

*McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988) ...........................22

*Medical Ctr. Pharmacy v. Mukasey*, 536 F.3d 383 (5th Cir. 2008)...................................20

*Miller v. Slam Offshore*, No. 96-1390, 1997 WL 537686 (E.D. La. Aug. 22, 1997) ........34

*Moore v. Phillips Petroleum Co.*, No. 87-5639, 1989 WL 38716 (E.D. La.
    Apr. 17, 1989)..............................................................................................................35

*Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171
    (2d Cir. 2003)...............................................................................................................38

Page

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) ....................................35

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986)..................................7

*Olsen v. Shell Oil Co.*, 708 F.2d 976 (5th Cir. 1983)...........................................5

*Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865
    (5th Cir. 2001)..................................................................................................22

*Parker v. McDermott, Inc.*, Civ. A. No. 89-4269, 1990 WL 223011 (E.D. La.
    Dec. 19, 1990)..................................................................................................35

*Paul v. United States*, 371 U.S. 245 (1962) ..........................................................5

*Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)...........................35

*Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969) ........................5

*Russello v. United States*, 464 U.S. 16 (1983) ....................................................20

*Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978).......................32, 33

*Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859 (E.D. La. 2001) ..................13

*Taylor v. Getty Oil Co.*, 637 F. Supp. 886 (E.D. La. 1986)...............................35

*Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025
    (E.D. La. 1968), *aff'd in relevant part and rev'd in part on other grounds*,
    424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970)................31

*Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986 (E.D. La.
    Nov 21, 2007) ..................................................................................................21

*Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043
    (5th Cir. 1990)...............................................................................................5, 10

*United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011) ......................................8

*United States v. Locke*, 529 U.S. 89 (2000) .......................................................7, 8

*United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008)....17

*United States v. Massachusetts*, 493 F.3d 1 (1st Cir. 2007) .................................7

vi

Page

*United States v. Shanbaum*, 10 F.3d 305 (5th Cir. 1994) ..................................23

*West v. Kerr-McGee Corp.*, 586 F. Supp. 493 (E.D. La. 1984), *rev'd, on other grounds,* 765 F.2d 526 (5th Cir. 1985) ........................................34

*Woolard v. Mobil Pipe Line Co.*, 479 F.2d 557 (5th Cir. 1973)........................................30

*Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996)........................................9

## STATE CASES

*Archer v. Bill Pearl Drilling Co., Inc.*, 655 S.W.2d 338 (Tex. App. 1983).......................32

*Aupied v. Joudeh*, 694 So. 2d 1012 (La. App. 5 Cir. 1997)................................31

*Ayco Development Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184 (Tex. 1981) ...................32

*Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983 (Colo. 1987) .........32

## FEDERAL STATUTES

28 U.S.C. § 2201 ........................................24

33 U.S.C. 2751(e) ........................................13

33 U.S.C. § 2701(30) ........................................18, 27

33 U.S.C. § 2701(31) ........................................18, 27

33 U.S.C. § 2702(b)(2)(A) ........................................42

33 U.S.C. § 2702(b)(2)(E) ........................................27

33 U.S.C. § 2706(b)(3) ........................................42

33 U.S.C. § 2706........................................41, 42

33 U.S.C. § 2706(d)(3) ........................................42

33 U.S.C. § 2709........................................19

33 U.S.C. § 2713(a) ........................................16, 17, 20, 25

33 U.S.C. § 2713(b) ........................................19

Page

33 U.S.C. § 2713(c) ............................................................................16, 17, 19, 20

33 U.S.C. § 2714 .............................................................................................19

33 U.S.C. § 2717(f)(2) ...............................................................17, 18, 23, 26

33 U.S.C. § 2718 ...............................................................................................7

43 U.S.C. § 1333(a) ..........................................................................................5

Fed. R. Civ. P. 57 ............................................................................................24

Fed. R. Civ. P. 10(b) .........................................................................................2

## FEDERAL ADMINISTRATIVE MATERIALS

33 C.F.R. § 136.105 ........................................................................................21

33 C.F.R. § 136.109 ........................................................................................21

## STATE STATUTES AND ADMINISTRATIVE MATERIALS

La. Rev. Stat. Ann. § 30:2453(B) ...................................................................38

La. Rev. Stat. Ann. § 30:2454(5) ...................................................................41

La. Rev. Stat. Ann. § 30:2479 .........................................................................43

La. Rev. Stat. Ann. § 30:2488(C) ...................................................................39

La. Rev. Stat. Ann. § 30:2489(B) ...................................................................39

La. Rev. Stat. Ann. § 30:2491 ............................................................37, 38, 39, 40

La. Rev. Stat. Ann. § 30:2496 .........................................................................37

La. Rev. Stat. Ann. § 56:40.9(B) ....................................................................41

La. Rev. Stat. Ann. §56:40.3 ..........................................................................40

La. Rev. Stat. Ann. §56:40.4 .....................................................................40, 41

La. Admin. Code tit. 43, pt. XXIX, §109 .......................................................40

Tex. Nat. Res. Code § 40.003(6) ....................................................................39

Page

Tex. Nat. Res. Code § 40.157 ............................................................39

Tex. Nat. Res. Code § 40.159 ............................................................39

Tex. Nat. Res. Code § 40.160 ............................................................39

Tex. Nat. Res. Code § 40.162 ............................................................39

## LEGISLATIVE HISTORY

H.R. Rep. No. 101-653 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779 .............................13

S. Rep. No. 83-411 (1953) ................................................................5

S. Rep. No. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 748.............................9

**MAY IT PLEASE THE COURT:**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively "Anadarko") respectfully submit this consolidated Reply in support of their Motions to Dismiss the Amended Complaints of the State of Alabama and the State of Louisiana [Rec. Doc. 2645] and Motion to Dismiss the Voluntary Local Government Entity Master Complaint [Rec. Doc. 2218].

In their omnibus oppositions to all pending motions to dismiss, Alabama, Louisiana and the Plaintiffs' Steering Committee ("PSC") on behalf of the Local Government Entities (collectively, the "Bundle C Plaintiffs") [Rec. Docs 3203, 3213, and 3186, respectively], argue that:

1. The state law savings clause of the Oil Pollution Act ("OPA") somehow trumps the choice-of-law provisions of the Outer Continental Shelf Lands Act ("OCSLA"), affirmatively authorizing the Bundle C Plaintiffs to sue under state law;

2. OPA's maritime law savings clause prevents OPA from displacing the general maritime law causes of action that the Bundle C Plaintiffs have pleaded;

3. State law is not preempted by federal law and may be applied to water pollution from an out-of-state source caused by a discharge of oil from Outer Continental Shelf ("OCS") mining activities, and;

4. The Bundle C Plaintiffs, unlike other plaintiffs, are not required to present their OPA claims to the designated responsible party in order to maintain suit, and, in any event, Louisiana and Alabama both contend that they have properly alleged presentment.

Some Bundle C Plaintiffs also offer arguments in which the other Bundle C Plaintiffs do not join:

5. Louisiana argues that the Court should disregard the State's concessions that its claims for declaratory judgment, removal costs, and natural resource damages are unripe because Louisiana believes it *must* bring unripe claims now or risk claim preclusion;

6. The PSC and Alabama argue for the first time in their oppositions to Anadarko's Motions to Dismiss that, although Anadarko lacked any operational control over the events giving rise to their alleged injuries, Anadarko may be held vicariously liable for BP's torts on a "joint venture" theory; and

7. The PSC contends for the first time, again in its opposition to Anadarko's Motion to Dismiss, that offshore drilling is an ultrahazardous activity.

The Bundle C Plaintiffs' arguments are meritless. They add little (if anything) to the issues that have already been copiously briefed and argued before the Court in several other motions.[1] The only distinction between the Bundle C Plaintiffs and the plaintiffs in Bundle B is that the Bundle C Plaintiffs are public entities. But that is a distinction without a difference: the Bundle C Plaintiffs' status provides no basis to distinguish the generally applicable principles of law that govern this case.

Thus, as with Pleading Bundles B1 and B3, the only law applicable to this case is federal law, and OPA is that law. This conclusion is compelled both by OCSLA's mandatory and exclusive choice of law provisions and by precedent holding that, in all cases of interstate water pollution, the law of affected states is preempted. OPA's savings clause does not authorize application of state law where it does not otherwise apply; it simply saves state law from preemption by OPA itself—not from preemption by other statutes, such as OCSLA, the Clean Water Act ("CWA"), and the Coastal Zone Management Act ("CZMA"). Likewise, OPA's

---

[1] *See, e.g.,* Anadarko's Memorandum of Law in Support of Motion to Dismiss the Bundle B1 Master Complaint [Rec. Doc. 1414-1]; Anadarko's Memorandum of Law in Support of Motion to Dismiss the Bundle B3 Master Complaint [Rec. Doc. 1416-1]; Anadarko's Consolidated Reply to PSC's Omnibus Oppositions to Defendants' Motions to Dismiss the Master Complaints for Pleading Bundles B1 and B3 [Rec. Doc. 2208]; Reply to PSC's Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 2217]. To the extent applicable and not otherwise specifically addressed herein, and in the interests of preserving judicial and litigant resources, Anadarko incorporates the arguments and contentions in the above listed filings as if set forth in full pursuant to FED. R. CIV. P. 10(b).

maritime law savings clause expressly preserves only those maritime causes of action providing relief that is not "otherwise provided" by OPA.

Like any other plaintiff, the Bundle C Plaintiffs must present their OPA claims to the designated responsible party before seeking relief in court. Their complaints must allege that they presented a claim for a sum certain, that the claim was rejected or that 90 days have passed, and that they presented enough information for the designated responsible party to reasonably evaluate the claim. Moreover, the Bundle C Plaintiffs bear the burden of proof of these jurisdictional facts, and they fall far short of establishing they have properly presented and, therefore, have valid OPA claims. The Court cannot excuse their failure.

Louisiana's contention that OPA authorizes it to litigate unripe claims is meritless. Claim splitting does not bar a party from litigating a claim that it could not have litigated (owing to unripeness) during earlier litigation.

Although maritime law is displaced by OPA in this case, Alabama and the PSC's newly proffered joint venture/vicarious liability theory against Anadarko is not alleged in their complaints and, nonetheless, is unsupported by law. The PSC, in fact, expressly disclaimed any intent to pursue a vicarious liability theory against Anadarko. Now, hoping to avoid dismissal, the PSC and Alabama abandon their direct liability theory, which is the only one alleged in their complaints. Operational control, however, is the touchstone of liability even for supposed joint venturers. Accordingly, even on their new theory, Alabama and the PSC cannot escape the inevitable conclusion that Anadarko is not liable to them. The cases cited by the PSC, holding that non-operating investors like Anadarko are *immune* from tort liability under the Longshoreman and Harbor Workers Compensation Act ("LHWCA"), all do not involve vicarious liability and are utterly irrelevant.

Similarly, the PSC's new contention that offshore drilling is an ultrahazardous activity, and therefore exempt from the rule of *Robins Dry Dock*, is contrary to established law. There is no strict liability cause of action for ultrahazardous activities under the general maritime law, and, even if there was, offshore drilling is not ultrahazardous.

Finally, even if state law applied (which it does not), the Bundle C Plaintiffs fail to state any claims against Anadarko under Louisiana's environmental statutes.

## ARGUMENT

### I.   THE BUNDLE C PLAINTIFFS CAN BRING ONLY OPA CLAIMS.

The Bundle C Plaintiffs argue that they may bring state law claims because OCSLA's choice-of-law rules do not apply. Ala. Opp'n [Rec. Doc. 3203] at 3; La. Opp'n [Rec. Doc. 3213] at 5; PSC Opp'n [Rec. Doc. 3186] at 11-12. Because this case involves an oil spill, they contend, OPA is "paramount" and "controlling" and its state law savings clause, which supposedly authorizes state law claims, trumps OCSLA. Ala. Opp'n [Rec. Doc. 3203] at 3; La. Opp'n [Rec. Doc. 3213] at 5; PSC Opp'n [Rec. Doc. 3186] at 11-12. The Bundle C Plaintiffs alternatively argue that, even if OCSLA's choice-of-law provisions apply, those provisions mandate application of maritime law and that state law applies nevertheless because maritime law's choice-of-law rules allow it. Ala. Opp'n [Rec. Doc. 3203] at 3; La. Opp'n [Rec. Doc. 3213] at 5; PSC Opp'n [Rec. Doc. 3186] at 11-12.

The Bundle C Plaintiffs are wrong. No case, statutory provision, or legislative history supports their argument that OCSLA fails to control cases arising on the OCS. In an oil pollution case where oil is discharged *directly* into a state's *territorial* waters, OPA's savings clause *may* allow OPA and state law remedies to coexist. But this is not such a case. As the Bundle C Plaintiffs allege, oil was discharged on the OCS as a result of the operations of the *Deepwater Horizon*, a mobile offshore drilling vessel located far outside the territorial waters of

any state.   As Anadarko has already explained (Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 44-58), federal law—*i.e.*, federal statutes and/or federal maritime law—applies to this case to the exclusion of state law.   Indeed, state law may be applied *only in limited circumstances* not present here, and even then *only as surrogate federal law* to fill a substantial gap in federal law.   43 U.S.C. § 1333(a)(1)-(2); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479-80 & n.7 (1981) (stating "[a]ll law applicable to the Outer Continental Shelf is federal law," and all cases "involving events occurring on the Shelf [are] governed by federal law" and further quoting S. REP. NO. 83-411, at 2 (1953) regarding OCSLA's purpose).

OCSLA flatly bars application of state law of its own force, consistent with the pre-OCSLA rule that states have no power over the OCS.   *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969); *see also Olsen v. Shell Oil Co.*, 708 F.2d 976, 980 n.2 (5th Cir. 1983); *cf. Paul v. United States*, 371 U.S. 245, 263 (1962) ("[T]he grant of 'exclusive' legislative power to Congress over [federal] enclaves . . . , by its own weight, bars state regulation without specific congressional action.").   In OCSLA, Congress has provided a specific procedure for courts to use in deciding what law should apply.   43 U.S.C. § 1333(a)(1)-(2).   Those choice-of-law rules are mandatory and exclusive, ousting all contrary choice-of-law rules that otherwise might arguably apply, including maritime law's choice-of-law rules.   *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990) ("OCSLA is . . . a Congressionally mandated choice of law provision . . ..").   In them, Congress made clear that state law can only be applied to activities on the OCS that involve "fixed structures" and "artificial islands," but that activities related to a vessel temporarily attached to the OCS are governed exclusively by federal law.   *See* 43 U.S.C. § 1333(a)(1)-(2)(A).   Because there is no doubt that the *Deepwater Horizon* was a vessel temporarily attached to the OCS, OCSLA leaves the Bundle C Plaintiffs with but one

avenue for the economic losses and removal costs they seek—OPA.  Claims based on state law remedies are simply unavailable in this case, and must be dismissed.

> **A.      Under OCSLA, The Bundle C Plaintiffs Have No State Law Claims.**
>
> > **1.      OPA's savings clause applies only to OPA and has no impact on OCSLA's mandatory choice of law rules.**

Louisiana argues that OPA is the "paramount" and "exclusive" statute applicable to oil spills, and therefore OPA's state law savings clause is not "affected by OCSLA." La. Opp'n [Rec. Doc. 3213] at 5-6.  Similarly, Alabama argues that OCSLA and OPA contradict each other because OCSLA bars state law claims while OPA "authorizes" application of state law.  Ala. Opp'n [Rec. Doc. 3203] at 3, 13-17.  To resolve that supposed conflict, Alabama argues that the Court should follow OPA because it is "more recent" and "more specific."  *Id.* at 3.  Alabama thus concludes that OCSLA is "virtually (if not wholly) irrelevant when judging displacement [of maritime law] and preemption [of state law] in this oil pollution case[.]"  *Id.*

OCSLA and OPA are perfectly reconcilable.  OPA creates only *substantive* rights; it does not establish *procedures* for deciding what law applies.  Alabama nonetheless tries to portray OPA as a procedural statute.  Citing OPA's savings clause, 33 U.S.C. § 2718, Alabama contends that "Congress expressly stated in OPA that claims raised under . . . state law would remain available to spill victims."  Ala. Opp'n [Rec. Doc. 3203] at 5.  That is not what the statute says. OPA's state law savings provision provides:

> **(a) Nothing in this Act or the Act of March 3, 1851** shall--
>
> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to--
>
> (A) the discharge of oil or other pollution by oil within such State; or
>
> (B) any removal activities in connection with such a discharge; or

> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 *et seq.*) or State law, including common law.

33 U.S.C. § 2718(a) (emphasis added).   The provision's preface that "nothing in *this Act*" preempts state law is fatal to the States' arguments; the "explicit qualifier[]" at the start of OPA's savings clause is "inconsistent with interpreting the savings clause[] to alter the pre-emptive effect of" other statutes.   *United States v. Locke*, 529 U.S. 89, 106 (2000) (holding that the savings clauses in Title I of OPA did not undo the preemptive effect of the Ports and Waterways Safety Act of 1972); *see also United States v. Massachusetts*, 493 F.3d 1, 21 (1st Cir. 2007) ("The clauses save state laws from preemption by OPA's Title I, but not from OPA's other titles, or from other federal statutes.").   Far from authorizing state law remedies, the savings clause only prevents *OPA itself* from affecting whatever state authority otherwise exists under existing law.   By its own terms, OPA's state law savings clause has no impact on the mandatory and exclusive nature of OCSLA's choice of law procedures for cases arising on the OCS, or the preemptive effect of any other statute.

Nor does the savings clause affirmatively extend state authority beyond state territorial waters onto the OCS.   Like savings clauses generally, OPA's savings clause is not a Congressional grant of extraterritorial power to states, or a Congressional approval of state law. *See, e.g., Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986) (holding that savings clause at Section 7 of the Death on the High Seas Act does not extend state law wrongful death statutes to the high seas where they would not have applied before the Act); *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 49 (1980) (finding "nothing in [a savings clause's] language or legislative history to support the contention that it also was intended to extend to the States new powers . . . that they would not have possessed absent the federal legislation").   The Supreme

7

Court has already held that Congress did not "use a means so indirect as the saving clauses in Title I of OPA" to grant states newfound powers. *Locke*, 529 U.S. at 106. Yet here, Louisiana and Alabama would have the Court reach the opposite result and hold that OPA's savings clause does "upset the settled division of authority" (that which OCSLA prescribed) "by allowing States to impose additional unique substantive regulation on the at-sea conduct of vessels" operating on the OCS. *Id.* This Court should "decline to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law." *Id.*

From the false premise that OCSLA and OPA conflict, Alabama argues that two canons of construction support resolving the conflict in favor of OPA. Ala. Opp'n [Rec. Doc. 3203] at 3-5. Specifically, Alabama argues that OPA, because it was enacted later, impliedly repeals OCSLA. *See Branch v. Smith*, 538 U.S. 254, 273 (2003) ("An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute.") (internal citations omitted). Alabama also argues that OPA is a "specific" statute that prevails over a "general" statute like OCSLA. *See United States v. Johnson*, 632 F.3d 912, 924 & n.68 (5th Cir. 2011). But because there is no actual conflict, the Court need not address either canon. *See ICC v. S. Ry. Co.*, 543 F.2d 534, 539 (5th Cir. 1976) ("Only where there is irreconcilable conflict do we need to consider which statute was subsequently enacted or which is the more specific."). Yet, even if there were a conflict, neither canon is applicable in this case.

The implied repeal canon is no help to Alabama. As even Alabama is constrained to admit, Congress *expressly* repealed an entire title of OCSLA relating to oil spills (Title III) when enacting OPA. Ala. Opp'n [Rec. Doc. 3203] at 4. When a later enactment expressly repeals portions of an earlier law, there is no basis in law or logic to presume that other portions *not*

*expressly* repealed were nonetheless *impliedly* repealed.  "[T]he general rule that repeals by implication are disfavored is especially strong" when the later act "expressly repealed" a provision in the earlier act:  "if Congress had meant to repeal any part of any other previous statute, it could easily have done so."  *Hagen v. Utah*, 510 U.S. 399, 416 (1994).  If Congress had intended OPA's savings clause to repeal OCSLA's choice of law provisions, it would have said so expressly.[2]

The canon that favors specific statutes over general statutes also is no help to Alabama.  Neither OCSLA nor OPA is more specific (or more general) than the other.  OCSLA applies to *all cases arising on the OCS* and *arising out of OCS activities*; OPA applies to *all oil spill cases in waters within federal jurisdiction*.  The specific-over-the-general canon is simply indeterminate here.

> **2.  Maritime choice of law rules are ousted by OCSLA and do not permit application of state law.**

Despite citing no case where a court has applied substantive state law after selecting maritime law under 43 U.S.C. § 1333(a), Alabama and Louisiana contend that Section 1333(a) allows that very result—that OCSLA's choice-of-law rules preserve the maritime choice-of-law rules that occasionally permit application of state law in admiralty cases, as in *Askew v. Am. Waterways*, 411 U.S. 325 (1973) and *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).

---

[2]     Indeed, OPA's legislative history demonstrates that Congress did not intend for OPA's savings clause to extend state law to the OCS.  Senators Chaffee, Lieberman, Graham, and Durenberger objected that an early draft of OPA was ill-suited to OCS oil spills because it capped liability for clean-up costs.  S. Rep. No. 101-94, at 26 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 748.  In a statement on the bill, which had a savings clause like that which was enacted into law, the Senators noted that States lacked authority to impose additional liability above the cap because OCS facilities "are outside the 3 mile limit, and therefore are not subject to state laws."  *Id.* at 27, 1990 U.S.C.C.A.N. at 749.  Congress resolved the Senators' objection by eliminating the OPA cap on clean-up liability, *not* by giving states authority to impose additional liability for oil spills on the OCS.

Ala. Opp'n [Rec. Doc. 3201] at 5-8; La. Opp'n [Rec. Doc. 3213] at 6-9.  Their contention is untenable.  By providing that vessels temporarily attached to the OCS are "area[s] of exclusive Federal jurisdiction," Section 1333(a)(1) removes all doubt that state law is inapplicable to cases arising on such vessels.  Just as OCSLA requires courts to ignore contractual choice of law provisions and the forum state choice of law analysis that might otherwise apply in a diversity case, OCSLA's choice of law provision cannot be read as allowing state law to be applied through the back door via maritime choice-of-law rules.  *See Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990) ("OCSLA is . . . a Congressionally mandated choice of law provision . . ..").  Absent clear evidence, which the Bundle C Plaintiffs do not proffer, the Court should not presume that Congress drafted such a loophole.  *Cf. Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 499 n.20 (1987) (holding that the CWA's prohibition against applying an affected state's law precludes a source state from using its own choice-of-law rules to adopt the substantive law of an affected state).

In any event, as both Alabama and Louisiana concede, state law may only apply in an ordinary admiralty case to fill gaps in maritime law.  Ala. Opp'n [Rec. Doc. 3203] at 7-8; La. Opp'n [Rec. Doc. 3213] at 7-8; *see also Cont'l Oil Co. v. London S.S. Owner's Mut. Ins. Ass'n, Ltd.*, 417 F.2d 1030, 1036 (5th Cir. 1969).  But neither State even attempts to identify a gap in the federal statutory or maritime law in this case that needs to be filled.  Accordingly, even if ordinary maritime choice-of-law rules were to apply to events occurring on the high seas or to events occurring during drilling operations on the OCS, Alabama and Louisiana fail to explain why state law would be needed to supplement maritime law or in what way maritime law is inadequate or incomplete.

B.      **Federal Law Governs All Cross-Border Water Pollution.**

None of the Bundle C Plaintiffs directly responds to Anadarko's argument that *all four* of

the relevant federal statutes governing offshore oil and gas operations in the Gulf of Mexico,

OCSLA, OPA, the CZMA and the CWA, *taken together*, preempt application of individual

affected states' laws to this case.  Instead, they try to show only that the CWA *by itself* does not

preempt state law in this case.  Ala. Opp'n [Rec. Doc. 3203] at 9-11; PSC Opp'n [Rec. Doc.

3186] at 12-13; La. Opp'n [Rec. Doc. 3213] at 9-11.  Their narrow, nonresponsive argument is

wrong, in any event, because it fundamentally misreads *Int'l Paper Co. v. Ouellette*, 479 U.S.

481 (1987).

*Ouellette* holds that the CWA preempts application of an affected state's law to a case of

interstate water pollution.  479 U.S. at 500.  The Bundle C Plaintiffs argue that *Ouellette*'s

holding should be limited to cases where the discharge was permitted by the federal government

or by the state where the source is located.  Ala. Opp'n [Rec. Doc. 3203] at 9-11; La. Opp'n

[Rec. Doc. 3213] at 10-11.  According to the Bundle C Plaintiffs, when neither the federal

government nor the source state permits a discharge, any and all affected states' law may apply.

But *Ouellette* draws no distinction between permitted and unpermitted discharges.  *See* 479 U.S.

at 491 (phrasing the question presented as "whether the Act pre-empts Vermont common law to

the extent that law may impose liability on a New York point source").  In fact, the plaintiffs in

*Ouellette* did not only complain about permitted discharges, as Alabama suggests.  They also

complained about unpermitted discharges, and the Court held that the only remedies for such

discharges are those that the CWA provides for violations of discharge permits.  *See id.* at 498

n.18.

Alabama and Louisiana incorrectly argue that an affected state's law conflicts with

federal law and federal policy only when applied to a permitted discharge, *i.e.*, a discharge

11

allowed by a source's National Pollutant Discharge Elimination System ("NPDES") permit.  Ala. Opp'n [Rec. Doc. 3203] at 10; La. Opp'n [Rec. Doc. 3213] at 9-10.  In such cases, Alabama argues, the federal government and source state have authorized the discharge, and there would be an obvious conflict if another state could deem the discharge tortious.  Ala. Opp'n [Rec. Doc. 3203] at 9-11.

But, allowing affected states to exact remedies for unpermitted discharges also "'stands as an obstacle' to the full implementation of the CWA[.]"  *Ouellette,* 479 U.S. at 494.  It undermines Congress's considered decision to assign to non-source states "only . . . an advisory role in regulating pollution that originates beyond its borders." *Id.* at 490.  And it "undermine[s] the important goals of efficiency and predictability in the permit system[]" by potentially subjecting a single source "to a variety of common-law rules established by the different States along the interstate waterways." *Id.* at 496.

Alabama disbelieves that there can be any actual conflict between the source state's and affected state's laws in the case of an unpermitted discharge because both sovereigns would, in essence, be forbidding a source to pollute.  Ala. Opp'n [Rec. Doc. 3203] at 10.  Alabama grossly oversimplifies the problem.  Each state may have different standards for negligence or proximate cause; each may have different views on the appropriateness, availability, and amount of damages.  Alabama cannot guarantee that the extent and amount of liability each state would award would be perfectly identical.  Therein lies the problem, for as *Ouellette* made clear, decisions to award relief—whether compensatory, punitive, or injunctive—inevitably have regulatory effects. *See* 479 U.S. at 499 n.19.  But "[n]othing in the Act gives each affected State this power to regulate discharges." *Id.* at 497.  That power belongs to the source state only. *See*

*id.* (holding source states may apply their statutory and common law to pollution originating within their territories).

The CWA's prohibition against application of an affected state's law is so absolute that a source state cannot even choose to apply the law of an affected state via the source state's choice-of-law rules.  *See Ouellette,* 479 U.S. at 499 n.20.  Under the CWA (to say nothing of OCSLA, OPA, and the CZMA), then, the Bundle C Plaintiffs have only federal remedies and source-state remedies when harmed by an interstate oil spill.  Because there is no source state here—the *Deepwater Horizon* was in a federal enclave at the time of the spill—federal remedies are all the Bundle C Plaintiffs have.  Regardless, one thing is clear:  the Bundle C Plaintiffs may not apply state law at all.

### C.    OPA Displaces the Bundle C Plaintiffs' General Maritime Claims.

Courts have uniformly held that OPA displaces general maritime claims for damages available under OPA; indeed, every court to consider the issue has so held.  *See, e.g.*, *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750–51 (E.D. La. 2009).  Even the PSC now concedes—as it must—that "general maritime law is likely displaced to the extent that a person or entity seeks the removal costs or damages 'provided in' OPA [33 U.S.C. § 2702] from the responsible party."  PSC Opp'n [Rec. Doc. 3186] at 18.  On this basis, all of the PSC's claims under the general maritime law against Anadarko must be dismissed.

Alabama nevertheless argues otherwise (Louisiana remains silent), relying entirely on OPA's maritime savings clause, 33 U.S.C. § 2751(e).  Ala. Opp'n [Rec. Doc. 3203] at 11-13.  Alabama neglects that clause's critical preface, which provides that OPA does not affect admiralty or maritime law "[e]xcept as otherwise provided in this Act[.]"  33 U.S.C. § 2751(e); *see* H.R. REP. NO. 101-653, at 159 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779,

838 ("[T]here is no change in current law unless there is a specific provision to the contrary."). OPA "otherwise provides" remedies for plaintiffs, like the Bundle C Plaintiffs, injured by oil spills.  OPA's remedies, therefore, displace whatever remedies the Bundle C Plaintiffs may have had in admiralty.[3]

## II.      THE BUNDLE C PLAINTIFFS' OPA CLAIMS MUST BE DISMISSED.

Although the Bundle C Plaintiffs' only avenue for recovery is through OPA, their complaints fail to state viable OPA claims and the Court lacks jurisdiction to hear them.  The Bundle C Plaintiffs make three arguments to contend that their failure to meet OPA's presentment requirements is not fatal to their claims.  First, they contend that the presentment requirement is not jurisdictional and thus the Court has the discretion to disregard their failure to heed the statute.  Second, they assert that governmental entities are not required to make any presentment for removal costs.  Finally, they assert that they have properly presented their claims to BP.  None of these arguments has merit.[4]

---

[3]      Alabama concedes, as it must, that it has no basis for seeking punitive damages under maritime law if it cannot also seek compensatory damages under maritime law.  *See* Ala. Opp'n [Rec. Doc. 3203] at 66 (stating that its requests for punitive damages are not "stand-alone claims, but instead relate[] back to causes of actions that allow for punitive damages").  Thus, OPA's displacement of Alabama's general maritime law claims is complete.

[4]      In its Motions to Dismiss, Anadarko explained why AE&P, as a matter of law, no longer held an interest in the Macondo Prospect lease as of April 1, 2010, and is not an OPA responsible party.  *See* Anadarko MTD Local Gov't Compl. [Rec. Doc. 2218] at 10-13; Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 28-30.  The PSC adopts by reference numerous pleadings from the other pleading bundles in which it purportedly responds to this contention. PSC Opp'n [Rec. Doc. 3186] at 7-8.  Anadarko does the same.  *See* Reply to PSC's Memorandum of Law in Opposition to the MOEX and Anadarko Defendants' Motions to Dismiss Plaintiffs' Negligence Claims and Motions to Dismiss the OPA Claims Against Anadarko E&P [Rec. Doc. 2217].  Alabama does not address the issue, and Louisiana merely states that the Court, not the Coast Guard, determines who is liable. La. Opp'n [Rec. Doc. 3213] at 17-19.  As a matter of law, AE&P is not a lessee under the statute, and the Court can make that determination.  Louisiana does not dispute this, except to refer to the United States' opposition to AE&P's motion to dismiss the United States' claims.  *See id.* at 19 n.18.  Anadarko incorporates by reference its reply to that Opposition.  *See* Reply in Support of Anadarko E&P Company LP's

A. **Failure to Meet the OPA Presentment Requirements is Fatal to the Bundle C Plaintiffs' OPA Claims.**

Citing *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), both Louisiana and Alabama contend that the OPA presentment requirement is "procedural" not "jurisdictional," and that their OPA claims should not be dismissed for failure to allege the requisite elements of a proper OPA presentment. Ala. Opp'n [Rec. Doc. 3203] at 19-22; La. Opp'n [Rec. Doc. 3213] at 11-13. Nothing in *Henderson* undermines the substantial case law mandating dismissal of OPA claims where the presentment requirement has not been met.[5]

*Henderson* addressed the issue of whether a veteran's failure to file a notice of appeal of an administrative decision to the *Article I* Veteran's Court within the statutorily required 120-day time limit had "jurisdictional" consequences. 131 S. Ct. at 1201. The Court found that this filing deadline was a "claims-processing rule," and that there was no clear indication from Congress that it intended this filing deadline to be "jurisdictional." *Id.* at 1203. The Supreme Court recognized, however, that such rules can be jurisdictional and that "Congress, of course, need not use magic words in order to speak clearly on this point. '[C]ontext, including this Court's interpretation of similar provisions in many years past, is relevant.'" *Id.* (quoting *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248 (2010)). In the case of veteran's appeals from an administrative agency, which was at issue in *Henderson*, the Supreme Court found the administrative scheme for seeking benefits was substantially different from those situations in

---

Motion to Dismiss the Complaint of the United States [Rec. Doc. 3113]. Although state law is inapplicable in this case, as further explained below, for these same reasons any claims under state law against AE&P based on its alleged status as a lessee must also be dismissed.

[5]     Given the limited number of government entities that have brought claims to date, whether they have properly presented as required by OPA can and should be addressed by the Court at this juncture, particularly with respect to Alabama and Louisiana, who have brought their own, separate OPA claims and are not part of a Master Complaint.

which courts have found similar "procedural rules" for filing suit jurisdictional in *Article III* courts, such as this Court.  131 S. Ct. at 1203-06.

Here, by contrast, Congress was clear when it placed limits on the federal court's ability to hear OPA claims, to promote settlement, *and to avoid litigation*.  *See* Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 12-18.  "Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them."  *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (citation omitted).  In OPA, Congress required that "*all claims* for removal costs or damages *shall* be presented *first* to the responsible party . . . of the source designated under section 2714(a) of this title." 33 U.S.C. § 2713(a) (emphases added).  Only after properly presenting a claim, and only after a responsible party either denies liability or does not settle after 90 days, "may [the claimant] elect to commence an action in court against the responsible party. . . ."  *Id.* § 2713(c).  Congress unequivocally defined which OPA claims can proceed to court, and when.

Ultimately, whether or not OPA's requirements are jurisdictional makes little difference for Anadarko's Motion to Dismiss.  Alabama, for one, concedes that OPA's presentment requirement "speak[s] in mandatory terms[.]"  Ala. Opp'n [Rec. Doc. 3203] at 22.  The Court must enforce a mandatory rule even if the rule is not jurisdictional.  *See, e.g.*, *Hoogerheide v. IRS*, 637 F.3d 634, 639 (6th Cir. 2011) (affirming dismissal when plaintiff failed to comply with mandatory exhaustion requirement under 26 U.S.C. § 7433, even though the requirement is not jurisdictional under *Henderson*).  *Henderson* does not overrule the numerous cases that require dismissal when a plaintiff has failed to comply with OPA's mandatory presentment requirements prior to filing suit.  *See, e.g., Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995).

### B.      Governmental Entities Are Not Exempt from OPA Presentment.

The Bundle C Plaintiffs also contend that "States do not have to present claims to the responsible party before filing a complaint."  Ala. Opp'n [Rec. Doc. 3203] at 22; *see also* La. Opp'n [Rec. Doc. 3213] at 13; PSC Opp'n [Rec. Doc. 3186] at 23-24.  Citing OPA's separate *statute of limitations* provision, 33 U.S.C. § 2717(f)(2), the Bundle C Plaintiffs contend that as long as they have incurred removal costs, they may avoid the presentment requirement of OPA for any and all potential removal costs and damages recoverable under OPA.  Their arguments depend entirely on the flawed decision in *United States v. M/V Cosco Busan,* 557 F. Supp. 2d 1058, 1060-63 (N.D. Cal. 2008), which no other court has adopted.  As explained in Anadarko's Motions to Dismiss the Alabama and Louisiana Amended Complaints (Rec. Doc. 2645-1 at 15-18), the district court in *Busan* ignores clear statutory language.[6]

OPA's presentment requirement refers to *all* claims, without exceptions for governmental entities.  33 U.S.C. § 2713(a), (c).  Relying on *Busan*, the Bundle C Plaintiffs each refer to the *statute of limitations* provision of OPA, Section 2717(f)(2), which provides that "[e]xcept as otherwise provided in this paragraph, *an action may be commenced under this subchapter* for recovery of removal costs at any time after such costs have been incurred."  *Id.* at § 2717(f)(2) (emphasis added).  OPA's statute of limitations provision does not indirectly (and irrationally) excise the presentment requirement when removal costs are sought.

---

[6]      Even if *Busan* was decided correctly, it is no help to the PSC.  Contrary to the PSC's contentions, the *Busan* case does not hold that "government plaintiffs" generally can file their claims "*at any time* after removal costs have been incurred."  PSC Opp'n [Rec. Doc. 3186] at 25.  The *Busan* court (erroneously) held that "§§ 2702(b)(1) and 2717(f)(2) permit *only* the United States, a State, or an Indian tribe to bring an action at any time to recover removal costs.  *All other claimants* seeking damages or recovery costs must first present their claims to the responsible party, pursuant to § 2713."  557 F. Supp. 2d at 1061 (emphasis added).

The subchapter referred to in the last sentence of Section 2717(f)(2) includes OPA's Section 2713 presentment requirement at Section 2713.  Section 2717(f)(2), therefore, provides a three-year statute of limitations period for claims for removal costs starting from the completion of the removal action, even if any removal costs were incurred more than three years earlier, but only if the claim meets the presentment requirements to commence an action "under this subchapter" in the first place.  Section 2717(f)(2) does not allow claimants to circumvent Congress' intention that all such claims first be presented to the responsible party before invoking the judicial process.

Moreover, contrary to Alabama's contentions, OPA's statute of limitations clause does not provide that at the moment "[o]il entered Alabama's waters on May 8, 2010[,]" Alabama could "march directly into court to sue."  Ala. Opp'n [Rec. Doc. 3203] at 23.  Section 2717(f)(2) requires a plaintiff to have actually incurred some removal costs prior to filing suit.  Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 17 (citing *In re Dant & Russell, Inc.*, 951 F.2d 246, 249-250 (9th Cir. 1991)).  Requiring costs to be incurred *before* either presenting a claim to or suing a responsible party, instead of haggling over hypothetical costs, is consistent with general requirements that litigants have ripe claims.  None of the Bundle C Plaintiffs disputes this,[7] and none have shown that they could bring such claims in any event.

Removal costs are incurred when *taking actions* to contain or remove oil or as may be necessary to minimize or mitigate damages to public health or welfare.  33 U.S.C. § 2701(31),

---

[7]    Louisiana merely contends, in a footnote, that this reading renders Section 2702(b)(1) redundant.  La. Opp'n [Rec. Doc. 3213] at 14 n.12.  Section 2702(b)(1) refers to the costs that are recoverable, while Section 2717(f)(2) clarifies that, *after incurrence of some removal costs*, a party may seek declaratory relief.  33 U.S.C. § 2717(f)(2).  Thus, a claimant need not wait until the removal action is completed to bring a properly presented and rejected claim in court, but must have incurred at least some removal costs.  This reading is the only reading that gives meaning to each provision of OPA, while Louisiana's reading would essentially render the presentment requirements in Section 2713(a) superfluous.

(30).  Neither Alabama nor Louisiana seriously disputes that their complaints are devoid of facts

showing that removal costs were incurred and that such costs were incurred under State law.  *See*

Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 26-27.  Alabama does not

contest this at all, and Louisiana merely points to the same vague and conclusory allegations of

its Amended Complaint and contends without explanation that they are sufficient to state a

claim. La. Opp'n [Rec. Doc. 3213] at 16-17.  The basic pleading obligation that is a predicate to

any OPA claim cannot be satisfied with mere conclusory allegations—particularly when the

necessary allegations relate to activities the *plaintiff* itself has undertaken.  *In re Great Lakes*

*Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010); *see also Kushindana v. Blue Ctr,*

*Inc.*, No. 10-00472-FJP-DLD, 2010 WL 4977499, at *1 (M.D. La. Oct. 20, 2010), *report and*

*recommendation adopted by* 2010 WL 4977110 (M.D. La. Dec. 2, 2010) ("Conclusory

allegations are insufficient to establish jurisdiction.") (citation omitted).[8]

Alabama further argues that OPA Section 2713(b) makes an exception to the presentment

requirements for claims for removal costs made by a State's Governor.  Ala. Opp'n [Rec. Doc.

3203] at 22.  Section 2713(b) provides only that in certain cases "[c]laims for removal costs or

damages may be presented first to the [Oil Spill Liability Trust Fund]."[9]  Section 2713(c), on the

---

[8]    Alabama contends that only BP has standing to assert presentment as a defense because only BP has established a claims facility.  Ala. Opp'n [Rec. Doc. 3203] at 26-27.  Nothing in OPA supports this contention.  The Coast Guard designated BP as the responsible party required to create a claims facility under § 2714.  Ala. Am. Compl. [Rec. Doc. 1872] ¶ 207.  Nothing in OPA requires other potentially responsible parties to establish a claims facility.  33 U.S.C. §§ 2709, 2714.  It is consistent with the goals of the presentment requirement to have only one claims processing system, so that claims can be quickly and efficiently processed and to avoid the risk of partial payment or double recovery.

[9]    These exceptions further evidence that OPA treats local government entities like any other private claimant.  Claimants satisfying the presentment requirement may also elect to go to the Oil Spill Liability Trust Fund in lieu of court.  33 U.S.C. § 2713(c).  The statute provides only a few exceptions for claims that "may be presented first to the Fund."  *Id.* § 2713(b)(1).  While the PSC does not rely on these exceptions, they do not apply to claims filed in court or to

other hand, states that a plaintiff may only go to court "[i]f a claim is presented in accordance with *subsection (a)*" *and* the claim is denied or not settled within 90 days.  *Id.* § 2713(c) (emphasis added).  Subsection (a) requires "all claims" be presented first to the responsible party. *Id.* § 2713(a).  Subsection (c) makes no reference to the exceptions to subsection (b) with respect to claims brought in court.  Thus, this provision does not eliminate the States' presentment requirements prior to filing suit.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

C.   **Louisiana Fails To State A Claim Under OPA Or Under The Declaratory Judgment Act.**

1.   **Louisiana fails to sufficiently allege presentment.**

Louisiana argues that it has properly alleged presentment, because it has purportedly "previously presented claims to BP for voluminous removal costs" including "increased costs of public services, loss of revenues and earning capacity, property damages, and other damages." La. Opp'n [Rec. Doc. 3213] at 12 (citing La. First Am. Compl. ¶ 144).  Louisiana's "other damages" purportedly include "lost royalties and severance taxes associated with shut in wells . . . claims for lost fishing license revenue . . . claims for transportation infrastructure repairs . . .

_____

*local* government entities.  The *Busan* court's erroneous reading of the statute, which the PSC asks this Court to adopt, however, creates new exceptions to the presentment requirements not otherwise provided by the statute.  This the Court cannot do.  *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 405-06 (5th Cir. 2008) (rejecting request to find "implicit" exemption under statute "wholly apart from the narrow, conditional, and explicit exceptions enumerated" as it would make those "explicit, conditional exceptions superfluous"); *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 396 (5th Cir. 2005) (declining to "add an exception to the statute" and finding writing requirement to show transfer of copyright was not met by internal memorandum).

costs to repair the harm to the State's tourism industry . . . claims to address seafood safety and response; response costs; and claims associated with coastal restoration projects." *Id.* These allegations are baldly insufficient.

As Louisiana itself recognizes, "[t]o properly 'present' a claim within the meaning of §2713(a) requires 'some precision of the nature and extent of the damages alleged and of the amount of monetary damages claimed.'" La. Opp'n at 12 n.9 (quoting *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993)). In order to satisfy OPA's presentment requirement, "the claim presented must inform the responsible party with some precision of the nature and extent of the damages alleged and of the amount of monetary damages claimed. Otherwise, the responsible party will be unable to make an informed offer of its own, unable to engage in meaningful substantive negotiations, and thus unable to settle the matter by agreeing to a final amount." *Johnson*, 830 F. Supp. at 311; *Gabarick v. Laurin Mar. (Am.) Inc*., No. 08-4007, 2009 WL 102549, at *2-3 (E.D. La. Jan 12, 2009) (same); *Turner v. Murphy Oil USA, Inc*., No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov 21, 2007) (same). For this reason, both the courts and Coast Guard regulations define "presentment" as including *at least* "a general description of the nature and extent of the impact of the oil spill and the associated damages, a list of the damages with a 'sum certain' attributed to each type of damage listed, and evidence to support the claim." *Johnson*, 830 F. Supp. at 311; 33 C.F.R. §§ 136.105, 136.109. Louisiana's Amended Complaint fails to adequately allege any of these elements for proper presentment.

Not only is the Amended Complaint lacking in the necessary allegations to determine if the claims meet the presentment requirements, but because Louisiana has the burden of proving its claims are properly before the Court, Louisiana cannot rely on its bald conclusory statements in any event. Louisiana asserts that Rule 8 of the Federal Rules of Civil Procedure only requires

"the State to allege the fact of compliance with the OPA presentment procedure," and that the Court should assume its allegations to be true. La. Opp'n at [Rec. Doc. 3213] 12-13. But, as discussed in Anadarko's Motion to Dismiss Louisiana's Complaint (at 22-25 [Rec. Doc. 2645]), this is a jurisdictional fact of which Louisiana bears the burden of *proof*. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001). When assessing jurisdictional allegations, the court is not required to "credit conclusory allegations." *Id*. at 869. As described in *Johnson*, claims, when properly presented, would have sufficient information to promote settlement, rather, as here, waste time seeking more information as to the basis of the claim. 830 F. Supp. at 311. Louisiana's apparent steadfast refusal to provide the required information calls into question whether it can, in fact, make the required showing. *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658 (E.D. Tex. 2006) ("[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.'") (quoting *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 43 (6th Cir. 1988)) (internal quotation omitted).

Moreover, Anadarko referenced statements by BP indicating that Louisiana had not, in fact, met the presentment requirements, and Louisiana makes no effort to dispute the questions raised. *See Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973, 976 (5th Cir. 1987) ("If the defendant challenges the plaintiff's jurisdictional allegations, the plaintiff has the burden to prove jurisdiction.") (citations omitted).

2.       **Louisiana's concerns about issue preclusion and claim splitting are unfounded.**

Louisiana argues that, despite not complying with OPA's presentment requirement and having brought claims for speculative future damages, it still must bring all claims that it may ever have *now* or risk forfeiting them *forever*. La. Opp'n [Rec. Doc. 3213] at 15-16. Louisiana

admits, however, that preclusion is a problem only for claims that "could have been advanced" in earlier litigation.  La. Opp'n [Rec. Doc. 3213] at 15; *see United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (claim preclusion prohibits a litigant from asserting "any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action").  Because of their jurisdictional defects, however, unpresented claims and claims for speculative future damages are not claims that can be advanced at this point.  Thus, they are not claims Louisiana will be barred from bringing in the future, if ever.

Congress anticipated that, after a claimant properly litigates a claim for removal costs or damages, other claims may accrue or ripen.  Accordingly, OPA entitles a prevailing claimant to "a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages."   33 U.S.C. § 2717(f)(2).  If Louisiana were correct that it had to bring all conceivable claims right now, whether or not they have ripened or accrued, OPA's declaratory-judgment provision would be needless, as there would never be "any *subsequent* action or actions to recover *further* removal costs or damages."  *Id.* (emphasis added).

### 3.       Louisiana's claims for declaratory judgment must be dismissed.

The Declaratory Judgment Act does not excuse Louisiana from complying with OPA's mandatory (and jurisdictional) presentment requirements.  Moreover, Louisiana cannot avail itself of the declaratory relief generally provided by the Declaratory Judgment Act because it is displaced by OPA's specific provision for declaratory relief.  In accordance with OPA, Louisiana must first prevail on the merits of a claim for damages or removal costs *that was properly presented* before it may obtain any declaratory relief.

Louisiana's principal response is that it *has* adequately alleged presentment[10] and that it is pursuing declaratory relief, not as a "freestanding" claim, but as "tethered" to an ordinary OPA claim. La. Opp'n [Rec. Doc. 3213] at 21-22. In other words, Louisiana agrees that its access to declaratory relief stands or falls with its OPA claim for monetary relief.

Louisiana offers little defense of its Declaratory Judgment Act claim, noting only that "Anadarko has provided no case on point that forecloses the pursuit of claims under the Declaratory Judgment Act concurrently with relief in an action pursuant to OPA." La. Opp'n [Rec. Doc. 3213] at 23. Yet, Anadarko cites several cases where a Declaratory Judgment Act claim was displaced by a more specific statute and the principles that justified those decisions equally justify holding, here, that Louisiana has no right to declaratory relief apart from OPA. Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 18-21. Louisiana quotes FED. R. CIV. P. 57, which provides that a party may pursue declaratory relief notwithstanding "the existence of another adequate remedy." La. Opp'n [Rec. Doc. 3213] at 23 n.30. But, tracking the text of the Declaratory Judgment Act, FED. R. CIV. P. 57 merely negates the traditional rule that a party cannot obtain equitable relief (like a declaratory judgment) when it has other adequate remedies. *See* 28 U.S.C. § 2201 ("any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*") (emphasis added). Anadarko does not argue that Louisiana's access to declaratory relief is defeated by the availability of monetary or other equitable relief; Anadarko instead argues that the *specific* declaratory judgment provisions of

---

[10]     As explained above, *supra* at 21-22, because presentment is a jurisdictional fact, it is not sufficient for Louisiana simply to adequately allege presentment, but instead to present evidence sufficient to satisfy its burden of proof on this point.

OPA prevail over the *general* provisions of the Declaratory Judgment Act to the extent the two conflict.

### D.     Alabama Fails To State A Claim Under OPA.

Raising new facts not alleged in its complaint, Alabama contends in its Opposition that it has presented claims to BP.   Alabama "may not supplement or amend [its] complaint by presenting new facts or theories in [its] briefing in opposition to a motion to dismiss."   *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 990 (N.D. Ill. 2010) (internal citations omitted). Absent sufficient allegations in the Amended Complaint that a plaintiff has complied with this prerequisite, the Court must dismiss the claim.   *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018, at *3-*5 (N.D. Tex. Nov. 25, 2003) (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989)).   Alabama's OPA claim must be dismissed on this basis alone.[11]

Alabama concedes that a claimant must present a claim and have the claim rejected in order to bring suit.  Ala. Opp'n [Rec. Doc. 3203] at 28.  However, Alabama argues that once *one* claim has been presented and rejected, *all claims* may be filed in Court.   *Id.*   Alabama's argument contradicts the unambiguous language of the statute:  Section 2713(a) says "all" claims "shall" be presented.  33 U.S.C. § 2713(a).  It does not say "one" claim.

Alabama's reading would lead to absurd results.  The statutory language and the purposes of the presentment requirements evidence that Congress intended *each* claim to undergo the presentment process in order to encourage resolution of OPA claims without resorting to court intervention.   *See Boca Ciega Hotel, Inc.*, 51 F.3d at 238-39 (stating that the presentment requirement reflects a legislative compromise "to temper the Act's increased liability with a

---

[11]     Because Alabama has not alleged any facts in its Amended Complaint that it has complied with OPA's presentment requirement, it is unnecessary to determine whether Alabama has satisfied its burden of proof on this point.  *See, supra* at 21-22.

congressional desire to encourage settlement and avoid litigation") (citing legislative history of OPA).  If only one unreasonable or unsupported OPA claim that is rejected by the responsible party is, as Alabama contends, enough to satisfy the presentment requirement and to open the courthouse doors to *all* possible claims, then the presentment requirement would be illusory.

Alabama protests that its damages are "on-going" and it is "impossible . . . to have presented them all."  Ala. Opp'n [Rec. Doc. 3203] at 27.  But that is *exactly* why Alabama does not belong in court.  If Alabama does not have enough information or evidence to submit even a *settlement proposal* to BP, it has no basis to seek relief from this Court.  Furthermore, Alabama's unhinged reading of the statute would render Section 2717(f)(2) superfluous.  Section 2717(f)(2) allows for declaratory judgment with respect to liability in cases involving claims for removal costs.  33 U.S.C. § 2717(f)(2).  If Section 2713(c) allowed a party to bring *all potential claims* in court once one claim is rejected, this provision would have no meaning.

### E.   The PSC Fails To Sufficiently Allege OPA Claims.

#### 1.   The PSC fails to allege the requisite elements of presentment.

The PSC alleges only that "[t]o the extent required by law, and/or by consent or stipulation by BP" the local government entities "have satisfied, or will have satisfied" OPA's presentment requirements.  Local Govt. Mast. Compl. [Rec. Doc. 1510] ¶ 668.  The PSC does not even attempt to provide any support for their bare allegation.  Instead, the PSC attempts to rely entirely on the inapposite *Busan* case, which, as already argued, is both incorrectly decided and, in any event, inapplicable to local government entities.  *See, supra*, at 17-18.

#### 2.   The PSC fails to allege recoverable removal costs under OPA.

In addition to its failure even to allege presentment, the PSC fails to allege removal costs recoverable under OPA.  The PSC argues that the local governments have incurred "damage 'in the form of . . . removal costs, *including personal salary costs, overtime travel and per diem*

*expenses, costs for use of government-owned equipment and facilities,* and *actual expenses for goods and/or services supplied by contractors and/or vendors*." PSC Opp'n [Rec. Doc. 3186] at 22-23 (emphasis added) (quoting Local Gov't Mast. Compl. [Rec. Doc. 1510] ¶ 172). These are not removal costs. Removal costs are those incurred for "containment and removal of oil or a hazardous substance from water and shorelines" or for other actions "necessary to minimize or mitigate damage to the public health or welfare." 33 U.S.C. § 2701(31), (30). The costs the PSC cites are, if anything, costs for increased public services—which the PSC claims elsewhere in its complaint. 33 U.S.C. § 2702(b)(2)(E); Local Gov't Mast. Compl. [Rec. Doc. 1510] ¶¶ 116, 172 (alleging "damage in the form of costs associated with increased public services, resulting in additional administrative costs, costs of additional personnel, out-of-pocket costs incurred for material and equipment").[12]

Moreover, the PSC concedes that in order to recover removal costs a plaintiff must show that the removal costs incurred are compliant with the NCP, and also that it failed to allege this element of the claim. PSC Opp'n [Rec. Doc. 3186] at 23. The PSC can only assert that it "believe[s] that a cause of action for removal costs can be reasonably inferred as 'plausible'" from the unadorned allegation that removal costs were incurred. *Id.* But FED. R. CIV. P. 8(a) requires a plain statement that the plaintiff is entitled to relief. The Complaint is simply "devoid of facts from which the Court might infer the existence of these requirements." *Holloway v. Gaylord Chem.*, 922 F. Supp. 1154, 1159 (E.D. La. 1996).[13]

---

[12]     *See Martin v. Revere Smelting & Refining Corp.*, No. 3:03-cv-2589, 2005 WL 280326, at *2 (N.D. Tex. Feb. 2, 2005) (dismissing as "frivolous" potential claims to "recover damages under CERCLA for injuries unrelated to expenses they incurred in association with an environmental cleanup").

[13]     Courts have dismissed claims brought under CERCLA, which similarly requires compliance with the NCP, based on a failure to adequately plead that response costs were consistent with the NCP. *See Gen. Cable Indus.*, 561 F. Supp. 2d at 658-59 (granting motion to

Recognizing that its removal costs allegations do not pass even Rule 8(a)'s low bar, as a last resort the PSC requests leave to amend the Local Government Entity Master Complaint. PSC Opp'n [Rec. Doc. 3186] at 23.  But it is far too late in the day for that.  In any event, given that the PSC fails to identify *any* actual removal costs incurred by local government entities, there is no reason to believe that an amendment would be anything but futile.

## III. EVEN IF THE BUNDLE C PLAINTIFFS' STATE AND GENERAL MARITIME LAW CLAIMS WERE NOT BARRED, THEIR TORT CLAIMS AGAINST ANADARKO FAIL.

The PSC's theory that Anadarko may be held directly liable for their alleged damages fails as a matter of well-established law.  Courts in the Fifth Circuit routinely dismiss such claims against non-operating defendants like Anadarko because non-operating defendants lack the operational control required to hold them liable.  The PSC and Alabama, therefore, try a new tack.  They abandon their direct liability theories of their Complaint, and argue for the first time in their Oppositions that Anadarko is *vicariously* liable for BP's torts as a *joint venturer*.[14]  This fallback theory does not avail them, however, because operational control is the touchstone for liability *on either an direct or an indirect liability theory*.  The negligence claims against Anadarko, therefore, still must be dismissed.

---

dismiss CERCLA claim where plaintiff "failed to allege any similar factual basis for its conclusory allegation that it expended response costs consistent with the [NCP]") (citing *McGregor*, 856 F.2d at 42); *see also Holloway*, 922 F. Supp. at 1159-1160 (finding proposed amended complaint inadequate where it "nowhere cites any specific costs incurred by any individual; nor does it claim that these costs, if any, were consistent with the [NCP]").

[14]    The new theory of Alabama and the PSC attempts to pick up a similar theory espoused by the PSC for the first time during the May 26, 2011 oral argument on the Motions to Dismiss the Master Complaints for Pleading Bundles B1, B3 and D1.  Before that argument, the PSC had expressly and repeatedly disclaimed any intention to assert a vicarious liability theory against Anadarko.  *See, e.g.,* PSC B1/B3 Opp'n [Rec. Doc. 1803] at 9.

A. **The Bundle C Plaintiffs' Complaints Allege Only Direct-Liability Negligence Claims Against Anadarko, Which They Have Now Abandoned.**

Alabama and the PSC no longer contend that the allegations of their complaints show that Anadarko exercised operational control over BP or its contractors' operations on the *Deepwater Horizon* and the Macondo Prospect.  As they must, they concede that, as is standard in the industry, the Operating Agreement delegates "sole management and control of the *day-to-day* operations" to BP and expressly disclaims "any intention of the parties to form a partnership or otherwise render the parties joint and severally liable for third party injuries."  Ala. Opp'n [Rec. Doc. 3203] at 59.  Indeed, Article 22.1 of the Operating Agreement expressly provides:

> The obligations, duties, and liabilities of the Parties under this Agreement are several and not joint or collective, and . . . nothing in this Agreement shall be construed to create a partnership, *joint venture*, association, or other form of business entity recognizable in law *for any purpose*.

The Fifth Circuit has consistently held that only a right of "operational control" gives rise to liability to third parties, and that "operational control" requires "direct supervision over the *step-by-step* process of accomplishing the work."  *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 644-45 (5th Cir. 1988), *cert. denied*, 109 S. Ct. 3190 (1989) (emphasis added) (internal citations omitted).  No matter how the PSC and Alabama contort their characterizations of the Operating Agreement, Anadarko's contractual rights to monitor well data and access rig safety information do not meet the operational control standard and have been conclusively held not to give rise to liability to third parties.  *See, e.g., Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (holding that "'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations'" is "'not enough'" to give rise to liability) (internal citations omitted).

### B.   Alabama's And The PSC's New "Joint Venture" Claims Are Improperly Raised And Utterly Meritless.

#### 1.   Plaintiffs cannot raise vicarious liability for the first time in their opposition to Anadarko's Motion to Dismiss.

Alabama and the PSC now contend that the Operating Agreement between BP, Anadarko and MOEX Offshore "was in the nature of a joint venture" and that Anadarko should be held vicariously liable for BP's torts notwithstanding Anadarko's lack of operational control over any event, operation or instrumentality allegedly giving rise to Alabama's injuries.  PSC Opp'n [Rec. Doc. 3186] at 29; Ala. Opp'n [Rec. Doc. 3203] at 59.  Their complaints do not support the new theory.  There is no allegation that the Operating Agreement creates a joint venture.  There is no allegation that Anadarko is vicariously liable as a joint venturer.  Because it is raised for the first time in response to a motion to dismiss, this new theory must be rejected.  *See Bank of Sacramento v. Stewart Title Guar. Co.*, No. 09-00771-JAM-KJN, 2010 WL 3784096, at *5 (E.D. Cal. Sept. 27, 2010).  In any event, Alabama and the PSC's new theory of Anadarko's purported liability is meritless.

#### 2.   Imposition of vicarious liability—including based on a theory of joint venture—requires a showing of operational control, which as a matter of law is absent here.

Alabama and the PSC's belated joint venture theory should be rejected for the same reason that their theory of direct liability fails:  they have not alleged facts showing that Anadarko had a joint right of operational control over the venture.

"Joint venture" liability is a type of vicarious liability.  One member of the joint venture may be held liable for the torts of a co-venturer regardless of fault.  *Woolard v. Mobil Pipe Line Co.*, 479 F.2d 557, 562 (5th Cir. 1973) ("The doctrine of joint venture, however, is one of imputed, not actual, negligence; if one of two joint venturers is negligent, then the negligence of the other is immaterial to the imposition of vicarious liability upon him.").  But,

> [i]mputation of negligence of one person, or entity, to another is allowed only when there exists between them some relation of master or superior and servant or subordinate or other similar relationship.  The relationship between them must be one invoking the principles of agency, or the persons must be cooperating in a common or joint enterprise, or the relationship between the parties must have been such that the person to whom the negligence is imputed must have had a *legal right to control* the action of the person who was actually negligent.

*Ferry v. Deeper Life Christian Church, Inc. of Tampa, Fla.*, No. 99-2955, 2002 WL 1974112, at *2 (E.D. La., Aug. 27, 2002) (citing *Aupied v. Joudeh,* 694 So.2d 1012, 1014 (La. App. 5 Cir. 1997)) (emphasis in original).  "Absent factual support of such control, vicarious liability cannot be imposed."  *Id.* (citing *Eckler v. Gen. Council of the Assemblies of God*, 784 S.W.2d 935, 939 (Tex. App. 1990)).

Under the general maritime law, "in determining whether a joint venture exists . . . [p]ertinent factors include: (1) *the existence of joint control, or a joint right of control, relevant to the vessel's operations*, (2) joint proprietary interests in the subject matter of the venture, and (3) a sharing of profits and losses."  *Hinson v. M/V CHIMERA*, 661 F. Supp. 2d 614, 619 (E.D. La. 2009) (emphasis added) (internal citations omitted).

Applying the control requirement, the Fifth Circuit and district courts in the Fifth Circuit consistently hold that a non-operating party to a minerals lease cannot be vicariously liable for the negligence of an operating party unless the non-operator has an equal right to control the enterprise.  *See Transcon. Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (non-operators to minerals lease not liable for operator's negligence), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381-82 (S.D. Miss. 1991) (collecting cases for proposition that non-operating party to minerals lease is not liable for operator's torts on a joint venture theory due to lack of joint right of control); *Burlington Res. v.*

*United Nat'l Ins. Co.*, 481 F. Supp. 2d 567, 573 (E.D. La. 2007) (non-operators "in no way" vicariously liable for operator's torts).[15]  The Fifth Circuit essentially "equates vicarious liability with control."  *Hajtman v. NCL (Bah.) Ltd.*, 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007) (citing *Barbetta v. Berm. Star*, 848 F.2d 1364, 1369 (5th Cir. 1988)).

Accordingly, even under a "joint venture" theory of vicarious liability, Alabama and the PSC are still bound by the rule of *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034 (1988), that one who lacks a right of operational control cannot be held liable for injuries resulting from the operation—*either directly or indirectly*. Because the Operating Agreement does not give Anadarko a right to joint operational control over the *Deepwater Horizon* or its activities, no joint venture was created for purposes of vicarious liability.  Alabama and the PSC's new vicarious liability theory fails for exactly the same reasons their old direct liability theory fails.

### C.    Cases Involving The LHWCA Do Not Involve Vicarious Liability And Are Entirely Inapposite.

"[T]he definition of 'joint venture' will vary with the context."  *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978).  Accordingly, "deciding whether two parties

---

[15]    *See also, e.g., James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir. 1988) (in fiduciary duty context, no joint venture where one party's involvement in wells was limited to investment of capital and another party had sole right of control in drilling and operating of wells since mutual right of control was essential element for joint venture under Texas law); *Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating working interest owner merely invested funds and enjoyed "right to receive data, . . . to elect whether to continue participation," and to have access to the site where there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co., Inc.*, 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where proof showed that working interest owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (non operator not vicariously liable for operator's torts as joint venturer where proof merely showed that defendants invested by paying costs of drilling well but did not participate in actual drilling, operation and control of the well).

are jointly liable in tort because they are joint venturers" requires use of a different standard than deciding whether parties are joint venturers for other purposes. *Id.* at 1208 (internal citations omitted). Alabama and the PSC do not heed that fundamental rule here. To support their new theory that Anadarko may be held vicariously liable as a joint venturer, Alabama and the PSC rely entirely on cases that arise in a very different context. Chief among those cases is *Davidson v. Enstar Corp.*, 860 F.2d 167 (5th Cir. 1988). *Davidson* is inapposite because it addresses only the completely different question of whether non-operating parties should be considered "employers" under the LHWCA and therefore *immune* from tort liability for workers' injuries. *Davidson*'s special joint venture rule is crafted solely for purposes of tort immunity under the LHWCA and has no application here.

In *Davidson*, an employee injured on an oil rig sued the non-operating parties, who argued that they were entitled to an employer's immunity from tort under the LHWCA because they had entered into a joint venture with the operator. *Davidson v. Enstar Corp.*, 848 F.2d 574, 575-76 (5th Cir. 1988) ("*Davidson I*"). A first panel of the Fifth Circuit held that the non-operators were not joint venturers because they lacked joint control and expressly disclaimed any intent to create a joint venture. *Id.* at 577-79.

On rehearing, a second panel reversed the first panel's opinion, creating a special joint venture rule for purposes of defining an "employer" under the LHWCA. *Davidson,* 860 F.2d at 168 ("*Davidson II*"). The second panel held that, even though the non-operators had "relinquish[ed] most if not all control over routine operating decisions but retain[ed] some control over less routine decisions," they should nevertheless be treated as "joint venturers" entitled to the operator's immunity from tort under the LHWCA. *Davidson II,* 860 F.2d at 168

(so holding) (relying on facts as summarized here in quoted language from *Davidson I*, 848 F.2d at 576).

The Fifth Circuit has since explained that *Davidson*'s narrow deviation from ordinary joint venture principles is tailored to the unique purpose of LHWCA tort immunity.  In *Darr v. Chevron, U.S.A., Inc.,* 141 F.3d 1163, 1998 WL 197808, at *3 n.3 (5th Cir. 1998), the court explained that LHWCA immunity is based on the fact that an employer "contributes to an insurance fund, which then forms the basis for the employee's recovery."  The Court reasoned that if the operator and the non-operators "share the cost of employees by contributing to a joint account—an account that also pays the premiums to the LHWCA insurance fund—it makes no sense to allow the injured worker to seek recovery through the tort system against" the non-operators but not the operator.  *Id.*  Thus, where the LHWCA is inapplicable, *Davidson*'s special joint venture rule is also inapplicable.[16]

The *Davidson* joint venture rule has been applied *only* to dismiss tort claims of employees protected by the LHWCA against non-operators.  The Fifth Circuit has *never* used the *Davidson* rule to hold non-operators vicariously liable for the torts of an operator.  Indeed, every single case that Alabama and the PSC cite holds non-operating parties *not liable* under the LHWCA.  *See* Ala. Opp'n [Rec. Doc. 3203] at 60-64 (citing *Miller v. Slam Offshore*, No. 96-1390, 1997 WL 537686 (E.D. La. Aug. 22, 1997); *Darr,* 1998 WL 197808; *West v. Kerr-McGee Corp.*, 586 F. Supp. 493 (E.D. La. 1984), *rev'd, on other grounds,* 765 F.2d 526 (5th Cir. 1985);

---

[16]     It is notable that the trial court in *Darr* originally dismissed the plaintiff's claims without even considering joint venture or LHWCA immunity on the ground that the non-operator owed no duty to plaintiff, because plaintiff failed to allege or show that the non-operator retained or exercised any operational control over the platform at any time relevant to plaintiff's injury. *Darr v. Chevron U.S.A., Inc.*, No. 96-2818, 1997 WL 470151, at *3 (E.D. La. Aug. 12, 1997) (Vance, J.) ("[T]his Court finds that there are no genuine issues of material fact in dispute, and it concludes that EOG owed no duty to plaintiff because it did not own, operate, occupy, control, or perform any work on the platform on the day of Mr. Darr's accident.").

*Taylor v. Getty Oil Co.*, 637 F. Supp. 886, 889 (E.D. La. 1986); *Heavin v. Mobil Oil Exploration. & Prod. Inc.*, 913 F.2d 178 (5th Cir. 1990); *Parker v. McDermott, Inc.*, Civ. A. No. 89-4269, 1990 WL 223011 (E.D. La. Dec. 19, 1990)).[17]   Outside of the LHWCA context the Fifth Circuit has held that an oil and gas operating agreement does *not* create a joint venture.  *See, e.g., Norman v. Apache Corp.*, 19 F.3d 1017, 1024-25 (5th Cir. 1994) (holding that operating agreement does not create joint venture giving rise to fiduciary duty); *see also Crosby-Miss. Res. Ltd. v. Saga Petroleum U.S., Inc.,* 767 F.2d 143, 147 (5th Cir. 1985) (operating agreement did not create joint venture between operator and non-operating interest owners).

In sum, the Court should disregard Alabama's and the PSC's baseless contention that *Davidson*—or any other case in the Fifth Circuit—finds non-operators vicariously liable for injuries to third parties on a joint venture theory.  Similarly, their unfounded assertion that there is a "wealth of controlling jurisprudence/authorities determining liability of non-operators for third party damages" is flatly wrong.  Ala. Opp'n [Rec. Doc. 3203] at 60; *see also* PSC Opp'n [Rec. Doc. 3186] at 30-36.  A right of operational control is the essential element of both direct and indirect theories of liability to third parties, and Alabama and the PSC's new joint venture theory does not save their negligence claims against Anadarko.

## IV.   THE PSC'S NEW ULTRAHAZARDOUS ACTIVITY THEORY MUST BE REJECTED.

The Bundle C Plaintiffs contend that the rule of *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309 (1927), should not apply to their claims under maritime law or state law.

---

[17]       *See also Champagne v. McDermott, Inc*., No. 91-1221, 1992 WL 178661 (E.D. La. Jul.17, 1992) (non-operators immune from tort liability under the LHWCA); *Moore v. Phillips Petroleum Co*., No. 87-5639, 1989 WL 38716 (E.D. La. Apr. 17, 1989) (same); *Baker v. Chevron U.S.A., Inc.*, No. 92-2346, 1993 WL 8300 (E.D. La. Jan. 8, 1993) (same).

Their arguments on this point have largely been addressed in prior briefing.[18]  In addition to the arguments already before the Court, the PSC contends for the first time in its opposition that the controlling rule of *Louisiana ex. rel. Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir. 1985) (en banc), should be disregarded because "deepwater drilling qualifies as ultrahazardous activity, as it creates a high degree of risk to persons, land and chattels, and poses special and different challenges not faced on land or in shallow water."  PSC Opp'n [Rec. Doc. 3186] at 27.

The PSC cites no case for the proposition that the rule of *Robins Dry Dock* does not apply to ultrahazardous activities or explain why this would be so.  There is no such case because, as argued in full in Anadarko's Reply to PSC's Omnibus Opposition to the Motions to Dismiss the Bundle A Complaints [Rec. Doc. 1982] at 6-11, the general maritime law does not recognize any strict liability cause of action for injuries arising from ultrahazardous activities.[19]  Even if the general maritime law recognized the cause of action, offshore drilling is not ultrahazardous.  *See, e.g., Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (1987) (applying Louisiana law). Accordingly, the PSC's argument must be rejected.

---

[18]     *See, e.g.,* Anadarko's Consolidated Reply to PSC's Omnibus Oppositions to Defendants' Motions to Dismiss the Master Complaints for Pleading Bundles B1 and B3 [Rec. Doc. 2208] at 20-23.

[19]     *See In re Complaint of Weeks Mar., Inc.*, No. 04-494(FLW), 2005 WL 2290283, at *3, *4 n.2 (D.N.J. Sept. 20, 2005), *aff'd*, 270 Fed. Appx. 97 (3d Cir. 2008) ("[T]here is no strict liability cause of action pursuant to federal maritime law," and therefore, "even if New Jersey were to recognize pile driving as an abnormally dangerous activity, such a claim would likely be preempted by federal maritime law.") (citation omitted); *In re Great Lakes Dredge & Dock Co.*, No. 92 C 6754, 1996 WL 210081, at *5 (N.D. Ill. Apr. 26, 1996) ("[F]ederal maritime law, which governs the present admiralty proceeding, does not recognize the doctrine of strict liability for abnormally dangerous or ultrahazardous activity."); *see also EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715, 721–22 (1st Cir. 1984) (imposing a rule of strict liability for the carriage of ultrahazardous materials would "be inconsistent with established principles of general maritime law"); *Actiesselskabet Ingrid v. Cent. R.R. Co. of N.J.*, 216 F. 72, 78-83 (2d Cir. 1914) (rejecting applicability of strict liability principles in case of vessel that exploded while transporting dynamite).

## V.      EVEN IF IT APPLIED, THE BUNDLE C PLAINTIFFS HAVE NO CLAIMS UNDER STATE LAW.

### A.      LOSPRA Is The "Exclusive" Remedy For Oil Spills Under Louisiana Law.

As Anadarko explained in its Motions to Dismiss the Alabama and Louisiana Amended Complaints [Rec. Doc. 2645-1] at 61, the Louisiana Oil Spill Prevention and Response Act ("LOSPRA") is "exclusive and shall supersede *any other liability provisions* provided by any other applicable state law."[20]  LA. REV. STAT. ANN. § 30:2491(A) (emphasis added).  Louisiana contends that LOSPRA does not preempt other state laws regarding oil spills, because this provision relates solely to "the limitations of liability and immunities provided in this Chapter." La. Opp'n [Rec. Doc. 3213] at 25 (quoting LA. REV. STAT. ANN. § 30:2491(A)).  The State also contends that, as further support for its reading of LOSPRA, the Louisiana legislature expressly removed the term "liability" from Section 30:2496, which provides that "[t]he provisions of this Chapter shall be the *exclusive authority* on oil spill prevention, response, removal and the limitations of liability."  LA. REV. STAT. ANN. § 30:2496 (emphasis added).  Although Louisiana cites to no legislative history to explain why the State legislature may have removed the term "liability," any question as to whether the exclusivity provision in Section 30:2491 is limited only to the limitations on liability provisions is answered by the next sentence of LA. REV. STAT. ANN. § 30:2491, which states:  "[t]he provisions of this Chapter shall supersede, but not repeal, any conflicting laws of this state."  If the provision related solely to limitations of liability, as Louisiana argues, it is difficult to imagine a conflicting law of the state.

---

[20]      The PSC asserts claims under Florida and Texas law, and Alabama brings claims under its own laws.  Yet, if federal law were somehow not exclusive and state law could conceivably apply, only Louisiana's law would apply because Louisiana is the adjacent state under OCSLA. Notwithstanding, Anadarko respectfully reserves the right to argue that the PSC has not stated claims under Alabama, Texas and Florida law, if the Court concludes that those states' laws apply.

Moreover, nothing in the description of the amendments or the legislative findings reflect the legislature intended to limit the exclusive provisions of LOSPRA. LOSPRA provides: "Any conflicting applicable federal law shall take precedence over this Chapter." LA. REV. STAT. ANN. § 30:2491(A). The state legislature also clearly indicated that LOSPRA is intended only to "support and complement" OPA, not to provide alternative routes of recovery for the same damages. LA. REV. STAT. ANN. § 30:2453(B). Louisiana does not dispute that the penalties for response costs sought under the Louisiana Environmental Quality Act and the costs and damages sought under common law and the Civil Code are also recoverable under OPA.[21] *See, e.g.,* La. Opp'n [Rec. Doc. 3213] at 26 (describing "overlapping remedies").

### B.   Louisiana Fails To State A Claim Against Anadarko Under LOSPRA.

Anadarko argued that Louisiana's Complaint contains only conclusory allegations in support of its LOSPRA claim, which seek the same damages as under its OPA claims, against Anadarko. Anadarko MTD Alabama/Louisiana Compl. [Rec. Doc. 2645-1] at 62-65. Louisiana does not dispute that Anadarko, as a non-operating investor in the Macondo Prospect, is not liable under LOSPRA. Further, as noted above, AE&P, as a former lessee, cannot be held liable under LOSPRA. The LOSPRA claims must be dismissed.

---

[21]   Like Alabama, Louisiana argues that, notwithstanding the OCSLA choice of law provisions and the holding in *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 493 (1987), restricting claims for water pollution to the law of the *source* state, not the *affected* state, it can seek penalties for discharges under Louisiana law. La. Opp'n [Rec. Doc. 3213] at 9-11. A "discharge," however, implies some action within Louisiana's jurisdiction. *See Golnay Barge Co. v. M/T Shinoussa,* 3 F.3d 439 (5th Cir. 1994) (per curiam) (holding that the spread of discharged oil from one place to another is not another "discharge" under OPA); *Niagara Mohawk Power Corp. v. Jones Chem. Inc*., 315 F.3d 171, 178 (2d Cir. 2003) (rejecting claim that hazardous substances flowing naturally from property on which substances were first disposed onto another property constituted separate "disposal" because human activity did not cause the substances to cross property lines based on definition of disposal under CERCLA where terms "'discharge,' 'deposit,' 'injection,' 'dumping,' 'spilling,' 'leaking,' [and] 'placing'" in definition had "in common that they are set in motion by human agency"). Here, the actions Louisiana alleges resulted in the spill occurred on the OCS, making the law of the *source* federal law.

### C. The PSC Does Not Dispute that the Master Local Government Complaint Fails to State a Claim Against Anadarko Under LOSPRA.

The PSC does not dispute that the Master Local Government Complaint fails to state a claim against Anadarko under LOSPRA. *See* Anadarko MTD Local Gov't Compl. [Rec. Doc. 2218] at 27-31. In particular, the PSC fails to identify any specific allegations establishing that Anadarko is a responsible party under LOSPRA. *Id.* Further, the PSC does not dispute that LOSPRA limits local government entities to recover only certain costs, and fails to identify any allegations showing that the local government entities are entitled to relief. *Id.* Finally, the PSC does not dispute that LOSPRA provisions are inconsistent with the required procedures under OPA, including the presentment requirement. *Id.* at 34. Accordingly, OPA "take[s] precedence" over LOSPRA. LA. REV. STAT. ANN. § 30:2491(A). Indeed, the only consistent reading of OPA and LOSPRA is to find that, similar to the Texas Oil Spill Prevention and Response Act ("TOSPRA"),[22] LOSPRA merely provides an additional source of state funds for claims covered by OPA , not an additional private cause of action. *See* LA. REV. STAT. ANN. § 30:2488(C). The state fund may then seek recovery from responsible parties or from the federal fund. LA. REV. STAT. ANN. §30:2489(B). The LOSPRA claims against Anadarko must be dismissed.

### D. Natural Resources Damages Are Only Recoverable Pursuant to OPA.

The PSC seeks civil penalties under Louisiana's Wildlife and Fisheries Statute, La. Rev. Stat. Ann. §§56:40.1 *et seq.*, for damages to wildlife in Louisiana on behalf of "District

---

[22] The PSC's TOSPRA claim fails. No case supports the PSC's contention that local governments have a cause of action under TOSPRA because TOSPRA defines "damages" to include a local government's loss of taxes or costs of increased public services. PSC Opp'n [Rec. Doc. 3186] at 18 (citing TEX. NAT. RES. CODE § 40.003(6)(a)(ii)). TOSPRA's only provision allowing recovery by any person "other than the state" is through claims to the state fund, not courts. TEX. NAT. RES. CODE § 40.157; *cf. id.* §§ 40.159, 40.160, 40.162. Furthermore, review of the local government entity docket (10-9999) as of this filing shows that no Texas local government entity has even joined the voluntary master complaint—the PSC has no basis to assert a TOSPRA claim.

Attorneys of several coastal parishes in the State of Louisiana." PSC Opp'n [Rec. Doc. 3186] at 36-45. Although state law is inapplicable in this case, these claims nonetheless fail, and, as dictated by LOSPRA, OPA is the only viable claim for these types of damages, even if referred to as "penalties."

The PSC contends that LOSPRA, though it displaces much Louisiana law, preserves "claims brought by District Attorneys for the benefit of the Department of Wildlife and Fisheries." PSC Opp'n [Rec. Doc. 3186] at 39. There is a distinction between the Department and Parish District Attorneys. The Wildlife and Fisheries Statute allows the *Department*, whenever it determines a violation of the statute has occurred resulting in liability of a person for the value of injured or destroyed wildlife or aquatic life, to "demand restitution . . . for the value of such injured or destroyed wildlife or aquatic life." La. Rev. Stat. Ann. §56:40.3. While the statute also provides that the "attorney for the department, attorney general, or the district attorney of the parish in which the violation occurred" may bring the suit in the name of the State, La. Rev. Stat. Ann. §56:40.4, LOSPRA does not refer to this provision generally or to civil suits brought "in the name of the state" but to suits by the *Department*. La. Rev. Stat. Ann. §30:2491(B).

The PSC references certifications from the Department that it purports to authorize certain Parishes to bring such claims. PSC Opp'n [Rec. Doc. 3186] at 39. But, neither these certifications nor the PSC identifies any statutory provision authorizing the Department to abdicate its role to assess violations of the Wildlife and Fisheries statute to the Parish District Attorneys.

Limiting such claims to the State agency also makes sense because it is designated as a State natural resources trustee. La. Admin. Code tit. 43, pt. XXIX, § 109. Moreover, although

the Complaint does not cite to a specific violation by Anadarko, the Complaint, read in the best possible light, only alleges actions (or inaction) by Anadarko on the OCS, not in a particular parish.  Local Govt. Mast. Compl. [Rec. Doc. 1510] ¶¶252, 455, 546-547.  While the PSC contends that the claims are brought "for the benefit of the Department of Wildlife and Fisheries," the Parish District Attorneys receive 40% of the amount collected.  La. Rev. Stat. Ann. §56:40.9(B).  This is contrary to LOSPRA, which provides that the *State* recover natural resources damages.  La. Rev. Stat. Ann. § 30:2454(5)(a).

In response, the PSC contends falls back on OPA's savings clause, arguing that it preserves state laws that "impose additional liability or restrictions," and that "[b]y definition, civil penalties are not 'damages.'"  PSC Opp'n [Rec. Doc. 3186] at 38, 42.  But, this is just semantics, as the "civil penalties" being sought here are for "the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed," La. Rev. Stat. Ann. §56:40.4, and the title of the relevant Subpart of the Wildlife statute is "Civil Penalties for Restitution of Value of Wildlife and Aquatic Life."  While titles of statutory provisions may not be determinative, restitution here is a measure of damages to restore the value to the State of the lost natural resources.  Indeed, the PSC recognizes that the civil penalties that it seeks to recover on behalf of the Parish District Attorneys are basically consistent with the goal of LOSPRA "to maximize the protections of wildlife and the replenishment of wildlife" and would alleviate the burdens of the Department in attempting to recover these resources.  PSC Opp'n [Rec. Doc. 3186] at 44.  Natural resources damages under OPA similarly include the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of the damaged resources.  33 U.S.C. §2706(d).  The PSC cites to nothing to indicate these so-called penalties are somehow distinct

from the damages to natural resources being sought under OPA "[a]s a result of the Spill."  Local Govt. Mast. Compl. [Rec. Doc. 1510] ¶735.

Allowing the same recovery under the Louisiana Wildlife Statute for damages that are also recoverable under OPA would be inconsistent with federal law.  In addition to limiting recovery of natural resources damages to State trustees, OPA outlines specific procedures for assessment, recovery, and disbursement of natural resources damages.  33 U.S.C. §§2702(b)(2)(A), 2706.  More important, however, is that OPA bars double recovery for natural resource damages.  33 U.S.C. §2706(d)(3).  It would be inconsistent with OPA to allow numerous local officials to seek to recover costs for the same harms to wildlife that are to be address by the natural resources damage assessment well underway.[23]

In addition, the PSC contends that the exclusivity provision of LOSPRA only applies to the extent that the limitations of liability in LOSPRA would apply.  The PSC further asserts that the Parish District Attorneys have alleged that the limitations of liability are not applicable and, therefore, neither is the exclusivity provision.  These claims are easily rejected.  The Parish District Attorneys' claims in the Local Govt. Mast. Compl. [Rec. Doc. 1510] (¶¶727-737) do not make allegations regarding willful misconduct or violations of federal, state and local safety regulations by any party, much less Anadarko.  This is not surprising, given that the complaints filed by the Parish District Attorneys that the PSC purports have been allowed by the Department under Title 56 do not make these allegations.  *See, e.g.,* First Amend. and Supp. Pet. for Civil Penalties (Parish of Iberia), Case No. 10-cv-2996 [Rec. Doc. 2318].  Even if the Parish District

---

[23]     The PSC contends that allowing the Parish District Attorneys, in lieu of the State trustee, to recover such damages would alleviate the burdens of the Department in filing suit under Title 56.  PSC Opp'n [Rec. Doc. 3186] at 44.  OPA again provides for such a contingency.  OPA allows the Governor of the State to designate State trustees, which may include *local officials* who may act on behalf of the public, and allows for the recovery of the costs of the assessment.  33 U.S.C. §§2702(b)(2)(A), 2706(b)(3).

Attorneys were seeking to rely on an exception to the limitation of liability under LOSPRA, the application of the exception falls within the limits on liability provision, La. Rev. Stat. §30:2479, making the limitations of liability provision very much of "consequence to the claims asserted."[24]  PSC Opp'n [Rec. Doc. 3186] at 42.  Regardless of any allegation in the Complaint, the applicability of the exception would need to be proven.  It also makes little sense that a Plaintiff could so easily circumvent the limitations imposed by LOSPRA in such a manner.

## CONCLUSION

The Bundle C Plaintiffs fail to state any claims upon which relief can be granted against Anadarko Petroleum Corporation and Anadarko Exploration & Production Company LP.  For the reasons set forth herein, the Bundle C Plaintiffs' claims must be dismissed.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

/s/ James J. Dragna
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

---

[24]     The PSC also claims that, to the extent the exception to the exclusive remedies provision of LOSPRA does not apply to the claims brought by the Parish District Attorneys, the entire provision is inapplicable in any event because it applies only to "limits of liability" under LOSPRA, which apply only to damages.  PSC Opp'n [Rec. Doc. 3186] at 42.  This argument is easily dismissed.  If such were the case, then there would be no need for the exception in the first place.

Ky E. Kirby
ky.kirby@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Sandra P. Franco
s.franco@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

Dated:  August 5, 2011

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of August, 2011.



/s/ James J. Dragna
James J. Dragna

A/74460460.8