# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179 SECTION: J |
| This document applies to: *2:10-cv-04182; 2:10-cv-04183* | § § § § § § § § | **Judge Carl J. Barbier Magistrate Judge Sally Shushan** |

<u>**REPLY IN FURTHER SUPPORT OF DEFENDANT M-I L.L.C.'s MOTION TO DISMISS THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT**</u>

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 415-3000
Facsimile:    (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

August 5, 2011

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ *Hugh E. Tanner*
     Hugh E. Tanner
     htanner@morganlewis.com
     Texas Bar No. 19637400
     1000 Louisiana, Suite 4000
     Houston, Texas  77002
     Telephone:    (713) 890-5000
     Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT M-I L.L.C.**

# TABLE OF CONTENTS

**Page**

Introduction And Summary Of Argument ................................................................... 1

Argument ................................................................................................................... 1

I.     To The Extent Alabama Has Failed To Dispute M-I's Arguments, The Court Should Treat Those Arguments As Conceded .............................................. 1

II.    OPA Displaces Alabama's General Maritime Law Claims Against M-I ............. 2

III.   Punitive Damages Are Unavailable Under The Applicable Federal Law ............ 3

IV.   Alabama Must Present Its Claims To The Responsible Parties ........................... 5

         A.     The Presentment Requirement Is Jurisdictional ...................................... 5

         B.     OPA's Plain Language Clearly Requires Alabama To Present "All Claims For Removal Costs" To The Responsible Parties ........................ 7

         C.     Because Alabama Has Sued M-I Under Federal Law, M-I May Raise The Presentment Defense ............................................................. 11

         D.     Alabama Has Not Made A Proper Presentment ...................................... 12

V.     Even If General Maritime Law Claims Had Not Been Displaced By OPA, Alabama Could Not Recover Without Showing Physical Damage ................... 13

VI.    OCSLA Prohibits Alabama's State Law Claims ............................................... 16

VII.   Even If OCSLA Did Allow State Law To Apply, It Would Be Only Louisiana Law ................................................................................................... 17

         A.     Alabama's Nuisance Claims Should Be Dismissed ............................... 18

         B.     Alabama's Trespass Claims Should Be Dismissed To The Extent Alabama Does Not Have An Interest In The Property On Which The Oil Actually Invaded ................................................................... 18

VIII.  Even If Alabama State Law Applied To The Deepwater Horizon, Alabama's State Law Claims Should Be Dismissed .......................................... 18

         A.     Alabama's Claims Under The Alabama Environmental Management Act Should Be Dismissed ................................................ 19

         B.     Alabama's Claims Under The Alabama Water Pollution Control Act Should Be Dismissed ...................................................................... 21

         C.     Alabama's Claims Under The Alabama Air Pollution Control Act Should Be Dismissed ...................................................................... 22

         D.     Alabama's Claims Under The Alabama Hazardous Wastes Management Act Should Be Dismissed ................................................ 23

         E.     Alabama's Claims Under The Alabama Solid Waste Disposal Act Should Be Dismissed ...................................................................... 23

**TABLE OF CONTENTS**
(continued)

**Page**

IX.     Alabama Has Not Disputed M-I's Motion As To Punitive Damages ................. 24

Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## CASES

*Abundiz v. Explorer Pipeline Co.*,
  Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H,
  2003 WL 23096018, at *1 (N.D. Tex. Nov. 25, 2003) ............................................................6

*Ainsworth v. Shell Offshore, Inc.*,
  829 F.2d 548 (5th Cir. 1987) .............................................................................................15

*Am. River Transp. Co. v. Kavo Kaliarkra SS*,
  206 F.3d 462 (5th Cir. 2000) .............................................................................................13

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).................................................................................................12, 21

*Atlantic Sounding Co. v. Townsend*,
  129 S. Ct. 2561 (2009).........................................................................................................4

*Bell. Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................12, 21

*Boca Ciega Hotel Inc. v. Bouchard Transp. Co.*,
  51 F.3d 235 (11th Cir. 1995) ...................................................................................5, 6, 7, 11

*In re Burnett.*,
  635 F.3d 169 (5th Cir. 2011) .................................................................................................9

*Chowdhury v. I.N.S.*,
  249 F.3d 970 (9th Cir. 2001) ...........................................................................................9, 10

*Clausen v. M/V New Carissa*,
  171 F. Supp. 2d 1127 (D. Or. 2001) .......................................................................................2

*Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*,
  71 F.3d 198 (5th Cir. 1995) ................................................................................................13

*Coulter v. Texaco, Inc.*,
  117 F.3d 909 (5th Cir. 1997) ..........................................................................................15, 16

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)............................................................................................................3

*Gabarick v. Laurin Mar. (Am.) Inc.*,
  623 F. Supp. 2d 741 (E.D. La. 2009) ...................................................................................2, 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Gulf Offshore Co. v. Mobil Oil Corp.*,
    453 U.S. 473 (1981) ............................................................................16

*Hallstrom v. Tillamook Cnty.*,
    493 U.S. 20 (1989) ...........................................................................5, 11

*Henderson v. Shinseki*,
    131 S. Ct. 1197 (2011) .........................................................................5

*Hercules Carriers, Inc. v. Florida*,
    720 F.2d 1201 (11th Cir. 1983) (Clark, J., specially concurring) ...........................15

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
    284 F. Supp. 2d 15 (D.D.C. 2003),
    *aff'd*, 98 F. App'x 8 (D.C. Cir. May 27, 2004) ...........................1, 21, 23

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ...........................................................6

*Lanier v. Sallas*,
    777 F.3d 321 (5th Cir. 1985) .................................................................4

*Leboeuf v. Texaco*,
    9 F. Supp. 2d 661 (E.D. La. 1998) ..........................................................7

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ...............................................................6, 7

*Louisiana ex rel Guste v. M/V Testbank*,
    752 F.2d 1019 (5th Cir. 1985) ...............................................................15

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
    944 F. Supp. 476 (E.D. La. 1996) ...........................................................6

*Med. Ctr. Pharmacy v. Mukasey*,
    536 F.3d 383 (5th Cir. 2008) ................................................................10

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
    924 F. Supp. 1436 (E.D. Va. 1996),
    *aff'd* 122 F.3d 1062 (4th Cir. 1997) ........................................................2

*Pennzoil Producing Co. v. Offshore Express, Inc.*,
    943 F.2d 1465 (5th Cir. 1991) ...............................................................13

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Res. Mooring Inc. v. Am. Com. Barge Line, LLC,*
    251 F.3d 1069 (5th Cir. 2001) ...................................................................................13

*Rutherford v. Louisiana,*
    Civil Action No. 10-1987, 2011 WL 692031,
    at *1 (E.D. La. Feb. 17, 2011) ................................................................................21

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship,*
    234 F.3d 58 (1st Cir. 2000) ............................................................................2, 3, 4

*Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.,*
    257 F.3d 449 (5th Cir. 2001) .....................................................................................4

*In re Taira Lynn Marine Ltd. No. 5, LLC,*
    444 F.3d 371 (5th Cir. 2006) ...................................................................................13

*Tanguis v. M/V Westchester,*
    153 F. Supp. 2d 859 (E.D. La. 2001) ........................................................................2

*Tosco Corp. v. Koch Indus., Inc.,*
    216 F.3d 886 (10th Cir. 2000) .................................................................................14

*United States v. $92,203.00 in U.S. Currency,*
    537 F.3d 504 (5th Cir. 2008) .....................................................................................9

*United States v. M/V Cosco Busan,*
    557 F. Supp. 2d 1058 (N.D. Cal. 2008) ...........................................................8, 9, 11

**STATUTES AND OTHER AUTHORITIES**

26 U.S.C. § 9509 .......................................................................................................7

33 U.S.C. § 2701 .......................................................................................................7

33 U.S.C. § 2702 ..................................................................................................9, 10

33 U.S.C. § 2713 ................................................................................................. passim

33 U.S.C. § 2717 ..................................................................................................9, 10

33 U.S.C. § 2751 .......................................................................................................2

42 U.S.C. § 9601 .....................................................................................................14

42 U.S.C. § 9607 .....................................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

43 U.S.C. § 1331 ....................................................................................................16

43 U.S.C. § 1333 ....................................................................................................17

33 C.F.R. § 136.103 .................................................................................................8

Ala. Code § 6-5-121 ..............................................................................................18

Ala. Code § 22-22A-2 ...........................................................................................19

Ala. Code § 22-22A-5 ......................................................................................19, 20

Ala. Code § 22-22A-9 ...........................................................................................19

Ala. Code § 22-27-7 ..............................................................................................23

Ala. Code § 22-27-11 ............................................................................................23

Ala. Code § 22-28-22 ............................................................................................22

Ala. Code § 22-30-19 ............................................................................................23

135 Cong. Rec. H7954 (1989) ..........................................................................10, 11

H.R. Rep. No. 101-653 (1990) (Conf. Rep.) ........................................................2, 3

Sturla Olsen, *Comment, Recovery for the Lost Use of Water Resources:* M/V Testbank *on
the Rocks?*, 67 Tul. L. Rev. 271 (1992) ..............................................................14

## INTRODUCTION AND SUMMARY OF ARGUMENT

A well-defined and comprehensive statutory framework governs liability arising from oil spills.  In pursuing its claims, Alabama cannot ignore that this area of the law is greatly codified and that those applicable statutes govern its claims.

## ARGUMENT

### I.   To The Extent Alabama Has Failed To Dispute M-I's Arguments, The Court Should Treat Those Arguments As Conceded.

In its opposition to the various defendants' motions to dismiss ("Opp."), Alabama ("Alabama or "the State") states that it "cannot possibly address every variation of every argument from every Defendant in a 75-page brief."  Opp. 1.  As a matter of law, Alabama is required to respond to each argument raised by each Defendant.[1]  This is a problem of its own making.  Alabama chose to sue multiple defendants, and Alabama chose to pursue a plethora of claims against each defendant.  Alabama cannot now complain that it is too challenging to defend its claims.  Alabama had the option to file individual responses to each motion to dismiss, which would have given it 50 pages to respond to each motion (the same length as each party had to support its motion to dismiss).  *See* May 6, 2011 Stipulated Order (Dkt. No. 2273) ¶ 7.  Moreover, Alabama used only 67 of its available 75 pages—its decision not to contest certain arguments raised by M-I is not based on a lack of space in which to do so.  To the extent that Alabama has failed to dispute a ground M-I made in its motion to dismiss Alabama's first amended complaint ("M-I MTD"), the Court should deem that argument conceded by Alabama and grant M-I's motion to the extent not disputed.

---

[1] *See, e.g., Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted), *aff'd*, 98 F. App'x 8 (D.C. Cir. May 27, 2004).

## II.   OPA Displaces Alabama's General Maritime Law Claims Against M-I.

Alabama's interpretation of the Oil Pollution Act of 1990 ("OPA") makes sense only if one selectively reads the statute.  Section 2751(e) states that "*[e]xcept as otherwise provided in this Act*, this Act does not affect . . . admiralty and maritime law."  33 U.S.C. § 2751(e) (emphasis added).  Alabama interprets this language as indicating that OPA displaces no maritime law claims, but in doing so, it overlooks key words of the section:  "*except as otherwise provided in this Act*."  This language makes it clear that Congress intended to displace maritime law to the extent that OPA provides recovery.  Alabama has no response to the unanimous authority on this point from courts around the country.  *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 748 (E.D. La. 2009); *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1134 (D. Or. 2001); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001).  "[S]ection 2751 only preserves admiralty claims which are not addressed in OPA."  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd* 122 F.3d 1062 (4th Cir. 1997) (table).

Alabama's only other argument selectively quotes the legislative history.  Opp. 12-13.  But even the legislative history supports M-I's position.  As Alabama points out, the Conference Report for OPA states: "Therefore, there is no change in current law *unless there is a specific provision to the contrary*."  H.R. REP. NO. 101-653, at 159 (1990) (Conf. Rep.) (emphasis added); *see also* Opp. 13.  In reading this section, Alabama appears to overlook the modifier "unless there is a specific provision to the contrary."  This language demonstrates that Congress unquestionably intended OPA to displace general maritime law claims for oil spill-related damages.

The House Conference Report on § 2751 states that the Senate amendment did not have a savings provision regarding maritime and admiralty law and that "the House bill clarifies that the House bill does not affect admiralty and maritime law or the jurisdiction of the District Courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases *other remedies to which they are otherwise entitled*."  H.R. REP. NO. 101-653 at 159 (emphasis added).  Congress clearly intended to limit the savings provision to claims for "other remedies" to which claimants are entitled.

Aside from having no support in the text, structure, or history of the statute, the State's reading of OPA's savings clauses would undermine its purpose.  As the State envisions it, OPA would continue to require claimants to seek recovery of oil spilled-related damages through litigation, with all of its substantial barriers to recovery.  This reading is contrary to Congress's primary purpose in passing OPA.

## III.    Punitive Damages Are Unavailable Under The Applicable Federal Law.

As explained above and in the M-I MTD, Alabama may bring a federal claim for oil spill-related damages under OPA.  As every court directly considering the issue has held, OPA forbids the recovery of punitive damages for OPA-covered harms.  *See, e.g.*, *S. Port Marine*, 234 F.3d at 64 ("Absent from that list of recoverable damages [under OPA] is any mention of punitive damages.").  Alabama cites *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 488-89 (2008), in support of its claims against M-I for punitive damages.  Opp. 18.  Alabama's reliance on *Exxon Shipping* is misplaced.  The Supreme Court in *Exxon Shipping* was faced with the issue of whether penalties under the Clean Water Act preempted common-law punitive damages, which the Court found it did not.   *Id*. at 48-89.  M-I, however, has made no such argument here.  M-I's argument is a simple two-step analysis: (1) OPA displaces general maritime claims for oil spill-related damages and (2) punitive damages are not available under OPA.  Nothing Alabama has

said is contrary to M-I's position.  For Alabama's argument to have merit, there would have to be a free-standing cause of action under federal law for punitive damages—but there is none. *Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 460 (5th Cir. 2001) ("'A cause of action for punitive damages is not . . . separate and distinct from the underlying claim for compensatory damages.'" (quoting *Lanier v. Sallas*, 777 F.3d 321, 325 (5th Cir. 1985))).  The only federal claims Alabama can bring are OPA claims, and OPA does not afford for the recovery of punitive damages.

Additionally, Alabama directs this Court (at 17) to *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009).  But that case does not help their cause either.  In *Townsend*, the Supreme Court held that the Jones Act does not preempt a right to claim punitive damages in an action for failure to pay maintenance and cure.  *Id.* at 2575.  In *Townsend*, a common law cause of action separate from the statutory cause of action allowed the recovery of punitive damages. *Id.* at 2571 ("Nothing in the text of the Jones Act or this Court's decisions issued in the wake of its enactment undermines the continued existence of the *common-law cause of action* providing recovery for the delayed or improper provision of maintenance and cure." (emphasis added)). Here, because OPA replaces the common law cause of action, the only remedies available are those specified under OPA.

OPA displaces general maritime law claims for oil spill-related damages and punitive damages are not available under OPA.  *S. Port Marine*, 234 F.3d at 64;  *see also* Opp. 17 ("OPA itself does not provide for punitive damages.").  Therefore, Alabama's claims for punitive damages under federal law should be dismissed.

IV.     **Alabama Must Present Its Claims To The Responsible Parties.**

    A.     **The Presentment Requirement Is Jurisdictional.**

Alabama argues that under *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), OPA's presentment requirement is not jurisdictional.   Opp. 19-22.   The *Henderson* case involved benefits to veterans, not oil pollution claims, and it addressed the inapplicable question of whether "claim-processing rules" that "seek to promote the orderly progress of litigation" should be considered jurisdictional.   Nowhere did it address OPA.   *See Henderson*, 131 S. Ct. at 1203. And as the Court acknowledged, "[w]e have long applied 'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Id*. at 1206 (citation omitted).   No such presumption applies here.

According to the Supreme Court, requirements such as "[f]iling deadlines . . . are quintessential claim-processing rules," but rules that "govern[] a court's adjudicatory capacity" are jurisdictional.   *Id.* at 1202-03.   Thus, the *Henderson* case has no impact on the Supreme Court's prior holding that "[a]s a general rule, if an action is barred by the terms of the statute, it must be dismissed."   *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989).   Moreover, *Henderson* does not stand for the proposition that all rules regarding claim processing are non-jurisdictional, but instead that "there [must be a] 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson,* 131 S. Ct. at 1203 (citation omitted).   Courts are to look not for any magic language, but the context of the provision.   *Id.* at 1199.   As set forth in M-I's MTD, the context demonstrates a clear congressional intent that the presentment requirement is jurisdictional.

As the Eleventh Circuit held, the plain language of OPA demonstrates that the presentment requirement must be satisfied.   *Boca Ciega Hotel Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238 (11th Cir. 1995).   This is because a party does not have the right to "elect" to bring

suit under OPA until such time as the presentment requirements have been satisfied. *Id.* Specifically, section 2713(a) states that "all claims for removal costs and damages *shall* be presented first to the responsible party." 33 U.S.C. § 2713(a). It then states that once the claim has been presented and either denied or not settled within 30 days, then and only then can the party "elect to commence an action in court against the responsible party." *Id.* § 2713(c). This language demonstrates Congress's clear intent that a party has no authority to elect to commence a suit until it has satisfied the presentment requirement. As the *Boca Ciega* court noted, until the presentment requirement is met, the claimant does not have a ripe claim. 51 F.3d at 240; *see also Gabarick*, 623 F. Supp. 2d at 750 (stating that only "once claimants have exhausted the OPA administrative remedies" are they "then entitled, under the statutory language expressed in OPA, to pursue their claims in federal court"); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ. A. 300CV2029H, Civ.A. 303CV0508H, Civ.A. 303CV0787H, 2003 WL 23096018, at *5 (N.D. Tex. Nov. 25, 2003) ("[T]he Court holds that the Plaintiffs did not successfully meet the sum certain presentation requirement of the OPA for property damage claims. The Court therefore lacks subject matter jurisdiction for these OPA claims."); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing claims because of plaintiff's failure to first present claims to the responsible party).

In fact, this very Court has previously "agree[d] that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant." *LaRoche Indus.*, 944 F. Supp. at 477. And it is undisputed that ripeness goes to a court's subject matter jurisdiction. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("Ripeness is a component of subject matter jurisdiction, because a court has no power to decide

disputes that are not yet justiciable.").  As a claimant does not have a claim it can elect to pursue until it satisfies the presentment requirement, a court does not have subject matter jurisdiction to hear the case until then either.

Alabama cites *Leboeuf v. Texaco*, 9 F. Supp. 2d 661 (E.D. La. 1998), to support its argument.  S*ee* Opp. 21-22.  This case does not support its reasoning for two reasons.  First, *Leboeuf* misreads *Boca Ciega*.  The *Leboeuf* court stated that nothing in *Boca Ciega* indicated that the Eleventh Circuit intended the presentment requirement to be jurisdictional.  However, the last sentence of the *Boca Ciega* opinion clearly states: "the district court was correct when it granted the Appellees' motions to dismiss for lack of *subject matter jurisdiction*."  51 F.3d at 240 (emphasis added).  Second, even under this incorrect reading of *Leboeuf*, Alabama still must comply with presentment before filing suit.  The court in *Leboeuf* stated, "this Court agrees with the Eleventh Circuit that such requirements are *mandatory conditions precedent* to filing an action in either state or federal court."  9 F. Supp. 2d at 666 (emphasis added).  Thus, even if the presentment requirement is not jurisdictional, Alabama's OPA claims must still be dismissed for failing to meet a mandatory condition precedent to filing its claims.

## B.    OPA's Plain Language Clearly Requires Alabama To Present "*All* Claims For Removal Costs" To The Responsible Parties.

Alabama also argues (at 22) that under § 2713(b), governmental entities are not required to present claims.  All § 2713(b) allows is for a governor of a state to present "claims for removal costs or damages . . . *first to the Fund*."  33 U.S.C. § 2713(b)(1)(C) (emphasis added).  The Fund, of course, is the Oil Spill Liability Trust Fund established by 26 U.S.C. § 9509.  33 U.S.C. § 2701(11).  Nothing in § 2713(b) excuses presentment to the Responsible Party, but instead simply allows presentment to the Fund "first."

Section 136.103 of the Code of Federal Regulations implements the rules regarding presentment.  Subsection (a) mirrors § 2713(a) and states "claims must be presented first to the responsible party."  33 C.F.R. § 136.103(a).  Subsection (b) mirrors § 2713(b) and states certain claims may first be presented to the Fund, such as claims by governors.  *Id.* § 136.103(b). Subsection (c) then states "[i]f a claim is presented *in accordance with paragraph (a) of this section* and" the claim has been denied or not settled within 90 days, "the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund."  33 C.F.R. § 136.103(c) (emphasis added).  The language of § 136.103 makes two things clear:  (1) a State may present a claim to the Fund without presentment under subsection (b) but (2) presentment under subsection (a) is required before commencing an action in court, with no exceptions.  33 C.F.R. § 136.103.

Despite the fact that § 2713(a) clearly states removal costs must be presented to the Responsible Party, Alabama argues (at 24) this language is nullified by the last sentence of § 2717(f)(2), which states: "Except as otherwise provided in this paragraph, an action may be commenced under this subchapter for recovery of removal costs at any time after such costs have been incurred."  Alabama relies on *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058 (N.D. Cal. 2008) to argue that this sentence exempts States from OPA's presentment requirement.

In *Busan*, a cargo ship discharged more than 50,000 gallons of heavy bunker fuel into the San Francisco Bay after striking a bridge.  *See id.* at 1059.  Subsequently, the United States government filed suit under OPA, among other statutes, seeking to recover removal costs and other damages.  *See id.* at 1060.  The defendants argued the court lacked jurisdiction over the government's OPA claims because the government failed to comply with § 2713(a)'s

presentation requirement.  *See id.*  The court rejected the defendants' position, finding that the government need not comply with § 2713(a) based on the court's understanding of § 2717(f)(2), a subsection concerning limitations issues.  Section 2717(f)(2) reads as follows:

> An action for recovery of removal costs referred to in section 2702(b)(1) of this title must be commenced within 3 years after completion of the removal action. In any such action described in this subsection, the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages.  *Except as otherwise provided in this paragraph, an action may be commenced under this subchapter for recovery of removal costs at any time after such costs have been incurred.*

(emphasis added).  The *Busan* court focused on the final sentence of this paragraph.  *See* 557 F. Supp. 2d at 1060-61.  Using this sentence, the court turned to § 2702(b)(1)(A), which defines those removal costs recoverable by "the United States, a State, or an Indian tribe."  *See id.* at 1061.  Based on these two sections the court found that the reference to § 2702(b)(1) in § 2717(f)(2) created an exception to the presentment requirement of § 2713(a).  *See id.*

The court's untenable interpretation would render the inclusion of the term "removal costs" in the presentment requirement of § 2713(c) superfluous because § 2717(f)(2) does not distinguish between the claims of governmental entities and private parties.  In reaching this conclusion, the *Busan* court disregarded the structure and plain language of the statute in violation of the cardinal rules of statutory construction.  *See In re Burnett.*, 635 F.3d 169, 172 (5th Cir. 2011) (a statute is to be read as a whole to avoid rendering portions of it inconsistent or devoid of meaning); *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 509-10 (5th Cir. 2008) ("We are to read a statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous."(citation and internal quotation marks omitted)); *Chowdhury v. I.N.S.*, 249 F.3d 970, 973 (9th Cir. 2001) ("When analyzing a statute we compare the language used in different sections and read it as a whole, giving effect to each word and

making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (citation and internal quotation marks omitted)).

Section 2702(b)(1) defines removal costs depending on the entity or person incurring them. Section 2702(b)(1)(A) defines those removal costs recoverable by "the United States, a State, or an Indian tribe;" section 2702(b)(1)(B) defines removal costs recoverable by "any person." Unlike the two types of removal costs defined by § 2702(b)(1), section 2713(a) explicitly requires that "*all claims for removal costs* or damages shall be presented first to the responsible party." (Emphasis added.) Section 2713(a) does not except from the presentment requirement removal costs incurred by "the United States, a State, or an Indian tribe" under § 2702(b)(1)(A). The *Busan* court's exception is found not in the relevant section of the statute setting forth the claims procedure, section 2713, but in § 2717(f), the sole purpose of which is to set the limitations periods for OPA claims. This final sentence of § 2717(f)(2), in conjunction with the sentence before, merely clarifies that a suit for removal costs may be instituted at any time after such costs are incurred, even where additional removal costs may be incurred in the future. *See* § 2717(f)(2). In any event, it is not appropriately construed as an exception to the presentment requirement of § 2713(a). If Congress had desired to provide such an exception, it could have explicitly done so. *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 405-06 (5th Cir. 2008) (rejecting a request to find an "implicit" exception in the statute "wholly apart from the narrow, conditional, and explicit exceptions enumerated" because it would render those explicit exceptions superfluous).

The *Busan* court's exception to § 2713(a)'s presentment requirement is contrary not only to the plain language of OPA, but to congressional intent. *See* 135 CONG. REC. H7954, H7965

(1989) ("The system of liability and compensation provided for in the bill . . . is intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation.").  The court itself seemed to recognize that it was deviating from the language of the statute and congressional intent to arrive at its conclusion:

> Congress *likely recognized* that the United States, a State, or a Tribe seeking to recover removal and cleanup costs *should be allowed greater flexibility* in its recovery efforts than individuals seeking damages. Under the statutory framework, *it is entirely conceivable* that the United States, a State, or a Tribe *would prefer* to seek recovery of removal costs through the claims procedure, thus avoiding costly litigation. *One can imagine* that this option *would be attractive* in situations where removal costs are relatively small and undisputed. On the other hand, *one can imagine* situations where, given the size of the spill, the scope of the cleanup process, the complexity of the legal issues, or the intransigence of the Responsible Party, it *would be preferable* to proceed directly to a court to seek recovery costs.

*See Busan*, 557 F. Supp. 2d at 1061 (emphases added).  Had the court relied on the actual language and structure of the statute, a lengthy justification couched in conditional language would not have been necessary.  "'In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"  *Boca Ciega*, 51 F.3d at 239 (quoting *Hallstrom*, 493 U.S. at 31).  If Alabama perceives a policy shortcoming in OPA's presentment requirement, it should be addressed to Congress and properly remedied by congressional action. *See id.*  The district court's analysis was erroneous, and that is why it has not been followed by any other court, and why the Eleventh Circuit reached a different outcome.

### C.   Because Alabama Has Sued M-I Under Federal Law, M-I May Raise The Presentment Defense.

M-I is not and cannot be designated a Responsible Party.  M-I MTD 12-13.  Alabama does not dispute this.  Instead, Alabama makes the misplaced argument that "only BP has standing to assert a presentment defense."  Opp. 26.  But, as even Alabama recognizes "it may be

a meritless defense." *Id.* This is an issue of subject matter jurisdiction that can be raised any time. There is no "standing to assert subject matter jurisdiction" requirement. Alabama has not addressed the crux of M-I's argument: Alabama cannot seek claims for oil spill-related damages against M-I because M-I is not a Responsible Party. *See* M-I MTD 12-14. For this reason alone, the Court should dismiss all of Alabama's federal claims against M-I.

### D.   Alabama Has Not Made A Proper Presentment.

In its Complaint, all Alabama pleads is that it "has satisfied the presentment requirements of 33 U.S.C. § 2713(a) and (b)." Compl. ¶ 217. Alabama does not identify the specific nature of its claim, to whom it has submitted its claim, or resolution of its claim. This is inadequate—this is a "legal conclusion couched as a factual allegation" that the court is "not bound to accept as true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)) (internal quotation omitted). Alabama provides somewhat more detail in its opposition of two claims it identifies as being denied. Opp. 29. But that is similarly inadequate. Even in its briefing, Alabama identifies only one specific claim: a request for $30,785.27 for which BP paid it $13,785.57. And, from the fact that Alabama accepted a smaller amount than it requested implied that this was a settlement, not a denial of the claim as required by the statute.

Alabama asserts that there is another claim denied, but even in briefing it fails to identify with any specificity the claim and simply identifies it as a "$100+ million" claim. Opp. 29. That is far from adequate to identify which claim Alabama is alleging that BP has denied.

Alabama also argues that it need only present, and have denied, one claim, and then it can sue on all claims it has without presentment. Opp. 27-28. But this is directly contrary to the statute. Section 2713 states that "[i]f a claim is presented [and] . . . *the claim* is not settled . . . the claimant may elect to commence an action in court against the responsible party or guarantor

12

or to present *the claim* to the Fund." (Emphasis added.) The text is specific: the right to sue is limited to "the claim" in the singular, not all claims. Alabama's only response to the plain text of the statute is that doing claim-by-claim litigation is "procedurally absurd." Opp. 28. But there is nothing absurd about it. Alabama can present its claims, some of which may be denied, and then it can sue on the denied claims.

If Alabama's logic were adopted, it would serve as a roadmap for circumventing OPA's entire structure. For example, a party who is damaged could submit a frivolous claim for $1 billion, which the Responsible Party would deny, and then, under Alabama's logic, immediately file suit for the $1 billion, along with its actual claim of a few thousand dollars. This would allow for a run-around of the entire framework of claim processing by the Responsible Party. Alabama's attempt to eviscerate the claims presentment procedure should be rejected.

**V.     Even If General Maritime Law Claims Had Not Been Displaced By OPA, Alabama Could Not Recover Without Showing Physical Damage.**

The Fifth Circuit applies the Economic Loss Rule in all maritime negligence lawsuits where purely economic damages are sought and the plaintiff has suffered no physical injury to a proprietary interest. *See Res. Mooring Inc. v. Am. Com. Barge Line, LLC*, 251 F.3d 1069, 1071 (5th Cir. 2001); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *Am. River Transp. Co. v. Kavo Kaliarkra SS*, 206 F.3d 462, 464 (5th Cir. 2000) (noting "this circuit consistently applies the *Robins Dry Dock* rule to bar recovery for economic damages in negligence that are unconnected to an injury to a property interest"); *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 201 (5th Cir. 1995); *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1473 (5th Cir. 1991) (reaffirming that, "Despite stiff criticism and several potent challenges, the principle announced by Justice Holmes [in *Robins Dry Dock*] survives to this day; it is the law in this Circuit that a plaintiff in an admiralty case

cannot recover negligently inflicted economic losses where there is no physical damage to any property in which the plaintiff has a proprietary interest.").

Alabama argues that CERCLA "ensures liability under maritime lae [sic] regardless of the existence of physical damages to the claimant's property interest" and that "these statutory amendments were intended to alter not only claims brought under the Superfund Act, but claims brought under general maritime law."   Opp. 33.   As Alabama admits, it does not bring a CERCLA claim.   Opp. 33.   Alabama's only authority for this bold assertion is a nineteen year-old law student comment that has never been applied by any court.   *See* Sturla Olsen, *Comment, Recovery for the Lost Use of Water Resources:*   M/V Testbank *on the Rocks?*, 67 TUL. L. REV. 271, 300 (1992).   And even the author of that comment did not go so far as to suggest that CERCLA overrules *Robins Dry Dock* completely but only in the context of "spills of substances covered by CERCLA's provisions."   *Id.*

CERCLA does not apply to the Deepwater Horizon incident and claims arising from the incident because CERCLA specifically excludes coverage for "petroleum, including crude oil or any fraction thereof."   42 U.S.C. § 9601(14); *see also id.* § 9601(33).   This "petroleum exclusion" was intended to address oil spills.   *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 893 (10th Cir. 2000).   Moreover, the CERCLA provision Alabama cites, by its own terms, applies only to "[t]he owner or operator of a vessel," 42 U.S.C. § 9607(h), and M-I is neither. Given CERCLA's inapplicability to this litigation against M-I and the lack of supporting authority, this Court should reject Alabama's suggestion that CERCLA implicitly overrules a well-developed line of Supreme Court precedent directly applicable to the present situation.

Alabama argues under that pursuant to Judge Clark's special concurrence in *Hercules Carriers*, "*Robins Dry Dock* should be construed to apply only in cases where the plaintiff is

damaged because of injury to a party in privity with the plaintiff."  Opp. 35 (emphasis omitted).
This concurrence does not represent the law of this circuit.  *See* M-I MTD 14-15.  Even the
special concurrence Alabama cites does not interpret the law as being different.  Rather, that
concurring judge recognized that *Robins Dry Dock* has been extended to situations such as these,
but thought that extension should be reversed.  *Hercules Carriers, Inc. v. Florida*, 720 F.2d
1201, 1203 (11th Cir. 1983) (Clark, J., specially concurring).  *Robins Dry Dock* therefore
remains binding law.

Alabama also argues that "[t]o the extent that Defendants are found to have engaged in
the willful or intentional misconduct we allege . . . [they] cannot rely on [the Economic Loss
Rule] to shield them from liability for damages for economic loss."  Opp. 35.  Alabama's only
authority in support of this conclusion is the first sentence and footnote in *Louisiana ex rel Guste
v. M/V Testbank*, 752 F.2d 1019, 1020 & n.1 (5th Cir. 1985).  *Testbank* is the seminal Fifth
Circuit case applying *Robins Dry Dock*.  The introductory sentence and footnote on which
Alabama relies merely state the subject of the case—recovery for economic loss in an
unintentional maritime tort—and notes that intentional torts or "ultrahazardous activity, such as
blasting" are not before the court.  *See id.*

Finally, Alabama simply announces its conclusion that "deepwater drilling qualifies as
ultrahazardous activity, as it creates a high degree of risk to persons, land and chattels, and poses
special and different challenges not faced on land or in shallow water" without any supporting
authority.  Opp. 35.  The Fifth Circuit, applying Louisiana law, has held precisely the opposite.
*See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549-50 (5th Cir. 1987) (holding that under
Louisiana law, drilling operations on offshore platform presented risk of harm that could be
eliminated through exercise of due care and were not "ultrahazardous activity"); *see also Coulter*

15

*v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).   Alabama's unsupported and conclusory statements do not excuse the strict application of the Economic Loss Rule as the Fifth Circuit has consistently required.   The Economic Loss Rule remains good law, and even if Alabama's general maritime law claims were not displaced, they fail under this rule.

**VI.**    **OCSLA Prohibits Alabama's State Law Claims.**

This Court already has held OCSLA applies to the Deepwater Horizon oil spill. *See* Oct. 16, 2010 Order (Dkt. No. 470), 6-8.[2]   Alabama argues that while 43 U.S.C. § 1331 "extends federal jurisdiction to the Outer Continental Shelf, it does not expressly preempt state law." Opp. 6.  As the Supreme Court explained, when it enacted OCSLA, Congress declared the Outer Continental Shelf to be "exclusive political jurisdiction" of the federal government, meaning that there is "exclusive federal sovereignty over the Outer Continental Shelf."  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479-80 (1981).   "All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law."  *Id.* at 480.

Alabama ignores this text from OCSLA and instead argues only that OPA does not preempt state law.   Opp. 3-4.   But there is no conflict; the statutes do two different things. OCSLA says when state law applies.  And OPA says that it (OPA) does not affect whatever state law existed before.   Alabama argues that this Court should just ignore the OCSLA provision because it is older.   As Alabama explained, when Congress passed OPA, it repealed parts of OCSLA.   Opp. 4.   But the fact that Congress specifically repealed parts of OCSLA while not

---

[2] Contrary to Alabama's point at Opp. 3 n.2, the issue is not whether OCSLA jurisdictional or displacement provisions apply.  This Court has found that the statute applies to the event, and so the statute's provisions guide when state law may be applied.

repealing other parts implies that it carefully considered which OCSLA provisions to repeal and which ones to leave in place.  This leaves no room for implied repealing of other provisions.

Alabama also relates this to its argument that state law applies through general maritime law, but as explained above, the general maritime law has been replaced by statute, so the statute governs.

Furthermore, if Alabama's reading of the law were correct, it would mean that 43 U.S.C. § 1333(a)(2)(A) was entirely superfluous because, Alabama's position holds, its own state law (and, presumably, the law of every gulf coast state), would apply to every drilling vessel anywhere on the OCS.  Not only would this be bad policy (because of applying so many different legal regimes to one location), but it violates the cardinal principle of statutory construction that a statute should be interpreted so that all of its provisions have meaning.

As M-I explained in its memorandum, section 1333's requirements for incorporating state law are not satisfied because the *Deepwater Horizon* was not "subsoil and seabed of the outer Continental Shelf, [nor] artificial islands and fixed structures erected thereon."  43 U.S.C. § 1333(a)(2)(A).  Alabama does not dispute this, stating in its response, "the *Deepwater Horizon* was a floating vessel dynamically positioned by thrusters; therefore, it fails the 'situs' requirement of being attached to the seafloor."  Opp. 7.  As state law only applies to this case as incorporated by OCSLA and Alabama admits that no circumstance for incorporation exists, OCSLA undisputedly prohibits Alabama's state law claims.

## VII.   Even If OCSLA Did Allow State Law To Apply, It Would Be Only Louisiana Law.

As M-I explained, even if state law did apply, OCSLA mandates that it be the law of Louisiana because it is the "adjacent [s]tate."  43 U.S.C. § 1333(a)(2)(A).  Alabama simply asserts that Louisiana law is inapplicable.  Opp. 54 n.6.  This ignores all M-I's authorities showing how Louisiana, not Alabama, would be the "adjacent state" for OCSLA purposes.  M-I

MTD 18.  This is a second reason Alabama cannot pursue claims against M-I based on Alabama state law.

### A.    Alabama's Nuisance Claims Should Be Dismissed.

As M-I explained, under the governing law, the only state law that might apply is Louisiana, and Alabama has failed to allege a cause of action for nuisance under Louisiana law, so this claim should be dismissed.  M-I MTD 19-20.  Alabama does not dispute this analysis.

And even if Alabama law did apply, the claim for public nuisance should be dismissed. Alabama argues that "M-I interpret[s] the language of 6-5-21 [sic] to mean that claims of private or public nuisances are mutually exclusive.  However, it fails to cite authority holding that the State may not bring actions for both public and private nuisance."  Opp. 54.  But, M-I did cite authority:   section 6-5-121, which unambiguously states that "[n]uisances are either public *or* private."  ALA. CODE § 6-5-121 (emphasis added).  At the most, Alabama can only assert a public nuisance claim, and therefore its private nuisance claim should be dismissed.

### B.    Alabama's Trespass Claims Should Be Dismissed To The Extent Alabama Does Not Have An Interest In The Property On Which The Oil Actually Invaded.

There is no dispute on Alabama's trespass claims.  Both parties appear to agree that Alabama can only assert trespass claims for property it has the right to possess on which oil actually invaded.  Opp. 56.  To the extent the Complaint alleges claims beyond that, those should be dismissed.

### VIII.   Even If Alabama State Law Applied To The *Deepwater Horizon*, Alabama's State Law Claims Should Be Dismissed.

Even if Alabama could assert claims against M-I under state law, those claims fail on their own terms.

A.    **Alabama's Claims Under The Alabama Environmental Management Act Should Be Dismissed.**

The Alabama Environmental Management Act ("AEMA") expressly states that that the AEMA is authorized to "[e]nforce all provisions of this chapter and all provisions of law identified in subdivision (1) of this section and to file legal actions in the *name of the department* [Alabama Department of Environmental Management ("ADEM")]."  ALA. CODE § 22-22A-5(12).  Alabama has cited no authority to support its argument that actions may be brought in the name of the state when AEMA unequivocally states that actions must be brought "in the name of the department."  If the Alabama Legislature had intended for suits to be brought in the name of the State, it could have stated it in the Act.  For example, the Alabama Water Pollution Control Act expressly states that actions to enforce its provisions "may be filed *in the name of the state* by the commission or the Attorney General."  *Id*. § 22-22-9(m) (emphasis added).  These two statutes make it clear that Alabama law distinguishes between when suits are to be brought in the "name of the state" and when they are to be brought in the "name of the department."  AEMA claims are to be brought in the name of the ADEM and, therefore, Alabama itself does not have authority to pursue its AEMA claims.

This requirement is not surprising given the legislative history of the statute.  The Alabama Legislature passed AEMA in 1982 among other reasons, "to provide that the responsibility within the Executive Branch for the implementation of environmental programs and policies is clearly fixed and ascertainable."  ALA. CODE § 22-22A-2.  AEMA was enacted to create a single department within the executive branch of Alabama government charged with implementing environmental policy.  Thus, it makes logical sense that only the ADEM is authorized to bring claims under the AEMA.

To further the policy of bringing all environmental policy under the guise of the ADEM, AEMA authorizes the ADEM to enforce the State's environmental statutes, including the Alabama Water Pollution Control Act ("AWPCA"), the Alabama Air Pollution Control Act ("AAPCA"), the Alabama Hazardous Wastes Management Act ("AHWMA"), and the Alabama Solid Waste Disposal Act ("ASWDA").   ALA. CODE § 22-22A-5(1).   AEMA does not create independent violations of these statutes, but gives the ADEM the power to "administer appropriate portions," § 22-22A-5(1), of those statutes and to "[e]nforce all provisions" of those statutes.  *Id.* § 22-22A-5(12).  This further demonstrates that AEMA only authorizes actions in the name of the ADEM because the State itself already had authority to bring claims under those statutes directly.

Moreover, this fact further demonstrates the double-recovery issues raised by Alabama's complaint.   Essentially, Alabama is attempting to assert both claims in its own name for violations of those statutes and claims in the name of the ADEM under its authority to enforce those same statutes under AEMA.  Alabama is not attempting to assert independent claims, but simply the same claim in its own name and in ADEM's name.

As M-I explained, the statute explicitly provides where suit may be brought, and that is in state court.  *See* M-I MTD 22.  Alabama's only response to this is to quote a part of the statute allowing the Attorney General to enforce the statute.  Opp. 42.  But if that provision allowed the Attorney General to sue anywhere he wanted, it would render section 22-22A-5(19) meaningless, in violation of the cannon of statutory construction.

In its opening brief, M-I set forth various necessary elements of a claim for civil penalties under the AEMA that Alabama did not set forth in its complaint.  *See* M-I MTD 23.  In response, Alabama simply states that the "Amended Complaint provided great detail concerning the harm

to the environment and the health and safety of the public caused by the Spill." Opp. 43. Despite this claim, Alabama utterly fails to point out where it alleges the facts and elements necessary for an AEMA claim. Therefore, Alabama has failed to respond to M-I's motion, and its AEMA claim should be dismissed. *See*, *e.g.*, *Hopkins*, 284 F. Supp. 2d at 25. Alabama also argues that "M-I's argument that the State has failed to plead facts supporting the factors to be considered in the assessment of a civil penalty" "is not an issue properly decided in the context of a Rule 12 motion." Opp. 43. However, this is exactly the purpose of a 12(b)(6) motion: "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original); *accord Rutherford v. Louisiana*, Civil Action No. 10-1987, 2011 WL 692031, at *2 (E.D. La. Feb. 17, 2011). As Alabama has not even attempted to point this Court to a place in its Complaint were it provides "sufficient factual matter" to support the elements of an AEMA claim, Alabama's AEMA claim should be dismissed.

Alabama also has not responded to M-I's argument (at M-I MTD 23) regarding Alabama's AEMA claim against corporate officers. Therefore the motion should be granted on that undisputed ground.

### B.     Alabama's Claims Under The Alabama Water Pollution Control Act Should Be Dismissed.

Alabama has not responded to M-I's argument (at M-I MTD 24) regarding Alabama's AWPCA claim against corporate officers. Similarly, Alabama has not responded to M-I's argument (at M-I MTD 25) regarding Alabama's AWPCA claim in connection with dispersants.

And Alabama does not respond to M-I's argument (at M-I MTD 24) that Alabama sued in the wrong court.  Therefore the motion should be granted on these three undisputed grounds.

In response to M-I's argument that AWPCA does not authorize a claim for civil penalties, Alabama states that '[u]nder Alabama law, [ADEM] is vested with the discretion to 'assess a civil penalty.'"  Opp. 45.  However, this claim again just underscores Alabama's double recovery issues.  It alleges that it can recover for violations of AWPCA in its ADEM claim and now it argues that it can recover ADEM penalties in its AWPCA claim.  Obviously, it only has one claim for civil penalties for any alleged AWPCA violation.  The ADEM is not a party to this action, and claims under the AWPCA must be brought "in the name of" the ADEM.  For these reasons, Alabama's claims under the AWPCA should be dismissed.

### C.    Alabama's Claims Under The Alabama Air Pollution Control Act Should Be Dismissed.

Alabama states that "[p]lainly, civil penalties are available under the AAPCA."  Opp. 46.  But in fact, the term "civil penalty" appears nowhere in the statute.  In fact, the word specifically used in the statute is "fine."  ALA. CODE § 22-28-22(a).  The statute authorizes a $10,000 fine for violating the statute and "an additional penalty" not to exceed $10,000 per day violation.  *Id.*  The statute then goes provides that the violator "may also be sentenced to hard labor for the county."  *Id.*  The term "penalty" comes between the use of the word "fine" and a discussion of "hard labor" and the term "civil" is not used anywhere in the statute.  Clearly, only criminal liability was contemplated.  Moreover, later in the statute it states that failure to comply with a subpoena issued by the commission will be punished "with the same *penalty* as provided for the failure of any person failing or refusing to comply with a subpoena."  *Id.* § 22-28-22(c).  The use of the term penalty in the context of a failure to comply with a subpoena demonstrates the criminal nature of the term in the Act.  There is nothing "plain" about civil penalties being

available under AAPCA; it is plain that only criminal liability is contemplated.   Therefore,
Alabama's AAPCA claim should be dismissed.

### D.   Alabama's Claims Under The Alabama Hazardous Wastes Management Act Should Be Dismissed.

Alabama failed to dispute M-I's argument (at M-I MTD 27) that Alabama did not
properly plead that M-I introduced dispersants into Alabama waters.   *See*, *e.g.*, *Hopkins*, 284 F.
Supp. 2d at 25.   Therefore, the Court should dismiss Alabama's AHWMA claim.

Alabama argues that AHWMA "does not foreclose civil penalties."   Opp. 47.   AHWMA
does not foreclose civil penalties because it never authorized them in the first place.   In fact, the
term "penalty" only appears in the title to § 22-30-19.   In the text of the statute, it states that:
"[a]ny person who intentionally, knowingly, recklessly or with *criminal negligence*" violates the
statute "*upon conviction*" may be subject to imprisonment and a fine.   ALA. CODE § 22-30-19(e)
& (e)(6).   There can be no doubt that AHWMA does not authorize civil liability.

### E.   Alabama's Claims Under The Alabama Solid Waste Disposal Act Should Be Dismissed.

Alabama fails to address M-I's argument (at M-I MTD 27-28) that only the ADEM may
bring a claim for fines under ASWDA.   The claim can be dismissed on this basis alone.   *See*,
*e.g.*, *Hopkins*, 284 F. Supp. 2d at 25.

Alabama is correct that § 22-27-11 of ASWDA authorizes recovery of "all costs of
abatement of any pollution and correction of any public nuisance by the violation."   Opp. 47
(quoting ALA. CODE § 22-27-11).   However, Alabama failed to plead a claim pursuant to
section 22-27-11.   *See* Compl. ¶¶ 324-27.   Alabama only pleads that it is entitled to recovery of
fines under section 22-27-7 of ASWDA.   *Id.*   M-I clearly moved to dismiss because "Alabama
has failed to plead any portion of the statute that entitles it to recover civil penalties," M-I MTD

27, and Alabama has not pointed to any place in the complaint where it does so.  Therefore, Alabama's ASWDA claim should be dismissed.

Alabama argues that "oil and dispersants" are solid waste because they are "discarded materials, including . . . liquid . . . material resulting from industrial . . .  activities."  Opp. 48. ASWDA defines neither the term "discarded material" nor "industrial . . . activities."  And Alabama has presented no argument explaining how oil and dispersant from a blowout can be defined as "discarded material" or how offshore oil exploration is an "industrial activity."

Despite claiming the oil and dispersants *are* discarded materials from industrial activities, Alabama argues that "a blowout and oil leak is not an oil and gas operation" or "drilling discharge[]."  Opp. 48.  Alabama cannot have it both ways.  Either the oil and gas are discarded materials from industrial activities, those activities presumably being oil and gas operations, or they are from a blowout and not an oil and gas operation, those not an industrial activity.  As it must be one or the other, Alabama's ASWDA claims must be dismissed for not meeting the definition of "solid waste" thereunder.

## IX.   Alabama Has Not Disputed M-I's Motion As To Punitive Damages.

As explained *supra*, Alabama cannot recover punitive damages for its federal law claims. And as M-I explained in its moving brief, the only applicable state law that may apply is Louisiana law, and Louisiana does not allow for the recovery of punitive damages for these types of claims.  M-I MTD 29.  Alabama does not dispute that, if Louisiana is the governing law, punitive damages are unavailable.   Therefore, this Court should rule that Alabama cannot recover punitive damages from M-I under any of its legal theories.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as for the reasons set forth in M-I's Memorandum of

Law in Support of its Motion to Dismiss, M-I respectfully requests that this Court dismiss with

prejudice all claims asserted against it in the State of Alabama's First Amended Complaint.

Respectfully submitted,

**OF COUNSEL:**                                          MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                                By:  /s/ *Hugh E. Tanner*
dleon@morganlewis.com                                         Hugh E. Tanner
Texas Bar No. 24002463                                        htanner@morganlewis.com
5300 Wachovia Financial Center                                Texas Bar No. 19637400
200 South Biscayne Boulevard                                  1000 Louisiana, Suite 4000
Miami, Florida  33131                                         Houston, Texas  77002
Telephone:     (305) 415-3000                                 Telephone:     (713) 890-5000
Facsimile:     (305) 415-3001                                 Facsimile:     (713) 890-5001

Denise Scofield                                         **ATTORNEYS FOR DEFENDANT**
dscofield@morganlewis.com                               **M-I L.L.C.**
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:     (713) 890-5000
Facsimile:     (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**


August 5, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply in Further Support of Defendant M-I L.L.C.'s Motion to Dismiss the State of Alabama's First Amended Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of August, 2011.

/s/ *Hugh E. Tanner*
Hugh E. Tanner