# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> * <br> * <br> * <br> * | **MDL NO. 2179** <br><br> **SECTION J** |
| This document relates to: | * <br> * | |
| *MDL 2179 Master Complaint and All Cases in Pleading Bundle C.* | * <br> * <br> * | **Honorable CARL J. BARBIER** <br><br> **Magistrate Judge SHUSHAN** |
| This document relates to: <br> *No. 10-2771 (Limitation Action).* | * | |

## BP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## THE LOCAL GOVERNMENT ENTITY VOLUNTARY MASTER COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Argument ...................................................................................................................1

I. Plaintiffs' Response Confirms that OCSLA, OPA, and the CWA Bar Plaintiffs' State Law Claims. ...................................................................................................1

    A. Congress Specified That the Law Governing Conduct on the Outer Continental Shelf Is *Exclusively Federal*..................................................2

    B. Independently, *Ouellette* and the Clean Water Act Preempt Plaintiffs' State Law Claims. ..................................................................................3

    C. OPA's Savings Clauses Cannot Save Plaintiffs' Claims From Preemption By the Outer Continental Shelf Lands Act and the Clean Water Act.....................4

II. Plaintiffs' Response Confirms That OPA Displaces Plaintiffs' Maritime Law Claims. ...................................................................................................................5

    A. OPA Speaks Directly to the Question of Liability for Damages Due to Oil Pollution and Must Therefore Displace Plaintiffs' Maritime Claims.....................5

    B. The Plaintiffs Have Not and Cannot Meaningfully Distinguish *AEP*. ...................6

    C. 33 U.S.C. 2751(e), *Exxon Shipping Co. v. Baker*, and *Atlantic Sounding Co. v. Townsend* Do Not Alter this Displacement Analysis or Save Plaintiffs' Punitive Damages Claims. ....................................................7

III. Plaintiffs Cannot Overcome the Economic Loss Doctrine of *Robins Dry Dock*..............10

IV. Plaintiffs' Brief Confirms That Their OPA Claims Must Be Dismissed...........................11

    A. The Mandatory Presentment Requirement Must Be Satisfied Before Any Plaintiff Can Bring Suit for Damages or Removal Costs. ....................................11

    B. *Cosco Busan* Does Not Relieve Plaintiffs of the Presentment Requirement........14

V. Plaintiffs' Attempts to Save Their State Law Claims Fail.................................................17

    A. Under OCSLA, Only the Law of Louisiana, as the Adjacent State, Can Apply........................................................................................................17

    B. The Louisiana Oil Spill Act Preempts Application of Any Other Louisiana Law. ...........................................................................................................17

i

1.    The Louisiana Oil Spill Act Provides the Only Potential Source of Liability Under Louisiana Law.................................................................17

2.    The Louisiana Oil Spill Act Precludes the Parish District Attorneys' Claims for Penalties under the Wildlife Statute.......................18

C.    Plaintiffs' Claims under the Florida, Louisiana, and Texas Oil Spill and Pollution Statutes Fail as Impermissible Attempts to Regulate Interstate Commerce.............................................................................................................19

D.    Plaintiffs' Nuisance, Trespass, and Fraudulent Concealment Claims Fail............20

Conclusion ....................................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abundiz v. Explorer Pipeline Co.*,
  Civ. A. Nos. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018
  (N.D. Tex. Nov. 25, 2003) .................................................................................................. 13

*American Electric Power Co. v. Connecticut*,
  131 S. Ct. 2527 (2011) ............................................................................................... passim

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................................ 12

*Atlantic Sounding Co. v. Townsend*,
  129 S. Ct. 2561 (2009) ..................................................................................................... 8, 9

*Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*,
  51 F.3d 235 (11th Cir. 1995) .............................................................................................. 14

*California Department of Toxic Substances Control v. Hearthside Residential Corp.*,
  613 F.3d 910 (9th Cir. 2010) .............................................................................................. 15

*Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*,
  No. 10-30466, 2011 WL 1449616 (5th Cir. Apr. 15, 2011) ................................................ 10

*City of DeQuincy v. Henry*,
  62 So. 3d 43 (La. 2011) ................................................................................................. 18, 19

*Dean v. American Security Insurance Co.*,
  559 F.2d 1036 (5th Cir. 1977) .............................................................................................. 9

*Deculus v. Welborn*,
  964 So. 2d 930 (La. 2007) ................................................................................................... 18

*Dick Meyers Towing Service, Inc. v. United States*,
  577 F.2d 1023 (5th Cir. 1978) ............................................................................................ 11

*EP Operating Ltd. Partnership v. Placid Oil Co.*,
  26 F.3d 563 (5th Cir. 1994) .................................................................................................. 2

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008) .............................................................................................................. 8

*Gabarick v. Laurin Mar. (Am.) Inc.*,
  No. CIV.A. 08-4007, 2009 WL 102549 (E.D. La. Jan. 12, 2009) .................................. 12, 14

*Geier v. American Honda Motor Co.*,
  529 U.S. 861 (2000) ........................................................................................................... 7

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981) ........................................................................................................... 2

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1990) ..................................................................................................... 13, 14

*Hatten v. Schwerman Trucking Co.*,
  889 So. 2d 448 (La. Ct. App. 2004) ................................................................................ 18

*Hensley v. Redi-Med of Mandeville*,
  Civ. A. No. 09-47, 2009 WL 2408319 (E.D. La. Aug. 4, 2009) ...................................... 12

*International Paper Co. v. Ouellette*,
  479 U.S. 481 (1987) ....................................................................................................... 3, 5

*Isla Corp. v. Sundown Energy, LP*,
  No. CIV.A. 06-8645, 2007 WL 1240212 (E.D. La. Apr. 27, 2007) ................................ 14

*Johnson v. Colonial Pipeline Co.*,
  830 F. Supp. 309 (E.D. Va. 1993) .................................................................................... 12

*Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board*,
  586 So. 2d 1354 (La. 1991) .............................................................................................. 18

*Marathon Pipe Line Co. v. LaRoche Industries, Inc.*,
  944 F. Supp. 476 (E.D. La. 1996) .................................................................................... 14

*Milwaukee v. Illinois*,
  451 U.S. 304 (1981) ........................................................................................................... 5

*Mobil Oil Corp. v. Higginbotham*,
  436 U.S. 618 (1978) ........................................................................................................... 5

*Nautilus Marine, Inc. v. Niemela*,
  170 F.3d 1195 (9th Cir. 1999) .......................................................................................... 11

*Offshore Logistics, Inc. v. Tallentire*,
  477 U.S. 207 (1986) ........................................................................................................ 1, 2

*Robins Dry Dock & Repair Co. v. Flint*,
  275 U.S. 303 (1927) ......................................................................................................... 10

*Rodrigue v. Aetna Casualty & Surety Co.*,
  395 U.S. 352 (1969) ........................................................................................................... 2

iv

*Sanford v. Louisiana*,
  228 Fed.Appx. 492 (5th Cir. 2007) .......................................................... 12

*South Port Marine, LLC v. Gulf Oil Ltd. Partnership*,
  234 F.3d 58 (1st Cir. 2000) ...................................................................... 9

*State ex rel Guste v. M/V TESTBANK*,
  752 F.2d 1019 (5th Cir. 1985)........................................................... 10, 11

*State v. Madere*,
  352 So. 2d 666 (La. 1977) ....................................................................... 18

*State v. Williams*,
  60 So. 3d 1189 (La. 2011) ....................................................................... 18

*Tanguis v. M/V Westchester*,
  153 F. Supp. 2d 859 (E.D. La. 2001) ....................................................... 8

*Tennessee Gas Pipeline v. Houston Casualty Insurance Co.*,
  87 F.3d 150 (5th Cir. 1996)....................................................................... 2

*Toomy v. Louisiana State Employees' Retirement System*,
  63 So. 3d 198 (La. Ct. App. 2011) .......................................................... 19

*Union Texas Petroleum Corp. v. PLT Engineering, Inc.*,
  895 F.2d 1043 (5th Cir. 1990) ("*PLT*")................................................... 3

*United States v. Locke*,
  529 U.S. 89 (2000) .................................................................................... 4

*United States v. M/V Cosco Busan*,
  557 F. Supp. 2d 1058 (N.D. Cal. 2008) ............................................ 15, 16

*United States v. Murphy Exploration & Production Co.*,
  939 F.Supp. 489 (E.D. La. 1996) ........................................................... 17

**Statutes**

33 U.S.C. § 1333(a)(1)................................................................................ 2

33 U.S.C. § 2702(b)(1)(B) ........................................................................ 16

33 U.S.C. § 2713 ....................................................................................... 16

33 U.S.C. § 2713(a) .......................................................................... 1, 11, 12

33 U.S.C. § 2713(b) ................................................................................... 12

33 U.S.C. § 2717....................................................................................... 15

33 U.S.C. § 2717(f)(2) ................................................................................................ 15, 16

33 U.S.C. § 2718(a) ................................................................................................ 4, 5, 20

33 U.S.C. § 2718(b) ....................................................................................................... 4

33 U.S.C. § 2718(c) ....................................................................................................... 4

33 U.S.C. § 2751(e) ....................................................................................................... 7

42 U.S.C. § 6972 .......................................................................................................... 13

42 U.S.C. § 6972(b) ..................................................................................................... 13

43 U.S.C. 1333 .............................................................................................................. 4

Clean Water Act,
    33 U.S.C. § 1251 *et seq.* ...................................................................................... 1, 2

Comprehensive Environmental Response, Compensation and Liability Act,
    42 U.S.C. § 9601 *et seq.* ................................................................................... 10, 15

La. Rev. Stat. § 30:2453 ............................................................................................... 18

La. Rev. Stat. § 30:2491(A) .......................................................................................... 17

La. Rev. Stat. § 30:2491(B) .......................................................................................... 19

La. Rev. Stat. § 56:40.1 *et seq.* .............................................................................. 18, 19

Limitation Act of 1851,
    46 U.S.C. § 30501 *et seq.* ...................................................................................... 4

Louisiana Oil Spill Response and Prevention Act,
    La. Rev. Stat. § 30:2451 *et seq.* .................................................................. 17, 18, 19

Oil Pollution Act of 1990,
    33 U.S.C. § 2701 *et seq.* .............................................................................. passim

Outer Continental Shelf Lands Act,
    43 U.S.C. § 1331 *et seq.* .............................................................................. passim

**Other Authorities**

8 Business & Commercial Litigation Federal Courts (2d ed.) § 95:45 ....................... 15

99 Cong. Rec. 7164 ........................................................................................................ 2

*AEP v. Connecticut*,
   Private Respondents' Merits Brief, No. 10-174, 2011 WL 882590 (Mar. 11, 2011) ................. 6

*AEP v. Connecticut*,
   State Respondents' Merits Brief,  No. 10-174, 2011 WL 915093 (Mar. 11, 2011).................... 6

Restatement (Second) of Torts § 821B (1979) ............................................................................. 7

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................................. 12

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 12

## INTRODUCTION

Plaintiffs' Master Complaint alleges that Plaintiffs were harmed by the oil spill following the explosions and sinking of the *Deepwater Horizon*, (MDL 2179 doc. 1510 ("Compl."),) and that the oil was from a well located on the Outer Continental Shelf (*id.* ¶ 29), far outside the territorial boundaries of the surrounding States.  Given these two allegations, other concessions by Plaintiffs, and well-settled law, Plaintiffs arguments must fail.  For example,

- Because the spill took place on the Outer Continental Shelf, the applicable law is exclusively federal.  OCSLA expressly preempts state law; it borrows state law only to fill "voids."  *See, e.g., Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986).

- Oil spills are governed by the Oil Pollution Act and because OPA is comprehensive; under OCSLA there is no void to fill with borrowed state law.  (See BP Mem. (Doc. 2214) at 11-12, 14.)

- The source of the oil was outside any State's territorial boundaries and therefore, there is no "source State."  According to the Supreme Court, a non-source State may not impose its laws on pollution originating outside the state, as in this case.

- Because the Oil Pollution Act applies to the oil spill (which Plaintiffs concede), courts may not continue to apply federal common law, including maritime law.  *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011).

- Plaintiffs all but concede they are proceeding with their OPA claims "in the absence of presentment" required by OPA and therefore under the plain language of the statute and settled law, their OPA claims must be dismissed.  (Opp. Br. at 25); 33 U.S.C. § 2713(a).

Nothing in Plaintiffs' response contradicts BP's arguments that Plaintiffs' claims are preempted by OCSLA and the CWA, displaced by OPA, and legally insufficient.  Their claims should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' RESPONSE CONFIRMS THAT OCSLA, OPA, AND THE CWA BAR PLAINTIFFS' STATE LAW CLAIMS.

Plaintiffs' repeated assertion that the Oil Pollution Act of 1990 "saves" their state claims reveals a fundamental misunderstanding of the preemption issue in this case.  BP did not assert

that Plaintiffs' state law claims were preempted by OPA; Plaintiffs' arguments along those lines are irrelevant.  Instead, BP explained that Plaintiffs' state claims were preempted by the Outer Continental Shelf Lands Act ("OCSLA") and the Clean Water Act (CWA)—two statutes that Plaintiffs all but ignore in their brief.

A.    **Congress Specified That the Law Governing Conduct on the Outer Continental Shelf Is *Exclusively Federal*.**

The Outer Continental Shelf Lands Act establishes exclusive federal jurisdiction over conduct on the Shelf.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479-81 (1981); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).  Plaintiffs do not and cannot dispute that OCSLA itself specifies that federal law—and only federal law—governs conduct on the Outer Continental Shelf.[1]  *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  Although the law is exclusively federal, its content may be borrowed from the law of the adjacent State—in this case, Louisiana—but only (i) if necessary to fill a gap in federal law and (ii) indirectly as surrogate *federal* law.  *See Offshore Logistics*, 477 U.S. at 217; *Rodrigue*, 395 U.S. at 358 ("'where there is a void, the State law may be applicable'") (quoting 99 Cong. Rec. 7164).  As BP explained in its opening brief, because OPA provides a comprehensive federal remedial scheme to address oil spills, there is no gap for borrowed state law to fill, and Plaintiffs' state law claims are preempted.  (See BP Mem. (Doc. 2214) at 11-12, 14.)

---

[1]    The "civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom … to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State."  33 U.S.C. § 1333(a)(1).

In their response, Plaintiffs ignore the plain terms of OCSLA and instead point to the "*PLT* test," which courts use to determine what law governs—(1) borrowed state law under OCSLA or (2) maritime law.  (*See* Pls' B1 Opp. at 23[2] (*citing Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043 (5th Cir. 1990) ("*PLT*")).)  BP did not, however, argue that either choice applied and Plaintiffs' argument is therefore unresponsive.  It is also irrelevant:  the *PLT* test applies only when there is choice of which law to apply—borrowed state law under OCSLA or maritime law.  In this case, neither choice is viable:  (1) because OPA governs oil spills and is comprehensive as to BP, for purposes of OCSLA there is no gap in federal law for state law to fill; *see, e.g., Rodrigue*, 395 U.S. at 358; and (2) as explained in BP's opening brief at 4-5 (and *infra* at Section II), OPA displaces maritime law.  There is simply no role for the *PLT* test in this case.  (For further discussion, see B1 Reply (Doc. 2312) at 32-37.)

**B.     Independently, *Ouellette* and the Clean Water Act Preempt Plaintiffs' State Law Claims.**

As BP explained in its opening brief, a State may not impose liability under its own laws when the source of the oil spill is outside the State's territorial boundaries.  (*See* BP Opening Br. at 13.)  In *International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987), the Supreme Court held that only the federal NPDES system and the law of the source State can regulate discharges of pollution within such a State, whereas other States (even if affected by the pollution) lack the power to regulate water pollution that originates beyond their borders.  *Id.*  In *American Electric Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2540 (2011), the Supreme Court recently reaffirmed *Ouellette's* proposition "that the Clean Water Act does not preclude aggrieved individuals from bringing a 'nuisance claim pursuant to the law of *the source State.*'"  *Id.* (emphasis in original).  Here, the Deepwater Horizon was not present in any source State, but

---

[2]     On the subject of OCSLA, Plaintiffs rely on their B1 Opposition. (Opp. at 11.)

was within a federal enclave, outside any State's territorial jurisdiction.  Under *Ouellette*, no

State's law applies. 479 U.S. at 494.[3]

C.     **OPA's Savings Clauses Cannot Save Plaintiffs' Claims From Preemption By the Outer Continental Shelf Lands Act and the Clean Water Act.**

OCSLA preempts state law, which never applies of its own force to claims arising from

mineral mining or other development activities on the Outer Continental Shelf.  *See* 43 U.S.C.

§1333; *see also Tenn. Gas Pipeline*, 87 F.3d at 156.  Plaintiffs' reliance on OPA's savings

clauses is misplaced because there are no state claims to "save."  Put differently, in OCSLA

Congress made federal law exclusive on the Outer Continental Shelf.  It is difficult to believe

that Congress intended OPA to override OCSLA's express preemption of state law without any

textual support in either statute.  To the contrary, the savings provision is expressly limited to

preemption by OPA.  *See* 33 U.S.C. § 2718(a) ("Nothing in this Act or the Act of March 3, 1851

[the Limitation Act] shall . . . .") (emphasis added); 33 U.S.C. § 2718(b) ("Nothing in this Act or

in section 9509 of Title 26 [the Oil Spill Liability Trust Fund] shall . . . .); 33 U.S.C. § 2718(c)

("Nothing in this Act, the Act of March 3, 1851(46 U.S.C. 183 et seq.), or section 9509 of Title

26, shall . . . .").  According to the Supreme Court, a savings clause framed in terms of "nothing

in this section" was, by its own terms and basic common sense, limited to preemption caused

only by that particular section of the statute.  *See Ouellette*, 479 U.S. at 493 (clause "does not

purport to preclude pre-emption of state law by other provisions of the Act").  The same analysis

applies to OPA's savings clauses, which by their terms are limited to OPA preemption (or in

some cases to saving against preemption by the Limitation Act of 1851, 46 U.S.C. § 30501 et

seq.).  *See United States v. Locke*, 529 U.S. 89, 106 (2000) (holding that OPA's savings clauses

---

[3]     In response to BP's arguments, Plaintiffs rely on their opposition to BP's B1 motion to dismiss (Doc. 1821), at 50-53. These arguments lack merit and are addressed in BP's B1 Reply (Doc. 2312) at 26-31.

did not alter preexisting preemption under the Ports and Waterways Safety Act).  (See also BP's

B1 Reply at 38-42.)[4]

## II.     PLAINTIFFS' RESPONSE CONFIRMS THAT OPA DISPLACES PLAINTIFFS' MARITIME LAW CLAIMS.

### A.     OPA Speaks Directly to the Question of Liability for Damages Due to Oil Pollution and Must Therefore Displace Plaintiffs' Maritime Claims

Plaintiffs do not and cannot overcome the well-settled legal presumption that Congress

intends to displace common law when it adopts a statute that controls a particular subject area—

as the Supreme Court recently reaffirmed in *American Electric Power Co. v. Connecticut*, 131 S.

Ct. 2527 (2011) ("*AEP*").  In *AEP*, the Supreme Court held that "the Clean Air Act and the EPA

actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide

emissions from fossil-fuel fired power plants."   *Id.* at 2537.   The Court also reiterated that

"[l]egislative displacement of federal common law does not require the 'same sort of evidence of

a clear and manifest [congressional] purpose' demanded for preemption of state law."   Id. at

2537 (citing *Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981)) (some alterations in original).

"The test for whether congressional legislation excludes the declaration of federal common law

is simply whether the statute '***speak[s] directly to [the] question' at issue***."   *AEP*, 131 S. Ct. at

2537 (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)) (emphasis added).

---

[4]     Contrary to Plaintiffs' arguments, 33 U.S.C. § 2718(a) does not preserve their claims for pollution arising beyond state waters.  (Opp. at 12-13.)  Section 2718(a) preserves the States' ability to impose liability for "the discharge of oil or other pollution by oil within such State."  Plaintiffs' reliance on the phrase "other pollution by oil" is misplaced.  All the disjunctive means here is that liability may be imposed for the discharge of both (i) oil itself and (ii) "other pollution" that is also discharged with the oil but that is not itself oil, such as associated hydrocarbons that are discharged with the oil.  This reading is supported by the placement of the phrase "within such State" at the end of the clause, so that it applies not only to the discharge of oil within the State, but the discharge of oil or other pollution, both within the State.  Moreover, Plaintiffs' strained reading should also be rejected because it cannot be reconciled with *Ouellette* since it would permit a State to regulate "other pollution" discharged from another State (while still preventing the State from regulating oil discharged from another State).  There is no indication in OPA that Congress intended to set aside the ordinary territorial and regulatory boundaries of States, and OCSLA is directly to the contrary of any such argument.

Because the Oil Pollution Act speaks directly to the question of liability for and the recovery of damages due to oil pollution, it displaces maritime law, as numerous courts have held.  (*See* cases cited in BP's Opening Br. (Doc. 2214-1) at 4-5.)

### B.     The Plaintiffs Have Not and Cannot Meaningfully Distinguish *AEP*.

Contrary to Plaintiffs' arguments, the Supreme Court's holding in *AEP* is fatal to their claims.  ***First***, Plaintiffs' argument—that unlike AEP*,* this case involves preexisting remedies such as maritime-based punitive damages claims (Opp. at 19-21)—is indistinguishable from the arguments rejected by the Court in *AEP*.   *See* State Respondents Merits Br. in *AEP v. Connecticut*, No. 10-174, 2011 WL 915093, at *10 (Mar. 11, 2011) ("This Court has long applied federal common law to resolve suits by a State complaining about interstate pollution unless a federal statute or regulation addresses the problem."); *id.* at *38 ("the States are entitled to invoke the judicially developed body of federal common law"); Private Respondents Merits Br. in *AEP v. Connecticut*, No. 10-174, 2011 WL 882590, at *17 (Mar. 11, 2011) ("A sovereign's action to enjoin a common or public nuisance traces to at least as early as the sixteenth century [in] the English courts and has been a commonplace of jurisdiction in American judicial history.") (internal quotation marks omitted); *id.* at 19 ("During the second half of the nineteenth century, numerous American courts applied the law of public nuisance to cases in which private actors contributed to air and water pollution.").  Yet the Supreme Court held that all of this old federal common law on interstate air pollution was displaced by the Clean Air Act.  OPA, an even newer statute than the Clean Air Act, is precisely targeted to provide all of the federal damages remedies Congress saw fit to make available, and thus OPA similarly displaces federal maritime common law here.

***Second***, whether the remedies are complex or simple to devise (see Opp. at 20 n.1), an action for damages effectively regulates conduct, especially in the public nuisance context.  *See*,

*e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) ("In effect, petitioners' tort action [for damages] depends upon its claim that manufacturers had a duty to install an airbag…. Such a state law—*i.e.,* a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags.").  To award damages, a court would have to decide what level of greenhouse gas emissions were reasonable, and award damages only for unreasonable emissions levels.  *See* Restatement (Second) of Torts § 821B (1979) ("A public nuisance is an ***unreasonable*** interference with a right common to the general public.") (emphasis added).  But the Supreme Court held in *AEP* that there could be no form of "parallel track." *AEP*, 131 S. Ct. at 2538 (cited in Opp. at 19).  If individual judges could fix case-by-case limits on emissions enforceable by damages, then EPA's regulatory decisions under the Clean Air Act would be meaningless.  The same is true here as to federal maritime common law damages awards contrary (or in addition) to OPA damages awards.  Moreover, the Master Complaint does not limit itself to seeking damages.  It seeks injunctive, declaratory, and other equitable relief that would include remedies in addition to those provided by the Clean Water Act NPDES regulatory regime.  *See* Compl. at Prayer for Relief (f) & (h).

> **C.   33 U.S.C. 2751(e),** *Exxon Shipping Co. v. Baker***, and** *Atlantic Sounding Co. v. Townsend* **Do Not Alter this Displacement Analysis or Save Plaintiffs' Punitive Damages Claims.**

Plaintiffs' reliance on 33 U.S.C. § 2751(e) is misplaced.  Section 2751(e) provides that "[e]xcept as otherwise provided in this [Oil Pollution] Act, this Act does not affect – (1) admiralty or maritime law; or (2) the jurisdiction of the district courts" under maritime law. Contrary to Plaintiffs' arguments, this section does not save their maritime law claims.  It instead confirms that the Act ***may affect and displace*** admiralty and maritime law as provided in OPA. OPA's comprehensive remedial scheme "includes new remedies, which, in many respects, preempt traditional maritime remedies.  This result is reflected in the first clause of OPA's

admiralty and maritime savings provision: 'Except as otherwise provided in this [Act] . . . .'" *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001).  Because oil spill damages are "*otherwise provided*" in OPA, there is no place for maritime remedies.[5]

Likewise, there is no merit to Plaintiffs' argument that two Supreme Court decisions, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), and *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), alter the well-established displacement analysis or save their punitive damages claims under maritime law.  Neither *Baker* nor *Townsend* involved OPA; it is OPA's comprehensive remedial scheme that displaces maritime law in cases involving oil pollution damages, so cases involving other statutes are limited in their applicability.

For this reason and contrary to Plaintiffs' argument, *Baker* is not an "extremely analogous case."  (Opp. at 21.)  In *Baker*, the Court held that the ***Clean Water Act*** did not displace punitive damages under maritime law; the Court did not, of course, consider the effect of ***OPA***, which was only enacted after the Valdez spill.  The Clean Water Act provides a penalty scheme but not a comprehensive remedial scheme for recovery of damages; OPA, on the other hand, does provide such a comprehensive scheme for ***damages***.  Because OPA speaks directly to the question of damages and specifies the damages recoverable for an oil spill, OPA displaces federal maritime law providing for recovery of damages.  Indeed, the Plaintiffs' reliance on *Baker* is especially inapposite, since OPA was expressly designed to provide the comprehensive set of federal remedies that were lacking prior to the *Exxon Valdez* spill.

Moreover, whereas Exxon's "untenable claim" in *Baker*—that the Clean Water Act "somehow preempts punitive damages, but not compensatory damages, for economic loss"— would have resulted in an unwarranted "fragmenting [of] the recovery scheme," 554 U.S. at 489,

---

[5]   Of course, this does not suggest that Section 2751 is rendered meaningless.  For example, OPA does not apply to personal injuries caused by an oil spill; Section 2751 confirms that OPA does not displace traditional maritime law for personal injury claims.

OPA displaces **all** federal maritime common law damages (whether compensatory or punitive), as numerous courts have held.  It is Plaintiffs who seek a fragmented recovery scheme here.  (*See also* BP's B1 Reply (Doc. 2312) at 6-8 for additional discussion of *Baker* and *Townsend*.)

Plaintiffs also argue that OPA does not address punitive damages and hence such remedies in maritime law are not displaced.  (Opp. at 20.)  But as the Plaintiffs come close to acknowledging (*see id.* at 21 n.14), that is because OPA deals with the issue of heightened liability in a different way than via a system of full compensatory damages with punitive damages available for gross negligence.  Instead, OPA provides for compensatory damages subject to a liability cap, and then lifts the cap if gross negligence can be shown.  Such a system is inherently incompatible with a system in which maritime law would permit compensatory liability without respect to a cap and punitive damages above and beyond the consequences under OPA if gross negligence can be proven.  *See Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977) ("The provisions for liquidated damages for willful violation of the Act [the Age Discrimination in Employment Act] and its silence as to punitive damages convinces us that the omission of any reference thereto was intentional . . . . *[I]t is obvious that, if Congress believed punitive damages necessary* to eliminate discrimination in employment based on age, *it knew exactly how to provide for them*.") (emphasis added); *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65 (1st Cir. 2000) ("*Congress's very specific treatment of oil pollution in the OPA, which does not provide for punitive damages*, supplanted general admiralty and maritime law.") (emphasis added).  The Plaintiffs' argument that punitive damages are consistent with OPA because OPA's cap is also lifted when gross negligence can be shown (Opp at 21 n.14) misses entirely the point that OPA sets out a different (and entirely comprehensive) regime for providing oil spill remedies than the system that had preceded OPA.  Allowing punitive damages

would destroy the carefully calibrated system Congress put in place with the OPA liability cap
system.

## III.   PLAINTIFFS CANNOT OVERCOME THE ECONOMIC LOSS DOCTRINE OF *ROBINS DRY DOCK*.

As discussed in previous briefing, the economic loss rule of *Robins Dry Dock & Repair
Co. v. Flint,* 275 U.S. 303, 309 (1927), independently bars many of the Plaintiffs' maritime law
claims, even if OPA were held not to displace them.  (*See* BP's Mem. (2214-1) at 6-7.)  To avoid
*Robins Dry Dock*, a maritime plaintiff must demonstrate both that (1) it possesses a sufficient
and cognizable interest in property alleged to be damaged; and (2) the economic losses "directly
flow" from that physical injury.  There is no merit to Plaintiffs' arguments that *Robins Dry Dock*
does not bar their claims.  ***First***, CERCLA's 1986 amendments did not overrule *Robins Dry
Dock* and its progeny (Opp. at 26), and the Fifth Circuit has consistently continued to apply the
rule after these amendments.  *See*, *e.g.*, *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram
Barge Co.,* No. 10-30466, 2011 WL 1449616, at *2 (5th Cir. Apr. 15, 2011) ("This court has
faithfully applied the *Robins* rule and consistently denied recovery for economic loss to parties
who have suffered no harm to a proprietary interest.").  ***Second***, *Robins Dry Dock* is not limited
to cases "where the Plaintiff is damaged because of injury to a party in privity with the plaintiff."
(Opp. at 26.)  In *State ex rel Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*)*,*
the Fifth Circuit rejected a similar argument that *Robins* is confined to "losses suffered for
inability to perform contracts between a plaintiff and others" reasoning that "[i]f a plaintiff
connected to the damaged chattels by contract cannot recover, ***others more remotely situated are***

*foreclosed a fortiori.*"  *Id.* 1023-24 (emphasis added).  (*See also* BP's B1 Reply (Doc. 2312) Section I.B for additional discussion.)[6]

Nor is there any merit to Plaintiffs' argument that the *Robins Dry Dock* rule does not apply to intentional torts or ultrahazardous activity.  (Opp. at 26-27.)  Although the Fifth Circuit noted in *TESTBANK*, 752 F.2d at 1020 n.1, that it was not "address[ing] intentional tort or ultrahazardous activity, such as blasting," the court did not preclude application of the rule in such cases.  And indeed, "nothing in *Robins Dry Dock* or its progeny . . . supports [an] exception" for intentional conduct, except in the limited circumstance where the conduct at issue is intentional interference with contractual relations.  *Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195, 1195-97 (9th Cir. 1999) (holding "that the *Robins Dry Dock* rule applies to this case despite [plaintiff's] allegations that [defendant] acted intentionally or recklessly"); *cf. Dick Meyers Towing Serv., Inc. v. United States*, 577 F.2d 1023, 1025 (5th Cir. 1978) ("The law has traditionally been reluctant to recognize claims based solely on harm to the interest in contractual relations or business expectancy....[A] plaintiff may not recover for interference with his contractual relations unless he shows that the interference was intentional or knowing.").

## IV.  PLAINTIFFS' BRIEF CONFIRMS THAT THEIR OPA CLAIMS MUST BE DISMISSED.

### A.  The Mandatory Presentment Requirement Must Be Satisfied Before Any Plaintiff Can Bring Suit for Damages or Removal Costs.

The plain language of the Act requires that "[e]xcept as provided in subsection (b) of this section, *all claims for removal costs or damages* shall be presented first to the responsible party or guarantor of the source designated under 2714(a) of this title."  33 U.S.C. § 2713(a) (emphasis

---

[6]    Plaintiffs also contend that the economic loss rule does not apply to *OPA claims*.  (Opp. at 26.)  BP has not argued that it does, and Plaintiffs' argument has no bearing on whether *Robins Dry Dock* bars Plaintiffs' *maritime law* claims.

added).  The presentment requirement is a "mandatory condition precedent" and upon failure to comply, "claimants' OPA claims must be dismissed."  *Gabarick v. Laurin Mar. (Am.) Inc.*, No. CIV.A. 08-4007, 2009 WL 102549, at *3 (E.D. La. Jan. 12, 2009).

Plaintiffs all but concede that they are proceeding with their damages claims "in the absence of presentment."  (Opp. Br. at 25.)  Just as other courts have consistently granted Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) motions to dismiss OPA claims given such a failure to present, this Court must do the same.  (*See*, *e.g.*, Bundle C Mem. (Doc. 1786-1) at 8); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Sanford v. Louisiana*, 228 Fed. Appx. 492, 492-93 (5th Cir. 2007); *Hensley v. Redi-Med of Mandeville*, Civ. A. No. 09-47, 2009 WL 2408319, *2 (E.D. La. Aug. 4, 2009) (Barbier, J.).

Plaintiffs' conclusory and non-specific allegations of presentment are insufficient. (Compl. ¶ 668 ("To the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees.").)  Courts closely examine plaintiffs' allegations and the documentary evidence supporting their allegations to determine if OPA's requirements of a sum certain and substantiation have been satisfied.  *See*, *e.g.*, *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993) (dismissing OPA claims for lack of presentment; holding that letter purporting to present an OPA claim was "plainly inadequate" under the statute because plaintiffs had made "no effort to describe the nature or extent of the[ir] alleged damages, much less to explain the basis for claiming that these damages have been sustained," and also "fail[ed] to state a sum certain for any of the types of

damages alleged"); *Gabarick*, 2009 WL 102549, at *2 (granting motions to dismiss; invoice submitted by plaintiff did not satisfy OPA's "statutory requirements for a proper claim" because the plaintiff "has not described the manner in which the oil spill impacted it, nor has it cited evidence in support of its purported claim."); *Abundiz v. Explorer Pipeline Co.*, Civ. A. Nos. 300CV2029H, 303CV0508H, 303CV0787H, 2003 WL 23096018, at *3-5 (N.D. Tex. Nov. 25, 2003) (holding that plaintiff failed to comply with presentment requirement because it did not establish the amount in dispute; spreadsheets and letter were ambiguous and lacked the necessary specificity).

Whether the lack of presentment is jurisdictional is immaterial; non-compliance with the requirement results in dismissal.  *See Hallstrom v. Tillamook Cnty.,* 493 U.S. 20, 31 (1990).  In *Hallstrom,* the Supreme Court held that compliance with a similar provision in the Resource Conservation and Recovery Act ("RCRA") requiring citizens to provide notice before commencing suit, *see* 42 U.S.C. § 6972, is a "mandatory condition precedent to commencing suit" that "a district court may not disregard . . . at its discretion."  *Hallstrom*, 493 U.S. at 31.  The Court explained that "*[u]nder a literal reading of the statute, compliance* with the 60-day notice provision *is a mandatory, not optional, condition precedent for suit.*"  *Id.* at 25-26 (emphasis added).  The Court rejected petitioners' call for a "flexible or pragmatic construction" of the RCRA notice provision that would allow courts to stay an action for 60 days in the event notice was not provided prior to filing suit, holding that such an interpretation of Section 6972 "flatly contradicts the language of the statute."  *Id*. at 26.  Noting that "*[t]he parties have framed the question presented in this case as whether the [RCRA] notice provision is jurisdictional or procedural,*" the Supreme Court determined that "*[i]n light of our literal interpretation of the statutory requirement, we need not determine whether § 6972(b) is jurisdictional in the strict*

*sense of the term. . . .  As a general rule, if an action is barred by the terms of a statute, it must be dismissed.*"  *Id.* at 31 (citations omitted, emphasis added).

As the Eleventh Circuit observed in *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*, 51 F.3d 235, 239 (11th Cir. 1995), OPA's pre-suit presentment requirement is similar to the RCRA notice provision at issue in *Hallstrom*.  The Eleventh Circuit found *Hallstrom* instructive in reaching its holding that OPA's presentment requirement is a "mandatory condition precedent" to filing an OPA claim in court.  *Id.* at 239-40 (finding nothing in OPA's text or legislative history to "justify departing from the plain meaning of [the] statute's text").  Pointing to *Hallstrom*, the Eleventh Circuit held:

> "We are not at liberty to create an exception where Congress has declined to do so. . . .  If Appellants perceive a policy shortcoming caused by OPA's claims presentation requirement, that shortcoming 'arises as a result of the balance struck by Congress, and is properly remedied by congressional action.'"

*Id.* at 239 (quoting *Hallstrom*, 493 U.S. at 26, 30).

This Court has consistently followed the sound reasoning of the Eleventh Circuit in *Boca Ciega* to hold that OPA's presentment requirement is mandatory and cannot be waived.  *See Gabarick*, 2009 WL 102549, at *3; *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) (citing *Boca Ciega* in holding that "presentation requirement is jurisdictional and mandates dismissal" when not complied with by claimants); *Isla Corp. v. Sundown Energy, LP*, No. CIV.A. 06-8645, 2007 WL 1240212 (E.D. La. Apr. 27, 2007) ("[P]resentment of a claim in accordance with section 2713 is a 'mandatory condition precedent' for OPA claims.").

**B.    *Cosco Busan* Does Not Relieve Plaintiffs of the Presentment Requirement.**

With no basis to argue that they have satisfied presentment, Plaintiffs instead argue that OPA's presentment requirement does not apply to government plaintiffs, relying exclusively on

14

a single case decided outside this jurisdiction that has not been followed by any other court. (Opp. Br. at 24.)   The court in *United States v. M/V Cosco Busan* held that OPA Section 2717(f)(2)—a "Period of limitations" subsection that provides that "an action may be commenced . . . for recovery of removal costs at any time after such costs have been incurred"— allows the U.S. government to bring an action for response costs without satisfying the presentment requirement.  557 F. Supp. 2d 1058, 1060-61 (N.D. Cal. 2008).

The *Cosco Busan* court's reasoning is contrary to the plain language of the statute and would render the mandatory language of the presentment requirement meaningless in any action seeking removal costs.  The relevant language in 33 U.S.C. § 2717 does not address, much less alter, the presentment requirement; instead, it clarifies that although the three-year statute of limitations for removal costs under OPA does not begin to run until "after completion of the removal action," the cause of action nonetheless ***accrues*** before that time, assuming, of course, that other requirements such as presentment are also met.  *See Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 915 n.5 (9th Cir. 2010) (analyzing virtually identical language in CERCLA; "[a]lthough these events trigger the statute of limitations, a remediator need not wait until removal is complete or remediation is initiated to file suit.  ***A CERCLA recovery action accrues 'at any time after [recovery] costs have been incurred*.'")** (alteration in original; emphasis added); *see also* 8 Bus. & Com. Litig. Fed. Cts. § 95:45 (2d ed.) (OPA mirrors the provisions of CERCLA with respect to discharges of oil.").

Moreover, the *Cosco Busan* court misread the scope of 2717(f)(2) to apply only to ***government*** removal costs, whereas the section actually refers to ***all*** removal costs defined in Section 2702(b)(1) (and thus to ***all*** removal costs recoverable under OPA), including those incurred by "any person" consistent with the National Contingency Plan ("NCP").  *Compare* 33

15

U.S.C. § 2702(b)(1)(B) (removal costs include those incurred by "any person" if "consistent" with the NCP) *with Cosco Busan*, 557 F. Supp. 2d at 1061 (Sections "2702(b)(1) and 2717( f)( 2) permit only the United States, a State, or an Indian tribe to bring an action at any time to recover removal costs.").  By limiting its holding to government plaintiffs, the *Cosco Busan* court could still give apparent meaning to the presentment requirement for non-government plaintiffs.  *See id.* ("Defendants' dire predictions of statutory nullification are, however, unfounded….  All [ ] claimants [other than the United States, a State, or an Indian tribe] seeking damages or recovery costs must first present their claims to the responsible party, pursuant to § 2713.").  But the fact that the court's holding stopped short of completely nullifying Section 2717 is no reason to adopt an interpretation that is contrary to the Section's plain language.  Instead, Section 2717(f)(2) must be understood to apply to all plaintiffs and to merely start the clock running for accrual purposes; it cannot instead be read to gut the statute's plain and unambiguous presentment requirement.

Furthermore, the additional holding of *Cosco Busan*—permitting not only the United States' removal costs claims but also its damages claims to proceed without presentment—is not based on any statutory text, not even the court's erroneous interpretation of Section 2717. Section 2717(f)(1), which addresses damages actions, does not have any language like that in Section 2727(f)(2) that could support the court's reading.  Yet the court still permitted damages claims to proceed "[i]n the interest of judicial economy."  557 F. Supp. 2d at 1062.  This only underscores the court's fundamental misreading of the statute and disregard of its terms.

In sum, *Cosco Busan* is an incorrectly decided case, as reflected in the fact that it contravenes the language of OPA, conflicts with other court decisions (including this Court's) interpreting OPA's presentment requirement, and has not been followed by any other court.  *See*

*also United States v. Murphy Exploration & Prod. Co.*, 939 F. Supp. 489, 492 (E.D. La. 1996) (noting that "[n]o legal authority . . . for the disregard of Section 2713 is offered by the government," but allowing the United States' OPA claims to proceed because presentment had been satisfied).

## V.      PLAINTIFFS' ATTEMPTS TO SAVE THEIR STATE LAW CLAIMS FAIL.

As discussed in BP's opening brief, many of plaintiffs' state law claims fail for independent reasons.  Plaintiffs' opposition fails to counter these reasons.

### A.      Under OCSLA, Only the Law of Louisiana, as the Adjacent State, Can Apply.

As discussed above (*see* Section I.A, *supra*), OCSLA provides that only the law of the adjacent State can apply here.  Accordingly, to the extent that Plaintiffs have any valid state law claims—which they do not—their only claims must arise under Louisiana state law. Accordingly, any claims for relief under the state laws of Alabama, Florida, Mississippi, Texas, or any other State besides Louisiana must be dismissed.

### B.      The Louisiana Oil Spill Act Preempts Application of Any Other Louisiana Law.

#### 1.      The Louisiana Oil Spill Act Provides the Only Potential Source of Liability Under Louisiana Law.

Plaintiffs cannot dispute that the only possible source of liability under Louisiana law is the Louisiana Oil Spill Response and Prevention Act.  Section 2491(A) of the Act provides:

> "When applicable, the limitations of liability and immunities provided in this Chapter shall be exclusive and shall supersede any other liability provisions provided by any other applicable state law.  The provisions of this Chapter shall supersede, but not repeal, any conflicting laws of this state.   Any conflicting applicable federal law shall take precedence over this Chapter."

La. Rev. Stat. § 30:2491(A).  Section 2496 likewise states that "[t]he provisions of this Chapter shall be the exclusive authority on oil spill prevention, response, removal, and the limitations of

17

liability." *Id.* § 30:2496. These provisions demonstrate that LOSPRA supersedes other sources of liability related to oil spills (except for the very limited exception for suits under the Wildlife Statute brought by the Department set out in Section 30.2491(B)), *see* Section V.B.2, *infra*.) The meaning of a law is determined "by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law." *City of DeQuincy v. Henry*, 62 So. 3d 43, 45 (La. 2011). The intent of LOSPRA is "to support and complement" OPA. La. Rev. Stat. § 30:2453. Like OPA, LOSPRA provides a comprehensive and exclusive approach to oil spills. It therefore supersedes alternate sources of liability.[7] Of course, as discussed in Section I.A, *supra*, there is no OCSLA gap where state law can apply here, so the Plaintiffs' claims for relief under the Louisiana Oil Spill Act must also be dismissed.

        2.      The Louisiana Oil Spill Act Precludes the Parish District Attorneys' Claims for Penalties under the Wildlife Statute.

The Louisiana Oil Spill Act precludes claims brought by the Parish District Attorneys for penalties under La. Rev. Stat. § 56:40.1. First, the plain language of LOSPRA confirms that its savings clause for wildlife penalty cases only preserves claims brought by the Department of Wildlife and Fisheries.

> "[N]othing herein shall be construed to preclude the ***Department of Wildlife and Fisheries*** from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to R.S. 56:40.1 et seq."

---

[7]    It is instructive that the title of Section 30.2491 is "Exclusive remedies," and the title of Section 30.2496 is "Exclusive authority." Although BP asserts that the exclusive nature of the Louisiana Oil Spill Act and its remedies is clear from the text, should the Court find any ambiguity, it may consider the title in "interpret[ing] legislative intent." *See State v. Williams*, 60 So. 3d 1189, 1192 (La. 2011) (citing *State v. Madere*, 352 So. 2d 666, 668 (La. 1977)); *see also Deculus v. Welborn*, 964 So. 2d 930, 933 (La. 2007) (title instructive in "ascertaining [an act's] meaning"); *Hatten v. Schwerman Trucking Co.*, 889 So. 2d 448, 450 (La. Ct. App. 2004) (title "may be used to determine legislative intent") (citing *La. Associated Gen. Contractors, Inc. v. Calcasieu Parish Sch. Bd.*, 586 So. 2d 1354, 1367 (La. 1991)).

La. Rev. Stat. § 30:2491(B) (emphasis added).  Plaintiffs focus all their attention on the reference to La. Rev. Stat § 56:40.1 *et seq.* (the "Louisiana Wildlife Statute"), which authorizes the district attorneys to bring civil suits in cases not involving oil spills.  But they ignore the fact that the clause does not save ***every civil suit*** brought pursuant to the Wildlife Statute but explicitly preserves ***only a civil suit brought by the Department*** itself, not by District Attorneys or other governmental agencies.

Second, the argument that the District Attorneys need not rely on the savings clause in Section 2491(B) because Section 2491(A) does not bar their claims must be rejected because it renders Section 2491(B) superfluous.  The Legislature would not have needed to explicitly preserve the Department's wildlife claims if Section 2491(A) did not supersede them.  *See*, *e.g.*, *City of DeQuincy*, 62 So. 3d at 45 ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found."); *Toomy v. La. State Employees' Ret. Sys.*, 63 So. 3d 198, 202 (La. Ct. App. 2011) ("It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given each such provision, and that no unnecessary words or provisions were used.") (internal citation omitted).  Finally, as discussed above, Plaintiffs' interpretation does not comport with the plain meaning of the statute.  (*See* Section V.B.1, *supra*; *see also* Section II of BP's Individual Bundle C Reply (Doc. 2741) for a full discussion of why LOSPRA preempts the claims of the Parish District Attorneys.)

C.    **Plaintiffs' Claims under the Florida, Louisiana, and Texas Oil Spill and Pollution Statutes Fail as Impermissible Attempts to Regulate Interstate Commerce.**

As discussed in BP's opening brief, Plaintiffs' claims under the Florida, Louisiana, and Texas Oil Spill and Pollution statutes fail as impermissible attempts to exercise jurisdiction far

outside of the States' boundaries and to regulate interstate commerce.  (*See* BP's Br. Section III.D.3.)  As discussed above, 33 U.S.C. § 2718(a) does not preserve Plaintiffs' state law claims as to pollution arising beyond state waters.  (Opp. at 12-13; *see* n. 4, *supra; see also* B1 Reply (Doc. 2312) Section III.F. for additional discussion.)

### D.      Plaintiffs' Nuisance, Trespass, and Fraudulent Concealment Claims Fail.

First, Plaintiffs do not respond to, much less rebut, BP's arguments on nuisance, conceding that they do not state a valid claim.  Second, because the trespass claim is brought on behalf of all Plaintiffs, whether or not they own property that has been physically invaded, it is at the very least overbroad, and must be dismissed as to those Plaintiffs who own no property, or whose property has not been physically invaded.  Finally, Plaintiffs fail to state valid claims for fraudulent concealment, for the reasons previously explained in BP's B1 reply. (*See* BP's B1 Reply Section III.E.3.)

## CONCLUSION

For the foregoing reasons and those set forth in BP's Opening Memorandum in Support of its Motion to Dismiss, BP respectfully requests that the Local Government Entity Voluntary Master Complaint be dismissed in its entirety.

Date:  August 5, 2011                           Respectfully submitted,


                                                /s/ Don K. Haycraft
                                                Don K. Haycraft (Bar #14361)
                                                R. Keith Jarrett (Bar #16984)
                                                LISKOW & LEWIS
                                                701 Poydras Street, Suite 5000
                                                New Orleans, Louisiana 70139-5099
                                                Telephone: (504) 581-7979
                                                Facsimile: (504) 556-4108

                                                and

                                                Richard C. Godfrey, P.C.
                                                J. Andrew Langan, P.C.
                                                Andrew B. Bloomer, P.C.
                                                Catherine L. Fitzpatrick
                                                Elizabeth A. Larsen
                                                Kirkland & Ellis LLP
                                                300 North LaSalle Street
                                                Chicago, IL 60654
                                                Telephone: (312) 862-2000
                                                Facsimile: (312) 862-2200

                                                Jeffrey B. Clark
                                                Kirkland & Ellis LLP
                                                655 Fifteenth Street, N.W.
                                                Washington, D.C. 20005-5793
                                                Telephone: (202) 879-5000
                                                Facsimile: (202) 879-5200

                                                Robert C. "Mike" Brock
                                                Covington & Burling LLP
                                                1201 Pennsylvania Avenue, NW
                                                Washington, DC 20004-2401
                                                Telephone: (202) 662-5985


                                                *Attorneys for BP Exploration & Production*
                                                *Inc. and BP America Production Company*

21

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of August, 2011.


       /s/ Don K. Haycraft_____
        Don K. Haycraft