# BINGHAM

Warren Anthony Fitch
Direct Phone:  202.373.6695
Direct Fax:       202.373.6001
tony.fitch@bingham.com

July 21, 2011

**Via E-Mail**

J. Andrew Langan, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

Re:   **Anadarko's Position Regarding Scope of Dennis Sustala's July 29, 2011 Deposition as a 30(b)(6) designee for Topic 7**

Dear Andy:

As suggested by Magistrate Judge Shushan, this letter provides Anadarko's view of the scope of Topic 7 of the "Agreed 30(b)(6) Deposition Notice of [sic] BP Defendants." In addition, the letter also includes a list of sources Anadarko believes the designee should be familiar with in order properly to be prepared to testify concerning this topic as a corporate representative under Fed. R. Civ. P. 30(b)(6).

Topic 7 requires BP to designate a corporate representative to testify to the following:

> The background, basis (or bases), intent, preparation, drafting, submission and approval of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note".

Dennis Sustala has been designated by BP to testify on this Topic on July 29, 2011.

Anadarko believes that the subject matter encompassed by Topic 7 can be fairly categorized as follows:

1. The **background, bases, and intent** of BP's Application for Permit to Modify [APM] on or around April 16.

2. The **drafting, submission, and approval** of BP's APM on April 16.

3. The **deviations**, if any, between the APM and other procedures, including but not limited to the April 12, 2010 Drilling Plan, the April 14, 2010 Morel "Forward Ops" e-mail or the April 20, 2010 Ops note.

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

A/74449644.1

July 21, 2011
Page 2

1. **Background, Bases and Intent of BP's APM**

Anadarko believes that the witness should be prepared to testify with respect to the following aspects of the background, bases, and intent of -- *i.e.*, the reasoning behind -- the procedure specified in the APM:

1. The engineering analysis and determinations underlying such decisions as:
    a. using heavyweight drillpipe instead of drill collars
    b. setting the lockdown sleeve during temporary abandonment.
    c. displacing mud with seawater to 8,367 feet
    d. setting a cement plug in seawater instead of mud
    e. not using killweight mud during displacement
    f. not using intermediate plugs between the bottomhole cement and the surface plug
    g. not closing the BOP's annular preventer or variable bore ram during displacement
    h. providing two negative tests in the APM -- one before displacement and one afterward
    i. the availability of drill collars and other temporary abandonment equipment on the rig

2. The impact on risk of the aforementioned engineering decisions.

2. **The Drafting, Submission, and Approval of the APM**

Anadarko believes that the witness should be prepared to testify with respect to the following aspects of the *process* that was used in creating and altering the APM:

1. Whether BP policies required a formal risk assessment, including an MOC, for the various changes that occurred in designing the temporary abandonment procedure
2. Whether BP performed any formal risk assessments while drafting the APM, specifically including whether formal risk assessments were performed for any changes between the initial draft on April 12 and the submission on April 16
3. Whether BP had written engineering guidance regarding temporary abandonment procedures in April 2010 and if so, what?
4. Whether BP had written engineering guidance regarding negative test procedures in April of 2010 and if so, what?
5. BP's position on whether detailed negative pressure test procedures would have reduced the risk of a blowout
6. Who within BP approved the April 15, 2010 drilling plan that formed the basis for the APM
7. When BP first began to draft a temporary abandonment procedure for the Macondo well.

3. **Deviations between the procedure set forth in the APM and the procedures set forth in the listed documents**

July 21, 2011
Page 3

Anadarko believes that the witness should be prepared to testify with respect to the following aspects of how the following procedures may have deviated from the APM:

1. Whether the rig crew was made aware that a negative test procedure was discussed in the 7:30 a.m. call on April 20
2. The procedure discussed at the 7:30 a.m. rig call on April 20
3. Whether OIM Jimmy Harrell insisted in the morning call that a negative test be performed
4. Who at BP made the decision not to inform the MMS of changes after the approval of the APM
5. BP's position on whether the April 20 Ops Note was consistent with the APM
6. The temporary abandonment as actually performed on April 20, including one negative test on the drill pipe and a second negative test on the kill line.
7. BP's position on whether the temporary abandonment procedure as performed was consistent with the APM
8. If BP believes the procedures and actions on April 20 were consistent with the APM, the basis for that belief
9. The basis for performing a negative test in the middle of displacement as provided by the April 20 Ops Note
10. Whether a formal risk assessment, including an MOC, was completed to reflect the changes between the April 16 APM and the April 20 procedures
11. The reasoning, if any, behind performing a second negative test on the kill line on the evening of April 20.

**4.   List of Potential Source Materials**

Anadarko believes that the witness should be prepared to discuss in relevant part:

1. The pertinent conclusions in BP's Bly Report
2. The pertinent conclusions in the Oil Spill Commission's Chief Counsel's Report
3. The pertinent conclusions Transocean's Investigation Report
4. Pertinent prior testimony in this case by BP 30(b)(6) designees:
    a. Ian Little
    b. Jim Cowie
    c. Randy Ezell
5. Pertinent prior testimony in this case by:
    a. Lee Lambert
    b. John Guide
    c. Greg Walz
    d. Brent Cocales
    e. Chris Pleasant
    f. Doug Sprague
6. Pertinent prior testimony before the Marine Board of Inquiry by:
    a. Jimmy Harrell
7. Relevant interview notes from BP's internal investigation for the following BP personnel who are unavailable as witnesses:
    a. Brian Morel

July 21, 2011
Page 4

    b. Mark Hafle
    c. Bob Kaluza
    d. Don Vidrine
8. Written BP procedures for temporary abandonment.
9. Pertinent e-mails and other documents
10. Responses by BP to pertinent interrogatories and requests for admissions.

Please let me know promptly if BP disagrees with any of the foregoing observations.

Sincerely,

*[signature]*

Warren Anthony Fitch