**From:** Miller, Kerry J.
**Sent:** Wednesday, August 10, 2011 5:06 PM
**To:** Sally Shushan
**Cc:** Alan York; Ben Allums; Don Haycraft; Edward Flanders; Henry Dart; Jim R; Joe Hassinger; L Strange; Liaison 2179; Mike O'Keefe; Mike Underhill; Steve Herman; 'Miller, Kerry J.'
**Subject:** DWH - MDL 2179: Transocean's respose to BP's request for add'l Phase 1 deponents

Dear Judge Shushan:

This letter responds to BP's last-minute request for additional Phase 1 deponents from Transocean. BP's letter makes a number of blatant misstatements and is not the first time BP has attempted to push the discovery boundaries established by the Court to the disadvantage of Transocean and other parties. *See* July 26, 2011 Orders denying BP's discovery requests served on Halliburton and Transocean (Docs. 3461 and 3459).

It is unreasonable for BP to argue that a rolling production of documents justifies untimely phase 1 fact discovery and deposition requests. If true, phase 1 fact depositions would never end. For example,

- BP has produced more than 165,000 documents exceeding 1.4 million pages since May 27, 2011.
- Since June 22, 2011, BP has produced more than 92,000 documents and 946,328 pages.
- Since May 27, 2010, BP has filed a staggering twenty-eight (28) privilege logs, sixteen of which were filed after June 22, 2011.
- BP privilege log 32 is more than twice the length of any other privilege log and was filed on July 1, 2011.

The Court set a thoughtful and very expedited discovery schedule in large part to give the Court and the parties time to address expert discovery and trial preparation. The Court has advised the parties that there are more than 85 retained experts. Any additional Phase 1 depositions would likely be taken in mid to late-September, during the midst of Phase 1 expert preparation and reports. BP's last-minute request for additional depositions seems designed to interfere with expert discovery deadlines and Transocean's trial preparation.

Further, documents produced after May 27 and June 22, 2011 do not justify these requests. To the contrary, the information BP cites in its letter has been in BP's possession for months. Claims of surprise or a "new" need for these persons are disingenuous.

- **Barry Braniff:** Paul Johnson identified Mr. Braniff as a member of the Transocean Wells Operation Group during his deposition on March 28, 2011. (Johnson Dep. at 189-91).

- **Daniel Barrens:** As BP admits in its letter, Mr. Barrens was identified in the Caleb Holloway investigation notes which were produced over four months ago on March 25, 2011. *See* TRN-MDL-00493089. Mr. Barrens was also identified by Mr. Holloway during his May 21, 2011 deposition. (Holloway Dep. at 68). Both the

notes and deposition testimony indicate that Mr. Barrens was on the rig floor during the events of April 20, 2010.

- **Mike Fry:** Counsel for BP asked a Transocean witness specifically about Mr. Fry in April: "And the subsea superintendent who had responsibility for the DEEPWATER HORIZON, that was Michael Fry; is that right?" (Stringfellow Dep. at 397). In addition, Paul Johnson identified Mr. Fry as part of the BOP support team at his March 28, 2011 deposition. (Johnson Dep. at 380). Mr. Johnson also referred to Mr. Fry as one of Transocean's BOP experts in his second day of testimony on March 29, 2011, stating: "Michael Fry is one of our subject matter experts on BOP, he works for Transocean in the BOP department." (Johnson Dep. at 528).

- **Bob Scott:** Counsel for BP asked a Transocean witness specifically about Mr. Scott in May: "I want to – what I basically want to find out is if you recall that on May 28, 2010, about five weeks after the tragedy, that you were interviewed by a couple of people and notes were taken during the interview. Do you recall that – that interview process. … There was a fellow named Bob Scott who was involved in the interview. Did you know who Bob Scott was?" (Holloway Dep. at 98). Mr. Scott is listed as one of the two Caleb Holloway interviewers in the investigation notes produced on March 25, 2011. *See* TRN-MDL-00493089.

BP knew of these individuals months ago and had ample opportunity to request their depositions. For example, BP recently sought and was granted six additional depositions of Transocean employees, including Perrin Roller, Derek Hart, Bob Walsh, Robert Tiano, John McDonald, and Ewen Florence, and thus far has 3.5 hours per witnesses for a total of 1,260 minutes or 21 hours of additional deposition time. BP did not mention Barry Braniff, Daniel Barrens, Mike Fry, or Bob Scott while requesting those additional six depositions.

Similarly, BP's request for additional 30(b)(6) witnesses is also improper. BP knew of the requested topics months ago. BP should not be allowed to wait over two months to request depositions on these topics; if BP truly believed such depositions were necessary and important, they should have been scheduled earlier. The Transocean Investigation Report makes numerous references to the work performed by Stress Engineering Services Inc. For example, Chapter 3.1 discusses in detail the tests Stress Engineering performed on the float collar, and Stress Engineering's Macondo Casing Calculations are attached to the Investigation Report as Appendix B. Transocean's Well Advisor Program was referenced during David Cameron's deposition on June 13, 2011. (Cameron Dep. at 111). During Mr. Cameron's deposition, the Well Advisor Program was described as a comprehensive well review tool kit containing practical check lists and guidelines, including a section where comments can be made regarding certain data that may need to be clarified to assist the Rig Manager. (Cameron Dep. at 111). BP's 30(b)(6) requests should be denied because they are late, unnecessary, duplicative, and designed to distract Transocean from compliance with other court deadlines.

With regard to Eddy Redd, Transocean has previously noted that he is no longer employed by Transocean. Mr. Redd works for Eurasia and is stationed in Russia. Transocean does not have BP's international subpoena power – overly paid consulting agreements.

In conclusion, BP's August 5, 2011 request for additional Phase 1 depositions should be denied. It is unreasonable for BP to spring additional requests approximately 3.5 hours before the court-imposed final deadline and just as the parties enter a period of intense work on experts and trial preparation as per the Court's orders.  *See Aristocrat Tech. v. Int'l Game Tech.*, No. C-06-03717 RMW, 2010 WL 3060162 at *2 (N.D. Cal. Aug. 3, 2010) (denying defendant's motion for additional depositions filed one month before the discovery deadline because defendant "failed to explain why it waited more than two months" to file its motion).

BP chose to wait until the last moment to request still more depositions.  Phase 1 depositions scheduled now will likely be taken during expert discovery.

Thank you for the Court's consideration.