**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | **MDL No. 2179** |
| | **SECTION J** |
| | **JUDGE BARBIER** |
| **APPLIES TO: 11-274 c/w 11-275** | **MAGISTRATE SHUSHAN** |

**RANGER INSURANCE LIMITED'S MEMORANDUM IN SUPPORT**
**OF ITS RESPONSE TO BP PARTIES' MOTION FOR JUDGMENT ON**
**THE PLEADINGS IN THE INSURANCE ACTIONS**

Michael J. Maloney
Maloney★Martin, L.L.P.
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas  77019
(713) 759-1600 – telephone
(713) 759-6930 – facsimile
E-mail: mjmaloney@maloneymartinllp.com

Robin M. Ziek
Robin M. Ziek, Attorney at Law
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas  77019
(713) 222-8030 – telephone
(713) 759-6930 – facsimile
E-mail: rziek@sbcglobal.net

Dwayne R. Day
Dwayne Day, P.C.
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas  77019
(713) 284-1618 – telephone
(713) 759-6930 – facsimile
E-mail: dday@ddaylaw.com

*Counsel for Ranger Insurance Limited*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF CONTRACT INTERPRETATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.    THE POLICY WORDING CAN NOT BE CONSIDERED IN ISOLATION WITHOUT CONSIDERATION OF THE DRILLING CONTRACT UPON WHICH BP RELIES FOR ITS ADDITIONAL INSURED STATUS. THE RANGER POLICY UNAMBIGUOUSLY RESTRICTS BP'S RIGHTS TO COVERAGE TO THE OBLIGATIONS ASSUMED BY TRANSOCEAN IN THE DRILLING CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           (1)    Policy provisions regarding additional insureds. . . . . . . . . . . . . . . . . 7

           (2)    The Drilling Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           (3)    BP's Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.    BP FAILS TO IDENTIFY FOR WHAT RISKS IT IS CLAIMING COVERAGE AND THE POLICY PROVISIONS THAT PROVIDE SUCH COVERAGE. BP DISCLAIMS COVERAGE UNDER SECTION I WHICH IS THE ONLY SECTION THAT PROVIDES FIRST LINE OIL POLLUTION COVERAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.    BP HAS NOT SHOWN THAT IT IS ENTITLED TO A POLICY INTERPRETATION FAVORING THE INSURED. . . . . . . . . . . . . . . . . . . . . . . . . . . 25

           (1)    Contract construction rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

           (2)    Fact issues exist regarding which party is entitled to a favorable presumption. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings           i

**<u>TABLE OF AUTHORITIES</u>**

<u>CASES</u>                                                                                           **Page(s)**

*American Empire Surplus Lines Insurance Co. v.*
  *Crum & Forster Specialty Insurance Co.*, 2006 WL 1441854,
  *7 fn 14 (S.D.Tex. May 23, 2006)............................................... 6

*Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*,
  566 F.3d 483 (5th Cir. 2009)........................................... 11, 16, 17

*Balandran v. Safeco Ins.Co. of Am.*, 972 S.W.2d 738 (Tex. 1998)..................... 5, 26

*Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir.2009). ............................ 14-17

*Certain Underwriters at Lloyd's London v. Oryx Energy Co.*,
  142 F.3d 255 (5th Cir.1998). ........................................ 14, 15, 17

*Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764 (5th Cir.1995). .......................... 5

*Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La.*, 2004 WL 2452780
  (E.D.La. 2004) aff'd 161 Fed.Appx. 378 (5th Cir. 2006). ........................ 15

*Coker v Coker*, 650 S.W.2d 391 (Tex. 1983). .................................. 6, 27, 29

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
  940 S.W.2d 587 (Tex.1996)............................................... 25

*Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501 (Tex. 1975). ................... 6

*Eagle Leasing Corp. v. Hartford Fire Ins. Co.*,
  540 F.2d 1257 (5th Cir.1976) *cert. denied*,
  431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063, (1977)....................... 27, 28

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*,
  256 S.W.3d 660 (Tex. 2008). ...................................... 11, 12, 16-18

*Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73
  (Tex.App.- Houston [14th Dist.] 1989, writ denied)........................... 26

*Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex.2006). .............................. 6

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132 (Tex.1994). ............................ 5

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                          ii

*General Conference Corp. Of Seventh-Day Adventists v.*
    *Seventh Day Adventist Congregational Church,* 887 F. 2d 228 (9th Cir. 1989). . . . . . . . . 4

*Getty Oil Co. v. Insurance Co. of North America.*, 845 S.W.2d 794 (Tex.1992). . . . . . . . . . 12, 17

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,*
    327 S.W.3d 118 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glover v. National Ins. Underwriters*, 545 S.W.2d 755 (Tex.1977). . . . . . . . . . . . . . . . . . . . . 25

*Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734 (Tex.1990). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455 (Tex.1997). . . . . . . . . . . . . . . . . . . . . 25

*Herbert Abstract v. Touchstone Properties, Ltd.,*
    914 F. 2d 75 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Enron Corp. Securities, Derivative & "Erisa" Litigation,*
    391 F.Supp.2d 541, 581 fn 45 (S.D.Tex. Aug 01, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Industrial Risk Insurers v. New Orleans Pub. Serv., Inc.,*
    666 F.Supp. 874 (E.D.La. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281 (5th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Johnson Service Co. v. Transamerica Ins. Co.*, 485 F.2d 164 (5th Cir.1973). . . . . . . . . . . . . . . 6

*LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873 (5th Cir.1999). . . . . . . . . . . . . . . 13, 15, 17

*Lubrizol Corp. v. Gray Ins. Co.*, 2009 WL 348820 (5th Cir.(Tex.) Feb 12, 2009). . . . . . . . . . . 17

*McDermott Intern., Inc. v. Lloyds Underwriters of London,*
    944 F.2d 1199 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Mostowny v. United States,* 966 F. 2d 668 (Fed. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*National Union Fire Ins. Co. etc. v. CBI Industries, Inc.*,
    907 S.W.2d 517 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25, 26

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,*
    811 S. W. 2d 552 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                              iii

*One Beacon Ins. Co. v. Crowley Marine Services, Inc.,*
No. 10-20417, 2011 WL 3195292, at *8 (5th Cir. July 28, 2011) . . . . . . . . . . . . . . . . . . 19

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Sharp v. State Farm Fire & Cas. Inc. Co.*, 115 F.3d 1258 (5th Cir.1997) . . . . . . . . . . . . . . . . . . 25

*Tawes v. Barnes*, 340 S.W.3d 419 (Tex.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*The Lubrizol Corp. v. The Gray Ins. Co.*, 2008 WL 1767711 (S.D.Tex. 2008)
2008 WL 1767711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773 (Tex.2008) . . . . . . . . . . . . . . . . . . . . . . . 6

*Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) . . . . . . . . . . . . . . . 5

*Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.,*
359 F.3d 770 (5th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F. 3d 887 (5th Cir. 1998) . . . . . . . . . . . 4

*Vought Aircraft Industries, Inc. v. Falvey Cargo Underwriting, Ltd.,*
729 F. Supp.2d 814 (N.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                           iv

## INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to the Court's applicable Case Management Orders *(Doc. 2593, 2849)*, **RANGER INSURANCE LIMITED (RANGER)** submits this Memorandum in Support of it's Response to BP Parties[1] Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12 (c) in Case Nos. 11-274 ("the Ranger suit") and 11-275 (the "Lloyd's suit") collectively referred to as the "Insurance Actions".

The BP Parties seek a final judgment on the pleadings of all claims presented in the consolidated Insurance Actions,[2] which comprise the Amended Complaint brought by **RANGER** in Case No. 11-247 *(Doc. 2 in Case No. 10-cv-2009 (S. D. Tex.))* and the Complaint of Certain Underwriters at Lloyd's, London and Various Insurance Companies ("Excess Underwriters") in Case No. 11-275 *(Doc. 1 in Case No. 10-cv-1823 (S. D. Tex.))*.  By this Court's Case Management Order for Insurance Actions of May 31, 2011 *(Doc.2593),* the Court prohibited BP from relying upon evidence other than **RANGER**'s Amended Complaint together with the  insurance policy issued by **RANGER** ["Ranger Policy", *TRN-MDL - 0023751 - 00237634]* and the Drilling Contract in effect between BP and Transocean *[TRN-MDL - 00027281 - 00027861]* .

BP misinterprets the applicable policy wording or misstates the legal precedents upon which it relies, fails to intelligibly identify the particular insurance coverage under the policy for which it seeks a determination in its favor, and has not shown it is entitled to a favorable presumption for

---

[1]The BP Parties (sometimes referred to as "BP") are all BP affiliated Defendants and Counter-Claimants including BP plc, BP Exploration & Production, Inc., BP America Production Company, BP Corporation North America, Inc., BP Company North America, Inc., BP America, Inc. and BP Holdings North America Limited.

[2]The Insurance Actions are two declaratory judgment actions brought by **RANGER** and Excess Underwriters to determine whether insurance coverage was  provided to BP Parties as an "additional insured" in pollution related liabilities under the policies in question and if so, to what extent BP was entitled to coverage for those claims.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                          1

policy interpretation.

The Ranger Policy wording can not be considered in isolation without consideration of the Drilling Contract upon which BP must rely for its additional insured status.  When the policy and contract are considered in conjunction as required by a proper reading of controlling Fifth Circuit and Texas precedent, it is clear that BP is entitled to additional insured coverage under Transocean's policies but only to the extent of liabilities assumed by Transocean under the Drilling Contract. Transocean did not assume any contractual liabilities with regard to pollution-related risks associated with the Macondo blowout.  As a result, BP cannot carry its burden of showing that it is entitled to the coverage it seeks under the Ranger Policy.  Any determination of coverage for BP as an additional insured under the Ranger Policy must rely on discovery concerning the respective contractual liabilities assumed by BP and Transocean and is dependent upon determinations of causation, liability and damages in the underlying lawsuits.

BP fails to identify what portion of the Ranger Policy applies to the pollution-related risks at issue.  BP improperly requests a declaration of additional insured status under the entire Ranger Policy while citing the additional insured wording found only in Section II.  BP wholly ignores different additional insured wording contained in Section I of the Ranger Policy which is the section of the policy that an insured must first look to for coverage of pollution liabilities, because recourse to Section II is precluded to the extent Section I provides such pollution coverage. The Ranger Policy itself indicates that Section I enjoys priority over  Section II regarding potential coverage, but BP does not even attempt to bring itself within coverage of Section I as an additional insured.  The reason for BP's subterfuge is clear.  Section I limits additional insured coverage only to the extent as may be "required" under contract or agreement.  [*TRN - MDL - 00237553*].

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                 2

BP cannot simply presume it is entitled to benefit from favorable interpretations of ambiguous policy wording, as might normally be available to an insured under the *contra proferentum* doctrine.  First, BP has not shown that the policy wording is ambiguous, which is a predicate for applying the *contra proferentum* doctrine.  Furthermore, BP's additional insured status under the Ranger Policy is clearly and unambiguously limited to liabilities assumed by Transocean under the Drilling Contract, and Transocean has assumed no such liabilities.  Even assuming BP's contention that the Ranger Policy is ambiguous, fact issues exist regarding the relative bargaining power of **RANGER** and Transocean precluding judgment on the pleadings under FRCP 12(c).  The fact that Transocean played a role in selecting policy wording and that **RANGER** is a "captive" insurer of Transocean, indicate that BP is not entitled to the benefit of the *contra proferentum* presumption.

By now this Court is familiar with the core issues.  BP made essentially the same unsuccessful argument to the MDL Panel in its Motion to Vacate Conditional Transfer Order No. 5 *(Doc. 14;* JPML, MDL-2179*)* in an attempt to avoid determination of the coverage issues in this MDL.  BP argued that the insurance issues can be determined without reference to the respective liabilities of the parties in the Drilling Contract and, therefore, the Insurance Actions should not be transferred to the MDL.  **RANGER** and Excess Underwriters argued that coverage was dependent upon the determination of causation, fault and damages that will be made within the MDL and could not be determined in isolation based solely on the policy wordings.  The JPML agreed with **RANGER** and Excess Underwriters and was persuaded to transfer the cases to this MDL.

BP again made this same argument to this court when it asked to limit discovery to insurance policies <u>only</u> and to prohibit discovery regarding the interpretations of the Drilling Contract as

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                                   3

irrelevant.  This court also rejected that contention and  ordered that discovery regarding the interpretation of the Drilling Contract was relevant.  (*Doc. 2593, p. 3*).  This Court should similarly reject BP's argument in this Motion, so that the Insurance Actions may go forward with standard discovery so that legal determinations may be made in due course.

## FACTUAL BACKGROUND

On April 22, 2010, the *Deepwater Horizon,* (a semi-submersible mobile offshore drilling unit owned by Transocean Ltd.), after burning for two days following an onboard explosion, sank into the Gulf of Mexico.  The explosion resulted in eleven (11) deaths, and physical injury to others as well as property damage. At the time of the accident, the *Deepwater Horizon* was engaged in exploratory drilling activities at the Macondo Well pursuant to the Drilling Contract between Transocean and BP.  The Macondo well suffered a blowout which caused oil pollution to contaminate a significant area of the Gulf of Mexico.

## STANDARD OF REVIEW

The standard applied on a Rule 12 (c) motion is essentially the same as that applied on Rule 12(b)(6) motions, i.e. judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to a judgment as a matter of law. *Herbert Abstract v. Touchstone Properties, Ltd.,* 914 F. 2d 75, 76 (5th Cir. 1990).   As with Rule 12(b)(6) motions, the court must assume the truthfulness of the material facts alleged in the complaint.  Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party.  *General Conference Corp. Of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church,* 887 F. 2d 228, 230 (9th Cir. 1989); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F. 3d 887, 891 (5th Cir. 1998)*.*

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                                    4

The motion must be denied unless there appears "to a certainty" that no relief is possible under any state of facts the plaintiff could prove in support of their claim. *Mostowny v. United States,* 966 F. 2d 668, 672 (Fed. Cir. 1992). **RANGER** has plead sufficient facts that if taken as true would support a judgment in its favor. Thus, the BP parties are not entitled to judgment on the pleadings as **RANGER**'s complaint raises plausible claims and all doubts must be resolved in its favor.

## STANDARD OF CONTRACT INTERPRETATION

The Ranger Policy specifies that the proper and exclusive law of the policy shall be Texas law. [*TRN - MDL - 00237547;* Declarations, Item 12 at pg 7 of 93]. Under Texas law, the general rules of contract interpretation govern a court's review of an insurance policy. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004); *see also Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir.2004); *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767-68 (5th Cir.1995).

Therefore, the primary goal is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins.Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998); *see also Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990). When interpreting the language of an insurance policy, the courts are to read all parts of the policy together in order to give meaning to every sentence, clause, and word to avoid rendering part of the policy inoperative. *Balandran,* 972 S.W.2d at 741.

If the policy language has only one reasonable interpretation, then it is not ambiguous, and

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                 5

courts must construe it as a matter of law. *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex.2006). If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous. *National Union Fire Ins. Co. etc. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker v Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Initially, the insured has the burden of establishing coverage under the terms of the policy. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 124 (Tex. 2010), citing *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 782 (Tex.2008). An additional insured clause comprises an affirmative grant of coverage, so the prospective additional insured has the burden to show it is potentially within the grant of coverage. *See American Empire Surplus Lines Insurance Co. v. Crum & Forster Specialty Insurance Co.*, 2006 WL 1441854, *7 fn 14 (S.D.Tex. May 23, 2006).

Moreover, in Texas, one who is not privy to a written contract must demonstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement. *Johnson Service Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 171 (5th Cir.1973) (citations omitted). Equally clear, is that the intention of the contracting parties to benefit the purported beneficiary must be ascertained from the language of the contract itself. *Id.* In deriving such intent, Texas courts begin with the presumption that parties contract for themselves. A contract will not be construed as having been made for the benefit of third parties unless it clearly and unequivocally appears from the written agreement that such was the intention of the contracting parties. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex.2011), citing *Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975) (citations omitted).

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                        6

## ARGUMENT

**A.     THE POLICY WORDING CAN NOT BE CONSIDERED IN ISOLATION WITHOUT CONSIDERATION OF THE DRILLING CONTRACT UPON WHICH BP RELIES FOR ITS ADDITIONAL INSURED STATUS.  THE RANGER POLICY UNAMBIGUOUSLY RESTRICTS BP'S RIGHTS TO COVERAGE TO THE OBLIGATIONS ASSUMED BY TRANSOCEAN IN THE DRILLING CONTRACT.**

In it's Motion, BP argues that the Policy wording should be considered in isolation when determining BP's coverage rights as an "additional insured", and that restrictions contained in the Drilling Contract regarding the scope of Transocean's obligation to name BP as an additional insured should be ignored.  This is senseless, as the Ranger Policy provisions themselves (by BP's own admission) require reference to the Drilling Contract in determining whether BP is entitled to additional insured status.  More importantly, BP misinterprets or misstates the legal authorities upon which it relies in support of its position.   In fact, those precedents do not support BP, but demonstrate that **RANGER** is correct in its position that the Drilling Contract provides the basis and scope for any additional insured status enjoyed by BP.

### (1)     Policy provisions regarding additional insureds.

Coverage for additional insureds under Section I and Section II of the Policy is provided by Paragraph 3 of Endorsement No. 1 [*TRN - MDL - 00237611*] (emphasis added), stating that:

> "Underwriters agree *where required by written contract, bid or work order*, additional insureds are automatically included hereunder, and/or waiver(s) of subrogation are provided as may be required by contract."

Applicable to Section I, only, Condition D.1 also provides in relevant part (emphasis added) that:

> "The Insured has privilege to name others as an additional Insured for their respective rights and interests and/or waive any rights of recovery, *but only to the extent as may be required under contract or agreement*."

Section II of the Policy establishes additional insureds within defined categories of "Insureds"

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                            7

entitled to coverage under that portion of the Policy.  As amended by Endorsement No. 4 [*TRN - MDL - 00237629*, the relevant definitions of "Insured" include:

> "(c)  any person or entity *to whom the "Insured" is obliged by any oral or written "Insured Contract"* (including contracts which are in agreement but have not been formally concluded in writing) entered into before any relevant "Occurrence", *to provide insurance such as is afforded by this Policy*";

An "Insured Contract" is defined (emphasis added) for purposes of Section II, as amended by Endorsement No. 4 [*TRN - MDL - 00237630*], to mean:

> "*[A]ny written or oral contract or agreement* entered into by the "Insured" (including contracts which are in agreement but have not been formally concluded in writing) and pertaining to business *under which the "Insured" assumes the tort liability of another party* to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization.  Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement."

Common to all these Policy provisions is the requirement that additional insured status is determined by reference to a contract.  In this instance, the Drilling Contract provides the scope and basis for any additional insured status BP may enjoy, as implemented by those Policy provisions. So, the Drilling Contract must be considered to determine what obligations Transocean undertook in its agreement to provide BP with additional insured coverage under the Insurance Policies.

**(2)    The Drilling Contract**

Schedule C of the Drilling Contract [*TRN-MDL - 00027435-36*] includes a list of insurance coverages that Transocean was required to carry, and provides at Paragraph 3 that:

> "[BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers, and agents shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation *for liabilities assumed by [Transocean] under the terms of this Contract*." (emphasis added)

In order to understand the scope of coverage afforded BP as an additional insured under this

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                                        8

provision, it is necessary to refer to other portions of the Drilling Contract to determine what "liabilities" Transocean "assumed" pursuant to the  terms of the Drilling Contract.  Since **RANGER**'s Amended Complaint seeks declaratory relief only as to pollution-related liabilities arising from the Macondo well blowout and loss of the *Deepwater Horizon*, the pertinent provisions of the Drilling Contract involve the respective contractual liabilities of Transocean and BP as to Pollution, found at Clauses 24.1 and 24.2 [emphases added]:

24.1 CONTRACTOR RESPONSIBILITY

*CONTRACTOR shall assume full responsibility for* and shall protect, release, defend, indemnify and hold COMPANY and its Joint Owners harmless against any loss, damage, expense, claim, fine, penalty, demand, or liability *for pollution or contamination*, including control and removal thereof, *originating on or above the surface of the land or water*, *from spills, leaks or discharges of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, air emissions, bilge sludge, garbage, or any other liquid or solid whatsoever in possession and control of CONTRACTOR* and without regard to negligence of any party or parties and specifically without regard to whether the spill, leak, or discharge is caused in whole or in part by the negligence or other fault of COMPANY, its contractors (other than CONTRACTOR) partners, joint venturers, employees, or agents.   In addition to the above, CONTRACTOR to a limit of Fifteen Million Dollares [sic] (US$15,000,000.00) per occurrence, shall release indemnify and defend COMPANY for claims for loss or damage to third parties arising from pollution in any way caused by the drilling unit while it is off the drilling location, while underway or during drive off or drift off from the drilling location. *[TRN-MDL - 00027340*]

24.2 COMPANY RESPONSIBILITY
*COMPANY shall assume full responsibility for* and shall protect, release, defend, indemnify, and hold CONTRACTOR harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability *for pollution or contamination, including control and removal thereof, arising out of or connected with operations under this CONTRACT* hereunder *and not assumed by CONTRACTOR in Article 24.1 above*, without regard for negligence of any party or parties and specifically without regard for whether the pollution or contamination is caused in whole or in part by the negligence or fault of CONTRACTOR. *[TRN-MDL - 00027340-41*]

Deleting the extraneous wording and reiterating the emphasized portions of the

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                                          9

indemnifications, Transocean undertakes to assume full responsibility for pollution or contamination originating on or above the surface of the land or water, from spills, leaks or discharges of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, air emissions, bilge sludge, garbage, or any other liquid or solid whatsoever in possession and control of Transocean.  BP assumes full responsibility for pollution or contamination, including control and removal thereof, arising out of or connected with operations under the Drilling Contract and not assumed by Transocean in the preceding clause.

Clearly, the liabilities and damages for which BP seeks coverage under the Ranger Policy do not consist of or arise from pollution or contamination from spills, leaks or discharges of fuels, lubricants, or other products associated with the *Deepwater Horizon* or otherwise within Transocean's "possession and control".  Rather, the pollution liabilities at issue here, involve the pollution emanating from BP's Macondo well when it blew out and spewed crude oil and other contaminants through or around the well bore and across the Gulf of Mexico.

Accordingly, pursuant to the terms of the Drilling Contract,  Transocean simply does not owe to BP any contractual obligation for the liability arising out of this pollution event.  Instead, pursuant to Clause 24.2, it is BP that owes an obligation to Transocean for this event under the Drilling Contract.  Adhering to the Drilling Contract's specific requirement restricting the scope of BP's additional insured coverage, the pollution-related liabilities arising from the Macondo well blowout and loss of the *Deepwater Horizon* are not "liabilities assumed by [Transocean] under the terms of this Contract." Those liabilities are assumed under the Drilling Contract by BP, not Transocean. Thus, Transocean was not required by the written contract to provide BP with additional insured coverage, and pursuant to the Policy wording BP does not qualify for additional insured status.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                     10

**(3)     BP's Authorities**

BP relies on two principal cases to make the argument that Texas law prohibits courts from referring to the terms of an underlying contract in order to determine the scope of insurance provided to an additional insured, even where such additional insured status is provided under the policy solely as a result of such contractual requirement.  BP is wrong.  BP misinterprets or misstates the actual facts and holding of both cases, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, (Tex. 2008) and *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.,* 566 F.3d 483 (5th Cir. 2009).

In *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, the Texas Supreme Court examined the interplay between a contractual indemnity provision and a service contract's requirement to name additional insureds.  The question involved whether an umbrella insurance policy (issued by Evanston) that secured the insured's (Triple-S) indemnity obligation to a third party (ATOFINA) in that contract, also provided direct liability coverage for the third party.  Evanston's policy included two different who-is-an-insured provisions by which ATOFINA might qualify as an additional insured.  The Court held that the policy should be read to provide the broader measure of coverage available under the applicable clauses.  *Id.* at 668-69.  The Court then turned to whether the additional insured requirement in the contract was limited to the indemnity obligations undertaken by Triple-S in the underlying contract, or whether an additional obligation was imposed by the contract to add ATOFINA as an insured on its policies.

In examining the particulars of the contract, the Court held that there were two separate obligations, one to obtain insurance to support the indemnity obligation and a separate, independent requirement to name ATOFINA as an additional insured.  The Court considered the wording of the

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                11

contractual undertaking - - an unqualified requirement that ATOFINA "shall be named as additional insured in each of [Triple S's] policies" - - in determining that this wording extended direct insured status to ATOFINA as an additional insured separately from any contractual indemnity requirement. *Id.* at 670.

Thus, far from stating that courts may not examine the underlying contract to consider the scope of coverage afforded an additional insured, the Court in *Evanston* did precisely that.  Referring to and examining the underlying contract, was the only way the Court could determine whether the additional insured obligation supported only the direct insured's contractual indemnity obligations, or whether the contract intended broader coverage, all for the purpose of determining the scope of coverage actually afforded under the Policy.   In this respect, *Evanston* simply and self-consciously applies the longstanding rule established by *Getty Oil Co. v. Insurance Co. of North America.*, 845 S.W.2d 794 (Tex.1992).

In that case, too, the Court looked to the contract to determine whether the scope of coverage afforded an additional insured was limited to the direct insured's indemnity obligations.   It determined that the following contract provision constituted an obligation to provide additional insured status <u>unrestricted</u> by the indemnity:

> "All insurance coverages carried by Seller, whether or nor required hereby, shall extend to and protect Purchaser ... to the full amount of such coverages and shall be sufficiently endorsed to waive any and all claims by the underwriters or insurers against Purchaser ..."

The Court in *Getty* contrasted this requirement with a different provision found in the indemnity section of the contract, which specified that "insurance covering this indemnity shall be provided by the Seller."  *Id*. at 797.

In both *Evanston* and *Getty*, the Texas Supreme Court did not prohibit application of the

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                      12

underlying contract to determine the scope of additional insured coverage.  To the contrary, in both cases, the Court closely examined the contracts in order to determine the scope of additional insured coverage required by the contractual undertaking, in order to determine the scope of coverage afforded by the policy.  In both cases, the contracts at issue included a provision requiring that insurance be provided to an additional insured, without any wording that limited or qualified such status to the direct insured's indemnity obligations.  That is not the case between BP and Transocean, where the contractual undertaking to add BP as an additional insured is specifically limited to "liabilities assumed by [Transocean] under the terms of this Contract."

In contrast to the clauses at issue in *Evanstan* and *Getty*, in instances where contractual provisions have limited additional insured status to the liabilities and obligations of the direct insured, the Fifth Circuit has had no difficulty in recognizing and enforcing such limitations.  In *LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir.1999), the court considered an additional insured provision that read:

> "[*T*]*o the extent Subcontractor [Frank's] assumes liability hereunder*, and agrees to indemnify Contractor [Marine], Contractor shall be named an additional insured in [certain] insurance policies." [emphasis added]

The court was focused on whether such a provision could provide additional insured status where the related indemnity obligation was void and unenforceable (and decided that enforceability was not a requirement of the contract), but also concluded that "[t]he language of indemnification defines the parameters of the agreement regarding assured status" regardless of whether the indemnity was enforceable or not. *Id.*  The coverage afforded the additional insured under the insurance policy was thus limited to the indemnity liability owed by the direct insured as undertaken in the underlying contract.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                13

Similarly, in *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258 (5th Cir.1998), the Fifth Circuit examined a contract provision requiring additional insured status tied to an indemnity obligation:

> "The policy (or policies) of insurance obtained by [direct insured], except Worker's Compensation, and Protection and Indemnity shall provide that [contractor] ... are additional insured for all coverages, *to the extent of the indemnity provided by [direct insured] under this Contract*." [emphasis added]

Again, the Fifth Circuit determined that the obligation of the direct insured was to extend additional insured coverage to the full extent of the indemnity, notwithstanding that the indemnity was void and unenforceable (because it violated the Texas anti-indemnity statute). *Id.* The additional insured's coverage was thus limited to the extent of the indemnity liability owed by the direct insured in the underlying contract.

Most recently, the Fifth Circuit reiterated this same approach in *Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir.2009). Under the policy issued to the directed insured, Tidewater, additional insureds included any organization to whom Tidewater was "obligated by virtue of a contract or agreement to include or name as an assured, co-assured or additional assured." *Id.* at 370. Baker, a subcontractor of Tidewater and employer of the injured plaintiff, sought additional insured status under Tidewater's policy. In order to determine if Baker was an "additional assured," the Fifth Circuit specifically stated that "we must read the insurance and indemnity provisions of the time-charter contract in conjunction in order to properly interpret the meaning of the contract." *Id.* Baker contended that it was entitled to additional insured coverage for all purposes. Tidewater argued that Baker's additional insured coverage extended only insofar as Tidewater's obligations undertaken in the underlying contract. Examining the policy, the court found that Baker was covered

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings

14

only when Tidewater "is obligated by virtue of a contract or agreement" to designate Baker as an "additional assured." *Id.* at 371.   The Fifth Circuit examined the contract and found that it expressly limited Tidewater's obligation to designate Baker as an "additional assured" to "the risks assumed by [Tidewater] in this Charter."

Just as in the instant case, the underlying contract allocated the risk of liability to the purported additional insured, Baker, and not to the direct insured, Tidewater.  After considering the respective provisions of the contract and the insurance policy in conjunction, the court held that because Tidewater did not contractually assume the risk of liability posed by the precipitating claim, Baker was not entitled to additional assured status under Tidewater's insurance for those liabilities. *Id.*   In other words, the Fifth Circuit determined that where the insurance policy provides for additional insured coverage by reference to obligations in a contract with the direct insured, the scope of such additional insured's coverage is not unlimited but is determined by and restricted to the liabilities undertaken by the direct insured in their contract.

*LeBlanc, Oryx* and *Becker* demonstrate the Fifth Circuit's commitment that where an insurance policy provides additional insured coverage as required by a written contract with the direct insured, the coverage afforded to the additional assured is limited to the extent of the direct insured's liabilities as specified in the contract.  *See also, Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La.*, 2004 WL 2452780 (E.D.La. 2004) aff'd 161 Fed.Appx. 378 (5th Cir. 2006) (not selected for publication in Federal Reporter).

That is precisely the situation in the instant case; the Ranger Policy provides coverage to additional insureds only by reference to and as required by a written contract with Transocean.  The Drilling Contract between Transocean and BP specifically limits Transocean's obligation to extend

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                              15

additional insured coverage to BP, to circumstances where Transocean has assumed liabilities under the contract.  But liability for pollution from the Macondo blowout is specifically allocated under the Drilling Contract to BP, not Transocean.  Thus, this Court is bound by Fifth Circuit precedent in *LeBlanc*, *Oryx* and *Becker* to deny BP's request for additional insured coverage under the Ranger Policy for the Macondo pollution risks, because Transocean did not assume those liabilities under the Drilling Contract and BP's coverage is limited to Transocean's obligations under that contract.

In addition to *Evanston*, BP also cites and relies upon *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009) as supporting authority for its argument that courts are prohibited from looking beyond policy wording to the underlying contract in order to determine the scope of additional insured coverage.  To the contrary, *Aubris* specifically states that by linking additional insured status to a written contract, the policy effectively incorporates the contract as part of the policy.  *Id.* at 489 fn 3.  In fact, *Aubris* found that the contract is so inextricably intertwined with the policy wording, that it applied the same favorable rules used for insurance interpretation to interpret the contract.[3]  *Id.*

*Aubris* overtly states that "to determine the additional insurance coverage question presented in this appeal, we now turn to consider the relationship between and among the policy, the additional insured provision in the services agreement, and the indemnity provision in the services agreement."  *Id.* at 487.  The *Aubris* court then examined the underlying contract to interpret its exception for additional insured status where the additional insured "specifically" agrees to indemnify the named

---

[3]As noted in Section B, infra, with respect to the "sophisticated insured" exception, it is not clear whether such interpretive principles favoring the insured are applicable to this Policy; therefore, by extension, neither should the Drilling Contract be subject to such stringent rules of interpretation.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                    16

insured.[4]   No such unusual wording is found in the Ranger Policy or the Drilling Contract, which provide that BP enjoys additional insured coverage only as required by Transocean's contract with BP, and under the contract  Transocean is obligated to provide BP with additional insured coverage only for liabilities Transocean assumes under that contract.

BP is correct in one regard with respect to *Aubris*: it is a definitive application of post-*Evanston* contract and policy interpretation binding upon this Court in the MDL.  But, contrary to BP's argument, *Aubris* demonstrates that the court is not precluded from reviewing the underlying contract in order to determine the proper scope of additional insured status, but instead must do so.

The other issues in *Evanston*, *Aubris*, *Getty*, *LeBlanc, Oryx* and *Becker* involve problems not posed by this case, this Drilling Contract, or this Ranger Policy.  Each and every one of those cases, however, states that when considering additional insured status, the underlying contract may and should be examined when it provides the basis for additional insured coverage - - something that BP asks this Court to ignore.

Similar issues were involved in *Lubrizol Corp. v. Gray Ins. Co.*, 2009 WL 348820 (5th Cir.(Tex.) Feb 12, 2009) (Not selected for publication in the Federal Reporter), another Fifth Circuit case cited by BP as footnote 12 in its Memo.  In that case, the court began by examining the scope of the additional insured undertaking in the underlying contract.  In fact, the analysis hinged solely on the underlying contract.  Nowhere in either the Fifth Circuit's opinion or the lower court opinion does either court ever recite - - much less examine - - the insurance policy provision by which Lubrizol was entitled to additional insured status.  *See, The Lubrizol Corp. v. The Gray Ins. Co.*,

---

[4]The court found that this wording does not refer to general contract indemnities found in the written contract, but can reasonably refer to extra-contractual indemnities "specifically" entered as to a particular incident. *Id.* at 489-90.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                17

2008 WL 1767711 (S.D.Tex. 2008).  In *Lubrizol*, the contract required the direct insured to carry certain insurances, and to add Lubrizol as an additional insured under the CGL and Auto Liability policies, without limiting wording.  A final paragraph separately provided that the direct insured:

> "to the extent necessary to provide coverage under [its] insurance for the liabilities assumed by [it] under the indemnity provisions of this Agreement, shall designate Lubrizol as an additional insured on Comprehensive Contractor's General Liability Insurance . . ."

In examining this configuration of wording, the Fifth Circuit held that the provisions providing insurance coverage and to name Lubrizol as an additional insured unambiguously were separate from the cited provision.  Those separate provisions provided unlimited additional insured coverage.  As such, those separate provisions were not restricted by the independent clause providing for additional insured status specifically to cover the direct insured's indemnity obligations.  Contrary to BP's motion attempting to isolate policy wording from the underlying contract the policy references, the *Lubrizol* court specifically states that *Evanston* reached its conclusion regarding the separation of contractual indemnity obligations from contractual additional insured obligations by "look[ing] only to the contractual language . . ." *Id*. at *4.

In the instant Drilling Contract, there is only one provision requiring additional insured coverage for BP, and it includes limiting wording "for liabilities assumed by [Transocean] under the terms of this Contract."  None of the cases cited by BP involves this sort of contract provision for additional insureds.

Moreover, Texas's doctrine of incorporation by reference is relaxed, and provides under general principles of contract law that separate agreements may be incorporated by reference by a signed contract. *See In re Enron Corp. Securities, Derivative & "Erisa" Litigation,* 391 F.Supp.2d

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                                    18

541, 581 fn 45 (S.D. Tex. Aug 01, 2005) (citations omitted); *see also One Beacon Ins. Co. v. Crowley Marine Services, Inc.,* No. 10-20417, 2011 WL 3195292, at *8 (5th Cir. July 28, 2011) ("Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.") citing 11 Williston on Contracts § 30:25 (4th ed. 1999) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.").

In the instant case, the Ranger Policy provides for additional insured coverage only by reference to Transocean's obligations under a separate written contract,. The entitlement of any prospective additional insured and the scope of coverage can only be determined by reference to such contract. In this circumstance, general principles of contract law as adopted in Texas require that the Ranger Policy and the Drilling Contract be interpreted together for purposes of understanding whether and to what extent BP may be entitled to additional insured coverage.

The Ranger Policy provides coverage for additional insureds like BP only by reference to contractual obligations undertaken by Transocean. The clear and unambiguous meaning of the Drilling Contract wording is that Transocean is obligated to name BP as an additional insured under its policies, including the Ranger Policy, only for coverage of Transocean's obligations and indemnities to BP under the contract. In accordance with binding Fifth Circuit precedent, BP enjoys only such limited coverage under the Ranger Policy as is required by the Drilling Contract. Since the Drilling Contract provides that BP owes indemnity to Transocean for the pollution liabilities at issue, and Transocean owes no such obligation to BP, it follows that the Ranger Policy provides no

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                     19

coverage to BP for these liabilities.   Therefore, the motion for judgment must be denied as

**RANGER** has alleged facts upon which recovery could be granted.

**B.     BP FAILS TO IDENTIFY FOR WHAT RISKS IT IS CLAIMING COVERAGE AND THE POLICY PROVISIONS THAT PROVIDE SUCH COVERAGE.   BP DISCLAIMS COVERAGE UNDER SECTION I WHICH IS THE ONLY SECTION THAT PROVIDES FIRST LINE OIL POLLUTION COVERAGE.**

BP identifies the "Ranger Policy" as  Exhibit D to its attached Wenk Declaration, identified

as Policy No. RANGER340USPL.09-10.  *[TRN-MDL - 00237541-00237634*]. That Policy is

separated into three (3) sections. Item 12 of the Declarations, Section I provides Protection &

Indemnity and similar insurance, while Section II provides coverage for Offshore risks (at Section

II.A) and Onshore risks (at Section II.B) *[TRN - MDL - 00237548]* under occurrence-based and

claims-made  coverage,  respectively.   Section I relies upon and incorporates (with certain

amendments) Transocean's entry with Steamship Mutual Underwriting Association (Bermuda)

Limited (the "Rules") in effect for the 2001 year of entry.  Section II.A provides excess liabilities

"other than those covered in Section I and/or difference in conditions to Section I", following form

to the terms, conditions and exclusions of London Umbrella Policy 2002; Section IIB provides

excess liabilities for Onshore Operations / Liabilities (as defined) subject to Claims Made Wording

London Claims Made Umbrella Policy 2002.

BP indicates *[at footnote 6 of its Memo]*, that its Motion only concerns the "general liability

coverages" of Sections II.A and II.B of each policy, and that BP is "not moving at this time in respect

of  the  P&I  coverages  as  they  are  not  the  subject  of  the  Insurer  Complaints."   Nowhere in

**RANGER**'s Amended Complaint is any exception made to preclude Section I, nor does **RANGER**'s

Amended  Complaint  indicate  anywhere  that  it  applies  only  to  Section  II.A  and  Section  II.B

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                    20

coverages.  All sections are included under the single Policy No. RANGER340USPL.09-10 without other distinction.

Yet, while limiting its brief to arguments pertaining only to provisions of Section II, BP's Motion seeks a comprehensive declaration of additional insured status and entitlement to coverage under the Ranger Policy as designated by its number.  Specifically, BP seeks a declaration that it is an "additional insured " under the "insurance policies at issue" without excepting the Section I coverage, while at the same time assuring the Court that its Motion does not concern Section I coverage. The goal of this subterfuge is clear.  BP does not reference the additional insured language of Section I because it can not qualify as an additional assured under the Section I definition. Condition D.1 applicable to Section I only states that the "Insured" may name others as additional insured but "only to the extent as may be required under written contract or agreement." [*TRN - MDL - 00237553*].

Moreover, there is a question whether Section II.A applies at all, if Section I instead provides coverage .  According to the Declarations of the Ranger Policy (Item 12) [*TRN-MDL - 00237548*], coverage is provided under Section II.A for Excess Liabilities "other than those covered in Section I above and/or difference in conditions to Section I above".  BP's Motion simply does not address this apparent priority of coverage, whereby Section I coverage must be determined before application of Section II.A may be considered.

The priority and distinction between Section I and Section II coverage is critical to BP's argument for additional insured status. Under Section I, BP is entitled to additional insured status only where "required" under a contract or agreement.[5]  BP's sole argument to the Court, however,

---

[5]*See, supra*, Argument A (1), for recitation of those clauses.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                    21

is that it is entitled to coverage as an additional insured because the Drilling Contract is an "Insured Contract." [*BP's Memo of Law*, pgs 15-17] This definition is included only in, and is applicable only to, Section II coverage; it is not at all applicable to Section I.

But if Section II provides secondary coverage only "other than" or as a "difference in conditions to" those liabilities that are covered under Section I, the predicate question must be whether Section I applies and provides such coverage. If Section I does provide coverage for the pollution-related liabilities at issue in Ranger's pleading, then only those clauses of Section I pertinent to additional insured status may be looked to in determining BP's status as such an insured. BP's motion, instead, wholly ignores those clauses of Section I and argues solely from the "Insured Contract" definition of Section II, which is inapplicable to Section I coverage.

This apparent priority of Section I coverage over Section II coverage raises an issue on which further factual development and legal argument is required.  Assume that Transocean enjoys coverage as a direct insured under Section I for these pollution-related risks and thereby exhausts the policy on its own behalf.  In that event, what rights, if any, does BP have under the Ranger Policy if BP does not also enjoy additional insured status under Section I pursuant to the additional insured clauses applicable to Section I?  Since BP makes no attempt in its Motion to show it is an additional insured under Section I , BP wholly fails to address these issues.  These questions of the priority of Section I coverage over Section II, and whether BP has any standing as an additional insured under Section I, and what effect such standing or lack of standing may have on overall coverage under the Ranger Policy, all  require further development and preclude a judgment on the mere pleadings as sought by BP.

In other words, BP is not entitled to ignore coverage that may be afforded under the very

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                    22

different terms and conditions of Section I, while choosing to address only Section II provisions. The Declarations of the Policy seemingly require that priority be given to coverage under Section I first, and without such determination, it cannot be determined whether or to what extent Section II.A may or may not apply.  Even more so, BP cannot simply ignore Section I provisions on the basis that they were "not the subject of the [Ranger's] Complaint" where **RANGER**'s actual pleading made no such exception or distinction.

Having wholly failed to address Section I in its Motion, BP cannot ignore the Policy's stated priority for coverage by seeking from this Court a premature and inappropriate determination of coverage which may or may not be available under Section II.A.  The <u>proper and necessary</u> course is to address Section I first, and only after coverage or lack of coverage is determined under Section I, to then address potential coverage under Section II.A.  Accordingly, BP's Motion seeking additional insured status under Section II is premature, inappropriate, inconsistent with and contradictory to the prescription set out in the Policy provisions, and should be denied on that  basis.

Nor has BP made any showing that Section II.B would apply to the type of coverage sought by BP in its Motion.   By Section II.B's own terms, it does not appear that Section II.B has any application to the claims under consideration.  As noted above, the Declarations state that Section II.B provides coverage for "onshore liabilities". That term is defined by Paragraph 22 of Endorsement No. 1, so that "onshore liabilities" means all liabilities of the insured other than those specifically defined (in subsequent subsections) as "offshore liabilities".  "Offshore liabilities" include liabilities arising out of operation of any Watercraft (defined to specifically include semi-submersible rigs such as *Deepwater Horizon*), and any other maritime operations entirely apart from land.

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                              23

**RANGER**'s Amended Complaint seeks a declaration of its rights and duties as to BP, if any, under the Ranger Policy "in connection with BP's pollution-related liabilities for the oil emanating from BP's [Macondo] well." *(See Ranger Am. Complaint, Paras. 21, 22 C and D.)*  The pleading also requests judicial declarations pertaining to coverage as affected by rights and obligations in the Drilling Contract for use of the rig Deepwater Horizon. *(See Ranger Am. Complaint,  Paras. 20, 22 A and B.)*  Thus, **RANGER**'s Amended Complaint directly involves only "offshore liabilities" and does not involve any "onshore liabilities" as defined by the Ranger Policy.

Accordingly, BP has not - - and probably cannot - - demonstrate any basis by which Section II.B's coverage for "onshore liabilities" potentially applies to "the pollution-related liabilities for the oil emanating from BP's well as a result of the fire, explosion and sinking of Transocean's *Deepwater Horizon* on April 20, 2010" which BP itself states is the central purpose of the Insurance Actions and the subject of BP's Motion. *[BP's Memo, pg. 1]*  Without showing at least some potential application of Section II.B to the specific liabilities under consideration, BP should not be allowed to obtain from the Court a purely speculative declaration of its potential additional insured status under Section II.B.

In summary, BP asserts that it does not seek any relief as to Section I by virtue of its Motion. Yet, BP does not discriminate among the various sections of the Ranger Policy when it asks for relief applicable to the Ranger Policy as a whole.  The Ranger Policy itself establishes a priority for coverage so that Section II.A applies only if Section I does not; BP is not entitled to simply ignore the policy priority and seek coverage under Section II.A while ignoring Section I.  This is particularly true where, as in its opening briefing, BP has relied for additional insured status solely upon a definition of "Insured" which is applicable only to the secondary coverage under Section II and is

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings

24

neither included in nor applicable to the principal coverage provided under Section I.  Having chosen to ignore Section I, in its Motion, it is premature and inappropriate for BP to prevail on any issue of coverage under Section II.A without first examining coverage under Section I.

Further, BP has made no showing that the "onshore liabilities" covered under Section II.B are even potentially implicated by the matters asserted in the Insurance Actions, which involve "offshore liabilities" pertinent only to Section II.A and not Section II.B.  Without such showing, it is inappropriate and premature for BP to seek a determination of its additional insured status under a seemingly inapplicable Policy section.  Therefore, BP's Motion for Judgment on the pleadings should be denied.

## C.    BP HAS NOT SHOWN THAT IT IS ENTITLED TO A POLICY INTERPRETATION FAVORING THE INSURED.

### (1)    Contract construction rules.

Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be ambiguous.  *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977).  An ambiguity does not arise, however, merely because the parties disagree about the contract's meaning and advance conflicing contract interpretations.  *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997).  Ambiguity is a question of law for the court.  *Sharp v. State Farm Fire & Cas. Inc. Co.*, 115 F.3d 1258, 1261 (5th Cir.1997) (citing *CBI Industries*, 907 S.W.2d at 520).

While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances when the contract was entered, to clarify whether an ambiguity exists.  *CBI Industries*, 907 S.W.2d at 520; *see also Columbia Gas*

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings

25

*Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996).  An ambiguity in a contract may be either patent or latent: a patent ambiguity is one evident on the face of the contract, while a latent ambiguity exists when a contract is unambiguous on its face but fails by reason of some collateral matter when it is applied to the subject matter with which it deals. *CBI Industries*, 907 S.W.2d at 520.

Ambiguities in insurance contracts giving rise to two reasonable interpretations, one providing and the other denying coverage, are read *contra proferentem* and in favor of the insured. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).  But this principle of *contra proferentem* applies only if the court has made a predicate determination that the contract is ambiguous. *Id.*

Under ordinary circumstances, there is good reason to construe a printed form insurance policy against its author, and the interpretation of ambiguities favorably to the insured encourages an insurance company to think carefully about its draftsmanship.  *See Balandran*, 972 S.W.2d at 741 fn 1; *see also Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 75 (Tex.App.- Houston [14th Dist.] 1989, writ denied).  However, this principle is of questionable application where insureds draft the policy or play a role in drafting it, and are not simply presented a policy from the insurer that contains non-negotiable terms but can bargain for coverage wording.  In such circumstances, the insurer may not enjoy unequal bargaining power as against the insured, and the *contra proferentum* rule may not apply.  *See Vought Aircraft Industries, Inc. v. Falvey Cargo Underwriting, Ltd.,* 729 F. Supp.2d 814, 824-26 (N.D. Tex. 2010).  When there is a question - - such as **RANGER** believes there is in this case - - whether the insured meaningfully participated in negotiating the policy wording and was not in an unequal bargaining position, then a fact issue is raised which precludes

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                26

a court from awarding a summary judgment in favor of the insured on an ambiguous insurance provision. *Id.* at 826, fn. 14.

Where *contra proferentum* does not apply and ordinary contract principles are utilized under Texas law, the parties themselves are in the best position to know what was intended by the language used by them, so that the construction placed on an ambiguous contract by the parties will govern the court's interpretation of the agreement. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 295 (5th Cir.2005) (citations omitted). Thus, evidence of the parties' course of dealing and performance of the contract is admissible and may property be considered by the jury as an indication of the construction that the parties themselves put on a crucial policy term. *Id.* at 296 (citations omitted). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394 (citation omitted).

**(2)    Fact issues exist regarding which party is entitled to a favorable presumption.**

BP asserts as a general rule that ambiguous policy wording should be interpreted in favor of the reasonable interpretation presented by an insured for coverage, over another reasonable interpretation offered by the insurer. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S. W. 2d 552, 555 (Tex. 1991). However, Fifth Circuit precedent suggests that this rule of *contra proferentum* applies only insofar as the insurer actually drafted the wording. The presumption may not apply where the insured is a sophisticated business entity with sufficient resources to negotiate the policies on a fairly equal basis with the insurer. *See, Eagle Leasing Corp. v. Hartford Fire Ins. Co.,* 540 F.2d 1257, 1261 (5th Cir.1976) *cert. denied*, 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063, (1977); *see also McDermott Intern., Inc. v. Lloyds Underwriters of London,*

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                 27

944 F.2d 1199, 1207 (5th Cir. 1991); *Vought Aircraft Industries, Inc. v. Falvey Cargo Underwriting, Ltd.,* 729 F. Supp.2d 814, 824-26 (N.D. Tex. 2010).

Transocean is a sophisticated business entity.  As was the case in *Eagle Leasing* and in *McDermott*, above, the Ranger Policy on behalf of Transocean was not issued in a standard form but was heavily amended or "manuscripted" to achieve the coverage purposes that Transocean mandated.  *See also, Industrial Risk Insurers v. New Orleans Pub. Serv., Inc.,* 666 F.Supp. 874, 881 (E.D.La. 1987) (where insurance is placed between sophisticated parties, ambiguous provisions should be construed in favor of what reason and probability dictate was intended by the parties).  Moreover, **RANGER** is a captive insurer of the insured, Transocean, so the prospect for unfair advantage by the insurer is further minimized or eliminated.  The characteristics of the Ranger Policy raise factual questions about whether the usual ambiguity principles should be applied to interpret specific provisions or wording in the Ranger Policy.

Relying on *Eagle Leasing* and *McDermott,* **RANGER** is entitled to explore these questions through discovery.  *See, Eagle Leasing,* 540 F.2d at 1261 (contract should be interpreted consistent with a reasonably practicable commercial undertaking, that is, of two possible constructions, that which is most reasonable from a business point of view should be taken), citing  9 Arnould, Marine Insurance s 105, p. 88 (1961 Ed.)  These questions cannot be resolved in a motion for judgment on the face of the pleadings, policies and contract alone since there is no evidence before the court to show which party is entitled to the presumption.  Therefore, BP should not be entitled to apply the *contra proferentum* principles in its Motion for judgment on the pleadings, in the event any material aspect of the Ranger Policy is susceptible to more than one reasonable interpretation.  *See e.g. Int'l Ins. Co. v. RSR Corp.*, 426 F.3d at 295; *Vought Aircraft Industries, Inc. v. Falvey Cargo*

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                     28

*Underwriting, Ltd.,* 729 F. Supp.2d at 824-26; *Coker v Coker*, 650 S.W.2d at 394.

## <u>CONCLUSION</u>

BP's request for unlimited additional insured status must be denied because the only reasonable interpretation of **RANGER's** Policy specifically limits BP's additional insured status to only those obligations assumed by Transocean under the Drilling Contract.  The Drilling Contract provides that the liability for pollution emanating from the Macondo Well is solely BP's responsibility, not Transocean's. As a result, the **RANGER** Policy cannot be interpreted in a vacuum without reference to the Drilling Contract.

BP's motion also should be denied because it fails to offer any argument or proof why BP is entitled to be an additional assured under Section I of the **RANGER** Policy. To the extent that Section I provides pollution coverage of the sort referenced in Ranger's Amended Complaint, as **RANGER** believes it does, then Section I comprises the applicable coverage section.  BP's resort to secondary and subordinate coverage under Section II is precluded by the priority of coverage under Section I, as established by the Ranger Policy itself.  BP is not entitled to judgment as to Section II, because BP has failed to demonstrate as a necessary predicate that Section I does not apply.  The plain wording of Section I shows that BP is not an additional insured for Section I coverage.  Moreover, BP is certainly not entitled to judgment that it is an additional insured as to the entirety of the Ranger Policy, when BP has wholly failed to address whether it is an additional insured under Section I.

BP fails to show that the Ranger Policy or the Drilling Contract are ambiguous, while **RANGER** has demonstrated that both the policy and the contract unambiguously restrict coverage so that BP is not entitled to additional insured status in this case.  Even if the Ranger Policy

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                      29

is ambiguous, BP has not shown that it is entitled to application of the *contra proferentum* doctrine. Fact issues regarding the negotiated nature of the policy wording, the relative sophistication of Transocean as an insured, and the comparative bargaining power and relationship between Transocean and its captive insurer, **RANGER**, prevent application of the *contra proferentum* doctrine on the pleadings alone without further discovery.

Finally, if and to the extent the respective liabilities of Transocean and BP for pollution related risks under the Drilling Contract or the Ranger Policy are ambiguous or unclear, such questions of liability rely on questions of fault and causation to be determined in underlying lawsuits or require further discovery in these Insurance Actions.  BP is not entitled to judgment on the pleadings alone.

For the reasons cited above, **RANGER** requests this Court deny BP's Motion for Judgment on the Pleadings.

**DATED**: August 11, 2011

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings                                                                 30

Respectfully submitted,

                    /s/ Michael J. Maloney
_____

| | |
|---|---|
| Michael J. Maloney | Robin M. Ziek |
| Maloney★Martin, L.L.P. | Robin M. Ziek, Attorney at Law |
| The Clocktower Building | The Clocktower Building |
| 3401 Allen Parkway, Suite 100 | 3401 Allen Parkway, Suite 100 |
| Houston, Texas 77019 | Houston, Texas 77019 |
| (713) 759-1600 – telephone | (713) 222-8030 – telephone |
| (713) 759-6930 – facsimile | (713) 759-6930 – facsimile |
| E-mail: mjmaloney@maloneymartinllp.com | E-mail: rziek@sbcglobal.net |

Dwayne R. Day
Dwayne Day, P.C.
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 284-1618 – telephone
(713) 759-6930 – facsimile
E-mail: dday@ddaylaw.com

*Counsel for Ranger Insurance Limited*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing Memorandum in Response to BP Parties' Motion for Judgment on the Pleadings in the Insurance Action to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 11, 2011.

              /s/ Michael J. Maloney
_____
**Michael J. Maloney / Robin M. Ziek**

Ranger v. BP, et al
Ranger's Memorandum in Response to
BP Parties' Motion for Judgment on Pleadings        31