UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>        "Deepwater Horizon" in the Gulf<br>        Of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| | JUDGE BARBIER |
| This Document applies to: 11-cv-274 c/w<br>                          11-cv-275 | MAGISTRATE SHUSHAN |

**MEMORANDUM IN SUPPORT OF TRANSOCEAN'S
(1) RULE 12(D) MOTION TO CONVERT
BP'S MOTION FOR JUDGMENT ON THE PLEADINGS
TO A MOTION FOR SUMMARY JUDGMENT
AND (2) MOTION FOR CONTINUANCE OR DENIAL AS PREMATURE**

TO THE HONORABLE JUDGE CARL J. BARBIER:

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean"): Transocean files this Memorandum in Support of the concurrently-filed: (1) Motion to Convert BP's Motion for Judgment on the Pleadings to a Motion for Summary Judgment and (2) Motion for Continuance or Denial as Premature under Rule 56(d). These motions are filed in the alternative to Transocean's substantive response to BP's motion for judgment on the pleadings. If BP's motion for judgment is denied on its merits, these motions will be mooted. For the reasons below, the relief requested in Transocean's motions should be granted.

**BACKGROUND**

The BP Parties ("BP") filed a Motion for Judgment on the Pleadings in the Insurance Actions on July 8, 2011, seeking dual declarations that (1) BP is an additional insured and (2) the plain language of the BP-Transocean drilling contract's restrictions on additional insured coverage do not apply to limit BP's status as an additional insured. **Dkt. No. 3211, at 1–2.**

Transocean is filing a supporting memorandum and response in opposition to BP's motion concurrently with the instant motion.

<u>**ARGUMENT**</u>

Transocean acknowledges that BP's motion for judgment is technically permissible under the Federal Rules and the Court's June 20, 2011 CMO, under which the parties may file Motions for Judgment on the Pleadings any time after June 30, 2011. **Dkt. No. 2849, at 3–4.** The purpose of the instant motion is to demonstrate that, owing to the particular issues raised in BP's motion for judgment, BP has chosen an inadequate procedural vehicle to bring what is, essentially, the entire insurance component of the contractual risk transfer dispute before the Court for adjudication. The case is at an early stage, and discovery remains outstanding, as discovery was not permitted before July 1, 2011. *Id.* **at 2.** Transocean is currently pursuing discovery of its own, as are BP and the underwriters.

Summary judgment is the only pre-trial device that, at this phase in the litigation, will permit all parties to support their arguments with the full array of evidence available to them under the Federal Rules. To permit all parties to avail themselves of discovery, Transocean respectfully moves this Court to convert BP's motion and then to grant a continuance or defer its ruling on, or deny as premature, BP's motion for judgment.

I.     **BECAUSE IT RAISES UNDETERMINED AND POTENTIALLY DISPUTED MATTERS IN ITS MOTION THAT REQUIRE ADDITIONAL DISCOVERY AND FACTUAL SUPPORT, BP'S MOTION FOR JUDGMENT ON THE PLEADINGS MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT.**

In deciding a motion under Rule 12(c), "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "A

motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Under a motion for judgment on the pleadings under Rule 12(c) or a motion to dismiss under Rule 12(b)(6), a court decides the motion only on the pleadings. *See Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that "[i]n determining whether to grant a motion to dismiss, the district court must not go 'outside of the pleadings'" except for in the limited exception where documents that are "referred to in the plaintiff's complaint and are central to the plaintiff's claim" are attached to a motion to dismiss). Here, the Court has already treated the BP-Transocean drilling contract and Transocean's insurance policies as "central" to Transocean's and its insurers' complaints. *See* **Dkt. No. 2593, at 2.** BP has attached these documents to its motion for judgment.

However, BP's argument in its motion for judgment rests on issues that are disputed and not established as a matter of law. Because the Court must consider matters outside the pleadings to resolve these disputed issues as a prerequisite to deciding the issues raised in BP's motion, the motion for judgment must be converted to a motion for summary judgment.

### A.  BP's Primary Contention in the Motion Requires Additional Discovery and Factual Support to Resolve.

BP rests its entire motion on the assumption that it will benefit from the *contra proferentem* principle applicable to some insurance coverage disputes. Generally, a Texas court interprets an ambiguous policy provision in favor of an insured—and against the insurer, the drafter—so long as the insured's interpretation of the ambiguous provision is not unreasonable. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); **Dkt. No. 3211-1, at 14.** However, under Texas law there is an exception to *contra proferentem* for "sophisticated insureds," which applies in two situations. First, one is a sophisticated insured

3

when that insured bargains for coverage.  Second, one can also be a sophisticated insured when

that insured plays a role in drafting the policy.  *See, e.g.*, *Vought Aircraft Indus., Inc. v. Falvey*

*Cargo Underwriting*, 729 F. Supp. 2d 814, 823–28 (N.D. Tex. 2010).

> Texas courts have made clear that the traditional rule of
> construction [in favor of coverage in the event of an ambiguity] is
> based on an insured's unequal bargaining power, the special
> relationship between the insured and the insurer, and the general
> principle that contracts are construed against the drafting party.
> Where the sophisticated insureds exception applies, these concerns
> are not in play.  Such insureds draft the policy, or at least play a
> role in drafting it.  They are not presented a policy that contains
> non-negotiable terms; rather, they can bargain for coverage.  And
> they are able to interpret the policy on their own, lessening the
> likelihood that the insurer will take advantage of them.

*Id.* at 824–25 (footnote omitted) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738,

741 n.1 (Tex. 1998)); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199,

1207 (5th Cir. 1991) (holding that an insured "forteit[ed]" the "principle that policy ambiguities

are construed against the drafter" where the insured's agent chose which clause would go into

the policy the agent submitted to Lloyd's, even though the selections were underwriter-drafted).

Because BP is claiming coverage under Transocean's policies, BP stands in the position

of Transocean or, at least, in no better position than Transocean.  An additional insured can claim

no greater leniency in interpreting the policy than a named insured.  *See, e.g.*, *Brown & Brown of*

*Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 393 (Tex. App. 2010) (interpreting *Via Net v.*

*TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006)); *Rep. Waste Servs. of Tex., Ltd. v. Empire*

*Indem. Ins. Co.*, 98 F. App'x 970, 971 (5th Cir. 2004) (per curiam) ("Under Texas law, . . . the

party claiming additional insured status is held to the same obligation as the policyholder to

review the policy.").  Thus, because Transocean is a sophisticated insured, BP will be held to the

standard of a sophisticated insured as well.

The drilling contract also envisions an active role for BP in the insuring process:

> **All the insurance shall be carried by [Transocean] at [Transocean's] expense** with an insurance company or companies authorized to do business in the jurisdictions where the work is to be performed **and satisfactory to [BP]**. . . .  [U]pon request, **[BP] may examine true copies of the actual policies**.[1]

If BP were unsatisfied with a particular provision in one of Transocean's policies, this right conferred upon BP under the drilling contract would be meaningless **unless** BP had the right to change an "[un]satisfactory" aspect or provision or renegotiate it or, presumably, declare Transocean in breach of its insuring agreements.

BP's entire argument for coverage is a ruse built up on a single technicality—*contra proferentem*—which, if accepted, would permit an oil company that is also its own insurer, and that is claiming through another sophisticated insured, to claim the legal protections of an innocent consumer of form policies so as to deprive an actual named insured of all its insurance protection.  "While parol evidence of the parties' intent is not admissible to create an ambiguity, *the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists*."  *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (emphasis added) ("The Balandrans' interpretation becomes *even more reasonable when we consider the circumstances surrounding the promulgation of this policy form*." (emphasis added)); *see also Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) (favoring a contractual interpretation in which "all of the contract provisions are properly harmonized and afforded weight" and that "*properly considers the circumstances surrounding the formulation of the contract*" (emphasis added)).

---

[1]    *See* **Decl. of C. Wenk, Exh. C at 2 of 3 (TRN-MDL-00027435).**

BP has not demonstrated, and cannot do so at this early stage, its entitlement to *contra proferentem* as a matter of law. Fact issues concerning the origin of the policies' wording remain. Discovery must be undertaken to determine the source of the policies' operative language. These fact issues can only be resolved by matters outside the pleadings. "'[J]udgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

> **B.    Transocean Has Presented Matters Outside the Pleadings to the Court that Are Essential to the Court's Consideration of the Coverage Dispute.**

As an example of what sort of factual matters outside the pleadings are necessary both to establish and to rebut the contentions in BP's motion for judgment, Transocean's response opens with a reference to the deposition testimony of Tony Hayward, BP's CEO during the Macondo blowout. His testimony plainly underscores the sheer novelty of BP's attorneys' position that one of the world's largest and voluntarily self-insured oil companies has a right to deplete the sole source of risk protection for one of its contractors and render its contractor involuntarily self-insured. In Texas, "[w]hether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Mr. Hayward testified to the "surrounding circumstances" against which to measure the competing interpretations of the relevant contract and policies.

Other evidence concerning "surrounding circumstances"—on which Transocean and its insurers are actively seeking discovery by way of Requests for Admission, Requests for Production of Documents, and Interrogatories—will include the following: (1) any drilling contracts or master service agreements which state that BP was to be provided unlimited

6

additional insured status for well pollution and other similar risks; documentation and testimony discussing: (2) whether BP has ever demanded, requested or received unlimited additional insured status for well pollution and other similar risks; (3) whether BP has ever acknowledged that it is not entitled to unlimited additional insured status for well pollution and other similar risks; (4) whether BP's risk management policies or guidelines for contractual indemnity obligations and insurance coverage in its drilling contracts provide for naming BP as an unlimited additional insured for well pollution and other similar risks; (5) whether BP, Anadarko, MOEX and/or Transocean discussed BP being listed as an unlimited additional insured under the relevant policies; (6) whether there have been well pollution incidents, disputes and claims in which BP failed to assert that it was entitled to unlimited additional insured status, including the drilling contracts and master service contracts between the parties involved; (7) the results of any internal or external audits, reviews, analysis or studies of BP's risk allocation for pollution risks; or (8) whether BP expected to be an additional insured on an unlimited basis for well pollution and other similar risks during the negotiation of the indemnity and additional insured provisions in the drilling contract; (9) BP's form drilling contract and master service agreement; (10) documentation and testimony regarding any changes or modifications to BP's form drilling contract and master service agreement; (11) documentation from BP addressing whether additional insured status should or should not be limited to the extent of contractual indemnity obligations for pollutions risks when drilling contractor or master service contract contains language similar to the "for liabilities assumed by CONTRACTOR under the terms of this Contract;" (12) documentation concerning the procurement of insurance coverage for well pollution risks; and finally, (13) expert testimony regarding the oil and gas industry custom and practice for risk allocation and the insuring of well pollution risks.

Furthermore, should BP ever put forward an interpretation of the policies and drilling contract to oppose Transocean's reasonable interpretation, an ambiguity will exist, possibly necessitating the introduction of parol evidence to resolve the ambiguity.

Once additional discovery becomes available, Mr. Hayward's testimony will form only a minor part of the oral and documentary evidence rebutting BP's attorneys' position that BP actually expected to be other-insured rather than self-insured.

Rule 12(d) provides:

> **(d)      Result of Presenting Matters Outside the Pleadings.**
>
> > If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d).  Rule 12(d) indicates that either a movant or non-movant may present external matters to the court.  Of course, it is within the court's discretion whether to consider the material presented in ruling on the motion for judgment.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 225 F. App'x 775, 783 (5th Cir. 2007) ("It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence.").  "[T]he simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment." *Mackey v. Owens*, 182 F.3d 915, *2 (5th Cir. 1999) (per curiam) (unpublished opinion) (discussing attachment of affidavits in context of Rule 12(b)(6) motion).

Transocean requests that the Court convert BP's Rule 12(c) motion to permit the consideration of additional evidence to rebut BP's claimed entitlement to this protection.  As

shown in the case of Tony Hayward, such testimony has been and will be of great value to the Court in resolving this coverage dispute.

## II.    A CONTINUANCE OR, ALTERNATIVELY, A DENIAL OF BP'S MOTION FOR JUDGMENT AS PREMATURE, IS NECESSARY TO PERMIT ALL PARTIES TO PURSUE ADDITIONAL DISCOVERY TO DEVELOP THE ISSUES RAISED IN BP'S MOTION.

As indicated above, several factual issues are germane to the Court's resolution of the matters raised in BP's motion for judgment.  Their consideration will require conversion of that motion to one for summary judgment.  Additionally, further factual development is necessary to permit Transocean to respond adequately to BP's motion.  Pursuant to Rule 56, Transocean respectfully moves the Court to continue or defer ruling on, or deny as premature, BP's motion and the matters raised therein until the parties have reached a suitable stage in discovery.  As noted, Transocean's instant motion is filed only in the alternative to the substantive grounds for denying BP's motion contained in Transocean's response.  Such a denial would moot the instant motion.  Should the Court not deny BP's motion on the merits, however, its denial as premature is warranted.  If BP's converted motion is denied as premature then the parties, once a suitable time for pursuing the aforementioned discovery has passed, can move to have the Court decide the issue on motions for summary judgment.

If a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  FED R. CIV. P. 56(d).  "Rule 56[(d)] motions are generally favored and should be liberally granted."  *Provost v. Nissen*, 354 F. App'x 180, 182 (5th Cir. 2009) (per curiam) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999)).  "To prevail on a Rule 56[(d)] motion, a party must show (1) why he

needs additional discovery, and (2) how that discovery will create a genuine issue of material fact." *Id.*; *see also Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir.2002). If the party seeking a continuance is able to meet these requirements, "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Six Flags Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009).

Per this Court's June 20, 2011 CMO, Transocean's response to BP's motion is due on August 11, 2011. **Dkt. No. 2849, at 3.** There is simply not enough time between now and then to secure the requisite affidavits or declarations to support Transocean's responsive positions. As noted above, Transocean needs additional discovery to develop its responsive arguments in light of issues raised in BP's motion. First, discovery is needed to develop BP's non-entitlement to the protections of *National Union*'s coverage inference as well as Transocean's responsive arguments that BP is, by claiming through Transocean's policies, a sophisticated insured with a role in drafting the policies at issue. Second, further testimony like Tony Hayward's is necessary to elaborate upon the "surrounding circumstances" of insuring offshore environmental risks.

All of these issues are necessary prerequisites to the Court's eventual ruling on both BP's converted motion as it stands as well as to deciding the entirety of the coverage cases. Because further discovery is needed to establish Transocean's, and presumably other parties', positions on these matters, Transocean respectfully moves this Court to grant a continuance, "defer considering the motion or deny it," "allow time" to pursue that discovery, or "issue any other appropriate order"—including denying the motion for summary judgment as premature—toward achieving that end. *See* FED. R. CIV. P. 56(d); *see also Columbia Gas*, 940 S.W.2d at 589 (undertaking to "examin[e] the contract as a whole in light of the circumstances present when the contract was entered").

## CONCLUSION

For the reasons set forth above, conversion to summary judgment is warranted, as is a continuance, deferral, or "other appropriate order" to permit Transocean to proceed with discovery to support its response to BP's motion as well as its own contentions against BP, Anadarko and MOEX in the coverage actions.  Transocean, therefore, prays the Court convert BP's motion for judgment to a motion for summary judgment and, upon conversion, issue an order denying BP's motion as premature or deferring the Court's ruling on BP's motion until all parties have had time to conduct sufficient discovery.

Respectfully submitted,

By:  /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:  /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:  /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of August, 2011, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record.

/s/  Kerry J. Miller