UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO: ALL CASES. | : : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CERTAIN PLAINTIFFS' OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S SUPPLEMENTAL BRIEF IN SUPPORT OF SUPERVISION OVER THE BP INTERIM CLAIMS PROCESS

NOW INTO COURT, through undersigned counsel, come certain Plaintiffs to oppose the PSC's "Supplemental Brief In Support of Supervision Over the BP Interim Claims Process" ("Supplemental Brief") (Doc. 3423), filed on July 25, 2011.

This Brief is being filed in accordance with this Court's July 26 Order (Doc 3465) that any Opposition to the PSC's Supplemental Brief must be filed no later than August 15.

### CONTENTS:

1. An Audit of GCCF by the Department of Justice is Currently Being Conducted, Making the PSC's Request for a Special Master Unnecessary.

2. The PSC Makes Numerous and Substantial Allegations that are Incorrect and False.

3. The PSC Selectively Both Misuses and Ignores GCCF's Payment Statistics To Obfuscate the Work the GCCF has Accomplished.

4. The PSC Ignores and Threatens the Credibility of GFFC.

5. The PSC's reliance on F.R.C.P., Rule 23(d) is Misplaced.

6. Conclusion.

1

---

### 1. An Audit of GCCF by the Department of Justice is Currently Being Conducted, thereby Making The PSC's Request for a Special Master Redundant and Unnecessary.

In its Supplemental Brief, the PSC requests this Court:

> "to appoint a Special Master to supervise the BP/GCCF claims process in order to:
> 1) assure compliance with OPA;
> 2) ensure accurate and appropriate communications with claimants;
> 3) make findings and/or recommendations regarding the satisfaction of OPA's presentment requirements; and
> 4) make findings and/or recommendations regarding the scope and/or efficacy of releases" (Supplemental Brief, p. 20)

As recently as July 7, 2011, however, Attorney General Eric Holder had already requested the GCCF, through its administrator Mr. Ken Feinberg, to undergo an independent audit, to which Mr. Mr. Feinberg immediately agreed.

As stated in a July 20, 2011 letter from Attorney General Holder to Mr. Feinberg:

> As we discussed at our July 7th meeting regarding the status of your work, I recently traveled to Alabama and heard from individuals and business owners whose lives and livelihoods continue to be severely affected by the Deepwater Horizon oil spill, and who have turned to the Gulf Coast Claims Facility (GCCF) in order to avoid years-long litigation. I note the GCCF's progress in the face of nearly one million claims filed and appreciate your efforts. The GCCF's work continues to be critical, and we will continue to hold it to the highest standards of efficiency, consistency, and customer service.
>
> At our meeting, we discussed concerns that I heard in the Gulf regarding the transparency of the process. This letter will confirm your conversation with Associate Attorney General Tom Perrelli, in which you agreed, as we discussed at our meeting, to an independent audit of the GCCF. We recognize, however, that the GCCF is continuing to get thousands of claims per week, and that resolving those claims quickly and fairly should be its highest priority. Consequently, we will work with you to identify an appropriate time to commence such an audit before the end of the year, in a manner that will not disrupt the timely processing of claims.
> *(July 7, 2011 letter from Attorney General Holder to Ken Feinberg, attached as "Exhibit 1")*

2

An independent audit such as this had also recently been added to a bill by Alabama Representative Jo Bonner, and the announcement that the Justice Department would be initiating this audit was met enthusiastically by Representative Bonner as well as Alabama Attorney General Luther Strange (who, in fact, is quoted approvingly, from a March 21 Mobile Press-Register article, by the PSC on page ten of its Supplemental Brief), both past outspoken critics of some of GCCF's procedures:

> In a written statement, Feinberg said he welcomes the attorney general's letter and thanked Holder "for his supportive words of encouragement."
>
> "We will do what the attorney general requests — and it is something we have always considered we would do — regarding an independent audit that will begin this year, but not disrupt the timely processing of claims," the statement said.
>
> Feinberg's group is tasked with compensating people and businesses who suffered economic losses because of the oil spill. But Gulf Coast residents and elected officials have long voiced concerns about a claims process that they describe as too slow, inconsistent and opaque.
>
> Rep. Jo Bonner, R-Mobile, last week added language to a funding bill for the Justice Department that called for the appointment of an auditor to review the Gulf Coast Claims Facility, or GCCF.
>
> Bonner expressed gratitude for Holder's efforts and praised the audit announcement in a Wednesday statement. But he also called for the audit to be conducted without delay, adding that he hopes "we're not going to work overtime to make this convenient on Mr. Feinberg and the people at GCCF."
>
> "Surely, Mr. Feinberg can multitask and work with an independent auditor to get this done before the end of the year," Bonner's statement said. "The people of the Gulf Coast have waited a long time for answers to reasonable questions about the operations and methodologies of the GCCF, and they deserve answers."
>
> Holder met with Bonner, Alabama Attorney General Luther Strange and fishermen impacted by the spill during a late-June trip to south Alabama.
>
> During public statements in Orange Beach, Holder said he'd heard their concerns about the claims facility and expressed similar worries about its "pace and transparency." He vowed to have a "detailed conversation" with Feinberg.
>
> ...

Strange welcomed the news that "someone other than BP and Kenneth Feinberg will finally be able to peer into the inner-workings of the GCCF," in a written statement issued Wednesday afternoon.

"For far too long, the GCCF has hidden behind a veil of secrecy when denying compensation to victims of the Gulf oil spill," Strange's statement said. "I applaud this outcome due to the efforts of Attorney General Holder and Alabama's own local and congressional leaders, who have refused to back down after constant rejection."

*("Gulf Coast Leaders Welcome Oil Spill Claims Audit"; Mobile Press-Register, July 21, 2011; available: at http://blog.al.com/live/2011/07/gulf_coast_leaders_welcome_oil.html ; attached as "Exhibit 2")*

In light of this audit, initiated by the Department of Justice, agreed to by Mr. Feinberg and enthusiastically supported by (at least one) Gulf Coast congressman and attorney-general, the appointment of a Special Master at this time would be redundant, unnecessary and a waste of money and, particularly, of the finite resources and manpower of GCCF.

## 2. The PSC has Made Numerous and Substantial Allegations that are Completely Incorrect and False.

Through unsupported allegations, the PSC has diverted attention, and, indeed hidden, the progress the GCCF has made, particularly in the most recent months, in paying claims.

The PSC's Brief is replete with prejudicial, unsupported and totally false statements that simply are not true, such as:

"GCCF continues to manipulate putative class members making interim claims and drives them to sign full releases…" (p. 5) (no citations in original)

"BP, through GCCF, is using the interim claim procedure to leverage releases in direct contravention of OPA's mandate." (p. 5) (no citations in original)

"… the only way to get compensation from the GCCF is to take 'quick pay' and sign the complete release and assignment of all rights to BP" (p. 8) (no citations in original)

"…the burdensome and unrealistic requirements of interim claim documentation set up certain failure that is then used by the GCCF to manipulate putative class members into accepting quick payments and signing releases" (p. 8) (no citations in original)

4

"… the GCCF is strategically and systematically forcing putative class members to accept quick payments with accompanying releases because they are offered no other viable option." (p. 11) (no citations in original)

"BP has established a claims process with the primary function of convincing putative class members that the only compensation available is a minimal set amount that comes with a full release attached." (p.11) (no citations in original)

"BP and GCCF's position [is] that BP can lawfully establish any interim claim procedure it wants, regardless of how ineffective at compensating short term losses, regardless of how coercive in securing full releases…." (p. 12) (no citations in original)

"GCCF's practice of requesting documents that do not exist and submitting calculations that misrepresent documents that have not been produced are being used as tools to force putative class members to accept final payments and sign releases." (p. 17) (no citations in original)

"GCCF's motivation to use the OPA-presentment requirement as a tool to avoid litigation by extracting releases is unquestionably a BP directive." (p. 19) (no citations in original)

"BP through GCCF continues to make things as difficult as possible for the victims to receive interim payments." (p. 19) (no citations in original)

Such extreme, unsupported and completely untrue statements are clearly intended to make Mr. Feinberg and GCCF appear as having insidious motives and to be intentionally acting contrary to their duties.

The fact, however, is that, contrary to all these claims, the undersigned is unaware of any proof whatsoever that GCCF has ever had any policies or operated in any manner other than in the best interests if the claimants.

Indeed, Mr. Feinberg (who had been previously appointed by President Obama to a similar position, the Wall Street banker Pay Czar after the bailout of the banking industry in 2008) is without question the leading person in the country at this type of work. His prior work includes:

- Special Master of the September 11th Victim Compensation Fund of 2001;

-Fund Administrator for the Hokie Spirit Memorial Fund, following the shooting at Virginia Tech in 2007;

-Special Master, Agent Orange litigation

Special Master – Asbestos litigation

-Special Master – Dalkon Shield litigation

-Administrator – ADR Settlement Program involving Liberty Mutual, Zurich N.A. and Hurricane Katrina and other Gulf hurricane claimants

-Distribution Agent – AIF Fair Fund

The PSC's Supplemental Brief goes to pains not to mention Mr. Feinberg or even the word "Administrator" in its attacks on the honesty of the GCCF and it policies and procedures. Obviously, the PSC prefers to keep its totally baseless and untrue charges directed only toward the facility generally, but in its attacks on the honesty of the GCCF and it policies and procedures, it is unmistakably attacking Mr. Feinberg himself in that he is its Administrator. Clearly it takes this tactic because, in light of Mr. Feinberg's exemplary record and unquestioned integrity, the absurdity of these false and wholly unsupported charges would be exposed if expressly directed at him.

Further, Mr. Feinberg and the GCCF have made several major settlements, giving lie to these exaggerated and false allegations and statements of the PSC. A few examples are stated below.

**a) Death case settlement with Attorney Ronnie Penton:**

Louisiana attorney Ronnie Penton represented the family of one of those who died on the *Deepwater Horizon* and just a few weeks ago settled the claim with GCCF for a substantial sum.

**b) Death case settlement with Attorney Keith Jones:**

Baton Rouge attorney Keith Jones had a son, Gordon, who also died on the *Deepwater*

6

*Horizon*. Mr. Jones represented his son's estate in the wrongful death claim. He obtained competing offers from GCCF and Schlumberger at the mediation of the claim, and it was successfully resolved for an undisclosed amount.

Messrs. Penton and Jones are successful and talented plaintiff attorneys with particular skill in the fields of Admiralty and other types of maritime cases. They have impeccable reputations and did not find that either GCCF or Mr. Feinberg personally ever did anything other than try to find reasonable and equitable solutions to these tragic claims.

**c) Undersigned counsel has successfully settled, and continues to settle, numerous claims with GCCF, including clients not only with personal claims but as well as those from all types of affected businesses - including resorts, tourism, restaurants, commercial fishing and seafood.**

Our firm represented the Sandestin resort, the largest condo resort between Louisiana and Florida, and settled the claims for most individual condo, home and business owners. We also represent a large number claimants from other large complexes such as Silver Shells, Sea Side, and other large resorts. Our office also represents many other hotels, restaurants, property owners, individuals, fishermen, oystermen, shrimpers and other businesses in regards to their loss of rental income, loss of business income, loss of personal income, property damage, and environmental damage claims.

Presently, we are in negotiations to resolve claims for Pascal's Manale, Galatoire's, and Mulate's Cajun restaurants as well as negotiating with GCCF to come up with a new formula for calculating oystermen's claims. The GCCF is now offering not only to pay oystermen on a basis of income loss but also to pay them a sum, depending on where the leases are located, <u>for damage to the beds themselves</u>. I, along with Mr. Cossich, a member of the PSC, attended a meeting with Krista Friedrich of the GCCF and helped push the GCCF to consider payments to

oystermen for up to seven years in certain locations based upon the productivity of the oyster leases identified by the state of Louisiana (through the Department of Wildlife and Fisheries).

### 3. The PSC Selectively Uses Numbers To Obfuscate the Work the GCCF has Accomplished.

The thrust of the PSC's argument that the GCCF is doing a poor job is because it supposedly has not approved enough interim claims as opposed to final claims. Again, however, the PSC distorts the accomplishments and progress of the GCCF.

Most egregiously, the PSC completely ignores all payments from GCCF's Emergency Advance Payment program, a program unprecedented in the history of the OPA. In the months since it took over claims processing from BP, GCCF has paid $2.58 billion in theses Emergency Payments (which dollar amount comprises more than half of all the payments combined that have ever been made by GCCF), with the average payments being over $8,000 to each individual and over $32,000 to each business. None of this is mentioned or even alluded to by the PSC. From reading its Supplemental Brief, one is led to think that aside from Final Payments, claimants have only received what are technically called the "Interim Payments", thus radically skewing the amounts one is led to believe claimants have received.

Likewise, its Supplemental Brief is devoid of any mention of the funds BP itself directly paid to claimants before the GCCF took over.

Finally, at the center of its argument are its several references to GCCF having approved "fewer than 16%" (Supp. Brief., p. 2) (an outdated statistic from May 2011) of that class of claims technically called the "Interim Claims", which followed, first, BP's own claim payment program and, second, then GCCF's Emergency Advance Payments program. This percentage the PSC cites, however, is updated regularly and easily available on GCCF's website. The PSC gives no explanation why it does not use a current statistic, and, in fact, as of August 10, this amount

had increased substantially, to 24.6%. And, indeed, now that the filing of Interim Claims is slowing down substantially, the processing and payment of them is proceeding at an ever faster rate.

And as the pace of the payments is picking up, Mr. Feinberg is getting more and more credit for his performance:

> " 'Our oyster boys are really getting some good attention from you, and a lot of the shrimp guys are getting in line,' Pearce told Feinberg. . .. Pearce and [Senator] Landrieu praised Feinberg for recent improvements to his process, including hiring local lawyers and accountants with access to more specific information about claimants' files and agreeing to give claimants a single point of contact with their settlement offers. In the end, Pearce told Feinberg, 'We're getting there'."
>
> - Harlen Pearce (Chairman, La. Seafood Promotion and Marketing Board)
> -quoted in *"Oil Spill Claims Czar Kenneth Feinberg Gets a Rare Shout-out at New Orleans Meeting"*, Times Picayune, April 21, 2011
> -available at: http://www.nola.com/news/gulf-oil-spill/index.ssf/2011/04/oil_spill_claims_czar_kenneth_1.html
>
> "I think Ken's gonna make it right. We have a responsible party that I believe is acting responsibly in this case. Will people fall through the cracks? Certainly. You have this many claims, it will overwhelm even Ken Feinberg. But overall, I think people will become his cheerleaders in the end"
>
> -Mike Voisin (owner of Motivatit Seafood and a "key negotiator with the Gulf Oyster Industry Council and the Louisiana Oyster and Dealers Association");
> -quoted in *"Claims Czar Kenneth Feinberg Say Pace of Payments Quickens"*, Times Picayune, June 20, 2001;
> -available at: http://www.nola.com/news/gulf-oil-spill/index.ssf/2011/06/claims_czar_kenneth_feinberg_s.html

### 4. The PSC Ignores the Importance and Threatens the Credibility of GFFC.

At is most basic, the PSC's primary criticism of Mr. Feinberg is that he is too meticulous in reviewing for adequacy of proof. Mr. Feinberg, thorugh decades of runningsuch huge claims programs, is aware of how critically the success of this program relies on its integrity.

This program would become a free-for-all cash grab, however, if the PSC has its way,

9

that would make FEMA's Katrina claims program look like a paragon of virtue. If the PSC prevails, it wants to abandon <u>all</u> requirements that claimants provide proof to support their claim:

> Any writing by a claimant submitted to BP and/or the GCCF under any phase of the various claims process, that sets out a "sum certain" (whether interim or final) and a simple, reasonable description of the damages claimed, should be deemed to satisfy the definition of "claim" and thus presentment under OPA. (Supplemental Brief, p 16)

This naïve proposal would be a death blow to the program:

> "Nothing can undercut the credibility of a program more than the perception that you're paying fraudulent claims," said Mr. Feinberg, who administered the settlement for victims of the 9/11 attacks and has done similar work for people affected by Hurricane Katrina, the defoliant Agent Orange and the 2007 killings at Virginia Tech University.
>
> The key to fighting fraud, he said, is corroboration of large claims. Of the 7,300 claims processed in the $7 billion 9/11 fund, he said, his team determined that 35 were fraudulent. "Some people went to jail, others paid a fine," he said.
> *(http://www.nytimes.com/2010/06/19/us/19escrow.html)*

To this end, Mr. Feinberg has enlisted the help of the F.B.I., Department of Justice, Secret Service, the I.R.S., and U.S. Postal Inspection Service. Last December Mr. Feinberg announced that less than one percent ("2,000 to 3,000 claims") appeared "very suspicious" and he was forwarding to the Justice Department "any claims that appear to be fraudulent". To date, at least seven people have been indicted by the Justice Department.

*(See http://www.nola.com/news/gulf-oil-spill/index.ssf/2010/12/fraudulent_claims_in_gulf_oil.html)*

Mr. Feinberg's concerns and success in preserving the integrity of the GCCF stands in stark contrast to that of FEMA, which was universally ridiculed for handling of the aftermath of Hurricane Katrina, and which earlier this year was accused by the Department of Homeland Security's Inspector General for improperly paying $643 million in claims, which amounted to

10

nine percent of the claims paid.

(See *http://www.nola.com/hurricane/index.ssf/2011/01/fema_urged_to_pursue_64_millio.html*)

### 5. The PSC's reliance on F.R.C.P., Rule 23(d) (1) is Misplaced.

The PSC cites Rule 23(d) (1) (Class Actions; Conducting the Action) as authority for what it seeks. That rule states:

Rule 23. Class Actions

(d) Conducting the Action.

(1) In General.
In conducting an action under this rule, the court may issue orders that:
…
(B) require — to protect class members and fairly conduct the action — giving appropriate notice to some or all class members of:
(i) any step in the action;
(ii) the proposed extent of the judgment; or
(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action; …

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

The PSC does correctly cite Rule 23 for the proposition that this Court has authority to regulate communications from a defendant to putative plaintiff class members.

In this instance, however, its reliance on Rule 23 is misplaced because what it in fact wants is for this Court appoint a Special Master to control not just GCCF's "communications" but the GCCF itself (such as its request that "all releases entered into by unrepresented putative

class members should be retroactively voided" [Supp. Brief, p. 19]). The relief the PSC seek is much more than what Rule 26 allows for.

The PSC also incorrectly cites Rule 23 in its argument, mentioned above, that "presentment" of a claim to GCCF <u>need not include any proof of loss whatsoever</u>, but merely (1) a description of the loss and (2) the dollar amount:

> Any writing by a claimant submitted to BP and/or the GCCF under any phase of the various claims process, that sets out a "sum certain" (whether interim or final) and a simple, reasonable description of the damages claimed, should be deemed to satisfy the definition of "claim" and thus presentment under OPA. (Supplemental Brief, p 16)

But again, the PSC cites no case law or other legal authority whatsoever (other than a generic reference to Rule 23 and 28 U.S.C. Sec. 1407 ["Multi-district Litigation"]) for such a absurd suggestion.

## 6. Conclusion.

The July 20 announcement by the Department of Justice that an independent audit is being conducted of GCCF, to assure that Mr. Feinberg continues to hold "to the highest standards of efficiency, consistency, and customer service", obviates any need there might have been for the appointment of a Special Master.

Even without this audit, however, there is no need here for a Special Master. The allegations the PSC makes are not only factually unsupported but factually incorrect.

The PSC also relies on incorrect citations of both fact (such as how much the GCCF has paid to claimants) and law (such as its wholly unrealistic argument that no proof of loss is required by a claimant under Rule 23).

Accordingly, is respectfully requested that the relief sought in the PSC's Supplemental Brief be denied.

Respectfully submitted,

this 12th day of August, 2011.

_/s/ Daniel E. Becnel, Jr._
DANIEL E. BECNEL, JR. (#2926)
**BECNEL LAW FIRM, LLC**
P. O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becnellaw.com

**Attorney for Plaintiffs in:**
1. Bill's Oyster House, LLC *et al* (E.D. La. #10-cv-1308)
2. Howard Buras (E.D. La. #2994 and M.D. La. # 369)
3. Armand's Bistro (E.D. La. #4489 and W.D. La. #1007)
4. Faye Loupe *et al.* (E.D. La. #2764)
5. Laura Gautreaux (E.D. La. #1539)
6. Brent Rodrigue, Sr *et al.* (E.D. La. #1325)
7. Issadore Creppel (E.D. La. #1346)

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this ___12th___ day of August, 2011.

_/s/ Daniel E. Becnel, Jr._