From:
"Andrew Langan" <alangan@kirkland.com>
To:
"York, R. Alan" <AYork@GodwinRonquillo.com>, Sally_Shushan@laed.uscourts.gov
Cc:
Corey Maze <CMaze@ago.state.al.us>, "Godwin, Donald" <DGodwin@GodwinRonquillo.com>, DWH Defense Steering Committee <Dsc2179@liskow.com>, James Roy <JIMR@wrightroy.com>, L Strange <lstrange@ago.state.al.us>, michael underhill <Mike.Underhill@usdoj.gov>, Mike_OKeefe@laed.uscourts.gov, robert cunningham <RTC@cunninghambounds.com>, Sally_Shushan@laed.uscourts.gov, "Herman, S" <sherman@hhkc.com>
Date:
08/12/2011 07:14 AM
Subject:
MDL 2179 -- BP's reply to HESI's Response to Request for Additional Phase One Halliburton Deponents

Dear Judge Shushan:

With the Court's permission, here is a brief reply to Halliburton's August 11 note on the issue of BP's request for several more 1 day HESI depositions.

1.  We appreciate HESI agreeing to produce Mr. Dugan and Ms. Stelly.

2. **HESI Investigation:** As to the proposed deponents whom BP believes were part of the HESI internal investigation team for which (in our view) an improper claim of privilege has been asserted, BP believes that after a further meet and confer, the privilege issue will be ripe for a motion to compel by BP on the privilege issue.  We suggest that details of those several deponents who may be subject to deposition as a result of the disposition of such a motion be deferred until that legal issue is resolved.  (This would include Messrs. Edwards, Sweatman, Chemali, Badalamenti, Turton,)

3.  **Other HESI deponents:**

**Quang Nguyen** – Halliburton does not deny that he has relevant information..  On the issue of timeliness, Mr. Nguyen's deposition did not become essential until after Jesse Gagliano took the Fifth Amendment at his deposition on May 11th and BP was unable to gather information about Mr. Gagliano's work from his supervisor, Ronnie Faul, at his deposition on June 29-30.   It is simply not accurate to claim BP waited 4 months to ask when the circumstances that made it clear this deposition was needed arose in the past 5 weeks.

**Ricky Morgan** – First, at his deposition at the end of June, Ronnie Faul testified that Mr. Morgan was involved with post-incident testing and observed that the Macondo slurry "looked thin" to him – although the testing was performed post-incident, it was performed on the pre-incident slurry.  Mr. Faul had no further information about the testing or the observations and those observations were allegedly not documents, so BP should be entitled to ask Mr. Morgan. Second, Mr. Morgan and three other undeposed Halliburton employees were identified by Halliburton has having done informal analysis on the cement slurry pumped at Macondo.  BP is asking for only one of the four employees for deposition.

**Earl Fly** – at the Kurt Kronenberger deposition just last week (Aug. 2nd), Mr. Kronenberger indicated that Earl Fly would be the proper person to answer questions on at least questions: (1) what services BP actually received from Sperry Sun (69:20-25), information surrounding Sperry

mudlogger Nick Malczewskyj being removed from the Horizon following the March 8th kick (266:20 – 267:11), and Sperry's failure to send data from the Horizon to be sent to its offshore facility (128:10 – 129:13).    See below:

Kronenberger 69:20-25
20 How do we know which of the items that
21 are listed, for example, under 10.12 were
22 actually engaged by BP, with Sperry, for the
23 DEEPWATER HORIZON Project on the Macondo Well?
24 A. **Well, the best person to ask about that**
25 **would probably be Earl Fly.**

Kronenberger 266:20-267:11
20 Q. (By Mr. Palmintier) So you're not aware
21 that Mister -- that BP asked that Mr. Malczewskyj
22 be replaced?
23 A. That, I am aware of, yes.
24 Q. Yes. Are you aware that he was replaced
25 shortly after he alleges to have caught a kick?
1 A. I vaguely remember that circumstance,
2 yes.
3 Q. And he protested that he caught the kick,
4 and that's why he was asked to leave. Do you
5 remember that?
6 A. No. I -- **I remember being told by Earl**
7 **Fly**, I believe, somebody else in our Operations
8 Team, logically, it seems like it would be Earl
9 Fly, **that they -- the crew felt like Nick was**
10 **made a scapegoat, that they felt like he did his**
11 **job acceptably**.

Kronenberger 128:10-129:13
24 Q. And **Mr. Fly replies**, he says: "DD3 has
25 been moved to 'in the OTC.' Amos Runner has been
1 in contact with OTC. **Only Horizon has been**
2 **remiss on my side**."
3 What does that mean?
4 MR. HARTLEY: Object, form.
5 A. I can't say for certain. **He obviously**
6 contacted -- or -- or **had some knowledge about**
7 **what they were doing or not doing** that I -- I
8 just don't have.
9 Q. (By Mr. Dart) Okay. Well, if -- if a rig
10 is remiss, are they not sending their data into
11 OTC in Broussard? Is that what that implies?
12 A. Reading the E-mail, that's what I

13 believed to be the case, yes.

**Ben Richard** – Mr. Richard is sole lab technician that BP is requesting out of over ten lab technicians that worked on testing the Macondo slurry.  BP selected Mr. Richard because he ran the final foam stability test that Halliburton claims shows that the Macondo slurry was stable.  BP should be entitled to ask him about that foam stability test, including how he performed that test, how the test looked, whether he has communicated with others about that test, and what training he received to perform that test.

*****************************************************************************************

Thanks for Court's Consideration.

Respectfully submitted,

Andy Langan


**J. Andrew Langan, P.C.| Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** │ (312) 862-2200 **FAX**
andrew.langan@kirkland.com