# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL No. 2179** **SECTION J** |
| | * | |
| | * | **Honorable CARL J. BARBIER** |
| This document relates to: | * | |
| | * | **Magistrate Judge SHUSHAN** |
| *All Cases* | | |

## DECLARATION OF ANDREW B. BLOOMER

I, Andrew B. Bloomer, declare as follows:

1.   I am over twenty-one years of age and make this Declaration based on my own personal knowledge.

2.   I am a partner of the law firm of Kirkland & Ellis LLP, and one of the counsel for BP in these proceedings.

3.   I am submitting this Declaration in support of BP's Memorandum in Opposition to Plaintiffs' Supplemental Brief Regarding Supervision of the GCCF Interim Claims Process.

4.   Attached hereto as Exhibit A is a true and correct copy of the GCCF's Overall Program Statistics Status Report as of August 12, 2011.

5.   Attached hereto as Exhibit B is a true and correct copy of an excerpt from the GCCF's Overall Program Statistics Status Report as of July 26, 2011.

6.   Attached hereto as Exhibit C is a true and correct copy of the April 18, 2011 Report of the Government Accountability Office entitled *Deepwater Horizon Oil Spill: Update on Federal Financial Risks and Claim Processing* (available online at http://www.gao.gov/new.items/d11397r.pdf) (last visited April 15, 2011).

7.   Attached hereto as Exhibit D is a true and correct copy of the July 20, 2011 Letter from United States Attorney General Eric H. Holder, Jr. to Mr. Kenneth Feinberg.

8.   Attached hereto as Exhibit E are true and correct copies of the GCCF's sample Determination Letters for businesses and individuals, which are attached as Exhibit E to the GCCF's February 18, 2011 Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology (available online at http://www.gulfcoastclaimsfacility.com/rules.pdf) (last visited August 15, 2011).


I make this Declaration under penalties of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true.

_Andrew B. Bloomer_
Andrew B. Bloomer


Dated:  August 15, 2011

# Exhibit A



**GCCF** Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

### Overall Program Statistics
*(Status Report as of August 12, 2011)*

| All Claimants | No. of Claimants |
|---|---|
| **Total All Claimants** *(This is a unique count that includes all Emergency Advance Payment Claimants)* | **527,551** |
| 1. Individual | 418,071 |
| 2. Business | 109,480 |
| *Claimants Represented by Counsel: 51,728* | |

| Claimant Review Status | No. of Claimants |
|---|---|
| **Interim and Final Claimants - Phase II** *(A Claimant can be in only one category below.)* | **322,160** |
| **Reviewed - Phase II Only** | **311,123** |
| 1. Final Payment Issued | 164,073 |
| a. Quick Payment | 121,222 |
| b. Full Review | 42,851 |
| 2. Final Release Accepted Pending Payment | 454 |
| 3. Final Offer Made | 18,454 |
| With Interim Payment (7,682 out of these 18,454 Final Offers) | |
| Final Offer Accepted (4,265 out of these 18,454 Final Offers) | |
| 4. Other Claim Determinations: | 128,142 |
| a. Determination Letters (No Loss) | 10,821 |
| b. Withdrawal Requested | 515 |
| c. Claimants Notified Additional Information Required | 19,104 |
| d. Claimant Denied | 97,702 |
| **Under Review** | **11,294** |
| 1. Phase II - Interim & Final | 11,037 |
| 2. Phase I - EAP Unresolved / Under Review *(Claims Subject to Liens, Audit Holds, etc.)* | 257 |
| **EAP Claimants Resolved** *(Many EAP Claimants have refiled a claim in Phase II - Interim and Final Stage)* | **447,543** |

| Paid Claimants | Paid Claimants | Total Amount Paid |
|---|---|---|
| **Total Unique Claimants** | **203,016** | **$ 4,939,838,790.01** |
| 1. Quick Pay / Full Review / Interim Payment | 187,114 | $ 2,356,465,901.94 |
| *a. Individual* | *136,864* | *$ 936,004,250.53* |
| *b. Business* | *50,250* | *$ 1,420,461,651.41* |
| 2. Emergency Advanced Payment (EAP) | 169,180 | $ 2,583,372,888.07 |
| *a. Individual* | *121,822* | *$ 1,025,363,145.80* |
| *b. Business* | *47,358* | *$ 1,558,009,742.27* |
| Separate Fund for Real Estate Brokers and Agents | | $ 54,434,574.75 |
| **Total Paid:** | | **$ 4,994,273,364.76** |

| Quick Final Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Quick Final Payments** | **123,914** | **122,283** | **121,222** | **$ 1,206,420,000.00** |
| 1. Individual | 93,123 | 91,953 | 91,162 | $ 455,830,000.00 |
| 2. Business | 30,791 | 30,330 | 30,060 | $ 750,590,000.00 |

| Interim Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Interim Payments** | **92,788** | **87,540** | **23,027** | **$ 283,159,892.51** |
| 1. Individual | 62,580 | 59,972 | 14,428 | $ 97,568,296.54 |
| 2. Business | 30,208 | 27,568 | 8,599 | $ 185,591,595.97 |

| Full Review Final Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Full Review Final Payments** | **126,778** | **122,241** | **42,865** | **$ 866,886,009.43** |
| 1. Individual | 98,743 | 95,695 | 31,274 | $ 382,605,953.99 |
| 2. Business | 28,035 | 26,546 | 11,591 | $ 484,280,055.44 |

| Full Review Final Payment Offers *(Inclusive of Offers with Release Accepted and Final Payment Issued)* | Offers Made | Amount Offered | Offers Accepted | Amount Accepted |
|---|---|---|---|---|
| **Total Final Offers** | **69,194** | **$ 1,451,604,929.76** | **45,966** | **$ 905,149,792.79** |
| 1. Final Offers: Individual | 46,844 | $ 517,654,132.23 | 34,329 | $ 396,384,163.26 |
| 2. Final Offers: Business | 22,350 | $ 933,950,797.53 | 11,637 | $ 508,765,629.53 |



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Claimant Submissions
*(Quick Pay, Interim and Full Review Claimants only)*

| All Submitted and Paid Claimants | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| 1. Final: Quick Pay | 123,914 | 122,283 | 121,222 | $ 1,206,420,000.00 |
| 2. Final: Full Review *(net of Claimants with Quick Payment or Interim Submissions)* | 126,778 | 122,241 | 42,865 | $ 866,886,009.43 |
| 3. Interim Payment *(net of Claimants with Quick Payment Submissions)* | 92,788 | 87,540 | 23,027 | $ 283,159,892.51 |
| **Total** | **343,480** | **332,064** | **187,114** | **$ 2,356,465,901.94** |

| Submitted and Paid Claimants - Individual | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| 1. Final: Quick Pay | 93,123 | 91,953 | 91,162 | $ 455,830,000.00 |
| 2. Final: Full Review *(net of Claimants with Quick Payment or Interim Submissions)* | 98,743 | 95,695 | 31,274 | $ 382,605,953.99 |
| 3. Interim Payment *(net of Claimants with Quick Payment Submissions)* | 62,580 | 59,972 | 14,428 | $ 97,568,296.54 |
| **Sub-Total** | **254,446** | **247,620** | **136,864** | **$ 936,004,250.53** |

| Submitted and Paid Claimants - Business | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| 1. Final: Quick Pay | 30,791 | 30,330 | 30,060 | $ 750,590,000.00 |
| 2. Final: Full Review *(net of Claimants with Quick Payment or Interim Submissions)* | 28,035 | 26,546 | 11,591 | $ 484,280,055.44 |
| 3. Interim Payment *(net of Claimants with Quick Payment Submissions)* | 30,208 | 27,568 | 8,599 | $ 185,591,595.97 |
| **Sub-Total** | **89,034** | **84,444** | **50,250** | **$ 1,420,461,651.41** |



**All Claimants with Filed Claims**

- 3. Interim Payment (net of Claimants with Quick Payment Submissions) 27.01%
- 2. Final: Full Review (net of Claimants with Quick Payment or Interim Submissions) 36.91%
- 1. Final: Quick Pay 36.08%



**Amount Paid to All Claimants**

- 2. Final: Full Review (net of Claimants with Quick Payment or Interim Submissions) 36.79%
- 1. Final: Quick Pay 51.20%
- 3. Interim Payment (net of Claimants with Quick Payment Submissions) 12.02%



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Individual Claims by Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Amount | No. of Claims | Amount Paid |
|---|---|---|
| 1. $0.01 - $5,000.00 | 167,922 | $ 710,924,892.49 |
| 2. $5,000.01 - $10,000.00 | 47,682 | $ 356,073,224.07 |
| 3. $10,000.01 - $25,000.00 | 36,006 | $ 551,131,071.69 |
| 4. $25,000.01 - $100,000.00 | 7,073 | $ 264,431,309.77 |
| 5. $100,000.01 - $500,000.00 | 114 | $ 15,157,721.31 |
| 6. Over $500,000.00 | 15 | $ 63,649,177.00 |
| **Total** | **258,812** | **$ 1,961,367,396.33** |



**Individual Claims Paid by Value Range**

- 6. Over $500,000.00 — 0.01%
- 5. $100,000.01 - $500,000.00 — 0.04%
- 4. $25,000.01 - $100,000.00 — 2.73%
- 3. $10,000.01 - $25,000.00 — 13.91%
- 2. $5,000.01 - $10,000.00 — 18.42%
- 1. $0.01 - $5,000.00 — 64.88%

**Individual Amount Paid by Value Range**

- 6. Over $500,000.00 — 3.25%
- 5. $100,000.01 - $500,000.00 — 0.77%
- 4. $25,000.01 - $100,000.00 — 13.48%
- 3. $10,000.01 - $25,000.00 — 28.10%
- 2. $5,000.01 - $10,000.00 — 18.15%
- 1. $0.01 - $5,000.00 — 36.25%



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Business Claims by Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Amount | No. of Claims | Amount Paid |
|---|---|---|
| 1. $0.01 - $5,000.00 | 14,972 | $          40,705,231.22 |
| 2. $5,000.01 - $10,000.00 | 11,003 | $          82,299,870.97 |
| 3. $10,000.01 - $25,000.00 | 51,818 | $     1,170,629,255.60 |
| 4. $25,000.01 - $100,000.00 | 16,471 | $        807,798,489.92 |
| 5. $100,000.01 - $500,000.00 | 3,338 | $        600,052,144.70 |
| 6. Over $500,000.00 | 178 | $        276,986,401.27 |
| **Total** | **97,780** | **$     2,978,471,393.68** |



**Business Claims Paid by Value Range**



**Business Amount Paid by Value Range**



## Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

### Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Claims by Category and Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Category and Amount | No. of Claims | Amount Paid |
|---|---|---|
| **1. Removal and Clean Up Costs** | | |
| a. $0.01 - $5,000.00 | 66 | $ 173,316.53 |
| b. $5,000.01 - $10,000.00 | 13 | $ 100,369.88 |
| c. $10,000.01 - $25,000.00 | 26 | $ 546,460.87 |
| d. $25,000.01 - $100,000.00 | 5 | $ 195,291.00 |
| e. $100,000.01 - $500,000.00 | 3 | $ 516,063.08 |
| f. Over $500,000.00 | 1 | $ 681,518.07 |
| **Sub-Total** | **114** | **$ 2,213,019.43** |
| **2. Real or Personal Property** | | |
| a. $0.01 - $5,000.00 | 182 | $ 607,113.77 |
| b. $5,000.01 - $10,000.00 | 48 | $ 343,141.81 |
| c. $10,000.01 - $25,000.00 | 50 | $ 907,913.96 |
| d. $25,000.01 - $100,000.00 | 16 | $ 711,963.38 |
| e. $100,000.01 - $500,000.00 | 3 | $ 452,871.98 |
| f. Over $500,000.00 | 0 | $ - |
| **Sub-Total** | **299** | **$ 3,023,004.90** |
| **3. Lost Earnings or Profits** | | |
| a. $0.01 - $5,000.00 | 182,551 | $ 750,677,301.18 |
| b. $5,000.01 - $10,000.00 | 58,622 | $ 437,914,740.49 |
| c. $10,000.01 - $25,000.00 | 87,743 | $ 1,720,235,442.10 |
| d. $25,000.01 - $100,000.00 | 23,522 | $ 1,071,276,789.31 |
| e. $100,000.01 - $500,000.00 | 3,445 | $ 614,060,427.01 |
| f. Over $500,000.00 | 177 | $ 276,304,883.20 |
| **Sub-Total** | **356,060** | **$ 4,870,469,583.29** |



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Claims by Category and Amount
*(Claimants may have more than one Claim Category)*

| Paid Claims by Category and Amount | No. of Claims | Amount Paid |
|---|---|---|
| **4. Loss of Subsistence Use of Natural Resources** | | |
| a. $0.01 - $5,000.00 | 14 | $ 32,383.89 |
| b. $5,000.01 - $10,000.00 | 0 | $ - |
| c. $10,000.01 - $25,000.00 | 0 | $ - |
| d. $25,000.01 - $100,000.00 | 0 | $ - |
| e. $100,000.01 - $500,000.00 | 0 | $ - |
| f. Over $500,000.00 | 0 | $ - |
| **Sub-Total** | **14** | **$ 32,383.89** |
| **5. Physical Injury / Death** | | |
| a. $0.01 - $5,000.00 | 81 | $ 140,008.34 |
| b. $5,000.01 - $10,000.00 | 2 | $ 14,842.86 |
| c. $10,000.01 - $25,000.00 | 5 | $ 70,510.36 |
| d. $25,000.01 - $100,000.00 | 1 | $ 45,756.00 |
| e. $100,000.01 - $500,000.00 | 1 | $ 180,503.94 |
| f. Over $500,000.00 | 15 | $ 63,649,177.00 |
| **Sub-Total** | **105** | **$ 64,100,798.50** |
| **6. Other Claims** | | |
| a. $0.01 - $5,000.00 | 0 | $ - |
| b. $5,000.01 - $10,000.00 | 0 | $ - |
| c. $10,000.01 - $25,000.00 | 0 | $ - |
| d. $25,000.01 - $100,000.00 | 0 | $ - |
| e. $100,000.01 - $500,000.00 | 0 | $ - |
| f. Over $500,000.00 | 0 | $ - |
| **Sub-Total** | **0** | **$ -** |
| **Total** | **356,592** | **$ 4,939,838,790.01** |



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Individual Lost Earnings or Profits Claims Paid by Industry
*(Claimants may have more than one Claim Category)*

| Paid Claims By Industry | No. of Claims | Amount Paid |
|---|---|---|
| Fishing | 11,246 | $ 134,513,831.17 |
| Food, Beverage and Lodging | 133,663 | $ 875,095,395.82 |
| Multiple Industry / Business Types | 15,327 | $ 153,078,937.48 |
| No Industry Designation | 126 | $ 1,053,342.31 |
| Rental Property(ies) | 4,020 | $ 32,217,746.83 |
| Retail, Sales and Service | 78,846 | $ 580,761,487.05 |
| Seafood Processing and Distribution | 8,755 | $ 77,971,300.20 |
| Tourism and Recreation | 6,477 | $ 41,000,550.12 |
| **Total** | **258,460** | **$ 1,895,692,590.98** |



**# of Individual Claims Paid by Industry**

- Retail, Sales and Service 30.51%
- Rental Property(ies) 1.56%
- No Industry Designation 0.05%
- Multiple Industry / Business Types 5.93%
- Seafood Processing and Distribution 3.39%
- Tourism and Recreation 2.51%
- Fishing 4.35%
- Food, Beverage and Lodging 51.72%

**Amount of Individual Claims Paid by Industry**

- Retail, Sales and Service 30.64%
- Rental Property(ies) 1.70%
- No Industry Designation 0.06%
- Multiple Industry / Business Types 8.08%
- Seafood Processing and Distribution 4.11%
- Tourism and Recreation 2.16%
- Fishing 7.10%
- Food, Beverage and Lodging 46.16%



# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Business Lost Earnings or Profits Claims Paid by Industry
*(Claimants may have more than one Claim Category)*

| Paid Claims By Industry | No. of Claims | Amount Paid |
|---|---|---|
| Fishing | 17,306 | $ 563,415,188.85 |
| Food, Beverage and Lodging | 9,226 | $ 455,475,988.32 |
| Multiple Industry / Business Types | 3,776 | $ 93,075,279.06 |
| No Industry Designation | 1,875 | $ 31,301,044.49 |
| Rental Property(ies) | 27,150 | $ 524,795,102.59 |
| Retail, Sales and Service | 34,982 | $ 1,052,877,191.98 |
| Seafood Processing and Distribution | 1,479 | $ 178,744,801.61 |
| Tourism and Recreation | 1,806 | $ 75,092,395.41 |
| **Total** | **97,600** | **$ 2,974,776,992.31** |





# Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of August 12, 2011)*

### Claims by State of Residence
*(Claimants may have more than one Claim Type)*

| Claim State of Residence | Submitted Claims | Paid Claims | Amount Paid |
|---|---|---|---|
| Louisiana | 348,235 | 114,840 | $ 1,469,250,213.87 |
| Florida | 313,118 | 139,193 | $ 1,817,276,878.79 |
| Alabama | 129,935 | 50,670 | $ 791,067,405.08 |
| Mississippi | 97,022 | 31,214 | $ 437,007,620.16 |
| Texas | 18,583 | 5,137 | $ 175,500,269.66 |
| Others | 37,149 | 15,538 | $ 249,736,402.45 |
| **Total** | **944,042** | **356,592** | **$ 4,939,838,790.01** |





### Claims by State of Loss
*(Claimants may have more than one Claim Type)*

| Claim State of Loss | Submitted Claims | Paid Claims | Amount Paid |
|---|---|---|---|
| Louisiana | 237,214 | 115,188 | $ 1,498,295,773.68 |
| Florida | 271,229 | 149,230 | $ 1,969,685,098.39 |
| Alabama | 101,234 | 53,373 | $ 830,701,173.62 |
| Mississippi | 65,946 | 29,961 | $ 380,436,721.66 |
| Texas | 10,443 | 3,453 | $ 122,146,100.72 |
| Other State / Pending Location Verification | | 5,387 | $ 138,573,921.94 |
| **Total** | | **356,592** | **$ 4,939,838,790.01** |





# Exhibit B

# GCCF Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

## Overall Program Statistics
*(Status Report as of July 26, 2011)*

| All Claimants | No. of Claimants |
|---|---|
| **Total All Claimants** *(This is a unique count that includes all Emergency Advance Payment Claimants)* | **523,954** |
| 1. Individual | 415,904 |
| 2. Business | 108,050 |
| *Claimants Represented by Counsel: 49,281* | |

| Claimant Review Status | No. of Claimants |
|---|---|
| **Interim and Final Claimants - Phase II** *(A Claimant can be in only one category below.)* | **316,496** |
| **Reviewed - Phase II Only** | **304,541** |
| 1. Final Payment Issued | 158,656 |
| a. Quick Payment | 119,903 |
| b. Full Review | 38,753 |
| 2. Final Release Accepted Pending Payment | 585 |
| 3. Final Offer Made | 17,894 |
| With Interim Payment (7,491 out of these 17,894 Final Offers) | |
| Final Offer Accepted (4,346 out of these 17,894 Final Offers) | |
| 4. Other Claim Determinations: | 127,406 |
| a. Determination Letters (No Loss) | 9,906 |
| b. Withdrawal Requested | 529 |
| c. Claimants Notified Additional Information Required | 23,101 |
| d. Claimant Denied | 93,870 |
| **Under Review** | **12,214** |
| 1. Phase II - Interim & Final | 11,955 |
| 2. Phase I - EAP Unresolved / Under Review (Claims Subject to Liens, Audit Holds, etc.) | 259 |
| **EAP Claimants Resolved** *(Many EAP Claimants have refiled a claim in Phase II - Interim and Final Stage)* | **447,622** |

| Paid Claimants | Paid Claimants | Total Amount Paid |
|---|---|---|
| **Total Unique Claimants** | **199,911** | $ **4,795,656,559.36** |
| 1. Quick Pay / Full Review / Interim Payment | 179,677 | $ 2,212,297,271.29 |
| *a. Individual* | *132,430* | $ *892,877,109.15* |
| *b. Business* | *47,247* | $ *1,319,420,162.14* |
| 2. Emergency Advanced Payment (EAP) | 169,179 | $ 2,583,359,288.07 |
| *a. Individual* | *121,923* | $ *1,026,976,445.80* |
| *b. Business* | *47,256* | $ *1,556,382,842.27* |
| **Separate Fund for Real Estate Brokers and Agents** | | $ 54,434,574.75 |
| | **Total Paid:** | $ **4,850,091,134.11** |

| Quick Final Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Quick Final Payments** | 122,678 | 120,992 | 119,903 | $ 1,186,065,000.00 |
| 1. Individual | 92,455 | 91,318 | 90,517 | $ 452,605,000.00 |
| 2. Business | 30,223 | 29,674 | 29,386 | $ 733,460,000.00 |

| Interim Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Interim Payments** | 89,405 | 83,786 | 21,009 | $ 256,809,849.16 |
| 1. Individual | 60,382 | 57,555 | 13,055 | $ 87,373,580.42 |
| 2. Business | 29,023 | 26,231 | 7,954 | $ 169,436,268.74 |

| Full Review Final Payments | Claimants with Filed Claims | Reviewed Claimants | Paid Claimants | Amount Paid |
|---|---|---|---|---|
| **Total Full Review Final Payments** | 123,015 | 117,982 | 38,765 | $ 769,422,422.13 |
| 1. Individual | 96,476 | 93,139 | 28,858 | $ 352,898,528.73 |
| 2. Business | 26,539 | 24,843 | 9,907 | $ 416,523,893.40 |

| Full Review Final Payment Offers *(Inclusive of Offers with Release Accepted and Final Payment Issued)* | Offers Made | Amount Offered | Offers Accepted | Amount Accepted |
|---|---|---|---|---|
| **Total Final Offers** | 64,295 | $ 1,270,614,794.12 | 42,239 | $ 808,923,108.47 |
| 1. Final Offers: Individual | 43,928 | $ 489,929,744.88 | 32,057 | $ 372,060,535.84 |
| 2. Final Offers: Business | 20,367 | $ 780,685,049.24 | 10,182 | $ 436,862,572.63 |

# Exhibit C



**United States Government Accountability Office**
**Washington, DC  20548**

April 18, 2011

Congressional Requesters

Subject: *Deepwater Horizon Oil Spill: Update on Federal Financial Risks and Claims Processing*

On April 20, 2010, an explosion occurred on BP America Production Company's (BP) leased mobile offshore drilling unit *Deepwater Horizon*. The total cost to clean up the massive and unprecedented oil spill in the Gulf of Mexico following the *Deepwater Horizon* explosion (including costs to help pay for the spill's adverse impact on businesses and individuals in the region) are yet unknown, but have been estimated in the tens of billions of dollars. The extent to which the federal government will ultimately be required to pay costs associated with the *Deepwater Horizon* oil spill remains unclear.

The complex legal framework in place for oil spill liability and response funding will play an integral role in determining who is responsible and will ultimately pay the costs associated with the *Deepwater Horizon* oil spill. In this regard, the Oil Pollution Act of 1990,[1] as amended (OPA), which Congress enacted after the *Exxon Valdez* spill in 1989, authorized use of the Oil Spill Liability Trust Fund (Fund) to pay for certain oil spill cleanup costs and damages using federal tax revenues for immediate response costs and when the responsible parties cannot be identified or do not pay. OPA also provided that the federal government may subsequently seek reimbursement for these costs from responsible parties.[2] The Fund, which is administered by Coast Guard's National Pollution Funds Center (NPFC), is subject to a $1-billion cap on the total amount of expenditures per incident.

NPFC designated two BP subsidiaries—BP Exploration and Production and its guarantor, BP Corporation North America, Inc.—and five other companies as responsible parties for *Deepwater Horizon* oil spill related claims. Shortly after the spill, at the direction of NPFC, BP began to receive and process all claims against responsible parties. In June 2010, at the urging of the White House and Department of Justice, BP established a new claims processing facility—the Gulf Coast Claims Facility (GCCF). GCCF began operations on August 23, 2010, and is responsible for handling claims from individuals and businesses for damages resulting from the *Deepwater Horizon* oil spill. For those claims submitted to the GCCF that are rejected or not paid within 90 days, claimants may file OPA-compensable claims with NPFC to request reimbursement from the Fund.

BP also established an irrevocable trust (Trust), to which BP is to provide a total of $20 billion by 2014, primarily for the purpose of paying GCCF and other claims related to the *Deepwater Horizon* oil spill.[3] The Trust is to pay some OPA-compensable claims and some other

---

[1]Pub. L. No. 101-380, 104 Stat. 489 (1990).
[2]The Fund also pays for the costs of certain federal agency operations.
[3]BP established the Trust under Delaware law, which generally provides that the principal of the trust can be used only for the purposes stated in the trust agreement and that the terms of the trust agreement cannot be modified and are legally enforceable by the trustees. BP pledged collateral to cover its funding commitment to the Trust.

claims for personal injuries that are not OPA-compensable, but for which BP would be liable under other federal or state laws, such as the Jones Act or state oil pollution acts.[4]

In November 2010,[5] we reported on our preliminary assessment of the potential financial risks to the federal government associated with the *Deepwater Horizon* oil spill cleanup costs. The attached briefing provides information updated since our preliminary assessment.   For this briefing our objectives are to provide updated information on (1) the financial risks to the federal government associated with the cap on expenditures from the Fund and (2) claims submitted to and reviewed NPFC and GCCF, and those paid by GCCF. We also provide an update of the status of agency actions to respond to the recommendations made in our November 2010 report. This is the second in a planned series of three reports on our work in this area.

Our third report, planned for the summer of 2011, is intended to be a capping report with an updated assessment of: (1) the financial risks to the federal government associated with the Fund; (2) NPFC Fund cost reimbursements and claims and related processes; and (3) the federal framework for monitoring and oversight of responsible parties' actions to pay costs associated with the *Deepwater Horizon* oil spill.

<u>Scope and Methodology</u>

To provide an update on the financial risks to the federal government and the Fund, we obtained and summarized available data from NPFC on obligated and actual costs incurred and reviewed publicly available financial information of responsible parties through March 2011. We also obtained updated data on reported costs incurred in relation to the cap on expenditures from the Fund.

In order to update information about claims submitted and reviewed by NPFC and GCCF, we used available NPFC and GCCF claims data through March 2011, to describe the number and types of claims filed by individuals and businesses against the Trust and the Fund, and the number and dollar amounts claimed, reviewed, and paid. We also obtained information on NPFC's claims contingency planning for handling potential surges in claims submitted related to the *Deepwater Horizon* oil spill. We also obtained information from NPFC officials about the status of the recommendations made in our November 2010 report.

We conducted our work from November 2010 to March 2011 in accordance with all sections of GAO's Quality Assurance Framework that are relevant to our objectives. The framework requires that we plan and perform the engagement to meet our stated objectives and that we discuss any limitations in our work. We believe that the information and data obtained, and the analysis conducted, provide a reasonable basis for our findings and conclusions.
We performed limited procedures to determine the Fund expenditures reported were reasonable for our reporting purposes.

<u>Results in Brief</u>

With reported Fund costs of about $629.5 million as of March 31, 2011, NPFC had obligated or incurred costs that could result in over 60 percent of the amount available under the Fund's statutory $1-billion-per-incident-expenditure-cap.[6] If, regardless of any reimbursements from responsible parties, total Fund expenditures exceed the $1-billion cap, agencies may be required to rely on

---

[4]The Jones Act 46 U.S.C. § 30104, establishes liability for injury or death of seamen incurred in the course of their employment.
[5]GAO, *Deepwater Horizon Oil Spill: Preliminary Assessment of Federal Financial Risks and Cost Reimbursement and Notification Policies and Procedures,* GAO-11-90R (Washington, D.C.: Nov. 12, 2010).
[6]The $1-billion cap is concurrent with a $500-million cap on expenditures for natural resource damages and related assessments.

reallocating their appropriated funding to cover costs they incur or obtain supplemental funding. In addition, agencies may be unable to cover some of their costs and NPFC would be unable to pay any additional claims to individuals and businesses related to the *Deepwater Horizon* oil spill. We are reiterating our prior matter that Congress should consider changing the calculation of expenditures made against the Fund's $1-billion- per-incident-expenditure-cap to take into account reimbursements from responsible parties. Ultimately, the federal government's financial risk will continue to be closely linked with actions taken by the responsible parties to pay such costs. To date, BP has continued to fund the Trust established in August 2010 to pay for *Deepwater Horizon* oil spill claims as agreed.

With respect to claims processing, NPFC has taken a number of steps to monitor the GCCF's claims processing in planning for contingencies to help ensure it can effectively process any future surges in the number of claims it receives as a result of rejected GCCF claims that NPFC may receive for adjudication related to the *Deepwater Horizon* oil spill. These actions helped NPFC to process a sharp increase in the number of claims that individuals and businesses submitted to NPFC in December 2010. NPFC officials told us they monitor ongoing GCCF activities in order to forecast and take actions to mitigate potential surges in the number of claims that may come to NPFC for adjudication. As of March 2011, GCCF had established four types of claims payments—Emergency Advanced Payments, Quick Payments (Final), Interim Payments, and Full Review Payments (Final). As of March 31, 2011, GCCF had paid approximately $3.7 billion on 281,308 claims and denied over 4,000 claims.

In response to our previous recommendations, NPFC reported that it plans to update its policies and procedures in August and October 2011 to address three of the four recommendations made in our November 2010 report. These recommendations were directed at helping NPFC establish and maintain effective cost reimbursement policies and procedures for the Fund and update NPFC's current policies to reflect current organization, structure and management's directives. For the other recommendation, NPFC contends that its current procedures, which allow for invoices sent to responsible parties to serve as notification for cost recovery, provide adequate documentation of responsible party designation.  However, NPFC intends to review, clarify, and update its designation procedures by October 31, 2011. We believe that clarification of this process is necessary. As stated in our November 2010 report, we found that NPFC's existing procedures for notifying responsible parties, including the use of an invoice as notification of "responsible party" designation, were not clear. For example, NPFC sent an invoice for reimbursement to one of the *Deepwater Horizon* oil spill responsible parties that it considered as formal notification of the entity's financial responsibilities. However, a representative of the entity later publicly stated it had not received notification of a "responsible party" designation.

<u>Agency Comments and Our Evaluation</u>

We provided a draft of our briefing to the Department of Homeland Security's (DHS) and the Department of Justice's (DOJ) management for comment. DHS commented that NPFC continues to disagree with what it understands to be GAO's concern that a notice of designation of a discharge source issued to some responsible parties, but not to all responsible parties that are eventually identified, risks confusion and breakdowns in the claims management and cost reimbursement process. However, it also commented that NPFC intends to review, clarify, and update its designation procedures on or by October 31, 2011. DOJ commented that GAO has not identified any statutory responsibility that NPFC failed to fulfill under OPA Title 1, nor identified any policy basis for our responsible party notification recommendation.

We did not assert that NPFC did not comply with law or policy. Nonetheless, as we previously reported, clarification of responsible party designation procedures is necessary to avoid possible confusion over responsibility and breakdowns in the claims management and cost reimbursement

process. Consequently, we are encouraged that NPFC intends to update its procedures to clarify responsible party designations.

- - -

We are sending copies of this correspondence to the appropriate congressional committees. We are also sending copies to the Secretary of Homeland Security, the Director of NPFC, the Attorney General of the United States, and to other interested parties. This correspondence will also be available at no charge on our Web site at http://www.gao.gov.

Should you or your staff have any questions concerning this correspondence, please contact Susan Ragland at (202) 512-8486 or raglands@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report. GAO staff who made key contributions to this report include Kim McGatlin, Assistant Director; F. Abe Dymond, Assistant General Counsel; Jehan Abdel-Gawad; Donald Holzinger; Mark Kaufman; Jason Kelly; Chari Nash-Cannaday; Donell Ries; and Doris Yanger.

Susan Ragland
Director
Financial Management and Assurance

Enclosure

*List of Requesters*

The Honorable John Conyers, Jr.
Ranking Member
Committee on the Judiciary
House of Representatives

The Honorable Bennie G. Thompson
Ranking Member
Committee on Homeland Security
House of Representatives

The Honorable Tom Carper
Chairman
Subcommittee on Federal Financial Management, Government Information, Federal Services, and
    International Security
Committee on Homeland Security and Governmental Affairs
United States Senate

The Honorable Sheldon Whitehouse
Chairman
Subcommittee on Oversight
Committee on Environment and Public Works
United States Senate

The Honorable Mary Landrieu
Chairwoman
Subcommittee on Disaster Recovery
Committee on Homeland Security
United States Senate

The Honorable Michael C. Burgess
The Honorable Nick J. Rahall, II
House of Representatives

GAO-11-397R *Deepwater Horizon* Oil Spill



# *Deepwater Horizon* Oil Spill: Update on Federal Financial Risks and Claims Processing

Briefing for Congressional Requesters



**Overview**

Introduction

Objectives, Scope, and Methodology

Background

Results in Brief

- Risk that Total Expenditures from the Fund Will Reach the Cap

- Claims-Processing Status Update

- Status of Prior Recommendations

Conclusions

Agency Comments and Our Evaluation



**Introduction**

On April 20, 2010, an explosion occurred on BP America Production Company's (BP) leased mobile offshore drilling unit, *Deepwater Horizon*. The total cost to clean up the massive and unprecedented oil spill in the Gulf of Mexico following the *Deepwater Horizon* explosion, as well as costs to help pay for the spill's adverse impact on businesses and individuals in the region, are not yet known, but have been estimated in the tens of billions of dollars. Further, the extent to which the federal government will ultimately be required to pay any of the costs associated with the *Deepwater Horizon* oil spill remains unclear.

In November 2010,[1] we reported on our preliminary assessment of the potential financial risks to the federal government associated with the *Deepwater Horizon* oil spill cleanup costs. The overall objectives for our work in this area are to assess (1) financial risks to the federal Oil Spill Liability Trust Fund (Fund) and the federal government as a result of the *Deepwater Horizon* oil spill, (2) the Coast Guard's National Pollution Funds Center's (NPFC) cost reimbursement and claims policies and procedures for *Deepwater Horizon* oil spill costs, and (3) the framework for federal monitoring and oversight efforts over the responsible parties for the *Deepwater Horizon* oil spill, including federal efforts to oversee BP's and the Gulf Coast Claims Facility's (GCCF) *Deepwater Horizon* oil-spill claims payments.

---

[1]GAO, *Deepwater Horizon Oil Spill: Preliminary Assessment of Federal Financial Risks and Cost Reimbursement and Notification Policies and Procedures*, GAO-11-90R (Washington, D.C.: Nov. 12, 2010).



**Objectives**

This briefing provides information updated since our preliminary assessment in November 2010. For this briefing, our objectives are to provide updated information related to the *Deepwater Horizon* oil spill on:

(1) the financial risks to the federal government associated with the cap on expenditures from the Fund and

(2) claims submitted to and reviewed by NPFC and GCCF, and those paid by GCCF.

We also provide an update of the status of agency actions to respond to the recommendations made in our November 2010 report.

This is the second in a planned series of three reports on our work in this area.

Our third report, planned for the summer of 2011, is intended to be a capping report addressing our overall objectives.



# Scope and Methodology

To provide an update on the financial risks to the federal government, we obtained and summarized available data from NPFC on obligated and actual costs incurred and reviewed publicly available financial information of responsible parties through March 2011. We also obtained updated data on reported costs incurred in relation to the cap on expenditures from the Fund.

In order to update information about claims submitted and reviewed by NPFC and GCCF, we used available NPFC and GCCF claims data through March 2011, to describe the number and types of claims filed by individuals and businesses against the Trust and the Fund, and the number and dollar amounts claimed, reviewed, and paid. We also obtained information on NPFC's claims contingency planning for handling potential surges in claims submitted related to the *Deepwater Horizon* oil spill.

We also obtained information from NPFC officials about the status of the recommendations made in our November 2010 report.

We conducted our work from November 2010 to March 2011 in accordance with all sections of GAO's Quality Assurance Framework that are relevant to our objectives. The framework requires that we plan and perform the engagement to meet our stated objectives and that we discuss any limitations in our work. We believe that the information and data obtained, and the analysis conducted, provide a reasonable basis for our findings and conclusions.

We performed limited procedures to determine the Fund expenditures reported were reasonable for our reporting purposes.



**Background**

A complex landscape of laws and regulations governs the liability for oil spill costs of different parties. Injuries and damages that arise from an oil spill incident are governed by federal statutes and common law, federal securities laws, and various state laws. For example, the Oil Pollution Act of 1990 (OPA),[2] as amended, places the primary liability for the cost of the oil spills—up to certain limits—on the responsible party or parties for removal costs and damages specified in OPA (referred to as OPA-compensable damages). OPA authorizes the use of the Fund, which NPFC administers, for federal cleanup and natural resource restoration. NPFC monitors the sources and uses of the Fund, adjudicates claims submitted to the Fund for payment, and pursues reimbursements from responsible parties for costs and damages paid by the Fund and certain other recoverable costs.

Under OPA, the authorized limit on expenditures to be paid from the Fund is currently $1-billion in total expenditures per incident, with a concurrent limit of $500 million per incident for natural resource damage assessments and claims.

---

[2]Pub. L. No. 101-380, 104 Stat. 489 (1990).



# Background (cont.)

Following the *Deepwater Horizon* oil spill, the Coast Guard, without in any way relieving other responsible parties of liability, directed BP to establish a single claims facility for all responsible parties to centralize claims processing for claimants.[3] In June 2010, at the urging of the White House and the Department of Justice, BP established a new claims processing facility—GCCF—and announced creation of a $20 billion escrow account (Trust) to satisfy claims resolved by GCCF and certain other claims, including natural resource damages. BP has also pledged collateral to secure its obligation to contribute the full $20 billion to the Trust.

BP established GCCF to provide a mechanism for individuals and businesses to file claims for costs and damages incurred as a result of the *Deepwater Horizon* oil spill. Because NPFC bills the responsible parties directly for costs agencies have incurred in response to the *Deepwater Horizon* oil spill, BP pays these costs and they are not paid from the Trust. Payments received by NPFC from BP are deposited into the Fund.

Individuals and businesses are required to first file with GCCF for *Deepwater Horizon*-related oil spill claims. For those claims submitted to GCCF that are rejected or not paid within 90 days, claimants may file OPA-compensable claims with NPFC to request reimbursement from the Fund.

---

[3] On May 11, 2010, NPFC notified BP and Transocean Holdings Incorporated that BP's advertising and claims processing were sufficient, and Transocean should not advertise and should coordinate claims processing with BP. According to NPFC officials, NPFC wanted to avoid public confusion and have only one responsible party advertise for claims.



**Background (cont.)**

GCCF began operations and started accepting claim forms on August 23, 2010. GCCF, administered by Kenneth R. Feinberg, draws funds from the Trust to pay claims. The payments are intended to provide compensation for both OPA-compensable and certain non-OPA-compensable claims.

BP established an irrevocable Trust (for the announced escrow account) on August 6, 2010, designating three trustees[4] with fiduciary responsibility to collect promised contributions from BP and make disbursements to permitted categories of beneficiaries. BP committed to fund the Trust on a quarterly basis over 3-1/2 years for a total of $20 billion to be paid into the Trust as of 2014.[5] The Trust is to pay some OPA-compensable claims and some other claims for personal injuries that are not OPA-compensable, but for which BP would be liable under other federal or state laws, such as the Jones Act or state oil pollution acts.[6]

---

[4]The three trustees are Citigroup Trust-Delaware, N.A., which serves as the corporate trustee, and John S. Martin, Jr. and Kent D. Syverud, who serve as individual trustees.

[5]The funding schedule for the escrow account agreed to by the administration and BP was for contributions by BP of $5 billion a year for 4 years. BP later confirmed that the funding schedule would include an initial deposit of $3 billion, which was made on August 9, 2010, with an additional deposit of $2 billion made in the fourth quarter of 2010 and $1.25 billion a quarter thereafter until the entire $20 billion has been deposited.

[6]The Jones Act 46 U.S.C. § 30104, establishes liability for injury or death of seamen incurred in the course of their employment.



**Results in Brief**

With reported Fund costs of about $629.5 million as of March 31, 2011, NPFC has incurred costs that could result in payments of over 60 percent of the funds available under the Fund's statutory $1-billion-per-incident-expenditure-cap.[7] If total Fund expenditures for the *Deepwater Horizon* oil spill exceed $1 billion, agencies may be required to rely on reallocating their appropriated funding to cover costs they incur or obtain supplemental funding. In addition, agencies may be unable to cover some costs and NPFC would be unable to pay any additional claims related to the *Deepwater Horizon* oil spill. Ultimately, the federal government's financial risk will continue to be closely linked with actions taken by BP and the other responsible parties to pay claims and other costs. To date, BP has continued to meet its stated commitment to pay the costs associated with the *Deepwater Horizon* oil spill and has continued to fund the August 2010 agreement establishing a $20 billion Trust that GCCF can draw from to pay claims.

With respect to claims processing, NPFC actions are necessarily closely tied to those of GCCF. NPFC has taken a number of steps to monitor GCCF's claims processing in planning for contingencies to help ensure it can effectively process any future surges in the number of claims it receives as a result of rejected GCCF claims that NPFC may receive for adjudication related to the *Deepwater Horizon* oil spill. These actions helped NPFC to process a sharp increase in the number of claims individuals and businesses submitted to NPFC in December 2010.

---

[7]The $1-billion cap is concurrent with a $500-million cap on expenditures for natural resource damages and related assessments.



**Results in Brief (cont.)**

On our previous recommendations, NPFC reported that it plans to update its policies and procedures in August and October 2011 to address three of the four recommendations made in our November 2010 report. For the other recommendation, NPFC contends that its current procedures, which allow for invoices sent to responsible parties to serve as notification for cost recovery, provide adequate documentation and notification of responsible party designations. We disagree. As stated in our November 2010 report, we found that NPFC's existing procedures for notifying responsible parties using invoices did not clearly communicate their "responsible party" designation. For example, an official from a *Deepwater Horizon* oil spill responsible party who had received an invoice from NPFC, stated during a July 2010 hearing that his company had not received notification of designation. Also, NPFC sent the notice to Transocean Holdings Incorporated, but Transocean replied that the correct entity is Transocean Holdings, LLC.



**Risk That Total Expenditures from the Fund Will Reach the Cap**

Federal agencies continue to incur *Deepwater Horizon*-related removal and other costs. As NPFC continues to make expenditures from the Fund to reimburse federal agency costs and directly pay for other *Deepwater Horizon*-related costs, NPFC reported, as of March 31, 2011, it has incurred costs that could result in payments of over 60 percent of the funds available under the $1-billion-per-incident-expenditure-cap from the Fund. Once the expenditures reach the cap, NPFC will be precluded from making any additional cost reimbursements to agencies or paying any additional claims related to the *Deepwater Horizon* oil spill.



**Risk That Total Expenditures from the Fund
Will Reach the Cap (cont.)**

According to internal Coast Guard reports, as of March 31, 2011, NPFC had obligated or incurred approximately $629.5 million against the Fund toward the $1-billion-per-incident-expenditure-cap.[8] This amount includes:

- $451.4 million obligated against the Fund to reimburse government agencies' Pollution Removal Funding Authorizations (Federal Authorizations) and Military Interdepartmental Purchase Requests (MIPR). Of the total obligated amount, as of March 31, 2011, NPFC had approved about $193.9 million for payment.[9]

- $130.2 million expended by the Coast Guard and charged directly to the Fund. These costs are referred to by the Coast Guard as direct costs and include contracts and travel directly related to the oil spill response.[10]

- $47.8 million obligated against the Fund for the initiation of natural resource damage assessments (NRDA) to the Department of the Interior (DOI).[11]

---

[8]An obligation is a commitment, such as a contract, that creates a legal liability for the payment of goods and services ordered or received. NPFC's procedures for monitoring the amount spent toward the cap use the actual expenditures and obligated amounts.

[9]Federal Authorizations authorize reimbursement of federal and nonfederal government agencies from the Fund for oil-spill-response and removal activities. NPFC uses MIPRs rather than Federal Authorizations for the Department of Defense and certain other agencies.

[10]According to the Coast Guard, direct costs are operating costs that it otherwise would not have incurred but for the oil spill.

[11]There is a statutory cap of $500 million in expenditures from the Fund per incident for natural resource damage assessments and claims. 26 U.S.C. § 9509(c)(2).



**Risk That Total Expenditures from the Fund
Will Reach the Cap (cont.)**

NPFC officials told us that they have not estimated a time frame for when they anticipate the cap will be reached. However, they stated that there is a significant risk the cap could be reached in fiscal year 2011 as agencies continue to conduct significant removal activities related to the *Deepwater Horizon* oil spill.

If expenditures from the Fund collectively exceed the $1-billion-per-incident-cap, agencies and claimants could no longer receive reimbursement from the Fund. In that event, federal agencies might have to turn to options such as requesting supplemental appropriations or reallocating funds from their annual appropriations or using other agency budgetary resources to cover costs that would otherwise be reimbursed by the Fund. Further, if agencies stopped funding *Deepwater Horizon* oil-spill-related activities, this could affect the federal government's ability to complete oil spill removal and other related efforts.



**Risk That Total Expenditures from the Fund
Will Reach the Cap (cont.)**

Ultimately, the federal government's financial exposure will continue to be closely linked with BP and the other responsible parties' actions concerning the *Deepwater Horizon* oil spill. BP has committed to paying costs for the *Deepwater Horizon* oil spill including reimbursing the Fund for its *Deepwater Horizon*-related expenditures, even to the extent such costs exceed the $20 billion it has agreed to set aside. However, circumstances may occur that adversely impact BP or other responsible parties' financial condition or ability (above BP's collateralized pledge) to pay such claims including reimbursing the Fund for *Deepwater Horizon* costs paid.

Through March 2011, BP has continued to fund the Trust established in August 2010 to pay for *Deepwater Horizon* oil spill claims as agreed. BP committed to fund a $20 billion irrevocable Trust on a quarterly basis over 3-1/2 years. As of March 31, 2011, BP has made the required payments that total $6.25 billion. In addition, as shown on table 1, GCCF has paid approximately $3.7 billion on over 280,000 claims from the Trust as of March 31, 2011.



**Claims-Processing Status Update**

**Table 1: Claims Paid by GCCF as of March 31, 2011 (unaudited)**

Dollars in millions

| Type | Number of claims paid | Amount |
|------|----------------------:|-------:|
| Emergency Advanced Payments | 169,005 | $2,580.2 |
| Interim Payments | 4,313 | 48.4 |
| Quick Pay (Final) [a] | 101,474 | 947.0 |
| Full Review (Final)[a] | 6,516 | 79.0 |
| **Total**[b] | **281,308** | **$3,654.6** |

Source: GAO analysis of GCCF data.

[a] As of March 31, 2011, 38 percent of the payments from GCCF were paid as either Quick Pay or Full Review, both of which require these claimants to sign a release waiving any rights they may have against responsible parties to file or participate in legal action, or to submit any claim to NPFC for payment.

[b] As described in our November 2010 report, claims approved by GCCF are paid from a Trust established and funded (up to $20 billion) by BP. Prior to the establishment of GCCF, BP had received and directly paid claims from individuals and businesses totaling $396.0 million.

 **G A O**
Accountability • Integrity • Reliability

# Claims-Processing Status Update (cont.)

As of March 2011, while GCCF has established four types of claim payments and paid over $3.6 billion.

- <u>Emergency Advanced Payments</u>. Payments that were available to individuals and businesses that experienced financial hardship resulting from damages incurred from the *Deepwater Horizon* oil spill and filed claims by November 23, 2010.[12]

- <u>Quick Pay (Final)</u>. Payments to a claimant who has been paid an Emergency Advance Payments by GCCF which require the claimant to sign a release[13] and within 14 days be paid $5,000 if an individual claimant or $25,000 if a business claimant without having to submit additional supporting documents or go through further claims review.

- <u>Interim Payments</u>. Payments for documented past damages caused by the *Deepwater Horizon* oil spill. The Interim Payments will not compensate for future losses or damages.

- <u>Full Review (Final)</u>. Payments for all past and future losses caused by the *Deepwater Horizon* oil spill. Claimants who accept a final payment are required to sign a release.[13]

---

[12]According to GCCF's Web site, claims under Emergency Advanced Payments could be submitted through November 23, 2010, and were adjudicated and paid through December 15, 2010. Since the deadline expired, this payment is no longer available.
[13]Both Quick Pay and Full Review Claims require claimants to sign a release waiving any rights they may have against responsible parties, to file or participate in legal action, or to submit any claim to NPFC for payment.



**Claims-Processing Status Update (cont.)**

With respect to claims processing, NPFC has taken a number of steps in planning for contingencies to help ensure it can effectively handle any surges in the number of claims it receives for adjudication as a result of rejection from GCCF related to the *Deepwater Horizon* oil spill. NPFC officials told us they monitor ongoing GCCF activities in order to forecast and take actions to mitigate potential surges in the number of claims that may come to NPFC for adjudication.

NPFC has established a contract through October 31, 2011, for additional claims reviewers.[14] The contract states that the contractor-provided services should allow NPFC management to make decisions based on the contractor's review. It also states that in all cases, NPFC is the final adjudicator on all claims.

In addition, NPFC officials told us that NPFC has plans to augment its claims division using Coast Guard reservists and could also reassign NPFC staff as needed to assist in the claims adjudication process.

---

[14]Although the contract is currently effective through October 31, 2011, NPFC officials said they could issue additional task orders, so that the contract could be used to provide NPFC with additional support operations through October 31, 2012.



**Claims-Processing Status Update (cont.)**

To date, NPFC's actions have enabled it to manage its claims processing workloads. For example, in December 2010, NPFC experienced a surge in claims after 90 days had elapsed from receipt of many initial claims by GCCF,[15] and the deadline for submitting certain claims to GCCF had passed.

NPFC claims data showed that the number of monthly claims submitted to NPFC for the *Deepwater Horizon* oil spill significantly increased during the period from November 2010 to January 2011. (See Figure 1.) According to an NPFC official, this increase may be attributed to:

- Passage of GCCF's November 23, 2010, deadline for submitting Emergency Payment Claim applications;

- Public announcements made by GCCF's Administrator that GCCF was trying to clear its Emergency Payment Claims backlog by December 15, 2010; and

- November 23, 2010, was 90 days from when GCCF started accepting claims and in accordance with NPFC policies, if after 90 days the claim is without resolution, claims can be submitted to NPFC.

---

[15]Under OPA and the implementing federal regulations and policies, if the designated responsible party denies a claim or does not settle it within 90 days, a claimant may commence action in court against the responsible party or present a claim to NPFC.



**Claims-Processing Status Update (cont.)**

**Figure 1: Total Number of *Deepwater Horizon* Oil Spill Claims Presented to NPFC (unaudited)**



Source: GAO analysis of NPFC data.

Note: NPFC first began receiving *Deepwater Horizon* oil spill-related claims in September 2010. The claims presented to NPFC through March 31, 2011, totaled $186 million.



# Claims-Processing Status Update (cont.)

The potential for another increase in the number of claims presented for payment to NPFC may occur again if a large number of claimants who are denied payments by GCCF choose to file their claims with NPFC at, or about, the same time. As of March 31, 2011, according to GCCF's Web site,[16] GCCF had, in addition to paying over 281,000 claims, denied over 4,000 claims from individuals and businesses, and issued determination letters that found over 3,000 claimants suffered no loss.

As of March 31, 2011, GCCF had more than 100,000 claims under review with additional claims being submitted daily. Among the claims under review, GCCF indicated that about 39,000 claims require additional information in order to be processed. Claimants who are denied payment by GCCF or whose claims are not settled within 90 days may pursue the following four options:

- Appeal GCCF's decision, if the claim is in excess of $250,000 under procedures established by GCCF Administrator;

- Commence litigation against the responsible parties in court;[17]

- File a claim with NPFC;[18] or

- Do nothing.

---

[16]*Claimant Review Status as of March 31, 2011*, http://www.gulfcoastclaimsfacility.com (accessed April 1,  2011).

[17]Numerous individuals, businesses, states, and the federal government have commenced various actions in a number of courts against several companies, including BP, seeking damages or declaratory or injunctive relief under several laws, including OPA. Many of these pending cases have been consolidated in multidistrict litigation in the U.S. District Court for the Eastern District of Louisiana. See http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

[18]If a claimant decides to commence litigation against the responsible parties, NPFC will not review the same claim until the litigation has concluded.

GAO-11-397R *Deepwater Horizon* Oil Spill



**Claims-Processing Status Update (cont.)**

NPFC's March 31, 2011, data showed that since the *Deepwater Horizon* oil spill occurred in April 2010 it had received over 629 claims, totaling $186 million from individuals and businesses for this spill. NPFC had issued determinations for more than 538 of these claims (for about $163 million), all of which were denials.

NPFC denied the claims for the following reasons:

- Failure to prove damages were the result of the spill (39 percent)
- Lack of documentation (34 percent)
- Failure to prove damages (10 percent)
- Paid or being paid by responsible party (9 percent)
- Withdrawn by Claimant (5 percent)
- Not compensable under OPA, and therefore, not payable from the Fund (2 percent)
- Fraud (1 percent)

It is unclear at this time, if any, and if so how many, of the over 100,000 claims pending with GCCF, as of March 31, 2011, will ultimately result in claimants filing a claim with NPFC.



**Claims-Processing Status Update (cont.)**

Since we last reported in November 2010, GCCF has updated its payment options and the deadlines associated with those options. GCCF's decisions and related actions affect the number of claims submitted to NPFC. When the deadlines were reached for the Emergency Advanced Payments claims to GCCF, a surge of claims were subsequently submitted to NPFC in December 2010.



**Status of Prior Recommendations**
Department of Homeland Security

NPFC has stated that actions are underway to address three of the four recommendations we made in our November 2010 report. Table 2 provides a status on the recommendations.

## Table 2: Status of Prior Recommendations

| Prior recommendation | Status |
|---|---|
| In order to help establish and maintain effective cost reimbursement policies and procedures for the Fund, we recommended that the Secretary of Homeland Security direct the Director of the Coast Guard's NPFC to update NPFC's policies and procedures to include: | |
| 1. Current Fund reimbursement-billing practices that reflect both a percentage of federal agencies' obligations as well as expenditures, and | NPFC officials acknowledged that the billing practices for *Deepwater Horizon* are not documented in the agency's policies and procedures. NPFC officials told us they plan to formally incorporate the practices into its policies and procedures by October 31, 2011. |
| 2. Specific procedural guidance on processing DOD requests for reimbursement using Military Interdepartmental Purchase Requests. | NPFC officials told us they plan to formally incorporate the procedures into NPFC's policies and procedures by October 31, 2011. |



# Status of Prior Recommendations (cont.)
## Department of Homeland Security

| Prior Recommendation | Status |
|---|---|
| In order to ensure that responsible parties are properly notified of their responsibilities for an oil spill, we recommend that the Secretary of Homeland Security direct the Director of NPFC to | |
| 3. Update NPFC's current policies to reflect current organization and structure and management's directives, and | NPFC officials stated that NPFC's current policies will be updated to reflect current organization and structure and management's directives by August 31, 2011. |
| 4. Update NPFC's current procedures to provide detailed guidance and procedures for identifying and documenting responsible party notification. | NPFC officials disagreed with our recommendations and stated its responsible party designations are unrelated to the imposition of liability under OPA and that they serve the purpose of getting a responsible party to advertise the *Deepwater Horizon* oil spill claims process. NPFC's procedures provide that responsible parties and their guarantors are to be notified of their oil spill-related responsibilities. In accordance with its current procedures, NPFC sent formal letters of designation to some, but not all, of the responsible parties it identified for the *Deepwater Horizon* oil spill. To other responsible parties, NPFC provided only invoices that reflected NPFC's assessment of liability for removal costs. NPFC's existing procedures for notifying responsible parties using invoices did not clearly communicate their "responsible party" designation. We continue to believe that NPFC's procedures for identifying and documenting responsible party notification needs to be updated to clearly indicate the required mechanism used to identify and notify responsible parties of their financial obligations related to oil spills, including *Deepwater Horizon.* |



**Conclusions**

In our November 2010 report we offered a matter for congressional consideration that the Congress may want to consider setting a Fund cap per incident based upon net expenditures (expenditures less reimbursements). Since that report, expenditures have continued to be paid from the Fund and continue to approach the legislated cap. Given the risk that total expenditures from the Fund may reach the currently legislated cap, we are reiterating our prior suggestion that the Congress should consider amending the Oil Pollution Act of 1990, as amended (OPA),[19] or enacting new legislation that changes the calculation of expenditures made against the Fund's $1-billion-per-incident-expenditure-cap to take into account reimbursements from responsible parties.

We continue to believe that NPFC's procedures for identifying and documenting responsible party notification needs to be updated to clearly indicate the required mechanism to be used to notify responsible parties. Related to the *Deepwater Horizon* oil spill, NPFC sent formal letters of designation to some, but not all, of the responsible parties it identified. It provided only invoices to some responsible parties that reflect NPFC's assessment of liability for removal costs. NPFC's existing procedures for notifying responsible parties using invoices did not clearly communicate their "responsible party" designation. Consequently, we reiterate our previous recommendation that NPFC update its procedures to clearly indicate the required mechanism to be used to notify responsible parties for the *Deepwater Horizon* oil spill and future spills, in order to avoid confusion on whether an entity has financial responsibility for payment of oil-spill-related costs.

---

[19]The Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, established the Fund and its original expenditure caps, and OPA modified the expenditure caps to their current level. *See* 26 U.S.C. § 9509(c)(2).



**Agency Comments and Our Evaluation**

We provided a draft of our briefing to the management of the Departments of Justice and Homeland Security for comment. We received comments from the Department of Homeland Security on this briefing which stated NPFC continues to disagree with what it understands to be GAO's concern that a notice of designation of a discharge source issued to some responsible parties, but not to all responsible parties that are eventually identified, risks confusion and breakdowns in the claims management and cost reimbursement process. However, it also commented NPFC intends to review, clarify, and update its designation procedures on or by October 31, 2011. The Department of Justice also provided comments. In regards to our recommendation that NPFC update its procedures to provide detailed guidance and procedures for identifying and documenting responsible party notification, DOJ stated that GAO has not identified any statutory responsibility that NPFC failed to fulfill under OPA Title 1, nor has GAO identified any policy basis for this recommendation.

We did not assert that NPFC did not comply with legal requirements or policy concerning responsible party designations. Nonetheless, as we previously reported, clarification of responsible party designation procedures is necessary to avoid possible confusion over responsibility and breakdowns in the claims management and cost reimbursement process. Consequently, we are encouraged that NPFC intends to update its procedures to clarify responsible party designations.

(197216)

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday afternoon, GAO posts on its Web site newly released reports, testimony, and correspondence. To have GAO e-mail you a list of newly posted products, go to www.gao.gov and select "E-mail Updates." |
| Order by Phone | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's Web site, http://www.gao.gov/ordering.htm. |
| | Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. |
| | Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact:<br><br>Web site: www.gao.gov/fraudnet/fraudnet.htm<br>E-mail: fraudnet@gao.gov<br>Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Ralph Dawn, Managing Director, dawnr@gao.gov, (202) 512-4400<br>U.S. Government Accountability Office, 441 G Street NW, Room 7125<br>Washington, DC 20548 |
| **Public Affairs** | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800<br>U.S. Government Accountability Office, 441 G Street NW, Room 7149<br>Washington, DC 20548 |

# Exhibit D



**Office of the Attorney General**

**Washington, D. C. 20530**

July 20, 2011

Mr. Kenneth Feinberg
The Gulf Coast Claims Facility
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, DC  20004-1008

Dear Mr. Feinberg:

As we discussed at our July 7th meeting regarding the status of your work, I recently traveled to Alabama and heard from individuals and business owners whose lives and livelihoods continue to be severely affected by the Deepwater Horizon oil spill, and who have turned to the Gulf Coast Claims Facility (GCCF) in order to avoid years-long litigation.  I note the GCCF's progress in the face of nearly one million claims filed and appreciate your efforts.  The GCCF's work continues to be critical, and we will continue to hold it to the highest standards of efficiency, consistency, and customer service.

At our meeting, we discussed concerns that I heard in the Gulf regarding the transparency of the process.  This letter will confirm your conversation with Associate Attorney General Tom Perrelli, in which you agreed, as we discussed at our meeting, to an independent audit of the GCCF.  We recognize, however, that the GCCF is continuing to get thousands of claims per week, and that resolving those claims quickly and fairly should be its highest priority. Consequently, we will work with you to identify an appropriate time to commence such an audit before the end of the year, in a manner that will not disrupt the timely processing of claims.

Sincerely

Eric H. Holder, Jr.
Attorney General

# Exhibit E

**ATTACHMENT E**



**FORM BUSINESS LETTER**

[Date]


[Claimant/Attorney Name]
[Claimant/Attorney Address 1]
[Address 2]
[City, State  Zip Code]

> **RE:    Determination Letter on Interim Payment/Final Payment Claim**
> **[Claimant Name]**
> **[Claimant ID:]**

Dear Claimant:

The Gulf Coast Claims Facility (the "GCCF") is the official way for Individuals and Businesses to file claims for costs and damages incurred as a result of the Deepwater Horizon Incident on April 20, 2010 (the "Oil Spill").  The GCCF and its Claims Administrator, Kenneth R. Feinberg, act for and on behalf of BP Exploration & Production, Inc. ("BP") in fulfilling BP's statutory obligations as a "responsible party" under the Oil Pollution Act of 1990 ("OPA").

*All Claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.*

This Determination Letter ("Letter") is an official notification from the GCCF.  The GCCF has reviewed the Interim Payment and/or Full Review Final Payment Claim Form that you submitted.  This Letter informs you of the outcome of that review and describes your options now.  If you disagree with the GCCF's decision on your Interim Payment or Final Payment claim, you have the right to submit the claim to the National Pollution Funds Center ("NPFC"), the Coast Guard office responsible for evaluating and approving OPA claims, or as an alternative you have the right to file a claim in court, including in the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL No. 2179).  The multidistrict litigation is a consolidated grouping of federal lawsuits arising out of the Oil Spill.  General information on the procedure for filing a claim with the NPFC may be obtained from the Director of the National Pollution Funds Center, NPFC MS 7100, U.S. Coast Guard, 4200 Wilson Blvd., Suite 1000, Arlington, VA 20598-7100, (800) 280-7118, or from the NPFC website at <u>www.uscg.mil/npfc/claims</u>.  Information regarding the multidistrict litigation may be obtained from the court's website at <u>www.laed.uscourts.gov</u>.

> **I.      The Determination of Your Claim and Calculation of Losses.**

22

You qualify for compensation from the GCCF.  **Attachment A** to this Letter explains the amount, if any, that the GCCF is paying to you now for an Interim Payment as well as an offer for a Final Payment (the "Final Payment Offer"), which is the additional amount you can be paid now if you decide to accept the Final Payment Offer and sign a Release and Covenant Not to Sue (the "Release").  The Release waives and releases any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Oil Spill, and prevents you from submitting any claim seeking payment from the NPFC or a court.  **Attachment B** to this Letter shows you the periods of your documented losses based upon the records you submitted and also shows you the periods where documents were missing (which means that the GCCF could not award you losses for those periods).

## II.      Your Interim Payment.

If **Attachment A** shows that you are entitled to an Interim Payment, the GCCF will follow your payment instructions:  (a) if you indicated in your Claim Form that you wished to be paid by wire transfer, the GCCF will wire your payment into your account as you directed; or (b) if you indicated in your Claim Form that you wished to be paid by check, the GCCF has mailed you a check with a hardcopy of this Letter.  This Interim Payment is for your past lost profits for the period after April 20, 2010, and up to the time of the last period for which you submitted records showing your revenues or lost profits, as shown in **Attachment B, Section A**.  The GCCF has made this Interim Payment to you without requiring you to release or give up any claims or to surrender any litigation rights. You may submit additional Interim Payment Claim Forms along with the Required Documentation to show those damages caused by the Oil Spill, once each calendar quarter, until August 22, 2013.  The GCCF will review your claim, issue you a new Determination Letter and send you payment of any additional past lost profits caused by the Oil Spill as shown in your documents.  Your new Determination Letter also will provide a new Final Payment Offer that you will have 90 days to accept.  That new Final Payment Offer could be higher, lower, or stay the same as the Final Payment Offer in this Letter, depending upon what your documents show and any new information available to the GCCF at the time about the impact of the Oil Spill on the Gulf region.

## III.      Your Final Payment.

If you want to be paid the amount shown in your Final Payment Offer in **Attachment A** and fully resolve your entire claim now, you can accept your Final Payment Offer.  Your Final Payment Offer includes payment for all future damages to you as a result of the Oil Spill, determined according to the Gulf Coast Claims Facility's Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology.  Your Final Payment Offer is valid for 90 days after the date of this Letter.  The last page of this Letter contains an Election Form with a box for you to use to accept the Final Payment Offer and a space for your signature.  To accept your Final Payment Offer, check the box on the Election Form indicating that you accept your Final Payment Offer, sign it and return it to the GCCF no later than 90 days after the date of this Letter.  We then will send you a Release for you to sign and return to be paid the Final Payment Amount.  The GCCF will mail or wire the Final Payment Amount to you as you indicated on your Claim Form within 14 days after receipt of a complete and properly signed Release.  You must submit your ***original*** signature on the Release to the GCCF.  The GCCF will not accept faxes, scanned images or photocopies of your signed Release.

You may appeal a Final Payment Offer if your total monetary award (including any Emergency, Interim or Final Payments made by BP or the GCCF) is in excess of $250,000.  The appeal will be reviewed by a panel of three neutrals who will make an independent determination of the claim's value.  BP will have the right to appeal to the panel of three neutrals if your total monetary award (including any Emergency, Interim or Final Payments made by BP or the GCCF) is $500,000 or more.  For further information on the appeal process, visit the GCCF website at www.gulfcoastclaimsfacility.com.

***All Claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.***

23

If you are represented by a lawyer, you should discuss your rights with your lawyer before signing and returning the Release.  If you would like to consult with an attorney but cannot afford one, free legal help is available for the GCCF Interim or Final Claims Process, through a network of nonprofit civil legal service organizations in Alabama, Florida, Louisiana, Mississippi and Texas.  Information about this free assistance is available on the GCCF website, www.gulfcoastclaimsfacility.com.

If you do not accept your Final Payment Offer, then you may choose to seek additional Interim Payments from the GCCF or request re-review of your Final Payment Offer, as described in this Letter.

IV.     **Request for Re-Review of Your Final Offer Amount.**

If **Attachment B, Section B** identifies any missing documentation needed to evaluate your claim fully, you may submit those documents and the GCCF will re-review your claim and issue you another Determination Letter with a new Final Payment Offer.  Depending on what your additional documents show, your new Final Payment Offer could be higher, lower or stay the same as the Final Payment Offer in this Letter.  If your documents show additional lost profits caused by the Oil Spill, the GCCF will include those lost profits in your new Final Payment Offer and will adjust the future damages portion of your Final Payment Offer accordingly. If you want to submit additional documents to the GCCF now for a re-review, send them to the GCCF within 30 days after the date of this Letter.  The GCCF will review them and send you a new Final Payment Offer within 30 days after it receives your records.

V.     **What to Do if You Have Questions About This Letter.**

If you have any questions about this Letter, you can either visit a GCCF Site Office where local personnel have been retained by the GCCF and are now in place at GCCF Site Offices throughout the Gulf region, or speak to the GCCF Claims Review Specialist identified below who can answer questions about your claim, this Determination Letter, and the calculations used to derive the Interim Payment and/or Final Payment amounts.  For TTY assistance call 1-866-682-1758.  For more efficient service, have this Letter and your GCCF Claimant Identification Number with you when you call or reference them in your email.  If you are represented by an attorney, the GCCF will communicate directly with your attorney.

Your GCCF Claims Review Specialist is:  XXXXXXXXX at 1-800-353-1262.


Sincerely,


Kenneth R. Feinberg
Claims Administrator
Gulf Coast Claims Facility

| ATTACHMENT A:  EVALUATION OF CLAIM | | |
|---|---|---|
| **A.  ANNUAL PRE-SPILL REVENUES** | | |
| **2008** | **2009** | **2010 Projected Revenues** |
| $ | $ | **$** |
| **Methodology used to calculate 2010 Projected Revenues** | | |

| | **B.  CALCULATION OF PAST LOST PROFITS** | |
|---|---|---|
| **1.** | **2010 Projected Revenues** (projected for the periods within May-Dec. 2010 based upon documented financial records, as shown in Attachment B Section A) | $ |
| **2.** | **Less:  2010 Actual Revenues** (for May-Dec. 2010 from submitted financial records as shown in Attachment B, Section A) | ($) |
| **3.** | **2010 Lost Revenues** (Row 1 minus Row 2) | $ |
| **4.** | **Loss of Income % (LOI %)** (the LOI percentage adjusts the calculated Lost Revenues to reflect saved or discontinued expenses) | % |
| **5.** | **Resulting 2010 Lost Profits** (Row 3 multiplied by Row 4 to determine the Lost Profits from the Lost Revenues) | **$** |

| | **C.  INTERIM PAYMENT** | |
|---|---|---|
| **1.** | **2010 Lost Profits** (from Row 5 in Section B above) | $ |
| **2.** | *Less Offsets:* | |
| | Payments by BP | ($) |
| | GCCF Emergency Payments | ($) |
| | GCCF Interim Payments | ($) |
| | Other Offsets | ($) |
| **3.** | **Calculated Interim Payment** | $ |
| **4.** | **Interim Payment Paid with this Letter**<br>(A $1,000 minimum payment applies to this Interim Payment only.) | **$** |

| **D.  FINAL PAYMENT OFFER** | |
|---|---|
| **Final Payment Offer:**  2010 Lost Profits of $[ ] multiplied by a Recovery Factor of [two/four] times losses = $ [ ], less the Offsets shown in Section C above and all Interim Payments.  If your calculated Final Payment Offer is below $25,000, your Final Payment Offer is the $25,000 Quick Payment Amount.<br><br>If you wish to accept this Final Payment Offer, check the box in Section C of the Election Form on the last page of this letter and sign and return the Election Form. | **$** |

## ATTACHMENT B: EXPLANATION OF DOCUMENTED LOST PROFITS

### A. DOCUMENTED LOST PROFITS PERIODS

You submitted documents showing your revenue and lost profits for the periods shown below. The GCCF based its calculation of your Interim Payment Amount, if any, and the Calculated Final Payment Offer upon this submitted documentation.

| | Measurement Period | Projected Monthly Revenues | Actual Post-Spill Revenues | Net Loss (Projected Monthly minus Actual Post-Spill Revenues) |
|---|---|---|---|---|
| 1. | May, 2010 | $ | $ | $ |
| 2. | June, 2010 | $ | $ | $ |
| 3. | July, 2010 | $ | $ | $ |
| 4. | August, 2010 | $ | $ | $ |
| 5. | September, 2010 | $ | $ | $ |
| 6. | October, 2010 | $ | $ | $ |
| 7. | November, 2010 | $ | $ | $ |
| 8. | December, 2010 | $ | $ | $ |
| | **TOTAL DOCUMENTED PAST LOST PROFITS SINCE THE OIL SPILL** | **$** | **$** | **$** |

### B. MISSING DOCUMENTS

You did not submit documents showing your revenue and lost profits for the Periods Missing Documents identified below. Nor did you provide any proof that that you did not receive any revenue during those periods. The GCCF can re-review your claim if you submit such documents. The GCCF Document Requirements that accompanied the Claim Form listed the required supporting documentation to show revenue for these periods. You may submit these records to document the Periods Missing Documents identified below:

**Business Claimants:**

(d) Federal income tax returns, including all W-2 forms, 1099 forms, and other attachments or schedules to each return, if you have filed a return for the period.

(e) Monthly and annual Profit and Loss statements.

(f) Monthly sales and use tax returns.

(g) For seafood harvesting businesses, a report, obtained from the applicable governmental agency, of the Claimant's landings since January 1, 2008.

For new or start-up businesses, all available financial statements and business plans.

| | Periods Missing Documents |
|---|---|
| 1. | |

| GCCF 1012 | **ELECTION FORM FOR DETERMINATION LETTER ON LOST PROFITS CLAIM**<br>Date of Notice:<br>Deadline to Submit Additional Documentation for Re-Review:<br>Date Final Payment Offer Expires: |
|---|---|

| A. CLAIMANT INFORMATION | | | | |
|---|---|---|---|---|

| **Claimant Name** | | **Claimant Number** | | |
|---|---|---|---|---|
| **Address** | Street | City | State | Zip |
| **Claimant Type**<br>(Individual or Business) | | **Business Type** | **Zip Code of Loss** | |

| B. ATTORNEY REPRESENTATION INFORMATION | |
|---|---|
| ☐ | The GCCF has no information that this Claimant is represented by an attorney. |
| ☐ | The GCCF has been informed that this Claimant is represented by the following attorney: |

| **Attorney Name** | | **Law Firm** | | |
|---|---|---|---|---|
| **Address** | Street | City | State | Zip |

| C. ELECTION TO ACCEPT FINAL PAYMENT OFFER | |
|---|---|
| ☐ | I elect to be paid the Final Payment Offer described in my Determination Letter.  The GCCF will send you a Release and Covenant Not to Sue that you must sign and return to be paid. |

| SIGNATURE | | | |
|---|---|---|---|
| **Signature of Business Owner or Authorized Business Representative** | | **Date:** | ___/___/___<br>(Month/Day/Year) |
| **Name of Person Signing**<br>(Print or Type) | | | |

You can send the GCCF documents for a re-review of your claim or complete and send this Election Form to elect to be paid this Final Payment Offer using any of the following ways:

| | | |
|---|---|---|
| 1. | **By Emailed PDF Attachment:**<br>(Emailed no later than midnight your time on your deadline to respond) | Email to NoticesandOffers@gccf-claims.com |
| 2. | **By Mail:**<br>(Postmarked no later than your deadline to respond) | Gulf Coast Claims Facility<br>Kenneth R. Feinberg, Administrator<br>P.O. Box 9658<br>Dublin, OH  43017-4958 |
| 3. | **By Overnight, Certified or Registered Mail:**<br>(Placed with the delivery service no later than your deadline to respond) | Gulf Coast Claims Facility<br>Kenneth R. Feinberg, Administrator<br>5151 Blazer Pkwy., Suite A<br>Dublin, OH  43017-4958 |
| 4. | **By Facsimile:**<br>(Sent no later than your deadline to respond) | 1-866-682-1772 |

| GCCF 1012 | **ELECTION FORM FOR DETERMINATION LETTER ON LOST PROFITS CLAIM**<br>Date of Notice:<br>Deadline to Submit Additional Documentation for Re-Review:<br>Date Final Payment Offer Expires: |
|---|---|
| **5.** **Visit a GCCF Site Office:** (No later than your deadline to respond) | You can bring the materials to a GCCF Site Office no later than your deadline.  Visit www.gulfcoastclaimsfacility.com to see a list of Site Offices, or call 1-800-916-4893 and ask for Site Office locations. |
| **6.** **Online Election of Final Payment Offer:** (Completed no later than midnight your time for your deadline to elect) | You can accept your Final Payment Offer electronically by visiting the GCCF website at www.gulfcoastclaimsfacility.com and accessing your claim status by clicking on the "Check Claim Status" tab.  This is only for accepting the Final Payment Offer and not for sending additional documents for re-review of your claim. |



**GCCF** Gulf Coast Claims Facility
www.GulfCoastClaimsFacility.com

**FORM INDIVIDUAL LETTER**

[Date]

[Claimant/Attorney Name]
[Claimant/Attorney Address 1]
[Address 2]
[City, State  Zip Code]

**RE:   Determination Letter on Interim Payment/Final Payment Claim
[Claimant Name]
[Claimant ID:]**

Dear Claimant:

The Gulf Coast Claims Facility (the "GCCF") is the official way for Individuals and Businesses to file claims for costs and damages incurred as a result of the Deepwater Horizon Incident on April 20, 2010 (the "Oil Spill").  The GCCF and its Claims Administrator, Kenneth R. Feinberg, act for and on behalf of BP Exploration & Production, Inc. ("BP") in fulfilling BP's statutory obligations as a "responsible party" under the Oil Pollution Act of 1990 ("OPA").

*All Claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.*

This Determination Letter ("Letter") is an official notification from the GCCF.  The GCCF has reviewed the Interim Payment and/or Full Review Final Payment Claim Form that you submitted.  This Letter informs you of the outcome of that review and describes your options now.  If you disagree with the GCCF's decision on your Interim Payment or Final Payment claim, you have the right to submit the claim to the National Pollution Funds Center ("NPFC"), the Coast Guard office responsible for evaluating and approving OPA claims, or as an alternative you have the right to file a claim in court, including in the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL No. 2179).  The multidistrict litigation is a consolidated grouping of federal lawsuits arising out of the Oil Spill.  General information on the procedure for filing a claim with the NPFC may be obtained from the Director of the National Pollution Funds Center, NPFC MS 7100, U.S. Coast Guard, 4200 Wilson Blvd., Suite 1000, Arlington, VA 20598-7100, (800) 280-7118, or from the NPFC website at www.uscg.mil/npfc/claims.  Information regarding the multidistrict litigation may be obtained from the court's website at www.laed.uscourts.gov.

**VI.    The Determination of Your Claim and Calculation of Losses.**

You qualify for compensation from the GCCF.  **Attachment A** to this Letter explains the amount, if any, that the GCCF is paying to you now for an Interim Payment as well as an offer for a Final Payment (the "Final Payment Offer"), which is the additional amount you can be paid now if you decide to accept the Final Payment Offer and sign a Release and Covenant Not to Sue (the "Release").  The Release waives and releases any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Oil Spill, and prevents you from submitting any claim seeking payment from the NPFC or a court.  **Attachment B** to this Letter shows you the periods of your documented losses based upon the records you submitted and also shows you the periods where documents were missing (which means that the GCCF could not award you losses for those periods).

### VII.    <u>Your Interim Payment.</u>

If **Attachment A** shows that you are entitled to an Interim Payment, the GCCF will follow your payment instructions:  (a) if you indicated in your Claim Form that you wished to be paid by wire transfer, the GCCF will wire your payment into your account as you directed; or (b) if you indicated in your Claim Form that you wished to be paid by check, the GCCF has mailed you a check with a hardcopy of this Letter.  This Interim Payment is for your past losses for the period after April 20, 2010, and up to the time of the last period for which you submitted records showing your income or losses, as shown in **Attachment B, Section A.**  <u>The GCCF has made this Interim Payment to you without requiring you to release or give up any claims or to surrender any litigation rights.</u>  You may submit additional Interim Payment Claim Forms along with the Required Documentation to show those damages caused by the Oil Spill, once each calendar quarter, until August 22, 2013.  The GCCF will review your claim, issue you a new Determination Letter and send you payment of any additional past losses caused by the Oil Spill as shown in your documents.  Your new Determination Letter also will provide a new Final Payment Offer that you will have 90 days to accept.  That new Final Payment Offer could be higher, lower, or stay the same as the Final Payment Offer in this Letter, depending upon what your documents show and any new information available to the GCCF at the time about the impact of the Oil Spill on the Gulf region.

### VIII.    <u>Your Final Payment.</u>

If you want to be paid the amount shown in your Final Payment Offer in **Attachment A** and fully resolve your entire claim now, you can accept your Final Payment Offer.  Your Final Payment Offer includes payment for all future damages to you as a result of the Oil Spill, determined according to the Gulf Coast Claims Facility's Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment Methodology.  Your Final Payment Offer is valid for 90 days after the date of this Letter.  The last page of this Letter contains an Election Form with a box for you to use to accept the Final Payment Offer and a space for your signature.  To accept your Final Payment Offer, check the box on the Election Form indicating that you accept your Final Payment Offer, sign it and return it to the GCCF no later than 90 days after the date of this Letter.  We then will send you a Release for you to sign and return to be paid the Final Payment Amount.  The GCCF will mail or wire the Final Payment Amount to you as you indicated on your Claim Form within 14 days after receipt of a complete and properly signed Release.  You must submit your ***original*** signature on the Release to the GCCF.  The GCCF will not accept faxes, scanned images or photocopies of your signed Release.

You may appeal a Final Payment Offer if your total monetary award (including any Emergency, Interim or Final Payments made by BP or the GCCF) is in excess of $250,000.  The appeal will be reviewed by a panel of three neutrals who will make an independent determination of the claim's value.  BP will have the right to appeal to the panel of three neutrals if your total monetary award (including any Emergency, Interim or Final Payments made by BP or the GCCF) is $500,000 or more.  For further information on the appeal process, visit the GCCF website at www.gulfcoastclaimsfacility.com.

***All Claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement or signing a release of legal rights.***

If you are represented by a lawyer, you should discuss your rights with your lawyer before signing and returning the Release. If you would like to consult with an attorney but cannot afford one, free legal help is available for the GCCF Interim or Final Claims Process, through a network of nonprofit civil legal service organizations in Alabama, Florida, Louisiana, Mississippi and Texas. Information about this free assistance is available on the GCCF website, www.gulfcoastclaimsfacility.com.

If you do not accept the Final Payment Offer, then you may choose to seek additional Interim Payments from the GCCF or request re-review of your Final Payment Offer, as described in this Letter.

**IX.**     **Request for Re-Review of Your Final Offer Amount.**

If **Attachment B, Section B** identifies any missing documentation needed to evaluate your claim fully, you may submit those documents and the GCCF will re-review your claim and issue you another Determination Letter with a new Final Payment Offer. Depending on what your additional documents show, your new Final Payment Offer could be higher, lower or stay the same as the Final Payment Offer in this Letter. If your documents show additional losses caused by the Oil Spill, the GCCF will include those losses in your new Final Payment Offer and will adjust the future damages portion of your Final Payment Offer accordingly. If you want to submit additional documents to the GCCF now for a re-review, send them to the GCCF within 30 days after the date of this Letter. The GCCF will review them and send you a new Final Payment Offer within 30 days after it receives your records.

**X.**     **What to Do if You Have Questions About This Letter.**

If you have any questions about this Letter, you can either visit a GCCF Site Office where local personnel have been retained by the GCCF and are now in place at GCCF Site Offices throughout the Gulf region, or speak to the GCCF Claims Review Specialist identified below who can answer questions about your claim, this Determination Letter, and the calculations used to derive the Interim Payment and/or Final Payment amounts. For TTY assistance call 1-866-682-1758. For more efficient service, have this Letter and your GCCF Claimant Identification Number with you when you call or reference them in your email. If you are represented by an attorney, the GCCF will communicate directly with your attorney.

Your GCCF Claims Review Specialist is: XXXXXXXXX at 1-800-353-1262.

Sincerely,

Kenneth R. Feinberg
Claims Administrator
Gulf Coast Claims Facility

| ATTACHMENT A:  EVALUATION OF CLAIM | | |
|---|---|---|
| **A.  ANNUAL PRE-SPILL EARNINGS** | | |
| **2008** | **2009** | **Higher of 2008/2009** |
| $ | $ | $ |

| **B.  CALCULATION OF PAST LOST EARNINGS** | | |
|---|---|---|
| **1.** | **2010 Projected Earnings** (projected for May-Dec. 2010 from the higher annual amount in Section A above) | $ |
| **2.** | **2010 Projected Earnings** (projected for the periods in May-Dec. 2010 based upon documented financial records, as shown in Attachment B Section A) | $ |
| **3.** | **Less:  2010 Actual Earnings** (for May-Dec. 2010 from submitted records as shown in Attachment B Section B) | ($) |
| **4.** | **2010 Lost Earnings** (Row 2 minus Row 3) | $ |

| **C.  INTERIM PAYMENT** | | |
|---|---|---|
| **1.** | **2010 Lost Earnings** (from Row 4 in Section B above) | $ |
| **2.** | *Less Offsets:* | |
| | Payments by BP | ($) |
| | GCCF Emergency Payments | ($) |
| | GCCF Interim Payments | ($) |
| | Other Offsets | ($) |
| **3.** | **Calculated Interim Payment** | $ |
| **4.** | **Interim Payment Paid with this Letter** (A $1,000 minimum payment applies to this Interim Payment only.) | $ |
| **5.** | **Accounting Preparation Expenses and/or Job Seeking Expenses Also Paid With This Letter** | $ |
| **6.** | **Total Payment Sent With This Letter** | $ |

| **D.  FINAL PAYMENT OFFER** | |
|---|---|
| **Final Payment Offer:**  2010 Lost Earnings of $[  ] multiplied by a Recovery Factor of [two/four] times losses = $ [  ], less the Offsets shown in Section C above and all Interim Payments.  If your calculated Final Payment Offer is below $5,000, your Final Payment Offer is the $5,000 Quick Payment Amount.<br><br>If you wish to accept this Final Payment Offer, check the box in Section C of the Election Form on the last page of this letter and sign and return the Election Form. | $ |

| **ATTACHMENT B:** EXPLANATION OF DOCUMENTED LOST EARNINGS AND INCOME |
|---|

| **A. PERIODS WITH SUBMITTED FINANCIAL RECORDS** |
|---|

You submitted documents showing your income and losses for the periods shown below.  The GCCF based its calculation of your Interim Payment Amount, if any, and the Calculated Final Payment Offer upon this submitted documentation for those periods.

|  | **2010 Month** | **Periods With Documents** | **Source of Earnings/Income** |
|---|---|---|---|
| **1.** | | | |
| **2.** | | | |

| **B. PERIODS FOR WHICH FINANCIAL RECORDS ARE MISSING** |
|---|

You did not submit documents showing your income and losses for the Periods Missing Documents identified below.  Nor did you provide any proof that that you did not receive any income during those periods.  The GCCF can re-review your claim if you want to seek payment for any losses during those periods and if you submit the documents.  The GCCF Document Requirements that accompanied the Claim Form listed the required supporting documentation to show income for these periods.  You may submit these records to document the Periods Missing Documents identified below:

**Individual Claimants:**

(c) Federal income tax returns, including all W-2 forms, 1099 forms, and other attachments or schedules to each return.

(d) State tax returns, including all W-2 forms, 1099 forms, and other attachments or schedules to each return.

(e) Paycheck stubs or other payroll records from all employment demonstrating earnings.

(f) A letter or other records from an employer that describes when you were working and your rate of pay and total earnings, or why you were not working.

|  | **Periods Missing Documents** |
|---|---|
| **1.** | |
| **2.** | |

| GCCF 1012 | ELECTION FORM FOR DETERMINATION LETTER ON LOST EARNINGS AND INCOME CLAIM<br>Date of Notice:  2/11/11<br>Deadline to Submit Additional Documentation for Re-Review:  3/12/11<br>Date Final Payment Offer Expires:  5/11/11 |
|---|---|

### D.  CLAIMANT INFORMATION

| Claimant Name | | Claimant Number | | |
|---|---|---|---|---|
| **Address** | Street | City | State | Zip |
| **Claimant Type**<br>(Individual or Business) | **Business Type** | | **Zip Code of Loss** | |

### E.  ATTORNEY REPRESENTATION INFORMATION

| ☐ | The GCCF has no information that this Claimant is represented by an attorney. |
|---|---|
| ☐ | The GCCF has been informed that this Claimant is represented by the following attorney: |

| Attorney Name | | Law Firm | |
|---|---|---|---|
| **Address** | Street | City | State | Zip |

### F.  ELECTION TO ACCEPT FINAL PAYMENT OFFER

| ☐ | I elect to be paid the Final Payment Offer described in my Determination Letter.  The GCCF will send you a Release and Covenant Not to Sue that you must sign and return to be paid. |
|---|---|

### SIGNATURE

| Claimant Signature | | Date | /      /<br>(Month/Day/Year) |
|---|---|---|---|
| **Name of Person Signing**<br>(Print or Type) | | | |

You can send the GCCF documents for a re-review of your claim or complete and send this Election Form to elect to be paid this Final Payment Offer using any of the following ways:

| 7. | **By Emailed PDF Attachment:**<br>(Emailed no later than midnight your time on your deadline to respond) | Email to NoticesandOffers@gccf-claims.com |
|---|---|---|
| 8. | **By Mail:**<br>(Postmarked no later than your deadline to respond) | Gulf Coast Claims Facility<br>Kenneth R. Feinberg, Administrator<br>P.O. Box 9658<br>Dublin, OH  43017-4958 |
| 9. | **By Overnight, Certified or Registered Mail:**<br>(Placed with the delivery service no later than your deadline to respond) | Gulf Coast Claims Facility<br>Kenneth R. Feinberg, Administrator<br>5151 Blazer Pkwy., Suite A<br>Dublin, OH  43017-4958 |
| 10. | **By Facsimile:**<br>(Sent no later than your deadline to respond) | 1-866-682-1772 |

| GCCF 1012 | **ELECTION FORM FOR DETERMINATION LETTER ON LOST EARNINGS AND INCOME CLAIM**<br>Date of Notice:  2/11/11<br>Deadline to Submit Additional Documentation for Re-Review:  3/12/11<br>Date Final Payment Offer Expires:  5/11/11 |
|---|---|
| **11.** | **Visit a GCCF Site Office:**<br>(No later than your deadline to respond) | You can bring the materials to a GCCF Site Office no later than your deadline.  Visit www.gulfcoastclaimsfacility.com to see a list of Site Offices, or call 1-800-916-4893 and ask for Site Office locations. |
| **12.** | **Online Election of Final Payment Offer:**<br>(Completed no later than midnight your time for your deadline to elect) | You can accept your Final Payment Offer electronically by visiting the GCCF website at www.gulfcoastclaimsfacility.com and accessing your claim status by clicking on the "Check Claim Status" tab.  This is only for accepting the Final Payment Offer and not for sending additional documents for re-review of your claim. |