**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | |
| | * | SECTION J |
| | * | |
| | * | |
| This document relates to: | * | Judge Barbier |
| | * | |
| *All cases* | * | Magistrate Judge Shushan |
| | * | |

**THE BP PARTIES' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION TO COMPEL AGAINST TRANSOCEAN**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production*
*Inc. and BP America Production Company*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

      A.    Transocean's Attempt To Obstruct The BP Parties' Discovery. .......................... 2

      B.    Transocean's Improper Claims Of Privilege Over Documents Related To Its Internal Investigation. ................................................................................... 3

      C.    Transocean's Failure To Properly Answer Requests for Admission Related To Its Responsibilities. ............................................................................................ 5

ARGUMENT ......................................................................................................................... 6

I.     TRANSOCEAN IS IMPROPERLY SHIELDING NON-PRIVILEGED DOCUMENTS RELATED TO ITS INVESTIGATION. ..................................................... 6

      A.    Transocean Has Waived The Work Product Privilege That Might Have Applied To Documents Related To Its Investigation. ........................................ 6

            1.    Transocean's Public Disclosure Of Its Report Waives The Work Product Privilege Over Related Documents. ................................. 7

            2.    Transocean Should Not Be Allowed To Selectively Disclose The Results Of Its Investigation. ......................................................... 9

      B.    Transocean Has Not Established Any Privilege For Entries Assigning Authorship to the "DWH Investigation Team" Or Listing No Author At All. ....................................................................................................................... 12

II.    THE BP PARTIES' REQUESTS FOR ADMISSION 45-67 AND 282 SHOULD BE DEEMED ADMITTED BY TRANSOCEAN. ........................................................... 15

CONCLUSION .................................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Alexander v. F.B.I.*,
   192 F.R.D. 42 (D.D.C. 2000)..................................................................13

*Ameripride Servs, Inc. v. Valley Indus. Servs., Inc.*,
   No. CIV 2:00-cv-0113-LKK-JFM, 2011 WL 1321873 (E.D. Cal. Apr. 1, 2011)....................15

*Argus and Assocs., Inc. v. Prof'l Benefits Servs., Inc.*,
   2008 WL 5447738 (E.D. Mich. Dec. 31, 2008) ........................................16

*Asea, Inc. v. Southern Pac. Transp. Co.*,
   669 F.2d 1242 (9th Cir. 1981) ................................................................15

*Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*,
   194 F.R.D. 76 (W.D.N.Y. 2000)..............................................................16

*Ecuadorian Plaintiffs v. Chevron Corp.*,
   619 F.3d 373 (5th Cir. 2010) ....................................................................7

*Fox v. Taylor Diving & Salvage Co.*,
   694 F.2d 1349 (5th Cir. 1983) ..................................................................7

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   184 F.R.D. 49 (S.D.N.Y. 1999) ................................................................8

*Hodges, Grant & Kaufmann v. United States Gov't, Dept. of the Treasury, I.R.S.*,
   768 F.2d 719 (5th Cir. 1985) ..................................................................12

*In re Kidder, Peabody Secs. Litig.*,
   168 F.R.D. 459 (S.D.N.Y. 1996) ..............................................................9

*In re Leslie Fay Cos. Sec. Litig.*,
   161 F.R.D. 274 (S.D.N.Y. 1995) ..............................................................8

*In Re Royal Ahold N.V. Secs. & ERISA Litig.*,
   230 F.R.D. 433 (D. Md. 2005)..................................................................8

*In re Vioxx Prods. Liab. Litig.*,
   No. MDL 1657, 2007 WL 854251 (E.D. La. Mar. 6, 2007)....................................11

*Lerman v. Turner*,
   No. 10 C 2169, 2011 WL 62124 (N.D. Ill. 2011)..................................................8, 9

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*NXIVM Corp. v. O'Hara,*
  241 F.R.D. 109 (N.D.N.Y. 2007)........................................................................................10

*Pacific Gas & Electric Co. v. United States,*
  69 Fed. Cl. 784 (Fed. Cl. 2006) ...................................................................................12, 13

*Ross v. Abercrombie & Fitch Co.,*
  Nos. 2:05-cv-0819, 2:05-cv-0848, 2:05-cv-0879, 2:05-cv-0893, 2:05-cv-0913, 2:05-cv-0959,
  2010 WL 419947 (S.D. Ohio Jan. 28, 2010) ...............................................................8

*S.A. Healy Co./Lodigiani USA, Ltd. v. United States,*
  37 Fed. Cl. 204 (1997) ....................................................................................................16

*Shields v. Sturm, Ruger & Co.,*
  864 F.2d 379 (5th Cir. 1989) ...........................................................................................7

*Sigmund v. Starwood Urban Retail VI, LLC,*
  236 F.R.D. 43 (D.D.C. 2006)..........................................................................................16

*Smithkline Beecham Corp. v. Apotex Corp.,*
  193 F.R.D. 530 (N.D. Ill. 2000).................................................................................12, 13

*SmithKline Beecham Corp. v. Apotex Corp.,*
  232 F.R.D. 467 (E.D. Pa. 2005).................................................................................12, 13

*Tribune v. Purcigliotti,*
  No. 93CIV7222LAPTHK 1997 WL 10924 (S.D.N.Y. Jan. 10, 1997)...........................9

*U.S. Airline Pilots Ass'n v. Pension Ben. Guar. Corp.,*
  274 F.R.D. 28 (D.D.C. 2011)..........................................................................................8

*United States v. Nobles,*
  422 U.S. 225 (1975)..........................................................................................................7

*Westmoreland v. CBS, Inc.,*
  97 F.R.D. 703 (S.D.N.Y. 1983) ......................................................................................10

*Wilderness Soc'y v. United States Dep't of Interior,*
  344 F. Supp. 2d 1 (D.D.C.2004) .....................................................................................13

## STATUTES

Fed. R. Civ. P. 26 .........................................................................................1, 11, 12, 15

Fed. R. Civ. P. 36 ................................................................................................passim

Fed. R. Evid. 502 ..............................................................................................................9

iii

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

## OTHER AUTHORITIES

8 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed. 2010) ........................................................................................................................7

## INTRODUCTION

With expert deadlines looming and trial only months away, Transocean continues to withhold key information necessary to fully investigate the causes of – and responsibility for – the *Deepwater Horizon* incident.  Transocean claims that hundreds of documents underlying its public investigation are privileged, even where it fails to identify any attorney involved.  It also has refused to properly answer requests for admission concerning Transocean's duties regarding the *Deepwater Horizon* and Macondo well.  For these reasons, BP America Production Company and BP Exploration & Production Inc. (collectively, the "BP Parties") move to compel Transocean to provide these documents and answers.

*First*, Transocean waived the work product privilege applying to its investigation documents when it published its investigation report to the general public and the parties in this litigation.  Because the purpose of the work product privilege is to protect information from litigation adversaries, courts have held that publicly disclosing the results of an investigation waives any work product protection over related documents.  Accordingly, this Court should require Transocean to produce the documents on its privilege log related to its investigation where the only asserted basis for privilege is work product.

Moreover, for several hundred documents on its privilege log Transocean attributes authorship solely to the "DWH Investigation Team" without a recipient and for hundreds more lists no author or recipient at all.  Failing to list individual authors and recipients in a privilege log violates this Court's orders as well as Federal Rule of Civil Procedure 26.  Transocean has not carried its burden of showing that these documents are privileged, and they should be produced as well.

*Second*, to understand Transocean's contentions, narrow the disputed issues at trial, and reduce the need for in-court evidence, the BP Parties served Transocean with requests for

admissions on various topics.  One category of requests sought to confirm Transocean's duties and responsibilities by asking Transocean to admit that, for example, it was "responsible for detecting and preventing blowouts," "required to use all reasonable means to control and prevent fire and blowouts," and was "responsible for taking all measures necessary or proper to protect the *Deepwater Horizon*'s personnel and facilities."  Transocean has refused to properly answer these requests, asserting that they ask for interpretation of the drilling contract between BP America Production Company and Transocean Holdings LLC relating to the *Deepwater Horizon* (the "Drilling Contract") and so are pure questions of law.  This argument fails because case law holds that requests for admission concerning the interpretation of a contract are permissible, and in fact Transocean's own requests in the insurance actions expressly ask the BP Parties for their interpretation of the Drilling Contract.

## BACKGROUND

### A.     The BP Parties' Discovery Of Transocean.

In accord with the Court's discovery deadlines, the BP Parties served a first set of document requests on Transocean on March 11, 2011 and a second set on April 29, 2011. Transocean claimed the arbitration provision in the Drilling Contract precluded discovery and objected to every single request, even though Transocean filed multiple complaints against the BP Parties.  On May 5, 2011, Transocean relied on the arbitration argument in filing a motion for a protective order against the BP Parties' written discovery.  Dkt. No. 2261.  This motion was fully briefed and pending until June 21, 2011, when this Court denied it.  Dkt. No. 2963.

Because of Transocean's tactics, the BP Parties were not able to effectively conduct written discovery against Transocean until June 21, 2011.  Since that time, the BP Parties have diligently pursued discovery.  Transocean served revised document request responses on July 1, 2011 and responses to the BP Parties' interrogatories and requests-for-admission on July 15,

2011.  At this late stage in the discovery schedule, Transocean also began producing the substantial majority of its documents.   Since June 11, 2011, Transocean has produced approximately 280,841 documents and 4,193,310 pages, approximately 80% of its total document production.   In multiple letters, the BP Parties have followed up on various deficiencies in Transocean's privilege log, discovery responses, and document production to resolve disagreements in good faith and avoid seeking relief from this Court.

### B.   Transocean's Improper Claims Of Privilege Over Documents Related To Its Internal Investigation.

On June 22, 2011, Transocean released to the general public[1] and produced to all parties in MDL No. 2179 its Transocean Investigation Report, "Macondo Well Incident" (the "Report"). (Ex. A, Excerpts from Transocean Investigation Report, "Macondo Well Incident")  The Report claims to be the culmination of Transocean's investigation into the causes of the Macondo blowout and contains several supposed "key findings."  (*Id.* at 10-11, 212-16)

At the time Transocean released its Report, Transocean's operative privilege log was its sixth supplemental privilege log.[2]   This log identified a total of 1,155 withheld documents. Several hundred of these documents appeared to be related to Transocean's internal investigation and were being withheld on the basis of work product protection only, with no indication that an attorney was involved in preparing the document.  *See id*.  Moreover, approximately 676 document entries listed only the "DWH Investigation Team" as the author.  *See id*.

---

[1]   The Report has been posted on the internet by Transocean and is available at http://deepwater.com/fw/main/Public-Report-1076.html

[2]   Although described as "supplemental," Transocean's sixth privilege log contained a list of all the documents over which it claimed privilege and superseded its previous logs.  Similarly, Transocean's seventh privilege log superseded its sixth one.

On July 6, 2011, the BP Parties wrote to Transocean explaining that the public release of the Report waived any work product privilege applying to documents related to the investigation. (Ex. G, 7/6/11 Letter from C. Heck to S. Roberts)  The letter also noted that listing an author as "DWH Investigation Team," rather than the actual individual authors of the document, is improper.  This initial letter concluded by requesting a meet-and-confer.  Transocean sent the BP Parties correspondence on these privilege log issues on July 15 and July 20, to which the BP Parties responded on July 15 and 21.  (Ex. H, 7/15/11 Letter from C. Williams to C. Heck; Ex. I, 7/15/11 Letter from C. Heck to C. Williams; Ex. J, 7/20/11 Letter from C. Williams to C. Heck; Ex. K, 7/21/11 Letter from C. Heck to C. Williams).  Transocean's July 20 letter advised BP that it would produce a yet-to-be-determined number of contested documents from its prior privilege logs, and revise its privilege log to reflect only "narrowly defined claims of work product where appropriate." (Ex. J)  But this letter did not indicate when Transocean would provide this revised privilege log, and so the BP Parties requested that the Court set an appropriate due date.  On July 22, 2011, this Court ordered Transocean to serve a revised privilege log, and to produce the documents removed from its sixth supplemental privilege log, by July 28, 2011.  Dkt. No. 3457.

Transocean served its seventh "supplemental" privilege log on July 28, 2011, which like previous logs superseded its predecessors.  (Ex. B, Transocean's Seventh Supplemental Privilege Log)  This log identified a total of 2,544 withheld or redacted documents.  Many of these entries contain the same defects as those in the sixth privilege log.  Approximately 349 of these documents, apparently generated during the course of Transocean's internal investigation, were still being withheld on the basis of work product protection only, with no indication that an attorney was involved in preparing the document. *See id.*  Approximately 636 documents listed only the "DWH Investigation Team" as the author, while another 206 list no author at all. *See*

*id.*  On August 8, 2011, the BP Parties sent a letter to Transocean explaining that these documents could not be properly withheld, and requesting that they be produced.  (Ex. L, 8/8/11 Letter from C. Heck to C. Williams)

  **C.**  **Transocean's Failure To Properly Answer Requests for Admission Related To Its Responsibilities.**

  The BP Parties served Transocean with requests for admission ("RFAs") on June 3, 2011. Transocean served its responses to the BP Parties' requests for admission on July 15, 2011.  (Ex. C, Excerpts from Transocean's Response to BP Parties' First Set of Requests for Admission) For its responses to each of requests Nos. 45 through 67 and 282, Transocean did not directly admit or deny the substance of the RFA, but rather referred to provisions of the Drilling Contract, admitting only that the Drilling Contract contained language similar to that contained in the requests.  For example, in response to RFA 47 -- seeking an admission that "in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were responsible for detecting and preventing blowouts," Transocean responded by "admit[ting] that Article 15.2 of the Drilling Contract states, in part: 'Contractor shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts ... '"   Transocean further qualified each response with the language: "Respondents further state that they express no position regarding the interpretation of" the cited contract provision, and that "such questions will be determined by [the] appropriate tribunal at an appropriate time."  Transocean failed to admit, deny, or state that it lacks knowledge to be able to admit or deny the substance of RFAs 45-67 and 282.

  In correspondence to Transocean on July 27, 2011, the BP Parties informed Transocean that these responses did not comply with Federal Rule of Civil Procedure 36 because they merely recited provisions of the Drilling Contract without actually admitting, denying, or stating that

Transocean lacks sufficient knowledge to admit or deny each such RFA.  (Ex. M, 7/27/11 Letter from C. Heck to C. Williams).   Transocean responded in correspondence on August 10, defending its refusal to admit or deny these RFA by asserting that "RFAs 45-67 and 282 improperly request the admission of a purely legal contention."  (Ex. N, 8/10/11 Letter from C. Williams to C. Heck)  The BP Parties responded to Transocean's correspondence on August 11. (Ex. O, 8/11/11 Letter from C. Heck to C. Williams)  In that correspondence, the BP Parties explained that these requests were entirely proper under FRCP 36 as RFAs concerning "the application of law to fact," and cited several decisions upholding the propriety of requests for admission concerning contract interpretation.  *Id.* at 2.  Nevertheless, Transocean continued to refuse to provide proper responses to those RFAs.  (Ex. P, 8/19/11 Letter from C. Williams to C. Heck)

<b>ARGUMENT</b>

**I.    TRANSOCEAN   IS   IMPROPERLY   SHIELDING   NON-PRIVILEGED DOCUMENTS RELATED TO ITS INVESTIGATION.**

Transocean's privilege log contains several hundred entries over which Transocean has waived privilege.  *First*, by publicly disclosing the Report on its investigation into the *Deepwater Horizon* incident, Transocean waived work product protection over the documents relating to that investigation.  *Second*, for hundreds of entries Transocean lists the only author as "DWH Investigation Team" or leaves the author blank and also does not list any recipients.  Such entries are improper as they do not allow the Court or other parties to evaluate whether a privilege applies, and thus Transocean has failed to establish that these documents are privileged.

**A.    Transocean Has Waived The Work Product Privilege That Might Have Applied To Documents Related To Its Investigation.**

The work product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent" and

6

provides a "privileged area within which he can analyze and prepare his client's case." *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989), *United States v. Nobles*, 422 U.S. 225, 238-239 (1975).  As with other qualified privileges, the protection afforded work product is not absolute and may be waived.  *Nobles*, 422 U.S. at 239 (by eliciting the testimony of witness investigator, counsel waived privilege with respect to matters covered by witness's testimony); *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1356 (5th Cir. 1983) (work product immunity is lost by voluntary disclosure of the information by counsel to the court).  Although disclosing otherwise-protected work product to a third party does not automatically constitute a waiver of that protection, disclosure which "substantially increase[s] the opportunities for potential adversaries to obtain the information" does.  8 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed. 2010); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (counsel's voluntary disclosure of work product to a testifying expert waived immunity of that material from discovery).

> ### 1.     Transocean's Public Disclosure Of Its Report Waives The Work Product Privilege Over Related Documents.

Transocean's selective public disclosure of its investigation's findings and conclusions, to both the general public and its adversaries in the MDL No. 2179 proceedings, has waived work product protection for the documents related to its investigation.  On June 22, 2011, Transocean released the Report as the culmination of its internal investigation into the causes of the Macondo well blowout.  (Ex. A)  The Report was not only disclosed to the general public, it was produced to all parties in MDL No. 2179 including the BP Parties, Halliburton, Anadarko and others who are adverse to Transocean in the pending litigation.  *Id.* (produced at TRN-INV-01747442 to TRN-INV-01748295).

Consistent with governing case law, the Federal Rules of Evidence, and the principles of the work product doctrine, courts have held that when a party discloses a report which presents the findings of an internal investigation, the underlying investigative materials lose work product protection.[3] *E.g.*, *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999) (rejecting claims of work product protection and compelling disclosure of "notes of witness interviews, valuations and analyses of securities owned by the Funds, and documents collected from third parties" relating to a voluntarily disclosed report of an investigation conducted to prepare for litigation); *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274 (S.D.N.Y. 1995) (rejecting work product protection for documents underlying and connected to report of investigation into accounting irregularities where that report was provided to various government agencies); *In Re Royal Ahold N.V. Secs. & ERISA Litig.*, 230 F.R.D. 433 (D. Md. 2005) (same); *Ross v. Abercrombie & Fitch Co.*, Nos. 2:05-cv-0819, 2:05-cv-0848, 2:05-cv-0879, 2:05-cv-0893, 2:05-cv-0913, 2:05-cv-0959, 2010 WL 419947 (S.D. Ohio Jan. 28, 2010) (requiring disclosure of internal report regarding potential derivative action as well as underlying documents); *see also U.S. Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 30-33 (D.D.C. 2011) (by conducting an investigation into the allegations made by plaintiff, issuing resulting report to plaintiff, and attaching it to a motion filed with the court, defendants waived work product protection of the report and underlying materials); *Lerman v. Turner,* No. 10 C 2169, 2011 WL 62124, at *3 (N.D. Ill. 2011) (in employment discrimination lawsuit, by releasing report of investigation that led to plaintiff's termination, defendant waived work product protection for the report's underlying investigation documents sought by plaintiff).  In

---

[3]    To be clear, the BP Parties do not claim that Transocean waived the attorney-client privilege by publicly disclosing the Report of its investigation.

accord with this authority, Transocean cannot use the work product doctrine to shield documents related to its public investigation.

### 2.   Transocean Should Not Be Allowed To Selectively Disclose The Results Of Its Investigation.

Transocean's actions exemplify the reasons for applying waiver to the materials underlying a publicly disclosed investigation report.  The waiver rule prevents a party from using work product protection to selectively disclose the favorable results of its investigation while withholding the full evidence from its adversaries.  *See* Fed. R. Evid. 502, Advisory Committee's note (subject matter waiver applies where fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary); *Lerman,* 2011 WL 62124, at *9 (same); *In re Kidder, Peabody Secs. Litig.,* 168 F.R.D. 459, 469 (S.D.N.Y. 1996) (doctrine aims to prevent prejudice and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information); *Tribune v. Purcigliotti,* No. 93CIV7222LAPTHK 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) (releasing only those portions of information that are favorable to litigant's position is an example of a selective and misleading presentation of evidence).

Such disfavored selective disclosure is apparent here, as the Report is almost wholly favorable to Transocean.   None of the Report's "key findings" places responsibility on Transocean for any of the claimed causes of the blowout.  (Ex. A at 212-16)

Instead, Transocean's Report attempts to blame BP and Halliburton for the incident.  For example, in the Report's executive summary, Transocean asserts that "BP failed to properly assess, manage, and communicate risk"; "BP also failed to assess the risk of the temporary abandonment procedure used at Macondo"; and "Halliburton and BP did not adequately test the

cement slurry and program … ."  (*Id.* at 10)  Indeed, even for the negative pressure tests conducted by Transocean's employees, who also were involved in interpreting the results, Transocean's Report purports to shift all blame to BP: "BP approved the negative pressure test results and decided to move forward with temporary abandonment."  (*Id.* at 11)  The rest of the Report, including its "key findings," expands on this theme of purporting to absolve Transocean from responsibility while pointing the finger at BP and Halliburton.

Moreover, the purported findings of Transocean's Report have been used against BP in this litigation.  The Report has been introduced in depositions as Exhibit 4248.  (Ex. A) Attorneys for the Plaintiffs' Steering Committee ("PSC") have extensively questioned witnesses from the Transocean investigation team to elicit testimony that Transocean's investigation places the blame on BP for the events leading to the incident.  (*E.g.*, Ex. D, B. Ambrose Dep. at 58:5-129:9; 753:19-760:24)  Indeed, PSC counsel relied on Transocean's Report to ask questions attempting to put the entire responsibility for the incident on BP.  (*Id.* at 759:19-760:3, 760:16-24)

Therefore, both case law and fundamental fairness dictate that the BP Parties have access to the documents underlying Transocean's Report to confront the serious – and untrue – allegations Transocean makes.  Transocean cannot use its investigation as both a sword and a shield to blame BP for the incident (both in public and in this litigation) while withholding the work product that went into the investigation.  *See NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 142 (N.D.N.Y. 2007) (party cannot selectively share work product and then expect the privilege to remain as a shield); *Westmoreland v. CBS, Inc.,* 97 F.R.D. 703, 706 (S.D.N.Y. 1983) (defendant cannot hold out the findings and conclusions of its report to the public as substantiating its accusations, but, when challenged, decline to reveal the report on the basis of

its internal, confidential nature).  Having chosen to publicly release the Report and allow its use in litigation against BP, Transocean should be required to disclose the work product underlying and related to the Report and its investigation.[4]

Specifically, the BP Parties request that the Court order Transocean to produce all documents on its privilege log (i) related to Transocean's internal investigation, (ii) where the only claim of privilege is work product, and (iii) whose description does not assert that they were prepared at the direction of counsel.  (This last condition is included because the BP Parties do not seek documents that fall within FRCP 26(b)(3)(B).)  The BP Parties have identified approximately 349 entries on Transocean's privilege log falling within these parameters, including 48, 66-66b, 67, 71-75, 77, 79, 79a, 81, 90, 92, 96-101a, 107-108a, 115, 116, 119-122, 131-135, 139-142, 147, 148, 150, 154, 161, 165, 173-175, 192, 201, 215, 221-24, 226, 231, 234, 241, 243, 244, 319, 320, 327-329, 331-416, 419, 423-426, 445, 493-511, 523-525, 532, 537, 551, 552, 554-557, 576-578, 585-587, 589-591, 594, 598-613, 622, 623, 758-776, 796-817, 1040-1042, 1044-1050, 1051, 1054, 1055, 1058-1062, 1069-1072, 1075, 1076, 1078, 1080, 1082, 1084-1092, 1096, 1099-1104, 1107-1112, 1114, 1126, 1128, 1136, 1137, 1139, 1140, 1143, 1144, 1146-1149, 1207, 1379, 1593, 1985, 1986, 1988-1990, 1992, 1994, 1995, 1997, 2172, 2183, 2231, 2233, 2236, 2237, 2300, 2490, 2491, 2578, 2585, 2586, 2625, 2732.

---

[4]   The facts of this case distinguish it from *In re Vioxx Prods. Liab. Litig.,* No. MDL 1657, 2007 WL 854251 (E.D. La. Mar. 6, 2007).  The report in *Vioxx* was ancillary to the main issues in the *Vioxx* litigation.  Specifically, the report dealt with whether Merck's senior management acted appropriately in developing and marketing Vioxx, while the litigation concerned whether Vioxx was a defective product.  *Id.* at *1.  By contrast, here Transocean's Report concerns the exact issues to be litigated, namely, the causes of and fault for the *Deepwater Horizon* incident.  Moreover, the *Vioxx* report was not used offensively.  *Id.* at *5.  In this litigation, however, the PSC already has used Transocean's investigation and Report offensively against BP.  Notably, the *Vioxx* court stated that it would reconsider its order if the report had been used offensively, as the Transocean Report has here.  *Id.* Finally, in *Vioxx*, Merck represented that it would not cite, rely upon, or use the report offensively in that litigation.  *Id.*  No such representation has been made by the parties opposing BP in this case.

**B.      Transocean Has Not Established Any Privilege For Entries Assigning Authorship to the "DWH Investigation Team" Or Listing No Author At All.**

FRCP 26 requires that all documents that a party withholds on the basis of privilege be described in such a manner that would enable other parties to assess the applicability of the privilege.  Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).  PTO No. 14 further identifies what information is to be included in the log, and specifically requires that all attorneys who are authors, signatories, or recipients of withheld documents be identified.  PTO No. 14 ¶ 3(e).  As the party claiming privilege, Transocean bears the burden of sufficiently describing the documents in a manner that enables the Court, the BP Parties, and other litigants to assess its claims of privilege.  *Hodges, Grant & Kaufmann v. United States Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985); Fed R. Civ. P. 26(b)(5)(A)(ii).

Hundreds of entries on Transocean's privilege log violate these plain rules.  Specifically, for approximately 636 entries, Transocean lists only the "DWH Investigation Team" as the author.  These entries do not identify any individual as the author, nor do they identify any recipients.  Moreover, for another approximately 206 entries, Transocean simply leaves the author and recipient blank.

Courts "scrutinize[] closely any privilege claim where a party is unable to identify the author or has provided only a general group-wide description for the recipients."  *Pacific Gas & Electric Co. v. United States*, 69 Fed. Cl. 784, 812 (Fed. Cl. 2006); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005); *see also Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 538-39 (N.D. Ill. 2000) ("General, group-wide descriptions such as 'management' do not allow for the court to assess whether the recipients require, or have the capacity to act upon, the information distributed.").  Such group descriptions prevent the parties from determining the privilege claim's validity and thus are insufficient to preserve a claim of

privilege.  As one court explained in requiring production of documents where only the company name (Pacific Gas & Electric Company) was listed as the author, "plaintiff's statement that '[w]here other documents are a collaborative effort among or within PG & E departments, the company itself may be noted as the author' [], belies the notion that the court or defendant can adequately 'assess the applicability of the privilege or protection.'"  *Pacific Gas*, 69 Fed. Cl. at 813.  Therefore, privilege entries without individualized authors are regularly deemed invalid, and the underlying documents ordered to be produced.  *E.g.*, *Pacific Gas*, 69 Fed. Cl. at 813; *SmithKline*, 232 F.R.D. at 476; *Smithkline*, 193 F.R.D. at 539; *Wilderness Soc'y v. United States Dep't of Interior*, 344 F. Supp. 2d 1, 17 (D.D.C.2004) (denying privilege where "defendants fail to identify the author ... and in some cases do not even identify the recipient"); *Alexander v. F.B.I.*, 192 F.R.D. 42, 45 (D.D.C. 2000) (finding privilege log insufficient where "for most of the relevant documents, the log fails to identify the date prepared, the author or the recipient").

Under this established case law, Transocean should be required to produce all documents for which the author is listed as "DWH Investigation Team" or left blank on the privilege log entry.  These entries cannot identify all attorneys who are authors or recipients of the documents as required by PTO No. 14, because they do not identify any individuals at all.  Likewise, by failing to provide individual authors, Transocean's privilege log prevents the BP Parties from assessing whether the claimed privileges apply.  The BP Parties cannot determine, for example, whether an attorney was involved with a document when the author is listed only as "DWH Investigation Team."

Therefore, the BP Parties request that the Court order Transocean to produce the several hundred documents on its privilege log where the author is listed only as "DWH Investigation Team," including 122, 154, 161, 165, 192, 201, 215, 221-224, 226, 231, 234, 241, 243, 244, 319,

320, 423, 425, 426, 445, 479, 480, 486, 487, 489, 492, 493, 495-511, 519, 523-527, 532, 537, 558-560, 562, 563, 565-568, 585-587, 589-591, 594, 615, 622, 623, 628, 629, 633-635, 637- 647, 653, 655-658, 660, 661, 663-678, 681, 682, 753-767, 769, 770, 772-776, 779-789, 796-817, 907-913, 933, 934, 938, 939, 943-945, 947, 949, 972-979, 981, 985-987, 989-1021, 1024-1026, 1028-1031, 1036-1039, 1041, 1042, 1091, 1092, 1192, 1205, 1211, 1229, 1231, 1274-1281, 1285, 1289, 1290, 1292, 1302, 1303, 1305, 1309, 1313-1315, 1319, 1325, 1326, 1330, 1347-1349, 1353, 1354, 1359, 1362, 1363, 1366, 1369, 1370, 1375-1378, 1380-1395, 1398, 1400-1409, 1418, 1433, 1435, 1463, 1464, 1470, 1473, 1474, 1494-1496, 1498, 1542, 1545, 1548, 1566-1578, 1581-1587, 1589-1591, 1593-1595, 1597, 1601, 1602, 1613-1618, 1623-1625, 1627, 1628, 1646, 1655-1657, 1659, 1661-1670, 1673, 1674, 1676-1679, 1682, 1683, 1690-1703, 1710, 1714-1717, 1719, 1720-1741, 1764, 1769, 1771, 1773-1775, 1777-1783, 1786-1793, 1795-1798, 1801, 1802, 1809-1817, 1820, 1821, 1825, 1826, 1828-1841, 1845, 1847, 1853, 1856, 1859, 1860, 1867, 1868, 1878-1883, 1886-1889, 1891, 1892, 1896, 1897, 1899-1926, 1928, 1929, 1931-1933, 1936, 1947-1949, 1952-1954, 1962, 1966-1973, 1975, 1976, 1980-1990, 1992-1997, 2000, 2001, 2005-2015, 2020, 2022-2024, 2025-2042, 2046, 2047, 2102-2115, 2352, 2400, 2401, 2888, 2973.  Similarly, documents for which Transocean has failed to identify any author should also be produced, including those listed in entries 2117, 2120, 2122, 2137, 2138, 2149, 2150, 2152, 2154, 2156, 2158, 2161-2163, 2166, 2168, 2169, 2171, 2175, 2177, 2179, 2181, 2189-2191, 2193, 2195, 2197, 2199, 2201-2230, 2244, 2246, 2249, 2251, 2255, 2257, 2262, 2265, 2269, 2271, 2275, 2277, 2278, 2283, 2286, 2288, 2290, 2292, 2297, 2299, 2315, 2318-2320, 2323, 2328, 2334, 2337, 2340, 2342, 2345, 2348, 2349, 2356, 2358, 2359, 2362, 2364, 2365, 2367, 2368, 2371, 2372, 2374, 2378, 2380, 2384, 2389, 2391, 2392, 2394, 2397, 2399, 2417, 2426, 2428, 2430, 2432, 2437, 2443, 2447, 2450, 2480, 2489, 2513, 2540, 2546, 2550,

2551, 2558, 2559, 2561, 2562, 2565, 2571, 2575, 2606, 2609, 2623, 2624, 2648, 2655, 2656, 2661, 2674, 2685-2720, 2731, 2739-2741, 2745, 2750, 2761, 2763, 2779, 2785, 2788, 2789, 2793, 2794, 2798, 2800, 2806, 2809, 2811, 2813, 2939, 2944, 2946, 2957, 2964, 2970.

## II.   THE BP PARTIES' REQUESTS FOR ADMISSION 45-67 AND 282 SHOULD BE DEEMED ADMITTED BY TRANSOCEAN.

Under Federal Rule of Civil Procedure 36, a party may serve requests to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to" "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a).  A responding party must either admit the matter or "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4); *see also Ameripride Servs, Inc. v. Valley Indus. Servs., Inc.*, No. CIV 2:00-cv-0113-LKK-JFM, 2011 WL 1321873 at *2 (E.D. Cal. Apr. 1, 2011) ("Generally, Rule 36(a) requires one of three answers: (1) an admission, (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny the matter." (citing *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242 (9th Cir. 1981))).

The requesting party "may move to determine the sufficiency of an answer or objection" and "[u]nless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6).  Moreover, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." *Id.*; *see also Asea*, 669 F.2d at 1245 (If "a response does not comply with the literal requirements of Rule 36(a), the district court may, in its discretion, deem the matter admitted").

Each of Transocean's responses to the BP Parties' RFAs 45-67 and 282 fails to state whether Transocean admits, denies, or lacks knowledge sufficient to admit or deny the subject of the request as required by FRCP 36(a).  Instead, Transocean evades these RFAs by "admitting" the contents of certain provisions of the Drilling Contract, and otherwise objects that they call for

improper conclusions of law as matters of contractual interpretation that are not permitted under FRCP 36.

Transocean's objections are not well taken as these RFAs seek the application of law to fact, rather than pure legal conclusions.  Numerous federal courts have held that RFAs concerning the interpretation of contractual provisions are precisely the sort of "application of law to fact" expressly permitted by FRCP 36.  *E.g.*, *Argus and Assocs., Inc. v. Prof'l Benefits Servs., Inc.*, 2008 WL 5447738, at *3 (E.D. Mich. Dec. 31, 2008) ("Other examples of proper requests for admission involving the application of law to fact are (1) a request for admission that relates to the interpretation of a contract at issue in the case, . . . and (3) a request to admit what a party's obligations were under a contract." (citations omitted)); *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006) ("A request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case and, therefore, would be permissible under the amended Rule 36"); *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) ("[W]here the question of the meaning of [a] document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement [of] fact, and is authorized by Rule 36 . . . . Nor are such requests objectionable because the request may call for an admission as to an interpretation of a contractual provision which could otherwise require a judicial determination." (citations omitted)); *S.A. Healy Co./Lodigiani USA, Ltd. v. United States*, 37 Fed. Cl. 204, 205 (1997) ("Admissions of the contents or interpretation of a contract at most involve the application of law to facts").

Moreover, Transocean's actions demonstrate that it believes requests for admission concerning contract interpretation are proper.  Transocean's RFAs in the insurance actions – specifically Transocean RFAs 3, 4, and 6 – expressly seek admissions about the interpretation of the Drilling Contract:

- 3.   Admit that the BP/Transocean Drilling Contract does not require Transocean to contractually indemnify BP for liability arising from environmental pollution originating underwater.

- 4.  Admit that the BP/Transocean Drilling Contract required BP to contractually indemnify Transocean for environmental pollution originating underwater.

- 6.  Admit that, pursuant to the terms of the BP/Transocean Drilling Contract, BP has agreed to indemnify Transocean for its gross negligence.

(Ex. E, Transocean's First Requests for Admission to BP Defendants Regarding Insurance Actions)  Transocean also has questioned BP's fact witnesses concerning the meaning of terms and provisions of the Drilling Contract and its amendments.  (Ex. F, D. Suttles Dep. at 797:10-805:22)

In light of this precedent and Transocean's own discovery, Transocean's contention that matters of contractual interpretation are improper topics of request for admission is meritless. Transocean's citations of the Drilling Contract do not suffice as a proper response to the RFAs. This Court should therefore deem RFAs 45-67 and 282 admitted, or in the alternative, direct Transocean pursuant to FRCP 36(a)(6) to amend its responses to either admit, deny, or specifically state why it cannot admit or deny each of these RFAs.

## CONCLUSION

Transocean should not be allowed to improperly hide information regarding its investigation and contentions.  Therefore, the BP Parties request that this Court order Transocean to (1) produce all documents on its privilege log related to its investigation and Report where the only privilege asserted is work product and Transocean has not claimed that attorneys were

involved; (2) produce all documents on its privilege log where Transocean has listed the author as the "DWH Investigation Team" or has not identified an author; (3) be deemed to have admitted the BP Parties' RFAs 45-67 and 282, or in the alternative provide proper responses to such RFAs.

Date:  August 22, 2011                                      Respectfully submitted,


                                                            /s/ Don K. Haycraft
                                                            Don K. Haycraft (Bar #14361)
                                                            R. Keith Jarrett (Bar #16984)
                                                            Liskow & Lewis
                                                            701 Poydras Street, Suite 5000
                                                            New Orleans, Louisiana 70139-5099
                                                            Telephone: (504) 581-7979
                                                            Facsimile: (504) 556-4108

                                                            and

                                                            Richard C. Godfrey, P.C.
                                                            J. Andrew Langan, P.C.
                                                            Kirkland & Ellis LLP
                                                            300 North LaSalle Street
                                                            Chicago, IL 60654
                                                            Telephone: (312) 862-2000
                                                            Facsimile: (312) 862-2200

                                                            Robert C. "Mike" Brock
                                                            Covington & Burling LLP
                                                            1201 Pennsylvania Avenue, NW
                                                            Washington, DC 20004-2401
                                                            Telephone: (202) 662-5985

                                                            *Attorneys for BP Exploration & Production
                                                            Inc. and BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of August, 2011.

/s/ Don K. Haycraft
Don K. Haycraft