

38728749

Jul 15 2011
6:23PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON"<br>In the GULF OF MEXICO on<br>April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION:  J |
| | * | JUDGE BARBIER |
| Applies to: *All Cases* | * | MAG. JUDGE SHUSHAN |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## RESPONSE ON BEHALF OF TRITON ASSET LEASING GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC., AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. TO BP PARTIES' FIRST SET OF REQUESTS FOR ADMISSION[1]

Pursuant to Federal Rules of Civil Procedure 26 and 34, TRITON ASSET LEASING GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC., AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. (collectively, "Respondents") object to the BP Parties' ("BP") First Requests for Admission ("BP's Requests for Admission") as follows:

---

[1] Although BP's Requests for Admission also name Transocean Ltd. and Transocean Inc., these parties object generally to BP's Requests for Admission, and to each individual Request for Admission, on the grounds that this Court lacks personal jurisdiction over Transocean Ltd. and Transocean Inc.  Transocean Ltd. and Transocean Inc. so object with full reservation of rights, and by appearing now do not waive personal jurisdiction.  On May 6, 2011, this Court entered a Special Appearance by Transocean Ltd. and Transocean Inc. and ordered a standstill of jurisdictional discovery, allowing counsel to accept service of process without waiver of jurisdiction (Docket Number 2274).  Transocean Ltd. and Transocean Inc. have not consented to personal jurisdiction, and therefore, pending resolution of the standstill, BP's Requests for Admission as to Transocean Ltd. and Transocean Inc. are not proper.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "operation of the *Deepwater Horizon*" is vague, ambiguous, and misleading. BP was operator of the Macondo well; Transocean was the drilling contractor. In addition, the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents further object to this Request for Admission to the extent it implies Transocean had assumed or was otherwise responsible for any of the duties or obligations of the Macondo well operator. BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that BP contracted Transocean to provide the *Deepwater Horizon* drilling rig and the personnel to operate it. As such, Transocean was involved in the day-to-day operations of the *Deepwater Horizon*.

**REQUEST FOR ADMISSION NO. 45:**

Admit that in performing drilling operations using the *Deepwater Horizon* pursuant to the Drilling Contract, the Transocean *Deepwater Horizon* Companies were independent contractors.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part: "In performing the work set forth in this CONTRACT, CONTRACTOR shall act at all times as an independent contractor." Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 18.1. Such questions will be determined by an appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 46:**

Admit that no BP entity had any direction or control of the Transocean *Deepwater Horizon* Companies or their employees or agents in the work performed under the Drilling Contract except in the results to be obtained.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous.

29

Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part:

> "COMPANY shall have no direction or control of CONTRACTOR or its employees and agents except in the results to be obtained. The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."

In addition, Section 18.2 of the Drilling Contract states, in part: "COMPANY shall be entitled to designate a representative(s), who shall at all times have complete access to the Drilling Unit … [and] shall be empowered to act for COMPANY in all manner related to CONTRACTOR'S daily performance of the work."   Respondents further state that they express no position regarding the interpretation of Drilling Contract Articles 18.1-18.2.   Such questions will be determined by an appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 47:

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were responsible for detecting and preventing blowouts.

## RESPONSE TO REQUEST FOR ADMISSION NO. 47:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission to the extent it implies that BP had no

responsibility for detecting or  preventing blowouts.  For example, at the Macondo well, BP, as operator, was responsible for the design and interpretation of the negative pressure test.  Also, a succession of interrelated well design, construction, and temporary abandonment decisions by BP compromised the integrity of the well, compounded the risk of its failure, and ultimately set off a chain of events that resulted in the *Deepwater Horizon* incident.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.  Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 48:**

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to exercise due diligence to prevent a well from blowing out.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Respondents also object to this Request for Admission on the grounds that the term "due diligence" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests define "due diligence."   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.6 of the Drilling Contract regarding the mud program states, in part:

> "CONTRACTOR shall use all reasonable care to make and maintain drilling mud having weight, viscosity. water loss, and other characteristics to satisfy the requirements as specified by COMPANY. CONTRACTOR shall exercise due diligence to prevent the well from blowing out, and to enable the efficient drilling, logging, and testing of all formations without caving or formation contamination. While drilling, CONTRACTOR shall test drilling mud for weight, viscosity, water loss, and other necessary characteristics as instructed by COMPANY …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.6.   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 49:

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to maintain well control equipment in accordance with good oilfield practices at all times.

## RESPONSE TO REQUEST FOR ADMISSION NO. 49:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Respondents also object to this Request for Admission on the grounds that the term "good oilfield practices" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good oilfield practices." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2. Such questions will be determined by appropriate tribunal at an appropriate time. Respondents further state that Respondents' BOP maintenance and inspection policies and procedures meet or exceed applicable governmental rules and recommendations and are intended to improve safety and functionality of the BOP. Specifically, Respondents comply with 30 C.F.R. § 250.446 and meet or exceed guidelines of API RP 53 in their maintenance and inspection policies and procedures. The Mineral Management Service ("MMS") has regularly inspected Respondents' BOP records regarding Respondents' maintenance and inspection procedures on all rigs in the Gulf of Mexico and never once implied or stated that Respondents' procedures were insufficient. The MMS also has never cited Respondents for any violation of 30 C.F.R. § 250.446.

**REQUEST FOR ADMISSION NO. 50:**

Admit that the Transocean *Deepwater Horizon* Companies were responsible for pressure testing the *Deepwater Horizon*'s blowout prevention devices as often as instructed by BP, usually once every seven days.

**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2. Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Transocean *Deepwater Horizon* Companies were responsible for function testing the *Deepwater Horizon*'s blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change.

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction

pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.  Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 52:

Admit that the Transocean *Deepwater Horizon* Companies were required to use, test, and maintain the *Deepwater Horizon*'s blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect.

## RESPONSE TO REQUEST FOR ADMISSION NO. 52:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 53:

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of BP.

## RESPONSE TO REQUEST FOR ADMISSION NO. 53:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "all reasonable means" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "all reasonable means"  Subject to and without waiving the foregoing specific

and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 54:

Admit that the Transocean *Deepwater Horizon* Companies had the primary responsibility for the safety of all of their operations.

## RESPONSE TO REQUEST FOR ADMISSION NO. 54:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1.   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 55:

Admit that the Transocean *Deepwater Horizon* Companies were responsible for taking all measures necessary or proper to protect the *Deepwater Horizon*'s personnel and facilities.

## RESPONSE TO REQUEST FOR ADMISSION NO. 55:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1. Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the Transocean *Deepwater Horizon* Companies were required to observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted under the Drilling Contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1. Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the Transocean *Deepwater Horizon* Companies were responsible for maintaining the *Deepwater Horizon* at optimal operating condition, in accordance with good oil practices throughout the duration of the Drilling Contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good oil practices" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good oil practices." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1 of the Drilling Contract states, in part: "CONTRACTOR shall maintain the Drilling Unit at optimal operating condition, in accordance with good oilfield practices throughout the duration of the CONTRACT." Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1. Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the Transocean *Deepwater Horizon* Companies represented that the *Deepwater Horizon* and related equipment shall be in a condition to permit its continuous and

efficient operation during the period of the Drilling Contract, subject to required periods of maintenance, repair, drydocking, and inspection by regulations bodies and classification societies.

## RESPONSE TO REQUEST FOR ADMISSION NO. 58:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the Transocean *Deepwater Horizon* Companies represented that they would diligently perform the work under the Drilling Contract in a good workmanlike manner consistent with applicable industry standards and practices.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good workmanlike manner" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "good workmanlike manner."   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield

practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 60:

Admit that the Transocean *Deepwater Horizon* Companies represented that they would use sound technical principles where applicable.

## RESPONSE TO REQUEST FOR ADMISSION NO. 60:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "sound technical principles" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "sound technical principles."  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

"CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the Transocean *Deepwater Horizon* Companies represented that they would perform the work under the Drilling Contract in compliance with the Drilling Contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 62:

Admit that the Transocean *Deepwater Horizon* Companies represented that they would furnish material and equipment in good condition to sufficiently meet the applicable Drilling Contract requirements and good oilfield practices.

## RESPONSE TO REQUEST FOR ADMISSION NO. 62:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds

that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good condition" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good condition." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1 Such questions will be determined by appropriate tribunal at an appropriate time.

## REQUEST FOR ADMISSION NO. 63:

Admit that the Transocean *Deepwater Horizon* Companies would bear any cost incurred in placing the *Deepwater Horizon* in a condition to function continuously and efficiently during the period of the Drilling Contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 64:**

Admit that the Transocean *Deepwater Horizon* Companies agreed to ensure that the *Deepwater Horizon* and all equipment and materials furnished by Transocean were adequately maintained and in such condition as to permit their continuous and efficient operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 65:**

Admit that the Transocean *Deepwater Horizon* Companies represented that all of Transocean's personnel on the *Deepwater Horizon* shall be fully qualified, trained, competent, able bodied and fit for their respective assignments and shall have complied with all necessary law and regulations in connection therewith.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 3.1.4 of the Drilling Contract states, in part:

> "CONTRACTOR represents that all of CONTRACTOR'S personnel shall be fully qualified, trained, competent, able bodied and fit for their respective assignments and shall have complied with all necessary laws and regulations in connection therewith. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 3.1.4.   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 66:**

Admit that the Transocean *Deepwater Horizon* Companies represented that during the period of the Drilling Contract, the *Deepwater Horizon* was outfitted, conformed, and equipped to meet all applicable laws, rules, requirements, and regulations promulgated by the U.S. Coast Guard, the U.S. Environmental Protection Agency, and the U.S. Department of the Interior, as well as any other agency, bureau, or department of the U.S. federal, territorial possession, state, municipal, or local governments, and any political subdivisions thereof, having jurisdiction over the operations in U.S. federal waters.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.5 of the Drilling Contract states:

> "Subject to Article 2.3.4, CONTRACTOR represents that during the Contract Period, the Drilling Unit is outfitted, conformed, and equipped to meet all applicable laws, rules, requirements, and regulations promulgated by the U.S. Coast Guard, the U.S. Environmental Protection Agency, the United States of America Department of the Interior as well as any other agency, bureau, or department of the U.S. federal, territorial possession, state, municipal, or local governments, any political subdivisions thereof, having jurisdiction over the operations in U. S. federal waters. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.5.   Such questions will be determined by appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 67:**

Admit that the actual performance and superintendence of all work under the Drilling Contract was by the Transocean *Deepwater Horizon* Companies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "actual performance" is vague and ambiguous.   Neither the Drilling Contract nor BP's Requests for Admission define "actual performance."   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part:   "The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."   Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 18.1.   Such questions will be determined by appropriate tribunal at an appropriate time.   In addition, Respondents deny any implication that

Respondents assumed or was otherwise responsible for any of the duties or obligations of the Macondo well operator.  BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities.

**REQUEST FOR ADMISSION NO. 68:**

Admit that a blowout is a hazard common to all drilling rigs involved in hydrocarbon exploration or development operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "common" is vague and ambiguous.  By way of example, it is unclear if "common" refers to frequency of occurrence or a commonality across all drilling rigs.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a blowout is a potential hazard in hydrocarbon exploration or development operations.

**REQUEST FOR ADMISSION NO. 69:**

Admit that although unexpected reservoir conditions could lead to a blowout, a blowout is more likely to arise from human error or equipment failure.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

**REQUEST FOR ADMISSION NO. 282:**

Admit that under the Drilling Contract, BP was not obligated to pay Transocean during a shut down of the *Deepwater Horizon* for inspection, repair, or replacement of any surface or subsurface equipment in excess of 24 hours per calendar month with a maximum accumulation of 12 days.

**RESPONSE TO REQUEST FOR ADMISSION NO. 282:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 2.2.5(a) of the Drilling Contract states, in part: "CONTRACTOR shall be allowed a maximum of twenty-four (24) hours per calendar month Mechanical Downtime with a maximum accumulation of twelve (12) days; thereafter the day rate reduces to zero (0)."  Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 2.2.5(a).  Such questions will be determined by an appropriate tribunal at an appropriate time.

**REQUEST FOR ADMISSION NO. 283:**

Admit that the *Deepwater Horizon* blowout preventer's design, manufacture, and installation were governed by 30 C.F.R. §§ 250.441–250.444.

**RESPONSE TO REQUEST FOR ADMISSION NO. 283:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter