

SUTHERLAND ASBILL & BRENNAN LLP
First City Tower
1001 Fannin, Suite 3700
Houston, TX 77002-6760
713.470.6100  Fax 713.654.1301
www.sutherland.com

**CARTER L. WILLIAMS**
DIRECT LINE: 713.470.6126
E-mail: carter.williams@sutherland.com

August 10, 2011

<u>VIA EMAIL & FIRST CLASS MAIL</u>

Mr. R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

> **Re:** **Objections and Responses to the BP Parties' Requests for Admission and Interrogatories in** *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, **MDL No. 2179**

Dear Chris:

This letter responds to the issues raised in your July 27, 2011 letter. Specifically, this letter addresses your questions regarding (A) Transocean's General Objections; (B) Transocean's Responses to the BP Parties' ("BP") Requests for Admission ("BP's RFAs"); (C) Transocean's Responses to BP's Interrogatories; and (D) Transocean's document production to date. We appreciate your efforts to identify and resolve issues cooperatively.

**A.    Transocean's General Objections.**

Transocean has stated a number of general and specific objections to BP's RFAs and Interrogatories. Many of these objections are substantially similar to BP's objections to other parties' RFAs and Interrogatories. As discussed in our July 27, 2010 letter, Transocean is not withholding any documents or information on the basis of its general objections or on the basis of specific objections that are the same as its general objections. Any limitation on the information produced in response to BP's written discovery, such as for discovery requests concerning prior well control events, has been explicitly stated in separate specific objections. Although Transocean is generally not withholding any non-privileged information or documents, Transocean does not waive objection and continues to maintain that BP's written discovery is not appropriate for the stated reasons.

**B.    Transocean's RFA Responses.**

Your letter addresses three general categories of Transocean's RFA responses: (1) responses to RFAs 126-127, 130-153, 162, 218, 221-222, 245, 262, 275-276, 278, 281, 289, 309, 311-312, and 321; (2) responses that reference documents or statements; and (3) responses containing an objection to a specific term as vague and ambiguous. This section addresses all

three categories.  First, we are reviewing RFAs 126-127, 130-153, 162, 218, 221-222, 245, 262, 275-276, 278, 281, 289, 309, 311-312, and 321 and will supplement Transocean's responses as needed and as is appropriate.

Second, RFAs 45-67 and 282 improperly request the admission of a purely legal contention.  Federal Rule of Civil Procedure 36(a)(1) allows a party to serve RFAs relating to facts, the application of law to fact, opinions about either, or the genuineness of documents.  It does not permit RFAs for any other purpose.  As such, RFAs are properly used for facts or facts as applied to law, but not pure legal conclusions.  *In re Katrina Canal Beaches*, No. 05-4182, 2007 WL 1852184 at *1 (E.D. La. June 27, 2007).  BP's RFAs 45-67 and 282 simply request that Transocean admit various recited portions of the Drilling Contract.  For example, RFA no. 46 states: "Admit that no BP entity had any direction or control of the Transocean *Deepwater Horizon* Companies or their employees or agents in the work performed under the Drilling Contract except in the results to be obtained."  It repackages the language of Drilling Contract section 18.1 without adding factual context.  As such, it improperly requests that Transocean interpret the Drilling Contract.  Interpretation of a contract is a question of law for the court.  *D.E.W., Inc. v. Local 93 Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992).  Transocean continues to maintain that matters of contract interpretation will be decided by the appropriate tribunal at an appropriate time.

RFAs 101-105 and 108 require clarification.  These RFAs ask that Transocean admit or deny various recited portions of the Well Control Handbook, which Transocean has done.  For example, RFA 101 states: "Admit that the first positive indicator that a well is flowing is an increase in the return flow rate while the pumps are running at constant output."  This RFA merely repackages the language of Well Control Handbook 5.2.2.  Transocean admitted this statement is an accurate reflection of its Well Control Handbook section on kick detection.  BP now states that the purpose of these RFAs is to ascertain Transocean's current contentions.  However, BP provides no guidance as to the substance of these contentions.  To the extent BP seeks to establish a rule applicable across all wells in all circumstances, Transocean believes RFAs 101-105 and 108 are inappropriate.  "Strictly speaking, Rule 36 is not a discovery device at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness."  *Id.* at *2 (citing Wright & Miller, Fed. Practice and Procedure § 2252 (2d ed. 1994)).  There are different types of wells installed using different equipment in various environments.  Also, a drilling rig itself is a dynamic, ever-changing environment.  BP does not describe the facts upon which to analyze the Well Control Handbook statements recited in RFAs 101-105 and 108.  To the extent BP seeks to determine how Transocean's Well Control Handbook is used in Transocean's operations, such a request would have been better suited for an interrogatory.  A party desiring to discover what the facts are should resort to other discovery rules.  *Id.*  We will review Transocean responses once BP clarifies what contentions it seeks with the above-identified RFAs.

Third, Transocean confirms it will supplement its responses to RFAs 275-276 and 280-281 as needed using the "maintenance personnel" definition provided in your July 27, 2011

letter.  Similarly, Transocean will supplement its responses to RFAs 67, 243, 286, 299-301, and 324 as needed using the "Transocean *Deepwater Horizon* Companies" definition provided in your July 27, 2011 letter.  We appreciate your efforts to clarify terms to which we had previously objected as vague and ambiguous.

**C.      Transocean's Interrogatory Responses.**

Your letter raises 11 general and specific issues with Transocean's Interrogatory responses.  These issues fall into three general categories: (1) responses to Interrogatories containing multiple subparts; (2) responses regarding Transocean's training programs; and (3) Interrogatories requesting information regarding non-Macondo wells.  We address each of these three general issues below.

First, Transocean notes that nearly all of BP's Interrogatories are compound and contain multiple subparts.  As such, they violate Pretrial Order 11's 50-interrogatory limit.  In addition, much of the information BP seeks may be found in Transocean's document production.  Due to the number and breadth of BP's interrogatories, it is unduly burdensome to require that Transocean articulate each and every detail sought when much of the information is contained within documents now in BP's possession.  BP has made similar objections in responding to other parties' written discovery.  Nonetheless, Transocean will review Interrogatories 4-5, 7, 13, 17, 19-22, 24, 26-28, 30, 33, and 36-37 and supplement its responses as needed.  To the extent Transocean references documents, Transocean will identify them by bates number.

Second, Transocean's Interrogatories 1-6, which ask Transocean to "describe in detail" its training programs, are compound, overly broad, and unduly burdensome.  Transocean has produced much of its training material and continues to produce documents on a rolling basis.  In the spirit of cooperation, Transocean will review its responses to Interrogatories 1-6 and supplement as needed.  To the extent Transocean references documents, it will identify them by bates number.

Third, Interrogatories 16-17 request information regarding "well[s] being drilled by a rig operated by Transocean anywhere in the world."  Interrogatory 20 is similarly broad. Transocean notes that BP has objected to written discovery served by other parties that requests information regarding BP's non-Macondo wells as "seek[ing] information beyond that directly related to the Macondo well."  Please explain BP's contradictory stance that it is entitled to receive non-Macondo information without having to provide similar non-Macondo information. With regard to the issue you raise with Transocean's response to Interrogatory 16, Transocean will supplement its response to address the alleged inconsistency.

**D.      Transocean's Document Production.**

Your letter identifies and asks six questions regarding Transocean's document production to date.  This section responds to each inquiry as numbered in your letter.  Please note that

Page 4 of 4
R. Chris Heck
August 10, 2011

Transocean incorporates the specific and General Objections as stated in its responses to each respective Request for Production.

      1.    *Drafts of Transocean's Investigation Report*.  Transocean will produce non-privileged drafts of its investigation report, but at this time, we are not aware of any non-privileged drafts.  Draft reports have been logged in accordance with Pretrial Order No. 14.  *See* Entry 2973 of Transocean's Seventh Supplemental Privilege Log.

      2.    *Captain Kuchta's license in effect on April 20, 2010*.  Captain Kuchta's original Merchant Mariner Credential was on the *Deepwater Horizon* on April 20, 2010, and is believed to have gone down with the rig.  Captain Kuchta had to request a replacement from the Coast Guard, which was issued on May 4, 2010.  A copy of that document has been produced.  The replacement license has the same expiration date, January 9, 2012, as the original.

      3.    *Trim and stability documents*.  Transocean will search for and produce non-privileged and responsive documents relating to the trim and stability of the *Deepwater Horizon*.

      4.    *Documents re EDS incident*.  As you indicated, Transocean has produced non-privileged and responsive documents relating to the incident described in your letter.  Transocean will produce any additional, non-privileged and responsive documents that are located.

      5.    *Final Response to RMI Letter of August 26, 2010*.  Transocean will produce the final version of its response to the August 26, 2010 letter from the Republic of the Marshall Islands.

      6.    *Deepwater Horizon group email addresses*.  Group email addresses are set up for the varying rig crew positions to use while on hitch and tour.  The specific position is reflected in the group email name.  For example, driller.dwh@deepwater.com would have been shared by the Drillers aboard the *Deepwater Horizon* at that time.  For a list of individuals aboard the *Deepwater Horizon* at any given time, and their respective positions, please see the personnel-on-board reports.  *See, e.g.,* TRN-MDL-00029793 – TRN-MDL-00030435.  These reports are sufficient to show the individuals who had access to the respective group email accounts.

      Please feel free to call me if you have any questions.

Sincerely,

Carter L. Williams

cc:    Rachel Clingman, Esq.
       Kerry Miller, Esq.