# BINGHAM

Tiffany R. Hedgpeth
Direct Phone:  213.680.6442
Direct Fax:    213.830.8642
tiffany.hedgpeth@bingham.com

August 22, 2011

**Via E-mail (Sally_Shushan@laed.uscourts.gov)**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

**Re:  In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of**
**Mexico, on April 20, 2010, MDL No. 2179**

Dear Judge Shushan:

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P")
(collectively "Anadarko"), submit this letter pursuant to Rules 36 and 37 of the Federal
Rules of Civil Procedure to request an order compelling the United States to provide
amended responses to certain Requests for Admission ("RFAs") served by Anadarko.
Anadarko's RFAs and the corresponding responses of the United States that are at issue are
included in the "United States of America's Responses to the Applicable Requests
Contained within the Various Defendants' Second Joint Discovery Requests to Plaintiffs,"
which was served on June 20, 2011 and is attached hereto as Exhibit A.   Specifically,
Anadarko takes issue with the United States' responses to RFA Nos. 60, 61, 63(b), 63(c),
63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(j), 63(k), and 69 for the reasons discussed below.

In accordance with Rule 37(a)(1), and in an attempt to resolve these issues without imposing
on the Court, the parties participated in a meet-and-confer conference by telephone on July
7, 2011; the parties also exchanged several follow up letters in an attempt to address
Anadarko's concerns.[1]  The meet and confer process resolved most of the issues between the
two parties.   However, the United States' responses to certain RFAs remain deficient.[2]
Accordingly, Anadarko respectfully requests that an order be issued compelling the United

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

---

[1]  *See* Exhibit B - Letter from Tiffany Hedgpeth to Sarah Himmelhoch, dated June 29, 2011; Exhibit
C - Letter from Sarah Himmelhoch to Tiffany Hedgpeth, dated July 5, Exhibit D - Letter from Tiffany
Hedgpeth to Sarah Himmelhoch, dated July 22, 2011; Exhibit E - Letter from Sarah Himmelhoch to
Tiffany Hedgpeth, dated July 29, 2011, Exhibit F - Letter from Tiffany Hedgpeth to Sarah
Himmelhoch, dated August 5, 2011; Exhibit G - Letter from Sarah Himmelhoch to Tiffany Hedgpeth,
dated August 10, 2011.

[2]  Anadarko informed Ms. Himmelhoch via e-mail on August 11, 2011 that it would be raising the
outstanding concerns discussed in this letter with the Court, and Ms. Himmelhoch acknowledged this
notification.

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T +1.213.680.6400
F +1.213.680.6499
bingham.com

A/74492888.1

Honorable Sally Shushan
August 22, 2011
Page 2

States to provide complete and appropriate responses to certain RFAs as discussed hereinafter.

As the Court emphasized in its order compelling the Plaintiffs' Steering Committee ("PSC") to respond to RFAs served by BP and APC, the purpose, *inter alia*, of an RFA is to narrow the issues in dispute. *See* Order Regarding BP's Motion to Compel Response to Requests for Admission by PSC, June 24, 2011 ("the undersigned finds that BP and Anadarko are entitled to know what the PSC currently contends as to the facts"). Anadarko respectfully submits that the United States has the same obligation to respond to the RFAs in a manner that allows Anadarko to know what the United States "currently contends as to the facts." Unfortunately, the United States' temporizing and ambiguous responses fail to meet that standard.

Anadarko takes issue with the United States' responses for three reasons. First, the United States has denied almost all of Anadarko's RFAs which ask the United States to admit that it has "no evidence" of certain alleged communications involving Anadarko. However, in the sentence immediately following the denial, the United States expressly admits that it "has no evidence" of such alleged communications. Thus, the United States appears to admit that there is no basis for each such denial that it has just set forth. *See* the United States' responses to RFA Nos. 63(b), 63(c), 63(d), 63(e), 63(g), 63(h), 63(i), 63(j), 63(k), and 69.

For example, RFA No. 63(k) requests that the United States "[a]dmit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well…(k) Bypassing the Sperry Sun meters on April 20, 2010 during displacement of the Macondo Well and riser to seawater and offloading of mud to the *Damon Bankston*." In response to RFA No. 63(k), the United States responded, subject to its objections:

> Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision to bypass the Sperry Sun meters on April 20, 2010. However, there were numerous informal communications between BP and Anadarko occurring in the days and weeks leading up to April 20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject. In addition, numerous Anadarko employees had access to Insite Anywhere for the Macondo Well, which reflected that the Sperry Sun meter was no longer registering a reading after 9:08pm on April 20, 2010.

Anadarko respectfully submits that where the United States expressly admits to the subject of the RFA, as they do in the above example, the inquiry ends there and a simple admission is the only appropriate response. The United States asserts that the "Denied, except as expressly admitted herein" responses are proper because the responses also contain a contention that "it is possible" informal communications took place and/or because the responses refer to documents or reports that were allegedly available to Anadarko. But whether Anadarko employees had *access* to Insite Anywhere and whether Insite Anywhere "reflected that the Sperry Sun meter was no longer registering a reading after 9:08pm on April 20, 2010" as the United States contends in its RFA response is irrelevant to the inquiry

Honorable Sally Shushan
August 22, 2011
Page 3

of whether an Anadarko employee *participated in communications leading to the decision* to bypass the Sperry Sun meters on April 20, 2010. It is improper for a party to admit they do not have the evidence specifically inquired about, but then attempt to cloud that admission – and escape the consequences of that admission at the summary judgment or trial stages – by denying the request based on speculation and unrelated information. Such an approach is unfair to Anadarko, inconsistent with the Federal Rules, and wasteful of the parties' and the Court's resources.

Second, as also reflected in the foregoing and other examples, rather than simply admit the above-mentioned RFAs, the United States, within its denials, often speculates that certain evidence *may exist* because "there were numerous informal communications" between Anadarko and BP and thus "it is possible" that "email messages" were exchanged concerning certain subjects, and/or "it is possible" that there were "informal communications" between "technical personnel" regarding the issues addressed in the RFAs. This unsubstantiated speculation appears in the United States' responses to RFA Nos. 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(j) and 63(k).

For example, RFA No. 63(g) requests that the United States "[a]dmit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well...(g) Displacing to seawater from 3300' below mud level to above (or across) the Blow Out Preventer before performing a negative pressure test." In response to RFA No. 63(g), the United States responded, subject to its objections:

> Denied, except to the extent expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor associated with the Macondo Well concerning the decision to displace 3300' feet of mud in the well with seawater. However, there were numerous informal communications between BP and Anadarko occurring in the days and weeks leading up to April 20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject.

If the United States had any evidence that any of these purported "numerous informal communications" included any Anadarko involvement in the decision to displace to seawater from 3300' below mud level to above (or across) the Blow Out Preventer before performing a negative pressure test, then it would be appropriate to include that information in response to RFA No. 63(g) and to deny the RFA. As it appears that the United States does not have any such evidence, it is inappropriate to include speculation that such information exists and to deny RFA No. 63(g) on the basis of that speculation. The United States should be compelled either to substantiate these statements by describing the participants in and substance of any communications with specificity (as Interrogatory No. 17 requests with respect to RFAs that are denied) or to forthrightly admit without caveat that the United States does not have any such evidence.

Honorable Sally Shushan
August 22, 2011
Page 4

Third, a number of the United States' denials purport to be based on information and documents that are not responsive to the underlying request. *See* the United States responses to RFA Nos. 63(d), 63(e), 63(h), 63(i), 63(j), 63(k), and 69. For example, RFA No. 63(h) requests that the United States "[a]dmit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well...(h) Deeming the negative pressure test a success on April 20, 2010." In its response to RFA No. 63(h), the United States responded, subject to its objections:

> Denied, except to the extent expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the negative pressure test. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko was provided with and downloaded a Daily Operations Report from April 18, 2010, which informed Anadarko, among other things, the "24 Hr Forecast" was to "P/U CMT HEAD, LAND OUT, CMT, SET & TEST SEAL ASSY. POOH, TEST CSG." In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

It is unclear, to say the least, how pre-April 20 activities and information, such as the April 18 Daily Operating Report, allegedly provide any evidence of Anadarko's participation in communications that ultimately determined the April 20 negative pressure test was a success. To the extent the United States is unable to connect the extraneous information and documents referred to in the RFA responses listed above to a valid basis for a denial of the actual request, it should be compelled to revise its responses to exclude such references and admit the RFAs.

Based on the foregoing, Anadarko respectfully requests that the Court issue an order compelling the United States to provide full and unqualified admissions to Anadarko's RFA Nos. 63(b), 63(c), 63(d), 63(e), 63(g), 63(h), 63(i), 63(j), 63(k) and 69 because the United States has already admitted it does not have any evidence on the issues inquired about. Alternatively, to the extent the Court determines that the United States can provide evidence to substantiate the vague and speculative statements concerning communications that may have happened and/or can explain why extraneous documents and information cited by the United States are relevant to the underlying inquiry, thus allowing the United States to appropriately deny any of RFA Nos. 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h),

Honorable Sally Shushan
August 22, 2011
Page 5

63(i), 63(j), 63(k) and 69, Anadarko requests that the Court compel the United States to amend its responses to provide this evidence.[3]

Thank you for your consideration of this submission.

Respectfully submitted,

Tiffany R. Hedgpeth

Enclosures

cc:  Sarah Himmelhoch, Esq.
     Ky Kirby, Esq.
     Warren Anthony Fitch, Esq.

---

[3] Although it appears that the United States has provided some evidence in support of its denial of RFA Nos. 60, 61, and 63(f), these responses still contain unsubstantiated statements such as "there were numerous informal communications…and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject." It is Anadarko's position that the United States should not be able to include and rely on such statements, unless they are substantiated.  Accordingly, Anadarko requests that the Court issue an order compelling the United States to substantiate such statements and provide the information and documents requested or remove them from its responses.

# EXHIBIT A

**RELEVANT EXCERPTS OF THE UNITED STATES' RESPONSES TO ANADARKO'S REQUESTS FOR ADMISSION**

38249297

Jun 20 2011
8:26PM

## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL
RIG "DEEPWATER HORIZON"
IN THE GULF OF MEXICO,
ON APRIL 20, 2010

MDL No. 2179

SECTION: J

JUDGE BARRIER

MAG. JUDGE SHUSHAN

**THIS DOCUMENT RELATES TO ALL CASES**

### UNITED STATES OF AMERICA'S RESPONSES TO THE APPLICABLE REQUESTS CONTAINED WITHIN THE VARIOUS DEFENDANTS' SECOND JOINT DISCOVERY REQUESTS TO PLAINTIFFS

The United States of America by its undersigned Counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby submits the following objections and initial responses to the Various Defendants' Second Joint Discovery Requests to Plaintiffs.[1]

### GENERAL OBJECTIONS

The United States asserts the following objections to the Various Defendants' Second Joint Discovery Requests to Plaintiffs. The United States has endeavored to identify the most relevant of these general objections in response to each individual request. Nonetheless, each of these general objections is incorporated by reference into each specific response set forth by the United States and none of these objections is either waived or limited by the specific responses.

1. The United States objects to the extent the requests call for information, seek discovery, or attempt to impose any obligations beyond those permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

---

[1] Counsel for Halliburton and BP have both informed undersigned counsel that their requests for admission were not directed to the United States.

1

2.      The United States objects to these requests as premature to the extent they seek information scheduled for disclosure at a later time (such as witness lists and expert reports).

3.      The United States objects to the extent these requests are premature because they seek immediate discovery of documents or information not relevant to the issues to be tried in the first phase trial, scheduled to commence in February 2012.

4.      The United States objects to the extent that these requests call for the production of electronically stored information in any manner other than that required under Federal Rule of Civil Procedure 34, the Rules and Orders of this Court (including specifically Pretrial Order 16), and ongoing negotiations and discussions among counsel.

5.      The United States objects to the extent these requests seek discovery from sources that are not reasonably accessible, including specifically the categories of information identified in Paragraph 14 of Pretrial Order 22 (regardless of whether or not the United States has preserved those categories of information pursuant to the other provisions of Pretrial Order 22).

6.      The United States objects to the extent these requests seek information or documents protected by the attorney-client privilege, the work-product doctrine, the deliberative process or executive privilege, the law enforcement privilege, the joint prosecution or common interest privilege, or any other applicable privilege, exemption, or immunity.

7.      The United States objects to these requests to the extent they seek documents or information protected from disclosure pursuant to the law enforcement privilege or Federal Rule of Criminal Procedure 6(e). The United States has specifically excluded from its searches for responsive information any information that constitutes the work product of any criminal investigations conducted with respect to the *Deepwater Horizon* incident. The United States has also excluded any ongoing investigations by any Inspectors General being conducted with

respect to the *Deepwater Horizon* incident. The United States will similarly exclude information related to these investigations from its privilege logs in accordance with Pretrial Order 14, Paragraph 2.

8.     The United States objects to the extent these requests seek information protected from disclosure by 46 U.S.C. § 6308.

9.     The United States objects to the extent these requests seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not reasonably calculated to lead to the discovery of admissible evidence by operation of Federal Rule of Evidence 408 and that discovery of such information would be unduly burdensome because it would deter the voluntary resolution of disputes in conflict with Federal Rule of Civil Procedure 1. The United States has circulated a proposed order protecting such communications from disclosure and has not searched for and will not produce settlement communications or documents discussing settlement or potential settlement of disputes.

10.     The United States objects to the extent these requests call for information or documents not within the United States' possession, custody, or control. All responses are made on behalf of the United States only and are limited to information or documents within the United States' possession, custody, or control.

11.     The United States objects to the extent these requests are unduly burdensome, oppressive, or overbroad because they are unlimited as to time period.

12.     The United States objects to the extent these requests are unduly burdensome, oppressive, or overbroad because they seek information not relevant to the claims or defenses in this action and not reasonably calculated to lead to the discovery of information admissible in this action.

13.     The United States objects to the extent these requests seek information where the probative value of such information is far outweighed by the expense and burden of searching for and producing such information.

18.     The United States objects to the extent these requests seek documents already in the possession of defendants or their counsel.

19.     The United States objects to the extent these requests seek documents that are publicly available or otherwise equally available to the defendants.

20.     The United States objects to the extent these requests are duplicative of prior requests made by any party in this MDL.

22.     The United States objects to the extent these requests prematurely seek to discover the basis for the United States' contentions on the grounds that discovery is still on-going and additional information will be adduced before trial.

## DEFINITIONS

1. "You," "your," and "yours" shall mean, for plaintiffs that are natural persons, the plaintiff and his or her representatives, agents, attorneys, heirs, and assigns, and for plaintiffs that are entities, the entity and its officers, directors, employees, attorneys, successors, and assigns.

**OBJECTION:** The United States incorporates by reference its General Objection 12 (Overbroad as to Subject Matter) and also objects that this instruction is vague as applied to the United States, which is an entity that does not have officers or directors. To the extent this definition is intended to extend the request to all agencies of the United States, the United States objects to the inclusion of all federal agencies, regardless of their level of involvement in the events giving rise to this action.

2. "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

4

3. "Communication," whether singular or plural, means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

4. "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including ESI, and includes the original and any identical or nonidentical copy, regardless of origin or location, of any writing or record of any type or description, including, but not limited to, all writings; records; contracts; agreements; communications (intra or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

**OBJECTION:** The United States hereby incorporates its General Objection 1 (Beyond Requirements of FRCP/Orders) and 5 (Not Reasonably Accessible) to the extent Anadarko Petroleum seeks to require production of information that is exempt from preservation pursuant to Pre-Trial Order 22 and to the extent it seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.

5. "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

**OBJECTION:** The United States incorporates by reference its General Objection 13 (Proportionality). The United States will identify documents and ESI by Bates number.

6. "Including" or "includes" means "including, but not limited to" or "including without limitation."

7. "Relating to" or "relating to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

**OBJECTION:** The United States hereby incorporates by reference its General Objections 1 (Beyond Requirements of FRCP/Orders), 12 (Overbroad as to Subject Matter), and 13 (Proportionality). The United States will produce documents that contain substantive information that is either relevant to a claim or defense in this action or reasonably calculated to lead to the discovery of admissible evidence relevant to a claim or defense. To the extent this definition seeks to impose an obligation to produce additional information, the United States objects.

8. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

9. "MC252 #1 Macondo Well" means the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "Macondo Well" means that MC 252 #1 Macondo Well.

11. *"Deepwater Horizon* Incident" and "Incident" means the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

12. "Oil Spill" means the oil released into the Gulf of Mexico as a result of the Incident.

13. "Oil Spill Response" means any effort to clean up the Oil Spill.

14.' "BP" means BP p.l.c. and any and all of its affiliates.

15. "Transocean" means Triton Asset Leasing GmbH and any and all of its affiliates.

16. "Cameron" means Cameron International Corporation and any and all of its affiliates.

6

17. "Anadarko" means Anadarko Petroleum Corporation and Anadarko E&P Company LP and any and all of its affiliates.

18. "Anadarko Non Operating Party Defendants" means, without limitation, Anadarko.

**OBJECTION:** The United States objects to this definition on the grounds that characterization is conclusory and confusing in light of the fact that the United States has alleged that the Anadarko Defendants are both "operators" of an offshore facility under the Clean Water Act.

19. "Halliburton" means Halliburton Energy Services, Inc. and any and all of its affiliates.

20. "BOP system" means, unless otherwise specified, the entire subsea blowout preventer system, including, but not limited to, the BOP stack, BOP control system, BOP operating panels, Lower Marine Riser Package ("LMRP"), all rams, all preventers, any and all connectors and connections to the BOP stack, including the choke and kill lines and MUX cables, any and all emergency systems, any and all back-up systems, the autoshear system, ROV intervention panels, the Automatic Mode Function deadman system, and any other components to the BOP.

21. "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

22. "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

23. "Lost circulation," whether or not capitalized, means a reduced amount or total absence of drilling fluids returning to the drilling rig after being pumped down a well.

24. "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

## INSTRUCTIONS

1. Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

2. If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the request for admission to the best of your ability.

**OBJECTION:** The United States incorporates by reference its General Objection 1 (Beyond Requirements of FRCP/Orders) to the extent the instruction seeks to require a level of detail in the objections beyond that required by the Federal Rules of Civil Procedure.

3. Pursuant to Federal Rules of Civil Procedure 26(e) and 36(d), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known, though any matter admitted in response to these requests is conclusively established unless the Court, on motion, permits the admission to be withdrawn or amended.

**OBJECTION:** The United States objects to this instruction as inconsistent with the requirements of Federal Rule of Civil Procedure 26(e)(1)(A), which requires supplementation of a response "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [defendants] during the discovery process or in writing . . . ." The United States will comply with the requirements of Rule 26(e)(1)(A).

## THE ANADARKO NON OPERATING PARTY DEFENDANTS REQUESTS FOR ADMISSION

60.    Admit that you have no evidence of Communications on April 20, 2010 regarding the Macondo Well between any of the Anadarko Non Operating Party Defendants and any persons or entity operating the *Deepwater Horizon* or drilling the Macondo Well.

**OBJECTION:** The United States also objects to this request to the extent it references "any persons or entities operating" the *Deepwater Horizon* or drilling the Macondo Well because the United States contends the Anadarko Defendants are also operators.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied. Documentary evidence indicates that on April 20, 2010, Anadarko Defendants accessed daily drilling reports, mud log reports, and wireline information related to the Macondo Well that was uploaded by BP and/or its contractors. In addition, on April 20, 2010, the

Anadarko Defendants communicated with BP to convey their approval to temporarily abandon the Macondo Well. Lastly, the United States is aware of numerous informal communications between technical personnel at Anadarko and BP, and it is possible that discussions concerning the Macondo Well occurred on April 20, 2010.

61.    Admit that you have no evidence of Communications on April 20, 2010 between any of the Anadarko Non Operating Party Defendants and BP, Transocean, or Halliburton with respect to the *Deepwater Horizon* or the Macondo Well.

**OBJECTION:** The United States objects to this request to the extent it references "any persons or entities operating" the *Deepwater Horizon* or drilling the Macondo Well because the United States contends the Anadarko Defendants are also operators.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied. Documentary evidence indicates that on April 20, 2010, Anadarko Defendants accessed daily drilling reports, mud log reports, and wireline information uploaded by BP and/or its contractors working on activities related to the Macondo Well. In addition, on April 20, the Anadarko Defendants communicated with BP to convey their approval to temporary abandon the Macondo Well. The United States is also aware of numerous informal conversations and e-mail messages between technical personnel at Anadarko and BP regarding the *Deepwater Horizon* and Macondo Well, and it is possible that such a conversation or messages were exchanged on April 20, 2010.

63.    Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well:

**OBJECTION:** The United States hereby incorporates by reference its objection to the definition of Anadarko Non Operating Party because the United States contends the Anadarko

Defendants are also operators. The United States objects to this request on the grounds that "leading to these decisions" is vague, ambiguous, and lacking in sufficient context.

(b)     Any cement design for the Macondo Well;

**OBJECTION:** The United States objects to this request on the grounds that the term "cement design" is undefined, vague, ambiguous.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the cement design for the Macondo Well. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko received and approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install the long-string casing, which has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. Anadarko also was provided with a Daily Operations Report for April 17, 2010, which informed Anadarko, among other things, the "24 Hr Forecast" was to "RUN 7" X 9 5/8" CASING, CEMENT SAME," and that the "Current Status" was "DISPLACING CEMENT W/ 14.0 PPG MUD." In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

(c)     Any cement recipe for the Macondo Well;

10

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision for any cement recipe for the Macondo Well. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko received and approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install the long-string casing, which has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. Anadarko also was provided with and downloaded a Daily Operations Report for April 17, 2010, which informed Anadarko, among other things, the "24 Hr Forecast" was to "RUN 7" X 9 5/8" CASING, CEMENT SAME," and that the "Current Status" was "DISPLACING CEMENT W/ 14.0 PPG MUD." In addition, the Daily Operations Reports dated April 16, 17 and 18, 2010, informed Anadarko, among other things, about "Materials/Consumption" of "Cement Lite Fill," "Cement," "Cement Class G" and "Barite," including the amount of sacks on hand. Further, in the Daily Operations Report dated April 19 and downloaded by Anadarko, there is detailed information about the cement recipe. There were also numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

(d)     The use of six rather than 21 centralizers on the final long string production casing for the Macondo Well;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision to use six rather than 21 centralizers on the final long string casing for the Macondo Well. However, BP informed Anadarko, before cement for the Macondo Well production easing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko received and approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install the long-string casing, which has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

(e)     The April 19-20 decision not to run a cement bond log even after having Schlumberger personnel present on the rig;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision not to run a cement bond log. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko received and approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install the long-string casing, which

has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

      (f)    The Temporary Abandonment procedure sent to the rig on April 20, 2010;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly provided herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the temporary abandonment procedure sent to *Deepwater Horizon* rig. However, the Anadarko Defendants were informed ahead of time of certain aspects of the temporary abandonment procedure, including through the April 15 Authorization for Expenditure and the April 20, 2010 letter from Anadarko authorizing the temporary abandonment of the Macondo Well. In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

      (g)    Displacing to seawater from 3300' below mud level to above (or across) the Blow Out Preventer before performing a negative pressure test.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except to the extent expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor associated with the Macondo Well concerning the decision to displace 3300' feet of mud in the well with seawater. However, there were numerous informal communications between BP and Anadarko occurring in the days and weeks leading up to April

20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject.

    (h)    Deeming the negative pressure test a success on April 20, 2010;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except to the extent expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the negative pressure test. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko was provided with and downloaded a Daily Operations Report from April 18, 2010, which informed Anadarko, among other things, the "24 Hr Forecast" was to "P/U CMT HEAD, LAND OUT, CMT, SET & TEST SEAL ASSY. POOH, TEST CSG." In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

    (i)    Continuing with displacement of the riser after the final negative pressure test on April 20, 2010;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the temporary abandonment procedure for the Macondo Well. However, BP informed Anadarko ahead of time of certain aspects of the temporary abandonment

14

procedure, including displacement of the riser. For example, Anadarko was provided with and downloaded a Daily Operations Report for April 19, 2010, which informed Anadarko, among other things, that the "24 Hr Forecast" was to "FINISH CEMENTING CASING STRING," "DISPLACE RISER, SET CMT PLUG, WOC." In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

(j)      Setting the cement plug at 3300' below mud level, setting it in seawater rather than mud, and its thickness as part of temporary abandonment;

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor concerning the setting of the cement plug at 3300' below the mud level. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko was provided with and downloaded a Daily Operations Report for April 19, 2010, which informed Anadarko, among other things, that the "24 Hr Forecast" was to "FINISH CEMENTING CASING STRING," "DISPLACE RISER, SET CMT PLUG, WOC." In addition, there were numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

(k) Bypassing the Sperry Sun meters on April 20, 2010 during displacement of the Macondo Well and riser to seawater and offloading of mud to the *Damon Bankston*.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision to bypass the Sperry Sun meters on April 20, 2010. However, there were numerous informal communications between BP and Anadarko occurring in the days and weeks leading up to April 20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject. In addition, numerous Anadarko employees had access to Insite Anywhere for the Macondo Well, which reflected that the Sperry Sun meter was no longer registering a reading after 9:08pm on April 20, 2010.

69.    Admit that you have no evidence that the Anadarko Non Operating Party Defendants were given authority by any Person to make decisions regarding methodologies and activities and/or to control activities in connection with the relief efforts to cap, contain, or otherwise control the source of the Oil Spill after the Incident or in connection with efforts to control the fire aboard the *Deepwater Horizon.*

**OBJECTION:** The United States hereby incorporates by reference its objection to the definition of Anadarko Non Operating Party because the United States contends the Anadarko Defendants are also operators.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Denied, except as expressly admitted herein. The United States admits that at this time it has no information that any representative of Anadarko had ultimate authority to

make decisions during the relief efforts. However, at least three Anadarko employees were assigned to assist with relief efforts, some for a significant amount of time, and the full scope of their participation is not known to the United States at this time.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

JAMES NICOLL
 Senior Counsel
NANCY FLICKINGER
 Senior Attorney
SARAH IMMELHOCH
 Senior Litigation Counsel
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL
CHAKERES
JUDY HARVEY
MATT LEOPOLD
RACHEL HANKEY
Trial Attorneys
P.O. Box 7611
Washington, DC 20044-7611

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
SARAH D. HIMMELHOCH
Senior Attorneys
Environmental
Enforcement
Section U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779/202-514-0180
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov
          sarah.himmelhoch@usdoj.gov

JIM LETTEN
United States Attorney
SHARON D. SMITH

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil
Division Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN
JESSICA MCCLELLAN
DAVID PFEFFER
MALINDA LAWRENCE
Trial Attorneys
Torts Branch, Civil Division
P.O. Box 14271
Washington, DC 20044-4271

Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoi.gov
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

# EXHIBIT B

BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 213.680.6442
Direct Fax:    213.830.8642
tiffany.hedgpeth@bingham.com

June 29, 2011

**Via Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington D.C. 20044
sarah.himmelhoch@usdoj.gov

Re:  **United States' Responses to Anadarko Petroleum Corporation's First Set of Interrogatories and Requests for Production of Documents and Requests for Admissions Request for Meet and Confer**

Dear Sarah:

We write in connection with the United States' Initial Responses to Defendant Anadarko Petroleum Corporation's First Set of Interrogatories and Requests for Production of Documents to the United States, dated June 20, 2011 and the United States' Responses to the Applicable Requests Contained Within the Various Defendants' Second Joint Discovery Requests to Plaintiffs. As detailed below, many of the United States' responses are incomplete and/or deficient under the Federal Rules of Civil Procedure and applicable case law. As you know, the court has ordered the parties to submit any motions to compel regarding the United States' discovery responses by July 5. As such, Anadarko Petroleum Company ("APC") requests a "meet and confer" with the United States no later than Friday July 1, 2011 to discuss the following issues regarding its responses.

I.    **GENERAL OBJECTIONS**

It is unclear what documents or information, if any, were withheld by the United States based on its general objections. APC is concerned with the breadth of these objections and needs to know what documents and/or information has been withheld due to them. Moreover, many of these general objections on their face appear to be unsupportable.

II.   **INTERROGATORIES**

A.    **The United States' Responses Are Non-Responsive**

In many instances, rather than provide complete responsive answers, the United States' has chosen to provide only a portion or subset of the information specifically requested in the Interrogatory. For example, Interrogatory No. 8 requests that the United States:

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

+1.213.680.6400
+1.213.680.6499
bingham.com

A/74419476.2/3002623-0000350346

Sarah D. Himmelhoch, Esq.
June 29, 2011
Page 2

> State each and every federal regulation you contend [APC] violated
> with respect to the Macondo Prospect, the Macondo Well, the
> Deepwater Horizon, or the Deepwater Horizon Oil Spill (as defined
> in the complaint), and for each regulation please state the bases and
> sources of your contention.

The United States' response to Interrogatory No. 8 fails to provide the requested
information. Instead, the United States responds with such general and ambiguous
statements as "[the Anadarko Defendants] violated a number of federal regulations,
including 30 C.F.R. § 250.300(a) . . . ." This response is incomplete and fails to
provide the requested information. Other interrogatory responses that are either
incomplete or are nonresponsive are the United States' responses to Interrogatory
Nos. 1, 2, 3, 4, 5, 7, 9, 10, 11, 15, and 17.

**B.      The United States Improperly Refers To Unidentified Documents
That Have Been Or Will Be Produced**

Rather than provide the information requested in numerous interrogatories, the United
States refers APC to documents that have been or will be produced in response to
BP's First Set of Discovery Requests to the United States ("BP Requests"). For
example, Interrogatory No. 12 requests that the United States "Identify all estimates
of the volume of oil discharged from each facility and vessel identified in
Interrogatory Nos. 1 and 5." Instead of providing an answer to the information
requested, the United States responds "Pursuant to Federal Rule of Civil Procedure
33, the United States directs [APC] to the documents produced and to be produced in
response to BP's First Set of Requests for Production, including requests 80-86."

The United States' response does not comport with the requirements applicable to a
party invoking Rule 33. Although Rule 33(d) does allow a responding party to
provide business records in response to an interrogatory, such response is only proper
if the answer can be determined by reviewing a "party's business records" and "the
burden of deriving or ascertaining the answer will be substantially the same for either
party." Fed. R. Civ. P. 33(d). Further, if the responding party chooses to invoke Rule
33(d), it must specify "the records that must be reviewed, in *sufficient detail* to enable
the interrogating party to locate and indentify them as readily as the responding party
could . . . ." *Id.* (emphasis added). The United States has failed to so specify and as
such, its responses are improper. "Answering an interrogatory by generally referring
to information or documents previously provided does not satisfy the requirement that
the answer must be made fully, in writing." *KeyBank Nat'l. Ass'n,* 2011 WL 765925,
at *3. The United States' responses to Interrogatory Nos. 13, 14, 18, 19, and 20 also
improperly rely on Rule 33 by simply referring to the United States' responses to the
BP Requests.

A/74419476.2/3002623-0000350346

Sarah D. Himmelhoch, Esq.
June 29, 2011
Page 3

### III.   REQUESTS FOR PRODUCTION OF DOCUMENTS ("RFP")

#### A.   The United States Refers APC To Productions That It Will Make To BP

In response to RFP Nos. 1-12 and 32-37, the United States directs APC to productions the United States intends to make in response to BP's First Request for Production of Documents. APC agrees that the United States does not need to produce the same documents more than once. However, APC is concerned that the BP Requests to which the United States refers do not capture all the documents responsive to APC's requests. Please confirm that the documents requested by APC will be produced in the litigation.

#### B.   The United States Refers APC To Its Interrogatory Responses

In response to RFP Nos. 13-23 and 25, the United States directs APC to the United States' responses to APC's interrogatories. Interrogatories seek facts, not documents, although specific documents may at times provide the information sought in interrogatories. APC is requesting all documents responsive to its requests. Therefore, the United States' reference to interrogatory responses is improper and does not inform APC as to whether the documents it seeks will or have been produced. Please confirm that the requested documents will be produced.

#### C.   The United States Cannot Defer Responding To RFPs Until The Completion Of Discovery Regarding The February 2012 Trial

In response to RFPs 24, 26, 27, 28, 29, 30, and 31 (as well as Interrogatory No. 21), the United States claims that the requests do not relate to Event, Source Control, or Quantification and states that, accordingly, it will not respond until "after discovery for the February 2012 trial is completed." While we understand that productions regarding Event, Source Control, and Quantification issues take priority over discovery relating to other issues, we are concerned regarding the United States' position that it need not produce documents or information until the conclusion of discovery for the February 2012 trial. We wish to discuss with the United States appropriate deadlines for such discovery.

### IV.   REQUESTS FOR ADMISSIONS ("RFA") (UNITED STATES' RESPONSES TO THE APPLICABLE REQUESTS CONTAINED WITHIN THE VARIOUS DEFENDANTS' SECOND JOINT DISCOVERY REQUESTS TO PLAINTIFFS)

#### A.   Failure To Admit Request

In response to APC's and Anadarko E&P Company LP's ("AE&P") RFA No. 63 (d)-(k), the United States improperly states that it denies the RFA, but then concedes facts consistent with the admission sought. For instance, RFA 63(d) asks:

> 63. Admit that you have no evidence that the Anadarko Non Operating Party Defendants were

A/74419476.2/3002623-0000350346

Sarah D. Himmelhoch, Esq.
June 29, 2011
Page 4

> involved in any Communications leading to these
> decisions relating to the Macondo Well:
>
> (d) the use of six rather than 21 centralizers on the
> final long string production casing for the Macondo
> Well.

In response to the above RFA, the United States replied "Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision to use six rather than 21 centralizers on the final long string casing for the Macondo Well." The United States then sets forth information unrelated to BP's decision to use six centralizers. As a result, the United States should be admitting this and similar RFAs.

### B.    Failure To Provide Information For Responses Other Than Unqualified Admissions As Requested by Interrogatory No. 17

Interrogatory No. 17 states:

> For each of your responses to the above requests for
> admission that is anything but an unqualified
> admission, please state each fact in support of your
> response, identify each person with knowledge of
> each such fact, and identify each document that
> supports your response.

The United States responds by directing APC to its RFA responses and then directs APC generally to all documents that it will be producing in response to APC's and AE&P's discovery requests. The RFA responses fail to provide all requested information (such as persons having information or documents that support the United States' response). Moreover and as discussed above, the United States cannot merely refer to a mass production of documents when responding to an interrogatory. The United States therefore should amend its responses to include the information requested by Interrogatory No. 17.

A/74419476.2/3002623-0000350346

Sarah D. Himmelhoch, Esq.
June 29, 2011
Page 5

**V.      CONCLUSION**

APC is hopeful that through the meet and confer process we can resolve many of the issues identified in this letter.  To that end, please let us know if you are available to meet and confer no later than July 1, 2011 to discuss the United States' responses. This letter shall serve as APC's attempt to meet and confer with the United States pursuant to Rule 37(a)(1).

Sincerely yours,

Tiffany R. Hedgpeth

Bingham McCutchen LLP
bingham.com

# EXHIBIT C



**U.S. Department of Justice**
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

90-5-1-1-10026

July 5, 2011

BY ELECTRONIC MAIL

Tiffany R. Hedgpeth, Esq.
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90073-3106

Dear Tiffany:

I write in response to your June 29, 2011 letter regarding the United States' responses to Anadarko Petroleum Corporation's First Set of Discovery Requests to the United States.  I appreciate your agreeing to extend the time for my responding to your letter in return for an extension of time for Anadarko to file any motion to compel.  It is our hope that we can use the time between now and July 15, 2011 to resolve any disputes the parties may have.  I will address the topics in the order raised in your letter.

1.      **General Objections**

You indicate that it "is unclear what documents or information, if any, were withheld by the United States based on its general objections" and seek clarification.  I will take the general objections in turn.

Where the United States has limited its searches or responses based upon General Objections 1, 2, 3, 11, 12, or 13, it has explicitly stated so in its responses to particular requests or objections to particular definitions.

The United States has not withheld any documents or information in reliance on General Objections 4, 14, 15, 16, 17, or 21.

The United States has withheld documents that are privileged or otherwise protected from discovery pursuant to its General Objections 6, 7, 8, and 9.  Similarly, the United States has excluded from its searches sources that are not reasonably accessible as identified in General Objection 5 – such as backup tapes, fragmented files, memory of printers or copies, etc.

The United States has not searched for or produced documents outside its possession, custody or control and, in that sense has withheld documents pursuant to General Objection 10.  Similarly, with respect to General Objections 17-20, the United States has directed Anadarko to documents already produced or publicly available, rather than re-producing those documents.

Further, with respect to General Objection 22, we have not so much withheld information, but objected to the request as calling for contentions based information we are still collecting, identifying, and analyzing.

I hope that this clarifies the General Objections for you and makes it clear that we have not improperly withheld any information. You note, however, without any further specification that "many of the[ United States'] general objections on their face appear to be unsupportable." Could you please identify those that you believe are unsupportable?

2.    **Interrogatories**

A.    **"The United States' Responses Are Non-Responsive"**

We disagree with your contention that "the United States' has chosen to provide only a portion or subset of the information specifically requested in the Interrogatory." To the contrary, the United States has provided a full response based upon the information available to it at this time. You object to the United States' response to Interrogatory 8, which sought an identification of all federal regulations that the United States contends Anadarko Petroleum violated. You contend that we respond with "general and ambiguous statements." Your characterization is unfair. As the United States noted, discovery is still ongoing and the United States has not yet received Anadarko's responses to its discovery request – in fact Anadarko has a pending request for an extension of time to respond. In such circumstances the Federal Rules of Civil Procedure neither expect nor require a party to commit itself unequivocally to a set of contentions. Rather, the Rules require the party to respond to the best of its ability based upon currently available information and to supplement its responses as additional information is acquired. The United States has complied with that requirement by identifying its current contentions and indicating its intention to supplement its answers when discovery is complete.

B.    **"The United States Improperly Refers To Unidentified Documents"**

Similarly, we firmly disagree with your claim that the United States' responses "improperly" refer to documents. The United States identified specific RFP's to which the documents are responsive and has provided Anadarko with the specific search terms necessary to locate those documents (specifically, in the United States' Third Response to BP's first set of discovery requests). Accordingly, Anadarko can located and index these documents just as easily as the United States can. This is an entirely proper use of the Federal Rule of Civil Procedure 33.

3.    **Requests for Production of Documents**

A.    **"The United States Refers . . . to Productions That It Will Make To BP"**

You state that Anadarko Petroleum "is concerned that the BP Requests to which the United States refers do not capture all the documents responsive to APC's requests. Please confirm that the documents requested by APC will be produced in the litigation." The United States believes in good faith that the search terms proposed in response to the referenced BP

requests will capture the information responsive to Anadarko Petroleum's requests for production of documents. This belief is why we solicited, considered, and accepted Anadarko Petroleum's comments on the proposed search terms. If you feel the search terms are not broad enough, please specifically identify the additional search terms you contend are appropriate so that we can determine whether we will agree to any further searches.

### B.   The United States Refers APC to Its Interrogatory Responses

Your next complaint is that in response to requests for production 13-23 and 25, the United States directs Anadarko Petroleum to the United States' responses to interrogatories. You are correct that Interrogatories do not seek documents, but in response to these interrogatories refer to documents produced in discovery. While we will acknowledge the response was a bit clumsy, it was entirely appropriate as it identifies for Anadarko exactly how to find responsive documents – refer to the United States' Third Response to BP's First Set of Discovery Requests for the search terms necessary to locate these documents. These documents have been, or will be, produced in accordance with the schedules provided to the Court – on or before July 31, 2011 for Event related data and on or before August 31, 2011 for Source Control and Quantification data.

### C.   The United States Cannot Defer Responding To RFPs

Anadarko contends that it is improper to delay responding to its request for production 24, 26, 27, 28, 29, 30, and 31 (as well as Interrogatory No. 21). If Anadarko has particular discovery deadlines to propose, we will, of course, consider those. Bear in mind, however, that recent budget cuts, existing computer infrastructure, and other limitations prevent us from agreeing to search for, collect, and produce documents responsive to these requests before August 31, 2011.

### 4.   Requests for Admissions

### A.   Failure to Admit Request

Anadarko contends that the United States "improperly states that it denies the RFA, but then concedes facts consistent with the admission sought" in response to Request for Admission 63(d). Your characterization of our response is incomplete and inaccurate. The United States cannot admit the request without qualification because discovery is ongoing and based on information obtained to date, there is a fair basis for concluding that Anadarko may well have been informed of the decision.

### B.   Failure to Provide Information for Responses Other than Unqualified Admissions

The United States flatly disagrees with Anadarko's contention regarding its response to Interrogatory 17. The United States fully stated the basis of its refusal to deny each request it denied, including by reference to categories of documents. This information, coupled with Anadarko's full and complete access to its own documents, documents produced by BP, and the

deposition transcripts are sufficient to provide Anadarko with the required basis for understanding the United States' denial of its requests for admission.

**5.      Conclusion**

The United States is hopeful that the information provided in this letter and further reflection by Anadarko Petroleum will reveal that the United States' responses were fully adequate.  If differences between us remain, we look forward to talking with you to resolve as much as possible without recourse to the Court.

Sincerely,

DRAFT

Sarah D. Himmelhoch
Senior Litigation Counsel

cc:     Liaison and Coordinating Counsel

# EXHIBIT D

BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 213.680.6442
Direct Fax:    213.830.8642
tiffany.hedgpeth@bingham.com

July 22, 2011

**Confidential**

**Via Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
sarah.himmelhoch@usdoj.gov

Re:   **Follow Up to Issues Raised During July 7th Meet and Confer
        Regarding the United States' Responses to Anadarko Petroleum
        Corporation and Anadarko E&P Company LP's Discovery
        Requests**

Dear Sarah:

I write to follow up on several of the issues discussed during our July 7, 2011 meet and
confer regarding the United States' responses to the Interrogatories and Requests for
Admission ("RFAs") propounded by Anadarko Petroleum Corporation ("APC") and
Anadarko E&P Company LP ("AE&P") (collectively the "Anadarko Parties"). In addition,
as we discussed, we are providing the United States with some additional searches that we
believe will encompass all of the documents that the Anadarko Parties are seeking in its
Requests for Production of Documents ("RFPs").

I would first like to clarify what we discussed regarding your objection to the Anadarko
Parties' definition of "You," "Your," and "United States" (Definition (m)).  In our
discussion, you stated that the United States did not include the White House (Executive
Office of the President) as one of the searchable federal agencies that were deemed to
possibly have responsive information.  However, you stated that the United States would
be looking at the records of various federal agencies for communications with the White
House.  We would like to confirm that if communications between the White House and
federal agencies are located, these communications will be produced.

Additionally, the Anadarko Parties would like to follow up on the United States' decision
not to produce documents that are "substantially identical" to those documents that have
been or are being produced in this litigation.  Based on our understanding of the United
States' process of collecting documents responsive to the Anadarko Parties' requests, the
United States first collects any documents that are responsive from the federal agencies it
represents.  If multiple copies of the same document are collected, it is our understanding

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington


Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

+1.213.680.6400
+1.213.680.6499
bingham.com

A/74449678.2

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 2

that the United States will only produce the copy of the document that came from the party that created or originated the document, unless one of the additional copies is a "uniquely relevant document."

The Anadarko Parties certainly understand that producing multiple copies of what appear to be the same document may seem unnecessary. However, the Anadarko Parties are concerned that these particular documents may contain handwritten notes, thoughts, and other information from the recipients of the documents that are responsive to the Anadarko Parties' requests. As a result, the Anadarko Parties seek additional clarification as to what constitutes "substantially identical" and "uniquely relevant" documents so that the Anadarko Parties can determine whether additional action concerning these unproduced documents will be necessary.

Finally, we appreciate your clarification concerning the status of the Department of Justice's ("DOJ") ongoing criminal investigation and DOJ's decision to invoke Federal Rule of Criminal Procedure 6(e) and/or the law enforcement privilege in its responses. We are still evaluating this information and will let you know whether the Anadarko Parties will require additional information concerning these objections. For now, we will reserve our right to raise this issue at a later date.

## I.   Non-responsive or Ambiguous Responses to Contention Interrogatories

During our meet and confer we also discussed the Anadarko Parties' position that the United States had failed to provide full and complete responses to some of the Anadarko Parties' Interrogatories. The United States explained that it has provided the information it currently has available and will supplement its responses pursuant to Federal Rule of Civil Procedure 26(e), as appropriate. We understand and appreciate the United States' commitment to supplement its discovery responses under Rule 26(e) as discovery progresses.

However, during our discussions, the United States indicated that it would be willing to re-review some of its responses and consider supplementing if the Anadarko Parties would provide specific examples of the alleged deficiencies. Although we believe several of the responses lack specificity or are at best ambiguous and, thus, do not adequately respond to the requests, we have, based on the United States' representations, sought to narrow the issues for which we request the United States provide clarification.

### A.   Treatment of APC and AE&P as a single entity

Federal Rule of Civil Procedure 33 expressly allows contention Interrogatories, including requests to apply law to fact. The Interrogatories propounded by APC and AE&P request the factual basis for the allegations in the United States' Complaint as to APC and AE&P separately. The United States' Complaint has named APC and AE&P as individual defendants. Nowhere does the Complaint allege an alter ego theory of liability. Nonetheless, in response to APC Interrogatory Nos. 2, 3, 4, 7, 8, 9, 10, 11 and AE&P Interrogatory Nos. 2, 3, 4, 5, 6, 7, 8, and 9, the United States responds with a conclusory statement that APC "controlled and dominated Anadarko E&P" and that "at this stage it is

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 3

not possible to separate the two entities." As such, the United States' responses often refer generally to the "Anadarko Defendants" or refer to APC actions with respect to AE&P liability (or vice versa). In so doing, it is impossible to determine the specific factual basis that supports the United States' claims against each entity.

Assuming the United States is correct and APC "controlled and dominated Anadarko E&P," this does not support the United States providing virtually verbatim answers to requests asking for the factual basis for the allegations against each entity. As APC and AE&P are different entities in different positions in the corporate structure, their liability by definition cannot be based on the same exact facts. Thus, this does not justify providing essentially one answer with respect to the "Anadarko Defendants" without clearly delineating which facts it contends support its claims against APC and which facts it contends supports its claims against AE&P. For example, the United States lists the Well Participation Agreement (to which AE&P is not a party), as support for its claims against AE&P, and contends that APC assumed ownership of the offshore facility through the Well Participation Agreement. By conflating the two entities it is unclear if the United States contends that AE&P held a 25% ownership interest in the well by virtue of this Agreement or just APC. *See, e.g.,* the United States' Response to AE&P Interrogatory No. 2, ¶ 2. The failure to clearly explain its contentions with respect to each entity, even if those contentions are based on an alter ego theory, renders this response ambiguous, confusing, and inadequate.

B.   The *Deepwater Horizon* and "Macondo Well" as "offshore facilities"

APC Interrogatory Nos. 1, 2, 3, 4, 6 and AE&P Interrogatory Nos. 1, 2, 3, and 4 request the factual basis for the United States' contentions that APC and AE&P were owners, operators and/or persons in charge of each offshore facility the United States contends supports its claims under the Clean Water Act ("CWA"). The United States' responses to APC Interrogatory No. 1 and AE&P Interrogatory No. 1 identify (1) the *Deepwater Horizon* and its appurtenances as an offshore facility and (2) the "Macondo Well," including the wellbore, wellhead and all of the components in the wellbore below the sea floor "as an 'offshore facility' and/or components of an 'offshore facility' under both the CWA and OPA."[1]   During the meet and confer, the United States clarified that it was alleging that the well components were either an offshore facility by themselves or as components of the *Deepwater Horizon*. Thus, the United States has identified three potential types of offshore facilities: (1) the *Deepwater Horizon* and its appurtenances;

---

[1] Although the Interrogatories referencing the United States' Complaint relate to the United States' claims under the CWA, the United States references definitions under the Oil Pollution Act ("OPA"). We request clarification that the entirety of the responses relate to its CWA claims (*See* the United States' responses to APC Interrogatory Nos. 1, 5 and AE&P Interrogatory No. 1).

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 4

(2) the components of the well; and (3) a combination of (1) and (2).[2]

Some of the United States' responses to other Interrogatories that request the factual basis for tying either APC or AE&P to the identified facilities do not distinguish which offshore facility is being referenced. For example, the responses to APC Interrogatory No. 2 and AE&P Interrogatory No. 2 assert only that "the Anadarko Defendants are a 25% owner of *an offshore facility*" without any indication as to which of the offshore facilities the United States is referencing. Similarly, the responses to APC Interrogatory No. 3 and AE&P Interrogatory No. 3 refer to APC and AE&P being an "operator" as a result of its leasehold interest, but again fail to identify what facility APC and AE&P are allegedly operating. While we understand that discovery is ongoing, the failure to clearly identify the factual basis for its claims render the responses to these Interrogatories inadequate.

Even where the United States does reference a specific offshore facility, the United States' responses do not provide any factual basis to support its assertions. In response to APC Interrogatory No. 4 and AE&P Interrogatory No. 4, the United States contends that "although BP certainly was the designated operator of the Macondo Well, the Anadarko Defendants did exercise sufficient control over the activities leading to the Incident to constitute a person in charge on these facts." There is no factual basis for this contention. The failure to provide such factual basis also renders its response to APC Interrogatory No. 10 and AE&P Interrogatory No. 8 inadequate. These requests relate to each instance APC or AE&P "exercised any authority to control." Again, we understand the United States will supplement its responses as discovery progresses, but we request that the United States provide the factual basis for this assertion. If it has none currently, it should so state.

Various Interrogatories request clarification as to the "times material" for the United States' allegations with respect to the CWA. The United States identifies only generally the times material with respect to these requests. For example, the responses to APC Interrogatory Nos. 1 and 5 contend that "all times material" with respect to the *Deepwater Horizon* "encompasses the entirety of the period during which the MODU *Deepwater Horizon* was in service." We request clarification as to what the United States means by "in service." In addition, where the United States has not provided a more specific or different time period in response to other requests, we also request clarification as to whether these time frames are equally applicable. For example, the responses to APC Interrogatories Nos. 3, 4, 6 and AE&P Interrogatories Nos. 3 and 4 do not identify the times material though they relate to different allegations by the United States.

---

[2] Although the United States responses to APC Interrogatory Nos. 12 and 13 also do not identify the specific offshore facility being referenced, we understand that the United States will supplement its response to APC Interrogatory No. 12 after its document production and, therefore, we reserve the right to object to the adequacy of its response to this Interrogatory upon receiving its supplemental response.

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 5

Finally, the United States has made a general allegation as to the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" of the defendants and their respective agents, servants, employees, crew, contractors and/or subcontractors.   The Anadarko Parties requested the factual basis for this contention with respect to APC and AE&P, including identification of each agent, servant, employee, crew, contractor or subcontractor.   The United States' response was simply to refer to its response to the Interrogatories requesting identification of each violation of a regulation by APC and AE&P.   This response is inadequate as it does not address the factual basis for the United States' allegations regarding the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct" of APC or AE&P.   If the United States has no such factual basis at this time, it should so state, subject to ongoing discovery.

We understand and appreciate that the United States is willing to review its responses to determine if it could clarify and be more specific as to the factual basis for its claims against each entity, and that it will also supplement its responses based on the ongoing discovery.

## II.   Insufficient Responses to Requests for Admission and Interrogatory

During our call, we also briefly discussed several of the United States' responses to the RFAs and Interrogatory No. 17 contained in the Various Defendants' Second Joint Discovery Requests to Plaintiffs.   The United States denied several of the RFAs, but then failed to provide responsive answers, instead relying on non-responsive extraneous information.   For example, in response to RFA No. 63(k), the United States admits that it has no evidence that an Anadarko employee talked with or received a message from a BP employee or contractor *regarding the decision to bypass* the Sperry Sun meters on April 20, 2010, but still denies the RFA.   The only specific information provided by the United States in support of this denial was a statement concerning Anadarko's ability to access Insite Anywhere, which allegedly reflected that the Sperry Sun meter was no longer registering a reading after 9:08 pm on April 20, 2010.   Whether or not Anadarko had the ability to access Insite Anywhere and was able to determine that the Sperry Sun meter was no longer registering a reading after 9:08 pm has nothing to do with whether an Anadarko employee talked with or received a message from a BP employee or contractor *regarding the decision to bypass*.   Other examples of non-responsive answers to RFAs include: RFA Nos. 63(h) and 63(i).

In addition, a number of the United States' responses to the RFAs include such unsupported statements as "there were numerous informal communications," "it is possible" that "email messages" were exchanged concerning certain subjects, or "it is possible" that there were "informal communications" between "technical personnel," etc. *See* the United States responses to RFA Nos. 59, 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(j) and 63(k).   However, these alleged communications and/or emails are never specifically identified and no participants or other persons with knowledge of such communications are ever identified.   In many cases, these statements provide most or all of the support for the United States' denials.   If the United States has evidence of such communications and/or emails then, in accordance with Interrogatory No. 17, the

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 6

participants and other persons with knowledge of such communications must be identified along with any documents supporting these communications and/or emails.  If the United States does not have this evidence then these unsupported statements should be removed from the United States' responses.

**III.    Proposed Search Terms for Requests for Production of Documents**

Finally, as we discussed during our call, the Anadarko Parties have come up with some additional searches that it believes will encompass all of the documents that the Anadarko Parties are seeking in its RFPs.  While there are similarities between the BP RFPs the United States refers to in its responses and the Anadarko Parties' RFPs, and we do not expect the United States to reproduce documents it has already produced, we do believe that the additional searches included herein are necessary in order to capture all of the documents that the Anadarko Parties are requesting.

Please note, we thoroughly reviewed each of the United States' proposed search terms for the BP RFPs that the United States referenced in its responses to the Anadarko Parties' RFPs.  Based on this review, it is apparent that certain changes to the United States' search terms for the BP RFPS would be necessary in order to capture all of the documents requested in APC's RFPs Nos. 1-13, 15-21, 23, 25, 32-39 and AE&P's RFPs Nos. 1-11.  For example, APC's RFP No. 3 requests documents and communications concerning the United States' basis for asserting that Anadarko is an "owner" of such a facility identified in Rog. No. 1.  In response, the United States directs APC to the United States' responses to BP's RFPs Nos. 47, 48, 52, and 54.  However, in order to capture all of the potentially relevant documents, the following revisions would need to be included:

**BP RFP 47:** ("*senate.gov" OR "*house.gov" OR ("house" AND "representatives") OR ("congress*" ~~OR~~ AND "Committ*") OR "*eop.gov" OR ("Executive Office NEAR "President")) AND ("deepwater" OR "Deep water" OR "Macondo" OR "BP" OR "British Petroleum" OR "DWH" OR "MC252" OR "plume" OR ("clos*" and "fish*") OR "seafood" OR "Mississippi Canyon Block 252" OR "MOEX" OR "Transocean" OR "Anadarko" OR "APC" OR AE&P" OR "AEP" OR "owner" OR "lessee" OR "operat*" OR "partner" OR "facility" ~~"Cameron" OR "Triton" OR "Halliburton" OR "Weatherford" OR "Drillquip" OR "GMBH" OR~~ OR ("Gulf" and "Tiger Team"))

**BP RFP 48:** see RFP 47

**BP RFP 52:** ("Deepwater Horizon" OR "DWH" OR "Deep water Horizon" OR "Macondo" OR "Mississippi Canyon Block 252" OR "MC252" OR "Gulf oil" OR ("Gulf of Mexico" AND "spill") OR ("clos*" AND "fish*") ~~AND~~ OR "Anadarko" OR "APC" OR "AE&P" OR "AEP" OR "operat*" OR "owner" OR "MOEX" OR "lessee" OR "partner" ~~OR "Cameron" OR "Triton" OR "Halliburton" OR "Weatherford" OR "Drillquip" OR "GMBH"~~ OR ("Gulf" and "Tiger Team")) AND ("*.tv.com" or "press" or "media" or "news" OR "NBC" OR "CBS" OR "ABC" OR "CNN" OR "New York Times" OR "Washington Post" OR "Wall Street Journal" OR "Associated Press" OR "Reuters" OR "TV" OR "newspaper" OR "blog" OR "reporter" OR "journalist" OR "website")

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 7

**BP RFP 54:** ("MOEX" OR "MOECO" OR "Mitsui" ~~OR "Transocean" OR "BP"~~ OR "British Petroleum" OR "Anadarko" OR "APC" OR "AE&P" OR "AEP" ~~or "Cameron" or "Triton" or "Halliburton" or "Weatherford" or "Drillquip" or "GMBH" OR "Swaco"~~) OR "owner" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "DWH").

Rather than supplementing and/or revising the necessary search terms for each of the Anadarko Parties' RFPs, and creating approximately 25-30 new searches, the Anadarko Parties have come up with seven searches that we believe will capture all of the documents that the Anadarko Parties have requested in APC's RFPs Nos. 1-13, 15-21, 23, 25, 32-39 and AE&P's RFPs Nos. 1-11. These proposed searches are included below.

In addition, the Anadarko Parties' RFPS seek documents beyond the Time Periods identified by the United States in its responses to BP's RFPs. For example, in response to most of BP's RFPs, the United States has indicated it will produce documents within the Time Period of 4/20/2010-1/31/2011. The Anadarko Parties have requested a great deal of Pre-Incident information and, unless otherwise noted, request that the United States produce documents within the Time Period of 1/1/2009-1/31/2011 in order to capture all of the documents responsive to the Anadarko Parties' RFPs. In addition, given the broader Time Period, we request that the United States provide these search terms and the Anadarko Parties' requests to the Coast Guard, USGS, Army Corps of Engineers, EPA, NOAA, BOEM, DOI, DOE, and any other federal agency that the United States represents in this matter to determine whether they might have documents in their possession responsive to the Anadarko Parties' RFPs.

Included below are the seven searches proposed by the Anadarko Parties in order to ensure that all documents responsive to the Anadarko Parties' RFPs are collected and produced.

> 1.    Proposed Search Terms for APC RFPs Nos. 1-13, 17-21 & AE&P
>       RFPs Nos. 1-11, Time Period 1/1/2009-1/31/2011 (All Agencies)[3]

"Anadarko" OR "APC" OR "AE&P" OR "AEP" OR "operat*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen*" OR "fail*" OR "care*" OR "violat*" OR "authori*" OR "control" OR "flow" OR "volume" OR "oil" OR "relief" OR "cap*" OR "contain*" OR "discharge*" OR "hydrocarbon" OR "explosi*" OR "fire" OR "rescue" OR "emergency" OR "dispers*" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deep water Horizon" OR "DWH")

---

[3] The Anadarko Parties recognize that APC and AE&P's RFPs Nos. 1 and 2 only request post incident documents. However, in an effort to create the fewest number of additional searches, the Anadarko Parties have grouped these RFPs into this proposed search.

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 8

2.     Proposed Search Terms for APC RFPs Nos. 15-16,
        Time Period 4/20/2005- 4/20/2010 (All Agencies)

("DWOP" OR "Deepwater Operating Plan" OR "APD" OR ("Appl*" AND ("drill" OR
"modify" OR "by-pass")) OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "AST" OR
"RST" OR "standard" OR "procedures" OR "policies" OR "SOP" OR "practice" OR
"guideline" OR "direction" OR "instruct" OR "report" OR "analy*") AND ("LDS" OR
"Lock Down Sleeve" OR "Isolating Potential Flow Zones" OR "P&A" OR "Plug and
Abandonment" OR "Surface Plug" OR "Barrier" OR ("Spacer" NEAR ("Drilling" OR
"Mud" OR "Riser" OR "Negative" OR "Calculations")) OR "Surface Plugs" OR "Cement
Plugs" OR "Cementing" OR "Capping" OR "Plugging" OR "Well Design" OR ("TA" OR
"Temporary Abandonment" OR "abandon*") OR "Pressure Test" OR "Casing Test" OR
"Negative Test" OR "Cement*" OR "Cap*" OR "Plug*" OR "Foam* Cement" OR
"Centralize*" OR "Centering" OR "CBL" OR "Casing Bond Log" OR "Cement
Evaluation Tool" OR "Cement Evaluation Procedure" OR "Cement Evaluation Calculat*"
OR "Cement Bond" OR "Permeable Zone" OR "Wellbore Annulus" OR "Isolation
Scanner" OR "Pulse Echo" OR "Accoustic" OR "Sonic" OR ("Casing" AND "Design"
OR "Program") OR "Tubular" "Gas Flow Potential" OR "Gas Flow Cement" OR
"Absolute Open Flow" OR "Plastic Viscosity" OR "Turbulent Flow" OR "Unloading" OR
"Open-hole" OR "GOR" OR "spinner" OR "flowmeter" OR "velocimetry" OR "*BOPD*"
OR "*BPD*" OR "bbl*" OR "flow*" OR "*mbd*" OR "*wcd*" OR "worst case
discharge" OR "leak*" OR "kink" OR "gal*/min*" OR "gal*/day" OR "barrel*" OR "b/d"
OR "bbl" OR "bbl/d" OR "Bopd" OR "Bpd" OR "collect*" OR "flow" OR "flow rate"
"flowrate" OR "mass balance" OR "mbd" OR "oil rate" OR "oil on water" OR "outflow"
OR "plume" OR "spill" OR "velocity" OR "volume" OR "stbpd" OR "Drilling Flui*" OR
"Drilling Mud" OR "Borehold" OR "Hydrostatic Pressure" PR "Formation Fluid" OR
"Formation Damage" OR "Drill String" OR "Polymer" OR "Bentonite" OR "Water-Based
Mud" OR "Viscosity" OR "Thixotropic" OR "Permeability" OR "Mud Filtrate" OR
"Drilling Well Control Even*" OR "Deepwater Well Control Even*" OR "Well Control "
OR "Blowout" OR "Wild Well" OR (("gusher" OR "BOP" OR "release" OR "leak") OR
("response" OR "contain" OR "OSRP" OR "seal*" OR "cap*")) OR "blind shear" OR
"deadman switch" OR "solenoid" or "Cameron" OR "hydraulic ram" OR "wellbore valve"
OR "uncontrolled flow" OR "formation kick" OR "subsea stack" OR "control pods" OR
"transducer" OR "annular" OR "riser" OR "drill string" OR "drill pipe" OR "fail-safe" OR
"gate valve")

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 9

      3.      <u>Proposed Search Terms for APC RFPs Nos. 23, 25,</u>
                       <u>Time Period 1/1/2009-1/31/2011 (All Agencies)</u>[1]

("MC252" OR "Deepwater Horizon" OR "Deep Water Horizon" OR "DWH" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Transocean" OR "BP" OR "GOM" OR "Gulf of Mexico" OR ("Gulf" AND "Spill")) AND ("plume" OR "response" OR "spinner" OR "flow*" OR "lowresolution" OR "low resolution" OR "high-resolution" OR "high resolution" OR "veloci*" OR "*BOPD*" OR "*BPD*" OR "bbl*" OR "flow*" OR "*mbd*" OR "*wcd*" OR "worst case discharge" OR "leak*" OR "kink" OR "restrict*" OR "gal*/min" OR "gal*/day" OR "emanat*" OR "orifice" OR "FEA" OR ("Admiral" AND ("Allen" OR "Landry")) OR "ASTM" OR "AVIRIS" OR "barrel*" OR "b/d" OR "bbl" OR "bbl/d" OR "Bonn Agreement" OR "Bopd" OR "Bpd" OR "collect*" OR "flare*" OR "FRTG" OR "FRTT" OR "mass balance" OR "mbd" OR "McNutt" OR "MMCFD" OR "NOAA" OR "nodal" OR "oceanic" OR "oil rate" OR "oil on water" OR "outflow" OR ("remote*" AND "operat*" AND "vehicle") OR "reservoir" OR "riser" OR "RITT" OR "ROV" OR "sheen" OR "skim*" OR "spill" OR "volume" OR "stbpd" OR "particle" OR "image" OR "GOR" OR "top hat" OR "Q4000" OR "CDP" OR "helix" OR "FPSO" OR "Toisa Pisces" OR "recover*" OR "relief" OR "contain*" OR "capture" OR "amount" OR "water column" OR "dispersed oil" OR "oil budget" OR "evaporate" OR "emulsify" OR "tar ball" OR "two-phase flow" OR "stock tank barrel" OR "hydrate" OR "ICS 209" OR "and sedimentation" OR "multiphase" OR "multiphase" OR "calculate*" OR "nonhydrocarbon" OR "non-oil")

      4.      <u>Proposed Search Terms for APC RFPs Nos. 32-36,</u>
                       <u>Time Period 1/1/2001-1/31/2011 (All Agencies)</u>

"OCS" OR "shelf" OR ("gulf" OR "GOM") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR "Policy" OR "SOP" OR "Proced*" OR "Evaluat*" OR "review" OR "analy*" OR "criteria" OR "test" OR "stud*" OR "event" OR "oil" OR "gas" OR "cause" OR "plan" OR "fail*" OR "safe*" OR "respons*" AND "investiga*" OR "incident" OR "violat*" OR "enforce*" OR "OIR" OR "District Safety" OR "report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "compl*" OR "blow" OR "blowout" OR "drill*" OR "operat*") AND "MMS" OR "BOEM" OR "DOI"

---

[1] These are the same search terms offered by the United States. However, the Anadarko Parties have necessarily broadened the Time Period and request that DOE documents be included in the search.

Bingham McCutchen LLP
bingham.com
A/71449678.2

Sarah D. Himmelhoch, Esq.
July 22, 2011
Page 10

    5.    <u>Proposed Search Terms for APC RFP No. 37,</u>
         <u>Time Period 1/1/2001-1/31/2011 (All Agencies)</u>

("Request*" OR "RFI" OR "DWOP" OR "Deepwater Operating Plan" OR "APD" OR "Appl*") AND ("drill" OR "modify" OR "by-pass") OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "AST" OR "RST" OR "standard" OR "procedures" OR "policies" OR "SOP" OR "practice" OR "guideline" OR "direction" OR "instruct" OR "report" OR "analy*") AND ("Gulf of Mexico" OR "GOM") AND ("well control" OR "blind shear" OR "cement* OR "loss" OR "control" OR "temporary abandonment" OR "spill" OR "response")

    6.    <u>Proposed Search Terms for APC RFP No. 38,</u>
         <u>Time Period 4/20/2010-1/31/2011 (All Agencies)</u>

"National Commission" OR "commission" OR "nat'l" AND "Deepwater Horizon" OR "Deep water Horizon" OR "DWH" OR ("offshore" OR "drill*" OR "well" OR "control" AND ("Outer Continental" OR "OCS" OR "GOM" OR "gulf"))

    7.    <u>Proposed Search Terms for APC RFP No. 39,</u>
         <u>Time Period 1/1/2001-1/31/2011 (BOEM)</u>

"BOEM" OR "BOEMRE" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe*" OR "BMP" OR "manage*" OR "cement*" OR "well" OR "control" OR "operat*") AND ("Outer Continental" OR "OCS" OR "GOM" OR "Gulf")

We appreciate your continued efforts to work with us toward a resolution of the issues discussed above. We request that you let us know by Friday, July 29, 2011 whether the United States will be supplementing its responses and searches as requested above or whether the Anadarko Parties will need to take these issues up with the Magistrate. Should you have any questions or wish to discuss this matter further, please feel free to call me at (213) 680-6442.

Sincerely yours,

Tiffany R. Hedgpeth

# EXHIBIT E



BSG:SDH:KM
90-5-1-1-10026

**U.S. Department of Justice**
**Environment and Natural Resource**
**Division**

P.O. Box 7611
Washington, DC 20044
202-514-0180
Sarah.Himmelhoch@usdoj.gov

July 29, 2011

BY ELECTRONIC MAIL

Tiffany R. Hedgpeth, Esq.
Bingham & McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106
tiffany.hedgpeth@bingham.com

Re:   *In Re Deepwater Horizon*, MDL 2179

Dear Ms. Hedgpeth:

I write in response to your letter of July 22, 2011. Your letter addressed a number of topics, each of which I will take in turn.

**A.    Executive Office of the President Communications**

You ask me to clarify whether, if communications between the White House and federal agencies are located during our searches of the agencies' files, these communications will be produced. Yes, non-privileged communications between the White House and the federal agencies that are identified in the searches will be produced to the parties.

**B.    Duplicate or Near Duplicate Documents**

Your letter reveals there has been some miscommunication about the United States' handling of near duplicate documents. You express concern about the United States excluding "near duplicates" from its productions. The United States is not doing that.

It is true that the United States selected which agencies to search based on an analysis of whether the agency was likely to possess unique information – particularly whether the agency was directly involved in the response activities at issue or whether the agency simply received updates from other agencies. For instance, I reported that the Department of Transportation was not responsible for any aspect of Source Control or Quantification. Rather, the Department of Transportation was involved in some Jones Act Waiver activities and other limited parts of the response. Thus, while we acknowledge that the Department of Transportation may have received reports on the activities of those agencies actively engaged in capping the well or

1

estimating the flow rate from the well, employees of the Department were unlikely to have generated unique information regarding these activities.  Accordingly, the United States concluded that the burden of searching and reviewing information from the Department of Transportation far outweighed the small possibility that some small bit of non-privileged, unique, and relevant information relevant to the current phases of discovery would be found.  For these reasons, the United States refused to search the files of certain federal agencies, including the Departments of Agriculture, Transportation, Labor, and Health and Human Services, as well as the National Aeronautics and Space Administration.

For those agencies that the United States agreed to search, however, we are not removing near duplicates from the production.  To the extent the United States is conducting any de-duplication it is doing so in accordance with the requirements of Pretrial Order 16 Paragraph 7.

**C.     Criminal Investigation**

We will await further communication from you regarding any further questions or concerns you may have regarding records generated by or discussing the ongoing criminal investigation.  In the meantime, we will continue to exclude such records from our searches, productions, and privilege logs.

**D.     Responses to Contention Interrogatories**

**1.     Treatment of APC and AE&P as a Single Entity**

The Anadarko Defendants disagree with the United States' contention that the two Anadarko Defendants are virtually if not completely indistinguishable with respect to the issues in this litigation and, therefore, contend we have failed to fully respond to the Interrogatories seeking the basis of our allegations regarding the companies' liability.  You state that the United States simply makes a "conclusory statement" justifying its treatment of the two companies as the same entity.  Your characterization is not fair.  The United States explains what it has learned in discovery and why it is appropriate to think of the two companies as indistinguishable:

> Anadarko Petroleum Corporation ("Anadarko Petroleum" or "ACP") controlled and dominated Anadarko E&P, its wholly owned subsidiary, with respect to the Macondo Prospect and the Lease. Therefore, while it is possible to respond to this interrogatory with respect to Anadarko Petroleum and Anadarko E&P ("Anadarko Defendants") collectively, at this stage it is not possible to separate the two entities. Specifically, Anadarko E&P entered into the Macondo Prospect Lease ("Lease") and other agreements because it owned the leases from other areas in the Gulf of Mexico that were exchanged with BP pursuant to the Lease Exchange Agreement. Testimony from witnesses indicates that Anadarko E&P did not participate in any other exploratory wells in the Gulf of Mexico and typically acted as a lease holding company. Witnesses have also testified that they did not regard or treat Anadarko E&P as a separate entity from Anadarko Petroleum with respect to the Macondo Prospect. Anadarko Petroleum employees and officers, at

2

> least some of whom were not employed by Anadarko E&P, signed documents on
> behalf of Anadarko E& P, including the Joint Operating Agreement, Lease
> Exchange Agreement, and Authorization for Expenditures ("AFEs"). No witness
> deposed to date has identified the consideration or payment given to Anadarko
> E&P in exchange for its transfer of 22.5% interest in the Lease to Anadarko
> Petroleum. No witness to date who was asked has been able to identify
> employees, officers or directors of Anadarko E&P. Anadarko Petroleum paid all
> costs that BP invoiced to both the Anadarko Defendants for their collective 25%
> working interest. Anadarko Petroleum was expected to be responsible for the full
> 25% share and to own the Macondo Well, including the tangible personal
> property. For the foregoing reasons, all responses herein will refer to the
> Anadarko Defendants together.

In other words, the United States provided a specific description of the evidence it was relying
upon, including the fact that not a single witness could or did distinguish the two companies. We
believe this answer is far from conclusory and satisfies our discovery obligation. While
Anadarko may disagree with the United States' interpretation of the facts or testimony, the
United States has provided its contentions and the factual basis for them, subject to
supplementation as discovery is completed.

### 2.    The *Deepwater Horizon* and "Macondo Well" as "offshore facilities"

You seek several clarifications with respect to the United States' definitions of "off shore
facilities." First, you express confusion because, though the interrogatory seeks information
related to the United States' claims under the Clean Water Act, the interrogatory response
includes a reference to the Oil Pollution Act. The United States has clearly responded to the
question of what constitutes the "offshore facility" as alleged in the complaint:

> The *Deepwater Horizon*, as a MODU, including its appurtenances (i.e. the BOP
> and LMRP), is a "vessel" capable of use as an "offshore facility" under the CWA
> and OPA, and was being used in this capacity at the time of the blowout.
> Furthermore, the Macondo Well, including the wellbore, wellhead and all of the
> components in the wellbore below the sea floor, such as the casings, tubulars,
> cement, float collar, etc., constitute an "offshore facility" and/or components of an
> "offshore facility" under both the CWA and OPA.

Our response therefore makes it clear what the United States contends is the off shore facility
under the Clean Water Act.

You also seek clarification as to which "offshore facility" the United States contends the
Anadarko Defendants owned or operated.  We contend that the Anadarko Defendants owned,
operated, and were persons in charge of each of the off shore facilities identified in our foregoing
interrogatory response. You contend again that we have failed to provide the factual basis for
the contention that the Anadarko Defendants were owners, operators, and persons in charge of
the facility.  Our responses provide a description of the factual basis – specifically the authority

of the Anadarko Defendants to control decisions related to the well as set forth in our response. Accordingly, we believe our answers sufficient, though we reserve the right to supplement as additional information is gathered.

Similarly, your claim that the United States does not indicate the instances in which the Anadarko Defendants exercised any control belies the information provided in the United States' responses. In response to Interrogatory 3, the United States identified specific instances of the exercise of control and indicated that it was still conducting discovery. Similarly, in response to Interrogatory 4, the United States specified numerous ways in which the Anadarko Defendants accessed information relating to the drilling activities and the contractual authority that the Defendants had to act on that information. Thus, we believe the answers we have provided are sufficient in this respect.

3.       "Times Material"

You contend that it is unclear what the "times material" are in response to "various interrogatories." The United States' allegations with respect to both Anadarko Defendants relate to the time period in which the Deepwater Horizon was in service on the MC252 Well.

4.       "Acts, Joint Acts, Omissions, Faults, Negligence, Gross Negligence . . . ."

The Anadarko Defendants complain that the United States' response to Interrogatories seeking identification of the factual basis for asserting the "acts, joint acts, omission, faults, negligence, gross negligence . . . ." of these defendants is insufficient because the United States relies upon a reference to a prior interrogatory response. The United States has identified in its interrogatory responses those regulations that the United States contends the Anadarko defendants themselves violated and in addition the factual basis for contending that BP was the agent of the Anadarko Defendants. To the extent that the Anadarko Defendants seek additional information on BP's violations, the United States directs the Andarko Defendants to the United States' responses to BP's Interrogatories, especially Interrogatories 3, 4, and 16.

At this time, when the Anadarko Defendants have refused to respond to certain of the United States' interrogatories, discovery is not yet complete, and the Marine Board of Investigation has not yet completed its report, the United States has identified the acts, omissions, and regulatory violations it has identified to date and will supplement its responses when discovery closes and the defendants have satisfactorily answered the United States' discovery.

C.       Response to Requests for Admission and Interrogatory 17

With respect to Interrogatory 17, the Anadarko Defendants are insisting on far more detail than is appropriately required under the Federal Rules of Civil Procedure. As with the United States' responses to the other interrogatories, you do not agree with the United States' response and therefore argue that the United States' response is inadequate. You point to the United States' response to RFA 63(k) as an example, claiming that "[w]hether or not Anadarko

4

had the ability to access Insite Anywhere and was able to determine that the Sperry Sun meter was no longer registering a reading after 9:08 pm has nothing to do with whether an Anadarko employee talked with or received a message from a BP employee or contractor *regarding the decision to bypass*." To the contrary, it is circumstantial evidence that such a conversation or message may have existed that has not yet been discovered. As you acknowledge, discovery is ongoing and the United States cannot admit the fact when there is circumstantial evidence that requires further investigation before it can be admitted. Similarly, the United States' response to RFAs 63(h) and 63(i) rely upon circumstantial indications that suggest a message or other communication may have occurred and, therefore, provide a basis for denying the requests at this time.

You next challenge the United States' responses to Requests for Admission 59, 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(q) and 63(k), because they reference "informal communications" or the possible existence of communications. Where discovery is not yet complete, and the Anadarko Defendants have refused to respond to interrogatories and provided 30(b)(6) designees who disclaim knowledge of basic facts, the United States is entitled to deny requests for admissions based upon indications that further discovery will reveal facts that provide a basis for denying the requests. The Federal Rules specifically contemplate that a party served with requests with admission may refuse to admit in circumstances such as these. *See* Fed. R. Civ. P. 36(a)(4).

**F.    Proposed Search Terms for Requests for Production of Documents**

On May 24, 2011, the United States invited the Anadarko Defendants to join a discussion of the search terms proposed by the United States in response to BP's requests for production, stating "[b]ecause of the significant overlap between Anadarko/MOEX's requests and BP's requests, we thought it might be valuable to have you participate." Since that time, Andarko has been asked to comment on each proposed iteration of the proposed search terms. Along the way, the United States incorporated changes proposed by Anadarko into the search terms. Moreover, on June 20, 2011, the United States' formal responses to Anadarko's discovery requests made it absolutely unambiguous that the United States intended to rely upon the search terms designed in response to BP's discovery requests to respond to Anadarko's as well. Now, as the first production deadline is nearly upon us, Anadarko proposes seven additional search terms covering additional time periods and agencies. In many respects, the timing of Anadarko's proposed additional search terms is reason enough to reject the proposed changes.

Nonetheless, the United States has reviewed Anadarko's proposed changes to see whether some of the changes could be adopted at least for searches that have not yet been completed. I will respond to each proposed search in turn.[1]

---

[1] Anadarko has marked up the United States' proposed search terms for BP's Requests for Production 47, 48, 52, and 54. The United States understands this mark up to be illustrative, rather than a request for changes to these actual search terms. If the United States is mistaken, please let me know at your earliest convenience.

1.   **Proposed Search Terms for APC RFPs Nos. 1-13, 17-21 & AE&P RFPs Nos. 1- 11, Time Period 1/1/2009-1/31/2011 (All Agencies)[2]**

"Anadarko" OR "APC" OR "AE&P" OR "AEP" OR "operat\*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen\*" OR "fail\*" OR "care\*" OR "violat\*" OR "authori\*" OR "control" OR "flow" OR "volume" OR "oil" OR "relief" OR "cap"' OR "contain" OR "discharge" OR "hydrocarbon" OR "explosi\*" OR "fire" OR "rescue" OR "emergency" OR "dispers\*" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

This search is an amalgam of many different concepts, each of which requires a different response. Therefore, the United States will break the proposed search into individual segments and respond to each segment separately.

a.   **Search Segment 1.a.**

"flow" OR "volume" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

These search terms relating to flow or volume from the MC252 well post-Incident are directly covered by the United States' proposed search terms that are being executed by NOAA, BOEM, USGS, the Coast Guard, and the Army Corps of Engineers for the period April 20, 2010-September 19, 2010 in response to BP's requests:

BP RFP 73: ("MC252" OR "Deepwater Horizon" OR "Deep Water Horizon" OR "DWH" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Transocean" OR "BP" OR "GOM" OR "Gulf of Mexico" OR ("Gulf" AND "Spill")) AND ("flow" OR "flow rate" OR "flowrate" OR "volume")

BP RFP 123: ("DWH" OR "Deepwater Horizon" or "MC252" OR "BP" OR "Transocean" OR "GOM" OR ("Gulf" AND "spill") OR "Macondo" OR "Mississippi Canyon Block 252") AND ("volume")[3]

---

[2] It is not clear what Anadarko means by "all Agencies" – i.e. whether Anadarko means all agencies of the Executive Branch of the United States government or all agencies that the United States has agreed to search for purposes of the Event, Source Control, and Quantification stages of discovery. For purposes of this letter, the United States assumes that the Anadarko Defendants are referring to the latter category of agencies. If the United States is mistaken, please note that the United States objects to the request to search additional agencies' records because those searches are not reasonable given the role of the other agencies (or lack thereof) in the pre-Incident and relevant response activities.

In addition, the United States has agreed to (and has begun to) produce all non-privileged documents related to the Deepwater Horizon generated by the identified Department of Energy custodians, the Science Advisors, the members of the Flow Rate Technical Group, and specific Navy custodians through January 31, 2011. Further, the United States has agreed to produce all non-privileged records of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling (colloquially referred to as the "Oil Spill Commission"), as well as the non-privileged documents related to the Coast Guard's Incident Specific Preparedness Review.

Accordingly, the differences between the United States' search and Anadarko's proposed additional search in this segment are: (1) the end date of September 19, 2010 as opposed to January 31, 2011 for certain agencies; (2) the start date of April 20, 2010 as opposed to January 1, 2009; and (3) the inclusion of all agencies prior to April 20, 2010. For searches that have not been conducted as of July 31, 2011, the United States will extend the search through January 31, 2011, thereby eliminating one difference.

With respect to Pre-Incident information, it is unreasonable to require searches of the Department of Energy, the Navy, the Army Corps of Engineers, the Coast Guard, EPA, or NOAA because these agencies have no regulatory involvement with the leasing or monitoring of production from the Deepwater Horizon. Moreover, it is unclear why these search terms are relevant for the pre-Incident time period as it relates to the MC252 well because I am unaware of any party alleging that there had been flow from the well prior to April 20, 2010. Nonetheless, many of the United States' search terms address flow rate more generally for the BOEMRE records between April 20, 2005 and April 20, 2010. For instance, the United States is searching BOEMRE's files for (among other things):

BP RFP 19: ("GOM" OR "Gulf of Mexico") AND ("flow" OR "flow rate" OR "flowrate" OR "volume")

BP RFP 23: ("NTL 2006 G21" OR "NTL 2007 N04" OR "NTL 2007 G12" OR "NTL 2008 N05" OR "CTCAC" OR "STCZAC" OR "Oil Pollution Act" OR "OPA" OR "Energy Policy Act" OR "EPAct" OR "NEPA" OR "Environmental Policy Act" OR "Marine Mammals Protection Act" OR "MMPA" OR "Clean Water Act" OR "CERCLA" OR "enforce" OR "violat%" OR "OSRP") AND ("flow%" OR "volume")

BP RFP 24: ("Site Specific MC 252" OR "Oil Pollution Act" OR "OPA" OR "Oil Spill Response Plan" OR "OSRP" OR "Area Contingency Plan" OR "ACP"

---

[3] These are abbreviated versions of the search terms designed to demonstrate how Anadarko's proposed search terms are addressed. Though the United States has omitted certain search terms, the syntax of the search is preserved and demonstrates that the documents Anadarko seeks will be identified by the search terms.

OR "NCP" OR "National Contingency Plan" OR "Clean Water Act" OR "CWA"
OR "CERCLA")  AND ("flow*" OR "volume")

BP RFP 28:  (("Gulf of Mexico" OR "GOM") AND (("DWOP" OR "Deepwater
Operating Plan") OR ("flow" OR "flow rate" OR "flowrate" OR "volume").

Further, BOEMRE has produced all the relevant tables and referenced documents from
its corporate database "TIMS" in response to BP's requests for production.  Accordingly,
for the only agency reasonably likely to have pre-spill information relating to flow or
volume and the MC252 well, the United States is already producing the relevant
information.

> b.    **Search Segment 1.b.**

"explosi*" OR "fire" OR "rescue" OR "emergency" AND ("MC252" OR
"Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR
"Deepwater Horizon" OR "DWH")

These terms are proposed to address Anadarko Petroleum Corporation's Request for
Production 17 and 18, which are addressed solely to the time period April 20-22, 2010.  For this
time period, the United States' search terms already fully capture this segment of Anadarko's
proposed search.  The United States has agreed to conduct a search of the consolidated Coast
Guard archive of the spill for the period April 20, 2010 through September 19, 2010:

BP RFP 63:  ("Deepwater Horizon" OR "Deep water Horizon" OR "Macondo"
OR "DWH" OR "MC252" OR "Mississippi Canyon Block 252") AND ("Rescue"
OR "Search" OR "SAR" OR "Firefighting" OR "Fire" OR "explo%" OR
"Emergency" OR "Ballast" OR ("foam w12 "fire-resistant"))

The United States has also produced the non-privileged Search and Rescue and the Incident
Specific Preparedness Review documents compiled by the Coast Guard.

Therefore, the only differences between this search segment and the search proposed by
Anadarko are again the date range and the agencies involved in the search.  There is no reason to
believe that the agencies other than the Coast Guard are reasonably likely to have meaningful
information regarding the search and rescue or firefighting efforts.  Not only is the Coast Guard
the agency charged with heading up the entirety of this response, but it was also the agency
specifically conducting the search and rescue efforts.

Extending the date range of the search to pre-Incident or past April 22, 2010 is not
warranted based on the request propounded by Anadarko, or by the reasonable time frame in
which such documents would have been created.  Nonetheless, to the extent Anadarko is seeking
information regarding policies and practices regarding planning for response to fires and other
well-control events, the United States has agreed to search for and produce non-privileged

documents in the file of BOEMRE between April 20, 2005 and April 20, 2010 that respond to
the following search terms:

BP RFP 11: ("N9349" OR "R4937" OR "608174116900" OR "608174116901"
OR "Well 001 G32306 MC252" OR "MC252" OR "Mississippi Canyon" OR
"Macondo") AND ("NEPA" OR "Categorical Exclusion" OR "CATEX" OR
"Environmental Assessment" OR "Environmental Impact Statement" OR "EA"
OR "EIS" OR "Record of Decision" OR "ROD" OR "Finding of No Significant
Impact" OR "FONSI" OR "Notice of Intent" OR "NOI" OR "Notice of
Availability" OR "Endangered Species" OR "ESA" OR "Marine Mammal" OR
"MMPA" OR "Air Permit")

BP RFP 21: ("O-414" OR "O-49" OR "O-415" OR "O-452" OR "O-459" OR
"O-460" OR "O-428" OR "O-429" OR "O-14" OR "O-553" OR "Site Specific
Seg# 4879 HIPS" OR "Site Specific Seg # 11015" OR "Site Specific MP 255"
OR "Site Specific DC 177" OR "site Specific DC 133" OR  "Site Specific MC
252" OR ("British Petroleum" OR "BP")) AND ("Respon% Plan" OR "Spill
Response" OR "Contain%" OR "Cleanup" OR "Incident Command" OR
"Contingency" OR "OSRP" OR "oil spill")

BP RFP 22: ("N9349" OR "R4937" OR "608174116900" OR "608174116901"
OR "Well 001 G32306 MC252" OR "MC252" OR "Mississippi Canyon" OR
"Macondo") AND ("NEPA" OR "Categorical Exclusion" OR "CATEX" OR
"Environmental Assessment" OR "Environmental Impact Statement" OR "EA"
OR "EIS" OR "Record of Decision" OR "ROD" OR "Finding of No Significant
Impact" OR "FONSI" OR "Notice of Intent" OR "NOI" OR "Notice of
Availability" OR "Endangered Species" OR "ESA" OR "Marine Mammal" OR
"MMPA" OR "Air Permit")

BP RFP 23: ("NTL 2006 G21" OR "NTL 2007 N04" OR "NTL 2007 G12" OR
"NTL 2008 N05" OR "CTCAC" OR "STCZAC" OR "Oil Pollution Act" OR
"OPA" OR "Energy Policy Act" OR "EPAct" OR "NEPA" OR "Environmental
Policy Act" OR "Marine Mammals Protection Act" OR "MMPA" OR "Clean
Water Act" OR "CERCLA" OR "enforce" OR "violat%" OR "OSRP") AND
("Clean up" OR "Discharge" OR "Well Control" OR "Blowout" OR "Oil Spill
Response Plan" OR "BOPD%" OR "BPD%" OR "bbl%" OR "flow%" OR
"mbd%" OR "wcd%" OR "worst case discharge" OR "leak%" OR
"NEAR((gal%,min%),3)" OR "NEAR((gal%,day),3)" OR "barrel" OR "bbl%"
"collect%" OR "flare%" OR "flow" OR "flow rate" OR "flowrate" OR "mass
balance" OR "mbd" OR  "oil rate" OR "oil on water" OR "outflow" OR
"reservoir" OR "ROV" OR "sheen" OR "spill" OR "volume" OR "stbpd" OR
"stpobp" OR "NRCP" OR "National Contingency Plan")

The United States is also conducting similar searches of NOAA records for the same time
period. Further, the Coast Guard has produced documents "relating to training for

emergency maritime response, firefighting or disaster response related to oil rigs in the Gulf of Mexico" in response to BP's Request for Production 66.  Therefore, the United States will not make any changes in its search terms to address this segment of Anadarko's first set of proposed additional search terms.

    **c.**    **Search Segment 1.c.**

"control" OR "oil" OR "relief" OR "cap" OR "contain" OR "discharge'" OR "hydrocarbon" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

    The United States' search terms again directly address this segment of Anadarko's proposed search for the post-Incident period.  As noted above, several agencies are producing all Deepwater related documents through January 31, 2011 and will have produced any post-Incident documents responsive to this search segment.  In addition, for the post-Incident period through September 19, 2010, BOEMRE, USGS, the Coast Guard, the Army Corps of Engineers, and NOAA are conducting the following searches.  For searches conducted on or after July 31, 2011, the United States will agree to extend the end date for the following searches to January 31, 2011:

    BP RFP 68:  Series of Searches:  1.  ["Deepwater Horizon" | "Deep water Horizon" | "MC252" | "Macondo" | "Mississippi Canyon Block 252" | "BP" | "Transocean" | "Gulf of Mexico" | "GOM" | ("Gulf" AND "Spill")]; 2.  AND within ["oil" | "hydrocarbons"]; 3.  AND within ["collect%" | "cap%" | "seal" | "relief well" | "recover%" | "contain% | "cofferdam" | "top hat" | "capping stack" | "top kill" | "junk shot" | "well kill"]; 4.  AND with ["approv%" | "reject%" | "deny" | "allow" | "grant" | "submit%" | "deci%" | "consider%" | "propose%" | "identify%" | "study" | "inspect%" | "evaluat%" | "present%" | "report" | "ppt" | "powerpoint"] | ["method" AND "post"] | ["method" AND "potential"][4]

    BP RFP 73:  ("MC252" OR "Deepwater Horizon" OR "Deep Water Horizon" OR "DWH" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Transocean" OR "BP" OR "GOM" OR "Gulf of Mexico" OR ("Gulf" AND "Spill")) AND ("relief" OR "contain%" OR "collect%")

    BP RFP 75:  ("DWH" OR "Deepwater Horizon" or "MC252" OR "BP" OR "Transocean" OR "GOM" OR ("Gulf" AND "spill") OR "Macondo" OR "Mississippi Canyon Block 252" OR "Gulf of Mexico") AND "cap%" AND ("install%" OR "shut" OR "close" OR "integrity" OR "testing")

The syntax of the United States' search differs from Anadarko's in one significant respect, in that "oil" is connected to "relief", "cap", and contain" by an "AND" rather than an "OR."  This

---

[4] NOAA's search terms are formatted differently but will accomplish the same search.

change is necessary, because the use of "OR" in that place would pull in all documents that contain the words "Deepwater Horizon" and "oil" – *i.e.*, virtually every document related to the response. This Court has phased discovery to allow for a rapid pace of collection, review, and production. Sweeping in all documents referencing "Deepwater Horizon" and "oil" would eliminate the phasing of discovery and is both inappropriate and unduly burdensome.

Further, it is inappropriate to extend this search to the pre-Incident time period, except to the extent Anadarko is seeking information regarding the response plans and policies in effect during the development of the MC252 Well.  As demonstrated in the discussion of search segment 1.b., the United States is searching for and producing these documents.

### d.     Search Segment 1.d.

"dispers*" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

As phrased, this search segment is far too broad because it will call up any document containing any variant of the word "disperse" that also references the Deepwater Horizon.  Because this term was used in many different aspects in the response, this very broad search would undo the clear phasing of discovery set forth in the Court's orders. NOAA, BOEMRE, USGS, the Coast Guard, the Army Corps of Engineers, and one Navy custodian are conducting appropriately tailored searches for documents discussing both dispersed oil and the application of dispersants as it relates to Quantification for the period between April 20, 2010 and September 19, 2010.  For searches conducted on or after July 31, 2011, the United States will extend the end date to January 31, 2011 for the following searches:

BP RFP 73:  ("MC252" OR "Deepwater Horizon" OR "Deep Water Horizon" OR "DWH" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Transocean" OR "BP" OR "GOM" OR "Gulf of Mexico" OR ("Gulf" AND "Spill")) AND ("dispersed oil")

BP RFP 123:  ("DWH" OR "Deepwater Horizon" or "MC252" OR "BP" OR "Transocean" OR "GOM" OR ("Gulf" AND "spill") OR "Macondo" OR "Mississippi Canyon Block 252") AND ("corexit" OR "9500%" OR "9527%" OR "dispersant" OR "brat%") AND ("permit%" OR "limit%" OR "control" OR "decision" OR "quantit%" OR "subsea" OR "surface" OR "volume" OR "amount" OR "appl%" OR "deci%" OR "direct%" OR "analy%" OR "identi%" OR "addendum" OR "use" OR "respons%" OR "alternative" OR "determin%" OR "guideline" OR "metric%" OR "fate" OR "dispersed oil" OR "harm" OR "effect*" OR "predict%" OR "injur%" OR "toxic" OR "SMART" OR "waiv%" OR "approv%" OR "measure" OR "assess" OR "shore" OR "coast%" OR "land" OR "inventor%" OR "deny" OR "deploy%" OR "benefit").

### e.   Search Segment 1.e.

"Anadarko" OR "APC" OR "AE&P" OR "AEP" OR "operat*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen*" OR "fail*" OR "care*" OR "violat*" OR "authori*" AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

For the period April 20, 2010 through January 31, 2011, the United States is conducting a broader search than Anadarko is requesting:

BP RFP 54:  ("MOEX" OR "MOECO" OR "Mitsui" OR "Transocean" OR "BP" OR "British Petroleum" OR "Anadarko" or "Cameron" or "Triton" or "Halliburton" or "Weatherford" or "Drillquip" or "GMBH" OR "Swaco") AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "DWH")[5]

Anadarko contends that this search is not broad enough because it does not include the terms "AEP" and "APC." The United States believes "AEP" is a common enough acronym that it is likely to result in an undue number of false hits. Moreover, the United States has seen no evidence of widespread use of these acronyms to refer to the Anadarko defendants in the responsive materials.

The United States will agree to conduct one additional search to address the other search terms not included in the United States' ongoing searches. This search will be conducted of EPA, BOEMRE, and Coast Guard files for the period April 20, 2010 through January 31, 2011:

("AE&P" OR "operat*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen*" OR "fail*" OR "care*" OR "violat*" OR "authori*") AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

This search will not be completed by July 31, 2011. The United States will make reasonable efforts to complete this search on or before August 31, 2011, but cannot commit to this date until it has a better sense of when the production of documents from searches already underway is completed.

---

[5] There was a typographical error in the United States' letter to Robert Gasaway setting forth the search terms. The letter included "Mistui" instead of "Mitsui." The United States is using the correctly spelled name of this company.

2. **Proposed Search Terms for APC RFPs Nos. 15-16, Time Period 4/20/2005-4/20/2010 (All Agencies)**

("DWOP" OR "Deepwater Operating Plan" OR "APD" OR ("Appl*" AND ("drill" OR "modify" OR "by-pass") OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "AST" OR "RST" OR "standard" OR "procedures" OR "policies" OR "SOP" OR "practice" OR "guideline" OR "direction" OR "instruct" OR "report" OR "analy*") AND ("LDS" OR "Lock Down Sleeve" OR "Isolating Potential Flow Zones" OR "P&A" OR "Plug and Abandonment" OR "Surface Plug" OR "Barrier" OR ("Spacer" NEAR ("Drilling" OR "Mud" OR "Riser" OR "Negative" Or "Calculations")) OR "Surface Plugs" OR "Cement Plugs" OR "Cementing" OR "Capping" OR "Plugging" OR "Well Design" OR ("TA" OR "Temporary Abandonment" OR "abandon*") OR "Pressure Test" OR "Casing Test" OR "Negative Test" OR "Cement*" OR "Cap*" OR "Plug*" OR "Foam* Cement" OR "Centralize'" OR "Centering" OR "CBL" OR "Casing Bond Log" OR "Cement Evaluation Tool" OR "Cement Evaluation Procedure" OR "Cement Evaluation Calculat*" OR "Cement Bond" OR "Permeable Zone" OR "Wellbore Annulus" OR "Isolation Scanner" OR "Pulse Echo" OR "Accoustic" OR "Sonic" OR ("Casing" AND "Design" OR "Program") OR "Tubular" "Gas Flow Potential" OR "Gas Flow Cement" "OR "Absolute Open Flow" OR "Plastic Viscosity" OR "Turbulent Flow" OR "Unloading" OR "Open-hole" OR "GOR" OR "spinner" OR "flowmeter" OR "velocimetry" OR "BOPD*" OR "BPD*" OR "bbl*" OR "flow" OR "mbd" " OR "wcd" OR "worst case discharge" OR "leak" OR " kink" OR "gal*/min" OR "gal*/day" OR "barrel" OR "b/d" OR "bbl" OR "bbl/d" OR "Bopd" OR "Bpd" OR "collect" OR "flow" OR "flow rate" OR "flowrate" OR "mass balance" OR "mbd" OR "oil rate" OR "oil on water" OR "outflow" OR "plume" OR "spill" OR "velocity" OR "volume" OR "stbpd" OR "Drilling Flui*" OR "Drilling Mud" OR "Borehole" OR "Hydrostatic Pressure" OR "Formation Fluid" OR "Formation Damage" OR "Drill String" OR "Polymer" OR "Bentonite" OR "Water-Based Mud" OR "Viscosity" OR "Thixotropic" OR "Permeability" OR "Mud Filtrate" OR "Drilling Well Control Even'" OR "Deepwater Well Control Even*" OR "Well Control" OR "Blowout" OR "Wild Well" OR (("gusher" OR "BOP" OR "release" OR " leak") OR ("response" OR "contain" OR "OSRP" OR "seal'" OR "cap") OR "blind shear" OR "deadman switch" OR "solenoid" or "Cameron" OR "hydraulic ram" OR "well bore valve" OR "uncontrolled flow" OR "formation kick" OR "subsea stack" OR "control pods" OR "transducer" OR "annular" OR "riser" OR "drill string" OR "drill pipe" OR "fail -safe" OR "gate valve")

It is important to note that this proposed search contains some unnecessary terms, perhaps because it is almost identical to the United States' less than perfect search terms for BP RFP 28. For instance, the search includes "cement*" – i.e. all the permutations of the word "cement." Anadarko has also included, however, "Cement Plugs", "Cementing", "Foam* Cement", "Cement Evaluation Tool", "Cement Evaluation Procedure", "Cement Evaluation Calculat*", "Cement Bond", and "Gas Flow Cement." These additional search terms are unnecessary

because they all would be captured by the broader "cement*." Similarly, the proposed search includes "flow*" but then goes on to include: "Isolating Potential Flow Zones", "Gas Flow Potential", "Absolute Open Flow", "Turbulent Flow", "flowmeter", "flow", "flow rate", and "flowrate." These terms, and others originally contained in the United States' search string are also duplicative and unnecessary.

To address this unnecessary duplication and to incorporate those changes from Anadarko's proposed search that are appropriate, for searches undertaken on or after July 31, 2010, the United States will use the following search string:

BP RFP 28:  (("Gulf of Mexico" OR "GOM") AND ("DWOP" OR "Deepwater Operating Plan" OR "APD" OR ("Appl%" AND "drill") OR ("Appl%" AND "modify") OR ("Appl%" AND "by\-pass") OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "AST" OR "RST" OR "standard" OR "procedures" OR "policies" OR "SOP" OR "practice" OR "guideline" OR "direction" OR "instruct" OR "report" OR "analy%")) AND ("LDS" OR "Lock Down Sleeve" OR "P\&A" OR "Barrier" OR "NEAR((Spacer,Drilling),3)" OR "NEAR((Spacer,Mud),3)" OR "NEAR((Spacer,Riser),3)" OR "NEAR((Spacer,Negative),3)" OR "NEAR((Spacer,Calculations),3)") OR "Flow%" OR "Well Design" OR "TA" OR "abandon%" OR "Pressure Test" OR "Casing Test" OR "Negative Test" OR "Cement%" OR "Cap%" OR "Plug%" OR "Centralize%" OR "Centering" OR "CBL" OR "Casing Bond Log" OR "Permeable Zone" OR "Wellbore Annulus" OR "Isolation Scanner" OR "Pulse Echo" OR "Accoustic" OR "Sonic" OR ("Casing" AND ("Design" OR "Program")) OR "Tubular" OR "Gas Flow Potential" OR "Gas Flow Cement" OR "Absolute Open Flow" OR "Plastic Viscosity" OR "Turbulent Flow" OR "Unloading" OR "Open\-hole" OR "GOR" OR "spinner" OR "velocimetry" OR "BOPD%" OR "BPD%" OR "bbl%" OR OR "mbd%" OR "wcd%" OR "worst case discharge" OR "leak%" OR "kink" OR "NEAR((gal%,min%),2)" OR "NEAR((gal%,day),2)" OR "barrel%" OR "collect%" OR "mass balance" OR "oil rate" OR "oil on water" OR "outflow" OR "plume" OR "spill" OR "velocity" OR "volume" OR "stbpd" OR "Drilling Flui%" OR "Drilling Mud" OR "Borehole" OR "Hydrostatic Pressure" OR "Formation Fluid" OR "Formation Damage" OR "Drill String" OR "Polymer" OR "Bentonite" OR "Water\-Based Mud" OR "Viscosity" OR "Thixotropic" OR "Permeability" OR "Mud Filtrate" OR "Well Control " OR "Blowout" OR "Wild Well" OR (("gusher" OR "BOP" OR "release" OR "leak") AND ("response" OR "contain" OR "OSRP" OR "seal%" OR "cap%")) OR "blind shear" OR "deadman switch" OR "solenoid" or "Cameron" OR "hydraulic ram" OR "wellbore valve" OR "uncontrolled flow" OR "formation kick" OR "subsea stack" OR "control pods" OR "transducer" OR "annular" OR "riser" OR "drill string" OR "drill pipe" OR "fail\-safe" OR "gate valve")

With these changes, the only significant differences between the United States' search and Anadarko's proposed search is the limitation placed at the front of the search (("Gulf of Mexico" OR "GOM") and the agencies expected to conduct the search. With respect

14

to the limiting phrase, this Court has made it clear that discovery is appropriately addressed at comparable activities in the Gulf of Mexico and that discovery should not be conducted regarding oil exploration in other parts of the world.  Without the introductory limiting phrase on the United States' search, this search would not be limited to activities in the Gulf of Mexico and would, therefore, be inappropriately broad.

Moreover, it is inappropriate to search the records of agencies such as the Navy, the Army Corps of Engineers, or other agencies that did not have any involvement with regulation, oversight, or exploration of deepwater oil wells in the Gulf of Mexico prior to April 20, 2010. For these reasons, the United States cannot agree to extend this search to agencies beyond BOEMRE.

### 3.   Proposed Search Terms for APC RFPs Nos. 23, 25, Time Period 1/1/2009-1/31/2011 (All Agencies)

For these search terms, the Anadarko defendants do not challenge the United States' search terms but simply request that the search terms be extended pre-Incident and through January 31, 2011 and that DOE be included in the search.  As stated before, DOE is not using search terms to produce its documents.  Rather, it is producing all identified non-privileged Deepwater related documents in the possession of the identified custodians.  Accordingly, there is no need for search terms with respect to DOE.

The United States will agree to extend the ending period of all searches conducted in response to BP's RFP 73 by the other agencies on or after July 31, 2011.

That leaves only Anadarko's demand to extend the search terms back to January 1, 2009 for all agencies.  These searches are targeted to flow rate from the MC252 Well specifically, and not to general policies or planning for spills or accidents at the MC252 Well or other deepwater wells in the Gulf of Mexico. Accordingly, extending these search terms to the pre-Incident period is inappropriate, particularly with respect to agencies other than BOEMRE.  Moreover, as demonstrated above, the United States is producing pre-Incident information from BOEMRE responsive to these requests and no further pre-Incident searches are required.

### 4.   Proposed Search Terms for APC RFPs Nos. 32-36, Time Period 1/1/2001-1/31/2011 (All Agencies)

"OCS" OR "shelf" OR ("gulf" OR "GOM") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR " Policy" OR "SOP" OR "Proced*" OR "Evaluat*" OR "review" OR "analy*" OR "criteria" OR "test" OR "stud*" OR "event" OR "oil" OR "gas" OR "cause" OR "plan" OR " fail'" OR "safe*" OR "respons*" AND "investiga*" OR "incident" OR "violat*" OR "enforce'" OR "OIR" OR "District Safety" OR "report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "compl*" OR "blow" OR "blowout" OR "drill*" OR "operat'") AND "MMS" OR "BOEM" OR "DOI")

15

Quite frankly, we have struggled to make sense of this search string, since the syntax appears incorrect. There are several "AND" connections that are unclear, particularly in light of the stray parenthesis. Interpreted one way, this search could require a search for:

"OCS" OR "shelf' OR ("gulf' OR "GOM")

AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR " Policy" OR "SOP" OR "Proced*" OR "Evaluat*" OR "review" OR "analy*" OR "criteria" OR "test" OR "stud*" OR "event" OR "oil" OR "gas" OR "cause" OR "plan" OR " fail'" OR "safe*" OR "respons*"

AND "investiga*" OR "incident" OR "violat*" OR "enforce'" OR "OIR" OR "District Safety" OR "report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "compl*" OR "blow" OR "blowout" OR "drill*" OR "operat'")

AND "MMS" OR "BOEM" OR "DOI"

Alternatively, this search could be construed as

("OCS" OR "shelf' OR ("gulf' OR "GOM") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR " Policy" OR "SOP" OR "Proced*" OR "Evaluat*" OR "review" OR "analy*" OR "criteria" OR "test" OR "stud*" OR "event" OR "oil" OR "gas" OR "cause" OR "plan" OR " fail'" OR "safe*" OR "respons*" AND "investiga*" OR "incident" OR "violat*" OR "enforce'" OR "OIR" OR "District Safety" OR "report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "compl*" OR "blow" OR "blowout" OR "drill*" OR "operat'")

AND "MMS" OR "BOEM" OR "DOI"

Obviously, these are very different searches. We request clarification of what Anadarko seeks, but note the following points.

First, the United States will not agree to extend this search back to 2001. Rather, the United States will agree only to search back to April 20, 2005, five years before the Incident.

Second, the United States will not agree to extend this search to the Post-Incident period during this phase of discovery because post-Incident information is not relevant to Event, Source Control, or Quantification. The United States acknowledges that these topics may become relevant in later phases of the litigation and will discuss with Anadarko conducting reasonable searches for such information post-Incident when discovery related to the appropriate relief, including damages and penalty, begins.

Third, for the pre-Incident period, this discovery is only appropriately addressed to BOEMRE and, to a much lesser extent, the Coast Guard.

Fourth, the search appears to be overly broad, because it does not limit the search terms in any way related to deepwater oil exploration wells. The opening limiting phrase: "OCS" OR "shelf" OR ("gulf" OR "GOM") and the final limiting phrase "MMS" OR "BOEM" OR "DOI" when combined with one of the option terms in the center of the search term "Standard Operating Procedures" OR "Guideline", could pull in numerous documents completely unrelated to deepwater oil exploration in the Gulf of Mexico. The Department of the Interior includes many bureaus, including the Fish and Wildlife Service, which has duties related to wildlife in the Gulf of Mexico. As written, Anadarko's proposed search terms would pull in documents related to these duties rather than to the deepwater exploration for oil in the Gulf of Mexico. While later phases of discovery may make these documents relevant, they certainly are not relevant for purposes of the Event, Source Control, or Quantification phases of discovery.

Fifth, The United States has already agreed to conduct several searches that address the key elements of what we can discern Anadarko is seeking in its search:

BP RFP 10: ("DWOP" OR "Deepwater Operating Plan" OR "APD" OR ("Appl%" AND "Drill" OR "Modify" OR "By-Pass") OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "NTL" OR "Notice to Lessees" OR "Environmental Review") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR "Policy" OR "SOP" OR "Proced%" OR "Evaluat%")

BP RFP 5: ("Deepwater Horizon" OR "Deep water Horizon" OR "DWH") AND ("INC" OR "Incident of Non compliance" OR "Incident of Noncompliance" OR "Enforcement Action" OR "Audit" OR "Inspec*" OR "Infraction" or "Violation" or "Corrective Action")

BP RFP 14: "OIR" OR "District Safety" OR "Incident Report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "2005 Report" OR "2006 Report" OR "2007 Report" or "2008 Report" OR "2009 Report" OR "2010 Report"

BP RFP 23: ("NTL 2006 G21" OR "NTL 2007 N04" OR "NTL 2007 G12" OR "NTL 2008 N05" OR "CTCAC" OR "STCZAC" OR "Oil Pollution Act" OR "OPA" OR "Energy Policy Act" OR "EPAct" OR "NEPA" OR "Environmental Policy Act" OR "Marine Mammals Protection Act" OR "MMPA" OR "Clean Water Act" OR "CERCLA" OR "enforce" OR "violat%" OR "OSRP") AND ("Clean up" OR "Discharge" OR "Well Control" OR "Blowout" OR "Oil Spill Response Plan" OR "flow%" OR "sheen" OR "spill" OR "volume" OR "stbpd" OR "stpobp" OR "NRCP" OR "National Contingency Plan")

BP RFP 42:  ("Transocean" OR "TOI" OR "TO Rig" OR "TO MODU" OR "TO Vessel" OR "Halliburton") AND ("Audit" OR "Inspection" OR "INC" OR "Incident of Non-compliance" OR "Incidence of noncompliance" OR "Enforcement Action" OR "Corrective Action" OR "Citation" OR "Penalt%" OR "Fine" OR "Disciplinary Action" OR "Terminat%" OR "Suspect" OR "Reprimand" OR "Puni%" OR "IG" OR "Liab%" OR "investigat%" OR "compl%" OR "violat%" OR "test%")

Accordingly, we will be disinclined to add an additional search term, but will reserve final judgment until Anadarko clarifies the intended search.

5.    **Proposed Search Terms for APC RFP No. 37, Time Period 1/1/2001 - 1/31/2011 (All Agencies)**

("Request'" OR "RFI" OR "DWOP" OR "Deepwater Operating Plan" OR "APD" OR "Appl*") AND ("drill" OR " modify" OR "by-pass") OR "RPD" OR "APM" OR "ASP" OR "RBI" OR "AST" OR "RST" OR "standard" OR " procedures" OR " policies" OR "SOP" OR " practice" OR "guideline" OR "direction" OR " instruct" OR "report" OR "analy*") AND ("Gulf of Mexico" OR "GOM") AND ("well control" OR " blind shear" OR "cement*" OR "loss" OR "control" OR "temporary abandonment" OR "spill" OR "response")

The syntax of this search is also unclear, because the use of parentheses is not consistent.  Nonetheless, to the extent Anadarko is seeking to extend pre-Incident searches to agencies other than BOEMRE and to a limited extent the Coast Guard and NOAA, the United States will not agree for the reasons set forth above.  Moreover, as described above the vast majority of these search terms are already covered in the United States' search terms and the United States has agreed to extend those search terms through January 31, 2011 for all searches conducted on or after July 31, 2011.

6.    **Proposed Search Terms for APC RFP No. 38, Time Period 4/20/2010- 1/31/2011 (All Agencies)**

"National Commission" OR "commission" OR "nat'l" AND "Deepwater Horizon" OR "Deep water Horizon" OR "DWH" OR ("offshore" OR "drill'" OR "well" OR "control" AND ("Outer Continental" OR "OCS" OR "GOM" OR "gulf"))

The United States believes this additional search is unnecessary.  The United States has agreed to produce all non-privileged documents contained in the working files of the Oil Spill Commission and has agreed to conduct the following searches of the files of BOEM, USGS, CG, EPA, NOAA, and the Army Corps of Engineers for the time period Anadarko has identified:

BP RFP 55:  ("national commission" OR "Presidential Commission" OR "Bartlit") AND ("Report" OR "Amount and Fate" OR "Fate of the Oil" OR

"statement" OR "Presentation") AND ("Deepwater Horizon" OR "DWH" OR "MC252" OR "Mississippi Canyon Block 252")

BP RFP 62: ("National Commission" OR "Presidential Commission") AND ("Deepwater Horizon" OR "Deep water Horizon" OR "MC252" OR "DWH" OR "Mississippi Canyon Block 252")

The only substantive difference between the United States' searches and Anadarko's proposed search is the term "commission." Without limitation of "presidential" or "national", the use of just the word "commission" is too likely to result in an unduly high number of false hits. Accordingly, the United States will not agree to make this change to its search terms, particularly in light of the fact that Anadarko will receive all non-privileged documents in the files of the Oil Spill Commission itself.

7. **Proposed Search Terms for APC RFP No. 39, Time Period 1/1/2001 - 1131/2011 (BOEM)**

"BOEM" OR "BOEMRE" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe*" OR "BMP'" OR "manage*" OR "cement*" OR "well" OR "control" OR "operat*") AND ("Outer Continental" OR "OCS" OR "GOM" OR "Gulf")

The United States will run the following corrected search term for Anadarko Petroleum Corporation's Request for Production 39:

"BOEM%" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe%" OR "BMP" OR "cement%" OR "well" OR "manage*") AND ("Outer Continental" OR "OCS" OR "GOM" OR ("Gulf" AND "Mexico"))

The United States will run this search term for the period April 20, 2005 through January 31, 2011. Anadarko's proposal to expand the date range back to January 1, 2001 is inappropriately broad. Though the United States does not believe post-spill information regarding best practices is relevant, in the spirit of compromise, the United States will extend the search through January 31, 2011. The search will be conducted only on the files of BOEMRE custodians. The United States will produce responsive, non-privileged documents as soon as practicable. This search, however, cannot be completed prior to July 31, 2011.

\* \* \*

19

We hope that this letter has clarified the United States' responses and satisfied Anadarko's concerns regarding the searches we intend to discuss.  We look forward to hearing from you regarding the two search terms we could not interpret.  In the meantime, should you have any questions, please feel free to contact me.

Sincerely,

/s/ Sarah D. Himmelhoch

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery

cc:    Liaison Counsel

# EXHIBIT F

BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 213.680.6442
Direct Fax:    213.830.8642
tiffany.hedgpeth@bingham.com

August 5, 2011

**Confidential**

**Via Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
sarah.himmelhoch@usdoj.gov

Re:  **Follow Up to the United States' Letter of 7/29/2011 Concerning the United States' Responses to Anadarko Petroleum Corporation and Anadarko E&P Company LP's Discovery Requests**

Dear Sarah:

Thank you for your letter of July 29, 2011.  We appreciate the United States' good faith efforts to work with Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively the "Anadarko Parties") to resolve their concerns with the United States' responses to the Anadarko Parties' discovery requests.  While the United States' letter did clarify a number of issues, it appears there are a still a couple of outstanding issues that require additional clarification.

I.    **REQUESTS FOR ADMISSION**

The United States has denied almost all of the Anadarko Parties' Requests for Admission ("RFAs") and within those denials included such statements as "there were numerous informal communications," or "it is possible" that "email messages" were exchanged concerning certain subjects, and/or "it is possible" that there were "informal communications" between "technical personnel," etc. in support of its denials.  *See* the United States' responses to RFA Nos. 59, 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(j) and 63(k).  However, the United States has failed to identify any information, documents or persons to substantiate these statements.

If the United States does not have any evidence to substantiate the statements above, then those statements should be removed from the United States' responses.  To the extent such unsubstantiated statements provide the basis for the United States' denial of the Anadarko Parties' RFAs, the United States' responses should be amended to admit the RFA.

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

+1.213.680.6400
+1.213.680.6499
bingham.com

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 2

Additionally, as a basis for its denials to RFA Nos. 63(k), 63 (h), and 63(i), the United States identifies information that provides no support for its denial. For example, and as set forth in our prior letter, in response to RFA No. 63(k), the United States admits that it has no evidence that an Anadarko employee talked with or received a message from a BP employee or contractor *regarding the decision to bypass* the Sperry Sun meters on April 20, 2010, but still denies the RFA. The only specific information provided by the United States in support of this denial was a statement concerning Anadarko's ability to access Insite Anywhere, which allegedly reflected that the Sperry Sun meter was no longer registering a reading after 9:08 pm on April 20, 2010. Whether or not Anadarko had the ability to access Insite Anywhere and was able to determine that the Sperry Sun meter was no longer registering a reading after 9:08 pm has nothing to do with whether an Anadarko employee talked with or received a message from a BP employee or contractor *regarding the decision to bypass*. In its 7/29 letter, the United States asserts that this information is circumstantial evidence that such communications may have existed and have not yet been discovered.

The Anadarko Parties understand that the United States' investigation is ongoing and that discovery is also ongoing. However, this does not allow the United States to refrain from providing appropriate responses to the Anadarko Parties' RFAs under the Federal Rules of Civil Procedure. The United States can supplement its responses at any time should its ongoing investigation uncover evidence that would allow the United States to properly deny one or more of the Anadarko Parties' RFAs. As the United States can supplement its responses at a later date, if it obtains new evidence, it must respond to the Anadarko Parties' RFAs based on the information presently available. Speculation cannot provide the basis for a party's denial of an RFA, as it appears to have here.

Accordingly, the Anadarko Parties request that the United States revise its responses to the Anadarko Parties' RFAs to reflect the information available and known to the United States at this point in time. If the United States is unwilling to amend its responses as set forth above and/or substantiate the statements discussed above, please let us know so that we may raise this issue with the Magistrate.

## II.   Interrogatory No. 17

In its 7/29 letter, the United States asserts that the Anadarko Parties are "insisting on far more detail than is appropriately required under the Federal Rules of Civil Procedure," in response to Interrogatory No. 17. On the contrary, the Anadarko Parties have asked the United States to, for each response that is anything but an unqualified admission:

> [S]tate each fact in support of your response, identify each person with knowledge of each such fact, and identify each document that supports your response.

In response to a number of the Anadarko Parties' RFAs, the United States has denied the RFA and then in response to Interrogatory No. 17, directed the Anadarko Parties to the "foregoing responses to the Requests for Admission." This is extremely problematic because a number of the United States' RFA responses fail to identify any facts, persons,

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 3

or documents in support of the United States' response.  In addition, many of the United States' denials appear to be based on such statements as "there were numerous informal communications," "it is possible" that "email messages" were exchanged concerning certain subjects, and/or "it is possible" that there were "informal communications" between "technical personnel," etc.  *See* above.  However, in response to Interrogatory No. 17, the United States has failed to specifically identify any of these communications or emails or persons that either participated in such communications or emails or persons who have knowledge of such communications or emails.

In addition, pursuant to Rule 33(d), the United States has directed the Anadarko Parties to all of the documents produced in response to APC's and AE&P's Request for Production of Documents, as part of its response to Interrogatory No. 17.  This is an improper use of Rule 33(d).  As the United States is aware, although Rule 33(d) does allow a responding party to provide business records in response to an interrogatory, such response is only proper if the answer can be determined by reviewing a "party's business records" and "the burden of deriving or ascertaining the answer will be substantially the same for either party."  FED. R. CIV. P. 33(d).  However, if the responding party chooses to invoke Rule 33(d), they must specify "the records that must be reviewed, in *sufficient detail* to enable the interrogating party to locate and identify them as readily as the responding party could. . . ." *Id.* (emphasis added).  The United States has failed to provide *any* detail.  This is improper.  "Answering an interrogatory by generally referring to information or documents previously provided does not satisfy the requirement that the answer must be made fully, in writing."  *KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC*, 2011 WL 765925, at *3 (M.D. La. 2011).

There is no merit to the United States' contention that the Anadarko Parties are "insisting on far more detail than is appropriately required" under the Federal Rules of Civil Procedure, in response to Interrogatory No. 17.  Accordingly, the Anadarko Parties request that, where the United States refuses to amend its RFA responses to provide proper admissions, the United States supplement its responses to include the information requested in Interrogatory No. 17.  If the United States is unwilling to amend and supplement its response to Interrogatory No. 17, let us know so that we may raise the issue with the Magistrate.

### III.    Requests for Production of Documents

In the Anadarko Parties' 7/22 letter, the Anadarko Parties provided the United States with seven proposed searches that the Anadarko Parties believed would capture all of the documents requested in APC's and AE&P's Requests for Production of Documents ("RFPs").  The Anadarko Parties undertook this effort because although there were some similarities between the Anadarko Parties' RFPs and the BP Parties' RFPs referenced by the United States, there were some significant differences.

Furthermore, although some of the proposed searches may have seemed overbroad, as we explained in our 7/22 letter, the Anadarko Parties grouped together many of the RFPs in an attempt to limit the number of additional searches the United States would need to run in order to capture all of the documents requested in the Anadarko Parties' RFPs.  It was the

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 4

Anadarko Parties' hope and intent that the seven proposed searches would simplify the
United States' efforts and response to the Anadarko Parties. The Anadarko Parties have
reviewed the United States' comments to the proposed searches. Many of the United
States' comments and categorizations of the Anadarko Parties' proposed searches
mischaracterize the Anadarko Parties' intent and information the Anadarko Parties are
seeking.

      a.     <u>Search Segment 1.a-e (APC's RFP Nos. 1-13 and AE&P's RFP Nos. 1-11)</u>

In reviewing the United States' 7/29 letter it references, for the first time, additional BP
RFPs that may be responsive to the Anadarko Parties' RFPs, specifically APC's RFP Nos.
1-13 & AE&P's RFP Nos. 1-11. In an attempt to simplify this issue, the Anadarko Parties
have looked at each of the search terms contained in newly cited BP RFPs to determine
whether, individually or collectively, they will capture the documents requested by the
Anadarko Parties, specifically APC's RFP Nos. 1-13, 17-21 and AE&P's RFP Nos. 1-11.
Based on this review, it appears that the search terms contained in the newly cited BP RFPs
should capture most of the documents requested in APC's RFP Nos. 1-13 and AE&P's
RFP Nos. 1-11.

However, the Anadarko Parties are concerned whether the search terms used in the newly
cited BP RFPs will capture *all* of the documents requested by the Anadarko Parties. For
example, APC's RFP Nos. 1-13 and AE&P's RFP Nos. 1-11 largely concern the basis for
the United States' allegations against APC and AE&P, specifically the United States' basis
for alleging that APC and AE&P are "owners," "operators," "persons in charge," etc. In
reviewing each of the search terms used for the BP RFPs cited in Section F. 1 of the United
States' 7/29 letter, the search terms contained in BP RFP No. 24 seem the most likely to
address APC's RFP Nos. 1-13 and AE&P's RFP Nos. 1-11. However, in reviewing the
language of BP's RFP No. 24, it appears to be limited to response actions. BP RFP No. 24
requests:

> All documents that constitute, contain, describe or refer to any guideline,
> policy or practice for use in determining the adequacy of the conduct or
> actions of a Responsible Party in connection with the requirements of the
> Oil Pollution Act of 1990 related to the *response to an incident* for which
> that Act creates legal obligations.

*See* BP RFP No. 24 (emphasis added). The United States' proposed search terms for BP
RFP No. 24 are:

> ("O-414" or "O-49" OR "O-415" OR "O-452" OR "O-459" OR "O-460"
> OR "O-428" OR "O-429" OR "O-14" OR "O-553" OR "Site Specific
> Seg# 4879 HIPS" OR "Site Specific Seg # 11015" OR "Site Specific MP
> 255" OR "Site Specific DC 177" OR "Site Specific DC 133" OR "Site
> Specific MC 252" OR "Oil Pollution Act" OR "OPA" OR "Oil Spill
> Response Plan" OR "OSRP" OR "Area Contingency Plan" OR "NCP" OR
> "National Contingency Plan" OR "Clean Water Act" OR "CWA" OR
> "CERCLA") AND ("Responsible Party" OR "Cleanup" OR "Damages"

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 5

> OR "Liability" OR "Obligation" OR "Fine" OR "Restitution" OR
> "Payment" OR "Fee" OR "Penalty" OR "Damage Assessment" OR
> "spinner" OR "flowmeter" OR "velocimetry" OR "*BOPD*" OR
> "*BPD*" OR "bbl*" OR "flow*" OR "*mbd*" OR "*wcd*" OR "worst
> case discharge" OR "leak*" OR "kink" OR "gal*/min*" OR "gal*/day" OR
> "barrel*" OR "b/d" OR "bbl" OR "bbl/d" OR "Bopd" OR "Bpd" OR
> "collect*" OR "flare" OR "flow" OR "flow rate" OR "flowrate" OR
> "mass balance" OR "mbd" OR "oil rate" OR "oil on water" OR "outflow"
> OR "plume" OR ("remote*" AND "operat*" AND "vehicle") OR
> "reservoir" OR "riser" OR "ROV" OR "sheen" OR "skim*" OR "spill"
> OR OR "velocity" OR "volume" OR "stbpd"))[1]

Although the United States has agreed to search documents from April 20, 2005-April 20, 2010 in response to BP RFP No. 24, because the underlying request contains the language "related to the response to an incident," the Anadarko Parties are concerned that the search terms used by the United States may limit the responsive documents to those documents "related to the response to an incident."

Given the United States' contentions thus far, it would appear likely that the documents that support the United States' allegations against APC and AE&P would not be limited to documents "related to the response to an incident." In addition, the search parameters for BP RFP No. 24, as identified by the United States, would only include documents up to April 20, 2010. In other words, while it appears that the search terms for BP RFP No. 24 would not capture documents unrelated to a response to an incident, it also appears that to the extent APC's and AE&P's liability is based on its response to the incident, those documents would also be excluded given the April 20, 2010 cutoff date.

Nevertheless, the Anadarko Parties acknowledge that they are not familiar with all of the search terms listed above and that it may be possible that the search terms above would capture documents unrelated to a response to an incident and documents generated post incident. Therefore, the Anadarko Parties request that the United States confirm that all documents in its possession, custody or control responsive to APC's RFP Nos. 1-13 and AE&P RFP Nos. 1-11 from April 20, 2005-January 31, 2011 have been or will be produced.[2]

---

[1] Please note that there appears to be a stray closed parentheses following the final term "stbpd." This list of search terms was copied from the original search terms provided to BP on 6/20/2011.

[2] The Anadarko Parties understand that BP RFP No. 54 may also capture some of the documents responsive to the Anadarko Parties' RFPs. However, the Anadarko Parties are concerned with the United States' refusal to include "APC" and "AEP" in its search terms. Given that additional iterations of the other defendants have been included, e.g., "BP" and

(Footnote Continued on Next Page.)

Bingham McCutchen LLP
bingham.com

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 6

       b.      Search Segment 1.a-e (APC's RFP Nos. 20-21)

The Anadarko Parties are also concerned with BP RFP Nos. 68, 73, and 75 referenced in response to APC's RFP Nos. 20 and 21 concerning cap and containment efforts.  In the United States' 7/29 letter, the search terms listed for BP RFP No. 75 indicate that the search terms include the parameter, linking the initial terms and latter terms, with "cap%." Thus, such a search would yield results including the terms "cap," "capping," "capped," "capping stack," and "capping efforts."  However, the United States' 6/20 response to BP regarding BP RFP No. 75 includes the term "capping stack" exclusively.  This discrepancy is significant.  The United States' 7/29 letter suggests that the search terms for BP RFP No. 75 are broader than they are when in fact they would be limited to documents including the term "capping stack" only.  Please confirm that the linking parameter "cap%" will be used, as "capping stack" would improperly limited the number of documents responsive to APC's RFP Nos. 20 and 21.

       c.      Proposed Search Terms for APC RFP Nos. 32-36 (DOI/BOEM/CG, 4/20/2005-4/20/2010)

The United States asserts that it does not understand the Anadarko Parties' proposed search terms for APC's RFP Nos. 32-36 because of a stray parentheses at the end of the suggested search (following "DOI").  Please note, the Anadarko Parties' pdf copy of the July 22, 2011 letter does not include such a parentheses.  However, the Anadarko Parties agree that there appears to be an unnecessary "AND" connector between "respons*" and "investiga*" in the middle of this suggested search string; this "AND" should be an "OR."

We also understand that, as written, the Anadarko Parties' proposed search may have appeared overly broad as it could have potentially yielded results unrelated to deepwater drilling.  Accordingly, the Anadarko Parties have narrowed its proposed search terms and included them below:

      "OCS" OR "shelf" OR ("gulf" OR "GOM") AND ("deepwater" NEAR "drill*") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR "Policy" OR "SOP" OR "Proced*" OR "Evaluat*" OR

_____

(Footnote continued from Previous Page.)

"MOEX," and the United States has failed to adequately explain its assertion that "AEP" is a "common enough acronym" and offers no explanation for not including "APC," it seems only fair and appropriate to include "APC" and "AEP" in any searches that involve the names of defendants.  Moreover, given that any documents responsive to BP RFP No. 54, for example, are limited to the "MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "DWH" it appears that any hits for "APC" and/or "AEP" would most likely be relevant.

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 7

"review" OR "analy*" OR "criteria" OR "test" OR "stud*" OR "event"
OR "oil" OR "gas" OR "cause" OR "plan" OR "fail*" OR "safe*" OR
"respons*" OR "investiga*" OR "incident" OR "violat*" OR "enforce*"
OR "OIR" OR "District Safety" OR "report" OR "Panel Report" OR
"Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR
"Incident of Non-compliance" OR "compl*" OR "blow" OR "blowout"
OR "drill*" OR "operat*") AND "MMS" OR "BOEM" OR "DOI"

   d.    Proposed Search Terms for APC RFP No. 37

The Anadarko Parties agree that there does appear to be a stray parentheses following
"analy*" in the suggested search terms for APC RFP No. 37. We also understand that the
search term time period will not be extended to include 1/1/2001, but that the search will
extend as far back as 4/20/2005 and will include BOEM and the Coast Guard.

   e.    Oil Spill/National Commission Working Files - APC RFP No. 38

The Anadarko Parties appreciate the United States' efforts to produce all non-privileged
documents contained in the working files of the Oil Spill Commission, as well as conduct
searches of the BOEM, USGS, CG, EPA, NOAA, and Army Corps of Engineers' files.
The Anadarko Parties request that the United States provide a date by which such
documents will be produced.

   f.    Proposed Search Terms for APC RFP No. 39

In its 7/29 letter, the United States stated that it would run the following corrected search
for APC RFP No. 39:

"BOEM%" OR "MMS" AND ("American Petroleum Institute" OR
"API") AND ("safe%" OR "BMP" OR "cement%" OR "well" OR
"manage*") AND ("Outer Continental" OR "OCS" OR "GOM" OR
("Gulf" AND "Mexico"))

However, this search inexplicably leaves out the terms "control" and "operat*" that were
included within the middle parenthetical (following the term "manage*" above) in the
Anadarko Parties' proposed search terms. The Anadarko Parties request clarification as to
why "control" and "operat*" were left out of the United States' proposed search terms.
The Anadarko Parties believe that these terms are significant given they may generate
documents referring to the operators and/or persons in control of the Macondo Well and/or
*Deepwater Horizon*. As it is the Anadarko Parties' contention that APC and AE&P were
not operators and/or in control of the Macondo Well or the *Deepwater Horizon*, and it
appears to be the United States' contention that the Anadarko Parties were operators and/or
in control of the Macondo Well and/or *Deepwater Horizon*, these documents would be
especially relevant. The Anadarko Parties suggest the following revised search terms:

Sarah D. Himmelhoch, Esq.
August 5, 2011
Page 8

"BOEM%" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe%" OR "BMP" OR "cement%" OR "well" OR "manage*" OR "control" OR "operat*") AND ("Outer Continental" OR "OCS" OR "GOM" OR ("Gulf" AND "Mexico"))

We appreciate your continued efforts to work with us toward a resolution of the issues discussed above. We request that you respond to our questions and concerns outlined above by Wednesday, August 10, 2011 in order for the Anadarko Parties to determine whether these issues will need to be raised with the Magistrate. Should you have any questions or wish to discuss this matter further, please feel free to call me at (213) 680-6442.

Sincerely yours,

*for Tiffany Hedgpeth*

Tiffany R. Hedgpeth

# EXHIBIT G



BSG:SDH:KM
90-5-1-1-10026

**U.S. Department of Justice**
**Environment and Natural Resource**
**Division**

_P.O. Box 7611_
_Washington, DC 20044_
_202-514-0180_
_Sarah.Himmelhoch@usdoj.gov_

August 10, 2011

BY ELECTRONIC MAIL

Tiffany R. Hedgpeth, Esq.
Bingham & McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106
tiffany.hedgpeth@bingham.com

       Re:    _In Re Deepwater Horizon_, MDL 2179

Dear Ms. Hedgpeth:

     I write in response to your letter of August 5, 2011.  Your letter addressed a number of topics, each of which I will take in turn.

**I.**     **Requests for Admission**

     Anadarko objects to the United States' denials of its Requests for Admissions ("RFAs") but mischaracterizes the United States' responses.  For example, it states that the United States responds merely that "it is possible" that there were informal exchanges, as if that were the full basis for the United States' denials of its RFAs.

     Virtually all the RFAs that Anadarko identifies as deficient in this third follow-up to our responses include the term "Communications." Anadarko defines Communications as follows:

> "Communication," whether singular or plural, means any transmission of
> information by one or more persons to one or more persons by any means,
> including, without limitation, telephone conversations, letters, telegrams,
> teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and
> face-to-face conversaionts; "communication" includes all documents and
> electornaically stored information ("ESI") containing, summarizing, or
> memorializing any communication.

RFAs 59-61 request admissions that there was no Communication – as defined above – between the Anadarko defendants and persons on or operating the Deepwater Horizon on April 20, 2010.

1

Given the breadth of the definition of communications, the United States properly responded to Anadarko's RFA. For example, RFA 60 states

> Admit that you have no evidence of Communications on April 20, 2010 regarding the Macondo Well between any of the Anadarko Non Operating Defendants and any persons or entity operating the *Deepwater Horizon* or drilling the Macondo Well.

The United States' response, in full, after stating its objections, is as follows:

> Denied. Documentary evidence indicates that on April 20, 2010, Anadarko Defendants accessed daily drilling reports, mud log reports, and wireline information related to the Macondo Well that was uploaded by BP and/or its contractors. In addition, on April 20, 2010, the Anadarko Defendants communicated with BP to convey their approval to temporarily abandon the Macondo Well. Lastly, the United States is aware of numerous informal communications between technical personnel at Anadarko and BP, and it is possible that discussions concerning the Macondo Well occurred on April 20, 2010.

Similarly, Anadarko complains that the United States did not fully respond to a number of subparts for RFA No. 63, which contains twelve subparts, all of which relate back to the initial sentence:

> Admit that you have no evidence that the Anadarko Non Operating party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well:

This introductory clause requires that the United States find (1) no evidence (2) of any involvement (3) in the broadly defined Communications (4) leading to decisions specified in each of the twelve subparts. Accordingly, where the United States believes that Anadarko does have some involvement with the specified decisions, we have denied the RFA "except as admitted herein." We have explained our response, however, and identified the pertinent documents and facts that support our response. Our response to subpart (c) is representative:

> Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well: . . . (c) Any cement recipe for the Macondo Well.

> RESPONSE: Denied, except as expressly admitted herein. The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision for any cement recipe for the Macondo Well. However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing. For example, Anadarko received and

approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install the long-string casing, which has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. Anadarko also was provided with and downloaded a Daily Operations Report for April 17, 2010, which informed Anadarko, among other things, the "24 Hr. Forecast" was to "RUN 7" X 9 5/8" CASING, CEMENT SAME," and that the "Current Status" was "DISPLACING CEMENT W/14.0 PPG MUD." In addition, the Daily Operations Reports dated April 16, 17 and 18, 2010, informed Anadarko, among other things, about "Materials/Consumption" of "Cement Lite Fill," "Cement," "Cement Class G" and "Barite," including the amount of sacks on hand. Further, in the Daily Operations Report dated April 19 and downloaded by Anadarko, there is detailed information about the cement recipe. There were also numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

As this one example demonstrates, Anadarko mischaracterizes the scope and detail of the United States' responses. Given the breadth of Anadarko's requests and definitions, it should not be surprising that the United States does see (1) some evidence (2) supporting involvement of the Anadarko Defendants in (3) the broadly defined Communications (4) leading to decisions regarding the enumerated activities.

Anadarko further suggests that an erroneous admission can subsequently be revised and supplemented, as can other discovery responses such as interrogatories. (August 5, 2011 letter pg. 2). However, Federal Rule of Civil Procedure 36(b) unambiguously provides to the contrary. *See* Fed. R. Civ. P. 36(b) (a matter admitted under this rule is conclusively established and requires leave of court to withdraw or amend; leave granted only if court believes it would promote presentation of the merits of the action and if withdrawal will not prejudice requesting party.)

## II.    Interrogatory No. 17

Anadarko complains that the United States failed to "identify any facts, persons, or documents in support of the United States' responses" and adds that this is "extremely problematic." The United States has identified or described relevant documents in response to RFAs Nos. 59, 60, 61, 62, 63(a), 63(b), 63(c), 63(d), 64(e), 63(f), 63(h), 63(i), 63(j), and 63(k), 64, 65, 66, 67, 70, 71 and 72. It has given a cogent factual basis for any denial, and even in those responses where it has denied the RFA, it has provided partial admissions and a detailed explanation for the denial. Most of the documents cited in the United States' responses have been produced by Anadarko, marked as exhibits and used in numerous depositions and the United States believes that the description provided is sufficient for Anadarko to locate the documents. If, however, Anadarko needs bates numbers or exhibits numbers for specific documents, kindly let us know which of the referenced documents is at issue.

3

### III.   Proposed Search Terms for Requests for Production of Documents

#### A. Communications regarding AE&P and APC and "Cap%"

Anadarko raises a concern that the search terms the United States proposed in response to BP's requests for production are insufficient because they relate to responses to an incident and Anadarko is seeking the basis of APC and AE&P's liability.  We agreed in our last letter to add an additional search term specifically to address this concern raised by Anadarko:

> ("AE&P" OR "operat*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen*" OR "fail*" OR "care*" OR "violat*" OR "authori*") AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

This search will be conducted of EPA, BOEMRE, and Coast Guard files for the period April 20, 2010 through January 31, 2011.

In your letter you reiterate your request to include "APC" and "AEP" in the search terms. As explained in my prior letter, we have seen no indication that these acronyms were widely used by the agencies conducting the searches.  IN the spirit of compromise, however, we will agree to test the search string with these additional search terms and, if the results do not indicate a high false positive rate, will use the following amended search term:

> ("AE&P" OR "AEP" OR "APC" OR "operat*" OR "owner" OR "lessee" OR "person in charge" OR "vessel" OR "facility" OR "negligen*" OR "fail*" OR "care*" OR "violat*" OR "authori*") AND ("MC252" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Deepwater Horizon" OR "Deepwater Horizon" OR "DWH")

This search will be conducted of EPA, BOEMRE, and Coast Guard files for the period April 20, 2010 through January 31, 2011.  As stated in my prior letter, the United States will make reasonable efforts to complete this search on or before August 31, 2011, but cannot commit to this date until it has a better sense of when the production of documents from searches already underway is completed.

You also raise a question regarding whether the United States is really using "cap%" as one of its search terms.  As noted in my July 19, 2011 letter to Mr. Gasaway, the United States did intend to use "cap%" as a search term.  For certain agencies, we are receiving a vast number of false positives (for an example, see the attached list of the first 2,000 false hits).  Therefore, we are now using the search terms "cap" and "capp%."

**B. Proposed Search Terms for APC RFPs Nos. 32-36**

We appreciate your clarification of the search terms to correct the misplaced "AND." You have provided a revised search term and clarified that you seek this search only of the Coast Guard, BOEMRE, and DOI. While we appreciate your narrowing the search criteria, we continue to believe that your proposed search is covered by the following searches already being conducted:

BP RFP 10: ("DWOP" OR "Deepwater Operating Plan" OR "APD" OR ("Appl%" AND "Drill" OR "Modify" OR "By-Pass") OR "RPD" OR "APM" OR "ABP" OR "RBP" OR "NTL" OR "Notice to Lessees" OR "Environmental Review") AND ("Standard Operating Procedures" OR "Guideline" OR "Policies" OR "Policy" OR "SOP" OR "Proced%" OR "Evaluat%")

BP RFP 5: ("Deepwater Horizon" OR "Deep water Horizon" OR "DWH") AND ("INC" OR "Incident of Non compliance" OR "Incident of Noncompliance" OR "Enforcement Action" OR "Audit" OR "Inspec*" OR "Infraction" or "Violation" or "Corrective Action")

BP RFP 14: "OIR" OR "District Safety" OR "Incident Report" OR "Panel Report" OR "Panel Investigation" OR "INC" OR "Incident of Noncompliance" OR "Incident of Non-compliance" OR "2005 Report" OR "2006 Report" OR "2007 Report" or "2008 Report" OR "2009 Report" OR "2010 Report"

BP RFP 23: ("NTL 2006 G21" OR "NTL 2007 N04" OR "NTL 2007 G12" OR "NTL 2008 N05" OR "CTCAC" OR "STCZAC" OR "Oil Pollution Act" OR "OPA" OR "Energy Policy Act" OR "EPAct" OR "NEPA" OR "Environmental Policy Act" OR "Marine Mammals Protection Act" OR "MMPA" OR "Clean Water Act" OR "CERCLA" OR "enforce" OR "violat%" OR "OSRP") AND ("Clean up" OR "Discharge" OR "Well Control" OR "Blowout" OR "Oil Spill Response Plan" OR "flow%" OR "sheen" OR "spill" OR "volume" OR "stbpd" OR "stpobp" OR "NRCP" OR "National Contingency Plan")

BP RFP 42: ("Transocean" OR "TOI" OR "TO Rig" OR "TO MODU" OR "TO Vessel" OR "Halliburton") AND ("Audit" OR "Inspection" OR "INC" OR "Incident of Non-compliance" OR "Incidence of noncompliance" OR "Enforcement Action" OR "Corrective Action" OR "Citation" OR "Penalt%" OR "Fine" OR "Disciplinary Action" OR "Terminat%" OR "Suspect" OR "Reprimand" OR "Puni%" OR "IG" OR "Liab%" OR "investigat%" OR "compl%" OR "violat%" OR "test%")

Adding your additional search terms at this time will result in a large volume of duplication thereby increasing the United States' collection, review and production costs without substantial additional information being identified. Accordingly, the United States will not agree to conduct this additional search.

### C.     Oil Spill Commission Records

You inquire when Anadarko will receive the records of the Oil Spill Commission.  We have already produced the vast majority of the Oil Spill Commission records and expect to complete production of the non-privileged records by August 31, 2011.  There may be some additional documents produced as we complete our privilege review and determined whether any documents have been inadvertently withheld as privileged.

### D.     Proposed Search Terms for APC RFP No. 39

As stated in my prior letter, the United States will run the following corrected search term for Anadarko Petroleum Corporation's Request for Production 39:

"BOEM%" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe%" OR "BMP" OR "cement%" OR "well" OR "manage*") AND ("Outer Continental" OR "OCS" OR "GOM" OR ("Gulf" AND "Mexico"))

You argue that we "inexplicably" leave out the terms "control" and "operate."  We believe those search terms are adequately covered by our other numerous search strings.  Nonetheless, in the spirit of compromise, we will amend the search to read:

"BOEM%" OR "MMS" AND ("American Petroleum Institute" OR "API") AND ("safe%" OR "BMP" OR "cement%" OR "well" OR "manage%" OR "control" OR "operat%") AND ("Outer Continental" OR "OCS" OR "GOM" OR ("Gulf" AND "Mexico"))

\* \* \*

We hope that this letter has clarified the United States' responses and satisfied Anadarko's concerns.  In the meantime, should you have any questions, please feel free to contact me.

Sincerely,

/s/ Sarah D. Himmelhoch

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery

cc:     Liaison Counsel

6