## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION: J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to: | | : | |
| Case No. 2:10-cv-04536 | | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## UNITED STATES' MEMORANDUM IN RESPONSE TO SIERRA CLUB, INC.'S OBJECTIONS TO ORDER OF THE MAGISTRATE JUDGE DENYING ITS MOTION TO INTERVENE [REC. DOC. 3450]

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  Other Than Timeliness, Sierra Club Fails to Meet the Requirements for Intervention as of
    Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.      Sierra Club's "Interest" in the Enforcement Action is Not Sufficiently Direct,
              Substantial or Legally Protectable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.      Sierra Club Cannot Demonstrate Impairment of a Legally Protectable Interest . 12

       C.      Sierra Club Cannot Establish that Its Interests May Be Inadequately
              Represented by the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1)     Sierra Club has failed to demonstrate that the United States' statutorily-
                    defined objectives in this enforcement action are different from the Sierra
                    Club's interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2)     Sierra Club's alleged adversity to the United States fails to demonstrate
                    that representation may be inadequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                i.     The role of federal agencies and officials in approving BP's OSRP
                      and dispersant application does not demonstrate adversity of
                      interest on the part of the United States . . . . . . . . . . . . . . . . . . . . . 18

                ii.    The United States' adverse posture to Sierra Club in other
                      litigation challenging agency action related to deepwater drilling
                      does not demonstrate its adversity to Sierra Club in this
                      enforcement action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.  The Magistrate Did Not Err in Exercising her Discretion to Decline Sierra Club's Request for
    Permissive Intervention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Assoc. of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) . . . . . . . . . . . . . . . . . . . . . . 6

*Assoc. Indus. of Ala., Inc. v. Train*, 543 F.2d 1159 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 20

*Atlantis Dev. Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . 21

*Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21, 24

*Carmona v. Wright*, 233 F.R.D. 270 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Castillo v. Frank*, 70 F.3d 382 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531 (7th Cir. 1987) . . . . . . . 12

*Clarke v. Securities Indus. Ass'n*, 479 U.S. 388 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Donaldson v. United States*, 400 U.S. 517 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Edwards v. City of Houston*, 37 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18

*Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189 (3d Cir. 1993) . . . . . . . . . . . . . . 16

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*Gwaltney v. Smithfield, Ltd v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) . . . . . . . . . . . 8

*Heckler v. Chaney*, 470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*,
   712 F. Supp. 1019 (D. Mass. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Kneeland v. Nat'l Collegiate Athletic Assoc.*, 806 F.2d 1285 (5th Cir. 1987) . . . . . . . . . . . . . . 23

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13 (1st Cir. 2001) . . . . . . . . . . . . . . . 17, 21

*New Orleans Public Serv. Inc. v. United Gas Pipeline Co. (NOPSI)*,
    732 F.2d 452 (5th Cir. 1984) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 23, 24

*Perles v. Kagy*, 394 F. Supp. 2d 68 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Ross v. Marshall*, 456 F.3d 442 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007) . . . . . . . . . . . . . . . . 16

*Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416 (10th Cir. 1984) . . . . . . . . . . . . . . . 22

*Sierra Club v. Epsy*, 18 F.3d 1202 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Sierra Club v. Morton*, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Engineers*,
    101 F.3d 503 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Stotts v. Memphis Fire Dep't*, 679 F.2d 579 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sunrise Shipping, Ltd. v. M/V American Chemist*, Civ. No. 96-2849,
    1997 WL 289349 (E.D. La. May 29, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) . . . . . . . . . . . . . . . 4, 16, 17

*United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte County*,
    754 F.2d 855 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992) . . . . . . . . 7

*United Nuclear Corp. v. Cannon*, 696 F.2d 141 (1st Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) . . . . . . 15, 17

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. South Florida Water Management District (SFWMD)*,
    922 F.2d 704 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*United States v. Tex. Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503
   (N.D. Tex.), *aff'd*, 952 F.2d 399 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*WFK & Assocs., LLC v. Tangipahoa Parish*, Civ. No. 06-6684, 2007 WL 1537633
   (E.D. La. May 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATE CASES**

*Holly Ridge Assocs., LLC v. N.C. Dep't of Envt. & Natural Res.*,
   648 S.E.2d 830 (N.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES**

28 U.S.C. § 636(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 636(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

33 U.S.C. § 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 19

33 U.S.C. § 1321(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

33 U.S.C. § 1321(b)(7)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

33 U.S.C. § 1321(b)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

33 U.S.C. § 1321(j)(5)(H) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

33 U.S.C. § 1321(j)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

33 U.S.C. § 1365 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

33 U.S.C. § 1365(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

33 U.S.C. § 1365(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

33 U.S.C. § 1365(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

33 U.S.C. § 2702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

33 U.S.C. § 2702(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

33 U.S.C. § 2702(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2702(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2702(b)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

33 U.S.C. § 2706(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

33 U.S.C. § 2706(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2706(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

33 U.S.C. § 2712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

33 U.S.C. § 2752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

43 U.S.C. 1332(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL RULES**

Fed. R. Civ. P. 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 24(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 12

Fed. R. Civ. P. 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 24(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**LOCAL COURT RULES**

L.R. 72.1(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL REGULATIONS**

15 C.F.R. § 990.51(b)(ii) & (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

30 C.F.R. § 254.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

63 Fed. Reg. 24,796 (May 5, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

v

**TREATISES**

7C Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure
  § 1909 (3d ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12 Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure
  § 3069 (2d ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## INTRODUCTION

In support of its objections, Sierra Club makes virtually the same arguments as in its opening memorandum and reply, relying on the same precedent considered, distinguished and ultimately rejected by the Magistrate.  But Sierra Club cannot dispute that while Congress sometimes provides groups such as Sierra Club with a right to intervene or bring an independent claim, it has not done so here.  Section 311 of the Clean Water Act, 33 U.S.C. § 1321, and the natural resource damage portions of the Oil Pollution Act, 33 U.S.C. §§ 2702 and 2706, both reflect Congress' clear intent to entrust enforcement of such provisions wholly to the government.  A would-be intervenor's incapacity to prosecute its own cause of action may not, as a matter of law, be fatal to its motion for intervention into a government action, but that incapacity creates a substantial hurdle to overcome prior to satisfying either of the Rule 24 tests for intervention.

Sierra Club argues that it seeks to hold defendants accountable to the full extent of the law, deter future incidents, and ensure the restoration of the Gulf Coast ecosystem.  Yet as the Magistrate recognized, this interest is one that is shared by the public generally, and does not support intervention in this case.  Sierra Club's desire for a "seat at the table" to ensure that its interests in the restoration of the Gulf are represented also does not provide a basis for intervention.  That Sierra Club has the opportunity to comment on any proposed settlement on an equal footing with other interested parties is, as the Magistrate found, legally sufficient.  Finally, the Magistrate correctly found that the Sierra Club has not demonstrated that the United States may not adequately represent its interests.  While defendants may try to bring in evidence of the regulatory actions taken by federal officials and agencies in connection with deepwater drilling and the oil spill response, that does not erode the United States' statutory obligation to obtain

civil penalties commensurate with the defendants' violations and to demonstrate that defendants are liable without limitation under OPA.  In short, "intervening party status is not required to permit Sierra Club to present its positions" to the Court.  Order Regarding the Motion of the Sierra Club, Inc., to Intervene [Rec. Doc. 3065], June 28, 2011 ("Order") at 21.

For these reasons, more fully described herein, and in light of the deferential review standard afforded to a magistrate's ruling on a non-dispositive matter, this Court should deny Sierra Club's motion.

## STANDARD OF REVIEW

Federal law confers broad discretion on a magistrate judge in the resolution of non-dispositive matters.  *See* Fed. R. Civ. P. 72(a)[1]; 28 U.S.C. § 636(b)(1); *WFK & Assocs., LLC v. Tangipahoa Parish*, Civ. No. 06-6684, 2007 WL 1537633, at *1 (E.D. La. May 23, 2007) (citing Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)).  A magistrate's ruling on a non-dispositive motion can be set aside or modified only when the ruling is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  *See also* 28 U.S.C. § 636(b)(1)(A); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995).  Denial of a motion for intervention is considered a non-dispositive motion properly reviewed under the "clearly erroneous" standard of Rule 72(a).  *Sunrise Shipping, Ltd. v. M/V American Chemist*, Civ. No. 96-2849, 1997 WL 289349, at *1 (E.D. La. May 29, 1997). *See also Perles v. Kagy*, 394 F. Supp. 2d 68, 70 n.6 (D.D.C. 2005) (citing cases and agreeing with other district courts' application of a clearly erroneous standard to a magistrate's denial of a right to intervene).

---

[1] Fed. R. Civ. P. 72(a) provides for the referral to the magistrate judge of pretrial matters that are not dispositive of a party's claim or defense.  Pursuant to L.R. 72.1(A), contested motions to intervene are automatically referred to the magistrate for resolution.

The non-dispositive motion review standard is "highly deferential," *Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006), and conclusions of law should not be overturned unless the magistrate "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* ("Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate's conclusion . . . . That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law."). *See also* 12 Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure – Federal Rules of Civil Procedure § 3069 (2d ed.) (observing that, under the clearly erroneous or contrary to law standard, "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge").

## ARGUMENT

### I. Other Than Timeliness, Sierra Club Fails to Meet the Requirements for Intervention as of Right

To intervene as of right pursuant to Rule 24(a)(2), the Fifth Circuit applies four "well-settled" requirements, each of which must be met for the application to be granted:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*New Orleans Public Serv., Inc. v. United Gas Pipeline Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (*en banc*) (internal quotations omitted).  Other than making a timely application for intervention, Sierra Club has not demonstrated that it is entitled to intervention as of right.

## A. Sierra Club's "Interest" in the Enforcement Action is Not Sufficiently Direct, Substantial or Legally Protectable

To meet Rule 24(a)(2)'s "interest" requirement, an applicant for intervention must demonstrate a "direct, substantial, and legally protectable interest in the property or transaction that is the subject of the suit." *Edwards v. City of Houston*, 37 F.3d 1097, 1107 (5th Cir. 1994) (internal quotations omitted). *See also Donaldson v. United States*, 400 U.S. 517, 531 (1971), *superseded by statute on other grounds* (requiring a "significantly protectable interest" for purposes of Rule 24(a)). The interest in the property or transaction must be "one which the *substantive* law recognizes as belonging to or being owned by the applicant." *NOPSI*, 732 F.2d at 464 (emphasis in original).

Sierra Club argues that it is entitled to intervention based on *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), which held that the applicant's lack of a cause of action in that case did not stand as an absolute bar to intervention. Sierra Club, Inc.'s Mem. in Support of Objections to Order of the Mag. Judge Denying Sierra Club, Inc.'s Mot. to Intervene [Rec. Doc. 3450] ("Sierra Club Obj.") at 7 (citing *Trbovich*, 404 U.S. at 530-31).[2] Yet *Trbovich* does not logically support Sierra Club's next contention: that "*because* [intervention] is the only means by which to protect the applicant's interests in the action," intervention as of right exists. Sierra Club Obj. at 8 (emphasis added). On the contrary, as the Magistrate recognized, Sierra Club's interests may be addressed through public comments and *amicus* participation without granting intervention. *See* Order at 10, 14, 21. And, as the Fifth Circuit has recognized, *Trbovich* does not modify the Rule's affirmative requirement that the interest asserted must be "one which the *substantive* law recognizes as belonging to or being owned by the applicant."

---

[2] Sierra Club has no independent cause of action or statutory right of intervention under the CWA Section 311 or OPA. *See* United States' Mem. in Opp. to Sierra Club's Motion to Intervene [Rec. Doc. 1411] ("United States' Br.") at 3-8.

*See NOPSI*, 732 F.2d at 464-65 (emphasis in original) ("*Trbovich* . . . cannot be read to allow Rule 24(a)(2) intervention for the purpose of asserting the substantive rights of others, or as recognizing for that purpose an interest based on a substantive right not belonging to the intervenor.").

Sierra Club's reliance on *Trbovich* to "pave[] the way" for its intervention in this case, see Sierra Club Obj. at 8, is misplaced.  At issue in *Trbovich* was whether a union member could intervene in the case being brought on his behalf by the Secretary of Labor pursuant to the Labor Management Reporting and Disclosure Act (LMRDA).  The LMRDA conferred specific rights upon the union members to be enforced by the Secretary.  *Trbovich*, 404 U.S. at 539 (quoting the legislative history of LMRDA and recognizing that the statute gave union members "certain rights against their union, and the Secretary of Labor in effect becomes the union member's lawyer for purposes of enforcing those rights") (internal quotations omitted).  These provisions of the LMRDA regulating union elections, enacted to protect the rights of a discrete group, stand in contrast to the CWA and OPA substantive provisions at issue here, which were not enacted to protect the specific environmental and aesthetic interests of organizations such as the Sierra Club.  Rather, as the Magistrate affirmed, these provisions protect the interests of the public at large.  They ensure that the environmental laws as they relate to the Gulf of Mexico and its natural resources are enforced and that responsible parties are held fully accountable for natural resource damages and other damages.  *See* Order at 13, 14.

Sierra Club goes on to cite language from *NOPSI*, *supra*, which analyzed *Trbovich* for the purpose of determining whether a proposed intervenor's interest met the requirements of Rule 24(a)(2), to urge that for public law cases the "zone of interest" test for prudential standing should suffice for purposes of Rule 24(a)(2)'s interest requirement.  Sierra Club Obj. at 11.

Although the *NOPSI* court, in dicta, suggested that for public law cases, the zone of interest standing test could be "somewhat analogous" as to a whether the party "may possess" a substantive right under the applicable law, see 732 F.2d at 465, it does not stand for the proposition that the test would in all public law cases replace the "direct, substantial and legally protectable interest" test of Rule 24(a)(2).

Even assuming that the zone of interest standard should be applied here, many of the cases cited by Sierra Club in which courts have recognized that environmental and aesthetic interests of a group's members sufficed to meet that test for purposes of standing have involved challenges to agency action brought under the agency review provisions of the Administrative Procedure Act (APA), see, e.g., *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).  The APA, however, employs a more expansive review standard than other statutes, which controls the relevant zone of interests.  As the Supreme Court has recognized:

> [T]he breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the "generous review provisions" of the APA may not do so for other purposes.

*Bennett v. Spear*, 520 U.S. 154, 163 (1997) (quoting *Clarke v. Securities Indus. Ass'n.*, 479 U.S. 388, 400, n.16 (1987) and *Assoc. of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 156 (1970)).[3]

---

[3] At least one Circuit has expressly found the interest required under the "direct, substantial and legally protectable" standard of Rule 24(a)(2) to be *greater* than that required for "zone of interest" test for review under the Administrative Procedure Act (APA).  *See United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte County*, 754 F.2d 855 (7th Cir. 1985).  In that case, proposed intervenors argued that their members' aesthetic, conservational and recreational interests were adequate for the Rule 24(a) intervention and relied on *Sierra Club v. Morton*, 405 U.S. 727 (1972), a case holding that such an

Sierra Club relies on *Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992), to argue that its members' environmental and aesthetic interests fall within the zone of interest of the Clean Water Act, but like *Lujan*, *supra*, that suit similarly arises in the context of an organization's standing to challenge an agency administrative action.  There, plaintiffs claimed that they were adversely affected or aggrieved, for purposes of the APA's review provision, by an Army Corps of Engineers' decision not to assert CWA jurisdiction over a nearby water body.  *See* 958 F.2d at 661.  In contrast, here the United States is bringing a judicial enforcement action under Section 311 of the Act.  *See Bennett*, 520 U.S. at 175-76 (The "zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the *particular provision of law* upon which the plaintiff relies.") (emphasis added).

Here, Sierra Club claims an interest in ensuring accountability and deterring future violations of Section 311, and relies on *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), a citizen suit brought under Section 505 of the CWA,

---

environmental interest was sufficient for purposes of APA standing requirements.  The court rejected that analogy and distinguished the two standards:

> There is a qualitative difference between the "interest" which is sufficient for standing to bring an action under the APA and the "direct, significant legally protectable interest" required to intervene in a condemnation action.  The "interest" which will satisfy *Sierra Club* is simply one "arguably within the zone of interest to be protected" by the statute. . . . The interest of a proposed intervenor, however, must be greater than the interest sufficient to satisfy the standing requirement.  As the Supreme Court in *Donaldson* stated, the interest must be a "significantly protectable interest". . . . This circuit has also defined the necessary interest as one that is direct, substantial, and legally protectable.

754 F.2d at 859 (internal citations omitted).  Indeed, here the Magistrate distinguished *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399 (1987), precedent relied on by Sierra Club, stating that because that case involved the application of the zone of interest test "in the context of agency review," the APA case was "not helpful in determining what kind of interest is required for Rule 24(a)(2)."  Order at 8 n.9.

33 U.S.C. § 1365, to support its claim.[4]  *Laidlaw* concerned whether the plaintiffs could maintain their suit for injunctive relief and civil penalties where the defendant, after the plaintiffs filed their complaint, voluntarily achieved "substantial compliance" with the terms of the permit that was alleged to have been violated.  528 U.S. at 173.  Under the CWA's citizen suit provision, private plaintiffs, unlike the federal government, cannot initiate a suit for civil penalties for "wholly past" violations.  *See Gwaltney v. Smithfield, Ltd v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 58-63 (1987).  The *Laidlaw* Court recognized the potential deterrent effect of penalties where the defendant, although it had voluntarily ceased its violations for the time-being, had in the past repeatedly violated its permit terms and was at risk of continued violations.  *See* 528 U.S. at 176, 187.  Because the Court found that the specific penalties assessed in that case "made it likely, *as opposed to merely speculative*, that the penalties would redress [the plaintiff's] injuries by abating current violations and preventing future ones," it determined that the citizen group could maintain its action for penalties.  *Id.* at 187 (emphasis added).

Sierra Club specifically claims an interest in obtaining the "maximum" amount of penalties to achieve an adequate deterrent effect.  Sierra Club Obj. at 15, 16.  But the United States' exercise of its enforcement authority is committed to its discretion by law.  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (recognizing that agency decisions related to enforcement "often involve[] a complicated balancing of a number of factors which are peculiarly within its

---

[4]  Similar to the APA, Section 505 of the CWA, the citizen suit provision, authorizes standing for "a person or persons having an interest which is or may be adversely affected."  33 U.S.C. §§ 1365(a), (g).  As outlined in the United States' previous brief, a citizen's right to bring, or intervene in, a CWA enforcement action is more limited than the federal government's, and is not applicable here.  United States' Br. at 5-6.  Enforcement suits such as this one based on violations of Section 311, which pertains to the discharge of oil and hazardous substances, can only be brought by the Unites States.  *Id.* at 6 (citing 33 U.S.C. § 1365(a) and (f)).  And, while a citizen may be able to intervene in a government-initiated action, it can only do so where the citizen could otherwise bring an action of its own.  Accordingly, Sierra Club has no statutory right to intervene.  *See* United States' Br. at 5.

expertise").  Not suprisingly, Sierra Club has cited to no court that permitted intervention based

on a putative intervenor's interest in the deterrent effect of any penalty recovered by the United

States, much less a sufficient interest in the *amount* of the penalty.  Indeed, in the only case

identified in the prior briefings that even addresses an applicant's argument that a generalized

interest in environmental protection supports Rule 24(a)(2) intervention into a government action

for penalties, the court concluded that such an interest was insufficient.  *See Holly Ridge Assocs.,*

*LLC v. N.C. Dep't of Env't. & Natural Res.*, 648 S.E.2d 830, 836 (N.C. 2007) (finding that

group's interest in protecting the waters and shellfish population did not give it a "direct interest"

in the state's civil penalty claim, which the court found to be the "property or transaction" that

formed the basis of the controversy).  An interest in obtaining a particular penalty amount is far

too speculative and indirect to support intervention.  *See Ross v. Marshall*, 426 F.3d 745, 757-60

(5th Cir. 2005).  *See also Laidlaw*, 528 U.S. at 187 (recognizing that there might be "outer

limits" to the principle that civil penalties provide sufficient deterrence to support citizen

standing, but that the deterrent effect of the penalties assessed in that particular case was not

"merely speculative").  There is also no basis to assert that the United States will not seek, and

that this Court will not impose, adequate penalties.

Sierra Club counters that its interest in obtaining high penalties is sufficiently direct, as

penalties for violations of CWA Section 311 are deposited into the Oil Spill Liability Trust Fund

(OSLTF), which can be used to pay for removal costs and damages resulting from a discharge.

Sierra Club Obj. at 13, 15.   The ultimate disposition of OSLTF funds, however, is prescribed by

statute, see 33 U.S.C. §§ 2712, 2752, and is not at issue in the litigation.  Accordingly, any

interest Sierra Club asserts in the use of the OSLTF to benefit its members' use and enjoyment of

the resources in the Gulf is not at stake in this litigation and is too intangible to support intervention here.  *See Ross*, 426 F.3d at 757-60.

Sierra Club also cannot demonstrate a legally protectable interest in the United States' enforcement of the Oil Pollution Act based on the interest of Sierra Club's members in ensuring restoration and future protection of the Gulf's coastal and marine ecosystems.  In this action, the United States seeks a declaratory judgment that the defendants are liable under OPA without limitation for all damages owed to the United States, including natural resource damages.  OPA is a compensatory statute designed to allow certain specified parties to recover for damages resulting from oil spills.  Recovery of natural resource damages is entrusted to government parties, as such injuries are not to individual members of the public, but to the United States, states, Indian tribes or foreign governments who act as trustees for the resources on behalf of the public.  33 U.S.C. §§ 2702(b)(2)(A); 2706(a), (b).  Individual members of the public and non-governmental organizations have the opportunity to comment on a restoration plan developed by the trustees to address natural resource damages, see 33 U.S.C. § 2706(c)(5), but are not directly entitled to compensation for such injuries.[5]  As such, the United States' enforcement of OPA must be viewed differently from situations where environmental groups have successfully intervened in Administrative Procedure Act (APA) cases in order to challenge or help defend an agency decision made in the agency's regulatory capacity.

---

[5] By contrast, OPA provides for non-governmental organizations and individuals to bring suits to recover *economic* damages for injuries resulting from oil spills under specified circumstances.  *See* 33 U.S.C. § 2702(b)(2)(B), (C), (E).  For example, for "injury to, or economic losses resulting from destruction of, real or personal property," damages "shall be recoverable by a claimant who owns or leases that property."  *Id.* § 2702(b)(2)(B).  Sierra Club has not sued for damages under this provision to itself or its members.  That Congress specified a right of recovery to individuals for economic damages, but not for natural resource damages, also weighs against Sierra Club's intervention here.

The lone case that Sierra Club cites as precedent for a public interest group's intervention in natural resource damage litigation, *In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019 (D. Mass. 1989), is readily distinguishable.  In that case, the proposed intervenors did not seek intervention of right under Rule 24(a)(2), but permissive intervention, which does not impose heightened requirements such as a showing of a direct, substantial and legally protectable interest.  *See* 712 F. Supp. at 1022-23.  Moreover, the applicants imposed restrictive conditions on their proposed intervention, making their status closer to that of an *amicus* party.  For example, the applicants sought to file briefs (and appeal, if necessary) regarding certain legal issues and the appropriate measure of damages.  *Id.* at 1023.  Unlike the Sierra Club, the applicants expressly did not seek to participate in discovery or fact development.  *Id.*[6]

Sierra Club's assertion that it has an interest in the actual restoration of the Gulf through the Natural Resource Damage Assessment (NRDA) process under OPA is simply premature.  At issue in this lawsuit is only whether the defendants are liable without limitation for removal costs and damages under OPA.  The NRDA long-term restoration plan has not yet been developed, and is not the subject of the pending lawsuit.  Sierra Club's purported interest is insufficient to support intervention of right under these circumstances.  *Cf. Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) ("The interest required to intervene as of right is a 'direct' interest . . . . By definition, an interest is not direct when it is contingent on the outcome of a subsequent lawsuit.").

---

[6] Sierra Club also claims a "special interest" in the OPA claim because "it may be tried first, separate from the CWA claim," and that will have a direct effect on the gross negligence determination to be made in the CWA trial.  Sierra Club Obj. at 9.  As the Court is aware, these OPA test trials identified in Pre-Trial Order 11 are not scheduled to occur prior to the February 2012 trial.

**B. Sierra Club Cannot Demonstrate Impairment of a Legally Protectable Interest**

Rule 24(a)(2) requires that an applicant for intervention be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect its interest.  Sierra Club claims that its interests would be "impaired by the assessment of anything less than the maximum amount of penalties in this case because that would fail to fully deter BP and others from engaging in similar future conduct."  Sierra Club Obj. at 15.  As a preliminary matter, and as discussed *supra* at Part I.A, Sierra Club's interest in the amount of penalties obtained in the United States' Section 311 CWA enforcement action is not a legally protectable interest.  Enforcement of this provision is committed to the discretion of the United States.  *See Heckler*, 470 U.S. at 831.  Absent a legally protectable interest that could possibly be impaired, an applicant's proposed intervention must be denied.  *Cf. United States v. South Florida Water Management District*, 922 F.2d 704, 707 n.3 (11th Cir. 1991) ("Denial of intervention cannot impair a nonparty's ability to protect its interests if that nonparty would have no legal protection for those interests in any event.").

Other, in-place, legally-sufficient procedures protect Sierra Club's interests in this matter and provide a forum in which to present its views on the protection and restoration of the Gulf coast ecosystem.  As stated in its initial brief, the United States is committed to seeking the input of all interested parties on any settlement that is reached in this litigation through the public comment process.  *See* United States' Br. at 13-14.  The Magistrate concluded that Sierra Club's interest in the terms of any settlement are adequately protected by the public comment process.  *See* Order at 14.[7]  In addition, despite the fact that it is highly premature to consider whether a

---

[7] Numerous other courts have evaluated the public comment process and found it sufficient to protect the interests of proposed intervenors.  *See, e.g., United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 537 (7th Cir. 1987); *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir. 1982).

SEP should be part of any final resolution of this case, to the extent that Sierra Club seeks to influence potential SEP projects that could be part of a settlement, it can provide input on an equal footing with other interested non-government organizations and individuals.  *See, e.g.*, Final EPA Supplemental Environmental Projects Policy Issued, 63 Fed. Reg. 24,796 (May 5, 1998) (expressly encouraging community input into the development of SEPs, and providing guidelines for soliciting such input).

As another basis for impairment, Sierra Club claims that determinations in this litigation would have "unavoidable" direct consequences on Sierra Club's legal actions against the United States.  Sierra Club Obj. at 16.  Other litigation cited by Sierra Club includes the now-dismissed challenge to the United States' approval of BP's Oil Spill Response Plan (OSRP),[8] oil drilling exploration plans, and a yet-unfiled case concerning dispersant use generally.  The Magistrate appropriately dismissed Sierra Club's argument, recognizing that even if the OSRP and evidence concerning the effect of dispersants might become relevant to the United States' Section 311 claim, "this does not demonstrate the possibility of inconsistent results."  Order at 15.

In support of its position that its interests in other litigation would be impacted by the disposition of this litigation, Sierra Club analogizes its status to that of the proposed intervenors in *South Florida Water Management District (SFWMD)*, 922 F.2d 704, on the basis that both are engaged in litigation and administrative proceedings "related to" the action in which they seek to intervene.  Sierra Club, Inc.'s Combined Reply to Opp. to Sierra Club Inc.'s Mot. to Intervene [Rec. Doc. 1621] at 17 n.6.  *SFWMD* involved a suit brought by the United States against a water

---

[8] Sierra Club's challenge to the Department of the Interior's 2009 approval of BP's Regional Oil Spill Response Plan was voluntarily dismissed earlier this month.  *Gulf Restoration Network, Inc. v. Salazar (GRN)*, No. 10-01630, Stipulation of Dismissal (E.D. La. Aug. 1, 2011) [Rec. Doc. 32].  The approval of the Plan, which was effective at the time of the Deepwater Horizon oil spill and was the subject of the litigation in the *GRN* case, expired last month.  *See* Exh. 1 to United States' Mem. in Response to Sierra Club's Obj. (attached hereto).  Accordingly, any future NEPA challenges to government action involving deepwater drilling are unlikely to focus on issues specific to the prior approval.

district for alleged violations of a state water quality law.  922 F.2d at 707.  On appeal, the

Eleventh Circuit found that if the district court granted the United States the relief it requested to

set numeric water quality standards, the court would "partially pre-empt" an ongoing

administrative process conducted by the water district that was focused on "this same end."  *Id.*

at 708.  Accordingly, the court found that the proposed intervenors – who relied on the water

district to provide irrigation for their crops – held a legally protectable interest in participating in

the administrative process that would have been *directly* impacted by the disposition of the

United States' action.  *Id.* at 708-09.  Sierra Club, on the other hand, has failed to articulate how

the outcome of this case for CWA penalties and OPA liability could potentially impact its cases

challenging the agency action under the APA, NEPA and other statutes.  Mere "relatedness" of

cases is not enough to establish impairment.

### C.  Sierra Club Cannot Establish that Its Interests May Be Inadequately Represented by the United States

Even if a would-be intervenor demonstrates a legally protectable interest in the

proceedings that may be impaired as a result of the outcome of the litigation, its application must

also demonstrate that the representation of its interests may be inadequate.  Fed. R. Civ. P.

24(a)(2).  While this burden has been described as "minimal," *Sierra Club v. Espy*, 18 F.3d 1202,

1207 (5th Cir. 1994), "it cannot be treated as so minimal as to write the requirement completely

out of the rule."  *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).  Accordingly, the Fifth

Circuit has established two presumptions of adequate representation that the Magistrate properly

applied here: (1) a presumption of adequacy when the government is proceeding in a matter of

sovereign interests and (2) a presumption of adequacy when the applicant shares the "same

ultimate objective" as the party to the lawsuit.  *Edwards v. City of Houston*, 78 F.3d 983, 1005

(5th Cir. 1996).

14

1) **Sierra Club has failed to demonstrate that the United States' statutorily-defined objectives in this enforcement action are different from the Sierra Club's interests**

In concluding that Sierra Club failed to demonstrate that the United States would not adequately represent its interests, the Magistrate properly invoked a presumption of adequacy because the United States is proceeding against the defendants in its sovereign capacity as an enforcer of the CWA and OPA.  *See Edwards*, 78 F.3d at 1005.[9]  "To overcome this presumption, the applicant must show that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it."  *Id.* (internal quotations omitted).

As the United States set forth in its initial brief, the United States and Sierra Club share the same ultimate objectives in this litigation:  to deter the defendants and the oil industry from future incidents that will cause harm to the waters of the United States and adjoining shorelines, and to hold the defendants accountable to the full extent of the law so that sufficient funds will be available for the restoration of natural resources for injuries resulting from the *Deepwater Horizon* explosion and subsequent oil spill.  United States' Br. at 16.  The objectives of the United States are firmly grounded in the text and intent of Clean Water Act Section 311 and OPA's natural resource damage provisions.  *See* 33 U.S.C. § 1321(b)(1) (declaring it "the policy of the United States that there should be *no* discharges of oil or hazardous substances into or

---

[9] *See also United States v. Tex. Educ. Agency (Lubbock Indep. Sch. Dist.)*, 138 F.R.D. 503, 506 (N.D. Tex.), *aff'd*, 952 F.2d 399 (5th Cir. 1991) ("Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a government body or officer charged by law with representing the interests of the proposed intervenor."); *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) ("[I]n an enforcement action by a governmental entity suing as *parens patriae*, it is proper to require a strong showing of inadequate representation before permitting the intervenors to disrupt the government's exclusive control over the course of its litigation."); 7C Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure – Federal Rules of Civil Procedure § 1909 (3d ed.) (A "very compelling showing" of inadequacy should be required "when a governmental body or officer is the named party.").

upon the navigable waters of the United States") (emphasis added); *Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189, 1194 (3d Cir. 1993) (explaining that the policy of CWA Section 311 was implemented through the enactment of "strong remedial and penalty provisions"); 33 U.S.C. §§ 2702(b)(2)(A); 2706(a) (providing for governmental trustees to act on behalf of the public to recover natural resource damages).

That the United States represents a broader constituency than Sierra Club is not enough to establish different interests and overcome the presumption of adequacy that applies in government actions. *See, e.g.*, *San Juan County, Utah v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (rejecting argument that environmental group's "focused conservation interests" were at odds with the government's "broader considerations" in eminent domain action where the government's sole objective was to defend the government's title and it was not required to balance multiple interests); *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (dismissing claims of inadequate representation where environmental group claimed a more "specialized" interest in action attacking a state law, reasoning that both the state and the environmental group had the "same ultimate goal" of defending the statute, and the state Attorney General appeared "ready, willing, and able" to put on a vigorous case).

In this enforcement action, the United States is not required to balance multiple or competing objectives. As such, this litigation is distinguishable from a host of other cases cited by Sierra Club in which courts have granted intervention into government actions. For example, in the Supreme Court case heavily relied upon by Sierra Club, *Trbovich*, the Court analyzed the labor statute pursuant to which the Secretary of Labor had brought the action to set aside a union election in order to determine whether the Secretary adequately represented the union member on whose behalf the Secretary had brought the suit. 404 U.S. at 538-39. Reasoning that the

labor statute gave the Secretary "two distinct interests" – one, in the union member's interest in the outcome of the election, and two, in the general public interest in free and democratic union elections – the Court found that the union member's own interests may be inadequately represented in the litigation.  *Id.*[10]

This litigation is similarly distinguishable from *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), where the court considered whether timber purchaser associations were entitled to intervene in an action brought by environmental groups challenging forest service logging procedures.  Because the government was obligated to protect more than "just the economic concerns of the timber industry," the court concluded that representation by the government of those concerns might be inadequate.  *Id.* at 1207-08.  This case also presents different circumstances than the challenges to the Department of the Interior's decision to suspend certain deepwater drilling permitting and operations, in which the district court granted Sierra Club intervention on the basis that it represented different interests than the United States.[11]  There, Sierra Club alleged that its interests diverged from the government in light of the Outer

---

[10]  Subsequent courts have applied *Trbovich's* reasoning to reject a claim for inadequate representation where there is no such statutory conflict.  *See, e.g., Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) (denying intervention to environmental group in suit against government challenging endangered species listing where there was "no statutorily imposed conflict" and the government's interest in protecting the species was the same as the environmental group's); *Hooker Chemicals*, 749 F.2d at 987 (finding adequate representation where the environmental groups seeking to intervene in a CWA action had not "pointed to anything like the conflicting statutory obligations imposed on the Secretary in *Trbovich*").

[11]  On August 4, 2011, the district court entered a final judgment on the remaining claims in *Ensco Offshore Co. v. Salazar*, one of the two cases challenging the United States' decision to impose drilling suspensions.  *Ensco Offshore Co. v. Salazar*, No. 10-01941, Final Judgment on Counts I, II, III, V, & VI (E.D. La. Aug. 4, 2011) [Rec. Doc. 391].  While Sierra Club has filed an appeal of the *Ensco* judgment, its continued participation in the case – in light of its status as intervenor and alleged lack of standing – is currently being challenged.  *See Ensco Offshore Co. v. Sierra Club*, No. 11-30491, Appellees' (1) Motion to Dismiss Appeal Due to Intervenors' Lack of Standing and, Alternatively, to Hold this Appeal in Abeyance, and (2) Response to Intervenors' Motion for Vacatur of the District Court's Judgment and Opinion (5th Cir. July 26, 2011) [Rec. Doc. 00511552282].  Appellees argue that Sierra Club and other intervenors lack standing because they have no "direct stake" or "injury from the judgment below," as the judgment in *Ensco* only applied to Federal government defendants.  *Id.* at 9.

Continental Shelf Land Act's (OCSLA) statutory requirement that the government consider both

the potential for expeditious resources development *and* the environmental effects of such

development.  *See* 43 U.S.C. § 1332(3).  By contrast, there is no such potential intra-statutory

conflict here.  The United States' goal of holding defendants liable for their harm to the

environment and deterrence of future incidents is prescribed by the CWA and OPA, and is

completely aligned with the goals of the Sierra Club.

### 2) Sierra Club's alleged adversity to the United States fails to demonstrate that representation may be inadequate

Where the prospective intervenor has the same ultimate objective as a party to the

lawsuit, it must show "adversity of interest, collusion, or nonfeasance on the part of the existing

party to overcome the presumption" of adequate representation.  *Edwards*, 78 F.3d at 1005.

Sierra Club does not allege any collusion on the part of the United States, but asserts that its

interests are adverse to the United States because (1) it would make arguments in support of

penalties that the United States would not due to the United States' approval of deepwater

drilling and certain oil spill response actions; and (2) it is adverse to the United States in "other

overlapping" cases involving offshore drilling issues generally.  As the Magistrate concluded,

however, these assertions simply do not demonstrate adversity of interest on the part of the

United States sufficient to overcome the presumption of adequate representation.  *See* Order, at

19.

> i. The role of federal agencies and officials in approving BP's OSRP and dispersant application does not demonstrate adversity of interest on the part of the United States

With respect to its first argument, Sierra Club argues that it is "very unlikely" that the

United States will raise arguments related to BP's Regional Oil Spill Response Plan (OSRP) in

its penalty action because the United States approved the Plan and is "culpable with BP for its

failure."  Sierra Club Obj. at 19.  Yet, as the United States set forth in its initial brief, it is BP's and other defendants' culpability that is at issue in the CWA and OPA action, not any alleged culpability of the United States.  United States' Br. at 18.  An approved OSRP does not obviate a responsible party's absolute duty under Section 311 of the CWA to abate a discharge.  30 C.F.R. § 254.5 ("General response plan requirements . . . (c) Nothing in this part relieves you from taking all appropriate actions necessary to immediately abate the source of a spill and remove any spills of oil.").  In addition, a defendant is expressly barred from raising agency approval of an OSRP as a defense to liability under OPA.  33 U.S.C. § 1321(j)(5)(H).

Sierra Club's argument that the United States – because it approved the Plan – will not address the use of an approved Plan if raised as a defense or mitigating factor in the CWA penalty action is similarly unpersuasive.  The Clean Water Act expressly rejects any liability on the part of the United States for actions taken in connection with the Oil Spill Response Plan.  33 U.S.C. § 1321(j)(8) ("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section.").

Finally, the United States' involvement in the approval of dispersants used in the oil spill response does not undermine its ability to bring a vigorous enforcement action.  To begin with, the determination of whether the incident was the result of gross negligence or willful misconduct relates to actions taken that led to the discharge, not those taken to remove the oil once it has been discharged.  33 U.S.C. § 1321(b)(7)(D).  In addition, although a consideration in the penalty determination does include "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge," 33 U.S.C. § 1321(b)(8), it is the responsible parties, and not the United States, that are liable for all harm to natural resources occurring during the course of the response to remove the oil.  *See* 15 C.F.R. § 990.51(b)(ii), (e).

      ii. <u>The United States' adverse posture to Sierra Club in other litigation challenging agency action related to deepwater drilling does not demonstrate its adversity to Sierra Club in this enforcement action</u>

      Sierra Club also argues that because the United States and Sierra Club are adversaries in other "overlapping" lawsuits, the presumption of adequate representation is overcome.  Sierra Club Obj. at 22.  These other cases challenge the various actions of government agencies and officials taken in connection with their ongoing responsibility to regulate deepwater drilling activities, such as permitting and approval of drilling exploration plans.[12]  Other than to suggest that the future of deepwater drilling may, in some general way, be impacted by the instant litigation, Sierra Club fails to provide any concrete example of how the issues or potential outcomes in its cases challenging agency action under OSCLA, the APA and NEPA overlap with those in this case for CWA penalties and a declaration of liability under OPA.  Sierra Club's assertion that the issues in these cases are "clearly intertwined," see Sierra Club Obj. at 23, despite the fact they involve different facts, different statutes, and seek different relief, is unsupported and, as the Magistrate concluded, does not demonstrate adversity of interests.  *See* Order at 19.

      That the United States and Sierra Club are adversaries in separate litigation involving deepwater drilling in the Gulf does not and should not suffice to establish adversity here.  *See, e.g., Assoc. Indus. of Ala., Inc. v. Train*, 543 F.2d 1159, 1160-61 (5th Cir. 1976) (finding that Alabama's challenge of EPA's interpretation of a standard in one case did not make Alabama adverse to EPA in another case where EPA was defending the legality of that same standard);

---

[12]  In several of the deepwater drilling-related cases Sierra Club points to as examples of where its position is adverse to the United States government, the court has entered a final judgment or dismissed the case.  *See Ensco Offshore Co. v. Salazar*, No. 10-01941, Final Judgment on Counts I, II, III, V, & VI, (E.D. La. Aug. 4, 2011) [Rec. Doc. 391]; *Hornbeck Offshore Services, LLC v. Salazar*, No. 10-01663, Final Judgment (E.D. La. Aug. 4, 2011) [Rec. Doc. 280]; *Gulf Restoration Network, Inc. v. Salazar*, No. 10-01630, Stipulation of Dismissal (E.D. La. Aug. 1, 2011) [Rec. Doc. 32].

*Maine v. Dir., U.S. Fish & Wildlife Serv.,* 262 F.3d 13, 20-21 (1st Cir. 2001) (rejecting environmental group's motion for intervention where it had previously sued the government over protection of the same species that was the subject of the current litigation, reasoning that "[a]n earlier adverse relationship with the government does not automatically make for a present adverse relationship"). *See also Bush*, 740 F.2d at 356 (rejecting argument that applicant was inadequately represented where intervenor made "no showing of adversity in *this* proceeding") (emphasis in original). The United States and national environmental organizations such as the Sierra Club may be at the same time aligned in some matters and adverse in others, but that alone does not demonstrate inadequate representation.

In support of its argument that the challenges to agency actions demonstrates adversity and rebuts the presumption of adequate representation, Sierra Club again relies on *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380-81 (5th Cir. 2001). As the Magistrate clearly found, *Glickman* is materially distinguishable from the facts here. *See* Order at 19 n.15. As a preliminary matter, in *Glickman*, the case for which intervention was sought was more than merely related to the separate case; it involved precisely the "same" issue, and the Court reasoned that a ruling in a later-filed action had the potential to impact the applicant's interest without the opportunity to be heard. 256 F.3d at 377, 380-81 (noting that parties sought disclosure of the same information, and "substantive issue underlying [both lawsuits] is the same."). *See also Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 826-29 (5th Cir. 1967) (finding "identity with the very property at stake in the main case and with the particular transaction therein involved" to be "of exceptional importance" in decision to grant intervenor's motion). By contrast, Sierra Club's challenges to deepwater drilling exploration plans (submitted by companies not involved in the Deepwater Horizon explosion) are brought under the National Environmental Policy Act (NEPA), OCSLA,

and the APA, and seek to invalidate the plans on the basis that the United States acted arbitrarily and capriciously.

Moreover, as the Magistrate noted in her order, in *Glickman*, the government had taken a position in the separate litigation that was directly opposed to that asserted by the putative intervenor.  Order, at 19 n.15 (citing *Glickman*, 256 F.3d at 380-81).  Sierra Club, by contrast, has not identified an example where the United States has taken a position in separate litigation that could be characterized as contrary to any asserted in this litigation.  Sierra Club also has not alleged that, several months into discovery and pre-trial motions practice, the United States has in any way been deficient in prosecuting its OPA and CWA action, or that its interests have diverged from Sierra Club's interests.  *Compare Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (granting intervention where government "in effect conceded the case at the outset" and failed to file any responsive pleadings or briefs and called no witnesses at a hearing); *Glickman*, 256 F.3d at 380-81 (finding inadequacy of representation where applicant argued government agency failed to contest a temporary restraining order or preliminary injunction, and did not object to the admission of controversial evidence).

Sierra Club again attempts to establish adversity of interests by citing to the United States' contracts with oil companies, its revenues from royalty payments, and that it is subject to varying political climates.  Sierra Club Obj. at 23.  These are not conflicts adequate to overcome the presumption of adequate representation afforded to the government.  The mere fact that the Department of Justice possesses "additional interests stemming from its unique status as the lawyer for the entire federal government" is not enough to defeat the government presumption, because "then in no case brought or defended by the Department could intervention be refused on the ground that the Department's representation of the would-be intervenor's interest was

adequate." *Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 508 (7th Cir. 1996).

## II.  The Magistrate Did Not Err in Exercising her Discretion to Decline Sierra Club's Request for Permissive Intervention

A court may allow permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  Unlike the standard for intervention of right, the decision to grant intervention is "wholly discretionary" even where there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.  *Kneeland v. Nat'l Collegiate Athletic Assoc.*, 806 F.2d 1285, 1289 (5th Cir. 1987) (quoting *NOPSI*, 732 F.2d at 470-71).  In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

In support of its application for permissive intervention, Sierra Club repeats its argument that the United States would be reluctant to advance an argument that would expose it to increased culpability.  As discussed *supra* at Part I.C, however, it is the defendants' culpability that is at issue in this case, and it is the defendants who are ultimately responsible for any harm resulting from the spill or the response to the spill.  The United States' role as a regulator in areas related to deepwater drilling and oil spill response does not make it any less likely that it will vigorously pursue its statutorily-prescribed obligation to enforce the law and recover natural resource damages on behalf of the public.  While the United States disputes Sierra Club's claim that the United States will not advance relevant arguments in support of a finding of willful misconduct, gross negligence or increased penalties, this Court is well aware of the many other state and private plaintiffs already in this multi-district litigation whose claims also directly implicate these issues.  Sierra Club's claim that it will bring new arguments to the table thus is

unavailing and does not outweigh the potential that its presence will unnecessarily complicate the proceedings.

In sum, the Magistrate did not err in using her discretion to reject Sierra Club's alternate argument for permissive intervention.  Fifth Circuit precedent supports the Magistrate's conclusion that intervening party status is not required as Sierra Club can present its positions through *amicus* briefs and by providing public comments on any proposed settlement, see Order, at 21.  *See e.g.*, *Bush*, 740 F.2d at 359 ("Where he presents no new questions, a third party can contribute usually most effectively and always more expeditiously by a brief amicus curiae and not by intervention.") (internal quotations omitted); *NOPSI*, 732 F.2d at 473 ("Where the intervenors do not have a legally protectable interest, are adequately represented by an existing party and will not add to the relevant factual development of the case, the position of amicus may be considered more appropriate than an intervention with full-party status . . . .").

## CONCLUSION

For the foregoing reasons, the Court should uphold the Magistrate's Order denying Sierra Club's motion for intervention of right and permissive intervention.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

JAMES NICOLL
  Senior Counsel
NANCY FLICKINGER
SARAH HIMMELHOCH
 Senior Attorneys
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
  Director, Torts Branch, Civil Division
  Admiralty and Aviation
STEPHEN G. FLYNN,
  Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN

24

JUDY HARVEY                                JESSICA MCCLELLAN
MATT LEOPOLD                               DAVID PFEFFER
  Trial Attorneys                            Trial Attorneys

/s/ Steven O'Rourke                        /s/ R. Michael Underhill
STEVEN O'ROURKE                            R. MICHAEL UNDERHILL, T.A.
Senior Attorney                            Attorney in Charge, West Coast Office
Environmental Enforcement Section          Torts Branch, Civil Division
U.S. Department of Justice                 U.S. Department of Justice
P.O. Box 7611                              7-5395 Federal Bldg, Box 36028
Washington, D.C. 20044                     450 Golden Gate Avenue
Telephone: 202-514-2779                    San Francisco, CA 94102-3463
Facsimile: 202-514-2583                    Telephone: 415-436-6648
E-mail: steve.o'rourke@usdoj.gov           Facsimile: 415-436-6632
                                           E-mail: mike.underhill@usdoj.gov

JIM LETTEN
United States Attorney
Eastern District of Louisiana

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of August 2011.

*/s/ Steven O'Rourke*
Steven O'Rourke