## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
|     "DEEPWATER HORIZON" in the | : | |
|     GULF OF MEXICO, on | : | |
|     APRIL 20, 2010 | : | |
| | : | SECTION: J |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| ALL ACTIONS | : | MAG. JUDGE SHUSHAN |
| | : | |
|         Defendant. | : | |
| | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## SIERRA CLUB, INC.'S OBJECTIONS TO
## MAGISTRATE'S ORDER DENYING INTERVENTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

I.      THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT SIERRA CLUB HAS FAILED TO SATISFY THE REQUIREMENTS FOR RULE 24(a) INTERVENTION OF RIGHT ................................................................. 3

      A.     Judge Shushan Correctly Held That Sierra Club's Interests Are Generalized and Fall Short of What Would Be Sufficient to Intervene in This Case. .................................................................................. 4

            1.    Sierra Club Not Only Fails to Show It Possesses a Legally Protectable Interest, It Fails to Show It Has Prudential Standing to Intervene. ....................................................................... 4

            2.    An Interest in the Potential Settlement of This Case Is Not Sufficient for Rule 24(a)(2) Purposes. ............................................ 9

            3.    The Interests Asserted by Sierra Club in Its Member Declarations Do Not Justify Intervention in a Claim for Penalties by the United States. ............................................................................ 10

            4.    Sierra Club Misreads *Trbovich*. ................................................. 11

            5.    The Relief Sought by Sierra Club Is Not Within the Zone of Interest Protected by the Substantive Provisions Under Which the United States Is Proceeding. ..................................................... 15

            6.    Judge Shushan Did Not Ignore or Misapply *Laidlaw*. ............... 17

      B.     Disposition of This Matter Will in No Way Impair Sierra Club's Interests. ..................................................................................... 19

      C.     Judge Shushan Properly Determined That the United States Adequately Represents the Sierra Club's Interests. ......................... 21

            1.    Sierra Club Fails to Demonstrate That Its Interests Are Sufficiently Different From Those of the United States. ................................. 21

            2.    Sierra Club Fails to Demonstrate That Its Interests Are Adverse to the United States. ........................................................................ 23

II.     DENIAL OF PERMISSIVE INTERVENTION UNDER RULE 24(b) WAS PROPER. ............................................................................................. 24

CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alldread v. City of Grenada,*
  988 F.2d 1425 (5th Cir. 1993) ................................................................................ 2

*Aransas Project v. Shaw,*
  404 Fed. App'x 937 (5th Cir. 2010) ..................................................................... 10

*Associated Builders & Contractors v. Perry,*
  16 F.3d 688 (6th Cir. 1994) ................................................................................. 13

*Bush v. Viterna,*
  740 F.2d 350 (5th Cir. 1984) ............................................................................... 25

*Chiles v. Thornburgh,*
  865 F.2d 1197 (11th Cir. 1989) ........................................................................... 13

*Clarke v. Securities Industry Association,*
  479 U.S. 388 (1987) ......................................................................................... 15-16

*Diaz v. S. Drilling Corp.,*
  427 F.2d 1118 (5th Cir. 1970) ............................................................................. 13

*Edwards v. City of Houston,*
  78 F.3d 983 (5th Cir. 1996) ............................................................................ 21-22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
  528 U.S. 167 (2000) ......................................................................................... 17-19

*Fuji Photo Film Co. v. ITC,*
  474 F.3d 1281 (Fed. Cir. 2007) ....................................................................... 18-19

*Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs,*
  493 F.3d 570 (5th Cir. 2007) .......................................................................... 21-22

*Hunt v. Washington State Apple Advertising Commission,*
  432 U.S. 333 (1977) ........................................................................................ 7, 12

*In re Acushnet River,*
  712 F. Supp. 1019 (D. Mass. 1989) ................................................................ 14-15

*John Doe #1 v. Glickman,*
  256 F.3d 371 (5th Cir. 2001) ............................................................................... 23

*Kneeland v. NCAA,*
  806 F.2d 1285 (5th Cir. 1987) ............................................................................. 22

*Kucana v. Holder*,
   130 S. Ct. 827 (2010) ............................................................................... 16

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
   884 F.3d 185 (5th Cir. 1989) ................................................................... 24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 8

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ................................................................................... 8

*Mausolf v. Babbitt*,
   85 F.3d 1295 (8th Cir. 1996) ............................................................. 22-23

*Monsanto v. Geertson Seed Farms*,
   130 S. Ct. 2743 (2010) ............................................................................. 5

*New Orleans Public Serv., Inc. v. United Gas Pipeline Co.*,
   732 F.2d 452 (5th Cir. 1984) ..................................................... 4, 5, 13, 15

*Newby v. Enron*,
   443 F.3d 416 (5th Cir. 2006) ................................................................... 5

*NRDC v. NRC*,
   578 F.2d 1341 (10th Cir. 1978) ............................................................... 4

*Ordemann v. Unidentified Party*,
   No. 06-4796, 2008 WL 695253 (E.D. La. Mar. 12, 2008) ................... 2-3

*Ouachita Watch League v. Jacobs*,
   463 F.3d 1163 (11th Cir. 2006) ............................................................... 7

*Ross v. Marshall*,
   426 F.3d 745 (5th Cir. 2005) ......................................................... 3, 8, 10

*Ruiz v. Estelle*,
   161 F.3d 814 (5th Cir. 1998) ................................................................... 5

*Save Ourselves, Inc. v. U.S. Army Corps of Engineers*,
   958 F.2d 659 (5th Cir. 1992) ............................................................. 15-16

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ................................................................. 21

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ................................................................................. 8

*Sierra Club v. Robertson*,
    960 F.3d 83 (8th Cir. 1992) ................................................................... 23

*Standard Heating & Air Conditioning v. City of Minneapolis*,
    137 F.3d 567 (8th Cir. 1998) ................................................................ 10

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ................................................................................. 18

*Stotts v. Memphis Fire Dep't*,
    679 F.2d 579 (6th Cir. 1982) ................................................................ 20

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972) .......................................................................... 11-13

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) ................................................................ 9

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) ........................................................... 9-10

*United States v. Hooker Chems. & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984)............................................................. 6, 17

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994)................................................................. 16-17

*WFK & Assocs. v. Tangipahoa Parish*,
    No. 06-6684, 2007 WL 1537633 (E.D. La. May 23, 2007)...................... 2

**Statutes**

<u>Clean Water Act</u>

    Clean Water Act Section 311, 33 U.S.C. § 1321 ....................... 5, 6, 8, 11, 13-17, 19

    Clean Water Act Section 404, 33 U.S.C. § 1344 ................................. 16

    Clean Water Act Section 505, 33 U.S.C. § 1365 ................................. 19

    Clean Water Act Section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B) ......................................... 6

    Clean Water Act Section 505(f), 33 U.S.C. § 1365(f) ......................... 5-6

<u>Oil Pollution Act of 1990</u>

    OPA Title I, 33 U.S.C. §§ 2701-2719 .......................................... 5-6, 16

    OPA Section 1002(b)(2)(A), 33 U.S.C. § 2702(b)(2)(A) ......................... 6

OPA Section 1002(b)(2)(B), 33 U.S.C. § 2702(b)(2)(B) ........................................................ 6

OPA Section 1002(b)(2)(C), 33 U.S.C. § 2702(b)(2)(C) ........................................................ 6

OPA Section 1002(b)(2)(E), 33 U.S.C. § 2702(b)(2)(E) ........................................................ 6

OPA Section 1006(a), 33 U.S.C. § 2706(a) ........................................................ 6

OPA Section 1006(b), 33 U.S.C. § 2706(b) ........................................................ 6

OPA Section 1006(c), 33 U.S.C. § 2706(c) ........................................................ 6

**Regulations**

28 C.F.R. § 50.7 ........................................................ 10, 20

**Rules**

Fed. R. Civ. P. 17 ........................................................ 3, 15

Fed. R. Civ. P. 24 ........................................................ 1-6, 8-10, 12-14, 16, 24

Fed. R. Civ. P. 72 ........................................................ 2, 25

## <u>INTRODUCTION</u>

Sierra Club's efforts to set aside Magistrate Judge Shushan's Order suffer from the same fundamental defects as its Motion to Intervene — attempting to justify intervention into a suit involving substantive public rights that are the exclusive province of and adequately represented by the United States — while offering only diffuse, generalized interests that are not even subject to being impaired. The legal framework of Rule 24 requires a direct, substantial, and legally protectable interest in the subject matter of the action. Sierra Club repeatedly protests that it is within the zone of interests of the United States' claims under the Clean Water Act ("CWA") and Oil Pollution Act ("OPA"), but relies on inapposite cases involving either (a) statutes giving environmental groups citizen-suit rights or (b) instances where environmental groups were entitled to sue the government for approving activities that would cause them harm. The CWA penalty and OPA causes of action here fit neither description — they are round holes into which the square peg of this intervention just will not go. It is obvious that no single citizen has any special and individualized interest in the CWA civil penalties sought by the United States, and it is even clearer that no such citizen is any "more equal" in this regard than any other citizen simply because of Sierra Club membership. Similarly, OPA damages claims are ***personal*** claims that cannot be advanced by a membership group on a vicarious, representative basis. Either the Sierra Club has its own OPA damages claims or it does not; it simply has no right to complain about how the United States pursues OPA claims that belong exclusively to the United States.

Magistrate Judge Shushan thus correctly held that Sierra Club failed to meet the requirements for intervention of right (Fed. R. Civ. P. 24(a)(2)) or permissive intervention (Fed. R. Civ. P. 24(b)). Sierra Club fails to demonstrate any error at all — clear or otherwise — in Magistrate Judge Shushan's Order, and this Court should affirm.

It also bears emphasis that MDL 2179 is one of the most complex collections of cases ever assembled, with hundreds of parties asserting and defending countless claims.  The parties and the Court are engaged in intense efforts to move those cases forward, with mere months to go before a major trial begins.  The Court should hesitate to layer on still more complexity by letting additional parties intervene in actions in which they have no legally protectable interest.

## BACKGROUND

By Order dated June 28, 2011 (Dkt. 3065), Magistrate Judge Shushan denied Sierra Club's Motion to Intervene (Dkt. 1115).  Judge Shushan found that Sierra Club failed to satisfy the requirements for intervention of right pursuant to Rule 24(a)(2) because its asserted interests in protection of the Gulf environment and enforcement of environmental laws were too generalized, rather than direct and substantial.  Judge Shushan further held that Sierra Club had failed to demonstrate that its interests in the litigation would be impaired absent intervention, because none of its asserted interests were implicated in the United States' claims, and that Sierra Club had not overcome the presumption that the United States adequately represented its interests in the action.  Judge Shushan also declined to grant permissive intervention pursuant to Rule 24(b), finding intervening party status was not necessary for Sierra Club to protect its interests, as the option to request *amicus curiae* status when appropriate remained open.

## ARGUMENT

Judge Shushan's order is a "nondispositive matter" under Fed. R. Civ. P. 72(a), and Sierra Club must thus establish that the order is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); *see also Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993); *WFK & Assocs. v. Tangipahoa Parish*, No. 06-6684, 2007 WL 1537633 at *1 (E.D. La. May 23, 2007). Sierra Club never acknowledges the governing standard of review.  This is a significant

threshold: it is not enough that this Court may have reached a different conclusion than the Magistrate. *Ordemann v. Unidentified Party*, No. 06-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008). Under this "clearly erroneous" standard, this Court must affirm Judge Shushan's Order unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *Id.* Moreover, "a magistrate judge's order is 'contrary to law' only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* Sierra Club does not come close to meeting either standard. Instead, Sierra Club misstates Judge Shushan's conclusions, misapplies applicable law, and interjects issues that are not relevant to intervention, all in the absence of any demonstration of a legally protectable interest or a meaningful difference between its interests and those of the United States.

Sierra Club fails to concede that as a proposed intervenor-plaintiff, it must satisfy a stricter standard of showing that it is a "real party in interest" under Rule 17(a). *See Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005). Sierra Club also fails to acknowledge at the outset of its brief that Judge Shushan correctly held that the Sierra Club was required to overcome two presumptions to intervene here: adequate representation exists where (1) the government is the plaintiff; and (2) a proposed intervenor has the same objective as a plaintiff. As Judge Shushan rightly concluded, neither can be satisfied here. (Order, Dkt. 3065 at 17, 19)

## I.   THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT SIERRA CLUB HAS FAILED TO SATISFY THE REQUIREMENTS FOR RULE 24(a) INTERVENTION OF RIGHT.

Sierra Club has not demonstrated that it meets the requirements for intervention of right under the law of the Fifth Circuit. Sierra Club asserts that its interest in the enjoyment and protection of the Gulf of Mexico environment, and in ensuring that environmental protection laws are adequately enforced, are direct, substantial, and legally protectable interests in a government enforcement claim for wholly past violations, despite the absence of any legal — or

logical — support for that claim.  Judge Shushan correctly concluded that these interests are not direct, substantial, or legally protectable.  In response, Sierra Club now takes a "kitchen sink" approach in an attempt to comport with the impairment and adequate representation requirements for intervention, asserting claims based on mere speculation.  As Judge Shushan properly recognized, this approach fails under Rule 24(a)(2).

A. **Judge Shushan Correctly Held That Sierra Club's Interests Are Generalized and Fall Short of What Would Be Sufficient to Intervene in This Case.**

In evaluating the interests advanced by Sierra Club in support of its Motion, Judge Shushan noted that the Fifth Circuit requires would-be intervenors to have a "direct, substantial, legally protectable interest in the proceeding."  (Order, Dkt. 3065 at 6 (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) ("*NOPSI*")).) Further, the interest asserted must "be one which the substantive law recognizes as belonging to or being owned by the applicant," because "intervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action."  (*Id.* at 6 (citing *NOPSI*, 732 F.2d at 464, 466).)  *See also NRDC v. NRC*, 578 F.2d 1341, 1344-45 (10th Cir. 1978) (interests shared generally with the public are insufficient).  As Judge Shushan concluded, the CWA and OPA provisions under which the government is proceeding do not belong to Sierra Club, and Sierra Club has no substantive legal right to assert them.

1. _Sierra Club Not Only Fails to Show It Possesses a Legally Protectable Interest, It Fails to Show It Has Prudential Standing to Intervene._

Sierra Club confusingly injects the issue of Article III, or constitutional standing, into review of Judge Shushan's Order.  Sierra Club correctly notes that constitutional standing is not required for intervention of right in the Fifth Circuit,[1] but incorrectly states that Judge Shushan

---

[1]    Because if constitutional standing is required, it is a jurisdictional issue that cannot be waived, BP has no need

Footnote continued on next page

held that it was required.  (*See* Objections, Dkt. 3450-1 at 3-6.)   Contrary to Sierra Club's interpretation, Judge Shushan **_did not_** hold that Sierra Club must demonstrate **_constitutional_** standing; she explained that, under the Fifth Circuit's holding in *NOPSI*, intervention is "subject to the **_prudential_** standing requirement that the presence of harm to a party does not permit him to assert the rights of third parties in order to obtain redress himself," and that those rights have to amount to a substantive, legally protectable interest."[2]   (Order, Dkt. 3065. at 6 (quoting *NOPSI*, 732 F.2d at 464))  Sierra Club is at great pains to argue that it can get by on meeting no more than the "zone of interests test" (Objections, Dkt. 3450-1 at 10-12).   But at that point, its complaint about Judge Shushan's enforcement of the Fifth Circuit's prudential standing requirement for Rule 24(a)(2) intervention collapses, because the "zone of interests" test **_is_** a prudential standing test.  *See Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2755 (2010) ("respondents fail to satisfy the 'zone of interests' test we have previously articulated as a prudential standing requirement").  Despite Sierra Club's hopeless doctrinal confusion, it is clear that it lacks both prudential standing and the requisite Rule 24(a)(2) interest.

> a.    *Sierra Club lacks prudential standing.*

Both Section 311 of the Clean Water Act and Title I of the Oil Pollution Act — the statutory provisions under which the United States has brought this action — confer rights enforceable by the United States alone.   Congress provided for citizen intervention in CWA

---

Footnote continued from previous page

to preserve its ability to seek further review of the Fifth Circuit rule and thus has no need to explore the issue further here.  To become a full-fledged party plaintiff to a case, however, that party should be required to demonstrate that it possesses standing, and this is certainly true if any plaintiff-intervenor ever sought to exercise appellate rights.

[2]     These principles are entirely consistent with *Newby v. Enron*, the case cited by Sierra Club.  In that case, the court held that an intervenor need not independently possess standing where "the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."  443 F.3d 416, 422 (5th Cir. 2006) (quoting *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) (emphasis added)).

enforcement matters only where there is a violation of one of seven effluent standards or limitations set forth in Section 505(f) of the CWA, none of which include Section 311.  Instead, Section 311 confers upon the United States alone the right to seek penalties.  (*See* BP Defs' Motion to Dismiss D1 Complaint, Dkt. 1441-1 at 11-13)[3]

Title I of OPA similarly demonstrates Congress' intent to entrust enforcement of claims for damages to natural resources to officials of federal, state, tribal, and foreign governments. *See* 33 U.S.C. §§ 2702(b)(2)(A), 2706(a)-(b).  For example, OPA charges trustees with developing a plan for restoration of ***natural resources*** for which they have oversight.  That plan is then subject to requirements of public notice, opportunities for hearings and consideration of public comment.  *See id.* § 2706(c).  For ***economic damages*** resulting from oil spills, on the other hand, any person may bring a claim under OPA, provided he or she complies with the statutory presentment process.  *See id.* § 2702(b)(2)(B), (C), (E).  The fact that Congress provided for a right of recovery to individuals for economic damages, but ***not*** for natural resource damages, demonstrates that the rights existing under Title I of OPA belong to the natural resource trustees, and not to any individual or organization.  Thus, as Judge Shushan recognized (*see* Order, Dkt. 3065 at 3 & n.3), Sierra Club has no prudential standing with respect to such an OPA claim.

---

[3]    The sole respect in which BP disagrees with Judge Shushan's decision is where she dismisses the fact that Congress carefully parsed when to grant intervention rights into which types of CWA suits and when not to do so. (*See* Order, Dkt. 3065 at 4; *see also* Objections, Dkt. 3450-1 at 8 (trying to use this ruling to argue Judge Shushan's opinion is internally inconsistent).).  The regime of CWA Sections 505(b)(1)(B) and 505(f) clearly reflects great deliberateness on Congress's part concerning when courts should allow intervention.  To BP, this is dispositive in showing that Sierra Club's intervention is improper.  But at the very least it is error not to consider that strong CWA structural evidence when deciding whether there is a Rule 24(a)(2) interest to intervene in a CWA case, as the Second Circuit did in *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).

b.     *Sierra Club lacks a legally protectable interest.*[4]

Sierra Club argues that the declarations of its members "demonstrate specific, direct injury in fact" resulting from the *Deepwater Horizon* Incident.  (*See* Objections, Dkt. 3450-1 at 4.)  While each declaration asserts, in various forms, some interest in the protection of the Gulf environment and/or a physical, aesthetic or financial injury allegedly caused by the spill, they uniformly lack any credible, non-speculative insight as to how a penalty or declaratory judgment awarded to the government would impact those interests.

Sierra Club next cites as a direct and substantial interest the concept that "the United States' request for injunctive relief in its Prayer for relief could include requiring BP to carry out necessary testing, corrective actions and removal of the pollution contamination," as well as "continued removal of oil even after the government decides the mission will be complete."[5] (Objections, Dkt. 3450-1 at 5.)  This argument takes significant liberties in speculating as to the meaning of a generic statement in a Complaint that provides no indication whatsoever of the nature or extent of injunctive relief that the United States may or may not be seeking.  Further,

---

[4]     Sierra Club's "legally protectable interests" arguments are lumped in with a claim that its proposed intervention also satisfies the standing requirements for organizational plaintiffs, as articulated in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).  (*See* Objections, Dkt. 3450-1 at 3.)  Sierra Club cites *Ouachita Watch League v. Jacobs*, 463 F.3d 1163 (11th Cir. 2006), in support of its argument that the member declarations appended to its Motion demonstrate the requisite injury, causation and redressability elements for standing.  *Ouachita*, however, is not analogous to this case.  The *Ouachita* plaintiffs sought an injunction to compel the U.S. Forest Service to comply with the National Environmental Policy Act ("NEPA").  *Id.* at 1169.  As this Court held in dismissing the D1 Master Complaint, unlike under NEPA, organizational plaintiffs lack standing to bring claims for injunctive relief under the CWA because the relief requested does not redress the harm complained of.  (*See* Order Dismissing D1 Compl., Dkt. 2784 at 5-6.)  Rather, this Court held, injunction at this stage is "useless, as not only is there no ongoing release from the [Macondo] well . . . there is also no viable offshore facility from which any release could possibly occur" (*id.* at 6), and the alleged injury already is being addressed by federal and state remediation efforts (*see id.*).  Moreover, as this Court noted, citizen suit claims for injunctive relief are not redressable because the propriety of such relief depends on choices of actors not before the court.  (*See id.* at 7-8.)  In any case, while only prudential standing is required, Sierra Club possesses neither constitutional nor prudential because each of the member declarations fails to satisfy at least one element of Article III standing.

[5]     Any argument that this confers constitutional standing is, of course, foreclosed by this Court's conclusion in dismissing the D1 Master Complaint.

there is no reason to think that the United States will need injunctive relief from this Court to get BP to carry out further removal action.  As the court is aware, BP has readily and proactively carried out, without the need for court order, the extraordinarily comprehensive response activities that the United States has coordinated and requested.  Sierra Club's unfounded speculation does not meet its burden to show a direct, substantial, and legally protectable interest under Rule 24(a)(2).  *See, e.g., Ross*, 426 F.3d at 758 ("[A]n interest sufficient to justify intervention under Rule 24(a) must be direct, as opposed to remote or contingent.") (footnotes and internal quotation marks omitted).

Finally, Sierra Club seeks to overcome the fact that millions of people share its generalized and diffuse interest in protecting the Gulf of Mexico environment by arguing that this fact is irrelevant to a determination of standing.  However, none of the three cases Sierra Club cites in support of this proposition involved a suit for civil penalties by the United States government for wholly past conduct.[6]  BP is well aware, and acknowledged in its Brief in Opposition, that numerous courts have recognized an interest in protecting the environment as legally protectable.  (*See* BP Opp., Dkt. 1438 at 8.)  However, Sierra Club fails to identify a single instance in which a court has held that this interest is sufficient to comport with Rule 24(a)(2) in a claim by the United States for retrospective CWA Section 311 penalties or an OPA declaratory judgment.  This is because, for the reasons stated herein, neither of those particular types of claims is susceptible to intervention.

---

[6]     *See Sierra Club v. Morton*, 405 U.S. 727 (1972) (Sierra Club as plaintiff sought declaratory and injunctive relief under the Administrative Procedure Act); *Massachusetts v. EPA*, 549 U.S. 497 (2007) (petition for rulemaking under the Clean Air Act seeking judicial review of actions by the EPA administrator in promulgating air quality standards); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (plaintiff environmental groups sought declaratory judgment invalidating interpretation of Endangered Species Act provision and injunction requiring promulgation of revised interpretation).  Tellingly, none of these is a Rule 24 case.

2.   <u>An Interest in the Potential Settlement of This Case Is Not Sufficient for Rule 24(a)(2) Purposes</u>.

Sierra Club further claims that its interest in potential settlement of this case justifies intervention of right.  (*See* Objections, Dkt. 3450-1 at 6.)  Despite the fact that its Motion to Intervene mentioned supplemental environmental projects ("SEPs") exclusively as the aspect of settlement in which it purportedly has a legally protectable interest, Sierra Club claims that Judge Shushan "misse[d] the point by focusing on SEPs," because Sierra Club "uses SEPs simply by way of example to demonstrate its particular interest in settlement."[7]  (*Id.*)  In fact, Sierra Club argues, it is interested in a "comprehensive settlement that ensures restoration[,] . . . future protection of . . . sensitive resources . . . and provides mechanisms that deter actions that could lead to another oil spill disaster."  (*Id.*)

Even accepting that Sierra Club's interest extends to some amorphous concept of a "comprehensive" settlement, Sierra Club provides no legal authority supporting its claim that this interest is sufficient for Rule 24(a)(2) purposes.  Sierra Club relies solely on *United States v. Carpenter*, and overstates the applicability of that case to its argument.  The *Carpenter* intervenors filed their motion after they determined that the government had ceded a property interest in the land at issue as part of a settlement, which determination they made ***after the settlement had been announced and was on the record***.  298 F.3d 1122, 1124 (9th Cir. 2002) (motion was filed after the District Court's "lifted the confidentiality order covering the mediation proceedings so that the agreement could be publicly disseminated"); *see also United States v. Carpenter*, 526 F.3d 1237, 1239 (9th Cir. 2008) (review of district court's second denial

---

[7]     We note that Judge Shushan's analysis of this argument is not so clearly limited to SEPs.  In addition to finding that "an interest in environmental projects to mitigate the results of the oil spill . . . is too contingent to be considered direct and substantial," Judge Shushan found that "*any plans* for the restoration of natural resources" are subject to public notice and comment.  (*See* Order, Dkt. 3065 at 10 (emphasis added))

of intervention noting that "[i]t was … after the settlement had been proposed and the intervenor environmentalists had become aware of the terms of the settlement" that the motion was filed).

Here, there is no "proposed" settlement at all, much less one that has been posted to the public record for interested parties to evaluate.  An interest in a settlement that may or may not occur at some undetermined point in the future is simply inadequate to justify intervention of right.  *See Standard Heating & Air Conditioning v. City of Minneapolis*, 137 F.3d 567 (8th Cir. 1998) (interest in potential settlement not sufficient for Rule 24 intervention); *Ross*, 426 F.3d at 758 (interest may not be "remote or contingent.").  Further, as Judge Shushan noted, Sierra Club's interest in the terms of any settlement is protected by the requirement that settlement be subjected to public notice and comment.  (*See* Order, Dkt. 3065 at 14 (citing 28 C.F.R. § 50.7).)

3.   <u>The Interests Asserted by Sierra Club in Its Member Declarations Do Not Justify Intervention in a Claim for Penalties by the United States</u>.

As the United States and BP argued in its briefing, (*see* BP Opp., Dkt. 1438 at 2, 24-25; Govt Opp, Dkt. 1411 at 10), and as Judge Shushan concluded (*see* Order, Dkt. 3065 at 10), allowing Sierra Club to intervene in a civil penalty action on the basis of the generalized interests it asserts would open the floodgates for hundreds of parties who claim to share these interests. Sierra Club attempts to ameliorate this concern by noting that there have been no other applications to intervene yet and that further applications would be untimely.  (Objections, Dkt. 3450-1 at 7.)  That does not undercut Judge Shushan's conclusion that "[e]ven if further applications would not be timely, the Court cannot ignore the precedent" that would be established if it were to grant intervention.  *See Aransas Project v. Shaw*, 404 Fed. App'x 937, 942 (5th Cir. 2010) (assertion that "no additional applicants have moved to intervene since the trial court issued its decision" did not "undermine that court's analysis")).

Sierra Club argues that denial of its motion, combined with this Court's dismissal of the

- 10 -

D1 Master Complaint, would effectively bar any formal participation by environmental groups in this litigation.  (Objections, Dkt. 3450-1 at 7.)  This is incorrect: as Judge Shushan held (*see* Order, Dkt. 3065 at 21), and as BP and the United States explained (*see* BP Opp., Dkt. 1438 at 17; Gov't Opp., Dkt. 1411 at 24), Sierra Club may participate by moving to file an *amicus curiae* brief on issues where it can be of assistance.  Further, if a settlement is reached, Sierra Club can submit comments to be considered by the United States and then by the Court.  And if Sierra Club or any of its members claim to have suffered compensable damages under OPA, they are free to do as many have done and assert a claim consistent with OPA's presentment requirements

4.    Sierra Club Misreads *Trbovich*.

Sierra Club argues that *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), stands for the proposition that "intervention of right exists in this situation because it is the only means by which to protect the applicant's interests in the action."  (Objections, Dkt. 3450-1 at 7-8.)[8]  This is a significant over-reading of the Supreme Court's holding.

As an initial matter, the facts of *Trbovich* are distinguishable.  There, the Secretary of Labor filed an action under the Labor Management Reporting and Disclosure Act ("LMRDA") to set aside a union's election of officers because of alleged violations of LMRDA.  *See* 404 U.S. at 632.  The statute provided that the Secretary's suit was the exclusive remedy, and that union members were barred by law from bringing private actions.  *See id.* at 633.  Since the Secretary thereby served as union members' sole advocate for the protection of their rights against the union, and because of the Secretary's concurrent — and potentially conflicting — duty to

---

[8]    Sierra Club also argues that Judge Shushan "affirm[ed]" this principle in holding that "[i]f Congress had intended to deny a right to intervene in [a CWA Section 311] an action, it could have so provided."  (Objections, Dkt. 3450-1 at 7 (quoting Order, Dkt 3065 at 4).)  Once again, Sierra Club misconstrues Judge Shushan's conclusion, which indicates only that she did not accept the arguments of the United States and BP that the fact that Congress explicitly provided for citizen intervention in specific instances indicates that Congress did not intend that such a right exist in other instances.  (*See* Gov't Opp., Dkt. 1411 at 4-6; BP Opp., Dkt. 1438 at 4-7.)

consider the broader public interest, the Court, after detailed analysis of the legislative history of the LMRDA, held that the union member who filed the original complaint with the Secretary was entitled to limited intervention under Rule 24(a)(2). *See id.* at 635-36. Here, by contrast, the obligations of the government are dictated by statute (*i.e.*, it is "the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States," 33 U.S.C. § 1321(b)(1)), and those obligations are perfectly consistent with the interests of Sierra Club and its members.

Moreover, the substantive rights at issue in *Trbovich* were the rights to have union elections conducted in conformity with the Act. The LMRDA clearly recognized the interest in having union elections conducted in conformity with its provisions as belonging to the union members. As the Supreme Court found, the Act "gives the individual union members certain rights against their union" and "those rights" were being enforced in the Secretary's action. 404 U.S. at 636. Only the procedural remedy, not the substantive right, was curtailed by the exclusivity provision of the Act. As discussed in Section I.A, *supra*, the substantive rights in this case belong to the government alone and not to Sierra Club in any measure.

Sierra Club similarly claims that *Trbovich* "paves the way to intervention under Rule 24(a)(2)" with respect to the United States' OPA claim. (Objections, Dkt. 3450-1 at 8.) This argument fails for several reasons. **First**, OPA is a compensation statute under which any party with a cognizable injury may bring an individualized action for damages. To the extent Sierra Club or its members have in fact suffered a cognizable injury under OPA, they can pursue the remedies available through the OPA process. As to OPA claims, Sierra Club clearly cannot meet the third factor of *Hunt* — "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," 432 U.S. at 343. Of logical necessity, the

compensatory nature of OPA forbids representative actions; instead, the individual possessing an OPA cause of action must participate in such a suit him or herself.  There is no other option.

*Second*, the United States seeks a declaratory judgment that Defendants are liable to pay damages **to the United States**.  Under the Fifth Circuit's reasoning in *NOPSI*, these substantive rights belong to the United States government; they do not belong to Sierra Club, or to any other would-be intervenor.  Sierra Club argues that Rule 24(a)(2) does not require the intervenor to have "an independent cause of action" against the defendant or have a right to sue under the law in which the plaintiff seeks relief.  (Objections, Dkt. 3450-1 at 8)  Even if true, neither Rule 24(a)(2) nor the cases Sierra Club cites dispense with the requirement that the proposed intervenor have the requisite direct, substantial, and legally protectable interest in the subject matter of the action.  An intervenor cannot substantive rights that do not belong to him,[9] regardless of whether the intervenor "ha[s] its own cause of action against the defendant." (*Id.*)

Sierra Club further argues that it has a "special interest" in the government's OPA claim because "it may be tried first, separate from the CWA § 311 claim."  (*Id.* at 9.)  Thus, Sierra Club reasons, the OPA determination "will have a direct effect on the 'gross negligence' determination" in a subsequent CWA proceeding, and "to protect its interests in the penalty

---

[9]      Nor are the facts of those cases analogous to those here.  In *Diaz v. S. Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970), the government moved to intervene in a case in which it sought to assert a tax lien against funds that plaintiffs sought to recover from a Swiss corporation.  The Fifth Circuit granted the motion, finding that, far from being "speculative in nature," the government sought to attach a lien — "clearly a legally cognizable interest in property" — to "a res that is before the court." *Id.* at 1124.  Likewise, in *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989), detainees moved to intervene in a suit challenging operation of the federal facility in which they were held.  The detainees claimed that the government's "practice of keeping alien felons along with nonviolent alien detainees and its hiring of untrained security personnel [was a] violation of" applicable regulations and standards. *Id.* at 1214.  The lawsuit sought both declaratory judgment with respect to the government's "affirmative misrepresentations" that the prison would not be used in that manner and a writ of mandamus ordering the government to remove all alien felons and to obey the applicable caps on prison population. *Id.* at 1202.  Thus, the Eleventh Circuit held, "[b]y any imaginable yardstick, the detainees [had] a direct, substantial, legally protectable interest in the lawsuit challenging the operation of [the prison] ***and are asserting legal rights of their own***." *Id.* at 1214.  Finally, *Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994), simply recites the standard, which is not relevant to the specific issues of that decision.

assessment under CWA § 311 . . . it is necessary for Sierra Club to be a party to the trial of [the gross negligence] issue under OPA." (*Id.*)  As detailed in BP's earlier briefing, however, the practical effect of a gross negligence finding under OPA finding is simply to increase the maximum amount of penalties that the Court would have the discretion to assess.  (*See* BP Opp., Dkt. 1438 at 16.)  We are not aware of any case — nor does Sierra Club point to any — in which a court has granted intervention of right based on a party's purported interest in the amount of penalties assessed.  Moreover, the Court has decided not to press ahead with the OPA test trials it originally contemplated.  (Order, Dkt. 1761 at 3 (Mar. 25, 2011))  Sierra Club made its OPA test-trials point before the Court made that determination, but — seemingly impervious to the passage of time — it reiterated the same point *in its July 25, 2011* objections to Judge Shushan's ruling that *OPA test trials* were being planned for *June 2011*. (Objections, Dkt. 3450-1 at 9). The reliance on superseded future trial plans shows Sierra Club to be grasping at straws.

Finally, Sierra Club asserts that there is "precedent" — citing *In re Acushnet River*, 712 F. Supp. 1019 (D. Mass. 1989) — "for public interest groups to intervene in natural resource damages cases like OPA in which the government, as the trustee for natural resources, has enforcement authority."  (Objections, Dkt. 3450-1 at 9)  *Acushnet River* is wholly inapposite. *Acushnet River* was a Rule 24(b) case where, as in *Carpenter*, intervention was permitted *after* the settlement between the government and defendant had been announced and intervenors determined that their interests had not been adequately represented by the government.  *See* 712 F. Supp. at 1022-23.  Moreover, the scope of the intervention was very limited: the intervenors could not participate in discovery, witness examinations, or taking or contesting of evidence. *See id.*  Here, any assertion by Sierra Club of an interest in natural resource damages ("NRD") is premature.  The government has not even asserted a claim for NRD, only a generalized claim for

- 14 -

a declaration of OPA liability.  The only issue with respect to OPA is whether the Defendants are liable to the government.  Even if the United States were to amend its Complaint to assert an NRD claim, *Acushnet River* would only apply if and when a settlement were reached and Sierra Club had a basis for alleging that that settlement did not adequately address its interest.

> 5.   <u>The Relief Sought by Sierra Club Is Not Within the Zone of Interest Protected by the Substantive Provisions Under Which the United States Is Proceeding</u>.

Sierra Club takes issue with Judge Shushan's application of the *NOPSI* zone of interests tests, as a result of which she concluded that "Sierra Club's interests fall outside of the zone of interests of the statutes under which the United States is proceeding," (Order, Dkt. 3065 at 13.).

Sierra Club is fond of arguing that the *NOPSI* case supports its bid for intervention. (Sierra Club Reply, Dkt. 1633 at 18-20; Objections, Dkt. 3450-1 at 10-12).  Nothing could be further from the truth.  The very *NOPSI* block quotation Sierra Club repeatedly relies on reinforces that Sierra Club must demonstrate that it effectively possesses its own right to obtain relief against the defendants:

> [T]his zone of interest standing test in public law cases is somewhat analogous to the Rule 17(a) standard that the party possess a substantive right under the applicable law **. . . .**  In a sense, a party within the zone of interests protected by a statute may possess a ***type of substantive right not to have the statute violated***.

*NOPSI*, 732 F.2d at 464-65 (emphasis added).  Sierra Club simply lacks its own rights either to see CWA Section 311 not be violated or to assert OPA damages claims owned by others.

Moreover, Judge Shushan examined Sierra Club's interests in the specific substantive provisions of the CWA and OPA under which the government has brought its claims.  (*See* Objections, Dkt. 3450-1 at 11)[10]  Sierra Club argues that it is "in an analogous position to the

---

[10]     Sierra Club again cites *Clarke v. Securities Industry Association*, 479 U.S. 388, 399 (1987), in support of its claim that the "zone of interest" test is not intended to be "especially demanding."  However, as Judge Shushan

Footnote continued on next page

plaintiffs in *Save Ourselves, Inc. v. U.S. Army Corps of Engineers*, 958 F.2d 659 (5th Cir. 1992)," in which the Fifth Circuit found that environmental organizations' satisfied the "zone of interest" test.  (Objections, Dkt. 3450-1 at 11-12).

Not so.  First, *Save Ourselves* was neither a suit for penalties nor a Rule 24 case; it involved a claim by environmental groups for declaratory judgment that a particular area was a wetland subject to regulation under CWA Section 404, such that the Army Corps of Engineers and the Transportation Authority could not build an airport there.  *Id.* at 660.  The Fifth Circuit found that plaintiffs' interest "in protecting and preserving the clean water and public health in Ascension Parish, Louisiana and the United States . . . falls within the 'zone of interests' protected by the **relevant provisions of the Clean Water Act**."  *Id.* at 661 (emphasis added).  The court did not base its finding on the intervenors' interest falling within the zone protected by the CWA generally; it focused on the **specific** provisions at issue, *i.e.*, those relating to wetlands.  More importantly, the court went on to find that plaintiffs had failed to show organizational standing under *Lujan* because they failed to allege that any of their members suffered a direct injury as a result of the Corps' refusal to exercise its jurisdiction under the CWA.  *Id.* at 662.

Judge Shushan applied the zone of interests test by evaluating whether Sierra Club's asserted interests fall within the zone of interests protected by CWA Section 311 and OPA Title I.  This was entirely appropriate and consistent with precedent of the Fifth Circuit and other Courts of Appeals.  *See, e.g.*, *United States v. Pitney Bowes*, 25 F.3d 66, 72 (2d Cir. 1994) ("Rule

---

Footnote continued from previous page

noted, the quoted statement from *Clarke* arose in the context of agency review, where the test denies a right of review of plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.  (*See* Order, Dkt. 3065 at 8 n.9 (citing *Clarke*, 479 U.S. at 399).)  The key difference is that any party is presumed to possess the ability to seek judicial review of federal agency action.  *See, e.g., Kucana v. Holder*, 130 S. Ct. 827, 831 (2010).  No such presumption remotely exists in favor of Rule 24(a)(2) intervention — either in general, or especially into a federal government enforcement action, where the opposite presumption is applied, as Judge Shushan correctly held.  (*See* Order, Dkt. 3065 at 16-19)

24(a)(2) intervention of right requirements must be examined in the context of the statutory scheme under which the underlying litigation is being pursued …. Particular focus must be had on the posture of that litigation at the time the motion to intervene is made." (citing *Hooker Chems. & Plastics*, 749 F.2d at 983). Judge Shushan did not "misappl[y]" "the Fifth Circuit's zone of interest standard" (Objections, Dkt. 3450-1 at 12); but rather concluded, correctly, that Sierra Club asserted "no more than a generalized interest in ensuring that the environmental laws as they relate to the Gulf of Mexico and its natural resources are enforced," which is not within the zone of interests under the statutory provisions at issue in this case. (Order, Dkt. 3065 at 13.)

6.   Judge Shushan Did Not Ignore or Misapply *Laidlaw*.

Sierra Club takes issue with Judge Shushan's analysis of its claims in the context of the Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000). Judge Shushan correctly concluded that *Laidlaw* is confined to those situations in which a violation is ongoing at the time the action is commenced, and did not extend to cases such as this where the penalties sought are purely "retrospective." (Order, Dkt. 3065 at 13-14.) Sierra Club's claim that Judge Shushan "erred" (Objections, Dkt. 3450-1 at 12) or "ignore[d] the holding of *Laidlaw*" (*id.* at 13) is based on two flawed premises: (1) that the deterrent element of the *Laidlaw* holding extends to wholly past violations; (2) that a Section 311 claim for penalties is susceptible to intervention because it does not require an ongoing violation. Moreover, Sierra Club stresses that the facility in *Laidlaw* was "shutdown." (*Id.*) But this is disingenuous — the status of the plant was a disputed factual matter and it appeared Laidlaw had the lawful right to reopen its plant, since it retained its CWA permit. *See Laidlaw*, 528 U.S. at 193-94.

a.   *The deterrent element articulated in* Laidlaw *is limited to ongoing violations.*

Sierra Club correctly states that *Laidlaw* noted that civil penalties can have a deterrent

effect, but ignores that the Court so held in the context of a *current and ongoing* violation:

> It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury *due to illegal conduct ongoing at the time of suit*, a sanction that *effectively abates that conduct* and prevents its recurrence provides a form of redress. . . . To the extent that [civil penalties] *encourage defendants to discontinue current violations* and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury *as a consequence of ongoing unlawful conduct*.

528 U.S. at 186 (emphasis added).  Thus, Judge Shushan's distinction between a case in which violations are ongoing at the time of suit and a "retrospective" action for penalties in which recurrence is not possible is not, as Sierra Club argues, "inconsequential" (Objections, Dkt. 3450-1 at 14).  Far from being "inconsequential," the fact that the discharges were ongoing at the time the *Laidlaw* complaint was filed was a key factor in the Court's decision.  This is evidenced by the fact that the Court took care to distinguish and preserve its earlier holding in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 87-88 (1998): "*Steel Co.* held that *private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations*."  *Laidlaw*, 528 U.S. at 188 (emphasis added).

Relatedly, Sierra Club argues that the fact that the discharge in *Laidlaw* was ongoing is "important only because the CWA citizen suit provision . . . under which that case was brought, requires that a defendant's violation be ongoing at the time a citizen plaintiff initiates an action." (Objections, Dkt. 3450-1 at 14.)  To the contrary, this fact is important because, as the Court held in *Steel Co.*, a complaint that is devoid of allegation of a "continuing violation or the imminence of a future violation," and features only a "generalized interest in deterrence" does not confer standing.  523 U.S. at 108-09.  Moreover, at least one court has applied the *Steel Company* reasoning (as articulated in *Laidlaw*) in the absence of a statute that explicitly requires an ongoing violation.  *See Fuji Photo Film Co. v. ITC*, 474 F.3d 1281, 1289-90 (Fed. Cir. 2007)

- 18 -

(plaintiff could not challenge the FTC's penalty determination "unless the civil penalties are for violations that are ongoing at the time of the complaint and that could continue into the future if undeterred") (quoting *Laidlaw*, 528 U.S. at 188)).

> b.  *Citizen Standing Under Section 311 Requires a Continuing Violation.*

Sierra Club further contends that because CWA Section 311 does not explicitly require an ongoing violation, it is not barred from intervention in the same manner as it would be were it pursuing a citizen suit claim under CWA Section 505.  (*See* Objections, Dkt. 3450-1 at 14-15.) As in its briefing in support of its Motion to Intervene, however, Sierra Club cannot identify a single legal authority recognizing a direct, substantial, and legally protectable interest held by a private plaintiff in the deterrent effect of a penalty awarded to the United States.  It cannot point to such an authority, because none exists; and none exists because Section 311 is an exclusive area for enforcement by the United States.  (*See* § I.A, *supra*; BP Defs' Motion to Dismiss D1 Complaint, Dkt. 1441-1 at 11-13.)

**B.  <u>Disposition of This Matter Will in No Way Impair Sierra Club's Interests</u>.**

In considering whether Sierra Club met the impairment requirement for intervention of right, Judge Shushan identified five possible outcomes[11] of the government's claims and determined that none would, as a practical matter, impair or impede Sierra Club's ability to protect its interest.  (*See* Order, Dkt. 3065 at 14-15.)  Sierra Club argues that Judge Shushan erred in reaching this conclusion, and asserts three potential impairments: (1) an assessment of "anything less than the maximum amount of penalties," which (it is said) would fail to deter BP and other parties; (2) a resolution, including settlement, that is not adequately protective of Sierra

---

[11]    These were: "(1) either the defendants are found liable for CWA penalties or they are not; (2) if they are liable for penalties, the penalties may be increased for gross negligence; (3) the defendants are liable to pay damages to the United States under OPA or they are not; (4) injunctive relief is imposed or it is not; and (5) the case is settled or it is not."  (Order, Dkt. 3065 at 14.)

Club's interest in holding the responsible parties accountable to a degree that deters future similar conduct; and (3) a "determination of issues" in this case that has "direct consequences" on other Sierra Club litigation.  (Objections, Dkt. 3450-1 at 15-16.)

As with so many of its other arguments, Sierra Club fails to identify any legal authority supporting the notion that a party's interest in pushing the *amount* of a penalty to its extreme limit is sufficient to justify the impairment prong.  Nor does Sierra Club elaborate as to how an interest in punishing violators of an environmental statute to the maximum extent differs from the interest of all other citizens in ensuring that laws are fully enforced.

Moreover, Department of Justice's regulations require that the settlement of any action to enjoin "discharges of pollutants" be subject to public comment.  *See* 28 C.F.R. § 50.7(a). Because, as the government explained in its Brief in Opposition, the United States construes "discharges of pollutants" broadly, the requirement for public comment applies in any case in which injunctive relief is sought — including this one — irrespective of whether that relief is part of the proposed settlement.  (*See* U.S. Opp., Dkt. 1411 at 13.)  Courts have held that this comment period is sufficiently protective of the interests of would-be intervenors in settlements. *See, e.g.*, *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir. 1982) (finding that proposed intervenors had adequate opportunity to "air their objections" during the comment period).

Finally, Sierra Club provides no plausible explanation as to how "conflicting or inconsistent results" could arise as between this litigation and the others to which it is a party, much less an explanation for how such a circumstance is "unavoidable."  None of the ongoing litigation matters to which Sierra Club refers involves a CWA or OPA claim under which another court could interpret one of the provisions at issue in this case in a manner that is either conflicting or inconsistent.  We know of no case — nor has Sierra Club pointed to any — in

which a court has found practical impairment under these circumstances.  Moreover, as Judge Shushan noted, the issues in this case are specific to whether Defendants are liable for penalties or damages under two discrete statutes, and, if so, for how much.  Sierra Club provides no indication as to how the outcome of these issues would be inconsistent or conflict with lawsuits brought under different statutes against different defendants.

### C.   Judge Shushan Properly Determined That the United States Adequately Represents the Sierra Club's Interests.

Sierra Club argues that Judge Shushan concluded that it failed to satisfy the adequate representation prong "by relying on the fact that Sierra Club does not contend that there is collusion."   (Objections, Dkt. 3450-1 at 17.)   This completely misstates Judge Shushan's analysis.  Judge Shushan identified and applied in detailed fashion the Fifth Circuit's test for the adequate representation prong (as set forth in *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996)) and determined that Sierra Club's interests were neither different nor adverse, and thus overcame neither presumption under *Edwards*.  (*See* Order, Dkt. 3065 at 15-19.)

Sierra Club notes as an initial matter that, to show that its interests will not be adequately represented in this case, it need only demonstrate that the government's representation "may be" inadequate, which is a "minimal" showing.  (Objections, Dkt. 3450-1 at 17 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994).)   As the Fifth Circuit has cautioned, however, while the potential intervenor's burden is indeed minimal, "it cannot be treated as so minimal as to write the requirement completely out of the rule."  *Haspel & Davis Milling & Planting Co. Ltd v. Bd. of Levee Comm'rs*, 493 F.3d 570, 579 (5th Cir. 2007).

### 1.   Sierra Club Fails to Demonstrate That Its Interests Are Sufficiently Different From Those of the United States.

Sierra Club seeks to overcome the first presumption in the *Edwards* test — that its interests are adequately represented by the government as such — by reference to: (1) the

- 21 -

government's supposed "pattern, practice and policy of indifference to regulating BP's offshore oil drilling"; (2) the government's representation of all people means that it does not represent Sierra Club's unique interests; and (3) the "inarguable point that Sierra Club, unlike the government and the U.S. Department of Justice, is not subject to shifting politics and policies." (Objections, Dkt. 3450-1 at 18.)

Sierra Club's reference to the government's alleged "support" of offshore drilling is a frequent theme throughout its briefing, yet the Sierra Club provides no indication of how this "different" interest is implicated by an enforcement action for penalties under the CWA or a declaration of OPA liability.  This case is not about the future of offshore drilling.  Sierra Club's brief is similarly silent with regard to how its "regulat[ion of] BP's offshore oil drilling . . . "undermines [the government's] credibility to now diligently prosecute the party it was charged with regulating," (*Id.* at 18.).  In any case, the Court, like Judge Shushan, is certainly in a position to take notice of the fact that the United States is vigorously prosecuting this matter; any assertion to the contrary is baseless.  (*See* Order Dismissing D1 Compl., Dkt. 2784 at 7.)

Further, the notion that the government's representation of all people prevents it from adequately representing parties with more specific interests has been rejected by the Fifth Circuit.  *See Haspel*, 493 F.3d at 579 (noting that where the parties share the same "ultimate objective," the fact that the intervenor's and the plaintiff's interests varied in their expansiveness did not render plaintiff's representation inadequate); *Kneeland v. NCAA*, 806 F.2d 1285, 1288 (5th Cir. 1987) (rejecting argument that intervenors were inadequately represented because they had the "stronger" interest in the litigation compared to the regulatory body, because the parties shared the same ultimate objective").[12]

---

[12]    The cases cited by Sierra Club in support of this argument are distinguishable.  *See Mausolf v. Babbitt*, 85 F.3d

Footnote continued on next page

Finally, Sierra Club's argument with respect to the "politics and policies" to which the United States is allegedly susceptible is pure speculation and without any factual basis.

      2.    <u>Sierra Club Fails to Demonstrate That Its Interests Are Adverse to the United States</u>.

In support of its claim that the government's interests in this case are adverse to its own, Sierra Club points to differing positions in other Gulf-related matters. (Objections, Dkt. 3450-1 at 22 & n.8.) Sierra Club relies on *John Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001), as providing for intervention of right where the government's position is contrary to those of the intervenor in a related suit. *Glickman*, however, involved two cases where intervention was sought with respect to the identical issue, but in which the government had taken diametrically opposing positions. *Id.* at 381. In this case, the pending matters identified by Sierra Club do not even involve the same statutes, much less the same substantive issue.

Sierra Club further claims that the United States "ignores the conflict of interest established by its contracts with oil companies," which constitutes a "business relationship, worth billions of dollars." (Objections, Dkt. 3450-1 at 23.) For the reasons articulated in BP's Opposition to Sierra Club's motion, however, this argument lacks any support or credibility whatsoever. (*See* BP Opp., Dkt. 1438 at 21-22 (noting that penalties imposed against Defendants are required by statute to be deposited into the Oil Spill Liability Trust Fund, and a declaratory judgment under OPA will render Defendants liable for response costs and royalties to federal, state and local governments — funds which the Department of Justice would not or could not

---

Footnote continued from previous page

1295, 1303 (8th Cir. 1996) (noting that government had an "unquestioned" prior history of waiving and failing to enforce regulations that intervenors sought to enforce). In the second case cited by Sierra Club, *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992), the State had moved to intervene in a suit for declaratory and injunctive relief regarding the practices of the Forest Service in a national forest. *Id.* The action involved questions relevant to the future use of the property, including by tourists that generate tax revenue for the state. Here, the government's interest is prescribed by statute. *See* Section I.A, *supra*.

forego in favor of preserving Defense Department contracts).)

## II.   DENIAL OF PERMISSIVE INTERVENTION UNDER RULE 24(b) WAS PROPER.

Finally, Sierra Club provides no credible reason why it should be allowed to disrupt this litigation as a permissive intervenor, rather than offer its insights as an *amicus curiae*.  Judge Shushan determined that "intervening status was not required to permit Sierra Club to present its positions" and, accordingly, denied its motion for permissive intervention pursuant to Rule 24(b).  Sierra Club nonetheless insists that, because its "claims have questions of law and fact in common with the instant litigation," and because it will contribute to the development of important factual issues, permissive intervention is appropriate.

While an intervenor's potential contribution to development of such issues is a factor in granting permissive intervention, the Fifth Circuit has held that courts also must consider "whether the intervenors are adequately represented by other parties."  *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989).  Further, "[w]hen a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented," and permissive intervention is inappropriate.  *Id.*  Notwithstanding Sierra Club's protestations, nothing in its briefing supports the conclusion that the United States' and the Sierra Club's ultimate objectives diverge.

Moreover, Sierra Club's argument that intervention will not unduly delay or prejudice adjudication is belied by its subsequent claim that it intends to engage in "independent discovery" and to "uncover facts affecting the amount of penalties," (Objections, Dkt. 3450-1 at 25).  In litigation this complex, even the alternative to a full intervention of imposing limiting conditions would be too burdensome.  Even to consider how such conditions could be framed in advance is to quickly doom the Court to becoming embroiled in an endless series of unseemly

disputes about when and where Sierra Club can seek discovery, file motions, and take positions in Court that second guess the government's enforcement discretion.  Such an approach ignores the realities of the litigation process even in an ordinary case.  As the Fifth Circuit has held:

> Additional parties always take additional time.  Even if they have no witnesses of their own, they are the sources of additional questions, briefs, arguments, motions and the like which tend to make the proceedings a Donnybrook Fair.  Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

*Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984).  Accordingly, to the extent Sierra Club wishes to participate in this litigation, the only appropriate vehicle is as an *amicus curiae*.

Sierra Club claims that the Court should rest assured that its participation would not be disruptive because it would consult with the government before acting (Objections, Dkt. 3450-1 at 24), but this attempt at reassurance rings hollow after reading just the prior page how widely Sierra Club claims its "adversarial posture" diverges from the government's.  (*Id.* at 23)

Also hollow are the host of "maybes" that Sierra Club posits as reasons why *amicus* status is insufficient, *i.e.*, it is "***likely***" that Sierra Club's arguments will not be vigorously prosecuted absent intervention, or Sierra Club "***might*** uncover" facts affecting the amount of civil penalty, or the government and Defendants "***may***" not be willing to advance an argument that would leave it exposed to increased culpability.  (*Id.* at 25 (emphasis added))  Each of these shots at the dartboard is inherently speculative, and none support permitting Sierra Club to inject itself into this already extremely complex litigation.

## CONCLUSION

Sierra Club has failed to demonstrate that Magistrate Judge Shushan's Order denying intervention was clearly erroneous or contrary to law under Rule 72(a).  BP thus respectfully submits that Sierra Club's Objections to Order of the Magistrate Judge Denying Sierra Club's Motion to Intervene should be denied, and the Order denying intervention affirmed.

Date:   August 23, 2011     Respectfully submitted,

            /Don K. Haycraft     
            Don K. Haycraft (Bar #14361)
            (dkhaycraft@liskow.com)
            R. Keith Jarrett (Bar #16984)
            (rkeithjarrett@liskow.com)
            LISKOW & LEWIS
            One Shell Square
            701 Poydras Street, Suite 5000
            New Orleans, Louisiana  70139-5099
            Telephone:  (504) 581-7979
            Facsimile:  (504) 556-4108

            And
            Richard C. Godfrey, P.C.
            (richard.godfrey@kirkland.com)
            J. Andrew Langan, P.C.
            (andrew.langan@kirkland.com)
            Kirkland & Ellis LLP
            300 North LaSalle Street
            Chicago, IL  60654
            Telephone:  312-862-2000
            Facsimile:  312-862-2200

            Robert R. Gasaway
            (robert.gasaway@kirkland.com)
            Jeffery Bossert Clark
            (jeffrey.clark@kirkland.com)
            Kirkland & Ellis LLP
            655 Fifteenth Street, NW
            Suite 1200
            Washington, DC  20005
            Telephone:  (202) 879-5000
            Facsimile:  (202) 879-5200

            Joel M. Gross
            (joel.gross@aporter.com)
            Allison B. Rumsey
            (allison.rumsey@aporter.com)
            Kerri L. Stelcen
            Arnold & Porter LLP
            555 Twelfth Street, NW
            Washington, DC 20009

Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

**Attorneys for BP America Production Company
and BP Exploration & Production Inc.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of August, 2011.

/s/ Don K. Haycraft _____