# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "DEEPWATER HORIZON" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document applies to: | JUDGE BARBIER |
| In re: Triton Asset Leasing GmbH Case No. 2:10-cv-02771-CJB-SS | MAGISTRATE SUSHAN |

## ANSWER AND CLAIM OF CRAIG MICHAEL BRELAND

## ANSWER

Claimant Craig Michael Breland states the following as his Answer to the Complaint and Petition for Exoneration from or Limitation of Liability filed by Triton Asset Leasing GmbH, Transocean Holdings L.L.C., Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. ("Petitioners"):

1

## FIRST DEFENSE

The allegations of the Complaint fail to state a claim upon which relief may be granted.

## SECOND DEFENSE

The Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*, is discriminatory and, thus, unconstitutional in that it deprives Claimant of rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

## THIRD DEFENSE

The limitation fund is inadequate, and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in the Complaint for Exoneration From or Limitation of Liability.  Pursuant to Rule F(1) of the Supplemental Rules for Admiralty and Maritime Claims, the proper limitation fund must be deposited at the

time of filing.  Petitioners' deposit, at the time of filing, did not meet this standard.

## FOURTH DEFENSE

The Limitation of Liability Act is not applicable to the instant case because, at all times pertinent herein, the DEEPWATER HORIZON was operated in a willful, wanton, and reckless manner.  Moreover, the conduct and actions which led to Claimant's injuries took place with the privity or knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the vessel involved.

## FIFTH DEFENSE

To the extent that Petitioners' insurers attempt to avail themselves of the limitation/exoneration defense, Claimant asserts that the protections of the Limitation of Liability Act are unavailable to insurers of vessel owners under the circumstances.  Moreover, no *prima facie* case has been made establishing that Petitioners' insurers are entitled to avail themselves of the Limitation of Liability Act.

## SIXTH DEFENSE

The Complaint for Exoneration From or Limitation of Liability contains vague and ambiguous statements that are deficient under Federal Rule of Civil Procedure 12(e), and Claimant seeks definitive statements of the allegations.

## SEVENTH DEFENSE

The events culminating in the injuries and damages to Claimant were the result of the negligence, fault, or want of due care on the part of Petitioners and/or those for whom Petitioners are responsible, and/or the unseaworthiness of the DEEPWATER HORIZON, all of which was within the privity and knowledge of Petitioners, for which the Complaint for Exoneration From or Limitation of Liability should be denied.

## EIGHTH DEFENSE

The events culminating in the injuries and damage to Claimant were not the result of any negligence, fault, or want of due care on the part of Claimant or those for whom Claimant may be responsible.  Furthermore,

Petitioners have the burden of proof on this issue, and Petitioners cannot meet that burden.

## NINTH DEFENSE

Claimant further alleges that there was insurance coverage on the DEEPWATER HORIZON insuring Petitioners in the event of an occurrence such as that which is the subject of Claimant's claims, and the proceeds of said insurance policy should be included in the limitation proceeding in the event the Court determines that the limitation proceeding is appropriate.

## TENTH DEFENSE

Claimant states that the proceeds of any judgment, award, or settlement which may be received by Petitioners from any third party in recompense of any losses or damages sustained to the property or interests of Petitioners, as a result of the fault or alleged fault of said third party, must be included in the limitation fund.

## ELEVENTH DEFENSE

Claimant reserves the right to contest the appraisal value of the DEEPWATER HORIZON, its engines, apparel, appurtenances, pending freight, etc., and the adequacy of the security.

## TWELFTH DEFENSE

The limitation fund is inadequate and should be increased and/or the limitation action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by Petitioners.

AND NOW, specifically reserving all defenses asserted herein, Claimant responds to the individual Paragraphs of the Complaint for Exoneration From or Limitation of Liability, upon information and belief, as follows:

1.     The allegations contained in Paragraph 1 of the Complaint are denied for lack of knowledge or information sufficient to form a belief

about the truth of said allegations.

2.      The allegations contained in Paragraph 2 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

3.      The allegations contained in Paragraph 3 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

4.      The allegations contained in Paragraph 4 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

5.      The allegations contained in Paragraph 5 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

6.      The allegations contained in Paragraph 6 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

7

7.     The allegations contained in paragraph 7 of the Complaint are denied.

8.     The allegations contained in Paragraph 8 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

9.     The allegations contained in Paragraph 9 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

10.     The allegations of Paragraph 10 of the Complaint are denied.

11.     The allegations of Paragraph 11 of the Complaint are denied.

12.     The allegations of Paragraph 12 of the Complaint are denied.

13.     The allegations contained in Paragraph 13 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

14.     The allegations contained in Paragraph 14 of the Complaint are

denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

15.     The allegations contained in Paragraph 15 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

16.     The allegations contained in Paragraph 16 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

17.     The allegations contained in Paragraph 17 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

18.     The allegations of Paragraph 18 of the Complaint are denied.

19.     The allegations contained in Paragraph 19 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

20.     The allegations contained in Paragraph 20 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

21.     The allegations contained in Paragraph 21 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

22.     The allegations contained in Paragraph 22 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

23.     The allegations contained in Paragraph 23 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

24.     The allegations contained in Paragraph 24 of the Complaint are denied for lack of knowledge or information sufficient to form a belief about the truth of said allegations.

25.     The allegations contained in the prayer for relief are not

statements of facts, but conclusions of law, for which no response is necessary from this Claimant. However, if a response is necessary, said allegations are denied. Claimant specifically denies the adequacy of the valuation of the DEEPWATER HORIZON as asserted by Petitioners. Claimant further re-urges prior objections to Petitioners' failure to include in the limitation fund any insurance proceeds and any sums received or which may be received by Petitioners from any third party as a result of the fault or alleged fault of said third party. Claimant further denies the adequacy of Petitioners' *Ad Interim* Stipulation for an amount equal to the value of their interest in the DEEPWATER HORIZON and its appurtenances and hereby makes demand for Petitioners to either deposit cash proceeds into the registry of the Court in the amount of the stated value of the vessel and/or provide a bond for the value of the vessel issued by a reputable surety company to be approved by the Court. In so doing, Claimant specifically reserves the right to contest the stated value of the vessel and the limitation fund as aforesaid.

WHEREFORE, Claimant prays that the Petition filed herein seeking exoneration from or limitation of liability and any and all injunctions or restraining orders granted in this matter be dismissed and dissolved and, in the alternative, that Petitioners be required to deposit additional security in the amount required by law, in default of which the exoneration/limitation complaint should be dismissed and pending which any injunction or restraining order should be dissolved.

## **CLAIM IN LIMITATION**

Claimant Craig Michael Breland states the following as his Claim against Triton Asset Leasing GmbH, Transocean Holdings L.L.C., Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. ("Petitioners"):

## **Nature of Claim**

26.     Claimant Craig Michael Breland is an adult over the age of 19 and is a citizen of the State of Alabama.  Claimant was employed as a crane operator aboard the DEEPWATER HORIZON at the time of the Macondo blowout.

27.     This claim is made pursuant to the Jones Act (46 U.S.C. § 30104), the General Maritime Law of the United States, the common law remedies embodied in the Savings to Suitors Clause of 28 U.S.C. § 1333(1), and other applicable laws.

## Statement of Facts
*The Macondo blowout*

28.     Petitioners were the owners, managing owners, owners *pro hac vice*, charterers, supervisors and/or operator of the DEEPWATER HORIZON oil rig, and participated in the DEEPWATER HORIZON's offshore oil drilling operations at Mississippi Canyon Block 252, commonly referred to as "Macondo."

29.     The DEEPWATER HORIZON was a $560,000,000 dynamically positioned, Mobile Offshore Drilling Unit ("MODU").  It was built for Petitioners in 2001 and, thereafter, was exclusively leased to BP Exploration & Production, Inc. and/or its predecessor companies (for purposes of this pleading, "BP") for drilling exploratory wells such as the Macondo well.

30.     On or about April 20, 2010, during drilling operations at the Macondo well, a blowout, explosions, and fire occurred aboard the DEEPWATER HORIZON (the "Macondo blowout") which resulted in the sinking of the vessel and an oil spill.

31.     The Macondo blowout was caused and/or contributed to by the

unseaworthiness of the DEEPWATER HORIZON and the concurring intentional, grossly negligent, arbitrary, capricious, wilful, reckless, and malicious conduct of Petitioners, including, but not limited to:

a. Using a "long string" production casing as opposed to a "liner/tieback" design;

b. Using six centralizers for the production casing instead of the 21 centralizers recommended by modeling data;

c. Not running bottoms up circulation prior to cementing the production casing;

d. Cementing the production casing before receiving the results of a critical cement stability test;

e. Continuing with temporary abandonment of the Macondo well after the well failed a safety-critical negative pressure test;

f. Using a never before used spacer material to displace mud from the well, which confounded the results of the safety critical negative pressure test;

g. Cancelling the cement bond log for the cement job on the production casing;

h. Not setting the casing hanger lockdown sleeve before displacing the mud from the well;

i. Performing simultaneous operations during the temporary abandonment of the well, which distracted the rig crew and masked their ability to monitor the well;

j.          Not properly monitoring the well for influx during the minutes and hours leading up to the blowout;

k.          Diverting influx to the mud-gas separator rather than directly overboard;

l.          Not maintaining or installing gas sensors that would shut down the DEEPWATER HORIZON's engines when gas was present;

m.          Not maintaining or installing intake valves for the DEEPWATER HORIZON's engines that would close when gas was present;

n.          Not maintaining or installing gas alarms in the DEEPWATER HORIZON's engine room;

o.          Not maintaining or installing a gas alarm system in the DEEPWATER HORIZON's engine room that would shut off power when exposed to gas;

p.          Not maintaining or installing a blowout preventer ("BOP") that was capable of shutting in the Macondo well in the event of a blowout;

q.          Not maintaining and training a crew that was capable of safely drilling the Macondo well and responding to the Macondo blowout; and

r.          Not maintaining a vessel that was capable of safely drilling the Macondo well and responding to the Macondo blowout.

*Claimant and Petitioners' Post-Blowout Fraud*

32.     Claimant is 33 years old.  He is married and has three children: a nine year old, a six year old, and a new born baby.  He has worked for Transocean for 14 years and has spent his entire career in the oil and gas industry.

33.     On April 20, 2010, at the time of the Macondo blowout, Claimant was assigned to the DEEPWATER HORIZON as a crane operator.  When the first explosion occurred, Claimant was in his room. He had just woken up and was preparing to relieve his bunkmate, a fellow crane operator.  Shortly after the first explosion, a second larger explosion rocked the rig, followed by an abandon ship order.  Claimant's initial exit route was blocked; however, he was eventually able to make his way through the wreckage and to a lifeboat, which was lowered from the rig and picked up by a nearby supply vessel, the DAMON BANKSTON.

34.     Once onboard the DAMON BANKSTON, Claimant learned that his bunkmate and 10 other men did not make it off of the

DEEPWATER HORIZON.   Thereafter, Claimant and the rest of the surviving rig crew members spent approximately 24 hours at the Macondo well site, watching the rig burn.  Claimant was ultimately returned to shore in Port Fourchon, Louisiana via the DAMON BANKSTON.

35.    Claimant returned to work in June 2010.  In September 2010, Claimant received a letter from Petitioners telling him that he would not receive full reimbursement if he missed any additional days from work as a result of the Macondo blowout, and offering him six months salary in exchange for releasing Transocean, BP, and other parties from liability for the Macondo blowout.

36.    After receiving Petitioners' September 2010 letter, Claimant contacted Petitioners, and Petitioners directed Claimant to the Mobile, Alabama office of Shuman Consulting Services, LP to discuss the settlement offer.

37.    Upon arriving at Shuman's office in Mobile, Claimant met with Robyn Thompson, a Shuman employee and an authorized representative

of Petitioners.   Thompson presented Claimant with a release.   Claimant asked Thompson what would happen if he signed the release and had future problems arising from the Macondo blowout.   Thompson told Claimant that, in that event, Petitioners would set up an annuity for Claimant.  Based on this and other representations made by Petitioners and their representatives, Claimant executed the release.

38.   Petitioners' September 2010 letter was part of a scheme to coerce Claimant and other rig workers to accept settlements that were grossly inadequate in light of the nature of their claims and injuries. Claimant was not provided with any independent medical or legal advice prior to executing the release.   Additionally, Petitioners did not otherwise ensure that Claimant's execution of the release was in compliance with applicable law.   Instead, Petitioners' deceived and coerced Claimant into signing the release.   Petitioners never, at any time, intended to fulfill the promise of an "annuity" that they made to Claimant.

39.   On April 20, 2011, Claimant was working as a crane operator on the DISCOVERER SPIRIT, a drillship owned by the Petitioners.  During

Claimant's shift and shortly after the rig crew had observed the anniversary of the Macondo blowout, he suffered a panic attack caused by memories of the Macondo blowout. He was removed from his shift and, ultimately, flown off the drillship.

40.    Since April 20, 2011, Claimant has been diagnosed with Post-Traumatic Stress Disorder ("PTSD"). He now regularly requires treatment and counseling from doctors and other health care providers and is taking medications to treat his PTSD. Claimant is no longer able to work as a crane operator offshore and is no longer able to support his wife and children as he did prior to the Macondo blowout.

41.    Since Claimant was diagnosed with PTSD, Petitioners have stopped paying him wages, failed to pay him any maintenance and cure, and refused to honor their promise of an "annuity."

## CAUSES OF ACTION

### COUNT ONE

42.    Claimant   realleges   all   of   the   allegations   contained   in

Paragraphs 1-41 above and incorporates the same by reference herein.

43.    The Macondo blowout was proximately caused by the Petitioners' negligence.

44.    Such negligence was within the privity or knowledge of Petitioners prior to the Macondo blowout.

45.    As a proximate result of Petitioners' negligence, Claimant has been injured and damaged as described above.

WHEREFORE, premises considered, Claimant demands judgment against Petitioners for compensatory damages in an amount in excess of the minimal jurisdictional requirements for this Court, plus interest, costs, and all further relief the Court deems necessary or appropriate.

## **COUNT TWO**

46.    Claimant realleges all of the allegations contained in Paragraphs 1-45 above and incorporates the same by reference herein.

47.    The Macondo blowout was caused by the unseaworthiness of the DEEPWATER HORIZON.

48.    Such unseaworthiness was within the privity or knowledge of Petitioners prior to the Macondo blowout.

49.    The unseaworthiness of the DEEPWATER HORIZON was the result of the intentional, grossly negligent, arbitrary, capricious, wilful, reckless, and malicious disregard by Petitioners for the health and safety of the DEEPWATER HORIZON's crew and was driven by Petitioners' desire to increase profits at the expense of the health and safety of the DEEPWATER HORIZON crew.

50.    As a proximate result of the unseaworthiness of the DEEPWATER HORIZON, Claimant has been injured and damaged as described above.

WHEREFORE, premises considered, Claimant demands judgment against Petitioners for compensatory and punitive damages in an amount

in excess of the minimal jurisdictional requirements for this Court, plus interest, costs, and all further relief the Court deems necessary or appropriate.

## COUNT THREE

51.   Claimant realleges all of the allegations contained in Paragraphs 1-50 above and incorporates the same by reference herein.

52.    The Macondo blowout was caused by the intentional, grossly negligent, arbitrary, capricious, wilful, reckless, and malicious conduct of Petitioners.

53.    Petitioners' intentional, grossly negligently negligent, arbitrary, capricious, wilful, reckless, and malicious conduct constituted a complete disregard for the health and safety of the DEEPWATER HORIZON's crew and was driven by Petitioners' desire to increase profits at the expense of the health and safety of the DEEPWATER HORIZON crew.

54.     Such intentional, grossly negligent, arbitrary, capricious, willful, reckless, and malicious conduct was within the privity and knowledge of Petitioners prior to the Macondo blowout.

55.     As a proximate result of Petitioners intentional, grossly negligent, arbitrary, capricious, willful, reckless, and malicious conduct, Claimant has been injured and damaged as described above.

WHEREFORE, premises considered, Claimant demands judgment against Petitioners for compensatory and punitive damages in an amount in excess of the minimal jurisdictional requirements for this Court, plus interest, costs, and all further relief the Court deems necessary or appropriate.

## COUNT FOUR

56.     Claimant realleges all of the allegations contained in Paragraphs 1-55 above and incorporates the same by reference herein.

57.     Petitioners have failed to pay Claimant maintenance and cure for the damages and injuries he suffered as a proximate result of the Macondo blowout.

58.     Petitioners' failure to pay Claimant maintenance and cure was and continues to be intentional, grossly negligent, arbitrary, capricious, wilful, reckless, and malicious.

WHEREFORE, premises considered, Claimant demands judgment against Petitioners for compensatory and punitive damages in an amount in excess of the minimal jurisdictional requirements for this Court, plus interests, costs, attorneys' fees, and all further relief the Court deems necessary or appropriate.

ROBERT T. CUNNINGHAM, JR
rtc@cunninghambounds.com
WILLIAM E. BONNER
web@cunninghambounds.com
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
251-471-6191 (O)
251-479-1031 (F)
*Attorneys for Claimant*

## CERTIFICATE OF SERVICE

I hereby certify that on this August 24, 2011, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system which will send notification of such filing to each and every lawyer who has at the time of this filing appeared in this proceeding.

WILLIAM E. BONNER