UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| | * | |
| | * | MAGISTRATE NO. 1 |
| THIS DOCUMENT RELATES TO: | * | MAGISTRATE SHUSHAN |
| No. 10-2771 | * | |
| | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *

### MOTION OF MOEX OFFSHORE 2007 LLC TO DISMISS CROSSCLAIMS OF CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, AND, ALTERNATIVELY, MOTION TO STAY

Cross-Defendant MOEX Offshore 2007 LLC ("MOEX Offshore"), pursuant to Federal

Rule of Civil Procedure 12(b)(6), moves this Court to dismiss the Crossclaims asserted against

MOEX Offshore by Carnival Corporation, d/b/a Carnival Cruise Lines ("Carnival") in their

pleading styled *Answer To Complaint and Petition Of Triton Asset Leasing Gmbh et. al, Claim*

*In Limitation and Cross Claim In Limitation and/or Third Party Complaint* (Rec. Doc. No. 384

in Civil Action No. 10-2271) ("Crossclaims") for failure to state a claim upon which relief can

be granted.  Alternatively, MOEX Offshore moves to stay the action.  The grounds and reasons

in support are fully set forth in the accompanying memorandum in support.

WHEREFORE, Cross-Defendant MOEX Offshore 2007 LLC prays that this Court grant

this motion and dismiss with prejudice the Crossclaims asserted against it by Carnival for failure



EXHIBIT

"A"

to state a claim upon which relief can be granted. Alternatively, this Court should order a stay of the Crossclaims against MOEX Offshore.

Respectfully submitted,

DATED: August 26, 2011

_____/s/ Philip D. Nizialek_____

Philip D. Nizialek (La. Bar No. 24180)
M. Hampton Carver (La. Bar No. 3947)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Fax: (504) 585-3801

**ATTORNEYS FOR**
**MOEX OFFSHORE 2007 LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing motion to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 26, 2011.

_____/s/ Philip D. Nizialek_____

4822-6530-0234, v. 2

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| | * | |
| **THIS DOCUMENT RELATES TO:** | * | **MAGISTRATE NO. 1** |
| **NO. 10-2771** | * | **MAGISTRATE SHUSHAN** |
| | * | |
| | * | |
| * * * * * * * * * * * | * | |

## MEMORANDUM IN SUPPORT OF MOTION OF MOEX OFFSHORE 2007 LLC TO DISMISS CROSSCLAIMS OF CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, AND, ALTERNATIVELY, MOTION TO STAY

Philip D. Nizialek, T.A (La. Bar No. 24180)
M. Hampton Carver (La. Bar No. 3947)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Fax: (504) 585-3801

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

WHY THE MOTION SHOULD BE GRANTED AND
THE CROSSCLAIMS SHOULD BE DISMISSED ......................................................2

A. Standard For Granting Motion To Dismiss ............................................................3

B. Carnival's Negligence Claims (First Cause Of Action) Fails Because Both
   Maritime And State Negligence Claims Are Suspended By OPA .........................4

C. Carnival's "Fifth Cause Of Action" Purporting To Set Forth An OPA 90
   Claim Against MOEX Offshore Fails Because Carnival Does Not Allege
   That It Complied With OPA 90's Pre-Suit Presentment Requirement ...................7

D. Carnival's Florida Pollutant Discharge And Control Act Claim and Any
   State Law Negligence Claims Must Be Dismissed Because State Law
   Does Not Apply To This Case .................................................................................9

      i. Federal Law Applies Exclusively Under The
         Outer Continental Shelf Lands Act ..................................................................10

      ii. Carnival's Florida Pollutant Discharge Prevention & Control
          Act Claim Must Be Dismissed .......................................................................12

            a). OCSLA Requires The Exclusive Application Of OPA To Claims For
                For Property Damages And Economic Losses Arising From Oil Spills
                Originating On The OCS ................................................................12

            b.) Federal Law Preempts The Florida Statute Here.................................14

ALTERNATIVELY, THE CROSSCLAIMS SHOULD BE STAYED ........................17

CONCLUSION ............................................................................................................18

## TABLE OF AUTHORITIES

*CASES*                                                                                                    PAGES

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ................................................................................3

*Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973) ......................................16, 17

*Barasich v. Shell Pipeline Co.,*
    No. 05-4180, 2006 W.L. 3913403 (E.D. La. 11/20/06) ...........................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ...................................................................3

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235 (11th Cir. 1995) .................7, 8

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ...........................................................5, 14

*Connor v. Aerovox, Inc.*, 730 F.2d 835 (1st Cir. 1984) ............................................................5

*Demette v. Falcon Drilling Co.*, 280 F.3d 492 (5th Cir. 2002) ...............................................11

*EP Operating LP v. Placid Oil Co.*, 26 F.3d 563 (5th Cir. 1994) ....................................10, 11

*Gabarick v. Laurin Mar. (Am.), Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009) ........................6, 13

*Gabarick v. Laurin Maritime (Am.) Inc.*, No. 08-4007, 2009 W.L. 102549
    (E.D. La. 01/12/09) ..................................................................................................8

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) ...........................................................16

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) ............. 11-12

*Gregory v. Mitchell*, 634 F.2d 199 (5th Cir. 1981) ...................................................................9

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981) ...................................................11

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989) ................................................................9

*Hershey v. Energy Transfer Partners,* 610 F.3d 239 (5th Cir. 2010).........................................3

*Hooper v. Thomas,* No. 01-1730, 2002 W.L. 1268399, (E.D. La. 06/05/02)...........................9

*In re Air Disaster at Fla. Everglades on Dec. 29, 1972,*
 549 F.2d 1006, 1012-16 (5th Cir. 1977) ........................................................................17

*Int'l Paper Co. v. Ouellette,* 479 U.S. 481 (1987).......................................................14, 15, 16

*Jones v. Bock,* 549 U.S. 199 (2007).......................................................................................3

*Marathon Pipeline Co. v. LaRouche Indus. Inc.*, 944 F.Supp. 476 (E.D. La. 1996)...............8

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n¸* 453 U.S. 1 (1981).................4

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990)....................................................................5

*Mobil Oil Exploration & Producing SE, Inc. v. United States,* 530 U.S. 604 (2000)............15

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978).........................................................5

*Nat'l Envtl. Found v. ABC Rail Corp.*, 926 F.2d 1096 (11th Cir. 1991)..................................9

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
 924 F.Supp. 1436 (E.D. Va. 1996), *aff'd,* 122 F.3d 1063 (4th Cir. 1997)...............6

*Northwest Airlines, Inc. v. Transp. Workers Union Am., AFL-CIO*, 451 U.S. 77 (1981)........5

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986) ............................................13, 16

*Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969).....................................................11

*Russo v. M/T Dubai Star*, No. C-09-05158, 2010 W.L. 1753187 (N.D. Cal. 04/29/01).........8

*Southport Marine, LLC v. Gulf Oil LP*, 234 F.3d 58 (1st Cir. 2000) ........................................5

*Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521 (5th Cir. 2000).................................12

*Tanguis v. M/V Westchester*, 153 F.Supp. 2d 859 (E.D. La. 2001)....................................6, 13

*Ten Taxpayer Citizens Group v. Cape Wind Assoc.*, 373 F.3d 183 (1st Cir. 2004)...............13

*Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*,
        448 F.3d 760 (5th Cir. 2006) ..................................................................................10

*Toussaint v. Chevron Phillips Chem. Co.*, 2006 W.L. 2349465 (E.D. La. 08/11/06) ...... 10-11

*Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007
        W.L. 4208986 (E.D. La. 11/21/2007).......................................................................8

*Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043 (5th Cir. 1990) ...............11

*United States v. Dixie Carriers, Inc.*, 627 F.2d 736 (5th Cir. 1980) .........................................4

*Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848 (5th Cir. 1989)....................................................11

*STATUES*

Coastal Zone Management Act, 16 U.S.C. §§ 1451-1464 ...............................................15, 16

Clean Water Act ...................................................................................5, 9, 14, 15, 16, 17

Death on the High Seas Act ............................................................................................5, 13

Federal Rule of Civil Procedure 9(h)...........................................................................................4

Federal Rule of Civil Procedure 12(b)(6).........................................................................1, 2, 3

Federal Rule of Civil Procedure 16 ...........................................................................................17

Federal Rule of Civil Procedure 26 ...........................................................................................17

Federal Rule of Civil Procedure 37 ...........................................................................................17

Federal Rule of Civil Procedure 42 ...........................................................................................17

Federal Rule of Civil Procedure 83 ...........................................................................................17

Federal Tort Claims Act ................................................................................................................9

Federal Water Pollution Control Act...................................................................................4, 5

Federal Water Quality Improvement Act ..................................................................................16

Florida Pollution Discharge Prevention & Control Act,
        *Florida Statue No. 376.011* ....................................1, 2, 9, 10, 12, 13, 14, 15, 16, 17

Fla. Stat. § 376.205..................................................................................................................12

Fla. Stat. § 376.121 ...................................................................................................12

Jones Act.....................................................................................................................5

Oil Pollution Act of 1990 ...................................1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17

OPA, 33 U.S.C. § 2702...............................................................................................6

OPA, 33 U.S.C. § 2702(a), (b)(2)...............................................................................12

OPA, 33 U.S.C. §§ 2702(b)(2)(A), (B), (C) and (E) ...................................................4

OPA, 33 U.S.C. § 2713................................................................................................7

OPA, 33 U.S.C. § 2713(a)...........................................................................................7

OPA, 33 U.S.C. § 2713(c)...........................................................................................7

OPA, 33 U.S.C. § 2714(a) ..........................................................................................7

OPA, 33 U.S.C. § 2718.........................................................................................13, 16

OPA, 33 U.S.C. § 2751................................................................................................6

OPA, 33 U.S.C. § 2751(e)...........................................................................................6

Outer Continental Shelf Lands Act ..............................................10, 11, 12, 13, 14, 15, 16, 17

OCSLA, § 1333 .....................................................................................................10, 11

OCSLA, § 1333(a)..........................................................................................11, 12, 13

OCSLA, 43 U.S.C. § 1333(a)(2)(A)..........................................................................12

OCSLA, § 1349 .....................................................................................................10, 11

OCSLA, 43 U.S.C. § 1349(a)(6) ...............................................................................16

## *ADDITIONAL AUTHORITIES*

H.R. Rep. No. 95-590 at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1434 ..............11

H.R. Rep. No. 101-242, part 2, at 66 (1989) ..................................................................... 7-8

S. REP. NO. 101-94, at 26 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 748 .......................14

S. Rep. No. 101-94 at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.............................6

135 CONG. REC. H7954-02 (Dailey Ed. 11/02/89) (Statement of Rep. Hammerschmidt),
135 CONG. REC. H7954-02, at *87965 (WL) .............................................................8

135 CONG. REC. H7954-02, at *H7962 (Statement of Rep. Lent) ...........................................8

135 CONG. REC. H7954-02, at *H7955 (Statement of Rep. Jones) ..........................................8

MAY IT PLEASE THE COURT:

MOEX Offshore 2007 LLC ("MOEX Offshore") respectfully submits this memorandum in support of its *Motion of MOEX Offshore 2007 LLC To Dismiss Crossclaims Of Carnival Corporation d/b/a Carnival Cruise Lines For Failure To State A Claim Upon Which Relief Can Be Granted, And, Alternatively, Motion To Stay*. For the following reasons, MOEX Offshore's motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, stayed pursuant to PTO #25.

## I.
## PRELIMINARY STATEMENT

On April 20, 2011, claimant Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival") filed its "Cross Claim in Limitation and/or Third Party Complaint"[1] against MOEX Offshore ("Crossclaims") for negligence, alleged violations of the Oil Pollution Act of 1990 ("OPA"), or alternatively for strict liability pursuant to the Florida Pollutant Discharge Prevention & Control Act, Florida Statute No. 376.011, *et seq.* (the "Florida Statute"). In the Crossclaims, Carnival alleges that MOEX Offshore is a responsible party under OPA. Carnival also makes the incorrect and conclusory allegation that MOEX Offshore "owned, manned, possessed, managed, controlled, chartered, and/or operated the *Deepwater Horizon*." [2] Notwithstanding these allegations, all three claims asserted by Carnival against MOEX Offshore fail as a matter of law and must be dismissed, for the reasons set forth herein, and as summarized as follows:

1. The comprehensive and reticulated liability scheme set forth in the OPA provides the exclusive remedy for oil pollution cases governed by federal or the general maritime

---

[1] Rec. Doc. 384 in Civil Action No. 10-02771.
[2] Rec. Doc. 384 in No. 10-02771, at ¶57.

law. Therefore, OPA displaces causes of action under the state or maritime law for negligence, as well as state statutory claims.

2. Carnival's OPA claim fails under Rule 12(b)(6) because Carnival has not alleged that it has complied with OPA's presentment requirement to MOEX Offshore. OPA's presentment requirement is a jurisdictional prerequisite to filing suit, and all OPA claims by individual plaintiffs such as Carnival which have not complied must be dismissed.

3. Carnival's state law claim pursuant to the Florida Statute fails because state law does not apply to this case. Federal law alone applies to claims arising out of and in connection with oil exploration, development and extraction operations on the Outer Continental Shelf ("OCS"). Although federal law sometimes borrows state law as surrogate federal law in OCS cases, it does not do so in this case. Even if it did it would not borrow Florida law.

Alternatively, Carnival's Crossclaims filed against MOEX Offshore in this limitation proceeding are contrary to the intent and spirit of the stay established by the Court in PTO #25, and therefore should be stayed.

## II.
## WHY THE MOTION SHOULD BE GRANTED
## AND THE CROSSCLAIMS SHOULD BE DISMISSED

Only three of the seven enumerated causes of action pled by Carnival in its Crossclaims apply to MOEX Offshore: (1) the "First Cause of Action"[3] for "negligence"; (2) the "Fifth Cause of Action"[4] for violation of OPA, and (3) the "Sixth Cause of Action"[5] for strict liability

---

[3] Rec. Doc. 384 in No. 10-02771, at ¶¶71 - 77.

[4] Rec. Doc. 384 in No. 10-02771, at ¶¶136 - 145.

pursuant to the Florida Statute. For the following reasons, none of them sets forth a legally cognizable claim upon which relief can be granted against MOEX Offshore.

### A. Standard For Granting Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). This "demands more than unadorned, the-defendant-unlawfully-harmed-me allegations," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see Hershey v. Energy Transfer Partners*, 610 F.3d 239, 245-46 (5th Cir. 2010).

Rather, to state a claim for relief, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). If the factual allegations do not raise a right to relief "above the speculative level," *Twombly*, 550 U.S. at 555, or if the allegations reveal an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007), a claim should be dismissed. In the latter circumstance, which applies here, the plaintiff "pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'" *Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 W.L. 3913403, at *2 (E.D. La. 11/20/06) (Barbier, J.) (internal citations omitted) granting Rule 12(b)(6) dismissal in part.

---

[5] Rec. Doc. 384 in No. 10-02771, at ¶¶146-153.

**B. *Carnival's Negligence Claim (First Cause of Action) Fails Because Both Maritime And State Negligence Claims Are Superseded By OPA.***

Invoking general negligence law, Carnival's "First Cause of Action"[6] seeks recovery from MOEX Offshore for injuries for increased fuel costs, vessel cleaning costs, loss of and decreased revenue and loss of "bookings."[7] Those damages are indisputably "covered damages" under OPA. *See* 33 U.S.C. §§ 2702(b)(2)(A), (B), (C) and (E) (listing "real or personal property," and "profits and earning capacity" as "covered damages" in OPA cases). Because OPA is the exclusive federal remedy for claimants seeking "covered damages" after an oil spill, Carnival's negligence claims, whether asserted under state or general maritime law, are unavailable to Carnival and must be dismissed.

Although Carnival does not specifically state that its "negligence" claim lies under general maritime law negligence precepts, it expressly brings its Crossclaims pursuant to Rule 9(h),[8] and the Gulf Oil Spill incident is indisputably maritime. To the extent its general negligence claims are brought pursuant to maritime law, federal statutes such as OPA displace pre-existing federal common law in that area.[9] *See, e.g. Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 11 (1981) (Federal Water Pollution Control Act, as amended, displaces federal common law of nuisance in the area of ocean pollution); *United States v. Dixie Carriers, Inc.,* 627 F.2d 736, 740-42 (5th Cir. 1980) (holding that the Federal Water Pollution Control Act provides the exclusive legal remedy for the government to recover oil spill cleanup

---

[6] Rec. Doc. 384 in No. 10-02771, at ¶¶71 - 77.

[7] Rec. Doc. 384 in No. 10-02771, at ¶ 77.

[8] Rec. Doc. 384 in No. 10-02771, at ¶45 (wherein Carnival alleges, "The claims presented in this Claim in Limitation are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and Claimants hereby designate this case as an admiralty or maritime case, and a non-jury trial pursuant to Rule 9(h) is requested.")

[9]      To the extent Carnival negligence claims are asserted under state negligence law, they must be dismissed for the reasons set forth in Section II(D), *infra.*

costs.)  Federal common law is a last resort, so "when Congress addresses a question previously covered by a decision resting on federal common law the need for such an unusual exercise of law making by federal courts disappears." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981) (Clean Water Act displaces federal common law of interstate pollution).  The well-settled principle has equal force "[e]ven in admiralty . . . where the federal judiciaries' lawmaking power may well be at its strongest" because it remains the "duty [of the judiciary] to respect the will of Congress." *Northwest Airlines, Inc. v. Transp. Workers Union Am., AFL-CIO*, 451 U.S. 77, 96 (1981).  Thus federal courts have held in a variety of circumstances that federal statutes displace non-statutory maritime causes of action. *See, e.g., Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) (Death on the High Seas Act ("DOHSA") ("announces Congress's considered judgment," and while it does not address every issue of wrongful death law, "when it does speak directly to a question the courts are not free to 'supplement' Congress's answer so-thoroughly that [DOHSA] becomes meaningless"); *Connor v. Aerovox, Inc.*, 730 F.2d 835, 840-41 (1st Cir. 1984) (Federal Water Pollution Control Act displaces general maritime law tort claims).  Federal courts also hold that they cannot, under the guise of maritime law, supplement applicable federal statutes. *See, Miles v. Apex Marine Corp.*, 498 U.S. 19, 31-33 (1990) (declining to supplement the damages provisions of the Jones Act with general maritime law remedies).

OPA is no different.  Courts have uniformly held that "Congress intended the OPA to be the exclusive federal law governing oil spills." *Southport Marine, LLC v. Gulf Oil LP*, 234 F.3d 58, 65-66 (1st Cir. 2000) (holding that punitive damages were not available under OPA because "Congress's very specific treatment of oil pollution in the OPA, which does not provide for punitive damages, supplemented general admiralty and maritime law, which has traditionally

provided for the general availability of punitive damages for reckless conduct.")  "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons" from an oil spill.  *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F.Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1063 (4th Cir. 1997).

OPA's legislative history confirms that the Act is the exclusive federal cause of action for economic loss claims arising from oil pollution, and that it displaces federal maritime law.  OPA "creates a single federal law providing cleanup authority, penalties, and liability for oil pollution." S. Rep. No. 101-94 at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730 (emphasis added); *see Tanguis v. M/V Westchester*, 153 F.Supp. 2d 859, 867-68 (E.D. La. 2001) ("the Senate found that 'the nation need[ed] . . . to replace the inadequate fragmented collection of federal and state laws in existence prior to OPA").

To the extent Carnival's negligence claims sound in general maritime law negligence, they are not preserved by OPA, § 2751, which provides, "except as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law . . . ."  33 U.S.C. § 2751(e). "[S]ection 2751 only preserves admiralty claims which are not addressed in OPA" such as claims for collision damages.  *Nat'l Shipping Co.*, 924 F.Supp. at 1447.  In other words, § 2751 confirms Congress's intent that OPA provide the exclusive federal remedy for claims arising out of oil spills.  This Court has reached the same conclusion.  *See, e.g., Tanguis*, 153 F.Supp.2d at 867 (holding that OPA "includes new remedies, which, in many respects, preempts traditional maritime remedies"); *Gabarick v. Laurin Mar. (Am.), Inc.*, 623 F.Supp.2d 741, 750-51 (E.D. La. 2009) (holding that all general maritime law claims are recoverable under OPA, and specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA).

In sum, because OPA supplants maritime claims arising from oil pollution, Carnival's negligence claims, to the extent they are asserted under general maritime law, must be dismissed with prejudice.

### C. Carnival's "Fifth Cause of Action"[10] Purporting To Set Forth an OPA 90 Claim Against MOEX Offshore Fails Because Carnival Does Not Allege That It Complied With OPA 90's Pre-Suit Presentment Requirement.

OPA requires that "**all claims** for removal cost or damages **shall be presented first to the responsible party** . . . of the source designated under § 2714(a) of this Title." 33 U.S.C. § 2713(a) (emphasis added). A claimant may elect to commence an action in court against a responsible party only after presenting its claim, and only after the responsible party either denies liability or does not settle within 90 days. 33 U.S.C. § 2713(c).

In its Crossclaims at paragraphs 65 - 69, Carnival alleges that it has presented interim, second interim, third amended and fourth amended claims to BP and Transocean pursuant to OPA, and has also presented interim and supplemental claims to the Gulf Coast Claims Facility ("GCCF").[11] Nowhere in its Crossclaim, however, does Carnival allege presentment to MOEX Offshore. Because of the failure of Carnival to first present its claims to MOEX Offshore under OPA, the Court lacks jurisdiction over the Crossclaims, and they must be dismissed.

Simply put, "the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented its claims . . . ." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995). By failing to comply with the presentment requirement, Carnival undermines one of the principal purposes of OPA. Congress wanted to avoid slow and costly litigation and believed that lawsuits are appropriate only "where

---

[10] Rec. Doc. 384 in No. 10-02771, at ¶¶136 - 145.

[11] Rec. Doc. 384 in No. 10-02771, at ¶¶65 - 69.

attempts to reach a settlement with the responsible party . . . were unsuccessful. " H.R. Rep. No. 101-242, part 2, at 66 (1989); *see* 135 CONG. REC. H7954-02 (Dailey Ed. 11/02/89) (Statement of Rep. Hammerschmidt), 135 CONG. REC. H7954-02, at *87965 (WL) (OPA is "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation"); *id.* at *H7962 (Statement of Rep. Lent) ("the thrust of [OPA] is to eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process . . . ."); *id.* at *H7955 (Statement of Rep. Jones) ("we do not want claimants to have to wait years upon years to recover their losses while lawsuits drag on in the courts"). The claims presentment provision reflects a compromise "to temper the Acts' increased liability with Congressional desire to encourage settlement and avoid litigation." *Boca Ciega*, 51 F.3d at 238-39 (citing Legislative History of the Act). This central Congressional purpose – the fundamental premise and condition precedent for the enactment and application of the Oil Pollution Act – cannot be ignored for the sake of convenience or any other reason.

Accordingly, courts, including this Court, have consistently held that OPA's presentment requirement "is jurisdictional and mandates dismissal when . . . not complied with by the claimant." *Marathon Pipeline Co. v. LaRouche Indus. Inc.*, 944 F.Supp. 476, 477 (E.D. La. 1996); *see also Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 W.L. 4208986, at *2 (E.D. La. 11/21/2007) (presentment provision is a "mandatory condition precedent" to bringing suit under OPA) (quoting *Boca Ciega*, 51 F.3d at 240); *Russo v. M/T Dubai Star*, No. C-09-05158 Si, 2010 W.L. 1753187, at *2-3 (N.D. Cal. 04/29/01) (collecting cases holding that OPA's presentment requirement is jurisdictional and mandates dismissal for failure to comply). Indeed, this Court has ruled that dismissal, not some lesser remedy, is the proper course when a party files an OPA claim in court before presenting it to a responsible party. *Gabarick v. Laurin*

*Maritime (Am.) Inc.,* No. 08-4007, 2009 W.L. 102549, at *3 (E.D. La. 01/12/09) (dismissing OPA claims for failing to comply with OPA's presentment requirement and denying Carnival's request for a stay in lieu of dismissal). Jurisdictional defects, like failure to comply with a presentment requirement, cannot be cured in the midst of litigation. *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) (holding that failure to comply with a 60 day notice provision necessitates dismissal and that a district court cannot stay the case to await compliance); *Nat'l Envtl. Found v. ABC Rail Corp.*, 926 F.2d 1096, 1097-98 (11th Cir. 1991) ("if a plaintiff fails to comply with the [Notice Requirement of the Clean Water Act] where it is applicable, the District Court is required to dismiss the action"); *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981) (holding that "[t]he requirement of exhaustion of administrative review is a jurisdictional requisite to the filing of an action under the FTCA" and that the failure to exhaust cannot be cured by a stay of the case until the requirement is met); *Hooper v. Thomas*, No. 01-1730, 2002 W.L. 1268399, at *1 (E.D. La. 06/05/02) (holding that the "federal courts power to adjudicate a claim brought under the Federal Tort Claims Act depends solely on whether the claimant has previously complied" with a mandatory notice requirement and that a "stay pending exhaustion cannot cure a jurisdictional defect which was present when the suit was filed").

Because Carnival has failed to comply with OPA's presentment requirement with respect to MOEX Offshore (and failed to even allege such compliance), a dismissal of its OPA claim is mandatory.

### D. Carnival's Florida Pollutant Discharge and Control Act Claim and Any State Law Negligence Claims Must be Dismissed because State Law Does not Apply to this Case.

In its "Sixth Cause of Action"[12] Carnival asserts a claim against MOEX Offshore for strict liability pursuant to the Florida Statute.  State law, however, does not apply to this action; federal law alone applies to claims arising out of and in connection with oil exploration, development and extraction operations on the OCS[13].  Although federal law sometimes borrows state law as surrogate federal law in OCS cases, it does not do so in this case; even if it did, it would not borrow Florida law.  Carnival can assert its claim for damages only under OPA.  Because Carnival's Florida Statute claim (and to the extent its negligence claim sounds in state law) is based on substantive law that does not apply, it must be dismissed.

### i.   Federal law applies exclusively under the Outer Continental Shelf Lands Act

Carnival alleges that the oil spill originated on the OCS, and arose out of the operation of the *Deepwater Horizon* and BP's exploration for and production of oil.[14]  This Court has already held that the Outer Continental Shelf Lands Act ("OCSLA") gives it jurisdiction over cases arising from the *Deepwater Horizon* incident.[15]  Because the controversy is "inextricably linked" to resource exploration and development on the OCS "and would not have arisen but for such development," *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 774 (5th Cir. 2006), OCSLA confers federal jurisdiction and also supplies comprehensive choice of the law rules codified in § 1333 of the Act. *See EP Operating LP v. Placid Oil Co.*, 26 F.3d 563, 569 and n.14 (5th Cir. 1994) ("the most consistent reading of the statute instructs that the jurisdictional grant of § 1349 should be read coextensively where the substantive reach of

---

12     Rec. Doc. 384 in No. 10-02771, at ¶¶146-153.

13     For all reasons discussed in this section, state negligence laws do not apply to Carnival's general negligence claim in its "First Cause Of Action."  See Section II B, *infra*.

14     Rec. Doc. 384 in 10-02771, at ¶52.

15     Order denying State of Louisiana's Motion to Remand [Docket No. 471 in Case No. 10-cv-1758] (E.D. La. 10/06/10).

§ 1333"); *Toussaint v. Chevron Phillips Chem. Co.*, 2006 W.L. 2349465, at \*2 (E.D. La. 08/11/06) (when a "case arises in connection with a mineral production operation on the Outer Continental Shelf[,] it falls within the scope of OCSLA," and § 1333 "in turn" applies).

The question of which substantive law governs Carnival's claims is answered solely by § 1333 of OCSLA. Other choice of law rules, such as those of the forum state or maritime choice of law rules, are irrelevant. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482, n.8 (1981) (OCSLA "supersedes the normal choice-of-law rules that a forum would apply"); *Wooten v. Pumpkin Air, Inc.*, 869 F.2d 848, 852 (5th Cir. 1989) (rejecting the *renvoi* argument that § 1333 adopts the choice of law rules of the state adjacent to an OCSLA situs). Even if Carnival alleged that it suffered its injuries in state territorial waters (which it has not) it could not avoid the § 1333(a) choice of law rule. *EP Operating*, 26 F.3d at 569 and n.14, (choice of law rule are in place because Congress intended to have federal law govern all cases involving "activities" occurring on the OCS). *See* H.R. Rep. No. 95-590 at 128 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1434. MOEX Offshore is unaware of any case under § 1349 where a court used choice of law rules other than those Congress prescribed in § 1333.

OCSLA's choice of law rules are straightforward: "federal law is 'exclusive' in its regulation of this area, and [therefore] state law is adopted only as surrogate federal law," *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 357 (1969), "[and] then only when no inconsistent federal law applied." *Id.* at 358. According to § 1333(a), then, the substance of the adjacent state's law may apply ("surrogate federal law") in an OCSLA case, but only if: (a) the controversy arises out of situs covered by OCSLA; (b) substantive maritime law does not apply of its force; and (c) state law is not inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990); *see Demette v. Falcon Drilling Co.*, 280

F.3d 492, 499 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778,782-83 (5th Cir. 2009) ("since the incident occurred on the OCS beyond the territorial waters of Louisiana, the only way state law could have operated was by incorporation of the federal law under OCSLA"). Otherwise, federal law, not supplemented by state law, is all that applies. Because Carnival's claims against MOEX Offshore in its Crossclaim are all governed by OPA, Carnival cannot state a cause of action under state law, whether statutory or common.[16]

### ii. Carnival's Florida Pollutant Discharge Prevention & Control Act claim must be dismissed

Given that Carnival's Florida statutory allegations essentially replicate their OPA allegations, Carnival cannot contest that the relief it seeks under OPA is essentially identical to that which it seeks under the Florida Statute. In both their OPA and Florida Statute claims, Carnival seeks to recover for damage to its real and/or personal property. The statutory causes of action track each other closely. *Compare* Fla. Stat. §§ 376.205, 376.121 (2010, with 33 U.S.C. § 2702(a), (b)(2). Because OPA is directly on point, it applies exclusively to Carnival's property damage claims for two reasons – because OPA leaves no gaps to be filled through the OCSLA choice of law rules in § 1333(a); and because the comprehensive federal scheme for regulating activity under the OCS, including pollution flowing from the OCS, preempts the law of affected states.

---

[16] Even if state law could be applied to this case, it would not be the law of Florida because Louisiana is the "adjacent state" for purposes of the application of state law as surrogate federal law. *See* 43 U.S.C. § 1333(a)(2)(A); *see also Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521 (5th Cir. 2000).

> ### *a).  OCSLA requires the exclusive application of OPA to claims for property damages and economic losses arising from oil spills originating on the OCS*

As set forth above, OPA is Congress's comprehensive and reticulated liability scheme for economic loss claims in oil-pollution cases governed by federal or maritime law. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F.Supp.2d 741, 750-51 (E.D. La. 2009) (general maritime law claims are displaced by OPA); *Tanguis v. M/V Westchester*, 153 F.Supp.2d 859, 867 (E.D. La. 2001) (OPA "includes new remedies, which . . . preempt traditional maritime remedies").  OPA leaves no gaps that OCSLA could use state law to fill.

OPA's savings clause does not rescue Carnival's Florida Statute claims or negligence claims.  Unlike cases involving oil spills in state territorial waters, in which Carnival can plead one as an alternative remedy to the other, OPA and the Florida Statute are not alternatives in this case.  Under the choice-of-law rules in OCSLA's § 1333(a), it is *only* OPA – neither the Florida Statute applying of its own force nor the Florida Statute applying as surrogate federal law – that provides the substantive rules of decision for claims arising out of oil spills originating from operations on the OCS.  Because it is OCSLA – not OPA – that precludes applying state law, OPA's savings clause, which limits only the preemptive effect of OPA itself, does not allow application of state law in this case. *See* 33 U.S.C. § 2718; *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223-27 (1986) (holding that the savings clause in the Death on the High Seas Act does "not implicitly sanction the operation of state wrongful death statutes on the high seas," where states have no power, but only "preserve[s] the state courts' jurisdiction to provide wrongful death remedies under state law for fatalities *on territorial waters*") (emphasis added); *Ten Taxpayer Citizens Group v. Cape Wind Assoc.*, 373 F.3d 183, 193-97 (1st Cir. 2004)

rejecting the argument that a federal statute recognizing state power over specific activities overrides OCSLA's displacement of state law on the OCS).[17]

### b). *Federal law preempts the Florida Statute here*

Even if OCSLA did not require exclusive application of federal law to this case, the combined effect of OPA and OCSLA preempts application of the Florida Statute alleged by Carnival. Precedent holding that federal law preempts application of an affected state's law to interstate *water pollution* originating from non-OCS sources requires the similar conclusion that federal law preempts applying an affected state's law to *oil spills* originating from OCS sources.

"[R]egulation of interstate water pollution is a matter of federal, not state, law . . . ." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) (citations omitted). Since Congress's enactment of extensive legislation in the area (through, for instance, the Clean Water Act), federal statutes have displaced the *ad hoc* federal common law remedy that previously supplied the substantive rules of decision. *See City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981). With federal statutory law firmly in place, "it is clear that the only state suits that remain available are those specifically preserved by" the new federal statutes. *Ouellette*, 479 U.S. at 492.

In *Ouellette*, the Supreme Court held that the Clean Water Act, in light of its text, purposes, and history, and *notwithstanding its savings clause*, does not "preserve the right to bring suit under the law of any affected State." *Id.* at 493. Applying the law of an affected state

---

[17]  When enacting OPA, Congress foresaw this very result. Senators Chaffee, Lieberman, Graham, and Durenberger objected that an early draft of OPA was ill-suited to OCS oil spills because it capped liability for clean-up costs. S. REP. NO. 101-94, at 26 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 748. In a statement on the bill, which had a savings clause like that which was enacted into law, the Senators noted that states lacked authority to impose additional liability above the cap because OCS facilities "are outside the three mile limit, and therefore are not subject to state laws." *Id.* at 27, 1990 U.S.C.C.A.N. at 749. Congress resolved the Senators' objection by eliminating the OPA cap on clean-up liability, not by giving states authority to impose additional liability with respect to OCS oil spills.

to pollution originating in another state would seriously undermine, and stand as an obstacle to the full implementation of, the methods by which the Clean Water Act regulates interstate water pollution. *Id.* at 494-97 (explaining how applying an affected state's law would circumvent the Act, which gives regulatory authority only to EPA and source states and which defines a narrow role for affected states). Because of those federal-state conflicts, together with the likelihood of state-state conflicts, the Court ultimately held that the Act's savings clause preserves only claims brought under the law of a source state. *Id.* at 497-500; *see id.* at 495 ("an interpretation of the saving clause that preserved actions brought under an affected State's law would disrupt this balance of interests").[18]

That reasoning also leads to the conclusion that OPA's savings clause cannot be interpreted to allow application of the Florida Statute in this case. Applying the Florida Statute to an oil spill originating on the OCS would frustrate Congress's methods for regulating OCS operations and would lead to problems of conflicting multistate regulation. Through OCSLA and the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 1451-1464, the federal government extensively regulates exploration and drilling operations on the OCS for their potential environmental impacts. *See Mobil Oil Exploration & Producing SE, Inc. v. United States*, 530 U.S. 604, 609-10 (2000) (summarizing the four pillars of the comprehensive regime). Just as in *Ouellette*, applying the law of an affected state to discharges from OCS operations would circumvent this careful scheme, which specifically assigns a largely advisory role to affected states: "The inevitable result of" applying an affected state's law "would be that . . . States could do indirectly what they could not do directly – regulate the conduct of" OCS

---

[18]     The Clean Water Act's preservation of source state law is inapplicable here because Carnival have pleaded that the oil that harmed them was discharged not from a state, but from a federal enclave on the OCS. *See* Amend. Mast. Comp. B1 at ¶ 272.

operations. *Ouellette*, 479 U.S. at 495. Applying the law of an affected state also would "undermine the important goals of efficiency and predictability," for "application of numerous States' laws would only exacerbate the vagueness and resulting uncertainty." *Id.* at 496. Also, as in *Ouellette*, the savings clauses in the relevant federal statutes (*e.g.,* 16 U.S.C. § 1456(e) (CZMA); 33 U.S.C. § 2718 (OPA); 43 U.S.C. § 1349(a)(6) (OCSLA)) do not obviate resort to ordinary conflict preemption principles. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869-74 (2000) (citing *Ouellette,* 479 U.S.); *cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 230 (1986) ("[i]t is hardly conceivable that Congress," through a mere savings clause, "could have intended that these diverse state statutes could be applied to remedy maritime torts occurring the world over").

*Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325 (1973), does not require a contrary result. There, considering a limited preemption question, the Supreme Court upheld an earlier and more limited version of the Florida Statute, which by its own terms applied only to oil pollution discharged in State territorial waters. *Id.* at 327-38. The Court held that there was "no collision" between the Florida Statute and the Federal Water Quality Improvement Act (earlier legislation on which the Clean Water Act expanded) because that federal Act was "concerned only with actual cleanup costs incurred by the Federal Government" as a result of an oil spill, and did not address the clean-up costs or other costs incurred by States for damages resulting from injury to their citizens and natural resources. *Id.* at 333-34, 335-36. The Court also held that federal maritime law did not prohibit Florida from so legislating. *Id.* at 337-44. The Court reserved the question of whether the Florida Statute unconstitutionally "conflict[ed] with any federal Act." *Id.* at 343.

Because the then-extant Florida Statute expressly applied only to discharges within Florida territorial waters, the *Askew* Court did not consider whether any federal statute preempted the application of the Florida Statute to *interstate* oil spills or to oil spills resulting from operations on the OCS, which are the circumstances alleged here. With the passage of the Clean Water Act and OPA, Congress broadly expanded federal regulation of interstate oil pollution to areas conflicting with the Florida Statute, including clean-up costs and other costs incurred by States for damages to their citizens and natural resources. Furthermore OCSLA governs all operations on the OCS to the exclusion of state law and applies to oil spills and other environmental harms resulting from those operations. The Clean Water Act, OCSLA, and OPA were not at issue in *Askew*, and they are what preempts the substantive laws of states affected by oil spills originating on the OCS, including the Florida Statute.

## III.
## ALTERNATIVELY, THE
## CROSSCLAIMS SHOULD BE STAYED

It is well established that a district court has the inherent authority and discretion to consolidated and manage complex litigation, particularly when serving as the transferee court in a multidistrict proceeding. *See In re Air Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012-16 (5th Cir. 1977)(holding that an MDL transferee court has managerial power that is "especially strong and flexible in matters of consolidation"). This discretion is also supported by Rules 16, 26, 37, 42 and 83, of the Federal Rules of Civil Procedure, which contain numerous grants of authority that supplement a district court's inherent power to manage litigation. Indeed, Rule 16(c)(2)(L) expressly authorizes district courts to adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems, all of which are present in the instant action.

In connection with its administration of the Deepwater Horizon multidistrict litigation (the "MDL") the district court has entered several pre-trial orders (hereinafter "PTO") establishing the structure and procedure for its case management of the MDL. Specifically, ¶ 8 of PTO #25[19], stays all individual petitions or complaints that fall under Pleading Bundles B1, B3, D1, or D2, definitions. Thus, Carnival's Crossclaims filed against MOEX Offshore in this limitation proceeding are contrary to the intent and spirit of the stay established by the Court in PTO #25, and should be stayed.

## IV.
## CONCLUSION

WHEREFORE, Cross-Defendant MOEX Offshore 2007 LLC prays that this Court grant this motion and dismiss with prejudice the Crossclaims asserted against it by Carnival for failure to state a claim upon which relief can be granted. Alternatively, this Court should order a stay of the Carnival's Crossclaims against MOEX Offshore 2007 LLC.

DATED: August 26, 2011                    Respectfully submitted,

                                          _/s/ Philip D. Nizialek_____
                                          Philip D. Nizialek (La. Bar No. 24180)
                                          M. Hampton Carver (La. Bar No. 3947)
                                          CARVER, DARDEN, KORETZKY, TESSIER,
                                          FINN, BLOSSMAN & AREAUX, LLC
                                          1100 Poydras Street, Suite 3100
                                          New Orleans, LA 70163
                                          Telephone: (504) 585-3800
                                          Fax: (504) 585-3801

                                          **ATTORNEYS FOR**
                                          **MOEX OFFSHORE 2007 LLC**

---

[19] Rec. Doc. No. 983, entered on 1/12/11.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing memorandum to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on August 26, 2011.

_____/s/ *Philip D. Nizialek*_____

4821-9845-2746, v. 7