# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: **OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010**<br><br>**This Document relates to:**<br><br>*All cases* | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |

## TRANSOCEAN'S MEMORANDUM IN OPPOSITION TO THE BP PARTIES' MOTION TO COMPEL [Dkt. No. 3788]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT ............................................ 2

ARGUMENT ................................................................................................................ 6

    I.     Transocean Properly Asserted Privilege For Documents Related To Work Done By The Internal Investigation Team To Assist Counsel On Projects Other Than The Internal Investigation Report ................................................... 6

    II.    Transocean Has Properly Asserted Privilege For The Drafts Of The Investigation Report ............................................................................... 8

         A.    The Draft Reports Are Protected Attorney-Client Communications ........ 8

         B.    The Publication Of The Final Report Did Not Waive The Applicable Privileges For The Drafts ...................................................... 10

    III.    Transocean Properly Asserted Privilege For Documents Related To Certain Third-Party Consultants .......................................................... 13

    IV.    Transocean Properly Asserted Privilege For Correspondence To And From Representatives Of Financial Dynamics, A Public Relations Firm Which Was Assisting Counsel ........................................................... 15

    V.    Transocean Provided Sufficient Information For BP And Others To Determine That Privilege Was Properly Invoked ................................... 16

    VI.    The BP Parties' Motion With Respect To Requests For Admissions 45-67 and 282 Should Be Denied Because It Is Moot And Transocean Has Satisfied Its Obligations Under Rule 36 ............................................. 18

         A.    The BP Parties' Motion With Respect to RFAs 45-67 and 282 Is Moot Because Transocean Has Supplemented Its Responses ................. 18

         B.    Transocean's Original and Supplemental Responses Have Satisfied Its Obligations Under Federal Rule of Civil Procedure 36 ...................... 20

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*,
   174 F.R.D. 609 (M.D. Pa. 1997) .............................................................9

*Apex Mun. Fund v. N-Group Securities*,
   841 F. Supp. 1423 (S.D. Tex. 1993) ........................................................8

*AT&T Corp. v. Microsoft Corp.*,
   No. 02-0164 MHP (JL), 2003 WL 21212614 (N.D. Cal. April 18, 2003) ..............9

*B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York, Inc.*,
   171 F.R.D. 57 (S.D.N.Y. 1997) ...........................................................14

*Buford v. Holladay*,
   133 F.R.D. 487 (S.D. Miss. 1990) .........................................................12

*Chevron USA Inc. v. Peuler*,
   No. Civ. A. 02-2982, 2004 WL 224579 (E.D. La. Feb. 3, 2004) ........................19

*Fidelity Deposit Co. of Maryland v. McCulloch*,
   168 F.R.D. 516 (E.D. Pa. 1996) ...........................................................17

*Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equipment Resource, Inc.*,
   No. Civ.A. 03-1496, Civ.A. 03-1664, 2004 WL 1299042 (E.D. La. June 4, 2004) .........8

*Hertzberg v. Veneman*,
   273 F. Supp. 2d 67 (D.D.C. 2003) ..........................................................7

*In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*,
   133 F.R.D. 515 (N.D. Ill. 1990) ...........................................................12

*In re Copper Market*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ...........................................................16

*In re Grand Jury Subpoenas Dated March 24, 2003*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003) ..................................................15, 16

*In re Kidder Peabody Sec. Litig.*,
   168 F.R.D. 459 (S.D.N.Y. 1996) ...........................................................12

*In re Shell Oil Refinery*,
   132 F.R.D. 437 (E.D. La. 1990) .........................................................13, 14

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Vioxx Prods. Liab. Litig.*,
   No. MDL 1657, 2007 WL 854251 (E.D. La. Mar. 6, 2007).....................................................16

*In re Vioxx Products Liability Litig.*,
   501 F. Supp. 2d 789 (E.D. La. 2007) .........................................................................................8

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and
   Products Liability Litig.*,
   MDL No. 2100, 2011 WL 2462033 (S.D. Ill. June 17, 2011) ...................................................12

*Irwin Indust. Tool Co. v. Worthington Cylinders Wisconsin*,
   No. 3:08-cv-291, 2009 WL 606190 (W.D.N.C. March 9, 2009).............................................19

*Laethem Equipment Co. v. Deere & Co.*,
   261 F.R.D. 127 (E.D. Mich. 2009) ......................................................................................8, 10

*Messier v. Southbury Training Sch.*,
   No. 3:94-CV-1706 (EBB), 1998 WL 422858 (D. Conn. June 29, 1998) ................................14

*Muncy v. City of Dallas, Texas*,
   No. Civ. A. 3:99-CV-2960-P, 2001 WL 1795591 (N.D. Tex. Nov. 13, 2001) ........................8

*Pacific Gas & Elec. Co. v. U.S.*,
   69 Fed. Cl. 784 (Fed. Cl. 2006) ...............................................................................................17

*Randleman v. Fidelity Nat'l Tit. Ins. Co.*,
   251 F.R.D. 281 (N.D. Ohio 2008) ............................................................................................12

*Rockwell Automation, Inc. v. GGSI Liquidation, Inc.*,
   No. 00 Civ. 8763(RMB)(DFE), 2003 WL 22227968 (S.D.N.Y. Sept. 23, 2003) ...................17

*Rose v. Burlington Northern R. Co.*,
   136 F.R.D. 638 (N.D. Ill. 1991)................................................................................................13

*Roth v. Aon Corp.*,
   254 F.R.D. 538 (N.D. Ill. 2009)..........................................................................................11, 12

*Stern v. O'Quinn*,
   253 F.R.D. 663 (S.D. Fla. 2008)...............................................................................................19

*Tampa Bay Water v. HDR Eng'g, Inc.*,
   No. 8:08-cv-2446-T-27TBM, 2010 WL 3394729 (M.D. Fla. Aug. 26, 2010) ........................14

*Tribune Co. v. Purcigliotti*,
   1997 WL 10924 (S.D.N.Y. 1997)................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*U.S. Information Systems, Inc. v. IBEW*,
    No. 00CIV4763RMBJCF, 2002 WL 31093619 (S.D.N.Y. Sept. 17, 2002) ........................... 17

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) ................................................................................................. 15

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961) ............................................................................................ 15, 16

*United States v. Robinson*,
    121 F.3d 971 (5th Cir. 1997) ............................................................................................... 7, 9

*Upjohn v. United States*,
    449 U.S. 383 (1981) ........................................................................................................... 8, 10

S<small>TATE</small> C<small>ASES</small>

*Ideal Elec. Co. v. Flowserve Corp.*,
    230 F.R.D. 603 (D. Nev. 2005) ............................................................................................. 12

*In re Tyco Intern. Ltd. Multidistrict Litigation*,
    No. 02-md-1335-PB, 2007 WL 710188 (D.N.H. March 7, 2007) ........................................... 9

*Kobluk v. Univ. of Minnesota*,
    574 N.W.2d 436 (Minn. 1998) ............................................................................................... 9

*Virginia Elec. & Power Co. v. Westmoreland-LG&E Partners*,
    526 S.E. 2d 750 (Va. 2000) ................................................................................................... 9

S<small>TATUTES AND</small> R<small>ULES</small>

Fed. R. Civ. P. 26 ......................................................................................................... *passim*

Fed. R. Civ. P. 36 ........................................................................................................... 18, 19

O<small>THER</small> A<small>UTHORITIES</small>

Rest. (Third) of Law Governing Lawyers ........................................................................ 8, 10

## INTRODUCTION

Petitioners Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC and Triton Asset Leasing GmbH (collectively "Transocean") hereby oppose the BP Parties' Motion to Compel [Dkt. No. 3788].

The BP Parties' suggestion that Transocean is shielding documents related to its internal investigation and essentially limiting BP to the public report of the internal investigation team is a gross distortion of the facts. Transocean has produced over 247,000 documents -- 3,360,000 pages -- compiled and created during the investigation. These documents include:

- Memoranda, drafts and notes of over 200 interviews conducted by the internal team;

- Investigation and event tickets prepared by the team that reflect each stage of the investigation and each event or possibility considered;

- Multiple versions of timelines and root causes analyses prepared by the team as their factual findings evolved; and

- Thousands of documents reflecting the historical data gathered by the team.

Transocean has asserted privilege for only a small fraction of the universe of documents. In making those assertions, Transocean has applied well-known criteria that have been used and accepted by this Court for invoking attorney-client privilege and/or the work product doctrine. Significantly, Transocean's position is that articulated and agreed by all parties at this week's status conferences wherein draft reports were discussed. Transocean has limited its privilege claims to work done by the internal team or consultants to assist counsel in the many proceedings, apart from the internal investigation, that have resulted from the Macondo blowout and to communications with counsel seeking legal advice. The privilege determinations were

made through a painstaking, document-by-document review over the course of several months.[1] If the Court has any doubts or questions about the propriety of any of the privilege assertions, Transocean would welcome the opportunity to submit to the Court, for in camera review, any or all of the documents at issue, or any sampling the Court believes would be helpful.

The bottom line, as demonstrated below, is that, far from shielding the internal team's work,  Transocean has in effect opened up the internal team's files, including documents showing the team's extensive factual investigation and the wide range of possibilities that the team considered.  Transocean's privilege claims are proper, and BP's Motion to Compel further documents should be denied.

The BP Parties' Motion with respect to RFAs 45-67 should also be denied.  First, the Motion is moot because Transocean, concurrently with this Opposition, is serving Supplemental Responses.  Under settled law, voluntarily supplementing challenged RFA responses in accordance with meet-and-confer discussions renders a motion to compel moot.  Second, Transocean's Original and Supplemental Responses have satisfied Transocean's obligations under Federal Rule of Civil Procedure 36 because they contain objections, grounds for objecting, and partial admissions or denials.

### FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

The production of internal investigation team documents that has occurred in this case is the product of an extensive and careful review project that has itself required months of legal work.  The internal team collected several hundred thousand historical documents related to the rig's daily operations, maintenance, personnel, BOP testing, procedures on other rigs, or other areas for investigation.  The team also collected thousands of pages of *Horizon* schematics and

---

[1] The factual background and details of the internal investigation document review are set forth in the Declaration of Susan E. Nash, filed as Exhibit 1 hereto.

photographs, and manuals.  These historical documents (unless themselves attorney-client communications) have now been produced.

The core work done by the internal investigation team has also been produced.  The team conducted more than 200 *interviews* of crew members and others, with paralegals present.   With a very few exceptions, the summaries of the interviews later prepared by the paralegals have all been produced, as have the drafts of the summaries and the notes taken by the other interviewers.

As part of its root cause analysis, the internal team created approximately 1200 "*event tickets*," setting out factual information about a particular event under investigation, such as the precise time of the explosion on the rig.  The event tickets were entered onto a *timeline* that was updated as more information became available.  The event tickets and timelines have been produced.

Documents reflecting the various avenues considered by the team in reaching the conclusions in the report have also been produced.  When a team member had a question to be answered, an "*investigation ticket*" was created.  So, for example, one investigation ticket asks: "did the flow diverted through the mud gas separator exceed the design capacity?"  Another addresses "what modifications have occurred to the BOP or related systems?" The team created approximately 400 investigation tickets, some of which went through 20-30 revisions.  The investigation tickets have been produced.[2]

Finally, multiple versions of the ongoing root cause analyses created by the team have been produced.

---

[2] We understand that, at a deposition this week, a member of the Transocean investigation team (Bob Walsh) was aggressively questioned based on an investigation ticket he created in which he discussed and commented on the crew having diverted the kick to the mud gas separator instead of the offboard diverter. This is clearly not a case akin to *Tribune Co. v. Purcigliotti,* 1997 WL 10924 at *5 (S.D.N.Y. 1997) (cited in BP Memorandum, at 9) where a party "release[es] only those portions of the material that are favorable to his position, while withholding unfavorable portions."

Notwithstanding this enormous production, BP now challenges the withholding of a subset of the documents on Transocean's privilege log. The total number of documents individually logged as of July 28, 2011, was 2972. BP has challenged 1,192 of these entries, as well as the collective logging of the drafts reports as attorney-client communications and work product. BP claims that Transocean cannot assert work product protection unless the documents were prepared at the direction of counsel and that any work product protection has been waived by the publication of the final investigation report. BP also challenges assertions of attorney-client privilege where no individual author is named. BP's posture, apparently, is that the log entries leave BP unable to understand the basis of the claim of privilege. As demonstrated herein, these contentions are baseless.

The documents now in dispute, for the most part, fall into three categories:

(1)      _Documents prepared to assist counsel_: The investigative team did work for counsel on projects other than the internal investigation report, including preparation for administrative and Congressional hearings. Ex. 2, Declaration of Mark Thibodeaux ("Thibodeaux  Declaration"), ¶¶ 4-5. All of the documents in this category are classic work-product, and many are also privileged attorney-client communications.

(2)      _Draft reports submitted for legal review_: Approximately 3200-3500 drafts (or draft sections, snippets or illustrations) of the internal investigation report. These documents were collectively logged as the last item on the privilege log (# 2973) and collectively withheld as attorney-client communications and work product. Again, this privilege claim is well founded. The report itself was not prepared for litigation purposes. Transocean _never intended and does not intend to use the report offensively in this litigation._[3] Drafts of the report are protected by attorney-client privilege because the documents were submitted for review by

---

[3] BP concedes that any  argument for waiver of privilege as to draft reports is weaker where a party does not intend to use the final report offensively.  BP Memorandum, at 11 n.4.

counsel embedded with the internal investigation team from the outset for the purpose of

providing legal advice and services with respect to the report and associated litigation.  Indeed,

many of the drafts contain express attorney comments.  The drafts were consistently marked

"**Privileged and Confidential.  Attorney-Client Communication.  Work in Progress.**"

Counsel believe that they in fact reviewed the vast majority of the drafts.  *See* Ex. 2, Thibodeaux

Decl., ¶¶ 2, 6-8.  As we explain below, draft reports sent to counsel for the purposes of obtaining

legal advice or assistance are protected by the attorney-client privilege (in addition to work

product).  Contrary to BP's claim, the privilege for draft reports is not waived by releasing the

final report.

> (3)   *Reports from and communications with third party consultants retained by the*
>
> *investigation team*:  Where the team relied on the final report of an outside expert or retained the
>
> expert to help with the investigation, no privilege has been asserted.  In fact, many of those
>
> outside reports are attached as appendices to the Transocean report.  However, in some instances,
>
> the third party consultant did work that was intended to assist counsel with issues that arose in
>
> other proceedings and that was not used in the team's final report.  *See* Ex. 2, Thibodeaux Decl.,
>
> ¶¶ 9-13.  BP is not entitled to production of work done by these consultants for litigation support.
>
> BP's rights are fully protected by its ability to question Transocean (or other) witnesses based on
>
> the final report and the underlying documents on which the investigation team relied.[4]

BP argues, however, that certain documents, including the draft reports logged

collectively as number 2973 on the log, are not privileged because specific author-recipient

information was not provided.  This procedural argument should be given short shrift.  As

demonstrated below, the log was specific enough to identify the nature of the documents for

---

[4] An additional consultant, Financial Dynamics, has provided public relations services under the supervision of counsel.  Ex. 1, Nash Decl., ¶ 8.  As discussed below, the courts have recognized that such services are an essential part of litigation strategy and accorded privilege protection for communications with such consultants, particularly in cases of this magnitude.

which privilege was invoked and to determine that the invocation of privilege for the various categories described herein was proper.  That is all that the law requires.  BP's motion should be denied.

## ARGUMENT

I.   **Transocean Properly Asserted Privilege For Documents Related To Work Done By The Internal Investigation Team To Assist Counsel On Projects Other Than The Internal Investigation Report.**

In addition to its work on a report of the causes of the incident, the internal investigation team was asked to assist counsel on other projects.  These other projects included (1) preparing for the Joint Investigation Team of the U.S. Coast Guard and Bureau of Ocean Energy Management ("JIT") hearings and submissions to the JIT staff; (2) preparing for testimony before Congressional committees, and submissions to Congressional committee staff; and (3) preparing submissions to the Presidential Oil Spill Commission (OSC) and preparing for OSC public hearings.  Ex. 2, Thibodeaux Decl., ¶¶ 4-5.  The team also prepared reports and updates to Transocean management and counsel.  Ex. 1, Nash Decl., ¶ 8.

Many of the documents at issue in the present motion are the work product for these other counsel-directed projects.  Transocean properly asserted work product protection and, where appropriate, attorney-client privilege, as to these documents.  The descriptions of these documents in the log are sufficient to indicate the basis for claiming privilege.  For example, log entry 2732 says "Email string regarding upcoming OSC proceedings prepared in anticipation of litigation."  Log entry 2578 says "Email string discussing files needed for presentation in connection with OSC proceedings and in anticipation of litigation." [5]

---

[5] Some of the earlier (lowest-numbered) entries in the log are more general, and pre-date the more specific guidelines developed to assert privilege after the team completed its report.  Transocean has already produced the following documents that BP lists in its Motion to Compel: 48, 67, 71, 72, 81, 90, 92, 96-100, 107-108a, 1045-1050, 1096, 1099, 1102, 1107-1112, 1114, 2231, 2233, 2236, 2237.  Transocean is continuing to pull and review the remaining individual documents listed by BP in its Motion to assure that the guidelines described herein have been fully followed.  Any internal team

BP's position on this motion is apparently that a work-product log entry is deficient unless it states that the document was "prepared at the direction of counsel."  This claim is puzzling.  BP's own work-product privilege descriptions routinely are phrased as follows: "Document prepared in connection with, and/or in anticipation of litigation regarding Deepwater Horizon."  *See, e.g.,* BP's 22d Privilege Log, entries 3 & 4.   Such entries do not state -- as BP now suggests is required -- that the document was "prepared at the direction of counsel."

In any event, work product protection does not even require that the work be done by or at the direction of an attorney, as long as it is done by a party or its representative in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3)(A) & Adv. Comm. Note; *see Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 76 (D.D.C. 2003) (witness statements and other materials gathered by Forest Service investigators in aftermath of incident were protected by work product even though not done under direct supervision of attorneys: "By its own terms, then, the work product privilege [under Rule 26(b)(3) covers materials prepared by or for *any party or by or for its representative*; they need not be prepared by an attorney or even for an attorney") (emphasis original).  As a matter of law, Transocean is not required to prove or assert that work product documents were prepared at the direction of an attorney.  In fact, however, the team generally provided assistance to counsel and acted at counsel's direction in connection with these other proceedings.  Ex. 2, Thibodeaux Decl., ¶¶ 4-5.

---

documents not meeting the current Transocean privilege criteria that were previously coded as privileged will be produced.  To date, and subject to a final quality control review, Transocean has identified the following documents from BP's first "bucket" of challenges -- documents for which work product protection was initially asserted -- for production:   66-66b, 73-75, 77, 79, 79a, 115, 119-121a, 589, 890, 758, 770, 772, 776, 798, 800, 801, 807, 808, 811, 813-817, 1207, 2172, 2183, and 2491.

II.     **Transocean Has Properly Asserted Privilege For The Drafts Of The Investigation Report.**

### A.  The Draft Reports Are Protected Attorney-Client Communications.

The attorney-client privilege protects all confidential communications between a client and its attorneys for legal advice or services, *see United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (listing the elements of the privilege), including confidential communications made in the course of a corporation's internal investigation, *Upjohn v. United States*, 449 U.S. 383 (1981).  A protectable "communication" is defined broadly as "*any* expression through which a privileged person . . . undertakes to convey information to another privileged person and *any document or other record* revealing such an expression."  *Laethem Equipment Co. v. Deere & Co.*, 261 F.R.D. 127, 140 (E.D. Mich. 2009) (quoting Rest. (Third) of Law Governing Lawyers § 69; Weinstein's Evidence § 503.14) (emphasis added).  In *Upjohn*, "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel."  449 U.S. at 394 (footnote omitted).  The corporate employees involved "were aware of the legal implications" of the investigation, and their "communications were considered 'highly confidential' when made."  *Id.* (citation omitted).  The Supreme Court held that, "[c]onsistent with the underlying purposes of the attorney-client privilege," those communications "must be protected against compelled disclosure."  *Id.*

That protection also applies when the communications at issue are "otherwise confidential drafts of [a] published document."  Rest. (Third) of Law Governing Lawyers § 71 cmt. d.  While there is no controlling Fifth Circuit precedent on point, this district court and other district courts within the Fifth Circuit have recognized that drafts should be protected.  *See, e.g.*, *In re Vioxx Products Liability Litig.* ("*Vioxx II*"), 501 F. Supp. 2d 789, 802-03 (E.D. La. 2007); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equipment Resource, Inc.*, No. Civ.A.

03-1496, Civ.A. 03-1664, 2004 WL 1299042, at *21 (E.D. La. June 4, 2004); *see also Muncy v. City of Dallas, Texas,* No. Civ. A. 3:99-CV-2960-P, 2001 WL 1795591, at *2-3 (N.D. Tex. Nov. 13, 2001) (discussing caselaw on drafts); *Apex Mun. Fund v. N-Group Securities*, 841 F. Supp. 1423, 1427-28 (S.D. Tex. 1993) (same).

"A client should not be foreclosed from having counsel review a preliminary draft of a document and provide legal advice via another draft, when the drafts are created to facilitate the efficient and complete exchange of information between lawyer and client and when the drafts are kept strictly private." *Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 444 (Minn. 1998) (finding privilege for drafts of a letter sent to third parties). There is "no reason to draw an illusory distinction between a face-to-face conversation and a non-oral exchange of essentially the same information. Such a holding would contravene the very essence of the privilege: to encourage the free flow of information between client and counsel, thereby promoting effective legal representation." *Id.* So "[d]rafts of documents prepared by counsel or circulated to counsel for comments on legal issues" can be considered privileged, just like any other attorney-client communication seeking legal advice or services. *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997). *See also In re Tyco Intern. Ltd. Multidistrict Litigation,* No. 02-md-1335-PB, 2007 WL 710188 (D.N.H. March 7, 2007) (parties agreed that drafts of report disclosed to the SEC were privileged).

To be privileged, it is not necessary that the document by its own terms convey a request for legal advice, as long as the "proponent of the privilege sustains its burden of proof to show that the document was prepared with the intention of securing legal advice on its contents." *Virginia Elec. & Power Co. v. Westmoreland-LG&E Partners*, 526 S.E. 2d 750, 754-55 (Va. 2000) (draft letter prepared by company CFO, with intent to get legal advice on its contents, was protected by attorney-client privilege). Moreover, the client need not prove that its attorney actually gave advice; the client must prove only that "it made a confidential communication" to

its attorneys "for the primary purpose of securing" either legal advice or services. *Robinson*, 121 F.3d at 974 (emphasis omitted). So "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice . . . are protected by attorney-client privilege," *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. April 18, 2003) (citing *Upjohn*, 449 U.S. at 394-95), even before counsel's review, *see Laethem*, 261 F.R.D. at 140 (quoting Restatement (Third) of Law Governing Lawyers § 69 at comment c; Weinstein's Evidence § 503.14).

As the amendments to Rule 26 of the Federal Rules of Civil Procedure make clear, fair cross-examination of an expert on his or her report does not require the production of every draft of the report, nor does it require production of every communication between the expert and counsel. Experience under the old rule demonstrated just the opposite. Requiring drafts and communications with counsel to be produced encourages more -- not less -- gamesmanship in the preparation of expert reports. It is for that reason that this Court has recently confirmed the parties' agreement that an expert's draft reports and communications with counsel need not be produced. If that procedure is fair with respect to a report that is intended to be introduced as evidence at trial, it is by definition fair where, as here, the report was not produced for trial purposes, and the party for whom the report was prepared has agreed that it will not use the report offensively in this litigation.

### B. The Publication Of The Final Report Did Not Waive The Applicable Privileges For The Drafts.

The cases on which BP relies generally stand for the proposition that, where the applicable privilege is the qualified work product privilege (which can be overcome on a showing of substantial need), **and where a party intends to make offensive use of a published final report**, publication of the final report may be construed as a waiver of privilege as to earlier drafts. These case are not applicable here for three reasons:

First, as noted, Transocean does not intend to make offensive use of its published investigation report.  The report was not prepared to be used in the litigation, and Transocean has no plan to use it.[6]  None of the fundamental fairness considerations invoked in the cases cited by BP is presented here.

Second, the draft reports are protected by the attorney-client privilege because they were prepared with the expectation they would be reviewed by counsel, were in fact reviewed by counsel for purposes of providing legal advice, and in many instances contain attorney comments.   The attorney-client privilege applicable to drafts is not waived by producing final versions of a document.  *Indeed, BP does "not claim that Transocean has waived the attorney-client privilege by publicly disclosing the Report of its investigation."*  BP Memorandum, at 8 n. 3.  Because Transocean has properly asserted an attorney-client privilege for the drafts, BP's waiver argument fails.

Third, to the extent the documents contain attorney comments, the applicable work product privilege is not a qualified privilege, but an absolute privilege for documents revealing the attorney's mental impressions.  The "mental impressions, conclusions, opinions, or legal theories of a lawyer or other representative of a party concerning the litigation," sometimes called "opinion work product," are absolutely protected from disclosure.  Fed. R. Civ. P. 26(b)(3)(B).

There is no basis for finding waiver of any applicable privilege here.  "[U]nless the communication does not at the outset meet the elements of attorney-client privilege, [] a draft of a document which becomes public record does not thereby lose that privilege."  *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009).  "The mere fact that the end product of an attorney-

---

[6] BP also appears to suggest that is should obtain the draft reports because the *PSC has used* the team's final report.  BP Memorandum, at 11, n. 4.  Transocean is at a loss to understand how the PSC's decisions can affect a finding as to whether Transocean should be deemed to have waived an otherwise applicable privilege.

client relationship is a document that becomes part of the public record does not per se waive the privilege as to all communications that occurred prior to the publication of that document." *Buford v. Holladay*, 133 F.R.D. 487, 492 (S.D. Miss. 1990). "So long as the initial legal advice sought from an attorney in legally formulating the drafts is made in confidence and protected by the client as confidential information without waiver, there is no apparent reason why the drafts should cease to be privileged once the final product becomes public." *Roth*, 254 F.R.D. at 541. In fact, "[i]f the goal of the attorney-client privilege is to encourage a free flow of communications between attorney and client,

> preliminary . . . drafts . . . ought to be protected. The client and [its] attorney ought to be able to discuss the precise terms of the disclosure, including drafting wording reflecting the best way to communicate the information, without the risk that matters ultimately determined not to be disclosed would be unprivileged.

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litig.* ("*Yasmin*"), MDL No. 2100, 2011 WL 2462033, at *5 (S.D. Ill. June 17, 2011) (quoting Kenneth S. Broun, 1 *McCormick on Evid.* § 91 (6th ed. 2006)). "Indeed, most courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact." *Roth*, 254 F.R.D. at 541 (citing *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989* ("*Sioux City*"), 133 F.R.D. 515, 518 (N.D. Ill. 1990)); *see, e.g.*, *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 474 (S.D.N.Y. 1996) ("[P]ublic release of [a] report does not waive the privilege for the drafts if they were otherwise protected by the privilege"); *cf. Randleman v. Fidelity Nat'l Tit. Ins. Co.*, 251 F.R.D. 281, 285-86 (N.D. Ohio 2008); *Ideal Elec. Co. v. Flowserve Corp.*¸ 230 F.R.D. 603, 608-09 (D. Nev. 2005) (filing affidavit in litigation does not waive work product as to drafts or other documents that show attorney's input into final affidavit).

III.    **Transocean Properly Asserted Privilege For Documents Related To Certain Third-Party Consultants.**

Some of the documents at issue relate to work done by certain third-party consultants.  To the extent that these experts prepared draft or final reports relied on by the internal investigation team in the report -- and in some cases even where those experts' work was not used -- these documents, as well as ancillary documents such as work orders, have been or will be produced. Ex. 1, Nash Decl., ¶ 11; Ex. 2, Thibodeaux Decl., ¶¶ 9-12.  Documents generated by or sent to consultants embedded with the team have also been produced, except to the extent that they reflect attorney-client communications, work done on the draft reports or work done to assist counsel with the other proceedings, such as JIT hearings, discussed above.  Ex. 1, Nash Decl., ¶ 11; Ex. 2, Thibodeaux Decl., ¶¶ 9-12.

The only other third party documents that have been withheld relate to work done by three outside consultants to assist the company and its counsel in legal proceedings (specifically, in the JIT or OSC proceedings).  Ex. 2, Thibodeaux Decl., ¶ 9.  This work was necessary to help counsel respond to questions or issues that came up in these proceedings and would not otherwise have been undertaken.  This work has not been disclosed in the final report or in the other proceedings and remains confidential for use by counsel in this case.

The retention of consulting experts for litigation-type purposes other than the final report whose reports were not used in the final report is akin to the use of consulting experts at trial.  If counsel had retained the expert directly for litigation purposes and, for whatever reason, decided not to use the expert's report or testimony in the litigation, Rule 26 would protect that expert's work under the work-product doctrine.  Such protection can be overcome only by a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Fed. R. Civ. P. 26(b)(4)(D); *see Rose v. Burlington Northern R. Co.*, 136 F.R.D. 638, 639 (N.D. Ill. 1991) (where plaintiff changed mind

and shifted testifying expert to consulting expert before any expert testimony was given, work product protected work done by expert).  A party invoking "exceptional circumstances" to obtain work done by a consulting expert "carries a heavy burden."  *In re Shell Oil Refinery* ("*Shell Oil*"), 132 F.R.D. 437, 442 (E.D. La. 1990).  The *Shell* court found that the heavy burden of showing "exceptional circumstances" was not met by a plaintiff seeking discovery of metallurgical and chemical tests conducted by consulting experts for Shell after an explosion at a Shell refinery; the plaintiffs did not show that they needed the test results to understand how Shell's testifying experts would substantiate their conclusions at trial.  The court concluded that the plaintiffs sought the tests "to avoid the expense of conducting their own tests" and denied the request for discovery.  132 F.R.D. at 443.

There is no policy reason here for treating an unused expert's report differently simply because the expert was retained to help counsel in the JIT and OSC proceedings.  As in the *Shell* case, BP can hire its own experts.  BP has a legitimate right, of course, to question Transocean's investigative team as to the final report issued by the team and to have access to any documents actually relied upon by the team in coming to the conclusions set forth in the report.  BP has no legitimate interest, however, in obtaining work done by third parties that was not relied upon by the team in arriving at the conclusions in its report.[7]

---

[7] The fact that two of the consultants, Prospect and DNV, also performed separate projects for the internal investigation team does not change the analysis.  The courts have recognized that, in a single case, an expert can do both sorts of work:  confidential consulting on one issue, and non-confidential testifying on another issue.  Documents having no relation to the expert's role as a testifying expert may be outside the scope of discovery.  *B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York, Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997).  Where the nature of the subject matters consulted on is focused and there is a clear distinction between the consulting work and the testifying work, the work-product doctrine may be invoked to protect work completed by the expert in his consultative capacity.  *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706 (EBB), 1998 WL 422858, at *2 (D. Conn. June 29, 1998); *Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-cv-2446-T-27TBM, 2010 WL 3394729, at *2-3 (M.D. Fla. Aug. 26, 2010)).  BP has not even attempted to argue that it is entitled to the separate work done by these experts for other proceedings in its motion.

IV.     **Transocean Properly Asserted Privilege For Correspondence To And From Representatives Of Financial Dynamics, A Public Relations Firm Which Was Assisting Counsel.**

A small number of the documents at issue represent correspondence to and from representatives of a public relations firm, Financial Dynamics, who were assisting counsel on various projects.  *See* Ex. 1, Nash Decl., ¶ 8.

Where, as here, a public relations consultant is assisting counsel, the consultant is properly considered an agent of counsel, and the consultant's communications with counsel or with the client are protected under attorney-client privilege.  *See United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.).  In *Kovel*, Judge Friendly held that attorney-client privilege extends to accountants where the accountants acted "as the attorney's agents" and facilitated communications for the purpose of obtaining legal advice.  *Id.* at 921-22.  Often, Judge Friendly reasoned, "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.* at 922.  The decision rested on the lawyer's need for "outside help" to enable communications necessary to provide legal advice.  "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.*  Most circuits, including the Fifth Circuit, have adopted the *Kovel* test.  *See United States v. El Paso Co.* ("*El Paso*"), 682 F.2d 530, 541 (5th Cir. 1982).

In *Kovel¸* the accountants essentially worked as translators, putting "complex tax terms into a form intelligible to a lawyer at the lawyer's behest." *El Paso*, 682 F.2d at 541.  In *In re Grand Jury Subpoenas Dated March 24, 2003* ("*In re Grand Jury*"), 265 F. Supp. 2d 321 (S.D.N.Y. 2003), a case arising from the Martha Stewart criminal investigation, the court extended *Kovel* to (1) confidential communications between lawyers and public relations

consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems."  265 F. Supp. 2d at 331.  The lawyers needed the consultants to assist in "altering the mix of public information . . . by creating a climate in which prosecutors and regulators might feel freer to act in ways less antagonistic to [the potential defendant] than might otherwise be the case."  *Id.* at 326.  The court concluded that, just as the lawyers in *Kovel* needed the accountants' help in order to provide legal advice, counsel in a high profile case may need the help of a public relations consultant.  265 F. Supp. 2d at 330 ("dealing with the media in a high profile case probably is not a matter for amateurs").  Under *In re Grand Jury*, the privilege for confidential communications can also extend to communications between the client and the consultant without the attorneys present, if such conversations occur "at the behest of [the] lawyers or [are] directed at helping the lawyers formulate their strategy."  265 F. Supp. 2d at 331-32.[8]  In a high-profile case such as this one, privilege is properly asserted for work done by "communications consultants . . . **acting under the direction of**" attorneys.  *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2007 WL 854251, at *4 n.3 (E.D. La. Mar. 6, 2007).

## V.  Transocean Provided Sufficient Information For BP And Others To Determine That Privilege Was Properly Invoked.

BP's assertion that Transocean did not properly log the authors of certain documents is a procedural claim with no substance.  In fact, the entries specifically show that the documents fall into the categories described above.  *See* Transocean's Seventh Amended Privilege Log, ## 2202-2011, 2013-2224, 2226-2230 ("Communication with third party consultant, Bullfighter Design, regarding work to be done under supervision of counsel and in anticipation of

---

[8] The public relations company's work may also be protected under the work-product doctrine.  *See In re Grand Jury*, 265 F. Supp. 2d at 332-33; *In re Copper Market*, 200 F.R.D. 213, 220-21 (S.D.N.Y. 2001) (documents created by the public relations agent or communicated to him were protected by the work-product doctrine because "from the outset" the engagement was in preparation for litigation and company had retained public relations agent "to make sure that its public statements would not result in further exposure in the litigation which grew out of the copper trading scandal").

litigation"); # 2201 ("Draft presentation to Congress reflecting legal advice and prepared under supervision of counsel and in anticipation of litigation"); # 2244 ("Draft presentation from third party consultant, Prospect, for OSC proceedings prepared under supervision of counsel and in anticipation of litigation"); # 2359 ("Report from third party consultant, GL Noble Denton, prepared under supervision of counsel and in anticipation of litigation"); # 2571 ("Agenda attached to email communication with counsel providing information to assist counsel with ongoing OSC proceedings and in anticipation of litigation"); ## 2696, 2700, 2703 ("Weekly investigation update to management and counsel prepared to facilitate rendition of legal advice and in anticipation of litigation and followup emails"); ## 2362, 2944 ("Draft OSC presentation prepared under supervision of counsel and in anticipation of litigation").

Moreover, the Court should consider the practicalities of the situation. Drafts put on a shared network used by dozens of internal team members and several attorneys cannot easily be identified with traditional "author/recipient" fields. *See* Ex. 2, Thibodeaux Decl., ¶ 7. The law is flexible enough to accommodate this reality and does not require more. *See, e.g., Rockwell Automation, Inc. v. GGSI Liquidation, Inc.,* No. 00 Civ. 8763(RMB)(DFE), 2003 WL 22227968, at *3 (S.D.N.Y. Sept. 23, 2003) (refusing to require revision of privilege log or compel production where specific author and addressee not listed because it was unclear which specific lawyer and or employees were involved); *U.S. Information Systems, Inc. v. IBEW,* No. 00CIV4763RMBJCF, 2002 WL 31093619, at *2 (S.D.N.Y. Sept. 17, 2002) (allowing party to list author simply as "USIS" where the company indicated that the identity of the specific individual who authored documents could not be ascertained); *Fidelity Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 523 (E.D. Pa. 1996) (identifying author not critical so long as document described sufficiently to determine applicability of privilege). The case cited by BP is in accord. *Pacific Gas & Elec. Co. v. U.S.,* 69 Fed. Cl. 784, 812 (Fed. Cl. 2006) ( BP Memorandum, at 12) ("[W]here no author is listed, [a party] must describe the content of the

documents such that [the opposing party] and the[e] [c]ourt may better assess the applicability of the privilege").[9]

## VI.    The BP Parties' Motion With Respect To Requests For Admissions 45-67 and 282 Should Be Denied Because It Is Moot And Transocean Has Satisfied Its Obligations Under Rule 36.

The BP Parties improperly ask this Court to deem Transocean's responses to the BP Parties' First Set of Requests for Admission ("RFAs") 45-67 and 282 admitted, or in the alternative, to direct Transocean pursuant to Federal Rule of Civil Procedure 36(a)(6) to amend its responses to either admit, deny, or specifically state why it cannot admit or deny each of these RFAs.  (BP Parties' Motion to Compel ("Motion"), at 22 of 24.)  This request with respect to RFAs 45-67 and 282 should be denied for two reasons.  First, the BP Parties' Motion is moot because Transocean, concurrently with this Opposition, is serving Supplemental Responses. Second, Transocean's Original and Supplemental Responses are proper under Federal Rule of Civil Procedure 36.  Accordingly, this Court should deny the BP Parties' Motion with respect to RFAs 45-67 and 282.

### A.    The BP Parties' Motion With Respect to RFAs 45-67 and 282 Is Moot Because Transocean Has Supplemented Its Responses.

Transocean, with this Opposition, is concurrently serving Supplemental Responses to RFAs 45-67 and 282.  These Supplemental Responses satisfy Transocean's obligations under Federal Rule of Civil Procedure 36.  Transocean is supplementing its responses in light of communications exchanged during the meet and confer process.  On July 27, 2011, the BP Parties addressed Transocean's objection that the term "Transocean *Deepwater Horizon*

---

[9] As noted, Transocean is nonetheless reviewing BP's specific challenges to ensure that all responsive, non-privileged documents are produced.  Subject to a final quality control review, Transocean has identified the following documents from BP's second "bucket" of challenges -- documents for which "DWH Investigation Team" was listed as the author, or for which there was no author listed -- for production: 525, 526, 560, 589, 590, 637, 653, 678, 682, 753, 754, 758, 759, 761, 762, 764, 765, 770, 772, 776, 779, 780, 786, 788, 798-801, 807-809, 811, 813-817, 907-910, 913, 938, 943, 972, 992-998, 1003-1015, 1025, 1026, 1030, 1037-1039, 1281, 1394, 1473, 1494, 1495, 1581, 1584, 1595, 1614, 1615, 1673, 1723, and 1825.

Companies," used throughout the RFAs, was vague and ambiguous.  The BP Parties stated that this term meant Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.  Also, on August 11, 2011, the BP Parties explained that "although these RFAs include language that may also be found in provisions of the Drilling Contract, these RFAs seek Transocean's current, independent understanding of its duties and obligations (regardless of any contractual language).  In other words, these RFAs are not 'request[ing] that Transocean interpret the Drilling Contract . . . .'" (August 11, 2011 Letter from Chris Heck to Carter Williams, attached hereto as Exhibit 3.)[10]  In light of the BP Parties' clarifications, Transocean has supplemented its responses to RFAs 45-67 and 282.

When a party voluntarily amends or supplements its challenged discovery responses while a motion to compel is pending, the motion is properly denied as moot.  *Chevron USA Inc. v. Peuler*, No. Civ. A. 02-2982, 2004 WL 224579, at *3 (E.D. La. Feb. 3, 2004) (dismissing motion to compel as moot with respect to supplemented requests for admission, interrogatories and requests for production); *see also Stern v. O'Quinn*, 253 F.R.D. 663, 691-91 (S.D. Fla. 2008) (dismissing motion to compel as moot with respect to certain request for admission because answering party agreed to supplement); *Irwin Indust. Tool Co. v. Worthington Cylinders Wisconsin*, No. 3:08-cv-291, 2009 WL 606190, at *5 (W.D.N.C. March 9, 2009) (finding motion to compel moot with respect to request for admission that party agreed to amend).

Similarly to the answering parties in *Chevron*, *Stern* and *Irwin*, Transocean voluntarily supplemented its responses to RFAs 45-67 and 282, rendering the BP Parties' Motion moot.

---

[10] Exhibit 4 attached hereto provides the complete letter correspondence, in chronological order, exchanged during the meet and confer process regarding the RFAs at issue.

**B. Transocean's Original and Supplemental Responses Have Satisfied Its Obligations Under Federal Rule of Civil Procedure 36.**

Transocean's Original and Supplemental Responses are proper under Federal Rule of Civil Procedure 36.  In answering an RFA, a party may object, admit, deny, or state in sufficient detail why it cannot truthfully admit or deny.  Fed. R. Civ. P. 36.  In objecting to a request for admission, the party must state the grounds for objecting.  Fed. R. Civ. P. 36(a)(5).  A denial "must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).

Transocean's Original Responses to RFAs 45-67 and 282[11] contained objections, grounds for objecting, and partial admissions or denials.  For instance, RFA No. 46 states: "Admit that no BP entity had any direction or control of the Transocean *Deepwater Horizon* Companies or their employees or agents in the work performed under the Drilling Contract except in the results to be obtained."  This RFA repackages the language of Drilling Contract Section 18.1.  Accordingly, Transocean, in its response to RFA No. 46, cited and quoted Section 18.1, stating, among other things:

> Respondents cannot determine to which companies, in particular, this request purports to pertain.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part: "COMPANY shall have no direction or control of CONTRACTOR or its employees and agents except in the results to be obtained.  The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."

Transocean continued by quoting other provisions in Section 18.1 and stating that it expressed no position regarding the interpretation of the Drilling Contract.  Given Transocean's initial

---

[11] Attached hereto as Exhibit 5.

understanding of this and the other RFAs at issue, Transocean's Original Responses were proper under Rule 36.

On August 11, 2011, the BP Parties explained during the meet and confer process that in RFAs 45-67 and 282, they were <u>not</u> seeking Transocean's interpretation of the Drilling Contract, but instead Transocean's "current, independent understanding of its duties and obligations (regardless of any contractual language)." *See* Exhibit 3.  In light of this clarification, Transocean has supplemented its Responses to RFAs 45-67 and 282.[12]

Based on Transocean's Supplemental Responses and the law set forth herein, this Court should deny the BP Parties' Motion with respect to RFAs 45-67 and 282.

## CONCLUSION

For the foregoing reasons, Transocean respectfully requests that the BP Parties' Motion to Compel be denied.

Respectfully submitted,

By:    /s/ Steven L. Roberts                      
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By:    /s/ Kerry J. Miller                        
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By:    /s/ Edwin G. Preis, Jr.                    
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

---

[12] Transocean's Supplemental Responses served on August 26, 2011, are attached hereto as Exhibit 6.

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth GerenEasterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH,*
*Transocean Holdings LLC, Transocean*
*Offshore Deepwater Drilling Inc. and*
*Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 26th day of August, 2011.

/s/  Kerry J. Miller