# EXHIBIT "6"



Aug 26 2011
4:54PM

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON"<br>In the GULF OF MEXICO on<br>April 20, 2010 | *<br><br>* | MDL NO. 2179<br><br>SECTION:  J |
| | * | JUDGE BARBIER |
| Applies to: *All Cases* | * | MAG. JUDGE SHUSHAN |

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ■ ▪ ■ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

## SUPPLEMENTAL RESPONSE ON BEHALF OF TRITON ASSET LEASING GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC., AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. TO THE BP PARTIES' FIRST SET OF REQUESTS FOR ADMISSION[1]

Pursuant to Federal Rules of Civil Procedure 26 and 34, TRITON ASSET LEASING GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC., AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. (collectively, "Respondents" or "Transocean") supplement their responses to the BP Parties' ("BP") First Requests for Admission ("BP's Requests for Admission") as follows:

The General Objections stated in Respondents' responses to BP's Requests for

---

[1] Although BP's Requests for Admission also name Transocean Ltd. and Transocean Inc., these parties object generally to BP's Requests for Admission, and to each individual Request for Admission, on the grounds that this Court lacks personal jurisdiction over Transocean Ltd. and Transocean Inc.  Transocean Ltd. and Transocean Inc. so object with full reservation of rights, and by appearing now do not waive personal jurisdiction.  On May 6, 2011, this Court entered a Special Appearance by Transocean Ltd. and Transocean Inc. and ordered a standstill of jurisdictional discovery, allowing counsel to accept service of process without waiver of jurisdiction (Docket Number 2274).  Transocean Ltd. and Transocean Inc. have not consented to personal jurisdiction, and therefore, pending resolution of the standstill, BP's Requests for Admission as to Transocean Ltd. and Transocean Inc. are not proper.

Admission are incorporated as if fully set forth herein.  In addition, Respondents object generally to BP's Requests for Admission to the extent that they pertain to putative claims between BP and Respondents arising out of or relating to the Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. dated December 9, 1998 ("Drilling Contact").  Article 35.4 of the Drilling Contact states that such claims are subject to arbitration, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Unless and until BP waives its right to arbitration under the Drilling Contract, Requests for Admission pertaining to such putative claims are not proper.

The following supplemental responses to BP's Requests for Admission are given without prejudice to Respondents' right to produce evidence of any subsequently discovered fact or facts which Respondents may later recall, discover, or locate.  Respondents reserve the right to supplement or amend the responses herein.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 45:**

Admit that in performing drilling operations using the *Deepwater Horizon* pursuant to the Drilling Contract, the Transocean *Deepwater Horizon* Companies were independent contractors.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous.  Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part: "In performing the work set forth in this CONTRACT, CONTRACTOR shall act at all times as an independent contractor." Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 18.1.  Such questions will be determined by an appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 45

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 18.1 of which states, in part: "In performing the work set forth in this CONTRACT, CONTRACTOR shall act at all times as an independent contractor."  Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 46:**

Admit that no BP entity had any direction or control of the Transocean *Deepwater Horizon* Companies or their employees or agents in the work performed under the Drilling Contract except in the results to be obtained.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part:

> "COMPANY shall have no direction or control of CONTRACTOR or its employees and agents except in the results to be obtained. The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."

In addition, Section 18.2 of the Drilling Contract states, in part: "COMPANY shall be entitled to designate a representative(s), who shall at all times have complete access to the Drilling Unit … [and] shall be empowered to act for COMPANY in all manner related to CONTRACTOR'S daily performance of the work."  Respondents further state that they express no position regarding the interpretation of Drilling Contract Articles 18.1-18.2.  Such questions will be determined by an appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to the extent this Request for Admission implies BP did not direct work performed under the Drilling Contract.  BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities. Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 18.1 of which states, in part:

> "COMPANY shall have no direction or control of CONTRACTOR or its employees and agents except in the results to be obtained. The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 47:**

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were responsible for detecting and preventing blowouts.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission to the extent it implies that BP had no responsibility for detecting or preventing blowouts. For example, at the Macondo well, BP, as operator, was responsible for the design and interpretation of the negative pressure test. Also, a succession of interrelated well design, construction, and temporary abandonment decisions by BP compromised the integrity of the well, compounded the risk of its failure, and ultimately set off a chain of events that resulted in the *Deepwater Horizon* incident. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention

equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. ”

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 47:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission to the extent it implies that BP and others had no responsibility for detecting or preventing blowouts.  By way of example, BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request “regardless of any contractual language.” (Correspondence from BP’s counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP’s July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 48:

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to exercise due diligence to prevent a well from blowing out.

## RESPONSE TO REQUEST FOR ADMISSION NO. 48:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "due diligence" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests define "due diligence."   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.6 of the Drilling Contract regarding the mud program states, in part:

> "CONTRACTOR shall use all reasonable care to make and maintain drilling mud having weight, viscosity. water loss, and other characteristics to satisfy the requirements as specified by COMPANY. CONTRACTOR shall exercise due diligence to prevent the

> well from blowing out, and to enable the efficient drilling, logging, and testing of all formations without caving or formation contamination. While drilling, CONTRACTOR shall test drilling mud for weight, viscosity, water loss, and other necessary characteristics as instructed by COMPANY …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.6.   Such questions will be determined by appropriate tribunal at an appropriate time.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 48:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.6 of which states, in part:

> "CONTRACTOR shall use all reasonable care to make and maintain drilling mud having weight, viscosity. water loss, and other characteristics to satisfy the requirements as specified by COMPANY. CONTRACTOR shall exercise due diligence to prevent the well from blowing out, and to enable the efficient drilling, logging, and testing of all formations without caving or formation contamination. While drilling, CONTRACTOR shall test drilling mud for weight, viscosity, water loss, and other necessary characteristics as instructed by COMPANY …"

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 49:**

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to maintain well control equipment in accordance with good oilfield practices at all times.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good oilfield practices" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "good oilfield practices."   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.   Such questions will be determined by appropriate tribunal at an appropriate time.   Respondents further state that Respondents' BOP maintenance and inspection policies and procedures meet or exceed applicable governmental rules and recommendations and are intended to improve safety and functionality of the BOP.   Specifically, Respondents comply with 30 C.F.R. § 250.446 and meet or exceed guidelines of API RP 53 in their maintenance and inspection policies and procedures.   The Mineral Management Service ("MMS") has regularly inspected Respondents' BOP records regarding Respondents' maintenance and inspection procedures on all rigs in the Gulf of Mexico and never once implied or stated that Respondents' procedures were insufficient.   The MMS also has never cited Respondents for any violation of 30 C.F.R. § 250.446.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 49:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents further object to this Request for Admission on the grounds that the term "good oilfield practices" is vague and ambiguous.   Neither the Drilling Contract nor BP's Requests for Admission define "good oilfield practices."   Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.   Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."   (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing

11

specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 50:

Admit that the Transocean *Deepwater Horizon* Companies were responsible for pressure testing the *Deepwater Horizon*'s blowout prevention devices as often as instructed by BP, usually once every seven days.

## RESPONSE TO REQUEST FOR ADMISSION NO. 50:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.  Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 50:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

13

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Transocean *Deepwater Horizon* Companies were responsible for function testing the *Deepwater Horizon*'s blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change.

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2. Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.) Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall pressure test the blowout prevention devices as often as instructed by COMPANY, usually once every seven (7) days, and shall function test the blowout prevention devices by opening and closing to assure operating condition at each trip for a bit change. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect."

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 52:**

Admit that the Transocean *Deepwater Horizon* Companies were required to use, test, and maintain the *Deepwater Horizon*'s blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect.

15

**RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.  Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it fails to identify any "governmental rules, regulations, or orders" or their effective dates.  Respondents further object to this Request for Admission in that it seeks an

16

admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.   Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 53:

Admit that in drilling the MC252 Well, the Transocean *Deepwater Horizon* Companies were required to use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of BP.

## RESPONSE TO REQUEST FOR ADMISSION NO. 53:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous.

Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "all reasonable means" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "all reasonable means."  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 15.2 of the Drilling Contract states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 15.2.  Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 53:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission on the grounds that the term "all reasonable means" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "all reasonable means."  Respondents further object to this Request for Admission to the extent it implies other entities were not required to use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of BP.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for

18

Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 15.2 of which states, in part:

> "CONTRACTOR shall maintain well control equipment in accordance with good oilfield practices at all times and shall use all reasonable means to control and prevent fire and blowouts and to protect the hole and all other property of the COMPANY. … In any event, CONTRACTOR, at a minimum, shall use, test, and maintain blowout prevention equipment in accordance with all applicable governmental rules, regulations, and orders then in effect. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 54:

Admit that the Transocean *Deepwater Horizon* Companies had the primary responsibility for the safety of all of their operations.

## RESPONSE TO REQUEST FOR ADMISSION NO. 54:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1.   Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it implies other entities were not responsible for safety.  By way of example, BP, as operator of the Macondo well, was responsible for the overall safety of the operations at the Macondo well. Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission on the grounds that the term "their operations" is overly broad, vague and ambiguous.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing specific and General Objections,

Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 17.1 of which states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 55:

Admit that the Transocean *Deepwater Horizon* Companies were responsible for taking all measures necessary or proper to protect the *Deepwater Horizon*'s personnel and facilities.

## RESPONSE TO REQUEST FOR ADMISSION NO. 55:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1.   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 55:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it implies other entities were not responsible for safety.  By way of example, BP, as operator of the Macondo well was responsible for the overall safety of the operations at the Macondo well. Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 17.1 of which states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 56:

Admit that the Transocean *Deepwater Horizon* Companies were required to observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted under the Drilling Contract.

## RESPONSE TO REQUEST FOR ADMISSION NO. 56:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 17.1 of the Drilling Contract states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 17.1.   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 56:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission on the grounds that it fails to identify or define "rules and regulations."  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 17.1 of which states, in part:

> "CONTRACTOR shall have the primary responsibility for the safety of all its operations, shall take all measures necessary or proper to protect the personnel and facilities and, in addition, shall observe all safety rules and regulations of any governmental agency having jurisdiction over operations conducted hereunder. CONTRACTOR shall place the highest priority on safety while performing the work. CONTRACTOR shall also observe all of COMPANY'S safety rules and guidelines as set forth in "Safety and Health Manual" of Vastar Resources, Inc. …"

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the Transocean *Deepwater Horizon* Companies were responsible for maintaining the *Deepwater Horizon* at optimal operating condition, in accordance with good oil practices throughout the duration of the Drilling Contract.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good oil practices" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good oil practices." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1 of the Drilling Contract states, in part: "CONTRACTOR shall maintain the Drilling Unit at optimal operating condition, in accordance with good oilfield practices throughout the duration of the CONTRACT." Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1. Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "good oil practices" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good oil practices." Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.) Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1 of which states, in part: "CONTRACTOR shall maintain the Drilling Unit at optimal operating condition, in accordance with good oilfield practices throughout the duration of the CONTRACT." Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the Transocean *Deepwater Horizon* Companies represented that the *Deepwater Horizon* and related equipment shall be in a condition to permit its continuous and

efficient operation during the period of the Drilling Contract, subject to required periods of maintenance, repair, drydocking, and inspection by regulations bodies and classification societies.

## RESPONSE TO REQUEST FOR ADMISSION NO. 58:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing).  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield

practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 59:

Admit that the Transocean *Deepwater Horizon* Companies represented that they would diligently perform the work under the Drilling Contract in a good workmanlike manner consistent with applicable industry standards and practices.

## RESPONSE TO REQUEST FOR ADMISSION NO. 59:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good workmanlike manner" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good workmanlike manner." Subject to and without waiving the

29

foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 59:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "good workmanlike manner" is vague and ambiguous.   Neither the Drilling Contract nor BP's Requests for Admission define "good workmanlike manner."  Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by

whom, in what context, and in what manner (*i.e.,* whether orally or in writing).  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

31

**REQUEST FOR ADMISSION NO. 60:**

Admit that the Transocean *Deepwater Horizon* Companies represented that they would use sound technical principles where applicable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "sound technical principles" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "sound technical principles." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

"CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to

32

COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1  Such questions will be determined by appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "sound technical principles" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "sound technical principles."   Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing).  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

"CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 61:

Admit that the Transocean *Deepwater Horizon* Companies represented that they would perform the work under the Drilling Contract in compliance with the Drilling Contract.

## RESPONSE TO REQUEST FOR ADMISSION NO. 61:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 61:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing).   Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.   Respondents further object to this

Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.) Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 62:

Admit that the Transocean *Deepwater Horizon* Companies represented that they would furnish material and equipment in good condition to sufficiently meet the applicable Drilling Contract requirements and good oilfield practices.

36

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "good condition" is vague and ambiguous. Neither the Drilling Contract nor BP's Requests for Admission define "good condition." Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1 Such questions will be determined by appropriate tribunal at an appropriate time.

37

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "good oilfield practices" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "good oilfield practices."  Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing)..  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling

Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 63:

Admit that the Transocean *Deepwater Horizon* Companies would bear any cost incurred in placing the *Deepwater Horizon* in a condition to function continuously and efficiently during the period of the Drilling Contract.

## RESPONSE TO REQUEST FOR ADMISSION NO. 63:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

"CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices,

(iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1   Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 63:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

"CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 64:

Admit that the Transocean *Deepwater Horizon* Companies agreed to ensure that the *Deepwater Horizon* and all equipment and materials furnished by Transocean were adequately maintained and in such condition as to permit their continuous and efficient operation.

## RESPONSE TO REQUEST FOR ADMISSION NO. 64:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain.

Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.1.1 of the Drilling Contract states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.1.1  Such questions will be determined by appropriate tribunal at an appropriate time.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 64:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without

waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 65:

Admit that the Transocean *Deepwater Horizon* Companies represented that all of Transocean's personnel on the *Deepwater Horizon* shall be fully qualified, trained, competent, able bodied and fit for their respective assignments and shall have complied with all necessary law and regulations in connection therewith.

## RESPONSE TO REQUEST FOR ADMISSION NO. 65:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 3.1.4 of the Drilling Contract states, in part:

> "CONTRACTOR represents that all of CONTRACTOR'S personnel shall be fully qualified, trained, competent, able bodied and fit for their respective assignments and shall have complied with all necessary laws and regulations in connection therewith."

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 3.1.4. Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 65:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing). Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this

Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.1.1 of which states, in part:

> "CONTRACTOR represents that (i) the Drilling Unit and related equipment shall be in a condition to permit its continuous and efficient operation during the Contract Period, subject to required periods of maintenance, repair, drydocking and inspection by regulatory bodies and classification societies, (ii) it will diligently perform the Work in a good workmanlike manner consistent with applicable industry standards and practices, (iii) it will use sound technical principles where applicable, (iv) it will perform the Work in compliance with this Contract, (v) it will furnish material and equipment in good condition to sufficiently meet the applicable CONTRACT requirements and good oilfield practices and (vi) where mutually agreed, it will furnish used material and equipment, fit for the intended use. CONTRACTOR shall bear any cost incurred in placing the Drilling Unit in a condition to function continuously and efficiently during the entire Contract Period. CONTRACTOR agrees to ensure that the Drilling Unit and all equipment and materials furnished by CONTRACTOR are adequately maintained and in such condition as to permit their continuous and efficient operation. CONTRACTOR shall appropriately protect and secure all COMPANY'S equipment and materials placed in its care. CONTRACTOR also agrees to carry out visual inspection on, and make available to COMPANY to test any of CONTRACTOR'S equipment in the manner prescribed by COMPANY. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 66:

Admit that the Transocean *Deepwater Horizon* Companies represented that during the period of the Drilling Contract, the *Deepwater Horizon* was outfitted, conformed, and equipped to meet all applicable laws, rules, requirements, and regulations promulgated by the U.S. Coast

Guard, the U.S. Environmental Protection Agency, and the U.S. Department of the Interior, as well as any other agency, bureau, or department of the U.S. federal, territorial possession, state, municipal, or local governments, and any political subdivisions thereof, having jurisdiction over the operations in U.S. federal waters.

## RESPONSE TO REQUEST FOR ADMISSION NO. 66:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 14.5 of the Drilling Contract states:

> "Subject to Article 2.3.4, CONTRACTOR represents that during the Contract Period, the Drilling Unit is outfitted, conformed, and equipped to meet all applicable laws, rules, requirements, and regulations promulgated by the U.S. Coast Guard, the U.S. Environmental Protection Agency, the United States of America Department of the Interior as well as any other agency, bureau, or department of the U.S. federal, territorial possession, state, municipal, or local governments, any political subdivisions thereof, having jurisdiction over the operations in U. S. federal waters. "

Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 14.5.  Such questions will be determined by appropriate tribunal at an appropriate time.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 66:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents further object to this Request for Admission on the grounds that it is overly broad, vague and ambiguous because it is unclear when such representation was purportedly made, to whom, by whom, in what context, and in what manner (*i.e.,* whether orally or in writing). Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.) Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence. Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 14.5 of which states, in part:

> "Subject to Article 2.3.4, CONTRACTOR represents that during the Contract Period, the Drilling Unit is outfitted, conformed, and equipped to meet all applicable laws, rules, requirements, and regulations promulgated by the U.S. Coast Guard, the U.S. Environmental Protection Agency, the United States of America Department of the Interior as well as any other agency, bureau, or department of the U.S. federal, territorial possession, state, municipal, or local governments, any political subdivisions thereof, having jurisdiction over the operations in U. S. federal waters. "

Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

## REQUEST FOR ADMISSION NO. 67:

Admit that the actual performance and superintendence of all work under the Drilling Contract was by the Transocean *Deepwater Horizon* Companies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents also object to this Request for Admission on the grounds that the term "Transocean Deepwater Horizon Companies" is vague and ambiguous. Respondents cannot determine to which companies, in particular, this request purports to pertain. Respondents also object to this Request for Admission on the grounds that the term "actual performance" is vague and ambiguous.  Neither the Drilling Contract nor BP's Requests for Admission define "actual performance."  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 18.1 of the Drilling Contract states, in part:  "The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for COMPANY to secure the satisfactory completion of the work."  Respondents further state that they express no position regarding the interpretation of Drilling Contract Article 18.1.  Such questions will be determined by appropriate tribunal at an appropriate time.  In addition, Respondents deny any implication that Respondents assumed or was otherwise responsible for any of the duties or obligations of the Macondo well operator.  BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission to the extent it implies BP did not hire other contractors to perform work at the Macondo well.  By way example, BP contracted with Halliburton to provide cementing services for the Macondo well operations.  Respondents further object to this Request for Admission to the extent it implies that Respondents assumed or were otherwise responsible for any of the duties or obligations of the Macondo well operator.  BP, as operator of the Macondo well, retained full authority over well design, drilling operations, casing and cementing processes, temporary abandonment procedures and testing, and determination and implementation of appropriate well-control procedures, among other responsibilities.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention.  Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language." (Correspondence from BP's counsel dated August 11, 2011.)  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.  Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 18.1 of which states, in part: "The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but the work shall meet the approval of COMPANY and be subject to the general right of inspection herein provided in order for

COMPANY to secure the satisfactory completion of the work." Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 101:**

Admit that the first positive indicator that a well is flowing is an increase in the return flow rate while the pumps are running at constant output.

**RESPONSE TO REQUEST FOR ADMISSION NO. 101:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 5.2.2, regarding kick detection while drilling, of the Well Control Handbook states that "the first positive indicator that a well is flowing is an increase in the return flow rate while the pumps are running at constant output." Respondents further state that the Well Control Handbook sections on kick detection in no way reduce the responsibilities of the well operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 101:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011

correspondence, Respondents admit that the statement "the first positive indicator that a well is flowing is an increase in the return flow rate while the pumps are running at constant output" is a general principle regarding kick detection. Respondents deny that this principle absolutely or automatically applies to all wells in all environments and all conditions and circumstances.

**REQUEST FOR ADMISSION NO. 102:**

Admit that a gain in pit volume is a positive indicator that a kick is occurring, assuming there are no other activities ongoing such as mud additions, mud transfers, start/stop of mud solids control or degassing equipment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 5.2.3, regarding kick detection while drilling, of the Well Control Handbook states that "a gain in pit volume is a positive indicator that a kick is occurring, assuming there are no other activities ongoing such as mud additions, mud transfers, start/stop of mud solids control or degassing equipment." Respondents further state that the Well Control Handbook sections on kick detection in no way reduce the responsibilities of the well operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction

pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011 correspondence, Respondents admit that the statement "a gain in pit volume is a positive indicator that a kick is occurring, assuming there are no other activities ongoing such as mud additions, mud transfers, start/stop of mud solids control or degassing equipment" is a general principle regarding kick detection.   Respondents deny that this principle absolutely or automatically applies to all wells in all environments and all conditions and circumstances.

**REQUEST FOR ADMISSION NO. 103:**

Admit that any deviation from expected hole fill volumes must be investigated and the first action must be to install a fully open safety valve and then make a flow check..

**RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 5.3, regarding kick detection while tripping, of the Well Control Handbook states: "Flow into the wellbore will cause improper hole fill-up. Any deviation from expected hole fill volumes must be investigated and the first action must be to install a fully open safety valve and then make a flow check."  Respondents further state that the Well Control Handbook sections on kick detection in no way reduce the responsibilities of the well operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

In addition to the General Objections set forth above Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object on the grounds that the term "first action" is vague and ambiguous.  It is unclear to what other events or actions the ordinal "first" relates. Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011 correspondence, Respondents admit that, depending on the circumstances, the statement "any deviation from expected hole fill volumes must be investigated and the first action must be to install a fully open safety valve and then make a flow check" describes a sound procedure, but, depending on the well, environment, conditions, and other circumstances, other procedures may also be sound.

**REQUEST FOR ADMISSION NO. 104:**

Admit that if while drilling within contract parameters, a decrease in pump pressure or an increase in pump speed occurs, a flow check should be conducted to determine the cause(s) of the variation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 5.2.4, regarding kick detection while drilling, of the Well Control Handbook states:

> "Whilst drilling with constant parameters, a decrease in pump pressure (shunt motors) or an increase in pump speed (series motors) may occur when low-density formation fluids flow into the annulus causing a "U-tubing" effect.  Changes in the pump speed and pressure do not always mean an influx has entered the wellbore and may be an indication of pump problems, a washout in the drillstring, washed nozzles etc. First, conduct a flow check before proceeding with other diagnostic measures to determine the cause(s) of the variation."

Respondents further state that the Well Control Handbook sections on kick detection in no way reduce the responsibilities of the well operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011 correspondence, Respondents admit that the statement "if while drilling within contract parameters, a decrease in pump pressure or an increase in pump speed occurs, a flow check should be conducted to determine the cause(s) of the variation" is a general principle regarding kick detection.  Respondents deny that this principle absolutely or automatically applies to all wells in all environments and all conditions and circumstances.  By way of example, changes in pump speed and pressure do not always mean an influx has entered in the wellbore and may be an indication of pump problems, a washout in the drillstring, washed nozzles, or other conditions.

**REQUEST FOR ADMISSION NO. 105:**

Admit that annular flow with the pumps shut off may be a positive indicator that a kick is in progress.

**RESPONSE TO REQUEST FOR ADMISSION NO. 105:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 5.2.5, regarding kick detection while drilling, of the Well Control Handbook states that "[a]nnular flow with the pumps shut off may be a positive indicator that a kick is in progress."  Respondents further state that the Well Control Handbook sections on kick detection in no way reduce the responsibilities of the well operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 105:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011 correspondence, Respondents admit that the statement "annular flow with the pumps shut off may be a positive indicator that a kick is in progress" is a general principle regarding kick detection.  Respondents deny that this principle absolutely or automatically applies to all wells in all environments and all conditions and circumstances.

**REQUEST FOR ADMISSION NO. 108:**

Admit that if there is any doubt about well control, the well should be shut in.

**RESPONSE TO REQUEST FOR ADMISSION NO. 108:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Section 7.1, regarding well control complications, of the Well Control Handbook states:

> Problems may occur during a well control situation and, depending on their nature, may have a significant impact on the operation. The principal personnel involved in the kill operation should be aware of potential problems, be able to recognize them, understand the implications and resolve them.  It should be noted that restarting a kill is a delicate operation and shutting-in the well should be avoided. However, if there is any doubt the well should be shut-in.

Respondents further state that the Well Control Handbook sections on well control complications in no way reduces the responsibilities of the Operator, here BP, with regards to well control.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 108:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, and as this Request has been supplemented by BP's August 11, 2011 correspondence, Respondents admit that the statement "if there is any doubt about well control, the well should be shut in" is a general principle regarding well control.  Respondents deny that this principle absolutely or automatically applies to all wells in all environments and all conditions and circumstances.

**REQUEST FOR ADMISSION NO. 126:**

Admit that on April 18, 2010, a well control drill was conducted on board the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 126:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states a weekly well control drill was conducted aboard the *Deepwater Horizon* on April 18, 2010.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 126**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit a weekly well control drill was conducted aboard the *Deepwater Horizon* on April 18, 2010.

**REQUEST FOR ADMISSION NO. 127:**

Admit that on April 18, 2010, 16 persons attended the well control drill conducted on board the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states that 16 persons attended a weekly well control drill that was conducted aboard the *Deepwater Horizon* on April 18, 2010.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that 16 people attended a weekly well control drill that was conducted aboard the *Deepwater Horizon* on April 18, 2010.

**REQUEST FOR ADMISSION NO. 130:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* in which Transocean discussed kicks which can take place during cement jobs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing

the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 131:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* in which Transocean discussed the fact that kicks can occur while cementing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction

pursuant to 9 U.S.C. § 2.   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.   Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.   Well [sic] have been lost due to improperly designed cement slurries and spacers."   Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.   Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.   Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.   Well [sic] have been lost due to improperly designed cement slurries and spacers."   Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 132:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* in which Transocean discussed the fact that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 133:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* in which Transocean discussed that wells have been lost due to improperly designed cement slurries and spacers.

**RESPONSE TO REQUEST FOR ADMISSION NO. 133:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 133:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that a safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing

the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 134:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* which started at 10:00 in the morning.

**RESPONSE TO REQUEST FOR ADMISSION NO. 134:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 notes that the start time of the drill was 10:00.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 134:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Respondents conducted a weekly well control drill aboard the *Deepwater Horizon* on April 28, 2010 at 10:00 in the morning.

**REQUEST FOR ADMISSION NO. 135:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* which lasted for thirty (30) minutes.

**RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 notes that the duration of the drill was 00:30.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Respondents conducted a weekly well control drill aboard the *Deepwater Horizon* on April 28, 2010 that lasted approximately 30 minutes.

**REQUEST FOR ADMISSION NO. 136:**

Admit that on April 18, 2010, Transocean conducted a well control drill on board the *Deepwater Horizon* which was attended by sixteen (16) persons on board the vessel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 states that 16

persons attended a weekly well control drill that was conducted aboard the *Deepwater Horizon* on April 18, 2010.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that 16 persons attended a weekly well control drill that Respondents conducted aboard the *Deepwater Horizon* on April 18, 2010.

**REQUEST FOR ADMISSION NO. 137:**

Admit that on April 18, 2010, Transocean conducted only one well control drill on board the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 137:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists one weekly well control drill.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 137:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction

pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Respondents conducted only one weekly well control drill aboard the *Deepwater Horizon* on April 18, 2010.

**REQUEST FOR ADMISSION NO. 138:**

Admit that on April 18, 2010, the persons on board the *Deepwater Horizon* who attended the well control drill conducted by Transocean included each of the following: Jason Anderson, Daniel Barron III, Donald Clark, Stephen Curtis, Miles (Randy) Ezell, Jimmy Harrell, Caleb Holloway, Roy Kemp, Karl Kleppinger, Todd Ladner, Blair Manuel, Jay Oldenwald, Dewey Revette, Shane Roshto, Donald Vidrine and Adam Weise.

**RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists the following 16 persons as in attendance: Jason Anderson, Daniel Barron III, Donald Clark, Stephen Curtis, Miles Ezell, Jimmy Harrell, Caleb Holloway, Roy Kemp, Karl Kleppinger, Todd Ladner, Blair Manuel, Jay Oldenwald, Dewey Revette, Shane Roshto, Donald Vidrine and Adam Weise.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections,

Respondents admit that the following persons attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon*: Jason Anderson, Daniel Barron III, Donald Clark, Stephen Curtis, Miles Ezell, Jimmy Harrell, Caleb Holloway, Roy Kemp, Karl Kleppinger, Todd Ladner, Blair Manuel, Jay Oldenwald, Dewey Revette, Shane Roshto, Donald Vidrine and Adam Weise.

**REQUEST FOR ADMISSION NO. 139:**

Admit that on April 18, 2010, one of the Transocean employees who led the well control drill on board the *Deepwater Horizon* included Jason Anderson.

**RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jason Anderson as in attendance.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for

Admission.   Respondents admit that Jason Anderson attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon*.

## REQUEST FOR ADMISSION NO. 140:

Admit that on April 18, 2010, one of the Transocean employees who led the well control drill on board the *Deepwater Horizon* was Miles (Randy) Ezell.

## RESPONSE TO REQUEST FOR ADMISSION NO. 140:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Miles Ezell as in attendance.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 140:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.   Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.   Respondents admit that Miles Ezell attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon*.

**REQUEST FOR ADMISSION NO. 141:**

Admit that on April 18, 2010, one of the Transocean employees who led the well control drill on board the *Deepwater Horizon* was Jimmy Harrell.

**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jimmy Harrell as in attendance.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Jimmy Harrell attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon*.

**REQUEST FOR ADMISSION NO. 142:**

Admit that on April 18, 2010, one of the Transocean employees who led the well control drill on board the *Deepwater Horizon* was Dewey Revette.

**RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Dewey Revette as in attendance.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Dewey Revette attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon*.

**REQUEST FOR ADMISSION NO. 143:**

Admit that Jason Anderson was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that wells have been lost due to improperly designed cement slurries and operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jason Anderson as in attendance and states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that Jason Anderson attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 144:**

Admit that Dewey Revette was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that wells have been lost due to improperly designed cement slurries and operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 144:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Dewey Revette as in attendance and states: "Also discuss kick during cement jobs. Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation. Well [sic] have been lost due to improperly designed cement slurries and spacers." Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that Dewey Revette attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated

April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 145:**

Admit that Stephen Curtis was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that wells have been lost due to improperly designed cement slurries and operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 145:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Stephen Curtis as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 145:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General

Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.   Respondents admit that Stephen Curtis attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 146:**

Admit that Donald Clark was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that wells have been lost due to improperly designed cement slurries and operations.

**RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Donald Clark as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Donald Clark attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 147:**

Admit that Jason Anderson was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 147:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jason

Anderson as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 147:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Jason Anderson attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 148:**

Admit that Dewey Revette was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 148:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Dewey Revette as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 148:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Dewey Revette attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 149:**

Admit that Stephen Curtis was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 149:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Stephen Curtis as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 149:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Stephen Curtiss attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated

April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

## REQUEST FOR ADMISSION NO. 150:

Admit that Donald Clark was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

## RESPONSE TO REQUEST FOR ADMISSION NO. 150:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Donald Clark as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 150:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General

Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.   Respondents admit that Donald Clark attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

## REQUEST FOR ADMISSION NO. 151:

Admit that Jimmy Harrell was told during the April 18, 2010 well control drill conducted on Board the *Deepwater Horizon* that wells have been lost due to improperly designed cement slurries and operations.

## RESPONSE TO REQUEST FOR ADMISSION NO. 151:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jimmy Harrell as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 151:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Jimmy Harrell attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 152:**

Admit that Jimmy Harrell was told during the April 18, 2010 well control drill conducted on board the *Deepwater Horizon* that kicks which can occur while cementing are the results of reducing the hydrostatic pressure during the operation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 152:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 lists Jimmy Harrell

as in attendance and states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 152:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Jimmy Harrell attended the weekly well control drill conducted on April 18, 2010 aboard the *Deepwater Horizon* and that the safety drill report dated April 18, 2010 states: "Also discuss kick during cement jobs.  Kicks that occur while cementing are the results of reducing the hydrostatic pressure during the operation.  Well [sic] have been lost due to improperly designed cement slurries and spacers."  Respondents state further that cement slurries are designed and/or approved by the operator, in this case, BP.

**REQUEST FOR ADMISSION NO. 153:**

Admit that Jimmy Harrell, the OIM for the *Deepwater Horizon*, personally approved the well control drill that Transocean conducted on April 18, 2010 on board the vessel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 153:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that a safety drill report dated April 18, 2010 notes that the OIM approved the drill report.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 153:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that a safety drill report dated April 18, 2010 notes that the OIM approved the drill report. Respondents admit that Jimmy Harrell was the OIM aboard the *Deepwater Horizon* on April 18, 2010.

**REQUEST FOR ADMISSION NO. 218:**

Admit that OIM Harrell did not order any *Deepwater Horizon* crew member to activate the ESD on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 218:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General

Objections, Respondents admit Jimmy Harrell's Coast Guard Testimony, taken on May 27, 2010, states that he was not aware of any communication with anyone to shut down the engines.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 218:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents further state that Jimmy Harrell's Coast Guard Testimony, taken on May 27, 2010, states that he was not aware of any communication with anyone to shut down the engines.

**REQUEST FOR ADMISSION NO. 245:**

Admit that at no time during April 19 or April 20, 2010 did the *Deepwater Horizon*'s OIM, Jimmy Harrell, have any safety concerns with respect to any of the operations that were taking place on the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 245:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission on the grounds that the term "safety concerns" is vague and ambiguous.  Subject to and without waiving

the foregoing specific and General Objections, Respondents admit that Jimmy Harrell did not exercise his stop work authority on April 19-20, 2010.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 245:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission on the grounds that the term "safety concerns" is vague and ambiguous.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that Jimmy Harrell did not exercise his stop work authority on April 19-20, 2010.

**REQUEST FOR ADMISSION NO. 262:**

Admit that on August 7, 2008, the overspeed controls on *Deepwater Horizon* engine 3 malfunctioned.

**RESPONSE TO REQUEST FOR ADMISSION NO. 262:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that on August 7, 2008 the *Deepwater Horizon* engine 3 overspeed alarm was triggered.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 262**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that on August 7, 2008 the *Deepwater Horizon* engine 3 overspeed alarm was triggered.

**REQUEST FOR ADMISSION NO. 263:**

Admit that the malfunction in the overspeed controls on *Deepwater Horizon* engine 3 that occurred on August 7, 2008 caused a blackout on the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR ADMISSION NO. 263:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that on August 7, 2008 the *Deepwater Horizon* experienced a blackout of the main power plant.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 262**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction

pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that on August 7, 2008 the *Deepwater Horizon* engine 3 overspeed alarm was triggered and the *Deepwater Horizon* experienced a blackout of the main power plant.

**REQUEST FOR ADMISSION NO. 277:**

Admit that on April 20, 2010, the *Deepwater Horizon* had fewer maintenance personnel than on January 1, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 277:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Respondents further object to this Request for Admission on the grounds that the term "maintenance personnel" is vague and ambiguous. By way of example, Transocean does not use the term "maintenance personnel" to describe crew member positions. It is not clear if "maintenance personnel" includes roustabouts, mechanics, electricians, welders, deckpushers, floorhands, motor operators, and/or any of the other Transocean crew member positions. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that on April 20, 2010 there were 79 Transocean personnel on board the *Deepwater Horizon*, and on January 1, 2005, there were 73 Transocean personnel on board the *Deepwater Horizon*.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 277:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents construe the term "maintenance personnel" to mean Transocean personnel who were chief electricians, chief electronic technicians, chief engineers, chief mechanics, deckpushers, electrical supervisors, electronics supervisors, electrical/electronics supervisors, electricians, electronic technicians, first assistant engineers, second assistant engineers, third assistant engineers, floorhands, hydraulic technicians, maintenance supervisors, mechanics, mechanical supervisors, motormen, motor operators, roustabouts, senior subsea supervisors, subsea supervisors, assistants subsea, and welders. Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission.

**REQUEST FOR ADMISSION NO. 278:**

Admit that from the time of its launch through April 20, 2010, the *Deepwater Horizon* never went into a drydock or shipyard for repairs.

**RESPONSE TO REQUEST FOR ADMISSION NO. 278:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that the *Deepwater Horizon* was scheduled for dry dock in 2011 and had underwent other repairs in lieu of earlier dry docking.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 278:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that as of April 20, 2010 the *Deepwater Horizon* had not been dry docked.  Respondents further state that the *Deepwater Horizon* was scheduled for dry dock in 2011 and had underwent other repairs in lieu of earlier dry docking.

**REQUEST FOR ADMISSION NO. 282:**

Admit that under the Drilling Contract, BP was not obligated to pay Transocean during a shut down of the *Deepwater Horizon* for inspection, repair, or replacement of any surface or subsurface equipment in excess of 24 hours per calendar month with a maximum accumulation of 12 days.

**RESPONSE TO REQUEST FOR ADMISSION NO. 282:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that Article 2.2.5(a) of the Drilling Contract states, in part: "CONTRACTOR shall be allowed a maximum of twenty-four (24) hours per calendar month Mechanical Downtime with a maximum accumulation of twelve (12) days; thereafter the day rate reduces to zero (0)."  Respondents further state that they express no position regarding the

interpretation of Drilling Contract Article 2.2.5(a).  Such questions will be determined by an appropriate tribunal at an appropriate time.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 282:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission on the grounds that the term "a shut down" is vague and ambiguous.  Respondents further object to this Request for Admission to the extent it seeks admission of a purely legal contention. Respondents further object to this Request for Admission in that it seeks an admission regarding language taken directly from the Drilling Contract, but insists that Respondents respond to the request "regardless of any contractual language."  (Correspondence from BP's counsel dated August 11, 2011.)   Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written and supplemented by BP's July 27, 2011 and August 11, 2011 correspondence.   Respondents admit that Transocean Holdings, LLC was a party to the Drilling Contract, Article 2.2.5(a) of which states, in part: "CONTRACTOR shall be allowed a maximum of twenty-four (24) hours per calendar month Mechanical Downtime with a maximum accumulation of twelve (12) days; thereafter the day rate reduces to zero (0)."  Respondents further state that these contractual provisions do not apply independently or in all circumstances and conditions, irrespective of other provisions of the Drilling Contract and the obligations and responsibilities of BP and other entities.

**REQUEST FOR ADMISSION NO. 289:**

Admit that on April 20, 2010 at 21:00, the *Deepwater Horizon*'s blowout preventer had a leak in the yellow control pod.

**RESPONSE TO REQUEST FOR ADMISSION NO. 289:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit the Transocean subsea team reported the small volume test ram leak to BP as reflected in the BP Daily Operations Reports of Feb. 23–March 13, 2010.  The operation report identified the leak as being on the yellow pod, and the drill crew switched to the blue pod to stop the leak and allow further investigation.  Respondents further state that the test ram is the lowermost ram and is used during function and pressure testing of the BOP stack; it is not used for well control and, therefore, could not have impacted the events of April 20, 2010.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 289:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny whether the yellow pod was leaking at 21:00 on April 20, 2010.  Respondents admit that a small volume test leak had been identified prior to April 20, 2010.  This leak was reported to BP as reflected in the BP Daily

Operations Reports of Feb. 23–March 13, 2010.  The operation report identified the leak as being on the yellow pod, and the drill crew switched to the blue pod to stop the leak and allow further investigation.  Respondents further state that the test ram is the lowermost ram and is used during function and pressure testing of the BOP stack; it is not used for well control and, therefore, could not have impacted the events of April 20, 2010.

**REQUEST FOR ADMISSION NO. 309:**

Admit that the *Deepwater Horizon* blowout preventer's remotely operated vehicle ("ROV") intervention panel was supposed to be connected to the middle pipe ram.

**RESPONSE TO REQUEST FOR ADMISSION NO. 309:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that the *Deepwater Horizon*'s BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram. Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well.  This conversion saved time for running and retrieving the test plug while still allowing pressure testing of all the components above the test rams, with the exception of the shear rams.  The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore.  With this modification, the BOP still met industry and regulatory requirements.

92

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 309:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Respondents further object to this Request for Admission on the grounds that the term "supposed to be" is vague and ambiguous.  Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written.  Respondents admit that the *Deepwater Horizon*'s BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram.  Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well.  This conversion saved time for running and retrieving the test plug while still allowing pressure testing of all the components above the test rams, with the exception of the shear rams.  The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore.  With this modification, the BOP still met industry and regulatory requirements.

**REQUEST FOR ADMISSION NO. 311:**

Admit that one or more Transocean employees knew that the *Deepwater Horizon* blowout preventer's ROV intervention panel was connected to an inverted test ram, which could not seal the well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 311:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by

Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that the *Deepwater Horizon's* BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram. Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well. This conversion saved time for running and retrieving the test plug while still allowing pressure testing of all the components above the test rams, with the exception of the shear rams. The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore. With this modification, the BOP still met industry and regulatory requirements.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 311:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission. Respondents admit that the *Deepwater Horizon*'s BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram, which could not seal the well. Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well. This conversion saved time for running and retrieving the test plug while still allowing pressure

94

testing of all the components above the test rams, with the exception of the shear rams.  The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore.  With this modification, the BOP still met industry and regulatory requirements.

## REQUEST FOR ADMISSION NO. 312:

Admit that Transocean did not tell any BP employee before April 20, 2010 that the *Deepwater Horizon* blowout preventer's ROV intervention panel was connected to an inverted test ram, which could not seal the well.

## RESPONSE TO REQUEST FOR ADMISSION NO. 312:

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents admit that the *Deepwater Horizon's*  BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram. Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well.  This conversion saved time for running and retrieving the test plug while still allowing pressure testing of all the components above the test rams, with the exception of the shear rams.  The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore.  With this modification, the BOP still met industry and regulatory requirements.  As this was done at BP's request, BP was aware of the conversion.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 312:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2.  Subject to and without waiving the foregoing specific and General Objections, Respondents assert that the information known or readily known at this time after reasonable inquiry is insufficient to allow Respondents to admit or deny this Request for Admission.  Respondents admit that the *Deepwater Horizon*'s BOP's ROV intervention panel was originally connected to a pipe ram that was later, at BP's request, converted to a test ram, which could not seal the well.  Test rams allow pressure testing on most stack components above the test rams to full working pressure without having to run a test plug into the well.  This conversion saved time for running and retrieving the test plug while still allowing pressure testing of all the components above the test rams, with the exception of the shear rams.  The modification removed one wellbore sealing ram from the stack because the test rams can only seal pressure from the top side and not pressure coming from the wellbore.  With this modification, the BOP still met industry and regulatory requirements.  As this was done at BP's request, BP was aware of the conversion.

**REQUEST FOR ADMISSION NO. 321:**

Admit that the Transocean driller is responsible for ensuring that tool joints on the drill string are located so that the BOP rams or annular preventers will not close on a tool joint if the rams or annular preventers are closed.

**RESPONSE TO REQUEST FOR ADMISSION NO. 321:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents admit that prior to displacement operations, it is typical for the driller to locate and position the drill pipe tool joint in the BOP, to ensure that a continuous length of drill pipe of uniform diameter runs through the rams, allowing the rams to properly close around the drill pipe and not on the larger diameter tool joint, for which they are not designed. At the time of the incident on April 20, 2010, the extreme flow rate from the well created sufficient force to lift the drill string, moving the tool joint up and partly into the upper annular BOP element.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 321:**

In addition to the General Objections set forth above, Respondents object to this Request for Admission on the grounds that it seeks information related to a putative claim covered by Article 35.4 of the Drilling Contract, over which the Court lacks subject matter jurisdiction pursuant to 9 U.S.C. § 2. Subject to and without waiving the foregoing specific and General Objections, Respondents deny this Request for Admission as written. Respondents admit that prior to displacement operations, it is typical for the driller to locate and position the drill pipe tool joint in the BOP, to ensure that a continuous length of drill pipe of uniform diameter runs through the rams, allowing the rams to properly close around the drill pipe and not on the larger diameter tool joint, for which they are not designed. Respondents deny that this practice absolutely or automatically applies to or is feasible for all wells in all environments and all conditions and circumstances. Respondents further note that at the time of the incident on April

20, 2010, the extreme flow rate from the well caused to tool join to move up and partly into the upper annular BOP element.

Respectfully submitted,

_____/s/ Steven L. Roberts_____         By: _____/s/ Kerry J. Miller_____
Steven L. Roberts (Texas, No. 17019300)           Kerry J. Miller (Louisiana, No. 24562)
Rachel Giesber Clingman (Texas, No. 00784125)     Frilot, L.L.C.
Kent C. Sullivan (Texas, No. 19487300)            1100 Poydras Street, Suite 3700
Teri L. Donaldson (Florida, No. 784310)           New Orleans, Louisiana 70163
Sutherland Asbill & Brennan LLP                   Telephone: (504) 599-8169
1001 Fannin Street, Suite 3700                    Facsimile: (504) 599-8154
Houston, Texas 77002                              Email: kmiller@frilot.com
Telephone: (713) 470-6100                         Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

                                                             -and-

                                                  By: _____/s/ Edwin G. Preis, Jr._____
                                                  Edwin G. Preis, Jr. (Louisiana, No. 10703)
                                                  Edward F. Kohnke, IV (LA, No. 07824)
                                                  Preis & Roy PLC
                                                  102 Versailles Boulevard, Suite 400
                                                  Lafayette, Louisiana 70501
                                                  Telephone: (337) 237-6062
                                                  Facsimile: (337) 237-9129
                                                             -and-
                                                  601 Poydras Street, Suite 1700
                                                  New Orleans, Louisiana 70130
                                                  Telephone: (504) 581-6062
                                                  Facsimile: (504) 522-9129
                                                  Email: egp@preisroy.com,
                                                  efk@preisroy.com

**Of Counsel:**
Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Deepwater Inc., and Transocean Offshore Deepwater Drilling Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on August 26, 2011.

s/Kerry J. Miller_____

99