# EXHIBIT E

**Beffa, Darin T.**

| | |
|---|---|
| **From:** | Saunders, Daniel A. [daniel.saunders@bingham.com] |
| **Sent:** | Friday, August 19, 2011 3:59 PM |
| **To:** | Nomellini, Mark J.; Hedgpeth, Tiffany |
| **Cc:** | Solomont, Charles L.; Beffa, Darin T.; Kirby, Ky E.; Couch, Rebecca B.; Fitch, Warren Anthony |
| **Subject:** | RE: Anadarko/BP Discovery |

Mark,

As explained in my August 15 letter, Mr. Hackett's H:\ drive (which would include his My Documents folder) was ingested into the Evault, along with the H:\ drives of the 107 other identified potential custodians, and was searched for the search terms set forth in Tiffany's letter of yesterday and my letter of July 29.  As to whether any documents from Mr. Hackett's H:\ drive resulted from that search, we cannot answer that question because the lack of custodial metadata precludes us from identifying the drive that was the original source of a particular document.  However, to the extent that any non-privileged post-incident documents were attached to e-mails (and we believe that most, if not all, such documents were), they have been produced and you should be able to identify whether such e-mails were sent or received by Mr. Hackett.

I hope this answers your questions.  Please let me know if you have any other concerns.

Best,
Dan


*Print Less ——> Go Green*
_____

Daniel A. Saunders
*Partner*
T 310.255.9087
F 310.907.2087
daniel.saunders@bingham.com
B I N G H A M
Bingham McCutchen LLP
The Water Garden
Fourth Floor
North Tower
1620 26th Street
Santa Monica, CA 90404-4060

_____

**From:** Mark Nomellini [mailto:mnomellini@kirkland.com]
**Sent:** Friday, August 19, 2011 2:07 PM
**To:** Hedgpeth, Tiffany
**Cc:** Solomont, Charles L.; Saunders, Daniel A.; 'Beffa, Darin T.'; Kirby, Ky E.; Couch, Rebecca B.; Fitch, Warren Anthony
**Subject:** Re: Anadarko/BP Discovery

Tiffany,

If it turns out that Anadarko did not previously search the h:\ drive or My Documents locations of Mr. Hackett or others for post-incident documents using the search terms set forth in your letter, that would be different from what we had previously understood from you, and we would need to revisit our discussions.  We look forward to hearing from you on this.

Have a nice weekend.

Regards,

Mark

| | |
|---|---|
| **Mark Nomellini/Chicago/Kirkland-Ellis** | To "Hedgpeth, Tiffany" <tiffany.hedgpeth@bingham.com> |
| | cc "Solomont, Charles L." <carl.solomont@bingham.com>, "Saunders, Daniel A." |
| 08/19/2011 02:08 PM | <daniel.saunders@bingham.com>, "'Beffa, Darin T.'" <dbeffa@kirkland.com>, "Kirby, Ky E." <Ky.Kirby@bingham.com>, "Couch, Rebecca B." |
| | <rebecca.couch@bingham.com>, "Fitch, Warren Anthony" |
| | <Tony.Fitch@bingham.com> |
| | Subject Re: Anadarko/BP Discovery Link |

Tiffany,

Thank you.   With respect to your first paragraph, what is the answer to the question I posed to Dan last night about whether Mr. Hackett's h:\ drive was previously searched using the search terms set forth in your letter and, if so, were there any non-privileged documents that hit on the search terms?

Regards,

Mark

| | |
|---|---|
| **"Hedgpeth, Tiffany" <tiffany.hedgpeth@bingham.com>** | To "'Beffa, Darin T.'" <dbeffa@kirkland.com>, "Nomellini, Mark J." |
| | <mnomellini@kirkland.com> |
| 08/19/2011 02:05 PM | cc "Solomont, Charles L." <carl.solomont@bingham.com>, "Saunders, Daniel A." |
| | <daniel.saunders@bingham.com>, "Couch, Rebecca B." |
| | <rebecca.couch@bingham.com>, "Kirby, Ky E." <Ky.Kirby@bingham.com>, "Fitch, |
| | Warren Anthony" <Tony.Fitch@bingham.com> |
| | Subject Anadarko/BP Discovery |

Darin and Mark -

In follow-up to our discussions of yesterday, Anadarko is willing to search the hard drives of Hackett, Hollek, and O'Donnell to see if there are any responsive documents that were not already captured by Anadarko.  We understand that, provided this search does not turn up a significant number of documents, BP will not pursue its objections to Anadarko's collection process.  With regard to BP's request that Anadarko produce certain Kerr McGee documents, Anadarko does not believe that it is required to produce Kerr McGee documents as part of party discovery.  Please let us know if BP intends to file a motion to compel the Kerr McGee documents or anything else.

Also, we are still working on obtaining an answer to your question about why custodian metadata information is lost when information is ingested into Evault as well as the number of follow-up interviews that were performed as part of the collection process.  Unfortunately, the people who we need to speak to may not be available until early next week.  We will provide you an update as to the status of our efforts to obtain the requested information early Monday.  In the meantime, as we noted yesterday, Anadarko would be happy to use its best efforts to track down custodial information for specific documents that BP may identify.

Finally, please let us know when we will hear from you on the issues about which Carl emailed you yesterday and the proposal we made regarding providing one another information in response to reasonable questions as to the basis for

redactions or privilege assertions on specific documents.

Thanks and enjoy your weekend!

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

```
**************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
**************************************************************
```

<pre>
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2

 3

      IN RE:  OIL SPILL      MDL NO. 2179
 4    BY THE OIL RIG
      "DEEPWATER HORIZON"   SECTION:  J
 5    IN THE GULF OF
      MEXICO ON APRIL 20,    JUDGE BARBIER
 6    2010                   MAG. JUDGE SHUSHAN

 7
</pre>

<pre>
13

14
           Deposition of JIM W. BRYAN, taken in
15    the Pan American Life Center, Bayou Room,
      11th Floor, 601 Poydras Street, New
16    Orleans, Louisiana 70130, on Friday, May 6,
      2011.
17

18

19    APPEARANCES:

20

21            KIRKLAND & ELLIS LLP
              (By:  Ryan Micallef, Esquire)
22            300 North LaSalle
              Chicago, Illinois  60654
23               (Attorneys for BP)

24

25
</pre>

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

1    **<u>APPEARANCES</u> (<u>continued</u>):**

2            LIEFF, CABRASER, HEIMANN &.
         BERNSTEIN, LLP
3         (By:  Steven E. Fineman, Esquire and
              Anika K. Martin, Esquire)
4         250 Hudson Street, 8th Floor
         New York, New York  10013
5              (Attorneys for MDL 2185
              Securities plaintiffs
6              Subclass)

7

8            U.S. DEPARTMENT OF JUSTICE
         TORTS BRANCH, CIVIL DIVISION
9         (By:  Nancy Flickinger, Esquire, and
              Judy Harvey, Esquire)
10         Post Office Box 14271
         Washington, D.C.  20044-4271
11              (Attorneys for the United
              States)

12

13

         MORGAN, LEWIS & BOCKIUS LLP
14         (By:  Steven A. Luxten, Esquire)
         1000 Louisiana Street
15         Suite 4000
         Houston, Texas  77002-5006
16              (Attorneys for M-I SWACO)

17

18            GODWIN RONQUILLO
         (By: Floyd R. Hartley, Jr., Esquire,
19              Aimee Williams, Esquire)
         1201 Elm Street
20         Suite 1700
         Dallas, Texas  75270-2041
21              (Attorneys for Halliburton)

22

23

24

25

1    **APPEARANCES** (**continued**):

2

3            MS. BARBARA B. DUNBAR
             Attorney at Law
             Anadarko Petroleum Company
4            1201 Lake Robbins Drive
             The Woodlands, TX  77380
5                (Attorneys for Anadarko
                  Petroleum and MOEX Offshore
6                 2007, LLC)

7

8            JONES, WALKER, WAECHTER, POITEVENT,
                  CARRÈRE & DENÈGRE L.L.P.
9            (By:  Thomas M. Nosewicz, Esquire)
             201 St. Charles Avenue
10           New Orleans, Louisiana  70170-5100
                  (Attorneys for Weatherford)

11

12

13           SUTHERLAND ASBILL & BRENNAN LLP
             (By:  Stephany LeGrand, Esquire)
14           1001 Fannin
             Suite 3700
15           Houston, Texas 77002-6760
                  (Attorneys for Transocean)

16

17

18           MUNGER TOLLES & OLSON
             (By:  Allen Katz, Esquire)
19           355 South Grand Avenue
             35th Floor
20           Los Angeles, California  90071-1560
                  (Attorneys for Transocean)

21

22

23

24

25

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

1    **APPEARANCES (continued):**

2          WARE, JACKSON, LEE & CHAMBERS,
             L.L.P.
3          (By:  John E. "Jay" Nelson, Esquire)
             America Tower
4          2929 Allen Parkway
             Houston, Texas  77019
5              (Attorneys for Dril-Quip, Inc.)

6

7          BECK, REDDEN & SECREST, L.L.P.
             (By: Thomas G. Ganucheau, Esquire)
8          One Houston Center
             1221 McKinney Street, Suite 4500
9          Houston, Texas  77010-2010
                 (Attorneys for Cameron
10                 International Corporation)

11

12         BINGHAM McCUTCHEN
             (By:  Peter C. Neger, Esquire)
13         399 Park Avenue.
             New York, New York  10022-4689
14               (Attorneys for Anadarko
                   Petroleum and MOEX Offshore
15                 2007, LLP

16

17

     **THE VIDEOGRAPHER:**
18

19         Gilly Delormier

20

     **REPORTED BY:**
21

22         **JOSEPH R. KAISER, JR., CCR, RPR**
             Certified Court Reporter
23         State of Louisiana

24

25              *       *       *       *       *

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

1        A.        Through the American Association

2    of Professional Landmen, it is a

3    certification based on years of experience,

4    testing.  And so it's -- I think I've had

5    that certification since 1990, I believe.

6        Q.        You have to do anything to keep

7    up with that certification?

8        A.        You do.  Every -- I believe it's

9    every five years you have to, you know,

10   attend various educational events, and so I

11   think you have to earn a number of points

12   in order to recertify, basic.

13       Q.        What is a landman?

14       A.        Well, a landman basically is

15   that person that is, in the oil and gas

16   business, charged with acquiring

17   leaseholds, the rights to access minerals

18   and drill upon properties.  And in

19   negotiations of joint ventures, various

20   agreements were used, you know, in

21   conducting operations.

22       Q.        So you're like the business guy?

23       A.        Yes, sir.

24       Q.        The deal guy?

25       A.        Yes.

1          Q.      Are you presently an employee of

2     the Anadarko Petroleum Corporation?

3          A.      Yes, sir.

4          Q.      Are you presently employed at

5     any other Anadarko company?

6          A.      No.

7          Q.      Are you an officer of Anadarko

8     Petroleum?

9          A.      No.

10         Q.      What is your present title?

11         A.      My present title is director,

12    Gulf of Mexico land.

13         Q.      How long have you had that

14    title?

15         A.      Since 2006.

16         Q.      And prior to the time -- I'm

17    sorry.  When did you start working for

18    Anadarko?

19         A.      Well, in 2006.  I was with

20    Kerr-McGee Oil and Gas Corporation, and

21    they were acquired by Anadarko Petroleum.

22         Q.      Did you hold a similar position

23    with that company?

24         A.      I did.

25         Q.      And you were the director of --

1    the land director?

2         A.    I think my title with Kerr-McGee

3    was land manager.

4         Q.    How long were you with

5    Kerr-McGee?

6         A.    Since 1999.  But Kerr-McGee

7    acquired the company I was working for

8    prior to that, and so the combined years

9    involved with those entities is roughly 26.

10        Q.    And have you always been a

11   landman?

12        A.    Yes.

13        Q.    Tell me a little bit about your

14   job responsibilities as a director of Gulf

15   of Mexico land for Anadarko.

16              By the way, is it okay if I use

17   Anadarko as short for Anadarko Petroleum?

18   If I'm speaking about a different Anadarko

19   entity, I'll be clear.  Is that okay?

20        A.    Yes.  You're asking me what my

21   duties are?

22        Q.    Yes, as Director of Gulf of

23   Mexico land.

24        A.    I manage a group that includes

25   the four landmen, analysts, and

1                **REPORTER'S CERTIFICATE**

2          I, **JOSEPH R. KAISER, JR.,** Certified

3     Court Reporter, State of Louisiana, do

4     hereby certify that the above-mentioned

5     witness, after having been first duly sworn

6     by me to testify to the truth, did testify

7     as hereinabove set forth;

8          That the testimony was reported by

9     me in shorthand and transcribed under my

10    personal direction and supervision, and is

11    a true and correct transcript, to the best

12    of my ability and understanding;

13          That I am not of counsel, not

14    related to counsel or the parties hereto,

15    and not in any way interested in the

16    outcome of this matter.

17

18                    _____
                      **JOSEPH R. KAISER, JR., CCR, RPR**
19                    **Certified Court Reporter**
                      **State of Louisiana**
20

21

22

23

24

25

1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2

3

     IN RE:  OIL SPILL      MDL NO. 2179
4    BY THE OIL RIG
     "DEEPWATER HORIZON"    SECTION:   J
5    IN THE GULF OF
     MEXICO, ON APRIL       JUDGE BARBIER
6    20, 2010               MAG. JUDGE SHUSHAN

7

13

14

             Deposition of **PAUL A. CHANDLER**,
15   taken in the Pan American Life Center,
     Bayou Room, 11th Floor, 601 Poydras Street,
16   New Orleans, Louisiana 70130, on Wednesday,
     May 4, 2011.
17

18

     **APPEARANCES**:
19

20           LIEFF CABRASER HEIMANN & BERNSTEIN,
             LLP
21           (By:  Steven E. Fineman, Esquire and
                   Annika K. Martin, Esquire)
22           250 Hudson Street
             8th Floor
23           New York, New York  10013-1413
                   (Plaintiff's Steering Committee)

24

25

1   **<u>APPEARANCES</u> (continued):**

2           GODWIN RONQUILLO
            (By:  Floyd R. Hartley, Jr.,
3                 Esquire)
            1201 Elm Street
4           Suite 1700
            Dallas, Texas  75270-2041
5               (Attorneys for Halliburton)

6

7           BECK, REDDEN & SECREST, L.L.P.
            (By:  Eric J.R. Nichols, Esquire)
8           515 Congress
            Suite 1750
9           Austin, Texas  78701
                (Attorneys for Cameron
10               International Corporation)

11

12          JONES, WALKER, WAECHTER, POITEVENT,
            CARRÈRE & DENÈGRE L.L.P.
13          (By:  Joseph J. Lowenthal, Jr.,
                  Esquire)
14          201 St. Charles Avenue
            New Orleans, Louisiana  70170-5100
15              (Attorneys for Weatherford)

16

17          KIRKLAND & ELLIS LLP
            (By:  Geoffrey A. David, Esquire)
18          601 Lexington Avenue
            New York, New York  10022
19              (Attorneys for BP)

20

21          MORGAN, LEWIS & BOCKIUS LLP
            (By:  Joseph Duffy, Esquire)
22          300 South Grand Avenue, 22nd Floor
            Los Angeles, California  90071-3132
23              (Attorneys for M-I SWACO)

24

25

1    **APPEARANCES (continued):**

2            FRILOT, LLC
             (By:  Paul C. Thibodeaux, Esquire)
3            1100 Poydras Street, Suite 3700
             New Orleans, Louisiana  70163
4                (Attorneys for Transocean)

5

6            BINGHAM MCCUTCHEN
             (By:  Nancy M. Wilms, Esquire)
7            355 South Grand Avenue  Suite 4400
             Los Angeles, California 90071-3106
8                (Attorneys for Anadarko
                  Petroleum and MOEX Offshore
9                 2007, LLC)

10

11           WARE, JACKSON, LEE & CHAMBERS,
             L.L.P.
12           (By:  Margaret Bryant, Esquire)
             America Tower
13           2929 Allen Parkway
             Houston, Texas  77019
14               (Attorneys for Dril-Quip, Inc.)

15

16           U.S. DEPARTMENT OF JUSTICE
             ENVIRONMENT AND NATURAL RESOURCES
17           DIVISION
             (By:  Matthew Z. Leopold, Esquire)
18           Attorney Advisor Law and Policy
             Section
19           950 Pennsylvania Avenue, N.W.
             Room 2616
20           Washington, D.C.  20530
                 (Attorneys for the United
21                States)

22

23

24

25

1    **THE VIDEOGRAPHER:**

2

3

         Gilly DeLorimier

4

5

6    **REPORTED BY:**

7

8

9         **JOSEPH R. KAISER, JR., CCR, RPR**
         Certified Court Reporter
10        State of Louisiana

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1          A.    I have a Bachelor's of Science
2    degree.
3          Q.    In what discipline?
4          A.    In geology.
5          Q.    Okay.  Do you have any -- is
6    that -- I'm sorry.  That's the most
7    advanced, Bachelor of Science?
8          A.    That's correct.
9          Q.    What year did you obtain that
10   degree?
11         A.    1981.
12         Q.    From where?
13         A.    Louisiana Tech University.
14         Q.    Aside from your academic
15   training as a geologist, do you have any
16   additional professional training, including
17   any certification?
18         A.    I'm AAPG certified.  I'm also
19   certified within the Texas geoscience
20   board.
21         Q.    Mr. Chandler, are you presently
22   an employee of Anadarko Petroleum
23   Corporation?
24         A.    I am.
25         Q.    For purposes of today's
```

```
 1    deposition -- strike that.  Are you an
 2    employee of any other Anadarko company?
 3         A.    No.
 4         Q.    For purposes of today's
 5    deposition, when I use the word Anadarko,
 6    I'm referring to Anadarko Petroleum
 7    Corporation unless you tell me I'm wrong
 8    about that.  Okay?
 9         A.    Okay.
10         Q.    When did you start with
11    Anadarko?
12         A.    I started with Anadarko, which
13    actually had been merged with Kerr-McGee.
14    I started with them in 1997.
15         Q.    Okay.  And what was your title
16    when you started?
17         A.    Senior geologist.
18         Q.    At some point did your title
19    change?
20         A.    It did.
21         Q.    When was that?
22         A.    It changed several times over
23    the course of several years.  It changed
24    from a senior to a senior staff and then
25    I'm at an advisory level now.
```

1      Q.      In the 2009, 2010 time period,
2  what was your title?
3      A.      That was the advisory level
4  where I am now, so I'm a geoscience
5  advisor.
6      Q.      Is your title project geological
7  advisor?
8      A.      That's correct.
9      Q.      Thank you.  And as a project
10  geological advisor in the 2009, 2010 time
11  period, what were your job
12  responsibilities?
13      A.      My job responsibilities were
14  primarily working development assets for
15  Anadarko in the eastern Gulf of Mexico.
16  There were development wells in our
17  existing fields that were to be worked and
18  recommended for additional wells.  There
19  was some exploratory work that was actually
20  done, also.
21      Q.      Can you just define development
22  assets for me?
23      A.      These were existing fields that
24  had production already occurring in them
25  where there was additional development of

Page 346

1    Q.  Hi, Mr. Chandler, as you know,
2  I'm Nancy Wilms.  I have one question.  Are
3  you aware of any communications from
4  Anadarko to BP regarding the speed with
5  which the Macondo well was being drilled?
6    A.  No.
7  MS. WILMS:
8      That's the only question I have.
9  Thank you.
10  THE VIDEOGRAPHER:
11      Off the record.  The time is now
12  4:28.
13      (Whereupon the deposition is
14  concluded at 4:27.)

Page 347

3      WITNESS' CERTIFICATE

8      I, PAUL A. CHANDLER, read or have
9  had the foregoing testimony read to me and
10  hereby certify that it is a true and
11  correct transcription of my testimony, with
12  the exception of any attached corrections
13  or changes.

19      PAUL A. CHANDLER

Page 348

1      REPORTER'S CERTIFICATE

4      I, JOSEPH R. KAISER, JR., Certified
5  Court Reporter, State of Louisiana, do
6  hereby certify that the above-mentioned
7  witness, after having been first duly sworn
8  by me to testify to the truth, did testify
9  as hereinabove set forth;
10      That the testimony was reported by
11  me in shorthand and transcribed under my
12  personal direction and supervision, and is
13  a true and correct transcript, to the best
14  of my ability and understanding;
15      That I am not of counsel, not
16  related to counsel or the parties hereto,
17  and not in any way interested in the
18  outcome of this matter.

21      JOSEPH R. KAISER, JR., CCR, RPR
        Certified Court Reporter
        State of Louisiana

1    UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF LOUISIANA

2

3    IN RE:  OIL SPILL          )      MDL NO. 2179
     BY THE OIL RIG             )

4    "DEEPWATER HORIZON" IN      )      SECTION "J"
     THE GULF OF MEXICO, ON      )

5    APRIL 20, 2010              )      JUDGE BARBIER
                                 )      MAG. JUDGE SHUSHAN

6

7    *****************************************

     ORAL AND VIDEOTAPED DEPOSITION OF

8                 DARRELL HOLLEK

                  JUNE 22, 2011

9    *****************************************

10

11

12

13

14

15

16

17

18

19

20

21          Deposition of DARRELL HOLLEK, taken at the

22   Pan American Life Center, 601 Poydras Street, Room

23   Bayou 1/2, New Orleans, Louisiana, on the 22ND of JUNE,

24   2011.

25

```
 1                   A P P E A R A N C E S
 2   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
             Mr. Steven E. Fineman
 3           Ms. Annika K. Martin
             LEIFF CABRASER HEIMANN & BERSTEIN, L.L.P.
 4           250 Hudson Street, 8th Floor
             New York, New York 10013-1413
 5
     APPEARING FOR BP, INC.:
 6           Mr. Darin Beffa
             KIRKLAND & ELLIS
 7           333 South Hope Street
             Los Angeles, California  90071
 8
     APPEARING FOR TRANSOCEAN:
 9           Ms. Stephany LeGrand
             SUTHERLAND ASBILL & BRENNAN
10           1001 Fannin, Suite 3700
             Houston, Texas  77002-6760
11
             Mr. Allen Katz
12
     APPEARING FOR ANADARKO PETROLEUM COMPANY:
13           Ms. Nancy M. Wilms
             Mr. Jesus Chavez
14           BINGHAM MCCUTCHEN
             355 South Grand Avenue, Suite 4400
15           Los Angeles, California  90071-3106
16   APPEARING FOR CAMERON:
             Ms. Patrice B. Childress
17           BECK, REDDEN & SECREST
             One Houston Center
18           1221 McKinney  Street, Suite 4500
             Houston, Texas  77010-2010
19
     APPEARING FOR WEATHERFORD:
20           Mr. Matthew S. Lejeune
             JONES, WALKER, WAECHTER, POITEVENT, CARRERE &
21           DENEGRE, L.L.P.
             201 St. Charles Avenue
22           New Orleans, Louisiana  70170
23
24
25
```

```
 1                    A P P E A R A N C E S
 2  APPEARING FOR DRIL-QUIP, INC.:
            Ms. Margaret Bryant
 3          WARE, JACKSON, LEE & CHAMBERS
            America Tower, 42nd Floor
 4          2929 Allen Parkway
            Houston, Texas  77019-7101
 5
    APPEARING FOR MOEX OFFSHORE 2007, L.L.C., and MOEX USA:
 6          Mr. Andrew W. Homer
            PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
 7          1540 Broadway
            New York, New York  10036
 8
    APPEARING FOR M-I SWACO:
 9          Mr. Sean Brennan
            MORGAN, LEWIS & BOCKIUS
10          1000 Louisiana Street, Suite 4000
            Houston, Texas  77002
11
    APPEARING FOR HALLIBURTON:
12          Mr. Bruce W. Bowman, Jr.
            Mr. Israel R. Silvas
13          GODWIN RONQUILLO
            1201 Elm Street, Suite 1700
14          Dallas, Texas 75270-2041
15  APPEARING FOR THE STATE OF LOUISIANA:
            Ms. Amy S. Bryson
16          Attorneys for Louisiana Attorney General
            KANNER & WHITELEY, L.L.C.
17          701 Camp Street
            New Orleans, Louisiana  70130-3504
18
    APPEARING FOR LYNDEN:
19          Mr. Ryan Plummer
            CHRISTOVICH & KEARNEY, L.L.P.
20          601 Poydras Street, Suite 2300
            New Orleans, Louisiana  70130
21
    ALSO PRESENT:
22          Mr. Mark Hendrix, Videographer
23
24
25
```

1    industry as part of that degree?

2        A.   Not specific to day-to-day work other than

3    working through problem solving.

4        Q.   Okay.  Do you have any professional

08:35  5    certifications?

6        A.   No.

7        Q.   Okay.  Has -- have you had any professional

8    training in -- in engineering outside of your -- your

9    degree, your academic degree?

08:35  10       A.   Early on in my career I had courses in logging

11   and reservoir engineering, a few things like that.

12       Q.   Okay.  And when was that, approximately?

13       A.   '80 through '83, maybe, 1983.

14       Q.   Have you had any professional training in

08:35  15   geology?

16       A.   I took a -- one course back in the early '80s,

17   geology for non-geologists or something like -- for

18   engineers.

19       Q.   Yeah.

08:36  20       A.   I forget the name of the course.

21       Q.   I've taken a lot of, like, you know,

22   accounting for lawyers and things like that.

23       A.   It would have been similar.  I think it was a

24   one-week course.

08:36  25       Q.   Okay.  Have you had -- what about professional

1    training in -- in accounting?  Have you -- do you have

2    any training in accounting?

3         A.    No, not that I recall.

4         Q.    How about budget and finance?

08:36  5         A.    No.

6         Q.    Did you go into the -- into the job market

7    after you left A&M?

8         A.    I did.

9         Q.    Where did you go?

08:36  10         A.    I went to work for Kerr-McGee Corporation in

11    Morgan City in January of 1980.

12         Q.    Okay.  And how long were you at Kerr-McGee?

13         A.    Until 2006.

14         Q.    Until the -- until it was acquired by --

08:36  15         A.    Until we were acquired at that point with

16    Anadarko.

17         Q.    Okay.  And when you started in 1980 what was

18    your job?

19         A.    Just started as an entry-level engineer in the

08:37  20    field operations.

21         Q.    Okay.  And how long were you in that position

22    as an entry-level engineer?

23         A.    Well, my first two years was roughly as an

24    entry-level engineer.  Spent a short time in both

08:37  25    facilities, drilling, con- -- production engineering and

14

```
  1    reservoir engineering.
  2        Q.   Okay.  And then -- and then after -- so about
  3    '82 did you get a promotion?
  4        A.   Yes, I became the supervisor in production
08:37  5    engineering.
  6        Q.   Supervisor in construction engineering?
  7        A.   Production engineering.
  8        Q.   Production, I'm sorry.  And what does that
  9    mean?
08:37 10        A.   Basically, working with our active wells and
 11    understanding how much they're flowing; those wells that
 12    were having a mechanical problems or reservoir problems,
 13    how do you get their volumes back up, what do you need
 14    to do to remediate.
08:37 15        Q.   Okay.  And was there a particular geographic
 16    area that you were responsible for?
 17        A.   At that point it was Britain Sound, an area
 18    offshore called Britain Sound, Main Pass, South
 19    Timbalier.
08:38 20        Q.   Okay.
 21        A.   These are all on the shelf.
 22        Q.   Okay.  And how long were you a supervisor of
 23    production engineering?
 24        A.   I did that for about a year and a half there
08:38 25    before I was transferred to New Orleans in a similar
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

```
 1   THE STATE OF TEXAS :
     COUNTY  OF  HARRIS :
 2
     I, PHYLLIS WALTZ, a Certified Shorthand Reporter, Texas
 3   Certified Realtime Reporter, Registered Professional
     Reporter, and Certified Realtime Reporter in and for the
 4   State of Texas, do hereby certify that the facts as
     stated by me in the caption hereto are true; that the
 5   above and foregoing answers of the witness, DARRELL
     HOLLEK, to the interrogatories as indicated were made
 6   before me by the said witness after being first duly
     sworn to testify the truth, and same were reduced to
 7   typewriting under my direction; that the above and
     foregoing deposition as set forth in typewriting is a
 8   full, true, and correct transcript of the proceedings
     had at the time of taking of said deposition.
 9
     I further certify that I am not, in any capacity, a
10   regular employee of the party in whose behalf this
     deposition is taken, nor in the regular employ of his
11   attorney; and I certify that I am not interested in the
     cause, nor of kin or counsel to either of the parties.
12
     GIVEN UNDER MY HAND AND SEAL OF OFFICE, on this, the
13   22ND day of JUNE, 2011.
14
15
16                        PHYLLIS WALTZ, CSR, TCRR, RPR, CRR
                          TEXAS CSR NO. 6813
17                        Expiration Date:  12/31/11
18
     Worldwide Court Reporters, Inc.
19   Firm Certification No. 223
     3000 Weslayan, Suite 235
20   Houston, Texas   77027
     (713) 572-2000
21
22
23
24
25
```

1          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
2

3

IN RE:  OIL SPILL      MDL NO. 2179
4   BY THE OIL RIG
    "DEEPWATER HORIZON"    SECTION:   J
5   IN THE GULF OF
    MEXICO, ON APRIL      JUDGE BARBIER
6   20, 2010             MAG. JUDGE SHUSHAN

7

13

14
          Deposition of **NICHOLAS G. HUCH,**
15   taken in the Pan American Life Center,
     Bayou Room, 11th Floor, 601 Poydras Street,
16   New Orleans, Louisiana 70130, on Monday,
     May 16, 2011.

17

18
     **APPEARANCES:**
19

20
          LIEFF CABRASER HEIMANN & BERNSTEIN,
21        LLP
          (By:  Steven E. Fineman, Esquire and
22              Annika K. Martin, Esquire)
          250 Hudson Street, 8th Floor
23        New York, New York  10013
              (Attorneys for Plaintiff's
24             Steering Committee)

25

**APPEARANCES (continued):**

1

2

3
        SUTHERLAND ASBILL & BRENNAN, LLP
        (By:  Stephany LeGrand, Esquire)
        1001 Fannin Street, Suite 3700
4       Houston, Texas  77002-6760
            (Attorneys for Transocean)

5

6

7
        MUNGER, TOLLES & OLSON LLP
        (By:  Allen M. Katz, Esquire)
        355 South Grand Avenue
8       35th Floor
        Los Angeles, California  90071-1560
9           (Attorneys for Transocean)

10

11
        MORGAN, LEWIS & BOCKIUS LLP
        (By:  Lucas T. Elliot, Esquire)
12      1000 Louisiana Street
        Suite 4000
13      Houston, Texas  77002-5006
            (Attorneys for M-I SWACO)

14

15

16
        BINGHAM MCCUTCHEN
        (By:  Peter C. Neger, Esquire)
17      399 Park Avenue
        New York, New York  10022-4689
18          (Attorneys for Anadarko
             Petroleum and MOEX Offshore
19           2007, LLC)

20

21
        BINGHAM MCCUTCHEN
        (By:  Julia E. Stein, Esquire)
22      355 South Grand Avenue Suite 4400
        Los Angeles, California 90071-3106
23          (Attorneys for Anadarko
             Petroleum and MOEX Offshore
             2007, LLC)

24

25

1    **APPEARANCES (continued):**

2            GODWIN RONQUILLO
             (By:  Floyd R. Hartley, Jr.,
3                  Esquire)
             1201 Elm Street
4            Suite 1700
             Dallas, Texas  75270-2041
5                (Attorneys for Halliburton)

6


7            BECK, REDDEN & SECREST, L.L.P.
             (By:  Thomas Ganucheau, Esquire)
8            One Houston Center
             1221 McKinney Street
9            Suite 4500
             Houston, Texas  77010-2010
10               (Attorneys for Cameron
                  International Corporation)
11

12

13           JONES, WALKER, WAECHTER, POITEVENT,
             CARRÈRE & DENÈGRE L.L.P.
             (By:  Wayne G. Zeringue, Jr.,
14                 Esquire)
             201 St. Charles Avenue
15           New Orleans, Louisiana  70170-5100
                 (Attorneys for Weatherford)
16

17

18           WARE, JACKSON, LEE & CHAMBERS,
             L.L.P.
             (By:  Margaret Bryant, Esquire)
19           America Tower
             2929 Allen Parkway
20           Houston, Texas  77019
                 (Attorneys for Dril-Quip, Inc.)
21

22           KIRKLAND & ELLIS LLP
             (By:  Darin T. Beffa, Esquire)
23           333 South Hope Street
             Los Angeles, California  90071
24               (Attorneys for BP)

25

1    **APPEARANCES (continued):**

2
         U.S. DEPARTMENT OF JUSTICE
3        (By: Matt Leopold, Esquire)
         950 Pennsylvania Avenue, NW
4        Washington, DC  20530-0001
             (Attorneys for United States of
5             America)

6

7        HENRY DART, ATTORNEYS AT LAW
         (By:  Henry T. Dart, Esquire)
8        510 North Jefferson Street
         Covington, Louisiana  70433
9             (Special counsel for the
              Louisiana Attorney General
10            representing the State of
              Louisiana)

11

12

13   **THE VIDEOGRAPHER:**

14
         Gilly DeLorimier
15

16

17

18   **REPORTED BY:**

19

20
         **JOSEPH R. KAISER, JR., CCR, RPR**
21       Certified Court Reporter
         State of Louisiana

22

23

24            *       *       *       *       *
25

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

1    '90s?

2         A.    Yes.

3         Q.    And you passed the test?

4         A.    Yes.

5         Q.    Do you have to do anything to

6    maintain your certification?

7         A.    Yes.  Every five years you have

8    to accumulate up to 50 hours, what they

9    call CPL points.

10        Q.    What are CPL points?

11        A.    They are just additional

12   education points.

13        Q.    Continuing?

14        A.    Continuing education.

15        Q.    And you're current?

16        A.    Yes.

17        Q.    When did you start -- strike

18   that.  At some point you went to work for

19   Anadarko; is that correct?

20        A.    Yes.

21        Q.    For purposes of today's

22   deposition, if I say Anadarko do you

23   understand that to be Anadarko Petroleum

24   Corporation?

25        A.    Yes.

1          Q.     If I mean to refer to another

2     Anadarko company, I'll be specific of that

3     company.  But if we use the word Anadarko,

4     let's agree today that we're talking about

5     Anadarko Petroleum.  Okay?

6          A.     Okay.

7          Q.     Okay.  When did you go to work

8     for Anadarko?

9          A.     Well, I started -- well, when

10    Anadarko bought Kerr-McGee, which would

11    have been effectively August of 2006, I

12    believe.

13         Q.     So let's go back to college, to

14    after your degree.

15         A.     Yes.

16         Q.     Did you go into the oil industry

17    right out of that program?

18         A.     Yes.

19         Q.     And where did you go to work?

20         A.     Amoco Production Company.

21         Q.     And how long were you with

22    Amoco?

23         A.     Nearly 20 years.

24         Q.     So the late '90s?

25         A.     Yes.  '99.

1      Q.      '99.  Okay.  And what did you do

2   at Amoco?

3      A.      I was a landman.

4      Q.      I'm going to come back to more.

5   Well, okay.  Let's move off there.  So did

6   you go to Anadarko from Amoco?

7      A.      From Kerr-McGee.

8      Q.      From Kerr-McGee.  So you went to

9   Kerr-Magee and then when Kerr-Magee became

10  part of Anadarko that's when you came to

11  Anadarko?

12     A.      Yes.

13     Q.      So Kerr-Magee, '99 to 2006.

14  2006 with Anadarko?

15     A.      No.  I spent two years from

16  '99 -- from 2000 to 2002 working for the

17  city of Oklahoma City.

18     Q.      What did you do there?

19     A.      I divested their surplus

20  properties to prospective builders.

21     Q.      So you got out of the landman

22  business for a couple of years?

23     A.      I got out of the oil and gas

24  landman, I was kind of doing more surface

25  land and real estate land.

1                  **REPORTER'S CERTIFICATE**

2

3

4          I, **JOSEPH R. KAISER, JR.,** Certified

5     Court Reporter, State of Louisiana, do

6     hereby certify that the above-mentioned

7     witness, after having been first duly sworn

8     by me to testify to the truth, did testify

9     as hereinabove set forth;

10          That the testimony was reported by

11    me in shorthand and transcribed under my

12    personal direction and supervision, and is

13    a true and correct transcript, to the best

14    of my ability and understanding;

15          That I am not of counsel, not

16    related to counsel or the parties hereto,

17    and not in any way interested in the

18    outcome of this matter.

19

20          _____
           **JOSEPH R. KAISER, JR., CCR, RPR**
21         **Certified Court Reporter**
           **State of Louisiana**
22

23

24

25

1  Martin R. Boles
   (martin.boles@kirkland.com)
2  Kirkland & Ellis LLP
   333 South Hope Street, Suite 2900
3  Los Angeles, CA 90071
   213-680-8400 (Tel)
4  213-680-8500 (Fax)

5  *Attorney for BP America Inc., BP America*
   *Production Company, BP Exploration &*
6  *Production Inc., and BP p.l.c.*

7

8  **UNITED STATES DISTRICT COURT**

9  **EASTERN DISTRICT OF LOUISIANA**

10

11  In re: Oil Spill by the Oil Rig            MDL No. 2179
        "Deepwater Horizon" in the Gulf
12      of Mexico, on April 20, 2010         **SECTION: J**

13                                           **DECLARATION OF**
                                             **JOHN H. JESSEN**
14

15

16      I, John H. Jessen, declare as follows:

17      1.   I, John H. Jessen, have been asked to provide a declaration regarding

18  Anadarko's position with respect to the production of custodian metadata in discovery
19
20  in *IN RE*: OIL SPILL by the OIL RIG "DEEPWATER HORIZON," MDL No. 2179.

21      2.   My declaration will be divided into the following sections. *First,* I will

22  describe my background and experience in the area of electronic discovery. *Second,* I
23
24  will discuss the issue I was asked to evaluate; namely, whether, given the

25  requirements of modern ESI-discovery litigation and this case, it is reasonable for
26
27  Anadarko to not produce custodian metadata. *Third,* I will set forth a summary of the

28

information provided to me or reviewed by me.  *Finally,* I will provide and describe my opinions concerning custodian metadata in modern ESI-discovery litigation.

I.    Background

3.    From its earliest origins, I have been involved in what is now referred to as electronic discovery.  I founded Electronic Evidence Discovery, Inc. ("EED") in 1987, the first, and, for a number of years, the only company to be focused on electronic discovery.  I served as EED's Chief Executive Officer until 2007 and as a Board Member until 2010.  In 2010, to meet the need for independent consulting and assessment services in the legal discovery market, I founded Jessen and Associates, where I currently serve as the Managing Director.  I am a 1984 graduate of the University of Washington, with a degree in Finance and Quantitative Methods.  I am also a graduate of the Owner/President Management Program at the Harvard School of Business. I have attached as Exhibit 1 my *curriculum vitae*.

4.    During my career, I have assisted attorneys, corporate counsel and jurists (federal and state) in the identification, location, preservation, retrieval, assessment, review, production and presentation of electronic data in the discovery process in hundreds of litigations.  I have personally restored and analyzed thousands of backup tapes and analyzed thousands of computer systems in order to determine the types and quantities of data residing thereon and the role such data may play in a discovery matter.  I have personally designed, implemented, audited and advised on hundreds of data retention, discovery, production, and presentation programs.

5.    I have served on the board of the Harvard University Law School's Digital Discovery Project, which provided training on electronic data issues in litigation to Federal and State judges throughout the United States.  In connection with the Harvard Digital Discovery Project and otherwise, I have made presentations to many hundreds of state and federal judges on electronic discovery issues.  I have also served on the California State Council to the Civil and Small Claims Advisory Committee Working Group on Electronic Discovery, which was active in developing California state law rules concerning the use of electronic data in discovery.  Over the past 20 years, I have lectured extensively on electronic data issues to law firms, State and Federal bar associations, judicial groups, corporations, professional organizations and at continuing legal education seminars.

6.    I am the Chairman of the Executive Committee of the Sedona Conference® and one of the founding members of the Sedona Conference® Working Group on Electronic Document Retention and Production, a group of lawyers, jurists and academics who, with my technical assistance, have endeavored to help set reasonable best practices standards for the collection and production of electronically stored information.

7.    I have served as a Steering Committee Member on The Sedona Conference® Working Group on International Electronic Information Management, Discovery and Disclosure, and I was the Technical Expert to the Canadian effort to develop and implement best-practice guidelines on addressing electronically stored

information in discovery, resulting in the release in January 2008 of *The Sedona Canada Principles.* I am currently serving as the Chair and Editor-in-Chief of the Sedona Conference® "Discovery 2.0" Drafting Team which is developing a new, comprehensive model and a set of best practices for modern discovery.  The goal of the Discovery 2.0 effort is to provide a framework for more efficient discovery, review, and document production practices.

8.     I have served as an expert for federal and state judges and for special masters deciding electronic discovery issues.  I have also served as an intermediary expert for the Federal Trade Commission and the Securities and Exchange Commission in determining the role of electronic data in regulatory discovery.

9.     I am a contributor to the book "Electronic Discovery and Digital Evidence: Cases and Materials" by the Honorable Shira Sheindlin, United States District Court Judge for the Southern District of New York, and Daniel J. Capra, Phillip Reed Professor of Law at Fordham Law School, and the Sedona Conference.

10.    Through my direct personal involvement in hundreds of cases, my awareness of the work done by others at EED and Jessen and Associates, my routine and substantial interactions with lawyers and judges at Sedona, my participation in legal seminars, presentations to law firms, and bar association and other meetings, among other things, I have accumulated a significant amount of knowledge about the ways parties attempt to search for and produce electronic information, the problems that can and do arise relating to these efforts, and the potential solutions to those

problems.   As a result, I am well-qualified to evaluate and opine on Anadarko's position with respect to not producing custodial metadata on non-email documents.

II.     What I Was Asked To Evaluate

11.    I was asked to evaluate various correspondence between Anadarko and BP regarding Anadarko's refusal to produce custodian metadata.

12.    I was also asked to evaluate the reasonableness of Anadarko's claims that they should not be required to produce custodian metadata.

III.    What I Have Reviewed

13.    To provide me with the information necessary to formulate my opinions, I have been provided with various correspondence among counsel.   I have also reviewed the relevant portions of MDL No. 2179 PreTrial Orders 16 and 17.   My understanding of the facts upon which my opinions are based is derived from these documents.

IV.     My Opinions Concerning the Fundamental Nature of Custodian Metadata

14.    Any evidentiary collection involves the collecting agent following basic forensic collection processes and protocols.   One of the most fundamental processes is the preservation and provision of identifying information as to "who" you are collecting from.   "It is critical to maintain the identification of the original source of data at each stage of processing, such as the file location, the directory and drive mappings on hard drives, as well as the contents and file counts for each unique

source for each custodian." (*The Sedona Conference Commentary on Achieving Quality in the E-Discovery Process*, May 2009). An evidentiary collection process that fails to record this information for the vast majority of the non-email documents in a case is not forensically sound.

15. Custodian metadata information, such as the identity of the person from which the data was collected and/or the location of such information, is at the heart of the discovery process of identifying, locating, retrieving, and analyzing potentially relevant information. Custodial metadata is fundamental because it identifies the individual(s) who can speak with knowledge regarding the data collected and it allows the receiving party to determine whether or not the data may be important to their analysis of the matter. Without this information, a receiving party may be left guessing as to which custodian may testify as to any given document, particularly in the case of documents other than e-mail, and/or whether the information provided is even worth considering. This is especially true in a case of this magnitude where the ability to use custodian information can be used to group documents and to determine whether or not, based on who owned or was in possession of the particular document, whether to promote that document further into the discovery process. Without knowing who owned and/or possessed a document, and where that document was located, significant amounts of time and money can be wasted conducting analysis and review on documents that would not have been maintained in the discovery process otherwise.

16.    BP is being asked to take possession of a set of documents where for any given document, particularly non-emails, Anadarko may be unable to tell BP where the document was found and/or who the owner of the document is.   Since the beginning of e-discovery, and even in the paper environment before that, providing such information so that the receiving party can place the document into context, search it, organize it, and make proper use of it in a discovery context has been an important consideration.   From an e-discovery perspective, it is unreasonable for Anadarko to not provide this information for the vast majority of non-email documents.

I declare under the penalty of perjury of the laws of the State of Washington and the United States that the foregoing is true and correct and that this declaration was executed in Medina, Washington on August 25, 2011.


John H. Jessen

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF LOUISIANA

3

IN RE:  OIL SPILL          MDL NO. 2179
4  BY THE OIL RIG
   "DEEPWATER HORIZON"       SECTION:  J
5  IN THE GULF OF
   MEXICO, ON                JUDGE BARBIER
6  APRIL 20, 2010            MAG. JUDGE SHUSHAN

7

8

9

15

16              **VOLUME 1**

17

18        Deposition of **ROBERT QUITZAU**, 1910

19  Driscoll Street, Houston, Texas 77019, taken

20  in the Ponchartrain Room, 601 Poydras Street,

21  New Orleans, Louisiana 70130, on Wednesday,

22  May 25th, 2011.

23

24

25

1    **APPEARANCES:**

2

3    ON BEHALF OF THE PLAINTIFFS
     STEERING COMMITTEE:

4

         LIEFF, CABRASER, HEIMANN & BERNSTEIN
5        (BY:  STEVEN E. FINEMAN, ESQUIRE)
               ANNIKA K. MARTIN, ESQUIRE)
6        250 HUDSON STREET, 8TH FLOOR
         NEW YORK, NEW YORK 10013-1413

7

8        U.S. DEPARTMENT OF JUSTICE
         ENVIRONMENT & NATURAL RESOURCES
9        DIVISION
         (BY:  NANCY FLICKINGER, ESQUIRE)
10       SENIOR ATTORNEY
         ENVIRONMENT ENFORCEMENT SECTION
11       BEN FRANKLIN STATION
         P.O. BOX 7611
12       WASHINGTON, D.C. 20044

13            ATTORNEYS FOR THE UNITED STATES

14

15       KIRKLAND & ELLIS, LLP
         (BY:  GEOFFREY A. DAVID, ESQUIRE)
16       601 LEXINGTON AVENUE
         NEW YORK, NEW YORK 10022

17            ATTORNEYS FOR BP

18

19       PREIS & ROY, PLC
         (BY:  RICHARD J. HYMEL, ESQUIRE)
20             ROBERT L. BLANKENSHIP, ESQUIRE)
         VERSAILLES CENTRE
21       102 VERSAILLES BOULEVARD
         SUITE 400
22       LAFAYETTE, LOUISIANA 70501

23            ATTORNEYS FOR TRANSOCEAN

24

25

1    APPEARANCES (Continued):

2

3         PREIS & ROY
          (BY:  CARL J. HEBERT, ESQUIRE)
4         PAN AMERICAN LIFE CENTER
          601 POYDRAS STREET, SUITE 1700
5         NEW ORLEANS, LOUISIANA 70130

6              ATTORNEYS FOR TRANSOCEAN

7

8         GODWIN RONQUILLO
          (BY:  FLOYD R. HARTLEY, JR., ESQUIRE)
          1201 ELM STREET
9         SUITE 1700
          DALLAS, TEXAS 75270-2041

10

             ATTORNEYS FOR HALLIBURTON

11

12        BINGHAM McCUTCHEN
          (BY:  NANCY M. WILMS, ESQUIRE)
13              JESUS R. CHAVEZ, ESQUIRE)
          355 SOUTH GRAND AVENUE, SUITE 4400
14        LOS ANGELES, CALIFORNIA 90071-2106

15             ATTORNEYS FOR ANADARKO PETROLEUM
               AND MOEX OFFSHORE 2007, LLC

16

17        JONES, WALKER, WAECHTER, POITEVENT,
          CARRERE & DENEGRE, LLP
18        (BY:  THOMAS M. NOSEWICZ, ESQUIRE)
          201 ST. CHARLES AVENUE
19        NEW ORLEANS, LOUISIANA 70170-5100

20             ATTORNEYS FOR WEATHERFORD

21

22        BECK, REDDEN & SECREST, LLP
          (BY:  ERIC J.R. NICHOLS, ESQUIRE)
          515 CONGRESS AVENUE, SUITE 1750
23        AUSTIN, TEXAS 78701

24             ATTORNEYS FOR CAMERON
               INTERNATIONAL CORPORATION

25

1    **APPEARANCES (Continued):**

2

3        MORGAN, LEWIS
         (BY:  PAUL E. KRIEGER, ESQUIRE)
4        1000 LOUISIANA STREET, SUITE 400
         HOUSTON, TEXAS 77002-5006
5
             ATTORNEYS FOR M-I, LLC
6

7        WARE, JACKSON, LEE & CHAMBERS, LLP
         (BY:  WENDY WARE BISHOP, ESQUIRE)
8        AMERICA TOWER
         2929 ALLEN PARKWAY
9        HOUSTON, TEXAS 77019

10            ATTORNEYS FOR DRIL-QUIP

11

12

13

14   **ALSO PRESENT:**

15

         KARL STIEGMAN, CLVS
16       DEPO-VUE, INC.

17

18

19   **REPORTED BY:**

20

         DIANE TEWIS CLARK, RPR, RMR, CRR
21       CERTIFIED COURT REPORTER
         LOUISIANA LICENSE NO. 73005
22       ARKANSAS LICENSE NO. 672

23

24

25

```
 1              A.      Yes.
 2              Q.      Since 2000, have you been the
 3    employee of any particular company?
 4              A.      No.
 5              Q.      Generally speaking, what
 6    services do you provide as a drilling
 7    consultant?
 8              A.      As a drilling consultant, I
 9    provide well planning services.
10              Q.      And well planning services means
11    the design of the well?
12              A.      Yes.
13              Q.      Does it mean anything else?
14              A.      No.  So let me clarify.  Design
15    of the well, then we would follow the
16    drilling of the well for that operator to
17    basically follow the design through until its
18    conclusion.
19              Q.      And did you provide services to
20    operators and nonoperators or just to
21    operators?
22              A.      Just to operators.
23              Q.      Do you have a CV or résumé?
24              A.      I do, yes.
25              Q.      And if I was to ask your lawyer
```

```
 1    for a copy of that, you have one readily
 2    available?
 3          A.      Not right with me, no.
 4          Q.      Available as you can get it
 5    within a day or two if I ask for it?
 6          A.      More than likely it would be
 7    about a week.
 8          Q.      Okay.  Fair enough.  Can you
 9    give me a list of the companies that you've
10    provided consulting services for?
11          A.      I began with Kerr-McGee in
12    Houston.  When Kerr-McGee was combined with
13    Anadarko, I just continued my role on
14    through the merger and have continued with
15    Anadarko ever since.
16          Q.      Have you provided -- excuse me,
17    have you provided drilling consulting
18    services for any other companies?
19          A.      No, I have not.
20          Q.      Have you ever been an employee
21    of Anadarko Petroleum Corporation?
22          A.      I have not.
23          Q.      So when did you start providing
24    drilling consulting services for Anadarko,
25    about 2002?
```

1          A.        Approximately 2002.

2          Q.        When I say Anadarko in that

3    context, it was Kerr-McGee followed by

4    Anadarko?

5          A.        Yes.

6          Q.        And since you started in 2003

7    with Kerr-McGee as a drilling consultant, has

8    your title always been drilling consultant?

9          A.        I believe my title is drilling

10   engineering consultant on my card.

11         Q.        A minute ago you told me that

12   your general responsibilities as a drilling

13   consultant are well planning services which

14   include well design and the following

15   drilling to conclusion, correct?

16         A.        Correct.

17         Q.        And are those the services that

18   you provided to Kerr-McGee and Anadarko.

19         A.        That's correct.

20         Q.        We'll get into the nuances of

21   Macondo in a second, but generally speaking

22   those are the services you're providing, is

23   that correct?

24         A.        That's correct.  There would

25   also be, you know, in this time of -- where

# **REPORTER'S CERTIFICATE**

       I, Diane Tewis Clark, RPR, RMR, CRR, Certified Court Reporter, State of Louisiana, do hereby certify that above-named witness, after having been duly sworn by me to testify to the truth, did testify as hereinabove set forth;

       That this testimony was reported by me in the stenotype reporting method and transcribed thereafter by me on computer, and that same is a true and correct transcript to the best of my ability and understanding;

       That I am not of counsel, nor related to counsel or the parties hereto, and in no way interested in the outcome of this matter.

_____

Diane Tewis Clark, RPR, RMR, CRR
    Certified Court Reporter