

**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

GodwinRonquillo.com

JENNY L. MARTINEZ - SHAREHOLDER
DIRECT DIAL:     214.939.4620
DIRECT FAX:      214.527.3119
JMartinez@GodwinRonquillo.com

August 9, 2011

Barbara M. Harding
Kirkland & Ellis, LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

   Re: *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179

Dear Barbara,

  I write in response to your letter dated July 22, 2011, concerning Halliburton Energy Services, Inc.'s ("HESI") Responses and Objections to BP's First Set of Interrogatories ("HESI's Responses").  I also write to preliminarily respond to the BP Parties' Responses and Objections to Halliburton Energy Services, Inc.'s Interrogatories ("BP's Responses"), which were received on August 1, 2011, at 11:49 p.m.

## DEPOSITION PAGE DESIGNATIONS

  BP complains about HESI's citation to deposition testimony in its Responses to Interrogatories No. 1, 2, 4, 15, 19, and 23.  However, in BP's Response to Interrogatory No. 15, BP refers HESI to "the deposition testimony of Mike Byrd and Fereidoun Abbassian."  In exchange for BP's agreement to provide page designations for testimony responsive to HESI's Interrogatory No. 15, HESI will agree to provide page designations for the depositions cited in response to BP's Interrogatories No. 1, 2, 4, 15, 19, and 23.

## REFERENCES TO RESPONSIVE DOCUMENTS

  BP complains about HESI's Responses to the extent that they reference documents.  BP's complaint is inconsistent with BP's Interrogatories and with BP's Responses.  In BP's Interrogatories (Nos. 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22), BP specifically requests that HESI identify responsive documents.  In addition, BP references documents in BP's Responses to Nos. 1, 5, 10, 12, 13, 14, 15, 17, 21, 25, and 26.

  Furthermore, HESI's Responses are not improper.  Rule 33(d)(1) requires the responding party to specify records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." FED. R. CIV. P. 33(d)(1).  HESI satisfies

**GODWIN RONQUILLO PC**

Barbara M. Harding
August 9, 2011
Page 2

this requirement by clearly identifying responsive documents by bates-number range. *See e.g.* HESI's Resp. No. 3. BP's suggestion that HESI has "merely referenc[ed] masses of documents" is incorrect. All documents identified are responsive, and the number of documents identified is reasonable given the breadth of BP's Interrogatories.

Moreover, the authorities you cite do not support your criticism of HESI's document references. Your quoted description of "references mak[ing] it impossible to determine whether an adequate answer has been given without an elaborate comparison of the answers" actually refers to a response only "generally referring" to deposition testimony, including "the depositions of all witnesses taken in this case and all Discovery responses filed in this matter." *See Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991) (quoted in *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000) (quoted in *United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007))). HESI's Responses are complete in themselves, and they reference specific documents when such documents are responsive. In contrast, BP's Responses to Nos. 1, 10, 12, 13, 14, and 25 are more akin to the responses criticized in *Smith*.

BP is also substantially in the same position as HESI to review the documents and ascertain for itself how they are responsive. To date, BP has participated in approximately 185 depositions and deposed eighteen HESI employees about the very same issues raised by the referenced Interrogatories. BP has proven itself fully capable of reviewing the specific documents HESI directed it to in May, without being spoon-fed by HESI regarding the exact relevance of each document.

## IDENTIFYING WITNESSES

Regarding BP's argument that HESI fails to identify "all" witnesses with relevant knowledge in response to certain Interrogatories, HESI properly objected pursuant to FED. R. CIV. P. 33(b)(3) because identifying "all" witnesses with relevant knowledge of broad topics and/or events involving hundreds of people is unduly burdensome (if not impossible). HESI has made reasonable and good faith efforts to identify individuals with relevant knowledge in its Responses to Interrogatories No. 2, 8, 9, 10, 11, 13, and 14. Further, the Court's case management process of identifying and winnowing the lists of deponents, experts, and trial witnesses eliminates the need for exhaustive lists of potential witnesses at this stage in the litigation.

## INTERROGATORIES NO. 8, 9, and 10

BP also complains that HESI's Responses to Nos. 8, 9, and 10 fail to identify documents. As with witness identification, BP's request for "all" documents is overly broad and HESI properly objected. Interrogatory No. 8 essentially requests HESI to identify all documents related to the Phase One trial — the cause of the Incident — while Interrogatory No. 10 requests HESI to identify all documents supporting its contention that it is not at fault. Despite the over-

**GODWIN RONQUILLO PC**

Barbara M. Harding
August 9, 2011
Page 3

breadth of these interrogatories, HESI provided substantive responses, subject to its objections. The Response to Interrogatory No. 9 directs BP to the applicable standard of the American Petroleum Institute and provides a detailed explanation of HESI's contention that conditioning a cement slurry is appropriate. The Response to No. 8 is likewise substantive. The Response to duplicative Interrogatory No. 10 properly incorporates HESI's Responses to overlapping Interrogatories No. 6, 7, and 8. *Cf. United States ex rel. O'Connell*, 245 F.R.D. at 650 (referencing partial answer to *dissimilar* interrogatory is insufficient). HESI stands by its objections to these Interrogatories and the quality of its Responses.

## INTERROGATORY NO. 11

As for Interrogatory No. 11, BP incorrectly states that the Response references only one document. The Response directs BP to four separate letters from HESI's counsel to the National Commission. These letters provide a detailed description of the factual and legal bases for HESI's criticisms of the National Commission, as well as specific documents, witnesses, testimony, and industry standards. HESI's reference to these detailed letters is a proper response to Interrogatory No. 11. *Cf. Scaife*, 191 F.R.D. at 594 (referencing a document that *does not* answer the question posed is insufficient).

## INTERROGATORIES NO. 16, 17, and 18

Although BP lists HESI's Responses to Interrogatories No. 16-19 as "confusing and evasive," it only offers detailed complaints about Nos. 16-18. Accordingly, HESI presumes the numbering in the heading is a typographical error. Interrogatories No. 16-18 seek irrelevant information about other wells. As stated in my July 26, 2011 letter to you, requests related to wells other than the Macondo Well are a distraction to the parties' preparations for a February 2012 trial. Based upon BP's Responses, it appears to share this view. *See* BP Resp. Nos. 4, 5, 6 (objecting to interrogatories seeking information beyond that "directly related to the Macondo Well"). HESI stands by its multiple objections to these Interrogatories.

## PRELIMINARY ISSUES WITH BP'S RESPONSES TO HESI'S INTERROGATORIES

HESI's preliminary review of BP's Responses raise the following issues:

**Broad references to documents.** Referencing a large document in response to a specific interrogatory is insufficient. An answer to an interrogatory should be complete in itself, and "should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Smith*, 139 F.R.D. at 650 (citing 4A J. Moore, J. Lucas, Moore's Federal Practice § 33.25[1] (2d ed. 1991)). Multiple BP Responses reference large documents broadly, such as:

**GODWIN RONQUILLO PC**

Barbara M. Harding
August 9, 2011
Page 4

- *The Deepwater Horizon Accident Investigation Report*, including "its appendices, and the backup materials and analyses produced in support thereof," *see* BP Resp. to Nos. 1, 12, 13, 14, and 15; *see also* BP Resp. to Nos. 21 and 25 (citing to the Bly Report with a quotation, but not fully answering the question);
- *The IIT Report*[1] and its back up materials, *see* BP Resp. to Nos. 1, 10, 12, 13, 14, and 25;
- BOEMRE publicly available documents, *see* BP Resp. to No. 5;
- The Drilling Contract with Transocean, *see* BP Resp. to No. 27;
- Final Report provided by Det Norske Veritas ("DNV Report"), *see* BP Resp. to Nos. 14 and 15.

Please specify the bates labels for the documents that constitute "back up materials" and those that constitute "analyses in support thereof".  Please also specify which "publicly available" documents are referenced in Response to No. 5.

With respect to the Bly Report, the Drilling Contract, and the DNV Report, if BP believes these documents fully and completely answer a given Interrogatory, *please specify what pages* of the documents contain such answers.  If the document only partially answers the Interrogatory, please clarify and provide a complete response.

Numerous BP Responses reference the DNV Report, but disclaim any accuracy of that report.  *See* BP Resp. to Nos. 14, 15.  Citing to a report, but disclaiming the report's accuracy is meaningless.  If BP believes that certain provisions of the report provide answers to any of the Interrogatories, please identify the relevant page numbers.

**Bly Report Findings.**  HESI asked whether BP, its employees, agents, and consultants agree with the narrative and findings in the Bly Report.  *See* BP Resp. to Nos. 30 and 31.  BP responds by referencing its answer to HESI's Request for Production ("RFP") No. 42; however, BP's response to RFP No. 42 contains only objections.  If BP is aware of any employees, agents, or consultants that do not agree with the Bly Report's narrative and findings, please identify them.  If BP is unaware of any employees, agents, or consultants who disagree with the Bly Report, please state so.  HESI is entitled to verified responses and not mere references to RFP objections.

**References to Pleadings.**  Several of your responses broadly reference your answers, cross-claims, and other pleadings.  *See* BP Resp. to Nos. 1, 12, 13, 15, 29.  For the reasons noted

---

[1] Is the "IIT Report" different than the "Deepwater Horizon Accident Investigation Report"?  BP cites to both reports in its Responses to 1, 12, and 13.  I assume both names refer to the Bly Report.  If I am incorrect, please provide the bates ranges for each report.

**GODWIN RONQUILLO PC**

Barbara M. Harding
August 9, 2011
Page 5

above, such responses are insufficient. Please provide full and complete answers to these Interrogatories.

**Sands and Pore Pressure.** BP's Response to No. 10 lists the "estimated sands in the Macondo Well and pressure (in psi)". This list is contrary to the sand pressure table prepared by Martin Albertin and circulated within BP on April 22, 2010, which identifies the sands located at 17467'-17478' (MD) and 17804'-17806' (MD). *See* Dep. Ex. 3741. The list is also contrary to the deposition testimony of Galina Skripnikova, who identified the sands located at 17467'-17478' (MD) and 17804'-17806' (MD). *See* Skripnikova Depo. Day 1 at 70:16-23; 72:11-73:4; 73:23-74:7; 74:12-15; 207:13-208:5; and 335:21. Please explain these discrepancies. If BP's definition of "sands" is the reason for the discrepancies, please provide BP's exact definition of "sands" and explain the difference between that definition and that of Mr. Albertin and Ms. Skripnikova.

**Nitrogen breakout.** In Interrogatory No. 20, HESI asks BP "what occurred as a result of the instability [of the cement used on the 9 7/8" x 7" production casing]"? BP's conclusory Response provides that "the foam slurry experienced nitrogen breakout" and that "the nitrogen breakout caused the cement to fail to isolate and prevent the flow of hydrocarbons . . ." Please provide an explanation as to how nitrogen breakout "caused" the cement to fail to isolate and prevent the flow of hydrocarbons.

**BP Engineers' Roles and Responsibilities.** In Interrogatory No. 20, HESI asked BP to identify the job roles and responsibilities of the BP engineers as they relate to cementing. BP's Response references its response to the PSC's Interrogatory No. 28. BP's response to the PSC's Interrogatory No. 28, however, fails to identify any roles or responsibilities. This is not surprising since the PSC did not ask BP to identify any roles or responsibilities. Please supplement your response by identifying such roles and responsibilities. If BP contends that its engineers had no job roles or responsibilities related to cementing, please state so.

As we review BP's Responses in more detail, I will forward additional requests for complete responses. In the interest of time and the August 15 deadline for motions to compel, I wanted to send you our concerns as soon as possible to facilitate our meet and confers on these discovery issue. I look forward to our continuing cooperation.

Best regards,

*Jenny Martinez*
Jenny L. Martinez

cc:   Donald E. Godwin
      R. Alan York
      Carolyn R. Raines

1724635 v1-24010/0002 CORR