**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL NO. 2179 |
| | * | |
| | * | SECTION J |
| | * | |
| | * | |
| This document relates to: | * | Judge Barbier |
| | * | |
| *All cases* | * | Magistrate Judge Shushan |
| | * | |

**THE BP PARTIES' REPLY IN SUPPORT
OF THEIR MOTION TO COMPEL AGAINST TRANSOCEAN**

Transocean's Opposition fails to establish privilege over hundreds or thousands of documents listed on its privilege log.  *First*, Transocean's Opposition mostly ignores the hundreds of documents related to its investigation for which it claims only work product privilege.  Under established case law, Transocean has waived any work product privilege over these documents.  Transocean's attempt to avoid this result by arguing that the Report has not been used "offensively" fails in light of the facts:  The PSC has used the Report against BP, the Report furthers Transocean's own claims against BP, and Transocean selectively determined what issues the investigation and Report would examine.

*Second*, Transocean claims that every single draft of its Report – some 3200 to 3500 documents – was intended to be reviewed by attorneys and so is an attorney-client communication.  The BP Parties agree that Transocean need not provide drafts with attorney comments, but it should produce all others that do not show counsel's advice.  The Report is a public document that Transocean claims "does not represent the legal position of Transocean, nor does it attempt to assign legal responsibility or fault."  (Ex. A at 9)  It should be treated as any other business document for purposes of privilege analysis.  Actual advice from counsel can

be withheld, but allowing Transocean to withhold drafts as privileged simply because someone purportedly intended to show them to attorneys for review contradicts established law.  Under Transocean's logic, any party could claim privilege over any document merely by asserting that it was intended to be routed to counsel.

*Third*, Transocean has failed to justify its privilege claims where it does not list an author on its privilege log, or where the sole "author" identified is "DWH Investigation Team."  Author and recipient information is critical in determining whether a party has established a privilege, as both the Federal Rules of Civil Procedure and the Court's order state.  This is especially true for "DWH Investigation Team" documents, which presumably were created as part of Transocean's investigation and so are not privileged unless Transocean can establish attorney involvement.[1]  Although the BP Parties are willing to compromise by no longer seeking production of certain documents,[2] Transocean's privilege log continues to list hundreds of documents over which no privilege has been properly established.

---

[1]  Regarding Transocean's request-for-admission ("RFA") responses, the BP Parties stand by the case law and arguments in their original Memorandum.  Nevertheless, because Transocean has provided supplemental RFA responses, this issue will not be discussed further in this Reply.

[2]  Even though the BP Parties raised the issues addressed in their motion to compel with Transocean in early July, Transocean did not explain the basis for its privilege claims until filing its Opposition.  Transocean's Opposition also agrees to produce various documents.  (See Opp. at 6 n. 5, 18 n. 9)  In a spirit of cooperation and compromise, the BP Parties are withdrawing requests for certain documents where the entries do not list group authors even though Transocean's privilege log entries do not comply with federal rules, implementing case law, or this Court's order.   Specifically, given Transocean's representations that the correspondence on its privilege log with Prospect, DNV, GL Denton, and Financial Dynamics does not involve work related to the investigation, the BP Parties do not seek such documents.  (Opp. Ex. 2 ¶ 9)  Similarly, the BP Parties do not seek documents whose description states that they were prepared for Oil Spill Commission ("OSC") proceedings, Joint Investigation Team ("JIT") hearings, or Congressional hearings.  (Id. ¶5)  Because Transocean admits that Bullfighter Design and Torma Communications provided services in connection with the internal investigation report (*id.* ¶10), the BP Parties seek documents from those consultants unless their content is limited to issues such as the OSC, JIT, or Congressional hearings.  Attached to this Reply is an appendix listing the documents that the BP Parties continue to seek.

I.   **PUBLISHING THE REPORT WAIVED WORK PRODUCT PRIVILEGE FOR MATERIALS RELATED TO TRANSOCEAN'S INVESTIGATION.**

Transocean almost ignores the BP Parties' argument that by publishing the Report Transocean has waived privilege where the documents are "(i) related to Transocean's internal investigation, (ii) where the only claim of privilege is work product, and (iii) whose description does not assert that they were prepared at the direction of counsel." (Memo. at 11)  Even with Transocean's agreement to produce certain documents and the BP Parties' decision to withdraw certain requests, approximately 262 documents on Transocean's privilege log fall into this category.  Examples include entries 231, 234, 241, 243, and 244 listed as "Draft memorandum re: DWH equipment prepared for DWH investigation in anticipation of litigation"; entries 524 and 525 described as "Draft memorandum re DWH investigation prepared in anticipation of litigation"; and entries 610-613 bearing the description "Communication re: DWH equipment prepared in connection with DWH investigation in anticipation of litigation."  None of these entries identifies an attorney involved in the document's preparation.  (Ex. B)

Unless an attorney was involved in the preparation of such a document, publication of the Report waived Transocean's right to rely on work product protection for the underlying documents.  (Memo. at 8)  Transocean's Opposition does not attempt to dispute the authorities cited by the BP Parties for this proposition.  Instead, Transocean claims that the Report has not been used offensively, but this contention is rebutted by the facts.

Parties including the PSC already have used the Report against BP.  (Memo. at 10) Furthermore, Transocean undoubtedly was aware prior to releasing the Report that other litigants would use its heavily slanted conclusions against BP.  Moreover, the PSC's offensive use of Transocean's report benefitted Transocean's own claims and defenses in this litigation.  Two months before publishing the Report, Transocean filed a complaint against BP expressly

incorporating the PSC's allegations against BP in its own claims.  (Dkt. No. 2068 ¶ 55)  Thus, the PSC's offensive use of Report's findings also is an offensive use in favor of Transocean's claims against BP.

In addition, recent depositions of Transocean's internal investigation team members establish the investigation's selective use and disclosure of evidence.  For example, Transocean's counsel sought to claw back a document authored by investigation team member Robert Tiano concerning blowout preventer ("BOP") information.  (Ex. Q, R. Tiano Dep. at 120:23-124:12)  Mr. Tiano also testified that he did not look into certain information concerning Transocean's negative test procedures as part of the investigation – even though the Report discusses the negative tests and attempts to blame BP for their interpretation.  He did, however, look into these issues at the direction of counsel.  (*Id.* at 215:22-218:2)  Similarly, investigation team member Perrin Roller testified that Transocean's investigation did not look into whether the *Deepwater Horizon's* drilling crew's activities complied with Transocean's well control manual.  (Ex. R, P. Roller Dep. at 177:8-182:24)  This evidence indicates that Transocean limited the investigation's focus to emphasize its offensive potential against BP and other parties while downplaying Transocean's role in the incident.  As a matter of fundamental fairness, BP is entitled to defend itself against the purported findings in the Report by reviewing the underlying work product.

## II.  TRANSOCEAN SHOULD PRODUCE DRAFTS OF ITS REPORT THAT DO NOT INCLUDE ATTORNEY COMMENTS.

Transocean asserts attorney-client privilege over 3200 to 3500 documents constituting drafts of its internal investigation report.  Transocean does not simply claim that some drafts contain attorney comments and therefore are shielded from production.  Instead Transocean asserts that *each and every* draft is attorney-client privileged simply because it intended attorneys

"embedded with the internal investigation team" to review all drafts.  (Opp. at 4-5)  This claim of privilege is overbroad and should be rejected.

To be protected by attorney-client privilege, a document must embody communications made to attorneys solely for the purpose of seeking legal advice or received from counsel rendering such legal advice.  *Upjohn Co. v. United States,* 449 U.S. 383, 394-95 (1981).  *Legal advice* must be distinguished from *business advice*.  Only the former is protected by the attorney-client privilege.  *See In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1037 (2d Cir. 1984), *In re County of Erie,* 473 F.3d 413, 420 (2d Cir. 2007); *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997).

Transocean's current claim that attorneys were heavily involved in giving legal advice regarding its Report is inconsistent with the language of the Report itself.  The Report asserts that the investigation team was composed of "experts from relevant technical fields and specialists in accident investigation" and that the "report does not represent the legal position of Transocean, nor does it attempt to assign legal responsibility or fault."  (Ex. A at 9)  Transocean's Report purports to have been created for entirely business purposes:  "to gather, review, and analyze the facts…surrounding the incident to determine its causes".  (Ex. A at 9)  Indeed, Transocean asserts it was not prepared for use in litigation.  (Opp. at 4, 10-11)

Thus, the Report is distinct from documents whose creation is compelled by legal authority, such as tax returns, disclosure statements, prospectuses or regulatory filings.  Nor is the Report a legal document, such as a legal memorandum, pleading, or an expert report.  Many of the cases cited by Transocean involved final documents which are highly legal in nature.  *E.g.*, *In re Vioxx Products Liab. Litig.,* 501 F. Supp. 2d 789, 802-03 (E.D. La. 2007) (drafts of

response to warning letters from FDA alleging violation), *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.,* No. Civ. A. 03-1664, et al., 2004 WL 1299042, at *21 (E.D. La. June 4, 2004) (SEC filing), *AT&T Corp.*, 2003 WL 21212614, at *3 (patents and drafts thereof).   Such documents require legal advice and communications protected by the attorney-client privilege.   By contrast, Transocean should be held to its own claims concerning the Report:  that it summarizes an investigation voluntarily undertaken for business purposes and for which the company disclaims any litigation-related purpose (notwithstanding the fact that the Report has been and will be used against BP in this litigation).

The only argument that Transocean offers is that it intended for counsel to review each draft and that they "reviewed the vast majority of the drafts."  (Opp. at 5)  The mere transmittal of documents to counsel is insufficient to establish the necessary communication to trigger the protection of privilege.  *Freeport*, 2004 WL 1299042, at *5-6 (merely transmitting documents to an attorney do not make them privileged); *Westside-Marrero Jeep Eagle, Inc.*, No. Civ. A. 97-3012, 1998 WL 310779, at *1 (E.D. La. June 10, 1998) (even transmitting documents at the request of counsel does not, without more, make the documents privileged); *United States Postal Service v. Phelps Dodge Ref. Corp.,* 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) (documents do not attain privileged status solely because counsel are "copied in"); *Andritz,* 174 F.R.D. at 633. If Transocean were correct, any document generated in the normal course of business could be transformed into a protected communication simply by routing it through an attorney.  This is not the law.  *Radiant Burners, Inc. v. Am. Gas Ass'n,* 320 F.2d 314, 324 (7th Cir. 1963) (corporation cannot funnel documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 R.F.D. 312, 316 (N.D. Ill. 2010); *Freeport*, 2004 WL 1299042, at *16.

Second, Transocean ignores the distinction between *communication* and *information*. Only the former is protected by the attorney-client privilege. *In re Grand Jury Subpoena,* 731 F.2d at 1037 (the privilege does not impede the disclosure of information), *United States v. Cunningham,* 672 F.2d 1064, 1073 (2d Cir. 1982) (same). The privilege protects only the communication itself which is rendered by or between counsel and clients, not the facts which are communicated. *Andritz,* 174 F.R.D. at 633 (facts gathered by counsel in the course of investigating are not privileged), *Upjohn,* 449 U.S. at 395-96. Here, Transocean's Report – and presumably the drafts of that Report – purports to convey factual information. The BP Parties are entitled to that information.[3]

## III.   TRANSOCEAN HAS NOT ESTABLISHED PRIVILEGE FOR DOCUMENTS WHERE IT HAS NOT INCLUDED INDIVIDUAL AUTHOR INFORMATION.

For hundreds of entries at issue, Transocean has not provided individual author information. Transocean has failed to provide opposing parties, as well as this Court, enough information to assess the validity of its privilege claims for hundreds of documents in violation of Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii), as well as this Court's order, PTO 14 ¶ 3(e). The appropriate sanction is to order Transocean to produce the documents referenced in the deficient entries.

In *Pacific Gas & Elec. Co. v. United States.*, 69 Fed. Cl. 784 (2006) the plaintiff ascribed authorship of each of the documents in question to either "Pacific Gas & Electric Company" or "None." *Id.* at 812. The plaintiff gave as a description for these documents "Recommendations and Legal Analysis" or similar language. *Id.* The court held that these privilege log entries were

---

[3]   To be clear, the BP Parties are not seeking drafts of the Report that actually include comments of counsel, but do seek all other drafts, including drafts sent to counsel.

insufficient to determine whether the privilege had been established, and ordered the plaintiff to produce the documents.  *Id*. at 813.

*Pacific Gas* is on all fours with the circumstances on this motion.  For the documents at issue, Transocean's privilege log provides either no author or a group "DWH Investigation Team" author, and its descriptions are generally equally vague and unenlightening.  *See e.g.* Ex. B, privilege log entry 2437 ("Tracking log prepared at the direction of counsel in anticipation of litigation"); entries 1879, 1896-97, 1899-1925 ("Check list for draft report prepared under supervision of counsel and in anticipation of litigation"); entry 1292 ("List of documents prepared under supervision of counsel and in anticipation of litigation").  This Court should follow *Pacific Gas* and the other cases cited by the BP Parties in their Memorandum, and order Transocean to produce the remaining documents at issue.

Transocean's reliance on the other cases it cites for the proposition that it need not provide author and recipient information (Opp. at 17) is similarly misplaced.  In *Fidelity & Deposit Co.*, the plaintiff's privilege log included four telephone messages and a handwritten note that did not list an author.  *Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996). The court *agreed* with the defendants challenging the sufficiency of the entries, holding that, where no author is listed, the plaintiff must "describe the content of the documents such that they and th[e] [c]ourt may better assess the applicability of the privilege" and requiring plaintiffs to supplement their log.  *Id*. at 523, 527.

In *Rockwell*, the privilege log entries made clear that the documents in question were prepared by counsel, either inhouse or outside, and under this narrow circumstance the court held that the entries were sufficient.  *Rockwell Automation, Inc. v. GGSI Liquidation, Inc.*, No. 00 Civ. 8763 (RMB) (DFE) 2003 WL 22227968, at *3 (S.D.N.Y Sept. 25, 2003).  In contrast,

Transocean's privilege log lists hundreds of entries that give either "DWH Investigation Team" as the author, or give no author information at all, without any indication that the documents were prepared by counsel.

In *U.S. Information Systems*, the court held that the privilege log was adequate where authorship was ascribed to "USIS" and the identity of the specific individual could not be ascertained.  *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers*, 2002 WL 31093619, at *1 (S.D.N.Y. Sept. 17, 2002 Sept. 12, 2002).  Here, Transocean claims that "with respect to some of the drafts" determining who wrote or revised particular drafts is "difficult" because multiple persons may have worked on them.  (Opp. Ex. 2 ¶ 7)  Yet Transocean does not explain why it cannot list all of the persons who worked on each draft as its authors.  Moreover, Transocean's argument sets up perverse incentives:  failing to keep track of authors such that identification is more "difficult" would allow a party to claim privilege more easily than one that kept proper records.  In addition, Transocean does not address that its privilege log includes numerous emails that fail to detail an author, a recipient, or both.  Author and recipient are two characteristic features of email and should not be difficult for Transocean to ascertain.  For example, approximately 27 of these email entries give neither a specific author nor a specific recipient, and are described as "[c]ommunication[s] with third party consultant, Bullfighter Design."  These entries do not even specify whether Bullfighter Design sent or received the email.  Yet Transocean holds up these very entries as examples of it meeting its obligations under FRCP 26 and PTO 14.  (Opp. at 16-17)  Ultimately, Transocean bears the burden of establishing that such documents are privileged, and by failing to provide key information on authors and recipients it has failed to satisfy this obligation.

Finally, the circumstances of this case accentuate the need for Transocean's privilege log to include accurate author and recipient information.  As explained in Section I and the Memo, Transocean has waived any work product privilege for materials related to its internal investigation.  Unless Transocean can establish attorney-client privilege or "opinion" work product, these documents should be produced.  Determining whether these privileges apply requires accurate information regarding whether attorneys authored the document.

## CONCLUSION

Despite Transocean's erroneous legal position regarding privilege and the information required in privilege logs, the BP Parties are willing to narrow their original requests.  Nevertheless, Transocean refuses to produce hundreds or thousands of relevant documents to which no privilege replies.  For the reasons described in the BP Parties' Memorandum and this Reply, Transocean should be required to produce the documents listed in the attached appendix.

Date:  August 29, 2011                     Respectfully submitted,


                                           /s/ Don K. Haycraft
                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #16984)
                                           Liskow & Lewis
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108

                                           and

                                           Richard C. Godfrey, P.C.
                                           J. Andrew Langan, P.C.
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200

                                           Robert C. "Mike" Brock
                                           Covington & Burling LLP
                                           1201 Pennsylvania Avenue, NW
                                           Washington, DC 20004-2401
                                           Telephone: (202) 662-5985

                                           *Attorneys for BP Exploration & Production
                                           Inc. and BP America Production Company*

11

## APPENDIX TO THE BP PARTIES' REPLY IN SUPPORT
## OF THEIR MOTION TO COMPEL AGAINST TRANSOCEAN

This Appendix summarizes the entries on Transocean's Seventh Supplemental Privilege Log that are still at issue between the parties given that Transocean has agreed to produce certain documents (Opp. at 6 n. 5, 18 n. 9) and the BP Parties have agreed to withdraw certain requests now that Transocean has finally explained the basis for some of its privilege claims (Reply at 2 n. 2). The lists in this appendix replace the lists in paragraphs 1 and 2 of the BP Parties' Motion to Compel ("Motion").

In place of paragraph 1 of the Motion, the BP Parties request that the Court order Transocean to produce all documents on its privilege log (i) related to Transocean's internal investigation, (ii) where the only claim of privilege is work product, and (iii) whose description does not assert that they were prepared at the direction of counsel, including entries 101, 101a, 116, 122, 131-135, 139-142, 147, 148, 150, 154, 161, 165, 173-175, 192, 201, 221-224, 226, 231, 234, 241, 243, 244, 319, 320, 327-329, 331-416, 419, 423-426, 445, 493-511, 523, 524, 532, 537, 551, 552, 554-557, 576-578, 585-587, 591, 594, 598-613, 622, 623, 760, 763, 766-769, 771, 773-775, 796, 797, 802-806, 810, 812, 1040, 1041, 1042, 1044, 1051, 1054, 1055, 1058-1062, 1069-1072, 1075, 1076, 1078, 1080, 1082, 1084-1092, 1100, 1101, 1103, 1104, 1126, 1128, 1136, 1137, 1139, 1140, 1143, 1144, 1146-1149, 1985, 1986, 1988-1990, 1992, 1994, 1995, 1997, 2585, 2625.

In place of paragraph 2 of the Motion, the BP Parties request that the Court order Transocean to produce documents where the author is described as "DWH Investigation Team," subject to the exceptions in Reply at 2 n. 2, including 122, 154, 161, 165, 192, 201, 215, 221-224, 226, 231, 234, 241, 243, 244, 319, 320, 423, 425, 426, 445, 479, 480, 486, 487, 489, 492, 493, 495-511, 519, 523, 524, 527, 532, 537, 558, 559, 562, 563, 565-568, 585-587, 591, 594, 615, 622, 623, 628, 629, 633-635, 638-647, 655-658, 660, 661, 663-677, 681, 755-757, 760, 763, 766, 767, 769, 773-775, 781-785, 787, 789, 796, 797, 802-806, 810, 812, 911, 912, 933, 934, 939, 944, 945, 947, 949, 973-979, 981, 985-987, 989-991, 999-1002, 1016-1021, 1024, 1028, 1029, 1031, 1036, 1041, 1042, 1091, 1092, 1229, 1285, 1289, 1290, 1292, 1302, 1303, 1305, 1326, 1330, 1353, 1354, 1376-1378, 1380-1382, 1384, 1386-1393, 1395, 1400-1405, 1418, 1463, 1496, 1498, 1542, 1545, 1566-1578, 1582, 1583, 1585-1587, 1589-1591, 1602, 1661-1666, 1674, 1676-1679, 1682, 1690-1694, 1696-1703, 1710, 1715-1717, 1719, 1720, 1724-1741, 1786-1793, 1795, 1796, 1812, 1814-1816, 1828-1841, 1853, 1859, 1860, 1878, 1879, 1881, 1882, 1886-1889, 1891, 1896, 1897, 1899-1926, 1928, 1929, 1931, 1932, 1947-1949, 1962, 1966-1973, 1975, 1976, 1982-1990, 1992-1997, 2000, 2001, 2005-2015, 2020, 2022-2040, 2042, 2046, 2047, 2102, 2110, 2111, 2114, 2115, 2400, 2401, 2973. These include the Report drafts logged under entry 2973 unless they contain the comments of counsel. The BP Parties also request that the Court order Transocean to produce documents where Transocean has failed to identify any author, subject to the exceptions in Reply at 2 n. 2, including 2117, 2120, 2122, 2137, 2152, 2158, 2161-2163, 2168, 2169, 2175, 2177, 2179, 2181, 2189, 2190, 2191, 2197, 2199, 2202-2230, 2399, 2428, 2430, 2437, 2443, 2513, 2540, 2559, 2562, 2565, 2623, 2624, 2648, 2655, 2656, 2661, 2674, 2696, 2697, 2700, 2703-2720, 2763, 2779, 2785, 2793, 2798, 2800, 2806, 2809, 2811, 2813, 2957, 2970.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of August, 2011.

/s/ Don K. Haycraft
Don K. Haycraft