## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | Oil Spill by the Oil Rig "DEEPWATER HORIZON" | * | MDL NUMBER: 2179 |
| | In the Gulf of Mexico on April 20, 2010 | * | SECTION:   J |
| | | * | JUDGE: BARBIER |
| | Applies to:  *All cases* | | |
| | | * | MAGISTRATE: SALLY SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TRANSOCEAN'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN PLAINTIFFS' CLAIMS FOR FAILURE TO PARTICIPATE IN DISCOVERY AND ALTERNATIVE MOTION FOR A JUDICIAL DETERMINATION TERMINATING TRANSOCEAN'S OBLIGATION TO CONTINUE PAYING MAINTENANCE AND CURE

Respectfully submitted by,

By:         /s/ Steven L. Roberts
     Steven L. Roberts (Texas No.
     17019300)
     Rachel Giesber Clingman (Texas
     No. 00784125)
     Kent C. Sullivan (Texas No. 19487300)
     Teri L. Donaldson (Florida No. 784310)
     SUTHERLAND ASBILL &
     BRENNAN, LLP
     1001 Fannin Street, Ste. 3700
     Houston, TX  77002
     Telephone:    713.470.6100
     Facsimile:    713.654.1301
     E-mail:steven.roberts@sutherland.com,
     rachel.clingman@sutherland.com,
     kentsullivan@sutherland.com,
     terisdonaldson@sutherland.com

By:         /s/ Kerry J. Miller
     Kerry J. Miller (Louisiana No. 24562)
     FRILOT, L.L.C.
     1100 Poydras Street, Ste. 3700
     New Orleans, LA  70163
     Telephone:    504.599.8169
     Facsimile:    504.599.8154
     E-mail:      kmiller@frilot.com

and

By:         /s/ Edwin G. Preis, Jr.
     Edwin G. Preis, Jr. (Louisiana No. 10703)
     Edward F. Kohnke, IV (Louisiana
     No. 07824)
     Robert M. Kallam (Louisiana No. 20242)
     Anthony J. Lascaro (Louisiana No. 32546)
     PREIS & ROY, PLC
     102 Versailles Blvd., Ste. 400
     P. O. Drawer 94-C
     Lafayette, LA  70509
     Telephone:    337.237.6062
     Facsimile:    337.237.9129
     E-mail:      egp@preisroy.com
                efk@preisroy.com
                rmk@preisroy.com
                ajl@preisroy.com

Of counsel:

Daniel O. Goforth (Texas No. 08064000)
GOFORTH, GEREN, EASTERLING, L.L.P.
4900 Woodway, Ste. 750
Houston, TX  77056
Telephone:    713.650.0022
Facsimile:    713.650.1669
E-mail:      dangoforth@goforthlaw.com

John M. Elsley (Texas No. 0591950)
ROYSTON, RAZOR, VICKERY & WILLIAMS,
L.L.P.
711 Louisiana Street, Ste. 500
Houston, TX  77002
Telephone:    713.224.8380
Facsimile:     713.225.9945
E-mail:         john.elsley@roystonlaw.com


Brad D. Brian (California No. 79001)
Allen M. Katz (California No. 054933)
MUNGER, TOLLES & OLSON, L.L.P.
355 South Grand Ave., 35th Floor
Los Angeles, CA  90071
Telephone:    213.683.9100
Facsimile:     213.683.5180, 213.683.4018
E-mail:         brad.brian@mto.com
                   Allen.katz@mto.com


**Counsel for Triton Asset Leasing GmbH.,
Transocean Holdings L.L.C., Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.**

## <u>TABLE OF CONTENTS</u>

I.     Background ...........................................................................................................................

II.    Law and Argument .............................................................................................................

      A.    Plaintiffs' Claims Should Be Dismissed......................................................................

           1.    Transocean Is Entitled To Investigate And Corroborate Plaintiffs' Claims Through The Discovery Process ........................................................................

           2.    Plaintiffs Invocation Of The Fifth Amendment Right Against Self-Incrimination Was Improper ........................................................................

           3.    Plaintiffs' Claims Should Be Dismissed.............................................................

      B.    Alternatively, Plaintiffs' Maintenance And Cure Payments Should Be Terminated ....................................................................................................................

III.    Conclusion ..........................................................................................................................

## <u>TABLE OF AUTHORITIES</u>

### <u>JURISPRUDENCE</u>

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166
(5th Cir. 5/17/05) (emphasis added).. ...............................................................................

*In re Corrugated Container Antitrust Litigation*, 620 F.2d 1086 (5th Cir. 6/19/80)
(citing *Kastigar v. United States*, 406 U.S. 441, 444 (1972))...........................................

*Jenkins v. Aries Marine Corp.*, 590 F.Supp.2d 807 (E.D. La. 12/9/08). .........................................

*Johnson v. Cenac Towing, Inc.*, 559 F.Supp.2d 721 (E.D. La. 3/2/09)
(extensive internal citations omitted) .......................................................................…...

*Parker v. Jackup Boat Service, L.L.C.*, 542 F.Supp.2d 481
(E.D. La. 2/14/08)…………………………………………………………………………..

*United States v. Goodwin*, 625 F.2d 693 (5th Cir. 9/12/80)…………………………………

*Vaughan v. N.J. Atkinson*, 369 U.S. 527 (1962)………………………………………………

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084,  n.5 (5th Cir. 12/28/79)……………...

*Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472 (1972)…………………

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | Oil Spill by the Oil Rig<br>"DEEPWATER HORIZON"<br>In the Gulf of Mexico on<br>April 20, 2010 | * | MDL NO. 2179 |
| | | * | SECTION:   J |
| | | * | JUDGE BARBIER |
| Applies to: *All cases* | | * | MAG. JUDGE SHUSHAN |

**************************************************************************

## TRANSOCEAN'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN PLAINTIFFS' CLAIMS FOR FAILURE TO PARTICIPATE IN DISCOVERY AND ALTERNATIVE MOTION FOR A JUDICIAL DETERMINATION TERMINATING TRANSOCEAN'S OBLIGATION TO CONTINUE PAYING MAINTENANCE AND CURE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings L.L.C., Transocean Deepwater Inc., and Triton Asset Leasing GmbH (hereinafter sometimes collectively referred to as "Transocean"), by and through their undersigned counsel, who move this Honorable Court for an Order dismissing the claims of certain Plaintiffs in the above-captioned action who have asserted their Fifth Amendment right against self-incrimination in response to deposition questioning about their claims for maintenance and cure, and their claims for personal injury damages.  Alternatively, Transocean moves this Honorable Court for an Order terminating Transocean's obligation to continue paying maintenance and cure to all Plaintiffs in the above-captioned action who have asserted their Fifth Amendment right against self-incrimination in response to deposition questioning about their claims for maintenance and cure and personal injury damages.  In support thereof, Transocean would respectfully show this Honorable Court as follows:

- 3 -

I.    **BACKGROUND**

As this Honorable Court is well aware, the United States Department of Justice has commenced an investigation into the events surrounding the incident aboard the DEEPWATER HORIZON.  This investigation has, unfortunately, caused the specter of criminal charges to hang over the head of certain individuals.   Consequently, Plaintiffs in the above-captioned suit, including Andrea Fleytas, Allen Seraile, Stephen Bertone, James Ingram, and William "Bill" Johnson (hereinafter referred to collectively as "Plaintiffs") have asserted their Fifth Amendment privilege against self incrimination not only to resist questions about the facts of the incident, but they have also used the privilege as a device to refuse to answer any questions concerning their alleged injuries, their medical condition and their medical treatment despite their having filed suit for such damages.  In short they wish to sue for damages yet they also deny movants the opportunity to conduct regarding their alleged injuries, their medical condition and their medical treatment.

As of this writing, Transocean has attempted to depose the above-referenced Plaintiffs – all seamen aboard the DEEPWATER HORIZON – about their claims for maintenance and cure (i.e., their alleged injuries and medical condition).  However, all five have asserted their Fifth Amendment privilege as a basis for refusing to answer questions about their condition.  They have done this in spite of the fact that there is no reasonable basis for asserting the Fifth Amendment privilege on such issues as no part of the maintenance and cure questioning has the potential to incriminate them.  In fact, this Honorable Court has previously noted the potential issues relating to assertion of the Fifth Amendment privilege in the maintenance and cure context.[1] Consequently, for the reasons set forth below, Plaintiffs frustration of the discovery

---

[1]       See the Supplemental Order Regarding the Motion of Andrea Fleytas for a Protective Order, which was filed into the record of the instant litigation on July 20, 2011 as Record Document No. 3383.

process is inexcusable and this Honorable Court should grant Transocean's Motion dismissing their claims with prejudice.

## II.  LAW AND ARGUMENT

### A.  Plaintiffs' Claims Should Be Dismissed

#### 1.  Transocean is entitled to investigate Plaintiffs' claims through the discovery process

As this Court is aware, "[a] Jones Act employer is **entitled to investigate** a seaman's claim for maintenance and cure."[2]  Indeed, in *Vaughan v. N.J. Atkinson*,[3] the United States Supreme Court characterized a seaman's employer as "callous in their attitude[]" when they made no investigation of the seaman's claim and thereby forced a seaman to "hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old."[4]

In the instant case, despite the fact that Transocean has paid maintenance and cure from the outset these individuals hired counsel nearly immediately after the incident, and at the instruction of the same counsel refuse to answer any questions about their alleged injuries and medical treatment.  However, commencement of payment of maintenance and cure does not abrogate either Transocean's obligation and duty to investigate the maintenance and cure claims submitted to it.  Plaintiffs' exercise of their Fifth Amendment privilege against self-incrimination during their maintenance and cure depositions have improperly frustrated Transocean's investigation of there same maintenance and cure benefits as well as Plaintiffs' claims for damages.  In fact, by correspondence dated June 30, 2011, counsel for Transocean notified counsel for the claimants at issue of Transocean's right to question these claimants in connection

---

[2]      *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 5/17/05) (emphasis added); *Parker v. Jackup Boat Service, L.L.C.*, 542 F.Supp.2d 481, 493 (E.D. La. 2/14/08); *Jenkins v. Aries Marine Corp.*, 590 F.Supp.2d 807, 812 (E.D. La. 12/9/08).

[3]      *Vaughan v. N.J. Atkinson*, 369 U.S. 527 (1962).

[4]      *Id.* at 530 – 31.

with their maintenance and cure and personal injury claims.[5]  This correspondence also provided notice, in accordance with the June 27, 2011, Order of United States Magistrate Judge Sally Shushan, that Transocean did not believe that invocation of the Fifth Amendment was appropriate as to those issues.  Finally, this correspondence provided notice to counsel for these claimants that refusal to answer questions regarding their maintenance and cure and personal injury claims may cause Transocean to suspend maintenance and cure benefits.  For the following reasons, Plaintiffs' assertion of the Fifth Amendment was improper and should not shield Plaintiffs from Transocean's reasonable investigation of the maintenance and cure claims and personal injury damages.

> ## 2.  Plaintiffs invocation of the Fifth Amendment right against self-incrimination was improper

The Fifth Amendment provides, in pertinent part, as follows: "'[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . .'  This privilege against compulsory self-incrimination 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . .'"[6]  "A witness may properly invoke the privilege when he 'reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against him, . . . and even if the risk of prosecution is remote."[7]  However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities."[8]

---

[5] See attached Exhibit A (June 30, 2011, correspondence from counsel for Transocean to counsel for the claimants at issue)

[6]      *In re Corrugated Container Antitrust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 6/19/80) (citing *Kastigar v. United States*, 406 U.S. 441, 444 (1972)); see also U.S. Const. amend. V.

[7]      *Id.* at 1091 (citing *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 n.5 (5th Cir. 12/28/79)).

[8]      *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972).

To determine whether a witness is entitled to assert the privilege, the Fifth Circuit applies the test set forth in *Wehling v. Columbia Broadcasting System* (hereinafter referred to as the "*Wehling* test").[9]  This test provides

> that a court must ordinarily make two inquiries to determine whether a witness is entitled to assert the privilege and refuse to respond to questioning.  **First**, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities.  If the answers could not be incriminatory, the witness must answer. . . .  **[Second**,] [i]f answering the questions might incriminate the witness, the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted **for the criminal activities that his testimony might touch on**.[10]

In the instant case, neither element of this test is satisfied with respect to Plaintiffs' claims for maintenance and cure and personal injury damages.  With respect to the first element, there is no reasonable basis for believing that Plaintiffs' answers to Transocean's questions regarding maintenance and cure and personal injury issues might tend to incriminate the Plaintiffs.  Contentions to the contrary would be simply unfounded.  However, even if, for the sake of argument, Plaintiffs are able to establish some questions that might tend to reveal that they engaged in criminal activities, there is no risk they will be prosecuted for the activities that their testimony might touch on – namely, maintenance and cure issues.  In other words, unless Plaintiffs have engaged in criminal activities that are somehow related to their receipt of maintenance and cure, or their filing of suit, – and movant cannot imagine what those activities might include – the *Wehling* test is not satisfied, and Plaintiffs have misused the Fifth Amendment privilege to frustrate Transocean's questioning.

---

[9]      *In re Corrugated Container Antitrust Litigation*, 620 F.2d at 1091.

[10]     *Id.* (internal citations omitted and emphasis added).

Moreover, the Fifth Circuit's jurisprudence does not permit a blanket assertion of the privilege.[11]  Plaintiffs have misused their Fifth Amendment privilege to resist questioning, and said misuse is, in light of the absence of any colorable argument that incriminating testimony could come from questioning on their maintenance and cure claims, tantamount to abuse.

### 3.    **Plaintiffs' Claims Should Be Dismissed**

This Honorable Court has broad discretion under the Federal Rules of Civil Procedure to fashion remedies necessary to enforce compliance with discovery procedures, and Plaintiffs' abuse of their Fifth Amendment privilege warrants dismissal of their claims with prejudice.  In *Wehling v. Columbia Broadcasting System* ("*Wehling*"),[12] the Fifth Circuit was asked to determine whether the District Court properly dismissed the plaintiff's suit when he refused to answer questions posed by the defendant based on his Fifth Amendment privilege.[13] While the Court did, ultimately, overturn the dismissal, its reasoning supports the unmistakable conclusion that the instant Plaintiffs' suits should be dismissed.

The plaintiffs, Carl and Geraldine Wehling (hereinafter "Wehling") owned a number of proprietary and trade schools in Texas.[14]  When the defendant, CBS Evening News (hereinafter "CBS") ran a story alleging the Wehlings had defrauded both their own students and the federal government's student loan program, the Wehlings filed suit for libel.[15] When CBS sought pre-trial discovery from the Wehlings regarding the details of the school's operations, Mr. Wehling invoked his Fifth Amendment privilege against self-incrimination as to all questions with respect

---

[11]     See *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 9/12/80) (providing that "[t]he trial judge must make a proper inquiry into the legitimacy and scope of the witness' assertion of his Fifth Amendment privilege.  A blanket assertion of the privilege without inquiry by the court, is unacceptable." *Id.*).

[12]     *Wehling v. Columbia Broadcast System*, 608 F.2d 1084 (5th Cir. 12/28/79).

[13]     See *id.* at 1085.

[14]     See *id.* at 1086.

[15]     See *id.* at 1086.

to his operation of the schools.[16]  In spite of instructions to answer, Wehling informed CBS that

he would continue to claim his Fifth Amendment privilege and, thereafter, the court dismissed

the Wehlings' suit with prejudice.[17]

      Prior to the broadcast giving rise to the Wehling suit, Wehling had been subpoenaed to

appear before a federal grand jury investigating federally insured student loan programs, and in

all five appearances before said grand jury, Wehling asserted his Fifth Amendment privilege

against self incrimination.[18]  After the suit was filed, CBS took Wehling's oral deposition, and

Wehling's "counsel advised [him] to invoke the Fifth amendment **19 times during the course of

the deposition** in response to questions which related to the subject matter of the **pending grand

jury investigation**."[19]  The Court noted that "[i]n refusing to answer any question regarding his

operation of the schools, Wehling deprived CBS of information concerning the accuracy of its

broadcast and thus thwarted discovery of issues at the heart of plaintiff's lawsuit."[20]

      Thus, the central issue before the *Wehling* Court was "not whether Wehling had a right to

invoke the constitutional privilege against self-incrimination, . . . he did, but what effect the

assertion of this privilege would have on his libel claim against CBS."[21]  Wehling argued that

dismissing his lawsuit because he exercised his Fifth Amendment privilege was improper

because it, in effect, penalized the assertion of a fundamental constitutional right.[22]  However,

CBS argued that the dismissal was proper because it respected the rights of both parties when it

both respected Wehling's right to assert the Fifth Amendment, and remedied the resulting

---

[16]     See *id.* at 1086.

[17]     See *id.* at 1086.

[18]     See *id.* at 1086.

[19]     *Id.* at 1086 (emphasis added).

[20]     *Id.* at 1086.

[21]     *Id.* at 1087.

[22]     See *id.* at 1087.

unfairness to CBS by dismissing the action.[23]   Furthermore, CBS argued that postponing

discovery pending termination of the grand jury investigation would prejudice its efforts to

mount a defense.[24]

      While the Court ultimately found that the district court erred in dismissing Wehling's

libel claim, it did provide a resounding endorsement of the defendant's position.[25]   Specifically,

it provided, in pertinent part, as follows:

> We do not dispute CBS's assertion that it would be unfair to permit
> Wehling to proceed with his lawsuit and, at the same time, deprive
> CBS of information needed to prepare its truth defense.  **The**
> **plaintiff who retreats under the cloak of the Fifth Amendment**
> **cannot hope to gain an unequal advantage against the party he**
> **has chosen to sue.  To hold otherwise would, in terms of the**
> **customary metaphor, enable plaintiff to use his Fifth**
> **Amendment shield as a sword.  This he cannot do.**[26]

Further, the Court recognized

> that Wehling [was] not the only party to [the] action [with]
> important rights that must be respected.  As [it] [had] observed,
> CBS should not be required to defend against a party who
> refuse[d] to reveal the very information which might absolve [it] of
> all liability. 'While it may be true that an individual should suffer
> no penalty for the assertion of a constitutional right, neither should
> third parties sued by that individual who have no apparent interest
> in the criminal prosecution, be placed at a disadvantage either.' . .
> . Therefore, [the Court] emphasize[d] that a civil plaintiff has **no**
> **absolute right to both his silence and his lawsuit**.  Neither,
> however, does the civil defendant have an absolute right to have
> the action dismissed anytime a plaintiff invokes his constitutional
> privilege.  **When plaintiff's silence is constitutionally**
> **guaranteed, dismissal is appropriate only where other, less**
> **burdensome, remedies would be an ineffective means of**
> **preventing unfairness to defendant.**[27]

---

[23]    See *id.* at 1087.

[24]    See *id.* at 1087.

[25]    See *id.* at 1087.

[26]    *Id,* at 1087 (emphasis added).

[27]    *Id.* at 1088 (emphasis added and internal citations omitted).

The Court acknowledged the difficulty these competing issues presented to the District Court.[28]  However, it found that

> [i]n focusing solely on CBS' right to the requested information, the court failed to attribute any weight to Wehling's right to his day in court.  Instead of arbitrarily adopting a rule favoring CBS, the court **should have measured the relative weights of the parties' competing interests** with a view toward accommodating those interests, if possible.  This balancing-of-interest approach ensures that the rights of both parties are taken into consideration before the court decides whose predominate.[29]

Based on the facts presented, the court found that the balance tipped in favor of Wehling.[30]

Even a cursory comparison of the *Wehling* facts to those present in the instant case will establish that Plaintiffs' claims should be dismissed.  Initially, while the *Wehling* plaintiff asserted his Fifth Amendment privilege 19 times during the course of his deposition,[31] Plaintiffs in the instant matter have asserted it literally scores – if not hundreds of times – to resist all questioning.  Second, while the Department of Justice is investigating the actions leading up to the April 20, 2010 incident, there is no action against any of the aforementioned Plaintiffs like the grand jury investigation pursing Wehling at the time of his deposition.  Third, while the *Wehling* deposition sought information to prove CBS was not guilty of libel, *i.e.*, that there was truth to the allegation that Wehling had defrauded students and abused the federal student loan program, the deposition testimony made the subject of the instant motion relates to maintenance and cure issues, and as discussed in Section II(A)(2), information regarding maintenance and cure bears no relationship to the Department of Justice's investigation.  Finally, and perhaps most importantly, the seaman's maintenance and cure remedy is unlike the libel remedy in that it

---

[28]  See *id.* at 1088.
[29]  *Id.* at 1088 (emphasis added).
[30]  See *id.* at 1088.
[31]  See *id.* at 1086.

does not arise at the conclusion of litigation. Rather, as discussed above in Section II(A)(1), maintenance and cure is payable from the time of the seaman's injury.

In sum, the Wehling Court "emphasize[d] that . . . the district court is **not precluded from dismissing [a] plaintiff's action if circumstances arise which require the use of this drastic remedy**."[32] Plaintiffs' abusive assertion of their Fifth Amendment privilege in the above-captioned litigation is, for the foregoing reasons, just the sort of circumstance that begs for application of the dismissal remedy. Plaintiffs have frustrated Transocean's right and duty to investigate their maintenance and cure claims, and abused their Fifth Amendment privilege by using it not as a shield or sword but as a bulldozer. Consequently, for the foregoing reasons, Transocean is entitled to an Order dismissing Plaintiffs' claims with prejudice.

B.       **Alternatively, Plaintiffs' Maintenance and Cure Payments Should Be Terminated**

While, for the all of the reasons set forth above, Transocean is entitled to an Order dismissing Plaintiffs' claims with prejudice, should this Honorable Court find that a complete dismissal of Plaintiffs' claims is unwarranted, Transocean avers that for all of the reasons set forth above, it is entitled to, at a bare minimum, an Order terminating Transocean's obligation to continue paying maintenance and cure to all Plaintiffs who have asserted their Fifth Amendment right against self-incrimination in response to deposition questioning about issues concerning their claims for maintenance and cure and personal injury damages.

III.       **CONCLUSION**

For the foregoing reasons, Transocean is entitled to an Order dismissing the claims of all Plaintiffs in the above-captioned action who have asserted their Fifth Amendment right against self-incrimination in response to deposition questioning concerning their claims for maintenance

---

[32]       *Id.* at 1089 (emphasis added).

and cure and personal injury damages.  However, should this Honorable Court deny said Motion, Transocean is, in the alternative, entitled to an Order terminating its obligation to continue paying maintenance and cure to all Plaintiffs who have asserted their Fifth Amendment right against self-incrimination in response to deposition questioning concerning their claims for maintenance and cure and personal injury damages.


Respectfully submitted by,


By:       /s/ Steven L. Roberts                  By:       /s/ Kerry J. Miller

Steven L. Roberts (Texas No. 17019300)          Kerry J. Miller (Louisiana No. 24562)
Rachel Giesber Clingman (Texas No. 00784125))  FRILOT, L.L.C.
Kent C. Sullivan (Texas No. 19487300)         1100 Poydras Street, Ste. 3700
Teri L. Donaldson (Florida No. 784310)        New Orleans, LA  70163
SUTHERLAND ASBILL & BRENNAN, LLP   Telephone:    504.599.8169
1001 Fannin Street, Ste. 3700              Facsimile:     504.599.8154
Houston, TX  77002                    E-mail:         kmiller@frilot.com
Telephone:   713.470.6100
Facsimile:    713.654.1301           and
E-mail:steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,          By:       /s/ Edwin G. Preis, Jr.
kentsullivan@sutherland.com,             Edwin G. Preis, Jr. (Louisiana No. 10703)
terisdonaldson@sutherland.com           Edward F. Kohnke, IV (Louisiana No. 07824)

Robert M. Kallam (Louisiana No. 20242)

Anthony J. Lascaro (Louisiana No. 32546)

PREIS & ROY, PLC

102 Versailles Blvd., Ste. 400

P. O. Drawer 94-C

Lafayette, LA  70509

Telephone:   337.237.6062

Facsimile:    337.237.9129

E-mail:      egp@preisroy.com

efk@preisroy.com

rmk@preisroy.com

ajl@preisroy.com

- 13 -

Of counsel:

Brad D. Brian (California No. 79001)
Allen M. Katz (California No. 054933)
MUNGER, TOLLES & OLSON, L.L.P.
355 South Grand Ave., 35th Floor
Los Angeles, CA  90071
Telephone:      213.683.9100
Facsimile:      213.683.5180, 213.683.4018
E-mail:          brad.brian@mto.com
                 Allen.katz@mto.com


John M. Elsley (Texas No. 0591950)
ROYSTON, RAZOR, VICKERY & WILLIAMS,
L.L.P.
711 Louisiana Street, Ste. 500
Houston, TX  77002
Telephone:      713.224.8380
Facsimile:      713.225.9945
E-mail:          john.elsley@roystonlaw.com


Daniel O. Goforth (Texas No. 08064000)
GOFORTH AND EASTERLING, L.L.P.
4900 Woodway, Ste. 750
Houston, TX  77056
Telephone:      713.650.0022
Facsimile:      713.650.1669
E-mail:          dangoforth@goforthlaw.com


**Counsel for Triton Asset Leasing GmbH., Transocean Holdings L.L.C., Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing has been electronically filed using the

Court's CM/ECF system and served on All Counsel by uploading same to Lexis Nexis File &

Serve in accordance with Pretrial Order No. 12, on August 30th, 2011

/s/  Kerry J. Miller
KERRY J. MILLER

- 14 -