# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

APPLIES TO:  11-274 c/w 11-275

MDL NO. 2179

SECTION "J" (1)

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

## BP PARTIES' CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Allan B. Moore
Christopher J. Wenk
Mark D. Herman
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Tel:  (202) 662-6000
Fax:  (202) 778-5575
E-mail:  abmoore@cov.com
E-mail:  cwenk@cov.com
E-mail:  mherman@cov.com

David B. Goodwin
M. Alexia dePottere-Smith
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA  94111
Tel:  (415) 591-6000
Fax:  (415) 591-6091
E-mail:  dgoodwin@cov.com
E-mail:  adepottere@cov.com

*Counsel for BP Exploration & Production Inc., BP America Production Company, BP Corporation North America Inc., BP Company North America Inc., BP Products North America Inc., BP America Inc., BP Holdings North America Limited, and BP plc*

Dated:  August 31, 2011

# TABLE OF CONTENTS

**Page(s)**

SUMMARY OF ARGUMENT ........................................................................................1

I.    THE INSURERS AND TRANSOCEAN MISCHARACTERIZE
      AND IGNORE THE HOLDINGS OF ATOFINA AND AUBRIS
      AND RELY ON INAPPOSITE LEGAL AUTHORITY ....................................5

II.   THE INSURERS AND TRANSOCEAN MISCONSTRUE THE OPERATIVE
      LEGAL STANDARDS THAT GOVERN RULE 12(C) MOTIONS AND THE
      INTERPRETATION OF INSURANCE POLICIES UNDER TEXAS LAW .................12

      A.    The Court Is Not Required To Presume That The Insurers Are
            Correct On The Law, Or To Accept Immaterial Factual (Or Legal)
            Assertions As A Basis For Declining To Apply The ATOFINA Rule ................ 12

      B.    The Court Has Already Ruled That BP's Motion Is Properly
            Presented Under Rule 12(c) ................................................................... 15

      C.    The Pro-Coverage Interpretation Principles Of Texas Insurance Law Apply ...... 16

III.  THE INSURERS AND TRANSOCEAN HAVE MISCONSTRUED THE PLAIN
      LANGUAGE AND STRUCTURE OF THE POLICIES AND RELY ON
      FACIALLY INAPPLICABLE POLICY PROVISIONS ....................................19

      A.    BP Is An "Insured," And The Drilling Contract Is An "Insured
            Contract," For All Purposes Under The Policies .................................... 19

      B.    The Insurers' Effort To Rely On A Condition Contained In Section I
            Of The Policies Is Misleading And Unavailing .................................... 21

      C.    The Insurers And Transocean Misconstrue General Condition No. 3 ................ 24

IV.   THE INSURERS AND TRANSOCEAN MISLEADINGLY QUOTE THE
      "ADDITIONAL INSURED" PROVISION OF THE DRILLING CONTRACT ............26

CONCLUSION .........................................................................................................29

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alcala v. Texas Webb County*,
620 F. Supp. 2d 795 (S.D. Tex. 2009) ....................................................................12

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ..........................................................................................12

*Aubris Resources LP v. St. Paul Fire & Marine Ins. Co.*,
566 F.3d 483 (5th Cir. 2009) ........................................................................ passim

*Bartley v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
824 F. Supp. 624 (N.D. Tex. 1992) ......................................................................12

*Becker v. Tidewater, Inc.*,
586 F.3d 358 (5th Cir. 2009) .......................................................................4, 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................12, 13

*Cannon Ball Motor Freight Lines v. Grasso*,
59 S.W.2d 337 (Tex. Ct. App. 1933) ....................................................................18

*Certain Underwriters at Lloyd's London v. Oryx Energy Co.*,
142 F.3d 255 (5th Cir. 1998) ........................................................................ passim

*Certain Underwriters at Lloyds, London v. Oryx Energy Co.*,
957 F. Supp. 930 (S.D. Tex. 1997) ......................................................................10

*Coker v. Coker*,
650 S.W.2d 391 (Tex. 1983)..................................................................................28

*Conley v. Gibson*,
355 U.S. 41 (1957)..................................................................................................13

*Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*,
116 F.3d 1095 (5th Cir. 1997) ..............................................................................22

*Eagle Leasing Corp. v. Hartford Fire Ins. Co.*,
540 F.2d 1257 (5th Cir. 1976) ..............................................................................17

*Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*,
256 S.W.3d 660 (Tex. 2008)........................................................................ passim

*GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*,
64 F.3d 1112 (7th Cir. 1995) ................................................................................12

*Grain Dealers Mut. Ins. Co. v. McKee*,
  943 S.W.2d 455 (Tex. 1997) ...................................................................................16

*LeBlanc v. Global Marine Drilling Co.*,
  193 F.3d 873 (5th Cir. 1999) ...........................................................................4, 7, 8, 9

*Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*,
  89 F.3d 243 (5th Cir. 1996) ....................................................................................24

*Lubrizol Corp. v. Gray Ins. Co.*,
  No. 08-20289, 2009 WL 348820 (5th Cir. Feb. 12, 2009) ........................................10

*Lubrizol Corp. v. Gray Ins. Co.*,
  No. H-07-3301, 2008 WL 1767711 (S.D. Tex. Apr. 8, 2008)....................................10

*M.J.R. Corp. v. Scottsdale Ins. Co.*,
  803 S.W.2d 426 (Tex. Ct. App. 1991) ....................................................................22

*McDermott Int'l, Inc. v. Lloyds Underwriters*,
  944 F.2d 1199 (5th Cir. 1991) ................................................................................18

*Mostowy v. United States*,
  966 F.2d 668 (Fed. Cir. 1992).................................................................................13

*Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*,
  811 S.W.2d 552 (Tex. 1991)...............................................................................16, 17

*Ohio Cas. Ins. Co. v. Holcim (US), Inc.*,
  548 F.3d 1352 (11th Cir. 2008) ..............................................................................24

*Olin Corp. v. Yeargin Inc.*,
  146 F.3d 398 (6th Cir. 1998) ..................................................................................24

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,
  2011 WL 3195292 (5th Cir. July 28, 2011)..............................................................18

*Republic Waste Servs. v. Empire Indem. Ins. Co.*,
  98 F. App'x 970 (5th Cir. 2004) ............................................................................18

*RSR Corp. v. Int'l Ins. Co.*,
  612 F.3d 851 (5th Cir. 2010) ..................................................................................16

*TIG Ins. Co. v. San Antonio YMCA*,
  172 S.W.3d 652 (Tex. Ct. App. 2005)......................................................................22

*Travelers Lloyds Ins. Co. v. Dyna Ten Corp.*,
  No. 2-08-502-CV, 2009 WL 2619232 (Tex. Ct. App. Aug. 26, 2009) ......................22

*Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, Ltd.*,
  729 F. Supp. 2d 814 (N.D. Tex. 2010) .....................................................................18

**OTHER AUTHORITIES**

LAW AND PRACTICE OF INSURANCE COVERAGE LITIGATION (2011)...............................................22

William W. Pugh, *The IADC Offshore Drilling Contract*, *in* Oil and Gas Development on
    the Outer Continental Shelf (Rocky Mountain Mineral Law Special Institute, 102C
    Special Institute 1998), *available at* Westlaw 102C RMMLF-INST 8..................................29

On July 8, 2011, the BP Parties ("BP") filed a Rule 12(c) Motion for Judgment on the Pleadings (docket no. 3211), which the Court has set for oral argument on September 16, 2011.  BP seeks a judgment in its favor on the specific claims for declaratory relief that Ranger and the Excess Insurers (collectively, "Insurers") pleaded in the complaints that they filed in the two Insurance Actions that are part of this MDL proceeding, Action Nos. 11-274 and 11-275. BP now submits this consolidated reply to the three separate and largely duplicative opposition papers filed by the primary insurer, Ranger (docket no. 3704-1); the Excess Insurers (docket no. 3705); and Transocean (docket no. 3707-2).[1]

## SUMMARY OF ARGUMENT

As BP explained in its opening memorandum (docket no. 3211-1), the sole issue presented by the Insurer Complaints, as pleaded by the Insurers themselves, is the ***scope*** of BP's "additional insured" coverage rights under the insurance policies they issued — specifically, whether, under Texas law, BP is entitled to coverage for pollution-related liabilities arising from the *Deepwater Horizon* Incident.  The Insurers have conceded BP's standing as an "additional insured" under the policies, which is the first of the two issues on which BP's motion seeks relief.  They argue, however, that BP is not entitled to such "pollution-related" coverage because, they say, under the BP-Transocean Drilling Contract — to which the Insurers are not parties and under which they are expressly barred from claiming any rights as third-party beneficiaries —

---

[1]  Ranger and the Excess Insurers did not sue Transocean in the two complaints that are the subject of BP's present motion, so Transocean is not properly a respondent to this motion. *See* Declaration of Christopher J. Wenk in Support of BP Parties' Motion for Judgment on the Pleadings ("Wenk Decl."), Exs. A-B ("Insurer Complaints").  Nonetheless, Transocean has filed an opposition, and to the limited extent that Transocean's arguments are not fully duplicative of the Insurers' arguments, BP has addressed them herein.  Further, rather than file three separate replies, with a combined total length of 30 pages, BP has elected to file this single consolidated reply.  The Insurers and Transocean have confirmed that they do not object.  Anadarko and MOEX join in BP's motion and in this consolidated reply.

"BP assumed full responsibility … for any and all liabilities arising out of or in any way related to the release of oil from BP's well."  Insurer Complaints, ¶ 22.A.  If the Insurers are correct, and if BP's coverage rights are limited by the indemnity provisions running between Transocean and BP in the Drilling Contract as they claim, many of the Excess Insurers stand to escape from *any* liability for the spill because the non-pollution-related liabilities of Transocean and BP are highly unlikely to reach into the upper layers of the billion-dollar insurance program at issue.

The Insurers are not correct.  Under settled Texas and Fifth Circuit law, BP is fully entitled to coverage for pollution-related liabilities under each of the policies in question because the scope of BP's insurance rights is determined by the insurance policies themselves, not by the Drilling Contract.

As BP explained in its opening memorandum, this issue is directly and expressly controlled by the Texas Supreme Court's 2008 decision in *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008), and the Fifth Circuit's endorsement and application of "the [*ATOFINA*] rule" in *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 483, 489 (5th Cir. 2009).  The courts in *ATOFINA* and *Aubris* faced "virtually the same" question, which is identical to the question presented by BP's motion and the Insurer Complaints here — namely, "whether the parties' indemnity agreement [in an oil industry services contract] operated to limit the *scope* of [the owner-operator's] additional insured coverage" under insurance policies issued by the contractor's general liability insurers.  *Aubris*, 566 F.3d at 488 (emphasis added).

In both *ATOFINA* and *Aubris*, as in this case, (a) there was a service agreement between an owner-operator and a contractor; (b) the service agreement included a limited indemnity by the contractor in favor of the owner-operator; (c) the service agreement also contained a separate insurance provision obligating the contractor to secure "additional insured"

liability coverage for the owner-operator; and (d) the pertinent insurance policies did not clearly and unambiguously limit the scope of the owner-operator's "additional insured" coverage to the scope of the indemnity in the service agreement.  In this situation — which is identical to the situation presented here — both the Texas Supreme Court and the Fifth Circuit, applying Texas law, held that the "additional insured" coverage that the owner-operator was entitled to receive under the policies was *not limited* by the scope of the contractual indemnity in the service contract.  As the *ATOFINA* court explained:

> Under the terms of the service contract, ATOFINA [the owner-operator] is not entitled to be indemnified by Triple S [the contractor] if the Jones loss was occasioned in any way by ATOFINA's negligence. But ATOFINA does not seek indemnification from Triple S; it claims instead that it is entitled to indemnification [*i.e.,* insurance coverage] from Evanston by virtue of its status as an additional insured on the umbrella policy Evanston issued to Triple S.  Instead of looking, as the court of appeals did, to the indemnity agreement in the service contract to determine the ***scope*** of any coverage, we base our decision on ***the terms of the umbrella insurance policy itself***.

256 S.W.3d at 663-64 (emphasis added).

The Fifth Circuit honored and applied "the [*ATOFINA*] rule" in *Aubris* and reached the same result:  "We take from [*ATOFINA*] that in determining whether there is coverage, a court looks only to the additional insured provision itself; that indemnity is a separate, and later arising, question from coverage."  *Aubris*, 566 F.3d at 488-89.  The Fifth Circuit was emphatic in its adoption of the *ATOFINA* holding:

> The separate indemnity provision is not applied to limit the scope of coverage.  Indeed, on this point the Texas Supreme Court could not have been clearer:  "We have noted that where an additional insured provision is separate from and additional to an indemnity provision, ***the scope of the insurance requirement is not limited by the indemnity clause***."

*Id.* at 489 (quoting *ATOFINA*, 256 S.W.3d at 664) (emphasis added).  Here, like the contracts at issue in *ATOFINA* and *Aubris,* the Drilling Contract contains entirely separate insurance and

- 3 -

indemnity provisions.  *Compare* Drilling Contract (Wenk Decl. Ex. C), art. 20, *with id.,* arts. 21-25.

Because *ATOFINA* and *Aubris* directly control the question presented here, and because, by its terms, that question is purely a legal question under Texas law, BP's motion presents precisely the type of issue that a court can and should decide on a Rule 12(c) motion for judgment on the pleadings.  No valid purpose would be served by the Insurers' further delay or a deferral of this question, or by the pursuit of any discovery in respect to it.  Indeed, if this issue were not ripe for a Rule 12(c) determination, despite a controlling Texas Supreme Court and Fifth Circuit decision on the precise question presented, it is difficult to conceive of an issue or circumstance for which a Rule 12(c) motion would ever be appropriate.

In an effort to escape the controlling effect of *ATOFINA* and *Aubris*, the Insurers (and Transocean):

- largely ignore or mischaracterize the holdings of *ATOFINA* and *Aubris*;

- rely on cases that either predate *ATOFINA* and *Aubris* (and that actually support BP),[2] or that apply Louisiana and maritime law rather than controlling Texas law, which all parties accept as governing the issue presented;[3]

- distort the governing legal standards for Rule 12(c) motions and the controlling legal principles for interpreting insurance policies under Texas law;

- misread the policies, invoke inapplicable policy provisions, and rely upon the wrong coverage section (Section I - protection & indemnity),

---

[2]  *See LeBlanc v. Global Marine Drilling Co*., 193 F.3d 873 (5th Cir. 1999), and *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255 (5th Cir. 1998), as discussed in Ranger Opp. (docket no. 3704-1) at 13-16 and Transocean's Opp. (docket no. 3707-2) at 10-13.

[3]  *See Becker v. Tidewater, Inc*., 586 F.3d 358 (5th Cir. 2009), as discussed in Ranger Opp. (docket no. 3704-1) at 14-17 and Transocean's Opp. (docket no. 3707-2) at 10-13.

> ignoring the coverage section at issue in this motion (Section II - excess general liability); and

- misleadingly quote the "additional insured" provision of the Drilling Contract.

We address each of these shortcomings below.

## I.   THE INSURERS AND TRANSOCEAN MISCHARACTERIZE AND IGNORE THE HOLDINGS OF *ATOFINA* AND *AUBRIS* AND RELY ON INAPPOSITE LEGAL AUTHORITY.

It is undisputed, and expressly stated in both the Insurer Complaints and the insurance policies themselves, that Texas law controls the proper interpretation of the insurance policies and the Insurers' coverage obligations to BP as an additional insured.  *See* BP's Opening Mem. (docket no. 3211-1), at 13 & n.9.

It is also undisputed that, whereas "[t]he Drilling Contract defined the obligations *of Transocean and BP*, and specifically identified and distinguished the liabilities that *Transocean and BP* separately assumed" vis-à-vis each other (Excess Insurers Opp. (docket no. 3705), at 3 (emphasis added)), the Insurers are not parties to the Drilling Contract; rather, they are parties only to the insurance policies they issued.  Further, neither the Insurers nor Transocean has disputed BP's showing that the Drilling Contract itself expressly bars the Insurers from claiming any rights under the Drilling Contract as third-party beneficiaries.  *See* BP's Opening Mem. (docket no. 3211-1), at 6-7, 27.

The Insurers and Transocean nonetheless argue that the Drilling Contract's indemnity provisions and the insurance policies must be read together, as if the policies incorporate the Drilling Contract's indemnity provisions by reference, in order to determine the scope of BP's additional insured coverage rights.  In so arguing, they simply ignore the express holdings of *ATOFINA* and *Aubris*.  In plain English, the Texas Supreme Court unanimously held in *ATOFINA* — as a matter of Texas law and in the context of an oil and gas services contract —

that when assessing a party's rights as an additional insured under a liability insurance policy, "[i]nstead of looking, as the court of appeals did, to the indemnity agreement in the service contract to determine the scope of any coverage, we base our decision on the terms of the umbrella insurance policy itself." 256 S.W.3d at 664. *Aubris* reinforced the point: "We take from [*ATOFINA*] that in determining whether there is coverage, *a court looks only to the additional insured provision itself*; that indemnity [under the service contract] is a separate, and later arising, question from coverage." *Aubris*, 566 F.3d at 488 (emphasis added).

The Insurers' contention that *ATOFINA* can be confined to its facts — that the Texas Supreme Court "merely held that the policy *in that case* did not contain language limiting the scope of coverage" — is untenable. Excess Insurers Opp. (docket no. 3705), at 16 (emphasis added). That reading of *ATOFINA* cannot be squared with either the plain language of the court's opinion or the Fifth Circuit's reading of it in *Aubris*, which expressly relied upon *ATOFINA* as stating a general rule of insurance policy interpretation under controlling Texas law.[4] Moreover, as BP has shown, in all relevant respects, the service contract and insurance policy language at issue in both *ATOFINA* and *Aubris* is either materially indistinguishable from, or more favorable to the Insurers' position than, the language in the Drilling Contract and insurance policies at issue here, and the additional insureds in both those cases prevailed. *See* BP's Opening Mem. (docket no. 3211-1), at 17-21.

For example, in *Aubris*, the service contract's "insurance" clause provided for the oilfield owner in that case to be an "additional insured" under the contractor's policies, *except* "with respect to *any* obligations for which [the owner] has specifically agreed to indemnify" the

---

[4]  The Excess Insurers try to dismiss *Aubris* by inaccurately portraying it as only a duty-to-defend case (Excess Insurers Opp. (docket no. 3705), at 21), but the *Aubris* court expressly found the question presented there to be "virtually the same" as that presented to the Texas Supreme Court in *ATOFINA*.  *Aubris*, 566 F.3d at 488.

contractor.  *Aubris*, 566 F.3d at 485-86 (quoting service contract) (emphasis added).  Under the *Aubris* service contract's "indemnity" provisions, the oilfield owner was obligated to indemnify the contractor "from and against all claims, demands, and causes of action asserted by any person … that arise out of or are related to work and are caused by or arise out of [the owner's] negligent acts or omissions ... ."  *Id.* at 487 (quoting service contract; full capitalization omitted).  The Fifth Circuit nonetheless held that the oilfield owner was entitled to full coverage as an additional insured under the contractor's policy — even though the underlying claim at issue alleged negligence by the oilfield owner — because, under the *ATOFINA* rule, "[t]he separate indemnity provision is not applied to limit the scope of coverage."  *Id.* at 489.

Given that the *ATOFINA* and *Aubris* courts ruled against the insurers and in favor of the additional insureds on the "scope of coverage" question presented in those two cases, and given that BP's motion presents the same pure question of law, it follows that *ATOFINA* and *Aubris* control and that the same result should apply under Texas law here.  The Insurers and Transocean seek to escape this conclusion by invoking three Fifth Circuit decisions:  (a) *Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir. 2009); (b) *LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873 (5th Cir. 1999), and (c) *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255 (5th Cir. 1998).  *See* Ranger Opp. (docket no. 3704-1), at 13-15; Transocean Opp. (docket no. 3707-2), at 10-17.  These cases are inapposite and in no way affect the holdings of *ATOFINA* and *Aubris*, which are the governing Texas decisions the Court must follow.[5]

First, although Ranger neglects to mention the point and Transocean tries to glide past it in a footnote (Transocean Opp. (docket no. 3707-2), at 12 n.11), *Becker* applied Louisiana and maritime law, not Texas law.  *See* BP Opening Mem. (docket no. 3211-1), at 13 & n.9

---

[5]  To their credit, the Excess Insurers (unlike Ranger and Transocean) do not rely on *Becker*, *LeBlanc*, or *Oryx* in their paper, so they may accept the inapplicability of these three cases.

(explaining why Texas law controls).  Consequently, the *Becker* court was not bound by — and did not even mention — the Texas Supreme Court's controlling decision in *ATOFINA*.  Second, *LeBlanc* and *Oryx* were decided a decade before *ATOFINA* and *Aubris*.  Thus, to the extent that *LeBlanc* and *Oryx* diverge from *ATOFINA* and *Aubris* in any material respect, they are not current or binding statements of Texas law (or controlling Fifth Circuit precedent).

In any event, *LeBlanc* and *Oryx* are facially distinguishable from the present case, and both actually support BP rather than the position advanced by the Insurers and Transocean.  Unlike *ATOFINA*, *Aubris*, and the present case, neither *LeBlanc* nor *Oryx* involved the scope of an additional insured's coverage rights, and neither addressed whether such rights are limited by the scope of an indemnity agreement in an underlying service contract.

*LeBlanc* was not an insurance case at all but a dispute under an oil drilling services agreement, in which the issue was not scope of insurance coverage but whether the contractor was entitled to the *status* of an additional insured under the subcontractor's liability policies.  The subcontractor argued that the service contract's insurance (or "assured") clause "specifically makes contingent the validity of the assured clause upon that of the indemnity clause" and thus, "if the indemnity clause is invalid [under a federal anti-indemnity statute] the assured clause also must fall."  *LeBlanc*, 193 F.3d at 875.  The Fifth Circuit *rejected* the subcontractor's contention, thus upholding the contractor's status as an additional insured despite the apparent invalidity of the underlying indemnity that gave rise to its additional insured status.  *Id.*  The court's decision, therefore, is entirely consistent with the proposition later espoused in *ATOFINA* and *Aubris*:  that insurance agreements and indemnity agreements are two different things.  *Id.* at 875-76.

Similarly, in *Oryx*, an insurance case that involved an oil drilling services contract, the Fifth Circuit rejected the proposition "that a Texas statute limiting the

indemnification of a negligent indemnitee limits the liability insurance coverage obtained by the indemnitor for the indemnitee." *Oryx Energy Co.*, 142 F.3d 257.  Like *LeBlanc*, *Oryx* stands for the proposition that insurance and indemnity present separate issues, and that a party's rights as an additional insured do not depend on its rights as a contractual indemnitee — the fundamental proposition endorsed by *ATOFINA*, *Aubris*, and BP's motion.

Further, as Transocean acknowledges, and as the Fifth Circuit took care to emphasize, the insurance provision in the service contract at issue in *LeBlanc* provided:  "*[T]o the extent Subcontractor [Frank's]* assumes liability hereunder, and *agrees to indemnify Contractor [Marine]*, Contractor shall be named an additional insured in [certain] insurance policies." *LeBlanc*, 193 F.3d at 875 (emphasis and alterations in original); *see* Transocean Opp. (docket no. 3707-2), at 16 (quoting same, but deleting the court's emphasis).  Likewise, as Transocean also admits and as the Fifth Circuit again emphasized, the insurance provision in the drilling contract at issue in *Oryx* provided:  "[t]he policy (or policies) of insurance obtained by [Mallard], except Worker's Compensation, and Protection and Indemnity shall provide that [Oryx] … are additional insured for all coverages, *to the extent of the indemnity provided by Mallard under this Contract*." *Oryx Energy Co.*, 142 F.3d at 258 (emphasis, alterations, and ellipsis in original); *see* Transocean Opp. (docket no. 3707-2), at 14 (quoting same, but again deleting the court's emphasis).

Thus, in both *LeBlanc* and *Oryx* — unlike *ATOFINA*, *Aubris*, and the present case — the insurance provision of the service contract expressly limited the scope of the additional insured coverage to be provided *"to the extent" of the indemnity* being provided by the party obligated to secure the insurance.  Further, in *Oryx* (which *was* an insurance case, unlike *LeBlanc*), the insurance policy itself contained the same express limitation, limiting the additional insured's rights under the policy to the scope of the indemnity granted in the

- 9 -

underlying service contract.  *See Certain Underwriters at Lloyds, London v. Oryx Energy Co.*, 957 F. Supp. 930, 936 (S.D. Tex. 1997) (noting that the policy defined the word "assured" to mean "any ... organization ... to whom the Named Assured [Mallard] is obligated *by virtue of a written contract or agreement to provide insurance such as is afforded by this Policy, but only to the extent of such obligation* and in respect of operations by or on behalf of the Named Assured [Mallard]" (emphasis in original)).  As BP has shown, there is absolutely no such express limitation in the insurance policies, or the Drilling Contract, at issue here.[6]  *See* BP Opening Mem. (docket no. 3211-1), at 5-6.

       Transocean and the Insurers also fundamentally mischaracterize BP's argument. As described by Transocean, BP relies on *ATOFINA* (and *Aubris*) for the proposition that BP's "additional insured *status* is to be determined by having reference to the 'policies alone.'" Transocean Opp. (docket no. 3707-2), at 18 (emphasis added).  Transocean then assails this "policies alone" argument as an absurdity.  *Id.* at 18-21.  But BP does not assert that the Drilling Contract is irrelevant or that no reference can or should be made to it.  On the contrary, BP agrees, and has affirmatively shown, that reference to the Drilling Contract is appropriate to establish that the contract is an "Insured Contract," as that term is used in the policies.  *See* BP's

---

[6]  Ranger also wrongly states that the Fifth Circuit's unreported decision in *Lubrizol Corporation v. Gray Insurance Company*, No. 08-20289, 2009 WL 348820 (5th Cir. Feb. 12, 2009), supports its argument that the scope of BP's additional insured coverage is limited by the scope of the indemnities in the Drilling Contract.  *Lubrizol* considered the insurance provisions in a services contract, which provided, among other things, that one party (Pat Tank) would include the other (Lubrizol) as an additional insured in its general liability and automobile policies "to the extent necessary to provide coverage under [Pat Tank's] insurance for the liabilities assumed by [Pat Tank] under the indemnity provisions of this Agreement."  *Id.* at *2.  Relying on *ATOFINA*, the court rejected the insurer's argument that this language limited the scope of additional insured coverage to the scope of Pat Tank's duty to indemnify Lubrizol.  The court thus affirmed the district court's decision (*see id.* at *4-5), which had concluded that "[t]he coverage is not limited to the indemnity obligation," *Lubrizol Corp. v. Gray Ins. Co.*, No. H-07-3301, 2008 WL 1767711, at *2 (S.D. Tex. Apr. 8, 2008).

Opening Mem. (docket no. 3211-1), at 8-9, 16-17.  Where BP parts company with Transocean and the Insurers is in BP's recognition that:

- *status* as an additional insured and *scope of coverage* as an additional insured are two different concepts under Texas law;

- as *Aubris* makes clear, one looks to the insurance provisions of a service contract — and not to its indemnity provisions — to determine a party's *status* as an additional insured (or the contract's status as an "insured contract"); and

- as *ATOFINA* and *Aubris* both hold, *scope of coverage* is determined under Texas law solely by reference to the insurance policies themselves, which are the only contracts to which the Insurers are a party.[7]

Here, there is no dispute over BP's *status* as an additional insured, and the only issue is *scope of coverage* — a question determined solely by reference to the policies and in no event by reference to the indemnity provisions in the Drilling Contract.[8]  Thus, the Insurers' complaints in Action Nos. 11-274 and 11-275, which seek a judicial declaration that BP's additional insured rights under the Insurers' policies are limited by the Drilling Contract, fail as a matter of Texas law, and judgment on the pleadings in BP's favor is appropriate.

---

[7] In *ATOFINA*, the insurance policy at issue was "purchased to secure the [named] insured's indemnity obligation in a service contract with a third party."  *ATOFINA*, 256 S.W.3d at 662.  Yet, the reason *why* the oilfield owner became an additional insured did not explain the scope of its coverage.

[8]  The Insurers and Transocean also caricature BP's argument when they assert that BP claims "unlimited" or "unrestricted" coverage rights.  *See, e.g.*, Excess Insurers Opp. (docket no. 3705), at 1, 3, 13, 16, 24; Ranger Opp (docket no. 3704-1) at 15, 18; Transocean Opp. (docket no. 3707-2) at 18, 29.  BP accepts that its coverage rights are limited — but only by the terms and conditions of the insurance policies, not by limitations imported from the Drilling Contract.

II.    **THE INSURERS AND TRANSOCEAN MISCONSTRUE THE OPERATIVE LEGAL STANDARDS THAT GOVERN RULE 12(C) MOTIONS AND THE INTERPRETATION OF INSURANCE POLICIES UNDER TEXAS LAW.**

Before addressing the Insurers' misreadings of the policies and the Drilling Contract (which we do in Parts III and IV below), it is important to respond to their (and Transocean's) extended and inaccurate discussions of the operative legal standards that govern Rule 12(c) motions and the interpretation of insurance policies under Texas law.  With these standards properly understood, BP's entitlement to judgment on the pleadings is clear.

A.    **The Court Is Not Required To Presume That The Insurers Are Correct On The Law, Or To Accept Immaterial Factual (Or Legal) Assertions As A Basis For Declining To Apply The *ATOFINA* Rule.**

As BP has shown, to survive a Rule 12(c) motion, the Insurer Complaints must state a legally valid claim or legal theory that could entitle the Insurers to the relief they seek.  *See* BP Opening Mem. (docket no. 3211-1), at 11-13; *Alcala v. Texas Webb County*, 620 F. Supp. 2d 795, 801 (S.D. Tex. 2009) ("[D]ismissal can be based … on a lack of a cognizable legal theory.").  This means that the Insurers' reading of the insurance policies, and of *ATOFINA* and *Aubris,* must be legally viable and valid.  *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co*., 64 F.3d 1112 (7th Cir. 1995) (applying Texas law to affirm judgment on the pleadings because plaintiff's reading of insurance policy provision at issue was invalid as a matter of law); *Bartley v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 824 F. Supp. 624, 630 (N.D. Tex. 1992) (granting motion to dismiss for insurer where no coverage was provided on the "face of the [insurance] contract").  As the Supreme Court recently stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 1949-50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Insurers misstate the standards that govern Rule 12(c) motions in an effort to put the bar for BP's motion out of reach. For example, Ranger asserts that "[t]he motion must be denied unless there appears 'to a certainty' that no relief is possible under any state of facts the plaintiff could prove in support of their claim." Ranger Opp. (docket no. 3704-1), at 5 (citing *Mostowy v. United States*, 966 F.2d 668, 672 (Fed. Cir. 1992)). The authority to which Ranger refers, however, relied on the pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957). As the Court is well aware, that standard was overruled four years ago *Twombly*, where the Supreme Court stated that *Conley*'s "beyond doubt" and "no set of facts" standard "has earned its retirement" and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562-63 (emphasis added). Here, the Insurers' claims have not been "stated adequately" because they are directly at odds with controlling law and the clear terms of the insurance policies they issued. Accordingly, judgment on the pleadings is in order.

The Insurers have likewise outlined a number of alleged "facts" or "material allegations" that they contend the Court must accept as true for purposes of BP's motion, or that they say BP "has not established" in its favor by evidence. *See* Excess Insurers Opp. (docket no. 3705) at 11, 15; Ranger Opp. (docket no. 3704-1), at 27-28. None of these purported facts, however, is a material factual allegation for purposes of the "scope of coverage" question presented by BP's motion, which "the *ATOFINA* rule" recognizes as a pure question of law.

The first "material allegation" listed by the Excess Insurers, concerning alleged "drilling industry custom," is an effort to vary and look beyond the plain language of the policies and the Drilling Contract, in the hope that the Court will find that *ATOFINA* and *Aubris* do not

apply.  Excess Insurers Opp. (docket no. 3705), at 11.  By their terms, however, those cases do

apply.  Moreover:

- Transocean's main argument in opposing BP's motion is that the outcome of this case depends on the "plain language" of the insurance policies and the additional insured provisions of the Drilling Contract (Transocean Opp. (docket no. 3707-2), at 5);

- Ranger concedes that "parol evidence ... is not admissible to create an ambiguity" (*see, e.g.*, Ranger Opp. (docket no. 3704-1), at 25);

- Ranger further acknowledges that parol or other extrinsic evidence is not relevant unless the insurance policy language is ambiguous (*see id.* at 27); and

- in an effort to avoid the powerful, pro-coverage rules of insurance policy interpretation under Texas law, the Insurers and Transocean collectively argue that the policies and the Drilling Contract provisions at issue here are clear or unambiguous.[9]

The remaining "material allegations" listed by the Insurers are equally immaterial

and, in some instances, are not even assertions of fact.  Excess Insurers Opp. (docket no. 3705) at

11, 15; Ranger Opp. (docket no. 3704-1), at 27-28.  They include, exclusively:

- summaries of the Drilling Contract's indemnity provisions — the specific language of which can be found in the contract itself, is not in dispute, and is legally immaterial to the coverage afforded by the insurance policies under the rule set forth in *ATOFINA* and *Aubris*;

- assertions of legal conclusions (*e.g.*, whether "[t]he Drilling Contract limited BP's additional insured coverage to the liabilities assumed by Transocean under the terms of the Drilling Contract;" whether "the policies are ambiguous");

- assertions about underlying facts relating to BP's and Transocean's respective *indemnity* obligations, rather than the Insurers' *insurance* obligations, which are the issue here; or

- assertions about legal or factual propositions that, as a matter of insurance policy interpretation under governing Texas law, are

---

[9]  *See* Ranger Opp. (docket no. 3704-1), at  25-26; Excess Insurers Opp. (docket no. 3705) at 15; Transocean Opp. (docket no. 3707-2), at 7.

facially immaterial to what BP must show to prevail on this motion
(*e.g.*, whether the Excess Insurers "drafted the Excess Policies;"
whether the Excess Policies "are contracts of adhesion;" whether
Transocean "had less than equal bargaining power [relative to the
Excess Insurers] in negotiating the terms of the Excess Policies").

**B.    The Court Has Already Ruled That BP's Motion Is Properly Presented
Under Rule 12(c).**

In an effort to defer any ruling on this motion, the Excess Insurers and Transocean

also argue that the Court should treat BP's motion as a summary judgment motion under Rule 56

— and then deny it as "premature."  Excess Insurers Opp. (docket no. 3705), at 6 n.14;

Transocean (docket no. 3706), at 6 n.3.  But as shown above, there are no "material allegations"

for which discovery or fact findings are needed; the Insurers (and Transocean) have not shown

otherwise; and the sole issue presented by the motion is a question of law, for which there is

clear and controlling authority.[10]

Further, the parties have already litigated this issue, and the Court has already

ruled that BP's motion should be filed and treated as a Rule 12(c) motion.  After extensive

briefing and oral argument before Judge Shushan, the Court ruled last May that "BP may

proceed with a Rule 12(c) motion for judgment on the pleadings and attach the drilling contract

and the insurance policies," and that "[t]here is *no need* for [BP] to request, in the alternative,

summary judgment," because the contract and policies are central to the Insurer Complaints and,

---

[10]  Transocean places great reliance on an excerpt from the deposition of Mr. Anthony Hayward,
former CEO of BP plc.  Under Rule 12(c), and for the reasons stated above, it is neither
necessary nor appropriate to consider parol evidence in deciding BP's motion, and Transocean
itself admits that "[t]he outcome of this case depends upon interpretation of the drilling
contract's additional insured provision" and "the plain language of the policies and the drilling
contract."  Transocean Opp. (docket no. 3707-2), at 5.  Transocean also mischaracterizes the
passage it cites.  Mr. Hayward (who notes that he is "not a lawyer" and "do[es]n't know anything
about the insurance market") is being asked about his general understanding of what insurance
BP itself directly buys as a named insured, not his understanding of BP's rights as an *additional
insured* under the contractor policies at issue.  Transocean Opp. (docket no. 3707-2), at Ex. A.

under settled law, may properly be considered in deciding a motion under Rule 12(c).  Order

Regarding CMO for Insurance Actions (May 31, 2011) (docket no. 2593), at 2 (emphasis added

and citations omitted).  Indeed, the Insurers and Transocean actively *opposed* BP's filing of this

motion as a motion, in the alternative, for summary judgment, and after the Court issued its May

31 order, they *agreed* with BP that it could be presented under Rule 12(c) on a date of the

Court's choosing (subsequently set as September 16).  *See* Agreed Case Management Order

Governing Insurance Actions (June 20, 2011) (docket no. 2849), ¶ V.A.  They cannot be heard to

argue the opposite now.  *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 859 (5th Cir. 2010) ("The

doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that

is contrary to a position previously taken in the same or some earlier proceeding.").

### C.   The Pro-Coverage Interpretation Principles Of Texas Insurance Law Apply.

The Insurers and Transocean also attempt to raise the bar for BP by arguing,

under a wide array of legal theories, that BP is not entitled to the pro-coverage presumptions of

Texas insurance law.  *See, e.g.*, Excess Insurers Opp. (docket no. 3705), at 13-16; Ranger Opp.

(docket no. 3704-1), at 25-28.  None of these assertions withstands scrutiny.  Under Texas law,

"if a contract of insurance is susceptible of more than one reasonable interpretation, a court must

resolve the uncertainty by adopting the construction that most favors the insured."  *Nat'l Union

Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *accord Grain Dealers

Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).  This is a substantive rule of Texas

insurance law, wholly independent of the doctrine of *contra proferentem*.  It applies regardless of

who "drafted" the policy; it requires no finding that the policy is a "contract of adhesion" and no

showing of "unequal bargaining power"; it applies to both additional insureds and named

insureds; and there is no exception to this rule in the case of a "sophisticated insured."

To rebut the Insurers' contrary contentions, one need look no further than *Aubris* and *ATOFINA*, both of which applied the ordinary, pro-coverage principles of Texas insurance law in favor of an additional insured and in the context of an oil industry services contract.  As the Fifth Circuit stated in *Aubris*:

> If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided that interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable.  "In particular, exceptions or limitations on liability [for coverage] are strictly construed against the insurer and in favor of the insured."  We therefore adopt [the oilfield owner's] interpretation in this case if in our review we conclude it is at least reasonable.

566 F.3d at 486 (emphasis in original) (quoting *Hudson Energy Co.*, 811 S.W.2d at 555); *see also ATOFINA*, 256 S.W.3d at 668 (likewise quoting and applying *Hudson Energy*).

Although the Excess Insurers assert that the courts in *ATOFINA* and *Aubris* "implicitly" held the insurance policies at issue in those two cases were "contracts of adhesion" (Excess Insurers Opp. (docket no. 3705), at 16 n.30, 21 n.40), that assertion is pure fiction, and the Excess Insurers offer no citation to support it.  The *ATOFINA* and *Aubris* opinions do not engage in any inquiry to determine the relative bargaining power or sophistication of the parties, or their respective roles in drafting the policy language.  Such factors simply had no bearing on the courts' holdings or their application of the pro-coverage presumptions of Texas law.

Nor is there is a "sophisticated insured exception" to the pro-coverage rules of construction under Texas law.  The Insurers have cited no Texas cases applying this purported exception; BP's own research has revealed none; and it is a matter of public record that, during the past decade, ATOFINA was one of the world's largest and most sophisticated petrochemical companies.  Further, the cases on which the Insurers rely to invoke this purported exception include one decided under Missouri law (*Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir. 1976)); a second that appears to have been decided under Louisiana

- 17 -

law (*McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199 (5th Cir. 1991)); and a third in

which the court acknowledged that "[n]either the court nor the parties are aware of a Texas case

that addresses the sophisticated insureds exception" (*Vought Aircraft Indus., Inc. v. Falvey

Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814, 824 (N.D. Tex. 2010)).[11]

        The Excess Insurers likewise err in asserting that BP deserves lesser treatment

than other insureds because, insofar the policies are concerned, BP is "a stranger to the

contract."  *See* Excess Insurers Opp. (docket no. 3705), at 13.  BP is no more of a "stranger" than

any additional insured, and as *ATOFINA* and *Aubris* have held, the pro-coverage presumption of

Texas law applies to additional insureds.  Further, in all three of the cases that the Insurers rely

upon for this argument, the courts actually found that the party seeking coverage was *not* an

additional insured or a third-party beneficiary of the insurance contract.[12]  Here, by contrast,

there is no dispute that BP is an additional insured under the policies at issue.  The Insurers

themselves so allege.  *Ranger* Am. Compl. ¶ 11; *Lloyd's* Compl. ¶ 11 (admitting that "the

drilling contract requires additional insured protection in favor of certain BP entities").

        Indeed, the Insurers' contention that BP is a "stranger to the contract" is ironic.  It

is undisputed that BP is an intended beneficiary of (and hence, not a "stranger" at all to) the

---

[11]  Despite the absence of any supportive Texas authority, the federal district court in *Vought*
tried to predict what Texas courts would do and curiously concluded that "Texas courts would
apply the exception where the facts warrant," 729 F. Supp. 2d at 825, even though dozens of
Texas cases and Fifth Circuit authorities applying Texas law (including *ATOFINA* and *Aubris*)
have routinely applied the pro-coverage presumption without any inquiry into the sophistication
of the insured.  This Court is bound by *AOFINA*, *Aubris*, and similar cases, not *Vought*.

[12]  *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 2011 WL 3195292, at *13 (5th Cir.
July 28, 2011) ("[W]e affirm the district court's holding that Crowley … is not an additional
insured under the Policy."); *Republic Waste Servs. v. Empire Indem. Ins. Co.*, 98 F. App'x 970,
971 (5th Cir. 2004) (unreported) ("Republic's assertion that it qualifies as an additional insured
under the policy must fail … ."); *Cannon Ball Motor Freight Lines v. Grasso*, 59 S.W.2d 337,
342-43 (Tex. Ct. App. 1933) (concluding that policy did not clearly give plaintiff direct rights
against defendant's insurer).

insurance policies at issue; it is equally undisputed that the *Insurers themselves* are "strangers" to the Drilling Contract and that they are expressly *excluded* from claiming any rights as third-party beneficiaries of that contract.  BP's showing on this point is uncontested.  *See* BP Opening Mem. (docket no. 3211-1), at 6-7, 27.  Further, the core holding of *ATOFINA* is that an insurer may not import into its insurance policy limitations on the scope of coverage that are not *unequivocally stated* within the policy itself; an insurer cannot limit its coverage obligations simply because there are limitations in the scope of an *indemnity* agreement in the underlying service contract, to which the insurer is not a party.

## III.  THE INSURERS AND TRANSOCEAN HAVE MISCONSTRUED THE PLAIN LANGUAGE AND STRUCTURE OF THE POLICIES AND RELY ON FACIALLY INAPPLICABLE POLICY PROVISIONS.

### A.  BP Is An "Insured," And The Drilling Contract Is An "Insured Contract," For All Purposes Under The Policies.

At the heart of the Insurers' (and Transocean's) argument is the suggestion that BP is not entitled to the same scope of coverage as Transocean, the Named Insured.  Under the plain language of the policies, however, BP is an "insured" for all coverage purposes to the same extent as Transocean.  Thus, where there is coverage for Transocean, there is coverage for BP.  There is no difference in the scope of coverage provided to the named insured *versus* additional insureds; the policies treat both equally as "Insureds."

Specifically, as BP showed in its opening submission, the policies define "Insured" to include not only the "Named Insured" (*i.e.,* Transocean, plus others listed in Item 1 of the Declarations and in the Named Insured Clause), but also:

> any person or entity to whom the "Insured" is obliged by any oral or written "Insured Contract" (including contracts which are in agreement but have not been formally concluded in writing) entered into before

any relevant "Occurrence", to provide insurance such as is afforded by this Policy … .[13]

Thus, an "Insured" under the policies includes not only the "Named Insured," Transocean, but also any person or entity to whom the "Insured" is "obliged by any oral or written 'Insured Contract' to provide insurance such as is afforded by this Policy."  *Id.*  Under the terms of the policies, the Drilling Contract is an "Insured Contract."  The policies state:

> The words "Insured Contract", whenever used in this Policy, shall mean any written or oral contract or agreement entered into by the "Insured" (including contracts which are in agreement but have not been formally concluded in writing) and pertaining to business under which the "Insured" assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization.  Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.[14]

As the Insurers acknowledge, Transocean, as the "Named Insured" and thus, also an "Insured" has "assume[d] the tort liability of another party" [*i.e.*, BP] because, *inter alia*, Transocean has agreed to indemnify BP under various other provisions of the Drilling Contract.  Thus, the Drilling Contract is an "Insured Contract," and BP is an "Insured" under the terms of the policies for all purposes.  The Ranger and Excess Policies contain no language limiting the scope of BP's coverage rights to the scope of Transocean's indemnities under the Drilling Contract.  If an entity

---

[13]  Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.13 at TRN-MDL-00237575-76, TRN-MDL-00237597-98, *as amended by* Endmt. 4, ¶¶ 27-28, at TRN-MDL-00237629-30 (emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E, (at TRN-MDL-00235775), Ex. F (at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at TRN-MDL-00236176, 00236182).

[14]  Ranger Policy (Wenk Decl., Ex. D), Sections II.A-II.B, ¶ IV.14 at TRN-MDL-00237576, TRN-MDL-00237598, *as amended by* Endmt. 4, ¶ 32, at TRN-MDL-00237630 (emphasis added); *see also* Excess Policies (Wenk Decl., Ex. E (at TRN-MDL-00235775), Ex. F (at TRN-MDL-00235670), Ex. G (at TRN-MDL-00235948), Ex. H (at TRN-MDL-00236104), Ex. I (at TRN-MDL-00236177, 00236182)).

qualifies is an "Insured," then it is entitled to all coverage that the policies provide (*i.e.*, all "insurance such as is afforded by this Policy").

> **B.      The Insurers' Effort To Rely On A Condition Contained In Section I**
> **Of The Policies Is Misleading And Unavailing.**

To support their argument that the scope of BP's coverage under the policies is limited by the scope of Transocean's indemnity obligations in the Drilling Contract, the Insurers and Transocean direct the Court to <u>Section I</u> of the policies, which provides so-called "protection and indemnity" coverage, rather than to <u>Section II</u> (specifically, II.A), which is the general liability section at issue and the section upon which BP has moved for judgment on the pleadings.  *See* BP Opening Mem. (docket no. 3211-1), at 7 n.6 (noting that BP is only moving under Section II).  They then argue that, under an alleged "priority of coverage" principle, "Section I coverage must be determined before application of Section II.A may be considered," and "if Section I instead provides coverage," then Section II.A may not apply at all.  Ranger Opp. (docket no. 3704-1), at 21.  These arguments are egregiously inaccurate.

> *First*, the Insurers and Transocean prefer Section I of the policies because it contains a condition in respect to "additional insureds" that appears nowhere in Section II — or in the expansive definitions of "Insured" and "Insured Contract" set out in Section II.  The condition in Section I on which the Insurers and Transocean rely states:  "The Insured has privilege to name others as an *additional Insured* for their respective rights and interests and/or waive any rights of recovery, but *only to the extent as may be required under contract or agreement*."  Ranger Policy (Wenk Decl., Ex. D), § I, Condition D.1, at TRN-MDL-00237553 (emphasis added).  The Excess Policies contain materially identical language.  *See, e.g.,* Wenk Decl., Ex. E, § I, Condition D.1, at TRN-MDL-00235693.  By its terms, however, this condition

is a part of, and only applies to, Section I of the policies, which is the "protection and indemnity" coverage section.[15]  The fact that the Insurers have invoked and relied upon a condition that can only be found in a section of the policy that is expressly *not* the subject of BP's motion is telling: it reinforces that there is no such condition in Section II and that if any such condition had been agreed to there, it would have been included there.

  *Second*, it is settled law in Texas (and elsewhere) that, when interpreting an insurance policy with multiple coverages, "[e]ach coverage provision of each policy, along with its respective definitions and exclusions, must be read as separate and distinct."  *M.J.R. Corp. v. Scottsdale Ins. Co.*, 803 S.W.2d 426, 430 (Tex. Ct. App. 1991); *accord Travelers Lloyds Ins. Co. v. Dyna Ten Corp.*, No. 2-08-502-CV, 2009 WL 2619232, at *4 (Tex. Ct. App. Aug. 26, 2009); *TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 660 (Tex. Ct. App. 2005).  The Insurers' contrary argument is akin to suggesting that the Court should apply a condition from a D&O, property, or automobile policy to the coverage provisions of a general liability policy, simply because the two coverages were bound and issued together as part of a multi-line policy.  The Insurers know better.  *See* Ranger Opp. (docket no. 3704-1), at 7 (admitting, in passing, that Condition D.1 is applicable to Section I "only").

  *Third*, for a condition to apply across multiple coverages in a multi-line policy, the condition must be one of the policy's "General Conditions," applicable to all coverages, not a condition confined to a single coverage section.  Here, the General Conditions further refute the Insurers' position, as they expressly *exclude* the application of Condition D.1 in Section I to BP's

---

[15]  Protection and indemnity insurance typically "covers losses, damages, expenses, or sums that the assured, 'as owner' of a vessel or schedule of vessels 'shall have become legally liable to pay and shall have paid.'"  LAW AND PRACTICE OF INSURANCE COVERAGE LITIGATION, ¶ 53:12 (2011); *see also Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1099 (5th Cir. 1997) ("P & I insurance covers shipowners, charterers, and the similar individuals for liabilities to third parties arising out of the operation of the vessel.").

coverage claim under Section II.  General Condition No. 2, which the Insurers fail to mention, is called the "Conflicting Conditions Clause."  It states that "*In the event of a conflict between the clauses contained in* the General Conditions, *Sections I and II*, and endorsements, *the broadest interpretation will inure to the benefit of the Insured*."  Ranger Policy (Wenk Decl., Ex. D), Endmt. 1, Item 2, at TRN-MDL-00237611 (emphasis added).  General Condition No. 15, which the Insurers also fail to mention, is entitled "Priority of Payments."  It states:  "Claims may be recovered *in any sequence at the option of the Insured*, with *priority of payment being at the Insured's sole direction. Id.*, Endmt. 1, Item 15, at TRN-MDL-00237613 (emphasis added).

By their terms, these two provisions refute the Insurers' reliance on Condition D.1 in Section I, as well as their "priority of coverage" argument:  as an additional insured under Section II, BP is entitled to claim coverage thereunder, even if coverage for the same loss might be excluded under Section I, and without a prior determination of coverage under Section I.  And if BP is entitled to the scope of coverage for which it has claimed under Section II, then it is irrelevant what the result would be under Section I.  There is simply no requirement in either the policies or Texas insurance law that requires BP to seek coverage under one line of coverage, prior to or rather than another, and Ranger, which devotes six pages to this argument, has not cited a single case or policy provision to the contrary.

*Fourth*, Ranger's assertion that one must first determine "if Section I … provides coverage" to BP is wordplay.  The Insurers have not accepted coverage for BP's pollution-related liabilities under Section I; they have denied coverage.  They cannot now contend that it is an open issue or that BP's pursuit of its claim under Section II is "premature."  Ranger Opp. (docket no. 3704-1), at 23.

*Fifth*, even if the Section I condition that the Insurers and Transocean have invoked properly applied here, under the pro-coverage presumptions of Texas law, it would lend

- 23 -

them no support.  The condition reads:  "The Insured has privilege to name others as an additional Insured for their respective rights and interests and/or waive any rights of recovery, but only *to the extent* as may be required under contract or agreement."  Ranger Policy (Wenk Decl., Ex. D), § I, Condition D.1, at TRN-MDL-00237553 (emphasis added).  As used here, the phrase "to the extent" is ambiguous and may reasonably be read two ways.  Either (a) it imposes a condition that the Insured may name others as additional Insureds, but *only if* required to do so under a contract or agreement, or (b) it imposes a condition that the Insured may name others as additional Insureds, but *solely to the degree* required under a contract or agreement.[16]  Under *ATOFINA*, *Aubris*, and other cases applying Texas law, the Court must apply the former, pro-coverage interpretation, under which the condition addresses *entitlement* to additional insured coverage and is not a limitation on the *scope* of such coverage.

### C.   The Insurers And Transocean Misconstrue General Condition No. 3.

The Insurers and Transocean also invoke General Condition No. 3 of the policies in opposition to BP's motion.  *See* Ranger (docket no. 3704-1), at 7; the Excess Insurers (docket no. 3705), at 7; and Transocean (docket no. 3707-2), at 8.  This provision, entitled "Additional Insured/Waiver of Subrogation," states:  "Underwriters agree where required by written contract, bid or work order, additional insureds are automatically included hereunder, and/or waiver(s) of subrogation are provided as may be required by contract."  Ranger Policy (Wenk Decl., Ex. D),

---

[16]  Numerous courts, including at least three federal courts of appeals, have held that the phrase "to the extent" is ambiguous in comparable contexts because it can be read to mean either "only if" or "solely to the degree that."  The fact that numerous federal courts have reached this conclusion is definitive proof of the phrase's ambiguity here.  *See Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246-47 (5th Cir. 1996); *see also Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352, 1356-57 (11th Cir. 2008); *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 404 (6th Cir. 1998).

Endmt. 1, Item 3, at TRN-MDL-00237611.  The Excess Policies contain materially identical language.  *See, e.g.*, Wenk Decl., Ex. E, Endmt. 1, Item 4 at TRN-MDL-00235754.

Because this provision is a General Condition, the Insurers and Transocean are correct that it properly applies to the policies as a whole and to the general liability coverage (Section II) that is the subject of BP's motion.  But Ranger and Transocean misread and distort this straightforward condition.  As they quote and construe it in their submissions, it imposes a substantive limitation on the scope of the policies' additional insured coverage.  They read it to mean that "additional insureds" are only entitled to as much coverage as is "required by written contract, bid or work order," but the plain language of the provision states otherwise.

The provision contains two independent clauses separated by a comma.  The first is an "additional insured" clause, and the second is a "waiver of subrogation" clause.  The "additional insured" clause provides — in language that strongly supports *BP's* position — that "Underwriters agree where required by written contract, bid or work order, additional insureds are *automatically included hereunder*."  Ranger Policy (Wenk Decl., Ex. D), Endmt. 1, Item 3, at TRN-MDL-00237611 (emphasis added).  On its face, this language imposes no substantive limitation on coverage.  It simply provides that "where required" by contract to be additional insureds, "additional insureds are automatically included hereunder."  The phrase "where required" does nothing to restrict the *scope* of coverage provided, and the phrase "*automatically included hereunder*" indicates that additional insureds are "automatically" entitled to whatever coverage (and scope of coverage) the policies provide.

The "waiver of subrogation" clause has nothing to do with the issue of additional insured coverage at all.  It simply states "waiver(s) of subrogation are provided as may be required by contract."  *Id.*  Here, the Drilling Contract contains an express waiver of subrogation in Exhibit C ("Insurance Requirements"), which states:  "All [Transocean's] insurance policies

- 25 -

shall be endorsed to provide that underwriters and insurance companies of [Transocean] shall not have any right of subrogation against Vastar [*i.e.*, BP], its subsidiaries, co-owners and joint venturers, if any, and their agents, employees, officers, invitees, servants, contractors, subcontractors, insurers, and underwriters." Drilling Contract (Wenk Decl, Ex. C), Ex. C, ¶ 4, at TRN-MDL-00027436. Thus, by operation of the policies' "waiver of subrogation" clause, the Insurers cannot sue BP (*i.e.*, one of their own insureds) in subrogation of amounts paid to Transocean (or other insureds). The clause thus confers benefits on additional insureds; it does nothing to restrict their rights.[17]

## IV. THE INSURERS AND TRANSOCEAN MISLEADINGLY QUOTE THE "ADDITIONAL INSURED" PROVISION OF THE DRILLING CONTRACT.

Even if the Court were to decide (despite *ATOFINA* and *Aubris*) that reference to the Drilling Contract is appropriate in determining the *scope* of BP's additional insured coverage rights under the policies, and not simply BP's entitlement to the *status* of an additional insured, it still should grant BP's motion. Contrary to the representations of the Insurers and Transocean, the plain language of the insurance provision of the Drilling Contract does not support the conclusion that BP should be entitled to additional insured coverage *only* for the liabilities assumed by Transocean under the *indemnity* provisions of the Drilling Contract.

The relevant provision in Exhibit C of the Drilling Contract, captioned "Insurance Requirements," states in full:

> Vastar [*i.e.*, BP America Production Co.], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents shall be named as additional insureds in each of CONTRACTOR'S [*i.e.*, Transocean's] policies, ***except***

---

[17]  Even if one could read General Condition No. 3 as purporting to restrict additional insured coverage, under General Condition No. 2 (discussed above) and background Texas law, the Court would be required to read the provision in a pro-coverage manner and consistently with pro-coverage readings of the definitions of "Insured" and "Insured Contract."

> ***Workers' Compensation for liabilities assumed by CONTRACTOR
> under the terms of this Contract***.

Drilling Contract Ex. C (Wenk Decl., Ex. C), ¶ 3, at TRN-MDL-00027435 (emphasis added).

As written, this provision imposes a very limited exception on Transocean's duty to obtain

additional insured coverage for BP: "Workers' Compensation" is the only type of coverage

carved out from Transocean's contractual obligation to name BP as an additional insured.

Throughout their submissions, however, the Insurers and Transocean obscure this

fact, and the plain language of this provision, by repeatedly emphasizing the exception — but

without emphasizing the first three words: "except Workers' Compensation." Thus, in their

submissions, this provision is quoted repeatedly as follows:

> [BP], its subsidiaries and affiliated companies, co-owners, and joint
> venturers, if any, and their employees, officers and agents shall be
> named as additional insureds in each of [Transocean's] policies, except
> Workers' Compensation ***for liabilities assumed by [Transocean]
> under the terms of this Contract***.

Transocean Opp. (docket no. 3707-2), at 12, 21, 27 (as emphasized by Transocean at 12, 21);

Ranger Opp. (docket no. 3704-1), at 13; Excess Insurers Opp. (docket no. 3705), at 5. Under the

provision's plain language, there is manifestly no restriction on the scope of the *general liability*

coverage that Transocean is required to obtain for BP's protection as an additional insured; the

exception pertains only to "Workers' Compensation for liabilities assumed by [Transocean]

under the terms of this Contract."

To support the reading advanced by the Insurers and Transocean, at a minimum,

there would need to be a comma after "Workers Compensation." But there is no such comma,

and the Insurers and Transocean do not argue that there should be. Rather, they accept (and

indeed, insist) that there is no ambiguity to this provision and that its plain language controls.

*See* Transocean Opp. (docket no. 3707-2), at 5. Their argument thus fails on its face. Under the

pro-coverage principles of construction mandated by *Aubris* and *ATOFINA*, the broad limitation

- 27 -

advanced by the Insurers and Transocean simply is not there; the limitation applies only to "Workers' Compensation."[18]

Moreover, even if  a comma were inserted — indeed, even if the words "except Workers Compensation" could be *wholly ignored or deleted* — the provision still would not support the interpretation that the Insurers and Transocean advance.  So written, the Drilling Contract would require that Transocean provide additional insured coverage to BP "for liabilities assumed by [Transocean] under the terms of this Contract."  It would not provide  that BP is entitled to coverage *only* for such liabilities, especially if the *policies themselves* provide more.  There is no "only" (or similarly restrictive term or language) in the provision.  Stated differently, if the key language in Exhibit C were to read as the Insurers and Transocean argue, then insofar as the policies provide coverage "for liabilities assumed by [Transocean] under the terms of this Contract," they would meet a *minimum requirement* for additional insured coverage that the Drilling Contract imposes on *Transocean* (and Exhibit C to the Drilling Contract is labeled "Insurance Requirements").  The proper *scope* of such coverage, however, would still be determined by the *policies themselves.  See, e.g., ATOFINA*, 256 S.W.3d at 662-64 (holding that the additional insured provision at issue stated a contractually required minimum of $500,000 of excess liability coverage but that the additional insured was entitled to $5.75 million because the policy provided that amount).

---

[18] *See Aubris*, 566 F.3d at 486 ("If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided the interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable." (emphasis in original)).  Under Texas contract law, even in a non-insurance context, "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Offshore drilling contractors certainly know how to write "additional insured" provisions that restrict their duty to provide coverage for the oil companies that hire them when the parties have agreed to more limited coverage.[19]  The parties to the Drilling Contract did not to use such language here.

## CONCLUSION

For the reasons set forth above and in BP's opening submission, the BP Parties respectfully request that the Court grant their motion for judgment on the pleadings in respect to the Insurer Complaints and that the Court issue the specific relief and declarations prayed for in BP's motion.  *See* BP's Motion (docket no. 3211).

Respectfully submitted,

/s/David B. Goodwin
David B. Goodwin
M. Alexia dePottere-Smith
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA  94111
Tel:  (415) 591-6000
Fax:  (415) 591-6091
E-mail:  dgoodwin@cov.com
E-mail:  adepottere@cov.com

Allan B. Moore
Christopher J. Wenk
Mark D. Herman
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Tel:  (202) 662-6000
Fax:  (202) 778-5575
E-mail:  abmoore@cov.com
E-mail:  cwenk@cov.com
E-mail:  mherman@cov.com

*Counsel for BP Exploration & Production Inc., BP America Production Company, BP Corporation North America Inc., BP Company North America Inc., BP Products North America Inc., BP America Inc., BP Holdings North America Limited, and BP plc*

---

[19]  This fact is not only self-evident; it is also a matter of public record.  *See, e.g.*, William W. Pugh, *The IADC Offshore Drilling Contract*, *in* Oil and Gas Development on the Outer Continental Shelf (Rocky Mountain Mineral Law Special Institute, 102C Special Institute 1998), *available at* Westlaw 102C RMMLF-INST 8, at *39 (quoting the additional insured language in the International Association of Drilling Contractors Offshore Daywork Drilling Contract, ¶ 1004 (rev. Feb. 1997), which provides that Contractor shall name Operator as additional insured, under its policies of insurance "*but only with respect to and to the extent of* the liabilities *specifically assumed* by Contractor under this Contact" (emphasis added)).

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of August, 2011.

/s/Christopher J. Wenk
Christopher J. Wenk