**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

---

| | | |
|---|---|---|
| | ) | |
| **In Re:  Oil Spill by the Oil Rig** | ) | **MDL No. 2179** |
| **"Deepwater Horizon" in the** | ) | |
| **Gulf of Mexico, on** | ) | |
| **April 20, 2010** | ) | **SECTION: J** |
| | ) | |
| | ) | |
| **This Document Relates to:** | ) | **Judge Barbier** |
| *Case No. 2:10-cv-04536-CJB-SS* | ) | **Mag. Judge Shushan** |
| | ) | |

---

**PROPOSED INTERVENOR SIERRA CLUB, INC.'S REPLY MEMORANDUM TO
OPPOSITIONS TO SIERRA CLUB INC.'S OBJECTIONS TO
<u>MAGISTRATE'S ORDER DENYING INTERVENTION</u>**

Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th Street, Suite 102W
Boulder, CO 80301
tel (303) 449-5595
fax (303) 449-6520
eric.huber@sierraclub.org

Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
tel (415) 977-5721
fax (415) 977-5793
devorah.ancel@sierraclub.org

## I.    INTRODUCTION

Sierra Club unequivocally meets the criteria for intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2). First, it is undisputed that Sierra Club's motion is timely. Second, Sierra Club claims "legally protectable" interests in the subject matter of the action set forth in declarations describing the unique environmental interests of its members. Indeed, it is "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Prk Serv*., 604 F.3d 1192, 1198 (10th Cir 2010). In addition, Sierra Club's interests in civil penalties as a deterrent and its interests in potential settlement are well-recognized interests sufficient to warrant intervention as of right. Third, absent full participation in the litigation, Sierra Club's legally protected interests would be impaired. Fourth, the U.S. cannot adequately represent Sierra Club in the instant litigation because their interests are adverse: the U.S. was complicit in the events leading up to and in response to the spill; the U.S. must represent the public at-large; and industry influence on the government's drilling policies and decisions that led to the spill undermine Sierra Club's exclusive interests in the protection of the environment. Alternatively, Sierra Club satisfies the requirements for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).[1]

In their response briefs, the United States and Defendants attempt to muddy the straightforward Rule 24(a)(2) analysis by misapplying clear Supreme Court precedent and making inconsequential distinctions that are irrelevant to the intervention determination here.

The Magistrate's Order denying Sierra Club's intervention is "clearly erroneous" because it misapplies relevant case law and overlooks numerous facts that support Sierra Club's

---

[1] *See Sierra Club's Memo Objecting to the Magistrate's Order,* Doc. 3450 at 23-25 (describing how Sierra Club meets the requirements for permissive intervention).

intervention as of right. The Magistrate's Order denying Sierra Club's intervention concludes that Sierra Club's interests are too "generalized" to warrant intervention as of right. To the contrary, Sierra Club's exhaustive declarations demonstrate its members' unique and specific interests in the outcome of the litigation. In addition, the Order contradicts Supreme Court precedent in concluding that Sierra Club does not fall within the zone of interests of civil penalties by casting this case as purely retrospective. Indeed, the assessment of penalties is prospective in nature; penalties help shape actions that prevent future catastrophic spills. Sierra Club's interests in maximizing penalties as a deterrent is undeniable, and is one of Sierra Club's many "direct, substantial, and legally protectable" interests in the litigation described herein.

## II.   SIERRA CLUB SATISFIES THE REQUIREMENTS TO INTERVENE AS OF RIGHT IN THIS CASE

The Fifth Circuit has clarified that "[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application" and that "intervention of right must be measured by a practical rather than a technical yardstick." *Ross v. Marshall,* 426 F.3d 745, 753 (5th Cir. 2005). As set forth below, the facts, circumstances and potential outcomes of the litigation implicate Sierra Club's acute interests of ensuring full accountability and future protection of the Gulf of Mexico ecosystems from the hazards of deep water drilling. As a preliminary matter, it is undisputed that Sierra Club's motion is timely.

### a)   Sierra Club's Interests are Direct, Substantial and Legally Protectable.

Sierra Club claims a direct and substantial interest in the subject matter of this action. To meet this requirement, the applicant should have an interest "which the substantive law recognizes as belonging to or being owned by the applicant," *Id.* at 753. It is well recognized that aesthetic and environmental concerns are cognizable, "legally protected interests." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 563-64 (1992) (*citing Sierra Club v. Morton*, 405 U.S.

727, 734, 740-41 (1972)), and that these interests are sufficient to meet the direct and substantial interest requirement for intervention. *See also, WildEarth Guardians* at 1198 ("It is indisputable that a prospective intervenor's environmental concern is a legally protectable interest."). As set forth in *seven* declarations, Sierra Club members have recreational, aesthetic, and scientific interests in the lands and water impacted by the oil spill, and these interests will be affected by the outcome of this litigation. *See* Doc. 1621-2 at 4-7.

In its response brief, the U.S. misapplies Supreme Court precedent. The U.S. erroneously argues that *Trbovich v. United Mine Workers*, 404 U.S. 528 (1971) stands for the proposition that intervention is warranted based on the party to which rights may be conferred under a given statute, and, because the substantive provisions of the CWA and OPA are there to protect the public at large, Sierra Club's interests are not implicated so as to warrant intervention. Doc. 3796 at 5. However, as affirmed by the Magistrate's Order, Doc 3065 at 4, *Trbovich* does *not* stand for that proposition. Rather, *Trbovich* demonstrates that intervention of right is warranted when it is the only means by which to protect the applicant's interests. As is the case here, the intervenor in *Trbovich* could not bring its own action under the statute the government was suing under, and therefore intervention was necessary to adequately protect the intervenor's interests. The United States' irrelevant distinction attempts to sidestep the straightforward Rule 24(a)(2) analysis. In short, intervention in this case is the only means for Sierra Club to adequately protect its legally protected interests in environmental protection, and therefore under *Trbovich* Sierra Club is entitled to intervention of right under Rule 24(a)(2).

3

In addition, because civil penalties serve the purpose of specific as well as general deterrence, Sierra Club has an interest in seeing the civil penalties maximized.[2] *See generally, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167, 185-88, 194 (2000). (discussing civil penalties' deterrent effect); and *id.* at 97 (Stevens concurring)(equating civil penalties under the CWA with punitive damages). Punitive damages punish the actor not just for past conduct, they have a deterrent effect on its *future* conduct as well as a general deterrent effect on similar conduct by others. *Wesson v. United States*, 48 F.3d 894, 899 (5th Cir. 1995); see also *Lacoste v. Crochet*, 751 So. 2d 998, 1007 (La. Ct. App. 2000)(concurring opinion). Moreover, because the CWA civil penalty funds can be used to remediate the impacts of the spill, Sierra Club has an interest in seeing that they are used to address the specific environmental harms in the Gulf areas where its members are located. Conversely, if the natural resources are not adequately compensated and Defendants are not forced to pay fines that will reform theirs and others' future conduct, Sierra Club's interests in environmental protection, and specifically the resources of the Gulf of Mexico, will be threatened.

The U.S. and Defendant's response briefs are unpersuasive in their attempt to make light of the deterrent role of penalties particularly in this case, which, if vigorously prosecuted, could be of an unprecedented size. The U.S. and Defendants make several extraneous arguments and distinctions that attempt to undermine Sierra Club's clear and direct interest in penalties as a deterrent. Doc. 3796 at 7-9; Doc. 3798 at 17-19. In particular, BP's argument that the deterrent element is limited to cases in which there are ongoing violations is erroneous. At issue in

---

[2] A civil penalty "shall consider the seriousness of the violation … the degree of culpability involved, … the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, … and any matters as justice may require." 33 U.S.C. § 1321(b)(8).

*Laidlaw* was whether civil penalties constitute an adequate form of redress sufficient to establish Article III standing. However, standing need not be shown in the Fifth Circuit,[3] so BP's argument that *Laidlaw* requires an ongoing violation at the time of filing is irrelevant. Indeed, *Laidlaw's* significance relates to an environmental group's interest in civil penalties as a deterrent and their ability to redress injuries even though they are paid to the U.S. Treasury for general use.[4] *Laidlaw* at 185-88. Here, the interest in penalties is even stronger since the civil penalties go not into the general Treasury, but to the federal Oil Spill Liability Trust Fund, which is dedicated to respond to this and future oil spills. 33 U.S.C. § 1321(s). Indeed, the amount of civil penalties imposed in this action will impact Sierra Club's interest. Sierra Club is concerned that the U.S. cannot make arguments to support maximum penalties because it will implicate itself in its decisions that contributed to the oil spill and ongoing harms. Sierra Club's interest in the assessment of penalties is one of several factors that support Sierra Club's intervention as of right and this court should not be swayed by arguments that run astray of the 24(a)(2) analysis.

Similarly, the United States' request for injunctive relief could include remedial measures, including ongoing skimming as new oil surfaces, beach and wetland cleaning, and monitoring for the persistence of toxic chemicals in waters. Sierra Club has longstanding, local expertise that would facilitate the identification and management of oil spill mitigation and

---

[3] Article III standing is not required for intervention in the Fifth Circuit. *See Newby v. Enron Corp.,* 443F.3d 416, 422 (5th Cir. 2006)("In contrast, there is no Article III requirement that intervenors have standing in a *pending case* … In *Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998), we held 'that Article III does not require intervenors to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so.'" *Id*. at 830 (emphasis added)). Significantly, standing requires a greater interest than intervention. <u>Didrickson v. U.S. Dept. of Interior</u>, 982 F.2d 1332, 1337 (9th Cir. 1992).
[4] *Laidlaw's* holding also rebuts the United States' argument that the ultimate disposition of penalties paid into the Oil Spill Liability Trust Fund are too intangible to support intervention. Doc. 3796 at 9-10.

remediation projects. Hence, Sierra Club has a direct and concrete interest, far more particularized than that of the general public, in this litigation and any potential settlement that could include requirements for remedial measures and "supplemental environmental projects."

Moreover, an organization such as Sierra Club also has a right to intervene to ensure that a law is properly enforced, particularly where the proposed intervenor has demonstrated a longstanding interest in that law. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245-47 (6th Cir. 1997). Sierra Club has years of experience enforcing the CWA through citizen suit enforcement litigation and advocacy, and has participated in numerous public meetings and administrative proceedings in connection with the oil spill's Natural Resource Damages Assessment pursuant to OPA. In addition, Sierra Club's interests in this litigation, including the comprehensive clean up and future protection of the Gulf of Mexico from this and future oil spill disasters, are the same as those it seeks to vigorously vindicate in other related litigation and legal actions to which it is a party.[5] Sierra Club's involvement in these related actions further elucidate Sierra Club's heightened interest in the instant litigation.

The Magistrate's Order erroneously concludes that "Sierra Club's interests fall outside of the zone of interest[6] of the statute under which the U.S. is proceeding" because "Sierra Club and its members assert no more than a generalized interest in ensuring that environmental laws as they relate to the Gulf of Mexico and its natural resources are enforced." Order at 13. To the contrary, it is well recognized that conservation groups' interests fall within the broad zone of

---

[5] See *Sierra Club's Memorandum of Legal Authority in Support of Motion to Intervene*, Doc 1115-1 at 10-11 (describing Sierra Club's litigation challenging government's approval of drilling exploration plans and intervention in industry challenge of government's 6-month drilling moratorium).

[6] As the Magistrate affirms, the Fifth Circuit's zone of interest standard applies here because this is a public law case. *New Orleans Public Service, Inc. v. United Gas Pipeline Company*, 732 F.2d 452 (5th Cir. 1984)(*en banc*).

interests protected by public environmental laws,[7] and Sierra Club's acute interests in this litigation, exemplified in its exhaustive declarations, its desire to maximize penalties as a deterrent and its interest in injunctive relief, demonstrate that Sierra Club falls within the zone of interests of the CWA and OPA.

> **b)** **The Outcome of this Litigation May, as a Practical Matter, Impair Sierra Club's Ability to Protect its Interests.**

The disposition of this action could impair or impede Sierra Club's ability to protect its interests. At play here are the "practical consequences," beyond those "strictly legal [in] nature," of denying intervention. *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) and *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995). The outcome of this action could adversely impact Sierra Club's interests if Defendants prevailed on the gross negligence issue, on the number of gallons discharged or on other grounds that could lead the Court to assess a lesser amount of penalties under CWA § 311. That would mean less penalty funds would be available in the Oil Spill Liability Trust Fund for remedial projects that will benefit the natural resources in which Sierra Club members have a significant interest. Absent participation throughout the litigation and in the context of potential settlement negotiations, Sierra Club's interests would be impaired or impeded. As Sierra Club has previously stated, in light of its acute interests, the ability to comment just prior to consummation of a settlement prevents its meaningful participation, and thus would impair its members' interests. In addition, an opportunity to submit an amicus brief instead of full participation would impair Sierra Club's ability to develop critical facts that the U.S. may not develop during discovery, but that would have a strong bearing on the outcome of the litigation, including on the assessment of penalties.

---

[7] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 872 (1990); *Natural Resources Def. Council, Inc. v. Jamison*, 787 F. Supp. 231, 243 (D.D.C. 1990); *Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478 F.Supp.2d 11, 16 n.5 (D.D.C. 2007).

Participation throughout litigation and settlement negotiations provides Sierra Club an opportunity to "bring [its] particular knowledge and expertise to bear on the statutory issue," which would permit Sierra Club to fully protect its interests, thereby ensuring that its interests are not impaired or impeded. *See* 76 A.L.R. Fed. 762 § 5[a] (*citing Southeast Alaska Conserv. Council v. Watson*, 701 F.2d 186 (Table)(9th Cir. 1983)(unpublished)). Sierra Club brings decades of knowledge and experience enforcing the Clean Water Act and legal limitations related to unlawful discharges into navigable water of the United States. It is therefore in a special position to contribute significantly to the disposition of the United States' claims. Sierra Club's contribution is particularly critical because, as described in more detail below, it would be the sole party that can and would, without hesitation, place the interests of environmental protection and future deterrence first and foremost. In sum, an outcome that provides for insufficient relief would impair Sierra Club's interest in enjoying and protecting the Gulf of Mexico and other ecosystems threatened by the hazards of deep water drilling.

   **c)**      **The United States Cannot Adequately Represent Sierra Club's Interests.**

Sierra Club's interests are not adequately represented by the United States in this action. Even though an intervenor's burden of showing inadequacy of representation is "minimal," *Trbovich* at 528, Sierra Club has made a strong and detailed showing that it and the U.S. have different and adverse interests; that the U.S. has conflicts of interests that favor oil industry interests in deep water drilling; and that the U.S. likely will not make all available arguments to support maximum penalties because it was complicit in the events leading up to and in response to the spill. The facts demonstrate that Sierra Club has met the heightened burden that arises

when the putative representative is a governmental body that presumably has the same ultimate objective in the litigation.[8]

Many facts exemplify the United States' insufficient representation of Sierra Club in this matter. Sierra Club is solely dedicated to protecting the environment and is not influenced by the economic and political interests that the U.S. must balance when making critical decisions, such as its decision to permit drilling without adequate environmental safeguards and its decision to allow BP to unleash unprecedented quantities of toxic dispersants without knowing their long-term environmental and human health impacts. The facts surrounding these decisions are central to the CWA §311 claim for penalties, as they are potential aggravating factors that support maximizing penalties. The U.S. actually stated it will not develop these facts fully because a determination of gross negligence and willful misconduct relates to actions taken that led to the discharge, not those taken to remove the oil once it has been discharged. Doc. 3796 at 19. Importantly, this is an attempt to avoid the fact that the use of dispersants as an oil spill response mechanism was incorporated into BP's Oil Spill Response Plan, which was approved by the government as a prerequisite to the commencement of drilling. Thus, the use and approval of dispersants is a factor that must be integrated into the assessment of penalties. The fact that the U.S. will not make these arguments makes Sierra Club's intervention even more crucial.

Furthermore, the U.S. has once again begun to permit drilling in the deep waters of the Gulf of Mexico without ensuring that drilling operators have the technology and capacity to

---

[8] Although a presumption of adequate representation arises when the putative representative is a governmental body, that presumption is overcome when the applicant shows "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996). A presumption of adequate representation also arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit, but that is overcome when the applicant shows "adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.*

respond to another oil spill disaster, including one permit with a worst case scenario discharge estimated to unleash six times the amount of oil spilled by the Deepwater Horizon disaster.[9] These approvals form the basis of ongoing litigation in which Sierra Club and the U.S are adversaries. Sierra Club has challenged the government's approval of several exploration drilling plans in the Gulf of Mexico for failure to conduct adequate environmental impact analyses and for failure to ensure the integrity of a drilling applicant's oil spill response plan. *See* n.4 *supra*. The Fifth Circuit recognizes that the existence of other overlapping lawsuits indicates a lack of representation by the government, and the government's representation of the broad public interest is not enough. *John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001).

Indeed, Sierra Club and the United States' interests are not aligned, and therefore the existing parties to this litigation do not adequately represent Sierra Club's interests.

## III.   CONCLUSION

The Magistrate's order denying Sierra Club's intervention into this action should be reversed. Sierra Club should be granted intervention of right under Rule 24(a)(2). In the alternative, Sierra Club should be granted permissive intervention under Rule 24(b)(1)(B).

**[Attorneys' Signatures Appear on Following Page]**

---

[9] The government approved the Royal Dutch Shell Plc Exploration Plan in May 2011, permitting the drilling of 5 wells in water depths of 7,200 feet. The Plan anticipates the use of the same "blowout preventer" that failed in the Deepwater Horizon. Moreover, that device has not yet been proven to work under high-risk deepwater conditions.

Respectfully submitted,

**s/ Eric E. Huber**
Eric E. Huber
La. Bar No. 23790
Sierra Club
1650 38th St. Ste. 102W
Boulder, CO 80301
Tel: (303) 449.5595
Fax: (303) 449-5595
eric.huber@sierraclub.org

**s/ Devorah Ancel**
Devorah Ancel
Ca. Bar No. 261038
Sierra Club
85 Second Street, 2nd floor
San Francisco, CA 94105
Tel: (415) 977-5721
Fax: (415) 977-5793
devorah.ancel@sierraclub.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 30th day of August, 2011.

I HEREBY CERTIFY that the above and foregoing was served on Defendant QBE Underwriting Ltd., Lloyds Syndicate 1036 via first class U.S. Mail, postage prepaid, on this 30th day of August, 2011, to George Gilly and Marty McLeod at Phelps Dunbar LLP Canal Place 365 Canal Street, Suite 2000 New Orleans, Louisiana 70130-6534.


**s/ Eric E. Huber**
Eric E. Huber