# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig                    **MDL NO. 2179**
      **"Deepwater Horizon" in the Gulf**
      **of Mexico, on April 20, 2010**        **SECTION J**

Applies to: *All Cases*                              **JUDGE BARBIER**
                                         **MAGISTRATE JUDGE SHUSHAN**

## ORDER

### [Regarding Anadarko's Motion to Compel U.S. (Rec. doc. 3794)]

Anadarko seeks an order compelling the U.S. to provide amended responses to certain requests for admissions ("RFAs").[1]  The U.S. submitted a letter response dated August 30, 2011. Anadarko submitted a letter reply dated August 31, 2011.

The parties acknowledge the importance of the subject matter of the RFAs and their relevance to the claims of the U.S. against Anadarko.  The U.S. alleges that Anadarko was an owner, operator and/or person in charge of an off-shore facility from which oil has been discharged and therefore is subject to penalty.  33 U.S.C. § 1321(b)(7)("OPA").  In assessing the penalty under OPA, the Court is directed to consider a number of penalty factors.  The U.S. contends that any involvement on the part of Anadarko, or any awareness of key events or activities at the Macondo Well are relevant to its claims against Anadarko.

The U.S. contends that it should be permitted to hold open the possibility that additional evidence concerning the subject of the RFAs may be discovered before the trial.  Pursuant to Fed. R. Civ. P. 36(b),

[T]he court may permit withdrawal or amendment [of an admission] if it would

---

[1] The RFAs are 60, 61, 63(b), 63(c), 63(d), 63(e), 63(f), 63(g), 63(h), 63(i), 63(j), 63 (k) and 69.  <u>See</u> Exhibit A to Rec. doc. 3794.

> promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Id. The concern of the U.S. that it would be denied leave to amend or withdraw an admission if evidence was discovered relating to the subject matter of the RFAs is misplaced. For numerous reasons, including the large number of persons deposed, the volume of documents produced by the parties and the need for Phase One discovery of fact witnesses to continue until at least November 4, 2011, the Court would, for good cause shown, permit withdrawal or amendment of an admission.

All of the RFAs concern communications. Anadarko broadly defines communications to include telephone, computer linkups and all documents and ESI containing, summarizing, or memorializing any communication. Rec. doc. 3794 (Exhibit A at 5).

RFA no. 60.

Anadarko requests that the U.S. admit that it has no evidence of communications on April 20, 2010 regarding the well between Anadarko and persons or entities operating the Deepwater Horizon or drilling the well. The U.S. responded:

> Denied. Documentary evidence indicates that on April 20, 2010, Anadarko Defendants accessed daily drilling reports, mud log reports, and wireline information related to the Macondo Well that was uploaded by BP and/or its contractors. In addition, on April 20, 2010, the Anadarko Defendants communicated with BP to convey their approval to temporarily abandon the Macondo Well. Lastly, the United States is aware of numerous informal communications between technical personnel at Anadarko and BP, and it is possible that discussions concerning the Macondo Well occurred on April 20, 2010.

Rec. doc. 3794 (Exhibit A at 8-9). The U.S. contends that it identified a number of communications which fell within the RFA. Anadarko responds that it is not seeking an order requiring the U.S. to admit the RFA. It contends that: (1) the last sentence is improper; (2) it should either be substantiated or withdrawn; and (3) it is nothing more than pure speculation as to the existence of

evidence that may support a claim.

The statement that "it is possible" that communications concerning the well occurred on April 20, 2010 is speculation.  The fact that Phase One discovery is incomplete does not provide the U.S. with a basis for a speculative response.  If evidence of such discussions is discovered, the U.S. can amend its response.

The issue in the above discussion of RFA no. 60 is present with the responses to RFA nos. 61, and 63(b), (c), (d), (e), (f), (g), (h), (i), (j) and (k).  By **Monday, September 19, 2011**, the U.S. shall amend its response to these RFAs to substantiate the statements or withdraw them.

RFA no. 63(c).

Anadarko requests that the U.S. admit that it has no evidence that Anadarko was involved in any communications leading to the decision regarding the cement recipe for abandonment of the well.  The U.S. response can be divided into four parts.

1.    It denies the RFA except as admitted.

2.    It acknowledges that it has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision for any cement recipe for the well.

3.    It states that BP informed Anadarko, before the cement casing occurred, "of certain aspects of the cement procedure for the production casing."  Rec. doc. 3794 (Exhibit A at 11).  These included an April 15, 2010 AFE for production casing, a Daily Operations Report ("DOR") for April 17, 2010 with a 24 hour forecast which included cement, DORs for April 16-18 with information on cement, and the DOR for April 19 with detailed information about the cement recipe.

3

4.      The U.S. concludes with a statement similar to the one at the end of RFA no. 60. "There were also numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject." Id.  Based on the ruling for RFA 60, the U.S. is required to either substantiate this statement or withdraw it.

The U.S. contends that the response clearly demonstrates evidence of communications involving Anadarko and leading to cementing decisions.  Anadarko replies that the communications in part three do no more than inform it as to certain aspects of the cement procedure and they have nothing to do with the decision regarding the cement recipe.  Anadarko demonstrates that the April 19 DOR was received by it after the cement job was completed, so it is not responsive to a RFA concerning communications leading to the decision regarding the cement recipe.  It argues that such communications would have to antedate the cement job.  It contends that the AFE is merely a request for funding for the cement and did not discuss or seek input regarding the cement recipe to be used.  It reports that the remaining DORs did not state what the cement formulation was or how that formulation was chosen.

The RFA is concerned with communications leading up to the decision regarding the cement recipe for abandonment of the well.  A DOR issued after the cement job is completed is not responsive and it is not a basis for denying the RFA.  By **Monday, September 19, 2011**, the U.S. shall amend its response to RFA 63(c) to delete the reference to the April 19 DOR.  It is not required to admit the response as the other information cited by the U.S. is sufficient to deny the RFA. RFA nos. 63(b), (d), (e), (f), (h), (i) and (j).

Except as provided for in the ruling on RFA no. 60, the U.S. is not required to amend its

4

response to RFA no. 63(b) - cement design; RFA no. 63(d) - use of six rather than twenty-one centralizers; RFA no. 63(e) - cement bond log; RFA no. 63(f) temporary abandonment procedure; RFA no. 63(h) - negative pressure test; RFA no. 63(i) - displacement of the riser; and RFA no. 63(j) - cement plug.

RFA no. 63(g).

Anadarko requests that the U.S. admit that it has no evidence that Anadarko was involved in any communications leading to the decision regarding displacing to seawater from 3300' below mud level to above (or across) the BOP before performing a negative pressure test.  The U.S. response can be divided into three parts.

1.      It denies the RFA except as admitted.

2.      It acknowledges that it has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor associated with the well concerning the decision to displace 3300' feet of mud in the well with seawater.

3.      There were numerous informal communications between BP and Anadarko occurring in the days and weeks leading up to April 20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject.

Based on the ruling for RFA 60, the U.S. is required to either substantiate this statement or delete it.  If it cannot substantiate the third part, there is no basis to deny the RFA and it must be admitted.  By **Monday, September 19, 2011**, the U.S. shall amend its response to RFA 63(g) as provided herein.

RFA no. 63(k).

Anadarko requests that the U.S. admit that it has no evidence that Anadarko was involved

in any communications leading to the decision regarding bypassing the Sperry Sun meters on April 20, 2010 during displacement of the well and riser to seawater and offloading of mud to the M/V Damon Bankston.  The U.S. response can be divided into four parts.

1.      It denies the RFA except as admitted.

2.      It acknowledges that it has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision to bypass the Sperry Sun meters on April 20, 2010.

3.      There were numerous internal communications between BP and Anadarko occurring in the days and weeks leading up to April 20, and it is possible that someone working for BP talked with or sent a message to Anadarko on this subject.  Based on the ruling for RFA 60, the U.S. is required to either substantiate this statement or delete it.

4.      In addition, numerous Anadarko employees had access to Insite Anywhere for the well, which reflected that the Sperry Sun meter was no longer registering a reading after 9:08 p.m. on April 20, 2010.

The issue is whether Anadarko's access to Insite Anywhere with the information on the Sperry Sun meter is a sufficient basis for denying the RFA.  The RFA is concerned with communications leading to the decision regarding bypassing the Sperry Sun meters.  The fact that Anadarko possessed information that the  meter was no longer registering a reading after 9:08 p.m. on April 20, 2010 is not evidence of a communication regarding bypassing the meters nor does it raise an inference there was a such a communication.  By **Monday, September 19, 2011**, the U.S. shall amend its response to admit RFA 63(k).

6

RFA no. 69.

Anadarko requests that the U.S. admit that it has no evidence that Anadarko was given authority by any person to make decisions regarding methodologies and activities and/or to control activities in connection with the relief efforts to cap, contain, or otherwise control the source of the oil spill after the incident or in connection with the efforts to control the fire aboard the Deepwater Horizon.  The United States responds in three parts.

1.     It denies the RFA except as admitted.

2.     It acknowledges that it has no information that any representative of Anadarko had ultimate authority to make decisions during the relief efforts.

3.     It states that at least three Anadarko employees were assigned to assist with relief efforts, some for a significant amount of time, and the full scope of their participation is not known to the United States at this time.

The only basis for denying this RFA is the last part.  This presents the same issue as found with RFA no. 60.  The response is speculative.  If discovery demonstrates that anyone of the three Anadarko employees or any other Anadarko employees were given authority to make the decisions described in the RFA, the U.S. can seek leave to amend its response.  By **Monday, September 19, 2011**, the U.S. shall amend its response to admit RFA 69.

IT IS ORDERED that Anadarko's motion to compel (Rec. doc. 3794) is GRANTED in PART and DENIED in PART as provided herein.  **Any appeal of this order must be filed no later than noon on Friday, September 16, 2011.**

New Orleans, Louisiana, this 2nd day of September, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**

7