# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara M. Harding
To Call Writer Directly:
(202) 879-5081
barbara.harding@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

August 29, 2011

**VIA E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B345
New Orleans, LA 70130

      Re:    In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on
             April 20, 2010, MDL No. 2179

Dear Judge Shusan:

      BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") submit this letter pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure to request an order compelling Halliburton Energy Services, Inc. ("Halliburton") to provide a supplemental response to BP's Interrogatory No. 24. As explained below, Interrogatory No. 24 asks Halliburton to provide highly-relevant information concerning the manner in which its employees aboard the *Deepwater Horizon* operated the mud logging equipment aboard the vessel in April 2010. Halliburton's response directing BP to deposition testimony and referencing four documents that do not contain responsive information does not satisfy Halliburton's obligation to answer Interrogatory No. 24 fairly and substantively, based on *all* responsive information currently known or available to it.

## I. BP's Efforts to Reach A Resolution Regarding Interrogatory No. 24

Interrogatory No. 24 provides as follows:

"Describe in detail the operation of the mud logging equipment used by the Halliburton employees aboard the *Deepwater Horizon* in April 2010, including, but not limited to:

      a. whether the Halliburton (or Sperry Drilling) system has the ability to record, capture and/or store the settings on the mud logging equipment, including what real-time data each Halliburton (or Sperry Drilling) mud logger was watching;

The Honorable Sally Shusan
August 29, 2011
Page 2

> b.  what alarms were set or deactivated on which data streams (including drill pipe pressure, trip tank, flow in and flow out meters);
>
> c.  what types of alarms were set (including audio, visual, or other alarms);
>
> d.  whether the alarms were triggered; and
>
> e.  whether triggered alarms were acknowledged on April 20, 2010, aboard the *Deepwater Horizon*.

As part of your response to please identify all witnesses with knowledge of the events, and all statements, documents, and other materials that describe or reflect the events." *See* Ex. A (The BP Parties' Second Set of Interrogatories to Halliburton).

Rather than provide a substantive response, Halliburton answered Interrogatory No. 24 by directing BP to deposition testimony comprising approximately 1,500 pages of testimony and referring BP to four documents purportedly containing responsive information. *See* Ex. B (Halliburton's 7/18/2011 Response to Interrogatory No. 24). However, none of the documents referenced by Halliburton describe "the operation of the mud logging equipment used by the Halliburton employees aboard the *Deepwater Horizon* in April 2010." Rather, the documents are generic training and equipment manuals that do not shed light regarding actual operations aboard the *Deepwater Horizon* on April 20, 2010.[1]

Accordingly, on August 4, 2011, BP wrote to Halliburton requesting a supplemental response to Interrogatory No. 24, which (1) omits improper references to unspecified deposition testimony, and (2) describes in detail how the mud logging equipment aboard the *Deepwater Horizon* was operated by Halliburton employees on April 19-20, 2010, as specifically requested in parts (a) through (e) of Interrogatory No. 24. *See* Ex. C (Aug. 4, 2011 Ltr. from B. Harding to J. Martinez). After various "meet and confer" discussions, Halliburton agreed to supplement Interrogatory No. 24 by providing page citations for the deposition testimony referenced in its response. *See* Ex. D (Aug. 25, 2011 Email from J. Martinez to B. Harding). However,

---

[1] Specifically, HAL_0050595 is a "Sperry User's Manual for Series 8800 Total Hydrocarbon Analyzer" from 2002. *See* Ex. F (HAL_0050595). This document does not describe how the mud logging equipment aboard the *Deepwater Horizon* was actually operated by Halliburton employees. *See id.* HAL_0051030 is a "Surface Data Logging Core Fundamentals" training manual from 2001 comprising 247 pages. *See* Ex. G (HAL_0051030). This document does not appear specific in any way to the *Deepwater Horizon*, much less to the mud logging equipment aboard the *Deepwater Horizon*. *See id.* For that matter, the document does not appear specific even to offshore rigs. *Id.* HAL_0006918 is a "Sperry Drilling Services MC 252 Final Report." *See* Ex. H (HAL_0006918). This document lists services and equipment used aboard the *Deepwater Horizon* but does not describe how mud logging equipment used aboard the *Deepwater Horizon* was actually operated by Halliburton employees. *See id.* HAL_0050681 is a "Surface Data Logging Applied Fundamentals" training manual from 2001 comprising 349 pages. *See* Ex. I (HAL_0050681). This document does not appear to be specific to the *Deepwater Horizon*, much less to the mud logging equipment used aboard the *Deepwater Horizon*. *See id.* Due to the voluminous nature of these four documents, the attached exhibits contain only the cover page of each document. However, BP will provide the full version of each document if the Court so requests.

The Honorable Sally Shusan
August 29, 2011
Page 3

Halliburton refused to provide any other information to answer the specific questions raised in the interrogatory.  *See id*.  Therefore, on August 28, 2011, BP informed Halliburton that it would move to compel a further response to Interrogatory No. 24.  *See* Ex. E (Aug. 28, 2011 Letter from B. Harding to J. Martinez).

## II.      BP Is Entitled to a Further Response to Interrogatory No. 24.

Federal Rule of Civil Procedure 33(b)(3) mandates that interrogatories be answered "fully."  Fed. R. Civ. P. 33.  In interpreting these rules, courts have required interrogatory answers to "include all information within the party's control or known by its agents."  *See Morris v. Wyeth, Inc.*, No. 09-0854, 2010 WL 1141224, at *2 (W.D. La. Mar. 22, 2010) (*quoting Stern v. Seykota*, No. Civ. 2002-134, 2004 WL 3267284 (D. Virgin Islands Dec. 22, 2004)).  Parties must engage in reasonable efforts to furnish information responsive to interrogatories.  *Id*.  Evasive and incomplete responses which fail to answer the actual question posed by the interrogatory must be treated as a failure to answer, and the appropriate relief under such circumstances is an order compelling complete responses.  *See* Fed. R. Civ. P. 37(a)(4); *Hertz v. Treasure Chest Casino, L.L.C.*, No. Civ.A. 03-73, 2003 WL 21088086 (E.D. La. May 9, 2003) (granting a motion to compel where the answer was "evasive in that it [did] not answer the question"); *Worrell v. Houston CanA Academy*, Civil Action No. H-07-1100, 2010 WL 222902, at *2 (S.D. Tex. Jan. 15, 2010) (granting a motion to compel where "[i]nstead of giving particularized answers," plaintiff merely referred to "the names of all 44 of her ostensible witnesses and all pages of all documents she has produced"); *Chesapeake Operating, Inc. v. Stratco Operating Co., Inc.*, Civil Action No. 07-354-B-M2, 2009 WL 426101, at *4 (M.D. La. Feb. 20, 2009) (granting a motion to compel where an interrogatory answer identified oil wells for which production had ceased, but failed to provide the dates that production ceased, as requested by the interrogatory).

Here, Halliburton's response to Interrogatory No. 24 falls short of its discovery obligations.  While Rule 33(d) permits Halliburton to answer an interrogatory by directing BP to documents containing responsive information, the documents must, in fact, contain responsive information.  The general training and equipment manuals referenced in Halliburton's response do not answer (a) "what real-time data each Halliburton mud logger was watching" on April 19-20, 2010; (b) "what alarms were set or deactivated on which data streams" on April 19-20, 2010; (c) "what types of alarms were set" on April 19-20, 2010; (d) "whether the alarms were triggered" on April 19-20, 2010; and (e) "whether triggered alarms were acknowledged on April 20, 2010, aboard the *Deepwater Horizon*."

Further, Halliburton does not satisfy its discovery obligations by merely providing citations from the deposition testimony of four witnesses, as interrogatory answers must "include ***all information within the party's control or known by its agents***."  *See Morris*, 2010 WL 1141224, at *2 (emphasis added).  To the extent that reasonable efforts by Halliburton would reveal additional facts, documents, or persons with knowledge of information responsive to Interrogatory No. 24, Halliburton has the obligation to furnish such information to BP.  *See*

The Honorable Sally Shusan
August 29, 2011
Page 4


*Morris*, 2010 WL 1141224, at *2; *see also* Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B, ¶11:1675.5 (corporate party responding to interrogatory must answer based on all information known or available to party).  Specifically, Halliburton has at its disposal numerous employees that were aboard the *Deepwater Horizon* in April 2010, from whom it could gather information as to the mud logging equipment settings and alarms, including Joseph Keith, the mud logger stationed on April 20, 2010.  Thus, it is not enough that Halliburton has offered to furnish *some* responsive information by directing BP to deposition testimony, it is required to furnish *all* responsive information currently known or available to it.  *See Morris*, 2010 WL 1141224, at *2.

Accordingly, BP respectfully requests that this Court enter an order compelling Halliburton to answer Interrogatory No. 24 fairly and substantively by reviewing all of the information available to it, or alternatively, that Halliburton amend its response to certify that it has conducted a reasonable investigation and that it is unable to furnish any additional information.  *See Morris* 2010 WL 1141224, at *2; *Chesapeake Operating,* 2009 WL 426101, at *4.

Sincerely,

/s/ Barbara M. Harding
Barbara M. Harding

cc:     Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill
        Hon. Attorney General Luther Strange
        Cory Maze
        Donald E. Godwin
        James P. Roy
        Stephen J. Herman
        Mike O'Keefe
        Robert Cunningham

# Exhibit A



38093322

Jun 10 2011
9:58PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Cases | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………... | : | |

**THE BP PARTIES' SECOND SET OF**
**INTERROGATORIES TO HALLIBURTON**

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following Interrogatories to Defendant Halliburton Energy Services, Inc. ("Halliburton") to be responded to within 30 days of service.  The BP Parties request that all documents and electronically stored information responsive to the following Second Set of Interrogatories be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654.

**DEFINITIONS**

1.      "You," "your," and "yours" shall mean Halliburton, including without limitation all of Halliburton's present or former employees, agents or representatives, or anyone acting or purporting to act for or on Halliburton's behalf for any purpose whatsoever, and includes any and all affiliates, subsidiaries, contractors and divisions, such as Sperry Drilling, and includes the present employees, agents and representatives of those affiliates, subsidiaries, contractors and divisions.

2.      "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

4.      These interrogatories are to be answered in detail.  If you cannot answer any interrogatory in full, you should answer it to the extent possible and explain your inability to answer any further.

5.      If you claim that the language of any interrogatory is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the interrogatory to the best of your ability.

6.      When asked for a date, an exact date should be given if known. If an exact date is not known, an approximate date should be given and identified as such.

7.      If any of the answers to these interrogatories are derived from papers, records or documents in your possession or under your control, please attach a copy thereof to your answers or, in the alternative, please describe each of the documents with specificity and state when and where they will be available to BP's counsel for inspection and copying.

8.      If you contend that information responsive to any interrogatory is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

## INTERROGATORIES

24.      Describe in detail the operation of the mud logging equipment used by the Halliburton employees aboard the *Deepwater Horizon* in April 2010, including, but not limited to:

> a.   whether the Halliburton (or Sperry Drilling) system has the ability to record, capture and/or store the settings on the mud logging equipment, including what real-time data each Halliburton (or Sperry Drilling) mud logger was watching;

5

b.  what alarms were set or deactivated on which data streams (including drill pipe pressure, trip tank, flow in and flow out meters);

c.  what types of alarms were set (including audio, visual or other alarms);

d.  whether the alarms were triggered; and

e.  whether triggered alarms were acknowledged on April 20, 2010 aboard the *Deepwater Horizon*.

As part of your response, please identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

25.     Identify the date, time, and parties involved in any and all conversations with Jessie Gagliano on or after April 1, 2010, discussing, reflecting, or relating to the cement slurry for the production interval of the Macondo Well.   As part of your response, please identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

26.     Describe in detail the well monitoring activities at the Halliburton Real Time Operations Center on April 19-20, 2010 (*see* Deposition Exhibit 2011), including what real-time data was being monitored, who was monitoring the data, and whether the real-time data was recorded.  As part of your response, please identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

27.     Identify each person whom you may call as an expert witness in this matter, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor). With respect to each person you identify, please state:  (a) the subject matter on which the expert is expected to testify; (b) the

# Exhibit B



38751808

Jul 18 2011
6:02PM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL by the OIL RIG          §          MDL NO. 2179
"DEEPWATER HORIZON" in the GULF OF §
MEXICO, on APRIL 20, 2010                    §          SECTION:  J
                                                             §
Applies to: *All Cases*                            §          JUDGE BARBIER
                                                             §
                                                             §          MAGISTRATE SHUSHAN
                                                             §

## DEFENDANT HALLIBURTON ENERGY SERVICES, INC.'S OBJECTIONS AND RESPONSES TO BP'S SECOND SET OF INTERROGATORIES

Now comes Halliburton Energy Services, Inc. ("HESI") and, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, serves upon BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") the following Objections and Responses to BP's Second Set of Interrogatories to Halliburton (the "Interrogatories").

### I.          OBJECTIONS APPLICABLE TO ALL

HESI asserts the following objections to each and every one of BP's Interrogatories, including any definitions or instructions associated therewith.  These objections are incorporated by reference into each specific response or answer set forth by HESI, and are neither waived nor limited by any specific response or answer.

1.          HESI objects that the definition of "Halliburton" is overly broad and could be misinterpreted to include entities that are not parties to this litigation or any matter properly consolidated.  The party deemed served with these discovery requests is HESI; therefore, all objections and responses are HESI's only.

2.          HESI responds to BP's Interrogatories, where applicable, by producing responsive documents, if any, in accordance with Rule 33(d) of the Federal Rules of Civil Procedure.  HESI objects, however, to producing in response to any Interrogatory documents, information, or

## INTERROGATORIES

**INTERROGATORY NO 24:** Describe in detail the operation of the mud logging equipment used by the Halliburton employees aboard the *Deepwater Horizon* in April 2010, including, but not limited to:

    a.  whether the Halliburton (or Sperry Drilling) system has the ability to record, capture and/or store the settings on the mud logging equipment, including what real-time data each Halliburton (or Sperry Drilling) mud logger was watching;

    b.  what alarms were set or deactivated on which data streams (including drill pipe pressure, trip tank, flow in and flow out meters);

    c.  what types of alarms were set (including audio, visual, or other alarms);

    d.  whether the alarms were triggered; and

    e.  whether triggered alarms were acknowledged on April 20, 2010, aboard the *Deepwater Horizon.*

As part of your response, please identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

**OBJECTIONS:**    HESI objects to this Interrogatory as vague and ambiguous as to the phrase "mud logging equipment" and the terms "alarm," "triggered," "deactivated," "acknowledged," and "events."

HESI further objects to this Interrogatory to the extent that it seeks information subject to the attorney-client privilege, work product doctrine, joint-defense privilege, or other applicable legal protection or privilege, including, but not limited to, non-discoverable information obtained from consulting-only experts.

HESI further objects to this Interrogatory to the extent that it asks HESI to identify "all witnesses with knowledge of the events" and "all statements, documents, and other materials that describe or reflect the events," as such requests are overly broad and unduly burdensome.

HESI further objects to this Interrogatory to the extent that it seeks information that is better suited for depositions in the ongoing MDL No. 2179 proceeding.  To that end, HESI has already produced an FRCP 30(b)(6) witness, John Gisclair, who was designated to discuss topics which subsume in large part this Interrogatory.

HESI further objects to this Interrogatory to the extent that responsive information to this Interrogatory has already been made available to BP via HESI's document production and the testimony of its employees.

**RESPONSE:**    Subject to and without waiving the foregoing objections, HESI directs BP to the deposition testimony of Joe Keith, dated March 28, 2011, Kelly Gray, dated April 14 – 15,

2011, and John Gisclair (deposed in his individual capacity and as a 30(b)(6) witness), dated March 13 – 14, 2011.

HESI further refers BP to the following previously produced documents:

    HAL0006918
    HAL0050595
    HAL0050681
    HAL0051030

HESI further identifies the following witnesses: (1) Kelly Gray; (2) John Gisclair; (3) Joe Keith; and (4) Cathleenia Willis.

**INTERROGATORY NO 25:** Identify the date, time, and parties involved in any and all conversations with Jesse Gagliano on or after April 1, 2010, discussing, reflecting, or relating to the cement slurry for the production interval of the Macondo Well.  As part of your response, please identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

**OBJECTIONS:**      HESI objects to this Interrogatory to the extent that it seeks information subject to the attorney-client privilege, work product doctrine, joint-defense privilege, or other applicable legal protection or privilege, including, but not limited to, non-discoverable information obtained from consulting-only experts.

HESI further objects to this Interrogatory as vague and ambiguous as to the phrase "cement slurry for the production interval of the Macondo Well" and the terms "conversations," "parties," and "events."   HESI interprets the phrase "cement slurry for the production interval of the Macondo Well" to mean the cement slurry used in the primary cement job for the 9-7/8" x 7" production casing at the Macondo Well.

HESI further objects to this Interrogatory because it is overly broad and unduly burdensome. Specifically, this Interrogatory requests that HESI identify "any" and "all" conversations with Jesse Gagliano on or after April 1, 2010 discussing, reflecting, or relating to the cement slurry for the production interval of the Macondo Well.  Additionally, this Interrogatory requests that HESI identify "all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events."  Further, this Interrogatory is overly broad because it requests that HESI identify conversations that may have occurred with BP's own employees and which, accordingly, would already be in BP's possession.  This Interrogatory is also overly broad and unduly burdensome because it requires HESI to identify and determine potentially "oral" communications made by it or its employees to Jesse Gagliano, which were not recorded or otherwise transcribed.  As BP is aware, Jesse Gagliano officed on BP's premises and worked among BP engineers.  It is therefore unreasonable to assume that HESI would have knowledge of all oral communications between Jesse Gagliano and BP's employees regarding the cement slurry for the production interval of the Macondo Well.

# Exhibit C

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Barbara M. Harding
To Call Writer Directly:
(202) 879-5081
barbara.harding@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

August 4, 2011

**Via Electronic Mail**

Jenny Martinez
Godwin Ronquillo PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

Re:    In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179

Dear Jenny:

This letter addresses several deficiencies in Halliburton's discovery responses. For organizational purposes, the letter is divided into three parts.  Part I addresses Halliburton's responses and objections to BP's Second Set of Interrogatories.  Part II addresses Halliburton's responses and objections to BP's First Set of Requests for Admission.  Finally, Part III follows up on outstanding items from our prior "meet and confer" discussions concerning Halliburton's responses to document requests from BP's First and Second Sets of Requests for Production and its responses to interrogatories from BP's First Set of Interrogatories.  All three parts follow in turn.

I.    **HALLIBURTON'S RESPONSES AND OBJECTIONS TO BP'S SECOND SET OF INTERROGATORIES**

Halliburton's responses and objections to each of the following interrogatories from BP's Second Set of Interrogatories are deficient for the reasons noted below.

**INTERROGATORY NO. 24**.  This interrogatory asks Halliburton to "[d]escribe in detail the operation of the mud logging equipment used by the Halliburton employees aboard the *Deepwater Horizon* in April 2010," as well as to identify all witnesses with knowledge and all documents that describe or reflect the events.  Specifically, the interrogatory asks that Halliburton describe the operation of the mud logging equipment in sufficient detail to at least describe:

Chicago        Hong Kong        London        Los Angeles        Munich        New York        Palo Alto        San Francisco        Shanghai

Jenny Martinez
Godwin Ronquillo PC
Page 2

a. whether the Halliburton (or Sperry Drilling) system has the ability to record, capture and/or store the settings on the mud logging equipment, including what real-time data each Halliburton (or Sperry Drilling) mud logger was watching;

b. what alarms were set or deactivated on which data streams (including drill pipe pressure, trip tank, flow in and flow out meters);

c. what types of alarms were set (including audio, visual, or other alarms);

d. whether the alarms were triggered; and

e. whether triggered alarms were acknowledged on April 20, 2010, aboard the *Deepwater Horizon*.

As the following paragraphs explain, Halliburton's response to Interrogatory No. 24 improperly refers to deposition testimony and documents without offering any specific or substantive answer to the question posed.

**1. Improper Reference to Deposition Transcripts**

Specifically, Halliburton's response directs BP to deposition transcripts comprising more than 1,500 pages of testimony, without describing or even identifying any specific testimony by any witness that purportedly contains responsive information. As explained in BP's prior correspondence addressing Halliburton's responses to BP's First Set of Interrogatories, this type of interrogatory response is improper. *See* 7/6/2011 letter from B. Harding to J. Martinez. "***An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories***." Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B (emphasis added); *see also Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000). "Incorporation by reference to a deposition is not a responsive answer." *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436 (D. Kan. 1987). Accordingly, please amend your response to Interrogatory No. 24 to provide a specific and substantive answer to the interrogatory, without generically referring to deposition transcripts and other materials contained outside the four corners of your response.

**2. Improper Reference to Documents Containing Only Marginally Responsive Information**

Halliburton's response also directs BP to the following four documents that it contends contain responsive information: HAL0006918; HAL0050595; HAL0051030; HAL0050681. However, based upon our review of these documents, none appears to contain much, if any, responsive information.

- HAL0006918 is a "Sperry Drilling Services MC 252 Final Report." This document lists services and equipment used aboard the *Deepwater Horizon* but fails to describe

Jenny Martinez
Godwin Ronquillo PC
Page 3

how the mud logging equipment used aboard the *Deepwater Horizon* was operated by Halliburton employees, as requested by Interrogatory No. 24.

- HAL0050595 is a "Sperry User's Manual for Series 8800 Total Hydrocarbon Analyzer" from 2002. Again, this document does not describe how the mud logging equipment aboard the *Deepwater Horizon* was operated by Halliburton employees.

- HAL0051030 is a "Surface Data Logging Core Fundamentals" training manual from 2001 comprising 247 pages. This document does not appear specific in any way to the *Deepwater Horizon*, much less to the mud logging equipment aboard the *Deepwater Horizon*. For that matter, the document does not appear specific even to offshore rigs.

- HAL0050681 is a "Surface Data Logging Applied Fundamentals" training manual from 2001 comprising 349 pages. Again, this document does not appear to be specific to the *Deepwater Horizon*, much less to the mud logging equipment used aboard the *Deepwater Horizon*. Accordingly, to our knowledge, it does not describe the operation of the mud logging equipment used by Halliburton employees aboard the *Deepwater Horizon* in April 2010.

To the extent you believe any of these documents actually describe how the mud logging equipment aboard the *Deepwater Horizon* was operated by Halliburton employees in April 2010, please direct us to where in the documents the responsive information is contained and explain why you believe those portions of the documents contain responsive information. Further, please amend your response to Interrogatory No. 24 to describe in detail the operation of the mud logging equipment as requested in the interrogatory, including the information requested in parts (a) through (e). Also, please confirm that Halliburton is unaware of any documents or individuals responsive to this interrogatory other than those identified in its response.

**INTERROGATORY NO. 25**. This interrogatory asks Halliburton to "[i]dentify the date, time, and parties involved in any and all conversations with Jesse Gagliano on or after April 1, 2010, discussing, reflecting, or relating to the cement slurry for the production interval of the Macondo Well," as well as to identify all witnesses with knowledge and all documents that describe or reflect the events in question. Halliburton's response is deficient for numerous reasons.

### 1. Improper Objections

Halliburton asserts several improper objections to this interrogatory, including objections that the interrogatory is overly broad because some portion of responsive information could potentially "already be in BP's possession"; that the interrogatory seeks information concerning "potentially 'oral' communications made by it or its employees to Jesse Gagliano"; and that the interrogatory unreasonably assumes that Halliburton has knowledge of all responsive

Jenny Martinez
Godwin Ronquillo PC
Page 4

communications given that Mr. Gagliano was "officed on BP's premises and worked among BP engineers" at the relevant times.

　　None of these objections has merit.  First, objections that information responsive to an interrogatory may already be in the possession of the requesting party are invalid.  *See Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003); *see also* Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B, ¶ 11:1740 ("A party may not refuse to respond to a requesting party's discovery request on the ground that the requested information is in the possession of the requesting party.").

　　Second, the mere fact that the interrogatory asks Halliburton to identify oral communications does not render the interrogatory improper or relieve Halliburton of its obligation to answer as completely as possible based upon those facts available to it after due inquiry.  *See* Fed. R. Civ. Proc. 33(b)(1)(B) (in answering interrogatories, corporate party "must furnish the information ***available*** to the ***party***") (emphasis added); *see also Chatman v. American Export Lines, Inc*., 20 F.R.D. 176, 177 (S.D.N.Y. 1956) (interrogatory requesting substance of oral conversations is proper).

　　Finally, as a corporate entity, Halliburton is obligated to obtain and provide any non-privileged information responsive to this interrogatory known to those in its employ or to those over whom it has control — clearly, this includes Mr. Gagliano.  *See* Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B, ¶ 11:1747.  Moreover, Halliburton bears this obligation regardless of where Mr. Gagliano or any of Halliburton's other employees were located or with whom they worked at the relevant times.

## 2.  Improper Reference to Deposition Testimony

　　After asserting invalid objections, Halliburton purports to answer the interrogatory by directing BP to Mr. Gagliano's "testimony from the Coast Guard Hearings," dated August 24, 2010.  *See* Halliburton's Resp. to Interrogatory No. 25.  As BP has explained, an answer to an interrogatory must be "complete in itself" and may not refer to other pleadings or depositions for supposedly responsive information.  Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B ¶ 11:1729; *see also Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind.  2000); *Hoffman v. United Telecommunications, Inc*., 117 F.R.D. 436 (D. Kan. 1987).  Incorporation by reference of entire transcripts of testimony, much of which pertains to other issues and topics, is not responsive and not a direct and candid answer.  *See Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980).  Thus, to the extent non-privileged, responsive information is available to Halliburton, it cannot avoid providing that information to BP through vague and evasive references to transcripts of testimony spanning hundreds of pages.  *See Milner v. Nat. School of Health Tech.*, 73 F.R.D. 628, 632-33 (E.D. Pa. 1977) ("Answers must be complete, explicit and responsive.").

Jenny Martinez
Godwin Ronquillo PC
Page 5

### 3.  Incomplete Response

In addition to failing to provide a substantive response, Halliburton also fails to identify any witnesses with knowledge or documents that describe or reflect the events in question. Instead, the response simply states that Halliburton has "made a reasonable inquiry into the subject matter of this Interrogatory, but the information it knows or can readily obtain is either insufficient to enable it to completely respond to this Interrogatory or is already in BP's possession."  This fails to satisfy Halliburton's discovery obligations here.

Even if a party is unable to provide a complete answer to an interrogatory, it must still furnish any responsive, non-privileged information *available to it*.  *See* 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed. 2011) (emphasis added); *Milner*, 73 F.R.D. at 632-33 (corporate entity must furnish information "in the hands of its agents and others within its control").  Moreover, to the extent the party lacks complete information, the party must explain what information it is lacking and describe in detail its efforts to obtain such information.  *See Miller v. Doctor's General Hosp.*, 76 F.R.D. 136 (W.D. Okla. 1977); *Milner*, 73 F.R.D. at 632-33 (party unable to provide complete interrogatory response must "say why and set forth the efforts [] used to obtain the information").  Here, Halliburton's response does neither.

In light of all of the foregoing, please provide an amended response to Interrogatory No. 25 that is "complete in itself," that furnishes to BP all responsive, non-privileged information known to Halliburton's employees or to persons over whom Halliburton has control; and that explains, to the extent necessary, what information, if any, Halliburton lacks in order to provide a full and complete response and the efforts Halliburton has undertaken to obtain such information. Specifically, please identify all of Mr. Gagliano's conversations concerning the cement slurry for the production interval of the Macondo Well from April 1, 2010 onward, or state that Halliburton lacks this knowledge.

**INTERROGATORY NO. 26**.  This interrogatory asks Halliburton to "[d]escribe in detail the well monitoring activities at the Halliburton Real Time Operations Center on April 19-20, 2010 [], including what real time data was being monitored, who was monitoring the data, and whether the real-time data was recorded."  The interrogatory also asks for Halliburton to identify witnesses with knowledge and documents describing or reflecting the events in question.

Halliburton's response contains almost no responsive information.  Halliburton states that "there were no Sperry employees actively monitoring the Macondo Well at the Real Time Operations Center on April 19-20, 2010, once Measurement While Drilling and Logging While Drilling operations ceased."  However, Interrogatory No. 26 does not ask about Sperry employee efforts to "actively" monitor the Macondo well once "Measurement While Drilling and Logging While Drilling operations ceased."  Rather, it asks about "well monitoring activities at the Halliburton Real Time Operations Center on April 19-20, 2010," without limiting the scope of the interrogatory to the period after "Measurement While Drilling and Logging While Drilling operations" or to "active" monitoring, however that term is used by Halliburton.

Jenny Martinez
Godwin Ronquillo PC
Page 6

Moreover, Halliburton's reference to certain "INSITE Anywhere Access Logs" likewise fails to answer the interrogatory. *See* Halliburton's Resp. to Interrogatory No. 26 (referring BP to HAL0050546-56 and HAL0502725-30 for responsive information). Specifically, these logs:

- appear only to identify the names of individuals who had system rights to access Deepwater Horizon/MC 252 Macondo well data and to provide log-in and log-out times for such individuals;

- do not describe (let alone in detail) what well monitoring activities these employees were undertaking at the Halliburton Real Time Operations Center on April 19-20, 2010;

- do not identify what real time data was monitored, or even just accessed. In fact, one of the logs indicates that the well data accessed by the individuals identified in the log may not even pertain to the Deepwater Horizon/MC 252 Macondo well. *See* HAL0502725 at 6 ("[T]he Login and Logout times contained within this chart, while believed to be associated with the Deepwater Horizon/MC 252 Macondo well data, may also represent a portion of time when the user was accessing data for other wells during the same Logon session.").

- do not reveal whether any data was recorded, let alone whether any real-time Macondo well data was recorded;

- Halliburton's response further fails to identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

Even if the "INSITE Anywhere Access Logs" referenced by Halliburton contain some fraction of responsive information, BP is entitled to the full extent of responsive information available to Halliburton. *See* 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed. 2011); *Milner*, 73 F.R.D. at 632-33 (corporate entity must furnish information "in the hands of its agents and others within its control"). Accordingly, please amend or supplement your response to Interrogatory No. 26 to disclose the full extent of responsive information available to Halliburton. Specifically, as requested in the interrogatory, please describe in detail the well monitoring activities at the Halliburton Real Time Operations Center on April 19-20, 2010, including what real-time data was being monitored, who was monitoring the data, and whether the real-time data was recorded.

**Interrogatory No. 30**. This interrogatory asks Halliburton to identify all persons with "knowledge of any fact relevant to any claim you are asserting in this litigation or any other litigation or dispute-resolution process of any kind involving issues related to the Incident, the Oil Spill, or the Oil Spill Response, and indicate for each such person the nature and relevance of the knowledge you believe each such person has."

Jenny Martinez
Godwin Ronquillo PC
Page 7

Halliburton's response "incorporates by reference" submissions from the MDL No. 2179 litigation consisting of every witness list submitted by every party in the litigation. *See* Halliburton's Resp. to Interrogatory No. 30. At the risk of repetition, incorporation by reference of submissions to the Court is not a responsive answer to an interrogatory. *See* Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-B, ¶ 11:1731; *see also Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 120 (N.D. Ga. 1972) (interrogatory answer incorporating pleadings by reference is improper). Rather, interrogatories must "be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry." *See* 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed.).

By referring BP to every witness list submitted by every party in this matter, Halliburton's response provides BP almost no useful information. Moreover, Halliburton's response fails to state the nature or relevance of the knowledge of any person with knowledge whose identity is known to Halliburton. In light of the foregoing, please provide an amended response to Interrogatory No. 30 that is "complete in itself" and that sets forth the requested information in a direct and straightforward manner.

**Interrogatory No. 31**. This interrogatory asks for Halliburton to provide "a detailed, itemized list of your economic and non-economic damages that you claim you are entitled to from BP in this litigation." Halliburton has objected that the interrogatory is premature and inconsistent with the Federal Rules of Civil Procedure and the pretrial orders of this Court. However, BP is entitled to discover basic information concerning the damages that Halliburton seeks, and Halliburton cannot avoid providing this relevant, discoverable information simply by claiming that the interrogatory is premature. Moreover, BP disagrees that there is anything in the Federal Rules of Civil Procedure or the Court's pretrial orders that prohibits BP from seeking the requested information. However, to the extent that Halliburton believes any federal rule or pretrial order of the Court allows Halliburton to avoid responding to an interrogatory like Interrogatory No. 31, we ask that Halliburton identify the rule or order so that we may further evaluate Halliburton's position.

## II.   HALLIBURTON'S RESPONSES AND OBJECTIONS TO BP'S FIRST SET OF REQUESTS FOR ADMISSION

Rule 36 of the Federal Rules of Civil Procedure requires a party responding to an RFA to admit, specifically deny, or state why it cannot either admit or deny the request, and to do so in a manner that is direct and forthright. Fed. R. Civ. Proc. 36(a)(4). However, for a number of its RFA responses, Halliburton neither plainly admits, denies, or states that it lacks sufficient information to admit or deny the particular RFA. Instead, Halliburton answers by admitting statements that are materially different from those contained in the RFAs or by otherwise answering in an evasive and confusing manner that fails to fairly meet the substance of the requests. For example, the responses below do not fairly respond to the RFA propounded:

Jenny Martinez
Godwin Ronquillo PC
Page 8

**RFA No. 1**.  RFA No. 1 seeks an admission that "Halliburton never warned BP that the cement job at the Macondo well was unsafe."  Halliburton's response makes a number of statements, including that it purportedly had "concerns" about "running only six centralizers on the production casing of the Macondo well" and that it "had no reason to 'warn' BP that the cement job at the Macondo well as unsafe."  However, none of those statements fairly responds to the substance of the request, which asks for an admission that Halliburton never warned (i.e., actually communicated to) BP that the cement job at the Macondo well was unsafe.  If Halliburton "had no reason to 'warn' BP that the cement job at the Macondo well as unsafe," then admit that Halliburton never warned BP that the cement job was unsafe.  Please amend your response to RFA No. 1 to answer the request fairly and plainly.

**RFA No. 3**.  RFA No. 3 seeks an admission that "Halliburton did not have any safety concerns about running six centralizers on the production casing of the Macondo well."  Halliburton's admission that "HESI would have had no reason to be concerned about the safety of running only six centralizers on the production casing of the Macondo well" does not directly respond to the substance of the request.  If Halliburton "had no reason to be concerned about the safety," then admit that Halliburton did not have any safety concerns.  In short, please amend your response to RFA No. 3 to answer the request fairly and plainly.

**RFA No. 5**.  RFA No. 5 seeks an admission that "Halliburton informed BP that the cement job was executed successfully after the job was completed on April 20, 2010."  Halliburton's response admitting that it "informed BP that the cement job on the final production casing . . . was executed successfully to plan" and making a number of statements about "zonal isolation" does not fairly respond to the substance of the request.  The request asks whether Halliburton told BP the *cement job* had been executed successfully, not whether *the plan for the cement job* had been executed successfully and not whether "zonal isolation" had been achieved.  We therefore ask Halliburton to amend its response to admit or deny the *actual* request.  If Halliburton refuses to admit the actual request, please state in detail why Halliburton cannot truthfully admit the request, setting forth the reasons in a clear and straightforward manner.

**RFA No. 6**.  RFA No. 6 seeks an admission that "Halliburton confirmed to BP that there were full returns during the cement job completed on April 20, 2010."  Halliburton admits that "drillers informed HESI that full returns were observed during the cement job, and HESI then provided that information to BP."  Notwithstanding this admission, the very next sentence of Halliburton's response denies the request, "[e]xcept as admitted herein."  This response is evasive and confusing.  If Halliburton refuses to admit RFA No. 6, then it "must specifically deny [the request] or state in detail why [it] cannot truthfully admit or deny it."  *See* Fed. R. Civ. P. 36(a)(4).  Halliburton's response does neither.  On the contrary, Halliburton's admission that it conveyed to BP that "full returns were observed during the cement job" suggests that Halliburton should be able to admit the request.  Accordingly, please amend your response to either admit the request or to state in detail why Halliburton cannot truthfully admit the request, setting forth the reasons in a clear and straightforward manner.

Jenny Martinez
Godwin Ronquillo PC
Page 9

     **RFA Nos. 10, 11, and 34**.  RFA No. 10 seeks an admission that "Halliburton did not warn the rig crew of the increasing pipe pressure around 21:26 to 21:30 on April 20, 2010." RFA No. 11 seeks an admission that "Halliburton did not warn the rig crew of the increasing pipe pressure around 21:31 on April 20, 2010."  RFA No. 34 seeks an admission that "Halliburton mud loggers on the Deepwater Horizon on April 20, 2010 did not advise BP or Transocean personnel of any situation developing with safety implications."  Halliburton's responses to these requests are incomplete and evasive.  Among other things, Halliburton's responses appear to interpret the requests as seeking admissions that Halliburton representative Joseph Keith did not do the things described in the requests.  However, the requests are not limited to Mr. Keith.  Rather, the requests seek admissions concerning "Halliburton" generally, including all of Halliburton's employees and agents involved in the relevant events, not solely Mr. Keith.  Accordingly, please amend your answers to these RFAs to provide proper responses.

     **RFA Nos. 15-18**.  RFA No. 15 seeks an admission that "the hydrocarbon flow came up the casing of the Macondo well through the shoe track."  RFA No. 16 seeks an admission that "the hydrocarbon flow did not come up the annulus of the Macondo well through the hanger seal assembly."  RFA No. 17 seeks an admission that "the hydrocarbon flow did not come up the annulus of the Macondo well through a breach in the cross over."  Finally, RFA No. 18 seeks an admission that "the hydrocarbon flow did not come up the annulus of the Macondo well through a breach in the body of the casing."  Halliburton objected to these requests as vague and ambiguous insofar as they failed to specify whether the "flow" addressed in the requests pertains to initial flow at the Macondo well or to the flow that ultimately reached the riser and rig floor. The requests seek admissions as to both of the referenced time frames.  Accordingly, with that clarification in mind, please provide a supplemental response to each of these requests that either admits or denies so much of the requests as appropriate.

     **RFA No. 35**.  RFA No. 35 seeks an admission that "on April 20, 2010 Halliburton did not inform BP or Transocean that rig activities prevented its mud loggers from accurately monitoring returns."  Halliburton objected to this request on grounds that it is purportedly overbroad and vague and ambiguous in its use of the phrase "rig activities" and "returns." However, Halliburton provided no explanation of why it contends that the request is purportedly overbroad, as required to state a valid objection.  *See* 8B Fed. Prac. & Proc. Civ. § 2262 (3d ed.) ("A party who thinks a request improper is required to object thereto and to state the reasons for its objection.").  Nor is Halliburton's vagueness objection to the phrase "rig activities" and "returns" well-taken.  Clearly, Halliburton understands what the terms "rig activities" and "returns" mean, as Halliburton answered other RFAs using those terms without objecting to their meaning.  *See*, *e.g.*, Halliburton's Resp. to RFA No. 36.  Moreover, Halliburton's own documents, including its April 20, 2010 Post Job Report, demonstrate Halliburton used and presumably understood the terms "rig activities" and "returns" when it communicated with BP in the period before this litigation.  *See*, *e.g.*, HESI Post-Job Report at HAL_0011214.  To the extent Halliburton nevertheless requires clarification, the terms "rig activities" and "returns," as used in RFA No. 35, have the same meaning as those terms were given by Halliburton in its pre-

Jenny Martinez
Godwin Ronquillo PC
Page 10

litigation documents and communications to BP.  Accordingly, please amend your response to
RFA No. 35 to admit or deny the request, as appropriate in light of this clarification.

**RFA No. 55**.  RFA No. 55 seeks an admission that "a production casing does not have a
potential leak path at the tieback junction."  Halliburton denied the request on the ground that it
is purportedly "nonsensical" to the extent it suggests that a "production casing" has a "tieback
junction."  This is not a fair and good faith interpretation of the request.  RFA No. 55 does not
suggest that a production casing has a tieback junction.  Rather, it asks whether a production
casing has a potential leak path at the tie back junction.  Clearly, Halliburton understands that it
does not have such a leak path because it dos not have a tie back junction.  Where, as here, "the
purpose and significance of a request are reasonably clear, courts do not permit denials based on
an overly-technical [or strained] reading of the request."  *See* Prac. Guide Fed. Civ. Proc. Before
Trial (5th Cir.) Ch. 11(IV)-D, ¶ 11:2045 (*citing Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976
F.2d 573, 580 (9th Cir. 1992) ("[E]pistemological doubts speak highly of a [party's]
philosophical sophistication, but poorly of its respect for Rule 36(a).")).  Accordingly, in light of
the clarification provided, please amend your response to RFA No. 55 to answer the request
fairly and plainly.

**RFA Nos. 75-78**.  RFA No. 75 seeks an admission that "at a morning meeting with BP
on April 20, 2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped
successfully."  RFA No. 76 seeks an admission that "at a morning meeting with BP on April 20,
2010, Halliburton stated that the cement job on April 19-20, 2010 had been pumped with full
returns."  RFA No. 77 seeks an admission that "at a morning meeting with BP on April 20, 2010,
Halliburton stated that the cement job on April 19-20, 2010 had been pumped with lift pressure."
RFA No. 78 seeks an admission that "at a morning meeting with BP on April 20, 2010,
Halliburton stated that the cement job on April 19-20, 2010 had been pumped with plugs
bumping on schedule."

Halliburton denied each of these requests, stating that "after reasonable inquiry,
information known to or readily obtainable by HESI is insufficient to enable HESI to admit or
deny whether the discussion at that meeting included the content suggested by [the] request[s]."
Under Rule 36, Halliburton must undertake a "good faith" investigation of sources reasonably
available to it in formulating its responses to these RFAs.  *See* Adv. Comm. Notes to 1970
Amendment to FRCP 36(a); *see also Bouchard v. United States*, 241 F.R.D. 72, 76 (D. Me.
2007) (party responding to RFA must make "a reasonable effort[] to secure information that is
readily obtainable from persons and documents within the responding party's relative control.").
Documents produced by Halliburton (including those located at HAL_0011208-221) indicate
that the subject statements were in fact made to BP by Halliburton engineers at the referenced
April 20, 2010 meeting.  These documents suggest that Halliburton has failed to respond to RFA
Nos. 75-78 in good faith based upon the results of a reasonable investigation of sources available
to it.  Accordingly, please confirm that Halliburton has conducted the required "good faith"
investigation of sources reasonably available to it—including Halliburton engineers Nathaniel
Chaisson and Jesse Gagliano as well as documents under Halliburton's control.  To the extent

Jenny Martinez
Godwin Ronquillo PC
Page 11

necessary, please amend or supplement your response to correct any inaccuracy in Halliburton's response.

**RFA No. 80**.  RFA No. 80 seeks an admission that "at the morning meeting with BP on April 20, 2010, Halliburton did not state that a cement bond was needed."  Halliburton's response to this request is internally inconsistent and confusing.  Specifically, Halliburton admitted (subject to certain objections) that "it did not state to BP, at the morning meeting on April 20, 2010, that a cement bond log was needed."  However, in the very next sentence, Halliburton states that "after reasonable inquiry, information known to or readily obtainable by HESI is insufficient to enable HESI to admit or deny whether the discussion at [the] meeting included the content suggested by [the] request [i.e., that "Halliburton did not state that a cement bond was needed"], and therefore, HESI denies it."  Halliburton cannot simultaneously admit and deny the same factual contention.  Accordingly, please amend your response to provide a clear, definitive, and straightforward response.

**RFA No. 96**.  RFA No. 96 seeks an admission that "Halliburton mud loggers on the Deepwater Horizon are required to monitor pressure tests."  Halliburton's response directs BP to deposition testimony, characterizes that deposition testimony, and makes a number of statements about mud loggers monitoring surface data parameters and being uninvolved in performing or interpreting negative pressure tests.  These statements do not fairly meet the substance of the request.  Whether or not Halliburton mud loggers monitor surface data parameters during rig activities and whether or not Halliburton mud loggers actually perform or interpret negative pressure tests themselves does not answer whether or not Halliburton mud loggers on the *Deepwater Horizon* were, in fact, "required to monitor pressure tests."  Accordingly, please amend your response to answer the actual RFA propounded.

**RFA No. 108**.  RFA No. 108 seeks an admission that "Halliburton had the April 2010 logging data for the Macondo well before April 18, 2010."  Halliburton objected to the request on the ground that the phrase "April 2010 logging data" is purportedly vague and ambiguous.  While BP disagrees that there is any legitimate ambiguity in the phrase "April 2010 logging data," that phrase, as used in RFA No. 108, refers to the logging while drilling data, the GeoTap data, the MDT data and the triple log data among other things acquired for the open hole section in April 2010.  Please amend your response to RFA No. 108 in light of this clarification to admit so much of the requests as appropriate.

**RFA No. 109**.  RFA No. 109 seeks an admission that "Halliburton had access to WellSpace before April 18, 2010."  Halliburton objected to the request on the ground that the term "WellSpace" is supposedly vague and ambiguous.  As Halliburton knows, "WellSpace" is a Halliburton product.  Therefore, please explain the basis for Halliburton's contention that the term "WellSpace" is vague and ambiguous.  Furthermore, assuming that the term "WellSpace" refers to Halliburton's own offering that was set up for the Macondo Well, please confirm that Halliburton denies it had access to the Wellspace contents for the Macondo Well before April 18,

Jenny Martinez
Godwin Ronquillo PC
Page 12

2010.  If this is not correct, please amend your response to RFA No. 109 to provide an accurate response.

**RFA No. 113**.  RFA 113 seeks an admission that "if the correct pore pressure was used for the gas flow potential calculation in the April 18, 2010 Opticem report, the gas flow potential would be Minor."  Halliburton objected that the term "correct pore pressure" is vague and ambiguous and that the request "assumes that HESI would know what pore pressure(s) is correct for use in the April 18, 2010 OptiCem report without BP's direction and interpretation of relevant log data."  Please confirm that it is Halliburton's position that it does not know what the "correct pore pressure" would be for the depth at which gas flow potential (GFP) was calculated in the April 18, 2010 OptiCem report.

## III.    OUTSTANDING ITEMS FROM PRIOR "MEET AND CONFER" DISCUSSIONS

The remainder of this letter follows up on outstanding items from our prior "meet and confer" discussions related to Halliburton's responses and objections to BP's First and Second Sets of Requests for Production and Halliburton's responses and objections to BP's First Set of Interrogatories.

**Halliburton Search Terms and Custodians**.  During our prior "meet and confer" discussions concerning Halliburton's document responses and production, you agreed to identify the custodians and search terms that Halliburton is using to conduct its search and productions. On July 27, 2011, you provided us a list of Halliburton's custodians.  However, we have not received any information concerning the search terms that Halliburton is using to conduct its searches.  We therefore reiterate our request for Halliburton to provide this information, which is necessary for BP to adequately evaluate the reasonableness of Halliburton's search efforts. Indeed, courts routinely require producing parties to provide "a detailed explanation of the search protocol it implements" for this reason.  *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006).  This detailed explanation includes a description of the search terms and custodians.  *See, e.g., Treppel v. Biovail Corp.*, 249 F.R.D. 111, 116-17 (S.D.N.Y. 2008); *McNulty v. Reddy Ice Holdings, Inc.*, 271 F.R.D. 569, 571 (E.D. Mich. 2011).  As you know, BP disclosed this information early in the discovery process and did so again earlier this month in response to your request for BP to resend the information.  With little time remaining before the deadline to file motions to compel, it is critical that BP review Halliburton's search terms without further delay. Accordingly, please provide us the search terms Halliburton is using to conduct its searches and production by no later than this Friday, August 5.

**Post-Incident Halliburton Board of Director Meeting Minutes**.  After several "meet and confers" on the topic, you agreed in your correspondence dated July 26, 2011 to produce Halliburton's post-incident Board of Director minutes with redactions for privilege and responsiveness.  To date, we have not received this production from Halliburton.  Please complete your production of responsive post-incident Board of Director minutes by Monday,

Jenny Martinez
Godwin Ronquillo PC
Page 13

August 8, 2011, so that we may have an opportunity to review such documents in advance of the current August 15, 2011 deadline for filing motions to compel.

**Real Time Data from the Cement Job**.  After several "meet and confers" on the topic, you produced some of the real-time data that Halliburton recorded from the cement job. Specifically, you produced what appears to be real-time data from the cement unit.  However, we requested on July 29, 2011 that you also produce the remainder of the real-time data, including "data from the nitrogen pumping unit, the liquid additive pumps, the temperatures, the rig displacement pumps and any other of the underlying information recorded by Halliburton and used to generate the post-job report."  Please complete your production of real-time data by Monday, August 8, 2011, so that we may have an opportunity to review such documents in advance of the current August 15, 2011 deadline for filing motions to compel.

**Documents Sufficient to Identify Halliburton Employees Who Accessed the Viking System**.  In your correspondence dated July 26, 2011, you agreed to produce a document sufficient to identify Halliburton employees who accessed the Viking system twenty-four hours before and after the Incident.  To date, we have not received this document.  Please produce the referenced document by Monday, August 8, 2011, so that we may have an opportunity to review the document in advance of the current August 15, 2011 deadline for filing motions to compel.

**Halliburton's Responses and Objections to BP's First Set of Interrogatories**.  On July 22, 2011, I wrote to you requesting that Halliburton provide supplemental responses to several interrogatories from BP's First Set of Interrogatories that Halliburton failed to answer appropriately.  My letter requested that Halliburton respond to the issues raised in my July 22, 2011 letter by no later than Wednesday, July 27, 2011.  Although we did not receive a response, you indicated in your e-mail of July 27, 2011 that you would endeavor to provide a written response by Monday, August 1.  We did not, however, receive a response from you on that date and are still waiting to hear what Halliburton's position is on the issues we raised in our July 22 letter.  We certainly appreciate that all of the parties have been busy.  However, at this stage with the current deadline to file motions to compel looming, we need a prompt response from Halliburton so that we may know which issues raised in our July 22, 2011 letter the parties can resolve and which issues will have to be resolved by motion.  Accordingly, we ask that you provide us an immediate response to our July 22, 2011 letter so that we may make progress on this matter.

*     *     *

We thank you for your attention to these matters, and we look forward to receiving your prompt response.

Jenny Martinez
Godwin Ronquillo PC
Page 14

Sincerely,


/s/ Barbara M. Harding

BMH/djs

# Exhibit D

| "Martinez, Jenny" <JMartinez@ GodwinRonqui llo.com> | To "Barbara M. Harding" <bharding@kirkland.com> |
|---|---|
| | cc "Don Godwin" <DGodwin@GodwinRonquillo.com>, "R. Alan York" <AYork@GodwinRonquillo.com>, "P. C. J. Andrew Langan" <andrew.langan@kirkland.com> |
| 08/25/2011 08:49 PM | Subject Meet and Confer Issues |

Barbara:

Pursuant to our meet and confer on August 23, 2011, below are HESI's current positions regarding certain issues the parties have conferred about.

(1) Access to Proprietary Version of OptiCem: I provided HESI's proposed revisions to the escrow agreement to you on 8/12/11 (related to BP's RFPs 13, 14 (First Set) and 1 (Second Set)). I have not received any proposed changes from BP and that proposed revised agreement is still on the table.   The escrow agreement renders BP's request for additional "screen shots" moot.   Regarding the additional software BP added to the agreement without discussing with HESI, HESI does not know what version(s) Jesse Gagliano utilized.   As you know, BP owns and utilizes the commercially available WellCat software, and it did so in April 2010. HESI agrees to provide the native WellCat data associated with the Macondo production casing.   Accordingly, the only software unavailable to BP is the proprietary version of OptiCem, which is the subject of the escrow agreement. HESI will not agree to provide software that BP already owns or can easily obtain.

(2) BP's RFAs:  In accordance with my conversations with Xanath, HESI agrees to: (a) clarify its objections to RFA 80; (b) supplement its responses to RFAs 10, 11, and 34 with testimony references; (c) supplement or clarify its denials to RFAs 180, 181, 183, and 184; and (d) omit the last sentence of the responses to RFAs 195-203, 206, 207, and 210.  HESI will agree to a reasonable deadline for each party to supplement or amend its objections and/or responses to RFAs.

(3) BP's Interrogatories:  In accordance with my conversations with Phillip and Xanath, HESI agrees to supplement its responses to Interrogatories 1, 2,

4, 15, 19, 23, and 25 with testimony references. HESI will agree to a
reasonable deadline for each party to supplement its objections and/or
responses to interrogatories.  As for the parties' mutual interrogatories
regarding cause and fault for the incident (BP's Interrogatories 8 and 10 and
HESI's Interrogatory 29), HESI is happy to confer further about mutually
acceptable responses. HESI stands on its objections Interrogatories 16-18
because information regarding wells other than the Macondo well is irrelevant
to this litigation.

HESI provided its list of custodians and search terms to BP, and will identify
tomorrow the HESI employees who accessed the Viking system 24 hours before and
after the incident.

BP agreed to provide additional information regarding its position on HESI's
responses to certain interrogatories.  Specifically, BP indicated that it
would "probably live with" HESI's responses to Interrogatories 26, 30, and 31.
Because I have heard nothing to the contrary, I assume that is the case.
Similarly, BP promised but never got back to me regarding whether HESI's
responses to RFAs 1, 3, 5, 6, 80, 160, and 164 are acceptable.  Again, I
assume they are acceptable since I have not heard otherwise. BP also promised
to identify what specific documents it seeks regarding Interrogatory No. 24,
but I have heard nothing further.

Sincerely,

Jenny Martinez
Godwin Ronquillo PC


Jenny  Martinez
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4620 Direct  (800.662.8393 Toll Free)
214.527.3119 Fax
JMartinez@GodwinRonquillo.com
GodwinRonquillo.com
This electronic transmission (and/or the documents accompanying it) may
contain confidential information belonging to the sender that is protected by
the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510 and 2521
and may be legally privileged. This message (and any associated files) is
intended only for the use of the individual or entity to which it is addressed
and may contain information that is confidential, subject to copyright or
constitutes a trade secret. If you are not the intended recipient you are
hereby notified that any dissemination, copying or distribution of this
message, or files associated with this message, is strictly prohibited. If you
have received this communication in error, please notify Godwin Ronquillo PC
immediately by telephone (800.662.8393) and destroy the original message.
Messages sent to and from us may be monitored.
IRS Circular 230 Required Notice--IRS regulations require that we inform you
as follows: Any U.S. federal tax advice contained in this communication
(including any attachments) is not intended to be used and cannot be used, for
the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or
tax-related matter[s].

# Exhibit E

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara M. Harding
To Call Writer Directly:                          (202) 879-5000                                 Facsimile:
(202) 879-5081                                                                                (202) 879-5200
barbara.harding@kirkland.com                      www.kirkland.com

August 28, 2011

**Via Electronic Mail**

Jenny Martinez
Godwin Ronquillo PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

> Re:    In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on
> April 20, 2010, MDL No. 2179

Dear Jenny:

Thank you for your August 25th e-mail and for Gavin Hill's August 26th e-mail setting forth Halliburton's positions regarding certain of the outstanding discovery disputes between BP and Halliburton. The paragraphs below identify those areas where we believe we have reached agreement with Halliburton and those areas where we believe there currently is no agreement or an incomplete agreement. While we remain willing to continue our dialogue on any discovery item still in dispute, in order to preserve our rights, we intend to file motions on each item noted below for which we believe there currently is no agreement or an incomplete agreement. We are available on Sunday to determine if agreement still can be reached on any of the unresolved issues.

## I.    AREAS WHERE WE BELIEVE CONSENSUS HAS BEEN REACHED

**Halliburton Software Escrow Agreement**

Based on our discussions and correspondence, I believe we have reached an agreement to provide BP access to Halliburton's proprietary version(s) of OptiCem. Please let us know whether you agree to the draft software escrow agreement (version two) that we sent to you last night, so that we can finalize our agreement on this issues. Additionally, we suggest that the OptiCem software be deposited into escrow by Friday, September 3rd. Please confirm that we have an agreement on this issue.

Regarding the purportedly non-proprietary software still in dispute (including WellCat and CemWin), we accept your offer to provide us the native data files that were associated with

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

Jenny Martinez
Godwin Ronquillo PC
Page 2

the Macondo well for our review with commercially-available software.  However, in order to give us an opportunity to assess the sufficiency of this compromise, we request that you agree to extend BP's deadline to file a motion to compel on this topic by a reasonable amount of time so that we can acquire the software and review the data files.  This will allow BP to review the native data files in accordance with Halliburton's proposal and to avoid a potentially unnecessary motion at this time.  Please confirm that you will make all data files related to the Macondo well (except for OptiCem data files which will be escrowed) available to BP by Wednesday, August 31st.  BP will attempt to utilize the files with the commercially-available software promptly upon receipt of the files.  Presumably, in light of your statement that Halliburton does not know what versions of the software that Gagliano used and refusal to escrow the software programs actually utilized on Macondo (except for OptiCem), Halliburton will not contest that BP is utilizing the appropriate version(s) of the software.  Please let us know today if you agree to this approach.

We continue to believe that a simpler approach would be to escrow the WellCat and CemWin software at the same time as the OptiCem software.  This approach would minimize attorney involvement in the process and would eliminate unnecessary disputes later.  However, we wish to attempt to resolve this issue without filing a motion to compel and thus are prepared to try Halliburton's suggested approach.

**Halliburton's Responses to BP's RFAs 10, 11, 34, 80, 180-181, 183-184, 195-203, 206-207, and 210**

In response to your August 25th e-mail, BP accepts your agreement to:

- clarify Halliburton's objections to RFA 80;

- supplement Halliburton's responses to RFAs 10, 11, and 34 with testimony references;

- supplement or clarify Halliburton's denials to RFAs 180, 181, 183, and 184; and

- amend Halliburton's responses to RFAs 195-203, 206, 207, and 210 by agreeing to omit the last sentence of Halliburton's current responses.

In addition, we understood from prior meet and confer discussions that you were willing to amend Halliburton's responses to RFAs 174-178 to omit the second to last sentence of Halliburton's current responses.  Please confirm that you remain willing to amend RFAs 174-178 in this manner.

**Halliburton's Responses to BP's Interrogatories 1, 2, 4, 15, 19, 23, 24, and 25**

In response to your August 25th e-mail, BP accepts your agreement to supplement Halliburton's responses to Interrogatories 1, 2, 4, 15, 19, 23, and 25 with testimony references.  In addition, your letter of August 4, 2011 states that Halliburton is willing to supplement its response to Interrogatory 24 with testimony references.  And, we had understood from prior meet and confer discussions that you were willing to supplement your response to Interrogatory No.

Jenny Martinez
Godwin Ronquillo PC
Page 3

25 to identify significant conversations with Jesse Gagliano on or after April 1, 2010, discussing, reflecting, or relating to the cement slurry for the production interval of the Macondo Well that you are currently aware of.  Please confirm that you remain willing to supplement your responses to Interrogatory Nos. 24 and 25 as indicated.

### Halliburton's Responses to BP's April 15, 2011 Letter

Thank you for your August 25th letter responding to our inquiries from August 15th concerning Halliburton's response to BP's requests for production.  Our request to you was that you confirm that you had searched for and produced all documents in specific categories of documents–not whether you had produced all such documents that happened to meet your search terms.  Halliburton's original responses did not reflect that it was using search terms to respond to any specific request, and we dispute that the search terms and custodians used were "agreed-upon."   BP did not receive any opportunity to review and comment upon Halliburton's search terms.  Indeed, BP received the search terms for the first time three days ago.  We appreciate and accept your offer "to continue to working collaboratively with BP to ensure that each party is provided with the responsive documents necessary for this litigation" and understand that we will not need to move to compel on any of these requests or other responsive documents related to this litigation.  Please let us know if our understanding is incorrect.

### Individuals who logged onto the Viking system

Thank you for agreeing to identify the Halliburton employees who accessed the Viking system 24 hours before and after the incident.  Please recall our original request was for information identifying the employees such that we could understand the Viking log in data. Please confirm that your information will further correlate each Halliburton employee to the "UserID" in the Viking system.

## II.   AREAS WHERE WE BELIEVE THERE IS EITHER NO CURRENT AGREEMENT OR INCOMPLETE AGREEMENT

### Halliburton's Internal Investigation

Over three weeks ago, on August 4, 2011, I wrote asking Halliburton to meet and confer regarding its assertion of privilege and work product protection over its internal investigation materials and requesting the depositions of Marc Edwards, Ronald Sweatman, and Roland Chemali.  Since then, you have repeatedly promised to respond in writing to the issues raised in my August 4th letter and to clarify Halliburton's position on the scope of the privilege, if any, applicable to Halliburton's investigation.  On Friday August 26th, we received an e-mail from Mr. Hill setting forth Halliburton's explanation as to why there was no "company-directed, non-privileged, post-incident investigation" and instead there were multiple individual-led investigations.   Regardless of the characterization, BP asked Halliburton to produce all documents relating to "its post-incident investigation" over three weeks ago (and these documents were called for even earlier in many document requests).  Since that time, you have indicated to us numerous times that these post-incident investigations were not privileged and

Jenny Martinez
Godwin Ronquillo PC
Page 4

you did not intend to shield them from discovery, but have not provided us with anything in writing on what Halliburton intends to do to provide BP with this material.  We have asked multiple times for you to provide in writing:  (1) a statement describing the scope of what Halliburton intends to produce and a date certain; (2) a confirmation that Halliburton will review its privilege log for entries related to the post-incident investigations; and (3) whether Halliburton will provide us with witnesses.  Specifically, as to the scope of your production, please explain what you are withholding and how you have investigated what should be produced.  To this day, you have only responded that you refuse to produce witnesses.  Given that we still do not understand what Halliburton will be producing (or when) despite our detailed letter on August 4th and e-mail on August 16th, we intend to file a motion on Monday regarding this matter.  To the extent you still wish to resolve this matter, we ask that you provide a written response on points (1) and (2) above and agree to provide BP time to review the documents that you will be producing before deciding whether BP needs to request witnesses so that we may fairly assess Halliburton's position on point (3).

### Halliburton's Response to Interrogatory Nos. 8 and 10

We previously discussed these interrogatories on August 16, 2011.  As I explained, these interrogatories seek Halliburton's documents and witnesses that it contends support its views as to what caused the incident and why it is not at fault.  We indicated that we wanted, at minimum, Halliburton to identify any key documents that it would be relying upon at trial as to "the events that caused the Deepwater Horizon incident" (interrogatory no. 8) and why "Halliburton was not at fault" (interrogatory no. 10).  Halliburton's response is needed so that BP is not unfairly surprised at trial by the documents and witnesses that Halliburton intends to use.  BP does not expect Halliburton to produce expert analysis, opinions or data.  However, these interrogatories fairly require Halliburton to reveal any facts or witnesses that support Halliburton's positions or contentions in the litigation. Accordingly, BP intends to file a motion to compel Halliburton to answer these interrogatories.

### Halliburton's Response to Interrogatory Nos. 16, 17 and 18

We have agreed that you could respond to these interrogatories with protocols and standards that would generally apply to deepwater wells in the Gulf of Mexico.  So limited, the information sought related directly to Halliburton's work at the Macondo well—a deepwater well in the Gulf of Mexico.  As such, your objection that the interrogatories seek irrelevant information is moot and you should provide written responses.

### Halliburton's Response to Interrogatory No. 24

As indicated above, you earlier offered to supplement Interrogatory No. 24 to provide page citations for the deposition testimony currently referenced in Halliburton's response.  While we appreciate your willingness to provide such information, we do not believe this limited supplementation is sufficient.  As you know, Interrogatory No. 24 asks Halliburton to describe in detail how Halliburton employees abroad the *Deepwater Horizon* actually operated the mud

Jenny Martinez
Godwin Ronquillo PC
Page 5

logging equipment abroad the vessel, including specifically with respect to those items expressly referenced in the interrogatory's subsections, quoted below:

> "Describe in detail the operation of the mud logging equipment used by the Halliburton employees aboard the Deepwater Horizon in April 2010, including, but not limited to:
>
>> a. whether the Halliburton (or Sperry Drilling) system has the ability to record, capture and/or store the settings on the mud logging equipment, including what real-time data each Halliburton (or Sperry Drilling) mud logger was watching;
>>
>> b. what alarms were set or deactivated on which data streams (including drill pipe pressure, trip tank, flow in and flow out meters);
>>
>> c. what types of alarms were set (including audio, visual, or other alarms);
>>
>> d. whether the alarms were triggered; and
>>
>> e. whether triggered alarms were acknowledged on April 20, 2010, aboard the Deepwater Horizon."

References to general equipment manuals in your response does not answer (a) "what real-time data each Halliburton mud logger was watching" on April 19-20, 2010; (b) "what alarms were set or deactivated on which data streams" on April 19-20, 2010; (c) "what types of alarms were set" on April 19-20, 2010; (d) "whether the alarms were triggered" on April 19-20, 2010; and (e) "whether triggered alarms were acknowledged on April 20, 2010, aboard the Deepwater Horizon."  Accordingly, we reiterate our request that you supplement your response to answer the actual question posed in Interrogatory No. 24, which is specific to the actual operations aboard the Deepwater Horizon in April 2010, including on April 19-20, 2010.  To the extent Halliburton does not know information responsive to this interrogatory beyond that contained in the deposition testimony for which you have agreed to provide page citations, please so state in your response.  BP is entitled to this supplementation so that it may avoid unfair surprise in the event Halliburton later seeks to rely upon responsive information that it chose not to disclose notwithstanding this interrogatory.  Please note that if Halliburton declines to supplement its response to Interrogatory No. 24 as indicated, BP will move to compel.

**Halliburton's Realtime Data from the Rig**

As we previously requested and you previously agreed, please provide all real-time data from April 19-20, 2010 from the *Deepwater Horizon* or identify where it has been produced.  If you do not agree to provide this data, BP will move to compel.

Jenny Martinez
Godwin Ronquillo PC
Page 6

    We look forward to receiving your response this weekend in advance of our Monday motion to compel deadline.

                                    Sincerely,


                                    /s/ Barbara M. Harding__
                                    Barbara M. Harding

BMH/djs

# Exhibit F



*Sperry-Sun, Series 8800*
*Total Hydrocarbon Analyzer*

*Wellogging User's Manual*



**Baseline Industries**
**P.O. Box 649**
**Lyons, Colorado**

**YMA-60102**
**Rev. D**
**July 18th, 2002**

# Exhibit G



# Surface Data Logging Core Fundamentals

**Sperry-Sun Drilling Services**
**Houston, Texas**

Course 236

Technical Document TDTM0001A

Business Confidential / Confidential Access Restricted

# Exhibit H

# HALLIBURTON

## Sperry Drilling Services

**BP Exploration & Production, Inc.**
**OCS-G 32306 001 ST00BP00**
**Mississippi Canyon Block 252**

**RIG: Transocean Deepwater Horizon**

## Personnel

| | |
|---|---|
| Joseph Keith | Sr. ADT Engineer/Unit Manager |
| Kelly Gray | Sr. ADT Engineer/Relief Manager |
| Cathleenia Willis | Logging Engineer |
| Nicholas Malczewskyj | Logging Engineer |

Business Confidential

HAL_0006918

# Exhibit I



# Surface Data Logging Applied Fundamentals

**Sperry-Sun Drilling Services**
**Houston, Texas**

HALLIBURTON

Course 237

Technical Document TDTM0002A

Business Confidential / Confidential Access Restricted

HAL0050681