

**U.S. Department of Justice**

**Environment and Natural Resources Division**

wbf: nf
90-5-1-1-10026

*Environmental Enforcement Section*
*P.O. Box 7611*
*Ben Franklin Station*
*Washington, DC 20044-7611*

*Telephone (202) 514-5258*
*Facsimile (202) 616-6583*
*Facsimile (202) 514-0097*

*nancy.flickinger@usdoj.gov*

August 30, 2011

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
　　　District of Louisiana
500 Poydras Street
Room B-345
New Orleans, LA 70130

**Re: In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179**

Dear Judge Shushan:

　　　The United States respectfully submits this response to the August 22, 2011 letter brief submitted by Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Anadarko"). Anadarko requests that the Court compel the United States to provide an amended response to thirteen Requests to Admit ("RFAs") served by Anadarko jointly with other Defendants in this matter, or to provide an unqualified admission. The United States opposes that request for the reasons set forth in this letter.

　　　All of the disputed RFAs contain the term "Communications," which Anadarko defines broadly and which the United States already advised Anadarko is in part the basis for its denials. Ten of those RFA are subparts of the Request No. 63, a vague and broadly worded request. None of the RFAs pertain to routine, peripheral or non-disputed facts, but rather address issues relevant to Anadarko's potential culpability in this matter on which the parties have differing views. The United States respectfully submits that Anadarko's summary in its letter brief does not accurately portray the United States' responses. Rather, Anadarko's Motion presents two discrete issues, which the United States respectfully requests the Court to analyze separately:

1) Did the United States fully and appropriate respond to Anadarko's RFA *as drafted* -- not as Anadarko characterizes them?

2) Since, under Fed. R. Civ. P. 36 ("Rule 36") once a fact is admitted, it is essentially very difficult to reverse that admission, can the United States reserve the possibility that additional facts may emerge, given that Phase I fact discovery is not complete?

As background, the United States alleges that Anadarko was an "owner, operator, and/or person in charge" of an off-shore facility from which oil has been discharged and therefore Anadarko is subject to a civil penalty.  33 U.S.C. § 1321(b)(7).[1]  In assessing a civil penalty, the Court is directed to consider a number of penalty factors which include the culpability of each party and "such other factors as justice may require." 33. U.S.C. 1321(b)(8).  Any involvement on the part of Anadarko, or any awareness or knowledge of key events or activities at the Macondo Well – even if Defendant Anadarko believes it to be irrelevant-- are in fact relevant to the United States' claims and to Anadarko's accountability at Macondo.  Thus, the United States should not lightly be compelled to admit probative facts about Anadarko's involvement or awareness regarding activities at the Macondo Well.

Point One:  Anadarko's RFAs.

As the United States previously explained to Anadarko, see Ex. G to Anadarko Request for Order to Compel (Letter from Sarah Himmelhoch to Tiffany Hedgpeth, dated August 10, 2011), virtually all the RFAs as to which Anadarko claims the United States' response is deficient include the defined term "Communications."  Anadarko defines Communications to include the following:

> "Communication," whether singular or plural, means *any transmission of information by one or more persons to one or more persons by any means*, including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, *computer linkups*, written memoranda, and face-to-face conversations; *"communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.* (emphasis added).

See, Exhibit A to Anadarko Request for Order to Compel. Notably, a "Communication" can be from BP or other Defendants to Anadarko, or from Anadarko to BP or other Defendants.  By way of example, much testimony has been elicited in depositions concerning Anadarko's access to a secure Halliburton website and to real-time data from the rig, from which Anadarko had the ability to retrieve extensive information transmitted by BP and its contractors concerning the activities at the well, both via daily operational summaries and in real-time.  These transfers of data and information concerning well activities fall within Anadarko's definition of Communications and therefore within the scope of the Defendant's requests.

RFAs 60 and 61 request admissions that there was no Communication – as defined above – between the Anadarko Defendants and persons on or operating the Deepwater Horizon on April 20, 2010.  Given the breadth of the definition of Communications, the United States properly responded to Anadarko's RFA.  For example, RFA 60 states:

> Admit that you have no evidence of Communications on April 20, 2010 regarding the Macondo Well between any of the Anadarko Non Operating Defendants and

---

[1]  The United States also alleges that the Anadarko Defendants are liable under Section 1002(a) of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a),  based on their status as lessees at the time of a discharge of oil into the Gulf of Mexico from the Macondo Well.

any persons or entity operating the *Deepwater Horizon* or drilling the Macondo Well.

The United States' response, in full, after stating its objections, is as follows:

> Denied.  Documentary evidence indicates that on April 20, 2010, Anadarko Defendants accessed daily drilling reports, mud log reports, and wireline information related to the Macondo Well that was uploaded by BP and/or its contractors.  In addition, on April 20, 2010, the Anadarko Defendants communicated with BP to convey their approval to temporarily abandon the Macondo Well.  Lastly, the United States is aware of numerous informal communications between technical personnel at Anadarko and BP, and it is possible that discussions concerning the Macondo Well occurred on April 20, 2010.

See, Exhibit A to Anadarko Request for Order to Compel.  Thus, the United States clearly identified a number of Communications that fall within  the RFA.  Similarly, Anadarko complains that the United States did not fully respond to a number of subparts for RFA No. 63, which contains twelve subparts, all of which relate back to the initial sentence:

> Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well:

*Id.*  RFA No. 63 is so broadly worded that in most instances providing an unqualified admission is not possible.  This introductory clause requires that the United States find (1) no evidence (2) of any involvement (3) in the broadly defined Communications (4) leading to (5) decisions specified in each of the twelve subparts.  As required by Rule 36, however, the United States made a good faith attempt to admit what it could and to explain its basis for the denial.  Accordingly, where the United States believes that Anadarko does have some involvement with the specified decisions, we have denied the RFA "except as admitted herein."  We have explained our response, however, and identified the pertinent documents and facts that support our response.  Our response to RFA 63, subpart (c) is representative:

> Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any Communications leading to these decisions relating to the Macondo Well: (c ) Any cement recipe for the Macondo Well.
>
> RESPONSE:  Denied, except as expressly admitted herein.  The United States has no evidence of any Anadarko employee talking with or receiving a message directly from a BP employee or contractor regarding the decision for any cement recipe for the Macondo Well.  However, BP informed Anadarko, before cement for the Macondo Well production casing was pumped, of certain aspects of the cement procedure for the production casing.  For example, Anadarko received and approved Authorizations for Expenditure for the Macondo Well production casing on April 15, 2010, enabling BP to perform the final failed cement job and install

- 3 -

the long-string casing, which has been alleged to be the flow path of the hydrocarbons that were released from the Macondo Well. Anadarko also was provided with and downloaded a Daily Operations Report for April 17, 2010, which informed Anadarko, among other things, the "24 Hr. Forecast" was to "RUN 7" X 9 5/8" CASING, CEMENT SAME," and that the "Current Status" was "DISPLACING CEMENT W/14.0 PPG MUD." In addition, the Daily Operations Reports dated April 16, 17 and 18, 2010, informed Anadarko, among other things, about "Materials/Consumption" of "Cement Lite Fill," "Cement," "Cement Class G" and "Barite," including the amount of sacks on hand. Further, in the Daily Operations Report dated April 19 and downloaded by Anadarko, there is detailed information about the cement recipe. There were also numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject.

See, Exhibit A to Anadarko Request for Order to Compel. As this one example demonstrates, Anadarko mischaracterizes the scope and detail of the United States' responses. The example clearly enumerates evidence of Communications, as defined by Anadarko, involving Anadarko and leading to cementing decisions. Given the breadth of Anadarko's requests and definitions, it should not be surprising that the United States does see (1) some evidence (2) supporting involvement of the Anadarko Defendants in (3) the broadly defined Communications (4) leading to (5) decisions regarding the enumerated activities.

Despite the difficulty of working with Anadarko's language, the United State did attempt to admit that it did not have evidence of face-to-face conversations between Defendant Anadarko's employees and BP employees where that was the case. Anadarko, however, has squarely misrepresented to the Court that "the United States has expressly admitted that it had no evidence of such alleged communications." See, Anadarko Request for Order to Compel, pg. 2. Had Anadarko asked simply whether the United States had evidence of face-to-face conversations, or otherwise drafted a more narrow and focused request, it may have elicited a different response; here, however, it is unfair to attempt to rectify the situation by glossing over the issue with the Court, especially when the United States already pointed out the breadth of the underlying RFA to Anadarko in an attempt to resolve it.

Relatedly, Anadarko seeks to have the Court require the United States to "connect the extraneous information and documents" enumerated in the disputed RFA responses to a valid basis for the denial. The sole issue to be resolved, however, is whether the United States replied to each RFA as required by Rule 36, given the actual language of the Request. Where, as here, the United States has responded to the RFA as drafted, and identified the "Communications" on which it relies, it is inappropriate to impose additional burdens upon the United States to explain its responses. Nor is it appropriate at this juncture to invite the Court to wade into substantive issues of causation and relevance by reviewing any supplemented responses. If Anadarko believes that those properly identified "Communications" are extraneous or irrelevant, it will have ample opportunity to make that case in the context of motions for summary judgment, motions in limine, or at trial, where the legal framework and full factual context will be clear. And, to grant Anadarko's request and to compel the United States to provide an unqualified admission will unfairly – and perhaps permanently – deprive the United States of an opportunity to put on relevant and probative evidence of Anadarko's involvement with the Macondo Well.

Point  Two: Possibility of Additional Informal Communications

        Anadarko's letter brief raises a second, and separate, issue.  In each of the disputed responses, the United States – typically in addition to the "Communications" identified as above – adds language along these lines: "In addition, there were also numerous informal communications between BP and Anadarko, and it is possible that someone working for BP talked with or sent a message to an Anadarko employee prior to a decision on this subject."  In its August 5th letter, see, Anadarko's Request for Order to Compel, Exhibit F (August 5, 2011 Letter from Tiffany Hedgpeth to Sarah Himmelhoch), Anadarko incorrectly stated that, having admitted an RFA, "the United States can supplement its responses at any time should its ongoing investigation uncover evidence that would allow the United States to properly deny one or more of the Anadarko Parties' RFAs."  As the United States already pointed out to counsel for Anadarko on August 10,  see Ex. G to Anadarko Request for Order to Compel (Letter from Sarah Himmelhoch to Tiffany Hedgpeth, dated August 10, 2011), Rule 36(b) unambiguously provides to the contrary.  Leave to withdraw may, in the court's discretion, be granted only if court believes it would promote presentation of the merits of the action and if withdrawal will not prejudice requesting party.  Fed. R. Civ. P. 36(b). Even when these two factors are established, a court retains the discretion to deny a request for leave to withdrawal or amend an admission.  *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983) ("Because the language of [Rule 36(b) ] is permissive, the court is not required to make an exception to Rule 36 even if both the merits and the prejudice issues cut in favor of the party seeking exception to the rule."); *American Auto. Assoc. v. AAA Legal Clinic*, 930 F.2d 1117, 1119 (5th Cir. 1991) (emphasizing that any matter admitted under Rule 36 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission").

        While it is desirable to narrow the facts through admissions, the facts for which Anadarko seeks admissions are highly disputed and are potentially very relevant to Anadarko's liability and penalty exposure.  These are not simple requests to authenticate documents or to eliminate peripheral or undisputed facts.  The United States is mindful that, once a fact is admitted, it is almost certain that Anadarko will claim prejudice if the United States seeks to withdraw the admission, and that the court is unlikely to be inclined to grant such a motion as the date for trial draws near.  *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (rejecting party's request to withdraw admissions, reasoning that for Rule 36 "to be effective . . . litigants must be able to rely on the fact that matters admitted will not later be subject to challenge").  There will be many other junctures at which the United States will either need to produce specific evidence or to justify its reservation:  for example, in opposing a motion for summary judgment, it will need to provide an appropriate quantum of evidence to dispute materials facts, or justify pursuant to Rule 56(d) why it cannot do so.  And, obviously, at trial the United States will need to present evidence.  Here, it is still months before trial, and fact discovery is not yet closed.  Thus, given the nature of the RFAs, the United States' reservation is justified and appropriate.

        In sum, the United States respectfully requests that the Court separately analyze the two issues presented by Anadarko's letter brief:  first, whether the United States met the requirements of Rule 36 and appropriately responded to the RFAs as drafted; and second, whether the United States should be permitted to hold open the possibility that additional informal discussions occurred, similar to those already known to have taken place.  As to the first point, the United States did appropriately respond to Anadarko's requests and thus there is no need for the Court to

compel additional responses, explanations, or supplementation. The United States has attempted in good faith to respond to Anadarko's discovery requests, despite the overly broad wording of the RFAs, and responded to the RFAs as drafted, provided partial admissions in many instances, and explained in full the basis for its denials. If Defendant Anadarko does not believe the enumerated "Communications" to be relevant or probative, it can argue that in another context. As to the second point, the United States appropriately included a reservation in the event additional evidence turns up during the nearly six months between now and trial. Once admitted, it is unlikely that the United States would be permitted to withdraw or amend the RFAs.

Thank you for your consideration of the United States' response.

Sincerely,

Nancy Flickinger
Senior Attorney

cc:     Tiffany R. Hedgpeth
        Ky Kirby, Esq.
        Warren Anthony Fitch, Esq.