# BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 2 13.680.6442
Direct Fax:    213.830.8642
tiffany.hedgpeth@bingham.com

August 31, 2011

**via email** (Sally_Shushan@laed.uscourts.gov)

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
    Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

**Re:**   Opposition to BP's Motion to Compel Responses to Discovery
Requests Served on Anadarko in *In Re Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf of Mexico, on April 20,
2010*, MDL No. 2179

Dear Judge Shushan:

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP
("AE&P") (collectively, "Anadarko") respectfully submit this letter in opposition to
the Motion to Compel letter ("MTC") submitted by BP on August 26, 2011.  For the
reasons set forth below, Anadarko respectfully requests that the Court deny BP's
MTC in its entirety.

The first issue raised by BP is whether Anadarko should be compelled to produce the
policies, procedures, and standards generally applicable to deepwater wells in the
Gulf of Mexico ("GOM") that Anadarko's subsidiary, Kerr-McGee,[1] might have.
Contrary to BP's assertions, and as reflected by its communications with BP,
Anadarko never agreed to produce such documents.  In an effort to resolve a separate
discovery dispute through a reasonable compromise, Anadarko agreed to produce
APC's and AE&P's policies and procedures applicable to deepwater drilling in the
GOM, even though Anadarko continued to believe that whatever policies, procedures
or standards these entities may or may not have are irrelevant to this case because
APC and AE&P were non-operator investors in the Macondo Well with no control
over BP's activities at the well.

BP is now improperly trying to use this Court to extract an expansion of this
conciliatory compromise regarding APC and AE&P documents to include production
of KM documents -- documents which Anadarko specifically said during meet and

---

[1] On September 1, 2011, Kerr-McGee Oil & Gas Corporation ("KM") will change its name to
Anadarko US Offshore Corporation.  For clarity's sake, in this letter, Anadarko will continue
to refer to Anadarko US Offshore Corporation as "Kerr-McGee" or "KM" because at all times
relevant to the meet and confer communications, the company was known as "Kerr-McGee."

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T +1.213.680.6400
F +1.213.680.6499
bingham.com

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 2

confer communications it was not willing to produce. KM's documents are not relevant to the pending litigation. KM had no involvement with the events leading up to the incident and BP does not contend that it did. BP's tenuous relevancy argument is that the information goes to the standard of care applicable in the "industry." However, BP shows no sign of seeking this information from the other companies that engage in deepwater drilling in the GOM. If BP truly were seeking to establish industry standards of care for deepwater drilling activities, then it would either elicit this information from its own experts or seek this information from all deepwater drilling companies, or a large enough sample to be representative of the "industry," rather than focusing on just a couple of companies. In short, BP's purported "need" for the KM documents is pretext. For these reasons, Anadarko respectfully requests that the Court deny BP's request for production of KM documents.

The second issue raised by BP is whether Anadarko must repeat its entire document collection and production in order to provide BP with certain custodial metadata that is not available from Anadarko's document storage and management system. That system, Symantec Enterprise Vault ("EVault"), does not have the ability to capture and maintain the custodial metadata of a document once it is deposited into EVault. However, *all other metadata fields* remain intact. These other metadata fields provide BP with a significant amount of information, including the authors of documents, recipients of the documents, etc. It likely is because of the wealth of author and recipient metadata information available to it that BP has not identified to Anadarko a single specific document for which it actually needs custodial information. Moreover, during the meet and confer discussions, Anadarko invited BP to identify specific documents for which it felt it had some actual need so that Anadarko could research and provide missing information wherever possible. BP rejected this offer out of hand and instead seeks to force Anadarko to repeat its entire document collection and production effort without using EVault at all. As held by other courts, the absence of the custodial metadata does not justify the burden on Anadarko of repeating its document production.

## I.   ANADARKO SHOULD NOT BE REQUIRED TO PRODUCE THE DOCUMENTS AND OTHER INFORMATION OF KM

BP argues that Anadarko should provide documents and responses to interrogatories regarding various categories of GOM deepwater drilling policies. *See* BP MTC, at 2. As an initial matter, until submitting its MTC to the Court, BP had never informed Anadarko that it intended to seek to compel Anadarko to respond to interrogatories on behalf of KM. *See* Exh. A (8/22/11 E-mail from D. Beffa to T. Hedgpeth and D. Saunders; *see also* Exh. B (8/16/11 Letter from D. Beffa to T. Hedgpeth and D. Saunders, at 2-3). While this failure to meet and confer is grounds for denying BP's request to compel interrogatory responses, the following substantive reasons also require that the Court deny BP's request to compel the interrogatory responses and production of documents with respect to KM.

### A.   Anadarko Never Agreed To Produce KM's Policies, Procedures Or Standards Or To Respond To Related Interrogatories

On April 29, 2011, BP issued 97 requests for production of documents ("RFPs") to the "Anadarko Defendants" (defined as APC and AE&P - and *not* their *subsidiaries*

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 3

or *affiliates*).[2]  Many of the RFPs sought documents regarding specific operations and procedures at wells APC or AE&P drilled in the GOM -- *i.e.*, they did not seek information regarding the Macondo Well. *See* Exh. C (BP RFP Nos. 34-56). On July 1, 2011, BP issued 44 Interrogatories to the Anadarko Defendants (again, defined only as APC and AE&P).[3]  Like the RFPs, many of the interrogatories sought information related to APC's and AE&P's activities regarding other wells in the GOM. *See* Exh. E (BP Interrogatory Nos. 2, 5, 8, 11, 13, 21, 22, 23, 25, 26, 28, 29, 30, 32). Anadarko made clear in its objections that it was responding to BP's Interrogatories only on behalf of APC and AE&P. *See* Exh. F, at 4, ¶ 14 ("Responding Party [defined as APC and AE&P] will respond to the Requests only on behalf of Responding Party"). Anadarko also made clear in its responses to BP's RFPs that it was only producing documents within APC's and AE&P's own files: "Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of *its own files* and after making reasonable inquiries." *See* Exh. D, at 3, ¶11. (emphasis added).

Anadarko also asserted that discovery requests unrelated to the Macondo Well were irrelevant:

---

[2] BP defines the terms "You," "your," and "yours" to "mean the Anadarko Defendants, including without limitation all of the Anadarko Defendants' present or former agents or representatives, or anyone acting or purporting to act for or on the Anadarko Defendants' behalf for any purpose whatsoever." *See* Exh. C (The BP Parties' First Requests for Production to the Anadarko Defendants, served on April 29, 2011, at 13, ¶ 1). Significantly, BP does not define APC or AE&P to include subsidiaries or affiliates. In addition, so there would be no doubt that only APC and AE&P were responding to BP's RFPs, Anadarko objected to this broad definition stating "Responding Party objects to the definition of "You," "Your," and "Yours" as overly broad and as improperly seeking party discovery from non-party entities. Responding Party will respond to the Requests only on behalf of Responding Party." *See* Exh. D (Objections and Responses of Defendant Anadarko Petroleum Corporation and Anadarko E&P Company LP to the BP Parties' Requests for Production, served on July 1, 2011, at 4, ¶ 13).

[3] Although BP does not define "Anadarko Defendants" to include subsidiaries of APC or AE&P, BP defines the terms "You," "your," and "yours" to "mean Anadarko and/or any corporate affiliate, including without limitation any of its present or former agents or representatives, or anyone acting or purporting to act for or on Anadarko's behalf for any purpose whatsoever, including operators of wells in which any Anadarko-affiliated entity holds any percentage of any kind of ownership." *See* Exh. E (BP Parties' Corrected First Set of Interrogatories, served on July 2, at 10, ¶1). Anadarko objected to this definition and made clear that it was responding only on behalf of APC and AE&P: "Responding Party objects to the definition of "you," "your," and "yours" as overly broad and as improperly seeking party discovery from non-party entities. Responding Party will respond to the Interrogatories only on behalf of Responding Party." *See* Exh. F (Objections and Responses of Anadarko ("Anadarko Petroleum Corporation and Anadarko E & P Company LP") to the BP Parties' First Set of Interrogatories, served on Aug. 4, 2011, at 4, ¶ 14).

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 4

> 20. *Responding Party objects to the [Interrogatories] as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the Deepwater Horizon's operations at the Macondo Well, or the Incident. Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the Deepwater Horizon's operations at the Macondo Well, or the Incident.*

See, *e.g.,* Exh. F, at 5, ¶20.  Anadarko also made its position clear within its specific responses to BP's non-Macondo Well discovery requests:

> *[A]s a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the extent the documents requests are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.*

See, *e.g.,* Exh. D, at 6, et seq.

After engaging in various discussions regarding Anadarko's objections to the various non-Macondo Well discovery requests, on August 2, 2011, Darin Beffa, counsel for BP, proposed the following:

> *We propose that, with respect to discovery between Anadarko and BP related to non-Macondo wells, each party will be required to respond to those requests (and only the parts of such requests) seeking interrogatory responses describing (or documents embodying) company policies, procedures, or standards applicable generally to deepwater Gulf of Mexico wells; if no such generalized policies, procedures, or standards exist, the response shall so indicate. We would like this proposal to be included on the agenda for our call tomorrow.*

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 5

*See* Exh. G (8/2/11 Letter to C. Solomont, W.A. Fitch from D. Beffa, at 3).   In response to this proposal, Anadarko informed BP that it would supplement its responses in accordance with Mr. Beffa's proposal. *See* Exh. H (8/11/11 E-mail from T. Hedgpeth to D. Beffa).[4]

BP's proposal requires Anadarko and BP to produce information regarding their respective company policies, procedures, or standards applicable generally to deepwater wells in the GOM.   The proposal did not include withdrawal by Anadarko of its prior objections to producing documents for entities other than APC and AE&P. The proposal never mentioned KM at all.   Had BP intended its proposal to extend to KM's information and documents, it should have stated this explicitly. The Court should not condone BP's efforts to compel a production of KM documents when they are outside the scope of the BP proposal.

### B.      The Information BP Seeks From KM Is Not Relevant

KM had no involvement with the design, construction, or drilling of the Macondo Well or any other events leading up to the explosion of the Deepwater Horizon at the Macondo Well and the subsequent release of oil into the Gulf of Mexico ("Incident"). As a consequence, BP falls back to the assertion that the relevance of KM's information and documents goes to the "industry standard of care."[5] While it is true that BP is alleged to have been grossly negligent at the Macondo Well, Anadarko's and KM's policies can hardly be said to establish the "industry standard." To the best of Anadarko's knowledge, no other petroleum company that operates in the GOM has been asked by BP to produce or provide information about their policies, standards and procedures.   Evidencing the dubiousness of BP's "industry standard" rationalization, when Anadarko asked BP on August 18 whether it had subpoenaed the same types of policies, standards, and procedures from all other entities involved with deepwater drilling in the GOM, BP's counsel responded that he did not know. *See* Exh. I (T. Hedgpeth Decl., at ¶ 3).   Thus, BP's insistence that Anadarko produce KM policies, standards, and procedures appears to be an effort to harass Anadarko by requiring it to search the files of its subsidiary rather than a legitimate effort to seek information relevant to BP's defenses.

Without a clear explanation of its significance, BP also notes that Anadarko witnesses who "served in drilling engineering and other technical roles on the Macondo Well came from [KM]." *See* BP MTC, at 4.   BP seriously mischaracterizes Anadarko's role with regard to the Macondo Well.   Indeed, as Judge Barbier found in his recent Opinion regarding Motions to Dismiss the Master (B)(1) Complaints, BP was "solely

---

[4] Following Anadarko's response, on August 16, 2011, BP sent Anadarko a letter acknowledging that Anadarko had not been producing the records of Anadarko-related entities. *See* Exh. B, at 2-3.   BP argued that Anadarko should produce KM documents. *Id.* Significantly, BP did *not* state that Anadarko had already agreed to produce KM information in response to Mr. Beffa's proposal.

[5] BP asserts that "APC has not articulated any reason" why KM's policies and procedures are not relevant.   As shown above, this is not correct.

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 6

responsible for the drilling operations" on the Macondo Well. (Rec. Doc. 3830, at 28.) For this reason, even the APC and AE&P information that Anadarko will be producing under the compromise will have no bearing on the issues in the case. Whether Anadarko had the best policies, the worst policies, or no policies at all has no significance in this case because BP, not Anadarko, made all decisions with respect to the drilling and temporary abandonment operations at the Macondo Well. The policies, procedures, and standards of KM, who was not even a non-operating investor in the Macondo Well let alone an entity involved in the Macondo Well's operations, are even further afield and not only not likely to, but are essentially certain not to, lead to the discovery of admissible evidence.

In sum, Anadarko never agreed to produce KM documents or respond to interrogatories on KM's behalf. KM's policies, procedures, and standards generally applicable to deepwater drilling in the GOM have no information relevant to the litigation and are not likely to lead to the discovery of admissible evidence. It is respectfully submitted that Anadarko should not have to spend its time weeding through the files of a subsidiary who had no involvement with the drilling of the Macondo Well or the events leading up to the Incident in order to find irrelevant documents. Anadarko respectfully requests that BP's request for KM documents and interrogatory information be denied.

## II. RE-COLLECTION AND RE-PRODUCTION FOR PURPOSES OF TRYING TO CAPTURE CURRENTLY UNAVAILABLE CUSTODIAL METADATA WOULD IMPOSE AN ENORMOUS BURDEN ON ANADARKO AND PROVIDE BP WITH VERY LITTLE BENEFIT

BP asks the Court to compel Anadarko to re-collect and re-produce its entire document production because one metadata field -- the custodian field -- was lost in the process of gathering and producing Electronically Stored Information ("ESI"). Although BP implies otherwise, the loss of the metadata was not intentional. It resulted because the system Anadarko normally uses for collecting, storing and managing ESI -- EVault -- does not allow the custodial metadata to survive once the document is deposited into EVault. EVault maintains *all other metadata information*. While, as discussed below, the loss of metadata has no material impact on BP, redoing the entire Anadarko production without using EVault would be extremely time-consuming and expensive and, therefore, unduly burdensome. Moreover, to avoid any prejudice to BP from the lack of metadata, a circumstance that BP has not established and that Anadarko denies will occur, Anadarko has offered a compromise by which Anadarko will research custodian information on an individual document basis upon identification by BP of documents for which such custodian information is essential and cannot be gleaned from the author or recipient metadata or pre-existing deposition testimony. BP has rejected Anadarko's proposed compromise.

### A. Anadarko's Production Process And The Unavailability Of Custodial Metadata In Evault

Shortly after the explosion on the *Deepwater Horizon*, Anadarko issued a litigation hold to its employees and began searching for and collecting documents that potentially could be relevant to anticipated litigation. *See* Exh. J (T. Abisogun Decl., at ¶ 4). Anadarko, in its regular course of business, currently and historically uses

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 7

EVault for document collection, storage and management. *Id.* at ¶ 3.   EVault stores company employee e-mails, archived documents, and documents identified as relevant to litigation involving Anadarko or government agency investigations. *Id.* In July 2010, as part of its effort to capture all documents potentially relevant to the Macondo incident, Anadarko transferred ESI from more than 108 employees and other sources (such as shared drives) into EVault. *Id.* at ¶ 5. Anadarko then used the search functions in EVault to locate and identify documents responsive to document requests in the current litigation. *Id.* at ¶ 6. This process occurred over many months. *Id.* at ¶ 7.

EVault does not retain custodial metadata information for images loaded onto EVault. *Id.* at ¶ 8. The Court issued Pretrial Order No. 16 ("PTO 16") on November 8, 2010, months after Anadarko transferred the ESI into EVault. PTO 16 requires, *inter alia,* the parties to produce ESI with metadata "to the extent it exists." PTO 16 was issued after the plaintiffs had served their first set of Omnibus RFPs to Anadarko and Anadarko had already started the process of searching through and collecting documents from EVault to respond to the requests. EVault contained the universe of documents relating to the Macondo incident, but that universe did not include the custodial metadata field. In other words, the custodial information did not, and does not, exist in EVault. To capture custodial metadata, Anadarko would have to go back and repeat the entire ESI collection process and purchase and use a new central document repository. *Id.* at ¶ 10. In addition to the huge expense, this whole process would take at least 6 months. *Id.*

      **B.**    **BP Has Not Suffered Any Prejudice From The Absence Of The Custodial Metadata**

BP's motion is replete with inaccurate assertions regarding the effect of not having the custodial metadata field. In fact, BP has extensive information about the documents. First, all other metadata fields are intact. *Id.* at ¶ 9. Contrary to BP's assertion that the custodial information is needed to determine who authored a document (*see* BP MTC, at 5), the "from" metadata field provides this information (for all documents, not just e-mails). Likewise, the metadata includes the "to," "cc," and "bcc" fields, which provide information concerning who received e-mails. Second, also contrary to BP's representation (*id.*), the custodial metadata for hard copies is present as hard-copy documents were not processed through EVault. Third, only about 9,000 non-email documents were produced without the custodial metadata.

Finally, and most telling of the lack of any prejudice to BP, is that BP has had Anadarko's initial production for more than seven months, yet has only now raised this issue. Anadarko began producing documents in the litigation in November 2010 in response to Plaintiffs' first set of Omnibus RFPs. *See* Exh. I (T. Hedgpeth Decl. at ¶ 4). Those documents did not contain custodial metadata. It was not until July 1, 2011, that BP first raised the issue concerning Anadarko's metadata. *See* Exh. K (7/11/11 Letter from M. Nomellini to C. Solomont, summarizing July 1 meet and confer discussions). This was *after* the depositions of all of Anadarko's 30(b)(6) witnesses (most of whom also testified in their individual capacity) were completed. Clearly, if the separate custodial metadata fields were as important to BP as it now

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 8

represents to the Court, it would have sought relief from the Court *before* the critical Anadarko depositions occurred.[6]

### C.     Anadarko Has Offered To Research Custodians For Important Documents Identified By BP

In an effort to resolve this dispute and avoid any purported prejudice to BP from the absence of the custodial metadata field, Anadarko informed BP that if there were any key documents for which BP would like the custodian identified, Anadarko could research the custodian information manually. *See* Exh. L (8/19/11 Email from T. Hedgpeth to D. Beffa and M. Nomellini); *see also* Exh. I (T. Hedgpeth Decl., at ¶ 5). Although this would be extremely time-consuming, Anadarko told BP it is willing to undertake such efforts, provided BP's identification of documents for which such information is supposedly essential is provided in good faith. As set forth below, such an approach for resolving metadata concerns is consistent with the applicable case law.

In *Kentucky Speedway, LLC v. Nat'l Ass'n. of Stock Car Auto Racing*, 2006 WL 5097354 at *7-9 (E.D. Ky. Dec. 18, 2006) the defendant produced documents in PDF format rather than native format with metadata included. *Kentucky Speedway, LLC v. Nat'l Ass'n. of Stock Car Auto Racing*, 2006 WL 5097354 at *8. Seven months after defendants' production, plaintiff sought to have the defendant reproduce its documents in native format so that it could obtain the document metadata. *Id.* The court denied plaintiff's request, finding that the plaintiff had not made "any showing of a particularized need." *Id.* Plaintiff's general argument that it needed custodian information in order to prosecute its case was insufficient. *Id.*

However, similar to Anadarko's offer to BP, the court did permit the plaintiff to request metadata for any specific document for which the "date and authorship information is unknown but relevant." *Id.* at *9. The court reasoned that "[r]esponding to a request for additional information concerning specific documents would be far less burdensome to defendant and far more likely to produce relevant information." *Id.* at *9. As explained above, Anadarko would be willing to accommodate BP's requests for custodian information for specific documents. To date, however, BP has not identified a single document for which the custodial information is important to BP's defense.[7]

---

[6] BP quotes PTO 17's Certificate of Completeness requirements. All of Anadarko's witnesses complied with this requirement and produced their custodial files in the litigation.

[7] BP complains that counsel for Anadarko told BP that the lack of the custodial metadata field does not allow Anadarko to identify whether non e-mails or e-mail attachments were produced by Mr. Hackett. *See* BP MTC, at 7. Mr. Hackett's files were imaged and transferred to EVault and any responsive documents were produced. BP can search the documents to determine whether Mr. Hackett was the author of any non-privileged responsive documents (he authored only e-mails). And, if BP were interested in knowing whether a particular

(Footnote Continued on Next Page.)

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 9

     **D.**     **Re-Collection and Re-Production In Order To Recapture Only The Custodial Metadata Would Be Extremely Time-Consuming And Expensive**

What BP requests would impose an extreme burden on Anadarko, one that simply is not justified in this circumstance. In order to recapture and produce the custodial metadata, Anadarko would have to: 1) re-image all of the files of all 108 persons who potentially have responsive information; 2) re-image all shared drives and other locations holding ESI; 3) upload those potentially relevant documents into a new central repository (which would have to be purchased or an outside vendor retained); 4) train personnel on the new central repository; 5) re-run the searches Anadarko previously performed in EVault; 6) identify responsive, non-privileged documents for production; and 7) produce the documents for a second time. *See* Exh. J (T. Abisogun Decl., at ¶ 10). This process would take at least six months to perform and would require two of Anadarko's personnel one a full-time basis as well as counsel's time. *Id.* The time, expense and effort would detrimentally impact Anadarko's ability to focus on current discovery efforts and trial preparation.

The burden associated with reproducing documents already produced far outweighs the benefit of the custodial metadata information, as recognized in applicable case law. In *Diesel Machinery, Inc. v. Manitowoc Crane Group*, the parties disagreed about an apparent oral agreement they reached indicating that production of documents in PDF format would be acceptable. *See Diesel Machinery*, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011). The court declined to require re-production of the documents in native format where the party that produced in PDF format had already "devoted 1,000 hours to its documents production." *Id.* The court stated:

> The burden or expense of such additional discovery, which would only serve the purpose of metadata production, outweighs any potential benefits. . . . [plaintiff] has not demonstrated how reproduction . . . would further aid in discovery on or resolution of these issues. Reproducing the documents in a different format would cost [defendant] several thousands of dollars in additional expenses.

*Id.* Similarly, for Anadarko to start its production from scratch, the costs would be prohibitive. Anadarko's productions contain all other requested metadata fields and Anadarko is willing to accommodate good faith requests for custodian information for specific documents.

---

(Footnote continued from Previous Page.)

document were in Mr. Hackett's files, BP could simply ask Anadarko to check. BP has chosen not to do so.

A/74500106.2/3320167-0000350535

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 10

## III.    CONCLUSION

For the reasons set forth above, Anadarko respectfully requests that BP's MTC be denied in its entirety.

Respectfully submitted,

Tiffany R. Hedgpeth

Enclosures


Cc:     Martin Boles, Esq.
        Ky Kirby, Esq.
        Warren Anthony Fitch, Esq.

A/74500106.2/3320167-0000350535

Bingham McCutchen LLP
bingham.com

# EXHIBIT A

**Hedgpeth, Tiffany**

| | |
|---|---|
| **From:** | Beffa, Darin T. [dbeffa@kirkland.com] |
| **Sent:** | Monday, August 22, 2011 5:54 PM |
| **To:** | Hedgpeth, Tiffany; Saunders, Daniel A. |
| **Cc:** | Nomellini, Mark J. |

**Subject:** BP-Anadarko Discovery

Tiffany and Dan,

After careful consideration, we have narrowed the list of issues on which we're currently considering a motion to compel:

1) Anadarko's refusal to produce documents in response to BP RFPs 57 and 58. BP believes that these documents are reasonably calculated to lead to the discovery of admissible evidence for phase 1 of the trial, and should be produced now.

2) Anadarko's refusal to produce documents in the possession of Kerr-McGee Oil and Gas Corp. Although you have not stated exactly why you believe these documents do not need to be produced, BP believes these documents are relevant to phase 1 of the trial, and cases have held that APC has "control" over its subsidiaries for purposes of document production. A corporate record search reflects that Kerr-McGee changed its name to Anadarko US Offshore Corp. this past Friday. Anadarko witnesses testified that Kerr-McGee is a subsidiary of Anadarko, and there's no indication that the corporate relationship changed on Friday.

3) The lack of custodian information in Anadarko's document production. We believe Anadarko has this capability, and Court orders require disclosure of custodian information where available.

4) The inclusion of phase 2 documents during custodial productions, as discussed in prior correspondence.

We are happy to discuss our relative positions on these issues, and hope that we can reach an agreement that will avoid the need for motion practice. Please let me know if you would like to discuss any of these issues further.

In addition, I understand that you are working with us to search the hard drives of three Anadarko custodians in order to help determine whether Anadarko's practice of not searching full hard drives of its custodians created gaps in its production, including that of its CEO. And you are still looking into whether Anadarko has the ability to produce instant messages. We look forward to hearing from you about these open issues, and if we do not hear from you by the motion to compel deadline, we expect that you will not object to a motion to compel on these topics after that deadline.

On a separate note, Judge Shushan set today as the deadline to exchange any additional phase 2 search terms. Recently, BP agreed to an additional phase 2 search at Anadarko's request. We believe that Anadarko should run this search through its custodians' files as well. The new search is:

"spinner" OR "flowmeter" OR "low-resolution" OR "low resolution" OR "high-resolution" OR "high resolution" OR "velocimetry" OR "*BOPD*" OR "*BPD*" OR "bbl*" OR "flow*" OR "*mbd*" OR "*wcd*" OR "leak*" OR "kink" OR "restrict*" OR "gal/min*" OR "gallon/min*" OR "gallons/min*" OR "gal/day" OR "gallon/day" OR "gallons/day" OR "emanat*" OR "orifice" OR "FEA" OR "Admiral" OR "Allen" OR "ASTM" OR "AVIRIS" OR "barrel*" OR "b/d" OR "bbl" OR "bbl/d" OR "Bonn Agreement" OR "Bopd" OR "Bpd" OR "Coast Guard" OR "collect*" OR "flare*" OR "flow" OR "flow rate" OR "flowrate" OR "FRTG" OR "FRTT" OR "Landry" OR "mass balance" OR "mbd" OR "McNutt" OR "MMCFD" OR "NOAA" OR "nodal" OR "oceanic" OR "oil rate" OR "oil on water" OR "outflow" OR "plume" OR ("remote*" AND "operat*" AND "vehicle") OR "reservoir" OR "riser" OR "RITT" OR "ROV" OR "sheen" OR "skim*" OR "spill" OR "USCG" OR "uscg.mil" OR "velocity" OR "volume"

Thanks,
Darin

8/30/2011

Darin T. Beffa
KIRKLAND & ELLIS LLP
333 S. Hope Street · Los Angeles, CA 90071
Tel 213-680-8264 · Fax 213-680-8500
Darin.Beffa@kirkland.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT B

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California  90071

Darin T. Beffa
To Call Writer Directly:                          (213) 680-8400                          Facsimile:
(213) 680-8264                                                                              (213) 680-8500
darin.beffa@kirkland.com                          www.kirkland.com

August 16, 2011

**Via E-mail**

Tiffany R. Hedgpeth, Esq.
355 S. Grand Avenue
Suite 4400
Los Angeles, CA 90071-3106

Daniel A. Saunders, Esq.
The Water Garden
Fourth Floor, North Tower
1620 26th Street
Santa Monica, CA 90404-4060

Re:      Anadarko-BP Discovery

Dear Tiffany and Dan:

I write to confirm the discussions during our August 9 teleconference regarding Anadarko's responses to BP's requests for production, to raise several issues with respect to Anadarko's responses to BP's interrogatories, to raise an issue with respect to Anadarko's privilege logs, and to respond to Dan Saunders's August 15 letter.

**I.      Anadarko's Responses to BP's Requests for Production**

During our discussion on August 9, you confirmed a number of things, promised to look into others, and agreed to supplement certain responses.  My notes from that discussion are below.

- With respect to General Objections 5 and 6, you assured me that you were not withholding responsive documents on the basis that they contained confidential, secret, or proprietary information, and that such documents were produced in accordance with the protective order entered in the MDL.

- With respect to General Objection 17 and Anadarko's objections to producing documents already in BP's possession, you stated that you were not re-producing documents that had

Chicago        Hong Kong        London        Munich        New York        Palo Alto        San Francisco        Shanghai        Washington, D.C.

## KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 2

been produced to Anadarko in the proceedings relating to the *Deepwater Horizon* incident. But you assured me that Anadarko was not otherwise withholding (1) responsive documents that have come into Anadarko's possession since April 20, 2010, or (2) responsive documents that Anadarko believes to be already in BP's possession, custody, or control.

- With respect to General Objection 19 (and other similar objections), you believed that you had produced documents related to insurance policies issued to parties other than Anadarko, but you said you would check.  Please let me know as soon as you have confirmation that those documents were produced.

- With respect to General Objection 20, you informed me that you produced the responsive documents in the possession of Robert Quitzau, an Anadarko contractor, and that there were no responsive documents in Bingham's possession.  You also informed me that you did not believe any other vendors had documents in Anadarko's possession, custody, or control, but you had not checked with any other vendors.  You further informed me that you do not view the documents in BP's outside contractors' possession as being in BP's possession, custody, or control.  BP reserves its right to pursue this issue further.

- You informed me that no documents were withheld on the basis that Anadarko's documents were somehow irrelevant because it was not the operator of the Macondo well.

- You told me that Anadarko believes PTO #11 permits discovery on the cause of the incident, the volume of the spill, where the discharge went, and post-incident relief efforts.  You told me that documents whose only relevance is exclusively to estimates of injury or damage are outside the scope of PTO #11 and have been withheld by Anadarko.  BP reserves its right to pursue these documents at an appropriate time.

- You informed me that Anadarko was not withholding documents based on its various vagueness and ambiguity objections.

- With respect to Anadarko's relevance and overbreadth objections to Request for Production Nos. 30, 68, 69, 75, 76, 77, 82, 83, 86, 88, 96, and 97, you told me that, if a document had any relevance to the issues described in PTO #11, they were produced, notwithstanding Anadarko's objections.

- With respect to Anadarko's objections to the terms "Anadarko Defendants," "affiliate of the Anadarko Defendants," and "your," you told me that Anadarko had searched for and produced documents in the possession, custody, or control of APC and AE&P, but that no

# KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 3

documents were searched for or produced from other Anadarko-related entities.  At a minimum, BP believes that the records of Kerr-McGee Oil and Gas Corp.—as we understand it, an Anadarko subsidiary—should be searched and produced.  BP reserves its right to pursue additional documents.

- With respect to Anadarko's objections to premature expert discovery, you assured me that, while Anadarko was not yet producing its experts' files or draft reports, it has produced other responsive documents even if they were given to an expert for review.  The expert files and draft reports were the only documents withheld based on Anadarko's objection to premature expert discovery.  BP reserves its right to seek these documents at an appropriate time.

- With respect to Anadarko's objection to producing documents in the public domain, you assured me that Anadarko was producing documents in its possession, custody, or control, even if those documents also happened to be available in the public domain.  Your objection was simply meant to indicate that Anadarko did not search the public domain for responsive documents.

- You stated that Anadarko has produced documents in the MDL that it produced previously to Congress, Congressman Waxman, and to the various agencies conducting investigations.  You stated that no documents were produced by Anadarko to the National Academy of Engineering or to the Presidential Commission.  You were going to check whether (1) Anadarko produced any documents to the Chemical Safety Board, and (2) if so, whether those documents were produced in the MDL.  Please let me know as soon as you have those answers.

- With respect to Request for Production Nos. 57 and 58, you said that you would investigate what documents Anadarko was willing to produce and would get back to us.  Please let me know as soon as possible.

- With respect to Request for Production Nos. 62, 64, 82, 83 and 90, you said that Anadarko would supplement its response to indicate either (1) that Anadarko will produce responsive documents, or (2) that it has no responsive documents.

- You stated that you believe Request for Production No. 67, which seeks documents related to a potential exposure or reserve of Anadarko arising from the incident, is outside the scope of PTO #11.  BP reserves its right to pursue these documents at an appropriate time.

# KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 4

- With respect to Request for Production Nos. 73 and 74, you said that you would look into whether Anadarko is willing to supplement its response to offer production of the requested documents.  Please let me know as soon as possible whether Anadarko will supplement these responses.

- With respect to Request for Production No. 91, which seeks documents considered by expert witnesses, you said that you believe these documents need not be produced at this time.  BP reserves its right to obtain these documents at an appropriate time.

If my notes of our conversation on August 9 are incorrect in any way, please let me know immediately.

Since our discussion on August 9, you agreed to supplement Anadarko's responses to BP's requests for production of documents related to other wells in the Gulf of Mexico (Nos. 34–56 and 63) consistent with my August 2 letter to Carl Solomont and Tony Fitch.  Please let me know when those supplements will be ready, and also when you intend to produce responsive documents.

## II.        Anadarko's Responses to BP's Interrogatories

On August 4, Anadarko responded to BP's First Set of Interrogatories.  I write here to address three issues with respect to those responses.

First, in response to Interrogatory No. 1, Anadarko directed BP "to the non-privileged or otherwise non-protected responsive documents, if any, that will be produced in response to this request."  I want to confirm that Anadarko intends to search for and produce non-privileged documents related to meetings and decisions of Anadarko's board(s) of directors (including meeting minutes, corporate minutes, and records of decisions).  I also want to confirm that the agreements we reached with respect to Anadarko's general objections to BP's requests for production will apply equally to this offer of production.

Second, in response to Interrogatory No. 36, Anadarko stated that responsive documents have already been produced, and that "It would take the same amount of time, effort, burden and expense for [Anadarko] as it would for the BP Parties to review and identify all of these communications from the documents already produced."  I take it from this response that Anadarko no longer seeks to have BP supplement its interrogatory responses to identify documents produced in response thereto.

# KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 5


Third, on August 4, Anadarko did not provide any substantive responses to the interrogatories dealing with other wells in the Gulf of Mexico.  Since that time, Anadarko has agreed to provide substantive responses to those interrogatories (Nos. 2–33 and 37–39), as described in my August 2 letter to Carl Solomont and Tony Fitch.  Please let me know when we can expect supplemental responses to the non-Macondo interrogatories.

**III.      Anadarko's Privilege Logs**

We have reviewed the privilege logs Anadarko has submitted.  These logs lack the detail necessary to evaluate some of your claims of privilege and protection.  For instance, several documents are withheld under the work product protection, and the only description is a subject matter such as "Communication re well update," "Communication re Incident update," or "Communication re Incident costs analysis."  We ask that you provide a more detailed description of why you believe that the documents listed below are privileged and/or protected so that BP can evaluate your claims.

ANA-MDLP-000000001 - ANA-MDLP-000000004;
ANA-MDLP-000000007 - ANA-MDLP-000000008;
ANA-MDLP-000000143 - ANA-MDLP-000000144;
ANA-MDLP-000000145;
ANA-MDLP-000012371 - ANA-MDLP-000012373;
ANA-MDLP-000012491 - ANA-MDLP-000012492;
ANA-MDLP-000012615 - ANA-MDLP-000012616;
ANA-MDLP-000012617;
ANA-MDLP-000012638;
ANA-MDLP-000012639;
ANA-MDLP-000013082 - ANA-MDLP-000013089;
ANA-MDLP-000013339 - ANA-MDLP-000013343;
ANA-MDLP-000013478 - ANA-MDLP-000013479;
ANA-MDLP-000013509;
ANA-MDLP-000013593 - ANA-MDLP-000013595;
ANA-MDLP-000013596 - ANA-MDLP-000013598;
ANA-MDLP-000013661;
ANA-MDLP-000013688 - ANA-MDLP-000013689;
ANA-MDLP-000013690;
ANA-MDLP-000013691;
ANA-MDLP-000013692;
ANA-MDLP-000013693;
ANA-MDLP-000013694;

KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 6

ANA-MDLP-000013695;
ANA-MDLP-000013696;
ANA-MDLP-000013697;
ANA-MDLP-000013700;
ANA-MDLP-000013781;
ANA-MDLP-000013782 - ANA-MDLP-000013783;
ANA-MDLP-000013982 - ANA-MDLP-000013983;
ANA-MDLP-000014205 - ANA-MDLP-000014210;
ANA-MDLP-000014291 - ANA-MDLP-000014293;
ANA-MDLP-000014442;
ANA-MDLP-000014451;
ANA-MDLP-000014460;
ANA-MDLP-000014469 - ANA-MDLP-000014471;
ANA-MDLP-000014472 - ANA-MDLP-000014473;
ANA-MDLP-000014474;
ANA-MDLP-000014719 - ANA-MDLP-000014724;
ANA-MDLP-000014908 - ANA-MDLP-000014909;
ANA-MDLP-000014993 - ANA-MDLP-000014994;
ANA-MDLP-000015002 - ANA-MDLP-000015009;
ANA-MDLP-000015148 - ANA-MDLP-000015151;
ANA-MDLP-000015155 - ANA-MDLP-000015156;
ANA-MDLP-000015178;
ANA-MDLP-00020945;
ANA-MDLP-00023528;
ANA-MDLP-00024940- ANA-MDLP-00024943;

**IV.      Dan Saunders's Letter of August 15**

We have reviewed Dan Saunders's August 15, 2011 letter.  First, we do not agree that Anadarko can rely on custodian self-identification for documents located on personal computers but outside of the My Documents folder.  Second, we do not agree with Anadarko's election not to produce custodian metadata.  Third, we cannot understand how Anadarko's CEO was not copied on a single non-privileged e-mail dated after the incident referencing "Macondo," "Deepwater Horizon," "DWH," *etc.*, and did not have any such documents on his computer.  This reinforces our disagreement with Anadarko's assertion that its search terms are "extremely broad."  If they are "extremely broad," why did they not catch a single non-privileged e-mail or document that the CEO wrote or received about the incident?

# KIRKLAND & ELLIS LLP

Tiffany R. Hedgpeth
August 16, 2011
Page 7

Also, we still are not clear on when particular search terms were run, and in response to what requests. On our call, there was some discussion of the possibility of certain search terms being run at certain times in response to certain requests, and other certain terms being run for other requests. Could you please clarify?

Dan asked for more information about the search terms BP requested that Anadarko run in my August 12 letter. One entry, "'Mississippi Canyon' NEAR2 252" is an additional term that BP has used, similar to your "Macondo" and "Deepwater Horizon" terms, to capture Macondo-related documents. The other search strings included in my letter largely represent searches that BP has been asked to run that did not include restrictions based on terms such as "Macondo," "Deepwater Horizon," "DWH," etc. These search terms target issues that have been identified by the various parties as important to the MDL. They also represent issues for which there may be important documents that, while related to Macondo, do not contain one of the "Macondo" terms for which you've already searched. We request that Anadarko, as BP has done for Anadarko's search terms, provide a document count for the search strings (excluding already-produced documents), so that we can evaluate whether the strings appear to be generating a large number of false positives or creating an undue burden.

We await your responses on Board documents and instant messages, and will assume that, if disputes remain with respect to these subjects, BP will be given an appropriate amount of time to file a motion to compel. Please let us know if that is not the case.

Given the approaching deadline for motions to compel, please let me know when you are available this week to discuss the issues raised above. Let me know if you have any questions, and I look forward to working with you to resolve these issues.

Sincerely,

/s/ Darin T. Beffa

Darin T. Beffa

# EXHIBIT C



37333520

Apr 29 2011
11:06PM

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010  *  *  *  *  Applies to: *All Cases*  *  * | **MDL No. 2179**  **SECTION: J**  **JUDGE BARBIER**  **MAGISTRATE JUDGE SHUSHAN** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION TO THE ANADARKO DEFENDANTS

*IN ACCORDANCE WITH THE ARBITRATION PROVISION IN THE MACONDO PROSPECT OFFSHORE DEEPWATER OPERATING AGREEMENT, BP RECENTLY FILED A MOTION TO STAY ANADARKO'S AND MOEX OFFSHORE 2007'S ATTEMPTS TO LITIGATE CLAIMS AGAINST BP IN COURT.  THE COURT HAS NOT YET RULED ON BP'S MOTION.  BUT OUT OF AN ABUNDANCE OF CAUTION AND TO COMPLY WITH THE COURT'S DISCOVERY SCHEDULING ORDER, BP IS SERVING THE FOLLOWING DISCOVERY IN CASE THE COURT DENIES BP'S MOTION TO STAY.  BY SERVING THESE DISCOVERY REQUESTS, BP DOES NOT—AND DOES NOT INTEND TO—WAIVE ANY RIGHTS UNDER THE MACONDO PROSPECT DEEPWATER OPERATING AGREEMENT, INCLUDING THE ARBITRATION RIGHTS UNDER THE AGREEMENT.  BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO THIS DISCOVERY UNLESS OR UNTIL THE COURT DENIES BP'S MOTION TO STAY LITIGATION.*

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following requests for production to Anadarko Petroleum Corporation and Anadarko E&P Company LP (the "Anadarko Defendants") to be responded to no later than May 31, 2011.  The BP Parties request that all documents and electronically stored information responsive to the following Request for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, by May 31, 2011.

## <u>REQUESTS FOR PRODUCTION</u>

### General Requests

1.      All documents or communications relating to or referring to the design and use of spacers at the Macondo Well.

2.      All documents or communications relating to or referring to temporary abandonment procedures at the Macondo Well.

3.      All documents or communications relating to or referring to negative pressure test procedures at the Macondo Well.

4.      All documents or communications relating to or referring to positive pressure test procedures at the Macondo Well.

5.      All documents or communications relating to or referring to cementing procedures at the Macondo Well.

6.      All documents or communications relating to or referring to the use of centralizers at the Macondo Well.

7.      All documents or communications relating to or referring to the tubular or casing design used at the Macondo Well.

8.      All documents or communications relating to or referring to the use of a long string production casing at the Macondo Well.

9.      All documents or communications relating to or referring to the use or potential use of a liner with tie back casing string at the Macondo Well.

10.      All documents or communications relating to or referring to the lock down sleeve and lock down sleeve procedure for use at the Macondo Well.

11.      All documents or communications relating to or referring to gas flow potential at the Macondo Well.

12.     All documents or communications relating to or referring to drilling fluids used at the Macondo Well.

13.     All documents or communications relating to or referring to well control events at the Macondo Well.

14.     All documents or communications relating to or referring to fluid loss at the Macondo Well.

15.     All documents or communications relating to or referring to the decision to call terminal depth at the Macondo Well.

16.     All documents or communications relating to or referring to converting the float collar at the Macondo Well.

17.     All documents or communications relating to or referring to the use of foamed cement slurry at the Macondo Well.

18.     All documents or communications relating to or referring to performing a bottoms up circulation at the Macondo Well.

19.     All documents or communications relating to or referring to the drilling plan for the Macondo Well.

20.     All documents or communications relating to or referring to any applications for or permitting of the Macondo Well.

21.     All documents or communications relating to or referring to analysis of the Macondo Well and BP's operations on the Macondo Well.

22.     All documents or communications relating to or referring to any non-BP entity's operations on the Macondo Well, including the Transocean defendants, any other defendants in this litigation, or any other service provider involved with the operations of the well.

23.     All other documents or communications that mention or refer to the MC252 or the Macondo Well, including but not limited to any well activity reports, drilling activity reports, weekly drilling reports, weekly summary of operations, executive summaries, exploration weekly reports, or exploration activity reports.

### Communications with BP Pre-Incident

24.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any data (including real time, and non-real time, data), daily reports, and other documents or communications generated during the course of drilling the Macondo Well.

25.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through INSITEAnywhere.

26.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through the Well Space system.

27.     All documents or communications relating to or referring to discussions regarding the Macondo Well.

28.     All documents or communications relating to or referring to the Macondo Prospect Well Participation Agreement, Deepwater Gulf of Mexico, between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Kerr-McGee Oil & Gas Corporation; the Macondo Prospect Offshore Deepwater Operating Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC ("JOA"); the Lease Exchange Agreement between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Anadarko E&P Company LP; and the Lease Exchange Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC.

29.     All drafts of the JOA.

30.     All documents relating to or referring to your February 18, 2010 authorization for use of the *Deepwater Horizon* rig.

31.     All documents or communications relating to or referring to the authorizations for expenditures for the Macondo Well.

32.     All documents or communications by, to or from COPAS related to the terms of the JOA.

33.     All documents or communications referring to, relating to, or analyzing COPAS guidelines or other model contract form interpretations.

## GoM Engineering Practices

34.     All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

35.     All documents relating to or referring to the design and use of spacers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

36.     All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

37.     All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

38.     All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

39.     All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

40.     All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

41.     All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

42.     All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

43.     All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

44.     All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

45.     All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

46.     All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

47.     All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

48.     All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

49.     All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

50.     All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

51.     All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

52.     All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

53.     All drilling plans for each deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or an affiliate of the Anadarko Defendants.

54.     All documents or communications relating to any applications for or permitting of any deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or any affiliate of the Anadarko Defendants.

55.     All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

56.     All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

### Financial Information And Analysis of Potential Claims

57.     All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

58.     All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising from their investment in the MC252 lease.

59.     All documents relating to or referring to any statement issued by Anadarko Petroleum Corporation regarding the MC252 well, including all submissions to the Securities Exchange Commission ("SEC"), such as 10-Qs, 10-Ks or other documents submitted to the SEC.

60.     All documents or communications, including internal, external or drafts, related to the *Deepwater Horizon* incident.

61.     All documents or communications relating to or referring to JIB invoices, including all drafts and internal correspondence related to the JIB invoices.

62.     All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

63.     All documents or communications relating to or referring to certifications of oil spill responsibility submitted to the MMS or any Governmental agency related to the Macondo Well or any other well in the Gulf of Mexico.

64.     All documents provided to or received from any insurer, including the insurers for the Anadarko Defendants.

65.     All documents related to or referring to the *Deepwater Horizon* incident provided to or received from any potential purchaser of the Anadarko Defendants' stock or properties.

66.     All documents related to or referring to the analysis or decision by the Anadarko Defendants to file claims against BP in the Multidistrict Litigation instead of pursuing such claims under the Dispute Resolution Procedures of the JOA.

67.     All documents containing or referring to any calculation or analysis of potential exposure or reserve of the Anadarko Defendants arising from or related to the *Deepwater Horizon* incident, including those that may have been shared or forwarded to any investor, external auditor, or Board of Directors member.

**Documents Supporting Public Statements**

68.     All documents supporting any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

69.     All documents questioning or otherwise commenting on any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

70.     All documents reviewed or relied upon in preparing James T. Hackett's July 22, 2010 statement to Congress or related testimony.

71.    All documents relating to or referring to any statement or testimony by any representative of the Anadarko Defendants provided to Congress.

72.    All documents provided by the Anadarko Defendants to UBS Warburg or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

73.    All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

74.    All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

75.    All documents related to or constituting communications with any member of the media or press regarding or referring to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

76.    All documents or communications related to press interviews or statements, including any with the Financial Times, regarding the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same.

77.    All marketing or public relations materials relating to or referring to the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same, including

internal and external drafts and correspondence relating to or referring to marketing or public relations materials.

## Investigation Requests

78.     All documents relating to the *Deepwater Horizon* incident.

79.     All documents relating to the flow rate of oil from MC252 after the *Deepwater Horizon* incident on April 20, 2010.

80.     All documents relating to efforts to contain or clean up the oil spill after the *Deepwater Horizon* incident on April 20, 2010.

81.     All documents relating to any interviews of or statements made by any person who was on the *Deepwater Horizon* or *Damon Bankston* on April 20, 2010.

82.     All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

83.     All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts of reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

84.     All documents relating to or referring to BP's internal investigation report titled *Deepwater Horizon* Accident Investigation Report, dated September 8, 2010.

85.     All documents relating to or referring to any investigation, presentation or analyses conducted by or on behalf of the Transocean Defendants.

86.    All documents relating to or referring to any investigation, presentation or analysis conducted by or on behalf of the Halliburton Defendants.

## Requests re Correspondence and Settlement

87.    All documents sent to or received from any person or entity related to settlement or compromise, or potential settlement or compromise, of any claims arising from or relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

88.    All documents that the Anadarko Defendants have sent to or received from any person or entity relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to all documents that the Anadarko Defendants have sent to or received from any investigative panel, government agency, member of the press or media, or any other defendant in this litigation.

## Requests Related To The Anadarko Defendants' Claims and Evidence

89.    All documents mentioned or referenced in any pleading, motion or brief filed by the Anadarko Defendants in this action.

90.    All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

91.    All documents that have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action.

92.    All documents that you contend support the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

93.    All documents that question or discuss the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

94.     All documents that you contend support the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

95.     All documents that question or otherwise discuss the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

96.     All other communications relating to or referring to MC252 or the Macondo Well.

97.     All other documents relating to or referring to MC252 or the Macondo Well.

## DEFINITIONS

1.     "You," "your," and "yours" shall mean the Anadarko Defendants, including without limitation all of the Anadarko Defendants' present or former agents or representatives, or anyone acting or purporting to act for or on the Anadarko Defendants' behalf for any purpose whatsoever.

2.     "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3.     "COPAS" shall mean the Council of Petroleum Accountants Societies.

4.     "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and ESI containing, summarizing, or memorializing any communication.

5.     "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) including electronically stored information ("ESI"), and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing

or record of any type or description, including but not limited to, all writings; records; contracts; agreements; communications (intra- or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

6.     "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

7.     "Including" or "includes" means "including but not limited to" or "including without limitation."

8.      "JOA" shall mean the Macondo Prospect Offshore Deepwater Operating Agreement.

9.      "Relating to" or "related to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

10.     "MC252 well" means the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11.     "*Deepwater Horizon* Incident"  and "Incident" means the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

12.     "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

13.     "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

14.     "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

15.     "Lost circulation," whether or not capitalized, means a reduced amount or total absence of drilling fluids returning to the drilling rig after being pumped down a well.

## INSTRUCTIONS

1.      All documents are to be produced in accord with Pre-Trial Order No. 16.

2.      Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of your affiliates, partners, employees, agents,

attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected with you or subject to your control.

3.      If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

4.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

5.      Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

6.      If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.  Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

7.      If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

8.      Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

9.      Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

Dated:  April 29, 2011               Respectfully submitted,

By:   /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for the BP Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by

electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order

No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on

this 29th day of April, 2011.


_____/s/ Martin R. Boles_____

# EXHIBIT D



38488194

Jul 1 2011 4:51PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig | * | MDL No. 2179 |
| | "*Deepwater Horizon*" in the Gulf of | * | |
| | Mexico, on April 20, 2010 | * | SECTION: J |
| | | * | |
| Applies to: *All Cases*. | | * | JUDGE BARBIER |
| | | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

### OBJECTIONS AND RESPONSES OF DEFENDANT ANADARKO PETROLEUM CORPORATION AND ANADARKO E & P COMPANY LP TO THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION

#### GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, object to the BP Parties' First Requests for Production (collectively "Requests"), served on Responding Party on April 29, 2011, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court.  Responding Party will respond to BP's Requests in accordance with such Rules and Orders.

2.      Pursuant to the stipulation set forth in the BP Parties' Requests, Responding Party was under no obligation to respond to these Requests unless and until the Court denied the BP Parties' Motion to Stay.   Nonetheless, Responding Party hereby provides the following objections and responses on July 1, 2011.

3.      Responding Party objects to the Requests to the extent they seek documents or information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery

"will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

4.      Responding Party objects to the Requests to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Requests.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

5.      Responding Party objects to the Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

6.      Responding Party objects to the Requests to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restriction imposed in connection with proceedings before the MBI, and the protections of the Health Insurance

2

Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

7.     Responding Party objects to the Requests to the extent they purport to require Responding Party to set forth or state legal conclusions or its contentions or positions applicable to specific legal or factual issues.

8.     Responding Party objects to the Requests to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

9.     Responding Party objects to the Requests to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

10.     Responding Party objects to the Requests to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

11.     Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

12.     Responding Party objects to the Requests to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.  Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to be produced in a different format.

3

13.     Responding Party objects to the definition of "You," "Your," and "Yours" as overly broad and as improperly seeking party discovery from non-party entities.  Responding Party will respond to the Requests only on behalf of Responding Party.

14.     The documents and information provided in Responding Party's responses to the Requests reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

15.     In responding to the Requests, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Request on any ground including, but not limited to, the ground that the document, information or Request is irrelevant and immaterial to the issues in this action.  Nothing in Responding Party's responses to any Request should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Request.

16.     Responding Party reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

17.     Except as noted hereinafter, Responding Party objects to the Requests as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.  Responding Party objects to the Requests to the extent they purport to require Responding Party to re-produce the document

4

productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

18.     Responding Party objects to the Requests as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.   Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

19.     Responding Party objects to the Requests to the extent they seek information and/or documents relating to Insurance Policies other than Insurance Policies issued to Responding Party.   Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information and/or documents should be obtained from other defendant parties.

20.     Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

21.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or request is made without waiver of, and subject to, these General Objections.

## SPECIFIC OBJECTIONS AND RESPONSES

### General Requests

### REQUEST FOR PRODUCTION NO. 1:

All documents or communications relating to or referring to the design and use of spacers at the Macondo Well.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "spacers" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### REQUEST FOR PRODUCTION NO. 2:

All documents or communications relating to or referring to temporary abandonment procedures

6

at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 3:**

All documents or communications relating to or referring to negative pressure test procedures at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

7

applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined phrase "negative pressure test procedures" is vague and ambiguous. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 4:

All documents or communications relating to or referring to positive pressure test procedures at the Macondo Well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined phrase

8

"positive pressure test procedures" is vague and ambiguous.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 5:**

All documents or communications relating to or referring to cementing procedures at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "cementing procedures" is vague and ambiguous.

A/74264880.1

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 6:**

All documents or communications relating to or referring to the use of centralizers at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 7:**

All documents or communications relating to or referring to the tubular or casing design used at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 8:**

All documents or communications relating to or referring to the use of a long string production casing at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Responding Party incorporates its General Objections.  Responding Party further objects

11

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.   Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.   Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 9:**

All documents or communications relating to or referring to the use or potential use of a liner with tie back casing string at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the

A/74264880.1

current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request because the undefined phrase "potential use" is vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 10:**

All documents or communications relating to or referring to the lock down sleeve and lock down sleeve procedure for use at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request because the undefined phrase "lock down sleeve procedure" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the

13

Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 11:**

All documents or communications relating to or referring to gas flow potential at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined phrase "gas flow potential" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial

Order No. 11.

**REQUEST FOR PRODUCTION NO. 12:**

All documents or communications relating to or referring to drilling fluids used at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 13:**

All documents or communications relating to or referring to well control events at the Macondo Well.

15

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 14:**

All documents or communication relating to or referring to fluid loss at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result,

16

A/74264880.1

information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 15:**

All documents or communications relating to or referring to the decision to call terminal depth at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

17

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 16:**

All documents or communication relating to or referring to converting the float collar at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

18

**REQUEST FOR PRODUCTION NO. 17:**

All documents or communications relating to or referring to the use of foamed cement slurry at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 18:**

All documents or communications relating to or referring to performing a bottoms up circulation at the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Responding Party incorporates its General Objections.  Responding Party further objects

19

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 19:**

All documents or communications relating to or referring to the drilling plan for the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the

20

current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "drilling plan" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 20:**

All documents or communications relating to or referring to any applications for or permitting of the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

21

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 21:**

All documents or communications relating to or referring to analysis of the Macondo Well and BP's operations on the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined phrases "analysis of the Macondo Well" and "BP's operations" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial

22

Order No. 11.

**REQUEST FOR PRODUCTION NO. 22:**

All documents or communications relating to or referring to any non-BP entity's operations on the Macondo Well, including the Transocean defendants, any other defendants in this litigation, or any other service provider involved with the operations of the well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "involved with," "service provider," "operations of the well," and "operations on the Macondo Well" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74264880.1

**REQUEST FOR PRODUCTION NO. 23:**

All other documents or communications that mention or refer to the MC252 or the Macondo Well, including but not limited to any well activity reports, drilling activity reports, weekly drilling reports, weekly summary of operations, executive summaries, exploration weekly reports, or exploration activity reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "other documents or communications" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

24

**Communications with BP Pre-Incident**

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to identify who received, revised, analyzed, or monitored any data (including real time, and non-real time, data), daily reports, and other documents communications generated during the course of drilling the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "other documents," "revised," "analyzed," and "monitored" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

25

A/74264880.1

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through INSITEAnywhere.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "any material," "reviewed," "analyzed," and "monitored" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

26

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through the Well Space system.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "any material," "reviewed," "analyzed," and "monitored" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74264880.1

**REQUEST FOR PRODUCTION NO. 27:**

All documents or communications relating to or referring to discussions regarding the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "discussions" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 28:**

All documents or communications relating to or referring to the Macondo Prospect Well Participation Agreement, Deepwater Gulf of Mexico, between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Kerr-McGee Oil & Gas Corporation; the Macondo

28

Prospect Offshore Deepwater Operating Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC ("JOA"); the Lease Exchange Agreement between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Anadarko E&P Company LP; and the Lease Exchange Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 29:**

All drafts of the JOA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

29

applicable privilege or protection.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 30:**

All documents relating to or referring to your February 18, 2010 authorization for use of the *Deepwater Horizon* rig.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party objects to the defined term "your" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been

30

produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 31:

All documents or communication relating to or referring to the authorizations for expenditures for the Macondo Well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "authorizations" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 32:

All documents or communications by, to or from COPAS related to the terms of the JOA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-

A/74264880.1

client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 33:

All documents or communications referring to, relating to, or analyzing COPAS guidelines or other model contract form interpretations.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding

Party also objects to this Request because the undefined phrase "other model contract form interpretations," is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### GoM Engineering Practices

### REQUEST FOR PRODUCTION NO. 34:

All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order

33

No. 11.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to or referring to the design and use of spacers in the deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "spacers," "deepwater wells," "internal or external standards,"

"procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### REQUEST FOR PRODUCTION NO. 36:

All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request

35

because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 37:**

All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its

36

operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 38:

All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 38:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the

37

Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-

38

operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "cementing procedures," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 40:**

All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the

*Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 41:**

All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

40

evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### REQUEST FOR PRODUCTION NO. 42:

All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad,

41

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

42

applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 44:

All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-

43

client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Party incorporates its General Objections.  Responding Party further objects

44

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "gas flow potential," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 46:

All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

A/74264880.1

## RESPONSE TO REQUEST FOR PRODUCTION NO. 46:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 47:

All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external

46

standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "standard practices," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best

practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of

Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "fluid loss events," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

49

**REQUEST FOR PRODUCTION NO. 50:**

All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal and external standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "informational communications," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the

50

discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any,

that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-

privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 53:**

All drilling plans for each deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or an affiliate of the Anadarko Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the undefined terms "Anadarko Defendants" and "affiliate of the Anadarko Defendants" as overly broad, vague, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "deepwater well" and

53

"drilling plans" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 54:

All documents or communications relating to any applications for or permitting of any deepwater well in the Gulf of Mexico spudded in the last give years, owned, in whole or in part, by the Anadarko Defendants or any affiliate of the Anadarko Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 54:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the undefined terms "Anadarko Defendants" and "affiliate of the Anadarko Defendants" as overly broad, vague, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes

54

beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "deepwater well" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 55:**

All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined phrase "safety procedures applicable to any deepwater well" is vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the

Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 56:**

All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in

Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "well control events," "policies" and "procedures" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### Financial Information and Analysis of Potential Claims

**REQUEST FOR PRODUCTION NO. 57:**

All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, vague, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "potential financial benefits" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 58:**

All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising

from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party further objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "potential costs" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 59:**

All documents relating to or referring to any statement issued by Anadarko Petroleum Corporation regarding the MC252 well, including all submissions to the Securities Exchange Commission ("SEC"), such as 10-Qs, 10-Ks  or other documents submitted to the SEC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

A/74264880.1

applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "other documents" and "statement," are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 60:**

All documents or communications, including internal, external, or drafts, related to the *Deepwater Horizon* incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request because it is overly broad and unduly burdensome.  Responding Party also objects to this Request to the extent it seeks information and/or documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

59

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 61:**

All documents or communications relating to or referring to JIB invoices, including all drafts and internal correspondence related to JIB invoices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

60

**REQUEST FOR PRODUCTION NO. 62:**

All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party.  Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "claim" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 63:**

All documents or communication relating to or referring to certifications of oil spill responsibility submitted to the MMS or any Governmental agency related to the Macondo Well or any other well in the Gulf of Mexico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "Governmental agency" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 64:

All documents provided to or received from any insurer including the insurers for the Anadarko Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 64:

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as a whole and to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party. Responding Party may have rights under Insurance Policies

62

issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 65:**

All documents related to or referring to the *Deepwater Horizon* incident provided to or received from any potential purchaser of the Anadarko Defendants' stock or properties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because it is overly broad, ambiguous and not calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined term "potential purchaser" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 66:**

All documents related to or referring to the analyses or decision by the Anadarko Defendants to file claims against BP in the Multidistrict Litigation instead of pursuing such claims under the Dispute Resolution Procedure of the JOA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined term "analyses" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 67:**

All documents containing or referring to any calculation or analysis of potential exposure or reserve of the Anadarko Defendants arising from or related to the *Deepwater Horizon* incident, including those that may have been shared or forwarded to any investor, external auditor, or Board of Directors member.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as a whole and to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined terms "analysis" and "potential exposure" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

### Documents Supporting Public Statements

**REQUEST FOR PRODUCTION NO. 68:**

All documents supporting any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

65

applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks documents available in the public domain. Responding Party also objects to this Request because the undefined term "related testimony" is vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 69:**

All documents questioning or otherwise commenting on any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks documents

available in the public domain.  Responding Party also objects to this Request because the undefined terms "otherwise commenting," and "related testimony" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 70:

All documents reviewed or relied upon in preparing James T. Hackett's July 22, 2010 statement to Congress or related testimony.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 70:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined term "related testimony" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-

A/74264880.1

privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 71:**

All documents relating to or referring to any statement or testimony by any representative of the Anadarko Defendants provided to Congress.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined terms "statement" and "representative" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

68

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 72:**

All documents provided by the Anadarko Defendants to UBS Warburg or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

69

**REQUEST FOR PRODUCTION NO. 73:**

All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined terms "representative" and "financial analyst" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 74:**

All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-

70

client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.   Responding Party also objects to this Request because the undefined term "any other financial analyst" is vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 75:

All documents related to or constituting communications with any member of the media or press regarding or referring to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 75:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board

71

A/74264880.1

Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 76:**

All documents or communications related to press interviews or statements, including any with the Financial Times, regarding the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks documents available in the public domain. Responding Party also objects to this Request because the undefined term "investigation" is vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected press interviews or statements made by Anadarko Petroleum Corporation related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 77:**

All marketing or public relations materials relating to or referring to the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same, including internal and external drafts and correspondence relating to or referring to marketing or public relations materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to the Request because the undefined terms "marketing or public relations materials" and "investigation" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74264880.1

**Investigation Requests**

**REQUEST FOR PRODUCTION NO. 78:**

All documents relating to the *Deepwater Horizon* incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the extent the documents requested are already in BP's possession as the operator of the Macondo Well.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because it is overly broad and unduly burdensome.  Responding Party objects to this Request to the extent it is duplicative of Request for Production No. 60.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 79:**

All documents relating to the flow rate of oil from MC252 after the *Deepwater Horizon* incident on April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 80:**

All documents relating to efforts to contain or clean up the oil spill after the *Deepwater Horizon* incident on April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial

75

Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 81:**

All documents relating to any interviews of or statements made by any person who was on the *Deepwater Horizon* or *Damon Bankston* on April 20, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined term "statements" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

76

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as a part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined terms "statements" and "investigation" are vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 83:**

All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts or reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request because the undefined term "investigation" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 84:**

All documents relating to or referring to BP's internal investigation report titled *Deepwater Horizon* Accident Investigation Report, dated September 8, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 85:**

All documents relating to or referring to any investigation, presentation or analyses conducted by or on behalf of the Transocean Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined terms "investigation" and "analyses" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 86:**

All documents relating to or referring to any investigation, presentation or analyses conducted by or on behalf of the Halliburton Defendants.

A/74264880.1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined terms "investigation" and "analyses" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**Requests re Correspondence and Settlement**

**REQUEST FOR PRODUCTION NO. 87:**

All documents sent to or received from any person or entity related to settlement or compromise, or potential settlement or compromise, of any claims arising from or relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

80

applicable privilege or protection.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "claims" and "potential settlement or compromise" are vague and ambiguous.

## REQUEST FOR PRODUCTION NO. 88:

All documents that the Anadarko Defendants have sent to or received from any person or entity relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to all documents that the Anadarko Defendants have sent to or received from any investigative panel, government agency, member of the press or media, or any other defendant in this litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 88:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks documents available in the public domain.  Responding Party also objects to this Request because the undefined terms "investigative panel" and "government agency" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

81

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**Requests Related To The Anadarko Defendants' Claims and Evidence**

## REQUEST FOR PRODUCTION NO. 89:

All documents mentioned or referenced in any pleading, motion or brief filed by the Anadarko Defendants in this action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 89:

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks documents available in the public domain. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74264880.1

**REQUEST FOR PRODUCTION NO. 90:**

All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to the defined term "you" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 91:**

All documents that have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to the defined term "your" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes

beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 92:**

All documents that you contend support the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party objects to the defined term "you" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 93:**

All documents that question or discuss the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 93:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 94:

All documents that you contend support the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 94:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party objects to the defined term "you" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent

85

it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents, if any, that have not already been produced in or otherwise made available during the course of this litigation, the Marine Board Investigation or the other investigations regarding the Incident, and/or otherwise available in the public domain, and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 95:**

All documents that question or otherwise discuss the proposition that the Anadarko Defendants are not liable under the JOA for JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 96:**

All other communications relating to or referring to MC252 or the Macondo Well.

86

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party further objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 97:**

All other documents relating to or referring to MC252 or the Macondo Well.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request because it is overly broad and unduly burdensome.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order

87

No. 11.   Responding Party also objects to this Request because the undefined term "other documents" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

Dated:  July 1, 2011                                    Respectfully submitted,


                                        ____/s/ Ky E. Kirby_____

                                        Ky E. Kirby
                                        Ky.Kirby@bingham.com
                                        Warren Anthony Fitch
                                        Tony.Fitch@bingham.com
                                        Michael B. Wigmore
                                        Michael.Wigmore@bingham.com
                                        BINGHAM MCCUTCHEN LLP
                                        2020 K Street, NW
                                        Washington, DC 20006-1806
                                        Telephone (202) 373-6000
                                        Facsimile (202) 373-6001

                                        James J. Dragna
                                        Jim.Dragna@bingham.com
                                        BINGHAM MCCUTCHEN LLP
                                        355 South Grand Avenue
                                        Suite 4400
                                        Los Angeles, California 90071-3106
                                        Telephone (213) 680-6436
                                        Facsimile (213) 680-8636

                                        Deborah D. Kuchler (La. Bar No. 17013)
                                        Janika Polk (La. Bar No. 27608)
                                        Robert Guidry (La. Bar No. 28064)
                                        KUCHLER POLK SCHELL
                                        WEINER & RICHESON, LLC
                                        1615 Poydras Street, Suite 1300

New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objections and Responses of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to BP's First Set of Requests for Production dated April 29, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 1st day of July, 2011.


_____ /s/  Ky E. Kirby_____

90

# EXHIBIT E



Jul 2 2011 4:03PM

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig    *    MDL No. 2179
      "Deepwater Horizon" in the Gulf    *
      of Mexico, on April 20, 2010    *    SECTION: J
                               *
      Applies to: *All Cases*    *    JUDGE BARBIER
                               *    MAGISTRATE JUDGE SHUSHAN

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### THE BP PARTIES' CORRECTED[1] FIRST SET OF INTERROGATORIES TO ANADARKO

***IN ACCORDANCE WITH THE ARBITRATION PROVISION IN THE MACONDO PROSPECT OFFSHORE DEEPWATER OPERATING AGREEMENT, BP IS PURSUING A MOTION TO STAY ANADARKO'S CLAIMS AGAINST BP. THE COURT HAS NOT YET RULED ON BP'S MOTION. THE MAGISTRATE JUDGE, HOWEVER, HAS RULED THAT DISCOVERY CAN PROCEED BETWEEN BP AND ANADARKO SO LONG AS IT IS RELEVANT TO THE PARTIES' MDL DEFENSES. IN RELIANCE ON THAT ORDER, AND TO COMPLY WITH THE COURT'S SCHEDULING ORDERS, BP SERVES THE FOLLOWING INTERROGATORIES. BY SERVING THESE INTERROGATORIES, BP DOES NOT—AND DOES NOT INTEND TO—WAIVE ANY RIGHTS UNDER THE OPERATING AGREEMENT, INCLUDING THE ARBITRATION RIGHTS UNDER THAT AGREEMENT, AND BP EXPLICITLY RESERVES ALL SUCH RIGHTS. BP STIPULATES THAT ANADARKO SHALL HAVE NO OBLIGATION TO RESPOND TO ANY DISCOVERY REQUESTS BY BP IN THE EVENT THAT, AND AT SUCH TIME AS, THE COURT RULES THAT SUCH DISCOVERY IS INCONSISTENT WITH BP'S RIGHT TO ARBITRATE ITS DISPUTES WITH ANADARKO.***

***IN ADDITION, BP HAS SERVED CERTAIN INTERROGATORIES TO PRESERVE ITS RIGHT TO OBTAIN DISCOVERY IN THE EVENT THAT THE COURT DENIES BP'S MOTION TO STAY. BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO INTERROGATORY NOS. 41 THROUGH 44 UNLESS AND UNTIL THE COURT DENIES BP'S MOTION TO STAY.***

Pursuant to Federal Rules of Civil Procedure 26 and 33, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following interrogatories to Anadarko Petroleum Corporation and Anadarko E&P Company LP (which

---

[1] The BP Parties' original First Set of Interrogatories to Anadarko (served yesterday) inadvertently referenced Interrogatory Nos. 40 through 43, instead of Interrogatory Nos. 41 through 44, at the end of the boldfaced, capitalized preamble on the first page. That typographical error has been corrected herein, and that revision is the only change to this Corrected First Set of Interrogatories to Anadarko.

may be referred to singly or collectively as "Anadarko") to be responded to no later than August 1, 2011.

## **INTERROGATORIES**

1.      Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the Deepwater Horizon, Deepwater Horizon Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

2.      Please describe in detail your well control or well shut-in procedures, including any ways in which those procedures have changed since April 20, 2010, and ways in which you contend they differ from what you allege was done on the Macondo Well.

3.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced kicks, including the identity of each person who experienced, monitored, or reported such kicks, and the actions taken in response to such kicks.

4.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced a blowout, including the identity of each person who experienced, monitored, or reported such blowout, and the actions taken in response to such blowout.

5.      Please describe in detail your temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including a detailed description of each prescribed, suggested or optional step, including but not limited to the depth of any cement plug utilized, the timing and

method of installation of lock-down sleeves, and running the lead impression tool, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

6.      Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

7.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you performed a temporary abandonment procedure that differed from the one you actually submitted to, or different from the one that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM), including in your answer all ways in which the employed procedures differed from the submitted or approved procedures.

8.      Please describe in detail your negative pressure test procedure for deepwater wells in the Gulf of Mexico, including the steps in negative pressure testing communicated to your rig personnel and all criteria for gauging whether a negative pressure test has succeeded or failed, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

9.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which a negative pressure test was not performed or was deemed by some or all personnel to have failed.

10.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you displaced seawater to more

than 500' below mud level before negative pressure testing during temporary abandonment, including in your answer the total number of feet you displaced to in each instance.

11.     Please describe in detail your policies with respect to running cement bond logs for deepwater wells in the Gulf of Mexico, including in your answer your policies regarding when a cement bond log is required, when a cement bond log is recommended, and when a cement bond log is optional, and ways in which you contend that your policies differ from what you allege was done on the Macondo Well.

12.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which there was not a cement bond log run at the conclusion of a cement job.

13.     Please describe in detail all procedures related to cementing your deepwater wells in the Gulf of Mexico, including any procedures related to the use of nitrified foam cement, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

14.     Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have used Halliburton as your cement subcontractor.

15.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you directed your cement contractor to proceed with a cement job when an Opticem or similar modeling report showed the well could have a gas flow problem.

16.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not conduct a full

bottoms-up circulation of the drilling fluid before beginning a cement job, including in your answer the reason(s) why you did not conduct such circulation.

17.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar in preparation for cementing.

18.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you had to attempt more than one time to convert the float collar before it was declared converted prior to cementing, including in your answer the number of attempts you made, and the results of those attempts.

19.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used nitrogen foamed cement, including the length of time you permitted the cement to sit prior to conducing a negative-pressure test, and the circumstances that led you to determine that nitrified foam cement was the appropriate cement mixture.

20.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used lost circulation materials as spacer, including in your answer the circumstances that led you to determine that lost circulation material could be used as spacer.

21.     Please describe in detail your policies and procedures regarding use of the diverter system on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways

in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

22.     Please describe in detail your policies and procedures regarding use of the Emergency Disconnect System (EDS) on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

23.     Please describe in detail your policies and procedures related to changes or substitutions of personnel on board MODUs or otherwise involved in deepwater wells in the Gulf of Mexico, including but not limited to temporary personnel changes or substitutions of well site leaders, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

24.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you changed your well site leader within one week of the commencement of temporary abandonment procedures.

25.     Please describe in detail your policies and procedures related to training of personnel on board MODUs or involved in deepwater wells in the Gulf of Mexico, including ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

26.     Please describe in detail your policies and procedures relating to monitoring well conditions, including duties of well site leaders, mudloggers, rig personnel, or any other person

with the ability to monitor well conditions, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

27.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you had no on-shore real-time monitoring process to assess what was happening in the well on a continuing basis.

28.     Please describe in detail your policies and procedures relating to the use of centralizers during cement jobs for your deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

29.     Please describe in detail your policies and procedures relating to mudlogging of deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

30.     Please describe in detail your policies and procedures relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job in deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

31.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not spot heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole prior to any cement job and identify the data upon which any person based that decision.

32.     Please describe in detail your procedures to ensure that you would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of

the rigs utilized in your drilling operations in the Gulf of Mexico, including the BOPs on such rigs, including in your answer the owner of the rig(s) to which such procedure has been applied, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

33.     Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have hired a Transocean rig under a drilling contract.

34.     Please identify each person whom you may call as an expert witness, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor).  With respect to each person you identify, please state:  (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

35.     Please identify each person you intend to call or may call as a witness in this matter and, for each person identified, state the subject of their expected testimony.

36.     Please identify and describe in detail all internal discussions at Anadarko before April 21, 2010, discussing the safety of the Macondo Well.

37.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which an Opticem or similar modeling report indicated that, with the number of centralizers you chose to use (and actually did use) in a well, there was a gas flow problem, including but not limited to, the number of centralizers used and the gas flow potential indicated by modeling.

38.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you executed a cement job

8

despite conditions that were not optimal, including when Opticem models or another model used by any cementing expert or contractor predicted or suggested that there was a possibility of gas flow, channeling, or cement failure.   As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

39.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you concluded, or any person suggested, that the cement job failed to achieve zonal isolation for any reason (including channeling, nitrogen breakout, contamination, poor design), including details concerning the composition of the cement used, the pre- and post-job testing, the reports prepared for the cement job, any discussion or conclusion whether the cement failed, the known or suspected reason why the cement failed, and how the issue was resolved.   As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

40.     Please identify each person who provided any information that forms the basis for your responses, or any portion thereof, to these Interrogatories, including the substance of the information each such person provided.

41.     Please describe in detail all reasons you contend that you are not required to pay any portion of any Joint Interest Billing related to the Macondo Well.

42.     Please describe in detail all ways in which you contend that BP has breached the JOA.

43.     Please describe in detail all ways in which you contend BP's conduct constituted gross negligence or willful misconduct, as those terms are used in your crossclaims against BP.

9

44.     Please describe in detail all ways in which you contend BP's conduct constituted negligence, as that term is used in your crossclaims against BP.

## DEFINITIONS

1.      "You," "your," and "yours" shall mean Anadarko and/or any corporate affiliate, including without limitation any of its present or former agents or representatives, or anyone acting or purporting to act for or on Anadarko's behalf for any purpose whatsoever, including operators of wells in which any Anadarko-affiliated entity holds any percentage of any kind of ownership.

2.      "Describe," when used in a question about wells, includes providing the name, location and dates of drilling of the pertinent wells.

3.      "Procedure" includes any oral or written guideline, procedure, requirements, protocol, standard, best practice, standard practice, system or recommendation.

4.      "Including" or "includes" means "including but not limited to" or "including without limitation."

5.      "Relating to" or "related to," when referring to any given subject matter, means constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

6.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

7.      "Communication" or "communicated" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer

10

linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

8.      "Identify" or "identity" when used in reference to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and document control number(s); (d) an oral communication or statement, shall mean to state the date, place, each person making or listening to such oral communication or statement, all other persons present at the time, a summary of the substance, and the identities of each document referring or relating to, in whole or in part, such oral communication or oral statement; (e) a piece of equipment or other tangible object besides a document, shall mean to provide sufficient information to identify that object, including any name used to identify the object, its manufacturer, the make and model of the object, its location, and any serial numbers or other identifying numbers; and (f) an act, shall mean to state the substance of the event or events constituting such act, the date, the duration, the location, the persons attending or participating, and each document referring or relating to such act

9.      "Macondo Well" means the MC252 #1 Well, the exploratory well that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10.      "BOP" means, unless otherwise specified, the entire subsea blowout preventer system, including, but not limited to, the BOP stack, BOP control system, BOP operating panels, Lower Marine Riser Package ("LMRP"), all rams, all preventers, any and all connectors and connections to the BOP stack, including the choke and kill lines and MUX cables, any and all emergency systems, any and all back-up systems, the autoshear system, ROV intervention panels, the Automatic Mode Function deadman system, and any other components to the BOP.

11.      "BP" means BPXP and all of its affiliates and subsidiaries.

12.      "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

13.      "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

14.      "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

## INSTRUCTIONS

1.      Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing and you must revise or supplement your responses whenever new or additional responsive information becomes known.

2.      Each interrogatory solicits all information that is known to you or in your possession, custody or control, and all information available to you from your attorneys, agents, investigators, experts, employees, insurers and representatives.

3.      Each interrogatory is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular interrogatory.

4.      These interrogatories are to be answered in detail.  If you cannot answer any interrogatory in full, you should answer it to the extent possible and explain your inability to answer any further.

5.      If you claim that the language of any interrogatory is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.  Regardless of any vagueness or ambiguity you claim, you are to answer the interrogatory to the best of your ability.

6.      When asked for a date, an exact date should be given if known.  If an exact date is not known, an approximate date should be given and identified as such.

7.      If any of the answers to these interrogatories are derived from papers, records or documents in your possession or under your control, please attach a copy thereof to your answers or, in the alternative, please describe each of the documents with specificity and state when and where they will be available to BPXP's counsel for inspection and copying.

8.      If you contend that information responsive to any interrogatory is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

Dated:  July 2, 2011

Respectfully submitted,

/s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

and

Don K. Haycraft (Bar # 14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:     (202) 662-5985

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

14

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 2nd day of July, 2011.

/s/ J. Andrew Langan, P.C.

# EXHIBIT F



39098247

Aug  4 2011
3:00PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | **Oil Spill by the Oil Rig** | * **MDL No. 2179** |
| | **"*Deepwater Horizon*" in the Gulf of** | * |
| | **Mexico, on April 20, 2010** | * **SECTION: J** |
| | | * |
| **Applies to:** *All Cases*. | | * **JUDGE BARBIER** |
| | | * **MAGISTRATE SHUSHAN** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

## OBJECTIONS AND RESPONSES OF ANADARKO ("ANADARKO PETROLEUM CORPORATION AND ANADARKO E & P COMPANY LP") TO THE BP PARTIES' FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, object to the BP Parties' Corrected First Set of Interrogatories[1] ("Interrogatories"), served on Responding Party on July 2, 2011, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court.  Responding Party will respond to the Interrogatories in accordance with such Rules and Orders.

2.      Pursuant to the BP Parties' stipulation, set forth in the Interrogatories, Responding Party was under no obligation to respond to Interrogatory Nos. 41-44, unless and until the Court denied the BP Parties' Motion to Stay.  The BP Parties' Motion to Stay was granted on July 15,

---

[1] The BP Parties' First Set of Interrogatories was served on July 1, 2011.  A corrected version, indicating that Interrogatory Nos. 41-44 would not need to be answered unless and until BP's Motion to Stay was denied, was then served on July 2, 2011.

2011.  Therefore, Responding Party will not respond to Interrogatory Nos. 41-44.

3.    Responding Party objects to the Interrogatories to the extent they seek documents or information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

4.    Responding Party objects to the Interrogatories to the extent they relate to or concern Responding Party's cross-claims against the BP Parties, as those claims will be addressed in arbitration at a later date pursuant to the Court's July 15, 2011 Order.

5.    Responding Party objects to the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege or protection.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Interrogatories.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

2

6.      Responding Party objects to the Interrogatories to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

7.      Responding Party objects to the Interrogatories to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

8.      Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to set forth or state legal conclusions or positions applicable to specific legal or factual issues.

9.      Responding Party objects to the Interrogatories to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

10.     Responding Party objects to the Interrogatories to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

11.     Responding Party objects to the Interrogatories to the extent that they are overly

3

broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

12.     Responding Party objects to the Interrogatories to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

13.     Responding Party objects to the Interrogatories to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.   Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to be produced in a different format.

14.     Responding Party objects to the definition of "you," "your," and "yours" as overly broad and as improperly seeking party discovery from non-party entities.   Responding Party will respond to the Interrogatories only on behalf of Responding Party.

15.     The documents and information provided in Responding Party's responses to the Interrogatories reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

16.     In responding to the Interrogatories, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Interrogatory on any ground including, but not limited to, the ground that the document, information or Interrogatory is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Interrogatory should be construed as an

admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Interrogatory.

17.    Responding Party reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

18.    Except as noted hereinafter, Responding Party objects to the Interrogatories as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.

19.    Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

20.    Responding Party objects to the Interrogatories as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.   Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

21.    Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in

5

the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

22.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or interrogatory is made without waiver of, and subject to, these General Objections.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1:**

Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the Deepwater Horizon, Deepwater Horizon Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   As a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding

6

Party's internal activities or its operations has no bearing on the current litigation.  Responding Party also objects because the undefined terms "participated" and "involved with" are vague and ambiguous.   Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party directs the BP Parties to the non-privileged or otherwise non-protected responsive documents, if any,  that will be produced in response to this request.

**INTERROGATORY NO. 2:**

Please describe in detail your well control or well shut-in procedures, including any ways in which those procedures have changed since April 20, 2010, and ways in which you contend they differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding

7

Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations and procedures has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery. Responding Party also objects because the undefined phrases "well control," "well shut-in," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## INTERROGATORY NO. 3:

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced kicks, including the identity of each person who experienced, monitored, or reported such kicks, and the actions taken in response to such kicks.

## RESPONSE TO INTERROGATORY NO. 3:

Responding Party incorporates its General Objections. Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party. Responding Party objects to this Interrogatory as overly broad, unduly

8

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms "deepwater wells," "experienced," "monitored," "reported," and "actions taken" are vague and ambiguous. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 4:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced a blowout, including the identity of each person who experienced, monitored, or reported such blowout, and the actions taken in response to such blowout.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory

to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms "deepwater wells," "experienced," "monitored," "reported," and "actions taken" are vague and ambiguous. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 5:**

Please describe in detail your temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including a detailed description of each prescribed, suggested or optional step, including but not limited to the depth of any cement plug utilized, the timing and method of installation of lock-down sleeves, and running the lead impression tool, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its General Objections.   Responding Party further objects

10

to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells" and "prescribed, suggested, or optional step" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**<u>INTERROGATORY NO. 6</u>:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

11

## RESPONSE TO INTERROGATORY NO. 6:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined term "deepwater wells" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## INTERROGATORY NO. 7:

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you performed a temporary abandonment

12

procedure that differed from the one you actually submitted to, or different from the one that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM), including in your answer all ways in which the employed procedures differed from the submitted or approved procedures.

## RESPONSE TO INTERROGATORY NO. 7:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined term "deepwater wells" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in

13

Pretrial Order No. 11.

## INTERROGATORY NO. 8:

Please describe in detail your negative pressure test procedure for deepwater wells in the Gulf of Mexico, including the steps in negative pressure testing communicated to your rig personnel and all criteria for gauging whether a negative pressure test has succeeded or failed, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 8:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of

14

admissible evidence.  Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells," "rig personnel," and "criteria for gauging" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 9:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which a negative pressure test was not performed or was deemed by some or all personnel to have failed.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined term "your" as overly broad, confusing, compound, beyond the

15

scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells" and "deemed by some or all personnel to have failed" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 10:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you displaced seawater to more than 500' below mud level before negative pressure testing during temporary abandonment, including in your answer the total number of feet you displaced to in each instance.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other

16

deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined term "deepwater wells" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 11:**

Please describe in detail your policies with respect to running cement bond logs for deepwater wells in the Gulf of Mexico, including in your answer your policies regarding when a cement bond log is required, when a cement bond log is recommended, and when a cement bond log is optional, and ways in which you contend that your policies differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's*

17

operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms "policies" and "deepwater wells," are vague and ambiguous.   Responding Party also objects to this Interrogatory because the undefined phrase "was done on the Macondo Well" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 12:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which there was not a cement bond log run at the conclusion of a cement job.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly

18

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined term "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells" and "cement jobs" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 13:**

Please describe in detail all procedures related to cementing your deepwater wells in the Gulf of Mexico, including any procedures related to the use of nitrified foam cement, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined phrases "cementing your deepwater wells" and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 14:**

Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have used Halliburton as your cement subcontractor.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells" and "cement subcontractor" are vague and ambiguous Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 15:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you directed your cement contractor to proceed with a cement job when an Opticem or similar modeling report showed the well could have a gas flow problem.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or

21

any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells," "cement contractor," "cement job," "similar modeling report" and "well could have a gas flow problem" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## **INTERROGATORY NO. 16:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not conduct a full bottoms-up circulation of the drilling fluid before beginning a cement job, including in your answer the reason(s) why you did not conduct such circulation.

22

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells" and "cement jobs" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 17:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used a pressure greater than 2000 psi to

establish sufficient circulation to convert the float collar in preparation for cementing.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells" and "sufficient circulation" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 18:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in

the Gulf of Mexico in the last five years in which you had to attempt more than one time to convert the float collar before it was declared converted prior to cementing, including in your answer the number of attempts you made, and the results of those attempts.

**RESPONSE TO INTERROGATORY NO. 18:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined term "deepwater wells" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

25

**INTERROGATORY NO. 19**:

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used nitrogen foamed cement, including the length of time you permitted the cement to sit prior to conducing [sic] a negative-pressure test, and the circumstances that led you to determine that nitrified foam cement was the appropriate cement mixture.

**RESPONSE TO INTERROGATORY NO. 19**:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined

26

phrases "deepwater wells" and "appropriate cement mixture" are vague and ambiguous. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 20:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used lost circulation materials as spacer, including in your answer the circumstances that led you to determine that lost circulation material could be used as spacer.

**RESPONSE TO INTERROGATORY NO. 20:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

27

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms "deepwater wells" and "circumstances" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 21:**

Please describe in detail your policies and procedures regarding use of the diverter system on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 21:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding

28

Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations at other deepwater drilling rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 22:**

Please describe in detail your policies and procedures regarding use of the Emergency Disconnect System (EDS) on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 22:**

Responding Party incorporates its General Objections. Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to this Interrogatory

29

to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater drillings rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**<u>INTERROGATORY NO. 23</u>:**

Please describe in detail your policies and procedures related to changes or substitutions of personnel on board MODUs or otherwise involved in deepwater wells in the Gulf of Mexico, including but not limited to temporary personnel changes or substitutions of well site leaders, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "changes or substitutions of personnel," "otherwise involved in deepwater wells," "temporary personnel changes or substitutions," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 24:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in

31

the Gulf of Mexico in the last five years in which you changed your well site leader within one week of the commencement of temporary abandonment procedures.

**RESPONSE TO INTERROGATORY NO. 24:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined phrases "deepwater wells" and "commencement of temporary abandonment procedures" are vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

32

**INTERROGATORY NO. 25:**

Please describe in detail your policies and procedures related to training of personnel on board MODUs or involved in deepwater wells in the Gulf of Mexico, including ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 25:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "involved in deepwater wells," "training of personnel," "policies," and "was done on the

33

Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 26:**

Please describe in detail your policies and procedures relating to monitoring well conditions, including duties of well site leaders, mudloggers, rig personnel, or any other person with the ability to monitor well conditions, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 26:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "monitoring well conditions," "duties," "rig personnel," "any other person with the ability to monitor well conditions," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 27:**

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you had no on-shore real-time monitoring process to assess what was happening in the well on a continuing basis.

**RESPONSE TO INTERROGATORY NO. 27:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other

35

deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined phrases "deepwater wells" and "on-shore real-time monitoring process to assess what was happening in the well on a continuing basis" are vague and ambiguous. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## INTERROGATORY NO. 28:

Please describe in detail your policies and procedures relating to the use of centralizers during cement jobs for your deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 28:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding

36

Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "cement jobs," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 29:**

Please describe in detail your policies and procedures relating to mudlogging of deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 29:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's*

37

operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 30:**

Please describe in detail your policies and procedures relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job in deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 30:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "policies," "drilling operations," "cement job," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## INTERROGATORY NO. 31:

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not spot heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole prior to any cement job and identify the data upon which any person based that decision.

## RESPONSE TO INTERROGATORY NO. 31:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the

A/74456725.1

attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells," "drilling operations," "cement job," and "data" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 32:**

Please describe in detail your procedures to ensure that you would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the rigs utilized in your drilling operations in the Gulf of Mexico, including the BOPs on such rigs, including in your answer the owner of the rig(s) to which such procedure has been applied, and ways in which you contend that your procedures differ from what you allege was done on the Macondo

Well.

**RESPONSE TO INTERROGATORY NO. 32:**

  Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other rigs in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because the undefined terms/phrases "otherwise made aware of," "maintenance," "modifications," "malfunctions," "rigs utilized," "drilling operations," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

41

**INTERROGATORY NO. 33:**

Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have hired a Transocean rig under a drilling contract.

**RESPONSE TO INTERROGATORY NO. 33:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells" and "drilling contract" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 34:**

Please identify each person whom you may call as an expert witness, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor).  With respect to each person you identify, please state:  (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

**RESPONSE TO INTERROGATORY NO. 34:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined term "you" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 35:**

Please identify each person you intend to call or may call as a witness in this matter and, for each person identified, state the subject of their expected testimony.

**RESPONSE TO INTERROGATORY NO. 35:**

Responding Party incorporates its General Objections.   Responding Party further objects

43

to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined term "you" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 36:**

Please identify and describe in detail all internal discussions at Anadarko before April 21, 2010, discussing the safety of the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 36:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations has no bearing on the current litigation. Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects because the undefined phrases "internal discussions"

44

and "safety of the Macondo Well" are vague, ambiguous, and overly broad.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party has already produced all of its responsive, non-privileged or otherwise non-protected internal communications concerning the Macondo Well.   It would take the same amount of time, effort, burden and expense for Responding Party as it would for the BP Parties to review and identify all of these communications from the documents already produced. Accordingly, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Responding Party directs the BP Parties to the documents already produced in this litigation.

## INTERROGATORY NO. 37:

Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which an Opticem or similar modeling report indicated that, with the number of centralizers you chose to use (and actually did use) in a well, there was a gas flow problem, including but not limited to, the number of centralizers used and the gas flow potential indicated by modeling.

## RESPONSE TO INTERROGATORY NO. 37:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

45

Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms/phrases "deepwater wells," "similar modeling report," "gas flow problem," "gas flow potential," and "indicated by modeling" are vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 38:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you executed a cement job despite conditions that were not optimal, including when Opticem models or another model used by any cementing expert or contractor predicted or suggested that there was a possibility of gas flow, channeling, or cement failure.  As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

**RESPONSE TO INTERROGATORY NO. 38:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because the undefined terms/phrases "deepwater wells," "cement job," "conditions that were not optimal," "another model used by any cementing expert or contractor," "predicted or suggested,"  "possibility of gas flow, channeling, or cement failure," "statements," and "other materials" are vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 39:**

Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you concluded, or any person suggested, that the cement job failed to achieve zonal isolation for any reason (including channeling, nitrogen breakout, contamination, poor design), including details concerning the composition of the cement used, the pre- and post job testing, the reports prepared for the cement job, any discussion or conclusion whether the cement failed, the known or suspected reason why the cement failed, and how the issue was resolved. As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

**RESPONSE TO INTERROGATORY NO. 39:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other

48

deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined terms/phrases "deepwater wells," "suggested," "cement job," "reports," "statements," "other reports," and "reflect the events" are vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 40:**

Please identify each person who provided any information that forms the basis for your responses, or any portion thereof, to these Interrogatories, including the substance of the information each such person provided.

**RESPONSE TO INTERROGATORY NO. 40:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   In addition, Responding Party objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined term "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Responding Party also objects to this Interrogatory because the undefined term "information" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party's responses to the Interrogatories were prepared with the assistance of counsel.

## INTERROGATORY NO. 41:

Please describe in detail all reasons you contend that you are not required to pay any portion of any Joint Interest Billing related to the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 41:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party also objects to the defined term "you" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Pursuant to the stipulation set forth in the preface of BP's Interrogatories, Responding Party "has no obligation to respond to Interrogatories Nos. 41-44 unless and until the court denies BP's Motion to Stay."  The BP Parties' Motion to Stay was granted on July 15, 2011.  Therefore, in

reliance on BP's stipulation, Responding Party will not respond further to Interrogatory No. 41.

**INTERROGATORY NO. 42:**

Please describe in detail all ways in which you contend that BP has breached the JOA.

**RESPONSE TO INTERROGATORY NO. 42:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined term "you" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Pursuant to the stipulation set forth in the preface of BP's Interrogatories, Responding Party "has no obligation to respond to Interrogatories Nos. 41-44 unless and until the court denies BP's Motion to Stay."  The BP Parties' Motion to Stay was granted on July 15, 2011.  Therefore, in reliance on BP's stipulation, Responding Party will not respond further to Interrogatory No. 42.

**INTERROGATORY NO. 43:**

Please describe in detail all ways in which you contend BP's conduct constituted gross negligence or willful misconduct, as those terms are used in your crossclaims against BP.

**RESPONSE TO INTERROGATORY NO. 43:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Pursuant to the stipulation set forth in the preface of BP's Interrogatories, Responding Party "has no obligation to respond to Interrogatories Nos. 41-44 unless and until the court denies BP's Motion to Stay."  The BP Parties' Motion to Stay was granted on July 15, 2011.  Therefore, in

reliance on BP's stipulation, Responding Party will not respond further to Interrogatory No. 43.

**INTERROGATORY NO. 44:**

Please describe in detail all ways in which you contend BP's conduct constituted negligence, as that term is used in your crossclaims against BP.

**RESPONSE TO INTERROGATORY NO. 44:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party further objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Pursuant to the stipulation set forth in the preface of BP's Interrogatories to, Responding Party "has no obligation to respond to Interrogatories Nos. 41-44 unless and until the court denies BP's

53

Motion to Stay." The BP Parties' Motion to Stay was granted on July 15, 2011. Therefore, in reliance on BP's stipulation, Responding Party will not respond further to Interrogatory No. 44.

Dated:  August 4, 2011                                        Respectfully submitted,


                                                             ___/s/ Ky E. Kirby_____

                                                             Ky E. Kirby
                                                             Ky.Kirby@bingham.com
                                                             Warren Anthony Fitch
                                                             Tony.Fitch@bingham.com
                                                             Michael B. Wigmore
                                                             Michael.Wigmore@bingham.com
                                                             BINGHAM MCCUTCHEN LLP
                                                             2020 K Street, NW
                                                             Washington, DC 20006-1806
                                                             Telephone (202) 373-6000
                                                             Facsimile (202) 373-6001

                                                             James J. Dragna
                                                             Jim.Dragna@bingham.com
                                                             BINGHAM MCCUTCHEN LLP
                                                             355 South Grand Avenue
                                                             Suite 4400
                                                             Los Angeles, California 90071-3106
                                                             Telephone (213) 680-6436
                                                             Facsimile (213) 680-8636

                                                             Deborah D. Kuchler (La. Bar No. 17013)
                                                             Janika Polk (La. Bar No. 27608)
                                                             Robert Guidry (La. Bar No. 28064)
                                                             KUCHLER POLK SCHELL
                                                             WEINER & RICHESON, LLC
                                                             1615 Poydras Street, Suite 1300
                                                             New Orleans, LA  70112

                                                             **ATTORNEYS FOR ANADARKO
                                                             PETROLEUM CORPORATION AND
                                                             ANADARKO E&P COMPANY LP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Objections and Responses of Anadarko to BP's First Set of Interrogatories dated July 2, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 4th day of August, 2011.


_____/s/  Ky E. Kirby_____

# EXHIBIT G

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California  90071

Darin T. Beffa
To Call Writer Directly:
(213) 680-8264
darin.beffa@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

August 2, 2011

**Via E-mail**

Charles L. Solomont, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

W. Anthony Fitch, Esq.
Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806

Re:     BP-Anadarko Discovery

Dear Carl and Tony:

This letter addresses several issues related to discovery between BP and Anadarko.

## I.      BP-Anadarko Discovery Now that Anadarko's Claims Have Been Stayed.

In light of Judge Barbier's recent order granting BP's motion to stay, I would like to confirm your understanding of the scope of permissible discovery between BP and Anadarko. Judge Shushan's order on Anadarko's motion to compel said that, even if there were a stay of claims between BP and Anadarko based on their contractual arbitration clause (which she assumed for purpose of analysis), discovery would still be permissible by either Anadarko or BP against the other, provided that the discovery was relevant to the propounding party's defenses to third-party claims in the MDL.  The reasoning in her order is applicable to discovery by either Anadarko or BP.  This principle was reaffirmed by Judge Barbier's Order granting a stay, which rejected Anadarko's argument that BP's discovery effected a waiver of BP's right to arbitrate its disputes with Anadarko.  Thus, the upshot of both orders is that neither BP nor Anadarko is precluded by the JOA's arbitration clause from pursuing such defensive discovery, and neither BP nor Anadarko waives its arbitration rights by pursuing such discovery.  Please let me know immediately if you disagree with this interpretation of the orders.

Chicago      Hong Kong      London      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 2

### A.      Deadlines

Given that BP's stay motion has now been granted, Anadarko must respond to the interrogatories BP served on July 1 (except Nos. 41 through 44). Responses and objections were due yesterday. Please let me know immediately when Anadarko plans to respond to BP's interrogatories.

### B.      Moot Requests

As with Interrogatory Nos. 41 through 44, some of BP's requests for production were only applicable had Judge Barbier not stayed Anadarko's claims. Accordingly, BP no longer expects Anadarko to produce documents in response to Request for Production Nos. 61, 66, and 92 through 95. And, as stated therein, BP no longer expects Anadarko to respond to the requests for admission served on July 1.

### C.      Reciprocity

From the beginning of our meet-and-confer process, I made it clear that BP expected Anadarko to, when the time came, provide discovery in a manner roughly reciprocal to the discovery Anadarko was demanding of BP. I was disappointed to find that, when the time did come, Anadarko's offers of production were not entirely consistent with the agreements I thought we had reached. (Anadarko's responses to BP's requests for production are discussed in more detail below.) BP expects that Anadarko's responses to BP's interrogatories will comport with the agreements we have reached over the last several months of discussions. We look forward to working with you toward mutually acceptable discovery agreements.

### D.      Non-Macondo Discovery

This reciprocity in discovery should extend to discovery regarding other wells in the Gulf of Mexico. As Mark Nomellini mentioned in his July 27 e-mail, your characterization of BP's position on non-Macondo discovery—in both your July 25 and July 27 e-mails—is incorrect. BP has not refused to provide discovery regarding other wells in the Gulf of Mexico. BP has already produced many documents relating to other wells. BP's position is that Anadarko should, at a minimum, provide the same scope of discovery about other wells as BP provides. Anadarko's position—that documents about other wells in Anadarko's possession are not relevant because it was not the operator of the Macondo Well—is untenable. Anadarko has publicly branded itself as one of the industry's most "successful" deepwater explorers in the Gulf of Mexico, claiming to have discovered 30 plus fields and to have interests in hundreds of lease

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 3

blocks, and its practices and procedures on those wells are relevant to the industry standard of care.

Your July 27 e-mail states that you would like to arrive at an agreement on the scope of non-Macondo discovery. We share this objective, but given BP's considerable production of discovery relating to other wells, it is too late for your proposal to forgo all discovery on other wells. We propose that, with respect to discovery between Anadarko and BP related to non-Macondo wells, each party will be required to respond to those requests (and only the parts of such requests) seeking interrogatory responses describing (or documents embodying) company policies, procedures, or standards applicable generally to deepwater Gulf of Mexico wells; if no such generalized policies, procedures, or standards exist, the response shall so indicate. We would like this proposal to be included on the agenda for our call tomorrow.

## II.     BP's Responses to Anadarko's Interrogatories and Requests for Production.

BP is in the process of preparing and checking supplemental responses to some of Anadarko's interrogatories and requests for production. I write separately here to provide additional information and to respond to your July 14 letter.

### A.     Obligation to Supplement

BP is still looking into whether there is any need to supplement a handful of its responses to APC's interrogatories. But it has also determined that, for many, no additional response is necessary. For example, with respect to APC Interrogatory No. 21, Anadarko simply seeks confirmation that no additional information is required in response to the interrogatory. If BP determines that a supplemental response is necessary, it will provide one promptly. BP is not, however, required to "confirm" that its responses do not need supplementation. BP will supplement its responses to Anadarko's discovery with available information as required by the applicable procedural rules and orders.

### B.     APC Interrogatory No. 2

It is unclear what you are requesting with respect to APC Interrogatory No. 2. Your July 14 letter refers to Tony Fitch's May 23 letter, but the only reference to Interrogatory No. 2 in the latter letter notes that there is no disagreement about our response.

### C.     Document Production in Response to Interrogatories

You have requested confirmation from BP about the scope of the offers of production BP

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 4

made in response to APC Interrogatory Nos. 7, 9 through 12, 18,[1] 26, and 27.  As we have stated repeatedly, BP has been completely candid about the search criteria (search terms, custodians, and date ranges) it has used to produce documents, and those search criteria are reasonable and robust.  BP's document production in response to interrogatories need not be treated differently from its production in response to document requests.

With respect to the BP/Anadarko communications search criteria, I can confirm that the custodians listed in Mark Nomellini's June 12 e-mail to Sandra Franco are those that are likely to have had communications with Anadarko.  The statement in that e-mail that the custodians would have had *financial* communications with Anadarko was in error, and I apologize.  Further, we have updated the search term criteria, as you proposed, to include the word "Anadarko," as well as to include other terms that we believe are reasonable to capture communications between BP and Anadarko.  The updated search string we will run is:  ((("Anadarko.com" OR ("paul" NEAR4 "chandler") OR (("Steve" OR "Steven") NEAR4 "Foster") OR ("Strife" NEAR4 "Stuart") OR "Huch" OR "Quitzau" OR "Kamm" OR ("Hollek" NEAR4 "Darrell") OR ("Vera" NEAR4 "wells") OR ("Dawn" NEAR4 "Peyton") OR ("Byrd NEAR4 "Jeremy") OR ("Brian" NEAR4 "O'Neill") OR (("jim" OR "james") NEAR4 "Bryan") OR "Dunbar" OR ("Derek" NEAR4 "Folger") OR ("Al*" NEAR4 "O'Donnell") OR "Sease" OR "Kasuga" OR "Tsuji" OR "Sato" OR "Ishii" OR "Kachi" OR "Fujita" OR ("Asami" NEAR4 "Yoshimura") OR "Yanoma" OR "Naito" OR "Kanno" OR ("Kyoko" NEAR4 "Yamamoto") OR "Murachi" OR "Tsuruta" OR "moexus.com" OR "Naoki" OR "moeco.co.jp"):TO:FROM:CC) OR ("Anadarko" or "APC" or "A E&P" or "AEP" or "MOEX" or "MOECO" or "Mitsui")) AND (Macondo OR ((MC OR "Mississippi Canyon") NEAR2 252) OR "MC-252" OR "Deepwater Horizon" OR "DWH" OR "Marianas").  Custodians and date ranges remain as stated in Mark's June 12 e-mail.

## D.   APC Interrogatory Nos. 26 and 27

With respect to APC Interrogatory Nos. 26 and 27, BP is standing on its objection that identification of each and every oral communication between BP and Anadarko is too burdensome.  Subject to its objections, BP has conducted a reasonable investigation and is satisfied that its response is complete and accurate.  Your attempt to revise the interrogatories in your July 14 letter does not make them any less onerous.  In fact, your new request seeks information that is not even arguably within the scope of the actual interrogatories.

---

[1]   APC Interrogatory Nos. 7, 9 through 12, and 18 concern wells other than Macondo.  The scope of documents BP will produce going forward is dependent on the outcome of our discussions about the scope of non-Macondo discovery.

## KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 5

### E.    APC Interrogatory No. 30 and AEP Interrogatory No. 1

With respect to APC Interrogatory No. 30, even with Anadarko's "narrowing" of the interrogatory to seek information about BP's responses to ten of Anadarko's requests for admission, the interrogatory remains objectionable.  As stated in its initial response to this interrogatory, BP, "where appropriate, provided a great deal of information" within its responses to Anadarko's requests for admission.  Those responses are sufficient to satisfy any obligation to respond to Interrogatory No. 30.  BP's original response to AEP Interrogatory No. 1 is sufficient for the same reasons.

### F.    Request for Production Nos. 92 and 93

With respect to Request for Production Nos. 92 and 93, I am not sure what additional information you are requesting.  For both requests, BP responded that it has, or will, produce responsive documents that are located after a reasonable search.

### G.    Anadarko's Remaining Interrogatories

BP is preparing responses to Anadarko's remaining interrogatories, as identified in your July 14 letter.  BP will serve its responses soon.

### H.    Relevance of Anadarko's Discovery

Finally, to reiterate a point I've made before, BP believes that the majority of Anadarko's discovery is not truly relevant to Anadarko's MDL defenses.  Instead, the discovery appears singularly related to Anadarko's contentions that it should not have to honor its JOA obligations—contentions that the Court has ruled are arbitrable.  In the spirit of cooperation, BP is willing to continue discussing this discovery with Anadarko with the hope that we can resolve our discovery disputes without court intervention.  If this discovery does end up before the Court, however, BP reserves its right to argue that Anadarko's discovery is inconsistent with Judge Shushan's order.  If you believe that, by engaging in this give-and-take regarding individual requests, BP is waiving any right to argue that any Anadarko's discovery is inconsistent with Judge Shushan's order, please let us know as soon as possible.

## III.    Anadarko's Responses to BP's Requests for Production.

BP believes that Anadarko's responses to BP's requests for production are deficient in a number of ways, as discussed below.

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 6

Anadarko's responses state a number of general objections without identifying what information, if any, Anadarko is withholding on the basis of those objections.  Similarly, all of Anadarko's responses contain specific objections.  Yet Anadarko's offers of production for these document requests simply state that Anadarko will produce "responsive" documents "[s]ubject to and without waiving these objections."  In contrast, BP's responses to Anadarko's requests for production provided explicit offers of production.  Nonetheless, BP confirmed—upon Anadarko's request—that it intended to produce non-privileged documents consistent with its offers.  BP now requests the same confirmation from Anadarko—that it intends to produce all non-privileged documents.  In particular, BP seeks confirmation that Anadarko is not withholding documents based on:

- General Objections 5 & 6—confidential, secret, and proprietary information;

- General Objection 17—documents Anadarko obtained after April 20, 2010 (other than those it obtained through discovery in this case);

- General Objection 19 (also raised in response to Request for Production No. 64)—documents that, while relevant and in Anadarko's possession, custody, or control, are related to insurance policies issued to parties other than Anadarko;

- General Objection 20—documents in the possession of agents of Anadarko who are under Anadarko's control;

- The objections that, because Anadarko did not operate the Macondo Well, documents related to its activities are supposedly irrelevant;

- The objections to producing documents that are in Anadarko's possession, but that Anadarko believes BP already has in its possession (other than those that Anadarko has already produced in this case);

- The objections that portions of BP's requests are purportedly not related to phase 1 of the MDL;

- The various vagueness and ambiguity objections;

- The objection that Request for Production Nos. 30, 68, 69, 75, 76, 77, 82, 83, 86, 88, 96, and 97 are overly broad and/or irrelevant;

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 7

- The objections that the phrases "Anadarko Defendants," "affiliate of the Anadarko Defendants," and "your" are overly broad, vague, and/or unreasonable;

- The objections that certain requests for documents somehow call for "premature expert discovery"; and

- The objections to producing documents that, while in Anadarko's possession custody or control, may also be available in the public domain.

Moreover, Anadarko has refused to produce documents in response to Request for Production Nos. 57, 58, 62, 64, 67, 73, 74, 82, 83, 90, and 91. These requests are relevant and reasonable, and there is no basis for flatly refusing to produce documents in response thereto. Please provide the specific reasons that you believe that no response is required to these requests.

Anadarko's offers of production also explicitly refuse to provide documents related to other wells in the Gulf of Mexico. As discussed above, we welcome a dialogue with you to mutually resolve the scope of other-well discovery.

In light of these deficiencies, we propose a discussion of Anadarko's responses to BP's requests for production on our next meet-and-confer call, which is scheduled for tomorrow.

Furthermore, please confirm that Anadarko has completed production of all documents that it produced to Congress, the MBI, the OSC, and the National Academy of Engineering. If not, please let me know when such production will be completed.

To reiterate what I said at the beginning, BP pursues discovery against Anadarko in the MDL believing that such discovery has been sanctioned by the Court, and reserving all rights to arbitration. BP explicitly does not, and does not intend to, waive any rights to arbitration. As already mentioned, BP believes that Judge Shushan has ruled that discovery such as BP's—which relates to its MDL defenses—is consistent with the parties' agreement to arbitrate.

Please let me know if you have any questions, and I look forward to working with you to resolve our disagreements.

Sincerely,

/s/ Darin T. Beffa

Darin T. Beffa

# EXHIBIT H

# Hedgpeth, Tiffany

**From:** Hedgpeth, Tiffany
**Sent:** Thursday, August 11, 2011 10:55 AM
**To:** 'Darin Beffa'; 'Mark Nomellini'
**Cc:** Solomont, Charles L.; Saunders, Daniel A.
**Subject:** Non-Macondo Discovery


Darin and Mark.  This follows up on our discussions regarding the treatment of discovery relating to operations concerning non-Macondo wells.  Anadarko will supplement its responses to such discovery in-line with your August 2 letter.   We understand BP will do the same.

In light of this, I don't think we need to have the call at 11:30 today.  Please let me know if you disagree.

Thanks

# EXHIBIT I

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig | * | MDL No. 2179 |
| | *"Deepwater Horizon"* in the Gulf of | * | |
| | Mexico, on April 20, 2010 | * | SECTION: J |
| | | * | |
| Applies to: *All Cases*. | | * | JUDGE BARBIER |
| | | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## EXHIBIT I

## DECLARATION OF TIFFANY R. HEDGPETH IN SUPPORT OF ANADARKO'S OPPOSITION TO BP'S MOTION TO COMPEL DISCOVERY RESPONSES

I, Tiffany R. Hedgpeth, declare as follows:

1.     I am a partner with the law firm of Bingham McCutchen LLP, counsel of record for Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Anadarko").

2.     This declaration is made in support of Anadarko's Opposition to BP's Motion to Compel Responses to Discovery Requests Served on Anadarko in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179.

3.     During a meet-and-confer telephone conference with BP on Thursday, August 18, 2011, I asked counsel for BP whether BP subpoenaed deepwater drilling policies, standards, and procedures from other non-party entities involved with deepwater drilling in the GOM.   BP's counsel responded that he did not know.

4.     Anadarko began producing documents in the litigation on November 15, 2010 in response to Plaintiffs' First Set of Omnibus Requests for Production.

5.      During meet-and-confer telephone conferences with BP on August 18, 2011 and August 25, 2011, my partner, Dan Saunders, and I informed BP that if BP identified key documents for which it had a need to know the custodian, Anadarko would undertake best efforts to identify the custodians of the documents.   This proposal also was reflected in an e-mail communication from me to BP's counsel, dated August 19, 2011.

I declare under the penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed in Los Angeles, California on August 31, 2011.

Dated:

8/31/2011

_____
Tiffany R. Hedgpeth

A/74502356.1

# EXHIBIT J

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig *"Deepwater Horizon"* in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J |
| | Applies to: *All Cases*. | * * | JUDGE BARBIER MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### EXHIBIT J

### DECLARATION OF TONY ABISOGUN IN SUPPORT OF ANADARKO'S OPPOSITION TO BP'S MOTION TO COMPEL DISCOVERY RESPONSES

I, Anthony ("Tony") Abisogun, declare as follows:

1.      I am the Legal Technology Project Manager for Anadarko Petroleum Corporation ("Anadarko").

2.      As part of my responsibilities at Anadarko, I am responsible for the collection of Electronically Stored Information ("ESI") that is requested in litigation or by government agencies.  I have been involved in the collection of Anadarko's ESI requested in the pending multi-district litigation involving the explosion of the Deepwater Horizon at the Macondo Well and the subsequent release of oil into the Gulf of Mexico ( "Macondo Incident") since June 14, 2010.

3.      Anadarko maintains an electronic storage system referred to as Symantec Enterprise Vault ("EVault").  As part of its normal course of operations, the EVault contains e-mails of all company employees, archived documents, which have been collected as part of a

Legal Hold and documents identified as relevant to litigation involving Anadarko or government agency investigations.

4.      Based on information and belief, shortly after the Macondo Incident, Anadarko issued a Legal Hold to preserve all documents potentially relevant to the Incident.  This was followed by an effort to identify and collect all such documents.

5.      In July 2010, Anadarko's Information Technology team copied ESI for 108 custodians who were identified as potentially having information relating to the Macondo Incident.  This information was transferred into the EVault in July, 2010.  At that point in time, the EVault became Anadarko's central repository for documents related to the Macondo Incident.

6       Once the ESI was ingested into EVault, members of the Legal Technology team performed electronic searches through the EVault documents in order to locate documents responsive to discovery requests.  These documents were sent by ftp (file transfer protocol) to our e-discovery hosting service at Recommind, Inc.

7.      The process of identifying, collecting, and transferring documents potentially relevant to the Macondo Incident; searching such documents; and downloading the results of the searches took more than six months.

8.       It is an intrinsic system limitation of EVault that once documents are ingested, the source of the documents, which would provide the custodian information, is not brought into EVault.  As a result, although the other metadata fields remain fully intact (including the identity of the author and applicable dates of the document), the custodial source information does not.  EVault's inability to preserve the custodial metadata is not the result of any setting or action by Anadarko.

9.     In all of the documents produced by Anadarko, all other metadata remains intact, including the "from" (author), "to," "cc," "bcc," date created, date last modified, date last printed, and size.

10.     In order to capture the custodial information, Anadarko would have to re-image all the hard drives, share drives, and other data storage locations and devices identified by the custodians, upload the information into a different system, run the searches previously performed in EVault, identify whether the documents are responsive, and produce the documents a second time.  This would require Anadarko to purchase and be trained on a new system or locate a vendor who has these capabilities.  This effort would take at least 6 months to perform as it will mean re-running the searchers from scratch, which have been conducted over the course of the last 15 months and would require 2 additional full-time personnel.  Due to systems and infrastructure limitations, adding more than 2 additional personnel will not necessarily speed up the time it will take to complete this effort.


I declare under the penalty of perjury of the laws of the State of Texas and the United States that the foregoing is true and correct and that this declaration was executed in The Woodlands, Texas on August 31, 2011.

Dated:   08/31/2011

Tony Abisogun

3

# EXHIBIT K

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

300 N. LaSalle
Chicago, IL 60054

Mark J. Nomellini
To Call Writer Directly:
(312) 862-2410
geoffrey.david@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2410

July 11, 2011

**Via Electronic Mail**

Charles L. Solomont
Bingham McCutchen
One Federal Street
Boston, MA 02110-1726

Re:    *In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179*

Dear Carl:

I write in response to your letter to me dated July 6, 2011, and to follow up on our recent meet and confer discussions on July 1, 2011 and prior.  As with all of our prior meet and confers and discussions (including our discussions on June 24 and July 1), this letter is written pursuant to our express agreement that none of our discussions or communications constitutes a waiver of BP's rights.

## I.    Concerns Regarding Anadarko's Collection and Production Process

Based on our July 1, 2011 meet and confer and our review of Anadarko's production, we have several concerns about Anadarko's collection and production process.

### A.    Custodial Self Collection

You and your colleagues stated that electronic documents residing on Anadarko custodians' hard drive and not attached to e-mail (including but not limited to stand-alone Word documents, Excel documents, power points, *etc.*) were collected by Anadarko only if a custodian identified them as a relevant.  In other words, Anadarko did not extract all the user-generated files from the active space of each relevant custodian's computer and place them in a centralized location and/or run search terms against them.  Please identify each custodian for which Anadarko collected non-email data from the custodian's computer.  Also please let us know whether Anadarko will agree to search all user-generated active files from the computers of the 108 custodians it has identified as relevant.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

July 11, 2011
Page 2

### B.       Text Messages and Instant Messages

During Mr. Kellingray's deposition, Deb Kuchler asked BP to produce text messages and instant messages. This request occurred well after both BP and Anadarko had identified text and instant messages as not reasonably accessible. BP has produced over 1,000 text messages and instant messages in response to discovery requests or as part of a deponent's custodial file. But BP has not located a single text message or instant message produced by Anadarko. It is not plausible to suggest that no Anadarko employee sent a single relevant text message or instant message. Having received Deb Kuchler's request that BP produce text messages and instant messages, BP now requests that Anadarko produce text messages and instant messages.

### C.       Metadata Issues

In PTO No. 16, the Court ordered the parties provide custodian metadata with produced documents. As of our prior meet and confer, Anadarko's metadata listed the following custodians:

> Anadarko_DOI
> Anadarko_DWH Search
> Anadarko_MDLRFP1
> Anadarko_Omnibus_Review
> Foster, Steve
> O'Donnell, Alan
> Quitzau, Bob
> Seiler, Nancy

This custodial information is deficient. As an initial matter, please provide an explanation for what it means for the "custodian" for a document to be either "Anadarko_DOI," "Anadarko_DWH Search," "Anadarko_MDLRFP1," or "Anadarko_Omnibus_Review."

Second, for the 108 custodians that Anadarko has identified as relevant, please provide the relevant custodial information for each document that Anadarko has produced. For example, if a document associated with "Anadarko_DWH Search" also can be found on the computer of one or more of the 108 custodians that Anadarko has determined to be relevant, please indicate each such custodian in the metadata for each such document.

July 11, 2011
Page 3

### D.  Production of Board Minutes

We have not located a full set of Board minutes in Anadarko's production.  Please confirm whether Anadarko has completed its production of Board minutes.  If Anadarko has not produced these documents, please do so.

### E.  Production of Documents From the Files of Anadarko CEO James Hackett

Based on the metadata, it appears that Anadarko has not produced relevant documents from the files of CEO James Hackett.  During our call, you did not know whether Anadarko had produced documents from Mr. Hackett's files.  Please confirm whether Anadarko has completed its production of documents from Mr. Hackett's files.  If Anadarko has not produced these documents, please do so.

### F.  Production of Files From Home Shares

BP has produced certain documents from custodians' home shares that were responsive to the negotiated search terms.  During our call, you stated that you did not know whether Anadarko had produced documents from home shares.  Please confirm.  If Anadarko has not produced files from the home shares of the custodians Anadarko has identified as relevant, please do so.

### G.  Bates Range Gaps

Anadarko's production includes over 6,000 distinct Bates range gaps.  Examples of these gaps include, but are not limited to, those identified in the "AnadarkoGaps" text file in Attachment A.

Please confirm the Bates range gaps identified in Attachment A are intentional.  If these gaps are not intentional, please produce the documents corresponding to these Bates range gaps.

### H.  Blank Text Files

According to PTO No. 16, Anadarko must produce OCR text files for all hard copy documents and extracted text files for all electronic documents.  (PTO No. 16, Paragraph 12.)  Anadarko's production, however, includes a number of documents for which text should have been rendered, but blank text files were provided.  Examples of this include, but are not limited to, those files listed in Attachment A.

Please provide text files for all documents and a revised load file.

July 11, 2011
Page 4


**I.      Missing Native Files**

According to PTO No. 16, Anadarko must produce Excel, PowerPoint, and other files in native format.  (PTO No. 16, Paragraph 2(b)(i)-(ii).)  Anadarko's production contains Excel, PowerPoint and WAV files; however, some of these were not produced in native format. Examples of this include, but are not limited to, those files listed in Attachment A.

Please provide native files for all Excel and PowerPoint documents and a revised load file

**J.      Text File Naming Issues**

Anadarko's production includes text files for 17,046 documents produced with "_CONFIDENTIAL" suffixed to the filename.  This suffix and the lack of a relative path to corresponding text files create difficulty in loading the searchable text into document review databases.  Additionally, Anadarko's production includes several text files that do not reflect the Bates number or confidentiality designation within the document.  Examples of this include, but are not limited to, those files listed in Attachment A.

Please provide Confidential designations in either a coded field in a revised DAT file or a text file listing each Beginning Bates number of the confidential document.

**K.      Corrupt Image Files and Formatting Issues**

Anadarko's production includes corrupt TIFF documents which cannot be opened. Examples of this include, but are not limited to, those files listed in Attachment A.  Please provide non-corrupted replacement files and a revised load file.

Additionally, the DAT files for all Anadarko productions to date have been formatted with non-standard Concordance delimiters.  The expected delimiters in a DAT file are "þ" and "".  However the DAT files provided contained delimiters "^" and "|".  For future productions, please use standard Concordance delimiters.

Finally, PTO No. 16 requires Anadarko to produce load files that are compatible with document management software such as Concordance.  However, Bates range ANA-MDL-000030959 – ANA-MDL-000030965 consists of individual zip files each containing multiple folders and electronic files.  This production range cannot be loaded into any document review tool.   Please reproduce this production range with individual Bates numbers for each file and with a revised load file.

July 11, 2011
Page 5

## II.      Other Questions Regarding Anadarko's Collection and Production Process

### A.      Search Terms

During our call, you indicated that Anadarko has run search terms as part of its production process.  These search terms have not been disclosed.  Please let us know what search terms Anadarko has run.

### B.      Custodians

You stated that Anadarko had identified 108 potentially relevant custodians.  Please identify these custodians.  You also stated that 54 custodians had identified relevant non-email documents.  Please identify these 54 custodians.

## III.     Anadarko's Letter of July 6 and E-mail of June 27

### A.      Inaccuracies In Anadarko's Letter of July 6 and E-mail of June 27

Your letter of July 6 and e-mail of June 27 contain several inaccuracies.  While it would not be productive to address all of them (and the fact that we do not address all of the misstatements in those communications does not mean that we agree with them), some of the more significant inaccuracies them are discussed below:

> **i.      From Anadarko's July 6 letter:  "Consistent with normal discovery practice, BP should compile the appropriate files to search, and run the necessary searches, to be able to state that it has identified all of the potentially discovery documents and produce those which it has agreed to produce."**

This statement is hard to reconcile with the fact that Anadarko did not even propose search terms for BP to run until July 6, 2011.  We cannot understand how Anadarko expects BP to already be able to certify that it already produced all documents responsive to search criteria that Anadarko only has just proposed on July 6, particularly given that (as discussed below) Anadarko's search term proposal is deficient.

Moreover, in light of the significant issues with Anadarko's collection and production procedures identified in Part  I above, we think it is unlikely that Anadarko is "able to state that it has identified all of the potentially discovery documents and produced those which it has agreed to produce."  However, if Anadarko is prepared to certify that it has identified and produced all of the potentially discovery documents and produced those which it has agreed to produce, please let us know.

July 11, 2011
Page 6


### ii.      BP's "Undertakings to Produce Documents"

In your letter of July 6, you state that "you and your colleagues explained that the Anadarko parties cannot rely on the undertakings BP has made - in response to the Anadarko parties' discovery requests - to produce specific documents or categories of documents."  This is untrue.  Of course, BP's "undertakings" to make reasonable efforts to produce documents were made in light of BP's General Objection No. 14, which states that:

> To the extent that the BP Defendants respond that they will search for and produce responsive documents, *the BP Defendants are only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request*.[1]  The BP Defendants are not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of their tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

BP's undertakings to make reasonable efforts to produce documents were also made in light of the Court's prior order that "[t]he parties will produce potentially-relevant ESI in their possession according to the agreed search terms, custodians, and date ranges."   A similar approach also seems to have been taken in the case of Anadarko's production, for which it appears that Anadarko has used an undisclosed set of search terms.

### iii.      From Anadarko's July 1 letter:  "Rather, you have advised us that, if we want to know whether BP actually has produced or will produce the documents that it expressly agreed to produce in its specific responses to the Anadarko parties' discovery requests, we should do two things:  (i) analyze the search terms that BP crafted some time ago to search for documents responsive to the plaintiffs' discovery

---

[1]      As I explained during our meet and confer on June 24, a search-term approach would not be appropriate where, for example, a document request seeks a specific document.   In such circumstances, BP would "conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a request as maintained in the ordinary course of business."

July 11, 2011
Page 7

**requests (the "Plaintiffs' Discovery Specific Search Terms") and (ii) review the documents BP already has produced."**

We have never advised you of this, and this statement is incorrect on multiple levels.

First, BP did not "craft" search terms. A significant majority of the search terms were crafted by the PSC. And, as we have explained before, BP then made the PSC-crafted search terms available to other parties, including Anadarko, for comments on multiple occasions beginning in February. But Anadarko provided no comments until July.

Second, your assertion that the prior search terms are the "Plaintiffs' Discovery Specific Search Terms" is incorrect. These search terms also capture many documents responsive to Anadarko's document requests. Indeed, on April 21, 2011, BP invited Anadarko to make modifications to the search terms if Anadarko believed those modifications would make the search terms better tailored to Anadarko's requests (as opposed to the PSC's requests). BP stated:

> Finally, as discussed above, no party has provided BP with comments to the global search criteria circulated on March 29 and April 4, respectively. However, to the extent that any party seeks additional documents from BP that the party believes may not be covered by the search terms, BP respectfully requests that they directly propose modifications to the global search terms, instead of proposing a series of one-off requests. This will ensure more efficient processing of those requests, given the search term mechanisms that have already been put in place.

Anadarko did not respond with search term proposals until July 6.

Third, the above quote from your letter lists a "i" and a "ii," but it omits a third court-ordered method for Anadarko to obtain documents responsive to its search terms - namely, for the parties to negotiate "agreed search terms, custodians, and date ranges." Notwithstanding BP's invitations to do so, Anadarko declined until July 2011.

On our call of July 1, Anadarko's representatives did not know whether Anadarko had completed its review of BP's production. Please let us know. If Anadarko has completed its review of BP's production only through documents produced on a certain date, please let us know what that date is.

July 11, 2011
Page 8

> **iv.** **From Anadarko's June 27 E-mail: "Your response left me doubtful that BP either has conducted such a separate [responsiveness] review with the Anadarko parties' requests in mind or intends to do so, but you said that you but would check and get back to me."**

To the contrary, on our June 24 call, we advised you that BP's responsiveness review is "broad." BP does not intend to withhold as nonresponsive documents that hit on search terms responsive to Anadarko's requests (with the exception of documents that BP has objected to producing).

> **B.** **Search Criteria Proposed In Your Letter of July 6.**

As Emily recognized in our call of July 1, it will take some time for BP to fully analyze and digest these search criteria. However, we have begun in good faith to analyze the search criteria proposed in your letter of July 6. We have some initial observations.

> **i.** **Anadarko's Failure to Propose Custodians.**

PTO No. 16 provides that "[t]he parties will produce potentially-relevant ESI in their possession according to the agreed search terms, *custodians*, and date ranges." Anadarko's search-term proposal is silent on custodians. This leads Anadarko's initial search proposal to be vastly overbroad. Please propose custodians as required by PTO No. 16.

To the extent your letter suggests that it is solely BP's burden to identify relevant custodians, you are incorrect on several levels.

First, when BP was negotiating search criteria with the PSC, the PSC argued that BP was responsible for identifying custodians. The issued was thoroughly briefed and orally argued before Magistrate Judge Shushan. Magistrate Judge Shushan ordered the PSC to identify any additional custodians that the PSC believed were relevant, as a foundation for running search criteria. Those custodians are reflected in the search criteria that BP has provided to Anadarko multiple times. Thus, to the extent your letter suggests that it is solely BP's burden to identify relevant custodians, that argument has already been addressed and rejected by the Court.

Second, like the PSC, Anadarko has a wealth of data to determine which custodians are relevant, including: (i) the custodians included in the search terms BP negotiated with the PSC and the United States; (ii) the documents BP has produced to date; (iii) the metadata BP has produced to date, including over 700 potential custodians, as well as numerous metadata fields including "custodian," "to," "from," "cc," *etc.*; and (iv) the depositions taken to date. In fact,

July 11, 2011
Page 9

Anadarko has much more information than the PSC had many months ago, when the Court ordered the PSC to identify any additional custodians.

Third, the identification of custodians by the requesting party is consistent with past practice in this case. When the PSC and BP were negotiating search terms, the PSC was required to propose custodians to BP (as discussed above), for each RFP propounded by the PSC. Similarly, when BP negotiated search terms for its requests to the United States and the States, BP proposed custodians to both. Anadarko provides no justification for departing from this well-established practice.

Fourth, like Anadarko, the United States also served document requests on BP. However, unlike Anadarko, the United States was largely satisfied with the existing search terms (initially negotiated between the PSC and BP), for the purposes of BP's responses to the United States' requests. Also unlike Anadarko, the United States proposed only minor modifications to the search terms negotiated by BP and the United States. In contrast to the United States, Anadarko has proposed custodian modifications that are unreasonable and unduly burdensome.

Fifth, to the extent that Anadarko is suggesting that BP run search terms across all of the 700-plus individual and non-individual custodians from whom BP has produced documents to date in the MDL, without Anadarko analyzing which custodians are relevant to which search terms, that request is both extremely overbroad and unreasonable. Given that Anadarko has apparently only produced documents from 8 custodians (as discussed above), it is unreasonable for Anadarko to ask BP to run search terms against 700-plus custodians. This is particularly true where, as here, many of the custodians could have documents that hit on the search terms but do not have relevant documents

As just one example, RFPs 10, 23, 24, 25, 43, 49, 50, 51, 53, 61, 63, 64, 65, 66, 67, 68, 95, and 105 all call for pre-incident documents that relate to the Macondo well or GoM drilling more generally. Numerous BP custodians had no role in GoM deepwater drilling (and in many cases no role with GoM or drilling at all) prior to April 20, 2010. Doing just a few sample searches on just these custodians, RFP 25 pulled in documents relating to work in Wyoming, RFP 50 pulled in documents relating to non-GoM natural gas production, and RFP 95 pulled in documents relating to Angolan and Arctic operations.

Sixth, although BP is still running the numbers, it is safe to say that running the search terms against the 700-plus custodians from whom BP has produced from to date, and producing the resultant documents, would take BP many months, and cost many millions of dollars. If forced to run such an unfocused search, BP would seek reimbursement of its costs and fees from Anadarko.

July 11, 2011
Page 10


Finally, as I pointed out on our July 1 call, BP wishes that Anadarko had proposed these search terms much sooner (such as when BP circulated search terms in February and April), and BP reserves all rights with respect to the tardiness of Anadarko's proposed search terms. Nonetheless, if Anadarko substantially narrows its search-term approach and provides a reasonable list of custodians for each RFP, BP is willing to work with Anadarko to achieve a mutually agreeable solution.  BP requests that Anadarko identify custodians for each RFP on the chart you provided on July 6.

As a way of achieving a solution, BP notes that the PSC has already done a good deal of the work for Anadarko, by proposing custodians for each of the RFPs based on PSC RFPs, in the chart you sent on July 6.[2]  The parties should agree on those PSC-proposed custodians for these PSC requests,[3] so that BP can begin running Anadarko's proposed modified search terms without further delay.[4]

We look forward to continuing to work with you regarding the resolution of the above issues.

Sincerely,

__/s/__Mark Nomellini_____

Mark Nomellini

---

[2]    Your letter states that "the search terms contained in the attached chart need not and should not be run verbatim where they would need to be modified to be made compliant with BP's search parameters in order to yield all documents responsive to document requests.  They should be modified to comply with other search parameters."  To the extent that Anadarko has reasonable modifications to make on a timely basis, BP will entertain them.  But it is not BP's obligation to modify Anadarko's search parameters so that they yield "all documents responsive to document requests."

[3]    In terms of start dates for the searches, we propose to use the dates negotiated and discussed with the PSC and the Court.  In terms of end dates for RFPs that seek documents after April 20, 2010, the Court at the July 8, 2011 conference suggested September 19, 2011 as a search-term end date in a related discussion

[4]    Unless you have further comments, we will also run the searches identified in my e-mail to Sandra Franco of June 12, as modified by Mr. Beffa's subsequent communication to you.  For those searches, instead of searching for "Anadarko.com," we will simply search for "Anadarko" in the to/from/cc/bcc field.

# EXHIBIT L

**Hedgpeth, Tiffany**

| | |
|---|---|
| **From:** | Hedgpeth, Tiffany |
| **Sent:** | Friday, August 19, 2011 12:06 PM |
| **To:** | 'Beffa, Darin T.'; Nomellini, Mark J. |
| **Cc:** | Solomont, Charles L.; Saunders, Daniel A.; Couch, Rebecca B.; Kirby, Ky E.; Fitch, Warren Anthony |
| **Subject:** | Anadarko/BP Discovery |

Darin and Mark -

In follow-up to our discussions of yesterday, Anadarko is willing to search the hard drives of Hackett, Hollek, and O'Donnell to see if there are any responsive documents that were not already captured by Anadarko.  We understand that, provided this search does not turn up a significant number of documents, BP will not pursue its objections to Anadarko's collection process.  With regard to BP's request that Anadarko produce certain Kerr McGee documents, Anadarko does not believe that it is required to produce Kerr McGee documents as part of party discovery.  Please let us know if BP intends to file a motion to compel the Kerr McGee documents or anything else.

Also, we are still working on obtaining an answer to your question about why custodian metadata information is lost when information is ingested into Evault as well as the number of follow-up interviews that were performed as part of the collection process.  Unfortunately, the people who we need to speak to may not be available until early next week.  We will provide you an update as to the status of our efforts to obtain the requested information early Monday.  In the meantime, as we noted yesterday, Anadarko would be happy to use its best efforts to track down custodial information for specific documents that BP may identify.

Finally, please let us know when we will hear from you on the issues about which Carl emailed you yesterday and the proposal we made regarding providing one another information in response to reasonable questions as to the basis for redactions or privilege assertions on specific documents.

Thanks and enjoy your weekend!

1