# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California  90071

Martin Boles
To Call Writer Directly:
(213) 680-8428
martin.boles@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

August 31, 2011

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B345
New Orleans, LA  70130

> Re:   BP's Opposition to Anadarko's Motion to Compel BP Discovery
> Responses in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the*
> *Gulf of Mexico, on April 20, 2010*, MDL No. 2179

Dear Judge Shushan:

Anadarko's motion to compel challenges certain BP responses to Anadarko Petroleum
Corp.'s ("APC") requests for admission and interrogatories.  But Anadarko's various complaints
are unsupported by authority, belied by an actual review of BP's responses, and contrary to
common sense.  Ultimately, Anadarko is simply unhappy that BP did not admit its requests.  But
unfortunately for Anadarko, BP has an obligation to answer discovery truthfully—and that is
precisely what BP did.  Each of Anadarko's challenges should be denied for the reasons below.

## I.      Anadarko Failed to Raise Issues with BP's RFA Responses in a Timely Manner.

As an initial matter, Anadarko failed to raise its complaints about BP's RFA responses
within the time prescribed by the Court.  BP served its RFA responses on May 27, 2011, at the
same time it served responses to five sets of Anadarko interrogatories and requests for
production.  Anadarko requested a meet-and-confer on the interrogatories and requests for
production on June 9, but did not suggest BP's RFA responses were improper.  (Ex. A (June 9,
2011 Letter from C. Solomont to T. Duffy & A. Langan).)  Anadarko identified additional topics
for the meet-and-confer on June 10, but again did not take issue with BP's RFA responses.  (Ex.
B (June 10, 2011 Letter from C. Solomont to T. Duffy & A. Langan).)  Anadarko sent two more
letters on July 6 and July 14, and still did not take issue with BP's RFA responses.  (Exs. C (July
6, 2011 Letter from C. Solomont to M. Nomellini), D (July 14, 2011 Letter from C. Solomont to
D. Beffa).)

Chicago      Hong Kong      London      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 2

The deadline for motions to compel for phase 1 discovery was originally August 15. That deadline was initially extended to August 22 so that the parties could try to work out remaining differences.  BP and Anadarko had countless conference calls before August 22 in attempting to resolve discovery disputes.  Yet never once did Anadarko raise any issue with BP's RFA responses.[1]  On the morning of August 22, BP and Anadarko requested, and were granted, a brief extension of the deadline "with the hope being that the remaining issues can be resolved within that time."  (Ex. E (Aug. 22, 2011 E-mail from A. Langan to Shushan, M.J.).)  But instead of taking the opportunity to narrow disputes, later that day for the first time Anadarko requested that BP change its RFA responses—nearly three months after BP served them.  (Ex. F Aug. 22, 2011 E-mail from C. Solomont to D. Beffa).)  Anadarko should not be allowed to raise this new discovery dispute so late in the game.

## II.    Anadarko's Challenges to Specific RFA Responses Are Baseless.

### A.    BP Properly Stated that, After a Reasonable Inquiry, It Lacked the Ability to Admit RFAs 5–7, 12, 15–19, and 22–24.

The vast majority of Anadarko's requests for admission demanded that BP admit a negative—that something did *not* happen.  Most of those requests involved communications between BP and Anadarko.  BP undertook an investigation of Anadarko's requests, and for RFAs 5–7, 12, 15–19, and 22–24, BP responded substantially as follows:

> [H]aving conducted a reasonable inquiry, the BP Parties have not identified any communication from the BP Parties to Anadarko before April 21, 2010, conveying [certain information].  Notwithstanding this reasonable inquiry, the information the BP Parties know or can readily obtain is insufficient to enable them to admit or deny that the information was not conveyed by the BP Parties to Anadarko.  There were numerous informal communications between technical personnel at BP and Anadarko, and it is possible that someone working for one of the BP Parties communicated with someone working for Anadarko on this subject.

(Anadarko Ex. B at 4–6, 9, 11–13, 15–17.)  These responses were appropriate under the Federal Rules and, indeed, go beyond what Federal Rule of Civil Procedure 36 requires.  They acknowledge that BP has not found communications on the subject of Anadarko's inquiry, which

---

[1]    To be sure, Anadarko requested that BP provide *more information about* its RFA responses in the context of Interrogatory No. 30.  But it never, before to August 22, requested *changes to* those responses.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 3

is the substantive outcome that Anadarko is clearly trying to discover.  And they satisfy Rule 36 by explaining why a reasonable inquiry could not permit a blanket admission of a negative—lack of *any* communication on a subject—in a context where it is undisputed that there were many informal communications between BP and Anadarko engineers and other technical personnel.

Anadarko "submits" that "an admission is the only appropriate response" if a reasonable inquiry does not turn up conclusive evidence one way or the other.  (Anadarko Letter Br. at 4.) But this contention is unsupported by any citation to authority and flies in the face of Federal Rule 36, which explicitly allows BP to "assert lack of knowledge or information as a reason for failing to admit or deny . . . if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4); *see Theriot v. Parish of Jefferson*, 1997 WL 102489, at *1 (E.D. La. Mar. 6, 1997) (stating that "a statement that the contention cannot honestly be either admitted or denied" is a proper RFA response).  BP did just that.  BP stated that it had "conducted a reasonable inquiry," and that "the information the BP Parties know or can readily obtain is insufficient to enable them to admit or deny" the request.  (Anadarko Ex. B.)

BP followed the letter and spirit of Rule 36 in all respects.  Anadarko cites no law, rule, or case that supports its contention, and it is simply wrong about what is required in an RFA response.  Requests for admission are supposed to confirm undisputed facts; they are not designed to force admissions regarding contested issues.  *See 7 Moore's Federal Practice* § 26.01[1] (3d ed. 2011) ("While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, Rule 36 was not designed for this purpose.  Instead, requests for admission are used to establish admission of facts about which there is no real dispute.").  "[T]he function of the Court . . . under Rule 36 is to interpret and determine the sufficiency of the defendant's responses, rather than to attempt by order to coerce what the court might determine to be proper responses. . . . [T]he purpose of request for admissions is to narrow issues for trial not argue the merits of ones' [sic] case in full." *Theriot*, 1997 WL 102489, at *1 (internal quotation marks omitted).

In fact, BP's responses go far beyond what is required by Rule 36.  BP could have confined its responses to a statement that it had conducted a reasonable inquiry and still did not have sufficient information to admit or deny.  But BP did not stop there.  Instead, BP went an extra step to state the results of its investigation: "the BP Parties have not identified any communication from the BP Parties to Anadarko before April 21, 2010, conveying [certain information]."  (Anadarko Ex. B.)  BP's responses went beyond what was required in an attempt to provide good faith answers to the substance of Anadarko's requests.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 4

These RFAs provide the quintessential example of when a reasonable inquiry did not—and the most exhaustive possible inquiry could not—permit BP to admit or deny the requests. Notably, Anadarko does not even attempt to take issue with the reasonableness of BP's inquiry. Nor could it. As BP has explained to Anadarko throughout the meet-and-confer process, BP's inquiry included searching for documents and talking to relevant witnesses. The scope of this case, however, prevents BP from conclusively establishing that that something *did not* happen. Already millions of pages of documents have been produced, and 81 BP employees have been deposed. Of the many factors preventing BP from conclusively establishing the *absence of any* communication, four stand out:

- BP identified several employees who may have had communications with Anadarko, but who have invoked their Fifth Amendment rights;

- Even those employees whom BP was able to speak to could not recall the details of every communication they ever had with Anadarko;

- With the number of potential witnesses, it is impossible to say that BP's inquiry identified each and every witness who may have had conversations with Anadarko; and

- The document production protocol approved by the Court involved the use of search terms and custodians, which—while robust—leaves the possibility that some communications have not been identified or produced in the case.

Thus, BP "conducted a reasonable inquiry" and "the information the BP Parties know or can readily obtain is insufficient to enable them to admit or deny" Anadarko's requests. BP's RFA responses are truthful, reasonable, and perfectly appropriate under Rule 36.

Anadarko says that BP's responses are prejudicial because Anadarko "was not allowed to include . . . a [30(b)(6)] category pertaining to all of BP's communications with Anadarko[.]" (Anadarko Letter Br. at 6.) But even if the Court had permitted such a topic, BP's answers would have been, at best, the same as its RFA responses.[2]  BP's corporate representative could have, at most, testified that he engaged in a reasonable inquiry and did not identify any communications on a particular subject; but he could not have testified that there were *no* such communications for all the reasons discussed above. Thus, Anadarko's argument ends up illustrating the validity and reasonableness of BP's approach to its RFA responses.

---

[2]   In fact, BP's answers would likely have been much worse because the proposed topic failed to identify particular topics with any specificity.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 5

As the Court is well aware, BP's review and production of documents is ongoing, depositions are not yet complete, and the massive investigation into the *Deepwater Horizon* incident continues. BP does not know whether these ongoing efforts will reveal additional communications with Anadarko, but Federal Rule 36 cannot be used to forever foreclose BP from turning up evidence later during discovery or at trial. BP engaged in a reasonable investigation of Anadarko's RFAs, and provided the results of that investigation in its responses. That is more than is required under Rule 36. Anadarko's motion would have the Court force BP to remove entirely truthful portions of its responses that are necessary for completeness. The flaw here is in Anadarko's requests, not in BP's responses. Anadarko has asked BP to prove a negative—that certain communications never took place—and did so despite a record that reveals numerous informal communications during drilling of the Macondo Well. Anadarko's insistence on an absolute admission is unreasonable under these circumstances.

### B.    RFA 9 Is Misleading, and BP's Response to It Is Appropriate.

In Request for Admission No. 9, Anadarko asked BP to admit that it did not "inform APC of [its] decision not to spot heavy mud in the rat hole[.]" Anadarko takes separate issue with BP's response to RFA 9 because BP—in addition to a response similar to the one discussed in Part II.A above—stated that, "[n]one of [BP's communications with Anadarko] gave any indication that heavy mud would be spotted, so Anadarko had no reason to believe that heavy mud would be spotted." (Anadarko Ex. B at 7.) As an initial matter, the arguments in Part II.A above apply to RFA 9: BP was asked to admit a negative, engaged in a reasonable inquiry about that negative, and while it stated that it found no evidence contradicting the negative, its investigation was not (and could not be) conclusive. BP's response is perfectly appropriate.

And compounding the problems inherent in the other RFAs, RFA 9 misleadingly asks BP to admit a *double* negative. By asking BP to admit that Anadarko was *not* informed "of [BP's] decision *not* to spot heavy mud in the rat hole," an admission of RFA 9 could be read to imply either that BP led Anadarko to expect that heavy mud would be spotted in the rat hole, or that spotting heavy mud in the rat hole is the expected default course of conduct. BP's inclusion of additional, truthful information in order to prevent its response from being misleading is entirely appropriate, and provides no basis for Anadarko's motion to compel. Indeed, Rule 36 explicitly allows BP to "qualify an answer" "when good faith requires." Fed. R. Civ. P. 36(a)(4). Good faith required BP to qualify its answer to RFA 9, and BP should not be required to give a less truthful response or be put in a position where it is defenseless at trial against attempts to misconstrue a forced blanket admission to a loaded proposition.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 6

### C.     BP Properly Admitted Parts of RFA 30, and Denied the Remainder.

Anadarko's challenge regarding RFA 30 is puzzling.  The RFA asks BP to "admit that
YOU had no requirement that APC monitor well activity on INSITE Anywhere[.]"  And
Anadarko concedes that "BP . . . expressly admitted the substance of the response[.]"  (Anadarko
Letter Br. at 4.)  Indeed, BP "admit[ted] that the Macondo Prospect Offshore Deepwater
Operating Agreement does not impose an obligation on Anadarko to monitor the information
that BP made available to Anadarko on INSITEAnywhere," and "further admit[ted] that [BP
does] not have any internal policies that would impose obligations on Anadarko employees to
monitor the information that BP made available to Anadarko on INSITEAnywhere."  (Anadarko
Ex. B at 20.)

Yet, despite conceding that BP admitted the "substance of the response," Anadarko takes
issue with BP's final sentence, which "den[ies] this request except to the extent expressly
admitted herein."  Anadarko does not, however, explain what its concern is.  If BP has indeed
admitted the substance of Anadarko's request (as Anadarko concedes), then BP's response is
complete and no additional response is necessary.  But if Anadarko is attempting—through
vague and ambiguous language in RFA 30—to trick BP into admitting some yet unexplained
additional fact, that is *precisely* the reason BP included its denial "except to the extent expressly
admitted."  The wording of Anadarko's RFA provides ample reason to fear that a response
without the final clarification might be misused at trial.  An aggressive advocate might otherwise
contend that "BP admitted that Anadarko is not required to monitor the well."  Anadarko can try
to prove that proposition, but BP is entitled to limit an RFA to clarify that it is only admitting, for
instance, what *BP* requires.  Anadarko admits that BP's response makes an explicit admission of
the substance of the RFA.  An addendum that lays a marker preventing any later exaggeration is
not prohibited by Rule 36 and Anadarko cites no authority to suggest otherwise.

### D.     BP Properly Denied that Anadarko "Did Not Participate" in the Macondo
Well.

Anadarko complains that BP denied in part RFAs 2 and 21, but those denials are the
result of Anadarko's imprecise choice of words.  RFA 2 asks BP to "admit that APC did not
participate in developing the cement design for the MACONDO WELL production casing."
(Anadarko Ex. B at 2.)  And RFA 21 asks BP to "admit that APC was not involved in developing
any of the temporary abandonment plans for the MACONDO WELL[.]"  (*Id.* at 14.)

BP's responses partially admitted the RFAs.  With respect to RFA 2, BP "admit[ted] that
the BP Parties are not aware of any Anadarko personnel who worked on the design of the cement
used for the Macondo Well production casing."  (*Id.* at 2.)  And for RFA 21, BP "admit[ted] that

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 7

they are not aware of any Anadarko personnel who worked on the development of the temporary abandonment plans for the Macondo Well." (*Id.* at 14–15.)

Any further admission, however, would have been inaccurate and misleading due to Anadarko's poor choice of words. For example, with respect to RFA 2, Anadarko chose to phrase its request in terms of its "participat[ion]." But Anadarko *was* a "Participating Party" as that term is defined in the Joint Operating Agreement for the Macondo Well. Thus, to try to force BP to make a blanket, unqualified admission that Anadarko did not "participate" in certain aspects of the Macondo Well operations would be false under at least one important, specific, and defined meaning of that word.

Anadarko was similarly imprecise in choosing words for RFA 21, where it asked BP to admit that Anadarko was "not involved" in certain aspects of Macondo Well operations. As with RFA 2, BP could not honestly make the request under every definition of the ambiguous word "involved." Instead, BP "fairly respond[ed] to the substance of the matter," as required by Rule 36, with a partial admission. *See* Fed. R. Civ. P. 36(a)(4). BP admitted it was "not aware of any Anadarko personnel who worked on the development of the temporary abandonment plans for the Macondo Well." (Anadarko Ex. B at 14–15.) BP then included a reason why it could not admit the entire RFA as written.

BP's responses to these RFAs stand in stark contrast to Anadarko's own style of discovery responses. Anadarko denied requests for admission outright because of a single word or phrase that could be interpreted to make the request overbroad. For example, in its RFA 18, the United States asked Anadarko to, "[a]dmit that at least one Anadarko employee, consultant, or contractor was assigned to monitor drilling operations at the Macondo Well." (Ex. G (APC's Objections and Resps. to the U.S.'s 1st Set of Interrogs., Reqs. for Produc. of Docs., & Reqs. for Admis.) at 19–20.) Seizing upon a contorted interpretation of the word "monitor," Anadarko denied the request entirely based upon how it, "as Responding Party[,] understands the phrase 'monitor the drilling operations' . . . ." Anadarko further suggested that, "[a]s a non-operating partner, Responding Party did not engage in, evaluate, or oversee drilling or other operations[.]" (*Id.*) Anadarko's definition of "monitor" is, at best, one of many; and it is not the most obvious or common definition of the word. Yet there is no serious dispute that Anadarko had realtime access to well data, was provided daily drilling reports, and had drilling engineers and other technical personnel reviewing this data. Yet Anadarko's response gives no fair flavor of this truth. BP, in every RFA being attacked in this motion, provided a fair, direct, responsive, and clear statement that dealt with the basic substance of Anadarko's request. Anadarko's technical, outright denial falls well short of the responses BP provided.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 8

BP used good faith and common sense to admit RFAs 2 and 21 in part and deny them in part. Its answers are completely truthful and accurate, and there is no basis to compel further responses.

### E.   Contrary to Anadarko's Accusation, BP Provided the Reasons It Did Not Admit RFAs 25, 26, and 28.

With respect to three separate RFAs, Anadarko "submits that BP should be compelled either to provide an unqualified admission . . . or to substantiate fully, with specificity, . . . the bases for its denial of these three RFAs (as APC Int. 30 requests)." (Anadarko Letter Br. at 5–6.) But Anadarko's requests were false, BP properly denied them, and BP explained its denials in its responses.

As an initial matter APC Interrogatory 30 is objectionable. Because Anadarko's RFAs cover 31 separate topics, an interrogatory seeking the basis for their denial constitutes 31 separate interrogatories. *E.g.*, *Estate of Manship v. United States*, 232 F.R.D. 552, 557 (M.D. La. 2005). To the extent Anadarko expects Interrogatory 30 to compel information beyond what is required by RFA answers under Rule 36, it is unduly burdensome, and constitutes multiple interrogatories in excess of the number allowed by the Court. Indeed, when faced with a similar interrogatory from the U.S. Government, Anadarko treated the interrogatory as having a discreet subpart for each request for admission. (*See* Ex. G (APC's Objections and Resps. to the U.S.'s 1st Set of Interrogs., Reqs. for Produc. of Docs., & Reqs. for Admis.) at 8–25, 27–28, 30–32.)

In any event, BP's RFA responses provide the information that Anadarko seeks: the reasons for the denials. *See generally* Fed. R. Civ. P. 36(a)(4) (requiring "specific[] den[ials]"). RFA 25 asks BP to admit that "APC was not involved in the daily operations at the MACONDO WELL." This statement is false, so BP denied it. BP's response stated that there were numerous ways in which Anadarko was "involved in the daily operations," including that it "received daily reports and had access to real time data regarding drilling at the Macondo Well, communicated frequently with BP with questions and comments about the well, and signed the Authorizations for Expenditure." (Anadarko Ex. B at 17–18.) Anadarko does not even argue that BP's denial is improper. (*Cf.* Anadarko Letter Br. at 5 (asserting only that BP's denial of RFA 28 is improper).) Instead, it asks for additional reasons why the requested admission is false. But BP provided several examples demonstrating that Anadarko's request is false, and those examples provide a complete basis for denying the RFA. Anadarko has cited no authority—and BP has found none—suggesting that BP has an obligation to find more than one reason that an RFA is demonstrably false. *Cf. In re Katrina Canal Breaches*, 2007 WL 1959193, at *2 (E.D. La. June 27, 2007) ("[W]hen responding to requests for admissions, explanation generally is unnecessary . . . . Explanation is only required if the party cannot truthfully admit or deny.")

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 9

(quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447 (C.D. Cal. 1998))). RFAs are intended to identify disputed and undisputed issues for trial, not to discover facts. 7 *Moore's Federal Practice* § 26.01[1]. BP's response states the specific reason RFA 25 was denied, and BP did not have to search out other reasons why RFA 25 is false.[3]

Like RFA 25, RFA 26 is false. And like with RFA 25, BP denied RFA 26 and provided its reasoning therefor. Once again, Anadarko does not dispute that BP's denial is proper, and once again BP had no obligation to provide more than a single reason why the RFA is demonstrably false. BP's response to RFA 26 is sufficient.

Anadarko does take issue with BP's denial of RFA 28, but its challenge misses the mark. RFA 28 asked BP to "admit that YOU had sole responsibility to determine BP personnel issues with respect to the" Macondo Well. BP denied the RFA because it "did not have the authority to send" certain people to work on the *Deepwater Horizon*, and because it "cannot and did not control the identity of every service provider." (Anadarko Ex. B at 19.) Anadarko claims that legal restrictions on BP's personnel discretion do not justify denying that BP had "sole responsibility" for personnel issues at the Macondo Well. But Anadarko's argument misses an important part of BP's explanation: "BP cannot and did not control the identity of every service provider on the *Deepwater Horizon*." (*Id.*) As the Court knows, Transocean was the owner and operator of the *Deepwater Horizon* rig. BP did not have sole control over the Transocean personnel on the *Deepwater Horizon*, or over the personnel of other contractors. Anadarko's requested admission is, therefore, false. BP provides this explanation in its response.

## III.   Anadarko Has Failed to Describe What Additional Information It Wants in Response to APC Interrogatory Nos. 26 and 27.

Anadarko includes a section on BP's responses to APC Interrogatory Nos. 26 and 27 in its brief, but it does not specify what relief it seeks in addition to BP's RFA responses. Indeed, Anadarko appears to seek relief with respect to BP's RFA responses in the guise of discussing Interrogatories 26 and 27. (*See* Anadarko Letter Br. at 3 (citing BP Resps. to APC's RFA Nos. 5, 6, 7).) Nevertheless, to the extent Anadarko seeks more information through these interrogatories than BP provided in its RFA responses, its interrogatories are objectionable.

---

[3]   Likewise, even if Interrogatory 30 were not objectionable, BP provided the reasons RFA 25 was denied. Interrogatory 30 did not request that BP provide *other* reasons RFA 50 *might* be denied, it asked for the facts supporting the denial. And if Anadarko had served an interrogatory requesting *all* ways in which Anadarko was "involved in daily operations,"—it did not—that interrogatory would have been vague and ambiguous, overly broad, and unduly burdensome.

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
August 31, 2011
Page 10

Anadarko's interrogatories are boundless, and therefore unduly burdensome. Interrogatory 26 demands that BP "Identify *each* communication [BP's] employees had with Anadarko, on or before April 21, 2010, relating to operations on or at the *Deepwater Horizon* in connection with the Macondo Well." (Anadarko Ex. A at 1–2 (emphasis added).) And Interrogatory 27 similarly demands that BP "Describe in detail *any and all information* provided either orally or in writing . . . on or before April 21, 2010, regarding operations on or at the *Deepwater Horizon* in connection with the Macondo Well." (*Id.* at 2 (emphasis added).) Such interrogatories are improper. *See PIC Group, Inc. v. Landcoast Insulation, Inc.*, 2010 WL 4791710, at *5 (S.D. Miss. Nov. 18, 2010). "Any interrogatory which asks for all oral communications on a particular subject, necessarily requires interviews with all employees who might have had occasion to have a conversation relating to that topic. When the possibilities are as many as here, this is an extraordinarily burdensome request." *Getty Oil Co. v. Dep't of Energy*, 1979 WL 1000, at *2 (D. Del. June 1, 1979).

In response to these interrogatories, BP offered to produce the written communications about the Macondo Well that it could find through a reasonable search. But Anadarko's insistence that BP list every single oral communication between BP and Anadarko "in connection with the Macondo Well" was unreasonable, and not targeted at any relevant issue.

Anadarko attempted to get information on "any and all information provided either orally or in writing" to Anadarko through a 30(b)(6) deposition topic, but that topic was rejected by the court as unduly burdensome. Anadarko insinuates that the Court approved APC Interrogatory Nos. 26 and 27 when it rejected the 30(b)(6) topic (Anadarko Letter Br. at 6), but that is not the case. The Court did not give Anadarko carte blanche to ask objectionable interrogatories. Where Anadarko asked discovery questions targeted at a specific topic of communication, BP engaged in a reasonable investigation of those communications and provided Anadarko with a discovery response reporting the results. (*See supra* Part II.A.) But Anadarko's requests for "any and all" communications is overbroad and unduly burdensome, just like its proposed 30(b)(6) topic.

And Anadarko quickly recognized that these interrogatories were vastly overbroad. Anadarko attempted to fix them by enumerating—through correspondence—fourteen separate "specified topics" of communication. But these topics are not specified in the interrogatory itself. And if they had been, BP could have properly objected that the supposed single interrogatory actually consisted of at least fourteen discrete subparts.

In any event, Anadarko's "specified topics" appear to overlap with its requests for admission asking BP to admit that it had not communicated with Anadarko on particular subjects. As discussed above, BP's responses to Anadarko's RFAs were complete and truthful,

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 11

admitting that BP had not identified communications on those subjects after a reasonable inquiry, but also explaining why it could not make a blanket admission that none ever occurred. *See supra* Part II.A. BP is willing to supplement its responses to Interrogatories 26 and 27 to explicitly incorporate its RFA responses, but BP should not be required to provide additional information in response to these objectionable interrogatories.

## IV.    Anadarko's Requests for Admission and Interrogatories Are No Longer Relevant.

On August 25, Anadarko justified the need for its RFAs and interrogatories by citing to allegations lodged against it that Anadarko "was somehow provided information about issues that led to the blowout and thus bore a duty to prevent it." (Anadarko Letter Br. at 2 (citing 1st Am. B-1 Compl.; Ala. Compl.; La. Compl., Halliburton Cross-Claim).) The next day, however, the Court issued an Order as to Motions to Dismiss the B1 Master Complaint. In that Order, the Court held that, "[a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations," and dismissed "[a]ll general maritime negligence claims against Anadarko." (Dkt. 3830 at 28–29.)

Because the Court has dismissed the claims on which Anadarko stakes its argument of relevance, its motion to compel further responses should be denied.

## V.    Conclusion

In the end, Anadarko admits that its RFAs were "efforts to ascertain in discovery what, if any, evidence actually exists to support the various parties' allegations[.]" (Anadarko Letter Br. at 6.) But Anadarko misunderstands the purpose of RFAs: "While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, Rule 36 was not designed for this purpose. Instead, requests for admission are used to establish admission of facts about which there is no real dispute." 7 *Moore's Federal Practice* § 26.01[1]. Anadarko was trying to force RFAs to do a job they weren't designed for, and now is trying to force BP to make blanket admissions where the factual context shows a reasonable basis for residual uncertainty and justifies a qualified answer. Yet BP didn't stop there. This is not the typical case where a stonewalling respondent spews out objections and, when the smoke clears, there is no substance to give the requesting party elucidation. On the contrary, BP went straight to the heart of Anadarko's requests, and in every case admitted that, after a reasonable inquiry, it had

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 31, 2011
Page 12

not found the type of communication that Anadarko inquired about.  For the foregoing reasons,
Anadarko's Motion to Compel should be denied.

Sincerely,

Martin Boles

By Permission
of Martin Boles

cc:    Plaintiffs Liaison Counsel
       Defense Liaison Counsel
       Mike Underhill
       Hon. Attorney General Luther Strange
       Cory Maze
       Mike O'Keefe
       Carl Solomont
       Tony Fitch

# EXHIBIT A

**BINGHAM**

Charles L. Solomont
Direct Phone:  617.951.8996
carl.solomont @bingham.com

June 9, 2011

**Via Email and U.S. Mail**

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
andrew.langan@kirkland.com

Re:  **Meet and Confer Request as to the BP Parties' Responses
to Anadarko Petroleum Corporation's Second, Third and
Fourth Interrogatories and Requests for Production of
Documents/**

Dear Messrs. Duffy and Langan:

We write in connection with the BP Parties' Responses and Objections (the
"Responses") to Defendant Anadarko Petroleum Corporation's Second, Third,
and Fourth Interrogatories and Requests for Production of Documents (the
"Requests").   As detailed below, many of the responses of the BP Parties
(collectively, "BP") are incomplete and deficient under the Federal Rules of Civil
Procedure, the Case Management Order governing discovery in this matter, and
applicable case law.  There are also Responses with respect to which Anadarko
Petroleum Corporation ("APC") seeks to confirm its understanding of the
Responses and what will be produced.

More specifically, we request a "meet and confer" no later than June 16, 2011 to
discuss the following issues, as well as others that will be addressed under
separate cover.

I.      **GLOBAL ISSUES**

A.      APC disputes BP's contentions (i) that APC has served more than fifty
interrogatories by itself, and (ii) that, under the Case Management Order No. 1,
APC and Anadarko E&P Company ("AEP") together are only entitled to
propound fifty interrogatories between them.   APC has served only forty
interrogatories. BP refused to answer at least nine of them on the apparent ground
that, with subparts, the ones that BP did supposedly "answer" exceed fifty in

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

+1.617.951.8000
+1.617.951.8736
bingham.com

A/74310748.3

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 2

number. Most of the forty interrogatories, however, have no subparts and, in those that do have subparts, the subparts are discreet ("logically or factually subsumed within and necessarily related to the primary [interrogatory in] question." *see Estate of Manship v. United States*, 232 F.R.D. 552, 555 (M.D.La.2005)) and thus not countable as separate interrogatories under the Federal Rules. In all events, BP has provided substantive answers to only *thirteen* of the forty interrogatories (and, in two of those, BP did nothing more than incorporate its responses to other interrogatories). In thirteen other of BP's forty responses, BP provided no substantive response but rather undertook merely to search documents and produce documents. In other words, even though it essentially treated thirteen of the interrogatories as document requests for purposes of responding to them, BP somehow has counted them toward the fifty interrogatory limit (that Anadarko has not even come close to exceeding in any event). Further, BP provided ___no___ substantive response ___whatsoever, and did nothing other than object___, to the remaining fourteen of the forty interrogatories served by APC. In short, of the forty interrogatories served so far on BP by APC, BP has provided a substantive response other than merely producing documents to less than one-third of them. Putting aside the fact that APC has propounded fewer than fifty interrogatories (including subparts) in total, BP cannot in good faith rely upon the fifty interrogatory limit as a basis for refusing to answer interrogatories where it has substantively answered so few of the interrogatories in any event.

B.     BP's claim that APC and AEP should be considered one party for purposes of the number of interrogatories allotted to them is also meritless. There is no legal basis for the contention. APC and AEP are irrefutably separate entities. They had separate and distinct ownership interests in the lease for Mississippi Canyon Block 252. More importantly, they are separately named defendants. Case Management Order 1 - 10/19/10, subsection V.(D.) governing discovery, states: "Written discovery requests, and responses thereto, shall be made in accordance with the Federal Rules of Civil Procedure, except that the parties will be allowed to propound up to fifty (50) Interrogatories to each Defendant without leave of Court." (Emphasis added). Fed. R. Civ. P. 33(a)(1) states that "Unless otherwise stipulated or ordered by the court, **a party** may serve on **any other party** no more than 25 written interrogatories, including all discrete subparts." (Emphasis added). The plain language of Rule 33 indicates that the interrogatory limitation is per party, rather than per side. *See e.g., St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 289 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff."); *Madison v. Nesmith*, 2008 WL 619171, *3 (N.D.N.Y. Mar. 3, 2008) ("Under Rule 33,

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 3

plaintiff was entitled to serve up to 25 Interrogatories *on each of the three defendants.*" (emphasis added)).

Further, the case management order in particular entitles each party to propound up to fifty (50) interrogatories on each Defendant. Since APC and AEP are separate defendants, BP clearly could have served fifty interrogatories on each of APC and AEP. Indeed, the Plaintiffs did, in fact, serve separate sets of interrogatories on APC and AEP. With the Order permitting BP to propound up to fifty interrogatories on each of APC and AEP, it would make no sense to construe it to prohibit APC and AEP from each serving discovery of its own on BP, particularly where the Federal Rules permit each "party to serve [the maximum amount of interrogatories] on any other party." *Trevino v. ACB American, Inc.* 232 F.R.D. 612, 614 (N.D. Cal. 2006), ("[a]ccording to the Federal Rules, *each* plaintiff may serve each defendant with 25 interrogatories") (emph. in original); *Zamora v. D'Arrigo Bros. Co.* 2006 U.S. Dist. Lexis 21208 at *10 (N.D. Cal. 2006) ("According to the Federal Rules, *each* plaintiff may serve *each* defendant with 25 interrogatories. Because there are four named plaintiffs, they can serve a total of 100 interrogatories on defendant.").

C.     As some of the detailed comments below reflect, there seems to be an unnecessary disconnect between BP and APC regarding Requests that go to the issue of process safety. APC is concerned that BP's protestations that the term "process safety" is so vague or ambiguous or confusing that BP cannot fairly respond to the requests is disingenuous and motivated by a strategy of avoiding or delaying discovery on this central issue. Process safety is a concept that is well known and well developed in the petroleum industry and presumably within BP. Process safety is safety other than personal safety. It includes protocols and procedures and training and skills focused on, among other things, preventing catastrophic accidents. To the extent minor variations of this meaning of the term make it consistent with how BP uses and understands the term, APC would be content to have BP advise APC of BP's understanding of the meaning of process safety and to employ that meaning with respect to its Responses and the information it produces in response to the Requests.

D.     Numerous of BP's Responses limit documents that BP will produce to those related to the Gulf of Mexico or some smaller geographical area. We want to confirm that, by imposing this restriction, BP is not excluding from production documents that relate to or cover a geographical area inclusive of, but larger than, the Gulf of Mexico. For example, if there is a written policy responsive to one or more of the Requests that applies globally, including the Gulf of Mexico, APC's understanding is that BP will produce it. If there is a separate responsive policy

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 4

that covers only the Gulf of Mexico, BP will also produce that. If there is a policy
that has no applicability to any geographical area that includes some or all of the
Gulf of Mexico APC would not expect BP to produce it even if it is otherwise
responsive to one or more of the Requests,. Please confirm that we are on the
same page as to this issue.

E.     We would like confirmation that no information or documents have been
or will be withheld on the basis of BP's general objections or the specific
objections at the beginning of each interrogatory and document request. In other
words, APC seeks confirmation that, even though BP's responses to each
discovery request are made subject to such objections, BP has produced or will
produce all documents that is says it has produced or will produce in its response
to each request; and is not otherwise withholding responsive information based
upon such objections.

F.     In terms of the general objections of BP based upon the confidential or
proprietary nature of documents and information requested, we would like the
same confirmation as to the Responses addressed in this letter that you previously
provided with respect to BP's Responses and Objections to Defendant Anadarko
Petroleum Corporation's [First] Interrogatories and Requests for Production of
Documents ("APC's First Requests"). Specifically, please confirm that Pretrial
Order 13, "Order Protecting Confidentiality," satisfactorily addresses BP's
concerns about the production of confidential information and that, accordingly,
information and documents will not be withheld on the basis of confidentiality
concerns and will be produced in accordance with the provisions of PTO 13.

G.     Similarly, notwithstanding BP's general objections as to the time period
covered by the Requests, we assume and ask that you confirm that, at a minimum,
the agreement we reached with respect to the time period covered by BP's
responses to APC's First Requests will apply -- such that, except to the extent the
Requests seek information that covers periods only after, or both before and after,
April 20, 2010, the Responses will cover the period of April 20, 2005 through
April 20, 2010. With that said, there are some Requests for which APC will need
BP to search for earlier documents. We can discuss the issue when we meet and
confer. .

H.     BP objects to a number of requests on the ground that the Natural
Resource Trustees will not permit BP to disclose the information or documents
responsive to the requests. Absent a protective order, any agreement between BP
and the NRTs to keep documents confidential, however, does not insulate them
from discovery in this civil litigation. If BP has law indicating differently, please

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 5

share it.  Otherwise responsive documents should be produced irrespective of any obligation of BP to, or agreement with, the NRTs.

## II.   BP RESPONSES TO ANADARKO'S SECOND SET OF INTERROGATORIES AND DOCUMENTS REQUESTS

*Int. 26*:  This interrogatory asks BP to identify each communication that its employees had with APC on or before April 21, 2010 relating to operations on or at the DWH in connection with the MW.  In response, BP has agreed to search only for <u>written</u> communications that occurred between January 1, 2008 and April 21, 2010 and to produce responsive documents that BP identifies as a result of that search.  In its responses to APC's Requests for Admission, however, BP repeatedly claims that "[t]here were numerous *informal* communications between technical personnel at BP and Anadarko, and it is possible that someone from one of the BP Parties communicated with someone working for Anadarko on [numerous] subject[s]."  *See e.g.*, BP's Responses to APC RFA Nos. 5, 6, and 7. BP also claims in its responses to APC's Requests for Admission that "Anadarko communicated frequently with BP with questions and comments about the well." *See e.g., id.* at No. 25.  In other words, BP claims that APC was kept informed "informally" and supposedly orally about, among other things, material decisions that BP made that contributed to the incident at issue (a claim that APC disputes). APC is obviously entitled to discovery concerning all responsive BP disclosures to APC -- formal and informal, written and oral.  BP's undertaking with respect to this interrogatory, however, leaves any oral communications undisclosed.  BP must supplement its response either (a) to identify each responsive oral communication, when it occurred, the parties to it, and its substance, or (b) to concede that there were no such oral communications.  Also, since, in BP's response to Interrogatory No. 28, BP answered that it would have provided APC any and all non-proprietary information that APC requested, BP needs to disclose whether APC requested information that BP did not provide to APC on the ground that it was proprietary.

*Int. 27*:  This interrogatory asks BP to describe all information that it provided either orally or in writing to Anadarko on or before April 21, 2010 relating to operations on or at the DWH in connection with the MW.  BP's response, incorporating its answer to Interrogatory No. 26, limits the information it will disclose to that which it finds based upon a search of written communications. BP's undertaking leaves undisclosed any information not provided by way of written communication.  Information provided by BP to APC orally should be described in detail and written information delivered without a cover writing (*e.g.* in hand) should be described or produced.

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 6

*Int 28*:  In response to this interrogatory, asking that BP describe how it decided what information relating to the DWH/MW to share with APC prior to April 21, 2010, BP says in substance that it provided information that Article 5.7 of the JOA required it to provide and supposedly would have provided any non-proprietary information APC requested.  The response does not indicate whether BP ever made any decision to share information with APC not required to be provided by Art. 5.7 of the JOA without APC asking for it.  For example, with respect to any problems or other issues that arose, or decisions that needed to be made, with respect to the MW, did BP notify APC on its own *(i.e.*, without being asked by APC) of any such problems, issues or decisions?

*Int 29*:  This interrogatory asks BP to identify written or unwritten guidelines, procedures or protocols used to determine what information concerning activities relating to DWH/MW would be provided to APC.  In response, BP objects and, subject to its objections, refers APC to its response to Interrogatory No. 28 (stating in substance that BP provided information that Article 5.7 of the JOA required it to provide and would have provided any non-proprietary information APC requested).  The inference from this response is that, other than providing APC the information that Aritcle 5.7 of the JOA required it to provide and responding to APC requests for information, BP had no written or unwritten guidelines, procedures or protocols used to determine what information concerning activities relating to DWH/MW would be provided to APC.  APC requests that BP confirm that this inference is accurate or supplement its response.

*Int. 30*:  With respect to each APC Request for Admission that BP did not unqualifiedly admit, this interrogatory asks BP to state all facts that support BP's response to the Request for Admission, to identify everyone with knowledge of such facts, and to identify all documents reflecting such facts.  In response, BP objects that this interrogatory imposes interrogatories in excess of the 50 "as of right" interrogatory limit set by the Court and that, according to BP, BP "provided a great deal of information" in response to APC's Requests for Admission.  As noted above, APC disputes that it has propounded more interrogatories than permitted as of right; disputes, even if the number of APC's interrogatories exceeds 50 (which they do not), that BP has the right to decide which interrogatories it will answer; and disputes that APC provided so much information in response to the Requests for Admission that it ought be excused from disclosing the basis for its non-admission responses to the Requests.  On the contrary, BP's responses to the Request for Admission include claims that raise more questions (and thus the need for further discovery) than answers.  For example, BP's responses include the following statements with respect to which

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 7

APC is entitled to know the facts on which they are based, the people with knowledge of those facts, and the documents that reflect those facts:

- "There were numerous informal communications between technical personnel at BP and Anadarko, and it is possible that someone from one of the BP Parties communicated with someone working for Anadarko on this subject." (Responses to RFA Nos. 5, 6, 7)

- "The BP Parties [ ] provide[d] Anadarko with daily reports and other communications informing Anadarko of MW activities." (Response to RFA No. 9)

- "Anadarko participated in all operations at the MW." (Responses to RFA Nos. 2, 3, 21)

- "Anadarko was involved in certain aspects of the daily operations at the MW." (Response to RFA No. 25)

- "Anadarko communicated frequently with BP with questions and comments about the well." (Response to RFA No. 25)

- "Anandarko did make certain decisions regarding operations at the MW." (Response to RFA No. 26)

- "The BP Parties informed Anadarko, before cement for the MW production casing was pumped, of certain aspects of the cement procedure for the production casing." (Response to RFA No. 10)

APC is entitled to the factual information that supports these claims. Indeed, since it is responsive to Interrogatory No. 30, APC is entitled to the factual basis for all of the responses that BP did not unqualifiedly admit. Without waiving its disagreement with BP's objections to requiring BP to provide factual support for each of the RFA responses that BP did not unqualifiedly admit, and in the spirit of compromise on this issue, APC will limit the RFA responses of BP for which APC seeks such factual support. APC asks that BP provide responsive information only with respect to (i) its responses to RFA nos. 8, 11, 13, 14, 25, and 26; and (ii) the quoted statements bullet-pointed above.

*Reqs. 29 and 30*:  These requests seek documents that BP and APC gave to one another prior to April 21, 2010 regarding operations at the DWH and regarding the MW.  In response, BP has agreed to search non-privileged documents for communications between BP and Anadarko regarding the MW and to produce

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 8

responsive documents identified from the search. Since BP has agreed to search only "communications" for responsive documents, documents that BP and APC provided to one another without an accompanying communication will not be produced. BP should produce all documents provided by BP to APC and by APC to BP even if not incident to a written communication.

*Reqs. 31 and 32*: These requests seek all documents relating to communications between BP and APC, and evidencing or relating to information provided by BP to APC, prior to April 21, 2010 regarding operations on or at the DWH. BP has agreed to search for communications between BP and Anadarko and produce responsive documents. Since BP is searching only for communications, other responsive documents -- such as documents summarizing or referring to such communications -- fall outside what BP has agreed to produce. If BP received a report or other document not constituting a communication between BP and APC with responsive information, it should be produced. An internal e-mail discussing a responsive verbal exchange someone from BP had with APC should be produced; a document that someone from BP may have handed an APC representative should be produced; *etc.*

*Req. 33*: This request seeks documents regarding BP decisions concerning whether to provide information regarding DWH or MW to APC. Claiming that the request is overbroad, unduly burdensome and "argumentative," BP refuses to produce any responsive documents. BP's claim that APC had access to information concerning decisions made by BP that caused the Incident is a central issue in this litigation. This request irrefutably seeks information calculated to lead to the discovery of admissible evidence concerning that and other related issues. Documents that evidence consideration by BP about whether to provide information to APC or any decision by BP to do so, must be produced.

*Req. 34*: This request seeks all documents identified in response to Interrogatory No. 30 (asking, as to each requests for admission served by APC on BP that BP did not unqualifiedly admit, that BP state all facts that support its response and identify all documents reflecting such facts). Although the requests for admission go to central issues in dispute between BP and APC, BP refuses to produce any documents that support its responses to those requests for admission. BP should produce all documents reflecting facts that support responses to APC's requests for admission that were not unqualifiedly admitted.

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 9

**III.    BP RESPONSES TO ANADARKO'S THIRD SET OF INTERROGATORIES AND DOCUMENTS REQUESTS (excluding interrogatories that BP refused to answer based on its unfounded the "over fifty" limit objection)**

*Int. 32*: In response to this interrogatory, asking BP to identify any substances other than oil released into the environment as a result of the incident, BP agreed to produce documents that "refer to or describe estimates of the type and volume of hazardous substances, if any, that are claimed to have been or that may have been discharged." APC seeks confirmation that, for purpose of this interrogatory, BP is treating non-oil hydrocarbons as "hazardous substances."

*Int. 33*: In response to this interrogatory, asking BP to identify the type and volume of dispersants or chemicals used as a result of or in response to the incident, BP has agreed, among other things, to provide documents sufficient to show the amount and type of chemical dispersants authorized by the Unified Command and final "reports" that describe the effectiveness of the use of dispersants.   APC seeks confirmation that BP did not use dispersants not approved by the Unified Command; seeks confirmation that, by agreeing to produce "reports," studies, investigations, analyses, and other documents responsive to the  interrogatory are not being withheld; and seeks any drafts and not just the final version of such documents.

*Req. 35*: This request seeks documents regarding any sampling of environmental conditions performed by anyone.  In response, BP attempts to limit the documents it will produce to "final plans for or the results of sampling of air, water, sediments, oil, and waste conducted by [BP] in connection with the response to the incident directed by the Unified Command" and tries to exclude from that limited production documents that it contends "would not be permitted by Natural Resource Trustees to provide."  To the extent BP means to exclude drafts of responsive documents from its production, the response is unacceptable.  The production also should include sampling results performed as a result of the incident by anyone at any time, not just by BP as directed by the Unified Command.  Finally, BP must provide the complete basis for withholding any documents that it contends the NRC will not permit it to produce, including any documents that reflect the prohibition.  APC does not agree that those documents are privileged or otherwise not subject to discovery

*Req. 36*: This request seeks documents regarding any sampling of environmental conditions performed as part of any Fate and Transport Efforts. BP undertakes to produce only "reports" on the migration paths and end locations of oil contained

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 10

in the discharge from the MW (again, excluding documents subject to some purported restriction imposed by the Natural Resource Center). The limitations imposed by BP are unacceptable. BP should produce all responsive documents, including in particular BP's and the NRC's databases containing responsive information.

*Req. 37*: This request seeks any sampling of environmental conditions BP received or reviewed from other parties as a result of the incident. BP agrees to produce only results of sampling of air, water, sediments, oil, and waste it received from the Unified Command during the response to the incident, excluding documents subject to a purported restriction imposed by the Natural Resource Center. There is no basis for BP producing only those responsive documents that it received from the Unified Command. All responsive documents should be produced.

*Reqs. 38 and 39*: These requests ask for studies, notes, diagrams, pictures, spreadsheets or other documents regarding other releases of oil, hydrocarbons, or gases in the Gulf of Mexico in last 10 years. In response, BP has agreed to produce "final reports prepared or received by BP since April 10, 2008 that report or estimate the volume of oil released by natural seeps and found within the areas of the Gulf of Mexico in which oil discharged by the MW was found or reported." APC has concerns about the limitations that BP has placed on its production in response to this request including that it does not define what it means by "the areas of the Gulf of Mexico in which oil discharged by the MW was found or reported." Without waiving its rights, APC will review the documents that BP produces in response to this request and decide after it does so whether to argue that BP should produce more.

*Req. 40*: In response to this request for communications between BP and "any state or federal Natural Resource Trustee" regarding the environmental impact of, the tracking of, and the efforts to limit the impact of the Volume of Discharge, BP has agreed to produce any final reports provided to BP by the Natural Resource Trustees that the NRTs permit BP to provide. As noted above, absent a protective order, any restriction by the NRTs on disclosure of responsive documents does not relieve BP of its obligation to produce the documents in discovery. Further, BP's limiting the documents it will produce to "final reports" is unacceptable. APC is entitled to all responsive documents, including drafts, underlying data, lab reports, e-mails, letters, etc. -- all communications.

*Req. 43*: This request seeks all documents relating to any training received by BOP personnel regarding how to respond to an oil spill. BP inappropriately limits

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 11

the documents that it is willing to produce to policies, procedures, guidelines, instructions or training manuals or similar documents relating to oil spill response training for BP employees who participated in the spill response to the incident. Yet BP's policies generally, and whether the BP employees who participated in the spill response to the incident received the same or different training than BP provides to all of its other employees who may have to respond to an oil spill, are clearly relevant to issues in dispute.   All BP documents that explain how to respond to an oil spill and/or that are provided to BP personnel working anywhere are discoverable in this case and should be produced.

*Reqs. 44 and 45*:   These requests ask for documents relating to guidelines, policies, etc. considered or used by BP to respond to, analyze, or measure the environmental <u>or</u> <u>economic</u> impact of oil spills generally (Req. 45) and the environmental <u>and</u> <u>economic</u> impact of the Volume of Discharge in particular (Req. 44).  In response, BP agrees to produce only final reports that estimate the environmental impacts of the volume of the discharge from the MC252 Well. The requests ask BP to produce corporation-wide <u>policies</u> about how to evaluate the environmental and economic impact of oil spills (not final reports measuring such impacts from the incident at issue).  BP ignores this and agrees to produce only final reports about just the environmental (not even economic too) impact of the discharge from the incident at issue.   BP must produce the documents requested.

*Req. 46*:  This request seeks all documents relating to attempts to measure the current or future economic or environmental impact of the Volume of Discharge. In response BP agrees to produce only final reports that estimate the environmental (and not the economic) impacts of the Volume of Discharge.  BP's willingness to produce only final reports and nothing regarding economic impact is unacceptably limiting.

*Req. 47*:   This request seeks all documents relating to any advise or other information that BP gave to anyone regarding any containment, source control, or fate and transport efforts.  BP's response indicates a willingness to produce few, if any, responsive documents.  Rather than agreeing to produce pertinent advise or information that it provided to others, all BP has agreed to produce are final reports on efforts BP made at the request of the Unified Command.  APC is entitled to all responsive documents, including drafts, underlying data, lab reports, etc. -- all responsive advise and information.

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 12

## IV.   BP RESPONSES TO ANADARKO'S FOURTH SET OF INTERROGATORIES AND DOCUMENTS REQUESTS (excluding interrogatories that BP refused to answer based on its unfounded the "over fifty" limit objection)

*Req. 48*:  This request asks for all "Stop Card Orders" or "Stop Orders" or other work stoppage requests for the DWH.  In its response, BP states in substance that minutes of meetings concerning "stop the job" issues are maintained by Transocean and "generally not" by BP.  BP should either agree to produce any stop order requests in its control or should state that it does not have control over any such requests.

*Req. 50*:  This request asks for all documents relating to instances in the last ten years in which a worker has requested that work stop or be delayed as a result of process safety concerns.  The request clearly seeks documents likely to lead to the discovery of admissible evidence in that, among other things, BP's process safety record and practices are central issues in the litigation, its knowledge of such requests, and its response to, and investigation of, such requests are relevant to the issue of whether its conduct with respect to the incident at issue was grossly negligently.  BP nonetheless inappropriately refuses to produce any documents responsive to this request.

*Req. 52*:  This request seeks all documents relating to the decision to pump nitrified cement at the MW.  BP seeks to produce only documents "relating to the use of foam cement . . . on April 20, 2010."  To the extent that BP is narrowing its production to exclude documents regarding the <u>decision</u> to use nitrified cement (as opposed to other cement alternatives) no matter when that decision was made, BP's production will be deficient.

*Req. 53*:  This request seeks documents relating to any studies reviewed or received by BP in the last ten years concerning process safety in the Gulf of Mexico.  BP's objections that the word "study" is vague and ambiguous and that requesting documents concerning the topic of process safety is overbroad, unduly burdensome, etc. is wholly evasive.  Process safety -- as that term is used by BP internally to include safety other than personal safety -- is a topic that is patently relevant to this litigation and to the issue of the level of BP's culpability for the incident.  Studies that BP reviewed or received concerning process safety in the Gulf of Mexico must be produced.

*Req. 54*:  This request seeks documents concerning the certification of the DWH BOP.  BP has agreed to produce only "documents related to application for a new

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 13

well submitted to MMS." Anadarko, however, is entitled to all documents in BP's control relating to certification or recertification of the BOP. As BP knows, the BOP is supposed to be periodically recertified. To APC's knowledge, the DWH BOP was not recertified. The request is reasonably calculated to elicit information as to, among other things, what BP knew about the BOP not being recertified, any reasons why it was not recertified, and whether BP, despite the absence of recertification, made any representations or conclusions about its suitability to the government or otherwise, all of which are relevant to issues in dispute.

*Req. 56*: This request asks BP to produce all documents identified in part (d) of AEP's Interrogatory No. 4 ("Int. No. 4") and the personnel files identified in BP's response to that Interrogatory. In response, BP claims that it already produced the documents identified in response to Int. No. 4. Yet, BP's response to the interrogatory does not identify any documents. BP's response also notes that, although Int. No. 4 asked for the identification of the individuals who activated the EDS, BP did not identify any such individuals in it response. BP thus does not agree to provide any of the personnel files of the individuals who activated the EDS. The documents requested -- those generated as a result of the activation of the EDS and the personnel files of those who activated the EDS -- are discoverable and should be produced.

*Req. 58*: This request seeks all document relating to testing, investigation, etc. of the Annular Space at the MW prior to April 20, 2010. In response, claiming that the term "Annular Space" is vague and ambiguous, BP agreed to produce documents related to the testing, investigation, etc. of the well bore at the MW. We would like confirmation from BP as to what it considers the well bore to include.

*Req. 60*: In response to this request - for documents that BP circulated or produced after the 2005 Texas City explosion concerning safety policies and procedures -- BP refers APC to documents supposedly produced previously with the Bates label prefix BPISOM or BPISOME. APC has been unable to locate any such documents and thus reserves its rights with respect to this response. In all events, BP must produce, at a minimum, incident analyses and lessons learned analyses from the Texas City explosion.

*Req. 61*: This request seeks all process safety data, analyses, reviews, reports, studies, audits, assessments (and any drafts thereof) for the MW. BP refuses to produce any documents in response to the request on the ground that, because the term "process safety" is "vague and undefined in this context," "the request does

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 14

not identify the types of documents being requested with sufficient specificity."
With all due respect, as to this request and other discovery regarding the issue of
process safety, BP is being intentionally obtuse, leaving APC with the impression
that BP's tactic is to avoid producing information regarding this patently relevant
topic. BP should construe the term process safety to have the same meaning that
BP applies to the term internally. APC seeks any and all metrical information
about process safety for the MW, as well as any incident analyses , studies,
surveys, reports, safety audits, risk assessments, risk registers, Bowtie
communication plans, Pulse Survey Results, and any other aggregated or
individual data, metrics or analyses concerning process safety related to the MW.

*Req. 63*:   The request seeks internal work experience forms for specified
individuals.     BP has agreed to search for job descriptions and personal
development plans. APC wants documents sufficient to determine the experience
of the identified individuals before they began working on the MW.

Req. 72:  In response to APC's request for  "all documents reflecting your
response to the 2010 Strategic performance Unit Operations Management System
Gap Assessment," BP (a) objects on the grounds that the request does not identify
'the document with particularity and (b) does not agree to produce any
documents. The document is Exhibit 785 and also appears at Bates range BP-
HZN-2179MDL01641882. Please supplement your response to this Requests
before we meet and confer so that we can determine if your response is adequate.

*Req. 84*:  In response to this request (asking for the personnel files of the forty
individuals enumerated in the request), BP refers APC to BP's response to, and
documents produced in response to, Request No. 18 of the Plaintiffs'
Interrogatories, Requests for Production, and Requests for Admission. In that
response, BP agreed to produce performance evaluations for thirty-seven of the
forty individuals referenced in the request. Without waiving its rights to assert
that BP's production of performance evaluations alone is not an adequate
production in response to a request seeking the pertinent individuals' entire
personnel files, three individuals referenced in this request were not referenced in
the response to Plaintiffs' discovery that BP incorporates by reference in its
response to this request: Kent Wells, Cheryl Grounds, and John Mogford. At a
minimum, BP must produce the performance evaluations of these individuals for
the 2007 through 2009 period.

*Req. 86*:  The request seeks all telephone logs associated with DWH satellite
phones (including phone lines associated with 8816-4147-1705 and 8816-4147-
9544) on April 19-21, 2010. In response, BP states "a log of all the calls to or

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 15

from the BP Satellite Handheld telephones on [DWH] on April 20 and 21" was previously produced (citing to BP-HZN-MBI00143375). It is unclear whether the term "Handheld telephones" is being used by BP to exclude from production logs containing calls made on DWH satellite phones that it might not consider "Handheld telephones." The satellite number ending in 9544 (for which no calls appear in the previously produced log) is described in a March 2009 email as the "Horizon rig satellite phone number (only in WSL's office)." *See* BP-HZN-2179MDL00197154. BP should produce a log of all calls to/from **8816-4147-9544** on April 19-21, or confirm that any calls placed to/from this number would have been reflected in the previously produced log (*i.e.*, BP should confirm that there were **no** calls to/from this number during the specified date range).

*Req. 88*:   BP claims that a previously produced document (BP-HZN-MBI00170830) is the telephone log responsive to this request (seeking a log of all calls to/from BP-managed telephone lines on the DWH on April 19-21, 2010). The referenced document, however, contains no references to calls that were not answered. BP must produce a log of all calls to/from BP-managed lines on the DWH that includes unanswered calls (i.e., calls recorded as having a "Duration" of 0 s).

*Req. 90*:   This request asks for security/access logs for the DWH Ops Room on April 19-20, 2010. In response, BP claims that "the operations room that was used in connection with the MC252 #1 well was not security enabled, and therefore no such records are available." BP's representation that the DWH Ops Room "was not security enabled" is, however, contradicted by David Sims's deposition testimony. About the Ops Room, Sims was asked: "[D]id that room have restricted access, only certain people could get in?" Sims confirmed: "It did, yes." Sims also confirmed that "[y]ou had to swipe your card" to gain access. *See* Sims MDL Tr. at 622-23. BP must produce the requested documents.

*Req. 91*:   This request seeks the security or access logs that evidence who entered and exited BP's Westlake 4 office building on 4/19 and 4/20. Claiming that the documents "would not be kept in the way described and are likely difficult to identify," BP refuses to produce them. BP should produce documents it controls sufficient to determine who entered and exited the Westlake 4 office building on April 19 and 20, 2010 and the time of such entrance and exit.

*Req. 92*:   In response to APC's request for "[t]he entire document containing pages previously produced as BP-HZNMBI00172324-26," BP says that "these documents have been or will be produced." The purpose of this request was to obtain John Guide's notebook. The 3-referenced Bates numbered pages comprise

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 16

notes taken by Mr. Guide during his April 25 interview of Mr. Kaluza. It is evident that the three pages come from a notebook containing notes taken on other occasions. APC seeks BP's confirmation that the documents that "will be produced" will include the entire notebook from which the three referenced pages came.

*Req. 93*: This request asks for all handwritten notes prepared by any member of the BP Incident Investigation Team concerning in any way the interview of any BP employee. In response, BP states that it has "already produced interview notes from the BP Incident Investigation Team." BP has not represented that it has produced all of the requested handwritten notes; and APC has reason to believe BP has not done so. By way of example, Depo Exh. 1501 is a July 10 email from BP attorney James Lucari in which Lucari attaches "final [typewritten] interview summary notes for the [June 24] Sims and [July 1] Guide follow-up interviews. These incorporate input from the notes that Kent [Corser] and Steve [Robinson] took during the interview meeting." Although BP appears to have produced Mr. Corser's handwritten notes from both interviews, it has not produced the notes of Mr. Robinson. Nor has BP produced any handwritten notes of Warren Winters, such as those from his April 29 interview of John LeBleu. BP must confirm that it has produced or will produce all notes responsive to this request.

*Req. 96*: This request seeks the production of "all maintenance plan requests submitted *by* Transocean *to* [BP]." In response, BP has agreed to produce maintenance plan requests that BP provid ed *to* Transoc ean. BP should also produce the documents requested: maintenance plan requests that Transocean provided *to* BP.

*Reqs 105 through 108*: These requests seek the production of the DWH BOP hydraulic analysis, the stack accumulator charge volume analysis for the MW, the hydraulic analysis of the DWH BOP stack accumulator, and the hydraulic analysis of the DWH BOP control system. In response, BP agrees to produce the requested analyses but only insofar as they were conducted by the BP Internal Investigation Team. BP should produce all analyses responsive to these requests irrespective of who performed them or whether they were performed before or after April 20, 2010.

*Req. 114*. This request seeks all communication between BP and Halliburton from March 10, 2010 to April 2010 relating to the DWH and/or the MW. BP agrees to produce only communications "mentioning" the DWH or the MW. BP should produce communications that relate to the DWH or the MW even if the

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 9, 2011
Page 17

communication does not refer the DWH or the MW by name. (Note: in response to other requests -- *e.g.,* Req. 115 -- BP has agreed to produce responsive communications "concerning or relating to" the DWH or the MW, not just "mentioning" them, which is what APC seeks with respect to this request.)

*Req. 120*: This request asks for all documents regarding time history of well discharge (including quantities, dispersants, uncertainties, liquids and gases), physical and chemical characteristics of discharge (specific gravity, liquids and gasses, proportion of liquids that are volatile) and reports addressing changes in discharge (evaporation, changes in specific gravity as function of time and temperature.)" BP objects on various grounds but undertakes to make a production "subject to further discussion with APC regarding the scope of documents it seeks." APC will discuss scope when or before the parties meet and confer. In general, however, BP seeks all analyses of the properties of the well discharge.

*Req. 121*: This request asks for all documents "measuring oil discharge at surface, water column, and/or sea floor, including 3-D distribution of currents, tides, meteorology (wind, air and water temperature) and waves." BP objects on various grounds but undertakes to make a production "subject to further discussion with APC regarding the scope of documents it seeks." APC will discuss scope at "meet and confer." In general, however, BP seeks all analyses measuring or reflecting where the oil went or could have gone.

Again, APC requests the opportunity to meet and confer about the foregoing issues on or before June 16, 2011. Please let me know your availability.

Thank you.

Sincerely yours,

Charles L. Solomont

cc: Ky E. Kirby, Esq.
    Warren Anthony Fitch, Esq.
    Peter C. Neger, Esq.
    Diane C. Hertz, Esq.
    Tiffany R. Hedgpeth, Esq.

# EXHIBIT B

**BINGHAM**

Charles L. Solomont
Direct Phone: 617.951.8996
carl.solomont @bingham.com

June 10, 2011

**Via Email and U.S. Mail**

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

Re:  **Meet and Confer Request as to the BP Parties' Responses
to  Anadarko  E&P  Company  LP's  Petroleum
Corporation's Second, Third and Fourth Interrogatories
and Requests for Production of Documents and Second
Set of Interrogatories.**

Dear Messrs. Duffy and Langan:

We write in connection with the BP Parties' Responses and Objections to
Defendant Anadarko E&P Company LP's (i) Interrogatories and Requests for
Production of Documents and (ii) Second Set of Interrogatories (collectively, the
"Interrogatories").

We request a "meet and confer" conference with you to address the BP Parties'
position that they need not respond substantively to any of the Interrogatories on
the ground that, under the Case Management Order No. 1, Anadarko Petroleum
Corporation ("APC") and Anadarko E&P Company LP ("AEP") together are only
entitled to propound fifty interrogatories between them.  As explained in the June
9, 2011 letter that I sent to you on behalf of APC, we do not accept the BP
Parties' refusal to respond to the Interrogatories on this ground.

There is no legal basis for the BP Parties' position.  APC and AEP are irrefutably
separate entities.  They had separate and distinct ownership interests in the lease
for Mississippi Canyon Block 252.  More importantly, they are separately named
defendants.  Case Management Order 1 - 10/19/10, subsection V.(D.) governing
discovery, states: "Written discovery requests, and responses thereto, shall be
made in accordance with the Federal Rules of Civil Procedure, except that the
parties will be allowed to propound up to fifty (50) Interrogatories to each
Defendant without leave of Court."  (Emphasis added).  Fed. R. Civ. P. 33(a)(1)
states that "Unless otherwise stipulated or ordered by the court, **a party** may serve

Boston
Frankfort
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

T +1.617.951.8000
T +1.617.951.8736
bingham.com

A/74310748.3

Timothy A. Duffy, Esq.
J. Andrew Langan, Esq.
June 10, 2011
Page 2

on **any other party** no more than 25 written interrogatories, including all discrete subparts." (Emphasis added). The plain language of Rule 33 indicates that the interrogatory limitation is per party, rather than per side. *See e.g., St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP,* 217 F.R.D. 288, 289 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff."); *Madison v. Nesmith,* 2008 WL 619171, *3 (N.D.N.Y. Mar. 3, 2008) ("Under Rule 33, plaintiff was entitled to serve up to 25 Interrogatories *on each of the three defendants.*" (emphasis added)).

AEP requests the opportunity to meet and confer about this issue on or before June 17, 2011. Please let me know your availability.

Thank you.

Sincerely yours,

Charles L. Solomont

cc:     Ky E. Kirby, Esq.
        Warren Anthony Fitch, Esq.
        Peter C. Neger, Esq.
        Diane C. Hertz, Esq.
        Tiffany R. Hedgpeth, Esq.

# EXHIBIT C

**BINGHAM**

Charles L. Solomont
Direct Phone: 617.951.8996
Direct Fax:    617.428.6313
carl.solomont@bingham.com

July 6, 2011

**VIA EMAIL AND FIRST CLASS MAIL**

Mark J. Nomellini, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

*Re:  BP Parties' Responses to the Anadarko Parties' Discovery
      Requests*

Dear Mark:

During our recent meet and confer conferences, you and your colleagues
explained that the Anadarko parties cannot rely on the undertakings BP has made
-- in response to the Anadarko parties' discovery requests -- to produce specific
documents or categories of documents.  On the contrary, you explained that,
although -- in your words -- "BP's approach to produc[ing] documents in this case
is fundamentally based on search criteria," BP has not run any searches crafted to
elicit documents responsive to the Anadarko parties' discovery requests in
particular.  Rather, you have advised us that, if we want to know whether BP
actually has produced or will produce the documents that it expressly agreed to
produce in its specific responses to the Anadarko parties' discovery requests, we
should do two things:  (i) analyze the search terms that BP crafted some time ago
to search for documents responsive to the plaintiffs' discovery requests (the
"Plaintiffs' Discovery Specific Search Terms"); and (ii) review the documents BP
already has produced.

In light of the fact that BP has not itself analyzed whether the Plaintiffs'
Discovery Specific Search Terms would elicit all documents responsive to the
Anadarko parties' requests, and that BP has not otherwise assured itself that all of
the documents that it has agreed to produce (in its responses to the Anadarko
parties' discovery requests) in fact have been or will be produced, we disagree
with your suggestion that we should search the documents that BP has produced
(which you indicated number in the millions) to determine the sufficiency of BP's
production.  For one thing, when Anadarko has advised BP that Anadarko cannot
find documents that BP has said it will produce, BP's response has simply been
that it has not yet produced all of its documents and that Anadarko will have to
wait until some point in the future to see whether the missing documents will be
produced.  More importantly, even if we find within BP's production to date one
or more documents of the type that BP has agreed to produce, we have no means

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

+1.617.951.8000
+1.617.951.8736
bingham.com

A/74429825.2

Mark J. Nomellini
July 6, 2011
Page 2

of knowing whether BP has produced all of the documents it undertook to produce. Consistent with normal discovery practice, BP should compile the appropriate files to search, and run the necessary searches, to be able to state in good faith that it has identified all of the potentially discoverable documents and produced those which it has agreed to produce.

During the June 17, 2011 meet and confer in which we went through many of the Anadarko parties' document requests about which Anadarko had concerns regarding the adequacy of BP's responses, BP's refrain with respect to most of the requests was, "Look at the search terms." This repeated direction was a reflection of your assurances to us that the Plaintiffs' Discovery Specific Search Terms that BP ran when it compiled documents responsive to the plaintiffs' discovery requests were, as you said, so "broad and comprehensive" that upon our reviewing them, we would agree they were sufficient to cover the Anadarko parties' requests.

As you urged us to do, we have now completed our review of the extent to which the Plaintiffs' Discovery Specific Search Terms would have captured documents responsive to the Anadarko parties' discovery requests. With respect to the vast majority of the Anadarko parties' requests, assuming BP possesses responsive documents, the use by BP of the Plaintiffs' Discovery Specific Search Terms would not identify many of the documents that BP has agreed to produce. Indeed, with respect to most of the Anadarko parties' requests, there is not a single search run by BP that would necessarily identify any responsive documents.

The attached chart contains the search terms that we believe BP should run in order elicit documents responsive to the Anadarko parties' requests. Where one of the Plaintiffs' Discovery Specific Search Terms would suffice with some modification, we have so indicated. It would be helpful if you could be prepared to discuss this at our next scheduled meet and confer on Monday.

Some general comments:

- You explained in our July 1 meet and confer that BP has compiled all of the files that it has identified as potentially containing discoverable information in a central repository (including the hard drives from the laptops of hundreds of custodians, and other drives, databases, and files) and that search terms can be run through all of the files in that repository. Our expectation is that the search terms contained in the attached chart will be run through all of the files in the central repository, except where BP explains to us why that does not make sense and where we agree that some subset of the entire repository should be searched. We are certainly

Mark J. Nomellini
July 6, 2011
Page 3

willing to discuss with you how to narrow our searches and/or the files
through which they should be run to avoid running searches that will yield
an unreasonable number of false hits.

- The search terms contained in the attached chart need not and should not
be run verbatim where they would need to be modified to be made
compliant with BP's search parameters in order to yield all documents
responsive to the documents requests. They should be modified to comply
with such search parameters. Further, if you notice any misspellings or
other syntax or punctuation errors that would limit the intended effect of
the searches kindly act in good faith to correct the errors or notify us of
them.

- Where BP has undertaken or will undertake to search documents in the
possession of the Gulf of Mexico business unit (*e.g.*, RFP No. 26), or
documents regarding a procedure or methodology in place in the Gulf of
Mexico (*e.g.*, RFP Nos. 25 and 72), please advise us of what files will be
searched to elicit such documents. In other words, please identify the
custodians' files and other files that you have compiled to yield any such
documents.

- Except where otherwise noted in the attached chart, BP's agreement to
search documents dated January 1, 2008 through April 20, 2010 will be
adequate.

- Please advise Anadarko generally of the status of BP's rolling production.
Please advise us of whether your agreement to a date range for searches of
January 1, 2008 through April 20, 2010 has resulted or will result in BP's
running new or additional searches than it did for the plaintiffs and, if so,
when that will be done (if it has not already been done) and how that will
impact the timing of BP's rolling production.

- On our meet and confer call on Friday June 24, 2011, BP undertook to
supplement by early last week its responses to RFP Nos. 10, 11, 13, 14,
15, 18, 56 and potentially others. As BP has not yet supplemented,
Anadarko will reserve its right to comment on these RFPs until after it has
had the opportunity to review BP's supplemental responses.

- Please confirm that electronic files of Brad Simpson and Sarah Dobbs
have been included in the central repository through which search terms
can be run. Among other things, the additional search terms that BP
agreed to run in Mr. Nomellini's June 12, 2011 email to Sandra Franco, in

Mark J. Nomellini
July 6, 2011
Page 4

> addition to being modified as set forth in the attached search terms chart,
> should be run through the files of Brad Simpson and Sarah Dobbs (as well
> as all other files in the central repository).

This ought not be deemed to address all of the issues left open in our meet and
confer process about BP's responses to the Anadarko parties' discovery requests.
Other issues do remain open and will be the subject of further communication.

Sincerely yours,

Charles L. Solomont

Enclosure

cc:    Warren Anthony Fitch, Esq.
       Tiffany Hedgpeth, Esq.
       Diane Hertz, Esq.
       Ky E. Kirby, Esq.
       Peter Neger, Esq.
       Nancy Wilms, Esq.
       Darin Beffa, Esq.

# EXHIBIT D

# BINGHAM

Charles L. Solomont
Direct Phone: 617.951.8996
Direct Fax:    617.428.6313
carl.solomont@bingham.com

July 14, 2011

*Via Email and First Class Mail*

Darin T. Beffa, Esq.
Kirkland & Ellis LLP
333 S. Hope Street
Los Angeles, CA 90071

*Re:    BP Parties' Responses to Anadarko Petroleum Corporation's and Anadarko E&P Company LP's Interrogatories*

Dear Darin:

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") have reviewed their combined interrogatories to BP America Inc., BP America Production Company, BP Exploration and Production Inc., BP P.L.C. (collectively, "BP") and selected the interrogatories for which BP should provide substantive responses. APC and AE&P seek responses to the interrogatories discussed below.

*APC Int. 1*:  As agreed at the May 20, 2011 meet and confer meeting, and memorialized in our letter dated May 23, 2011, BP agreed to find a reasonable way to inquire as to whether any persons in addition to those identified in the audit report referred to in the responses to APC Interrogatory Nos. 1 and 22 had material communications regarding the alarm systems on the Deepwater Horizon. APC has neither yet received this follow up information nor been advised of the nature and extent of the inquiry BP undertook to make.  Given, among other things, the similarity of this interrogatory to the information requested in plaintiffs' RFP No. 140, the date range established by the Court in Judge Shushan's Order dated February 28, 2011 with respect to plaintiffs' RFP no. 140 (January 1, 2004 through April 20, 2010) should apply to this interrogatory.

*APC Int. 2*:  *See* Tony Fitch letter to you of May 23. 2011.

*APC Int. 3*:  As agreed at the May 20, 2011 meet and confer meeting, and memorialized in our letter dated May 23, 2011, BP agreed to inquire as to whether companies other than Halliburton provided any cement modeling reports addressing gas flow concerns with respect to GoM operations.  APC has neither yet received this follow up information nor been advised of the nature and extent of the inquiry BP undertook to make.  Further, as stated in our June 16, 2011 letter, although APC is willing not to insist that BP produce documents going back ten

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

+1.617.951.8000
+1.617.951.8736
bingham.com

A/74428102.3

Darin T. Beffa, Esq.
July 14, 2011
Page 2

years (as asked for in the request), APC insists that BP search for records going
back to at least April 20, 2005. This is reasonable in light of, among other things,
the similarity of this interrogatory to the information requested in plaintiffs' RFP
Nos. 66, 89, 123, and 140, with respect to which the Court, in Judge Shushan's
Order dated February 28, 2011, established date ranges going back further than the
time frame requested by APC for this interrogatory.

*APC Int. 4*:  As agreed at the May 20, 2011 meet and confer meeting, and
memorialized in our letter dated May 23, 2011, BP agreed to identify any
responsive reports by Bates number and inquire as to whether other companies
provided any similar cement modeling reports addressing centralizer concerns with
respect to GoM operations. Given, among other things, the similarity of this
interrogatory to the information requested in plaintiffs' RFP No. 124, the date range
established by the Court in Judge Shushan's Order dated February 28, 2011
with respect to plaintiffs' RFP no. 124 (January 1, 2004 through April 20, 2010)
should apply to this interrogatory. APC has not yet received this follow up
information from BP.

*APC Int. 6*: *See* Charles Solomont June 16, 2011 letter to Darin Beffa.

*APC Int. 7*:  As agreed at the May 20, 2011 meet and confer meeting, and
memorialized in our letter dated May 23, 2011, BP agreed promptly to ascertain
and to notify APC: (i) whether a search for responsive information and documents
over the agreed-upon five-year time period was or was not, in BP's view, unduly
burdensome with respect to the information sought in this interrogatory; and (ii)
whether responsive documents are likely to include information regarding the well
site and well team leaders. In light of BP's repeated explanations during out meet
and confers that "BP's approach to produc[ing] documents is fundamentally based
on search criteria," we need to understand what search terms, if any, were used or
will be used to search for the documents BP has undertaken to produce in response
to this interrogatory (and the files searched or to be searched using such search
criteria) and what other efforts, if any, BP has made or will make to locate and
produce such documents. Further, as stated in our June 16, 2011 letter, although
APC is willing not to insist that BP produce documents going back ten years (as
asked for in the request), APC insists that BP search for records going back to at
least April 20, 2005. The date ranges established by the Court in Judge Shushan's
Order dated February 28, 2011 with respect to plaintiffs' RFP nos. 66, 88, 89, 123,
124, and others in which the date range began earlier than April 20, 2005, establish
the reasonableness of the date range requested by APC as to this interrogatory.

*APC Int. 8*:  In its response to this interrogatory, BP undertook to identify the
deepwater wells drilled in the Gulf of Mexico in the last five years where it used a

Darin T. Beffa, Esq.
July 14, 2011
Page 3

long string instead of a liner.  Please supplement this response to provide this information.

*APC Int. 9-12*:  In its response to these interrogatories, BP undertook to produce post-job reports for cement jobs on the production interval of wells in the Gulf of Mexico since January 1, 2009.  We assume that BP's statement that its production will include documents dating back to January 1, 2008 applies to these interrogatories.  Please confirm that.  Although APC is willing not to insist that BP produce documents going back ten years (as asked for in the requests), APC will press for records dating back to at least April 20, 2005.  Please explain why this is unduly burdensome for BP.  The date ranges established by the Court in Judge Shushan's Order dated February 28, 2011 with respect to plaintiffs' RFP nos. 66, 88, 89, 123, 124, and others in which the date range began earlier than April 20, 2005, establish the reasonableness of the date range requested by APC as to this interrogatory.

*APC Int. 14*:  APC is satisfied with the documents BP has undertaken to produce in response to this interrogatory.

*APC Int. 15*:  Subject to APC's confirmation that it will supplement this interrogatory response upon its completion of its inspection of the BOP, APC is satisfied with BP's response to this interrogatory.  Please advise when we can expect this supplementation.

*APC Int. 16*:  In their response to this interrogatory, BP undertook to supplement their response "after they have an opportunity to seek discovery from Halliburton on the modeling that it performed on use of 6.7 pound per gallon base oil as a spacer."  APC has not yet received BP's supplemental response.  Please advise on the status of BP's intentions with respect to this interrogatory.

*APC Int. 17*:  As agreed at the May 20, 2011 meet and confer meeting, and as memorialized in our letter dated May 23, 2011, BP agreed to further particularize the Bates numbers of documents that BP believes to be fully responsive to this interrogatory.  APC has not yet received this follow up information from BP.

*APC Int. 18*:  In its response to this interrogatory, BP undertook to produce all drilling programs for production intervals of wells in the Gulf of Mexico since January 1, 2009.  We assume that BP's statement that its production will include documents dating back to January 1, 2008 applies to these interrogatories.  Please confirm that.  Although APC is willing not to insist that BP produce documents going back ten years (as asked for in the requests), APC will press for records dating back to at least April 20, 2005.  Please explain why this is unduly

Darin T. Beffa, Esq.
July 14, 2011
Page 4

burdensome for BP. Please identify by Bates number the documents that BP is producing in response to this interrogatory and/or confirm that no such documents have been produced. We believe that the date ranges established by the Court in Judge Shushan's Order dated February 28, 2011 with respect to plaintiffs' RFP no. 140, among others, in which the date range began earlier than April 20, 2005, establishes the reasonableness of the date range requested by APC as to this interrogatory. If none of the documents reviewed in connection with the investigation conducted by BP predate January 1, 2008, then the date range may not matter.

*APC Int. 19*: *See* Charles Solomont June 16, 2011 letter to Darin Beffa.

*APC Ints. 20-21*: As stated in our May 23, 2011 letter, APC believes that BP should supplement its responses to these interrogatories. Based upon the absence of any disagreement with that position in your letter of June 10, 2011, we assumed that BP would have by now supplemented its responses to these interrogatories. As stated in our June 16, 2011 letter, in regards to APC Int. No. 21, APC seeks, among other things, confirmation that BP has not done any modeling or other studies of the issue that should be incorporated in a supplemental response.

*APC Int. 22*: APC is satisfied with BP's response to this interrogatory.

*APC Int. 24*: APC is satisfied with BP's response to this interrogatory.

*APC Int. 25*: APC is satisfied with BP's response to this interrogatory.

*APC Ints. 26-27*: As stated in our June 9, 2011 letter, in addition to the search BP undertook to conduct in its response to this interrogatory, APC believes BP must supplement its responses to both of these interrogatories to either: (i) identify responsive oral communications, when they occurred, the parties to them, and their substance; or (ii) concede that there were no such oral communications. At the meet and confer on June 17, 2011, BP undertook to inquire of its personnel who could have had oral communications with Anadarko whether they had such oral communications, provided that Anadarko provides BP with a list of topics on which BP can focus its inquiry. Anadarko requests that BP ask whether its representatives had communications with Anadarko about any of the following topics related to the operation of the Macondo Well: the cement design for the production casing; Halliburton's April 15, 2010 Macondo Well production casing OptiCem report; the number of centralizers to be used on the production casing; potential gas flow problems; any tests run by Halliburton or any other party; cement lab test reports; any consideration or decision regarding the use of spot heavy mud in the rat hole prior to pumping the cement; any considered or used

Darin T. Beffa, Esq.
July 14, 2011
Page 5

policy or procedure for cementing the well; the use or non-use of a Cement Bond
Log; the timing of the resumption of well operations in relation to the pumping of
cement for the well; spacer material used or considered for use in the well; the
depth at which the surface cement plug was set or was to be set; the setting of the
Lockdown Sleeve; temporary abandonment procedures used or considered for the
well or changes made to the planned procedures; and any negative pressure test
used or considered. Also, since, in its response to Interrogatory No. 28, BP
indicated that its practice was not to provide proprietary information to Anadarko,
APC believes BP needs to disclose whether APC requested information that BP did
not provide to APC on the grounds that it was proprietary. Further, as discussed at
the June 17, 2011 meet and confer meeting, APC believes that documents
responsive to this interrogatory must include anything provided in writing, and by
hand, to BP by Anadarko or vice versa.

*APC Int. 28:*  Based upon our discussions during the June 17, 2011 meet and
confer, please supplement your response to Interrogatory No. 28 to clarify that BP
is not aware of its having made decisions to share the specified information with
Andadarko based upon criteria other than that set forth in its response to
Interrogatory No. 28.

*APC Int. 29:*  During the June 17, 2011 meet and confer, you undertook to
determine whether you could supplement BP's response to Interrogatory No. 29 to
confirm that, other than providing APC the information that Article 5.7 of the JOA
required it to provide and responding to APC requests for information, BP had no
written or unwritten guidelines, procedures or protocols used to determine what
information concerning activities relating to DWH/MW would be provided to APC.
APC has not yet received this follow up information from BP.

*APC Int. 30:*  As stated in our June 9, 2011 letter, APC asks that BP provide the
factual information that supports: (i) its responses to RFA Nos. 8, 11, 13, 14, 25,
and 26; and (ii) the quoted statements below:

• "There were numerous informal communications between technical personnel
at BP and Anadarko, and it is possible that someone from one of the BP Parties
communicated with someone working for Anadarko on this subject."
(Responses to RFA Nos. 5, 6, 7)

• "The BP Parties [ ] provide[d] Anadarko with daily reports and other
communications informing Anadarko of MW activities." (Response to RFA No.
9)

• "Anadarko participated in all operations at the MW." (Responses to RFA Nos.
2, 3, 21)

Darin T. Beffa, Esq.
July 14, 2011
Page 6

• "Anadarko was involved in certain aspects of the daily operations at the MW."
(Response to RFA No. 25)

• "Anadarko communicated frequently with BP with questions and comments
about the well." (Response to RFA No. 25)

• "Anandarko did make certain decisions regarding operations at the MW."
(Response to RFA No. 26)

• "The BP Parties informed Anadarko, before cement for the MW production
casing was pumped, of certain aspects of the cement procedure for the
production casing." (Response to RFA No. 10)

*APC Int. 31*:  APC is satisfied with BP's response to this interrogatory.

*APC Int. 34*:  APC requests that BP provide a substantive response to this
interrogatory.

*APC Int. 35*:  APC requests that BP provide a substantive response to this
interrogatory.

*APC Int. 37*:  APC requests that BP provide a substantive response to this
interrogatory.

*APC Int. 38*:  APC requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 1*:  AE&P requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 3*:  AE&P requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 4*:  AE&P requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 6*:  AE&P requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 7*:  AE&P requests that BP provide a substantive response to this
interrogatory.

*AE&P Int. 8*:  AE&P requests that BP provide a substantive response to this
interrogatory.

Darin T. Beffa, Esq.
July 14, 2011
Page 7

*AE&P Int. 10*: AE&P requests that BP provide a substantive response to this interrogatory.

*AE&P Int. 15*: AE&P requests that BP provide a substantive response to this interrogatory.

*AE&P Int. 18*: AE&P requests that BP provide a substantive response to this interrogatory.

*AE&P Int. 19*: AE&P requests that BP provide a substantive response to this interrogatory.

*AE&P Int. 22*: AE&P requests that BP provide a substantive response to this interrogatory.

*AE&P Int. 23*: AE&P requests that BP provide a substantive response to this interrogatory.

Please let us know within the next week when we can expect to have the substantive responses requested above.

Thank you.

Sincerely yours,

Charles L. Solomont

cc:     Nancy Wilms, Esq.
        Tiffany Hedgpeth, Esq.
        Diane Hertz, Esq.
        Peter Neger, Esq.
        Warren Anthony Fitch, Esq.
        Ky E. Kirby, Esq.
        Mark Nomellini, Esq.
        Stephen J. Herman, Esq.
        James P. Roy, Esq.
        Corey L. Maze, Esq.
        R. Michael Underhill, Esq.
        DWH Defense Liaison Counsel
        DWH Defense Steering Committee
        DWH USA
                (*all via email*)

# EXHIBIT E

**Beffa, Darin T.**

| | |
|---|---|
| **From:** | Langan, Andrew |
| **Sent:** | Monday, August 22, 2011 6:34 AM |
| **To:** | Sally_Shushan@laed.uscourts.gov |
| **Cc:** | mike_o'keefe@laed.uscourts.gov; CMaze@ago.state.al.us; Mike.Underhill@usdoj.gov; James Roy; sherman@hhkc.com; liaison2179@liskow.com; carl.solomont@bingham.com |
| **Subject:** | MDL 2179 -- Motion to Compel deadlines |

Dear Judge Shushan,

BP and Anadarko continue to work cooperatively toward resolving phase 1 discovery disputes. There are now only a handful of issues still under discussion. We would like to request an extension to Thursday, August 25, for filing of motions to compel, with the hope being that the remaining issues can be resolved within that time. We have spoken with Anadarko's counsel, and they support this request.

Respectfully submitted,

Andy


**J. Andrew Langan, P.C. | Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com

# EXHIBIT F

## Beffa, Darin T.

| | |
|---|---|
| **From:** | Solomont, Charles L. [carl.solomont@bingham.com] |
| **Sent:** | Monday, August 22, 2011 1:25 PM |
| **To:** | Beffa, Darin T. |
| **Cc:** | Nomellini, Mark J.; Hedgpeth, Tiffany; Kirby, Ky E.; Fitch, Warren Anthony; Neger, Peter C.; Hertz, Diane C. |
| **Subject:** | Meet and Confer on Int No. 30/RFAs and Ints. No. 26 and 27 |

Darin:

As we just discussed, and following our conversation of last evening, this will reiterate Anadarko's position with respect to Int. No. 30/the RFAs and Interrogatory Nos. 26 and 27.

Our discussion of last evening clarified the true underlying tension with respect to Int. No. 30 (asking BP to state the basis for each of BP's responses to RFAs that it did not unqualifiedly admit). That tension has been created by BP's justifying its denials of the RFAs on the mere absence of evidence that refutes RFAs and/or on the inclusion in its responses of theoretical possibilities (e.g., repeatedly making the statement that "it is possible that someone working for one of the BP Parties communicated with someone working for Anadarko" about subjects addressed in the RFAs). Our position is that, absent having evidence that establishes that the requested admission is untrue, a party cannot deny, and should admit, the RFA. BP admitted the substance of, or stated that it is unaware of or has not identified anything contrary to the substance of, the following RFAs: 1, 2, 5, 6, 7, 9, 12, 15-19, 21-26, and 28-30. It nonetheless denied these RFAs in whole or in part. Our hope is that BP will reconsider its approach to its responses to the RFAs and withdraw its denials where it in substance has admitted the substance of the RFA or stated that it is unaware of or has not identified anything to the contrary. This will resolve Int. No. 30.

With respect to Int. Nos. 26 and 27, we would be satisfied if BP agreed to supplement its responses to include something along the lines of the following: "The BP Parties state that, having conducted a reasonable search for written communications between the BP Parties and Anadarko, and having made a reasonable inquiry of the BP Parties' representatives most likely to have had oral communications with Anadarko concerning the following subject matters, the BP Parties have not identified any communications from the BP Parties to Anadarko before April 21, 2010 concerning the following: the cement design for the production casing; any of Halliburton's Macondo Well production casing OptiCem reports; consideration of increasing the number of centralizers to be used on the production casing to 21 centralizers; potential gas flow problems; the results of any tests run by Halliburton or any other party on the cement designed for the production casing cement job; any consideration given to or decision regarding spotting heavy mud in the rat hole prior to pumping the cement for the production casing ; any considered or used policy or procedure for cementing the production casing; the use or non-use of a Cement Bond Log after the production casing cement job ; the timing of the resumption of well operations after the pumping of cement for the production casing ; spacer material used or considered for use during displacement of the well; the depth at which the cement plug was set or was to be set; the timing of setting of the Lockdown Sleeve; the temporary abandonment procedure used or considered for the well or changes made to the planned procedures; and the procedure for and mean of interpreting any negative pressure test used on or considered for the Macondo Well."

I look forward to hearing from you on whether any of this can lead to a resolution of our differences on these issue.

Carl

Carl Solomont
T 617.951.8996
F 617.428.6313
carl.solomont@bingham.com

B I N G H A M
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

# EXHIBIT G



38885280

Jul 25 2011
11:21PM

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:    Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "*Deepwater Horizon*" | * | |
| In the Gulf of Mexico, | * | **SECTION: J** |
| on April 20, 2010 | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | **MAGISTRATE JUDGE SHUSHAN** |

**All Actions**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

### DEFENDANT ANADARKO PETROLEUM CORPORATION'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION

### GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Defendant Anadarko Petroleum Corporation ("Responding Party"), through undersigned counsel, objects to the United States' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission (collectively "Requests"), served on Responding Party on June 10, 2011, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court.  Responding Party will respond to the United States' Requests in accordance with such Rules and Orders.

2.      Responding Party objects to the Requests to the extent they seek documents or information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include

A/74450434.4

discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

3.      Responding Party objects to the Requests to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege or protection.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Requests.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

4.      Responding Party objects to the Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

5.      Responding Party objects to the Requests to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restriction imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any

confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

6. Responding Party objects to the Requests to the extent they purport to require Responding Party to set forth or state legal conclusions or its contentions or positions applicable to specific legal or factual issues.

7. Responding Party objects to the Requests to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in the United States' possession.

8. Responding Party objects to the Requests to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

9. Responding Party objects to the Requests to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

10. Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

11. Responding Party objects to the Requests to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16. Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to be produced in a different format.

12. Responding Party objects to the definition of "Anadarko Defendants" as overly broad, confusing, compound, and improperly seeking party discovery from non-party entities.

3

Responding Party will respond to the Requests only on behalf of Responding Party.

13.     Responding Party also objects to the definition "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include Anadarko E&P Company LP ("AEP").

14.     The documents and information provided in Responding Party's responses to the Requests reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

15.     In responding to the Requests, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Request on any ground including, but not limited to, the ground that the document, information or Request is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Request should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Request.

16.     Responding Party reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

4

17.     Except as noted hereinafter, Responding Party objects to the Requests as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.  Responding Party objects to the Requests to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

18.     Responding Party objects to the Requests as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.  Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

19.     Responding Party objects to the extent the United States seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent the United States seeks to require Responding Party to create documents not already in existence.

20.     Responding Party also objects to the Requests to the extent they seek documents that have already been produced in this litigation, the Marine Board Investigation, in the context of the other investigations regarding the Incident, and/or are otherwise available in the public domain.

21.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or request is

5

made without waiver of, and subject to, these General Objections.

## SPECIFIC OBJECTIONS AND RESPONSES

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that an exploratory well was constructed on Macondo Prospect, the "Macondo Well."

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Responding Party incorporates its General Objections.  Responding Party also objects to this Request for Admission ("RFA") because the undefined terms "exploratory well" and "constructed" are vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Admit.

### REQUEST FOR ADMISSION NO. 2:

Admit that the Macondo Well is located on the Outer Continental Shelf approximately 50 miles from the Mississippi River delta.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Responding Party incorporates its General Objections.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Admit.

### REQUEST FOR ADMISSION NO. 3:

Admit that strings of casing, cement, production casing, casing hanger, casing accessories, and the well head were installed in the Macondo Well prior to April 20, 2010.

### RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Responding Party incorporates its General Objections.  Responding Party also objects to

6

this RFA because the undefined term "casing accessories" is vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that there was a loss of well control and a blowout of the Macondo Well on or about April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Responding Party incorporates its General Objections.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 5:**

Admit that oil flowed from the Macondo Well into the Gulf of Mexico within 200 nautical miles of the United States' coastline following the blowout on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, Responding Party objects to this RFA because the undefined phrases "flowed from the Macondo Well" and "following the blowout" are vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Deny.

7

## RESPONSE TO INTERROGATORY NO. 2(a):

Responding Party denies RFA No. 5 because, based on the discovery to date, the oil discharged from the *Deepwater Horizon* and its appurtenances, e.g., the blowout preventer and riser.

## REQUEST FOR ADMISSION NO. 6:

Admit that oil flowed from the Macondo Well into the Gulf of Mexico for several months following April 20, 2010 until the Macondo Well was finally capped on July 15, 2010.

## RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Responding Party incorporates its General Objections. Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this RFA because the undefined phrase "flowed from the Macondo Well" is vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(b):

Responding Party denies RFA No. 6 because, based on the discovery to date, the oil discharged from the *Deepwater Horizon* and its appurtenances, e.g., the blowout preventer and riser.

## REQUEST FOR ADMISSION NO. 7:

Admit that the oil discharged from the Macondo Well caused a film or sheen or discoloration on the surface of the waters of the Gulf of Mexico.

8

A/74450434.4

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA because the undefined phrases "discharged from the Macondo Well" and "film or sheen or discoloration" are vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain and after conducting a reasonable inquiry from third parties, Responding Party responds as follows: Deny.

**RESPONSE TO INTERROGATORY NO. 2(c):**

Responding Party denies RFA No. 7 because, based on the discovery to date, the oil discharged from the *Deepwater Horizon* and its appurtenances, e.g., the blowout preventer and riser.  Responding Party also denies that all waters of the Gulf of Mexico were impacted by a "film or sheen or discoloration."  Responding Party admits that there was a film, sheen or discoloration on the surface of some portions of the waters of the Gulf of Mexico.

**REQUEST FOR ADMISSION NO. 8:**

Admit that oil from the Macondo well spread through the waters of the Gulf of Mexico to within 3 miles of the coastline of the United States and onto adjoining shorelines.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

9

applicable privilege or protection.  Responding Party also objects to this RFA because the undefined phrases "from the Macondo Well," "spread through the waters of the Gulf of Mexico," and "adjoining shorelines" are vague and ambiguous.

Subject to and without waiving these objections, based on information available in the public domain and after conducting a reasonable inquiry from third parties, Responding Party responds as follows: Deny.

### RESPONSE TO INTERROGATORY NO. 2(d):

Responding Party denies RFA No. 8 because, based on the discovery to date, the oil discharged from the *Deepwater Horizon* and its appurtenances, e.g., the blowout preventer and riser.  Further, Responding Party denies RFA No. 8 because the oil impacted only a portion of the waters within the Gulf of Mexico.  Based on information available in the public domain, Responding Party admits that in some areas oil migrated to within 3 miles of the coastline of the United States and in some areas it migrated onto shorelines.

### REQUEST FOR ADMISSION NO. 9:

Admit that as of April 20, 2010, MMS had not approved the AEP assignment of its interest in the Lease to APC.

### RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this RFA because it calls for a legal conclusion.  Responding Party also objects to this RFA because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows:
Deny.

### RESPONSE TO INTERROGATORY NO. 2(e):

Responding Party denies RFA No. 9 because MMS's approval of the AEP assignment to APC deemed the assignment effective as of April 1, 2010 per MMS regulations, based on MMS approval.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 9 include Vera Wells and Jim Bryan.  Documents that support Responding Party's response to RFA No. 9 include the approval from MMS, Bates Nos. ANA-MDL-000023862 through ANA-MDL-000023863.

### REQUEST FOR ADMISSION NO. 10:

Admit that throughout the entire time that oil flowed from the Macondo Well following the April 20, 2010 Incident to the date of the capping of the Well, You were a lessee of the Macondo Prospect where the Macondo Well is located.

### RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA to the extent it calls for a legal conclusion.  In addition, Responding Party objects to this RFA because the undefined phrases "flowed from the Macondo Well" and "entire time" are vague and ambiguous. Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko

11

Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(f):

Responding Party denies RFA No. 10 because AEP was not a lessee of the Mississippi Canyon 252 Lease following the April 20, 2010 Incident to the date of the capping of the Well and because, based on the discovery to date, the oil discharged from the *Deepwater Horizon* and its appurtenances, e.g., the blowout preventer and riser.   AEP assigned its interest in Lease No. OCS-G 32306 to APC, effective April 1, 2010.  Responding Party admits that APC was a lessee of the Mississippi Canyon 252 Lease following the April 20, 2010 Incident to the date of the capping of the Well.  *See also* Responding Party's response to RFA No. 9.

## REQUEST FOR ADMISSION NO. 11:

Admit that You paid invoices from BP for the costs of the components that were installed in the Macondo Well, including the strings of casing, cement, production casing, casing hanger, casing accessories, and the well head.

## RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko

12

Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined terms "costs," "components," and "casing accessories" are vague and ambiguous.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(g):

 Responding Party denies RFA No. 11 because AEP did not pay invoices from BP for the costs of the components that were installed in the Macondo Well.  APC made payments on certain Joint Interest Billing invoices ("JIBs") from BP which provide a description of the items covered as set forth therein. APC refers the United States to the JIBs.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 11 include Jim Bryan and Jerry Byrd.  Documents that support Responding Party's response to RFA No. 11 include certain JIBs, Bates Nos. ANA-MDL-000230694 through ANA-MDL-000230693; ANA-MDL-000230696 through ANA-MDL-000230695; ANA-MDL-000230698 through ANA-MDL-000230697; and ANA-MDL-000230700 through ANA-MDL-000230699.  *See also* Responding Party's Response to Interrogatory No. 18.

## REQUEST FOR ADMISSION NO. 12:

Admit that You are a partial owner of the components that were installed in the Macondo Well, including the strings of casing, cement, production casing, casing hanger, and the well head.

## RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Responding Party incorporates its General Objections.  Responding Party further objects

13

to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA because it calls for a legal conclusion.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined terms "partial owner" and "components" are vague and ambiguous.  Responding Party also objects to this RFA to the extent it calls for a legal conclusion.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(h):

Responding Party denies RFA No. 12 because the Lease Exchange Agreement did not create an ownership interest in the components or parts that were installed in the Macondo Well. APC directs the United States to the Operating Agreement, the Lease Exchange Agreement and the Well Participation Agreement, all of which have been produced in this litigation. *See also* Responding Party's response to RFA No. 11.

## REQUEST FOR ADMISSION NO. 13:

Admit that You are partial owner of tangible personal property comprising the Macondo Well.

## RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Responding Party incorporates its General Objections.  Responding Party further objects

14

to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA because it calls for a legal conclusion.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party objects to this RFA to the extent it calls for a legal conclusion.  Responding Party also objects to this RFA because the undefined phrases "partial owner" and "tangible personal property" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

### RESPONSE TO INTERROGATORY NO. 2(i):

Responding Party denies RFA No. 13 because the Lease Exchange Agreement did not create an ownership interest in the components or parts that were installed in the Macondo Well. APC directs the United States to the Operating Agreement, the Lease Exchange Agreement and the Well Participation Agreement, all of which have been produced in this litigation.  *See also* Responding Party's response to RFA No. 11.

### REQUEST FOR ADMISSION NO. 14:

Admit that You funded part of all drilling operations at the Macondo Well.

### RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Responding Party incorporates its General Objections.  Responding Party further objects

15

to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA because it calls for a legal conclusion.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this RFA because the undefined phrase "funded part of all drilling operations" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(j):

Responding Party denies RFA No. 14 because AEP did not fund any of the drilling operations at the Macondo Well.  APC made payments on certain JIBs from BP which provide a description of the activities covered as set forth therein. APC refers the United States to the JIBs. *See* Responding Party's Response to Interrogatory No. 18.

## REQUEST FOR ADMISSION NO. 15:

Admit that BP provided You Information about the Macondo Well design.

## RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Responding Party incorporates its General Objections.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because

16

"You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined phrase "Macondo Well design" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 16:**

Admit that You were given access to all the real-time data from the Macondo Well that was available in Halliburton Sperry Sun's INSITE Anywhere program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined term "given access" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

**RESPONSE TO INTERROGATORY NO. 2(k):**

Responding Party denies RFA No. 16 because AEP was not given access to the INSITE

17

Anywhere program.   After conducting a reasonable inquiry of the information available, Responding Party lacks the specific information necessary to affirmatively admit or deny whether APC was given access to all the real-time data from the Macondo Well that was available on the INSITE Anywhere program.   Responding Party admits that it had access to some real-time data from the Macondo Well available on INSITE Anywhere, but does not know whether the information it was provided constituted all the real-time data from the Macondo Well that otherwise was available on INSITE Anywhere.   Halliburton Sperry Sun may have information regarding the total universe of real-time data that was available on INSITE Anywhere and whether all -- or only some -- of the information was available to APC.

**REQUEST FOR ADMISSION NO. 17:**

Admit that BP gave You access to daily operations reports, pore pressure fracture gradient reports, geologic reports, and all other Information about the Macondo Well posted in Halliburton's Wellspace program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Responding Party incorporates its General Objections.   Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects because the undefined term "access" is vague and ambiguous.

18

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

### RESPONSE TO INTERROGATORY NO. 2(l):

Responding Party denies RFA No. 17 because AEP was not given access to Information about the Macondo Well posted in Halliburton's Wellspace program.  Responding Party denies that APC was given access to all Information about the Macondo Well posted in Halliburton's Wellspace program.  Responding Party understands it was not permitted access to at least one folder, which was a folder that only BP could access.  *See* BP-HZN-2179MDL00010456.  Halliburton and BP may have additional information concerning the universe of information contained in Halliburton's Wellspace program for the Macondo Well and what portion of that information APC was permitted to access.

### REQUEST FOR ADMISSION NO. 18:

Admit that at least one Anadarko employee, consultant, or contractor was assigned to monitor drilling operations at the Macondo Well.

### RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects because the undefined phrase "monitor the drilling operations" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows:

A/74450434.4

Deny.

**RESPONSE TO INTERROGATORY NO. 2(m):**

Responding Party denies RFA No. 18 because neither APC nor AEP assigned an employee, consultant, or contractor to monitor the drilling operations of the Macondo Well, as Responding Party understands the phrase "monitor the drilling operations" of the Macondo Well. As a non-operating partner, Responding Party did not engage in, evaluate, or oversee drilling or other operations but instead relied on BP's expertise and knowledge. Persons with knowledge of certain facts that support Responding Party's response to RFA No. 18 include Darrell Hollek, Josh Nichols, and Robert Quitzau. *See also* the deposition testimony of Darrell Hollek and Robert Quitzau.

## REQUEST FOR ADMISSION NO. 19:

Admit that You received regular summaries of drilling operations from an Anadarko employee, consultant, or contractor about operations at the Macondo Well.

## RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Responding Party incorporates its General Objections. Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP. In addition, Responding Party objects to the defined term "Anadarko" as overly broad, confusing, compound, beyond the

20

scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this RFA because the undefined phrase "regular summaries of drilling operations" is vague, ambiguous, and overly broad.  Responding Party also objects to this RFA because the undefined term "operations" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(n):

Responding Party denies RFA No. 19 because APC and AEP did not receive regular summaries of drilling operations at the Macondo Well from an Anadarko employee, consultant or contractor, as Responding Party understands the phrase "regular summaries of drilling operations" at the Macondo Well.  Josh Nichols, and later Robert Quitzau, provided APC's Deepwater Gulf of Mexico drilling group at its 7:30 am morning meeting with very brief, high level re-caps of certain Macondo activity based on their review of the daily operating reports or other high level summaries.  The daily operating reports provided limited information and data regarding some, but not all, aspects of drilling operations.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 19 include Josh Nichols and Robert Quitzau.  *See also* the deposition testimony of Robert Quitzau.

## REQUEST FOR ADMISSION NO. 20:

Admit that You, through Your employees, consultants or contractors, suggested that BP reconsider its decision to terminate drilling of the Macondo Well at about 18,360 feet.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client

A/74450434.4

privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined terms "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP. Responding Party objects to this RFA because the undefined terms "suggested" and "reconsider" are vague, ambiguous, and overly broad.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

### RESPONSE TO INTERROGATORY NO. 2(o):

Responding Party denies RFA No. 20 because AEP did not have any communications with BP regarding total depth.  Responding Party also denies RFA No. 20 because it mischaracterizes communications between APC and BP.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 20 include Paul Chandler, Alan O'Donnell, and Nick Huch.  *See* Bates Nos. ANA-MDL-000064154-55; Bates No. APC-SHS2A-000001256; and the deposition testimony of Paul Chandler, Alan O'Donnell, and Nick Huch.

### REQUEST FOR ADMISSION NO. 21:

Admit that You, through Your employees, consultants or contractors suggested that BP consider the use of certain mud weights in the construction of the Macondo Well.

### RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Responding Party incorporates its General Objections.  Responding Party further objects

to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined terms "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  In addition, Responding Party objects to this Request because the undefined terms "suggested" and "consider" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(p):

Responding Party denies RFA No. 21 because AEP did not suggest that BP consider the use of certain mud weights in the construction of the Macondo Well.  Responding Party also denies RFA No. 21 because it mischaracterizes communications between APC and BP.  On one occasion only, Robert Quitzau suggested to BP that BP consider reducing the mud weight to 14.3 ppg.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 21 include Robert Quitzau.  *See* the deposition of Robert Quitzau, May 25, 2011, at 131:12-132:8 and Bates Nos. ANA-MDL-000002157-58.

## REQUEST FOR ADMISSION NO. 22:

Admit that You requested that BP consider drilling the Macondo Well deeper than the final total depth of 18,360 feet.

23

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this RFA because the undefined terms "consider" and "deeper" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

**RESPONSE TO INTERROGATORY NO. 2(q):**

Responding Party denies RFA No. 22 because AEP did not have any communications with BP regarding the total depth of the well.  Responding Party also denies RFA No. 22 because it mischaracterizes communications between APC and BP.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 22 include Paul Chandler, Alan O'Donnell, and Nick Huch.   *See* Bates Nos. ANA-MDL-000064154-55; Bates No. APC-SHS2A-000001256 and the deposition testimony of Alan O'Donnell, Paul Chandler, and Nick Huch.

**REQUEST FOR ADMISSION NO. 23:**

Admit that You made all payments to BP for the Macondo Well on behalf of AEP.

24

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

**RESPONSE TO INTERROGATORY NO. 2(r):**

Responding Party denies RFA No. 23 because Responding Party did not make any payments to BP for the Macondo Well on behalf of AEP.  Persons with knowledge of certain facts that support Responding Party's response to RFA No. 23 include Jim Bryan and Jerry Byrd.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Allen O'Donnell [sic] was an employee of APC between January 2010 and the time of the Macondo Well Incident on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Responding Party incorporates its General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in

25

Pretrial Order No. 11.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 25:**

Admit that Allen O'Donnell [sic] was not an employee of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Responding Party incorporates its General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 26:**

Admit that Allen O'Donnell [sic] took action on behalf of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010, including signing an Authorization for Expenditure on [sic] for the Macondo well on April 15, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects because the undefined phrase "took action on behalf of AEP" is

26

vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows:
Deny.

### RESPONSE TO INTERROGATORY NO. 2(s):

Responding Party denies RFA No. 26 because the only action Alan O'Donnell ever took on behalf of AEP in connection with the Macondo Well was to sign the Authorization for Expenditure for the Macondo Well on April 15, 2010.  *See* Bates No. BP-HZN-MBI00176220.

### REQUEST FOR ADMISSION NO. 27:

Admit that Stuart Strife was an employee of APC between December 2009 and the time of the Macondo Well Incident on April 20, 2010.

### RESPONSE TO REQUEST FOR ADMISSION NO. 27:

Responding Party incorporates it General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving its objections, Responding Party responds as follows:
Admit.

### REQUEST FOR ADMISSION NO. 28:

Admit that Stuart Strife was not an employee of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010.

### RESPONSE TO REQUEST FOR ADMISSION NO. 28:

Responding Party incorporates its General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

A/74450434.4

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

## REQUEST FOR ADMISSION NO. 29:

Admit that Stuart Strife took action on behalf of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010, including signing Authorizations for Expenditure on for the Macondo Well on December 17, 2009, February 18, 2010, and March 30, 2010.

## RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects because the undefined phrase "took action on behalf of AEP" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(t):

Responding Party denies RFA No. 29 because the only action Stuart Strife ever took on behalf of AEP in connection with the Macondo Well was to sign the Authorizations for Expenditure for the Macondo Well on December 17, 2009, February 18, 2010, and March 30, 2010.  *See* Bates Nos. ANA-MDL-000030625;  ANA-MDL-000030714;  APC-SHS2A-000001204.

**REQUEST FOR ADMISSION NO. 30:**

Admit that Steve Wallace was an employee of APC between December 2009 and the time of the Macondo Well Incident on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Responding Party incorporates its General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 31:**

Admit that Steve Wallace was not an employee of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Responding Party incorporates its General Objections.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 32:**

Admit that Steve Wallace took action on behalf of AEP between December 2009 and the time of the Macondo Well Incident on April 20, 2010, including signing the Lease Exchange Agreement on December 17, 2009, and the Assignment of Record Title Interest in MC252 on December 17, 2009.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Responding Party incorporates its General Objections.  Responding Party further objects to this RFA to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this RFA to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects because the undefined phrase "took action on behalf of AEP" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(u):

Responding Party denies RFA No. 32 because the only action Steve Wallace ever took on behalf of AEP in connection with the Macondo Well was to sign the Lease Exchange Agreement on December 17, 2009 and the Assignment of Record Title Interest in MC252 on December 17, 2009.  *See* The Lease Exchange Agreement and the Assignment of Record Title Interest in MC252 which have already been produced in this litigation.

**REQUEST FOR ADMISSION NO. 33:**

Admit that document Bates Nos. APC-HECI-000001601 through APC-HECI-000001840 is a true, complete and accurate copy of the Macondo Prospect Joint Operating Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Deny.

30

## RESPONSE TO INTERROGATORY NO. 2(v):

Responding Party denies RFA No. 33 because the RFA mis-cites the Bates prefix.  The correct Bates Nos. that provide a true, complete and accurate copy of Macondo Prospect Joint Operating Agreement are Bates Nos. APC-HEC1-000001601 through APC-HEC1-000001840.

## REQUEST FOR ADMISSION NO. 34:

Admit that document Bates Nos. APC-MDL-000030610 through APC-MDL-000030612 is a true, complete and accurate copy of Anadarko's Ratification and Joinder of the Joint Operating Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(w):

Responding Party denies RFA No. 34 because the RFA mis-cites the Bates prefix.  The correct Bates Nos. that provide a true, complete and accurate copy of Anadarko's Ratification and Joinder of the Joint Operating Agreement are Bates Nos. ANA-MDL-000030610 through ANA-MDL-000030612.

## REQUEST FOR ADMISSION NO. 35:

Admit that document Bates Nos. APC-MDL-000030613 through APC-MDL-000030650 is a true, complete and accurate copy of the Well Participation Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 35:

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows:

A/74450434.4

Deny.

## RESPONSE TO INTERROGATORY NO. 2(x):

Responding Party denies RFA No. 35 because the RFA mis-cites the Bates prefix.  The correct Bates Nos. that provide a true, complete and accurate copy of the Well Participation Agreement are Bates Nos. ANA-MDL-000030613 through ANA-MDL-000030650.

## REQUEST FOR ADMISSION NO. 36:

Admit that document Bates Nos. APC-MDL-000030651 through APC-MDL-000030681 is a true, complete and accurate copy of the Lease Exchange Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 36:

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Deny.

## RESPONSE TO INTERROGATORY NO. 2(y):

Responding Party denies RFA No. 37 because the RFA mis-cites the Bates prefix.  The correct Bates Nos. that provide a true, complete and accurate copy of the Lease Exchange Agreement are Bates Nos. ANA-MDL-000030651 through ANA-MDL-000030681.

## REQUEST FOR ADMISSION NO. 37:

Admit that document Bates Nos. APC-SHS2A-00001082 through APC-SHS2A-00001084 is a true, complete and accurate copy of the initial Authorization for Expenditure.

## RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

A/74450434.4

**REQUEST FOR ADMISSION NO. 38:**

Admit that document Bates No. ANA-MDL-000030714 is a true, complete and accurate copy of the first Supplemental Authorization for Expenditure.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 39:**

Admit that document Bates No. ANA-MDL-000030690 is a true, complete and accurate copy of the second Supplemental Authorization for Expenditure.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 40:**

Admit that documents Bates Nos. ANA-MDL-000030727 and ANA-MDL-000030728 are true, complete and accurate copies of the Authorization for Expenditure for the Production Casing and Lock Down Sleeve purchase and installation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Responding Party incorporates its General Objections.

Subject to and without waiving its objections, Responding Party responds as follows: Admit.

## INTERROGATORIES

## INTERROGATORY NO. 1:

Identify each and every Person who participated in answering these interrogatories, indicating the number of each interrogatory for which each Person supplied Information.

## RESPONSE TO INTERROGATORY NO. 1:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, Responding Party objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because the undefined term "participated" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party's responses were prepared with the assistance of counsel.

## INTERROGATORY NO. 2:

For any response to Plaintiff United States' Requests to Admit other than an unqualified admission, please state the basis for Your response, state each fact in support of Your response, Identify each Person with knowledge of each such fact, and Identify each document that supports Your response.

## RESPONSE TO INTERROGATORY NO. 2:

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or

34

any other applicable privilege or protection.  In addition, Responding Party objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the defined term "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "Your" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party directs the United States to Responding Party's responses and additional objections to RFAs 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 26, 29, 32, 33, 34, 35 and 36.

## INTERROGATORY NO. 3:

Identify every Anadarko employee, consultant, or contractor known to You who has knowledge, Information, documents or tangible physical evidence Relating to the Macondo Well, indicating the knowledge, Information, documents or tangible physical evidence held by each Person.

## RESPONSE TO INTERROGATORY NO. 3:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, Responding Party objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the

defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**INTERROGATORY NO. 4:**

Identify all the written contracts and any other Information that You contend constitutes all agreements between You and BP regarding the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows:

36

The Operating Agreement and its exhibits; the Lease Exchange Agreement and its exhibits; the Ratification and Joinder of the Joint Operating Agreement; the Well Participation Agreement and its exhibits; and the assignments related to Lease Exchange Agreement constitute all agreements between APC and/or AEP and BP.

**INTERROGATORY NO. 5:**

Identify all the written contracts and any other Information that You contend constitutes all agreements between You and MOEX regarding the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: The Operating Agreement and the Ratification of the Operating Agreement constitute all the non-privileged or otherwise non-protected agreements between APC and/or AEP and MOEX regarding the Macondo Well.

**INTERROGATORY NO. 6:**

Identify all the written contracts and any other Information that You contend constitutes all agreements between You and AEP regarding the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects because the undefined terms "agreements" and "between" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: The Assignment of Record Title Interest in Federal OCS Oil and Gas Lease for all of Block 252, Mississippi Canyon.

**INTERROGATORY NO. 7:**

State the reasons why the assignment of record title interest from AEP to APC was not executed immediately upon entering the Lease Exchange Agreement between AEP, APC, and BP, and Identify those Persons with knowledge of these reasons.

38

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: The assignment from AEP to APC was not executed immediately because BP was first required to assign the relevant portion of its interest in the lease to AEP and such assignment had to be approved by the MMS.  Persons with knowledge of these reasons include Jim Bryan.

**INTERROGATORY NO. 8:**

Describe the transmittal of the document submitted to MMS to transfer the record title interest from AEP to APC and include in Your description the date, time of day, and Person(s) who transmitted it, and how it was submitted, i.e. certified mail, regular mail, electronically, FedEx, etc., and whether You or any other Anadarko entities were aware of the April 20, 2010 Incident at the Macondo Well when You and AEP submitted the record title interest assignment from AEP to APC to MMS for approval.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined terms

39

"You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Interrogatory because the undefined phrase "transmittal of the document" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: The assignment transferring the 22.5% record title interest in Lease No. OCS-G 32306 from AEP to APC was executed on April 15, 2010 by Jim Bryan, on behalf of AEP.  The document, along with a cover letter, was then sent to MMS during the business hours of April 20, 2010 via overnight mail through UPS.  It was received by MMS the morning of April 21, 2010.  The fire and explosion aboard the Deepwater Horizon occurred late in the evening of April 20, 2010, and neither AEP, APC nor any other Anadarko entity was in any way aware of the Incident when the assignment was sent to MMS for approval.  The assignment included an effective date of April 1, 2010, which was approved by MMS.

**<u>INTERROGATORY NO. 9</u>:**

State the specific date or dates that the Lease Exchange Agreement, the Well Participation Agreement, and the Operating Agreement were physically signed by You if they were different from the date indicated on the signature page of such agreements, December 17, 2009.  If they

were physically signed on December 17, 2009, so state.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: The Lease Exchange Agreement, Operating Agreement, and Well Participation Agreement were physically signed on December 28, 2009.

**INTERROGATORY NO. 10:**

State whether there was a tax benefit to You by executing the Lease Exchange Agreement, the Well Participation Agreement, and the Operating Agreement in 2009 rather than in 2010. If there was such a benefit, describe it, including the requirements for such a benefit, the tax filings that relied on this transaction, and deductions or credits that were claimed, if any.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the

attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because it is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory because it is overly broad and not calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects because the undefined term "tax benefit" is vague and ambiguous.

## INTERROGATORY NO. 11:

Describe the agreement You reached with the BP concerning an interest in the tangible personal property comprising the Macondo Well, specifically including the language found in the definition of Initial Exploratory Well or IEW in the Well Participation Agreement, and the reasons for such agreement and the provision in the Well Participation Agreement.

## RESPONSE TO INTERROGATORY NO. 11:

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Interrogatory because it calls for a legal conclusion.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko

42

Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: The agreements between BP and APC and/or AEP are embodied in the documents identified in response to Interrogatory No. 4 and those documents speak for themselves.

**INTERROGATORY NO. 12:**

Identify all Anadarko employees, consultants, or contractors who performed any work related to the Macondo Well, including a summary of when they began work on Macondo and the general type of work that was performed.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. In addition, Responding Party objects to this Interrogatory because the undefined term "any work related to the Macondo Well" is vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

A/74450434.4

Subject to and without waiving these objections, Responding Party responds as follows: As a non-operating party, Responding Party did not perform any work relating to the Macondo Well.  The deposition testimony of Jim Bryan, Paul Chandler, Darrell Hollek, Nick Huch, Alan O'Donnell, and Robert Quitzau describes, to the best of the deponents' knowledge, if any, Responding Party's role in connection with the Macondo Well, activities undertaken by deponent in connection with that role, and Responding Party's non-operating interest in Mississippi Canyon 252.

## INTERROGATORY NO. 13:

Did You request any changes to the terms of the Joint Operating Agreement before ratifying and joining the agreement? If yes, Identify those requested changes and the revisions, if any, to the Joint Operating Agreement and Identify other agreements, if any, on which the Joint Operating Agreement was based, and any changes You requested to such other agreements.

## RESPONSE TO INTERROGATORY NO. 13:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.   Responding Party also objects because

44

the undefined phrase "such other agreements" is vague, ambiguous, and overly broad.

Subject to and without waiving these objections, Responding Party responds as follows: No.

## INTERROGATORY NO. 14:

Did You request any changes to the terms of the Lease Exchange Agreement? If yes, Identify those requested changes and the revisions, if any, to the Lease Exchange Agreement and Identify other agreements, if any, on which the Lease Exchange Agreement was based, and any changes You requested to such other agreements.

## RESPONSE TO INTERROGATORY NO. 14:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects because the undefined phrase "such other agreements" is vague, ambiguous, and overly broad.

Subject to and without waiving these objections, Responding Party responds as follows: The Lease Exchange Agreement was a negotiated document.   However, once the Lease Exchange Agreement was executed, Responding Party did not request any further changes to the

45

document.

**INTERROGATORY NO. 15:**

Did You request any changes to the terms of the Well Participation Agreement? If yes, Identify those requested changes and the revisions, if any to the Well Participation Agreement, and Identify other agreements, if any, on which the Well Participation Agreement was based, and any changes You requested to such other agreements.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects because the undefined phrase "such other agreements" is vague, ambiguous, and overly broad.

Subject to and without waiving these objections, Responding Party responds as follows: The Well Participation Agreement was a negotiated document.   However, once the Well Participation Agreement was executed, Responding Party did not request any further changes to the document.

46

**INTERROGATORY NO. 16:**

Did You perform any due diligence with respect to BP related to Health, Safety or Environment prior to becoming a lessee of the Macondo Prospect? If yes, describe the nature of the due diligence performed, Identify the documents that were reviewed, Identify any findings You made, and Identify all those Persons who performed this work.

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party objects to the term "due diligence" as vague and overbroad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party relied on its knowledge of BP's reputation and experience with drilling deepwater wells in the Gulf of Mexico in general, and specifically in the region around Mississippi Canyon 252; BP's safety awards from the government; and Responding Party's past experience with BP as operator.  Responding Party did not perform additional due diligence with respect to BP related to Health, Safety or Environment prior to entering into the Lease Exchange

A/74450434.4

Agreement with BP.

**INTERROGATORY NO. 17:**

Identify all agreements for payment, cash calls, calls for future payments, invoices or joint interest billings (JIB) (collectively, "request for payment") that BP sent Anadarko pursuant to the Joint Operating Agreement, and for each request for payment, describe when Anadarko received the request for payment, how it was transmitted, and for what services or costs the request was made.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: BP sent requests for payment to APC, but none to AEP.  The Bates Nos. for these documents are as follows:

| Invoice Period | Services and Costs | Bates Number |
|---|---|---|
| 01, 2010<br><br>Invoice:<br>0120100070003670<br>Venture: 199381 | MC BLK 252 Cash Call Request for 003 / 2010: $5,200,000.00 | BP-HZN-2179MDL2752577 through BP-HZN-2179MDL2752582 |
| 2, 2010 | MC BLK 252 Basic Ownership Cash Call | BP-HZN-2179MDL02379545 through BP-HZN-2179MDL02379548 |

48

| Invoice: 0120100070003670 Venture: 199381 | Request for 004 / 2010: $10,094,494.00 | |
|---|---|---|
| 3, 2010<br><br>Invoice: 0120100070003670 Venture: 199381 | MC BLK 252 Basic Ownership Cash Call Request for 005 / 2010: $12,908,570.86 | BP-HZN-2179MDL02379484 through BP-HZN-2179MDL02379489 |
| 4, 2010<br><br>Invoice: 0120100070003670 Venture: 199381 | MC BLK 252 Basic Ownership Cash Call Request for 006 / 2010: $6,864,000.00 | BP-HZN-2179MDL02379499 through BP-HZN-2179MDL02379504 |
| 5, 2010<br><br>Invoice: 0120100070003670 Venture: 199381 | MC BLK 252 Basic Ownership Cash Call Request for 007 / 2010: $168,888,992.61 | ANA-MDL-000073379 through ANA-MDL-000073383 |
| 6, 2010<br><br>Invoice: 0120100070003670 Venture: 199381 | MC BLK 252 Basic Ownership Cash Call Request for 008 / 2010: $465,132,490.88 | ANA-MDL-000230558 through ANA-MDL-000230564 |
| July 2010<br><br>JIB Invoice No. 072010070003670 | MC BLK 252 Basic Ownership/DW/Cash Call: $1,235,856,665.29 | ANA-MDL-000199705 through ANA-MDL-000199711 |
| 8, 2010<br><br>Invoice: 0120100070003670 Venture: 199381002 | MC BLK 252 Basic Ownership Cash Call Request for 010 / 2010: $522,080,000.00 | ANA-MDL-000184856 through ANA-MDL-000184862 |
| September 2010<br><br>JIB Invoice No. 0920100070003670 | MC BLK 252 Basic Ownership/DW/Cash Call: $1,068,449,379.54 | ANA-MDL-000230582 through ANA-MDL-000230587 |
| 10, 2010<br><br>Invoice: 0120100070003670 Venture: 199381002 | MC BLK 252 Basic Ownership Cash Call Request for 012 / 2010: $77,639,005.88 | ANA-MDL-000198029 through ANA-MDL-000198049 |
| 11, 2010 | MC BLK 252 Basic | ANA-MDL-000230599 through ANA- |

49

| Invoice: 0120100070003670 Venture: 199381002 | Ownership Cash Call Request for 001 / 2011: $190,581,661.05 | MDL-000230636 |
|---|---|---|
| 12, 2010 Invoice: 0120100070003670 Venture: 199381002 | MC BLK 252 Basic Ownership Cash Call Request for 002 / 2011: $170,459,434.94 | ANA-MDL-000230637 through ANA-MDL-000230692 |

All non-privileged or otherwise non-protected documents referenced in this Interrogatory response related to the Macondo Well have been produced.

## INTERROGATORY NO. 18:

Identify all payments made by Anadarko to BP related to the Macondo Prospect and for each such payment, describe when Anadarko made the payment, which Anadarko entity made the payment, how the payment was transmitted or tendered, to which request for payment it corresponded, and for what services, costs or other purposes the payment was made.

## RESPONSE TO INTERROGATORY NO. 18:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: All non-privileged or otherwise non-protected responsive documents reflecting payments made by APC related to the Macondo Prospect have been produced.  The Bates Nos. for these

documents are as follows:

| Payment Date | Payment Made By | Amount | Bates Number |
|---|---|---|---|
| 2/26/2010 | APC | $21,084,117.60 | ANA-MDL-000230694 through ANA-MDL-000230693 |
| 3/25/2010 | APC | $14,458,349.04 | ANA-MDL-000230696 through ANA-MDL-000230695 |
| 4/23/2010 | APC | $16,412,588.01 | ANA-MDL-000230698 through ANA-MDL-000230697 |
| 6/1/2010 | APC | $1,154,732.56 | ANA-MDL-000230700 through ANA-MDL-000230699 |

**INTERROGATORY NO. 19:**

Identify any Anadarko employees, consultants or contractors who were assigned to monitor or did monitor drilling operations at the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 19:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects because the undefined phrase "monitor drilling operations" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: As a non-operating party, Responding Party did not assign any employees, consultants or contractors to perform or monitor drilling operations at the Macondo Well as Responding Party

51

understands the phrase "monitor drilling operations."  *See also* Responding Party's response to Interrogatory No. 2(m).

**INTERROGATORY NO. 20:**

Identify all well control events, including but not limited to kicks, influxes and lost returns, at the Macondo Well of which You had knowledge before April 22, 2010 and Identify the approximate date when You became aware of such events.

**RESPONSE TO INTERROGATORY NO. 20:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects because the undefined phrase "well control events" is vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party was aware of well control events, as that phrase is understood by Responding Party, that took place at the Macondo Well between December 17, 2009 and April 20, 2010 within several days following well control events that took place at the Macondo Well on the following dates: 2/17/10, 3/2/10, 3/8/10, 4/3/10, 4/4/10, and 4/9/10.

52

**INTERROGATORY NO. 21:**

State whether You had any processes in place on or before April 20, 2010 for monitoring and/or evaluating BP's quality of work, compliance with applicable operating regulations, and/or compliance with the terms of the agreements. If such processes did exist, describe it/them and Identify Anadarko employees, consultants or contractors who performed such work.

**RESPONSE TO INTERROGATORY NO. 21:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects because the undefined terms "processes," "monitoring," "evaluating," "quality of work," and "agreements" are vague, ambiguous, and overly broad.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party did not have any formal processes in place on or before April 20, 2010 for monitoring and/or evaluating BP's quality of work, compliance with applicable operating

regulations, and/or compliance with the terms of the agreements, except as set forth in the response to Interrogatory No. 23.

## INTERROGATORY NO. 22:

State whether Anadarko has any general processes or policies in place for monitoring and/or evaluating a designated operator's quality of work, compliance with applicable operating regulations, and/or compliance with the terms of operating agreements when Anadarko is a "non-operating" partner on a well. If such processes or policies exist, state the date when they were instituted, describe how they operate, and if/how they differ from the process in place for the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 22:

Responding Party incorporates its General Objections. Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects because the undefined terms "processes," "monitoring," "evaluating," "quality of work," and "agreements" are vague, ambiguous, and overly broad. Responding Party also objects to this Interrogatory to the extent it

goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party does not have any formal processes or policies in place for monitoring and/or evaluating a designated operator's quality of work, compliance with applicable operating regulations, and/or compliance with the terms of operating agreements when Anadarko is a "non-operating" party on a well, except as set forth in the response to Interrogatory No. 23.

**INTERROGATORY NO. 23:**

State whether You had any processes in place on or before April 20, 2010 for monitoring and/or evaluating BP's operating expenditures at the Macondo Well. If such processes did exist, describe them, and identify Anadarko employees, consultants or contractors who performed such work.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory because it is vague, ambiguous, and overly broad.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP. Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of

55

admissible evidence.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects because the undefined terms "processes," "monitoring," "evaluating," and "operating expenditures" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: Prior to April 20, 2010, each JIB invoice was reviewed and approved by a manager having the appropriate level of monetary approval authority.  Jerry Byrd, APC's Manager of Joint Interest Accounting, also reviewed each invoice.   Additionally, under Exhibit C to the Operating Agreement, Responding Party had the right to audit the Joint Interest Billings within 24 months after the end of the calendar year in which the expenses were billed to ensure that the expenses were made in a manner consistent with the Operating Agreement.

**INTERROGATORY NO. 24:**

Did You receive, monitor and/or evaluate BP's submissions to MMS for the Macondo Well before and including April 20, 2010?  If so, describe what You received and how You monitored and/or evaluated these submissions and Identify who performed such work.

**RESPONSE TO INTERROGATORY NO. 24:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include

56

"relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in No. 11.  Responding Party also objects because the undefined terms "monitor" and "evaluate" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows: No.

**INTERROGATORY NO. 25:**

Did You participate in any way in the response to the oil spill resulting from the April 20, 2010 ncident at the Macondo Well? If You did participate in the response, describe what You did and Identify those Persons who acted on Your behalf.

**RESPONSE TO INTERROGATORY NO. 25:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  In addition, Responding Party objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the defined terms "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

57

Responding Party also objects because the undefined term "participate" is vague and ambiguous.

Subject to and without waiving these objections, Responding Party responds as follows:

Yes.  *See*, for example, the deposition of Robert Quitzau from 227:9-244:1.

**INTERROGATORY NO. 26:**

Did any Anadarko employees, consultants, or contractors monitor data from the Macondo Well in real time?  If yes, Identify those Persons, the dates and times they conducted the monitoring, and what parameters they were monitoring.

**RESPONSE TO INTERROGATORY NO. 26:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.   Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the undefined term "monitor" as vague, confusing and overbroad. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party responds as follows: The following APC employees reviewed in real-time Macondo data on INSITE Anywhere, on at least one occasion: Paul Chandler (Geological Advisor), Derek Folger (Geophysicist II), John Kamm (Project Geological Advisor), Alan O'Donnell (General Manager), Brian O'Neill (Petrophysics Manager), Dawn Peyton (Senior Reservoir Engineer), and Paul Schlirf (Geoscience Advisor).  Each APC employee identified above reviewed in real-time logging data

relevant to his/his job function.  After a reasonable inquiry, APC does not have information on dates and times, and corresponding parameters, of the real-time data reviewed.  Halliburton Sperry Sun may have information regarding the real-time data that was reviewed on INSITE Anywhere and the dates and times that the real-time data was reviewed.

**INTERROGATORY NO. 27:**

Do You contend that You had insufficient Information available to detect well control events in real time at the Macondo Well prior to April 20, 2010? If yes, describe what Information You lacked that would have been necessary to detect well control events in real time. If no, state whether You did in fact detect well control events in real time at the Macondo Well, which of Your employees, consultants or contractors did so, and the dates and times You detected them.

**RESPONSE TO INTERROGATORY NO. 27:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined terms "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined term "well control event" is vague, ambiguous, and overly broad.   Responding Party also objects to this

Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 28:**

Do You contend that You had insufficient Information available to monitor negative pressure tests in real time at the Macondo Well? If yes, describe what Information You lacked that would have been necessary to monitor negative pressure tests in real time. If no, state whether You did in fact monitor negative pressure tests in real time at the Macondo Well and the dates and times You detected them.

**RESPONSE TO INTERROGATORY NO. 28:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.    Responding Party further objects to this

Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 29:**

Do You contend that You had insufficient Information available to monitor cementing procedures as they were being planned and conducted at the Macondo Well? If yes, describe what Information You lacked that would have been necessary to monitor cementing procedures as they were being planned and conducted. If no, state whether You did in fact monitor cementing procedures at the Macondo well.

**RESPONSE TO INTERROGATORY NO. 29:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined phrase "monitor cementing procedures" is vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is

61

in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1,
section V.(D)).

**INTERROGATORY NO. 30:**

Do You contend that You lacked the ability, formally or informally, to request that BP change
any aspect of operations at the Macondo Well? If yes, state the reasons that prevented You from
making such requests. If no, state if You did in fact request that BP change any aspect of
operations at the Macondo Well, who made the request, when such request was made, and
describe the nature of the request and how BP responded.

**RESPONSE TO INTERROGATORY NO. 30:**

Responding Party incorporates its General Objections.    Responding Party further objects
to this Interrogatory to the extent that it seeks disclosure of information protected by the
attorney-client privilege, the attorney work product doctrine, the common interest principle or
any other applicable privilege or protection.  Responding Party also objects to this Interrogatory,
as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the
discovery of admissible evidence.   Responding Party also objects to the defined term "You" as
overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to
the discovery of admissible evidence, and compound because "You" is defined as "Anadarko
Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant
predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also
objects because the undefined phrase "change any aspect of the operations" is vague, ambiguous,
and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes
beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.
Responding Party further objects to this Interrogatory on the grounds that the United States' set

of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.
(Doc. 569, CMO #1, section V.(D)).

## INTERROGATORY NO. 31:

Between January 1, 2010 and April 20, 2010 did You disagree with any aspect of how BP was
conducting operations at the Macondo Well? If You disagreed, describe the disagreement and
what action You took (if any) to address it.

## RESPONSE TO INTERROGATORY NO. 31:

Responding Party incorporates its General Objections.   Responding Party further objects
to this Interrogatory to the extent that it seeks disclosure of information protected by the
attorney-client privilege, the attorney work product doctrine, the common interest principle or
any other applicable privilege or protection.  Responding Party also objects to this Interrogatory,
as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the
discovery of admissible evidence.   Responding Party also objects to the defined term "You" as
overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to
the discovery of admissible evidence, and compound because "You" is defined as "Anadarko
Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant
predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also
objects because the undefined phrase "conducting operations" is vague, ambiguous, and overly
broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the
Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party
further objects to this Interrogatory on the grounds that the United States' set of interrogatories is
in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1,
section V.(D)).

63

**INTERROGATORY NO. 32:**

Identify all of the aspects of BP operations at the Macondo Well that You now contend were negligent or grossly negligent.

**RESPONSE TO INTERROGATORY NO. 32:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined phrase "all of the aspects of BP's operations" is vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11. (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 33:**

Do You contend that You are not a partial owner of the Macondo Well? If yes, explain the factual and legal basis for Your contention.

64

**RESPONSE TO INTERROGATORY NO. 33:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined phrase "partial owner of the Macondo Well" is vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11. (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 34:**

Name all officers, employees, consultants or contractors of APC authorized to spend funds and/or take action on behalf of AEP during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 34:**

Responding Party incorporates its General Objections.   Responding Party further objects

to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrase "take action on behalf of AEP" is vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.   Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

## INTERROGATORY NO. 35:

Did AEP reimburse You for any expenditures You made on its behalf for the Macondo Well?  If reimbursements were made, identify how many were made, the dates they were made, the amounts, a description of which Macondo Well expenditures each reimbursement covered and Identify all supporting documents.

## RESPONSE TO INTERROGATORY NO. 35:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to

66

the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.   Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 36:**

Have You provided any consideration to AEP for its reassignment of 22.5% record title interest in the Lease to You? If so, Identify such consideration or describe Anadarko's accounting or other treatment of the transfer, and Identify all supporting documents.

**RESPONSE TO INTERROGATORY NO. 36:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "Anadarko" as overly broad, confusing, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation"

67

is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party also objects because the undefined phrases "consideration for" or "other treatment of the transfer" are vague, ambiguous, and overly broad.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 37:**

Identify with specificity all actions, Communications and other facts on which You rely for Your contentions that Plaintiff United States either authorized or approved APC's conduct or other actions associated with the Incident, or bears some responsibility for the damages, as set forth in Your Second, Seventh, and Eighth Affirmative Defenses.

**RESPONSE TO INTERROGATORY NO. 37:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined terms "You" and "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" and "Your" are defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may

68

then include AEP.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 38:**

State the factual and legal basis for the claims in Your Third Affirmative Defense that Plaintiff United States' claims are precluded because any violations were proximately caused by others or there were superseding intervening causes.

**RESPONSE TO INTERROGATORY NO. 38:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "Your" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 39:**

State the factual and legal basis for Your contention in Your Fourth Affirmative Defense that the

A/74450434.4

harm from the Incident is divisible.

**RESPONSE TO INTERROGATORY NO. 39:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory, as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "Your" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.   (Doc. 569, CMO #1, section V.(D)).

**INTERROGATORY NO. 40:**

State the factual and legal basis for the claims in Your Twelfth Affirmative Defense that, if You are liable under the Oil Pollution Act, the amount of Your liability is limited.

**RESPONSE TO INTERROGATORY NO. 40:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory,

as phrased, as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to the defined term "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "Your" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.  Responding Party further objects to this Interrogatory on the grounds that the United States' set of interrogatories is in excess of the limit of 50 interrogatories set forth in Pretrial Order #11.  (Doc. 569, CMO #1, section V.(D)).

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

To the extent not previously produced, produce all Information Identified in Your response to the United States' Interrogatories 1-43.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "Your" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "Your" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also

71

objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, as a non-operator, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 2:**

To the extent not previously produced, produce all Information You relied upon in responding to the United States' Interrogatories 1-43.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the defined term "You" as overly broad, confusing, beyond the scope of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, and compound because "You" is defined as "Anadarko Petroleum Corporation" and "Anadarko Petroleum Corporation" is defined to include "relevant predecessors, successors, subsidiaries" which may then include AEP.   Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, as a non-operator, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the

72

Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.


Dated:  July 25, 2011                              Respectfully submitted,

                                                   _____/s/ Ky E. Kirby_____

                                                   Ky E. Kirby
                                                   Ky.Kirby@bingham.com
                                                   Warren Anthony Fitch
                                                   Tony.Fitch@bingham.com
                                                   Michael B. Wigmore
                                                   Michael.Wigmore@bingham.com
                                                   BINGHAM MCCUTCHEN LLP
                                                   2020 K Street, NW
                                                   Washington, DC 20006-1806
                                                   Telephone (202) 373-6000
                                                   Facsimile (202) 373-6001

                                                   James J. Dragna
                                                   Jim.Dragna@bingham.com
                                                   BINGHAM MCCUTCHEN LLP
                                                   355 South Grand Avenue
                                                   Suite 4400
                                                   Los Angeles, California 90071-3106
                                                   Telephone (213) 680-6436
                                                   Facsimile (213) 680-8636

                                                   Deborah D. Kuchler (La. Bar No. 17013)
                                                   Janika Polk (La. Bar No. 27608)
                                                   Robert Guidry (La. Bar No. 28064)
                                                   KUCHLER POLK SCHELL
                                                   WEINER & RICHESON, LLC
                                                   1615 Poydras Street, Suite 1300
                                                   New Orleans, LA  70112

                                                   **ATTORNEYS FOR ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP**

A/74450434.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Objections and Responses of Defendant Anadarko Petroleum Corporation to the United States' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission dated June 10, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 25th day of July, 2011.

_____/s/\_Ky E. Kirby_____

74

A/74450434.4