

**UNITED STATES DEPARTMENT OF COMMERCE**
**National Oceanic and Atmospheric Administration**
**Office of General Counsel**
**Suite 4470**
**501 West Ocean Boulevard**
**Long Beach, CA 90802**

**September 27, 2010**

Brian D. Israel
Arnold & Porter LLP
555 12th Street, NW
Washington, D.C.  20004-1206
**On behalf of:**
BP Exploration & Production, Inc.

James J. Dragna
Bingham McCutchen
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106
**On behalf of:**
Anadarko Petroleum Corp.
Anadarko E&P Company, LP
MOEX Offshore 2007 LLC

Kerry J. Miller
Frilot LLC
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
**On behalf of:**
Transocean Holdings LLC
Transocean Deepwater Inc.
Transocean Offshore Deepwater Drilling Inc.
Triton Asset Leasing GmbH

Re:  Notice of Intent to Conduct Restoration Planning for the Deepwater Horizon Oil Spill and
Invitation to Participate in Natural Resource Damage Assessment.

Dear Counsel:

I am writing on behalf of state and federal agencies charged with public trust responsibilities for
natural resources injured and threatened by the above-referenced oil spill.

On or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an
explosion and subsequently sank, resulting in discharges of oil and other substances into the Gulf

of Mexico.  These discharges, along with associated cleanup activities, are adversely affecting and/or  threatening natural resources subject to  the jurisdictions of the United States and the States of Louisiana, Mississippi, Alabama, Florida, and Texas.  Accordingly, the designated state and federal trustees (collectively the "Trustees") for these affected and potentially affected resources have begun to undertake a natural resource damage assessment ("NRDA") pursuant to section 1006 of the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701, et seq., and applicable state law.  Under the OPA, the Trustees are authorized to undertake a NRDA to (1) assess natural resource injuries resulting from a discharge of oil or the substantial threat of a discharge and response activities and (2) develop and implement a plan for restoration of such injured resources.

Based on information collected during Preassessment in accordance with state regulations and the OPA NRDA regulations at 15 C.F.R. Part 990, Subpart D, the Trustees have determined to conduct Restoration Planning in accordance with 15 C.F.R. Part 990, Subpart E, and corresponding state regulations.  The details of this determination and the Trustees' associated findings are contained in the enclosed Notice of Intent to Conduct Restoration Planning.

The OPA NRDA regulations at 15 C.F.R. 990.14(c) direct the Trustees to invite Responsible Parties to participate in this process.  As your clients' organizations have been identified as RPs, the Trustees hereby invite your participation in the NRDA process.  This invitation to identified RPs is made without prejudice to the Trustees' ability to include or proceed against any additional parties who may have responsibility and/or liability associated with the Deepwater Horizon Oil Spill and associated response activities under any state or federal laws.

Please be advised that, pursuant to 15 C.F.R. 990.14(c)(4), the nature and extent of RP participation in the NRDA is at the sole discretion of the Trustees.  Furthermore, should the Trustees determine that the participation of any RP is interfering with the Trustees' ability to fulfill their responsibilities to the public under OPA, the Trustees may end that RP's participation.

Please respond to this invitation in writing on your clients' behalf to the undersigned within 30 days of the date of this letter.  If you fail to do so, the Trustees will assume that your client's organization has declined this invitation and does not intend to participate in the NRDA.

Sincerely,

Christopher J. Plaisted
Attorney-Advisor

cc:     Harriet M. Deal, U.S. Department of the Interior
        Patricia R. Collins, U.S. Department of the Air force
        William A. Gunter, Alabama Department of Conservation and Natural Resources
        Larry Morgan, Florida Department of Environmental Protection

Stephanie C. Morris, Louisiana Oil Spill Coordinator's Office
Lisa Thompson Ouzts, Mississippi Department of Environmental Quality
Christa McLintock, Texas Commission on Environmental Quality

**Notice of Intent to Conduct Restoration Planning (pursuant to 15 C.F.R. Section 990.44) - DISCHARGE OF OIL FROM THE DEEPWATER HORIZON MOBILE OFFSHORE DRILLING UNIT AND THE SUBSEA MACONDO WELL INTO THE GULF OF MEXICO, APRIL 20, 2010**

**SUMMARY:** On or about April 20, 2010, the mobile offshore drilling unit *Deepwater Horizon* experienced a significant explosion, fire and subsequent sinking in the Gulf of Mexico, resulting in discharges of oil and other substances from the rig and from the wellhead on the seabed into the Gulf of Mexico (referred to as the "*Deepwater Horizon* Incident or Incidents"). These discharges are estimated to have been in excess of thousands of barrels of oil per day and continue, along with associated removal activities, to adversely affect and threaten natural resources within the jurisdictions of the United States and the States of Louisiana, Mississippi, Alabama, Florida, and Texas.

Pursuant to section 1006 of the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701, *et seq.,* federal and state trustees for natural resources are authorized to (1) assess natural resource injuries resulting from a discharge of oil or the substantial threat of a discharge and response activities, and (2) develop and implement a plan for restoration of such injured resources. The federal trustees are designated pursuant to the National Contingency Plan, 40 C.F.R. Section 300.600 and Executive Order 12777. State trustees are designated by the Governors of each state pursuant to the National Contingency Plan, 40 C.F.R. Section 300.605. The following agencies are designated natural resources trustees under OPA and are currently acting as trustees for this Incident(s): the United States Department of the Interior ("DOI"), as represented by the National Park Service, United States Fish and Wildlife Service, Bureau of Indian Affairs, and Bureau of Land Management; the National Oceanic and Atmospheric Administration ("NOAA"), on behalf of the United States Department of Commerce; the United States Department of Defense ("DOD"); the State of Louisiana's Coastal Protection and Restoration Authority, Oil Spill Coordinator's Office, Department of Environmental Quality, Department of Wildlife and Fisheries and Department of Natural Resources; the State of Mississippi's Department of Environmental Quality; the State of Alabama's Department of Conservation and Natural Resources and Geological Survey of Alabama; the State of Florida's Department of Environmental Protection; and the State of Texas' Parks and Wildlife Department, General Land Office and Commission on Environmental Quality, (collectively, the "Trustees"). In addition to acting as trustees for this Incident(s) under OPA, the States of Louisiana, Mississippi, Alabama, Florida and Texas are also acting pursuant to their applicable state laws and authorities, including the Louisiana Oil Spill Prevention and Response Act of 1991, La. R.S. 30:2451 *et seq.*, and accompanying regulations, La. Admin. Code 43:101 *et seq.*; the Texas Oil Spill Prevention and Response Act, Tex. Nat. Res. Code, Chapter 40, Section 376.011 *et seq.*, Fla. Statutes, and Section 403.161, Fla. Statutes; the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. §§ 49-17-1 through 49-17-43; and Alabama Code §§ 9-2-1 *et seq.* and 9-4-1 *et seq.*;.

The Responsible Parties ("RPs") identified for this Incident(s) thus far are BP Exploration and Production, Inc. ("BP"); Transocean Holdings Inc. ("Transocean"); Triton Asset Leasing GmbH

1

("Triton"); Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore"); Transocean Deepwater Inc. ("Transocean Deepwater"); Anadarko Petroleum ("Anadarko"); Anadarko E&P Company LP ("Anadarko E&P"); and MOEX Offshore 2007 LLC ("MOEX"). Pursuant to 15 C.F.R. 990.14(c), concurrent with the publication of this Notice, the Trustees are inviting the RPs identified above to participate in a Natural Resource Damage Assessment ("NRDA"). The Trustees have coordinated with BP representatives on activities undertaken to date as part of the NRDA process.

The Trustees began the Preassessment Phase of the NRDA in accordance with 15 C.F.R. § 990.40, to determine if they had jurisdiction to pursue restoration under OPA, and, if so, whether it was appropriate to do so. During the Preassessment Phase, the Trustees collected and analyzed and are continuing to collect and analyze the following: (1) data reasonably expected to be necessary to make a determination of jurisdiction or a determination to conduct restoration planning, (2) ephemeral data, and (3) information needed to design or implement anticipated emergency restoration and assessment activities as part of the Restoration Planning Phase.

Under the NRDA regulations applicable to OPA, 15 C.F.R. Part 990 ("NRDA regulations"), the Trustees prepare and issue a Notice of Intent to Conduct Restoration Planning ("Notice") if they determine conditions that confirm the jurisdiction of the Trustees and the appropriateness of pursuing restoration of natural resources have been met.

Pursuant to 15 C.F.R. § 990.44, this Notice announces that the Trustees have determined to proceed with restoration planning to fully evaluate, assess, quantify and develop plans for restoring, replacing or acquiring the equivalent of natural resources injured and losses resulting from the *Deepwater Horizon* Incident or Incidents. The restoration planning process will include collection of information that the Trustees determine is appropriate for identifying and quantifying the injuries and losses of natural resources, including resource services, and to determine the need for, and type and scale of restoration actions.

**SUPPLEMENTARY INFORMATION:**

**Determination of Jurisdiction**

The Trustees have made the following findings pursuant to 15 C.F.R. § 990.41:

1. The explosion on the mobile offshore drilling unit *Deepwater Horizon* on April 20, 2010, and other associated occurrences, resulted in discharges of oil into and upon navigable waters of the United States, including the Gulf of Mexico, as well as adjoining shorelines, all of which constitute an "Incident" or "Incidents" within the meaning of 15 C.F.R. § 990.30.

2. The ongoing discharges are not permitted pursuant to federal, state, or local law; are not from a public vessel; and are not from an onshore facility subject to the Trans-Alaska Pipeline Authority Act, 43 U.S.C. §§ 1651 *et seq*.

2

3.  Natural resources under the trusteeship of the Trustees have been and continue to be injured and/or threatened as a result of discharged oil and associated removal efforts. The discharged oil is harmful to natural resources exposed to the oil, including aquatic organisms, birds, wildlife, vegetation, and habitats. Discharged oil and the response activities to address the discharges of oil have resulted in adverse effects on natural resources in and around the Gulf of Mexico and along its adjoining shorelines, and impaired services that those resources provide. The full extent of potential injuries is currently unknown, and may not be known for many years; however, current natural resources and resource services that have been impacted due to the discharged oil include but are not limited to the following (as of August 19, 2010):

- Over 950 miles of shoreline habitats, including salt marshes, sandy beaches, and mangroves.
- A variety of wildlife, including birds, sea turtles, and marine mammals. As of June 29, 2010:
    - Over 1,900 oiled birds captured and over 1,850 visibly oiled dead birds collected.
    - Over 400 oiled sea turtles captured and 17 visibly oiled dead sea turtles collected.
    - 5 visibly oiled dead marine mammals collected.
- Lost human use opportunities associated with various natural resources in the Gulf region, including fishing, swimming, beach-going and viewing of birds and wildlife.
- Waters of the Gulf of Mexico and adjoining coastal states.
- Various other biota, including benthic communities and fish.
- Water column habitat.

Accordingly, the Trustees have determined they have jurisdiction to pursue restoration under the OPA.

**Determination to Conduct Restoration Planning**

Pursuant to 15 C.F.R. § 990.42(a), the Trustees determined that:

1.  Observations and data collected pursuant to 15 C.F.R. § 990.43 demonstrate that injuries to natural resources and the services they provide have resulted from the Incident or Incidents; however, the nature and extent of such injuries has not been fully determined at this time. The Trustees have identified numerous categories of impacted and potentially impacted resources, including fish, shellfish, marine mammals, turtles, birds and other sensitive resources as well as their habitats, such as wetlands, marshes, beaches, mudflats, bottom sediments, corals and the water column as well as effects to human use resulting from the impacts on the resources. The Trustees have been conducting and continue to conduct, activities to evaluate injuries and potential injuries within these categories. More information on these resource categories will be available in the Administrative Record ("AR," as defined below), including assessment work plans developed jointly by the Trustees and BP and information gathered during the

3

preassessment.  The full nature and extent of injuries will be determined during the injury assessment phase of restoration planning.

2.  Response actions employed for this spill include in situ burning, dispersant applications, containment and skimming of oil, and removal operations.  These response actions have not addressed and are not expected to address all injuries resulting from the discharges of oil.  Although response actions were initiated soon after the explosion and continue to date, they have been unable to prevent injuries to many natural resources, and the size, nature and location of the discharges have prevented recovery of most of the oil.  In addition, some of these response actions have caused or are likely to cause injuries to natural resources and the services they provide, including destruction of sensitive marshes, beaches, and other habitats and impacts to human uses of resources.  While injured natural resources may eventually naturally recover to the condition they would have been in had the discharges not occurred, interim losses have occurred, or are likely to occur in the future, and these will continue until baseline conditions are achieved.  In addition, there have been and will continue to be losses of and diminution of human uses of the resources resulting from the impacts to the natural resources and from the response actions themselves.

3.  Feasible restoration actions exist to address the natural resource injuries and losses, including lost human uses, resulting from the discharges of oil.  Assessment procedures are available to scale the appropriate amount of restoration required to offset these ecological and human use service losses.  During the restoration planning phase, the Trustees will evaluate potential projects, determine the scale of restoration actions needed to make the environment and the public whole, and release a draft Restoration Plan for public review and comment.

Based upon these determinations, the Trustees intend to proceed with restoration planning for the Incident or Incidents.

**Administrative Record**
The United States Department of the Interior, acting on behalf of the Trustees, is in the process of establishing and opening an Administrative Record ("AR") in compliance with 15 C.F.R. § 990.45 and applicable state authorities.  The AR will be publicly accessible and include documents considered by the Trustees during the preassessment, assessment, and restoration planning phases of the NRDA performed in connection with the Incident or Incidents.  The AR will be augmented with additional information over the course of the NRDA process.  The availability of the AR will be addressed in one or more future notices and announcements.  State-specific ARs may also be kept and will be made available by state trustees in their normal course of business.

**Opportunity to Comment**
The Trustees invite the public to participate in restoration planning for this Incident or Incidents in accordance with 15 C.F.R. § 990.14(d) and state authorities.  The Trustees will be providing substantial opportunities for public involvement in the restoration planning for this Incident or

Incidents.  The opportunities for public involvement will be addressed in future notices and announcements.

**Adoption By Natural Resource Trustees**

The undersigned, on behalf of their agencies as designated natural resource Trustees, hereby adopt the foregoing.  This document may be signed in counterparts.  A copy with all original executed signature pages affixed shall constitute the original.

**SIGNATURES:**

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: 9 | 2, 2010

**UNITED STATES DEPARTMENT OF THE INTERIOR**

By:

Cindy Dohner
Southeast Regional Director
U.S. Fish and Wildlife Service

6

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: _Jul 30_, 2010

**NATIONAL OCEANIC AND**
**ATMOSPHERIC ADMINISTRATION**


By: _[signature]_

David G. Westerholm
Director
Office of Response and Restoration

7

Dated: _____, 2010                    **UNITED STATES DEPARTMENT OF
                                          DEFENSE**


                                          By:   **SIGNATURE PENDING**

8

Dated: _4/2-/_, 2010

**GEOLOGICAL SURVEY OF
ALABAMA**

By: _____

Dr. Berry H. Tew, Jr.
State Geologist

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: _9/2_ , 2010

**ALABAMA DEPARTMENT OF
CONSERVATION AND NATURAL
RESOURCES**

By: _____
M. Barnett Lawley
Commissioner

10

Dated: _8/30_ , 2010

**FLORIDA DEPARTMENT OF
ENVIRONMENTAL PROTECTION**


By:    *Lee Edmiston*
       Lee Edmiston
       Director
       Office of Coastal and Aquatic
         Managed Areas

11

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: _oa/o7_ , 2010

**LOUISIANA COASTAL PROTECTION
AND RESTORATION AUTHORITY**

By:

Garret Graves
Chair

12

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: _30 aug_, 2010

**LOUISIANA OIL SPILL
COORDINATOR'S OFFICE**

By:

Roland Guidry
Louisiana Oil Spill Coordinator

13

Dated: 8-30, 2010

**LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY**

By: _____
Peggy Hatch
Secretary

14

Dated: 9·7        , 2010

**LOUISIANA DEPARTMENT OF
WILDLIFE AND FISHERIES**

By:

Robert Barham
Secretary

15

Dated: _8/30_, 2010

**LOUISIANA DEPARTMENT OF
NATURAL RESOURCES**

By: _____

Bob Harper
Acting Secretary

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: 9/2 , 2010

**MISSISSIPPI DEPARTMENT OF
ENVIRONMENTAL QUALITY**

By:

Trudy D. Fisher
Executive Director

17

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: 13 Sept. 2010

**TEXAS PARKS AND WILDLIFE
DEPARTMENT**

By: _____

Carter Smith
Executive Director

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: 8/26, 2010

**TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY**

By:

    Mark R. Vickery, P.G.
    Executive Director

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning

Dated: _9/8_ , 2010                    **TEXAS GENERAL LAND OFFICE**

By:

        Larry L. Laine
        Deputy Land Commissioner
        & Chief Clerk

20

Deepwater Horizon Oil Spill – Notice of Intent to Conduct Restoration Planning