# Exhibit 1

**From:** Ronald Sweatman
**Sent:** Sat May 22 14:56:31 2010
**To:** Derrick Lewis
**Cc:** Randy Lovorn; Isabel Poletzky; Emad Bakri; Thomas Roth; Anthony Badalamenti; Simon Turton; Rod Roberts; Joe Hess; Nishant Raizada; James Bement - VP Sperry PSL
**Subject:** RE: simulation - Livelink 256 KB
**Importance:** High
**Attachments:** Macondo_MC 252_1 _Schematic_Rev15 1_04222010.xls - 70 KB; Negative Test.pdf - 69 KB; Macondo MC 252 1 wellbore.xls - 87 KB

Derrick,

As per your request, the key members of our team are Tommy Roth, Anthony Badalamenti, and Simon Turton as copied. Tommy is our team leader. Others are involved as needed.

For example, another team copied (Rod Roberts, Joe Hess & Nishant Raizada) is helping us understand the forces and effects on the longstring, e.g., casing uplift via WellCat modeling. We were just told that the ROV found the casing inside the BOP stack! Please work with them accordingly.

We would like your team to model the gas flow from a zone (14.2 ppge reservoir pressure) in the hole below the shoe of the 9 7/8" liner up the annulus to the wellhead. In answer to your question on production potential from the gas reservoir, Anthony said to please use a sustained gas flow equivalent of 5K to 70K BOPD.

We understand that the DP pipe rams were closed and opened a short time before the well blew fluid to the crown followed by the explosion. If you need more on this, please let us know.

Please advise whether or not you can simulate the gas kick to help us better understand the situation and answer the following questions:
- ➢ The time period for the gas to bubble up the longstring/hole annulus to the wellhead? Also annular pressure vs time below casing hanger/packoff?
- ➢ Would gas pressure fail shoe track (float valves) and gas flow up the inside of the casing? What time and pressure to reach closed rams?
- ➢ Your ideas or model results on how gas could percolate up through the well fluid to blowout the well when the DP rams opened and fluid hit the crown?
- ➢ Knowing the casing moved into the BOP stack, when did it start to move and with what type of initiation force?
- ➢ How an uplift force may have increased vs. time as the gas continued to flow out of the reservoir and further decreased or increased relevant casing loads?
- ➢ Could the gas kick have caused the casing to part anywhere?
- ➢ Could the gas accumulate below the rams and limited the casing uplift until they were opened?
- ➢ Any ideas you have to add to the list?

The attached files are 2 well diagrams and one slide on the negative test. Joe Hess can send the WellCat input data and later the results. Please tell us what else you need?

Thank you all very much for your help!

Best Regards,
Ron

Ronald (Ron) Sweatman
Chief Technical Professional
Global Business & Technical Solutions and CCS
Halliburton
10200 Bellaire Blvd. 3NE14E
Houston, Texas 77072-5206
Office Phone: 281.575.4389

---

**From:** Derrick Lewis
**Sent:** Saturday, May 22, 2010 1:25 PM
**To:** Ronald Sweatman; James Bement - VP Sperry PSL

Confidential                                                                                                                                                        HAL_0579706

**Cc:** Randy Lovorn; Isabel Poletzky; Emad Bakri
**Subject:** Fw: simulation

Ron:

My team will be:

Randy Lovorn - Houston
Emad Ibrahin - Houston
Isabel Poletzky - Anchorage

As soon as we receive the data package we will start to work on this. In speaking to the team I fell certain that we will have additional questions. Randy will be your focal point for this and he has already indicated that it would be good to have some interaction with the team that is working on this.

We will model the scenario with DFG to simulate single phase flow for the drilling, casing running, cementing and POOH scenarios that were done with single phase fluids. We can also model the differential pressures anywhere in the well bore during the riser displacement.

We will model the two phase flow with Neotec Model to simulate the addition of gas and oil in the annulas that will give us pressures and bottoms up time with various surface pressures.

All of these scenarios can be done, but we will have to have a lot of information. We will review the data packet as soon as it arrives, and revert back to you soon after.


Regards,

Derrick W. Lewis
3000 North Sam Housto PKWY E
Houston, Texas 77032

Global Operations Manager
GeoBalance
281-871-7049 Office
281-217-9305 Cell

---

**From**: James Bement - VP Sperry PSL
**To**: Derrick Lewis
**Sent**: Sat May 22 13:02:58 2010
**Subject**: Re: simulation

Thanks Derrick

-------------------------
James Bement
Vice President
Sperry Drilling Services
Office: 281 871-7579
Mobile: 713 598-4359

Sent from my BlackBerry Wireless Handheld

---

**From**: Derrick Lewis
**To**: James Bement - VP Sperry PSL
**Sent**: Sat May 22 12:49:29 2010
**Subject**: Re: simulation

Confidential

HAL_0579707

James:

Yes sir,

He is sending me the information right now. I have sent out an email to my team to let them know I will be calling them as soon as I get the well data.

Regards,

Derrick W. Lewis
3000 North Sam Housto PKWY E
Houston, Texas 77032

Global Operations Manager
GeoBalance
281-871-7049 Office
281-217-9305 Cell

---

**From**: James Bement - VP Sperry PSL
**To**: Ronald Sweatman; Derrick Lewis
**Sent**: Sat May 22 12:34:43 2010
**Subject**: simulation
Did you guys get hooked up?


James Bement
Vice President
Halliburton Sperry Drilling
Direct: 281.871.7579
Cell: 713.598.4359

Confidential

HAL_0579708

# Exhibit 2

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

 3    IN RE:  OIL SPILL        )    MDL NO. 2179
      by the OIL RIG,          )
 4    DEEPWATER HORIZON in     )    SECTION "J"
      the GULF OF MEXICO,      )
 5    April 20, 2010           )    JUDGE BARBIER
                               )
 6                             )    MAG. JUDGE
                               )    SHUSHAN
 7

 8



14

15
                        * * * * * * * * * * * * *
16                              VOLUME 1
                        * * * * * * * * * * * * *
17

18

19
                 Deposition of TIM PROBERT, taken
20    at Pan-American Building, 601 Poydras
      Street, 11th Floor, New Orleans, Louisiana,
21    70130, on May 9, 2011.

22

23

24

25
```

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

1  continued reinforcement of that.  The
2  company has recruited quite a few people
3  over the course of the last couple of
4  years, so it's important to continue to
5  refresh and remind people that it's an
6  important issue.
7        Q.   So that's not a change that was
8  implemented following the catastrophe?
9        A.   No, these are the -- what I
10 provided you are the sort of six points
11 which are the key elements of the HSE
12 strategy.
13       Q.   All right.  That's all I have.
14 Thank you.
15       A.   Thank you.
16       THE VIDEOGRAPHER:  We're going off the
17 record at 3:55.  This is the end of Tape 6.
18               (Break.)
19       THE VIDEOGRAPHER:  We're back on the
20 record at 4:02.  This is the beginning of
21 Tape 7.
22                EXAMINATION
23 BY MS. HARDING:
24       Q.   Good afternoon, Mr. Probert.
25 I'm sure it's been a long afternoon.  My

1   name is Barbara Harding and I'm with the
2   law firm of Kirkland & Ellis and I
3   represent BP in this litigation.  I thank
4   you for your time today.  We appreciate it.
5        A.    Thank you.  Good to meet you.
6        Q.    I sometimes can talk fast so if
7   I go too fast, you don't understand the
8   question, just ask me to rephrase it or
9   restate it.  I'm happy to do so.  Okay?
10       A.    (Witness nods.)
11       Q.    And also if you need a break,
12  let me know, please.
13       A.    Will do.
14       Q.    You indicated this morning that
15  shortly after the Macondo well incident
16  that Halliburton undertook an investigation
17  of the incident; is that correct?
18       A.    I said that Halliburton
19  undertook an investigation of the incident
20  at the direction of counsel, yes.
21       Q.    Okay.  And I think -- I believe
22  you said this morning a few days after the
23  accident; is that right?  Is when you
24  started the investigation?
25       A.    I don't believe that it started

1   that quickly.  I think that it started
2   sometime -- sometime after it, but I can't
3   give you an exact date of when it may have
4   been undertaken.
5       Q.   Okay.  Did it start within --
6   this morning you said just a couple of days
7   after the incident it became evident that
8   it would be prudent to undertake an
9   investigation under the direction of
10  counsel, so is that accurate?
11      A.   What I think I was referring to
12  was that after -- just after a couple of
13  days lawsuits started to be filed.  I think
14  the first one was filed by about the 23rd.
15  And it became clear to us that it would be
16  prudent -- to the extent we do any
17  investigation, it would be most prudent to
18  do it under the direction of counsel.
19      Q.   Okay.  So what I'm trying to
20  understand is when did that -- that
21  investigation at the direction of counsel
22  begin?
23      A.   I don't know the exact date that
24  it started.
25      Q.   Okay.  Can you tell me who are

Suggested line for Running Header
Case 2:10-md-02179-CJB-DPC   Document 3919-1   Filed 08/29/11   Page 10 of 20
408

```
 1                    WITNESS' CERTIFICATE

 2

 3              I, TIM PROBERT, read or have had

 4     the foregoing testimony read to me and

 5     hereby certify that it is a true and

 6     correct transcription of my testimony, with

 7     the exception of any attached corrections

 8     or changes.

 9

10

11

12

13

14                      _____
                        TIM PROBERT
15

16

17

18

19

20

21

22

23

24

25
```

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

```
 1              REPORTER'S CERTIFICATE
 2
 3              I, TAMARA CHAPMAN, Certified
 4   Court Reporter, State of Texas, do hereby
 5   certify that the above-mentioned witness,
 6   after having been first duly sworn by me to
 7   testify to the truth, did testify as
 8   hereinabove set forth;
 9              That the testimony was reported
10   by me in shorthand and transcribed under my
11   personal direction and supervision, and is
12   a true and correct transcript, to the best
13   of my ability and understanding;
14              That I am not of counsel, not
15   related to counsel or the parties hereto,
16   and not in any way interested in the
17   outcome of this matter.
18
19              _____
                Tamara Chapman
20              Certified Court Reporter
                State of Texas, CSR No. 7248
21              GAUDET KAISER, LLC
                601 Poydras, Suite 1720
22              New Orleans, Louisiana 70130
                T: (504) 525-9100
23              F: (504) 525-9109
24
25
```

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

# Exhibit 3

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3    IN RE: OIL SPILL        )   MDL NO. 2179
       by the OIL RIG          )
 4    "DEEPWATER HORIZON" in  )   SECTION "J"
       the GULF OF MEXICO, ON  )
 5    APRIL 20, 2010           )   JUDGE BARBIER
                                )
 6                              )   MAG. JUDGE
                                )   SHUSHAN
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20                  VOLUME 1 OF 2
21
22       Deposition of THOMAS ROTH, taken at
23    Hilton St. Charles Hotel, 333 St. Charles
24    Avenue, Le Moyne Room, New Orleans,
25    Louisiana, on the 25th of July, 2011.
```

**PURSUANT TO CONFIDENTIALITY ORDER**

1  A.  I met him in an annual performance
2  review meeting that we conduct globally
3  with BP on a once-a-year basis, and he
4  attended probably the last global
5  performance review prior to the Macondo
6  incident.
7  Q.  And so before the blowout, you had
8  meetings with Mr. Cunningham?
9  A.  He attended one meeting with me,
10 the -- the performance review.  I think it
11 was in the fall of 2009, but I'm just
12 recalling by memory.
13 Q.  Did -- did you, in connection with
14 the investigation of this well, discuss
15 with Mr. Cunningham anything?
16 A.  I've never discussed this well
17 with Mr. Cunningham.
18 Q.  Have you discussed this well with
19 anyone else from BP?
20 A.  No, sir, I have not.
21      MR. THORNHILL:  We're down to
22 five minutes on the tape.  The
23 videographer's asking that we change the
24 tape.  Let's take a short break.
25      THE VIDEOGRAPHER:  The time is

1   2:07 p.m., and we're off the record.
2             (Recess 2:07-2:27 p.m.)
3             THE VIDEOGRAPHER:  The time is
4   2:27 p.m., and we're back on the record.
5       Q.  (BY MR. THORNHILL)  Mr. Roth, the
6   investigation of the facts regarding the
7   blowout and the preblowout activities, I
8   see in the e-mails that you were being
9   asked to describe for the press and -- and
10  others issues regarding the negative and
11  the positive tests that were run on -- on
12  this well, particularly the 7 S production
13  casing job.
14            Do you remember that?
15      A.  I recall that, but I would like to
16  make one clarification to the information
17  that you just raised and that's the fact
18  that Halliburton never did conduct an
19  investigation, per se.
20            We basically developed a
21  series of presentations to information
22  that was requested over a series of -- of
23  multiple months, but there never was an
24  investigation that was actually led and
25  directed by Halliburton in this effort.

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1          Q.  I think you and I --
 2              MS. HARDING:  Object to the
 3     form.
 4          Q.  (BY MR. THORNHILL)  Yeah.  I think
 5     you and I understood one another about
 6     what we were talking about and I'm not
 7     trying to -- you know, to make you Dick
 8     Tracy or any other investigator.  I'm just
 9     trying to get to the facts and I think
10     we've understood each other about what
11     we've talked about so far, have we not?
12              MR. MADIGAN:  I object as to
13     form.
14          Q.  Sir, you agree you've understood
15     my questions so far?
16              MR. MADIGAN:  Object to form.
17          A.  Repeat the question, please.
18          Q.  (BY MR. THORNHILL)  Have you
19     understood my questions so far today?
20              MR. GOFORTH:  I want to object
21     to the responsiveness of the previous
22     answer.
23          Q.  (BY MR. THORNHILL)  Have you, sir?
24          A.  Have I understood your questions?
25          Q.  Yes, sir.
```

```
 1                CHANGES AND SIGNATURE
 2     WITNESS NAME:  THOMAS ROTH
 3     DATE OF DEPOSITION:  JULY 25, 2011
 4     PAGE   LINE   CHANGE      REASON
 5     _____
 6     _____
 7     _____
 8     _____
 9     _____
10     _____
11     _____
12     _____
13     _____
14     _____
15     _____
16     _____
17     _____
18     _____
19     _____
20     _____
21     _____
22     _____
23     _____
24     _____
25     _____
```

**PURSUANT TO CONFIDENTIALITY ORDER**

1     I, THOMAS ROTH, have read the
2     foregoing deposition and hereby affix my
3     signature that same is true and correct,
4     except as noted on the attached Amendment
5     Sheet.
6                 _____
7                         THOMAS ROTH
8     THE STATE OF _____)
9     COUNTY OF _____)
10        Before me, _____,
11    on this day personally appeared
12    THOMAS ROTH, known to me (or proved to me
13    on the oath of _____ or through
14    _____) to be the person whose
15    name is subscribed to the foregoing
16    instrument and executed the same for the
17    purposes and consideration therein
18    expressed.
19        Given under my hand and seal of office
20    this _____ day of _____,
21    2011.
22              _____
23              NOTARY PUBLIC IN AND FOR
24              THE STATE OF _____
25              My commission expires: _____

**PURSUANT TO CONFIDENTIALITY ORDER**

```
1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF LOUISIANA
3    IN RE: OIL SPILL         )   MDL NO. 2179
     by the OIL RIG           )
4    "DEEPWATER HORIZON" in   )   SECTION "J"
     the GULF OF MEXICO, ON   )
5    APRIL 20, 2010           )   JUDGE BARBIER
                              )
6                             )   MAG. JUDGE
                              )   SHUSHAN
7
8              REPORTER'S CERTIFICATION
9      TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10                   THOMAS ROTH
11         I, Therese J. Casterline, Certified
12   Shorthand Reporter in and for the State of
13   Texas and the State of Louisiana, do
14   hereby certify to the following:
15         That the witness, THOMAS ROTH, was
16   duly sworn by the officer and that the
17   transcript of the oral deposition is a
18   true record of the testimony given by the
19   witness.
20         That the deposition transcript was
21   submitted on _____, 2011, to the
22   witness or to the attorney for the witness
23   for examination, signature and return to
24   Worldwide Court Reporters, Inc., by
25   _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1        That the amount of time used by each
 2   party at the deposition is as follows:
 3            Mr. Thornhill - 4 hours, 07
 4   minutes
 5            Ms. Sullivan - 1 hour, 22 minutes
 6            Ms. Harding - 0 hours, 48 minutes
 7        I further certify that I am neither
 8   counsel for, related to, nor employed by
 9   any of the parties or attorneys in the
10   action in which this proceeding was taken,
11   and further that I am not financially or
12   otherwise interested in the outcome of the
13   action.
14        Subscribed and sworn to by me this
15   25th day of July, 2011.
16
17   _____
         Therese J. Casterline, CSR, RMR, CRR
18       Texas CSR 5001, Expires 12-31-11
         Louisiana CSR 25014, Expires 12-31-11
19       WORLDWIDE COURT REPORTERS
         3000 Weslayan, Suite 235
20       Houston, Texas 77027
         1-800-745-1101
21
22
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**