# Exhibit 21

1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3    IN RE: OIL SPILL        )    MDL NO. 2179

     by the OIL RIG         )

4    "DEEPWATER HORIZON" in  )    SECTION "J"

     the GULF OF MEXICO, ON  )

5    APRIL 20, 2010          )    JUDGE BARBIER

                             )

6                            )    MAG. JUDGE

                             )    SHUSHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20               VOLUME 1 OF 2

21

22        Deposition of THOMAS ROTH, taken at

23   Hilton St. Charles Hotel, 333 St. Charles

24   Avenue, Le Moyne Room, New Orleans,

25   Louisiana, on the 25th of July, 2011.

**PURSUANT TO CONFIDENTIALITY ORDER**

1     2:07 p.m., and we're off the record.

2            (Recess 2:07-2:27 p.m.)

3            THE VIDEOGRAPHER:  The time is

4     2:27 p.m., and we're back on the record.

5     Q.  (BY MR. THORNHILL)  Mr. Roth, the

6     investigation of the facts regarding the

7     blowout and the preblowout activities, I

8     see in the e-mails that you were being

9     asked to describe for the press and -- and

10    others issues regarding the negative and

11    the positive tests that were run on -- on

12    this well, particularly the 7 S production

13    casing job.

14           Do you remember that?

15    A.  I recall that, but I would like to

16    make one clarification to the information

17    that you just raised and that's the fact

18    that Halliburton never did conduct an

19    investigation, per se.

20           We basically developed a

21    series of presentations to information

22    that was requested over a series of -- of

23    multiple months, but there never was an

24    investigation that was actually led and

25    directed by Halliburton in this effort.

**PURSUANT TO CONFIDENTIALITY ORDER**

1     A.   To the answers that I've provided,

2     I -- I understood the questions.

3          Q.   Okay.   Fine.   Thank you.

4                Now, with respect to the work

5     that was done by Halliburton to

6     investigate the facts after the blowout in

7     which you've been involved, my

8     appreciation of the e-mails and that which

9     you were asked to do and that which you

10    presented included your telling the press

11    and others about your understanding or, if

12    you will, the company's understanding of

13    the positive pressure test and the

14    negative pressure test; is that correct?

15         A.   Again, an investigation was not

16    conducted by Halliburton.   I did make

17    statements to a reporter for The Wall

18    Street Journal concerning positive and

19    negative testing.

20              MR. GOFORTH:   Object to the

21    responsiveness of that answer.

22              MS. HARDING:   Object to form.

23              MR. THORNHILL:   Object to form

24    as well.

25         Q.   (BY MR. THORNHILL)   Are you saying

**PURSUANT TO CONFIDENTIALITY ORDER**

1    that you were not in the role of

2    collecting facts for presenting

3    information for the National Academy, to

4    Congress and to others?

5        A.   I collected facts to present

6    multiple presentations over a series of

7    multiple months.

8        Q.   Did you honestly collect the facts

9    and present those facts?

10       A.   To the best of my ability.

11       Q.   Was it your intention to put a

12   spin on that or to simply provide raw

13   information that you collected?

14            MR. HILL:   Object to form.

15       A.   I collected the information.   I

16   put it in the presentations, and the

17   presentations are the statements that I

18   made.

19       Q.   (BY MR. THORNHILL)   Do you

20   acknowledge, sir, that your collection of

21   facts and demonstration of that which you

22   collected to others was, in fact, an

23   investigation of the facts?

24            MR. MADIGAN:   Objection as to

25   form.

**PURSUANT TO CONFIDENTIALITY ORDER**

1         MR. HILL:   The same objection.

2         A.  Again, we reviewed the information

3    that was available.  I put it in the form

4    of a presentation.  We communicated those

5    presentations.

6         Q.  (BY MR. THORNHILL)  Now, with

7    respect to the negative and positive

8    pressure tests, did you make

9    representations on behalf of Halliburton

10   with respect to the understanding of

11   Halliburton as to the negative and the

12   positive pressure tests?

13        A.  I made statements regarding the

14   basics of positive and negative testing.

15        Q.  And are you saying in this case

16   that you investigated information that

17   would show what took place on the Macondo

18   252 number 1 as has been described as a

19   negative pressure test and you did not

20   consider your collection of information to

21   have been an investigation of those facts?

22             MR. MADIGAN:   Objection as to

23   form.

24             MR. HILL:   Objection to form.

25        A.  As Halliburton was one of only

**PURSUANT TO CONFIDENTIALITY ORDER**

1      A.   15?

2      Q.   Yes, sir.

3            Earlier today, there were some

4      questions about the calculations -- I

5      believe you saw this e-mail.  It's

6      May 24th, the calculations that were

7      calculated by hand.  I wanted to talk to

8      you about an earlier e-mail in this chain.

9            If you turn four pages back,

10     there's an e-mail that's dated May 22nd

11     from Mr. Sweatman to Derrick Lewis, and

12     you're copied on that e-mail.

13            MS. HARDING:  I'm sorry?

14            MS. SULLIVAN:  It's 15.

15            MS. HARDING:  15?

16            MS. SULLIVAN:  Yes.

17     A.   Yeah.  This would be May 22 at

18     2:56 p.m.?

19     Q.   (BY MS. SULLIVAN)  That's correct.

20     A.   Okay.

21     Q.   Do you recall -- or do you

22     recognize this e-mail?

23     A.   I do.

24     Q.   Okay.  I wanted to ask you a few

25     questions about it.

**PURSUANT TO CONFIDENTIALITY ORDER**

1   Again, this is from

2   Mr. Sweatman to Derrick Lewis.  And he

3   states, as per your request, the key

4   members of our team are Tommy Roth,

5   Anthony Badalamenti and Simon Turton, as

6   copied.

7   What -- what team is

8   Mr. Sweatman referring to?

9       A.   About this time frame, in the

10  latter part of May, I was approached by

11  Ron Sweatman, who is a senior technical

12  adviser for Halliburton in the cementing

13  section.

14          Ron indicated that he thought

15  that it would be possible to model the

16  flow conditions that were existing on the

17  Macondo well, and I referred -- in a

18  conversation with Ron, I said I thought

19  that would be a good idea, Ron.  Let's see

20  what we can do in that area.

21          And Ron took it upon himself

22  to then follow up with several members of

23  our consulting capabilities inside of

24  Halliburton to be able to proceed with

25  this work, and I reviewed this with the

**PURSUANT TO CONFIDENTIALITY ORDER**

1   understanding that that's the team he's

2   referring to.

3       Q.  Okay.  So there's a reference to

4   your team.  And it's my understanding that

5   you were the team leader; is that correct?

6       A.  Yeah.  My team was basically the

7   presentations team that was responding to

8   the request for information on behalf of

9   Halliburton.  As requests would come

10  through Bob Moran and others.  Myself,

11  Simon and Anthony were three of the -- the

12  principal providers of that -- of that --

13  those presentations.

14      Q.  Okay.  So was the purpose of your

15  modeling to provide information for your

16  presentations --

17      A.  It was to --

18      Q.  -- that were made?

19      A.  -- understa- -- it was to

20  understand the conditions that were

21  existing on the well.

22              At this point, there was, you

23  know, several hypotheses that were

24  available out in the public domain that

25  potentially the well was flowing up the

**PURSUANT TO CONFIDENTIALITY ORDER**

1    casing; potentially the well was flowing

2    up the annulus.

3            And so in our development of

4    our presentations to this point, we took

5    the perspective that either of those

6    scenarios or both of those scenarios could

7    be covered, and basically we -- we

8    supported both of those hypotheses.

9            So when Ron identified that he

10   thought that he had enough information to

11   be able to do some modeling to -- to -- to

12   indicate one or the other, I indicated to

13   Ron I thought that would be a good idea.

14       Q.  Okay.  And in addition to your

15   team, which from this e-mail it looks like

16   it was yourself, Mr. Badalamenti and

17   Mr. Turton -- were any additional teams

18   created to perform modeling work for

19   purposes of giving this information during

20   presentations?

21       A.  When I spoke to Ron, I didn't

22   realize that he would be forming a team,

23   per se.  He -- he did some work in this

24   area.  He did engage several of the

25   consultants that we have or some of the

1    professionals that we had in our

2    consulting group to do that work.

3         Q.  Well, I'm -- I'm specifically

4    referring to the second paragraph in this

5    e-mail --

6         A.  Uh-huh.

7         Q.  -- where he says, another team

8    copied (Rod Roberts, Joe Hess, Nishant

9    Raizada) -- I'm probably not saying that

10   correctly.

11        A.  Yeah.  I'm not familiar with --

12   with who those people would be.  I'm -- I

13   would just assume that they're in the

14   consulting group, but I don't know.

15        Q.  Okay.  It says they were helping

16   us understand the forces and effects on

17   the long string casing uplift via WelCat

18   modeling.

19             Do you have any part in that

20   modeling --

21        A.  No.

22        Q.  -- or did you review any of their

23   work?

24        A.  No.  What work that I received

25   from Ron basically came through a series

**PURSUANT TO CONFIDENTIALITY ORDER**

1     I -- I might -- I might need to do that,

2     okay?

3                   So I just want to make sure we

4     understand each other there.  Do you have

5     any questions about that?

6        A.   I don't.

7        Q.   Okay.  Do you have any questions

8     of your lawyers about that before we

9     proceed?

10       A.   I don't.

11       Q.   Okay.  I think we -- we

12    established already you -- you started

13    looking at this incident the day after it

14    occurred.  Correct?

15       A.   I did.

16       Q.   Okay.  And you've been

17    investigating it, gathering facts about

18    it, for -- since that time; is that right?

19                   MR. HILL:  Object to form.

20       A.   From the -- the time of the -- the

21    incident, I asked questions, I received a

22    packet of information, I asked for experts

23    to -- to review that information, and then

24    I was subsequently called upon to make

25    presentations and statements based upon

**PURSUANT TO CONFIDENTIALITY ORDER**

382

1       additional information that was gathered

2       in the time frame from probably April to

3       November.

4           Q.   (BY MS. HARDING)   And then you've

5       also been working on it post-November as

6       well; is that right?

7           A.   Only in a very limited capacity.

8           Q.   Okay.   So most of the time that

9       you devoted to the -- to the -- to

10      researching and understanding and learning

11      about the incident occurred from April

12      21st till sometime in November?

13          A.   That's correct.

14          Q.   And then you've had a limit --

15      limited role post-November?

16          A.   Yes, ma'am.

17          Q.   Okay.   Earlier today, you

18      clarified some previous testimony --

19      and -- and I'm paraphrasing, so tell me if

20      I've got it wrong -- but you wanted to

21      make it clear that you hadn't done an

22      investigation; is that right?

23          A.   Halliburton has not conducted an

24      investigation, and I have not conducted an

25      investigation.

**PURSUANT TO CONFIDENTIALITY ORDER**

1    A.  I think he was, but I -- I don't

2    recall specifically.

3    Q.  Okay.  Do you recall, at the time

4    you were preparing Mr. Probert for his

5    testimony, that at that time Halliburton's

6    position was that it was doing an

7    investigation and that it would -- it

8    would and did intend to make the results

9    of the investigation public?

10                MR. HILL:  Object to form.

11                MR. MADIGAN:  Object as to

12   form.

13   A.  I don't recall that, but I

14   would -- would think that your -- your

15   questions are based upon probably review

16   of the information, so I'm just

17   speculating that that was what was stated.

18   Q.  (BY MS. HARDING)  Okay.  Do you

19   recall that after April 21st, as you got

20   involved, that -- that between April 21st

21   and the congressional testimony that

22   there -- that you referred to what you

23   were doing as an investigation?

24   A.  I was gathering what information

25   was available to be able to allow us to --

**PURSUANT TO CONFIDENTIALITY ORDER**

1    to make presentations.  Prior to

2    Mr. Probert's testimony before several

3    congressional bodies, I made a

4    presentation to the Energy and Commerce

5    Committee staff members.

6              Much of that information was

7    shared with Tim and used as, basically,

8    our understanding of the facts that we had

9    an understanding of at that time.

10    Q.  Is it your testimony today that

11    you -- that you personally have never

12    described what you were doing in

13    connection with the Macondo well as an

14    investigation?

15              MR. HILL:  Object to form.

16    A.  I may have used that term, but

17    I -- I don't know specifically if I did or

18    did not.

19    Q.  (BY MS. HARDING)  Okay.  And it's

20    fair to say -- do you think that you've

21    used the term "investigating" with respect

22    to the work that you were doing on the --

23    post-Macondo well incident?

24    A.  Well, on the morning of April the

25    20th, with an understanding of the

**PURSUANT TO CONFIDENTIALITY ORDER**

411

CHANGES AND SIGNATURE

1

2      WITNESS NAME:  THOMAS ROTH

3      DATE OF DEPOSITION:  JULY 25, 2011

4      PAGE   LINE   CHANGE        REASON

5      _____

6      _____

7      _____

8      _____

9      _____

10     _____

11     _____

12     _____

13     _____

14     _____

15     _____

16     _____

17     _____

18     _____

19     _____

20     _____

21     _____

22     _____

23     _____

24     _____

25     _____

**PURSUANT TO CONFIDENTIALITY ORDER**

412

```
1        I, THOMAS ROTH, have read the

2    foregoing deposition and hereby affix my

3    signature that same is true and correct,

4    except as noted on the attached Amendment

5    Sheet.

6                    _____

7                        THOMAS ROTH

8    THE STATE OF _____)

9    COUNTY OF _____)

10       Before me, _____,

11   on this day personally appeared

12   THOMAS ROTH, known to me (or proved to me

13   on the oath of _____ or through

14   _____) to be the person whose

15   name is subscribed to the foregoing

16   instrument and executed the same for the

17   purposes and consideration therein

18   expressed.

19       Given under my hand and seal of office

20   this _____ day of _____,

21   2011.

22                    _____

23   NOTARY PUBLIC IN AND FOR

24   THE STATE OF _____

25   My commission expires: _____
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    IN RE: OIL SPILL        )    MDL NO. 2179

      by the OIL RIG          )

 4    "DEEPWATER HORIZON" in  )    SECTION "J"

      the GULF OF MEXICO, ON  )

 5    APRIL 20, 2010          )    JUDGE BARBIER

                              )

 6                            )    MAG. JUDGE

                              )    SHUSHAN

 7

 8              REPORTER'S CERTIFICATION

 9     TO THE ORAL AND VIDEOTAPED DEPOSITION OF

10                   THOMAS ROTH

11         I, Therese J. Casterline, Certified

12    Shorthand Reporter in and for the State of

13    Texas and the State of Louisiana, do

14    hereby certify to the following:

15         That the witness, THOMAS ROTH, was

16    duly sworn by the officer and that the

17    transcript of the oral deposition is a

18    true record of the testimony given by the

19    witness.

20         That the deposition transcript was

21    submitted on _____, 2011, to the

22    witness or to the attorney for the witness

23    for examination, signature and return to

24    Worldwide Court Reporters, Inc., by

25    _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

1    That the amount of time used by each
2  party at the deposition is as follows:
3         Mr. Thornhill - 4 hours, 07
4  minutes
5         Ms. Sullivan - 1 hour, 22 minutes
6         Ms. Harding - 0 hours, 48 minutes
7    I further certify that I am neither
8  counsel for, related to, nor employed by
9  any of the parties or attorneys in the
10 action in which this proceeding was taken,
11 and further that I am not financially or
12 otherwise interested in the outcome of the
13 action.
14    Subscribed and sworn to by me this
15 25th day of July, 2011.
16
17    _Therese J. Casterline_

   Therese J. Casterline, CSR, RMR
18 Texas CSR 5001, Expires 12-31-11
   Louisiana CSR 25014, Expires 12-31-11
19 WORLDWIDE COURT REPORTERS
   3000 Weslayan, Suite 235
20 Houston, Texas 77027
   1-800-745-1101
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**

415

1                UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF LOUISIANA

3    IN RE: OIL SPILL        )    MDL NO. 2179

     by the OIL RIG          )

4    "DEEPWATER HORIZON" in  )    SECTION "J"

     the GULF OF MEXICO, ON  )

5    APRIL 20, 2010          )    JUDGE BARBIER

                             )

6                            )    MAG. JUDGE

                             )    SHUSHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20                    VOLUME 2 OF 2

21

22        Deposition of THOMAS ROTH, taken at

23    Hilton St. Charles Hotel, 333 St. Charles

24    Avenue, Le Moyne Room, New Orleans,

25    Louisiana, on the 26th of July, 2011.

**PURSUANT TO CONFIDENTIALITY ORDER**

759

1      Q.   Okay.   Now, I want to ask you

2   about a document that I believe has only

3   today been made available, and it involves

4   some recommendations which you gave, I

5   believe, to your president, Mr. Probert.

6          MR. THORNHILL:   And, Emily, if

7   you will make sure that these documents

8   are -- are distributed.   Gavin was kind

9   enough to make sure that we had seen it

10   and provided them to us last night or

11   early this morning.

12          MS. GEBHARDT:   Thanks for

13   making copies.

14          MR. THORNHILL:   And -- and we

15   have the three -- I think it's three

16   documents.   For the record, just while

17   Emily's distributing those -- let me make

18   sure that I've got the Bates page numbers

19   right, Emily.

20          Okay.   One of those documents

21   is HAL_1126190, and attached to it is

22   printed information that is not numbered,

23   so -- it says it's native only.

24          Another is a Halliburton

25   document, 1126187, and attached to it is a

**PURSUANT TO CONFIDENTIALITY ORDER**

1    PowerPoint that does have page numbers

2    that run through page -- page 8.

3              And the third is a Halliburton

4    document, 1126188, and it's a PowerPoint

5    that has pages attached to it that run

6    through page 5.

7              Hopefully Emily can give to

8    you the -- the documents, and we can talk

9    about them.

10             MR. HILL:  Emily, can I get a

11   set?

12       Q.   (BY MR. THORNHILL)  While those

13   are being distributed to you, let me ask

14   you a couple of background questions.

15             Are you familiar with the

16   documents to which we've made reference

17   and -- and identified?

18       A.   Yes, sir.

19             MR. THORNHILL:  We'll give

20   each of those documents an exhibit number,

21   and they will be labeled by Emily at the

22   end, just so we'll make sure we've got the

23   right numbers.  But they'll be Exhibit

24   Numbers 4357-359.

25       Q.   (BY MR. THORNHILL)  While Emily's

**PURSUANT TO CONFIDENTIALITY ORDER**

761

1    distributing that, let me ask you about

2    the -- the purpose of these documents that

3    you drew.

4                    After the blowout, I

5    understand that you did what I've called

6    an investigation research analysis of

7    facts.

8                    MR. HILL:  Do you want him to

9    have them?

10                   MR. THORNHILL:  Yes.  He'll

11   have the three, and we'll make sure that

12   we've got the identified pages.

13       Q.  (BY MR. THORNHILL)  When you

14   prepared these documents, Mr. Roth, my

15   understanding is you prepared them for

16   presentation to the president of

17   Halliburton -- or one of the presidents of

18   Halliburton, Mr. Probert?

19       A.  I actually prepared two of these

20   documents.  I prepared the one titled

21   Observations.  I prepared this document

22   stating cementing corporate review, which

23   is in this format.

24       Q.  Okay.  And just for the record,

25   the two documents that you identify by

**PURSUANT TO CONFIDENTIALITY ORDER**

793

```
1                    CHANGES AND SIGNATURE

2        WITNESS NAME:  THOMAS ROTH

3        DATE OF DEPOSITION:  JULY 26, 2011

4        PAGE  LINE  CHANGE        REASON

5        _____

6        _____

7        _____

8        _____

9        _____

10       _____

11       _____

12       _____

13       _____

14       _____

15       _____

16       _____

17       _____

18       _____

19       _____

20       _____

21       _____

22       _____

23       _____

24       _____

25       _____
```

**PURSUANT TO CONFIDENTIALITY ORDER**

794

     I, THOMAS ROTH, have read the

foregoing deposition and hereby affix my

signature that same is true and correct,

except as noted on the attached Amendment

Sheet.

                    _____

                         THOMAS ROTH

THE STATE OF _____)

COUNTY OF _____)

     Before me, _____,

on this day personally appeared

THOMAS ROTH, known to me (or proved to me

on the oath of _____ or through

_____) to be the person whose

name is subscribed to the foregoing

instrument and executed the same for the

purposes and consideration therein

expressed.

     Given under my hand and seal of office

this _____ day of _____,

2011.

                    _____

                    NOTARY PUBLIC IN AND FOR

                    THE STATE OF _____

                    My commission expires: _____

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1              UNITED STATES DISTRICT COURT
 2             EASTERN DISTRICT OF LOUISIANA
 3    IN RE: OIL SPILL        )    MDL NO. 2179
      by the OIL RIG          )
 4    "DEEPWATER HORIZON" in  )    SECTION "J"
      the GULF OF MEXICO, ON  )
 5    APRIL 20, 2010          )    JUDGE BARBIER
                              )
 6                            )    MAG. JUDGE
                              )    SHUSHAN
 7
 8            REPORTER'S CERTIFICATION
 9    TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10                  THOMAS ROTH
11        I, Therese J. Casterline, Certified
12    Shorthand Reporter in and for the State of
13    Texas and the State of Louisiana, do
14    hereby certify to the following:
15        That the witness, THOMAS ROTH, was
16    duly sworn by the officer and that the
17    transcript of the oral deposition is a
18    true record of the testimony given by the
19    witness.
20        That the deposition transcript was
21    submitted on _____, 2011, to the
22    witness or to the attorney for the witness
23    for examination, signature and return to
24    Worldwide Court Reporters, Inc., by
25    _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

```
1          That the amount of time used by each
2      party at the deposition is as follows:
3              Ms. Harding - 1 hour, 39 minutes
4              Mr. Goforth - 2 hours, 14 minutes
5              Ms. Schell - 0 hours, 45 minutes
6              Mr. Lembrich - 0 hours, 10 minutes
7              Mr. Zeringue - 0 hours, 7 minutes
8              Mr. Barrow - 0 hours, 3 minutes
9              Mr. Hill - 0 hours, 16 minutes
10             Mr. Thornhill - 0 hours, 55
11     minutes
12         I further certify that I am neither
13     counsel for, related to, nor employed by
14     any of the parties or attorneys in the
15     action in which this proceeding was taken,
16     and further that I am not financially or
17     otherwise interested in the outcome of the
18     action.
19         Subscribed and sworn to by me this
20     26th day of July, 2011.
21           Therese J. Casterline
           _____
           Therese J. Casterline, CSR, RMR
22         Texas CSR 5001, Expires 12-31-11
           Louisiana CSR 25014, Expires 12-31-11
23         WORLDWIDE COURT REPORTERS
           3000 Weslayan, Suite 235
24         Houston, Texas 77027
           1-800-745-1101
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**