# BINGHAM

Charles L. Solomont
Direct Phone: 617.951.8996
Direct Fax:    617.428.6313
carl.solomont@bingham.com

September 2, 2011

**Via Email**

The Honorable Sally Shushan
United States Magistrate Judge
United State District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re: **In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010 - Reply of APC in Support of its Motion to Compel BP Discovery Responses**

Dear Judge Shushan:

We respectfully submit this brief reply to BP's Opposition to the motion of Anadarko Petroleum Corporation ("APC") to compel certain discovery response from BP.

*BP's Discovery Responses Remain Relevant.* Preliminarily, BP's last substantive argument is groundless. BP contends that the Order as to Motions to Dismiss the B1 Master Complaint (issued the day after APC filed its motion to compel) somehow renders moot the discovery that APC has moved to compel. Virtually all of the discovery at issue asks BP to disclose any evidence that BP has of APC's pre-incident knowledge, if any, of circumstances that led to the blow out. BP contends that the Court's holding -- that APC, as a non-Operator, had no "duty to intercede in [BP's] operations -- renders such discovery irrelevant. That is incorrect, unfortunately. The Court's Order rules only on the Motions to Dismiss the B1 Master Complaint. Neither the Court nor any of the other parties have dismissed any other of the claims against APC. Absent a ruling by the Court or a concession by all parties that APC's knowledge is not relevant to any claim in the case, BP should be required to respond to APC's discovery.

*Anadarko timely raised the issue of BP's improper denials of the RFAs.* BP asserts that Anadarko failed to raise issues with BP's RFA responses in a timely manner. In fact, however, Exhibit A to BP's Opposition (June 10, 2011 Letter from C. Solomont to T. Duffy and A. Langham) directly refutes this, as it contains a full-page itemization of deficiencies in BP's RFA responses, including seven bullet points with references to specific examples of eleven RFA responses. APC initially framed the issue of BP's

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

The Honorable Sally Shushan
September 2, 2011
Page 2

deficient RFA responses in the context of its Int. No. 30, which directly raised APC's complaints about BP's RFA responses because Int. No. 30 requested that BP state the basis for each response to APC's RFAs that BP did not unqualifiedly admit. Rather late in the meet and confer process (*see* Exhibit F to the Opposition), BP explained, for the first time, the refrain it had repeated in many of its responses about "informal communications" that, according to the responses, supposedly made it theoretically "possible that someone from one of the BP Parties communicated with someone working for Anadarko" about subjects that the RFAs asked BP to admit were not discussed. BP conceded that its responses referred to such hypothetical communications, and other vaguely referenced but unidentified Anadarko/BP communications, solely in order to provide it a supposedly plausible basis for denying the RFAs (at least in part). *Id.*

During the meet and confer process, APC made clear that BP could not deny the RFAs based upon the mere speculative possibility that Anadarko and BP could have had the types of communications that the RFAs asked BP to admit did not occur. *Id.* (In all events, BP had no basis for claiming that it lacked information to admit or deny the RFAs as BP exclusively had the ability to interview its representatives to see if they could identify even a single communication that the RFAs were asking BP to admit did not occur.)

The rules do not entitle BP to deny portions of the RFAs where, as here, BP has expressly acknowledged that, after "reasonable inquiry," it lacks information to enable it to admit or deny the RFA. Fed R. Civ. P 36(a)(4); *see also* Wright & Miller 8B Fed. Prac. & Proc. Civ. § 2260 n. 5 (3d ed.) (2011) ("Use of the word 'denied' qualified by a statement that the responding party does not have knowledge or information upon which to form a belief is a nullity and has the legal effect of an admission") (*quoting Dulansky v. Iowa–Illinois Gas & Elec. Co.,* 92 F. Supp. 118 (S.D. Iowa 1950)). BP cites no case law in support of its contention that a party that, by its own admission, lacks information to enable it to admit or deny an RFA can nonetheless deny it. Nor does BP cite any authority entitling it to "deny" an interrogatory "except as admitted" where it admits the entire substance of the interrogatory, as it did with Int. No. 30. Such a denial does not "fairly respond to the substance of the matter," as Rule 36(a)(4) requires. Anadarko respectfully submits that, having raised these issues with BP during the meet and confer process, APC is entitled to move this Court for an order compelling BP to withdraw its improper denials.

*RFA Nos. 2, 9, and 21 are clearly worded.* BP's contention that it was within its rights to deny RFA Nos. 2, 9, and 21 because they were imprecisely worded also does not withstand scrutiny. RFA No. 2 asked BP to "admit that APC did not participate in developing the cement design for the Macondo Well production casing." In its Opposition, BP contends that it cannot fully admit this RFA because APC was a "Participating Party," as that term is defined and used in the Operating Agreement

The Honorable Sally Shushan
September 2, 2011
Page 3

("OA"). *See* Opp. p. 7. This is just a pretext for BP to avoid an admission. The term "Participating Party" under the OA refers to whether an entity has a contractual right to have an economic interest in, and the right and obligation to share in, the economic risks and benefits of, a particular well.[1] The definition simply has no relation to the substance of the RFA, addressing whether APC participated in a specific activity --*i.e.*, the development of the design of the cement protocol for the Macondo Well production casing. Similarly, RFA No. 21 asked BP to admit that "APC was not involved in developing any of the temporary abandonment plans for the Macondo Well." Without identifying any conceivable meaning of the term "involved in" that could possibly describe APC actions with respect to the temporary abandonment plans, BP baselessly contends that it cannot admit the RFA because the term "involved in" is "ambiguous." *Id.* Finally, BP claims it denied RFA No. 9 because it was framed as a "double negative." RFA No. 9 asked BP to admit that it "did not inform BP of its decision not to spot heavy mud in the rat hole prior to pumping the cement for the Macondo Well production casing." A double negative occurs when two negatives are used in the same sentence so that they cancel each other and create a positive (*e.g.*, "I cannot not go," which means the same thing as "I can go"). Here, RFA No. 9 simply asks BP to admit that it did not inform APC of a decision that BP made -- a decision not to do something. RFA No. 9 is not a double negative and it is not the least bit confusing. Anadarko respectfully suggests that BP ought not to be permitted to avoid admitting these RFAs where its claims that they are "imprecisely worded" are groundless.

*APC Int. No. 30 requires BP to provide the bases for its denials of RFA Nos. 25, 26, and 28.* With respect to RFA Nos. 25, 26, and 28, BP's Opposition misconstrues the issue. *See* Opp. pp. 8-9. In response to these RFAs, BP provided only some of the evidence that it contends supports its denials -- prefacing its explanation for the denials with the word "for instance." Contrary to the Opposition, APC is not stating that the rules governing RFAs require BP to provide every basis for a denial. Rather, the information that APC seeks -- all of the bases for BP's denials of these three RFAs -- is responsive to APC's Int. No. 30, which asked BP to state the full basis for all of its many responses denying RFAs. In the face of BP's objection that Int. No. 30 was unduly burdensome because it purportedly sought BP to provide the basis for BP's

---

[1] OA Section 2.52 defines a "Participating Party" as follows: A Party who, having a contractual right to do so, participates in the sharing of: (a) the Costs, risks, and benefits (including rights to Hydrocarbons) of an approved activity or operation; or, (b) if applicable, the interests to be assigned to the Parties. The term includes a Party who does not Vote to participate in a proposed activity or operation, but is nonetheless bound to participate in that proposed activity or operation if it is approved by Vote.

The Honorable Sally Shushan
September 2, 2011
Page 4

response to virtually every RFA (in that BP denied almost every RFA in whole or in part), APC narrowed the scope of Int. No. 30 to cover only BP's responses to RFA Nos. 25, 26, and 28. Anadarko respectfully submits that it is reasonable to require BP to respond to APC's Int. No. 30 as narrowed to seek responsive information as to only these three (of APC's 31) RFAs.

*BP should identify any material oral communications with Anadarko or admit that it is not aware of any such communications.* Finally, APC Interrogatory Nos. 26 and 27 ask BP to identify *all* material communications between Anadarko and BP, not just the *written* communications to which BP's responses refer. BP argues that "Anadarko has failed to describe what additional information it wants in response to APC Interrogatory Nos. 26 and 27." *See* Opp. p. 9. Yet APC's motion to compel plainly states the additional information that it seeks: an order compelling BP to identify all oral communications regarding the topics listed in footnote 1 of APC's motion to compel or to admit that there were no such communications. *See* APC's August 25, 2011 Motion to Compel letter at pp. 1-3. BP can easily ascertain which of its representatives most likely had communications with Anadarko and whether they had oral conversations concerning the specified subjects. Anadarko respectfully submits that it is not too much to ask that BP, after making a reasonable inquiry, identify the responsive oral communication or admit it is not aware of any such communications.

Thank you for your consideration of this submission.

Respectfully submitted,

*/s/ Charles L. Solomont*
Charles L. Solomont

cc:   Mark Nomellini, Esq.
      Darin Beffa, Esq.
      Plaintiffs' Liaison Counsel
      Defendants' Liaison Counsel
      Ky. E. Kirby, Esq.
      Warren Anthony Fitch, Esq.