Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFP | 1 | All documents referring or relating to the MC252 Well created on or after January 1, 2008. | N/A |
| BP | RFP | 2 | All documents referring or relating to any application for the MC252 Well filed by BP. | Event |
| BP | RFP | 3 | All documents referring or relating to the Bureau of Ocean Energy Management's ("BOEM") evaluation, approval or disapproval of any submission for the MC252 Well filed by BP. | Event |
| BP | RFP | 4 | All documents referring or relating to any health, safety or environment issues on board Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 5 | All documents referring or relating to any inspection or audit of Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 6 | All documents referring or relating to any inspection or audit of the blowout preventer utilized in Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 7 | All documents referring or relating to any certification of the blowout preventer utilized on Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 8 | Documents sufficient to Identify any person at the BOEM who received, reviewed, analyzed, evaluated, approved or disapproved of BP's submissions to BOEM related or referring to the MC252 Well, Transocean's Deepwater Horizon rig or Oil Spill Response Planning in the Gulf of Mexico, including but not limited to organization charts. | Event |
| BP | RFP | 9 | All documents relating or referring to the education, training, experience, qualification, and evaluation of any person at the BOEM who received, reviewed, analyzed, evaluated, approved or disapproved of BP's submissions to BOEM related or referring to the MC252 Well or Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 10 | All documents relating or referring to BOEM guidelines, procedures, policies or practices for the evaluation of submissions related to deepwater wells in the Gulf of Mexico. | Event |
| BP | RFP | 11 | All documents relating or referring to BOEM guidelines, procedures, policies, practices or evaluations related to well control and safety training programs of deepwater well operations in the Gulf of Mexico from January 1, 2008 up until April 20, 2010. | Event |
| BP | RFP | 12 | A complete, unredacted native copy of the BOEM corporate database (TIMS) maintained by the Technical Data Management Section (TDMS), including all underlying tables and documents linked in the database. | Event |
| BP | RFP | 13 | All documents that track, refer or relate to the relationships between companies conducting Outer Continental Shelf operations in the Gulf of Mexico, including the effect of mergers, acquisitions and name changes on those companies. | Event |
| BP | RFP | 14 | All district safety incident reports filed by each operator in the Gulf of Mexico with the BOEM. | Event |
| BP | RFP | 15 | All safety and environmental management systems filed by each operator in the Gulf of Mexico with the BOEM. | Event |
| BP | RFP | 16 | All documents constituting, referring or relating to BOEM safety index calculations and underlying data for each operator in the Gulf of Mexico. | Event |
| BP | RFP | 17 | All documents constituting, referring or relating to BOEM statistics tracked in the OCS Performance Measure Program and underlying data for each operator in the Gulf of Mexico. | Event |
| BP | RFP | 18 | All documents Identifying, reflecting or relating to recipients of, or candidates considered for, the BOEM Safety Award for Excellence in the Gulf of Mexico, and all underlying documents or data supporting or relating to those selections or considerations. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 19 | All BOEM documents or data constituting, reflecting or referring to annual production by operator, by well, and by total associated well depth, for operations in the Gulf of Mexico. | Event |
| BP | RFP | 20 | All documents referring or relating to the preparation, review or approval of Exploration Plans for the MC252 Well. | Event |
| BP | RFP | 21 | All documents referring or relating to the preparation, review or approval of BP's Oil Spill Response Plans for the Gulf of Mexico region, including but not limited to BP's Oil Spill Response Plan in effect at the time of the Incident. | Event |
| BP | RFP | 22 | All documents referring or relating to reviews, studies or assessments required by the National Environmental Policy Act or by regulations or practices to implement that Act in connection with exploration of the MC252 Well. | Event |
| BP | RFP | 23 | All documents referring or relating to the application and requirements of the Oil Pollution Act of 1990 or any other federal law, or any regulations or practices to implement that Act or any such law, in determining the adequacy of an oil spill response plan. | Event |
| BP | RFP | 24 | All documents that constitute, contain, Describe or refer to any guideline, policy or practice for use in determining the adequacy of the conduct or actions of a Responsible Party in connection with the requirements of the Oil Pollution Act of 1990 related to the response to an incident for which that Act creates legal obligations. | Event |
| BP | RFP | 25 | All documents referring or relating to the preparation, review or approval of Area Contingency Plans for areas affected by the Incident that either were in effect on April 20, 2010, or that were prepared and implemented at any time after April 20, 2010. | Event |
| BP | RFP | 26 | All documents referring or relating to the preparation for an oil spill response by the Area Committees in the areas affected by the Incident. | Event |
| BP | RFP | 27 | All documents relating or referring to the use of a long string, liner, or liner with a tie back production casing in deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 28 | All documents relating or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 29 | All documents relating or referring to the use of barriers in deepwater wells in the Gulf of Mexico, such as but not limited to surface cement plugs, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 30 | All documents relating or referring to the design and use of spacers for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 31 | All documents relating or referring to temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 32 | All documents relating or referring to positive or negative pressure tests for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 33 | All documents relating or referring to cementing procedures for deepwater wells, including the design, testing and execution of foamed cement, in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 34 | All documents relating or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 35 | All documents relating or referring to the use (or decision not to use) a cement evaluation tool, including a cement bond log, in deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 36 | All documents relating or referring to tubular or casing design for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 37 | All documents relating or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | RFP | 38 | All documents relating or referring to drilling fluids in deepwater wells, on or offrig, in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses. | Event |
| BP | RFP | 39 | All documents relating or referring to responding to well control events for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses. | Event |
| BP | RFP | 40 | All documents relating or referring to blowout preventers for deepwater wells in the Gulf of Mexico, including all owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses. | Event |
| BP | RFP | 41 | All databases containing information relating or referring to deepwater well operations in the Gulf of Mexico, including but not limited to the Weekly Activity Report (WAR) database, the Application for Permit to Drill (APD) database, and the Application for Permit to Modify (APM) database, as well as any database reflecting owner, operator or contractor submissions, permit applications, responses to permit applications or other filings reflecting well design details, and all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses. | Event |
| BP | RFP | 42 | All documents relating or referring to any inspection or audit of Transocean's rigs utilized in the Gulf of Mexico from 2008 through today. | Event |
| BP | RFP | 43 | All documents relating or referring to any inspection, audit or certification of blowout preventers utilized on Transocean's rigs in the Gulf of Mexico created on or after January 1, 2008. | Event |
| BP | RFP | 44 | All documents relating or referring to any citations, warnings, notices, Incidents of Noncompliance ("INCs"), admonishments or violations issued to Transocean related to its operations or training of personnel in the Gulf of Mexico created on or after January 1, 2008. | Event |
| BP | RFP | 45 | All documents relating or referring to any citations, warnings, notices, INCs, admonishments or violations issued to Halliburton related to its operations or training of personnel in the Gulf of Mexico created on or after January 1, 2008. | Event |
| BP | RFP | 46 | All documents requested by, or produced in response to, requests for production and interrogatories served on the United States Government by Plaintiffs or any other party in MDL No. 2179. | N/A |
| BP | RFP | 47 | All documents exchanged between and communications between the United States and any member, committee, employee, staff member or other person working on behalf of the United States Congress referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after January 1, 2010. | Event; SC |
| BP | RFP | 48 | All documents exchanged between and communications between the United States and any person working in the Executive Office of the President of the United States relating to the Deepwater Horizon Incident or the MC252 Well created on or after January 1, 2010. | Event; SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | RFP | 49 | All documents exchanged between and communications between the United States and any member, employee, staff member or other person working on behalf of the National Academy of Engineering or National Research Counsel referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after April 20, 2010. | Event; SC |
| BP | RFP | 50 | All documents exchanged between and communications between the BOEM and any member, employee, staff member or other person working on behalf of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after April 20, 2010. | Event; SC |
| BP | RFP | 51 | All documents exchanged between and communications between the United States and any member, employee, staff member or other person working on behalf of the Chemical Safety Board referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after April 20, 2010. | Event; SC |
| BP | RFP | 52 | All documents exchanged between and communications between the United States and any member of the media or press referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after April 20, 2010. | Event; SC |
| BP | RFP | 53 | All documents exchanged between and communications between the United States and any member, employee, staff member or other person working on behalf of Det Norske Veritas referring or relating the Deepwater Horizon Incident or the MC252 Well Prospect created on or after April 20, 2010. | Event |
| BP | RFP | 54 | All documents exchanged between and communications between the United States and any other party in MDL No. 2179 referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after April 20, 2010. | Event; SC |
| BP | RFP | 55 | All documents referring or relating to the "Macondo: The Gulf Oil Disaster – Chief Counsel's Report" from the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling released in 2011. | Event; SC |
| BP | RFP | 56 | All documents referring or relating to any report, presentation, conference, meeting or public statement from the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, including the final report, "Deep Water: The Gulf Oil Disaster and the Future of Offshore Drilling," released on January 11, 2011. | Event; SC |
| BP | RFP | 57 | All documents referring or relating to BP's "Deepwater Horizon: Accident Investigation Report" dated September 8, 2010. | Event |
| BP | RFP | 58 | All documents constituting, referring or relating to any working papers or reports created by the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling or its staff. | Event |
| BP | RFP | 59 | All documents constituting, referring or relating to any research reports submitted by any person to the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling or its staff. | Event |
| BP | RFP | 60 | All documents constituting, referring or relating to Freedom of Information Act requests that have sought records related to the response to the Incident. | Event; SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 61 | All documents produced by the United States under the Freedom of Information Act related to the Incident, the response to the Incident, BP's conduct in connection with the Incident, or any of the Response Activities, including but not limited to controlled in situ burning, skimmers, chemical dispersants, boom and berms. | Event; SC |
| BP | RFP | 62 | All documents provided to and other communications sent or received by the United States, the U.S. Congress, the Chemical Safety Board, the Marine Board of Investigation, the Incident Specific Preparedness Review, the National Commission on the Deepwater Horizon Oil Spill, or any other entity or proceeding related to the Incident or response to the Incident. | Event; SC |
| BP | RFP | 63 | All documents referring or relating to the United States' response to the explosion and fire on Transocean's Deepwater Horizon rig between the time of the explosion and the sinking of the Deepwater Horizon rig. | Event; SC |
| BP | RFP | 64 | All documents referring or relating to firefighting efforts in response to the explosion and fire on Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 65 | All documents referring or relating to the rescue efforts and operations in response to the explosion and fire on Transocean's Deepwater Horizon rig. | Event |
| BP | RFP | 66 | All documents referring or relating to training for emergency maritime response, firefighting or disaster response related to oil rigs in the Gulf of Mexico. | Event |
| BP | RFP | 67 | All documents referring or relating to the effort to actuate the Deepwater Horizon blowout preventer on or after April 20, 2010, including any analysis of the position of the Deepwater Horizon blowout preventer components. | SC |
| BP | RFP | 68 | All documents referring or relating to the decision to approve or reject any procedure considered or submitted as part of the effort to cap, seal or collect hydrocarbons from the MC252 Well. | SC |
| BP | RFP | 69 | All documents referring or relating to any analysis, study, inspection or evaluation of a potential method to cap, seal or collect hydrocarbons from the MC252 Well, including any post-method analysis. | SC |
| BP | RFP | 70 | All documents referring or relating to participation in or review of any peer reviews, Kill Well On Paper sessions, Hazard Identification Studies, or Hazard and Operability Studies for a potential method to cap, seal or collect hydrocarbons from the MC252 Well. | SC |
| BP | RFP | 71 | All documents referring or relating to presentations or reports made by anyone from BP to the United States regarding potential methods to cap, seal, contain or collect hydrocarbons from the MC252 Well and the United States' response to such presentations or reports, including any post-method analysis. | SC |
| BP | RFP | 72 | All documents referring or relating to presentations or reports made by anyone from third parties to the United States regarding potential methods to cap, seal, contain or collect hydrocarbons from the MC252 Well and the United States' response to such presentations or reports. | SC |
| BP | RFP | 73 | All documents referring or relating to any communications between the United States and any employee or officer of BP on or after April 20, 2010 related to the MC252 well or the Response Activities. | SC |
| BP | RFP | 74 | All documents referring or relating to the decision whether or not to proceed with the blowout preventer on blowout preventer option following the top kill attempt. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 75 | All documents referring or relating to the decision whether or not to allow BP to install and/or shut the Capping Stack, including any analysis, studies, or testing protocol for the effect of the Capping Stack on the MC252 Well. | SC |
| BP | RFP | 76 | All documents referring or relating to the monitoring, analysis, study, or evaluation of well integrity for the MC252 Well, including but not limited to documents regarding the decisions to terminate or prolong the well integrity testing on or after July 15, 2010. | SC |
| BP | RFP | 77 | All documents referring or relating to communications by and among U.S. Secretary of Energy Steven Chu, the Science Advisors, and/or members of the National Laboratories regarding efforts to cap, seal or collect hydrocarbons from the MC252 Well. | SC |
| BP | RFP | 78 | All documents referring or relating to the efforts to contain, collect, or capture the flow of hydrocarbons from the MC252 Well. | SC |
| BP | RFP | 79 | All documents referring or relating to the amount of hydrocarbons collected, contained or captured from the MC252 Well. | SC |
| BP | RFP | 80 | All communications and documents, including underlying data, related to the flow rate or volume of oil or the oil budget for the MC252 Well following April 20, 2010, by or between individuals working for the United States. | SC |
| BP | RFP | 81 | All documents related to any efforts to determine the volume of oil spilled or the flow rate of oil spilled from the MC252 Well following April 20, 2010, including but not limited to calculations of volumes of oil spilled and the flow rate at which oil was spilled from the MC252 Well, by any agency of the United States, including the Flow Rate Technical Group. | SC |
| BP | RFP | 82 | All communications, documents, and drafts related to the preparation and publication of the document entitled "Oil Budget Calculator, Deepwater Horizon, Technical Documentation," by the Federal Interagency Solutions Group, Oil Budget Calculator Science and Engineering Team. | SC |
| BP | RFP | 83 | All documents referring or relating to the actual or potential impact of different flow rates on the effort to contain or collect hydrocarbons from the MC252 Well, including any decision to order additional or redundant collection capacity. | SC |
| BP | RFP | 84 | All documents referring or relating to the actual or potential impact of flow rate on the effort to cap or seal the MC252 Well. | SC |
| BP | RFP | 85 | All documents referring or relating to predictions, estimates or measurements of the amounts of oil or any other substance discharged from the wellhead of the MC252 Well. | SC |
| BP | RFP | 86 | All documents referring or relating to the physical or chemical properties of oil or any other substance discharged from the wellhead of the MC252 Well. | SC |
| BP | RFP | 87 | All documents that constitute, refer or relate to medical, scientific or other reports, studies, data, or any other analysis or assessment of personal injuries, or any other physical, mental, or emotional injuries, illnesses, or claims, or death attributed to Response Activities, including but not limited to plans or proposals to review such reports, studies, data or other analyses or assessments. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 88 | All documents referring or relating to medical, scientific, technical, or other reports, studies, predictions, estimates, data, or measurements, or any other analyses or assessments of acute or chronic human health effects (including injury, illness or death), toxicities, hazards, exposures, or risks, whether physical, mental, or emotional, related to, concerning, attributed to, based upon, or otherwise associated with, Response Activities, including but not limited to plans or proposals to study, predict, estimate, evaluate, assess, or measure any such effects, toxicities, hazards, exposures, or risks. | SP |
| BP | RFP | 89 | All documents referring or relating to decisions, plans or proposals to close any area for commercial or recreational fishing as a result of or in connection with the Incident or Response Activities. | SP |
| BP | RFP | 90 | All documents referring or relating to decisions, plans or proposals to open any area for commercial or recreational fishing that was closed as a result of or in connection with the Incident or Response Activities. | SP |
| BP | RFP | 91 | All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in shoreline assessment or clean-up activities, including but not limited to such activities pertaining to beaches or special environments such as wetlands and saltwater or brackish marshes. | SP |
| BP | RFP | 92 | All documents referring or relating to plans or proposals to determine or to study shoreline oiling in connection with the Incident and Response Activities, including but not limited to documentation protocols, experimental assessment plans, or data quality assurance or data quality control activities related to such plans or proposals. | SP |
| BP | RFP | 93 | All documents referring or relating to the use or proposed use of Quick Reaction Forces or other types of response teams organized by the Unified Command at the Houma Incident Command Post or at any other location in connection with Response Activities. | SP |
| BP | RFP | 94 | All documents referring or relating to determinations or studies of shoreline oiling in connection with the Incident and Response Activities, including but not limited to documentation protocols, experimental assessment plans, or data quality assurance or data quality control activities related to such plans or proposals. | SP |
| BP | RFP | 95 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of shoreline assessment or clean-up in connection with the Response Activities. | SP |
| BP | RFP | 96 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of shoreline assessment or clean-up in connection with the Response Activities. | SP |
| BP | RFP | 97 | All documents referring or relating to the effectiveness of shoreline assessment or clean-up in connection with the Response Activities. | SP |
| BP | RFP | 98 | All documents referring or relating to counterproductive or harmful effects attributed to shoreline assessment or clean-up in Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality. | SP |
| BP | RFP | 99 | All documents referring or relating to plans, proposals or decisions to procure or deploy boom in connection with the Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 100 | All documents referring or relating to plans, proposals or decisions to add to, alter or amend the booming protection strategies contained in, or that should have been contained in, the Area Contingency Plans for areas affected by the Incident. | SP |
| BP | RFP | 101 | All documents referring or relating to plans, proposals or decisions to remove boom in connection with the Response Activities. | SP |
| BP | RFP | 102 | All documents referring or relating to plans, proposals or decisions to locate boom in staging areas, to transport boom from one location to another, or to prohibit the relocation of boom, in connection with the Response Activities. | SP |
| BP | RFP | 103 | All documents referring or relating to standards or guidelines to determine the physical qualities of boom, or to set performance standards for boom, used in connection with the Response Activities. | SP |
| BP | RFP | 104 | All documents referring or relating to plans, proposals or decisions to inspect or test boom, or to estimate or determine the types or quantity of boom used, in connection with the Response Activities. | SP |
| BP | RFP | 105 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of boom in connection with the Response Activities. | SP |
| BP | RFP | 106 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of boom in connection with the Response Activities. | SP |
| BP | RFP | 107 | All documents referring or relating to the effectiveness of the use of boom in connection with the Response Activities. | SP |
| BP | RFP | 108 | All documents referring or relating to counterproductive or harmful effects of or attributed to the use of boom in Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality. | SP |
| BP | RFP | 109 | All documents not contained in public rulemaking dockets of the U.S. Coast Guard or the U.S. Department of Interior referring or relating to the development of criteria or standards for the Effective Daily Recovery Capacity of skimmers or to changes or proposed changes in those criteria or standards. | SP |
| BP | RFP | 110 | All documents referring or relating to the number, type or capabilities of skimming equipment or vessels obtained by BP for use in the response to the Incident, or to the adequacy of the skimming resources obtained by BP for use in the response to the Incident. | SP |
| BP | RFP | 111 | All documents referring or relating to plans, proposals or decisions to procure or deploy skimming equipment or vessels in connection with the Response Activities, or to plans, proposals or decisions to not use or to curtail use of skimming equipment or vessels in connection with the Response Activities. | SP |
| BP | RFP | 112 | All documents referring or relating to plans, proposals or decisions to inspect or test skimming equipment or vessels or to test or evaluate procedures used in skimming in connection with the Response Activities. | SP |
| BP | RFP | 113 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of skimming in connection with the Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 114 | All documents referring or relating to the effectiveness of skimming in connection with the Response Activities. | SP |
| BP | RFP | 115 | All documents referring or relating to plans, proposals or decisions to conduct controlled in-situ burning in connection with the Response Activities. | SP |
| BP | RFP | 116 | All documents referring or relating to studies, assessments, data, or analyses of the use of controlled in-situ burning in connection with the Response Activities. | SP |
| BP | RFP | 117 | All documents referring or relating to unpublished studies, assessments or analyses of the use of controlled in-situ burning in spill response activities in the Gulf of Mexico or the Gulf of Mexico basin. | SP |
| BP | RFP | 118 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of controlled in situ burning, either in connection with the Response Activities or as a countermeasure to respond to any other spill. | SP |
| BP | RFP | 119 | All documents referring or relating to the actual or possible impact of preclearance or clearance requirements for the use of controlled in-situ burning in connection with the Response Activities on the amount of oil or other discharged materials that reached the shoreline. | SP |
| BP | RFP | 120 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of controlled in situ burning, either in connection with the Response Activities or as a countermeasure to respond to any other spill. | SP |
| BP | RFP | 121 | All documents referring or relating to the effectiveness of the use of controlled in situ burning in connection with the Response Activities. | SP |
| BP | RFP | 122 | All documents referring or relating to counterproductive or harmful effects of or attributed to the use of controlled in situ burning in Response Activities, including but not limited to any such effects on biota, human health or ambient air quality. | SP |
| BP | RFP | 123 | All documents not contained in public rulemaking dockets of the U.S. Environmental Protection Agency referring or relating to the development of criteria or standards for the review, evaluation or analysis of chemical dispersant products as a countermeasure to respond to an oil spill, including but not limited to such products listed in Subpart J of the National Contingency Plan. | SC |
| BP | RFP | 124 | All documents not contained in public rulemaking dockets of the U.S. Environmental Protection Agency referring or relating to the decision to include Corexit EC9527A and Corexit EC9500A in Subpart J of the National Contingency Plan. | SC |
| BP | RFP | 125 | All documents referring or relating to the effectiveness of Corexit EC9527A and Corexit EC9500A in surface or subsea applications, including but not limited to the effects of the use of those products in such applications on the location and fate of oil and the compounds contained in oil. | SC |
| BP | RFP | 126 | All documents referring or relating to any potential lethal or sub-lethal effects of the use of Corexit EC9527A and Corexit EC9500A in surface or subsea applications, or to any other potential deleterious effects of the use of those products on biota or on human health when so applied, including but not limited to any such effects when those products are mixed with oil and other materials produced in an uncontrolled well blowout and with sea water. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 127 | All documents referring or relating to decisions to permit or to limit or to control the use of Corexit EC9527A and Corexit EC9500A, or to limit or control the quantities applied, in surface or subsea applications in the Response Activities. | SC |
| BP | RFP | 128 | All documents referring or relating to efforts to Identify alternative dispersants to Corexit EC9527A and Corexit EC9500A during the Response Activities or to any decision to permit the continued use of the Corexit products. | SC |
| BP | RFP | 129 | All documents referring or relating to procedures or practices used in deciding when, where, how, and in what quantities to permit the use of Corexit EC9527A and Corexit EC9500 in surface or subsea applications in the Response Activities. | SC |
| BP | RFP | 130 | All documents referring or relating to any decisions to deny the use of Corexit EC9527A and Corexit EC9500 in surface or subsea applications in the Response Activities. | SC |
| BP | RFP | 131 | All documents referring or relating to the actual or possible consequences of daily or other specific pre-clearance or clearance requirements for the use of chemical dispersants in connection with the Response Activities (either in subsea or surface applications, or both) on the amount of oil or other discharged materials that reached the shoreline or surface. | SC |
| BP | RFP | 132 | All documents referring or relating to the actual or possible consequences of decisions to approve or deny application of Corexit EC9527A and Corexit EC9500 on the surface or subsea in connection with the Response Activities | SC |
| BP | RFP | 133 | All documents referring or relating to the supply of, and logistics for procurement and deployment of Corexit EC9527A and Corexit EC9500A in connection with the Response Activities (either in subsea or surface applications, or both), including but not limited to such documents referring or relating to the sufficiency or insufficiency of the supply and commercial availability of those products or to the adequacy or inadequacy of the logistics for procurement and deployment of those products in connection with the Response Activities. | SC |
| BP | RFP | 134 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of chemical dispersants or to measure the fate of dispersed oil in connection with the Response Activities. | SC |
| BP | RFP | 135 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of chemical dispersants in connection with the Response Activities. | SC |
| BP | RFP | 136 | All documents referring or relating to the effectiveness of, or benefits from, the use of chemical dispersants in connection with the Response Activities. | SC |
| BP | RFP | 137 | Except to the extent requested by Request No. 126, all documents referring or relating to counterproductive or harmful effects of or attributed to the use of Corexit EC9527A and Corexit EC9500A in the Response Activities. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 138 | All documents referring or relating to plans, proposals or decisions to increase or decrease rates of Mississippi River discharge between April 20, 2010 and September 15, 2010 at the Bayou Lamoque Diversion, the Davis Pond Diversion, the Violet Siphon, the Caernarvon Diversion, the Whites Ditch Siphon, the Naomi Siphon, the West Point A la Hache Siphon, and the Ostrica Lock in connection with the Response Activities. | SP |
| BP | RFP | 139 | All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in increasing or decreasing rates of Mississippi discharge between April 20, 2010 and September 15, 2010. | SP |
| BP | RFP | 140 | All documents referring or relating to studies, assessments, data, or analyses of the use of Mississippi River discharges in spill response activities. | SP |
| BP | RFP | 141 | All documents referring or relating to unpublished studies, assessments or analyses of the use of Mississippi River discharges in spill response activities in the Gulf of Mexico or the Gulf of Mexico basin. | SP |
| BP | RFP | 142 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of Mississippi River discharges in connection with the Response Activities. | SP |
| BP | RFP | 143 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of Mississippi River discharges in connection with the Response Activities. | SP |
| BP | RFP | 144 | All documents referring or relating to counterproductive or harmful effects of or attributed to Mississippi River discharges in connection with the Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality. | SP |
| BP | RFP | 145 | All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in developing directives on waste management in connection with the Response Activities. | SP |
| BP | RFP | 146 | All documents referring or relating to studies, assessments, data, or analyses of waste management in connection with the Response Activities. | SP |
| BP | RFP | 147 | All documents referring or relating to unpublished studies, assessments or analyses of waste management in connection with the Response Activities. | SP |
| BP | RFP | 148 | All documents referring or relating to any other method, technology, art or procedure for use as a countermeasure to reduce or mitigate the impact of the discharge attributed to the Incident, other than those methods, technologies, arts or procedure contained in or referred to in BP's Oil Spill Response Plan for the Gulf of Mexico approved in 2009. | SP |
| BP | RFP | 149 | All documents referring or relating to the use of berms in connection with the Response Activities. | SP |
| BP | RFP | 150 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of berms in connection with the Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 151 | All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of berms in connection with the Response Activities. | SP |
| BP | RFP | 152 | All documents referring or relating to the effectiveness of the use of berms in connection with the Response Activities. | SP |
| BP | RFP | 153 | All documents referring or relating to counterproductive or harmful effects of or attributed to the use of berms in the Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality. | SP |
| BP | RFP | 154 | All documents referring or relating to the planning, approval, execution, and demobilization of protocols for conducting sampling of air, water, sediments, released oil (including but not limited to oil and material discharged at the wellhead, oil mousse, tarballs, etc.) and waste in connection with the Incident and Response Activities. | SP |
| BP | RFP | 155 | All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed standards, guidelines, metrics, protocols, analysis or reports, that refer to air sampling, including but not limited to public health protection monitoring and sampling and occupational health protection sampling and monitoring in connection with the Incident and Response Activities. | SP |
| BP | RFP | 156 | All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed standards, guidelines, metrics, protocols, analysis or reports, that refer to water and sediment sampling conducted in connection with the Incident and Response Activities. | SP |
| BP | RFP | 157 | All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed objectives, standards, guidelines, metrics, protocols, analysis or reports, referring to the sampling of oil and other material discharged from the MC252 Well. | SP |
| BP | RFP | 158 | All documents referring or relating to objectives, standards, guidelines, metrics, or to proposed objectives, standards, guidelines or metrics, to assess, measure or determine possible harmful effects in seafood in connection with the Incident and Response Activities. | SP |
| BP | RFP | 159 | All documents referring or relating to objectives, standards, guidelines, metrics, protocols, or to proposed objectives, standards, guidelines, metrics or protocols, to assess the quality and control of sample data in connection with the Incident and Response Activities. | SP |
| BP | RFP | 160 | All documents referring or relating to objectives, standards, guidelines, metrics, or to proposed objectives, standards, guidelines or metrics, used in validation of data collected in connection with the Incident and Response Activities. | SP |
| BP | RFP | 161 | All documents referring or relating to any other method, technology, equipment, art, remedial process, or procedure for use as a countermeasure to correct, reduce, or mitigate errors, anomalies, or other breaches of sampling standards, guidelines, metrics, or protocols related to sampling processes, sampling data, or sampling reporting and analysis in connection with the Incident or Response Activities. | SP |
| BP | RFP | 162 | All documents that constitute, contain, Describe or refer to reports, studies, data, or any other analysis or assessment of sampling, sampling data, sample reporting, or sample analysis in connection with the Incident and Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 163 | All documents referring or relating to the selection of one or more platforms to establish a Common Operating Picture for the Response Activities, including but not limited to the Geographic Information System-based Environmental Response Management Application ("ERMA") system. | SP |
| BP | RFP | 164 | All documents referring or relating to assessments of the effectiveness or lack of effectiveness of the ERMA system or any other system used to obtain and disseminate information for the planning, operations and command functions of the Unified Command (other than systems used for the public information function of the Unified Command) in connection with the Response Activities. | SP |
| BP | RFP | 165 | All documents that contain, describe, refer to, or specify the roles of the National Incident Commander and the Incident Commanders who were officers of the U.S. Coast Guard or personnel of the Environmental Protection Agency or the Department of Interior in the planning, operations, or approval processes used in the Response Activities, or in the direction of the Response Activities, including but not limited to the differences in the roles of those officers in comparison to, or in relation to, the roles of BP, employees or officers of the Executive Branch of the federal government not included in the Unified Command organization, or employees or officers of any State or local government. | SP |
| BP | RFP | 166 | All documents referring or relating to BP's preparedness for response to the Incident. | SP |
| BP | RFP | 167 | All documents referring or relating to BP's implementation of its Gulf of Mexico Oil Spill Response Plan. | SP |
| BP | RFP | 168 | All documents referring or relating to the level of effort by BP in connection with the Response Activities or to the sufficiency of BP's support of the Response Activities or that evaluate or comment in any way on BP's participation in the Response Activities. | SP |
| BP | RFP | 169 | All documents in which officers or ranks of the U.S. Coast Guard comment upon, Describe or refer to the impacts of decisions, acts or omissions by leadership, staff or employees of other federal agencies on any operation undertaken in connection with the response to the Incident, including but not limited to such decisions on the effectiveness of such operations or on the effectiveness of the response to the Incident. | SP |
| BP | RFP | 170 | All documents in which any staff or employees of any federal agency or function other than the U.S. Coast Guard comment upon, describe or refer to the impacts of the decisions, acts or omissions of officers or ranks of the U.S. Coast Guard on any operation undertaken in connection with the response to the Incident, including but not limited to such decisions on the effectiveness of such operations or on the effectiveness of the Response Activities. | SP |
| BP | RFP | 171 | All documents referring or relating to the level of effort by state and local governments or their officers or employees in connection with the Response Activities, or to the sufficiency of the support of the Response Activities by, or that evaluate or comment in any way on participation in the Response Activities by, those governments, officers or employees. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 172 | All documents referring or relating to any actual or potential negative or counterproductive effects on any operation undertaken in connection with the response to the Incident, or on the effectiveness of the Response Activities, caused by or attributed to the conduct, acts or omissions of any Member of the U.S. Congress, any staff of the U.S. Congress, or any federal or state elected or appointed official or employee. | SP |
| BP | RFP | 173 | All documents mentioned or referenced in any pleading, motion or brief filed by the United States in this action. | SC |
| BP | RFP | 174 | All documents relating to the allegations in the United States' Complaint. | Event; SC |
| BP | RFP | 175 | All documents that you may use or seek to introduce into evidence at any trial or hearing in this action. | Event; SC |
| BP | RFP | 176 | All documents that relate to any expert testimony or opinions, or have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action. | Event; SC |
| BP | RFP | 177 | All documents which relate to the anticipated testimony of any person that you may call as a witness at any trial, hearing or deposition in this matter. | Event; SC |
| BP | RFP | 178 | All documents identified in the responses to the Interrogatories set forth below. | Event; SC |
| BP | RFP | 179 | All documents referring or relating to the Joint Investigation conducted by the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement into the causes of the Incident. | Event |
| BP | RFP | 180 | To the extent not required by other requests, all documents referring or relating to any investigation conducted by the United States Government regarding the cause or causes of the Incident. | Event |
| BP | RFP | 181 | All documents referring or relating to witness statements or interviews regarding the Incident, conducted by the United States Government in connection with any investigation into the causes of the Incident. | Event |
| BP | RFP | 182 | All communications, documents, and drafts related to the preparation and publication of the "Report of Investigation into the Circumstances Surrounding the Explosion, Fire, Sinking and Loss of Eleven Crew Members Aboard the mobile offshore drilling unit Deepwater Horizon In the Gulf of Mexico: April 20-22, 2010, Volume I" and Appendices by the United States Coast Guard. | Event |
| BP | RFP | 183 | All documents referring or relating to the United States Coast Guard "Report of Investigation into the Circumstances Surrounding the Explosion, Fire, Sinking and Loss of Eleven Crew Members Aboard the mobile offshore drilling unit Deepwater Horizon In the Gulf of Mexico: April 20-22, 2010, Volume I" and Appendices. | Event |
| BP | RFP | 184 | All documents referring or relating to the oversight of foreign-flagged mobile offshore drilling units (MODUs), including but not limited to MODUs flagged under the Republic of the Marshall Islands. | Event |
| BP | RFP | 185 | All documents referring or relating to any United States regulation, requirement, policy or guidance concerning safety, firefighting, or emergency preparedness drills aboard MODUs. | Event |
| BP | RFP | 186 | All documents referring or relating to any United States regulation, requirement, policy or guidance concerning the command structure aboard MODUs. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFP | 187 | All documents exchanged between and communications between the United States and any person working on behalf of the Republic of the Marshall Islands referring or relating to the Deepwater Horizon, the MC252 Well, and the Incident. | Event |
| BP | RFP | 188 | All documents exchanged between and communications between the United States and any person working on behalf of the International Maritime Organization referring or relating to the Deepwater Horizon Incident or the MC252 Well created on or after January 1, 2010. | SP |
| BP | RFP | 189 | All documents referring or relating to any United States regulation, requirement, policy or guidance concerning annual Certificate of Compliance (COC) examinations. | Event |
| BP | RFP | 190 | All documents referring or relating to annual Certificate of Compliance (COC) examinations of the Deepwater Horizon conducted by the United States Coast Guard. All documents referring or relating to any administrative decision-making which has taken place or which is taking place relating to the determination of the rate or volume of oil discharged from the Macondo Well. | Event |
| BP | RFP | 191 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to predictions, estimates, or measurements of the impacts of the discharge from the MC252 Well or Response Activities on biota, including but not limited to marine plant life, other plant life, fish, plankton, benthic life forms, marine mammals, birds, bacteria, microorganisms, or intertidal fauna, or referring or relating to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 192 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to predictions, estimates, or measurements of the impacts of the discharge from the MC252 Well or Response Activities on physical environments on the land, in water, or in special environments such as wetlands, salt or brackish marshes, or that contain, Describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 193 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to predictions, estimates, or measurements of the impacts of the discharge from the MC252 Well or Response Activities on features of the environment considered human amenities (including but not limited to beaches, water frontages, fish traps or ponds, parks or reserves) or on man-made assets (including but not limited to bridges, causeways, boats, boat launches, docks, ports or weirs), or that contain, Describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | RFP | 194 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to predictions, estimates or measurements of the impacts of the discharge from the MC252 Well or Response Activities on ambient air quality or water quality in any body of water, or that contain, Describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 195 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to predictions, estimates, or measurements of the impacts of decisions, conduct, acts or omissions of any federal agency or officer of the Unified States on efforts to avoid or mitigate the impacts of the discharge from the MC252 Well on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality, or that contain, Describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 196 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to estimates of the number of animals found dead, alive or oiled to any extent during the Response Activities, including, but not limited to, Unusual Mortality Event ("UME") data. | SP |
| BP | RFP | 197 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to estimates of the number of animals rescued, transported or rehabilitated during the Response Activities, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 198 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to plans or efforts to rescue, transport or rehabilitate wildlife in connection with the Response Activities. | SP |
| BP | RFP | 199 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of efforts to rescue, transport or rehabilitate wildlife in connection with the Response Activities, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 200 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of efforts to rescue, transport or rehabilitate wildlife in connection with the Response Activities, including, but not limited to, data collected as part of Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFP | 201 | All documents, other than documents created in connection with the Deepwater Horizon Natural Resource Damages Assessment conducted pursuant to the Oil Pollution Act, referring or relating to the effectiveness or lack of effectiveness of efforts to rescue, transport or rehabilitate wildlife in connection with the Response Activities, including, but not limited to, data collected as part of Response Activities. | SP |
| BP | RFP | 202 | All documents that constitute, contain, Describe or refer to any guideline, policy or practice of the United States Government for use in determining the amount of civil penalties assessed under Section 311 of the Clean Water Act in connection with an oil spill. | SP |
| BP | RFP | 203 | All documents that constitute, contain, Describe or refer to any guideline, policy or practice for use in determining when and how the United States Government may invoke the Executive Privilege or the Deliberative Process Privilege in civil litigation. | SP |
| BP | RFP | 204 | All documents identified in responses to the Interrogatories set forth below. | SC; Event; SP |
| BP | RFP | 205 | To the extent not required by other requests, all documents including but not limited to written, audio or visual recordings that comprise, transcribe, refer or relate to interviews of, or statements given by, persons with knowledge of the Incident or the cause or causes of the Incident, including but not limited to any such interviews or statements given or taken on board the M/V Damon B. Bankston. | Event |
| BP | RFP | 206 | All documents relating or referring to your role in the efforts to cap, seal, contain or collect hydrocarbons from the MC252 Well following April 20, 2010, including, but not limited to any communications regarding such efforts. | Event |
| BP | RFP | 207 | All documents referring or relating to procedures, guidelines, policies, recommended practices or regulations related to formation integrity or leak off tests. | Event |
| BP | RFP | 208 | All documents referring or relating to any Incidents of Noncompliance for any rig in the Gulf of Mexico related to or referring to formation integrity or leak off tests. | Event |
| BP | RFP | 209 | All documents referring or relating to investigations, studies, analyses or audits concerning formation integrity and leak off tests conducted in the Gulf of Mexico, including any investigations, studies, analyses or audits relating to the impacts, severity, or implications of formation integrity or leak off tests regardless of whether you ultimately issued an Incident of Noncompliance. | Event |
| BP | RFP | 210 | All documents referring or relating to investigations into Incidents of Noncompliance in the Gulf of Mexico, regardless of whether you ultimately issued an Incident of Noncompliance. | Event |
| BP | RFP | 211 | All documents referring or relating to statistical analyses, studies, or other analyses relating to or comparing the rate of Incidents of Noncompliance in the Gulf of Mexico, including but not limited to the frequency or severity of Incidents of Noncompliance among different companies operating in the Gulf of Mexico. | Event |
| BP | RFP | 212 | All documents identified in responses to the Interrogatories set forth below. | Event |
| MOEX | RFP | 1 | Please produce a copy of all documents and communications, including without limitation emails, between the United States and MOEX Offshore referencing or relating to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| MOEX | RFP | 2 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to MOEX Offshore, and the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event |
| MOEX | RFP | 3 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 2 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that MOEX Offshore is an "owner" of such facility and the "times material" referenced in Paragraph 73 of the Complaint.]. | Event |
| MOEX | RFP | 4 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 3 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that MOEX Offshore is an "operator" of such facility and the "times material" referenced in Paragraph 73 of the Complaint.]. | Event |
| MOEX | RFP | 5 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 4 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that MOEX Offshore is a "person in charge" of such facility and the "times material" referenced in Paragraph 73 of the Complaint.]. | Event |
| MOEX | RFP | 6 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 5 [Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to MOEX Offshore and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor.]. | Event |
| MOEX | RFP | 7 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 6 [State each and every federal regulation you contend MOEX Offshore violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention.]. | Event |
| MOEX | RFP | 8 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 7 [State each and every federal regulation you contend BP violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention.]. | Event |
| MOEX | RFP | 9 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 8 [State each and every federal regulation you contend Transocean violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention.]. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| MOEX | RFP | 10 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 9 [Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and BP regarding the Macondo Prospect, the Macondo Well, or the Deepwater Horizon.]. | Event |
| MOEX | RFP | 11 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 10 [Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and Transocean regarding the Macondo Prospect, the Macondo Well, or the Deepwater Horizon.]. | Event |
| MOEX | RFP | 12 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 11 [Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and Cameron regarding the design, function, capabilities, or maintenance of the Deepwater Horizon's blowout preventer]. | Event |
| MOEX | RFP | 13 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 12 [Identify all persons with whom you had communications referencing or relating to any analyses, reviews, or investigations you conducted regarding the causes of the explosions and fires that occurred on board the Deepwater Horizon on April 20, 2010, and Describe each communication.]. | Event |
| MOEX | RFP | 14 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 13 [State whether you believe that MOEX Offshore had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority.]. | Event |
| MOEX | RFP | 15 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 14 [Identify and describe each instance MOEX Offshore exercised any authority to control identified in response to Interrogatory No. 13]. | Event |
| MOEX | RFP | 16 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 15 [Identify and describe all actions, activities, or operations you believe MOEX Offshore performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement."]. | Event |
| MOEX | RFP | 17 | Please produce a copy of all documents and communications referencing or relating to your response to Interrogatory No. 16 [asking about all loss of well control incidents in the last fifteen years], including without limitation e-mails, any orders, consent agreements, interview notes, investigative files, company policies and procedures analyzed, technical calculations, and underlying data. | Event |
| MOEX | RFP | 18 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 17 [Identify and describe any analysis, review or evaluation of the use of blind shear rams in response to any incident identified in 16 or relating to oil and gas operations in the Gulf of Mexico.]. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| MOEX | RFP | 19 | Please produce a copy of all documents and communications referencing or relating to your response to 18, including without limitation any communications with the American Petroleum Institute, BP, Transocean, or others regarding the technical and economic feasibility of any proposed change in standard, policy, procedure, regulation or other guidance. | SP |
| MOEX | RFP | 20 | Please produce all documents relating to any efforts the fight any fires or to lower the temperature of the Deepwater Horizon after the explosions that occurred on April 20, 2010, including any communications with BP or Transocean. | Event |
| MOEX | RFP | 21 | Please produce all documents relating to efforts by any person to activate the Deepwater Horizon's BOP on or after April 20, 2010, including any communications with BP, Transocean or Cameron. | SC |
| MOEX | RFP | 22 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to any investigations, analyses, reviews, or inspections conducted as part of the natural resource damages assessment by or on behalf of any of the trustees designated with respect to the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| MOEX | RFP | 23 | Please produce a complete, unredacted native copy of any database of the analyses and testing of samples taken as part of the investigation and/or assessment of natural resource damages with respect to the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| MOEX | RFP | 24 | Please produce any and all studies (final or draft), notes, diagrams, pictures, spreadsheets or other documents relating to releases of oil in the Gulf of Mexico over the last ten years. | SP |
| MOEX | RFP | 25 | Please produce any and all studies (final or draft), notes, diagrams, pictures, spreadsheets or other documents relating to natural seeps of oil or other hydrocarbons in the Gulf of Mexico over the last ten years. | SP |
| MOEX | RFP | 26 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to any investigations, analyses, reviews, or inspections Identifying the source or sources of oil present in the Gulf of Mexico or adjoining shorelines conducted in the ten years prior to April 20, 2010, including, but not limited to, any oil fingerprint efforts. | SP |
| MOEX | RFP | 27 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to any investigations, analyses, reviews, or inspections Identifying the source or sources of oil present in the Gulf of Mexico or adjoining shorelines conducted after April 20, 2010, including, but not limited to, any oil fingerprint efforts. | SP |
| MOEX | RFP | 28 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to any investigations, analyses, reviews, or inspections you conducted of the Deepwater Horizon or any of her equipment, machinery, or technology, including the blowout preventer and marine riser. | Event |
| MOEX | RFP | 29 | Please produce a copy of all documents or communications, including, without limitation emails, relating to activities or operations on the Deepwater Horizon in connection with the Macondo Prospect and/or Macondo Well on or prior to April 20, 2010. | Event |
| MOEX | RFP | 30 | Please produce a copy of all documents including, without limitation emails, relating to youR oversight or approval of any activity or operation in connection with the Macondo Prospect and/or Macondo Well on or prior to April 20, 2010. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| MOEX | RFP | 31 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to any payments made to the United States to date for costs and damages incurred as a result of the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| MOEX | RFP | 32 | Please produce a copy of all guidance, policies, practices, procedures or evaluations for use in Identifying or evaluating compliance with the obligations of leaseholders and/or designated Operators with respect to oil and gas activities conducted on the Outer Continental Shelf pursuant to a lease issued by the United States, including any enforcement policies. | Event |
| MOEX | RFP | 33 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to each instance you cited and/or investigated BP for federal safety violations at any facility it owned or operated (either onshore or offshore) since January 1, 2005. | Event |
| MOEX | RFP | 34 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to all whistleblower claims, Complaints, and/or reports you received since January 1, 2005 regarding worker or public safety concerns with respect to any facility BP owned or operated. | Event |
| MOEX | RFP | 35 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to each instance you cited and/or investigated BP for violations of any federal laws or regulations in conjunction with BP's operations to explore for (either onshore or offshore), produce, transport, and/or refine hydrocarbons since January 1, 2005. | Event |
| MOEX | RFP | 36 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to all whistleblower claims, Complaints, and/or reports you received since January 1, 2005 regarding BP's operations to explore for (either onshore or offshore), produce, transport, and/or refine hydrocarbons. | Event |
| MOEX | RFP | 37 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to investigation, evaluation and consideration by the United States of discretionary debarment procedures against BP. | Event |
| MOEX | RFP | 38 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to each instance you cited and/or investigated Transocean for violations of any federal laws or regulations in conjunction with Transocean's offshore drilling operations since January 1, 2005. | Event |
| MOEX | RFP | 39 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to all whistleblower claims, Complaints, and/or reports you received regarding Transocean's offshore drilling operations since January 1, 2005. | Event |
| MOEX | RFP | 40 | Please produce a copy of all documents regarding time history of releases of oil, hydrocarbons, gases or other materials as a relating to the Deepwater Horizon Spill (as defined in the Complaint (including quantities, dispersants, uncertainties, liquids and gases), physical and chemical characteristics of discharge (specific gravity, liquids and gasses, proportion of liquids that are volatile), and reports addressing changes in the release (evaporation, changes in specific gravity as function of time and temperature). | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| MOEX | RFP | 41 | Please produce a copy of all documents measuring the volume of oil in the Gulf of Mexico at the surface, water column, and/or sea floor, including 3-D distribution of currents, tides, meteorology (wind, air and water temperature) and waves. | SP |
| MOEX | RFP | 42 | Please produce a copy of all documents regarding any numerical model used to address fate of the oil released as a result of the Deepwater Horizon Spill (as defined in the Complaint) and inputs to model. | SP |
| MOEX | RFP | 43 | All documents requested by, or produced in response to, requests for production and interrogatories served on the United States by any other party in MDL No. 2179. | N/A |
| AEP | RFP | 1 | Please produce a copy of all documents and communications, including without limitation emails, between the United States and AE&P referencing or relating to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event; SC |
| AEP | RFP | 2 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to AE&P, and the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event; SC |
| AEP | RFP | 3 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 2 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is an "owner" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| AEP | RFP | 4 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 3 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is an "operator" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| AEP | RFP | 5 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 4 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is a "person in charge" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| AEP | RFP | 6 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 5 [Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to AE&P and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor.]. | Event |
| AEP | RFP | 7 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 6 [State each and every federal regulation you contend AE&P violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention.]. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| AEP | RFP | 8 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 7 [State whether you believe that AE&P had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority.]. | Event |
| AEP | RFP | 9 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 8 [Identify and describe each instance AE&P exercised any authority to control identified in response to Interrogatory No. 7.]. | Event |
| AEP | RFP | 10 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 9 [Identify and describe all actions, activities, or operations you believe AE&P performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement."]. | Event |
| AEP | RFP | 11 | All documents requested by, or produced in response to, requests for production and interrogatories served on the United States by any other party in MDL No. 2179. | N/A |
| APC | RFP | 1 | Please produce a copy of all documents and communications, including without limitation emails, between the United States and Anadarko referencing or relating to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event; SC |
| APC | RFP | 2 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to Anadarko, and the Macondo Prospect, the Macondo Well, the Deepwater Horizon, and/or the Deepwater Horizon Spill (as defined in the Complaint). | Event; SC |
| APC | RFP | 3 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 2 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is an "owner" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| APC | RFP | 4 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 3 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is an "operator" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| APC | RFP | 5 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 4 [For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is a "person in charge" of such facility and the "times material" referenced in Paragraph 72 of the Complaint.]. | Event |
| APC | RFP | 6 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 5 [Identify and describe the "Deepwater Horizon" you contend to be a "vessel" under Paragraphs 71 and 74 of the Complaint, including any and all appurtenances and equipment, and Identify "all times material" to the contention.]. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| APC | RFP | 7 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 6 [Identify and describe the "Deepwater Horizon" you contend to be an "offshore facility" under Paragraphs 71 and 74 of the Complaint, including any and all appurtenances and equipment, and Identify "all times material" to the contention.]. | Event |
| APC | RFP | 8 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 7 [Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to Anadarko and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor.]. | Event |
| APC | RFP | 9 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 8 [State each and every federal regulation you contend Anadarko violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention.}. | Event |
| APC | RFP | 10 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 9 [State whether you believe that Anadarko had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority.]. | Event |
| APC | RFP | 11 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 10 [Identify and describe each instance Anadarko exercised any authority to control identified in response to Interrogatory No. 9]. | Event |
| APC | RFP | 12 | Please produce a copy of all documents and communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 11 [Identify and describe all actions, activities, or operations you believe Anadarko performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement."]. | Event |
| APC | RFP | 13 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 12 [Identify all estimates of the volume of oil discharged from each facility and vessel identified in response to Interrogatory Nos. 1 and 5.]. | SC |
| APC | RFP | 14 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 13 [Identify each type of hydrocarbon (other than oil), gas or other material believed to have been discharged from each facility and vessel identified in response to Interrogatory Nos. 1 and 5, and Identify all estimates of the volume of each such material discharged.]. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| APC | RFP | 15 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 14 [Describe the process by which the United States considers, reviews or approves SC efforts, and Identify any criteria, policies, guidance, or procedures for such consideration, review or approval.]. | SC |
| APC | RFP | 16 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 15 [Describe the process by which the United States considers, reviews or approves containment efforts, and Identify any criteria, policies, guidance, or procedures for such consideration, review or approval.]. | SP |
| APC | RFP | 17 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 16 [Identify and describe how you first became aware of the explosions and fires that first occurred on board the Deepwater Horizon on April 20, 2010.]. | Event |
| APC | RFP | 18 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 17 [Identify and describe any actions you conducted, oversaw or authorized after first becoming aware of and in response to the explosions and fires that occurred on board the Deepwater Horizon on April 20, 2010 through April 22, 2010, and for each such action provide the following information: (a) the identity of the person(s) who undertook or authorized the actions; (b) the identity of each person(s) responsible for overseeing the action; (c) the nature of the action; (d) for those actions you oversaw or authorized, the information provided to you by the person undertaking the action; (e) any communications between you and BP or Transocean regarding the action; (f) any criteria, guidance, policy or regulation used in determining whether to conduct or authorize the action; and (g) any analysis of the effectiveness of the action before and/or after it was implemented.]. | Event |
| APC | RFP | 19 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 18 [Identify any SC efforts considered by or proposals for SC efforts submitted to the United States, including but not limited to the on-scene coordinator, and, for each SC effort: (a) Identify the person or employee who identified or proposed the SC effort; (b) Identify the employee to which any proposal was submitted; (c) Identify any employee who reviewed, evaluated or analyzed the SC effort; (d) State whether the SC effort was approved in whole or in part, approved with conditions or modifications, or rejected, and the reasons therefore; (e) Describe any evaluation, assessment, analysis or calculation regarding the volume of any oil, hydrocarbons, gases or other materials recovered as a result of the SC effort and the results therefrom; and (f) Describe any analysis of the effectiveness of the SC effort before and/or after it was implemented.]. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| APC | RFP | 20 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 19 [Identify and describe any actions, including containment efforts, you conducted in response to the oil, hydrocarbons, gases or other materials released or discharged as a result of the Deepwater Horizon Spill (as defined in the Complaint) after April 22, 2010.]. | SP |
| APC | RFP | 21 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 20 [Identify any containment efforts considered by or proposals for containment efforts submitted to the United States, including but not limited to the on-scene coordinator and for each containment effort: (a) Identify any person who identified or proposed the containment effort; (b) Identify the employee to which any proposal was submitted; (c) Identify any employee who reviewed, evaluated or analyzed the containment effort; (d) State whether the containment effort was approved in whole or in part, approved with conditions or modifications, or rejected, and the reasons therefore; (e) Describe any evaluation, assessment, analysis or calculation regarding the volume of any oil, hydrocarbons, gases or other materials recovered as a result of the containment effort and the results therefrom; and (f) Describe any analysis of the effectiveness of the containment effort before and/or after it was implemented.]. | SP |
| APC | RFP | 22 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to your response to Interrogatory No. 21 [Identify and describe any fate and transport efforts related to the Deepwater Horizon Spill (as defined in the Complaint) undertaken by you or any other person, and for each fate and transport effort: (a) Identify the person that performed the fate and transport effort; (b) Identify each person responsible for managing the fate and transport effort; (c) Describe the nature of the fate and transport effort; (d) Describe the results of the fate and transport effort; and (e) Describe all oil fingerprint efforts relating to any oil analyzed.]. | SP |
| APC | RFP | 23 | Please produce a copy of all documents, including underlying data, referencing or relating to any estimates or analyses of flow rates or volume of oil and other hydrocarbons released as a result of the Deepwater Horizon Spill (as defined in the Complaint). | SC |
| APC | RFP | 24 | Please produce a copy of all documents and communications, including, without limitation emails, referencing or relating to any analyses, reviews, or investigations you conducted or requested regarding the scope, migration, or disposition of oil released as a result of the Deepwater Horizon Spill (as defined in the Complaint), including any fate and transport efforts and oil fingerprint efforts. | SP |
| APC | RFP | 25 | Please produce a copy of all documents, including underlying data, and communications, including, without limitation emails, referencing or relating to any estimates, analyses, reviews, or investigations you conducted or requested regarding the amount of hydrocarbons (other than oil), gases or other materials released as a result of the Deepwater Horizon Spill (as defined in the Complaint), including any fate and transport efforts. | SC; SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| APC | RFP | 26 | Please produce all studies, tests, analyses, evaluations, investigations, summaries, reports, diagrams, pictures, notes, spreadsheets or other documents you received or reviewed from other parties regarding the migration and impact of oil, hydrocarbons, gases or other materials released as a result of the Deepwater Horizon Spill (as defined in the Complaint), including fate and transport efforts and oil fingerprint efforts. | SP |
| APC | RFP | 27 | Please produce all communications relating to the documents identified in Request for Production No. 26. | SP |
| APC | RFP | 28 | Please produce a copy of all documents including without limitation emails, statements, reports, notes, or memoranda of interviews of any person, whether or not a party, relating to any efforts considered, undertaken, coordinated, or directed by the United States to respond to and remediate the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| APC | RFP | 29 | Please produce all documents relating to any guidelines, policies, procedures, manuals, studies, or formulas considered or used by you to respond to, analyze or otherwise measure the environmental or economic impact of an oil spill. | SP |
| APC | RFP | 30 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to all analyses and estimates of removal costs expended and/or sustained and/or which will be expended and/or sustained by the United States as a result of the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| APC | RFP | 31 | Please produce a copy of all documents or communications, including without limitation emails, referencing or relating to all analyses and estimates of damages and injuries sustained by the United States as a result of the Deepwater Horizon Spill (as defined in the Complaint), including as a result of efforts to remediate the Deepwater Horizon Spill (as defined in the Complaint). | SP |
| APC | RFP | 32 | Please produce a copy of any policies or guidance regarding the Bureau of Ocean Energy Management, Regulation and Enforcement and/or Minerals Management Service review of incident reports related to operations on the Outer Continental Shelf, including without limitation the criteria used to determine whether to conduct investigations or take enforcement actions. | Event |
| APC | RFP | 33 | Please produce a copy of records of all blowouts that resulted in a loss of well control during oil and gas drilling operations on the Outer Continental Shelf maintained by the United States. | Event |
| APC | RFP | 34 | Please produce a copy of any report compiling events that occurred on the Outer Continental Shelf reported to the Bureau of Ocean Energy, Management, Regulation and Enforcement (formerly known as Minerals Management Service) from calendar year 2001 to present. | Event |
| APC | RFP | 35 | Please produce a copy of any analyses, reports, studies, and evaluations of incidents occurring on the Outer Continental Shelf reported to the United States Coast Guard relating to oil and gas activities, including any report compiling events that occurred in any calendar year or other specified time frame. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| APC | RFP | 36 | Please produce a copy of any analyses, reports, studies, and evaluations of incidents reported to the United States relating to oil and gas activities in the Gulf of Mexico, including without limitation those analysis, reports, studies and evaluations related to the cause of the incidents, the amount of resulting spills, company policies, procedures and plans, recommendations to address safety concerns or future operations, enforcement actions, mechanical failures versus human error, safety management practices, and adequacy of responses to the event. | Event |
| APC | RFP | 37 | Please produce a copy of any requests for information issued to any operator in the Gulf of Mexico in response to or relating to any loss of well control incident, well control operations, use of blind shear rams, or cementing practices. | Event |
| APC | RFP | 38 | To the extent not already publicly available, please produce all documents and communications obtained or prepared by the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling relating to loss of well control events that have occurred on the Outer Continental Shelf within the jurisdiction of the United States. | Event |
| APC | RFP | 39 | Please produce all documents and communications between the Bureau of Ocean Energy, Management, Regulation and Enforcement (formerly known as Minerals Management Service) and the American Petroleum Institute relating to best practices for safety management, cementing, and well control operations for oil and gas activities on the Outer Continental Shelf within the jurisdiction of the United States. | Event |
| APC | RFP | 40 | All documents requested by, or produced in response to, requests for production and interrogatories served on the United States by any other party in MDL No. 2179. | N/A |
| BP | ROG | 1 | Please Identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any review, evaluation, approval or disapproval of any submission by BP related to the MC252 Well and state that person's involvement with the MC252 Well. | Event |
| BP | ROG | 2 | Please Identify every United States officer, employee or other person associated with the United States, including consultants and agents, who participated in any review, inspection, evaluation, approval or disapproval of any submission related to or referring to Transocean's Deepwater Horizon rig and state that person's involvement with Transocean's Deepwater Horizon rig. | Event |
| BP | ROG | 3 | State whether the Application for Permit to Drill for the MC252 Well and subsequent amendments approved by the United States in 2009 and 2010 complied with federal law and regulation. If the answer is in the negative, (a) Identify each respect in which the Application for Permit to Drill for the MC252 Well and subsequent amendments approved by the United States in 2009 and 2010 did not comply with federal law or regulation, and (b) Identify each document upon which the response is based. | Event |
| BP | ROG | 4 | Identify with particularity any alleged variations or deviations in the casing strings installed in the MC252 Well as compared to the casing string designs approved by the United States in 2009 and 2010. | Event |
| BP | ROG | 5 | Identify and describe in detail (including name and location of the well, leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that utilized a long string production casing design that the United States Government approved. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | ROG | 6 | Identify and describe in detail (including name and location of the well, leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that utilized a liner or liner with a tie back production casing design that the United States Government approved. | Event |
| BP | ROG | 7 | Identify and describe in detail (including name and location of the well, leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that involved a temporary abandonment procedure and provide all steps in such temporary abandonment procedure approved by the United States Government. | Event |
| BP | ROG | 8 | Please Identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any way in any effort to predict, estimate or measure the amount of discharge from the wellhead of the MC252 Well, or in any effort to predict, estimate, characterize or measure the physical or chemical properties of any substance contained in the discharge from the MC252 Well. | SC |
| BP | ROG | 9 | Please Identify each person who was not a full-time employee of the United States when contacted and was contacted to assist, advise or represent the United States or the Unified Command in connection with efforts to contain the flow from the wellhead of the MC252 Well, to participate in any way in the response to the Incident, or to provide scientific or other advice related to the Incident or the response to the Incident. | SC |
| BP | ROG | 10 | For each person identified in the response to Interrogatory No. 9, state the intended role or function of that person in the participation in the response to the Incident or in providing scientific or other advice. | SC |
| BP | ROG | 11 | Please Identify each person who assisted, advised or represented the United States or the Unified Command in connection with efforts to contain the flow from the wellhead of the MC252 Well, participated in any way in the response to the Incident, or provided scientific or other advice related to the Incident or the response to the Incident, who was not an officer or enlisted person in the U.S. Coast Guard. | SC |
| BP | ROG | 12 | For each person identified in the response to Interrogatory No. 11, state the role or function of that person in the participation in the response or in providing scientific or other advice. | SC |
| BP | ROG | 13 | Please Identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any way in decisions or plans to approve, disapprove, limit, control or review the use of chemical dispersants in connection with the Response Activities. | SC |
| BP | ROG | 14 | Please Identify each person who assisted, advised or represented the United States or the Unified Command in connection with the decision whether or not to proceed with the blowout preventer on blowout preventer option following the top kill attempt. | SC |
| BP | ROG | 15 | Please Identify each person who participated in discussions or provided advice to the United States regarding the decision whether or not to allow BP to install and, subsequently, shut the Capping Stack. | SC |
| BP | ROG | 16 | State whether the BP Gulf of Mexico Oil Spill Response Plan approved by the United States in 2009 complied with federal law and regulation. If the answer is in the negative, (a) State each respect in which the BP Gulf of Mexico Oil Spill Response Plan approved by the United States in 2009 did not comply with federal law or regulation, and (b) Identify each document upon which your negative answer is based. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | ROG | 17 | State separately (as to the waters of the Gulf of Mexico and the shoreline of the Gulf of Mexico) the amount of the "spill" that "remains in the waters of the Gulf of Mexico and upon the adjoining shorelines of the United States," as alleged in the Complaint, and Identify each document upon which your answer is based or that supports your answer. | SP |
| BP | ROG | 18 | Describe fully the role and authority of U.S. Secretary of Energy Steven Chu, his Science Advisors, and members of the National Laboratories within the Unified Command during the effort to cap, seal, estimate the volume of, or collect hydrocarbons from the MC252 Well. | SC |
| BP | ROG | 19 | Identify each person you intend to call or may call as a witness in this matter and, for each person identified, state the subject of their expected testimony. | Event; SC |
| BP | ROG | 20 | Identify each person you have retained as an expert or consultant in this matter and, for each person identified, state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion. 21. Identify each person who has or may have knowledge or information relating to the allegations in the United States' Complaint. For each person identified, state the subject area of knowledge. | Event; SC |
| BP | ROG | 22 | Please Identify every United States officer, employee or other person associated with the United States, including consultants and agents, who participated in any way in any firefighting efforts in response to the Incident on Transocean's Deepwater Horizon rig. | Event |
| BP | ROG | 23 | Please Identify each person who assisted, advised or represented the United States or the Unified Command in connection with any firefighting efforts in response to the Incident on Transocean's Deepwater Horizon rig, who was not an officer or enlisted person in the United States Coast Guard. | Event |
| BP | ROG | 24 | State the number of barrels and gallons of oil and every other material (Identifying each such material) discharged from the MC252 Well into the Gulf of Mexico as a result of the Incident, and your method(s) for calculating or otherwise determining that number, and Identify each document on which your answer is based or that supports your answer. | SC |
| BP | ROG | 25 | Identify any administrative decision-making which has taken place or which you expect to take place relating to the determination of the rate or volume of oil discharged from the MC252 Well, and for each such decision making state the decision that was reached. | SC |
| BP | ROG | 26 | Explain fully how the estimated flow rate values and flow volumes for the discharge from the MC252 Well and the uncertainty to be assigned to those values and volumes, contained in the report dated March 10, 2011 and entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," were prepared. Identify all documents that refer or relate to that report, including but not limited to all appendices and peer review documents and documents that disagree with the contents of the report or its method of preparation, and Identify all persons who participated in the preparation, review or approval of that report or its contents. | SC |
| BP | ROG | 27 | State whether that report identified in Interrogatory No. 24 presents the opinion of the United States Government about the estimated flow rate values and flow volumes for the discharge from the MC252 Well and the uncertainty to be assigned to those values and volumes. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | ROG | 28 | Identify each person whom you may call as an expert witness in this matter, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor), and, for each person identified, state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion. | SC |
| BP | ROG | 29 | Please Identify each person who conducted, participated in, recorded or transcribed interviews of, or statements given by, persons with knowledge of the Incident or the cause or causes of the Incident, including but not limited to any such interviews or statements given or taken aboard the M/V Damon B. Bankston. | Event |
| BP | ROG | 30 | Please Identify each person employed by you who assisted, advised or represented you in connection with efforts to cap, seal, contain or collect hydrocarbons from the MC252 Well following April 20, 2010, and state the role or function of that person in your response. | Event |
| MOEX | ROG | 1 | Identify and describe each facility (and any component thereof) you contend to be an "offshore facility" under Paragraphs 71, 73 and 74 of the Complaint. | Event |
| MOEX | ROG | 2 | For each facility identified and Described in response to 1, Identify and describe the basis for asserting that MOEX Offshore is an "owner" of such facility and the "times material" referenced in Paragraph 73 of the Complaint. | Event |
| MOEX | ROG | 3 | For each facility identified and Described in response to 1, Identify and describe the basis for asserting that MOEX Offshore is an "operator" of such facility and the "times material" referenced in Paragraph 73 of the Complaint. | Event |
| MOEX | ROG | 4 | For each facility identified and Described in response to 1, Identify and describe the basis for asserting that MOEX Offshore is a "person in charge" of such facility and the "times material" referenced in Paragraph 73 of the Complaint. | Event |
| MOEX | ROG | 5 | Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to MOEX Offshore and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor. | Event |
| MOEX | ROG | 6 | State each and every federal regulation you contend MOEX Offshore violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention. | Event |
| MOEX | ROG | 7 | State each and every federal regulation you contend BP violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention. | Event |
| MOEX | ROG | 8 | State each and every federal regulation you contend Transocean violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| MOEX | ROG | 9 | Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and BP regarding the Macondo Prospect, the Macondo Well, or the Deepwater Horizon. | Event |
| MOEX | ROG | 10 | Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and Transocean regarding the Macondo Prospect, the Macondo Well, or the Deepwater Horizon. | Event |
| MOEX | ROG | 11 | Identify all communications that occurred prior to the Deepwater Horizon Spill (as defined in the Complaint) between you and Cameron regarding the design, function, capabilities, or maintenance of the Deepwater Horizon's blowout preventer. | Event |
| MOEX | ROG | 12 | Identify all persons with whom you had communications referencing or relating to any analyses, reviews, or investigations you conducted regarding the causes of the explosions and fires that occurred on board the Deepwater Horizon on April 20, 2010, and Describe each communication. | Event |
| MOEX | ROG | 13 | State whether you believe that MOEX Offshore had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority. | Event |
| MOEX | ROG | 14 | Identify and describe each instance MOEX Offshore exercised any authority to control identified in response to 13. | Event |
| MOEX | ROG | 15 | Identify and describe all actions, activities, or operations you believe MOEX Offshore performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement." | Event |
| MOEX | ROG | 16 | Identify and describe each loss of well control that has been reported in the Gulf of Mexico over the past fifteen years and for each incident: (a) Identify the lease area, the offshore facility or vessel (as applicable), and the circumstances surrounding the loss of well control; (b) Identify the lessee and owner or operator of the facility or vessel; (c) Identify and describe the exploration or development plans, including the water depth and type of drilling rig used; (d) Identify and describe any response plans or policies applicable to the facility or vessel; (e) Identify and describe any discharges of oil or other materials as a result of the loss of well control; (f) Identify and describe the duration of the loss of well control event; (g) Identify and describe what actions were taken to address the loss of well control; (h) Identify any investigation of the incident was conducted, when and by who; (i) Identify and describe the results of any investigation, including any analysis of the cause of the loss of well control; (j) Identify and describe any recommendations made by the United States as a result and whether such recommendations were | Event |
| MOEX | ROG | 17 | Identify and describe any analysis, review or evaluation of the use of blind shear rams in response to any incident identified in 16 or relating to oil and gas operations in the Gulf of Mexico. | Event |
| MOEX | ROG | 18 | Identify and describe any changes in standards, policies, procedures, regulations or other guidance provided for oil and gas operations on the Outer Continental Shelf that resulted from evaluation and review of incidents reported to the United States with respect to such oil and gas operations, including without limitation any revised standards for safety management practices, cementing practices and well control operations. | Event |
| MOEX | ROG | 19 | Identify all persons involved with or assisting in the preparation of the United States' answers to these interrogatories. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| AEP | ROG | 1 | Identify and describe each facility (and any component thereof) you contend to be an "offshore facility" under Paragraph 71, 72 and 74 of the Complaint. | Event |
| AEP | ROG | 2 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is an "owner" of such facility and the "times material" referenced in Paragraph 72 of the Complaint. | Event |
| AEP | ROG | 3 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is an "operator" of such facility and the "times material" referenced in Paragraph 72 of the Complaint. | Event |
| AEP | ROG | 4 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that AE&P is a "person in charge" of such facility and the "times material" referenced in Paragraph 72 of the Complaint. | Event |
| AEP | ROG | 5 | Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to AE&P and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor. | Event |
| AEP | ROG | 6 | State each and every federal regulation you contend AE&P violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention. | Event |
| AEP | ROG | 7 | State whether you believe that AE&P had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority. | Event |
| AEP | ROG | 8 | Identify and describe each instance AE&P exercised any authority to control identified in response to Interrogatory No. 7. | Event |
| AEP | ROG | 9 | Identify and describe all actions, activities, or operations you believe AE&P performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement." | Event |
| AEP | ROG | 10 | Identify all persons involved with or assisting in the preparation of the United States' answers to these interrogatories. | Event |
| APC | ROG | 1 | Identify and describe each facility (and any component thereof) you contend to be an "offshore facility" under Paragraphs 71, 72 and 74 of the Complaint. | Event |
| APC | ROG | 2 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is an "owner" of such facility and the "times material" referenced in Paragraph 72 of the Complaint. | Event |
| APC | ROG | 3 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is an "operator" of such facility and the "times material" referenced in Paragraph 72 of the Complaint. | Event |
| APC | ROG | 4 | For each facility identified and Described in response to Interrogatory No. 1, Identify and describe the basis for asserting that Anadarko is a "person in charge" and the "times material" referenced in Paragraph 72 of the Complaint. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| APC | ROG | 5 | Identify and describe the "Deepwater Horizon" you contend to be a "vessel" under Paragraphs 71 and 74 of the Complaint, including any and all appurtenances and equipment, and Identify "all times material" to the contention. | Event |
| APC | ROG | 6 | Identify and describe the "Deepwater Horizon" you contend to be an "offshore facility" under Paragraphs 71 and 74 of the Complaint, including any and all appurtenances and equipment, and Identify "all times material" to the contention. | Event |
| APC | ROG | 7 | Identify and describe the "acts, joint acts, omissions, faults, negligence, gross negligence, willful misconduct, and/or breach of federal safety and/or operating and/or construction regulations" regarding the Deepwater Horizon Spill (as defined in the Complaint) that you attribute to Anadarko and/or its "respective agents, servants, employees, crew, contractors and/or subcontractors" and Identify each such agent, servant, employee, crew, contractor or subcontractor. | Event |
| | ROG | 8 | State each and every federal regulation you contend Anadarko violated with respect to the Macondo Prospect, the Macondo Well, the Deepwater Horizon, or the Deepwater Horizon Spill (as defined in the Complaint), and for each regulation please state the bases and sources of your contention. | Event |
| APC | ROG | 9 | State whether you believe that Anadarko had any authority to control activities or operations regarding the Macondo Prospect and/or the Deepwater Horizon, and, if so, state the basis for your belief and the source of such authority. | Event |
| APC | ROG | 10 | Identify and describe each instance Anadarko exercised any authority to control identified in response to Interrogatory No. 9. | Event |
| APC | ROG | 11 | Identify and describe all actions, activities, or operations you believe Anadarko performed pursuant to the "Macondo Prospect Offshore Deepwater Operating Agreement." | Event |
| APC | ROG | 12 | Identify all estimates of the volume of oil discharged from each facility and vessel identified in response to Interrogatory Nos. 1 and 5. | SC |
| APC | ROG | 13 | Identify D321 | SC |
| APC | ROG | 14 | Describe the process by which the United States considers, reviews or approves SC efforts, and Identify any criteria, policies, guidance, or procedures for such consideration, review or approval. | SC |
| APC | ROG | 15 | Describe the process by which the United States considers, reviews or approves containment efforts, and Identify any criteria, policies, guidance, or procedures for such consideration, review or approval. | SP |
| APC | ROG | 16 | Identify and describe how you first became aware of the explosions and fires that first occurred on board the Deepwater Horizon on April 20, 2010. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| APC | ROG | 17 | Identify and describe any actions you conducted, oversaw or authorized after first becoming aware of and in response to the explosions and fires that occurred on board the Deepwater Horizon on April 20, 2010 through April 22, 2010, and for each such action provide the following information: (a) the identity of the person(s) who undertook or authorized the actions; (b) the identity of each person(s) responsible for overseeing the action; (c) the nature of the action; (d) for those actions you oversaw or authorized, the information provided to you by the person undertaking the action; (e) any communications between you and BP or Transocean regarding the action; (f) any criteria, guidance, policy or regulation used in determining whether to conduct or authorize the action; and (g) any analysis of the effectiveness of the action before and/or after it was implemented. | Event |
| APC | ROG | 18 | Identify any SC efforts considered by or proposals for SC efforts submitted to the United States, including but not limited to the on-scene coordinator, and, for each SC effort: (a) Identify the person or employee who identified or proposed the SC effort; (b) Identify the employee to which any proposal was submitted; (c) Identify any employee who reviewed, evaluated or analyzed the SC effort; (d) State whether the SC effort was approved in whole or in part, approved with conditions or modifications, or rejected, and the reasons therefore; (e) Describe any evaluation, assessment, analysis or calculation regarding the volume of any oil, hydrocarbons, gases or other materials recovered as a result of the SC effort and the results therefrom; and (f) Describe any analysis of the effectiveness of the SC effort before and/or after it was implemented. | SC |
| APC | ROG | 19 | Identify and describe any actions, including containment efforts, you conducted in response to the oil, hydrocarbons, gases or other materials released or discharged as a result of the Deepwater Horizon Spill (as defined in the Complaint) after April 22, 2010. | SP |
| APC | ROG | 20 | Identify any containment efforts considered by or proposals for containment efforts submitted to the United States, including but not limited to the on-scene coordinator and for each containment effort: (a) Identify any person who identified or proposed the containment effort; (b) Identify the employee to which any proposal was submitted; (c) Identify any employee who reviewed, evaluated or analyzed the containment effort; (d) State whether the containment effort was approved in whole or in part, approved with conditions or modifications, or rejected, and the reasons therefore; (e) Describe any evaluation, assessment, analysis or calculation regarding the volume of any oil, hydrocarbons, gases or other materials recovered as a result of the containment effort and the results therefrom; and (f) Describe any analysis of the effectiveness of the containment effort before and/or after it was implemented. | SP |
| APC | ROG | 21 | Identify and describe any fate and transport efforts related to the Deepwater Horizon Spill (as defined in the Complaint) undertaken by you or any other person, and for each fate and transport effort: (a) Identify the person that performed the fate and transport effort; (b) Identify each person responsible for managing the fate and transport effort; (c) Describe the nature of the fate and transport effort; (d) Describe the results of the fate and transport effort; and (e) Describe all oil fingerprint efforts relating to any oil analyzed. | SP |
| APC | ROG | 22 | Identify all persons involved with or assisting in the preparation of the United States' answers to these interrogatories. | Event; SC; SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| APC | ROG | 17 | For each of your responses to the above requests for admission that is anything but an unqualified admission, please state each fact in support of your response, Identify each person with knowledge of each such fact, and Identify each document that supports your response. | Event |
| BP | RFA | 1 | Admit that the United States Government received BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009. | Event |
| BP | RFA | 2 | Admit that the United States Government evaluated BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009. | Event |
| BP | RFA | 3 | Admit that the United States Government approved BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009. | Event |
| BP | RFA | 4 | Admit that the United States Government's approval of BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009, was made in accordance with 30 CFR 250.233(b)(1). | Event |
| BP | RFA | 5 | Admit that the United States Government received BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230 Public Information, dated February 2009. | Event |
| BP | RFA | 6 | Admit that the United States Government evaluated BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230 Public Information, dated February 2009. | Event |
| BP | RFA | 7 | Admit that the United States Government approved BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230 Public Information, dated February 2009. | Event |
| BP | RFA | 8 | Admit that the United States Government's approval of BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230 Public Information, dated February 2009, was made in accordance with 30 CFR 250.233(b)(1). | Event |
| BP | RFA | 9 | Admit that the United States Government received BP's Notice of Intent for BP Exploration & Production Inc., NPDES OCS Permit No. GMG 290110, dated February 23, 2009. | Event |
| BP | RFA | 10 | Admit that the United States Government evaluated BP's Notice of Intent for BP Exploration & Production Inc., NPDES OCS Permit No. GMG 290110, dated February 23, 2009. | Event |
| BP | RFA | 11 | Admit that the United States Government approved BP's Notice of Intent for BP Exploration & Production Inc., NPDES OCS Permit No. GMG 290110, dated February 23, 2009. | Event |
| BP | RFA | 12 | Admit that the United States Government received BP's Application for Permit to Drill a New Well (Form MMS 123A/123S), dated May 13, 2009. | Event |
| BP | RFA | 13 | Admit that the United States Government evaluated BP's Application for Permit to Drill a New Well (Form MMS 123A/123S), dated May 13, 2009. | Event |
| BP | RFA | 14 | Admit that the United States Government approved BP's Application for Permit to Drill a New Well (Form MMS 123A/123S), dated May 13, 2009. | Event |
| BP | RFA | 15 | Admit that the United States Government's approval of BP's Application for Permit to Drill a New Well (Form MMS 123A/123S), dated May 13, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 16 | Admit that the United States Government received BP's Application for Revised New Well (Form MMS 123A/123S), dated September 28, 2009. | Event |
| BP | RFA | 17 | Admit that the United States Government evaluated BP's Application for Revised New Well (Form MMS 123A/123S), dated September 28, 2009. | Event |
| BP | RFA | 18 | Admit that the United States Government approved BP's Application for Revised New Well (Form MMS 123A/123S), dated September 28, 2009. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | RFA | 19 | Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated September 28, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 20 | Admit that the United States Government received BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted September 29, 2009. | Event |
| BP | RFA | 21 | Admit that the United States Government evaluated BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted September 29, 2009. | Event |
| BP | RFA | 22 | Admit that the United States Government approved BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted September 29, 2009. | Event |
| BP | RFA | 23 | Admit that the United States Government's approval of BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted September 29, 2009, was made pursuant to 30 CFR 250.403. | Event |
| BP | RFA | 24 | Admit that the United States Government received BP's Application for Revised New Well (Form MMS 123A/123S), dated October 15, 2009. | Event |
| BP | RFA | 25 | Admit that the United States Government evaluated BP's Application for Revised New Well (Form MMS 123A/123S), dated October 15, 2009. | Event |
| BP | RFA | 26 | Admit that the United States Government approved BP's Application for Revised New Well (Form MMS 123A/123S), dated October 15, 2009. | Event |
| BP | RFA | 27 | Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated October 15, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 28 | Admit that the United States Government received BP's Form MMS-124, dated October 21, 2009. | Event |
| BP | RFA | 29 | Admit that the United States Government evaluated BP's Form MMS-124, dated October 21, 2009. | Event |
| BP | RFA | 30 | Admit that the United States Government approved BP's Form MMS-124, dated October 21, 2009. | Event |
| BP | RFA | 31 | Admit that the United States Government's approval of BP's Form MMS-124, dated October 21, 2009, was made pursuant to 30 CFR 250.465. | Event |
| BP | RFA | 32 | Admit that the United States Government received BP's Application for Revised New Well (Form MMS 123A/123S), dated October 29, 2009. | Event |
| BP | RFA | 33 | Admit that the United States Government evaluated BP's Application for Revised New Well (Form MMS 123A/123S), dated October 29, 2009. | Event |
| BP | RFA | 34 | Admit that the United States Government approved BP's Application for Revised New Well (Form MMS 123A/123S), dated October 29, 2009. | Event |
| BP | RFA | 35 | Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated October 29, 2009, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 36 | Admit that the United States Government received BP's Incident Report, dated November 30, 2009. | Event |
| BP | RFA | 37 | Admit that the United States Government evaluated BP's Incident Report, dated November 30, 2009. | Event |
| BP | RFA | 38 | Admit that the United States Government approved BP's Incident Report, dated November 30, 2009. | Event |
| BP | RFA | 39 | Admit that the United States Government's approval of BP's Incident Report, dated November 30, 2009, was made pursuant to 30 CFR 250.190. | Event |
| BP | RFA | 40 | Admit that the United States Government received BP's Incident Report, dated December 7, 2009. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 41 | Admit that the United States Government evaluated BP's Incident Report, dated December 7, 2009. | Event |
| BP | RFA | 42 | Admit that the United States Government approved BP's Incident Report, dated December 7, 2009. | Event |
| BP | RFA | 43 | Admit that the United States Government's approval of BP's Incident Report, dated December 7, 2009, was made pursuant to 30 CFR 250.190. | Event |
| BP | RFA | 44 | Admit that the United States Government received BP's Form MMS-124, dated December 28, 2009. | Event |
| BP | RFA | 45 | Admit that the United States Government evaluated BP's Form MMS-124, dated December 28, 2009. | Event |
| BP | RFA | 46 | Admit that the United States Government approved BP's Form MMS-124, dated December 28, 2009. | Event |
| BP | RFA | 47 | Admit that the United States Government's approval of BP's Form MMS-124, dated December 28, 2009, was made pursuant to 30 CFR 250.465. | Event |
| BP | RFA | 48 | Admit that the United States Government received BP Exploration & Production, Inc. Emergency Evacuation Plan, dated January, 2010. | Event |
| BP | RFA | 49 | Admit that the United States Government evaluated BP Exploration & Production, Inc. Emergency Evacuation Plan, dated January, 2010. | Event |
| BP | RFA | 50 | Admit that the United States Government approved BP Exploration & Production, Inc. Emergency Evacuation Plan, dated January, 2010. | Event |
| BP | RFA | 51 | Admit that the United States Government received BP's Application for Revised New Well (Form MMS 123A/123S), dated January 12, 2010. | Event |
| BP | RFA | 52 | Admit that the United States Government evaluated BP's Application for Revised New Well (Form MMS 123A/123S), dated January 12, 2010. | Event |
| BP | RFA | 53 | Admit that the United States Government approved BP's Application for Revised New Well (Form MMS 123A/123S), dated January 12, 2010. | Event |
| BP | RFA | 54 | Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated January 12, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 55 | Admit that the United States Government received BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted January 28, 2009. | Event |
| BP | RFA | 56 | Admit that the United States Government evaluated BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted January 28, 2009. | Event |
| BP | RFA | 57 | Admit that the United States Government approved BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted January 28, 2009. | Event |
| BP | RFA | 58 | Admit that the United States Government's approval of BP's Rig Movement Notification Report (Form MMS-144 - Electronic), accepted January 28, 2009, was made pursuant to 30 CFR 250.403. | Event |
| BP | RFA | 59 | Admit that the United States Government received BP's Application for Revised New Well (Form MMS 123A/123S), dated January 25, 2010. | Event |
| BP | RFA | 60 | Admit that the United States Government evaluated BP's Application for Revised New Well (Form MMS 123A/123S), dated January 25, 2010. | Event |
| BP | RFA | 61 | Admit that the United States Government approved BP's Application for Revised New Well (Form MMS 123A/123S), dated January 25, 2010. | Event |
| BP | RFA | 62 | Admit that the United States Government's approval of BP's Application for Revised New Well (Form MMS 123A/123S), dated January 25, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 63 | Admit that the United States Government received BP's Application for Permit to Modify (Form MMS-124), dated March 10, 2010. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 64 | Admit that the United States Government evaluated BP's Application for Permit to Modify (Form MMS-124), dated March 10, 2010. | Event |
| BP | RFA | 65 | Admit that the United States Government approved BP's Application for Permit to Modify (Form MMS-124), dated March 10, 2010. | Event |
| BP | RFA | 66 | Admit that the United States Government's approval of BP's Application for Permit to Modify (Form MMS-124), dated March 10, 2010, was made pursuant to 30 CFR 250.465. | Event |
| BP | RFA | 67 | Admit that the United States Government received BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010. | Event |
| BP | RFA | 68 | Admit that the United States Government evaluated BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010. | Event |
| BP | RFA | 69 | Admit that the United States Government approved BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010. | Event |
| BP | RFA | 70 | Admit that the United States Government's approval of BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 71 | Admit that the United States Government was aware that a kick had occurred at the Macondo Well on March 8, 2010 when it approved BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010. | Event |
| BP | RFA | 72 | Admit that the United States Government considered the March 8, 2010 kick in approving BP's Application for Bypass (Form MMS 123A/123S), dated March 15, 2010. | Event |
| BP | RFA | 73 | Admit that the United States Government received BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 25, 2010. | Event |
| BP | RFA | 74 | Admit that the United States Government evaluated BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 25, 2010. | Event |
| BP | RFA | 75 | Admit that the United States Government approved BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 25, 2010. | Event |
| BP | RFA | 76 | Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 25, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 77 | Admit that the United States Government received BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 26, 2010. | Event |
| BP | RFA | 78 | Admit that the United States Government evaluated BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 26, 2010. | Event |
| BP | RFA | 79 | Admit that the United States Government approved BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 26, 2010. | Event |
| BP | RFA | 80 | Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated March 26, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 81 | Admit that the United States Government received BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 14, 2010. | Event |
| BP | RFA | 82 | Admit that the United States Government evaluated BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 14, 2010. | Event |
| BP | RFA | 83 | Admit that the United States Government approved BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 14, 2010. | Event |
| BP | RFA | 84 | Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 14, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 85 | Admit that the United States Government received BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010. | Event |
| BP | RFA | 86 | Admit that the United States Government evaluated BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 87 | Admit that the United States Government approved BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010. | Event |
| BP | RFA | 88 | Admit that the United States Government's approval of BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010, was made pursuant to 30 CFR 250.410 and 30 CFR 250.418. | Event |
| BP | RFA | 89 | Admit that the United States Government approved BP's use of the 9 7/8" x 7" long string casing for the Macondo Well, as specified in BP's Application for Revised Bypass (Form MMS 123A/123S), dated April 15, 2010. | Event |
| BP | RFA | 90 | Admit that the United States Government received BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010. | Event |
| BP | RFA | 91 | Admit that the United States Government evaluated BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010. | Event |
| BP | RFA | 92 | Admit that the United States Government approved BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010. | Event |
| BP | RFA | 93 | Admit that the United States Government's approval of BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010, was made pursuant to 30 CFR 250.465. | Event |
| BP | RFA | 94 | Admit that the United States Government approved BP's plan to set a 300' cement plug from 8367' to 8067', as specified in BP's Application for Permit to Modify (Form MMS-124), dated April 16, 2010. | Event |
| BP | RFA | 95 | Admit that the United States Government received BP's Application End of Operations Report (Form MMS 125), accepted April 21, 2010. | Event |
| BP | RFA | 96 | Admit that the United States Government evaluated BP's Application End of Operations Report (Form MMS 125), accepted April 21, 2010. | Event |
| BP | RFA | 97 | Admit that the United States Government approved BP's Application End of Operations Report (Form MMS 125), accepted April 21, 2010. | Event |
| BP | RFA | 98 | Admit that the United States Government's approval of BP's Application End of Operations Report (Form MMS 125), accepted April 21, 2010, was made pursuant to 30 CFR 250.465. | Event |
| BP | RFA | 99 | Admit that the United States Government approves long string production casing designs for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 100 | Admit that the United States Government has approved long string production casing designs for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 101 | Admit that a long string production casing design is an acceptable design for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 102 | Admit that a long string production casing design is an appropriate design for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 103 | Admit that more than 20% of all deepwater well designs in the Gulf of Mexico and approved by the United States Government utilize a long string production casing design. | Event |
| BP | RFA | 104 | Admit that more than 30% of all deepwater well designs in the Gulf of Mexico and approved by the United States Government utilize a long string production casing design. | Event |
| BP | RFA | 105 | Admit that more than 40% of all deepwater well designs in the Gulf of Mexico and approved by the United States Government utilize a long string production casing design. | Event |
| BP | RFA | 106 | Admit that more than 50% of all deepwater well designs in the Gulf of Mexico and approved by the United States Government utilize a long string production casing design. | Event |
| BP | RFA | 107 | Admit that more than 60% of all deepwater well designs in the Gulf of Mexico and approved by the United States Government utilize a long string production casing design. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

MDL 2179

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 108 | Admit that the United States Government approves liner with a tie back production casing designs for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 109 | Admit that a liner with a tie back production casing design is an acceptable design for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 110 | Admit that a liner with a tie back production casing design is an appropriate design for deepwater wells in the Gulf of Mexico. | Event |
| BP | RFA | 111 | Admit that the United States Government does not require a negative pressure test during temporary abandonment procedures. | Event |
| BP | RFA | 112 | Admit that there are no regulations regulating negative pressure test during temporary abandonment procedures. | Event |
| BP | RFA | 113 | Admit that there are no federal laws regulating negative pressure tests during temporary abandonment procedures. | Event |
| BP | RFA | 114 | Admit that the United States Government does not have guidelines for interpreting negative pressure tests. | Event |
| BP | RFA | 115 | Admit that the United States Government prepared an environmental impact statement under the National Environmental Policy Act that applied to the leasing of Mississippi Canyon Block 252. | Event |
| BP | RFA | 116 | Admit that the environmental impact statement prepared by the United States Government with respect to the leasing of Mississippi Canyon Block 252 complied with the National Environmental Policy Act. | Event |
| BP | RFA | 117 | Admit that the United States Government prepared a multisale environmental impact statement under the National Environmental Policy Act that applied to the leasing of Mississippi Canyon Block 252. | Event |
| BP | RFA | 118 | Admit that the multisale environmental impact statement prepared by the United States Government with respect to the leasing of Mississippi Canyon Block 252 complied with the National Environmental Policy Act. | Event |
| BP | RFA | 119 | Admit that the United States Government conducted an environmental assessment under the National Environmental Policy Act with respect the leasing of Mississippi Canyon Block 252. | Event |
| BP | RFA | 120 | Admit that the environmental assessment conducted by the United States Government with respect to the leasing of Mississippi Canyon Block 252 complied with the National Environmental Policy Act. | Event |
| BP | RFA | 121 | Admit that the United States Government received BP's Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009. | Event |
| BP | RFA | 122 | Admit that the United States Government evaluated BP's Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009. | Event |
| BP | RFA | 123 | Admit that the United States Government approved BP's Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009. | Event |
| BP | RFA | 124 | Admit that the United States Government's approval of BP's Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009, was made in accordance with 33 U.S.C. § 1321(j). | Event |
| BP | RFA | 125 | Admit that BP's Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009, was in compliance with all United States Government standards for response capabilities to address a worst case discharge. | Event |
| BP | RFA | 126 | Admit that federal regulations provided an approved method for BP to use in determining the effective daily recovery capacity of skimming response capability for purposes of its Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009. | Event |
| BP | RFA | 127 | Admit that federal regulations provided an approved method for BP to use in stating the effective daily recovery capacity of skimming response capability for purposes of its Gulf of Mexico Regional Oil Spill Response Plan, dated June 2009. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 128 | Admit that the method provided in federal regulations for stating the effective daily recovery capacities of skimming capability does not fully predict, estimate or determine the efficiency with which skimming systems can recover oil in any specific incident. | Event |
| BP | RFA | 129 | Admit that, as of the date of the Incident, the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident did not contain a worst case discharge scenario. | Event |
| BP | RFA | 130 | Admit that, as of the date of the Incident, the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident did not Identify all environmentally sensitive areas for protection in the event of an oil spill. | Event |
| BP | RFA | 131 | Admit that during the Response Activities the Unified Command identified environmentally sensitive areas for protection that were not identified in the One Gulf Plan or the Area Contingency Plans for areas affected by the Incident. | Event |
| BP | RFA | 132 | Admit that, owing to the omission of each environmentally sensitive area for protection in the event of an oil spill from the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident, the Unified Command undertook protection strategies or actions different than those contained in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident. | Event |
| BP | RFA | 133 | Admit that omissions in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident with respect to Identifying environmentally sensitive areas led to impacts from the Incident different than would have occurred if the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident had identified each environmentally sensitive area affected by the Incident. | Event |
| BP | RFA | 134 | Admit that, as of the date of the Incident, the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident did not state priorities for action with respect to all environmentally sensitive areas for protection in the event of an oil spill. | Event |
| BP | RFA | 135 | Admit that the Unified Command determined during the Response Activities that the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident did not state priorities for action with respect to all environmentally sensitive areas for protection in the event of an oil spill. | Event |
| BP | RFA | 136 | Admit that, owing to the omission of priorities for action for all environmentally sensitive areas for protection in the event of an oil spill, the Unified Command undertook protection strategies or actions different than those contained in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident. | Event |
| BP | RFA | 137 | Admit that omissions in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident with respect to prioritizing environmentally sensitive areas led to impacts from the Incident different than would have occurred if the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident had stated priorities for action with respect to each environmentally sensitive area affected by the Incident. | Event |
| BP | RFA | 138 | Admit that omissions in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident with respect to Identifying protection strategies led to impacts from the Incident different than would have occurred if the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident had identified the protection strategies actually employed in the Response Activities by the Unified Command. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 139 | Admit that omissions in the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident with respect Identifying oil-spill response resources led to impacts from the Incident different than would have occurred if the One Gulf Plan and the Area Contingency Plans for areas affected by the Incident had identified the oil-spill response resources actually employed in the Response Activities by the Unified Command. | Event |
| BP | RFA | 140 | Admit that the United States Coast Guard participated in the efforts of the vessels attempting to fight the fire aboard the Deepwater Horizon. | Event |
| BP | RFA | 141 | Admit that the United States Coast Guard coordinated the efforts of the vessels attempting to fight the fire aboard the Deepwater Horizon. | Event |
| BP | RFA | 142 | Admit that the United States Coast Guard communicated with the vessels attempting to fight the fire aboard the Deepwater Horizon. | Event |
| BP | RFA | 143 | Admit that the United States Coast Guard was asked to provide assistance in firefighting efforts in connection with the Incident. | Event |
| BP | RFA | 144 | Admit that the Federal On-Scene Coordinators have jurisdiction over marine firefighting. | Event |
| BP | RFA | 145 | Admit that the Commanding Officer of the United States Coast Guard Cutter ZEPHYR, assumed Federal On-Scene Coordinator duties for the Incident on April 21, 2010. | Event |
| BP | RFA | 146 | Admit that the marine firefighting efforts related to the Incident lacked direction and coordination. | Event |
| BP | RFA | 147 | Admit that the marine firefighting efforts related to the Incident paid insufficient attention to the risks of excess water destabilizing the Deepwater Horizon. | Event |
| BP | RFA | 148 | Admit that the United States Coast Guard did not designate a fire marshal in connection with the Incident. | Event |
| BP | RFA | 149 | Admit that the United States Coast Guard did not contact any Transocean employees to discuss the direction and/or coordination of the firefighting efforts in connection with the Incident. | Event |
| BP | RFA | 150 | Admit that application of foam is more effective in firefighting to control burning hydrocarbons than water. | Event |
| BP | RFA | 151 | Admit that United States Coast Guard regulations Identify risks in spraying water in marine firefighting efforts. | Event |
| BP | RFA | 152 | Admit that United States Coast Guard regulations incorporate by reference specific guidance concerning marine vessel fires, and that such guidance specifically addresses vessel stability in the context of a marine vessel fire. | Event |
| BP | RFA | 153 | Admit that once the United States Coast Guard Cutter Zephyr arrived on the scene of the Incident, it assumed command and control of all operations. | Event |
| BP | RFA | 154 | Admit that the United States Coast Guard was concerned about the stability of the Deepwater Horizon during the firefighting efforts. | Event |
| BP | RFA | 155 | Admit that personnel aboard M/V Max Chouest asked the United States Coast Guard Cutter Zephyr to have fire vessels redirect water to the columns of the Deepwater Horizon. | Event |
| BP | RFA | 156 | Admit that the United States Government directed the Unified Command Response Activities. | SC |
| BP | RFA | 157 | Admit that an Officer of the United States Coast Guard provided signature approval for the Response Activities listed in Incident Action Plans. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 158 | Admit that the United States Government approved the Response Activities listed in Incident Action Plans signed by an Officer of the United States Coast Guard. | SC |
| BP | RFA | 159 | Admit that, under the National Contingency Plan, the Federal On-Scene Coordinator exercised final authority to direct the actions undertaken in the Unified Command Response Activities. | SC |
| BP | RFA | 160 | Admit that, in their capacity as Federal On-Scene Coordinators, the Federal On-Scene Coordinators that served during the Response Activities acted on behalf of the President. | SC |
| BP | RFA | 161 | Admit that the United States Government exercised final authority to direct the actions undertaken in Unified Command Response Activities. | SC |
| BP | RFA | 162 | Admit that the United States Government had the authority to disapprove and to prevent implementation of any Unified Command Response Activities proposed by BP. | SC |
| BP | RFA | 163 | Admit that the United States Government had the authority to require BP to undertake any Response Activity. | SC |
| BP | RFA | 164 | Admit that the United States Government exercised final authority to determine the information that would be released to the public by the Unified Command during the Response Activities. | SC |
| BP | RFA | 165 | Admit that the United States Government approved the release of all information released to the public from the Unified Command during the Response Activities. | SC |
| BP | RFA | 166 | Admit that the United States Government approved the release of all information released from the Unified Command's Joint Information Center during the Response Activities. | SC |
| BP | RFA | 167 | Admit that BP worked cooperatively with the United States Government in the Unified Command. | SC |
| BP | RFA | 168 | Admit that BP performed all Response Activities it was directed to perform by the Unified Command. | SC |
| BP | RFA | 169 | Admit that BP performed all Response Activities it was directed to perform by the Unified States. | SC |
| BP | RFA | 170 | Admit that the Unified Command approved each of the Response Activities performed by BP, either before or after each such Response Activity was undertaken. | SC |
| BP | RFA | 171 | Admit that the United States approved all Response Activities performed by BP. | SC |
| BP | RFA | 172 | Admit that BP placed no limits on funding for Response Activities that prevented the Unified Command from performing Response Activities that the Unified Command determined were necessary to respond to the discharge from the MC252 Well following the Incident. | SC |
| BP | RFA | 173 | Admit that the Unified Command had the resources necessary to respond to the discharge from the MC252 Well following the Incident. | SC |
| BP | RFA | 174 | Admit that the Unified Command had the financial resources necessary to respond to the discharge from the MC252 Well following the Incident. | SC |
| BP | RFA | 175 | Admit that the Unified Command had enough United States Government personnel and United States Government contractor personnel to participate in the Response Activities it determined were necessary to respond to the discharge from the MC252 Well following the Incident. | SC |
| BP | RFA | 176 | Admit that, in May 2010, the President called for the tripling of federal resources to respond to the discharge from the MC252 Well following the Incident. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 177 | Admit that the attempt to triple federal resources as called for by the President in May 2010 negatively impacted the Unified Command's ability to respond to the discharge from the MC252 Well following the Incident. | SC |
| BP | RFA | 178 | Admit that United States Coast Guard officials believed that the tripling of federal resources called for by the President in May 2010 limited the Coast Guard's ability to respond to the Incident and to conduct its other missions following the Incident. | SC |
| BP | RFA | 179 | Admit that United States Coast Guard officials believed that the tripling of federal resources called for by the President in May 2010 limited the Coast Guard's ability to conduct missions other than responding to the discharge from the MC252 Well. | SC |
| BP | RFA | 180 | Admit that the Governor of Louisiana refused to provide the United States Coast Guard with the location of an oiled marsh where the Governor was physically located when the Governor publicly complained about the adequacy of the response to the Incident. | SC |
| BP | RFA | 181 | Admit that the United States Government rejected offers from foreign countries and foreign companies of assistance in the form of response equipment and vessels to respond to the Incident. | SC |
| BP | RFA | 182 | Admit that Admiral Thad Allen stated on or about August 2, 2010, that he was satisfied with the use of dispersants to mitigate the impact of the discharge from the MC252 Well. | SC |
| BP | RFA | 183 | Admit that dispersants were used to respond to the discharge from the MC252 Well only when dispersants were needed. | SC |
| BP | RFA | 184 | Admit that dispersants were an essential tool in mitigating the impacts of the discharge from the MC252 Well. | SC |
| BP | RFA | 185 | Admit that dispersants were an effective tool in preventing the discharge from the MC252 Well from reaching the Gulf of Mexico shoreline. | SC |
| BP | RFA | 186 | Admit that dispersants increased the speed at which oil discharged from the MC252 Well degraded. | SC |
| BP | RFA | 187 | Admit that the United States Government believes that application of dispersants at the wellhead to the discharge from the MC252 Well was a prudent and responsible Response Activity. | SC |
| BP | RFA | 188 | Admit that the final decision to use dispersants as a Response Activity was made by the Federal On-Scene Coordinator, not BP. | SC |
| BP | RFA | 189 | Admit that the volume of dispersants applied during Response Activities was reduced by 72 percent from peak levels in response to the United States Government's May 26, 2010 directive regarding dispersant use. | SC |
| BP | RFA | 190 | Admit that use of dispersants is less environmentally harmful than allowing oil to migrate on the water surface into wetlands and coastal habitats. | SC |
| BP | RFA | 191 | Admit that, following a United States Environmental Protection Agency denial to apply dispersants to the surface of the water in the Gulf of Mexico by air, United States Coast Guard Captain James Hanzalik stated that, if oil hit the beach because dispersants were not applied, the "responsibility needs to be placed squarely in the EPA's court." | SC |
| BP | RFA | 192 | Admit that application of dispersants at the wellhead to the discharge from the MC252 Well reduced exposure to volatile organic compounds for persons on vessels engaged in Response Activities. | SC |
| BP | RFA | 193 | Admit that application of dispersants to the surface of the water in the Gulf of Mexico reduced exposure to volatile organic compounds for persons on vessels engaged in Response Activities. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 194 | Admit that BP and its contractors never violated United States Government directives regarding dispersant use during the Response Activities. | SC |
| BP | RFA | 195 | Admit that, as of April 20, 2010, Corexit EC9500A and Corexit EC9527A were pre-approved by the United States Government for use in responding to an oil spill in the Gulf of Mexico. | SC |
| BP | RFA | 196 | Admit that, in May 2010, the United States Government directed BP to Identify an alternative to the dispersants being used in Response Activities. | SC |
| BP | RFA | 197 | Admit that there existed no alternative to the dispersants being used in Response Activities that were listed on the United States Environmental Protection Agency's National Contingency Plan Product Schedule and available in sufficient quantities to replace Corexit EC9500A and Corexit EC9527A and that presented lower risks to human or other animal health than Corexit EC9500A and Corexit EC9527A. | SC |
| BP | RFA | 198 | Admit that the United States Environmental Protection Agency's independent study of alternative dispersants confirmed that there existed no alternative to the dispersants being used in Response Activities that was less toxic and available in sufficient quantities. | SC |
| BP | RFA | 199 | Admit that the Regional Response Plan for Region IV provided pre-approval for use of dispersants to respond to an oil spill. | SC |
| BP | RFA | 200 | Admit that the Regional Response Plan for Region VI provided pre-approval for use of dispersants to respond to an oil spill. | SC |
| BP | RFA | 201 | Admit that, for the period from on or about April 22, 2010 to on or about May 26, 2010, the United States Government approved the aerial application of dispersants as a Response Activity. | SC |
| BP | RFA | 202 | Admit that, on or about May 26, 2010, the United States Government directed BP to eliminate the surface application of dispersants to the discharge from the MC252 Well. | SC |
| BP | RFA | 203 | Admit that, on or about May 26, 2010, the United States Government began requiring written requests for authorization to apply dispersants by air to the surface of the water in the Gulf of Mexico. | SC |
| BP | RFA | 204 | Admit that the United States Government approved the aerial application of a total of 15,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 28, 2010. | SC |
| BP | RFA | 205 | Admit that a request was made to the United States Government for approval to apply a total of 19,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on May 29, 2010. | SC |
| BP | RFA | 206 | Admit that the United States Government approved the aerial application of a total of 15,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 29, 2010. | SC |
| BP | RFA | 207 | Admit that the United States Government approved the aerial application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 30, 2010. | SC |
| BP | RFA | 208 | Admit that the United States Government approved the aerial application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 31, 2010. | SC |
| BP | RFA | 209 | Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 1, 2010. | SC |
| BP | RFA | 210 | Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 1, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 211 | Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 2, 2010. | SC |
| BP | RFA | 212 | Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 2, 2010. | SC |
| BP | RFA | 213 | Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010. | SC |
| BP | RFA | 214 | Admit that the United States Government approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010. | SC |
| BP | RFA | 215 | Admit that a request was made to the United States Government for approval to apply a total of 22,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 4, 2010. | SC |
| BP | RFA | 216 | Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 4, 2010. | SC |
| BP | RFA | 217 | Admit that a request was made to the United States Government for approval to apply a total of 40,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 5, 2010. | SC |
| BP | RFA | 218 | Admit that the United States Government approved the aerial application of a total of 125 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 5, 2010. | SC |
| BP | RFA | 219 | Admit that the United States Government approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 6, 2010. | SC |
| BP | RFA | 220 | Admit that the United States Government approved the aerial application of a total of 4,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 7, 2010. | SC |
| BP | RFA | 221 | Admit that a request was made to the United States Government for approval to apply a total of 104,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 8, 2010. | SC |
| BP | RFA | 222 | Admit that the United States Government approved the aerial application of a total of 32,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 8, 2010. | SC |
| BP | RFA | 223 | Admit that a request was made to the United States Government for approval to apply a total of 32,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 9, 2010. | SC |
| BP | RFA | 224 | Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 9, 2010. | SC |
| BP | RFA | 225 | Admit that a request was made to the United States Government for approval to apply a total of 32,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 10, 2010. | SC |
| BP | RFA | 226 | Admit that the United States Government approved the aerial application of a total of 21,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 10, 2010. | SC |
| BP | RFA | 227 | Admit that a request was made to the United States Government for approval to apply a total of 36,200 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 228 | Admit that the United States Government approved the aerial application of a total of 15,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010. | SC |
| BP | RFA | 229 | Admit that a request was made to the United States Government for approval to apply a total of 58,160 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 12, 2010. | SC |
| BP | RFA | 230 | Admit that the United States Government approved the aerial application of a total of 7,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 12, 2010. | SC |
| BP | RFA | 231 | Admit that a request was made to the United States Government for approval to apply a total of 70,600 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 13, 2010. | SC |
| BP | RFA | 232 | Admit that the United States Government approved the aerial application of a total of 36,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 13, 2010. | SC |
| BP | RFA | 233 | Admit that a request was made to the United States Government for approval to apply a total of 59,800 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 14, 2010. | SC |
| BP | RFA | 234 | Admit that the United States Government approved the aerial application of a total of 17,800 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 14, 2010. | SC |
| BP | RFA | 235 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 14, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 236 | Admit that a request was made to the United States Government for approval to apply a total of 46,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 15, 2010. | SC |
| BP | RFA | 237 | Admit that the United States Government approved the aerial application of a total of 15,500 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 15, 2010. | SC |
| BP | RFA | 238 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 15, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 239 | Admit that a request was made to the United States Government for approval to apply a total of 46,700 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 16, 2010. | SC |
| BP | RFA | 240 | Admit that the United States Government approved the aerial application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 16, 2010. | SC |
| BP | RFA | 241 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 16, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 242 | Admit that a request was made to the United States Government for approval to apply a total of 44,800 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 17, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 243 | Admit that the United States Government approved the aerial application of a total of 18,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 17, 2010. | SC |
| BP | RFA | 244 | Admit that a request was made to the United States Government for approval to apply a total of 38,400 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 18, 2010. | SC |
| BP | RFA | 245 | Admit that the United States Government approved the aerial application of a total of 19,200 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 18, 2010. | SC |
| BP | RFA | 246 | Admit that a request was made to the United States Government for approval to apply a total of 28,700 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 19, 2010. | SC |
| BP | RFA | 247 | Admit that the United States Government approved the aerial application of a total of 12,300 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 19, 2010. | SC |
| BP | RFA | 248 | Admit that a request was made to the United States Government for approval to apply a total of 31,780 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 20, 2010. | SC |
| BP | RFA | 249 | Admit that the United States Government approved the aerial application of a total of 15,500 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 20, 2010. | SC |
| BP | RFA | 250 | Admit that a request was made to the United States Government for approval to apply a total of 33,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 21, 2010. | SC |
| BP | RFA | 251 | Admit that the United States Government approved the aerial application of a total of 10,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 21, 2010. | SC |
| BP | RFA | 252 | Admit that a request was made to the United States Government for approval to apply a total of 27,487 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 22, 2010. | SC |
| BP | RFA | 253 | Admit that the United States Government approved the aerial application of a total of 10,487 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 22, 2010. | SC |
| BP | RFA | 254 | Admit that a request was made to the United States Government for approval to apply a total of 11,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010. | SC |
| BP | RFA | 255 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010. | SC |
| BP | RFA | 256 | Admit that the United States Government approved the aerial application of a total of 22,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 24, 2010. | SC |
| BP | RFA | 257 | Admit that a request was made to the United States Government for approval to apply a total of 42,600 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 25, 2010. | SC |
| BP | RFA | 258 | Admit that the United States Government approved the aerial application of a total of 14,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 25, 2010. | SC |
| BP | RFA | 259 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 25, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 260 | Admit that a request was made to the United States Government for approval to apply a total of 74,200 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 26, 2010. | SC |
| BP | RFA | 261 | Admit that the United States Government approved the aerial application of a total of 43,600 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 26, 2010. | SC |
| BP | RFA | 262 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 26, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 263 | Admit that a request was made to the United States Government for approval to apply a total of 61,480 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 27, 2010. | SC |
| BP | RFA | 264 | Admit that the United States Government approved the aerial application of a total of 10,880 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 27, 2010. | SC |
| BP | RFA | 265 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 27, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 266 | Admit that the United States Government approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 28, 2010. | SC |
| BP | RFA | 267 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 29, 2010. | SC |
| BP | RFA | 268 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 30, 2010. | SC |
| BP | RFA | 269 | Admit that the United States Government approved the aerial application of a total of 20,100 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 1, 2010. | SC |
| BP | RFA | 270 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico, to occur on July 1, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 271 | Admit that a request was made to the United States Government for approval to apply a total of 64,800 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010. | SC |
| BP | RFA | 272 | Admit that the United States Government approved the aerial application of a total of 20,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010. | SC |
| BP | RFA | 273 | Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010, in comparison with the amount that the United States Government approved for such application on that date. | SC |
| BP | RFA | 274 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 3, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 275 | Admit that a request was made to the United States Government for approval to apply a total of 20,840 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 4, 2010. | SC |
| BP | RFA | 276 | Admit that the United States Government approved the aerial application of a total of 8,640 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 4, 2010. | SC |
| BP | RFA | 277 | Admit that a request was made to the United States Government for approval to apply a total of 16,700 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 5, 2010. | SC |
| BP | RFA | 278 | Admit that the United States Government approved the aerial application of a total of 6,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 5, 2010. | SC |
| BP | RFA | 279 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 6, 2010. | SC |
| BP | RFA | 280 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 7, 2010. | SC |
| BP | RFA | 281 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 8, 2010. | SC |
| BP | RFA | 282 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 9, 2010. | SC |
| BP | RFA | 283 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 10, 2010. | SC |
| BP | RFA | 284 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 11, 2010. | SC |
| BP | RFA | 285 | Admit that a request was made to the United States Government for approval to apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 12, 2010. | SC |
| BP | RFA | 286 | Admit that the United States Government approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 12, 2010. | SC |
| BP | RFA | 287 | Admit that a request was made to the United States Government for approval to apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 13, 2010. | SC |
| BP | RFA | 288 | Admit that the United States Government approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 13, 2010. | SC |
| BP | RFA | 289 | Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 14, 2010. | SC |
| BP | RFA | 290 | Admit that a request was made to the United States Government for approval to apply a total of 30,100 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 15, 2010. | SC |
| BP | RFA | 291 | Admit that the United States Government approved the aerial application of a total of 20,100 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 15, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 292 | Admit that the United States Government approved the aerial application of a total of 375 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 19, 2010. | SC |
| BP | RFA | 293 | Admit that the United States Government approved the application of dispersants to the surface of the Gulf of Mexico by the M/V International Peace in order to evaluate dispersant effectiveness and health risks. | SC |
| BP | RFA | 294 | Admit that, on or about May 15, 2010, the United States Government authorized the application of dispersants at the wellhead to the discharge from the MC252 Well. | SC |
| BP | RFA | 295 | Admit that, on or about May 26, 2010, the United States Government directed BP to limit the application of dispersants at the wellhead to the discharge from the MC252 Well to a maximum of 15,000 gallons per day. | SC |
| BP | RFA | 296 | Admit that the United States Government authorized BP to increase application of dispersants from 15,000 gallons to 23,000 gallons for June 4, 2010, at the wellhead to the discharge from the MC252 Well. | SC |
| BP | RFA | 297 | Admit that, on June 19, 2010, the United States Government authorized BP to increase application of dispersants from 15,000 gallons to 21,600 gallons for 24 hours at the wellhead to the discharge from the MC252 Well. | SC |
| BP | RFA | 298 | Admit that the United States Government authorized BP to apply more than 15,000 gallons of dispersants for July 11, 2010, at the wellhead to the discharge from the MC252 Well. | SC |
| BP | RFA | 299 | Admit that the United States Government authorized BP to increase application of dispersants to twelve gallons per minute, or approximately 17,000 gallons, for July 12, 2010, at the wellhead to the discharge from the MC252 Well. | SC |
| BP | RFA | 300 | Admit that the Regional Response Plan for Region IV provided pre-approval for controlled in-situ burning to respond to an oil spill. | SP |
| BP | RFA | 301 | Admit that the Regional Response Plan for Region VI provided pre-approval for controlled in-situ burning to respond to an oil spill. | SP |
| BP | RFA | 302 | Admit that the United States Government required smoke plume sampling before controlled in-situ burning could be used as a Response Activity. | SP |
| BP | RFA | 303 | Admit that a member of the United States Coast Guard was present at all controlled in-situ burning operations conducted to respond to the discharge from the MC252 Well. | SP |
| BP | RFA | 304 | Admit that the United States Government estimates that the amount of oil burned during controlled in-situ burning Response Activities was between 220,000 to 310,000 barrels of oil. | SP |
| BP | RFA | 305 | Admit that controlled in-situ burning operations conducted during Response Activities complied with federal regulations and applicable Regional Response Plans. | SP |
| BP | RFA | 306 | Admit that controlled in-situ burning is an effective response tool to mitigate the impacts of an oil spill. | SP |
| BP | RFA | 307 | Admit that United States Government conducted air sampling at the locations of controlled in-situ burning Response Activities. | SP |
| BP | RFA | 308 | Admit that the United States Government determined that dioxins emitted during controlled in-situ burning Response Activities were below the United States Environmental Protection Agency's levels of concern. | SP |
| BP | RFA | 309 | Admit that the Deepwater Horizon Incident and response did not cause hypoxia, or dead zones, in the Gulf of Mexico. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 310 | Admit that the Unified Command mobilized more than 14 million feet of boom and deployed approximately 3.9 million feet of containment boom and approximately 9.7 million feet of sorbent boom. | SP |
| BP | RFA | 311 | Admit that boom helped prevent some oil from reaching sensitive coastline ecosystems. | SP |
| BP | RFA | 312 | Admit that BP completely followed the United States Government's direction regarding what types of boom to procure for use by the Unified Command. | SP |
| BP | RFA | 313 | Admit that BP completely followed the United States Government's direction regarding where to stage or locate all boom in storage areas procured for use by the Unified Command prior to boom deployment. | SP |
| BP | RFA | 314 | Admit that BP completely followed the United States Government's direction regarding where to deploy all boom that BP deployed under direction of the Unified Command. | SP |
| BP | RFA | 315 | Admit that seafood testing has shown and continues to show that seafood from the Gulf taken since the Incident has been and is safe for human consumption. | SP |
| BP | RFA | 316 | Admit that the Shoreline Cleanup Assessment Technique ("SCAT") process was used successfully to ensure a net environmental benefit from the Response Activities. | SP |
| BP | RFA | 317 | Admit that the Fish and Wildlife Service advised the Incident Command on ways to mitigate the effects of the oil and response activities on wildlife. | SP |
| BP | RFA | 318 | Admit that the Unified Command established protocols to minimize potential impacts on wildlife. | SP |
| BP | RFA | 319 | Admit that the United States Government approved the waste management plans developed for and used during the response. | SP |
| BP | RFA | 320 | Admit that the United States Government approved the vessel decontamination plans developed for and used during the response. | SP |
| BP | RFA | 321 | Admit that the United States Government did not provide a general Jones Act waiver for the Deepwater Horizon Incident. | SP |
| BP | RFA | 322 | Admit that the United States Government did not request alternative requirements for compliance with the National Environmental Policy Act in order to establish an interim rule to permit the relocation of equipment for use in the Response Activities until on or about July 6, 2010. | SP |
| BP | RFA | 323 | Admit that the United States Government responded to the request for alternative National Environmental Policy Act requirements in connection with the Response Activities on or about July 12, 2010. | SP |
| BP | RFA | 324 | Admit that the United States Government did not waive applicable Clean Water Act discharge standards for all available decanting equipment, which precluded the use of some skimmers and other Response Activities. | SP |
| BP | RFA | 325 | Admit that the United States Government did modify Clean Water Act discharge standards to permit the testing and use of some spill response technologies. | SP |
| BP | RFA | 326 | Admit that, on May 11, 2010, the State of Louisiana applied for a permit to construct offshore barrier berms in order to respond to the Incident. | SP |
| BP | RFA | 327 | Admit that, in May 2010, an interagency task force advised the National Incident Command that the State of Louisiana's proposed project to build offshore barrier berms would not be an effective spill-response measure. | SP |
| BP | RFA | 328 | Admit that, on May 27, 2010, the United States Government issued a permit for the State of Louisiana to build six offshore barrier berms. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 329 | Admit that the State of Louisiana has constructed offshore barrier berms that were authorized by the United States Government on or about May 27, 2010. | SP |
| BP | RFA | 330 | Admit that the State of Louisiana is constructing offshore barrier berms that were authorized by the United States Government on or about May 27, 2010. | SP |
| BP | RFA | 331 | Admit that the State of Louisiana's contractors have constructed offshore barrier berms that were authorized by the United States Government on or about May 27, 2010. | SP |
| BP | RFA | 332 | Admit that the State of Louisiana's contractors are constructing offshore barrier berms that were authorized by the United States Government on or about May 27, 2010. | SP |
| BP | RFA | 333 | Admit that BP did not apply to the United States Government for a permit to construct offshore barrier berms in the State of Louisiana as a Response Activity. | SP |
| BP | RFA | 334 | Admit that BP did not request permission from the United States Government to construct offshore barrier berms in the State of Louisiana as a Response Activity. | SP |
| BP | RFA | 335 | Admit that the National Incident Commander approved only one segment of Louisiana's offshore barrier berm project on May 27, 2010. | SP |
| BP | RFA | 336 | Admit that on June 2, 2010, after a communication by or on behalf of the President, the National Incident Commander approved the remaining segments of Louisiana's offshore barrier berm project. | SP |
| BP | RFA | 337 | Admit that the United States Government did not issue a permit for BP to build offshore barrier berms following the Incident. | SP |
| BP | RFA | 338 | Admit that, on or about June 4, 2010, the Unified Command informed BP that the construction of the berms by the State of Louisiana was a removal action and that the expense of the construction was an appropriate removal cost under the Oil Pollution Act of 1990. | SP |
| BP | RFA | 339 | Admit that the National Contingency Plan does not call for a program similar to the Vessels of Opportunity program. | SP |
| BP | RFA | 340 | Admit that the Regional Response Plan for Region IV does not call for a program similar to the Vessels of Opportunity program. | SP |
| BP | RFA | 341 | Admit that the Regional Response Plan for Region VI does not call for a program similar to the Vessels of Opportunity program. | SP |
| BP | RFA | 342 | Admit that, at the time of the Incident, neither the One Gulf Plan nor the Area Contingency Plans for the areas affected by the Incident called for a program similar to the Vessels of Opportunity program. | SP |
| BP | RFA | 343 | Admit that representatives of the United States Government were stationed in the Houston Incident Command Post during the Response. | SC |
| BP | RFA | 344 | Admit that representatives of the United States Government attended daily planning meetings held at the Houston Incident Command Post during the Response. | SC |
| BP | RFA | 345 | Admit that representatives of the United States Government attended daily operations meetings held at the Houston Incident Command Post during the Response. | SC |
| BP | RFA | 346 | Admit that representatives of the United States Government attended Science Team meetings held at the Houston Incident Command Post during the Response. | SC |
| BP | RFA | 347 | Admit that representatives of the United States Government were never denied admittance to a meeting held at the Houston Incident Command Post during the Response. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 348 | Admit that BP never refused a request from a representative of the United States Government to share data or information regarding the condition of the MC252 Well. | SC |
| BP | RFA | 349 | Admit that BP never refused a request from a representative of the United States Government to collect data or information regarding the condition of the MC252 Well. | SC |
| BP | RFA | 350 | Admit that BP never refused a request from a representative of the United States Government to collect data or information regarding the condition of the MC252 Well unless the request interfered with ongoing operations. | SC |
| BP | RFA | 351 | Admit that the members of the Government Science Teams did not hold formal positions under the Unified Command Structure. | SC |
| BP | RFA | 352 | Admit that representatives of the United States Government participated in the development of procedures to seal the MC252 Well. | SC |
| BP | RFA | 353 | Admit that representatives of the United States Government participated in the development of procedures to contain hydrocarbons flowing from the MC252 Well. | SC |
| BP | RFA | 354 | Admit that representatives of the United States Government were informed of every potential procedure for sealing the MC252 Well other than those provided by members of the public included in the Alternative Response Tool Evaluation System. | SC |
| BP | RFA | 355 | Admit that representatives of the United States Government had access to the same information about every potential procedure suggested for sealing the MC252 Well provided to BP. | SC |
| BP | RFA | 356 | Admit that representatives of the United States Government were informed of every procedure utilized to seal the MC252 Well. | SC |
| BP | RFA | 357 | Admit that representatives of the United States Government were informed of every potential procedure for containing the discharge from the MC252 Well other than those provided by members of the public included in the Alternative Response Tool Evaluation System. | SC |
| BP | RFA | 358 | Admit that representatives of the United States Government had access to the same information about every potential procedure suggested for containing the discharge from the MC252 Well provided to BP. | SC |
| BP | RFA | 359 | Admit that representatives of the United States Government were informed of every procedure utilized to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 360 | Admit that representatives of the United States Government stationed in Houston approved every procedure utilized to seal the MC252 Well. | SC |
| BP | RFA | 361 | Admit that representatives of the United States Government stationed in Houston approved every procedure utilized to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 362 | Admit that representatives of the United States Government stationed at the Unified Area Command approved every procedure utilized to seal the MC252 Well. | SC |
| BP | RFA | 363 | Admit that representatives of the United States Government stationed at the Unified Area Command approved every procedure utilized to contain hydrocarbons flowing from the MC 252 Well. | SC |
| BP | RFA | 364 | Admit that representatives of the United States Government participated in the development of some or all of the procedures related to the use of BOP intervention to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 365 | Admit that representatives of the United States Government reviewed the procedures related to the use of BOP intervention to contain the discharge from the MC252 Well. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 366 | Admit that representatives of the United States Government approved the procedures related to the use of BOP intervention to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 367 | Admit that representatives of the United States Government participated in the development of some or all of the procedures related to the use of a cofferdam to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 368 | Admit that representatives of the United States Government reviewed the procedures related to the use of a cofferdam to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 369 | Admit that representatives of the United States Government approved the procedures related to the use of a cofferdam to contain the discharge from the MC252 Well. | SC |
| BP | RFA | 370 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to collect the discharge from the MC252 Well via the Riser Insertion Tube Tool. | SC |
| BP | RFA | 371 | Admit that representatives of the United States Government reviewed the procedures used to collect the discharge from the MC252 Well via the Riser Insertion Tube Tool. | SC |
| BP | RFA | 372 | Admit that representatives of the United States Government approved the procedures used to collect the discharge from the MC252 Well via the Riser Insertion Tube Tool. | SC |
| BP | RFA | 373 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used for the top kill operation on the MC252 Well. | SC |
| BP | RFA | 374 | Admit that representatives of the United States Government reviewed the procedures used for the top kill operation on the MC252 Well. | SC |
| BP | RFA | 375 | Admit that representatives of the United States Government approved the procedures used for the top kill operation on the MC252 Well. | SC |
| BP | RFA | 376 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used for the junk shot operation on the MC252 Well. | SC |
| BP | RFA | 377 | Admit that representatives of the United States Government reviewed the procedures used for the junk shot operation on the MC252 Well. | SC |
| BP | RFA | 378 | Admit that representatives of the United States Government approved the procedures used for the junk shot operation on the MC252 Well. | SC |
| BP | RFA | 379 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to collect the discharge from the MC252 Well via a top hat. | SC |
| BP | RFA | 380 | Admit that representatives of the United States Government reviewed the procedures used to collect the discharge from the MC252 Well via a top hat. | SC |
| BP | RFA | 381 | Admit that representatives of the United States Government approved the procedures used to collect the discharge from the MC252 Well via a top hat. | SC |
| BP | RFA | 382 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to collect the discharge from the MC252 Well via the Q4000. | SC |
| BP | RFA | 383 | Admit that representatives of the United States Government reviewed the procedures used to collect the discharge from the MC252 Well via the Q4000. | SC |
| BP | RFA | 384 | Admit that representatives of the United States Government approved the procedures used to collect the discharge from the MC252 Well via the Q4000. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 385 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to collect the discharge from the MC252 Well via the Helix Producer. | SC |
| BP | RFA | 386 | Admit that representatives of the United States Government reviewed the procedures used to collect the discharge from the MC252 Well via the Helix Producer. | SC |
| BP | RFA | 387 | Admit that representatives of the United States Government approved the procedures used to collect the discharge from the MC252 Well via the Helix Producer. | SC |
| BP | RFA | 388 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to collect the discharge from the MC252 Well via free standing riser systems. | SC |
| BP | RFA | 389 | Admit that representatives of the United States Government reviewed the procedures used to collect the discharge from the MC252 Well via free standing riser systems. | SC |
| BP | RFA | 390 | Admit that representatives of the United States Government approved the procedures used to collect the discharge from the MC252 Well via free standing riser systems. | SC |
| BP | RFA | 391 | Admit that representatives of the United States Government participated in the development of some or all of the procedures regarding the installation and use of a Capping Stack on the MC252 Well. | SC |
| BP | RFA | 392 | Admit that representatives of the United States Government reviewed the procedures regarding the installation and use of a Capping Stack on the MC252 Well. | SC |
| BP | RFA | 393 | Admit that representatives of the United States Government approved the procedures regarding the installation and use of a Capping Stack on the MC252 Well. | SC |
| BP | RFA | 394 | Admit that the installation of the Capping Stack was delayed at the request of the Government Science Team. | SC |
| BP | RFA | 395 | Admit that representatives of the United States Government participated in the development of some or all of the procedures used to test the well integrity of the MC252 Well following the installation and closure of the Capping Stack. | SC |
| BP | RFA | 396 | Admit that representatives of the United States Government reviewed the procedures used to test the well integrity of the MC252 Well following the installation and closure of the Capping Stack. | SC |
| BP | RFA | 397 | Admit that representatives of the United States Government approved the procedures used to test the well integrity of the MC252 Well following the installation and closure of the Capping Stack. | SC |
| BP | RFA | 398 | Admit that some representatives of the United States Government took the position that the Capping Stack should be re-opened on or after July 15, 2010. | SC |
| BP | RFA | 399 | Admit that representatives of the United States Government received BP's Applications for Permit to Drill both relief wells. | SC |
| BP | RFA | 400 | Admit that representatives of the United States Government reviewed BP's Applications for Permit to Drill both relief wells. | SC |
| BP | RFA | 401 | Admit that representatives of the United States Government approved BP's Applications for Permit to Drill both relief wells. | SC |
| BP | RFA | 402 | Admit that, on or before May 31, 2010, representatives of the United States Government agreed that one possible explanation for the failure of the top kill operation was that the rupture discs in the casing of the MC252 Well had failed during the Incident. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| BP | RFA | 403 | Admit that representatives of the United States Government were concerned about the integrity of the MC252 Well during the course of the Response. | SC |
| BP | RFA | 404 | Admit that, on or before May 31, 2010, representatives of the United States Government agreed with the decision to abandon the blowout preventer on blowout preventer option. | SC |
| BP | RFA | 405 | Admit that, on or before May 31, 2010, representatives of the United States Government agreed with the decision to abandon the blowout preventer on blowout preventer option based on the Government Science Team's analysis of the MC252 Well. | SC |
| BP | RFA | 406 | Admit that, on or before May 31, 2010, representatives of the United States Government agreed with the decision to abandon the blowout preventer on blowout preventer option based on analysis of the MC252 Well conducted by both BP and the Government Science Team. | SC |
| BP | RFA | 407 | Admit that scientifically reliable estimates of the flow rate for the discharge from MC252 Well require analysis of the physical condition of and flow through the Deepwater Horizon blowout preventer. | SC |
| BP | RFA | 408 | Admit that scientifically reliable estimates of the flow rate for the discharge from MC252 Well require analysis of the physical condition of and flow through the Riser. | SC |
| BP | RFA | 409 | Admit that scientifically reliable estimates of the flow rate for the discharge from MC252 Well require analysis of the physical condition of and flow through the Capping Stack. | SC |
| BP | RFA | 410 | Admit that during the Response Activities the United States Government received all data it requested from BP related to the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 411 | Admit that, on or about April 24, 2010, the United States Government released an estimate of flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 412 | Admit that, on or about April 24, 2010, RADM Mary Landry requested that BP and the United States National Oceanic and Atmospheric Administration approve a 1,000 bbl/day estimate of the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 413 | Admit that RADM Mary Landry approved the April 24, 2010 1,000 bbl/day estimate released by the Unified Command of flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 414 | Admit that, on April 24, 2010, RADM Mary Landry announced a 1,000 bbl/day estimate of the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 415 | Admit that the United States Government approved the April 24, 2010 1,000 bbl/day estimate released by the Unified Command of the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 416 | Admit that the Unified Command's April 24, 2010 1,000 bbl/day flow rate estimate could not have been released without RADM Mary Landry's approval. | SC |
| BP | RFA | 417 | Admit that the Unified Command's April 24, 2010 Unified Command flow rate estimate could not have been released without the United States Government's approval. | SC |
| BP | RFA | 418 | Admit that, on April 26, 2010, the United States Government released a 5,000 bbl/day estimate of the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 419 | Admit that the April 26, 2010 5,000 bbl/day estimate of the flow rate for the discharge from the MC252 Well was prepared by the United States National Oceanic and Atmospheric Administration, and was sent to and received by Unified Command on April 26, 2010. | SC |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|----|---------|-------|
| BP | RFA | 420 | Admit that, on April 28, 2010, RADM Mary Landry announced a 5,000 bbl/day estimate of the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 421 | Admit that the April 28, 2010 5,000 bbl/day flow rate estimate could not have been released without RADM Mary Landry's approval. | SC |
| BP | RFA | 422 | Admit that the April 28, 2010 5,000 bbl/day flow rate estimate could not have been released without the United States Government's approval. | SC |
| BP | RFA | 423 | Admit that the United States Government publicly acknowledged that the 5,000 bbl/day estimate was very rough and imprecise. | SC |
| BP | RFA | 424 | Admit that the United States Government publicly announced that the 5,000 bbl/day estimate did not constrain either the resources or tactics of the response efforts. | SC |
| BP | RFA | 425 | Admit that the United States Government created a Flow Rate Technical Group to estimate the flow rate for the discharge from the MC252 Well. | SC |
| BP | RFA | 426 | Admit that the United States Government created the Flow Rate Technical Group on or about May 19, 2010. | SC |
| BP | RFA | 427 | Admit that, on May 27, 2010, the United States Government released an estimate that the flow rate for the discharge from the MC252 Well was between 12,000 and 19,000 bbl/day. | SC |
| BP | RFA | 428 | Admit that, on June 10, 2010, the United States Government released an estimate that the flow for the discharge from the MC252 Well prior to the insertion of the RITT was between 25,000 and 30,000 bbl/day but could be as low as 20,000 bbl/day or as high as 40,000 bbl/day. | SC |
| BP | RFA | 429 | Admit that, on June 15, 2010, the United States Government released an estimate that the flow rate for the discharge from the MC252 Well was between 35,000 and 60,000 bbl/day. | SC |
| BP | RFA | 430 | Admit that, on August 2, 2010, the United States Government released an estimate that the flow rate for the discharge from the MC252 Well at the beginning of the discharge was 62,000 bbl/day and was 53,000 bbl/day immediately before the MC252 Well was capped on July 15, 2010. | SC |
| BP | RFA | 431 | Admit that the United States Government has not done a formal uncertainty analysis on the August 2, 2010 estimates identified in Request for Admission No. 426. | SC |
| BP | RFA | 432 | Admit that the United States Government had access to real-time collection rates from the RITT and LMRP Cap/Top Hat. | SC |
| BP | RFA | 433 | Admit that the United States Government had access to average collection rates from the RITT and LMRP Cap/Top Hat. | SC |
| BP | RFA | 434 | Admit that there is no generally accepted method for estimating the rate of a discharge from a subsurface well under the conditions present at the MC252 Well between April 22, 2010 and July 15, 2010. | SC |
| BP | RFA | 435 | Admit that, before the riser kink was cut, the riser kink had eroded. | SC |
| BP | RFA | 436 | Admit that, as of approximately April 28, 2010, the United States Government began monitoring air quality along the Gulf Coast in both Regions IV and VI in response to the discharge from the MC252 Well following the Incident. | SP |
| BP | RFA | 437 | Admit that, beginning on approximately April 28, 2010, United States Government monitored for VOCs, SVOCs, PM2.5 and PM10 along the Gulf Coast in response to the discharge from the MC252 Well following the Incident. | SP |
| BP | RFA | 438 | Admit that the United States Environmental Protection Agency reviewed the plan for BP's Community Air Sampling and Analysis Program. | SP |
| BP | RFA | 439 | Admit that the United States Government approved the plan for BP's Community Air Sampling and Analysis Program. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

MDL 2179
Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 440 | Admit that the data the United States Government received from the Community Air Sampling and Analysis Program did not reach detection limit levels. | SP |
| BP | RFA | 441 | Admit that the United States Government approved the demobilization of the Community Air Sampling and Analysis Program, on September 4, 2010. | SP |
| BP | RFA | 442 | Admit that the United States Government reviewed the plan for BP's Branch Area Perimeter Air Sampling Program. | SP |
| BP | RFA | 443 | Admit that the United States Government approved the plan for BP's Branch Area Perimeter Air Sampling Program. | SP |
| BP | RFA | 444 | Admit that the data the United States Government received from the Branch Area Perimeter Air Sampling Program did not reach detection limit levels. | SP |
| BP | RFA | 445 | Admit that the United States Government reviewed all plans prepared by BP for the demobilization of the Branch Area Perimeter Air Sampling Program. | SP |
| BP | RFA | 446 | Admit that the United States Government approved the demobilization of the Branch Area Perimeter Air Sampling Program, on October 8, 2010. | SP |
| BP | RFA | 447 | Admit that the United States Government sampled emissions from sites where controlled in-situ burn Response Activities occurred between July 13, 2010 and July 16, 2010. | SP |
| BP | RFA | 448 | Admit that the sampled emissions from sites where controlled in-situ burn Response Activities occurred were tested for the presence of polychlorinated dibenzodioxins and polychlorinated dibenzofurans ("dioxins and furans"). | SP |
| BP | RFA | 449 | Admit that the results of the United States' testing of emissions from sites where controlled in-situ burn Response Activities occurred showed levels of dioxins and furans equivalent or similar to ambient concentrations in United States urban areas. | SP |
| BP | RFA | 450 | Admit that the United States Government conducted onshore air monitoring in the Gulf Coast following the Incident. | SP |
| BP | RFA | 451 | Admit that the United States Government reported that the data from the onshore air monitoring in the Gulf Coast following the Incident indicated low or non-detectable levels of volatile organic compounds, to include benzene, toluene, ethylbenzene, xylenes, cyclohexane, ethyltoluene, heptanes, hexane, naphthalene, and trimethylbenzene. | SP |
| BP | RFA | 452 | Admit that, based on air monitoring conducted from May 18, 2010 to June 6, 2010, the United States Government determined that levels of EGBE (2-butoxyethanol) and dipropylene glycol monobutyl ether "were well below those that are likely to cause health effects, and suggest that the use of dispersants on the oil spill would not have a significant impact on air quality on land." | SP |
| BP | RFA | 453 | Admit that the United States Government has reopened all of the federal waters closed to fishing in response to the discharge from the MC252 Well following the Incident. | SP |
| BP | RFA | 454 | Admit that there has been no recoverable oil documented in the area of the MC252 Well (Grid C19), since August 4, 2010. | SP |
| BP | RFA | 455 | Admit that the sampling of fish, shrimp and other seafood for purposes of opening and closing commercial and recreational fisheries within federal waters, in response to the discharge from the MC252 Well following the Incident, was conducted by the United States Government and not BP. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 456 | Admit that sampling of fish, shrimp and other seafood for purposes of opening and closing commercial and recreational fisheries, in response to the discharge from the MC252 Well following the Incident, was not conducted by BP. | SP |
| BP | RFA | 457 | Admit that "[t]here is no question Gulf seafood coming to market is safe from oil or dispersant residue." | SP |
| BP | RFA | 458 | Admit that, as of October 29, 2010, the "overwhelming majority" of the seafood tested following the Incident showed "no detectable residue," and "not one of the samples" showed a "residue level that would be harmful for humans." | SP |
| BP | RFA | 459 | Admit that the United States Government received Red Algae samples collected from the RAT: Offshore Oil and Water Sampling Protocol. | SP |
| BP | RFA | 460 | Admit that the United States Government collected samples of oil and oil debris (to include oily water, oil mousse, grease, weathered oil, tarballs) for oil fingerprinting purposes following the Incident. | SP |
| BP | RFA | 461 | Admit that the United States Government received samples from "Top Kill" Mud Samples from each of the four vessels used in the Top Kill exercise. | SP |
| BP | RFA | 462 | Admit that the United States Government observed the collection of Dynamic Kill (SOMB) Mud Samples following the Incident. | SP |
| BP | RFA | 463 | Admit that the United States Government received samples from each of the three (SOMB) Mud storage tanks following the Incident. | SP |
| BP | RFA | 464 | Admit that the United States Government observed the collection of oil from the MC252 Well on August 14 and 15, 2010. | SP |
| BP | RFA | 465 | Admit that the United States Government received amber jars of sampled source oil following the Incident. | SP |
| BP | RFA | 466 | Admit that the United States Government reported that oil and oil debris (to include tarballs, oil mousse, grease, weathered oil and other petroleum based products) sampled following the Incident did not exhibit hazardous characteristics. | SP |
| BP | RFA | 467 | Admit that the United States Government received chemistry analysis provided in the form of electronic data deliverables from BP's On-Shore Surface Water Sampling Plan. | SP |
| BP | RFA | 468 | Admit that the United States Government received chemistry analysis provided in the form of electronic data deliverables from BP's Near-Shore Water and Sediment Sampling and Analysis Plan. | SP |
| BP | RFA | 469 | Admit that the United States Government approved the Submerged Oil Snare Sentinel Program, at the Houma Incident Command Post, and the Snare Sentinel Monitoring Procedures, at the Mobile Incident Command Post. | SP |
| BP | RFA | 470 | Admit that the United States Government reviewed data from samples collected as a part of the Submerged Oil Snare Sentinel Program that exhibited no evidence of subsurface oil. | SP |
| BP | RFA | 471 | Admit that the United States Government approved BP's Targeted Beach Sediment Sampling and Assessment Plan utilized at the Mobile Incident Command Center. | SP |
| BP | RFA | 472 | Admit that the United States Government received chemistry analyses provided in the form of electronic data deliverables from BP's Targeted Beach Sediment Sampling and Assessment Plan. | SP |
| BP | RFA | 473 | Admit that the United States Government drafted and conducted sampling under the Coastal Surface Water Sampling Program. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

MDL 2179

Report on US Response to Discovery as of 9/6/2011

Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 474 | Admit that the Coastal Surface Water Sampling Program did not produce any evidence that chemical levels exceeded human health benchmarks. | SP |
| BP | RFA | 475 | Admit that the sampled liquid and solid waste materials collected pursuant to the Recovered Oil/Waste Management Plan, Houma Incident Command, and the Solid Waste Management Plan, Mobile Sector, did not exhibit hazardous characteristics, as reported by the United States Environmental Protection Agency. | SP |
| BP | RFA | 476 | Admit that representatives of the United States Government reviewed all protocols that BP used to test for chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 477 | Admit that representatives of the United States Government reviewed all sampling plans that BP used to test for chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 478 | Admit that representatives of the United States Government reviewed all protocols that BP used to test levels of chemicals in the water following the Incident. | SP |
| BP | RFA | 479 | Admit that representatives of the United States Government reviewed all sampling plans that BP used to test levels of chemicals in the water following the Incident. | SP |
| BP | RFA | 480 | Admit that representatives of the United States Government approved all protocols that BP used to test for chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 481 | Admit that representatives of the United States Government approved all sampling plans that BP used to test for chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 482 | Admit that representatives of the United States Government approved all protocols that BP used to test levels of chemicals in water following the Incident. | SP |
| BP | RFA | 483 | Admit that representatives of the United States Government approved all sampling plans that BP used to test levels of chemicals in water following the Incident. | SP |
| BP | RFA | 484 | Admit that the United States Government conducted sampling to test for chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 485 | Admit that United States Government agencies conducted sampling to test for chemical exposures to the general public following the Incident. | SP |
| BP | RFA | 486 | Admit that the results of the United States Government's sampling following the Incident did not indicate any exceedances of United States Occupational Safety and Health Administration action levels for the chemicals of concern. | SP |
| BP | RFA | 487 | Admit that the results of the United States Government's sampling following the Incident did not indicate any exceedances of United States Occupational Safety and Health Administration Permissible Exposure Limits for the chemicals of concern. | SP |
| BP | RFA | 488 | Admit that no air sampling by the United States Government following the Incident has detected any hazardous chemical at levels of concern. | SP |
| BP | RFA | 489 | Admit that BP monitored for the appropriate analytes in sampling for potential chemical exposures to workers engaged in Response Activities. | SP |
| BP | RFA | 490 | Admit that the United States Government reviewed BP's training matrices for workers engaged in Response Activities. | SP |
| BP | RFA | 491 | Admit that the United States Government approved BP's training matrices for workers engaged in Response Activities. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 492 | Admit that BP incorporated all elements and revisions suggested by the United States Government related to BP's training matrices for workers engaged in Response Activities. | SP |
| BP | RFA | 493 | Admit that BP's training programs for workers engaged in Response Activities complied with all United States Occupational Safety and Health Administration occupational safety standards. | SP |
| BP | RFA | 494 | Admit that, with respect to workers engaged in Response Activities, BP complied with all United States Government standards regarding the availability, training, and use of personal protective equipment. | SP |
| BP | RFA | 495 | Admit that BP implemented all precautions that representatives of the United States Occupational Safety and Health Administration stated were necessary to protect workers engaged in Response Activities from potential hazards associated with Response Activities. | SP |
| BP | RFA | 496 | Admit that BP implemented any corrections to workplace conditions that representatives of the United States Occupational Safety and Health Administration identified as necessary to protect workers from hazards associated with Response Activities. | SP |
| BP | RFA | 497 | Admit that the National Institute for Occupational Safety and Health's quantitative exposure assessment of decontamination centers and workers determined that airborne concentrations of measured contaminants, including 2-butoxyethanol and other glycol ethers, limonene, benzene, ethyl benzene, toluene, xylenes, total hydrocarbons, diesel exhaust, PAHs, and CO were all below Occupational Exposure Limits. | SP |
| BP | RFA | 498 | Admit that the National Institute for Occupational Safety and Health determined that shore cleaning work sites had effective programs to manage potential occupational hazards of Response Activities. | SP |
| BP | RFA | 499 | Admit that personal protective equipment to prevent dermal exposure to weathered crude oil during Response Activities was used at all work sites and was available to all workers. | SP |
| BP | RFA | 500 | Admit that the National Institute for Occupational Safety and Health determined that the five Response Activity sites it visited had programs in place to reduce potential occupational hazards of wildlife cleaning work. | SP |
| BP | RFA | 501 | Admit that the National Institute for Occupational Safety and Health determined in its review of the Vessels of Opportunity ("VOO") program that airborne concentrations of measured contaminants, including benzene, 2-butoxyethanol, and carbon monoxide, were all below Occupational Exposure Limits. | SP |
| BP | RFA | 502 | Admit that the National Institute for Occupational Safety and Health determined in its review of the VOO program that health surveys obtained from Vessels of Opportunity program responders, captains, and deckhands noted health symptoms similar to those reported by workers engaged in Response Activities who had no exposures to oil, dispersants, or cleaning chemicals. | SP |
| BP | RFA | 503 | Admit that the National Institute for Occupational Safety and Health measured personal Breathing Zones during an oil skimming mission aboard the M/V Queen Bee on June 14-16, 2010, and determined that measurements were below Occupational Exposure Limits and that no workers reported acute health symptoms. | SP |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|-------|------|-----|---------|-------|
| BP | RFA | 504 | Admit that the National Institute for Occupational Safety and Health measured personal Breathing Zones during a dispersant mission aboard the M/V International Peace on June 21-16, 2010, and determined that measurements were below Occupational Exposure Limits. | SP |
| BP | RFA | 505 | Admit that, as of August 4, 2010, approximately 75 percent of the oil released from the MC252 Well had been recovered, burned, evaporated or biodegraded in the Gulf of Mexico. | SC |
| BP | RFA | 506 | Admit that the BP Deepwater Horizon Oil Budget: What Happened to the Gulf Oil?, which was released by the United States Government on August 4, 2010, was not peer reviewed. | SC |
| BP | RFA | 507 | Admit that the BP Deepwater Horizon Oil Budget: What Happened to the Gulf Oil?, which was released by the United States Government on August 4, 2010, and the Oil Budget Calculator Technical Documentation, which was released by the United States Government on November 23, 2010, were not intended to provide information about the impact of the discharge from the MC252 Well. | SC |
| BP | RFA | 508 | Admit that the BP Deepwater Horizon Oil Budget: What Happened to the Gulf Oil?, which was released by the United States Government on August 4, 2010, and the Oil Budget Calculator Technical Documentation, which was released by the United States Government on November 23, 2010, did not account for biodegradation of the discharge from the MC252 Well. | SC |
| BP | RFA | 509 | Admit that foreign-flagged MODUs are subject to the requirements of Title 33, Code of Federal Regulations (CFR), Subchapter N. | Event |
| BP | RFA | 510 | Admit that the United States Coast Guard conducted annual Certificate of Compliance (COC) examinations of the Deepwater Horizon. | Event |
| BP | RFA | 511 | Admit that annual Certificate of Compliance (COC) examinations do not provide a consistent level of information that may be of use during re-inspections by different inspectors. | Event |
| BP | RFA | 512 | Admit that the annual Certificate of Compliance (COC) examination of the Deepwater Horizon that was conducted by the United States Coast Guard on or about July 29, 2009, indicated that the Deepwater Horizon was in satisfactory condition. | Event |
| BP | RFA | 513 | Admit that the Emergency Evacuation Plan (EEP) established by BP for Mississippi Canyon Block 252, satisfied the requirements of 33 C.F.R. Part 146.210. | Event |
| APC | RFA | 59 | Admit that you have no evidence of communications on April 20, 2010 between any of the Anadarko Non Operating Party Defendants and any person on the Deepwater Horizon regarding the Macondo  Well. | Event |
| APC | RFA | 60 | Admit that you have no evidence of communications on April 20, 2010 regarding the Macondo Well between any of the Anadarko Non Operating Party Defendants and any persons or entity operating the Deepwater Horizon or drilling the Macondo Well. | Event |
| APC | RFA | 61 | Admit that you have no evidence of communications on April 20, 2010 between any of the Anadarko Non Operating Party Defendants and BP, Transocean, or Halliburton with respect to the Deepwater Horizon or the Macondo Well. | Event |
| APC | RFA | 62 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants made any design decisions relating to the Macondo Well. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases

Report on US Response to Discovery as of 9/6/2011
Attachment 2 -- Summary of Discovery Requests

| Party | Type | No | Request | Topic |
|---|---|---|---|---|
| APC | RFA | 63 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any communications leading to these decisions relating to the Macondo Well: (a) The April 2010 decision to use a long string versus a liner with tieback for the final casing segment of the Macondo Well; (b) Any cement design for the Macondo Well; (c) Any cement recipe for the Macondo Well; (d) The use of six rather than 21 centralizers on the final long string production casing for the Macondo Well; (e) The April 19-20 decision not to run a cement bond log even after having Schlumberger personnel present on the rig; (f) The Temporary Abandonment procedure sent to the rig on April 20, 2010; (g) Displacing to seawater from 3300' below mud level to above (or across) the Blow Out Preventer before performing a negative pressure test; (h) Deeming the negative pressure test a success on April 20, 2010; (i) Continuing with displacement of the riser after the final negative pressure test on April 20, 2010; (j) Setting the cement plug at 3300' below mud level, setting it in seawater rather than mud, and as part of temporary abandonment; (k) Bypassing the Sperry Sun meters on April 20, | Event |
| APC | RFA | 64 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants made any operational decisions regarding drilling the Macondo Well. | Event |
| APC | RFA | 65 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any decisions or actions regarding temporary abandonment of the Macondo Well. | Event |
| APC | RFA | 66 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in any decisions or actions regarding cementing of the long string production casing at the Macondo Well. | Event |
| APC | RFA | 67 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants were involved in decisions or actions regarding process safety (i.e. the set of processes to prevent catastrophic losses which focus on design of facilities, hazard assessment, management of change, inspection, testing, maintenance of equipment, alarms, effective process control, procedures, training, and human factors) either aboard the Deepwater Horizon or with respect to drilling of the Macondo Well. | Event |
| APC | RFA | 68 | Admit that you have no evidence that any of the Anadarko Non Operating Party Defendants ever were aboard the Deepwater Horizon while the rig was drilling the Macondo Well. | Event |
| APC | RFA | 69 | Admit that you have no evidence that the Anadarko Non Operating Party Defendants were given authority by any Person to make decisions regarding methodologies and activities and/or to control activities in connection with the relief efforts to cap, contain, or otherwise control the source of the Oil Spill after the Incident or in connection with efforts to control the fire aboard the Deepwater Horizon. | Event |
| APC | RFA | 70 | Admit that BP had exclusive authority to make all decisions concerning the cement job for the Macondo Well including decisions to approve the cementing recipes and designs submitted by Halliburton and any decisions to alter or accept those recipes or designs. | Event |
| APC | RFA | 71 | Admit that BP had exclusive authority to make all final decisions concerning the design and drilling of the Macondo Well and any decisions to alter the design or drilling of that well. | Event |
| APC | RFA | 72 | Admit that BP had exclusive authority to make all decisions concerning the selection and suitability of the *Deepwater Horizon* to complete the drilling of the Macondo Well, including but not limited to the status, configuration, use, and testing of the Blowout Preventer. | Event |

SC = Source Control and Quantification; SP = Subsequent Phases