UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**ORDER**

**[Regarding Anadarko's Motion to Compel BP (Rec. doc. 3835)]**

Anadarko seeks an order compelling BP to provide amended discovery responses. BP opposes the motion (Rec. doc. 3913). Anadarko submitted a reply (Rec. doc. 3925). After the Court ruled on Anadarko's motion to compel supplemental responses from the U.S. (Rec. doc. 3905), BP submitted a further response (Rec. doc. 3926). Since then, the parties reported they were unable to resolve their differences.

BP objects that Anadarko did not raise the issues with its responses to Requests for Admissions ("RFAs") in a timely manner. The meet and confer process prior to filing was timely. BP objects that the discovery is no longer relevant because of the order on the B1 claims. Rec. doc. 3830. Judge Barbier held that the plaintiffs failed to allege a plausible general maritime negligence claim against the non-operating defendants, Anadarko and MOEX. All general maritime negligence claims against them were dismissed. Id. at 29. The OPA claims were not dismissed because it is plausible that the non-operating defendants will be found to be responsible parties. Id. at 29, n. 12. The U.S. contends that any involvement on the part of Anadarko, or any awareness of key events or activities at the well are relevant to its claims against Anadarko. The discovery sought by Anadarko remains relevant to the parties' claims and defenses. Anadarko's motion will be considered on the merits.

Interrogatory no. 26.

    The interrogatory, in part, states:

    Identify each communication your employees had with Anadarko, on or before April 21, 2010, relating to operations on or at the Deepwater Horizon in connection with the Macondo Well. Such operations include, but are not limited to, design, drilling, cementing, temporary abandonment, etc.;[1] identify all persons involved in such communications and describe in detail the substance of each such communication and any response to or result from such communication.

Rec. doc. 3835 (Attachment at 1-2). BP objected to the breadth and burden of the interrogatory and contended that the word "operations" was vague. Subject to the objection, it stated that it would search for non-privileged communications between BP and Anadarko regarding the well from January 1, 2008 through April 21, 2010 and produce them. To respond fully, BP would be required to interview all present and former employees who might have had a conversation with an Anadarko representative concerning operations on the drilling rig. Thus, the request is too broad.

    Anadarko notes that its request for a Rule 30(b)(6) topic pertaining to all of BP's communications with Anadarko concerning operations on the drilling rig was denied. It contends the Rule 30(b)(6) topic was denied, in part, on the basis that Anadarko could secure the information through written discovery. The ruling on the Rule 30(b)(6) topic did not provide Anadarko with grounds for overbroad written discovery.

    Anadarko narrows the interrogatory as follows: (1) instead of all operations, it is limited to about thirteen subjects, for example the cement design for the production casing; (2) instead of all BP representatives, it is limited to those most likely to have had responsive oral or unwritten communications; and (3) instead of each communication, it is limited to material oral

---

[1] The interrogatory enumerates at least twelve "operations."

communications on the thirteen subjects. Even as limited by Anadarko, the interrogatory is deficient. The terms "most likely" and "material" are vague. The only way BP can protect itself from a charge of not properly answering the interrogatory is to ask everyone who might have had a conversation with an Anadarko representative concerning operations on the drilling rig.

Anadarko reports that it asked all BP deponents to identify any communications with Anadarko regarding the well. Presumably it will do so with the remaining Phase One fact witnesses. Anadarko is entitled to protection from surprise at the trial. For any person that BP presents live at the trial who has not been deposed, BP shall supplement its response to this interrogatory and state whether that person had any communications with Anadarko on the thirteen topics. If the person did have such a conversation, it shall provide the remaining information sought by the interrogatory. **BP shall supplement its response to this interrogatory within fourteen (14) calendar days of the designation of a person to testify live who has not been deposed.**

Interrogatory no. 27.

This interrogatory presents the same issue as interrogatory no. 26. It seeks a description in detail of all information provided either orally or in writing by BP's employees to Anadarko on or before April 21, 2010, regarding operations on the drilling rig. Anadarko limits it in the same manner as for interrogatory no. 26. **BP shall supplement its response to this interrogatory within fourteen (14) calendar days of the designation of a person to testify live who has not been deposed.**

3

RFA no. 5.

The RFA states:

> Please admit that prior to the explosion on the Deepwater Horizon on April 20, 2010, you did not inform APC that Halliburton had run an OptiCem model for the Macondo Well production casing cement job that concluded the use of seven (7) centralizers would lead to a severe gas flow problem.

Rec. doc. 3835 (Attachment at 9). As a result of the ruling on Anadarko's motion to compel the U.S., BP offered to amend its response to RFA no. 5. The amended response states in part:

> The BP Parties admit that a Halliburton OptiCem report on the production interval of the Macondo Well dated April 18, 2010 showed a calculation of the gas flow potential value that correlates to a "severe" rating on Halliburton's scale. The BP Parties further admit that one of the inputs to this model was that 7 centralizers would be used in cementing the production interval. The gas flow potential value that this model calculated, however, was based on numerous incorrect factors and assumptions besides the number of centralizers, their type, and their placement. The BP Parties further admit that, having conducted a reasonable inquiry, the BP Parties have not identified any communication from the BP Parties to Anadarko before April 21, 2010, conveying the calculations of the April 18, 2010 Halliburton OptiCem report. However, since there were numerous informal communications between technical personnel at BP and Anadarko, BP reserves the right to move to amend this response should such a communication be subsequently discovered. BP does not admit this request except as expressly admitted herein.

The amended response makes several changes from the original response (Rec. doc. 3835-Attachment at 9-10).

1. The prior response <u>stated</u> that BP had not identified any communications. BP now <u>admits</u> that, having conducted a reasonable inquiry, it has not identified any communication from BP to Anadarko before April 21, 2010, conveying the calculations of the Halliburton report.

2. BP's amended response deletes the statement that the information it knows or can readily obtain is insufficient to enable it to admit or deny that the information was

4

                not conveyed by it to Anadarko.

3.      It retains the qualification concerning the numerous informal communications and couples it with the statement that BP reserves the right to move to amend should such a communication be discovered.

4.      It deletes the statement that it possible that someone working for BP communicated with someone working for Anadarko on this subject.

5.      Instead of denying the request except to the extent expressly admitted, the amended response concludes with the statement that, "BP does not admit this request except as expressly admitted herein."

Fed. R. Civ. P. 36(a)(4) states in part:

> The answering party may assert lack of knowledge or information only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Id. BP's assertion that it has made reasonable inquiry is not challenged. One commentator states:

> The rule is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry.

8B Wright, Miller and Marcus, Federal Practice and Procedure §2161 at 322 (3rd ed. 2010). "Rule 36 serves two vital purposes, both of which are designed to reduce trial time." Fed. Rule Civ. P. 36 Advisory Committee's Note, 1970 amendment. BP's proposed amended response is consistent with the purpose and requirements of Rule 36.

    By **Friday, September 23, 2011**, BP shall amend its response to RFA no. 5. The amended response shall conform to BP's proposed amendment. It shall amend its responses to RFA nos. 6, 7, 12, 15-19, 22-24 and 30 in the same manner.

RFA nos. 2 and 21.

In RFA no. 2, BP was asked to admit that Anadarko did not participate in developing the cement design for the Macondo Well production casing. BP responded that: (1) it was not aware of any Anadarko personnel who worked on the cement design; and (2) pursuant to the operating agreement, Anadarko "participated" in all operations at the well. BP denied the request. RFA no. 21 is concerned with the development of the temporary abandonment plans. BP's response is similar to its response to RFA no. 2. BP argues that because of the use of "participate" in RFA no. 2 and "involved" in RFA no. 21, its responses are proper. Anadarko chose the wording of the RFAs. BP's responses to the two RFAs are appropriate.

RFA no. 9.

It provides:

Please admit that prior to the explosion on the Deepwater Horizon on April 20, 2010, you did not inform Anadarko of your decision not to spot heavy mud in the rat hole prior to pumping the cement for the Macondo Well production casing.

BP contends that because of the double negative, the RFA is misleading. It is misleading. BP's response is sufficient.

RFA no. 28.

It provides:

Please admit that you had sole responsibility to determine BP personnel issues with respect to Macondo Well design and operations.

Rec. doc. 3835 (Attachment at 23). Subject to its objections, BP responded that:

The BP Parties deny this request. The BP Parties' discretion with respect to Macondo Well personnel was limited in certain respects. For instance, BP did not have the authority to send a person with no Transportation Worker Identification Credential card to work on the Deepwater Horizon rig, and BP cannot and did not control the identity of every service provider on the Deepwater Horizon.

6

Id (emphasis added).

Anadarko contends that BP should be required to admit the response. BP urges that its denial was proper because it did not have sole control over the Transocean personnel on the rig or the personnel of other contractors. In the alternative, Anadarko contends that BP should provide all reasons why it cannot admit the RFA. Rule 36 does not require that a party provide an explanation for a denial. BP denied the request. It was not required to do anything more.

RFA nos. 25 and 26.

RFA no. 25 concerns whether Anadarko was involved in the operations of the well. RFA no. 26 concerns whether Anadarko made operational decisions regarding the well. BP denied both RFAs. It asserts that during the course of drilling, Anadarko was involved in certain aspects of the daily operation of the well (response to RFA no. 25), and Anadarko made certain decisions regarding operations at the well (response to RFA no. 26). The responses are sufficient.

Interrogatory no. 30.

For each RFA that BP did not admit without qualification, Anadarko seeks the basis for the denial. Anadarko contends that BP is required to provide each instance supporting the denials of RFA nos. 25, 26, and 28. BP argues that the interrogatory is objectionable because Anadarko's RFAs cover numerous topics, so the interrogatory is at least 31 separate interrogatories. It urges that it is improper to employ an interrogatory to provide more information than Rule 36 requires.

Interrogatory no. 30 is limited to RFAs no. 25, 26 and 28. By **Friday, September 23, 2011**, BP shall amend its response to interrogatory and provide each reason why it denied RFA nos. 25, 26 and 28. It is not required to identify all persons having knowledge of the reasons or identify all documents reflecting the reasons.

IT IS ORDERED that Anadarko's motion to compel (Rec. doc. 3835) is GRANTED in PART and DENIED in PART as provided herein.  **Any appeal of this order must be filed no later than noon on Friday, September 16, 2011.**

New Orleans, Louisiana, this 7th day of September, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**