```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    IN RE: OIL SPILL        )   MDL NO. 2179

      by the OIL RIG          )

 4    "DEEPWATER HORIZON" in  )   SECTION "J"

      the GULF OF MEXICO, ON  )

 5    APRIL 20, 2010          )   JUDGE BARBIER

                              )

 6                            )   MAG. JUDGE

                              )   SHUSHAN

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20                 VOLUME 1 OF 2

21

22       Deposition of THOMAS ROTH, taken at

23    Hilton St. Charles Hotel, 333 St. Charles

24    Avenue, Le Moyne Room, New Orleans,

25    Louisiana, on the 25th of July, 2011.
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 1 of 6

1          A.  15?

2          Q.  Yes, sir.

3                   Earlier today, there were some

4     questions about the calculations -- I

5     believe you saw this e-mail.  It's

6     May 24th, the calculations that were

7     calculated by hand.  I wanted to talk to

8     you about an earlier e-mail in this chain.

9                   If you turn four pages back,

10    there's an e-mail that's dated May 22nd

11    from Mr. Sweatman to Derrick Lewis, and

12    you're copied on that e-mail.

13              MS. HARDING:  I'm sorry?

14              MS. SULLIVAN:  It's 15.

15              MS. HARDING:  15?

16              MS. SULLIVAN:  Yes.

17         A.  Yeah.  This would be May 22 at

18    2:56 p.m.?

19         Q.  (BY MS. SULLIVAN)  That's correct.

20         A.  Okay.

21         Q.  Do you recall -- or do you

22    recognize this e-mail?

23         A.  I do.

24         Q.  Okay.  I wanted to ask you a few

25    questions about it.

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 2 of 6

1      Again, this is from

2  Mr. Sweatman to Derrick Lewis.  And he

3  states, as per your request, the key

4  members of our team are Tommy Roth,

5  Anthony Badalamenti and Simon Turton, as

6  copied.

7      What -- what team is

8  Mr. Sweatman referring to?

9      A.   About this time frame, in the

10 latter part of May, I was approached by

11 Ron Sweatman, who is a senior technical

12 adviser for Halliburton in the cementing

13 section.

14      Ron indicated that he thought

15 that it would be possible to model the

16 flow conditions that were existing on the

17 Macondo well, and I referred -- in a

18 conversation with Ron, I said I thought

19 that would be a good idea, Ron.  Let's see

20 what we can do in that area.

21      And Ron took it upon himself

22 to then follow up with several members of

23 our consulting capabilities inside of

24 Halliburton to be able to proceed with

25 this work, and I reviewed this with the

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 3 of 6

1    understanding that that's the team he's

2    referring to.

3         Q.  Okay.  So there's a reference to

4    your team.  And it's my understanding that

5    you were the team leader; is that correct?

6         A.  Yeah.  My team was basically the

7    presentations team that was responding to

8    the request for information on behalf of

9    Halliburton.  As requests would come

10   through Bob Moran and others.  Myself,

11   Simon and Anthony were three of the -- the

12   principal providers of that -- of that --

13   those presentations.

14        Q.  Okay.  So was the purpose of your

15   modeling to provide information for your

16   presentations --

17        A.  It was to --

18        Q.  -- that were made?

19        A.  -- understa- -- it was to

20   understand the conditions that were

21   existing on the well.

22             At this point, there was, you

23   know, several hypotheses that were

24   available out in the public domain that

25   potentially the well was flowing up the

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 4 of 6

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3     IN RE: OIL SPILL        )   MDL NO. 2179
       by the OIL RIG          )
 4     "DEEPWATER HORIZON" in  )   SECTION "J"
       the GULF OF MEXICO, ON  )
 5     APRIL 20, 2010          )   JUDGE BARBIER
                               )
 6                             )   MAG. JUDGE
                               )   SHUSHAN
 7
 8             REPORTER'S CERTIFICATION
 9      TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10                    THOMAS ROTH
11          I, Therese J. Casterline, Certified
12     Shorthand Reporter in and for the State of
13     Texas and the State of Louisiana, do
14     hereby certify to the following:
15          That the witness, THOMAS ROTH, was
16     duly sworn by the officer and that the
17     transcript of the oral deposition is a
18     true record of the testimony given by the
19     witness.
20          That the deposition transcript was
21     submitted on _____, 2011, to the
22     witness or to the attorney for the witness
23     for examination, signature and return to
24     Worldwide Court Reporters, Inc., by
25     _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 5 of 6

1    That the amount of time used by each

2    party at the deposition is as follows:

3         Mr. Thornhill - 4 hours, 07

4    minutes

5         Ms. Sullivan - 1 hour, 22 minutes

6         Ms. Harding - 0 hours, 48 minutes

7    I further certify that I am neither

8    counsel for, related to, nor employed by

9    any of the parties or attorneys in the

10   action in which this proceeding was taken,

11   and further that I am not financially or

12   otherwise interested in the outcome of the

13   action.

14   Subscribed and sworn to by me this

15   25th day of July, 2011.

16

17   _Therese J. Casterline_
     _____

     Therese J. Casterline, CSR, RMR, CRR

18   Texas CSR 5001, Expires 12-31-11

     Louisiana CSR 25014, Expires 12-31-11

19   WORLDWIDE COURT REPORTERS

     3000 Weslayan, Suite 235

20   Houston, Texas 77027

     1-800-745-1101

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 1
Page 6 of 6

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3     IN RE: OIL SPILL          )   MDL NO. 2179

      by the OIL RIG           )

4     "DEEPWATER HORIZON" in  )   SECTION "J"

      the GULF OF MEXICO, ON  )

5     APRIL 20, 2010            )   JUDGE BARBIER

                               )

6                              )   MAG. JUDGE

                               )   SHUSHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20                  VOLUME 1 OF 2

21

22        Deposition of THOMAS ROTH, taken at

23    Hilton St. Charles Hotel, 333 St. Charles

24    Avenue, Le Moyne Room, New Orleans,

25    Louisiana, on the 25th of July, 2011.

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 2
Page 1 of 4

1    2:07 p.m., and we're off the record.

2                 (Recess 2:07-2:27 p.m.)

3                 THE VIDEOGRAPHER:  The time is

4    2:27 p.m., and we're back on the record.

5         Q.  (BY MR. THORNHILL)  Mr. Roth, the

6    investigation of the facts regarding the

7    blowout and the preblowout activities, I

8    see in the e-mails that you were being

9    asked to describe for the press and -- and

10   others issues regarding the negative and

11   the positive tests that were run on -- on

12   this well, particularly the 7 S production

13   casing job.

14                 Do you remember that?

15        A.  I recall that, but I would like to

16   make one clarification to the information

17   that you just raised and that's the fact

18   that Halliburton never did conduct an

19   investigation, per se.

20                 We basically developed a

21   series of presentations to information

22   that was requested over a series of -- of

23   multiple months, but there never was an

24   investigation that was actually led and

25   directed by Halliburton in this effort.

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 2
Page 2 of 4

```
1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF LOUISIANA
3         IN RE: OIL SPILL        )   MDL NO. 2179
          by the OIL RIG          )
4         "DEEPWATER HORIZON" in  )   SECTION "J"
          the GULF OF MEXICO, ON  )
5         APRIL 20, 2010          )   JUDGE BARBIER
                                  )
6                                 )   MAG. JUDGE
                                  )   SHUSHAN
7
8              REPORTER'S CERTIFICATION
9        TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10                     THOMAS ROTH
11            I, Therese J. Casterline, Certified
12       Shorthand Reporter in and for the State of
13       Texas and the State of Louisiana, do
14       hereby certify to the following:
15            That the witness, THOMAS ROTH, was
16       duly sworn by the officer and that the
17       transcript of the oral deposition is a
18       true record of the testimony given by the
19       witness.
20            That the deposition transcript was
21       submitted on _____, 2011, to the
22       witness or to the attorney for the witness
23       for examination, signature and return to
24       Worldwide Court Reporters, Inc., by
25       _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 2
Page 3 of 4

1    That the amount of time used by each
2    party at the deposition is as follows:
3         Mr. Thornhill - 4 hours, 07
4    minutes
5         Ms. Sullivan - 1 hour, 22 minutes
6         Ms. Harding - 0 hours, 48 minutes
7    I further certify that I am neither
8    counsel for, related to, nor employed by
9    any of the parties or attorneys in the
10   action in which this proceeding was taken,
11   and further that I am not financially or
12   otherwise interested in the outcome of the
13   action.
14   Subscribed and sworn to by me this
15   25th day of July, 2011.
16
17   _Therese J. Casterline_
     Therese J. Casterline, CSR, RMR, CRR
18   Texas CSR 5001, Expires 12-31-11
     Louisiana CSR 25014, Expires 12-31-11
19   WORLDWIDE COURT REPORTERS
     3000 Weslayan, Suite 235
20   Houston, Texas 77027
     1-800-745-1101
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 2
Page 4 of 4

410

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
2

3    IN RE:  OIL SPILL      )     MDL NO. 2179
     by the OIL RIG,        )
4    DEEPWATER HORIZON in   )     SECTION "J"
     the GULF OF MEXICO,    )
5    April 20, 2010         )     JUDGE BARBIER
                            )
6                           )     MAG. JUDGE
                            )     SHUSHAN
7
```



```
          * * * * * * * * * * * * * *
               VOLUME 2
          * * * * * * * * * * * * * *
```

Deposition of **TIM PROBERT**, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on May 10, 2011.

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

EXHIBIT 3
Page 1 of 4

466

1          Q.     (BY MS. HARDING)  Mr. Probert,

2     yesterday you testified I think our

3     company's position is that -- with -- I'm

4     sorry, let me start over.

5               With respect to the Presidential

6     Commission finding regarding the role of

7     the Halliburton cement job and the ultimate

8     blowout, you stated that, quote, I think

9     our company's position is that the

10    characterization of the cement job led to

11    the blowout is false.

12               And what I'd like to know is --

13    I'd like to understand the foundation for

14    that statement in light of the fact that

15    there is no nonprivileged investigation

16    going on at Halliburton and the fact that

17    your privileged investigation is not

18    complete.

19         A.     I'm sorry.  I really don't

20    understand the question.

21         Q.     Okay.  You would agree with me

22    that, based on everything you've said the

23    last two days, Halliburton does not have a

24    nonprivileged investigation of the Macondo

25    well incident ongoing, correct?

467

```
 1              A.      Correct.

 2              Q.      Okay.  You've testified that

 3      there is a ongoing privileged investigation

 4      into the Macondo well incident, correct?

 5              A.      Right.

 6              Q.      Okay.  And you've not seen the

 7      results of that investigation, correct?

 8              A.      I have not.

 9              Q.      And it's not complete, correct?

10              A.      To the best of my knowledge,

11      it's not complete.

12              Q.      Okay.  But you testified

13      yesterday that our company's position is

14      that the characterization that the cement

15      job led to the blowout is false.  What's

16      the foundation for that statement?

17              A.      The foundation for that

18      statement is that poor cement jobs happen

19      all the time and they don't cause blowouts.

20      It's the inability or unwillingness to

21      remediate them that may ultimately cause

22      higher risk in the well.

23              Q.      But you're -- but that's -- my

24      point is that you're saying that -- that a

25      finding of the Presidential Commission,
```

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

EXHIBIT 3
Page 3 of 4

1              REPORTER'S CERTIFICATE

2

3              I, TAMARA CHAPMAN, Certified

4    Court Reporter, State of Texas, do hereby

5    certify that the above-mentioned witness,

6    after having been first duly sworn by me to

7    testify to the truth, did testify as

8    hereinabove set forth;

9              That the testimony was reported

10   by me in shorthand and transcribed under my

11   personal direction and supervision, and is

12   a true and correct transcript, to the best

13   of my ability and understanding;

14             That I am not of counsel, not

15   related to counsel or the parties hereto,

16   and not in any way interested in the

17   outcome of this matter.

18                    *Tamara Chapman*

19             _____
                 Tamara Chapman
20               Certified Court Reporter
                 State of Texas, CSR No. 7248
21               GAUDET KAISER, LLC
                 601 Poydras, Suite 1720
22               New Orleans, Louisiana 70130
                 T: (504) 525-9100
23               F: (504) 525-9109

24

25

GAUDET KAISER, L.L.C.
Board-Certified Court Reporters

EXHIBIT 3
Page 4 of 4

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3     IN RE: OIL SPILL        )   MDL NO. 2179

       by the OIL RIG          )

 4     "DEEPWATER HORIZON" in  )   SECTION "J"

       the GULF OF MEXICO, ON  )

 5     APRIL 20, 2010          )   JUDGE BARBIER

                               )

 6                             )   MAG. JUDGE

                               )   SHUSHAN

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20                    VOLUME 1 OF 2

21

22        Deposition of RONALD RAY FAUL, taken

23     at Pan American Life Center, 601 Poydras

24     Street, Ponchartrain Room, New Orleans,

25     Louisiana, on the 29th of June, 2011.
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 1 of 7

1    of this Macondo incident any information

2    that would show that BP told Halliburton

3    not to run the specific tests which you've

4    acknowledged were not run on the Macondo

5    production casing job?

6         A.   I have no knowledge that they

7    would have told us to not run some tests.

8         Q.   Okay.  And do you have in your

9    investigation or review of those facts any

10   indication that when Halliburton and you

11   investigated and found out the tests were

12   not run, that they issued to BP any

13   correspondence, any communication in any

14   form commenting upon Halliburton not

15   having run those tests?

16        A.   I'll object to the fact that we

17   did not conduct an investigation.  We

18   merely gathered information and, you know,

19   passed it on, but I didn't see anything in

20   there that said BP told us not to do

21   certain things.

22        Q.   Well I'm particularly interested

23   in the tests.  I don't know, my question

24   may have been poorly phrased, and I know

25   after lunch we sometimes get a little

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 2 of 7

1    Q.   Okay.  Now, it looks like in this

2    case you guys are trying to -- to get a --

3    a listing of all the cement used on the

4    various Macondo jobs, right?

5    A.   Yeah.  It looks like that he's

6    trying to get some -- some handle on how

7    much materials were delivered during that

8    process.

9    Q.   All righty.  Now, in your

10   investigation of what happened with --

11   what went wrong -- put it that way --

12   what -- in your investigation of what went

13   wrong on the production casing job, did

14   you guys look at this issue of the cement

15   degradation -- that's what I'm going to

16   call it -- the cement having gotten wet

17   and it perhaps not being mixable?

18   A.   We -- we never conducted an

19   investigation -- I never conducted an

20   investigation or was part of one that

21   would have been conducted to find out

22   what -- what went wrong.  We gathered

23   information to get timelines and -- and

24   just gather facts.  And I don't know if we

25   did an investi- -- well, I know we didn't

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 3 of 7

1      do an investigation.

2                  As far as looking at aging of

3      cement, until these reports by Ricky, I

4      did -- I never looked at any of that.

5          Q.  Okay.  Now, I don't think I asked

6      you whether you read the Chevron report.

7      Did you read the Chevron report, testing

8      the cement that was used on the Macondo

9      production casing job?

10         A.  Yes, I did read that report.

11         Q.  You did read it?  In fact, I think

12     I've got it here in a binder.  It's

13     probably number 63, just for completeness.

14                 MR. THORNHILL:  Have we

15     previously introduced this into evidence?

16                 MS. GEBHARDT:  Not this big

17     copy.

18                 MR. THORNHILL:  Okay.  This is

19     Halliburton's document 569605 through 641.

20     And for the record, we'll give it a

21     number, 3108.  That's tab 63.

22                 (Exhibit Number 3108 marked.)

23         Q.  You say you've read this report,

24     and you're looking at it now.  Tell me,

25     Mr. Faul, is this what you read as the

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 4 of 7

1    your knowledge, Halliburton conducted no

2    investigation into what happened on the

3    night of April the 20th and why that

4    occurred?

5              MR. HILL:  Object to form.

6              MR. CARLSON:  Object to form.

7         A.  I'm saying that I was not a part

8    of any ves- -- any investigation that

9    tried to determine what happened that

10   night.

11        Q.  (BY MR. GOFORTH)  Well, sir,

12   that's not -- that doesn't answer my

13   question.

14              You are a man of some

15   significance within the Halliburton

16   organization.  And I am asking you if, to

17   your knowledge, Halliburton has conducted

18   any investigation into the causes or what

19   happened on the night of April the 20th to

20   the Macondo well.

21        A.  To my knowledge, Halliburton has

22   not conducted any investigations as to

23   cause that -- that incident.

24        Q.  Or as to what happened?

25        A.  What happened in the incident.

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 5 of 7

```
 1            UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF LOUISIANA
 3    IN RE: OIL SPILL        )    MDL NO. 2179
      by the OIL RIG          )
 4    "DEEPWATER HORIZON" in  )    SECTION "J"
      the GULF OF MEXICO, ON  )
 5    APRIL 20, 2010          )    JUDGE BARBIER
                              )
 6                            )    MAG. JUDGE
                              )    SHUSHAN
 7
 8            REPORTER'S CERTIFICATION
 9    TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10              RONALD RAY FAUL
11         I, Therese J. Casterline, Certified
12    Shorthand Reporter in and for the State of
13    Texas and the State of Louisiana, do
14    hereby certify to the following:
15         That the witness, RONALD RAY FAUL,
16    was duly sworn by the officer and that the
17    transcript of the oral deposition is a
18    true record of the testimony given by the
19    witness.
20         That the deposition transcript was
21    submitted on July 29        , 2011, to the
22    witness or to the attorney for the witness
23    for examination, signature and return to
24    Worldwide Court Reporters, Inc., by
25    September 19 , 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 6 of 7

412

```
 1        I, RONALD RAY FAUL, have read the
 2   foregoing deposition and hereby affix my
 3   signature that same is true and correct,
 4   except as noted on the attached Amendment
 5   Sheet.
 6
 7                    RONALD RAY FAUL
 8   THE STATE OF  Texas  )
 9   COUNTY OF  Harris    )
10        Before me,  Ranjan Patel          ,
11   on this day personally appeared
12   RONALD RAY FAUL, known to me (or proved to
13   me on the oath of _____ or
14   through _____) to be the person
15   whose name is subscribed to the foregoing
16   instrument and executed the same for the
17   purposes and consideration therein
18   expressed.
19        Given under my hand and seal of office
20   this 7/22/2011 day of  2011      ,
21   2011.
22
23   NOTARY PUBLIC IN AND FOR
24   THE STATE OF  Texas
25   My commission expires: 5/13/2012
```

RANJAN PATEL
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 05-13-2012

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 4
Page 7 of 7

```
 1            UNITED STATES DISTRICT COURT

 2            EASTERN DISTRICT OF LOUISIANA

 3    IN RE: OIL SPILL        )   MDL NO. 2179

      by the OIL RIG          )

 4    "DEEPWATER HORIZON" in  )   SECTION "J"

      the GULF OF MEXICO, ON  )

 5    APRIL 20, 2010          )   JUDGE BARBIER

                              )

 6                            )   MAG. JUDGE

                              )   SHUSHAN

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20                  VOLUME 1 OF 2

21

22       Deposition of THOMAS ROTH, taken at

23    Hilton St. Charles Hotel, 333 St. Charles

24    Avenue, Le Moyne Room, New Orleans,

25    Louisiana, on the 25th of July, 2011.
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 1 of 8

1    test was not run on that slurry?

2              MR. HILL:  Object to form.

3        A.  The gel strength test or the foam

4    stability test?

5        Q.  (BY MR. THORNHILL)  The gel

6    strength test.

7        A.  The gel strength test.

8              No, there -- I -- I don't know

9    of any work that was done in that area.

10       Q.  Did the investigation of

11   Halliburton determine why the fluid loss

12   test was not run on that slurry?

13             MR. HILL:  Object to form.

14       A.  We discussed that within the

15   investigation team.  And the investigation

16   team is basically the presentation team

17   that developed the responses to the

18   requests for presentation.

19             Ronnie Faul, who we had

20   initially asked to do the initial review

21   on the cement, had identified that no

22   fluid loss test had been run on the foam

23   cement, but it was with the understanding

24   that foam cements have inherent good fluid

25   loss properties associated with them, such

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 2 of 8

1    that that fluid loss is typically not

2    tested on those materials.

3              So that discussion was -- was

4    had.

5        Q.  (BY MR. THORNHILL)  And so the

6    reason given was that the foam cement has

7    nitrogen in it, which it presumed to be

8    the equivalent of a fluid loss?

9        A.  The foam material being a

10   two-phase material, both liquid and gas,

11   exhibits good fluid loss properties.

12       Q.  But that's not the equivalent of a

13   fluid loss test, is it?

14       A.  A fluid loss test is performed to

15   determine how much fluid will actually

16   pass through a fine mesh screen when

17   subjected to a differential pressure.

18       Q.  And in this case, it wasn't run,

19   right?

20       A.  It was not run.

21       Q.  In this case, you had a cap and a

22   tail, with the tail being exposed to

23   synthetic oil-based mud, right?

24       A.  There would be an assumption that

25   the tail cement that's left in the shoe

1      A.   To the answers that I've provided,

2     I -- I understood the questions.

3      Q.   Okay.  Fine.  Thank you.

4           Now, with respect to the work

5     that was done by Halliburton to

6     investigate the facts after the blowout in

7     which you've been involved, my

8     appreciation of the e-mails and that which

9     you were asked to do and that which you

10    presented included your telling the press

11    and others about your understanding or, if

12    you will, the company's understanding of

13    the positive pressure test and the

14    negative pressure test; is that correct?

15     A.   Again, an investigation was not

16    conducted by Halliburton.  I did make

17    statements to a reporter for The Wall

18    Street Journal concerning positive and

19    negative testing.

20          MR. GOFORTH:  Object to the

21    responsiveness of that answer.

22          MS. HARDING:  Object to form.

23          MR. THORNHILL:  Object to form

24    as well.

25     Q.   (BY MR. THORNHILL)  Are you saying

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 4 of 8

251

1       that you were not in the role of

2       collecting facts for presenting

3       information for the National Academy, to

4       Congress and to others?

5           A.   I collected facts to present

6       multiple presentations over a series of

7       multiple months.

8           Q.   Did you honestly collect the facts

9       and present those facts?

10          A.   To the best of my ability.

11          Q.   Was it your intention to put a

12      spin on that or to simply provide raw

13      information that you collected?

14              MR. HILL:   Object to form.

15          A.   I collected the information.   I

16      put it in the presentations, and the

17      presentations are the statements that I

18      made.

19          Q.   (BY MR. THORNHILL)   Do you

20      acknowledge, sir, that your collection of

21      facts and demonstration of that which you

22      collected to others was, in fact, an

23      investigation of the facts?

24              MR. MADIGAN:   Objection as to

25      form.

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 5 of 8

1      MR. HILL:  The same objection.

2      A.  Again, we reviewed the information

3  that was available.  I put it in the form

4  of a presentation.  We communicated those

5  presentations.

6      Q.  (BY MR. THORNHILL)  Now, with

7  respect to the negative and positive

8  pressure tests, did you make

9  representations on behalf of Halliburton

10  with respect to the understanding of

11  Halliburton as to the negative and the

12  positive pressure tests?

13      A.  I made statements regarding the

14  basics of positive and negative testing.

15      Q.  And are you saying in this case

16  that you investigated information that

17  would show what took place on the Macondo

18  252 number 1 as has been described as a

19  negative pressure test and you did not

20  consider your collection of information to

21  have been an investigation of those facts?

22          MR. MADIGAN:  Objection as to

23  form.

24          MR. HILL:  Objection to form.

25      A.  As Halliburton was one of only

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 6 of 8

```
 1              UNITED STATES DISTRICT COURT
 2             EASTERN DISTRICT OF LOUISIANA
 3      IN RE: OIL SPILL       )   MDL NO. 2179
        by the OIL RIG         )
 4      "DEEPWATER HORIZON" in )   SECTION "J"
        the GULF OF MEXICO, ON )
 5      APRIL 20, 2010         )   JUDGE BARBIER
                               )
 6                             )   MAG. JUDGE
                               )   SHUSHAN
 7
 8              REPORTER'S CERTIFICATION
 9      TO THE ORAL AND VIDEOTAPED DEPOSITION OF
10                    THOMAS ROTH
11          I, Therese J. Casterline, Certified
12      Shorthand Reporter in and for the State of
13      Texas and the State of Louisiana, do
14      hereby certify to the following:
15          That the witness, THOMAS ROTH, was
16      duly sworn by the officer and that the
17      transcript of the oral deposition is a
18      true record of the testimony given by the
19      witness.
20          That the deposition transcript was
21      submitted on _____, 2011, to the
22      witness or to the attorney for the witness
23      for examination, signature and return to
24      Worldwide Court Reporters, Inc., by
25      _____, 2011;
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 7 of 8

```
 1          That the amount of time used by each
 2     party at the deposition is as follows:
 3               Mr. Thornhill - 4 hours, 07
 4     minutes
 5               Ms. Sullivan - 1 hour, 22 minutes
 6               Ms. Harding - 0 hours, 48 minutes
 7          I further certify that I am neither
 8     counsel for, related to, nor employed by
 9     any of the parties or attorneys in the
10     action in which this proceeding was taken,
11     and further that I am not financially or
12     otherwise interested in the outcome of the
13     action.
14          Subscribed and sworn to by me this
15     25th day of July, 2011.
16
17     _____
       Therese J. Casterline, CSR, RMR, CRR
18     Texas CSR 5001, Expires 12-31-11
       Louisiana CSR 25014, Expires 12-31-11
19     WORLDWIDE COURT REPORTERS
       3000 Weslayan, Suite 235
20     Houston, Texas 77027
       1-800-745-1101
21
22
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT 5
Page 8 of 8