# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | JUDGE BARBIER  MAG. JUDGE SHUSHAN |

## BP'S MOTION FOR ENTRY OF AN ORDER RELATING TO THE USE OF SAMPLE REFERENCE MATERIAL IN SUPPORT OF SPILL IMPACT RESEARCH AND CLARIFYING PTO 1

**MAY IT PLEASE THE COURT:**

BP America Inc., BP America Production Company, and BP Exploration & Production Inc. (collectively, the "BP Defendants" or "BP") respectfully move this Court for an Order clarifying PTO 1, and confirming a procedure for sharing Macondo incident oil sample reference materials with those conducting spill impact research.

This Motion is prompted by BP's desire to facilitate such research while at the same time reserving a certain portion of such reference materials for litigation testing or other uses. In essence, the Order BP proposes today allows up to 80 percent of BP's current stock of reference material to be devoted to research while holding back the remaining 20 percent.

Counsel circulated BP's proposed order to all Parties last week, asking for comments or objections by close of business September 9, 2011. This filing ensured when no Party objected or otherwise commented by that time.

## BACKGROUND

This proposed Order offers a protocol pursuant to which BP may continue to share the limited supply of oil reference materials obtained during the MC252 response with academic institutions and others researching the impact of the *Deepwater Horizon* spill, while maintaining sufficient quantities of material to comply with potential MDL 2179 or other discovery requests. BP expects this Order will allow it, among other things, to promote and facilitate research conducted pursuant to grants provided by the BP-funded and independently-administered Gulf Research Initiative (GRI). (*See* http://griresearchboard.org/index.html.)

Paragraph 14 of PTO 1 specifies the obligation of the Parties to preserve evidence relevant to this action. It requires that "each party shall take reasonable steps to preserve all documents, data and tangible things containing information potentially relevant to the subject matter of this litigation." BP has thus maintained substantial quantities of various types of oil and other materials collected during the response to the *Deepwater Horizon* spill. These quantities of oil and other materials should allow BP to satisfy appropriate discovery requests and otherwise comply with this Court's orders. At the same time, ever since the early stages of the spill response, in keeping with BP's commitment to help restore the Gulf Coast and its waters, BP has made small quantities such material available to satisfy legitimate research needs, particularly those that are time sensitive.

Naturally, however, BP has a finite quantity of Macondo oil available. Because the well is now permanently shut in, these limited quantities must necessarily be allocated to both litigation needs and research needs. BP believes that an adequate supply of both Reference Material and Surrogate Oil exist, if both substances are distributed according to a reasonable plan, and that this allocation scheme can be helped by the fact that, in addition to Macondo oil that flowed from the well, BP also has a somewhat larger amount of substitute material available with which to support academic research. (Note: BP does not currently believe that Surrogate Oil should be used for litigation testing, other than perhaps for purposes of rebutting scientifically unreliable studies that may be offered from time to time.)

BP seeks this Court's approval for a process that will allow BP to continue to assist those conducting important research in support of restoration of the Gulf Coast, while still maintaining sufficient supplies of Reference Material to satisfy litigation needs. BP's limited supply of oil sample material can be generally divided into four categories as follows:

- "Reference Material," which may include crude oil, additives used to treat the oil, dispersants, and drilling mud used in well kill efforts (aka "Top Kill Mud") collected by BP during the MC252 Response between April 20, 2010, and September 19, 2010, in the quantities and conditions as further described in Appendix A to the proposed Order;

- "Source Oil," which is a sub-set of Reference Material, is Macondo crude oil that is minimally weathered or altered, and that has been collected after the crude oil has left the reservoir, but before it has been altered (or weathered) by its passage through the water column. Source Oil may contain various chemicals used as

- additives or treating chemicals, including methanol/mono-ethylene glycol or chemical dispersants;

- "Weathered Oil," which is also a sub-set of Reference Material, is Macondo crude oil subjected to varying degrees of chemical and physical weathering as a result of passage through the water column or exposure to light, air, wave action or other processes on the surface after the crude oil has left the reservoir, but before it was collected. Weathered oil may contain various chemicals used as additives or treating chemicals, including methanol/mono-ethylene glycol or chemical dispersants; and

- "Surrogate Oil," which is Louisiana light sweet crude oil determined to be similar to the oil collected from Macondo well and collected by BP to supplement volumes of available Reference Material for purpose of scientific research and study. The proposed Order contemplates that Surrogate Oil will be managed pursuant to the proposed Order but will not be considered a sub-set of Reference Material for preservation purposes.

## DISCUSSION

Given that the amounts of material in each of the first three categories described above is finite, it makes sense to establish a regime for allocating these finite quantities to competing uses pursuant to an Order of the Court. Accordingly, BP's proposed Order accomplishes the following:

*First*, the Order establishes a method to govern BP's review of requests for samples of Reference Materials and Surrogate Oil put forward by academic researchers, government

scientists, commercial laboratories, or others.  Note that the proposed Order would apply *only* to requests for Reference Material and Surrogate Oil made by academic or other researchers, not to requests presented by MDL litigants to the request as part of the discovery process.  Under the terms of the proposed Order, those requests for materials to be used for academic research would be forwarded in the first instance to BP's Reference Material Request Manager (RMRM), who would then be responsible for implementing the review, approval, and distribution process contemplated under the Order.

The RMRM would then review the request and ensure it includes a detailed description of the proposed study and use of Reference Material.  If so, the RMRM would initiate the process under which such requests are reviewed and either granted or denied.

*Second*, the Order establishes a method to govern BP's decisionmaking as to whether to accede to or deny such requests.  Under the proposed Order, the RMRM will oversee the approval process to ensure that material is provided only when appropriate and that any material provided matches the precise need of the Requester.  The Order's procedure does this by establishing the rebuttable presumptions that existing data can be used in lieu of Reference Material, and that Surrogate Oil can be used in lieu of Source Oil.  (Note that extensive data regarding these topics is publicly and readily available through websites maintained both by BP (http://www.bp.com/sectiongenericarticle800.do?categoryId=9036592&contentId=7067598) and by the U.S. government (www.restorethegulf.gov).  Additionally, BP has made available a complete provenance of the selected surrogate oil.)  Relatedly, BP intends to request, but will not require, that Requestors agree to provide raw data generated by their research so that it can be

shared with the larger scientific community to promote a greater understanding of the spill impact.

Significantly, the procedures set forth in the proposed Order will apply to both Reference Material and Surrogate Oil, although the Order permits a variation in how much of each category of sample material needs to be preserved.  Specifically, BP's RMRM may distribute Reference Material pursuant to the proposed Order until such time as 80% of the "Initial Volume" (meaning the volume of each of the various Reference Materials described in Appendix A to this Order) has been used.  BP shall maintain the remaining 20% of the Initial Volume of Reference Material, unless and until a further order of this Court is issued to address dispensation or disposal of said Reference Material.  Finally, although Surrogate Oil shall not be subject to the same limitations on the volume distributed that apply to Reference Material, the Order still requires that BP maintain an amount equal to 5% of the Initial Volume of any Surrogate Oil collected, unless and until a further order of this Court is issued to address dispensation or disposal of the Surrogate Oil.  The proposed Order also makes clear that BP shall provide Reference Material for academic and other research purposes only where inventories of sample material are sufficient to meet all discovery requests by Parties to the litigation in the MDL.

## CONCLUSION

The proposed Order, which is unopposed by any Party, provides a reasonable procedure for governing the allocation of a finite quantity of sample material among the many requests for such material BP has received and expects to receive in the future.  Accordingly, BP respectfully requests that this Court enter an Order in the form submitted herewith.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

and

Robert R. Gasaway
Kirkland & Ellis LLP
655 Fifteenth St., NW
Washington, D.C. 20005
202-879-5000 (Tel)
202-879-5200 (Fax)

*Attorneys for BP America Inc., BP America Production Company and BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of September, 2011.

/s/ Don K. Haycraft