UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig            *    MDL No. 2179
"Deepwater Horizon" in the Gulf             *
Of Mexico, on April 20, 2010                *
                                            *    SECTION: J
                                            *
                                            *    JUDGE BARBIER
                                            *
                                            *    MAGISTRATE JUDGE SHUSHAN
                                            *
                                            *
* * * * * * * * * * *  * * * * * * * * * * *

**PRETRIAL ORDER NO. _____ RELATING TO USE OF
SAMPLE REFERENCE MATERIAL IN SUPPORT OF
SPILL IMPACT RESEARCH AND CLARIFYING PTO 1**

WHEREAS, Paragraph 14 of PTO 1 requires each party to "take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation;" and

WHEREAS, this obligation includes preserving reasonable quantities of oil and other substances collected from the Macondo well; and

WHEREAS, it is proper for the Court to offer guidance to the parties as to reasonable uses and dispositions of substances and materials retained pursuant to PTO 1 Paragraph 14;

NOW THEREFORE, considering BP's Motion for an order governing the distribution of certain sample Reference Material to be used for studies to advance environmental impact assessments and related scientific research associated with the MC252 *Deepwater Horizon* spill, it is hereby ORDERED that the Motion is GRANTED, and this Court orders as follows:

**A.     DEFINITIONS**

**1.** "Reference Material" shall mean for purposes of this Order material collected by BP or its contractors during the MC252 Response between April 20, 2010, and September 19, 2010, that was used or released during the incident, including crude oil, additives used to treat the oil, dispersants, and drilling mud used in well kill efforts, which is sometimes known as "Top Kill Mud."

**2.** "Surrogate Oil" shall mean for purposes of this Order Louisiana light sweet crude oil that is similar to the oil collected from the Macondo well and collected by BP to supplement available Reference Material for purposes of scientific research and study.  Surrogate Oil shall be managed pursuant to this Order but shall not be considered a sub-set of Reference Material.

**3.** "Source Oil" is a sub-set of Reference Material and shall mean for purposes of this Order Macondo crude oil that is minimally weathered or altered and that was collected after the crude oil left the well but before it was significantly altered by the passage through the water column.  (Defined in this manner, Source Oil may contain various additives or treating chemicals, including methanol or chemical dispersants.)

**4.** "Weathered Oil" is a sub-set of Reference Material and shall mean for purposes of this Order Macondo crude oil subjected to varying degrees of chemical and physical weathering as a result of passage through the water column or exposure to light, air, wave action or other processes below or on the ocean surface after the Macondo crude oil left the reservoir but before it was collected by BP or its contractors.  (Defined in this manner, Weathered Oil may contain various additives or treating chemicals, including methanol or chemical dispersants.)

**5.** The volumes of Reference Material and Surrogate Oil described in Appendix A to this Order shall be referred to as the "Initial Volume."

**B.    REFERENCE MATERIAL REQUESTS**

6.    This Order shall apply to the inventory of Reference Material described in Appendix A and to all Surrogate Oil collected by BP during the pendency of MDL 2179. (The quantity and condition of Reference Material currently in BP's possession is further described in Appendix A to this Motion.)

7.    This Order shall govern BP's decisionmaking in response to requests from academic researchers, government scientists, commercial laboratories, litigants, or others, for samples of Reference Materials and Surrogate Oil. However, this Order shall not apply to discovery requests presented to BP by MDL Parties.

8.    All requests for Reference Material subject to this Order shall be made to BP's Reference Material Request Manager ("RMRM"). The RMRM will be responsible for implementing the review, approval, and distribution of Reference Material and Surrogate Oil. The BP RMRM shall oversee the approval process for requests for Reference Material and Surrogate Oil, other than requests presented by MDL Parties as part of discovery, pursuant to the process described herein. All requests for Reference Material shall be made by using a request form that includes the information contained in Appendix B to this Order.

9.    All Requests for Reference Material must provide the RMRM with a detailed description of the proposed study and use of Reference Material, including a detailed discussion of the purpose and objectives of the proposed study, the analytical methods to be used, the analytical data quality objectives, the proposed methods of data analysis and the intended method and forum of publication, if any.

## C. DECISIONS ON REFERENCE MATERIAL REQUESTS

10. There is a rebuttable presumption that existing data can be used in lieu of Reference Material. There also is a rebuttable presumption that Surrogate Oil can be used in lieu of Source Oil. The RMRM will discuss with a Requestor whether data or Surrogate Oil will satisfy the intended study design. Only where a Requestor can show that existing data or Surrogate Oil cannot satisfy the Requestor's intended study design will the RMRM consider recommending that BP provide Source Oil or other Reference Material. Provision of samples of Reference Material or Surrogate Oil shall be contingent upon a sufficient quantity of the requested type of material being in the Available Inventory; "Available Inventory" is Reference Material or Surrogate Oil that is available without sub-sampling. BP shall have no obligation to sub-sample large containers to provide smaller volumes to satisfy Reference Material or Surrogate Oil requests.

11. In the event a request for Reference Material is denied, the RMRM shall provide the Requestor with a written notification of the denial. In the event a request for Reference Material is granted, Reference Material shall be released to a Requestor only upon the execution of the Sample Agreement and Release, an example of which is attached hereto as Appendix C. BP shall make its best effort to ship approved requests to a requestor within twenty (20) days after receipt by the RMRM of the properly-executed Sample Agreement and Release.

## D. RETENTION OF REFERENCE MATERIAL FOR LITIGATION AND OTHER USES

12. BP's RMRM shall have the discretion to distribute Reference Material pursuant to this Order until such time as the 80% of the Initial Volume has been utilized. BP shall maintain an amount equal to 20% of the Initial Volume of Reference Material unless and until a further order of this Court is issued to address dispensation or disposal of said Reference Material.

13. Paragraphs 8 through 11 above shall apply to the distribution of the Surrogate Oil inventory. Surrogate Oil shall not be subject to limitations on the volume distributed, except that BP shall maintain an amount equal to 5% of the Initial Volume of any Surrogate Oil collected unless and until a further order of this Court is issued to address dispensation or disposal of said Surrogate Oil.

IT IS SO ORDERED this _____ day of _____, 2011, at New Orleans, Louisiana.

_____
UNITED STATES DISTRICT JUDGE