## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | MDL No. 2179 |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico on April 20, 2010** | * | Section: J |
| | * | |
| | * | **JUDGE BARBIER** |
| **Applies to:** | * | |
| *All Cases* | * | |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| * * * * * * * * * * * * | | |

### DEFENDANT MOEX USA CORPORATION'S BRIEF IN RESPONSE TO THE COURT'S ORDER DATED SEPTEMBER 1, 2011

Jack McKay
jack.mckay@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone (202) 663-8439
Facsimile (202) 663-8007

**COUNSEL FOR MOEX USA CORPORATION**

# TABLE OF CONTENTS

Page

I. Introduction and Background ................................................................................................1

II. The Local Governments' Claims Against MOEX USA Must Be Dismissed .......................................................................................................................2

III. The Bundle B3 Claims Against MOEX USA Must Be Dismissed .....................................3

IV. Louisiana's Claims Against MOEX USA Must Be Dismissed ...........................................4

V. Alabama's Claims Against MOEX USA Must Be Dismissed .............................................5

VI. Transocean's Cross-Claims Against MOEX USA Must Be Dismissed .......................................................................................................................6

VII. Halliburton's Cross-Claims Against MOEX USA Must Be Dismissed .......................................................................................................................7

VIII. Dril-Quip's Cross-Claim Against MOEX USA Must Be Dismissed ..................................7

IX. M-I's Cross-Claims Against MOEX USA Must Be Dismissed ..........................................8

X. Conclusion ............................................................................................................................8

Defendant MOEX USA Corporation ("MOEX USA") respectfully submits this Brief in response to the Court's Order (Doc. 3890) inviting briefing as to "what effect, if any" the Court's decision dated August 26, 2011 (the "Decision"; Doc. 3830) has on other Motions to Dismiss pending in this MDL.

**I.     Introduction and Background**

MOEX USA agrees fully with the brief submitted by MOEX Offshore 2007 LLC ("Offshore"), and adopts Offshore's arguments herein. To save the Court time and effort, MOEX USA will not repeat Offshore's arguments here, but rather will focus on those additional points that apply to MOEX USA separately.

The B1 Complaint did not contain any specific allegations of wrongdoing against MOEX USA, which is the parent company of Offshore.[1]  MOEX USA was not a participant in the Operating Agreement. It was not a lessee of the Macondo Prospect. It had no role in the activities that led to the blowout. It had no role in the post-explosion clean-up efforts.

The B1 Complaint, which was the subject of the Decision, asserted only one basis for naming MOEX USA as a defendant: MOEX USA allegedly was "part of the corporate construct by which MOECO owns, dominates, controls, and benefits from the activities of MOEX Offshore."  Doc. 1128 at ¶236. Even as a veil-piercing allegation, to say simply that a defendant is "part of [a] corporate construct" falls far short of the minimum necessary to overcome a motion to dismiss. The B1 Complaint, then, should have been dismissed as against MOEX USA not only on the merits, but also because it failed to allege any actionable conduct by MOEX USA.

---

[1] In turn, the shares of MOEX USA are owned by Mitsui Oil Exploration Co., Ltd. ("MOECO").

The other claims, cross-claims and third-party claims filed against MOEX USA in the MDL suffer from similar defects. Therefore, to the extent that any claims are not resolved in MOEX USA's favor by the reasoning in the Decision, those pleadings nonetheless should be dismissed as against MOEX USA because they fail to state claims upon which relief may be granted.

## II.   The Local Governments' Claims Against MOEX USA Must Be Dismissed

The Bundle C Complaint (Doc 1510) asserted the following claims against MOEX USA (or an undefined "MOEX") on behalf of a putative class of local governments: (i) negligence under general maritime law (Claim I.A, ¶¶542-85); (ii) damages and removal costs under the Oil Pollution Act of 1990 ("OPA") (Claim II; ¶¶659-69); (iii) damages under the Louisiana Oil Spill Prevention and Response Act and civil penalties under the Louisiana Wildlife and Fisheries statute (Claim III.F; ¶¶727-37); and (iv) damages and response costs under the Texas Oil Spill Prevention and Response Act (Claim III.G; ¶¶738-46). The complaint contained a separate claim for punitive damages, but only against BP, Transocean and Halliburton (Claim IV; ¶¶747-68). Still, the Prayer for Relief sought such damages from "Defendants, jointly, severally, and solidarily" (p.150 ¶(b)).

The claims for maritime negligence, claims brought under Florida, Louisiana and Texas statutory law, and allegations of punitive damages should be dismissed as against MOEX USA. As set forth in §II of Offshore's Brief, those claims are defeated by the Decision's reasoning.

Any remaining claims should be dismissed as against MOEX USA because the Bundle C complaint does not contain any substantive allegations against MOEX USA. Consequently, as to MOEX USA, the Bundle C Complaint fails to meet the pleading

requirements of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007).

Like the Bundle B1 Complaint, the local governments in Bundle C state that "MOEX USA is named as a defendant herein because it is part of the corporate construct by which MOECO owns, dominates, controls and benefits from the activities of MOEX Offshore." Doc. 1510 at ¶205. The inadequacy of this allegation was highlighted in MOEX USA's motion to dismiss. *See* Doc. 2221-1 at 1-2; Doc. 3563 at 1-3. Even when considered as an attempt to pierce the corporate veil, the Bundle C Complaint is directed against MOECO, not MOEX USA. *See, e.g.,* Doc. 1510 at ¶206 (requesting that "the liability of MOEX Offshore and/or MOEX USA be imputed to MOECO"). Regardless of whether MOEX USA's liability may be "imputed" to another company, the Bundle C plaintiffs allege no ground for holding MOEX USA liable in the first place.

**III.    The Bundle B3 Claims Against MOEX USA Must Be Dismissed**

The B3 plaintiffs' First Amended Complaint (Doc. 1812) asserted claims on behalf of a putative class seeking recovery for personal injury and/or medical monitoring based on "post-explosion clean-up efforts." *See* PTO 11 [CMO #1] (Doc. 569) at ¶III.B3; PTO 25 (Doc. 983) ¶1. The B3 plaintiffs have sued MOEX USA for (i) negligence under general maritime law (First Claim; ¶¶216-22); (ii) negligence (Third Claim; ¶¶240-49); (iii) gross negligence (Fourth Claim; ¶¶250-57); (iv) negligence *per se* (Fifth Claim; ¶¶258-63); (v) nuisance (Seventh Claim; ¶¶280-92); (vi) battery (Eighth Claim; ¶¶293-98); medical monitoring under Florida law (Ninth Claim; ¶¶299-309); and (vii) punitive damages (Eleventh Claim ¶¶328-53).

As set forth in §III of Offshore's Brief, the Decision requires dismissal of the First, Third, Fourth and Fifth Claims because MOEX USA owed no tort duties that would give

3

rise to a claim of negligence. The Ninth Claim for medical monitoring must be dismissed because it is brought under state law, and the Eleventh Claim for punitive damages must be dismissed because, absent ordinary negligence, MOEX USA cannot be guilty of gross negligence.

The entire B3 Bundle Complaint should also be dismissed as against MOEX USA because it pleads no plausible basis for holding MOEX USA liable. The Bundle B3 complaint contains no substantive allegations against MOEX USA. That is not surprising, since MOEX USA had no involvement in the post-explosion clean-up efforts that are the pleading's subject. This point was previously advanced by MOEX USA, *see* Doc.1416-1 at 10-12, and it independently supports dismissal.

The Bundle B3 plaintiffs, like those in Bundles B1 and C, allege only that "MOEX USA is named as a defendant herein because it is part of the corporate construct by which MOECO owns, dominates, controls, and benefits from the activities of MOEX Offshore." Doc. 1812 at ¶46. Merely being part of a "corporate construct" is not a ground for liability, even through veil-piercing. Moreover, the B3 Bundle's veil-piercing allegations are directed against MOECO, not MOEX USA. *See, e.g.,* Doc. 1812 at ¶46 (alleging that "the liability of MOEX Offshroe and/or MOEX USA [should] be imputed to MOECO").

## IV.     Louisiana's Claims Against MOEX USA Must Be Dismissed

The State of Louisiana's First Amended Complaint (Doc. 2031) asserted ten categories of claims against MOEX USA: (i) damages and removal costs under OPA (Counts I , V; ¶¶153-67, 195-221) and LOSPRA (Counts II, VI; ¶¶168-80 222-38); (ii) civil penalties under various Louisiana statutes (Count III; ¶¶181-89); (iii) response costs under Louisiana law (Count IV; ¶¶190-194); (iv) maritime negligence (Count VII; ¶¶239-48); (v) public and private nuisance under maritime law (Count VIII; ¶¶249-58); (vi)

4

trespass under maritime law (Count IX; ¶¶259-69); (vii) negligence under Louisiana law (Count XI; ¶¶293-300); nuisance under Louisiana law (Count XII; ¶¶301-07); (viii) trespass (Count XIII; ¶¶308-15); strict liability under Louisiana law (Count XIV; ¶¶316-22); (ix) abnormally dangerous or ultrahazardous activity (Count XV; ¶¶323-27); and (x) unjust enrichment under Louisiana law (Count XXIII; ¶¶379-85).

As argued in §V of Offshore's Brief, the Decision requires dismissal of the State law claims in Counts II, III, VI, XI, XII, XIV and XXIII; the maritime negligence claim in Count VII; and the ultrahazardous activity claim in Count XV.

Louisiana made no separate allegations against MOEX USA. Rather, its claims against MOEX USA are based upon a single, conclusory, veil-piercing allegation. *See* Doc. 2031, ¶25.  That allegation is not even directed against MOEX USA, but rather alleges that MOECO is "an alter ego of its subsidiaries." *Id.*  MOEX USA separately argued that this allegation failed to state a claim against it, even for veil-piercing. *See* Doc. 2651-1 at 1-2; Doc. 3561 at 1.  That argument remains for judicial resolution.

**V.  Alabama's Claims Against MOEX USA Must Be Dismissed**

The State of Alabama's First Amended Complaint (Doc. 1887) asserted causes of action against MOEX USA for (i) maritime negligence (§I.A; ¶¶94-135); (ii) gross negligence and willful misconduct under maritime law (§I.B; ¶¶136-47); (iii) claims for damages and removal costs under OPA (§II; ¶¶205-19); and (iv) claims under various Alabama statutes and common law theories (§§III.H-N; ¶¶282-345). Alabama asserted a separate claim for punitive damages only against BP, Transocean and Halliburton (¶¶346-68), but the Prayer for Relief sought such damages against all Defendants, "jointly, severally, and solidarily" (p.80 ¶3).

For the reasons in §VI of Offshore's Brief, the Decision requires dismissal of Alabama's State law claims; its claims for negligence and gross negligence under maritime law; and its request for punitive damages.

Further, Alabama failed to plead any conduct by MOEX USA that would support liability. Rather, it relied solely on general, conclusory allegations of veil-piercing. *See* Doc. 1887, ¶29. Those allegations were directed against MOECO rather than MOEX USA. *See id.* (alleging that "MOECO is an alter ego of its subsidiaries" and that "all liability of … MOEX USA" should be "imputed to MOECO"). Nothing in Alabama's complaint, if proven, would establish that MOEX USA is liable for anything. *See* Doc. 2653-1 at 1-2; Doc. 3562 at 1-2. The Decision did not resolve that ground for dismissal.

## VI. Transocean's Cross-Claims Against MOEX USA Must Be Dismissed

Transocean has asserted cross-claims against MOEX USA in the Limitation Action (Doc. 2068) and third-party claims against MOEX USA in the United States' lawsuit (Doc. 2574). It seeks recovery for (i) indemnity (Doc. 2574 ¶44; Doc. 2068 ¶¶67-68); (ii) contribution/comparative fault (Doc. 2574 ¶45; Doc. 2068 ¶¶69-70); (iii) contribution under OPA (Doc. 2574 ¶57; Doc. 2068 ¶¶84-85); and (iv) subrogation under OPA (Doc. 2574 ¶58; Doc. 2068 ¶¶86-87). MOEX USA has moved to dismiss Transocean's cross-claims and third-party claims (Doc. 2878; 2477).

As set forth in §VII of Offshore's Brief, the reasoning and holdings in the Decision defeat Transocean's claims for indemnity and contribution under maritime law, and contribution and subrogation under OPA. To the extent the Court finds that any portion of Transocean's cross-claims survives the Decision, it should reach the separate grounds for dismissal cited in Offshore's Brief.

In addition, as MOEX USA previously argued, Transocean failed to make any specific allegations against MOEX USA that would support liability under any theory. *See* Doc. 2878-1 at 1-2; Doc. 2477-1 at 8-9, 10-14. Transocean's cross-claims and third-party claims should be dismissed as against MOEX USA for that separate reason.

## VII.   Halliburton's Cross-Claims Against MOEX USA Must Be Dismissed

Halliburton has asserted cross-claims (Doc. 445) based on (i) contribution and indemnity (Count I; ¶¶33-36) and (ii) negligence, gross negligence and willful misconduct (Count III; ¶¶41-42). For the reasons stated in §VIII of Offshore's Brief, those cross-claims do not survive the Decision.

In addition, as MOEX USA argued separately (*see* Doc. 2885-1 at 1-2), Halliburton's cross-claims do not contain any specific, factual allegation that MOEX USA committed a wrongful act or should be held liable for the obligations of its subsidiary. Halliburton's cross-claims against MOEX USA should be dismissed for that separate reason.[2]

## VIII.   Dril-Quip's Cross-Claim Against MOEX USA Must Be Dismissed

Dril-Quip's cross-claim against MOEX USA is solely for contribution. Doc. 2467 ¶¶39-42. For the reasons cited in §IX of Offshore's Brief, that cross-claim does not survive the Decision. In addition, as MOEX USA argued separately (Doc.2892-1 at 1-3), Dril-Quip's cross-claim contains no specific allegation of fault, statutory liability or contractual liability against MOEX USA, and the assertion that MOEX USA was "part of [a] corporate construct" (Doc. 2467, ¶36) is insufficient as a matter of law to support veil-piercing. Therefore, Dril-Quip has failed to state a claim upon which relief can be granted.

---

[2] Halliburton's assertion that MOEX USA was a party to the Operating Agreement is contradicted by the terms of that document. *Compare* Doc. 445 ¶46 *with* Doc. 2885-1 at 1-2 & n.3.

### IX.     M-I's Cross-Claims Against MOEX USA Must Be Dismissed

M-I's cross-claims (Doc. 2531) seek to recover from MOEX USA for contribution and indemnification. For the reasons stated in §X of Offshore's Brief, those claims are foreclosed by the Decision.  Additionally, MOEX USA separately argued that M-I's cross-claims contain no specific allegations that MOEX USA committed any wrongful act, nor do they express any ground for holding MOEX USA liable for the obligations of its subsidiary.  *See* Doc. 2905-1 at 1-2.  M-I's cross-claims should be dismissed as against MOEX USA for that independent reason.

### X.     Conclusion

For the foregoing reasons, MOEX USA's motions to dismiss should be granted.

Dated:  September 12, 2011

Respectfully submitted,

  /s/      Jack McKay
Jack McKay
jack.mckay@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone (202) 663-8439
Facsimile (202) 663-8007

**COUNSEL FOR MOEX USA CORPORATION**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on September 12, 2011.

_____/s/   Jack McKay_____