L

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | * * * * | MDL No. 2179 |
| | * | Section: J |
| | * | JUDGE BARBIER |
| Applies to: *All Cases* | * * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| * * * * * * * * * * * * | | |

## DEFENDANT MOEX OFFSHORE 2007 LLC'S BRIEF IN RESPONSE TO THE COURT'S ORDER DATED SEPTEMBER 1, 2011

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Ph. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
chrismcnevin@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

L

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | Introduction and Background | 1 |
| II. | The Local Governments' Claims Against Offshore Must Be Dismissed | 2 |
| III. | Most of the Bundle B3 Claims Against Offshore Were Resolved by the Decision, and Must Be Dismissed | 4 |
| IV. | The Bundle A Personal Injury Claims Must Be Dismissed | 5 |
| V. | Louisiana's Claims Against Offshore Must Be Dismissed | 5 |
| VI. | Alabama's Claims Against Offshore Must Be Dismissed | 7 |
| VII. | Transocean's Cross-Claims Against Offshore Must Be Dismissed | 8 |
| VIII. | Halliburton's Cross-Claims Against Offshore Must Be Dismissed | 9 |
| IX. | Dril-Quip's Cross-Claim Against Offshore Must Be Dismissed | 9 |
| X. | M-I's Cross-Claims Against Offshore Must Be Dismissed | 10 |
| XI. | Weatherford's Cross-Claims Against Offshore Must Be Dismissed | 10 |
| XII. | Conclusion | 10 |

L

Defendant MOEX Offshore 2007 LLC ("Offshore") respectfully submits this Brief in response to the Court's Order (Doc. 3890) inviting briefing as to "what effect, if any" the Court's decision dated August 26, 2011 (the "Decision"; Doc. 3830) "has on other Motions to Dismiss pending in this MDL."

### I.    Introduction and Background

The B1 Plaintiffs' Amended Complaint (Doc. 1128) asserted three claims against Offshore: (i) *negligence* under general maritime law (Claim I.A, ¶¶569-626); (ii) liability under the *Oil Pollution Act*, 33 U.S.C. §2701 *et seq.* ("OPA") (Claim II, ¶¶678-690); and (iii) strict liability under *state law,* Florida's Pollutant Discharge Prevention and Control Act ("FPDPCA"), Fla. Stat. §376.011 *et seq*. (Claim III.D, ¶¶732-747). The complaint contained a separate claim for *punitive damages*, but only against BP, Transocean and Halliburton (Claim IV, ¶¶748-769). Still, the Prayer for Relief purported to demand punitive damages from all Defendants, "jointly, severally, and solidarily" (p. 194, ¶(b)).

Addressing motions to dismiss the B1 Complaint, the Decision made the following rulings relevant to Offshore:

1. *Federal maritime law* applies to this case and State law is inapplicable. "State law, both statutory and common, is preempted by maritime law" and, as a result, "[a]ll claims brought under state law are dismissed." Decision at 38; *accord id.* at 11, 15, 18.[1]

2. All *maritime law claims for negligence* against Offshore, based on its access to information concerning the well, were dismissed. Decision at 28-29, 39. Following the Fifth Circuit's holding in *Ainsworth v. Shell Offshore,* 829 F.2d 548, 549-50 (5th Cir. 1987). As the Court explained:  "[I]t is not alleged that [Offshore] had anyone present on the DEEPWATER HORIZON. Under the [Operating Agreement], BP was solely responsible for the drilling operations. Any access to information that [Offshore] may have had did not give rise to a duty to intercede in an independent contractor's operations – especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and

---

[1] Additionally, all maritime law claims for economic loss without accompanying physical injury were dismissed under the rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Decision at 19-20, 24-25, 38.

>  Transocean personnel either onshore or on the rig." Decision at 28. The Court further noted that "[o]ffshore drilling operations are not considered ultra-hazardous." *Id.*

3. Plaintiffs may bring claims for *punitive damages* under general maritime law, but such claims would require a showing of gross negligence. *Id.* at 20, 27.

4. *OPA* claims against Offshore were not dismissed because "it is plausible that [Offshore] will be found to be [a] Responsible Part[y] and thus liable under OPA." *Id.* at 29 n.12. Under OPA, it is "a mandatory condition-precedent" that plaintiffs' claims be presented to the responsible parties. Decision at 31; *see id.* at 26 ("all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure"); 29 ("OPA claimants must first 'present' their OPA claim to the Responsible Party before filing suit"); 38. Although "[i]n the ordinary case, the Court would simply dismiss those claims without prejudice," the Court declined to "sort through in excess of 100,000 individual B1 claims to determine which ones should be dismissed at the current time." *Id.* at 30-31.

As set forth below, those rulings require immediate dismissal of most claims brought against Offshore.

## II.   The Local Governments' Claims Against Offshore Must Be Dismissed

The Bundle C Complaint (Doc 1510) asserted the following claims against Offshore on behalf of a putative class of local governments: (i) negligence under general maritime law (Claim I.A, ¶¶542-85); (ii) damages and removal costs under OPA (Claim II; ¶¶659-69); (iii) damages under the Louisiana Oil Spill Prevention and Response Act ("LOSPRA"), La. R.S. 30:2451 *et seq.* and civil penalties under the Louisiana Wildlife and Fisheries statute, La. R.S. 56:40.1 *et seq.* (Claim III.F; ¶¶727-37); and (iv) damages and response costs under the Texas Oil Spill Prevention and Response Act, Tex. Nat. Res. Code Ann. §40.001 *et seq.* (Claim III.G; ¶¶738-46). The complaint contained a separate claim for punitive damages, but only against BP, Transocean and Halliburton (Claim IV; ¶¶747-68). Still, the Prayer for Relief sought such damages from "Defendants, jointly, severally, and solidarily" (p.150 ¶(b)).

  Negligence. Claim I for negligence must be dismissed because the Decision

2

recognizes that Offshore, as a non-operating party, owed no tort duties in connection with its alleged access to information concerning the operations of its independent contractor, BP. Decision at 28-29, 39. Such access is the specific ground alleged by the Bundle C Plaintiffs for holding Offshore liable for negligence. *See* Doc. 1510 ¶546.

State Law Claims. Claims III.F and III.G were brought under Louisiana and Texas law respectively, and must be dismissed because the Decision establishes that state law does not govern. *See* Decision at 15, 18, 38.

Punitive Damages. The demand for punitive damages should be dismissed, to the extent it applies to Offshore. Offshore was not negligent (Decision at 28-29, 39), and thus it cannot have been guilty of gross negligence, which the Decision establishes is the predicate for award of punitive damages (*id.* at 20, 27).

OPA. Offshore sought dismissal of the local governments' OPA claims based on lack of presentment. *See* Doc. 2220-1 at 9-10. Applied to the local governments, the presentment argument does not raise the logistical issues that it did for the Bundle B1 complaint. Although the Bundle C complaint was brought as a putative class action, the number of local governments that have joined the lawsuit is limited, and whether those entities presented claims to Offshore is easily determined. The Court should require each Bundle C plaintiff to demonstrate, as a condition of maintaining OPA claims against Offshore, that its claim was properly presented to Offshore. If a local government fails to make such a showing, its OPA claim against Offshore should be dismissed.

Remaining Issues. With respect to the OPA allegations in Claim II, Offshore previously moved to dismiss because the local governments failed to allege that they actually incurred removal costs. *See* Doc. 2220-1 at 10-12. That argument remains to be

resolved by the Court.[2]

### III. Most of the Bundle B3 Claims Against Offshore Were Resolved by the Decision, and Must Be Dismissed

The B3 plaintiffs' First Amended Complaint (Doc. 1812) asserted claims on behalf of a putative class seeking recovery for personal injury and/or medical monitoring based on "post-explosion clean-up efforts." *See* Doc. 569 ¶III.B3; Doc. 983 ¶1. The B3 plaintiffs have sued Offshore for (i) negligence under general maritime law (First Claim; ¶¶216-22); (ii) negligence (Third Claim; ¶¶240-49); (iii) gross negligence (Fourth Claim; ¶¶250-57); (iv) negligence *per se* (Fifth Claim; ¶¶258-63); (v) nuisance (Seventh Claim; ¶¶280-92); (vi) battery (Eighth Claim; ¶¶293-98); medical monitoring under Florida law (Ninth Claim; ¶¶299-309); and (vii) punitive damages (Eleventh Claim ¶¶328-53).

Negligence. The Decision requires dismissal of the First Claim for maritime negligence, because the Court has held that Offshore did not owe a duty based on its alleged access to information about the activities of its independent contractor, BP. *See* Decision at 28-29, 39. Such access is the specific ground alleged by the Bundle B3 Plaintiffs for liability against Offshore. *See* Doc. 1812 ¶¶219-220.

To the extent the Third, Fourth and Fifth Claims (for negligence, gross negligence and negligence *per se*, respectively) are based on maritime law, the Decision likewise requires their dismissal because Offshore did not owe tort duties in connection with its access to information. Decision at 28-29, 39. If those negligence claims are based upon State law, they must be dismissed because State law does not govern (*id.* at 15, 18, 38).

---

[2] Prior to the issuance of PTO #33 (Doc. 1549), which stayed the pleading requirement in such cases, Offshore filed a consolidated motion to dismiss the claims of three Cities and three Mexican States. Doc. 1421. In light of the Decision, that motion should be granted: State law does not govern (Doc. 1426 §III.A); the OPA claims were not properly presented (*id.* §III.B); and Offshore is not liable for negligence (*id.* §III.C). To the extent that any claim of the Cities or Mexican States is found to survive the Decision, the Court should reach Offshore's arguments concerning pleading defects (*see id.*).

The inapplicability of State law also defeats the Ninth Claim for medical monitoring.

<u>Punitive Damages</u>. The Eleventh Claim for punitive damages must be dismissed as against Offshore because Offshore cannot be liable for gross negligence if it is not guilty of ordinary negligence. *See* Decision at 28-29, 39.

<u>Remaining Issues</u>. The Decision did not address claims for nuisance or battery. As Offshore's motion to dismiss the battery claim pointed out, the B3 Complaint established that Offshore took no part in the post-explosion clean-up efforts or the use of dispersants, and had no operational control over those who did. Doc. 1416-1 at 11-16. Offshore also argued that federal maritime law does not recognize nuisance claims, which in any event are displaced by OPA. *Id.* at 16-19. Those arguments await the Court's resolution.

## IV. The Bundle A Personal Injury Claims Must Be Dismissed

Four personal injury complaints from Bundle A remain pending against Offshore, and Offshore has moved to dismiss each one. The Decision resolves the following points: (i) Plaintiffs' negligence claims against Offshore under maritime law must be dismissed (*see* Doc. 1212-1 at 4-13; Doc. 1215-1 at 3-13; Doc. 1219-1 at 4-11; Doc. 1223-1 at 4-13; and (ii) Plaintiffs have no claim for ultrahazardous activities (*see* Doc. 1215-1 at 13-14). Left for judicial resolution are (a) Offshore's arguments that it is not liable as an employer under the Jones Act (Doc. 1212-1 at 13-14; Doc. 1219-1 at 11-12; Doc. 1223-1 at 13-14); and (b) that Plaintiffs have no right to recover non-pecuniary damages (Doc. 1212-1 at 14; Doc. 1215-1 at 14-15; Doc. 1219-1 at 12-13; Doc. 1223-1 at 14).

## V. Louisiana's Claims Against Offshore Must Be Dismissed

Louisiana's First Amended Complaint (Doc. 2031) asserted ten categories of claims against Offshore: (i) damages and removal costs under OPA (Counts I , V; ¶¶153-67, 195-221) and LOSPRA (Counts II, VI; ¶¶168-80 222-38); (ii) civil penalties under

5

various Louisiana statutes (Count III; ¶¶181-89); (iii) response costs under Louisiana law (Count IV; ¶¶190-194); (iv) maritime negligence (Count VII; ¶¶239-48); (v) public and private nuisance under maritime law (Count VIII; ¶¶249-58); (vi) trespass under maritime law (Count IX; ¶¶259-69); (vii) negligence under Louisiana law (Count XI; ¶¶293-300); nuisance under Louisiana law (Count XII; ¶¶301-07); (viii) trespass (Count XIII; ¶¶308-15); strict liability under Louisiana law (Count XIV; ¶¶316-22); (ix) abnormally dangerous or ultrahazardous activity (Count XV; ¶¶323-27); and (x) unjust enrichment under Louisiana law (Count XXIII; ¶¶379-85).

<u>State Law Claims</u>. Because Counts II, III, VI, XI, XII, XIV and XXIII are brought under Louisiana state law, they must be dismissed based on the Decision. *See* Decision at 11, 15, 18, 38.

<u>Maritime Negligence</u>. Count VII for maritime negligence must be dismissed because the Court has ruled that Offshore did not owe tort duties in connection with its alleged access to information concerning the activities of its independent contractor, BP. *See* Decision at 28-29, 39. Louisiana's negligence claim is based on such access. *See* Doc. 2031 ¶¶102-106.

<u>Ultrahazardous Activity</u>. Count XV for abnormally dangerous or ultrahazardous activity must be dismissed because the Decision expressly recognizes that "[o]ffshore drilling operations are not considered ultra-hazardous." Decision at 28 (citing *Ainsworth*).

<u>OPA</u>. The OPA claims in Counts I and V should be dismissed for lack of presentment. Enforcing the presentment requirement against Louisiana presents no logistical or administrative issues. Louisiana has filed a single complaint against Offshore, so there is no administrative difficulty. Louisiana pleads that it has "previously presented

6

claims to BP," yet does *not* allege that it presented any claims to Offshore. Doc. 2031 ¶¶144, 151. Further, Louisiana avers that it "should not be required" to present any of its future claims. *Id.* ¶144. Because the Decision establishes that presentment is a "mandatory condition-precedent" for OPA claims (Decision at 31) and no administrative difficulty would result, Louisiana's OPA claims against Offshore should be dismissed.

Remaining Issues. Offshore sought dismissal because nuisance claims do not exist under federal maritime law (Doc. 2649-1 at 13); OPA displaces any maritime nuisance claims (*id.* at 13-14); and states cannot sue for private nuisance (*id.* at 14). Offshore also argued that trespass is an intentional tort, and Louisiana failed to allege that Offshore acted intentionally as opposed to negligently (*id.* at 14-15). Those issues await resolution.

## VI. Alabama's Claims Against Offshore Must Be Dismissed

The State of Alabama's First Amended Complaint (Doc. 1887) contained causes of action against Offshore for (i) maritime negligence (§I.A; ¶¶94-135); (ii) gross negligence and willful misconduct under maritime law (§I.B; ¶¶136-47); (iii) claims for damages and removal costs under OPA (§II; ¶¶205-19); and (iv) claims under various Alabama statutes and common law theories (§§III.H-N; ¶¶282-345). Alabama asserted a separate claim for punitive damages only against BP, Transocean and Halliburton, but the Prayer for Relief sought such damages against all Defendants, "jointly, severally, and solidarily" (p.80 ¶3).

State Law Claims. Alabama's State-law claims in §§III.H-N are not viable following the Decision's ruling that federal law governs.

Negligence and Gross Negligence. The Decision establishes that Alabama's maritime negligence claim must be dismissed because it is based on Offshore's alleged access to information about its independent contractor's activities. *Compare* Doc. 1887 at ¶129 *with* Decision at 28-29, 39. The same is true of Alabama's claim for gross negligence

7

(Doc. 1887, ¶145). Absent gross negligence, Alabama's request for punitive damages must be dismissed insofar as it relates to Offshore. *See* Decision at 20, 27.

OPA. Offshore argued that Alabama's cursory assertion in its OPA claim that it had "satisfied the presentment requirements of 33 U.S.C. §§2713(a) and (b)" (Doc. 1887 ¶217) failed to meet the pleading standards of *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). *See* Doc. 2647-1 at 2, 5. Unlike the 100,000 B-1 claims, Alabama's failure to present its single OPA claim to Offshore is easily established. Therefore, Alabama's OPA claim against Offshore should be dismissed. *See* Decision at 26, 28, 30-31, 38.

### VII.     Transocean's Cross-Claims Against Offshore Must Be Dismissed

Transocean has asserted substantively identical cross-claims against Offshore in the Limitation Action (Doc. 2068) and the U.S. lawsuit (Doc. 2574). It seeks recovery from Offshore for (i) indemnity (Doc. 2574 ¶44; Doc. 2068 ¶68); (ii) contribution/comparative fault (Doc. 2574 ¶45; Doc. 2068 ¶69); (iii) contribution under OPA (Doc. 2574 ¶57; Doc. 2068 ¶85); and (iv) subrogation under OPA (Doc. 2574 ¶58; Doc. 2068 ¶87). Offshore has moved to dismiss both sets of cross-claims (Doc. 2873; 2477).

Indemnity and Contribution. The claims for indemnity and contribution are not viable in light of the Decision, because each requires a showing of negligence or actual fault. *See* Doc. 2873-1 at 8-11. Transocean does not allege separate fault on Offshore's part; rather, Transocean simply incorporates by reference Plaintiffs's allegations (Doc. 2574 ¶36; Doc. 2068 ¶56), which the Decision has shown are insufficient to establish negligence. To the extent the Court finds any portion of Transocean's cross-claims survives the Decision, it should reach the separate grounds for dismissal advanced by Offshore in Doc. 2873-1 at §III.B.2 (attorneys' fees not recoverable), Doc. 2477-1 at §§III.A.1 (OPA displacement) and Doc. 2477-1 at §§III.B.2-3 (Transocean as litigating

8

defendant; attorneys' fees not recoverable).

OPA. Although the Decision does not expressly address contribution and subrogation under OPA, it does establish that Offshore as a non-operating party is not guilty of negligence or fault. The OPA cross-claims should be dismissed on that ground; alternatively, the Court should rule on the grounds set forth in Offshore's motions to dismiss. *See* Doc. 2873-1 §§III.C-D; Doc. 2477-1 §§III.C-D.

### VIII. Halliburton's Cross-Claims Against Offshore Must Be Dismissed

Halliburton has asserted cross-claims (*see* Doc. 445) based on (i) contribution and indemnity (Count I; ¶¶33-36) and (ii) negligence, gross negligence and willful misconduct (Count III; ¶¶41-42). Neither cross-claim survives the Decision.

Negligence Claims. Halliburton's negligence and gross negligence claims are founded on Offshore's alleged access to information regarding hydrocarbons in the well or, alternatively, Offshore's "entrusting BP to make decisions" relative to the Macondo lease and drilling operations (¶50). Such claims are foreclosed by the Decision. *See* Decision at 28-29, 39. Both contribution and indemnification require a showing of the cross-claim defendant's negligence or fault, which cannot be established in light Offshore's status as a non-operating party. *See id.*; Doc. 2882-1 (Offshore Motion to Dismss) at 2-3, 6-7, 9-18.

Remaining Issues. To the extent any portion of Halliburton's cross-claims is found to survive the Decision, the Court should reach Offshore's alternative grounds for dismissal: (i) Halliburton's cursory allegations fail to plead viable claims under *Iqbal* (Doc. 2882-1 at 5, 9-11, 15-17); and (ii) theories of contribution and indemnity under maritime law have been displaced by OPA (*id.* at 8).

### IX. Dril-Quip's Cross-Claim Against Offshore Must Be Dismissed

Dril-Quip's cross-claim against Offshore (Doc. 2467) is solely for contribution (*id.*

¶¶39-42), and is based on the allegation that Offshore's "rights to information regarding the Macondo well" put it on "actual or constructive notice of the conditions at the well site" (*id.* ¶35). Such claims cannot survive the Decision. *See* Decision at 28-29, 39.

### X. M-I's Cross-Claims Against Offshore Must Be Dismissed

M-I's cross-claims (Doc. 2531) seek to recover from Offshore for contribution and indemnification. They are premised on Offshore's alleged access to information about the Macondo well from BP, and the assertion that BP was Offshore's "local agent" under the Operating Agreement. *Id.* ¶¶58-66. Those claims are foreclosed by the Decision, in which the Court recognized that BP was an independent contractor and "[a]ny access to information that [Offshore] may have had did not give rise to a duty to intercede in an independent contractor's operations." Decision at 28-29. To the extent the Court finds any portion of M-I's cross-claim viable following the Decision, the Court should consider Offshore's alternative grounds for dismissal. *See* Doc. 2903-1 at 8-9.

### XI. Weatherford's Cross-Claims Against Offshore Must Be Dismissed

Weatherford has cross-claimed against Offshore for indemnity and contribution. *See* Doc. 2484. Its cross-claims are infirm for the same reasons cited above with respect to the contribution and indemnity cross-claims of Transocean, Halliburton, Dril-Quip and M-I. To the extent that the Court finds any of Weatherford's cross-claims survives the Decision, it should consider the alternative grounds cited in Offshore's motion to dismiss: OPA displacement (Doc. 2910-1 at §III.C.2); non-recoverability of attorneys' fees (*id.* §III.E); and the fact that Weatherford's vague and conclusory allegations fail to plead viable claims under *Iqbal* (*id.* §III.A-B).

### XII. Conclusion

For the foregoing reasons, Offshore's motions to dismiss should be granted.

Dated:  September 12, 2011

>Respectfully submitted,
>
>_____/s/_ John F. Pritchard_____
>John F. Pritchard
>john.pritchard@pillsburylaw.com
>Edward Flanders
>edward.flanders@pillsburylaw.com
>PILLSBURY WINTHROP SHAW PITTMAN LLP
>1540 Broadway
>New York, NY 10036-4039
>Telephone (212) 858-1000
>Facsimile (212) 858-1500
>
>Christopher McNevin
>chrismcnevin@pillsburylaw.com
>PILLSBURY WINTHROP SHAW PITTMAN LLP
>725 South Figueroa Street, Suite 2800
>Los Angeles, CA 90017-5406
>Telephone (213) 488-7507
>Fax (213) 629-1033
>
>**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on September 12, 2011.

                                                                   _____/s/__John F. Pritchard_____