UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases in Pleading Bundle Section III.B(3)* | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**MEMORANDUM OF CERTAIN CLEAN-UP RESPONDER DEFENDANTS
IN RESPONSE TO COURT'S ORDER INVITING BRIEFING
ON IMPACT OF B1 OPINION ON OTHER MOTIONS TO DISMISS**

Clean-Up Responder Defendants O'Brien's Response Management, Inc. ("O'Brien's"), National Response Corporation ("NRC"), and Marine Spill Response Corporation ("MSRC") respectfully submit this Memorandum in response to the Court's September 1, 2011 Order (Rec. Doc. 3891) inviting briefing as to what effect the Court's Order and Reasons of August 26, 2011 (Rec. Doc. 3830) (the "B1 Opinion") has on other Motions to Dismiss pending in this MDL.

As the Court is aware, O'Brien's, NRC, and MSRC have filed Motions to Dismiss the claims that have been asserted against them in the B3 Bundle Master Complaint and Amended B3 Bundle Master Complaint. *See* O'Brien's and NRC's Motion to Dismiss the B3 Bundle Master Complaint (Rec. Doc. 1388); MSRC's Motion to Dismiss the B(3) Pleading Bundle Master

Complaint (Rec. Doc. 1397) (collectively, the "B3 Motions").[1]  The B3 Motions are fully briefed, were argued on May 26, 2011, and are ripe for decision.

The B3 Motions advance three primary dispositive arguments and a variety of alternative claim-specific arguments.  The three primary arguments in the B3 Motions—namely derivative immunity under the Clean Water Act ("CWA"), derivative discretionary function immunity, and implied conflict preemption—are each premised on the fact that the federal government authorized, directed, and ultimately controlled the actions of O'Brien's, NRC, and MSRC pursuant to the CWA and the National Contingency Plan ("NCP").  Indeed, as set forth in the B3 Motions, the CWA and NCP clearly mandate that decisions regarding how to respond to oil spills and hazardous discharges, in a spill incident of the magnitude of the DEEPWATER HORIZON, *must* be made by federal authorities, such that the President and his delegates were *required* to determine what methods and techniques would be used to respond to the DEEPWATER HORIZON oil spill, and had *sole* authority to authorize, direct, and control the clean-up efforts.  Moreover, the NCP *requires* that the President *shall* identify dispersants to use, the waters in which they will be used, the methods for dispersing oil, and the quantities of dispersants that can be used safely in such waters.  *See* 40 C.F.R. Part 300, subpart J.

Although the Court's B1 Opinion has no bearing on these issues, the Court *has* previously recognized that the clean-up activities in the Gulf of Mexico "have been under the control of the National Incident Commander, Federal On Scene Coordinator, Unified Area Command, and the Coast Guard in cooperation with other federal agencies."  *See* Order and Reasons of June 16,

---

[1] The Plaintiffs' Steering Committee ("PSC") filed an omnibus opposition memorandum (Rec. Doc. 1815). O'Brien's and NRC filed a reply memorandum (Rec. Doc. 2200) and MSRC filed a reply memorandum (Rec. Doc. 2211).

2011, relative to the Motions to Dismiss the D1 Master Complaint (Rec. Doc. 2784).  Moreover, while the B1 Opinion addresses several questions of preemption (namely whether OCSLA and OPA preempt state and maritime law), those preemption issues are separate and distinct from the implied conflict preemption argument advanced by O'Brien's, NRC, and MSRC, which contends that the CWA and NCP preempt the B3 claims that have been asserted against them.  Thus, in light of the fact—already recognized by the Court—that the federal government authorized, directed, and ultimately controlled the actions of O'Brien's, NRC, and MSRC pursuant to the CWA and the NCP, all of the claims against these Clean-Up Responder Defendants should be dismissed based upon the separate and independent application of derivative CWA immunity, derivative discretionary function immunity, and/or principles of implied conflict preemption.[2]

Although the Court need not reach the alternative arguments set forth in the B3 Motions, the Court's B1 Opinion does directly impact several of these alternative arguments relating to certain state law claims.  In the B1 Opinion, the Court held that "state law is inapplicable to this case" because "[t]his casualty occurred over the Outer Continental Shelf—an area of 'exclusive federal jurisdiction,'" invoking admiralty jurisdiction and with it "substantive maritime law."  B1 Opinion at 11-14, 18.  Since "there is no substantive gap for state law to fill," state law supplementation was deemed to be unnecessary and all of the plaintiffs' state common-law and

---

[2] In the B1 Opinion, the Court held that allowing maritime law claims to proceed against non-Responsible Parties will not frustrate Congress's intent in enacting OPA.  In contrast, as set forth in the B3 Motions, the B3 claims *would* frustrate Congress's intent—reflected in the CWA and NCP—in creating a pervasive federal scheme to govern responses to oil spills.  Similarly, in the B1 Opinion, the Court considered the effect of OPA's "saving" provisions and held that the saving provision set forth in 33 U.S.C. § 2751(e) indicated that Congress did not intend for OPA to completely preempt other federal laws.  *See* B1 Opinion at 14-15, 22.  Although the CWA also contains a saving clause, 33 U.S.C. § 1321(o)(2), the Supreme Court has held that a "saving clause . . . *does not bar the ordinary working of conflict pre-emption principles*," *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000) (emphasis added), and it is those principles upon which O'Brien's, NRC, and MSRC rely in the B3 Motions.

3

state statutory claims were dismissed. *Id.* at 14, 18. The Court's determination that claims arising from the DEEPWATER HORIZON casualty and resulting spill are to be governed exclusively by maritime law in recognition of the law of admiralty's principles of harmony and uniformity applies with equal force to the B3 complaint and compels dismissal of all state law claims. Any action of O'Brien's, NRC, and MSRC in responding to the DEEPWATER HORIZON spill stemmed from the "casualty [that] occurred over the Outer Continental Shelf" and, accordingly, any state law claims brought against them for all such conduct are not viable. *Id.* at 12. Indeed, as the Court noted in the B1 Opinion, to permit the application of "the varying laws of each state into which [the] oil has flowed would contravene a fundamental purpose of maritime law: '[t]o preserve harmony and appropriate uniform rules relating to maritime matters.'" B1 Opinion at 13 (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373 (1959)).[3]

Specifically, the Court's dismissal of the B1 plaintiffs' nuisance claim makes clear that there is no action for nuisance under maritime law pursuant to *Louisiana v. M/V Testbank*, 752 F. 2d 1019 (5th Cir. 1985), and that application of state law to a nuisance claim would impair the harmony and uniformity favored by the maritime law. *See* B1 Opinion at 14 (noting how in *M/V Testbank*, the Fifth Circuit "appl[ied] maritime law and reject[ed] state-law claims for nuisance by plaintiffs seeking to recover for economic losses sustained in connection with an oil spill from a vessel on the Mississippi River"). That same rationale applies directly in the B3 context and

---

[3] Even if the Court were to construe any of O'Brien's, NRC's, or MSRC's alleged conduct as having taken place within different states' borders, applying various states' laws in a maritime action (as both the B3 Bundle Master Complaint and Amended B3 Bundle Master Complaint are expressly designated on their title pages, just like the B1 Bundle Master Complaint) would impair the uniformity and simplicity favored by the general maritime law. *See* B3 Motion of O'Brien's and NRC at 22-23, 25-26; B3 Motion of MSRC at 47 (citing *S. Pacific Co. v. Jensen*, 244 U.S. 205, 216 (1917)). The application of state law in the B3 context must therefore "yield to the needs of a uniform federal maritime law." B1 Opinion at 13 (quoting *Romero,* 358 U.S. at 373 (citing *S. Pac. Co. v. Jensen*, 244 U.S. 205 (1916))).

4

compels dismissal of the nuisance claim that has been asserted against O'Brien's, NRC, and MSRC.

Further, the B3 plaintiffs also allege two Florida-specific state law claims, one for medical monitoring and the other pursuant to the Florida Pollutant Discharge Prevention and Control Act ("FPDPCA"). The Court's faithful application of admiralty law's principles of harmony and uniformity in the B1 Opinion compels dismissal of both of these Florida-specific state law claims in the B3 context as well. Indeed, the Court has now clearly held that state law may not supplement the maritime law when to do so would impair the principles of harmony and uniformity. *See* B1 Opinion at 11-13. Given that medical monitoring is not available under the maritime law and the States differ greatly on their approach to medical monitoring, an application of Florida medical monitoring law (or any state's medical monitoring law, for that matter) in this case would create precisely the sort of discord the maritime law strives to avoid. *See* B3 Motion of O'Brien's and NRC at 25-27; B3 Motion of MSRC at 45-48. Similarly, plaintiffs' FPDPCA claim was dismissed in the B1 context because the vessel from which the oil spill was caused was not operating in Florida territorial waters; rather, the DEEPWATER HORIZON's discharge occurred over the Outer Continental Shelf. *See* B1 Opinion at 18. The same reasoning compels dismissal of the B3 complaint's FPDPCA claim.[4]

Finally, in the B1 Opinion, the Court held that under maritime law, only commercial fisherman and/or persons who suffered physical damage to a proprietary interest can pursue claims for pure economic losses against non-Responsible Parties. B1 Opinion at 26. In the

---

[4] As O'Brien's, NRC, and MSRC explained in their reply memoranda, the FPDPCA claim should be dismissed for a variety of other reasons as well, including the fact that the PSC did not oppose the arguments advanced in support of dismissal of this claim.

Amended B3 Bundle Master Complaint, at paragraph 197, plaintiffs state that they do not "assert claims for damage to real or personal property against the Clean-Up Defendants . . . under tort law or the OPA." Further, in footnote 1 of the Amended B3 Bundle Master Complaint, plaintiffs state that they "do *not* assert . . . damages under [OPA] or tort law for lost profits and/or loss of earning capacity against the Clean-Up Defendants" (emphasis in original). Because plaintiffs have abandoned their claims for economic losses against the Clean-Up Responder Defendants, those claims should be dismissed.

For the foregoing reasons, O'Brien's, NRC, and MSRC respectfully request that the B3 Bundle Master Complaint and Amended B3 Bundle Master Complaint be dismissed in their entirety.

Respectfully submitted,

/s/ Michael J. Lyle
Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
Eric C. Lyttle (DC Bar #482856)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7157
Facsimile: (202) 857-0940

Theodore E. Tsekerides (NY Bar #2609642)
Jeremy T. Grabill (NY Bar #4501755)
Sylvia E. Simson (NY Bar #4803342)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

Patrick E. O'Keefe (LA Bar #21086)
Philip S. Brooks, Jr. (LA Bar #21501)
MONTGOMERY, BARNETT, BROWN, REED,
    HAMMOND & MINTZ LLP
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

*Attorneys for O'Brien's Response Management, Inc.
and National Response Corporation*

/s/ Alan M. Weigel (with consent)
Alan M. Weigel, Esq. (NY Bar #3065307)
(aweigel@blankrome.com)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (917) 332-3836

*Attorneys for Marine Spill Response Corporation*

7

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum of Certain Clean-Up Responder Defendants in Response to Court's Order Inviting Briefing on Impact of B1 Opinion on Other Motions to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of September, 2011.

/s/ Michael J. Lyle
Michael J. Lyle