UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico on April 20, 2010** | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| *All cases in Pleading Bundle B3*; | * | **MAGISTRATE NO. 1** |
| 10-cv-4536; 10-cv-3059; 10-cv-4182; | * | **MAGISTRATE SHUSHAN** |
| 10-cv-4183; 10-cv-2771; 10-cv-1540; | * | |
| 10-cv-3815; 10-cv-1502; 10-cv-4239; | * | |
| 10-cv-4241; 10-cv-4240 | * | |
| * * * * * * * * * * * * | | |

**MEMORANDUM OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP ON THE EFFECTS OF THE COURT'S ORDER ON THE MOTIONS TO DISMISS THE B1 MASTER COMPLAINT**

**MAY IT PLEASE THE COURT:**

**I.   INTRODUCTION**

Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (together "Anadarko") hereby respond to the Court's Order of September 1, 2011 [Rec. Doc. 3891] inviting the parties to submit briefing as to the effects of the Court's Order on the defendants' Motions to Dismiss the B1 Master Complaint [Rec. Doc. 3830] ("B1 Order") on other pending Motions to Dismiss.

Still pending and ripe for decision are Anadarko's: (1) Motion to Dismiss the Master Complaint for Pleading Bundle B3 [Rec. Doc. 1416]; (2) Motions to Dismiss the Complaints of Louisiana [Rec. Doc. 2646], Alabama [Rec. Doc. 2645], and the Voluntary Local Government Entity Master Complaint [Rec. Doc. 2218], (3) Motions to Dismiss the Complaints of the three Mexican States, Tamaulipas [Rec. Doc. 1423], Veracruz [Rec. Doc. 1422] and Quintana Roo [Rec. Doc. 1424]; (4) Motion to Dismiss the Claims of the United States' against Anadarko E&P [Rec. Doc. 1861]; and (5) Motions to Dismiss the Complaints of three individual plaintiffs in

A/74506677.4

Pleading Bundle A, *Rhodes v. BP, PLC, et. al.*, [Rec. Doc. 1219], *Roberts v. BP, PLC, et. al.*, *Roberts v. BP, PLC, et. al.*, and *Crawford v. BP, PLC, et. al.*, [Rec. Doc. 1215]. The Court's holdings and reasoning in the B1 Order are dispositive of nearly all issues in Anadarko's pending Motions to Dismiss.

*First*, the Court held that pursuant to the rule of *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), Anadarko owed no duty to third parties to intercede in the operations of BP or its contractors, and, therefore, as a matter of law is not responsible for the blowout, fire and sinking of the *Deepwater Horizon*, under either a direct or vicarious liability theory. Accordingly, the Court held that "all maritime negligence claims against Anadarko … must be dismissed." B1 Order at 28. In light of this holding, all claims against Anadarko for negligence, gross negligence, or other duty-based claims in all other pleading bundles should be dismissed.

*Second*, the Court held that state law, "both statutory and common, is preempted by maritime law, notwithstanding OPA's savings provisions." B1 Order at 38. Consequently, the Court held that "all claims brought under state law are dismissed." *Id.* Based on this holding, all state law claims against Anadarko in all other pleading bundles should be dismissed.

*Third*, the Court held that the B1 Plaintiffs had alleged a plausible OPA claim against Anadarko E&P Company LP, and the Motion to Dismiss the B1 Plaintiffs' OPA claim against Anadarko E&P was denied. While Anadarko E&P reserves its rights on the issue, because the relevant allegations in the complaints in Pleading Bundle C are similar, Anadarko E&P understands that the Court's reasoning compels the same conclusion with respect to Anadarko E&P's similar arguments in Pleading Bundle C.

As set forth more fully below, the Court's reasoning on these points compels the following results with respect to Anadarko's pending Motions to Dismiss in the other pleading bundles:

(1) all non-OPA claims under state or maritime law against Anadarko in the Complaints of Louisiana, Alabama, the three Mexican States, and the Local Government Entity Master Complaint, should be dismissed;

(2) all claims against Anadarko in the Master Complaint for Pleading Bundle B3 should be dismissed;

(3) all claims against Anadarko in all individual complaints in Pleading Bundle A should be dismissed; and

(4) Anadarko E&P recognizes that its Motion to Dismiss the United States' OPA claim against it will be denied.

The following issues raised in Anadarko's pending Motions are not fully resolved by the B1 Order and require consideration by the Court:

(1) whether OPA requires Louisiana, Alabama, the three Mexican States, and the Local Government Entities to present their OPA claims to the designated responsible party before seeking relief in court, as private plaintiffs are required to do;

(2) whether the three Mexican States can assert claims under OPA without alleging compliance with OPA's specific requirements for foreign claimants; and

(3) whether the United States has stated a claim for penalties against Anadarko E&P under the Clean Water Act.

## II. ARGUMENT

### A. All Non-OPA Claims of the State and Local Governments Must Be Dismissed.

The States of Louisiana and Alabama, the PSC on behalf of Local Government Entities, and the Three Mexican States, each assert negligence and other duty-based claims against Anadarko, claims for damages and penalties under various states' environmental statutes, and claims for damages and removal costs under the federal Oil Pollution Act. Following the B1 Order, only these Plaintiffs' OPA claims against Anadarko remain at issue.

### 1. Negligence, Gross Negligence and Other Duty-Based Claims Against Anadarko Must Be Dismissed.

The State and Local Government Plaintiffs' allegations in their various complaints largely track the Plaintiffs' allegations in the B1 Master Complaint. Like the B1 Master Complaint, the Bundle C Plaintiffs do not allege that Anadarko had a right of operational control over any activity or event allegedly giving rise to their injuries. Rather, like the B1 Plaintiffs, these plaintiffs allege that due to Anadarko's status as a non-operating leaseholder, and its contractual rights to access certain information transmitted from the rig, Anadarko negligently failed to intercede in BP's and its contractors' operations to prevent the blowout and oil spill.

The Court rejected this theory of liability. B1 Order at 28-29. The Court held that under the rule of *v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), Anadarko owed third parties no duty to intercede in BP's or its contractor's operations. B1 Order at 28. The Court further held that any access to information Anadarko "may have had did not give rise to a duty to intercede" in BP's operations, "especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and Transocean personnel either onshore or on the rig." *Id.* If Anadarko owed the B1 Plaintiffs no duty to intercede, it follows that Anadarko also did not owe the Bundle C Plaintiffs a duty to intercede.

In their oppositions to Anadarko's motions to dismiss, the PSC and Alabama have for the first time raised a new "joint venture" theory of vicarious liability against Anadarko that was not raised in the briefing on the B1 Motion to Dismiss. The joint venture theory of liability is unavailing, because a right of joint operational control is the essential element of joint venture liability.[1] The Court has already held that Anadarko did not have a right to operational control,

---

[1] *See* Consolidated Reply in Support of Motions of Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Amended Complaints of the State of Alabama, the State of Louisiana, and the Voluntary Local Government Entity Master Complaint [Bundle "C"] [Rec. Doc. 3582] at 30-35.

and the Court's reasoning in the B1 Order forecloses both <u>vicarious</u> and <u>direct liability</u> theories against Anadarko.  B1 Order at 29, *quoting Dupre v. Chevron U.S.A. Inc*., 913 F. Supp. 473, 483 (E.D. La. 1996).  Like the B1 Plaintiffs' rejected "direct liability" theory, to allow the Bundle C Plaintiffs to pursue a "joint venture" theory of vicarious liability against Anadarko would amount to an "end-run around a large body of Fifth Circuit precedent finding 'no operational control' despite some knowledge of risk or involvement with safety issues," and must also be rejected. *Id.*

In sum, the reasoning of the B1 Order compels the dismissal of all of the Bundle C Plaintiffs' maritime negligence, gross negligence, and other duty-based claims (*e.g.,* nuisance, trespass), against Anadarko.

### 2. The States' and Local Governments' Claims for Damages, Removal Costs and/or Penalties Under State Law Must Be Dismissed.

Louisiana and Alabama assert claims against Anadarko under their own environmental laws, seeking to recover costs and damages and to impose statutory penalties.  Similarly, the PSC seeks to recover costs and damages for the local government entities under various states' environmental statutes.  These claims are foreclosed by the Court's choice of law and preemption analysis.  States have no power to apply their own laws and regulations to claims relating to conduct outside of their territorial waters on the Outer Continental Shelf ("OCS").

Anadarko argued that under the plain language of OCSLA Sections 1333(a)(1) and §1333(a)(2), state law does not apply to a case arising from the activities of a mobile offshore drilling unit ("MODU") like the *Deepwater Horizon* that is <u>temporarily attached</u> to the OCS, and therefore federal law applies exclusively to this case.  In the B1 Order the Court noted the appeal of the textual analysis of OCSLA, but ultimately applied the Fifth Circuit's *PLT* test.  B1 Order at 9; *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990)).  The

*PLT* test is designed to implement Section 1333, and whether one applies the *PLT* test or the straightforward language of the statute, the same result obtains: a case arising on a MODU operating on the OCS is governed by federal statutes and maritime law, which collectively leave no gaps for state law to fill.

Applying the *PLT* test, the Court held that federal maritime law applies of its own force, which "precludes the application of state law under OCSLA…." B1 Order at 11 n. 4. The Court held that while maritime law does not necessarily exclude state law, States may only "'create rights and liabilities with respect to ***conduct within their borders***, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction.'" *Id.* at 12, *quoting Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 375 n.42 (1959) (emphasis in original). The Court held that this case does not concern conduct within state borders (waters), and that "to subject a discharger to the varying laws of each state in which its oil has flowed would contravene a fundamental purpose of maritime law…." B1 Order at 12. The Court rejected as inapplicable *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996) and *Askew v. Am. Waterways Operator, Inc.,* 411 U.S. 325 (1973), both of which addressed application of state law to cases arising in state territorial waters. Further, the Court found that the conclusion that only federal law applies in this case is consistent with the Supreme Courts' holding in *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). B1 Order at 16-17.

The B1 Plaintiffs sought to resurrect their claims under state law by reliance on OPA's savings clause. The Court rejected Plaintiffs' argument, holding that OPA's savings provisions "evince Congress' intent to preserve the States' police power to govern pollution discharges within their territorial waters" and do not give the States the power "govern out-of-state conduct

affecting multiple states." *Id.* Accordingly, the Court concluded that all state law claims in the B1 Master Complaint must be dismissed.

The Court's choice of law and preemption analysis compels dismissal of the States' and Local Governments' claims for damages, removal costs, and penalties under state law. These Bundle C Plaintiffs assert no new choice of law or preemption arguments that could alter the result. *See* B1 Order at 16 n.9. Like the B1 Plaintiffs, these Bundle C Plaintiffs argue that OPA authorizes application of state law in this case, and that under *Yamaha* and *Askew*, state law may supplement maritime law and applicable federal statutes.

The Court has already rejected both arguments, and there is no reason for the analysis to come out differently in Bundle C than in Bundle B1. The States have no authority to impose their own statutory or regulatory requirements on conduct that occurred entirely outside their borders on the OCS, an area of "exclusive federal jurisdiction." B1 Order at 12. As the Supreme Court made clear in *Ouellette,* the only applicable law is that which applies where the source of pollution is located. B1 Order at 16. Also as in Pleading Bundle B1, the States and Local Governments identify no "gap" in federal law that state law could be used to fill. Together, OPA and the general maritime law provide the States and Local Governments with means to recover removal costs, remedies for injuries to natural resources, and compensation for loss of revenues, loss of profits, and damages to personal and public property. *See* 33 U.S.C. § 2702. To the extent the States and Local Governments assert an interest in penalizing what they deem to be wrongful conduct, federal law covers this as well in the form of statutory penalties under the Clean Water Act (and numerous other federal statutes), and, as the Court has ruled, punitive damages under the general maritime law. B1 Order at 26. All Bundle C claims under state law should be dismissed.

### B. All Claims Against Anadarko in the Master Complaint for Pleading Bundle B3 Must Be Dismissed.

In the Master Complaint for Pleading Bundle B3, Plaintiffs assert claims against Anadarko for: negligence, gross negligence, negligence *per se* under various states' laws, nuisance, battery, medical monitoring under Florida law, and strict liability pursuant to the Florida Pollution Discharge and Control Act. B3 Master Complaint [Rec. Doc. 881] at 46-66. None survive the B1 Order.

Plaintiffs' allegations in the B3 Master Complaint mirror their allegations in the B1 Master Complaint. *Id.* at 13-14. As in the B1 Master Complaint, Plaintiffs do not allege that Anadarko had a right of operational control over any activity, event or instrument allegedly giving rise to their injuries. *Id.* With respect to Plaintiffs' maritime law claims against Anadarko, each fails under the B1 Order because the Court ruled that Anadarko owed no duty to intercede in BP's operations to the Plaintiffs. B1 Order at 28-29.

The B3 Plaintiffs assert three state law claims against Anadarko: Florida Medical Monitoring (Count 9), strict liability Pursuant to the Florida Pollutant Discharge Prevention and Control Act ("FPDPCA") (Count 11), and negligence *per se* pursuant to various states' laws (Count 5). As in Bundle C, these claims are foreclosed by the Court's choice of law and preemption analysis. Having designated the B3 Complaint as a "Complaint in Admiralty" under Rule 9(h), the B3 Plaintiffs agree that maritime law governs the B3 Complaint. The B3 Plaintiffs also identify no substantive gaps that state law would fill in the B3 Complaint, and there are none. Further, the B3 Plaintiffs do not allege that any of the complained of conduct, i.e., the discharge of oil or other chemicals, occurred in state territorial waters. Accordingly, all state law claims in the B3 Complaint must be dismissed.

### C. All Claims Against Anadarko in Pleading Bundle A Must Be Dismissed.

There are only three remaining complaints with claims against Anadarko in Pleading Bundle A.[2] The Bundle A Plaintiffs assert claims against Anadarko for negligence, gross negligence, and, in one instance, strict liability for ultra-hazardous activities. For the same reason that the Bundle B1, C and B3 Plaintiffs' maritime negligence claims fail against Anadarko, so too do the claims of the Bundle A Plaintiffs. The Court ruled that under *Ainsworth*, Anadarko's status as a non-operating leaseholder did not give rise to any duty to the Bundle B1 Plaintiffs to intercede in BP or its contractors' operations. B1 Order at 28-29. The Court also ruled that under *Ainsworth* offshore oil drilling operations are not considered ultra-hazardous. *Id.* at 28. The rule of *Ainsworth* compels the same conclusions in Bundle A, and all negligence, gross negligence and strict liability claims against Anadarko must be dismissed.

### D. Anadarko E&P Acknowledges that its Motion to Dismiss the United States' OPA Claim will be Denied.

Like the B1 Plaintiffs, the Plaintiffs in Pleading Bundle C allege that Anadarko E&P held an interest in the Macondo lease at the time of the incident, and is therefore a responsible party under OPA. Anadarko E&P moved to dismiss the B1 Plaintiffs' OPA claim against it, arguing that as a matter of law it was no longer a lessee at the time of the discharge, and therefore cannot be a responsible party under OPA. Anadarko made the same argument in its Motions to Dismiss the OPA claims against it by the Pleading Bundle C Plaintiffs. The Court held that the B1 Plaintiffs alleged a colorable OPA claim against Anadarko E&P. B1 Order at 35. Though the issue remains hotly disputed, Anadarko E&P recognizes that this ruling will be applied to the OPA claims in Pleading Bundle C as well. As a result, Anadarko E&P's Motion to Dismiss the

---

[2] The three remaining Bundle A complaints with claims against Anadarko are *Roberts v. BP, PLC, et. al.*, 10-3815, *Rhodes v. Transocean, Ltd., et. al.*, 10-1502, and *Crawford v. BP, PLC*, 10-1540.

United States' OPA claim will be denied.[3]  Resolution of its Motions to Dismiss the States' and Local Governments' OPA claims requires resolution of additional issues concerning presentment by government claimants and claims by foreign entities.

### E. Anadarko's Motions to Dismiss the Cross-Claims Against It Are Not Yet Ripe For Decision.

Anadarko moved to dismiss the cross-claims asserted against it by Transocean, Halliburton, Cameron, Dril-Quip, M-I, and Weatherford (collectively, "Plaintiffs in Cross-Claim").[4]  The Court has not yet ordered a briefing schedule on Anadarko's Cross-Claim Motions to Dismiss, and they are not yet ripe for decision.  The impact of the B1 Order on the pending Cross-Claim Motions to Dismiss can be more fully addressed in the context of the upcoming briefing on those motions.

### III. CONCLUSION

For all the foregoing reasons, the Court's B1 Order compels the following conclusions:

(1) All non-OPA claims against Anadarko by Alabama, Louisiana, the Local Governments, and the Mexican States must be dismissed;

(2) All maritime negligence, gross negligence, or other duty-based claims against Anadarko in Bundle A must be dismissed;

(3) All claims against Anadarko in the Master Complaint for Pleading Bundle B3 must be dismissed; and

(4) Anadarko E&P's Motion to Dismiss the United States' OPA claim against it will be denied.

---

[3]  The B1 Order's ruling concerning Anadarko E&P's alleged status as a lessee of the Macondo prospect does not directly impact the United States' CWA claims against Anadarko E&P.

[4]  Anadarko's Motion to Dismiss Cross-Claims of Halliburton, Cameron, Dril-Quip and Weatherford, [Rec. Doc. 2927] and Anadarko's Motion to Dismiss the Cross-Claims of Transocean [Rec. Doc. 2479].

        Respectfully submitted,

        BINGHAM McCUTCHEN LLP

        /s/ James J. Dragna
        James J. Dragna
        jim.dragna@bingham.com
        Bingham McCutchen LLP
        355 South Grand Avenue
        Suite 4400
        Los Angeles, California 90071-3106
        Telephone (213) 680-6436
        Facsimile (213) 680-8636

        David B. Salmons
        david.salmons@bingham.com
        Randall M. Levine
        randall.levine@bingham.com
        Ky E. Kirby
        ky.kirby@bingham.com
        Michael B. Wigmore
        michael.wigmore@bingham.com
        2020 K Street, NW
        Washington, DC 20006-1806
        Telephone (202) 373-6000
        Facsimile (202) 373-6001

        KUCHLER POLK SCHELL
        WEINER & RICHESON, LLC

        Deborah D. Kuchler, T.A. (La. Bar No. 17013)
        dkuchler@kuchlerpolk.com
        Janika Polk (La. Bar No. 27608)
        jpolk@kuchlerpolk.com
        Robert Guidry (La. Bar No. 28064)
        rguidry@kuchlerpolk.com
        1615 Poydras Street, Suite 1300
        New Orleans, LA  70112
        Tel:  (504) 592-0691
        Fax:  (504) 592-0696

Dated:  Sept. 12, 2011

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was also electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of September, 2011.

                                                          /s/ James J. Dragna
                                                             James J. Dragna