UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179<br><br>SECTION J |
| THIS DOCUMENT RELATES TO:<br>10-1758, 10-1757, 10-1759,<br>10-1760, 10-2087, 10-2731,<br>10-2996, 10-2997 | JUDGE CARL J. BARBIER<br><br>MAG. JUDGE SALLY SHUSHAN |

### SUPPLEMENTAL MEMORANDUM OF COASTAL PARISH DISTRICT ATTORNEYS IN RESPONSE TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINTS OF THE STATES OF LOUISIANA AND ALABAMA

The Department of Wildlife and Fisheries, represented by the District Attorneys of Louisiana coastal parishes, Plaquemines, St. Bernard, Orleans, Jefferson, Tammany, Lafourche, Terrebonne, Iberia, St. Mary, St. Charles and Cameron, submit the following in response to this Court's invitation for briefing on the effect of the Court's B(1) rulings on their civil penalty claims under LSA-R.S. 56:40.1, et seq.[1]  The short answer is that this Court's ruling on B(1) claims does not apply to and will not effect such civil penalty claims.  This Court's B(1) Order has dismissed "state common-law claims for nuisance, trespass, and fraudulent concealment, as well as Plaintiffs' FPDPCA claims..."  The civil penalty claims brought by Louisiana District Attorneys on behalf of the State of Louisiana are not among such claims, and the distinction between these types of claims is significant.

Unlike the dismissed common law claims, for which there are ample and similar remedies at federal admiralty law, there is a significant gap in admiralty law with respect to state-imposed civil

---

[1] See Order of September 1, 2011, Document 3890.

penalties such as those under Title 56, as neither admiralty law nor OPA provide such remedies. Additionally, unlike the state law claims dismissed by the Court, civil penalty claims for damage to wildlife fall within traditional state police powers which have long been recognized as an exception to the exercise of admiralty jurisdiction. More importantly, recognition of such penalty claims, all of the elements of which are fulfilled within state territorial waters, will not detract from the aim of uniformity of standards of conduct for maritime activity that this Court has recognized is the rationale behind applying admiralty law over state common law claims.

## I. BALANCING OF STATE VERSUS MARITIME INTERESTS REQUIRES DIFFERENT RESULT FOR TITLE 56 CLAIMS

As this Court noted, "the fundamental purpose of maritime law [is] to preserve the harmony and appropriate uniform rules relating to maritime matters." Order and Reason, at p. 13, citing *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149 (1920). The Supreme Court has held that the question of whether to apply admiralty law to the exclusion of state law is resolved by balancing the interest of the state in the application of its law with the interest of uniformity in admiralty law. *Kossick v. United Fruit Co.*, 365 U.S. 731, 739, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961), rehearing denied 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961). When there is a gap in the federal law, or where the state interest is one that is particularly compelling, the interest of uniformity in maritime law must cede to the state's interests. *Admiralty & Mar. Law*, §4-2 (5th ed.) With respect to common law claims and claims under FPDPCA, this Court resolved the interest balancing test in favor of not applying the laws of divergent states. However, with respect to claims for civil penalties by state governments, particularly those involving protection of wildlife, the balancing inquiry must be resolved in favor of application of the state civil penalty statutes.

### A.     STATE CIVIL PENALTY CLAIMS SUPPLEMENT MARITIME LAW

It is well recognized that where there is a gap in the federal maritime law, courts may supplement the federal maritime law with state law. *Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063, 1065 n. 5 (5th Cir.1981). Looking to general maritime remedies, OCSLA and OPA, this Court found no gap in federal maritime law with respect to damages claims for state law to fill.[2] Indeed, this Court found that application of some states' law with respect to damages claims would improperly limit recoveries available under maritime and/or federal law. For instance, like many, but not all, of the states whose law was at issue, federal maritime law provides for punitive damages. Hence, with respect to private damage claims, this Court found there was no gap in the federal maritime law necessitating supplementation by state law. Such is not the case with sovereign states' claims for civil penalties, particularly damages for destruction of wildlife as provided by Title 56. Neither maritime law nor OPA provide a state a claim for civil penalties to punish the destruction of its wildlife. Louisiana's civil penalty claims supplement, rather than conflict with, maritime law, and should not be dismissed regardless of whether this Court has found that admiralty law applies to the instant actions.

### B.     STATE POLICE POWERS ARE NOT SUPPLANTED BY ADMIRALTY LAW

Courts have long held that exercise of state police powers does not conflict with admiralty law. *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); *Romero v. International Terminal Operating Co., supra*, 358 U.S. at 373-74, 79 S.Ct. at 480-81; *Just v. Chambers*, 312 U.S. 383, 387-92, 61 S.Ct. 687, 690-93, 85 L.Ed. 903 (1941). While this Court found with respect to damages claims that admiralty law applies to the exclusion of state

---

[2] Order and Reasons, p. 14.

common law, it must reach a different conclusion with respect to the exercise of state police powers such as the imposition of penalties for oil spills and destruction to wildlife. Such exercise of state police powers, unlike claims for damages that would be "redefining requirements or limits of a remedy available at admiralty" have been found not to conflict with admiralty law. *Powell,* 644 F.2d at 1065, n. 5.

Courts have long recognized that states have a particular interest in the protection of wildlife, and that such activities are "peculiarly within" state's police powers. *Lacoste v. Department of Conservation of State of Louisiana*, 263 U.S. 545, 550-551, 44 S.Ct. 186, 188-189 (1924); *Baldwin v. Fish & Game Commission of Montana*, 436 U.S. 371, 391, 98 S.Ct. 1852, 1864 (1978). In *Lacoste*, the United States Supreme Court upheld a state wildlife statute against a commerce clause challenge, reasoning:

> The legislation is a valid exertion of the police power of the state to conserve and protect wild life for the common benefit. It is within the power of the state to impose the exaction as a condition precedent to the divestiture of its title and to the acquisition of private ownership.... Protection of the wild life of the state is peculiarly within the police power, and the state has great latitude in determining what means are appropriate for its protection.

*Lacoste,* 44 S.Ct. at 188-189.

While this Court found that federal maritime law applies to the exclusion of state common law damages claims, it must reach a different conclusion with respect to a state wildlife protection statute, which the Supreme Court has recognized is peculiarly within state police power.

Defendants will doubtless argue that this Court's holding limiting *Askew* to discharges within state territorial waters undermines the district attorneys' position. While the District Attorneys take issue with this Court's limiting of the *Askew* holding to discharges within state territorial waters, that

holding is easily distinguished from the issue presented by the District Attorneys' claims.[3] First, in its earlier decision, this Court was dealing with matters of damages, not exercise of state police power. Second, and more important to the claims at issue here, all of the conduct at issue occurred within Louisiana state territorial waters.

As the District Attorneys noted in their original opposition, the OPA savings clause saves state penalties both for "discharge of oil in a state OR other pollution *by* oil within a state," recognizing that at least certain state law claims regulating oil pollution originating outside of a state are preserved. 33 U.S.C.A. §2718(a)(1)(A) (emphasis added). While this Court has found that this savings claim cannot be read to allow for the imposition of state law claims where admiralty law applies, it certainly contemplates the existence of some state laws governing oil pollution originating outside of a state' territory which would not be supplanted by admiralty law. Title 56 is such a law. Not only is Title 56 governing an area peculiarly within traditional state police powers, but the law also is limited to conduct entirely within state territorial waters, regardless of whether the source of the polluting oil was outside of state waters.

A claim under Title 56 consists of two simple elements: 1) killing or injuring of Louisiana wildlife, 2) without authority. The claim regulates no other conduct. It does not purport to impose differing standards of conduct on maritime activities, nor does it seek to redefine the limits of liability imposed under admiralty law. Such a statute, which is limited in its scope of inquiry to conduct occurring within state waters, and which arises from a long-recognized state police power, is the very sort of claim which the *Askew* court found not displaced by admiralty law, and which the

---

[3] The District Attorneys reserve the right to raise this issue on appeal of this matter, but will not take up this Court's time addressing a matter on which this Court has already ruled.

framers of OPA contemplated when they created a savings for pollution by oil which did not result from a discharge within the state.

Moreover, unlike claims involving ship-to-shore pollution, as to which this Court has found that application of a state's law is limited to its territorial waters, the state police power to protect its wildlife is a power that the Supreme Court has expressly recognized as extending beyond a state's borders. The Supreme Court has repeatedly held that a State may reach beyond its borders under its police power, to regulate game and fish if those regulations have a sufficient nexus with the protection and preservation of wildlife within the State. *Silz v. Hesterberg*, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75 (1908); *Bayside Fish Flour Co. v. Gentry*, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936).

## II. THE SITUS FOR THE TITLE 56 CLAIM IS NOT THE SAME AS DISMISSED CLAIMS

This Court focused much of its discussion of the dismissal of state law claims on the situs of the commencement of the event: that the oil spill event commenced with an event in federal waters, outside of any state. The situs analysis changes considerably when considering Title 56 claims for destruction to wildlife. *All* of the elements of a claim under Title 56 are fulfilled in state territorial waters. The state's claim arises because wildlife was killed in its territorial waters without authority, regardless of the cause of the destruction of the state's wildlife. That the event which caused the killing of Louisiana wildlife in Louisiana waters commenced outside of state territorial waters is without moment. Louisiana's concern is with the unlicensed destruction of its state wildlife. Unlike the claims which this Court dismissed, all of which necessitate some degree of inquiry into the standards of conduct to be applied to drilling operations in federal waters, the claims

here involve no inquiry into conduct in international waters. All that is required, and hence all that is regulated, is the killing or injury of wildlife in Louisiana state waters.

The situation is analogous to a person in Mississippi firing a rifle across state lines and killing a citizen in Louisiana. No one would question Louisiana's exercise of its jurisdiction to bring that individual to justice within Louisiana courts for the killing of a Louisiana citizen on Louisiana soil, regardless of whether the inciting conduct, the firing of the rifle, took place in another state. In that instance, Louisiana is not exercising its jurisdiction to regulate the conduct of discharging a weapon outside of its jurisdiction. Rather, it is exercising its jurisdiction consistent with its inherent police power to punish the killing of a Louisiana citizen on Louisiana soil.

So here is Louisiana exercising its inherent police power to protect its wildlife by imposing penalties for the destruction of wildlife. Exercise of such jurisdiction does not involve the regulation of or imposition of standards of conduct for offshore drilling operations outside of the state. Rather, Louisiana jurisdiction is focused exclusively on the unauthorized destruction of Louisiana wildlife within Louisiana territory. Whether the commencing incident is the firing of a gun in Mississippi, or the spilling of oil in international waters, Louisiana has jurisdiction to punish the killing of its citizens or its wildlife on its soil, which killings are in and of themselves unlawful without respect to how or where the actions which caused them took place.

## CONCLUSION

For the foregoing reasons, the rationale under which this Court dismissed certain B(1) claims does not apply to the claims of government entities for civil penalty, and most certainly does not apply to the claims brought by parish District Attorneys for civil penalties for damage to wildlife under LSA-R.S. 56:40.1, et seq.

Respectfully submitted, this 12th day of September, 2011.

| | |
|---|---|
| **COUNSEL FOR PLAQUEMINES PARISH DISTRICT ATTORNEY CHARLES J. BALLAY:** | s/ *Stephen B. Murray, Jr.* |
| | Stephen B. Murray, Jr. (23877) |
| | *smurrayjr@murray-lawfirm.com* |
| | Stephen B. Murray (9858) |
| | Arthur M. Murray (27694) |
| | MURRAY LAW FIRM |
| | 650 Poydras Street, Suite 2150 |
| | New Orleans, Louisiana  70130 |
| | T:  504.525.8100 |
| | |
| | Philip F. Cossich, Jr. (1788) |
| | David A. Parisola (21005) |
| | Christina Cossich de Young (32407) |
| | Darin S. Britt (31639) |
| | COSSICH SUMICH PARSIOLA & TAYLOR |
| | 8397 Highway 23, Suite 100 |
| | Belle Chasse, Louisiana 70037 |
| | T:  504.394.9000 |
| | |
| | Charles J. Ballay (2719) |
| | PLAQUEMINES PARISH DISTRICT ATTORNEY |
| | 301-A Main Street |
| | Belle Chasse, Louisiana 70037 |
| | T:  504.297.5146 |
| | |
| **COUNSEL FOR LAFOURCHE PARISH DISTRICT ATTORNEY CAMILLE A. "CAM" MORVANT, II:** | Walter J. Leger, Jr. |
| | LEGER & SHAW |
| | 600 Carondelet Street, Ninth Floor |
| | New Orleans, Louisiana 70130 |
| | T: 504.588.9043 |
| | |
| | Camille A. "Cam" Morvant, II |
| | LAFOURCHE PARISH DISTRICT ATTORNEY |
| | 103 Maronge Street, Suite A |
| | Thibodaux, Louisiana 70301 |
| | T:  985.446.5810 |

| | |
|---|---|
| **COUNSEL FOR TERREBONNE PARISH DISTRICT ATTORNEY JOSEPH L. WAITZ, JR.:** | Donald T. Carmouche<br>TALBOT, CARMOUCHE & MARCELLO<br>214 W. Cornerview Street<br>Gonzales, Louisiana 70737<br>T:  225.644.7777<br><br>C. Berwick Duval, II<br>Stanwood R. Duval<br>DUVAL, FUNDERBURK, SUNDBERY,<br>  LOVELL & WATKINS<br>101 Wilson Avenue<br>Houma, Louisiana 70364<br>T:  985.876.6410<br><br>Christopher J. St. Martin<br>Charles C. Bourque, Jr.<br>ST. MARTIN & BOURQUE<br>4084 Highway 311<br>Houma, Louisiana 70360<br>T:  985.876.3891<br><br>Joseph L. Waitz, Jr.<br>TERREBONNE PARISH DISTRICT ATTORNEY<br>220 Courthouse Annex<br>7865 Main Street<br>Houma, Louisiana 70360<br>T:  985.873.6500 |
| **COUNSEL FOR CAMERON PARISH DISTRICT ATTORNEY CECIL R. SANNER:** | Calvin C. Fayard, Jr.<br>LAW OFFICE OF CALVIN C. FAYARD, JR.<br>519 Florida Boulevard<br>Denham Springs, Louisiana 70726<br>T:  225.664.4193<br><br>Cecil R. Sanner<br>CAMERON PARISH DISTRICT ATTORNEY<br>P.O. Box 280<br>Cameron, LA  70631<br>T: 337.775.5720 |

| | |
|---|---|
| **COUNSEL FOR ST. TAMMANY PARISH DISTRICT ATTORNEY JOSEPH L. WAITZ, JR.:** | Calvin C. Fayard, Jr.<br>LAW OFFICE OF CALVIN C. FAYARD, JR.<br>519 Florida Boulevard<br>Denham Springs, LA 70726<br>T: 225.664.4193<br><br>Shawn C. Reed<br>HOWARD & REED<br>516 N. Columbia Street<br>Covington, LA 70433<br>T: 985.893.3607<br><br>Tommy W. Thornhill<br>THORNHILL LAW FIRM<br>1308 9th Street<br>Slidell, LA 70458<br>T: 985.641.5010<br><br>Walter P. Reed<br>ST. TAMMANY PARISH DISTRICT ATTORNEY<br>701 N. Columbia Street<br>Covington, LA 70433<br>T: 985.809.8383 |
| **COUNSEL FOR ST. BERNARD PARISH DISTRICT ATTORNEY JOHN F. ROWLEY:** | Peter J. Butler, Jr.<br>BREAZEALE, SACHSE & WILSON<br>909 Poydras Street, Suite 1500<br>New Orleans, Louisiana 70112<br>T: 504.584.5454<br><br>John F. Rowley<br>ST. BERNARD PARISH DISTRICT ATTORNEY<br>P.O. Box 947<br>Chalmette, Louisiana 70044-0947<br>1101 West St. Bernard Highway<br>Chalmette, Louisiana 70043<br>T: 504.271.1658 |

| | |
|---|---|
| **COUNSEL FOR ORLEANS PARISH DISTRICT ATTORNEY LEON A. CANNIZZARO, JR.:** | Stephen B. Murray, Jr. (23877)<br>Stephen B. Murray (9858)<br>Arthur M. Murray (27694)<br>MURRAY LAW FIRM<br>650 Poydras Street, Suite 2150<br>New Orleans, Louisiana  70130<br>T:  504.525.8100<br><br>Philip F. Cossich, Jr. (1788)<br>David A. Parisola (21005)<br>Christina Cossich de Young (32407)<br>Darin S. Britt (31639)<br>COSSICH SUMICH PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, Louisiana 70037<br>T:  504.394.9000<br><br>Stephen J. Herman<br>HERMAN, HERMAN, KATZ & COTLAR<br>820 O'Keefe Avenue<br>New Orleans, Louisiana 70113<br>T:  504.581.4892<br><br>Mickey P. Landry (22817)<br>Frank J. Swarr (23322)<br>David R. Cannella (26231)<br>Philip C. Hoffman (32277)<br>LANDRY & SWARR<br>1010 Common Street, Suite 2050<br>New Orleans, Louisiana 70112<br>T:   504.299.1214<br><br>Fred L. Herman (06811)<br>ASSISTANT DISTRICT ATTORNEY/SPECIAL COUNSEL FOR THE ORLEANS PARISH D.A.<br>1010 Common Street, Suite 3000<br>New Orleans, Louisiana 70112<br>T:  504.581.7070<br><br>Leon A. Cannizzaro, Jr.<br>ORLEANS PARISH DISTRICT ATTORNEY<br>619 S. White Street<br>New Orleans, Louisiana 70112 |

| | |
|---|---|
| **COUNSEL FOR IBERIA PARISH AND ST. MARY PARISH DISTRICT ATTORNEY JOHN PHILLIP HANEY:** | Calvin C. Fayard, Jr.<br>LAW OFFICE OF CALVIN C. FAYARD, JR.<br>519 Florida Boulevard<br>Denham Springs, Louisiana 70726<br>T:   225.664.4193<br><br>Donald T. Carmouche<br>TALBOT, CARMOUCHE & MARCELLO<br>214 W. Cornerview Street<br>Gonzales, Louisiana 70737<br>T:  225.644.7777<br><br>Tommy W. Thornhill<br>THORNHILL LAW FIRM<br>1308 9th Street<br>Slidell, Louisiana 70458<br>T:  985.641.5010<br><br>John Phillip Haney<br>DISTRICT ATTORNEY FOR IBERIA PARISH AND ST. MARY PARISH<br>300 Iberia Street, Suite 200<br>New Iberia, Louisiana 70560-4583<br>T:  337. 369.4420 (Iberia Parish)<br>T:  337.828.4100 (St. Mary Parish) |
| **COUNSEL FOR JEFFERSON PARISH DISTRICT ATTORNEY PAUL D. CONNICK, JR.:** | Calvin C. Fayard, Jr.<br>LAW OFFICE OF CALVIN C. FAYARD, JR.<br>519 Florida Boulevard<br>Denham Springs, Louisiana 70726<br>T:   225.664.4193<br><br>Paul D. Connick, Jr.<br>JEFFERSON PARISH DISTRICT ATTORNEY<br>200 Derbigny Street<br>Gretna, Louisiana 70053-5850<br>T:  504.368.1020 |

| | |
|---|---|
| **COUNSEL ST. CHARLES PARISH DISTRICT ATTORNEY HARRY J. MOREL, JR.:** | Philip F. Cossich, Jr. (1788)<br>David A. Parisola (21005)<br>Christina Cossich de Young (32407)<br>Darin S. Britt (31639)<br>COSSICH SUMICH PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, Louisiana 70037<br>T:  504.394.9000<br><br>Harry J. Morel, Jr.<br>ST. CHARLES PARISH DISTRICT ATTORNEY<br>P.O. Box 680<br>Hahnville, Louisiana 70057-0680<br>T:  985.783.6263 |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Supplemental Memorandum of Coastal Parish District Attorneys in Response to Motion to Dismiss the First Amended Complaints of the States of Louisiana and Alabama** has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in DL 2179, on this 12th day of September, 2011.

  /s/   *Stephen B. Murray, Jr.*
          STEPHEN B. MURRAY, JR.