UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| 10-cv-3059 and 11-cv-0516 § | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATE OF LOUISIANA'S BRIEF REGARDING THE EFFECT OF THE COURT'S ORDER ON THE B1 MASTER COMPLAINT [REC. DOC. 3830]**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), who respectfully submits this Response to the Court's Order [Rec. Doc. 3891] relative to the effect the Court's Order on the Motions to Dismiss the B1 Master Complaint ("B1 Order and Reasons")[Rec. Doc. 3830] has on the pending Motions to Dismiss Louisiana's First Amended Complaint.  Specifically, the Court properly determined that: (1) the Oil Pollution Act ("OPA") does not displace general maritime law claims against non-Responsible Parties, (2) claims for punitive damages are available for general maritime law claimants, (3) OPA does not expressly require "proximate cause" and moratorium claims have been sufficiently pled, and (4) there is no presentment requirement for claims against non-Responsible Parties.

However, the State of Louisiana has unique claims, available only to states and with different procedural requirements than those applicable to private parties; therefore, the B1 Order and Reasons should not affect the State's claims regarding: (1) OPA's specific preservation of State law regarding liability and penalties for oil discharges that cause pollution within a State; (2) OPA's distinct presentment requirements as applicable to government; and (3) the

1

availability of a declaratory judgment on OPA liability.  To the extent that this Court's B1 Order and Reasons addressed the application of Florida law as it applies to the claims in the B1 Master Complaint, the State contends that the application of Louisiana's Oil Spill Prevention and Response Act ("LOSPRA") and the Louisiana Environmental Quality Act ("LEQA") has not been affected by the ruling as no claims in the B1 Master Complaint fall under these laws.

### I.  OPA's Preservation of the State's Civil and Statutory Claims

The DEEPWATER HORIZON ("DWH") incident produced the largest oil spill in U.S. waters, releasing more than 200 million gallons of oil into the Gulf of Mexico over approximately eighty-four days.  Too much of that oil still remains in Louisiana waters, marshes and other habitats, producing ongoing injuries to the State.  The disaster directly impacted the economies and ecologies of five Gulf states.  Without doubt, this is exactly the sort of catastrophe that OPA was intended to address.

As this Court has concluded: "OPA applies of its own force."  B1 Order and Reasons, p. 11.  OPA applies to any discharge of oil into navigable waters or the adjoining shoreline.[1]  OPA was intended to displace all existing federal oil spill liability and compensation laws in favor of a comprehensive solution.[2]  Congress has both the power to create such a law and to trump maritime law in the process.[3]

---

[1] "Discharge" is broadly defined to cover the facts of this case.  *See* 33 U.S.C. §2701(7) (2011).  The B1 Order and Reasons appears to have created an OPA exception for offshore discharges from "vessels" as defined by maritime law operating in the Outer Continental Shelf ("OCS"). Nothing in OPA supports this exception.  Indeed, OPA specifically discusses mobile offshore drilling units ("MODU") like the DWH.

[2] *United States v. Locke*, 529 U.S. 89, 106 (2000); *ISLA Corp. v. Sundown Energy*, L.P., No. 06-8645, 2007 WL 1240212, at *2 (E.D. La. Apr. 27, 2007).  OPA is "comprehensive" for purposes of economic and natural resource damage recoveries. OPA does not, however, address personal injury or wrongful death, as admiralty law applies to those claims. By the same token, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which deals with "hazardous wastes," does not provide a private cause of action for personal injuries. 42 U.S.C §§ 9601-9675 (2011). CERCLA similarly saves all state claims.

[3] The enactment of a comprehensive federal rule in an area of national concern by Congress generally trumps federal common law and admiralty claims, unless expressly preserved.  *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) (finding the Clean Water Act ("CWA"), despite its savings clause, displaces federal common law).  A

With OPA, Congress also demonstrated the intent to enact a comprehensive law on liability and damages arising from oil spills. *S. Port Marine, LLC v. Gulf Oil Ltd. Partnership*, 234 F.3d 58, 65-66 (1st Cir. 2000); *Tanquis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2010). OPA § 2702 (Elements of liability) expressly provides the requisite non obstante language: "Notwithstanding any other provision or rule of law, and subject to the provisions of this Act…," *i.e.*, notwithstanding any other federal or state laws, including maritime.[4] Virtually all defendants contend that OPA displaces general maritime law.[5] *See also E. River Steamship Corp. v. Transamerica,* 476 U.S. 858, 864 (1986) ("Absent a relevant statute, the general maritime law, as developed by the judiciary, applies.") (citations omitted).

The inclusion of savings clauses for state laws and general maritime law in no way counts against OPA's comprehensive sweep. Congress sought to preserve the states' rights to provide their citizens and public trust a higher level of protection.[6] Savings clauses appear in many comprehensive federal laws. For example, state drug product cases often proceed even in the face of comprehensive drug regulations by the FDA. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 566 (2009). However, this term the United States Supreme Court found in *PLIVA, Inc. v.*

---

comprehensive federal law may be said to "occupy the field," even when it preserves state law claims. *E.g.*, *id.*; *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) (holding that the CWA §§ 510, 505(e) preserve state law rights).

[4] *E.g.*, H.R. REP. NO. 101-653, at 3 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 779, 781 ("Liability under this Act is established notwithstanding any other provision or of the law. This means that the liability provisions of this Act would govern compensation for removal costs and damages notwithstanding any limitations under existing statutes, such as the Act of March 3, 1851 (46 U.S.C. 183), or under existing requirements that physical damages to the proprietary interests of the claimant be shown."); *Gabarick v. Laurin Maritime,* 623 F. Supp. 2d 741, 744 (E.D. La. 2009) (finding that OPA preempts general maritime law and highlighting non-obstante language, "Notwithstanding"); *see also City of Milwaukee v. Illinois*, 451 U.S. 304, 311 (1981) (Instead of asking whether "Congress ha[s] affirmatively proscribed the use of federal common law,"); *U.S. v. Oswego Barge*, 664 F.2d 327, 335 (2d Cir. 1981) ("While federalism concerns create a presumption against preemption of state law, including state common law,. . . separation of powers concerns create a presumption in favor of preemption of federal common law whenever it can be said that Congress has legislated on the subject.").

[5] *See* MOEX's Reply, pp. 3-5, [Rec. Doc. 3556]; Cameron Reply, pp. 11, [Rec. Doc. 3554]; M-1 Reply, pp. 2-7, [Rec. Doc. 3581]; Weatherford Brief, pp. 5-6, [Rec. Doc. 3580]; Anadarko Reply, pp. 13-14, [Rec. Doc. 3582]; BP Reply, pp. 7-11, [Rec. Doc. 3584]; Halliburton Energy, pp. 8-11. [Rec. Doc. 3555]; Transocean 12(b)(6) Motion, pp. 9-12 [Rec. Doc. 2657-1].

[6] *Askew v. Am. Waterways Operator*, 411 U.S. 325, 335 (1973) ("The damage to state interests already caused by oil spills, the increase in the number of oil spills, and the risk of ever-increasing damage by reason of the size of modern tankers underlie the concern of coastal States.") (footnote omitted).

*Mensing*, 131 S. Ct. 2567 (2011), that the non obstante provision, and not the savings clause, is critical to deciding whether federal legislation displaces other laws.[7]

OPA § 2702(a) employs non obstante language to make clear its comprehensive scope. OPA § 2702(a) also makes s Responsible Party liable when the oil enters navigable waters or the shore: "[I]nto or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident." In other words, OPA's preservation of state law claims and general maritime damages, such as punitive damages, supports the position that OPA is comprehensive and is therefore the controlling law applicable to oil discharges. As set forth in Section 2718(a) of OPA:

> (a) Preservation of State authorities…. Nothing in this Act…shall
> (1)   affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to-
>    (A)   the discharge of oil or other pollution by oil within such State; or
>    (B)   any removal activities in connection with such a discharge

The definition of discharge is broad enough to include an offshore discharge of oil that enters and causes pollution within a state.[8]

Section (c) of this savings clause preserves additional state rights:

> Nothing in this Act…shall in any way affect, or be construed to affect, the authority of the U.S. or any State… thereof –
> (1)   to impose additional liability or additional requirements, or
> (2)   to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any

---

[7] Case law rejects the idea of an interpretation of OPA that in effect nullifies its plain language. *TRW Inc. v. Andrews*, 534 U.S. 19 (2001) (stating that no part of a statute should be rendered superfluous, void or insignificant).
[8] *See St. Joe Co. v. Transocean Offshore Deepwater*, 774 F.Supp.2d 596, 604 (D.Del. 2011) (finding that OPA § 2718(a)(1)(A) explicitly prevents preemption of state law liability for "*the discharge of oil or other pollution by oil,*" a proposition confirmed by the legislative history and judicial decisions)(emphasis in original).

> violation of law additional liability or additional requirements related to the discharge, or substantial threat of a discharge of oil.

33 U.S.C. § 2718(c). An interpretation of this savings provision as preserving state police powers over pollution within its waters only if the source of the pollution is physically within a state's territorial waters is an impermissibly narrow reading of OPA and is contrary to OPA's legislative history as well as judicial interpretations of the states' police powers.[9]

Further, as stated by this Court, general maritime law applies to the current matter only if it is not displaced by a federal statute.[10] General maritime law, to the extent not covered by OPA, is also saved by OPA, and with it the availability of punitive damages for the sub-class of people who suffered a maritime injury. *Atlantic Sounding v. Townsend,* 129 S. Ct. 2561 (2009), held that general maritime punitive damages are available in claims for willful failure to pay maintenance and cure under the Jones Act. While the holding of *Atlantic Sounding* is significant, the rationale contained in the *Mensing* decision must also be applied here. Nothing in *Atlantic Sounding* or *Exxon Shipping v. Baker,* 554 U.S. 471 (2008), undermines Louisiana's position that OPA is comprehensive, even with the preservation of state law claims and maritime punitive damages against both responsible parties and other defendants. OPA's legislative history demonstrates that Congress desired to create a single oil spill liability law out of the patchwork of then-applicable laws. S. REP. NO. 101-94; JONATHAN L. RAMSEUR, CONGRESSIONAL RESEARCH SERVICE, OIL SPILLS IN U.S. COASTAL WATERS: BACKGROUND, GOVERNANCE, AND ISSUES FOR CONGRESS 11 (2010) (describing pre-OPA oil spill laws as an "ineffective patchwork").

---

[9] *See* S.REP. NO. 101–94, at 6 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 727("To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal standards.... This legislation, as reported by the Committee, would permit such State laws to continue and would not preclude enactment of new State laws.").
[10] B1 Order and Reasons, p.11 [Rec. Doc. 3830].

One of the oil spill laws which came under heavy criticism was the 1851 Limitation of Liability Act:

> Finally, the 1851 Limitation of Liability Act represents a potentially devastating bar to effective recovery of either cleanup costs or damages. . . . Congress might be well advised to examine other approaches or to consider whether the rationale underlying the Liability Act continues to have vitality as we enter the last decade of the twentieth century.

S. REP. NO. 101-94, at 4. Further,

> If applied to these circumstances, the 1851 statute virtually eliminates any meaningful liability on the part of the owner or operator and would unravel the balance of liability set forth herein. Therefore, this bill completely supersedes the 1851 statute with respect to oil pollution.

S. REP. NO. 101-94, at 14.[11] Congress replaced the inadequate patchwork of federal laws with one that embraced the risk of unlimited liability under both Federal and state laws in order to ensure complete compensation for oil pollution damages and incentivize safe conduct.

## II. States' Police Powers To Impose Liability for Pollution Affecting the State.

There is an historic tension between general maritime and state regulation, but under OPA, as evidenced by the statute's legislative history, state regulations survive. Many decisions supporting maritime interests properly talk about the need for uniformity.[12] OPA-type legislation had languished for years before the Exxon Valdez Oil Spill. One of the key fights precluding earlier passage was the role of the states and state law in oil spills. OPA was passed after years of opposition to predecessor statutes, despite the demands for uniformity by maritime interests. The legislative history demonstrates that preservation of state laws was opposed by

---

[11] *See also Tennessee Gas Pipeline v. Houston Casualty Ins.*, 87 F.3d 150, 154 (5th Cir. 1996) ("Congress knew that federal law, including maritime law, was inadequate to meet the full range of disputes that would arise on the OCS.").

[12] *E.g., S. Pac. v. Jensen*, 244 U.S. 205, 216 (1917); *Knickerbocker Ice v. Stewart*, 253 U.S. 149 (1920).

maritime interests.[13] Indeed, Congress noted that lack of uniformity and the spectre of unlimited damages would act as a deterrent to such spills. Ultimately OPA fully empowered existing state laws and encouraged additional laws, such as mini-OPA legislation.[14] Congress' goal in enacting OPA was to prevent oil spills with the certain threat of unlimited liabilities arising from a comprehensive compensatory scheme. Indeed, the same reasoning this Court adopted in the B1 Order and Reasons for imposing punitive damages supports the application of additional liability for damages and penalties under state law, as preserved by OPA – "the behavior that would give rise to punitive damages under general maritime law-gross negligence-would also break OPA's limit of liability." B1 Order and Reasons, p. 27.

In *In re Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623 (1st Cir. 1994), the United States Court of Appeals for the First Circuit was presented with the question of whether federal maritime law preempts Rhode Island legislation allowing for expanded state law remedies for oil pollution damage.[15] In holding that the Rhode Island Compensation Act was not preempted by the Constitution's admiralty clause, the court reasoned that:

> In balancing the state interest in regulation against a potential overriding federal need for harmony or uniformity, we start with Rhode Island's interest in implementing its Compensation Act. No one can doubt that the state's interest in avoiding pollution in its navigable waters and on its shores, and in redressing injury to its citizens from such pollution, is a weighty one. In *Huron Portland Cement,* [362 U.S. 440 (1960),] the Supreme Court described state

---

[13] RAMSUER, *supra* p. 7, at 11 (discussing contentious issues that precluded pre-*Exxon Valdez* passage of comprehensive oil spill legislation, including states' rights issues).

[14] The importance of state laws to OPA cannot reasonably be contested:
> What the Nation needs is a package of complementary international, national, and State laws that will adequately compensate victims of oil spills, provide quick, efficient cleanup, minimize damage to fisheries, wildlife and other natural resources and internalize those costs within the oil industry and its transportation sector.

S. REP. NO. 101-94, at 2. OPA's legislative history does not discuss state penalty laws or maritime punitive damages, but both are saved under the maximum liability approach of OPA. The legislative history of OPA makes clear that its limitations could be exceeded by recoveries rooted in state law.

[15] *Ballard Shipping*, 32 F.3d at 624. The pollution involved in *Ballard* resulted from an oil tanker that ran aground spilling oil into Narragansett Bay. The spill occurred in 1989 so OPA was not applicable.

7

>air pollution laws as a classic example of police power, and continued: "In the exercise of that power, the states ... may act, in many areas of interstate commerce *and maritime activities,* concurrently with the federal government." (emphasis added). . . .
>
>The federal interest in limiting remedies is more subtle but also not without importance. The Compensation Act does not regulate the out-of-court behavior of ships or sailors-what is sometimes called "primary conduct"; rather the act is concerned with the liability imposed for conduct that is already unlawful. [16]

Here, as in *Ballard Shipping*, the laws that Louisiana seeks to enforce and that are preserved under OPA – LOSPRA and the LEQA – do not regulate primary conduct, but rather impose liabilities and penalties for conduct that is unlawful. Thus, this case is distinguishable from *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), because that case was concerned with the application of another state's discharge standards to conduct that was lawful in the source state.[17] In this instance, the DWH discharge was not permitted.[18]

OPA is about liability that fully compensates and deters.[19] *E.g.,* S. REP. NO. 101-94, at 2 ("Consequently, preventing oil spills is more important than containing and cleaning them quickly.")[20] The State has both the authority and obligation to police oil spills that invade its waters from federal or other states' waters and to impose additional liabilities. The spill at issue

---

[16] *Id.* at 629 (citations omitted).

[17] *See also* Louisiana's Memorandum in Opposition to Motions to Dismiss, p. 9-11 [Rec. Doc. 3213].

[18] Nothing in LOSPRA or LEQA purports to provide Louisiana with the authority to permit activities outside of its territorial waters, which supports the position that neither statute regulates primary conduct. However, the federal Clean Water Act also does not contemplate a permitting scheme for oil spills under any circumstance.

[19] RAMSEUR, *supra* p. 7, at 5 ("The high cost associated with the *Exxon Valdez* spill and the threat of broad liability imposed by OPA (in some scenarios, unlimited liability), have likely been the central drivers for the spill volume decline seen in the 1990s. . .. After the 1989 spill, some states enacted additional legislation, which may have contributed to the declines.") (footnotes omitted).

[20] This point is also made at S.REP. NO. 101-94, at 6:
>Any State wishing to impose a greater degree of protection for its own resources and citizens is entitled to do so. On the other hand, a State might feel adequately protected by the Federal statute and therefore choose not to enact additional State law. In any event, the Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the States while at the same time preempting their rights to their own laws. Of the 24 States with oil spill liability and compensation laws, 17 of them have liability without specified limits. This is based on two widely accepted principles: a polluter should pay in full for the costs of oil pollution caused by that polluter; and, a victim should be fully compensated.

in *Askew v. American Waterways Operator*, 411 U.S. 325 (1973), did originate from a spill in state territorial waters, but nothing in the Court's reasoning sought to link the state's police power to that one fact. Indeed, the Court specifically ruled against allowing "federal admiralty jurisdiction to swallow most of the police power of the States over oil spillage—an insidious form of pollution of vast concern to every coastal city or port and to all the estuaries on which the life of the ocean and the lives of the coastal people are greatly dependent." *Id.* at 328-329, 337 (ship-to-shore pollution control is "historically within the reach of the police powers of the States"). The Court instead supported Congress' intent to leave the states "free to impose 'liability' in damages for losses suffered both by the State and by private interest," regardless of the source of the pollution. *Id.* at 334.

### III.   Declaratory Judgment

OPA was designed to drive settlements by imposing strict, joint and several liability on Responsible Parties, and then allowing them to seek subrogation and contribution under OPA §§ 2709 and 2715. In addition, the goal of driving settlements is enhanced by provisions which contemplate declaratory judgments on liability. Here, OPA, and distinctly, LOSPRA are the underlying laws. Declaratory judgment on OPA liability is not just permissible, but also desirable. OPA § 2717(f)(2); *See,* Louisiana's Memorandum, pp. 19-24 [Rec. Doc. No. 3213].

### IV.   Government/Presentment

On economic and natural resource damages, Louisiana asserts that government is not subject to a presentment requirement, or at least the same presentment requirement, applicable to individuals under OPA. Louisiana's Memorandum, p. 11-15 [Rec. Doc. 3213]. BP has argued that the State is forced to present claims, have them rejected in whole or in part, and then be forced to file suit piecemeal—item by item, department by department. Louisiana has asserted presentment here. In short, before the three-year OPA limitation runs, a state is entitled to sue

9

for all of its claims instead of awaiting the completion of the development, presentment and rejection of all of its claims before filing in court under OPA.[21]

### V. **Moratorium Damages**

The Court correctly rejected Defendants' proximate cause argument under OPA. OPA § 2702(a) allows recovery for damages resulting from the "incident." "Incident" is defined in OPA as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." OPA § 2701(14). There is no causation language in OPA. Rather, it creates status offenses by making those persons responsible for the discharge of oil liable for all cleanup, restitution and restoration costs; thus, incentivizing prevention of releases as well as voluntary cleanup of releases by Responsible Parties. In addition, OPA guarantees that the full extent of damage is paid by the polluter, not the taxpayer.[22]

Dated this 12th day of September, 2011.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL | KANNER & WHITELEY, LLC |
| | /s/ Allan Kanner |
| James Trey Phillips | Allan Kanner |
| First Assistant Attorney General | Elizabeth B. Petersen |
| Megan K. Terrell | David A. Pote |
| Assistant Attorney General | Douglas R. Kraus |
| Section Chief –Environmental | 701 Camp Street |
| State of Louisiana | New Orleans, LA 70130 |
| P.O. Box 94005 | Telephone: (504) 524-5777 |
| Baton Rouge, LA 70804-9005 | **Special Counsel for Plaintiff** |
| Telephone: (225) 326-6708 | **Attorney General, State of Louisiana** |

---

[21] At best, defendants raise a prematurity issue which is outweighed by the judicial economy. *Cf. United States v. Hardage*, 982 F.2d 1436, 1445 (10th Cir. 1992) (discussing allocation of cleanup costs under CERCLA).

[22] In *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir. 1985), the Court found that Congress specifically declined to include a nexus or causation requirement in CERCLA.

HENRY DART,
ATTORNEYS AT LAW P.C.

/s/ Henry T. Dart
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

SHOWS, CALI, BERTHELOT &
WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC

/s/ T. Allen Usry
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

MARTEN LAW, PLLC

/s/ Bradley M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

11

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Louisiana's Brief Regarding the Effect of the court's Order on the B1 Master Complaint has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of September, 2011.

            Kanner & Whiteley, L.L.C.


            _/s/ Allan Kanner_____
            Allan Kanner
            a.kanner@kanner-law.com