UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the<br>GULF OF MEXICO, on<br>APRIL 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases in Pleading Bundle Section III.B(3)* | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**MEMORANDUM OF NALCO COMPANY, NALCO HOLDINGS LLC, NALCO
FINANCE HOLDINGS LLC AND NALCO HOLDING COMPANY
IN RESPONSE TO COURT'S ORDER INVITING BRIEFING
ON IMPACT OF B1 OPINION ON OTHER MOTIONS TO DISMISS**

Nalco Company ("Nalco"), Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company (collectively, the "Nalco Entities") respectfully submit this Memorandum in response to the Court's September 1, 2011 Order (Rec. Doc. 3891) inviting briefing as to what effect the Court's Order and Reasons of August 26, 2011 (Rec. Doc. 3830) (the "B1 Opinion") has on other Motions to Dismiss pending in this MDL.[1]

As the Court is aware, Nalco filed a Motion to Dismiss the claims that have been asserted against it in the B3 Bundle Master Complaint ("B3 Complaint") (Rec. Doc. 1409) (the "B3

---

[1] In the original B3 Bundle Master Complaint, Plaintiffs named Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company as defendants. In their Amended B3 Bundle Master Complaint ("Amended Complaint") (Rec. Doc. 1805-1), Plaintiffs did not name these Nalco Entities as defendants. Because Plaintiffs no longer seek to recover from these Nalco Entities, the claims against them should be dismissed.

Motion").[2]  The B3 Motion is fully briefed and oral argument took place on May 26, 2011.  In an effort to assist the Court, Nalco has prepared a chart that outlines the impact of this Court's B1 Opinion on the arguments in its B3 Motion, which is attached hereto as Exhibit A.  Nalco provides a more thorough explanation of the impact of the B1 Opinion below on its principal ground for dismissal – conflict preemption.

Since the briefing and oral argument on Nalco's B3 Motion, this Court has confirmed that, as a matter of fact, the federal government has controlled the spill response as it was required to do, as a matter of federal law.  This Court has expressly determined that the clean-up activities in the Gulf of Mexico "have been under the control of the National Incident Commander, Federal On Scene Coordinator, Unified Area Command, and the Coast Guard in cooperation with other federal agencies."  Order and Reasons of June 16, 2011, relative to the Motions to Dismiss the D1 Master Complaint at 7 (Rec. Doc. 2784).  Thus, the federal government did, as a matter of fact, follow the mandatory response scheme set forth in the Clean Water Act ("CWA") and the National Contingency Plan ("NCP"), as they were required as a matter of law.  The CWA and NCP mandate that decisions regarding how to respond to oil spills and hazardous discharges *must* be made by federal authorities.  Indeed, the primary argument in Nalco's B3 Motion is that under the CWA and the NCP, the President and his delegates were required to determine what methods and techniques would be used to respond to the DEEPWATER HORIZON oil spill, and had sole authority to authorize, direct, and control the actions of oil spill responders alleged in the B3 Complaint.

---

[2]  The Plaintiffs' Steering Committee ("PSC") filed an omnibus opposition memorandum (Rec. Doc. 1815) ("PSC Opposition Memorandum").  The Nalco Entities filed a reply memorandum (Rec. Doc. 2206).

Plaintiffs, in their B3 Complaint, however, want to second-guess Congress for establishing this mandatory spill response regimen and want to second-guess the President and his delegates' decisions in implementing Congress's mandatory spill response scheme – both of which efforts erect direct obstacles to that federal law and are, thus, conflict preempted. Because conflict preemption under the CWA and NCP was not raised by the B1 motions or briefing, it was not addressed by this Court in its B1 Opinion. Thus, as demonstrated in the B3 Motion, the claims against Nalco must be dismissed under principles of conflict preemption.

Although the B1 Opinion addresses whether OPA's compensatory scheme provides the exclusive remedy for persons asserting economic loss and property damage claims, it in no way affects the fact that, as set forth in the B3 Motion, the B3 Complaint is preempted by the CWA and by the NCP. In the B1 Opinion, the Court held that in enacting OPA, Congress did not "intend[] to occupy the entire field governing liability for oil spills." B1 Opinion at 25. ***Nalco's preemption argument concerns only application of conflict preemption principles, not field preemption, and focuses on the detailed, mandatory response scheme set forth in the CWA, not the provisions of OPA the Court considered in the B1 Opinion.***

In the B1 Opinion, the Court also held that allowing maritime claims to proceed against non-Responsible Parties will not frustrate Congress's intent in enacting OPA. In contrast, as set forth in the B3 Motion, the claims in the B3 Complaint would frustrate Congress's intent in enacting a pervasive and mandatory federal scheme to govern responses to oil spills. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) (applying conflict preemption to plaintiff's defective design claim where allowing lawsuit to proceed would undermine federal goal of encouraging car manufacturers to develop a variety of passive restraint systems). The provisions

of the CWA and NCP on which Nalco relies clearly vest the President and his delegates with sole authority to decide how to respond to an oil spill. Indeed, the CWA *requires* that the President "*shall* . . . ensure effective and immediate removal of a discharge . . . of oil or a hazardous substance" in accordance with the NCP and the appropriate Area Contingency Plan. 33 U.S.C. § 1321(c)(1) (emphasis added). The NCP *requires* that the President *shall* identify dispersants to use, the waters in which they will be used, the methods for dispersing oil, and the quantities of dispersants that can be used safely in such waters. *Id*. § 1321(d)(2)(F)-(G).

The Nalco dispersants at issue in the B3 Complaint were listed on the NCP Product Schedule. They were pre-approved for use by United States Environmental Protection Agency Regional Response Teams. They were provided for use in the DEEPWATER HORIZON response at the express request of the federal authorities who, under the CWA and NCP, bore responsibility for responding to the oil spill. Because allowing Plaintiffs' claims to proceed would pose a clear obstacle to the CWA's purpose of centralizing with the President and his delegates the sole authority to decide how to respond to an oil spill – including deciding whether to use dispersants, which dispersants to use, how they should be applied, where they should be applied, in what quantities, and in which waters they can be used *safely* – Plaintiffs' claims against Nalco are preempted.[3]

---

[3]  In the B1 Opinion, the Court considered the effect of OPA's "saving" provisions and held that the saving provision set forth in 33 U.S.C. § 2751(e) indicated that Congress did not intend for OPA to completely preempt other federal laws. *See* B1 Opinion at 14-15, 22. Although the CWA itself contains a saving clause, (33 U.S.C. § 1321(o)(2)), the Supreme Court has held that a "saving clause . . . ***does not bar the ordinary working of conflict pre-emption principles***." *Geier*, 529 U.S. at 869 (emphasis added). Given the clear law on the application of saving clauses to conflict preemption, Plaintiffs did not mention the CWA saving clause in response to Nalco's motion. *See* PSC Opposition Memorandum *passim*.

Although Plaintiffs' claims against Nalco are preempted by the CWA and NCP, the immunity provision set forth in 33 U.S.C. § 1321(c)(4)(A) and similar state law provisions granting immunity to those who assist oil spill response efforts provide an alternative ground for dismissing the B3 Complaint.  The effect of these responder immunity provisions was not raised in the motions to dismiss the B1 Bundle Master Complaint and the B1 Opinion does not address these provisions.  Thus, the B1 Opinion has no bearing on Nalco's immunity argument.[4]

For the foregoing reasons, Nalco respectfully requests that the B3 Complaint be dismissed in its entirety.  Nalco believes that the issues addressed herein would benefit from oral argument before the Court, and thus respectfully requests limited oral argument to address specifically the effect of the B1 Opinion on its B3 Motion.

Dated:  September 12, 2011        Respectfully submitted,

/s/ Thomas J. Heiden
Thomas J. Heiden (IL # 6281563)
(thomas.heiden@lw.com)
Mary Rose Alexander (IL # 6205313)
(mary.rose.alexander@lw.com)
LATHAM & WATKINS LLP
233 South Wacker Dr.
Suite 5800
Chicago, IL 60606-6401

---

[4] Nalco proffered several alternative bases to dismiss in addition to its dispositive preemption and immunity claims.  The impact of the B1 Opinion on each of those alternative arguments is set forth in the memorandum on the impact of the B1 Opinion on other motions to dismiss, filed by O'Brien's Response Management, Inc., National Response Corporation and Marine Spill Response Corporation, which Nalco adopts.

Phone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum of Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company in Response to Court's Order Inviting Briefing on Impact of B1 Opinion on Other Motions to Dismiss has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of September, 2011.

/s/ Thomas J. Heiden
Thomas J. Heiden