# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179 <br><br> SECTION "J" (1) <br><br> JUDGE BARBIER |
| This document relates to: 11-275 | MAGISTRATE SHUSHAN |

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
AND VARIOUS INSURANCE COMPANIES' ("UNDERWRITERS")
SUR-REPLY OPPOSING BP'S MOTION FOR JUDGMENT ON THE PLEADINGS

PHELPS DUNBAR LLP

Richard N. Dicharry (Bar # 4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
       George.Gilly@phelps.com
       Marty.McLeod@phelps.com
       Kyle.Moran@phelps.com

**ATTORNEYS FOR CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND VARIOUS INSURANCE COMPANIES**

PD.5462803.1

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

ARGUMENT ................................................................................................................................. 2

I.  BP ATTEMPTS TO REDEFINE ITS BURDEN AND CHOOSES TO IGNORE THAT THE DRILLING CONTRACT IS NOT AN INSURED CONTRACT FOR ALL PURPOSES ........................................................... 2

II.  UNDERWRITERS DO NOT SEEK THIRD PARTY BENEFICIARY STATUS UNDER THE DRILLING CONTRACT, AND BP'S ARGUMENTS TO THE CONTRARY ARE MISPLACED ................................................................................................................. 3

III.  BP IS NOT ENTITLED TO A PRESUMPTION IN FAVOR OF COVERAGE ................................................................................................................ 4

IV.  THE DRILLING CONTRACT AND EXCESS POLICIES ARE DISTINGUISHABLE FROM THE *EVANSTON* AND *AUBRIS* POLICIES AND CONTRACTS ............................................................................. 6

V.  BP'S INTERPRETATION OF THE "ADDITIONAL INSURED" PROVISION OF THE DRILLING CONTRACT IS NOT SUPPORTED BY TEXAS LAW ......................................................................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Anderson & Kerr Drilling Co. v. Bruhlmeyer*,
    136 S.W.2d 800 (Tex. 1940) .................................................................................. 9

*Arnold v. Ashbel Smith Land Co.*,
    307 S.W.2d 818 (Tex.Civ.App. 1957) ..................................................................... 9

*AT&T Corp. v. Rylander*,
    2 S.W.3d 546 (Tex.App. – Austin 1999) ................................................................ 4

*Aubris Resources LP v. St. Paul Fire & Marine Ins. Co.*,
    566 F.3d 483 (5th Cir. 2009) ................................................................................... 7

*Bryce v. Unitrin Preferred Ins. Co.*,
    2010 WL 1253579 (Tex.App.-Austin) ................................................................... 5

*Davis v. Huskipower Outdoor Equip. Corp.*,
    936 F.2d 193 (5th Cir. 1991) ................................................................................... 4

*Evanston Ins. Co. v. ATOFINA Petrochem., Inc.*,
    256 S.W.3d 660 (Tex. 2008) ............................................................................... 6, 7

*Evergreen Nat'l Indm. Co. v. Tan It All, Inc.*,
    111 S.W.3d 669 (Tex.App. – Austin 2003) ............................................................ 4

*Forest Oil Corp. v. Strata Energy*,
    929 F.2d 1039 (5th Cir. 1991) ................................................................................. 4

*Gilbert Tex. Constr. V. Underwriters' at Lloyds London*,
    327 S.W.3d 118 (Tex. 2010) ................................................................................... 7

*Hanson v. Republic Ins. Co.*,
    5 S.W.3d 324 (Tex.App. – Houston 1999) ............................................................. 4

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*,
    --- S.W.3d ---, 2011 WL 3796361 (Tex. Aug. 26, 2011) ....................................... 6

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
    980 S.W.2d 462 Tex. 1998) .................................................................................... 7

*One Beacon Ins. Co. v. Crowley Marine Services, Inc.*,
    2011 WL 3195292 (5th Cir.) ............................................................................... 2, 3

*Puckett v. U.S. Fire Ins. Co.*,
    678 S.W.2d 936 (Tex. 1984) ............................................................................... 4, 5

*Rep. Waste Servs. v. Empire Indem. Ins. Co.*,
    98 Fed. Appx. 970 (5th Cir. 2004) ................................................................................ 2

*Terrill v. Tuckness*,
    985 S.W.2d 97 (Tex.App.-San Antonio 1998) ................................................................ 5

*Urrutia v. Decker*,
    992 S.W.2d 440 (Tex. 1999) ........................................................................................... 3

*Vought Aircraft Industries, Inc. v. Falvey Cargo Underwriting, Ltd.*,
    729 F.Supp.2d 814 (N.D. Tex. 2010) .............................................................................. 5

*World Help v. Leisure Lifestyles, Inc.*,
    977 S.W.2d 662 (Tex.App.-Forth Worth 1998) ............................................................. 5

## **OTHER AUTHORITIES**

5C Arthur Miller & Mary Kay Kane,
    <u>Federal Practice and Procedure</u> § 1368 (3d ed. 2004) .................................................... 5

Harold J. Flanagan & Stephen M. Pesce, *How Master Service Agreements and
    Risk Allocation Provisions Work*, Rocky Mountain Mineral Law
    Foundation, Oil & Gas Agreements: The Exploration Phase (March 2010) .................... 8

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

BP's Reply underscores its continued misplaced efforts to stretch the boundaries of contract construction and common sense to manufacture coverage for its pollution-related liabilities when no such coverage exists for BP under the Excess Policies. This makes even more clear why its Motion for Judgment on the Pleadings should be denied.

First, BP ignores the plain language of the definition of an "Insured Contract" under the Excess Policies.

Second, BP cannot reasonably dispute that under Texas law, a separate contract properly may be incorporated into an insurance policy – which was the undisputed intent of Underwriters and Transocean here. Instead, BP endeavors to confuse the issue by arguing that Underwriters have no standing as third-party beneficiaries to argue the application of the Drilling Contract to the Excess Policies.

Third, Texas law recognizes that a contract should not be construed against one party where the other party is sophisticated, and that the degree of an insured's sophistication should be considered in disputes with insurers.

Fourth, BP continues to distort the holdings of *Evanston* and *Aubris.*

Fifth, BP's "missing comma" interpretation is unsupported by Texas law and highlights the desperation of BP's argument for pollution-related coverage.

# ARGUMENT

## I. BP ATTEMPTS TO REDEFINE ITS BURDEN AND CHOOSES TO IGNORE THAT THE DRILLING CONTRACT IS NOT AN INSURED CONTRACT FOR ALL PURPOSES.

Although BP incorrectly attempts to shift its burden to Underwriters, as an additional insured BP bears the burden of proving its coverage under the Excess Policies. *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 2011 WL 3195292 at *12 (5th Cir.), citing *Rep. Waste Servs. v. Empire Indem. Ins. Co.*, 98 Fed. Appx. 970, 917 (5th Cir. 2004). To meet its burden, BP must establish that the Drilling Contract is an "Insured Contract" for pollution-related liabilities under the Excess Policies. Accordingly, in assessing the scope of BP's or any other additional insured's coverage, the Drilling Contract and the Excess Policies must be construed together. Here, the Excess Policies specifically limit additional insured coverage as required by and to the extent of the Drilling Contract. The Excess Policies define an "Insured Contract" as one in which the Insured, Transocean, "assumes the tort liability of another party to pay for 'Bodily Injury', "Property Damage', 'Personal Injury', or 'Advertising Injury' to a "Third Party' or organization."[1] Transocean "assumed the tort liability" of BP only to the extent that the Drilling Contract so provided. Because Transocean did not assume BP's well pollution liabilities under Article 24 of the Drilling Contract, the Drilling Contract is not an Insured Contract for those pollution liabilities.[2] BP's expansive definition of an "Insured Contract" is simply wrong, and BP fundamentally cannot meet its burden to establish coverage for its pollution-related liabilities.

---

[1] Decl. of C. Wenk, Ex. E at 37 of 99 (TRN-MDL-00235717). As with Underwriters' principal brief, citations to the Excess Policies are to the excerpts attached to BP's Motion (doc. #3211-2).

[2] To the contrary, pursuant to Article 24.2, BP agreed to defend and indemnify Transocean for pollution emanating from BP's well or from any source below the surface of the water. See, Decl. of C. Wenk, Ex. C at 25 of 36 (TRN-MDL-0027340).

## II. UNDERWRITERS DO NOT SEEK THIRD PARTY BENEFICIARY STATUS UNDER THE DRILLING CONTRACT, AND BP'S ARGUMENTS TO THE CONTRARY ARE MISPLACED.

BP cannot deny that Texas law recognizes that separate contracts may be incorporated by reference into insurance contracts. See *One Beacon,* 2011 WL 3195292 at *8 (insurance and indemnity provisions of contracts were incorporated by reference in terms of policy.); *Urrutia v. Decker*, 992 S.W.2d 440, 442 (Tex. 1999) (a contract may be incorporated into an insurance policy consistent with the intent of the parties). Instead, BP erroneously attempts to redefine Underwriters' claim for declaratory judgment as a third-party beneficiary claim. But this case is not about whether Underwriters have third-party beneficiary rights under the Drilling Contract, and Underwriters are not "claiming any rights as third-party beneficiaries". (BP Reply at p. 19). Nor are Underwriters attempting to enforce any provisions of the Drilling Contract. Underwriters only seek a determination of their rights and obligations under the Excess Policies, which unequivocally incorporate the Drilling Contract as an "Insured Contract," as discussed above. BP's repeated protests that Underwriters lack standing as third-party beneficiaries are just distractions from the weaknesses of BP's other arguments over the real issues.

Further, BP disingenuously argues that Underwriters have agreed that BP's motion for judgment on the pleadings is ripe for consideration, and therefore, are judicially estopped from arguing otherwise now. In her Order of May 31, 2011, Magistrate Judge Shushan observed that "the Insurers oppose the setting of an early date for the filing of a motion for judgment on the pleadings or, in the alternative, summary judgment on the Insurers' complaints." (doc. #2593 at p. 1). Judge Shushan nevertheless held that BP could file its motion after pleadings closed, and she ordered the parties to agree on a case management order. Underwriters never have waivered in their position that BP cannot sustain its motion for judgment on the pleadings and that the

instant motion is premature and a waste of the parties' resources. BP's suggestion otherwise is misleading.

### III. BP IS NOT ENTITLED TO A PRESUMPTION IN FAVOR OF COVERAGE.

BP's assertion that the rule of construction in favor of an insured is independent of the doctrine of *contra proferentem*, or the contra-insurer rule, also is incorrect.[3] For there to be a possibility of an insured's interpretation prevailing by virtue of that doctrine, the Court must first find the disputed provision to be ambiguous. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Evergreen Nat'l Indm. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676-77 (Tex.App. – Austin 2003); *AT&T Corp. v. Rylander* 2 S.W.3d 546, 560 (Tex.App. – Austin 1999). Indeed, Texas law is clear that the contra-insurer rule is not a rule of construction, but rather "a tie-breaking device used to prevent arbitrary decisions when all other methods of interpretation and construction prove unsatisfactory." *Evergreen*, 111 S.W.3d at 667. A contract will be "construed against its drafter only as a last resort under Texas law – i.e., *after* application of ordinary rules of construction leave reasonable doubt as to its interpretation." *Forest Oil Corp. v. Strata Energy*, 929 F.2d 1039, 1043-44 (5th Cir. 1991) (emphasis added). Application of construction against the drafter is not, as BP has suggested, an independent substantive Texas rule of construction, but rather simply a "tie-breaker" in the event that all other doctrines of construction are applied and an ambiguity is found to remain. In this case, the language of the Excess Policies is clear and unambiguous; thus, there is no tie to be broken, and construction against Underwriters is not appropriate.[4]

---

[3] Under Texas law and in the context of insurance disputes, the doctrine of *contra proferentem* has also been referred to as the "ambiguity rule" or the "contra-insurer" rule. *Evergreen Nat'l Indm. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 677 (Tex.App.-Austin 1999) (citing *Puckett v. U.S. Fire Ins. Co.*, S.W.2d 936, 939 (Tex. 1984) and *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 328 (Tex.App. – Houston 1999)).

[4] BP did not plead ambiguity in response to Underwriters' Complaint for Declaratory Judgment. Accordingly, the contra-insurer rule should not even be an issue. *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193,

Even if an ambiguity was present, the application of the contra-insurer rule is only appropriate in situations in which the insured had no opportunity to negotiate the terms of its policy. "The rule arises because customers of insurance companies cannot negotiate the terms of policies. . . ." *Puckett,* 678 S.W.2d at 939 (concurrence). As *Puckett* explains, Texas courts adopted the contra-insurer rule to protect insureds who lacked bargaining power and were required to accept contracts of adhesion from insurers.

As discussed fully in Underwriters' principal opposition brief (doc. #3705), the contra-insurer rule is inapplicable because a review of the facts underlying the drafting of the Excess Policies will reveal that the named Insured, Transocean, participated extensively in drafting and selecting the terms of the Excess Policies. Although BP glosses over *Vought Aircraft Industries, Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F.Supp.2d 814 (N.D. Tex. 2010), BP at least concedes that a Texas court has held that a sophisticated insured exception is at least applicable where the **facts** warrant. Texas state courts also have recognized that the level of an insured's sophistication should be considered in disputes between an insured and its insurer. *Bryce v. Unitrin Preferred Ins. Co.*, 2010 WL 1253579 at *8 (Tex.App.-Austin). Where facts are relevant to a controlling issue, judgment on the pleadings clearly is inappropriate. 5C Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 1368 (3d ed. 2004).

Here, review of the facts certainly is warranted. The Texas district court's observation in *Vought* that insurance policies should not automatically be interpreted against an insurer "when corporate insureds with bargaining power equal to the insurer participate in the drafting of the insurance coverage" squarely applies to the Excess Policies. 729 F.Supp.2d at 823; See also

---

198 (5th Cir. 1991) (state law defines affirmative defenses that are waived under federal law if not timely pleaded). Under Texas law, ambiguity of contracts is an affirmative defense, which a party must specifically plead. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 680-81 (Tex.App.-Forth Worth 1998); *Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex.App.-San Antonio 1998).

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, --- S.W.3d ---, 2011 WL 3796361 *4 (Tex. Aug. 26, 2011). As the Texas Supreme Court has recently reiterated, the manner in which an insurance policy is negotiated may be critical to understanding its terms and the parties' intent. *Wellington*, --- S.W.3d ---, 2011 WL 3796361 at *4. Evidence "of surrounding circumstances that inform, rather than vary from or contradict" an insurance policy are admissible and have "relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole." *Id.* The Excess Policies are the products of arms-length negotiations between sophisticated parties, an appreciation of which is critical to understanding their terms, and Underwriters are entitled to develop these facts in discovery.

## IV.  THE DRILLING CONTRACT AND EXCESS POLICIES ARE DISTINGUISHABLE FROM THE *EVANSTON* AND *AUBRIS* POLICIES AND CONTRACTS.

BP fails to recognize, or simply ignores, that the additional insured provisions in the Excess Policies are different than the additional insured provision in *Evanston*. The *Evanston* decision concerned the meaning of a single phrase in the definition of an additional insured: "with respect to operations performed by you or on your behalf." *Evanston Ins. Co. v. ATOFINA Petrochem., Inc.*, 256 S.W.3d 660, 664-66 (Tex. 2008). The Evanston policy neither expressly nor implicitly referenced a separate indemnity agreement, and there was no attempt to incorporate the indemnity agreement into the Evanston policy. The sole coverage issue in *Evanston* was whether the policy covered liabilities for the additional insured's sole negligence. *Id.* at 667-68. In such cases, it is entirely appropriate to determine the scope of coverage from the insurance policy alone. In *Evanston*, it was clear that the claim against the additional insured was "with respect to operations performed [by the insured]." *Id.* at 664-66. But where the insurance policy specifically refers to a separate contract, both the policy and that contract must

be construed together. Unlike the Evanston policy, the General Conditions of the Excess Policies specifically limit the scope of additional insureds as required by the Drilling Contract:

> Underwriters agree **where required by written contract**, bid or work order, **additional insureds are automatically included hereunder**, and/or waivers of subrogation are provided **as may be required by contract.**[5]

BP urges a selective reading of this general condition that focuses only on the "automatically included" phrase. But such a construction would render the rest of the condition – "as may be required by contract" – meaningless. This is an unacceptable construction under Texas law, which requires that all parts of an insurance agreement be read and construed together. *Gilbert Tex. Constr. v. Underwriters' at Lloyds London*, 327 S.W.3d 118, 126 (Tex. 2010); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). When the Excess Policies are read as a whole, it is undeniable that the scope of BP's additional insured coverage is limited to what is "required by written contract", which was the clear intent of Underwriters and Transocean in executing the Excess Policies.

Though BP fails to so acknowledge, the court in *Aubris* **did** consider the interplay between the pertinent services agreement and the insurance policy, but concluded that the indemnity provisions were not incorporated into the policy. After considering both the policy and the services agreement, the *Aubris* court construed the policy to require a specific agreement for indemnity on a particular claim. See *Aubris Resources, LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009), generally.

Limiting an additional insured's coverage to the extent of the risks within an indemnity agreement is not a novel concept. It is widely recognized and traditional in the marine, energy and insurance industries that a contractor, like Transocean, reasonably requires "that insurance

---

[5] Decl. of C. Wenk, Exhibit E at 74 of 99 (TRN-MDL-00235754)(Endorsement 1, Condition 4 of the Excess Policies) (emphasis added).

PD.5462803.1

7

coverage will be provided only to 'the extent of the indemnity obligations undertaken by the Contractor'. This prevents the contractor's insurance program from being overtaxed from a loss it [or its insurers] had not bargained for."[6]

## V. BP'S INTERPRETATION OF THE "ADDITIONAL INSURED" PROVISION OF THE DRILLING CONTRACT IS NOT SUPPORTED BY TEXAS LAW.

BP suggests that Exhibit C of the Drilling Contract, which sets forth the relevant insurance requirements, has been misleadingly quoted. Underwriters quoted Exhibit C in their principal memorandum, and repeat it below:

> [BP] its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents shall be named as additional insured in each of [Transocean's] policies, except Worker's Compensation for liabilities assumed by [Transocean] under the terms of this Contract.[7]

Relying on a "missing comma" argument, BP suggests that the insurance provision restricts Transocean's duty to obtain additional insured coverage to Worker's Compensation coverage only and that the exception to Transocean's duty to obtain additional insured coverage is not restricted to "general" liabilities assumed by Transocean under the terms of the Drilling Contract. Therefore, and despite a plain reading of the provision, BP suggests that a supposed error in punctuation supports its position that Transocean intended to obtain insurance in favor of BP for all liabilities except Worker's Compensation. BP's interpretation fails for two reasons.

First, under Texas law, punctuation does not control the interpretation of a contract. "The words, not the punctuation, are the controlling guide in construing a contract. If the meaning of the words is clear, the court will interpret a contract according to their meaning and without

---

[6] Harold J. Flanagan & Stephen M. Pesce, *How Master Service Agreements and Risk Allocation Provisions Work*, Rocky Mountain Mineral Law Foundation, Oil & Gas Agreements: The Exploration Phase (March 2010).

[7] Decl. of C. Wenk, Ex. C at 2 of 3 (TRN-MDL-0027435) (Exhibit C to the Drilling Contact).

regard to the punctuation marks or the want of them." *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 136 S.W.2d 800, 803 (Tex. 1940) (finding the absence of a comma in a deed did not create ambiguity or uncertainty and the court "may insert a comma, in order to ascertain form the words used the intention of the parties."). See also *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 823-4 (Tex.Civ.App. 1957) (holding when a disputed provision was read as a whole, in conjunction with other portions of the contract, the absence of a comma did not create an ambiguity, though the court could insert a comma if necessary to ascertain the intent of the parties.). Here, the parties' intent to limit Transocean's insurance obligations to liabilities assumed under the Drilling Contract is clear from the words themselves, which control interpretation. If a comma after the phrase "Workers' Compensation" were required to ascertain the intent of the parties, it could be added. However, the phrase, when read in conjunction with the whole of the relevant insurance provision, is clear and unambiguous in limiting Transocean's obligation to obtain insurance for the liabilities it agreed to assume in the Drilling Contract.

Second, if BP's reading were correct, the multiple pages in the Drilling Contract (and subsequent Amendment 38) setting forth the various indemnity obligations and risks allocated between Transocean and BP would be pointless because they would be undone by a single phrase in Exhibit C of the Drilling Contract. BP knows better. The additional insured status in the Excess Policies is limited to the extent required by the Drilling Contract.

## CONCLUSION

BP should not be permitted to re-write or misinterpret the Excess Policies to construct coverage for its pollution-related liabilities where its coverage is clearly limited to the extent required by the Drilling Contract with Transocean. For these reasons as well those in Underwriters' principal memorandum (doc. #3705), BP's motion for judgment on the pleadings must be denied.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
Richard N. Dicharry (Bar # 4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
       George.Gilly@phelps.com
       Marty.McLeod@phelps.com
       Kyle.Moran@phelps.com

**ATTORNEYS FOR CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND VARIOUS INSURANCE COMPANIES**

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of September, 2011.

*/s/ [signature]*
_____