

BP America Production Company
200 Westlake Park Boulevard
Houston, Texas 77079

May 24, 2010

# A LETTER TO HOLDERS OF THE VESSEL OF OPPORTUNITY PROGRAM, MASTER VESSEL CHARTER AGREEMENT

Dear Vessel Owner,

As the result of a lawsuit filed by George Barisich and on behalf of the United Commercial Fisherman's Association in the United States District Court for the Eastern District of Louisiana (Civil Action No. 10-0316), early forms used by BP as a MASTER VESSEL CHARTER AGREEMENT (known as the "Earlier Forms") have been revised to make the CHARTER more favorable to the Vessel Owner. The Earlier Forms can be identified by comparing Articles 13 and 22 in your CHARTER to the changes below. Your CHARTER may already have all of these changes, in which case this letter is inapplicable to you.

The changes to the Earlier Forms are as follows:

(a) Article 2, EMPLOYMENT AND SERVICES OF VESSEL, paragraph A is modified as reflected in Attachment 1 to this letter.

(b) A former Sub Article 13 (F) INSURANCE, which began with the words "VESSEL OWNER will defend, indemnify …" is deleted in its entirety, and is null and void. {The letters of subsequent, surviving subparagraphs are reordered accordingly. In other words, the old Article 13 (G) (beginning with "VESSEL OWNER warrants…") still applies, but now is lettered 13 (F); and the old 13 (I) (beginning with "In the event VESSEL OWNER's cost for insurance…") still applies, but now is lettered 13 (H).}

(c) The old Sub Article 13 (I) (1) INSURANCE, which began with the words: "Pay all premiums to keep such insurance…", is deleted in its entirety, and is null and void. {The former subparagraph 2 (beginning with "VESSEL OWNER will exercise good faith…") is now numbered 1.}

(d) The old paragraph 5 of Exhibit C (Agreement Regarding Proprietary and Confidential Information) is deleted in its entirety, and is null and void. (That paragraph began with the words: "It

will keep confidential and not disclose to others....") {Subsequent paragraphs in the Earlier Forms are renumbered accordingly. In other words, now there are only six, instead of seven, paragraphs. The second to last paragraph, numbered 6 in Earlier Forms, is now numbered 5; and the last paragraph, formerly number 7, is now number 6.}

(e) Article 22 PUBLICITY, RELEASES AND MARKETING is deleted in its entirety, and is null and void. {Subsequent articles are renumbered accordingly. In other words, the article titled "WAIVER", formerly Article 23, is now Article 22, and so on down the line to the final article (PRIORITY OF TERMS), formerly Article 26, but now Article 25.}

(f) Most of Article 13(A) INSURANCE of the CHARTER is deleted, and is null and void. All that remains is the beginning of the first sentence: "VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations."

(g) The beginning of the second to last article (ENTIRE AGREMENT; SUCCESSORS), now Article 24, is modified to explicitly identify Exhibits A, B and C as parts of the CHARTER. More specifically, the article now begins with the words: "This CHARTER includes Exhibits A, B, and C attached hereto and constitutes the entire agreement between the Parties...." The rest of the article remains unchanged.

All of the other provisions in the Earlier Forms remain unchanged.

Thank you for your consideration and willingness to assist BP in our oil spill recovery and response efforts.

Sincerely,

*[signature: Tommy G. Mayet]*

Tommy G. Mayet
On Behalf of BP America
Production Company

Enclosures

## ATTACHMENT 1

**ARTICLE 2.**   **EMPLOYMENT AND SERVICES OF VESSEL**

A.      During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. BP, in cooperation with OSHA and the U.S. Coast Guard, has developed a training and safety program ("HORIZON Response Program" or "HRP") for VESSELS and VESSEL crews engaged in oil spill response activities under this CHARTER. The HRP was approved by OSHA on May 7, 2010 and received approval from the U.S. Coast Guard on May 8, 2010. Per OSHA and U.S. Coast Guard directives, the HRP is subject to continuous improvement processes. As of May 10, 2010, BP will ensure that all VESSEL crews engaged in oil spill response activities (1) receive all necessary training for such activities as per the HRP, (2) receive all necessary credentials for such activities as per the HRP, and (3) receive all necessary protective equipment for such activities as per the HRP. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM.

Contract No: MOB 5 **8046**

M S    0516

# MASTER VESSEL CHARTER AGREEMENT

This Master Vessel Charter Agreement (hereinafter referred to as CHARTER) is made effective as of **May 12**, 2010 by and between BP America Production Company (hereinafter referred to as CHARTERER), and **Hoi Nguyen** hereafter referred to as VESSEL OWNER).

### ARTICLE 1.    TERM OF CHARTER

A.  Subject to the availability (as mutually agreed upon between CHARTERER and VESSEL OWNER) of the vessel described in Exhibit "A" (hereinafter referred to as VESSEL), VESSEL OWNER agrees to let and CHARTERER agrees to hire the VESSEL from time to time as may be requested by CHARTERER. VESSEL OWNER shall deliver or otherwise make available the VESSEL to CHARTERER and place the VESSEL at CHARTERER'S disposal at a mutually agreed location,. The term of the CHARTER shall commence on the date of the departure of the Vessel from the mutually agreed location of delivery into the service of Charterer, and shall be referred to as the "CHARTER TERM." CHARTERER may terminate the CHARTER at any time and the CHARTER TERM will terminate as set out in Paragraph B of this Article 1.

B.  The VESSEL shall be delivered at the commencement of the CHARTER TERM, fully tanked with fuel, hydraulic fluid, lubricated, manned, provisioned and ready in all respects to perform SERVICES as required by this CHARTER. The VESSEL shall be redelivered to VESSEL OWNER at the close of each CHARTER TERM to the original point of delivery by CHARTERER, as determined by off-hire dispatch notification, unless VESSEL OWNER elects not to return directly to the point of dispatch, in which case, the CHARTER TERM shall cease immediately upon such election.

### ARTICLE 2.    EMPLOYMENT AND SERVICES OF VESSEL

A.  During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. The VESSEL shall be required to attend training, participate in training exercises and drill to receive the necessary oil spill clean up credentials as appropriate to develop skills and procedures for oil spill response and containment. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM.

B.  The whole reach of the VESSEL's deck and accommodation spaces shall be at CHARTERER's disposal, reserving only proper and sufficient space for VESSEL OWNER's crew.

### ARTICLE 3.    PERFORMANCE OF VOYAGES

During the employment under this CHARTER, the VESSEL OWNER or its designated master shall perform all voyages without delay. VESSEL OWNER or its designated master shall load, stow, and trim the VESSEL. The decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master.

### ARTICLE 4.    OPERATION IN COMPLIANCE WITH LAW

A.  VESSEL OWNER warrants (i) that it has the right to CHARTER the VESSEL to CHARTERER, (ii) that the VESSEL is entitled to perform the SERVICES under all applicable law (including having all endorsements on its documentation that may be required to perform the SERVICES in accordance with applicable law)

1

Contract No: MOB 5 _ _ _ _

### ARTICLE 8.   VESSEL PROVISIONS

VESSEL OWNER shall provide and pay for any other supplies necessary for the VESSEL'S mechanical functioning, except as provided in Exhibit "B". VESSEL OWNER shall provide and pay for all expenses necessary for the maintenance of the crew including, but not limited to, provisions (except as otherwise provided by CHARTERER as described in this ARTICLE), commissary, water, laundry and any necessary lodging. At the start of any CHARTER TERM, VESSEL OWNER shall provide a minimum of three (3) days of such provisions required for the maintenance of the crew. After three (3) days, during an actual oil spill, CHARTERER shall provision the VESSEL for the remainder of each CHARTER TERM. The fixed rate per day set forth in Exhibit "B" shall be increased (as stated in Exhibit "B") per day per the most recent published rate schedule for every meal provided to a CHARTERER employee or business invitee while aboard the VESSEL.

### ARTICLE 9.   MAINTENANCE OF VESSEL

VESSEL OWNER shall maintain the VESSEL'S hull and machinery in a seaworthy condition (Surveyor designation of "Fit for Purpose"). CHARTERER shall provide or otherwise reimburse VESSEL OWNER'S actual cost of hull and gear cleaning and decontamination if VESSEL requires such cleaning as a direct result of SERVICES under this CHARTER.

### ARTICLE 10.   HIRE

A. CHARTERER will pay VESSEL OWNER for each CHARTER TERM or SERVICES satisfactorily performed and accepted by the CHARTERER in accordance with Exhibit "B". Any amendment or modification of this CHARTER must be in writing and duly executed by both parties in order to be binding. Provided, however, that CHARTERER shall be entitled at any time during the term of this CHARTER to revise Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new Exhibit "B".

B. CHARTERER shall pay Hire for the VESSEL and the SERVICES to be provided by the VESSEL OWNER, for each CHARTER TERM in accordance with the following provisions. For the purposes of ARTICLE 10 - HIRE, a day shall be deemed to be any portion of a twenty-four (24) hour period beginning at 12:00 midnight and ending at 11:59 pm. For the purposes of vessel length, all vessels will be rated on the generally accepted term of L.O.A., (Length Over All).

   1. For a CHARTER TERM during an actual oil spill, the rate is (as stated in Exhibit "A") a day rate.

   2. For a CHARTER TERM during an oil spill drill including but not limited to the requirement for deployment of boom the rate is (as stated in Exhibit "A") a day rate.

   3. For any CHARTER TERM described in ARTICLE 10, Paragraph A, in the event VESSEL OWNER may be requested to provide a skiff in addition to the VESSEL when approved in advance by CHARTERER'S through notification to the FVA. For the purpose of payment, the skiff length shall be based on the L.O.A. of the skiff provided.

   5. Training may consist of any of the following:

      a. Classroom training will be defined and approved in advance by the CHARTERER. A fixed rate per crew member in attendance, per day, will be paid to the VESSEL OWNER . During periods such as classroom training, Workers Compensation Insurance will be provided. The VESSEL shall not be considered under HIRE for insurance purposes, therefore insurance shall not be provided during these times.

   6. Compensation for CHARTERER requested additional crew members will be paid to the VESSEL OWNER.

   7. CHARTERER may request that the VESSEL OWNER perform SERVICES within the capabilities of

3

Contract No: MOB 5 __ __ __ __

local environmental protection and safety laws, regulations, and stipulations when performing SERVICES in effect at all ports within the trading limits. If the VESSEL is found not to comply with any such rule, regulation or law, VESSEL OWNER shall take immediate measures to comply, and all expenses incurred as a result of such failure to comply shall be for VESSEL OWNER'S account under the off-HIRE provisions of ARTICLE 12.

E. If the VESSEL is lost or becomes a constructive total loss, HIRE shall cease at 11:59 PM of the day of VESSEL loss or constructive total loss. If the VESSEL is missing, HIRE shall be suspended as of 11:59 PM on the day when the VESSEL was last heard from and until the VESSEL'S safety has been established, unless loss of contact is deemed to have occurred through no fault of VESSEL OWNER.

F. Any HIRE paid for in advance is to be adjusted by refund or deduction from future payments for any off-HIRE or suspension during the period for which payment was made.

G. If the VESSEL is off-HIRE for a period of time exceeding twenty-four (24) hours for any of the events referred to in ARTICLE 12, CHARTERER may terminate this CHARTER at its sole option if VESSEL OWNER is not making best efforts to return to a safe harbor.

## ARTICLE 13. INSURANCE

A. VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations

B. The insurance coverage referred to in Paragraph A above shall remain in effect during the CHARTER TERM, when the VESSEL is on HIRE for training as directed by CHARTERER, or the VESSEL is on HIRE for oil spill response. The time of coverage shall be from dispatch until termination of dispatch by either the VESSEL OWNER or CHARTERER.

C. Insurance coverage may be activated for VESSELS that choose to travel to a remote site the day prior to an exercise or drill with prior approval by the CHARTERER. The VESSEL will only be considered on-HIRE for the purpose of insurance and will not receive any compensation.

D. In the event of any happening that may result in a claim against the coverage afforded in Paragraph A, prompt notice thereof shall be given to the party first aware of such claim in order to afford both parties an immediate opportunity to investigate the facts and circumstances giving rise to the potential claim.

E. The parties understand and agree that the insurance coverage summarized in Paragraph A is more particularly described in the insurance policies, the terms, conditions and exclusions of which shall control..

Note: Copies of the insurance policies summarized in Paragraph A are available upon request.

F. VESSEL OWNER warrants that during the term of this CHARTER that as to the insurance described in Paragraph A of this Clause 13, it shall:

1. Pay all premiums to keep such insurance policies in full force and effect on the terms and conditions more particularly described in such policies.

2. Will not modify, amend or otherwise agree to any reduction in coverage afforded under the policies.

G. If VESSEL OWNER has a claim against CHARTERER or has Notice of any claim(s) for which CHARTERER is or could be accountable;

1. VESSEL OWNER will exercise good faith and prudent management of all claims, including third party claims, and will not defend or settle third-party claims without CHARTERER'S knowledge and prior written consent.

H. In the event VESSEL OWNER's cost for insurance as provided for hereunder is, by virtue of the

5

Contract No: MOB 5 __ __ __ __

1. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are not independent contractors in connection with the performance of SERVICES under this CHARTER, including, but not limited to, any claims or liabilities for regular or overtime wages, salaries, taxes, contributions, and/or assessments; and/or

2. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are entitled to benefits in connection with the performances of SERVICES under this CHARTER under any employee benefit plans maintained by CHARTERER; and/or

3. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits as a result of VESSEL OWNER'S employment policies and practices; and/or

4. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits, of whatever kind or character, or damages, of whatever kind or character, based on whole or in part upon theories that they are direct, dual, loaned, borrowed, and/or co- employees of CHARTERER, in addition to being employees of VESSEL OWNER or Subcontractor.

F. Should VESSEL OWNER or Subcontractor assume the defense of CHARTERER pursuant to Paragraph E, CHARTERER shall also be entitled to separate defense and representation of its interests through counsel acceptable to CHARTERER.

ARTICLE 18.   NOTICES

All notices and communications from VESSEL OWNER to CHARTERER and from CHARTERER to VESSEL OWNER shall be addressed as follows:

CHARTERER
BP America Production Company

501 Westlake Park Blvd

Houston, TX 77079
Attn: Tamara Garrett, Contract Manager
Telephone:

CONTRACTOR

__HOI   NGUYEN_____ [[Contractor Co Name]]

__15217   LISA DR_____ [[Contractor Address]]

__BILOXI  MS  39532_____ [[City/State/ZIP]]

Attn: _____

Telephone: __228-323-3549 – 228-424-8901__

Facsimile: _____

Email: _____

7

Contract No: MOB 5 __ __ __ __

### ARTICLE 25.  PRIORITY OF TERMS

In the event of any conflict or inconsistency between the various parts of this CHARTER, the Articles will take precedence over all other parts of this CHARTER, including any Exhibits, Attachments and Addenda, unless specifically stated otherwise.

THE PARTIES HAVE EXECUTED THIS CHARTER by their respective authorized representatives, as of the date first written above.

CONTRACTOR:

By: _HOI  NGUYEN_
(Signature)                         (Date)

_HOI  NGUYEN_
(Print or Type Name)

_Owner_
(Print or Type Title)

CHARTERER:
BP America Production Company

By: _[signature]_                   9/10/2010
(Signature)                         (Date)

_Joseph Hu_
(Print or Type Name)
_Voo Coordinator_

(Print or Type Title)

9

## Exhibit A

Attached to and made part of the Master Vessel Charter Agreement dated May-12, 2010 between Charterer and Vessel Owners

### COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE

**PARAGRAPH 1 - COMPENSATION**

As full and complete compensation to VESSEL OWNER for SERVICES satisfactorily performed and for assuming obligations hereunder, CHARTERER, for and on behalf of OWNERS, will pay VESSEL OWNER on the basis of the fixed rates (FIXED RATES), set forth below in PARAGRAPH 2 - FIXED RATES, and will reimburse VESSEL OWNER for the costs of specific items set forth below in PARAGRAPH 3 - REIMBURSABLE COSTS. CHARTERER shall be entitled at any time during the term of this CHARTER to revise EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE, by submitting or making available for viewing to VESSEL OWNER, a new EXHIBIT A – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE.

**PARAGRAPH 2 - FIXED RATES**

VESSEL OWNER's FIXED RATES (hereinafter FIXED RATES) are agreed to be VESSEL OWNER's sole, complete, and exclusive compensation for performing and completing SERVICES under CHARTER, except as noted in PARAGRAPH 3 - REIMBURSABLE COSTS below, including, without limitation, all management, labor, supervision, salaries, wages, taxes of all kinds, insurance premiums, contributions, equipment, equipment maintenance, materials (not provided by CHARTERER), support facilities, transportation (if not provided by CHARTERER), tools, overhead and profit. FIXED RATES are not subject to renegotiation or retroactive adjustments based on actual experience and are not subject to escalation.

FIXED RATES FOR SERVICES:

| SERVICES | FIXED RATES |
|---|---|
| A. Vessel Services: | |
| 1. Actual Spill Response: As defined in ARTICLE 10 - HIRE, Paragraph B1 | |
| Vessels > 65' | $3000/24 hour day |
| Vessels > 45' – 65' | $2000/24 hour day |
| Vessels >30' - 45' | $1500/24 hour day |
| Vessels less than 30' | $1200/24 hour day |

Plus:
Specialized equipment required by BP reimbursable at cost +10%
PPEs will be provided by CHARTERER

B. Crew Services:

1. Actual Spill Response, Classroom Training, Table Top Activities, or Meetings:
   As defined in ARTICLE 10 – HIRE, Paragraph B5      $200.00/8 hour day/ crewmember

2. Meals for provided by Vessel Owner

## PARAGRAPH 3 - REIMBURSABLE COSTS

A. CHARTERER shall provide or otherwise compensate VESSEL OWNER at the current commercially available rate per HP/100 x 3 x Hrs. dispatched x current fuel rate for diesel, gas and auxiliary fuels (as specified in EXHIBIT B - CHARTER VESSEL INFORMATION) or fraction thereof while VESSEL is on HIRE for the cost of all the fuel, hydraulic oil and lube oil. CHARTERER's CONTRACT REPRESENTATIVE may make adjustments to formula as warranted.

NOTE: Current rate of all commercially available fuel as of the dispatch off-HIRE date in the VESSEL's home port.

B. In addition to payment of FIXED RATES as set forth above, VESSEL OWNER shall be reimbursed for the following actual costs incurred and paid by VESSEL OWNER. Said costs in 1 and 2 below shall be those net costs incurred and paid by VESSEL OWNER and shall be invoiced to CHARTERER at net cost.

1. When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE reasonable and actual airline travel while on travel away from VESSEL OWNER's home port shall be tourist/economy class unless otherwise approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

2. When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE, vehicle rental while on travel status away from VESSEL OWNER's home port shall be mid-size or smaller unless approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

EXHIBIT B

VESSEL INFORMATION

A. **General Information**

Vessel Name: My Angel II
Home Port: Bayou La Batre AL
Vessel Location: BILOXI MS
Call Sign: ___
x USCG Safety Decal No.: 171653
x USCG Safety Decal Expiration Date: May 12-2011
State Registration No.: ___
Vessel Type (Shrimper etc): Shrimp boat
Vessel Construction (wood, steel etc): Steel
Vessel Length: 79'
Bunk Capacity: 5
Crew Number Requirement: 3

B. **VESSEL OWNER Contact Information**

Company Name: My Angel II
Contact Name: Hoi Nguyen
Email Address: ___
Mailing Address: 15217 Lisa Dr. Biloxi MS. 39532
Physical Address: 15217 Lisa DR Biloxi MS 39532
Home Phone: 228-424-8901
Cell Phone: 228-323-3549
Facsimile Phone: ___

C. **Vessel Survey/Insurance Information**

Date of Survey: 09-2008
Insured? (Yes/No) Yes

Page 1 of 2

## PARAGRAPH 3 - REIMBURSABLE COSTS

A. CHARTERER shall provide or otherwise compensate VESSEL OWNER at the current commercially available rate per HP/100 x 3 x Hrs. dispatched x current fuel rate for diesel, gas and auxiliary fuels (as specified in EXHIBIT B - CHARTER VESSEL INFORMATION) or fraction thereof while VESSEL is on HIRE for the cost of all the fuel, hydraulic oil and lube oil. CHARTERER's CONTRACT REPRESENTATIVE may make adjustments to formula as warranted.

   NOTE: Current rate of all commercially available fuel as of the dispatch off-HIRE date in the VESSEL's home port.

B. In addition to payment of FIXED RATES as set forth above, VESSEL OWNER shall be reimbursed for the following actual costs incurred and paid by VESSEL OWNER. Said costs in 1 and 2 below shall be those net costs incurred and paid by VESSEL OWNER and shall be invoiced to CHARTERER at net cost.

   1. When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE reasonable and actual airline travel while on travel away from VESSEL OWNER's home port shall be tourist/economy class unless otherwise approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

   2. When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE, vehicle rental while on travel status away from VESSEL OWNER's home port shall be mid-size or smaller unless approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

D. **Vessel Engine Information**

Make: _CaT_

Model: _3412_

Total HP: _540_

Number of Engines: _1_

Drive Type: _Gear Drive_

Fuel Storage Amount (Gallons): _20,000_

Burn Rate (GPH): _25 gallon aT 1600 RPM_

Fuel Type: _Diesel_

Aux. Engine? (Yes/No) _Generator_

Aux. HP: _65 KT_

Aux. Fuel Type: _Diesel_

E. **Skiff Information**

Type: _____

Length: _____

HP: _____

Fuel Type: _____

F. **Comments**

**EXHIBIT C**

## AGREEMENT REGARDING PROPRIETARY AND CONFIDENTIAL INFORMATION

WHEREAS, BP America Production Company (hereinafter referred to as CHARTERER) and the undersigned (hereinafter referred to as VESSEL OWNER) have entered into CONTRACT (hereinafter referred to as CHARTER) effective as of the undersigned date whereunder VESSEL OWNER, its subcontractors, and their respective employees will be performing certain services with respect to the tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment operation in connection with the Deepwater Horizon incident (hereinafter referred to as OIL SPILL RESPONSE AND CONTAINMENT) and VESSEL OWNER, its subcontractors, and their respective employees are being paid by OWNERS, either directly or indirectly, for their services thereunder; and

WHEREAS, it is the desire of CHARTERER and OWNERS to secure the benefit of, protect and maintain as confidential all technology and information developed or disclosed in connection with OIL SPILL RESPONSE AND CONTAINMENT;

NOW THEREFORE, the undersigned hereby agree that:

1. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

2. The obligations of the undersigned and the rights of CHARTERER and OWNERS under this Agreement are continuing obligations and rights, and the termination or expiration of CHARTER shall not terminate such obligations and rights.

3. It will not perform services for others during the life of CHARTER which might conflict with the work to be performed in connection with the aforesaid SERVICES; otherwise, consistent with the terms hereof, the undersigned is free to perform services for others.

4. All Data, patent applications and patents arising out of performance of SERVICES under CHARTER or relating to OIL SPILL RESPONSE AND CONTAINMENT are the property of OWNERS and the undersigned will take all necessary steps to secure OWNERS' rights and title thereto.

5. It will promptly disclose in writing to CHARTERER all inventions, discoveries, or improvements which are conceived or made by it, solely or jointly, which arise out of or relate to the performance of SERVICES under the CHARTER or to the Data defined above. It further agrees to assign and, on request by CHARTERER or OWNERS, will assign to CHARTERER's or OWNERS' designee(s) all such inventions, discoveries, and improvements, and all applications for patent and patents which may result therefrom, and cooperate with CHARTERER or OWNERS and their designee(s) in the preparation and execution of all papers required to secure Letters Patent thereon.

6. It will not use Data for any purpose other than as required by CHARTERER for the purpose of performing SERVICES under CHARTER without the prior written permission of CHARTERER.

The undersigned has signed this Agreement as of the date written below.

Contractor

By: _[signature]_
(Signature)

Hoi Nguyen
(Print or Type Name)

May 12-10
(Date)

Owner
(Print or Type Title)