# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara M. Harding
To Call Writer Directly:
(202) 879-5081
barbara.harding@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 13, 2011

**VIA E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B345
New Orleans, LA 70130

    Re: **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179**

Dear Judge Shushan:

  BP submits this letter brief for reconsideration of the Court's September 2, 2011 order on Halliburton's motion to compel discovery responses [Dkt. 3903]. As discussed with the Court on September 8, 2011, BP was unable to file an opposition to Halliburton's motion before the Court's order and therefore accepts the Court's invitation to submit this letter brief.

  Pursuant to the Court's order, BP will amend or supplement its responses to Halliburton's Interrogatory No. 8 and Requests for Admission Nos. 5, 10, 15-24, 37, 41-43, 46-47, 61-65, 73, 78-80, 85, 87, 89-90, 91, 93, 95, 109, 112-114, 131, 137-139, 141, 143-144, 179 and 180 by September 16, 2011.[1] BP has already provided Halliburton with the Bates ranges for the communication regarding GP 10-60. BP respectfully requests that the Court reconsider its ruling on Interrogatory No. 7 and Request for Admission No. 115 because, as described below, BP has already fully responded to this discovery. Further, should the Court deny BP's request for reconsideration, BP respectfully requests that the Court extend BP's time to respond to this subset of discovery until seven business days after the Court's order. BP has conferred with Halliburton and Halliburton consents to this extension.

---

[1]  BP notes that all of the discovery ordered by the Court (except for the communication regarding GP 10-60) was subject to BP's August 23, 2011 request for clarification, *see* Ex. A (8/23/2011 M. Nomellini letter to the Court), which was pending before the Court but not mentioned in Halliburton's motion. Because it was unclear whether Halliburton could submit its late complaint on written discovery, the parties did not meet and confer, and there was no opportunity to resolve these issues before burdening the Court.

Hong Kong London Los Angeles Munich New York Palo Alto San Francisco Shanghai Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 13, 2011
Page 2

**Interrogatory No. 7**:

Halliburton's request asks BP to "[e]xplain BP's policies and procedures regarding the design and interpretation of negative tests, and how such policies and procedures are communicated to BP well site leaders."

BP objected that the request was vague "because the details of the development and communication of any particular negative test may be different depending on the circumstances." *See* Ex. B (BP's Responses to Halliburton's Interrogatories) at 6-7.  Further, BP objected that the information requested was likely in the possession of "Transocean or other drilling contractors that work[] to set up, monitor, perform and interpret negative tests." *See id.*  And, BP objected that the request implied "BP or its well site leaders are responsible for designing and interpreting negative tests." *See id.*

Subject to these objections, BP responded that "BP's policy specified the requirement to conduct a negative pressure test" but that "[t]he negative test procedures used at various wells would have been developed by a combination of the drilling contractor and the BP engineering and operations teams depending upon the particular circumstances of a given well." *See id.*  And, BP offered that "[s]pecifically at the Macondo Well, BP, Transocean, MI Swaco and other contractors were involved in designing and interpreting the negative test." *See id.*

In its motion, Halliburton argued that "[w]ith this interrogatory, HESI seeks the identification of BP's policies and procedures regarding the design and interpretation of negative tests, and how those policies are communicated to well site leaders.  In its response, BP failed to identify its 'policy' or answer the portion of the request regarding how such policy is communicated."  [Dkt. 3843 (HESI Br.) at 2-3.]

To the contrary, BP answered Halliburton's request and, indeed, provided information beyond the scope of Halliburton's request.  BP has no "policy or procedure" on how to "design or interpret" a negative test, and BP could have fairly responded by merely stating there were no such policies and procedures.  Instead, BP went further by identifying what BP's policy requires: "BP's policy specified the requirement to conduct a negative pressure test."  However, that policy does not specify how to design or interpret the negative test.  As such, BP's response further offers that information on *how* negative tests were conducted is likely in the possession of "Transocean or other drilling contractors that work[] to set up, monitor, perform and interpret negative tests."  BP further described the well-by-well practice of developing the negative pressure test with the drilling contractor:  "[t]he negative test procedures used at various wells would have been developed by a combination of the drilling contractor and the BP engineering and operations teams depending upon the particular circumstances of a given well."  And, although not asked, BP even answered that for the specific case of the Macondo well "BP,

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 13, 2011
Page 3

Transocean, MI Swaco and other contractors were involved in designing and interpreting the negative test."

Accordingly, BP requests that the Court reconsider its order for BP to supplement its response to Interrogatory No. 7 because BP has fairly responded to the request and has no further information to provide.

**Request for Admission No. 115:**

Halliburton's request states: "Admit that the 13.1 ppg sand in the Macondo Well from which BP believes flow initiated is above the "main hydrocarbon zones" (as that term is used in the sentence quoted in Request for Admission 142)." Halliburton later clarified that the cross-reference should be to Request for Admission No. 140, which states, in relevant part: "the phrase 'main hydrocarbon zones' refers to the three 12.6 ppg sands depicted and identified as 'Primary Reservoir Sands' in 'Figure 1' on page 54 of the Bly Report."

Halliburton argued to the Court that "HESI clarified the typographical errors in these RFAs which defined 'main hydrocarbon zone.' [and] BP failed to supplement its responses as it said it would, and the Court should compel it to do so." As such, the Court ordered BP to "supplement its responses following HESI's clarification."

But BP's response already addresses the correction made by Halliburton. Recognizing that there was a typographical error in Halliburton's request, BP already responded to the request as if it properly referenced request no. 140 and admitted the portion of the request subject to Halliburton's correction—that page 54 of the *Deepwater Horizon* Accident Investigation Report labels the 12.6 ppg sands as the "Primary Reservoir Sands." Specifically, BP objected and responded as follows:

> The BP Parties object to this request on the grounds that the phrase "flow initiated" is vague and ambiguous. The BP Parties also object to this request on the grounds that it assumes the BP Parties admit the initial flow of hydrocarbons came from the 13.1 ppg sand. In addition, the BP Parties object to this request as vague and ambiguous as to the phrase "main hydrocarbon zones." Further, the request referenced to provide a definition for that phrase does not include the phrase at issue.
>
> Subject to their specific and general objections, the BP Parties respond as follows: *The BP Parties admit that Figure 1 on page 54 of its September 8, 2010 Deepwater Horizon Accident Investigation Report labels the 12.6 ppg sands as the "Primary Reservoir Sands."* The BP Parties further refer[] Halliburton to their response to Request for Admission No. 112. The BP Parties deny the remainder of this request.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 13, 2011
Page 4

*See* Ex. C (BP's Responses to Halliburton's Requests for Admission) at 58-59 (emphasis added). As such, BP has already responded fully to Halliburton's corrected request by admitting the part that could be admitted and denying the rest. *See* Fed. R. Civ. P. 36(a)(4).

Accordingly, BP requests that the Court reconsider its order for BP to supplement its response to Request for Admission No. 115 because BP's response already fairly responds to Halliburton's corrected request.

\* \* \*

BP respectfully requests that this Court reconsider its order for BP to amend or supplement its responses to Halliburton's Interrogatory No. 7 and Request for Admission No. 115. Further, BP respectfully requests that the Court grant BP's uncontested request for an extension of time to respond to this discovery until seven business days after the Court's order.

Sincerely,

/s/ Barbara M. Harding

cc:  Plaintiffs Liaison Counsel
     Defense Liaison Counsel
     Mike Underhill
     Cory Maze
     Donald E. Godwin
     James P. Roy
     Stephen J. Herman
     Mike O'Keefe