# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California 90071

Martin Boles
To Call Writer Directly:
(213) 680-8428
martin.boles@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

September 15, 2011

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B345
New Orleans, LA 70130

Re: Letter Brief in Support of BP's Motion for Reconsideration of the Court's September 6 Order denying BP's Motion to Compel Discovery of the GoM drilling policies of Anadarko US Offshore (Dkt. 3921)

Dear Judge Shushan:

BP respectfully requests that the Court reconsider the portion of its September 6, 2011 Order denying BP's motion to compel discovery of the GoM drilling policies of Anadarko US Offshore. (*See* Dkt. 3921.)

In its Order, the Court concluded that (1) BP's request was untimely and (2) the information is not relevant. (*See id.* at 1–2.) However, Anadarko did not argue that BP's discovery was untimely, so BP has not previously had a chance to address the issue. Both the requests and the motion complied with the Court's scheduling deadlines. See *infra* Part I. On the issue of relevance, after BP's reply brief, Anadarko served supplemental discovery responses claiming that the two Anadarko parties to the MDL—APC and AEP—do not have responsive written GoM drilling policies, increasing the relevance of Anadarko US Offshore's policies to the issue of the industry standard of care. See *infra* Part II.

**I.      BP's Discovery Regarding Anadarko US Offshore's Policies Was Timely.**

Anadarko did not contend that BP's discovery was untimely. (*See* Aug. 31, 2011 Anadarko Letter Br. (Dkt. 3912).) The Court therefore did not have all the facts before it when analyzing this issue. See *Who Dat Yat LLC v. Who Dat? Inc.*, 2011 WL 121730, at *1 (E.D. La. Jan. 11, 2011) (Barbier, J.) (listing alternative bases for a motion for reconsideration). As will be shown, BP (1) served its discovery requests within the window allowed by the Court and (2) timely moved to compel.

BP served Anadarko with RFPs on April 29, 2011, within the Court's deadline. (*See* Apr.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 15, 2011
Page 2

11, 2011 Order (Dkt. 1908) at 1.) These RFPs encompassed the Anadarko US Offshore documents in dispute. *First*, a corporation is deemed to "control," for purposes of discovery, documents of its subsidiaries; Anadarko did not dispute BP's citations to the case law on this point. (*See* Aug. 25, 2011 BP Letter Br. (Dkt. 3920) at 2–3.) *Second*, the RFP "Instructions" sought "all documents in the possession, custody, or control of your affiliates, partners . . . or other persons directly or indirectly connected with you or subject to your control." (Ex. A at 15–16.) The interrogatories at issue in the motion were likewise timely and covered Anadarko subsidiaries.[1] While the express identification of Anadarko US Offshore as a specific subsidiary from which BP wanted information came later, that was not a new discovery request. Rather, it was a proposal for compromising a dispute over already-pending discovery by narrowing its scope.[2]

BP also timely moved to compel. The Court set a deadline of August 25 for any BP motion to compel discovery from Anadarko. (Ex. C (Aug. 22, 2011 Email from Judge Shushan to A. Langan).) BP filed its motion to compel on August 25. (Aug. 25, 2011 BP Letter Br. (Dkt. 3920).)

II. **The Relevance of Anadarko US Offshore Drilling Policies Is Reinforced by the New Revelation that APC and AEP Will Be Producing None.**

As the Court knows, BP and Anadarko each served discovery about the other's non-Macondo wells. Both sides objected on the grounds of relevance—BP as to wells outside the GoM, Anadarko as to any non-Macondo wells. They resolved their objections by agreeing that each could limit its production to GoM policies. Only after this deal was struck did the parties encounter the dispute as to whether "Anadarko" policies would include those of its subsidiary Anadarko US Offshore. (This chronology was detailed in the initial briefing. (Sept. 2, 2011 BP Letter Br. (Dkt. 3914) at 2.))

What is new is that, after briefing on this motion, Anadarko fulfilled its part of the deal to

---

[1] BP served the interrogatories on July 1, 2011, a date accepted by the Court as permissible in a prior ruling. (*See* July 19, 2011 Order Regarding Halliburton's Motion for Protective Order (Dkt. 3365) at 1 (declining to find that interrogatories served on July 1, 2011 were not timely).) The interrogatories instructed Anadarko to provide "information that is known to you or in your possession custody or control[.]" (Ex. B at 12.) And they asked Anadarko to describe "your" policies with respect to several topics. (Ex. B (Interrogatory Nos. 2, 5, 8, 11, 13, 21–23, 25–26, 28–30, 32).) In the "Definitions" portion of the interrogatories, the terms "you," "your," and "yours" include "Anadarko and/or any corporate affiliate[.]" (Ex. B at 10.)

[2] *See* Aug. 31, 2011 Anadarko Letter Br. (Dkt. 3912) Ex. B (Aug. 25, 2011 Letter from D. Beffa to T. Hedgpeth & D. Saunders) at 2–3 ("At a minimum, BP believes that the records of Kerr-McGee Oil and Gas Corp. . . . should be searched and produced.").

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 15, 2011
Page 3

produce GoM drilling policies by saying that its two party affiliates, APC and AEP, have none.[3] Yet an Anadarko safety manual directs employees to comply with "numerous programs, procedures, and guidelines that are in place to support site-specific work practices[.]" (*See* Ex. F at 1 (Safety & Health Manual).) Where might those "specific" policies be kept, since they are apparently not at APC and AEP? We know that key Anadarko personnel who monitored the Macondo Well came from the Anadarko US Offshore subsidiary. (*See* Aug. 25, 2011 BP Letter Br. (Dkt. 3920) at 4.) Another clue to the possible whereabouts of these "numerous programs, procedures and guidelines" comes from Anadarko's touting of Anadarko US Offshore as "leading the way in deepwater Gulf of Mexico platforms." (*See* Aug. 25, 2011 BP Letter Br. (Dkt. 3920) Ex. A.) Thus, the relevance of Anadarko US Offshore drilling policies is heightened by the news that APC and AEP, despite their agreement, are producing none.

### III.   Conclusion

Anadarko agreed to compromise the parties' reciprocal objections to non-Macondo discovery by producing GoM drilling policies. But unless the production includes Anadarko US Offshore's information, Anadarko gets away with saying, in effect, "Yes we have no policies." Anadarko never contested BP's case authority showing that the documents of Anadarko US Offshore are within Anadarko's "custody and control" for purposes of discovery. Anadarko never contested BP's citations to Fifth Circuit case law holding that evidence of industry practices can be relevant to the standard of care.[4] Anadarko never contested the discovery's timeliness. BP therefore respectfully requests that the Court amend its September 6 Order to direct Anadarko to provide GoM policies in the possession of Anadarko US Offshore.

Sincerely,

Martin Boles

---

[3]  *See* Ex. D (Anadarko Resps. to RFP Nos. 34–52, 56); Ex. E (Anadarko Resps. to Interrog. Nos. 2, 5, 8, 11, 13, 21–23, 25–26, 28–30, 32); *see also Who Dat Yat LLC*, 2011 WL 121730, at *1 (new evidence justifies motion for reconsideration).

[4]  *See Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000); *Loehr v. Offshore Logistics, Inc.*, 691 F.2d 758, 761 (5th Cir. 1982); *Baker v. S/S Cristobal*, 488 F.2d 331, 333 (5th Cir. 1974); *Ward v. Hobart Mfg. Co.*, 450 F.2d 1176, 1182 (5th Cir. 1971) (standard for negligence includes "the conformity of defendant's design to the practices of other manufacturers"); *see also Nw. Airlines v. Glenn L. Martin Co.*, 224 F.2d 120, 129 (6th Cir. 1955) (evidence of practices of other airlines relevant to the issue of negligence).

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 15, 2011
Page 4


cc:     Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill
        Hon. Attorney General Luther Strange
        Cory Maze
        Mike O'Keefe
        Tiffany Hedgpeth
        Dan Saunders
        Tony Fitch