# EXHIBIT A



LEXISNEXIS® FILE & SERVE
37333520
E-SERVICE
Apr 29 2011
11:06PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig                      *        **MDL No. 2179**
      "Deepwater Horizon" in the Gulf       *
      of Mexico, on April 20, 2010          *        **SECTION: J**
                                            *
      Applies to: *All Cases*               *        **JUDGE BARBIER**
                                            *        **MAGISTRATE JUDGE SHUSHAN**

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION
## TO THE ANADARKO DEFENDANTS

*IN ACCORDANCE WITH THE ARBITRATION PROVISION IN THE MACONDO PROSPECT OFFSHORE DEEPWATER OPERATING AGREEMENT, BP RECENTLY FILED A MOTION TO STAY ANADARKO'S AND MOEX OFFSHORE 2007'S ATTEMPTS TO LITIGATE CLAIMS AGAINST BP IN COURT.  THE COURT HAS NOT YET RULED ON BP'S MOTION.  BUT OUT OF AN ABUNDANCE OF CAUTION AND TO COMPLY WITH THE COURT'S DISCOVERY SCHEDULING ORDER, BP IS SERVING THE FOLLOWING DISCOVERY IN CASE THE COURT DENIES BP'S MOTION TO STAY.  BY SERVING THESE DISCOVERY REQUESTS, BP DOES NOT—AND DOES NOT INTEND TO—WAIVE ANY RIGHTS UNDER THE MACONDO PROSPECT DEEPWATER OPERATING AGREEMENT, INCLUDING THE ARBITRATION RIGHTS UNDER THE AGREEMENT.  BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO THIS DISCOVERY UNLESS OR UNTIL THE COURT DENIES BP'S MOTION TO STAY LITIGATION.*

      Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following requests for production to Anadarko Petroleum Corporation and Anadarko E&P Company LP (the "Anadarko Defendants") to be responded to no later than May 31, 2011.  The BP Parties request that all documents and electronically stored information responsive to the following Request for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, by May 31, 2011.

## REQUESTS FOR PRODUCTION

### General Requests

1.      All documents or communications relating to or referring to the design and use of spacers at the Macondo Well.

2.      All documents or communications relating to or referring to temporary abandonment procedures at the Macondo Well.

3.      All documents or communications relating to or referring to negative pressure test procedures at the Macondo Well.

4.      All documents or communications relating to or referring to positive pressure test procedures at the Macondo Well.

5.      All documents or communications relating to or referring to cementing procedures at the Macondo Well.

6.      All documents or communications relating to or referring to the use of centralizers at the Macondo Well.

7.      All documents or communications relating to or referring to the tubular or casing design used at the Macondo Well.

8.      All documents or communications relating to or referring to the use of a long string production casing at the Macondo Well.

9.      All documents or communications relating to or referring to the use or potential use of a liner with tie back casing string at the Macondo Well.

10.      All documents or communications relating to or referring to the lock down sleeve and lock down sleeve procedure for use at the Macondo Well.

11.      All documents or communications relating to or referring to gas flow potential at the Macondo Well.

2

12.     All documents or communications relating to or referring to drilling fluids used at the Macondo Well.

13.     All documents or communications relating to or referring to well control events at the Macondo Well.

14.     All documents or communications relating to or referring to fluid loss at the Macondo Well.

15.     All documents or communications relating to or referring to the decision to call terminal depth at the Macondo Well.

16.     All documents or communications relating to or referring to converting the float collar at the Macondo Well.

17.     All documents or communications relating to or referring to the use of foamed cement slurry at the Macondo Well.

18.     All documents or communications relating to or referring to performing a bottoms up circulation at the Macondo Well.

19.     All documents or communications relating to or referring to the drilling plan for the Macondo Well.

20.     All documents or communications relating to or referring to any applications for or permitting of the Macondo Well.

21.     All documents or communications relating to or referring to analysis of the Macondo Well and BP's operations on the Macondo Well.

22.     All documents or communications relating to or referring to any non-BP entity's operations on the Macondo Well, including the Transocean defendants, any other defendants in this litigation, or any other service provider involved with the operations of the well.

23.     All other documents or communications that mention or refer to the MC252 or the Macondo Well, including but not limited to any well activity reports, drilling activity reports, weekly drilling reports, weekly summary of operations, executive summaries, exploration weekly reports, or exploration activity reports.

### Communications with BP Pre-Incident

24.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any data (including real time, and non-real time, data), daily reports, and other documents or communications generated during the course of drilling the Macondo Well.

25.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through INSITEAnywhere.

26.     Documents sufficient to identify who received, reviewed, analyzed, or monitored any material or information available through the Well Space system.

27.     All documents or communications relating to or referring to discussions regarding the Macondo Well.

28.     All documents or communications relating to or referring to the Macondo Prospect Well Participation Agreement, Deepwater Gulf of Mexico, between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Kerr-McGee Oil & Gas Corporation; the Macondo Prospect Offshore Deepwater Operating Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC ("JOA"); the Lease Exchange Agreement between BP Exploration & Production Inc., Anadarko Petroleum Corporation, and Anadarko E&P Company LP; and the Lease Exchange Agreement between BP Exploration & Production Inc. and MOEX Offshore 2007 LLC.

29.     All drafts of the JOA.

30.     All documents relating to or referring to your February 18, 2010 authorization for use of the *Deepwater Horizon* rig.

31.     All documents or communications relating to or referring to the authorizations for expenditures for the Macondo Well.

32.     All documents or communications by, to or from COPAS related to the terms of the JOA.

33.     All documents or communications referring to, relating to, or analyzing COPAS guidelines or other model contract form interpretations.

### GoM Engineering Practices

34.     All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

35.     All documents relating to or referring to the design and use of spacers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

36.     All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

37.     All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

38.     All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

39.     All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

40.     All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

41.     All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

42.     All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

43.     All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

44.     All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

45.     All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

46.     All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

47.     All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

48.     All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

49.     All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

50.     All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

51.     All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

52.     All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

53.     All drilling plans for each deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or an affiliate of the Anadarko Defendants.

54.     All documents or communications relating to any applications for or permitting of any deepwater well in the Gulf of Mexico spudded in the last five years, owned, in whole or in part, by the Anadarko Defendants or any affiliate of the Anadarko Defendants.

55.     All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

56.     All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

### Financial Information And Analysis of Potential Claims

57.     All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

58.     All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising from their investment in the MC252 lease.

59.     All documents relating to or referring to any statement issued by Anadarko Petroleum Corporation regarding the MC252 well, including all submissions to the Securities Exchange Commission ("SEC"), such as 10-Qs, 10-Ks or other documents submitted to the SEC.

60.     All documents or communications, including internal, external or drafts, related to the *Deepwater Horizon* incident.

61.     All documents or communications relating to or referring to JIB invoices, including all drafts and internal correspondence related to the JIB invoices.

62.     All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

63.     All documents or communications relating to or referring to certifications of oil spill responsibility submitted to the MMS or any Governmental agency related to the Macondo Well or any other well in the Gulf of Mexico.

64.     All documents provided to or received from any insurer, including the insurers for the Anadarko Defendants.

65.     All documents related to or referring to the *Deepwater Horizon* incident provided to or received from any potential purchaser of the Anadarko Defendants' stock or properties.

66.     All documents related to or referring to the analysis or decision by the Anadarko Defendants to file claims against BP in the Multidistrict Litigation instead of pursuing such claims under the Dispute Resolution Procedures of the JOA.

67.     All documents containing or referring to any calculation or analysis of potential exposure or reserve of the Anadarko Defendants arising from or related to the *Deepwater Horizon* incident, including those that may have been shared or forwarded to any investor, external auditor, or Board of Directors member.

**Documents Supporting Public Statements**

68.     All documents supporting any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

69.     All documents questioning or otherwise commenting on any assertions made by James T. Hackett in his July 22, 2010 statement to Congress or related testimony.

70.     All documents reviewed or relied upon in preparing James T. Hackett's July 22, 2010 statement to Congress or related testimony.

71.     All documents relating to or referring to any statement or testimony by any representative of the Anadarko Defendants provided to Congress.

72.     All documents provided by the Anadarko Defendants to UBS Warburg or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

73.     All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

74.     All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

75.     All documents related to or constituting communications with any member of the media or press regarding or referring to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

76.     All documents or communications related to press interviews or statements, including any with the Financial Times, regarding the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same.

77.     All marketing or public relations materials relating to or referring to the Macondo Well, the explosion of the *Deepwater Horizon* or the oil spill resulting from the explosion of the *Deepwater Horizon*, or any investigation, litigation or arbitration related to the same, including

internal and external drafts and correspondence relating to or referring to marketing or public relations materials.

### Investigation Requests

78.     All documents relating to the *Deepwater Horizon* incident.

79.     All documents relating to the flow rate of oil from MC252 after the *Deepwater Horizon* incident on April 20, 2010.

80.     All documents relating to efforts to contain or clean up the oil spill after the *Deepwater Horizon* incident on April 20, 2010.

81.     All documents relating to any interviews of or statements made by any person who was on the *Deepwater Horizon* or *Damon Bankston* on April 20, 2010.

82.     All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

83.     All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts of reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

84.     All documents relating to or referring to BP's internal investigation report titled *Deepwater Horizon* Accident Investigation Report, dated September 8, 2010.

85.     All documents relating to or referring to any investigation, presentation or analyses conducted by or on behalf of the Transocean Defendants.

86.     All documents relating to or referring to any investigation, presentation or analysis conducted by or on behalf of the Halliburton Defendants.

### Requests re Correspondence and Settlement

87.     All documents sent to or received from any person or entity related to settlement or compromise, or potential settlement or compromise, of any claims arising from or relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

88.     All documents that the Anadarko Defendants have sent to or received from any person or entity relating to the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to all documents that the Anadarko Defendants have sent to or received from any investigative panel, government agency, member of the press or media, or any other defendant in this litigation.

### Requests Related To The Anadarko Defendants' Claims and Evidence

89.     All documents mentioned or referenced in any pleading, motion or brief filed by the Anadarko Defendants in this action.

90.     All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

91.     All documents that have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action.

92.     All documents that you contend support the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

93.     All documents that question or discuss the proposition that the Anadarko Defendants are not liable for any damages related to the *Deepwater Horizon* incident and subsequent oil spill.

94.     All documents that you contend support the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

95.     All documents that question or otherwise discuss the proposition that the Anadarko Defendants are not liable under the JOA to pay JIBs or otherwise to reimburse BP for costs related to the *Deepwater Horizon* incident and subsequent oil spill.

96.     All other communications relating to or referring to MC252 or the Macondo Well.

97.     All other documents relating to or referring to MC252 or the Macondo Well.

## DEFINITIONS

1.     "You," "your," and "yours" shall mean the Anadarko Defendants, including without limitation all of the Anadarko Defendants' present or former agents or representatives, or anyone acting or purporting to act for or on the Anadarko Defendants' behalf for any purpose whatsoever.

2.     "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3.     "COPAS" shall mean the Council of Petroleum Accountants Societies.

4.     "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and ESI containing, summarizing, or memorializing any communication.

5.     "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) including electronically stored information ("ESI"), and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing

or record of any type or description, including but not limited to, all writings; records; contracts; agreements; communications (intra- or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

6.     "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

7.     "Including" or "includes" means "including but not limited to" or "including without limitation."

8.     "JOA" shall mean the Macondo Prospect Offshore Deepwater Operating

Agreement.

9.     "Relating to" or "related to," when referring to any given subject matter, means

any document that constitutes, comprises, involves, contains, embodies, reflects, identifies,

states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the

particular subject matter identified.

10.    "MC252 well" means the exploratory well that was being drilled by the

*Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental

shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11.    "*Deepwater Horizon* Incident"  and "Incident" means the events leading to (i) the

loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the

eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

12.    "Well control event," whether or not capitalized, means any kick, lost circulation

event, or blowout.

13.    "Blowout," whether or not capitalized, means an uncontrolled release of

hydrocarbons from a well.

14.    "Kick," whether or not capitalized, means the intrusion or influx of formation

fluids (such as hydrocarbons or water) into a wellbore.

15.    "Lost circulation," whether or not capitalized, means a reduced amount or total

absence of drilling fluids returning to the drilling rig after being pumped down a well.

## INSTRUCTIONS

1.     All documents are to be produced in accord with Pre-Trial Order No. 16.

2.     Produce all documents within your possession, custody, or control including all

documents in the possession, custody, or control of your affiliates, partners, employees, agents,

attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected with you or subject to your control.

3.       If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

4.       If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

5.       Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

6.       If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.  Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

7.       If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

8.       Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

9.       Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

Dated:  April 29, 2011

Respectfully submitted,

By:   /s/ Martin R. Boles

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312-862-2000 (Tel)
312-862-2200 (Fax)

and

Martin R. Boles
(martin.boles@kirkland.com)
Kirkland & Ellis LLP
333 South Hope Street, Suite 2900
Los Angeles, CA 90071
213-680-8400 (Tel)
213-680-8500 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

*Attorneys for the BP Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by

electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order

No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on

this 29th day of April, 2011.


_____/s/ Martin R. Boles_____

# EXHIBIT B



38490311

Jul 1 2011
11:54PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig | * | MDL No. 2179 |
| | "Deepwater Horizon" in the Gulf | * | |
| | of Mexico, on April 20, 2010 | * | SECTION: J |
| | | * | |
| | Applies to: *All Cases* | * | JUDGE BARBIER |
| | | * | MAGISTRATE JUDGE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### THE BP PARTIES' FIRST SET OF INTERROGATORIES TO ANADARKO

*IN ACCORDANCE WITH THE ARBITRATION PROVISION IN THE MACONDO PROSPECT OFFSHORE DEEPWATER OPERATING AGREEMENT, BP IS PURSUING A MOTION TO STAY ANADARKO'S CLAIMS AGAINST BP. THE COURT HAS NOT YET RULED ON BP'S MOTION. THE MAGISTRATE JUDGE, HOWEVER, HAS RULED THAT DISCOVERY CAN PROCEED BETWEEN BP AND ANADARKO SO LONG AS IT IS RELEVANT TO THE PARTIES' MDL DEFENSES. IN RELIANCE ON THAT ORDER, AND TO COMPLY WITH THE COURT'S SCHEDULING ORDERS, BP SERVES THE FOLLOWING INTERROGATORIES. BY SERVING THESE INTERROGATORIES, BP DOES NOT—AND DOES NOT INTEND TO—WAIVE ANY RIGHTS UNDER THE OPERATING AGREEMENT, INCLUDING THE ARBITRATION RIGHTS UNDER THAT AGREEMENT, AND BP EXPLICITLY RESERVES ALL SUCH RIGHTS. BP STIPULATES THAT ANADARKO SHALL HAVE NO OBLIGATION TO RESPOND TO ANY DISCOVERY REQUESTS BY BP IN THE EVENT THAT, AND AT SUCH TIME AS, THE COURT RULES THAT SUCH DISCOVERY IS INCONSISTENT WITH BP'S RIGHT TO ARBITRATE ITS DISPUTES WITH ANADARKO.*

*IN ADDITION, BP HAS SERVED CERTAIN INTERROGATORIES TO PRESERVE ITS RIGHT TO OBTAIN DISCOVERY IN THE EVENT THAT THE COURT DENIES BP'S MOTION TO STAY. BP STIPULATES THAT ANADARKO HAS NO OBLIGATION TO RESPOND TO INTERROGATORY NOS. 40 THROUGH 43 UNLESS AND UNTIL THE COURT DENIES BP'S MOTION TO STAY.*

Pursuant to Federal Rules of Civil Procedure 26 and 33, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following interrogatories to Anadarko Petroleum Corporation and Anadarko E&P Company LP (which may be referred to singly or collectively as "Anadarko") to be responded to no later than August 1, 2011.

## <u>INTERROGATORIES</u>

1.      Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the Deepwater Horizon, Deepwater Horizon Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

2.      Please describe in detail your well control or well shut-in procedures, including any ways in which those procedures have changed since April 20, 2010, and ways in which you contend they differ from what you allege was done on the Macondo Well.

3.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced kicks, including the identity of each person who experienced, monitored, or reported such kicks, and the actions taken in response to such kicks.

4.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you experienced a blowout, including the identity of each person who experienced, monitored, or reported such blowout, and the actions taken in response to such blowout.

5.      Please describe in detail your temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including a detailed description of each prescribed, suggested or optional step, including but not limited to the depth of any cement plug utilized, the timing and method of installation of lock-down sleeves, and running the lead impression tool, and ways in

which you contend that your procedures differ from what you allege was done on the Macondo Well.

6.      Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you chose to use a long string in lieu of a liner in a deep high-pressure well being installed in formations exhibiting different pore pressures in the open-hole interval.

7.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you performed a temporary abandonment procedure that differed from the one you actually submitted to, or different from the one that was approved by, the US Minerals Management Service (MMS) or Bureau of Ocean Energy Management (BOEM), including in your answer all ways in which the employed procedures differed from the submitted or approved procedures.

8.      Please describe in detail your negative pressure test procedure for deepwater wells in the Gulf of Mexico, including the steps in negative pressure testing communicated to your rig personnel and all criteria for gauging whether a negative pressure test has succeeded or failed, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

9.      Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which a negative pressure test was not performed or was deemed by some or all personnel to have failed.

10.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you displaced seawater to more

than 500' below mud level before negative pressure testing during temporary abandonment, including in your answer the total number of feet you displaced to in each instance.

11.    Please describe in detail your policies with respect to running cement bond logs for deepwater wells in the Gulf of Mexico, including in your answer your policies regarding when a cement bond log is required, when a cement bond log is recommended, and when a cement bond log is optional, and ways in which you contend that your policies differ from what you allege was done on the Macondo Well.

12.    Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which there was not a cement bond log run at the conclusion of a cement job.

13.    Please describe in detail all procedures related to cementing your deepwater wells in the Gulf of Mexico, including any procedures related to the use of nitrified foam cement, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

14.    Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have used Halliburton as your cement subcontractor.

15.    Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you directed your cement contractor to proceed with a cement job when an Opticem or similar modeling report showed the well could have a gas flow problem.

16.    Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not conduct a full

bottoms-up circulation of the drilling fluid before beginning a cement job, including in your answer the reason(s) why you did not conduct such circulation.

17.    Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used a pressure greater than 2000 psi to establish sufficient circulation to convert the float collar in preparation for cementing.

18.    Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you had to attempt more than one time to convert the float collar before it was declared converted prior to cementing, including in your answer the number of attempts you made, and the results of those attempts.

19.    Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used nitrogen foamed cement, including the length of time you permitted the cement to sit prior to conducing a negative-pressure test, and the circumstances that led you to determine that nitrified foam cement was the appropriate cement mixture.

20.    Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you used lost circulation materials as spacer, including in your answer the circumstances that led you to determine that lost circulation material could be used as spacer.

21.    Please describe in detail your policies and procedures regarding use of the diverter system on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways

5

in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

22.     Please describe in detail your policies and procedures regarding use of the Emergency Disconnect System (EDS) on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

23.     Please describe in detail your policies and procedures related to changes or substitutions of personnel on board MODUs or otherwise involved in deepwater wells in the Gulf of Mexico, including but not limited to temporary personnel changes or substitutions of well site leaders, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

24.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you changed your well site leader within one week of the commencement of temporary abandonment procedures.

25.     Please describe in detail your policies and procedures related to training of personnel on board MODUs or involved in deepwater wells in the Gulf of Mexico, including ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

26.     Please describe in detail your policies and procedures relating to monitoring well conditions, including duties of well site leaders, mudloggers, rig personnel, or any other person

with the ability to monitor well conditions, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

27.     Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you had no on-shore real-time monitoring process to assess what was happening in the well on a continuing basis.

28.     Please describe in detail your policies and procedures relating to the use of centralizers during cement jobs for your deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

29.     Please describe in detail your policies and procedures relating to mudlogging of deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

30.     Please describe in detail your policies and procedures relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job in deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

31.     Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you did not spot heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole prior to any cement job and identify the data upon which any person based that decision.

32.     Please describe in detail your procedures to ensure that you would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of

the rigs utilized in your drilling operations in the Gulf of Mexico, including the BOPs on such rigs, including in your answer the owner of the rig(s) to which such procedure has been applied, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

33.    Please identify each instance of your drilling deepwater wells in the Gulf of Mexico since April 20, 2010, in which you have hired a Transocean rig under a drilling contract.

34.    Please identify each person whom you may call as an expert witness, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor).   With respect to each person you identify, please state:  (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

35.    Please identify each person you intend to call or may call as a witness in this matter and, for each person identified, state the subject of their expected testimony.

36.    Please identify and describe in detail all internal discussions at Anadarko before April 21, 2010, discussing the safety of the Macondo Well.

37.    Please describe in detail any instances of your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which an Opticem or similar modeling report indicated that, with the number of centralizers you chose to use (and actually did use) in a well, there was a gas flow problem, including but not limited to, the number of centralizers used and the gas flow potential indicated by modeling.

38.    Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you executed a cement job

despite conditions that were not optimal, including when Opticem models or another model used by any cementing expert or contractor predicted or suggested that there was a possibility of gas flow, channeling, or cement failure.   As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

39.   Please describe in detail any instances in your drilling of deepwater wells or use of MODUs in the Gulf of Mexico in the last five years in which you concluded, or any person suggested, that the cement job failed to achieve zonal isolation for any reason (including channeling, nitrogen breakout, contamination, poor design), including details concerning the composition of the cement used, the pre- and post-job testing, the reports prepared for the cement job, any discussion or conclusion whether the cement failed, the known or suspected reason why the cement failed, and how the issue was resolved.   As part of your response identify all witnesses with knowledge of the events, and all statements, documents and other materials that describe or reflect the events.

40.   Please identify each person who provided any information that forms the basis for your responses, or any portion thereof, to these Interrogatories, including the substance of the information each such person provided.

41.   Please describe in detail all reasons you contend that you are not required to pay any portion of any Joint Interest Billing related to the Macondo Well.

42.   Please describe in detail all ways in which you contend that BP has breached the JOA.

43.   Please describe in detail all ways in which you contend BP's conduct constituted gross negligence or willful misconduct, as those terms are used in your crossclaims against BP.

44.     Please describe in detail all ways in which you contend BP's conduct constituted negligence, as that term is used in your crossclaims against BP.

## DEFINITIONS

1.      "You," "your," and "yours" shall mean Anadarko and/or any corporate affiliate, including without limitation any of its present or former agents or representatives, or anyone acting or purporting to act for or on Anadarko's behalf for any purpose whatsoever, including operators of wells in which any Anadarko-affiliated entity holds any percentage of any kind of ownership.

2.      "Describe," when used in a question about wells, includes providing the name, location and dates of drilling of the pertinent wells.

3.      "Procedure" includes any oral or written guideline, procedure, requirements, protocol, standard, best practice, standard practice, system or recommendation.

4.      "Including" or "includes" means "including but not limited to" or "including without limitation."

5.      "Relating to" or "related to," when referring to any given subject matter, means constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

6.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

7.      "Communication" or "communicated" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer

linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

8.      "Identify" or "identity" when used in reference to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and document control number(s); (d) an oral communication or statement, shall mean to state the date, place, each person making or listening to such oral communication or statement, all other persons present at the time, a summary of the substance, and the identities of each document referring or relating to, in whole or in part, such oral communication or oral statement; (e) a piece of equipment or other tangible object besides a document, shall mean to provide sufficient information to identify that object, including any name used to identify the object, its manufacturer, the make and model of the object, its location, and any serial numbers or other identifying numbers; and (f) an act, shall mean to state the substance of the event or events constituting such act, the date, the duration, the location, the persons attending or participating, and each document referring or relating to such act

9.      "Macondo Well" means the MC252 #1 Well, the exploratory well that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11

10.      "BOP" means, unless otherwise specified, the entire subsea blowout preventer system, including, but not limited to, the BOP stack, BOP control system, BOP operating panels, Lower Marine Riser Package ("LMRP"), all rams, all preventers, any and all connectors and connections to the BOP stack, including the choke and kill lines and MUX cables, any and all emergency systems, any and all back-up systems, the autoshear system, ROV intervention panels, the Automatic Mode Function deadman system, and any other components to the BOP.

11.      "BP" means BPXP and all of its affiliates and subsidiaries.

12.      "Blowout," whether or not capitalized, means an uncontrolled release of hydrocarbons from a well.

13.      "Kick," whether or not capitalized, means the intrusion or influx of formation fluids (such as hydrocarbons or water) into a wellbore.

14.      "Well control event," whether or not capitalized, means any kick, lost circulation event, or blowout.

## INSTRUCTIONS

1.      Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing and you must revise or supplement your responses whenever new or additional responsive information becomes known.

2.      Each interrogatory solicits all information that is known to you or in your possession, custody or control, and all information available to you from your attorneys, agents, investigators, experts, employees, insurers and representatives.

3.      Each interrogatory is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular interrogatory.

12

4.      These interrogatories are to be answered in detail.  If you cannot answer any interrogatory in full, you should answer it to the extent possible and explain your inability to answer any further.

5.      If you claim that the language of any interrogatory is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.  Regardless of any vagueness or ambiguity you claim, you are to answer the interrogatory to the best of your ability.

6.      When asked for a date, an exact date should be given if known.  If an exact date is not known, an approximate date should be given and identified as such.

7.      If any of the answers to these interrogatories are derived from papers, records or documents in your possession or under your control, please attach a copy thereof to your answers or, in the alternative, please describe each of the documents with specificity and state when and where they will be available to BPXP's counsel for inspection and copying.

8.      If you contend that information responsive to any interrogatory is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

Dated:  July 1, 2011

Respectfully submitted,

/s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

and

Don K. Haycraft (Bar # 14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:     (504) 581-7979
Facsimile:      (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:     (202) 662-5985

*Attorneys for BP Exploration & Production
Inc. and BP America Production Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 1st day of July, 2011.

/s/ J. Andrew Langan, P.C.

# EXHIBIT C

## Langan, Andrew

| | |
|---|---|
| **From:** | Sally_Shushan@laed.uscourts.gov |
| **Sent:** | Monday, August 22, 2011 8:35 AM |
| **To:** | Langan, Andrew |
| **Cc:** | carl.solomont@bingham.com; CMaze@ago.state.al.us; James Roy; liaison2179@liskow.com; Mike.Underhill@usdoj.gov; mike_o'keefe@laed.uscourts.gov; sherman@hhkc.com |
| **Subject:** | Re: MDL 2179 -- Motion to Compel deadlines |


Thanks Andy.  Consider the extension granted,


_____

Sally Shushan
504 589 7620 work
504 881 9861 cell



| | |
|---|---|
| From: | "Andrew Langan" <alangan@kirkland.com> |
| To: | Sally_Shushan@laed.uscourts.gov |
| Cc: | mike_o'keefe@laed.uscourts.gov, "Corey Maze" <CMaze@ago.state.al.us>, "michael underhill" <Mike.Underhill@usdoj.gov>, James Roy <JIMR@wrightroy.com>, "Herman, S" <sherman@hhkc.com>, liaison2179@liskow.com, carl.solomont@bingham.com |
| Date: | 08/22/2011 08:34 AM |
| Subject: | MDL 2179 -- Motion to Compel deadlines |

_____


Dear Judge Shushan,

BP and Anadarko continue to work cooperatively toward resolving phase 1 discovery disputes. There are now only a handful of issues still under discussion. We would like to request an extension to Thursday, August 25, for filing of motions to compel, with the hope being that the remaining issues can be resolved within that time. We have spoken with Anadarko's counsel, and they support this request.

Respectfully submitted,

Andy


**J. Andrew Langan, P.C.| Kirkland & Ellis LLP**
300 NORTH LASALLE STREET
CHICAGO, IL 60654-3406
(312) 862-2064 **DIRECT** | (312) 862-2200 **FAX**
andrew.langan@kirkland.com

****************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this

1

communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
***********************************************************

# EXHIBIT D



Sep 2 2011
4:10PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | Oil Spill by the Oil Rig | * MDL No. 2179 |
| | "*Deepwater Horizon*" in the Gulf of | * |
| | Mexico, on April 20, 2010 | * SECTION: J |
| | | * |
| Applies to: | *All Cases*. | * JUDGE BARBIER |
| | | * MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SUPPLEMENTAL OBJECTIONS AND RESPONSES OF DEFENDANT ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP TO THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION

### <u>GENERAL OBJECTIONS AND RESERVATION OF RIGHTS</u>

1. Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, submit the following supplemental responses and objections to the Objections and Responses of Anadarko to the BP Parties' First Requests for Production (collectively "Requests"), served on Responding Party on April 29, 2011. Responding Party objects to the BP Parties' Requests, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court. Responding Party will respond to the Requests in accordance with such Rules and Orders.

2. Pursuant to the stipulation set forth in the BP Parties' Requests, Responding Party was under no obligation to respond to these Requests unless and until the Court denied the BP Parties' Motion to Stay. Nonetheless, Responding Party provided the its initial objections and responses on July 1, 2011.

3. Responding Party objects to the Requests to the extent they seek documents or

information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

4.      Responding Party objects to the Requests to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Requests.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

5.      Responding Party objects to the Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

6.      Responding Party objects to the Requests to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restriction imposed in

2

connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

7.      Responding Party objects to the Requests to the extent they purport to require Responding Party to set forth or state legal conclusions or its contentions or positions applicable to specific legal or factual issues.

8.      Responding Party objects to the Requests to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

9.      Responding Party objects to the Requests to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

10.     Responding Party objects to the Requests to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

11.     Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

12.     Responding Party objects to the Requests to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.  Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to

3

be produced in a different format.

13.     Responding Party objects to the definition of "You," "Your," and "Yours" as overly broad and as improperly seeking party discovery from non-party entities.  Responding Party will respond to the Requests only on behalf of Responding Party.

14.     The documents and information provided in Responding Party's responses to the Requests reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

15.     In responding to the Requests, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Request on any ground including, but not limited to, the ground that the document, information or Request is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Request should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Request.

16.     Responding Party reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

17.     Except as noted hereinafter, Responding Party objects to the Requests as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.  Responding Party objects to the

4

Requests to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

18.     Responding Party objects to the Requests as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.  Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

19.     Responding Party objects to the Requests to the extent they seek information and/or documents relating to Insurance Policies other than Insurance Policies issued to Responding Party.  Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information and/or documents should be obtained from other defendant parties.

20.     Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

21.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or request is made without waiver of, and subject to, these General Objections.

A/74496330.1

<u>SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES</u>

**<u>REQUEST FOR PRODUCTION NO. 34:</u>**

All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 34:</u>**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any,

6

that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a cement bond log that apply generally to all deepwater wells in the Gulf of Mexico ("GOM").

**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to or referring to the design and use of spacers in the deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "spacers," "deepwater wells," "internal or external standards,"

7

"procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the design and use of spacers that apply generally to all deepwater wells in the GOM.

## REQUEST FOR PRODUCTION NO. 36:

All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

8

evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding temporary abandonment procedures that apply generally to all deepwater wells in the GOM.

## REQUEST FOR PRODUCTION NO. 37:

All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

A/74496330.1

written company policies, procedures, or standards regarding negative pressure tests that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

11

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding positive pressure tests that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its

12

operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "cementing procedures," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies or standards regarding cementing procedures that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 40:**

All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

13

applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of centralizers that apply generally to all deepwater wells in the GOM.

## REQUEST FOR PRODUCTION NO. 41:

All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf

14

of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding tubular or casing design that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 42:**

All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the

16

extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of long string production casing that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-

17

operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a liner with a tie back casing string that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 44:**

All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Responding Party incorporates its General Objections.  Responding Party further objects

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a lockdown sleeve that apply generally to all deepwater wells in the GOM.

19

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "gas flow potential," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the

20

discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding gas flow potential that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 46:**

All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries,"

and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding drilling fluids that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the

*Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "standard practices," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the transfer of drilling fluids off-rig that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Responding Party incorporates its General Objections.  Responding Party further objects

23

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 48:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding responding to well control events that apply generally to all deepwater wells in the GOM.

24

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "fluid loss events," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the

25

discovery permitted by Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding fluid loss events that apply generally to all deepwater wells in the GOM.

## REQUEST FOR PRODUCTION NO. 50:

All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal and external standards, procedures, policies, best practices, guidelines, directions, or instructions.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 50:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "informational communications," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and

26

"instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding converting float collars that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the

*Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of foamed cement slurry that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

29

written company policies, procedures, or standards regarding bottoms up circulation that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 55:**

All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined phrase "safety procedures applicable to any deepwater well" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to deepwater drilling in the Gulf of Mexico, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 56:**

All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this

31

Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "well control events," "policies" and "procedures" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding well control incidents that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 57:**

All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to the term "Anadarko Defendants" as overly broad, vague, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this

32

Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "potential financial benefits" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected Pre-Incident responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 58:**

All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party further objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation

33

and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "potential costs" is vague and ambiguous.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected Pre-Incident responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

## REQUEST FOR PRODUCTION NO. 62:

All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party. Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties. Responding Party also

34

objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "claim" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  Responding Party does not have any  non-privileged or otherwise non-protected documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 64:**

All documents provided to or received from any insurer including the insurers for the Anadarko Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as a whole and to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party.  Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the

A/74496330.1

discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 73:**

All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined terms "representative" and "financial analyst" are vague and ambiguous.  Responding Party also

36

objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 74:**

All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "any other financial analyst" is vague and ambiguous.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as a part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request to the extent it seeks documents available in the public domain. Responding Party also objects to this Request because the undefined terms "statements" and "investigation" are vague and ambiguous.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 83:**

All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts or reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request because the undefined term "investigation" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 90:**

All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to the defined term "you" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  All non-privileged or otherwise non-protected documents, concerning Casualty, Spill and Limitations issues, as set forth in Pretrial Order No. 11, in Responding Party's possession, custody or control have already been produced

40

in this litigation or will be produced.  In addition, if Responding Party identifies any documents that it intends to use at trial, that have not already been produced by Responding Party or any other party in the litigation, Responding Party will produce such documents in accordance with the rules and procedures set forth by the Federal Rules of Civil Procedure and the court.

Dated:  September 2, 2011                              Respectfully submitted,


    /s/ Ky E. Kirby

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
Michael B. Wigmore
Michael.Wigmore@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112

**ATTORNEYS FOR ANADARKO
PETROLEUM CORPORATION AND
ANADARKO E&P COMPANY LP**

41

A/74496330.1

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing First Supplemental Objections and Responses of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to BP's First Set of Requests for Production dated April 29, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 2nd day of September, 2011.


_____/s/_Ky E. Kirby_____

A/74496330.1

# EXHIBIT E



LEXISNEXIS® FILE & SERVE
39641880
E-SERVICE
Sep 2 2011
4:10PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig | * | MDL No. 2179 |
| | *"Deepwater Horizon"* in the Gulf of | * | |
| | Mexico, on April 20, 2010 | * | SECTION: J |
| | | * | |
| Applies to: *All Cases*. | | * | JUDGE BARBIER |
| | | * | MAGISTRATE SHUSHAN |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   *

### SUPPLEMENTAL OBJECTIONS AND RESPONSES OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP TO THE BP PARTIES' FIRST SET OF INTERROGATORIES

### <u>GENERAL OBJECTIONS AND RESERVATION OF RIGHTS</u>

1.      Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, submit the following supplemental responses and objections to the Objections and Responses of Anadarko to the BP Parties' Corrected First Set of Interrogatories[1] ("Interrogatories"), served on Responding Party on July 2, 2011. Responding Party objects to the BP Parties' Interrogatories, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court. Responding Party will respond to the Interrogatories in accordance with such Rules and Orders.

2.      Pursuant to the BP Parties' stipulation, set forth in the Interrogatories, Responding Party was under no obligation to respond to Interrogatory Nos. 41-44, unless and until the Court denied the BP Parties' Motion to Stay. The BP Parties' Motion to Stay was granted on July 15,

---

[1] The BP Parties' First Set of Interrogatories was served on July 1, 2011. A corrected version, indicating that Interrogatory Nos. 41-44 would not need to be answered unless and until BP's Motion to Stay was denied, was then served on July 2, 2011.

A/74492225.1

2011.  Therefore, Responding Party will not respond to Interrogatory Nos. 41-44.

3.      Responding Party objects to the Interrogatories to the extent they seek documents or information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.   Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

4.      Responding Party objects to the Interrogatories to the extent they relate to or concern Responding Party's cross-claims against the BP Parties, as those claims will be addressed in arbitration at a later date pursuant to the Court's July 15, 2011 Order.

5.      Responding Party objects to the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege or protection.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Interrogatories.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

6.      Responding Party objects to the Interrogatories to the extent they seek the

disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

7.      Responding Party objects to the Interrogatories to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

8.      Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to set forth or state legal conclusions or positions applicable to specific legal or factual issues.

9.      Responding Party objects to the Interrogatories to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

10.     Responding Party objects to the Interrogatories to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

11.     Responding Party objects to the Interrogatories to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3

12.     Responding Party objects to the Interrogatories to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

13.     Responding Party objects to the Interrogatories to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.   Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to be produced in a different format.

14.     Responding Party objects to the definition of "you," "your," and "yours" as overly broad and as improperly seeking party discovery from non-party entities.  Responding Party will respond to the Interrogatories only on behalf of Responding Party.

15.     The documents and information provided in Responding Party's responses to the Interrogatories reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

16.     In responding to the Interrogatories, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Interrogatory on any ground including, but not limited to, the ground that the document, information or Interrogatory is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Interrogatory should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Interrogatory.

17.     Responding Party reserves its right to supplement its responses as may be

appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

18.     Except as noted hereinafter, Responding Party objects to the Interrogatories as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.

19.     Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

20.     Responding Party objects to the Interrogatories as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.  Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

21.     Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

22.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or interrogatory

5

is made without waiver of, and subject to, these General Objections.

## SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1:

Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the Deepwater Horizon, Deepwater Horizon Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

### RESPONSE TO INTERROGATORY NO. 1:

Responding Party incorporates its General Objections. Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. As a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations has no bearing on the current litigation. Responding Party also objects because the undefined terms "participated" and "involved with" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

6

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party directs the BP Parties to the non-privileged or otherwise non-protected responsive documents, if any,  that will be produced in response to this request.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  Responding Party directs the BP Parties to the minutes of the Board of Directors of Anadarko Petroleum Corporation ("APC") that APC has produced to date.

**INTERROGATORY NO. 2:**

Please describe in detail your well control or well shut-in procedures, including any ways in which those procedures have changed since April 20, 2010, and ways in which you contend they differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a

7

result, information relating to Responding Party's internal activities or its operations and procedures has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects because the undefined phrases "well control," "well shut-in," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding well control or well shut-in that apply generally to all deepwater wells in the Gulf of Mexico ("GOM").  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 5:**

Please describe in detail your temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including a detailed description of each prescribed, suggested or optional step, including but not limited to the depth of any cement plug utilized, the timing and method of installation of lock-down sleeves, and running the lead impression tool, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells" and "prescribed, suggested, or optional step" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding temporary abandonment that apply

9

generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 8:**

Please describe in detail your negative pressure test procedure for deepwater wells in the Gulf of Mexico, including the steps in negative pressure testing communicated to your rig personnel and all criteria for gauging whether a negative pressure test has succeeded or failed, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells," "rig personnel," and "criteria for gauging" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding negative pressure testing that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 11:**

Please describe in detail your policies with respect to running cement bond logs for deepwater wells in the Gulf of Mexico, including in your answer your policies regarding when a cement bond log is required, when a cement bond log is recommended, and when a cement bond log is optional, and ways in which you contend that your policies differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory

11

to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects because the undefined terms "policies" and "deepwater wells," are vague and ambiguous.  Responding Party also objects to this Interrogatory because the undefined phrase "was done on the Macondo Well" is vague and ambiguous.  Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11</u>:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards for running cement bond logs that apply generally to all deepwater wells in the GOM. When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

12

**INTERROGATORY NO. 13:**

Please describe in detail all procedures related to cementing your deepwater wells in the Gulf of Mexico, including any procedures related to the use of nitrified foam cement, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects to this Interrogatory because the undefined phrases "cementing your deepwater wells" and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

13

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding cementing that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 21:**

Please describe in detail your policies and procedures regarding use of the diverter system on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 21:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's*

14

operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater drilling rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding use of the diverter system that apply generally to all deepwater wells in the GOM.   When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

## INTERROGATORY NO. 22:

Please describe in detail your policies and procedures regarding use of the Emergency Disconnect System (EDS) on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some

15

combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 22:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater drillings rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

16

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding use of the EDS that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 23:**

Please describe in detail your policies and procedures related to changes or substitutions of personnel on board MODUs or otherwise involved in deepwater wells in the Gulf of Mexico, including but not limited to temporary personnel changes or substitutions of well site leaders, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding

17

Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects because the undefined terms/phrases "policies," "changes or substitutions of personnel," "otherwise involved in deepwater wells," "temporary personnel changes or substitutions," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards related to changes or substitutions of personnel on board MODUs that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO.25:**

Please describe in detail your policies and procedures related to training of personnel on board MODUs or involved in deepwater wells in the Gulf of Mexico, including ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 25:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "involved in deepwater wells," "training of personnel," "policies," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

19

written company policies, procedures, or standards related to training of personnel on board MODUs that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 26:**

Please describe in detail your policies and procedures relating to monitoring well conditions, including duties of well site leaders, mudloggers, rig personnel, or any other person with the ability to monitor well conditions, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 26:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

20

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "policies," "monitoring well conditions," "duties," "rig personnel," "any other person with the ability to monitor well conditions," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 26:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to monitoring well conditions that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 28:**

Please describe in detail your policies and procedures relating to the use of centralizers during cement jobs for your deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 28:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "cement jobs," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to the use of centralizers during cement jobs that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 29:**

Please describe in detail your policies and procedures relating to mudlogging of deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ

22

from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 29:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

23

written company policies, procedures, or standards relating to mudlogging of deepwater wells that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 30:**

Please describe in detail your policies and procedures relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job in deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 30:**

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding

24

Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "policies," "drilling operations," "cement job," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 32:**

Please describe in detail your procedures to ensure that you would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the rigs utilized in your drilling operations in the Gulf of Mexico, including the BOPs on such rigs, including in your answer the owner of the rig(s) to which such procedure has been applied, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

A/74492225.1

**RESPONSE TO INTERROGATORY NO. 32:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other rigs in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because the undefined terms/phrases "otherwise made aware of," "maintenance," "modifications," "malfunctions," "rigs utilized," "drilling operations," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

written company policies, procedures, or standards procedures to ensure it is notified or made

aware of any maintenance on, modifications to, or malfunctions with any part of the rigs utilized

in Responding Party's drilling operations that apply generally to all deepwater wells in the

GOM. When engaging in deepwater drilling activities, Responding Party follows applicable

industry standards, regulations and procedures as the facts and circumstances warrant.

Dated:  September 2, 2011                                  Respectfully submitted,


      /s/ Ky E. Kirby

Ky E. Kirby
Ky.Kirby@bingham.com
Warren Anthony Fitch
Tony.Fitch@bingham.com
Michael B. Wigmore
Michael.Wigmore@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
Jim.Dragna@bingham.com
BINGHAM MCCUTCHEN LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Deborah D. Kuchler (La. Bar No. 17013)
Janika Polk (La. Bar No. 27608)
Robert Guidry (La. Bar No. 28064)
KUCHLER POLK SCHELL
WEINER & RICHESON, LLC
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
**ATTORNEYS FOR ANADARKO
PETROLEUM CORPORATION AND
ANADARKO E&P COMPANY LP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Supplemental Objections and Responses of Anadarko to BP's First Set of Interrogatories dated July 2, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 2nd day of September, 2011.


_____/s/  Ky E. Kirby_____

28