# EXHIBIT A



Sep 2 2011
4:10PM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  **Oil Spill by the Oil Rig** *"Deepwater Horizon"* **in the Gulf of Mexico, on April 20, 2010** | *  **MDL No. 2179** <br> * <br> *  **SECTION:  J** <br> * |
| **Applies to:** *All Cases.* | *  **JUDGE BARBIER** <br> *  **MAGISTRATE SHUSHAN** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SUPPLEMENTAL OBJECTIONS AND RESPONSES OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP TO THE BP PARTIES' FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

1.      Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, submit the following supplemental responses and objections to the Objections and Responses of Anadarko to the BP Parties' Corrected First Set of Interrogatories[1] ("Interrogatories"), served on Responding Party on July 2, 2011. Responding Party objects to the BP Parties' Interrogatories, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court. Responding Party will respond to the Interrogatories in accordance with such Rules and Orders.

2.      Pursuant to the BP Parties' stipulation, set forth in the Interrogatories, Responding Party was under no obligation to respond to Interrogatory Nos. 41-44, unless and until the Court denied the BP Parties' Motion to Stay.  The BP Parties' Motion to Stay was granted on July 15,

---

[1] The BP Parties' First Set of Interrogatories was served on July 1, 2011.  A corrected version, indicating that Interrogatory Nos. 41-44 would not need to be answered unless and until BP's Motion to Stay was denied, was then served on July 2, 2011.

A/74492225.1

2011.  Therefore, Responding Party will not respond to Interrogatory Nos. 41-44.

      3.    Responding Party objects to the Interrogatories to the extent they seek documents or information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

      4.    Responding Party objects to the Interrogatories to the extent they relate to or concern Responding Party's cross-claims against the BP Parties, as those claims will be addressed in arbitration at a later date pursuant to the Court's July 15, 2011 Order.

      5.    Responding Party objects to the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege or protection.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Interrogatories.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

      6.    Responding Party objects to the Interrogatories to the extent they seek the

2

A/74492225.1

disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

7.     Responding Party objects to the Interrogatories to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

8.     Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to set forth or state legal conclusions or positions applicable to specific legal or factual issues.

9.     Responding Party objects to the Interrogatories to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

10.     Responding Party objects to the Interrogatories to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

11.     Responding Party objects to the Interrogatories to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

12.     Responding Party objects to the Interrogatories to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

13.     Responding Party objects to the Interrogatories to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.   Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to be produced in a different format.

14.     Responding Party objects to the definition of "you," "your," and "yours" as overly broad and as improperly seeking party discovery from non-party entities.   Responding Party will respond to the Interrogatories only on behalf of Responding Party.

15.     The documents and information provided in Responding Party's responses to the Interrogatories reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

16.     In responding to the Interrogatories, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Interrogatory on any ground including, but not limited to, the ground that the document, information or Interrogatory is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Interrogatory should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Interrogatory.

17.     Responding Party reserves its right to supplement its responses as may be

4

appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

18.     Except as noted hereinafter, Responding Party objects to the Interrogatories as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.

19.     Responding Party objects to the Interrogatories to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

20.     Responding Party objects to the Interrogatories as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.  Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

21.     Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

22.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or interrogatory

5

is made without waiver of, and subject to, these General Objections.

## SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

Identify all meetings or decisions of the board of directors of Anadarko and all related entities relating to, mentioning, or discussing the Deepwater Horizon, Deepwater Horizon Incident, Macondo Well, Oil Spill, Oil Spill Response, or any Anadarko internal investigation into the incident; identify all minutes of the meetings of the boards of directors, corporate minutes, records of any decisions made by the boards of directors, or other documents relating to such meetings or decisions; and identify all persons who participated in or were involved with such meetings or decisions.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   As a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations has no bearing on the current litigation.  Responding Party also objects because the undefined terms "participated" and "involved with" are vague and ambiguous.   Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

6

Subject to and without waiving these objections, Responding Party responds as follows: Responding Party directs the BP Parties to the non-privileged or otherwise non-protected responsive documents, if any,  that will be produced in response to this request.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  Responding Party directs the BP Parties to the minutes of the Board of Directors of Anadarko Petroleum Corporation ("APC") that APC has produced to date.

## INTERROGATORY NO. 2:

Please describe in detail your well control or well shut-in procedures, including any ways in which those procedures have changed since April 20, 2010, and ways in which you contend they differ from what you allege was done on the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 2:

Responding Party incorporates its General Objections.    Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a

7

result, information relating to Responding Party's internal activities or its operations and procedures has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory to the extent it seeks premature expert discovery. Responding Party also objects because the undefined phrases "well control," "well shut-in," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding well control or well shut-in that apply generally to all deepwater wells in the Gulf of Mexico ("GOM"). When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

## INTERROGATORY NO. 5:

Please describe in detail your temporary abandonment procedures for deepwater wells in the Gulf of Mexico, including a detailed description of each prescribed, suggested or optional step, including but not limited to the depth of any cement plug utilized, the timing and method of installation of lock-down sleeves, and running the lead impression tool, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

8

A/74492225.1

## RESPONSE TO INTERROGATORY NO. 5:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined phrases "deepwater wells" and "prescribed, suggested, or optional step" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding temporary abandonment that apply

9

generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 8**:

Please describe in detail your negative pressure test procedure for deepwater wells in the Gulf of Mexico, including the steps in negative pressure testing communicated to your rig personnel and all criteria for gauging whether a negative pressure test has succeeded or failed, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 8**:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

10

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Interrogatory because the undefined terms "deepwater wells," "rig personnel," and "criteria for gauging" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding negative pressure testing that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 11:**

Please describe in detail your policies with respect to running cement bond logs for deepwater wells in the Gulf of Mexico, including in your answer your policies regarding when a cement bond log is required, when a cement bond log is recommended, and when a cement bond log is optional, and ways in which you contend that your policies differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory

11

A/74492225.1

to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms "policies" and "deepwater wells," are vague and ambiguous.    Responding Party also objects to this Interrogatory because the undefined phrase "was done on the Macondo Well" is vague and ambiguous.   Responding Party also objects to this Interrogatory because it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards for running cement bond logs that apply generally to all deepwater wells in the GOM. When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

A/74492225.1

**INTERROGATORY NO. 13:**

Please describe in detail all procedures related to cementing your deepwater wells in the Gulf of Mexico, including any procedures related to the use of nitrified foam cement, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates its General Objections. Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party. Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because the undefined phrases "cementing your deepwater wells" and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

A/74492225.1

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding cementing that apply generally to all deepwater wells in the GOM. When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 21:**

Please describe in detail your policies and procedures regarding use of the diverter system on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 21:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's*

14

operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater drilling rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding use of the diverter system that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 22:**

Please describe in detail your policies and procedures regarding use of the Emergency Disconnect System (EDS) on your owned, contracted, or leased deepwater drilling rigs in the Gulf of Mexico, including in your answer the effective dates of the policy or procedure and whether it applies to rigs that you own, those that you contract, those that you lease, or some

A/74492225.1

combination, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

## RESPONSE TO INTERROGATORY NO. 22:

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater drillings rigs in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "deepwater drilling rigs," "effective dates," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding use of the EDS that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 23:**

Please describe in detail your policies and procedures related to changes or substitutions of personnel on board MODUs or otherwise involved in deepwater wells in the Gulf of Mexico, including but not limited to temporary personnel changes or substitutions of well site leaders, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding

17

Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation. Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects because the undefined terms/phrases "policies," "changes or substitutions of personnel," "otherwise involved in deepwater wells," "temporary personnel changes or substitutions," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards related to changes or substitutions of personnel on board MODUs that apply generally to all deepwater wells in the GOM. When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO.25:**

Please describe in detail your policies and procedures related to training of personnel on board MODUs or involved in deepwater wells in the Gulf of Mexico, including ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

18

**RESPONSE TO INTERROGATORY NO. 25:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "involved in deepwater wells," "training of personnel," "policies," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

19

written company policies, procedures, or standards related to training of personnel on board MODUs that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 26:**

Please describe in detail your policies and procedures relating to monitoring well conditions, including duties of well site leaders, mudloggers, rig personnel, or any other person with the ability to monitor well conditions, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 26:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound,

beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "monitoring well conditions," "duties," "rig personnel," "any other person with the ability to monitor well conditions," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 26:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to monitoring well conditions that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 28:**

Please describe in detail your policies and procedures relating to the use of centralizers during cement jobs for your deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 28:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and

21

Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "policies," "cement jobs," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to the use of centralizers during cement jobs that apply generally to all deepwater wells in the GOM.   When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 29:**

Please describe in detail your policies and procedures relating to mudlogging of deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ

22

from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 29:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.   In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.   As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.   Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.    Responding Party also objects because the undefined terms/phrases "policies," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

23

written company policies, procedures, or standards relating to mudlogging of deepwater wells that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

**INTERROGATORY NO. 30:**

Please describe in detail your policies and procedures relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job in deepwater wells in the Gulf of Mexico, and ways in which you contend that your policies and procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 30:**

Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.  Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other deepwater wells in the Gulf of Mexico has no bearing on the current litigation.  Responding

24

A/74492225.1

Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.   Responding Party also objects because the undefined terms/phrases "policies," "drilling operations," "cement job," "deepwater wells," and "was done on the Macondo Well" are vague and ambiguous.  Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards relating to spotting heavy mud (more than 1.5 ppg heavier than the drilling fluid utilized in drilling operations) in the rat hole before beginning a cement job that apply generally to all deepwater wells in the GOM.  When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

## INTERROGATORY NO. 32:

Please describe in detail your procedures to ensure that you would be notified or otherwise made aware of any maintenance on, modifications to, or malfunctions with any part of the rigs utilized in your drilling operations in the Gulf of Mexico, including the BOPs on such rigs, including in your answer the owner of the rig(s) to which such procedure has been applied, and ways in which you contend that your procedures differ from what you allege was done on the Macondo Well.

**RESPONSE TO INTERROGATORY NO. 32:**

      Responding Party incorporates its General Objections.   Responding Party further objects to this Interrogatory to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to this Interrogatory to the extent it seeks information related to the pending arbitration between the BP Parties and Responding Party.   Responding Party objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations at other rigs in the Gulf of Mexico has no bearing on the current litigation.  Responding Party also objects to the defined terms "you" and "your" as overly broad, confusing, compound, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Interrogatory because the undefined terms/phrases "otherwise made aware of," "maintenance," "modifications," "malfunctions," "rigs utilized," "drilling operations," and "was done on the Macondo Well" are vague and ambiguous. Responding Party also objects to this Interrogatory to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

      Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

written company policies, procedures, or standards procedures to ensure it is notified or made aware of any maintenance on, modifications to, or malfunctions with any part of the rigs utilized in Responding Party's drilling operations that apply generally to all deepwater wells in the GOM. When engaging in deepwater drilling activities, Responding Party follows applicable industry standards, regulations and procedures as the facts and circumstances warrant.

Dated:  September 2, 2011                          Respectfully submitted,


                                          /s/ Ky E. Kirby

                                          Ky E. Kirby
                                          Ky.Kirby@bingham.com
                                          Warren Anthony Fitch
                                          Tony.Fitch@bingham.com
                                          Michael B. Wigmore
                                          Michael.Wigmore@bingham.com
                                          BINGHAM MCCUTCHEN LLP
                                          2020 K Street, NW
                                          Washington, DC 20006-1806
                                          Telephone (202) 373-6000
                                          Facsimile (202) 373-6001

                                          James J. Dragna
                                          Jim.Dragna@bingham.com
                                          BINGHAM MCCUTCHEN LLP
                                          355 South Grand Avenue
                                          Suite 4400
                                          Los Angeles, California 90071-3106
                                          Telephone (213) 680-6436
                                          Facsimile (213) 680-8636

                                          Deborah D. Kuchler (La. Bar No. 17013)
                                          Janika Polk (La. Bar No. 27608)
                                          Robert Guidry (La. Bar No. 28064)
                                          KUCHLER POLK SCHELL
                                          WEINER & RICHESON, LLC
                                          1615 Poydras Street, Suite 1300
                                          New Orleans, LA  70112
                                          **ATTORNEYS FOR ANADARKO
                                          PETROLEUM CORPORATION AND
                                          ANADARKO E&P COMPANY LP**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Supplemental Objections and Responses of Anadarko to BP's First Set of Interrogatories dated July 2, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 2nd day of September, 2011.

/s/  Ky E. Kirby

A/74492225.1

# EXHIBIT B



Sep 2 2011
4:10PM

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig *"Deepwater Horizon"* in the Gulf of Mexico, on April 20, 2010 | \* \* \* \* | MDL No. 2179 SECTION: J |
| Applies to: *All Cases.* | | \* \* | JUDGE BARBIER MAGISTRATE SHUSHAN |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### SUPPLEMENTAL OBJECTIONS AND RESPONSES OF DEFENDANT ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP TO THE BP PARTIES' FIRST REQUESTS FOR PRODUCTION

### <u>GENERAL OBJECTIONS AND RESERVATION OF RIGHTS</u>

1.        Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Responding Party"), through undersigned counsel, submit the following supplemental responses and objections to the Objections and Responses of Anadarko to the BP Parties' First Requests for Production (collectively "Requests"), served on Responding Party on April 29, 2011. Responding Party objects to the BP Parties' Requests, including the accompanying definitions and instructions, insofar as they conflict with, or purport to impose obligations beyond those of the Federal Rules of Civil Procedure or the Rules and Orders of this Court.  Responding Party will respond to the Requests in accordance with such Rules and Orders.

2.        Pursuant to the stipulation set forth in the BP Parties' Requests, Responding Party was under no obligation to respond to these Requests unless and until the Court denied the BP Parties' Motion to Stay.  Nonetheless, Responding Party provided the its initial objections and responses on July 1, 2011.

3.        Responding Party objects to the Requests to the extent they seek documents or

information outside the scope of Pretrial Order No. 11, which provides that Phase I Discovery "will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig.  Discovery will also include discovery of issues relating to the cause or causes and extent of the associated spill, and the cause or causes of damages alleged to have resulted therefrom."

4.      Responding Party objects to the Requests to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege.  Responding Party will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order No. 14 and any other pertinent Orders of the Court or agreements among counsel.  Responding Party does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Requests.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive Responding Party's right to retract such disclosure.

5.      Responding Party objects to the Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

6.      Responding Party objects to the Requests to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restriction imposed in

2

connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

7.     Responding Party objects to the Requests to the extent they purport to require Responding Party to set forth or state legal conclusions or its contentions or positions applicable to specific legal or factual issues.

8.     Responding Party objects to the Requests to the extent they seek documents or information that are not in Responding Party's possession, custody or control, or are already in BP's possession, custody or control as the operator of the Macondo Well and the *Deepwater Horizon*.

9.     Responding Party objects to the Requests to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

10.     Responding Party objects to the Requests to the extent that they are overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

11.     Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

12.     Responding Party objects to the Requests to the extent that that they may purport to require Responding Party to produce documents in formats different from those formats specified for various categories of documents in Pretrial Order No. 16.  Responding Party will produce documents in .tif format unless such documents are required by Pretrial Order No. 16 to

3

be produced in a different format.

13.     Responding Party objects to the definition of "You," "Your," and "Yours" as overly broad and as improperly seeking party discovery from non-party entities.  Responding Party will respond to the Requests only on behalf of Responding Party.

14.     The documents and information provided in Responding Party's responses to the Requests reflect Responding Party's present knowledge, information and belief, and may be subject to change or modification based on Responding Party's further discovery, or on facts or circumstances which may subsequently come to Responding Party's attention.

15.     In responding to the Requests, Responding Party expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Request on any ground including, but not limited to, the ground that the document, information or Request is irrelevant and immaterial to the issues in this action. Nothing in Responding Party's responses to any Request should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Request.

16.     Responding Party reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that Responding Party may subsequently obtain.

17.     Except as noted hereinafter, Responding Party objects to the Requests as a whole to the extent that they seek documents that came into the possession, custody, or control of Responding Party after April 20, 2010, the date of the Incident.  Responding Party objects to the

4

Requests to the extent they purport to require Responding Party to re-produce the document productions of other parties that have been made in these litigations either pre- or post-consolidation, or in connection with investigations such as that being conducted by the *Deepwater Horizon* Joint Investigation Team ("MBI").

18.    Responding Party objects to the Requests as a whole to the extent they seek information or documents unrelated to the Macondo Prospect, the Macondo Well known as MC 252 # 1 Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.   Responding Party will only provide information and/or documents relating to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon*'s operations at the Macondo Well, or the Incident.

19.    Responding Party objects to the Requests to the extent they seek information and/or documents relating to Insurance Policies other than Insurance Policies issued to Responding Party.   Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information and/or documents should be obtained from other defendant parties.

20.    Responding Party objects to the extent BP seeks information or documents not in the possession of Responding Party, including, but not limited to, information or documents in the possession of outside counsel, consultants, or vendors or to the extent BP seeks to require Responding Party to create documents not already in existence.

21.    These General Objections are incorporated by reference into each of the following responses, and any objection or response by Responding Party to any instruction or request is made without waiver of, and subject to, these General Objections.

A/74496330.1

## SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to or referring to the use of a cement bond log in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any,

6

that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a cement bond log that apply generally to all deepwater wells in the Gulf of Mexico ("GOM").

**REQUEST FOR PRODUCTION NO. 35:**

All documents relating to or referring to the design and use of spacers in the deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "spacers," "deepwater wells," "internal or external standards,"

7

"procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the design and use of spacers that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 36:**

All documents relating to or referring to temporary abandonment procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

8

evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding temporary abandonment procedures that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 37:**

All documents relating to or referring to negative pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

9

A/74496330.1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

10

A/74496330.1

written company policies, procedures, or standards regarding negative pressure tests that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to or referring to positive pressure tests in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

11

A/74496330.1

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding positive pressure tests that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to or referring to cementing procedures in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its

12

operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "cementing procedures," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies or standards regarding cementing procedures that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 40:**

All documents relating to or referring to the use of centralizers in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other

13

A/74496330.1

applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of centralizers that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 41:**

All documents relating to or referring to tubular or casing design in deepwater wells in the Gulf

14

of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding tubular or casing design that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 42:**

All documents relating to or referring to the use of a long string production casing in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the

16

A/74496330.1

extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of long string production casing that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to or referring to the use of a liner with a tie back casing string in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-

17

operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a liner with a tie back casing string that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 44:**

All documents relating to or referring to the use of a lock down sleeve in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries, or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Responding Party incorporates its General Objections.  Responding Party further objects

18

A/74496330.1

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of a lockdown sleeve that apply generally to all deepwater wells in the GOM.

19

A/74496330.1

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to or referring to gas flow potential in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "gas flow potential," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the

20

discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Responding Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding gas flow potential that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 46:**

All documents relating to or referring to drilling fluids in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries,"

21

and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding drilling fluids that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to or referring to the procedures or standard practices for transfer of drilling fluids off-rig in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the

22

*Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "standard practices," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 47:

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the transfer of drilling fluids off-rig that apply generally to all deepwater wells in the GOM.

### REQUEST FOR PRODUCTION NO. 48:

All documents relating to or referring to responding to well control events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 48:

Responding Party incorporates its General Objections.  Responding Party further objects

23

to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined terms "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding responding to well control events that apply generally to all deepwater wells in the GOM.

A/74496330.1

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to or referring to fluid loss events in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, instructions, reports, summaries or analyses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "fluid loss events," "deepwater wells," "internal or external standards," "procedures," "policies," "best practices," "guidelines," "directions," "instructions," "reports," "summaries," and "analyses" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the

25

discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding fluid loss events that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 50:**

All documents relating to or referring to procedures or informational communications related to converting float collars in deepwater wells in the Gulf of Mexico, including all internal and external standards, procedures, policies, best practices, guidelines, directions, or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "informational communications," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and

26

"instructions" are vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding converting float collars that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to or referring to procedures or decisionmaking criteria for the use of foamed cement slurry in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions or instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the

27

*Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding the use of foamed cement slurry that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 52:**

All documents relating to or referring to procedures or decisionmaking criteria with respect to bottoms up circulations in deepwater wells in the Gulf of Mexico, including all internal or external standards, procedures, policies, best practices, guidelines, directions, or instructions.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well. As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation. Responding Party also objects to this Request because the undefined terms "decisionmaking criteria," "procedures," "deepwater wells," "internal or external standards," "policies," "best practices," "guidelines," "directions," and "instructions" are vague and ambiguous. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal

29

written company policies, procedures, or standards regarding bottoms up circulation that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 55:**

All documents or communications relating to safety procedures applicable to any deepwater well in the Gulf of Mexico spudded in the last five years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to this Request because the undefined phrase "safety procedures applicable to any deepwater well" is vague and ambiguous.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to deepwater drilling in the Gulf of Mexico, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 56:**

All documents relating to the Anadarko Defendants' policies and procedures for addressing well control incidents, including but not limited to documents regarding the use of blow out preventers, mud gas separators, diverters as well as well control manuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  In addition, as a non-operator, Responding Party never operated or controlled any aspect of any operations at the Macondo Well.  As a result, information relating to Responding Party's internal activities or its operations is irrelevant to the current litigation.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this

31

A/74496330.1

Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined terms "well control events," "policies" and "procedures" are vague and ambiguous.

Subject to and without waiving these objections, Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party does not have formal written company policies, procedures, or standards regarding well control incidents that apply generally to all deepwater wells in the GOM.

**REQUEST FOR PRODUCTION NO. 57:**

All projections, estimates or predictions of the potential financial benefits to the Anadarko Defendants arising from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, vague, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it seeks premature expert discovery.  Responding Party also objects to this

32

Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "potential financial benefits" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected Pre-Incident responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 58:**

All projections, estimates or predictions of the potential costs to the Anadarko Defendants arising from their investment in the MC252 lease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident. Responding Party further objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation

33

A/74496330.1

and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "potential costs" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected Pre-Incident responsive documents related to the Macondo Well, if any, that have not already been produced in or otherwise made available during the course of this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 62:**

All documents or communications related to any claim made to any insurance carrier relating to the oil spill resulting from the explosion of the *Deepwater Horizon*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party. Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties. Responding Party also

34

objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11. Responding Party also objects to this Request because the undefined term "claim" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  Responding Party does not have any  non-privileged or otherwise non-protected documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 64:**

All documents provided to or received from any insurer including the insurers for the Anadarko Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as a whole and to the extent it is not limited to the Macondo Prospect, the Macondo Well, the *Deepwater Horizon's* operations at the Macondo Well, or the Incident.  Responding Party objects to producing information relating to Insurance Policies other than Insurance Policies issued to Responding Party.  Responding Party may have rights under Insurance Policies issued to other defendant parties in these actions, and any such information should be obtained from other defendant parties.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the

35

discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 73:**

All documents reviewed by any employee or representative of the Anadarko Defendants related to any communication with UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request because the undefined terms "representative" and "financial analyst" are vague and ambiguous.  Responding Party also

36

objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 74:**

All documents relating to or referring to any report issued by UBS Securities or any other financial analyst related to the Macondo Well, the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Responding Party incorporates its General Objections.  Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection.  Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.  Responding Party also objects to this Request because the undefined term "any other financial analyst" is vague and ambiguous.

37

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to any interviews of or statements made by any person who was interviewed, questioned or contacted as a part of any investigation by on or behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request to the extent it seeks documents available in the public domain. Responding Party also objects to this Request because the undefined terms "statements" and "investigation" are vague and ambiguous.

A/74496330.1

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 83:**

All documents relating to any investigation conducted or being conducted by or on behalf of the Anadarko Defendants regarding the *Deepwater Horizon* incident on April 20, 2010 or the subsequent oil spill, including but not limited to drafts or reports relating to any such investigation and all documents investigators reviewed or relied upon in the course of such investigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party further objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to the term "Anadarko Defendants" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request because the undefined term "investigation" is vague and ambiguous.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows: Responding Party will produce non-privileged or otherwise non-protected responsive documents related to the Macondo Well, if any, that have not already been produced in this litigation and that are within the scope of the discovery permitted by Pretrial Order No. 11.

**REQUEST FOR PRODUCTION NO. 90:**

All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Responding Party incorporates its General Objections. Responding Party further objects to this Request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, the common interest principle or any other applicable privilege or protection. Responding Party objects to the defined term "you" as overly broad, beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party also objects to this Request to the extent it seeks premature expert discovery. Responding Party also objects to this Request to the extent it goes beyond the Casualty, Spill and Limitations issues as identified in Pretrial Order No. 11.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Subject to and without waiving its General Objections and the specific objections set forth above, Responding Party responds as follows:  All non-privileged or otherwise non-protected documents, concerning Casualty, Spill and Limitations issues, as set forth in Pretrial Order No. 11, in Responding Party's possession, custody or control have already been produced

40

in this litigation or will be produced.  In addition, if Responding Party identifies any documents that it intends to use at trial, that have not already been produced by Responding Party or any other party in the litigation, Responding Party will produce such documents in accordance with the rules and procedures set forth by the Federal Rules of Civil Procedure and the court.

Dated:  September 2, 2011                                   Respectfully submitted,


                                                                    /s/ Ky E. Kirby

                                                           Ky E. Kirby
                                                           Ky.Kirby@bingham.com
                                                           Warren Anthony Fitch
                                                           Tony.Fitch@bingham.com
                                                           Michael B. Wigmore
                                                           Michael.Wigmore@bingham.com
                                                           BINGHAM MCCUTCHEN LLP
                                                           2020 K Street, NW
                                                           Washington, DC 20006-1806
                                                           Telephone (202) 373-6000
                                                           Facsimile (202) 373-6001

                                                           James J. Dragna
                                                           Jim.Dragna@bingham.com
                                                           BINGHAM MCCUTCHEN LLP
                                                           355 South Grand Avenue
                                                           Suite 4400
                                                           Los Angeles, California 90071-3106
                                                           Telephone (213) 680-6436
                                                           Facsimile (213) 680-8636

                                                           Deborah D. Kuchler (La. Bar No. 17013)
                                                           Janika Polk (La. Bar No. 27608)
                                                           Robert Guidry (La. Bar No. 28064)
                                                           KUCHLER POLK SCHELL
                                                           WEINER & RICHESON, LLC
                                                           1615 Poydras Street, Suite 1300
                                                           New Orleans, LA  70112

                                                           **ATTORNEYS FOR ANADARKO
                                                           PETROLEUM CORPORATION AND
                                                           ANADARKO E&P COMPANY LP**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing First Supplemental Objections and Responses of Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP to BP's First Set of Requests for Production dated April 29, 2011 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 2nd day of September, 2011.

/s/ Ky E. Kirby

42

# EXHIBIT C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California  90071

Darin T. Beffa
To Call Writer Directly:
(213) 680-8264
darin.beffa@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

August 2, 2011

**Via E-mail**

Charles L. Solomont, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

W. Anthony Fitch, Esq.
Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806

Re:    BP-Anadarko Discovery

Dear Carl and Tony:

This letter addresses several issues related to discovery between BP and Anadarko.

**I.        BP-Anadarko Discovery Now that Anadarko's Claims Have Been Stayed.**

In light of Judge Barbier's recent order granting BP's motion to stay, I would like to confirm your understanding of the scope of permissible discovery between BP and Anadarko. Judge Shushan's order on Anadarko's motion to compel said that, even if there were a stay of claims between BP and Anadarko based on their contractual arbitration clause (which she assumed for purpose of analysis), discovery would still be permissible by either Anadarko or BP against the other, provided that the discovery was relevant to the propounding party's defenses to third-party claims in the MDL.  The reasoning in her order is applicable to discovery by either Anadarko or BP.  This principle was reaffirmed by Judge Barbier's Order granting a stay, which rejected Anadarko's argument that BP's discovery effected a waiver of BP's right to arbitrate its disputes with Anadarko.  Thus, the upshot of both orders is that neither BP nor Anadarko is precluded by the JOA's arbitration clause from pursuing such defensive discovery, and neither BP nor Anadarko waives its arbitration rights by pursuing such discovery.  Please let me know immediately if you disagree with this interpretation of the orders.

Chicago        Hong Kong      London       Munich       New York       Palo Alto      San Francisco       Shanghai       Washington, D.C.

KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 2

### A.     Deadlines

Given that BP's stay motion has now been granted, Anadarko must respond to the interrogatories BP served on July 1 (except Nos. 41 through 44).  Responses and objections were due yesterday.  Please let me know immediately when Anadarko plans to respond to BP's interrogatories.

### B.     Moot Requests

As with Interrogatory Nos. 41 through 44, some of BP's requests for production were only applicable had Judge Barbier not stayed Anadarko's claims.  Accordingly, BP no longer expects Anadarko to produce documents in response to Request for Production Nos. 61, 66, and 92 through 95.  And, as stated therein, BP no longer expects Anadarko to respond to the requests for admission served on July 1.

### C.     Reciprocity

From the beginning of our meet-and-confer process, I made it clear that BP expected Anadarko to, when the time came, provide discovery in a manner roughly reciprocal to the discovery Anadarko was demanding of BP.  I was disappointed to find that, when the time did come, Anadarko's offers of production were not entirely consistent with the agreements I thought we had reached.  (Anadarko's responses to BP's requests for production are discussed in more detail below.)  BP expects that Anadarko's responses to BP's interrogatories will comport with the agreements we have reached over the last several months of discussions.  We look forward to working with you toward mutually acceptable discovery agreements.

### D.     Non-Macondo Discovery

This reciprocity in discovery should extend to discovery regarding other wells in the Gulf of Mexico.  As Mark Nomellini mentioned in his July 27 e-mail, your characterization of BP's position on non-Macondo discovery—in both your July 25 and July 27 e-mails—is incorrect. BP has not refused to provide discovery regarding other wells in the Gulf of Mexico.  BP has already produced many documents relating to other wells.  BP's position is that Anadarko should, at a minimum, provide the same scope of discovery about other wells as BP provides. Anadarko's position—that documents about other wells in Anadarko's possession are not relevant because it was not the operator of the Macondo Well—is untenable.  Anadarko has publicly branded itself as one of the industry's most "successful" deepwater explorers in the Gulf of Mexico, claiming to have discovered 30 plus fields and to have interests in hundreds of lease

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 3

blocks, and its practices and procedures on those wells are relevant to the industry standard of care.

Your July 27 e-mail states that you would like to arrive at an agreement on the scope of non-Macondo discovery. We share this objective, but given BP's considerable production of discovery relating to other wells, it is too late for your proposal to forgo all discovery on other wells. We propose that, with respect to discovery between Anadarko and BP related to non-Macondo wells, each party will be required to respond to those requests (and only the parts of such requests) seeking interrogatory responses describing (or documents embodying) company policies, procedures, or standards applicable generally to deepwater Gulf of Mexico wells; if no such generalized policies, procedures, or standards exist, the response shall so indicate. We would like this proposal to be included on the agenda for our call tomorrow.

II.  **BP's Responses to Anadarko's Interrogatories and Requests for Production.**

BP is in the process of preparing and checking supplemental responses to some of Anadarko's interrogatories and requests for production. I write separately here to provide additional information and to respond to your July 14 letter.

A.  **Obligation to Supplement**

BP is still looking into whether there is any need to supplement a handful of its responses to APC's interrogatories. But it has also determined that, for many, no additional response is necessary. For example, with respect to APC Interrogatory No. 21, Anadarko simply seeks confirmation that no additional information is required in response to the interrogatory. If BP determines that a supplemental response is necessary, it will provide one promptly. BP is not, however, required to "confirm" that its responses do not need supplementation. BP will supplement its responses to Anadarko's discovery with available information as required by the applicable procedural rules and orders.

B.  **APC Interrogatory No. 2**

It is unclear what you are requesting with respect to APC Interrogatory No. 2. Your July 14 letter refers to Tony Fitch's May 23 letter, but the only reference to Interrogatory No. 2 in the latter letter notes that there is no disagreement about our response.

C.  **Document Production in Response to Interrogatories**

You have requested confirmation from BP about the scope of the offers of production BP

# KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 4

made in response to APC Interrogatory Nos. 7, 9 through 12, 18,[1] 26, and 27. As we have stated repeatedly, BP has been completely candid about the search criteria (search terms, custodians, and date ranges) it has used to produce documents, and those search criteria are reasonable and robust. BP's document production in response to interrogatories need not be treated differently from its production in response to document requests.

With respect to the BP/Anadarko communications search criteria, I can confirm that the custodians listed in Mark Nomellini's June 12 e-mail to Sandra Franco are those that are likely to have had communications with Anadarko. The statement in that e-mail that the custodians would have had *financial* communications with Anadarko was in error, and I apologize. Further, we have updated the search term criteria, as you proposed, to include the word "Anadarko," as well as to include other terms that we believe are reasonable to capture communications between BP and Anadarko. The updated search string we will run is: ((("Anadarko.com" OR ("paul" NEAR4 "chandler") OR (("Steve" OR "Steven") NEAR4 "Foster") OR ("Strife" NEAR4 "Stuart") OR "Huch" OR "Quitzau" OR "Kamm" OR ("Hollek" NEAR4 "Darrell") OR ("Vera" NEAR4 "wells") OR ("Dawn" NEAR4 "Peyton") OR ("Byrd NEAR4 "Jeremy") OR ("Brian" NEAR4 "O'Neill") OR (("jim" OR "james") NEAR4 "Bryan") OR "Dunbar" OR ("Derek" NEAR4 "Folger") OR ("Al*" NEAR4 "O'Donnell") OR "Sease" OR "Kasuga" OR "Tsuji" OR "Sato" OR "Ishii" OR "Kachi" OR "Fujita" OR ("Asami" NEAR4 "Yoshimura") OR "Yanoma" OR "Naito" OR "Kanno" OR ("Kyoko" NEAR4 "Yamamoto") OR "Murachi" OR "Tsuruta" OR "moexus.com" OR "Naoki" OR "moeco.co.jp"):TO:FROM:CC) OR ("Anadarko" or "APC" or "A E&P" or "AEP" or "MOEX" or "MOECO" or "Mitsui")) AND (Macondo OR ((MC OR "Mississippi Canyon") NEAR2 252) OR "MC-252" OR "Deepwater Horizon" OR "DWH" OR "Marianas"). Custodians and date ranges remain as stated in Mark's June 12 e-mail.

## D.     APC Interrogatory Nos. 26 and 27

With respect to APC Interrogatory Nos. 26 and 27, BP is standing on its objection that identification of each and every oral communication between BP and Anadarko is too burdensome. Subject to its objections, BP has conducted a reasonable investigation and is satisfied that its response is complete and accurate. Your attempt to revise the interrogatories in your July 14 letter does not make them any less onerous. In fact, your new request seeks information that is not even arguably within the scope of the actual interrogatories.

---

[1]   APC Interrogatory Nos. 7, 9 through 12, and 18 concern wells other than Macondo. The scope of documents BP will produce going forward is dependent on the outcome of our discussions about the scope of non-Macondo discovery.

KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 5

### E.       APC Interrogatory No. 30 and AEP Interrogatory No. 1

With respect to APC Interrogatory No. 30, even with Anadarko's "narrowing" of the interrogatory to seek information about BP's responses to ten of Anadarko's requests for admission, the interrogatory remains objectionable.  As stated in its initial response to this interrogatory, BP, "where appropriate, provided a great deal of information" within its responses to Anadarko's requests for admission.  Those responses are sufficient to satisfy any obligation to respond to Interrogatory No. 30.  BP's original response to AEP Interrogatory No. 1 is sufficient for the same reasons.

### F.       Request for Production Nos. 92 and 93

With respect to Request for Production Nos. 92 and 93, I am not sure what additional information you are requesting.  For both requests, BP responded that it has, or will, produce responsive documents that are located after a reasonable search.

### G.       Anadarko's Remaining Interrogatories

BP is preparing responses to Anadarko's remaining interrogatories, as identified in your July 14 letter.  BP will serve its responses soon.

### H.       Relevance of Anadarko's Discovery

Finally, to reiterate a point I've made before, BP believes that the majority of Anadarko's discovery is not truly relevant to Anadarko's MDL defenses.  Instead, the discovery appears singularly related to Anadarko's contentions that it should not have to honor its JOA obligations—contentions that the Court has ruled are arbitrable.  In the spirit of cooperation, BP is willing to continue discussing this discovery with Anadarko with the hope that we can resolve our discovery disputes without court intervention.  If this discovery does end up before the Court, however, BP reserves its right to argue that Anadarko's discovery is inconsistent with Judge Shushan's order.  If you believe that, by engaging in this give-and-take regarding individual requests, BP is waiving any right to argue that any Anadarko's discovery is inconsistent with Judge Shushan's order, please let us know as soon as possible.

### III.       Anadarko's Responses to BP's Requests for Production.

BP believes that Anadarko's responses to BP's requests for production are deficient in a number of ways, as discussed below.

## KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 6


Anadarko's responses state a number of general objections without identifying what
information, if any, Anadarko is withholding on the basis of those objections. Similarly, all of
Anadarko's responses contain specific objections. Yet Anadarko's offers of production for these
document requests simply state that Anadarko will produce "responsive" documents "[s]ubject to
and without waiving these objections." In contrast, BP's responses to Anadarko's requests for
production provided explicit offers of production. Nonetheless, BP confirmed—upon
Anadarko's request—that it intended to produce non-privileged documents consistent with its
offers. BP now requests the same confirmation from Anadarko—that it intends to produce all
non-privileged documents. In particular, BP seeks confirmation that Anadarko is not
withholding documents based on:

- General Objections 5 & 6—confidential, secret, and proprietary information;

- General Objection 17—documents Anadarko obtained after April 20, 2010 (other
  than those it obtained through discovery in this case);

- General Objection 19 (also raised in response to Request for Production No.
  64)—documents that, while relevant and in Anadarko's possession, custody, or
  control, are related to insurance policies issued to parties other than Anadarko;

- General Objection 20—documents in the possession of agents of Anadarko who
  are under Anadarko's control;

- The objections that, because Anadarko did not operate the Macondo Well,
  documents related to its activities are supposedly irrelevant;

- The objections to producing documents that are in Anadarko's possession, but
  that Anadarko believes BP already has in its possession (other than those that
  Anadarko has already produced in this case);

- The objections that portions of BP's requests are purportedly not related to phase
  1 of the MDL;

- The various vagueness and ambiguity objections;

- The objection that Request for Production Nos. 30, 68, 69, 75, 76, 77, 82, 83, 86,
  88, 96, and 97 are overly broad and/or irrelevant;

## KIRKLAND & ELLIS LLP

Charles L. Solomont
August 2, 2011
Page 7

- The objections that the phrases "Anadarko Defendants," "affiliate of the Anadarko Defendants," and "your" are overly broad, vague, and/or unreasonable;

- The objections that certain requests for documents somehow call for "premature expert discovery"; and

- The objections to producing documents that, while in Anadarko's possession custody or control, may also be available in the public domain.

Moreover, Anadarko has refused to produce documents in response to Request for Production Nos. 57, 58, 62, 64, 67, 73, 74, 82, 83, 90, and 91. These requests are relevant and reasonable, and there is no basis for flatly refusing to produce documents in response thereto. Please provide the specific reasons that you believe that no response is required to these requests.

Anadarko's offers of production also explicitly refuse to provide documents related to other wells in the Gulf of Mexico. As discussed above, we welcome a dialogue with you to mutually resolve the scope of other-well discovery.

In light of these deficiencies, we propose a discussion of Anadarko's responses to BP's requests for production on our next meet-and-confer call, which is scheduled for tomorrow.

Furthermore, please confirm that Anadarko has completed production of all documents that it produced to Congress, the MBI, the OSC, and the National Academy of Engineering. If not, please let me know when such production will be completed.

To reiterate what I said at the beginning, BP pursues discovery against Anadarko in the MDL believing that such discovery has been sanctioned by the Court, and reserving all rights to arbitration. BP explicitly does not, and does not intend to, waive any rights to arbitration. As already mentioned, BP believes that Judge Shushan has ruled that discovery such as BP's—which relates to its MDL defenses—is consistent with the parties' agreement to arbitrate.

Please let me know if you have any questions, and I look forward to working with you to resolve our disagreements.

Sincerely,

/s/ Darin T. Beffa

Darin T. Beffa

# EXHIBIT D

# BINGHAM

Tiffany R. Hedgpeth
Direct Phone: 2 13.680.6442
Direct Fax:   213.830.8642
tiffany.hedgpeth@bingham.com

August 31, 2011

**via email** (Sally_Shushan@laed.uscourts.gov)

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
  Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:   Opposition to BP's Motion to Compel Responses to Discovery
      Requests Served on Anadarko in *In Re Oil Spill by the Oil Rig
      "Deepwater Horizon" in the Gulf of Mexico, on April 20,
      2010,* MDL No. 2179

Dear Judge Shushan:

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP
("AE&P") (collectively, "Anadarko") respectfully submit this letter in opposition to
the Motion to Compel letter ("MTC") submitted by BP on August 26, 2011.  For the
reasons set forth below, Anadarko respectfully requests that the Court deny BP's
MTC in its entirety.

The first issue raised by BP is whether Anadarko should be compelled to produce the
policies, procedures, and standards generally applicable to deepwater wells in the
Gulf of Mexico ("GOM") that Anadarko's subsidiary, Kerr-McGee,[1] might have.
Contrary to BP's assertions, and as reflected by its communications with BP,
Anadarko never agreed to produce such documents.  In an effort to resolve a separate
discovery dispute through a reasonable compromise, Anadarko agreed to produce
APC's and AE&P's policies and procedures applicable to deepwater drilling in the
GOM, even though Anadarko continued to believe that whatever policies, procedures
or standards these entities may or may not have are irrelevant to this case because
APC and AE&P were non-operator investors in the Macondo Well with no control
over BP's activities at the well.

BP is now improperly trying to use this Court to extract an expansion of this
conciliatory compromise regarding APC and AE&P documents to include production
of KM documents -- documents which Anadarko specifically said during meet and

---

[1] On September 1, 2011, Kerr-McGee Oil & Gas Corporation ("KM") will change its name to
Anadarko US Offshore Corporation. For clarity's sake, in this letter, Anadarko will continue
to refer to Anadarko US Offshore Corporation as "Kerr-McGee" or "KM" because at all times
relevant to the meet and confer communications, the company was known as "Kerr-McGee."

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

T +1.213.680.6400
F +1.213.680.6499
bingham.com

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 2

confer communications it was not willing to produce.  KM's documents are not
relevant to the pending litigation.  KM had no involvement with the events leading up
to the incident and BP does not contend that it did.  BP's tenuous relevancy argument
is that the information goes to the standard of care applicable in the "industry."
However, BP shows no sign of seeking this information from the other companies
that engage in deepwater drilling in the GOM.  If BP truly were seeking to establish
industry standards of care for deepwater drilling activities, then it would either elicit
this information from its own experts or seek this information from all deepwater
drilling companies, or a large enough sample to be representative of the "industry,"
rather than focusing on just a couple of companies.  In short, BP's purported "need"
for the KM documents is pretext.  For these reasons, Anadarko respectfully requests
that the Court deny BP's request for production of KM documents.

The second issue raised by BP is whether Anadarko must repeat its entire document
collection and production in order to provide BP with certain custodial metadata that
is not available from Anadarko's document storage and management system.  That
system, Symantec Enterprise Vault ("EVault"), does not have the ability to capture
and maintain the custodial metadata of a document once it is deposited into EVault.
However, *all other metadata fields* remain intact.  These other metadata fields
provide BP with a significant amount of information, including the authors of
documents, recipients of the documents, etc.  It likely is because of the wealth of
author and recipient metadata information available to it that BP has not identified to
Anadarko a single specific document for which it actually needs custodial
information.  Moreover, during the meet and confer discussions, Anadarko invited BP
to identify specific documents for which it felt it had some actual need so that
Anadarko could research and provide missing information wherever possible.  BP
rejected this offer out of hand and instead seeks to force Anadarko to repeat its entire
document collection and production effort without using EVault at all.  As held by
other courts, the absence of the custodial metadata does not justify the burden on
Anadarko of repeating its document production.

## I.   ANADARKO SHOULD NOT BE REQUIRED TO PRODUCE THE DOCUMENTS AND OTHER INFORMATION OF KM

BP argues that Anadarko should provide documents and responses to interrogatories
regarding various categories of GOM deepwater drilling policies.  *See* BP MTC, at 2.
As an initial matter, until submitting its MTC to the Court, BP had never informed
Anadarko that it intended to seek to compel Anadarko to respond to interrogatories on
behalf of KM.  *See* Exh. A (8/22/11 E-mail from D. Beffa to T. Hedgpeth and D.
Saunders; *see also* Exh. B (8/16/11 Letter from D. Beffa to T. Hedgpeth and D.
Saunders, at 2-3).  While this failure to meet and confer is grounds for denying BP's
request to compel interrogatory responses, the following substantive reasons also
require that the Court deny BP's request to compel the interrogatory responses and
production of documents with respect to KM.

### A.   Anadarko Never Agreed To Produce KM's Policies, Procedures Or Standards Or To Respond To Related Interrogatories

On April 29, 2011, BP issued 97 requests for production of documents ("RFPs") to
the "Anadarko Defendants" (defined as APC and AE&P - and *not* their *subsidiaries*

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 3

or *affiliates*).[2]  Many of the RFPs sought documents regarding specific operations and procedures at wells APC or AE&P drilled in the GOM -- *i.e.*, they did not seek information regarding the Macondo Well.  *See* Exh. C (BP RFP Nos. 34-56).  On July 1, 2011, BP issued 44 Interrogatories to the Anadarko Defendants (again, defined only as APC and AE&P).[3]  Like the RFPs, many of the interrogatories sought information related to APC's and AE&P's activities regarding other wells in the GOM.  *See* Exh. E (BP Interrogatory Nos. 2, 5, 8, 11, 13, 21, 22, 23, 25, 26, 28, 29, 30, 32).  Anadarko made clear in its objections that it was responding to BP's Interrogatories only on behalf of APC and AE&P.  *See* Exh. F, at 4, ¶ 14 ("Responding Party [defined as APC and AE&P] will respond to the Requests only on behalf of Responding Party").  Anadarko also made clear in its responses to BP's RFPs that it was only producing documents within APC's and AE&P's own files: "Responding Party objects to the Requests to the extent they seek to require Responding Party to provide information beyond what is available to it after conducting a reasonable search of *its own files* and after making reasonable inquiries." *See* Exh. D, at 3, ¶11. (emphasis added).

Anadarko also asserted that discovery requests unrelated to the Macondo Well were irrelevant:

---

[2]  BP defines the terms "You," "your," and "yours" to "mean the Anadarko Defendants, including without limitation all of the Anadarko Defendants' present or former agents or representatives, or anyone acting or purporting to act for or on the Anadarko Defendants' behalf for any purpose whatsoever."  *See* Exh. C (The BP Parties' First Requests for Production to the Anadarko Defendants, served on April 29, 2011, at 13, ¶ I).  Significantly, BP does not define APC or AE&P to include subsidiaries or affiliates.  In addition, so there would be no doubt that only APC and AE&P were responding to BP's RFPs, Anadarko objected to this broad definition stating "Responding Party objects to the definition of "You," "Your," and "Yours" as overly broad and as improperly seeking party discovery from non-party entities. Responding Party will respond to the Requests only on behalf of Responding Party."  *See* Exh. D (Objections and Responses of Defendant Anadarko Petroleum Corporation and Anadarko E&P Company LP to the BP Parties' Requests for Production, served on July 1, 2011, at 4, ¶ 13).

[3]  Although BP does not define "Anadarko Defendants" to include subsidiaries of APC or AE&P, BP defines the terms "You," "your," and "yours" to "mean Anadarko and/or any corporate affiliate, including without limitation any of its present or former agents or representatives, or anyone acting or purporting to act for or on Anadarko's behalf for any purpose whatsoever, including operators of wells in which any Anadarko-affiliated entity holds any percentage of any kind of ownership." *See* Exh. E (BP Parties' Corrected First Set of Interrogatories, served on July 2, at 10, ¶1).  Anadarko objected to this definition and made clear that it was responding only on behalf of APC and AE&P: "Responding Party objects to the definition of "you," "your," and "yours" as overly broad and as improperly seeking party discovery from non-party entities. Responding Party will respond to the Interrogatories only on behalf of Responding Party."  *See* Exh. F (Objections and Responses of Anadarko ("Anadarko Petroleum Corporation and Anadarko E & P Company LP") to the BP Parties' First Set of Interrogatories, served on Aug. 4, 2011, at 4, ¶ 14).

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 4

> 20. Responding Party objects to the
> [Interrogatories] as a whole to the extent they seek
> information or documents unrelated to the Macondo
> Prospect, the Macondo Well known as MC 252 # 1
> Macondo Well, the Deepwater Horizon's operations
> at the Macondo Well, or the Incident. Responding
> Party will only provide information and/or
> documents relating to the Macondo Prospect, the
> Macondo Well, the Deepwater Horizon's operations
> at the Macondo Well, or the Incident.

See, e.g., Exh. F, at 5, ¶20.  Anadarko also made its position clear within its specific responses to BP's non-Macondo Well discovery requests:

> [A]s a non-operator, Responding Party never
> operated or controlled any aspect of any operations
> at the Macondo Well. As a result, information
> relating to Responding party's internal activities or
> its operations is irrelevant to the current litigation.
> Responding Party also objects to the extent the
> documents requests are already in BP's possession
> as the operator of the Macondo Well.  Responding
> Party also objects to this Request to the extent it goes
> beyond the Casualty, Spill and Limitations issues as
> identified in Pretrial Order No. 11.

See, e.g., Exh. D, at 6, et seq.

After engaging in various discussions regarding Anadarko's objections to the various non-Macondo Well discovery requests, on August 2, 2011, Darin Beffa, counsel for BP, proposed the following:

> We propose that, with respect to discovery between
> Anadarko and BP related to non-Macondo wells,
> each party will be required to respond to those
> requests (and only the parts of such requests)
> seeking interrogatory responses describing (or
> documents embodying) company policies,
> procedures, or standards applicable generally to
> deepwater Gulf of Mexico wells; if no such
> generalized policies, procedures, or standards exist,
> the response shall so indicate. We would like this
> proposal to be included on the agenda for our call
> tomorrow.

The Honorable Sally Shushan
August 31, 2011
Page 5

*See* Exh. G (8/2/11 Letter to C. Solomont, W.A. Fitch from D. Beffa, at 3). In response to this proposal, Anadarko informed BP that it would supplement its responses in accordance with Mr. Beffa's proposal. *See* Exh. H (8/11/11 E-mail from T. Hedgpeth to D. Beffa).[4]

BP's proposal requires Anadarko and BP to produce information regarding their respective company policies, procedures, or standards applicable generally to deepwater wells in the GOM. The proposal did not include withdrawal by Anadarko of its prior objections to producing documents for entities other than APC and AE&P. The proposal never mentioned KM at all. Had BP intended its proposal to extend to KM's information and documents, it should have stated this explicitly. The Court should not condone BP's efforts to compel a production of KM documents when they are outside the scope of the BP proposal.

## B.    The Information BP Seeks From KM Is Not Relevant

KM had no involvement with the design, construction, or drilling of the Macondo Well or any other events leading up to the explosion of the Deepwater Horizon at the Macondo Well and the subsequent release of oil into the Gulf of Mexico ("Incident"). As a consequence, BP falls back to the assertion that the relevance of KM's information and documents goes to the "industry standard of care."[5] While it is true that BP is alleged to have been grossly negligent at the Macondo Well, Anadarko's and KM's policies can hardly be said to establish the "industry standard." To the best of Anadarko's knowledge, no other petroleum company that operates in the GOM has been asked by BP to produce or provide information about their policies, standards and procedures.   Evidencing the dubiousness of BP's "industry standard" rationalization, when Anadarko asked BP on August 18 whether it had subpoenaed the same types of policies, standards, and procedures from all other entities involved with deepwater drilling in the GOM, BP's counsel responded that he did not know. *See* Exh. I (T. Hedgpeth Decl., at ¶ 3). Thus, BP's insistence that Anadarko produce KM policies, standards, and procedures appears to be an effort to harass Anadarko by requiring it to search the files of its subsidiary rather than a legitimate effort to seek information relevant to BP's defenses.

Without a clear explanation of its significance, BP also notes that Anadarko witnesses who "served in drilling engineering and other technical roles on the Macondo Well came from [KM]." *See* BP MTC, at 4.   BP seriously mischaracterizes Anadarko's role with regard to the Macondo Well.   Indeed, as Judge Barbier found in his recent Opinion regarding Motions to Dismiss the Master (B)(1) Complaints, BP was "solely

---

[4]  Following Anadarko's response, on August 16, 2011, BP sent Anadarko a letter acknowledging that Anadarko had not been producing the records of Anadarko-related entities. *See* Exh. B, at 2-3. BP argued that Anadarko should produce KM documents. *Id.* Significantly, BP did *not* state that Anadarko had already agreed to produce KM information in response to Mr. Beffa's proposal.

[5]  BP asserts that "APC has not articulated any reason" why KM's policies and procedures are not relevant. As shown above, this is not correct.

A/74500106.2/3320167-0000350535

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 6

responsible for the drilling operations" on the Macondo Well. (Rec. Doc. 3830, at
28.) For this reason, even the APC and AE&P information that Anadarko will be
producing under the compromise will have no bearing on the issues in the case.
Whether Anadarko had the best policies, the worst policies, or no policies at all has
no significance in this case because BP, not Anadarko, made all decisions with
respect to the drilling and temporary abandonment operations at the Macondo Well.
The policies, procedures, and standards of KM, who was not even a non-operating
investor in the Macondo Well let alone an entity involved in the Macondo Well's
operations, are even further afield and not only not likely to, but are essentially
certain not to, lead to the discovery of admissible evidence.

In sum, Anadarko never agreed to produce KM documents or respond to
interrogatories on KM's behalf. KM's policies, procedures, and standards generally
applicable to deepwater drilling in the GOM have no information relevant to the
litigation and are not likely to lead to the discovery of admissible evidence. It is
respectfully submitted that Anadarko should not have to spend its time weeding
through the files of a subsidiary who had no involvement with the drilling of the
Macondo Well or the events leading up to the Incident in order to find irrelevant
documents. Anadarko respectfully requests that BP's request for KM documents and
interrogatory information be denied.

**II.      RE-COLLECTION AND RE-PRODUCTION FOR PURPOSES OF
TRYING TO CAPTURE CURRENTLY UNAVAILABLE CUSTODIAL
METADATA WOULD IMPOSE AN ENORMOUS BURDEN ON
ANADARKO AND PROVIDE BP WITH VERY LITTLE BENEFIT**

BP asks the Court to compel Anadarko to re-collect and re-produce its entire
document production because one metadata field -- the custodian field -- was lost in
the process of gathering and producing Electronically Stored Information ("ESI").
Although BP implies otherwise, the loss of the metadata was not intentional. It
resulted because the system Anadarko normally uses for collecting, storing and
managing ESI -- EVault -- does not allow the custodial metadata to survive once the
document is deposited into EVault. EVault maintains *all other metadata information*.
While, as discussed below, the loss of metadata has no material impact on BP,
redoing the entire Anadarko production without using EVault would be extremely
time-consuming and expensive and, therefore, unduly burdensome. Moreover, to
avoid any prejudice to BP from the lack of metadata, a circumstance that BP has not
established and that Anadarko denies will occur, Anadarko has offered a compromise
by which Anadarko will research custodian information on an individual document
basis upon identification by BP of documents for which such custodian information is
essential and cannot be gleaned from the author or recipient metadata or pre-existing
deposition testimony. BP has rejected Anadarko's proposed compromise.

**A.      Anadarko's Production Process And The Unavailability Of
Custodial Metadata In Evault**

Shortly after the explosion on the *Deepwater Horizon*, Anadarko issued a litigation
hold to its employees and began searching for and collecting documents that
potentially could be relevant to anticipated litigation. *See* Exh. J (T. Abisogun Decl.,
at ¶ 4). Anadarko, in its regular course of business, currently and historically uses

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 7

EVault for document collection, storage and management. *Id.* at ¶ 3.   EVault stores
company employee e-mails, archived documents, and documents identified as
relevant to litigation involving Anadarko or  government agency investigations. *Id.*
In July 2010, as part of its effort to capture all documents potentially relevant to the
Macondo incident, Anadarko transferred ESI from more than 108 employees and
other sources (such as shared drives) into EVault.  *Id.* at ¶ 5.  Anadarko then used the
search functions in EVault to locate and identify documents responsive to document
requests in the current litigation. *Id.* at ¶ 6.  This process occurred over many months.
*Id.* at ¶ 7.

EVault does not retain custodial metadata information for images loaded onto EVault.
*Id.* at ¶ 8.  The Court issued Pretrial Order No. 16 ("PTO 16") on  November 8, 2010,
months after Anadarko transferred the ESI into EVault.  PTO 16 requires, *inter alia,*
the parties to produce ESI with metadata "to the extent it exists."  PTO 16 was issued
after the plaintiffs had served their first set of Omnibus RFPs to Anadarko and
Anadarko had already started the process of searching through and collecting
documents from EVault to respond to the requests.  EVault contained the universe of
documents relating to the Macondo incident, but that universe did not include the
custodial metadata field. In other words, the custodial information did not, and does
not, exist in EVault.  To capture custodial metadata, Anadarko would have to go back
and repeat the entire ESI collection process and purchase and use a new central
document repository. *Id.* at ¶ 10.  In addition to the huge expense, this whole process
would take at least 6 months.  *Id.*

**B.    BP Has Not Suffered Any Prejudice From The Absence Of The
Custodial Metadata**

BP's motion is replete with inaccurate assertions regarding the effect of not having
the custodial metadata field.    In fact, BP has extensive information about the
documents.  First, all other metadata fields are intact.  *Id.* at ¶ 9.  Contrary to BP's
assertion that the custodial information is needed to determine who authored a
document (*see* BP MTC, at 5), the "from" metadata field provides this information
(for all documents, not just e-mails).  Likewise, the metadata includes the "to," "cc,"
and "bcc" fields, which provide information concerning who received e-mails.
Second, also contrary to BP's representation (*id.*), the custodial metadata for hard
copies is present as hard-copy documents were not processed through EVault.  Third,
only about  9,000 non-email documents were produced without the custodial
metadata.

Finally, and most telling of the lack of any prejudice to BP, is that BP has had
Anadarko's initial production for more than seven months, yet has only now raised
this issue.  Anadarko began producing documents in the litigation in November 2010
in response to Plaintiffs' first set of Omnibus RFPs. *See* Exh. I (T. Hedgpeth Decl. at
¶ 4).  Those documents did not contain custodial metadata.  It was not until July 1,
2011, that BP first raised the issue concerning Anadarko's metadata.  *See* Exh. K
(7/11/11 Letter from M. Nomellini to C. Solomont, summarizing July 1 meet and
confer discussions).  This was *after* the depositions of all of Anadarko's 30(b)(6)
witnesses (most of whom also testified in their individual capacity) were completed.
Clearly, if the separate custodial metadata fields were as important to BP as it now

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 8

represents to the Court, it would have sought relief from the Court *before* the critical
Anadarko depositions occurred.[6]

### C.   Anadarko Has Offered To Research Custodians For Important Documents Identified By BP

In an effort to resolve this dispute and avoid any purported prejudice to BP from the
absence of the custodial metadata field, Anadarko informed BP that if there were any
key documents for which BP would like the custodian identified, Anadarko could
research the custodian information manually. *See* Exh. L (8/19/11 Email from T.
Hedgpeth to D. Beffa and M. Nomellini); *see also* Exh. I (T. Hedgpeth Decl., at ¶ 5).
Although this would be extremely time-consuming, Anadarko told BP it is willing to
undertake such efforts, provided BP's identification of documents for which such
information is supposedly essential is provided in good faith.  As set forth below,
such an approach for resolving metadata concerns is consistent with the applicable
case law.

In *Kentucky Speedway, LLC v. Nat'l Ass'n. of Stock Car Auto Racing*, 2006 WL
5097354 at *7-9 (E.D. Ky. Dec. 18, 2006) the defendant produced documents in PDF
format rather than native format with metadata included. *Kentucky Speedway, LLC v.
Nat'l Ass'n of Stock Car Auto Racing*, 2006 WL 5097354 at *8. Seven months after
defendants' production, plaintiff sought to have the defendant reproduce its
documents in native format so that it could obtain the document metadata. *Id.*  The
court denied plaintiff's request, finding that the plaintiff had not made "any showing
of a particularized need." *Id.*  Plaintiff's general argument that it needed custodian
information in order to prosecute its case was insufficient. *Id.*

However, similar to Anadarko's offer to BP, the court did permit the plaintiff to
request metadata for any specific document for which the "date and authorship
information is unknown but relevant." *Id.* at *9.   The court reasoned that
"[r]esponding to a request for additional information concerning specific documents
would be far less burdensome to defendant and far more likely to produce relevant
information." *Id.* at *9.  As explained above, Anadarko would be willing to
accommodate BP's requests for custodian information for specific documents.  To
date, however, BP has not identified a single document for which the custodian
information is important to BP's defense.[7]

---

[6] BP quotes PTO 17's Certificate of Completeness requirements.  All of Anadarko's witnesses
complied with this requirement and produced their custodial files in the litigation.

[7] BP complains that counsel for Anadarko told BP that the lack of the custodial metadata field
does not allow Anadarko to identify whether non e-mails or e-mail attachments were produced
by Mr. Hackett. *See* BP MTC, at 7.   Mr. Hackett's files were imaged and transferred to
EVault and any responsive documents were produced.  BP can search the documents to
determine whether Mr. Hackett was the author of any non-privileged responsive documents
(he authored only e-mails).  And, if BP were interested in knowing whether a particular

(Footnote Continued on Next Page.)

A/74500106.2/3320167-0000350535

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
August 31, 2011
Page 9

#### D.   Re-Collection and Re-Production In Order To Recapture Only The Custodial Metadata Would Be Extremely Time-Consuming And Expensive

What BP requests would impose an extreme burden on Anadarko, one that simply is not justified in this circumstance. In order to recapture and produce the custodial metadata, Anadarko would have to: 1) re-image all of the files of all 108 persons who potentially have responsive information; 2) re-image all shared drives and other locations holding ESI; 3) upload those potentially relevant documents into a new central repository (which would have to be purchased or an outside vendor retained); 4) train personnel on the new central repository; 5) re-run the searches Anadarko previously performed in EVault; 6) identify responsive, non-privileged documents for production; and 7) produce the documents for a second time. *See* Exh. J (T. Abisogun Decl., at ¶ 10). This process would take at least six months to perform and would require two of Anadarko's personnel one a full-time basis as well as counsel's time. *Id.* The time, expense and effort would detrimentally impact Anadarko's ability to focus on current discovery efforts and trial preparation.

The burden associated with reproducing documents already produced far outweighs the benefit of the custodial metadata information, as recognized in applicable case law. In *Diesel Machinery, Inc. v. Manitowoc Crane Group*, the parties disagreed about an apparent oral agreement they reached indicating that production of documents in PDF format would be acceptable. *See Diesel Machinery*, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011). The court declined to require re-production of the documents in native format where the party that produced in PDF format had already "devoted 1,000 hours to its documents production." *Id.* The court stated:

> The burden or expense of such additional discovery, which would only serve the purpose of metadata production, outweighs any potential benefits. . . . [plaintiff] has not demonstrated how reproduction . . . would further aid in discovery on or resolution of these issues. Reproducing the documents in a different format would cost [defendant] several thousands of dollars in additional expenses.

*Id.* Similarly, for Anadarko to start its production from scratch, the costs would be prohibitive. Anadarko's productions contain all other requested metadata fields and Anadarko is willing to accommodate good faith requests for custodian information for specific documents.

---

(Footnote continued from Previous Page.)

document were in Mr. Hackett's files, BP could simply ask Anadarko to check. BP has chosen not to do so.

A/74500106.2/3320167-0000350535

The Honorable Sally Shushan
August 31, 2011
Page 10

III.   **CONCLUSION**

For the reasons set forth above, Anadarko respectfully requests that BP's MTC be denied in its entirety.

Respectfully submitted,

Tiffany R. Hedgpeth

Enclosures


Cc:    Martin Boles, Esq.
       Ky Kirby, Esq.
       Warren Anthony Fitch, Esq.

A/74500106.2/3320167-0000350535