**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**In re: Oil Spill by the Oil Rig**          **MDL NO. 2179**
     **"Deepwater Horizon" in the Gulf**
     **of Mexico, on April 20, 2010**          **SECTION J**

**Applies to:** *All Cases*                **JUDGE BARBIER**
                                       **MAGISTRATE JUDGE SHUSHAN**

**ORDER**

**[Regarding BP's Motion to Reconsider (Rec. doc. 4026)]**

On August 29, 2011, HESI filed a motion to compel BP to respond to discovery. Rec. doc. 3843. An order was issued requiring BP to supplement its discovery responses, including its responses to interrogatory no. 7 and RFA no. 115. Rec. doc. 3903. BP filed a motion to reconsider the order regarding these two discovery requests. Rec. doc. 4026. HESI filed an opposition. Rec. doc. 4059.

Interrogatory no. 7

HESI requested that BP explain its policies and procedures regarding the design and interpretation of negative tests, and how such policies and procedures are communicated to BP well site leaders. Rec. doc. 3843 (Exhibits 1). BP responded that: (1) BP's policy specified the requirement to conduct a negative pressure test; (2) the negative test procedures used at various wells would have been developed by a combination of the drilling contractor and the BP engineering and operations team depending on the circumstances of a given well; and (3) at the Macondo well, BP and others were involved in designing and interpreting the negative tests. Id. In its motion, HESI contended that BP failed to identify its policy or answer how the policy was communicated. Rec. doc. 3843.

The September 2, 2011 order provides that, "BP shall supplement its response to generally describe, in the ordinary course of its business, its policies and procedures regarding the design and interpretation of negative tests and communication of the design and interpretation of such tests to BP well site leaders."  Rec. doc. 3903 at 1.

In its motion to reconsider, BP states that: (1) it has no policy or procedure on how to design or interpret a negative test; (2) its answer to the interrogatory provided that BP's policy specified the requirement to conduct a negative pressure test.  Rec. doc. 4026.  HESI responds that the interrogatory asks for BP's policies and procedures <u>regarding</u> the design and interpretation of negative tests and not for its policies and procedure on <u>how</u> to design and interpret such tests.  It contends that a reference to an unidentified policy that requires a negative pressure test is not responsive.

BP's response and the arguments of the parties demonstrate that: (1) BP does not have a policy or procedure on how to design or interpret a negative pressure; and (2) it has a policy specifying the requirement to conduct a negative pressure test.  BP shall amend its response to state whether it has any other policies or procedures <u>regarding</u> the design and interpretation of negative tests.  Assuming it has none, it is not required to make any further response regarding communications to BP well cite leaders, except to identify or produce a writing with the policy on the requirement to conduct a negative pressure test.  If there are other policies and procedures <u>regarding</u> negative pressure tests, it shall: (1) explain the policies and procedures; (2) state how the policies and procedures were communicated to BP well site leaders; and (3) identify or produce the writings reflecting such policies and procedures.

Request for Admission no. 115

There was a typo in the RFA as it was served on BP.  There is agreement that it should read:

> Admit that the 13.1 ppg sand in the Macondo Well from which BP believes flow initiated is above the "main hydrocarbon zones" (as that term is used in the sentence quoted in Request for Admission 140).

In its motion, HESI reported that the error was clarified in the meet-and-confer but BP failed to supplement its response to the RFA as corrected.  The September 2, 2011 order provides that, "BP shall supplement its responses following HESI's clarification."  Rec. doc. 3093.

The term "main hydrocarbon zones" as used in RFA 140 refers "to the three 12.6 ppg sands depicted and identified as 'Primary Reservoir Sands' in 'Figure 1' on page 54 of the Bly Report."  Accordingly, the RFA may be re-stated as:

> Admit that the 13.1 ppg sand in the Macondo Well from which BP believes flow initiated is above the three 12.6 ppg sands depicted and identified as "Primary Reservoir Sands" in "Figure 1" on page 54 of the Bly Report.

Subject to its objections BP admits that Figure 1 on page 54 of its September 8, 2010 Deepwater Horizon Accident Investigation Report (the Bly Report) labels the 12.6 ppg sands as the "Primary Reservoir Sands."  This is not responsive to RFA 115.  BP shall admit or deny RFA 115 as re-stated.

IT IS ORDERED that: (1) BP's motion to reconsider (Rec. doc. 4026) is GRANTED in PART and DENIED in PART as provided herein; (2) **within ten (10) calendar days from the entry of this order,** BP shall amend its responses to Interrogatory no. 7 and RFA 115; and (3) BP's deadline to appeal this order is **Wednesday, October 5, 2011.**

New Orleans, Louisiana, this 27th day of September, 2011.

**Sally Shushan**
**United States Magistrate Judge**

3