UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig           MDL NO. 2179
     "Deepwater Horizon" in the Gulf
     of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*                      JUDGE BARBIER
                                                       MAGISTRATE JUDGE SHUSHAN

## ORDER

**[Regarding BP's Motion to Compel Halliburton Investigation Materials (Rec. doc. 3919)]**

BP seeks an order: (1) finding that HESI's post-incident investigative activities are not protected by the work-product doctrine; and (2) compelling it to produce additional persons for deposition concerning their participation in such activities. Rec. doc. 4066 at 10.

## BACKGROUND

After the incident, BP commissioned the Bly Report. Transocean prepared a post-incident report which was released to the public. These reports have been the subject of much discovery. HESI contends that it did not conduct a comparable investigation. Rec. doc. 3959 at 3. It reports that a few individuals within HESI, and not at the request of the company, initiated the organization of a team to investigate certain issues related to the incident. Id. at 2.[1] It acknowledges that these documents are not protected from disclosure. It argues, however, that documents relating to activities HESI undertook post-incident at the direction of counsel are protected from disclosure.

---

[1] Exhibit 5 to BP's Motion (Rec. doc. 3919) is an email, dated May 22, 2010, from Ronald Sweatman, Chief Technical Professional, Global Business & Technical Solutions and CCS, Halliburton, to Derrick Lewis with copies to others. Well diagrams and a slide on the negative test for the well were attached. The email identifies members of the team. Lewis is asked if he can simulate the gas kick to help the team better understand the situation and answer certain questions, including the time period for the gas to bubble up the longstring/hole annulus to the wellhead. HESI refers to these as "Non-Privileged Post-Incident Activities." Rec. doc. 3959 at 2.

The parties agree that documents relating to testing or modeling that was <u>not</u> done at the direction of counsel must be produced.  HESI states that: (1) documents relating to the fact gathering or analysis done by employees who were not acting at the direction of counsel have been produced pursuant to previously agreed search terms; (2) it recently became aware of additional documents in the possession of Ronald Sweatman; (3) it is reviewing and producing any additional documents related to the non-privileged post-incident activities; and (4) it will revise its privilege logs and produce any inadvertently withheld documents.[2]  It contends that the request for additional depositions is unreasonably duplicative.  It urges that it is entitled to protection from discovery of any testing conducted in anticipation of litigation.

BP replies that: (1) HESI has not met its burden to establish that the post-incident investigation activities of its engineers and technical personnel are protected as work-product; (2) HESI offers no evidence to shield any post-incident investigative materials from discovery; (3) it has not defined what post-incident activities were conducted in anticipation of litigation; and (4) it has not formally revised its privilege logs to withdraw any claims of privilege.  It urges that it will be prejudiced if it is not permitted to depose the four HESI representatives.

## **DOCUMENTS**

HESI reports that documents related to non-privileged post-incident activities which have not been produced are of two types: (1) documents which were recently discovered; and (2) documents which were inadvertently withheld from production and logged as privileged.  HESI contends that because it agreed to produce these documents, no order is required.

HESI's argument indicates that, because of the limited nature of the non-privileged

---

[2] HESI served BP with at least fifteen privilege logs.  Rec. doc. 3919 (Exhibit 15).

investigations, the volume of documents associated with them must be comparatively small. By **Wednesday, October 12, 2011**, HESI shall complete the production of these documents. HESI's production of these documents shall be made in such a manner that BP can determine what documents identified on the privilege logs are being produced.[3]

HESI contends that documents relating to activities that were undertaken post-incident at the direction of counsel are protected from disclosure and that it has not waived any work-product protection. Rec. doc. 3959 at 2. It also refers to this as testing conducted in anticipation of litigation. Id. at 5.

> Although HESI concedes that there was some initial, discoverable fact-gathering done by its employees for business purposes, subsequent efforts undertaken at the direction of both in-house and outside counsel after the commencement of litigation are entitled to work product protection.

Id.

BP responds that HESI has not provided any evidence that any post-incident activities by HESI engineers or technical representatives were conducted at the direction of counsel. HESI's privilege logs identify some documents as prepared at the direction of counsel. For example, entry no. 553 on Privilege Log Ten is described as a May 30, 2010 email from Sweatman prepared at the direction of counsel in preparation for governmental hearings. Rec. doc. 3915 (Exhibit 15 - Part F). In its opposition and in response to BP's request for Chemali's deposition, HESI asserts that his involvement relating to Phase One concerned analysis of Sperry data and hydrocarbon zones was performed at the direction of counsel in preparation for litigation. Rec. doc. 3959 at 4. HESI has not provided affidavits or other evidence to support the statements that certain testing was conducted

---

[3] HESI's privilege logs refer to the documents with an entry number rather than a Bates number. In some cases the privilege logs do not provide the dates for the documents. BP must be able to determine whether a document on one of the privilege logs has been produced.

at the direction of counsel or that there were other post-incident activities conducted at the direction of counsel.

In <u>Hodges, Grant & Kaufman v. U.S.</u>, 768 F.2d 719 (5th Cir. 1985)(Rubin, J.), the district judge denied the Government's attempt to enforce an IRS subpoena for two documents. The issue for one document was whether it was prepared in anticipation of litigation. The Fifth Circuit stated that "[e]xamination of the document prepared by Touche Ross & Co. indicates the possibility that it was prepared in anticipation of Jones' involvement in tax litigation, but without evidence, we cannot be certain." <u>Id</u>. at 722. The question of whether the accountant's report was work-product was remanded. In <u>Evans v. United Fire & Casualty Insurance Company</u>, 2007 WL 23223363 (E.D.La.) (Wilkinson, M.J.), a party's contention that documents were protected from disclosure as work-product was "unsubstantiated." <u>Id</u>. at *3. The Court stated that "[t]he mere assertion of a lawyer in defendant's opposition memorandum or in the privilege log that materials were prepared in anticipation of litigation *is not evidence* sufficient to bear the burden." <u>Id</u>. at *4 (emphasis in original). See <u>Pacamor Bearings, Inc. v. Minebea Co., Ltd.</u>, 918 F.Supp. 491, 513 (D.N.H. 1996)("An affidavit from counsel indicating that such work was done at his direction in anticipation of specified litigation will also help a party meet its burden under Rule 26(b)(3) of establishing that the work was done in anticipation of litigation.").

**Within seven (7) calendar days of the entry of this order**, HESI shall provide affidavits specifically demonstrating that modeling or other post-incident activities were undertaken at the direction of counsel. As promptly possible after the service of the affidavits, the parties shall meet-and-confer on whether the documents are properly withheld as work-product. If they cannot resolve the issue, they shall submit further memoranda on the issue and provide the Court with an agreed

4

upon sample of documents to review *in camera*.

## DEPOSITIONS

In its motion to compel, BP requested the depositions of Marc Edwards, Ronald Sweatman, and Roland Chemali. Rec. doc. 3919 at 1. HESI responded to the request for these three depositions. Rec. doc. 3959 at 4. In its reply, BP added Anthony Badalamenti as a HESI person to be deposed. HESI provided an opposition to the request for Badalamenti. Rec. doc. 4111.

HESI contends that Sweatman is an inappropriate Phase One deponent because: (1) Tommy Roth testified in his deposition about his discussions with Sweatman concerning certain calculations and modeling; (2) Roth testified that any work Sweatman may have done on modeling was not done as part of any team; and (3) Sweatman's deposition would be duplicative of prior testimony and unnecessary. Rec. doc. 3959 at 4. HESI reports that it recently became aware of additional documents in Sweatman's possession. Id. at 2. Sweatman is HESI's chief technical professional. Rec. doc. 3919 at 4. BP contends that it appears that Sweatman was a key member and leader of the team that HESI admits was formed to investigate certain issues related to the Macondo incident. Rec. doc. 4066 at 7.

**HESI shall produce Sweatman for a one day deposition**. HESI and BP shall schedule the deposition to occur no later than November 12, 2011. The examination time for Sweatman shall be allocated as for James Bement, with BP receiving 210 minutes. See Rec. doc. 4018.

Edwards is HESI's senior vice president for completion and production. Rec. doc. 3919 at 4. HESI contends that: (1) Edwards has no personal knowledge of events relating to the Macondo well or the incident; (2) his involvement in conversations regarding general processes and/or media releases is tangential to Phase One issues; (3) he did not participate in any investigation; and (4) his

only knowledge relevant to the litigation was derived from briefings by Ronnie Faul, Badalamenti and HESI's legal team. Rec. doc. 3959 at 4. BP disputes this. It cites an April 23, 2010 email from Edwards to Jonathan Lewis, a senior vice-president in which Edwards states "[o]n the cementing issue, we did a thorough internal investigation which has taken much of the last few days. We are in the clear, the production string was tested as ok at 1100hrs the morning of the accident." Rec. doc. 4066 (Exhibit 37). BP cites other communications that it contends demonstrate justification for Edwards' deposition. Rec. doc. 4066 at 9. BP has not demonstrated sufficient direct involvement by Edwards in the post-incident investigation activities to require his deposition. The request for Edwards' deposition is denied.

Chemali is HESI's chief petrophysicist at Sperry Drilling. Rec. doc. 3919 at 4. HESI contends that: (1) his involvement in the Deepwater Horizon incident related to the analysis of Sperry data and hydrocarbon zones; (2) it was performed at the direction of counsel in preparation for trial; and (3) it is protected from discovery as work-product. Rec. doc. 3959 at 4. BP responds that: (1) HESI has not presented any evidence to support this contention; and (2) even if Chemali was acting at the direction of counsel, the facts learned by him remain discoverable.

**Within seven (7) calendar days of the entry of this order**, HESI shall provide affidavits demonstrating that Chemali's analysis was performed at the direction of counsel. The parties shall meet-and-confer to determine if they can resolve the issue of the discovery of the facts learned from the analysis. If they cannot resolve the issue, they shall submit further memoranda on the issue and HESI may submit *in camera* information relating to the analysis that it contends is protected as work-product.

BP requested that HESI produce Badalamenti for a post-July 31 Phase One fact deposition.

The request was denied. HESI was required to produce James Bement and Jim Prestidge. Rec. doc. 3090. BP describes Badalamenti as a key member of the HESI team formed to investigate certain issues related to the Macondo incident. It contends that he participated in relevant post-incident activities including efforts to model the gas kick, efforts to determine cement volume and height calculations, and analyses concerning the cause of the incident. Rec. doc. 4066 at 9.

HESI responds that BP has received information on HESI's non-privileged post-incident testing from Tommy Roth, Ronnie Faul and James Bement. BP will receive further information from Sweatman. Badalamenti's deposition will be duplicative, and therefore the request for his deposition is denied.

IT IS ORDERED that BP's motion to compel Halliburton Investigation Materials (Rec. doc. 3919) is GRANTED in PART and DENIED in PART as provided herein. **Any appeal of this order must be filed no later than Wednesday, October 5, 2011.**

New Orleans, Louisiana, this 27th day of September, 2011.

SALLY SHUSHAN
United States Magistrate Judge