## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010** | § § § § § § § § | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAG. JUDGE SHUSHAN** |
| **Applies to:  All Cases<br>                2:10-cv-02771** | | |

---

## HALLIBURTON ENERGY SERVICES INC.'S
## REPLY TO BP'S OPPOSITION TO MOTION FOR LEAVE

Halliburton Energy Services, Inc. ("HESI") files this Reply ("Reply") to BP's Opposition ("Opposition") to HESI's Motion for Leave to File Second Amended Cross-Claim ("Motion"), and in support of the same, respectfully shows as follows:

### INTRODUCTION

HESI's Motion seeks leave to amend its Cross-Claims against BP based not upon discovery of a separate and distinct factual basis for claims against BP, but instead based upon discovery that alters the nature of BP's conduct.  The recently discovered facts and evidence illustrate that, by knowingly failing to disclose the existence of a shallower hydrocarbon zone prior to the blowout, explosion and fire on the *Deepwater Horizon*, hereinafter (the "Incident"), BP's actions are not only negligent, but fraudulent as well.  HESI's recent discovery of the basis for this cause of action, based upon ongoing Phase One discovery occurring after the Court's deadline for filing cross-claims, provides more than sufficient justification for HESI's requested amendment, and this Court should grant HESI's Motion.

In its Opposition, BP discusses, at length, various documents and deposition testimony which purportedly evidence HESI's prior knowledge of the shallower hydrocarbon-bearing sands. *See generally*, Opposition at pp. 2-11. BP attacks the substantive merits of HESI's amended cross-claims, arguing that the M57B zone was included in the BP Incident Investigation Team's analysis of the *Deepwater Horizon* incident; that HESI was aware of the M57B zone and the possibility of it bearing hydrocarbons in May 2010; and that HESI included the existence of the M57B zone in its defense and questioning of witnesses throughout Phase One discovery. *See generally, id.* BP's straw man argument simply ignores the key fact that it was not until Galina Skripnikova's deposition (in July 2011), and more specifically day one of her testimony,[1] that HESI discovered evidence that BP knew of the existence of this shallower hydrocarbon-bearing zone prior to the Incident, yet never disclosed that knowledge to HESI or others prior to the blowout.

HESI's original negligence cross-claim against BP included allegations that, among other things, BP failed to exercise ordinary and reasonable care in connection with its drilling design and operations, which would broadly cover BP's failure to identify and subsequently disclose the existence of M57B sands as a hydrocarbon-bearing zone pre-Incident. HESI's proposed, second amended fraud based cross-claims focus instead on BP's knowledge of the nature of the M57B zone and BP's subsequent, intentional concealment of the fact that the M57B zone was

---

[1] Not surprisingly, in its Opposition, BP cites only to Skripnikova's day 2 deposition testimony, where Skripnikova supposedly "clarified" or recanted many of the admissions made during day 1. Due to selective confidentiality designations, the key text of Skripnikova's day 1 deposition testimony cannot be publicly disclosed. However, during her day 1 deposition testimony, Skripnikova detailed her review and analysis of BP's wireline logging of the Macondo well, as well as BP's pre-Incident knowledge of hydrocarbon-bearing zones located at 17,467 feet. *See* G. Skripnikova Depo. at 206:7-25; 207:1-12, 24-25; 208:1-5; 210:9-25; 211:1-13, 18-25; 212:1-3, attached hereto as Exhibit 1, but not publicly filed.

hydrocarbon-bearing.[2]  BP's exclusionary focus in its Opposition on evidence relating to post-Incident evidence of BP's knowledge and disclosure of the M57B sands is nothing more than a veiled attempt to avoid the real issue.  At Skripnikova's deposition, HESI obtained evidence, for the first time, that BP not only negligently failed to identify and evaluate the sands in the Macondo well, but also had actual knowledge of potential hydrocarbon-bearing sands hundreds of feet higher than those disclosed during the planning of the cement job.  This evidence, newly discovered after the Court's deadline for cross-claims but while Phase One discovery was still ongoing, supports an Order from this Court granting HESI's Motion and allowing the filing of HESI's Second Amended Cross-Claim.

## THE BASIS OF HESI'S SECOND AMENDED CROSS-CLAIM

The factors a court should consider in determining whether to grant leave to amend a pleading do not include an analysis of the substantive merits of the claim.[3]  Thus, BP's focus in its Opposition on the substantive merits of HESI's Second Amended Cross-Claim, while factually incorrect or unsupported, is misplaced.  Likewise, BP's argument that HESI "cannot show 'good cause' for its late amendment because it was not diligent in investigating and bringing" the amended cross-claims is also unsupported by the factual record.  Opposition at p.1.  In fact, BP's factual and legal arguments are weakened by its own briefing.  As detailed in the Opposition, throughout discovery HESI has repeatedly sought information pertaining to the nature of the M57B sands, BP's knowledge regarding the sands, and BP's assessment of the commercial viability of this potential hydrocarbon-bearing zone.  The very discovery to which

---

[2]  BP complains of the "ten pages of new allegations" contained in HESI's Second Amended Cross-Claim.  This complaint ignores the pleading requirements of Fed. R. Civ. P. 9(b) that require a party making a fraud allegation to "state with particularity the circumstances constituting fraud or mistake."  The factual recitation of which BP complains is nothing more than HESI's effort to comply with applicable pleading rules.

[3]  *See* discussion of legal factors to consider in granting leave to amend *infra* at pp. 9-21.

BP directs the Court (as evidence of HESI's knowledge regarding these pay sands) illustrates the nefarious nature of BP's concealment.

For example, Bates Label No. BP-HZN-MBI 00126430,[4] illustrates BP's initial assessment that the shallowest hydrocarbon-bearing sand in the Macondo well was located at 17,803 feet. As Skripnikova testified, after sending this email, she came back to her office, off the rig, where more information was available and, after having several engineers look into the issue, BP determined that the shallower sand located at 17,467 indicated probable gas. *See* Depo. G. Skripnikova 211:4-25, 212:1-3. Skripnikova further specifically testified:

> Q:  So here's my question:  When was this more data available such that this analysis which caused you-all to highlight as a probable hydrocarbon zone, the one at 14,467 [sic], when was that analysis done?
>
> A:  The analysis was done the day of the incident.
>
> Q:  The day of the incident?
>
> A:  Yes.
>
> Q:  After the cement job was done, right?
>
> A:  Yes.

*Id.* at 212:4-16.

HESI first obtained evidence of BP's pre-Incident knowledge of this higher hydrocarbon-bearing sand at Skripnikova's July 7, 2011 deposition. For the first time, HESI had evidence that the M57B sands that HESI and others had suspected as containing hydrocarbons were not missed by BP. BP knew about these sands, even conducted further analysis of these sands on the very day HESI completed its cement job. Yet BP never conveyed or disclosed its knowledge until

---

[4] Attached hereto as Exhibit 2, but not publicly filed.

post-Incident, when it was too late for HESI to make any necessary changes to the cement program to address these higher sands.

Other pre-Incident and post-Incident communications BP cited provide no support for BP's allegation that HESI knew or should have known earlier of BP's pre-Incident knowledge of the shallower hydrocarbon zone. BP's reference to wireline logging data[5] likely supports HESI's negligence claim (i.e., BP should have known), but does nothing to confirm that BP actually knew of the shallower hydrocarbon zone pre-Incident. None of these documents nullifies Skripnikova's deposition testimony that BP knew, on the very day of the Incident, that a shallower hydrocarbon-bearing zone existed in the Macondo well. Likewise, the post-Incident documents cited by BP do nothing to alter the evidence, obtained for the first time in the Skripnikova deposition, that BP had pre-Incident knowledge that the M57B sands probably contained gas and other hydrocarbons. BP's post-Incident acknowledgement[6] of the existence of these hydrocarbon-bearing sands[7] is irrelevant to the pivotal question relating to HESI's Second

---

[5] *See* BP-HZN-2179MDL00002647 (communication to various parties advising of the availability of MWD/LWD logs and other wireline logs), attached hereto as Exhibit 3, but not publicly filed; BP-HZN-BLY00189101 (Wireline Logging Diary), attached hereto as Exhibit 4, but not publicly filed; and BP-HZN-2179MDL01937708 (Wireline Work Order 3/29/2010), attached hereto as Exhibit 5, but not publicly filed.

[6] *See* G. Skripnikova Depo. at 206:7-25; 207:1-12, 24-25; 208:1-5; 210:9-25; 211:1-13, 18-25; 212:1-3; *see also* BP-HZN-2179MDL00426906 (identifying sands at 17,467' as containing gas), attached hereto as Exhibit 6, but not publicly filed.

[7] *See, e.g.,* BP-HZN-2179MDL00426906 (identifying sands at 17,467' as containing gas); BP-HZN-BLY00107771 (Technical Memorandum dated May 25, 2010, wherein the M57B sand is identified as likely containing gas), attached hereto as Exhibit 7, but not publicly filed; BP-HZN-BLY00175745 (preliminary fault tree evaluation wherein notes pertaining to the M57B sand indicate that it was "identified as hydrocarbon June 2010"), attached hereto as Exhibit 8, but not publicly filed; BP-HZN-BLY00195974 (same), attached hereto as Exhibit 9, but not publicly filed; AE-HZN-2179MDL00116655 (email string dated June 25, 2010 wherein Kent Corser discusses a dynamic simulation report and requesting that sand located at 17,467', classified as gas, be incorporated into the modeling to see if the sand would start "the kick"), attached hereto as Exhibit 10, but not publicly filed; BP-HZN-2179MDL01200137 (email communication dated April 23, 2010, from Jonathan Bellow to various persons, including HESI employees, conveying request from MMS for all log data on the Macondo well), attached hereto as Exhibit 11, but not publicly filed; BP-HZN-BLY00135356 (email string from June 5, 2010 to June 16, 2010, wherein Kent Corser, in providing feedback on a CSI report draft, advised that modeling for two sands needed to be run. In Corser's email dated June 5, 2010, Corser writes, "This well does have a gas sand at 17,467'."), attached hereto as Exhibit 12, but not publicly filed.

---

**HESI'S REPLY TO BP'S OPPOSITION TO MOTION FOR LEAVE**                                    Page 5 of 23

Amended Cross-Claim: whether BP had pre-Incident knowledge of those sands that it failed to share with HESI and others. Skripnikova's testimony provides the first known support for the allegation that BP knew of the existence of the M57B sands pre-Incident, but failed to publicly disclose that information until after the blowout and explosion.

Likewise, BP's contention that HESI did not properly investigate these claims is without support. In fact, the record in this case establishes otherwise. Throughout deposition testimony, numerous BP witnesses were questioned regarding the M57B sands and the classification or determination of whether these sands were hydrocarbon-bearing. Repeatedly, witness after witness deferred to Galina Skripnikova as the person with the most knowledge on the location and classification of these zones. For example, Robert Bodek (deposed April 11 and 12), an operations geologist in BP's Gulf of Mexico exploration group testified:

> Q. Okay. Well, who was – whose job was it to determine what the zone contained, whether it contained oil, gas, or brine?
>
> A. The petrophysicist would make that determination.
>
> Q. Okay. Who would we talk to if we wanted to know the determination had been made before the casualty whether this zone with the highest pressure had gas, oil, or brine?
>
> A. Talk to the -- the project petrophysicist.
>
> Q. And I'm asking you specifically a name.
>
> A. Galina Skripnikova.

*See* Depo. of R. Bodek 438:15-25, 439:1-5, attached hereto as Exhibit 13, but not publicly filed. Likewise, Charles Bondurant (deposed August 23), an exploration geologist with BP's Eastern Gulf of Mexico team, deferred to Skripnikova, testifying that Skripnikova "would have the proper tool to analyze the full suite of data that was collected on the wellbore to analyze these zones." Depo. of C. Bondurant 216:1-18, attached hereto as Exhibit 14, but not publicly filed.

When questioned whether he would defer to Skripnikova for the assessment and determination of hydrocarbon-bearing and permeable zones in the Macondo well, Bondurant answered, "I know she was part of the Team that analyzed the open hole section with the LWD and wireline data." *Id.* at 216:10-18.[8]

Likewise, when asked to identify who was involved in BP's effort to determine the hydrocarbon-bearing zones from the well logs at the Macondo well, Graham Vinson (deposed June 23 and 24), manager of BP's Tiger Team,[9] testified, "Galine [*sic*] Skripnikova[,] ... she was ... the petrophysicist for the Macondo well." *See* Depo. of G. Vinson (6/23/11) 134:25, 135:1-9, attached hereto as Exhibit 15, but not publicly filed.  Vinson later clarified, directly testifying:

> Q.  Whose responsibility is it to identify hydrocarbon zones?
>
> MR. KEEGAN:  Objection to form.
>
> A.  It would be the responsibility of the petrophysicist for the well.
>
> Q.  And is that Galina?
>
> A.  Skripnikova.

*See* Depo. of G. Vinson (6/24/11) 53:11-18, attached hereto as Exhibit 16, but not publicly filed.[10]

Further, even the deposition testimony cited by BP as supposed evidence of HESI's prior knowledge of this issue disproves BP's own argument.  BP refers the Court to the deposition of

---

[8]  *See also* Depo. of M. Albertin 480:3-13 (taken July 13) ("After talking with Galina about her interpretation of the logs, you know, she makes the interpretation for lithology.  I'm not a petrophysicist."), attached hereto as Exhibit 17, but not publicly filed; Depo. of J. Bellow 154:17-25; 155:1-12 (taken May 2), attached hereto as Exhibit 18, but not publicly filed.

[9]  As Vinson testified, BP's Tiger Team "is a subsurface team ... responsible for providing overburden characterization to the wells group for the planning and drilling of wells." *See* Depo. of G. Vinson (6/23/11) 10:12-16.

[10]  Note, the page numbering on the second day of Graham Vinson's deposition restarts with page 1.  Therefore, to avoid confusion, citations to the deposition testimony of Graham Vinson are noted by date, as opposed to simple reference to page number.

Samuel DeFranco (taken April 12).  Opposition at p. 13, Ex. Q.  However, even a cursory review of Mr. DeFranco's deposition shows that DeFranco disclaimed any knowledge regarding the M57B sands, testifying he did not know anything about wireline logs, and that he had no "understanding as to who would have done a BP petrophysical review."  *Id.* at pp. 401-402.

Finally, BP's citation to the testimony of HESI employee Richard Vargo (deposed March 30 and 31) also fails to support BP's argument.[11]  Opposition at pp. 12-13.  Like other evidence cited by BP, Mr. Vargo's testimony does nothing more than raise the possibility that BP determined post-Incident that the M57B sands were likely hydrocarbon-bearing.[12]  In fact, Vargo's testimony specifically notes that BP claimed to have identified the shallower hydrocarbon-bearing sand in June 2010.  Exhibit P to Opposition, pp. 83-84.  While Mr. Vargo testified that he believed BP had not given HESI accurate information regarding the actual location of hydrocarbon-bearing zones (supporting a negligence claim), nothing in Vargo's testimony indicates any knowledge or belief that BP had pre-Incident knowledge of hydrocarbon zones but failed to disclose them to HESI.  *See generally, id.*  That information was revealed for the first time in the Skripnikova deposition.

---

[11]  BP also makes the baldly unsupported allegation that HESI employee Jesse Gagliano may have had access to or had pre-Incident knowledge of the shallower hydrocarbon zones.  Opposition at pp. 7-8.  Setting aside the fact that this statement is pure speculation by BP, without *any* evidentiary support, BP's motivation for including this statement appears to be nothing more than pretext, to note that Mr. Gagliano has asserted his Fifth Amendment right to not testify.  Of course, BP fails to acknowledge that at least three of its own employees, Mark Hafle, Robert Kaluza, and Brian Morel have also asserted their Fifth Amendment rights, and have refused to testify.  It is equally if not more likely that these three BP employees, a senior drilling engineer, a well site leader, and a drilling engineer respectively, could shed light on this issue, but HESI will not have the opportunity to obtain their testimony.

[12]  Likewise, BP's reference to HESI's possession of LWD data is a red herring.  As BP acknowledges, its own petrophysicist, Galina Skripnikova, relied upon the Schlumberger wireline logging data, which includes porosity and crossover data, in determining the presence of hydrocarbons.  Opposition at p. 5.  The LWD data, while including gamma ray intensity and resistivity information, does not include the additional information necessary for determining the presence of a hydrocarbon zone.  *See* Depo. of V. Emanuel 149:4-22 (taken September 27, 2011), attached hereto as Exhibit 19, but not publicly filed.  Therefore, HESI's possession of LWD data did nothing to alter the fact that HESI did not know that BP determined pre-Incident that the M57B sands were hydrocarbon-bearing.

Thus, BP personnel, members of BP's Tiger Team, and other subsurface employees were unable to testify regarding the identification of hydrocarbon-bearing zones in the Macondo well. Indeed, each of these witnesses deferred to Galina Skripnikova.  It is not surprising that these other BP witnesses were unable to testify as to BP's pre-Incident knowledge.   Even BP acknowledges that Skripnikova was the person charged with this responsibility prior to the Incident.  Opp. at p. 7.  Skripnikova evaluated the wireline logs, analyzed the other subsurface data and "mapped" or identified the various zones, including M57B, in the Macondo well.  She was the person to whom BP turned when seeking to identify the shallowest hydrocarbon zone for planning the cement job.  Thus, it wasn't until Skripnikova's deposition that HESI could have learned the true nature of BP's pre-Incident knowledge regarding the identification and location of these hydrocarbon-bearing zones.  Any contention that HESI failed to properly and timely investigate its Second Amended Cross-Claim is baseless.

## ARGUMENT AND AUTHORITIES

HESI's Motion satisfies all requirements for an amended pleading under Fed. R. Civ. P. 15 and 16.  Therefore, this Court should grant HESI's Motion and allow the filing of HESI's Second Amended Cross-Claim.

## I.    LEAVE TO AMEND IS PROPER UNDER FED. R. CIV. P. 16.

BP initially and incorrectly contends that HESI's Motion should be denied because HESI cannot meet its burden of proof under Fed. R. Civ. P. 16.  Opp. at pp. 14-18.  It is important to note from the outset that Rule 16 is only applicable when a scheduling order has been entered. Fed. R. Civ. P. 16(b); *see also Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).  As noted originally in HESI's Motion, this Court's Stipulated Order Governing Deadlines in Connection with Petitioners' Rule 14(c) Third-Party Complaint and Certain Bundle

C Pleadings (Doc. No. 1730) provides a May 20, 2011 deadline for filing "[a]ll Cross-claims by 14(c) Third-Party Defendants (including the United States Government) against any other 14(c) Third Party Defendant (except for the United States Government against which cross-claims are due on 4/20/11)." However, the Court's Order also specifically notes that <u>this deadline is only applicable to the Limitation Action.</u> *See* (Doc. No. 1730-1). There is no Rule 16 scheduling order deadline governing the filing of cross-claims in cases pending in the MDL proceeding. Thus, BP's "timeliness" arguments are inapplicable and irrelevant to HESI's Motion as it is related to the MDL proceedings. Further, although the nature of these proceedings may require analysis under both Rules 15 and 16, HESI meets the standard required by either rule, and HESI's Motion should be granted.

In order to meet its burden under Rule 16(b), HESI need only show "good cause" and obtain leave of court. Fed. R. Civ. P. 16 (b).[13] Four factors guide this Court's determination of whether good cause exists under Rule 16(b): (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

Initially, regarding the explanation for the timing of HESI's proposed amendment, as discussed *supra*, despite repeated inquiry of multiple BP deponents, <u>the only witness who has</u>

---

[13] In its Opposition, BP cites to the Southern District of Texas district court opinion in *In re Enron Corp.*, 610 F. Supp. 2d 600, 652-54 (S.D. Tex. 2009) for the proposition that to meet its burden under Rule 16, HESI must prove that it could not have brought its amended claims by the existing deadline, despite exercising diligence, and that this requirement is "particularly important in complex multidistrict litigation cases." BP's reliance on *In re Enron* is surprising because that case is factually distinguishable. In *Enron*, six years had passed since initiation of the original action, "far outside the controlling scheduling order" and discovery had closed years prior to leave to amend was sought. *In re Enron Corp.*, 610 F. Supp. 2d at 210-12. Moreover, in *Enron*, the Southern District of Texas reiterated Fifth Circuit precedent (in considering the alternative applicability of Rule 15) that the "mere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial." *Id.* at 210-11 (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

testified regarding BP's pre-Incident identification, location, and knowledge of the hydrocarbon zones in the Macondo well is Galina Skripnikova. *See* Depo. of G. Skripnikova 211:4-25, 212:1-3, 212:4-16; Depo. of R. Bodek 438:15-25, 439:1-5; Depo. of C. Bondurant 216:1-18; Depo. of G. Vinson (6/23/11) 134:25, 135:1-9; Depo. of G. Vinson (6/24/11) 53:11-18.  Thus, it was not until Skripnikova's deposition that HESI could obtain the necessary information regarding the true nature and extent of BP's pre-Incident knowledge of these zones.  Further, it is worthy of note that while the Court set a May 20 deadline for filing of cross-claims in the Limitation Action, that deadline occurred while the parties were still actively involved in discovery of the facts of this case.  Indeed, Phase One liability discovery is still ongoing.  Thus, this is not a case in which HESI fully discovered the case and failed to timely amend its claims.[14]  Instead, this is a case in which HESI actively pursued discovery, and sought to amend its claims once it had a factual basis for those claims.  In short, HESI has provided a more than adequate explanation for any delay in amending its claims past the Court's May 20, 2011 deadline in the Limitation Action.

Second, the importance of HESI's proposed, Second Amended Cross-Claims is great. Throughout the course of discovery regarding this issue, HESI focused upon BP's negligence in failing to identify the M57B sands as hydrocarbon-bearing and in failing to properly evaluate the Macondo well during its planning stages.  BP's document production included documents purporting to indicate that BP identified the M57B zone as hydrocarbon-bearing post-Incident, in June 2010 (supporting a negligence claim that BP failed to properly evaluate and locate all of the

---

[14]  BP's reliance on *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458 (5th Cir. 2009) is misplaced.  In *Marathon*, the Fifth Circuit affirmed the district court's decision to deny leave to amend because the proposed amendment reasserted claims that the district court had dismissed more than two years earlier, and came 22 months after the expiration of the pleading deadline and six weeks before trial.  *Id.* at 470-71.  These facts are clearly inapplicable to HESI's Motion.

hydrocarbon-bearing zones during the pre-Incident, planning of the Macondo well). The deposition testimony of Galina Skripnikova altered that focus, called into question BP's prior assertions, and changed the nature of BP's alleged conduct in failing to disclose the existence of the shallower hydrocarbon-bearing zone.

Specifically, Skripnikova testified that BP had pre-Incident knowledge that the M57B zone was hydrocarbon-bearing. Depo. G. Skripnikova 212:4-16. BP's pre-Incident knowledge of the M57B hydrocarbon zone changes the focus of HESI's allegations from BP's negligence to BP's fraud. This is especially true in this case because, as set out in HESI's Second Amended Cross-Claims, empirical evidence shows that had HESI known of this shallower hydrocarbon zone, its own cementing analysis would have foreclosed allowing the production casing cement job to proceed without changes, including, most likely, changes to BP's casing design. In short, the disclosure of the M57B sands as a shallower hydrocarbon-bearing zone was critical to the development of a proper cement plan in order for the "TOC" or top of cement to be properly placed in accordance with MMS regulations. BP's intentional actions in failing to disclose its pre-Incident knowledge of the M57B hydrocarbon zone prevented HESI from designing the cement job most appropriate for the production casing at the Macondo well. In the absence of the proposed amended cross-claims, BP's fraudulent actions will not be considered during Phase One of the trial.

A third factor courts examine in determining whether good cause exists to allow a pleading amendment is the potential prejudice resulting from the amendment. *Southwestern Bell Tel. Co.*, 346 F.3d at 546. In its Opposition, BP argues "permitting [HESI] to litigate its ... fraud claims ... will require modification of the Case Management Order (Dkt. 1506-1) to allow for significant additional Phase 1 fact discovery." BP's Opposition, p. 14. BP further inflates the

issue by detailing discovery it would purportedly need in order to respond to these claims.  *Id.*

Specifically, BP contends that that it would need discovery regarding:

- The data to which HESI had access to [sic] before the Incident;

- The discussions between HESI and BP concerning the location of the top hydrocarbon interval;

- The materials received by HESI during the relief well efforts;

- HESI's post-Incident analysis of the data it received before the Incident, during the relief well operations, and during litigation;

- When HESI knew or had reason to know of the alleged basis for its claims;

- Whether HESI directly notified investigative bodies of the concealed hydrocarbon zones;

- Whether any facts or evidence exist to support HESI's contention that BP deliberately made knowingly false representations concerning the location of hydrocarbon zones in the Macondo well;

- The extent of any damages HESI has suffered as a result of the allegations it claims; and

- The intent of each person allegedly involved in the concealment of material information regarding hydrocarbon zones.

*See* Opposition at pp. 14-15.

BP's alleged need for additional discovery is nothing more than a diversionary attempt to thwart the rules of procedure and avoid further review of the true nature of BP's fraudulent and tortious actions concerning the Macondo well.  BP has already produced, and continues to produce,[15] the necessary documentation and witnesses to support HESI's amended claims.  In fact, BP discusses and relies upon various documentation and testimony in its Opposition that it

---

[15]  In fact, since the filing of HESI's Motion, the parties have taken the depositions of Stuart Lacy (BP – taken September 23) and Victor Emanuel (Schlumberger – taken September 27, 2011), both of which bear directly on the issues addressed in HESI's Second Amended Cross-Claim.  While his transcript is not yet final, Mr. Emanuel testified that the Schlumberger logs available to BP prior to the Incident showed that the M57B sands were potentially hydrocarbon-bearing, and also flagged them as "net pay sands." *See* Depo. of V. Emanuel 159:5-15; 163:11-19; 167:21–25; 168:1, attached hereto as Exhibit 19, but not publicly filed.

alleges establishes HESI's pre-Incident knowledge regarding the M57B sands.  BP also attaches and relies upon dozens of pages of documents indicating that the wireline logs and other well data were provided to HESI, post-Incident, and alleges there is no evidence that BP concealed any information regarding the M57B sands pre-Incident.  The theory that BP was negligent in failing to disclose the true hydrocarbon-bearing nature of the M57B sands is not a new theory and, in fact, is one that has been consistently developed by HESI, the Plaintiffs' Steering Committee, and other parties.  In addition, information and materials HESI received during the relief well efforts or those produced to investigative bodies are irrelevant to the issue of whether BP had pre-Incident knowledge of the true nature of the M57B sands.  So too is information related to HESI's damages.  No evidence of damages by any party (Plaintiff or cross-Defendant) is included in Phase One of trial.

The only relevant difference between HESI's existing negligence claims and its proposed fraud claims is BP's pre-Incident knowledge and its intent in failing to disclose that knowledge. Regarding pre-Incident knowledge, as noted previously, according to several BP employees, the most knowledgeable BP employee regarding the M57B sands is Galina Skripnikova, and her testimony speaks for itself.  Regarding intent, and BP's alleged need for discovery regarding "the intent of each person involved in the concealment" of the M57B zones, case law is clear.  Intent to deceive may be proven by circumstantial evidence. *Su v. M/V S. Aster*, 978 F.2d 462, 472 (9th Cir. Or. 1992); *Putnam Resources v. Pateman*, 958 F.2d 448, 459 (1st Cir. 1992)(citing *American Comm'n Ass'n v. Douds*, 339 U.S. 382 (1950)).  Indeed, intent to defraud is generally not susceptible to direct proof.  *Coffel v. Stryker Corp*., 284 F.3d 625, 634 (5th Cir. 2002). Therefore, no further discovery is necessary for HESI's amended fraud claims.  Likewise, no

continuance of this Court's trial setting is necessary based upon HESI's proposed pleading amendment.

Finally, there is no merit to BP's warning that if HESI's amendment is allowed, BP "would need to amend its own pleadings to assert additional claims against other parties" and "other MDL 2179 parties would also move to amend their own pleadings and seek additional discovery." BP provides no explanation or justification, because there is none, for why HESI's amendment of it cross-claims to address BP's intentional, fraudulent concealment would necessitate BP to assert new, affirmative claims against any other party. Nor is it clear how a claim directed at BP, for its individual fraudulent actions, would necessitate other MDL 2179 parties to assert new affirmative claims or seek new, additional discovery. BP has failed to show that allowing HESI's proposed amendment would result in prejudice to any party.

In short, BP's concerns of disruption, delay and waste are nothing more than a baseless threat in light of existing discovery and the nature of the proposed, amended claims. BP will suffer no prejudice as a result of HESI's Second Amended Cross-Claims, except to the extent that being required to answer for its tortious actions and non-disclosure of critical information is prejudicial. Moreover, no continuance of the February 2012 trial is necessary. The mere passage of a few months since the May 20 deadline in the Limitation Action, while Phase One discovery was actively continuing, does not support denial of HESI's Motion. The timing of HESI's proposed amendment relates to the timing of the deposition of Galina Skripnikova, the one witness with the requisite knowledge regarding BP's knowledge relating to the hydrocarbon-bearing nature of the M57B sands, and not to any undue delay or lack of diligence by HESI. Scheduling issues in a case of this size, with the compacted deposition schedule undertaken thus

far, should not foreclose HESI from bringing its amended claims, particularly in light of the nature of the claims at issue.

## II.    LEAVE TO AMEND IS PROPER UNDER FED. R. CIV. P. 15.

Rule 15(a)(2) provides that outside certain circumstances, a party may amend its pleading only with the other party's consent or with leave of court. However, the Rule also provides that "[t]he court should freely give leave when justice so requires." Because of the liberal pleading presumption underlying Rule 15(a), courts have acknowledged that a court's discretion in this context "may be misleading because Fed. R. Civ. P. 15(a) evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). As a result, absent a "substantial reason" such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, "the discretion of the district court is not broad enough to permit denial." *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

As discussed *supra*, the timing of HESI's Second Amended Cross-Claims is not the result of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies.[16] Rather, the timing of HESI's proposed, amended claims is the result of deposition scheduling and the nature of Galina Skripnikova's testimony. HESI has acted in good faith in discovering the facts of this case, and sought to bring its fraud claims only after it discovered evidence to support those claims.

---

[16] BP can take no comfort in the cases of *Love v. Ford Motor Co.*, 212 Fed. Appx. 292 (5th Cir. 2006), and *S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533 (5th Cir. 2003). As even BP acknowledges, those cases upheld the district court's denial of leave to amend based upon the amending party's failure to offer any reason for the timing of the amendment coming after the pleading deadline. Opp. at p. 18; *see also Love*, 212 Fed. Appx. at 295; *S&W*, 315 F.3d at 535.

**HESI'S REPLY TO BP'S OPPOSITION TO MOTION FOR LEAVE**

1751803 v1-24010/0002 PLEADINGS

Moreover, as also noted previously, the fraud claims HESI seeks leave to assert are, in large part, based upon facts that also support HESI's negligence claims against BP. It is only the nature of BP's conduct, as discovered during the Skripnikova deposition, that distinguishes HESI's fraud claims from its existing negligence claims. This point is important because courts analyzing the propriety of granting a motion for leave to amend must not only examine the timeliness of the proposed amendment but also whether the proposed amendment will fundamentally alter the case. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997). Specifically, courts must determine whether the proposed amendment (1) merely proposes alternative legal theories for recovery based upon the same underlying facts or whether (2) the amendment would "fundamentally alter the nature of the case." *See id.* at 246 n.2. HESI's proposed amended cross-claim is based upon testimony and discovery already conducted in this litigation.[17] While the focus of the claims has changed from BP's failure to properly classify the M57B zone as hydrocarbon-bearing to intentionally concealing knowledge regarding the zone, the amendment of HESI's cross-claims will not fundamentally alter the nature of this case.

In its Opposition, BP relies upon the Fifth Circuit decision in *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005) for the proposition that "when there is sufficient evidence in the record to allege a claim, a delay may be undue even if direct evidence is not discoverable at an earlier date." Opposition at p. 19. Initially, HESI notes that the Fifth Circuit

---

[17] BP's citation to *Southmark Corp. v. Schultz Roth & Zabel*, 88 F.3d 311 (5th Cir. 1996), for the proposition that leave to amend is properly denied when the amended pleading is based on facts known when the prior pleading was filed, is without merit in the consideration of HESI's Motion. In *Southmark*, the Fifth Circuit noted that the amending party "sought leave to add both a fact of which it had been aware since before it filed its original complaint and a cause of action based on the identical, known facts that underlie its original complaint." *Id.* at 316. Unlike *Southmark*, HESI Motion is based upon a central fact not known until the Skripnikova deposition that gives rise to an additional and separate cause of action based upon the nature of BP's conduct.

did not make the holding in *Jones* that BP ascribes to it. [18] *Id.* Further, BP's reliance on *Jones* is misplaced.

In *Jones*, the plaintiff sought to amend his complaint to assert a claim for retaliation, eight months after the expiration of the established deadline, which had been extended twice. *Jones*, 427 F.3d at 995. The plaintiff in *Jones* had repeatedly sought and was refused employment by Defendant for years. After obtaining a right to sue letter from the EEOC, Plaintiff filed suit alleging race discrimination. *Id.* at 991. A year after filing suit, Plaintiff sought leave to amend, to allege a new claim for retaliation. *Id.* Plaintiff claimed that direct evidence of his proposed retaliation claim was not revealed until the deposition of one of Defendant's employees. *Id.* at 994. In denying Plaintiff's motion for leave, the district court reasoned that nine years had passed since Plaintiff's initial accusation of discrimination, one year since suit was filed, and eight months after the applicable deadline had expired. *Id.* Affirming the district court's decision, the Fifth Circuit reasoned that although Plaintiff "did not have direct evidence of retaliation flowing from his 1995 complaint until [the] deposition, prior to [the] deposition and the amendment deadline, there was sufficient evidence in the record to establish a prima facie case of retaliation based upon [Plaintiff's] filing of an EEOC charge." *Id.* at 995.

*Jones* is inapplicable in this case. The document production and testimony prior to the Skripnikova deposition purported to indicate that BP did not have knowledge of his hydrocarbon-bearing sand until after the blowout and explosion. Unlike the plaintiff in *Jones*, HESI had no evidence of BP's pre-Incident knowledge of the fact that the M57B sands were hydrocarbon-bearing (necessary to support a fraud claim) until the Skripnikova deposition. Prior

---

[18] In fact, the Fifth Circuit based its ruling upon the fact that there was prior evidence in the record that would have supported the amended claim at an earlier date. *See generally*, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005).

to that testimony, HESI did not have an evidentiary basis to meet the heightened pleading standard for its fraud claim, thus distinguishing *Jones* from this proceeding.

There is no evidence that the timing of HESI's Second Amended Cross-Claims results from undue delay, bad faith, or dilatory motive. Nor is there any evidence of repeated failures to cure deficiencies. The filing of HESI's proposed, amended cross-claims is the first amendment sought since the pleading deadline, and is based upon a demonstrable discovery of new evidence that occurred after this Court's cross-claim deadline in the Limitation Action. Therefore, this Court should grant HESI's Motion.

As a final matter, analysis of a pleading amendment under Rule 15 requires that a court examine, in determining whether a "substantial reason" exists to deny a motion for leave to amend, whether the opposing party will suffer undue prejudice. *Martin's Herend Imports, Inc.,* 195 F.3d at 770. BP contends that it will be prejudiced by HESI's Second Amended Cross-Claim because: (1) BP will not have an opportunity to investigate HESI's claims because discovery deadlines have passed; (2) BP may need to amend its cross-claim to include new claims against other parties; and (3) BP would need to prepare a trial defense to the newly amended claims on short notice. *See* Opposition at p. 20. HESI addressed BP's first two claims of alleged prejudice *supra*. Neither of these purported allegations of prejudice are supported by the evidence or the nature of the proposed amendment, and neither supports denial of HESI's Motion.

In a final attempt to put forward a substantial reason for denial of HESI's Motion, BP contends that it will be prejudiced if this Court grants HESI's Motion because it will be forced to re-open discovery and prepare a defense to a new claim. In making this argument, BP relies upon the Fifth Circuit decisions in *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 427

(5th Cir. 2004) and *Smith v. EMC Corp.*, 393 F.3d 590, 594 (5th Cir. 2004).  Opposition at p. 20. However, neither *Mayeaux* nor *EMC Corp.* supports such a broad argument.  Indeed, if the rulings in *Mayeaux* or *EMC Corp.* were so broad, no amended pleading asserting a new claim would ever be proper because most, if not all, such amendments require the defendant to prepare a defense to the new claim.

In *Mayeaux*, the Fifth Circuit affirmed the district court's denial of leave to amend because the proposed amendment was "an unabashed attempt to avoid ERISA preemption and defeat federal court jurisdiction" and "essentially pleaded a fundamentally different case with new causes of action and different parties."  376 F.3d at 427.  Importantly, the *Mayeaux* Court distinguished the amendment sought in that case from one "merely proposing alternative legal theories for recovery on the same underlying facts," stating that "[a]mendments that fall into . . . [same underlying facts] category generally should be permitted, as they advance Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities."  *Id.*

Likewise, *EMC Corp.* is factually distinguishable.  In *EMC*, the Fifth Circuit affirmed a district court ruling disallowing a pleading amendment offered four days after trial had begun. 393 F.3d at 594.  Citing to *Mayeaux*, the *EMC* Court affirmed the district court's ruling based upon the fact that the evidence submitted through that time at trial did not support a fraud claim, and allowing the amendment would have required the parties, who were already in trial, "to reopen discovery and prepare additional theories of the case."  *Id.* at 596.

Unlike *Mayeaux*, HESI's proposed amended claims fall into the category of an amendment based on the same basic underlying facts, which amendments should generally be permitted.  Unlike *EMC*, HESI has not delayed until trial has begun to allege a new cause of action that would require the parties to prepare a new theory of the case.  Here, HESI's fraud

claims are based almost entirely on a portion of the same underlying facts that support its negligence claim against BP, and the amended claims share significant commonality with a negligence theory that has been developed through discovery by HESI and other parties. BP's existing denials, affirmative defenses, and trial strategy will not fundamentally change should this Court grant HESI's Motion. BP will not have to prepare a defense fundamentally different than that already taken thus far. While HESI's allegations regarding the nature of BP's conduct may have changed, the basic nature and substance of the claims have not. HESI has established good cause for allowing its requested amendment under Fed. R. Civ. P. 15, and this Court should grant HESI's Motion.

## CONCLUSION

For these reasons, Halliburton Energy Services, Inc. respectfully requests the Court to grant it leave to file its Second Amended Cross-Claim, and for the Court to deem HESI's Second Amended Cross-Claims filed as of the date of filing its Motion for Leave, and for such other and further relief the Court may deem it justly entitled.

Dated: September 29, 2011.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**  /s/  *Donald E. Godwin*

Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Halliburton Energy Services, Inc.'s Motion for Leave to file Counterclaim was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 29th day of September, 2011.

/s/ Donald E. Godwin
Donald E. Godwin