UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG, "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * MDL NO. 2179 <br> * <br> * SECTION: J <br> * |
| Relates to:  No. 10-2771 | * <br> * JUDGE BARBIER <br> * <br> * MAG. JUDGE SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING THE ALLEGED FAULT OF NON-PARTIES AND/OR IMMUNE PARTIES (INCLUDING THE UNITED STATES)

Claimants-in-Limitation respectfully submit the following Memorandum in Support of Plaintiffs' Motion *in Limine* to Exclude Evidence of the Alleged Fault of Non-Parties and/or Immune Parties (including the United States of America):

**MAY IT PLEASE THE COURT:**

Because federal maritime law embraces principles of joint and several liability, the Court does not allocate the fault of a non-party, immune party, or insolvent party. Hence, the alleged "fault" (if any) of the United States, or any other non-party or immune party, is not legally relevant to this litigation, and should be excluded at trial.[1]

---

[1] *Ebanks v. Great Lakes Dredge & Dock Co.,* 688 F.2d 716, 722 (11th Cir. 1982); *see also, e.g., Cimino v. Raymark Industries, Inc.,* 151 F.3d 297, 327 (5th Cir. 1998); *Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129, 1140-1141 (5th Cir. 1985).

## I. THE FAULT OF NON-PARTY OR IMMUNE PARTY IS NOT LEGALLY RELEVANT UNDER MARITIME LAW

General maritime law imposes joint and several liability upon joint tortfeasors.[2] Joint and several liability renders each of two or more defendants, whose tortious conduct was a substantial cause of an indivisible harm to an injured party, liable to the injured party for the entire harm.[3] A maritime plaintiff obtaining a judgment against more than one concurrent tortfeasor has the right "to sue . . . all the wrong-doers, or any one of them, at his election."[4] One of the primary justifications for joint and several liability is the concern that the innocent plaintiff receive full recovery of his damages.[5] Thus, a joint tortfeasor is not relieved from liability, nor are his damages diminished, because another tortfeasor's negligence also caused the injury.[6]

Because federal maritime law applies principles of joint and several liability, the Court does not allocate the fault of a non-party, immune party, or insolvent party. *Ebanks v. Great Lakes Dredge & Dock Co.,* 688 F.2d 716, 722 (11th Cir. 1982) (holding that it was error for the trial court to distract the jury's attention by requiring it to allocate the degree of fault between the defendant and a non-party); *see also, Cimino v. Raymark Industries, Inc.,* 151 F.3d 297 (5th Cir. 1998) (noting that insolvent party's comparative causation share could not be presented to the jury); *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1140-1141 (5th Cir. 1985) (affirming trial court's grant of plaintiffs' motion *in limine* to preclude any evidence of the fault

---

[2] *See, e.g., Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1125 (5th Cir 1995); *Simeon v. T. Smith & Son, Inc*., 852 F.2d 1421, 1428 (5th Cir. 1988).

[3] *See, e.g.*, *Edmonds,* 443 U.S. at 260 n.8; Restatement (Second) of Torts §§ 433A, 875, and 879 (1979); T. COOLEY, LAW OF TORTS 142-144 (1879); W. PROSSER, LAW OF TORTS § 47, pp. 297-299, and § 52, pp. 314-315 (4th ed. 1971).

[4] *Atlas,* 93 U.S. 302, 315 (1876); Restatement (Second) of Torts § 886.

[5] *Coats v. Penrod Drilling*, *supra,* 61 F.3d at 1125 (explaining that "this consideration has apparently taken on an elevated significance in maritime law because of special concerns unique to the admiralty, especially its role as "protector of seamen").

[6] *See Edmonds,* 443 U.S. at 260 n.8; *see also* Restatement (Second) of Torts § 879, Comment a ("One whose tortious conduct is otherwise one of the legal causes of an injurious result is not relieved from liability for the entire harm by the fact that the tortious act of another responsible person contributes to the result. Nor are the damages against him diminished").

of two co-defendants who were immune from liability as the result of their filing bankruptcy subsequent to plaintiffs' filing the lawsuit).[7]

While the defendants may enjoy a general right of contribution and indemnity between and among joint tortfeasors,[8] there are two important exceptions to this rule.[9] First, the Supreme Court has "clearly establish[ed] the rule that there can be no third-party suit against a joint tortfeasor where the tortfeasor has statutory immunity from the first-party plaintiff."[10] Second, where "the one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution" to another defendant.[11] Thus, it is an established principle of general maritime law that "contribution and indemnity are available only if joint tortfeasors share a common liability to the plaintiff."[12]

In this case, the United States (and perhaps other immune parties and/or non-parties) does not share a common liability to Plaintiffs because it is immune from suit by Plaintiffs and third party claimants. The Restatement (Second) of Torts instructs that an immune party's "defense cannot be circumvented by the plaintiff's recovery against another tortfeasor, followed by a suit for contribution."[13] Therefore, evidence regarding the United States' alleged "fault" for any matter or event in this litigation is irrelevant and inadmissible.

---

[7] While the *Cimino* and *Gideon* opinions were decided under Texas law, they are premised on the application of joint and several liability, and hence would be equally applicable under general maritime law.

[8] *See Edmonds*, 443 U.S. at 260 n.8 (citing Restatement (Second) of Torts § 886A).

[9] *See N. & S. Am. Shipping v. United States*, 352 F. Supp. 2d 734, 743-744 (E.D. La. 2005) (citing *Eagle-Picher Indus., Inc. v. United States GAF Corp*. 937 F.2d 625, 635 (D.C. Cir. 1991)).

[10] *N. & S. Am. Shipping v. United States*, 352 F. Supp. 2d 734, 743-744 (E.D. La. 2005) (citing *In re McAllister Towing & Transp. Co*., 2004 U.S. Dist. LEXIS 18156, * 14-15 (E.D. Pa. 2004)); *see also* Restatement (Second) of Torts § 880. These exceptions were first recognized by the Supreme Court in the following cases: *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp*. 342 U.S. 282 (1952) and *Cooper Stevedoring Co. v. Fritz Kopke, Inc*., 417 U.S. 106 (1974).

[11] Restatement (Second) of Torts § 866A, Comment g ("[the non-liable party's] defense cannot be circumvented by the plaintiff's recovery against another tortfeasor, followed by a suit for contribution").

[12] *N. & S. Am. Shipping, supra,* 352 F. Supp. 2d at 743-744 (citing *Walls Indus., Inc. v. United States*, 958 F.2d 69, 71 (5th Cir. 1992)); *see also Simeon v. T. Smith & Son, Inc*., 852 F.2d 1421, 1428 (5th Cir. 1988).

[13] Restatement (Second) of Torts § 886A.

**II.    THE US CANNOT BE LEGALLY AT "FAULT" FOR THE LOSS OF WELL-CONTROL EITHER ON APRIL 20, 2010 OR DURING THE POST-SPILL EFFORT TO CAP AND CONTAIN**

At the time of the *Deepwater Horizon* incident, the offshore drilling industry was subject to regulation by the MMS. The MMS promulgated federal drilling-related regulations applicable to private businesses operating on the OCS.[14] The MMS regulated the oil drilling industry by requiring private businesses to submit applications, requests, notices, and/or supplemental information for agency approval prior to engaging in drilling activities on the OCS.[15]

The MMS regulations expressly confirm that private oil drilling companies are responsible, at all times, for protecting health, safety, property, and the environment from hazards arising from oil drilling and related activities.[16] This includes the responsibility to perform all operations in a safe manner and to use the best available and safest technology.[17] In addition, private operators are responsible for taking all necessary precautions to keep their wells under control at all times, including taking steps necessary to maintain equipment and materials to ensure the safety and protection of personnel, equipment, natural resources, and the environment.[18]

There is nothing within the Outer-Continental Shelf Lands Act, the Clean Water Act, the Oil Pollution Act of 1990, or any other statutory regime to indicate that the MMS can be held legally responsible for any acts or omissions in approving drilling practices, or that companies such as BP are relieved from legal responsibility based on the approval of drilling permits, applications, or plans, by MMS.

---

[14] *See* 30 C.F.R. Part 250, entitled "Oil and Gas and Sulphur Operations in the Outer Continental Shelf."
[15] 30 C.F.R. § 250.102.
[16] 30 C.F.R. § 250.107.
[17] *Id.*
[18] 30 C.F.R. §§ 250.400, 250.401.

Indeed, the "responsible party" is strictly liable for defined economic losses under OPA, and the Clean Water Act specifically provides that BP remains legally responsible for all post-spill activities, even if it disagrees with or objects to the (arguably "negligent") decisions of Incident Command. *See* 33 U.S.C. §1321(c)(4)(B)(i) (exemption from liability in connection with acts and omissions performed in conjunction with National Contingency Plan does not apply to responsible party).[19]

With respect to the United States, an action may be brought against the U.S. only to the extent that the Government waives its sovereign immunity by consenting to be sued.[20] If the allegations against the U.S. lie under the Court's admiralty jurisdiction, these claims may be brought pursuant to the Suits in Admiralty Act (the "SIAA").[21] Otherwise, the claims must be brought under the Federal Torts Claims Act (the "FTCA").[22] These statutes do not create a cause of action, but merely serve as a vehicle for subjecting the United States to liability as if it were a private person.

In this particular case, the United States cannot be liable under either the SIAA or the FTCA, because the presumptive alleged "fault" for "negligent Regulation" has no private party analogue. *See, e.g.*, *American Cargo Transp., Inc. v. United States*, 625 F.3d 1176 (9th Cir. 2010) (admiralty) (holding that the U.S. was not liable because a private party could not be found liable for violating federal cargo preference regulations under general maritime law); *Central Airlines, Inc. v. United States*, 169 F.3d 1174 (8th Cir. 1999) (non-admiralty) (no state law

---

[19] *See also,* 33 U.S.C. §1321(c)(4)(B)(iv) (exemption from liability not available to party for gross negligence or willful misconduct); *and,* 33 U.S.C. §1321(c)(4)(B)(iii) (exemption does not apply to claims for personal injury). *See also,* 33 U.S.C. §1321(j)(8) (U.S. not liable).

[20] *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987) ("The doctrine of sovereign immunity is inherent in our constitutional structure and . . . renders the United States [and] its departments . . . immune from suit except as the United States has consented to be sued.").

[21] 46 U.S.C. §§ 30901-30918.

[22] 28 U.S.C. §§ 1346(b)(1) and 2674.

private party liability analogue for federal agency's erroneous regulatory enforcement actions); *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995) (non-admiralty) (the United States cannot be found liable unless a private entity would owe a duty under state law); *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994) ("where a governmental actor merely fails to ensure a private party's compliance with federal safety regulations, no comparable state law liability exists, and therefore, sovereign immunity is not waived under the FTCA"); *see also, e.g., Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506 (D.C. Cir. 2009) (under OPA); *United States v. Smith*, 324 F.2d 622, 624-625 (5th Cir. 1963).  Essentially, any argument by the defendants that MMS somehow erred in the regulation and permitting of the *Deepwater Horizon* and/or the Macondo Well is barred since private parties don't issue permits or regulate offshore gas and oil production.  While states can and do have permitting and regulatory authority over certain wells within their jurisdiction, the Supreme Court has held that a duty can't be based on state law responsibility, but, instead, must be predicated solely on actions that could be undertaken by "private" parties.  *United States v. Olson*, 546 U.S. 43, 126 S.Ct. 510 (2005) (courts must look to the liability of a private person, not to a state or municipal entity, in determining if the United States' sovereign immunity has been waived under the private party analogue requirement); *see also, e.g., McPherson v. Union Oil Co. of Cal.*, 628 F. Supp. 265 (S.D. Tex. 1985) (the U.S. has no duty under general maritime law to promulgate or enforce federal regulations).

       Moreover, with respect to post-spill acts and omissions, the Clean Water Act expressly exempts the United States from any liability. *See* 33 U.S.C. §1321(j)(8).[23]

---

[23] *See also,* 33 U.S.C. §1321(c)(4)(B) (responsible parties, grossly negligent parties remain liable;  parties at fault remain liable for personal injuries).

Finally, under the "discretionary function exception," the waiver of sovereign immunity will not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.[24]

The purpose of the discretionary function exception is to eliminate the possibility of suit for any act that involves "an element of judgment or choice" on the part of a government agency or employee.[25] Grounded in the Separation of Powers Doctrine, this exception "prevent[s] judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."[26] Congress, in this regard, took "steps to protect the Government from liability that would seriously handicap efficient government operations."[27] In *MS Tabea Schiffahrtsgesellschaft*, for example, damages were sustained by the M/V MSC TURCHIA when it grounded and allided with the Napolean Avenue Wharf in the Port of New Orleans.[28] The dock owner and the Board of Commissioners of the Port of New Orleans sued the United States, alleging that the Corps became duty-bound to dredge and maintain navigability in the river once the Corps granted the Board a permit and the Board financed the initial dredging project.[29] The Fifth Circuit held that the Board's failure-to-dredge claims against the U.S. were barred, as a matter of law, by the discretionary function exception because the Corps was exercising discretionary judgments when deciding where and when to

---

[24] 28 U.S.C. § 2680(a); *see also, Baldassaro v. United States*, 64 F.3d 206, 208 (5th Cir. 1995) (finding that the discretionary function exception applies in SIAA cases even though it is not expressly referenced in the SIAA).
[25] *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs*, 636 F.3d 161, 165 (5th Cir. 2011) (citing *United States v. Gaubert,* 499 U.S. 315, 322 (1991)) (citation omitted).
[26] *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (Varig Airlines), 467 U.S. 797, 814 (1984).
[27] *Id.* (citing *United States v. Muniz*, 374 U.S. 150, 163 (1950)).
[28] *MS Tabea Schiffahrtsgesellschaft, supra,* 636 F.3d at 163.
[29] *Id.*

dredge, and the fact that the Corps issued a permit to the Board did not render the Corps' judgments non-discretionary.[30]

Whether evaluated in the admiralty or FTCA context, the U.S. is immune from suit brought by Plaintiffs and by third-party claimants such as Transcoean and/or BP. Accordingly, evidence regarding the U.S.'s alleged "fault" is clearly irrelevant and inadmissible.

## CONCLUSION

For the above and foregoing reasons, evidence regarding the alleged "fault" of any non-party or immune party, including the United States, is legally irrelevant and inadmissible at trial.[31]

This 30th day of September, 2011.

Respectfully submitted,

 /s/ Stephen J. Herman                         /s/ James Parkerson Roy
**Stephen J. Herman**, La. Bar No. 23129      **James Parkerson Roy**, La. Bar No. 11511
**HERMAN HERMAN KATZ & COTLAR LLP**           **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
820 O'Keefe Avenue                             556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113                   Lafayette, Louisiana 70501
Telephone: (504) 581-4892                      Telephone: (337) 233-3033
Fax No. (504) 569-6024                         Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                       E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*                   *Plaintiffs Liaison Counsel*

---

[30]*Id.* at 163 (citing *Canadian Pac. Ltd. v. United States,* 534 F.2d 1165, 1171 (5th Cir. 1976)).
[31]Fed. R. Evid. 401, 402.

## **PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgreenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office: (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail: rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Office: (415) 956-1000<br>Telefax: (415) 956-1008<br>E-Mail: ecabraser@lchb.com | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail: mlundy@lundylawllp.com |
| Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>Office: (504) 394-9000<br>Telefax: (504) 394-9110<br>E-Mail: pcossich@cossichlaw.com | Michael C. Palmintier<br>deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE<br>618 Main Street<br>Baton Rouge, LA 70801-1910<br>Office: (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail: mpalmintier@dphf-law.com |
| Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P. O. Box 66705<br>Mobile, AL 36660<br>Office: (251) 471-6191<br>Telefax: (251) 479-1031<br>E-Mail: rtc@cunninghambounds.com | Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA 70130<br>Office: (504) 588-1500<br>Telefax: (504) 588-1514<br>E-Mail: sterbcow@lksalaw.com |
| Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |

| | |
|---|---|
| Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA 70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw.com<br><br>Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | Mikal C. Watts (PSC)<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com |

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 30th day of September, 2011.

/s/ James Parkerson Roy and Stephen J. Herman