# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 29, 2011

**By Electronic Mail**                                             **CONFIDENTIAL**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

> **Re:    MDL No. 2179 — Status of Phase Two Discovery and Other Issues**

Dear Judge Shushan:

I write to update the Court and the parties on certain issues discussed at recent status conferences, as well as recent developments pertaining to Phase Two discovery.

## I.    Open Items from the September 9 and 16, 2011 Status Conferences

**A.    Sample Order Presented to the Court.**  On September 27, 2011, BP submitted to the Court for entry an agreed order to establish a protocol for the sharing of reference material and other identified sample materials.  (*See* Enclosure 1.)  This version of the order reflected changes made to satisfy concerns voiced about a previous version of the order by Halliburton.  The order, if entered, would allow BP to continue to assist those conducting important research supporting restoration of the Gulf Coast while maintaining sufficient supplies of reference material to satisfy litigation needs.  Under the proposed order, BP would preserve at least 20% of the existing supply of each reference material to be used for litigation testing.

**B.    Laser Scan Protocol and CAD Drawings.**  BP is continuing discussions with the United States about a laser scan or other testing of the Capping Stack.  BP shares the US's concerns about the technical limitations and projected costs of the most recent Capping Stack laser scan proposal.  On September 28, 2011, BP distributed to the parties the protocol for the laser scan of the "Transition Spool," the subsea equipment that connected the Capping Stack to the BP.  BP also proposed a hands-on technical expert inspection of the Capping Stack to take place at the NASA facility at Michoud next week, to be followed by continued discussion between BP and the United States (and others) about how best to ascertain the as-built measurements for the capping stack.  CAD drawings of the Capping Stack were recently produced to all MDL 2179 parties as BP-HZN-2179MDL03782214.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 29, 2011
Page 2

**C.     MC 252 ROV Video and Bubble Sampling.**   As further explained in my September 28, 2011 letter to the Court and counsel, BP has provided the ROV video footage relating to the August 25-26, 2011 MC 252 Macondo wellhead visual inspection to the MDL parties that have requested it. (*See* Enclosure 2.) This video has also been posted by the United States at www.restorethegulf.gov, along with the following statement: "These visual wellhead inspections, conducted on Aug. 25 and 26, 2011, confirmed that there is no release of oil from either well and that both wells are secure." BP recently attempted to collect bubble samples at the MC 252#1 well, but the sample bottles did not preserve a sample that could be reliably analyzed.

**D.     Recent Coast Guard Statement re Sheens.**   As the State of Alabama mentioned in a September 28, 2011, submission to the Court and parties, the U.S. Coast Guard recently released a statement regarding reported sheens near the MC 252 well and the Coast Guard's responsive action in issuing a Notice of Federal Interest to Transocean Holdings, LLC. (*See* Enclosure 3.) The Coast Guard stated, "A series of sheen sightings in the area of Mississippi Canyon block 252 indicate the possibility of a release from the riser pipe or other debris on the ocean floor from the April 20, 2010, Deepwater Horizon incident. Recent ROV video footage of the capped Macondo well has shown no evidence of a release from the well." (*Id.*) BP will be prepared to address these issues, if necessary, at the September 30, 2011, status conference.

**II.     Written Discovery vis-à-vis the United States**

On September 22, BP submitted a status update to the Court commenting on the United States status report of September 6, 2011. This submission respectfully requested that the Court establish new discovery deadlines for the United States' discovery responses to replace the August 15 and 31 discovery deadlines that have now passed. The submission further emphasized the likely utility of expert-to-expert discussions regarding technical problems with the US's productions, with this Court's involvement as appropriate. Earlier today, the United States responded to BP's submission, and BP will be prepared to address this response at the September 30, 2011, status conference.

**III.     Phase Two Discovery**

**A.     Ongoing Meet and Confer Regarding Rule 30(b)(6) Depositions.**   On September 8, 2011, the Court directed the parties to embark on a collaborative process to determine the parameters of Phase Two 30(b)(6) testimony. The first step in this process was for the PSC on the one hand, and BP on the other, to canvass the plaintiffs and defendants,

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 29, 2011
Page 3

respectively, as to any entities from which they intend to seek 30(b)(6) testimony in addition to those already listed in the Court's September 8 Order.  The second step was for BP and the PSC to combine the two resulting lists into one master list.  The third step is for the parties to agree on who shall take the lead on drafting the proposed topics for each 30(b)(6) deponent.  BP forwarded the defense list to the plaintiffs on September 15, 2011.  Over the next two weeks, BP asked for the list several times.  On September 29, 2011, the PSC sent its additions to the list, so the parties are now ready to proceed to the second and third steps of the process the Court has outlined.

      **B.**    **Time Allocation for Phase Two Fact Depositions.**  After conferring with all parties, BP is submitting herewith a suggested set of standard time allocations for Phase Two fact and 30(b)(6) depositions  (*See* Enclosure 4.)  This proposal specifically contemplates that time allocations can always be adjusted for specific deponents by agreement or by the Court.  After making several adjustments to accommodate comments received, BP has received no objections to the immediately prior version of the enclosed proposal and has received the consent of one party (Halliburton) to its entry.  The enclosed version reflects several minor adjustments to accommodate additional comments received.

      **C.**    **Proposed Order Regarding Non-Discoverability of Certain Expert-Related Documents.**  As requested, BP has worked with all parties to craft a proposed order regarding the non-discoverability of certain expert-related documents.  After first circulating this proposed order to MDL 2179 parties, BP revised and re-circulated the proposed order to the parties and is now submitting it herewith for the Court's information.  (*See* Enclosure 5.)  Although we think this version is agreeable in large part to the parties, the United States submitted several comments on September 29, 2011 that we hope to be able to work through and resolve.  Significantly, BP is suggesting that this order not seek to address in any fashion a particular flow rate consultant privilege issue that is currently the subject of a separate discussion between BP and the United States growing out of Sarah Himmelhoch's August 24 letter to me (which was copied to all liaison counsel) and my September 16, 2011 reply.

      **D.**    **Defendants' Additional Written Discovery of the States and the PSC.**
Pursuant to this Court's August 22, 2011 Order concerning the August 19, 2011 Working Group Conference, Anadarko took the lead on preparing a joint set of Phase Two discovery requests to the PSC and the States.  BP and other parties provided input on these discovery requests, which were served on September 16, 2011.

      **E.**    **The PSC's, Anadarko's and the United States Additional Phase II Discovery of BP**.  BP and the PSC agreed to search criteria addressing source control and quantification in

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 29, 2011
Page 4


February 2011. These were then circulated to all parties for comment, and were the subject of a hearing on February 18, 2011. BP produced large volumes of documents in the spring and summer of 2011, responsive to these Phase II search criteria negotiated with the PSC and circulated to the parties. In August of 2011, the United States, the PSC, and Anadarko all sought to add more search criteria for BP to use. BP is now working toward producing Phase II documents in response to this second round of search criteria.

      **F.**     **Defendants' Additional Written Discovery of United States.** BP similarly has taken the lead on preparing a joint set of Phase Two discovery requests to serve on the US. After first incorporating comment from Anadarko, BP circulated the combined draft to MDL 2179 Defense Counsel on September 29, 2011 for review and comment. BP intends to serve these joint discovery requests soon as they can be reviewed and approved by other defense counsel.

      **G.**     **Factual Stipulations Regarding Source Control and Quantification.** BP and the US are moving forward on possible stipulations concerning facts relevant to source control and quantification issues. As for possible stipulations regarding source control efforts undertaken between April 20, 2010 and September 19, 2010, BP and the United States have exchanged drafts, and the two parties are working to confirm certain dates and descriptions of source control activities, with the goal of exchanging another round of drafts in mid-October. The parties hope to have a set of stipulations for circulation and review by the remaining MDL parties by the end of October or early November.

      BP also is working with the US on a limited set of potential factual stipulations relevant to the computation of flow rates and spill volumes. BP sent the United States a limited number of such suggested stipulations on September 28, 2011, which the United States has promised to review.

* * * *

      Please feel free to contact me with any questions or concerns.

Sincerely,

Robert R. Gasaway

RRG/jae

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 29, 2011
Page 5


cc (via electronic mail):

     Liaison Counsel
     J. Andrew Langan, P.C.
     Joseph A. Eisert
     David E. Grassmick
     Esty R. Lobovits
     Don K. Haycraft
     Steven O'Rourke
     Sarah Himmelhoch
     Scott Cernich
     Corey Maze

# ENCLOSURE 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| Of Mexico, on April 20, 2010 | * | |
| | * | SECTION: J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**PRETRIAL ORDER NO.        RELATING TO USE OF
SAMPLE REFERENCE MATERIAL IN SUPPORT OF
SPILL IMPACT RESEARCH AND CLARIFYING PTO 1**

WHEREAS, Paragraph 14 of PTO 1 requires each party to "take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation;" and

WHEREAS, this obligation includes preserving reasonable quantities of oil and other substances collected from the Macondo well; and

WHEREAS, it is proper for the Court to offer guidance to the parties as to reasonable uses and dispositions of substances and materials retained pursuant to PTO 1 Paragraph 14;

NOW THEREFORE, considering BP's Motion for an order governing the distribution of certain sample Reference Material to be used for studies to advance environmental impact assessments and related scientific research associated with the MC252 *Deepwater Horizon* spill, it is hereby ORDERED that the Motion is GRANTED, and this Court orders as follows:

A.    **DEFINITIONS**

1.    "Reference Material" shall mean for purposes of this Order material collected by BP or its contractors during the MC252 Response between April 20, 2010, and September 19, 2010, that was used or released during the incident, including crude oil, additives used to treat the oil, dispersants, and drilling mud used in well kill efforts, which is sometimes known as "Top Kill Mud."

2.    "Surrogate Oil" shall mean for purposes of this Order Louisiana light sweet crude oil that is similar to the oil collected from the Macondo well and collected by BP to supplement available Reference Material for purposes of scientific research and study.  Surrogate Oil shall be managed pursuant to this Order but shall not be considered a sub-set of Reference Material.

3.    "Source Oil" is a sub-set of Reference Material and shall mean for purposes of this Order Macondo crude oil that is minimally weathered or altered and that was collected after the crude oil left the well but before it was significantly altered by the passage through the water column.   (Defined in this manner, Source Oil may contain various additives or treating chemicals, including methanol or chemical dispersants.)

4.    "Weathered Oil" is a sub-set of Reference Material and shall mean for purposes of this Order Macondo crude oil subjected to varying degrees of chemical and physical weathering as a result of passage through the water column or exposure to light, air, wave action or other processes below or on the ocean surface after the Macondo crude oil left the reservoir but before it was collected by BP or its contractors.  (Defined in this manner, Weathered Oil may contain various additives or treating chemicals, including methanol or chemical dispersants.)

5.    The volumes of Reference Material and Surrogate Oil described in Appendix A to this Order shall be referred to as the "Initial Volume."

**B.      REFERENCE MATERIAL REQUESTS**

**6.**      This Order shall apply to the inventory of Reference Material described in Appendix A and to all Surrogate Oil collected by BP during the pendency of MDL 2179.  (The quantity and condition of Reference Material currently in BP's possession is further described in Appendix A to this Motion.)

**7.**      This Order shall govern BP's decisionmaking in response to requests from academic researchers, government scientists, commercial laboratories, litigants, or others, for samples of Reference Materials and Surrogate Oil.  However, this Order shall not apply to discovery requests presented to BP by MDL Parties.

**8.**      All requests for Reference Material subject to this Order shall be made to BP's Reference Material Request Manager ("RMRM").  The RMRM will be responsible for implementing the review, approval, and distribution of Reference Material and Surrogate Oil.  The BP RMRM shall oversee the approval process for requests for Reference Material and Surrogate Oil, other than requests presented by MDL Parties as part of discovery, pursuant to the process described herein.  All requests for Reference Material shall be made by using a request form that includes the information contained in Appendix B to this Order.

**9.**      All Requests for Reference Material must provide the RMRM with a detailed description of the proposed study and use of Reference Material, including a detailed discussion of the purpose and objectives of the proposed study, the analytical methods to be used, the analytical data quality objectives, the proposed methods of data analysis and the intended method and forum of publication, if any.

## C.    DECISIONS ON REFERENCE MATERIAL REQUESTS

**10.**    There is a rebuttable presumption that existing data can be used in lieu of Reference Material.  There also is a rebuttable presumption that Surrogate Oil can be used in lieu of Source Oil.  The RMRM will discuss with a Requestor whether data or Surrogate Oil will satisfy the intended study design.  Only where a Requestor can show that existing data or Surrogate Oil cannot satisfy the Requestor's intended study design will the RMRM consider recommending that BP provide Source Oil or other Reference Material.  Provision of samples of Reference Material or Surrogate Oil shall be contingent upon a sufficient quantity of the requested type of material being in the Available Inventory; "Available Inventory" is Reference Material or Surrogate Oil that is available without sub-sampling.  BP shall have no obligation to sub-sample large containers to provide smaller volumes to satisfy Reference Material or Surrogate Oil requests.

**11.**    In the event a request for Reference Material is denied, the RMRM shall provide the Requestor with a written notification of the denial.  In the event a request for Reference Material is granted, Reference Material shall be released to a Requestor only upon the execution of the Sample Agreement and Release, an example of which is attached hereto as Appendix C. BP shall make its best effort to ship approved requests to a requestor within twenty (20) days after receipt by the RMRM of the properly-executed Sample Agreement and Release.

## D.    RETENTION OF REFERENCE MATERIAL FOR LITIGATION AND OTHER USES

**12.**    BP's RMRM shall have the discretion to distribute Reference Material pursuant to this Order until such time as the 80% of the Initial Volume has been utilized.  BP shall maintain an amount equal to 20% of the Initial Volume of Reference Material unless and until a further order of this Court is issued to address dispensation or disposal of said Reference Material.

13.     BP shall not be required to provide notice to the parties of distributions it makes under the terms of this Order, except in accordance with the following three specific requirements:  (a) With regard to Reference Material, in the event that the remaining amount of a given Reference Material supply after a distribution would be greater than 40% of the Initial Amount, BP shall provide seven (7) days advance notice to the parties of any distribution it intends to make that is in an amount that is 20% or more of the Initial Volume; (b) Also with regard to Reference Material, in the event that the remaining amount of a given Reference Material supply after a distribution would be equal to or less than 40% of the Initial Amount, BP shall provide seven (7) days advance notice to the parties of any distribution it intends to make in a volume greater than or equal to one gallon; and (c) Also with regard to Reference Material, and also in the event that the remaining amount of a given Reference Material supply after a distribution would be equal to or less than 40% of the Initial Amount, BP shall provide seven (7) days advance notice to the parties of any distribution it intends to make in a volume less than one gallon if such distribution amounts to 5% or more of the Initial Volume of the Reference Material.

14.     Paragraphs 8 through 11 above shall apply to the distribution of the Surrogate Oil inventory.  Surrogate Oil shall not be subject to limitations on the volume distributed, except that BP shall maintain an amount equal to 5% of the Initial Volume of any Surrogate Oil collected unless and until a further order of this Court is issued to address dispensation or disposal of said Surrogate Oil.

IT IS SO ORDERED this _____ day of _____, 2011, at New Orleans, Louisiana.

_____
UNITED STATES DISTRICT JUDGE

# ENCLOSURE 2

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 28, 2011

**By Electronic Mail**

**CONFIDENTIAL**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re:   <u>MDL No. 2179 — MC 252 ROV Video & Bubble Samples</u>

Dear Judge Shushan:

I write to update the Court and parties in response to follow-up inquiries from the PSC and others as to ROV video footage and/or any sampling conducted in connection with the August 25, 2011 Remotely Operated Vehicle (ROV) operation that BP undertook at the request of the U.S. Coast Guard to investigate reports of sheens of oil observed in the vicinity of the Macondo Well.

***First,*** as noted in my September 6, 2011 letter, BP confirmed using a standard video visual wellhead inspection, that no release of oil is occurring from either Macondo Well MC 252#1 or from Macondo Relief Well MC 252#3.

This ROV video inspection was conducted in the presence of representatives from the Gulf Coast Incident Management Team (GCIMT) (MC252 Unified Command) in New Orleans. GCIMT observers of the live video feed included representatives of the U.S. Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement, as well as representatives from the states of Louisiana, Mississippi, and Florida.

ROV video from the inspection has now been posted by the U.S. Government to the publicly available Web site, http://www.restorethegulf.gov.  The following statement also appears on this Web site: "These visual wellhead inspections, conducted on Aug. 25 and 26, 2011, confirmed that there is no release of oil from either well and that both wells are secure." The ROV video footage of the inspection has separately been provided by BP to the PSC, as well as other MDL 2179 parties, including the State of Alabama, the State of Louisiana, the U.S. Department of Justice, Halliburton, and Anadarko.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 28, 2011
Page 2

*Second*, per my September 6, 2011 letter, during the course of inspecting both wellheads, BP representatives and GCIMT member observers noticed small, intermittent bubbles emanating from cement ports at the base of the wellheads.  These observations are consistent with testing and sampling performed last year that detected nitrogen bubbles, a residual byproduct of the nitrified foam used in setting the wells' surface casing cement.

Several days later, on August 28 and 29, 2010, ROVs returned and collected bubble samples at the MC 252#1 Well, as well as ROV video footage of the sampling as it occurred. But BP has since determined that — to the best of its current knowledge — the sample bottles did not retain a sample that could be reliably analyzed.  The sample containers were unable to maintain pressure integrity and the test results are inconclusive as to the sample contents.  BP continues to follow-up on the bubble sample analysis and will update the parties if significant new information becomes available.

In the meantime, BP will make ROV video footage of the taking of these samples available to any MDL 2179 party, upon request.  In addition, we are also attaching to this letter a representative gas/bubble laboratory test analysis report from sampling of the Macondo Well that was successfully conducted in the summer of 2010, after the Well had been cemented.  This document has already been produced as BP-HZN-2179MDL02202321.

Please feel free to contact me with any questions or concerns.

Sincerely,

Robert R. Gasaway

RRG/erl

Attachment

cc (via electronic mail):
    R. Michael Underhill
    Corey Maze
    Liaison Counsel
    Andrew Langan, P.C.
    Joseph A. Eisert
    David E. Grassmick
    Esty R. Lobovits
    Don K. Haycraft

ATTACHMENT



**ANALYSIS REPORT**

| | | | |
|---|---|---|---|
| Lab #: | 192341 | Job #: | 13505 |
| Sample Name: | 10661-7 | Co. Lab#: | |
| Company: | BP | | |
| Date Sampled: | / / | | |
| Container: | Cylinder | | |
| Field/Site Name: | | | |
| Location: | | | |
| Formation/Depth: | | | |
| Sampling Point: | | | |
| Date Received: | 8/01/2010 | Date Reported: | 8/01/2010 |

| Component | Chemical mol. % | Delta 13C per mil | Delta D per mil | Delta 15N per mil |
|---|---|---|---|---|
| Carbon Monoxide ------------ | nd | | | |
| Hydrogen Sulfide ----------- | nd | | | |
| Helium ------------------------- | 0.0332 | | | |
| Hydrogen --------------------- | 0.0701 | | | |
| Argon -------------------------- | 0.251 | | | |
| Oxygen ------------------------ | 4.83 | | | |
| Nitrogen ----------------------- | 59.39 | | | |
| Carbon Dioxide -------------- | 0.006 | | | |
| Methane ----------------------- | 35.40 | -73.64 | -196.1 | |
| Ethane ------------------------- | 0.0099 | | | |
| Ethylene ----------------------- | nd | | | |
| Propane ----------------------- | 0.0015 | | | |
| Iso-butane -------------------- | 0.0007 | | | |
| N-butane ---------------------- | 0.0015 | | | |
| Iso-pentane ------------------ | 0.0012 | | | |
| N-pentane -------------------- | 0.0013 | | | |
| Hexanes + -------------------- | 0.0065 | | | |

Total BTU/cu.ft. dry @ 60deg F & 14.7psia, calculated:   359
Specific gravity, calculated:   0.828

nd = not detected. na = not analyzed. Isotopic composition of carbon is relative to VPDB. Isotopic composition of hydrogen is relative to VSMOW. Calculations for BTU and specific gravity per ASTM D3588. Chemical compositions are normalized to 100%. Mol. % is approximately equal to vol. %.

CONFIDENTIAL

BP-HZN-2179MDL02202321

# ENCLOSURE 3



*D8 External Affairs*
U.S. Coast Guard

**U.S. Department of
Homeland Security
United States
Coast Guard**

Date: September 27, 2011
Contact: D8 Staff
(504) 671-2020

# News Release

### Coast Guard issues Notice of Federal Interest to Transocean Holdings, LLC

NEW ORLEANS — The U.S. Coast Guard Captain of the Port for Morgan City, La., issued a Notice of Federal Interest to Transocean Holdings, LLC, Tuesday.

A series of sheen sightings in the area of Mississippi Canyon block 252 indicate the possibility of a release from the riser pipe or other debris on the ocean floor from the April 20, 2010, Deepwater Horizon incident. Recent ROV video footage of the capped Macondo well has shown no evidence of a release from the well.

An NOFI puts a potential responsible party on notice and, under the Oil Pollution Act of 1990, the responsible party may be financially accountable for debris removal costs and damages resulting from the pollution incident. Federal removal actions will be limited to monitoring progress of the responsible party's actions and providing guidance as necessary.

"This is part of the process we take whenever there is an oil sighting that cannot be immediately attributed to a specific source. We will actively work with Transocean to discuss options to determine whether or not the wreckage is the cause," said Capt. Jonathan Burton, commanding officer of Marine Safety Unit Morgan City.

Failure or refusal of the responsible party to provide all reasonable cooperation and assistance requested by the Federal On-Scene Coordinator will eliminate any defense or entitlement to limited liability, which might otherwise be available under OPA 90, and subject them to significant fines under the Federal Water Pollution Act.

BP's Macondo well is not suspected as a source of the sheen. The ROV video can be viewed at http://www.restorethegulf.gov.

### 

ShareThis

***Saving Lives and Guarding the Coast Since 1790.
The United States Coast Guard -- Proud History. Powerful Future.***

Home    Contact Us    Privacy Policy    Accessibility    FOIA    USA.gov    No FEAR    Homeport    Download Plug-Ins

U.S. Department of Homeland Security

# ENCLOSURE 4

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

J. Andrew Langan, P.C.
To Call Writer Directly:                  (312) 862-2000                              Facsimile:
(312) 862-2064                                                                         (312) 862-2200
andrew.langan@kirkland.com                 www.kirkland.com

September __, 2011

# D R A F T

**Via Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras Street
New Orleans, LA 70130

Re: In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179

Dear Judge Shushan:

I am writing to further discussions with the parties and the Court regarding Phase 2 fact depositions. As the Court is aware, and as BP has mentioned in Court previously, the issues of source control and quantification necessarily involve quite different interests and potential alignments of the parties than the April 20-22 incident issues raised by Phase 1. To get the ball rolling on ways to handle Phase 2 fact depositions, we offer the following suggestion regarding time allocation.

Specifically, we propose that the Court establish a default allocation of time for the typical one-day and two-day fact depositions in Phase 2. This allocation would apply to individual fact witnesses identified as solely Phase 2 witnesses and, in the case of Rule 30(b)(6) testimony, would apply to specific topics or groups of topics identified and agreed upon by the parties, as has been the practice with respect to Phase 1 Rule 30(b)(6) testimony.

Given that most of the witnesses preliminarily identified by the parties are BP or US employees or consultants, attached are proposed allocations for one-day and two-day depositions for BP witnesses (Attachments A-1 and A-2) and US witnesses (Attachments B-1 and B-2). Our proposal, in part, reflects that there are many parties that were involved in Phase 1 issues that as a practical matter have little direct stake in source control and quantification and/or are aligned

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September ___, 2011
Page 2


with parties that have a more direct stake.   These default allocations would be subject to modification for good cause shown, a practice used in Phase 1, and ad hoc allocations could be adopted for non-US, non-BP witnesses.

   We hope to discuss this suggestion further with Your Honor and the MDL 2179 parties at the next discovery conference.

        Sincerely,



        J. Andrew Langan, P.C.

Attachments

cc (via electronic mail):

Plaintiffs Liaison Counsel
Defense Liaison Counsel
Robert R. Gasaway
Don K. Haycraft
R. Michael Underhill
Corey Maze

# ATTACHMENT A-1

**Attachment A-1**

**Proposed Time Allocation for One-Day Deposition of BP Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| PSC | 190 |
| US | 105 |
| Anadarko | 25 |
| Transocean | 25 |
| States | 20 |
| HAL/CAM | 20 |
| All others | 35 |
| BP | 30 |

Total:              450 minutes (7.5 hours)

# ATTACHMENT A-2

**Attachment A-2**

**Proposed Time Allocation for Two-Day Deposition of BP Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| PSC | 380 |
| US | 210 |
| Anadarko | 50 |
| Transocean | 50 |
| States | 40 |
| HAL/CAM | 40 |
| All others | 70 |
| BP | 60 |
| | |
| Total: | 900 minutes (15 hours) |

# ATTACHMENT B-1

**Attachment B-1**

**Proposed Time Allocation for One-Day Deposition of US Fact Witnesses in Phase 2**

| <u>Party</u> | <u>Minutes</u> |
|---|---|
| BP | 240 |
| PSC | 45 |
| Anadarko | 25 |
| Transocean | 25 |
| States | 20 |
| HAL/CAM | 20 |
| MOEX | 10 |
| All others | 35 |
| US | 30 |

Total:        450 minutes (7.5 hours)

# ATTACHMENT B-2

**Attachment B-2**

**Proposed Time Allocation for Two-Day Deposition of US Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| BP | 480 |
| PSC | 90 |
| Anadarko | 50 |
| Transocean | 50 |
| States | 40 |
| HAL/CAM | 40 |
| MOEX | 20 |
| All others | 70 |
| US | 60 |
| Total: | 900 minutes (15 hours) |

# ENCLOSURE 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG         :      MDL NO. 2179
        "DEEPWATER HORIZON" in the      :
        GULF OF MEXICO, on              :
        APRIL 20, 2010                  :
                                        :      SECTION: J
                                        :
THIS DOCUMENT RELATES TO:               :
ALL CASES                               :      JUDGE BARBIER
                                        :      MAG. JUDGE SHUSHAN
                                        :

. . . . . . . . . . . . . . . . . . . . . . . . . . .     . . . . . . . . . . . . . . . . . . . . .

**[PROPOSED] ORDER**

**[Regarding Non-Discoverability of Certain Expert-Related Documents]**

Upon the agreement of all Liaison and Coordinating Counsel, and to promote judicial efficiency, this Order supplements PTO 18 (Governing the Discovery of Experts) (Doc. 825) as follows.

**IT IS HEREBY ORDERED THAT:**

1. Any notes taken by a testifying expert, the expert's staff, or others retained to assist the expert during the course of the expert's work in connection with this Multi-District Litigation proceeding shall not be subject to discovery or production.

2. Communications between a testifying expert and that expert's staff or others retained to assist the expert shall likewise not be subject to discovery or production.

3. Consistent with the Court's prior rulings, as reflected in the August 29, 2011 Order (Working Group Conference on Friday August 26, 2011) (Doc. 3840) and the September 2, 2011 Order (Regarding Phase One Exhibits and Expert Discovery Production) (Doc. 3916), communications between attorneys for a party and experts retained on behalf of that party, those experts' staff, or others retained to assist such experts will not be produced or discoverable.

4.   Consistent with the Court's prior rulings, as reflected in PTO 18 and the September 2, 2011 Order (Regarding Phase One Exhibits and Expert Discovery Production), drafts of expert reports or portions thereof are likewise not subject to production or discovery pursuant to Federal Rule of Civil Procedure 26(b)(4)(B).

5.   Notwithstanding the foregoing, a party shall disclose, in some form: (1) any mathematical calculations upon which a testifying expert relies in forming his opinions to be expressed; and (2) any information that counsel has asked a testifying expert to accept as fact or assumptions that counsel has asked a testifying expert to make in forming his opinions to be expressed.

6.   The protections set forth in this Order apply equally to (1) testifying retained experts, and (2) testifying in-house experts, to the extent that the relevant notes, communications, draft reports or disclosures relating to the in-house expert were created solely to assist the expert in providing testimony.

7.   This Order does not apply to notes, communications, and other documents created by testifying in-house experts in the regular course of business.  Such documents may be protected from disclosure by other applicable orders, rules, privileges, and doctrines, with all parties reserving their rights on these issues.

8.   The parties are not required to produce or exchange privilege logs reflecting drafts of expert reports, expert notes, or expert communications withheld pursuant to this or prior Orders.


New Orleans, Louisiana, this __ day of September, 2011


_____
**SALLY SHUSHAN**
**United States Magistrate Judge**