UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   .   . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**BP'S RESPONSE TO HALLIBURTON'S REPLY IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE SECOND AMENDED CROSS-CLAIM**

In its Reply, Halliburton argues that "HESI first obtained evidence of BP's pre-Incident knowledge of this higher hydrocarbon-bearing sand at Skripnikova's July 7, 2011 deposition." (Doc. 4144-2 ("HESI Reply") at 4). If Halliburton learned of this "new evidence" supporting the New Claims on July 7, 2011, why did it delay *eight weeks* to file a motion for leave to amend when the deadline for amending pleadings was long past? It is because a careful examination of the "new evidence" shows no support for Halliburton's New Claims, which are merely an attempt to gain strategic advantage in the litigation. As shown below, Galina Skripnikova's testimony simply does not support Halliburton's allegations or its late amendment. As Halliburton relies solely on this deposition testimony as the single piece of evidence providing Halliburton with notice of this alleged new claim, its request for leave must be denied.

**ARGUMENT**

Although Halliburton's new claims are baseless, BP can address only the merits of a late amendment in opposing Halliburton's motion for leave to amend. The New Claims in Halliburton's proposed pleading relate to a purported "Concealed Sand" that Halliburton alleges

BP knew was hydrocarbon-bearing and intentionally concealed from Halliburton before the cement job and from the public after the Incident.

### 1. Halliburton Has Identified No "New" Evidence Supporting Count V

Halliburton alleges in Count V of its proposed Second Amended Cross-Claim:

> BP intended HESI to rely, and HESI in fact justifiably and detrimentally relied, on BP's nondisclosure or misrepresentation regarding the existence of the Concealed Sand by HESI's formulation of a cementing plan based on the false information BP provided.  Had HESI known of the Concealed Sand, HESI would not have pumped the primary cement job unless and until changes were made to the cement program, changes that likely would have required a redesign of the production casing.

(Doc. 3893-1 at ¶ 84).  In other words, Count V alleges that BP knew that the M57B sand was hydrocarbon-bearing *before the cement job* but concealed that fact, and that Halliburton relied on that misrepresentation in designing and pumping the cement job, and consequently was injured.

In its response to BP's Opposition, Halliburton does not dispute that all of the evidence and documents necessary to make this claim were possessed by Halliburton well in advance of the May 2010 cross claims deadline.  Halliburton does not dispute that it possessed the LWD logs before the incident.  Halliburton does not dispute that its own documents show that it had identified the M57B as a potential hydrocarbon zone over a year ago in May 2010.  And, Halliburton does not dispute that BP produced pre-incident materials and the post-incident BP IIT analyses many months before the pleading deadline.  *Indeed, Halliburton admits that "[t]he theory that BP was negligent in failing to disclose the true hydrocarbon-bearing nature of the M57B sands is not a new theory and, in fact, is one that has been consistently developed by HESI..."*  HESI Reply at 15.[1]

---

[1] BP continues to investigate the facts underlying the negligence claim, including when information was made available and when that information was reviewed.  Last week, Schlumberger indicated that a Laminated Sand

Halliburton instead argues that its motion for leave to amend relies on the premise that "new evidence" from Ms. Skripnikova's July deposition supports the New Claims. Halliburton's argument hangs on a single passage from Ms. Skripnikova's deposition where she allegedly admits to re-evaluating the M57B sand. Halliburton argues that Ms. Skripnikova's "admission" put it on notice of the New Claims. Setting aside that Halliburton has purposefully ignored Ms. Skripnikova's clarification of her testimony at the deposition—*she still testifies that the further analysis occurred <u>after</u> the cement job was pumped at the Macondo Well.* Halliburton's entire argument is premised on a ruse. Here is the testimony:

> Q: So here's my question: When was this more data available such that this analysis which caused you-all to highlight as a probable hydrocarbon zone, the one at 14,467 [sic], when was that analysis done?
>
> A: The analysis was done the day of the incident.
>
> Q: The day of the incident?
>
> A: Yes.
>
> Q: After the cement job was done, right?
>
> A: Yes.

HESI Reply at 5 (citing to Ex. 1 (Skripnikova Dep.) at 212:4-16).

Even if Ms. Skripnikova had not later clarified her testimony under questioning from Halliburton lawyers and explained that her further analysis of the M57B sand occurred *after* the blowout[2]—the testimony still fails to support Halliburton's claim that it somehow provided

---

analysis may have been provided to BP shortly after April 16, 2010. BP is investigating when such information was provided and whether anyone at BP accessed it before the incident. And, BP-HZN-2179MDL02912087-88 cited in footnote 11 of BP's opposition suggests that ELAN information was reviewed in June, while Exhibit I indicates on page 14 that it was reviewed on May 3, 2010.

[2] On questioning by Halliburton counsel, Ms. Skripnikova clarified that she had not conducted analysis between April 13th and April 21st of the M57B zone and that her further analysis on the M57B sand with others was "after the incident happened." Dkt. 4067 (BP Opposition) at 6-7 (citing Skripnikova Dep. at 440:23-441:17). Her testimony is supported by the contemporaneous documents, including Exhibit I at page 14 ("Post incident peer review identifying every possible permeable interval and its saturation type - April 21st, 2010."). If the Court should find it useful, Ms. Skripnikova is willing to execute a declaration on this topic.

3

Halliburton with notice of a new claim. Even if true, this testimony indicates that the analysis was performed "[a]fter the cement job was done." Therefore, the testimony does not support the allegations in Count V: *that BP knew that the M57B sand was hydrocarbon-bearing before the cement job; that it concealed that fact from Halliburton; or that Halliburton relied on this misrepresentation when it designed and pumped the cement job*.

With no new evidence in Ms. Skripnikova's July deposition supporting the New Claims, Halliburton's motion for leave to amend and add Count V is simply late and must be denied.[3]

### 2. Halliburton Fails to Identify New Evidence Supporting the Addition of Count VI

In Count VI, Halliburton alleges that "[i]n furtherance of BP's cover up, BP has deliberately and intentionally misled the public, members of the United States Government, HESI, and other parties as to the cause(s) of the Blowout." (Doc. 3893-1 at ¶ 89). As a result, Halliburton alleges that it "justifiably relied on BP's fraudulent conduct in conducting its business post-incident in how it responded to various investigations and inquiries from multiple agencies and entities, in issuing press releases and in making public statements regarding the tragedy, among other things." (Doc. 3893-1 at ¶ 89).[4]

In its opposition, BP detailed its efforts to respond to requests from investigative bodies and to provide information relating to this issue to such bodies and to the parties in this litigation. The evidence detailed in BP's brief makes clear that if Halliburton had performed even the slightest investigation into this issue, it would have learned the allegations were erroneous. And, had Halliburton meaningfully conferred with BP before filing its motion instead of only making a perfunctory call informing BP that the motion would be filed, it would have learned of the false

---

[3] Indeed, BP disputes that there is evidence or even good cause to assert a fraud claim and may pursue a motion to address this deficiency and whether Halliburton had a good faith basis for its allegation.

[4] It is unclear what Halliburton is alleging it would have done differently. Halliburton would be expected to respond truthfully to various investigations, agencies and entities and when making public statements regardless of its litigation strategy.

claims it was making. Halliburton's sole response is that "BP's post-Incident acknowledgement of the existence of these hydrocarbon-bearing sands is irrelevant to the pivotal question relating to HESI's Second Amended Cross-Claim: whether BP had pre-Incident knowledge of those sands that it failed to share with HESI and others." HESI Reply at 6-7. Halliburton does not contest that all of the information identified by BP in its opposition was, in fact, provided to parties in MDL 2179 and to governmental investigative bodies. As such, the motion to add Count VI should be denied because Halliburton does not even contest that information relating to the M57B sand was disclosed to interested parties post-incident. After making allegations in its public brief, Halliburton does not make even the slightest attempt to defend the allegations about post-incident concealment.

## CONCLUSION

Issues relating to the M57B sand have been litigated for well over a year. BP continues to investigate the facts concerning this issue but believes that the M57B sand did not play a role in the blowout and explosion. BP has provided documents and witnesses to allow other parties to challenge BP's positions and understanding. The crux of the New Claims is that BP "knew" and concealed from Halliburton that the M57B sand was hydrocarbon-bearing **before the cement job** at the Macondo well, and that Halliburton designed and pumped the cement job without that information. But there simply is no evidence—and certainly no "new" evidence—of that. The only "new" evidence that Halliburton points to (even if true) relates to an analysis *after* the cement job was pumped. For the foregoing reasons and the reasons set forth it its opposition (Doc. 4067), BP respectfully requests that this Court deny Halliburton's Motion for Leave to File Second Amended Cross-Claim (Doc. 3893).

Dated: October 3, 2011						Respectfully submitted,

By: /s/ Don K. Haycraft

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

*Attorneys for BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of October, 2011.

                                                              /s/ Don K. Haycraft