**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This document applies to: 10-2771 and 10-4536 | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |

**TRANSOCEAN'S RESPONSE IN OPPOSITION TO DRIL-QUIP, INC.'S MOTIONS TO DISMISS (1) TRANSOCEAN'S CROSS-CLAIMS AND (2) TRANSOCEAN'S THIRD-PARTY COMPLAINTS**

TO THE HONORABLE JUDGE CARL J. BARBIER:

COME NOW Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (collectively "Transocean") and file this, their Response in Opposition to:

(1) Dril-Quip, Inc.'s Motion to Dismiss Transocean's Cross-Claim/Counterclaim for Failure to State a Claim, **Rec. Doc. 2445** (filed in the Limitation proceedings);

(2) Dril-Quip, Inc.'s Motions to Dismiss Transocean's Third-Party Complaint, **Rec. Doc. 1902** (filed in the Limitation proceedings) & **Rec. Doc. 2914** (filed in the *United States v. BP Exploration & Production* case).

There are three motions to dismiss. Transocean responds in opposition by way of this single memorandum because the grounds supporting each motion to dismiss are practically indistinguishable.[1] As set forth below, all of Dril-Quip's Motions to Dismiss should be denied.

---

[1] The only difference is between the two motions to dismiss the third-party complaints' allegations against Dril-Quip. The motion to dismiss the third-party complaint filed in the United States action (10-4536) contains a brief argument for dismissing the products liability claim against Dril-Quip that is not found in the motion to dismiss the third-party complaint filed in the Limitation case (10-2771). That argument is taken from the motion to dismiss the cross-claims. *See infra*, n.4.

**BACKGROUND**

Transocean employee Buddy Trahan ("Trahan") originally filed suit against numerous defendants in state court in Texas, alleging injuries he suffered on board the *Deepwater Horizon*. He did not sue Transocean. Among the defendants named in that suit was Dril-Quip which, according to Trahan's state-court complaint, Transocean's Rule 14(c) Third-Party Complaints and Transocean's Rule 13 Cross-Claims/Counterclaims, built the well head that connects to the blowout preventer at the sea floor and the lock down seal assembly. Dril-Quip does not dispute its involvement with the *Deepwater Horizon* and the Macondo well. The first paragraph of its memorandum in support of motion to dismiss Trahan's complaint reads:

> This lawsuit arises out of an oil spill that occurred while the *Deepwater Horizon*, a mobile drilling unit owned and operated by Transocean, Ltd., was drilling the Macondo well for BP, P.L.C., the lessee. Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

**Rec. Doc. 1554-1, at 1.** Trahan brought negligence, gross negligence and products liability causes of action against Dril-Quip. His suit was removed to federal court and eventually transferred to this Court by the MDL Panel.[2]

Because this is an admiralty case, Transocean filed a Rule 14(c) Third-Party Complaint in the Limitation case on February 18, 2011, impleading or "tendering" Dril-Quip, among other entities, as a defendant. **Rec. Doc. 1320.** Dril-Quip moved to dismiss this complaint on May 19, 2011. **Rec. Doc. 1902.** Transocean also filed such a complaint on May 30, 2011, in the United

---

[2] On March 10, 2011, Dril-Quip moved under Rule 12(b)(6) to dismiss Trahan's suit. **Rec. Doc. 1554-1**; *see also* **Rec. Doc. 1904** (Trahan's response); **Rec. Doc. 2321** (Dril-Quip's reply). This motion is pending before the Court in Bundle A, which has been stayed. **Rec. Doc. 1730.**

States action against BP.  **Rec. Doc. 1320.**  Dril-Quip moved to dismiss this complaint on June 20, 2011.  **Rec. Doc. 2914.**

On April 20, 2011, Transocean filed its cross-claims under Rule 13.  **Rec. Doc. 2068.**  Transocean named Dril-Quip as a cross-defendant in that action.  **Rec. Doc. 2068, at 14.**  Transocean cross-claimed against Dril-Quip for indemnity, contribution, subrogation, products liability and negligence for the loss of the *Deepwater Horizon.*  **Rec. Doc. 2068, at 54.**  Under Rule 10(c), to support its cross-claims Transocean incorporated by reference and adopted Buddy Trahan's (and other plaintiffs') allegations against Dril-Quip.  **Rec. Doc. 2068, at 30.**  On May 20, 2011, Dril-Quip moved under Rule 12(b)(6), in accordance with its motion to dismiss Trahan's complaint directly, to dismiss Transocean's cross-claims against Dril-Quip owing to Transocean's 10(c) adoption of and reliance upon Trahan's complaint to support its cross-claims.  **Rec. Doc. 2445.**

## THE COURT'S B1 ORDER

On August 26, 2011, this Court ruled on the motions to dismiss pending in the B1 Bundle and issued its Order, **Rec. Doc. 3830**, and this Response attempts to take into account the effect of that Order on Dril-Quip's motions to dismiss.  Dril-Quip's post-B1 Order brief, **Rec. Doc. 3999**, asserts that Dril-Quip has not received a factual-sufficiency review and, as such, its motion to dismiss the cross-claims remains outstanding.  With regard to Dril-Quip's motion to dismiss Transocean's Rule 14(c) third-party complaint, the Court found that, excepting the plaintiffs' state-law claims, "Dril-Quip remains a 14(c) Defendant with respect to Plaintiffs' claims saved by this Order."  **Rec. Doc. 3830, at 33–34.**  Dril-Quip insists that its motion to dismiss the Rule 14(c) third-party complaint remains "outstanding," and that the statement is only one "of current procedural status," the Court "reserv[ing] this review for another day."  **Rec. Doc. 3999, at 3.**

3

Regardless of how far the Court went in its 14(c) inquiry, because Dril-Quip's motion to dismiss the cross-claims rests on the exact same grounds, all three motions to dismiss must be denied.

## THE COURT'S B3 ORDER

On September 30, 2011, the Court issued its Order on the motions to dismiss B3 Complaint. **Rec. Doc. 4159.** Particular to Dril-Quip, the Court again found that Dril-Quip remained a 14(c) defendant, but that Dril-Quip's "particular," or unique, arguments for dismissal in both its B3 and B1 motions to dismiss, were preserved. *Id.* **at 23, 24.** Presumably Dril-Quip will maintain that it is still entitled to a factual sufficiency inquiry after the B3 Order.

## ARGUMENT

Dril-Quip's arguments for dismissing the cross-claims and third-party complaints against it are in two distinct parts. First, Dril-Quip contends that "Transocean's pleadings against Dril-Quip do not meet the requirements of . . . *Iqbal* [and] *Twombly*." Second, Dril-Quip argues that "[e]ven if Transocean's pleading insufficiencies are overlooked, Transocean fails as a matter of law to state a claim for negligence or gross negligence under the general maritime law against Dril-Quip because its own allegations conclusively establish that Dril-Quip owed no legal duty to Transocean." **Rec. Doc. 2445, at 1.**[3] Transocean will address the formal, sufficiency-of-pleading argument first, and then the substantive, no-duty argument.

---

[3] All references are to Dril-Quip's motion to dismiss the cross-claims. The motion to dismiss the 14(c) complaint filed in the Limitation case (10-2771) follows the motion to dismiss the cross-claims almost verbatim, making the same arguments in the same order in almost the same language. *See* **Rec. Doc. 2914-1.** The motion to dismiss the third-party complaint filed in the United States case (10-4536) is not a word-for-word copy of that filed in the Limitation case, but it uses the same subject headings and same arguments and borrows the argument for dismissing the products liability claim against Dril-Quip from the motion to dismiss the cross-claims. *See* **Rec. Doc. 2914-1.** The products liability argument is discussed in footnote 4 below.

4

**ARGUMENT**

I.  **TRANSOCEANS'S CROSS-CLAIMS, AND THE CLAIMS IN TRANSOCEAN'S THIRD-PARTY COMPLAINTS, SATISFY THE PLEADING THRESHOLD OF RULE 12(b)(6) UNDER *TWOMBLY* AND *IQBAL*.**

Like all movants thus far, Dril-Quip's motions to dismiss have raised an insufficiency of pleading argument running to several pages. And yet Transocean's pleadings and allegations against Dril-Quip are as particularized as any allegations discussed by the Court to this point. In its B1 and B3 Orders, the Court preserved only those arguments for dismissal that were unique or "particular" to Dril-Quip and which had not been addressed by the Court. In finding that Dril-Quip remains a 14(c) defendant, it would follow that Transocean's allegations against Dril-Quip meet the standards set by the Federal Rules as interpreted in *Twombly* and *Iqbal*.

Even if they were not already ruled upon by the Court, however, Transocean's allegations clearly meet the pleading requirements of the Federal Rules of Civil Procedure. The United States Supreme Court has recently restated the plausibility component to notice pleading. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court "accept[s] as true the well-pleaded factual allegations in the complaint." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (observing that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555–56, but must simply "provide the plaintiff's grounds for entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Finally, the Fifth Circuit has repeatedly stated—even post-*Twombly*—that "[m]otions to

dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Dril-Quip argues that Transocean should be required to plead something more than it already has so that Dril-Quip can ascertain what it has done or failed to do that resulted in harm. **Rec. Doc. 2445-1, at 9.** And yet Transocean has plainly pleaded the specific facts that Dril-Quip provided the well-head systems to the *Deepwater Horizon*, and that it also manufactured and built the wellhead connecting the BOP to the seafloor, as well as the lock-down assembly. Moreover, beyond this, Transocean incorporated the allegations against Dril-Quip set forth in Trahan's complaint, which plainly set forth Dril-Quip's responsibility under negligence and product liability theories of recovery. *See generally* **Rec. Doc. 1904.**

According to Dril-Quip, Transocean's pleading combined with Trahan's pleading apparently is not enough to put it on notice of the basis of Transocean's negligence and products liability claims under the Federal Rules of Civil Procedure. *Cf.* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."); *id.* at (d)(1) ("Each allegation must be simple, concise, and direct."). Yet, importantly, Dril-Quip has cited to no cases requiring the pleading of specific, detailed facts in the general negligence or particular products liability context. "[F]or most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim. . . .'" *Twombly*, 550 U.S. at 555 n.3 (emphasis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and holding that plausibility in the specific context of an antitrust suit required pleading of fact of an illegal conspiracy to violate antitrust law). Nor has Dril-Quip attempted to argue that the context of a

6

maritime negligence and products liability[4] claim in any way compares to the national public policy concerns underlying the heightened pleading requirements in antitrust cases.

That said, even in the heightened pleading context of *Twombly*, an antitrust case,[5] the Supreme Court there noted that the satisfactory pleading of "parallel conduct" between alleged conspirators must simply place the conduct in "a context that *raises a suggestion* of a preceding agreement," *id.* at 556–57 (emphasis added), i.e., beyond allegations of mere tacit collusion. To draw the analogy to *Twombly* here, Transocean's pleadings plainly place Dril-Quip's activities in connection with the *Deepwater Horizon* casualty and Macondo blowout in a direct manner that relates (1) the activity and product installation Dril-Quip was on the rig to direct and perform, (2) the accident that occurred and (3) the harm sought to be remedied, a context which surely "raises the suggestion" that Dril-Quip's activity and/or product is responsible for the harm alleged. In the context of this case, then, which is not among the obvious type of cases calling for

---

4     At the conclusion of its motion to dismiss the cross-claims and motion to dismiss the third-party complaint filed in 10-4536—but ***not in the motion to dismiss the third-party complaint filed in the Limitation case***—Dril-Quip makes a brief, claim-specific argument that Transocean's product liability cross-claim is insufficiently pleaded, citing to *Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011). In brief, that case is inapplicable. There, a plaintiff sued the manufacturer of a hip replacement. His scant pleadings relied solely on the theory of *res ipsa loquitur*—an evidentiary theory in which "the thing speaks for itself"—a theory that was foreclosed in the particular context by Supreme Court precedent. *Id.* at 781–82. Because a successful *res ipsa loquitur* plaintiff is entitled to an inference of negligence, and may prove negligence by purely circumstantial evidence, it is crucial that the courts' screening role under Rules 8 and 12 is an exacting one in those cases. Transocean is not relying on *res ipsa loquitur*, however, but traditional maritime products liability law. The United States Supreme Court has made clear—as this Court has in both its B1, **Rec. Doc. 3830, at 20**, and B3 Orders, **Rec. Doc. 4159, at 18**—that there is a strict products liability cause of action arising under the general maritime law. *See E. River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 865 (1986) ("We join the Courts of Appeals in recognizing products liability, including strict liability, as part of the general maritime law."). The *Restatement (Second) of Torts*, at section 402A, governs such an action. As Dril-Quip is aware, § 402A products liability is exactly the theory relied on by Transocean—***not** res ipsa loquitur. See* **Rec. Doc. 2445-1, at 3.** As noted in the text above, there are no such heightened pleading standards for negligence or products liability cases as apply to *res ipsa loquitur*. Again, Dril-Quip's argument is purely formal and goes to sufficiency of the pleadings; it does not challenge that relief can be granted upon a properly-pleaded products liability claim.

5     Like *Twombly*, the national, if not geo-political, significance of *Iqbal*'s facts demands recognition of the context in which it arose. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009) (relating a lower court's "concern at the prospect of subjecting high-ranking Government officials—entitled to assert the defense of qualified immunity and charged with responding to 'a national and international security emergency unprecedented in the history of the American Republic'—to the burdens of discovery on the basis of a [*respondeat superior*] complaint as nonspecific as respondent's").

7

heightened pleading, the plausibility and sufficiency of Transocean's cross-claims become all the more apparent. For this reason, Dril-Quip's motions to dismiss must be denied.

## II. IN ADDITION TO ITS CLAIMS BEING PROPERLY PLEADED, TRANSOCEAN HAS ASSERTED SUBSTANTIVELY VALID NEGLIGENCE CLAIMS AGAINST DRIL-QUIP.

Aside from challenging Transocean's pleadings as to form under Rules 8 and 12, Dril-Quip's motions to dismiss only make a substantive attack on Transocean's negligence cause of action. (The products liability argument focuses only on the sufficiency of Transocean's pleading. *See* **Rec. Doc. 2445-1, at 12**; *see also, supra*, at 5 n.3.) The substantive availability of particular remedies sought—such as contribution, indemnity and subrogation—are not addressed. **Rec. Doc. 2445-1, at 2–3.**

Dril-Quip cites *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), and its progeny, to support dismissal of both the plaintiffs' tort claims as well as Transocean's cross-claims. But this is unlike the situation in the B1 Order with Anadarko and MOEX, where the plaintiffs alleged that BP's negligence as operating partner could be imputed to the non-operating partners. There, the Court found those entities had no personnel on board the *Deepwater Horizon*, no access to unique information and had no right to control the vessel's activities. The Court found all allegations against Anadarko and MOEX to rest upon vicarious liability. Dril-Quip attempts to frame Transocean's claims against it as being claims for vicarious liability, in which BP's negligence is imputed to Dril-Quip; therefore, because there are no allegations that Dril-Quip controlled the Macondo operations, Dril-Quip cannot be liable vicariously. But this theory of liability and the case-law urged in support does not support Dril-Quip. Dril-Quip's products and services were contracted for by BP, and it manufactured and supervised the installation of the wellhead. Regardless, this vicarious liability approach is not

the theory advanced by Transocean, nor is it the theory advanced by Buddy Trahan and adopted by Transocean. *See* **Rec. Doc. 1904.**

As it recognizes earlier in its own motion, **Rec. Doc. 2445-1, at 4**, Dril-Quip's liability rests upon its own negligence or strict liability in participating in the drilling operations and provision of wellhead services and in failing to exercise reasonable care in doing so. Yet Dril-Quip suggests that "[t]he Cross-Claim/Counterclaim alleges no facts from which the Court could infer that Dril-Quip owed Transocean any legal duty because it does not allege that Dril-Quip controlled or had any right to control any of the operations of the *Deepwater Horizon*." **Rec. Doc. 2445-1, at 10.** Thus, mistakenly looking to operational control as the source of its duty, Dril-Quip relies on a vicarious liability line of cases which does not apply.

Dril-Quip's reliance on *Ainsworth* is misplaced. As noted just above, *Ainsworth* simply does not apply as the Court found in the B1 Order; out of caution, however, Transocean will address it. Ainsworth was employed by an independent contractor, Hercules. He sued Shell under article 2315 of the Louisiana Civil Code[6] after he fell and was injured on a Hercules offshore platform being used to drill a well for Shell. The court affirmed a grant of summary judgment against Ainsworth. "Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties." 829 F.2d at 549.

Ainsworth put forth three arguments in an effort to impose vicarious liability on Shell under article 2315. The first ground rejected by the court involved an attempt to establish drilling as a non-delegable (i.e., the principal would remain liable for the agent's negligence whether or not the agent was an independent contractor), ultra-hazardous activity as a matter of

---

[6] Articles 2317 (liability for things in our custody) and 2322 (strict liability for ruinous or vicious buildings) were also urged by Ainsworth, but they are not relevant to the negligence claims by plaintiffs in this case.

9

law. There were too many Louisiana cases to the contrary and Shell carried the point. *Id.* at 549–50. The second ground rejected by the court was an attempt to show that Shell retained and/or exercised operational control over its independent contractor. The summary judgment evidence showed that the parties' contract detailed the few activities over which Shell had authority, and all control of the operation was explicitly vested in Hercules, which was specifically identified as an independent contractor. Further, while a Shell company man was on the platform at times, he had no right to interfere with Hercules' operations and was not responsible for anything; even if he had been, a long line of Louisiana cases gives more import to contractual language regarding control than any evidence of actual control.[7] *Id.* at 550–51. The final ground rejected by the panel was an argument that, because the Shell company man was on the platform and knew Hercules' crew was working at night without lights, the company man's "failure to intercede" supported imposing vicarious liability on Shell. Again, Louisiana cases simply did not support Ainsworth on the point. *Id.* at 551 ("We conclude that Louisiana law will not support the imposition of liability upon Shell for failure to intercede in Hercules' decision to work without lights.").

*Ainsworth* is inapplicable to Transocean's cross-claims or third-party complaints as to Dril-Quip. First, as Bundle A plaintiff Buddy Trahan has responded, and as noted above, the claims do not proceed under a vicarious liability theory. **Rec. Doc. 1904, at 11.** In the B1 Bundle, plaintiffs wanted to impute BP's negligence "up the ladder" to Anadarko and MOEX. But here, Dril-Quip has pointed to no one whose fault could be imputed vicariously "up the ladder" to Dril-Quip. In fact, Dril-Quip is "down the ladder" from BP as it appears Dril-Quip is BP's independent contractor, and there is no suggestion that Dril-Quip is indirectly or

---

[7] *See, e.g., Hickman v. S. Pac. Transp. Co.*, 262 So. 2d 385, 391 (La. 1972).

constructively liable for BP's negligence. Rather, Dril-Quip's own product and negligence is a cause of plaintiffs' injuries and Transocean's injuries. *Ainsworth* discussed the potential liability of a principal to an injured employee of an entity it hired specifically to be its independent contractor. Thus, in the case of a Dril-Quip employee attempting to sue BP for negligence, *Ainsworth* might have some defensive value for ***BP***. But that is not at all the situation presented by Trahan and by Transocean's cross-claims against Dril-Quip. Here, then, one is not confronted by the proposition set forth in the vicarious liability cases, where a principal is presumed not liable for its independent contractor's torts ***unless*** the plaintiffs or Transocean can prove some exception applies. Here, we have the simple situation where a plaintiff seeks to recover for a defendant's own, actionable negligence. *Ainsworth* does not apply.

Finally, even if *Ainsworth* does apply to Dril-Quip, it arose under the duty/risk analysis of article 2315 of the Louisiana Civil Code. The Fifth Circuit relied solely on the facts of a Louisiana Supreme Court decision to dispose of Ainsworth's allegation that Shell failed to intervene. *See* 829 F.2d at 551 (discussing *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493 (La. 1982)). In both *Ainsworth* and *Kent*, an independent contractor's injured employee attempted to impute liability to the principal, and under the particular facts of each case—generally, the principal had some knowledge of the condition that eventually injured the independent contractor's employee, but disclaimed liability in the parties' contract—the court did not see fit to impose a duty to intervene under the Civil Code. Dril-Quip has not attempted to argue that there is no such duty under the general maritime law—the law applicable to the negligence claims in this case, *see* **Rec. Doc. 3830, at 37** ("With admiralty jurisdiction comes the application of substantive maritime law.")—nor does it argue that the plaintiffs' direct liability claims such as Trahan's, and therefore Transocean's claims, would be disposed of similarly to

11

those in the Louisiana vicarious liability cases. In fact, as pleaded, Dril-Quip did owe duties to the plaintiffs that it breached in this case. Therefore, the Court must deny Dril-Quip's motion to dismiss Transocean's cross-claims and the motions to dismiss the third-party complaints.

## IV. IN THE ALTERNATIVE, TRANSOCEAN SEEKS LEAVE TO AMEND ITS CROSS-CLAIMS AND THIRD-PARTY COMPLAINTS.

Should the Court determine that Transocean's cross-claims and third-party complaints against Dril-Quip do not meet Rule 8's requirement of "a short and plain statement of the claim," Transocean moves in the alternative at this time for leave to amend. Given that a great deal of discovery has taken place in the MDL proceedings since Transocean filed its claims, an amendment will satisfy the issues set forth by Dril-Quip in the instant motions to dismiss. "The Court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

Out of caution, should Rule 16 guide the Court's consideration in the event of a post-scheduling-order amendment, FED. R. CIV. P. 16(b)(3)(A) ("The scheduling order must limit the time to . . . amend the pleadings. . . ."), Transocean has good cause to request and obtain the Court's leave should such an amendment be necessary, FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The Fifth Circuit has explained the district court's inquiry as follows:

> After a scheduling order deadline has passed, a party must show good cause to obtain leave to amend the operative pleadings. The district court's discretion to allow amendment or modification of a pretrial order is guided by the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."

*Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (internal citations omitted, quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533,

12

536 (5th Cir. 2003)). In *Meaux*, the trial court permitted an amendment and the Fifth Circuit found no abuse of discretion. The plaintiff's attorney argued 'inadvertence' in having omitted a lost profits ground from a pleading, which the court equated with no explanation at all. The importance of the amendment drove the court's consideration, as the amendment was the plaintiff's sole theory of recovery; in the trial court's words, plaintiff was "dead in the water" without it. The court found only minor prejudice in that, in the two years of discovery up to that point, defendants had actually addressed lost profits (i.e., no new discovery would be required). Finally, a continuance was not available because defendants waited until the eve of trial to challenge lost profits as a remedy. *Id.* at 167–68.

Applying *Meaux*'s factors to this case, Transocean's good cause is apparent. First, Transocean's cross-claims and third-party complaints against Dril-Quip were filed before Dril-Quip's representatives were deposed, and relied entirely on various plaintiffs' allegations against Dril-Quip that had been made on the information available in the first months after the explosion and spill. Second, the amendment is clearly important, as Dril-Quip has moved to dismiss Transocean's entire complaint against it. **Rec. Doc. 1554-1, at 8.** Third, the prejudice to Dril-Quip is slight, as discovery—whether taken by plaintiffs/claimants or defendants—has centered on the issues of each defendant's role in the operations at the Macondo site with a goal to fleshing out fault allegations. Dril-Quip would have been deposed and subject to discovery with or without Transocean's amending its cross-claim. Finally, because a continuance alone cannot cure what Dril-Quip construes as insufficiencies in Transocean's pleadings, the fourth factor is clearly not relevant here (and, in any event, Transocean does not request a continuance). An analysis of these four factors clearly shows Transocean's good cause for an amendment under Rule 16 should the Court find that Rule 15 no longer applies.

13

## **CONCLUSION**

For the reasons above, Dril-Quip's Motion to Dismiss Transocean's Cross-claims and Dril-Quip's Motions to Dismiss Transocean's Third-Party Complaints must be denied.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2011, I electronically filed the foregoing with the Court's CM/ECF system and/or by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller
KERRY J. MILLER