**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL No. 2179 |
| This Pleading Applies To: ***MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1*** | SECTION: J |
| This Pleading Applies To: **No. 10-2771 (Limitation Action)** | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Jeffrey Bossert Clark
Aditya Bamzai
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

***Counsel for BP***

## TABLE OF CONTENTS


**Page**

INTRODUCTION ....... 1

BACKGROUND ....... 3

ARGUMENT ....... 5

A. The Court's Determination That OPA Does Not Displace Maritime Claims Against Responsible Parties Is An Important, Controlling Question Of Law. ....... 5

B. There Is Substantial Ground For Disagreement With The Court's Ruling. ....... 6

C. An Immediate Appeal From The B1 Order Would Materially Advance The Ultimate Resolution Of This Complex MDL Proceeding. ....... 10

CONCLUSION ....... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Elec. Power Co. v. Connecticut*,
131 S. Ct. 2527 (2011)....................7, 8

*APCC Servs., Inc. v. AT&T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003)....................10

*Atlantic Sounding Co. v. Townsend*,
129 S. Ct. 2561 (2009)....................8, 9, 10

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981)....................7, 8

*Clausen v. M/V New Carissa*,
171 F. Supp. 2d 1127 (D. Or. 2001)....................2

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008)....................8

*Gabarick v. Laurin Maritime (Am.) Inc.*,
623 F. Supp. 2d 741 (E.D. La. 2009)....................2, 6, 7

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007)....................3

*In re Settoon Towing*,
No. 07-1263, 2009 WL 4730971 (E.D. La. Dec. 4, 2009)....................7

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
444 F.3d 371 (5th Cir. 2006)....................3

*Miles v. Apex Marine Corp.*,
498 U.S. 19 (1990)....................9, 10

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*,
924 F. Supp. 1436 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997),
*cert. denied*, 523 U.S. 1021 (1998)....................7

*Sokaogon Gaming Entm't Corp. v. Tushie-Montgomery Assocs., Inc.*,
86 F.3d 656 (7th Cir. 1996)....................5

*South Port Marine, LLC v. Gulf Oil Ltd. P'ship*,
234 F.3d 58 (1st Cir. 2000) ........ 2, 6, 7, 9, 10

*Strong v. B.P. Exploration & Prod., Inc.*,
440 F.3d 665 (5th Cir. 2006) ........ 3

*Tanguis v. M/V Westchester*,
153 F. Supp. 2d 859 (E.D. La. 2001) ........ 7

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
494 F. Supp. 1190 (E.D. Pa. 1980) ........ 3, 10

**Statutes**

28 U.S.C. § 1292(b) ........ 1, 3, 10, 13

*Oil Pollution Act*

33 U.S.C. § 2702 ........ 3, 6, 7, 8

33 U.S.C. § 2713(c) ........ 9

*Death on the High Seas Act*

46 U.S.C. § 30307(b) ........ 5

**Legislative History**

S. Rep. No. 101-94 (1989) ........ 4

**Other Authorities**

David W. Robertson, *Punitive Damages in U.S. Maritime Law:* Miles, Baker, and
Townsend, 70 LA. L. REV. 463 (2010) ........ 9

Charles A. Wright *et al.*, 16 FED. PRAC. & PROC. 2d § 3930 (2004) ........ 11

## INTRODUCTION

The BP Defendants respectfully request that this Court certify for interlocutory review one aspect of its B1 Order denying a portion of BP's motion to dismiss the B1 Master Complaint — the Court's holding that the Oil Pollution Act ("OPA") does not entirely displace general maritime claims against OPA Responsible Parties. (Doc. 3830, at 26-27 ("B1 Order").)[1] The BP Defendants respectfully submit that the Court's holding on this issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification for interlocutory review on this narrow but critical issue is therefore warranted.

***First***, there can be no dispute that the Court's holding implicates a "controlling question of law." The Court held that "OPA does not displace general maritime law claims for those Plaintiffs who would have been able to bring such claims prior to OPA's enactment." B1 Order 27. That is a purely legal issue dispositive of whether Plaintiffs may bring maritime claims against OPA Responsible Parties.

***Second***, there is a "substantial ground" for disagreeing with the Court's holding, because it is directly contrary to the leading cases on this issue. As the Court recognized, the First Circuit Court of Appeals and another Judge within this District have both held that OPA displaces maritime claims, including claims seeking "punitive damages [that are] not available under

---

[1] The B3 Master Complaint [Doc. 881] and the Amended B3 Master Complaint [Doc. 1805-1] are focused on personal injury claims, but also appear to assert claims for property damage [Doc. 881, Intro. at 3, ¶¶ 175, 181, 234-35, 242; Doc. 1805-1, ¶¶ 203, 255-56, 263]. *See also* Doc. 1406-1, at 25-26 (the BP Defendants' B3 motion to dismiss arguing that OPA displaces any property damage claims asserted in the B3 Master Complaint). The Court's Amended B3 Order [Doc. 4209] appears to read the B3 complaints as limited to personal injury claims. *See* Amended B3 Order 2. Given the potential ambiguity over whether the allegations in the B3 complaints overlap with the B1 Master Complaint, however, the BP Defendants respectfully request that, to the extent any property damage claims are deemed properly advanced under the B3 Master Complaint rubric, the Court grant certification of the Amended B3 Order on the displacement issue as well.

OPA." B1 Order 22-23 (citing *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000), and *Gabarick v. Laurin Maritime (Am.) Inc.*, 623 F. Supp. 2d 741, 747 (E.D. La. 2009)). Neither opinion can be reconciled with the Court's holding. Indeed, several other courts have reached a conclusion on OPA displacement contrary to that reached by this Court. *See, e.g.*, *Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127 (D. Or. 2001). By contrast, the Court cited no case (and we are aware of none) holding that OPA fails to displace maritime claims against OPA Responsible Parties, including punitive damage claims under maritime law.

Instead, the Court rested its holding on two "more recent Supreme Court precedents," which have (according to the Court) undermined the uniform lower-court case law on OPA displacement. *See* B1 Order 23. Respectfully, the Court's argument does not withstand scrutiny. Neither case on which this Court relied addresses the question whether OPA displaces maritime claims. To the contrary, the cases address arguments for common-law displacement and statutory regimes — the Clean Water Act and the Jones Act — that are materially different from OPA and the competing positions at stake in this enormous collection of *Deepwater Horizon* cases. At the very least, the BP Defendants have set forth a "substantial ground" for disagreeing with the Court's application of Supreme Court case law and the Court's rejection of *South Port Marine* and *Gabarick*. This is especially true since the Court held that OPA does partially displace maritime law, insofar as OPA establishes an across-the-board presentment procedure that the Court determined both OPA claims and maritime law claims alike must meet. B1 Order 26. No other court has ever found OPA to partially displace maritime law in that fashion.

***Third***, an immediate appeal of this issue would "materially advance the ultimate termination of the litigation." This complex MDL proceeding could go on for years, only for the controlling legal issues presented here to be resolved in a subsequent appeal long hence. Indeed,

interlocutory appeal is especially useful and appropriate in a multi-district litigation such as this, since "the certification procedure of 28 U.S.C. § 1292(b) was intended specifically to expedite the disposition of 'big' cases." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1243-44 (E.D. Pa. 1980) (citing legislative history from the Judicial Conference, which drafted the statute, and the House Judiciary Committee). With some frequency, the Fifth Circuit hears interlocutory appeals from motions to dismiss and summary judgment motions in large, groundbreaking cases like this one, *see, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 204 (5th Cir. 2007), and indeed has resolved legal questions specifically regarding OPA via the 1292(b) procedure, *see, e.g.*, *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 376 (5th Cir. 2006) (accepting and resolving, *inter alia*, OPA Section 2702(a) & (b)(2) issues). *See also Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 668 (5th Cir. 2006) (acting similarly to resolve OCSLA issues).

Accordingly, certification is appropriate to give the Fifth Circuit the opportunity to address this Court's interpretation of Supreme Court case law regarding this exceptionally important issue and to allow the Court of Appeals to decide for itself whether to agree with the First Circuit in *South Port Marine*.

**BACKGROUND**

In the B1 Order, this Court set out the types of claims that the over 100,000 individual private plaintiffs in MDL 2179 have brought for economic loss and property damages. *See* B1 Order 1. Plaintiffs' B1 Complaint had alleged claims under general maritime law, OPA, and various state laws, seeking punitive damages under all claims. *See id.* at 2-3. In relevant part, the B1 Order reaches two important holdings with respect to OPA displacement of maritime claims.

***First***, the B1 Order holds that "[t]o allow a general maritime claim against the Responsible Party would serve to frustrate and circumvent the remedial scheme in OPA." B1 Order 26. The Court reasoned that "OPA is a comprehensive statute addressing responsibility for oil spills, including the cost of clean up, liability for civil penalties, as well as economic damages incurred by private parties and public entities." *Id.* at 20-21. And the Court quoted a Senate Report explaining that OPA "create[s] a single Federal law providing cleanup authority, penalties, and liability for oil pollution." *Id.* at 21 (quoting S. Rep. No. 101-94, at 730 (1989)). The Court therefore recognized that OPA established a new "presentment" process that the B1 Plaintiffs must follow. Specifically, "claimants' maritime causes of action against a Responsible Party are displaced by OPA, such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure." *Id.* at 26; *see also id.* at 27 ("claims against the Responsible Party must comply with OPA's procedure, regardless of whether there is also a cause of action against the Responsible Party under general maritime law").

***Second*** — notwithstanding the Court's holding that allowing a general maritime claim against an OPA Responsible Party "frustrate[s] and circumvent[s] the remedial scheme in OPA" — the Court determined that "OPA does not displace general maritime law claims for those Plaintiffs who would have been able to bring such claims prior to OPA's enactment" and that Plaintiffs may therefore "assert plausible claims for punitive damages" against Responsible Parties. *Id.* at 27.

In reaching this conclusion, the Court recognized that its holding was out of step with other courts that have addressed the same issue. As the Court put it, a "handful of courts have had the opportunity to address whether OPA displaces general maritime law," *id.* at 22, and those

cases have uniformly held that OPA displaces maritime claims, including claims for punitive damages, *see id.* at 22-23. The Court did not cite any cases that have held OPA does not displace maritime claims for punitive damages. Instead, it based its holding on the belief that "more recent Supreme Court precedents cause this Court to question the notion that long-standing federal common law can be displaced by a statute that is silent on the issue." *Id.* at 23.

The Court reasoned that, under the Supreme Court precedents it identified, because "OPA does not mention punitive damages," "while punitive damages are not available under OPA, the Court does not read OPA's silence as meaning that punitive damages are precluded under general maritime law." *Id.* at 26. As a result, the Court adopted, in essence, a clear statement rule requiring Congress to speak directly to the issue before displacement can occur. *See id.* ("Congress knows how to proscribe punitive damages when it intends to, as it did in the commercial aviation exception under the Death on the High Seas Act, 46 U.S.C. § 30307(b).").

## ARGUMENT

### A. The Court's Determination That OPA Does Not Displace Maritime Claims Against Responsible Parties Is An Important, Controlling Question Of Law.

The Court's holding that OPA does not displace maritime claims against Responsible Parties, including claims for punitive damages, is an important, controlling question of law. As a practical matter, if the BP Defendants are correct, then Plaintiffs' maritime claims against them must be dismissed. That is precisely the sort of "make-or-break" issue for which Section 1292(b) was tailor-made. *See, e.g.*, *Sokaogon Gaming Entm't Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."). And there is no question that the issue is a purely legal one that controls whether Plaintiffs may bring maritime claims against the BP Defendants.

**B. There Is Substantial Ground For Disagreement With The Court's Ruling.**

There can also be little question that the BP Defendants have substantial grounds to disagree with the Court's holding on this issue. The B1 Order itself acknowledges that federal courts have uniformly held that OPA displaces federal common-law claims for damages covered by OPA, such as Plaintiffs' maritime claims against BP, *see* B1 Order 22-23, citing no cases that have reached a contrary conclusion.[2]

These precedents are clear. In *South Port Marine*, the First Circuit squarely held that "punitive damages were not available under OPA." B1 Order 22. The First Circuit reasoned — much like the B1 Order itself (at 20-21) — that "Congress established a comprehensive federal scheme for oil pollution liability." *South Port Marine*, 234 F.3d at 64. The First Circuit further observed that, as part of that comprehensive scheme, OPA sets "forth a comprehensive list of recoverable damages" and that "[a]bsent from that list of recoverable damages is any mention of punitive damages." *Id.*; *see also* B1 Order 22 (quoting this language from *South Port Marine*). OPA is a "comprehensive" statute whose "text . . . implies its mandatory and exclusive nature." *Gabarick*, 623 F. Supp. 2d at 745. Under the "plain language of the statute," OPA "applies to the damages listed in § 2702, which also specifically references its exclusive nature with respect to other provisions of law: '***Notwithstanding any other provision or rule of law***, and subject to the provisions of this Act . . . .'" *Id*. at 746 (quoting 33 U.S.C. § 2702(a)). Under these

[2] Indeed, even an important party adverse to the BP Defendants in this litigation agrees with core aspects of BP's position on displacement. The State of Louisiana has explained in two separate briefs filed with the Court that "OPA was intended to displace all existing federal oil spill liability and compensation laws in favor of a comprehensive solution." (State of Louisiana's Br. Regarding the Effects of the Court's Order on the B1 Master Complaint, at 2-3 [Doc. 4001]; *see also* State of Louisiana's Mem. of Law in Interest in and Opposition to Defendants' Pending Motions to Dismiss 14-15 (explaining that "OPA provides a single federal law providing clean up authority, penalties, and liability for oil pollution," that "OPA was intended by Congress to be the exclusive federal statute governing oil spills," and that "OPA occupies the entire field of federal legislation with respect to liability for oil discharges to navigable waters") [Doc. 1993].) In the State of Louisiana's words, "[t]he enactment of a comprehensive federal rule in an area of national concern by Congress generally trumps federal common law and admiralty claims, unless expressly preserved." (Doc. 4001, at 2 n.3.) Finally, the State of Louisiana favorably cited *South Port Marine* and *Gabarick*, two opinions that conflict with this Court's analysis of the displacement issue.

circumstances, "it would be no more appropriate to prescribe a different measure of damage than to prescribe a different statute of limitations, or a different class of beneficiaries." *South Port Marine*, 234 F.3d at 65. Thus, Congress "intended the enactment of the OPA to supplant the existing general admiralty and maritime law" for damages covered by OPA Section 2702. *Id.*[3]

The Court, however, chose not to follow these precedents, concluding instead that, because OPA "does not mention punitive damages," it was not intended to displace maritime law on the topic of punitive damages. B1 Order 26. That reasoning squarely conflicts with *South Port Marine* and *Gabarick*. In essence, the Court's holding mistakenly applies a "clear statement" rule for displacement of punitive damages under OPA — and, by doing so, inverts the traditional and controlling Supreme Court rule that there is a ***presumption in favor of displacement*** of common-law claims when a new federal statute is adopted to control a particular subject area. *See, e.g.*, *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 317 (1981). As a unanimous Supreme Court put it this past Term, "[l]egislative displacement of federal common law does not require the 'same sort of evidence of a clear and manifest [congressional] purpose' demanded for preemption of state law." *American Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2531 (2011). The "relevant question for purposes of displacement is 'whether the ***field*** has been occupied, not whether it has been occupied in a particular manner.'" *Id.* at 2538 (emphasis added).

This Court claimed to find support for its holding in "more recent Supreme Court precedents" that "cause[d] [the Court] to question the notion that long-standing federal common law can be displaced by a statute that is silent on the issue." B1 Order 23. That view can readily

---

[3] *See also Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998); *In re Settoon Towing*, No. 07-1263, 2009 WL 4730971, at *3 (E.D. La. Dec. 4, 2009).

be questioned and BP believes it to be mistaken. Neither *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), nor *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), interpret OPA. Neither case purports to alter *Milwaukee*'s presumption in favor of displacement — as the Supreme Court's reaffirmance of *Milwaukee* in *American Electric Power*, coming after both *Exxon Shipping* and *Townsend*, makes clear. Neither case can be read to carve out and preserve from displacement the ability to recover punitive damages as a maritime law remedy for plaintiffs seeking to recover damages that fall within the ambit of OPA Section 2702. And neither case supports the distinction the Court drew in finding that OPA partially displaces maritime law (on the question of presentment), but does not otherwise provide an exclusive set of compensatory federal oil spill remedies.

In *Baker*, the Supreme Court addressed Exxon's "untenable claim" that the Clean Water Act "somehow preempts punitive damages, but not compensatory damages, for economic loss." 554 U.S. at 489. The Court rejected this claim pointing out that it "fragment[ed] the recovery scheme," and that the Court had "rejected similar attempts to sever remedies from their causes of action." *Id.* Here, unlike in *Baker*, all courts considering the issue interpret OPA to displace ***all*** maritime law remedies for damages covered by OPA Section 2702, not only the maritime remedy of punitive damages. By contrast, it is the B1 Order that establishes a "fragmented recovery scheme," by holding that "OPA does displace general maritime law claims against Responsible Parties, but only with regard to procedure (i.e., OPA's presentment requirement)." B1 Order 38. OPA sets forth a comprehensive statutory scheme that speaks directly to ***all*** of the maritime claims the Plaintiffs seek to bring against Responsible Parties — as numerous courts have already held.

In *Townsend*, the Supreme Court held that the Jones Act "created a statutory cause of action for negligence, but did not eliminate pre-existing remedies available to seamen for the ***separate*** common-law cause of action based on a seaman's right to maintenance and cure." 129 S. Ct. at 2570 (emphasis added). The Court found instructive the fact that the Jones Act "bestows upon the injured seaman the right to 'elect' to bring a Jones Act claim, thereby indicating a choice of actions for seamen — not an exclusive remedy." *Id.* (reasoning that the statutory language allowing for "election" indicates that "Congress was envisioning the continued availability of [maritime] common-law causes of action"). That holding, however, is inapplicable here for two reasons. First, OPA is a far more comprehensive statute than the Jones Act, which "was enacted in 1920 to fill a gap in maritime law's fabric of protections for seamen." David W. Robertson, *Punitive Damages in U.S. Maritime Law:* Miles, Baker, and Townsend, 70 LA. L. REV. 463, 471 (2010).

Moreover, unlike the Jones Act at issue in *Townsend*, OPA does not contain any statutory language permitting Plaintiffs to "elect" to bring OPA claims, in lieu of some other preexisting federal common-law claims. To the extent that OPA refers to "election" at all, it speaks only of a choice that claimants have to seek a recovery from the Oil Spill Liability Trust Fund or from a Responsible Party — both aspects of the self-contained and expansive set of OPA remedies. *See* 33 U.S.C. § 2713(c). Congress provided no "election" of any kind as to additional common law remedies.

In this regard, *South Port Marine* correctly relies on *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). As the Supreme Court explained in *Townsend*, *Miles* held that "[i]t would have been illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones Act and [the Death on the High Seas Act]." 129 S. Ct. at 2572. That

is exactly the principle the First Circuit applied in *South Port Marine*. In *Townsend*, the Supreme Court reaffirmed *Miles*, explaining that its reasoning is "sound," *id.*, but was not applicable in *Townsend* because "the Jones Act does not address maintenance and cure or its remedy," *id.* By contrast, the reasoning in *Miles* is applicable here; OPA, unlike the Jones Act, contains no language about "election" of an OPA remedy, and is a comprehensive scheme that displaces maritime claims.

In short, when Congress enacts a comprehensive statute on a subject previously controlled by federal common law, the federal statute controls and displaces the federal common law. OPA is such a comprehensive statute, and thus entirely (not selectively) displaces pre-existing federal common law, including maritime law, for claims covered by OPA. As a result, OPA provides the sole remedy for plaintiffs asserting economic loss and property damage claims against OPA Responsible Parties.

### C. An Immediate Appeal From The B1 Order Would Materially Advance The Ultimate Resolution Of This Complex MDL Proceeding.

Finally, certification of the question presented "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Courts across the country have recognized that this statutory element is satisfied where, as here, "immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that [the district court's] rulings are reversed." *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 109 (D.D.C. 2003). Indeed, interlocutory appeal is especially useful and appropriate in a multi-district litigation such as this, since "the certification procedure of 28 U.S.C. § 1292(b) was intended specifically to expedite the disposition of 'big' cases." *Zenith Radio Corp.*, 494 F. Supp. at 1244.

Here, despite the Court's best efforts, this complex MDL proceeding could stretch on, only for the controlling legal issues presented here to be resolved on a subsequent appeal many years off into the future. Whether OPA must ***explicitly*** provide that maritime law is displaced in order for such common law to in fact be displaced is an important issue that may have further ramifications for other maritime-law issues in this litigation that have not yet been refined by concentrated motions practice. The BP Defendants count at least ***72 individual complaints*** that advance maritime claims of varying types. *See* Appendix (listing complaints). Moreover, since the Amended B1 Master Complaint invokes maritime law, all of the subsequently filed short-form joinders, inherently invoke maritime law.

In order to adjudicate each of those complaints, this Court would have to determine whether OPA displaces each part of the claim using the analysis that it undertook in determining that (i) OPA does not displace maritime punitive damages claims because it does not mention them, but (ii) does establish a universally applicable presentment requirement. It makes little sense for the parties and this Court to incur the relevant costs of such contests when a pivotal and foundational legal question, if decided differently, could resolve or simplify the case in substantially less time and with decreased expense. *See* Charles A. Wright *et al.*, 16 FED. PRAC. & PROC. 2d § 3930 (2004) ("[t]he advantages of immediate appeal increase with . . . the length of the district court proceedings saved by reversal of an erroneous ruling . . . and the substantiality of the burdens imposed on the parties by a wrong ruling").

Moreover, as the B1 Order recognizes, OPA's "intent is to encourage settlement and reduce the need for litigation." B1 Order 21. In part, settlement is encouraged through the OPA presentment process, by which "[c]laimants present their claims to the Responsible Party, who pays the claims and is then allowed to seek contribution from other allegedly liable parties." *Id.*

It is difficult, however, to reach settlements on individual OPA claims in light of the uncertainty engendered by this Court's displacement holding, which brings into play an extra-OPA body of complex federal common law. An immediate appeal to the Fifth Circuit, therefore, will advance one of OPA statute's central goals — the speedy and efficient resolution of individual claims.

In this regard, the BP Defendants are aware that the Court has scheduled a trial on Phase I of the MDL litigation for February 2012. The BP Defendants do ***not*** request a stay of this action or a postponement of that trial date while the requested appeal is pending. An immediate appeal of the certified question thus would not delay MDL 2179, but rather would ensure that any follow-on holdings of this Court during the trial are consistent with applicable law as clarified by the appellate court. If the Fifth Circuit were to hold either that plaintiffs' maritime claims are generally displaced or that plaintiffs' claims for punitive damages are specifically displaced, the issues for both the Phase I trial and for the MDL as a whole would be greatly simplified.

## CONCLUSION

For these reasons, the BP Defendants respectfully request that the Court certify for the Fifth Circuit's interlocutory review under 28 U.S.C. § 1292(b) the question whether OPA displaces general maritime claims against OPA Responsible Parties.

Date: October 13, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Jeffrey Bossert Clark
Aditya Bamzai
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

***Counsel for BP***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of October 2011.

/s/ Don K. Haycraft
Don K. Haycraft