**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | **MDL NO. 2179** |
| | * | |
| | * | **SECTION J** |
| | * | |
| | * | |
| This document relates to: | * | **Judge Barbier** |
| | * | |
| *All Cases* | * | **Magistrate Judge Shushan** |
| | * | |

**THE BP PARTIES' OPPOSITION TO DRIL-QUIP, INC'S MOTION TO DISMISS
THEIR COUNTER-COMPLAINT FOR FAILURE TO STATE A CLAIM**

*DRIL-QUIP. INC., BP EXPLORATION AND PRODUCTION INC., AND BP AMERICA PRODUCTION COMPANY ARE PARTIES TO A CONTRACT CONTAINING AN ARBITRATION CLAUSE, AND THE BP PARTIES SUBMIT THIS OPPOSITION CONTINGENT ON THE OUTCOME OF BP'S MOTION TO STAY LITIGATION AGAINST DRIL-QUIP IN FAVOR OF ARBITRATION.  IF THE BP PARTIES' MOTION TO STAY IS GRANTED, THEN THIS OPPOSITION IS WITHDRAWN.  THE BP PARTIES INTEND FOR THIS OPPOSITION TO BE EFFECTIVE ONLY IF BP'S MOTION TO STAY IS DENIED.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................5

I.     THE BP PARTIES' COUNTER-CLAIM ALLEGATIONS ARE SUFFICIENT
       UNDER GOVERNING PLEADING STANDARDS. ......................................................5

       A.     Federal Rules Require That A Complaint Be Plain And Concise, As
              Illustrated By The FRCP's Forms............................................................................5

       B.     By Their Terms, How Iqbal and Twombly Apply To A Pleading Depend
              On The Substantive Law And Particular Circumstances.........................................7

       C.     The BP Parties' Counter-claims Comply With The FRCP As Well As
              *Twombly* And *Iqbal*................................................................................................9

       D.     *Funk v. Stryker Corp.* Involves Pre-Emption Rather Than The
              Straightforward Claims Alleged By The BP Parties...............................................14

II.    DRIL-QUIP OWES LEGAL DUTIES TO THE BP PARTIES.......................................15

III.   TO THE EXTENT THE COUNTER-CLAIMS ARE DISMISSED, THE BP
       PARTIES SHOULD BE ALLOWED TO RE-PLEAD...................................................18

CONCLUSION....................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ainsworth v. Shell Offshore, Inc.*,
829 F.2d 548 (5th Cir. 1987) ................................................................. 15

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
525 F.3d 8 (D.C. Cir. 2008) ............................................................. 5, 6, 8

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S. Ct. 1937 (2009) ............................................... passim

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988) .............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... passim

*Boyett v. Keene Corp.*,
815 F. Supp. 204 (E.D. Tex. 1993) ....................................................... 16

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
476 U.S. 858 (1986) ....................................................................... 16, 17

*Funk v. Stryker Corp*,
631 F.3d 777 (5th Cir. 2011) ........................................................... 14, 15

*Hamilton v. Palm*,
621 F.3d 816 (8th Cir. 2010) ........................................................... 5, 6, 7

*Hill v. McDonough*,
547 U.S. 573 (2006) .............................................................................. 6

*In re Great Lakes Dredge & Dock Co. LLC*,
624 F.3d 201 (5th Cir. 2010) ............................................................... 17

*Jones v. Bock*,
549 U.S. 199 (2007) .............................................................................. 6

*Keranos, LLC. v. Analog Devices, Inc.*,
2011 WL 4027427 (E.D. Tex. Sept. 12, 2011) ........................................ 6

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) .............................................................................. 7

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*LML Patent Corp. v. Nat'l Bank of Daingerfield,*
  2011 WL 1478517 (E.D. Tex. Mar. 24, 2011) ......................................................... 6

*Lormand v. U.S. Unwired, Inc.,*
  565 F.3d 228 (5th Cir. 2009) ................................................................................. 10

*McZeal v. Sprint Nextel Corp.,*
  501 F.3d 1354 (Fed. Cir. 2007); ............................................................................. 6

*Montgomery v. Sears Roebuck & Co.,*
  720 F. Supp. 2d 738 (W.D. La. 2010) ................................................................... 17

*Petersen Indus., Inc. v. Hol-Mac Corp.,*
  2011 WL 577377 (S.D. Miss. Feb. 9, 2011) ............................................................ 6

*Richardson v. West-Ward Pharms., Inc.,*
  2010 WL 3879541 (S.D. Miss. Sept. 28, 2010) ..................................................... 13

*Riegel v. Medtronic, Inc.,*
  552 U.S. 312 (2008) ............................................................................................. 14

*Ross v. Hanover Ins. Co.,*
  2009 WL 2762713 (E.D. La. Aug. 27, 2009) ......................................................... 17

*Saudi v. S/T Marine Atl.,*
  159 F. Supp. 2d 488 (S.D. Tex. 2000) .................................................................. 16

*Singleton v. Chevron U.S.A., Inc.,*
  2011 WL 2981396 (E.D. La. July 21, 2011) ..................................................... 12, 13

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) ........................................................................................... 6, 7

*United States v. Bame,*
  778 F. Supp. 2d 988 (D. Minn. 2011) ..................................................................... 6

*Vance v. Rumsfeld,*
  __ F.3d ___, 2011 WL 3437511 (7th Cir. Aug. 8, 2011) ........................................ 6

*Vickers v. Chiles Drilling Co.,*
  822 F.2d 535 (5th Cir. 1987) ................................................................................ 16

*Who Dat Yat Chat, LLC v. Who Dat? Inc.,*
  2010 WL 4812956 (E.D. La. Nov. 17, 2010) .......................................................... 5

*Winslow v. W.L Gore & Assocs., Inc.,*
  2011 WL 873562 (W.D. La. Mar. 11, 2011) ..................................................... 13, 15

<u>**TABLE OF AUTHORITIES (CONT'D)**</u>

<u>**Page(s)**</u>

*Wright v. Shell Offshore, Inc.*,
  2011 WL 690530 (E.D. La. Feb. 17, 2011) ...................................................................... 12, 13

<u>**STATUTES**</u>

15 U.S.C. § 1 .................................................................................................................................. 8

<u>**RULES**</u>

Fed. R. Civ. P.  8(a)(2) ................................................................................................................ 1, 5

Fed. R. Civ. P.  9 ........................................................................................................................... 7

Fed. R. Civ. P. 12(b) ..................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 13

Fed. R. Civ. P. 15(a)(2) ............................................................................................................... 17

Fed. R. Civ. P. 8 ........................................................................................................................ 5, 6

Fed. R. Civ. P. 8(d)(1) ................................................................................................................... 5

Fed. R. Civ. P. 84 ................................................................................................................. 5, 7, 11

Fed. R. Civ. P. Appendix, Rule 11 ......................................................................................... 5, 11

Fed. R. Civ. P. Appendix, Rule 13 ..................................................................................... 6, 7, 11

Fed. R. Civ. P. Appendix, Rule 15 ......................................................................................... 6, 11

Fed. R. Civ. P. Appendix, Rule 9 ............................................................................................... 7

## INTRODUCTION

BP Exploration & Production Inc. ("BPXP") and BP America Production Company's ("BPAP," and collectively with BPXP, the "BP Parties") counter-complaint properly alleges contribution and subrogation claims against Dril-Quip, Inc. ("Dril-Quip") in the context of governing substantive law and the claims other parties have filed against Dril-Quip.  Both certain plaintiffs and defendants such as Transocean and Halliburton have alleged that Dril-Quip is at fault for the *Deepwater Horizon* incident.  If the allegations of these parties are correct, then Dril-Quip should pay its share of any alleged resulting damages.  Therefore, after Dril-Quip sued BP, the BP Parties filed a counter-complaint bringing contribution, subrogation, and related claims against Dril-Quip.  That counter-complaint satisfies the pleading rules under the Federal Rules of Civil Procedure ("FRCP") and should not be dismissed.

Dril-Quip's motion to dismiss relies heavily on *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), but those cases do not change the rule of FRCP 8(a)(2) that a pleading contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Instead, they recognize that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.  For straightforward claims, a concise pleading is sufficient as demonstrated by the FRCP's Forms which contain several illustrative complaints.  Despite the factual complexity of this case, the BP Parties' counter-claims against Dril-Quip are garden variety contribution and subrogation claims that compare favorably to the FRCP's Forms.

Dril-Quip also claims that it does not owe a legal duty to the BP Parties, but this assertion is incorrect as a matter of law.  Dril-Quip relies on case law concerning whether a principal is liable for the acts of an independent contractor, but the BP Parties' counter-complaint, and the

complaints of other parties against Dril-Quip, do not seek to hold Dril-Quip liable for the acts of another.  Instead, those complaints allege that Dril-Quip is liable for its own acts in designing and manufacturing the Macondo well's wellhead system and for failing to exercise reasonable care in participating in drilling operations related to Macondo.  Under established law, Dril-Quip owes legal duties of reasonable care regarding its own wellhead systems and drilling activities.

Therefore, the BP Parties oppose Dril-Quip's Motion to Dismiss the BP Parties' Counter-Complaint for Failure to State a Claim ("Motion") and that Motion should be denied.  To the extent the Court dismisses any portion of the BP Parties' counter-complaint, the BP Parties request that any dismissal be without prejudice so as to allow the BP Parties to re-plead their claims against Dril-Quip.

## BACKGROUND

Dril-Quip acknowledges in its supporting memorandum that it has been named as a defendant in approximately twenty suits.  Dkt. 3254-1, Dril-Quip Mem. at 4-5.  Those bringing claims against Dril-Quip include both plaintiffs as well as co-defendants.  On February 18, 2011, Transocean filed its Rule 14(c) Third-Party Complaint to bring in various parties to the limitation of liability action, including Dril-Quip.  Dkt. 1320 ¶¶ 19, 48.  As Transocean explained, the plaintiffs and claimants in the limitation of liability action alleged that (i) Dril-Quip failed to exercise reasonable care while participating in drilling operations at the Macondo well; (ii) Dril-Quip failed to exercise reasonable care to prevent and/or mitigate the effects of an oil spill; and (iii) Dril-Quip provided wellhead systems for the Macondo well which failed to operate, were improperly designed, or were defective.  *Id.* ¶ 48.

On April 20 and May 20, 2011, various other co-defendants also filed cross-claims against Dril-Quip.  For example, Halliburton filed cross-claims alleging that Dril-Quip was strictly liable for product defect because the wellhead system designed and manufactured by

2

Dril-Quip (i) failed to prevent the escape of hydrocarbons; (ii) did not act as a barrier to hydrocarbon flow; (iii) failed to operate properly or at all; (iv) was defective because it failed to operate as intended; and (v) was in a defective condition and unreasonably dangerous.  Case No. 2:10-cv-02771, Dkt. 445 ¶ 59.   Halliburton also alleged that Dril-Quip was negligent by (i) failing to exercise reasonable care while participating in the drilling operations related to the Macondo well; (ii) failing to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill; and (iii) providing wellhead systems for the Macondo well which failed to operate, were improperly designed, and/or possessed product defects.  *Id.* ¶ 54.  In addition, Transocean filed cross-claims alleging that "Dril-Quip is liable to Transocean for its defective design and/or manufacture of the wellhead systems … ."  Dkt. 2068 ¶ 82.

The BP Parties did not file any cross-claims against Dril-Quip, but Dril-Quip did file cross-claims against BPAP, BPXP, and BP, p.l.c. (collectively, "BP"), among other parties.  Dkt. 2467.  Dril-Quip brought a single claim against BP seeking contribution.  *Id.* ¶¶ 39-42.  Dril-Quip's allegations against BP reference those alleged by plaintiffs and the claimants in limitation.  *Id.* ¶ 20.  Dril-Quip claimed that if it was found liable, then it has the right to contribution from other parties found liable.  *Id.* ¶ 42.

In response, on June 20, 2011, the BP Parties filed their counter-complaint against Dril-Quip.  Ex. 1, The BP Parties' Counter-Complaint Against Dril-Quip, Inc., Dkt. No. 2918.  The counter-complaint states that Dril-Quip manufactured and built the wellhead systems for the Macondo well.  *Id.* ¶ 8.  Dril-Quip provided these wellhead systems pursuant to a "Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads" between it and

BPAP (the "Services Contract").[1]   *Id.* ¶ 9.   The Services Contract imposed various duties on Dril-Quip, including to perform its work with all due skill, care and diligence and in accord with good and sound construction practices and to be responsible for ensuring that all work was in accordance with applicable specifications and standards.   *Id.*

The BP Parties' counter-complaint continued by explaining that various lawsuits and claims have been filed relating to the *Deepwater Horizon* incident, and that certain complaints included allegations and claims against Dril-Quip.   *Id.* ¶ 13.   Specifically, the BP Parties' counter-claims noted that other complaints alleged that Dril-Quip is at fault for the *Deepwater Horizon* incident because, among other things:   (i) Dril-Quip's wellhead systems were defectively designed; (ii) Dril-Quip's wellhead systems were defectively manufactured; (iii) Dril-Quip's wellhead systems were unreasonably dangerous as supplied; (iv) Dril-Quip failed to exercise reasonable care while participating in the drilling operations related to the Macondo well; and (v) Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill.   *Id.* ¶ 16.   The counter-complaint states that if such allegations are true, then the *Deepwater Horizon* incident would be, "in whole or in part, due to the fault, breach of contract, negligence, products liability, and other violations of law and contract by Dril-Quip."   *Id.* ¶ 17. On this basis, the BP Parties brought counts against Dril-Quip for contribution, subrogation, and related claims.   *Id.* ¶¶ 18, 23, 28, 34.

---

[1]   BPXP also is a party to the Services Contract.  Ex. 2, Amendment No. 3 to Services Contract.

**ARGUMENT**

**I.   THE BP PARTIES' COUNTER-CLAIM ALLEGATIONS ARE SUFFICIENT UNDER GOVERNING PLEADING STANDARDS.**

Dril-Quip's Motion primarily argues that the BP Parties' counter-claim is not sufficiently pled under *Iqbal* and *Twombly*, but this assertion ignores that those Supreme Court precedents did not abrogate the notice pleading standards of FRCP 8 and that each complaint must be considered in the context of governing law and the claims it alleges.  *E.g.*, *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) ("We conclude that *Twombly* leaves the long-standing fundamentals of notice pleading intact.").   When compared to the requirements of FRCP 8 and *Iqbal* and *Twombly*'s direction that a court consider the context of the case in deciding a motion to dismiss, the BP Parties' counter-complaint comfortably meets the applicable pleading standards.

**A.   Federal Rules Require That A Complaint Be Plain And Concise, As Illustrated By The FRCP's Forms.**

FRCP 8 provides that a pleading "must contain: a short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2); *see also Who Dat Yat Chat, LLC v. Who Dat? Inc.*, 2010 WL 4812956, at *2 (E.D. La. Nov. 17, 2010) (Barbier, J.).   "Each allegation must be simple, concise, and direct.  No technical form is required."  FRCP 8(d)(1); *Who Dat*, 2010 WL 4812956, at *2.

The FRCP contains an appendix with several form complaints to guide litigants, which "*suffice under these rules* and illustrate the simplicity and brevity that these rules contemplate." FRCP 84 (emphasis added); *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010); *Aktieselskabet*, 525 F.3d at 16-17.  These form complaints typically explain the defendant's liability in a single sentence, briefly describing the defendant's conduct and stating that it violated the applicable legal principle.  For example, Form 11 states that a party pleads

5

negligence by stating that "On _date_, at _place_, the defendant negligently drove a motor vehicle against the plaintiff." The liability allegation of Form 15 regarding conversion provides that a plaintiff need only plead that "On _date_, at _place_, the defendant converted to the defendant's own use property owned by the plaintiff. The property converted consists of _describe_." Form 13 sets forth a complaint for negligence under the Federal Employers' Liability Act ("FELA") whose only liability allegation is that "During this work, the defendant, as the employer, negligently put the plaintiff to work in a section of the tunnel that the defendant had left unprotected and unsupported."

After *Iqbal* and *Twombly*, courts continue to rely on these Forms to interpret whether a complaint's allegations satisfy FRCP 8. *Vance v. Rumsfeld*, __ F.3d ___, 2011 WL 3437511, at *13 (7th Cir. Aug. 8, 2011); *Hamilton*, 621 F.3d at 818; *Aktieselskabet*, 525 F.3d at 16-17; *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007); *Keranos, LLC. v. Analog Devices, Inc.*, 2011 WL 4027427, at *5-6 (E.D. Tex. Sept. 12, 2011); *United States v. Bame*, 778 F. Supp. 2d 988 (D. Minn. 2011); *LML Patent Corp. v. Nat'l Bank of Daingerfield*, 2011 WL 1478517, at *1-2 (E.D. Tex. Mar. 24, 2011); *Petersen Indus., Inc. v. Hol-Mac Corp.*, 2011 WL 577377, at *3 (S.D. Miss. Feb. 9, 2011).

Indeed, Supreme Court precedent requires that courts use FRCP 8 and the FRCP's Forms to judge the sufficiency of complaints. The Supreme Court has repeatedly held that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts." *Jones v. Bock*, 549 U.S. 199, 213 (2007)[2] (citing *Hill v. McDonough*, 547 U.S. 573, 582 (2006); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); and *Leatherman v. Tarrant Cnty. Narcotics Intelligence &*

---

[2]     This brief omits all internal quotation marks and citations when quoting authorities.

*Coordination Unit*, 507 U.S. 163 (1993)).  "A requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation."  *Swierkiewicz*, 534 U.S. at 515; *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (holding that Federal Rules of Criminal Procedure are "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions.").  *Twombly* itself notes that it does not require any heightened pleading standard or broadening of FRCP 9, "which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation."  *Id.* at 569 n.14.  Indeed, *Twombly* relies on the Forms, explaining that the allegations in that case "contrast[] sharply with the model form for pleading negligence, Form 9."  550 U.S. at 565 n.10.  Lower courts relying on these precedents have recognized that "Rule 84 and Form 13 may only be amended by the process of amending the Federal Rules, and not by judicial interpretation."  *Hamilton*, 621 F.3d at 818.  Thus, a short and plain complaint similar to the FRCP's Forms continues to be sufficient under the federal rules after *Iqbal* and *Twombly*.

### B.  By Their Terms, How *Iqbal* and *Twombly* Apply To A Pleading Depends On The Substantive Law And Particular Circumstances.

*Iqbal* and *Twombly* do not impose an unvarying rule that applies across all cases and circumstances.  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task."  *Iqbal*, 129 S. Ct. at 1950.  The sufficiency of a complaint can be decided only by comparing it to the substantive law at issue.  *Iqbal's* recognizes that analysis of the underlying law is essential:  "In *Twombly* …  the Court *found it necessary first* to discuss the antitrust principles implicated by the complaint."  129 S. Ct. at 1947 (emphasis added).

Similarly, *Iqbal* analyzes the law of unconstitutional discrimination claims against government officials as well as the qualified immunity defense.  129 S. Ct. at 1947-49.

The requirements of the underlying substantive bodies of law explain the results in both *Twombly* and *Iqbal*.  *Twombly* was a complex antitrust case based on § 1 of the Sherman Act which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 1.  The case concerned the actions of local telephone and high-speed internet service providers in the wake of a congressional change to the laws dictating how they could compete.  550 U.S. at 548-50.  Plaintiffs did not allege that defendants entered into an actual agreement in restraint of trade.  *Id.* at 564.  Instead, plaintiffs relied on parallel conduct among the defendants.  *Id.*  The problem with the complaint – and the key to understanding *Twombly's* result – was that, under substantive antitrust law, parallel conduct alone cannot prove a violation of the Sherman Act § 1.  *Id.* at 553-54.  Instead, under antitrust law a plaintiff must allege facts beyond mere parallel conduct that makes a contract, combination, or conspiracy plausible.  *Id.* at 553-54, 556-57 & n.4.  Because the *Twombly* plaintiffs did not plead any facts making a conspiracy plausible, the complaint was dismissed.  *Id.* at 569.  "In sum, *Twombly* was concerned with the plausibility of an inference of conspiracy, not with the plausibility of a claim."  *Aktieselskabet*, 525 F.3d at 17.

The *Iqbal* result likewise depended upon the particular principles of the governing substantive law of qualified immunity and discrimination.  The plaintiff in *Iqbal* claimed he was discriminatorily detained as a suspected terrorist pursuant to a policy of detaining Arab Muslim men after September 11, 2001, and sought to hold the United States Attorney General and the Director of the FBI liable.  129 S. Ct. at 1942, 1944.  Iqbal argued that these high government officials could be liable under a theory of "supervisory liability" based on their knowledge of and

acquiescence in the acts of their subordinates.  *Id.* at 1949.  The Supreme Court rejected this theory of liability, and instead held that to state a claim of discrimination and overcome qualified immunity the plaintiff "must plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason, but for the purpose of discriminating on account of race, religion, or national origin."  *Id.* at 1948-49. Reviewing this complaint in light of the governing qualified immunity standard, the Supreme Court found that the plaintiff had not alleged any facts necessary to show that the defendants had purposefully discriminated against him.  *Id.* at 1951-52.  Instead, Iqbal's allegations were consistent with legitimate interests in detaining and securing suspected terrorists.  *Id.* at 1952. Thus, as in *Twombly*, the plaintiff's allegations did not satisfy the particular requirements of the governing law to state a claim for relief.

Review of *Twombly* and *Iqbal* thus establishes that they do not demand a mechanical application of rules to dismiss complaints for failure to state a claim.  Instead, the sufficiency of a pleading depends on the substantive law and overall circumstances of the case.  As *Iqbal* held, whether a complaint is sufficient "requires the reviewing court to draw on its judicial experience and common sense."  129 S. Ct. at 1950.

C.    **The BP Parties' Counter-claims Comply With The FRCP As Well As *Twombly* And *Iqbal*.**

With the understanding that long-standing notice pleading standards still apply and the lessons of *Twombly* and *Iqbal* depend on substantive law and relevant circumstances, the BP Parties' counter-claims can properly be evaluated.  To prevail on a Rule 12(b) motion to dismiss, a counter-plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Iqbal*, 129 S. Ct. at at 1949; *Twombly*, 550 U.S. at 547.  A claim is facially plausible when the counter-plaintiff pleads facts that allow the court to draw the reasonable inference that the

9

defendant is liable for the misconduct alleged.  *Iqbal*, 129 S. Ct. at 1949.  A counter-complaint should contain a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to give a defendant fair notice of the claims against it.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 256 (5th Cir. 2009).   A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the counter-plaintiff.  *Id.* at 232-33.

The BP Parties' counter-claims satisfy this threshold for denying Dril-Quip's Motion. The counter-complaint explains that Dril-Quip provided the wellhead assembly for the Macondo well pursuant to a contract with BPAP, and that the Macondo well blew out causing damages to the BP Parties.  Ex. 1 ¶¶ 8-12.  Under the Service Contract, Dril-Quip owed various duties to BPAP, including to perform its work for BP with all due skill, care and diligence, in accordance with good and sound construction practices, and in compliance with applicable specification and standards.  *Id.* ¶ 9.  Complaints by other parties "allege that Dril-Quip is at fault for the *Deepwater Horizon* incident because, among other things:

(a)   Dril-Quip's wellhead systems were defectively designed;

(b)   Dril-Quip's wellhead systems were defectively manufactured;

(c)   Dril-Quip's wellhead systems were unreasonably dangerous as supplied;

(d)   Dril-Quip failed to exercise reasonable care while participating in the drilling operations related to the Macondo well; and

(e)   Dril-Quip failed to exercise reasonable care to ensure that adequate safeguards, protocols, procedures, and resources were available to prevent and/or mitigate the effects of an oil spill."

*Id.* ¶ 16.  Finally, the counter-complaint alleges that if these allegations were true, then the *Deepwater Horizon* incident was, "in whole or in part, due to the fault, breach of contract, negligence, products liability, and other violations of law and contract by Dril-Quip."  *Id.* ¶ 17.

Thus, if these allegations are true, the BP Parties are entitled to recovery from Dril-Quip under contribution, subrogation, and related theories. *Id.* ¶¶ 18, 23, 28, 34.

The counter-complaint sets forth the facts establishing Dril-Quip's liability and provides notice to Dril-Quip of the BP Parties' claims against it. Similarly, the allegations of paragraph 16 provide sufficient facts to show that the BP Parties' claims against Dril-Quip are facially plausible. If those allegations made by other parties are true, then this Court can draw the reasonable inference that Dril-Quip is liable in both contribution and subrogation to the BP Parties.

Indeed, the counter-complaint provides at least as much information concerning the basis of the BP Parties' counter-claims as the FRCP's forms that "suffice under these rules." FRCP 84. The counter-complaint's allegations in paragraph 16 are equivalent to Form 11's allegation that "the defendant negligently drove a motor vehicle against the plaintiff." There is no meaningful difference between Form 11's operative allegation and alleging that, for example, "Dril-Quip failed to exercise reasonable care while participating in the drilling operations related to the Macondo well." Ex. 1 ¶ 16. Similarly, the counter-complaint's allegations provide at least as much detail as Form 15's operative allegation that "the defendant converted to the defendant's own use property owned by the plaintiff. The property converted consists of *describe*." The same holds true for a comparison to Form 13 and other Forms. As the Forms are sufficient under the law, so are the BP Parties' counter-claims.

*Iqbal* and *Twombly* do not require a different result. The causes of action in those cases involved substantive law holding that particular sets of facts could not establish liability. Conscious parallelism could not establish antitrust liability in *Twombly*, and allegations of any intent other than specific intent to discriminate could not overcome the qualified immunity

defense in *Iqbal*. Thus, to state a facially plausible claim for relief the plaintiffs in those cases needed to plead facts avoiding mere conscious parallelism or intent to enact policies for national defense. In both cases, plaintiffs failed to plead facts satisfying the particular requirements of the substantive law at issue to establish liability.

By contrast, the BP Parties' claims against Dril-Quip, at bottom, are based on garden variety theories of breach of contract, negligence, and products liability. Ex. 1 ¶ 17. These are not complicated legal theories that require specific allegations to avoid defenses such as conscious parallelism or qualified immunity. More generally, they do not require interpretation of complex bodies of substantive law to determine pleading sufficiency, as was the case in *Twombly* and *Iqbal*. Instead, the substantive law for the BP Parties' claims are straightforward, and Drill-Quip's liability would be established if the allegations on which the BP Parties rely are proven. As shown by comparison to the FRCP's Forms, pleading that Dril-Quip's products were defective or that it failed to exercise reasonable care suffices to plead Dril-Quip's liability.

Recent case law – including decisions by this Court – confirms that the BP Parties' counter-complaint is sufficient. In *Singleton v. Chevron U.S.A., Inc.*, 2011 WL 2981396 (E.D. La. July 21, 2011) (Barbier, J.), the plaintiff brought claims for negligence, strict liability, and products liability relating to his alleged exposure to benzene. *Id.* at *1. One defendant, Valspar, attacked plaintiffs' complaint under *Iqbal* and *Twombly* for lacking factual allegations concerning which Valspar products plaintiff was exposed to, that Valspar's product contained benzene, and other supposed pleading deficiencies. *Id.* at *1-2. This Court rejected Valspar's argument, holding that plaintiff's allegation that he used primers, paints, and thinners manufactured by Valspar containing benzene was sufficient, even though plaintiff did not identify those products. *Id.* at *3.

In a similar case involving alleged harm from exposure to benzene, *Wright v. Shell Offshore, Inc.*, 2011 WL 690530 (E.D. La. Feb. 17, 2011) (Barbier, J.), defendant 3M Company argued that the complaint should be dismissed because it failed to plead what 3M product the plaintiff was exposed to, when in his work history he used the product, how plaintiff was exposed to the 3M product, or why 3M was liable for plaintiff's injuries. *Id.* at *1. Indeed, 3M argued that plaintiff's allegations were "little more than recitations of the legal elements of their various claims." *Id.* Nevertheless, despite these supposed deficiencies, this Court held that plaintiffs "have sufficiently plead enough facts to give Defendant 3M Company fair notice of the claims against it in order to survive dismissal under Rule 12(b)(6)." *Id.* at *2. The *Wright* complaint alleged simply that plaintiff "was exposed to benzene and benzene-containing chemicals and solvents aboard vessels which at all material times were owned and/or operated and/or supervised by Defendants. Defendants owed a duty and breached their respective duties owed to Complainant creating conditions of unseaworthiness and/or negligence consisting of, but not limited to" a list of allegations similar to those in paragraph 16 of the BP Parties' counter-complaint. *Compare* Ex. 1 ¶ 16 *with* Ex. 3, First Supplemental and Amending Complaint filed in *Wright v. Shell Offshore, Inc.*, No. 10-2108 (E.D. La.) Other trial courts within the Fifth Circuit have sustained the sufficiency of complaints based on similarly straightforward allegations. *E.g.*, *Richardson v. West-Ward Pharms., Inc.*, 2010 WL 3879541, at *3 (S.D. Miss. Sept. 28, 2010) (upholding breach of implied warranty claims based on allegation of inadequate labeling); *Winslow v. W.L Gore & Assocs., Inc.*, 2011 WL 873562, at *1 n.1 (W.D. La. Mar. 11, 2011) (holding that allegation that a deteriorating implanted wire mesh injured plaintiff stated a plausible claim).

13

As the *Singleton* and *Wright* complaints survived a 12(b)(6) motion, the BP Parties' counter-complaint – alleging that Dril-Quip provided the wellhead systems used for the Macondo well, that the Macondo well blew out, and that other parties have claimed that Dril-Quip's wellhead systems were defective and that Dril-Quip failed to exercise reasonable care – should survive a motion to dismiss as well.

> **D.**    ***Funk v. Stryker Corp.* Involves Preemption Rather Than The Straightforward Claims Alleged By The BP Parties.**

Dril-Quip claims that *Funk v. Stryker Corp*, 631 F.3d 777, 782 (5th Cir. 2011) requires dismissal of the case (Dril-Quip Mem. at 9-10), but again this ignores the substantive law at issue in *Funk*.  *Funk* involves a medical device products liability case, where the device in question received pre-market approval from the FDA.  631 F.3d at 779.  Under governing substantive law, such FDA pre-market approval preempts state tort law to the extent that state law differs from federal requirements.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).  State law can provide "a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements."  *Id.* at 330.  For the complaint at issue in *Funk*, the plaintiff brought state law products liability claims but offered no factual allegations that would avoid the preemptive effect of FDA pre-market approval under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), which "prohibits states from establishing 'safety or effectiveness' standards that are 'different from, or in addition to' the requirements under the FFDCA."  631 F.3d at 779-782.  Moreover, the complaint relied on the doctrine of *res ipsa loquitur*, which the district court held "would seem to be soundly refuted by *Riegel*."  *Id.* at 782.  Thus, just as the plaintiff in *Twombly* needed to allege facts to show a conspiracy, and the plaintiff in *Iqbal* needed to allege facts showing specific intent to discriminate, the plaintiff in *Funk* needed to allege facts that would avoid preemption.  Because Funk failed to allege facts

showing that FDA preemption did not apply, he did not allege a plausible claim and so his complaint was dismissed.  *Id.* at 781-82.

By contrast, the BP Parties' counter-claims do not involve questions of preemption; Dril-Quip does not claim that its wellhead systems are approved pursuant to a federal statute that can displace maritime law.   Thus, in the context of this case and its substantive law there is no requirement that the BP Parties make factual allegations like those that were necessary to state a plausible claim for liability against an FDA-approved medical device under the FFDCA.   The language from *Funk* that Dril-Quip quotes about the need for the plaintiff in that case to specify manufacturing defects, causal connections, how the manufacturing process failed, and "how it deviated from the FDA approved manufacturing process" does not apply here.   Dril-Quip Mem. at 8-9; 631 F.3d at 782.   At least one other trial court within the Fifth Circuit has distinguished *Funk* precisely on these grounds.  *See Winslow v. W.L Gore & Assocs., Inc.*, 2011 WL 873562, at *1 n.1 (W.D. La. Mar. 11, 2011) ("This case [*Funk*] is distinguishable from the instant action not only because of the preemption issues, but also secondary to the 'res ipsa' allegations in the *Funk* complaint that do not exist in our case.").   Without the need to overcome preemption to state a plausible claim, the BP Parties need only allege a short, plain statement of Dril-Quip's involvement and that other parties claim Dril-Quip failed to exercise reasonable care and that its wellhead systems were defective to plead a sufficient counter-complaint.

## II.   DRIL-QUIP OWES LEGAL DUTIES TO THE BP PARTIES.

Dril-Quip also claims that the counter-complaint does not allege facts showing that Dril-Quip owed a legal duty to the BP Parties (Dril-Quip Mem. at 7), but this assertion relies on inapposite case law and is belied by the legal doctrines for products liability and negligence. Dril-Quip relies on *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987), which holds that "a principal generally is not liable for the offenses an independent contractor commits in the

course of performing its contractual duties" and applies this principle to hold that the owner of an offshore drilling platform was not liable for injuries to the employee of a drilling rig contractor. *Id.* at 549-551.  But this principle simply does not apply to the claims against Dril-Quip.  The BP Parties' counter-complaint, and the claims of other parties on which the counter-complaint relies, does not seek to hold Dril-Quip liable as the principal for the fault of one of its contractors. Instead, those claims assert that Dril-Quip is liable for its own actions regarding its wellhead systems and operations at the Macondo well.  Thus, *Ainsworth* simply is not relevant to the claims against Dril-Quip.  The principles of *Ainsworth* provide BP a defense against plaintiffs alleging derivative negligence against BP for primary negligence committed by a contractor of the BP Parties like Dril-Quip.  But it cannot shield Dril-Quip from contribution claims brought by the BP Parties.

In fact, there are several sources for Dril-Quip's legal duties to the BP Parties.  The first is the Services Contract, which sets forth various duties from Dril-Quip to BPAP and BPXP.  Ex. 1 ¶ 9; Ex. 2, Amendment No. 3 to Services Contract (adding BPXP as a party).  Dril-Quip states that the "BP Parties make no claim" regarding duties from the contract (Dril-Quip Mem. at 7), but this is an error.  The BP Parties' counter-complaint states that if the allegations made in other complaints against Dril-Quip's are established, "then the *Deepwater Horizon* incident is, in whole or in part, due to the fault, *breach of contract*, negligence, products liability, and other violations of law and contract by Dril-Quip."  Ex. 1 ¶ 17 (emphasis added).   This allegation is incorporated into each of the BP Parties' contribution and subrogation claims, *id.* ¶¶ 17, 22, 27, 33, and establishes that the BP Parties' claims are based on Dril-Quip's contractual duties, among others.

16

Dril-Quip has other legal duties flowing from the law of products liability and negligence.  The counter-complaint alleges that Dril-Quip manufactured wellhead systems used for the Macondo well.  Ex. 1 ¶ 8.  The Supreme Court has held that under maritime law a manufacturer has a legal "duty of care" to protect against losses including personal injury and property damage caused by its products.  *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867-68 (1986); *see also Saudi v. S/T Marine Atl.*, 159 F. Supp. 2d 488, 491-92 (S.D. Tex. 2000) ("manufacturers have a duty to exercise reasonable skill and care in the design and manufacture of their products, commensurate with the risk of harm flowing from normal use of that product"); *Boyett v. Keene Corp.*, 815 F. Supp. 204, 211 n. 12 (E.D. Tex. 1993) ("in negligently providing a defective product, Keene breached a duty owed directly to the Shipowner to exercise reasonable care to avoid the foreseeable harm of the Shipowner's liability for unseaworthiness.").  Specifically, manufacturers have a duty to avoid defectively designed, manufactured, or unreasonably dangerous products.  *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538-39 (5th Cir. 1987).  Products liability law imposes a duty to the public generally, which includes the BP Parties.  *E. River,* 476 U.S. at 874.

Negligence law also imposed a "duty of ordinary care under the circumstances" on Dril-Quip.  *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010).  "Duty may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct."  *Id.*  Here, Dril-Quip could easily foresee that the BP Parties, as the purchasers of Dril-Quip's products and services, could be harmed by a failure of Dril-Quip to exercise ordinary care.  Thus, Dril-Quip also owed a legal duty to the BP Parties under negligence law.

III.   **TO THE EXTENT THE COUNTER-CLAIMS ARE DISMISSED, THE BP PARTIES SHOULD BE ALLOWED TO RE-PLEAD.**

If the Court determines that any portion of the BP Parties' counter-complaint is not sufficient, the BP Parties request that they be allowed to amend their complaint.  Under FRCP 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  Courts often allow such motions to amend in response to dispositive motions.  *E.g.*, *Montgomery v. Sears Roebuck & Co.*, 720 F. Supp. 2d 738, 747-48 (W.D. La. 2010); *Ross v. Hanover Ins. Co.*, 2009 WL 2762713, at *1-2 (E.D. La. Aug. 27, 2009).  Allowing an amendment would be particularly appropriate here for the BP Parties to provide any further factual allegations that may be needed.

## CONCLUSION

Given the substantive law and the circumstances of this case, the BP Parties' counter-claims satisfy all federal pleading standards, including the teachings of *Twombly* and *Iqbal*.  Dril-Quip owes duties to the BP Parties under both the Services Contract and the law of negligence and products liability.  Thus, Dril-Quip's Motion to Dismiss should be denied.  To the extent that Dril-Quip's motion is granted, the BP Parties respectfully request leave to re-plead their counter-claims.

Date:  October 17, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production
Inc. and BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2011.

/s/ Don K. Haycraft
Don K. Haycraft