IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>*All Cases* | * * * * | Judge Barbier<br><br>Magistrate Judge Shushan |

# MEMORANDUM IN SUPPORT OF BP'S MOTION TO STAY LITIGATION AGAINST DRIL-QUIP IN FAVOR OF ARBITRATION

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP p.l.c., BP Exploration & Production Inc., and BP America Production Company*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

      A.      The Contractual Relationship Between BP and Dril-Quip. ....................................2

      B.      Discovery Between Dril-Quip And BP. ..................................................................3

      C.      Dril-Quip's Cross-claims Against BP, and BP's Response. ...................................4

ARGUMENT ...................................................................................................................................5

I.      THE COURT SHOULD STAY LITIGATION OF CLAIMS BETWEEN BP AND DRIL-QUIP. ..............................................................................................................5

      A.      The Claims Between Dril-Quip and BP Are Covered By The Services Contract's Arbitration Clause. ................................................................................6

      B.      The FAA Requires That Litigation Covered by the Arbitration Clause Be Stayed. ....................................................................................................................7

      C.      The Stay of Litigation Should Extend to All BP Parties, Including BP p.l.c. ......................................................................................................................8

II.      BP HAS PRESERVED ITS RIGHT TO ARBITRATE CLAIMS WITH DRIL-QUIP. ......................................................................................................................9

      A.      Filing An Answer And Counter-claims Does Not Waive Arbitration Rights. ...................................................................................................................10

      B.      Minimal Discovery Does Not Waive Arbitration Rights. ....................................12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Alford v. Dean Witter Reynolds, Inc.*,
 975 F.2d 1161 (5th Cir. 1992) ................................................................................................. 7

*Am. Bankers Life Assurance Co. of Fla. v. Mister*,
 344 F. Supp. 2d 966 (N.D. Miss. 2004) ................................................................................. 11

*Am. Dairy Queen Corp. v. Tantillo*,
 536 F. Supp. 718 (M.D. La. 1982) ......................................................................................... 13

*Arthur Andersen LLP v. Carlisle*,
 129 S. Ct. 1896 (2009) ............................................................................................................. 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) ................................................................................................................. 5

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
 345 F.3d 347 (5th Cir. 2003) ................................................................................................... 9

*Brown v. Pac. Life Ins. Co.*,
 462 F.3d 384 (5th Cir. 2006) ............................................................................................... 8, 9

*Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*,
 427 F.2d 924 (5th Cir. 1970) ............................................................................................ 10, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991) ................................................................................................................... 5

*Griffin v. ABN AmroMortgage Group Inc.*,
 378 Fed. App'x 437 (5th Cir. 2010) ..................................................................................... 8, 9

*Grigson v. Creative Artists Agency, L.L.C.*,
 210 F.3d 524 (5th Cir. 2000)) ................................................................................................. 8

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
 304 F.3d 476 (5th Cir. 2002) ............................................................................................. 9, 10

*Haag v. InfraSource Corporate Servs., LLC*,
 2007 WL 2768991 (S.D. Miss. June 24, 2007) ..................................................................... 11

*Hafer v. Vanderbilt Mortg. & Fin., Inc.*,
 2011 WL 2523610 (S.D. Tex. June 24, 2011) ....................................................................... 11

# TABLE OF AUTHORITIES (CONT'D)

                                                                                                                                         **Page(s)**

*In re Compl. of Hornbeck Offshore (1984) Corp.*,
   981 F.2d 752 (5th Cir. 1993) .................................................................................... 6, 8

*Midwest Mechanical Contractors, Inc. v. Commonwealth Const. Co.*,
   801 F.2d 748 (5th Cir. 1986) ....................................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .................................................................................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................ 5

*Nicholas v. KBR, Inc.*,
   565 F.3d 904 (5th Cir. 2009) .................................................................................... 10

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) .................................................................................... 6

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*,
   767 F.2d 1140 (5th Cir. 1985) .................................................................................. 10

*Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*,
   293 U.S. 449 (1935) .................................................................................................... 6

*Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*,
   141 F.3d 234 (5th Cir. 1998) .................................................................................. 6, 9

*Tenneco Resins, Inc. v. Davy Int'l, AG*,
   770 F.2d 416 (5th Cir. 1985) ................................................................... 6, 10, 11, 12

*Terrebonne v. K-Sea Transp. Corp.*,
   477 F.3d 271 (5th Cir. 2007) ...................................................................................... 6

*Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*,
   243 F.3d 906 (5th Cir. 2001) .................................................................................. 7, 8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) .................................................................................................... 5

*Walker v. Bardford & Co.*,
   938 F.2d 575 (5th Cir. 1991) .................................................................................. 1, 12

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
   372 F.3d 339 (5th Cir. 2004) .................................................................................. 7, 9

*Williams v. Cigna Fin. Advisors, Inc.*,
   56 F.3d 656 (5th Cir. 1995) .............................................................................. 1, 10, 11

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

**STATUTES**

9 U.S.C. § 2 ............................................................................................................. 5

9 U.S.C. § 3 ............................................................................................................. 7

**RULES**

Fed. R. Civ. P. 13 ................................................................................................ 1, 4

Fed. R. Civ. P. 13(a) ............................................................................................. 11

Fed. R. Civ. P. 14(c) ............................................................................................... 7

Fed. R. Civ. P. 30 ................................................................................................... 4

## INTRODUCTION

A services contract governs the relationship between BP America Production Company ("BPAP"), BP Exploration and Production Inc. ("BPXP," and collectively with BPAP, the "BP Parties") and Dril-Quip Inc. ("Dril-Quip") requiring that "**ANY DISPUTE ARISING IN CONNECTION WITH THIS CONTRACT SHALL BE FINALLY SETTLED BY ARBITRATION.**" Dril-Quip's motion to dismiss the counter-claims of the BP Parties seeks a ruling on the merits of the dispute between BP and Dril-Quip which the parties agreed must be decided through arbitration. Therefore, this Court should stay the claims between the BP Parties and BP, p.l.c. (collectively, "BP") and Dril-Quip under the Federal Arbitration Act ("FAA"). This Court previously has enforced the FAA by requiring Anadarko to arbitrate its claims with BP, and the same result should apply to claims between BP and Dril-Quip. Dkt Nos. 2774, 3329.

The record and law demonstrate that BP has fully preserved its right to arbitrate against Dril-Quip. The BP Parties' discovery against Dril-Quip has been minimal, consisting only of a handful of document requests and participating in the deposition of a Dril-Quip employee requested by another party. BP did not file any cross-claims against Dril-Quip. Instead, once Dril-Quip filed its own cross-claims against BP, the BP Parties as defendants responded by filing an answer and counter-claims to preserve their rights under Federal Rule of Civil Procedure ("FRCP") 13, with both pleadings expressly providing notice to Dril-Quip of the BP Parties' reservation of their arbitration rights. Fifth Circuit cases have held that filing counter-claims and conducting minimal discovery do not waive a party's contractual arbitration rights. *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995); *Walker v. Bardford & Co.*, 938

F.2d 575, 577-78 (5th Cir. 1991). Therefore, BP moves to stay the claims between it and Dril-Quip.[1]

## BACKGROUND

### A. The Contractual Relationship Between BP and Dril-Quip.

Dril-Quip manufactures offshore drilling and production equipment for use in deepwater and other offshore applications. Dkt. No. 2918 ¶ 8. For the Macondo well, Dril-Quip manufactured and built the wellhead assembly, including the casing hanger, seal assembly, and lockdown sleeve components. *Id.*

Dril-Quip provided the wellhead assembly and related services pursuant to a contract with BP America Production Company ("BPAP") titled "Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads" (the "Services Contract," Ex. 1). *Id.* ¶ 9 The Services Contract was later amended to add BPXP as a party. Ex. 2, Amendment No. 3 to Services Contract. The Services Contract identifies Dril-Quip as a contractor for BP and specifies the types of services and products Dril-Quip will provide BP. Dkt. No. 2918 ¶ 9. Under the Services Contract, Dril-Quip's work is defined as "all system designs, assembly manufacturing/fabrication, and other services to be performed, and Items of Work to be procured, manufactured, assembled, completed, tested and warranted by [Dril-Quip] pursuant to and in accordance with this Contract." Ex. 1 at § 2.13. In turn, "Items" refers to "all tangible property including materials, equipment, supplies or machinery provided under the terms hereof and intended for incorporation into the Work." *Id.* at § 2.10. Thus, the Macondo wellhead assembly provided by Dril-Quip plainly falls under the scope of the Services Contract.

---

[1] In accord with the rulings of the Magistrate Judge, BP does not seek to stay discovery with Dril-Quip. Instead, BP seeks to stay the cross-claims and counter-claims between BP and Dril-Quip, including Dril-Quip's pending motion to dismiss the BP Parties' counter-claims. *See* Dkt. 3329 (ordering that "Anadarko's cross-claims against BP are accordingly **STAYED**.")

2

The Services Contract specifies that the parties will resolve their disputes through arbitration rather than litigation. *Id.* at Art. 29.01. The Contract broadly requires that "**ANY DISPUTE ARISING IN CONNECTION WITH THIS CONTRACT SHALL BE FINALLY SETTLED BY ARBITRATION.**" *Id.* It also provides for the parties to participate in non-binding mediation for certain disputes prior to arbitrating. *Id.*

### B.  Discovery Between Dril-Quip And BP.

Multiple parties have sued Dril-Quip through either complaints or cross-claims. Certain plaintiffs have named Dril-Quip as a defendant in the *Deepwater Horizon* litigation. Transocean also named Dril-Quip as a third-party defendant in Transocean's Rule 14(c) Third-Party Complaint. Dkt. No. 1320 at 14, 31. Transocean and Halliburton also have each filed cross-claims against Dril-Quip. Dkt. No. 2068; Case No. 2:10-cv-02771, Dkt. No. 445.

By being a defendant in this multidistrict litigation, Dril-Quip has received written discovery from the plaintiffs and various other parties. Specifically, the Plaintiffs Steering Committee ("PSC") has served six sets of omnibus discovery requests on Dril-Quip and the other defendants. Ex. 3. The PSC's omnibus requests to Dril-Quip have totaled thirty-seven separate document requests. *Id.* Moreover, Halliburton, Anadarko, and MOEX have also served written discovery on Dril-Quip. Ex. 4.

In defending itself as the target of the PSC and other parties, BP also has served minimal discovery on Dril-Quip. BP has not served any interrogatories or requests for admission to Dril-Quip. Instead, BP's written discovery on Dril-Quip has been limited to sixteen document requests. Ex. 5. BP served these requests on April 29, 2011, after plaintiffs had already served five sets of omnibus discovery requests on Dril-Quip. *Id.* Dril-Quip's responses to BP's requests (Ex. 6) indicated that most of the documents sought by BP had already been requested by the PSC. For the majority of BP's document requests, Dril-Quip stated that "Dril-Quip has

3

been conducting and is continuing to conduct a good faith and reasonable search ..., and has produced documents responsive to this Request." *E.g.*, Ex. 6 at 5-8.

The only deposition of Dril-Quip has been a 30(b)(6) deposition. Dril-Quip's deposition was requested and noticed by Halliburton. Exs. 7-8. BP's questioning at this deposition lasted approximately 61 minutes. *See* Ex. 9, excerpt of deposition transcript of Dril-Quip 30(b)(6) witness Gary Hurta containing questioning by BP. BP has not noticed or requested any Dril-Quip depositions.

### C. Dril-Quip's Cross-Claims Against BP, and BP's Response.

Under this Court's order, May 20, 2011, was the last date for defendants to file any cross-claims against other defendants. Although various other parties filed cross-claims against Dril-Quip, BP did not file any cross-claims or other complaints against Dril-Quip either before or on this deadline. Dril-Quip did, however, file cross-claims against BP on May 20, 2011. Dril-Quip's cross-claim contained a single count for contribution to the extent that Dril-Quip was found liable for any alleged damages.

In response to Dril-Quip's cross-claims, BP filed an answer and the BP Parties filed counter-claims under FRCP 13. The answer specifically pled that Dril-Quip's "claims are subject to the mediation and/or arbitration provisions in the Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads entered into between BPAP and Dril-Quip with an effective date of July 1, 2003, and the BP Parties reserve all rights to seek mediation and/or arbitration." Dkt. No. 2948 at 18. Similarly, the first page of the BP Parties' counter-claims expressly reserves their arbitration rights:

> The BP Parties reserve all rights to mediate and/or arbitrate any disputes with Dril-Quip under the Hardware Systems Design and Manufacturing Services Contract - Subsea Wellheads between BPAP and Dril-Quip with an effective date of July 1, 2003. The BP Parties note that they have not previously filed any cross-claims or other complaints against Dril-Quip and are filing this counter-complaint

4

under Federal Rule of Civil Procedure 13 as defendants to Dril-Quip's cross-claim.

Dkt. No. 2918 at 1 n.1. The BP Parties' counter-complaint did not propound any new allegations regarding Dril-Quip's liability, but instead relied on allegations made by other parties who asserted that Dril-Quip's wellhead systems were defective or unreasonably dangerous and that Dril-Quip had not exercised reasonable care during drilling operations at the Macondo well. Dkt. No. 2918 ¶¶ 13, 16.

In short, BP has not initiated any litigation against Dril-Quip, but has only filed pleadings responding to Dril-Quip's complaint against BP. Nor has BP sought any decision on the merits against Dril-Quip. Instead, BP now brings this motion precisely to stay claims between the parties and leave the merits to the arbitrators as both BP and Dril-Quip contractually agreed.

## ARGUMENT

### I. THE COURT SHOULD STAY LITIGATION OF CLAIMS BETWEEN BP AND DRIL-QUIP.

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the United States Supreme Court has explained, "[t]hese provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Because of this strong federal policy, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24–25. Indeed, any "[d]oubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960)). "Thus, as with any other

5

contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### A. The Claims Between Dril-Quip and BP Are Covered By The Services Contract's Arbitration Clause.

The arbitration clause in the Services Contract applies to "any dispute arising in connection with this contract." Ex. 1 at Art. 29.01. The Fifth Circuit has characterized such provisions as "broad" and having an expansive scope. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1069 (5th Cir. 1998); *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998). "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *In re Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 286 (5th Cir. 2007). Thus, at a minimum, the claims between BP and Dril-Quip should be stayed so that the arbitrators can decide whether the claims are arbitrable.[2]

Furthermore, the claims between BP and Dril-Quip are arbitrable under the Services Contract's plain wording. Under the contractual language, claims are arbitrable if they "aris[e] in connection with" the Services Contract. Ex. 1 at Art 29.01. Here, Dril-Quip seeks contribution from BP if Dril-Quip is found liable for damages from the *Deepwater Horizon*

---

[2] Moreover, under Fifth Circuit precedent, a party need not have filed a demand for arbitration to seek a stay of litigation pursuant to an arbitration clause. *Midwest Mechanical Contractors, Inc. v. Commonwealth Const. Co.*, 801 F.2d 748, 750 (5th Cir. 1986) ("[S]o long as a written agreement to arbitrate exists there is no specific requirement that arbitration actually be pending before a stay of litigation can be granted; in fact, the Supreme Court has affirmed a stay of litigation in which no affirmative demand for arbitration had been made, no motion to compel arbitration had been sought, and there were as yet apparently no ongoing arbitration proceedings.") (citing *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 453-54 (1935); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 419 (5th Cir. 1985) (holding that "it is not necessary that the party moving for a stay of proceedings have made a pre-suit demand for arbitration").

6

incident. The BP Parties' counter-claims for damages against Dril-Quip allege that Dril-Quip's wellhead assembly was defective and that it failed to exercise reasonable care during drilling operations. Both Dril-Quip's cross-claims and the BP Parties' counter-claims result from Dril-Quip providing the wellhead assembly and services for the Macondo well pursuant to the Services Contract. Therefore, both the BP Parties' claims against Dril-Quip and Dril-Quip's contribution claim against BP "aris[e] in connection with" the Services Contract and thus are arbitrable.

### B. The FAA Requires That Litigation Covered by the Arbitration Clause Be Stayed.

Congress enacted a strong policy that court proceedings related to arbitrable issues should be halted in favor of contractually agreed arbitration. The FAA provides that, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. "As a result, any litigation arguably arising under such a clause should be stayed pending the arbitrator's decision as to whether the dispute is covered." *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001).

Moreover, this stay is mandatory, not discretionary. "[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay." *AmClyde*, 243 F.3d at 909 (alteration in original); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344-45 (5th Cir. 2004).

7

The Fifth Circuit has held that arbitration provisions must be enforced, and litigation must be stayed, even in a complex admiralty case. *Texaco v. AmClyde* involved a multi-party admiralty action where parties had been brought into the litigation under Federal Rule of Civil Procedure 14(c). 243 F.3d at 908. The Fifth Circuit held that the admiralty nature of the action did not alter the fundamental requirements of the FAA, and the parties to an arbitration agreement were required to arbitrate their claims. *Id.* at 909–11. The appellate court also directed the district court to stay the litigation between the contracting parties. *Id.* at 912. Similarly, the Fifth Circuit has held that the requirements of the FAA are not preempted in a limitation action, and that parties in a limitation action who have agreed to an arbitration contract can be required to arbitrate their claims. *Hornbeck Offshore*, 981 F.2d at 753–55. Because the claims between Dril-Quip and BP are covered by the arbitration clause, they must be stayed.

C.   **The Stay of Litigation Should Extend to All BP Parties, Including BP p.l.c.**

All of the BP entities, including BP p.l.c., are entitled to a stay. BPAP is the BP entity that originally signed the Services Contract. Ex. 1 at p. 30. BPXP later joined the Services Contract as a party under an amendment to the Services Contract. Ex. 2. Thus, those two parties clearly are entitled to a stay under the Services Contract's plain language. Dril-Quip also has filed cross-claims against BP p.l.c., which although not a signatory to the Services Contract likewise is entitled to a stay of Dril-Quip's claims against it under governing law.

The Supreme Court has recognized that an arbitration "contract . . . [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009). For example, the theory of "equitable estoppel permits a nonsignatory to an arbitration clause to compel arbitration against a signatory 'when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the

8

signatories to the contract.'" *Griffin v. ABN AmroMortgage Group Inc.*, 378 Fed. App'x 437, 439–40 (5th Cir. 2010) (per curiam) (internal modifications omitted) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *see also Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (same).

Dril-Quip's disputes with BP directly fit within this principle and warrant the arbitration of its claims against BP p.l.c. along with its claims against the BP Parties. BPXP was the operator of the Macondo well and BPAP had contracts with certain third parties for work regarding the well. Any potential liability of BP p.l.c. to Dril-Quip would be entirely derivative of any BPXP or BPAP liability. Thus, any disputes Dril-Quip could have with BP p.l.c. are substantially interdependent, assert concerted misconduct, and are fundamentally intertwined with Dril-Quip's allegations against BPXP and BPAP. *See also Brown*, 462 F.3d at 398–99; *see also Waste Mgmt.*, 372 F.3d at 342–45; *Griffin*, 378 Fed. App'x at 440. Tellingly, Dril-Quip's own cross-claims treat the three BP entities as indistinguishable, stating that plaintiffs/claimants have alleged the same claims against each. Dkt. No. 2467 ¶ 20.

Having promised to arbitrate its disputes with BPXP and BPAP, Dril-Quip has no basis to complain for being required to comply with the terms of the Services Contract with respect to BP p.l.c. as well. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) ("It is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others.").

## II. BP HAS PRESERVED ITS RIGHT TO ARBITRATE CLAIMS WITH DRIL-QUIP.

BP's conduct in this litigation has not waived its arbitration rights against Dril-Quip. As this Court has recognized, there is a "strong presumption in favor of arbitration." Dkt. No. 3329

9

at 4; *see also Steel Warehouse*, 141 F.3d at 238 (5th Cir. 1998) ("There is a well-settled rule in this circuit that waiver of arbitration is not a favored finding, and there is a presumption against it."). Additionally, the "party claiming that another party waived the contractual right to arbitrate bears a heavy burden to establish the claim," and "any doubts thereabout must be resolved in favor of arbitration." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002). That burden is especially heavy where the party seeking a stay has raised arbitration as a defense in its answer. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1150-51 (5th Cir. 1985) (no waiver found where "[defendant] raised the defense of arbitration in its answer"); *Tenneco*, 770 F.2d at 420 (defendant's answer to the original complaint, seeking dismissal based on arbitration, put plaintiff "on notice as to [defendant's] desire to arbitrate the matter"); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 n.5 (5th Cir. 1970) ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver."). Here, BP put Dril-Quip on notice by expressly reserving its contractual right to arbitration in both its answer to Dril-Quip's cross-complaint as well as the BP Parties' counter-complaint.

The facts here establish that Dril-Quip cannot overcome the high hurdle of showing waiver. Overall litigation between BP and Dril-Quip has been minimal, consisting of BP answering Dril-Quip's cross-claims and the BP Parties' filing counter-claims, along with serving a handful of document requests on Dril-Quip.

### A.      Filing An Answer And Counter-Claims Does Not Waive Arbitration Rights.

Under Fifth Circuit precedent, the BP Parties' filing of a compulsory *counter-claim* against Dril-Quip in response to Dril-Quip's cross-claim does not constitute waiver. To be sure, a plaintiff filing an original complaint or cross-claims is strong evidence of electing to pursue litigation rather than arbitration. *E.g., Nicholas v. KBR, Inc.*, 565 F.3d 904, 907, 911 (5th Cir.

10

2009) (holding that by filing complaint and initiating action plaintiff had waived ability to demand arbitration). But under Fifth Circuit precedent filing compulsory counter-claims and an answer is consistent with seeking arbitration and does not effect a waiver. *E.g.*, *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995) (rejecting waiver where defendant had "answered Williams' complaint [and] asserted a counterclaim"); *Gen. Guar. Ins.*, 427 F.2d at 928-29 (finding no waiver although a party filed an answer to a court claim denying liability and filed counter-claims); *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (citing *General Guaranty Insurance Company* with approval and describing it as "finding no waiver although a party filed an answer to a court claim denying liability and filed counterclaims"); *Tenneco*, 770 F.2d at 421 (citing *General Guaranty Insurance Company* with approval and describing its holding as "not waiver when moving party filed answer denying liability and counterclaims").[3]

The Fifth Circuit's distinction between affirmative claims and counter-claims flows from the general principle that waiver will be found only when the party seeking arbitration "substantially invoked the judicial process to the detriment or prejudice of the other party." *Williams*, 56 F.3d at 661. A party that files an original complaint or cross-claim initiates litigation with the other party and becomes a plaintiff. Moreover, such a plaintiff has the unconstrained choice of whether to initiate litigation or demand arbitration. By choosing

---

[3] *See also Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 2011 WL 2523610, at *11 (S.D. Tex. June 24, 2011) (finding no waiver although a party filed an answer to a court claim denying liability and filed counter-claims); *Haag v. InfraSource Corporate Servs., LLC*, 2007 WL 2768991, at *2 (S.D. Miss. June 24, 2007) ("Defendants insist, and correctly so, that simply filing a timely answer, which contains an arbitration demand, and asserting a compulsory counterclaim at the risk of waiving the same, is not inconsistent with timely enforcement of the arbitration agreement."); *Am. Bankers Life Assurance Co. of Fla. v. Mister*, 344 F. Supp. 2d 966, 969 (N.D. Miss. 2004) (holding that "routine activity by the *Walton* defendants, including the filing of answers and counter-claims" did not waive arbitration rights).

11

litigation, the plaintiff has substantially invoked the judicial process and waived its right to arbitration. By contrast, a defendant to a complaint or counter-claim does not have the same choice. Instead, the Federal Rules of Civil Procedure, and accordingly the orders of this Court, require a defendant to promptly answer the complaint or risk a default as well as file counter-claims or risk forfeiting its causes of action, Fed. R. Civ. P. 13(a). *See Williams*, 56 F.3d at 661-62 (noting compulsory nature of counter-claims in holding that party had not waived its arbitration rights). Thus, a defendant who is required by the Federal Rules of Civil Procedure to file an answer and counter-claims should not waive its arbitration rights and, under Fifth Circuit precedent, does not.

Here, BP did not file any original complaint or cross-claims against Dril-Quip. The May 20, 2011 deadline for cross-claims came and went without BP initiating litigation against Dril-Quip. Instead, Dril-Quip filed its own claims against BP. BP's pleadings against Dril-Quip have been limited to defensive pleadings of an answer and counter-claim. Under Fifth Circuit precedent that answer and counter-claim do not waive arbitration. This is especially true because BP, in both its answer and the BP Parties' counter-claim, explicitly reserved its right to arbitrate against Dril-Quip. *See Tenneco*, 770 F.2d at 420-21.

B.     **Minimal Discovery Does Not Waive Arbitration Rights.**

This Court already has recognized that limited discovery does not waive arbitration rights. Dkt. No. 3329 at 5; *see also Tenneco*, 770 F.2d at 421 (waiver of arbitration will not be inferred "when only a minimal amount of discovery has been conducted" in the litigation). BP's discovery here has been minimal. BP has not sought or noticed the depositions of any Dril-Quip employees. Nor has BP served any interrogatories or requests for admission on Dril-Quip. Instead, the BP Parties have participated in a single deposition of a Dril-Quip employee that was noticed by a different party. *See* Exs. 7-9. The BP Parties also served sixteen requests for

12

production on Dril-Quip. Ex. 5. For over half of these requests, Dril-Quip stated that it already had produced or was producing the requested documents, presumably in response to Plaintiffs' prior document requests. Ex. 6. Dril-Quip could not be prejudiced by such limited requests.

In sum, the limited discovery is consistent with BP preserving its arbitration rights. Indeed, courts have declined to find a waiver of arbitration rights even in cases where much more substantial discovery has occurred. *E.g.*, *Tenneco*, 770 F.2d at 420-21 (no waiver where, prior to moving for stay, defendant had filed an answer to plaintiff's complaint and engaged in eight months of discovery, including serving interrogatories and a request for production of documents); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-77, 579 (5th Cir. 1991) (reversing waiver finding where defendant served plaintiffs with interrogatories and document requests, to which plaintiffs responded, and defendant answered plaintiff's complaint); *Am. Dairy Queen Corp. v. Tantillo*, 536 F. Supp. 718, 721-22 (M.D. La. 1982) (finding no waiver where the defendants filed a counter-claim, propounded their own interrogatories, and filed a motion to compel production of discovery).

## CONCLUSION

The Services Contract's arbitration provision applying to "any dispute arising in connection with this contract" plainly encompasses the claims between BP and Dril-Quip. BP has preserved its rights to arbitrate against Dril-Quip and expressly put Dril-Quip on notice regarding arbitration when it answered Dril-Quip's cross-complaint and the BP Parties filed counter-claims. Therefore, all claims between Dril-Quip and BP should be stayed in favor of arbitration.

Date: October 17, 2011                    Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP p.l.c., BP Exploration & Production Inc., and BP America Production Company*

14

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2011.

/s/ Don K. Haycraft
Don K. Haycraft