## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:   All Cases | § | |
| 2:10-cv-02771 | § | MAG. JUDGE SHUSHAN |
| | § | |
| | § | |

_____

### HALLIBURTON ENERGY SERVICES, INC'S RESPONSE IN OPPOSITION TO DEFENDANTS MOEX OFFSHORE 2007, MOEX USA CORPORATION, ANADARKO PETROLEUM CORPORATION, AND ANADARKO EXPLORATION AND PRODUCTION COMPANY'S MOTIONS TO DISMISS FIRST AMENDED CROSS-CLAIMS

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully submits this Response in Opposition to Defendants MOEX Offshore 2007 LLC,[1] MOEX USA Corporation, Anadarko Petroleum Corporation,[2] and Anadarko Exploration and Production Company LP's Motions to Dismiss First Amended Cross-Claims, and in support thereof respectfully shows as follows:

### I.
### SUMMARY OF OPPOSITION

Anadarko and MOEX argue that BP is an independent contractor, and as a result, they lack operational control over BP's actions, and therefore HESI's claims against them should be dismissed.   Anadarko and MOEX further argue, relying primarily on *Ainsworth v. Shell*

---

[1]    MOEX Offshore 2007 LLC (hereinafter "MOEX Offshore") filed its Motion to Dismiss [Doc. No. 2882] on June 20, 2011.  Likewise, MOEX USA Corporation (hereinafter "MOEX USA" and, collectively with MOEX USA, "MOEX") filed its Motion to Dismiss [Doc. No. 2885] on June 20, 2011.

[2]    Anadarko Petroleum Corporation (hereinafter "Anadarko Petroleum"), Anadarko Exploration and Production Company LP (hereinafter "Anadarko E&P" and, collectively with Anadarko Petroleum, "Anadarko") filed a joint Motion to Dismiss [Doc. No. 2927] on June 20, 2011.

*Offshore, Inc.* 829 F.2d 548 (5th Cir. 1987)[3] and its progeny, that they have no direct or vicarious liability for the offenses of an independent contractor in the course of performing its contractual duties.

Anadarko and MOEX owed a duty of care to HESI because the blowout and explosion were eminently foreseeable to both Anadarko and MOEX and they failed to prevent it. Furthermore, HESI has sufficiently pled operational control, such that dismissal on the pleadings is inappropriate at this stage.  Moreover, the *Ainsworth* rule does not apply because Anadarko and MOEX authorized unsafe practices and negligently entrusted decisions related to the Macondo Well and the *Deepwater Horizon* to BP and thus subject Anadarko and MOEX to liability. Anadarko's and MOEX's negligence is sufficient to support HESI's indemnity and contribution claims against them and Anadarko's and MOEX's Motions to Dismiss should be denied.

## II.
## PROCEDURAL HISTORY

In its First Amended Cross-Claims, HESI alleged contribution, indemnity, and negligence claims against MOEX and Anadarko arising out of the April 20, 2010 blowout and explosion aboard the MODU *Deepwater Horizon.*  *See* HESI's First Am. Cross-Claims ("HESI's Cross-Claims") (Doc. No. 445 at ¶¶ 1, 11-14, 34-35, 38-38).   HESI also asserted gross negligence and willful misconduct claims against Anadarko.  *See id.*, ¶ 46-50.

Anadarko and MOEX Offshore are co-lessees with BP Exploration & Production ("BP"), under the terms of the Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Act, Serial No. OCS-G 37306 (the "Lease"), while MOEX USA is the parent company of

---

[3]   The Court relied on *Ainsworth* in its Order and Reasons [As to Motion to Dismiss the B1 Master Complaint] to dismiss the B1 Plaintiffs' claims against Anadarko and MOEX.

MOEX Offshore.  MOEX and Anadarko moved to dismiss HESI's Cross-Claims, arguing that HESI failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Motion of Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Cross-Claims of HESI, Cameron International Corp., Dril-Quip, Inc., M-I, LLC, and Weatherford U.S., LP ("Anadarko Mot.") (Doc. No. 2927); *see also* Motion of Defendant MOEX USA Corp. to Dismiss First Amended Cross Claims of Defendant HESI ("MOEX USA Mot.") (Doc. No. 2885); Motion of Defendant MOEX Offshore 2007 LLC to Dismiss First Amended Cross Claims of Defendant HESI ("MOEX Offshore Mot.") (Doc. No. 2882). For the reasons stated herein, these motions must be denied.

On August 26, 2011, this Court entered its Order and Reasons as to Motions to Dismiss the B1 Master Complaint, ("Order and Reasons").  (Doc. No. 3830).  The Court concluded, among other things, that: (1) general maritime law applies in this matter, to the extent it is not displaced by federal statute; (2) general maritime law claims against non-Responsible parties are not displaced by the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*; and (3) the negligence claims against Anadarko and MOEX should be dismissed.  *See* Order and Reasons (Doc. No. 3830) pp. 11, 25-29.  Anadarko E&P remains subject to liability under OPA as a designated responsible party.[4]

### III.
### STANDARD OF REVIEW

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'"  *Lormand v. US Unwired*, 565 F.3d 228, 232 (5th Cir. 2009).  In ruling on a 12(b)(6) motion, the complaint must be liberally construed in favor of the pleader, and all facts pleaded in

---

[4]   While HESI recognizes that the likely effect of the Order and Reasons is the dismissal of HESI's Cross-Claims against Anadarko and MOEX, HESI respectfully disagrees with the Court's determination in this issue, and writes herein to preserve its arguments and to raise additional arguments not raised by the B1 Plaintiffs.

the complaint taken as true. *Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt of La.*, *LLC*, No. 09-6270, 2010 U.S. Dist. Lexis 49869, *11 (E.D. La. April 26, 2010); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1197).   "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Jefferson Parish Consol. Garbage Dist. No. 1*, 2010 U.S. Dist. Lexis 49869, at *13 (quoting *Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001)).

In order to defeat a motion to dismiss, HESI must merely "plead enough facts 'to state a claim to relief that is plausible on its face.'"  *Wright v. Shell Offshore, Inc.*, No. 10-2108, 2011 U.S. Dist. Lexis 16290, at *5-6 (E.D. La. Feb. 17, 2011) (quoting *Ashcroft v. Iqbal*, ___U.S. ___, 129 S. Ct. 1937, 1949 (2009)).  As this Court has stated, "[a] claim is facially plausible when the plaintiff pleads facts that allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Wright*, 2011 U.S. Dist. Lexis 16290 at *6 (quoting *Iqbal*, 129 S. Ct. at 1949).[5]  Moreover, "[w]hile it is true that the edges of the *Twombly/Iqbal* approach are still in jurisprudential flux, the heartland of authorities suggests that these two cases do not provide a wholly new pleading standard, but only a new tool for *analyzing* motions filed under Fed. R. Civ. P. 12(b)(6)."  *Winslow v. W.L. Gore & Assocs., Inc*., No. 10-00116, 2011 U.S. Dist. Lexis 25547, *2. (W.D. La. March 11, 2011) (emphasis in original).

---

[5]   In *Wright*, this Court denied a Rule 12(b)(6) motion because the plaintiff had "sufficiently pled enough facts to give defendant. . . fair notice of the claims against it in order to survive dismissal under Rule 12(b)(6)," stating that "plaintiffs' lack of certain specific factual allegations as to defendant. . . does not necessitate a dismissal of those claims.  The court finds that plaintiffs have pled enough facts to state a claim for relief that is plausible on its face and to give defendant. . . fair notice of those claims." *Wright*, 2011 U.S. Dist. Lexis 16290 at *6-7.

# IV.
# ARGUMENT AND AUTHORITIES

In its First Amended Cross-Claim, HESI asserted the following allegations against Anadarko and MOEX:

(a)      At all times material herein, the Joint Operating Agreement ("JOA") entered into by and between Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, and MOECO ("collectively, the "Non-Operating Cross-Defendants") and BP required BP to obtain the approval of the Non-Operating Cross-Defendants to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations. The JOA also provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.  HESI's Cross-Claims at ¶46.

(b)      The JOA further required BP to provide the Non-Operating Cross-Defendants with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information. The Non-Operating Cross-Defendants had the right to and did obtain "real-time" data as set forth in Section 5.7 of the JOA. The Non-Operating Cross Defendants received detailed technical information regarding operations conducted in connection with the Lease and the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig. HESI's Cross-Claims at ¶47.

(c)      The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Non-Operating Cross-Defendants, including, based upon information and belief, the costs of the well casing and wellhead and other materials purchased by BP. The JOA provided the Non-Operating Cross-Defendants with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease. HESI's Cross-Claims at ¶48.

(d)      On various dates, the Non-Operating Cross Defendants each designated BP as their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations.  HESI's Cross-Claims at ¶49.

(e)      The Non-Operating Cross-Defendants are liable for the acts and omissions of their agent, BP. The Non-Operating Cross-Defendants were further negligent, and/or acted with willful misconduct because they approved, authorized, and participated in BP's grossly negligent design and operations of the well. The Non-Operating Cross-Defendants were further negligent, grossly negligent, and/or acted with

willful misconduct because they knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action. The Non-Operating Cross-Defendants were further negligent, grossly negligent, and/or acted with willful misconduct by entrusting BP to make decisions relative to the Lease and to the *DEEPWATER HORIZON'S* drilling operations. HESI's Cross-Claims at ¶50.

These allegations are more than sufficient to withstand a *Twombly/Iqbal* challenge to HESI's First Amended Cross-Claims.[6]

### A.    Anadarko and MOEX Misstate the Applicable Law.

In support, Anadarko and MOEX cite a series of personal injury cases standing for the principle that a party is not liable for the negligence of its independent contractor absent some form of operational control over the activities of the contractor. *See* Anadarko Mot. at 14-15; MOEX Offshore Mot. at 10-11, 13-14 (citing *Ainsworth*, 829 F.2d 548; *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 U.S. Dist. Lexis 15577 (E.D. La. Oct. 13, 2000) (Barbier, J.); *Rogers v. Shell Oil Co.*, No. 92-1040, 1993 U.S. Dist. Lexis 1147 (E.D. La. Feb. 2, 1993); *Ronquille v. MMR Offshore Svcs., Inc.*, 353 F. Supp. 2d 680 (E.D. La. 2004); *Thibodeaux v. Vamos Oil & Gas Co.*, No. Civ. A. 03-1883, 2005 WL 3019773 (W.D. La. Nov. 10, 2005); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir. 1991)).  Contrary to Anadarko's and MOEX's broad assertion that these cases apply to "oil and gas operations,"[7] these authorities actually center on the relationship

---

[6]    Anadarko's only arguments directed toward HESI's gross negligence and willful misconduct claims are that they fail for the same reasons HESI's negligence claims fails.  Anadarko Motion pp 25-26. Accordingly, HESI only addresses its negligence claim in this Response.

[7]    Anadarko Motion p. 14 ("[I]t is fundamental that a duty to prevent harm resulting from oil and gas operations arises as a consequence of operational control over the activity;" "[i]t is also well settled law that where a principal contracts with an independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence."); MOEX Offshore Motion p. 10 ("[A] duty to prevent harm from oil and gas operations arises as a consequence of operational control over the activity;" "[i]t is also well settled law that where a principal contracts with an

between an operator and the service contractors it employs.  None of these cases deal with the relationship between an operator and non-operating lessees under the circumstances at issue here.[8]

Under the applicable law, maritime law, the "[d]etermination of the tortfeasor's duty, and its parameters, is a function of the court. That determination involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987).  Duty "is measured by the scope of the risk that negligent conduct foreseeably entails." *Id.* (quoting Harper, James & Gray, *The Law of Torts*, *Scope of Duty in Negligence Cases* §18.2 at 655 (2d ed. 1986)).  The *Consol. Aluminum* court:

> perceive[ed] a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

*Id.* at 68.

Anadarko and MOEX had unrestricted access to InSite Anywhere, which allowed them to monitor real-time data at any time, and to Wellspace, which allowed them to access reports, logs and other data regarding operations and analyses, including geological and petrophysical data.[9]  Anadarko received daily operating and drilling reports, mudlogging reports, PP/FG reports, wireline and LWD logs, shallow hazard reports, and geological reports.  Anadarko

---

independent contractor to conduct oil and gas operations but retains no operational control, the principal neither assumes nor owes any duty to protect others from the contractor's negligence.").

[8]   Anadarko and MOEX do cite two cases involving non-operator defendants in support of the proposition that they are not *vicariously liable* for BP's negligence. Anadarko Motion, at 16; MOEX Offshore Motion, at 12, n.8. (citing *Transcon. Gas Pipe Line Corp v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968), *aff'd in part & rev'd in part*, 424 F.2d 684 (5th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970); *Bolivar v. R.H. Oil & Gas Inc.*, 789 F. Supp. 1374, 1381-82 (S. D. Miss. 1991). HESI addresses these cases *infra*.

[9]   InSite Anywhere and Wellspace are HESI proprietary programs containing real-time data.

routinely kept itself apprised of daily developments and operational issues with the Macondo Well, reviewed the drilling plan, casing plan, and casing points, tracking mud weight, pore pressure and fracture gradient, and reviewing information regarding well control events. Anadarko closely evaluated geologic and lithographic information and diligently evaluated the sands, was specifically aware of BP's well design, casing, and completion plans, and Anadarko and MOEX received and approved BP's AFEs relating to changes in well design and operational modifications.  MOEX likewise monitored drilling progress, reviewed daily drilling reports, wireline log data, and mud log reports, and reviewed and approved AFEs.  Moreover, Anadarko had specific knowledge of Mississippi Canyon 252 geology, having submitted a bid for the MC 252 block at the MMS auction and had substantial Mississippi Canyon expertise due to its ownership interests in numerous Mississippi Canyon blocks as well as leases in nearby blocks exhibiting similar geology.  In its experience as an operator, Anadarko had firsthand knowledge that a Gulf of Mexico well with a narrow pore pressure and fracture gradient margin can have a catastrophic blowout, having experienced such an event in a Gulf of Mexico well in 2003.[10]

Anadarko and MOEX, co-lessees under a JOA worth millions of dollars, with unfettered access to information about the Macondo Well, and knowledge about operations, well planning and design, the geological formations in the well, drilling speed, tight margins, and numerous problems, delays, cost overruns, safety, and well integrity issues foresaw, or should have foreseen, the exact type of harm at issue.  Thus, there is ample support for this Court to find that Anadarko and MOEX owed a duty of care to HESI and others.  "Although the law does not set

---

[10]   To the extent HESI's pleading can be construed not to allege these facts, it requests leave to amend pursuant to Fed. R. Civ. P. 15(a) ("The court should freely grant leave "to amend" when justice so requires.").  This is especially true in a case such as this one in which the pleading deadline was set while fact discovery was ongoing.  Many if not most of the facts set out in this paragraph have been established during Phase One discovery which continues to this day.

out to protect every potential plaintiff from every risk, the plaintiff's burden on a motion to dismiss is minimal and the plaintiff need only prove a plausible set of facts that support their claim(s) and that justify relief." *Gulf Prod. Co., Inc. v. Hoover Oilfield Supply, Inc.*, 672 F. Supp. 2d 752, 757 (E.D. La. 2009) (quoting *Cleco Corp. v. Johnson*, 795 So.2d 302, 305 (La. 2001)).

**B.      Operational Control Is Not An Issue Appropriately Decided On The Pleadings.**

Even if Anadarko's and MOEX's independent contractor and personal injury cases were applicable here, the required determinations are inappropriately made at the pleadings stage. Every one of the cases cited by Anadarko and MOEX for this proposition was decided *on motion for summary judgment or directed verdict.  See Ainsworth*, 829 F.2d at 549 (summary judgment); *Thomas*, 2000 U.S. Dist. Lexis 15577 at *2 (summary judgment); *Rogers*, 1993 U.S. Dist. Lexis 1147 at *1 (summary judgment); *Ronquille*, 353 F. Supp. 2d at 681 (summary judgment); *Thibodeaux*, 2005 WL 3019773 at *1 (summary judgment); *Landry*, 889 F.2d at 1470 (directed verdict); *Duplantis*, 948 F.2d at 188 (summary judgment).

Neither Anadarko nor MOEX cites any authority for the proposition that determinations regarding operational control can be made at the pleading stage, based strictly on the JOA and the parties' pleadings.  *See Serigne v. Cox Operating, LLC*, No. 06-5861, 2008 U.S. Dist. LEXIS 89792, at *17-18 (E.D. La. Aug. 26, 2008) (denying summary judgment for working interest owner and operator as to vicarious liability claims based on negligence of contract operator; determination of no control could not be made based upon contract alone and distinguishing *Ainsworth*); *Calcote v. Coulon Sports Fishing Co.*, No. 92-3157, 1993 U.S. Dist. Lexis 16662, *5-8 (E.D. La. Nov. 22 1993) (recognizing that before determination of operational control could be made, Court must make the threshold finding that operator was an independent contractor); *Parta v. Grand Isle Shipyard, Inc.*, No. 06-844, 2007 U.S. Dist. Lexis 79124, *18-19 (W.D. La.

Oct. 24, 2007) (party claiming no duty because plaintiff's employer was an independent contractor bore burden of proving independent contractor status and failed to demonstrate an absence of material fact on that issue based solely on contract); *Dixon v. Danos & Curole Marine Contr., Inc.*, No. 97-2611, 1998 U.S. Dist. Lexis 18169, *4-8 (E.D. La. Nov. 13, 1998) (recognizing that while the independent contractor/principal determination is largely based on the contract, the court typically looks beyond the contract to determine whether the principal's actions constitute operational control; determination could not be made as a matter of law on motion for summary judgment, even though the contract provided for independent contractor status and lack of control.).

In *Calcote v. Coulon Sports Fishing Co.*, material fact issues existed regarding the relationship between operator and non-operating owners, which required denial of summary judgment.  In this case, the non-operator defendants jointly owned a platform and entered into a JOA that designated Conoco as operator, empowered Conoco to take action in an emergency and incur expenses for account of the parties, provided that all expenses and liabilities arising from operations be charged to the parties on a pro-rata basis, and provided that, upon removal of the operator, all equipment and supplies be surrendered to any successor operator.  *Calcote*, 1993 U.S. Dist. Lexis 16662 at *5-8.  Likewise, in *Serigne v. Cox Operating, LLC*, the Eastern District of Louisiana found summary judgment inappropriate based on the contract alone where it stated that the operator was an independent contractor but also provided that the operator would use its best efforts to keep the working interest owner informed so the owner could make informed decisions on what to do, and that the operator could make decisions without the owner where there was an emergency or less than $20,000 was at stake or when the decisions involved the

methods and procedures to be employed by the independent contractor in certain operations. 2008 U.S. Dist. Lexis 89792, at *16-17.

The facts and allegations against MOEX and Anadarko support the finding of a duty. Moreover, HESI's allegations are sufficient to satisfy the burden of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12.  Specifically, HESI alleged that:

(a)  BP was required to obtain the approval of Anadarko and MOEX to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations. HESI's Cross-Claims at ¶46.

(b)  The JOA provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.  *Id.*

(c)  The JOA required BP to provide the Non-Operating Cross-Defendants with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information. *Id.* at ¶47.

(d)  The Non-Operating Cross-Defendants had the right to and did obtain "real-time" data as set forth in Section 5.7 of the JOA.  *Id.*

(e)  The Non-Operating Cross Defendants received detailed technical information regarding operations conducted in connection with the Lease and the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig.  *Id.*

(f)  The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Non-Operating Cross-Defendants, including, based upon information and belief, the costs of the well casing and wellhead and other materials purchased by BP.  *Id.* at ¶48.

(g)  The JOA provided the Non-Operating Cross-Defendants with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease.  *Id.*

(h)  The Non-Operating Cross-Defendants designated BP as their operator and agent. *Id.* at ¶49.

(i)  The Non-Operating Cross-Defendants approved, authorized, and participated in BP's grossly negligent design and operations of the well.  *Id.* at ¶49.

(j)     The Non-Operating Cross-Defendants entrusted BP to make decisions relative to the Lease and to the *Deepwater Horizon's* drilling operations. *Id.*

As was the case in *Calcote* and *Serigne*, Anadarko and MOEX entered into a JOA that designated BP as operator, empowered BP to take action in an emergency or if the cost of the action is less than a prescribed amount (JOA ¶6.2), empowered BP to incur expenses on behalf of the parties (JOA ¶2.38 & Exhibit C), provided that all expenses and liabilities arising from operations be charged to the parties on a pro-rata basis (JOA ¶6.1), and provided that, upon removal of the operator, all equipment and supplies be surrendered to any successor operator (JOA ¶4.7). These detailed factual allegations are sufficient to withstand a motion to dismiss as to the issue of operational control.

### C.     MOEX and Anadarko Authorized Unsafe Practices.

While it is generally true that a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract, that is not the case where the principal *expressly or impliedly authorizes an unsafe practice*.[11] *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987); *see also Davis v. Mobil Exp. & Producing SE., Inc.*, 864 F.2d 1171, 1175 (5th Cir. 1989) (challenge to validity of jury verdict failed where evidence supported a finding of explicit authorization by company man of unsafe practice of independent contractor); *Morgan v. Hercules Drilling Co.*, No. 09-2091, 2011 U.S. Dist. Lexis 75973, *15-18 (E.D. La. July 13, 2011) (issue of explicit or implicit authorization of unsafe act could not be decided on summary judgment where employee of independent contractor was hurt disassembling equipment and there was evidence that company man had ordered equipment that would have to be disassembled before offloading and permitted contractor's employee to work

---

[11]   This exception to the rule of *Ainsworth* was not mentioned by the Court in the Order and Reasons; nor was it raised by the B1 Plaintiffs in their briefing related thereto.

30 hours without a break); *Boutin v. Newfield Exploration Co.*, No. 07-0567, 2009 U.S. Dist. LEXIS 103086, *5-6 (E.D. La. Nov. 2, 2009) (genuine issues of material fact existed as to whether defendant explicitly or implicitly authorized unsafe practices).

Anadarko and MOEX had unfettered access to information regarding the Macondo well. They had unrestricted access to reports, logs and other data regarding operations and analyses, and received daily operating, drilling, and various other reports.  They routinely kept themselves apprised of daily developments and operational issues with the Macondo well, including well control events.  Anadarko was specifically aware of BP's well design, casing, and completion plans, and received and Anadarko and MOEX specifically approved BP's AFEs relating to changes in well design and operational modifications.  Accordingly, they impliedly authorized BP's unsafe practices at the Macondo Well.

> **D.     Anadarko And MOEX Are Liable For Negligently Entrusting BP To Make Decisions Relative To The Lease And To The *Deepwater Horizon*'s Drilling Operations.**

HESI alleged that Anadarko and MOEX were negligent, grossly negligent, and/or acted with willful misconduct by entrusting BP to make decisions relative to the Lease and to the *Deepwater Horizon's* drilling operations. HESI's Cross-Claims at ¶50.  A party has a duty to exercise reasonable care in selecting or hiring an independent contractor.[12]  *Bourg v. BT Operating Co.*, No. H-08-0596, 2009 U.S. Dist. Lexis 29574, *30 (S.D. Tex. April 8, 2009) (applying Louisiana law); *see also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388-89 (2d Cir. 2004) (importing New York law into maritime law).  "To state a negligent hiring claim under maritime law, the plaintiff must establish that 'the employer either failed to exercise

---

[12]   This ground was not mentioned in the Order and Reasons, nor was it raised by B1 Plaintiffs their briefing related thereto.

reasonable care in the selection of the contractor or had actual or constructive knowledge of the contractor's insufficiency.'" *Guarascio v. Drake Assocs.*, 582 F. Supp. 2d 451, 457 (S.D.N.Y. 2008).

HESI has stated a plausible claim that Anadarko and MOEX negligently entrusted BP to direct operations on the Macondo Well. Moreover, the facts underlying HESI's allegations that Anadarko and MOEX negligently entrusted BP with substantial operational control on the Macondo Well—despite their knowledge of BP's notorious history of safety violations are still the subject of discovery. Therefore, this Court should deny Anadarko's and MOEX's motions to dismiss HESI's cross-claims as dismissal at this stage on the pleadings is inappropriate.

### E. Anadarko and MOEX Are Vicariously Liable For BP's Negligence. [13]

Arguing that it cannot be vicariously liable for BP's negligence based on its designation of BP as its "operator and local agent with full authority," Anadarko asserts that there is no private right of action for violations of MMS regulations. Anadarko Motion at pp. 17-20. Generally speaking, Anadarko is correct. Case law has not recognized a private cause of action for violation of MMS regulations. The form is "authority for the designated operator to act on your behalf and to fulfill your obligations under the Act, the lease, and the regulations in this part." Anadarko Motion at 17, n.6 (citing 30 C.F.R. §250.143). HESI does not dispute Anadarko's assertion that it cannot maintain a claim for violation of an applicable regulation. However, MMS regulation 30 C.F.R. §250.143 requires non-operating parties like Anadarko to provide "an executed Designation of Operator form." And HESI relies upon Anadarko's

---

[13]   Liability based on agency and/or joint venture was not mentioned in this Court's Order and Reasons, nor was it raised by B1 Plaintiffs in their briefing related thereto.

"Designation of Operator" form as evidence to support Anadarko's vicarious liability for BP's tortious actions.

In fact, the Designation of Operator form, attached as Exhibit B to Anadarko's Motion, provides that Anadarko designates BP "as the operator and local agent (designated operator) with full authority to act in the lessee's behalf in complying with the terms of the lease and applicable regulations."  Anadarko Motion at Exh. B.  Unlike the authorities which Anadarko relies upon, HESI does not argue that a cause of action arises from Anadarko's failure to comply with 30 C.F.R. §250.143, or any other applicable regulation.  Rather, HESI would show that Anadarko's designation of BP as its "local agent."  *See Liberty Svcs., Inc. v. Amoco Prod. Co.*, No. 90-4490, 1991 U.S. Dist. LEXIS 18620 (E.D. La. 1991) (designation of operator form may be relevant to determining the relationship between the parties; genuine issue of fact existed as to the true character of the relationship.").

Additionally, HESI's negligence, gross negligence, and willful misconduct claims should not be dismissed because MOEX and Anadarko are joint venturers with BP in the Macondo well prospect.[14]  "A joint venture is formed by 'two or more parties combining their property, labor, skill, etc. in the conduct of a venture for joint profit, with each having some right of control.'  *A joint venture may be created notwithstanding the fact that the contract between the parties expressly provides that they do not intend to create a joint venture.*"  *Liberty Svcs.*, 1991 U.S. Dist. Lexis 18620, at *10-11 (quoting *Cajun Electric Power Coop., Inc. v. McNamara*, 452 So.2d 212, 215 (La. App. 4th Cir. 1984)) (emphasis added).  The Court must look at the totality of evidence, rather than just the written contract.  *Id.* at *11.  A joint venture can also exist, even

---

[14]   To the extent HESI's pleading can be construed not to allege joint venturer liability against Anadarko and MOEX,  it requests leave to amend pursuant to Fed. R. Civ. P. 15(a) ("The court should freely grant leave "to amend" when justice so requires.").

though one of the joint venturers has entrusted control of the operation to another. *Shell Oil Co. v. Prestige*, 249 F.2d 413, 417 (9th Cir. 1957). According to the *Liberty Svcs.* court, summary judgment was inappropriate where the parties had only cited the contract and not provided evidence as to the actual way that the parties conducted business. *Id.* at *12.

Here, despite that it disclaims intent to create a joint venture (JOA ¶ 22.1), the JOA allocated joint control of the entire venture among Anadarko, MOEX, and BP. Each party had a voting interest equal to its working or participating interest. JOA ¶8.1.1. BP was prohibited from making expenditures in excess of $500,000 without prior approval of the participating parties. JOA ¶6.2. The JOA provided procedures to challenge BP's conduct of operations. JOA ¶4.2. The JOA also provided for the removal of BP as Operator. JOA ¶4.4. The JOA provided that BP would pay all costs incurred and that each party would reimburse BP in proportion to the participating party's interest. JOA ¶6.4. The JOA established a joint account, to which BP was to charge certain costs of operation, including liability insurance for third-party claims. JOA ¶20.2. Under the JOA, the participating parties shared in royalty payments in respect of their shares of production. JOA ¶19.2.2.[15]

In *Shell Oil Co. v. Prestige*, 249 F.2d 413 (9th Cir. 1957), Shell obtained oil and gas leases on a tract of land and then entered into a drilling and exploration agreement with a

---

[15] Anadarko and MOEX cite *Transcon Gas Pipeline,* 294 F. Supp. at 1031 and *Bolivar*, 789 F. Supp. 1374 for the proposition that, as a non-operator, they cannot be liable for the negligence of BP. In *Transcon*, the district court specifically found that the non-operating parties were not negligent in connection with damage to a pipeline caused by submerging a submersible drilling barge on top of the pipeline because they were justified in relying on the operator since the planning of the well and the selection of its site were matters left to the exclusive determination of the operator. This finding was not addressed on appeal and the court did not discuss any ground for the imposition of vicarious liability. 294 F. Supp. at 1031; 424 F. 2d at 693-94. Of course, no such finding has been made in this case. The finding at issue in *Bolivar* was made upon consideration of evidence submitted in connection with a motion to remand made on fraudulent joinder grounds. There, the court found no joint venture due to lack of control where the working interest owner, an individual, was not even aware that his co-defendant was the operator of the well and had no contact with the operator regarding the operation at issue. Obviously that is not the case here.

partnership that subsequently assigned the agreement to the Rocky Mountain Oil Corporation ("Rocky Mountain"). 249 F.2d at 415. The plaintiff was injured while applying for work at one of Rocky Mountain's drilling sites. *Id.* at 414. Following the accident, he sued both Shell and Rocky Mountain, claiming that the companies were jointly and severally liable as joint venturers. *Id.* The Ninth Circuit agreed, finding that Shell and Rocky Mountain had shared losses as well as profits, that the companies had shared control over the enterprise, that they had engaged in an undertaking, and that they had had the requisite intent. *Id.* at 417; *see also West v. Kerr-McGee Corp.*, 586 F. Supp. 493, 499 (E.D. La. 1984), *reversed on other grounds*, 765 F.2d 526 (5th Cir. 1985), (finding that joint venture existed among platform owners despite contractual provision stating that joint venture would not be created.).[16] The same is true for Anadarko and MOEX. As a result, Anadarko's and MOEX's Motions to Dismiss should be denied.

### F.      HESI's Claims Against MOEX USA Should Not Be Dismissed.

MOEX USA argues that HESI's claims against it should be dismissed because it was not a party to the JOA. MOEX USA Motion, at 1-3. MOEX USA is MOEX Offshore's parent company and Mitsui Oil Exploration Co., Ltd. ("MOECO") is MOEX USA's parent company. HESI has alleged that MOECO is the corporate parent and alter ego of MOEX Offshore and is vicariously liable for the conduct of its subsidiary. HESI's Cross-Claims at ¶ 15.

MOEX USA argues that any alter ego claims against it are not ripe because the underlying liability of its subsidiary has not been determined. MOEX USA Motion, at 2 (citing *Nissho Iwai Corp. v. Mizushima Marinera S.A.*, No. 95-3771, 1996 U.S. Dist. Lexis 22456 (D.N.J. April 23, 1996); *Monumental Life Ins. Co. v. Executive Risk Specialty Ins. Co.*, No. 99-

---

[16]    Though *Kerr-McGee* analyzed the issue in the context of whether a joint venture existed for the purpose of creating immunity for three minority interest owners pursuant to the Longshoremen's and Harbor Workers' Compensation Act,  it relied on *Prestige* in arriving at its decision. 586 F. Supp. 498.

2676, 2000 U.S. Dist. Lexis 14150 (E.D. La. Sept. 20, 2000); and *Schattner v. Girard, Inc.*, 668 F.2d 1366 (D.D.C. 1981)).  This argument is baseless.  In *Monumental Life Ins. Co.*, the court declined to hear claims alleging alter ego liability against defendants premised on the contingent liability of a party who was not before the court.  In granting the defendants' motion for summary judgment, the court specifically distinguished several cases in which the primary liability of the principal was also before the court. *Id.* at *8, n.4.[17]  That is obviously the case here and MOEX USA cites no case standing for their baseless argument that HESI must wait until the liability of its subsidiary is established before it can bring claims against MOEX USA.  Absent such authority, MOEX USA's Motion to Dismiss should be denied.

Moreover, pursuant to the Court's Stipulation and Agreed-Upon Order Regarding "Alter Ego" or "Veil Piercing" Claims Against MOEX USA Corporation and Mitsui Oil Exploration Co., Ltd., (Doc. No. 3208) the alter ego claims have been bifurcated and severed for later discovery and a separate trial.  (Doc. No. 3208).  Thus, HESI reserves its right to address the viability of HESI's alter ego claim at such time as the severed issue is properly before the Court.

## II.  HESI HAS PROPERLY ALLEGED INDEMNITY AND CONTRIBUTION CLAIMS AGAINST ANADARKO AND MOEX.

In its First Amended Cross-Claims, HESI asserted that it was entitled to indemnification and contribution from Anadarko and MOEX for any amounts it is required to pay Plaintiffs as a result of the *Deepwater Horizon* incident.  In its Motion, MOEX Offshore contends that HESI's

---

[17]  In *Schattner*, the plaintiff argued that claims against a corporation's officer should have been brought in previous arbitration; the court merely observed that "it was only when it became clear that Girard could not make good on the arbitration award that the issue of veil-piercing became ripe for consideration," but undertook no ripeness analysis and certainly did not hold that claims based on vicarious liability cannot be adjudicated until after the liability of the principally liable party has been determined, particularly where all the parties are before the Court. 668 F.2d at 1369. In *Nissho Iwai*, the court could have, but declined, to decide the alter ego issue pending a separate determination of underlying liability in an arbitration proceeding.  1996 U.S. Dist. Lexis 22456, at *13-14.

general maritime law indemnity and contribution claims do not apply to the claims of the Bundle B1 and C Plaintiffs because OPA displaces such claims for OPA-covered damages.  *See* MOEX Offshore Motion, at p. 8.

In the Order and Reasons, this Court concluded that "the B1 Master Complaint states a viable cause of action against the non-Responsible Parties under general maritime law on behalf of claimants who either allege physical damage to a proprietary interest and/or qualify for the commercial fishermen exception to *Robins Dry Dock.*"  Order and Reasons, p. 25.  Thus, to the extent HESI has potential liability as a non-responsible party under OPA, its indemnity and contribution claims should survive against other parties alleged to be negligent because under general maritime law, a "vicariously liable or non-negligent tortfeasor is entitled to indemnity 'from a co-debtor guilty of actual fault'" and a contribution action ensures "that each tortfeasor pay the proportion of the damages attributable to its actions." *Hardy,* 949 F.2d at 830, 833 (quoting *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA,* 761 F.2d 229, 236 (5th Cir. 1985)).[18]

## CONCLUSION

For the reasons stated above, the Motions of MOEX Offshore [Dkt. 2882], MOEX USA [Dkt. 2885], and Anadarko [Dkt. 2927] to Dismiss First Amended Cross-Claims of Defendant HESI should be denied.

---

[18]   In the Order and Reasons, (entered after HESI filed its First Amended Cross-Claims), this Court found that the B1 Plaintiffs did not state a claim for negligence as to Anadarko or MOEX because, it concluded, Anadarko and MOEX had no right to control operations on the *Deepwater Horizon* and the Macondo Well and, therefore, had no duty to intercede in BP's operations.  *See* Order and Reasons, p. 28.  The likely effect of that finding, which HESI respectfully disputes *supra*, may be to prevent HESI from succeeding on its indemnity and contribution cross-claims against Anadarko and MOEX.  However, HESI respectfully suggests that the Court's Order and Reasons was premature in finding that Anadarko and MOEX had no operational control and were not negligent in entrusting BP with operational control on the Macondo Well.  *See supra* at III.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**  /s/  *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com

Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com

1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2011 a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, and that an electronic version of this document was forwarded by e-mail to all liaison counsel.

/s/ Donald E. Godwin
Donald E. Godwin