UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179  SECTION "J" |
| **THIS PLEADING APPLIES TO:** | * * * | JUDGE:  BARBIER  MAGISTRATE:  SHUSHAN |
| In Re The Complaint and Petition of Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., as Owner, Managing Owners, Owners *Pro-Hac Vice*, and/or Operators of the MODU Deepwater Horizon, in a Cause for Exoneration from or Limitation of Liability | | |

Civil Action Nos.:
2:10-cv-2771 and 10-cv-2179

**WEATHERFORD U.S., L.P. AND WEATHERFORD INTERNATIONAL, INC.'S OPPOSITION TO DRIL-QUIP, INC.'S MOTIONS TO DISMISS WEATHERFORD U.S., L.P. AND WEATHERFORD INTERNATIONAL, INC.'S CROSS-CLAIM AND COUNTER-CLAIM/CROSS-CLAIM FOR FAILURE TO STATE A CLAIM**

**MAY IT PLEASE THE COURT:**

      Weatherford U.S., L.P. and Weatherford International, Inc. (collectively, "Weatherford") file this Opposition to 1) Dril-Quip, Inc.'s Motion to Dismiss Weatherford U.S., L.P. and Weatherford International, Inc.'s Cross-Claim for Failure to State a Claim (Rec. Doc. 2891); and

{N2369763.1}

2) Dril-Quip, Inc.'s Motion to Dismiss Weatherford U.S., L.P.'s and Weatherford International, Inc.'s Counter-Claim/Cross-Claims for Failure to State a Claim (Rec. Doc. 3253). Weatherford opposes both motions through this single memorandum because the grounds for both motions are identical.[1] For the reasons that follow, both Motions to Dismiss should be denied.

**I.    BACKGROUND**

On February 18, 2011, various Transocean entities filed a Rule 14(c) Third-Party Complaint in the Limitation of Liability Action, Cause No. 10-2771 (the "Limitation Action"), and named, *inter alia*, Weatherford U.S., L.P. and Weatherford International, Inc. as third-party defendants. (Rec. Doc. 1320). Pursuant to this Court's Stipulated Order of March 24, 2011, all Rule 14(c) defendants, including Weatherford, were required to file any and all cross-claims in the Limitation Action by May 20, 2011. (Rec. Doc. 1730).

On May 20, 2011, Weatherford filed a Cross-Claim against, *inter alia,* Dril-Quip. (Rec. Doc. 2481). Dril-Quip also filed a Cross-Claim against, *inter alia,* Weatherford on May 20, 2011.[2] (Rec. Doc. 2467). In response, Weatherford filed an Answer to Dril-Quip's Cross-Claims and also asserted its own Counter-Claims and Cross-Claims.[3] (Rec. Doc. 2915).

---

[1] Dril-Quip's Motion to Dismiss Weatherford's Counter-Claim/Cross-Claim, (Rec. Doc. 3253), merely adopts its own Motion to Dismiss Weatherford's Cross-Claim and the memorandum in support thereof. (Rec. Doc. 2891).

[2] It should be noted that the only factual allegations asserted by Dril-Quip in its Cross-Claim relating to Weatherford are:
   1)    "Weatherford and/or Weatherford International designed and manufactured, marketed, sold and/or distributed the casing components, such as the float collar, shoe and centralizers used at Macondo and provided personnel and equipment for running the casing and casing components into the well bore."
   2)    "The Plaintiffs/Claimants allege that as the designer of the float collar, Weatherford owed and breached duties of ordinary and reasonable care to the Plaintiffs/Claimants by designing and manufacturing a float collar that failed to seal properly and which allowed hydrocarbon backflow into the casing, thereby causing the blowout and subsequent fire and oil spill."

These allegations are nearly identical to those asserted by Weatherford in its Counter-Claim/Cross-Claim.

[3] Rec. Doc. 2915 adopts in its entirety the allegations set forth in Weatherford's original Cross-Claim. (Rec. Doc. 2481).

{N2369763.1}

In its Counter-Claim/Cross-Claim against Dril-Quip, Weatherford alleged that "Dril-Quip was a party to a contract . . . under which Dril-Quip agreed to provide certain services and/or products to BP." (Rec. Doc. 2481). Weatherford further alleged that "pursuant to the Dril-Quip contract, Dril-Quip is obligated to release, defend, indemnify and hold Weatherford harmless from Dril-Quip's own property damage and from and against all claims . . . in respect of personal injury including death or disease to any person employed by Dril-Quip." *Id.* Weatherford additionally alleged that "the blowout, fire, and oil spill were caused by the products liability, breach of contract, fault, negligence, inattention to duty, breach of duty, breach of warranty both implied and express, breach of statutory duty, rules and regulations, and other violations of law and contract . . . on the part of M-I and Dril-Quip." *Id.* Finally, Weatherford alleged that it "has sustained, and continues to sustain damages and losses" and that "Dril-Quip [is] liable to Weatherford for all damages, losses and expenses and defense costs incurred by Weatherford as a result of the blowout, explosions, fire and oil spill . . . and are further obligated to protect, defend, hold harmless and indemnify Weatherford from all claims brought against it by third parties arising out of the blowout, explosions, fire and oil spill, whether under the . . . Dril-Quip Contract, or at law." *Id.*

In addition to Weatherford's allegations that Dril-Quip provided services and equipment to BP for use in the Macondo well as discussed above, Dril-Quip itself admits that it provided certain equipment and services to BP. The first paragraph of Dril Quip's memorandum in support of its Motion to Dismiss Weatherford's Counter-Claim/Cross-Claim states:

> This lawsuit arises out of an incident that occurred while the *Deepwater Horizon*, a mobile offshore drilling unit owned and operated by Transocean entities, was drilling the Macondo No. 1 well for BP Exploration and Production, Inc., the lessee. Dril-Quip, Inc. ("Dril-Quip") manufactured the subsea wellhead and certain related equipment (the "Subsea Wellhead System") used on

>  the Macondo well and provided a service technician onboard the *Deepwater Horizon* to assist with the installation of the Subsea Wellhead System.

(Rec. Doc. 2891).

Dril-Quip now moves to dismiss Weatherford's Counter-Claim/Cross-Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rec. Docs. 2891, 3253). Specifically, Dril-Quip alleges that Weatherford's Counter-Claim/Cross-Claim fails to meet pleading standards, fails to allege sufficient facts to establish a cause of action, fails to state a claim for products liability, and alleges facts that negate Dril-Quip's liability for negligence. (Rec. Doc. 2891). For the reasons stated below, Dril-Quip's motions should be denied.

### A.  Effect of Order and Reasons of August 26, 2011 (B1 Order)

In this Court's Order and Reasons of August 26, 2011, the Court disposed of several motions to dismiss the claims of the B1 Plaintiffs, including motions to dismiss set forth by Dril-Quip. (Rec. Doc. 3830). In the Order, the Court dismissed all state law claims asserted against Dril-Quip. *Id.* However, with regard to all other claims asserted against Dril-Quip, the Court held that "Dril-Quip remains a 14(c) Defendant with respect to Plaintiffs' claims saved by this Order." *Id.* Included in the claims saved by this Court's Order are general maritime negligence and product liability claims asserted against Dril-Quip as a result of their involvement in the Macondo well. *Id.* Dril-Quip's Motions to Dismiss Weatherford's Counter-Claims/Cross-Claims are based on identical grounds as Dril-Quip's Motion to Dismiss the B1 Plaintiffs' claims. Since the Court preserved the General Maritime Law claims as to the B1 Plaintiffs, Weatherford submits that the Court should preserve the General Maritime Law claims as to Weatherford. Thus, Dril-Quip's Motions to Dismiss Weatherford's Counter-Claim/Cross-Claim must be denied.

### B. Effect of Order and Reasons of September 30, 2011 (B3 Order)

On September 30, 2011, the Court issued its Order on the motions to dismiss Plaintiffs' B3 Complaint. (Rec. Doc. 4159). With regards to Dril-Quip, the Court followed its August 26, 2011 Order and again found that Dril-Quip remained a 14(c) Defendant. *Id.* Accordingly, all General Maritime Law claims asserted against Dril-Quip survive the Court's Orders of August 26, 2011 and September 30, 2011.

## II. LAW AND ARGUMENT

### A. Standard of Review

In the Court's Order and Reasons of September 30, 2011, this Court set forth the appropriate standard for review regarding Anadarko and Moex's Motions to Dismiss:

> To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court "must . . . accept all factual allegations in the complaint as true" and "must draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949-50.

(Rec. Doc. 4159, pp. 4-5). Accordingly, all factual allegations set forth by Weatherford must be accepted as true and all reasonable inferences must be drawn in Weatherford's favor.

### B. Weatherford's Counter-Claim/Cross-Claim Alleges Sufficient Facts to Establish a Cause of Action, Including One for Products Liability, Pursuant to the Federal Rules of Civil Procedure

Dril-Quip's first argument is that Weatherford did not allege sufficient factual detail in its Counter-Claim/Cross Claim to state a plausible claim for relief. However, as noted in footnote 2, *supra,* Weatherford's Counter-Claims/Cross-Claims against Dril-Quip are as detailed and particular as those asserted by Dril-Quip against Weatherford. Further, Weatherford's

allegations against Dril-Quip clearly meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

The United States Supreme Court has recently restated the plausibility component to notice pleading. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court "accept[s] as true the well-pleaded factual allegations in the complaint." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555–56, but must simply "provide the plaintiff's grounds for entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Additionally, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Dril-Quip argues that it is "impossible to ascertain what Dril-Quip did or failed to do that caused injury to any party" from the face of Weatherford's pleadings. (Rec. Doc. 2891, at 7). This is clearly not the case. Weatherford specifically alleged that Dril-Quip provided services and/or equipment to BP. As evidenced by Dril-Quip's own statements in its Memorandum in Support of its Motion to Dismiss, Dril-Quip does not deny that it provided the subsea wellhead used on the Macondo well and assisted in its installation. Further, Weatherford alleged that, *inter alia,* Dril-Quip's negligence and/or products liability in providing services and/or equipment to BP was a direct cause of the blowout. Finally, Weatherford alleged that the blowout resulted in damages to Weatherford and/or to third parties who may assert claims against Weatherford for which Dril-Quip is liable.

6

Considering Dril-Quip's admissions and Weatherford's allegations, it is clear that Dril-Quip has been put on notice of Weatherford's underlying claims for, *inter alia,* negligence and products liability and the bases thereof. The cases cited by Dril-Quip do not support its assertion that more detailed factual allegations than those provided by Weatherford are required to adequately state a claim in typical and ordinary negligence and/or products liability cases. In fact, *Twombly* expressly states that detailed factual allegations are not required. 550 U.S. at 555–56. Accordingly, Dril-Quip's Motions to Dismiss must be denied.

    **C.    The Factual Allegations Asserted by Weatherford Establish a Negligence Claim against Dril-Quip**

Dril-Quip further argues that Weatherford's Counter-Claim/Cross-Claim does not set forth a valid negligence claim as the allegations do not assert that Dril-Quip had control of the operations of the *Deepwater Horizon.*[4] Dril-Quip incorrectly relies upon *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548 (5th Cir. 1987), as support for its contention that it had no legal duty because it did not have control over the operations. *Ainsworth* holds that "a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties" unless the principal has operational control. *Id.* at 549. *Ainsworth* does not apply in this case.

First, Dril-Quip was not a principal with respect to the Macondo well. Dril-Quip was, in fact, an independent contractor. Second, the negligence claims brought by Weatherford against Dril-Quip do not attempt to impute any negligence of a third party upon Dril-Quip, nor do they assert any claims against Dril-Quip on the grounds of vicarious liability. Weatherford alleges that Dril-Quip was directly liable for its own negligence and/or products liability in providing

---

[4] Dril-Quip does not set forth a substantive basis for dismissal of Weatherford's product liability claims. The only basis asserted by Dril-Quip as grounds for dismissal of Weatherford's products liability claim is failure to state a claim due to factually insufficient pleadings.

services and/or products to BP.  These allegations must be accepted as true and all inferences must be drawn in Weatherford's favor.  Thus, *Ainsworth* does not apply and Dril-Quip's Motions to Dismiss must be denied.

### D. Alternatively, Weatherford Requests Leave to Amend Its Counter-Claims/Cross-Claims

To the extent that the Court deems that Weatherford's Counter-Claims/Cross-Claims are insufficiently alleged, Weatherford respectfully requests the opportunity to amend its Counter-Claims/Cross-Claims to cure any pleading defect pursuant to Federal Rule of Civil Procedure 15, which provides "[t]he court should freely give leave when justice so requires."  As the Court is aware, pursuant to the Court's Order and Reasons of September 30, 2011, the B3 Plaintiffs were afforded an opportunity to cure any defect in their claims for negligence *per se* in the B3 Master Complaint.  (Rec. Doc. 4159, p. 20).[5]  Therefore, Weatherford respectfully requests a similar opportunity with regards to its Counter-Claims/Cross-Claims.

### III. CONCLUSION

Weatherford's Counter-Claims/Cross-Claims satisfy all federal pleading standards as they clearly allege that Dril-Quip was actively involved in the Macondo well through its provision of services and/or products, its negligent provision of services and/or products liability was a direct cause of the blowout, and its negligence and/or products liability resulted in damages to Weatherford.  Further, Weatherford has stated a claim for negligence as operational control is not a prerequisite to establishing negligence when the negligence claim is based on a party's own actions and not the imputed negligence of a third party.  Accordingly, Dril-Quip's Motions to Dismiss should be denied.  Alternatively, to the extent that the Court deems that

---

[5] Specifically, the Court stated that "Accordingly, the Court dismisses the claim of negligence *per se*, but allows Plaintiffs an opportunity to amend their Complaint if they wish to assert a more definite statement of the claim for negligence *per se*."

{N2369763.1}

Weatherford's Counter-Claims/Cross-Claims are insufficiently alleged, Weatherford respectfully requests leave to amend and/or re-plead its Counter-Claims/Cross Claims.

This 17th day of October, 2011.

Respectfully submitted:

*/s/ Glenn G. Goodier*
GLENN G. GOODIER (#06130)
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue. 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:     (504) 582-8174
Facsimile:     (504) 589-8174

MICHAEL G. LEMOINE, T.A. (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
600 Jefferson Street, Suite 1600
Lafayette, , Louisiana  70501-5100
Telephone:     (337) 262-9024

*Counsel for Weatherford U.S., L.P. and Weatherford International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2011, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

/s/  Glenn G. Goodier

{N2369763.1}