**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| **THIS DOCUMENT RELATES TO NO. 10-4536,** *United States v. BP Exploration & Production Inc., et al.* | * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BP'S OPPOSITION TO HALLIBURTON ENERGY SERVICES, INC.'S**
**MOTION TO DISMISS BP'S FRAUD AND FRAUDULENT CONCEALMENT CLAIMS**
**IN BP'S CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................................1

**PROCEDURAL BACKGROUND** ....................................................................................2

     A.    The Creation of MDL 2179 ................................................................................2

     B.    BP's Claims Against Halliburton Arising from the Deepwater Horizon Incident ........................................................................................................4

     C.    Halliburton's Two Texas State Court Actions Against BP ....................................5

     D.    The Court's Trial Plan Order ................................................................................7

**ARGUMENT** ....................................................................................................................8

**I.**    **Whether BP's Fraud Claims Qualify as Compulsory Counterclaims to Halliburton's Indemnification and Declaratory Relief Claims Is Immaterial.**............8

**II.**    **The Forum Selection Clause of the Wells Services Contract Does Not Warrant Dismissing BP's Fraud Claims.** ......................................................10

     A.    Public Policy, as Expressed in 28 U.S.C. § 1407, Mandates that Halliburton's Motion Be Denied. ..........................................................10

     B.    Halliburton Has Waived Its Right to Invoke the Forum Selection Clause of the Wells Services Contract to Dismiss BP's Fraud Claims................................15

     **CONCLUSION** ................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
    No. 05-2310, 2006 WL 3544956 (D. Minn. Dec. 8, 2006)......................................................... 14

*Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.*,
    No. 3:06-CV-00092, 2007 WL 1041003 (E.D. Ark.  Apr. 4, 2007) ......................................... 15

*First Interstate Credit Alliance, Inc. v. Alliance Leasing, Inc.*, No. 89 Civ. 4038, 1990 WL 67445
    (S.D.N.Y. May 15, 1990) ......................................................................................................... 14

*In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*,
    228 F. Supp. 2d 348 (S.D.N.Y. 2002) ..................................................................................... 10

*In re Falstaff Brewing Corp. Antitrust Litig.*,
    434 F. Supp. 1225 (J.P.M.L. 1977) .......................................................................................... 12

*In re Med. Res. Sec. Litig.*,
    No. 1247, 1998 U.S. Dist. LEXIS 15832, (J.P.M.L. Oct. 7, 1998).......................................... 12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    No. 1:00–1898, MDL 1358, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005) ............................... 11

*In re Park W. Galleries, Inc., Mktg. § Sales Practices Litig.*,
    655 F. Supp. 2d 1378 (J.P.M.L. 2009) .................................................................................... 12

*In re Plumbing Fixture Cases*,
    298 F. Supp. 484 (J.P.M.L. 1968) ........................................................................................... 11

*In re Rationis Enters, Inc.*,
    No. 97 CV 9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999) ...................................................... 15

*In re Vernitron Sec. Litig.*,
    462 F. Supp. 391 (J.P.M.L. 1978) ........................................................................................... 12

*LaSala v. E*Trade Securities LLC*, No. 05 Civ. 5869,
    2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005) ......................................................................... 14

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ..................................................................................................................... 10

*Mylan Pharms. Inc. v. Am. Safety Razor Co.*,
    265 F. Supp. 2d 635 (N.D. W. Va. 2002)................................................................................. 13

*Taylor Inv. Corp. v. Weil*,
    169 F. Supp. 2d 1046 (D. Minn. 2001) .................................................................................... 14

**Statutes**

28 U.S.C. § 1407 ................................................................................................ passim

**Other Authorities**

15 Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3863 (3d ed. 2011) ................................................ 11

15 Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3864 (3d ed. 2011) ................................................ 12

Manual for Complex Litigation (Fourth) § 20.131 (2004) ........................................ 11

**Rules**

Fed. Rule of Civ. Proc. 13 ............................................................................................ 1

## INTRODUCTION

Halliburton's motion to dismiss BP's fraud claims fails to present any legitimate basis for the relief Halliburton seeks.  First, Halliburton's lead argument that BP's fraud claims must be dismissed as purportedly compulsory counterclaims to Halliburton's indemnification and contribution claims filed in an earlier Texas state court action ignores the following critical fact: *all* disputes between BP and Halliburton arising out of the Deepwater Horizon incident are currently pending in MDL 2179, including the indemnification and contribution claims upon which Halliburton's entire compulsory counterclaim challenge is premised.  This Court's recent Trial Plan Order for the Limitation and Liability Trial clearly shows that the Court intends all issues related to the April 20, 2010 casualty to be resolved in one proceeding.  *See* Am. Pretrial Order No. 41, *In re Oil Spill*, 2:10-cv-02179, (Sept. 21, 2011), ECF No. 4083.  Accordingly, there is no support for Halliburton to seek dismissal under Fed. Rule of Civ. Proc. 13(a).  Indeed, Rule 13(a) is designed to achieve — not impede — the resolution in a single proceeding of all disputes arising out of common matters.

Second, Halliburton's fallback argument that BP's fraud claims are subject to a mandatory forum selection clause requiring the claims to be brought in Texas state court likewise fails to warrant dismissal of any claim here.  This is because overriding public policy, as expressed in 28 U.S.C. § 1407, to promote the just and efficient conduct of multidistrict litigation (such as that arising from the Deepwater Horizon incident) far outweighs any individual interest Halliburton may have in enforcing a contractual forum selection clause.  Moreover, Halliburton has, in any event, waived its right to invoke the forum selection clause of the Well Services Contract with BP by engaging in conduct inconsistent with it.

For all of these reasons, discussed in further detail below, BP respectfully requests that the Court deny Halliburton's motion to dismiss BP's fraud claims.

## PROCEDURAL BACKGROUND

### A.     The Creation of MDL 2179

On April 20, 2010, an explosion and fire destroyed the Deepwater Horizon offshore oil rig approximately 130 miles southeast of New Orleans and approximately 50 miles from the Mississippi River delta.  In the months that followed, thousands of plaintiffs filed individual and class action lawsuits  (and short-form joinders) alleging personal injuries, injury to their business or commercial interests, and/or injury to their real or personal property due to the Deepwater Horizon incident.   Given the sheer volume of actions arising from the incident brought in different courts across the southeastern United States and the certainty that more such actions would follow, BP moved on May 7, 2010 pursuant to 28 U.S.C.A. § 1407 (Westlaw 2011) to centralize the many cases related to the incident before one Multidistrict Litigation Court.  BP Exploration and Production, Inc.'s Mot. to Transfer for Coordinated or Consolidated Pretrial Proceedings Under 28 U.S.C. § 1407, *In re Oil Spill*, MDL No. 2179, (May 20, 2010), ECF No. 13.  At the time, Halliburton also supported Section 1407 centralization of "***all*** actions related to the Deepwater Horizon Incident" and urged that consolidated proceedings were necessary in order to "eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."   *See* Ex. A (Halliburton's Resp. in Supp. of Transfer of Actions to the Southern District of Texas for Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 [Doc. No. 108] at 2, 5) (emphasis added).  Although BP and Halliburton both sought centralization in the Southern District of Texas, other parties argued for centralization in other districts, including the Eastern District of Louisiana, the Northern District of Alabama, the Southern District of Alabama, the Middle District of Florida, the Northern District of Florida, the Southern District of Florida, the Western District of Louisiana, the Southern District of Mississippi, and the District of South Carolina.  *See* Ex. B

(J.P.M.L. 8/10/2010 Order [Doc. No. 227] at 2).   After considering all of the parties' views, on August 10, 2010, the Judicial Panel on Multidistrict Litigation ("the Panel") issued its initial Transfer Order establishing "*In re Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico*," MDL No. 2179, and directing centralization in this Court in the Eastern District of Louisiana.  *See id*. at 5-8.  In issuing its order, the Panel noted that:

- centralization pursuant to Section 1407 was needed to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, [] and conserve the resources of the parties, their counsel, and the judiciary"  (*see id*. at 3);

- centralization would "serve the convenience of the parties and witnesses and promote the more just and efficient conduct of [the] cases, taken as a whole" (*see id*.); and

- the Eastern District of Louisiana was "the most appropriate district for this litigation" because "[w]ithout discounting the spill's effects on other states, if there is a geographic and psychological 'center of gravity' in this docket, then the Eastern District of Louisiana is closest to it" (s*ee id*.).

Since the Panel's initial August 10, 2010 order establishing MDL 2179, the Panel has transferred hundreds of cases to MDL 2179, with the result that MDL 2179 now includes over 500 cases arising from the Deepwater Horizon incident.  Most of those cases name Halliburton as a defendant based on its role performing cementing and mud logging services at the Macondo well pursuant to its contract with BP for Gulf of Mexico Strategic Performance Unit Offshore Well Services (the "Well Services Contract").  There are hundreds of cases and thousands of claims now pending against Halliburton in the Eastern District of Louisiana.  In all of those cases and for all of those claims (but for the two fraud claims at issue here), Halliburton has agreed to and argued for the joinder of the claims and cases in Louisiana.

Even after the Panel directed centralization in the Eastern District of Louisiana, Halliburton continued to support centralization of "*all*" actions arising out of the Deepwater Horizon incident and to underscore the overriding need for such consolidated pretrial proceedings, *see*, *e.g.*:

- "Virtually all Actions arising out of the [Deepwater Horizon incident] involve common questions of fact regarding what happened on the Deepwater Horizon and what role, if any, each of the Defendants had in the Incident."   *See* Ex. C (Halliburton's Opp'n to Pls.' Mot. to Vacate Conditional Transfer Order No. 2) [Doc. No. 1] at 5.

- "[D]iscovery aimed at finding out the answers to these questions is best handled at a consolidated level rather than in numerous separate proceedings." *See id.*

- Centralization of Deepwater Horizon cases "will allow a single court to decide issues in hundreds of lawsuits, which promotes uniformity, consistency and predictability in litigation arising out of the Incident." *See id.* at 7.

- Centralization "will also promote just and efficient conduct of litigation since any decision rendered by the MDL Court on a pretrial issue will apply to all Actions that involve issues addressed by the ruling, thus saving the resources of dozens of district courts that otherwise would have to separately consider the same issues." *See id.*

- Excluding cases alleging reckless conduct by defendants from MDL 2179 would "result in unnecessary duplication of discovery and could lead to inconsistent rulings regarding several factual and legal issues that are common to the Actions in MDL-2179." *See id.* at 1.

- Centralization "will conserve judicial resources, promote consistency and uniformity in legal proceedings, streamline the pretrial process, and result in a more efficient resolution of . . . all Actions." *See id.*

**B.      BP's Claims Against Halliburton Arising from the Deepwater Horizon Incident**

On April 20, 2011 (the applicable deadline established by this, the MDL Court), BP filed a cross-complaint and third party complaint against Halliburton in MDL 2179, asserting five counts:   fraud and fraudulent concealment based on Halliburton's misrepresentations to BP concerning the cement testing conducted by Halliburton and Halliburton's failure to provide material information about that testing to BP[1] (*see* Ex. D (BP MDL Cross-Complaint ¶¶ 117-31); negligence and gross negligence based on Halliburton's breach of duty in discharging its cementing and mud logging services to BP (*see id.* ¶¶ 132-34); and contribution and subrogation

---

[1] BP's counts for fraud and fraudulent concealment asserted in its MDL cross-complaint against Halliburton are hereinafter referred to collectively as "BP's fraud claims."

-4-

seeking (among other things) a declaratory judgment that BP "is not liable to Halliburton for contribution, indemnification, or otherwise for liabilities arising from of the Deepwater Horizon incident . . . under . . . the terms [] of the Wells Services Contract." *See id*. ¶¶ 135-53, 143.  The same day, BP filed a complaint in the United States District Court for the Southern District of Texas, asserting the same five counts as in BP's MDL Cross-Complaint against Halliburton.  *See* Ex. E (BP's Texas Compl.).  BP filed this action solely as a protective measure and immediately notified the Panel of the existence of the action as a potential tag-along action for MDL 2179 under the JPML Rules.  *See* Notice of Potential Tag-Along, *In re Oil Spill*, MDL No. 2179, (Apr. 22, 2011), ECF No. 561.  Following notification by BP, on May 4, 2011, the Panel issued a conditional transfer order directing BP's Texas case against Halliburton to be transferred to MDL 2179.  *See* Conditional Transfer Order Finalized, *In re Oil Spill*, MDL No. 2179, (May 5, 2011), ECF No. 578.  Notably, at no time did Halliburton object to the transfer of BP's Texas case against Halliburton.  Nor did Halliburton at any time request that the Panel sever any of the claims asserted by BP, including either of the two fraud claims that Halliburton now seeks to dismiss.

### C.      Halliburton's Two Texas State Court Actions Against BP

On April 19, 2011, just one day before BP filed its Cross-Complaint against Halliburton in the MDL litigation pursuant to the motions deadline to which virtually all parties were aiming, Halliburton filed suit against BP in Texas state court in Harris County, Texas.  In that action, Halliburton alleged that BP owes a duty to defend and indemnify Halliburton against claims arising from the Deepwater Horizon incident under the indemnification provisions of the Well Services Contract.  Halliburton filed this action despite having earlier urged that "***all***" actions related to the Deepwater Horizon incident should be centralized before one Multidistrict

Litigation Court and even though no other indemnification or contribution actions stemming from the incident were pending between any defendants outside MDL 2179.

On May 3, 2011, BP removed the Texas state case to the United States District Court for the Southern District of Texas.  Two days later, BP notified the Panel of the existence of the newly-removed case as a potential tag-along action in MDL 2179 pursuant to Section 1407 based on the common questions of fact and law that the case shared with actions centralized in MDL 2179.  *See* Notice of Potential Tag-Along, *In re Oil Spill*, MDL No. 2179, (May 5, 2011), ECF No. 581.  After the Panel issued an order conditionally transferring Halliburton's Texas case to MDL 2179,[2] Halliburton filed a motion to vacate that order on grounds that:  (1) Halliburton's Texas case purportedly involved "few, if any fact issues," common to other cases in MDL 2179 and (2) the action needed to be litigated in Texas state court in Harris County, pursuant to the forum selection clause of the Wells Services Contract.  *See* Ex. F (Halliburton's Mot. to Vacate Conditional Transfer Order No. 18 [Doc. No. 612] at 2-3).   On August 9, 2011, the Panel rejected Halliburton's arguments, finding that although Halliburton's Texas case "may be, on its face, a contract action," it involves common "factual issues 'concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it.'"  *See* Ex. G (8/9/2011 JPML Order [Doc. No. 737] at 2).  Because (as the Panel found) Halliburton's Texas case "involves common questions of fact with actions in this litigation previously transferred to MDL No. 2179," transfer of the case would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation."  *Id*. at 1. Accordingly, the Panel ordered Halliburton's Texas case transferred to MDL 2179, which is where Halliburton's indemnification and contribution claims are now pending.  *Id*.

---

[2] *See* Conditional Transfer Order Filed Today, In re Oil Spill, MDL No. 2179, (May 10, 2011), ECF No. 583.

On September 1, 2011, Halliburton filed a second action against BP in Texas state court in Harris County, Texas.  That suit includes claims of negligent misrepresentation and libel and alleges that BP failed to disclose to Halliburton certain information that Halliburton purportedly needed to design the cement program for the Macondo Well and that BP allegedly continued to conceal such information from Halliburton and the public, resulting in damage to Halliburton. *See* Ex. H (Halliburton 9/1/2011 Tex. Compl.).  BP removed the action to the Southern District of Texas on September 16, 2011.  *See* Ex. I (BP Notice of Removal).  On September 19, 2011, BP notified the Panel of the existence of the newly removed case as a potential tag-along action in MDL 2179 pursuant to Section 1407 based on the common questions of fact and law that the case shares with actions centralized in MDL 2179.  *See* Notice of Potential Tag-Along, *In re Oil Spill*, MDL No. 2179, (Sept. 19, 2011), ECF No. 795.  The Panel issued an order conditionally transferring Halliburton's second Texas case to MDL 2179 on September 28, 2011.  *See* Conditional Transfer Order Filed Today, *In re Oil Spill*, MDL No. 2179, (Oct. 5, 2011), ECF No. 810.  Halliburton filed a notice of opposition to that order on October 5, 2011.  [Doc. No. 815]. Any motion by Halliburton to vacate the Panel's conditional transfer order centralizing its second Texas lawsuit in MDL 2179 will be due on October 19, 2011.  *See* Notice of Filed Opposition to CTO-35, *In re Oil Spill*, MDL No. 2179, (Oct. 5, 2011), ECF No. 817.[3]

### D.    The Court's Trial Plan Order

On September 21, 2011, this Court issued Amended Pretrial Order No. 41, which sets forth the scope and structure of the trial of claims and defenses centralized in MDL 2179.  *See*

---

[3] Halliburton also moved on September 1, 2011 for leave to amend its cross-claims against BP in the MDL 2179 litigation to add cross-claims against BP for fraud based on alleged pre-incident omissions and alleged post-incident misrepresentations concerning the location of hydrocarbon bearing sands in the Macondo well.  On October 11, 2011, following submission of BP's opposition to the motion, the Court denied Halliburton leave to amend, finding "undue delay on Halliburton's part" in asserting its proposed new fraud claims and "undue prejudice to BP if the amendment [were to be] allowed."  *See*  Order Regarding Halliburton's Motion to File Second Amended Cross-Claim (Rec. Doc. 3893), *In re Oil Spill*, MDL No. 2179, (Oct. 11, 2011), ECF No. 4267.

Ex. J (9/21/2011 Am. Pretrial Order No. 41) [Doc No. 4083].  Before issuance of Amended

Pretrial Order No. 4, at the Court's request, the parties submitted briefing concerning trial plan

issues.  In its briefing, Halliburton argued (among other things) that BP's fraud claims "should

not be included in the February 2012 trial" but instead "severed" and re-filed by BP in

Halliburton's "Indemnity Lawsuit" in Harris County, Texas on account that BP's fraud claims

purportedly constitute compulsory counterclaims to Halliburton's Texas lawsuit.[4]  *See* Ex. K

(Halliburton Energy Services, Inc.'s Requested Briefing On Trial Plan Issues) at 6-7 [Doc. No.

2670].  Notwithstanding this argument by Halliburton, Amended Pretrial Order No. 41 directs

that "*all*" issues related to the cause of the Deepwater Horizon incident be resolved in this MDL

2179 litigation, without limitation or exception as to Halliburton or BP's claims against one

another:  "The Trial will address all allocation of fault issues that may properly be tried to the

Bench without a jury, including the negligence, gross negligence, or other bases of liability of,

and the proportion of liability allocable to, the various defendants, third parties, and non-parties

with respect to the issues, including limitation of liability."  *See* Ex. J (9/21/2011 Am. Pretrial

Order No. 41) at 1.

## ARGUMENT

### I.    Whether BP's Fraud Claims Qualify as Compulsory Counterclaims to Halliburton's Indemnification and Declaratory Relief Claims Is Immaterial.

There is no basis for Halliburton to seek dismissal of BP's fraud claims on the ground

that they purportedly constitute "compulsory counterclaims" under Rule 13(a) to Halliburton's

indemnification and contribution claims.  As Halliburton acknowledges, "Rule 13(a) 'was

designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all

---

[4] As discussed above, the Panel transferred Halliburton's Texas lawsuit to this MDL 2179 litigation on August 9, 2011 after considering and rejecting Halliburton's contention that its Texas lawsuit lacked issues of fact common to matters pending in MDL 2179.  *See* Ex. G.

disputes arising out of common matters."  *See* Halliburton Mot. to Dismiss BP's Fraud and Fraudulent Concealment Claims in BP's Cross-Compl. and Third-Party Compl., *In re Oil Spill*, MDL No. 2179, (June 20, 2011), ECF No. 2941 (hereinafter "Mot. to Dismiss") at 6.  Here, however, Halliburton's motion endeavors to use Rule 13(a) to achieve precisely the opposite result by divorcing BP's fraud claims from the rest of the parties' disputes arising out of the Deepwater Horizon incident.  Indeed, as set forth above, all disputes between BP and Halliburton arising out of the incident are currently pending in MDL 2179 (or, in the case of Halliburton's most recent complaint filed in Harris County on September 1, 2011 and then removed to federal court, subject to a conditional transfer order in MDL 2179 by the Panel).  *See supra* at 2-7.  This includes the very indemnification and declaratory relief claims upon which Halliburton's compulsory counterclaim challenge to BP's fraud claims is based.  *See* Ex. G (8/9/2011 JPML Order transferring Halliburton's April 2011 Texas state court action to MDL 2179).  Under these circumstances, the mandate of Rule 13(a) to prevent a "multiplicity of actions" and "achieve resolution of all disputes arising out of common matters" in a single lawsuit requires that Halliburton's motion be denied, not granted.

Note as well that under Halliburton's view, Rule 13(a) effectively establishes a race to the courthouse in favor of the first-filed action.  But that race was long over well before April 19, 2011, since BP and Halliburton **together** had successfully called for, and won the procedural rights to a centralized MDL action back on August 10, 2010.  Halliburton's newly minted position that it won a later side race by filing against BP in Harris County, Texas — one day in advance of the MDL's April 20, 2011 motions deadline — only serves to highlight that its tactic was designed, in derogation of its prior positions, to circumvent this Court's MDL powers.  Under these circumstances, it would be patently unjust to permit Halliburton to successfully

argue to compel the consolidation of claims by hundreds of plaintiffs and individuals against it in the Eastern District of Louisiana but to allow Halliburton to escape that very same MDL consolidation for solely BP's fraud claims against Halliburton simply because it serves Halliburton's interests.

## II.     The Forum Selection Clause of the Wells Services Contract Does Not Warrant Dismissing BP's Fraud Claims.

Halliburton's fallback argument that the forum selection clause of the Wells Services Contract requires dismissal fares no better.  As discussed below, this is because (1) public policy to promote the just and efficient conduct of multidistrict litigation involving common questions of fact, as expressed in 28 U.S.C. § 1407, outweighs any individual interest Halliburton may have in enforcing a contractual forum selection clause, and (2) Halliburton has, in any event, waived its right to invoke the forum selection clause of the Wells Services Contract by engaging in conduct inconsistent with it.

### A.     Public Policy, as Expressed in 28 U.S.C. § 1407, Mandates that Halliburton's Motion Be Denied.

While contractual forum selection clauses are ordinarily entitled to deference, they are not blindly enforced.   Rather, a forum selection clause will be "held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972); *In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 374 (S.D.N.Y. 2002) ("[P]ublic policy, as expressed in a statute, may require invalidation of a forum selection clause.").   Here, enforcing the forum selection clause of the Wells Services Contract to dismiss BP's fraud claims would subvert the strong public policy behind MDL transfers and potentially lead to the deleterious litigation results the Panel sought to avoid when

-10-

it ordered centralization of disputes arising out of the Deepwater Horizon incident in the first place.

Indeed, the fundamental purpose of Section 1407 centralization is to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact" that are pending in different districts.  *See* 28 U.S.C. § 1407(a); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3863 (3d ed. 2011).  Section 1407 endeavors to achieve this goal by eliminating duplicative discovery, preventing inconsistent pretrial rulings, and conserving the resources of the parties, their counsel, and the judiciary.  *See* Manual for Complex Litigation (Fourth) § 20.131 at 220 (2004) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").  Most importantly, the statute reflects the clear desire of Congress to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions."  *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–92 (J.P.M.L. 1968) (extensively citing legislative history of statute); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00–1898, MDL 1358, 2005 WL 106936 at *5 (S.D.N.Y. Jan. 18, 2005) (as used in Section 1407, phrase "just and efficient" refers to "the statute's goal of eliminating 'delay, confusion, conflict, inordinate expense and inefficiency' during the pretrial period.").

These considerations are sufficiently compelling in multidistrict litigation cases that they outweigh the usual venue policy considerations that apply in the context of single independent actions.  Indeed, "[t]he Panel's discretion under Section 1407 is not limited by venue considerations . . . nor can the policies behind venue provisions designed to operate in the

context of single independent actions prevail, in a multidistrict context, over the Panel's statutory mandate to weigh the interests of all the plaintiffs and all the defendants and to consider multidistrict litigation as a whole in light of the purposes of the law."  *In re Vernitron Sec. Litig.*, 462 F. Supp. 391, 394 (J.P.M.L. 1978); *see also In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L. 1977) ("In considering transfer under Section 1407, the Panel is not encumbered by considerations of venue."); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3864 (3d ed. 2011) (actions may be transferred under Section 1407 without regard to usual venue requirements and limitations).  For this reason, the Panel has authority under Section 1407 to transfer actions to an MDL court, notwithstanding the existence of a contractual forum selection clause specifying a different venue:

> "'[C]ontractual forum selection clauses [] do not limit the Panel's authority with respect to the selection of [a] transferee district,' or, by the same token, [the Panel's] authority to transfer tag-along actions to an existing MDL."

*See In re Park W. Galleries, Inc., Mktg. § Sales Practices Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) (transferring case to federal court in Washington despite contractual clause requiring parties to litigate in Florida); *In re Med. Res. Sec. Litig.*, No. 1247, 1998 U.S. Dist. LEXIS 15832, at *3 (J.P.M.L. Oct. 7, 1998) (rejecting argument that MDL transfer of case from California to New Jersey was improper due to contractual forum selection clause mandating California as forum for litigation between the parties).

Halliburton understood the importance of these policy considerations when it argued against plaintiffs and other parties to centralize the actions in this MDL.  Indeed, as referenced earlier, Halliburton's pleadings are replete with statements underscoring the need for "*all*" Deepwater Horizon cases to be centralized in MDL 2179, *see*, *e.g.*:

- "Virtually all Actions arising out of the [Deepwater Horizon incident] involve common questions of fact regarding what happened on the Deepwater Horizon and what role, if any, each of the Defendants had in the Incident."  *See* Ex. C at 6.

- "[D]iscovery aimed at finding out the answers to these questions is best handled at a consolidated level rather than in numerous separate proceedings." *See id.*

- "[A] consolidation of discovery efforts in MDL-2179 is the only way to create economies of scale and foster an efficient and non-duplicative discovery process." *See id.* at 7.

- Centralization is necessary to "promote just and efficient conduct of litigation since any decision rendered by the MDL Court on a pretrial issue will apply to all Actions that involve issues addressed by the ruling, thus saving the resources of dozens of district courts that otherwise would have to separately consider the same issues." *See id.*

- "Whatever individual hardship Plaintiffs may speculatively face as a result of the transfer of [their] case to MDL-2179, it is greatly outweighed by the overall efficiencies of the MDL proceedings, especially in light of the transferee court's ability to minimize such hardships via case management and discovery techniques." *See id.* at 10.

Moreover, the reasons that led the Panel to conclude that all of the disputes pending between BP and Halliburton needed to be included in MDL 2179 apply with even greater force now in light of the substantial discovery that has occurred in MDL 2179 concerning BP's fraud claims against Halliburton and Halliburton's claims against BP and the significant investment of time and resources spent litigating those claims in this litigation, all of which supports this Court's order directing that "***all allocation of fault issues***" be tried together in this MDL 2179 proceeding. *See* Ex. J (emphasis added).[5]  Under these circumstances, any individual interest Halliburton may have in enforcing the forum selection clause of the Wells Services Contract must give way to the overriding public interest in avoiding potentially inconsistent rulings on issues pertinent to scores of other MDL 2179 actions, preventing unnecessary and duplicative discovery, and preserving rather than consuming finite judicial resources. *See Mylan Pharms. Inc. v. Am. Safety Razor Co*., 265 F. Supp. 2d 635, 639 (N.D. W. Va. 2002) (unreasonable to enforce forum selection clause with respect to single cross-claim where doing so would require

---

[5] Specifically, Amended Pretrial Order No. 4 provides: "Trial will address ***all allocation of fault issues*** that may properly be tried to the Bench without a jury, including the negligence, gross negligence, or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, and non- parties with respect to the issues, including limitation of liability." *See* Ex. J at 1 (emphasis added).

party to litigate single cross-claim in one court and to litigate all other related claims and cross-claims in different court); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-2310, 2006 WL 3544956, at *4 (D. Minn. Dec. 8, 2006) ("[E]ven if the clause could be construed under Texas law to be exclusive, the court finds that enforcement of the forum selection clause would be unreasonable" because requiring plaintiff to re-file action in Texas against one of eleven defendants while related claims remained pending in District of Minnesota "would be an inefficient use of judicial resources and the parties' resources and create a potential for conflicting rulings."); *LaSala v. E*Trade Securities LLC*, No. 05 Civ. 5869, 2005 WL 2848853, at *6 (S.D.N.Y. Oct. 31, 2005) (enforcing forum selection clause unreasonable where it would be "an egregious waste of judicial resources to require that the parties litigate this one action in San Francisco" while all related actions "are still pending in a court uniquely familiar with the underlying facts common to all of these proceedings"); *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1061 (D. Minn. 2001) (enforcement of forum selection clause "is unreasonable and has the potential to be unjust" where dismissing portion of lawsuit and forcing party to re-file related claims in Texas court could result in claim preclusion or the potential for conflicting judgments and "would be an inefficient use of judicial resources as well as an unnecessary waste of the litigants' resources"); *First Interstate Credit Alliance, Inc. v. Alliance Leasing, Inc.*, No. 89 Civ. 4038, 1990 WL 67445, at *5 (S.D.N.Y. May 15, 1990) (transferring case to Alabama despite forum selection clause specifying New York as designated forum where action arising from same facts was already pending in Southern District of Alabama and enforcing forum selection clause "without taking into consideration the facts of the case" would "flout the theory of judicial economy" and, therefore, "be unreasonable").

Halliburton's attempts to circumvent this MDL Court's jurisdiction of BP's claims against it are disingenuous at best and clearly against public policy — particularly where Halliburton has argued for centralization of "*all*" claims when it perceived such argument to serve its interest.  Even if, however, public policy did not dictate this outcome, Halliburton has waived the right to invoke the forum selection clause of the Wells Services Contract for the reasons discussed next.

### B.    Halliburton Has Waived Its Right to Invoke the Forum Selection Clause of the Wells Services Contract to Dismiss BP's Fraud Claims.

Halliburton has, in any event, waived its right to invoke the forum selection clause of the Wells Services Contract.  "A forum selection clause will be deemed waived if a party invoking it has taken actions inconsistent with it." *In re Rationis Enters, Inc.*, No. 97 CV 9052, 1999 WL 6364, at *2 (S.D.N.Y. Jan. 7, 1999); *see also Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.*, No. 3:06-CV-00092, 2007 WL 1041003, *4 (E.D. Ark.  Apr. 4, 2007) (plaintiff waived right to invoke forum selection clause by filing in non-selected forum).   Here, Halliburton has engaged in a number of actions fundamentally inconsistent with maintaining its right to litigate against BP in Texas state court, including the following:

Halliburton affirmatively and repeatedly supported centralization of "*all actions related to the Deepwater Horizon Incident*" — without limitation or exception as to BP — in a court other than the designated forum in Texas state court in Harris County, Texas.  *See* Ex. A at 2; *see also* Ex. C and Ex. L (Halliburton's Opp'n to Pls.' Mot. to Vacate Conditional Transfer Order No. 9).

Halliburton never objected to the transfer of BP's fraud claims asserted in BP's Southern District of Texas suit to MDL 2179, even though those fraud claims are — by Halliburton's own account — "mirror image claims" to the fraud claims that Halliburton now seeks to have

dismissed and even though Halliburton contends that such fraud claims are subject to a mandatory forum selection clause contained in the Wells Services Contract.  *See* Halliburton's Mot. to Dismiss at 4 n.4, 10-12.

Halliburton never requested that the Panel sever from transfer to MDL 2179 BP's request in its Southern District of Texas suit for a declaratory judgment "that BP is not liable in contribution, indemnification, or other forms of monetary payment to Halliburton with regards to liabilities arising from the Deepwater Horizon incident under . . . ***the Wells Services Contract***." *See* Ex. E (BP Tex. Compl., Prayer for Relief ¶ 11) (emphasis added).

Even to this date, Halliburton has not sought to dismiss or transfer any of BP's other claims asserted against it in MDL 2179, including BP's claim for contribution and request for a declaratory judgment that BP "is *not* liable to Halliburton for contribution, indemnification or otherwise for liabilities arising from the Deepwater Horizon incident . . . under . . . ***the terms and conditions of the Wells Services Contract***.  *See* Ex. D (BP MDL Cross-Complaint ¶ 143) (emphasis added).

Having affirmatively advocated for centralization of "***all***" actions arising from the Deepwater Horizon incident involving common questions of fact and having failed to assert the forum selection clause of the Wells Services Contract consistently with respect to claims pending in MDL 2179, Halliburton cannot now selectively invoke the clause to secure dismissal of BP's fraud claims for tactical gain.  Rather, the just resolution of BP's fraud claims and the overriding public interest in the fair and efficient resolution of all disputes arising from the Deepwater Horizon incident involving common questions of fact mandates that Halliburton's motion be denied.

-16-

## CONCLUSION

For all of the foregoing reasons, BP respectfully requests that the Court deny Halliburton's Motion to Dismiss BP's fraud and fraudulent concealment claims in BP's Cross-Complaint and Third-Party Complaint against Halliburton.

Dated: October 17, 2011                                   Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504 -581-7979
Facsimile:  504 -556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Jeffrey Bossert Clark
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
202- 879-5000 (Tel)
202- 879-5200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985

***Attorneys for BP Exploration &
Production Company***

-17-

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2011

/s/  Don K. Haycraft__