# Exhibit C

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § § § | MDL No. 2179 |

**This document relates to:**
*M.P. Cheng, LLC, et al. v. BP Company North America, Inc. et. al., Texas C.A. 4:10-2717*

### HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 2

Defendant Halliburton Energy Services, Inc. and Sperry-Sun Drilling Services, Inc.[1] (collectively, "Defendants") respectfully submit this Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 2 ("Opposition") and show the Panel as follows:

### I.
### INTRODUCTION

1.  This is one of almost 400 virtually identical lawsuits filed in various state and federal courts across the southeastern United States (the "Actions") arising out of the explosion

---

[1] Sperry-Sun Drilling Services, Inc. ("Sperry") was dissolved in October 1997 and its assets and liabilities were transferred to HESI in January 1999. Thus, Sperry is not a separate legal entity, but is a product service line within the drilling and evaluation division of HESI. By filing this Opposition, Defendants do not waive their right to later challenge whether Sperry can even be sued as a separate defendant.

D 1583849 v1-24010/0002 PLEADINGS

and fire aboard the Deepwater Horizon drilling rig on April 20, 2010, and the ensuing oil spill from the well located on Mississippi Canyon Block 252 (the "Incident"). More than 290 Actions have already been transferred by the Panel to MDL-2179 because they involve one or more common issues of fact, and over 90 more are currently awaiting transfer. On August 31, 2010, the Clerk of the Panel issued Conditional Transfer Order No. 2 ("CTO-2") transferring this case to Judge Barbier in the Eastern District Court of Louisiana, under MDL-2179.[2] In response, on September 21, 2010, Plaintiffs filed a Motion to Vacate CTO-2 (the "Motion").

2. Although they recognize that a conditional transfer order "will be vacated on the showing of good cause," Plaintiffs fail to show good cause for vacating CTO-2. Their lawsuit for economic damages allegedly arising as a result of the Incident, after all, falls squarely within the range of cases that the Panel has already consolidated in MDL-2179 due to the prevalence of common issues of fact. Like hundreds, if not thousands, of other plaintiffs, Plaintiffs' petition alleges negligent and/or reckless conduct by defendants, necessitating the same discovery, pre-trial posture, and briefing schedule as the other Actions consolidated in MDL-2179. Excluding this case from MDL-2179 would result in unnecessary duplication of discovery and could lead to inconsistent rulings regarding several factual and legal issues that are common to the Actions in MDL-2179. On the other hand, consolidating this case into MDL-2179 will conserve judicial resources, promote consistency and uniformity in legal proceedings, streamline the pretrial process, and result in a more efficient resolution of not just this case, but all Actions.

## II.
## ARGUMENT

3. As Plaintiffs acknowledge, civil actions "involving one or more common questions of fact" may be transferred to a district court and consolidated for pretrial proceedings

---

[2] *See* MDL Panel's Conditional Transfer Order No. 2, 2:10-md-02179-CJB-SS (8/31/10) [Dkt. No. 231].

1

where such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."[3]  28 U.S.C. §1407.  A conditional transfer order transferring the case to an MDL may be vacated only upon a showing of good cause by the plaintiffs.  *See In re Grain Shipments,* 319 F. Supp. 533, 534 (J.P.M.L. 1970).  Here, Plaintiffs fail to demonstrate good cause for vacating CTO-2 and allowing this lawsuit to proceed on its own, separate and apart from almost 400 related Actions.

### A. The Panel Retains Authority to Transfer This Case to MDL-2179.

4. Plaintiffs' jurisdictional objections and accusations of improper removal before the transferor court are irrelevant to the Panel's transfer determination.  In their Motion, Plaintiffs argue that this case was improperly removed to federal court and suggest that the transferor court lacks jurisdiction.[4]  Plaintiffs substantively err in those arguments.  However, the Panel need not decide whether this case was removed properly or consider any of the Plaintiffs' jurisdictional objections raised in the motion to remand in order to authorize the transfer of this case to MDL-2179.  *See, e.g., In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (stating that "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand"); *accord In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F. Supp. 812, 813 n. 1 (J.P.M.L. 1973) (*per curiam*).

5. Plaintiffs' motion to remand does not deprive the Panel of jurisdiction or authority to transfer matters under 28 U.S.C. §1407.  To the contrary, the Panel routinely transfers cases to transferee district courts while motions to remand are pending in transferor courts, regardless of plaintiffs' jurisdictional objections.  *See, e.g., Ayers v. Conagra Foods, Inc.*, Civ. A. No. H-08-3723, 2009 U.S. Dist. LEXIS 35155, at *2 (S.D. Tex. Apr. 9, 2009) ("The MDL Panel clearly

---

[3] *See* Motion at 2 ¶4.
[4] *See* Motion at 5 ¶¶ 10, 12.

2

has the authority to transfer this case despite a jurisdictional objection."); *Grispino v. New Eng. Mut. Life Ins. Co.*, 358 F.3d 16, 19 (1st Cir. 2004) ("The fact that there were pending jurisdictional objections did not deprive the MDL panel of the ability to transfer the case."); *In re Ivy,* 901 F.2d 7, 9 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course."); *Colf v. Regeneration Techs., Inc*., 06-CV-6604L, 2007 U.S. Dist. LEXIS 2095, at *2 (W.D.N.Y. Jan. 11, 2007) ("[P]laintiffs' pending motion to remand this case to state court does not act as a bar to transfer.  The issues plaintiffs raise regarding alleged jurisdictional defects can and should be decided by the transferee court."); *In re Federal Election Campaign Act Litigation*, 511 F. Supp. 821, 823-24 (J.P.M.L. 1979) (panel transferred actions despite pendency of motions to dismiss for lack of subject-matter jurisdiction).  Indeed, Defendants recognize the Panel's authority in that regard despite lodging their own challenges to subject matter jurisdiction under the Oil Pollution Act ("OPA") in a number of the Actions.

6. Thus, Plaintiffs' jurisdictional objections are irrelevant to the Panel's decision regarding the transfer of this case to MDL-2179, and Plaintiffs' argument that the case was improperly removed does not speak to the good cause necessary to vacate CTO-2.

**B.** **Common Issues in Motions to Remand Support the Transfer of This Case.**

7. Since Plaintiffs' motion to remand raises issues of law common to numerous Actions, it, too, supports the propriety of transferring this suit for consolidation in MDL-2179. The transfer of cases to the MDL proceeding prior to the resolution of motions to remand is not only allowed but is encouraged under §1407, where those remand motions raise common jurisdictional objections because resolution of such identical or similar objections by a single court conserves judicial resources and promotes consistent rulings on identical issues.  *See, e.g.,*

3

*In re Ivy,* 901 F.2d at 9 (finding that because jurisdictional issues in question were easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation, there were real economies of scale in transferring the cases to the transferee district court); *see also Ayers,* 2009 U.S. Dist. LEXIS 35155, at *3 ("if, as seems likely, the remand issues are common to many of the MDL cases, decisions by the transferee judge would avoid duplicative discovery and conflicting pretrial rulings").

8.  Plaintiffs argue in their motion to remand that their claims for damages arise solely under state law and do not implicate either OPA or the Outer Continental Shelf Lands Act ("OCSLA").[5] These are the same objections that are being raised by plaintiffs in many other Actions that have already been consolidated in MDL-2179. There are, for example, already two motions to remand in non-PI Actions pending before Judge Barbier in MDL-2179, which raise the same issue.[6] As new lawsuits are being filed weekly, it is likely that the same jurisdictional objections and legal issues will continue to arise in other related matters. Also, since the application of the adjacent state law provision of OCSLA to oil spills stemming from an incident on a vessel located beyond any state's territorial waters is a hotly contested issue in many, if not all, of the Actions, the critical legal issues are better resolved by a single court in a consolidated MDL proceeding. Allowing one court to resolve these legal issues will both save the judicial resources of many district courts as well as promote consistency and predictability in the litigation arising out of the Incident.

**C.  This Case Involves Issues of Fact Common to the Actions Transferred to MDL-2179.**

9.  By and large, this lawsuit is no different from almost 400 other Actions asserting a variety of economic damages allegedly resulting from the Incident. Plaintiffs claim that, unlike

---

[5] *See* Plaintiffs Motion to Remand at 4-7 (Exhibit "B" to Motion).
[6] *See* Motions to Remand (attached hereto as Exhibit "A").

4

the plaintiffs in other Actions, their need for liability discovery is "minimal" because they have brought a claim under the Texas Oil Spill and Prevention and Response Act of 1991 ("OSPRA"), which imposes strict liability.[7]  Initially, though, Plaintiffs ignore the threshold legal inquiry as to the applicable law governing their claim (*e.g.*, because of the situs of the alleged tort and operation of the Admiralty Extension Act, Plaintiffs have no viable claims arising under state law and, in any event, no such claims under Texas law).  Moreover, Plaintiffs' argument is baffling considering that nowhere in their petition do Plaintiffs even mention OSPRA or reference strict liability issues.[8]  Instead, just like so many other Actions already consolidated, the petition couches all Plaintiffs' claims in negligence terms, referring to Defendants' negligent and/or reckless conduct.[9]

10.     Plaintiffs' assertion of a negligence claim is dispositive of the transfer and consolidation issue.  The discovery necessary to investigate this claim will overlap almost completely with the discovery sought in other Actions.  Virtually all Actions arising out of the Incident, including this case, involve common questions of fact regarding what happened on the Deepwater Horizon and what role, if any, each of the Defendants had in the Incident.  As the Panel recognized in its Transfer Order, the discovery aimed at finding out the answers to these questions is best handled at a consolidated level rather than in numerous separate proceedings.  Like the plaintiffs in other Actions, Plaintiffs here will conduct discovery aimed at determining what happened on the Deepwater Horizon and who was responsible for it.  Thus, the common questions predominate discovery in this case (not to mention the common legal questions), and while particularized discovery may be appropriate for various subsets of hundreds of suits filed, the Panel's Transfer Order and the parties' discussions in MDL-2179 anticipate such measures.

---

[7] *See* Motion at 3 ¶ 5, 5 ¶ 9.
[8] *See* Plaintiffs' Original Petition (Exhibit "A" to Motion).
[9] *See id.* at 8 ¶ 30.

5

11. Even if Plaintiffs were to amend their pleading in the future to assert only the OSPRA claim, eliminating the existing negligence cause of action, and even if OSPRA imposes strict liability,[10] before a defendant can be found liable under the act the parties must, like parties to so many of the Actions, engage in liability discovery to determine who is the "responsible party"[11] and whether the oil spill was caused solely by the willful misconduct or a negligent act or omission of a third party.[12] These fact questions will require the same liability discovery as many other Actions consolidated in MDL-2179. Plaintiffs cannot avoid the inexorable fact that common questions of fact and law predominate in their case; understandably so as it arises from the identical nucleus of operative facts.

12. Finally, MDL proceedings routinely combine different types of lawsuits that seek different type of damages but arise out of the same incident because the courts recognize that they share more common facts than different ones and that the pretrial procedure can be adjusted to accommodate any differences between different group of cases. *See e.g., In re: Zicam Cold Remedy Marketing & Sales Practice Litig.,* MDL No. 2096, 655 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2009) (consolidating consumer lawsuits seeking economic damages with personal injury lawsuits). The MDL Panel in *In re: Zicam* explained its decision to transfer the personal injury cases along with the consumer class actions to the MDL as follows:

> Centralization of all actions in this docket will allow a single judge to structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common parties and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions.

---

[10] It is highly questionable whether Plaintiffs can even bring a private cause of action under OSPRA. *See Avitts v. Amoco Prod. Co.*, 840 F. Supp. 1116, 1121 (S.D. Tex 1994), *rev'd on other grounds*, 53 F.3d at 690 (1995) (holding that "[t]he [OSPRA] Act does not create an independent cause of action for private parties directly against the covered polluters").
[11] *See* TEX. NAT. RES. CODE § 40.204.
[12] *Id.* at § 40.204(d).

6

*Id.* at 1373 (citing *In re Department of Veteran Affairs (VA) Data Theft Litig.,* 461 F. Supp. 2d 1367, 1368-69 (J.P.M.L. 2006); *see also In re: Toyota Motor Corp., Acceleration Marketing, Sales Practices, and Product Liab. Litig.,* MDL No. 2151, 2010 U.S. Dist. LEXIS 35471, at *5 (J.P.M.L. Apr. 9, 2010) (allowing consolidation of the personal injury/wrongful death lawsuits with the economic damages cases because the "liability discovery in all the cases will certainly overlap" and because the transferee judge could design the distinct discovery tracks to address any discovery particular to the personal injury/wrongful death lawsuits). Any differences between this lawsuit and the Actions in MDL-2179 will be easily and efficiently accommodated by the transferee judge. Thus, a consolidation of discovery efforts in MDL-2179 is the only way to create economies of scale and foster an efficient and non-duplicative discovery process.

### D. Transfer Will Promote the Just and Efficient Conduct of Litigation.

13. Since this case raises the same negligence claim as hundreds of Actions already transferred to MDL-2179 and stems from the identical factual basis, its transfer to MDL-2179 will allow a single court to decide identical issues in hundreds of lawsuits, which promotes uniformity, consistency and predictability in litigation arising out of the Incident. *See, e.g., R.N.R. v. Yamaha Motor Corp.,* 2010 U.S. Dist. LEXIS 54686, at *7-8 (S.D. Miss. Apr. 30, 2010) (citing *Shields v. Bridgestone/ Firestone, Inc.,* 232 F. Supp. 2d 715, 718 (E.D. Tex. 2002) ("Allowing the transferee court to rule on issues common to multiple cases avoids the risk of inconsistent and conflicting rulings, while conserving judicial resources by avoiding duplicative efforts."). It will also promote just and efficient conduct of litigation since any decision rendered by the MDL Court on a pretrial issue will apply to all Actions that involve issues addressed by the ruling, thus saving the resources of dozens of district courts that otherwise would have to separately consider the same issues.

7

14. Furthermore, even if this case involves some issues of fact or law that are not common with other Actions, those issues can be resolved in MDL-2179 as efficiently as the common ones. *See In re: Zicam Cold Remedy Marketing and Sales Practices Litigation,* 655 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009) (citing *In re Multi-Piece Rim Products Liability Litig.,* 464 F. Supp. 969, 974 (J.P.M.L. 1979) (finding that the transferee district court could easily foster a pretrial program that allowed pretrial proceedings with respect to any non-common issues, such as details concerning individual injuries, to proceed concurrently with pretrial proceedings on common issues). In fact, the Panel has already noted that the transferee court will have the broad discretion to fashion different discovery tracks to address any individualized discovery or pretrial demands in certain groups of Actions.[13]

15. Finally, Plaintiffs' argument that re-filing their motion to remand with the transferee court will waste "a significant amount of time" and further "burden" the court when it is already "inundated" with a large number of cases, misses the entire purpose of the MDL proceedings – consolidation of hundreds of cases for the purpose of resolving common issues of law and fact.[14] Re-filing the motion to remand in MDL-2179 is nothing more than an administrative task requiring little of Plaintiffs' time. Moreover, importantly, the transferor court has stayed all the proceedings pending a decision by this Panel.[15] Therefore, contrary to Plaintiffs' assertion, the motion to remand is not "currently awaiting decision" by the transferor court,[16] and the transferee court will not be duplicating the transferor court's work in considering the motion to remand. Nor will any efficiencies be lost. Transfer will instead operate to efficiently resolve common remand issues arising in an umber of related Actions.

---

[13] *See* Transfer Order at 3 ¶ 2.
[14] *See* Motion at 3 ¶ 6.
[15] *See* Order, 4:10-cv-02717 (S.D. Tex. Aug. 16, 2010) [Dkt. #6] (attached hereto as Exhibit "B").
[16] *See* Motion at 3 ¶ 6.

D 1583849 v1-24010/0002 PLEADINGS

### E. Transfer Will Promote the Convenience of the Parties and Witnesses.

16. Section 1407 requires the Panel to consider whether the transfer is in the interest of all parties to the lawsuit and not just the plaintiffs. Here, Plaintiffs argue that "local issues predominate in the discovery process" and that transfer of the case to MDL-2179 will not serve the convenience of the parties and witnesses because Plaintiffs operate their business in the state of Texas and because Plaintiffs' records and witnesses pertaining to the case are located in Texas.[17] While this might be true, Plaintiffs ignore the burdens imposed on all defendants facing duplicative discovery, pleadings, and pre-trial obligations in both New Orleans and Texas if this case is not consolidated in MDL-2179. Whatever individual hardship Plaintiffs may speculatively face as a result of the transfer of this case to MDL-2179, it is greatly outweighed by the overall efficiencies of the MDL proceedings, especially in light of the transferee court's ability to minimize such hardships via case management and discovery techniques. Moreover, accepting Plaintiffs' argument would undermine the viability of MDL proceedings, which necessarily consolidate geographically disparate matters (*e.g.*, every one of the hundreds of plaintiffs who do not reside in the Eastern District of Louisiana may make the same assertion as Plaintiffs here).

17. Plaintiffs assert in a conclusory fashion that transferring this case to MDL-2179 will not enhance convenience of the parties and witnesses.[18] They fail, however, to provide any support for their conclusion.[19] That failure is telling. Both the facts and simple logic refute

---

[17] *See id.* at 4-5, ¶ 9.
[18] *See id.* at 3 ¶ 7.
[19] The cases cited by Plaintiffs in support of the general proposition that "transfer pursuant to 28 U.S.C. § 1407 is not required where the overall convenience of the parties and witnesses is not enhanced" are not applicable here. In each of these cases the Panel denied a request to transfer the case on grounds that are not present here. *See In re Fotomat Franchisee Litig.,* 394 F. Supp. 798, 799 (J.P.M.L. 1975) (finding that transfer will not enhance convenience of the parties because the parties have already "embarked on coordinated discovery efforts and planned for joint examination of defendant's records"); *In re Luminex Int'l, Inc. Products Liab. Litig.,* 434 F. Supp. 668, 670 (J.P.M.L. 1977) (denying the transfer because the proceedings in the transferor court were "well advanced" and the

9

Plaintiffs' unsupported assertion. A witness or party who has to testify or respond to discovery will find it more convenient to do so once, in a consolidated proceeding, rather than grapple with multiple discovery requests in multiple lawsuits. Since, as discussed above, many of the Actions, including this case, involve the same parties and witnesses, the consolidated discovery will certainly enhance the convenience of both the parties and the witnesses. Without a doubt, the consolidation of this case under §1407 in MDL-2179 will eliminate duplicative discovery, which in turn, will serve to enhance the convenience of the parties and witnesses. *See, e.g., In re: Toyota Motor Corp.,* MDL No. 21512, 2010 U.S. Dist. LEXIS 35471, at *4 (Apr. 9, 2010) (where centralization eliminates duplicative discovery, prevents inconsistent pretrial rulings, conserves the resources of the parties, their counsel, and the judiciary, such centralization will create convenience for the parties and witnesses and will promote the more just and efficient conduct of litigation).

   **F. Consolidating This Case in MDL-2179 Will Not Delay the Trial.**

  18. Plaintiffs assert that transferring this case to MDL-2179 will result in a longer time period before reaching trial.[20] Of course, they cite nothing in support of that speculation. As the Panel correctly noted in the Transfer Order, the district judge in the MDL Court can always choose to have a faster discovery track and/or briefing schedule for any group of Actions within the MDL.[21] And Judge Barbier has already suggested that certain matters may be tried in the first quarter of 2011. If Plaintiffs are concerned with the timeliness of the proceedings, they

---

case was near trial); *In re Asbestos Insulation Material Products Liab. Litig.,* 431 F. Supp. 906, 910 (J.P.M.L. 1977) (denying the transfer because the cases were at different stages of discovery, and varied, among other things, in named defendants, as well as products to which plaintiffs were exposed); *In re Air Crash Disaster near Vpperville,* 430 F. Supp. 1295 1297 (J.P.M.L 1977) (denying transfer because the transferee court has already concluded all pretrial proceedings concerning the common issue of liability). None of these factors are present here.
[20] *See* Motion at 5 ¶¶ 11-12.
[21] *See* Transfer Order at 3 ¶ 2.

can address those concerns with the MDL Court during the case management conference and provide input as to the pretrial schedule once the case is transferred.[22]

19.    Furthermore, Plaintiffs' statement that they will only need to put on a trial on damages, and not liability, is belied by the plain words of their own petition, which clearly asserts a negligence claim.[23]  If Plaintiffs intend to prove the claims asserted in its petition, then it will certainly have to engage in liability discovery and try liability issues as well as damages.

### III.
### CONCLUSION

Because Plaintiffs cannot show good cause for vacating CTO-2, and because transferring this case for consolidation in MDL-2179 will conserve judicial resources, promote consistency and uniformity in legal proceedings, streamline the pretrial process, result in a more efficient resolution of this case and the consolidated Actions, and enhance the convenience of the parties and witnesses, the Panel should deny Plaintiffs' motion to vacate CTO-2.

---

[22] *See* Pretrial Order #1, 2:10-md-02179-CJB-SS at 4 (8/10/10) [Dkt. No. 2] (allowing parties to suggest whether and how the consolidated cases should be grouped into separate tracks for purpose of pretrial discovery, motion practice, etc.).
[23] *See* Plaintiff's Original Petition at p. 5 ¶ 18.

11

**Respectfully Submitted,**

**GODWIN RONQUILLO PC**

**By:** /s/ Donald E. Godwin
Donald E. Godwin (GODWD 5022)
*Attorney in Charge, pending pro hac vice admission*
dgodwin@godwinronquillo.com
Bruce W. Bowman, Jr.
bbowman@godwinronquillo.com
Jenny L. Martinez
jmartinez@godwinronquillo.com
Floyd R. Hartley, Jr.
fhartley@godwinronquillo.com


1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332
and
R. Alan York
ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR HALLIBURTON ENERGY SERVICES, INC. AND HALLIBURTON COMPANY**

12

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 § § § § § § § § | MDL NO. 2179 |

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order No. 2 has been electronically filed through the Court's CM / ECF system, which will send a notice of electronic filing to all counsel as required by JPML Rule 5.2(a) and Rules 5 and 6 of the Federal Rules of Civil Procedure.

/s/ Donald E. Godwin
Donald E. Godwin

13