# Exhibit K

# UNITED STATES DISTRICT OF COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER |
| This Document applies to: *All Cases* No. 10-2771 | § § § § | MAG. JUDGE SHUSHAN |

## HALLIBURTON ENERGY SERVICES, INC.'S REQUESTED BRIEFING ON TRIAL PLAN ISSUES

Responding to the Court's request (Doc. No. 2402), Defendant Halliburton Energy Services, Inc. ("HESI") files this Requested Briefing on Trial Plan Issues.

## INTRODUCTION

Consistent with its ongoing effort to implement an efficient, sensible trial plan for the Limitation action and litigation consolidated in MDL No. 2179, on May 18, 2011, the Court requested briefing from the parties regarding several discrete issues related to the scope of claims that can be tried to this Court without a jury. *See* Doc. No. 2402. Responding to the four issues on which the Court requested briefs, HESI initially observes that the final answers to many of the questions tendered are entirely dependent upon choice of law issues that the parties' have not yet fully briefed and that the Court has not yet resolved. For example, the Court's determination of whether the Plaintiffs' claims (and various cross claims) arise under general maritime law or under state law dictates not only whether a jury must be impaneled to consider the parties' claims and cross-claims, but also whether certain defenses are available to certain Defendants in this proceeding (*i.e.*, whether parties who have not been designated as a "responsible party" under OPA are entitled to dismissal of certain Plaintiffs' claims under this Court's decision in *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009)). Should the Court find

1

that general maritime law does not govern Plaintiffs' claims, it must necessarily then determine which state's substantive laws apply and how that implicates the parties' rights to a jury trial and the propriety of joinder of those claims in the instant action. Thus, while HESI responds to the Court's focused queries, its response is subject to amendment when the Court determines the various choice of law matters raised by this proceeding.

## ARGUMENT AND AUTHORITIES

**Issue One:** **Depending on the Court's resolution of choice of law issues, there may be fact issues common to the claims, cross-claims, 14(c) claims, and/or third-party claims asserted in connection with the Transocean limitation action claims (No. 10-2771) that cannot be tried by the Court in a bench trial without a jury in the trial scheduled to commence in February 2012.**

As discussed in its Response in Opposition to the PSC's Motion to Strike its Jury Demand (Doc. No. 2082), while HESI asserts that Plaintiffs' claims are maritime in nature, the characterization of those claims, particularly those claims purportedly brought under state law, remains an open question. If the Court ultimately determines that the Plaintiffs' claims are not maritime in nature (and not displaced by OPA), HESI may be entitled to a jury trial on those state law claims. The governing law for Plaintiffs' claims (maritime versus state law) is determinative of whether there are fact issues common to the claims, cross-claims, and third-party claims that cannot be tried by the Court in a bench trial.

In addition, certain cross-claims, including BP's cross-claims against HESI (Doc. No. 2082), third-party claims against HESI (Doc. No. 2083), and direct claims against HESI (Doc. No. 1, Case No. 4:11-cv-01526 transferred by the JPML from the SDTX on May 4, 2011 under CTO No. 17) lack factual commonality with the claims asserted by the Plaintiffs in the Transocean limitation action and involve facts and allegations relevant only to HESI and BP, and not other parties. Thus, non-maritime state law claims, contract-based indemnity claims, and

2

BP's contractual claims are not properly included in the bench trial set to commence in February 2012.[1] While Plaintiffs in the various pleading bundles, Claimants in the Transocean limitation proceeding, and even Transocean in its Rule 14(c) tender all assert claims against HESI related to the Incident,[2] BP's contractual claims and any contract-based indemnity claims are fundamentally different. *Compare e.g.,* Doc. No. 2082, *with* Doc. Nos. 879, 1059, 881, 1510, 880. Unlike those other claims, contract-based indemnity claims and BP's contractual claims for fraud and fraudulent concealment do not focus on HESI's contribution to the cause of the Incident. *See* Doc. No. 2082.[3] Instead, for example, the great majority of BP's alleged fraud claims focus upon alleged promises and representations in the Parties' "Well Services Contract",[4] claiming:

- HESI agreed to "carry out all of its obligations under the contract and shall execute the WORK with all due care and diligence and with the skill to be expected of a reputable contractor experienced in the types of work to be carried out under the contract." Doc. No. 2082 at ¶ 33.

- HESI "shall take full responsibility for the adequacy, stability, health, safety and environmental protection of all its operations and methods necessary for the performance of the WORK." *Id*. at ¶ 34.

- HESI allegedly represented and promised to BP that "all personnel employed on the WORK shall, for the WORK they are required to perform, be competent, properly qualified, skilled and experienced in accordance with good industry practice." *Id*. at ¶ 34.

---

[1] As will be discussed *infra*, BP's Cross-Claim is more properly considered a compulsory counterclaim in HESI's indemnity suit, previously filed in Harris County, Texas.

[2] All claims regarding the *Deepwater Horizon* incident on April 20, 2010 are hereinafter referred to as (the "Incident").

[3] *But see* fn. 5. BP does make several allegations in support of its cross-claims for contribution and indemnity regarding HESI's alleged negligence related to the *Deepwater Horizon*. But the vast majority of BP's allegations in support of its claims for fraud and fraudulent concealment are not related to the Incident, instead focusing on prior agreements and representations. These Claims lack factual commonality with the claims, cross-claims, and third-party claims in Transocean's limitation proceeding and, thus, should not be included in the February 2012 trial.

[4] On April 15, 2009, BP Exploration & Production and HESI entered into a written contract for Offshore Well Services in the Gulf of Mexico, hereinafter referred to as the "Well Services Contract."

3

- HESI allegedly "warranted, promised, represented, and guaranteed to BP that it would 'exercise all reasonable skill, care and diligence in the performance of the WORK and shall carry out the WORK in accordance with the requirements of the CONTRACT and to internationally recognized good oilfield practices and standards.'" *Id*. at ¶ 37.

- HESI allegedly "promised and represented to BP that it would provide an onshore engineer to work at BP's offices and be a member of the BP well planning team with the following roles and responsibilities: (a) Provide Safety Leadership training to all [HESI] personnel performing work under the contract; (b) Participate in all BP's safety initiatives and setting of safety targets and goals for all [HESI] personnel performing work under the contract; (c) Take full accountability for the technical quality, safety and environmental performance of all sub-contracted services managed by [HESI]; (g) Apply risk based engineering processes to prepare the BOD, individual well programs and all associated engineering and documentation; (i) Provide engineering support for all aspects of the service provided and fully competent in running all engineering software models offered to support the service, including the ability to run [HESI's] cementing software from [BP']s office; (j) Provide solutions where conventional cement design and procedures are not suitable, such as blend and foam cement; (k) Make recommendations on fit for purpose slurry designs to meet agreed specification; (l) Participate in the review of the previous days drilling activities with BP's onsite and offsite drilling management as required; (w) [HESI's] Onshore Engineer shall ensure the equipment is fit to perform the planned work …" *Id*. at ¶ 39.

Based upon these alleged promises and representations, BP asserts several claims against HESI, including fraud (*id*. at ¶¶ 117-124), fraudulent concealment (*id*. at ¶¶ 125-131), negligence (*id*. at ¶¶132-134), contribution (*id*. at ¶¶ 135-144), and subrogation (*id*. at ¶¶145-153).[5] Admittedly, BP's Cross-Claims for negligence, contribution and subrogation are based upon HESI's actions and/or alleged omissions pertaining to the Incident and may, depending on pending choice of law issues, be properly consolidated in the limitation bench trial. *See id*. at ¶¶

---

[5] It is important to note that BP appears to base some of its claims upon information and representations HESI allegedly made post-Incident. *See* Doc. No. 208 at ¶¶ 95-110. However, these allegedly tortious actions could not serve as a legal cause in fact of BP's alleged damages as BP claims that "[b]ut for [HESI's] multiple acts of fraudulent concealment, the casualty would not have occurred, the well would not have become uncontrollable, the explosion would not have happened, and the resulting deaths, injuries and oil spill would have been avoided." *Id*. at 131. It is unclear how HESI's allegedly fraudulent actions *post-Incident* could have prevented the Incident, but such facts are not common to the claim to be tried in the February 2012 trial. Instead, at best, they relate to an individual claim between HESI and BP. This portion of BP's contractual claim for fraud and fraudulent concealment does not share common factual or legal issues with the other claims, cross-claims, 14(c) claims and/or third-party claims asserted in the Transocean limitation action.

4

132-153. To the contrary, however, BP's Claims for fraud and fraudulent concealment relate to alleged pre-Incident promises and representations made exclusively to BP; thus, they are not relevant to and share no commonality with the claims asserted by the Plaintiffs and Claimants in the Transocean Limitation action. The same holds for contract-based indemnity claims.

Indeed, BP's fraud and fraudulent concealment Claim should more properly be asserted as a compulsory counterclaim in HESI's lawsuit against BP relative to the Well Services Contract, which was filed on April 19, 2011 (prior to the filing of any version of BP's Claims), in the 157th Judicial District Court of Harris County, Texas, hereinafter ("HESI's Indemnity Lawsuit").[6] *See* Orig. Pet. in *Cause No. 2011-23914, Halliburton Energy Services, Inc., v. BP Exploration and Production, Inc.*, attached hereto as Exhibit 1;[7] *see also RHC Industries, Inc. v. TIMSCO, Inc. et al.*, 652 F. Supp. 76 (S.D. Tex. 1986) (determining that under Admiralty Rule E(7) claims for fraud and breach of contract are compulsory counterclaims to a claim for indemnity).[8]

A claim is compulsory "if the claim: (A) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). The Fifth Circuit has set forth a four part test to determine whether a counterclaim arises out of the same transaction or occurrence as the main claim:

---

[6] BP's Cross-Claims (Doc. No. 2082) and BP's Third-Party Complaint (Doc. No. 2083) were filed after HESI's Indemnity Lawsuit. *Compare* Doc. Nos. 2082, 2083 *with* Exhibit 1.

[7] BP removed, albeit improperly, HESI's lawsuit, to the Southern District of Texas. HESI has since filed its Motion to Remand, based upon the mandatory forum selection clause of the parties' Well Services Contract and upon the lack of federal subject matter removal jurisdiction.

[8] The Fifth Circuit has held that the test for whether a counterclaim arises "out of the same transaction or occurrence" under Admiralty Rule E(7) is the same as the test for compulsory counterclaims under Fed. R. Civ. P. 13(a). *Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d 958, 964-65 (5th Cir. 1984), cert. denied sub nom, *Van Weelde Brother Shipping Ltd. v. I.N.C.A.S.*, 471 U.S. 1117, 105 S. Ct. 2361, 86 L. Ed. 2d 261 (1985).

> (1) Whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the counterclaim is compulsory.

*Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992), *reh'g denied* 976 F.2d 732 (5th Cir. 1992). BP's Claims for fraud and fraudulent concealment relate to its indemnity obligations under the parties' Well Services Contract and meet all four factors for determining if its cross-claim is mandatory. *See* Doc. No. 2082. As a result, these Claims are more logically related to HESI's Indemnity Lawsuit as opposed to the Transocean Limitation proceeding.

Moreover, because the underlying facts in HESI's Indemnity Lawsuit relate to the terms of the Well Services Contract, the validity and enforceability of the indemnity obligations under that contract, and BP's failure to meet those obligations, BP's Claims for fraud and fraudulent concealment based upon those same contract terms are compulsory counterclaims in the Indemnity Lawsuit.[9] *See id*. at 1058.

BP's Claims (or any cross-claim or third-party claim) for fraud seeking to nullify its contractual obligations, like contract-based indemnity claims, share no commonality with the Plaintiffs' or Claimants' incident-related claims in the Transocean limitation proceeding.[10] Moreover, depending on the Court's resolution of the choice of law issues (*e.g.*, application of maritime or state law), BP's Claims may require the impaneling of a jury. Thus, these claims

---

[9] Indeed, BP's Claims for fraud and fraudulent concealment are nothing more than an attempt to invalidate BP's indemnity obligations under the Well Services Contract and, thus, should be considered simultaneously with HESI's claim for indemnification under the parties' agreement in HESI's Indemnity Lawsuit.

[10] As can be seen by the Court's actions in establishing a separate track for the Transocean parties' declaratory judgment claims against its insurance carriers, the Court has already recognized that certain claims and issues involving the parties' actions with regard to the Incident should not be included in the trial in this matter.

6

1670423 v1-24010/0002 PLEADINGS

should not be included in February 2012 trial. Instead, these claims should be severed and BP should refile these claims in HESI's Indemnity Lawsuit, as a compulsory counterclaim.

**Issue Two:** **Without resolution of the choice of law issues, it is not clear whether there are fact issues common to both the United States' claims (No. 10-4563) and PSC-managed claims that cannot be consolidated for trial and tried to the bench in the limitation action (No. 10-2771) pursuant to Fed. R. Civ. P. 42.**

While BP Exploration & Production Inc. ("BP") has asserted a third-party complaint against HESI in Cause No. 10-4563, (Doc. No. 2083), the United States has not yet asserted any direct claims against HESI. As such, HESI takes no position at this time on the consolidation of the United States' direct claims and PSC-managed claims. However, to the extent HESI is in any way affected by the consolidation of the United States' claims with those of the PSC-managed claims, HESI suggests that the Court's query is premature.

The Court's determination of the applicability of general maritime law, the applicability of OPA and its related defenses to non-responsible parties, and the characterization of Plaintiffs' claims will dictate the parties' rights to a jury trial. It would be inappropriate to consolidate claims subject to a jury trial (*i.e.*, any state law claims unaffected by OPA) with those claims reserved only for a bench trial (*i.e.*, maritime claims). Moreover, while any personal injury/wrongful death claims and any non-OPA economic loss claims asserted by Plaintiffs would likely be ripe for consolidation in the February 2012 bench trial, all OPA economic loss claims should be excluded from the bench trial because the original Limitation Court has previously ruled that OPA claims are excluded from the Limitation proceeding. *See* Case 2:10-cv-02771-CJB-SS Doc. No. 131, attached hereto as Exhibit 1. This is especially true for OPA claims involving claimants who have not filed a Limitation claim. Thus, the Court's legal classification of the claims asserted will necessarily inform the propriety of consolidation. Until then, respectfully, Issue Two is premature.

7

**Issue Three:** Certain issues in cases assigned to MDL 2179 cannot be severed and consolidated for trial pursuant to Fed. R. Civ. P. 42.

Given the breadth of Fed. R. Civ. P. 42, as well as the broad discretion given to this MDL Court, there are likely very few issues that should not be consolidated for the February 2012 trial. To the extent the Court finds that state law, as opposed to general maritime law, applies to any claim, cross-claim, or third-party claim, those matters should not be included in the February 2012 bench trial. Likewise, the Court should not include any cross-claims or third-party claims, such as BP's fraud Cross-Claims, Third-Party Claims and/or Direct Claims against HESI (Doc. Nos. 2082, 2083; *see also* Doc. No. 1, Case No. 4:11-cv-01526 transferred by the JPML from the SDTX on May 4, 2011 under CTO No. 17), that lack the factual and legal commonality with the claims of Plaintiffs. Thus, BP's Claims against HESI should not be consolidated and considered in the February 2012 limitation trial. HESI cannot specify the precise claims that cannot be severed and consolidated for trial, however, until the Court determines the legal classification of those claims, resolving the pending choice of law issues.

**Issue Four:** For those issues in cases assigned to MDL 2179 that cannot be tried by the Court in a bench trial without a jury, what alternative, manageable and efficient trial plan should be used?

After the conclusion of the various phases of the February 2012 limitation trial and once the Court renders its Findings of Fact and Conclusions of Law, and applying standard MDL procedure, the Court should remand any claims not governed by maritime law and properly subject to the Limitation Action back to the party's home jurisdiction (*i.e.*, the transferee court) for jury trial on the merits. These subsequent jury trials would likely be guided by any applicable Findings of Fact or Conclusions of Law this Court enters at the conclusion of the February 2012 trial, though HESI reserves any arguments it may have regarding the collateral estoppel effect of such findings and conclusions.

8

DATED: June 6, 2011                     Respectfully Submitted,

                                        **GODWIN RONQUILLO PC**

                                        by: /s/ *Donald E. Godwin*
                                            Donald E. Godwin
                                            State Bar No. 08056500
                                            DGodwin@GodwinRonquillo.com
                                            Bruce W. Bowman, Jr.
                                            State Bar No. 02752000
                                            BBowman@GodwinRonquillo.com
                                            Jenny L. Martinez
                                            State Bar No. 24013109
                                            JMartinez@GodwinRonquillo.com
                                            Floyd R. Hartley, Jr.
                                            State Bar No. 00798242
                                            FHartley@GodwinRonquillo.com
                                            Gavin E. Hill
                                            State Bar No. 00796756
                                            GHill@GodwinRonquillo.com
                                            1201 Elm Street, Suite 1700
                                            Dallas, Texas 75270
                                            Telephone: (214) 939-4400
                                            Facsimile: (214) 760-7332

                                        and

                                            R. Alan York
                                            State Bar No. 22167500
                                            AYork@GodwinRonquillo.com
                                            Jerry C. von Sternberg
                                            State Bar No. 20618150
                                            JVonsternberg@GodwinRonquillo.com
                                            Misty Cone
                                            State Bar No. 24032277
                                            MCone@GodwinRonquillo.com
                                            1331 Lamar, Suite 1665
                                            Houston, Texas 77010
                                            Telephone: (713) 595-8300
                                            Facsimile: (713) 425-7594

                                        **ATTORNEYS FOR DEFENDANT
                                        HALLIBURTON ENERGY SERVICES, INC.**

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2011, HESI's Requested Briefing on Trial Plan Issues was filed electronically with the Clerk of the Court using the CM/ECF system, and that an electronic version of this document was forwarded by e-mail to all liaison counsel.

/s/ *Donald E. Godwin*
Donald E. Godwin