UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| No. 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE REGARDING THE ANADARKO ENTITIES'
KNOWLEDGE OR ACCESS TO INFORMATION
ABOUT WELL DESIGN AND/OR OPERATIONS
ON THE MACONDO PROSPECT FROM THE LIMITATION OF LIABILITY TRIAL**

**MAY IT PLEASE THE COURT:**

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively, "Anadarko") respectfully submit their memorandum in support of Motion *in Limine* to exclude evidence relating to Anadarko's purported knowledge of, or access to information about, the design of the Macondo well or operations on the Macondo Prospect from the Limitation of Liability trial scheduled to begin February 27, 2012. Under the Court's orders resolving the motions to dismiss the Amended Master Complaints for Pleading Bundles B1 and B3, Anadarko's purported knowledge or access to information about the Macondo well design or operations on the Macondo Prospect is irrelevant to any issue to be addressed in the Limitation of Liability trial, and must be excluded.

**I. BACKGROUND**

    **A. The Court's Orders on Motions to Dismiss**

Anadarko moved to dismiss all Plaintiffs' claims against it for negligence, gross negligence or other claims based on duty, because Anadarko had no right of control over any of

A/74544807.2

the activities allegedly causing the Plaintiffs' harm.  Plaintiffs conceded that Anadarko had no right of control over BP's well design or BP's or its contractors' operations on the Macondo Prospect.  Notwithstanding this dispositive concession, Plaintiffs asserted that because Anadarko had a contractual right to access certain information transmitted by the rig, Anadarko owed the Plaintiffs a duty to intercede in BP's and its contractors' operations to prevent the blowout and oil spill.  Am. B1 Master Compl. ¶¶573-574; PSC Opposition to B1 Motion to Dismiss [Rec. Doc. 1803] at 8-10.  The Court rejected the Plaintiffs' theory, holding that "[a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations—especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and Transocean personnel either onshore or on the rig."  B1 Order [Rec. Doc. 3830] at 28.

The Court also held that because the B3 Master Complaint alleged identical maritime law negligence claims premised on Anadarko's purported knowledge or access to information, all claims against Anadarko in the B3 Master Complaint failed to state a cognizable claim.  B3 Order [Rec. Doc. 4159] at 6.  The Court accordingly dismissed Anadarko as a defendant from the B3 Master Complaint entirely.

In light of the foregoing rulings, the Plaintiffs' only claim remaining against Anadarko in Bundle B is for strict liability under the Oil Pollution Act.[1]  *Id.*

    **B.**    **Issues to be Addressed in Phase One of the Trial**

Phase One of the Trial will address only "issues arising out of the conduct" of various parties "allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and

---

[1] The Court's reasoning also compels dismissal of the Bundle A Plaintiffs' negligence, gross negligence, and related claims against Anadarko, with the result that the only viable claim by any private plaintiff against Anadarko arises under OPA.

explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22, 2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the "Incident")." PTO 41 [Rec. Doc. 4083] at 2. Phase One also will include issues relevant to counterclaims, cross-claims and the associated allocation of fault amongst the defendants. *Id.* Under the Court's Orders on the B1 and B3 Motions to Dismiss, Anadarko's purported knowledge and/or access to information provided by BP is irrelevant to any of the issues to be addressed in Phase One, and such evidence should be excluded.[2]

## II. ARGUMENT

### A. Anadarko's Knowledge is Irrelevant to Plaintiffs' Claim Under OPA.

OPA imposes strict liability upon responsible parties that discharge oil into navigable waters. 33 U.S.C. §2701(21); *In re Taira Lynn Marine Ltd. No.*, LLC, 444 F.3d 371, 382 (5th Cir. 2006). Plaintiffs allege that the *Deepwater Horizon* was an offshore facility within the meaning of OPA.[3] Am. B1 Compl. at ¶681. The definition of "responsible party" with regard to an offshore facility includes "the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under the applicable State law ... for the area in which the facility is located (if the holder is a different person than the lessee or permittee) . . . ." 33 U.S.C. §2701(32)(A). A "lessee" is "a person holding a leasehold interest in an oil or gas

---

[2] Anadarko's expert report, filed contemporaneously herewith, contains expert opinion referring to or considering the extent of Anadarko's knowledge or access to information about the Macondo well design and operations on the Macondo prospect. Such expert opinion is submitted only in an abundance of caution and in anticipation that other parties will attempt to introduce evidence of Anadarko's knowledge or access to information into the record as certain deposition designations indicates that some parties already are doing. By submitting expert opinions related to Anadarko's knowledge or access to information, Anadarko does not concede that such information is relevant, or otherwise waive its objection that such evidence is irrelevant to any of the issues to be tried in Phase One of the trial, and should be excluded.

[3] Anadarko does not at this time challenge Plaintiffs' characterization of the *Deepwater Horizon* as an offshore facility rather than a vessel, but neither does Anadarko concede the point.

lease on lands beneath navigable waters . . . or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act. *Id.* at §2701(16).

Thus, to demonstrate that a party is strictly liable under OPA, a plaintiff must prove that (1) the defendant is a "responsible party" (2) for the "facility" (3) from which oil was discharged, or from which there was a substantial threat of discharge (4) "into or upon the navigable waters or adjoining shorelines" and (5) that the discharge resulted in "removal costs and damages." *U.S. v. Viking Resources, Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009).

Anadarko's purported knowledge of or access to information about the Macondo well design or operations on the Macondo Prospect is simply irrelevant to any of the five factors that will determine whether Anadarko was a leaseholder subject to strict liability as a responsible party under OPA. 33 U.S.C. §§2701-2702. Such evidence does nothing to support Plaintiffs' claims, has no bearing on any matter allegedly causing or contributing to the blowout, fire, and explosion of the *Deepwater Horizon* and ensuing discharge of oil, and should be excluded from the trial.

      **B.**      **Plaintiffs Improperly Seek to Introduce Irrelevant Exhibits Allegedly Going to Anadarko's Purported Knowledge of or Access to Information About Operations on the Macondo Prospect.**

Anadarko's concern that Plaintiffs will introduce irrelevant evidence going to its knowledge is not hypothetical. Plaintiffs include in their 300 sample trial exhibits documents that appear to have no other purpose than to address the issue of Anadarko's purported knowledge of, or access to information related to, the Macondo well design or operations on the Macondo prospect, or to address equally irrelevant issues such as Anadarko's economic analysis of the Macondo Prospect prior to entering into the agreement with BP, and Anadarko's post-

explosion communications.[4]  PSC's Sample 300 Trial Exhibits [Rec. Doc. 4057] at 1-4.  Not only is this evidence irrelevant to the Plaintiffs' OPA claim against Anadarko, it is also outside the scope of the issues to be addressed in Phase One, because <u>none</u> of this group of documents relates to the loss of well control and ensuing fire and sinking of the *Deepwater Horizon* on April 20-22, 2010.  PTO 41 [Rec. Doc. 4083] at 2.

Because Plaintiffs' only claim against Anadarko is for strict liability under OPA, these exhibits should be stricken from Plaintiffs' Sample Exhibit List, and Plaintiffs should be precluded from introducing any other such evidence at the Phase One trial for the purpose of demonstrating Anadarko's purported knowledge of or access to information about the Macondo well design or operations on the Macondo prospect.

      **C.**    **Anadarko's Knowledge is Irrelevant to the Cross-Claims and to Allocation of Fault.**

Phase One of the February 2012 trial also will address issues relevant to the defendants' cross-claims against each other for contribution and indemnity, and the associated allocation of fault amongst the defendants.  Anadarko has moved to dismiss each of the cross-claims against it on the ground that Anadarko bears no fault for the incident and therefore cannot be liable for contribution or indemnity under OPA or maritime law.[5]  To the extent that any of the cross-claimants/defendants seek to introduce evidence of Anadarko's knowledge of or access to

---

[4]    On September 2, 2011, the Court issued an Order [Rec. Doc. 3916] setting and revising deadlines for a process where the PSC would select 300 total sample trial exhibits to be used as exemplar exhibits for authenticity and other evidentiary objections.  The PSC's improper exemplar exhibits that would be excluded if this Motion is granted include Trial Exhibit Nos. 01594, 01595, 01598, 01902, 01908, 01914, 01916, 01917, 01919, 01910, 01920, 01921, 01922, 01923, 01926, 01928, 01941, 01947, 02308, 02314, 02636, 02641, 02687, 02689, 02691, 02692, 02693, 02697, 02827, 02855, 02991, and 04996.

[5]    *See* Anadarko's Motion to Dismiss Transocean's Cross-Claims/Counterclaims in the Limitation Action [Rec. Doc. 2479]; Anadarko's Motion to Dismiss Transocean's Cross-Claims/Counter Claims in the United States' Case [Rec. Doc. 2924]; Anadarko's Motion to Dismiss Cameron's Cross-Claims in All Cases [Rec. Doc. 3620]; Anadarko's Motion to Dismiss Cross-Claims of Halliburton, Cameron, Dril-Quip, M-I LLC, and Weatherford [Rec. Doc. 2927].

information for purposes of allocation of fault, the cross-claimants' effort must be rejected. For the same reason that all cross-claims against Anadarko must be dismissed, Anadarko's knowledge or access to information is irrelevant to allocation of fault in this case.

### 1. Contribution claims under OPA and the general maritime law are governed by principles of proportionate fault.

OPA authorizes contribution claims against other parties liable under OPA or liable "under any other law." *See* 33 U.S.C. §2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or any other law."). Beyond identifying who may be sued, Section 2709 is silent as to how liability should be apportioned among responsible and potentially responsible parties in contribution actions.

Every court addressing the issue has concluded that in a contribution action arising from an OPA case, liability must be allocated in proportion to the parties' percentage of fault. *See Posavina Shipping Co. v. Alex C Corp.*, 2010 WL 4292328, at *15 (D. Mass.) (allocating damages in an OPA contribution case in proportion to fault); *see also Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Hi. 2009) (suggesting OPA contribution claims would be calculated by proportion of fault); *Marathon Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (same). A leading treatise on maritime law likewise concludes that, "under OPA . . the responsible party . . . will be able to recover over against third parties . . . through contribution according to principles of comparative fault." Schoenbaum, *Admiralty and Maritime Law* § 18-2 n.26.

As these courts and scholars have recognized, OPA incorporates the rule that "principles of comparative fault" are used in allocating damages "*in all maritime cases*." Schoenbaum, *supra* § 5-18 (emphasis added). When Congress enacted OPA, it was well-understood that in any maritime contribution case, liability would be allocated in proportion to degree of fault. *See*

*U.S. v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) (recognizing that comparative liability must be basis for allocating damages in maritime cases).  Congress explicitly adopted this background rule, providing in OPA that "Except as otherwise provided in this Act, [OPA] does not affect . . . admiralty or maritime law . . . ."  33 U.S.C. § 2751.[6]

This Court has also rightly held that general maritime law governs this case, and that where OPA is silent general maritime law fills gaps in the statutory regime.  *See* B1 Order at 26 (holding that because OPA is silent with respect to claims against non-responsible parties, maritime law provides a remedy).  Accordingly, like every other court to consider the issue, the Court should fill OPA's silence with respect to apportionment of liability among defendants with the established maritime law rule of comparative fault.

### 2. Evidence of Anadarko's knowledge or access to information is irrelevant to allocation of fault and must be excluded.

Where a party is entitled to contribution, that party is entitled to contribution only in proportion to <u>the negligence or fault</u> of a third party.  *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *In re Liberty Seafood, Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . . to the extent occasioned by its fault"); RESTATEMENT (SECOND) OF TORTS § 886A(2) ("No tortfeasor can be required to make contribution beyond his own equitable share of the liability.").  Under the general maritime law, "fault" is defined as a "breach of duty" or negligence.  *Grigsby*

---

[6] The general maritime law rule for allocating liability would apply even in the absence of Congress's explicit instruction.  *See Miles v. Apex Marine Corp., et al.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.") (using preexisting maritime common law to guide statutory interpretation of Jones Act).

*v. Coastal Marine Svc. of Tex. Inc.,* 412 F.2d 1011, 1026 (5th Cir. 1969) ("Fault … may be defined as a breach of duty as well as a want of that degree of care required in a given case. It is immaterial whether that duty is imposed by state statute, the common law or the maritime law. In any case the failure to perform the duty constitutes 'fault.'").

Maritime law, accordingly, has long recognized that "non-negligent tortfeasors" -- a misnomer for "those defendants on which the law imposes responsibility even though they committed no negligent acts" or breached no duty -- cannot be allocated any measure of fault, and must be fully recompensed via indemnity or 100% contribution from those actually at fault. *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 (5th Cir. 1992); *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985) ("a non-negligent or constructively liable tortfeasor" is entitled to complete indemnity "from a co-debtor guilty of actual fault."). The Court has already held that Anadarko owed no duty to third parties in connection with the operations on the Macondo Prospect, and therefore cannot have breached any duty, and therefore cannot be found to bear any fault for the incident.

In a comparative fault system, "when the court determines that a party or nonparty is not negligent, he may not be considered in the allocation of fault, and subsequent evidence may not be admitted to establish his fault." *Regan v. Starcraft Marine, LLC*, Civ. A. No. 06-1257, 2010 WL 4117184, at *1 (W.D. La., Oct. 12, 2010) (granting motion *in limine* to exclude evidence of fault of party already found not negligent) (*citing Bowie v. Young*, 813 So.2d 562, 569 (La. App. 3d Cir. 2002)); *Duzon v. Stallworth*, 866 So.2d 837, 854 (La. App. 1st Cir. 2002) ("[W]e conclude, as [the *Bowie* court] did, that when the court determines that a party or nonparty is not negligent, he may not be considered in the allocation of fault, and subsequent evidence may not be admitted to establish his fault."). Accordingly, any evidence intended to demonstrate

Anadarko's fault -- including evidence of Anadarko's purported knowledge or access to information -- must be excluded from the Phase One trial.

### 3. No factor other than fault is relevant in an OPA or maritime law contribution action.

No factors other than fault are relevant to allocation of liability under the general maritime law or OPA. Because OPA responsible party liability is a form of vicarious liability or liability without fault, it is irrelevant to allocation of liability under OPA that Plaintiffs allege Anadarko is a "responsible party" under OPA.

For example, maritime law demands that a ship owner pay maintenance and cure whenever a seaman on his ship is injured. Yet, when the ship owner has done nothing to cause the seaman's injury but is, in essence, vicariously or constructively liable for the actions of a third-party tortfeasor who actually injured the seaman, the ship owner is effectively allocated 0% fault, and may seek complete contribution from the third party. *See Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008, 1017 (5th Cir. 1994); *Adams v. Texaco, Inc*., 640 F.2d 618, 620 (5th Cir. 1981) (the underlying rationale for granting the ship owner indemnity "is that the burden of maintenance and cure should be borne by the tortfeasor, not an innocent ship owner"); *Savoie v. Lafourche Boat Rentals, Inc*., 627 F.2d 722, 722 (5th Cir. 1980) ("a seaman's innocent employer is entitled to reimbursement from a third party for maintenance and cure payments made necessary by the third party's negligence."). It is not relevant to the allocation of fault among liable or potentially liable parties that the ship owner is liable in the first instance for the payments to the injured seaman.

Courts have followed the same rule in cases of strict liability. *See Dusenbery v. McMoran Exploration Co.*, 458 So. 2d 102, 105 (La. 1984) ("When liability to the injured party is imposed on one party on the basis of strict liability only and on a second party on the basis of

negligence or actual fault, the strict liability defendant may recover full indemnity by incidental demand against the party actually at fault."). In *Dusenbery*, an oil field worker was killed in an oil well pressure explosion. His survivors brought a wrongful death action against the owners of the well under Louisiana strict liability theories of recovery. The defendant owners of the well filed a third party demand for indemnification against the oil field contractor whose employees' negligence caused the accident. The Louisiana Supreme Court held that the well owners, though strictly liable to the plaintiff, were entitled to complete indemnity from the oilfield contractor who was actually at fault for the accident. It was irrelevant to the allocation of fault that the Louisiana statutes made the well owners strictly liable to the plaintiff in the first instance.

Here the analysis is the same. Strict OPA liability based on leaseholder status is analogous to the ship owner's duty to pay maintenance and cure, because it is a form of liability entirely divorced from the fault of the responsible party. As in a maintenance and cure case, an OPA responsible party who is liable without fault should be entitled to 100% contribution from parties actually causing or contributing to the discharge. It is irrelevant to the allocation of fault amongst responsible or potentially liable parties that OPA imposes strict liability on responsible parties to make payments to OPA claimants. Because Anadarko has already been held to have owed no duty to third parties in connection with the incident, and therefore breached no duty to third parties, Anadarko cannot bear any measure of fault for the incident, and cannot be liable to any other defendant for contribution under either the general maritime law or under OPA.

Accordingly, any evidence of Anadarko's knowledge or access to information introduced for the purpose of allocating liability under OPA should be excluded as irrelevant to any of the issues in the Phase One trial.

### III.     CONCLUSION

For all the reasons set forth above, the Court should grant Anadarko's motion *in limine* and exclude all evidence going to Anadarko's purported knowledge of, or access to information related to, the Macondo well design or operations on the Macondo prospect from the Limitation of Liability trial scheduled to commence in February 2012.

                                                                       Respectfully submitted,

DATED: Oct. 17, 2011                       BINGHAM McCUTCHEN LLP

                                               /s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)

        rguidry@kuchlerpolk.com
        1615 Poydras Street, Suite 1300
        New Orleans, LA  70112
        Tel:  (504) 592-0691
        Fax:  (504) 592-0696

A/74544807.2        12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 17, 2011.

                                                                       /s/ *Ky E. Kirby*
                                                                         Ky E. Kirby