UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>This document relates to:<br><br>All Cases and No. 2:10-cv-02771 | MDL No. 2179<br><br>SECTION: J<br><br>Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |

**M-I L.L.C.'s OPPOSITION TO THE MOTIONS TO DISMISS M-I's
FIRST AMENDED CROSS-CLAIMS BY DEFENDANTS MOEX OFFSHORE 2007 LLC,
MOEX USA CORPORATION, ANADARKO PETROLEUM CORPORATION,
<u>AND ANADARKO E&P COMPANY LP</u>**

**OF COUNSEL:**

MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:     (305) 415-3000
Facsimile:      (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:     (713) 890-5000
Facsimile:      (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

October 17, 2011

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
       Hugh E. Tanner
       htanner@morganlewis.com
       Texas Bar No. 19637400
       1000 Louisiana, Suite 4000
       Houston, Texas  77002
       Telephone:     (713) 890-5000
       Facsimile:      (713) 890-5001

**ATTORNEY FOR DEFENDANT
M-I L.L.C.**

DB1/ 68148021.4

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

M-I L.L.C. ("M-I") filed cross-claims for contribution and indemnity against several defendants, including MOEX Offshore 2007 LLC, MOEX USA Corporation (collectively "MOEX"), Anadarko Petroleum Corporation, and Anadarko E&P Company LP (collectively "Anadarko").  Defendant M-I L.L.C.'s First Amended Cross-Claims (Dkt. No. 2531) ("M-I Cross-Claims").  MOEX and Anadarko moved to dismiss M-I's cross-claims, arguing that contribution and indemnity are not available against them as a matter of law and that M-I did not sufficiently plead facts to support such claims, even if available.[1]  These arguments have no merit, and the Court should dismiss these motions.

## II.  ARGUMENT

### A.  M-I's Contribution And Indemnity Claims Are Legally Appropriate In This Case.

#### 1.  M-I's Indemnity Claims Are Viable, Given The Circumstances Of The Case.

MOEX and Anadarko argue that M-I cannot state a claim for maritime indemnity because the case does not fall within the "only three viable theories of maritime indemnity." MOEX Offshore MTD 6; Anadarko MTD 11.  MOEX and Anadarko are correct that maritime law allows only a limited range of indemnity theories.  *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833-34 (5th Cir. 1992) (giving examples of three permissible theories of maritime indemnity).  These three theories are but applications of the general principle that maritime cases should allocate fault proportionally except "'where proportionate degrees of fault cannot be

---

[1] *See* Memorandum of Law in Support of Defendant MOEX Offshore 2007 LLC's Motion to Dismiss Defendant M-I L.L.C.'s First Amended Cross-Claims (Dkt. No. 2903) ("MOEX Offshore MTD"); Memorandum of Law in Support of Motion of Defendant MOEX USA Corporation to Dismiss Defendant M-I L.L.C.'s First Amended Cross-Claims (Dkt. No. 2905) ("MOEX USA MTD"); Memorandum of Law in Support of Motion of Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Cross-Claims of Halliburton Energy Services, Inc., Cameron International Corporation, Dril-Quip, Inc., M-I LLC, and Weatherford U.S., L.P. (Dkt. No. 2927) ("Anadarko MTD").  MOEX USA adopts all of MOEX Offshore's arguments.  MOEX USA MTD 2-3.  Thus, M-I will refer to MOEX USA's motion only when necessary to discuss an independent argument.

measured and determined on a rational basis.'" *Id.* at 833 (quoting *United States v. Reliable Transfer Co.*, 421 U.S. 397, 405 (1975)). Given the enormous complexity of this litigation—the number of parties, their differing roles, and the diversity of types damages involved—it may very well be impossible to rationally determine proportionate degrees of fault. It is certainly too early in the process to make such a determination by way of a motion to dismiss.

MOEX and Anadarko also contend maritime indemnity is unavailable because they are not answerable for the "entirety" of the loss from the explosion and spill. MOEX Offshore MTD 5-7; Anadarko MTD 11-12. In its Order and Reasons as to Motions to Dismiss the B1 Master Complaint ("B1 Order"), this Court refused to dismiss MOEX and Anadarko "[b]ecause it is plausible that [they] will be found to be Responsible Parties and thus liable under OPA." B1 Order 29 n.12; *see also* 33 U.S.C. § 2701(32) (stating that a lessee of an offshore facility is a Responsible Party). Under OPA, a claimant can seek to recover all of its damages from any Responsible Party. *See* 33 U.S.C. § 2702(a). Thus, MOEX and Anadarko could plausibly be answerable for the entire loss, making dismissal of M-I's cross-claims for indemnity inappropriate.

### 2. OPA Does Not Preclude M-I's Contribution and Indemnity Claims.

MOEX contends that M-I's contribution and indemnity claims fail as a matter of law because OPA displaces these remedies. MOEX Offshore MTD 8-9. According to this theory, because OPA provides for contribution and subrogation of OPA-covered damages, OPA preempts maritime law "as to recovery of cleanup expenses and the cost of compensating third parties." *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd*, 122 F.3d 1062 (4th Cir. 1997).

MOEX views the range of potential liability sources too narrowly. M-I faces liability for damages within OPA's scope as well as other types of damages.[2] The body of law establishing liability usually governs a claim for contribution or indemnity. *Hardy*, 949 F.2d at 830 n.7; *In re Katrina Canal Breaches Consol. Litig.*, Civ. Action No. 05-4182, 2008 WL 5132840, at *6 n.11 (E.D. La. Dec. 1, 2008). Thus, if M-I were to be found liable under general maritime law, it could seek contribution and indemnity under that law; if M-I were somehow held liable under OPA, it could use OPA's scheme for apportioning liability. Either way, OPA does not displace all contribution and indemnity claims.

Moreover, MOEX's authority is not on point. The *National Shipping* case involved a Responsible Party, who faced liability only under OPA, seeking contribution rights outside of OPA's scheme against another party at fault for the spill. 924 F. Supp. at 1447-48. The court specifically noted that no other body of law was at issue. *Id.* at 1448. In situations such as here when liability under OPA and another body of law is at play, legislative history indicates that Congress intended to allow contribution actions outside of OPA. *See id.* at 1449 (citing H.R. Conf. Rep. No. 101-653 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 789 (stating that OPA's contribution provision "does not bar any action for contribution that is available under other law")). OPA does not bar M-I's claims for contribution and indemnity.

### 3.  M-I's Contribution Cross-Claims Are Ripe.

Anadarko contends that M-I's contribution cross-claims are not ripe because M-I is "actively defending" the claims against it and liability has not yet been determined. Anadarko MTD 20-21. However, as Anadarko's own authority notes, *id.* at 20 n.7, Federal Rule of Civil Procedure 13(g) governing cross-claims "does not require that the claim be mature at the time of

---

[2] MOEX even admits that its OPA displacement argument does not apply to the damages that the Bundle A Plaintiffs allege. MOEX Offshore MTD 8 n.6.

pleading." 4 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1431 (3d ed.). Rather, "a crossclaim can be contingent upon the ultimate adjudication of the crossclaimant's liability to plaintiff." *Id.* Thus, claims for contribution should not be dismissed but instead carried until the ultimate fault determination. *See Pierce v. Five B's, Inc.*, Civil Action No. 07-3263, 2008 WL 4091010, at *3 (E.D. La. Aug. 27, 2008) (denying Rule 12(b)(6) motion to dismiss contribution claim, stating, "[w]ith apportionment of liability yet to be determined, dismissing the contribution claim at this juncture would be premature").

  **B. M-I Has Sufficiently Pleaded Contribution and Indemnity Claims.**

    **1. Direct Liability.**

MOEX and Anadarko argue that M-I's cross-claims should be dismissed because M-I has not pleaded sufficient facts to show they owed any duty to M-I.[3] MOEX Offshore MTD 1; Anadarko MTD 1. Maritime negligence claims follow general negligence principles, including the existence of a duty tied in large part to foreseeability. *See Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376-77 (5th Cir. 2000).

MOEX and Anadarko contend that they are but passive investors and that BP had complete control over all operations. MOEX Offshore MTD 9-10; Anadarko MTD 13-14. The Joint Operating Agreement ("JOA")[4] indicates otherwise. Pursuant to the JOA, MOEX and Anadarko received real-time technical data from the rig. M-I Cross-Claims ¶ 62; JOA ¶ 5.7. BP was required to consult with MOEX and Anadarko and keep them informed on important matters, and on issues relating to health, safety, and the environment, MOEX and Anadarko had

---

[3] M-I recognizes that the Court ruled in the B1 Order that MOEX and Anadarko had no duty that could support a negligence claim, either directly or through vicarious liability. B1 Order 28-29. M-I makes these arguments to preserve the issue.

[4] The JOA is the first exhibit attached to Dkt. No. 1414.

a duty to support and cooperate with BP.  M-I Cross-Claims ¶¶ 61, 63; JOA ¶¶ 5.2, 5.10.  Moreover, MOEX and Anadarko had to specifically approve spending over a certain cap and shared proportionally in the loss and profits of the operation.  M-I Cross-Claims ¶ 61; JOA ¶ 6.2.  If MOEX and Anadarko did not approve of BP's performance, the JOA provided a mechanism for challenging its conduct, including removing BP and appointing a new operator.  M-I Cross-Claims ¶ 63; JOA ¶¶ 4.2, 4.4, 4.5.  These facts distinguish this case from a case like *Ainsworth*, where the company man on the rig observed operations at times but had no ability to interfere in them.  *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550-51 (5th Cir. 1987); *see also Ham v. Pennzoil Co.*, 869 F.2d 840, 842 (5th Cir. 1989) (finding non-operator had no control over operations on the rig in part because the company representative did not "expressly or impliedly authorize any unsafe practices").

Based on the data from the rig and the relationship between the parties as established by the JOA, M-I pleaded that Anadarko and MOEX were negligent because they "knew of, approved, and authorized the BP Parties' negligent design and operation of the well" and "knew or should have known of the presence of hydrocarbons in the well on the night of April 20, 2010 and failed to warn the crew of the vessel of the imminent blowout."  M-I Cross-Claims ¶ 66.  The blowout and spill were reasonably foreseeable consequences from these actions.  *See Canal Barge*, 220 F.3d at 377.  This more than satisfies the *Twombly*/*Iqbal* pleading standard.

### 2.   Vicarious Liability.

In its cross-claims, M-I pleaded that MOEX and Anadarko "are fully liable for the acts and omissions of their agents the BP Parties, including the negligence of the BP Parties."  M-I Cross-Claims ¶ 65.[5]  MOEX and Anadarko assert that M-I has not properly pleaded a vicarious

---

[5] MOEX Offshore incorrectly states in its motion that M-I does not plead a vicarious liability theory against it. MOEX Offshore MTD 8 n.5.

liability claim because M-I does not allege that MOEX or Anadarko had any right to control BP's operations.  MOEX Offshore MTD 7-12; Anadarko MTD 15-21.  This is incorrect.  M-I specifically pleaded that the JOA required MOEX and Anadarko to approve certain decisions of BP's, allowed them to intervene in matters regarding health, safety, and environmental issues and provided access to real-time data to inform such decisions, and gave them to authority to replace BP as operator if BP did not perform satisfactorily.  *See* M-I Cross-Claims ¶¶ 61-63; *see also* JOA ¶¶ 4.2, 4.4, 4.5, 5.2, 5.7, 5.10, 6.2.  Thus, BP was not free to "do the work in its own way" without any accountability to MOEX and Anadarko.  *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).  As with direct liability, this level of involvement distinguishes this case from MOEX and Anadarko's authority.  *See*, *e.g.*, *Ainsworth*, 829 F.2d at 550-51; *see also Ham*, 869 F.2d at 842.[6]

### 3.     MOEX USA Is A Proper Party To M-I's Cross-Claims.

MOEX USA asserts that it is not a proper party to M-I's cross-claims because there is no legal basis for holding MOEX USA liable for the explosion and spill.  MOEX USA MTD 1-2.  In its B1 Order, the Court did not dismiss MOEX USA, instead finding it "plausible" that MOEX USA will be found to be a Responsible Party under OPA.  B1 Order 29 n.12; *see also* 33 U.S.C. § 2701(32).  Because this Court has held that MOEX USA should not be dismissed from the suit for direct claims on a Rule 12(b)(6) motion, M-I's cross-claim against MOEX USA should similarly not be dismissed.  If MOEX USA is a Responsible Party and M-I pays damages greater than its proportionate share of responsibility, if any, then M-I can seek contribution or indemnity from MOEX USA.  Additionally, this Court has bifurcated for later discovery and a separate trial claims as to MOEX USA's liability for MOEX Offshore's conduct, Dkt. No. 3208, so dismissing

---

[6] Contrary to MOEX and Anadarko's assertions, M-I does not argue that their designation of operator form to the MMS independently creates vicarious liability.  Rather, vicarious liability arises from MOEX and Anadarko's level of involvement in the operations aboard the *Deepwater Horizon*.

MOEX USA would be improper at this time. Thus, the Court should not dismiss MOEX USA as a party to M-I's cross-claims.

### III. ALTERNATIVELY, THIS COURT SHOULD GRANT M-I LEAVE TO AMEND.

In the alternative, to the extent the Court finds M-I's allegations deficient, M-I should be granted leave to amend the complaint. Leave to amend should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182 (1962). "[A] dismissal with prejudice is a 'drastic remedy' that only is proper in extreme circumstances when lesser sanctions are not feasible." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 998 (11th Cir. 1983) (citing *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. 1981)). Dismissal for failure to state a claim without leave to amend is proper only if the complaint cannot be cured by amendment. *See Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 772 (9th Cir. 2002). Thus, in the interest of justice, this Court should allow M-I to amend to cure any deficiencies.

### IV. CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court deny these motions to dismiss M-I's First Amended Cross-Claims.

October 17, 2011

Respectfully submitted,

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:(305) 415-3000
Facsimile:     (305) 415-3001

By: _/s/ Hugh E. Tanner_
      Hugh E. Tanner
      htanner@morganlewis.com
      Texas Bar No. 19637400
      1000 Louisiana, Suite 4000
      Houston, Texas  77002
      Telephone:    (713) 890-5000
      Facsimile:     (713) 890-5001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:     (713) 890-5001

**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing M-I L.L.C.'s Opposition To The Motions To Dismiss M-I's First Amended Cross-Claims By Defendants MOEX Offshore 2007 LLC, MOEX USA Corporation, Anadarko Petroleum Corporation, and Anadarko E&P Company LP has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2011.

                                                   /s/ *Hugh E. Tanner*
                                                   Hugh E. Tanner