UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig  "Deepwater Horizon" in the Gulf  of Mexico on April 20, 2010 | * * * * | MDL No. 2179  SECTION "J"  JUDGE BARBIER |
| This Document Relates to:  No. 10-2771 | * * * * | MAGISTRATE NO. 1  MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

**MEMORANDUM IN OPPOSITION TO M-I L.L.C.'S MOTION TO DISMISS CROSS-CLAIM OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P LP**

**MAY IT PLEASE THE COURT:**

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively, "Anadarko") respectfully submit their memorandum in Opposition to M-I L.L.C.'s ("M-I") Motion to Dismiss Cross-Claim of Anadarko Petroleum Corporation and Anadarko E&P Company LP [Rec. Doc. 2817].  M-I has moved to dismiss only Anadarko's cross-claim against it for gross negligence, arguing that Anadarko fails to allege any facts showing that M-I's conduct was grossly negligent.  M-I is wrong, and ignores whole swaths of Anadarko's allegations in its Cross-Claim specifically setting out the ways in which M-I's conduct fell so far below the applicable standard of care that the Court reasonably could infer M-I's liability for gross negligence. *See* Claim, Answer and Cross-Claims of Third Party Defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP ("Anadarko Cross-Claim") [Lim. Rec. Doc. 338] at ¶¶256-264.  M-I's Motion to Dismiss provides no reason for the Court to dismiss Anadarko's gross negligence claim at the pleading stage, and should be denied.

I.      STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Who Dat Yat LLC v. Who Dat? Inc.*, 2011 WL 39043, at *7 (E.D. La., Jan. 4, 2011) (Barbier, J.) *quoting Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint states a facially plausible claim for relief, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Who Dat Yat LLC.,* 2011 WL 39043, at *7. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1940.

II.     ARGUMENT

   A.     **Standards for Finding Gross Negligence in the Fifth Circuit.**

The Fifth Circuit has defined gross negligence as "willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Becker v. Tidewater Marine,* 586 F.3d 358, 367 (5th Cir. 2009) (*citing Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F. 3d 528, 531 (5th Cir. 2001) (interpreting Louisiana law)). The Fifth Circuit has also held that one is grossly negligent who "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been

aware of it, and so great as to make it highly probable that harm would follow." *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F. 3d 528, 531 (5th Cir. 2001).

The United States Coast Guard's National Pollution Funds Center has also defined gross negligence in the specific context of oil spills as follows:

> Gross negligence: Negligence is a failure to exercise the degree of care which a person of ordinary caution and prudence would exercise under the circumstances. A greater degree of care is required when the circumstances present a greater apparent risk. Negligence is "gross" when there is an extreme departure from the care required under the circumstances or a failure to exercise even slight care.

*See Kuroshima Shipping S.A. Act of God Def. & Limit of Liab. Analysis,* 2003 Am. Mar. Cases 1681, 1693 (U.S. Coast Guard Nat'l Pollution Funds Ctr. June 23, 2003), *aff'd Water Quality Ins. Syndicate v. United States*, 632 F. Supp. 2d 108, 114-15 (D. Mass. 2009).

Louisiana law is in accord with maritime law and the Coast Guard's standard. Under Louisiana law, gross negligence has been described as the "want of even slight care" or "the want of that diligence which even careless men are accustomed to exercise." *Ambrose v. New Orleans Police Department Ambulance Service*, 639 So.2d 216, 219 (La. 1994). Additionally, gross negligence has been described as an "extreme departure from ordinary care of the want of even scant care." *Ambrose*, 639 So.2d at 220, *quoting* W. Page Keeton et al, Prosser and Keeton on the Law of Torts, § 34, at 211 (5th Ed.1984).

M-I erroneously argues that Anadarko's allegations fail to establish that M-I's conduct was "positively vicious" or that M-I "*entirely* ignored its duties" (M-I Motion at 4, emphasis in original), but M-I cherry picks only its preferred formulations from amongst the many potentially applicable standards by which the Court can evaluate M-I's liability for gross negligence. Nevertheless, under any of the potentially applicable gross negligence standards, Anadarko's allegations are sufficient to state a claim for gross negligence against M-I.

### B. Anadarko Alleges that M-I Knowingly Recommended and Prepared an Untested and Inappropriate Spacer Fluid for Use in a Safety Critical Task on the *Deepwater Horizon*.

Contrary to M-I's contentions, Anadarko has alleged all elements of a claim for gross negligence against M-I in its own Cross-Claim, and, in addition, by expressly incorporating the allegations against M-I in the Plaintiffs' Amended Master Complaint for Pleading Bundle B1 and Transocean's Third-Party Complaint against M-I. Anadarko Cross-Claims at ¶259 (incorporating Plaintiffs' allegations). The Court can reasonably infer from Anadarko's allegations that by recommending and implementing an unconventional fluid mixture as a spacer, M-I was aware that it was deviating from the ordinary standard of care expected of it under the inherently dangerous conditions of temporarily abandoning a deepwater well, and nevertheless made the recommendation to use the untested spacer fluid regardless of the potential for disastrous consequences, without taking even basic precautions.

Anadarko specifically alleges that a negative pressure test is a critical step in ensuring the integrity of a well for temporary abandonment, and that "[i]n order to prepare a well for a negative pressure test, a fluid called "spacer" material often is used to push heavy drilling fluid out of the well and ultimately reduce the pressure in the well to a low enough level to perform the test." *Id.* at ¶55. Anadarko further alleges that the spacer fluid used on the *Deepwater Horizon*, recommended and provided by M-I, "was denser than the drilling mud being displaced from the well to prepare for the negative pressure test and was denser than the seawater that was to be placed in the well during the negative pressure test" and that "using a spacer that was so much more dense than the seawater … increased the risk that the spacer would migrate downward through the seawater and through the BOP annulars, confounding the negative pressure test with its added weight." *Id.* at ¶ 57-58. Anadarko further alleges that the spacer

4

fluid recommended and provided by M-I created a "a risk of clogging flow paths that needed to be unobstructed in order to obtain an accurate negative pressure reading." *Id.* at 59.

Anadarko further alleges that the spacer fluid recommended by M-I, "had never before been used or tested by BP or by anyone on the *Deepwater Horizon* and, upon information and belief, never had been used or tested by anyone in the industry for such purposes." *Id.* at ¶ 56. Anadarko further alleges that M-I recommended the use of an "abnormally large quantity of mixed and untested spacer fluid despite the fact that this had never been done before and would make a correct interpretation of the negative pressure test more difficult than otherwise." *Id.* at ¶171.

Anadarko further specifically alleges that M-I was aware that the spacer might "dangerously 'set up' or congeal in 'small restrictions' in tools on the drill pipe" which could have the effect of fouling the cement job critical to sealing and temporarily abandoning the well, and preventing a blowout. *Id.* at ¶59. Finally, by expressly incorporating the Plaintiffs' allegations in the Master Complaint for Pleading Bundle B1 [Rec. Doc. 879], Anadarko alleges that "M-I acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an untested, abnormally large volume of mixed spacer solutions to avoid having to properly dispose of the two separate spacer substances as hazardous wastes." B1 Master Complaint at ¶ 559.

In sum, Anadarko alleges that M-I was aware that in controlling the drilling fluid activities on the *Deepwater Horizon* it was contracted to perform a critical function "essential to maintaining well balance needed for safe deepwater offshore drilling" (Anadarko Cross-Claim at ¶27), and that the failure to perform its task in a reasonably safe manner would create a direct and likely risk of loss of well control, which could result in injury, death, and environmental

5

destruction. The Court can reasonably infer from Anadarko's allegations that M-I's conduct constituted an extreme departure from the standard of care owed to Anadarko, that the inherently dangerous nature of the operations warrant a higher standard of care, that M-I was aware of the safety critical nature of its role, and that notwithstanding its awareness of the danger, M-I approved and conducted dangerous operations without taking any essential and basic precautions. *Id.* at ¶¶ 259-265. These allegations are more than sufficient to state a viable claim for gross negligence. *See, e.g., Toth v. Calcasieu Parish*, No. 06-0998, 2007 WL 710192, at *9 (W.D. La., March 6, 2007) (holding that allegations sufficient to state a claim of negligence were sufficient to state a claim for gross negligence).

### III. CONCLUSION

For all the foregoing reasons, the Court should deny M-I's Motion to Dismiss Anadarko's cross-claim against it for gross negligence.

Respectfully submitted,

DATED: Oct. 17, 2011

BINGHAM McCUTCHEN LLP

/s/ *Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP

355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 17, 2011.

                                                                                                                              _____/s/ *Ky E. Kirby*_____
                                                                                                                                   Ky E. Kirby