# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

| | | |
|---|---|---|
| J. Andrew Langan, P.C.<br>To Call Writer Directly:<br>(312) 862-2064<br>alangan@kirkland.com | (312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

October 13, 2011

**Via E-mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B345
New Orleans, Louisiana 70130

RE:   MDL 2179 - *In re: Deepwater Horizon*

Dear Judge Shushan:

We write in response to Mr. York's October 12 email to the Court suggesting that BP has somehow improperly declined Halliburton's October 11 request to substitute Kelly Cook for Sarah Sanders, whose deposition is set for Tuesday, October 18. Mr. Cook is not an adequate substitution for Ms. Sanders. Mr. Cook appears to have joined Halliburton in 2011 and thus would not possess knowledge concerning pre-incident operation of Halliburton's lab testing database, the Viking system, and the complaints that led to Halliburton's decision to modify the Viking system. BP has sought the deposition of Ms. Sanders for many months; it has been scheduled since July 1.[1] Furthermore, Halliburton did not indicate to BP that it would seek to substitute Mr. Cook for Ms. Sanders on its trial witness list until October 12. If Halliburton intends to call Mr. Cook, then BP will seek the deposition of Mr. Cook once that substitution is made.

BP respectfully requests that the Court allow BP to proceed with the Sanders deposition as scheduled.

*Mr. Cook is an inappropriate substitute for Ms. Sanders*. Ms. Sanders was identified by Halliburton in as a trial witness in May 2011. In its October 12 email, Halliburton states that she was listed so that she can explain the basic technical functioning of Viking, and that Mr. Cook is therefore an equivalent for a deposition. However, BP requested Ms. Sanders's deposition for

---

[1] Ms. Sanders deposition was scheduled during the July 1, 2011 Discovery Conference for September 23rd and subsequently moved to October 18 at the September 9, 2011 Discovery Conference.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
October 13, 2011
Page 2

reasons that go beyond to her understanding of the current operation of Viking.  As will be explained below, Halliburton has been aware of those additional reasons for months.

BP is aware of at least one email involving Ms. Sanders.  Ms. Sanders participated in correspondence in October 2010 regarding correcting deficiencies in Viking.  (HAL_0502406). One such improvement was described as "a better more visible audit trail in Viking that will automatically record the user ID of anyone who adds/changes and saves data in Viking."  In this same correspondence, Tim Quirk, Halliburton's lab manager, also expresses the need for additional documentation for specific lab tests, including accountability for each step of the processes and room for more thorough documentation and specific data.  Another Halliburton employee speculates in the same email chain that these deficiencies are the impetus for a coming audit by BP. Quirk then specifically ties the improvements to the incident, stating, "based on our experiences in dealing with events since April 20, 2010, I think it would be extremely advantageous for all labs to have a system in place that provides this type of documentation." Sarah Sanders responds to the email advising Mr. Quirk about how to get these items prioritized and funded, stating "[w]e will then be able to proceed with estimations and requirements." Therefore, since Ms. Sanders appears to have been involved in analyzing the requirements of effecting the requested improvements, there is reason to believe that Ms. Sanders understands what the capabilities of Viking were prior to these changes, including (potentially) knowledge of the functioning of the system as of April 20, 2010.

The capability of the system at the time of the incident to log user actions is of critical importance.  A key issue in the litigation is whether Jesse Gagliano, the Halliburton representative on the Macondo team, reviewed the foam stability test results reflected in Halliburton's April 17, 2010 Cement Lab Weigh-Up Sheet prior to the beginning of the Macondo cement job on April 19, 2010. BP believes that Mr. Gagliano received information prior to the cement job that indicated that the foam cement slurry designed by Halliburton was not stable, and that he concealed these results from BP.  After numerous discovery requests and depositions regarding this subject, Halliburton has produced only one document which sheds any light on the issue.  The document, which we understand will be labeled HAL_1229999, purports to reflect log-in activity on the Viking system for several days leading up to the incident.  The entries themselves, however, are written largely in computer code and, standing alone, provide limited information.  Based on Ms. Sanders's role in Application Services at Halliburton, which BP understands dates back to 2009, and based upon her role in updating the user audit function of Viking from its status at the time this document was generated to its current status, BP believes that Ms. Sanders, unlike Mr. Cook, will be able to explain the meaning and implications of this significant document.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
October 13, 2011
Page 3

*Halliburton's late witness list change is no basis to prevent the Sanders deposition.* Halliburton's email of October 12 advises the Court and BP for the first time, less than a week before Ms. Sanders' deposition, of its intention to amend its trial witness list to remove Ms. Sanders and add Mr. Cook. Halliburton contacted BP on October 11, requesting that BP take the deposition of Mr. Cook in lieu of that of Ms. Sanders. As explained above, Mr. Cook, who joined Halliburton in 2011, is not an adequate substitute for Ms. Sanders on the topics discussed above. Not only was Mr. Cook not involved in the October 2010 emails regarding making improvements to the Viking system, he was not even a Halliburton employee at that time. As a result, Mr. Cook cannot testify as Ms. Sanders can about how the Viking system worked prior to the implementation of the changes.

BP is also concerned about what relevant testimony Mr. Cook could provide at trial. He did not begin work on any aspect of Viking until February 2011, more than 9 months after the incident. Accordingly, unless he is being offered as a 30(b)(6) witness on Viking operations before the incident (or any time before the modifications), he cannot testify about this topic because, by Halliburton's own admission, he has no first-hand knowledge.

*It is too late for Halliburton to suggest this change.* BP requested Ms. Sanders's deposition in a letter dated June 21, stating: "Sarah Sanders - Ms. Sanders works in Application Services at Halliburton and was identified in Halliburton's First Preliminary Witness List. Ms. Sanders was copied on post-incident correspondence discussing a project to improve deficiencies in the Viking System, Halliburton's database used to manage lab testing, including: better documentation of lab testing to ensure accountability, tracking users who access and make changes to lab tests, and expanding lab weigh sheets to improve testing documentation." Halliburton never objected to BP's statement of purpose or gave any indication that BP's interest in Ms. Sanders's testimony was off-base.

On June 24th, the Court circulated a list of post-July 31 depositions to which no objection had been made. This list included Ms. Sanders. On August 30th, Halliburton requested that Ms. Sanders's deposition be postponed to October 18. On September 7, BP requested additional time to depose Ms. Sanders, stating again its interest in this email correspondence, and the Court granted the request on October 5. On October 7, Halliburton submitted its custodial production certification for Ms. Sanders, stating that she is an IT manager for HESI and was not involved in incident relief efforts. Halliburton thus waited until one week prior to her October deposition to assert that another witness should replace Ms. Sanders. Under these circumstances, the Sanders deposition should proceed as scheduled.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
October 13, 2011
Page 4

      Thank you for the Court's consideration of this issue.

                                       Sincerely,

                                       J. Andrew Langan, P.C.

cc:    Plaintiffs Liaison Counsel
        Defense Liaison Counsel
        Mike Underhill, Esq.
        Cory Maze