# Exhibit A

| | | |
|---|---|---|
| **Ryan Babiuch/Chicago/Kirkland-Ellis** | To | |
| | cc | |
| 10/13/2011 09:54 PM | bcc | |
| | Subject | Fw: Document Discovery: Lamar McKay |

**From:** Maze, Corey [mailto:CMaze@ago.state.al.us]
**Sent:** Thursday, October 13, 2011 4:18 PM
**To:** Nomellini, Mark J.
**Cc:** Langan, Andrew; Allan Kanner; Brian Barr; Kavanaugh, Brian P.; dsc2179@liskow.com; jimr@wrightroy.com; lstrange@ago.state.al.us; Mike.Underhill@usdoj.gov; sherman@HHKC.com; Duffy, Timothy A.; Sinclair, Win
**Subject:** Re: Document Discovery: Lamar McKay

Mark,

The States understand the background and the lay of the land, and we are not arguing anything. This is not an argument.

This is simply the States asking BP whether:

A. BP will agree to allow the States to promptly submit a limited number of additional search terms that extend to our NRDA, damages, restoration, etc issues or
B. BP refuses to agree.

Because it appears that the States' preference of re-deposing Mr. McKay on non-Phase 1 and 2 issues will not be realized based on BP's "one depo" position, we believe that option A is a reasonable request.

If BP disagrees, we simply ask that you say so, so that we might present our request to the Judge having first asked BP. If BP does not answer the question before tomorrow, we will take that as a no and present our request to the judge.

Corey

Sent from my iPad

On Oct 13, 2011, at 3:34 PM, "Mark Nomellini" <mnomellini@kirkland.com> wrote:
> Corey,
>
> Thanks for your e-mail. We are not quite sure what your position is. It has long been the case that depositions have occurred in MDL 2179 with other document productions occurring simultaneously and following the depositions, yet the Court has put in place its one deposition rule in PTO 17 (absent good cause shown). Have you not noticed these facts? That is a bit surprising.
>
> Are you disputing that the Court has ordered MDL 2179 depositions to go forward before all of the Phase 2, Phase 3, and NRDA documents have been produced by all the parties? And, if you

are disputing that, are you seeking to defer depositions until all of those documents are produced?   That would be a radical change from the proceedings to date and one that should not be implemented just for Mr. McKay's deposition.  Are you proposing that Mr McKay's deposition be postponed?.

Or are you disputing that the Court has ordered one deposition absent good cause shown, even for depositions taken before all the Phase 2, Phase 3, and NRDA documents are produced?  PTO 17 suggests otherwise.

Please advise.

As we have previously explained in Court, we need search terms six weeks in advance of when a custodian is going to be deposed, to allow time for negotiation, and additional time for the documents to be produced 10 days in advance of the deposition.  Thus, per the Court's August 15 order (attached), the deadline for new Phase Two search terms for BP documents was August 22.  As a result, we do not accept your proposal to submit new search terms in mid-October.

Regards,

Mark

---

**"Maze, Corey" <CMaze@ago.state.al.us>**

10/13/2011 01:15 PM

To: "Mark Nomellini" <mnomellini@kirkland.com>
cc: "Langan, Andrew" <andrew.langan@kirkland.com>, "Allan Kanner" <a.kanner@kanner-law.com>, "Brian Barr" <BBarr@levinlaw.com>, <brian.kavanaugh@kirkland.com>, <jimr@wrightroy.com>, "Strange, Luther" <LStrange@ago.state.al.us>, <Mike.Underhill@usdoj.gov>, "Steve Herman" <SHERMAN@hhkc.com>, "Tim Duffy" <tduffy@kirkland.com>, "Sinclair, Win" <WSinclair@ago.state.al.us>, <dsc2179@liskow.com>
Subject: Re: Document Discovery: Lamar McKay

---

Mark,

Thanks for the timely reply.

We have one fundamental problem with your points:  How can BP argue to Judge Shushan that the November deposition of Mr. McKay must cover Phases 1, 2, 3, Damages, NRDA, and everything else Macondo-related, as Andy has consistently done over the past two months, then argue to Judge Shushan that his pre-deposition production must be limited to Phase 1 and (maybe) Phase 2 documents?

As we see this contradiction to be obvious, I will not argue the point further.

Instead, the States offer the following solution:  By noon Tuesday, Mr. Kanner and I will jointly propose a list of additional search terms we believe will cover the non-Phase 1

topics the States may delve into with Mr. McKay.

Please let us know if this solution is acceptable before tomorrow's discovery conference. If it is not, we will ask for Judge Shushan's assistance at the Working Group Conference tomorrow.

Thanks,
Corey L. Maze
Special Deputy Attorney General

Sent from my iPad

On Oct 13, 2011, at 11:52 AM, "Mark Nomellini" <mnomellini@kirkland.com> wrote:

Corey,

Thanks for your e-mail.  A few points:

(1) The PSC proposed search terms to BP in late 2010.  BP negotiated these search terms with the PSC in late 2010 and early 2011, and circulated the search criteria negotiated with the PSC to defense counsel and government liaison counsel on February 16, 2011, April 4, 2011, April 21, 2011, May 12, 2011, and July 28, 2011.  The search terms covered Phase I and certain Phase II topics.  On April 21, 2011, BP notified the Court and the parties that:

"[T]o the extent any party seeks additional documents from BP that the party believes may not be covered by the search terms, BP respectfully requests that they directly propose modifications to the global search terms, instead of proposing a series of one-off requests.  This will ensure more efficient processing of those requests, given the search term mechanisms that have already been put in place."

Following this letter on April 21, we had not heard from you or the States regarding search terms until October 12.

(2) In August, various parties, including the PSC, Anadarko and the United States sought to provide additional Phase II search terms to BP.  The Court set a deadline of August 22 for providing additional search terms to BP.  The PSC, Anadarko, and the United States then all provided additional Phase II search terms.  (The PSC's search terms also related in part to Phase III.)  These additional search terms were circulated to all parties by BP on September 1; BP's cover e-mail made clear that they would be used to generate custodial productions for depositions.  The PSC, Anadarko, and the United States all provided additional comments on these search terms, which were incorporated into the final version below.

(3) Custodial productions are indeed determined by search terms.   As the Court has observed, this search-term-based approach has been discussed "in detail" at various hearings.   (May 13 transcript at 21)  At the February 18 conference, BP stated:  "So if you looked at the [search term chart], you would then look for the -- you look at the requests by which the incident custodians are listed and the search terms by those incident custodians and run those search terms for those dates, and that would generate the universe for the data to review."  (Feb. 18 transcript at 8)  The Court agreed with this approach.  *Id.*  at 8, 64. In its May 12 letter to the Court and the parties, BP stated: "Beginning in November 2010, the parties carefully negotiated search criteria

on a custodian-by-custodian and request-by-request basis. The negotiated search criteria chart—clearly setting forth which search terms and date ranges should be paired with which custodians—was submitted to the Court and the parties on February 16. As discussed below, at the February 18 conference, the parties and the Court discussed that this chart would drive the custodial deposition process, including that certain search terms would be used for certain witnesses' deponent productions." In the hearing on May 13, the Court agreed with BP's position as set forth in its May 12 letter: "I do agree with BP that the search terms for custodial files was a topic that we discussed in detail and does apply to custodial files."  5/13 Hearing at 21.

(4) Mr. McKay's deposition was first requested during Phase 1 and scheduled per the court's instructions, but after the July 31 "relevant to experts" period -- all over BP's objection that Mr. McKay had little to no Phase 1 knowledge.  Many McKay documents have already been produced.  Nonetheless, out of an abundance of caution and the interests of compromise, consistent with our February 16 letter describing the process, we are producing remaining non-privileged relevant McKay custodial documents that are:  (i) responsive to the Phase I/Phase II search terms circulated on February 16, April 4, April 21, May 12, and July 28, regardless of whether Mr. McKay's name is listed as a custodian for that particular search; or (ii) responsive to the additional searches originally circulated to you on September 1 and attached above, where Mr. McKay is listed as a custodian.

(5)  Your note seems to suggest that BP must complete its Phase 2 and 3 (and even NRDA) productions before Mr. McKay's deposition.  This is incorrect and fails to recognize that the Court has set a schedule for discovery and trial that involves phasing and inevitably, production of documents after some or many depositions have occurred, even documents that might be relevant to a deposition that has already been completed.  The court could have taken the path that all parties (including the States and plaintiffs) should substantially complete document production before commencing depositions.  The Court decided instead to have depositions proceed simultaneously with ongoing productions and early in the process, yet the Court still established the one deposition rule of PTO 17 (absent good cause shown).  The parties -- including the States --  have to accept both the benefits and  the tradeoffs associated with that approach.  We assume the State and other parties wish to proceed with Mr. McKay's deposition as scheduled on November 3-4, knowing of these facts, including that BP's Phase 2, 3 and NRDA productions are not complete.  If that is not the case, please advise.

If you have any questions, please feel free to give me a call at 312-862-2410.

| | |
|---|---|
| **"Maze, Corey" <CMaze@ago.state.al.us>**<br><br>10/12/2011 02:31 PM | To "Mark Nomellini" <mnomellini@kirkland.com>, <brian.kavanaugh@kirkland.com>, "Tim Duffy" < tduffy@kirkland.com>, "Langan, Andrew" <andrew.langan@kirkland.com><br>cc "Allan Kanner" <a.kanner@kanner-law.com>, <Mike.Underhill@usdoj.gov>, <jimr@wrightroy.com>, "Steve Herman" <SHERMAN@hhkc.com>, "Brian Barr" <BBarr@levinlaw.com>, "Strange, Luther" < LStrange@ago.state.al.us>, "Sinclair, Win" <WSinclair@ago.state.al.us><br>Subject Document Discovery: Lamar McKay |

Mark,

Judge Shushan has made it clear that Nov. 3-4 is the States' only opportunity to depose Mr. McKay, and therefore, all Macondo-related issues will be open for questioning.

As we've stated, the States intend to question Mr. McKay on restoration and clean-up efforts, and other NRDA-related issues relevant to the States' claims & damages.

Our concern is ensuring that Mr. McKay's production will include all restoration, clean-up, NRDA, etc. documents, as these issues may fall outside the normal "Phase 1-3" scope that everyone is typically focused upon when producing documents.

We have conferred with the PSC, and it is their belief that custodial productions are not limited to search terms by Phases, and instead fully encompass anything and everything related to the Macondo incident.  Thus, Mr. McKay's prior and current dealings with BP's restoration and clean-up efforts would naturally be included with Mr. McKay's production.

1.   Is this also BP's understanding of the breadth of the production of Mr. McKay's custodial file?
2.   If so, what search terms (if any) is BP currently using that will ensure a comprehensive production of clean-up and restoration-related documents?
3.   If not, does BP believe we need to ask Judge Shushan to expand the scope of Mr. McKay's production to include clean-up and restoration-related documents?

I appreciate your time and help.  If we need to meet-and-confer, either in person or via teleconference, please let me know.

Thanks,

Corey L. Maze
*Deputy Attorney General, State of Alabama*
(334) 353-4336

"**Confidentiality Notice**:  The information contained in this email and the documents attached hereto contain confidential information intended only for the use of the intended recipients.  If the reader of the message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained herein is strictly prohibited.  If you have received this communication in error, please immediately notify me by reply email."


*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************

*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************

<2011-08-15 Order re Working Group Conference on Friday, 08-12-2011.pdf>