IN RE: DEEPWATER HORIZON LITIGATION
MDL NO. 2179

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards LLC
556 Jefferson St. Suite 500
Lafayette, LA 70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Direct: (337) 593-4190
Fax: (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
E-Mail: sherman@hhkc.com
Telephone: (504) 581-4892
Direct: (504) 680-0554
Fax: (504) 561-6024

October 17, 2011

B<small>Y</small> H<small>AND</small>

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130

Re: Admissibility of MBI-Related Testimony and/or Reports

Dear Judge Barbier:

Plaintiffs respectfully provide the Court with the following submission to address the admissibility of MBI-related testimony and/or reports:

**MBI Statements and/or Testimony Are Admissible for Impeachment Purposes**

As recently noted,

> In practice, testimony or written statements given by a witness in connection with a Coast Guard hearing or investigation are used in litigation to impeach a witness at trial as "prior inconsistent statements" under Federal Rule of Evidence 801(d)(1). Testimony may also be admissible in a civil case as former testimony if the witness is unavailable pursuant to Federal Rule of Evidence 804(b)(1) or as a statement against interest under Federal Rule of Evidence 801(d)(2), provided there is an opportunity for cross-examination by opposing counsel or another party with the same interest.

Forbes, Thomas D., *Maritime Catastrophies: Marine Investigation and Mass Claims Practice: Marine Casualty Investigations*, 85 T<small>UL</small>.L.R<small>EV</small>. 1363, 1383 (June 2011).

**The Coast Guard Report May be Admissible for Impeachment Purposes**

While, generally, marine casualty reports conducted by the Coast Guard are inadmissible under 46 U.S.C. §6308(a), Courts in the Eastern District of Louisiana have frequently deferred the question of whether a Coast Guard Report might be admissible for impeachment purposes. courts, all in the Eastern District of Louisiana, have deferred judgment on the admissibility of an investigation report for impeachment purposes. *See, e.g., In re Danos & Curole Marine Contractors, Inc.,* 278 F.Supp.2d 783, 786 (E.D. La. 2003); *Orgulf Transport Co. v. Magnolia Marine Transport, et al.*, No. 97-1411, 1999 WL 221125, *1 (E.D. La. April 12, 1999); *TT Boat Corp.*, No. 98-0494, 1999 WL 169458, * 1 (E.D. La. March 25, 1999); *Eckstein Marine Service, Inc. v. Crescent Marine Towing, Inc.*, No. 98-1467, 1999 WL 58264, * 1 (E.D. La. Feb. 2, 1999).

**Photographs or Other Materials that Do Not Constitute Findings of Fact, Opinions, Recommendations, Deliberations, Nor Conclusions Are Admissible**

As Judge Duval held in *In re Danos & Curole, supra,* the statute, by its terms, excludes "findings of fact, opinions, recommendations, deliberations or conclusions." 46 U.S.C. §6308(a). Hence, to the extent that photographs "merely illustrate the condition of the objects depicted in the photos," they are admissible, and not excluded under the statute. *See In re Danod & Curole,* 278 F.Supp.2d at 785. To the extent that photos and other raw materials made part of the Coast Guard Report do not constitute "findings of fact, opinions, deliberations, or conclusions," they should be admissible here.

**MBI Testimony of Witnesses Now Invoking the 5th Amendment[1] is Admissible**

Because a witness who invokes the Fifth Amendment privilege against self-incrimination is deemed "unavailable" under the Federal Rules of Evidence, previous testimony before the Board is admissible at trial under Rule 804(b)(1), as the parties against whom the testimony will be offered were parties-in-interest during the Coast Guard Hearings, and had an opportunity and similar motive to develop the testimony by direct, cross, or re-direct examination.

Federal Rule of Evidence 804 exempts from the hearsay rule an individual's former testimony if (1) the individual is "unavailable"; and (2) "the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." FED. RULE EVID. 804(a) & (b)(1). Rule 804(a)(5) defines unavailability as including "situations in which the declarant (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement…" FED RULE EVID. 804(a)(5).

In the Fifth Circuit, a witness who invokes his Fifth Amendment privilege against self-incrimination is "unavailable" within the meaning of Rule 804(b). *United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998); *United States v. Briscoe*, 742 F.2d 842, 846 (5th Cir. 1984); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978); *Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 36654, *10-11 (S.D. Tex. May 18, 2007); *United States v. Skilling*, 2006 U.S. Dist. LEXIS 28424, *5 (S.D. Tex. April 27,

---

[1] *See, e.g.,* from the "List of 300": TRIAL EXHIBIT 02032 [MBI Testimony of Jesse Gagliano] TRIAL EXHIBIT 20013 [MBI Testimony of JimmyHarrell].

2006); *see also, United States v. Salerno*, 505 U.S. 317, 320-321 (1992) (parties agreed that proper invocation of the Fifth Amendment privilege renders a witness unavailable). Hence, any witness who asserts the Fifth Amendment privilege in this case should be deemed "unavailable" for purposes of Rule 804, and his previous testimony before the Board should be admissible at trial under Rule 804(b)(1).

**The BOEMRE Report Is Admissible**

Even assuming that the Coast Guard Report is inadmissible, the report conducted and released by the Bureau of Ocean Energy Management Enforcement and Regulation ("BOEMRE") (formerly MMS) is not a marine casualty investigation as provided by 46 U.S.C. §6308(a), and is admissible under FED. RULE EVID. 803(8). See, e.g., *Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 WL 941794 (5th Cir. Apr. 12, 2006) (noting that an accident report prepared by MMS regarding "a similar, but factually unrelated incident" was entered into evidence in a case involving an oil and gas well blowout in the Gulf of Mexico in 1999).

A "marine casualty investigation report" investigates marine casualties involving deaths, injuries, property/equipment loss, vessel safety systems, and environmental damage resulting from incidents aboard vessels subject to U.S. jurisdiction. *See* COAST GUARD REPORT, at v (describing Coast Guard investigatory jurisdiction); *see also* 46 C.F.R. §4.03-1. The BOEMRE investigation, by contrast, examined "the causes of the blowout, including factors related to the Macondo well drilling operations, well abandonment procedures and well control." JOINT COVER MEMO, at 1. BOEMRE's responsibilities focused upon "exploration, drilling, completion, workover, production, pipeline and decommissioning operations for hydrocarbons and other minerals on the [Outer Continental Shelf]." COAST GUARD REPORT, at v. These subject areas fall squarely within BOEMRE's jurisdiction, but not the Coast Guard's.

The regulations governing a marine casualty investigation are codified at 46 C.F.R. §4.01-1 *et seq*. These regulations do not extend a "marine casualty investigation" to any investigation other than one performed by the Coast Guard. Subpart 4.03-30 explicitly defines an investigating officer as an employee of the Coast Guard, not BOEMRE or any other agency. Further, the investigating (Coast Guard) officer must himself investigate each marine casualty. 46 C.F.R. §4.03-30(a). Thus, under the regulations, the Coast Guard and its investigating officer cannot delegate a "marine casualty investigation" to another agency. While a second agency may work in conjunction with the Coast Guard, that second agency is not conducting a §6301 "marine casualty investigation." Only the Coast Guard may do so.

Notably, the relevant Coast Guard regulations contain mention of but one other agency, the National Transportation Safety Board (NTSB), which is also statutorily required to investigate certain marine casualties. *See* 46 C.F.R. §4.40-3. Even here, however, the regulations are clear that "[t]he Coast Guard's responsibility to investigate marine casualties is not eliminated nor diminished by the regulations in this subpart." In joint investigations by the Coast Guard and the NTSB, the proceedings and investigations are "conducted independently but so as to avoid duplication as much as possible." *Id.* Again, the import of the regulations is clear: even where the Coast Guard works with another agency (such as NTSB), no agency save the Coast Guard may conduct a marine casualty investigation under §6301. Because no other agency may conduct a "marine casualty investigation," and because no agency can supplant the Coast

Guard's role to investigate such a casualty under § 6301, it follows that *only* the Coast Guard can author a report pursuant to §6301. Clearly, under the statute, only a marine casualty investigation report written under §6301 can be made inadmissible pursuant to §6308(a).

To be sure, BOEMRE and the Coast Guard joined forces to avoid duplicative efforts and competing hearings. However, their purposes were separate and they stated as much. The prologue of the Coast Guard Report is revealing in this regard:

> BOEMRE is responsible for investigating incidents related to systems associated with exploration, drilling, completion, workover, production, pipeline and decommissioning operations for hydrocarbons and other minerals on the OCS. The USCG is responsible for investigating marine casualties involving deaths, injuries, property/equipment loss, vessel safety systems, and environmental damage resulting from incidents aboard vessels subject to U.S. jurisdiction. The MOA assigns responsibility in joint investigations according to these responsibilities. <u>Volume I [Coast Guard Report] addresses the areas of USCG responsibility and Volume II [BOEMRE Report] will address the areas of BOEMRE responsibility</u>.

COAST GUARD REPORT, at v, (emphasis supplied). As is clear, the agencies' responsibilities were delineated from the outset, as were their purposes, investigations, and finally, their reports. The agencies intentionally separated their reports into separate volumes and released the volumes on separate dates. Each agency report "was prepared according to the respective agency's internal processes." COVER MEMO, at 2. Volume I is clearly the Coast Guard's marine casualty investigation report and is inadmissible. Volume II is clearly BOEMRE's report and is admissible because it is not a "marine casualty report" and no other statute precludes its admission.

As always, we appreciate the Court's time and consideration in this matter.

Respectfully submitted,

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Plaintiffs' Liaison Counsel*

cc: Hon. Sally Shushan (*via* E-Mail)
    DEFENSE LIAISON COUNSEL (*via* E-Mail)
    Mike Underhill, Esq. (*via* E-Mail)
    Hon. Luther Strange (*via* E-Mail)
    Ben Allums (*via* E-Mail)
    Mike O'Keefe (*via* E-Mail)