## IN RE: DEEPWATER HORIZON LITIGATION
## MDL NO. 2179

JAMES PARKERSON ROY                          STEPHEN J. HERMAN
Domengeaux Wright Roy & Edwards LLC          Herman, Herman Katz & Cotlar, LLP
556 Jefferson St. Suite 500                  820 O'Keefe Ave.
Lafayette, LA 70501                          New Orleans, LA 70113
Telephone: (337) 233-3033                    Telephone: (504) 581-4892
Direct: (337) 593-4190                       Direct: (504) 680-0554
Fax: (337) 233-2796                          Fax: (504) 561-6024

October 17, 2011

**BY HAND**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130

Re:  Alleged *Daubert/*702 Issues within Defendants' Business Records;
     Bly Interview Notes; and Other Misc. Business Records

Dear Judge Barbier:

Consistent with the Court's Order regarding the "List of 300" and the subsequent discussions with Judge Shushan during Friday Discovery Conferences, Plaintiffs respectfully address alleged *Daubert*/702 issues within Defendant company business records – utilizing TRIAL EXHIBIT 00001 (Bly Report)[1] and TRIAL EXHIBIT 00002 (04/23/10 Bly Report Appendices – Appendix K Laboratory Analysis of Cementing Operations on the Deepwater Horizon (from CSI Technologies)), as exemplars, for illustrative purposes.

This submission also addresses the admissibility of various notes, transcripts and other statements that were obtained over the course of the Bly investigation.  Such statements should be considered business records; party admissions; and, where appropriate, prior inconsistent statements which can be used for for impeachment purposes.  (Indeed, BP and TO recently stipulated to the admissibility of interview notes from statements conducted in conjunction with the Transocean Internal Investigation. [Doc 4292])

_____

[1] Page 56 of the Bly Report is a diagram of the Planned Cement Slurry Placement (Figure 2).  This diagram was introduced as part of Deposition Exhibit 1.  It is contemplated that, for trial purposes, the entire Bly Report will be offered as Trial Exhibit 00001, (in lieu of several partial, incomplete and/or duplicate Deposition Exhibits).

Halliburton, for one, argues that the Bly Report (BP's "Deepwater Horizon Accident Investigation Report" dated September 8, 2010), is inadmissible hearsay pursuant to Rule 802 and fails to comply with the expert witness requirements of Rule 702.

These arguments are untenable because the Bly Report falls within the hearsay exception for business records under Rule 803(6),[2] and the opinions reached in the Report are not subject to the evidentiary standards of Rule 702. The underlying interview notes compiled during BP's investigation of the Deepwater Horizon disaster are likewise admissible as business records.

### *Fed. R. Evid. 803(6) As Applied To The Bly Report and Notes of Interviews.*

Rule 803(6) of the Federal Rules of Evidence creates an exception to the hearsay rule for "records kept in the course of a regularly conducted business activity," upon the testimony of the custodian of the records or a qualified witness. To qualify under the business records exception to the hearsay doctrine, a report must have been made at or near the time of the opinions expressed, by someone with knowledge or from other information transmitted by a person with knowledge. *See* FED. RULE EVID. 803(6). The rule also requires that the record be kept in the ordinary course of business activity and that it was the regular practice of that business activity to make the record. *Id*. All of the aforementioned requirements can be shown by the testimony of a custodian or other qualified witness. *Id*.

Rule 803(6) was specifically intended to "relax[] the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved," which was "a burdensome and crippling aspect of using records of this type." Fed. R. Evid. 803(6) ADVISORY COMMITTEE'S NOTE. The rule assumes that "[a]ll participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, 'in the regular course of business.'" *Id*. (quoting FED. R. EVID. 803(6)). The presumed reliability of information contained in ordinary business records therefore overcomes the hearsay objection. "In order to make clear its adherence to the [position favoring admissibility] . . . the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries." Fed. R. Evid. 803(6) ADVISORY COMMITTEE'S NOTE. The Rule "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." Fed. R. Evid. 803(8) ADVISORY COMMITTEE'S NOTE.

---

[2] The Bly Report is also excluded from the hearsay rule as a party admission, at least as to BP.

Admissibility of evidence under Rule 803(6) "is chiefly a matter of trustworthiness." *United States v. Wells,* 262 F.3d 455, 462 (5ᵗʰ Cir. 2001); *Brauninger v. Motes,* 260 Fed. Appx. 634, 638 (5th Cir. 2007); *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.,* No. 10-0044, 2011 U.S. Dist. LEXIS 25556, *14-15 (E.D. La. Mar. 11, 2011) (McNamara, J.) ("The 'lynchpin' of Rule 803(6) is trustworthiness."). "The inherent reliability of business records is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." *Int'l Marine, L.L.C.,* 2011 U.S. Dist. LEXIS at *15  (citing *United States v. Wells,* 262 F.3d 455, 462 (5ᵗʰ Cir. 2001)).

The Fifth Circuit has explained that documents satisfying the business records exception must meet the following foundational elements:

> (a) That the document [was] made 'at or near' the time of the matters recorded therein; (b) that the document [was] prepared by, or from information transmitted by a person 'with knowledge of the matters recorded'; (c) that the person or persons who prepared the document [were] engaged in preparing it, in some undertaking, enterprise or business which can fairly be termed a 'regularly conducted business activity'; (d) that it [was] the regular practice of that business activity to make documents of that nature; and (e) that the documents [were] retained and kept in the course of that or some other regularly conducted business activity.

*Wilander v. McDermott Internat'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989) (quoting *White Indus. v. Cessna Aircraft*, 611 F. Supp. 1049 (D. Mo. 1985)).

The Fifth Circuit has held on several occasions that incident reports and the documents supporting them fall within the ambit of Fed. R. Evid. 803(6). *Brauninger v. Motes,* 260 Fed. Appx. 634, 635-641 (5th Cir. La. 2007) (holding that reports by human resources managers were admissible as business records because documentation of sexual harassment allegations are ordinary business practices and regular parts of the managers' duties); *La Day v. Catalyst Tech., Inc.,* 302 F.3d 474, 481 n.7 (5th Cir. 2002) (notes of vice president who investigated plaintiff's allegations of sexual harassment by supervisor, which included notes of statements by other employees who similarly alleged sexual harassment by same supervisor, were admissible under Fed. R. Civ. P. 803(6)); *Gardner v. Chevron, U.S.A., Inc.,* 675 F.2d 658, 660 (5th Cir. 1982) (affirming the admission into evidence of an oil well foreman's reports that contained factual observations which he made and those which were reported to him by Chevron's employees and containing his opinions concerning the cause of the fire); *Small v. E.I. Dupont De Nemours & Co.,* 2006 U.S. Dist. LEXIS 67030, 1-32 (E.D. La. Sept. 19, 2006) (Wilkinson, J.) (holding that a report memorializing the employer's investigation of the plaintiff's conduct and recommending his termination "plainly falls under the business records exception of Fed.

R. Evid. 803(6)"); *see Int'l Marine, L.L.C., supra* (holding that valuation surveys were admissible as business records)*; Crimm v. Missouri P. R. Co.,* 750 F.2d 703, 709 (8th Cir. Mo. 1984) (holding that notes, interviews, and a report prepared by employer were business records where employer's written policy required documentation of interviews during investigations for sexual harassment, seven days elapsed from the beginning of the investigation to the completion of the report, the notes and report were prepared nine months before suit was filed, and the notes were maintained at the employer's office).

It is true that, to be admissible as business records, incident reports must result from a "regularly conducted business activity," and not from the mere anticipation of litigation. *Palmer v. Hoffman,* 318 U.S. 109 (1943) (holding that a railroad's accident reports were inadmissible where "those reports are not for the systematic conduct of the enterprise as a railroad business" but rather "are calculated for use essentially in the court"); *see Melendez-Diaz v. Massachusetts,* 129 S. Ct. 2527, 2538 (2009)(same); *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 238 (5th Cir. 1988) (deciding that reports are inadmissible where their "primary utility" is for litigation). However, where investigations and documentation of findings are an ordinary practice of the business and not calculated primarily for use in court, incident reports will fall within Rule 803(6). *Brauninger*, 260 Fed. Appx. at 638.

The Bly Report is "an analysis of the events leading up to the accident, eight key findings related to the causal chain of events and recommendations to enable the prevention of similar accidents." (TRIAL EXHIBIT 000001, Bly Report, p. 9.) It meets all of the foundational elements of the business records exception. First, the Report was made at or near the time of the matters recorded. The BP Investigation team began its work immediately in the aftermath of the accident, working independently from other BP spill response activities and organizations, and reported its findings, conclusions, and recommendations on September 8, 2010. (TRIAL EXHIBIT 00001, p. 9.) The interviews on which the report was based were completed within five months of the tragedy. (FONTENOT DEPOSITION, pp. 124-125.)

Second, the Bly Report was prepared by persons with knowledge of the matters recorded. Mark Bly, Group Head of Safety & Operations, led the investigation team. He was appointed to lead the team immediately after the incident, and was intimately involved in the process of the investigation.

Third, the investigation of incidents, and the provision and preparation of interviews, summaries and transcripts is a "regularly conducted business activity" of BP. On October 14, 2009, BP issued its Group Defined Practice-GDP4.4-0002-Incident Investigation, BP-HZN-BLY00205082 (the "Practice"), in which it outlined in detail the protocol for investigation of incidents. According to the Practice, BP "openly investigates HSSE ([Health, Safety, Security and Environment]) related incidents with the primary intention of reducing risk across operations." *Id.* at 3. "The reduction of risk can be achieved by adherence to this practice in identifying those systemic failures within the management systems and applying appropriate corrective actions." *Id.* at 3. The Practice "sets out BP's required approach for an incident investigation" and "applies to all

incidents that require reporting under the GDP 4.4-0001 Reporting HSSE and Operational Incidents." *Id.* at 4.  The Deepwater Horizon disaster was an "incident" that was investigated pursuant to the Practice.  The investigation was a "regularly conducted business activity" that was mandated by the Practice.  It was prepared not primarily for the purpose of litigation, but to identify possible causes and make recommendations for the prevention of future incidents. (TRIAL EXHIBIT 00001, Bly Report, Executive Summary, p. 9.)

Fourth, the preparation of the Bly Report was a regular practice of the business activity of investigation of incidents.  As the Practice makes clear, BP is required to prepare an incident investigation report including the incident investigation team's findings and conclusions.  (The Practice, pp. 9-10.)  The incident investigation report is required to include "proposed corrective actions for consideration by the BP entity." *Id.* at 9.

Fifth, the Bly Report was retained and kept in the course of BP's business activity.  The Practice requires that the incident investigation report "shall be retained for 10 years, or for any longer period of time that is required by applicable law or by the BP Global Document Management Policy. " *Id.* at 10.

The interviews conducted and notes transcribed for the preparation of the Bly Report also meet the requirements of Rule 803(6).   Members of the investigation team conducted interviews of those with knowledge concerning the incident.  There were at least two team members present during each interview.  (TRIAL EXHIBIT 00001, Bly Report, p. 2.)  Kevin Fontenot ("Fontenot"), BP's safety superintendent at its Texas City refinery, a root cause specialist, and a member of the team conducting the investigation of the Deepwater Horizon disaster, testified that it is BP's normal practice and policy to take notes and retain them in an investigative file. (FONTENOT DEPOSITION, p. 121.)   He participated and sat in on the interviews of witnesses involved in the Deepwater Horizon tragedy and took notes as a part of his job investigating the incident. (FONTENOT DEPOSITION, p. 122.)  The interviews were conducted, and the notes were taken, within five months of the tragedy.  (FONTENOT DEPOSITION, pp. 124-125.)  He transcribed his notes accurately and testified that the notes taken by the team during the investigation were trustworthy.  (FONTENOT DEPOSITION, pp. 127-129.)  His notes were uploaded to a SharePoint site maintained by BP.  (FONTENOT DEPOSITION, p. 123.)   This was in conformance with BP's general practices in all incidents.  Although the Deepwater Horizon investigation was larger and more complex than most, it adhered to the same process of interviewing, note taking, and note preservation that is employed in response to all incidents, regardless of size. (FONTENOT DEPOSITION, p. 124.)

Matthew John Lucas ("Lucas"), a BP senior safety advisor for incident investigation and the Master Root Cause Specialist for the Deepwater Horizon investigation, also conducted interviews during the investigation for BP, and testified that the members of the investigative team performed their jobs in a manner that was designed to secure the evidence in the best manner possible. (LUCAS DEPOSITION, pp. 40, 77, 303-305.)  In the interviews in which he participated, he attempted to take notes to the best of

his ability as accurately as possible.  He understands that it is crucial to gather evidence in a quality manner because "if the evidence is poor, the results will be poor."  (LUCAS DEPOSITION, pp. 303-304.)   The investigation, according to Lucas, was conducted in accordance with the Practice.  (LUCAS DEPOSITION, p. 306.)

Because the Bly Report and the notes of the investigatory interviews conducted during its preparation meet all the foundational criteria for admission under FED. RULE EVID. 803(6), Halliburton's hearsay challenge is without merit.  Those involved in the investigation for and preparation of the Bly Report were under a duty to make an accurate record as a part of a continuing business activity, thereby rendering the notes taken during the investigation, and the Report itself, both trustworthy and reliable.  The PSC therefore respectfully requests that this Court find that these documents fall within the hearsay exception of Fed. R. Evid. 803(6) [3]

### *The Application of Fed. R. Evid. 702 To Opinions Admissible Under Fed. R.      Evid. 803(6)*

Because the Bly Report qualifies as a business record under Rule 803(6), the opinions contained therein are not subject to objection on the basis of hearsay.  They are also not subject to the requirements of Rule 702 of the Federal Rules of Evidence governing the evidentiary standards of expert testimony.  *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979) (finding an expert appraisal of the value of a painting admissible under Rule 803(6) and refusing to "adopt an inflexible rule that every case requires the proponent of a business record containing expert opinion to affirmatively establish the qualifications of the person forming the opinion" because "Rule 803(6) expressly provides for the exclusion of a business record if the source of information indicates a lack of trustworthiness.").  Rule 803(6) allows the trial judge, as a matter of discretion, to exclude from evidence a record of the opinion of an expert whose qualifications are seriously challenged. *Id.  See Aumand v. Dartmouth Hitchcock Med. Ctr.,* 611 F. Supp. 2d 78, 85 (D.N.H. 2009) (citing *Licavoli* and stating that "most authorities take the view that a party offering a document admissible [under Rule 803(6)] ….need not also show, under Rule 702, the qualifications of the document's author to render any opinions in the report.").  To exclude the opinion, "the adverse party bears the burden to show that 'the source of information or the method or circumstances of preparation lack trustworthiness,' as provided by Rule 803(6) itself." *Aumand, supra* (quoting *Licavoli,* 604 F.2d at 622-23).

Although some courts have reached a different conclusion, *see Forward Commc'ns Corp. v. United States,* 608 F.2d 485, 510–11 (Ct. Cl. 1979) (holding that expert opinions which are not part of factual reports of contemporaneous events are inadmissible unless preparer testifies and establishes qualifications), the approach taken

---

[3] Notably, BP, the entity that conducted the investigation and prepared the Bly Report, has not asserted that the Report or the documents supporting it are not business records for purposes of Rule 803(6).  BP therefore apparently agrees that these documents qualify under the 803(6) exception to the hearsay rule.

in *Aumand* and *Licavoli* "is more consistent with the structure of the Federal Rule, which explicitly admits opinions, and accordingly should allow their admission if they are made and recorded in the regular course of a business unless the opponent raises a challenge to their trustworthiness."  2 MCCORMICK ON EVIDENCE, § 287, at 307 n.10 (6th ed.) (2009). *See Shelton v. Consumer Prods. Safety Comm'n,* 277 F.3d 998, 1009 (8th Cir. 2002) (ruling that because the district court did not abuse its discretion in concluding that a lab report satisfied the trustworthiness requirement of Rule 803(6), the court did not need to consider the opponent's Rule 702 challenge to the report); *Int'l Marine, L.L.C.*, 2011 U.S. Dist. LEXIS 25556 at *18 (finding that valuation surveys of two vessels were "business records" and therefore "documentary evidence that need not meet the evidentiary standards of expert testimony.").  Likewise, here, the Bly Report is a business record that meets the standard of trustworthiness under Rule 803(6); as such, it is not subject to the requirements of Rule 702.

While analyzed in the context of party admissions, Plaintiffs would also point to the Court's ORDER AND REASONS [Doc 3346] confirming the admissibility of the Boots & Coots Report  as instructive in this regard.

Finally, even assuming that the Bly Report must undergo the qualification and reliability analysis of Rule 702, this Court's role as gatekeeper is greatly diminished because this case will not be tried before a jury. *Whitehouse Hotel L.P. v. Comm'r,* 615 F.3d 321, 330 (5th Cir. 2010).  Simply put, where there is no jury "there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Id.* (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).  Accordingly, the PSC respectfully requests that the Bly Report, as well as investigation notes and interviews related thereto, be admitted into evidence in this case.[4]

---

[4] Halliburton has objected to the admissibility of other Public Records / Government Reports and/or BP business records on the basis of hearsay and Rule 702, including TRIAL EXHIBIT 000986 (Chief Counsel's Report, 2011: National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling); TRIAL EXHIBIT 006300 (National Commission on the Deepwater Horizon Oil Spill and Offshore Drilling Report (Excerpt, pp. 122-127)); and TRIAL EXHIBIT 0004572 (Letter and Report from Chevron to National Oil Spill Commission).  These documents qualify as either business records or public records pursuant to Rule 803(8) (addressed by separate letter), and are not subject to the evidentiary standards required of expert testimony. The remaining documents to which Halliburton objects on hearsay and Rule 702 grounds are also admissible for reasons similar to those outlined in this letter. (TRIAL EXHIBIT 001057 (Email from Robert Bodek to Brian Morel re: Macondo LOT #4); TRIAL EXHIBIT 002968 (CSI Analysis of Cementing Operation); TRIAL EXHIBIT 0004576 (Handwritten notes:  BP DH Testing Commission Testing); TRIAL EXHIBIT 0004842 (Bierute Power Point "If Someone Were To Ask Me What Do I Need....."); and TRIAL EXHIBIT 0020012  (N2 Job Summaries)).  Cameron's hearsay and Rule 702 objections to TRIAL EXHIBIT 06253 (6/20/2010 Redacted Minutes of a Meeting of the Board of Director of BP p.l.c. held on 20th June 2010 at 1 St. James's Square, London SWIY 4PD, marked as CONFIDENTIAL) are unfounded for the same reasons.

As always, we appreciate the Court's time and consideration in this matter.


Respectfully submitted,

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Plaintiffs' Liaison Counsel*


cc: Hon. Sally Shushan (*via* E-Mail)
    DEFENSE LIAISON COUNSEL  (*via* E-Mail)
    Mike Underhill, Esq. (*via* E-Mail)
    Hon. Luther Strange (*via* E-Mail)
    Ben Allums (*via* E-Mail)
    Mike O'Keefe (*via* E-Mail)