UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010<br><br>This Document applies to:<br>11-274 c/w 11-cv-275 | MDL No. 2179<br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## TRANSOCEAN'S SUR-REPLY IN OPPOSITION
## TO THE BP PARTIES' MOTION FOR JUDGMENT ON THE PLEADINGS

Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

**Of Counsel:**
John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT .................................................................................................................................. 1

I.    BP'S ANALYSIS OF *AUBRIS* IS INCORRECT AND ITS INTREPRETATIONS OF THE ADDITIONAL INSURED PROVISION ARE UNREASONABLE. ............................................................................................................ 1

    A.    BP Omits or Glosses over a Necessary Step in the *Aubris* Analysis. ..................... 1

    B.    Neither of BP's Two Attempts to Interpret the Last Clause of the Drilling Contract's Additional Insured Provision Is Reasonable. ........................................ 2

        1.    The "for liabilities assumed by CONTRACTOR" language is not related to creating an exception for workers' compensation coverage. ................................................................................................... 3

        2.    The "for liabilities assumed by CONTRACTOR" language can only be interpreted as a coverage ceiling, not as a minimum requirement. ............................................................................................... 5

    C.    BP's Attempts to Distinguish *Becker*, *Oryx* and *LeBlanc* Are Superficial. ............ 6

    D.    BP Creates a Dichotomy between the Existence or "Status" of Additional Insured Coverage and the "Scope" of Additional Insured Coverage that, if It Exists at All, Does Not Apply in this Case. ....................................................... 6

II.    BP HAS NOT REBUTTED TRANSOCEAN'S ARGUMENT THAT ITS MOTION MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT. ................................................................................................................... 7

III.    BP'S INTERPRETATION OF THE INSURANCE POLICIES IS FLAWED. ................ 9

    A.    Under Any of the Policy Provisions Potentially Relating to Additional Insured Coverage, the Terms of the Drilling Contract Control this Dispute. .......... 9

    B.    The Declarations Are Not Subject to the Conflicting Conditions Clause. ............. 9

    C.    "Where Required by Written Contract" in General Condition 3 Can Only Refer to the Drilling Contract's Additional Insured Provision. ............................ 10

CONCLUSION ............................................................................................................................ 11

CERTIFICATE OF SERVICE ..................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Anderson & Kerr Drilling Co. v. Bruhlmeyer*,
  136 S.W.2d 800 (Tex. 1940) ........................................................................................... 3

*ATOFINA Petrochems., Inc. v. Evanstan Ins. Co.*,
  104 S.W.3d 247 (Tex. App.—2003) ................................................................................ 2

*Aubris Res. L.P. v. St. Paul Fire & Marine Ins. Co.*
  566 F.3d 483 (5th Cir. 2009) .................................................................................. 2, 5, 6

*Balandran v. Safeco Ins. Co. of Am.*,
  972 S.W.2d 738 (Tex. 1998) ........................................................................................... 8

*Certain Underwriters at Lloyd's London v. Oryx Energy Co.*,
  142 F.3d 255 (5th Cir. 1998) ........................................................................................... 6

*CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*,
  734 S.W.2d 653 (Tex. 1987) ........................................................................................... 5

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
  940 S.W.2d. 587 (Tex. 1996) .......................................................................................... 8

*Criswell v. European Crossroads Shopping Ctr.*,
  792 S.W.2d 945 (Tex. 1990) ........................................................................................... 3

*Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*,
  256 S.W.3d 660, 51 Tex. Sup. Ct. J. 1018 .............................................................. 2, 5, 6

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*,
  327 S.W.3d 118 (Tex. 2010) ........................................................................................... 9

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*,
  No. 08-0890, 2011 WL 3796361 (Tex. Aug. 26, 2011) ................................................. 8

*LeBlanc v. Global Marine Drilling Co.*,
  193 F.3d 873 (5th Cir. 1999) ........................................................................................... 6

*Rep. Waste Servs. of Tex., Ltd. v. Empire Indem. Ins. Co.*,
  98 F. App'x 970 (5th Cir. 2004) ..................................................................................... 9

*St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*,
  78 F.3d 202 (5th Cir. 1996) ............................................................................................. 5

*Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting*,
  729 F. Supp. 2d 814 (N.D. Tex. 2010) ........................................................................... 8

**OTHER AUTHORITIES**

JACK P. GIBSON ET AL., THE ADDITIONAL INSURED BOOK (6th ed. 2011) ....................................... 4

**TRANSOCEAN'S SUR-REPLY IN OPPOSITION
TO THE BP PARTIES' MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE JUDGE BARBIER:

Transocean[1] respectfully submits this Sur-Reply in Opposition to the BP Parties' Motion for Judgment, in which BP continues its attempt to pervert the industry's contractual risk transfer principles and insure BP's pollution liabilities with Transocean's insurance. Interestingly, BP banishes its former CEO to a footnote, who testified that the custom is for BP contractually to "take th[e] risk" for environmental liabilities. Further, BP claims that Transocean should have no say in this matter, providing the Court parallel citations only to its insurers' briefs, referring to Transocean's response in the reply only when it suits BP's purpose, deeming it otherwise "fully duplicative." **Dkt. Entry No. 3881-1, at 1 n.1.** BP asks the Court to believe that Transocean's insurers will "escape from *any* liability for the spill," *id.* **at 2**, if BP's motion is denied. As the Court is aware, however, at a minimum Transocean faces claims brought by its employees and subcontractors' employees against BP and others, and its potential liability for pollution and other risks has not been determined. Transocean purchased insurance to cover that portion of these risks that are not otherwise covered by BP's contractual indemnity obligations.

## ARGUMENT

**I.    BP'S ANALYSIS OF *AUBRIS* IS INCORRECT AND ITS INTREPRETATIONS OF THE ADDITIONAL INSURED PROVISION ARE UNREASONABLE.**

   **A.    BP Omits or Glosses over a Necessary Step in the *Aubris* Analysis.**

In its reply, BP uses a four-step comparison to contend that this case is the same as the *Evanston* and *Aubris* decisions. **Dkt. Entry No. 3881-1, at 2–3.** BP states:

> In both *ATOFINA* and *Aubris*, as in this case, (a) there was a service agreement between an owner-operator and a contractor; (b) the service agreement included a limited indemnity by the contractor in favor of the owner-operator; (c) the service

---

[1] Intervenors Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (collectively "Transocean").

>agreement also contained a separate insurance provision obligating the contractor to secure "additional insured" liability coverage for the owner-operator; and (d) pertinent insurance policies did not clearly and unambiguously limit the scope of the owner-operator's "additional insured" coverage to the scope of the indemnity in the service agreement.

Contrary to *Aubris*, BP ignores the fact that the entire additional insured provision in the service agreement must be interpreted to determine if an additional insured obligation exists.  In *Aubris*, 566 F.3d 483, the Fifth Circuit determined that the additional insured policy endorsement ("if that written contract for insurance specifically requires such coverages"), *id.* at 486, necessitated an interpretation of the service agreement's additional insured provision, *id.* at 489–90 (opinion section III.C.).  Similarly, here, the policies' "but only to the extent of" language in Section I (or, alternatively, Endorsement 1's "where required by written contract") requires interpretation of the last clause of the drilling contract's additional insured provision.  Yet BP hopes to convince the Court simply to skip this step in the analysis and ignore that language.  The reason is obvious: In section III.C. of *Aubris*, United was able to propose a reasonable interpretation of that additional insured provision, *id.* at 489, whereas **BP is unable to do so in this case**.

>    **B.   Neither of BP's Two Attempts to Interpret the Last Clause of the Drilling Contract's Additional Insured Provision Is Reasonable.**

BP finally realizes that it cannot completely ignore, and must attempt a reasonable interpretation of, the last clause of the drilling contract's additional insured provision:

>Vastar [BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers, and agents shall be named as additional insureds in each of CONTRACTOR'S [Transocean's] policies, except Workers' Compensation for liabilities assumed by CONTRACTOR under the terms of this Contract.

However, both of BP's attempts at construing the foregoing are manifestly unreasonable.

### 1. The "for liabilities assumed by CONTRACTOR" language is not related to creating an exception for workers' compensation coverage.

BP's first attempt argues that the "for liabilities assumed by CONTRACTOR" language only applies to workers' compensation. **Dkt. Entry No. 3881-1, at 26.** Falling back on a "missing comma" argument, BP says "except Workers' Compensation" combines with "for liabilities assumed by CONTRACTOR" to create an exception for workers' compensation coverage. BP is correct that "except Workers' Compensation" means that Transocean need not name BP as an additional insured in its workers' compensation policy. But "for liabilities assumed by CONTRACTOR" is not necessary to create such an exception; BP "shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation" suffices. "[F]or liabilities assumed by CONTRACTOR"—because it must be given meaning—clearly serves a different purpose. It limits Transocean's additional insured obligations to liabilities assumed by Transocean in the contract's indemnity provisions.

Texas contract law also forecloses BP's "missing comma" argument. BP may not create ambiguity (i.e., by its attempt at reasonable interpretation) by relying on missing punctuation:

> The following rules with reference to punctuation have been announced: ***The words, not the punctuation, are the controlling guide in construing a contract***. If the meaning of the words is clear the court will interpret a contract according to their meaning and without regard to the punctuation marks ***or the want of them***. While punctuation may be resorted to in order to ***solve*** an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself ***create*** ambiguity.[2]

Ambiguity requires two reasonable interpretations. Transocean reasonably interprets the words with or without the comma. BP's interpretation can give meaning to the words *only* by focusing on a "missing comma"; as this ***creates*** rather than resolves an ambiguity, it is unreasonable.

---

[2] *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 136 S.W.2d 800, 803–04 (Tex. 1940) (emphases added) (noting that "we may insert the comma, in order to ascertain from the words used the intention of the parties"); *see also Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex. 1990) (". . . it is well settled. . . .").

Even beyond this, BP's restriction of "for liabilities assumed by CONTRACTOR" to workers' compensation makes no sense. If BP is correct—and Transocean is not required to name BP as an additional insured only in Transocean's workers' compensation policy for liabilities assumed by Transocean under the contract—then Transocean *would be* required to name BP as additional insured on Transocean's worker's compensation policy *for liabilities assumed by BP*. Thus, if one of BP's employees sustains a bodily injury and brings a workers' compensation claim against BP, BP could make a claim as an additional insured under Transocean's workers' compensation policy. Three reasons prevent this. First, the insurance industry does not recognize additional insured coverage in workers' compensation policies.[3] It is absurd to read the contract to obligate Transocean to buy a custom coverage program that does not exist. Second, BP is responsible for its employees' injuries and Transocean is responsible for its employees' injuries under the drilling contract's "knock-for-knock" risk transfer scheme for bodily injury, and this scheme is vitiated if workers' compensation claims by BP employees fall under *Transocean's* workers' compensation policy.[4] Third, workers' compensation coverage is akin to a first party coverage that covers an employer, like BP, for BP employees' workers' compensation claims. In contrast, "for liabilities assumed by CONTRACTOR" refers to third party coverage, i.e., coverage for claims brought by an employee—like a BP worker—against parties other than BP. Why would a third party concept be used to exclude additional insured status for first party coverage? BP's first interpretation makes no sense and should be rejected.

---

[3] JACK P. GIBSON ET AL., THE ADDITIONAL INSURED BOOK 321 (6th ed. 2011) ("The standard workers compensation and employers liability insurance policy used in most states is designed to cover employers for liability imposed on them by statute o[r] common law for injuries to their employees. Since the sole purpose of the policy is to cover injuries to the insured's employees, it is not generally appropriate to provide additional insured status as is commonly done with liability insurance."). Even where there are unique circumstances, such as borrowed servants or employee leasing, where one organization is presented with an exposure that might be best covered under the policy of another organization, this is not done by naming a party as an additional insured; a special "alternate employer" endorsement is added to the workers' compensation policy. *Id.*

[4] *See* Art. 21 of the Drilling Contract.

## 2. The "for liabilities assumed by CONTRACTOR" language can only be interpreted as a coverage ceiling, not as a minimum requirement.

BP's second attempt reads "for liabilities assumed by CONTRACTOR" to be some form of a "minimum requirement" for additional insured coverage. **Dkt. Entry No. 3881-1, at 28.** BP contends that this language is a floor, not a ceiling, because it does not start with the word "only," and that, if the relevant policies contain no limitations, coverage is unrestricted. And yet adding the word "only" to "for liabilities assumed by CONTRACTOR" does not change the clause's meaning. With or without "only," the sentence extends additional insured coverage to BP *for liabilities assumed by Transocean*. Under Texas law, the expression of one category of liabilities *excludes* all other liabilities—e.g., those assumed by BP.[5] BP's circular argument—that "*the policies themselves* provide more" coverage than the contract—ignores the effect of the policies' "but only to the extent of" language (or, alternatively, "where required by written contract"). Per *Aubris*, this means determining the policies' coverage by interpreting the drilling contract's clear reference to the indemnities. Finally, BP says *Evanston* supports its "minimum requirement" position, but the decision *there* to provide Atofina with $5.75 million in coverage over the minimum requirement of $500,000, 256 S.W.3d at 662–63, is not relevant to whether the policy provision and contract language in *this* case[6] extend additional insured coverage. Thus, BP's second interpretation is also unreasonable.

---

[5] *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) ("The maxim *expressio unius est exclusio alterius*, meaning that the naming of one thing excludes another, though not conclusive, is applicable to these facts."); *see also St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206 (5th Cir. 1996) ("Under that doctrine, the enumeration of one or more of the elements of a class 'implies [the] exclusion of all not expressed, even though all would have been implied had none been expressed.'").

[6] Because the facts did not implicate it, the *Evanston* contract's limitation of additional insured coverage was not before the Texas Supreme Court or the court of appeals. *See* **Dkt. Entry No. 3707-2, at 21–22.**

5

### C.     BP's Attempts to Distinguish *Becker*, *Oryx* and *LeBlanc* Are Superficial.

BP misconstrues *Becker*,[7] *Oryx* and *LeBlanc*.[8]  While the latter two decisions addressed the meaning of a contractual additional insured provision if the contractual indemnity provision it referred to was limited (*Oryx*) or unenforceable (*LeBlanc*) under an anti-indemnity statute, ***each panel still had to construe and give effect to the surviving additional insured provisions***.  Under the language of the additional insured provisions in each case, the court held that a party owed an obligation to secure additional insured coverage when the limited or unenforceable contractual indemnity provision allocated the risk to that party.  Thus, in *Oryx*, a Texas insurance case, the Fifth Circuit held that Mallard owed an additional insured obligation because the "to the extent of the indemnity" language in the drilling contract's additional insured provision referenced the contractual indemnity Mallard owed Oryx for bodily injury to Mallard's employee.[9]  Likewise, the *LeBlanc* court recognized that the contract's additional insured provision obligated Frank's Casing to secure additional insured coverage to the extent it owed contractual indemnity to Global Marine for the injuries to Frank's employee.[10]  These cases demonstrate the interrelationship between the additional insured and indemnity provisions here.

### D.     BP Creates a Dichotomy between the Existence or "Status" of Additional Insured Coverage and the "Scope" of Additional Insured Coverage that, if It Exists at All, Does Not Apply in this Case.

Misapplying *Evanston* and *Aubris*—by elevating case-specific interpretations of unique contractual language into a rigid rule of Texas insurance law—BP argues that status and scope of additional insured coverage are ***always*** separate issues.  BP claims that only scope is at issue

---

[7] BP concludes that *Becker* was a maritime contract case and inapplicable, and simply moves on.  However, BP does not take the next logical step to elevate its conclusion to the level of an argument: showing how the analysis in *Becker* is in any way different from or inconsistent with *Aubris*.  BP does not because it ***cannot***.  As noted in Transocean's response, **Dkt. Entry No. 3707-2, at 10–13, 29**, *Becker*'s approach is wholly consistent with *Aubris*.

[8] BP also cites the wrong additional insured policy provision from *Oryx*.  **Dkt. Entry No. 3881-1, at 9–10.**  The Fifth Circuit relied on two others.  *Compare* 142 F.3d at 258 *with* 957 F. Supp. 936 (definitions of "Assured").

[9] *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258 (5th Cir. 1998).

[10] *LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 875 (5th Cir. 1999).

6

here, "a question determined solely by reference to the policies." **Dkt. Entry No. 3881-1, at 11.** But here, status and scope of additional insured coverage are answered in one sentence. The policies' "but only to the extent" or "where required by written contract" language, as *Aubris* teaches, triggers the drilling contract's "for liabilities assumed by [Transocean]" language. The drilling contract's one-sentence additional insured provision—every word of it—determines whether BP is an additional insured or not.

## II. BP HAS NOT REBUTTED TRANSOCEAN'S ARGUMENT THAT ITS MOTION MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT.

BP insists that its motion should be considered on the pleadings,[11] but two issues require conversion: (1) Texas law stating that a contract's "surrounding circumstances" are necessary to determine whether there is (but never to create) an ambiguity and to reinforce (but never to vary the terms of, as in parol evidence) the reasonableness of a party's interpretation of that contract; and (2) Texas law stating that *contra proferentem* does not apply to "sophisticated insureds." Both principles apply here as a result of BP's claim to "the pro-coverage presumptions of Texas insurance law." **Dkt. Entry No. 3881-1, at 16.** These presumptions claimed *by BP*[12] require consideration of matters outside the pleadings and, under Rule 12(d), BP's motion must be considered under Rule 56.

"Surrounding circumstances" require a court presented with two interpretations of a contract to decide in common-sense fashion whether there is more than one reasonable interpretation—i.e., ambiguity—or not. They *do not*, as BP says, admit parol evidence to change or vary what the terms of a contract mean.[13] And they *do not* permit the creation of an ambiguity

---

[11] BP ignores Transocean's Rule 12(d) motion focused entirely on this point. *See* **Dkt. Entry No. 3706-1.**

[12] BP criticizes Transocean's *insurers* for not providing "material allegations" sufficient to warrant conversion of BP's motion. *See* **Dkt. Entry No. 3881-1, at 13–14.** Yet it is *BP's allegations* of various presumptions that require consideration of matters outside the pleadings and that made fact questions relevant to this motion.

[13] This is not a parol evidence problem, where a contract plainly says X and Transocean attempts to introduce evidence that what Transocean actually intended to say was Y, and the court should vary X to mean Y.

7

by converting a facially unreasonable interpretation into a reasonable one.[14]  Is there ambiguity, i.e., is BP's interpretation of the drilling contract also reasonable?  As seen, it asks the Court either to ignore half of the contract's additional insured provision or give that half an impossible construction, **I.B.**, *supra*; assign pollution risk and insurance differently than any other company-contractor relationship in the Gulf; and do so without respect to the parties' abilities to bear a loss or initial desire to insure it.  "Surrounding circumstances" will ***reinforce*** the flaw in BP's interpretation[15] and ***confirm*** the merits of Transocean's interpretation.[16]  A presumption is only at issue if BP can first establish a reasonable interpretation.  But surrounding circumstances—including matters outside the pleadings—are necessary to resolve that issue.

BP's claim to a "pro-coverage" presumption is also defeated by the "sophisticated insured" doctrine.  Under this well accepted doctrine, no presumption arises when Transocean—through whom BP claims coverage—drafted the policy language in part.[17]  Moreover, BP assumes a presumption applies to a drilling contract not drafted by the insurers, ignoring the charge that ***BP*** has the burden to prove coverage here.  Because of how the drilling contract's

---

[14] *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d. 587 (Tex. 1996) ("Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered."); *see also Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) ("The Balandrans' interpretation becomes even more reasonable when we consider the circumstances surrounding the promulgation of this policy form.").

[15] The Supreme Court of Texas recently resolved an insurance coverage dispute this point: "A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule[, which] does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text.  Those circumstances include . . . 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the transaction between the parties.'"  *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, No. 08-0890, 2011 WL 3796361, at *9–10 (Tex. Aug. 26, 2011); *see also id.* at *7–8 & n.2 (Jefferson, C.J., dissenting).  Here, the surrounding circumstances of the contract and policies corroborate, inform and contextualize Transocean's facially-reasonable interpretation, while they shatter BP's.

[16] *See Columbia Gas*, 940 S.W.2d at 591 (finding "[t]he only reasonable interpretation" to be the one that "properly considers the circumstances surrounding the formulation of the contract").

[17] The *Vought* case accurately predicts what a Texas court facing a "sophisticated insured" would do, as supported amply by authorities from other jurisdictions applying it, and BP certainly quotes no authority opposed to it.  *See Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting*, 729 F. Supp. 2d 814, 823–28 (N.D. Tex. 2010).

additional insured provision is phrased, this dispute is solely at the ***coverage*** level.[18] No "exclusions" apply. Thus, it is BP's burden to prove entitlement to ***more*** additional insured coverage than "for liabilities assumed by [Transocean]." Regardless, because BP insists that any interpretive disputes cut in BP's favor, the "sophisticated insured" exception is triggered, as is the issue of BP's and Transocean's sophistication and role in drafting. This is the focus of the ongoing discovery. It requires converting BP's motion.[19]

### III. BP'S INTERPRETATION OF THE INSURANCE POLICIES IS FLAWED.

#### A. Under Any of the Policy Provisions Potentially Relating to Additional Insured Coverage, the Terms of the Drilling Contract Control this Dispute.

Any provision potentially relating to additional insured coverage in Section I or II of the policies requires coverage to be established by the terms of the drilling contract.[20] Therefore, it is not strictly necessary to decide which one creates additional insured coverage, since all have language requiring interpretation of the drilling contract's additional insured provision.[21]

#### B. The Declarations Are Not Subject to the Conflicting Conditions Clause.

Assuming a difference even exists among the policy provisions, the priority of coverage provision at Declarations "ITEM 12"— Section II covers liabilities "other than those covered in

---

[18] "Initially, the insured has the burden of establishing coverage under the terms of the policy. If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *Rep. Waste Servs. of Tex., Ltd. v. Empire Indem. Ins. Co.*, 98 F. App'x 970, 971 (5th Cir. 2004) (per curiam) ("Under Texas law, additional insureds must bear the burden of proving additional insured status." (footnotes omitted)).

[19] BP points out that this Court has decided the issue because it permitted parties to move for judgment on the pleadings. Yet this only decided the "collateral pleadings" issue to foreclose any claim that, by attaching the drilling contract and policies, a 12(c) motion was procedurally one for summary judgment. By BP's logic, Transocean could argue for summary judgment because, in the same ruling, the Court permits motions for summary judgment.

[20] There are at least three provisions potentially relating to additional insured coverage: (1) under Section I, the P&I coverage section, Condition D) Subpart 1 provides additional insured coverage "but only to the extent as may be required under contract or agreement"; (2) in Section II, the general liability and claims made coverage section, Condition 3 of Endorsement 1 extends additional insured coverage "where required by written contract, bid or work order"; and (3) assuming that the definitions provide additional insured coverage without reference to any other terms in the policies, which is denied, Section II's definitions of "Insured" in Endorsement 4, Subpart 27 and "Insured Contract" in Endorsement 4, Subpart 32, define "Insured" to include "any . . . entity to whom the "Insured" is obligated by . . . written "Insured Contract" . . . to provide insurance."

[21] *See also* **III.B.1.** of Transocean's Response, **Dkt. Entry No. 3707-2, at 32**, *and* **III.B.2.** of Transocean's Response, **Dkt. Entry No. 3707-2, at 34**.

9

Section I above and/or difference in conditions to Section I above"—mandates that *Section I* provide the applicable coverage. Section II.A. does not apply when Section I provides coverage. BP replies with the "Conflicting Conditions" clause, Condition 2 of Endorsement 1:

> In the event of a conflict between the clauses contained in the General Conditions, Section I and II, and endorsements, the broadest interpretation will insure to the benefit of the Insured.

By its terms, the conflicts clause does not apply to Declarations. The General Conditions, where the conflicts clause is found, also specifically recognize a distinction between "Declarations" and the other policy provisions referenced above when Condition 1 references the "Declarations Page." Therefore, if it was intended for the conflicts clause to apply to the Declarations, the clause would specifically refer to the Declarations. Since it does not, the conflicts clause does not apply to the Declarations, and the Declarations' priority of coverage provision controls.

### C. "Where Required by Written Contract" in General Condition 3 Can Only Refer to the Drilling Contract's Additional Insured Provision.

BP tries to read "where required by written contract, bid or worker order" out of Condition 3 in Endorsement 1, focusing on "automatically included hereunder." **Dkt. Entry No. 3881-1, at 25.** The "automatically included hereunder" language simply means that no further steps are necessary to provide additional insured coverage to BP—e.g., specifically naming BP as an additional insured in an endorsement, etc.—if the contract's additional insured provision covers BP. It does *not* allow BP to ignore "for liabilities assumed by CONTRACTOR."

10

**CONCLUSION**

BP's Motion for Judgment on the Pleadings must be denied.

Respectfully submitted,

By: /s/ Steven L. Roberts  
Steven L. Roberts (Texas, No. 17019300)  
Rachel Giesber Clingman (Texas, No. 00784125)  
Kent C. Sullivan (Texas, No. 19487300)  
Teri L. Donaldson (Florida, No. 784310)  
Sutherland Asbill & Brennan LLP  
1001 Fannin Street, Suite 3700  
Houston, Texas 77002  
Telephone: (713) 470-6100  
Facsimile: (713) 654-1301  
Email: steven.roberts@sutherland.com,  
rachel.clingman@sutherland.com,  
kent.sullivan@sutherland.com,  
teri.donaldson@sutherland.com  

By: /s/ Kerry J. Miller  
Kerry J. Miller (Louisiana, No. 24562)  
Frilot, L.L.C.  
1100 Poydras Street, Suite 3700  
New Orleans, Louisiana 70163  
Telephone: (504) 599-8169  
Facsimile: (504) 599-8154  
Email: kmiller@frilot.com  
-and-

By: /s/ Edwin G. Preis, Jr.  
Edwin G. Preis, Jr. (Louisiana, No. 10703)  
Edward F. Kohnke, IV (Louisiana, No. 07824)  
Preis & Roy PLC  
102 Versailles Boulevard, Suite 400  
Lafayette, Louisiana 70501  
Telephone: (337) 237-6062  
Facsimile: (337) 237-9129  

-and-

601 Poydras Street, Suite 1700  
New Orleans, Louisiana 70130  
Telephone: (504) 581-6062  
Facsimile: (504) 522-9129  
Email: egp@preisroy.com, efk@preisroy.com

**Of Counsel:**

John M. Elsley (Texas, No. 0591950)  
Royston, Rayzor, Vickery & Williams LLP  
711 Louisiana Street, Suite 500  
Houston, Texas 77002  
Telephone: (713) 224-8380  
Facsimile: (713) 225-9945  
Email: john.elsley@roystonlaw.com

11

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of September, 2011, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12.


/s/  Kerry J. Miller
        KERRY J. MILLER