UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| 10-cv-3059 and 11-cv-0516 § | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATE OF LOUISIANA'S RESPONSE IN SUPPORT OF BP DEFENDANTS'
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), who respectfully submits this Response, consistent with the Court's Order [Rec. Doc. 4295] to BP Defendants' Motion for Certification of Interlocutory Appeal Under 28 U.S.C. §1292(b) [Rec. Doc. 4291]. Although the State of Louisiana disagrees with the BP Defendants' position that the Oil Pollution Act ("OPA") preempts punitive damages under maritime law, the State supports the BP Defendants' request that the Order on the Motions to Dismiss the B1 Master Complaint ("B1 Order and Reasons") be certified for appeal to determine the breadth of OPA's displacement of maritime and other law. This issue is appropriate for certification as it involves "a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Accordingly, the State of Louisiana joins in the BP Defendants' certification request.

As described more fully in the State's submission regarding the Court's B1 Order and Reasons, the ruling on the Motions to Dismiss the B1 claims has the potential to significantly

impact the State of Louisiana's rights in that it purports to dismiss all state law remedies customarily available to the State. *See* Brief by Louisiana State re: 3891 Order Inviting Briefing on Impact of B1 Opinion on Other Motions to Dismiss [Rec. Doc. 4001]. Specifically, while this Court has determined that OPA does not displace general maritime law claims against non-Responsible Parties and that claims for punitive damages are available for general maritime law claimants, the ruling, as worded, would improperly result in the dismissal of the State of Louisiana's claims under state law that are expressly preserved by OPA itself. The provisions of OPA, along with its legislative history, do not support such a result.

Louisiana believes Phase 1 of the Limitations trial should proceed at least for purposes of (1) beginning the process of resolving the wrongful death and personal injury claims, and (2) starting to develop punitive damages proof. The requested interlocutory appeal does impact Phase 2 and 3 issues to the extent they are driven by the *Robins Dry Dock* plaintiffs.

## I.   OPA's Preservation of the State's Civil and Statutory Claims

OPA applies to any discharge of oil into navigable waters or the adjoining shoreline.[1] OPA was intended to displace all existing federal oil spill liability and compensation laws in favor of a comprehensive solution.[2] Congress has both the power to create such a law and to trump maritime law in the process.[3] With the passage of OPA, Congress also demonstrated the intent to enact a comprehensive law on liability and damages arising from oil spills. *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 65-66 (1st Cir. 2000); *Tanquis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2010).

---

[1] "Discharge" is broadly defined to cover the facts of this case. *See* 33 U.S.C. §2701(7) (2011). The B1 Order and Reasons appears to have created an OPA exception for offshore discharges from "vessels," as defined by maritime law, operating in the Outer Continental Shelf ("OCS"). Nothing in OPA supports this exception. Indeed, OPA specifically discusses mobile offshore drilling units ("MODU") like the Deepwater Horizon ("DWH").
[2] *United States v. Locke*, 529 U.S. 89, 106 (2000).
[3] The enactment of a comprehensive federal rule in an area of national concern by Congress generally trumps federal common law and admiralty claims, unless expressly preserved. *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) (finding the Clean Water Act ("CWA"), despite its savings clause, displaces federal common law).

Contrary to Defendants' position in this case, the inclusion of savings clauses for state laws and general maritime law in no way diminishes OPA's comprehensive sweep. Congress sought to preserve the states' rights to provide their citizens and public trust a higher level of protection.[4] This year the United States Supreme Court found in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), that the *non obstante* provision, and not the savings clause, is critical to deciding whether federal legislation displaces other laws.[5] OPA § 2702 (Elements of liability) states that "[n]otwithstanding any other provision or rule of law, and subject to the provisions of this Act…," *i.e.*, notwithstanding any other federal or state laws, including maritime law.[6]

OPA § 2702(a) makes a Responsible Party liable when the oil enters navigable waters or the shore "for the removal costs and damages specified in subsection (b) of this section that result from such incident." In other words, OPA's preservation of state law claims and general maritime damages, such as punitive damages, supports the position that OPA is comprehensive and is therefore the controlling law applicable to oil discharges. As set forth in section 2718(a) of OPA:

> (a) Preservation of State authorities…. Nothing in this Act…shall
> (1)  affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to-

---

[4] *Askew v. Am. Waterways Operator*, 411 U.S. 325, 335, 340 (1973) (upholding, in a pre-OPA case, Florida's Oil Spill Prevention and Pollution Control Act; reasoning that "[h]istorically, damages to the shore or to shore facilities were not cognizable in admiralty." Further concluding that "[t]he damage to state interests already caused by oil spills, the increase in the number of oil spills, and the risk of ever-increasing damage by reason of the size of modern tankers underlie the concern of coastal States.") (footnote omitted).

[5] Case law rejects the idea of an interpretation of OPA that in effect nullifies its plain language. *TRW Inc. v. Andrews*, 534 U.S. 19 (2001) (stating that no part of a statute should be rendered superfluous, void or insignificant).

[6] *E.g.*, H.R. REP. NO. 101-653, at 3 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 779, 781 ("Liability under this Act is established notwithstanding any other provision or rule of the law. This means that the liability provisions of this Act would govern compensation for removal costs and damages notwithstanding any limitations under existing statutes, such as the Act of March 3, 1851 (46 U.S.C. 183), or under existing requirements that physical damages to the proprietary interests of the claimant be shown."); *Gabarick v. Laurin Mar.,* 623 F. Supp. 2d 741, 744 (E.D. La. 2009) (finding that OPA preempts general maritime law and highlighting *non obstante* language, "Notwithstanding").

>   (A)   the discharge of oil or other pollution by oil within such State; or
>   (B)   any removal activities in connection with such a discharge

Section (c) of this savings clause preserves additional state rights:

> Nothing in this Act…shall in any way affect, or be construed to affect, the authority of the U.S. or any State… thereof –
> (1)   to impose additional liability or additional requirements, or
> (2)   to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law additional liability or additional requirements related to the discharge, or substantial threat of a discharge of oil.

33 U.S.C. § 2718(c). This Court's B1 Order and Reasons concluded that:

> These [OPA savings] provisions evince Congress' intent to preserve the States' police power to govern pollution discharges within their territorial waters. The Court does not read [] them [as] giving States the power to govern out-of-state conduct affecting multiple states.

B1 Order and Reasons, at 15 [Rec. Doc. 3830]. Such a reading of the savings provisions (as preserving state police powers over pollution within its waters only if the source of the pollution is physically within a state's territorial waters) is an impermissibly narrow reading of OPA and is contrary to OPA's legislative history, as well as judicial interpretations of the states' police powers.[7]

Further, as stated by this Court, general maritime law applies to the current matter only if it is not displaced by a federal statute.[8] Accordingly, general maritime law, to the extent not covered by OPA, is also saved by OPA's provisions, and with it the availability of punitive damages for the sub-class of people who suffered a maritime injury. *Atlantic Sounding v.*

---

[7] *See* S.REP. NO. 101–94, at 6 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 727 ("To date, Federal legislation has affirmed the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal standards.... This legislation, as reported by the Committee, would permit such State laws to continue and would not preclude enactment of new State laws.").

[8] B1 Order and Reasons, at 11 [Rec. Doc. 3830].

4

*Townsend,* 129 S. Ct. 2561 (2009), held that general maritime punitive damages are available in claims for willful failure to pay maintenance and cure under the Jones Act.  Applying *Atlantic Sounding* in conjunction with the rationale contained in the *Mensing* decision leads to the conclusion that OPA, even with its comprehensive sweep, preserves the additional liabilities set forth in state and general maritime laws so long as not inconsistent with OPA.  Nothing in *Atlantic Sounding* or *Exxon Shipping v. Baker,* 554 U.S. 471 (2008), undermines Louisiana's position that OPA is comprehensive, even with the preservation of state law claims and maritime punitive damages against both Responsible Parties and other defendants.   The same reasoning this Court adopted in the B1 Order and Reasons for imposing punitive damages supports the application of additional liability for damages and penalties under state law, as preserved by OPA: "the behavior that would give rise to punitive damages under general maritime law--gross negligence--would also break OPA's limit of liability."  B1 Order and Reasons, at 27.

In *In re Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623 (1st Cir. 1994), the United States Court of Appeals for the First Circuit was presented with the question of whether federal maritime law preempts Rhode Island legislation allowing for expanded state law remedies for oil pollution damage.[9]  In holding that the Rhode Island Compensation Act was not preempted by the Constitution's admiralty clause, the court reasoned that:

> In balancing the state interest in regulation against a potential overriding federal need for harmony or uniformity, we start with Rhode Island's interest in implementing its Compensation Act. No one can doubt that the state's interest in avoiding pollution in its navigable waters and on its shores, and in redressing injury to its citizens from such pollution, is a weighty one. In *Huron Portland Cement,* [362 U.S. 440 (1960),] the Supreme Court described state air pollution laws as a classic example of police power, and continued: "In the exercise of that power, the states ... may act, in

---

[9] *Ballard Shipping*, 32 F.3d at 624.  The pollution involved in *Ballard* resulted from an oil tanker that ran aground spilling oil into Narragansett Bay.  That spill occurred in 1989, so OPA was not applicable.

> many areas of interstate commerce *and maritime activities,* concurrently with the federal government." (emphasis added). . . .
>
> The federal interest in limiting remedies is more subtle but also not without importance. The Compensation Act does not regulate the out-of-court behavior of ships or sailors-what is sometimes called "primary conduct"; rather the act is concerned with the liability imposed for conduct that is already unlawful. [10]

Here, as in *Ballard Shipping*, the laws that Louisiana seeks to enforce and that are preserved under OPA – Louisiana's Oil Spill Prevention and Response Act ("LOSPRA") and the Louisiana Environmental Quality Act ("LEQA") – do not regulate primary conduct, but rather impose liabilities and penalties for conduct that is unlawful. Thus, this case is distinguishable from *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), because that case was concerned with the application of another state's discharge standards to conduct that was lawful in the source state.[11] In this instance, the DWH discharge was not permitted.[12]

The State has both the authority and obligation to police oil spills that invade its waters from federal or other states' waters and to impose additional liabilities. The spill at issue in *Askew v. American Waterways Operator*, 411 U.S. 325 (1973), did originate from a spill in state territorial waters, but nothing in the Court's reasoning sought to link the state's police power to that one fact. Indeed, the Court specifically ruled against allowing "federal admiralty jurisdiction to swallow most of the police power of the States over oil spillage—an insidious form of pollution of vast concern to every coastal city or port and to all the estuaries on which the life of the ocean and the lives of the coastal people are greatly dependent." *Id.* at 328-329, 337 (ship-to-shore pollution control is "historically within the reach of the police powers of the

---

[10] *Id*. at 629 (citations omitted).

[11] *See also* Louisiana's Mem. in Opp'n to Mots. to Dismiss, at 9-11 [Rec. Doc. 3213].

[12] Nothing in LOSPRA or LEQA purports to provide Louisiana with the authority to permit activities outside of its territorial waters, which supports the position that neither statute regulates primary conduct. However, the Federal Clean Water Act also does not contemplate a permitting scheme for oil spills under any circumstance.

6

States"). The Court instead supported Congress' intent to leave the states "free to impose 'liability' in damages for losses suffered both by the State and by private interest," regardless of the source of the pollution. *Id.* at 334.

## II. Conclusion

For the reasons set forth above, the State of Louisiana joins the BP Defendants' request that the Court certify the issue of OPA's displacement of state and maritime law in order to resolve what is a substantial dispute regarding the interpretation of the effect of OPA.

Dated this 19th day of October, 2011.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL<br><br>James Trey Phillips<br>First Assistant Attorney General<br>Megan K. Terrell<br>Assistant Attorney General<br>Section Chief –Environmental<br>State of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804-9005<br>Telephone: (225) 326-6708<br><br>HENRY DART,<br>ATTORNEYS AT LAW P.C.<br><br>/s/ Henry T. Dart<br>Henry T. Dart<br>Grady J. Flattmann<br>510 N. Jefferson St.<br>Covington, LA 70433<br>Telephone: (985) 809-8093<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | KANNER & WHITELEY, LLC<br><br>/s/ Allan Kanner<br>Allan Kanner<br>Elizabeth B. Petersen<br>David A. Pote<br>Douglas R. Kraus<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana**<br><br>USRY, WEEKS, &<br>MATTHEWS, APLC<br><br>/s/ T. Allen Usry<br>T. Allen Usry<br>1615 Poydras St.<br>Suite 12<br>New Orleans, LA 70112<br>Telephone: (504) 592-4641<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |

SHOWS, CALI, BERTHELOT & WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

MARTEN LAW, PLLC

/s/ Bradley M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing State of Louisiana's Response in Support of Motion for Certification of Interlocutory Appeal has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of October, 2011.

Kanner & Whiteley, L.L.C.

 /s/ Allan Kanner
 Allan Kanner
 a.kanner@kanner-law.com