UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to: *All Cases in Pleading Bundle B1* | JUDGE BARBIER |
| (This Document also applies to No. 10-2771) | MAGISTRATE SHUSHAN |

OPPOSITION TO MOTION FOR CERTIFICATION
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

NOW INTO COURT come the B1 Plaintiffs and Claimants-in-Limitation, by and through Plaintiffs' Liaison Counsel and the Plaintiffs' Steering Committee, who submit the following Memorandum in Opposition to the Motion for Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b) filed herein by BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") (Doc. 4291).

**MAY IT PLEASE THE COURT:**

On August 26, 2011, this Court entered its Order and Reasons in which it ruled on various motions to dismiss the B1 Master Complaint filed by defendants in this case. (Doc. 3830 (the "B1 Order"))  In the B1 Order, the Court held, *inter alia,* that OPA displaces general maritime law claims against Responsible Parties, but only with regard OPA's presentment requirement.  The Court held further that claims for punitive

damages are available for general maritime law claimants against Responsible Parties (provided OPA's presentment procedure is satisfied).

BP seeks this Court's certification for interlocutory appeal of the foregoing holdings in the B1 Order pursuant to 28 U.S.C. § 1292(b). For the reasons addressed herein, BP's motion should be denied. Although the issue it raises is a controlling question of law, BP has failed to demonstrate that there is "substantial ground for difference of opinion about the question of law" and that "an immediate appeal will materially advance the ultimate termination of this litigation." Accordingly, Plaintiffs respectfully request that this Court deny BP's motion.

### I. The Drastic Remedy of Certifying An Interlocutory Appeal Demands Strict Interpretation.

As a general rule, only the final judgments of the federal district courts can be appealed. *See, e.g., United States v. Garner,* 749 F.2d 281, 284-85 (5th Cir. 1985); *S. United States Trade Ass'n v. Unidentified Parties,* 2011 U.S. Dist. LEXIS 76004, *4 (E.D. La. July 14, 2011) (Fallon, J.). This final-judgment rule, embodied in 28 U.S.C. § 1291, reflects "a firm congressional policy against . . . 'piecemeal' appeals." *Henry v. Lake Charles Am. Press, LLC,* 566 F.3d 164, 170-71 (5th Cir. 2009) (quoting *Abney v. United States,* 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977)); *S. United States Trade Ass'n, supra.*

One exception to this general rule lies in 28 U.S.C. § 1292(b). A district court may certify an interlocutory appeal pursuant to Section 1292(b) where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation. *Rico v. Flores,* 481 F.3d 234, 238 (5th Cir. 2007).

District courts may grant parties leave to appeal non-final orders only under exceptional circumstances, and the movant has the burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment. *Parcel Tankers, Inc. v. Formosa Plastics Corp.,* 764 F.2d 1153, 1155 (5th Cir. 1985) (citing *Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (7th Cir. 1972)).

An interlocutory appeal does not lie "simply to determine the correctness of a judgment." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.,* 702 F.2d 67, 68, 69 (5th Cir.1983); *Levy Gardens Ptnrs. 2007, LP v. Lewis Title Ins. Co.,* 2011 U.S. Dist. LEXIS 90951, *1 (E.D. La. Aug. 15, 2011) (Engelhardt, J.). Rather, to satisfy this prerequisite, there must be "substantial doubt" that the district court's order was correct. *Murray v. GM, LLC,* 2011 U.S. Dist. LEXIS 93845, 16-17 (S.D. Miss. Aug. 22, 2011).[1]

"The threshold for establishing the 'substantial ground for difference of opinion'... required for certification pursuant to § 1292(b) is a high one." *S. United States Trade Ass'n v. Unidentified Parties,* 2011 U.S. Dist. LEXIS 76004, 1-14 (E.D. La. July 14, 2011) (Fallon, J.) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 233 F. Supp. 2d 16, 19 (D.D.C. 2002)). Certification to appeal under Section 1292(b) "is granted sparingly, not automatically." *Ala. Labor Council v. Alabama,* 453 F.2d 922, 924 (5th Cir.1972). The decision regarding whether to certify an order for interlocutory appeal under Section 1292(b) rests within the discretion of the district court. *Swint v.*

---

[1] BP's assertion that "there can be little question that the BP Defendants have substantial grounds to disagree with the Court's holding on [the OPA displacement] issue" (BP Memorandum, p. 6) evidences its misapprehension of the nature of the threshold it must meet for certification. Whether BP has grounds to disagree with the holdings in the B1 Order is of no moment. To prevail on its motion for certification, BP must demonstrate, objectively, that there is "substantial doubt" that the district court's order was correct.

*Chambers County Comm'n,* 514 U.S. 35, 47, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995) ("Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals."). The burden of demonstrating the necessity of an interlocutory appeal lies with the moving party. *Levy Gardens Ptnrs. 2007, LP, supra*.

### II. There Can Be No Substantial Ground for Difference of Opinion As To The Court's OPA Displacement Holding When The United States Supreme Court Has Already Resolved The Issue.

BP has failed to meet the high threshold for establishment of a "substantial ground for difference of opinion" necessary for certification of an interlocutory appeal under Section 1292(b). This is not a situation where Circuits are split or the Supreme Court is silent. Rather, this is nothing more than interpreting two United States Supreme Court decisions that clearly and simply resolve the OPA displacement issue in this case, namely *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) and *Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009). In its B1 Order, this Court correctly interpreted *Baker* and *Townsend*, and BP cannot fabricate a "substantial difference of opinion" by looking to lower court rulings without conclusively showing that this Court's interpretation was flat out wrong - something its motion fails to do.

### The Supreme Court Has Provided Clear Guidance in *Baker* and *Townsend*.

As this Court correctly observed in the B1 Order, the Supreme Court's decision in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), controls the issue of OPA displacement in this case. (B1 Order, pp 23-27.) In *Baker*, the Court held that the Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA") did not displace a general maritime remedy for punitive damages. The Court analyzed the CWA, and found no evidence of displacement because (1) there was no clear indication that Congress intended to occupy

4

the entire field of pollution remedies (2) the CWA did not speak directly to the question addressed by common law, and (3) punitive damages would have no frustrating effect on the CWA remedial scheme.  *See Baker*, 554 U.S. at 489.

BP takes issue with this Court's reliance on *Baker* in the B1 Order based on the Supreme Court's statements in *Baker* concerning Exxon's "untenable claim" that the CWA "preempts punitive damages, but not compensatory damages, for economic loss." *Id.* at 489.  The Court in *Baker* stated that "nothing in the statutory text [of the CWA] points to fragmenting the recovery scheme this way, and we have rejected similar attempts to sever *remedies* from their *causes of action*."  *Id.*  (emphasis added).  BP claims that the B1 Order established a "fragmented recovery scheme" by holding that "'OPA does displace general maritime law claims against Responsible parties, but only with regard to procedure (i.e., OPA's presentment requirement).'"  (BP Memorandum, p. 8 (quoting the B1 Order, p. 38).)   Yet, OPA, as construed by the B1 Order, does not sever general maritime remedies from a cause of action.  Rather, by BP's own admission, it simply interposes a procedural prerequisite for raising a claim.

More importantly, the *Baker* Court held that Exxon's position that punitive damages were preempted was "untenable" because nothing in the CWA suggested that while common law compensatory damages would remain available under common law, punitive damages would not.  Hence, the recovery scheme Exxon posited had no basis in the statute.   Exxon's argument failed because it proposed the exclusion of a remedy that Congress did not specifically state was unavailable.   Here, BP makes an equally "untenable" argument that this Court should have ignored the *Baker* Court's clear pronouncement that displacement requires a showing that Congress has spoken directly

5

on the question addressed by the common law, so as to avoid a "fragmented" recovery scheme. Because BP cannot point to any provision in OPA that speaks directly to punitive damages as required by *Baker*, its argument must fail.

One year after *Baker,* the Supreme Court decided *Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009). In *Townsend,* the Court held that the Jones Act did not displace the availability of punitive damages for a seaman's maintenance and cure claim. The *Townsend* Court recognized that "punitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct," and that the remedy "extended to claims arising under federal maritime law." *Id.* at 2569. In reaching its decision, the *Townsend* Court clarified its decision in *Miles v. Apex Marine,* 498 U.S. 19 (1990), wherein the Supreme Court declined to supplement damage provisions of the Death on the High Seas Act ("DOHSA") 46 U.S.C. § 762. The *Townsend* Court explained that punitive damages were not available in *Miles* because a maritime wrongful death cause of action did not exist before Congress enacted DOHSA and the Jones Act, 46 U.S.C. § 30104. *Townsend, supra*. By contrast, a seaman's right to maintenance and cure had long been established before the Jones Act was enacted. As such, the claim for punitive damages arising out of a seaman's maintenance and cure claim remained viable. Simply put, the *Townsend* Court limited the application of *Miles* to those cases in which a cause of action and remedy were not established prior to congressional action. *Townsend* therefore clarified the displacement analysis, requiring consideration of whether the claim being made pre-existed legislative enactment.

BP attempts to distinguish *Townsend* on the basis that the Jones Act, unlike OPA, "bestows upon the injured seaman the right to 'elect' to bring a Jones Act claim, thereby

6

indicating a choice of actions for seamen – not an exclusive remedy." (BP Memorandum, p. 9 (citing *Townsend,* 129 S. Ct. at 2570).) But this distinction makes no difference. In *Townsend,* the significance of the "election" language in the Jones Act was its indication that Congress envisioned the continued availability of the pre-Jones Act cause of action based on a seaman's right to maintenance and cure. Likewise, in OPA, Congress preserved the application of general maritime law, thereby signaling its intent that those maritime claims not covered by OPA, but existing before OPA's enactment, would remain available. BP's position here suffers from the same defect as the argument rejected in *Townsend.* It seeks to give "greater pre-emptive effect" to OPA "than is required by its text…." *Id.* at 2575. Punitive damages have long been an accepted remedy under general maritime law, and nothing in OPA alters this understanding. Thus, here, as in *Townsend,* such damages remain available as a matter of general maritime law.

BP relies most heavily on *South Port Marine, LLC v. Gulf Oil Ltd. Part'ship*, 234 F.3d 58 (1st Cir. 2000), wherein the First Circuit, relying on *Miles v. Apex Marine,* 498 U.S. 19 (1990), decided that Congress intended the enactment of OPA to supplant the existing general admiralty and maritime law and concluded that punitive damages were not available under OPA. The court in *South Port* construed *Miles* to mean that where there is an overlap between statutory and decisional law, the courts must defer to congressional judgment. Finding such an overlap between OPA and general maritime law, the *South Port* court held that punitive damages were unavailable. *South Port,* 234 F.3d at 65-66.

*South Port* is no longer viable in light of *Baker* because the *South Port* court failed to address the question that *Baker* held crucial: whether OPA directly speaks to the

7

issue of the availability of the common law remedy. The *South Port* court also engaged in a faulty analysis of *Miles*, and did not consider whether a general maritime claim for punitive damages pre-existed OPA, as required by *Townsend*. Thus, the *South Port* decision does not suffice to establish a "substantial ground for difference of opinion" as required by Section 1292(b).

BP argues that neither *Baker* nor *Townsend* addressed displacement of maritime law under OPA, and that every court that has addressed the issue has decided that OPA displaces general maritime punitive damages. While true, this observation ignores that none of the cases BP cites address *Baker* or *Townsend*. The court in *Gabarick v. Laurin Maritime (Am.) Inc.*, 623 F. Supp. 2d 741, 747 (E.D. La. 2009) did not have the benefit of the *Townsend* decision at the time it was decided, and *Clausen v. M/V New Carissa,* 171 F. Supp. 2d 1127 (D. Or. 2001) was decided long before *Baker* and *Townsend.* BP's footnoted references to *Tanguis v. MV Westchester,* 153 F. Supp. 2d 859, 867 (E.D. La. 2001); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.,* 924 F. Supp. 1436, 1447 (E.D. Va. 1996), *aff'd,* 122 F.3d 1062 (4th Cir. 1997), *cert. denied,* 523 U.S. 1021 (1998); and *In re Settoon Towing LLC,* 2009 U.S. Dist. LEXIS 113534 (E.D. La. Dec. 4, 2009) are likewise of no moment. Of these cases, only *Settoon* was decided after *Baker* and *Townsend.* In *Settoon,* the Court found that OPA displaced general maritime law because the claims at issue were specifically provided for in OPA. *Settoon* is inapposite here, where the issue is whether OPA displaced the general maritime claim for punitive damages, which has long been available under general maritime law and is not addressed in OPA.

BP asserts that the Court's holding mistakenly applies a "clear statement" rule for displacement of punitive damages under OPA instead of "the traditional and controlling Supreme Court rule that there is a presumption in favor of displacement of common-law claims when a new federal statute is adopted to control a particular subject area." (BP Memorandum, p. 7 (citing *City of Milwaukee v. Illinois & Michigan,* 451 U.S. 304, 317 (1981)). Any reliance on *City of Milwaukee,* however, is misplaced. In the *Baker* opinion, the Supreme Court distinguished its earlier decisions in *City of Milwaukee* and *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1 (1981) because, in those cases, "plaintiffs' common law nuisance claims amounted to arguments for effluent-discharge standards *different from those provided by the CWA." Id.* at 489 (emphasis added). By contrast, according to the *Baker* Court, "private claims for economic injury do not threaten similar interference with federal regulatory goals with respect to 'water,' 'shorelines,' or 'natural resources.'" *Id*. Likewise, in the instant case, plaintiffs' claims for punitive damages under general maritime law are not adverse to any provision in OPA, as OPA does not address such claims. Hence, here, unlike *City of Milwaukee,* there is no threat to any federal regulatory goal. Moreover, neither *Baker* nor *Townsend* applied a presumption in favor of displacement as urged by BP.

BP also places undue reliance on the Supreme Court's recent decision in *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011) ("*AEP*"). There, the question was whether the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.*, displaced federal common law in relation to the regulation of carbon-dioxide emissions from power plants. The Court found displacement because the CAA specifically authorized the EPA to regulate emissions. The Court instructed that "[t]he test for whether congressional

9

legislation excludes the declaration of federal common law is simply whether the statute 'speak[s] directly to [the] question' at issue." *AEP* at 2537 (citations omitted).  As the Court explained, the CAA provides  "a means to seek limits on emissions of carbon dioxide from domestic power plants – *the same relief the plaintiffs seek by invoking federal common law*."  *Id.* at 2538 (emphasis added).  Applying that test here, OPA does not directly speak to the question of punitive damages and, thus, this Court properly held that BP's displacement argument failed.  Further, *AEP* does nothing to diminish the impact of *Baker*, which held that the CWA did not displace punitive damages under general maritime law.  In addition, BP's argument that the *AEP* Court's "reaffirmance" of its decision in *City of Milwaukee* came after the Court's decisions in *Baker* and *Townsend* is inconsequential at best, since the *Baker* Court specifically distinguished *City of Milwaukee* from the facts presented in *Baker,* which are strikingly similar to those presented here.  Accordingly, *AEP* does not support BP's assertion that there is substantial ground for disagreement with this Court's ruling on the displacement issue.

In summary, BP's arguments and authorities fail to place this Court's B1 Order in substantial doubt.  There is no doubt that the Supreme Court's decisions in *Baker* and *Townsend* have inexorably rendered the authorities that BP cites unreliable. Hence, because BP has failed to meet this critical burden under Section 1292(b), its motion for certification of interlocutory appeal should be denied.

### III.     An Immediate Appeal From The Court's Order Will Not Materially Advance The Ultimate Termination Of This Litigation.

Even if the Court of Appeal were to ultimately disagree with the District Court regarding the availability of punitive damages, it would not change the scope or the character of the February 2012 Limitation Trial.  Indeed, if the Court were to find at the

conclusion of the trial that BP is not liable for gross negligence, willful misconduct, or other fault giving rise to the availability of punitive damages, the entire issue would be moot. Nor would the nature, character or scope of the evidence submitted in the Limitation Action materially change, (as any evidence of gross fault as to BP would also likely be relevant to the issues of general negligence and fault allocation).[2] If the District Court ultimately concludes in the Limitation trial that BP is liable for punitive damages, then BP could presumably seek an appeal just as effectively at that time.

It is also possible that, in rendering the Court's Judgment, upon further consideration, the District Court could come to a different conclusion as to the issues raised in the B1 Order, which might moot BP's appeal.[3]

In any event, Plaintiffs fail to see how an interlocutory appeal would bring a quicker resolution to this matter, as the basic fault, fault allocation and limitation issues would need to be decided on virtually the same record, irrespective of how the interlocutory appeal might be decided.

---

[2] Moreover, the United States would still be offering evidence of gross fault and/or willful misconduct, in furtherance of its Clean Water Act and/or other penalty claims.

[3] Indeed, the Plaintiffs might disagree with the Court, in part, as to some of the issues addressed within the B1 Order, but believe that interlocutory review is unnecessary, and hence wasteful of judicial resources and contrary to policy, because the trial remains the same, and would – or at least should – go forward on the same schedule, with the same structure.

**CONCLUSION**

For the above and foregoing reasons, the BP Defendants' Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b) should be denied.

Dated:  October 19, 2011.

Respectfully submitted,

| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ | DOMENGEAUX WRIGHT ROY |
| & COTLAR LLP | & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel MDL 2179* | *Plaintiffs' Liaison Counsel MDL 2179* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, | WEITZ & LUXENBERG, PC |
| MITCHELL, ECHSNER & PROCTOR, PA | 700 Broadway |
| 316 South Baylen St., Suite 600 | New York, NY  10003 |
| Pensacola, FL 32502-5996 | Office:  (212) 558-5802 |
| Office:  (850) 435-7045 | Telefax: (212) 344-5461 |
| Telefax: (850) 436-6187 | E-Mail:  rgreenwald@weitzlux.com |
| E-Mail: bbarr@levinlaw.com | |
| | |
| Jeffrey A. Breit | Rhon E. Jones |
| BREIT DRESCHER IMPREVENTO & | BEASLEY, ALLEN, CROW, METHVIN, |
| WALKER, P. C. | PORTIS & MILES, P. C. |
| 999 Waterside Drive, Suite 1000 | 218 Commerce St., P.O. Box 4160 |
| Norfolk, VA 23510 | Montgomery, AL 36104 |
| Office:  (757) 670-3888 | Office:  (334) 269-2343 |
| Telefax: (757) 670-3895 | Telefax: (334) 954-7555 |
| E-Mail: jbreit@bdbmail.com | E-Mail:  rhon.jones@beasleyallen.com |

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

**CERTIFICATE OF SERVICE**

    WE HEREBY CERTIFY that the above and foregoing Opposition has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 19th day of October, 2011.

                                                       /s/ Stephen J Herman and James Parkerson Roy