## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | **SECTION  J** |
| | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| Cases in Pleading Bundles A, B1 | | **MAGISTRATE SHUSHAN** |
| and C as Enumerated in | | |
| Attachment 1 | | |
| | * | |

\* \* \* \* \* \*   \* : \* \* \* \* \*

### AMENDED CROSS-CLAIMS OF THIRD-PARTY DEFENDANT
### MOEX OFFSHORE 2007 LLC

MOEX Offshore 2007 LLC ("Offshore"), by and through its undersigned counsel, and having filed claims against the Petitioners, hereby Amends its Cross-Claims [Document 2008] as follows:

### THE PARTIES

#### Third-Party Defendant and Plaintiff-in-Cross-Claim

1.      Third-Party Defendant MOEX Offshore 2007 LLC ("Offshore") is a Delaware limited liability company with its principal place of business in Houston, Texas.

#### The Transocean Third-Party Plaintiffs and Defendants-in-Cross-Claim

2.      Third-Party Plaintiff and Defendant-in-Cross-Claim Triton Asset Leasing GmbH ("Triton") is a limited liability company organized and existing under the laws of the Swiss Confederation with a principal office in Zug, Switzerland.

3.     Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal office in Houston, Texas.

4.     Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Offshore Deepwater Drilling Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

5.     Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Deepwater Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas. (Triton, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. are collectively referred to herein as "Transocean" and the "Transocean Defendants-in-Cross-Claim.")

**Third-Party Defendants and Defendants-in-Cross-Claim Halliburton**

6.     Third-Party Defendant and Defendant-in-Cross-Claim Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.

7.     Third-Party Defendant and Defendant-in-Cross-Claim Sperry Drilling Services (f/k/a Sperry Sun Drilling Services) ("Sperry") is a division of Halliburton Energy Services, Inc.

**Third-Party Defendant and Defendant-in-Cross-Claim M-I**

8.     Third-Party Defendant and Defendant-in-Cross-Claim M-I, LLC ("M-I"), also known as M-I Swaco, is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

**Third-Party Defendant and Defendant-in-Cross-Claim Cameron**

9.      Third-Party Defendant and Defendant-in-Cross-Claim Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron") is a Delaware corporation with its principal place of business in Houston, Texas.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      The Court has admiralty and maritime jurisdiction, federal jurisdiction, and supplemental jurisdiction over these Cross-Claims pursuant to Article III, Section 2 of the United States Constitution, 28 U.S.C. §§ 1333, 1367, 43 U.S.C. § 1349 and 33 U.S.C. § 2717.  These are claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules for Admiralty and Maritime Claims.

## PERSONAL JURISDICTION

11.      Pursuant to Fed. R. Civ. P. 10(c), Offshore respectfully incorporates by reference the allegations of Petitioners' Rule 14(c) Third-Party Complaint and Plaintiffs' First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No.1] Section III(B1) ["B1 Bundle"] with respect to the Court's personal jurisdiction over the Defendants-in-Cross-Claim herein.

## STATEMENT OF FACTS

12.      On April 20, 2010, a blowout caused an explosion and fire on the *Deepwater Horizon*, a semi-submersible mobile offshore drilling unit that was conducting deepwater offshore drilling and related oil exploration activities in the Gulf of Mexico (the "Blowout"). The Blowout sank the *Deepwater Horizon* and caused oil to spill into the Gulf of Mexico (the "Spill").

13.     At the time of the Blowout and ensuing Spill, BP Exploration & Production Inc. ("BPXP")  was performing exploration and drilling operations at the "Macondo Well" located in the Mississippi Canyon Block 252 in the Gulf of Mexico, as the designated Operator under Federal OCS oil & gas lease no. OCS-G 32306 dated June 1, 2008 granted to it by the United States of America (the "Lease").

## ALLEGATIONS AS TO TRANSOCEAN

14.     Offshore repeats and realleges the allegations above.

15.     At all times material hereto the *Deepwater Horizon* was owned, navigated, manned, possessed, managed, and controlled by Transocean.

16.     Transocean provided the *Deepwater Horizon* vessel and personnel to operate it at the Macondo site and also was responsible for maintaining well control equipment, such as the blowout preventer ("BOP") and its control systems.

17.     As the owner and manager of the *Deepwater Horizon*, Transocean owed duties to Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

18.     The duties owed by Transocean to Offshore arose out of Transocean's status and duties as the Owner, Managing Owner, Owner *Pro Hac Vice*, and/or Operator or Co-Owner of the *Deepwater Horizon* used at the Macondo Well site, its undertaking of responsibility for the complex, technical process of deepwater offshore drilling, its contractual obligations under its Drilling Contract with BPXP, its knowledge of the risks of deepwater offshore drilling, federal and state regulations, and industry custom and practice.

19.     Transocean breached its duties to Offshore.

20.     Transocean's conduct in breaching its duties to Offshore constituted gross negligence in reckless disregard of the rights and safety of others and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

21.     Transocean's gross negligence and reckless disregard of the rights and safety of others was committed in connection with operations that, if performed incorrectly, were known by Transocean as foreseeable causes of blowouts and oil spills.

22.     Transocean's breaches of its duties included, but were not limited to, the following:

a)     Failing to properly manage, control, maintain and operate the Deepwater Horizon and its safety equipment;

b)     Disabling vital alarm systems on the Deepwater Horizon;

c)     Violating the International Safety and Management Code ("ISM"), as adopted by the International Convention for the Safety of Life at Sea ("SOLAS");

d)     Failing to take reasonable steps in response to its knowledge of significant problems related to the Deepwater Horizon's equipment and maintenance;

e)     Misinterpreting and contributing to the misinterpretation of the negative pressure test results;

f)     Failing to control the Macondo Well and protect the personnel on the rig when it knew hydrocarbons were coming up the riser and failing to take proper precautions to avoid oil spills and damage to life, limb, property and the environment; and

g)     Failing to provide adequate training for its employees on the rig in well control procedures and in responding to 'kicks' and emergencies.

## COUNT I

### GROSS NEGLIGENCE AGAINST TRANSOCEAN - STATE LAW

23.     Offshore repeats and realleges the allegations above.

24.     In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim.

25.     Transocean owed duties to Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care and to refrain from gross negligence or wanton or willful misconduct.

26.     Transocean breached its duties to Offshore by committing acts of gross negligence and intentional misconduct in reckless disregard for the rights and safety of others as alleged more specifically above and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

27.     Transocean's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT II

### NEGLIGENCE AGAINST TRANSOCEAN - STATE LAW

28.     Offshore repeats and realleges the allegations above.

29.     In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim.

30.     Transocean owed duties to Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

31.     Transocean breached its duties to Offshore by committing acts of negligence, as alleged more specifically above, and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

32.     Transocean's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT III

### GROSS NEGLIGENCE AND WILLFUL MISCONDUCT AGAINST TRANSOCEAN - MARITIME LAW

33.     Offshore repeats and realleges the allegations above.

34.     Transocean owed duties to Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

35.     Transocean's duties included an obligation to refrain from acts of gross negligence or wanton and willful misconduct.

7

36.     Transocean breached its duties to Offshore by committing acts of gross negligence and wanton and willful misconduct in reckless disregard of the rights and safety of others and all such blameworthy conduct was within the privity or knowledge of Transocean's managers, as alleged more specifically above and in BPXP's Cross-Claim and Third Party Complaint Against Transocean.

37.     Transocean's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of Transocean's gross negligence, including, *inter alia*, the loss of the reservoir, the loss of their investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT IV

## NEGLIGENCE AGAINST TRANSOCEAN - MARITIME LAW

38.     Offshore repeats and realleges the allegations above.

39.     Transocean owed duties to Offshore to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

40.     Transocean breached its duties to Offshore by committing acts of negligence and all such blameworthy conduct was within the privity or knowledge of Transocean's managers, as alleged more specifically above and in BPXP's Cross-Claim and Third Party Complaint Against Transocean.

41.     Transocean's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs,

economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT V

## INDEMNITY IN TORT AGAINST TRANSOCEAN - MARITIME LAW

42.    Offshore repeats and realleges the allegations above.

43.    The Blowout, the Spill, and the resulting damages were caused by the gross negligence, willful misconduct and/or negligence of Transocean and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

44.    Offshore is without fault with respect to the Blowout and the Spill.  If Offshore is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

45.    Any and all damages assessed against Offshore, whether vicariously or by operation of law, including without limitation any liability imposed in excess of the cap on liability provided for in the OPA, 33 U.S.C. § 2704, should be repaid by Transocean as a wrongdoer based on a theory of indemnity.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

**COUNT VI**

**CONTRIBUTION AGAINST TRANSOCEAN - MARITIME LAW**

46.     Offshore repeats and realleges the allegations above.

47.     If Offshore is found to have contributed to any damages suffered by Plaintiffs or the Third-Party Plaintiffs, it is entitled to contribution from Transocean who bears a significantly greater proportional degree of fault for any such damages.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

**COUNT VII**

**CONTRIBUTION AGAINST TRANSOCEAN - OIL POLLUTION ACT**

48.     Offshore repeats and realleges the allegations above.

49.     The claims asserted in these proceedings require the Court to assess and allocate proportional responsibility (if any) among all defendants for the damages claimed by the plaintiffs.

50.     Offshore has the right to appear before and be heard by the Court with respect to whether it bears any proportional responsibility for the damages claimed by the plaintiffs (which Offshore denies) and, if so, in what amount.

51.     Offshore also has the right and obligation to appear before and be heard by the Court to establish the proportional responsibility of Transocean in relation to the proportional responsibility (if any) of Offshore.

52.     In the event Offshore is found liable in any respect under the OPA, it is entitled under § 2709 of the OPA to contribution from Transocean in the amount of Transocean's proportional degree of responsibility for any damages assessed against them.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT VIII

## INDEMNITY IN TORT AGAINST TRANSOCEAN - STATE LAW

53.     Offshore repeats and realleges the allegations above.

54.     In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim.

55.     The Blowout, the Spill and the resulting damages were caused by the gross negligence, willful misconduct and/or negligence of Transocean.

56.     Offshore is without fault with respect to the Blowout and the Spill. If Offshore is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

57.     Any and all damages assessed against Offshore, whether vicariously or by operation of law, including without limitation any liability imposed in excess of the cap on liability provided for in the OPA, 33 U.S.C. § 2704, should be repaid by Transocean as a wrongdoer based on a theory of indemnity.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## ALLEGATIONS AS TO HALLIBURTON AND SPERRY

58.     Offshore repeats and realleges the allegations above.

59.     Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations, which are critical to preventing well failures and

blowouts. Halliburton also provided technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo Well at and before the time of the Blowout.

60.     Sperry was responsible for mud logging personnel and equipment on the *Deepwater Horizon*. Sperry's mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations.

61.     Halliburton and Sperry owed Offshore the duty of reasonable and ordinary care in the performance of these responsibilities, including the duty to exercise reasonable care in conducting cementing, testing, analysis, and monitoring of the Macondo Well.

62.     Halliburton and Sperry's duty of care arose from their assuming responsibility for the complex, technical process of deepwater offshore drilling and related activities, their contractual obligations to BPXP, their knowledge of the risks of deepwater offshore drilling, federal and state regulations, and industry custom and practice.

63.     Halliburton's breaches of its duties included, but were not limited to, the following:

a)     Failing to properly test and advise BPXP regarding the cement slurry used in the Macondo Well;

b)     Using an unstable and otherwise unsuitable cement that it prepared in connection with the critical bottom of well cement job; and

c)     Failing to properly monitor the pits and other matters and/or failing to advise BPXP and/or Transocean that it was unable to properly monitor the pits and other matters and issue a stop work.

## COUNT IX

## NEGLIGENCE AGAINST HALLIBURTON AND SPERRY - STATE LAW

64.     Offshore repeats and realleges the allegations above.

65.     In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim.

66.     Halliburton and Sperry owed Offshore a duty of reasonable and ordinary care in the performance of their responsibilities, including the duty to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Macondo Well.

67.     Halliburton and Sperry breached their duties to Offshore by committing acts of negligence, as alleged more specifically above and in BPXP's Third-Party Complaint Against Halliburton.

68.     Halliburton and Sperry's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill. In addition, Offshore has suffered economic losses as a result of Halliburton and Sperry's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT X

## NEGLIGENCE AGAINST HALLIBURTON AND SPERRY - MARITIME LAW

69.     Offshore repeats and realleges the allegations above.

70.     Halliburton and Sperry owed Offshore a duty of reasonable and ordinary care in the performance of their responsibilities, including the duty to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the Macondo Well.

71.     Halliburton and Sperry breached their duties to Offshore by committing acts of negligence, as alleged more specifically above. Halliburton and Sperry's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of Halliburton and Sperry's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT XI

## CONTRIBUTION AGAINST TRANSOCEAN - STATE LAW

72.     Offshore repeats and realleges the allegations above.

73.     The claims asserted in these proceedings require the Court to assess and allocate proportional responsibility among all defendants (if any) for the damages claimed by the plaintiffs.

74.     Offshore has the right to appear before and be heard by the Court with respect to whether it bears any proportional responsibility for the damages claimed by the plaintiffs (which Offshore denies) and, if so, in what amount.

75.     Offshore also has the right and obligation to appear before and be heard by the Court to establish the proportional responsibility of Transocean in relation to the proportional responsibility (if any) of Offshore.

76.    33 U.S.C. § 2709 provides in relevant part that a person may bring a civil action for contribution against any other person who is liable or potentially liable under either the OPA "or another law."

77.    In the event Offshore is found liable in any respect under the OPA, it is entitled under state law pursuant to § 2709 of the OPA to contribution from Transocean in the amount of Transocean's proportional degree of responsibility for any damages assessed against them.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## ALLEGATIONS AS TO M-I

78.    Offshore repeats and realleges the allegations above.

79.    M-I provided the *Deepwater Horizon* with the mud products essential to safe deepwater offshore drilling, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well.  M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the Blowout and the provision of "spacer" solution.

80.    M-I owed Offshore a duty of reasonable and ordinary care in the performance of the foregoing duties, including but not limited to, providing, controlling, and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

81.    M-I's duty of care arose from its assuming responsibility for the complex, technical process of deepwater offshore drilling mud products, mud placement and related activities, its contractual obligations to BPXP, its knowledge of the essential role that mud products and displacement play in protecting against the risks of deepwater offshore drilling, federal and state regulations, and industry custom and practice.

82.    M-I breached its duties to Offshore by, *inter alia*:

a)    failing to assess or communicate that fluid and pressure levels indicated hydrocarbons were coming up the well.

## COUNT XII

## <u>NEGLIGENCE AGAINST M-I - STATE LAW</u>

83.    Offshore repeats and realleges the allegations above.

84.    In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim. M-I owed Offshore a duty of reasonable and ordinary care in the performance of its responsibilities, including but not limited to, providing, controlling, and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

85.    M-I breached its duties to Offshore by committing acts of negligence, as alleged more specifically aboveand in BPXP's Counter Complaint Against M-I L.L.C.

86.    M-I's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of M-I's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## COUNT XIII

## <u>NEGLIGENCE AGAINST M-I - MARITIME LAW</u>

87.    Offshore repeats and realleges the allegations above.

88.     M-I owed Offshore a duty of reasonable and ordinary care in the performance of its responsibilities, including but not limited to, providing, controlling and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

89.     M-I breached its duties to Offshore by committing acts of negligence, as alleged more specifically above.

90.     M-I's conduct was the proximate cause of foreseeable damage suffered by Offshore, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Offshore has suffered economic losses as a result of M-I's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## ALLEGATIONS AS TO CAMERON

91.     Offshore repeats and realleges the allegations above.

92.     At all times relevant hereto, Cameron was in the business of designing, manufacturing, marketing, selling, and/or distributing the BOP used in connection with the drilling operations onboard the *Deepwater Horizon*.

93.     Upon information and belief, if operating as intended on the night of the disaster, the BOP could have been manually or automatically activated before or immediately after the Blowout, cutting off the flow of oil at the wellhead, and limiting the Spill to a minute fraction of its ultimate severity and thereby sparing the Non-Operating Investors millions of dollars in losses and damage.

94.     Cameron manufactured the BOP in use at the Macondo Well on April 20, 2010. Upon information and belief, Cameron's BOP failed to operate properly or at all, at the time of or following the Blowout, and this failure caused and/or contributed to the Blowout, explosions, fire, and Spill.

95.     Upon information and belief, Cameron's BOP was in a defective condition and unreasonably dangerous to Offshore and others when it left Cameron's control.

96.     Upon information and belief, at all times, Cameron's BOP was used in the manner intended, or in a manner reasonably foreseeable and/or actually disclosed to Cameron prior to April 20, 2010.

97.     Upon information and belief, at the time the BOP left Cameron's control, it was in a defective condition unreasonably dangerous to Offshore and others in that it was designed and manufactured with over 260 known defects and failure modes, including but not limited to:

a)     inadequate, faulty, nonfunctioning, and defective battery systems;

b)     inadequate, faulty, nonfunctioning, and defective dead man switches and related wiring;

c)     the absence of acoustic triggers;

d)     inadequate, faulty, nonfunctioning, and defective EDS;

e)     improperly sealed, leaky hydraulic systems;

f)     improperly designed, manufactured, and installed annular seals;

g)     insufficiently robust blind shear rams and insufficient emergency methods for closing the BOP;

h)     excessive reliance on an operational control pod as an emergency method of operating the BOP;

i)      excessive vulnerability of the blind shear rams to the failure of a single shuttle valve;

j)      insufficient warnings, instructions, and guidelines on permissible and foreseeable uses and modifications to the BOP and its component parts;

k)      insufficient testing and design verification of the BOP and its component parts to ensure the shearing capability of the ram and other functioning of the BOP during reasonably foreseeable uses; and

l)      in such other particulars as the evidence may show.

98.    Upon information and belief, at the time the BOP appurtenant to the *Deepwater Horizon* left Cameron's control, and at such times as Cameron modified the BOP, Cameron knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the aforementioned unreasonably dangerous conditions.

## COUNT XIV

## PRODUCTS LIABILITY AGAINST CAMERON - MARITIME LAW

99.    Offshore repeats and realleges the allegations above.

100.   At all relevant times, the BOP appurtenant to the *Deepwater Horizon* was used in an intended and/or reasonably foreseeable manner.

101.   Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* BOP.

102.   Cameron had actual and/or constructive knowledge of the facts and circumstances relative to the BOP which caused or contributed to this incident, which in turn caused Offshore to incur damages, and its actions and/or inactions were negligent.  In the alternative, Cameron is strictly liable for such damages.

103.    If Transocean is not responsible for the failure of the BOP then, pursuant to Fed. R. Civ. P. 8(d)(3), as a result of the defective design and/or manufacture of the BOP, Offshore has suffered damage to or diminution of the value of its other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Cameron.

**COUNT XV**

**<u>PRODUCTS LIABILITY AGAINST CAMERON - STATE LAW</u>**

104.    Offshore repeats and realleges the allegations above.

105.    In the event the Court rules that claims asserted in this action under state law are not preempted by federal law, Offshore hereby alleges the following state law claim.

106.    At all relevant times, the BOP appurtenant to the *Deepwater Horizon* was used in an intended and/or reasonably foreseeable manner.

107.    Offshore was a foreseeable victim of the manifestation of the defects in the *Deepwater Horizon's* BOP.

108.    Cameron had actual and/or constructive knowledge of the facts and circumstances relative to the BOP which caused or contributed to this incident, which in turn caused Offshore to incur damages, and its actions and/or inactions were negligent.

109.    If Transocean is not responsible for the failure of the BOP then, pursuant to Fed. R. Civ. P. 8(d)(3), as a result of the defective design and/or manufacture of the BOP, Offshore has suffered damage to or diminution of the value of its other property, loss of income, loss of business, inconvenience and/or loss of valuable resources, for which it is entitled to actual and compensatory damages.

WHEREFORE, Offshore respectfully prays that judgment enter in its favor and that it be awarded its damages against Cameron.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Defendant and Plaintiff-in-Cross-Claim MOEX Offshore 2007 LLC respectfully prays that, after due proceedings, the Court enter judgment in its favor as set forth herein, grant the requests of Offshore for general, equitable and legal relief, and enter such other and further relief as the Court deems just and proper.

Dated:  October 19, 2011

Respectfully submitted,

*s/ Philip D. Nizialek*
Philip D. Nizialek (La. Bar No. 24180)
M. Hampton Carver (La. Bar No. 3947)
CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA 70163
Telephone:  (504) 585-3800
Fax:  (504) 585-3801

**COUNSEL FOR MOEX OFFSHORE 2007 LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 19, 2011.

*s/ Philip D. Nizialek*