IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>No. 10-2771 | * * * * | Judge Barbier<br><br>Magistrate Judge Shushan |

**THE BP PARTIES' MEMORANDUM IN OPPOSITION TO PSC'S MOTION *IN LIMINE* OF CLAIMANTS-IN-LIMITATION TO EXCLUDE EVIDENCE REGARDING THE ALLEGED FAULT OF NON-PARTIES AND/OR IMMUNE PARTIES (INCLUDING THE UNITED STATES)**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Robert R. Gasaway
Jeffrey Bossert Clark
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:     (504) 581-7979
Facsimile:      (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:     (202) 662-5985

***Counsel for BP Exploration & Production Inc. and BP America Production Company***

## INTRODUCTION

In the wake of the *Deepwater Horizon* incident, BP Exploration & Production Inc. and BP America Production Company (collectively "BP Defendants") face hundreds of lawsuits, including thousands of short-form joinder Plaintiffs, nearly all of whom allege that the incident or its aftermath either occurred due to, or has been aggravated as the result of, the BP Defendants' alleged gross negligence and/or willful misconduct. The BP Defendants are working diligently, as this Court is well aware, to complete an exceedingly ambitious discovery schedule in advance of the February 27, 2012 trial.

The Plaintiffs' Steering Committee ("PSC") has now filed a Motion *in Limine* (Doc. 4158) — seemingly attempting to stand in the shoes of the United States — that would, if granted, unlawfully hamstring BP's ability to defend against the many claims of gross negligence being asserted against it. Specifically, the Motion attempts to limit the Court's ability to consider certain evidence relating to the consent of supposedly "immune parties," meaning in effect the United States, to the very BP conduct Plaintiffs now assert was grossly negligent. Like all unmeritorious motions in limine, this Motion would block the Court from receiving meaningful evidence at trial — including evidence that agencies of the United States approved or directed the precise conduct that Plaintiffs claim forms the foundation for gross negligence.

Curiously, the Motion is presented in an almost entirely hypothetical posture, identifying no specific evidence to be excluded and no "non-parties" or "immune parties" other than the United States that would be benefited. More curious still, the Motion references statutes that neither the BP Defendants nor any other party has invoked against any party to this MDL litigation. And most curious of all, the Motion is premised on fundamental misconceptions regarding the claims BP is — and is not — asserting against the United States. (Against this

backdrop, the BP Defendants will focus here on explaining why the Motion fails on its merits, but we nonetheless note that we hereby expressly reserve all rights against the United States.)

The Motion rests principally on a mistaken premise that BP seeks to prove in this proceeding that the United States is financially liable, at least in part, for the spill.  That premise is simply untrue.  In this MDL, BP largely seeks to present evidence of government conduct as relevant to *defenses* (as opposed to some unasserted cross- or counterclaims against the United States).  Once this fundamental distinction is recognized, it becomes clear the Motion should be denied for multiple reasons, and the evidence it seeks to exclude should be received and considered for whatever it may be worth.

*First*, evidence of government conduct is relevant to BP's defense against punitive damage claims.  The Macondo well design BP used was approved by the federal government — a fact surely relevant to BP's position that awarding punitive damages based on this design would be inappropriate.  Likewise, the fact that BP followed federal emergency-response instructions in numerous respects, and even suggested ways to cut the duration of the spill, is surely relevant to BP's defense against claims asserting the gross negligence of its spill response.

*Second*, the evidence bearing on government conduct is relevant to the Clean Water Act penalties being sought against BP.  Clean Water Act Section 311(b)(8) instructs courts to consider, among other factors: (a) "the degree of culpability involved"; and (b) "any other matters as justice may require."  Government approvals of BP's activities at the well site and BP's adherence to government decisionmaking after the spill clearly are relevant to BP's degree of fault and to the proper dispensation of justice in this case.

*Third*, evidence concerning the government's regulatory actions bears on determining relative fault between private parties.  Going no further than comparing BP's conduct to

Transocean's, it is surely significant that BP received advance approval for its well design and drilling activities, while Transocean, by contrast, failed to properly execute on applicable plans, failed to maintain a safe working environment, failed to execute a proper response to a kick, and was not subjected to government oversight of its activities on the day of the event.

*Fourth*, evidence concerning government decisions that may have affected the length of the spill is relevant to BP's divisibility defense. Under the same Restatement of Torts provision that the PSC relies on in connection with its assertions about joint and several liability, BP has asserted a defense to such liability under the Oil Pollution Act ("OPA"). Specifically, the availability of this defense turns on BP showing that the causes of the harms underlying the PSC's and United States' OPA actions are divisible. To be clear, in asserting this divisibility defense, BP does not seek to establish that the United States is financially liable. Rather, BP would seek only to establish the United States' role in making certain critical decisions during the incident response and the effect those decisions may have had on the size or duration of the spill.

*Finally*, the Motion is premised on faulty assumptions of law. The PSC (and the United States) seek to show that BP violated federal regulations, yet the Motion incongruously tries to preclude BP from putting in evidence as to how it carefully followed federal regulations and instructions. Stripping BP of its defenses in this fashion would be fundamentally unfair. Furthermore, one of the Motion's key premises is that the United States has absolute immunity for its actions in connection with the *Deepwater Horizon* incident. Even though BP is not asserting that the United States is monetarily liable, this assertion of absolute immunity is legally incorrect.

Because it is flawed in law, logic, and fact, this Court should deny the PSC's Motion *in Limine*.

## I. THE MOTION IS TOO VAGUE TO SATISFY THE PURPOSE OF AN *IN LIMINE* MOTION IN A BENCH-TRIAL SETTING.

At the outset, the PSC's Motion fails for being profoundly vague. The PSC fails to point to any specific evidence that it seeks to exclude. (In Section II, below, the BP Defendants rebut the PSC's claims that the topics concerning governmental actions about which BP might wish to put on evidence are irrelevant.)

As the Supreme Court has explained, "in limine" means "on or at the threshold; at the very beginning; preliminarily." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (internal quotation marks and alteration omitted). The Fifth Circuit has similarly stated that a "motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence in the jurors' minds." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977).

Here, of course, the Court has authorized the filing of motions *in limine* in what it has structured as a bench trial. The Court apparently seeks to use such motions *in limine* to streamline the trial and avoid the presentation of legally irrelevant evidence. But this purpose is not served if no specific evidence is pointed to and if the vaguely targeted evidence cannot be explained to be irrelevant in all of its possible uses. Such an approach also makes this Motion more difficult to respond to, as the BP Defendants must guess at the "color" of the evidence that the PSC has in mind when bringing this Motion.

The PSC's Motion must be dismissed under existing law of the case, as well.  As this Court recognized in denying the Clean-Up Defendants' and Nalco's Motion to Dismiss the B3 Master Complaint on derivative immunity grounds, it is impossible for the Court to make considered legal judgments about facts that are not yet known.  *See* Doc. 4209 ("B3 Order"), at 12.  As explained below, the Court's resolution of Plaintiffs' Motion here necessarily implicates complex legal issues of maritime law, the Clean Water Act ("CWA"), and the Oil Pollution Act ("OPA").  Many of the critical legal issues can only be decided with a full evidentiary record — allowing the Court to apply the law to *actual* facts and not to speculative or hypothetical questions.

Finally, assessing relevance, which is surely the function of what a motion *in limine* is designed to test in a bench trial, cries out for a full appreciation of context.  Relevant to what precisely?  *See United States v. Brown*, 574 F.2d 1274, 1278 (5th Cir. 1978) ("[N]either the trial court nor this court can decide cases in a vacuum, nor pass on facts that are not in the record"), *cert. denied*, 439 U.S. 1046 (1978); *see also* Fed. R. Evid. 401; *id.* Advisory Committee Note ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.") (1972).  As demonstrated below, while in present context the Motion's targets are unclear (reason enough to deny it), what is known about the Motion's legal merits makes clear the Motion should be denied.

## II.   ASIDE FROM BEING VAGUE, PLAINTIFFS' ARGUMENTS FAIL AS A MATTER OF LAW.

Beyond being hypothetical, the legal analysis in the Motion is wrong in seeking to preclude the discovery or presentation of evidence against the federal government.  It is simply not true that "the alleged 'fault' (if any) of the United States, or any other non-party or immune

party, is not legally relevant to this litigation." PSC Mot. *in Limine* at 1. To the contrary, the negligence of the United States is highly relevant.

As a legal matter, the bulk of the Motion thus misses the mark. Plaintiffs spend page upon page establishing a proposition with which the BP Defendants have no quarrel: When awarding compensatory damages under maritime law, the Court does not allocate the fault of a non-party or immune party for the purpose of awarding monetary damages. The overwhelming majority of the cases cited in the Motion establish no more than this basic (and immaterial) proposition. *See* PSC Mot. *in Limine* at 2 & n.2 (citing, e.g., *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1428 (5th Cir. 1988); *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722 (11th Cir. 1982)). But the BP Defendants have never argued otherwise. Similarly, the BP Defendants have never argued that the United States is liable under a tort contribution theory to the Plaintiffs. *Compare* PSC Mot. *in Limine* at 3 (asserting BP is trying to "circumvent" governmental immunity defenses via contribution doctrine).

But Plaintiffs then wrongly assume that the BP Defendants will argue that the United States should be found financially liable for the spill. In fact, the BP Defendants have never brought such claims and they are not seeking to develop such claims, though they reserve all of their rights. Rather, the BP Defendants merely wish to develop and proffer relevant information that will assist in BP's own defense.

The Plaintiffs clearly argue that the BP Defendants should be held liable for the *Deepwater Horizon* incident in various respects because they **allegedly violated** government regulations or directives. *See* U.S. Compl. ¶¶ 49-55; Amended B1 Master Compl. ¶¶ 201, 279, 290, 301, 360, 431, 432, 447, 466, 470, 586, 592, 683, 767. Surely then, it is fair game for the BP Defendants to proffer evidence obtained from the United States (or another governmental

7

authority) tending to indicate that the BP Defendants *actually followed* government regulations or directives in the course of drilling the Macondo well, in reporting the incident, or in working with the government to cap the well and clean up the spill.  *See, e.g., Bennett v. Nucor Corp.*, --- F.3d ---, 2011 WL 4389194, at *5 (8th Cir. 2011) (assessing relevance based on an analysis of "what's good for the goose is good for the gander"); *Vetter v. Keate*, No. 2:09-cv-137-DB-PMW, 2010 WL 1566417, at *6 (D. Utah Apr. 16, 2010) ("[B]oth Plaintiffs and Defendants have argued that they should not be required to produce their own tax returns because they are not relevant in this case.  At the same time, both Plaintiffs and Defendants have also argued that tax returns of the opposing side are relevant.  [The] well-known [goose/gander] idiom [thus decides this case] …."); *Valley v. Sigma Coatings, Inc.*, CIV. A. 91–2076, 1992 WL 329526, at *1 (E.D. La. Nov. 4, 1992) (Clement, J.) (affirming Magistrate Judge's decision that made a relevance determination on basic goose/gander grounds).

What Plaintiffs misunderstand is that even if the United States had absolute, unassailable immunity to having to pay out money damages to Plaintiffs or Defendants in connection with the incident, that does *not* mean that evidence suggesting that (i) the United States made mistakes in approving such activities or cleanup actions, or (ii) the United States "approv[ed] of drilling permits, applications, or plans [through] MMS," PSC Mot. *in Limine* at 4, would not be centrally relevant to BP's defense.

In reality, evidence establishing the role of the United States, including approving well design, drilling activities and various cleanup decisions after the sinking of the *Deepwater Horizon*, is highly relevant for at least four reasons: (1) it is salient to whether punitive damages are appropriate; (2) it affects the government's ability to seek enhanced CWA penalties; (3) it is essential to determining the relative fault among the Defendants; and (4) it is crucial in

determining whether damages are divisible.  Of course, evidence may be admitted so long as it is relevant for even *one* proper purpose, much less four.  *See, e.g.*, *Huddleson v. United States*, 485 U.S. 681, 687 (1988) ("[R]elevant evidence — evidence that makes the existence of ***any fact at issue*** more or less probable — is admissible unless the Rules provide otherwise." (emphasis added)).

### A. The Evidence is Relevant to Claims for Punitive Damages.

The Court has ruled that the Plaintiffs have viable claims to seek punitive damages under maritime law.  B1 Order (Doc. 3830), at 26-27.[1]  Yet, having prevailed at this stage in their attempt to preserve a punitive-damages remedy, Plaintiffs would now deny the BP Defendants an opportunity to defend against this drastic form of relief.

Under the Court's ruling, punitive damages are available only where a defendant's conduct is grossly negligent.  *See id.* at 19 (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)).  The actions of the United States are directly relevant to assessing whether the BP defendants were grossly negligent.  Indeed, the BP Defendants anticipate that the evidence will show that (1) MMS specifically approved the design of the Macondo well and various drilling plans and permits to conduct activities at the well, as well as BP's Oil Spill Response Plan; and (2) during the source-control effort (which is a subject for Phase 2 of the trial), the U.S. government through the Unified Command controlled and directed the work by BP to contain oil from the Macondo Well and to close the Well.  BP does not anticipate using such evidence in this proceeding to shift monetary liability onto the United States.  Rather, the BP Defendants

---

[1] BP recognizes that the Court denied its motion to certify the B1 Order on the displacement issue for interlocutory appeal.  *See* Doc. 4291.  But BP continues to reserve all of its rights concerning its position that OPA displaces maritime law causes of action against BP for economic loss and property claims.

plainly plan to use it to demonstrate (among other purposes) why any award of punitive damages against the BP Defendants would be inappropriate.

In other words, evidence of regulatory oversight is relevant to *limit* the total liability of potentially liable parties like the BP Defendants — not to *shift* any liability onto an assertedly immune party like the United States. Accordingly, Plaintiffs' litany of cases concerning the allocation of compensatory damages under maritime law simply misses the point. None of those cases is relevant to how BP intends to use this evidence to resist the imposition of punitive damages.

### B. The Evidence Is Relevant to the Government's Eventual Claim for CWA Penalties.

Evidence showing that the United States was at fault is also critical in evaluating the extent to which CWA penalties should be imposed. As this Court has previously determined, the Phase 1 trial will encompass facts relevant to "the Event." Pre-Trial Order No. 41 (Doc. 4083). Contrary to the PSC's apparent belief, this Court will not be presiding solely, or even primarily, over a maritime tort action. Indeed, if the BP Defendants could not offer any evidence at all relating to CWA penalties, this Court would effectively have to re-try much or most of the Phase 1 case at a later point so that the BP Defendants could defend themselves against the government's CWA penalty claims. Such a resolution would strain the resources of the parties and the Court and would be inconsistent with Pre-Trial Order No. 41, which clearly contemplates that the Event phase will be tried only once with as much avoidance of duplication as possible. *See* Doc. No. 4083.

Under CWA Section 311(b)(7), "any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility" from which oil is discharged may be subject to a civil penalty. 33 U.S.C. § 1321(b)(7). In determining the precise amount of the

10

penalty to impose, the Court must consider a variety of factors, including "the degree of culpability involved" and "*any other matters as justice may require*."  *Id.* § 1321(b)(8) (emphasis added); *see also United States v. Citgo Petroleum Corp.*, No. 08-893, slip op. at 3-9 (W.D. La. Sept. 29, 2011).  The contextual field of relevant information to BP's defense under CWA Section 311 is clearly exceptionally broad, and hence any Federal Rule of Evidence 401 relevance inquiry also widens considerably.

While the BP Defendants agree that the Court cannot impose CWA penalties on non-parties or immune parties, evidence that tends to negate or minimize the BP Defendants' fault is highly relevant to the magnitude of the penalties that might be imposed on BP.  To mount an effective defense, the BP Defendants must be permitted to establish facts demonstrating both that (1) their conduct did not reach a level of blame such that heightened penalties should be imposed under the CWA; and (2) the degree of BP's own culpability, and various "other matters as justice may require," counsel in favor of imposing a civil penalty far below whatever statutory maximum might be asserted.  Indeed, the "other factors as justice may require" language is sufficiently expansive that virtually any fact bearing on what constitutes a reasonable penalty is relevant.  *See, e.g.*, *Sackett v. U.S. EPA*, 622 F.3d 1139, 1146-47 (9th Cir. 2010) ("Any penalty ultimately assessed against the Sacketts would therefore reflect a discretionary, judicially determined penalty, taking into account a *wide range of case-specific equitable factors*, and imposed only after the Sacketts have had a *full and fair opportunity to present their case* in a judicial forum." (emphasis added)).

For the reasons set forth above, potentially showing that the actions of the United States affected the magnitude of the spill or the scope of the spill's impact, and whether other actions might have reduced the impacts of the spill, are highly relevant to BP's "degree of culpability"

and other considerations that "justice may require." Again, the BP defendants do not plan to use this evidence to contend in this proceeding that the United States faces monetary liability to the Plaintiffs or to BP. Rather, such evidence would be adduced, if at all, to cast BP's own total liability in a more accurate light.

### C. The Evidence Is Relevant to Determining the Defendants' Relative Fault.

The role played by the United States in "the Event" is also relevant to apportioning fault *among* the private Defendants. In particular, the BP Defendants anticipate showing that BP was not grossly negligent, because, among other reasons, MMS regulations required that the Macondo well be approved by the United States and BP sought and received all necessary regulatory approvals. In contrast, Transocean chose to license the *Deepwater Horizon* in the Republic of the Marshall Islands and to avoid flagging its ship in the United States. Evidence confirming that BP's well design was subject to the comprehensive oversight of the United States government while Transocean's vessel flew a flag of convenience is surely potentially relevant (at the very least) to the comparative fault of the parties.

It is also highly relevant to the relative apportionment of fault among the Defendants that no government agency whatsoever was positioned to or actually did police Transocean's unacceptably poor response to the kick; its decision to use the mud-gas separator once the hydrocarbons reached the surface; or its decision to rewire the BOP solenoid. On the other hand, BP's core well-design conduct was closely regulated on an *ex ante* basis at all relevant times. Accordingly, Transocean's failure to execute properly and safely on the MMS-approved plans submitted by BP to government regulators in observance of prudent well-control practices is of potential relevance to BP's defense. The fact that BP did what the United States told it to do while other Defendants failed to act within the parameters of government-approved plans and

12

directives is surely one point that a court may consider in assessing where the lion's share of fault lies.

### D. The Evidence is Relevant to the Divisibility of OPA Damages.

Finally, the evidence the PSC seeks to exclude is centrally important to the BP Defendants' divisibility defense to Plaintiffs' OPA claims. *See* Answer, Doc. 1858 (BP's Answer in *United States v. BP Exploration & Prod. Inc.*) (Fourth Affirmative Defense). In their Motion *in Limine*'s second sentence, Plaintiffs acknowledge the existence of such a divisibility issue. But beyond that they never breathe another word about it, much less confront its legal significance. *See* PSC Mot. *in Limine* at 2 ("Joint and several liability renders each of two or more defendants, whose tortious conduct was a substantial cause of ***an indivisible harm*** to an injured party, liable to the injured party for the entire harm." (emphasis added)). Showing an indivisible harm is thus a necessary premise to the PSC's contentions that it never even attempts to establish.

In *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009), the Supreme Court applied the divisibility doctrine to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") — the statute upon which OPA was in certain respects modeled. *See, e.g.*, *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 239-40 & n.10 (11th Cir. 1995) (reasoning that OPA's and CERCLA's similarities and differences reflect deliberate choices by Congress because "Congress was aware of, and occasionally borrowed from, CERCLA when enacting OPA"). Like OPA, CERCLA imposes strict liability upon responsible parties. *Compare* 42 U.S.C. § 9607(a) (imposing strict liability under CERCLA) *with* 33 U.S.C. § 2702 (imposing strict liability under OPA). And there is no relevant difference between OPA and CERCLA that would justify applying the divisibility doctrine to one statute but not the other.

13

Notwithstanding CERCLA's imposition of strict liability, the Supreme Court held that such liability may be divisible, and that the automatic imposition of joint and several liability is therefore inappropriate. *See id.* at 1883; *accord United States v. Wright*, 639 F.3d 679, 691 n.8 (5th Cir. 2011) (Davis, J., specially concurring) ("[T]he Court has held that CERCLA joint and several liability is limited by . . . general causation principles.") (citing *Burlington Northern*, 129 S. Ct. at 1880-81); *In re Bell Petroleum Servs.*, 3 F.3d 889, 895 (5th Cir. 1993) ("Although joint and several liability is commonly imposed in CERCLA cases, it is not mandatory in all such cases." (footnote omitted)). Instead, "when two or more persons acting independently cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused." *Burlington Northern*, 129 S. Ct. at 1881 (alterations and internal quotation marks omitted).

The divisibility doctrine applies under OPA for the same reasons that it applies under CERCLA. Moreover, Plaintiffs affirmatively rely upon the RESTATEMENT (SECOND) OF TORTS § 433A as controlling here. *See* Mot. *in Limine* at 2 n.3. But construing that provision of the Restatement and its operation in the context of a strict-liability statute like CERCLA or OPA is at the heart of the *Burlington Northern* decision establishing the divisibility defense the Plaintiffs seek to ignore. *See* 129 S. Ct. at 1881.

Accordingly, if BP can show "that a reasonable basis for apportionment exists," applying joint and several liability under OPA to BP becomes inappropriate. *Id*. Even assuming the federal government enjoys complete sovereign immunity (a questionable premise, *see* Section III, below), that point is irrelevant to the divisibility issue, since the BP Defendants are not seeking to recover money from the federal government. Rather, BP is seeking, consistent with

*Burlington Northern*, to limit its own liability by contending that the harm is divisible and that it is not responsible for some portion of the harm.

Accordingly, the BP Defendants anticipate potentially demonstrating at trial in Phases 2 and 3 that there is "a reasonable basis for division" of responsibility due to the fact that various actions taken by the United States government — however well-meaning they may have been when taken — may have affected the amount of oil entering the Gulf or reaching shore. For example, evidence might show that government delays in authorizing various clean-up efforts resulted in more oil reaching the shoreline. The parties are entitled to take necessary discovery to see what facts may emerge. The critical point at this juncture is that BP cannot possibly prove a defense without a fair opportunity to develop and present the evidence relevant to that defense. *Id.*[2]

## III. PLAINTIFF'S MOTION RESTS ON FAULTY PREMISES.

Even aside from BP's affirmative reasons showing that government-related evidence is relevant to multiple lines of defense, the legal premises of the Motion *in Limine* are flawed.

**(1) CWA Sections 311(j)(8) and 311(c)(4) Do Not Create A Relevant Immunity.** The PSC asserts that the United States is immune under 33 U.S.C. § 1321(j)(8). PSC Mot. *in Limine* at 6. But that contention is mistaken, as this statutory subsection is concerned only with liability for the approval of ***pre-spill*** response plans. *See generally* 33 U.S.C. § 1321(j)(5) (describing the requirement that a vessel or facility have a pre-spill response plan in place).

By contrast, actions taken ***under*** the National Contingency Plan ("NCP") are addressed by CWA Section 311(c)(4), which makes ***private parties*** acting consistent with the NCP immune

---

[2] BP's assertion of a divisibility defense does not diminish its commitment to fund all legitimate claims paid by the GCCF, subject to its rights of contribution and indemnity from other parties. OPA contemplates that the OPA presentment and payment process is in the nature of an out-of-court settlement. As to actions brought in court, BP reserves all of its legal defenses, including, but not limited to, divisibility.

from liability if they are not themselves responsible for the spill (or ineligible on the basis of some other exception). But the definition of the term "person," used in Section 311(c)(4), clearly does *not* include the federal government and its agents. Rather, the statute defines the term "person" to only include "an individual, firm, corporation, association, and a partnership" — i.e., only private parties. 33 U.S.C. § 1321(a)(7); *accord Dep't of Energy v. Ohio*, 503 U.S. 607, 618 (1992) ("33 U.S.C. § 1321(a)(7) defines 'person' in such a way as to exclude the various governmental entities included in the general definition of 'person' in 33 U.S.C. § 1362(5)."), *superseded on other grounds by* Federal Facility Compliance Act of 1992, Pub. L. No. 102-386, § 102, 106 Stat. 1505. For this reason, while the federal government originally touted CWA Section 311(c)(4) to the Court as a basis for its claim of substantive immunity and immunity to discovery, [Doc. 1946 at 6 n.4], it later backed off of that claim, and more recently began to invoke CWA Section 311(j)(8). And CWA Section 311(j)(8), as noted, has a much more limited sweep and does not apply to actions taken in connection with *implementing* the NCP — the relevant category of governmental action about which BP has pursued discovery against the United States. *See* Letter from R. Michael Underhill to Tim Duffy (Sept. 21, 2011).

**(2) CWA Section 311(i) Makes Clear There Is No Absolute Governmental Immunity.** More fundamentally, the PSC is also wrong that the legal regime applicable here contemplates absolute immunity on the part of the United States. *See* Mot. *in Limine* at 6 & n.20. Clean Water Act Section 311(i), 33 U.S.C. § 1321(i), creates a monetary cause of action against the United States in the Court of Federal Claims subject to certain conditions. Indeed, the Court of Claims, speaking of Section 311(i) once quipped: "A clearer waiver of immunity than that contained in 33 U.S.C. § 1321(i)(1) is not easily phrased." *Quarles Petroleum Co. v. United States*, 551 F.2d 1201, 1205 (Ct. Cl. 1977).

To be sure, the BP Defendants have not brought a CWA Section 311(i) suit, nor could they do so in this Court. But the point of noting that CWA Section 311(i) is to the contrary of the PSC's argument is that even the Plaintiffs' *non sequiturs* — the purported absolute sovereign immunity of the United States — are misleading and incomplete on their own terms.

**(3) Immunity Issues Are a Red Herring.** In any event, because the BP Defendants' right to conduct a meaningful defense does not turn on the monetary liability *vel non* of the United States, these questions of governmental immunity under the carefully framed terms of CWA Section 311 are very much beside the point.

## CONCLUSION

At bottom, the Motion rests upon a faulty foundation that assumes that because evidence is inadmissible for one purpose, such as imposing financial liability on the Government due to its purported absolute immunity (itself a flawed premise), it must therefore be inadmissible for all other purposes as well. That proposition is simply false. BP shows at least four ways in which evidence of government conduct is relevant. None of the PSC's arguments in their Motion reaches those issues.

For the foregoing reasons, the BP Defendants respectfully request the Motion be denied.

Dated: October 24, 2011                             Respectfully submitted,

                                                    /s/ Don K. Haycraft_____

| | |
|---|---|
| Richard C. Godfrey, P.C.<br>J. Andrew Langan, P.C.<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200 | Don K. Haycraft (Bar #14361)<br>R. Keith Jarrett (Bar #16984)<br>LISKOW & LEWIS<br>701 Poydras Street, Suite 5000<br>New Orleans, Louisiana  70139-5099<br>Telephone:    (504) 581-7979<br>Facsimile:     (504) 556-4108 |
| Robert R. Gasaway<br>Jeffrey Bossert Clark<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, N.W.<br>Washington, D.C. 20005<br>Telephone:    (202) 879-5000<br>Facsimile:     (202) 879-5200 | Robert C. "Mike" Brock<br>COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC  20004-2401<br>Telephone:    (202) 662-5985<br><br>***Counsel for BP Exploration & Production Inc. and BP America Production Company*** |

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of October, 2011.

                                                                      /s/   Don K. Haycraft