UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This document applies to:<br>10-2771 | JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S RESPONSE IN OPPOSITION TO THE MOTION IN LIMINE OF CLAIMANTS-IN-LIMITATION TO EXCLUDE EVIDENCE REGARDING THE ALLEGED FAULT OF NON-PARTIES AND/OR IMMUNE PARTIES (INCLUDING THE UNITED STATES), Dkt No. 4158**

TO THE HONORABLE JUDGE CARL J. BARBIER:

Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean") hereby oppose the Motion in Limine of Claimants-in Limitation to Exclude Evidence Regarding the Alleged Fault of Non-Parties and/or Immune Parties (Including the United States), Dkt. No. 4158.

First, the Court has specifically ordered that the upcoming fault allocation trial "will address all allocation of fault issues that may properly be tried without a jury, including the negligence … of … the various defendants, third parties, **and non-parties** with respect to the issues …" Pretrial Order No. 41 [Case Management Order No. 3], Dkt. No. 4033, at 1 (emphasis added). The Court's order is sound and reflects that the Court has before it not simply a traditional Limitation of Liability proceeding, but a complex MDL which includes a suit brought by the United States. Given all of the claims, defenses, cross-claims and third-party claims asserted in the MDL, the trial should encompass all evidence relevant to the "who, why and

how" leading up to the blowout and the "who, why and how" of the nearly three-month effort to control the well -- regardless of whether that evidence concerns parties, non-parties or immune parties. The Court needs to consider all evidence relevant to what happened and why. There is no sound reason for the Court to use a pre-trial motion in limine to decide how any hypothetical findings of fault should be reflected in any ultimate judgment the Court may enter, including any provision for joint and several liability.

Second, the fault of the United States **is** a relevant issue even assuming *arguendo* that the United States is immune from suit brought by the claimants in limitation, and even assuming *arguendo* that the fault of the United States would not be reflected in any judgment entered in favor of claimants in limitation. The fault of the United States is relevant to the defenses of offset and recoupment asserted in the action brought by the United States. The United States has not moved to dismiss these affirmative defenses and the doctrine of sovereign immunity is not a bar to a claim arising from the same transaction that is asserted as an offset or recoupment in a suit filed by the United States. Since sovereign immunity is not a bar to a claim of offset or recoupment, it is of no moment that the suit is not authorized by the Federal Tort Claims Act (including its discretionary function exception) or the Suits in Admiralty Act (which allows admiralty suits against the United States where there is a private party analogue.).

Third, in its action, the United States is seeking enhanced per barrel civil penalties and, to obtain such relief, must prove that the discharge "was the result of gross negligence or willful misconduct" of a person liable under the statute -- i.e., the owner or operator of the facility or vessel from which the oil was discharged. 33 U.S.C. § 1321(b)(7)(D). The fault of any and all parties and non-parties -- including the United States -- with respect to the blowout of the well and the subsequent efforts to control the discharge is relevant to this issue. Evidence that the


United States rubber stamped risky last minute changes in BP's temporary abandonment plans without a safety analysis required by MMS regulations is relevant in Phase 1. Evidence that the United States delayed methods which could have controlled the well sooner is relevant in Phase 2.

## BACKGROUND

Transocean was named as a defendant by various claimants in the Limitation case (10-2771) and by the United States as part of the *United States v. BP Exploration & Production* case (10-4536), both pending in MDL-2179.

Transocean filed its third-party complaint under Rule 14(c) in the Limitation case on February 18, 2011 which named, among other parties, the United States. Dkt No. 1320**.** The United States moved to dismiss the 14(c) tender. Dkt. No. 2404. Transocean opposed the motion to dismiss and the United States filed a reply. Dkt. Nos. 2732 & 3134. The Court has not entered any order setting that motion for argument or taking it under submission.

## ARGUMENT

**I.     The Court has already ruled that the upcoming trial will consider evidence relating to negligence of all defendant, third parties <u>and non-parties</u>**

"In order to organize and manage this complex litigation," the Court adopted Case Management Order No. 3 with respect to a "Trial of Liability, Limitation, Exoneration and Fault Allocation." PTO 41 [CMO #3]. The Order states:

> The Trial will address <u>all allocation of fault issues</u> that may properly be tried to the Bench without a jury, including the negligence, gross negligence, or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, <u>and non-parties</u> with respect to the issues, including limitation of liability.

The Court's order takes into account that this complex MDL is not simply a Limitation of Liability Act proceeding, but also involves hundreds of other lawsuits, including an action

3

brought by the United States for civil penalties under the Clean Water Act and for declaratory relief with respect to its right for natural resource damages and response costs under OPA, as well as cross-claims and third-party claims for contribution under maritime law and under OPA, authorized by 33 U.S.C. § 2709.  Nothing in OPA says, and no maritime precedent holds, that a court is prohibited from receiving and considering evidence as to fault of non-parties or immune parties.

      The cases on which claimants in limitation rely do not support the exclusion of evidence they seek.  In the primary case on which claimants in limitation rely, the Court of Appeals held that, while the jury should not have been asked to allocate fault to the non-parties in a special verdict form, **it was totally proper to submit evidence of the non-parties' fault at trial**.  In *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716 (11th Cir. 1982), employees working on a dredge were injured when a large Chevron tanker bore down on and then collided with the dredge.  Chevron had settled before trial and was not a party.  The injured employees sued the owners of the dredge, claiming that safety procedures were inadequate.  The case went up on appeal from a judgment entered upon a jury verdict.  The answers by the jury to a special verdict form as well as questions asked by the jury during deliberations all indicated that the jury was confused by the special verdict form and by instructions that asked the jury to allocate fault between the defendant and the non-party.  The Court of Appeals agreed that the special verdict form had confused the jury and should not have been used. That aspect of the Court's holding has no relevance to the present motion, since there is no comparable risk of confusion in the February 2012 **bench trial**.

      Moreover, the Court in *Ebanks* specifically held that it was proper to introduce evidence of the fault of the non-party at trial for the jury's consideration:

> Appellees … contend that the position taken by the appellants amounts to their saying that it was improper for the trial court to hear any evidence about the acts of the tanker which would tend to exculpate the dredge from liability. The appellants make no such claim. Of course, they recognize that it was appropriate for the witnesses for Great Lakes to tell exactly what happened as the tanker bore down on the dredge and its barge, thus clearly showing that it was an act of the large vessel that created havoc among the crew of the dredge.

*Id*. at 719. *Ebanks* not only lends no support to the present motion in limine, it is directly contrary to the argument that evidence of non-parties' fault should be inadmissible at trial.[1]

The other cases cited by claimants in limitation are inapposite. *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 327 (5th Cir. 1998), concerned how to formulate a joint and several liability judgment in light of the bankruptcy of one of the defendants. It does not involve admissibility of evidence. *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1140-41 (5th Cir. 1985), concerns the exclusion of evidence of exposure to asbestos manufactured by a non-party. The Court of Appeals upheld the exclusion not on the merits, but because the defendant's rationale on appeal for the relevance of the evidence was different from the proffer made to the district court.

---

[1] *Ebanks* was decided before *McDermott v. AmClyde*, 511 U.S. 202 (1994), and its continuing validity has been questioned. The *Ebanks* court reasoned that the percentage of fault of the Chevron tanker was irrelevant in a trial between the crew and the Jones Act employer, Great Lakes, in part because "the question of the degree of culpability between Great Lakes and Chevron could be, and already was in line to be, determined in the third-party suit by Great Lakes against Chevron." 688 F.2d at 719. After *McDermott*'s adoption of the proportionate offset approach to settlements, the proportionate fault of the non-settling defendant will be decided at trial, the non-settling defendant will only be liable for its proportionate share of the total damages, and a contribution suit by the non-settling defendant against the settling defendant would not be permitted. In *Geyer v. USX Corp.*, 896 F.Supp. 1440 (S.D. Mich. 1994), the court commented: "The Eleventh Circuit's holding in *Ebanks* … was based on the assumed propriety of contribution claims against settling defendants and presumably has been overruled." 896 F.Supp. at 1446 n. 4. In the present case, Transocean has not brought a contribution claim against the United States, but simply seeks an allocation of fault for purposes of recoupment.

In sum, the Court has already ruled that it will consider evidence relevant to allocation of fault involving parties and non-parties. Whatever findings the Court ultimately makes, and regardless whether the Court ultimately allocates fault to any non-party, the Court should hear all relevant evidence as to what happened and why, including evidence as to the fault of the United States.

## II. As sovereign immunity is not a bar to the defenses of offset and recoupment asserted in the United States' action, the fault of the United States is relevant to determining those defenses

In its answer to the United States' complaint, Transocean asserted the following affirmative defense/counterclaim of "Set off and Recoupment":

> 24. The incident and resulting damages may have been caused in part by the comparative fault of the Plaintiff [United States]. The Transocean Defendants are entitled to a credit, set off and/or recoupment with respect to any monetary claim of the Plaintiff (whether asserted in the present Complaint or in any amended complaint the Plaintiff may seek leave to file) to the extent that the Transocean Defendants are held liable to any person or entity, either in this action or in any other action arising from the incident, for any amounts attributable to the comparative fault and/or negligence of the Plaintiff.

Dkt. No. 1420, pp. 25-26. The United States has not moved to strike or dismiss this affirmative defense/counterclaim. Its pending motion to dismiss is filed only in the Limitation Act case and the only relief sought in the motion is to dismiss the Rule 14(c) tender of the United States in the Limitation Act case.

An affirmative defense/counterclaim against the United States by way of recoupment is not barred by sovereign immunity. *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967) ("Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment -- arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the

6

government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims …"); 6 Charles Alan Wright, *Federal Practice and Procedure* § 1427, at 231-32 (3d ed. 2010) ("Despite the sovereign immunity doctrine . . . when the United States institutes an action, [a] defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery."); 3 James Wm. Moore *et al.*, *Moore's Federal Practice*, § 13.50(2)(c) (3d ed. 2011) ("[W]hen the United States brings a suit, it does waive its sovereign immunity as to any recoupment claims of the defendant.").

    Since sovereign immunity is not a bar, there is no requirement that the claim be authorized by statute -- either by the Federal Tort Claims Act (including its discretionary function exception) or the Suits in Admiralty Act (which claimants correctly note allows suit against the United States if there is private party analogue). The implied waiver of sovereign immunity applicable to a recoupment claim need not also fall within a statutory waiver of sovereign immunity. The Fifth Circuit has made clear that sovereign immunity is not a bar to a claim within the scope of *Frederick* even if the claim would ordinarily be barred by the FTCA's "discretionary function" exception if asserted as a claim for damages rather than a defense/counterclaim for recoupment. Statutory waiver of sovereign immunity, and the implied waiver as to recoupment that arises when the government files suit, are independent of one another. "The United States can consent to be sued '**either** by specific statutory consent **or** by instituting a suit as to which a defendant may plead matters in recoupment.'" *First Nat'l Bank v. Genina Marine Servs., Inc.,* 136 F.3d 391, 394 (5th Cir. 1998), *quoting EEOC v. First Nat'l*

*Bank,* 614 F.2d 1004, 1007 (5th Cir. 1980) (emphasis added).[2]

The fault of the United States is relevant to Transocean's recoupment defense. It has nothing to do with reducing any judgment in favor of claimants in limitation. Here is a simplified example of how it would work: Assume that at trial the Court determines that the United States is 10% at fault in connection with the entire discharge and that the fault of all the defendants is 90%. Assume that claimants in limitation establish $1 billion in damages. The portion of the damages attributable to the fault of the United States is thus 10% of $1 billion, or $100 million. Claimants in limitation will still have the right to recover all of their damages under OPA. In the suit brought by the United States, however, a defendant will be able to assert as an offset/recoupment to any recovery by the United States whatever portion that defendant has paid to claimants in limitation of the $100 million attributable to the United States' fault.

**III. Because the United States is seeking heightened per barrel civil penalties under the Clean Water Act, the fault of the United States is relevant to determining whether the discharge was the result of gross negligence or willful misconduct by the owner or operator of the vessel or facility**

The complaint filed by the United States seeks enhanced per barrel civil penalties. To obtain such relief, the government must prove that the discharge "was the result of gross negligence or willful misconduct" of a person liable under the statute -- i.e., the owner or

---

[2] *See, e.g., Cox v. Kurt's Marine Diesel of Tampa, Inc.,* 785 F.2d 935, 936 (11th Cir. 1986) (allowing a counterclaim for recoupment based on misrepresentation, even though the FTCA expressly excepts from its waiver of sovereign immunity claims against the United States arising out of misrepresentation); *Berrey v. Asarco Inc.,* 439 F.3d 636, 644-45 (10th Cir. 2006) ("Waiver under the doctrine of recoupment, however, does not require prior waiver by the sovereign or an independent congressional abrogation of immunity. If the defendant's counterclaims are already permitted under an independent congressional abrogation of immunity, there would be no need for implied waiver under the recoupment doctrine."); *Bateman v. FDIC,* 112 F.Supp. 2d 89, 94 (D. Mass. 2000) ("It is true that when the United States sues it waives immunity as to compulsory counterclaims for recoupment even if those claims would ordinarily be barred by the FTCA."); *In re S. Scrap Metal Material Co., LLC,* 713 F. Supp. 2d 568, 582-83 (E.D. La. 2010) (Feldman, J.) ("The United States cannot be sued, however, unless it specifically consents to be sued, **either** by statutory consent, **or** by instituting a suit to which a defendant may plead matters in recoupment.") (emphasis added); *In re Am. Export Lines, Inc.*, 568 F. Supp. 956, 961 (S.D.N.Y. 1983) ("However, counterclaims against the United States in the nature of recoupment do not require a statutory waiver of sovereign immunity.").

operator of the facility or vessel from which the oil was discharged.  33 U.S.C. § 1321(b)(7)(D). *See, e.g.*, United States Complaint, Case No. 2:10-cv-04536, ¶ 75 (seeking civil penalty of "up to $4,300 per barrel of oil that has been discharged, to the extent that the discharge was the result of gross negligence or willful misconduct by such Defendant.")

The fault of any and all parties and non-parties, including the United States, with respect to the blowout of the well and the subsequent efforts to control the continuing discharge is relevant to this issue.  The United States failed to follow its own requirements when it allowed BP to deviate from MMS regulations on the allowable height of the surface plug, thereby resulting in a severe under balancing of the well during displacement.  This evidence is relevant in Phase 1.  The United States delayed the use of methods which could have controlled the well sooner.  This evidence is relevant in Phase 2.  To put the matter in the words of the United States' own complaint, "to the extent that the discharge was the result of" the fault of the United States, it cannot be said to be "the result of gross negligence of willful misconduct by" a defendant.  United States Complaint ¶ 75.

## **CONCLUSION**

For the reasons above, the motion in limine of claimants in limitation must be denied.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2011, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller