UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION: J |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| VESSEL OF OPPORTUNITY ("VoO") CONTRACT DISPUTE CLAIMS | * * * | MAG. JUDGE SHUSHAN |

*********************************************

## AMENDED STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR BREACH OF MASTER VESSEL CHARTER AGREEMENT, VESSEL OF OPPORTUNITY PROGRAM

1. Hoi Nguyen is a shrimper and the owner of the fishing vessel *My Angel II*, homeported in Biloxi, Mississippi. Exhibit 6, Declaration of Hoi Nguyen, ¶ 2.

2. On May 12, 2010 Hoi Nguyen signed a Master Charter Agreement with BP Production Company Americas, Inc. for the hire of the *My Angel II*. Mr. Nguyen only reads very simple English and the terms of the agreement were explained in Vietnamese at a meeting in Point Cadet, Mississippi. This Master Charter Agreement was assigned the number 58060. Exhibit 6, attachment A. The Master Charter Agreement was supplied by BP and presented to Hoi Nguyen for signature. *Id.* ¶ 2.

3. The copy of the BP Charter Agreement which BP returned to Mr. Nguyen had blank pages in place of pages 2, 4, 6, and 8. However, the Charter Agreement is identical in all other respects to the form Master Vessel Charter Agreement which BP supplied to all other parties.

4. Under the terms of the Master Charter Agreement the hire for the *My Angel II* was $3,000 per day.  Exhibit 6, Attachment A.

5. Under the terms of the Master Charter Agreement the vessel was paid for crew members at $200 per 8 hour day, and $300 per 12 hour day.  Exhibit 6, Attachments A and C.

6. From the date of signing forward, Hoi Nguyen held the *My Angel II* prepared and ready for use by BP.  *Id.* ¶ 3-4.

7. On or about May 14, 2010, Hoi Nguyen and the members of his crew attended a four hour safety training class in Biloxi Mississippi in preparation for undertaking their obligations under the Master Charter Agreement.  *Id.*

8. On May 30, 2010, Hoi Nguyen was instructed by BP to depart Biloxi, Mississippi.  From May 31 until mid-July, 2010, the *My Angel II* was out on the Gulf of Mexico, or was back at the dock.  *Id.* ¶ 5.

9. In mid-July, the *My Angel II* was in Mobile Bay, and Hoi Nguyen was instructed to "get your boat cleaned and go home" to Biloxi.  En route back to Biloxi he received a gross decontamination from a barge located near the Dauphin Island Bridge.  He did not observe any Coast Guard personnel present.  The area in which the boat was cleaned was not boomed off.  Mr. Nguyen did not receive a certificate or other document.  In fact, oil remained on the vessel and lines on the vessel following this gross decontamination.  *Id.* ¶ 6.

10. Under the "Sector Mobile AL Deep Draft Vessel Evaluation and Cleaning Plan" [Exhibit 6], "a contaminated vessel owner's representative must obtain the Coast Guard Verifying Officer's final verification of decontamination." [Exhibit 7, p. 9].  This language is duplicated in the other documents setting out the strategy for vessel decontamination.

[Exhibit 8, *Mississippi Canyon 252 Vessel Evaluation and Decontamination Plan, Louisiana*, at p. 18].

11. About July 18, 2010, *My Angel II* returned to Biloxi, Mississippi. Mr. Nguyen was apparently given a document to sign which is titled, "Off-hire Deactivation Check Sheet." This document was filled out by someone other than Mr. Nguyen. Mr. Nguyen confirms that his signature appears on this document, but does not recall the document or how it was provided. Mr. Nguyen can read only limited English. Exhibit 6, ¶ 7.

12. After July 20 the *My Angel II* remained in Biloxi. Pursuant to the terms of the Master Charter Agreement, Hoi Nguyen did not use the *My Angel II* or hire her to any third party, but held the *My Angel II* in readiness for the exclusive use of BP. Mr. Nguyen continued to send invoices under the Charter Agreement. *Id.* ¶ 8.

13. Mr. Nguyen did not receive any further instructions as to the disposition of *My Angel II* or its operations under the Master Charter Agreement until he received a letter at the address stated in the Charter Agreement which stated that it was "Off Hire Dispatch Notification" and the charter was terminated as of August 27, 2010 "pursuant to the terms of the Master Charter Agreement." The notice further instructed Mr. Nguyen that "if you have not had your vessel properly decontaminated and an off-hire survey performed please immediately contact your local Vessel of Opportunity Coordinator to schedule your off-hire survey and decontamination as soon as possible." *Id.* ¶ 9, attachment D.

14. Shortly after the Off Hire Dispatch Notification was received, Hoi Nguyen was informed that the *My Angel II* was on a list at the Point Cadet Marina in Biloxi, for decontamination in Bayou La Batre, Alabama. Capt. Nguyen called a person he knew to

be working with BP and confirmed that the *My Angel II* was scheduled for final decontamination in Bayou La Batre within the first two weeks of September. *Id.* ¶ 9.

15. In early September 2010, the *My Angel II* was decontaminated in Bayou La Batre and returned to Biloxi. On September 16, 2010 the Coast Guard inspected Mr. Nguyen's vessel and he received a Verification of Final Decontamination. *Id.* ¶ 9, Attachment E. At the time he received this verification of final decontamination he was instructed to take the lines that had oil on them and bag them and dispose of them. *Id.* ¶ 9.

16. On September 17, 2010, the *My Angel II* returned to Biloxi and was safely moored. *Id.* ¶ 9.

17. A few days later somebody apparently connected with the VOO program called Mr. Nguyen and told to send an invoice for ten days. However, Mr. Nguyen had already sent invoices for his time per the terms of the Charter Agreement. *Id.* ¶ 10.

18. Mr. Nguyen was paid the charter hire for one day for the training vessel and crew received, and for the period of May 31, 2010 through July 20, 2010. This payment for the training and daily hire was a total of $208,340. *Id.* ¶ 11.

19. Mr. Nguyen was not paid charter hire for the period May 15 through May 30, 2010.

20. In October 2010, BP paid Mr. Nguyen an additional $34,200. This amount is equal to 9 days of the vessel hire rate with four crew members working an 8 hour day. In March 2011, BP paid Mr. Nguyen another $7,600. This was equal to two days of the vessel hire rate with four crew members working an 8 hour day.

21. For the period from July 21 through September 17, Mr. Nguyen was paid the agreed upon charter hire for only 11 days, rather than the 58 days in this period.

This <u>24th</u> day of <u>October</u>, <u>2011</u>.

Respectfully submitted,

| | |
|---|---|
|    /s/   Stephen J. Herman       |    /s/ James Parkerson Roy       |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

*Of Counsel*:
**JOEL WALTZER, ESQ.**
**ROBERT WIYGUL, ESQ.**
**CLAY GARSIDE, ESQ.**
*Counsel for Plaintiff, Hoi Nguyen; and, On Brief.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Amended Statement of Undisputed Facts will be filed into the record using the Clerk's ECF electronic filing system, and will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, this <u>24th</u> day of <u>October</u>, <u>2011</u>.

   /s/ Stephen J. Herman and James Parkerson Roy