UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates to: No. 10-8888 Doc. Ref. No. 6376 | : : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| Vessel of Opportunity (VoO) Contract Disputes ……………………………………………….... | : : | |

**THE BP PARTIES' RESPONSES TO PLAINTIFFS' AMENDED STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR BREACH OF MASTER VESSEL CHARTER AGREEMENT, VESSEL OF OPPORTUNITY PROGRAM**

1.  Hoi Nguyen is a shrimper and the owner of the fishing vessel *My Angel II*, homeported in Biloxi, Mississippi. Exhibit 6, Declaration of Hoi Nguyen, ¶ 2.

**RESPONSE:** Uncontested.


2.  On May 12, 2010 Hoi Nguyen signed a Master Charter Agreement with BP Production Company Americas, Inc. for the hire of the *My Angel II*. Mr. Nguyen only reads very simple English and the terms of the agreement were explained in Vietnamese at a meeting in Point Cadet, Mississippi. This Master Charter Agreement was assigned the number 58060. Exhibit 6, Attachment A. The Master Charter Agreement was supplied by BP and presented to Hoi Nguyen for signature. *Id.* ¶ 2.

**RESPONSE:** Contested in part. Mr. Nguyen signed two Master Vessel Charter Agreements. The Master Vessel Charter Agreement that is dated May 12, 2010, that Mr. Nguyen signed, and that a representative of BP America Production Company countersigned on May 18, 2010, was assigned the contract number MOB-58046. *See* Exhibit 6, H. Nguyen Dec. The remainder of paragraph 2 is uncontested for the purposes of this Motion.


3.  The copy of the BP Charter Agreement which BP returned to Mr. Nguyen had blank pages in place of pages 2, 4, 6, and 8. However, the Charter Agreement is identical in all other respects to the form Master Vessel Charter Agreement which BP supplied to all other parties.

**RESPONSE:** Uncontested for the purposes of this Motion. BP further states that, during the existence of the Vessels of Opportunity program, slightly different versions of the Master Vessel

Charter Agreement were used but that, for purposes of this Motion, Mr. Nguyen's Master Vessel Charter Agreement that was assigned the contract number MOB-58046 is identical to the other versions of the Master Vessel Charter Agreement in all material respects.

4.  Under the terms of the Master Charter Agreement the hire for the *My Angel II* was $3,000 per day. Exhibit 6, Attachment A.

**RESPONSE:** Uncontested for purposes of this Motion.

5.  Under the terms of the Master Charter Agreement the vessel was paid for crew members at $200 per 8 hour day, and $300 per 12 hour day. Exhibit 6, Attachments A and C.

**RESPONSE:** Uncontested for purposes of this Motion.

6.  From the date of signing forward, Hoi Nguyen held the *My Angel II* prepared and ready for use by BP. *Id.* ¶ 3-4.

**RESPONSE:** For purposes of this Motion, BP does not contest that, from May 15, 2010 through September 17, 2010, Mr. Nguyen held the *My Angel II* prepared and ready for use by BP. BP further states that Mr. Nguyen was not contacted by a BP representative and asked if the *My Angel II* would report to work until May 30, 2010, H. Nguyen Dec. ¶ 5, on or about July 15 or 16, 2010, Mr. Nguyen was instructed to get his boat cleaned and return home, and on September 17, 2010, Mr. Nguyen's vessel was moored at its homeport in Biloxi, Mississippi. Ex. K, H. Nguyen's Am. Interrog. Resps. at 3, 4.

7.  On or about May 14, 2010, Hoi Nguyen and the members of his crew attended a four hour safety training class in Biloxi Mississippi in preparation for undertaking their obligations under the Master Charter Agreement. *Id.*

**RESPONSE:** Uncontested for purposes of this Motion. BP further states that, pursuant to Article 2 of the Master Vessel Charter Agreement, each vessel's captain and crew were required to take part in safety training in order to be eligible to participate in the VoO program.

8.  On May 30, 2010, Hoi Nguyen was instructed by BP to depart Biloxi, Mississippi. From May 31 until mid-July, 2010, the *My Angel II* was out on the Gulf of Mexico, or was back at the dock. *Id.* ¶ 5.

**RESPONSE:** Contested. BP admits that BP requested that Hoi Nguyen depart Biloxi, Mississippi on May 30, 2010. However, Mr. Nguyen declined and instead asked if he and his

2

vessel could depart Biloxi, Mississippi on May 31, 2010. Ex. D, Nguyen Tr. at 52:16-56:15. BP further states that, on July 15 or 16, 2010, Mr. Nguyen was instructed to get his boat cleaned and return home and, by July 17, 2010, the *My Angel II* was at its homeport in Biloxi, Mississippi. Ex. K, H. Nguyen's Am. Interrog. Resps. at 3, 4.

9. In mid-July the *My Angel II* was in Mobile Bay, and Hoi Nguyen was instructed to "get your boat cleaned and go home" to Biloxi. En route back to Biloxi he received a gross decontamination from a barge located near the Dauphin Island bridge. He did not observe any Coast Guard personnel present. The area in which the boat was cleaned was not boomed off. Mr. Nguyen did not receive a certificate or other document. In fact, oil remained on the vessel and lines on the vessel following this gross decontamination. *Id.* ¶ 6.

**RESPONSE:** BP does not contest that, on July 15 or 16, 2010, Mr. Nguyen was instructed by a BP employee or representative to have his vessel decontaminated and return to his home port or that the *My Angel II* received decontamination near Dauphin Island bridge on July 18. Ex. D. at 72-73. BP also does not contest that Mr. Nguyen now states that oil remained on the hull and lines of the vessel, but further states that Mr. Nguyen did not notify any BP employee or contractor during or after the July 18 decontamination that he believed that there was still oil on the hull and lines of his vessel. *Id.* at 67:15-18, 71:24-72:1.

10. Under the "Sector Mobile AL Deep Draft Vessel Evaluation and Cleaning Plan" [Exhibit 6], "a contaminated vessel owner's representative must obtain the Coast Guard Verifying Officer's final verification of decontamination." [Exhibit 7, p. 9]. This language is duplicated in the other documents setting out the strategy for vessel decontamination. [Exhibit 8, Mississippi Canyon 252 Vessel Evaluation and Decontamination Plan, Louisiana, at p. 18].

**RESPONSE:** BP does not contest that the cited documents contain the quoted language but further states that this language does not appear anywhere in the Master Vessel Charter Agreement and that neither of these documents specifically apply to or reference the Vessels of Opportunity program.

11. About July 18, 2010, *My Angel II* returned to Biloxi, Mississippi. Mr. Nguyen was apparently given a document to sign which is titled "Off-hire Deactivation Check Sheet." This document was filled out by someone other than Mr. Nguyen. Mr. Nguyen confirms that his signature appears on this document, but does not recall the document or how it was provided. Mr. Nguyen can read only limited English. Exhibit 6, ¶ 7.

**RESPONSE:** Contested in part. In his deposition, Mr. Nguyen admitted that he assisted a BP representative fill out the "Off-hire Deactivation Check Sheet." Specifically, Mr. Nguyen testified that he provided the inspector that signed the document the information contained therein, including that his vessel had been decontaminated, that his on-hire date was May 31, 2010, and that his off-hire date was July 19, 2010. Ex. D. at 72:9-79:5.

12.     After July 20 the *My Angel II* remained in Biloxi.  Pursuant to the terms of the Master Charter Agreement, Hoi Nguyen did not use the *My Angel II* or hire her to any third party, but held the *My Angel II* in readiness for the exclusive use of BP.  Mr. Nguyen continued to send invoices under the Charter Agreement.  *Id.* ¶ 8.

**RESPONSE:**  Contested in part.  BP contests Plaintiffs' characterization of the Master Vessel Charter Agreement or that any of Mr. Nguyen's actions were taken "pursuant to [its] terms."

13.     Mr. Nguyen did not receive any further instructions as to the disposition of *My Angel II* or its operations under the Master Charter Agreement until he received a letter at the address stated in the Charter Agreement which stated that it was "Off Hire Dispatch Notification" and the charter was terminated as of August 27, 2010 "pursuant to the terms of the Master Charter Agreement."  The notice further instructed Mr. Nguyen that "if you have not had your vessel properly decontaminated and an off-hire survey performed please immediately contact your local Vessel of Opportunity Coordinator to schedule your off-hire survey and decontamination as soon as possible."  *Id.* ¶ 9, Attachment D.

**RESPONSE:**  BP admits that Mr. Nguyen received the letter described in paragraph 13 with the quoted language and further states that the letter provides that it "terminates the MVCA immediately as of the date noted below," which is August 27, 2010.  Pls' Ex. D.

14.     Shortly after the Off Hire Dispatch Notification was received, Hoi Nguyen was informed that the *My Angel II* was on a list at the Point Cadet Marina in Biloxi, for decontamination in Bayou La Batre, Alabama.  Capt. Nguyen called a person he knew to be working with BP and confirmed that the *My Angel II* was scheduled for final decontamination in Bayou La Batre within the first two weeks of September.  *Id.* ¶ 9.

**RESPONSE:**  Uncontested that Mr. Nguyen testified as to the above.

15.     In early September 2010, the *My Angel II* was decontaminated in Bayou La Batre and returned to Biloxi.  On September 16, 2010 the Coast Guard inspected Mr. Nguyen's vessel and he received a Verification of Final Decontamination   *Id.* ¶ 9, Attachment E.  At the time  he received this verification of final decontamination he was instructed to take the lines that had oil on them and bag them and dispose of them.  *Id.* ¶ 9.

**RESPONSE:**  Uncontested for purposes of this Motion.  BP further states that Mr. Nguyen did not inform any BP employee or contractor of his contention that his Vessel or its lines were contaminated after receiving decontamination on July 18, 2010.  *Id.* at 67:15-18, 71:24-72:1.

16.     On September 17, 2010, the *My Angel II* returned to Biloxi and was safely moored.  *Id.* ¶ 9.

4

**RESPONSE:**  Uncontested for purposes of this Motion.


17.  A few days later somebody apparently connected with the VOO program called Mr. Nguyen and told to send an invoice for ten days.  However, Mr. Nguyen had already sent invoices for his time per the terms of the Charter Agreement.  *Id.* ¶ 10.

**RESPONSE:**  Uncontested for the purposes of this Motion.


18.  Mr. Nguyen was paid the charter hire for one day for the training the vessel and crew received, and for the period of May 31, 2010 through July 20, 2010.  This payment for the training and daily hire was a total of $208,340.  *Id.* ¶ 11.

**RESPONSE:**  Contested in part.  BP admits that Mr. Nguyen was paid $200 to attend training, which is different than the amount paid for an on-hire vessel, *id.* 39:18-40:20, and was paid charter hire for his Charter Term between May 31 and July 20, 2010, which was approximately $208,340.


19.  Mr. Nguyen was not paid charter hire for the period May 15 through May 30, 2010.

**RESPONSE:**  Uncontested.  BP further states that Mr. Nguyen did not invoice for this time period, *id.* at 135:3-20, and is not owed charter hire for this time period because he was not on-hire.


20.  In October 2010, BP paid Mr. Nguyen an additional $34,200.  This amount is equal to 9 days of the vessel hire rate with four crew members working an 8 hour day.  In March 2011, BP paid Mr. Nguyen another $7,600.  This was equal to two days of the vessel hire rate with four crew members working an 8 hour day.

**RESPONSE:**  Uncontested for the purposes of this Motion.


21.  For the period from July 21 through September 17, Mr. Nguyen was paid the agreed upon charter hire for only 11 days, rather than the 58 days in this period.

**RESPONSE:**  BP admits that Mr. Nguyen was paid for 11 days in this time period.  BP contests that any additional payment is owed to Mr. Nguyen during this time period under the Master Vessel Charter Agreement.

Dated: October 27, 2011

Respectfully submitted,

By: /s/ Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  (202) 662-5985

*Attorneys for BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 27th day of October, 2011.

                                          /s/ Don K. Haycraft