# Exhibit G



40035541
Sep 27 2011
1:22AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | |
| | * | MDL NO. 2179 |
| MARINE HORIZONS, INC., et al. | * * | |
| Plaintiff, | * * | SECTION: J |
| vs. | * * | |
| | * | JUDGE BARBIER |
| BP AMERICA PRODUCTION CO., Defendant | * * * | |
| Relates to: 10-8888 Doc. Ref. No. 61140 | * * | |
| And | * * | |
| VESSEL OF OPPORTUNITY (VOO) CONTRACT DISPUTES | * * | |

**************************************************************************

**PLAINTIFF ROBERT STEPHEN GAMS' RESPONSES TO DEFENDANT BP AMERICA PRODUCTION COMPANY'S FIRST <u>SET OF INTERROGATORIES PROPOUNDED TO ROBERT GAMS</u>**

Plaintiff Robert Stephen Gams responds to BP's First Set of Interrogatories as follows:

<u>GENERAL OBJECTIONS</u>

1. Plaintiff objects to the interrogatories to the extent they are not directly related to the Vessels of Opportunity Case Management Orders [Doc. Nos. 3207, 4062].

2. Plaintiff objects to the interrogatories to the extent that they are vague, overbroad, unduly burdensome, and/or not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to the interrogatories to the extent that BP has equal or greater access to the documents or other information requested, than does Plaintiff.

4.  Plaintiff objects to the interrogatories seeking to establish (or discover) second-hand, legal, technical and/or scientific knowledge, opinions, theories and/or conclusions – as opposed to *facts*.

5.  Plaintiff objects to the interrogatories to the extent they seek documents or other information protected by the Attorney-Client Privilege and/or Work Product Doctrine, including the Joint-Prosecution and/or Common-Interest Privilege.[1]

6.  Plaintiff objects to the interrogatories relating to Defendants' own documents (or other information) as beyond the scope of legitimate and permissible discovery, because they do not seek to "discover" documents or information, but only to determine what documents or information plaintiff has discovered or obtained or deems to be relevant. Because the second-hand knowledge of the plaintiff and/or his attorneys is not relevant nor reasonably calculated to lead to admissible evidence, it is: (i) protected as Work product;[2] (ii) unduly burdensome to request the plaintiff and/or his counsel to conduct the same type of review and analysis that could be as easily conducted by Defendants and/or their counsel; and (iii) beyond the scope and objectives of legitimate discovery.[3]

7.  Plaintiff objects to the interrogatories to the extent they seek information which would not be admissible under Federal Rule of Evidence 408.

8.  Plaintiff reserves all objections as to admissibility of written responses and/or documents until such time as they are sought to be introduced into evidence and/or otherwise used in these proceedings.

---

[1] *See generally,* FED. RULE EVID. 502; FED. R. CIV. PRO. 26(b)(3); FED. R. CIV. PRO. 26(b)(4).

[2] *See* Gould v. Mitsui Mining & Smelting, 825 F.2d 676, 680 (2nd Cir. 1987); Shelton v. American Motors, 805 F.2d 1323, 1328-1329 (8th Cir. 1986); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985); James Julian v. Raytheon, 93 F.R.D. 138, 144 (D.Del. 1982); Smith v. Florida Power & Light, 632 So.2d 696 (Fla. App. 3rd Dist. 1994).

[3] *See, e.g.*, Smith v. BIC Corp., 121 F.R.D. 235, 244-245 (E.D.Pa. 1988), *rev'd, in part* BIC v. Smith, 869 F.2d 194 (3rd Cir. 1989). In the relevant portion of *Smith*, the U.S. Third Circuit denied BIC the production of information "since they were allegedly internal documents from BIC – *the documents were already in their possession*." 869 F.2d at 197 (emphasis supplied). At the same time, BIC sought a protective order to prohibit the plaintiff from disseminating trade secret information, regarding the design, safety and quality tests of the product, and to limit discovery of other accident or claims information. This part of the trial court's ruling was reversed, in part, by the Third Circuit, which granted BIC a protective order with respect to its trade secrets, but affirmed the trial court's ruling compelling BIC to produce information regarding other injuries or claims. *See* BIC v. Smith, 869 F.2d at 201-202.

**RESERVATION OF RIGHTS**

Plaintiffs respectfully reserve the right to supplement and amend these discovery responses as formal expert reports are finalized and served, and as other facts or information come to light through discovery or is otherwise uncovered or developed.

**GENERAL RESPONSE TO ALL INTERROGATORIES:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully incorporates by reference in response to all of the interrogatories the following:

VOO FOCUS PLAINTIFFS PARTIAL MOTION FOR SUMMARY JUDGMENT [Doc. No. 4035].

**INTERROGATORY NO. 1:**

Please state precisely and separately each legal claim that you are making against each defendant regarding your participation in the VoO Program and, further, describe in detail the factual basis underlying each claim.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Mr. Gams is alleging breach of contract pursuant to the terms of the Master Vessel Charter Agreement ("MVCA") he entered into with BP America Production Company ("BP"). Without notice, explanation, or justification, BP ceased making timely payments rightfully due to Mr. Gams under the charter agreement. Further responding, plaintiff refers Defendant to plaintiff's "Second Amended Complaint" filed in this action.

**INTERROGATORY NO. 2:**

Please describe in detail and separately for each VoO Vessel the amount of damages that you are claiming in these proceedings, provide an itemized computation of each source of damages that you are claiming, and identify all documents that support your claimed damages.

3

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff is claiming damages for "Cool Breeze, Jr." in the amount of $166,400.0, calculated at $1,600.00 per day for one hundred and four days. The daily rate is based upon MVCA number MOB 5530, with exhibits. The number of days is the days for which Plaintiff is unpaid; specifically from the effective date of the Master Charter Agreement to the date Plaintiff received Verification of Final Decontamination.

Plaintiff is claiming damages for "Cool Breeze" in the amount of $267,000.00, calculated at $2,100.00 per day for one hundred and twenty days and $1,500.00 per day for ten days (the approximate number of days "Cool Breeze" was under repair for damages incurred while participating in VoO activities). The daily rate is based upon MVCA number MOB 5882, with exhibits. The number of days is the days for which Plaintiff is unpaid; specifically from the effective date of the MVCA to the approximated date Plaintiff received effective notice "Cool Breeze" had in fact been inspected and received a "Certification of Inspection" from the Coast Guard, including July 22 - July 25, 2011. In addition, Defendant has failed to reimburse Plaintiff for several days dockage fees incurred pursuant the agreement between Plaintiff and Defendant.

**INTERROGATORY NO. 3:**

Please identify with specificity and separately for each VoO Vessel the individual period or periods that you contend that your VoO Vessel was subject to charter under the Master Vessel Charter Agreement and, further, describe in detail the factual basis underlying your contention and identify all documents that support your contention.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

See Response to Interrogatory No. 2. In further response, on May 4, 2010, Mr. Gams entered into a MVCA with BP for the hire of a vessel identified as "Cool Breeze, Jr." (the "First Agreement"). The effective date of the First Agreement was May 7, 2010. Subsequently, on May 14, 2010, Mr. Gams entered into another MVCA with BP for the hire of a vessel identified as "Cool Breeze" (the "Second Agreement"). The effective date of the Second Agreement was May 15, 2010.

Under the terms of the MVCAs, BP retained exclusive use of the vessels until it terminated the "charter term." Pursuant to the MVCAs, Plaintiff made both vessels available for use in, and both vessels were used in, the VoO Program. Mr. Gams submitted invoices for payment to BP and/or its agent Danos & Curole Staffing, LLC.

On or about July 21, 2010, Mr. Gams was notified by BP and/or its agent that the vessel used under the terms of the First Agreement need not report for work in the VoO Program. On August 24, 2010, BP caused an "Off Hire Dispatch Notification" related to the First Agreement to be delivered to Plaintiff.

On or about August 5, 2010, Plaintiff was notified by BP and/or its agent that the vessel used under the terms of the Second Agreement need not report for work in the VoO Program. On September 7, 2010, BP caused an "Off Hire Dispatch Notification" related to the Second Agreement to be delivered to Plaintiff.

Neither vessel received final decontamination. "Cool Breeze, Jr." was inspected and received a "Verification of Final Decontamination" on November 2, 2010. Plaintiff was orally

notified on or about December 10, 2010, that "Cool Breeze" had been inspected and passed such inspection and would receive a "Certificate of Inspection." However, despite repeated requests, neither Defendant and/or its agents delivered the "Certificate of Inspection" to Plaintiff.

Thereafter, Plaintiff placed "Cool Breeze" in dry dock for various repairs, of which approximately ten days were spent on repairs to her hull due to damages sustained while working in the VoO Program.

**INTERROGATORY NO. 4:**

Please describe in detail and separately for each VoO Vessel all maintenance, modifications, additions, repairs, replacements, or improvements (collectively, "improvements") made to the VoO Vessel since April 20, 2010. For each of the improvements, please identify the cause or activity that made the improvement necessary, the approximate date the improvement was completed, who performed the improvement, and the detailed cost of the improvement.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

See Response to Interrogatory No. 3 above. Further responding, during the term of the MVCA, Plaintiff engaged in routine maintenance, including but not limited to checking the engines, adding oil as necessary, inspecting the vessel, cleaning the vessels and bringing aboard equipment provided by Defendant and/or its agents. These maintenance items were performed on a daily or almost daily basis. Both vessels were modified by removing most or all of the equipment used for fishing (such as rods, tackle and bait).

**INTERROGATORY NO. 5:**

Please state separately for each VoO Vessel whether, since April 20, 2010, the VoO Vessel was used for any activity other than VoO Activity. If so, for each occasion that the VoO Vessel was used for such an activity, please identify the nature of the activity, the entity or person hiring the VoO Vessel to perform the activity (if applicable), the compensation for the activity (if

applicable), the dates the activity was performed, the location that the VoO Vessel performed the activity, the employer of the vessel's crew during the activity, and all documents associated with the activity (e.g., catch reports, fuel tickets, etc.).

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff used the vessel "Cool Breeze" for several charter trips in the fall of 2011. Plaintiff did not use "Cool Breeze, Jr." for any activity other than VoO activity.

**INTERROGATORY NO. 6:**

Please identify all sources of income (including unemployment compensation and any other loss of income payments received from BP or any other source) that you have received since April 20, 2010.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff states that he had no source of income from either the "Cool Breeze" or "Cool Breeze Jr." vessel that was part of the VoO Program during the MVCA term for those vessels.

**INTERROGATORY NO. 7:**

Will you voluntarily permit BP to inspect your 2010 State and Federal tax returns? If so, please sign the authorization forms that accompany these interrogatories and return them to counsel for defendant along with your answers to these interrogatories.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Previously, in response to the request of defendant, Mr. Gams submitted all 1099(s) received for

payments by defendant and/or agents and representatives of defendant during 2010 pursuant to the subject charter agreements. Plaintiff had no other 1099(s) during the time period of the MVCA.

**INTERROGATORY NO. 8:**

Please identify separately for each VoO Vessel each date on which the VoO Vessel performed VoO Activities and describe in detail the VoO Activities that the VoO Vessel performed on each of those dates and the location of such VoO Activities. Please also state the length of time undertaken for each such VoO Activity.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see Response to Interrogatory Nos. 2 and 3. Further responding, plaintiff states that both vessels were engaged in activities as directed by Defendant and/or its agents, including patrolling areas assigned each vessel and reporting oil and/or dispersants found by radio to Defendant and/or its agent. Additionally, the vessels were engaged in removing, or attempting to remove, oil it found. The location of the vessel activities were the Gulf of Mexico and Mobile Bay. The length of time the vessels engaged in the activity varied from day to day but were generally eight to twelve hour days. Further, the vessels were on-hire at all times from the date the charter went into effect until termination. Pursuant to the terms of the charter, Mr. Gams was required to maintain each vessel for the exclusive use of defendant until properly terminated. The charter agreements required that the vessels "shall be available and at charterer's disposal for operation twenty-four hours per day."

**INTERROGATORY NO. 9:**

Please identify separately for each VoO Vessel all dates on which the VoO Vessel performed VoO Activities for which you claim that you were not adequately compensated under the Master Vessel Charter Agreement and the location of such VoO Activities. Please also state the

length of time undertaken for each such VoO Activity.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see Responses to Interrogatory Nos. 2, 3 and 8.

**INTERROGATORY NO. 10:**

Are you are alleging that any of the VoO Vessels came into contact with oil or other contaminant while performing VoO Activities? If so, please identify separately for each VoO Vessel the contaminant with which the VoO Vessel came into contact, each date on which you contend the VoO Vessel came into contact with oil or other contaminant, the parts of the VoO Vessel that contacted the oil or other contaminant, and describe the VoO Activity in which the VoO Vessel was participating and the location of such activity on the dates you contend the VoO Vessel came into contact with oil or other contaminant.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff states both vessels subject to the MVCAs came into contact with oil and oil substances, including but not limited to chemical dispersants. The exposure occurred on an almost daily basis. The exposure occurred while the vessels were performing their duties as described in response to Interrogatory No. 8 above. The locations were the Gulf of Mexico and Mobile Bay. Further responding, Plaintiff refers Defendant to its document styled "Preliminary HSSE Incident Report 'Short Form'" (Defendant's bates numbers BP-HZN-2179VOO00007898 - BP-HZN-2179VOO00007900) wherein BP describes the Plaintiff and his crew's exposure to Benzene at a level of 24 parts per million as measured by an "OSHA Air Quality/Industrial Hygiene employee" using a "VX-500 PID." The location "stretched[ed] from Four Seasons Pier to

9

the Shale Fishing Pier approximately 0.25 miles to 1.5 miles out from the beach (aprox. 30.15.50 & 87.34.80)." Other than benzene, Plaintiff is not able to identify any other specific chemicals to which the vessels were exposed.

### INTERROGATORY NO. 11:

Please identify in detail and separately for each VoO Vessel every reason that you contend it was necessary for the VoO Vessel to receive decontamination.

### RESPONSE:

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff states that the MVCA requires decontamination.  Further responding, plantiff's boat came into contact with the oil.

### INTERROGATORY NO. 12:

Please identify separately for each VoO Vessel each instance in which you discussed decontamination for the VoO Vessel, including identifying the date of any such communication and the identity or a description of the person with whom you discussed the decontamination for the VoO Vessel.

### RESPONSE:

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see Response to Interrogatory Nos. 3 and 11.  Further responding, Plaintiff discussed "decontaminating" each vessel subject to the MVCA with his crew members, a variety of friends and acquaintances, dock workers, other captains and crew members, Defendants and/or its Defendant's agents.  Plaintiff cannot identify or describe each such person nor provide the date of any such communication.

**INTERROGATORY NO. 13:**

Please identify and state in detail separately for each VoO Vessel all reasons that the VoO Vessel was not decontaminated immediately after completion of VoO Activities.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see response to Interrogatory Nos. 11 and 12.  Further responding, Plaintiff states that "Cool Breeze, Jr." was never decontaminated because neither BP nor its agents offered to decontaminate it nor made decontamination available at its facilities.  "Cool Breeze" was not decontaminated prior to being notified not to report to work because the previous day, despite being ordered for decontamination and reporting to be decontaminated, BP and/or its agent ceased decontamination operations as the seas became too rough to conduct such operations.

**INTERROGATORY NO. 14:**

Please identify all persons who have knowledge related to the claims that you are making in these proceedings, including a description of the type and basis of their knowledge.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff is currently unable to identify each and every person who has knowledge of the facts related to the claims made in these proceedings.  For example, the identity of each person employed by Defendant and/or its agent is within the exclusive control of Defendant and/or its agents.  Further responding, Plaintiff states he and his crew members have knowledge related to the claims being made in these proceedings.

11

**INTERROGATORY NO. 15:**

Please identify all fact or expert witnesses whom you expect to call in any arbitration or trial regarding your participation in the VoO Program, including a description of their background and the facts known by each witness.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

At this time, Mr. Gams does not know who he intends to call as a witness in any arbitration or trial regarding his participation in the VoO Program and/or the alleged breach of the subject charter agreements in question or what the expected testimony of each witness may provide in support of his claims. In further response, plaintiff refers to his responses to the interrogatories.

Dated: September 27, 2011

Respectfully Submitted,

/s/ Lange Clark
Lange Clark, Esq.
301 19th Street North, Suite 550
Birmingham, Alabama 35203
Telephone: 205-939-3933
langeclark@mindspring.com
*Counsel for Robert Stephen Gams*

*Of Counsel:*
**ROBIN L. GREENWALD**
**JAMES C. KLICK**
**JOEL WALTZER**
**PLAINTIFFS' STEERING COMMITTEE**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Discovery Responses will be served on All Counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 27th day of September, 2011.

                                           Stephen J. Herman and James Parkerson Roy
                                                        *Plaintiffs' Liaison Counsel*