# Exhibit K



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 * * * * * | |
| * | MDL NO. 2179 |
| HOI NGUYEN,  *  Plaintiff, * * | SECTION: J |
| vs. * * | |
| BP AMERICA PRODUCTION CO., * Defendant. * * | JUDGE BARBIER |
| Relates to: 10-8888 Doc. Ref. No. 63576 * * | |
| And * * | |
| VESSEL OF OPPORTUNITY (VOO) CONTRACT DISPUTES * * | |

**************************************************************************

**PLAINTIFF HOI NGUYEN'S RESPONSES TO DEFENDANT
BP AMERICA PRODUCTION COMPANY'S FIRST SET OF
INTERROGATORIES PROPOUNDED TO HOI NGUYEN**

Plaintiff Hoi Nguyen responds to BP's First Set of Interrogatories as follows:

GENERAL OBJECTIONS

1. Plaintiff objects to the interrogatories to the extent they are not directly related to the Vessels of Opportunity Case Management Orders [Doc. Nos. 3207, 4062].

2. Plaintiff objects to the interrogatories to the extent that they are vague, overbroad, unduly burdensome, and/or not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to the interrogatories to the extent that BP has equal or greater access to the documents or other information requested, than does Plaintiff.

4. Plaintiff objects to the interrogatories seeking to establish (or discover) second-hand, legal, technical and/or scientific knowledge, opinions, theories and/or conclusions – as opposed to *facts*.

1

5. Plaintiff objects to the interrogatories to the extent they seek documents or other information protected by the Attorney-Client Privilege and/or Work Product Doctrine, including the Joint-Prosecution and/or Common-Interest Privilege.[1]

6. Plaintiff objects to the interrogatories relating to Defendants' own documents (or other information) as beyond the scope of legitimate and permissible discovery, because they do not seek to "discover" documents or information, but only to determine what documents or information plaintiff has discovered or obtained or deems to be relevant. Because the second-hand knowledge of the plaintiff and/or his attorneys is not relevant nor reasonably calculated to lead to admissible evidence, it is: (i) protected as Work product;[2] (ii) unduly burdensome to request the plaintiff and/or his counsel to conduct the same type of review and analysis that could be as easily conducted by Defendants and/or their counsel; and (iii) beyond the scope and objectives of legitimate discovery.[3]

7. Plaintiff objects to the interrogatories to the extent they seek information which would not be admissible under Federal Rule of Evidence 408.

8. Plaintiff reserves all objections as to admissibility of written responses and/or documents until such time as they are sought to be introduced into evidence and/or otherwise used in these proceedings.

---

[1] *See generally,* FED. RULE EVID. 502; FED. R. CIV. PRO. 26(b)(3); FED. R. CIV. PRO. 26(b)(4).

[2] *See* Gould v. Mitsui Mining & Smelting, 825 F.2d 676, 680 (2nd Cir. 1987); Shelton v. American Motors, 805 F.2d 1323, 1328-1329 (8th Cir. 1986); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985); James Julian v. Raytheon, 93 F.R.D. 138, 144 (D.Del. 1982); Smith v. Florida Power & Light, 632 So.2d 696 (Fla. App. 3rd Dist. 1994).

[3] *See, e.g.*, Smith v. BIC Corp., 121 F.R.D. 235, 244-245 (E.D.Pa. 1988), *rev'd, in part* BIC v. Smith, 869 F.2d 194 (3rd Cir. 1989). In the relevant portion of *Smith*, the U.S. Third Circuit denied BIC the production of information "since they were allegedly internal documents from BIC – *the documents were already in their possession*." 869 F.2d at 197 (emphasis supplied). At the same time, BIC sought a protective order to prohibit the plaintiff from disseminating trade secret information, regarding the design, safety and quality tests of the product, and to limit discovery of other accident or claims information. This part of the trial court's ruling was reversed, in part, by the Third Circuit, which granted BIC a protective order with respect to its trade secrets, but affirmed the trial court's ruling compelling BIC to produce information regarding other injuries or claims. *See* BIC v. Smith, 869 F.2d at 201-202.

### RESERVATION OF RIGHTS

Plaintiffs respectfully reserve the right to supplement and amend these discovery responses as formal expert reports are finalized and served, and as other facts or information come to light through discovery or is otherwise uncovered or developed.

### GENERAL RESPONSE TO ALL INTERROGATORIES:

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully incorporates by reference in response to all of the interrogatories the following:

VOO FOCUS PLAINTIFFS PARTIAL MOTION FOR SUMMARY JUDGMENT [Doc. No. 4035].

### INTERROGATORIES

**INTERROGATORY NO. 1:**

Please state precisely and separately each legal claim that you are making against each defendant regarding your participation in the VoO Program and, further, describe in detail the factual basis underlying each claim.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Plaintiff Hoi Nguyen responds that his legal claims against BP, and the factual basis underlying the claims, are set out in the Motion for Partial Summary Judgment, [Doc. No. 4035] and supporting documents filed with that motion. The contents of the motion and those documents are incorporated by reference.

**INTERROGATORY NO. 2:**

Please describe in detail the amount of damages that you are claiming in these proceedings, provide an itemized computation of each source of damages that you are claiming, and identify all documents that support your claimed damages.

3

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

The total charter hire owed is $277,400.

The Charter Term under the BP Mater Vessel Charter Agreement ("MVCA") began on May 14, 2010, and ended with the *My Angel* II's return to its moorings after final decontamination on September 17, 2010.

BP paid the charter hire for the training on or about May 14, and for May 31, 2010 through July 20, 2010. This payment for the training and daily hire was a total of $208,340.

BP did not pay anything for May 15 through May 30, 2010. The charter hire for this period is the vessel hire and 4 crew members working an eight hour day, or $3,800 per day. The total not paid for this period is $57,000.

In October 2010, BP paid another $34,200. This is 9 days of the vessel hire rate with four crew members working an 8 hour day. In March 2011, BP paid another $7,600. This is two days of the vessel hire rate with four crew members working an 8 hour day.

For the period from July 21 through September 17, BP paid the charter hire for 11 days. There were 58 days in this period.

The documents that support these damages are the following:

(1) BP Charter Agreement dated May 12, 2010

(2) Records of training attended by the *My Angel II* and crew

(3) Records of payment by BP, which presumably BP has available

(4) Verification of Final Decontamination, September 16, 2010

(5) BP Off Hire Notification Letter, indicating off hire date of August 27, 2010

4

**INTERROGATORY NO. 3:**

Please identify with specificity the individual period or periods that you contend that your VoO Vessel was subject to charter under the Master Vessel Charter Agreement and, further, describe in detail the factual basis underlying your contention and identify all documents that support your contention.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights,

Plaintiff respectfully responds as follows:

Please see response to Interrogatory No. 2.

**INTERROGATORY NO. 4:**

Please describe in detail all maintenance, modifications, additions, repairs, replacements, or improvements (collectively, "improvements") made to the VoO Vessel since April 20, 2010. For each of the improvements, please identify the cause or activity that made the improvement necessary, the approximate date the improvement was completed, who performed the improvement, and the detailed cost of the improvement.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights,

Plaintiff respectfully responds as follows:

None.

**INTERROGATORY NO. 5:**

Please state whether, since April 20, 2010, the VoO Vessel was used for any activity other than VoO Activity. If so, for each occasion that the VoO Vessel was used for such an activity, please identify the nature of the activity, the entity or person hiring the VoO Vessel to perform the activity (if applicable), the compensation for the activity (if applicable), the dates the activity was performed, the location that the VoO Vessel performed the activity, the employer of the vessel's crew during the activity, and all documents associated with the activity (e.g., catch reports, fuel tickets, etc.).

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights,

Plaintiff respectfully responds as follows:

The My Angel II did not do anything else during the charter term.

**INTERROGATORY NO. 6:**

Please identify all sources of income (including unemployment compensation and any other loss of income payments received from BP or any other source) that you have received since April 20, 2010.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Mr. Nguyen did not have any sources of income during the term of the MVCA other than the incomplete payments he received pursuant to the MCVA.

**INTERROGATORY NO. 7:**

Will you voluntarily permit BP to inspect your 2010 State and Federal tax returns? If so, please sign the authorization forms that accompany these interrogatories and return them to counsel for defendant along with your answers to these interrogatories.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Previously, in response to the request of defendant, Mr. Nguyen submitted all 1099(s) received for payment by defendant and/or agents and representatives of defendant during 2010 pursuant to the MVCA. Plaintiff had no other 1099(s) during the time period of the MVCA.

**INTERROGATORY NO. 8:**

Please identify each date on which the VoO Vessel performed VoO Activities and describe in detail the VoO Activities that the VoO Vessel performed on each of those dates and the location of such VoO Activities. Please also state the length of time undertaken for each such VoO Activity.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see Response to Interrogatory No. 2, in addition to the information below:

May 14, 2011 – Training, Jeff Davis Community College Campus, Biloxi MS

May 15-30, 2011 – Stand by, Biloxi, MS

May 31, 2010 – proceeded to 2924.0°N, 8801.0°W

June 1, 2010 – proceeded Mobile dock

June 2-4, 2010 – standby Mobile dock

June 5, 2010 – proceeded Mobile Bay to Destin

June 6, 2010 – proceeded Destin to Pensacola

June 7, 2010 – standby Pensacola

June 8, 2010 – proceeded Pensacola to Destin

June 9, 2010 – pull boom, Pensacola

June 10, 2010 – pull boom, Pensacola

June 11, 2010 – proceeded 2954.0° - 3009.0°N, 8838.0° - 8720.0°W

June 12, 2010 – get boom, 3009.0°N, 8717.0°W

June 13, 2010 – standby, on site Safety training and getting supplies

June 14, 2010 – pull boom, 3010.0°N, 8719.0°W

June 15, 2010 – standby, testing for oil

June 16, 2010 – standby, getting supplies

June 17, 2010 – looking for oil, Pensacola

June 18, 2010 – looking for oil, Pensacola

7

June 19, 2010 – standby Pensacola

June 20, 2010 – looking for oil, Pensacola

June 21, 2010 – proceeded Biloxi (home)

June 22, 2010 – standby, repair generator

June 23, 2010 – proceeded 3015.0°N, 8804.0°W

June 24, 2010 – proceeded Mobile Bay to Pensacola

June 25, 2010 – standby, get boom

June 26, 2010 – Pensacola followed the vessel Sea Performer

June 27, 2010 – proceeded Pensacola to Mobile Bay

June 28, 2010 – standby Mobile Bay

June 29, 2010 – repair alarm at Bayou LaBatre

June 30, 2010 – proceeded Mobile to Biloxi

July 1-6, 2010 – standby Point Cadet, Biloxi

July 7, 2010 – 40-hour training

July 8, 2010 – 40-hour training

July 9, 2010 – 40-hour training

July 10, 2010 – proceeded 2900.0°N, 8759.0°W, 4,800 ft water near the Horizon Oil Rig

July 11, 2010 – proceeded 6500 ft. water near the Horizon Oil Rig

July 12-15, 2010 – standby Mobile Bay

July 16, 2010 – gross decontamination and return to Biloxi

July 17, 2010 through September 15, 2010 – Stand by awaiting instructions per the terms of the BP Charter Agreement, Biloxi MS

September 15, 2010 through September 16, 2010 – En route from Biloxi MS to Bayou La

Batre, AL

September 16, 2010 – Receiving final decontamination in Bayou La Batre, AL

September 17, 2010, return from Bayou La Batre to Biloxi, MS

**INTERROGATORY NO. 9:**

Please identify all dates on which the VoO Vessel performed VoO Activities for which you claim that you were not adequately compensated under the Master Vessel Charter Agreement and the location of such VoO Activities. Please also state the length of time undertaken for each such VoO Activity.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Please see the Responses to Interrogatory Nos. 2 and 8. In further response, the *My Angel II* was under charter 24 hours per day. As far as the exact amount of time looking for oil, or pulling boom or on standby for instructions, I do not have the specific breakdown of this information.

**INTERROGATORY NO. 10:**

Are you are alleging that your VoO Vessel came into contact with oil or other contaminant while performing VoO Activities? If so, please identify the contaminant with which the VoO Vessel came into contact, each date on which you contend the VoO Vessel came into contact with oil or other contaminant, the parts of the VoO Vessel that contacted the oil or other contaminant, and describe the VoO Activity in which the VoO Vessel was participating and the location of such activity on the dates you contend the VoO Vessel came into contact with oil or other contaminant.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

Yes. The *My Angel II* was in heavy floating oil while it was working pulling boom. The days we were pulling boom are in the log and in the answer to Interrogatory No. 8.

While looking for oil we also came in to contact with oil. I do not know the specific days when we were looking for oil that we came into contact with oil. There was oil on the ropes, anchor line, deck and hull of the boat.

**INTERROGATORY NO. 11:**

Please identify in detail every reason that you contend it was necessary for the VoO Vessel to receive decontamination.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

The *My Angel II* still had oil on the hull in September, 2010. The ropes had oil on them too. They had the *My Angel II* on the list for decontamination, and I went with the group they told me to go with. The Coast Guard asked me to cut off the anchor line and the ropes and to put them in the bags and threw it away because it had oil on it.

**INTERROGATORY NO. 12:**

Please identify each instance in which you discussed decontamination for the VoO Vessel, including identifying the date of any such communication and the identity or a description of the person with whom you discussed the decontamination for the VoO Vessel.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

About the 15th of July 2010, a lady who spoke Vietnamese called me and said I should get my boat cleaned. She gave me a VHF channel and a boat name to call. There were boats waiting to be cleaned on July 16 near the Dauphin Island bridge, and they called us on the VHF when it was our turn. I spoke to the people on the barge doing the cleaning

but I do not know who they were and they did not give me their names.

In early September Ri Nguyen called me and told me the *My Angel II* was on a list at Point Cadet in Biloxi to be decontaminated.  He said to call a person named Devon who would know about this.  I called and Devon said that I was in a group to be decontaminated on September 16, 2010.  I went to Bayou La Batre that day and they called us on the VHF when it was time for us to be decontaminated.  I spoke to the people there who came on the boat but I do not know who they were and they did not give me their names.  The Coast Guard was there and they told me to cut off the ropes with oil on them, put them in a bag and throw them away.

**INTERROGATORY NO. 13:**

Please identify and state in detail all reasons that the VoO Vessel was not decontaminated immediately after completion of VoO Activities.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

I think the *My Angel II* was decontaminated immediately after it finished the charter.  I got the instruction about when to go as soon as I got the letter saying I was off hire and then I went with the group they told me to accompany.

**INTERROGATORY NO. 14:**

Please identify all persons who have knowledge related to the claims that you are making in these proceedings, including a description of the type and basis of their knowledge.

**RESPONSE:**

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

11

Ri Nguyen
*f/v: Independent*
20204 Belle Vue Circle
D'Iberville, MS 39540
(228) 243-9877

Son Vu
*f/v: Lady Tiffany*
(228) 348-2980

Devan Phan
1236 Herron Lake Circle
Mobile, AL 36695
(251) 586-2656

Crew members:

Nam Van Tran
369 Cedar Drive
D'Iberville, MS 39540
(228) 323-3777

Duc Ngoc Nguyen
6577 Cortez Circle
Ocean Springs, MS 39564
(228) 343-2980

Thanh Tam Nguyen
3074 Big Ridge Road, Apt. #4
Biloxi, MS 39540
(228) 313-0748

Nhiem Vo
(228) 257-8399

Ha Nguyen
(225) 371-0873

**INTERROGATORY NO. 15:**

　　Please identify all fact or expert witnesses whom you expect to call in any arbitration or trial regarding your participation in the VoO Program, including a description of their background and the facts known by each witness.

RESPONSE:

Subject to, and without waiving the General Objections and Reservation of Rights, Plaintiff respectfully responds as follows:

At this time, Mr. Nguyen does not know who he intends to call as a witness in any arbitration or trial regarding his participation in the VoO Program and/or the alleged breach of the subject charter agreement in question or what the expected testimony of each witness may provide in support of his claims. In further response, plaintiff refers to his responses to the interrogatories.

Dated: September 23, 2011

Respectfully submitted,


/s/ Robert Wiygul
Robert Wiygul (LA #17411)
1011 Iberville Drive
Ocean Springs, MS 39564
Office: (228) 872-1125
Fax:    (228) 872-1128
robert@waltzerlaw.com

/s/ Joel Waltzer
Joel Waltzer (LA #19268)
3715 Westbank Expressway, Ste. 13
Harvey, LA 70058
Office: (504) 340-6300
Fax:    (504) 340-6330
joel@waltzerlaw.com


*Of Counsel:*
**ROBIN L. GREENWALD**
**JAMES C. KLICK**
**PLAINTIFFS' STEERING COMMITTEE**


### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Discovery Responses will be served on All Counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 23rd day of September, 2011.

  Stephen J. Herman and James Parkerson Roy
*Plaintiffs' Liaison Counsel*

13