UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| *10-cv-3059 and 11-cv-0516* § | | |

******************************************************************************

## STATE OF LOUISIANA'S OBJECTIONS TO
## AND APPEAL FROM MAGISTRATE JUDGE'S ORDER
## REGARDING DISCOVERY [REC. DOC. 4415]

Pursuant to 28 U.S.C. § 636 (b)(1)(A) and Federal Rule of Civil Procedure Rule 72(a), Plaintiff, the State of Louisiana (the "State") objects to and appeals from the Magistrate Judge's Order entered October 27, 2011. 10/27/11 Order [Regarding Louisiana's Failure to Comply with Orders for Production of Documents] [Rec Doc. 4415]. As described more fully in the accompanying memorandum in support, the deadlines as well as the consequences detailed within the 10/27/11 Order are unreasonable and inappropriate under the circumstances. The imposition of sanctions for an alleged failure by the State to comply with discovery in an action to which the State was not made a party until September of this year (but to which the State nonetheless made reasonable efforts to respond) and as to which a trial plan was not issued until September of 2011 would be erroneous and constitute an abuse of discretion. Accordingly, the State of Louisiana requests that this Court modify or reverse those portions of the Magistrate Judge's Order.

Dated this 31st day of October, 2011.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL<br><br>James Trey Phillips<br>First Assistant Attorney General<br>Megan K. Terrell<br>Assistant Attorney General<br>Section Chief –Environmental<br>State of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804-9005<br>Telephone: (225) 326-6708 | KANNER & WHITELEY, LLC<br><br>/s/ Allan Kanner<br>Allan Kanner<br>Elizabeth B. Petersen<br>David A. Pote<br>Douglas R. Kraus<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| HENRY DART,<br>ATTORNEYS AT LAW P.C.<br><br>/s/ Henry T. Dart<br>Henry T. Dart<br>Grady J. Flattmann<br>510 N. Jefferson St.<br>Covington, LA 70433<br>Telephone: (985) 809-8093<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | USRY, WEEKS, &<br>MATTHEWS, APLC<br><br>/s/ T. Allen Usry<br>T. Allen Usry<br>1615 Poydras St.<br>Suite 12<br>New Orleans, LA 70112<br>Telephone: (504) 592-4641<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| SHOWS, CALI, BERTHELOT &<br>WALSH, LLP<br><br>/s/ E. Wade Shows<br>E. Wade Shows<br>628 St. Louis Street<br>Baton Rouge, LA 70802<br>Telephone: (225) 346-1461<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | MARTEN LAW, PLLC<br><br>/s/ Bradley M. Marten<br>Bradley M. Marten<br>Linda R. Larson<br>1191 Second Avenue<br>Suite 2200<br>Seattle, WA 98101<br>(206) 292-2600<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| *10-cv-3059 and 11-cv-0516* § | | |

*******************************************************************************

**STATE OF LOUISIANA'S MEMORANDUM IN SUPPORT OF
OBJECTIONS TO AND APPEAL FROM MAGISTRATE JUDGE'S
10/27/11 ORDER REGARDING DISCOVERY [REC. DOC. 4415]**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), who respectfully requests that this Court modify or reject a discovery order entered by Magistrate Judge Sally Shushan in this matter. The discovery order at issue was entered on October 27, 2011, by Magistrate Shushan in connection with an ongoing discovery dispute between the State of Louisiana and the BP Defendants ("BP"). 10/27/11 Order [Regarding Louisiana's Failure to Comply with Orders for Production of Documents] [Rec Doc. 4415] (Exhibit A). The Order established unreasonable deadlines and set out a series of increasingly severe sanctions for an alleged failure by the State of Louisiana to comply with certain additional electronic discovery beyond the reasonable search for responsive information previously conducted by the State and produced pursuant to Phase One discovery. Further, the Magistrate Judge's Order contains the threat of potential dismissal of all or part of the State's claims in the Multi District Litigation ("MDL") proceedings (which are much broader than those pending in

the Limitation Action), which is unprecedented and has no legal basis given the circumstances of Louisiana's discovery efforts to date.

The State of Louisiana has fully complied with legitimate discovery responsibilities but believes that the obligations currently being required of the State are unduly burdensome and not justified under the Federal Rules of Civil Procedure. Pursuant to the Magistrate's 10/27/11 Order, "any appeal of this order shall be filed by Monday, October 31, 2011 at 5:00 p.m." 10/27/11 Order, p. 5 [Rec. Doc. 3382][1]. Accordingly, the State of Louisiana herein objects to and appeals the Magistrate's Order to the extent it establishes unreasonable deadlines and includes the threat of sanctions.

### I. **Appeal of Magistrate Judge's Order**

Magistrate judges are authorized to hear and determine non-dispositive pretrial motions. 28 U.S.C. §636(b)(1)(A) (2011). Parties may appeal the findings of a magistrate judge to the District Court, which may reconsider the orders "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule 72.2. "[W]hen a magistrate judge has obviously misapprehended a party's position, the facts, or the applicable law" a District Court may reverse a Magistrate's order. *Gaffney v. U.S. Dep't of Energy*, No. 98-3772, 2000 WL 1036221, at *2 (E.D.La. July 25, 2000) (Exhibit B); *Kreger v. General Steel Corp.*, No. 07-575 2008 WL 5429607, at *1 (E.D.La. Dec. 30, 2008) (Exhibit C). Under the circumstances presented here, the State's inability to complete

---

[1] Despite awareness of the State's significant and continuing efforts to complete collection and review of possibly relevant materials, the Magistrate's Order placed an expedited schedule for appeal to this Court inconsistent with the Federal Rules of Civil Procedure, which govern the appeals of Magistrate Judge's Orders. Specifically, Rule 72(a) provides a party fourteen days within which to appeal a magistrate's Ruling to the District Court. However, the Magistrate has required that the State file any appeal of this Order within four days of its entry. Such an expedited schedule, especially in light of the fact that the upcoming seven days are crucial in terms of Louisiana's efforts to comply with the Court's timeline, is prejudicial to the State.

2

the additional electronic searches demanded by BP and ordered by the Magistrate Judge within the timelines established in the 10/27/11 Order do not warrant the imposition of monetary sanctions, let alone the potential dismissal of any of the State's claims. There is no basis to believe that anything captured in connection with the supplemental electronic searches required by the Magistrate Judge's September 1, 2011 Order would justify delaying commencement of Phases One and Two of the Limitation Trial.

## II. The State Was Not Made a Party to the Limitations Action Until September 2011 Yet Was Subjected to Extensive Discovery Prior to That Date

The extensive discovery obligations currently imposed upon the State of Louisiana relate to Phases One and Two of the Limitation Action filed by Transocean that is currently pending as one of the cases being coordinated for pretrial proceedings before this Court. *In re: the Complaint and Petition of Triton Asset Leasing in a Cause for Exoneration from or Limitation of Liability,* Civil Action No. 10-cv-2771 ("Limitation Action"). The Limitation Action was commenced by Transocean pursuant to the Limitation of Liability Act of 1851 and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Cases. Under this Rule, Transocean has sought to limit its liability to $26,764,083.00, the value of the *Deepwater Horizon*. All of the State's Oil Pollution Act ("OPA") claims are expressly exempt from this Limitation Action, as confirmed by the Second Amended Order, which was entered in the Limitation Action by Judge Keith Ellison (who presided over the case before it was consolidated with the MDL proceedings) on June 14, 2010. [Rec. Doc. 131] (Exhibit D). This Court has ordered that the Limitation Action will proceed first. Phase One of the Limitation Action (entitled the "Incident Phase") involves issues of liability and allocation of fault among the Limitation Defendants, of which the State is not one. Phase Two involves the "Source Control" efforts – specifically, the efforts to

cap and seal the well. The State of Louisiana has not been sued as a third-party defendant or tendered, pursuant to Rule 14(c), to the Plaintiffs in the Limitations proceedings.

On April 29th of this year, BP and other Defendants filed discovery, including extensive Requests for Production ("RFP") against the State of Louisiana, purportedly seeking information regarding the issues in Phase One of the Limitation Action. At that time, Louisiana was not a party to the Limitation Action. Almost a week later, on May 3, 2011, Louisiana filed a Motion for Leave to file a claim in the Limitation Action, Civil Action No. 10-cv-2771. [Rec. Doc. 439]. However, for five months the Court did not hear or grant Louisiana's Motion. Additionally, the Court did not issue an order detailing the scope of the three phases of the Limitation trial until mid-September. In May, the Defendants reissued their initial discovery requests and the Court set deadlines for the State to respond. Although still not a party to the litigation, the State, consistent with the Magistrate's direction, conducted a reasonable inquiry of its agencies for any information that might be relevant to the issues in Phase One of the Limitation Action and provided this information to Defendants on June 20, 2011, within the deadline established by the Magistrate Judge, with a supplemental production following in August.[2] BP, unsatisfied, pressed the State to conduct additional extensive and overbroad searches of the State's records, email and information.

---

[2] This Court has previously ordered that "[e]ach party shall bear its own costs of production." Pre Trial Order No. 16 [Regarding Production of Documents and Electronic Data] (11/8/10) [Rec. Doc. 686]. If Louisiana, as a non-party had been served with a subpoena requesting these materials it would have been in a position to seek reimbursement of the undue expense associated with the production. *See, e.g.*, *Guy Chem. Co., Inc. v. Ramaco AG*, 243 F.R.D. 310 (N.D. Ind. 2007) (holding that party seeking discovery from a nonparty must pay for the costs of discovery where the request imposes an undue burden and cost). The court in *Guy Chemicals* reasoned, "[n]ot only is it fundamentally unfair for non-parties to bear the significant litigation costs of others, but also if this Court were to allow litigating parties . . . to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy." *Id.* at 313. Given that Louisiana was not a formal party to the Limitation Action until a little more than a month ago and Louisiana's good faith efforts to produce materials, at its own expense, in response to reasonable discovery requests, the imposition of sanctions would be improper.

4

The State objected to BP's demand that it conduct additional searches and, as the Federal Rules allow, argued that the expense (projected to be several millions in public funds) was not justified in light of the improbability that the State possessed additional information relevant in any way to Phases One and Two of the Limitation Action. The State's objection to the discovery under these circumstances was well-founded, because considerations of costs in light of anticipated benefit are contemplated by Federal Rules of Civil Procedure 26(b)(2)(B) and (C)(iii).[3] BP filed a Motion to Compel on August 22, 2011. [Rec. Doc. 3795] (Exhibit F). BP argued that the State's expense of these funds was appropriate, and the Magistrate Judge agreed, finding that the Requests for Production were not overbroad and concluding that there was no basis to object to the discovery on the ground that the cost of production outweighed the benefit. *See* BP's Motion to Compel [Rec. Doc. 3795] (Exhibit F); 9/1/11 Order [Rec. Doc. 3882]. The State Opposed BP's Motion to Compel, arguing that the search already conducted by the State was sufficient and that the requirement that the State conduct electronic searches in the manner prescribed by BP was unduly burdensome and that the expense was not justified in light of the likely absence of additional information relevant to Phase One of the Limitation Trial. *See* State of Louisiana's Response to BP's Motion to Compel dated 8/29/2011 [Rec. Doc. 3915] (Exhibit G). Following the briefing on BP's Motion to Compel,[4] the Magistrate issued an order granting in part and denying in part BP's request. The Order required that the State conduct additional complex and extensive searches within the electronically stored information ("ESI") of over

---

[3] Rule 26(b)(2)(B) provides in pertinent part that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Further, Rule 26(b)(2)(C)(iii) provides that "the court must limit the extent of discovery [if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *See, e.g., Southern Capitol Enters. v. Conseco Servs., LLC*, No. 04-705-JJB-SCR, 2008 WL 4724427 (M.D. La. Oct. 24, 2008) (holding that discovery was limited pursuant to Rule 26(b)(2)(C)(iii)). (Exhibit E)
[4] BP's Reply in Support of its Motion was filed on 8/22/11 [Rec.Doc. 3910] (Exhibit H).

5

fifteen State agencies. The Magistrate reasoned that the ESI "search is required to ensure that there are no other documents in the possession of Louisiana relevant to Phase One." 9/1/11 Order, p. 4 [Rec. Doc. 3882].

The State, although disagreeing with the Magistrate Judge's requirement that Louisiana conduct the extensive searches of electronic information under these circumstances, nonetheless attempted to comply with the Court's directives. The Court's initial Order compelling discovery from the State and its Order following Louisiana's request for additional time within which to complete the task required of it were both issued prior to the State actually being made a party to the Limitation Action. 9/1/11 Order [Regarding BP's Motion to Compel Discovery from Louisiana (Rec. Doc. 3795)] [Rec. Doc. 3882] (Exhibit I); 9/9/11 Order [Regarding Louisiana's Motion for Reconsideration (Rec. Doc. 3956)] [Rec. Doc. 3965][5] (Exhibit J). In fact, the Magistrate Judge's initial Order compelling discovery erroneously stated that the State of Louisiana was a "party to the February 2012 trial. " 9/1/11 Order, p. 5. [Rec. Doc. 3882]. It was not until September 22, 2011, that the Court granted Louisiana leave to file a claim in the Limitation proceedings. [Rec. Doc. 461] (Exhibit K). At this time, both the Motion to Compel and the Order on Louisiana's Motion for Reconsideration had been issued. If the Court had any concerns about additional discovery from Louisiana potentially jeopardizing the start of Phase

---

[5] The State sought reconsideration of the Magistrate Judge's 9/1/11 Order, because although it provided relief in terms of a limiting of the date range sought by BP, the volume of information still subject to electronic collection, search and review prior to production to BP rendered compliance with the deadline of September 23, 2011 impossible. The Magistrate's Order on Reconsideration provided the State with additional time within which to undertake the review required by the September 1, 2011 Order. Concurrent with the State's Motion for Reconsideration, the State filed an appeal of the Magistrate's September 1, 2011 Order, detailing the State's need for additional time within which to both collect the electronic files and conduct the searches as required by the Magistrate's Order. Motion for Appeal/Review of Magistrate Judge's Decision, filed 9/8/11 [Rec. Doc. 3950] On September 9, 2011, this Court, in light of the Magistrate's Order following Louisiana's request for reconsideration, denied the State's appeal as moot. 9/9/11 Order [Rec. Doc. 3976].

One of the Limitation Trial, it could have denied Louisiana's Motion for Leave to file a claim in that proceeding.

In part due to the uncertainties regarding the substance of the Limitation trial plan and in abundance of caution, in May of this year, Louisiana filed its Motion for Leave to file a claim in the Limitation Proceedings, Civil Action No. 10-cv-2771. [Rec. Doc. 439]. During this time the scope of the Limitation Trial was the subject of discussion among the Liaison Counsel appointed by the Court[6] and briefing. The Court's Order detailing the scope of the three phases of the Limitations trial plan was issued in September. *See* Pretrial Order No. 41/Case Management Order No. 3 (Limitation Trial Plan) (9/14/11) [Rec. Doc. 4033], as amended on September 21, 2011 [Rec. Doc. 4083] (Exhibit L). The Magistrate Judge's 10/27/11 Order erroneously suggested that all parties should have known of the content and scope of the Limitation's Trial Plan by August 12, 2011. The Magistrate cites Rec. Doc. 3727, which is the Trial Plan proposed by Anadarko in July of this year – one of many submissions by many parties in the MDL proceedings – that was discussed in the context of the trial planning meetings among Liaison Counsel with the Court. In Court on August 12, 2011, the Court reported, as reflected in the minute entry to which the Magistrate Judge refers, that it would largely adopt the Trial Plan proposed by Anadarko, which contains the following description relative to Phase One: "Phase 1, focusing on events leading up to and including the explosion on April 2010."[7] If these

---

[6] Louisiana has not been appointed as a Liaison.

[7] The lack of unique information within Louisiana's custody and control regarding the issues in Phases One and Two are supported by the factual scenario present in this case. As previously described to Defendants and the Magistrate Judge, Louisiana observed and prepared for potential impacts resulting from the explosion, sinking and fire but did not participate in the emergency response to the disaster. *See* Louisiana's Response in Opposition to BP's Motion to Compel, submitted 8/29/11 [Rec. Doc. 3915]. This was confirmed in the materials the State has produced to date, *i.e.*, that although the State stood ready with vessels and personnel to assist, the U.S. Coast Guard did not utilize these assets in the context of the emergency search and rescue efforts. Louisiana Production, Bates Range: LA-ST 86-240. Additionally, the notification (received by the Louisiana State Police at 2:18 pm on April 21, 2010) provided by BP regarding the initial release of oil confirmed that BP represented to the State that it did

7

fleeting references are considered adequate enough to sufficiently advise parties of the scope and implications of the Phases of the Limitation Action, then it follows that the State of Louisiana's good faith and reasonable search for information regarding Phases One and Two of the Limitation Action should also be sufficient. In other words, prior to the issuance of the Order defining the Phased Limitation Trial and prior to Louisiana being made a party to the Limitation Action, the State of Louisiana conducted a reasonable search and determined that it was not likely to have any additional information relevant to Phases One and Two.

Even with the issuance of the Court's Limitation Trial Plan, there are substantial uncertainties surrounding the substance and implications of the Limitation Trial upon the State's OPA claims, which are legally exempt from the Limitation Action. *See* State of Louisiana's Request for Clarification of Amended Pretrial Order No. 41/Case Management Order No. 3, filed 10/3/11 [Rec. Doc. 4186] (Exhibit M) (requesting in part clarification on the scope of Phase Three, which, as outlined in the Limitation Trial Plan, would appear to subject the State to additional expansive discovery obligations prematurely). Additionally, although the Court granted the State's Motion for Leave to file a claim in the Limitation Action, the State's ability to participate in the proceeding has been severely limited by this Court's prior Orders, which, for example, preclude the State of Louisiana from issuing any discovery on any Defendant and preclude Louisiana from presenting evidence or otherwise affirmatively participating in the trial under the Limitation Trial Plan as drafted. In light of these circumstances, requiring this expansive and costly discovery effort of Louisiana at this time and the imposition of sanctions

---

"not expect any shoreline impact at this time. . . [and that BP is] working with the MMS and Coast Guard for Response Actions." Louisiana Production, Bates LA-ST 91-92. Additionally, the Mineral Management Service ("MMS") (now the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE")), not the State, regulates deepwater drilling such as that which was being conducted by BP and Transocean on the *Deepwater Horizon*. The only data the State received in connection with the application to drill was the request for consistency determination pursuant to the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq.* This information was produced in June. Louisiana Production, Bates Range: LA-ST 1-72.

upon the State for an inability to complete its efforts under the deadlines imposed in the Magistrate Judge's 10/27/11 Order, is unreasonable.

### III. Louisiana's Efforts to Comply with the Magistrate Judge's Discovery Orders

The State, very soon following the *Deepwater Horizon* incident, undertook an extensive discovery preservation effort. In addition, following the receipt of the discovery requests from Defendants, the State sought to collect any information regarding the issues in Phase One that was unique to Louisiana. The State's objections to the breadth of BP's discovery requests, in connection with Phase One of the Limitation proceedings, were made in good faith in light of what was likely to be limited additional information relating specifically to the cause of the explosion and sinking of the *Deepwater Horizon* (not already produced in the context of these proceedings or otherwise publicly available). The State's efforts to narrow the discovery were motivated by an attempt to balance the demand on the public fisc by using and exhausting existing manpower and technological resources. The additional electronic searches that BP insists the State of Louisiana must conduct are not only overbroad in their terms, they are burdensome given the methodology required to implement the searches. These forms of searches simply cannot be conducted through traditional software such as Microsoft Outlook, Lotus Notes, Groupwise, Worlddox and other electronic storage and processing platforms. For example, one of the over 60 electronic searches proposed by BP is as follows:

> (MC252 OR "Mississippi Canyon Block 252" OR "Macondo") AND ("API Well Design" "Exploration Plan" OR "EP" OR "Long String" OR "Liner" OR ("Tie Back" NEAR "Casing") OR "LDS" OR "Lock Down Sleeve" OR "Cement Plug" OR "Surface Plug" OR ("Spacer" NEAR ("Drilling" OR "Mud" OR "Riser" OR "Negative" Or "Calculations") OR "Centralize*" OR "Centering" OR "Casing Design" OR "Casing Program" OR "Isolating Potential Flow Zones" OR "Tubular" OR "Drilling Flui*" OR "Drilling Mud" OR "Isolating Potential Flow Zones" OR "Borehol*" OR "Hydrostatic Pressure" OR "Formation Fluid" OR

9

>  "Formation Damage" OR "Drill String" OR "Polymer" OR "Bentonite" OR "Water-Based Mud" OR "Viscosity" OR "Thixotropic" OR "Permeability" OR "Mud Filtrate" OR "Capping" OR "Plugging" OR "Foam Cement" OR "Foamed Cement" OR "mud gas separator" OR ("divert*" NEAR "pipe") OR "acoustic trigger" OR "shutoff valve" OR ("TA" OR "Temporary Abandonment") NEAR ("Guidelin*" OR "Procedur*" OR "Polic*" OR "Practic*" OR "Standar*" OR "Directi*" OR "Repor*" OR "Summar*" OR "Analys*")

BP's Search Criteria for RFP 15 (Including a date range of 2/1/2009 through 4/13/2011), Exhibit A to Louisiana's Response to BP's Motion to Compel [Rec. Doc. 3795] (Exhibit G). To the extent the search terms for other RFPs are not as complicated as those described above, they are overbroad, because they include terms contained on a majority of documents, such as State employee time slips or decontamination reports for those vessels the State utilizes in its efforts to prevent oil from reaching shore and remediating the effects when it does: "MC252" OR "Mississippi Canyon Block 252" OR "Macondo." BP's Search Criteria for RFP 1 (Including a date range of 2/1/2009 through 4/13/2011).

As such, compliance with the Court's Orders as structured (which required additional efforts beyond Louisiana's good faith response to the discovery served upon it) necessitated the hiring of an outside vendor to collect and process the terabytes of material the State is required to review. It would have been inappropriate to ask for a dedication of millions of dollars of public funds to launch a discovery effort in a case in which the State was not a party. Louisiana has faced budget challenges over the past two years, and any extraordinary expenses must be justified. State law also imposes other auditing and procurement constraints. Within these constraints, the State is responding to the discovery propounded, while also upholding the obligation to maintain critical services to the public. The State, however, began the process in June of hiring of an outside vendor to handle the State's collection and processing of electronic

data. Efforts to secure the retention of a contractor qualified to conduct this ESI project also began in June.[8]

Ultimately, the retention of an ESI vendor was authorized through emergency procurement procedures pursuant to the Governor's Executive Order. Even using emergency procurement procedures, it still took approximately two weeks, and several meetings, to identify a source of funding for this contract, because Louisiana law requires that a source of funding be identified prior to the execution of any contract. Additionally, although the contract for the State's ESI vendor was not formally executed until late August, discussions with the vendor, including meetings with agencies to evaluate their systems so that pricing and scopes of work could be prepared, began in mid-July.[9] Under these circumstances, where Louisiana was not yet even a party to the litigation, the State was not in a position (and could not have been expected) to justify such an exorbitant expense of public funds in light of what was likely to be minor and irrelevant information relating to Phases One and Two of the Limitation Action.

### IV. Monetary or Other Sanctions are Inappropriate Under these Circumstances

In light of the Court's Orders and BP's continued insistence, the efforts to collect, process and review the information from those State agencies that have been impacted by, or have had involvement with, the *Deepwater Horizon* incident has continued at an expedited pace and at

---

[8] The Division of Administration initially believed that a public Request for Proposals might be required, a process which would likely have taken sixty days. *See* La. R.S. 39:196 *et.seq.* and LAC 34, Part 1, Sec. 5501 *et.seq.* Under La. R.S. 39:198(2)(a), procurement of direct order contracts of data processing equipment, related services, and software must be through competitive sealed bidding. Under La. R.S. 39:197(8), "emergency acquisitions or rentals of data processing" means "a method of procurement utilized when there exists a threat to the public health, welfare, safety or public property."

[9] In addition to these activities during the period between April and August, the State agencies with the highest volume of documents (Louisiana Department of Environmental Quality ("DEQ"), Department of Wildlife and Fisheries ("DWF"), Department of Public Safety ("DPS"), and the Louisiana Oil Spill Coordinator's Office ("LOSCO")) were critical responders facing an unprecedented flooding event on the Mississippi River (and its aftermath), Tropical Storm Lee (and hurricane season generally), a drought, and an un-permitted chemical release and fish kill. These same agencies are heavily involved in the ongoing Natural Resource Damage Assessment process as well.

substantial cost. While the State has continued its costly efforts to comply with BP's demands and the Magistrate Judge's Orders, these efforts have only confirmed that the State possesses almost nothing other than anecdotal information or information already in the public domain or in BP's possession related to the disaster and the efforts to seal the well.[10] There is no evidence in the record that supports the notion that BP could in any way be prejudiced in connection with the preparation of its expert reports for the Phase One trial and no evidence supporting the notion that Louisiana's electronic searches will produce anything more than the anecdotal information the searches have located thus far.

In light of this, the continued claims of prejudice made by BP regarding the preparation of its experts reports relating to the cause of and liability for the explosion, fire and sinking of the *Deeepwater Horizon* ring hollow. Additionally, as initially suggested by the State, the Magistrate has ordered that the State may not introduce anything not produced prior to September 23, 2011 into evidence at the Phase One trial. 9/9/11 Order ¶4 [Rec. Doc. 3965]. Under these circumstances, the imposition of sanctions is an inappropriate remedy and the potential dismissal of any of the State's claims would be a highly disproportionate result. In *F.D.I.C. v. Connor*, the Court noted that the law favors resolution of a case on the merits, and if a court uses dismissal as a sanction for violating a discovery order it should do so only when:

> (1) the refusal to comply results from bad faith or willfulness and is accompanied by delay or contumacious conduct; (2) the violation is attributable to the client instead of the attorney; (3) the violating conduct substantially prejudices the other party; and (4) a less severe sanction would not achieve the same result.

---

[10] The Magistrate Judge's 9/9/11 Order acknowledged that "Louisiana's Phase One document production should be much more limited than its Phase Two document production" 9/9/11 Order [Rec. Doc. 3965].

20 F.3d 1376, 1380-81 (5th Cir. 1994). The circumstances presented here simply do not justify such a sanction. The State of Louisiana has conducted a reasonable search for discoverable and relevant information and produced responsive information to BP by August of 2011. Additionally, the State raised (and maintains) a good faith objection to the imposition of a requirement that it conduct additional electronic searches at great expense, and Louisiana has made all reasonable efforts to comply with the Court's Orders. Moreover, the dismissal of any claims that are not part of the Limitation Action – for example, all of the State's OPA claims – would be an abuse of discretion.

The only other plaintiff that has been required to undertake the ESI collection and searches in the manner and at such expense as required of Louisiana is the United States. However, the potential for the State of Louisiana to have much relevant information in the context of discovery related to Phases One and Two of the Limitation Action is distinguishable from that of the United States. As an initial matter, the United States has been made a party defendant in connection with the Limitation Action. While Louisiana disagrees with Defendants' efforts to minimize their liability for the consequences of this disaster by blaming the United States,[11] the fact remains that the United States and its agencies are in a distinguishable position to the State of Louisiana with respect to both the regulation of deepwater drilling as well as the efforts to cap the well. Indeed, this Court, at BP's urging, has concluded that the State does not have authority to regulate or otherwise control activities outside of its territorial waters. "Thus, to the extent state law could apply to conduct outside state waters, in

---

[11] The immunity of the United States from suit in this context is currently the subject of pending motions. *See* United States' Motion to Dismiss the Third-Party Complaint and Cross-Claim filed against it by Transocean, as well as Transocean's Rule 14(c) tender to Plaintiffs (filed 5/19/11) [Rec. Doc. 2410]; Reply of the United States regarding Motion to Exclude Evidence (filed 10/31/11) [Rec. Doc. 4442](reasoning that any claim for equitable recoupment has no place in a strict liability case and that the United States is immune from suit for its post spill response efforts).

13

this case it must 'yield to the needs of a uniform federal maritime law.'" Order and Reasons [As to Motions to Dismiss the B1 Master Complaint] (8/26/11) [Rec. Doc. 3830]. In addition to regulating deepwater drilling, the United States created the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling designed specifically to "examine the relevant facts and circumstances concerning the root causes of the Deepwater Horizon oil disaster." Executive Order No. 13543, National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, 75 Fed. Reg. 29,397, May 21, 2010. The Commission convened task forces and a number of hearings geared towards that end. Additionally, BOEMRE and the U.S. Coast Guard convened a Joint Investigation Team to investigate the explosion, loss of life, and resulting oil spill.[12] The State, as previously represented to this Court, did not conduct independent studies regarding deepwater drilling regulation or the root causes of the disaster. As such, the United States is in a position to have substantially more discoverable information regarding the incident, the emergency response and the efforts to seal the well.

BP, for example argued in opposition to a motion seeking a temporary restraining order (relating to the impact of controlled burns on sea turtles) that: "[u]nder the direction of the federal government since the April 20, 2010 incident at the Deepwater Horizon facility, BP is engaged in an around-the-clock effort to stop the subsea oil spill at Mississippi Canyon Block 252 and to remediate its effects." BP's Memorandum in Opposition to Motion for Temporary Restraining Order (7/1/10), p. 5 [Rec. Doc. 167]. Similarly, BP argued in its Motions to Dismiss the claims of private parties that:

---

[12] Joint Department of the Interior and Department of Homeland Security Statement of Principles and Convening Order Regarding Investigation Into the Marine Causality, Explosion, Fire, Pollution, and Sinking of Mobile Offshore Drilling Unit Deepwater Horizon, With Loss of Life in the Gulf of Mexico 21-22 April 2010, dated April 27, 2010, http://www.dhs.gov/xlibrary/assets/deepwater_horizon_investigation.pdf.

> Through the Unified Command, the Federal On Scene Coordinator ("FOSC"), and the National Incident Command ("NIC"), the United States has, in minute detail, directed and overseen this Response to the oil spill. From the beginning of the incident on April 20, 2010, through July 15, 2010, at which time BP successfully and completely stopped the flow of oil into the Gulf of Mexico, and continuing to this day, the Unified Command and its member federal and state agencies have actively directed a military-style operation to contain and ultimately halt the subsea oil spill and remediate its effects.
>
> Hand-in-hand with National Incident Command and the fourteen federal agencies that make up the Unified Command, BP engaged in a full-scale effort to secure the well, capture oil escaping from the marine riser, contain the spill on the surface, and man response activities onshore.

BP's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(b)(7) the D1 Master Complaint (2/28/11), p. 5  [Rec. Doc. 1441].

As described more fully in the State's Opposition to BP's Motion to Compel, the State was served with discovery requests from BP that extend far beyond this phase of the Limitation proceeding and, in effect, seek all documents and information that reference BP, the *Deepwater Horizon*, Macondo, Transocean, etc., and that are in the possession of virtually every State agency.  State of Louisiana's Opposition to BP's Motion to Compel [Rec. Doc. 3915].  The discovery requests, and more importantly the search terms, were not limited to the issues in the upcoming Phase One of the Limitation Trial.  Louisiana engaged BP in an effort to limit the discovery in a way that would allow for the efficient use of resources, while still producing the information they needed and sought.  These discussions were taking place during May and June after the receipt of the discovery.  During this time, the Louisiana Department of Natural Resources, DEQ, DWF, DPS, as well as LOSCO were actively searching for responsive documents, which were turned over to the Defendants in June with a supplemental production in August.  The State believed at that time, and continues to believe, that those are the only

materials related to and even potentially relevant to the liability issues in Phase One. During this time, the State also became aware of technical limitations of its various computer systems, which are not capable of implementing the types of complex searches in the manner BP was requesting. Simply put, BP sought to impose discovery obligations on the State of Louisiana that are premature and unwarranted in light of their expense.

BP previously argued to the Magistrate that its Phase One discovery is limited to the collection of information necessary for the Defendants to prepare their expert reports in the context of the determination of the allocation of fault among them (*i.e.,* the Limitation Action) and confirmed that it had issued the April 29, 2011, discovery in an effort to avoid surprise. *See* Exhibit G, p. 2. However, as described more fully in the State's Opposition to BP's Motion to Compel, the discovery obligation created by BP's requests cast a much larger net than Phase One, especially when viewed in light of the State's circumstances outlined in its original opposition and herein.

### V. Conclusion

Under the circumstances described above, the imposition of sanctions, either monetary or the dismissal of claims, for an alleged failure by the State to complete additional unreasonable and costly electronic discovery searches is not warranted. These discovery obligations were imposed in a proceeding to which the State was not formally made a party until September of this year (but nonetheless made reasonable efforts to respond). As such, the imposition of sanctions of any kind would be erroneous and constitute an abuse of discretion. Accordingly, the State of Louisiana requests that this Court modify or reverse those portions of the Magistrate Judge's Order that set forth potential sanctions.

Dated this 31st day of October, 2011.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL<br><br>James Trey Phillips<br>First Assistant Attorney General<br>Megan K. Terrell<br>Assistant Attorney General<br>Section Chief –Environmental<br>State of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804-9005<br>Telephone: (225) 326-6708 | KANNER & WHITELEY, LLC<br><br>/s/ Allan Kanner<br>Allan Kanner<br>Elizabeth B. Petersen<br>David A. Pote<br>Douglas R. Kraus<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| HENRY DART,<br>ATTORNEYS AT LAW P.C.<br><br>/s/ Henry T. Dart<br>Henry T. Dart<br>Grady J. Flattmann<br>510 N. Jefferson St.<br>Covington, LA 70433<br>Telephone: (985) 809-8093<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | USRY, WEEKS, &<br>MATTHEWS, APLC<br><br>/s/ T. Allen Usry<br>T. Allen Usry<br>1615 Poydras St.<br>Suite 12<br>New Orleans, LA 70112<br>Telephone: (504) 592-4641<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| SHOWS, CALI, BERTHELOT &<br>WALSH, LLP<br><br>/s/ E. Wade Shows<br>E. Wade Shows<br>628 St. Louis Street<br>Baton Rouge, LA 70802<br>Telephone: (225) 346-1461<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | MARTEN LAW, PLLC<br><br>/s/ Bradley M. Marten<br>Bradley M. Marten<br>Linda R. Larson<br>1191 Second Avenue<br>Suite 2200<br>Seattle, WA 98101<br>(206) 292-2600<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing State of Louisiana's Objections to and Appeal from the Magistrate Judge's 10/27/11 Order [Regarding Louisiana's Failure to Comply with Orders for Production of Documents] [Rec Doc. 4415] has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of October, 2011.

          Kanner & Whiteley, L.L.C.

           /s/ Allan Kanner
          Allan Kanner
          a.kanner@kanner-law.com