```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL        )     MDL NO. 2179
BY THE OIL RIG           )
"DEEPWATER HORIZON" IN    )     SECTION "J"
THE GULF OF MEXICO, ON    )
APRIL 20, 2010           )     JUDGE BARBIER
                         )     MAG. JUDGE SHUSHAN
```

```
                *****************
                    VOLUME 2
                *****************
```

        Deposition of Henry Matthew Thierens, taken at
Kirkland & Ellis International, 30 St. Mary Axe, 22nd
Floor, London EC3A 8AF, England, United Kingdom, on the
10th of June, 2011.

PURSUANT TO CONFIDENTIALITY ORDER

Page 423

Page 425

1    Q.   As you sit here today, Mr. Thierens, are you
2  aware of any evidence that any member of the DEEPWATER
3  HORIZON crew was indifferent or simply didn't care
4  about the safety of other human beings?
5          MR. SAFER:  Objection, foundation.
6    A.   My observations from visits that I had to the
7  HORIZON didn't indicate that.
8    Q.   (By Mr. Johnson) I -- and I appreciate that.
9  And we're going to get to that in just a little bit,
10  but of -- of any other evidence -- are you aware of any
11  other evidence, in -- including your visits or anything
12  else that would suggest that any member of the
13  DEEPWATER HORIZON crew was indifferent or didn't care
14  about the safety of others?
15          MR. SAFER:  Objection, foundation.
16    A.   I -- I'm not aware of any.
17    Q.   (By Mr. Johnson) Okay.  Are you aware of any
18  evidence that any member of the DEEPWATER HORIZON crew
19  was indifferent about care toward the environment?
20          MR. SAFER:  Objection, foundation.
21    A.   I'm not aware of anything.
22    Q.   (By Mr. Johnson) Okay.  Are you aware of any
23  evidence that any member of the DEEPWATER HORIZON crew
24  deliberately wanted to injure another human being?
25          MR. SAFER:  Objection, foundation.

Page 426

1    A.   I'm not aware of that.
2    Q.   (By Mr. Johnson) Okay.  Are you aware of any
3  evidence that any member of the DEEPWATER HORIZON crew
4  deliberately wanted to damage the environment in any
5  way?
6          MR. SAFER:  Objection, foundation.
7    A.   I'm not aware of that.
8    Q.   (By Mr. Johnson) Okay.  Are you aware of any
9  member of the DEEPWATER HORIZON crew acting with malice
10  toward other human beings?
11          MR. SAFER:  Objection, foundation.
12    A.   I'm not aware of that.
13    Q.   (By Mr. Johnson) Okay.  Are you aware of any
14  member of the DEEPWATER HORIZON crew acting with malice
15  toward the environment, sir?
16          MR. SAFER:  Objection, foundation.
17    A.   I'm not aware of that.



PURSUANT TO CONFIDENTIALITY ORDER

a99fd9ca-d4da-4dbf-80a0-3f1d18931638

Page 427



16    Q.  Do you recall making a trip to the DEEPWATER
17  HORIZON in November of 2007?
18    A.  No, I don't.
19    Q.  I'll -- I'm going to represent to you -- and
20  I've got a -- a POB summary here that indicates you
21  were onboard in November of 2007, and you may not
22  remember the time frame.  You wouldn't have any reason
23  to dispute that, would you, sir?
24        MR. SAFER:  Objection, foundation.
25    A.  Yeah, I made several visits to the HORIZON --

Page 428

1    Q.  (By Mr. Johnson) Okay.
2    A.  -- during my tenure, and I -- I -- I don't
3  recall the dates.
4    Q.  All right.  Fair enough.  On those visits, you
5  stayed overnight, slept on the rig, didn't you, sir?
6    A.  On -- certainly on some of those visits, I
7  did, yes.
8    Q.  And when you arrived on the rig, you
9  participated in a -- a safety orientation, did you not,
10  sir?
11    A.  Yes.
12    Q.  Okay.  And you felt like it was professionally
13  conducted during those times?
14    A.  The -- the -- yes, I did.
15    Q.  Okay.  And you were acquainted, during those
16  orientations, with the emergency and evacuation
17  procedures; isn't that true, sir?
18    A.  That's correct.
19    Q.  Felt like those were sufficient so that you
20  could fall asleep onboard and feel comfortable with
21  the -- the procedures that were in place, did you not,
22  sir?
23        MS. KARIS:  Object to form.
24    A.  I don't recall how I felt, but --
25    Q.  (By Mr. Johnson) Yeah.

Page 429

1    A.  -- the procedures were comprehensive.
2    Q.  You would recall it if you stayed up all night
3  worried about the safety procedures that you went over,
4  because you didn't feel like they were inadequate,
5  though.  You would recall that, wouldn't you, sir?
6        MS. KARIS:  Object to form.
7    A.  If -- if I'd have found the safety procedures
8  were inadequate when they were given to me, I'd have
9  questioned it at the time.
10    Q.  (By Mr. Johnson) Fair enough.  And you didn't
11  do that, or you have no memory --
12    A.  No.
13    Q.  -- as you sit here today, of doing that,
14  correct?
15    A.  No, I don't.
16    Q.  Okay.  And you had no reason to relay to
17  anyone at Transocean that those policies and procedures
18  were deficient in any way; is that right?
19        MR. SAFER:  Objection --
20    A.  The --
21        MR. SAFER:  -- foundation.
22    A.  At -- at the time, I had no reason to suspect
23  that any of the safety processes and practices that
24  were told to us at the induction --
25    Q.  (By Mr. Johnson) Yes, sir.

Page 430

1    A.  -- were deficient in any way.
2    Q.  And -- and that's the same -- that is --
3  that -- that was true on all of the trips you made to
4  the DEEPWATER HORIZON, correct?
5    A.  On -- yeah, I think on every trip I did to the
6  HORIZON, as with every rig, there would always be a
7  safety induction.
8    Q.  Yeah.  And you felt comfortable with those
9  on -- on every trip to the DEEPWATER HORIZON, such you
10  didn't report any deficiencies to anyone at Transocean,
11  correct?
12        MS. KARIS:  Object to form.
13    A.  Correct.  I would have reported deficiencies.
14    Q.  (By Mr. Johnson) And you did not?
15    A.  Not that I recall.
16    Q.  Okay.  Do you recall being on the rig in
17  December of 2009, sir?
18    A.  I know I was on the rig around that time
19  frame, but I -- I can't recall if it was December or
20  November.
21    Q.  Fair enough.  And the rig -- it wasn't an
22  out-of-service period.  The rig was in operations at
23  the time, correct?
24    A.  I -- I can't remember.
25    Q.  Okay.  And in that December visit, you stayed

13  (Pages 427 to 430)

PURSUANT TO CONFIDENTIALITY ORDER

Page 431

1   overnight, did you not, sir?
2       A.   Yes, I did.
3       Q.   Okay.  And the same question as earlier:  You
4   received a safety orientation when you boarded the rig,
5   correct?
6       A.   Very much so.
7       Q.   Okay.  You get a tour or walk-around of the
8   rig at the time?
9       A.   I -- at -- after the safety induction --
10      Q.   Yes, sir.
11      A.   -- yeah, part of my visit, and -- and a -- and
12  a major part of all of my visits would be a safety
13  tour, yes.
14      Q.   Had an opportunity to meet some of the
15  Transocean rig crew members, did you not, sir?
16      A.   I did.
17      Q.   Okay.  Did you perceive the men and women that
18  you met, that they were competent and hard-working
19  people?
20          MR. SAFER:  Objection, foundation.
21      A.   I've got no grounds to establish their
22  competency.
23      Q.   (By Mr. Johnson) Okay.
24      A.   But for the purpose of the visit, the
25  walk-around, talking to people, were they cognizant of

Page 432

1   what their duties were, were they ab -- able to answer
2   questions that I may have around safety- or job-related
3   issues, I didn't -- I don't recall any -- any issues
4   with anyone.
5       Q.   Okay.  And it's fair to say from your
6   perception of your visit in late 2009, you had no
7   concerns about safetiness or seaworthiness of the
8   vessel; isn't that true, sir?
9       A.   I -- I don't recall exactly what I concluded
10  from that visit, but I don't recall anything that would
11  remind me of anything significant in that regard.
12      Q.   There was nothing that you learned about the
13  safety processes, procedures, or the seaworthiness of
14  the vessel that caused you to report that there were
15  any deficiencies, to Transocean; that's true, is it
16  not?
17      A.   I -- I -- I didn't see any.
18      Q.   Okay.  And you didn't report anything to
19  Transocean, right?
20      A.   I don't recall reporting anything.

PURSUANT TO CONFIDENTIALITY ORDER

a99fd9ca-d4da-4dbf-80a0-3f1d18931638

763

```
1
2          I, HENRY MATTHEW THIERENS, have read the
3   foregoing deposition and hereby affix my signature that
4   same is true and correct, except as noted on the
5   attached Amendment Sheet.
6                              [signature] July 21 2010
7
               HENRY MATTHEW THIERENS
8
9
    THE STATE OF                  )
10
    COUNTY OF                     )
11
12          Before me,                        , on
    this day personally appeared HENRY MATTHEW THIERENS,
13  known to me (or proved to me on the oath of
                              or through            )
14  to be the person whose name is subscribed to the
    foregoing instrument and executed the same for the
15  purposes and consideration therein expressed.
            GIVEN UNDER my hand and seal of office this
16      day of                  , 2011.
17
18
                  Notary Public in and for
19                The State of
20
21
22
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL      ) MDL NO. 2179
**BY THE** OIL RIG       )
"DEEPWATER HORIZON" IN  )   SECTION "J"
THE GULF OF MEXICO, ON   )
APRIL 20, 2010       ) JUDGE BARBIER
                     ) MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of JAY THORSETH, taken at Kirkland
& Ellis International, 30 St. Mary Axe, 22nd
Floor, London EC3A 8AF, England, United Kingdom,
on the 20th of September, 2011.

**2**

```
 1      A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
       Mr. Ervin A. Gonzalez
       Mr. Jeff J. Keiser
 4     COLSON, HICKS EIDSON
       600 Carondelet Street, Rm 810
 5     New Orleans, Lousiana 70130
 6
     APPEARING FOR BP, INC.:
 7     Mr. Christopher W. Keegan
       KIRKLAND & ELLIS
 8     555 California Street
       San Francisco, California  94104
 9
       Ms. Leslie S. Garthwaite
10     KIRKLAND & ELLIS
       300 North LaSalle
11     Chicago, Illinois  60654
12
     APPEARING FOR THE WITNESS, JAY THORSETH:
13     Mr. Jim E. Lavine
       Mr. Kyle Sampson
14     ZIMMERMANN, LAVINE, ZIMMERMANN
         & SAMPSON, P.C.
15     770 South Post Oak Lane, Suite 620
       Houston, Texas 77056
16
17   APPEARING FOR TRANSOCEAN:
       Mr. Daniel Johnson
18     Ms. Stephany LeGrand
       Mr. Steven L. Roberts
19     SUTHERLAND ASBILL & BRENNAN
       1001 Fannin, Suite 3700
20     Houston, Texas  77002-6760
21
22   APPEARING FOR ANADARKO PETROLEUM COMPANY:
       Mr. Tony Forte
       BINGHAM MCCUTCHEN
23     399 Park Avenue
       New York, New York 10022-4689
24
       Warren Anthony Fitch
25     BINGHAM MCCUTCHEN
```

**3**

```
 1     2020 K Street, Northwest
       Washington, D.C. 20006-1806
 2
 3   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
       Mr. Thomas Ganucheau
 4     BECK, REDDEN & SECREST
       One Houston Center
 5     1221 McKinney Street, Suite 4500
       Houston, Texas  77010-2010
 6
 7   APPEARING FOR WEATHERFORD:
       Mr. Joseph J. Lowenthal, Jr.
 8     JONES, WALKER, WAECHTER, POITEVENT,
         CARRERE & DENEGRE, LLP
 9     201 St. Charles Avenue
       New Orleans, Louisiana  70170
10
11   APPEARING FOR M-I SWACO:
       Mr. John C. Funderburk
12     MORGAN, LEWIS & BOCKIUS, LLP
       1000 Louisiana Street, Suite 4000
13     Houston, Texas 77002-5006
14
15   APPEARING FOR HALLIBURTON:
       Mr. Donald E. Godwin
       Ms. Stefanie K. Major
16     Mr. James E. Johanns
       GODWIN RONQUILLO
17     1331 Lamar, Suite 1665
       Houston, Texas  77010-3133
18
19   APPEARING FOR DRIL-QUIP, INC.:
       Mr. C. Dennis Barrow, Jr.
20     WARE, JACKSON, LEE & CHAMBERS
       America Tower, 42nd Floor
21     2929 Allen Parkway
       Houston, Texas 77019-7101
22
23   APPEARING FOR THE UNITED STATES:
       Mr. A. Nathaniel Chakeres
24     U.S. DEPARTMENT OF JUSTICE
       ENVIRONMENTAL & NATURAL
25     RESOURCES DIVISION
```

**4**

```
 1     601 D Street, N.W.
       Washington, D.C.  20004
 2
       Ms. Malinda Lawrence
 3     U.S. DEPARTMENT OF JUSTICE
       TORT BRANCH, CIVIL DIVISION
 4     1425 New York Avenue, N.W.
       Suite 10100
 5     Washington, D.C.  20005
       Post Office Box 14271
 6     Washington, D.C.  20044-4271
 7
 8   APPEARING FOR THE STATE OF LOUISIANA:
       Mr. Douglas R. Kraus
 9     KANNER & WHITELEY
       701 Camp Street
       New Orleans, Louisiana  70130-3504
10
       Ms. Phyllis E. Glazer
11     Mr. Michael Keller
       Assistant Attorney General
12     Litigation Division
       LOUISIANA DEPARTMENT OF JUSTICE
13     400 Poydras Street, Suite 1600
       New Orleans, Louisiana  70130-3220
14
15   APPEARING FOR MOEX:
       Mr. Jack Reynolds
16     PILLSBURY WINTHROP SHAW PITTMAN
       2 Houston Center
17     909 Fannin, Suite 2000
       Houston, Texas  77010-1018
18
19
     ALSO PRESENT:
20     Mr. Peter Jennings, videographer
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**

301



303

1     **Q. When you arrived on the rig, did you**
2  **receive a safety orientation?**
3     A. Yes.
4     **Q. Did you find the safety orientation to be**
5  **comprehensive?**
6     A. I thought it was a good overview.
7     **Q. It included evacuation processes and**
8  **procedures, correct?**
9     A. Yes.
10    **Q. Are you aware that the DEEPWATER HORIZON**
11  **achieved seven years with no lost time incidents?**
12    A. Yes.
13    **Q. Are you aware that in September 2009, the**
14  **DEEPWATER HORIZON contract was extended for a**
15  **period of three years to commence in 2010?**
16    A. Yes.
17    **Q. And that the value of that contract was**
18  **approximately half a billion dollars?**
19      **MR. KEEGAN:** Objection.
20    A. I don't know.
21    **Q. (BY MS. LeGRAND) At any time during the**
22  **drilling of the Macondo Well, did you observe or**
23  **learn of any malicious acts towards human safety**
24  **or environment by the crew of the DEEPWATER**
25  **HORIZON?**

302

304

1     A. Not that I can recall.
2    **Q. At any time during the drilling of the**
3  **Macondo Well, did you observe or learn of any**
4  **willful or intentional misconduct towards human**
5  **safety or the environment on the part of the**
6  **TransOcean rig crew?**
7      **MR. KEEGAN:** Objection to the form.
8    A. So during -- during the Macondo Well or
9  before or after?
10    **Q. (BY MS. LeGRAND) At any time that -- that**
11  **you were either onboard the rig or that the -- the**
12  **rig was on contract to BP. Any intentional and**
13  **willful misconduct on the part of TransOcean crew**
14  **members that would have affected human safety and**
15  **the environment?**
16    A. No.

16      **Earlier, I believe you testified that**
17  **you visited the DEEPWATER HORIZON. Did you spend**
18  **the night on the rig when you were there?**
19    A. I believe -- I believe I spent the -- I
20  think I did spend the night on the HORIZON once.
21    **Q. And you realize that BP employees and BP**
22  **subcontractors' employees not only work on the**
23  **rig, but they actually live on the rig, as well,**
24  **when they're on a hitch, correct?**
25    A. Yes.

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL          )     MDL NO. 2179
BY THE OIL RIG          )
"DEEPWATER HORIZON" IN     )     SECTION "J"
THE GULF OF MEXICO, ON     )
APRIL 20, 2010          )     JUDGE BARBIER
                         )     MAG. JUDGE SHUSHAN

*********************************************

ORAL AND VIDEOTAPED DEPOSITION OF
DAVID WALL
JUNE 27, 2011

*********************************************

Deposition of DAVID WALL, taken at
Kirkland & Ellis International, 30 St. Mary Axe, 22nd
Floor, London EC3A 8AF, England, United Kingdom, on the
27th of June, 2011.

---

**2**

1
2
3   A P P E A R A N C E S
4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
        Mr. Ian Taylor
4       LEWIS, KULLMAN, STERBCOW & ABRAMSON
        601 Poydras Street, Suite 2615
5       New Orleans, Louisiana  70130
6       Mr. Robert T. Cunningham
        CUNNINGHAM BOUNDS, L.L.C.
7       1601 Dauphin Street
        Mobile, Alabama  36604
8
9   APPEARING FOR THE DERIVATIVE PLAINTIFFS, MDL 2185
    SECURITIES PLAINTIFFS SUBCLASS:
10      Mr. Victor S. Elias
        COTCHETT, PITRE & MCCARTHY
11      1025 Connecticut Avenue, N.W.  Suite 1000
        Washington, D.C.  20036
12
13  APPEARING FOR MDL PLAINTIFFS:
        Mr. Conrad S.P. (Duke) Williams
14      WILLIAMS LAW GROUP, L.L.C.
        909 Poydras Street, Suite 1650
15      New Orleans, Louisiana 70112
        Maison Grand Caillou
16      435 Corporate Drive, Suite 101
        Houma, Louisiana 70360
17
18  APPEARING FOR BP, INC.:
        Mr. Micah C. E. Osgood
19      KIRKLAND & ELLIS
        555 California Street
20      San Francisco, California  94104
21      Mr. Richard C. Godfrey
        KIRKLAND & ELLIS
22      300 North LaSalle
        Chicago, Illinois  60654
23
24
25

---

**3**

1   A P P E A R A N C E S (Continued)
2
3   APPEARING FOR TRANSOCEAN:
        Mr. Richard J. Hymel
4       Mr. Robert L. Blankenship
        PREIS & ROY
5       Versailles Centre, Suite 400
        102 Versailles Boulevard
6       Lafayette, Louisiana  70501
7
    APPEARING FOR ANADARKO PETROLEUM COMPANY:
8       Mr. Steven Brody
        BINGHAM MCCUTCHEN
9       399 Park Avenue
        New York, New York 10022-4689
10
11  APPEARING FOR HALLIBURTON:
        Mr. Thomas Ganucheau
12      BECK, REDDEN & SECREST
        One Houston Center
13      1221 McKinney Street, Suite 4500
        Houston, Texas  77010-2010
14
15  APPEARING FOR DRIL-QUIP, INC.:
        Ms. Wendy Ware Bishop
16      WARE, JACKSON, LEE & CHAMBERS
        America Tower, 42nd Floor
17      2929 Allen Parkway
        Houston, Texas  77019-7101
18
19  APPEARING FOR MOEX OFFSHORE 2007, L.L.C., and MOEX USA:
        Mr. Greg T. Lembrich
20      PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
        1540 Broadway
21      New York, New York  10036
22
23  APPEARING FOR M-I SWACO:
        Ms. Denise Scofield
24      MORGAN, LEWIS & BOCKIUS, L.L.P.
        1000 Louisiana Street, Suite 4000
25      Houston, Texas 77002-5006

---

**4**

1   A P P E A R A N C E S (Continued)
2
3   APPEARING FOR HALLIBURTON:
        Mr. Donald E. Godwin
4       Ms. Jenny L. Martinez
        Ms. Michelle W. MacLeod
5       GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
6       Dallas, Texas 75270-2041
7
8   APPEARING FOR THE UNITED STATES:
        Ms. Jessica L. McClellan
9       Ms. Chiquita Robertson
        U.S. DEPARTMENT OF JUSTICE
10      TORT BRANCH, CIVIL DIVISION
        1425 New York Avenue, N.W.
        Suite 10100
11      Washington, D.C.  20005
        Post Office Box 14271
12      Washington, D.C.  20044-4271
13
14  APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Henry Dart
15      ATTORNEY AT LAW, P.C.
        510 North Jefferson Street
16      Covington, Louisiana  70433
17  ALSO PRESENT:
        Ms. Kayla Barnes, Videographer
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



117

119

Q. So your team, then, did not make any determination as to wheth- -- in what circumstances it would be appropriate to divert overboard, correct?

118

120

A. I -- I think the whole investigation team was on the view if, you know, you -- you would, in a gas blowout situation --

Q. Uh-huh.

A. -- divert overboard, not to the mud gas separator. I mean, that -- that -- that was clear. The device wasn't -- wasn't designed for a blowout.

Q. Uh-huh.

A. But, you know, that's not pointing the finger at the individuals. They reacted --

Q. Uh-huh.

A. -- as they thought right, and they stayed right to the end, trying to fight and -- and shut the well in.

**PURSUANT TO CONFIDENTIALITY ORDER**

371

1           I, DAVID WALL, have read the foregoing
deposition and hereby affix my signature that same is
2   true and correct, except as noted above.

3
4           _____   5/8/2011
                DAVID WALL

5
6   STATE OF T E X A S      )
    COUNTY OF _____   )

7
8           Before me, _____, on
this day personally appeared DAVID WALL, known to me, or
9   proved to me under oath or through _____)
    (description of identity card or other document)), to be
10  the person whose name is subscribed to the foregoing
    instrument and acknowledged to me that they executed the
11  same for the purposes and consideration therein
    expressed.

12
            Given under my hand and seal of office on
13  this, the _____ day of _____, _____.

14

15

16         _____
           NOTARY PUBLIC IN AND FOR THE
           STATE OF TEXAS
17
    My Commission Expires: _____
18
19
20
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                      Reported by:
O. KIRK WARDLAW                    June 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL    MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"  SECTION:  J
IN THE GULF OF
MEXICO ON APRIL 20,  JUDGE BARBIER
2010                 MAG. JUDGE SHUSHAN




        Deposition of O. KIRK WARDLAW, taken
in the Pan American Life Center, Bayou
Room, 11th Floor, 601 Poydras Street, New
Orleans, Louisiana 70130, on Thursday, June
9, 2011.



APPEARANCES:



        LIEFF CABRASER HEIMANN & BERNSTEIN
        (By:  Annika K. Martin, Esquire)
        250 Hudson Street, 8th Floor
        New York, New York 10013
          (Attorneys for MDL 2185
           Securities Plaintiffs Subclass)

e4118713-518a-48dd-be39-26643265104f

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:
O. KIRK WARDLAW                    June 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 174

Page 176

Page 175

Page 177

13      Q.   Are you familiar with the
14   Deepwater Horizon's reputation within BP as
15   being one of the stellar rigs in the fleet?
16      MR. BOLES:
17          Object to the form.  Object it's
18   beyond the scope of the 30(b)(6)
19   deposition.
20      THE WITNESS:
21          I've heard it -- I've heard it
22   mentioned within -- within BP.
23   EXAMINATION BY MS. LeGRAND:
24      Q.   And you don't have any reason to
25   disagree with it?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile: (504) 525-9109

e4118713-518a-48dd-be39-26643265104f

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:
O. KIRK WARDLAW                          June 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 178

1     MR. BOLES:
2          Same objections.
3     THE WITNESS:
4          I'm not a drilling engineer.
5     No, I probably wouldn't.

Page 180

Page 179

Page 181

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters      Facsimile: (504) 525-9109

e4118713-518a-48dd-be39-26643265104f

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010

Reported by:

**O. KIRK WARDLAW**          **June 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR**



189

190

191

```
10        Q.   And do you agree that contracts
11   should be enforced as written?
12        MR. BOLES:
13            Object to the -- object to the
14   form and beyond the scope of the 30(b)(6)
15   designation.
16        THE WITNESS:
17            Yes.  The contracts say what the
18   contracts say.
19   EXAMINATION BY MS. LeGRAND:
20        Q.   And parties that entered into
21   these agreements should live up to their
22   obligations; is that a fair statement?
23        MR. BOLES:
24            Same objections.
25        MR. YASMIN:
```

192

```
1            Objection.
2        THE WITNESS:
3            Yes, I would.
```

**601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.**          **Telephone: (504) 525-9100**
**New Orleans, LA 70130-6029    Board-Certified Court Reporters**          **Facsimile: (504) 525-9109**

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL         )     MDL NO. 2179
BY THE OIL RIG            )
"DEEPWATER HORIZON" IN     )     SECTION "J"
THE GULF OF MEXICO, ON     )
APRIL 20, 2010            )     JUDGE BARBIER
                          )     MAG. JUDGE SHUSHAN
```

```
                   *****************
                       VOLUME 1
                   *****************
```

          Deposition of Norman Wong, Individually and as
a Corporate Representative, taken at Kirkland & Ellis
International, 30 St. Mary Axe, 22nd Floor, London EC3A
8AF, England, United Kingdom, on the 13th of June,
2011.

PURSUANT TO CONFIDENTIALITY ORDER

Page 310

Page 312

6      Q.   As you sit here today, are you aware of any
7   evidence that any member of the DEEPWATER HORIZON
8   Transocean crew was indifferent or simply did not care
9   about the safety of other human beings?
10      A.   I don't -- I can't answer that question.
11      Q.   Well, so you're not aware of any evidence?
12      A.   I'm not aware of any evidence, no.
13      Q.   Okay.  Are you aware of any evidence that any
14   member of the DEEPWATER HORIZON crew was indifferent
15   toward the care of the environment?
16      A.   Like my previous answer, I can't answer that.
17      Q.   Are you aware of any evidence, sir, that any
18   member of the DEEPWATER HORIZON crew was indifferent
19   to -- toward the care of the environment?
20      A.   Well, no.
21      Q.   Okay.  Are you aware of any evidence that any
22   member of the DEEPWATER HORIZON crew deliberately
23   wanted to injure another human being?
24      A.   No.
25      Q.   Okay.  Are you aware of any evidence that any

Page 311

Page 313

1   member of the DEEPWATER HORIZON crew deliberately
2   wanted to damage the environment in any way?
3      A.   No.
4      Q.   Are you aware of any member of the DEEPWATER
5   HORI -- HORIZON crew acting with malice toward other
6   human beings?
7      A.   Nope.
8      Q.   Are you aware of any member of the DEEPWATER
9   HORIZON crew acting with malice toward the environment?
10      A.   No.



79 (Pages 310 to 313)

PURSUANT TO CONFIDENTIALITY ORDER

6064b8a1-4a54-4b68-8063-3547f1b50a02

Page 318



Page 319

15  Q.                     You -- you -- you -- you
16  remember that the rig was taken out of service as a
17  result of certain audit findings, correct?
18  A.  Yes.
19  Q.  Okay.
20  A.  That's correct.
21  Q.  And then you testified earlier, I believe,
22  that the rig went back into service sometime
23  thereafter, right?
24  A.  I believe it was the 22nd of September.
25  Q.  Okay.  Do you have any evidence to suggest

Page 320

1   that when BP decided that the rig could go back into
2   service, that the DEEPWATER HORIZON was in an unsafe
3   condition?
4       A.  Do I have any evidence?  I don't believe I
5   have any evidence, no.

15         As far as you know, BP was satisfied when it
16  allowed the rig to go back into service as of
17  September 22nd, 2009, BP was satisfied that the rig was
18  able to operate safely; is that correct
19      A.  Well, I wasn't part of that -- that -- that
20  decision-making process.
21      Q.  As a result of the findings of the audit, and
22  then the followup efforts after the fact, okay, is it
23  your understanding that BP was satisfied when it
24  released the rig back into service that the rig could
25  operate safely?

Page 321

1       A.  I'd have to assume so.
2       Q.  Okay.  Well, would -- do you think that BP
3   would allow the rig to go back into service if it had
4   evidence that it could not operate safely?
5       A.  No, I don't believe so.
6       Q.  So as far as you know, BP was convinced that
7   the rig could operate safely when it allowed it to go
8   back into service as of September 22nd, 2009, correct?
9       A.  Yeah, I think that's fair.

PURSUANT TO CONFIDENTIALITY ORDER

6064b8a1-4a54-4b68-8063-3547f1b50a02



Page 322

Page 324

Page 323

Page 325

```
18      Q.  Let me -- let me -- let me re -- let me repeat
19  it, and this is in your Corporate Representative
20  capacity, okay?  When BP made the decision to allow the
21  rig to go back into service, no information arising
22  from the September 2009 Audit indicated that the
23  DEEPWATER HORIZON crew was incompetent; is that
24  correct?
25      A.  That's correct.
```

PURSUANT TO CONFIDENTIALITY ORDER

6064b8a1-4a54-4b68-8063-3547f1b50a02



Page 326

1    Q.  Okay?  This is another question directed to
2  you in your Corporate Representative capacity, sir?
3    A.  (Nodding.)
4    Q.  When BP made the decision to allow the
5  DEEPWATER HORIZON Rig -- excuse me, DEEPWATER HORIZON
6  Rig to go back into service, there was no information
7  arising from the September 2009 Rig Audit that
8  indicated that the BOP would not function properly.  Is
9  that correct?
10   A.  That's correct.

Page 328

12   Q.                      This is a question directed to
13  you in your Corporate Representative capacity.
14      It is true, is it not, sir, that the
15  Transocean DEEPWATER HORIZON began rigorously closing
16  out audit find -- findings during the month following
17  the September 2009 Audit?
18   A.  Yes, that's true.

Page 327

Page 329

PURSUANT TO CONFIDENTIALITY ORDER

6064b8a1-4a54-4b68-8063-3547f1b50a02

575

```
 1
 2          I, NORMAN WONG, have read the foregoing
 3    deposition and hereby affix my signature that same is
 4    true and correct, except as noted on the attached
 5    Amendment Sheet.
 6
 7                          _____
 8                              NORMAN WONG
 9
10    THE STATE OF _____)
11    COUNTY OF _____)
12          Before me, _____, on
      this day personally appeared NORMAN WONG, known to me
13    (or proved to me on the oath of
                                _____ or through _____)
14    to be the person whose name is subscribed to the
      foregoing instrument and executed the same for the
15    purposes and consideration therein expressed.
            GIVEN UNDER my hand and seal of office this
16    _____ day of _____, 2011.
17
18                    _____
                      Notary Public in and for
19                    The State of _____
20
21
22
23
24
25
```

PURSUANT TO CONFIDENTIALITY ORDER

---



411

410

412

25

20    Q.  In any of the time of your dealings with
21    Transocean or GlobalSantaFe, did you ever get the
22    impression that either company was consciously
23    indifferent toward the safety of individuals?
24    A.  No.
25    Q.  Did you ever get the impression that the

8  (Pages 409 to 412)

**PURSUANT TO CONFIDENTIALITY ORDER**

413

```
1   companies just didn't care about the safety of
2   the environment or individuals?
3       A. No.
4       Q. Did you ever hear that from any of the
5   employees within the BP organization, that they
6   felt like Transocean was consciously indifferent
7   toward the safety of individuals or the
8   environment?
9       A. No.
```

9 (Pages 413 to 416)

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

PAUL ANDERSON VOL. IIApril 28, 2011      THU BUI, CCR, RPR

Page 378

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL       )     MDL NO. 2179
by the OIL RIG,         )
DEEPWATER HORIZON in    )     SECTION "J"
the GULF OF MEXICO,     )
April 20, 2010          )     JUDGE BARBIER
                        )
                        )     MAG.  JUDGE
                        )     SHUSHAN



              **************
                 VOLUME 2
              **************




          Deposition of PAUL ANDERSON,
     taken at Pan-American Building, 601 Poydras
     Street, 11th Floor, New Orleans, Louisiana,
     70130, on the 28th of April, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029   Board-Certified Court Reporters   Facsimile:(504) 525-9109

8d38bef5-a552-453b-8a61-18858e20a67a



Page 447

Page 449

Page 448

Page 450

```
 1      Q.   You had worked with the
 2   Transocean crew that was on tour on the
 3   Deepwater Horizon on the evening of
 4   April 20th, 2010, correct?
 5      A.   April what?
 6      Q.   April 20th, 2010.
 7      A.   I worked with the crew on
 8   Transocean on April the 19th, in the
 9   evening.
10      Q.   And you had worked with the crew
11   prior to April 20th, 2010, but the crew
12   that was on shift or on tour the night of
13   April 20th, 2010?
14      A.   Yes, I did.
15      Q.   You had worked with Jason
16   Anderson before April 20th, 2010, correct?
17      A.   Yes.
18      Q.   You had worked with Dewey
19   Revette before April 20th, 2010, correct?
20      A.   Who is Dewey?
21      Q.   Had -- had you worked with Dewey
22   Revette before?
23      A.   I remember the name.
24      Q.   But you -- you had not worked
25   with Dewey Revette before?
```

19 (Pages 447 to 450)

8d38bef5-a552-453b-8a61-18858e20a67a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010     Reported by:

PAUL ANDERSON VOL. IIApril 28, 2011    THU BUI, CCR, RPR

Page 451

1   A.   Yes.
2   Q.   You have?
3   A.   Yeah, but what was his position
4 on the --
5   Q.   Dewey Revette, I believe, was
6 the toolpusher?
7     MR. HILL:
8      Object to form.
9   A.   Dewey. I -- yes. I remember
10 Dewey. I didn't know his position.
11   Q.   Had you ever worked with him
12 before on the -- on the rig?
13   A.   If he was out there on the 19th,
14 yes, I did.
15   Q.   Okay. You knew Stephen Curtis?
16   A.   Not by name, no.
17   Q.   Had you ever -- you don't recall
18 working with Stephen Curtis?
19   A.   I don't recall his name.
20   Q.   What about Donald Clark? Did
21 you know Donald Clark?
22   A.   I don't recall his name, no.
23   Q.   But you had worked with the
24 Transocean crew on the Deepwater Horizon
25 before, correct?

Page 452

1   A.   Yes, I did.
2   Q.   And they were a skilled crew,
3 correct?
4   A.   They were what?
5   Q.   Skilled?
6   A.   Yes, they did seem skilled.
7   Q.   They were knowledgeable?
8   A.   Yes.
9   Q.   They did their job?
10   A.   Yes.
11   Q.   You trusted them?
12   A.   In my part of the operation,
13 yes.
14   Q.   You had no reason not to trust
15 them, correct?
16   A.   No, I did not.
17   Q.   Had you ever seen anybody on the
18 Transocean crew on the Deepwater Horizon
19 ever perform their job in a way that you
20 thought was negligent?
21     MR. HILL:
22      Object to form.
23   A.   No, I have not.
24   Q.   Are you aware of any Transocean
25 employee or manager that was involved in

Page 453

1 the Macondo prospect ever deliberately
2 wanting to cause injury to the environment
3 or any person?
4   A.   No, I have not.
5   Q.   Are you aware of any Transocean
6 employee or manager involved in the Macondo
7 prospect ever acting maliciously or not
8 caring about causing injury to another
9 human or the environment?
10   A.   No, I have not.
11   Q.   Are you aware of any Transocean
12 employee or manager involved in the Macondo
13 prospect ever willfully inflicting harm on
14 any person or the environment?
15   A.   No, I have not.



601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029   Board-Certified Court Reporters    Facsimile:(504) 525-9109

8d38bef5-a552-453b-8a61-18858e20a67a

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

*******************
VOLUME 1
*******************

Deposition of James Russell Bement, taken
at the Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
20th day of September, 2011.

---

**2**

1   A P P E A R A N C E S
2
3
4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
5      Mr. Michael C. Palmintier
       Mr. Jonathan Williams
       DEGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ
6      618 Main Street
       Baton Rouge, Louisiana 70801-1910
7
8   APPEARING FOR BP, INC.:
       Mr. Walter R. Lancaster
9      KIRKLAND & ELLIS
       333 South Hope Street
10     Los Angeles, California 90071
11     Mr. Andrew J. Welz
       KIRKLAND & ELLIS
12     655 Fifteenth Street, NW
       Washington, D.C. 20005-5793
13
14  APPEARING FOR TRANSOCEAN:
       Ms. Amy A. Jennings Jaasma
15     Mr. Ryan D. King
       GOFORTH GEREN EASTERLING
16     4900 Woodway, Suite 750
       Houston, Texas 77056
17
18  APPEARING FOR ANADARKO PETROLEUM COMPANY:
       Mr. Robert E. Guidry
19     Ms. Milele St. Julien
       KUCHLER POLK SCHELL WEINER & RICHESON
20     1615 Poydras Street, Suite 1300
       New Orleans, Louisiana 70112
21
22  APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
       Ms. Kathleen A. Gallagher
23     BECK, REDDEN & SECREST
       One Houston Center
24     1221 McKinney Street, Suite 4500
       Houston, Texas 77010-2010
25

---

**3**

1   APPEARING FOR WEATHERFORD:
       Mr. Edward D. Wegmann
2      JONES, WALKER, WAECHTER, POITEVENT,
       CARRERE & DENEGRE, LLP
3      201 St. Charles Avenue
       New Orleans, Louisiana 70170-5100
4
5   APPEARING FOR DRIL-QUIP, INC.:
       Ms. Wendy Ware Bishop
6      WARE, JACKSON, LEE & CHAMBERS
       America Tower, 42nd Floor
7      2929 Allen Parkway
       Houston, Texas 77019-7101
8
9   APPEARING FOR M-I SWACO:
       Mr. Steven A. Luxton
10     MORGAN, LEWIS & BOCKIUS, LLP
       1111 Pennsylvania Avenue, NW
11     Washington, D.C. 20004
12
13  APPEARING FOR HALLIBURTON:
       Mr. Bruce W. Bowman, Jr.
       Ms. Elisaveta Dolghih
14     GODWIN RONQUILLO
       Renaissance Tower
15     1201 Elm Street, Suite 1700
       Dallas, Texas 75270-2041
16
17  APPEARING FOR THE STATE OF LOUISIANA:
       Mr. Henry Dart
18     510 North Jefferson Street
       Covington, Louisiana 70433
19
20  ALSO PRESENT:
       Mr. Mark Hendrix, Videographer
21
22
23
24
25

---

**4**

1                    INDEX
2   VIDEOTAPED ORAL DEPOSITION OF
              JAMES RUSSELL BEMENT
3            SEPTEMBER 20, 2011
                 VOLUME 1
4
5
6   Appearances.................................... 2
7
    Direct Examination-Mr. Palmintier............ 7
8   Examination-Mr. Dart......................... 82
    Examination-Mr. Lancaster.................. 118
9   Examination-Ms. Jaasma..................... 237
    Examination-Mr. Guidry..................... 251
10  Examination-Mr. Bowman..................... 271
    Redirect Examination-Mr. Palmintier........ 274
11
12  Changes and Signature....................... 288
    Reporter's Certificate...................... 290
13
14
15
16
17     REQUESTED DOCUMENTS/INFORMATION
18
    Number      Description        Page/Line
19
20  1 Evidence of electronic capture of
      Connection Flow Monitor analytical
21    process compared to reference curve   135/9
22
23
24
25

PURSUANT TO CONFIDENTIALITY ORDER

237



238

5     Q.  In your role as Vice President of Sperry
6 Drilling, have you had an opportunity to work
7 with Transocean in the past?
8     A.  Sure.
9     Q.  How long would you say you've had that
10 opportunity?
11     A.  Well, we're on -- we share many of the
12 same customers.  So we're on several Transocean
13 rigs around the world.  So that relationship
14 really is, I guess you could say, performance
15 driven and -- and related to our customers,
16 shared customer interest.
17     Q.  Do you currently have Sperry employees on
18 Transocean rigs?
19     A.  I can't name one off the top of my head,
20 but I'm almost certain we're on several rigs.
21     Q.  Do you know how many years Sperry has had
22 employees on Transocean rigs?
23     A.  Well, specific to the HORIZON, I believe
24 it's since 2004.  Is that when the HORIZON came
25 out?  I think from very first well we were on

239

1 that well.
2     Q.  At any time did any of the individuals
3 that you've dealt with at Transocean indicate to
4 you that they were indifferent to the health or
5 welfare of individuals who might be working on
6 their drilling rigs?
7     A.  No, ma'am.
8     Q.  At any time did any of the -- of the
9 individuals with whom you've dealt at Transocean
10 ever indicate to you that they were indifferent
11 to the environment in connection with their
12 drilling operations?
13     A.  No, ma'am.
14     Q.  In your position as Vice President for
15 Sperry Drilling, did you ever receive feedback
16 from your employees that Transocean employees
17 were conducting their jobs in a way that
18 indicated that they were indifferent to the
19 health and welfare of the individuals who were
20 working on their rigs?
21     A.  No, ma'am.
22     Q.  If you had received complaints or
23 concerns about the manner in which Transocean
24 employees were conducting their jobs, is it fair
25 to say that as Vice President of Sperry Drilling

240

1 you would have taken some type of action to
2 protect your employees?
3        MR. BOWMAN:  Objection, form.
4     A.  Yes, ma'am.

**PURSUANT TO CONFIDENTIALITY ORDER**