416

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
IN RE: OIL SPILL      )   MDL NO. 2179
by the  OIL RIG        )
"DEEPWATER HORIZON" in   )   SECTION "J"
the GULF OF MEXICO, ON  )
APRIL 20, 2010      )   JUDGE BARBIER
              )
              )   MAG. JUDGE
              )   SHUSHAN

VOLUME 2 OF 2

Deposition of RONALD RAY FAUL, taken
at Pan American Life Center, 601 Poydras
Street, Ponchartrain Room, New Orleans,
Louisiana, on the 30th of June, 2011.

---

417

1       A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING
    COMMITTEE:
4
    Mr. Thomas Thornhill
5   Ms. Emily Gebhardt
    THORNHILL LAW FIRM
6   1308 Ninth Street
    Slidell, Louisiana 70458
7
8   APPEARING FOR BP, INC.:
9   Mr. Philip T. Chen
    Mr. David Mitchell
10  KIRKLAND & ELLIS
    333 South Hope Street
11  Los Angeles, California 90071
12  APPEARING FOR TRANSOCEAN:
13  Mr. Daniel Goforth
    Ms. Kate H. Easterling
13  GOFORTH GEREN EASTERLING, LLP
14  4900 Woodway
    Suite 750
15  Houston, Texas 77056
16  APPEARING FOR ANADARKO PETROLEUM COMPANY:
17  Ms. Janica D. Polk
    Mr. Terrance Prout
18  KUCHLER POLK
    1615 Poydras Street
19  Suite 1300
    New Orleans, Louisiana 70112
20
21  APPEARING FOR HALLIBURTON:
22  Mr. Gavin Hill
    Lauren L. Mitchell
23  Mr. Bruce W. Bowman, Jr.
    GODWIN RONQUILLO
24  1201 Elm Street, Suite 1700
    Dallas, Texas 75270-2041
25

---

418

1       A P P E A R A N C E S (Continued)
2
3   APPEARING FOR HALLIBURTON:
4   Mr. Richard W. Beckler
    Mr. Jason B. Hutt
5   BRACEWELL GULIANI
    2000 K Street NW, Suite 500
6   Washington, District of Columbia
    20006-1872
7
    Ms. Stacy S. Russell
8   HALLIBURTON
    10200 Bellaire Boulevard
9   Houston, Texas 77072
10  APPEARING FOR WEATHERFORD:
11  Mr. Wayne G. Zeringue, Jr.
    JONES, WALKER, WAECHTER, POITEVENT,
12  CARRERE & DENEGRE, L.L.P.
    201 St. Charles Avenue
13  New Orleans, Louisiana 70170
14  APPEARING FOR DRIL-QUIP, INC.:
15  Mr. Don Jackson
    WARE, JACKSON, LEE & CHAMBERS
16  America Tower, 42nd Floor
    2929 Allen Parkway
17  Houston, Texas 77019-7101
18  APPEARING FOR M-I SWACO:
19  Mr. Paul E. Krieger
    MORGAN, LEWIS & BOCKIUS, L.L.P.
20  1000 Louisiana Street, Suite 4000
    Houston, Texas 77002-5006
21
22  APPEARING FOR THE UNITED STATES:
23  Ms. Jessica Sullivan
    U.S. DEPARTMENT OF JUSTICE
24  TORT BRANCH, CIVIL DIVISION
    1425 New York Avenue, N.W.
25  Suite 10100
    Washington, D.C. 20005

---

419

1       A P P E A R A N C E S (Continued)
2
3   APPEARING FOR CAMERON:
4   Ms. Kathleen A. Gallagher
    BECK REDDEN & SECREST
5   One Houston Center
    1221 McKinney Street
6   Suite 4500
    Houston, Texas 77010
7
    APPEARING FOR THE WITNESS:
8
    Mr. Christopher Carlson
9   JOHN T. FLOYD LAW FIRM
    2000 Smith Street
10  Houston, Texas 77002
11  ALSO PRESENT:
12  Ms. Melissa Bardwell, Videographer
13
14
15  REPORTED BY:
    THERESE J. CASTERLINE, CSR, RMR, CRR
    Certified Shorthand Reporter
16  State of Texas
    Certified Shorthand Reporter
17  State of Louisiana
18
19
20
21
22
23
24
25

1 (Pages 416 to 419)

**PURSUANT TO CONFIDENTIALITY ORDER**



548

14  **Q. Got anything bad to say about**
15  **Transocean?**
16      A.  No, I don't.
17      **Q.  May be the last time I ask you, so**
18  **if you've got something bad to say, go**
19  **ahead say it now.**
20      A.  I have nothing for the record.

550

549

551

**PURSUANT TO CONFIDENTIALITY ORDER**



640

642

641

643

20
21
22
23
24
25

Q.        Are you aware of -- sir, of
any evidence that a Transocean employee or
manager was negligent in performing his or
her job in connection with the Macondo
prospect?

       MR. HILL: Object to form.

57  (Pages 640 to 643)

**PURSUANT TO CONFIDENTIALITY ORDER**

644

```
1          A.  I'm not aware of any of that.
2          Q.  (BY MR. GOFORTH)  Are you aware of
3    any Transocean employee or manager
4    involved with the Macondo prospect ever in
5    connection with the Macondo prospect
6    deliberately wanting to cause injury to
7    the environment or to any person?
8          A.  I'm not aware of that.
9          MR. CHEN: Objection, form.
10         Q.  (BY MR. GOFORTH)  Are you aware of
11   any Transocean employee or manager
12   involved in the Macondo prospect ever
13   acting maliciously or not caring about
14   causing injury to another human or the
15   environment?
16         MR. CHEN: Objection, form.
17         MR. CARLSON: Objection, form.
18         A.  I'm not aware of that.
```



**PURSUANT TO CONFIDENTIALITY ORDER**

725

1      I, RONALD RAY FAUL, have read the

2   foregoing deposition and hereby affix my

3   signature that same is true and correct,

4   except as noted on the attached Amendment

5   Sheet.

6            *Ronald Ray Faul*

7                     RONALD RAY FAUL

8   THE STATE OF _Texas_ )

9   COUNTY OF _Harris_ )

10     Before me, _Ranjan Patel_ ,

11   on this day personally appeared

12   RONALD RAY FAUL, known to me (or proved to

13   me on the oath of _____ or

14   through _____ ) to be the person

15   whose name is subscribed to the foregoing

16   instrument and executed the same for the

17   purposes and consideration therein

18   expressed.

19     Given under my hand and seal of office

20   this _7/22/11_ day of _2011_ ,

21   2011.

22        *Ranjan Patel*                    RANJAN PATEL
                                            NOTARY PUBLIC
23   NOTARY PUBLIC IN AND FOR               STATE OF TEXAS
                                            COMM. EXPIRES 05-13-2012
24   THE STATE OF _Texas_

25   My commission expires: _5/13/2012_

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                                    Reported by:
KELLY S. GRAY VOL. II          April 15, 2011    JOSEPH R. KAISER, JR., CCR, RPR

Page 442

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL     MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:   J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN



VOLUME II

     Deposition of KELLY S. GRAY, taken
in the Pan American Life Center, Bayou
Room, 11th Floor, 601 Poydras Street, New
Orleans, Louisiana 70130, on Friday, April
15, 2011.


APPEARANCES:


     THORNHILL LAW FIRM, APLC
     (By:  Tom W. Thornhill, Esquire
           Emily Gebhardt, Esquire)
     1308 Ninth Street
     Slidell, Louisiana  70458)
          (Plaintiff's Steering Committee)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters  Facsimile: (504) 525-9109

026272b6-47d2-4fc1-9e18-c777b7c11ec0

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                    Reported by:
KELLY S. GRAY VOL. II          April 15, 2011    JOSEPH R. KAISER, JR., CCR, RPR



Page 523

Page 525

13    Q.   Every person on the DEEPWATER
14   HORIZON had stop the job authority; right?
15      MR. HARTLEY:
16         Object to form.
17      THE WITNESS:
18         That's true.
19   EXAMINATION BY MR. KEEGAN:
20      Q.   People on the DEEPWATER HORIZON
21   were serious about safety?
22      A.   Yes, sir.
23      Q.   The people on the DEEPWATER
24   HORIZON were committed to safety?
25      A.   Yes, sir.

Page 524

Page 526

1      Q.   And, in fact, DEEPWATER
2   HORIZON's rig performance showed that
3   commitment to safety; right?
4      A.   Yes, sir.
5      Q.   They received commendations for
6   safe operations?
7      A.   I know that we received -- yes.
8   I mean, I don't have proof, but yeah, I
9   mean, I was there.

20      Q.   And the Transocean rig crew that
21   you worked with were serious about safety?
22      A.   Yes, sir, they were.

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile: (504) 525-9109

026272b6-47d2-4fc1-9e18-c777b7c11ec0

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                          Reported by:
KELLY S. GRAY VOL. II          April 15, 2011    JOSEPH R. KAISER, JR., CCR, RPR

Page 531



3      Q.   And had you ever worked with the
4  Transocean crew that was on tour on the
5  DEEPWATER HORIZON on the evening of
6  April 20, 2010?
7      A.   Yes, ma'am.
8      Q.   You knew Jason Anderson?
9      A.   Very well.
10     Q.   And you worked with Jason
11 Anderson?
12     A.   Many years.
13     Q.   And you new Dewey Revette?
14     A.   Yes, ma'am.
15     Q.   And you worked with Dewey
16 Revette for many years?
17     A.   Yes, ma'am.
18     Q.   The same question with Stephen
19 Curtis. Did you know Stephen Curtis?
20     A.   Yes, ma'am.
21     Q.   You had worked with him?
22     A.   Yes.  You have to excuse me.
23     Q.   You need to take a break?
24     A.   No, I'm fine.
25     Q.   Same question with Donald Clark.

Page 532

1  You knew Donald Clark?
2      A.   Very well.
3      Q.   You had worked with Donald
4  Clark?
5      A.   Yes, ma'am.
6      Q.   Those men were all very skilled
7  at their job; correct?
8      A.   In my opinion, yes, ma'am.
9      Q.   They were knowledgeable?
10     A.   Yes, ma'am.
11     Q.   They did their job?
12     A.   In my opinion, yes, ma'am.
13     Q.   You trusted them to do their
14 job?
15     A.   We had an excellent
16 relationship, ma'am.
17     Q.   Had you ever seen any of those
18 men or any of the Transocean crew perform
19 their job in a way that you thought was
20 negligent?
21     A.   No, ma'am.
22     Q.   Had you ever seen any Transocean
23 employee on the Macondo well in connection
24 with -- on the DEEPWATER HORIZON in
25 connection with Macondo Prospect ever

Page 533

1  deliberately wanting to cause injury to a
2  person or the environment?
3      A.   No, ma'am.
4      Q.   Had you ever seen any Transocean
5  employee on the DEEPWATER HORIZON ever act
6  maliciously or not caring about causing
7  injury to a person or the environment?
8      A.   No, ma'am.
9      Q.   Had you ever seen any Transocean
10 employee on the DEEPWATER HORIZON ever
11 willfully inflict harm on any person or the
12 environment?
13     A.   No, ma'am.

Page 534

24 (Pages 531 to 534)

601 Poydras Street, Suite 1720     GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters    Facsimile: (504) 525-9109

026272b6-47d2-4fc1-9e18-c777b7c11ec0

# GAUDET KAISER, L.L.C.

601 Poydras Street, Suite 1720      New Orleans, Louisiana 70130
Phone: (504) 525-9100      Fax: (504) 525-9109

**BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT**



## WITNESS CERTIFICATE

I, **KELLY S. GRAY,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections  or changes.

30-MAY-2011

(Date  Signed)          (Signature)

X     Signed  with  corrections  as  attached.

_____     Signed  with  no  corrections  noted.

11745 Bricksome Avenue, Suite A-4
Baton Rouge, Louisiana 70816

263 W. Causeway Approach
Mandeville, Louisiana 70448

Website: www.gaudetkaiser.com

PHONE    (225) 291-3411
FAX      (225) 291-7990

PHONE    (504) 525-9100
FAX      (504) 525-9109

ALT. EMAIL:
Gkp2003@aol.com  &  gkp@gaudetkaiser.com

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JOSEPH E. KEITH         March 28, 2011 SANDRA D. FILES, CCR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL      MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN




            Videotaped deposition of JOSEPH
E. KEITH, taken in the Pan American Life
Center, Pontchartrain Room, 11th Floor, 601
Poydras Street, New Orleans, Louisiana
70130, on Monday, March 28, 2011.

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS
STEERING COMMITTEE


CUNNINGHAM BOUNDS, LLC
By:  William E. Bonner, Esquire
1601 Dauphin Street
Mobile, Alabama 36604

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C        Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters        Facsimile: (504) 525-9109

8424594a-7536-4818-bcca-d3e5b4ce3d19

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

**JOSEPH E. KEITH**              **March 28, 2011**              **SANDRA D. FILES, CCR**



45

4    Q.    Now, how many years have you
5  been on the HORIZON or were you on the
6  HORIZON?
7    A.    Going on eight years.

46

47

48

**601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C**      **Telephone (504) 525-9100**
**New Orleans, Louisiana 70130-6029** Board-Certified Court Reporters        **Facsimile: (504) 525-9109**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JOSEPH E. KEITH      March 28, 2011 SANDRA D. FILES, CCR

Page 146

Page 148

10    Q.   Did you ever get the feeling
11  that once the final casing string was set
12  and once the cement was set and there was a
13  negative pressure test done, that the crew
14  was home-free and they could just --
15    A.   No.  Everybody was still
16  watching everything.  It's just like me --
17  you know, we are always still aware
18  when --
19    Q.   Okay.
20    A.   In other words, when we're laid
21  back, everybody was still watching
22  everything.

Page 147

Page 149

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters       Facsimile: (504) 525-9109

8424594a-7536-4818-bcca-d3e5b4ce3d19

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JOSEPH E. KEITH     March 28, 2011 SANDRA D. FILES, CCR

Page 186



23     Q.   Okay.  Are you familiar with the
24  concept of time-out for safety?
25     A.   Yes, I am.

Page 187

1     Q.   Could you give us your
2  understanding of that policy?
3     A.   Time-out for safety is -- is
4  when, if you see anybody doing an unsafe
5  act or anything, you call a time-out and
6  they -- they go through discussions, so
7  forth.
8     Q.   Okay.  Does that include well
9  control issues?
10     A.   I have never seen it -- I have
11  never -- I'm not sure.
12     Q.   You have never seen somebody
13  call a time-out for safety because --
14     A.   As far as for well control --
15     Q.   As far as for --
16     A.   I have never seen it, no.
17     Q.   Okay.  Have you ever seen any
18  situations where you think one should have
19  been called for well control?
20     A.   I have never been in that
21  situation.  I -- I have never seen that.
22     Q.   You have never seen one called?
23     A.   Correct.
24     Q.   Have you ever seen any
25  situations where you think the driller is

Page 188

1  doing something unsafe, I want to stop
2  what's going on because I think it's
3  unsafe?
4     A.   I never seen one.  I've --
5     Q.   You have never seen a situation
6  that you thought was unsafe?
7     A.   Not during well control or
8  anything like that, no.
9     Q.   Okay.  Do you think that
10  employees on the rig were all willing to
11  call time-out for safety?
12     MR. HARTLEY:
13         Object to form.
14     MR. GODFREY:
15         Objection, form.
16     THE WITNESS:
17         That's always your
18  decision.
19  BY MR. CHAKERES:
20     Q.   Did you think there was any
21  pressure placed on you or anybody else
22  regarding time-out for safety?
23     MR. HARTLEY:
24         Object to form.
25     THE WITNESS:

Page 189

1         I never felt no pressure,
2  no.
3  BY MR. CHAKERES:
4     Q.   To not call one?
5     A.   Right.
6     Q.   To not halt drilling activities?
7     A.   No.  Never been in that
8  situation.
9     Q.   Did you ever see anybody else
10  who you thought was uncomfortable calling
11  one?
12     MR. HARTLEY:
13         Object to form.
14     THE WITNESS:
15         Not that I recall, no.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C     Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters     Facsimile: (504) 525-9109

8424594a-7536-4818-bcca-d3e5b4ce3d19

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JOSEPH E. KEITH      March 28, 2011 SANDRA D. FILES, CCR



Page 302

Page 303

15      First, though, did you know
16  Dewey Revette?
17      A.   Yes, sir.
18      Q.   Did you know Jason Anderson?
19      A.   Yes, sir.
20      Q.   Did you know Steven Curtis?
21      A.   Yes, sir.  Knew them all.
22      Q.   Knew them all.  Trusted them?
23      A.   Yes, sir.
24      Q.   They were competent?
25      A.   Yes, sir.

Page 304

1      Q.   They did their job?
2      A.   Yes, sir.
3      MR. HARTLEY:
4          Object to form.
5      THE WITNESS:
6          As far as I know they did
7  their job.
8  BY MR. GOFORTH:
9      Q.   You didn't see anything on that
10  evening that any of those men did that you
11  would classify as negligent, did you?
12      MR. HARTLEY:
13          Object to form.
14      THE WITNESS:
15          I didn't see nothing, no,
16  sir.  As far as for what I'm --
17      MR. GODFREY:
18          Sorry, but I can't hear you
19  back here.  If you --
20      MR. GOFORTH:
21          Well, it's just -- we're
22  just -- we're just talking.
23      MR. GODFREY:
24          I know.
25      THE WITNESS:

Page 305

1          I didn't see nothing.
2      MR. GODFREY:
3          But I'm not listening
4  because I can't hear.
5      THE WITNESS:
6          I didn't see nothing
7  that --
8      MR. GODFREY:
9          Thank you.
10      THE WITNESS:
11          -- that indicated --
12  BY MR. GOFORTH:
13      Q.   Got you.  Okay.  You knew the
14  other Transocean rig members as well?
15      A.   Yes, sir.
16      Q.   On other -- other ships?
17      A.   Quite a few of them, yes, sir.
18      Q.   Did you ever see anything from
19  any of the Transocean crew people that you
20  would classify as negligent?
21      MR. HARTLEY:
22          Object, form.
23      THE WITNESS:
24          I -- I never have, no, sir.
25  BY MR. GOFORTH:

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029 Board-Certified Court Reporters      Facsimile: (504) 525-9109

8424594a-7536-4818-bcca-d3e5b4ce3d19

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JOSEPH E. KEITH        March 28, 2011 SANDRA D. FILES, CCR

Page 306

```
 1    Q.   Did you ever see anything from
 2 any Transocean rig crew members, especially
 3 these men there on that -- that evening
 4 that indicated to you that they were
 5 indifferent at all to human health and
 6 safety?
 7    A.   I had no indication, no, sir.
 8    Q.   Did you ever see anything that
 9 would lead you to believe that they were
10 indifferent to environmental safety?
11    A.   Not that day, no, sir, or ever
12 before.
13    Q.   These men were not callous men,
14 were they?
15    MR. HARTLEY:
16        Object, form.
17    THE WITNESS:
18        No, sir, not that I seen.
19 BY MR. GOFORTH:
20    Q.   You certainly never saw any
21 intent upon any of these men to harm
22 another human being, did you, sir?
23    A.   Correct.  Never have.
24    Q.   Did you ever see anything that
25 you would -- that you, Joseph Keith would
```

Page 307

```
 1 classify as an intent on any of these men's
 2 part to endanger in any way the
 3 environment?
 4    A.   No, sir.
 5    Q.   I'm going to ask you the same
 6 question, little different fashion.  Did
 7 you see anything that evening or at any
 8 point in time from the Transocean rig crew
 9 on the -- on the DEEPWATER HORIZON that
10 would indicate to you that they were
11 malicious in their thought process or their
12 thought patterns about endangering either
13 the health or safety of humans or of the
14 environment?
15    A.   That day I did not, no, sir.
16    MR. HARTLEY:
17        Object, form.
18 BY MR. GOFORTH:
19    Q.   They were not?
20    A.   I did not see that day, no, sir.
21    Q.   And you knew them pretty well?
22    A.   Yes, sir.
23    Q.   You had known them for a while?
24    A.   Had worked with them.
25    Q.   You considered them to be good
```

Page 308

```
 1 men?
 2    A.   Yes, sir.
 3    Q.   You probably miss them now,
 4 don't you, sir?
 5    A.   Yes, sir.
```



Page 309

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C        Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters    Facsimile: (504) 525-9109

8424594a-7536-4818-bcca-d3e5b4ce3d19

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )   MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010        )   JUDGE BARBIER
                      )   MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of Kurt Adam Kronenberger, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on the 2nd day of August, 2011.

**2**

1
2
3           A P P E A R A N C E S
4    APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
5       Mr. Michael C. Palmintier
        DEGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ
6       618 Main Street
        Baton Rouge, Louisiana  70801-1910
7
        APPEARING FOR BP, INC.:
8       Mr. Taylor Broadhead
        Mr. Walter R. Lancaster
9       KIRKLAND & ELLIS
        333 South Hope Street
10      Los Angeles, California  90071
11
        APPEARING FOR TRANSOCEAN:
12      Mr. Daniel O. Goforth
        Ms. Amy A. Jennings Jaasma
13      GOFORTH GEREN EASTERLING
        4900 Woodway, Suite 750
14      Houston, Texas  77056
15
        APPEARING FOR ANADARKO PETROLEUM COMPANY:
16      Mr. Robert E. Guidry
        Ms. Lori A. Waters
17      KUCHLER POLK SCHELL WEINER & RICHESON
        1615 Poydras Street, Suite 1300
18      New Orleans, Louisiana 70112
19
        APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
20      Ms. Kathleen A. Gallagher
        BECK, REDDEN & SECREST
21      One Houston Center
        1221 McKinney   Street, Suite 4500
22      Houston, Texas  77010-2010
23
24
25

**3**

1    APPEARING FOR WEATHERFORD:
        Mr. Michael G. Lemoine
2    JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
3    600 Jefferson Street, Suite 1600
        Lafayette, Louisiana 70501
4
5    APPEARING FOR M-I SWACO:
        Mr. Lucas T. Elliot
6    MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4200
7    Houston, Texas 77002-5006
8
9    APPEARING FOR HALLIBURTON:
        Mr. Floyd R. Hartley, Jr.
10   GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
11   Dallas, Texas 75270-2041
12   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Henry Dart
13   510 North Jefferson Street
        Covington, Louisiana  70433
14
        Ms. Phyllis E. Glazer
15   Assistant Attorney General
        Litigation Division
16   LOUISIANA DEPARTMENT OF JUSTICE
        400 Poydras Street, Suite 1600
17   New Orleans, Louisiana  70130-3220
18
19   ALSO PRESENT:
        Mr. Mark Hendrix, Videographer
20   Ms. Andrea Whitten
21
22
23
24
25

**4**

1                    INDEX
2        VIDEOTAPED ORAL DEPOSITION OF
           KURT ADAM KRONENBERGER
3              AUGUST 2, 2011
                  VOLUME 1
4
5
6    Appearances.................................... 2
7
     Direct Examination-Mr. Palmintier............. 8
8    Examination-Mr. Dart......................... 104
     Examination-Mr. Broadhead.................... 147
9    Examination-Mr. Goforth...................... 192
     Examination-Mr. Guidry....................... 226
10   Examination-Mr. Hartley...................... 242
     Redirect Examination-Mr. Palmintier.......... 250
11
12   Changes and Signature........................ 280
     Reporter's Certificate....................... 282
13
14
15
16        REQUESTED DOCUMENTS/INFORMATION
17
18   Number        Description      Page/Line
19    1     Copy of Mr. Kronenberger's
            current Curriculum Vitae      36/19
20
21
22
23
24
25

PURSUANT TO CONFIDENTIALITY ORDER



PURSUANT TO CONFIDENTIALITY ORDER

217

1   that you had worked on the **DEEPWATER HORIZON** for
2   some hitches in 2003.  At any time when you were
3   on the **DEEP -- DEEPWATER HORIZON**, did you see the
4   **Transocean** crew perform its work and duties in a
5   negligent fashion?
6           MR. GUIDRY: Object to form.
7   A.  No.
8           MR. HARTLEY: Object, form.
9           MR. BROADHEAD: Object to form.
10  Q.  (By Mr. Goforth) Did you see the crew act
11  negligently in any way?
12          MR. HARTLEY: Object to --
13  A.  I didn't, no.
14          MR. HARTLEY: -- form.
15          MR. BROADHEAD: Object, form.
16  Q.  (By Mr. Goforth) Are you aware of any
17  **Transocean** employee or Manager involved in the
18  Macondo Prospect, ever, in connection with the
19  Macondo Well, deliberately want to cause injury
20  to the environment or to any other person?
21  A.  No.
22          MR. BROADHEAD: Object, form.
23  Q.  (By Mr. Goforth) The same question:
24  Asking if you saw or are aware, know any evidence
25  of any **Transocean** employee or Manager on the

218

1   **DEEPWATER HORIZON** acting maliciously or not
2   caring about causing injury to another person or
3   the environment?
4           MR. BROADHEAD: Object, form.
5           MR. HARTLEY: Object, form.
6   A.  No.
7   Q.  (By Mr. Goforth) Same question:  You seen
8   any **Transocean** employee or Manager willfully
9   inflicting harm on any person or on the
10  environment?
11  A.  No.

219

8   Q.           Did you ever know of any evidence
9   that any of the crew was not knowledgeable,
10  lacked knowledge about their job?
11  A.  No.

220



**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL      )  MDL NO. 2179
**BY THE** OIL RIG      )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010      )  JUDGE BARBIER
      )  MAG. JUDGE SHUSHAN

******************

VOLUME 1

******************

Deposition of James Harold Prestidge, Jr.,
taken at the Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on the 21st day of September, 2011.

**3**

1   APPEARING FOR WEATHERFORD:
        Mr. Edward D. Wegmann
2       JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
3       201 St. Charles Avenue
        New Orleans, Louisiana  70170-5100
4
5   APPEARING FOR M-I SWACO:
        Mr. Lucas T. Elliot
6       MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4000
7       Houston, Texas 77002-5006
8
9   APPEARING FOR HALLIBURTON:
        Mr. Bruce W. Bowman, Jr.
        Mr. Floyd R. Hartley, Jr.
10      Mr. Israel R. Silvas
        GODWIN RONQUILLO
11      Renaissance Tower
        1201 Elm Street, Suite 1700
12      Dallas, Texas 75270-2041
13
        APPEARING FOR HALLIBURTON LAW DEPARTMENT:
14      Ms. Stacy S. Russell
        HALLIBURTON LAW DEPARTMENT
15      2107 City West Boulevard
        Building 2
16      Houston, Texas 77042-3051
17
        APPEARING FOR THE STATE OF LOUISIANA:
18      Mr. Henry Dart
        510 North Jefferson Street
19      Covington, Louisiana  70433
20
        ALSO PRESENT:
21      Mr. Mark Hendrix, Videographer
        Mr. Danny Damiani
22
23
24
25

**2**

1    A P P E A R A N C E S
2
3
4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
        Mr. Guy E. Matthews
5       Mr. Joshua Shamburger
        MATTHEWS, LASON & JOHNSON
6       200 Bering Drive, Suite 700
        Houston, Texas  77057-3778
7
8   APPEARING FOR BP, INC.:
        Ms. Barbara M. Harding
9       KIRKLAND & ELLIS
        655 Fifteenth Street, NW
10      Washington, D.C.  20005-5793
11      Ms. Betty X. Yang
        KIRKLAND & ELLIS
12      300 North LaSalle
        Chicago, Illinois  60654
13
14  APPEARING FOR TRANSOCEAN:
        Mr. Ryan D. King
15      GOFORTH GEREN EASTERLING
        4900 Woodway, Suite 750
16      Houston, Texas  77056
17
18  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Mr. Joseph H. Hart, IV
        Mr. Thomas A. Porteous
19      KUCHLER POLK SCHELL WEINER & RICHESON
        1615 Poydras Street, Suite 1300
20      New Orleans, Louisiana 70112
21
22  APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
        Mr. Alex Roberts
        BECK, REDDEN & SECREST
23      One Houston Center
        1221 McKinney Street, Suite 4500
24      Houston, Texas  77010-2010
25

**4**

1                    INDEX
2   VIDEOTAPED ORAL DEPOSITION OF
        JAMES HAROLD PRESTIDGE, JR.
3           SEPTEMBER 21, 2011
                VOLUME 1
4
5
6   Appearances.................................... 2
7
    Direct Examination-Mr. Matthews.............. 10
8   Examination-Mr. Dart......................... 83
    Examination-Ms. Harding...................... 114
9   Examination-Mr. King......................... 302
    Examination-Mr. Hart......................... 315
10  Examination-Mr. Bowman....................... 318
11
    Changes and Signature........................ 324
12  Reporter's Certificate....................... 326
13
14
15
16      REQUESTED DOCUMENTS/INFORMATION
17
    Number       Description        Page/Line
18
19  1    Halliburton Management System
         Manual              88/19
20
    2    2009 Performance Improvement
21       Initiative HSE Plan     127/7
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



305

                                                              Do
23  you know -- are you aware of any evidence that
24  any Transocean personnel in connection with the
25  DEEPWATER HORIZON deliberately wanted to cause

306

1   injury or the environment or to any person?
2       A. No.
3       Q. Okay. Are you aware of any evidence that
4   any Transocean personnel, in connection with the
5   DEEPWATER HORIZON, was malicious or didn't care
6   in any way about causing injury to another human
7   or to the environment?
8       A. No.
9       Q. Okay. Are you aware of any evidence that
10  Transocean personnel, in connection with the
11  DEEPWATER HORIZON, willfully inflicted harm on
12  any person or on the environment?
13      A. No, not a word.
14      Q. And since you've been with Halliburton,
15  have you ever received feedback from Halliburton
16  employees that Transocean employees were
17  conducting their job in a way that indicated that
18  they were indifferent to the health and ware --
19  welfare of other individuals who were working on
20  the rig?
21      A. I have not received that.

307

15      Q.          And earlier you testified a little
16  bit about when Halliburton employees are sent out
17  to non-Halliburton sites, such as drilling rigs,
18  you said that they rely on the Rig's Safety
19  System. Is that right?
20      A. Typically.
21      Q.          And I guess my question is: Based
22  on your -- your experience with Halliburton,
23  would you expect that Halliburton would send its
24  employees out to work on the DEEPWATER HORIZON if
25  it did not believe the Rig's Safety Systems were

308

1   adequate to protect the Safety of its employees?
2       A. That's correct.

PURSUANT TO CONFIDENTIALITY ORDER

415

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    )   MDL NO. 2179
by the OIL RIG        )
"DEEPWATER HORIZON" in  )   SECTION "J"
the GULF OF MEXICO, ON  )
APRIL 20, 2010      )   JUDGE BARBIER
                    )
                    )   MAG. JUDGE
                    )   SHUSHAN

VOLUME 2 OF 2

Deposition of THOMAS ROTH, taken at
Hilton St. Charles Hotel, 333 St. Charles
Avenue, Le Moyne Room, New Orleans,
Louisiana, on the 26th of July, 2011.

---

416

```
 1          A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING
     COMMITTEE:
 4
     Mr. Thomas Thornhill
 5   Ms. Emily Gebhardt
     THORNHILL LAW FIRM
 6   1308 Ninth Street
     Slidell, Louisiana 70458
 7
     APPEARING FOR BP, INC.:
 8
     Ms. Barbara Harding
 9   Mr. David S. Mitchell
     KIRKLAND & ELLIS
10   333 South Hope Street
     Los Angeles, California 90071
11
     APPEARING FOR TRANSOCEAN:
12
     Mr. Daniel Goforth
13   Ms. Kate H. Easterling
     GOFORTH GEREN EASTERLING, LLP
14   4900 Woodway
     Suite 750
15   Houston, Texas 77056
16   APPEARING FOR ANADARKO PETROLEUM COMPANY:
17   Ms. Sarah E. Iiams
     Ms. Leigh Ann Schell
18   KUCHLER POLK
     1615 Poydras Street
19   Suite 1300
     New Orleans, Louisiana 70112
20
21   APPEARING FOR HALLIBURTON:
22   Mr. Gavin Hill
     Mr. Joel Beus
23   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
     Dallas, Texas 75270-2041
24
25
```

---

417

```
 1          A P P E A R A N C E S (Continued)
 2   APPEARING FOR HALLIBURTON:
 3   Mr. Richard W. Beckler
     Mr. Jason B. Hutt
 4   BRACEWELL GULIANI
     2000 K Street NW, Suite 500
 5   Washington, District of Columbia
     20006-1872
 6
 7   Ms. Stacy S. Russell
     HALLIBURTON
     10200 Bellaire Boulevard
 8   Houston, Texas 77072
 9   APPEARING FOR WEATHERFORD:
10   Mr. Wayne G. Zeringue, Jr.
     Ms. Lauren Courtney Mastio
11   JONES, WALKER, WAECHTER, POITEVENT,
     CARRERE & DENEGRE, L.L.P.
12   201 St. Charles Avenue
     New Orleans, Louisiana 70170
13
     APPEARING FOR DRIL-QUIP, INC.:
14
     Mr. Dennis Barrow
15   WARE, JACKSON, LEE & CHAMBERS
     America Tower, 42nd Floor
16   2929 Allen Parkway
     Houston, Texas 77019-7101
17
     APPEARING FOR M-I SWACO:
18
     Mr. Steven Luxton
19   MORGAN, LEWIS & BOCKIUS, L.L.P.
     1000 Louisiana Street, Suite 4000
20   Houston, Texas 77002-5006
21   APPEARING FOR THE UNITED STATES:
22   Ms. Jessica Sullivan
     U.S. DEPARTMENT OF JUSTICE
23   TORT BRANCH, CIVIL DIVISION
     1425 New York Avenue, N.W.
24   Suite 10100
     Washington, D.C. 20005
25
```

---

418

```
 1          A P P E A R A N C E S (Continued)
 2   APPEARING FOR CAMERON:
 3   Ms. Kathleen A. Gallagher
     BECK REDDEN & SECREST
 4   One Houston Center
     1221 McKinney Street
 5   Suite 4500
     Houston, Texas 77010
 6
     APPEARING FOR MOEX:
 7
     Mr. Greg T. Lembrich
 8   PILLSBURY WINTHROP SHAW PITTMAN, LLP
     1540 Broadway
 9   New York, New York 10036
10   APPEARING FOR THE STATE OF LOUISIANA:
11   Mr. Douglas R. Kraus
     KANNER & WHITELEY, LLC
12   701 Camp Street
     New Orleans, Louisiana 70130
13
     APPEARING FOR THE WITNESS:
14
     Mr. Michael Madigan
15   Mr. John C. Pitts
     ORRICK, HERRINGTON & SUTCLIFFE, LLP
16   1152 35th Street, NW
     Washington, DC 20005
17
     ALSO PRESENT:
18
     Mr. James Deel, Videographer
19
     REPORTED BY:
20      THERESE J. CASTERLINE, CSR, RMR, CRR
        Certified Shorthand Reporter
21      State of Texas
        Certified Shorthand Reporter
22      State of Louisiana
23
24
25
```

1 (Pages 415 to 418)

**PURSUANT TO CONFIDENTIALITY ORDER**

655

7    Q.  (BY MR. GOFORTH)  Are you aware of
8  any evidence that a Transocean employee or
9  manager was negligent in performing his or
10  her job in connection with the Macondo
11  prospect?
12        MS. HARDING: Object to form.
13        MR. HILL: Object to form.
14        MR. MADIGAN: Same objection.
15    A.  I'm not aware of any, sir.
16    Q.  (BY MR. GOFORTH)  Are you aware of
17  any Transocean employee or manager
18  involved in the Macondo prospect ever, in
19  connection with the Macondo prospect,
20  deliberately wanting to cause injury to
21  the environment or any person?
22        MR. MADIGAN: Same objection.
23        MS. HARDING: Object to form.
24        MR. HILL: Same objection.
25    A.  I'm not aware of anyone to -- to

656

1  fill that role.
2    Q.  (BY MR. GOFORTH)  Are you aware of
3  any Transocean employee or manager
4  involved in the Macondo prospect ever, in
5  connection with the Macondo prospect,
6  acting maliciously or not caring about
7  causing injury to another human or the
8  environment?
9        MS. HARDING: Object to form.
10        MR. MADIGAN: Same objection.
11        MR. HILL: Object to form.
12    A.  I'm not aware of any behavior in
13  that area.
14    Q.  (BY MR. GOFORTH)  Thank you.
15        Are you aware of any
16  Transocean employee or manager involved in
17  the Macondo prospect ever, in connection
18  with the Macondo prospect, willfully
19  inflicting harm on any person or on the
20  environment?
21        MR. HILL: Object to form.
22        MR. MADIGAN: Same objection.
23    A.  I'm not aware of any behavior
24  towards that description.
25

657

658



**PURSUANT TO CONFIDENTIALITY ORDER**

1    I, THOMAS ROTH, have read the

2    foregoing deposition and hereby affix my

3    signature that same is true and correct,

4    except as noted on the attached Amendment

5    Sheet.

6    _____

7                        THOMAS ROTH

8    THE STATE OF _TEXAS_ )

9    COUNTY OF _HARRIS_ )

10   Before me, _SHARON PATE_ ,

11   on this day personally appeared

12   THOMAS ROTH, known to me (or proved to me

13   on the oath of _THOMAS ROTH_ or through

14   _____ ) to be the person whose

15   name is subscribed to the foregoing

16   instrument and executed the same for the

17   purposes and consideration therein

18   expressed.

19       Given under my hand and seal of office

20   this _12TH_ day of _SEPTEMBER_ ,

21   2011.

22   _____

23   NOTARY PUBLIC IN AND FOR

24   THE STATE OF _TEXAS_

25   My commission expires: _AUG. 23, 2012_

SHARON R. PATE
Notary Public, State of Texas
My Commission Expires
August 23, 2012

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                    Reported by:
MICHAEL C. SERIO VOL. II         April 29, 2011    JOSEPH R. KAISER, JR., CCR, RPR

Page 368

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL    MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"  SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL     JUDGE BARBIER
20, 2010             MAG. JUDGE SHUSHAN



VOLUME II

Deposition of MICHAEL C. SERIO,
taken in the Pan American Life Center,
Bayou Room, 11th Floor, 601 Poydras Street,
New Orleans, Louisiana 70130, on Friday,
April 29, 2011.


APPEARANCES:


deGRAVELLES, PALMINTIER, HOLTHAUS, &
FRUGÉ
(By:  John W. deGravelles, Esquire,
      Sherry Lassere, Esquire)
618 Main Street
Baton Rouge, Louisiana  70801-1910
      (Plaintiff's Steering Committee)

57da1691-afea-48be-896a-f3df11d594f3

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010     Reported by:
MICHAEL C. SERIO VOL. II        April 29, 2011     JOSEPH R. KAISER, JR., CCR, RPR



Page 457

Page 459

```
 2      Q.   As a lead technical professional
 3  at Halliburton, you were not aware of
 4  anyone within Halliburton that had concerns
 5  with the DEEPWATER HORIZON's rig crew,
 6  their competency in particular?
 7      A.   No, sir.
 8      Q.   You personally had no concerns
 9  with the rig crew's competency; correct?
10      A.   No, sir.
11      Q.   As a lead technical professional
12  at Halliburton, you were not aware of
13  anyone within Halliburton that had any
14  concerns regarding the ability of the
15  DEEPWATER HORIZON rig to safely perform its
16  duties at the Macondo well; correct?
17      A.   Correct.
18      Q.   And you personally had no
19  problems with that; correct?
20      A.   No, sir.
```

Page 458

Page 460

601 Poydras Street, Suite 1720     GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters     Facsimile: (504) 525-9109

57da1691-afea-48be-896a-f3df11d594f3

Suggested line for Running Header

569

WITNESS' CERTIFICATE

1

2

3

4

5

6

7

8    I, **MICHAEL C. SERIO,** read or have

9    had the foregoing testimony read to me and

10   hereby certify that it is a true and

11   correct transcription of my testimony, with

12   the exception of any attached corrections

13   or changes.

14

15

16

17

18   _Michael C. Serio_

19   MICHAEL C. SERIO

20

21   _✓_    **Signed with corrections as attached.**

22

23   _____    **Signed with no corrections noted.**

24

25

**GAUDET KAISER, L.L.C.**
Board-Certified Court Reporters

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

VINCENT TABLER VOL. II  June 14, 2011          THU BUI, CCR, RPR

Page 369

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL     )     MDL NO. 2179
by the OIL RIG,       )
DEEPWATER HORIZON in  )     SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010        )     JUDGE BARBIER
                      )
                      )     MAG.  JUDGE
                      )     SHUSHAN


* * * * * * * * * * *
VOLUME 2
* * * * * * * * * * *


        Videotaped deposition of VINCENT
TABLER, taken at Pan-American Building, 601
Poydras Street, 11th Floor, New Orleans,
Louisiana, 70130, on the 14th of June,
2011.

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters   Facsimile:(504) 525-9109

288c186f-d8ae-4e0b-b7dd-f3449bec7f5a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

VINCENT TABLER VOL. II June 14, 2011          THU BUI, CCR, RPR



Page 526

Page 528

18        I understand that you had
19   spent about a year and two months on the
20   DEEPWATER HORIZON prior to April 20th,
21   2010, is that correct?
22        A.   Yes, ma'am.
23        Q.   And prior to that, you had spent
24   time on the DEEPWATER HORIZON, correct?
25   Prior to -- prior to working on the

Page 527

Page 529

1   DEEPWATER HORIZON on the Macondo well in
2   February of 2009, you had worked on the
3   DEEPWATER HORIZON before that, correct?
4        A.   No, ma'am --
5        MR. HARTLEY:
6            Object to form.
7        A.   -- I've never been on the
8   DEEPWATER HORIZON before I was assigned to
9   it.
10        Q.   Okay.  So you -- you worked on
11   the DEEPWATER HORIZON from February 2009
12   through April 20th, 2010; is that correct?
13        A.   Yes, ma'am, that's correct.
14        Q.   And you had worked with the
15   Transocean crew on the DEEPWATER HORIZON
16   that entire time, correct?
17        A.   Yes, ma'am, that's correct.
18        Q.   And the Transocean crew was a
19   skilled crew, correct?
20        MR. CHEN:
21            Objection, form.
22        A.   Yes, ma'am.
23        Q.   They were knowledgeable?
24        A.   Yes, ma'am.
25        Q.   They were capable of performing

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.       Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters  Facsimile:(504) 525-9109

288c186f-d8ae-4e0b-b7dd-f3449bec7f5a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                 Reported by:

VINCENT TABLER VOL. II June 14, 2011         THU BUI, CCR, RPR

Page 530

1  their jobs?
2          MR. CHEN:
3              Objection, form.
4          MR. HARTLEY:
5              Object to form.
6      A.   Yes, ma'am.
7      Q.   And in your view, Transocean
8  did -- did perform its job, correct?
9      A.   Yes, ma'am.
10         MR. HARTLEY:
11             Object to form.
12     Q.   The crew members, they did their
13  jobs?
14         MR. HASSINGER:
15             Objection.
16         MR. HARTLEY:
17             Object to form.
18     A.   Yes, ma'am.
19     Q.   You trusted the Transocean crew
20  members?
21     A.   Yes, ma'am.
22     Q.   I'd like to turn specifically to
23  the -- the Transocean crew members that
24  were working the night of April 20th, 2010,
25  okay?

Page 531

1      A.   Uh-huh.
2      Q.   You knew Mr. Anderson, Jason
3  Anderson, the toolpusher that was on tour
4  on the night of April 20th, 2010, correct?
5      A.   Yes, ma'am, that's correct.
6      Q.   You had worked with him on the
7  DEEPWATER HORIZON?
8      A.   Yes, ma'am.
9      Q.   And you knew Dewey Revette, the
10  driller that was on tour on the evening of
11  April 20th, 2010?
12     A.   Yes, ma'am.
13     Q.   You knew Stephen Curtis, the
14  assistant driller who was on tour the night
15  of April 20th, 2010, correct?
16     A.   Yes, ma'am.
17     Q.   And you knew Donald Clark, the
18  other assistant driller that was on tour
19  the night of April 20th, 2010?
20     A.   Yes, ma'am.
21     Q.   You had worked with all four of
22  those men for over a year, correct?
23     A.   Yes, ma'am.
24     Q.   And in your view, those four men
25  were skilled, correct?

Page 532

1          MR. HARTLEY:
2              Object to form.
3      A.   Yes, ma'am.
4      Q.   They were knowledgeable?
5          MR. HARTLEY:
6              Object to form.
7      A.   As far as I knew, yes, ma'am.
8      Q.   You trusted them?
9      A.   Yes, ma'am.
10     Q.   Did you ever see any of those
11  four men perform their job on the DEEPWATER
12  HORIZON in a negligent fashion?
13         MR. HASSINGER:
14             Objection.
15     A.   No, ma'am.
16     Q.   Are you aware of any Transocean
17  employee or manager involved in the Macondo
18  prospect ever deliberately wanting to cause
19  injury to the environment or any other
20  person?
21         MR. HARTLEY:
22             Object to form.
23     A.   No, ma'am.
24     Q.   Are you aware of any Transocean
25  employee or manager involved in the Macondo

Page 533

1  prospect ever, in connection with the
2  Macondo prospect, acting maliciously or not
3  caring about causing injury to another
4  human or the environment?
5          MR. HASSINGER:
6              Objection.
7          MR. HARTLEY:
8              Object to form.
9      A.   No, ma'am.
10     Q.   Are you aware of any Transocean
11  employee or manager involved in the Macondo
12  prospect ever -- in connection with the
13  Macondo prospect, willfully inflicting harm
14  on any person or the environment?
15         MR. HASSINGER:
16             Objection.
17         MR. HARTLEY:
18             Object to form.
19     A.   No, ma'am.

42 (Pages 530 to 533)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile:(504) 525-9109

288c186f-d8ae-4e0b-b7dd-f3449bec7f5a

Page 424

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY  MDL NO. 2179
THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL 20,  JUDGE BARBIER
2010                  MAG. JUDGE SHUSHAN

VOLUME II

(30)(b)(6)Deposition of HALLIBURTON,

through its designated representative,

RICHARD FRANK VARGO, and RICHARD FRANK VARGO,

individually, 102 Kent Circle, Lafayette,

Louisiana 70508, taken in the Pan American

Life Center, Mardi Gras Room, 11th Floor, 601

Poydras Street, New Orleans, Louisiana, on

Thursday, March 31st, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6009    Board-Certified Court Reporters    Facsimile: (504) 525-9109

3c4b79a1-2e25-45fc-ae26-ea63135dab33

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010

RICHARD FRANK VARGO VOL. II       March 31, 2011   DIANE TEWIS CLARK, RPR, RMR, CRR

Reported By:

Page 585

Page 587

Page 586

Page 588

12          First of all, you're in the
13   cement job.  Are you aware of any mistakes
14   with regard to the pumping or any other
15   involvement that Transocean rig crew members
16   made?
17       A.   I'm not aware of any mistakes.



601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters   Facsimile: (504) 525-9109

3c4b79a1-2e25-45fc-ae26-ea63135dab33

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010          Reported By:
RICHARD FRANK VARGO VOL. II       March 31, 2011  DIANE TEWIS CLARK, RPR, RMR, CRR



Page 589

Page 590

Page 591

15      Q.    All right.  Did -- did the
16   Transocean displacement of the cement, as you
17   described it, was that performed efficiently
18   and accurately and properly as far as you
19   know?
20      A.    As far as I know, yes, sir.

Page 592

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6009       Board-Certified Court Reporters    Facsimile: (504) 525-9109

3c4b79a1-2e25-45fc-ae26-ea63135dab33

976

1

2

3

4

5                    WITNESS' CERTIFICATE

6

7              I have read or have had the

8      foregoing testimony read to me and hereby

9      certify that it is a true and correct

10     transcription of my testimony with the

11     exception of any attached corrections or

12     changes.

13

14

15                    RICHARD FRANK VARGO, JR.

16

17

18

19

20     PLEASE INDICATE
       (  ) NO CORRECTIONS
21     (✓) CORRECTIONS; ERRATA SHEET(S) ENCLOSED

22

23

24

25

**GAUDET, KAISER, L.L.C.**
Board-Certified Court Reporters

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL   )  MDL NO. 2179
by the   OIL RIG,   )
DEEPWATER HORIZON in)  SECTION "J"
the GULF OF MEXICO, )
April 20, 2010   )  JUDGE BARBIER
   )
   )  MAG. JUDGE
   )  SHUSHAN

Deposition of BRYAN DOMANGUE, taken at
Pan-American Building, 601 Poydras Street, 11th
Floor, New Orleans, Louisiana, 70130, on
September 21, 2011.

## Page 2

        A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

    Mr. Frank M. Petosa
    MORGAN & MORGAN
    6824 Griffin Road
    Davie, Florida  33314
    fpetosa@forthepeople.com

APPEARING FOR BP, INC.:

    Ms. Emily Dempsey
    KIRKLAND & ELLIS, LLP
    300 North LaSalle
    Chicago, Illinois 60654
    emily.dempsey@kirkland.com

    Mr. Don K. Haycraft
    Mr. J.T. Nesser
    LISKOW & LEWIS
    701 Poydras, Street 5000
    New Orleans, Louisiana 70139-5099
    dkhaycraft@liskow.com
    jtnesser@liskow.com

APPEARING FOR THE UNITED STATES:
    Mr. Stephen Flynn
    Ms. Jill Dahlmann Rosa
    Mr. David J. Pfeffer
    U.S. DEPARTMENT OF JUSTICE
    Civil Division, Torts Branch
    1425 New York Avenue, NW
    Washington, D.C. 20005
    stephen.flynn@usdoj.gov
    jill.rosa@usdoj.giv
    david.j.pfeffer@usdoj.gov

## Page 3

APPEARING FOR THE UNITED STATES (CONTINUED):
    Mr. Charles B. Wallace
    U.S. DEPARTMENT OF THE INTERIOR
    1849 C Street, N.W.
    Washington, DC  20240
    charles.wallace@sol.doi.gov

APPEARING FOR ANADARKO PETROLEUM COMPANY:
    Mr. Robert E. Guidry
    Mr. Terrance A. Prout
    KUCHLER, POLK, SCHELL, WEINER & RICHESON, LLC
    1615 Poydras Street, Suite 1300
    New Orleans, Louisiana 70112
    rguidry@kuchlerpolk.com
    tprout@kuchlerpolk.com

APPEARING FOR TRANSOCEAN:

    Ms. Julie S. Stanger
    Mr. John J. Michael
    SUTHERLAND, ASBILL & BRENNAN, LLP
    1001 Fannin, Suite 3700
    Houston, Texas  77002-6760
    julie.stanger@sutherland.com
    john.michael@sutherland.com

APPEARING FOR HALLIBURTON:

    Mr. Jerry C. von Sternberg
    Ms. Angelle Adams
    GODWIN, RONQUILLO, PC
    1331 Lamar, Suite 1665
    Houston, Texas 77010
    jvonsternberg@godwinronquillo.com
    aadams@godwinronquillo.com

## Page 4

**APPEARING FOR CAMERON:**
    Mr. Geoff Gannaway
    BECK, REDDEN & SECREST
    1221 McKinney Street, Suite 4500
    Houston, Texas 77010-2010
    ggannaway@brsfirm.com

**APPEARING FOR THE STATE OF LOUISIANA:**
    Mr. David Allen Pote
    KANNER & WHITELEY
    701 Camp Street
    New Orleans, Louisiana 70130
    d.pote@kanner-law.com

**APPEARING FOR WEATHERFORD:**
    Mr. L. Etienne Balart
    JONES WALKER
    201 St. Charles Avenue
    New Orleans, Louisiana 70170
    ebalart@joneswalker.com

APPEARING FOR DRIL-QUIP:
    Ms. Wendy Ware Bishop
    WARE, JACKSON, LEE & CHAMBERS
    2929 Allen Parkway, 42nd Floor
    Houston, Texas 77019-2185
    wendybishop@warejackson.com

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



165

13    Q.        I'd like to mark this as
14 Exhibit 5332.  Will you tell us what this is?
15 Here, sir.
16        (Exhibit 5332 was marked.)
17    A. It's an inspection form that's filled out
18 by our inspectors as a result of -- to check data
19 on the inspection that they'd made.
20    Q. (BY MS. STANGER)  Right.  And you see on
21 the third row down it says:  Rig name TO,
22 DEEPWATER HORIZON.
23        Right?
24    A. Yes.
25    Q. And the date that this inspection was

167

10        Now, looking at -- under Enforcement
11 Actions, the lower part of this drilling
12 inspection form, you see that that's blank,
13 right?  In other words, your inspector didn't
14 fill out any information there, did he or she?
15    A. Right.  Correct.
16    Q. Typically, this is where the MMS
17 inspector would list any incidence of
18 noncompliance, isn't it?
19    A. Correct.
20    Q. And an incidence of noncompliance, the
21 abbreviation that your agency uses is an INC,
22 right?
23    A. Yes.
24    Q. So you agree, don't you, that within this
25 particular section for this inspection conducted

166

1 conducted was on April 1st, 2010, wasn't it?
2    A. Yes.
3    Q. You agree that this is the form used by
4 your agency in conducting its announced or
5 unannounced drilling inspections, isn't it?
6        MS. ROSA: Object to the form.
7    A. One of many forms that's used by the
8 agency, yes.

168

1 on April 1st, 2010, no INC was issued, right?
2    A. For the time period that they were
3 there --
4    Q. Correct.
5    A. -- when this document was entered, there
6 were no INCs.
7    Q. That's okay.  The MMS did not issue an
8 INC on its April 1st, 2010, inspection, did it,
9 sir?
10    A. It would appear no.
11    Q. Now, let me ask you a few questions about
12 inspections generally.  In reviewing the
13 documents produced by your agency, it looks like
14 in the year prior to incident, the MMS inspected
15 the DEEPWATER HORIZON every four to six weeks.
16 Does that sound about right to you?
17    A. That's about right.
18    Q. So that means in a one-year period, the
19 MMS inspected the DEEPWATER HORIZON approximately
20 eight to ten times; is that right, sir?
21        MS. ROSA: Object to the form.
22    A. In district operations we would attempt
23 to make a rig inspection once every month.  There
24 are some instances where weather would preclude
25 that.  So --

**PURSUANT TO CONFIDENTIALITY ORDER**

169

1    Q. (BY MS. STANGER)  I understand.
2    A. -- one could deduct, based off of your
3  time frame, four to six weeks, that eight
4  inspections at a minimum would have been -- would
5  have been conducted.
6    Q. Exactly.  Now, each time the MMS
7  inspected the DEEPWATER HORIZON, this form would
8  have been filled out, right, sir?
9    A. I would hope so, yes.
10    Q. And if any INCs had been issued during
11  those inspections, that would have been indicated
12  in this bottom portion here, the enforcement
13  action, right?
14    A. Yes, one would hope so.
15    Q. Isn't it true that in the year -- the
16  year prior to the incident, that no INCs were
17  issued by the MMS with respect to the DEEPWATER
18  HORIZON?
19       MS. ROSA: Object to the form.
20  Outside the scope of his designation.
21     You can answer.
22    A. I am truly not aware of any of the INCs
23  that were issued on the DEEPWATER HORIZON prior
24  to the incident.
25    Q. (BY MS. STANGER)  But if any had been

170

1  issued, you said that they would --
2    A. This, again, would be a good place to
3  look.

171

172



**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1 of 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of ERIC NEAL, taken at
Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
July 21, 2011.

**2**

1      A P P E A R A N C E S
2
3  APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
     Mr. Walter J. Leger, Jr.
     Ms. Christine E. Sevin
4    LEGER & SHAW
     600 Carondelet Street, 9th Floor
5    New Orleans, Louisiana  70130
6
7  APPEARING FOR THE WITNESS AND THE UNITED STATES:
     Ms. Jill Dahlmann Rosa
     Mr. Stephen Flynn
8    UNITED STATES DEPARTMENT OF JUSTICE
     CIVIL DIVISION, TORTS BRANCH
9    AVIATION & ADMIRALTY SECTION
     P.O. Box 14271
10   Washington, DC  20044-4271
11   Mr. Charles B. Wallace
     U.S. DEPARTMENT OF THE INTERIOR
12   OFFICE OF THE SOLICITOR
     1849 C Street, N.W., Room 6453
13   Washington, DC  20240
14
15 APPEARING FOR BP, INC.:
     Mr. Christopher W. Keegan
16   KIRKLAND & ELLIS
     555 California Street
     San Francisco, California  94104
17
     Ms. Michele E. Gutrick
18   KIRKLAND & ELLIS
     655 Fifteenth Street, NW
19   Washington, D.C.  20005-5793
20
21 APPEARING FOR TRANSOCEAN:
     Mr. M. Benjamin Alexander
     Mr. Robert L. Blankenship
22   PREIS & ROY
     Versailles Centre, Suite 400
23   102 Versailles Boulevard
     Lafayette, Louisiana  70501
24
25

**3**

1
2  APPEARING FOR ANADARKO PETROLEUM COMPANY:
     Ms. Milele St. Julien
3    Mr. Thomas A. Porteous
     KUCHLER POLK SCHELL WEINER & RICHESON
4    1615 Poydras Street, Suite 1300
     New Orleans, Louisiana 70112
5
6  APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
     Mr. William J. Vigen
7    WILLIAMS & CONNOLLY
     725 Twelfth Street, N.W.
     Washington, D.C.  20005
8
9  APPEARING FOR WEATHERFORD:
     Mr. Joseph L. Lowenthal, Jr.
10   JONES, WALKER, WAECHTER, POITEVENT,
       CARRERE & DENEGRE, LLP
11   201 St. Charles Avenue
     New Orleans, Louisiana  70170-5100
12
13 APPEARING FOR DRIL-QUIP, INC.:
     Ms. Wendy Ware Bishop
14   WARE, JACKSON, LEE & CHAMBERS
     America Tower, 42nd Floor
15   2929 Allen Parkway
     Houston, Texas  77019-7101
16
17 APPEARING FOR M-I SWACO:
     Mr. John C. Funderburk
18   MORGAN, LEWIS & BOCKIUS, LLP
     1000 Louisiana Street, Suite 4200
19   Houston, Texas  77002-5006
20
21 APPEARING FOR HALLIBURTON:
     Ms. Gwen E. Richard
     GODWIN RONQUILLO
22   1331 Lamar, Suite 1665
     Houston, Texas  77010-3133
23
     Ms. Lauren L. Mitchell
24   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
25   Dallas, Texas 75270-2041

**4**

1  ALSO PRESENT:
2    Mr. Perry L. Jennings
     AFGE LOCAL 3457
     P.O. Box 10342
3    New Orleans, Louisiana  70183
4    Mr. James Deel, Videographer
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



**129**

**131**

7    Q.    What was the DEEPWATER HORIZON's
8    reputation in terms of safety and performance
9    as a drilling rig in the Gulf of Mexico
10   within MMS?
11       A.    From what I -- from my
12   experience they're one of the best.
13       Q.    Did you find the crew to be
14   competent to perform the operations or any
15   operations you may have witnessed safely and
16   effectively?
17       A.    I don't recall the specific
18   details.
19       Q.    Did you ever observe any
20   problems or issues with crew competency on
21   the DEEPWATER HORIZON?
22       A.    I would say no, simply because I
23   haven't had any issues with Transocean.
24       Q.    Okay.  Do you find the crew or
25   believe the crew to be safety conscious?

**130**

**132**

1    A.    I would say Transocean as a
2    whole safety conscious is very good.
3        Q.    Okay.  You believe Transocean
4    strives to remain in full compliance with all
5    MMS regulations?
6        A.    Yes.
7        MS. ROSA:
8            Object -- object to the form.
9    EXAMINATION BY MR. ALEXANDER:
10       Q.    And when you conducted your rig
11   inspections on the DEEPWATER HORIZON, you did
12   so to the best of your ability, fairly and
13   objectively and without bias or prejudice for
14   any of the companies working on that rig?
15       A.    Yes.
16       Q.    And you take your inspections
17   very seriously because worker safety is at
18   stake?
19       A.    Yes.
20       Q.    Okay.  And, again, during those
21   inspections you found no issues of
22   noncompliance with any federal regulations,
23   did you?
24       A.    Based off of my report, no.
25

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN  )  SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of ROBERT NEAL, taken at
Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
19th day of July, 2011.

**2**

1       A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
     Mr. Walter J. Leger, Jr.
     Ms. Christine E. Sevin
4    LEGER & SHAW
     600 Carondelet Street, 9th Floor
5    New Orleans, Louisiana  70130
6
7   APPEARING FOR BP, INC.:
     Mr. Christopher W. Keegan
     KIRKLAND & ELLIS
8    555 California Street
     San Francisco, California  94104
9
     Ms. Michele E. Gutrick
10   KIRKLAND & ELLIS
     655 Fifteenth Street, NW
11   Washington, D.C.  20005-5793
12
     APPEARING FOR TransOcean:
13   Mr. Robert M. Kallum
     PREIS & ROY
14   Versailles Centre, Suite 400
     102 Versailles Boulevard
15   Lafayette, Louisiana  70501
16   Mr. David G. Dickman
     VENABLE
17   575 Seventh Street, NW
     Washington, D.C.
18
19   APPEARING FOR ANADARKO PETROLEUM COMPANY:
     Mr. Matthew I. Kliegman
20   BINGHAM MCCUTCHEN
     399 Park Avenue
21   New York, New York 10022-4689
22
     APPEARING FOR MOEX:
23   Mr. Andrew W. Homer
     PILLSBURY WINTHROP SHAW PITTMAN, LLP
24   725 South Figueroa Street, Suite 2800
     Los Angeles, California 90017-5406
25

**3**

1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
     Mr. William J. Vigen
2    WILLIAMS & CONNOLLY
     725 Twelfth Street, N.W.
3    Washington, D.C.  20005
4
     APPEARING FOR WEATHERFORD:
5    Mr. L. Etienne Balart
     JONES, WALKER, WAECHTER, POITEVENT,
6      CARRERE & DENEGRE, LLP
     201 St. Charles Avenue
7    New Orleans, Louisiana  70170
8
     APPEARING FOR M-I SWACO:
9    Ms. Beth L. Hughes
     MORGAN, LEWIS & BOCKIUS, LLP
10   1000 Louisiana Street, Suite 4200
     Houston, Texas 77002-5006
11
12   APPEARING FOR HALLIBURTON:
     Ms. Michelle W. MacLeod
13   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
14   Dallas, Texas 75270-2041
15   Ms. Gwen E. Richard
     GODWIN RONQUILLO
16   1331 Lamar, Suite 1665
     Houston, Texas  77010-3133
17
18   APPEARING AS OBSERVER FOR THE
     U.S. DEPARTMENT OF THE INTERIOR:
19   Mr. Charles B. Wallace
     U.S. DEPARTMENT OF THE INTERIOR
20   OFFICE OF THE SOLICITOR
     1849 C Street, N.W.
21   Room 6453
     Washington, D.C.  20240
22
23   APPEARING FOR THE UNITED STATES:
     Mr. Stephen G. Flynn
24   U.S. DEPARTMENT OF JUSTICE
     TORT BRANCH, CIVIL DIVISION
25   1425 New York Avenue, N.W.

**4**

1    Suite 10100
     Washington, D.C.  20005
2    Post Office Box 14271
     Washington, D.C.  20044-4271
3
4    Ms. Jill D. Rosa
     U.S. DEPARTMENT OF JUSTICE
5    CIVIL DIVISION, TORTS BRANCH
     AVIATION & ADMIRALTY SECTION
6    1425 New York Avenue, N.W.
     Suite 10100
7    Washington, D.C.  20005
     Post Office Box 14271
8    Washington, D.C.  20044-4271
9
     APPEARING FOR DRIL-QUIP, INC.:
10   Ms. Wendy Ware Bishop
     WARE, JACKSON, LEE & CHAMBERS
11   America Tower, 42nd Floor
     2929 Allen Parkway
12   Houston, Texas  77019-7101
13
     ALSO PRESENT:
14   Mr. Nick Gonzalez
     Mr. Perry L. Jennings
15   Ms. Kayla Barnes, videographer
16
17
18
19
20
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**



165

167

166

168

19    Q.  Okay.  And did -- based upon your
20  inspections of the HORIZON in February of 2010 and
21  March of 2010, did you form an opinion as to the
22  housekeeping propensity, so to speak -- using your
23  word -- of the crew?
24    A.  Uh-huh.  Yes, sir.
25    Q.  What was that?

42 (Pages 165 to 168)

PURSUANT TO CONFIDENTIALITY ORDER



169

1   A.  Very good.
2       Q.  Based upon your inspections of these areas
3   as you've outlined in -- some in February and
4   March, some just in March --
5   A.  Uh-huh.
6       Q.  -- did you form any opinions as to the
7   safety culture onboard the HORIZON?
8           MR. FLYNN: Objection as to form.
9           You can answer if you understand it.
10  A.  It was as good as any other rig.
11      Q.  (BY MR. KALLAM)  All right.  You did not
12  see -- you did not note any deficiencies in
13  particular areas that warranted an INC or any
14  notation in your inspection reports; is that
15  correct?
16  A.  That is correct.

171

170

172

**PURSUANT TO CONFIDENTIALITY ORDER**



173

175

20    Q.  All right.  And in this instance, based on
21  the multiple times that you observed the crew, you
22  did not see anything that gave you cause or
23  concern that they were not well trained and
24  competent to respond to a well control situation?
25    A.  That's correct.

174

176

1    Q.  You also, I think, reviewed documents in
2  IADC reports that reflected either loss of
3  circulation or well control events in the past; is
4  that a fair characterization?
5    A.  Yes, sir.
6    Q.  All right.  Based upon -- and I know you
7  weren't there at the time, but based upon your
8  review of those documents, did you feel as though
9  and were you of the opinion that the crew had
10  properly responded to either that loss circulation
11  event or well control event?
12    A.  Yes, sir.

PURSUANT TO CONFIDENTIALITY ORDER



177

1 ███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████

11     Q.          You know Jimmy Harrell, the
12 OIM?
13     A. Yes, sir.
14     Q. All right.  Based on your personal
15 experience of Mr. Harrell, did you feel that he
16 was a knowledgeable and capable OIM?
17     A. Yes, sir.
18     Q. Did you have any concerns that Mr. Harrell
19 was not safety conscious and out to protect his
20 crew, those aboard the rig and the environment?
21     A. Yeah.  Very conscientious.
22     Q. All right.  Did you ever observe anything
23 from looking at the documents that were aboard the
24 rig or observing the crew in action, so to speak,
25 that gave you any concerns, whatsoever, about

178

1 Mr. Harrell's competency and conscientiousness?
2     A. No.
3     Q. Did you know a driller by the name of
4 Mr. Dewey Revette?
5     A. If he was there, yes, I -- I would have
6 known him, yes.
7     Q. But as we -- as we sit here today, do you
8 recall a driller by the name --
9     A. Yeah.
10     Q. -- of Dewey Revette?
11     A. Correct.

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████

23     Q. Okay.  Based upon what you recall of Mr.
24 Revette, did you feel as though he was properly
25 trained and competent to act as a driller aboard

179

1 the DEEPWATER HORIZON?
2     A. Yes, sir.
3     Q. Did he exhibit to you any characteristics
4 that gave you concern from the standpoint of a --
5 of a conscientious competency level to respond to
6 a well control situation?
7     A. No, sir.
8     Q. If he had, you would have noted that?
9     A. Yes, sir.
10     Q. Same questions for Mr. Anderson, do you --
11 do you know Mr. Anderson?
12     A. Uh-huh.
13     Q. You do.  That's a "yes"?
14     A. Yes, sir.
15     Q. Same questions insofar as Mr. Anderson was
16 concerned, did you feel he was trained and
17 competent to respond appropriately to a well
18 control situation?
19     A. Yes, sir.
20     Q. Do you know Mr. Randy Ezell?
21     A. Yes, sir.
22     Q. Same questions with regard to Mr. Ezell,
23 based upon what you saw and observed, did Mr.
24 Ezell, in reading the reports that he was involved
25 with, did you feel that he was properly trained

180

1 and competent to respond to a well control event?
2     A. Yes, sir.
3     Q. Did you have any hesitation at all insofar
4 as what you observed of Mr. Ezell, Mr. Revette,
5 Mr. Anderson, or Mr. Harrell that would lead you
6 to believe that they would not respond quickly and
7 conscientiously in connection with the well
8 control event?
9     A. No, sir.
10     Q. Let's talk for a moment about the -- the
11 BOP.  What documents, in particular, did you
12 review insofar as BOP -- connection with
13 maintenance operation or testing?
14     A. The BOP test charts.
15     Q. All right.  And the result of that --
16 those testing that was performed, as evidenced by
17 the charts, is indicated on Exhibit 4126 and 4121?
18 Did you record those results in the BOP test
19 section?
20     A. Yes, sir, I did.
21     Q. All right.  And as I asked you earlier,
22 did you have any concerns about the veracity or
23 the accuracy of the testing charts that you looked
24 at?
25     A. No, sir.

45  (Pages 177 to 180)

**PURSUANT TO CONFIDENTIALITY ORDER**

181

1      Q.  Was it your opinion based upon the
2  February, March inspection that the BOP aboard the
3  DEEPWATER HORIZON insofar as a maintenance
4  standpoint was in compliance with all MMS
5  regulations?
6      A.  Yes, sir.
7      Q.  Same question insofar as the operation of
8  the BOP, based upon what you saw in records and
9  observed, was BOP in compliance with all MMS
10 regulations from an operational standpoint?
11     A.  Yes, sir.
12     Q.  Was BOP in compliance with all MMS
13 regulations from a testing standpoint?
14     A.  Yes, sir.
15     Q.  You were not aware in February or March of
16 any testing or any other maintenance issues
17 associated with BOP that were not being performed
18 as otherwise mandated by the MMS?
19     A.  I don't recall that.
20     Q.  All right.  If you had found that certain
21 items as mandated by the MMS were not being
22 performed on the BOP, you would have certainly
23 noted that in your -- in your inspection report,
24 correct?
25     A.  Yes.

183



182

1           MR. FLYNN:  Objection as to form.
2      Q.  (BY MR. KALLAM)  That would have been an
3  INC?
4      A.  Yes, sir.
5      Q.  All right.  And in conjunction with both
6  the February and March reports, there are no --
7  no INC's associated with the BOP; is that correct?
8      A.  That's correct.

184

21     Q.  At any point in time while you were aboard
22 the DEEPWATER HORIZON in February or March of --
23 of 2010, did you observe any safety hazard or
24 safety concern at all?
25     A.  I don't recall.

46  (Pages 181 to 184)

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL   )   MDL NO. 2179
by the  OIL RIG,   )
DEEPWATER HORIZON in )   SECTION "J"
the GULF OF MEXICO,  )
April 20, 2010     )   JUDGE BARBIER
                    )
                    )   MAG. JUDGE
                    )   SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Videotaped deposition of FRANK
PATTON, taken at Hilton Hotel, 333 St.
Charles Avenue, 7th Floor, New Orleans,
Louisiana on the 13th of July, 2011.

**2**

1        A P P E A R A N C E S
2
   Mr. Duke Williams
3  WILLIAMS LAW GROUP, LLC
   909 Poydras Street, Suite 1650
4  New Orleans, Louisiana 70112
5  Mr. Chris Zainey
   WILLIAMS LAW GROUP, LLC
6  909 Poydras Street, Suite 1650
   New Orleans, Louisiana 70112
7
        APPEARING FOR THE PLAINTIFFS'
8           STEERING COMMITTEE
9  Mr. Christopher Keegan
   KIRKLAND & ELLIS, LLP
10 555 California Street
   San Francisco, California 94104
11 Phone:  415-439-1882 Fax:  415-439-1682
12 Ms. Michele Gutrick
   KIRKLAND & ELLIS, LLP
13 655 Fifteenth Street, N.W.
   Washington, D.C. 20005
14 Phone:  202-879-5054 Fax:  202-654-9615
   E-mail:  michele.gutrick@kirkland.com
15
        APPEARING FOR BP, INC.
16
   Mr. Stephen G. Flynn
17 U.S. DEPARTMENT OF JUSTICE
   Civil Division, Torts Branch
18 1425 New York Avenue, Northwest
   Suite 10100
19 Washington, D.C. 20005
   Phone:  202-616-4070 Fax:  202-616-4002
20
   Ms. Jill Rosa
21 U.S. DEPARTMENT OF JUSTICE
   Civil Division, Torts Branch
22 1425 New York Avenue, Northwest
   Suite 10100
23 Washington, D.C. 20005
   Phone:  202-616-4070 Fax:  202-616-4002
24
25

**3**

1  APPEARANCES:(Continued)
2
   Mr. Charles B. Wallace
3  U.S. DEPARTMENT OF JUSTICE
   1849 C Street, N.W.
4  Room 6453
   Washington, D.C. 20240
5  Phone:  202-208-6371 Fax:  202-208-6475
6  Ms. Sarah Doverspike
   U.S. DEPARTMENT OF JUSTICE
7  1849 C Street, N.W.
   Room 6453
8  Washington, D.C. 20240
   Phone:  202-208-6371 Fax:  202-208-6475
9
        APPEARING FOR THE UNITED
10         STATES OF AMERICA
11 Mr. Matt Kliegman
   BINGHAM McCUTCHEN, LLP
12 399 Park Avenue
   New York, New York 10022
13
        APPEARING FOR ANADARKO
14
   Mr. Jerome C. Roth
15 MUNGER, TOLLES & OLSON, LLP
   560 Mission Street, 27th Floor
16 San Francisco, California 94105
   Phone:  415-512-4010 Fax:  415-644-6910
17 E-mail:  jerome.roth@mto.com
18 Ms. Esther H. Sung
   MUNGER, TOLLES & OLSON, LLP
19 355 South Grand Avenue, 35th Floor
   Los Angeles, California 90071
20 Phone:  213-683-9298 Fax:  213-683-5198
   E-mail:  esther.sung@mto.com
21
   Mr. Paul Thibodeaux
22 FRILOT, L.L.C.
   1100 Poydras Street, Suite 3700
23 New Orleans, Louisiana 70163
   Phone:  504-599-8204
24
25      APPEARING FOR TRANSOCEAN

**4**

1  APPEARANCES:  (Continued)
2
   Mr. Jeffrey M. Golub
3  BECK, REDDEN & SECREST
   1221 McKinney Street, Suite 4500
4  Houston, Texas 77010-2010
   Phone:  713-951-3700 Fax:  713-951-3720
5
        APPEARING FOR CAMERON
6
7  Mr. Sean Fleming
   GODWIN RONQUILLO
8  1201 Elm Street, Suite 1700
   Dallas, Texas 75270-2041
9
10      APPEARING FOR HALLIBURTON
11 Mr. Christian Van Kleef
   WARE, JACKSON, LEE & CHAMBERS
12 4929 Allen Parkway, 42nd Floor
   Houston, Texas 77019
13
        APPEARING FOR DRIL-QUIP
14
15 Mr. James B. "J.B." Tarter
   MORGAN LEWIS
16 1000 Louisiana Street, Suite 4000
   Houston, Texas 77002
17 Phone:  713-890-5745 Fax:  713-890-5001
18
        APPEARING FOR M-I SWACO
19 Mr. Bill Joyce
   JONES WALKER
20 201 St. Charles Avenue
   New Orleans, Louisiana 70170
21 Phone:  504-582-8448
22      APPEARING FOR WEATHERFORD
23 Ms. Jill Lansden
   MITCHELL LANSDEN & ASSOCIATES
24 1401 McKinney, Suite 2250
   Houston, Texas 77010
25 Phone:  713-220-2224

1 (Pages 1 to 4)

PURSUANT TO CONFIDENTIALITY ORDER



**349**

**351**

21 Q.   At any point, sir, during the
22 drilling of the Macondo well, did you ever
23 become aware of any issuance of
24 noncompliance with respect to any
25 requirement related to Transocean?

**350**

**352**

1      A.   No.
2      Q.   Did you ever indicate to anybody
3 that you thought that Transocean was not in
4 compliance with any of the requirements
5 that were imposed on -- any requirements
6 imposed on it in connection with the
7 drilling of the well?
8      A.   No.
9      Q.   Did anybody ever report to you
10 that they believed Transocean was not in
11 compliance with anything they were supposed
12 to be doing in connection with the well?
13      A.   No.
14      Q.   Did BP ever complain to you
15 about any aspect of Transocean's operations
16 with respect to the well?
17      A.   No.
18      Q.   Did BP ever say to you that
19 Transocean wasn't doing something that it
20 was required to do?
21      A.   No.
22      Q.   Did -- you told us earlier that
23 there were inspectors from the MMS who went
24 onboard -- I think you told us monthly --
25 to inspect the rig, correct?

88  (Pages 349 to 352)

**PURSUANT TO CONFIDENTIALITY ORDER**



353

```
1        A.   Yes, approximately monthly they
2   would -- were required to inspect the
3   drilling rigs.
4        Q.   Did those inspectors ever tell
5   you that they ever observed any aspect of
6   anything that Transocean was doing that was
7   not in compliance with any requirement?
8        A.   To the best of my knowledge, no.
9        Q.   Did they tell you that -- that
10  Transocean was in violation of any -- of
11  any regulations under the -- that --
12  overseen by the MMS?
13       A.   To the best of my knowledge, no.
14       Q.   You're not aware of any such
15  violations?
16       A.   That is correct.
17       Q.   At any point, did MMS issue any
18  INCs to Transocean?
19          MR. KEEGAN:
20            Objection, form.
21       A.   I'm not aware of any being
22  issued.
```

**PURSUANT TO CONFIDENTIALITY ORDER**

273

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL        )  MDL NO. 2179
BY THE OIL RIG          )
"DEEPWATER HORIZON" IN  )  SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010          )  JUDGE BARBIER
                        )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOLUME 2

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of MICHAEL SAUCIER, taken at
the Hilton Hotel, 333 St. Charles Avenue, New
Orleans, Louisiana, 70130, on the 28th day of
July, 2011.

---

274

```
 1    A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
       Mr. Walter J. Leger, Jr.
 4     Ms. Christine E. Sevin
       LEGER & SHAW
 5     600 Carondelet Street, 9th Floor
       New Orleans, Louisiana 70130
 6
 7   APPEARING FOR BP, INC.:
       Mr. Christopher W. Keegan
       KIRKLAND & ELLIS
 8     555 California Street
       San Francisco, California  94104
 9
10     Ms. Stephanie S. Thibault
       KIRKLAND & ELLIS
       300 North LaSalle
11     Chicago, Illinois  60654
12
13   APPEARING FOR TRANSOCEAN:
       Mr. Paul C. Thibodeaux
       FRILOT
14     1100 Poydras Street, Suite 3600
       New Orleans, Louisiana 70163
15
       Mr. Robert L. Blankenship
16     PREIS & ROY
       Versailles Centre, Suite 400
17     102 Versailles Boulevard
       Lafayette, Louisiana 70501
18
19   APPEARING FOR ANADARKO PETROLEUM COMPANY:
       Mr. Daniel A. Saunders
20     Ms. Elisa Cervantes
       BINGHAM MCCUTCHEN
21     The Water Garden
       Fourth Floor, North Tower
22     1620 26th Street
       Santa Monica, California 90404-4060
23
24   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
       Mr. Eric G. Blankenstein
25     WILLIAMS & CONNOLLY
```

---

275

```
 1     725 Twelfth Street, N.W.
       Washington, D.C.  20005
 2
 3   APPEARING FOR WEATHERFORD:
       Mr. Michael A. Chernekoff
 4     JONES, WALKER, WAECHTER, POITEVENT,
       CARRERE & DENEGRE, LLP
 5     JP Morgan Chase Tower
       600 Travis, Suite 6601
 6     Houston, Texas 77002
 7
 8   APPEARING FOR M-I SWACO:
       Mr. Robert S. Brennan, Jr.
       MORGAN, LEWIS & BOCKIUS, LLP
 9     1000 Louisiana Street, Suite 4200
       Houston, Texas 77002-5006
10
11   APPEARING FOR HALLIBURTON:
       Ms. Gwen E. Richard
12     GODWIN RONQUILLO
       1331 Lamar, Suite 1665
13     Houston, Texas  77010-3133
14     Ms. Lauren Mitchell
       GODWIN RONQUILLO
15     1201 Elm Street, Suite 1700
       Dallas, Texas 75270-2041
16
17   APPEARING FOR DRIL-QUIP, INC.:
       Ms. Margaret Bryant
18     WARE, JACKSON, LEE & CHAMBERS
       America Tower, 42nd Floor
19     2929 Allen Parkway
       Houston, Texas  77019-7101
20
21   APPEARING FOR THE UNITED STATES:
       Mr. Stephen G. Flynn
22     U.S. DEPARTMENT OF JUSTICE
       TORT BRANCH, CIVIL DIVISION
23     1425 New York Avenue, N.W.
       Suite 10100
24     Washington, D.C.  20005
       Post Office Box 14271
25     Washington, D.C.  20044-4271
```

---

276

```
 1     Ms. Jill D. Rosa
       U.S. DEPARTMENT OF JUSTICE
 2     CIVIL DIVISION, TORTS BRANCH
       AVIATION & ADMIRALTY SECTION
 3     1425 New York Avenue, N.W.
       Suite 10100
 4     Washington, D.C.  20005
       Post Office Box 14271
 5     Washington, D.C.  20044-4271
 6     Ms. Silvia M. Murphy
       OFFICE OF THE SOLICITOR
 7     DIVISION OF MINERAL RESOURCES
       1849 C Street, NW
 8     Washington, D.C.  20240
 9     Mr. Daniel A. Spiro
       U.S. Department of Justice
10     Civil Division, Fraud Section
       601 D Street N.W., Room 9128
11     Washington, D.C.  20004
12     LCDR Jeffrey R. Bray
       Mr. Dave Dubay
13     U.S. DEPARTMENT OF HOMELAND SECURITY
       OFFICE OF CLAIMS AND LITIGATION
14     U.S. COAST GUARD
       2100 2nd Street, S.W., Stop 7121
15     Washington, D.C.  20593-7121
16
17   APPEARING FOR THE STATE OF LOUISIANA:
       Mr. Douglas R. Kraus
18     KANNER & WHITELEY
       701 Camp Street
19     New Orleans, Louisiana 70130-3504
20   APPEARING FOR O'BRIEN'S/NRC:
       Mr. Patrick E. O'Keefe
21     MONTGOMERY, BARNETT, BROWN, READ,
         HAMMOND & MINTZ, LLP
22     3200 Energy Centre
       1100 Poydras Street
23     New Orleans, Louisiana 70163-3200
24
25   APPEARING FOR AVIATION DYNAMICS:
       Ms. A. Simone Manuel
```

1 (Pages 273 to 276)

**PURSUANT TO CONFIDENTIALITY ORDER**



313

314

9:22  20  During the drilling of the Macondo
21  Well, you never became aware of any issuance of
22  noncompliance with respect to any regulatory
23  requirement related to TransOcean, right?
24      A. I'm not aware of any.
9:22  25      Q. During the drilling of the Macondo Well,

315

1  no one from the MMS ever reported to you that they
2  thought TransOcean was not in compliance with any
3  regulatory requirements imposed on it in
4  connection with the drilling of the well, right?
5      A. Correct.
6      Q. During the drilling of the Macondo Well,
7  the MMS did not issue any INCs to TransOcean,
8  correct?
9      A. As far as I know, no.
10      Q. Prior to the Macondo blowout, all of the
11  BOP testing that was conducted aboard the
12  DEEPWATER HORIZON was deemed acceptable by the --
13  by the MMS, correct?
14          MR. FLYNN: Objection as to form.
15      A. If we haven't issued any INCs, then that
16  would be true.
17      Q. (BY MR. THIBODEAUX)  And you're not aware
18  of any INCs related to BOP testing, correct?
19      A. At this point in time, I'm not.
20      Q. Okay.  Prior to the Macondo blowout, no
21  regulatory compliance issues were raised by MMS to
22  TransOcean regarding any problems with the
23  maintenance of the DEEPWATER HORIZON, right?
24      A. As far as I'm aware, no.
25      Q. I'm sorry.  I didn't hear you.

316

1      A. As far as I'm aware, no.
2      Q. Prior to the Macondo Well blowout, no
3  regulatory compliance issues were raised by MMS to
4  TransOcean regarding any problems regarding the
5  TransOcean rig crew, right?
6      A. As far as I'm aware, correct.
7      Q. Prior to the Macondo blowout, you were
8  never informed by anyone from MMS that the
9  TransOcean -- that TransOcean or any of its
10  employees on the DEEPWATER HORIZON exhibited a
11  callous disregard for safety -- for the safety of
12  individuals or the environment, right?
13      A. Correct.
14      Q. You're not aware of any maximum
15  anticipated surface pressure calculations or
16  predictions that were submitted by TransOcean to
17  the MMS regarding the Macondo Well, right?
18      A. Correct.
19      Q. Prior to the Macondo blowout, the MMS did
20  not raise any issues with TransOcean regarding the
21  configuration of the BOP, including the number and
22  capacity of the annular preventers, blind shear
23  rams, casing shear ram, or variable bore rams,
24  right?
25      A. Correct.

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL   ) MDL NO. 2179
BY THE OIL RIG   )
"DEEPWATER HORIZON" IN ) SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010   ) JUDGE BARBIER
   ) MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of David James Trocquet,
Individually and as a Corporate Representative,
taken at the Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on the 23rd day of September, 2011.

**3**

```
 1    APPEARING FOR DRIL-QUIP, INC.:
         Ms. Wendy Ware Bishop
 2       WARE, JACKSON, LEE & CHAMBERS
         America Tower, 42nd Floor
 3       2929 Allen Parkway
         Houston, Texas  77019-7101
 4
      APPEARING FOR M-I SWACO:
 5       Mr. Steven A. Luxton
         MORGAN, LEWIS & BOCKIUS, LLP
 6       1111 Pennsylvania Avenue, NW
         Washington, D.C.  20004
 7
      APPEARING FOR HALLIBURTON:
 8       Mr. Jerry C. von Sternberg
         GODWIN RONQUILLO
 9       1331 Lamar, Suite 1665
         Houston, Texas  77010-3133
10
         Ms. Angelle M. Adams
11       GODWIN RONQUILLO
         Renaissance Tower
12       1201 Elm Street, Suite 1700
         Dallas, Texas 75270-2041
13
      APPEARING AS OBSERVER FOR THE
14    U.S. DEPARTMENT OF THE INTERIOR:
         Mr. Charles B. Wallace
15       U.S. DEPARTMENT OF THE INTERIOR
         OFFICE OF THE SOLICITOR
16       1849 C Street, N.W.
         Room 6453
17       Washington, D.C.  20240
18    APPEARING FOR THE UNITED STATES:
         Mr. Stephen G. Flynn
19       U.S. DEPARTMENT OF JUSTICE
         TORT BRANCH, CIVIL DIVISION
20       1425 New York Avenue, N.W.
         Suite 10100
21       Washington, D.C.  20005
         Post Office Box 14271
22       Washington, D.C.  20044-4271
23       Mr. Kelley C. Hauser
         U.S. DEPARTMENT OF JUSTICE
24       601 D Street, N.W.
         Washington, D. C.  20004
25
```

**2**

```
 1    A P P E A R A N C E S
 2
 3    APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
         Mr. Frank M. Petosa
 4       Mr. René F. Rocha
         MORGAN & MORGAN
 5       6824 Griffin Road
         Davie, Florida  33314
 6
      APPEARING FOR BP, INC.:
 7       Mr. Christopher W. Keegan
         KIRKLAND & ELLIS
 8       555 California Street
         San Francisco, California  94104
 9
         Mr. R. Allan Pixton
10       KIRKLAND & ELLIS
         300 North LaSalle
11       Chicago, Illinois  60654
12    APPEARING FOR TRANSOCEAN:
         Mr. Paul C. Thibodeaux
13       Ms. Mary K. Klinefelter
         FRILOT
14       1100 Poydras Street, Suite 3600
         New Orleans, Louisiana  70163
15
      APPEARING FOR ANADARKO PETROLEUM COMPANY:
16       Mr. David M. Magee
         BINGHAM MCCUTCHEN
17       One Federal Street
         Boston, Massachusetts 02110-1726
18
      APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
19       Mr. Brad Coffey
         BECK, REDDEN & SECREST
20       One Houston Center
         1221 McKinney Street, Suite 4500
21       Houston, Texas  77010-2010
22    APPEARING FOR WEATHERFORD:
         Mr. Michael A. Chernekoff
23       JONES, WALKER, WAECHTER, POITEVENT,
         CARRERE & DENEGRE, LLP
24       JP Morgan Chase Tower
         600 Travis, Suite 6601
25       Houston, Texas 77002
```

**4**

```
 1       Ms. Jill Dahlmann Rosa
         U.S. DEPARTMENT OF JUSTICE
 2       TORT BRANCH, CIVIL DIVISION
         AVIATION & ADMIRALTY SECTION
 3       1425 New York Avenue, N.W.
         Suite 10100
 4       Washington, D.C.  20005
         Post Office Box 14271
 5       Washington, D.C.  20044-4271
 6       Mr. Daniel A. Spiro
         U.S. DEPARTMENT OF JUSTICE
 7       CIVIL DIVISION, FRAUD SECTION
         601 D Street N.W., Room 9128
 8       Washington, D.C.  20004
         Post Office Box 261
 9       Ben Franklin Station
         Washington, D.C.  20044
10
      APPEARING FOR THE UNITED STATES COAST GUARD:
11       LCMR David M. DuBay
         U.S. DEPARTMENT OF HOMELAND SECURITY
12       OFFICE OF CLAIMS AND LITIGATION
         U.S. COAST GUARD
13       2100 2nd Street, S.W., Stop 7121
         Washington, D.C.  20593-7121
14
      APPEARING FOR THE STATE OF LOUISIANA:
15       Mr. Lambert J. "Joe" Hassinger, Jr.
         GALLOWAY, JOHNSON, TOMPKINS, BURR
16       AND SMITH
         701 Poydras Street, 40th Floor
17       New Orleans, Louisiana  70139
18    ALSO PRESENT:
         Mr. Mark Hendrix, Videographer
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



73

75

1    **Marine Board of Inquiry in May of 2010, there was**
2    **no determination by the MMS that BP, Transocean,**
3    **Halliburton, Sperry-Sun, or any of the other**
4    **contractors on the MC 252 No. 1 Well violated MMS**
5    **Regulations, correct?**
6          **MR. HASSINGER:** Same objection.
7          **MR. VON STERNBERG:** Objection, form.
8          **MR. PETOSA:** Form.
9    A.  To my knowledge, correct.

74

1

14    Q.  (By Mr. Keegan) As of April 19th, 2010,
15    there was no determination by the MMS that BP,
16    Transocean, Halliburton, Sperry-Sun, or any of
17    the other contractors on the MC 252 No. 1 Well
18    violated MMS Regulations, correct?
19          **MR. HASSINGER:** Objection, form.
20          **MR. VON STERNBERG:** Objection.
21          **MR. PETOSA:** Form.
22    A.  Correct.  To my knowledge, that's
23    correct.
24    Q.  (By Mr. Keegan) And as of the date of
25    that the MMS Representatives testified before the

76

**PURSUANT TO CONFIDENTIALITY ORDER**



77

79

78

80

18   Q.  (By Mr. Keegan) And as you sit here
19 today, the BOEMRE has still not issued any
20 violations of applicable Regulations related to
21 the MC 252 No. 1 Well, correct?
22       MR. HASSINGER: Objection.
23       MR. PETOSA: Form.
24   A.  To my knowledge, correct.

20 (Pages 77 to 80)

**PURSUANT TO CONFIDENTIALITY ORDER**



197

199

198

200

21    Q. At any point during the drilling of the
22  Macondo Well, did you ever become aware of any
23  issuance of noncompliance or warning with respect
24  to any regulatory requirement related to
25  Transocean?

**PURSUANT TO CONFIDENTIALITY ORDER**

201

1    A. No.
2    Q. During the drilling of the Macondo Well,
3  did anyone ever report to you that they believed
4  that Transocean was not in compliance with any
5  regulatory requirements imposed on it in
6  connection with the drilling of the Macondo Well?
7    A. No.
8    Q. And during the drilling of the Macondo
9  Well, the MMS never issued any INCs or warnings
10  to Transocean, correct?
11    A. To -- to the best of my -- my
12  recollection, that's correct.
13    Q. Prior to this incident, you did not
14  consider Transocean to have a callous disregard
15  for the safety of individuals or the environment,
16  correct?
17    A. Correct.
18    Q. And you're not aware of anyone within the
19  MMS that considered Transocean to have a callous
20  disregard for the safety of individuals or the
21  environment, right?
22    A. Yes, that's correct.
23    Q. All right. You testified a little bit
24  earlier today about your knowledge of three
25  inspections that occurred on the HORIZON in --

203

1  say, yes, that's correct.
2    Q. And they were adately -- adequately
3  trained to inspect a -- a drilling rig like the
4  DEEPWATER HORIZON and certain components of that
5  rig, like the BOP, correct?
6    A. I would say yes, correct.
7    Q. And the MMS has not identified that the
8  two Neils failed to properly perform their duties
9  in inspecting the DEEPWATER HORIZON and BOP,
10  right?
11    A. Correct.

202

1  in 2010?
2    A. (Nodding.)
3    Q. Do you recall that testimony?
4    A. Yes.
5    Q. Okay. And those inspections were -- were
6  conducted by MMS Inspectors, correct?
7    A. Correct.
8    Q. All right. And they were there to
9  inspect aspects of the rig, as well as the BOP,
10  correct?
11    A. Correct, as well as the -- the particular
12  drilling of the well, the downhole properties of
13  the well.
14    Q. Okay. As a result of those inspections,
15  the MMS never raised any regulatory issue with
16  Transocean regarding any problems relating to the
17  BOP or the rig, correct?
18    A. To my -- to my knowledge, yes, that's
19  correct.
20    Q. Okay. The MMS Inspectors that inspected
21  the HORIZON and the BOP in 2010 were competent
22  Inspectors, correct?
23    A. If -- if -- if my recollection of -- of
24  who those Inspectors were, if that was consisting
25  of -- of Erick Neil and -- and Bob Neil, I would

204



**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL          )  MDL NO. 2179
BY THE OIL RIG         )
"DEEPWATER HORIZON" IN  )  SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010          )  JUDGE BARBIER
                        )  MAG. JUDGE SHUSHAN

Deposition of LIEUTENANT
COMMANDER MICHAEL ODOM, taken at Pan-American
Building, 601 Poydras Street, 11th Floor, New
Orleans, Louisiana, 70130, on the 11th day of
October, 2011.

**2**

1
2
3   A P P E A R A N C E S
4   APPEARING FOR THE PLAINTIFFS' STEERING
    COMMITTEE:
4       Mr. Andrew A. Lemmon
        LEMMON LAW FIRM, L.L.C
5       650 Poydras Street, Suite 2335
        New Orleans, Louisiana  70130
6
        Ms. Laura Smith
7       HANLY CONROY BIERSTEIN
        SHERIDAN FISHER & HAYES, L.L.P.
8       112 Madison Avenue
        New York, New York  10016-7416
9
10  APPEARING FOR BP, INC.:
        Ms. Emily Dempsey
11      KIRKLAND & ELLIS
        300 North LaSalle
12      Chicago, Illinois  60654
13
    APPEARING FOR TRANSOCEAN:
14      Mr. Robert M. Kallum
        PREIS & ROY
15      Versailles Centre, Suite 400
        102 Versailles Boulevard
16      Lafayette, Louisiana  70501
17      Mr. David G. Dickman
        VENABLE
18      575 7th Street, NW
        Washington, D.C.  20004
19
20  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Mr. David M. Magee
21      BINGHAM MCCUTCHEN
        One Federal Street
22      Boston, Massachusetts 02110-1726
23
24
25

**3**

1   A P P E A R A N C E S (Continued)
2
3   APPEARING FOR CAMERON INTERNATIONAL
    CORPORATION:
4       Mr. Thomas Ganucheau
        BECK, REDDEN & SECREST
5       One Houston Center
        1221 McKinney  Street, Suite 4500
6       Houston, Texas  77010-2010
7
        APPEARING FOR WEATHERFORD:
8       Mr. William J. Joyce
        JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
9       201 St. Charles Avenue
10      New Orleans, Louisiana 70170
11
12      APPEARING FOR M-I SWACO:
        Mr. Wendell Bruce Hays
        MORGAN, LEWIS & BOCKIUS, LLP
13      1000 Louisiana Street, Suite 4200
        Houston, Texas 77002-5006
14
15      APPEARING FOR HALLIBURTON:
        Ms. Angelle M. Adams
16      GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
17      Dallas, Texas 75270-2041
18      Mr. Jerry C. von Sternberg
        GODWIN RONQUILLO
19      1331 Lamar, Suite 1665
        Houston, Texas  77010-3133
20
21      APPEARING FOR THE UNITED STATES:
        Ms. Michelle T. Delemarre
22      U.S. DEPARTMENT OF JUSTICE
        TORT BRANCH, CIVIL DIVISION
23      1425 New York Avenue, N.W.
        Suite 10100
24      Washington, D.C.  20005
        Post Office Box 14271
25      Washington, D.C.  20044-4271

**4**

1
    APPEARING FOR THE UNITED STATES COAST GUARD:
2       LCDR David M. Dubay
        U.S. DEPARTMENT OF HOMELAND SECURITY
3       OFFICE OF CLAIMS AND LITIGATION
        U.S. COAST GUARD
4       2100 2nd Street, S.W., Stop 7121
        Washington, D.C.  20593-7121
5
6   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. David A. Pote
7       Attorneys for Louisiana Attorney General
        KANNER & WHITELEY
8       701 Camp Street
        New Orleans, Louisiana  70130-3504
9
10  ALSO PRESENT:
        Mr. Ray Aguirre, Case Manager
11      Ms. Mary Elizabeth Gaasch, Videographer
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



**9**

**11**

22     **Q.    Is it accurate that you were the**
23    **last Coast Guard officer to inspect the**
24    **Deepwater Horizon before the casualty?**
25       A.    Myself, Cal Brown, and Jay

**12**

1    Willimon were the last three Coast Guard
2    officers to conduct an exam for compliance on
3    the Deepwater Horizon, that is correct.
4       **Q.    What was that date of that**
5    **inspection?**
6       A.    I don't -- I would have to look
7    at the COC to give you the exact day, but it
8    was July of 2009, if I recall correctly.

**PURSUANT TO CONFIDENTIALITY ORDER**



17

13   **Q.   And did the Deepwater Horizon**
14   **pass the -- the test that --**
15      A.    They did.  We conducted the exam
16   on the date, and there were no discrepancies
17   found on the exam and there were none cleared
18   for previous exams.  So they had no
19   outstanding discrepancies when we boarded the
20   vessel, and they had no discrepancies when we
21   left the vessel that day.

**PURSUANT TO CONFIDENTIALITY ORDER**

145

147

1   we're going to do a drill while we're there.

146

 4      Q.    Okay.  As part of that
 5   examination of the lifesaving gear, do you
 6   actually perform any drills or mock
 7   simulations with the crew?
 8      A.    We do.
 9      Q.    Okay.  Do you recall what drills
10   or mock simulations were performed with the
11   crew on July 27th of 2009?
12      A.    I do.
13      Q.    Can you tell us what those were?
14      A.    We conducted a fire drill.  If I
15   recall correctly, it was a drill on deck
16   simulating a crane fire.  And we had the
17   crew -- we dis- -- we discussed it with the
18   OIM, the master of the vessel, and -- and --
19   do you want me to go through the entire
20   sequence of what --
21      Q.    Well, and that is a -- that is
22   an -- an unannounced drill that you performed
23   on board the rig as part of your exam?
24      A.    That is correct.  I mean, it's
25   not unannounced as in they don't know that



**PURSUANT TO CONFIDENTIALITY ORDER**

149

1   Q.   And -- and how did the crew of
2 the Deepwater Horizon respond to that, I'll
3 use the word extraordinary, I guess, test
4 that you put them through on July 27th of
5 2009?
6   A.   Satisfactorily.
7   Q.   All right.  Did you see -- did
8 you note any problems at all that would cause
9 you any concern from the standpoint of the
10 competency of the crew to respond to that
11 drill that you put them through on July 27th?
12   A.   None.

151

150

4   Q.   Is it your opinion based upon
5 your review of the Horizon's drill records
6 for fire drills and evacuation drills that
7 there was a good standard being utilized by
8 the crew aboard the Horizon for these drills?
9   MS. DEMPSEY:  Object to form.
10   A.   Based on the standards that we
11 observed, through their recordkeeping --
12   Q.   (BY MR. KALLUM)  Right.
13   A.   -- and through their performance
14 during the fire drill, it was our judgment
15 that they were performing at a -- at a -- at
16 a -- a good level of -- of drills.  They
17 were -- they were expert in their ability to
18 use the equipment and respond to the drill
19 that we initiated.

PURSUANT TO CONFIDENTIALITY ORDER



153



5      Q.     And did you have -- did you note
6  any deficiencies or issues from a safety
7  standpoint associated with the preventative
8  maintenance system on board the Horizon on
9  July 27th of 2009?
10      A.     We did not.
11      Q.     You also tested the shutdowns
12  and the RP relays; is that right?
13      A.     It's not saying that we tested
14  them.  It's saying that we reviewed the
15  records related to PMS and testing of
16  shut-downs and RP relays.
17      Q.     All right.  Okay.
18      A.     That's not saying that we did
19  them.  It's saying we reviewed the records.
20      Q.     Okay.  In reviewing the records
21  of the testing of those shut-downs and RP
22  relays, did you note any deficiencies or
23  issues from a safety standpoint?
24      A.     We did not.

155

8      Q.     All right.  Now, the next
9  sentence says started emergency generator and
10  observed satisfactory gauge readings on the
11  panel.''
12          Here you actually started the
13  emergency generator, correct?
14      A.     That is correct.
15      Q.     All right.  And you found it to
16  be in satisfactory condition?
17      A.     We did.

156

24      Q.     All right.  Then you went on and
25  you looked at the crane servicing reports

**PURSUANT TO CONFIDENTIALITY ORDER**

157

1     **were reviewed and the cranes themselves were**
2     **inspected for damage and compliance with**
3     **applicable regulations; is that right?**
4        A.   That is correct, read correctly.
5        **Q.   And you noted no deficiencies or**
6     **issues concerning safety in connection with**
7     **the cranes?**
8        A.   We did not.
9        **Q.   I got you.  Then it says fire**
10    **and abandon drills were completed**
11    **satisfactorily.  Is that -- are those the**
12    **drills that we described earlier with the**
13    **fire hose and the crane and hiding of the**
14    **roustabout?**
15       A.   That is correct.
16       **Q.   All right.  Then it says,**
17    **"Checked fire boundary doors and ensured**
18    **proper operation."**
19       **Is that correct?**
20       A.   That is correct.
21       **Q.   And then inspected hazardous**
22    **locations for ventilation and electrical**
23    **installations.  Can you tell the Court what**
24    **you did there?**
25       A.   That is a -- one of the things

158

1    we're required to provide is a hazardous area
2    location plan.  We review that plan, and it
3    outlines where the designated hazardous areas
4    are on board the rig.
5       **Q.   Right.**
6       A.   Within those areas, as we do our
7    walk-about we look for intrinsically safe
8    electrical fittings, like on the drill floor
9    or driller's console panel.  We're just
10   looking to make sure that the lighting is
11   sealed and that any intrinsically safe
12   equipment that is within those hazardous
13   areas is intact and appears to be in good
14   working order.
15      **Q.   Okay.  And, in fact, based on**
16   **your inspection on July 27th of 2009 you felt**
17   **that -- or you were of the opinion that they**
18   **were intact and in good order; is that**
19   **correct?**
20      A.   That is correct.
21      **Q.   All right.  Had you observed any**
22   **deficiencies or issues concerning safety**
23   **concerning those electrical installation and**
24   **hazardous areas, you would have so noted it;**
25   **isn't that right?**

159

1       A.   That is correct.
2       **Q.   All right.  And you were given**
3    **paperwork or a layout of the electrical**
4    **equipment in certain hazardous areas, you saw**
5    **that aboard the rig; did you not?**
6       A.   Not of the electrical equipment.
7    We looked at a diagram that shows where that
8    equipment would have been required.
9       **Q.   I got you.**
10      A.   A hazardous area identification
11   plan.
12      **Q.   Okay.  Then you went to that**
13   **area and looked at the electrical equipment**
14   **in that area?**
15      A.   That is correct.
16      **Q.   And you looked at the markings**
17   **on the equipment, correct?**
18      A.   That is correct.
19      **Q.   Didn't see anything abnormal or**
20   **any deficiencies concerning that; is that**
21   **right?**
22      A.   Did not.
23      **Q.   All right.**
24      A.   That is right.
25      **Q.   Then it says, your inspection is**

160

1    complete.  No deficiencies clear -- no
2    deficiencies issued, cleared, or remained
3    outstanding; is that correct?
4       A.   That is correct.



17   **I'd like you to turn to Exhibit 5572, Page 2**
18   **of that exhibit, which I think you've looked**
19   **at earlier.  At the top it says, they**
20   **commended -- excuse me, "They commented" --**
21   **"commented on the vessel's outstanding safety**
22   **culture, performance during drills, and the**
23   **condition of the rig.  No deficiencies**
24   **issued, none are outstanding."**
25      **Does that accurately reflect**

**PURSUANT TO CONFIDENTIALITY ORDER**

161

1  your team's assessment of the Deepwater
2  Horizon after the July 27, 2009 inspection
3  and examination of the rig?
4      A.   I think it's a fair assessment,
5  yes.
6      Q.   All right.  Did you find the
7  crew of the Horizon competent?
8      A.   We did.
9      Q.   Did you find them well trained?
10      A.   We did.
11      Q.   Did you find them indifferent or
12  callous toward safety?
13      MR. LEMMON: Object to form.
14      A.   We did not.
15      Q.   (BY MR. KALLUM)  Did they appear
16  to have a disregard for safety?
17      A.   They did not.
18      MR. LEMMON: Object to form.
19      Q.   (BY MR. KALLUM)  Did they appear
20  to have a disregard for the environment?
21      A.   They did not.

162

13  it.  As part of your inspection, I think you
14  testified earlier -- or exam, as you call it,
15  I think you testified earlier that you
16  visited with the crew members correct?
17      A.   That is correct.
18      Q.   You talked to the crew members;
19  is that right?
20      A.   We did.
21      Q.   And this wasn't just what's for
22  lunch; you questioned them about certain
23  policies and practices aboard the rig; is
24  that right?
25      A.   That is correct.

163

1      Q.   All right.  Operation of
2  equipment, for example; is that right?
3      A.   That is correct.
4      Q.   You also examined paperwork; is
5  that right?  Or your team examined paperwork?
6      A.   The team did.
7      Q.   You personally walked the decks
8  and inspected various areas of the rig, as
9  you outlined earlier?
10      A.   That is correct.
11      Q.   What I want to know is based
12  upon the totality of those events, you
13  concluded that the safety culture on board
14  the Horizon was outstanding; isn't that true?
15      MS. DELEMARRE: Object to form.
16      MS. DEMPSEY: Object to form.
17      MR. LEMMON: Object to form.
18      A.   My opinion of the crew of the
19  rig was that they were well trained and they
20  performed their drills to the -- fire and
21  abandon ship drills and their knowledge of
22  the equipment on board was exceptional, yes.
23      Q.   (BY MR. KALLUM)  All right.
24      A.   They were well trained.
25      Q.   All right.  And when I asked you

164

1  earlier whether you agreed with the sentence,
2  "They commented on the vessel's outstanding
3  safety culture," I thought you told me you
4  agreed with that statement.  Didn't you?
5      MR. LEMMON: Objection; form.
6      A.   I do agree with that statement.

41 (Pages 161 to 164)

**PURSUANT TO CONFIDENTIALITY ORDER**



165

167

1     MS. DELEMARRE: Object to form.
2     A.    I did.
3     Q.    (BY MR. KALLUM)  Did you find
4  that she was fit and seaworthy?
5     MS. DEMPSEY: Object to form.
6     MR. LEMMON: Object to form.
7     MS. DELEMARRE: Same objection.
8     A.    I did.

166

19          Commander Odom, let me go back
20  to your July 29 -- excuse me, 27, 2009
21  inspection.  It's not noted in the activity
22  summary report, but did you find that the
23  Deepwater Horizon as a result of your work
24  and exam and inspection in July of 2009 was,
25  indeed, fit for route and service?

PURSUANT TO CONFIDENTIALITY ORDER

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL     )   MDL NO. 2179
by the  OIL RIG,     )
DEEPWATER HORIZON in   )   SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010    )   JUDGE BARBIER
                  )
                  )   MAG. JUDGE
                  )   SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of William Haynie,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on June 27, 2011.

**2**

1   APPEARANCES:
    Mr. John de Gravelles
2   Ms. Sherry Lassere
    DEGRAVELLES, PALMINTIER, HOLTHANS & FRUGE
3   618 Main Street
    Baton Rouge, Louisiana 70801
4       APPEARING FOR THE
        PLAINTIFFS' STEERING COMMITTEE
5
    Ms. Emily Dempsey
6   KIRKLAND & ELLIS
    300 North LaSalle Street
7   Chicago, Illinois 60654
        APPEARING FOR BP, INC.
8
    Ms. Merilee Allan
9   BINGHAM MCCUTCHEN
    Three Embarcadero Center
10  San Francisco, California  94111
        APPEARING FOR ANADARKO
11
    Mr. Robert Kallam
12  PREIS & ROY, PLC
    601 Poydras, Suite 1700
13  New Orleans, Louisiana 70130-6002
        APPEARING FOR Transocean
14
15  Mr. Collen Meyer
16  Mr. Jerry von Steinberg
    GODWIN RONQUILLO
17  1201 Elm Street, Suite 1700
    Dallas, Texas 75270-2041
18      APPEARING FOR HALLIBURTON
19  Mr. Etienne Balart
    JONES WALKER
20  201 St. Charles Avenue
    New Orleans, Louisiana  70170
21      APPEARING FOR WEATHERFORD
22  Mr. Alex  Roberts
    BECK, REDDEN & SECREST
23  1221 McKinney Street
    Suite 4500
24  Houston, Texas 77010
        APPEARING FOR CAMERON
25

**3**

1   Mr. Paul Kreiger
    MORGAN LEWIS
2   1000 Louisiana Street, Suite 400
    Houston, Texas  77002
3       APPEARING FOR M-I SWACO
4   Ms. Jennifer Hayes
    Mr. Peter Sullivan
5   Mr. Tim Bush
    Mr. Jedd Malish
6   HUGHES HUBBARD
    One Battery Park Plaza
7   New York, New York  10004
        APPEARING FOR ABS
8
    ALSO PRESENT:
9    Mr. James Deel, Videographer
10  REPORTED BY:
        MELISSA L. MAGEE, CSR, RPR, RMR
11      Certified Shorthand Reporter
        Registered Professional Reporter
12      Registered Merit Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25

**4**

1           I N D E X
                           PAGE
2   Appearances............................ 2
3   Examination of William Haynie:
        Examination by Mr. de Gravelles.... 6
4       Examination by Ms. Dempsey......... 181
        Examination of Mr. Kallam.......... 239
5       Examination of Mr. Roberts......... 297
        Examination of Ms. Allan........... 303
6       Examination of Mr. De Gravelles.... 328
        Examination of Mr. Sullivan........ 328
7
    Witness' Certificate................... 331
8   Reporter's Certificate................. 333
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



49

51

8     Q.     With respect to your own
9  personal involvement, you said you looked at
10  your own -- and I forgot the phrase you used,
11  but you looked at your own documents that you
12  generated with respect to the Deepwater
13  Horizon.  Can you tell me the dates -- and if
14  not the specific dates, as close as you can
15  get -- that you actually performed surveying
16  services on the Deepwater Horizon?
17     A.     Well, I'd have to look to
18  give -- I'd have to look at the check sheets
19  to give you accurate dates.  I know I was on
20  there in the early part -- well, I know I was
21  on there in 2003 for annuals.  And then I
22  went back in 2005, and I believe that was
23  February/March, for annuals and a flag
24  change.
25     Q.     Any others that you can recall

50

52

1  that you actually were -- did the surveying
2  work directly as opposed to just being
3  somebody's principal or supervising surveyor?
4     A.     I went out in 2009 to do a UWILD
5  or drydock extension survey.

PURSUANT TO CONFIDENTIALITY ORDER



12    Q.          I think we established
13  before that you've been -- you visited the
14  Deepwater Horizon on three occasions, to your
15  recollection?
16    A.    Yes.
17    Q.    And that would be 2003, 2005,
18  and 2009?
19    A.    Correct.
20    Q.    And you -- in preparation for
21  this deposition, you reviewed some of your
22  reports or checklists from those visits,
23  correct?
24    A.    We went over them, yes, ma'am.
25    Q.    And you never found any major or

**PURSUANT TO CONFIDENTIALITY ORDER**

185

1  serious deficiencies aboard the rig during
2  your visits, correct?
3      MR. DEGRAVELLES: Object to the form.
4      THE WITNESS: If I did, it would have
5  been in my report. And to the best of my
6  knowledge, from reading my report, I didn't
7  find any.
8  BY MS. DEMPSEY:
9      Q.   Did you say you didn't find any?
10     A.   I did not find any major
11 deficiencies, yes.
12     Q.   You noted that if you had found
13 a major or serious deficiency, you would have
14 recorded it in your reports, correct?
15     A.   Yes, ma'am.
16     Q.   So if we look in your reports
17 and we don't see any notations about serious
18 or major defects or deficiencies, could we
19 assume that you didn't find any at the time?
20     A.   Yes, if I had credited the
21 annual surveys and it's nothing noted, I
22 didn't find anything.
23     Q.   Based on your visits to the rig,
24 you never recommended that the rig suspend
25 operations, correct?

186

1      A.   Correct.
2      Q.   Okay. And to your knowledge,
3  none of your colleagues from ABS that
4  attended the rig ever recommended suspension
5  of operations, correct?
6      A.   Not that I know of.
7      Q.   Would you -- in March -- I'm
8  sorry. Strike that.
9          In March 2009 when you visited
10 the rig, you said that in preparation for
11 that visit, you would have looked back at the
12 record of previous surveys and visits to the
13 rig, correct?
14     A.   We pull a survey status that
15 shows us previous visits, outstanding
16 recommendations, if there's in place, to give
17 you an idea, you know, before we go -- we
18 have to pull it before we visit a rig.
19     Q.   And would that survey report --
20 strike that.
21         To the extent that any of your
22 colleagues on previous visits had ever
23 recommended something as serious as a
24 shutdown of the rig, that would appear on the
25 survey report, correct?

187

1      A.   If it was an outstanding that
2  was still in place, if some deficiency they
3  had found that caused them to do that, and it
4  was an outstanding in place, I would have
5  seen that, because it still would have been
6  open. If it was something that had been
7  satisfied, finished, completed, I would have
8  had to go back and open up the previous
9  surveyor's report to see it, yes.
10     Q.   But to your knowledge, none of
11 your colleagues at ABS ever recommended to
12 Transocean or BP or anyone else that the rig
13 suspend operations?
14     A.   To the best of my knowledge.
15     Q.   Okay. And you never recommended
16 that the flag state, whether it be Panama or
17 the Republic of Marshall Islands, pull the
18 statutory certificates for the Deepwater
19 Horizon, correct?
20     A.   I never recommended that.
21     Q.   To your knowledge, no one at ABS
22 recommended to Panama or the Republic of the
23 Marshall Islands that the Deepwater Horizon's
24 statutory certificates were pulled prior to
25 April 2010, correct?

188

1      A.   Correct.



**PURSUANT TO CONFIDENTIALITY ORDER**



253

12    Q.    [redacted].  Now, you mentioned
13  earlier, I believe, in response to questions
14  by counsel for BP, I believe, or perhaps it
15  was PSC, that you were put through a safety
16  orientation when you arrived onboard the
17  Horizon.  Is that right?
18    A.    Yes, sir.
19    Q.    As we sit here today, do you
20  remember that orientation, generally, either
21  in '05, '09, or perhaps even '02?
22    A.    No, sir, I don't remember that.
23    Q.    All right.  You do remember,
24  though, as part of that orientation, that you
25  were aware that you had stop-work authority,

254

 1  correct?
 2    A.    They make that known.  Yes.
 3    Q.    All right.  And there was no
 4  doubt in your mind, especially as a marine
 5  surveyor onboard the Horizon performing an
 6  official role, that if you saw a condition
 7  that posed a safety hazard such that you felt
 8  you needed to stop operations momentarily to
 9  have it corrected, you could have certainly
10  done so; is that right?
11    A.    Yes, sir.
12    Q.    And at no point in time during
13  the -- I count approximately 20 to 21
14  business days -- or working days that you
15  were onboard the rig, aboard the Horizon, you
16  never exercised stop-work authority; is that
17  right?
18    A.    I never did.
19    Q.    All right.  And you never
20  observed a condition as part of all your
21  inspection, of all the various component
22  parts of the rig, that would warrant stopping
23  work due to a safety concern; is that right?
24    A.    That is right.
25    Q.    Now, we've talked about your

255

 1  surveys at three different points in time.
 2  And I'll go over them a little bit in a
 3  moment, but I think generally speaking, you
 4  testified that they were satisfactory or
 5  favorable evaluations.  Is that correct?
 6    A.    Correct.
 7    Q.    Did you -- after spending those
 8  20-plus days aboard the Horizon and
 9  performing these surveys, did you form any
10  opinions of the Horizon, specifically insofar
11  as her safety culture was concerned?
12    MR. DEGRAVELLES: Object to the form.
13    THE WITNESS: I did not see anything
14  that would cause me concern.

256

PURSUANT TO CONFIDENTIALITY ORDER



273

275

274

276

3      Q.            Now, based upon your
4   personal knowledge of what you saw aboard the
5   rig and on those three occasions when you
6   went onboard to perform various surveys, did
7   you always feel that the condition-based
8   maintenance or monitoring program of
9   Transocean was being carried out in a
10  satisfactory manner?
11     A.    The preventative maintenance
12  system in place for the engines and equipment
13  was being carried out satisfactory;
14  otherwise, we wouldn't have credited the
15  survey.
16     Q.    Satisfactory?
17     A.    Satisfactory, yes.
18     Q.    Or you would not have what?
19     A.    Credited the survey.
20     Q.    All right.  And "credited the
21  survey" meaning complete the survey in a
22  favorable manner and post it as being
23  completed until the next year's is required?
24     A.    It would have had deficiency
25  depending upon the severity posted against

69 (Pages 273 to 276)

**PURSUANT TO CONFIDENTIALITY ORDER**

277

1  it, and maybe a return visit once it was
2  corrected.
3      Q.    And as we sit here today, do you
4  remember any deficiencies that you noted in
5  that regard?
6      A.    No, sir.
7      Q.    Based upon your three trips to
8  the Horizon some 21 days onboard, did you
9  ever observe a deficiency that was
10 attributable to a safety management system
11 failure?
12     MR. DEGRAVELLES: Object to the form.
13     THE WITNESS: Let me think.
14 BY MR. KALLAM:
15     Q.    Okay.
16     A.    No, sir.
17     Q.    And I believe you told me just a
18 little while ago, but on those same three
19 occasions where you spent in excess of
20 20 days, you never observed a deficiency that
21 was due to a failure of the RMS system -- or
22 the EMPAC system, which was the rig's
23 maintenance system; is that correct?
24     A.    Correct.
25     Q.    Now, you indicated that it is

278

1  ultimately the owner of the rig -- in this
2  case, Transocean -- that has an obligation to
3  keep the Horizon in compliance with ABS rules
4  and regulations; is that correct?
5      A.    It is his duty to do that and to
6  report to us when it isn't.
7      Q.    All right.  At no point in time
8  did you uncover any deficiency or evidence
9  that Transocean was not keeping the Horizon
10 in compliance with ABS rules and regulations;
11 is that correct?
12     A.    That is correct.



**PURSUANT TO CONFIDENTIALITY ORDER**

329

1     Q.   Sure.  I want to know if the
2 vessel was in class according all of its
3 surveys as of the time of the explosion on
4 April 20th, 2010?
5     A.   Yes, it was.
6     MR. DEGRAVELLES: Object to the form.
7 BY MR. SULLIVAN:
8     Q.   You mentioned something about a
9 window for surveys in which they have to be
10 completed.
11     A.   Yes.
12     Q.   Were the windows for the surveys
13 that were commenced as of April 20th, was
14 there still time within those windows in
15 order to complete the surveys?
16     MR. DEGRAVELLES: Objection to form.
17     THE WITNESS: Yes.  We had until 28
18 May.
19 BY MR. SULLIVAN:
20     Q.   So when the discussion about the
21 window being closed was raised, was it your
22 testimony because it would be no more
23 opportunity to conduct these surveys that the
24 window was closed?
25     MR. DEGRAVELLES: Object to the form.

330

1     THE WITNESS: As we were talking, the
2 rig was on the bottom.  There's no way we
3 could complete our surveys.
4 BY MR. SULLIVAN:
5     Q.   The vessel was in class up to
6 the time of the explosion?
7     A.   Yes.
8     MR. DEGRAVELLES: Object to the form.
9     MR. SULLIVAN: I have nothing further.
10     VIDEO SPECIALIST: Time is 4:59 p.m.
11 We are off the record.
12     (Concluded at 4:59 p.m.)

331

              CORRECTION PAGE
WITNESS NAME: WILLIAM HAYNIE DATE: 6/27/11
PAGE LINE CHANGE          REASON

332

           SIGNATURE PAGE

   I, WILLIAM HAYNIE, have read the
foregoing deposition and hereby affix my
signature that same is true and correct,
except as noted on the correction page.

             WILLIAM HAYNIE

THE STATE OF _Louisiana Parish_
COUNTY OF _Terrebonne Parish_

   Before me, _Sharon C. Tours_ on this
day personally appeared _William Haynie_
known to me [or proved to me on the oath of
_#35.9483_ or through _XXXX_
(description of
identity card or other document)] to be the
person whose name is subscribed to the
foregoing instrument and acknowledged to me
that he/she executed the same for the
purposes and consideration therein expressed.
   Given under my hand and seal of office
this ___ day of _____ 2011.

NOTARY PUBLIC IN AND FOR
THE STATE OF

My Commission Expires:

OFFICIAL SEAL
SHARON C. TOURS
#47475 - Notary Public
State of Louisiana/Terrebonne Parish
Notarial Commission is for life!

           83  (Pages 329 to 332)

**PURSUANT TO CONFIDENTIALITY ORDER**

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL     MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO ON APRIL 20,   JUDGE BARBIER
2010                  MAG. JUDGE SHUSHAN




        Deposition of DAVID McKAY, taken in
the Pan American Life Center, Bayou Room,
11th Floor, 601 Poydras Street, New
Orleans, Louisiana 70130, on Wednesday, May
11, 2011.



APPEARANCES:


        MATTHEWS, LAWSON & JOHNSON, P.L.L.C.
        (By:  Guy E. Matthews, Esquire)
        2000 Bering Drive
        Suite 700
        Houston, Texas 77057-3776
            (Attorneys for PLC)

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010
DAVID McKAY                                    May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR          Reported by:



Page 98

Page 100

23        Did you believe that the culture
24  of rig safety on the Horizon rig was such
25  that the purpose for that rig was to

Page 101

1   complete it, get the well drilled, and get
2   off, to hell with everything else,
3   including rig safety?
4       MR. KALLAM:
5           Object to the form.
6       THE WITNESS:
7           Again, as I said many times
8   before, I don't have any specific
9   recollection of this particular rig
10  compared to other rigs I've done audits on.
11  But my experience of dealing with this
12  particular company is that they're pretty
13  serious about safety management.
14          I would not -- I would've been
15  very surprised to have found an attitude
16  like that.
17  EXAMINATION BY MR. MATTHEWS:
18      Q.   Yeah.  Is there -- what did you
19  say about the company?  In their what?
20      A.   I -- in my -- my experience with
21  dealing with this company, they're pretty
22  serious about safety management.

26  (Pages 98 to 101)

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010

DAVID McKAY                    May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 118

Page 120

Page 121

17    A.    This is the audit report for the
18  ship security audit, ISPS audit that took
19  place onboard the Deepwater Horizon from
20  2007, May 8th, 15th to 16th, it says.
21  That's not a very good copy.  That looks
22  like 15th and 16th.
23    Q.    And, again, with the -- you're
24  the DNV surveyor team; right?
25    A.    That's me, yes.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile: (504) 525-9109

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010                                    Reported by:
DAVID McKAY                              May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 122

Page 124

1    ████████████. I think, looking at
2    my audit report, I was generally pretty
3    satisfied with the implementation of the
4    safety management system.  There were some
5    minor observations that were made.  No
6    non-conformities were found.
7         It seems like the safety
8    management system was well implemented, and
9    the rig was in pretty good condition, and
10   the personnel were competent.

Page 123

125

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile: (504) 525-9109

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010

DAVID McKAY                    May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 298

Page 300

19   Q.   Now, as part of each annual
20 survey, your ultimate goal is to either
21 certify the safety management system as
22 being in compliance with the ISM Code or
23 not; is that correct?
24   A.   That's fair to say.
25   Q.   All right.  Is it fair to say

Page 299

Page 301

1 that from your direct involvement in April
2 of 2005 until April of 2009, the Transocean
3 corporate safety management system has
4 always been in compliance with the ISM
5 Code?
6    MR. HAYCRAFT:
7      Objection to form.
8    MR. MATTHEWS:
9      Object to the form.
10    THE WITNESS:
11      In my opinion, it has.  I've
12 endorsed the Document of Compliance each
13 year for satisfactory completion of the
14 audit, and the Document of Compliance does,
15 in fact, state that -- it's a certificate
16 to state that the system has been found in
17 compliance with the requirements of the ISM
18 Code.  So by endorsing it each year, it's a
19 renewed statement, if you like, from me, as
20 the auditor, saying, I think that you
21 continue to comply.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029   Board-Certified Court Reporters   Facsimile: (504) 525-9109

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010

Reported by:

DAVID McKAY                    May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 310

Page 312

23    Q.    Let's first talk about in the
24  office.
25    A.    Okay.  I think my impression of

Page 311

2    Q.    Well, you've had over five years
3  of experience auditing the safety
4  management system of Transocean corporate
5  office, from April of '05 to April of '09;
6  correct?
7    A.    That's correct.
8    Q.    And you also had the opportunity
9  in 2005 and 2007 to audit the Deepwater
10  Horizon; is that correct?
11    A.    That's correct.

Page 313

1  the people that you have in your corporate
2  office or Transocean has in their corporate
3  office, I beg your pardon, is that they're
4  professional, they're dedicated to their
5  jobs, and they're -- they're pretty
6  focussed on safety management.  I think
7  they -- they see how they can make a
8  difference with their particular job
9  functions, even though it's not onboard.
10  Even though it's in the office, but it
11  affects -- it affects safety and pollution
12  prevention.
13        So I think the safety culture in
14  the Transocean office is good.
15    Q.    Would you agree that
16  Transocean's safety management system was
17  a -- was a well-prepared, robust, and
18  well-implemented system?
19    MR. HAYCRAFT:
20        Object to form.
21    MR. MATTHEWS:
22        Objection to form.
23    THE WITNESS:
24        I would agree with you there.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile: (504) 525-9109

f0485a55-3349-438e-9be4-4bdcc0efda85

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010
DAVID McKAY                          May 11, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 314



Page 316

13    ...  Now, based upon your
14    observations as both a naval architect and
15    a marine surveyor and your interviews of
16    the crew, and you've looked at the rig --
17    all right.  Based upon that, as well as
18    your review of the rig maintenance system,
19    the RMS system concerning maintenance, did
20    you reach conclusion -- a conclusion about
21    the quality of Transocean's maintenance
22    program aboard the Deepwater Horizon?
23        MR. MATTHEWS:
24            Objection to form.
25        THE WITNESS:

Page 317

1        The -- the vessel appeared to be
2    well maintained to me on both visits, as
3    far as I can remember.  It was clean, tidy.
4    There wasn't apparent safety hazards.  The
5    maintenance system was by and large up to
6    date.  There was some minor problems, which
7    I think I reported in 2007.
8        The crew were very professional
9    about how they -- they regarded making sure
10    that they did what they were supposed to do
11    with regard to their duties.  So it seemed
12    to be a well-run operation from my
13    perspective.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile: (504) 525-9109

f0485a55-3349-438e-9be4-4bdcc0efda85

## GAUDET KAISER, L.L.C.

601 Poydras Street, Suite 1720          New Orleans, Louisiana 70130
Phone: (504) 525-9100                   Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT



## <u>WITNESS CERTIFICATE</u>

I,  **DAVID McKAY,** have read or have had the

foregoing testimony read to me and hereby certify

that it is a true and correct transcription of

my testimony, with the exception of any

attached corrections or changes.

6|22|11
_____                    _____

(Date Signed)                  (Signature)


___X___   Signed with corrections as attached.

_____   Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4
Baton Rouge, Louisiana 70816

263 W. Causeway Approach
Mandeville, Louisiana 70448

Website: www.gaudetkaiser.com

PHONE   (225) 291-3411
FAX     (225) 291-7990

PHONE   (504) 525-9100
FAX     (504) 525-9109

ALT. EMAIL:
Gkp2003@aol.com  &  gkp@gaudetkaiser.com

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                                    Reported by:

# VICTOR R. MARTINEZ    April 14, 2011 SANDRA D. FILES, CCR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL       MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN


          Videotaped deposition of VICTOR
R. MARTINEZ, 15526 Jersey Drive, Jersey
Village, Texas 77040, taken in the Pan
American Life Center, Bayou Room, 11th
Floor, 601 Poydras Street, New Orleans,
Louisiana 70130, on Thursday, April 14th,
2011.

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS
STEERING COMMITTEE


GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER
BY:  E. Meunier, Esquire
1100 Poydras Street, Suite 2800
New Orleans, La 70163

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C          Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters    Facsimile: (504) 525-9109

1fb0285f-de13-4a74-98e3-23e4239dc35f

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                Reported by:

VICTOR R. MARTINEZ     April 14, 2011 SANDRA D. FILES, CCR



Page 266

Page 268

18      I want to ask you, start out by
19  asking you some questions on the time when
20  first boarded the rig for inspection.  You
21  said that was April 1st; is that right?
22      A.   That's correct, I believe it was
23  April 2nd.
24      Q.   April 2nd, 2010?
25      A.   Look at my daily report?

Page 269

1      Q.   Sure.  Well, let me just ask you
2  the question and we can get back to the
3  date.  When you first boarded did
4  you -- were you provided a safety
5  orientation by the crew?
6      A.   Yes.
7      Q.   Would you agree that that
8  orientation was conducted in a thorough and
9  professional manner?
10      A.   Yes.
11      Q.   Were you also provided
12  information regarding evacuation plans?
13      A.   Yes.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters

Telephone (504) 525-9100
Facsimile: (504) 525-9109

1fb0285f-de13-4a74-98e3-23e4239dc35f

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                    Reported by:

VICTOR R. MARTINEZ    April 14, 2011 SANDRA D. FILES, CCR



Page 270

3      Q.   In your dealings with Owen
4   McWorter, did you find him to be competent?
5      A.   Yes.
6      Q.   Did you find him to be
7   professional?
8      A.   Yes.
9      Q.   Did you find him to be very
10   knowledgeable about the subsea equipment on
11   the Deepwater Horizon?
12      A.   Yes.
13      Q.   Was he agreeing -- was he
14   agreeable and did he work with you during
15   your inspection?
16      A.   Yes.

Page 272

69 (Pages 270 to 273)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C        Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters        Facsimile: (504) 525-9109

1fb0285f-de13-4a74-98e3-23e4239dc35f

## GAUDET KAISER, L.L.C.

601 Poydras Street, Suite 1720     New Orleans, Louisiana 70130
Phone: (504) 525-9100          Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

### WITNESS CERTIFICATE



RECEIVED
JUN 3 2011

I, **VICTOR R. MARTINEZ,** have read or have had

the foregoing testimony read to me and hereby

certify that it is a true and correct transcription

of my testimony, with the exception of any

attached corrections or changes.

_____          _____
(Date Signed)                              (Signature)


_____✓____ Signed with corrections as attached.

_____ Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4          PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816              FAX      (225) 291-7990

263 W. Causeway Approach                   PHONE   (504) 525-9100
Mandeville, Louisiana 70448               FAX      (504) 525-9109

Website: www.gaudetkaiser.com            ALT. EMAIL:
                                          Gkp2003@aol.com & gkp@gaudetkaiser.com

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                Reported by:

KRISTOFER MILLSAP        May 12, 2011      TAMARA CHAPMAN, CSR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL        )      MDL NO. 2179
by the OIL RIG,          )
DEEPWATER HORIZON in     )      SECTION "J"
the GULF OF MEXICO,      )
April 20, 2010           )      JUDGE BARBIER
                         )
                         )      MAG. JUDGE
                         )      SHUSHAN



\* \* \* \* \* \* \* \* \* \* \* \* \*
VOLUME 1
\* \* \* \* \* \* \* \* \* \* \* \* \*



        Deposition of KRISTOFER MILLSAP,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on May 12, 2011.


APPEARANCES:

Mr. Joseph M. Bruno
Ms. Melissa DeBarbieris
BRUNO & BRUNO
855 Baronne Street
New Orleans, LA 70113-1152
(504) 561-6776

        APPEARING FOR THE
        PLAINTIFFS' STEERING COMMITTEE

d472cba6-df6d-4c6f-83cd-b9f53e80b0d3

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

**KRISTOFER MILLSAP      May 12, 2011     TAMARA CHAPMAN, CSR**

Page 322

Page 324

1       Q.    And when you came onto the
2   DEEPWATER HORIZON to conduct an inspection in
3   April 2010, did you receive a training and
4   orientation?
5       A.    Yes.
6       Q.    And did the staff that conducted
7   that orientation training take it seriously,
8   to your opinion?
9       A.    Yes.

Page 323

325

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters    Facsimile: (504) 525-9109

d472cba6-df6d-4c6f-83cd-b9f53e80b0d3

**GAUDET KAISER, L.L.C.**

601 Poydras Street, Suite 1720          New Orleans, Louisiana 70130
Phone: (504) 525-9100                    Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE

I, **KRISTOFER MILLSAP,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

12 July 2011                              _Kristofer Mll_

(Date Signed)                            (Signature)

_X Km_  Signed with corrections as attached.

_____  Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4          PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816              FAX     (225) 291-7990
263 W. Causeway Approach                  PHONE   (504) 525-9100
Mandeville, Louisiana 70448               FAX     (504) 525-9109
Website: www.gaudetkaiser.com             ALT. EMAIL:
                                          Gkp2003@aol.com & gkp@gaudetkaiser.com