In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010 Reported by:

CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL | ) | MDL NO. 2179 |
| BY THE OIL RIG, | ) | |
| DEEPWATER HORIZON IN | ) | SECTION "J" |
| THE GULF OF MEXICO, | ) | |
| APRIL 20, 2010 | ) | JUDGE BARBIER |
| | ) | |
| | ) | MAG. JUDGE |
| | ) | SHUSHAN |

**************
VOLUME 1
**************

DEPOSITION OF CALEB CHASE HOLLOWAY,

TAKEN AT 14130 HARGRAVE ROAD, HOUSTON,

TEXAS,ON MAY 19, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010 Reported by:
CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 126

Page 127

Page 128

Page 129

Q. (BY MR. HAYCRAFT) WERE YOU PROUD TO WORK ON THE DEEPWATER HORIZON?
A. YES, SIR.

33 (Pages 126 to 129)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010 Reported by:
CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 138

Page 140

Page 139

Page 141

Q. YOU WERE ASKED BY MR. KRAUS --

MR. KINCHEN: DID I PRONOUNCE THAT CORRECTLY?

Q. (BY MR. KINCHEN) -- ABOUT SAFETY HAZARDS. AND I BELIEVE YOU INDICATED

36 (Pages 138 to 141)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

Page 142

THAT FROM THE FIRST DAY YOU WERE ON THE RIG UNTIL APRIL THE 20TH, YOU DID NOT SEE ANYTHING THAT PRESENTED A SAFETY HAZARD. IS THAT WHAT YOU STATED?
A. TO ME, YEAH, I NEVER SAW ANYTHING HAZARDOUS TO ME.
Q. WAS SAFETY A PRIORITY FOR YOU ONBOARD THE DEEPWATER HORIZON?
A. YES.
Q. DID TRANSOCEAN STRESS TO YOU THE IMPORTANCE OF SAFETY IN YOUR ACTIVITIES AS BOTH A FLOOR HAND AND A ROUSTABOUT?
MR. HOLLEY: OBJECT TO FORM.
A. YES, SIR.
Q. (BY MR. KINCHEN) YOU INDICATED THAT YOUR BOSS WAS DEWEY REVETTE. HE WAS A DRILLER?
A. YES, SIR.
Q. WAS HE A FRIEND OF YOURS?
A. VERY GOOD FRIEND OF MINE.
Q. DID YOU WORK WITH HIM SINCE THE FIRST DAY YOU WERE ONBOARD THE DEEPWATER HORIZON?
A. I DIDN'T WORK DIRECTLY WITH HIM. I WORKED WITH -- AS A ROUSTABOUT UNTIL I GOT

Page 143

THE FLOOR HAND SPOT. AND WHEN I GOT THE FLOOR HAND SPOT THEN I WAS ON HIS CREW FOR -- FOR THE REMAINDER OF THE TIME WE WERE OUT THERE.
Q. HE WAS A HARD WORKER?
A. YES, SIR.
Q. YOUR LAST HITCH DID YOU WORK WITH HIM EVERY DAY?
A. YES, SIR.
Q. DID YOU CONSIDER HIM TO BE SAFETY CONSCIOUS?
A. YES.
Q. DID SAFETY -- DID YOU CONSIDER SAFETY TO BE A PRIORITY FOR HIM?
MR. HOLLEY: OBJECT TO FORM.
A. WHAT WAS YOUR QUESTION?
Q. (BY MR. KINCHEN) I ASKED YOU IF YOU CONSIDERED SAFETY TO BE A PRIORITY FOR YOU, AND YOU INDICATED IT WAS. MY QUESTION IS DID YOU CONSIDER SAFETY TO BE A PRIORITY TO -- FOR MR. REVETTE?
A. YES, SIR.
MR. HOLLEY: SAME OBJECTION.
Q. (BY MR. KINCHEN) WERE YOU AWARE OF ANYTHING THAT MR. REVETTE EVER DID ON THE

Page 144

DEEPWATER HORIZON THAT ENDANGERED THE LIFE OF THE CREW ON THE DEEPWATER HORIZON?
MR. HAYCRAFT: OBJECT TO FORM.
JUST FOR CLARITY'S SAKE, WE'VE ALL BEEN OPERATING UNDER THE ASSUMPTION THAT WE'RE TALKING ABOUT UP UNTIL 11:30 ON APRIL THE 20TH. I WOULD WITHDRAW MY OBJECTION IF -- IF THE WITNESS UNDERSTOOD THAT'S WHAT YOU WERE TALKING ABOUT.
Q. (BY MR. KINCHEN) AND MR. HAYCRAFT BRINGS UP A VERY GOOD POINT. ALL MY -- I UNDERSTOOD YOUR -- THE POINT THAT YOUR ATTORNEY MADE AT THE BEGINNING, AND SO ALL OF MY QUESTIONS -- AND I SHOULD HAVE MADE THIS CLEAR EARLIER -- RELATE TO THE TIME PERIOD UP TO 11:30 ON APRIL THE 20TH. AND I DON'T WANT TO SPEAK TO ANY EVENTS AFTER THAT UNLESS I ASK YOU A SPECIFIC QUESTION ABOUT POST -- AFTER THE EXPLOSION. DO YOU UNDERSTAND?
A. YES, SIR.
MR. KINCHEN: OKAY. THANK YOU FOR THAT.
MR. HAYCRAFT: I'LL WITHDRAW MY OBJECTION.

Page 145

Q. (BY MR. KINCHEN) JASON ANDERSON, YOU WORKED UNDER HIM ON THE DEEPWATER HORIZON, TOO, CORRECT?
A. YES, SIR.
Q. HE WAS A TOOL PUSHER?
A. YES, SIR.
Q. FRIEND OF YOURS?
A. YES, SIR.
Q. HARD WORKER?
A. YES, SIR.
Q. DID YOU CONSIDER MR. ANDERSON TO BE SAFETY CONSCIOUS?
A. YES, SIR.
Q. WAS SAFETY -- DID YOU CONSIDER SAFETY TO BE IMPORTANT FOR MR. ANDERSON?
A. YES, SIR.
Q. WERE YOU AWARE OF ANYTHING THAT MR. ANDERSON EVER DID ON THE DEEPWATER HORIZON THAT ENDANGERED THE LIFE OF ITS CREW?
A. NO, SIR.
Q. I RECOGNIZE THAT SOME OF THESE QUESTIONS ARE DIFFICULT BECAUSE OF THE PEOPLE I'M ASKING ABOUT, BUT I THINK THEY'RE IMPORTANT QUESTIONS. IF AT ANY TIME YOU WANT TO TAKE A BREAK, THAT'S FINE.

00906168-d4fd-4273-b58d-b4dadee62290

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010

Reported by:

CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 146

STEPHEN CURTIS, IN THE HIERARCHY ON BOARD THE RIG, STEPHEN CURTIS WAS ABOVE YOU?
A. YES, SIR.
Q. HE WAS ASSISTANT DRILLER?
A. YES, SIR.
Q. OKAY. WAS HE A FRIEND OF YOURS?
A. YES, SIR.
Q. DID YOU WORK WITH HIM EVERY DAY ON THAT LAST DITCH?
A. I DID.
Q. DID YOU CONSIDER HIM TO BE SAFETY CONSCIOUS?
A. YES, SIR.
Q. DID YOU CONSIDER SAFETY TO BE A PRIORITY FOR HIM?
A. YES, SIR.
Q. AND WERE YOU AWARE OF ANYTHING THAT HE EVER DID ON THE DEEPWATER HORIZON THAT ENDANGERED THE LIFE OF THE CREW?
A. NO, SIR.
Q. DON CLARK IS ANOTHER ASSISTANT DRILLER ABOVE YOU, CORRECT?
A. YES, SIR.
Q. FRIEND OF YOURS?

Page 147

A. YES, SIR.
Q. HARD WORKER?
A. YES, SIR.
Q. DID YOU CONSIDER HIM TO BE SAFETY CONSCIOUS?
A. YES, SIR.
Q. DID YOU CONSIDER SAFETY TO BE A PRIORITY FOR HIM?
A. YES, SIR.
Q. WERE YOU AWARE OF ANYTHING THAT HE EVER DID ON THE DEEPWATER HORIZON THAT ENDANGERED THE LIFE OF ITS CREW?
A. NO, SIR.
Q. JIMMY HARRELL WAS THE OIM WHILE YOU WERE ON THE LAST HITCH?
A. YES, SIR.
Q. HOW LONG DID YOU WORK WITH JIMMY?
A. THE WHOLE -- THE WHOLE TIME I WAS ON THE DEEPWATER HORIZON HE WAS OIM. I WORKED SOME WITH HIM AND SOME WITH THE OTHER OIM BECAUSE WE WEREN'T ON THE SAME SCHEDULE.
Q. DO YOU BELIEVE HIM TO BE COMPETENT IN CARRYING OUT THE DUTIES THAT YOU OBSERVED HIM CARRYING OUT AS OIM?

Page 148

A. YES, SIR.
Q. WAS SAFETY A PRIORITY FOR HIM?
A. YES, SIR.
Q. WAS HE A DETAIL-ORIENTED GUY?
A. YES, SIR.
Q. DID HE HAVE AN OPEN-DOOR POLICY?
A. YES, SIR.
Q. YOU FELT COMFORTABLE TALKING TO HIM?
A. YES, SIR.
Q. RANDY EZELL WAS THE SENIOR TOOL PUSHER ON THE LAST DAY, CORRECT?
A. YES, SIR.
Q. HOW LONG DID YOU WORK WITH MR. EZELL?
A. THE SAME -- THE SAME STATUS AS MR. HARRELL. I DIDN'T WORK DIRECTLY WITH HIM BECAUSE WE WERE ON DIFFERENT SCHEDULES, BUT THE WHOLE TIME I WAS ON THE HORIZON FROM DAY ONE I MET HIM AND KNEW HIM UP UNTIL THE 20TH.
Q. DID YOU CONSIDER HIM TO BE SAFETY CONSCIOUS SUCH AS YOURSELF?
A. YES, SIR.
Q. WERE YOU AWARE OF ANYTHING THAT HE EVER DID ON THE DEEPWATER HORIZON THAT

Page 149

ENDANGERED THE LIFE OF THE CREW?
A. NO, SIR.
Q. IN YOUR DUTIES AS FLOOR HAND -- I KNOW YOU'VE COVERED THEM GENERALLY WHEN MR. HAYCRAFT AND MR. WILLIAMSON WERE ASKING YOU SOME QUESTIONS. DID I GATHER THAT TO SOME EXTENT IT INVOLVED MAINTENANCE OF CERTAIN EQUIPMENT?
A. YES, SIR.
Q. OKAY. AND YOU TOOK THAT PART OF YOUR JOB SERIOUSLY, RIGHT?
A. YES, SIR.
Q. DO YOU BELIEVE THAT OTHERS -- YOUR OTHER CREW MEMBERS TOOK MAINTENANCE OF RIG EQUIPMENT SERIOUSLY?
A. YES, SIR.
Q. DID YOU EVER SEE ANYTHING DURING THE ENTIRE TIME YOU WERE ON THE DEEPWATER HORIZON THAT SUGGESTED TO YOU THAT CREW MEMBERS WERE NOT TAKING MAINTENANCE OF THE EQUIPMENT SERIOUSLY?
A. NO, SIR.
Q. A SIMILAR QUESTION TO WHAT MR. KRAUS ASKED, BUT A LITTLE DIFFERENT PERSPECTIVE. AS OF APRIL THE 20TH -- NOT

38 (Pages 146 to 149)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010 Reported by:
CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 150

DURING THE PERIOD AFTER 11:30 ON APRIL THE 20TH, BUT JUST AS OF APRIL THE 20TH -- WERE YOU AWARE OF ANY CONDITIONS ONBOARD THE DEEPWATER HORIZON THAT YOU WOULD CONSIDER A SAFETY CRITICAL PROBLEM?
A. CAN YOU TELL ME THE QUESTION AGAIN?
Q. SURE. I PROBABLY COULD HAVE ASKED IT --
WERE YOU AWARE AS OF APRIL THE 20TH, 2010, BEFORE 11:30 A.M., OF ANY UNSAFE CONDITIONS ONBOARD THE DEEPWATER HORIZON?
A. NO, SIR. NOTHING UNSAFE WE HADN'T DEALT WITH BEFORE.
Q. AND IF YOU EVER SAW ANYTHING THAT WAS UNSAFE ONBOARD THE DEEPWATER HORIZON, YOU WOULD SAY SOMETHING ABOUT IT, CORRECT?
A. YES, SIR.
Q. AND THAT WAS THE TIME-OUT FOR SAFETY THAT SOMEBODY ASKED YOU ABOUT. HAD YOU EVER ACTUALLY CALLED A TIME-OUT FOR SAFETY?
A. YES, SIR.
Q. DID YOU FEEL COMFORTABLE DOING

Page 151

THAT?
A. YES, SIR.
Q. DID YOUR SUPERVISOR SUPPORT YOU WHENEVER YOU DID THAT?
A. YES, SIR.
Q. JIMMY HARRELL SUPPORTED YOU IN DOING THAT?
A. YES, SIR.
Q. ARE YOU AWARE OF ANYONE, ANY TRANSOCEAN EMPLOYEE, EVER GETTING REPRIMANDED OR FIRED FOR CALLING A TIME-OUT FOR SAFETY?
A. NOT THAT I'M AWARE OF.
Q. YOU YOURSELF -- CORRECT ME IF I'M WRONG, BUT YOU YOURSELF ONCE SPOTTED A WORN BOLT ON THE DERRICK, CORRECT?
A. YES, SIR.
Q. OKAY. YOU POINTED IT OUT?
A. YES, SIR.
Q. WAS IT FIXED?
A. I FIXED IT MYSELF.
Q. YOU FIXED IT YOURSELF. DID YOU GET IN TROUBLE FOR POINTING THAT OUT?
A. NO, SIR.
Q. WHAT HAPPENED TO YOU AS A RESULT OF YOU POINTING OUT THE WORN BOLT?

Page 152

A. I WAS REWARDED A WATCH BY MR. HARRELL.
Q. A SILVER WATCH?
A. YES, SIR.
Q. YOU WERE ASKED ABOUT PRE-TOWER MEETINGS, AND I BELIEVE YOU INDICATED THOSE WERE DAILY FOR YOU?
A. YES, SIR.
Q. ONE PER DAY FOR YOU?
A. YES, SIR.
Q. WAS SAFETY DISCUSSED DURING THOSE MEETINGS?
A. YES, SIR.
Q. ONE OF THE FIRST THINGS DISCUSSED?
A. YES, SIR.
Q. WAS IT A BIG TOPIC OF THOSE MEETINGS?
A. YES, SIR.
Q. WITH THAT -- I DON'T KNOW SPECIFICALLY WHAT WAS BEING REFERENCED, BUT I THINK YOU MENTIONED AT SOME POINT WEEKLY MEETINGS. WHAT WERE THE WEEKLY MEETINGS THAT YOU MENTIONED EARLIER IN YOUR TESTIMONY?
A. WEEKLY MEETINGS WERE -- WERE --

Page 153

WAS THE DRILL CREW -- OUR DRILL CREW WOULD GET TOGETHER ONCE A WEEK AND WE WOULD SIT AROUND IN THE CONFERENCE ROOM. AND MR. REVETTE WOULD -- HE WOULD TELL US, YOU KNOW, WHAT WOULD -- WHAT TO EXPECT FOR THE NEXT WEEK.
AND THEN WE WOULD GO AROUND THE TABLE AND EVERYBODY WOULD PITCH IN A LITTLE SOMETHING ABOUT MAYBE WE NEED TO IMPROVE ON THIS, OR EVERYBODY'S DOING A GREAT JOB. JUST BASICALLY A WEEKLY SAFETY MEETING FOR THE DRILL CREW. NOT INVOLVING EVERYBODY, JUST THE DRILL CREW.
Q. YOU ANSWERED MY NEXT QUESTION IN THAT SENTENCE. YOU CALLED IT A SAFETY MEETING. MY QUESTION WAS, WAS SAFETY DISCUSSED DURING THOSE MEETINGS?
A. YES.
Q. IT WAS THE PRIMARY TOPIC DISCUSSED?
A. YES, SIR.

39 (Pages 150 to 153)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, APRIL 20, 2010 Reported by:
CALEB CHASE HOLLOWAY May 19, 2011 DONNA WRIGHT, CSR

Page 154

DO YOU BELIEVE YOU HAD THE NECESSARY TRAINING TO PERFORM YOUR DUTIES AS FLOOR HAND?

A. YES, SIR.

Page 155

DID YOU EVER HEAR ANYONE COMPLAIN ABOUT NOT GETTING PROPER TRAINING FROM TRANSOCEAN ONBOARD THE DEEPWATER HORIZON?

A. NOT THAT I'M AWARE OF.

Page 156

Page 157

40 (Pages 154 to 157)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

00906168-d4fd-4273-b58d-b4dadee62290

**GAUDET KAISER, L.L.C.**
601 Poydras Street, Suite 1720 New Orleans, Louisiana 70130
Phone: (504) 525-9100 Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

RECEIVED
JUN 2 0 2011

**WITNESS CERTIFICATE**

I, **CALEB CHASE HOLLOWAY,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

6/14/11
(Date Signed)

(Signature)

✓ Signed with corrections as attached.

______ Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4
Baton Rouge, Louisiana 70816

263 W. Causeway Approach
Mandeville, Louisiana 70448

Website: www.gaudetkaiser.com

PHONE (225) 291-3411
FAX (225) 291-7990

PHONE (504) 525-9100
FAX (504) 525-9109

ALT. EMAIL:
Gkp2003@aol.com & gkp@gaudetkaiser.com