Page 1

```
          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA


   IN RE:  OIL SPILL      MDL NO. 2179
   BY THE OIL RIG
   "DEEPWATER HORIZON"    SECTION:  J
   IN THE GULF OF
   MEXICO, ON APRIL       JUDGE BARBIER
   20, 2010               MAG. JUDGE SHUSHAN



        Deposition of PAUL J. JOHNSON, taken
   in the Pan American Life Center, Bayou
   Room, 11th Floor, 601 Poydras Street, New
   Orleans, Louisiana 70130, on Monday, March
   28, 2011.



   APPEARANCES:


        LEGER & SHAW
        (By:  Walter J. Leger, Jr., Esquire)
        600 Carondelet Street
        9th Floor
        New Orleans, Louisiana  70130
             (Plaintiff's Steering Committee)
```

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.       Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters   Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON                March 28, 2011    JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 190

Page 191

Page 192

Page 193

```
12     Q.  Can you tell me, briefly, what
13  was the experience level, if you know, of,
14  let's take Mr. Harrell?
15     A.  Jimmy, Jimmy Harrell was very
16  experienced at being an OIM quite a while,
17  you know.  I don't know exactly, you know.
18  You know, he's over 20 years.
19     Q.  Maybe we'll get to ask him.
20         Did he have more experience than
21  you did as a driller, toolpusher?
22     A.  Quite possibly.  I don't know
23  for sure.
24     Q.  How about Randy Ezell?
25     A.  Randy's the same.  He's very
```

49 (Pages 190 to 193)

In Re: OIL SPILL by the OIL RIG *DEEPWATER HORIZON* in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON               March 28, 2011     JOSEPH R. KAISER, JR., CCR, RPR

Page 194

```
1   experienced, you know, I know him for a
2   long time.  I just couldn't tell you the
3   time in each position, but he's very
4   experienced.
```

Page 195

Page 196

Page 197

50 (Pages 194 to 197)

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters    Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON          March 28, 2011          JOSEPH R. KAISER, JR., CCR, RPR
                                                 Reported by:

Page 206

Page 207

Page 208

10    Q.   Did BP ever criticize to you any
11 of the Transocean personnel with regard to
12 well control?
13    A.   No.  No.  I don't believe they
14 did.  I don't recall any.  No.

Page 209

53 (Pages 206 to 209)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.           Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a



In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON          March 28, 2011     JOSEPH R. KAISER, JR., CCR, RPR    Reported by:

Page 302

[redacted]

Page 303

[redacted]

Page 304

[redacted]

22  Q.          But the fact remains
23  that as the operations manager of the
24  DEEPWATER HORIZON, it was your
25  responsibility not to operate the rig if a

Page 305

1   critical piece of equipment was out of
2   certification; correct?
3        MR. JOHNSON:
4            Object to the form of the
5   question.
6        THE WITNESS:
7            Okay.  Take a step back.  I was
8   the rig manager, not the operations
9   manager.  And that I would not operate the
10  rig if the rig wasn't operational and
11  wasn't safe to operate.

[redacted]

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters   Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

Page 420

```
              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA


    IN RE:  OIL SPILL     MDL NO. 2179
    BY THE OIL RIG
    "DEEPWATER HORIZON"   SECTION:  J
    IN THE GULF OF
    MEXICO, ON APRIL      JUDGE BARBIER
    20, 2010              MAG. JUDGE SHUSHAN




                    VOLUME II

         Deposition of PAUL J. JOHNSON, taken
    in the Pan American Life Center, Bayou
    Room, 11th Floor, 601 Poydras Street, New
    Orleans, Louisiana 70130, on Tuesday, March
    29, 2011.


    APPEARANCES:


         LEGER & SHAW
         (By:  Walter J. Leger, Jr., Esquire
               and Christine L. DeSue,
               Esquire)
         600 Carondelet Street
         9th Floor
         New Orleans, Louisiana  70130
              (Attorneys for PSC)
```

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.       Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters    Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON                March 29, 2011     JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 545

[redacted]

Page 546

```
 2     Q.   Okay.  I want to start with a
 3  few questions about the 2009 BP audit, sir.
 4     A.   Okay.
 5     Q.   To be clear, when was that audit
 6  conducted?
 7     A.   It was conducted early
 8  September, 2009.
 9     Q.   Okay.  What was the operational
10  status of the DEEPWATER HORIZON at the time
11  of the BP inspection?
12     A.   The rig was in a plan that would
13  service period, so it was out of service
14  and doing maintenance.
15     Q.   Do you have an understanding as
16  to whether or not BP had the opportunity or
17  the right to demand that any issue be
18  resolved before it agreed that the rig
19  would go back into service?
20     A.   That was my understanding, yes.
21     Q.   Did that, in fact, happen?  Did
22  BP request that the rig not go back into
23  service until some issue was resolved?
24     A.   Yes, they did.
25     Q.   Did Transocean resolve that
```

Page 547

```
 1  issue to BP's satisfaction, as far as you
 2  have an understanding?
 3     A.   Yes, we did.
 4     Q.   And what about Transocean, was
 5  there anything that Transocean wanted to
 6  resolve before sending the rig back into
 7  service?
 8     A.   Yes, there was.
 9     Q.   And what was that, sir?
10     A.   We had an issue with the PRS,
11  which is the pipe racking system.  We did
12  extensive overhaul during that period and
13  then when we put it back together and
14  commissioned it, we thought we had it all
15  worked out but there was obviously was
16  another problem with it.
17          Which I suppose we could have
18  lived with and risk assessment and carried
19  on, and but after consultation with the OIM
20  and the rig team, the feelings were the
21  best thing was to stop and fix it, so
22  that's what we did.
23     Q.   Who made the decision to stop
24  and fix it, Mr. Johnson?
25     A.   Me.
```

Page 548

```
 1     Q.   Were you new in your position as
 2  rig manager for performance at that time?
 3     A.   Yes.  I'd only been there a
 4  couple of weeks at that point, somewhere
 5  around that.
 6     Q.   Did you experience any
 7  hesitation despite being new in your
 8  position in informing BP that you wanted to
 9  resolve an issue before the rig went back
10  into service?
11     A.   No.
12     Q.   Did you feel as if Transocean
13  management backed you on your decision?
14     A.   Yes.  Yes, they did.  And
15  although I was confident, you're still not
16  sure how that information will be received
17  when you inform your bosses.  So, you know,
18  I do recall actually the first time I went
19  was my first ever operation meeting I went
20  to.  And I went to the meeting and I
21  informed the team that we're talking about
22  rig schedule or something, I don't recall.
23          That's when I told them that the
24  rig was going to be an additional six or so
25  days -- I can't recall the time frame --
```

33 (Pages 545 to 548)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

Page 549

1  late. They asked why and I informed them
2  why and they asked how long it was going to
3  be and I told them and they said okay to
4  that and we moved on to another subject.

Page 551

Page 550

Page 552

4   Q. Did you ever receive any
5  feedback from BP personnel regarding
6  Transocean's efforts to close out audit
7  items?
8   A. Yes, I did.
9   Q. Could you tell me what the
10 nature of that feedback was, Mr. Johnson?
11  A. We received very positive
12 feedback from BP on our approach to
13 handling the issues, closing them out and
14 communicating to BP. They were very
15 satisfied with our performance on the
16 action items.
17  Q. From whom did you receive BP --
18 that type of feedback from BP?
19  A. You know, we received written
20 feedback from Angel Rodriguez, you know,
21 and I sat and met regularly with Angel,
22 Brett Cocales, John and Joe Neumeyer and
23 they we.

34 (Pages 549 to 552)

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON        March 29, 2011        JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 557

[redacted]

Page 558

[redacted]

Page 559

2   Q.  Okay.  I want to turn just a
3   minute, if we can, to the culture aboard
4   the DEEPWATER HORIZON.  DEEPWATER HORIZON.
5   And I apologize in advance, Mr. Johnson, if
6   some of these questions are difficult to
7   answer.
8       Did you have any impression
9   about whether the men and women aboard the
10  DEEPWATER HORIZON took pride in their work?
11  A.  Yes, they did.
12  Q.  Did you consider the men and
13  women aboard the DEEPWATER HORIZON to be
14  well trained?
15  A.  Yes.
16  Q.  Did you consider the DEEPWATER
17  HORIZON to have a good safety culture?
18  A.  Yes, I did.
19  Q.  Why?
20  A.  Various reasons, you know.  I
21  have to characterize it -- I pushed
22  tirelessly on safety, that was kind of my
23  number one priority in building the
24  culture.  You can fix everything else,
25  okay, you can fix downtime, you can fix

Page 560

1   everything but you can't fix safety.  If
2   you hurt somebody, you can't take it back.
3       So it was high on my list and we
4   talked about safety every day.  And it was
5   the start of our conversations, it was the
6   start of our meetings, it was in the
7   forefront of everything we did.
8   Q.  Was there anything else,
9   Mr. Johnson that was a higher priority than
10  the safety of the men and women aboard the
11  DEEPWATER HORIZON?
12  A.  No.

[redacted]

36 (Pages 557 to 560)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.        Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON        March 29, 2011        JOSEPH R. KAISER, JR., CCR, RPR

Page 565

Page 566

Page 567

```
 2        First, if you can tell us who on
 3   the Transocean DEEPWATER HORIZON crew would
 4   have had well control responsibilities as
 5   of the time of the incident in terms of
 6   activating the BOP?
 7        A.   Transocean personnel?
 8        Q.   Yes, sir.
 9        A.   Assistant drillers.  Drillers,
10   toolpushers.  OIM, subsea engineer.
11        Q.   What were their names,
12   Mr. Johnson?
13        A.   Steven Curtis, Tom Clark.  Dewey
14   Revette, Jason Anderson.
15        Q.   Were these hard workers,
16   Mr. Johnson?
17        A.   Yeah.
18        Q.   Were they good workers?
19        A.   Yes, they were.
20        Q.   Were they well trained?
21        A.   Yes.
22        Q.   They're the type of workers,
23   based on your experiences, that would have
24   become complacent in doing their jobs?
25        A.   No.
```

Page 568



38 (Pages 565 to 568)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.        Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters   Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL         ) MDL NO. 2179
by the OIL RIG,          )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010        ) JUDGE BARBIER
                      )
                      ) MAG. JUDGE
                      ) SHUSHAN

VOLUME 1

Deposition of JONATHAN D. KEETON, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on August 17, 2011.

## Page 2

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

    Mr. Matthew E. Lundy
    LUNDY, LUNDY, SOILEAU & SOUTH, LLP
    501 Broad Street
    Lake Charles, Louisiana 70601
    mlundy@lundylawllp.com

-

    Ms. Lauren Lundy Adcock
    LUNDY, LUNDY, SOILEAU & SOUTH, LLP
    300 North College Avenue, Suite 309
    Fayetteville, Arkansas 72701
    llundy@lundylawllp.com

-

    Mr. Jimmy Williamson
    WILLIAMSON & RUSNAK
    4310 Yoakum Boulevard
    Houston, Texas 77006-5818
    Jimmy@jimmywilliamson.com

-

    Mr. Andrew Lemmon
    LEMMON LAW FIRM
    650 Poydras Street, Suite 2335
    New Orleans, LA 70130
    andrew@lemmonlawfirm.com

APPEARING FOR BP, INC.:
    Mr. Don K. Haycraft
    LISKOW & LEWIS
    701 Poydras, Street 5000
    New Orleans, Louisiana 70139-5099
    dkhaycraft@liskow.com

## Page 3

**APPEARING FOR ANADARKO PETROLEUM COMPANY:**
    Ms. Marilee J. Allan
    BINGHAM McCUTCHEN
    Three Embarcadero Center
    San Francisco, California 94111
    marilee.allan@bingham.com

**APPEARING FOR TRANSOCEAN:**
    Mr. M. Benjamin Alexander
    Mr. Robert Kallam
    PREIS & ROY, PLC
    102 Versailles Blvd., Suite 400
    Lafayette, Louisiana 70501
    mba@preisroy.com
    rmk@preisroy.com

**APPEARING FOR HALLIBURTON:**
    Mr. Bruce W. Bowman
    Ms. Elizabeth Dolghih
    GODWIN RONQUILLO
    1201 Elm Street, Suite 1700
    Dallas, Texas 75270-2041
    bbowman@godwinronquillo.com
    edolghih@godwinronquillo.com

**APPEARING FOR CAMERON:**
    Mr. Thomas Ganucheau
    BECK, REDDEN & SECREST
    1221 McKinney Street, Suite 4500
    Houston, Texas 77010-2010
    tganucheau@brsfirm.com

## Page 4

APPEARING FOR THE STATE OF LOUISIANA
    Mr. Henry Dart
    HENRY DART ATTORNEYS AT LA, PC
    510 North Jefferson Street
    Covington, Louisiana 70433
    hdart@dartlaw.com

**APPEARING FOR WEATHERFORD:**
    Mr. Brett S. Venn
    JONES WALKER
    201 St. Charles Avenue
    New Orleans, Louisiana 70170
    bvenn@joneswalker.com

APPEARING FOR DRIL-QUIP:
    Ms. Wendy Ware Bishop
    WARE, JACKSON, LEE & CHAMBERS
    2929 Allen Parkway, 42nd Floor
    Houston, Texas 77019-2185
    wendybishop@warejackson.com

APPEARING ON BEHALF OF M-I SWACO, LLC:
    Mr. John Funderburk
    MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
    1000 Louisiana St., Suite 4000
    Houston, Texas 77002-5006
    jfunderburk@morganlewis.com

APPEARING FOR MOEX USA AND MOEX OFFSHORE 2007, LLC

    Mr. Greg T. Lembrich
    PILLSBURY WINTHROP SHAW PITTMAN, LLP
    1540 Broadway
    New York, New York 10036-4039
    greg.lembrich@pillsburylaw.com

**PURSUANT TO CONFIDENTIALITY ORDER**



19  Q. Did you feel that either you or BP ever
20  cut corners in order to save money and compromise
21  safety?
22  A. No, never.

**PURSUANT TO CONFIDENTIALITY ORDER**

317

```
 3    Q.  Were the employees, including the OIM,
 4  the toolpusher, the senior toolpusher, the
 5  driller and the assistant drillers, all empowered
 6  to make their own safety calls on DEEPWATER
 7  HORIZON?
 8    A.  That is --
 9       MR. KALLAM:  Object to the form.
10    A.  -- correct.
11    Q.  (BY MR. HAYCRAFT)  Did they -- were they
12  instructed that they should not -- that they were
13  obligated not to proceed on a task until they are
14  totally confident the conditions are safe?
15    A.  If they felt the job was not safe, they
16  had the right to stop the job.
17    Q.  Did they have the obligation to stop the
18  job?
19    A.  Yes.
20    Q.  Were they empowered to stop the job?
21    A.  I empowered all of them to do that.
```

318

319

320

```
14    Q.  So as a manager for Transocean, did you
15  always put safety first?
16    A.  Safety was always paramount, yes.
```

**PURSUANT TO CONFIDENTIALITY ORDER**



321

322

1  as long as safety is not compromised is a good
2  thing for performance benchmarks, isn't it?
3     A.  We will not compromise safety for
4  performance.

25     Q.  In other words, saving hours -- man hours

323

324

81 (Pages 321 to 324)

**PURSUANT TO CONFIDENTIALITY ORDER**

## 374

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL ) MDL NO. 2179
by the OIL RIG, )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO, )
April 20, 2010 ) JUDGE BARBIER
)
) MAG. JUDGE
) SHUSHAN

VOLUME 2

Deposition of JONATHAN D. KEETON, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on August 18, 2011.

## 375

APPEARANCES

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

Mr. Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, Louisiana 70601
mlundy@lundylawllp.com

-

Ms. Lauren Lundy Adcock
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
300 North College Avenue, Suite 309
Fayetteville, Arkansas 72701
llundy@lundylawllp.com

APPEARING FOR BP, INC.:

Mr. Don K. Haycraft
LISKOW & LEWIS
701 Poydras, Street 5000
New Orleans, Louisiana 70139-5099
dkhaycraft@liskow.com

APPEARING FOR ANADARKO PETROLEUM COMPANY:

Ms. Marilee J. Allan
BINGHAM McCUTCHEN
Three Embarcadero Center
San Francisco, California 94111
marilee.allan@bingham.com

## 376

**APPEARING FOR TRANSOCEAN:**
Mr. M. Benjamin Alexander
Mr. Robert Kallam
PREIS & ROY, PLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70501
mba@preisroy.com
rmk@preisroy.com

**APPEARING FOR HALLIBURTON:**
Mr. Bruce W. Bowman
Ms. Elizabeth Dolghih
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
bbowman@godwinronquillo.com
edolghih@godwinronquillo.com

**APPEARING FOR CAMERON:**
Mr. Thomas Ganucheau
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
tganucheau@brsfirm.com

APPEARING FOR THE STATE OF LOUISIANA
Mr. Henry Dart
HENRY DART ATTORNEYS AT LA, PC
510 North Jefferson Street
Covington, Louisiana 70433
hdart@dartlaw.com

## 377

**APPEARING FOR WEATHERFORD:**
Mr. Matthew S. Lejeune
JONES WALKER
201 St. Charles Avenue
New Orleans, Louisiana 70170
bvenn@joneswalker.com

APPEARING FOR DRIL-QUIP:

Ms. Wendy Ware Bishop
WARE, JACKSON, LEE & CHAMBERS
2929 Allen Parkway, 42nd Floor
Houston, Texas 77019-2185
wendybishop@warejackson.com

APPEARING ON BEHALF OF M-I SWACO, LLC:

Mr. John Funderburk
MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
1000 Louisiana St., Suite 4000
Houston, Texas 77002-5006
jfunderburk@morganlewis.com

APPEARING FOR MOEX USA AND MOEX OFFSHORE 2007, LLC:
Mr. Greg T. Lembrich
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1540 Broadway
New York, New York 10036-4039
greg.lembrich@pillsburylaw.com

FOR THE WITNESS:
Mr. Matt Hennessy
ATTORNEY AT LAW
1001 Fannin, Suite 1950
Houston, Texas 77002
matt@hennesyfirm.com

**PURSUANT TO CONFIDENTIALITY ORDER**



638

[REDACTED]

18  Q. Are you able to quantify in a percentage
19  term or hours per day how much of your time as
20  rig manager from April of 2001 through August of
21  2009 was devoted to safety?
22     A. Safety is part of my day all day and even
23  in the night.
24     Q. Can you elaborate on that for us? What
25  specific tasks do you do throughout the day that

639

1  have safety intertwined or focus of safety?
2     A. It will start with a morning call,
3  normally around 6:15. We talk about the safety
4  of the vessel. I review safety alerts that come
5  by or -- or any safety issues that come by
6  through the office that day, any safety issues
7  onboard the vessel with personnel. I review HS&E
8  reports. Any major tasks we talk about safety.
9     Q. Okay.
10    A. I talk about safety on the way to work,
11  safety on the way home.
12    Q. Is it fair to say that safety was your
13  No. 1 priority?
14        MR. DART: Objection; form.
15    A. It was -- it's not a priority. It's a
16  core value with me.
17    Q. (BY MR. KALLAM) Was it also a core value
18  of Transocean?
19        MR. DART: Objection; form.
20    A. Yes.
21    Q. (BY MR. KALLAM) Did you ever observe any
22  action on the part of Transocean or Transocean's
23  management during your tenure as a rig manager of
24  the DEEPWATER HORIZON that led you to believe
25  that safety was not the core value of the

640

1  company?
2        MR. HAYCRAFT: Objection; form.
3     A. I've never seen safety not be the core
4  value of the company.
5     Q. (BY MR. KALLAM) From April of 2001 until
6  August of 2009, did you ever receive any
7  complaints from any BP contact concerning the
8  condition of the DEEPWATER HORIZON not being safe
9  and seaworthy and able to carry out its function
10 for them in drilling their wells?
11        MR. HAYCRAFT: Objection; form.
12    A. Not that I can recall.
13    Q. (BY MR. KALLAM) Did you ever receive in
14 complaints from BP or any of their
15 representatives from April of 2001 until August
16 of 2009 that the BOP aboard the DEEPWATER HORIZON
17 was not functioning safely?
18        MR. HAYCRAFT: Object to the form.
19    A. Not that I recall.
20    Q. (BY MR. KALLAM) Did you ever receive any
21 complaints about -- from them about the BOP not
22 able to perform its function?
23    A. No.
24    Q. Did you ever receive from BP any BP
25 contacts or any governmental agency any

641

1  information that the BOP was not in full
2  compliance with any applicable standards?
3        MR. DART: Object to the form.
4     A. No, I've never received that.
5     Q. (BY MR. KALLAM) Had you ever received
6  any complaints from BP or any of your
7  representatives that you dealt with at BP that
8  the crew onboard the DEEPWATER HORIZON was not
9  adequately trained?
10    A. No.
11    Q. Did you ever receive any complaints that
12 they were not competent to complete their job
13 duties and responsibilities?
14    A. No.
15    Q. Did you ever receive any complaints from
16 BP or any of their -- any of your BP contacts
17 that the crew aboard the HORIZON was not trained
18 or experienced in well control?
19    A. No.

[REDACTED]

67 (Pages 638 to 641)

**PURSUANT TO CONFIDENTIALITY ORDER**

642

14 Q. In reviewing reports, speaking to the
15 crew or observing their actions, did you form any
16 opinions as to the drilling crew's ability to
17 respond to a well control situation?
18    MR. HAYCRAFT: Object to the form.
19 A. No, because they had caught well kicks
20 half a barrel to a barrel, and there is very few
21 people that can ever catch them that quick.
22 Q. (BY MR. KALLAM) My question was, if
23 you -- during the course of observing them in
24 action, so to speak, in the trenches, responding
25 to these well control situations, had you

643

1 formulated any opinions as to their competency
2 based on their training and experience to address
3 a well control situation?
4    MR. HAYCRAFT: Objection; form.
5    MR. DART: Objection; form.
6 A. They were very competent, in my opinion.
7 Q. (BY MR. KALLAM) And what's the basis of
8 your statement to make that characterization of
9 the crew of the HORIZON?
10 A. They -- they showed to be very
11 professional and on top of what they were doing.
12 I mean, some of these guys were the best of the
13 best.
14 Q. You knew Dewey Revette?
15 A. I've known Dewey for 25 years.
16 Q. You knew Jason Anderson?
17 A. I've known Jason Anderson probably from
18 '97.
19 Q. Mr. Anderson was a toolpusher onboard the
20 HORIZON the night of April 20th; is that right?
21 A. That is correct.
22 Q. Had you made any recommendations
23 concerning the future employment of Mr. Anderson?
24 A. Mr. Anderson was to come off of the
25 HORIZON the following day to come to me to be

644

1 promoted up to senior toolpusher.
2 Q. When was that going to take effect?
3 A. The day after the incident.
4 Q. And Mr. Dewey Revette you had worked with
5 on a number of occasions in the past?
6 A. Many occasions.
7 Q. Had actually worked side by side him as
8 well as over him, correct?
9 A. That is correct.
10 Q. Would you characterize either of those
11 individuals as risk -- risk takers?
12 A. Neither one of them take risks.
13 Q. How would you characterize their work
14 ethic and their work attitude insofar as well
15 control was concerned?
16 A. They -- they took well control very
17 serious. I mean, if -- if they would have known
18 that this well would have done whatever it done,
19 they would have never done it. So, I mean, I
20 don't know how to really -- really qualify -- I
21 mean but these guys were very professional and on
22 top of their game.
23 Q. Is there any doubt in your mind that
24 Mr. Revette and Mr. Anderson would have done
25 everything within their power to act in

645

1 accordance with the well control policies and
2 procedures that they were trained to perform and
3 those that you had seen them exhibit in the past?
4    MR. HAYCRAFT: Objection; form.
5 A. I have never seen them do anything that
6 wasn't what they were supposed to do in well
7 control, and I have no reason to doubt that they
8 would do anything wrong.

**PURSUANT TO CONFIDENTIALITY ORDER**