**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG         )
"DEEPWATER HORIZON" IN  )  SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010       )  JUDGE BARBIER
                     )  MAG. JUDGE SHUSHAN

Deposition of STEVEN LEON
NEWMAN, taken at The Four Seasons Hotel,
1300 Lamar, Ballroom A, Houston, Texas,
70130, on the 30th day of September, 2011.

**2**

1       A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING
    COMMITTEE:
4       Mr. Jimmy Williamson
        WILLIAMSON & RUSNAK
5       4310 Yoakum Boulevard
        Houston, Texas  77006-5818
6
7   APPEARING FOR BP, INC.:
        Mr. Matthew T. Regan
8       Ms. Whitney Becker
        KIRKLAND & ELLIS
9       300 North LaSalle
        Chicago, Illinois  60654
10
11  APPEARING FOR TRANSOCEAN:
        Mr. Brad D. Brian
12      MUNGER TOLLES & OLSON
        355 South Grand Avenue, 35th Floor
13      Los Angeles, California  90071-1560
14      Ms. Rachel Giesber Clingham
        Mr. Robert A. Lemus
15      SUTHERLAND ASBILL & BRENNAN
        1001 Fannin, Suite 3700
16      Houston, Texas  77002-6760
17      Ms. Lauren Woodard
        ROYSTON RAYZOR
18      711 Louisiana Street, Suite 500
        Houston, Texas  77002
19
20  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Ms. Jennifer S. Rosen
21      Ms. Marilee J. Allan
        BINGHAM MCCUTCHEN
22      Three Embarcadero Center
        San Francisco, California 94111-4067
23
24
25

**3**

1       A P P E A R A N C E S (Continued)
2
3   APPEARING FOR CAMERON INTERNATIONAL
    CORPORATION:
4       Mr. Alex Roberts
        BECK, REDDEN & SECREST
5       One Houston Center
        1221 McKinney  Street, Suite 4500
6       Houston, Texas  77010-2010
7
8   APPEARING FOR WEATHERFORD:
        Mr. Michael A. Chernekoff
9       JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
        JP Morgan Chase Tower
10      600 Travis, Suite 6601
        Houston, Texas 77002
11
12  APPEARING FOR M-I SWACO:
        Mr. Wendell Bruce Hays
13      MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4200
14      Houston, Texas 77002-5006
15
16  APPEARING FOR HALLIBURTON:
        Ms. Angelle M. Adams
        Mr. Bruce W. Bowman, Jr.
17      GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
18      Dallas, Texas 75270-2041
19
20  APPEARING FOR THE UNITED STATES:
        Ms. Deanna J. Chang
21      U.S. DEPARTMENT OF JUSTICE
        TORT BRANCH, CIVIL DIVISION
        1425 New York Avenue, N.W.
22      Suite 10100
        Washington, D.C.  20005
23      Post Office Box 14271
        Washington, D.C.  20044-4271
24
25

**4**

1       A P P E A R A N C E S (Continued)
2
3   APPEARING FOR THE UNITED STATES COAST GUARD:
        Lt. Christopher Jones
4       Marine Investigator
        U.S. COAST GUARD
5       9640 Clinton Drive
        Houston, Texas  77029-4328
6
7   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Lambert J. "Joe" Hassinger, Jr.
8       GALLOWAY, JOHNSON, TOMPKINS, BURR
        AND SMITH
9       701 Poydras Street, 40th Floor
        New Orleans, Louisiana  70139
10
11  ALSO PRESENT:
        Mr. Mark Hendrix, Videographer
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



15     Q.          You have an expectation
16  that if any Transocean employee were to see
17  something that they felt represented a
18  potential unsafe operation, that they would
19  stop the job?
20     A.    Stop work authority is a -- is a
21  key component of our safety management system
22  and -- and so, you know, you -- you've got
23  the policy statement right there in front of
24  you where we talk about every employee has
25  not only the right, but the obligation to

PURSUANT TO CONFIDENTIALITY ORDER



161

1 exercise that -- that stop work authority and
2 so, you know, in -- in my role as CEO, every
3 time I meet with our people I talk about
4 that.

[text redacted]

162

[text redacted]

12      Q.   (BY MR. REGAN)  Yeah, if you
13 were on a Transocean rig and you directed the
14 newest Transocean employee to do something
15 and that employee thought it was unsafe, they
16 had the authority and obligation to stop the
17 job?
18      A.   That -- that's the kind of
19 culture we're -- that's the kind of culture I
20 think we have.
21      Q.   Regardless of the fact that you
22 had ultimate responsibility, correct?
23      MS. CLINGMAN:  Let him answer.  Let him
24 answer.
25      A.   As I was about to say, that's

163

1 the kind of culture I think we have.  No
2 matter what the individual's relative ranks
3 or levels of responsibility or supervision,
4 that -- that obligation of stop work
5 authority, that principle of stop work
6 authority is all inclusive.  It goes -- it
7 cuts across chains of command.  It cuts
8 across departmental roles and responsibility.
9 It's -- if you see something unsafe, you're
10 supposed to stop it.
11      Q.   (BY MR. REGAN)  And if a company
12 man were to say something or direct a
13 Transocean rig hand to do something that the
14 Transocean rig hand thought was unsafe or
15 didn't understand, that rig hand has the
16 entitlement and obligation to stop the job?
17      A.   That -- that's just the way our
18 stop work authority system is supposed to
19 work.  It doesn't matter what you're asked to
20 do or who asks you to do it; if you're
21 comfortable, if you don't get all of the
22 reassurance from the individual that's giving
23 the instruction that it is safe to proceed,
24 that every aspect of it's been evaluated,
25 it's okay, you're good to go.

164

1      Q.   And if you don't feel like you
2 have enough information about the job you're
3 about to do, it's your responsibility and
4 obligation to stop the job as a Transocean
5 employee, correct?
6      MS. CLINGMAN:  Objection; form.
7      A.   If it's -- you know, if it's a
8 situation where -- where you feel you've been
9 inadequately informed, where -- where you
10 recognize that you don't have all of the
11 information you need, where you recognize
12 that the -- that the assurance you're
13 receiving from your -- from whoever is
14 delivering it is for some reason suspect or
15 you have reason to doubt what they're telling
16 you, you ought to -- you ought to exercise
17 stop work authority and pursue that.
18      Q.   (BY MR. REGAN)  And that's your
19 expectation as the CEO for the behavior that
20 you're instilling in a safety culture at
21 Transocean, correct?
22      A.   That's the -- that's the kind of
23 culture I'm trying to instill in all of our
24 employees every time I meet with them.

**PURSUANT TO CONFIDENTIALITY ORDER**

357

3   Q.   Did BP ever express an objection
4 to the safety management system that
5 Transocean was using?
6   A.   To my knowledge, BP never
7 objected.
8   Q.   Okay.  You were asked some
9 questions about the procedures that y'all
10 used in terms of well procedures.  Do you
11 remember that, the Transocean well control
12 manual?  You were asked an entire series of
13 questions.
14   A.   I remember those discussions.
15   Q.   Sure.  Did BP ever object to the
16 well control procedures that Transocean had
17 in its manual before the disaster?
18   A.   Not that I recall.
19   Q.   Did BP ever say, we want to
20 change these procedures because we're unhappy
21 with them?
22   A.   I don't believe so.
23   Q.   Did BP ever even go to the
24 trouble to review them with your upper
25 management?  Did BP even go to the trouble of

359

358

1 having a meeting to review them and say we
2 are unhappy with the well control procedures
3 that Transocean has implemented?
4   MR. REGAN: Object to form.
5   A.   If -- if BP were unhappy, they
6 never brought it to my attention.

360

5   Q.   Did they ever say we are unhappy
6 with your blowout preventer procedures and we
7 want to change the way you're doing it, did
8 BP ever do that to your knowledge?
9   A.   Not to my knowledge.
10   Q.   By the way, if BP -- you have
11 this stop the work philosophy, correct?  I
12 believe that's part of your system, correct?
13   A.   Yes, stop work authority.
14   Q.   Does that extend to the company
15 representatives on your rigs?
16   A.   Absolutely.
17   Q.   Okay.  With respect to BP
18 particular -- that's true for all your
19 customers, not just BP, correct?
20   A.   That -- our -- our philosophy
21 around time out for safety, which is what we
22 call it, stop work authority, time out for
23 safety, our philosophy with respect to time
24 out for safety applies to anybody on our
25 drilling rigs.

90 (Pages 357 to 360)

**PURSUANT TO CONFIDENTIALITY ORDER**

376

I, STEVEN LEON NEWMAN, have read
the foregoing deposition and hereby affix my

2  signature that same is true and correct,
except as noted above.

3

4



STEVEN LEON NEWMAN
October 13        , 2011

7

8

9

10

11

12

13

FRANK ROBERT GORDON
MY COMMISSION EXPIRES
October 21, 2013

Oct 13, 2011

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**