IN RE:  OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                          Reported by:

CHRISTOPHER PLEASANT March 14, 2011      THU BUI, CCR, RPR

Page 1

                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


        IN RE:  OIL SPILL      )    MDL NO. 2179
        by the OIL RIG,        )
        DEEPWATER HORIZON in   )    SECTION "J"
        the GULF OF MEXICO,    )
        April 20, 2010         )    JUDGE BARBIER
                               )
                               )    MAG. JUDGE
                               )    SHUSHAN


                     * * * * * * * * * * * * * *
                          VOLUME 1
                     * * * * * * * * * * * * * *



                Deposition of CHRISTOPHER
        PLEASANT, taken at Pan-American Building,
        601 Poydras Street, 11th Floor, New
        Orleans, Louisiana, 70130, on the 14th of
        March, 2011.


        APPEARANCES:


        Mr. Guy E. Matthews
        MATTHEWS, LAWSON & JOHNSON, PLLC
        2000 Bering Drive, Suite 700
        Houston, Texas 77057-3778
        Phone:  713-355-4200 Fax:  713-355-9689

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

d707c43d-85cb-437a-b4c8-fade28a01aa0

IN RE:  OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010    Reported by:

CHRISTOPHER PLEASANT  March 14, 2011      THU BUI, CCR, RPR

Page 34

Page 35

13    Q.   Do you think this rig exploded
14  because it just was happenstance?  It
15  wasn't a man-made occurrence of gross
16  negligence?
17        MR. BAAY:
18           Object to the form of the
19  question.
20        MR. BROCK:
21           Object to the form.
22        MR. GODWIN:
23           Object to the form.
24     A.   You know, the only thing I can
25  say about that is, I don't know what

Page 36

1  happened to make the rig explode.  I know
2  that I slept on that rig every night.
3      Q.   Yeah?
4      A.   It was a safe rig.  Real safe.
5      Q.   Until April the 20th?
6      A.   I felt comfortable getting in my
7  bed every morning going to sleep on that
8  rig.  You know, what happened on
9  April 20th, I can't tell you.

Page 37

601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters   Facsimile:(504) 525-9109

d707c43d-85cb-437a-b4c8-fade28a01aa0

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                    Reported by:
CHRISTOPHER PLEASANT VOL. II    March 15, 2011                 THU BUI, CCR, RPR

Page 417

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL       )    MDL NO. 2179
by the OIL RIG,         )
DEEPWATER HORIZON in    )    SECTION "J"
the GULF OF MEXICO,     )
April 20, 2010          )    JUDGE BARBIER
                        )
                        )    MAG. JUDGE
                        )    SHUSHAN



\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 2
\*\*\*\*\*\*\*\*\*\*\*\*\*\*


         Deposition of CHRISTOPHER
PLEASANT, taken at Pan-American Building,
601 Poydras Street, 11th Floor, New
Orleans, Louisiana, 70130, on the 15th of
March, 2011.



APPEARANCES:


Mr. Guy E. Matthews
MATTHEWS, LAWSON & JOHNSON, PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057-3778
Phone:  713-355-4200 Fax:  713-355-9689

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE:  OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

CHRISTOPHER PLEASANT VOL. II    March 15, 2011          THU BUI, CCR, RPR



Page 650

Page 652

Page 651

Page 653

15      Q.   Do you believe that safety was
16   something that was emphasized on the
17   Deepwater Horizon?
18      A.   Yes.
19          MR. WILLIAMSON:
20              Objection, form.
21      Q.   What do you believe Transocean
22   did to emphasize safety?
23      A.   Before every job, you had a
24   pre-job meeting and you discussed the
25   hazards of that job.  Before you even go to

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010          Reported by:
CHRISTOPHER PLEASANT VOL. II   March 15, 2011          THU BUI, CCR, RPR

Page 654

1 work, they had safety meetings. They have
2 weekly safety meetings as well.
3    Q.   Okay.  What other things?
4        MR. GODWIN:
5          Objection, form.
6    A.   I don't understand.
7    Q.   Well, for example, on Sundays,
8 would you attend master drills?
9    A.   Yes.  We -- on Sundays, we -- we
10 had a weekly fire drill, and you had also
11 had a -- a weekly safety meeting on Sundays
12 that -- as well.
13    Q.   Are you familiar with something
14 called think plans?
15    A.   Yes.
16    Q.   Describe for me what that is.
17    A.   Think plan is a -- it's a
18 written plan of -- of the job that you
19 about to do.  You write, in detail, what
20 you're going to do.  You write the hazards
21 in it.  You write how you're going to
22 mitigate the hazards, you know, what
23 hazards you found, how you're going to
24 mitigate the risk of not having an
25 incident.

Page 655

1    Q.   How about start cards?  Are you
2 familiar with start cards?
3    A.   Yes.
4    Q.   Describe for me what a START
5 card is.
6    A.   A START card is -- if I was out
7 observing somebody else doing a good job or
8 a bad job, you know, you know, and I give
9 that person some feedback, you know,
10 telling them what it is they did good or
11 what it is they didn't do good.  And you
12 know, I wouldn't put no name on it, who it
13 was, but, you know, I turn the START card
14 in.
15    Q.   In -- let's just take your last
16 several years as a subsea supervisor on the
17 Horizon.  How much time would you estimate
18 that you spent on the Horizon?
19    A.   I spent over half of my life on
20 there.
21    Q.   Did you feel safe living on the
22 Horizon?
23    A.   Yes.
24    Q.   And did -- do you believe that
25 Transocean's rig management, based on the

Page 656

1 experience that you saw, took safety drills
2 seriously?
3        MR. WILLIAMSON:
4          Objection to form.
5    A.   Yes.
6    Q.   Did you take those drills
7 seriously?
8    A.   Yes, I did.

15    Q.   ████. In your role as a subsea
16 supervisor, if you saw something that you
17 believe to be unsafe related to the blowout
18 preventer, would you make Mark Hay aware of
19 those things?
20    A.   Yes, I would.
21    Q.   That was your practice and habit
22 aboard the Horizon?
23    A.   Yes.

Page 657

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                    Reported by:
CHRISTOPHER PLEASANT VOL. II   March 15, 2011                    THU BUI, CCR, RPR

Page 658



25    Q.  Was there one person that you

Page 660

1    stopped doing your work as a pump hand and
2    went into full time training to be a subsea
3    supervisor, what is the first thing you
4    did?  Did you leave the Horizon?
5       A.  Yes.  I left the Horizon.  I
6    went to other rigs, wherever they was doing
7    the rig move with the BOP on deck, and I
8    assisted them with their rig move.
9       Q.   How many other different rigs
10   did you serve on?
11      A.  I don't recall.
12      Q.  Okay.  More than five?
13      A.  Yes.
14      Q.  Okay.  And on each of these
15   rigs, you would be under the
16   apprenticeship, for lack of a better word,
17   of -- of the senior on the rig?
18         MR. WILLIAMSON:
19            Objection to form.
20      A.  Yes.
21      Q.   And what would that person --
22   what were the type of activities you did
23   during your training?
24      A.   During my training?  Man, one
25   rig we -- when I got there, they had taken

Page 659

1    made it known to that you wanted to be a
2    subsea supervisor?
3          MR. WILLIAMSON:
4             Objection, form.
5       A.  Yes.
6       Q.  Who was it?
7       A.  Billy Stringfellow.
8       Q.  Okay.  And then he started
9    incorporating you into this program that
10   you've been telling us about?
11      A.  No.  He just -- he told me what
12   I needed to do to be one.
13      Q.  Okay.  How long did you do this
14   volunteer subsea work or this on-the-job
15   training subsea work before you went into a
16   formal training program?
17      A.  Roughly about three years.
18      Q.  On the Horizon?
19      A.  Yes.
20      Q.   And then when you entered formal
21   training, describe for us what the first
22   step in that was, in that process.
23      A.   I don't understand what you're
24   asking.
25      Q.  Sure.  When you -- when you

Page 661

1    all the bonnet doors off and they -- we had
2    to put them back on when I got there.
3    Hosing up in a --a pod, you know.  A couple
4    of rigs it was, you know, just changing out
5    the very basics.  Changing out the rubber
6    goods.
7       Q.   Was the focus, to your
8    understanding, to put you through all the
9    steps of BOP maintenance so that you can
10   see those and learn how to do them?
11      A.   Yes.
12      Q.   And how long did that program
13   last?
14      A.   For me, approximately 10,
15   11 months.  Ten months to a year.
16      Q.   After that -- those ten months,
17   were you then assigned back to the Horizon?
18      A.   Yes.
19      Q.   Did you feel at the end of that
20   time that you had received good quality
21   training?
22      A.   Yes.



601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

CHRISTOPHER PLEASANT VOL. II   March 15, 2011                    THU BUI, CCR, RPR

Reported by:



Page 662

Page 664

Page 663

Page 665

```
 5      Q.   Okay.  Do you feel that
 6  Transocean always supported your desire to
 7  go get additional education?
 8      A.   Yes.
 9      Q.   And additional training to be a
10  subsea supervisor?
11      A.   Yes.
12      Q.   Was there ever a time where
13  Transocean said, no, you can't go get
14  additional training?
15      A.   Never.
```

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters  Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 1

                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

        IN RE:  OIL SPILL      MDL NO. 2179
        BY THE OIL RIG
        "DEEPWATER HORIZON"   SECTION:  J
        IN THE GULF OF
        MEXICO, ON APRIL      JUDGE BARBIER
        20, 2010              MAG. JUDGE SHUSHAN

                    Volume 1 of 2 of the Videotaped
        Deposition of ADRIAN PAUL ROSE, 2299 Lone
        Star Drive, Sugarland, Texas, taken in the
        Pan American Life Center, 11th Floor, 601
        Poydras Street, New Orleans, Louisiana
        70130, on Tuesday, April 25, 2011.

        APPEARANCES:

        GAINSBURGH, BENJAMIN, DAVID,
          MEUNIER & WARSHAUER
        By:  Gerald E. Meunier  Esquire
        1100 Poydras Street, Suite 2800
        New Orleans, La 70163
                (Attorneys for Plaintiffs
                Steering Committee)

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 94

Page 96

Page 95

Page 97

23      Q.   Were there any SQA statements
24 generated by BP which made reference to the
25 Safety Management System of Transocean

25 (Pages 94 to 97)

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 98

1  aboard the DEEPWATER HORIZON?
2      A.   I honestly don't -- don't
3  remember.  I -- you know, I would have to
4  look up the document.
5      Q.   All right.  Well, you said you
6  reviewed it since.
7      A.   I did, I did, but it was -- it
8  was seven or eight months ago, and I -- I
9  have not reviewed it for the purposes of
10  today; otherwise, I -- if you have the
11  document, I would be happy to talk to it.
12  But I seem to remember that it was pretty
13  positive about most aspects of the
14  performance.
15      Q.   Well, that's -- that's really my
16  question.
17      A.   Yeah.
18      Q.   We'll -- we'll get it if we need
19  to --
20      A.   Yeah.
21      Q.   -- but it's true, isn't it, that
22  BP at no time through that service quality
23  process --
24      A.   Yeah.
25      Q.   -- complained about the safety

Page 99

1  practices of Transocean aboard the
2  DEEPWATER HORIZON?
3      A.   No, I think they were --
4  MR. HAYCRAFT:
5  I object to the form.
6      A.   -- they were actually highly
7  complimentary.

ee this?



26 (Pages 98 to 101)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C     Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                              Reported by:

ADRIAN PAUL ROSE        April 25, 2011 SANDRA D. FILES, CCR

Page 106

Page 108

18    Q.            Now, briefly tell me
19  what the THINK process, START process and
20  Time Out For Safety components refer to in
21  the Transocean Safety Management System.
22    A.   Briefly, they are three of the
23  key processes in us managing safety onboard
24  our rigs and, in fact, in all our
25  facilities.  The THINK process really

Page 107

Page 109

1   involves risk management and planning, so
2   it's really our THINK planning process.
3   And for every task we undertake on the rig
4   or onshore in our facilities, the THINK
5   planning process is used.  The steps are
6   plan, inspect, identify, communicate and
7   control.
8        And if we use -- we believe that
9   if we use those five simple steps for every
10  task we undertake -- which means to plan
11  the task effectively so you have a plan,
12  inspect the equipment or the area where
13  you're going to conduct the task, look for
14  hazards, and thirdly identify those
15  hazards, communicate with other people that
16  may be affected by the task you're
17  undertaking, and then control those
18  hazards, put in controls for the hazards
19  that you have identified, have you got
20  control measures in place.
21        So at its fundamental level, the
22  THINK planning process is basically a -- a
23  tool, a mental process, and as the
24  criticality, difficulty of the task
25  increases, the level of the THINK planning

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C        Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters     Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 110

```
 1   process increases, rising from a mental
 2   process that somebody would use on a low
 3   potential job to a written THINK plan that
 4   they would use where the task is more
 5   complex or critical, rising all the way up
 6   to a task risk assessment for, you know,
 7   the tasks that require it.
 8       Q.  Is the client representative on
 9   the rig not only expected, but offered the
10   opportunity to have input in the THINK
11   process of --
12       MR. HAYCRAFT:
13           Object to the form.
14   BY MR. MEUNIER:
15       Q.  -- of Transocean?
16       A.  Absolutely.  Everybody onboard
17   the rig has input in the THINK planning
18   process.  Everybody coming onboard the rig
19   is inducted into it and has an orientation
20   outlining the THINK planning process.
21       Q.  How about the START process?
22       A.  The same.  The START process is
23   our observation and monitoring process, so
24   for those tasks I just described where we
25   use the THINK planning tool and -- for risk
```

Page 111

```
 1   management, START is equally important
 2   because that's our monitoring.  So you're
 3   in a task, you want to monitor that the
 4   task is going to plan.  In fact, we use the
 5   START process as -- as often as the simple
 6   management of change.  You -- you commence
 7   a task.  An example would be the weather
 8   changes.  That's a management of change
 9   issue at a simple level.
10           So you may want to suspend the
11   task or adjust or change your PP or
12   something as a result.  So "START" stands
13   for see, think, act, reinforce and track.
14       Q.  And the client representative on
15   a rig clearly has input and participation
16   in the START process, true?
17       A.  Yes.  They --
18       MR. HAYCRAFT:
19           Object to the form.
20       A.  -- they -- they can, and do so,
21   in fact.  In the vast majority of cases,
22   our clients actively encourage, support and
23   participate in THINK and START onboard the
24   rig.
25   BY MR. MEUNIER:
```

Page 112

```
 1       Q.  Is that true in the case of BP?
 2       A.  Yes.
 3       Q.  And then finally, Time Out For
 4   Safety is what?
 5       A.  Time Out For Safety is simply
 6   our stop work authority.  It's our -- when
 7   hazards are seen by somebody, anybody
 8   onboard the rig is in -- is entitled to
 9   stop the job.  In fact, we -- we have in
10   our highest level policy that it's an
11   obligation of everybody to interrupt an
12   operation if they see something that they
13   believe is unsafe.
14       Q.  And that would extend to
15   clients' representatives?
16       A.  Everybody, everybody on the rig.
17       Q.  A customer like BP would
18   certainly be told and made well aware of
19   the fact that Time Out For Safety is a tool
20   that the company reps are also expected to
21   employ?
22       A.  Yes, and -- and I believe they
23   are very, very supportive of that, too.
24   All our clients are.
```

Page 113



29 (Pages 110 to 113)

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE    April 25, 2011 SANDRA D. FILES, CCR



Page 114

Page 116

Page 115

Page 117

24    Q.   And what prompted the review by
25   Lloyd's Register?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C    Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029 Board-Certified Court Reporters    Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE        April 25, 2011 SANDRA D. FILES, CCR



Page 118

1      A.   We -- we wanted to have an
2   independent review, totally independent
3   from a recognized industry expert as to the
4   perceptions aboard our rigs of our safety
5   culture and climate and an independent
6   review of the robustness, tone and clarity
7   of our Safety Management System.

23      A.   Well, the -- the project was a
24   large global project.  We wanted them to go
25   to several divisions around the world and

Page 119

1   visit I think in excess of 20 rigs.  So it
2   would be quite a long project, and we
3   wanted to have interim reviews of how the
4   project was going and to steer the project
5   in the right direction.  So it was merely a
6   steering committee where we were to have
7   project meetings with the -- with the
8   consultants.

Page 120

Page 121

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67



GAUDET KAISER L.L.C.
601 Poydras Street, Suite 1720     New Orleans, Louisiana 70130
Phone: (504) 525-9100          Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE

I, **ADRIAN PAUL ROSE,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

_6/1/2011_                              _APRose_
_____                    _____
(Date  Signed)                          (Signature)

___✓___ Signed  with  corrections  as  attached.

_____ Signed  with  no  corrections  noted.

11745 Bricksome Avenue, Suite A-4        PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816             FAX      (225) 291-7990
263 W. Causeway Approach                 PHONE   (504) 525-9100
Mandeville, Louisiana 70448              FAX      (504) 525-9109
Website: www.gaudetkaiser.com            ALT EMAIL
                                         gk.2008@aol.com & gkjs@gaudetkaiser.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL      )   MDL NO. 2179
by the   OIL RIG,       )
DEEPWATER HORIZON in   )   SECTION "J"
the GULF OF MEXICO,     )
April 20, 2010          )   JUDGE BARBIER
                        )
                        )   MAG. JUDGE
                        )   SHUSHAN

***************

VIDEOTAPED DEPOSITION OF STUART WILLIAM SANNAN
VOLUME I

Deposition of Stuart William Sannan,
taken at the Hilton Conference Center, 333 St.
Charles Avenue, New Orleans, Louisiana, 70130, on
Wednesday, July 27, 2011.

---

2

```
 1            A P P E A R A N C E S
 2   Mr. Charles A. DeMonaco
     FOX ROTHSCHILD, LLP
 3   625 Liberty Avenue, 29th Floor
     Pittsburgh, Pennsylvania  15222
 4        APPEARING FOR THE WITNESS
 5   Mr. Guy E. Matthews
     Mr. Joshua Shamburger
 6   MATTHEWS, LAWSON & JOHNSON, PLLC
     2000 Bering Drive, Suite 1700
 7   Houston, Texas  77057
          APPEARING FOR THE
 8        PLAINTIFFS' STEERING COMMITTEE
 9   Mr. William Dills
     WILLIAMSON & RUSNAK
10   4310 Yoakum Boulevard
     Houston, Texas  77006
11        APPEARING FOR THE
          PLAINTIFFS' STEERING COMMITTEE
12
     Mr. Devin C. Reid
13   Mr. Don Haycraft
     LISKOW & LEWIS
14   One Shell Square
     701 Poydras Street, Suite 5000
15   New Orleans, Louisiana  70139
          APPEARING FOR BP, INC.
16
     Mr. Thomas A. Porteous
17   Ms. Leigh Ann Schell
     KUCHLER POLK
18   1616 Poydras Street, Suite 1300
     New Orleans, Louisiana  70112
19        APPEARING FOR ANADARKO
20   Mr. Michael Doyen
     MUNGER TOLLES & OLSON, LLP
21   355 South Grand Avenue, 35th Floor
     Los Angeles, California  90071
22        APPEARING FOR TRANSOCEAN
23   Mr. Richard G. Murphy
     SUTHERLAND ASBILL & BRENNAN, LLP
24   1275 Pennsylvania Avenue, NW
     Washington, D.C. 20004
25        APPEARING FOR TRANSOCEAN
```

---

3

```
 1   Mr. Bruce W. Bowman
     Ms. Elisaveta Dolghih
 2   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
 3   Dallas, Texas 75270-2041
          APPEARING FOR HALLIBURTON
 4
     Mr. Tarak Anada
 5   JONES WALKER
     201 St. Charles Avenue
 6   New Orleans, Louisiana  70170
          APPEARING FOR WEATHERFORD
 7
     Mr. Joe Redden
 8   BECK REDDEN & SECREST
     One Houston Center
 9   1221 McKinney Street, Suite 4500
     Houston, Texas  77010
10        APPEARING FOR CAMERON
11   Mr. Lucas Elliot
     MORGAN LEWIS
12   1000 Louisiana Street, Suite 400
     Houston, Texas  77002
13        APPEARING FOR M-I SWACO
14   Ms. Wendy Ware Bishop
     WARE JACKSON LEE & CHAMBERS
15   2929 Allen Parkway, 42nd Floor
     Houston, Texas  77019
16        APPEARING FOR DRIL-QUIP
17   Mr. David A. Pote
     KANNER & WHITELEY, LLC
18   701 Camp Street
     New Orleans, Louisiana  70130
19        APPEARING FOR STATE OF LOUISIANA
20   ALSO PRESENT:
21   Kayla Barnes, Videographer
     Danny Damiani, Paralegal
22
23   REPORTED BY:
          MELISSA L. MAGEE, CSR, RPR, RMR
24        Certified Shorthand Reporter
          Registered Professional Reporter
25        Registered Merit Reporter
```

---

4

INDEX

PAGE

Title Page.................................... 1

Appearances Page.............................. 2

Index Page.................................... 4

Exhibits Page................................ 5

Examination of Stuart William Sannan:
    By Mr. Matthews.................... 7
    By Mr. Pote....................... 119
    By Mr. Haycraft................... 179
Witness' Certificate...................... 295
Reporter's Certificate.................... 297

**PURSUANT TO CONFIDENTIALITY ORDER**



29

31

4   Q. Okay.  Have you reported on the
5 performance of the Deepwater Horizon?
6   A. Yes, and the other rigs.
7   Q. What was your report with respect to
8 the Deepwater Horizon and its performance?
9   MR. DOYEN: Object to the form.
10   THE WITNESS: The reports came in various
11 forms.  Tracking the safety performance, drilling
12 efficiency, down time.
13 BY MR. MATTHEWS:
14   Q. What was -- did you report at any
15 time, including after April the 20th, 2010, that
16 the safety performance of the Deepwater Horizon
17 was good?
18   A. The safety performance and -- you're
19 asking me if I specifically said the safety
20 performance of the Deepwater Horizon was good.  I
21 believe that the safety performance of the
22 Deepwater Horizon was very good.
23   The reports that I would prepare
24 would show what -- and I didn't personally
25 prepare them, but would have them prepared from

30

32

1 the data that we have in our systems -- would
2 show what the performance statistics were for the
3 rigs.  And the Deepwater Horizon ranked at the
4 top of that.  Or not always at the top, but very
5 high at the top.

8 (Pages 29 to 32)

**PURSUANT TO CONFIDENTIALITY ORDER**



73

75

1    safety.

74

11    Q.    Well, you wouldn't intentionally and
12    deliberately keep drilling if you had an unsafe,
13    undesirable condition, would you?
14    A.    If we had a condition that was
15    deemed unsafe to the safety of the people on the
16    rig, we would correct the condition or we might
17    take the equipment out of service to ensure it
18    was not used.  But we would not expose our people
19    to conditions that would -- --
20    Q.    Well, that raises an interesting --
21    MR. DOYEN: Let him finish his answer.
22    BY MR. MATTHEWS:
23    Q.    I'm sorry.  I thought you were.
24    A.    We would not expose our people to
25    conditions that we knowingly violated their

76

PURSUANT TO CONFIDENTIALITY ORDER



177

179

178

180

24    I'm going to start with April the
25    20th, 2010.  I understand that you were actually

1     on the Deepwater Horizon on April the 20th, 2010?
2          A.    I was on the Deepwater Horizon on
3     April 20th, 2010, for a very brief period.
4          Q.    Could you tell us how brief?  An
5     hour? two hours? half hour?
6          A.    In my recollection, it was about an
7     hour.
8          Q.    Was that in the afternoon of
9     April the 20th?
10         A.    That was in the afternoon, yes.
11         Q.    Did you get a chance to talk to the
12    OIM on Deepwater Horizon?
13         A.    I spoke briefly with Jimmy Harrell.

45 (Pages 177 to 180)

**PURSUANT TO CONFIDENTIALITY ORDER**



181

12      Q.   When you talked to the OIM,
13  Mr. Harrell, did he suggest to you that there
14  were any difficulties being encountered by the
15  rig on Macondo 252?
16      A.   He did not suggest that during that
17  conversation.

21      Q.   Did he make any statements to you
22  that suggested, to your mind, that he was worried
23  about activities out there on the Deepwater
24  Horizon?
25      A.   He made no statements to that

182

1  effect.
2      Q.   Did he make any comments to you that
3  suggested he believed anything unsafe was
4  occurring out on that rig?
5      A.   He made no statements to me to that
6  effect.

183

184

PURSUANT TO CONFIDENTIALITY ORDER

296

1

2        I, WILLIAM SANNAN, have read the

foregoing deposition and hereby affix my

signature that same is true and correct, except

3   as noted on the correction page.

4

5        _Adent William Sannan_

         WILLIAM SANNAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

```
 1          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE: OIL SPILL    )   MDL NO. 2179
     by the OIL RIG,     )
 4   DEEPWATER HORIZON in )   SECTION "J"
     the GULF OF MEXICO,  )
 5   April 20, 2010       )   JUDGE BARBIER
 6                        )   MAG. JUDGE
                          )   SHUSHAN
 7
 8
 9
10
11
12
13
14
15
16
17
18            VOLUME 1 OF 2
19
        Deposition of NEWTON PHARR SMITH, taken
20   at Pan-American Building, 601 Poydras Street,
     11th Floor, New Orleans, Louisiana, 70130, on
21   June 27, 2011.
22
23
24
25
```

**2**

```
 1          A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING
     COMMITTEE:
 4
 5       Mr. Soren Gisleson
         Mr. Craig Robinson
 6       Mr. Carl "Trey" Woods
         HERMAN, HERMAN KATZ & COTLAR, LLP
 7       820 O'Keefe Avenue
         New Orleans, Louisiana 70113
 8       sgisleson@hhkc.com
         crobinson@hhkc.com
 9
10   APPEARING FOR TRANSOCEAN AND PHARR SMITH:
11       Mr. Richard G. Murphy, Jr.
         SUTHERLAND, ASBILL & BRENNAN, LLP
12       1275 Pennsylvania Avenue, NW
         Washington, DC 20004-2415
13       Rick.murphy@sutherland.com
14       Mr. David A. Baay
         SUTHERLAND, ASBILL & BRENNAN, LLP
15       1001 Fannin, Suite 3700
         Houston, Texas 77002
16       david.baay@sutherland.com
17
18   APPEARING FOR BP, INC.:
19       Mr. Don K. Haycraft
         LISKOW & LEWIS
20       701 Poydras, Street 5000
         New Orleans, Louisiana 70139
21       dkhaycraft@liskow.com
22
23
24
25
```

**3**

```
 1   APPEARING FOR HALLIBURTON:
 2       Mr. Floyd Hartley
         Mr. Sean Fleming
 3       GODWIN RONQUILLO
         1201 Elm Street, Suite 1700
 4       Dallas, Texas 75270-2041
         fhartley@GodwinRonquillo.com
 5       sfleming@GodwinRonquillo.com
 6
 7   APPEARING FOR CAMERON:
 8       Mr. Brad Coffey
         BECK, REDDEN & SECREST
 9       1221 McKinney Street, Suite 4500
         Houston, Texas 77010-2010
10       bcoffey@brsfirm.com
11
12   APPEARING FOR THE STATE OF LOUISIANA:
13       Mr. Douglas R. Kraus
         KANNER & WHITELEY
14       701 Camp Street
         New Orleans, Louisiana 70130
15       D.Kraus@kanner-law.com
16
17   APPEARING FOR ANADARKO PETROLEUM COMPANY:
18       Ms. Rianne Rocca
19       BINGHAM McCUTCHEN
         Three Embarcadero Center
20       San Francisco, California 94111
         rianne.rocca@bingham.com
21
22
23
24
25
```

**4**

```
 1   APPEARING FOR WEATHERFORD:
 2       Mr. William "Bill" Joyce
         JONES WALKER
 3       201 St. Charles Avenue
         New Orleans, Louisiana 70170
 4       bjoyce@joneswalker.com
 5
 6   APPEARING FOR DRIL-QUIP:
 7       Ms. Margaret Bryant
         WARE, JACKSON, LEE & CHAMBERS
 8       2929 Allen Parkway, 42nd Floor
         Houston, Texas 77019
 9       margaretbryant@warejackson.com
10
11   APPEARING ON BEHALF OF M-I, LLC:
12       Mr. Patrick K. A. Elkins
         MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
13       1000 Louisiana St., Suite 4000
         Houston, Texas 77002-5006
14       pelkins@morganlewis.com
15
16   APPEARING FOR MOEX USA AND MOEX OFFSHORE
     2007, LLC
17
18       Mr. R. Jack Reynolds
         PILLSBURY WINTHROP SHAW PITTMAN, LLP
19       909 Fannin, Suite 2000
         Houston, Texas 77010
20       (713) 276-7633
         jack.reynolds@pillsburylaw.com
21
22   ALSO PRESENT:
         Ms. Mary Gaasch - The Videographer
23   REPORTED BY:
         RENE WHITE MOAREFI, CSR, CCR
24       Texas Certified Shorthand Reporter
         Louisiana Certified Court Reporter
25
```

**1 (Pages 1 to 4)**



10    Q.    Okay.  Are you familiar -- well,
11  how would safety generally play into your job
12  description?
13    A.    It's a major part of my job
14  description.
15    Q.    Tell me -- tell me how it's a
16  major part.
17    A.    Well, in -- in general, safe
18  operations is one of the primary core values
19  of Transocean.

6 (Pages 21 to 24)



**209**

**210**

**211**

```
1    DEEPWATER HORIZON was a top performer.  What
2    do you mean by that?
3         A.    Well, some rigs in the fleet
4    need more attention than others for whatever
5    reason, good and bad.  And the HORIZON just
6    seemed to be -- I mean, it was just
7    performing generally well.  I -- I had a very
8    thin file on the HORIZON.
```

**212**

```
14         Did you ever have any contact
15    with anyone from BP regarding the Macondo
16    well or the DEEPWATER HORIZON prior to
17    April 20, 2010?
18         A.    I'm having difficulty answering
19    that because the HORIZON was generally such a
20    top performer that it was really off my
21    personal radar screen.
22         Whether we -- I had any meetings
23    with someone from BP, I'm having a hard time
24    remembering what that might have been about.
25    Q.    You just stated that the
```

293

4        Q.              Now, in your experience
5    on the -- on the engineering and technical
6    support side from Transocean's perspective,
7    if Transocean needs to take rig downtime in
8    order to perform maintenance that relates to
9    safety, does Transocean do that?
10        A.     Yes.
11        Q.     If Transocean needs to do
12    preventative maintenance in order to keep its
13    rigs safe, does Transocean do that preventive
14    maintenance?
15        A.     Yes.
16        Q.     And if Transocean needs to do
17    either downtime for a repair or preventive
18    maintenance, does it do that regardless of --
19    of -- of what the customer insists on?
20        A.     I'm sorry.  Was a part of that
21    question again to keep it safe?
22        Q.     Yes.
23        A.     Absolutely.
24        Q.     Would Transocean ever hesitate
25    to tell its customer that it needed to take

294

1    rig downtime even if its daily rate would
2    somehow be affected by that insistence?
3        A.     Transocean's a big word.  Senior
4    management at Transocean I know would be
5    committed to getting the maintenance done
6    regardless of the impact it might have on
7    earnings.

295

296



348

```
1                    SIGNATURE PAGE
2
        I, NEWTON PHARR SMITH, have read the
3   foregoing deposition and hereby affix my
    signature that same is true and correct,
4   except as noted on the correction page.
5
6                    _____
                     NEWTON PHARR SMITH
7
8
9
    THE STATE OF  Texas        )
10  COUNTY OF  Harris          )
11
        Before me  Vicky C. Smith      on this
12  day personally appeared  Newton Pharr Smith
    known to me [or proved to me on the oath of
13  _____ or through
    _____ (description of
14  identity card or other document)] to be the
    person whose name is subscribed to the
15  foregoing instrument and acknowledged to me
    that he/she executed the same for the
16  purposes and consideration therein expressed.
        Given under my hand and seal of office
17  this  15th  day of  July         , 2011.
18
19                    _____
        NOTARY PUBLIC IN AND FOR
20      THE STATE OF
21
    My Commission Expires:
22  4/22/2014
23
24
25
```

VICKY C. SMITH
Notary Public, State of Texas
My Commission Expires
April 22, 2014

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )   MDL NO. 2179
by the  OIL RIG,      )
DEEPWATER HORIZON in   )   SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010      )   JUDGE BARBIER
                    )
                    )   MAG. JUDGE
                    )   SHUSHAN

VOLUME 2 OF 2

Deposition of NEWTON PHARR SMITH, taken
at Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
June 28, 2011.

**Page 2**

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING
COMMITTEE:

  Mr. Soren Gisleson
  Mr. Carl "Trey" Woods
  HERMAN, HERMAN KATZ & COTLAR, LLP
  820 O'Keefe Avenue
  New Orleans, Louisiana 70113
  sgisleson@hhkc.com
  crobinson@hhkc.com

APPEARING FOR TRANSOCEAN AND PHARR SMITH:

  Mr. Richard G. Murphy, Jr.
  SUTHERLAND, ASBILL & BRENNAN, LLP
  1275 Pennsylvania Avenue, NW
  Washington, DC 20004-2415
  Rick.murphy@sutherland.com

  Mr. David A. Baay
  SUTHERLAND, ASBILL & BRENNAN, LLP
  1001 Fannin, Suite 3700
  Houston, Texas  77002
  david.baay@sutherland.com

APPEARING FOR BP, INC.:

  Mr. Don K. Haycraft
  LISKOW & LEWIS
  701 Poydras, Street 5000
  New Orleans, Louisiana 70139
  dkhaycraft@liskow.com

**Page 3**

APPEARING FOR HALLIBURTON:
  Mr. Floyd Hartley
  Mr. Sean Fleming
  GODWIN RONQUILLO
  1201 Elm Street, Suite 1700
  Dallas, Texas 75270-2041
  fhartley@GodwinRonquillo.com
  sfleming@GodwinRonquillo.com

APPEARING FOR CAMERON:
  Mr. Eric J.R. Nichols
  BECK, REDDEN & SECREST
  1221 McKinney Street, Suite 4500
  Houston, Texas 77010-2010
  enichols@brsfirm.com

APPEARING FOR THE STATE OF LOUISIANA:

  Mr. Douglas R. Kraus
  KANNER & WHITELEY
  701 Camp Street
  New Orleans, Louisiana 70130
  D.Kraus@kanner-law.com

APPEARING FOR ANADARKO PETROLEUM COMPANY:

  Ms. Rianne Rocca
  BINGHAM McCUTCHEN
  Three Embarcadero Center
  San Francisco, California 94111
  rianne.rocca@bingham.com

**Page 4**

APPEARING FOR WEATHERFORD:

  Mr. William "Bill" Joyce
  JONES WALKER
  201 St. Charles Avenue
  New Orleans, Louisiana 70170
  bjoyce@joneswalker.com

APPEARING FOR DRIL-QUIP:

  Ms. Margaret Bryant
  WARE, JACKSON, LEE & CHAMBERS
  2929 Allen Parkway, 42nd Floor
  Houston, Texas 77019
  margaretbryant@warejackson.com

APPEARING ON BEHALF OF M-I, LLC:

  Mr. Patrick K. A. Elkins
  MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
  1000 Louisiana St., Suite 4000
  Houston, Texas 77002-5006
  pelkins@morganlewis.com

APPEARING FOR MOEX USA AND MOEX OFFSHORE
2007, LLC
  Mr. R. Jack Reynolds
  PILLSBURY WINTHROP SHAW PITTMAN, LLP
  909 Fannin, Suite 2000
  Houston, Texas 77010
  (713) 276-7633
  jack.reynolds@pillsburylaw.com

ALSO PRESENT:
  Ms. Mary Gaasch - The Videographer

REPORTED BY:
  RENE WHITE MOAREFI, CSR, CCR
  Texas Certified Shorthand Reporter
  Louisiana Certified Court Reporter

1 (Pages 1 to 4)



**37**

**39**

2

Q.    And -- and although I know you
testified you weren't aware of what that term
meant, are you aware of Transocean policies
or procedures that are in place to prevent
the event or occurrence of catastrophic
events?

A.    Yes.

Q.    And -- and what are some of
those policies and procedures?

A.    Actually, in my experience,
Transocean was -- was unique in my experience
because they concentrated both on behavioral
safety and on major event avoidance.

We had audits that were
conducted on the rigs on a regular basis that
were focused on major hazards.  We had
what -- I can't remember the acronyms, to be
honest with you.  One was a major hazard risk
assessment, which was primarily rig-based,
where a group would go from compartment to
compartment and look specifically not for
little trips, slips and falls-type stuff, but
big picture, you know, what could happen as
identification.

**38**

**40**

1
2
3
4
5
6
7
8
9
10
11
12
13
14

And then there was a separate
process -- and I can't remember the name of
it -- but it was more overarching, if you
will, that looked at policies, procedures,
company management system, down through the
division at the rig operating and its overall
processes to -- to identify major hazards and
either eliminate or mitigate them.

Q.    And -- and just from that
response, I -- I think I know the answer.
But it sounds like, then, that you are
familiar with those types of policies at
Transocean?

A.    Yes.

**10  (Pages 37 to 40)**



41

43

1    DEEPWATER HORIZON?
2        A.    Of course.

42

44

22        Q.    Is it your understanding that BP
23    would have had the authority to stop
24    operations if they felt any of the rig
25    maintenance was undermining the safety of the

re

Worldwide Court Reporters, Inc.
(800) 745-1101

77

```
 1              SIGNATURE PAGE
 2
        I, NEWTON PHARR SMITH, have read the
 3   foregoing deposition and hereby affix my
     signature that same is true and correct,
 4   except as noted on the correction page.
 5
 6
                 NEWTON PHARR SMITH
 7
 8
 9
     THE STATE OF  Texas      )
10   COUNTY OF     Harris     )
11
        Before me  Vicky C. Smith     on this
12   day personally appeared  Newton Pharr Smith
     known to me [or proved to me on the oath of
13   _____ or through
     _____ (description of
14   identity card or other document)] to be the
     person whose name is subscribed to the
15   foregoing instrument and acknowledged to me
     that he/she executed the same for the
16   purposes and consideration therein expressed.
        Given under my hand and seal of office
17   this  15th  day of  July       , 2011.
18
19
                 NOTARY PUBLIC IN AND FOR
20               THE STATE OF
21
     My Commission Expires:
22   ___4/22/2014___
23                          VICKY C. SMITH
24                          Notary Public, State of Texas
                            My Commission Expires
25                          April 22, 2014
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL      )   MDL NO. 2179
**by the** OIL RIG,      )
DEEPWATER HORIZON in   )   SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010      )   JUDGE BARBIER
            )
            )   MAG. JUDGE
            )   SHUSHAN

Deposition of CARL BARRETT TAYLOR, taken
at Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
July 14, 2011.

**Page 2**

1        A P P E A R A N C E S
2
APPEARING FOR THE PLAINTIFFS' STEERING
3   COMMITTEE:
4   Mr. Michael C. Palminitier
    deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ
5   618 Main Street
    Baton Rouge, Louisiana 70801
6   mpalminitier@dphf-law.com
7
8   APPEARING FOR BP, INC.:
9   Mr. Martin R. Boles
    Ms. Sibo Mack-Williams
10  KIRKLAND & ELLIS, LLP
    333 South Hope Street
11  Los Angeles, CA 90071
    martin.boles@kirkland.com
12  Sibo.mack-williams@kirkland.com
13
14  APPEARING FOR ANADARKO PETROLEUM COMPANY:
15  Mr. David Magee
    BINGHAM McCUTCHEN
16  One Federal Street
    Boston, Massachusetts 02110
17  david.magee@bingham.com
18
19  APPEARING FOR TRANSOCEAN:
20  Mr. Ryan King
    Ms. Amy Jaasma
21  GOFORTH GEREN EASTERLING, LLP
    4900 Woodway, Suite 750
22  Houston, Texas 77056
    ryanking@goforthlaw.com
23  ajaasma@goforthlaw.com
24          -
25

**Page 3**

1   Mr. Edward F. Kohnke, IV
2   PREIS & ROY, PLC
    601 Poydras, Suite 1700
3   New Orleans, Louisiana 70130-6002
    efk@preisroy.com
4
5   APPEARING FOR HALLIBURTON:
6   Ms. Aimee Williams
    Mr. Kodie Bennion
7   GODWIN RONQUILLO
    1201 Elm Street, Suite 1700
8   Dallas, Texas 75270-2041
    awilliams@godwinronquillo.com
9   kbennion@godwinronquillo.com
10
11  APPEARING FOR CAMERON:
12  Mr. Brad Coffey
    BECK, REDDEN & SECREST
13  1221 McKinney Street, Suite 4500
    Houston, Texas 77010-2010
14  bcoffey@brsfirm.com
15
16  APPEARING FOR THE STATE OF LOUISIANA:
17  Mr. Douglas R. Kraus
    KANNER & WHITELEY
18  701 Camp Street
    New Orleans, Louisiana 70130
19  d.kraus@kanner-law.com
20
21  APPEARING FOR WEATHERFORD:
22  Mr. L. Etienne Balart
    JONES WALKER
23  201 St. Charles Avenue
    New Orleans, Louisiana 70170
24  ebalart@joneswalker.com
25

**Page 4**

1   APPEARING FOR DRIL-QUIP:
2   Ms. Wendy Ware Bishop
    WARE, JACKSON, LEE & CHAMBERS
3   2929 Allen Parkway, 42nd Floor
    Houston, Texas 77019-2185
4   wendybishop@warejackson.com
5
6   APPEARING FOR M-I SWACO, LLC:
7   Mr. Lucas T. Elliot
    MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
8   1000 Louisiana St., Suite 4000
    Houston, Texas 77002-5006
9   lelliot@morganlewis.com
10
11  APPEARING FOR THE WITNESS:
12  Mr. Cory D. Itkin
    ARNOLD & ITKIN
13  1401 McKinney Street, Suite 2550
    Houston, Texas  77010
14  citkin@arnolditkin.com
15          -
16  Mr. Guy L. Womack
    ATTORNEY AT LAW
17  402 Main Street, Suite 6 North
    Houston, Texas  77002
18  guy.womack@usa.net
19
20  ALSO PRESENT:
21      Mr. James Deel - The Videographer
22
REPORTED BY:
23
    Tamara Chapman, CSR
24  Certified Shorthand Reporter
    State of Texas
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



11  Q.    Some of those people that
12  you mentioned having technical knowledge or
13  technical expertise in terms of the well and
14  its safety, would that include the OIM?
15  A.    Sure.
16  Q.    Would that include drillers on
17  the DEEPWATER HORIZON?
18  A.    Yes.
19  Q.    And I'm sure there are others as
20  well that you would regard as having that
21  kind of technical expertise that were on the
22  DEEPWATER HORIZON?
23  A.    Yes.
24  Q.    Did any of them ever say to you
25  prior to the incident, We should stop

PURSUANT TO CONFIDENTIALITY ORDER

157

1   drilling this well, it's too dangerous?
2       A.    No.
3       Q.    Did anybody ever say to you
4   anything to that effect prior to the
5   incident?
6       A.    No.
7       Q.    Did anybody ever say that
8   this -- this well cannot be drilled safely,
9   in words or substance?
10      A.    No.
11      Q.    Did anybody from Transocean ever
12  say to you, We're rushing this too much,
13  we're not -- we're doing this job too
14  quickly, it's not being done right?
15      A.    No.
16      Q.    Did you ever get that impression
17  from what you observed on the DEEPWATER
18  HORIZON?
19      A.    No.



**PURSUANT TO CONFIDENTIALITY ORDER**

36

```
1
2                         SIGNATURE PAGE
3
          I, CARL BARRETT TAYLOR, have read the
4    foregoing deposition and hereby affix my
     signature that same is true and correct,
5    except as noted on the correction page.
6
7                     _Carl Barrett Taylor_
                      CARL BARRETT TAYLOR
8
9
10
     THE STATE OF Mississippi )
11   COUNTY OF Rankin         )
12
          Before me Debra G. Sylvester on this
13   day personally appeared Carl Barrett Taylor
     known to me [or proved to me on the oath of
14   _____ or through
     Drivers License    (description of
15   identity card or other document)] to be the
     person whose name is subscribed to the
16   foregoing instrument and acknowledged to me
     that he/she executed the same for the
17   purposes and consideration therein expressed.
          Given under my hand and seal of office
18   this _3_ day of August , 2011.
19
20                _Debra Gainey Sylvester_
                  NOTARY PUBLIC IN AND FOR
21                THE STATE OF Mississippi
22
     My Commission Expires:
23   _03-26-15_
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**



**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    )  MDL NO. 2179
by the  OIL RIG,      )
DEEPWATER HORIZON in  )  SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010     )  JUDGE BARBIER
                   )
                   )  MAG. JUDGE
                   )  SHUSHAN

Deposition of ROBERT JOSEPH TIANO,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on August 25, 2011.

**3**

1  APPEARING FOR TRANSOCEAN:
2      Mr. Daniel Johnson
       SUTHERLAND, ASBILL & BRENNAN, LLP
3      1001 Fannin, Suite 3700
       Houston, Texas  77002-6760
4      daniel.johnson@sutherland.com

5      Ms. Lauren Wygant Woodard
       ROYSTON RAYZOR
6      711 Louisiana Street, Suite 500
       Houston, Texas  77002
7      lauren.woodard@roystonlaw.com

8      Mr. John Kinchen
       HUGHES ARRELL KINCHEN, LLP
9      2211 Norfolk, Suite 1110
       Houston, Texas 77098
10     jkinchen@hakllp.com
11
12  APPEARING FOR HALLIBURTON:
13     Mr. Floyd R. Hartley
       Mr. Joel D. Beus
14     GODWIN RONQUILLO
       1201 Elm Street, Suite 1700
15     Dallas, Texas 75270-2041
       fhartley@godwinronquillo.com
16     jbeus@godwinronquillo.com
17
18  APPEARING FOR CAMERON:
19     Mr. Geoff Gannaway
       BECK, REDDEN & SECREST
20     1221 McKinney Street, Suite 4500
       Houston, Texas 77010-2010
21     ggannaway@brsfirm.com
22
23
24
25

**2**

1         A P P E A R A N C E S
2
3  APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
4      Mr. Joseph M. Bruno
       Ms. Melissa DeBarbieris
       BRUNO & BRUNO
5      855 Baronne Street
       New Orleans, LA 70113-1152
6      joe@brunobrunolaw.com
       melissa@brunobrunolaw.com
7
8  APPEARING FOR BP, INC.:
9
       Mr. Don K. Haycraft
10     LISKOW & LEWIS
       701 Poydras, Street 5000
11     New Orleans, Louisiana 70139-5099
       dkhaycraft@liskow.com
12
13
14  APPEARING FOR THE UNITED STATES:
15     Ms. Michelle Delemarre
       U.S. DEPARTMENT OF JUSTICE
16     1425 New York Avenue, NW
       Washington, D.C.  20044
17     michelle.delemarre@usdoj.gov
18
19  APPEARING FOR ANADARKO PETROLEUM COMPANY:
20     Ms. Marilee J. Allan
       BINGHAM McCUTCHEN
21     Three Embarcadero Center
       San Francisco, California  94111
22     marilee.allan@bingham.com
23
24
25

**4**

1  APPEARING FOR THE STATE OF LOUISIANA:
2      Mr. David Allen Pote
       KANNER & WHITELEY
3      701 Camp Street
       New Orleans, Louisiana 70130
4      d.pote@kanner-law.com
5
6  APPEARING FOR WEATHERFORD:
7      Mr. Tarak Anada
       Mr. L. Etienne Balart
8      JONES WALKER
       201 St. Charles Avenue
9      New Orleans, Louisiana 70170
       mlejeune@joneswalker.com
10     tanada@joneswalker.com
       ebalart@joneswalker.com
11
12
13  APPEARING FOR DRIL-QUIP:
14     Ms. Wendy Ware Bishop
       WARE, JACKSON, LEE & CHAMBERS
15     2929 Allen Parkway, 42nd Floor
       Houston, Texas 77019-2185
16     wendybishop@warejackson.com
17
18  APPEARING ON BEHALF OF M-I SWACO, LLC:
19     Mr. Patrick K. A. Elkins
       MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
20     1000 Louisiana St., Suite 4000
       Houston, Texas 77002-5006
21     pelkins@morganlewis.com
22
23  ALSO PRESENT :
24     Mr. Mike Flores - The Videographer
25     Ms. Tamara Chapman - The Reporter

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



309

311

310

312

21    Q.  Mr. Tiano, you slept on this rig; is that
22  true?
23    A.  Yes, sir.
24    Q.  Okay.  And -- and you slept on this rig
25  during the time you were the maintenance

**PURSUANT TO CONFIDENTIALITY ORDER**



313

1  supervisor, right?
2     A.  Yes, sir.
3     Q.  Did you feel safe?
4     A.  Yes, sir.

6:25

6:24

314

315

2        Q.  (BY MR. JOHNSON)  I'm not going to ask
3  you about each one of the men who died
4  individually, Mr. Tiano.  But I want to ask you
5  if there was any one of those men that you knew
6  that you ever found were the type of person that
7  would endanger the lives of any of their
8  coworkers?
9        MR. HAYCRAFT: Objection; form.
10     A.  Not that I know of.
11     Q.  (BY MR. JOHNSON)  These aren't the type
12  of individuals that you were -- that you were
13  aware of would become complacent in doing their
14  jobs?
15        MR. HAYCRAFT: Objection; form.
16     A.  Not that I'm aware of any of them.

316

1              CORRECTION PAGE
2  WITNESS NAME: ROBERT JOSEPH TIANO
3  DATE: 08/25/2011
4  PAGE  LINE  CHANGE   REASON
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN  )  SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

Deposition of BUDDY JOSEPH
TRAHAN, taken at Liskow & Lewis, 1001 Fannin,
Suite 1800, Houston, Texas, 77002, on the
28th day of September, 2011.

**2**

```
 1          A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING
     COMMITTEE:
 4       Mr. Guy E. Matthews
         Mr. Lee N. Joseph
 5       MATTHEWS, LASON & JOHNSON
         200 Bering Drive, Suite 700
 6       Houston, Texas  77057-3778
 7
 8   APPEARING FOR BP, INC.:
         Mr. Keith R. Jarrett
 9       LISKOW & LEWIS
         One Shell Square
10       701 Poydras Street, Suite 5000
         New Orleans, Louisiana 70139-5099
11
12   APPEARING FOR TRANSOCEAN:
         Mr. M. Benjamin Alexander
13       PREIS & ROY
         Versailles Centre, Suite 400
         102 Versailles Boulevard
14       Lafayette, Louisiana  70501
15       Mr. Steven L. Roberts
         SUTHERLAND ASBILL & BRENNAN
16       1001 Fannin, Suite 3700
         Houston, Texas  77002-6760
17
         Mr. John Kinchen
18       HUGHES ARRELL KINCHEN, LLP
         Norfolk Tower
19       2211 Norfolk, Suite 1110
         Houston, Texas  77098
20
21   APPEARING FOR ANADARKO PETROLEUM COMPANY:
         Ms. Jennifer S. Rosen
22       Ms. Marilee J. Allan
         BINGHAM MCCUTCHEN
23       Three Embarcadero Center
         San Francisco, California 94111-4067
24
25
```

**3**

```
 1       A P P E A R A N C E S (Continued)
 2
 3   APPEARING FOR CAMERON INTERNATIONAL
     CORPORATION:
 4       Ms. Kathleen A. Gallagher
         BECK, REDDEN & SECREST
 5       One Houston Center
         1221 McKinney  Street, Suite 4500
 6       Houston, Texas  77010-2010
 7
         APPEARING FOR WEATHERFORD:
 8       Mr. Michael A. Chernekoff
         JONES, WALKER, WAECHTER, POITEVENT,
 9       CARRERE & DENEGRE, LLP
         JP Morgan Chase Tower
10       600 Travis, Suite 6601
         Houston, Texas 77002
11
12   APPEARING FOR DRIL-QUIP, INC.:
         Mr. Christopher W. Van Kleef
13       WARE, JACKSON, LEE & CHAMBERS
         America Tower, 42nd Floor
14       2929 Allen Parkway
         Houston, Texas  77019-7101
15
16   APPEARING FOR M-I SWACO:
         Ms. Denise Scofield
17       MORGAN, LEWIS & BOCKIUS, LLP
         1000 Louisiana Street, Suite 4200
18       Houston, Texas  77002-5006
19
         APPEARING FOR HALLIBURTON:
20       Mr. Donald E. Godwin
         Ms. Stefanie K. Major
21       GODWIN RONQUILLO
         1201 Elm Street, Suite 1700
22       Dallas, Texas 75270-2041
23
24
25
```

**4**

```
 1       A P P E A R A N C E S (Continued)
 2
 3   APPEARING FOR THE UNITED STATES:
         Ms. Rachel Hankey
 4       U.S. DEPARTMENT OF JUSTICE
         ENVIRONMENTAL & NATURAL
 5       RESOURCES DIVISION
         601 D Street, N.W.
 6       Washington, D.C.  20004
 7
 8   APPEARING FOR THE UNITED STATES COAST GUARD:
         Lt. Christopher Jones
 9       Marine Investigator
         U.S. COAST GUARD
10       9640 Clinton Drive
         Houston, Texas  77029-4328
11
12   APPEARING FOR THE STATE OF LOUISIANA:
         Mr. Lambert J. "Joe" Hassinger, Jr.
13       GALLOWAY, JOHNSON, TOMPKINS, BURR
         AND SMITH
         701 Poydras Street, 40th Floor
14       New Orleans, Louisiana  70139
15
16   APPEARING FOR BUDDY JOSEPH TRAHAN:
         Mr. Chris Flood
17       FLOOD & FLOOD
         914 Preston at Main, Suite 800
         Houston, Texas  77002
18
         Mr. Lance H. Lubel
19       Ms. Jill D. Trahan
         LUBEL VOYLES, L.L.P.
20       5020 Montrose, Suite 800
         Houston, Texas  77006
21
22   ALSO PRESENT:
         Mr. Max Kennedy, Videographer
23       Mr. Danny Damiani
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



153

155

11      In 2009 and 2010, in your
12  position as operations manager assets, the
13  operations culture, the safety culture that
14  you observed on the Horizon, that's the same
15  culture that you know to be in place on other
16  Transocean rigs?
17      A.   Yes.
18      Q.   So what we know from this case,
19  the evidence that's been developed about the
20  way things were done on the Horizon, that's
21  the way it's done Transocean-wide?
22      A.   Well, you'd have to be specific.
23      Q.   Can you think of any example, as
24  you sit here today, again, relating to the
25  years 2009 and 2010, where you found

154

156

1  something that was done on the Horizon that
2  just didn't fit with the way Transocean did
3  things on its other rigs?
4      MR. KINCHEN: Object to form.
5      A.   I can't recall of anything.

PURSUANT TO CONFIDENTIALITY ORDER



157

7    Q.   (BY MR. HASSINGER)  Have you
8  ever had any conversations with any
9  Transocean employees, the gist of which was
10  their concern that Transocean's maintenance
11  program was a "run it until it breaks"
12  culture?
13    A.   Not that I recall.

159

158

160

PURSUANT TO CONFIDENTIALITY ORDER



237

239

238

240

17    Q.    Did you ever hear anyone else
18  express concerns to you on that subject about
19  drilling personnel on the Deepwater Horizon
20  or any other Transocean rig?
21    MR. KINCHEN: Object to form.
22    A.   Not that I recall specifically.

PURSUANT TO CONFIDENTIALITY ORDER

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    ) MDL NO. 2179
by the  OIL RIG,    )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010       ) JUDGE BARBIER
                     )
                     ) MAG. JUDGE SHUSHAN
                     )

Deposition of NICK WATSON, taken at
Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
July 14, 2011.

**2**

1    A P P E A R A N C E S
2
   APPEARING FOR THE PLAINTIFFS' STEERING
3  COMMITTEE:
4    Mr. Joseph M. Bruno
     Ms. Melissa DeBarbieris
5    BRUNO & BRUNO
     855 Baronne Street
6    New Orleans, LA 70113-1152
     joe@brunobrunolaw.com
7    melissa@brunobrunolaw.com
8
   APPEARING FOR THE WITNESS:
9
10   Mr. Michael E. Pierce
     ARNOLD & ITKIN, LLP
11   1401 McKinney, Suite 2550
     Houston, Texas 77010
12   Mpierce@arnolditkin.com

13   Mr. Geoff L. Womack
     GUY L. WOMACK & ASSOCIATES, PC
14   402 Main Street, 6th Floor
     Houston, Texas 77002
15   glwomack@usa.net
16  APPEARING FOR THE UNITED STATES:
17   Mr. David J. Pfeffer
     U.S. DEPARTMENT OF JUSTICE
18   Civil Division, Torts Branch
     1425 New York Avenue, NW, Suite 10100
19   Washington, D.C. 20005
     david.j.pfeffer@usdoj.gov
20
21  APPEARING FOR THE STATE OF LOUISIANA:
22   Mr. Lambert J. "Joe" Hassinger Jr.
     GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
23   701 Poydras Street, 40th Floor
     New Orleans, Louisiana 70139
24   jhassinger@gjtbs.com
25

**3**

1  APPEARING FOR BP, INC.:
2    Ms. Kimberly O. Branscome
     COVINGTON & BURLING, LLP
3    1201 Pennsylvania Avenue, NW
     Washington, D.C. 20004-2401
4    kbranscome@cov.com
5    Mr. Don K. Haycraft
     LISKOW & LEWIS
6    701 Poydras, Street 5000
     New Orleans, Louisiana 70139-5099
7    dkhaycraft@liskow.com
8
9  APPEARING FOR TRANSOCEAN:
   Mr. Daniel Johnson
10   SUTHERLAND, ASBILL & BRENNAN, LLP
     1001 Fannin, Suite 3700
11   Houston, Texas 77002-6760
     daniel.johnson@sutherland.com
12
   Mr. Daniel O. Goforth
13   GOFORTH GEREN EASTERLING, LLP
     4900 Woodway, Suite 750
14   Houston, Texas 77056
     dangoforth@goforthlaw.com
15
16 APPEARING FOR CAMERON:
17   Mr. Joe W. Redden
     BECK, REDDEN & SECREST
18   1221 McKinney Street, Suite 4500
     Houston, Texas 77010-2010
19   jredden@brsfirm.com
20
21 APPEARING FOR ANADARKO PETROLEUM COMPANY:
22   Ms. Marilee J. Allan
     BINGHAM McCUTCHEN
     Three Embarcadero Center
23   San Francisco, California 94111
     marilee.allan@bingham.com
24
25

**4**

1  APPEARING FOR HALLIBURTON:
2    Ms. Gwen E. Richard
     GODWIN, RONQUILLO, PC
3    1331 Lamar, Suite 1665
     Houston, Texas 77010
4    grichard@godwinronquillo.com
5    Ms. Laci M. Dreher
     GODWIN RONQUILLO
6    1201 Elm Street, Suite 1700
     Dallas, Texas 75270-2041
7    ldreher@godwinronquillo.com
8
9  APPEARING FOR WEATHERFORD:
10   Mr. William "Bill" Joyce
     JONES WALKER
11   201 St. Charles Avenue
     New Orleans, Louisiana 70170
12   bjoyce@joneswalker.com
13 APPEARING FOR DRIL-QUIP:
14   Ms. Margaret Bryant
     WARE, JACKSON, LEE & CHAMBERS
15   2929 Allen Parkway, 42nd Floor
     Houston, Texas 77019-2185
16   Margaretbryant@warejackson.com
17
18 APPEARING ON BEHALF OF M-I SWACO, LLC:
   Mr. Paul E. Krieger
19   MORGAN, LEWIS & BOCKIUS, LLP
     1000 Louisiana St., Suite 4000
20   Houston, Texas 77002-5006
     pkrieger@morganlewis.com
21 ALSO PRESENT:
   Mr. Mike Flores - The Videographer
22
   REPORTED BY:
23   RENE WHITE MOAREFI, CSR
     Certified Shorthand Reporter
24   State of Texas
     Certified Court Reporter
25   State of Louisiana

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



13

13    Q.            Obviously you were aboard
14  the HORIZON.  What I'd like to know first is:
15  How many other rigs did you work aboard when
16  you worked for Transocean before this
17  explosion in April of last year?
18    A.    I spent all three years on -- on
19  the HORIZON.
20    Q.    Oh, the whole time?
21    A.    Yes, sir.
22    Q.    Okay.  Did you -- tell me:  Did
23  you have an opinion about the HORIZON itself,
24  the rig?
25    MR. JOHNSON:

14

1           Objection, form.
2     A.    On the rig, three years that I
3   was there, it was prior -- the -- most of the
4   workers, we was proud.  We always said the
5   mighty HORIZON.
6     THE REPORTER:
7       I'm sorry?
8     THE WITNESS:
9       We always said the mighty
10  HORIZON, like we was proud of -- proud of --
11  of our rig, so . . .
12  EXAMINATION BY MR. BRUNO:
13    Q.    All right.  So you were proud of
14  the rig.  You didn't have any problems
15  working on that rig, it was comfortable?
16    A.    Yes.

15

16

PURSUANT TO CONFIDENTIALITY ORDER



17     Q.    So what I'm trying to know is if
18    when you were on that rig working for
19    Transocean on the HORIZON, did you have some
20    sense of whether or not you were expected to
21    please the company man?
22    MS. BRANSCOME:
23        Object to form.
24     A.    Like I said, our work
25    environments was basically, you know -- our

PURSUANT TO CONFIDENTIALITY ORDER



49

1  reputation as -- like I said, we had pride in
2  our rig.  And it was -- third party, from
3  everybody, was that you could depend on those
4  guys.  It didn't matter who gave directive.
5  You know, as a crew you wanted to look good.
6  You didn't want to be -- you know, look like
7  you couldn't get the job done.  So it doesn't
8  matter who it was.  It was just doing our
9  job.

19      Q.   Did you treat all those third
20  parties the same way as you treated the BP
21  third parties?
22      A.   Yes.  We were family.  If they
23  needed something, we went and helped them.

50

51

52

**PURSUANT TO CONFIDENTIALITY ORDER**



8   Q.   Did you ever -- did you -- did
9   you feel comfortable reporting safety issues
10  to your supervisors?
11      A.   Yes, ma'am.
12      Q.   Did you ever feel pressure not
13  to report a safety issue?
14      A.   No, ma'am.
15      Q.   Did you ever fear any
16  consequences if you were to report a safety
17  issue either to a Transocean employee or to
18  be a BP employee?
19      A.   No, ma'am.

34 (Pages 133 to 136)

PURSUANT TO CONFIDENTIALITY ORDER



149

150

151

information or training that you would have
liked to have had to perform your job?
    A.    No, ma'am.
    Q.    How would you describe the
safety culture of Transocean?
    MR. JOHNSON:
        Objection, form.
    A.    On my rig -- I can only just
talk about my rig.  On my rig it was law
if -- like I said, that camera -- if the
OIMs -- you got up there and you didn't have
a harness on, you going to -- you know, the
driller's going to get a phone call.  And it
was pretty much law.  You know, it was
strict.

152

    Q.    Okay.  Did you feel you had the
information and training necessary to perform
your job safely?
    A.    Yes, ma'am.
    Q.    Okay.  Was there any additional

PURSUANT TO CONFIDENTIALITY ORDER



Q.   I gathered from your testimony earlier, which I know was difficult, that you knew Dale Burkeen pretty well?
A.   Yes, sir.

41 (Pages 161 to 164)

**PURSUANT TO CONFIDENTIALITY ORDER**

165

```
1      Q.    Good man?
2      A.    Very good man.
3      Q.    Hard worker?
4      A.    Yes, sir.
5      Q.    Safety conscious worker?
6      A.    Yes, sir.
7      Q.    You spent, you know, half your
8  life out on that rig during the years that
9  you worked out there; is that right?
10     A.    Three years.  Yes, sir.
11     Q.    So you were -- you were on the
12 rig half the time, and then you'd go home
13 half the time; is that right?
14     A.    Yes, sir.
15     Q.    So you'd get to know folks
16 pretty well?
17     A.    Yes, sir.
18     Q.    Get to know whether they were
19 hard working folks, whether they were safety
20 conscious; is that true?
21     A.    Yes, sir.
22     Q.    During a lot of the time that
23 you worked on the DEEPWATER HORIZON, you knew
24 Jimmy Harrell was as OIM, right?
25     A.    Yes, sir.
```

166

```
1      Q.    And he was a safety conscious
2  OIM; isn't that true, sir?
3      A.    Yes, sir.
4      Q.    And do you know a gentleman by
5  the name of Randy Ezell?
6      A.    Yes, sir.
7      Q.    He was a senior toolpusher on
8  the rig; isn't that right?
9      A.    Yes, sir.
10     Q.    And during the time that you
11 worked on the rig, you -- you had occasions
12 where you worked around Mr. Ezell; isn't that
13 right?
14     A.    I knew him personally.
15     Q.    Well, not personally.  What I'm
16 saying is he -- he worked on the rig during
17 the same time during the period that you were
18 out there?
19     A.    Yes, sir.
20     Q.    Okay.  And as far as you know,
21 he was a safety conscious worker; isn't that
22 right?
23     A.    Yes, sir.
24     Q.    Did you know Jason Anderson?
25     A.    Yes, sir.
```

167

```
1      Q.    Good man?
2      A.    Yes, sir.
3      Q.    Hard worker?
4      A.    Yes, sir.
5      Q.    Safety conscious?
6      A.    Yes, sir.
7      Q.    Nothing that he ever did and
8  nothing you ever heard ever indicated he was
9  the type of individual that would put the
10 lives of your co-workers in jeopardy; is that
11 true?
12     MR. HASSINGER:
13         Object.
14     A.    That's true.
15 EXAMINATION BY MR. JOHNSON:
16     Q.    Dewey Revette, did you know him,
17 sir?
18     A.    Yes, sir.
19     Q.    Good man?
20     A.    Yes, sir.
21     Q.    Safety conscious?
22     A.    Yes, sir.
23     Q.    You never saw him do anything
24 that you deemed was unsafe; is that true?
25     A.    He was by the book.
```

168

```
16     Q.    And I think you were just asked
17 some questions about the authority to stop a
18 job?
19     A.    Yes, sir.
20     Q.    And that's referred to as a time
21 out for safety on the rig; isn't that right?
22     A.    Yes, sir.
23     Q.    And that was a policy on the
24 rig, wasn't it, Mr. Watson?
25     A.    Yes, sir.
```

**PURSUANT TO CONFIDENTIALITY ORDER**



169

1    Q.    That was something that you and
2 everybody else was empowered to do.  If you
3 saw something was unsafe, you could call that
4 timeout for safety; isn't that right?
5    A.    Yes, sir.
6    Q.    And you had seen that be -- been
7 done by other people; isn't that true?
8    A.    Yes, sir.
9    Q.    And if you saw something unsafe,
10 you wouldn't hesitate to call a timeout for
11 safety; isn't that right?
12    A.    Yes, sir.
13    Q.    Now, I think we talked a -- a
14 little bit earlier.  You were asked some
15 questions about a -- a weekly safety meeting;
16 is that right?
17    A.    Yes, sir.
18    Q.    And so that was a meeting that
19 took place once a week where y'all would -- I
20 think sometimes you said you would discuss
21 other incidents and maybe lessons learned.
22 Is that one of the things that you would
23 discuss?
24    A.    Yes, sir.
25    Q.    And the purpose of that weekly

171

1 that were conducted on Sundays; isn't that
2 true?
3    A.    Yes, sir.
4    Q.    And on those drills there were
5 variations; isn't that right?  So, for
6 example, there may be a fire in one location
7 during one drill and then they would change
8 that up for the next drill; isn't that right?
9    A.    Yes, sir.
10    Q.    And that way you'd be prepared
11 for different scenarios if an actual event
12 occurred; isn't that true?
13    A.    Yes, sir.
14    Q.    Okay.  And people took those
15 drills seriously, didn't they, sir?
16    A.    Yes, sir.
17    Q.    And you took those drills
18 seriously; isn't that true?
19    A.    Yes, sir.

170

1 meeting would be to discuss safety issues; is
2 that right?
3    A.    Yes, sir.
4    Q.    Now, separate and apart from
5 that, there were morning meetings that took
6 place on the rig; is that right?
7    A.    Yes, sir.
8    Q.    And I understood you described
9 some of that earlier; isn't that true?
10    A.    Yes, sir.
11    Q.    And the OIM would speak, and
12 then the company man for BP would talk at
13 those meetings, right?
14    A.    Yes, sir.
15    Q.    And fair to say that safety was
16 a big topic that was emphasized in those
17 morning meetings?
18    A.    Yes, sir.
19    Q.    For example, those meetings
20 might be used to discuss what was going to
21 take place that day and to coordinate those
22 activities in a safe manner; isn't that true?
23    A.    Yes, sir.
24    Q.    Okay.  Now, while you were on
25 the rig, there were regular emergency drills

172

PURSUANT TO CONFIDENTIALITY ORDER



181

183

3      Q.    Okay.  Did you feel like you got
4  sufficient training in safety during your
5  time at Transocean?
6      A.    Yes, ma'am.

182

184

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1                    SIGNATURE PAGE
 2
              I, NICK WATSON, have read the foregoing
 3   deposition and hereby affix my signature that
     same is true and correct, except as noted on
 4   the correction page.
 5
 6                 _____
                        NICK WATSON
 7
 8
 9
     THE STATE OF Louisiana    )
10   COUNTY OF Morehouse        )
11   PARISH
              Before me  CAROL JONES         on this
12   day personally appeared NICKOLAS O WATSON
     known to me [or proved to me on the oath of
13   _____ or through
     DRIVER LICENSE          (description of
14   identity card or other document)] to be the
     person whose name is subscribed to the
15   foregoing instrument and acknowledged to me
     that he/she executed the same for the
16   purposes and consideration therein expressed.
              Given under my hand and seal of office
17   this   5th   day of  August         , 2011.
18
19                 _____
                     NOTARY PUBLIC IN AND FOR
20                   THE STATE OF Louisiana
21                        # 72524
     My Commission Expires:
22   June 3, 2012
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010      )  JUDGE BARBIER
            )  MAG. JUDGE SHUSHAN

*****************
VOLUME 1
*****************

Deposition of Michael Keith Williams,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on the 20th day of July, 2011.

---

**2**

```
 1        A P P E A R A N C E S
 2
 3
 4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
 5       Mr. William W. Dills
         WILLIAMSON & RUSNAK
         4310 Yoakum Boulevard
 6       Houston, Texas  77006-5818
 7
 8   APPEARING FOR MICHAEL KEITH WILLIAMS:
         Mr. Ronnie G. Penton
         LAW OFFICES OF RONNIE G. PENTON
 9       209 Hoppen Place
         Bogalusa, Louisiana  70427-3827
10
11   APPEARING FOR BP, INC.:
         Mr. David W. Leefe
12       Mr. Devin C. Reid
         LISKOW & LEWIS
13       One Shell Square
         701 Poydras Street, Suite 5000
14       New Orleans, Louisiana  70139-5099
15
16   APPEARING FOR TRANSOCEAN:
         Mr. Edward F. Kohnke
17       PREIS & ROY
         Pan American Life Center
         601 Poydras Street, Suite 1700
18       New Orleans, Louisiana  70130
19       Mr. Daniel O. Goforth
         GOFORTH GEREN EASTERLING
20       4900 Woodway, Suite 750
         Houston, Texas  77056
21
22   APPEARING FOR ANADARKO PETROLEUM COMPANY:
         Ms. Marilee J. Allan
23       Ms. Jennifer S. Rosen
         BINGHAM MCCUTCHEN
24       Three Embarcadero Center
         San Francisco, California 94111-4067
25
```

---

**3**

```
 1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
         Mr. Alex Roberts
 2       BECK, REDDEN & SECREST
         One Houston Center
 3       1221 McKinney Street, Suite 4500
         Houston, Texas  77010-2010
 4
 5   APPEARING FOR WEATHERFORD:
         Mr. William C. Baldwin
 6       JONES, WALKER, WAECHTER, POITEVENT,
         CARRERE & DENEGRE, LLP
 7       201 St. Charles Avenue
         New Orleans, Louisiana  70170-5100
 8
 9   APPEARING FOR DRIL-QUIP, INC.:
         Ms. Wendy Ware Bishop
10       WARE, JACKSON, LEE & CHAMBERS
         America Tower, 42nd Floor
11       2929 Allen Parkway
         Houston, Texas  77019-7101
12
13   APPEARING FOR M-I SWACO:
         Mr. Patrick Elkins
14       MORGAN, LEWIS & BOCKIUS, LLP
         1000 Louisiana Street, Suite 4200
15       Houston, Texas 77002-5006
16
17   APPEARING FOR HALLIBURTON:
         Mr. Sean W. Fleming
         Mr. Israel R. Silvas
18       GODWIN RONQUILLO
         1201 Elm Street, Suite 1700
19       Dallas, Texas 75270-2041
20
21   APPEARING AS OBSERVER FOR THE
     U.S. DEPARTMENT OF THE INTERIOR:
         Mr. Lance C. Wenger
22       OFFICE OF THE SOLICITOR
         ROCKY MOUNTAIN REGION
23       U.S. DEPARTMENT OF THE INTERIOR
         755 Parfet Street, Suite 151
24       Lakewood, Colorado  80215
25
```

---

**4**

```
 1   APPEARING FOR THE UNITED STATES:
 2       Mr. David J. Pfeffer
         U.S. DEPARTMENT OF JUSTICE
         TORT BRANCH, CIVIL DIVISION
 3       1425 New York Avenue, N.W.
         Suite 10100
 4       Washington, D.C.  20005
 5
     ALSO PRESENT:
 6       Mr. Mark Hendrix, Videographer
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



221

223

19    Q.  Mr. Williams, let me ask you a question
20  that, in retrospect, may seem like an odd
21  question, but up until the time of the incident,
22  did you actually like working on the HORIZON rig?
23    A.  Yes, I did.

222

224

PURSUANT TO CONFIDENTIALITY ORDER



261

263

262

264

10    Q.         Did you have any concerns or
11  quarrels with the abilities of others working
12  either above you or below you, in your
13  Department, I should say?
14    A.  In my Department, no.
15    Q.  Okay.  What about your Supervisors?
16    A.  They were competent.
17    Q.  Okay.  And the people that were working
18  directly under you, were they competent, as well?
19    A.  Yes, they were.

PURSUANT TO CONFIDENTIALITY ORDER

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                    Reported by:

DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 395

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL        )    MDL NO. 2179
by the OIL RIG,          )
DEEPWATER HORIZON in     )    SECTION "J"
the GULF OF MEXICO,      )
April 20, 2010           )    JUDGE BARBIER
                         )
                         )    MAG. JUDGE
                         )    SHUSHAN




                    * * * * * * * * * * * * * *
                         VOLUME 2
                    * * * * * * * * * * * * * *




            Deposition of DAUN WINSLOW,
    taken at Pan-American Building, 601 Poydras
    Street, 11th Floor, New Orleans, Louisiana,
    70130, on the 21st of April, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters    Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:
DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 604

1     Q.   In your role as an operations
2  manager, can you tell me what percentage of
3  your job is devoted or dedicated in some
4  way to safety?
5     A.   Probably 70 percent of the time
6  is about safety.
7     Q.   And what comprises that
8  70 percent of the time that -- that -- of
9  your job that you focus on safety?  What
10  types of things are you -- are you focusing
11  on?
12     A.   Focus, about like dropped
13  objects, possible hand injuries,
14  communicating to the rig managers and the
15  crews.  Every conversation is about safety
16  in one way or the other, you know, and
17  we're doing timeout for safety, asked all
18  employees what they've done for safety
19  today.
20     Q.   You ever had occasion in your
21  role as operations manager to participate
22  in calls with the rig?
23     A.   Yes.
24     Q.   What's the first thing that's
25  discussed in every call with the rig?

Page 605

1     A.   Every rig manager talks about
2  safety first.  What -- what the crews have
3  done and how many work permit audits
4  they've done, how many times out for safety
5  or people that participate in the process.
6     Q.   How long have you known Jimmy
7  Harrell?
8     A.   Since about 1996, 1997.
9     Q.   What are your impressions of
10  Mr. Harrell in terms of his approach to
11  performing his job duties?
12     A.   Jimmy was -- or is one -- one of
13  the best drilling hands that I worked with
14  in deepwater.  When I first met him as a
15  toolpusher and even as an OIM, he's a --
16  he's compassionate about his people.  He's
17  compassionate about safety.  That's how he
18  approaches every day.
19     Q.   Was he a hard worker?
20     A.   Definitely.
21     Q.   Was he conscientious?
22     A.   Absolutely.
23     Q.   In your experience --
24  experiences with Jimmy, was he a safety
25  conscious manager?

Page 606

1     A.   Yes, sir.



Page 607

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters      Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

DAUN WINSLOW VOL. II April 21, 2011       THU BUI, CCR, RPR

Page 624

2        Prior to BP's lawyers
3    filing a lawsuit yesterday against
4    Transocean on the one year date marking the
5    death of 11 men, had anyone from BP ever
6    told you that they had concerns about the
7    condition of the DEEPWATER HORIZON as of
8    April 20th, 2010?
9        MR. HAYCRAFT:
10            Object to form.
11    A.    No.
12    Q.    Prior to BP's lawyers filing a
13    lawsuit on the one year date marking the
14    tragic death of 11 men, did anyone from BP
15    ever tell you they had concerns about the
16    competence of the crew onboard the
17    DEEPWATER HORIZON on April 20th, 2010?
18        MR. HAYCRAFT:
19            Object to form.
20    A.    No.  On the contrary.
21    Q.    What do you mean, sir, on the
22    contrary?
23    A.    I heard more praise about the
24    machines and the crews of the HORIZON.
25    Q.    Did BP have the right to stop

Page 625

1    work on the DEEPWATER HORIZON if it
2    believed an unsafe condition existed?
3    A.    Absolutely.
4    Q.    During anytime while the
5    DEEPWATER HORIZON was working for BP on the
6    Macondo well, are you aware of anytime when
7    BP requested that Transocean stop work
8    because of an unsafe condition on the rig?
9    A.    No.
10    Q.    Is that something you would have
11    been made aware of, sir?
12    A.    Yes.

Page 626



19        Based on your experiences
20    with Mr. Revette, did you consider him to
21    be a safe worker?
22    A.    Dewey Revette was a very safe
23    worker.  Conscientious, knowledgeable.
24    Q.    Yesterday was, in fact, the one
25    year anniversary of Mr. Revette's tragic

Page 627

1    passing; isn't that true?
2    A.    Yes, sir.
3    Q.    Prior to April 20, 2010, did
4    anyone from BP ever express concerns about
5    Mr. Revette's competency?
6    A.    No.
7    Q.    How about Mr. Revette's
8    training?
9    A.    No.
10    Q.    The document that I handed you,
11    sir, would you turn to Page 10.  I'd like
12    to direct you to -- to Paragraph 32.  And
13    I'm going to read the last sentence there
14    to you.
15        Transocean's drillers could
16    and should be able to identify a kick in a
17    well by monitoring the flow of drilling
18    fluids into and out of the well.
19        Who would have been the
20    Transocean driller on tour the night of the
21    incident?
22    A.    Dewey Revette.
23    Q.    If you would, sir, I would like
24    for you to turn to Page 23.  Actually, the
25    top of 24.  One of the items that BP, in

59 (Pages 624 to 627)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.       Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters       Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                    Reported by:

DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 628

```
 1   this document, alleges that Transocean
 2   failed to do is captured on the top of Page
 3   24, and it indicates that Transocean failed
 4   to provide a competent and qualified crew.
 5   Do you see that, sir?
 6      A.   Yes.
 7      Q.   I just want to be very clear for
 8   the record.  You were a person in your role
 9   that BP could come to if they had any
10   concerns or problems with the DEEPWATER
11   HORIZON or its crew; is that right?
12      A.   Yes, sir.
13      Q.   Prior to BP's lawyers filing
14   this document, alleging that Mr. Revette
15   was incompetent in the performance of his
16   job, did anyone from BP ever tell you or
17   express concerns to you, Mr. Winslow, that
18   Dewey Revette was incompetent?
19        MR. HAYCRAFT:
20            Object to form.
21      A.   Never.
22      Q.   Did anyone from BP -- prior to
23   having their lawyers file this document on
24   the one year anniversary after
25   Mr. Revette's death, did anyone from BP
```

Page 629

```
 1   ever tell you they had concerns about
 2   Mr. Revette's training?
 3        MR. HAYCRAFT:
 4            Object to form.
 5      A.   No.
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 630

```
 1
 2
 3
 4
 5
 6              WITNESS' CERTIFICATE
 7
 8
 9
10
11        I, DAUN WINSLOW, read or have
12   had the foregoing testimony read to me and
13   hereby certify that it is a true and
14   correct transcription of my testimony, with
15   the exception of any attached corrections
16   or changes.
17
18
19
20
21
22           DAUN WINSLOW
23
24
25
```

Page 631

```
 1          REPORTER'S CERTIFICATE
 2
 3        I, THU BUI, CCR, RPR, Certified
 4   Court Reporter, State of Louisiana, State
 5   of Texas, do hereby certify that the
 6   above-mentioned witness, after having been
 7   first duly sworn by me to testify to the
 8   truth, did testify as hereinabove set
 9   forth;
10        That the testimony was reported
11   by me in shorthand and transcribed under my
12   personal direction and supervision, and is
13   a true and correct transcript, to the best
14   of my ability and understanding;
15        That I am not of counsel, not
16   related to counsel or the parties hereto,
17   and not in any way interested in the
18   outcome of this matter.
19
20
21
22           THU BUI, CCR, RPR
                Certified Court Reporter
                State of Louisiana
23              State of Texas
24
25
```

60  (Pages 628 to 631)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

**GAUDET KAISER, L.L.C.**
601 Poydras Street, Suite 1720          New Orleans, Louisiana 70130
Phone: (504) 525-9100                          Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE



RECEIVED

MAY 3 1 2011

I, **DAUN WINSLOW,** have read or have had the

foregoing testimony read to me and hereby certify

that it is a true and correct transcription of

my testimony, with the exception of any

attached corrections or changes.

_MAY 24 2011_                          _Daun Winslow_

(Date  Signed)                          (Signature)

_____  Signed  with  corrections  as  attached.

_____  Signed  with  no  corrections  noted.

11745 Bricksome Avenue, Suite A-4          PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816                    FAX      (225) 291-7990

263 W. Causeway Approach                       PHONE   (504) 525-9100
Mandeville, Louisiana 70448                       FAX      (504) 525-9109

Website: www.gaudetkaiser.com               ALT. EMAIL:
                                                                  Gkp2003@aol.com & gkp@gaudetkaiser.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of David William Young, taken
at the Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
22nd day of September, 2011.

---

2

```
 1          A P P E A R A N C E S
 2
 3
 4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
 5     Mr. Matthew E. Lundy
       LUNDY, LUNDY, SOLLEAU & SOUTH, LLP
 6     501 Broad Street
       Lake Charles, Louisiana  70601
 7
     APPEARING FOR BP, INC.:
 8     Mr. Don K. Haycraft
       LISKOW & LEWIS
 9     One Shell Square
       701 Poydras Street, Suite 5000
10     New Orleans, Louisiana  70139-5099
11     Ms. Sylvia Nichole Winston
       KIRKLAND & ELLIS
12     300 North LaSalle
       Chicago, Illinois  60654
13
14   APPEARING FOR TRANSOCEAN:
       Mr. John Kinchen
15     HUGHES ARRELL KINCHEN
       Norfolk Tower
16     2211 Norfolk, suite 1110
       Houston, Texas  77098
17
       Mr. Matthew O. Gatewood
18     SUTHERLAND ASBILL & BRENNAN
       1275 Pennsylvania Avenue, N.W.
19     Washington, D.C.  20004
20
21   APPEARING FOR ANADARKO PETROLEUM COMPANY:
       Mr. Warren E. George
22     BINGHAM MCCUTCHEN
       Three Embarcadero Center
       San Francisco, California 94111-4067
23
24
25
```

---

3

```
 1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
       Mr. Brad Coffey
 2     BECK, REDDEN & SECREST
       One Houston Center
 3     1221 McKinney Street, Suite 4500
       Houston, Texas  77010-2010
 4
 5   APPEARING FOR WEATHERFORD:
       Mr. R. Scott Jenkins
 6     JONES, WALKER, WAECHTER, POITEVENT,
       CARRERE & DENEGRE, LLP
 7     201 St. Charles Avenue
       New Orleans, Louisiana  70170-5100
 8
 9   APPEARING FOR DRIL-QUIP, INC.:
       Ms. Wendy Ware Bishop
10     WARE, JACKSON, LEE & CHAMBERS
       America Tower, 42nd Floor
11     2929 Allen Parkway
       Houston, Texas  77019-7101
12
13   APPEARING FOR M-I SWACO:
       Mr. Lucas T. Elliot
14     MORGAN, LEWIS & BOCKIUS, LLP
       1000 Louisiana Street, Suite 4000
15     Houston, Texas 77002-5006
16
17   APPEARING FOR HALLIBURTON:
       Mr. Floyd R. Hartley, Jr.
       Ms. Jill J. Prudhomme
18     GODWIN RONQUILLO
       Renaissance Tower
19     1201 Elm Street, Suite 1700
       Dallas, Texas 75270-2041
20
21   APPEARING FOR THE UNITED STATES:
       Ms. Michelle T. Delemarre
22     U.S. DEPARTMENT OF JUSTICE
       TORT BRANCH, CIVIL DIVISION
23     1425 New York Avenue, N.W.
       Suite 10100
24     Washington, D.C.  20005
       Post Office Box 14271
25     Washington, D.C.  20044-4271
```

---

4

```
 1   APPEARING FOR THE UNITED STATES COAST GUARD:
       LCDR David M. DuBay
 2     U.S. DEPARTMENT OF HOMELAND SECURITY
       OFFICE OF CLAIMS AND LITIGATION
 3     U.S. COAST GUARD
       2100 2nd Street, S.W., Stop 7121
 4     Washington, D.C.  20593-7121
 5
 6   APPEARING FOR THE STATE OF LOUISIANA:
       Mr. Henry Dart
       510 North Jefferson Street
 7     Covington, Louisiana  70433
 8
 9   APPEARING FOR THE WITNESS DAVID WILLIAM YOUNG:
       Mr. Tim Johnson
10     LOCKE, LORD, BISSELL & LIDDELL
       600 Travis, Suite 2800
11     Houston, Texas  77002
12   ALSO PRESENT:
       Mr. Mark Hendrix, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



285

287

```
4        Q.  (By Mr. Haycraft) Well, let's assume that
5     a Transocean lawyer were sitting across the table
6     from you during this deposition and said:  "Was
7     Dewey Revette or was Jason Anderson or was Jimmy
8     Harrell a competent, safety-conscious Driller or
9     Toolpusher or OIM?"  Would you be able to answer
10    that question?
11           MR. KINCHEN: Objection to form.
12        A.  Are you asking me if they were?
13        Q.  (By Mr. Haycraft) Yeah.
14        A.  Yes, they were.
```

```
20        Q.  Okay.  So the reason why you would have
21    some reason to give an opinion on the competence
22    or character of the drill crew aboard the
23    DEEPWATER HORIZON is because you worked regularly
24    with them over a long period of time?
25        A.  That's correct.
```

286

288

**PURSUANT TO CONFIDENTIALITY ORDER**



321

322

17   Q.  Did you consider the DEEPWATER HORIZON to
18   be a safe rig?
19        MR. HAYCRAFT: Objection, form.
20   A.  I did.

25   Q.  (By Mr. Kinchen) Did you have any

323

1   concerns about maintenance of the DEEPWATER
2   HORIZON?
3        A.  I did not.
4        Q.  Was -- was -- was safety a priority for
5   you on the DEEPWATER HORIZON?
6        A.  It was.
7        Q.  Was it a priority, as far as you know,
8   for your crew members?
9        A.  As far as I know, it was.
10       Q.  Was it your top priority?
11       A.  Yes, it was.
12       Q.  Describe -- how long did you -- did you
13   spend on the DEEPWATER HORIZON?
14       A.  Four and a half years, approximately.
15       Q.  Okay.  Based on your experience, describe
16   the -- the safety culture on the DEEPWATER
17   HORIZON.
18       A.  It was a top-down safety culture.
19   It -- and it -- it really worked in both
20   directions.  You had -- the Supervisors
21   were -- were there to -- to teach everybody
22   about the expectations.  And at the same time,
23   you were able to -- the -- the guys at the
24   lower end were able to stop jobs and -- and bring
25   up safety issues that would be addressed by the

324

1   upper level management.

19       Q.  Did you ever observe any Transocean
20   crew member on the DEEPWATER HORIZON have a --
21   were callous or indifference about the safety of
22   others or the environment?
23       A.  I did not.

PURSUANT TO CONFIDENTIALITY ORDER

327

1

2          I, DAVID WILLIAM YOUNG, have read the

3    foregoing deposition and hereby affix my

4    signature that same is true and correct, except

5    as noted on the attached Amendment Sheet.

6

7

                    DAVID WILLIAM YOUNG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**