1999 WL 33621574 (C.A.5)                                                                                    Page 1

For Opinion See 210 F.3d 365 , 200 F.3d 266

United States Court of Appeals,

Fifth Circuit.

FINA, Inc., (formerly known as American Petrofina, Inc.),
andFina Oil And Chemical Company, (formerly known as American Petrofina Company of Texas), Plaintiffs/
Counter-Defendants/Appellants,
v.
ARCO, Defendant/Cross-Claimant/Appellee
andBP Oil Company and Sohio Pipe Line Company, Defendants/
Counter-Claimants/Cross-Defendants/Appellees.
No. 98-41021.
February 18, 1999.

On Appeal from the United States District Court for the Eastern District of Texas, Beaumont Division

Brief of Appellees Bp Oil Company and Sohio Pipe Line Company

Haynes and Boone, LLP, John R. Eldridge, State Bar No. 06513520, Lynne Liberato, State Bar No. 12319500,
Rudy A. England, State Bar No. 06620300, 1000 Louisiana Street, Suite 4300, Houston, Texas 77002-5012,
Telephone: (713) 547-2000, Telecopier: (713) 547-2600, Attorneys for Appellees.

**REQUEST FOR ORAL ARGUMENT**

Appellees, BP Oil Company and Sohio Pipe Line Company, believe the complex issues in this appeal cannot be
decided without oral argument and concur with appellants' request.

**\*iv TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ... i

REQUEST FOR ORAL ARGUMENT ... iii

TABLE OF CONTENTS ... iv

TABLE OF AUTHORITIES ... vii

STATEMENT OF JURISDICTION ... 2

STATEMENT OF THE ISSUES ... 3

STATEMENT OF THE CASE ... 4

A. Statement of facts ... 4

Case 2:10-md-02179-CJB-DPC   Document 4457-37   Filed 11/01/11   Page 2 of 24

B. Course of proceedings and disposition in the court below ... 5

SUMMARY OF THE ARGUMENT ... 8

ARGUMENT ... 10

I. Standard of Review ... 10

II. Regardless of which law applies, Fina cannot escape its agreement to indemnify BP ... 11

A. Delaware's "clear and unequivocal" rule does not apply to allow Fina to escape its contractual duties ... 13

1. The "clear and unequivocal" rule does not apply when the indemnity provision pertains to past rather than future conduct ... 13

*v 2. Delaware's "clear and unequivocal" rule does not apply to CERCLA and strict liability claims ... 16

3. The BP/Fina indemnity agreement is enforceable under Delaware law ... 17

B. The Texas "express negligence/strict liability" test does not apply because the indemnification is for past, not future, conduct ... 20

1. Numerous Texas cases recognize the past/future conduct distinction ... 20

2. Fina's cases purportedly supporting inapplicability of the past/future conduct distinction are inapposite ... 22

C. CERCLA expressly permits indemnity agreements and arguably preempts Delaware and/or Texas law to the extent that the indemnity would not be enforced under state law ... 29

D. If the result is different under Texas, as opposed to Delaware law, Texas has no fundamental policy mandating application of its "express negligence/strict liability" rule ... 31

III. The indemnity agreement is clear and unambiguous and requires Fina to indemnify BP because all of Fina's claims accrued after closing ... 34

A. Fina had no right to assert any claim of statutory or common law origin prior to closing; consequently, any claim Fina might assert could not have accrued prior to closing ... 34

B. CERCLA, RCRA, TSWDA, and TWC were enacted after Fina purchased the property; therefore, any claim Fina might assert under those statutes must have accrued after closing ... 36

*vi C. CERCLA liability did not accrue until after closing because a CERCLA cause of action could not have accrued until Fina first incurred response costs in 1990 ... 39

D. Fina's claims did not "accrue" prior to its purchase of the refinery ... 40

E. Fina's indemnity obligation is not ambiguous ... 42

IV. The parties' agreements create "circuitous indemnity obligations" mandating dismissal of Fina's claims ... 43

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

V. Alternatively, if Fina's indemnity obligation is inapplicable or unenforceable, then any indemnity obligation from BP to ARCO also is inapplicable or unenforceable for the same reason(s) ... 46

CONCLUSION ... 46

CERTIFICATE OF SERVICE ... 48

CERTIFICATE OF COMPLIANCE ... 49

## *vii TABLE OF AUTHORITIES

**CASES**

*AM Int'l, Inc. v. International Forging Equip. Corp.*, 982 F.2d 989 (6th Cir. 1993) ... 30

*Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989) ... 39

*Armotek Indus., Inc. v. Freedman*, 790 F. Supp. 383 (D. Conn. 1992) ... 26

*Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206 (3rd Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995) ... 14, 15, 29

*Callaway v. Overholt*, 796 S.W.2d 828 (Tex. App.-Austin 1990, writ denied) ... 11

*Carpenter v. Boyce*, 81 A.2d 294 (Del. Super. Ct. 1951) ... 39

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ... 10

*Chakov v. Outboard Marine Corp.*, 429 A.2d 984 (Del. 1981) ... 15

Chaplin v. Exxon Co., 1996 WL 13130, 25 ENV'T REP. CAS. (BNA) 2009 (S.D. Tex. 1986) ... 40

*Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49 (2d Cir. 1993) ... 30

*Dorchester Gas Co. v. American Petrofina, Inc.*, 710 S.W.2d 541 (Tex. 1986) ... 9, 22, 23, 24

**\*viii** *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993) ... 15, 21, 22

*Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987) ... 22, 23

*Exxon Corp. v. Burglin*, 4 F.3d 1294 (5th Cir. 1993) ... 31

*FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842 (10th Cir. 1993) ... 40

*Ferguson v. Johnston*, 320 S.W.2d 906 (Tex. Civ. App.-Texarkana 1959, writ ref'd n.r.e.) ... 35

*Fina, Inc. v. ARCO*, 16 F. Supp.2d 716 (E.D. Tex. 1998) ... *passim*

*Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104 (3d Cir. 1994) ... 30

*Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813 (Tex. 1994) ... 31

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995) ... 30

*Gopher Oil Co. v. Bunker*, 84 F.3d 1047 (8th Cir. 1996) ... 37

*Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997) ... 21

*Gulf Oil Corp. v. Spence & Howe Constr. Co.*, 356 S.W.2d 382 (Tex. Civ. App.-Houston 1962), *aff'd*, 365 S.W. 361 (Tex. 1963) ... 13, 14

**ix** *Harley-Davidson v. Minstar, Inc.*, 41 F.3d 341 (7th Cir. 1994), *cert. denied*, 115 S. Ct. 1401 (1995) ... 17, 26, 30

*Hays v. Mobil Oil Corp.*, 930 F.2d 96 (1st Cir. 1991) ... 30

*Hensley v. Conway*, 29 S.W.2d 416 (Tex. Civ. App.-Eastland 1930, no writ) ... 35

*John Boyd Co. v. Boston Gas Co.*, 992 F.2d 401 (1st Cir. 1993) ... 30

*Joslyn Mfg. Co. v. Koppers Co.*, 40 F.3d 750 (5th Cir. 1994) ... 25, 26, 30

*Kerr-McGee Chemical Co. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1993) ... 26, 30

*Levin Metals Corp. v. Parr-Richard Terminal Co.*, 817 F.2d 1448 (9th Cir. 1987) ... 37, 38, 39

*Lexington Ins. Co. v. W.M. Kellogg Co.*, 976 S.W.2d 807 (Tex. App.-Houston [1st Dist.] 1998, writ denied) ... 22

*Liebowitz v. Hicks*, 207 A.2d 371 (Del. Ch. 1965) ... 35, 36

*Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268 (8th Cir. 1996) ... 11, 28

*Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir. 1986) ... 30

*Memorial Med. Ctr. v. Keszler*, 943 S.W.2d 433 (Tex. 1997) ... 20

**x** Mid-Continent Supply Co. v. Conway, 240 S.W. 796 (Tex. Civ. App.- Texarkana 1951, writ ref'd n.r.e.) ... 34

*Milner Hotels, Inc. v. Norfolk & W. Railway*, 822 F. Supp. 341 (S.D. W. Va. 1993), *aff'd*, 19 F.3d 1429 (4th Cir. 1994) ... 11

*Moore v. Southwestern Elec. Power Co.*, 737 F.2d 496, 501 (5th Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) ... 45

*Niecko v. Emro Mktg. Co.*, 769 F. Supp. 973 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1296 (6th Cir. 1992) ... 31

*North Shore Gas Co. v. Salomon, Inc.*, 963 F. Supp. 694 (N.D. Ill. 1997), *aff'd in part and rev'd in part*, 152 F.3d 642 (7th Cir. 1998) ... 37, 38

*Olin Corp. v. Consolidated Aluminium Corp.*, 5 F.3d 10 (2d Cir. 1993) ... 27, 30

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Perez v. Lockheed Corp.* (*In re Air Disaster*), 81 F.3d 570 (5th Cir. 1996) ... 10

*Phillips Pipe Line Co. v. McKown*, 580 S.W.2d 435 (Tex. Civ. App.-Tyler 1979, writ ref'd n.r.e.) ... 44, 45

*Purolator Products v. Allied-Signal, Inc.*, 772 F. Supp. 124 (W.D.N.Y. 1991) ... 16

*Rock v. Delaware Elec. Coop., Inc.*, 328 A.2d 449 (Del. Super. Ct. 1974) ... 18

*Rodriguez v. Olin Corp.*, 780 F.2d 491 (5th Cir. 1986) ... 32

*Scott Fetzer Co. v. Douglas Components Corp.*, 1994 WL 148282, C.A. No. 11,327 (Del. Ch. April 12, 1994) ... 16, 17, 39

**\*xi** *Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 1997 WL 457510 (N.D. Tex. Aug. 7, 1997) ... 27

*Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982 (5th Cir. 1984) ... 44

*State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282 (Tex. App.-Corpus Christi 1990, writ denied) ... 31

*Sun Oil Co. v. Madeley*, 626 S.W.2d 726 (Tex. 1981) ... 42

*Sweetman v. Strescon Indus., Inc.*, 389 A.2d 1319 (Del. Super. Ct. 1978) ... 13, 14

*Unocal Corp. v. Dickinson Resources, Inc.*, 889 S.W.2d 604 (Tex. App.- Houston [14th Dist.] 1994, writ denied) ... 15

*Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252 (Tex. App.- Corpus Christi 1993, writ denied) ... 19

*Williams v. Pure Oil Co.*, 124 Tex. 341, 78 S.W.2d 929 (Tex. Comm'n App. 1935, judgm't adopted) ... 35, 36

**STATUTES AND RULES**

42 U.S.C. § 6972 ... 35

42 U.S.C. § 9607(e) ... 32

42 U.S.C. § 9607(e)(1) ... 29

Solid Waste Disposal Act of 1976, Pub. L. No. 94-580, § 2, 90 stat. 2796 (1976) ... 36

**\*xii** Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub. L. No. 96-510, Title I, § 101, 94 Stat. 2767 (1980) ... 36

FED. R. CIV. P. 56(c) ... 10

TEX. CIV. PRAC. & REM. CODE ANN. § 127.001 *et seq*. (Vernon 1997 & Supp. 1998) ... 32

TEX. HEALTH & SAFETY CODE ANN. § 361.344 (Vernon 1992 & Supp. 1998) ... 32

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

TEX. HEALTH & SAFETY CODE ANN. § 361.345 (Vernon 1992 & Supp. 1998) ... 32

**SECONDARY SOURCE**

Thaddeus Bereday, *Contractual Transfers of Liability Under CERCLA Section 107(e)(1): For Enforcement of Private Risk Allocations in Real Property Transactions*, 43 CASE W. RES. L. REV. 161 (1992) ... 30

**\*1 TO THE HONORABLE COURT OF APPEALS FOR THE FIFTH CIRCUIT:**

Appellees, BP Oil Company and Sohio Pipe Line Company (collectively, "BP"), **\*2** file this brief in response to the Brief of Appellants Fina, Inc. and Fina Oil and Chemical Company.

STATEMENT OF JURISDICTION

The district court properly assumed jurisdiction over this action under 42 U.S.C. § 9613(b), 42 U.S.C. § 6972(a); 28 U.S.C. § 1331; and 28 U.S.C. § 1367. The defendants/counter-claimants/cross-defendants/appellees, BP Oil Company and Sohio Pipe Line Company, are companies duly authorized to do business in Texas, and the plaintiffs (collectively, "Fina"), are Texas corporations.

This is an appeal from a final judgment entered July 28, 1998 by the United States District Court for the Eastern District of Texas disposing of all claims by all parties. Fina timely filed a notice of appeal on August 14, 1998. This Court's appellate jurisdiction is conferred by 28 U.S.C. § 1291.

**\*3 STATEMENT OF THE ISSUES**

BP does not contest the framing of the issues by Fina except to add that if Fina's agreement to indemnify BP for the claims Fina asserted in this case were unenforceable under Texas and Delaware law, BP contends that federal common law under CERCLA preempts Texas and Delaware law and Fina's indemnity obligation is enforceable thereunder.

**\*4 STATEMENT OF THE CASE**

**A. Statement of facts**.

On May 10, 1973, BP entered into an Agreement for Sale of Assets with American Petrofina Incorporated (the "BP/Fina Agreement"). Under the agreement, BP sold Fina the Port Arthur, Texas refinery that is the subject of this action (the "Refinery"). (R1:3.)[FN1] In the BP/Fina Agreement, Fina expressly agreed to indemnify BP for the identical claims and liabilities that it alleged against BP in the trial court. Paragraph XIV(B)(3) of the BP/Fina Agreement provides:

> FN1. For the sake of simplicity, BP will adopt the appellants' system of citing the record. (*See* Appellants' Br. at 2.)

Fina shall indemnify, defend and hold harmless BP and SPL against all claims, actions, demands, losses or liabilities arising from the use or the operation of the Assets or arising under or relating to any lease, contract, license or other agreement assigned to and assumed by Fina or a subsidiary of Fina and accruing from and after closing.

(R2:404.) Conversely, BP agreed to indemnify Fina for claims that accrued before closing. (R2:403.)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

BP earlier had acquired the refinery from Atlantic Richfield Company ("ARCO") on March 4, 1969, pursuant to their December 18, 1968, contract ("ARCO/BP Agreement") contained a virtually identical indemnity provisions. R2:409. In the ARCO/BP Agreement, BP agreed to indemnify ARCO, as follows:

**\*5** BP shall indemnify, defend and hold harmless ARCO, APL and SPL against all claims, actions, demands, losses or liabilities arising from the ownership or the operation of the Assets or arising under or relating to any lease, contract, license or other agreement assigned to and assumed by BP or a subsidiary of BP and accruing from and after closing ....

(R2:409.) ARCO also agreed to indemnify BP for claims that accrued before the BP/ARCO closing. Ex. A to Document 56 at page 15; RE Tab 6.

### B. Course of proceedings and disposition in the court below.

On June 24, 1996, twenty-three years after acquiring the Refinery from BP, Fina sued BP for causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Resource Conservation Recovery Act ("RCRA"), the Texas Solid Waste Disposal Act ("TSWDA"), and the Texas Water Code ("TWC"), among other things. (R1:1-19.) Fina alleged that in 1990, some seventeen years after it purchased the Refinery from BP, Fina conducted an assessment to determine the status of the Refinery.[FN2] (R1:4-5.) According to Fina, this investigation revealed certain areas where hazardous wastes were generated, treated, stored, or disposed of at the Refinery. As a result, Fina sought through its lawsuit to recover from BP certain of Fina's alleged past response costs and possible future response costs. (R1:5.)

> FN2. Although not relevant to the issues in this appeal, the record contains substantial evidence demonstrating that Fina had engaged in a variety of environmental investigation activities prior to 1990

**\*6** Despite Fina's purported lack of knowledge of the alleged contamination at the Refinery, the trial court found, and the record is replete with, evidence of its knowledge of the contamination. *See Fina, Inc. v. ARCO, 16 F. Supp.2d 716, 720 n.7 (E.D. Tex. 1998).* Among other things, after BP sold the Refinery to Fina, several of BP's employees with knowledge of the waste management practices continued to work at the Refinery, as employees of Fina. Exhibit A to Document 80 at p. 14, *ll*. 11-24; p. 115, *ll*. 5-15 (Manuel Dep.); Exhibit B to Document 80 at p. 10, *ll*. 12-25 (Madaffri Dep.). Similarly, Fina states in its brief that "BP disposed of the Refinery's sludges by spreading them over plowed ground and mixing them with the soil." (Appellants' Br. at 6.) This land farm that was used to dispose of the refinery sludges was an area known as Solid Waste Management Unit No. 1 and was in use at the time Fina purchased the Refinery from BP. In fact, Fina continued to use Solid Waste Management Unit No. 1 for hydrocarbon sludge treatment/disposal for some five years after purchasing the Refinery from BP. Exhibit A to Document 80 at p. 31, *ll*. 20 - p. 32, *l*. 1; p. 33, *ll*. 2-24 (Manuel Dep.).

Fina filed this suit despite its knowledge of and participation in the waste disposal practices at the Refinery and notwithstanding its written agreement to indemnify BP for all liabilities which accrued after closing, including the claims it has asserted against BP and ARCO in this case. Accordingly, BP filed its motion for **\*7** summary judgment seeking to enforce Fina's contractual indemnity obligation. (R2:386.) ARCO subsequently filed a motion for summary judgment seeking the same relief pursuant to the ARCO/BP Agreement. (R2:408.)

On July 30, 1998, the trial court granted both BP and ARCO's motions for summary judgment and held that the unambiguous language of the BP/Fina Agreement requires Fina to indemnify BP for the claims and causes of action asserted by Fina against BP and ARCO. (R4:977-78; RE Tab 4.) Specifically, the trial court ruled that:
· [t]he indemnity agreements are valid, and limit liability of the BP defendants to those actions which accrued

prior to the closing of sale in 1973. BP agreed to indemnify its predecessor in interest, ARCO; therefore, the indemnity becomes a circuitous obligation and passes through from Fina to BP and finally to ARCO.

16 F. Supp.2d at 726.

· Plaintiff's cause of action did not accrue until at least the passage of CERCLA. Even though the parties did not contemplate CERCLA in 1973, the shifting of liabilities through the indemnity agreement is valid and enforceable, whether under Delaware or Texas law, even in the environmental clean-up context of CERCLA actions.

*Id.* In short, the trial court determined that Fina was obligated to abide by the contract it had signed with BP twenty-three years earlier. This appeal followed.

## *8 SUMMARY OF THE ARGUMENT

The district court correctly determined that Fina must indemnify BP for the claims Fina asserted against BP and ARCO regardless of the applicable law. Despite the Delaware choice of law provision in the BP/Fina Agreement, Fina argued in the trial court that Texas law applied. Here, however, Fina argues that Delaware law applies. As the district court concluded, the result is the same under either state's law: Fina must abide by the terms of its Agreement and indemnify BP for the claims Fina asserted in this case.

Under certain circumstances, which do not exist in this case, Delaware law applies the "clear and unequivocal" rule in construing indemnity provisions. Texas utilizes the "express negligence/strict liability" rule under similar circumstances. As the district court found, however, these rules apply when the indemnitee seeks to be indemnified for conduct giving rise to liability in advance of the conduct. Case law is clear; it is the timing of the conduct, not the timing of liability for the conduct, that determines whether these rules apply. Fina does not dispute that the conduct giving rise to BP and ARCO's alleged liability occurred prior to Fina's agreement to indemnify BP. Consequently, neither the "clear and unequivocal" rule nor the "express negligence/strict liability" test apply in this case to relieve Fina of its agreement to indemnify BP.

*9 Although Fina posits that a number of cases have applied these rules where the conduct pre-dated the indemnification agreement, none of the cases cited by Fina apply these rules in circumstances like those presented here or in the fashion proposed by Fina. For example, the Texas Supreme Court case, *Dorchester Gas Corp. v. American Petrofina, Inc.*, which has been overruled, turned on the interpretation of a warranty provision that was at odds with the indemnity language in the contract. The Northern District of Texas case cited involved a release provision which, by its express terms, applied only to future conduct. And the Third Circuit Court of Appeals decision upon which Fina relies applied a different rule, under the law of a different state, and found the indemnity language before that court to be ambiguous without the need to consider the timing of the conduct.

Fina also argues that because the statutory claims under which it sued impose retroactive liability, Fina's claims somehow accrued prior to enactment of the statutes and thus fall outside the scope of Fina's indemnity obligation. Taken to its logical conclusion, Fina's argument is that its claims accrued when ARCO owned the Refinery in the 1920's and before ARCO even considered selling the Refinery to BP. Fina's position is not only contrary to the district court's opinion, but also to the holdings of a number of Texas courts. Moreover, the Ninth Circuit Court of Appeals expressly held that a CERCLA claim may accrue *after* CERCLA's enactment based upon pre- *10 enactment conduct. The only case cited by Fina to support its interpretation of the operative term, "accrue," has been overruled on this point by the Seventh Circuit Court of Appeals.

Finally, Fina's indemnity obligation is not ambiguous and it is not contrary to public policy. Many federal and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

state courts have found similar indemnity provisions to be unambiguous, valid, and enforceable. Both federal and Texas public policy support enforcement of the indemnity provision, and both United States and Texas environmental statutes expressly permit indemnity agreements between private parties. The district court therefore was correct in holding that Fina must comply with its agreement to indemnify BP for the claims Fina asserted in this case. The district court also correctly concluded that the parties' indemnity agreements create a circuitous indemnity obligation mandating dismissal of Fina's claims.

ARGUMENT

**I. Standard of Review**.

A district court's grant of summary judgment is reviewed *de novo. Perez v. Lockheed Corp. (In re Air Disaster),* 81 F.3d 570, 573 (5th Cir. 1996). Summary judgment is appropriate when the evidence reflects no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c).

**\*11** When the material facts underlying a contract interpretation controversy are undisputed, the issue of whether a party has complied with the contract terms is a question of law for the Court. *See, e.g., Milner Hotels, Inc. v. Norfolk & W. Ry.,* 822 F. Supp. 341, 345 (S.D.W. Va. 1993) (citing 17A AM. JUR.2D CONTRACTS, § 608 (1991)), *aff'd,* 19 F.3d 1429 (4th Cir. 1994).[FN3]

> FN3. *See also Callaway v. Overholt,* 796 S.W.2d 828, 831 (Tex. App.- Austin 1990, writ denied) (citing *Crane v. Colonial Holding Corp.,* 57 S.W.2d 316, 319 (Tex. Civ. App.-Amarillo 1933, no writ)); *cf. Li-on Oil Co. v. Tosco Corp.,* 90 F.3d 268, 270-71 (8th Cir. 1996) (affirming trial court's judgment on the pleadings that a broad, unambiguous indemnity provision in a contract for the sale of a refinery absolved the seller of CERCLA liability).

**II. Regardless of which law applies, Fina cannot escape its agreement to indemnify BP**.

In Appellants' brief, Fina argues that Delaware law applies to the interpretation of the BP/Fina Agreement and that application of Delaware's "clear and unequivocal" test precludes the enforcement of Fina's agreement to indemnify BP. This position is contrary to Fina's position in the trial court, where Fina argued that Texas law and Texas' "express negligence/strict liability" rule govern the interpretation of the BP/Fina Agreement. (R2:437-42.) Fina made this argument in the trial court despite the Delaware choice of law provision in the BP/Fina Agreement, but apparently now deciding that Delaware law is more favorable, Fina argues on appeal that Texas law applies only in the alternative. However, as the trial court found, and as BP has **\*12** consistently argued in this case, Fina must abide by its agreement regardless of the applicable law.

Under both Delaware and Texas law, when one undertakes to indemnify another for the consequences of past conduct, as distinguished from future conduct, the indemnitor (Fina, in this instance) undertakes that obligation with knowledge of the risk or potential risk involved. Accordingly, neither of the judicially-created doctrines ("clear and unequivocal" nor "express negligence/strict liability") apply in those situations.

In this case, Fina does not dispute that the conduct which forms the basis of its claims occurred prior to closing. (Fina's Response at p. 20.) Thus, BP does not seek indemnity for post-closing conduct; rather, BP seeks indemnity for reasonable, lawful conduct occurring prior to the closing. Under either Delaware or Texas law, therefore, Fina may not escape its contractual obligation to indemnify and hold BP harmless.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*13 A. Delaware's "clear and unequivocal" rule does not apply to allow Fina to escape its contractual duties**.

**1. The "clear and unequivocal" rule does not apply when the indemnity provision pertains to past rather than future conduct**.

First, the district court was correct in finding that the clear and unequivocal test is inapplicable here because Delaware courts would limit the test to future but not past conduct. Consequently, the clear and unequivocal rule is inapplicable in this case.

The only Delaware case which Fina cites to the contrary is *Sweetman v. Strescon Indus., Inc.*, 389 A.2d 1319, 1321 (Del.Super.Ct. 1978), which is distinguishable from the instant case. In *Sweetman*, the indemnity provision was part of a contract with an effective date **prior** to the actual date of contract execution. The negligent acts, however, occurred after the effective date of the contract but before the date of contract execution. The *Sweetman* court held that the effective date of the contract was a fact issue and arguably preceded the negligent acts, thus creating an indemnity for "future" - *i.e.*, post-effective date, conduct.

When parties agree to a contract effective date, the agreement is construed as having been entered into on that date, regardless of the actual date of contract execution. *Id.* at 1322; *see also Gulf Oil Corp. v. Spence & Howe Constr. Co.*, 356 S.W.2d 382, 386 (Tex. Civ. App. - Houston 1962), *aff'd*, 365 S.W. 361 (Tex. 1963). **\*14** Consequently, even if the contract in *Sweetman* had been found to be executed after the negligent acts occurred, the effective date of the agreement resulted in the indemnification provision being applicable to future - not past - acts of negligence. Thus, in *Sweetman* the court was not, as Fina suggests, applying the test to past acts. Moreover, *Sweetman* is not truly a case involving application of the "clear and unequivocal" rule, because the contract did not provide indemnification for the purported indemnitee's negligence, but rather for the proposed indemnitor's negligence. 389 A.2d at 1321. Further, the *Sweetman* contract language was also ambiguous regarding possible indemnification of the indemnitee for its own negligence, and no such ambiguity exists in the BP/ Fina indemnity.

To buttress its argument that application of Delaware's "clear and unequivocal" rule applies to past but not to future acts, Fina relies heavily on a Third Circuit Court of Appeals decision applying Alabama law, *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206 (3d Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995). Contrary to the statement made in Fina's brief, however, the *Beazer* court did not apply the "clear and unequivocal" test to acts that occurred before the indemnification agreement was signed. Rather, the court determined that Alabama requires a "*plain and unambiguous* expression of intent to cover the cost of the liability in question," but that the indemnity provision at issue there was ambiguous and subject to more than one reasonable **\*15** interpretation. *Id.* at 216-17. Inasmuch as the court determined that the indemnity provision was ambiguous, it never considered the issue of whether the acts giving rise to liability occurred before or after execution of the agreement. Simply stated, *Beazer* in no way supports Fina's position.

A look at Delaware law in the release context provides an appropriate guide for considering how Delaware courts would evaluate the instant situation. Delaware law is similar to Texas law concerning releases and indemnities for past conduct. In both states a post-occurrence release need not specifically identify negligence as a released claim in order to be effective. *Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985-86 (Del. 1981). This temporal restraint in the release context cannot be distinguished from the instant case.[FN4] Here, the release is a post-occurrence release. *Cf., e.g., Unocal Corp. v. Dickinson Resources, Inc.*, 889 S.W.2d 604, 609 n.5 (Tex.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

App.-Houston [14th Dist.] 1994, writ denied) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507 (Tex. 1993), for the proposition that the "express negligence doctrine applies to those releases where a party, *in advance*, is relieved of liability for damages from its own negligence arising out of a transaction" (emphasis added)). The **\*16** BP/Fina Agreement contains a release and seeks only to release BP for conduct in the past, not in advance. Therefore, because the indemnity and hold harmless language of the BP/Fina Agreement requires Fina to indemnify BP for past, but not future conduct, Delaware's "clear and unequivocal" rule does not apply.

> FN4. Fina is wrong when it says that this case does not involve a release, because the BP/Fina Agreement includes both indemnity ("indemnification") and release ("hold harmless") language. However, the BP/Fina Agreement does not seek to relieve BP from liability for its conduct "in advance" of such conduct.

### 2. Delaware's "clear and unequivocal" rule does not apply to CERCLA and strict liability claims.

Fina's attempt to extend the "clear and unequivocal" rule to CERCLA and strict liability claims is likewise unsupported in Delaware law.[FN5] In fact, after noting that CERCLA liability is strict liability and not based upon negligence, the court in *Purolator Products v. Allied-Signal, Inc.*, 772 F. Supp. 124 (W.D.N.Y. 1991), found that the following indemnity language would be valid under Delaware law:

> FN5. The trial court held that the temporal restraint on the "clear and unequivocal" rule precludes Fina's attempt to avoid its agreement to indemnify BP, "*even if* the ... rule reaches the strict liability context." 16 F. Supp.2d at 724 (emphasis added).

Facet hereby assumes and agrees to satisfy all liabilities and obligations of Bendix, secured or unsecured (whether accrued, absolute, contingent or otherwise) relating to or arising out of the Assets (which are transferred hereby subject to such liabilities and obligations).

*Id.* at 131 n.3. Moreover, in *Scott Fetzer Co. v. Douglas Components Corp.*, 1994 WL 148282, C.A.No. 11,327 (Del. Ch. April 12, 1994), the Delaware Chancery Court held the following language to be sufficient to indemnify an indemnitee for CERCLA liability:
**\*17** Douglas shall assume, pay and perform, and shall defend, indemnify and hold harmless Scott Fetzer and its permitted successors from and against, the following liabilities and obligations of Scott Fetzer (collectively, the "Assumed Liabilities") and any claims asserted, actions, damages, losses, costs and expenses (including, but not limited to, reasonable attorneys' fees) which may arise therefrom: (g) all other liabilities and obligations of every kind of Scott Fetzer incurred by Scott Fetzer or arising by reason of its ownership or its conduct of the Business ....

*Id.* at \*10 (applying Ohio law as required by the contract); *see also Harley-Davidson v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994), *cert. denied*, 115 S.Ct. 1401 (1995) (upholding the validity of an indemnity provision in the CERCLA context, and noting that proof of CERCLA liability does not require proof even of negligence, let alone of wrong doing). Clearly, Delaware courts accept and enforce indemnity provisions in the context of environmental law, regardless of whether there is a specific reference to "strict liability" or to CERCLA or other environmental laws. The district court properly applied Delaware law to Fina's indemnity obligation.

### 3. The BP/Fina indemnity agreement is enforceable under Delaware law.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fina nevertheless argues that Delaware courts would not enforce the BP/Fina indemnity because of their purpor-ted reluctance to enforce indemnity agreements. However, the Delaware court in *Rock v. Delaware Elec. Coop., Inc.*, 328 A.2d 449, 455 (Del. Super. Ct. 1974), held that where it is not improbable that a party would undertake to indemnify the indemnitee against his own negligence, Delaware courts **\*18** need not follow the general rule that an indemnity agreement be strictly construed against the indemnitee.[FN6] The situation here is precisely such an instance. As the trial court in the instant case stated:

> FN6. CERCLA was not enacted until 1980 and the express negligence test was not adopted in Texas until 1987. Consequently, it is not surprising that neither negligence nor CERCLA liability is expressly mentioned in the indemnification and hold harmless provision of the BP/Fina Agreement. The absence of such language cannot be construed as evidence that these liabilities were not intended to be covered.

In this case, the indemnity provisions did not purport to apply to future acts, but divided liability between the parties as of the date of closing-the defendants to be responsible for liability accruing before closing and plaintiff being responsible for that which accrued after closing. The parties clearly established a "bright line" for the transfer of all rights, duties and obligations, including liabilities.

16 F. Supp.2d at 722.

The probability that the parties would seek to indemnify the indemnitee, BP, against its own negligence is fur-ther supported by the sophistication of the parties. As the trial court further stated:
The indemnity agreements were provisions of sales agreements, which were carefully drafted by sophisticated businessmen, international oil companies, and corporate attorneys. The parties were familiar with the custom and practices of the industry and bargained for and agreed to the terms of the indemnity provisions. Experience of the parties is a factor to be considered in determining whether exculpatory provisions should be enforced .... In this context, the intent of the parties is clear, and application of the express negligence and express strict liab-ility doctrines would serve to invalidate the intent of the parties.

**\*19** *Id.* (citation omitted).

The status of the parties here is similar to those in *Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252 (Tex. App.-Corpus Christi 1993, writ denied), where the court observed:
Valero and Kellogg are sophisticated entities, replete with learned counsel and a familiarity with the oil refining industry. They negotiated their relationship over the course of almost three years, with Kellogg submitting sev-eral proposals for Valero's review .... Valero, having a bargaining power equal to Kellogg's, agreed to the ex-culpatory clause in this contract. Valero possessed the resources necessary to ascertain and understand the rights it held on the date of the signing of the contract, and those it would hold in the future. Nevertheless, Valero, of its own accord, negotiated those rights away.
The waiver and indemnity provision absolving Kellogg of all liability sounding in products liability and gross negligence does not offend public policy.

*Id.* at 257-58. Accordingly, Fina's attempts to absolve itself from its contractual liability through application of Delaware's "clear and unequivocal" test must be rejected.

**\*20 B. The Texas "express negligence/strict liability" test does not apply because the indemnification is for past, not future, conduct.**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

### 1. Numerous Texas cases recognize the past/future conduct distinction.

The Supreme Court of Texas has held that the "express negligence/strict liability" doctrine applies to a party's attempt to absolve itself from liability for *future conduct*, not past conduct. Fina argues, contrary to the plain language of a number of Texas Supreme Court decisions, that the doctrine applies when a party attempts to absolve itself from liability, not in advance of the conduct giving rise to liability, but in advance of the liability itself, regardless of the timing of the conduct. However, in *Memorial Med. Ctr. v. Keszler*, 943 S.W.2d 433 (Tex. 1997), the Texas Supreme Court recognized the obvious distinction between pre-and post-injury (i.e., pre-and post-conduct) agreements, explaining its ruling as follows:

The remaining question is whether claims for gross negligence can ever be released. The court of appeals held that such a release is against public policy. However, the court of appeals failed to distinguish a *pre-accident* waiver of liability from a *post-injury* release made in settlement of claims .... **We have never held post-injury releases of gross negligence claims invalid**.

*Id.* at 435 (citations omitted). Thus, in Texas, even gross negligence claims may be released *post-injury*, without so much as a reference to negligence.

**\*21** Similarly, in *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997), the court stated:

In *Dresser*, the contract provision at issue released Dresser from all liability claims caused by its own **future negligence**. We held that such clauses must meet certain fair notice requirements. First, a party's intent to be released or indemnified must be clear and unambiguous. Second, the clause must be "conspicuous" as defined under the Uniform Commercial Code.

However, our holding in *Dresser is explicitly limited to releases and indemnity clauses in which one party exculpates itself from its own* **future negligence**.

*Id.* at 386-87 (emphasis added; citations omitted). The *Green* opinion does not in any fashion suggest that the doctrine applies when a party attempts to exculpate itself from its own potential future liability for past conduct. [FN7]

> FN7. Even assuming, arguendo, that a temporal limitation applies to future liabilities, one need only look at the Fina indemnity to see that it clearly and expressly covers future liabilities - all liabilities which accrue after closing.

Again, in *Dresser*, the court noted that:

[i]ndemnity and release agreements are utilized in widely different contexts. For example, a settlement and release agreement is often utilized by parties settling a dispute *after the disputed transaction or occurrence has taken place*. Today's opinion applies the fair notice requirements to indemnity agreements and releases only when such exculpatory agreements are utilized to relieve a party of liability for its own negligence in advance.

853 S.W.2d at 507 n.1 (emphasis added).

**\*22** Following *Dresser*, the court in *Lexington Ins. Co. v. W.M. Kellogg Co.*, 976 S.W.2d 807 (Tex. App.-Houston [1st Dist.] 1998, pet. denied), specifically held that the "express negligence/strict liability" rule was inapplicable to the release in dispute because the *conduct* giving rise to liability occurred prior to execution of the release:

[T]he Agreement releasing Kellogg from liability ... was drafted and signed *after* the acts which could give rise to liability were completed .... This case involves only claims for alleged negligence committed before the re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

lease was signed.

*Id.* at 809 (emphasis in original). Accordingly, the "fair notice doctrine" under *Dresser* does not apply. As previously noted, the BP/Fina Agreement includes indemnity and release ("hold harmless") language, and it does not seek to relieve BP from liability for its conduct "in advance" of such conduct; *Dresser* and its progeny apply to the BP/Fina Agreement. *Cf.* 853 S.W.2d at 507-08 & n.1.

**2. Fina's cases purportedly supporting inapplicability of the past/future conduct distinction are inapposite**
.

The overwhelming weight of authority and the district court's decision below notwithstanding, Fina also argues that the "express negligence/strict liability" test is not limited to future acts. Fina's reliance on *Dorchester Gas Co. v. American Petrofina, Inc.*, 710 S.W.2d 541 (Tex. 1986), a case that was overruled by ***23**Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987), is misplaced.[FN8] Not only does Fina's argument ignore the more than 12 years of developing Texas indemnity law, Fina also ignores the fact that *Dorchester* involved several factors that do not exist in the current situation.

> FN8. In the trial court, Fina apparently considered *Dorchester* to be either inapplicable or unpersuasive, because Fina never cited *Dorchester* below, despite Fina and its counsel here having been intimately involved in both sides of that case. Fina's counsel here, Locke Purnell, represented Dorchester in that case.

*Dorchester* involved Fina's sale of a refinery to Dorchester Gas. As part of the sales agreement, Dorchester Gas provided Fina with an indemnity virtually identical to the indemnity from Fina to BP in this case. In addition, though, the sales agreement included an express warranty that the refinery and equipment would be "in good, sound condition, operation and repair" at the time of closing. Approximately nine months after Dorchester Gas purchased the refinery, a Dorchester Gas employee was injured while working on a steam pump. The injured worker sued Fina, alleging five causes of action generally based on a claim that the steam pump was a defective product at the time Fina sold the refinery. Fina settled the claim, then sought indemnity for the settlement from Dorchester Gas. 710 S.W.2d at 542.

In evaluating the situation, both the trial court and the Texas Supreme Court were troubled by the obvious inconsistency between Fina's indemnity interpretation ***24** (*i.e.*, that Fina should be indemnified for injuries resulting from Fina's sale of a defective product) and Fina's express (and implied) warranty regarding the equipment at the refinery. This inconsistency and ambiguity was central to each court's determination that Fina should recover nothing.[FN9] No such ambiguity exists in this case.

> FN9. Of course, given the fact that contractual interpretation requires determining the intent of the parties, a court faced with an ambiguity such as this would likely reach the same conclusion even in the absence of the express negligence/strict liability doctrine.

Another complicating factor in *Dorchester* - and another factor which does not exist here - was the existence of a worker's compensation liability bar, established under a Texas state statute. Under the statute, an employer (i.e., Dorchester Gas) could not be held liable to a third person (i.e., Fina) who settled a personal injury claim with the employer's employee, unless there was "a written agreement expressly assuming such liability, executed by the [employer] prior to such injury or death." 710 S.W.2d at 542-43 (emphasis added). In light of this statutory directive that there be an express assumption of liability, the inconsistency referenced above could lead to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

no other conclusion.[FN10]

> FN10. Fina complains that the outcome of the instant case in the trial court is somehow unfair, because Fina is on the losing side, regardless of which side of the indemnity it argues. In reality, however, fairness requires Fina to abide by the terms of the agreements it signs.

In contrast, there are no inconsistencies within the BP/Fina Agreement. Fina is responsible for liabilities which accrue from and after closing; BP is responsible for **25** liabilities which accrue prior to closing. Moreover, the language in the BP/Fina indemnity provision contains language that has been held sufficient to cover CERCLA and related environmental liabilities by a number of courts, including this Court. In *Joslyn Mfg. Co. v. Koppers Co.*, 40 F.3d 750, 751 (5th Cir. 1994), for example, this Court found that a pre-CERCLA lease agreement broad enough to encompass CERCLA liability in a clause that indemnified a lessee "against any and all liability ... caused by or resulting from any condition of or defect in the Premises or any operation by any person whomsoever of any locomotive or car." *Id.* In support of this finding, the Court noted that CERCLA expressly permits indemnity agreements, that CERCLA makes no distinction between pre-CERCLA and post-CERCLA agreements, and that courts have consistently held that indemnity agreements drafted prior to the enactment of CERCLA in 1980 can meet this requirement without explicitly mentioning CERCLA liability. *Id.* at 754. The Court determined that all that is required in the contract is language evidencing a clear intent to transfer CERCLA and other environmental liabilities through broad, all encompassing language, or through specific references to environmental or pollution liability. *Id.*

As in *Joslyn*, where the contracts were executed in 1946 and 1949, the contracts in this case were executed prior to CERCLA enactment. The test for determining whether the contract encompasses CERCLA liability is not whether the parties **26** specifically referred to CERCLA in the agreement, but rather, whether the text of the agreement conveys an intention of the parties to allocate CERCLA-type environmental liability. *Id.; Armotek Indus., Inc. v. Freedman*, 790 F. Supp. 383, 391 (D. Conn. 1992); *see also Kerr-McGee Chem. Co. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th Cir. 1993).

Similarly, a number of courts have upheld agreements indemnifying sellers from liability arising from the use of their assets prior to sale. In *Harley-Davidson*, the buyer of a plant agreed to indemnify the seller against all liabilities relating to the division of the seller that owned the facility. The land on which the plant was located later was found to be contaminated as a result of pre-closing activities of the seller. The *Harley-Davidson* court held that the following language was broad enough to indemnify the seller from its own CERCLA liability:

[Harley-Davidson] shall ... indemnify AMF INCORPORATED against all debts, liabilities, and obligations, without any limitation, relating to AMF INCORPORATED's AMF York Division, its operations and products, whether known or unknown, ... and whether existing on the date of this agreement or coming into existence hereafter ....

41 F.3d at 344. Similarly, in *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993), the Second Circuit held that "all liabilities, obligations and indebtedness of Olin related to [its aluminum business] ... as they exist on the Closing **27** Date or arise thereafter" was sufficient to indemnify the indemnitee for its CERCLA liability. In the instant case, there is clearly an intent to allocate all liabilities accruing after the date of closing, which includes all CERCLA and other statutory liabilities raised by Fina.

Fina also mistakenly relies upon *Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 1997 WL 457510 (N.D. Tex. Aug. 7, 1997). *Southern Pacific* is inapposite because the relevant release language applied

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

only to prospective conduct and thus was subject to the express negligence/strict liability rule. The relevant language came from a lease which:

contained a covenant that [Lessor] would maintain the premises "in a clean, safe and presentable condition ...." The lease further provided that [Lessee] agreed to "release and indemnify [Lessor] from all liability, cost and expense arising from the breach by [Lessee] of any of the provisions of this lease."

*Id.* at *6. The release contained in the lease therefore applied by its express terms only to breaches of the lease - which necessarily could occur only *after* execution of the lease. In other words, the release purported to release and indemnify Lessor in advance **28** for conduct (*i.e.*, breaches of the lease) occurring thereafter.[FN11] Consequently, the court held that the express negligence/strict liability doctrine applied.

> FN11. The facts recited in the case also indicate that some or all of the acts for which the indemnitee/lessor sought indemnification occurred after execution of the lease, and the express negligence/strict liability rule would properly be applied for this reason as well. 1997 WL 457510 at *1-2, 6. Moreover, in the context of the purported indemnitor's motion for summary judgment as to CERCLA liability, the timing of the conduct precluded use of the indemnity contract as a complete defense. In granting the purported indemnitor's summary judgment motion, the court expressly left allocation of responsibility for clean-up costs for later determination. *Id.* at *9.

As the trial court noted in this case, however, application of the express negligence and express strict liability rules would frustrate the clear intention of the parties:

The parties clearly established a "bright line" for the transfer of all rights, duties and obligations, including liabilities .... In this context, the intent of the parties is clear, and application of the express negligence and express strict liability doctrines would serve to invalidate the intent of the parties.

16 F. Supp.2d at 722 (citation omitted). Fina's attempt to avoid the consequences of its own agreement thus is similar to the situation confronted by the court in *Lion Oil*:

We note that this is not a case in which an unsophisticated party hastily entered into a contract. It is clear that [the purchaser] was aware that the purchase of an oil refinery involved a risk of significant potential environmental liability, as exhibited in the detailed provisions of the Agreement. As the district court recognized, "The fact that hindsight may have proven the Agreement to be a bad business decision for [the purchaser] does not negate its validity."

**29** 90 F.3d at 270-71. Fina therefore cannot avoid its agreement to indemnify BP through application of the express negligence/strict liability rule, and the judgment of the trial court should be affirmed.

### C. CERCLA expressly permits indemnity agreements and arguably preempts Delaware and/or Texas law to the extent that the indemnity would not be enforced under state law.

Fina's attempts to rely upon state law or state policy to avoid its contractual obligation to indemnify BP also are inapplicable, because in CERCLA the United States Congress expressly authorized such indemnity provisions. Section 107(e)(1) of CERCLA arguably preempts any state law because it specifically provides that indemnity and insurance agreements can be effective in covering CERCLA liabilities.[FN12] It provides:

> FN12. But see *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206 (3d Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995).

No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. *Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.*

**\*30** 42 U.S.C. § 9607(e)(1)(emphasis supplied). This statute demonstrates a Congressional policy favoring such agreements, as the Sixth Circuit Court of Appeals recognized in *AM Int'l, Inc. v. International Forging Equip. Corp.*, 982 F.2d 989 (6th Cir. 1993):

[P]rivate risk allocations substantially assist in facilitating real estate transactions. Risk shifting provides a mechanism for the parties to minimize exposure to the risk of third-party CERCLA claims. While also protecting against third-party claims, risk shielding primarily represents a means to protect against the risk of claims by the other party to the transaction. These techniques provide flexibility in the negotiating process and facilitate the parties' ability to close real estate transactions successfully. Because of these benefits, *private risk allocations may further CERCLA's ultimate goal of cleaning up pollution caused by hazardous substances.*

*Id.* at 993 (quoting Thaddeus Bereday, Note, *Contractual Transfers of Liability Under CERCLA Section 107(e)(1): For Enforcement of Private Risk Allocations in Real Property Transactions,* 43 CASE W. RES.L.REV. 161, 212 (1992)* (emphasis added)). Accordingly, federal courts have consistently held that indemnity clauses covering CERCLA liability among private parties are enforceable and not contrary to CERCLA or public policy.[FN13] A prohibition of private risk allocations "would effectively burden all contractual exchanges involving property that may fall under CERCLA's purview." **\*31** *Niecko v. Emro Mktg. Co.*, 769 F. Supp. 973, 989 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1296 (6th Cir. 1992).

> FN13. *See, e.g., Joslyn Manufacturing*, 40 F.3d at 754; *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995); *Harley-Davidson*, 41 F.3d at 343; *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3d Cir. 1994); *Kerr-McGee*, 14 F.3d at 327; *John Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993); *Consolidated Aluminum*, 5 F.3d at 14; *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993); *AM International*, 982 F.2d at 994; *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 102 (1st Cir. 1991); *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir. 1986).

**D. If the result is different under Texas, as opposed to Delaware law, Texas has no fundamental policy mandating application of its "express negligence/strict liability" rule.**

Fina contends that if Delaware law would enforce the indemnification, but Texas law would not, then Texas law must be applied because the "express negligence/strict liability" rule is a fundamental Texas policy.[FN14] (Appellants' Br. at 37.) Yet the "express negligence/strict liability" rule is a rule of contract construction. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). As this Court has held, contract construction issues do not constitute "fundamental policy" in Texas. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 (5th Cir. 1993) ("Exxon does not seriously contend that ... Alaska contract law offends the public policy of Texas"); *see also State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290 (Tex. App.- Corpus Christi 1990, writ denied) (finding nothing to suggest that Illinois' rules of contract construction are contrary to a fundamental policy of Texas).

> FN14. The trial court expressly found that application of Delaware law is not contrary to any funda-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

mental Texas policy. 16 F. Supp.2d at 723 n.13. In addition, the Delaware choice of law provision bears a reasonable relation to the transaction, *see id.*, and while the Refinery is located in Texas, the BP/Fina Agreement documented a transaction involving properties and assets in a number of other states as well.

**\*32** This Court also has recognized that the determination of fundamental policy in the indemnity context is principally a function of the state legislature. *See, e.g., Rodriguez v. Olin Corp.*, 780 F.2d 491, 499 (5th Cir. 1986) (noting the Louisiana legislature's enactment of an anti-indemnity statute in the oil and gas arena); *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 127.001, *et seq.* (Vernon 1997 & Supp. 1998) (Texas Oilfield Anti-Indemnity Statute). Contrary to Fina's reading of Texas law, the Texas Legislature has articulated a policy in favor of enforcing indemnity provisions in the environmental clean-up arena. Like CERCLA, the TSWDA expressly recognizes the rights of parties to indemnify one another for the costs related to contamination. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.344 (Vernon 1992 & Supp. 1998) ("A person ... may bring suit ... to recover the reasonable and necessary costs of [cleanup]. This right is in addition to the right to file an action for contribution, *indemnity*, or both ...."); 42 U.S.C. § 9607(e); *see also* TEX. HEALTH & SAFETY CODE ANN. § 361.345 (Vernon 1992 & Supp. 1998) (explaining that § 361.344 does not "change common law" such as rules of indemnification).

In further support of its public policy argument, Fina contends that it would be unfair and unjust to require Fina to clean up its own Refinery simply because Fina agreed in 1973 to indemnify BP for all liabilities accruing after the closing. Although CERCLA was enacted in 1980 after Fina entered into the BP/Fina Agreement, Texas **\*33** adopted the "express negligence/strict liability" rule even later, in 1987. Thus, unthinking application of this rule would clearly not be fair to BP (or ARCO). In short, it is disingenous for Fina to argue that it is unfair for Fina to have to clean up the Refinery because of CERCLA's post-contract enactment while at the same time arguing that Fina should benefit from subsequently-adopted judicial rule of contract construction that is clearly contrary to the parties' intent.

Importantly, it is not BP that is trying to avoid its legal obligations; BP is trying to enforce its legal and contractual rights. Fina, on the other hand, is unilaterally trying to change the terms of its agreement with BP. Fundamental policy in Texas does not favor Fina's efforts. The applicable and long-recognized public policy in Texas has been articulated as follows:

There is perhaps, no higher public policy of the state than to uphold contracts validly entered into and legally permissible in subject matter ..... "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore you have this paramount public policy to consider: That you are not lightly to interfere with this freedom of contract."

**\*34** *Mid-Continent Supply Co. v. Conway*, 240 S.W. 796, 804 (Tex. Civ. App.- Texarkana 1951, writ ref'd n.r.e.) (quoting *Missouri K. & T. Ry. v. Carter*, 95 Tex. 461, 68 S.W. 159, 164 (1902).

### III. The indemnity agreement is clear and unambiguous and requires Fina to indemnify BP because all of Fina's claims accrued after closing.

### A. Fina had no right to assert any claim of statutory or common law origin prior to closing; consequently, any claim Fina might assert could not have accrued prior to closing.

© 2011 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

Pursuant to the BP/Fina Agreement, Fina is obligated to indemnify, defend and hold harmless BP from and against any liabilities *accruing* from and after closing of the Agreement. (R2:404.) Fina cannot validly dispute that any claim Fina has asserted or could assert against BP for property damage or cleanup accrued at or after closing. The reason is simple: Fina could assert no claim against BP for cleanup of the Refinery until it obtained the right to assert a claim, and Fina did not obtain the right to assert any claim against BP until after closing.

First, Fina had no right to assert a claim against BP until after Fina acquired the Refinery at closing.

In this regard, Delaware and Texas law are the same. A party does not have a claim for property damage (or for clean-up of property) until it has acquired its interest *35 in the property.[FN15] A cause of action simply does not accrue until a party has the right to institute a suit to protect his interest. *See, e.g., Liebowitz v. Hicks*, 207 A.2d 371, 372-73 (Del. Ch. 1965); *Ferguson v. Johnston*, 320 S.W.2d 906, 911 (Tex. Civ. App.- Texarkana 1959, writ ref'd n.r.e.); *Hensley v. Conway*, 29 S.W.2d 416, 418-19 (Tex. Civ. App.- Eastland 1930, no writ). As the Texas Supreme Court stated in *Williams v. Pure Oil Co.*, 124 Tex. 341, 78 S.W.2d 929 (Tex. Comm'n App. 1935, Judgm't adopted):

> FN15. Under RCRA and similar statutes, a "concerned citizen" may have a right to compel another person to complete cleanup at a site via a citizen's suit, even if the first person has no interest in the property at issue. *See* 42 U.S.C. § 6972. However, such a right is a statutory creation, and it did not accrue until well after the closing on the BP/Fina Agreement. Consequently, any such claim is a liability for which Fina must indemnify BP.

The right or cause of action does not exist until facts exist which authorize the person asserting the claim to seek relief in a court of competent jurisdiction from the person due to make reparation. It involves both *the existence of the right* and facts sufficient to constitute a cause of action.

*Id.* at 931 (emphasis added); *see also Liebowitz*, 207 A.2d at 372-73. Consequently, any claim Fina has or could assert against BP for property damage or cleanup could not accrue until closing, at the very earliest. Fina is contractually obligated to indemnify, defend and hold harmless BP for any such claim or liability, whether asserted by Fina or any other party.

**        *36 B. CERCLA, RCRA, TSWDA, and TWC were enacted after Fina purchased the property; therefore, any claim Fina might assert under those statutes must have accrued after closing.**

As previously noted, Fina's indemnity obligation under the 1973 BP/Fina Agreement applies to any claim, action, demand, loss or liability which "accrues" from and after the closing of the agreement. (R2:404.) Liability for environmental cleanup exists only pursuant to CERCLA or RCRA, or their state counterparts, such as the TSWDA and the TWC. Without these environmental statutes, a party has no obligation to clean up a site, and as noted in the preceding section, both "the existence of the right and facts sufficient to constitute a cause of action" are prerequisites to accrual of a cause of action. *Williams*, 78 S.W.2d at 931; *see also Liebowitz*, 207 A.2d at 372.

Any claim to clean up the site pursuant to RCRA could not have accrued prior to its enactment as part of the revisions to the federal Solid Waste Disposal Act of 1976, Pub.L.No. 94-580, § 2, 90 Stat. 2796 (1976). Similarly, liability pursuant to CERCLA could not have accrued prior to its enactment in 1980. Pub.L.No. 96-510, Title I, § 101, 94 Stat. 2767(1980). Any liability pursuant to TSWDA and TWC could not have accrued prior to 1989. 71st Leg., ch. 678 § 1; ch. 228 § 8, 1989. Since RCRA, CERCLA, TSWDA, and the applicable TWC statute all

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

were enacted after closing of the agreement between Fina and BP, all of Fina's claims pursuant to those **37** stat-utes accrued after closing.[FN16] *Cf., e.g., Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1052(8th Cir. 1996) (CERCLA liability was not "existing at closing" when CERCLA was not enacted until seven years later.) *Levin Metals Corp. v. Parr-Richard Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir. 1987)(CERCLA cause of action could not accrue until "after CERCLA's enactment").

> FN16. The issue could be looked at in its most basic sense: If Fina knew, before the date of closing, all of the facts that it currently knows about alleged hazardous waste practices, could Fina have brought a claim under CERCLA, RCRA, TSWDA or TWA. Clearly, the answer is "no," because those statutes did not exist.

To determine the "accrual" of a CERCLA cause of action, Fina again argues, as it did in the trial court, that this Court should follow a district court opinion applying Illinois law, *North Shore Gas Co. v. Salomon, Inc.*, 963 F. Supp. 694 (N.D. Ill. 1997), *aff'd in part and rev'd in part*, 152 F.3d 442 (7th Cir. 1998). In *North Shore Gas*, the plaintiff argued that it had not assumed the CERCLA liabilities of a predecessor corporation. Though wholly ir-relevant to the district court's ultimate holding, the court stated, in a footnote, that "the acts" giving rise to the CERCLA claimant's cause of action "had 'accrued' or accumulated, at least in part, by 1941." *Id.* at 701 n.4. [FN17] The Seventh Circuit Court of Appeals, however, rejected the district court's construction **38** of the word "accrue," and as the trial court did in the instant case, cited Black's Law Dictionary and Merriam Webster's Col-legiate Dictionary for the appropriate definition of the term:

> FN17. In the trial court, BP argued that the *North Shore* Gas court's interpretation of the word "accrued" was dicta and simply incorrect. The Seventh Circuit Court of Appeals opinion, published after rendition of the district court's opinion in the instant case, confirmed the validity of BP's argument. 152 F.3d at 652.

As for the use of "accrued to," Black's Law Dictionary states that it means "due and payable; vested ...." Merri-am Webster's defines "accrue" as "to come into existence as a legally enforceable claim."

*North Shore Gas*, 152 F.3d at 652 (citations omitted); *cf. Fina*, 16 F. Supp.2d at 725. The Seventh Circuit Court of Appeals therefore concluded that the district court was incorrect, that CERCLA liability did not exist and had not accrued in 1941. 152 F.3d at 652.

Moreover, Fina's reading of the BP/Fina Agreement is contrary to the holding of the Ninth Circuit Court of Ap-peals in *Levin Metals*. The *Levin Metals* decision is squarely on point because the court specifically held that a CERCLA claim accrues "after CERCLA's enactment, based on pre-enactment conduct." 817 F.2d at 1451. Clearly, BP and ARCO's pre-CERCLA conduct forms the basis of Fina's claims. Equally clearly, and as the *Lev-in* court properly determined, Fina's CERCLA and other statutory claims could not "accrue" prior to enactment of the statutes authorizing such claims. Therefore, as a matter of law Fina is obligated to indemnify, defend and hold harmless BP from and against any such claim or liability, whether asserted by Fina or any other party.

**\*39 C. CERCLA liability did not accrue until after closing because a CERCLA cause of action could not have accrued until Fina first incurred response costs in 1990**.

A CERCLA cause of action may accrue after CERCLA's enactment "based on preenactment conduct." *Levin Metals*, 817 F.2d at 1450. However, a cause of action cannot accrue until all facts exist so that the plaintiff can allege a complete cause of action. *Carpenter v. Boyce*, 81 A.2d 294, 296 (Del. Super. Ct. 1951).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

To establish a prima facie case of liability under CERCLA, a plaintiff must prove: (1) that the site in question is a "facility"; (2) that the defendant is a responsible person under Section 9607(a); (3) that a release or a threatened release of a hazardous substance has occurred; and (4) *that the release or threatened release has caused the plaintiff to incur response costs. Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir. 1989) (emphasis added). Liability may only be established if the plaintiff can prove each of these requisite elements. *Id.* If any element is missing, a suit under CERCLA may not be maintained. Consequently, in *Scott Fetzer*, the court held that a CERCLA cause of action could not accrue until the plaintiff, an alleged indemnitee, had been named a potentially responsible party ("PRP") and the plaintiff had been required to perform certain responsive activities to contaminated site. *Id.* at *12.

Courts have consistently held that before initiating a cause of action under CERCLA, a plaintiff must have incurred some portion of the response costs necessary **40** to clean up the site. *E.g., FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 845 (10th Cir. 1993); *Chaplin v. Exxon Co.*, 1996 WL 13130, 25 ENV'T REP. CAS. (BNA) 2009 (S.D. Tex. 1986). Thus, Fina could not maintain an action under CERCLA until it incurred response costs. In this case, Fina has judicially admitted that it conducted an assessment program to determine the environmental status of the Refinery in 1990 and that Fina only incurred response costs after the investigation.[FN18] (R2:305-06.) Since Fina did not incur response costs until after closing, the costs and liabilities alleged in Fina's Complaint accrued after closing, *i.e.*, after May 10, 1973. Therefore, Fina's claims "accrued" after the closing of the 1973 BP/Fina Agreement and Fina is obligated to indemnify and defend BP for any and all such claims, actions, demands, losses or liabilities as a matter of law.

> FN18. There is some evidence in the record that Fina incurred certain environmental costs prior to 1990, and it is arguable that such costs could be deemed to be "response costs" under CERCLA. However, it is absolutely clear that Fina did not incur such costs until long after the closing of the BP/Fina Agreement.

**D. Fina's claims did not "accrue" prior to its purchase of the refinery**.

Fina's attempts to escape its indemnity and hold harmless obligations by redefining the term "accrue" are likewise unavailing. Fina is left with the erroneous and illogical argument that its claims accrued prior to its execution of the BP/Fina Agreement (and thus, prior to its acquisition of the refinery) because Fina agreed to **41** "indemnify, defend and hold harmless BP ... against all claims ... *accruing from and after closing*." (R2:404.) (emphasis added.) Indeed, Fina's tortured definition of "accrue" contradicts the plain meaning of the term as used in the BP/Fina Agreement. Taken to its logical conclusion, Fina's argument would require this Court to conclude that Fina's claims "accrued" the first time that ARCO disposed of wastes at the Refinery- before BP sold the Refinery to Fina, before ARCO sold the Refinery to BP. Indeed, the claims would have had to accrue before ARCO even contemplated selling it. In other words, Fina argues that Fina's claims accrued when ARCO released materials at ARCO's own Refinery.

As previously noted, the BP/Fina Agreement requires BP to indemnify Fina for claims accruing *prior* to closing. Nothing in BP's argument suggests otherwise or requires Fina to assume responsibility for *all* liabilities regardless of the timing of their accrual. For example, if a third party (*e.g.*, an employee at or a customer of the Refinery) sued Fina based upon a cause of action that accrued prior to closing of the BP/Fina Agreement (*e.g.*, a personal injury occurring before closing or a breach of contract occurring before closing), BP would be required to indemnify Fina. However, the circumstances under which BP's indemnity obligation to Fina would arise simply do not exist in this case. The claims are asserted by Fina in the first instance and could **42** not possibly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

have accrued until Fina closed the BP/Fina Agreement and acquired the Refinery.

### E. Fina's indemnity obligation is not ambiguous.

Fina argues, in the alternative, that the BP/Fina Agreement is ambiguous. Fina then attempts to rely upon irrelevant and inadmissible parol evidence that purports to introduce alternative interpretations of the indemnity obligation embodied in the BP/Fina Agreement. The Texas Supreme Court has held, however, that a court may only consider the parties' interpretation of an agreement where a contract has first been found to be ambiguous. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981). Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial, and parole evidence cannot be used to try to create the ambiguity that would allow the admission of the parole evidence in the first instance.

Moreover, the letter which Fina references in its brief involves a situation where ARCO attempted to have BP defend certain personal injury claims made by a third party against ARCO. (R4:802-14.) Under the facts of those cases, and as expressed in the letter presented by Fina, BP understood that there were genuine issues concerning when those causes of action accrued. BP rightfully understood that "[s]ince the complaints in these two cases allege exposure over a period of years, it appears that some *or all* of the factual matters on which the plaintiff's allegations are based would **\*43** be attributable to periods prior to BP Oil Corporation's ownership." (R3:662.) In such circumstances, the plaintiffs' causes of action could have accrued at the time of injury or at the time the injury became known to the plaintiffs, either or both of which could have occurred prior to BP's ownership of the Refinery. Thus, there was an obvious issue as to the applicability of the indemnity.

BP has never contended that Fina owes it an indemnity obligation for claims accruing during BP's ownership. However, under the agreement between BP and Fina, Fina must indemnify BP for any and all actions that accrue after the sale of the Refinery from BP to Fina. Such is the case in this matter. BP's position is wholly aligned with the clear meaning of the unambiguous BP/Fina Agreement.

### IV. The parties' agreements create "circuitous indemnity obligations" mandating dismissal of Fina's claims.

No material difference exists in the indemnity provisions of the BP/Fina and ARCO/BP Agreements with regard to the issues presented here. Although the ARCO/BP Agreement includes a provision requiring BP to indemnify ARCO from and against the claims Fina has asserted against ARCO, Fina is obligated to indemnify BP from not only the claims Fina has asserted against ARCO, but also from the claims Fina has asserted directly against BP. Both agreements provide for indemnification from claims accruing from and after closing of the respective agreements, and both ARCO **\*44** and BP contend that Fina's claims accrued after closing of the agreements. Consequently, no basis exists for requiring BP to indemnify ARCO from and against any claims asserted by Fina, unless Fina is required to indemnify BP from and against those same claims. The trial court so ruled in this case. 16 F.Supp.2d at 726.

Similarly "circuitous indemnity obligations" have been held to extinguish a plaintiff's cause of action. *See, e.g., Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 989 (5th Cir. 1984) (citing *Phillips Pipe Line Co. v. McKown*, 580 S.W.2d 435, 440 (Tex. Civ. App.-Tyler 1979, writ ref'd n.r.e.); *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779, 785 (Tex. Civ. App.-Amarillo 1952, no writ)).

For example, in *Phillips Pipe Line*, plaintiffs filed suit against Phillips Pipe Line Company, Inc. and its independent contractor, Panhandle Construction Company, Inc., for damages arising out of the construction of a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

pipeline across plaintiffs' land on which Phillips owned an easement. In the pipeline construction contract between Phillips and Panhandle, Panhandle agreed to indemnify Phillips from and against any and all damages resulting from the construction of the pipeline. *Id.* at 438. Plaintiffs settled with Panhandle on the day of trial and agreed in the settlement agreement to take nothing against Phillips. In return, Phillips would be entitled to indemnity from Panhandle. *Id.* at 437, 439-40. The court of appeals held: "As a result, any cause of action which plaintiffs might have had against Phillips was extinguished .... [I]f **\*45** plaintiffs' release of Panhandle did not also have the effect of releasing Phillips, a useless circuity of action would result." The court explained:

[I]f the release executed by plaintiffs is construed to mean that plaintiffs reserved a right to sue and recover judgment against Phillips, then there would be nothing to prevent Phillips from recovering the amount of the judgment over against Panhandle in accordance with the indemnity contract. Thus, Panhandle's release would become meaningless since the release would not be effective as a complete discharge of liability as contemplated by the parties ....

Accordingly, we conclude that the release executed by the plaintiffs embracing an agreement to protect and hold Panhandle harmless constituted a complete exoneration of Phillips and removed any foundation on which plaintiffs could base a claim against Phillips for injury to the land.

*Id.* at 440 (citations omitted); *see also Moore v. Southwestern Elec. Power Co.*, 737 F.2d 496, 501 (5th Cir. 1984) (finding plaintiffs' cause of action extinguished because of circular indemnity pattern), *cert. denied*, 469 U.S. 1211 (1985). This same situation exists in the instant case.

By way of analogy, Fina might have valid claims against ARCO (under CERCLA, RCRA and other post-1973 statutes), just as the *Phillips Pipe Line* plaintiffs may have had valid claims against Phillips. But, just as the *Phillips Pipe Line* plaintiffs agreed to indemnify Panhandle, Fina agreed to indemnify BP from those claims. Since the ARCO/BP Agreement included an indemnification provision from BP to ARCO, the effect of Fina's indemnity obligation to BP is the exoneration of both **\*46** BP and ARCO from those claims. Otherwise, Fina's indemnity obligation to BP is meaningless.

### V. Alternatively, if Fina's indemnity obligation is inapplicable or unenforceable, then any indemnity obligation from BP to ARCO also is inapplicable or unenforceable for the same reason(s).

Fina nevertheless argues for a variety of reasons that it owes BP no indemnity obligation. While BP contends that Fina does owe BP an indemnity and that Fina's claims were properly dismissed, BP's alternative contention is that if for any reason this Court does not find a valid and binding obligation for Fina to indemnify BP from and against the claims asserted by Fina, then the Court must also find that BP owes no such obligation to ARCO. Any valid argument concerning the inapplicability or unenforceability of the indemnity provision in the BP/Fina Agreement, including Fina's alternative allegation that the indemnity provision is ambiguous, mandates an identical result with respect to the ARCO/BP Agreement. Both indemnity agreements clearly apply to claims "accruing from and after closing." BP contends that such language can be given a definite and certain legal meaning. Alternatively, if the Court finds either agreement to be ambiguous, then both agreements must be ambiguous.

CONCLUSION

For the foregoing reasons, BP respectfully requests that this Court affirm the judgment of the trial court, affirm the trial court's granting of summary judgment in **\*47** favor of BP and against Fina, and affirm the trial court's finding that the parties' indemnity agreements are a circuitous obligation passing from Fina to BP and finally to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ARCO, thus mandating dismissal of Fina's claims. BP also requests such other relief to which it may be entitled.

FINA, Inc., (formerly known as American Petrofina, Inc.), Fina Oil And Chemical Company, (formerly known as American Petrofina Company of Texas), Plaintiffs/Counter-Defendants/Appellants, v. ARCO, Defendant/Cross-Claimant/Appellee BP Oil Company and Sohio Pipe Line Company, Defendants/Counter-Claimants/Cross-Defendants/Appellee s.
1999 WL 33621574 (C.A.5 ) (Appellate Brief )

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.