LEXISNEXIS® FILE & SERVE
39957032
E-SERVICE
Sep 21 2011
5:57PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUSIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG DEEPWATER HORIZON in the GULF OF MEXICO, on APRIL 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION:  J |
| | * | JUDGE BARBIER |
| This Document Applies to All Cases | * | MAG. JUDGE SHUSHAN |

**************************************************************

## AMENDED PRETRIAL ORDER NO. 41

## [CASE MANAGEMENT ORDER NO. 3]

In order to continue to organize and manage this complex litigation as efficiently as possible, upon consideration of the briefs filed by certain parties regarding this matter, and after consultations with Liaison Counsel, Coordinating Counsel for the States, and Coordinating Counsel for the Interests of the United States and consideration of the observations provided during those consultations, the Court adopts this Case Management Order No. 3 with respect to the scope and structure of the Trial of Liability, Limitation, Exoneration, and Fault Allocation ( "Trial" ) that is scheduled to commence, as previously ordered in CMO No. 1 and CMO No. 2, on February 27, 2012.

## I.      TRIAL STRUCTURE

The Trial will address all allocation of fault issues that may properly be tried to the Bench without a jury, including the negligence, gross negligence, or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, and non- parties with respect to the issues, including limitation of liability.  The Trial will be conducted in at least three phases.  Each phase will be comprised of the presentation of evidence and consideration of

attendant legal questions pertaining to specific issues that will be the focus of that phase as described below. The focus of the phases of Trial will be as follows:

**Phase One ["Incident" Phase]** of the Trial will address issues arising out of the conduct of various parties, third parties, and non-parties allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22,2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the "Incident"). Phase One will include issues asserted in or relevant to counterclaims, cross-claims, third-party claims, and/or comparative fault defenses as appropriate.

**Phase Two ["Source Control" Phase]** of the Trial will address Source Control and Quantification of Discharge issues. "Source Control" issues shall consist of issues pertaining to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010. "Quantification of Discharge" issues shall consist of issues pertaining to the amount of oil actually released into the Gulf of Mexico as a result of the Incident from the time when these releases began until the Macondo Well was capped on approximately July 15, 2010 and then permanently cemented shut on approximately September 19, 2010. Phase Two will include issues asserted in or relevant to counterclaims, cross-claims, third party claims, and/or comparative fault defenses, as appropriate.

**Phase Three ["Containment" Phase]** of the Trial will address issues pertaining to the efforts by various parties, third parties, and non-parties aimed at containing oil discharged as a result of the Incident by, for example, controlled burning, application of dispersants, use of

booms, skimming, etc. Phase Three of the trial will also address issues pertaining to the migration paths and end locations of oil released as a result of the Incident as carried by wind, currents, and other natural forces and as affected by efforts to contain or direct this migration.

Phase Three will include issues asserted in or relevant to counterclaims, cross-claims, third party claims, and/or comparative fault defenses, as appropriate.

## II. ORDER OF PROCEEDINGS IN THE TRIAL

**The order of trial in Phase One** will be as follows:

**First**, the Claimants, through the Plaintiffs' Steering Committee ("PSC"), the United States (through its Court Appointed Coordinating Counsel and its representatives), and the States (through the Court Appointed Coordinating Counsel for State Interests and his representatives), shall adduce factual and expert evidence in support of those parties' claims against all defendants.

**Second**, Transocean shall present factual and expert evidence on its exoneration, limitation, and liability defenses, as well as its counter- and cross- claims and third party claims against any third party 14(c) defendants.

**Third**, the third-party defendants shall present their factual and expert evidence in support of their defenses to plaintiffs' claims and any other defendants' counter- and cross-claims and third party claims against them, and in support of their counter- and cross-claims and third party claims against other defendants. The Court encourages third-party defendants to confer and reach agreement as to their sequence of presentation, failing which, the Court will enter an order regarding same.

**Fourth**, the PSC, the United States, and the States shall present their rebuttal

evidence.

The Court will enter orders at a later date regarding the sequence of proceedings for Phase Two and Phase Three of the Trial. The record will be held open between Phases of the Trial unless the Court determines it is appropriate to deem the record closed on the issues in a particular Phase because the record has been sufficiently developed to permit final rulings on those issues.

All parties shall present evidence relevant to a particular Phase during that Phase and should not expect they will be permitted to fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase; provided, however, that there may be circumstances in which it is appropriate to present evidence in one phase that is relevant to another phase -- such as, but not limited to, where the evidence is relevant to more than one phase or where efficiency is best served by permitting evidence to be admitted in more than one phase.

## III. FINAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court anticipates that it will direct the parties to submit proposed findings of fact and conclusions of law promptly after the conclusion of each Phase of the Trial and final proposed findings of fact and conclusions of law regarding all evidence and legal issues in the liability portion(s) of the Trial promptly after the conclusion of Phase Three of the Trial.

At the end of each Phase of the Trial and after consideration of the parties' submissions, the Court may decide to issue partial Findings of Fact and Conclusions of Law for that Phase if it deems the record adequately developed.   If the Court does not find it appropriate to enter Findings of Fact and Conclusions of Law with respect to any issues tried until the conclusion of all Trial Phases, the Court may defer issuing its Findings of Fact and Conclusions of Law until the conclusion of all phases of the liability and limitation trial.

## IV.    PRETRIAL PROCEEDINGS

Discovery and other pretrial proceedings for Phase One will continue to be conducted in accordance with the provisions of CMO No. 1 (Rec. Doc. 569), CMO No. 2 (Rec. Doc.1506), and other applicable Pretrial Orders, as the provisions of those Orders may be applied or modified by future orders of the Court and in conferences conducted by the undersigned or by Magistrate Judge Shushan.

After consulting with Plaintiffs' Liaison Counsel, Coordinating Counsel for the State Interests, Coordinating Counsel for the United States, and Defendants' Liaison Counsel, the Court will enter additional Pretrial Orders regarding the scope and schedule for discovery and other pretrial proceedings with respect to Phase Two and Phase Three of the Trial. Subject to further consideration and specification, the Court anticipates that discovery and other pretrial proceedings for Phase Two of the Trial and possibly for Phase Three of the Trial will likely need to be conducted concurrently with pretrial proceedings for and the conduct of Phase One of the Trial, and that discovery and other pretrial proceedings for Phase Three of the Trial will likely need to be conducted concurrently with pretrial proceedings for and the conduct of Phase Two of the trial.

The Trial will stand in recess between Phase One and Phase Two of the Trial and between Phase Two and Phase Three of the Trial. The Court will determine during Phase One of the Trial the length of the recess before commencement of Phase Two of the Trial, and will determine during Phase Two of the Trial the length of the recess before commencement of Phase Three of the Trial. The Court expects that discovery for Phases Two and Three of the Trial will be largely completed in advance of those Phases and therefore expects that the recesses will not be used primarily for discovery for Phases Two and Three.

## V.     SUPPLEMENTATION OF AND AMENDMENTS TO THIS ORDER

The provisions of this Order are provisional and may be supplemented or modified either

sua sponte or on motion by any party as may become necessary.

New Orleans, Louisiana, this 21st day of September, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

**C**

Uniform Laws Annotated Currentness
  Uniform Contribution Among Tortfeasors Act 1955 Revised Act (Refs & Annos)
  ➡ **§ 1. [Right to Contribution].**

(a) Except as otherwise provided in this Act, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.

(c) There is no right of contribution in favor of any tortfeasor who has intentionally [wilfully or wantonly] caused or contributed to the injury or wrongful death.

(d) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

(e) A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.

(f) This Act does not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

(g) This Act shall not apply to breaches of trust or of other fiduciary obligation.

COMMENT

2008 Main Volume

**Subsection (a). Right of Contribution.** This combines the provisions of Sections 1 and 2 of the 1939 Act. The definition of "joint tortfeasors" and the term itself have been eliminated. There are still a few jurisdictions in

which those who act independently and not in concert, as for example two colliding automobile drivers, cannot always be joined as defendants in the same action. In these jurisdictions the tendency is to use "joint tortfeasors" to refer only to those who can be joined. The term is not indispensable to the Act, and the change in meaning might perhaps be confusing in those states.

The language used has been adequate to exclude cases where the person from whom contribution is sought was not liable to the injured person. Thus where the potential contributor is the spouse of the injured person. Baltimore Transit Co. v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 674 (1944). Or the parent of the injured person. Zutter v. O'Connell, 200 Wis. 601, 229 N.W. 74 (1930); Norfolk Southern R. Co. v. Gretakis, 162 Va. 597, 174 S.E. 841 (1934). Or where the injured person assumed the risk of the potential contributor's negligence. Kauth v. Landsverk, 224 Wis. 554, 271 N.W. 841 (1937); Schrofe v. Rural Mutual Cas. Ins. Co., 258 Wis. 128, 45 N.W.2d 76 (1950).

"Wrongful death" was added by the New York Law Revision Commission in its proposed statute, and apparently is considered necessary, as in the Federal Employers' Liability Act, where "injury to person" might perhaps not be construed to cover it.

**Subsection (b). Payment and share.** This provision is supported by several dozen decisions dealing with contribution in surety and other contract cases, and a court would almost certainly reach the result without the provision. It appears desirable to spell it out.

**Subsection (c). Intentional, wilful and wanton.** The substance of this provision is found in a few of the existing statutes, usually in rather vague language. Kentucky and Virginia, for example, provide that there must be no "moral turpitude." The 1939 Act was silent on the matter. The policy here followed is that of the original rule as to contribution, that the court will not aid an intentional wrongdoer in a cause of action which is founded on his own wrong. In cases of concerted battery, for example, there appears to be little reason to shift any part of the liability to another.

Two valid reasons exist for extending the exclusion to wilful and wanton acts causing or contributing to the injury.

In the first place wilful and wanton acts seem naturally to belong in the same class with intentional wrongs and to imply moral turpitude on the part of the wrongdoer. The policy of the section as drafted adopts the law of those states which do not recognize classification of negligence into degrees. It is intended to convey the idea that there is a difference between negligence and wilful or wanton misconduct. (See Srajer v. Schwartzman, 164 Kan. 1, c. 248.)

In the second place, by excluding wilful and wanton actors from the right to contribution, we eliminate most of the arguments urged for a rule allocating the shares of liability on the basis of relative degrees of fault. (See Sec. 2.)

In many states "gross and wanton negligence" in guest statutes is construed to mean wilful and wanton conduct. This is the rule which should be applied in determining the right of contribution under this act.

Brackets have been placed around the words "wilfully or wantonly" so that they may be omitted in those states where by definition of the terms they mean something less than they imply and where by including them the bar of the remedy would be too broad.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

In contribution from a joint tortfeasor guilty of intentional, wilful or wanton conduct the share of liability would be determined under Section 2 as in any other case. Any liability for the whole claim as between tortfeasors or beyond "pro rata share" would depend on the law of indemnity.

**Subsection (d).** This is the same as Section 2(3) of the 1939 Uniform Act. The policy of the Act is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged. Since the settlement must be reasonable it follows that the question of total liability to the injured party may be litigated in the contribution action.

**Subsection (e). Insurers.** This provision is not in the 1939 Act. In the absence of a statute, Minnesota and Wisconsin have subrogated the insurer to the right of contribution. Underwriters at Lloyds v. Smith, 166 Minn. 388, 208 N.W. 13 (1926); Frankfort General Ins. Co. v. Milwaukee Electric Ry. & Light Co., 169 Wis. 533, 173 N.W. 307 (1919). On the other hand some of the statutes have been construed to give only the tortfeasor himself the right to contribution, and not to cover the insurer. See for example, Lumbermen's Mutual Cas. Co. v. United States Fidelity & Guaranty Co., 211 N.C. 13, 188 S.E. 634 (1936).

The argument against subrogation is that the insurer has been paid full consideration for carrying the risk of liability, and contribution is a windfall to him. This ignores the fact that the contribution experience will inevitably be reflected in the insurance rates. The best analogy appears to be that of the workmen's compensation acts, which subrogate the insurer to the claim against third parties.

**Subsection (f). Indemnity.** The first part of this provision is retained from Section 6 of the 1939 Act, which apparently left it uncertain whether there could be contribution in any indemnity situation. There have been reports of one or two cases in which a trial court allowed it under the Act. It seems clear that there should be no contribution. Where a master is vicariously liable for the tort of his servant, the servant has no possible claim to contribution from the master; and the master does not need contribution from the servant and will not seek it, since he is entitled to full indemnity. The master, of course, may recover contribution from any third tortfeasor against whom he has no right of indemnity.

**Subsection (g).** The meaning is clear. It is not intended that the act should extend to liabilities arising out of breaches of fiduciary relationships.

ACTION IN ADOPTING JURISDICTIONS

2008 Main Volume

**Variations from Official Text:**

**ARIZONA**

Section provides:

"A. Except as otherwise provided in this article, if two or more persons become jointly or severally liable in tort

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"B. The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.

"C. There is no right of contribution in favor of any tortfeasor who the trier of fact finds has intentionally, wilfully or wantonly caused or contributed to the injury or wrongful death.

"D. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

"E. A liability insurer, which by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This subsection does not limit or impair any right of subrogation arising from any other relationship.

"F. This section and §§ 12-2502, 12-2503, 12-2504, 12-2508 and 12-2509 do not:

"1. Impair any right of indemnity under existing law. If one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from any obligee for any portion of his indemnity obligation.

"2. Apply to breaches of trust or of other fiduciary obligation.

"3. Create a right of contribution against an employer or other person who has paid or who is liable for workmen's compensation in connection with an injury or death pursuant to title 23, chapter 6, unless the employer or other person is subject to direct suit under § 23-1022. For purposes of determining the amount of pro rata shares under this article, any employer or other person who has paid or who is liable for workmen's compensation shall not be considered unless the employer or other person is subject to direct suit under § 23-1022.

"G. As used in this article, 'property damage' means both physical damage to tangible property and economic loss proximately caused by a breach of duty."

**COLORADO**

Adds a subsection [designated (8) in the Colorado act], which provides:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"(8) In the event that a public contract or agreement for the construction, alteration, repair, or maintenance of any building, structure, highway bridge, viaduct, water, sewer, or gas distribution system, or other works dealing with construction, or any moving, demolition, or excavation connected with such construction, contains any covenant, promise, agreement, or combination thereof to indemnify or hold harmless any public entity from that public entity's own negligence, then such covenant, promise, agreement, or combination thereof is void as against public policy and wholly unenforceable. This subsection (8) shall not apply to construction bonds, contracts of insurance, contract clauses regarding insurance, or contract clauses regarding costs of defense of litigation arising out of the work or to any covenant, promise, agreement, or combination thereof to indemnify or hold harmless a contracting party against claims arising out of the negligent acts of the indemnitor and its subcontractors in the performance of the work under the contract. However, no contracting party shall be required to indemnify or hold harmless from any liability or damages arising from the negligent acts of the indemnified party. This subsection (8) is intended only to affect the contractual relationship between the parties relating to indemnification of public entities for the negligent acts of the public entity, and nothing in this subsection (8) shall affect any other rights or remedies of public entities or contracting parties."

## MASSACHUSETTS

Section provides:

"(a) Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution shall exist only in favor of a joint tortfeasor, hereinafter called tortfeasor, who has paid more than his pro rata share of the common liability, and his total recovery shall be limited to the amount paid by him in excess of his pro rata share. No tortfeasor shall be compelled to make contribution beyond his own pro rata share of the entire liability.

"(c) A tortfeasor who enters into a settlement with a claimant shall not be entitled to recover contribution from another tortfeasor in respect to any amount paid in a settlement which is in excess of what was reasonable.

"(d) A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, shall be subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision shall not limit or impair any right of subrogation arising from any other relationship.

"(e) This chapter shall not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee shall be for indemnity and not contribution, and the indemnity obligor shall not be entitled to contribution from the obligee for any portion of his indemnity obligation."

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## NEVADA

In subsec. (b), substitutes "equitable share" for "pro rata share" throughout.

In subsec. (c), omits "[wilfully or wantonly]".

In subsec. (e), substitutes "equitable share" for "pro rata share".

## NORTH CAROLINA

Section provides:

"(a) Except as otherwise provided in this Article, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tort-feasor is compelled to make contribution beyond his own pro rata share of the entire liability.

"(c) There is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury or wrongful death.

"(d) A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death has not been extinguished nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

"(e) A liability insurer, who by payment has discharged in full or in part the liability of a tort-feasor and has thereby discharged in full its obligation as insurer, succeeds to the tort-feasor's right of contribution to the extent of the amount it has paid in excess of the tort-feasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.

"(f) This Article does not impair any right of indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

"(g) This Article shall not apply to breaches of trust or of other fiduciary obligation.

"(h) The provisions of this Article shall apply to tort claims against the State. However, in such cases, the same

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

rules governing liability and the limits of liability shall apply to the State and its agencies as in cases heard before the Industrial Commission. The State's share in such cases shall not exceed the pro rata share based upon the maximum amount of liability under the Tort Claims Act.

"(i) The provisions of this Article shall apply to the injury or death of an employee of any common carrier by rail which is subject to the provisions of Chapter 2 of Title 45 of the United States Code (45 U.S.C. § 51 et seq.) or G.S. 62-242 where such injury or death is caused by the joint or concurring negligence of such common carrier by rail and any other person or persons. In any such instance, the following will apply:

"(1) Where liability is imposed or sought to be imposed only on such common carrier by rail, the railroad is entitled to contribution from any other such person or persons;

"(2) Where liability is imposed or sought to be imposed only on a person or persons other than a common carrier by rail, such other person or persons are entitled to contribution from the railroad;

"(3) Where liability is imposed or sought to be imposed on both a common carrier by rail and any other person or persons, damages shall be determined as provided in Chapter 2 of Title 45 of the United States Code (45 U.S.C. § 51 et seq.) or G.S. 62-242 whichever controls the claim."

## OKLAHOMA

The provisions of the Oklahoma act are found in one section (12 Okl.St.Ann. § 832), which provides:

"**§ 832. Joint tort-feasors--Contribution--Indemnity--Exemptions--Release, covenant not to sue, etc.**

"A. When two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them except as provided in this section.

"B. The right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share of the common liability, and the total recovery is limited to the amount paid by the tort-feasor in excess of their pro rata share. No tort-feasor is compelled to make contribution beyond their pro rata share of the entire liability.

"C. There is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury or wrongful death.

"D. A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"E. A liability insurer which by payment has discharged, in full or in part, the liability of a tort-feasor and has thereby discharged in full its obligation as insurer, is subrogated to the tort-feasor's right of contribution to the extent of the amount it has paid in excess of the tort-feasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.

"F. This act does not impair any right of indemnity under existing law. When one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of the indemnity obligation.

"G. This act shall not apply to breaches of trust or of other fiduciary obligation.

"H. When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"1. It does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and

"2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor."

## SOUTH CAROLINA

In subsec. (c), omits "[wilfully or wantonly]".

## TENNESSEE

Section provides:

"(a) Except as otherwise provided in this chapter where two (2) or more persons are jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them; but no right of contribution shall exist where, by virtue of intrafamily immunity, immunity under the workers' compensation laws of the state of Tennessee, or like immunity, a claimant is barred from maintaining a tort action for injury or wrongful death against the party from whom contribution is sought.

"(b) The right of contribution exists only in favor of a tort-feasor who has paid more than the proportionate share of the shared liability between two (2) or more tort-feasors for the same injury or wrongful death, in accordance with the procedure set out in § 29-11-104, and the tort-feasor's total recovery is limited to the amount paid by the tort-feasor in excess of this proportionate share.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"(c) There is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury or wrongful death.

"(d) A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

"(e) A liability insurer, who by payment has discharged in full or in part the liability of a tort-feasor and has thereby discharged in full its obligation as insurer, may be subrogated to the tort-feasor's right of contribution to the extent of the amount it has paid in excess of the tort-feasor's proportionate share of the shared liability between two (2) or more tort-feasors for the same injury or wrongful death, in accordance with the procedure set out in § 29-11-103. This provision does not limit or impair any right of subrogation or assignment arising from any other relationship and causes of action for contribution or indemnity are fully assignable and transferable.

"(f) This chapter does not impair any right of indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of tort-feasor's indemnity obligation.

"(g) This chapter shall not apply to breaches of trust or of other fiduciary obligation."

## LAW REVIEW AND JOURNAL COMMENTARIES

Active-passive implied indemnity: the current status of this obsolete doctrine. David C. Gustman and Rodd M. Schreiber. 74 Ill.B.J. 252 (1986).

Apportionment of damages under comparative negligence. Philip W. Bouchard. 55 Mass.L.Q. 125 (1970).

Apportionment of damages under comparative negligence statute: A rejoinder. James W. Smith. 55 Mass.L.Q. 149 (1970).

Comparative contribution. 14 J.Marshall L.Rev. 173 (1980).

Comparative negligence. James W. Smith. 16 Ann.Surv.Mass.L. 47 (1969).

Comparative negligence & uniform contribution: New Arizona law. Scot Butler, III and G. David Gage. 20 Ariz.B.J. 16 (1984).

Comparative negligence in Massachusetts. James W. Smith. 54 Mass.L.Q. 140 (1969).

Complexities of Oklahoma's proportionate several liability doctrine of comparative negligence--is products liability next? William J. McNichols. 35 Okla.L.Rev. 195 (1982).

Contribution among joint tortfeasors: Louisiana's past, present and future. 37 Tul.L.Rev. 525 (April 1963).

Contribution among joint tortfeasors in Oklahoma. K. David Roberts. 50 Okla.B.J. 2193 (1979).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Contribution among tortfeasors. 43 B.U.L.Rev. 417 (1963).

Contribution and indemnity among joint tortfeasors in Kentucky. 48 Ky.L.J. 550 (Summer 1960).

Contribution between joint debtors exclusive of contract express or implied. 8 Okla.L.Rev. 349 (Aug. 1955).

Contribution between joint tortfeasors in Wisconsin. 43 Marq.L.Rev. 102 (Summer 1959).

Contribution in Missouri. 44 Mo.L.Rev. 691 (1979).

Contributions among tortfeasors: Effects of statutes of limitations and other time limitations. Pert B. Kutner. 33 Okla.L.Rev. 203 (1980).

Contributions in impleader. 51 Mass.L.Q. 51 (1966).

Defending against contribution actions: Using the UCATA bar to advantage. Richard M. Dunn, David R. Hazouri and Raquel M. Gonzalez. 68 Def.Couns. J. 403 (2001).

Evolution of contributions among joint tortfeasors in Maine. Richard D. Hewes. 44 B.U.L.Rev. 79 (1964).

Joint tortfeasors. J. Albert Burgoyne. 10 Ann.Surv.Mass.L. 188 (1963); Robert J. Sherer. 10 Ann.Surv.Mass.L. 52 (1963).

Joint tortfeasors, loan against recovery. Robert J. Sherer. 12 Ann.Surv.Mass.L. 58 (1965).

Modification of joint and several liability: Consideration of Uniform Comparative Fault Act. 36 U.Fla.L.Rev. 288 (1984).

Negligent joint tortfeasors in Kansas. 1 Washburn L.J. 136 (Winter 1960).

North Dakota equity for tortfeasors. Larry Kraft. 56 N.D.L.Rev. 67 (1980).

Operation of the Act in New Jersey. S.P. Orlando. 22 Ins.Counsel J. 480 (Oct. 1955).

Partial tort settlements: The modified pro tanto credit and the reasonableness hearing requirement. Thomas V. Harris. 20 Gonz.L.Rev. 69 (1984/85).

Revision of the Act. S.A. Gard. 27 J.Kan.B.Ass'n 2 (Aug. 1958).

Right to contribution for response costs under CERCLA. 60 Notre Dame L.Rev. 345 (1985).

Rule against contribution and its status in Nebraska. 37 Neb.L.Rev. 820 (June 1958).

Sharing damages among multiple tortfeasors. Lewis A. Kornhauser and Richard L. Revesz. 98 Yale L.J. 831 (1989).

Strict products liability: Missouri moves towards absolute liability. 55 UMKC L.Rev. 434 (1987).

Wilful tortfeasors: Common law and the Uniform Act. 62 Dick.L.Rev. 262 (March 1958).

TABLE OF JURISDICTIONS WHEREIN ACT HAS BEEN ADOPTED

Arizona-A.R.S. §§ 12-2501 to 12-2509.

Colorado-West's C.R.S.A. §§ 13-50.5-101 to 13-50.5-106.

Florida-West's F.S.A. § 768.31.

Massachusetts-M.G.L.A. c. 231B, §§ 1 to 4.

Nevada-N.R.S. 17.225 to 17.305.

North Carolina-G.S. §§ 1B-1 to 1B-6.

North Dakota-NDCC 32-38-01 to 32-38-04.

Ohio-Ohio R.C. §§ 2307.31 to 2307.34.

Oklahoma-12 Okl.St.Ann. § 832.

South Carolina-South Carolina Code 1976, §§ 15-38-10 to 15-38-70.

Tennessee-T.C.A. §§ 29-11-101 to 29-11-106.

LIBRARY REFERENCES

2008 Main Volume

> Contribution ☞ 5.
> Westlaw Topic No. 96.
> C.J.S. Contribution §§ 5, 10, 12 to 24, 29.

NOTES OF DECISIONS

> Generally 4
> Accrual of right 33
> Agent and principal 42
> Aggravation of injury by another tortfeasor, common liability 24
> Anti-trust cases 51
> Arbitration 52
> Assignment of right 35
> Assumption of risk 80
> Attorney's fees, indemnity 70
> Banking transactions 53
> Borrowed or loaned servant, employer and employee relationship 48
> Brokers 54
> Burden of proof 83
> Co-conspirators 43
> Collateral estoppel 81

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Common law 9
Common liability 18-28
    Common liability - In general 18
    Common liability - Aggravation of injury by another tortfeasor 24
    Common liability - Common liability found in particular cases 26
    Common liability - Common liability not found in particular cases 27
    Common liability - Concurrent tortious conduct 28
    Common liability - Likelihood of success of injured party in tort action 22
    Common liability - Nature of conduct of joint tortfeasors 19
    Common liability - Relationship between joint tortfeasors themselves 23
    Common liability - Right of action against and direct liability of both joint tortfeasors 21
    Common liability - Severable acts of tortfeasors 20
    Common liability - Time of common liability 25
Common liability found in particular cases 26
Common liability not found in particular cases 27
Comparative negligence system or scheme 17
Compliance with statutory requirements 13
Concurrent tortious conduct, common liability 28
Conditional judgment 91
Conflict of laws 6
Construction and application 2, 3
    Construction and application - In general 2
    Construction and application - Construction with other laws 3
Construction with other laws, construction and application 3
Contract actions 55
Contribution distinguished from and opposed to indemnity 65
Contributions from minors 73
Corporations and corporate officers 44
Damages 89
Defenses 37
Employer and employee relationship 46-48, 68
    Employer and employee relationship - In general 46
    Employer and employee relationship - Borrowed or loaned servant 48
    Employer and employee relationship - Indemnity 68
    Employer and employee relationship - Workers' compensation 47
Fiduciary obligations and duties 41
Fraud 58
Husband and wife 49
Immunity, generally 39
Indemnity 64-72
    Indemnity - In general 64
    Indemnity - Attorney's fees 70
    Indemnity - Contribution distinguished from and opposed to indemnity 65
    Indemnity - Employer and employee relationship 68
    Indemnity - Indemnity held not proper in particular cases 72

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Indemnity - Indemnity held proper in particular cases 71

Indemnity - Notice and opportunity to defend 66

Indemnity - Res judicata or estoppel 69

Indemnity - Warning of hazardous condition 67

Indemnity held not proper in particular cases 72

Indemnity held proper in particular cases 71

Insolvency of joint tortfeasor 74

Instructions 87

Insurance and insurers 45

Intentional, willful, or wanton conduct 32

Joint judgment 90

Jurisdiction 77

Landlord and tenant 59

Liable in tort defined 14

Likelihood of success of injured party in tort action, common liability 22

Malpractice 60

Manufacturers or modifiers of defective products 57

Motor vehicle cases 61-63

Motor vehicle cases - In general 61

Motor vehicle cases - Passengers or guests 62

Motor vehicle cases - Second accident doctrine 63

Nature of conduct of joint tortfeasors, common liability 19

Nature of right 11

Nondivisible injuries 75

Notice and opportunity to defend, indemnity 66

Out-of-state judgment 16

Parent and child 50

Parties 78

Passengers or guests, motor vehicle cases 62

Payment of more than percentage of fault 76

Pleadings 79

Prima facie case 84

Prior decisions in or prior disposition of case 92

Prior law 10

Proximate cause 38

Purpose of law 5

Questions of fact 85

Questions of law 86

Relationship between joint tortfeasors themselves, common liability 23

Repeal 7

Res judicata, generally 82

Res judicata or estoppel, indemnity 69

Retroactive effect 8

Review 93

Right of action against and direct liability of both joint tortfeasors, common liability 21

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Same injury defined 15

Second accident doctrine, motor vehicle cases 63

Severable acts of tortfeasors, common liability 20

Sharing liability 30

Sovereign immunity 40

Statute of repose 34

Strict liability 29

Theories of recovery of injured party 36

Time of common liability 25

Validity 1

Verdict 88

Vicarious liability 31

Waiver of right 12

Warning of hazardous condition, indemnity 67

Warranties 56

Workers' compensation, employer and employee relationship 47

1. Validity

Class of personal injury plaintiffs injured by multiple tort-feasors is not "suspect" for purposes of equal protection challenge to statute abolishing joint and several liability. Church v. Rawson Drug & Sundry Co., Ariz.App. Div. 1 1992, 842 P.2d 1355, 173 Ariz. 342, review denied. Constitutional Law ⟨⟩ 3745

Statute abolishing joint and several liability did not violate equal protection rights of plaintiffs injured by insolvent, immune, or absent tort-feasors; statute was rationally related to legislative objectives to further pure comparative negligence system, impose liability according to degree of fault, and alleviate perceived crisis caused by rising insurance rates. Church v. Rawson Drug & Sundry Co., Ariz.App. Div. 1 1992, 842 P.2d 1355, 173 Ariz. 342, review denied. Constitutional Law ⟨⟩ 3751; Negligence ⟨⟩ 203

2. Construction and application--In general

Section headings of the Uniform Contribution Among Tort-Feasors Act may be considered in interpreting the Act. Martinez v. Lopez, Md.1984, 476 A.2d 197, 300 Md. 91. Statutes ⟨⟩ 211

Uniform Contribution Among Tort-feasors Act making persons jointly or severally liable in tort for same injury to person or property was intended to have full breadth and was not intended to be limited by meaning given prior usage. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Contribution ⟨⟩ 5(2)

In absence of some reason expressed or necessarily implied to the contrary in this Act, court would construe the legislative language so as to give it meaning. Hackett v. Hyson, R.I.1946, 48 A.2d 353, 72 R.I. 132. Contribution ⟨⟩ 5(2)

The Contribution Among Joint Tortfeasors Act concerns contribution, not the apportionment of liability. Morava

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

v. Central Oklahoma Medical Group, Inc., Okla.Civ.App. Div. 4 2001, 26 P.3d 779, certiorari denied.

While Uniform Contribution Among Tortfeasors Act (UCATA) abrogates common law rule that release of or recovery of judgment against one joint tortfeasor releases all, and thus preserves joint and several liability, UCATA affords the joint tortfeasor some statutory protections. Gump v. Walmart Stores, Inc., Hawai'i App.1999, 5 P.3d 418, 93 Hawai'i 428, certification granted, affirmed in part , reversed in part 5 P.3d 407, 93 Hawai'i 417. Contribution ☜ 5(2)

The rule that adoption of statutes from other states carries with it construction thereof by courts of such states, unless contrary to adopting state's settled policy, applies by analogy in construction of this Act. Shultz v. Young, Ark.1943, 169 S.W.2d 648, 205 Ark. 533. Statutes ☜ 226

The interpretation of this Act by Commissioners on Uniform State Laws is not binding on State Supreme Court in construing state act concerning such contribution, but should be adopted, unless court is clearly convinced that such interpretation is erroneous or contrary to state's settled policy as declared in Supreme Court's opinions. Shultz v. Young, Ark.1943, 169 S.W.2d 648, 205 Ark. 533. Statutes ☜ 226

   3. ---- Construction with other laws, construction and application

Pennsylvania's comparative negligence statute was not applicable in measuring contribution among joint tortfeasors, though settlement with plaintiff and execution of general release occurred after the statute was in effect, where the underlying tort occurred before the statute's effective date. Slaughter v. Pennsylvania X-Ray Corp., C.A.3 (Pa.) 1981, 638 F.2d 639. Contribution ☜ 7

Statute of limitations other than that contained in Uniform Contribution Among Tort-Feasors Act [T.C.A. § 29-11-101 et seq.] has no effect on action under UCATA and party seeking contribution will not be barred by it. Manning v. Fort Deposit Bank, D.C.Tenn.1985, 619 F.Supp. 1327, appeal dismissed 798 F.2d 469, appeal dismissed 798 F.2d 470, remanded 849 F.2d 222. Contribution ☜ 8

New Jersey Joint Tortfeasors Contribution Law allowing contribution in regard to a "wrongful act" does not bar an action for contribution based on a liability arising without fault under statute making a bank which pays an instrument on a forged endorsement absolutely liable for conversion. Tormo v. Yormark, D.C.N.J.1975, 398 F.Supp. 1159. Contribution ☜ 5(2)

Language of Comparative Negligence Act was unquestionably harmonious with that of Uniform Contribution Among Tortfeasors Act, and Comparative Negligence Act did not compel conclusion that in settlement context, although amount paid by settling joint tort-feasor may be fixed by agreement, liability of nonsettling tort-feasor is fixed by his proportion of causal negligence. Wirth v. Miller, Pa.Super.1990, 580 A.2d 1154, 398 Pa.Super. 244, appeal granted 592 A.2d 1296, 527 Pa. 628, appeal granted 592 A.2d 1303, 527 Pa. 635, appeal granted 592 A.2d 1304, 527 Pa. 637, appeal dismissed as improvidently granted 632 A.2d 309, 534 Pa. 278. Compromise And Settlement ☜ 15(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Statute authorizing action for contribution could not be read in isolation but was to be read in context with other sections of chapter and considered in connection with cause of enactment, mischief to be remedied and main object to be accomplished, to end that purpose might be effectuated. Robertson v. McCarte, Mass.App.Ct.1982, 433 N.E.2d 1262, 13 Mass.App.Ct. 441. Statutes ☞ 184; Statutes ☞ 223.2(.5)

Construing together statutes governing release or covenant not to sue and pro rata shares, release of servant for his wrongful conduct also releases master from vicarious liability. Horejsi by Anton v. Anderson, N.D.1984, 353 N.W.2d 316. Release ☞ 29(1)

In reconciling provisions of Contribution Among Tort-Feasors Act and the comparative negligence act, Supreme Court would avoid a construction which would permit imposition of greater liability on nonreleased tort-feasor with a right of contribution in multiple-party tort-feasor situation; such construction would not be in accordance with basic concepts of justice. Bartels v. City of Williston, N.D.1979, 276 N.W.2d 113. Contribution ☞ 5(1); Negligence ☞ 549(10)

In action for negligence arising under comparative negligence act, when determining right of tort-feasor to contribution, the prorata shares of common liability are to be determined in proportion to the percentage of negligence attributable to each tort-feasor under the comparative negligence act. Bartels v. City of Williston, N.D.1979, 276 N.W.2d 113. Contribution ☞ 5(1)

Question of whether general partnership/restaurant lessee and its partners were barred by the doctrine of claim preclusion from bringing a lawsuit against limited partnership/lessor's partner and the lessor's employee, who were not parties to an earlier action against the lessor and the lessor's second partner, was governed by the Uniform Contribution Among Tortfeasors Act (UCATA), rather than by the existence of privity under the partnership law, where the lessor, its partners and the employee were allegedly joint tortfeasors. Cruz v. Benine, Colo.1999, 984 P.2d 1173. Judgment ☞ 700

Proportionate fault statute's abolition of joint and several liability does not extinguish defendant's right to contribution from other tort-feasors, pursuant to contribution statutes. Graber v. Westaway, Colo.App.1991, 809 P.2d 1126. Contribution ☞ 5(1)

Legislative abolition of doctrine of joint and several liability of tort-feasors moots question of contribution. City of Tucson v. Superior Court In and For County of Pima, Ariz.1990, 798 P.2d 374, 165 Ariz. 236. Action ☞ 6

Where both the Uniform Contribution Among Tortfeasors Act and HRS § 573-5 are relevant to an issue, they are in pari materia and should be construed with reference to each other. Campo v. Taboada, Hawai'i 1986, 720 P.2d 181, 68 Haw. 505. Statutes ☞ 223.2(1.1)

Comparative negligence statute, W.S.1977, § 1-1-109(a), and right to contribution among joint tort-feasors statute, W.S.1977, § 1-1-113, are interrelated and must be read and considered together. Kirby Bldg. Systems v. Mineral Explorations Co., Wyo.1985, 704 P.2d 1266. Statutes ☞ 223.1

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Comparative negligence statute does not affect action for contribution between two joint tort-feasors under Uniform Contribution Among Joint Tort-feasors Act. Liberty Mut. Ins. Co. v. General Motors Corp., Hawai'i 1982, 653 P.2d 96, 65 Haw. 428. Contribution 5(1)

Passenger in truck involved in accident with another vehicle, as a pure or blameless plaintiff, could collect his entire judgment from driver of other vehicle, even though such driver was determined by jury to be 30 percent negligent while driver of city-owned truck in which passenger was riding was determined to be 70 percent negligent, where passenger's cause of action against driver of city-owned truck, his fellow employee, and against city was barred by reason of title 85, § 44. Berry v. Empire Indem. Ins. Co., Okla.1981, 634 P.2d 718. Automobiles 200

The superior court is authorized to enter a declaratory judgment upon petition therefor in cases of actual controversy, and to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations. Agan v. State, Ga.2000, 533 S.E.2d 60, 272 Ga. 540. Declaratory Judgment 1; Declaratory Judgment 8; Declaratory Judgment 61

Alleged negligent premises owner's claim for contribution against hospital whose alleged negligence aggravated injuries which occurred on the premises was a medical malpractice claim that could not be raised in personal injury action would being first presented to medical liability mediation panel in accordance with statute providing that person or representative claiming damages by reason of injury, death or monetary loss on account of alleged malpractice by health maintenance organization shall submit claim to appropriate medical liability mediation panel before claim may be filed in state court. Walt Disney World Co. v. Memorial Hospital, Fla.App. 4 Dist.1978, 363 So.2d 598. Health 806

### 4. Generally

"Contribution" allows one defendant to force concurrent or joint tort-feasor to bear common burden of liability by sharing damages. Eagle-Picher Industries, Inc. v. U.S., C.A.3 (Pa.) 1988, 846 F.2d 888, certiorari denied 109 S.Ct. 490, 488 U.S. 965, 102 L.Ed.2d 527. Contribution 5(1)

Under Pennsylvania law, contribution among joint tort-feasors in negligence actions is permitted. Duckworth v. Ford Motor Co., C.A.3 (Pa.) 1963, 320 F.2d 130. Contribution 5(1)

Under Colorado law, contribution addresses recovery by one tortfeasor against another, but has nothing to do with rights of injured party to recover from tortfeasors. Sender v. Mann, D.Colo.2006, 423 F.Supp.2d 1155. Contribution 5(1)

In Pennsylvania, right of contribution arises only between joint tort-feasors. Travelers Indem. Co. v. Stedman, E.D.Pa.1995, 895 F.Supp. 742. Contribution 5(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Under Delaware law, there is statutory right to contribution among joint tort-feasors. New Zealand Kiwifruit Marketing Bd. v. City of Wilmington, D.Del.1993, 825 F.Supp. 1180. Contribution ☞ 5(1)

Right to contribution exists among joint tort-feasors under Pennsylvania Uniform Contribution Among Tort-Feasors Act. In re One Meridian Plaza Fire Litigation, E.D.Pa.1993, 820 F.Supp. 1492. Contribution ☞ 5(1)

Under Pennsylvania law, joint tort-feasor may as matter of right seek pro rata share of tort victim's loss from joint tort-feasor. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Staiman, M.D.Pa.1991, 771 F.Supp. 102. Contribution ☞ 7

Contribution is right enjoyed by joint tort-feasor, who has paid more than his proper share of joint liability, to force others to reimburse him to extent of their liability. Banks Tower Communications, Ltd. v. Home Ins. Co., D.C.Pa.1984, 590 F.Supp. 1038. Contribution ☞ 6

Alaska law does not follow principle that a defendant who extinguishes a common liability is entitled to partial equitable indemnification in an amount equal to the non-paying defendant's percentage of fault, and under Alaska law allocation of damages based on fault is accomplished through statutory contribution. Industrial Risk Insurers v. Creole Production Services, Inc., D.C.Alaska 1983, 568 F.Supp. 1323, affirmed 746 F.2d 526. Contribution ☞ 7; Indemnity ☞ 50

Under Pennsylvania law, right to contribution in tort action arises only among joint tort-feasors. Tesch v. U. S., D.C.Pa.1982, 546 F.Supp. 526. Contribution ☞ 5(1)

Except as provided by statute, there is no right of contribution in Mississippi where the parties are joint tort-feasors. Hartford Acc. & Indem. Co. v. Mitchell Buick-Pontiac and Equipment Co., D.C.Miss.1979, 479 F.Supp. 345. Contribution ☞ 5(1)

Under law of Mississippi, there is no apportionment or contribution between one or more or all of parties guilty of tortious conduct. Hood v. Dealers Transport Co., D.C.Miss.1979, 472 F.Supp. 250. Contribution ☞ 5(1)

Under Delaware law there is a right to contribution among joint tort-feasors. ICI America, Inc. v. Martin-Marietta Corp., D.C.Del.1974, 368 F.Supp. 1148. Contribution ☞ 5(1)

Under Maryland law, right of contribution exists among joint tort-feasors. State of Md. for Use of Gliedman v. Capital Airlines, Inc., D.C.Md.1967, 267 F.Supp. 298. Contribution ☞ 5(1)

Pennsylvania law permits contribution among joint tort-feasors. Frankel v. Burke's Excavating, Inc., D.C.Pa.1963, 223 F.Supp. 945. Contribution ☞ 5(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Contribution is permitted between joint tort-feasors under 12 P.S. § 2083. Keller Crescent Printing & Engraving Co. v. Rosen, D.C.Pa.1955, 135 F.Supp. 22. Contribution ☜ 5(1)

Tennessee's adoption of Uniform Contribution Among Tort-Feasors Act is interpreted as having changed substantive law of contribution of Tennessee. Pinzer v. Wood, D.C.Tenn.1979, 82 F.R.D. 607. Contribution ☜ 5(2)

Plaintiff may recover against a tort-feasor in excess of the tort-feasor's pro rata share of damages in a suit where multiple tort-feasors are found liable, and the overpaying tort-feasor may then seek contribution from the other responsible defendants for their overpayment. Tindal v. Southeastern Pennsylvania Transp. Authority, Pa.Super.1989, 560 A.2d 183, 385 Pa.Super. 94. Contribution ☜ 6; Negligence ☜ 549(10)

Most personal injuries are by their very nature incapable of division among joint tort-feasors. Capone v. Donovan, Pa.Super.1984, 480 A.2d 1249, 332 Pa.Super. 185. Contribution ☜ 5(1)

One who is statutorily liable may nonetheless recover contribution from another tort-feasor pursuant to Joint Tortfeasors Contribution Act. Petersen v. Tolstow, N.J.Super.L.1982, 445 A.2d 84, 184 N.J.Super. 84. Contribution ☜ 5(1)

There are two prerequisites to right of contribution among negligent parties: common liability because of such negligence and party claiming contribution paid more than its share of common liability. Nora v. Livingston Tp., N.J.Super.A.D.1980, 410 A.2d 278, 171 N.J.Super. 579. Contribution ☜ 5(5); Contribution ☜ 6

Only requirement for eligibility under Uniform Contribution Among Tortfeasors Act is that persons jointly or severally be liable in tort for same injury to person or property. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Contribution ☜ 5(2)

In the absence of a clear legislative mandate to the contrary, the interest of the State both in obtaining repose and in having a timely opportunity for the investigation of claims against it must yield to the overriding equities which underpin the contribution laws. Markey v. Skog, N.J.Super.L.1974, 322 A.2d 513, 129 N.J.Super. 192. Contribution ☜ 1

Liability for contribution is different and distinct from liability for the jointly committed tort. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ☜ 5(1)

Right to "contribution" is the right to recover from another who is also liable for the proportionate share of that joint tort-feasor's liability. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ☜ 5(1)

Without liability in tort there is no right of contribution. Berube v. City of Northampton, Mass.1992, 602 N.E.2d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

560, 413 Mass. 635. Contribution 🔑 5(5)

Right to contribution is based on shared fault of joint tort-feasors. Elias v. Unisys Corp., Mass.1991, 573 N.E.2d 946, 410 Mass. 479. Contribution 🔑 5(1)

Essential elements for contribution in tort action are common liability of joint tort-feasors to an injured party and payment by one of tort-feasors of more than his share of that liability. Nationwide Mut. Ins. Co. v. Marcinko, Ohio Com.Pl.1980, 436 N.E.2d 551. Contribution 🔑 5(1)

Joint tort-feasor, who pays more than his proportionate share of common liability after effective date of Contribution Among Joint Tortfeasors Act as result of injury which was suffered prior to effective date of Act, may assert claim to recover among which he paid in excess of his proportionate share of common liability. National Mut. Ins. Co. v. Whitmer, Ohio 1982, 435 N.E.2d 1121, 70 Ohio St.2d 149, 24 O.O.3d 248. Contribution 🔑 6

Right of contribution is of statutory origin in South Dakota. Dehn v. Prouty, S.D.1982, 321 N.W.2d 534. Contribution 🔑 5(2)

There is no right to contribution among joint tort-feasors, in absence of statute. Brown v. Murdy, S.D.1960, 102 N.W.2d 664, 78 S.D. 367. Contribution 🔑 5(1)

Statutory right of contribution among tortfeasors in strict product liability actions applied only to cases that came within statutory exceptions to several-only liability. State Farm Ins. Companies v. Premier Manufactured Systems, Inc., Ariz.2007, 172 P.3d 410, 217 Ariz. 222. Contribution 🔑 5(6.1)

Remedy of "contribution" allows one tortfeasor to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in excess of the settling or discharging tortfeasor's equitable share of the common liability. The Doctors Co. v. Vincent, Nev.2004, 98 P.3d 681, 120 Nev. 644. Contribution 🔑 5(1)

Amendment of proportionate fault statute, which reintroduced joint liability for cases in which tort-feasors engaged in concerted activity, authorized imposition of liability upon a defendant for fault of all other joint tort-feasors, regardless of whether they had settled with plaintiff. Pierce v. Wiglesworth, Colo.App.1994, 903 P.2d 656, rehearing denied , certiorari denied. Release 🔑 29(2)

In order to have a claim for contribution, the following elements must exist: claimant must be a tort-feasor, contribution defendant must be a tort-feasor, they must be jointly and severally liable in tort for same injury, claimant must have paid more than its pro rata share of common liability, claimant must have extinguished contribution defendant's liability for the injury or wrongful death, and if liability was extinguished by settlement, amount must have been reasonable. Ogle v. Craig Taylor Equipment Co., Alaska 1988, 761 P.2d 722. Contribution 🔑 5(5); Contribution 🔑 6; Contribution 🔑 8

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"Contribution" is right of recovery by one tort-feasor from cotort-feasor and has nothing to do with rights of injured party to recover from tort-feasors. Greenemeier by Redington v. Spencer, Colo.App.1984, 694 P.2d 850, affirmed 719 P.2d 710. Contribution ☞ 5(1)

Uniform Contribution Among Tortfeasors Act no longer has force in New Mexico with respect to contribution among concurrent tort-feasors. Wilson v. Galt, N.M.App.1983, 668 P.2d 1104, 100 N.M. 227, certiorari quashed 668 P.2d 308, 100 N.M. 192. Contribution ☞ 5(2)

Where there is no negligence, there can be no right of contribution. Standhardt v. Flintkote Co., N.M.1973, 508 P.2d 1283, 84 N.M. 796. Contribution ☞ 5(5)

Under the contribution statute, there is no right to contribution from one who is not a joint tortfeasor. Land v. Tall House Bldg. Co., N.C.App.2004, 602 S.E.2d 1, 165 N.C.App. 880. Contribution ☞ 5(1)

In a case for contribution, the real inquiry is which of the two parties is primarily responsible for the injuries. Terminal Transport Co., Inc. v. Cliffside Leasing Corp., Tenn.1979, 577 S.W.2d 455. Contribution ☞ 5(4)

Although the Uniform Contribution Among Tortfeasors Act creates a remedy, the remedy is one that is available only if there is an independent basis to assert a claim that the joint tortfeasor is liable for a share of the loss. Virginia Ins. Reciprocal v. Walker, Fla.App. 1 Dist.2000, 765 So.2d 229, review granted 779 So.2d 275, approved 842 So.2d 804. Contribution ☞ 5(1)

5. Purpose of law

Purpose of this Act is to provide for proportionate allocation of burden among tort-feasors who are liable. Alder v. Garcia, C.A.10 (N.M.) 1963, 324 F.2d 483. Contribution ☞ 5(2)

The preliminary purpose of the Uniform Contribution Among Tortfeasors Act was to create a right of contribution among joint tort-feasors, a right which did not exist at common law, and to establish a procedure whereby that right of contribution might be made effective in practice. Albert v. Dietz, D.C.Hawai'i 1968, 283 F.Supp. 854. Contribution ☞ 5(2)

It was intended by the Uniform Contribution Among Tortfeasors Act that equity should prevail over the manifest injustice of the common-law rule under which there was no right of contribution among joint tort-feasors. Albert v. Dietz, D.C.Hawai'i 1968, 283 F.Supp. 854. Contribution ☞ 5(2)

One of primary purposes of Uniform Contribution Among Joint Tortfeasors Act was to create a right of contribution among joint tort-feasors which did not exist at common law. Rowe v. John C. Motter Printing Press Co., D.C.R.I.1967, 273 F.Supp. 363. Contribution ☞ 5(2)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Purpose of third party practice provided for by Uniform Contribution Among Tort-Feasors Act (UCATA) and by rules which have superseded it is to try in one action all phases of litigation among original and impleaded parties. Parler & Wobber v. Miles & Stockbridge, Md.2000, 756 A.2d 526, 359 Md. 671. Contribution ⛌ 9(1)

Unlike doctrine of vicarious liability, which is designed to compensate victim for injuries caused by single tort-feasor, the Uniform Contribution Among Tortfeasors Act responds to entirely distinct problem: how to compensate victim for injury inflicted by more than one tort-feasor. Mamalis v. Atlas Van Lines, Inc., Pa.Super.1987, 528 A.2d 198, 364 Pa.Super. 360, appeal granted 542 A.2d 1370, 518 Pa. 641, affirmed 560 A.2d 1380, 522 Pa. 214. Contribution ⛌ 5(1)

Joint Tortfeasor Contribution Act was intended to relieve tortfeasors of injustice as among themselves and was not designed to prevent full recovery by plaintiff or intended to deny plaintiff full and complete satisfaction; Act gives contribution rights to defendant only after he has paid more than his pro rata share and does not require plaintiff to pursue each defendant only for his pro rata share, and plaintiff may still sue either defendant separately for entire amount of claim or sue defendants jointly and levy execution of entire amount against either alone or secure fractions thereof against both. Tino v. Stout, N.J.1967, 229 A.2d 793, 49 N.J. 289. Contribution ⛌ 5(2); Contribution ⛌ 6; Execution ⛌ 18; Parties ⛌ 31

This Act was designed to reverse two well established rules of law, namely, that there was no contribution among joint tort feasors and that the discharge of one joint tort feasor either by satisfaction of a judgment or by its equivalent, a release, discharged all other joint tort feasors. Hackett v. Hyson, R.I.1946, 48 A.2d 353, 72 R.I. 132. Contribution ⛌ 5(2); Judgment ⛌ 878(1); Release ⛌ 29(2)

The primary purpose of this Act is to create a right of contribution among joint tortfeasors, which did not exist at common law, and to establish a procedure whereby that right might be made effective in practice. Baltimore Transit Co. v. State, to Use of Schriefer, Md.1944, 39 A.2d 858, 183 Md. 674. Contribution ⛌ 5(2)

Purpose of this Act is to insure that a case involving joint tort-feasors may be fully heard on the merits, without regard to the position of any of the parties as original defendants or otherwise. Brotman v. McNamara, Md.1942, 29 A.2d 264, 181 Md. 224. Contribution ⛌ 5(2)

Goal of statutes allowing joint tort-feasor to recover contribution in certain circumstances is to ensure that each tort-feasor shares burden of making the injured party whole. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ⛌ 5(2)

Statute affording a right of contribution in those instances where two or more persons become jointly liable in tort for same injury to person or property remedies unfairness of allowing a disproportionate share of plaintiff's recovery to be borne by one of several joint tort-feasors and accomplishes object of achieving a more equitable distribution of burden among those liable in tort for same injury. Hayon v. Coca Cola Bottling Co. of New England, Mass.1978, 378 N.E.2d 442, 375 Mass. 644. Contribution ⛌ 5(2)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Uniform Contribution Among Tortfeasors Act's (UCATA) general goal is to make each tortfeasor responsible for only its share of fault. State Farm Ins. Companies v. Premier Manufactured Systems, Inc., Ariz.App. Div. 1 2006, 142 P.3d 1232, 213 Ariz. 419, review granted , affirmed 172 P.3d 410, 217 Ariz. 222. Contribution ⟳ 5(2)

The intent of the Uniform Contribution Among Tortfeasors Act was to interject judicial control over the distribution of damages in tort claims in which there is more than one tortfeasor. Barringer v. Baptist Healthcare of Oklahoma, Okla.2001, 22 P.3d 695. Contribution ⟳ 5(2)

One purpose of Uniform Contribution Among Tortfeasors Act (UCATA) is to ensure that joint tort-feasor paying more than its proportional share of common liability for same injury will have right of contribution from other joint tort-feasors. Yslava v. Hughes Aircraft Co., Ariz.1997, 936 P.2d 1274, 188 Ariz. 380. Contribution ⟳ 5(2)

General legislative goals for the Uniform Contribution Among Tortfeasors Act (UCATA) included both increasing fairness of tort system for plaintiffs and defendants and promoting settlement of complex and multiparty tort litigation. Shelby v. Action Scaffolding, Inc., Ariz.1992, 827 P.2d 462, 171 Ariz. 1. Contribution ⟳ 5(1)

Uniform Contribution Among Tortfeasors Act is designed to permit equitable apportionment of losses among multiple tort-feasors, and possibility that one joint tort-feasor may not be able to respond in damages is inherent limitation on effectiveness of Act to achieve perfect equity. Watson v. Regional Transp. Dist., Colo.1988, 762 P.2d 133. Contribution ⟳ 5(1)

Purpose of the Uniform Contribution Among Tortfeasors Act is to avoid injustice of having one joint tort-feasor pay more than his fair share of damages. Campo v. Taboada, Hawai'i 1986, 720 P.2d 181, 68 Haw. 505. Contribution ⟳ 5(1)

Purpose of the Uniform Contribution Among Tortfeasors Act [AS 09.16.010 et seq.] is to ensure that all tort-feasors pay their fair share of damages. Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd., Alaska 1985, 705 P.2d 913. Contribution ⟳ 5(2)

Purpose of Uniform Contribution Among Tortfeasors Act is to ensure that all joint tort-feasors pay their fair share of damages rather than to have only one joint tort-feasor pay all damages. Criterion Ins. Co. v. Laitala, Alaska 1983, 658 P.2d 112. Contribution ⟳ 5(2)

Goal of Uniform Contribution Among Tortfeasor's Act is equity among tort-feasors. Bartlett v. New Mexico Welding Supply, Inc., N.M.App.1982, 646 P.2d 579, 98 N.M. 152, certiorari denied 648 P.2d 794, 98 N.M. 336. Contribution ⟳ 5(2)

Uniform Contribution Among Tort-feasors Act was intended to apply where two or more parties inadvertently

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

become joint tort-feasors. City and Borough of Juneau v. Alaska Elec. Light & Power Co., Alaska 1981, 622 P.2d 954. Contribution ☞ 5(2)

One purpose of Uniform Contribution Among Tort-feasors Act was to provide proportionate allocation of burden among tort-feasors, in abrogation of common-law rule that there can be no contribution among joint tort-feasors. Rio Grande Gas Co. v. Stahmann Farms, Inc., N.M.1969, 457 P.2d 364, 80 N.M. 432. Contribution ☞ 5(2)

Purpose of this section providing that right of tort-feasor to secure money judgment for contribution does not accrue until he has either discharged common liability of joint tort-feasors by payment or has paid more than his prorata share thereof is to prevent injured person from relieving one joint tort-feasor of obligation of contribution except where he has also released other tort-feasors from prorata share of common liability. Garrison v. Navajo Freight Lines, Inc., N.M.1964, 392 P.2d 580, 74 N.M. 238. Contribution ☞ 6

Purpose of Uniform Contribution Among Tortfeasors Act is to establish right of contribution where two or more persons are jointly or severally liable in tort and is not intended to operate so as to reduce amount of damages required to fully compensate claimant for his injuries and losses. Buckner v. Cocke County, Tenn.App.1986, 720 S.W.2d 472. Contribution ☞ 5(2)

One primary purpose of this Act is to prevent multiplicity of suits. Kapp v. Bob Sullivan Chevrolet Co., Ark.1962, 353 S.W.2d 5, 234 Ark. 395. Contribution ☞ 5(2)

The intent of this Act is to permit finders of fact to decide relative responsibility of each tort-feasor and to hold him responsible in that proportion only, and the act does not presume that full recovery can be defeated because one or more of the defendants may be execution proof. Little v. Miles, Ark.1948, 212 S.W.2d 935, 213 Ark. 725. Contribution ☞ 1

Purpose of Florida's Uniform Contribution Among Tortfeasors Act is to apportion the responsibility to pay innocent injured third parties between or among those causing the injury. Chiang v. Wildcat Groves, Inc., Fla.App. 2 Dist.1997, 703 So.2d 1083, rehearing denied , review denied 717 So.2d 536. Contribution ☞ 5(2)

6. Conflict of laws

Illinois law governed dispute over indemnity clause of contract granting one railway the right to operate its trains over tracks owned by second railway, in context of establishing liability for accident involving child on track; contract was negotiated, signed and performed in Illinois, tracks on which child was injured were located in Illinois, child filed suit in Illinois court, and both railways do business in Illinois. CSX Transp., Inc. v. Chicago and North Western Transp. Co., Inc., C.A.7 (Ill.) 1995, 62 F.3d 185. Indemnity ☞ 24

Though the time when entitlement to contribution comes into being is when the common liability of the tort-feasors to the claimant is extinguished, it is the law in effect at the moment of the injury that determines the re-

sponsibilities of the tort-feasors among themselves. Slaughter v. Pennsylvania X-Ray Corp., C.A.3 (Pa.) 1981, 638 F.2d 639. Contribution ☞ 5(1)

Italian publisher being sued by American publisher for contribution to payment made in settlement of defamation claim by popular singer who was object of Italian article forming basis of article in American magazine was not denied its due process rights by application of Florida law; Italian publisher had 60 subscribers to its publication in Florida and had contracted with an exclusive United States distributor for sale of its periodicals throughout the country. Globe Communications Corp. v. R.C.S. Rizzoli Periodici, S.p.A., S.D.N.Y.1990, 729 F.Supp. 973. Constitutional Law ☞ 3965(8); Contribution ☞ 1

Law of Florida applied to case where allegedly fraudulent statement regarding incident in life of popular singer was published in Italy, read by editor of American magazine in New York, and decision to publish article based on Italian article was made by publisher headquartered in Florida; last event necessary in cause of action of American publisher against Italian publisher for contribution toward defamation settlement with singer was decision to publish, made in Florida, and that state had significant interest in tort alleged. Globe Communications Corp. v. R.C.S. Rizzoli Periodici, S.p.A., S.D.N.Y.1990, 729 F.Supp. 973. Contribution ☞ 1

In diversity actions which were brought in federal district court in Pennsylvania and which arose out of Pennsylvania automobile accident that resulted in injuries to plaintiffs, husband and wife, who were domiciliaries of New Jersey, New Jersey had most significant interest in issue of intraspousal contribution, raised by husband's motion to be dismissed as third-party defendant, and its law must be applied, although, to extent that threat of liability deters carelessness, Pennsylvania arguably had interest in intraspousal contribution. Zurzola v. General Motors Corp., D.C.Pa.1972, 341 F.Supp. 767, affirmed 481 F.2d 1398, affirmed 481 F.2d 1399, affirmed 481 F.2d 1400, affirmed 503 F.2d 403. Contribution ☞ 5(1)

Subsequent or secondary action by defendant to obtain contribution or indemnification from third party in Pennsylvania court for loss sustained by judgment depends upon law of Pennsylvania as of date of filing or commencement of the secondary or independent suit. Spry v. Eastern Gas & Fuel Associates, D.C.Pa.1964, 234 F.Supp. 580. Contribution ☞ 1; Indemnity ☞ 24

Where action by airlines against airplane manufacturer seeking recovery by way of indemnity of sum representing amounts paid by airlines in settlement of claims for deaths of passengers in airplane crash or for contribution of one-half the total settlement figures based right of recovery on manufacturer's alleged negligence and not upon alleged breach of warranty, and airplane crash occurred in Wisconsin, the law of Wisconsin determined existence, nature and extent of rights, if any, of airlines and corresponding liability of manufacturer, since right of indemnity or contribution is governed by law of place of the tort. Northwest Airlines, Inc. v. Glenn L. Martin Co., D.C.Md.1958, 161 F.Supp. 452. Contribution ☞ 1; Indemnity ☞ 24

In action brought in New York, and transferred to Pennsylvania, by husband and wife, New York domiciliaries, against defendant Pennsylvania motorists and their automobile liability insurer, a company doing business in Pennsylvania, for personal injuries sustained by the plaintiff wife in collision in Pennsylvania between husband's automobile and defendants' automobile, the law of Pennsylvania would be applied under New York choice of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

law rules and defendants would be entitled to interplead the husband for purposes of contribution. Ryer v. Harrisburg Kohl Bros., Inc., D.C.Pa.1971, 53 F.R.D. 404. Contribution ⬅ 1; Federal Civil Procedure ⬅ 288

Comparative Negligence Act is, by its express terms, applicable only to actions sounding in negligence and has no applicability in cases involving strict liability; however, Uniform Contribution Among Joint Tortfeasors Act is applicable to joint tort-feasors regardless of basis upon which they are found liable to plaintiff and may be properly applied to effectuate contribution among joint tort-feasors where one tort-feasor is adjudged liable of negligence and other liable under concept of strict products liability. Moran for and on Behalf of Estate of Moran v. G. & W.H. Corson, Inc., Pa.Super.1991, 586 A.2d 416, 402 Pa.Super. 101, appeal denied 602 A.2d 860, 529 Pa. 650. Contribution ⬅ 5(6.1); Negligence ⬅ 549(5)

Contribution is classified in Delaware as a matter of remedy, and hence Delaware law, which does not permit a defendant to assert a claim for contribution against spouse or parent of plaintiff, applied to claim of a Pennsylvania defendant who sought to bring in as a third-party defendant the wife of one plaintiff and the mother of the other plaintiff notwithstanding that Pennsylvania law permits a defendant to assert a claim for contribution against spouse or parent of a plaintiff. Perez v. Short Line Inc. of Pa., Del.Super.1967, 231 A.2d 642, affirmed 238 A.2d 341. Contribution ⬅ 5(6.1); Parties ⬅ 51(4)

In action for injuries sustained in an automobile collision occurring in New Jersey, New Jersey law applied and controlled all matters of substance, including the extent of liability and the right to, and measure of, contribution between the defendants. Steger v. Egyud, Md.1959, 149 A.2d 762, 219 Md. 331. Automobiles ⬅ 229.5; Contribution ⬅ 1

When settling defendant brings contribution action against nonsettling defendant, issues are determined by statute establishing right of action for contribution, not by statute or rule defining consequences of settlement given in good faith. City of Tucson v. Superior Court In and For County of Pima, Ariz.1990, 798 P.2d 374, 165 Ariz. 236. Contribution ⬅ 6

Hold harmless clause in franchise agreement between city and power company governed apportionment of liability between city and power company in negligence action rather than the Uniform Contribution Among Tortfeasors Act, in that parties, apparently at arm's length, agreed on the standard for measuring liability, provision was not unconscionable, and agreement was not at odds with the remedial purposes of the statute. City and Borough of Juneau v. Alaska Elec. Light & Power Co., Alaska 1981, 622 P.2d 954. Indemnity ⬅ 27; Indemnity ⬅ 29

Where both negligence and strict products liability sounded in tort, question of contribution between defendant tort-feasors was properly decided under the Uniform Contribution Among Tortfeasors Act as adopted in New Mexico. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676. Contribution ⬅ 5(2)

Where injuries sustained in rear-end collision by automobile driver, who brought personal injury action against automobile manufacturer and driver of second automobile which struck plaintiff's automobile, were incapable of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

any logical, reasonable, or practical division, and defendants, since respective conduct of each constituted legal cause of plaintiff's injuries, stood jointly and severally liable for full extent of injuries, right of automobile manufacturer to claim against driver of second automobile was to be resolved under contribution statutes rather than doctrine of apportionment, and thus dismissal of manufacturer's cross claim against second driver was harmless error, since manufacturer could still pursue any right to contribution from second driver by independent action. Chrysler Corp. v. Todorovich, Wyo.1978, 580 P.2d 1123. Appeal And Error ☞ 1042(1); Contribution ☞ 5(7)

Doctrine of comparative fault system abrogated need to determine apportionment of liability between codefendants under Uniform Contribution Among Tort-feasors Act. McIntyre v. Balentine, Tenn.1992, 833 S.W.2d 52, rehearing denied. Contribution ☞ 7; Negligence ☞ 549(10)

### 7. Repeal

Statute relating to subject of contributions to amounts paid in settlement of claims without trial has not been impliedly repealed by enactment of statute providing that when two or more persons are jointly liable, contributions to awards shall be in proportion to percentage of negligence attributable to each. Houser v. Gilbert, N.D.1985, 364 N.W.2d 62. Statutes ☞ 161(1)

Section of Uniform Contribution Among Joint Tortfeasors Act, providing that release of one joint tort-feasor reduces claim against others in amount of consideration paid for release or in any amount or proportion by which release provides if greater than consideration paid, was not repealed by implication by the enactment of the Hawaii comparative negligence statute; declining to follow *Bartels v. City of Williston*, 276 N.W.2d 113. Nobriga v. Raybestos-Manhattan, Inc., Hawai'i 1984, 683 P.2d 389, 67 Haw. 157, reconsideration denied 744 P.2d 779, 67 Haw. 683. Statutes ☞ 158

### 8. Retroactive effect

This Act affects substantive rights and cannot be construed retroactively. Distefano v. Lamborn, Del.Super.1951, 81 A.2d 675, 46 Del. 195, adhered to 83 A.2d 300. Contribution ☞ 5(2)

The right created by statute governing contribution by joint tortfeasors is not limited to those causes of action that existed when the statute became effective; rather, in deciding whether a particular statutory action supports a claim for contribution under the statute, a court must look to whether the underlying claim is in essence a tort claim. Thomas v. EDI Specialists, Inc., Mass.2002, 773 N.E.2d 415, 437 Mass. 536. Contribution ☞ 5(2)

Inasmuch as cause of action for contribution arose in favor of insurer on January 20, 1979, when insurer paid judgment entered against its insured, one of joint tort-feasors, application of statute specifically enacted to compel contribution between joint tort-feasors, which became law on October 1, 1976, did not violate section of Ohio Constitution prohibiting passage of retroactive laws, notwithstanding fact that mishap occurred prior to effective date of contribution statute. Nationwide Mut. Ins. Co. v. Marcinko, Ohio Com.Pl.1980, 436 N.E.2d 551. Contribution ☞ 5(2); Statutes ☞ 278.35

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Contribution Among Tort-Feasors Act has been amended as a result of the enactment of the comparative negligence act; the effective date of the comparative negligence act, July 1, 1973, was the date upon which the amendments became effective, and such amendments applied to litigants in action which was based upon facts which took place subsequent to July 1, 1973. Bartels v. City of Williston, N.D.1979, 276 N.W.2d 113. Contribution ☞ 5(2)

Hospital had no constitutional right to invoke law of joint and several liability and, thus, applying amended statute which abrogated joint and several liability in medical malpractice suit filed after effective date of amended statute was not unconstitutional, even though claim accrued before effective date of amended statute. Neil v. Kavena, Ariz.App. Div. 1 1993, 859 P.2d 203, 176 Ariz. 93. Constitutional Law ☞ 2648; Constitutional Law ☞ 2650; Health ☞ 605

Uniform Contribution Among Tort-feasors Act did not apply to a case in which final judgment was entered prior to July 1, 1977. Hillman v. Bray Lines, Inc., Colo.App.1978, 591 P.2d 1332, 41 Colo.App. 493, affirmed 625 P.2d 634. Contribution ☞ 5(2)

Defendant driver, who settled with plaintiff in wrongful death action arising out of automobile collision, could not prevail against third-party defendant, Department of Highways, under a theory of contribution, where settlement took place before July 1, 1977, effective date of Uniform Contribution Among Joint Tortfeasors Act, and hence case was governed by common law of Colorado under which contribution between joint tortfeasors was not permitted. Millenson v. Department of Highways, Colo.App.1978, 590 P.2d 979, 41 Colo.App. 460. Contribution ☞ 5(1)

Uniform Contribution Among Tortfeasors Act applied to August 1977 settlement of tort action even though alleged tortious conduct occurred before July 1, 1977, the effective date of Act. Summey v. Lacy, Colo.App.1978, 588 P.2d 892, 42 Colo.App. 1. Contribution ☞ 8

Gondola operator which entered into settlement after effective date of Uniform Contribution Among Tortfeasors Act with parties injured as result of gondola crash occurring prior to effective date of Act could seek contribution from parties charged as joint tort-feasors. Coniaris v. Vail Associates, Inc., Colo.1978, 586 P.2d 224, 196 Colo. 392. Contribution ☞ 8

Contribution Among Tort-feasors Act did not apply to any part of subcontractor's claims against construction site owner and general contractor where agreement between subcontractor and pond owner releasing all claims arising out of situation of downstream pond had been signed before effective date of Act. Loyd's Inc. by Richardson Const. Co. of Columbia, S.C., Inc. v. Good, S.C.App.1991, 412 S.E.2d 441, 306 S.C. 450. Contribution ☞ 5(2)

Contribution Among Tortfeasors Act did not apply retroactively to products liability action that arose prior to Act's effective date, even if judgment against tort-feasors was entered after that date. Cousar v. New London Engineering Co., Inc., S.C.1991, 410 S.E.2d 243, 306 S.C. 37. Contribution ☞ 5(2)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 4457-40   Filed 11/01/11   Page 35 of 175

Unif. Contribution Among Tortfeasors Act § 1                                                                                         Page 29

The Uniform Contribution Among Tortfeasors Act and Rules of Civil Procedure governing joinder of parties and causes were inapplicable to action commenced in 1967. Robertson v. Bankers & Tel. Emp. Ins. Co., N.C.App.1968, 160 S.E.2d 115, 1 N.C.App. 122. Action 🔑 50(1); Contribution 🔑 5(2)

Uniform Contribution Among Tort-Feasors Act, in changing general rule that there is no contribution among joint tort-feasors, made substantive change in the law, resulting in deprivation of valuable common-law right to those who might be affected by such sweeping change, and would not and could not constitutionally, be given retroactive application. Massey v. Sullivan County, Tenn.1971, 464 S.W.2d 548, 225 Tenn. 132. Contribution 🔑 5(2); Statutes 🔑 278.35

This Act is not retroactive and is not applicable to a transaction occurring prior to its enactment. Commercial Cas. Ins. Co. v. Leonard, Ark.1946, 196 S.W.2d 919, 210 Ark. 575. Contribution 🔑 5(2)

Uniform Contribution Among Tortfeasors Act does not affect any vested rights of tort-feasors or create any new obligations in respect to their tort liability and thus can constitutionally be applied to pending cases even though actions giving rise to tort liability predate passage of Act. Village of El Portal v. City of Miami Shores, Fla.1978, 362 So.2d 275. Contribution 🔑 1; Statutes 🔑 278.35

   9. Common law

Absent any contractual right, business would have no right of contribution or indemnification against independent contractor as joint tort-feasor under Mississippi law: if both actually contributed to accident, neither has common-law right of contribution against the other. Ramsey v. Georgia-Pacific Corp., C.A.5 (Miss.) 1979, 597 F.2d 890, on remand 511 F.Supp. 393. Contribution 🔑 5(1); Indemnity 🔑 67

Under common law of Mississippi, there was no contribution between joint tort-feasors. Standard Oil Co. of Ky. v. Illinois Cent. R. Co., C.A.5 (Miss.) 1969, 421 F.2d 201. Contribution 🔑 5(1)

Under common law, where two persons, acting independently or jointly, negligently injure third person or his property and both become liable in tort for such injury, one tort-feasor, making expenditures in discharge of such liability, is not entitled to contribution from other tort-feasor. Baltimore & O. R. Co. v. Alpha Portland Cement Co., C.A.3 (Pa.) 1955, 218 F.2d 207. Contribution 🔑 5(3)

There was no common-law right of indemnity or statutory right of contribution under Maryland law that could be exercised by defendant found liable for breach of contract in absence of material breach of contract by third party which caused or otherwise occasioned defendant's breach of its contract with plaintiff. Pyramid Condominium Ass'n v. Morgan, D.C.Md.1985, 606 F.Supp. 592. Contribution 🔑 5(6.1); Indemnity 🔑 64

Under common law, there was no right of contribution between joint tort-feasors. Cage v. New York Cent. R. Co., D.C.Pa.1967, 276 F.Supp. 778, affirmed 386 F.2d 998. Contribution 🔑 5(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Where relationship between owner of building abutting on sidewalk, on which pedestrian was injured in fall due to accumulation of ice and snow, and borough was one of primary and secondary liability and not one of joint and several liability, this Act did not apply, and common-law principle that release of tort-feasor discharges another tort-feasor who has committed a concurrent or successive tort applied. George v. Brehm, D.C.Pa.1965, 246 F.Supp. 242. Contribution ⚷ 5(6.1); Release ⚷ 29(1)

Where plaintiff injured by truck brought action against truck driver, truck owner, and contractor for which truck was being operated at time of accident, at common law, truck owner and contractor, who were not guilty of wilful or active negligence but liable, if at all, on doctrine of respondeat superior, were joint tort-feasors, each entitled potentially to contribution if driver was the servant of each at the time of accident. Keitz v. National Paving & Contracting Co., Md.1957, 136 A.2d 229, 214 Md. 479. Contribution ⚷ 5(7)

Third-party defendant, an engineering firm, in complaint seeking contribution on theory that firm negligently supervised, tested, inspected and examined construction work performed by contractor, which was defendant in suit for damages for injuries arising from gas explosion, was protected at common law without agreement if its liability were purely vicarious. Shea v. Bay State Gas Co., Mass.1981, 418 N.E.2d 597, 383 Mass. 218. Contribution ⚷ 5(6.1)

At common law and until adoption of this Act, no right of contribution existed among joint tort-feasors. Burmeister v. Youngstrom, S.D.1965, 139 N.W.2d 226, 81 S.D. 578. Contribution ⚷ 5(1)

Rule of equal contribution between tort-feasors was not a part of common law in existence at time of American Revolution and adopted in territory of Wisconsin; and legislation was not required to alter such rule, which was adopted through judicial process in 1918. Bielski v. Schulze, Wis.1962, 114 N.W.2d 105, 16 Wis.2d 1. Contribution ⚷ 5(1)

Statutory provisions that concern joint tort-feasors were added to create a right of contribution not conferred by the common law and not to destroy by implication common-law rights already in existence. Holcomb v. Holcomb, N.C.App.1984, 320 S.E.2d 12, 70 N.C.App. 471. Contribution ⚷ 5(2)

Right to contribution from joint tort-feasors is creature of statute; no such right existed until Uniform Contribution Among Tort-Feasors Act was adopted in 1975. Hyster Co. v. David, Fla.App. 1 Dist.1993, 612 So.2d 678. Contribution ⚷ 5(1)

10. Prior law

State law remedy of contribution survived adoption of comparative fault doctrine under Tennessee law. Ergon, Inc. v. Amoco Oil Co., W.D.Tenn.1997, 966 F.Supp. 577. Contribution ⚷ 5(2)

Prior to enactment of this Act in Delaware, no right of contribution existed between joint tort-feasors whether negligence charged was deliberate or willful or passive. Distefano v. Lamborn, Del.Super.1951, 81 A.2d 675, 46

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Del. 195, adhered to 83 A.2d 300. Contribution ☞ 5(4)

11. Nature of right

Contribution does not create direct liability in tort, each toward the other, between two tort-feasors; rather it is a right based on equitable fairness and that right, to have the other tort-feasor contribute to his outlay, arises in whichever tort-feasor satisfies the loss. Newport Air Park, Inc. v. U. S., C.A.1 (R.I.) 1969, 419 F.2d 342. Contribution ☞ 1

Under law of Arkansas, contribution is founded on principles of equity and such relief will be granted only where equities are equal. U. S. Fidelity & Guaranty Co. v. Aetna Cas. & Sur. Co., C.A.8 (Ark.) 1969, 418 F.2d 953. Contribution ☞ 1

"Contribution" does not arise out of contract but is an obligation imposed by law, and rests on the principle that when the parties stand in aequali jare, the law requires equality, which is equity, and that all should contribute equally to the discharge of the common liability. Thomas v. Malco Refineries, C.A.10 (N.M.) 1954, 214 F.2d 884. Contribution ☞ 1

Under Maryland law, architect and engineer could not join lenders by way of third-party claim for contribution, where plaintiff had no effective right of action against such third-party defendants in federal forum and thus right to contribution asserted was not derivative of any liability lenders may have had to association arising from the case. Pyramid Condominium Ass'n v. Morgan, D.C.Md.1985, 606 F.Supp. 592. Contribution ☞ 5(6.1)

Under Maryland law, claim seeking indemnification or contribution constitutes form of derivative liability which is contingent on finding of liability on the main claim. Soper v. Kahn, D.C.Md.1983, 568 F.Supp. 398. Contribution ☞ 1; Indemnity ☞ 20; Indemnity ☞ 81

Recovery under the Pennsylvania Uniform Contribution Among Tortfeasors Act is a recovery in assumpsit or contract rather than in tort. Matter of Reading Co., D.C.Pa.1975, 404 F.Supp. 1249. Action ☞ 27(1)

Uniform Contribution Among Joint Tort-feasors Act rests on equitable principles and does not contemplate the sharing of responsibility among persons not in pari delicto and pre-supposes that the joint tort-feasors it deals with are in aequali juri. Rhoads v. Ford Motor Co., D.C.Pa.1974, 374 F.Supp. 1317, affirmed 514 F.2d 931. Contribution ☞ 5(4)

The right to contribution accorded by Pennsylvania statutes to one joint tort-feasor against the other creates a cause of action of a different nature from the tort action which was the subject of the original suit or claim; the right of contribution in Pennsylvania is a dual one: a right sounding in equity and a right at law sounding in quasi contract. W. D. Rubright Co. v. International Harvester Co., D.C.Pa.1973, 358 F.Supp. 1388. Contribution ☞ 5(1); Contribution ☞ 9(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The right of contribution arises from the application of equitable rules in that where one joint tort-feasor pays more than his just share he has an equitable right to proceed against the other joint tort-feasor for contribution. Albert v. Dietz, D.C.Hawai'i 1968, 283 F.Supp. 854. Contribution ☞ 6

While the right of contribution by joint tort-feasors does arise at time of concurring independent acts, neverthe-less until one of those joint tort-feasors pays more than his proportionate share of the underlying claim, the right remains contingent and inchoate, and it is not until a tort-feasor pays more than his proportionate share that the right ripens into a cause of action. Albert v. Dietz, D.C.Hawai'i 1968, 283 F.Supp. 854. Contribution ☞ 6

Under Uniform Contribution Among Joint Tortfeasors Act, right of contribution is a derivative right and not a new cause of action. Rowe v. John C. Motter Printing Press Co., D.C.R.I.1967, 273 F.Supp. 363. Contribution ☞ 1

Right to contribution is statutory creation resting on principle that, when parties stand in aequali jure, the law re-quires all to contribute equally to discharge of the common liability. Southern Maryland Oil Co. v. Texas Co., D.C.Md.1962, 203 F.Supp. 449. Contribution ☞ 1

The right of contribution accorded by the Pennsylvania statute to one joint tort-feasor against the other creates a cause of action of a different nature from tort action which is the subject of the original suit. Martin v. U. S., D.C.Pa.1958, 162 F.Supp. 441. Contribution ☞ 5(2)

Contribution is derivative right and not new cause of action. Baker, Watts & Co. v. Miles & Stockbridge, Md.App.1993, 620 A.2d 356, 95 Md.App. 145. Contribution ☞ 9(1)

Right to contribution is equitable right to force joint tort-feasors to share in liability for wrong done to plaintiff. Kriner v. Barbour, Pa.Cmwlth.1992, 602 A.2d 450, 145 Pa.Cmwlth. 64, appeal denied 613 A.2d 561, 531 Pa. 656. Contribution ☞ 5(1)

Tort-feasor's right to receive contribution from joint tort-feasor derives not from liability to claimant but, rather, from equitable principle that, once joint liability of several tort-feasors has been determined, it is unfair to im-pose financial burden of plaintiff's loss on one tort-feasor to the exclusion of others. Svetz for Svetz v. Land Tool Co., Pa.Super.1986, 513 A.2d 403, 355 Pa.Super. 230, appeal denied 527 A.2d 542, 515 Pa. 581, appeal denied 527 A.2d 544, 515 Pa. 584, appeal denied 527 A.2d 544, 515 Pa. 585. Contribution ☞ 5(1)

Contribution, indemnity and apportionment are each procedures to approximate an equitable division of responsi-bility between defendants who are jointly liable to plaintiff and, as such, equitable principles are applied. Em-brey v. Borough of West Mifflin, Pa.Super.1978, 390 A.2d 765, 257 Pa.Super. 168. Contribution ☞ 1; Indem-nity ☞ 20; Trial ☞ 335

Right of contribution is a derivative right and not a new cause of action. Cacchillo v. H. Leach Machinery Co.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

R.I.1973, 305 A.2d 541, 111 R.I. 593. Contribution ⚷ 1

Application of doctrine of contribution involves procedural or remedial law. Lutz v. Boas, Del.Ch.1961, 176 A.2d 853. Contribution ⚷ 1

Right to contribution is an equitable right based on a common liability to plaintiff. Brown v. Dickey, Pa.1959, 155 A.2d 836, 397 Pa. 454. Contribution ⚷ 3

Right to contribution remains a separate right of person asserting it, no matter how dependent it may be on other liability. Brown v. Eakin, Del.Super.1957, 137 A.2d 385, 50 Del. 574. Contribution ⚷ 1; Release ⚷ 2

Contribution claims are derivative and not new causes of action. Berube v. City of Northampton, Mass.1992, 602 N.E.2d 560, 413 Mass. 635. Contribution ⚷ 9(1)

Right to contribution is derivative of joint liability in tort of third-party plaintiff and third-party defendant. Dighton v. Federal Pacific Elec. Co., Mass.1987, 506 N.E.2d 509, 399 Mass. 687, certiorari denied 108 S.Ct. 345, 484 U.S. 953, 98 L.Ed.2d 371. Contribution ⚷ 1

Claim for contribution is separate and distinct action from underlying tort; rights and obligations of tort-feasors flow, not from tort, but from judgment or settlement. Butz v. Werner, N.D.1991, 470 N.W.2d 224. Contribution ⚷ 5(1)

Doctrine of contribution is equitable doctrine, based on natural justice, and was well-recognized in suretyship and other areas of law before it was adapted to negligence. Bielski v. Schulze, Wis.1962, 114 N.W.2d 105, 16 Wis.2d 1. Contribution ⚷ 1

Right to contribution by a primary wrongdoer against a primary wrongdoer granted by Pennsylvania statute is a substantive legal right which is unaffected by purely procedural statute or rule enacted or promulgated for convenience and to avoid multiplicity of suits. Murphy v. Barron, N.Y.Sup.1965, 258 N.Y.S.2d 139, 45 Misc.2d 905. Contribution ⚷ 5(2)

Claim for contribution is action separate and distinct from underlying tort; rights and obligations of tort-feasors flow, not from tort, but from judgment or settlement itself. Coniaris v. Vail Associates, Inc., Colo.1978, 586 P.2d 224, 196 Colo. 392. Contribution ⚷ 9(1)

Suit for contribution is, whether in equity or at law, not ex delicto in nature. Security Fire Protection Co., Inc. v. City of Ripley, Tenn.App.1980, 608 S.W.2d 874. Contribution ⚷ 9(1)

Uniform Contribution Among Tortfeasors Act creates a substantive right to contribution from a codefendant

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

whose negligence contributes to plaintiff's injury. Carey v. Jones, Tenn.App.1976, 546 S.W.2d 814. Contribution ⟶ 5(2)

### 12. Waiver of right

Hospital's denial of negligence in its pleadings in medical malpractice action, in its discovery responses, and in its settlement agreement with patient was not an implied waiver of its contribution claim against non-settling treating physician, as joint tortfeasor; such acts were not a clear, unequivocal, and decisive manifestation of hospital's intent to relinquish its right to seek contribution from physician. Barringer v. Baptist Healthcare of Oklahoma, Okla.2001, 22 P.3d 695. Contribution ⟶ 8

### 13. Compliance with statutory requirements

Contribution claimant must show compliance with statutory requirements of Joint Tortfeasors Contribution Act. Miraglia v. Miraglia, N.J.Super.A.D.1969, 255 A.2d 762, 106 N.J.Super. 266. Contribution ⟶ 5(1)

### 14. Liable in tort defined

Phrase "liable in tort" in Uniform Contribution Among Tortfeasors Act does not require present liability to whoever might be particular plaintiff. New Amsterdam Cas. Co. v. Holmes, C.A.1 (R.I.) 1970, 435 F.2d 1232. Contribution ⟶ 5(2)

Term "liable in tort" as used in definition of joint tort-feasors means any person or persons who have negligently contributed to another's injury and term refers to culpability. Zarrella v. Miller, R.I.1966, 217 A.2d 673, 100 R.I. 545. Contribution ⟶ 5(2)

Statutory scheme governing contribution does not require that all joint tort-feasors be defendants in action by underlying claimant for contribution to be available; contribution defendant is "liable in tort," pursuant to contribution statute, if he acted tortiously and thereby caused damages. MetroHealth Medical Center v. Hoffmamn-LaRoche, Inc., Ohio 1997, 685 N.E.2d 529, 80 Ohio St.3d 212, 1997-Ohio-345. Contribution ⟶ 5(5)

Term "liable in tort," as used in statute affording a right to contribution in those instances where two or more persons become jointly liable in tort for same injury to person or property, is broad in scope and not suitable language for implying a narrow or restricted range of application within framework of potential tort defendants. Hayon v. Coca Cola Bottling Co. of New England, Mass.1978, 378 N.E.2d 442, 375 Mass. 644. Contribution ⟶ 5(2)

Word "liable" in Uniform Contribution Among Tortfeasors Act means "subject to suit" or "liable in court of law or equity." Tamashiro v. De Gama, Hawai'i 1969, 450 P.2d 998, 51 Haw. 74. Contribution ⟶ 5(2)

### 15. Same injury defined

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Phrase "same injury" in Uniform Contribution Among Tortfeasors Act refers to initial injury occasioned by jointly negligent parties and not to something definable in terms of who brings the suit. New Amsterdam Cas. Co. v. Holmes, C.A.1 (R.I.) 1970, 435 F.2d 1232. Contribution ⚷ 5(2)


16. Out-of-state judgment

Arizona version of Uniform Contribution Among Tortfeasors Act permits contribution claim based on out-of-state joint and several liability judgment, even though Arizona has abolished joint and several liability in most instances. Bill Alexander Ford, Lincoln Mercury, Inc. v. Casa Ford, Inc., Ariz.App. Div. 1 1996, 931 P.2d 1126, 187 Ariz. 616, review denied. Contribution ⚷ 5(1)


17. Comparative negligence system or scheme

Prohibition against use of comparative negligence concepts to reduce liability to plaintiff where one of multiple defendants has been found liable under principles of strict products liability is inapplicable to actions for contribution between multiple defendants where one but not all defendants has been found strictly liable. Smith v. Weissenfels, Inc., Pa.Super.1995, 657 A.2d 949, 441 Pa.Super. 328, reargument denied. Contribution ⚷ 7


Uniform Contribution Among Tortfeasors Act retains comparative negligence scheme and creates right of contribution in joint tort-feasor who pays more than pro-rata share of common liability for same injury. Neil v. Kavena, Ariz.App. Div. 1 1993, 859 P.2d 203, 176 Ariz. 93. Contribution ⚷ 6


Since 1987, each defendant is liable only for so much of plaintiff's damages as are allocated to that defendant and in proportion to defendant's percentage of fault and, thus, contribution is essentially unnecessary. Neil v. Kavena, Ariz.App. Div. 1 1993, 859 P.2d 203, 176 Ariz. 93. Contribution ⚷ 6


Under pure comparative negligence system, in cases involving more than one tort-feasor, an injured person bears risk of not recovering from a responsible tort-feasor who does not pay, for whatever reason. Wilson v. Galt, N.M.App.1983, 668 P.2d 1104, 100 N.M. 227, certiorari quashed 668 P.2d 308, 100 N.M. 192. Negligence ⚷ 549(1)


18. Common liability--In general

"Common liability," as used in Oklahoma statute providing for right of contribution among tort-feasors, includes liability of all parties and nonparties whom jury found to be tort-feasors. National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc., C.A.10 (Okla.) 1993, 992 F.2d 282. Contribution ⚷ 5(5)


This section does not require that multiple tort-feasors be liable under the same theories of recovery or that parties act in concert in order to be liable as multiple tort-feasors; it merely requires that multiple tort-feasors cause or contribute to the same injuries sustained by plaintiff. In re Jones, C.A.10 (Okla.) 1986, 804 F.2d 1133.


Under Tennessee law, right of contribution only exists between parties who share common obligation or liabil-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ity. First American Title Ins. Co. v. Cumberland County Bank, M.D.Tenn.2009, 633 F.Supp.2d 566. Contribution ⟰ 5(5)

Oklahoma's contribution statute, under which an action for contribution lies when two or more persons become jointly or severally liable "in tort" for same injury to person or property, does not require party seeking contribution to be liable under same legal theory as party from whom they are seeking contribution. North American Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc., E.D.Okla.2007, 511 F.Supp.2d 1091. Contribution ⟰ 5(5)

Where two or more persons owe to another same duty, and by their common neglect that party is injured, joint tort has occurred, creating right of contribution under Pennsylvania law. Travelers Indem. Co. v. Stedman, E.D.Pa.1995, 895 F.Supp. 742. Contribution ⟰ 5(5)

Under Connecticut law, right to contribution only arises among concurrent tort-feasors where person from whom contribution is sought is actively negligent party. Richardson v. John F. Kennedy Memorial Hosp., E.D.Pa.1993, 838 F.Supp. 979. Contribution ⟰ 5(4)

To be subject to joint tort-feasor liability under Pennsylvania Uniform Contribution Among Joint Tort-Feasors Act, parties must either act together in committing wrong or their acts, if independent of each other, must unite in causing single injury. Allen Organ Co. v. Galanti Organ Builders, Inc., E.D.Pa.1992, 798 F.Supp. 1162, 25 U.S.P.Q.2d 1510, affirmed 995 F.2d 215, 27 U.S.P.Q.2d 1398. Contribution ⟰ 5(1)

In order for an action for contribution to lie, joint tort-feasors must share a common liability to the injured party. Youell v. Maddox, D.Del.1988, 692 F.Supp. 343. Contribution ⟰ 5(5)

Contribution is only available where joint liability can be imposed. State of Colo. v. ASARCO, Inc., D.C.Colo.1985, 608 F.Supp. 1484. Contribution ⟰ 5(5)

In Pennsylvania, contribution is authorized only among joint tort-feasors. Banks Tower Communications, Ltd. v. Home Ins. Co., D.C.Pa.1984, 590 F.Supp. 1038. Contribution ⟰ 5(1)

In Rhode Island, contribution is generally available between joint tort-feasors for negligent acts that are the concurring causes of plaintiff's injury. Testa v. Winquist, D.C.R.I.1978, 451 F.Supp. 388. Contribution ⟰ 5(1)

Under South Dakota law, contribution is device through which portion of liability can be shifted, but party is entitled to contribution only when there is joint or several liability, and the mere fact of concurrent negligence or fault does not give rise to right of contribution. Parker v. Stetson-Ross Mach. Co., Inc., D.C.S.D.1977, 427 F.Supp. 249. Contribution ⟰ 5(5)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Indispensible to joint tort-feasor relationship is a common liability, either joint or several, that two or more parties have to the person injured and without this dual liability no right of contribution can exist under applicable Delaware law. ICI America, Inc. v. Martin-Marietta Corp., D.C.Del.1974, 368 F.Supp. 1148. Contribution ⌬ 5(5)

Contribution is available between concurrent tort-feasors under Iowa law only when they share common liability to injured party. Sorensen v. Morbark Industries, Inc., N.D.Iowa 1993, 153 F.R.D. 144, reversed 43 F.3d 674. Contribution ⌬ 5(5)

Under Delaware law, issue of contribution is contingent on a determination of whether defendants share a common liability to plaintiffs arising out of a single injury, and are, therefore, joint tort-feasors. Hood v. McConemy, D.C.Del.1971, 53 F.R.D. 435. Contribution ⌬ 5(5)

"Contribution" rests on common liability, not on joint negligence or joint tort, while "common liability" exists when two or more actors are liable to injured party for same damages, even though their liability may rest on different grounds. Parler & Wobber v. Miles & Stockbridge, Md.2000, 756 A.2d 526, 359 Md. 671. Contribution ⌬ 5(5)

Pennsylvania law authorizes contribution only among joint tort-feasors. Kemper National P & C Companies v. Smith, Pa.Super.1992, 615 A.2d 372, 419 Pa.Super. 295. Contribution ⌬ 5(5)

Right to contribution, which concurrent wrongdoer may have from another culpable party, arises from the duty each of the wrongdoers owes to the injured party. Board of Trustees of Baltimore County Community Colleges v. RTKL Associates, Inc., Md.App.1989, 559 A.2d 805, 80 Md.App. 45, certiorari granted 565 A.2d 1033, 317 Md. 609, certiorari dismissed 572 A.2d 167, 319 Md. 274. Contribution ⌬ 5(1)

Joint or several negligence will not suffice to impose contribution under Uniform Contribution Among Tort-Feasors Act if legal relationship between plaintiffs and all defendants against whom contribution is asserted is not the same. Farrall v. Armstrong Cork Co., Del.Super.1983, 457 A.2d 763. Contribution ⌬ 5(1)

Under the Joint Tortfeasor's Contribution Act, a defendant whose responsibility arises out of strict liability and another defendant whose responsibility is due to negligence may be joint tortfeasors. Cartel Capital Corp. v. Fireco of New Jersey, N.J.1980, 410 A.2d 674, 81 N.J. 548. Contribution ⌬ 5(1)

In order to recover on claim for contribution it is necessary to establish that defendant was jointly or severally liable in tort. Stone & Webster Engineering Corp. v. Heyl & Patterson, Inc., Pa.Super.1978, 395 A.2d 1359, 261 Pa.Super. 150. Contribution ⌬ 5(5)

True test for contribution is joint liability, not joint, common or concurrent wrongs. Neveroski v. Blair, N.J.Super.A.D.1976, 358 A.2d 473, 141 N.J.Super. 365. Contribution ⌬ 5(5)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Under statute establishing right of contribution among joint tort-feasors, liability must be common to warrant contribution. Cacchillo v. H. Leach Machinery Co., R.I.1973, 305 A.2d 541, 111 R.I. 593. Contribution ⚷ 5(5)

Action for contribution under Joint Tortfeasors Act will lie only when proposed contributor shares with defendant a common liability to plaintiff. Mumford v. Robinson, Del.Supr.1967, 231 A.2d 477. Contribution ⚷ 5(2)

Definition of "joint tort-feasors" embraces successive wrongdoers liable for same harm though one may be also liable for additional damages. Trieschman v. Eaton, Md.1961, 166 A.2d 892, 224 Md. 111. Contribution ⚷ 5(2)

Joint or several liability, rather than joint or concurring negligence determines right to contribution under this Act entitling joint tort-feasor to money judgment for contribution after he has by payment, discharged "common liability," or has paid more than his pro rata share thereof. Lutz v. Boltz, Del.Super.1953, 100 A.2d 647, 48 Del. 197. Contribution ⚷ 5(3)

Statutes regarding joint tort-feasors permit a defendant under certain circumstances to recover as contribution from the other tort-feasor a portion of the damages paid to the plaintiff. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ⚷ 5(1)

Contribution requires the parties to share the liability or burden and is appropriate where there is a common liability among the parties. Dehn v. Prouty, S.D.1982, 321 N.W.2d 534. Contribution ⚷ 5(5)

In light of legislature's virtual elimination of joint liability, there is no right of contribution when single tort-feasor settles plaintiff's claim against him, as there is no common liability to discharge. Cella Barr Associates, Inc. v. Cohen, Ariz.App. Div. 1 1994, 868 P.2d 1063, 177 Ariz. 480. Contribution ⚷ 5(5)

Term "common liability," within meaning of Uniform Contribution Among Tort-Feasors Act section providing that right of contribution exists only in favor of tort-feasor who has paid more than his pro rata share of common liability, contemplates that tort-feasors have some shared liability. Cella Barr Associates, Inc. v. Cohen, Ariz.App. Div. 1 1994, 868 P.2d 1063, 177 Ariz. 480. Contribution ⚷ 5(5)

"Common liability," within meaning of Uniform Contribution Among Tortfeasors Act, meant dollar amount shared by joint tort-feasors for which they were legally answerable, which equaled amount of total damages sustained by plaintiff and caused by negligence of all defendants. Parker v. Vanell, Ariz.1992, 824 P.2d 746, 170 Ariz. 350. Contribution ⚷ 5(5)

Contribution comes from those jointly or severally liable for same injury to person or property arising out of common liability. Garner v. Hickman, Wyo.1985, 709 P.2d 407. Contribution ⚷ 5(5)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Under Uniform Contribution Among Tortfeasors Act [C.R.S. 13-50.5-102(1)], "common liability" giving rise to right of contribution exists only when tort-feasors are "jointly or severally liable in tort for the same injury"; this phrase denotes situation in which each tort-feasor may be held liable for entire damages arising from single injury. Kussman v. City and County of Denver, Colo.1985, 706 P.2d 776. Contribution ☜ 5(5); Torts ☜ 135

Tort-feasor's proportionate share of liability cannot be considered "common liability" under Uniform Contribution Among Tortfeasors Act [C.R.S. 13-50.5-102] where that share of liability has been severed from entire liability arising from plaintiff's injury. Kussman v. City and County of Denver, Colo.1985, 706 P.2d 776. Contribution ☜ 5(5)

The obligation of the Uniform Contribution Among Tortfeasors Act to contribute toward a payment of a judgment is predicated on joint or several liability. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676. Contribution ☜ 5(2)

When multiple parties are responsible for the same injury, and all are found liable, each and every one of them is a joint tort-feasor and is required by the Uniform Contribution Among Tortfeasors Act to contribute his pro rata share of judgment against them all. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676. Contribution ☜ 7

This Act is applicable only where joint tort-feasors share a common liability. Beal by Boatwright v. Southern Union Gas Co., N.M.1956, 304 P.2d 566, 62 N.M. 38. Contribution ☜ 5(5)

The basic premise of contribution is commonality; thus, "common liability," rather than joint negligence, determines the right to contribution. Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp., S.C.App.1999, 518 S.E.2d 301, 336 S.C. 53. Contribution ☜ 5(1)

Statutory right to contribution does not exist unless two or more parties are "joint tort-feasors," which occurs when parties' negligent or wrongful acts are united in time or circumstance such that two acts constitute one transaction or when two separate acts concur in point of time and place to cause single injury. State Farm Mut. Auto. Ins. Co. v. Holland, N.C.1989, 380 S.E.2d 100, 324 N.C. 466. Contribution ☜ 5(1)

Tort-feasors, acting independently, are jointly liable to a plaintiff, and liable to each other in contribution, only when the independent acts of each cause or contribute to the same injury obtained by plaintiff. Applegate v. Riggall, Ark.1958, 318 S.W.2d 596, 229 Ark. 773. Contribution ☜ 5(1); Negligence ☜ 484

This Act contemplates right of contribution only where there is a common liability to an injured person in tort or to persons who are liable in tort for same injury to person or property. C & L Rural Elec. Co-op. Corp. v. Kincaid, Ark.1953, 256 S.W.2d 337, 221 Ark. 450. Contribution ☜ 5(2)

Where a defendant is found 100% liable for the plaintiff's damages, the settling defendant who is not found li-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

able cannot be considered a joint tortfeasor, for purposes of contribution and setoff. Gouty v. Schnepel, Fla.2001, 795 So.2d 959. Contribution ☞ 5(5); Damages ☞ 63

**19.** ---- Nature of conduct of joint tortfeasors, common liability

Distinctions between nature of conduct of joint tort-feasors does not preclude finding of common liability for contribution purposes. Dykes v. Raymark Industries, Inc., C.A.6 (Tenn.) 1986, 801 F.2d 810, certiorari denied 107 S.Ct. 1975, 481 U.S. 1038, 95 L.Ed.2d 815. Contribution ☞ 5(5)

Finding of joint liability does not require identical standards of conduct on part of tort-feasors; contribution, if otherwise permissible, is available to joint tort-feasors as long as injury is caused by concurrent, albeit independent, conduct. Dykes v. Raymark Industries, Inc., C.A.6 (Tenn.) 1986, 801 F.2d 810, certiorari denied 107 S.Ct. 1975, 481 U.S. 1038, 95 L.Ed.2d 815. Contribution ☞ 5(5)

Where negligence of "master" of motorboat in permitting plaintiff to ride elsewhere than in the rear seat of the boat was passive while the negligence of the operator of the boat was active, the operator was not entitled to any indemnity or contribution from "master" for jury award to passenger injured in motorboat accident on the Arkansas river. St. Hilaire Moye v. Henderson, D.C.Ark.1973, 364 F.Supp. 1286, affirmed 496 F.2d 973, certiorari denied 95 S.Ct. 151, 419 U.S. 884, 42 L.Ed.2d 125. Contribution ☞ 5(6.1); Indemnity ☞ 69

**20.** ---- Severable acts of tortfeasors, common liability

If acts of parties are severable as to time, neither has the opportunity to guard against the other's acts, and each breach is a different duty owed to an injured plaintiff, parties cannot be considered joint tort-feasors. TVSM, Inc. v. Alexander & Alexander, Inc., D.C.Pa.1984, 583 F.Supp. 1089. Contribution ☞ 5(1)

Under Pennsylvania law, two persons are not acting jointly for purposes of committing joint tort if acts of original wrongdoer and joint tort-feasor are severable as to time, neither having opportunity to guard against other's acts and each breaching different duty owed to plaintiff. Tesch v. U. S., D.C.Pa.1982, 546 F.Supp. 526. Contribution ☞ 5(1)

Tort-feasor originally causing injury and physician who subsequently aggravates or causes new injury are not joint tort-feasors. Lasprogata v. Qualls, Pa.Super.1979, 397 A.2d 803, 263 Pa.Super. 174. Contribution ☞ 5(6.1)

Any liability of either cleaning company or manufacturer of floor buffers for fire in store, which occurred when one cleaning employee started floor scrubber in same area of store in which another employee was bleeding floor buffers' propane tanks, was several, not joint, where no concerted action was claimed, and therefore cleaning company could not be liable to store owner for more than its percentage share of owner's damages, and cleaning company could not make third-party claim for contribution against manufacturer which had not been sued by store. Target Stores, a Div. of Dayton Hudson Corp. v. Automated Maintenance Services, Inc., N.D.1992, 492 N.W.2d 899. Contribution ☞ 5(6.1); Contribution ☞ 7

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Comparative fault doctrine precluded hospital from pursuing contribution claim against surgeon under Uniform Contribution Among Tort-feasors Act after hospital settled malpractice suit by patient, where duties and responsibilities of nurses were distinctly different from those of surgeon and patient's allegations against them concerned separate and unrelated actions so they could not be deemed to have been acting collectively or in concert. Smith v. Methodist Hospitals of Memphis, Tenn.Ct.App.1999, 995 S.W.2d 584, appeal denied, rehearing of denial of appeal denied. Contribution 🗝 5(6.1)


21. ---- Right of action against and direct liability of both joint tortfeasors, common liability

Under South Dakota law the right to contribution is determined by whether there is joint or several liability, rather than by the presence of joint or concurring negligence, so that there can be no right to contribution unless the injured party has a possible remedy against both tort-feasors. Highway Const. Co. v. Moses, C.A.8 (S.D.) 1973, 483 F.2d 812. Contribution 🗝 5(5)


When plaintiff has no right of action against third party, there can be no contribution entitling defendant to join third party as defendant under Maryland Uniform Contribution Among Tort-Feasors Act, notwithstanding fact that liability under Act may be joint or several. Pyramid Condominium Ass'n v. Morgan, D.C.Md.1985, 606 F.Supp. 592. Contribution 🗝 5(5)


Contribution may be had against a person where original plaintiff could have enforced a liability against him. In re All Asbestos Cases, D.C.Hawai'i 1984, 603 F.Supp. 599. Contribution 🗝 5(5)


Since any claim by owner of electric transmission line directly against engineering firm which ordered allegedly defective brackets would be barred by Massachusetts limitation statute, the defendant manufacturer could not prevail on its third-party claim against the engineering firm for contribution. Montaup Elec. Co. v. Ohio Brass Corp., D.C.R.I.1983, 561 F.Supp. 740. Contribution 🗝 5(6.1)


Under Massachusetts law, supplier of allegedly defective brackets used on electric transmission line had right of contribution from engineering firm which designed the line and ordered the brackets only if the engineering firm could be held directly liable to the line owner. Montaup Elec. Co. v. Ohio Brass Corp., D.C.R.I.1983, 561 F.Supp. 740. Contribution 🗝 5(6.1)


Duty which contractor owed to building owner as alleged in material supplier's third-party complaint against contractor did not defeat material supplier's right of contribution but was essential to it, and if both material supplier and contractor each breached duties owed to building owner each became liable to building owner and a right of contribution arose. ICI America, Inc. v. Martin-Marietta Corp., D.C.Del.1974, 368 F.Supp. 1148. Contribution 🗝 5(6.1)


Defendant in personal injury case could not proceed for contribution against operator of automobile in which plaintiff passenger rode at time of accident where plaintiff and third-party defendant were coemployees, inasmuch as plaintiff could not under Delaware statute bring direct negligence against coemployee, notwithstanding that plaintiff had not applied for or received workmen's compensation. Walker v. Patterson, D.C.Del.1971, 325

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

F.Supp. 1024. Contribution ☞ 5(7)

Under Delaware law, there can be no contribution unless there is common liability to injured person and unless injured person has possible remedy against two or more persons. Walker v. Patterson, D.C.Del.1971, 325 F.Supp. 1024. Contribution ☞ 5(5)

Provisions of Uniform Contribution Among Joint Tortfeasors Act are only applicable where there is a common liability to an injured person, and this common liability may be either joint or several, but there can be no contribution unless the injured person has a right of action in tort against both the parties seeking contribution and the party from whom contribution is sought. Rowe v. John C. Motter Printing Press Co., D.C.R.I.1967, 273 F.Supp. 363. Contribution ☞ 5(2)

In view of definition of "joint tort-feasors", before there can be any kind of contribution it must appear that at least originally the person seeking contribution and person from whom contribution is sought must have been under a common legal liability to injured party, so that there can be no contribution where injured party had no cause of action originally against party sought to be charged. Cox v. Maddux, D.C.Ark.1966, 255 F.Supp. 517, reversed 382 F.2d 119. Contribution ☞ 5(2)

Generally, right to contribution can arise only against joint tort-feasor who is himself directly liable to the injured party. LaChance v. Service Trucking Co., D.C.Md.1963, 215 F.Supp. 162. Contribution ☞ 5(5)

Under Pennsylvania law, contribution is permitted between joint tort-feasors even when the injured party has no cause of action against one of them on the theory that as between two tort-feasors contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done. Panichella v. Pennsylvania R. Co., D.C.Pa.1958, 167 F.Supp. 345, reversed 268 F.2d 72, certiorari denied 80 S.Ct. 370, 361 U.S. 932, 4 L.Ed.2d 353. Contribution ☞ 5(1)

This Act is only applicable where there is a common liability to an injured person in tort, which liability may be joint or several, but there can be no contribution where injured person has no right of action against the third party defendant; the right of contribution being a derivative right and not a new cause of action. Oahu Ry & Land Co v. U S, D.C.Hawai'i 1947, 73 F.Supp. 707. Contribution ☞ 5(2)

Supplier of roofing system for school building could not make a claim against installer of roof for contribution in school board's breach of warranty suit due to lack of any right of action on part of board against installer in tort. Board of Educ. of Charles County v. Plymouth Rubber Co., Md.App.1990, 569 A.2d 1288, 82 Md.App. 9, certiorari denied 578 A.2d 778, 320 Md. 505. Contribution ☞ 5(5)

Manufacturer of defectively designed snowplow was not entitled to contribution from plow's user for amounts paid to survivors of deceased motorist; plow user was not directly liable to motorist's survivors in light of motorist's contributory negligence. Montgomery County v. Valk Mfg. Co., Md.1989, 562 A.2d 1246, 317 Md. 185. Contribution ☞ 5(6.1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Uniform Contribution Among Tort-Feasors Act as enacted in Maryland is predicated on wrongdoer's direct liability to plaintiff, and where law shields one of two wrongdoers with defense of contributory negligence the Act does not remove that shield. Montgomery County v. Valk Mfg. Co., Md.1989, 562 A.2d 1246, 317 Md. 185. Contribution ⟐ 5(5)

Developer of condominium and design architect could not maintain indemnity or contribution claim for water damage to condominium caused by defective exterior walls against designer of brick veneer, curtain wall system based on negligent misrepresentations allegedly contained in publication issued by designer of curtain wall system to promote its product; designer's publication specified use of designer's products in erection of curtain wall system, and it was undisputed that designer's products were neither specified nor used in structural portions of condominium's curtain wall system. Village of Cross Keys, Inc. v. U.S. Gypsum Co., Md.1989, 556 A.2d 1126, 315 Md. 741. Contribution ⟐ 5(6.1); Indemnity ⟐ 67

Since partnership of attorneys had done no wrong, it could not be held liable in contribution for a partner's conversion of client's funds into partner's personal bank account. Levy v. First Pennsylvania Bank N.A., Pa.Super.1985, 487 A.2d 857, 338 Pa.Super. 73, appeal granted. Contribution ⟐ 5(6.1)

In order for tort-feasor to be entitled to contribution from another tort-feasor whose negligence has concurred in producing injury to third person, such third person must have an enforceable cause of action not only against tort-feasor seeking contribution but also against one from whom contribution is sought. Rigsby v. Tyre, Del.Super.1977, 380 A.2d 1371. Contribution ⟐ 5(5)

There can be no contribution unless injured party has a right of action in tort against both parties seeking contribution and party from whom contribution is sought. Cacchillo v. H. Leach Machinery Co., R.I.1973, 305 A.2d 541, 111 R.I. 593. Contribution ⟐ 5(5)

Telephone company whose employee was electrocuted while installing cable at university was not liable to university for contribution, as joint tort-feasor, for any amount recovered against university in action brought by widow of deceased employee in that, in order to enforce contribution, joint tort-feasors must be liable to same person asserting the claim. Diamond State Tel. Co. v. University of Del., Del.Supr.1970, 269 A.2d 52. Contribution ⟐ 5(6.1)

Deed provision making conveyance subject to rights of adjoining owners in party walls gave purchaser constructive, if not actual, notice of existence of wall; and vendors who had not created alleged dangerous condition or nuisance would not be liable for contribution or indemnity, even if purchaser was held liable for injuries to infant playing on or near wall when it collapsed almost four years after sale. Hut v. Antonio, N.J.Super.L.1967, 229 A.2d 823, 95 N.J.Super. 62. Contribution ⟐ 5(6.1); Indemnity ⟐ 64; Vendor And Purchaser ⟐ 230(1)

This Act is applicable only to a situation where there is a common liability to an injured person in tort, and there can be no contribution where the injured person has no right of action against the third-party defendant. Ennis v.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 4457-40   Filed 11/01/11   Page 50 of 175

Donovan, Md.1960, 161 A.2d 698, 222 Md. 536. Contribution ⚷ 5(2)

One tort-feasor may recover contribution even if, for one reason or another, plaintiff who has obtained judgment against both is precluded from enforcing liability thereunder against the other. Puller v. Puller, Pa.1955, 110 A.2d 175, 380 Pa. 219. Contribution ⚷ 9(1)

This Act has no application unless there is a common liability to the injured party which liability may be joint or several and there is no right to contribution unless the injured person has a possible remedy against two or more persons. Ferguson v. Davis, Del.Super.1954, 102 A.2d 707, 48 Del. 299. Contribution ⚷ 5(2)

City hospital trustees could not be held liable as joint tort-feasor for contribution to hospital management company for amounts city employee who fell on wet hospital floor recovered against management company, where trustees were not, by statute, separate entity apart from that of city and thus could not have been held liable in tort to city employee. Hurley v. Codman Management Co., Inc., Mass.App.Ct.1989, 538 N.E.2d 39, 27 Mass.App.Ct. 1136. Contribution ⚷ 5(6.1)

Action for contribution is not barred if, at time tortious activity occurred, parties from whom contribution is sought could have been held liable in tort. McGrath v. Stanley, Mass.1986, 493 N.E.2d 832, 397 Mass. 775. Contribution ⚷ 5(5)

No cause of action for contribution can accrue against a person who has no liability to the plaintiff. Phillips v. Heffern, Ohio Com.Pl.1983, 464 N.E.2d 195, 11 Ohio Misc.2d 25, 11 O.B.R. 311. Contribution ⚷ 5(5)

Language of statute providing that when two or more persons become jointly liable in tort for same injury to person or property, there shall be right of contribution among them requires that potential contributor be directly liable to plaintiff. Liberty Mut. Ins. Co. v. Westerlind, Mass.1978, 373 N.E.2d 957, 374 Mass. 524. Contribution ⚷ 5(2)

Under theory of left-turning motorist that other motorists were engaged in a joint racing venture, there could have been no liability running from one of the drag racing motorists to the other, and thus from one of the drag racing motorists to the left-turning motorist and drag racing motorist was entitled to directed verdict on left-turning motorist's claim for contribution in action brought by other drag racing motorist. Burrington v. Heine, S.D.1974, 215 N.W.2d 119, 88 S.D. 65. Contribution ⚷ 9(7)

Right to contribution under this Act depends upon existence of joint or several liability and not upon joint or concurrent negligence and there is no right to contribution unless injured party has a possible remedy against two or more persons. Burmeister v. Youngstrom, S.D.1965, 139 N.W.2d 226, 81 S.D. 578. Contribution ⚷ 5(3)

There is no right to contribution from one who is not liable in tort to injured person. Coleman v. Texaco, Inc.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Ark.1985, 688 S.W.2d 741, 286 Ark. 14. Contribution ☞ 5(5)

22. ---- Likelihood of success of injured party in tort action, common liability

"Common liability" in context of contribution refers to joint causing of damage or injury and not to actual likelihood of success in tort action. Home Ins. Co. v. Advance Mach. Co., Fla.App. 1 Dist.1986, 500 So.2d 664. Contribution ☞ 5(5)

23. ---- Relationship between joint tortfeasors themselves, common liability

Right of contribution must arise from the duty each of the wrongdoers owes to the injured party and not from any obligations of the wrongdoers among themselves. Fischbach & Moore Intern. Corp. v. Crane Barge R-14, C.A.4 (Md.) 1980, 632 F.2d 1123. Contribution ☞ 5(1)

Even assuming that antitrust conspiracy defendant had to have actually injured instant plaintiffs to be an intentional tortfeasor barred from contribution under Ohio statute, tort liability which was element of contribution claim necessarily entailed that defendant did cause such injury; as necessary element of contribution claim, defendants had to be jointly and severally liable in tort for same injury, and the only common injury which they allegedly caused to plaintiffs was from conspiracy. Pinney Dock & Transport Co. v. Penn Cent. Corp, N.D.Ohio 1998, 991 F.Supp. 908, affirmed 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution ☞ 5(6.1)

In principle, right of contribution rests upon common liability of wrongdoers for loss notwithstanding fact that liability of each wrongdoer may rest on different ground; however, any entitlement to contribution which a concurrent wrongdoer may have from another culpable party arises from duty each of wrongdoers owes to injured party, as opposed to obligation running among themselves. Fischbach & Moore Intern. Corp. v. Crane Barge R 14, D.C.Md.1979, 476 F.Supp. 282, affirmed 632 F.2d 1123. Contribution ☞ 5(5)

Relationship among themselves of those liable to injured party or a common basis of liability is not a factor in determining eligibility under Uniform Contribution Among Tortfeasors Act. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Contribution ☞ 5(2)

Adoption of Contribution Among Joint Tortfeasors Act did not abolish doctrine of joint and several liability; statute spoke only to relationship between or among joint tort-feasors themselves, not relationship between joint tort-feasor and plaintiff. Bowling v. Heil Co., Ohio 1987, 511 N.E.2d 373, 31 Ohio St.3d 277, 31 O.B.R. 559. Torts ☞ 135

Basis for contribution lies in the relationship between tort-feasors themselves, not on their common liability to the injured party. Nationwide Mut. Ins. Co. v. Marcinko, Ohio Com.Pl.1980, 436 N.E.2d 551. Contribution ☞ 5(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

24. ---- Aggravation of injury by another tortfeasor, common liability

Motorist is not entitled to contribution, indemnity, or subrogation from treating chiropractor for amounts paid to injured plaintiff as result of injuries stemming from accident and subsequent treatment. Kemper National P & C Companies v. Smith, Pa.Super.1992, 615 A.2d 372, 419 Pa.Super. 295. Contribution ☞ 5(6.1); Indemnity ☞ 65; Subrogation ☞ 2

Tort-feasor originally causing injury and physician who subsequently aggravates or causes new injury are not joint tort-feasors. Harka v. Nabati, Pa.Super.1985, 487 A.2d 432, 337 Pa.Super. 617, appeal denied. Contribution ☞ 5(6.1)

25. ---- Time of common liability

It is common liability at the time of the accrual of plaintiff's cause of action which is the since qua non of defendant's contribution right; if there is common liability to plaintiff at that time, that is common liability as a matter of fact even though then unadjudicated, defendant cannot be deprived of his inchoate right by reason of plaintiff's loss thereafter of his own right of direct action against the joint tortfeasor. Markey v. Skog, N.J.Super.L.1974, 322 A.2d 513, 129 N.J.Super. 192. Contribution ☞ 5(5)

Common liability for contribution purposes is determinable as of the date of accrual of plaintiff's claim. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676.

26. ---- Common liability found in particular cases

Negligent and strictly liable tort-feasors were "joint tort-feasors" subject to contribution where each had opportunity to prevent plaintiff's injuries and each of the tort-feasor's acts combined to produce single, indivisible harm; overruling Rhoads v. Ford Motor Co., 374 F.Supp. 1317 (W.D.Pa.). Rabatin v. Columbus Lines, Inc., C.A.3 (Pa.) 1986, 790 F.2d 22. Contribution ☞ 5(1)

Testimony that, even though building remained under building owner's control, contractor had ultimate responsibility for barricading elevators and having elevators shut down when barricades were not in place and evidence that subcontractor's employee was injured when he fell into open elevator shaft sustained finding that both the building owner and the contractor were negligent so that building owner was entitled to contribution from contractor, for certain amounts recovered from building owner by injured sub-subcontractor's employee and his wife. Hattersley v. Bollt, C.A.3 (Pa.) 1975, 512 F.2d 209. Contribution ☞ 9(6)

To the extent a shipowner proves that payments made in satisfaction of a maintenance and cure obligation have reduced or eliminated a concurrent claim which a seaman, but for prohibition against double recovery, could assert against another party absent a release, shipowner is entitled to reimbursement from other party in such amount as will cause the ultimate liability to be placed: (1) by means of contribution, equally upon all shipowners with coextensive maintenance and cure obligations; or (2) by means of exoneration, fully upon the party with a primary obligation in damages arising out of negligence, unseaworthiness, or other violation of duty. Gooden v. Sinclair Refining Co., C.A.3 (Pa.) 1967, 378 F.2d 576. Contribution ☞ 3; Indemnity ☞ 69

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Doctors who treated accident victim at same time, if found negligent, would qualify as joint tort-feasors under the Uniform Contribution Among Tort-Feasors Act, as each would have opportunity to guard against negligence of the other. Wilson v. Krasnoff, R.I.1989, 560 A.2d 335. Contribution ☞ 5(6.1)

Retailer was entitled to contribution under Joint Tortfeasor's Contribution Act, where it had negligently serviced fire-extinguishing system and had sold defective system manufactured by defendant, since damages resulted from wrongful act, neglect or default of both retailer and manufacturer. Cartel Capital Corp. v. Fireco of New Jersey, N.J.1980, 410 A.2d 674, 81 N.J. 548. Contribution ☞ 5(6.1)

Where city acquired property by treasurer's sale for unpaid taxes and legal title was taken in name of city alone but county and school district also had tax claims against property, county and school district were liable along with the city for injuries sustained by pedestrian in a fall on sidewalk adjacent to such property for alleged negligence in maintenance of sidewalk although city acted as trustee for county and school district, and county and school district were obligated to contribute their share of judgment recovered by pedestrian in accordance with their interest in property at time of acquisition of property by city. Osborne v. City of Pittsburgh, Pa.Super.1960, 161 A.2d 636, 192 Pa.Super. 387. Contribution ☞ 7; Municipal Corporations ☞ 814

Where Commonwealth's negligence with respect to injury college student suffered when he jumped off ladder was independent of ladder manufacturer's negligent and defective design, ladder manufacturer was entitled to contribution from Commonwealth as joint tort-feasor; Commonwealth's negligence consisted of failing to keep people off ladder in accordance with college policy. Economy Engineering Co. v. Com., Mass.1992, 604 N.E.2d 694, 413 Mass. 791. Contribution ☞ 5(6.1)

Other motorist was entitled to contribution by passenger's driver, under Uniform Contribution Among Tortfeasors Act, in passenger's negligence action against driver and other motorist, where other motorist filed cross-claim for contribution. Muscatell v. Muscatell, N.C.App.2001, 550 S.E.2d 836, 145 N.C.App. 198, review denied 556 S.E.2d 574, 354 N.C. 364. Contribution ☞ 5(7)

The "entire liability" as used in the Uniform Contribution Among Tortfeasors Act refers to the responsibility born by all of the tortfeasors who contributed to any degree to the original plaintiff's injury. Healthcare Staffing Solutions, Inc. v. Wilkinson ex rel. Wilkinson, Fla.App. 1 Dist.2009, 5 So.3d 726, rehearing denied. Contribution ☞ 5(1)

Track owner's contribution claim against veterinarian/trainer arose out of same transaction or occurrence, namely race during which horse fractured leg, such that track owner could assert claim against veterinarian/trainer, where horse owner's claim was based on allegation that track owner was negligent in failing to provide safe track, track owner in turn alleged that veterinarian/trainer was negligent in failing to inspect track and allowing horse to run on unstable track, and track owner and veterinarian/trainer might share common liability for injury. Gulfstream Park Racing Ass'n, Inc. v. Gold Spur Stable, Inc., Fla.App. 4 Dist.2002, 820 So.2d 957, rehearing denied , review denied 842 So.2d 845. Contribution ☞ 5(6.1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**27.** ---- Common liability not found in particular cases

Third parties seeking contribution for damages arising from incident in which transformers were damaged while being loaded on vessel did not establish that transformer manufacturer failed to exercise reasonable care, where evidence indicated that manufacturer upon being notified that stenciled weights of the transformers were erroneous, rechecked the accuracy of the stencilled figures and notified buyer of discrepancies. Fischbach & Moore Intern. Corp. v. Crane Barge R-14, C.A.4 (Md.) 1980, 632 F.2d 1123. Contribution ☞ 9(6)

Under Florida law, manufacturer, as third-party tort-feasor, was not entitled to contribution from the United States, the injured plaintiff's employer, since the parties were not under common liability, the former's liability resting on negligence principles, the latter's imposed by the Federal Employees' Compensation Act and, hence, they could not be jointly and severally liable. Prather v. Upjohn Co., D.C.Fla.1984, 585 F.Supp. 112. Contribution ☞ 5(6.1)

Where outcome of claim of defendant United States against third-party defendant was not derivative of or determined by outcome of plaintiff's claim against United States, there was allegation of separate and not joint torts, and, under Pennsylvania law, contribution was not appropriate. Tesch v. U. S., D.C.Pa.1982, 546 F.Supp. 526. Contribution ☞ 5(6.1)

Where certain riparian landowners were guilty of fault in causing oil to coat a navigable river, and a shipowner was guilty of fault under the Jones Act, 46 U.S.C.A. § 688, in placing a lighted lantern too near to the water, and such conjunction of fault caused the death of one of shipowner's seamen, and resulted in shipowner's liability under the Jones Act for the wrongful death of such seaman, and the shipowner and the landowners were in fact and in legal contemplation total strangers, under such circumstances, there was no right of contribution between the parties, and neither could an indemnitor's liability be imposed on the landowners after shipowner paid damages for the injury caused by the active and concurring wrongs of shipowner and landowners. American Dredging Co. v. Gulf Oil Corp., D.C.Pa.1959, 175 F.Supp. 882, affirmed 282 F.2d 73, certiorari denied 81 S.Ct. 460, 364 U.S. 942, 5 L.Ed.2d 373, rehearing denied 81 S.Ct. 746, 365 U.S. 838, 5 L.Ed.2d 748. Contribution ☞ 5(6.1); Indemnity ☞ 69

Landlord who allegedly improperly maintained building causing victim to fall, and doctors who treated victim at different times, were not "joint tort-feasors" for purposes of Uniform Contribution Among Tortfeasors Act, as none had an opportunity to guard against negligence of others. Wilson v. Krasnoff, R.I.1989, 560 A.2d 335. Contribution ☞ 5(6.1)

Evidence was insufficient to establish that manufacturer's plant manager was a "designer" of conveyor which injured worker so as to allow manufacturer to bring cross claim against plant manager for contribution and indemnity; plant manager did no more than dictate size of conveyor and had no greater involvement in fabrication and installation of conveyor than would have been expected of plant manager of any company involved in purchase of new piece of equipment. C & K Lord, Inc. v. Carter, Md.App.1988, 536 A.2d 699, 74 Md.App. 68. Contribution ☞ 9(6); Indemnity ☞ 72

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Where defendant sued by injured worker failed to establish any causal connection between asbestos products supplied to employer and worker's condition, supplier of products was not liable to defendant for contribution, either on claim of direct liability or for alleged conspiracy regarding hazards of asbestos. Farrall v. Armstrong Cork Co., Del.Super.1983, 457 A.2d 763. Contribution ⟍ 5(6.1)

County, whose negligence was less than plaintiff's negligence and less than that of gas company whose negligence exceeded plaintiff's negligence, was not a "joint tortfeasor" for purposes of Joint Tortfeasors Contribution Law; thus, gas company was not entitled to contribution from county but was required to pay entire judgment minus deduction for plaintiff's contributory negligence. Nora v. Livingston Tp., N.J.Super.A.D.1980, 410 A.2d 278, 171 N.J.Super. 579. Contribution ⟍ 5(6.1)

Social companions of adult but underage drinker who was accidentally killed after becoming intoxicated owed no duty to prevent him from suffering consequences of his self-inflicted intoxication, and thus, because his estate would have no wrongful death claim against companions, owner and operator of tavern who were sued by estate for alleged wrongful death had no right of contribution as against companions, even if they facilitated decedent's illegal consumption of alcohol at tavern by supplying him with falsified identification that overstated his age. Panagakos v. Walsh, Mass.2001, 749 N.E.2d 670, 434 Mass. 353. Contribution ⟍ 5(6.1)

Corrections Department failed to show that electrical contractor was performing work in or around manhole cover near time at which inmate slipped and fell on unsecured manhole cover while crossing reformatory grounds and, therefore, Department was not entitled to indemnity or contribution; Department failed to show that contractor's agent ever used particular manhole. Harris v. Ohio Dept. of Rehab. & Corr., Ohio Ct.Cl.1989, 573 N.E.2d 213, 61 Ohio Misc.2d 21. Contribution ⟍ 5(6.1); Indemnity ⟍ 67

Nonsued tort-feasor, who did not act in concert with, nor aided or encouraged, a sued tort-feasor, nor ratified or adopted that tort-feasor's act, is not liable for contribution to sued tort-feasor in case involving claims of products liability or negligence. Target Stores, a Div. of Dayton Hudson Corp. v. Automated Maintenance Services, Inc., N.D.1992, 492 N.W.2d 899. Contribution ⟍ 5(5)

Motorist who had been found to be 15% at fault for collision with ambulance in which he was injured could not be considered joint tort-feasor along with ambulance company with respect to loss of consortium claim asserted by motorist's wife against ambulance company, and was not liable to ambulance company for contribution based on common liability; because wife had no claim against husband for loss of consortium, no common liability existed with respect to contribution claim. American Medical Intern., Inc. v. Feigel, Okla.App. Div. 1 1996, 918 P.2d 752, certiorari denied. Contribution ⟍ 5(6.1)

Defendant who was adjudicated not negligent was not a "tortfeasor" within meaning of the Uniform Contribution Among Tortfeasors Act and thus codefendant who was adjudicated negligent was not entitled to a setoff for the payment made by defendant to plaintiff in exchange for covenant not to execute and enforce judgment. Wesley v. United Services Auto. Ass'n, Colo.App.1984, 694 P.2d 855. Damages ⟍ 63

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Evidence sustain finding that none of the defendants acted as agents in connection with purchase of land and that none of plaintiffs were joint tort-feasors with any of the defendants with respect to the transaction, so that plaintiffs were not entitled to indemnity or contribution from defendants. Shahan v. Stryker, N.M.1976, 560 P.2d 540, 90 N.M. 119. Contribution ⇔ 9(6); Indemnity ⇔ 102

Where waterproofing compound was not inherently dangerous and manufacturer of compound did not have duty to warn architect of its use, compound would have been adequate if plans and specifications originally submitted by architect had been used and architect was negligent in changing plans without consulting manufacturer, in preparing faulty plans and in failing to adequately supervise application of waterproofing compound, manufacturer was not joint tort-feasor and was not responsible for architect's negligent acts and was not required to contribute to judgment obtained against architect for damage to building caused by faulty waterproofing. Standhardt v. Flintkote Co., N.M.1973, 508 P.2d 1283, 84 N.M. 796. Contribution ⇔ 5(6.1)

Where contractor breached its contract with owner, and engineer was 100% at fault for all damages incurred by the contractor and the owner, the court should have awarded the contractor a judgment against the engineer but not against the owner. Carroll-Boone Water Dist. v. M. & P. Equipment Co., Ark.1983, 661 S.W.2d 345, 280 Ark. 560. Contribution ⇔ 5(6.1)

Supplier of fertilizer spreader was not entitled to contribution from manufacturers where those parties were not joint tort-feasors and did not share common liability. Larson Mach., Inc. v. Wallace, Ark.1980, 600 S.W.2d 1, 268 Ark. 192. Contribution ⇔ 5(6.1)

Where there was no evidence, in negligence action against manufacturer, supplier, and owner of swinging-stage scaffold from which plaintiff's decedent fell nine stories to his death when defective eye loop end of support cable gave way, that scaffold cable was ever returned to supplier for replacement or repair work or that manufacturer had purchased its cable from manufacturer shown to have manufactured cable with defective eye loop, scaffold owner was not entitled to contribution against supplier or manufacturer. W. E. Clark & Sons, Inc. v. Elliott, Ark.1972, 475 S.W.2d 514, 251 Ark. 853. Contribution ⇔ 5(6.1)

Since third-party action against the Department of Transportation asserting that the Department negligently maintained storm drainage system so as to wrongfully divert and disburse large volumes of surface water onto third-party plaintiff's land in a concentrated stream was predicated upon design, maintenance and operation of storm water drainage system and no other entity had been alleged or shown to share Department's responsibility in that regard, allegations established that the Department bore singular burden and potential liability under that complaint and the Department could not maintain a third-party action for contribution against various landowners and users. Department of Transp. v. Hanes, Fla.App. 1 Dist.1984, 448 So.2d 1130, petition for review denied 458 So.2d 271. Contribution ⇔ 5(6.1); Highways ⇔ 120(2)

28. ---- Concurrent tortious conduct, common liability

Because common liability, on which contribution among joint tortfeasors rests, requires no concerted negligence, the tortious conduct among joint tortfeasors leading to a plaintiff's harm may be concurrent. Parler &

Wobber v. Miles & Stockbridge, Md.2000, 756 A.2d 526, 359 Md. 671. Contribution ⟨☞ 5(5)

29. Strict liability

Under Pennsylvania law, vehicle manufacturer which had been sued on strict crashworthiness theory of liability had right to seek contribution from all those whose negligent or tortious acts were alleged to be contributing causes of plaintiff's harm, and could implead driver of motor vehicle, who was allegedly operating vehicle with blood-alcohol level in excess of legal limit. Craigie v. General Motors Corp., E.D.Pa.1990, 740 F.Supp. 353. Contribution ⟨☞ 5(7)

Under Pennsylvania law, manufacturer, who may be liable to plaintiff on strict liability theory, is entitled to contribution from negligent purchaser/user of product, which is later determined to be defective; declining to follow *Rhoads v. Ford Motor Co.*, 374 F.Supp. 1317 (W.D.Pa.); *Conti v. Ford Motor Co.*, 578 F.Supp. 1429 (E.D.Pa.); *Bike v. American Motors Corp.*, 101 F.R.D. 77 (E.D.Pa.). Pitcavage v. Mastercraft Boat Co., M.D.Pa.1985, 632 F.Supp. 842. Contribution ⟨☞ 5(6.1)

Under Pennsylvania law, strict products liability is assigned to the field of torts so that consideration of contributory negligence on part of injured user as a bar to recovery and his concurrent negligence as a basis of liability under Uniform Contribution Among Joint Tortfeasors Act is required. Rhoads v. Ford Motor Co., D.C.Pa.1974, 374 F.Supp. 1317, affirmed 514 F.2d 931. Contribution ⟨☞ 5(6.1); Products Liability ⟨☞ 181

Liability for contribution and indemnity under the principle of strict liability as codified by section 402A of the Restatement (Second) of Torts depends, not on the means of marketing, but on the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public. Hoffman v. Loos & Dilworth, Inc., Pa.Super.1982, 452 A.2d 1349, 307 Pa.Super. 131. Contribution ⟨☞ 5(1); Indemnity ⟨☞ 72

Role of the defendant as a sales agent for the manufacturer of the boiled linseed oil which caused the fire giving rise to the wrongful death and survival claims in the trespass action provided a predicate upon which the defendant could be held liable for contribution and indemnity under the principle of strict liability as codified by section 402A of the Restatement (Second) of Torts in that the defendant intended that the product reach the market and was directly involved in supplying the chattel, not merely offering the use of money. Hoffman v. Loos & Dilworth, Inc., Pa.Super.1982, 452 A.2d 1349, 307 Pa.Super. 131. Contribution ⟨☞ 5(6.1); Indemnity ⟨☞ 72

Owner of dog which, while chasing a frisbee, collided with bicyclist was entitled to seek contribution from frisbee thrower, on grounds of negligence, although owner was strictly liable for bicyclist's injuries. Wallace v. Strassel, Fla.App. 4 Dist.1985, 479 So.2d 231. Contribution ⟨☞ 5(6.1)

30. Sharing liability

Under Oklahoma law, the right of "contribution" exists only in favor of a tort-feasor who has paid more than its pro rata share of the common liability; contribution thus represents a sharing of joint and several liability by providing for proportional reimbursement from other parties who are liable to the plaintiff. Woolard v. JLG In-

dustries, Inc., C.A.10 (Okla.) 2000, 210 F.3d 1158. Contribution 🗝 5(1); Contribution 🗝 6

### 31. Vicarious liability

Nothing in indemnity provision of Uniform Contribution Among Tortfeasors Act, N.R.S. 17.265, precludes application of Act to situations involving vicarious liability. Van Cleave v. Gamboni Const. Co., Nev.1985, 706 P.2d 845, 101 Nev. 524. Indemnity 🗝 27

The Uniform Contribution Among Tortfeasors Act (UCATA) controls only in situations involving joint tortfeasors, and does not apply in vicarious liability situations. Andrade v. Johnson, S.C.App.2001, 546 S.E.2d 665, 345 S.C. 216, rehearing denied , certiorari granted , reversed 588 S.E.2d 588, 356 S.C. 238. Contribution 🗝 5(2)

It is not true that relationship between public officials serving as commissioners in any governmental organization establishes vicarious liability for negligence or misfeasance, malfeasance or nonfeasance of other commissioners so as to support an order for contribution per se; while each commissioner might be found liable to third parties who sustain losses as result of negligent action or inaction of board of commissioners, as between commissioners themselves in suit for contribution, rules applicable to joint tort-feasors apply. Butler v. Trentham, Tenn.1970, 458 S.W.2d 13, 224 Tenn. 528. Contribution 🗝 5(1)

### 32. Intentional, willful, or wanton conduct

Intentional tort-feasors causing plaintiff's harm cannot recover contribution under Ohio law. Pinney Dock & Transport Co. v. Penn Cent. Corp., C.A.6 (Ohio) 1999, 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution 🗝 5(3)

Antitrust conspiracy was intentional tort for which defendant could not recover contribution under Ohio law. Pinney Dock & Transport Co. v. Penn Cent. Corp., C.A.6 (Ohio) 1999, 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution 🗝 5(6.1)

Taxpayer's actions in willfully causing corporation to fail to pay withholding taxes involved willful breach of trust, precluding him under Ohio law from seeking contribution against other parties. McDermitt v. U.S., C.A.6 (Ohio) 1992, 954 F.2d 1245. Contribution 🗝 5(3)

Tennessee Contribution Among Tort-Feasors Act denies contribution to intentional joint tort-feasor. Dykes v. Raymark Industries, Inc., C.A.6 (Tenn.) 1986, 801 F.2d 810, certiorari denied 107 S.Ct. 1975, 481 U.S. 1038, 95 L.Ed.2d 815. Contribution 🗝 5(3)

Bank, which committed a fraud upon stockbrokerage firm in connection with a check-kiting scheme perpetrated by a customer of the two institutions, was not entitled to indemnity under Arkansas law from the customer since loss sustained by stockbrokerage firm was proximately caused by intentional conduct of bank; however, bank would be entitled to contribution from customer for any amounts which it paid above one-half of the judgment.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. First Nat. Bank of Little Rock, Ark., C.A.8 (Ark.) 1985, 774 F.2d 909. Contribution ⟜ 5(6.1); Indemnity ⟜ 65

Felon convicted of criminally violating antitrust laws cannot be unintentional tortfeasor entitled to contribution under Ohio statute barring recovery of contribution by intentional tortfeasors. Pinney Dock & Transport Co. v. Penn Cent. Corp, N.D.Ohio 1998, 991 F.Supp. 908, affirmed 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution ⟜ 5(3)

Pursuant to Ohio statute providing that there is no right of contribution in favor of "any tortfeasor who intentionally has caused or intentionally has contributed to the injury or loss," defendant who intentionally entered into antitrust conspiracy was "intentional tortfeasor" precluded from obtaining contribution from codefendant, regardless of whether defendant intentionally caused or contributed to injury of instant plaintiffs in particular. Pinney Dock & Transport Co. v. Penn Cent. Corp, N.D.Ohio 1998, 991 F.Supp. 908, affirmed 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution ⟜ 5(6.1)

Even assuming that intent to injure instant plaintiff victims of antitrust conspiracy was required for Ohio statute to preclude defendant's recovery of contribution, defendant's criminal conviction for violating Sherman Act by engaging in the conspiracy established that intent. Pinney Dock & Transport Co. v. Penn Cent. Corp, N.D.Ohio 1998, 991 F.Supp. 908, affirmed 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Contribution ⟜ 5(6.1)

Under Pennsylvania law, claim for contribution may not be based on intentional acts. In re One Meridian Plaza Fire Litigation, E.D.Pa.1993, 820 F.Supp. 1492. Contribution ⟜ 5(3)

Electrical equipment rebuilder and its principal shareholder could not seek contribution from transformer owner for costs they were required to reimburse governmental entities for cleaning up spills of polychlorinated biphenyls where principal shareholder was convicted of knowingly and unlawfully causing polychlorinated biphenyls to be disposed of and he was acting as president, chief executive officer and decision maker for rebuilder. U.S. v. Ward, E.D.N.C.1985, 618 F.Supp. 884. Environmental Law ⟜ 447

The equitable principle of contribution should not be used to transfer part of the obligation to pay compensation from a party that has acted quasi-intentionally so as to do a wanton and wilful act, to a party that was merely negligent. W. D. Rubright Co. v. International Harvester Co., D.C.Pa.1973, 358 F.Supp. 1388. Contribution ⟜ 5(4)

Under Pennsylvania law, railroad which was found guilty of wanton and willful negligence in automobile-train collision could not enforce right of contribution against administrator of driver of automobile who was found to have been contributorily negligent. Cage v. New York Cent. R. Co., D.C.Pa.1967, 276 F.Supp. 778, affirmed 386 F.2d 998. Contribution ⟜ 5(6.1)

Under Pennsylvania law, a tort-feasor found guilty of wanton and willful misconduct cannot enforce right of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

contribution against one specifically found not guilty of wanton and willful misconduct in same accident. Cage v. New York Cent. R. Co., D.C.Pa.1967, 276 F.Supp. 778, affirmed 386 F.2d 998. Contribution ⨀⇒ 5(4)

Under Florida law, there is no right of contribution for intentional torts or for breaches of trust or other fiduciary obligation. Bel-Bel Intern. Corp. v. Barnett Bank of South Florida, N.A., S.D.Fla.1993, 158 B.R. 252. Contribution ⨀⇒ 5(3); Contribution ⨀⇒ 5(6.1)

Insiders held jointly liable with principal for common-law fraud, statutory securities fraud, and breach of contract had right of contribution against principal; though, under Oklahoma law, perpetrators of intentional torts had no rights of contribution against each other, common-law fraud judgment was duplicated by securities fraud and breach of contract judgments, under which rights of contribution existed. In re Sevitski, Bkrt-cy.N.D.Okla.1993, 151 B.R. 590. Contribution ⨀⇒ 5(6.1)

Where guests, injured in automobile collision, and host brought action against alleged tort-feasor, alleged tort-feasor could not under 10 Del.C. §§ 6301-6308, entitling joint tort-feasor to money judgment for contribution where he has by payment discharged "common liability" or has paid more than his pro rata share thereof, maintain counterclaim for contribution against host on theory that host contributed to guests' injury, in absence of allegation that host's negligent conduct was willful or wanton, in view of 21 Del.C. § 21. Lutz v. Boltz, Del.Super.1953, 100 A.2d 647, 48 Del. 197. Contribution ⨀⇒ 9(5)

One of two defendants found liable for intentional acts of discrimination in violation of § 1983 was not entitled to contribution from other defendant. Medina County Agr. Soc. v. Swagler, Ohio App. 9 Dist.1987, 518 N.E.2d 589, 34 Ohio App.3d 336. Contribution ⨀⇒ 5(6.1)

Host driver's apparently mistaken and confused act of driving wrong way on one-way street during snowstorm was not gross negligence and, therefore, host driver was not liable to guest for injuries sustained in collision and owner and driver of truck involved in collision were not entitled to contribution from the host driver. O'Mara v. H. P. Hood & Sons, Inc., Mass.1971, 268 N.E.2d 685, 359 Mass. 235. Automobiles ⨀⇒ 181(1); Contribution ⨀⇒ 5(7)

Owner and driver of truck being sued for wrongful death of gratuitous guest passenger in automobile which collided with truck could not recover on third-party complaint against driver of automobile all or any part of damages awarded for wrongful death, notwithstanding this Act, in absence of either allegation or proof that automobile driver was guilty of wilful and wanton misconduct within automobile guest statute. Burmeister v. Youngstrom, S.D.1965, 139 N.W.2d 226, 81 S.D. 578. Contribution ⨀⇒ 9(5)

Exemplary damages statute recognizes distinction between negligence and willful and wanton misconduct providing for recovery of exemplary damages in addition to compensatory damages, and prevents contribution between defendants in applicable cases. White v. Hansen, Colo.1992, 837 P.2d 1229. Contribution ⨀⇒ 5(3)

Boy, who was shooting BB gun with companion when plaintiff was hit in eye by BB fired by companion, had no

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

right of contribution from companion and his father, who settled out of court, pursuant to statute providing that there is no right of contribution in favor of any tort-feasor who has intentionally, willfully or wantonly caused or contributed to injury, since exemplary damages were awarded against boy. Greenemeier by Redington v. Spencer, Colo.App.1984, 694 P.2d 850, affirmed 719 P.2d 710. Contribution ☞ 5(6.1)

Primary purpose of R.L.H.1955, § 246-10 et seq., is that most culpable party should sustain that share of loss which is commensurate with his degree of fault and inequity of equal contribution among joint tort-feasors has been removed in cases where gross negligence and foolhardiness of one party has joined with act of negligence of second party to produce injuries complained of. Mitchell v. Branch, Hawai'i 1961, 363 P.2d 969, 45 Haw. 128. Contribution ☞ 5(2)

Mausoleum builder was not entitled to contribution from casket manufacturer or funeral home for any liability to decedent's widow and daughters for intentional infliction of emotional distress as result of allegedly defective construction of mausoleum, regardless of whether claim alleged that builder intended to cause emotional distress or that his actions were done in reckless disregard as to likelihood that mental distress would result. Holland v. Edgerton, N.C.App.1987, 355 S.E.2d 514, 85 N.C.App. 567. Contribution ☞ 5(6.1)

In absence of evidence or verdict in personal injury case arising out of escalator accident that designer of escalator intentionally committed a negligent act, West's F.S.A § 768.31(2)(c), which applies only to intentional tort-feasors, did not preclude designer from receiving contribution from store owner. Diaz by Rivas v. Sears, Roebuck & Co., Fla.App. 3 Dist.1985, 475 So.2d 932, review denied 486 So.2d 597. Contribution ☞ 5(6.1)

An active tort-feasor does not have a right to indemnification for lawful damages he has paid to an injured third party from a joint tort-feasor guilty of wanton or willful misconduct which contributed to the injuries where the third-party tort-feasor was an "employer" under the Workmen's Compensation Act. Seaboard Coast Line R. Co. v. Smith., Fla.1978, 359 So.2d 427. Workers' Compensation ☞ 2142.20

33. Accrual of right

Claim for indemnity and contribution was premature where no judgment for damages had been rendered. Empresa Lineas Maritimas Argentinas S.A. v. U.S., C.A.4 (Md.) 1984, 730 F.2d 153. Contribution ☞ 1; Indemnity ☞ 42

12 P.S. § 2082 et seq., gives substantive rights when it grants right of contribution among tortfeasors and when it makes payment of more than the pro rata share of the common liability a condition precedent to the accrual of the right to a money judgment for contribution. Smith v. Whitmore, C.A.3 (Pa.) 1959, 270 F.2d 741. Contribution ☞ 6

Under Delaware law, while right to contribution attaches at time of negligence, right to secure money judgment for contribution is inchoate until judgment debtor discharges more than his pro rata share of common liability. New Zealand Kiwifruit Marketing Bd. v. City of Wilmington, D.Del.1993, 825 F.Supp. 1180. Contribution ☞ 9(3)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

While the right of contribution by joint tort-feasors does arise at time of concurring independent acts, neverthe-less until one of those joint tort-feasors pays more than his proportionate share of the underlying claim, the right remains contingent and inchoate, and it is not until a tort-feasor pays more than his proportionate share that the right ripens into a cause of action. Albert v. Dietz, D.C.Hawai'i 1968, 283 F.Supp. 854. Contribution ☞ 6

Under Maryland law, right both to indemnification and to contribution, whether based on contract or tort, accrue at time of payment, not before. Southern Maryland Oil Co. v. Texas Co., D.C.Md.1962, 203 F.Supp. 449. Con-tribution ☞ 6; Indemnity ☞ 42; Indemnity ☞ 81

There is no requirement that judgment be entered before defendant may seek contribution from other joint tort-feasors. Oviatt v. Automated Entrance System Co., Inc., Pa.Super.1990, 583 A.2d 1223, 400 Pa.Super. 493. Contribution ☞ 9(3)

Right of host driver to contribution from owner and driver of other vehicle for amount of settlement with injured guest passenger was inchoate until common liability was discharged and could be waived through a release. Nel-son v. Ptaszek, R.I.1986, 505 A.2d 1141. Contribution ☞ 6; Contribution ☞ 8

Right to contribution or indemnity does not accrue until after judgment is entered against a defendant. Cola v. Packer, N.J.Super.A.D.1977, 383 A.2d 460, 156 N.J.Super. 77. Contribution ☞ 1; Indemnity ☞ 42; Indem-nity ☞ 81

A defendant's right to contribution from a joint tort-feasor is an inchoate right which does not ripen into a cause of action until he has paid more than his pro rata portion of the judgment obtained against him by plaintiff; it is at that point that his cause of action for contribution accrues. Markey v. Skog, N.J.Super.L.1974, 322 A.2d 513, 129 N.J.Super. 192. Contribution ☞ 6

Prerequisite to contribution is demonstration that person seeking to enforce contribution and one from whom contribution is sought are joint tort-feasors, and right of contribution accrues when injured third person has brought action and recovers judgment against one or more of joint tort-feasors and latter has paid judgment in whole or in part. Miraglia v. Miraglia, N.J.Super.A.D.1969, 255 A.2d 762, 106 N.J.Super. 266. Contribution ☞ 5(1)

Ordinarily, a right to contribution does not accrue before payment. Associated Transport v. Bonoumo, Md.1948, 62 A.2d 281, 191 Md. 442. Contribution ☞ 6

Essential conditions precedent to successful action for contribution are common liability of joint tort-feasors to injured party and payment by one of joint tort-feasors of more than his or her proportionate share of liability. Couch v. Thomas, Ohio App.1985, 497 N.E.2d 1372, 26 Ohio App.3d 55, 26 O.B.R. 228. Contribution ☞ 5(5); Contribution ☞ 6

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Even though equity for contribution arises at time of creation of relationship between parties, right to sue therefore accrues when party has paid more than his share of joint obligation. National Mut. Ins. Co. v. Whitmer, Ohio 1982, 435 N.E.2d 1121, 70 Ohio St.2d 149, 24 O.O.3d 248. Contribution ☞ 6

Under Pennsylvania law, substantive right to sue third-party defendant for contribution accrues when complaint in principal action is served upon defendants. Murphy v. Barron, N.Y.Sup.1965, 258 N.Y.S.2d 139, 45 Misc.2d 905. Contribution ☞ 5(1)

Cause of action for indemnity or contribution accrues when payment has been made. Aetna Cas. and Sur. Co. v. Aztec Plumbing Corp., Nev.1990, 796 P.2d 227, 106 Nev. 474. Contribution ☞ 6; Indemnity ☞ 81

Claim for contribution is substantively separate from underlying tort and does not arise until contribution claimant has paid more than his or her proportionate share of total claim. Providence Washington Ins. Co. of Alaska v. McGee, Alaska 1988, 764 P.2d 712. Contribution ☞ 6

Cause of action for contribution does not actually accrue until one of several joint tort-feasors pays more than his pro rata share of common liability. Nikolous v. Superior Court In and For Maricopa County, Ariz.1988, 756 P.2d 925, 157 Ariz. 256. Limitation Of Actions ☞ 49(6)

No cause of action for contribution accrues to joint tort-feasor until there has been judgment against him or settlement of claim. Coniaris v. Vail Associates, Inc., Colo.1978, 586 P.2d 224, 196 Colo. 392. Contribution ☞ 5(1)

Defendant against which, along with codefendant, joint and several judgment had been entered could not be entitled to a money judgment against codefendant under any set of circumstances until defendant had either paid the judgment or discharged more than its pro rata share. Burks Motors, Inc. v. International Harvester Co., Ark.1971, 466 S.W.2d 943, 250 Ark. 641. Contribution ☞ 6; Indemnity ☞ 81

34. Statute of repose

Statute of repose for actions founded on the design, planning, or construction of an improvement to real property applies to all actions, including those for indemnity and contribution, as opposed to initial claim for damages. State, Dept. of Transp. v. Echeverri, Fla.App. 3 Dist.1999, 736 So.2d 791, review dismissed 741 So.2d 1135. Contribution ☞ 9(3); Indemnity ☞ 96

35. Assignment of right

Scaffolding lessor sued by worker for damages allegedly sustained when worker fell from scaffolding could assign to worker its right of contribution from installer of scaffolding. Carpenter v. Bachman Enterprises, Inc., Fla.App. 3 Dist.1995, 657 So.2d 42. Assignments ☞ 22

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Right of contribution is right separate and apart from tort, created by statute and, therefore, assignable. Robarts v. Diaco, Fla.App. 2 Dist.1991, 581 So.2d 911, review denied 591 So.2d 183. Assignments ⟶ 22

All liability for tort claim must have been extinguished as to any joint tort-feasors against whom right of contribution is sought to be exercised; therefore, when such claim to contribution has been assigned and is sought to be exercised, it is not underlying tort which forms basis for action, it is instead right of contribution that arises once tort liability has been settled. Robarts v. Diaco, Fla.App. 2 Dist.1991, 581 So.2d 911, review denied 591 So.2d 183. Contribution ⟶ 9(1)

### 36. Theories of recovery of injured party

Contribution will not arise from distinct causes of action, regardless of how similar the events may have been or how close in time they may have occurred. Klotz v. Superior Elec. Products Corp., D.C.Pa.1980, 498 F.Supp. 1099. Contribution ⟶ 5(1)

The Pennsylvania Uniform Contribution Among Joint Tortfeasors Act permits contribution between joint tortfeasors when one is responsible under strict liability rule in product defect case and the other is responsible for an act of negligence. W. D. Rubright Co. v. International Harvester Co., D.C.Pa.1973, 358 F.Supp. 1388. Contribution ⟶ 5(4)

There exists a right of contribution in favor of one liable to plaintiff under strict liability theory from party whose liability is based on negligence or want of due care. Walters v. Hiab Hydraulics, Inc., D.C.Pa.1973, 356 F.Supp. 1000. Contribution ⟶ 5(3)

There is no right of contribution between a party whose liability is imposed under strict liability of manufacturer or seller of product which at time of sale contains a dangerous defect and a party whose liability is based on negligence or want of due care. Fenton v. McCrory Corp., D.C.Pa.1969, 47 F.R.D. 260. Contribution ⟶ 5(6.1)

Under Uniform Contribution Among Tortfeasors Act, motorist was entitled to seek contribution from Department of Transportation as joint defendant after settling liability, even though motorist's liability to passengers was based on recklessness due to intoxication and Department's asserted liability was based on negligence. Com., Dept. of Transp. v. Popovich to Use of Aetna Cas. and Sur. Co., Pa.Cmwlth.1988, 542 A.2d 1056, 117 Pa.Cmwlth. 14, appeal granted 551 A.2d 218, 520 Pa. 592, affirmed 564 A.2d 159, 522 Pa. 508. Contribution ⟶ 5(7)

Contribution is obtainable even if two defendants are held liable based upon different theories of recovery. Mattia v. Sears, Roebuck & Co., Pa.Super.1987, 531 A.2d 789, 366 Pa.Super. 504, appeal denied 546 A.2d 622, 519 Pa. 660. Contribution ⟶ 5(5)

Uniform Contribution Among Joint Tort-Feasors Act may properly be applied so that joint tort-feasors may obtain contribution from each other, despite fact that one joint tort-feasor has been found liable in negligence and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the other in strict products liability. McMeekin v. Harry M. Stevens, Inc., Pa.Super.1987, 530 A.2d 462, 365 Pa.Super. 580, appeal denied 541 A.2d 746, 518 Pa. 618, appeal denied 541 A.2d 746, 518 Pa. 619. Contribution ⬿ 5(6.1)

Defendant who is liable under principles of strict liability and defendant who is liable because of negligence may be joint tort-feasors and one may obtain contribution from the other. Svetz for Svetz v. Land Tool Co., Pa.Super.1986, 513 A.2d 403, 355 Pa.Super. 230, appeal denied 527 A.2d 542, 515 Pa. 581, appeal denied 527 A.2d 544, 515 Pa. 584, appeal denied 527 A.2d 544, 515 Pa. 585. Contribution ⬿ 5(5)

For contribution purposes, it matters not on which theory tort-feasor has been held responsible for tort committed against plaintiff as, so long as tort-feasor seeking contribution has paid in excess of his or her share of liability, it would be inequitable to deny that tort-feasor's right to contribution from second tort-feasor. Svetz for Svetz v. Land Tool Co., Pa.Super.1986, 513 A.2d 403, 355 Pa.Super. 230, appeal denied 527 A.2d 542, 515 Pa. 581, appeal denied 527 A.2d 544, 515 Pa. 584, appeal denied 527 A.2d 544, 515 Pa. 585. Contribution ⬿ 5(1)

Contribution is available whenever two or more persons are jointly or severally liable in tort, irrespective of a theory by which tort liability is imposed. Svetz for Svetz v. Land Tool Co., Pa.Super.1986, 513 A.2d 403, 355 Pa.Super. 230, appeal denied 527 A.2d 542, 515 Pa. 581, appeal denied 527 A.2d 544, 515 Pa. 584, appeal denied 527 A.2d 544, 515 Pa. 585. Contribution ⬿ 5(1)

Where house vendors and real estate brokers were joint tort-feasors with exterminator in causing the same injury or damage to house purchasers, although liability of exterminator arose by virtue of statute and liability of the vendors and brokers arose out of common-law principles, all parties were within purview of Joint Tortfeasors Contribution Law. Neveroski v. Blair, N.J.Super.A.D.1976, 358 A.2d 473, 141 N.J.Super. 365. Contribution ⬿ 5(6.1)

Contribution is appropriate between persons who are liable jointly in tort for the same injuries, even if they are liable on different theories of tort liability; thus, a negligent defendant may obtain contribution from a person who was jointly liable on theory of strict liability, and the converse is also true. Wolfe v. Ford Motor Co., Mass.1982, 434 N.E.2d 1008, 386 Mass. 95. Contribution ⬿ 5(1)

Seller and distributor of inner tube designed to be pulled behind boats were not entitled to contribution from boat driver after seller and distributor were held liable on strict liability theory for injuries sustained by consumer while riding on tube; seller, distributor and driver did not share common liability, since jury found driver liable only on negligence theory, and negligence claim was ultimately dismissed. Butz v. Werner, N.D.1991, 470 N.W.2d 224. Contribution ⬿ 5(6.1)

Fact that plaintiff sued a previous seller of defective scaffolding on a strict products liability theory did not mean that reduction scheme under Uniform Contribution Among Tortfeasors Act (UCATA) did not apply to settlement proceeds received from the seller for purposes of determining amount owed plaintiff by remaining defendant; phrase "in tort," as used in the UCATA, applied to all tort theories, including strict liability. Shelby v. Ac-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion Scaffolding, Inc., Ariz.1992, 827 P.2d 462, 171 Ariz. 1. Damages ☞ 63

Construction company which constructed defective roof over swimming pool, and manufacturer of defective trusses used in the roof, were not joint tort-feasors under the Uniform Contribution Among Tortfeasors Act, since construction company was liable to homeowners upon a breach of contract theory, and liability was imposed upon manufacturer because of negligence; thus, manufacturer was not entitled to contribution from construction company. McKinley v. Willow Const. Co., Inc., Colo.App.1984, 693 P.2d 1023. Contribution ☞ 5(6.1)

Right to contribution exists among joint tort-feasors under the Uniform Contribution Among Tortfeasors Act regardless of the fact that they have been found liable under different theories, such as negligence and strict products liability. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676. Contribution ☞ 5(2)

Where liability of defendant city for injuries sustained by minor plaintiff when a volleyball standard fell and severely injured her foot was predicated on negligence in that standard was being used in a recreation center under supervision of city when accident occurred, and liability of defendant manufacturer was predicated on a theory of strict products liability under section 402A of the Restatement (Second) of Torts, as was the liability of the defendant sporting goods store for having sold a defective product which eventually injured a user of the product, there were three tort-feasors which were each directly liable to the plaintiff for her injuries, and each tort-feasor had a right to contribution when it had paid more than its pro rata share of the judgment, or one-third. Sanchez v. City of Espanola, N.M.App.1980, 615 P.2d 993, 94 N.M. 676. Contribution ☞ 6

So long as parties have common liability to injured person, it is no bar to contribution that liability of the parties rests on different grounds. Florida Farm Bureau Cas. Co. v. Batton, Fla.App. 4 Dist.1984, 444 So.2d 1128. Contribution ☞ 5(1)

37. Defenses

A non-settling alleged joint tortfeasor defending against a contribution claim is not without defenses; it may assert, among any other available defenses, that it was not a tortfeasor, i.e., that it had no liability to plaintiff, or that the settlement with the plaintiff was not reasonable because the settling tortfeasor paid more than the plaintiff's claim was worth or because the settlement was not made in good faith. Barringer v. Baptist Healthcare of Oklahoma, Okla.2001, 22 P.3d 695. Contribution ☞ 5(5); Contribution ☞ 8

38. Proximate cause

In order for tractor-trailer owner, being sued by automobile passenger, to obtain contribution from automobile driver, it had to appear not only that tractor-trailer owner and automobile driver were concurrently negligent, but that the negligence of each was proximate cause of collision between automobile and tractor-trailer. Stanchis v. Hess Oil & Chemical Co., D.C.Pa.1967, 292 F.Supp. 22, affirmed 403 F.2d 24. Contribution ☞ 5(7)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

That following motorist negligently misjudged his distance when he swerved off highway in effort to avoid collision did not preclude preceding motorist's negligence, in making U-turn, from constituting proximate cause of injuries sustained by passenger in following automobile or absolve preceding motorist from liability to contribute toward satisfaction of claim for injuries sustained by such passenger. Mitchell v. Branch, Hawai'i 1961, 363 P.2d 969, 45 Haw. 128. Automobiles ⟳ 201(1.1); Contribution ⟳ 5(7)

### 39. Immunity, generally

Contribution is not available in tort case where immunity exists between third party and original plaintiff, as the immune party cannot be held liable to plaintiff. Parler & Wobber v. Miles & Stockbridge, Md.2000, 756 A.2d 526, 359 Md. 671. Contribution ⟳ 5(5)

If one has personal defense or special status that would bar liability, contribution is not allowed because it is only permitted from those liable, and not from those who are shown merely to be at fault. Berube v. City of Northampton, Mass.1992, 602 N.E.2d 560, 413 Mass. 635. Contribution ⟳ 5(5)

If one of two joint tort-feasors has immunity or defense shielding him from liability to plaintiff, he is not liable for contribution to tort-feasor who remains liable to plaintiff. Couch v. Thomas, Ohio App.1985, 497 N.E.2d 1372, 26 Ohio App.3d 55, 26 O.B.R. 228. Contribution ⟳ 5(5)

Tort-feasors cannot compel contribution from another tort-feasor who is immune from suit by victim, since the alleged tort-feasors are not then jointly and severally liable. Florida Farm Bureau Cas. Co. v. Batton, Fla.App. 4 Dist.1984, 444 So.2d 1128. Contribution ⟳ 5(5)

### 40. Sovereign immunity

Although both driver of naval truck and preceding motorist whose automobile was struck by truck were negligent, government would not be liable to automobile driver by way of contribution for any damages he might have to pay to injured occupant of naval truck. Maddux v. Cox, C.A.8 (Ark.) 1967, 382 F.2d 119. United States ⟳ 78(17)

Federal immunity, which barred plaintiff mail carrier from pursuing a tort action against United States Post Office Department, also barred a third-party action against the Department for contribution in action for alleged injuries sustained by carrier on property under defendant's general supervision. Wilson v. Knoxville Community Development Corp., D.C.Tenn.1978, 451 F.Supp. 1168. United States ⟳ 125(28.1)

In cases such as sovereign immunity where potential third-party defendant is protected from liability, plaintiff has no cause of action against defendant and therefore, there is no right of contribution. Berube v. City of Northampton, Mass.1992, 602 N.E.2d 560, 413 Mass. 635. Contribution ⟳ 5(5)

Provision of the Uniform Contribution Among Tort-Feasors Act which allows the state to be sued for contribu-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion as a joint tort-feasor, and the State Tort Claims Act operate to waive sovereign immunity for claims against the state for contribution and indemnification. Selective Ins. Co. of the Southeast v. NCNB Nat. Bank of North Carolina, N.C.1989, 380 S.E.2d 521, 324 N.C. 560. States ☞ 112.2(1)

### 41. Fiduciary obligations and duties

Tennessee Uniform Contribution Among Tort-feasors Act did not apply to suit seeking recovery from accounting firm which allegedly aided and abetted executor in actions which breached fiduciary relationship and suit could not be maintained against accounting firm by beneficiary who had settled with executor. Buchbinder v. Register, C.A.6 (Tenn.) 1980, 634 F.2d 327. Contribution ☞ 5(6.1)

Under Colorado Uniform Contribution Among Tortfeasors Act, C.R.S. 13-50.5-102(7), former loan officer of national bank could not assert third-party claim for contribution against other members of bank's board of directors and its loan and discount committee for breach of fiduciary duty. Cache Nat. Bank v. Hinman, D.Colo.1986, 626 F.Supp. 1341. Contribution ☞ 5(6.1)

Clearing broker for purchases of common stock, defendant in securities fraud action brought by purchasers, pension plans or inter vivos trusts, could not maintain contribution claims against fiduciaries of plans and trusts on theory that they were liable for negligence in permitting investment in unsuitable stocks and for failing to correct overconcentration in such stocks, in that, while clearing broker and fiduciaries might have overlapping liability to plans and trusts, they were not only the nominal but the actual principals to whom defendants owed a duty of disclosure in addition to their duty toward beneficiaries. In re Atlantic Financial Management, Inc., Securities Litigation, D.C.Mass.1985, 603 F.Supp. 135. Contribution ☞ 5(6.1)

Statute providing that right to contribution from joint tort-feasors does not apply to breaches of fiduciary obligation did not apply to bar general contractor's contribution claim against subcontractors where general contractor's violation of fiduciary duty, if any, was to developer, rather than subcontractors. Robert L. Turchin, Inc. v. Cather Industries, Inc., Fla.App. 3 Dist.1986, 487 So.2d 1179, review denied 494 So.2d 1149. Contribution ☞ 8

Uniform Contribution Among Joint Tortfeasors Act does not apply to breaches of trust or other fiduciary obligations. Eason v. Lau, Fla.App. 1 Dist.1978, 369 So.2d 600, certiorari denied 368 So.2d 1365. Contribution ☞ 5(2)

### 42. Agent and principal

Agent and vicariously liable principal are not "joint tort-feasors" under Uniform Contribution Among Tortfeasors Act; thus, any release of agent precludes further recovery against principal. Mamalis v. Atlas Van Lines, Inc., Pa.1989, 560 A.2d 1380, 522 Pa. 214. Contribution ☞ 5(4); Release ☞ 29(1)

Agent and its vicariously liable principal are not "joint tortfeasors" under the Uniform Contribution Among Tortfeasors Act, so that any release of agent precludes further recovery against principal. Mamalis v. Atlas Van

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Lines, Inc., Pa.Super.1987, 528 A.2d 198, 364 Pa.Super. 360, appeal granted 542 A.2d 1370, 518 Pa. 641, af-firmed 560 A.2d 1380, 522 Pa. 214. Contribution ⟢ 5(4)

Environmental auditor acted as agent of purchasers, who were making claim against auditor for professional malpractice, and, thus, exception to abolition of joint liability for party acting as agent or servant of another tort-feasor was inapplicable, thus barring auditor's recovery on contribution claim against purchasers' counsel fol-lowing settlement with purchasers in action arising from postsale discovery of property's environmental prob-lems; while auditor claimed that it was acting as counsel's agent or servant, auditor had alleged contractual rela-tionship with purchasers to perform audit. Cella Barr Associates, Inc. v. Cohen, Ariz.App. Div. 1 1994, 868 P.2d 1063, 177 Ariz. 480. Contribution ⟢ 5(6.1)

43. Co-conspirators

Under this Act, co-conspirators are liable to one another for contribution as joint tort-feasors. Webster Motor Car Co. v. Zell Motor Car Co., C.A.4 (Md.) 1956, 234 F.2d 616. Contribution ⟢ 5(1)

44. Corporations and corporate officers

Under Massachusetts law, equipment lessor's claim against corporation's president, who authorized sale of leased equipment was tort claim for conversion, and thus president could be held liable to corporation for contri-bution. Cullen v. Darvin, D.Mass.1991, 132 B.R. 211. Contribution ⟢ 5(6.1)

45. Insurance and insurers

Under Maryland law, where one party was entitled to indemnity from another, the right to indemnity was not de-feated by the fact that the loss to be indemnified for was actually paid by an insurance company. Tillman v. Wheaton-Haven Recreation Ass'n, Inc., C.A.4 (Md.) 1978, 580 F.2d 1222. Indemnity ⟢ 94

Automobile insurer's subrogation claim to its insured's right of contribution against joint tort-feasor did not in-clude right to require tort-feasor's carrier to contribute to bad-faith judgment entered against insurer; since in-surer discharged its own obligation when it paid judgment to satisfy primary claim against it for bad faith, it was not entitled to subrogation status. Nationwide Mut. Ins. Co. v. Kesterson, Del.Supr.1990, 575 A.2d 1127. Insur-ance ⟢ 3512

Owners of adjoining property and contractor, against whom the claims of owners of building for damage result-ing from fire spreading from the adjoining property to building and resulting from contractor's demolition of the adjoining property were released after the claims were settled, were not "joint tort-feasors" with insurance agent against whom property owners sought to recover for a breach of promise to secure fire insurance. Huff v. Har-baugh, Md.App.1981, 435 A.2d 108, 49 Md.App. 661. Torts ⟢ 135

The Uniform Contribution Among Tortfeasors Act in no way affects right of successful plaintiff to recover en-tire amount of verdict, interest and costs from any one of joint tortfeasors, and accordingly the liability insurer

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

of only one of them was required to pay the compensable costs in full. Hafer v. Schauer, Pa.1968, 239 A.2d 785, 429 Pa. 289. Costs ☞ 101; Insurance ☞ 2270(1); Torts ☞ 135

Ordinarily, subrogation right of insurer who has fully compensated its insured allows it to step into shoes of insured and collect what it has paid from wrongdoer. Amica Mut. Ins. Co. v. Maloney, N.M.1995, 903 P.2d 834, 120 N.M. 523. Insurance ☞ 3523(1)

Under Uniform Contribution among Tort-feasors Act, insurer of a tort-feasor found liable in a prior action can seek contribution from tort-feasors not joined in that prior action. National Farmers Union Property and Cas. Co. v. Frackelton, Colo.1983, 662 P.2d 1056. Contribution ☞ 5(1)

An underinsured motorist insurance carrier is not a tortfeasor and thus has no right of contribution as tortfeasor who has paid more than his pro rata share of the common liability. McCrary ex rel. McCrary v. Byrd, N.C.App.2002, 559 S.E.2d 821, 148 N.C.App. 630, review denied , certiorari denied 577 S.E.2d 625, 356 N.C. 674. Contribution ☞ 5(7)

Automobile insurer was entitled to recover its subrogation claim for that amount for which it was found liable to insured from third-party tort-feasor brought into action between insurer and its insured. Farm Bureau Mut. Ins. Co. v. Riverside Marine Remanufacturing, Inc., Ark.1983, 647 S.W.2d 462, 278 Ark. 585. Insurance ☞ 3512

Uniform Contribution Among Tort-Feasors Act applies to joint tort-feasors who are joint adventurers; accordingly appellant, as an excess liability insurer, was entitled to contribution from appellee, another excess insurer, in proportion to the relative degrees of fault of their respective insureds. U.S. Fire Ins. Co. v. State Farm Fire & Cas. Co., Ark.1969, 441 S.W.2d 787, 246 Ark. 1269. Contribution ☞ 5(2); Insurance ☞ 3531

Prior to enactment of this Act in 1941, insurer paid judgment against insured was not entitled to contribution from joint tort-feasor against whom judgment was jointly rendered, notwithstanding that joint tort-feasor was not a purposeful tort-feasor. Commercial Cas. Ins. Co. v. Leonard, Ark.1946, 196 S.W.2d 919, 210 Ark. 575. Contribution ☞ 5(3)

In pursuing contribution claim, insurance company stands in shoes of its insured. Sacred Heart Hosp. of Pensacola v. Frazier, Fla.App. 1 Dist.1993, 621 So.2d 491. Contribution ☞ 5(6.1)

Joint tort-feasor has no right to contribution except that provided by statute, and insurer cannot have greater right than insured through remedy of subrogation. Florida Patient's Compensation Fund v. St. Paul Fire and Marine Ins. Co., Fla.1990, 559 So.2d 195. Contribution ☞ 5(1); Insurance ☞ 3512

Insurer, which settled claim of automobile passenger who was injured in collision of insured's automobile and a taxicab, was not entitled to contribution from taxicab owner where jury found that taxicab was 100% at fault for the accident; however, insurer would be entitled to amend its pleadings after trial to add a cause of action for a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

legal subrogation. West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., Fla.App. 5 Dist.1986, 495 So.2d 204, review denied 504 So.2d 769. Contribution ⬦ 5(7); Pleading ⬦ 248(5)

Absent statutory prohibition, provisions of automobile liability policy excluding from coverage members of insured's family or household are valid and relieve insurer from payment of judgment against its insured recovered by way of contribution by a joint tort-feasor when that judgment is based on injury to insured's spouse; Uniform Contribution Among Joint Tortfeasors Act does not prohibit family exclusion clauses in such situation. Florida Farm Bureau Ins. Co. v. Government Emp. Ins. Co., Fla.1980, 387 So.2d 932. Insurance ⬦ 2747

Policy exclusion for resident family members in automobile liability policy is not applicable in contribution cases. Jones v. Barwick, Fla.App. 5 Dist.1980, 386 So.2d 7. Contribution ⬦ 5(7)

46. Employer and employee relationship--In general

Mississippi statute on contribution between tort-feasors first provides that each defendant is to share equally, and then specifies how to count those defendants who are to share; proviso places ceiling on liability of principal or employer so that he, or his insurer, is not exposed to risk of contributing twice, once for his agent's wrong and once for his own responsibility imposed via respondeat superior. Standard Oil Co. of Ky. v. Illinois Cent. R. Co., C.A.5 (Miss.) 1969, 421 F.2d 201. Contribution ⬦ 7

Where railroad employee, injured in train derailment which occurred when train was entering a private crossing of steel company, recovered for injuries from railroad in an action under Federal Employers' Liability Act, and railroad sought contribution or indemnity from steel company in third-party action on theory that steel company's negligence in maintaining crossing had caused derailment, recovery by railroad depended upon state law regarding effect of employee's contributory negligence, so that if there were no express agreement as to indemnity between railroad and steel company, and employee were found to be contributorily negligent, steel company could plead his contributory negligence as a bar to any recovery over by railroad. Kennedy v. Pennsylvania R. Co., C.A.3 (Pa.) 1960, 282 F.2d 705. Contribution ⬦ 5(6.1); Federal Courts ⬦ 421; Indemnity ⬦ 70; Indemnity ⬦ 94

Under Pennsylvania statute exempting employee from any liability for injury to fellow-employee, unless intentionally inflicted, employee is relieved from liability for contribution, even though employer, whose liability might be vicarious because of master-servant relationship, remains liable for contribution to extent of his liability under the Workmen's Compensation Act. Dodick v. Norfolk & W. Ry. Co., D.C.Pa.1971, 326 F.Supp. 1154. Contribution ⬦ 5(1)

In action under the Federal Employers' Liability Act for negligence of railroad in requiring employee to walk along a dangerous route while in a fatigued condition and after a snowstorm, where the employee was injured when he fell on the premises of a third-party defendant, employee's inability to recover from a third-party tort-feasor because of his contributory negligence would as a matter of law deny the railroad's claim against the third-party tortfeasor for contribution. Panichella v. Pennsylvania R. Co., D.C.Pa.1958, 167 F.Supp. 345, reversed 268 F.2d 72, certiorari denied 80 S.Ct. 370, 361 U.S. 932, 4 L.Ed.2d 353. Contribution ⬦ 8

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

There was sufficient evidence presented for jury to find that injured worker's employer was "supplier" of machine which injured worker and, thus, manufacturer which settled with worker could recover from employer in contribution action; employer had significant ties with design and manufacture of twin freezer ice cream machine and promoted its sale and distribution. Gray v. H.C. Duke & Sons, Inc., Pa.Super.1989, 563 A.2d 1201, 387 Pa.Super. 95, appeal denied 575 A.2d 114, 525 Pa. 583, appeal denied 575 A.2d 114, 525 Pa. 584. Contribution ☞ 5(6.1)

Contribution was not available between employer and employee, pursuant to N.J.S.A. 2A:53A-1, as they were considered a single tort-feasor. Erlich v. First Nat. Bank of Princeton, N.J.Super.L.1984, 505 A.2d 220, 208 N.J.Super. 264. Contribution ☞ 5(1)

Uniform Contribution Among Tort-Feasors Act's definition of "[j]oint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property * * *." includes person liable solely by reason of respondeat superior. Chilcote v. Von Der Ahe Van Lines, Md.1984, 476 A.2d 204, 300 Md. 106. Contribution ☞ 5(6.1)

Where liability of master is vicarious, master and servant comprise but one "pro rata share" for purposes of Uniform Contribution Among Tort-Feasors Act. Chilcote v. Von Der Ahe Van Lines, Md.1984, 476 A.2d 204, 300 Md. 106. Contribution ☞ 7

Liabilities of master and servant to plaintiffs constituted one pro rata share for purposes of Uniform Contribution Among Tort-Feasors Act, and therefore, where third defendant had been released, total verdict against master and servant was to be reduced by one-half. Chilcote v. Von Der Ahe Van Lines, Md.1984, 476 A.2d 204, 300 Md. 106. Contribution ☞ 7

Uniform Contribution Among Tortfeasors Act was applicable to situation where both employer hospital and physician employee were severally liable for same injury to patient. Blackshear v. Clark, Del.Supr.1978, 391 A.2d 747. Contribution ☞ 5(6.1)

Where sole basis of liability of an employer is negligence of employee, if employer is required to compensate injured person, employer can ordinarily require employee to reimburse employer for amount paid to injured person, but employer cannot be held liable unless employee is shown to be held liable; hence, if absence of culpability on part of employee to injured person has been established by litigation, employer cannot be held liable to injured person. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Indemnity ☞ 71; Labor And Employment ☞ 3107(2)

Employee's liability for his own negligence is not dependent on negligence of employer nor is employee entitled to reimbursement by employer. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Labor And Employment ☞ 195; Labor And Employment ☞ 3052; Labor And Employment ☞ 3074

Employee and employer are both liable in tort under Uniform Contribution Among Tortfeasors Act for same in-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

jury to person or property. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Contribution ⚿ 5(2)

Under Uniform Contribution Among Tortfeasors Act, it is not sine qua non that suit be brought against either or both employer and employee in order for suit to be brought against one of them. Clark v. Brooks, Del.Super.1977, 377 A.2d 365, affirmed 391 A.2d 747. Contribution ⚿ 5(2)

If employee does not have a right of action against employer, employer is not a joint tort-feasor against whom contribution can be claimed under Contribution Among Joint Tort-Feasors Act. Cacchillo v. H. Leach Machinery Co., R.I.1973, 305 A.2d 541, 111 R.I. 593. Contribution ⚿ 5(5)

A master, who owned motor vehicle which caused injuries when negligently operated by servant, and servant were "joint tort-feasors" within this Act. Smith v. Raparot, R.I.1967, 225 A.2d 666, 101 R.I. 565. Contribution ⚿ 5(7)

In personal injury action brought by employee of subcontractor, subcontractor was not liable for half of judgment entered against construction manager pursuant to joint tortfeasor statutory provisions, though jury found that employee's negligence in part caused his injury, as any reliance on imputation of employee's negligence to subcontractor was inappropriate, given that vicarious liability of employer was intended to benefit injured victim, not tortfeasor. Joseph Francese, Inc. v. DOS Concrete Services, Inc., Mass.App.Ct.1999, 713 N.E.2d 984, 47 Mass.App.Ct. 367. Contribution ⚿ 5(6.1)

Commonwealth whose employee had failed to ascertain that thrice-convicted child molester was employed as teacher in violation of terms of probation, and government entity which ran school, were each "jointly liable" for injuries that students sustained as result of probationer's molestation, for purpose of contribution provisions of Massachusetts law. A.L. v. Com., Mass.1988, 521 N.E.2d 1017, 402 Mass. 234. Contribution ⚿ 5(6.1)

After trial court imputed default judgment from defendant employee to codefendant employer, it should have allowed the employer the right to litigate its claims for contribution against the other alleged joint tort-feasors; the default judgment imputation of negligence did not prevent the employer from proving that other parties stood in pari delicto. Dehn v. Prouty, S.D.1982, 321 N.W.2d 534. Contribution ⚿ 5(4)

Uniform Contribution Among Tortfeasors Act, N.R.S. 17.225 et seq., applies to vicarious liability situations involving an employer and employee. Van Cleave v. Gamboni Const. Co., Nev.1985, 706 P.2d 845, 101 Nev. 524. Indemnity ⚿ 27

Aircraft manufacturer and employer who had failed to provide workers' compensation coverage and was thus subject to civil action, were jointly and severally liable in tort for wrongful death of employee from aircraft crash under AS 09.16.010(a), which provides for contribution, where jury found both parties negligent, even though they were subject to different burdens of proof in underlying action; thus, manufacturer was entitled to contribution from employer for settlement manufacturer had paid. Ehredt v. DeHavilland Aircraft Co. of

Canada, Ltd., Alaska 1985, 705 P.2d 913. Contribution ⚷ 5(6.1); Contribution ⚷ 6

Where respondeat superior form of vicarious liability was imposed upon one party through legal fiction, parties were not joint tortfeasors; therefore, Uniform Contribution Among Joint Tortfeasors Act did not apply. Kinetics, Inc. v. El Paso Products Co., N.M.App.1982, 653 P.2d 522, 99 N.M. 22. Contribution ⚷ 5(4)

Defendant, against whom recovery was sought for injuries allegedly sustained by plaintiff in automobile accident, could not recover contribution from plaintiff's employer and coemployee on theory that their negligence contributed to plaintiff's injuries and that it would be unjust for defendant to bear full responsibility to plaintiff. Kellen v. Second Judicial Dist. Court, In and For Washoe County, Dept. No. 6, Nev.1982, 642 P.2d 600, 98 Nev. 133. Contribution ⚷ 5(7)

Nurse, as the primary wrongdoer, had no claim for contribution from supervising doctor on the basis of respondeat superior. Dessauer v. Memorial General Hospital, N.M.App.1981, 628 P.2d 337, 96 N.M. 92. Indemnity ⚷ 65

Under Uniform Contribution Among Tort-feasors Act, automobile accident victim was entitled to proceed against an employer on theory of respondeat superior after having executed, for valuable consideration, a covenant not to sue the negligent employee or his insurer, reserving all rights to proceed against the employer. Yates v. New South Pizza, Ltd., N.C.1992, 412 S.E.2d 666, 330 N.C. 790, rehearing denied 417 S.E.2d 73, 331 N.C. 292. Release ⚷ 37

Uniform Contribution Among Tort-feasors Act broadens the definition of "tort-feasor" to encompass a vicariously liable master; for purposes of the Act, a tort-feasor was one who was liable in tort. Yates v. New South Pizza, Ltd., N.C.1992, 412 S.E.2d 666, 330 N.C. 790, rehearing denied 417 S.E.2d 73, 331 N.C. 292. Contribution ⚷ 5(6.1)

The Uniform Contribution Among Joint Tortfeasors Act, which provides that recovery and satisfaction of a judgment from one tort-feasor, does not preclude a suit against the other tort-feasor, does not apply to cases where there has been a judgment and satisfaction based on a purely derivative theory; thus, it did not permit a negligence action against driver employee by plaintiffs who had received judgment and satisfaction against driver's employer based on purely derivative theory of respondeat superior. Barnett v. Isabell, Ark.1984, 666 S.W.2d 393, 282 Ark. 88. Judgment ⚷ 892

In action arising out of accident in which truck driven by truck driver collided with rear of parked automobile occupied by family, brought against truck driver's certifying physician by truck driver's employer for physician's alleged negligent failure to discern truck driver's physical disabilities, if actual determination of jury was that truck driver's physical disabilities were proximate cause of accident, that truck driver's employer was guilty of negligence in failing to discover truck driver's physical disabilities, and that physician was also guilty of negligence, then truck driver's employer would be entitled to contribution from physician under Uniform Contribution Among Tort Feasors Act. Wharton Transport Corp. v. Bridges, Tenn.1980, 606 S.W.2d 521. Contribution

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

🔑 5(7)

In view of commitment to allow contribution as matter of policy under common law, and fact that motor carrier's negligence, concerning injury to third person when its truck, operated by mechanic employed by defendant truck stop operator, struck injured third person, was based on a rebuttable presumption and could not compare in any degree with negligence of truck stop operator, motor carrier which had settled case against it by injured third person was entitled to recover from truck stop operator on a theory of contribution, notwithstanding assertion that liability of both motor carrier and truck stop operator was based upon respondeat superior so that their negligence was equal. Terminal Transport Co., Inc. v. Cliffside Leasing Corp., Tenn.1979, 577 S.W.2d 455. Contribution 🔑 5(7)

Under rule concerning contribution which allows consideration of quality of negligence of parties, in vicarious negligence cases the quality of negligence depends upon who is the real master of the servant. Terminal Transport Co., Inc. v. Cliffside Leasing Corp., Tenn.1979, 577 S.W.2d 455. Contribution 🔑 5(4)

Generally, employer whose concurring negligence contributes to his employee's injury cannot be held liable for contribution as a joint tort-feasor, the statutory remedy being exclusive. Jack Morgan Const. Co., Inc. v. Larkan, Ark.1973, 496 S.W.2d 431, 254 Ark. 838. Contribution 🔑 5(6.1)

  47. ---- Workers' compensation, employer and employee relationship

Where under Rhode Island Workmen's Compensation Act plaintiff as personal representative of employee had no right of action in tort for damages for death against former employer, employer was not "joint tort-feasor" within Uniform Contribution Among Joint Tort-feasors Act, and hence employer could not be liable for contribution to a third-person tort-feasor although employer's negligence may have concurred in causing the death. Rowe v. John C. Motter Printing Press Co., D.C.R.I.1967, 273 F.Supp. 363. Workers' Compensation 🔑 2142.15

Right of contribution is exclusive matter between joint tort-feasors and is not affected by inability of original plaintiff to obtain relief from his or her employer under Worker's Compensation Act. Pennsylvania Nat. Mut. Cas. Ins. Co. v. Nicholson Const. Co., Pa.Super.1988, 542 A.2d 123, 374 Pa.Super. 13, appeal denied 555 A.2d 116, 521 Pa. 605. Contribution 🔑 7

Where employee's dependents were awarded workmen's compensation and brought an action against third party for employee's death, third party was not entitled to join employer as a party defendant, particularly where third party alleged that employer was solely responsible for employee's injury, notwithstanding the fact that the employer would be entitled to repayment of compensation award. Baltimore Transit Co. v. State, to Use of Schriefer, Md.1944, 39 A.2d 858, 183 Md. 674. Workers' Compensation 🔑 2225

Exclusive remedy provision of Compensation Act precluded steel joist manufacturer's contribution claim against employer for damages owing to employee for injuries sustained while erecting steel joists, even though manu-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

facturer was being sued by employee under strict products liability theory, rather than negligence theory. Tex-Ark Joist Co. v. Derr and Gruenewald Const. Co., Colo.1988, 749 P.2d 431. Workers' Compensation ⚷ 2142

Exclusive remedy provision of Compensation Act protected contractor, who had complied with Compensation Act, from subcontractor's claim for contribution for damages for injury sustained by contractor's employee as result of subcontractor's negligence. Williams v. White Mountain Const. Co., Inc., Colo.1988, 749 P.2d 423. Workers' Compensation ⚷ 2142.15

Uniform Contribution Among Tortfeasors Act did not abrogate effect of workmen's compensation exclusive remedy provision absent showing of legislative intent to alter or supersede existing statutory framework. Tex-Ark Joist Co. v. Derr and Gruenewald Const. Co., Colo.App.1986, 719 P.2d 384, certiorari granted 727 P.2d 863 , affirmed 749 P.2d 431. Workers' Compensation ⚷ 2142.15

An employer who has satisfied his obligations to an employee under Workers' Compensation Act may not be joined as a defendant in a third-party personal injury action and thus be required to respond a second time, even though indirectly, to injuries sustained by employee. Harter Concrete Products, Inc. v. Harris, Okla.1979, 592 P.2d 526. Workers' Compensation ⚷ 2142

Workmen's compensation statute, providing that liability of employer shall be exclusive and in place of all other liability to any third-party tort-feasor and to employee is constitutional. Seaboard Coast Line R. Co. v. Smith., Fla.1978, 359 So.2d 427. Workers' Compensation ⚷ 19

48. ---- Borrowed or loaned servant, employer and employee relationship

Forklift operator who was furnished to railroad by forklift company and who injured railroad employee during operation of forklift was not "loaned servant" such that railroad could obtain contribution from forklift company for amounts paid to its injured employee where forklift company retained right to direct manner in which work by forklift operator was to be done. Missouri Pacific R. Co. v. Champlin & Wells, Inc., C.A.8 (Ark.) 1985, 775 F.2d 255. Contribution ⚷ 5(6.1)

Question of how loss caused by borrowed servant should be distributed as between lending and borrowing masters should be determined in accordance with principles of contribution and indemnity; abandoning Reader v. Ghemm Co., 490 P.2d 1200. Kastner v. Toombs, Alaska 1980, 611 P.2d 62. Contribution ⚷ 5(6.1); Indemnity ⚷ 65

49. Husband and wife

Under Pennsylvania law, husband, as driver, would not be immune from liability for contribution to defendants for any judgment recovered against them by wife passenger for injuries sustained in automobile collision. Krick v. Carter, D.C.Pa.1979, 477 F.Supp. 152. Contribution ⚷ 8

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Maryland's prohibition against the right of contribution against a spouse by an original defendant is founded on fundamentally different policy considerations than preserving domestic tranquility. Krick v. Carter, D.C.Pa.1979, 477 F.Supp. 152. Contribution ☞ 8

Under Maryland law, no contribution could be had from husband, as third-party defendant, for injuries which wife, as passenger, sustained in collision between automobile operated by husband and defendant's vehicle. Krick v. Carter, D.C.Pa.1979, 477 F.Supp. 152. Contribution ☞ 5(7)

Under Pennsylvania law, third party who is sued by one spouse for personal injuries may recover contribution or indemnity against other spouse, even though latter is immune from direct suit by plaintiff spouse. Fisher v. U. S., D.C.Pa.1969, 299 F.Supp. 1, reversed 441 F.2d 1288. Contribution ☞ 5(1); Indemnity ☞ 57

If both driver husband and passenger wife were found negligent in regard to rear-ending of their automobile by defendant driver, the spouses would be considered joint tort-feasors within meaning of the Contribution Act and each would be liable for total amount of judgment and each would be able to sue the other for contribution in event that he/she should be required to pay a disproportionate share of the judgment. Tornquist v. Perkowski, N.J.Super.L.1984, 504 A.2d 1226, 208 N.J.Super. 88. Contribution ☞ 5(7)

While some matters or proceedings between husband and wife within privacy of bedroom may remain within protection of interspousal immunity, where husband and wife lifted veil of secrecy and placed squarely in issue all facts surrounding their use or misuse of alleged defective contraceptive device which caused impregnation and resultant damages, husband's actions were not cloaked with interspousal immunity and could be basis for claim for contribution based upon his alleged negligence. J. P. M. v. Schmid Laboratories, Inc., N.J.Super.A.D.1981, 428 A.2d 515, 178 N.J.Super. 122. Contribution ☞ 5(6.1)

Defendant motorist would be entitled to contribution from husband for all sums found to be due to estate of deceased wife in death and survival actions arising out of automobile accident in which wife was killed while riding as passenger in husband's automobile if husband was negligent in operation of automobile. France v. A. P. A. Transport Corp., N.J.1970, 267 A.2d 490, 56 N.J. 500. Contribution ☞ 5(7)

Intrafamily immunity doctrine would prevent husband and minor children from obtaining a judgment against wife, but she would nevertheless remain liable for contribution if she were to be found a joint tortfeasor. Restifo v. McDonald, Pa.1967, 230 A.2d 199, 426 Pa. 5. Contribution ☞ 5(5); Contribution ☞ 5(6.1); Husband And Wife ☞ 205(2); Parent And Child ☞ 11

Husband, sued by automobile owner for contribution as joint tortfeasor in action wherein wife, as passenger in husband's automobile, recovered from automobile owner for injuries sustained as result of collision, was joint tortfeasor within meaning of this Act and was liable in action for contribution although he was immune from liability to his wife in any action by her as result of automobile collision. Zarrella v. Miller, R.I.1966, 217 A.2d 673, 100 R.I. 545. Contribution ☞ 5(7)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendant, who had only a derivative right, if any, in actions commenced against him by husband as administrator of his wife's estate, could not maintain third-party claims against husband, who was driving automobile in which decedent was riding at time it collided with defendant's automobile, on theory that husband was or might have been liable to defendant for all or part of such claims, in view of fact that at time of alleged tortious act of husband he and decedent were married, and therefore decedent could not have maintained an action against her husband on account of his alleged negligent operation of his automobile. Ennis v. Donovan, Md.1960, 161 A.2d 698, 222 Md. 536. Contribution ☞ 5(7)

Where automobile driver's wife and daughter recovered verdicts against him and railroad company as joint tortfeasors, and railroad company paid verdicts in full, it could not recover from automobile driver half amount it had paid to his wife and daughter. Puller v. Puller, Pa.1955, 110 A.2d 175, 380 Pa. 219. Contribution ☞ 6

Where complaint charged that defendant negligently drove her automobile into an automobile owned by plaintiff wife and operated by her husband, defendant was not entitled to file a third-party complaint against the husband seeking contribution from him as a joint tort-feasor, since to permit the third-party proceeding would be to render the husband liable indirectly upon a claim to the wife for which he could not be held liable directly. Ferguson v. Davis, Del.Super.1954, 102 A.2d 707, 48 Del. 299. Contribution ☞ 5(7); Husband And Wife ☞ 205(2)

Doctrine of interspousal immunity barred third party claim for indemnification and/or contribution against third-party defendant where third-party defendant was spouse of plaintiff. Moler v. Quality Chevrolet, Inc., Ohio App.1981, 440 N.E.2d 1228, 2 Ohio App.3d 120, 2 O.B.R. 134. Contribution ☞ 5(5); Indemnity ☞ 94

Common-law doctrine of interspousal immunity did not protect husband as host driver from liability to his wife as passenger for injuries sustained in collision and, hence, did not preclude owner and operator of other vehicle, named as defendants in main action by wife, from seeking to recover in third-party action against husband for contribution as a joint tort-feasor. Hayon v. Coca Cola Bottling Co. of New England, Mass.1978, 378 N.E.2d 442, 375 Mass. 644. Contribution ☞ 5(5); Contribution ☞ 5(7); Husband And Wife ☞ 205(2)

Statute affording a right of contribution in those instances when two or more persons become jointly liable in tort for same injury to person or property applied to third-party action wherein owner and operator of vehicle, named as defendants in main action by wife, sought to recover against husband as host driver of wife's vehicle for contribution as a joint tort-feasor. Hayon v. Coca Cola Bottling Co. of New England, Mass.1978, 378 N.E.2d 442, 375 Mass. 644. Contribution ☞ 5(7)

Automobile accident defendant was not precluded by doctrine of interspousal tort immunity from filing third-party suit against wife of victim plaintiff for contribution. Campo v. Taboada, Hawai'i 1986, 720 P.2d 181, 68 Haw. 505. Contribution ☞ 5(7)

Contribution cannot be obtained from a wife's husband, as a joint tort-feasor, under 1953 Comp. § 24-11 et seq. Rodgers v. Galindo, N.M.1961, 360 P.2d 400, 68 N.M. 215. Contribution ☞ 5(6.1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendant could not obtain contribution from plaintiff's husband, who was operating automobile in which plaintiff was riding, as a joint tort-feasor, in wife's action for injuries sustained in collision with defendant's automobile. Rodgers v. Galindo, N.M.1961, 360 P.2d 400, 68 N.M. 215. Contribution ⚷ 5(7)

Where wife-owner recovered for automobile damage and husband-driver recovered for personal injuries in action in which jury found husband guilty of 45 per cent of negligence and defendants' driver guilty of 55 per cent, defendants, upon discharging judgment in favor of wife-owner would be entitled to file motion for judgment for contribution from husband-motorist under Ark.Stats. § 34-1002. Wymer v. Dedman, Ark.1961, 350 S.W.2d 169, 233 Ark. 854. Contribution ⚷ 6

Although claim against husband of wife, an Ohio resident who was injured in Florida accident involving automobile driven by husband, an Ohio resident insured under Ohio policy, was barred under Ohio's doctrine of interspousal immunity, under Florida law, other driver's cross claim for contribution against husband was viable. Pennington v. Dye, Fla.App. 2 Dist.1984, 456 So.2d 507. Contribution ⚷ 5(7)

Ohio law, which declines to permit contribution between spouses, applied to preclude other driver's right of contribution from passenger's husband in passenger's negligence action for injuries from accident in Florida involving car driven by her husband, as all parties were residents of Ohio and policies were issued in Ohio. Pennington v. Dye, Fla.App. 2 Dist.1984, 456 So.2d 507. Contribution ⚷ 5(7)

Common-law doctrine of interspousal immunity does not control over Uniform Contribution Among Tortfeasors Act to prevent one tort-feasor from seeking contribution from another tort-feasor when other tort-feasor is spouse of injured person who received damages from first tort-feasor. Florida Farm Bureau Ins. Co. v. Government Emp. Ins. Co., Fla.App. 1 Dist.1979, 371 So.2d 166, decision quashed in part 387 So.2d 932. Contribution ⚷ 5(5); Husband And Wife ⚷ 205(2)

50. Parent and child

Doctrine of parental immunity under Oklahoma law did not bar contribution order, directing mother's estate to contribute to recovery of her son's estate, in wrongful death actions against railroad for fatal intersection collision in which both contributorily negligent parent and child died. Robinson v. Missouri Pacific R. Co., C.A.10 (Okla.) 1994, 16 F.3d 1083. Contribution ⚷ 5(5); Contribution ⚷ 5(7)

Under Florida law, defendant in tort action brought on behalf of infant or minor plaintiff is not barred from asserting claim for contribution, grounded in negligence, against parent of infant plaintiff; rather defendant is limited in such claim to amount of liability insurance, if any, maintained by parent. Williams By and Through Williams v. U.S., D.C.Fla.1985, 608 F.Supp. 269. Contribution ⚷ 5(6.1)

If father, who was standing with infant child at curb of street, released child's hand after observing traffic in the roadway and told child to cross the street where she was struck by vehicle, parent-child immunity doctrine would not bar vehicle driver, who was sued for child's injuries, from seeking contribution and/or indemnification from father, but recovery could not be based on theory of negligent supervision. Carey v. Davison,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.J.Super.L.1981, 437 A.2d 338, 181 N.J.Super. 283. Contribution ☞ 5(7); Parent And Child ☞ 11

Defendant motorist would be entitled to contribution from father of plaintiff minor unemancipated children for injuries sustained by the children in collision between defendant motorist's automobile and father's automobile as the result of the father's alleged negligent operation of automobile. France v. A. P. A. Transport Corp., N.J.1970, 267 A.2d 490, 56 N.J. 500. Contribution ☞ 5(7)

Father may be held liable for contribution to dog owner for negligently supervising his two-and-one-half-year-old son when he was bitten by dog. Meier v. Morrison (Ohio Com.Pl., 02-28-1995) 655 N.E.2d 449, 72 Ohio Misc.2d 12. Contribution ☞ 5(6.1)

Where third-party defendant in negligence action arising out of automobile accident stood in loco parentis to plaintiff in action, trial court's ruling that third-party complaint did not state cause of action for contributions from third-party defendant for injuries sustained by plaintiff was not erroneous on grounds that there was no legal obligation on behalf of third-party defendant toward plaintiff and, therefore, third-party defendant should not enjoy benefit of parental immunity. Barry v. Schorling, Ohio App.1981, 440 N.E.2d 1216, 2 Ohio App.3d 110, 2 O.B.R. 123. Contribution ☞ 5(7)

Where father's liability, as automobile owner, for injuries sustained in accident occurring when son was using vehicle was vicarious and based solely on family car doctrine, the father and son, although severally liable, were not joint tort-feasors for purpose of Uniform Contribution Among Tortfeasors Act and, hence, judgement creditor could effect a release of the son while expressly retaining right to execute on judgment against the father. McCall v. Roper, Colo.App.1984, 685 P.2d 230. Release ☞ 29(4)

Where parents sued for injuries sustained in automobile accident between parents' automobile which was driven by their minor unemancipated son and vehicle driven by defendant and defendant joined minor as third-party defendant, minor was liable in tort to his parents, was subject to contribution to his joint tort-feasor, and could be made third-party defendant for that purpose. Tamashiro v. De Gama, Hawai'i 1969, 450 P.2d 998, 51 Haw. 74. Contribution ☞ 5(7); Parent And Child ☞ 11; Parties ☞ 51(4)

Riding lawn mower did not constitute a "motor vehicle" within meaning of statute [G.S. § 1-539.21] providing that relationship of parent and child shall not bar a right of action by minor against parent for personal injury or property damage arising out of operation of motor vehicle owned or operated by parent; thus the limited statutory exception to parent-child immunity did not apply to products liability action in which manufacturer sought to bring third-party contribution action against parent of injured minor to recover contribution for damages awarded to minor. Lee by Schlosser v. Mowett Sales Co., Inc., N.C.App.1985, 334 S.E.2d 250, 76 N.C.App. 556, affirmed 342 S.E.2d 882, 316 N.C. 489. Contribution ☞ 5(6.1); Parent And Child ☞ 11

Manufacturer could not maintain action against parent of injured minor, based on allegations of joint negligence, to recover contribution for damages awarded to minor in products liability action. Lee by Schlosser v. Mowett Sales Co., Inc., N.C.App.1985, 334 S.E.2d 250, 76 N.C.App. 556, affirmed 342 S.E.2d 882, 316 N.C. 489. Con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tribution ⚷ 5(6.1)

Since parent cannot be held liable in direct action against him by injured child, third party may not maintain action against parent, based on allegations of joint negligence, to recover contribution for damages awarded to minor. Lee by Schlosser v. Mowett Sales Co., Inc., N.C.App.1985, 334 S.E.2d 250, 76 N.C.App. 556, affirmed 342 S.E.2d 882, 316 N.C. 489. Contribution ⚷ 5(6.1)

Father of minor drowning victim, who was 66  2/3 percent at fault, was liable in contribution for his share of damage award to mother of victim for which owners of swimming pool were liable in wrongful death action against owners by nonnegligent mother. Gurney v. Cain, Fla.App. 4 Dist.1991, 588 So.2d 244, review denied 599 So.2d 656. Contribution ⚷ 5(6.1)

Doctrine of family immunity did not bar school board from seeking contribution from parents after jury in parents' wrongful death action found board to be negligent and each parent to be comparatively negligent in death of child. Johnson v. School Bd. of Palm Beach County, Fla.App. 4 Dist.1989, 537 So.2d 685. Contribution ⚷ 5(6.1)

If parent of child who was injured partially through parent's negligence attempts to assign parent's right of action or if action is brought by some third-party for child's future medical expenses during minority, defendants are entitled to contribution from parent for percentage of parent's negligence under the Uniform Contribution Among Tort-feasors Act. Caranna v. Eades, Fla.App. 2 Dist.1985, 466 So.2d 259. Contribution ⚷ 5(6.1)

Action for contribution is available to third-party tort-feasor against parents whose neglect in parental supervision and control contributes to causing injuries to their minor child. Chinos Villas, Inc. v. Bermudez, Fla.App. 3 Dist.1984, 448 So.2d 1179. Contribution ⚷ 5(6.1)

In parents' action alleging that defendant failed to provide lifesaving apparatus and other emergency assistance, which negligence caused or contributed to causing child's drowning death, defendants could, by counterclaim, seek contribution from parents for their alleged negligent failure to properly supervise, control and protect their child. Chinos Villas, Inc. v. Bermudez, Fla.App. 3 Dist.1984, 448 So.2d 1179. Contribution ⚷ 5(6.1)

In action in which injured minor pedestrian obtained judgment against motorist and in which it was in effect determined that minor's mother's negligent supervision of minor contributed to his injury, contribution was available against mother, but only to extent of existing liability insurance coverage for her tort against minor. Joseph v. Quest, Fla.1982, 414 So.2d 1063, on remand 416 So.2d 27. Contribution ⚷ 5(7)

There is no right of contribution against a joint tort-feasor who is parent of injured minor if parent is without liability insurance or if policy contains an exclusion clause for household or family members. Woods v. Withrow, Fla.1982, 413 So.2d 1179. Contribution ⚷ 5(6.1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**51.** Anti-trust cases

Where defendants were sued in antitrust actions as theater operations presenting legitimate attractions and controlling legitimate theater business of city, and they were charged with preventing plaintiff's theater from presenting legitimate attractions to injury of plaintiff, and third-party complaint alleged that third-party defendants conspired to see that one of the third-party defendants obtained first-run movies and that plaintiff did not, and that, as a result, third-party defendants were liable in treble damages under 15 U.S.C.A. §§ 1, 2, defendants and third-party defendants were not joint tort-feasors, and defendants were not entitled to contribution from third-party defendants under 12 P.S. § 2082 et seq., and District Court properly granted plaintiff's motion to vacate ex parte order permitting joinder of third-party defendants and properly dismissed third-party complaint. Goldlawr, Inc. v. Shubert, C.A.3 (Pa.) 1960, 276 F.2d 614. Contribution ☞ 5(6.1); Federal Civil Procedure ☞ 294; Federal Civil Procedure ☞ 296

**52.** Arbitration

Under Florida law, supplier of allegedly defective insulation material which fully satisfied arbitration award against it brought by contractor could seek contribution with respect to tort claims based on defective and negligent design, manufacture and installation of the insulation and its component adhesive, as well as breaches of warranty based solely on its status as supplier of the insulation. Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc., S.D.N.Y.1987, 658 F.Supp. 197. Contribution ☞ 5(6.1); Contribution ☞ 6

**53.** Banking transactions

Under Colorado Uniform Contribution Among Tortfeasors Act, C.R.S. 13-50.5-101 to 13-50.5-106, former loan officer of national bank could seek contribution from other members of bank's board of directors and its loan and discount committee for negligence in authorizing certain loans. Cache Nat. Bank v. Hinman, D.Colo.1986, 626 F.Supp. 1341. Contribution ☞ 5(6.1)

Under New Jersey law, attorney's alleged liability to clients for failing properly to supervise out-of-state attorney to whom he transferred clients' personal injury case, and who subsequently embezzled clients' funds, was not of sort which would entitle attorney to indemnity from bank, which was guilty of negligence in handling of attorney's deposit, if referring attorney were held liable for clients' loss: and thus bank was not barred from seeking contribution. Tormo v. Yormark, D.C.N.J.1975, 398 F.Supp. 1159. Contribution ☞ 5(6.1); Indemnity ☞ 64

Bank was not liable to modular home dealer by way of contribution, where bank and dealer were not joint tort-feasors in connection with defectively constructed modular home, and bank had been determined not to be guilty of fraud and bad faith in dealing with modular home purchasers. Garner v. Hickman, Wyo.1985, 709 P.2d 407. Contribution ☞ 5(6.1)

**54.** Brokers

Nonaffiliated director of mutual fund who was held jointly and severally liable along with broker for manage-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ment fees paid by mutual fund to investment advisory company was entitled to contribution from broker, which was held solely liable to fund for brokerage profits which amounted to less than management fees, and agreement between mutual fund and broker to first apply settlement money to broker's individual liability was ineffectual. Lutz v. Boas, Del.Ch.1961, 176 A.2d 853, 40 Del.Ch. 130. Contribution ☞ 3; Contribution ☞ 8

10 Del.C. § 6301 et seq., was applicable in determining right of mutual fund to recover brokerage fees and management fees from broker and nonaffiliated director and in determining rights of contribution between nonaffiliated director and broker. Lutz v. Boas, Del.Ch.1961, 176 A.2d 853, 40 Del.Ch. 130. Contribution ☞ 1


### 55. Contract actions

Possibility that engineering firm's alleged delays and design drawing company's alleged delays jointly contributed to damages sought in action involving those parties, owner, prime contractor, and subcontractor did not make firm and company joint tort-feasors, and, thus, firm was not entitled to contribution from drawing company under Pennsylvania law; even though firm's complaint against drawing company was couched in negligence terms, it was actually based upon company's breach of its contract with owner. Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc., W.D.Pa.1989, 714 F.Supp. 756. Contribution ☞ 5(6.1)


Construction contractor's insurer could not bring contribution claim against stucco manufacturer, where contractor could be liable to home purchasers, for construction defects, only based on breach of contract, and not on tort; contractor was thereby precluded from being a joint tortfeasor who could recover from another joint tortfeasor under contribution statute. Land v. Tall House Bldg. Co., N.C.App.2004, 602 S.E.2d 1, 165 N.C.App. 880. Contribution ☞ 5(6.1)


Since bad-faith claim against insurance company was action ex contractu rather than tort, company's third-party claim for contribution among tort-feasors could not lie. Iowa Mut. Ins. Co. v. Lopez, Fla.App. 3 Dist.1984, 444 So.2d 1021. Contribution ☞ 5(6.1)


### 56. Warranties

For purposes of Uniform Contribution Among Tortfeasors Act, plaintiff's suit for breach of implied warranty brought against supermarket arising from injury to plaintiff's tooth allegedly caused by substance in a meat product sold by supermarket could be a "claim in tort" which would allow plaintiff to claim the role of an injured person under Act. Loh v. Safeway Stores, Inc., Md.App.1980, 422 A.2d 16, 47 Md.App. 110. Sales ☞ 425


Statute granting right of contribution among joint tort-feasors should be read to include tort-like liability for breach of implied warranty of merchantability. Wolfe v. Ford Motor Co., Mass.1982, 434 N.E.2d 1008, 386 Mass. 95. Contribution ☞ 5(6.1)


Assembler of truck camper who was liable for breach of implied warranty of merchantability and required to pay judgment for injuries sustained in accident involving the vehicle was "jointly liable in tort" with manufacturer of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

truck used in construction of the vehicle within meaning of statute granting right of contribution among joint tortfeasors. Wolfe v. Ford Motor Co., Mass.1982, 434 N.E.2d 1008, 386 Mass. 95. Contribution ☞ 5(7)

Claim for relief based on breach of implied warranty gives rise to no right of contribution, as it sounds in contract and not in tort. Holland v. Edgerton, N.C.App.1987, 355 S.E.2d 514, 85 N.C.App. 567. Contribution ☞ 3

### 57. Manufacturers or modifiers of defective products

Determination in underlying wrongful death actions that airline pilots engaged in "willful misconduct," under the meaning of the Warsaw Convention, was equivalent to determining pilots' conduct was reckless under Florida law and, thus, was insufficient to deny, as a matter of law, airline's right of contribution against manufacturer of aircraft's flight management computer (FMC) and company which furnished navigational database programmed into FMC, under Florida Uniform Contribution Among Tortfeasors Act (UCATA). In re Air Crash Near Cali, Colombia on December 20, 1995, S.D.Fla.1998, 24 F.Supp.2d 1340. Contribution ☞ 5(6.1)

Fairness demanded allowing switchboard manufacturer to maintain action for contribution against company which allegedly made modifications to switchboard prior to user's injuries for that portion of user's damages, as computed in Wisconsin litigation, allegedly attributable to modifying company under Tennessee principles of comparative fault where user's claim was litigated pursuant to Wisconsin law, modifying company might have been tortfeasor contributing to injuries but was not subject to personal jurisdiction in Wisconsin suit, and manufacturer was jointly and severally liable under Wisconsin law to user for any damages or fault assigned by jury to other tortfeasors. General Elec. Co. v. Process Control Co., Tenn.1998, 969 S.W.2d 914, rehearing denied. Contribution ☞ 5(6.1)

### 58. Fraud

Under Ohio law, defendant charged with common-law fraud cannot claim either contribution or indemnification. Baker v. BP America, Inc., N.D.Ohio 1990, 749 F.Supp. 840. Contribution ☞ 5(3); Indemnity ☞ 64

General rule is that if parties to fraud are in pari delicto law will leave them where it finds them and principle of contribution does not apply. Knox-Tenn Rental Co. v. Jenkins Ins., Inc., Tenn.1988, 755 S.W.2d 33. Contribution ☞ 5(1)

### 59. Landlord and tenant

Television set manufacturer, sued by tenant for wrongful death under Pennsylvania law because of fire caused by allegedly defective set had no cause of action for contribution or indemnity arising out of alleged third-party defendant landlord's negligence, where there was no question of primary or secondary liability and no question of vicarious liability since liability, if any, of landlord for contribution must arise out of tort law governing liability of landlord to tenant because of negligence and there had to be proof of some direct omission by landlord of performance of a duty he owed to tenant. Groover v. Magnavox Co., D.C.Pa.1976, 71 F.R.D. 638. Contribution ☞ 5(6.1); Indemnity ☞ 68

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Board of elections that leased church building from church for use as polling place was contractually obligated to indemnify church for church's share of liability for injuries to voter in fall on premises, even though lease contained no express indemnification provision; lease provided that board carried liability insurance "for voters" and that building was to be vacated by church on election days, and any ambiguities were construed against board as drafter of the lease. McClorey v. Hamilton Cty. Bd. of Elections, Ohio App. 1 Dist.1998, 720 N.E.2d 954, 130 Ohio App.3d 621. Landlord And Tenant ⚷ 156

60. Malpractice

Whenever two actions are brought for separately identifiable acts of negligence on the part of original wrongdoer and treating physician, apportionment of damages between the two causes should take place. Lasprogata v. Qualls, Pa.Super.1979, 397 A.2d 803, 263 Pa.Super. 174. Contribution ⚷ 5(6.1)

When medical provider's negligent treatment of bodily injuries caused by tort-feasor results in further injury or aggravation of original injury, statute providing right of contribution among joint tort-feasors creates right of contribution among tort-feasor and medical provider as to indivisible injuries. Motorists Mut. Ins. Co. v. Huron Rd. Hosp. (Ohio , 08-30-1995) 653 N.E.2d 235, 73 Ohio St.3d 391, 1995-Ohio-119. Contribution ⚷ 5(6.1)

Purchasers' action against environmental auditor for professional malpractice in conducting audit of purchased property did not fall within exception to abolition of joint liability in cause of action "relating to hazardous wastes or substances or solid waste disposal sites," so as to entitle auditor to bring contribution claim against purchasers' counsel following settlement with purchasers, despite assertion that contribution claim related to hazardous waste or substances because purchaser's action was for auditor's failure to discover property's environmental problems. Cella Barr Associates, Inc. v. Cohen, Ariz.App. Div. 1 1994, 868 P.2d 1063, 177 Ariz. 480. Environmental Law ⚷ 447

Hospital's allegations that surgeon intended to help patient obtain large verdict against hospital in malpractice action did not present appropriate case for allowing hospital, after settling with patient, to bring contribution claim against surgeon under fairness exception to comparative fault doctrine; hospital had every opportunity to take case to trial and have jury decide percentage of fault and assess damages among hospital, surgeon, and surgeon's employer. Smith v. Methodist Hospitals of Memphis, Tenn.Ct.App.1999, 995 S.W.2d 584, appeal denied, rehearing of denial of appeal denied. Contribution ⚷ 5(6.1)

Lawyers were not entitled to contribution from forwarding law firm to settlement of action based on failure of both sets of lawyers to file client's suit within legal limitations period; the evidence demonstrated that as between the two sets of lawyers, it was the responsibility of the lawyers to whom the potential suit was forwarded to see that the action was timely filed. Clark v. Fuchs, Fla.App. 4 Dist.1989, 544 So.2d 1066. Contribution ⚷ 5(6.1)

Physician was not a joint tort-feasor with pharmacy and pharmacist and therefore was not subject to contribution claim by way of third-party complaint in patient's lawsuit, given that, if physician's office phoned in wrong prescription, physician and the employee would be solely responsible, and if physician was negligent in failing to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

timely diagnose the earlier alleged negligence of pharmacy defendants in dispensing wrong prescription, that would at most make physician a subsequent, rather than joint, tort-feasor. Albertson's, Inc. v. Adams, Fla.App. 2 Dist.1985, 473 So.2d 231, review denied 482 So.2d 347. Contribution ☞ 5(6.1)

61. Motor vehicle cases--In general

Automobile manufacturer whose safety belt was allegedly defective and driver whose negligence allegedly caused collision were "joint tort-feasors" within meaning of Uniform Contribution Among Tort-Feasors Act, since they were jointly and severally liable for any injuries suffered by plaintiff as a result of collision and failure of safety belt. Sinelli v. Ford Motor Co., D.Md.1993, 810 F.Supp. 668, affirmed 7 F.3d 226.

Automobile manufacturer and driver of automobile in which products liability plaintiff was passenger at time of accident were not "joint tort-feasors," and thus, manufacturer could not maintain third-party complaint against driver; plaintiff was seeking damages only for enhanced injuries pursuant to crashworthiness doctrine and driver could not be held liable to manufacturer for enhanced injuries allegedly caused by manufacturer's product. Harries v. General Motors Corp., M.D.Pa.1992, 786 F.Supp. 446. Contribution ☞ 5(7)

A manufacturer of automobile was liable for injuries to purchaser because of defective steering assembly, was not entitled to contribution from dealer for amount of judgment rendered against manufacturer on theory that jam nut which caused the defect was properly secured when automobile left manufacturer's factory, and that dealer loosened the jam nut either in course of making automobile ready for delivery to purchaser or while attempting to make adjustment during course of 1,000 mile inspection under evidence. Duckworth v. Ford Motor Co., D.C.Pa.1962, 211 F.Supp. 888, affirmed in part, reversed in part and remanded 320 F.2d 130. Contribution ☞ 5(7)

Where automobile and tractor-trailer collided on Arkansas highway and each driver was negligent to extent of 50 per cent of total negligence, the driver of automobile and the owner of the tractor-trailer and its driver, who was acting in scope of his employment at time of collision, were jointly liable to owner of parked tractor which was struck by tractor-trailer, and were jointly liable to absent owner of automobile, and on payment by driver and owner of tractor-trailer of the entire judgment in favor of the owner of the parked tractor and owner of automobile, the driver and owner of the tractor-trailer would be entitled to contribution from driver of automobile under Ark.Stats. § 34-1007(3). Sunday v. Burk, D.C.Ark.1959, 172 F.Supp. 722. Contribution ☞ 5(7)

Under 12 P.S. §§ 2082-2089, the United States was entitled to contribution from tractor-trailer driver and owners of tractor and trailer for half of amount of damages awarded plaintiffs by judgment against United States in action under Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., for damages to plaintiffs' personalty in leased house rammed into by tractor-trailer after colliding with post office bus and swerving from road. Russell v. U. S., D.C.Pa.1953, 113 F.Supp. 353. Contribution ☞ 5(7)

Under 12 P.S. §§ 2082-2089, the United States is entitled to contribution from tractor-trailer driver and owners of tractor and trailer for half of amount of damages awarded plaintiffs in action under Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., for damage to plaintiffs' house as result of being struck by tractor-trailer when it

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

swerved from road after colliding with post office bus as a proximate result of such driver's negligence concurring with that of bus driver. Showers v. U. S., D.C.Pa.1953, 113 F.Supp. 350. Contribution ⚷⟶ 5(7)

Manufacturer of infant car seat was entitled to contribution or indemnity from driver if driver's negligence was proven. Smith by Smith v. Kolcraft Products, Inc., D.C.Pa.1985, 107 F.R.D. 767. Contribution ⚷⟶ 5(7); Indemnity ⚷⟶ 72

In absence of any evidence that subcontractor which contracted with bridge contractor to paint bridge did anything which contributed to collision which occurred when eastbound automobile struck westbound automobile which contractor's employees had diverted into eastbound lane without warning eastbound motorist, contractor was not entitled to contribution from subcontractor under Uniform Contribution Among Tortfeasors Act in regard to judgment rendered against contractor in favor of eastbound motorist. Gordon v. Campanella Corp., R.I.1973, 311 A.2d 844, 112 R.I. 417. Contribution ⚷⟶ 5(7)

Where automobile collision is result of negligence of both plaintiff and defendant automobile drivers, defendant automobile driver had a right to seek contribution from plaintiff automobile driver as a joint tort-feasor in respect to the total damage which plaintiff and her joint owner recover for the injury to their automobile. Maloney v. Rodgers, Pa.Super.1957, 135 A.2d 88, 184 Pa.Super. 342. Contribution ⚷⟶ 5(7)

In action for damages sustained in an automobile collision, additional defendants against whom verdict was rendered had the right to make the original defendants share their liability to the plaintiff for his damages if those defendants were in fact also guilty of negligence which helped to cause the accident. Ratcliff v. Myers, Pa.1955, 113 A.2d 558, 382 Pa. 196. Contribution ⚷⟶ 5(7)

Where judgments had been obtained against trucking company for damages from accident in which tractor-trailer hit curb of grass plot in center of street, city was liable by way of contribution for half of damages paid by company, if city was guilty of any negligence directly contributing to accident. East Coast Freight Lines v. Mayor and City Council of Baltimore, Md.1948, 58 A.2d 290, 190 Md. 256. Contribution ⚷⟶ 5(7)

On record presented, in action for injuries sustained by passenger in following vehicle which swerved off highway to avoid colliding with preceding vehicle engaged in making U-turn, it was not error to hold that preceding motorist's acts had contributed to accident in amount of 65%, and to require contribution accordingly. Mitchell v. Branch, Hawai'i 1961, 363 P.2d 969, 45 Haw. 128. Contribution ⚷⟶ 7

Jury finding, in automobile accident case against plaintiff's insureds and defendant from whom insurer sought contribution for one-half of judgment satisfied by insurer, that injuries and damages did not result from any negligence of defendant precluded insurer from obtaining contribution, and jury finding in the automobile accident case on defendant's cross claim against plaintiff's insureds that defendant was guilty of contributory negligence was not tantamount to determination of joint tort liability. Iowa Nat. Mut. Ins. Co. v. Surratt, N.C.App.1973, 200 S.E.2d 220, 19 N.C.App. 745. Contribution ⚷⟶ 5(7); Contribution ⚷⟶ 9(7)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Where injury to occupant of automobile was caused by negligence of truck driver who at that time was under joint supervision of service station and truck owner, the two supervisors should equally share the loss and truck owner which settled with occupant was entitled to only 50% contribution from station. Terminal Transport Co., Inc. v. Cliffside Co., Inc., Tenn.App.1980, 608 S.W.2d 850. Contribution 7

Where there was sufficient evidence before jury in action by truck driver for damages of $554.93 against three motorists who forced truck into ditch, to permit jury to appraise the conduct of each motorist and to undertake, as fairly as practicable, to fix the responsibility of each motorist, jury had right to find that two motorists were liable for $200 each and one motorist for $154.93, though there was no instruction authorizing apportionment of damages, and though two of the motorists were allegedly execution proof. Little v. Miles, Ark.1948, 212 S.W.2d 935, 213 Ark. 725. Trial 335

Trial court was not required to apportion restitution damages between defendant and other party involved in causing damage to victim's truck, as victim could not specifically state what damage was caused by each of the participants; defendant could seek reimbursement from other participant in criminal mischief. Walker v. State, Fla.App. 5 Dist.1987, 516 So.2d 70. Contribution 5(6.1); Sentencing And Punishment 2178

Roadwork contractor was not liable to private road owner under negligence theory of indemnity and contribution for injuries sustained by third parties when their automobile skidded on slippery road repaired and resurfaced by contractor; owner accepted and paid for contracted resurfacing with clear and explicit knowledge that resurfaced road was slippery, and sealer applied to roadway was not an inherently dangerous commodity. Jackson v. L.A.W. Contracting Corp., Fla.App. 5 Dist.1986, 481 So.2d 1290, review denied 492 So.2d 1333, review denied 492 So.2d 1335. Contribution 5(7); Indemnity 67

In action brought by passenger and driver of automobile involved in accident against contractor, which filed third-party claim against subcontractor, subcontractor's claim against driver for contribution would be allowed so that in the event that driver and passenger were not found to be joint venturers at time of accident and if jury found that driver was partially at fault as a joint tort-feasor, proper distribution of liability with respect to passenger would be insured. Florida Rock & Sand Co. v. Cox, Fla.App. 3 Dist.1977, 344 So.2d 1296. Parties 55

62. ---- Passengers or guests, motor vehicle cases

Although both driver of naval truck and preceding motorist whose automobile was struck by truck, were negligent, government would not be liable to automobile driver by way of contribution for any damages he might have to pay to injured occupant of naval truck. Maddux v. Cox, C.A.8 (Ark.) 1967, 382 F.2d 119. United States 78(17)

Since host driver was not liable to her guest passengers for injuries arising out of accident in absence of allegation and proof of intentional and wanton conduct on her part, host driver could not be held liable for contribution on counterclaim of defendant driver of other vehicle alleging that negligence on the part of host driver was a cause of injuries. Rigsby v. Tyre, Del.Super.1977, 380 A.2d 1371. Contribution 5(7)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Jury finding that both host driver and other driver in automobile collision were negligent was binding and governed other driver's right to contribution from host driver; and thus court erred when, viewing directed verdict at close of passenger's case for host driver as relieving him of any further participation in the case or defense to claims, it denied motion of other driver for contribution. Holloway v. Wright, Md.App.1974, 320 A.2d 572, 21 Md.App. 615. Contribution ⟤ 5(7)

Motorist sued by passenger in other automobile could not recover against host driver for contribution as joint tort-feasor unless host driver was liable to passenger. Mumford v. Robinson, Del.Supr.1967, 231 A.2d 477. Contribution ⟤ 5(7)

Defendant motorist who collided with automobile driven by joint tortfeasor resulting in death of passenger in such automobile was not precluded from seeking contribution from joint tort-feasor on ground that defendant's evidence negatived finding that the two could have been jointly negligent, since defendant's action of swerving into left lane, even though blinded by joint tort-feasor's high beams, could be deemed negligence for failure to go into the wide right shoulder of road with which the evidence showed defendant familiar. Harger v. Caputo, Pa.1966, 218 A.2d 108, 420 Pa. 528. Contribution ⟤ 9(6)

In action by streetcar company against taxicab owner, as alleged joint tort-feasor, for contribution after company had paid representative and widow of deceased taxicab passenger and other passenger for death and injuries resulting when streetcar struck taxicab which had been stopped on the streetcar tracks, evidence was sufficient to establish negligence on part of owner's driver, which was sufficient to entitle company to contribution. O'Keefe v. Baltimore Transit Co., Md.1953, 94 A.2d 26, 201 Md. 345. Contribution ⟤ 9(6)

Defendant, found liable for injuries sustained when police cruiser in which plaintiff was a passenger collided with a motor vehicle operated by defendant, could derivatively enforce liability to plaintiff of driver of police cruiser by alleging in third-party claim for contribution that plaintiff's injuries were caused by driver's negligence. Foley v. Kibrick, Mass.App.Ct.1981, 425 N.E.2d 376, 12 Mass.App.Ct. 382. Contribution ⟤ 5(7)

Under statute, proof of host driver's gross negligence was necessary to entitle truck owner and truck driver against whom automobile guest brought action for injuries sustained in collision between automobile and truck to contribution. O'Mara v. H. P. Hood & Sons, Inc., Mass.1971, 268 N.E.2d 685, 359 Mass. 235. Contribution ⟤ 9(6)

If recovery is denied because of guest statute, operator cannot be "liable in tort" for injury to guest and defendants cannot receive contribution from such operator; if, however, occupant is found to be a passenger rather than a guest, a breach of the same duty of ordinary care can make operator "liable in tort" and allow contribution to defendants. Olesen v. Snyder, S.D.1976, 249 N.W.2d 266. Automobiles ⟤ 181(1); Contribution ⟤ 5(7)

Defendant, in personal injury action arising from automobile accident was not entitled to contribution or reduction in his liability to plaintiff passenger on basis of contention that driver of vehicle in which plaintiff was riding was jointly negligent since, through operation of South Dakota guest statute, such driver was not liable for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 4457-40   Filed 11/01/11   Page 90 of 175

Unif. Contribution Among Tortfeasors Act § 1                                            Page 84

plaintiff's injuries; right to contribution is determined by whether there is joint or several liability rather than presence of joint or concurring negligence. Beck v. Wessel, S.D.1976, 237 N.W.2d 905, 90 S.D. 107. Contribution ⬤═➤ 5(7)

Under guest statute, automobile passenger had no claim for damages against driver of car in which he was riding and therefore Joint Tortfeasors Act protected driver from third-party complaint for contribution. Baldonado v. Navajo Freight Lines, Inc., N.M.App.1977, 562 P.2d 1138, 90 N.M. 284, reversed 562 P.2d 497, 90 N.M. 264. Contribution ⬤═➤ 5(7)

Fact that representatives of deceased motorist and guest prevailed against truck driver and his employer in action against another motorist and truck driver and his employer did not, of itself, entitle the other motorist, who had filed cross complaint for contribution and personal injuries, to favorable verdict on cross complaint. Ellsworth Bros. Truck Lines v. Mayes, Ark.1969, 438 S.W.2d 724, 246 Ark. 441. Automobiles ⬤═➤ 247; Contribution ⬤═➤ 5(7)

63. ---- Second accident doctrine, motor vehicle cases

Under Mississippi law, where alleged design defect in automobile did not cause or contribute to collision which occurred when the automobile was rear-ended while waiting to make a left turn, tort-feasor's insurer which paid substantial judgment to survivors of victim who was burned to death in the automobile was barred by the second accident doctrine from recovering contribution from manufacturer and seller of the automobile. Hartford Acc. & Indem. Co. v. Mitchell Buick-Pontiac and Equipment Co., D.C.Miss.1979, 479 F.Supp. 345. Contribution ⬤═➤ 5(7)

64. Indemnity--In general

Indemnification under federal and Ohio law is not permitted between joint tortfeasors, and is available only when party seeking indemnification is innocent actor whose liability stems from some legal relationship with truly culpable party. Pinney Dock & Transport Co. v. Penn Cent. Corp., C.A.6 (Ohio) 1999, 196 F.3d 617, rehearing and suggestion for rehearing en banc denied. Indemnity ⬤═➤ 58; Indemnity ⬤═➤ 61

Under Arkansas law, if one tort-feasor is sued for a loss which is partly the fault of another tort-feasor, then he is entitled to contribution or indemnity as the case may be. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. First Nat. Bank of Little Rock, Ark., C.A.8 (Ark.) 1985, 774 F.2d 909. Contribution ⬤═➤ 5(5); Indemnity ⬤═➤ 58

In Pennsylvania, indemnification clause's language must be clear and unequivocal in order to cover claims for indemnitee's own negligence. Mahon v. City of Bethlehem, E.D.Pa.1995, 902 F.Supp. 76. Indemnity ⬤═➤ 30(1)

Under Pennsylvania law, indemnification clauses that placed emphasis on negligent conduct, and which contained no language referring to intentional conduct, did not apply to claim for indemnity in § 1983 action based on intentional conduct. Mahon v. City of Bethlehem, E.D.Pa.1995, 902 F.Supp. 76. Indemnity ⬤═➤ 30(1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Under Massachusetts law, indemnity clauses which cover indemnitee's own negligence are enforced, even without express language to that effect. Nguyen v. Lewis/Boyle, Inc., D.R.I.1995, 899 F.Supp. 58. Indemnity ☞ 30(1)

Contractual provision indemnifying railroad against negligence of its own agents and servants is valid in Arkansas if language is clear, unequivocal and certain. Missouri Pacific R. Co. v. Champlin & Wells, Inc., D.C.Ark.1985, 600 F.Supp. 182, affirmed 775 F.2d 255. Indemnity ☞ 30(7)

In the case of concurrent or joint tortfeasors having no legal relation to one another, no right of indemnity exists on behalf of either against the other. Panichella v. Pennsylvania R. Co., D.C.Pa.1957, 150 F.Supp. 79, remanded 252 F.2d 452. Indemnity ☞ 58

"Indemnity" means obligation resting on one party to make good loss or damage another party has incurred. Maryland Casualty Co. v. Bailey & Sons, Inc., Cal.App. 4 Dist.1995, 41 Cal.Rptr.2d 519, 35 Cal.App.4th 856, review denied. Indemnity ☞ 20

Where two parties actively participate in the commission of a tort, they are deemed concurrent or joint tortfeasors, and no right of indemnification exists between the two, although a right of contribution may be proper. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ☞ 5(1); Indemnity ☞ 58

Right to indemnity is equitable in nature. Ward v. Loomis Bros., Inc., Iowa App.1995, 532 N.W.2d 807. Indemnity ☞ 20

Where joint tort-feasors are in pari delicto, that is, where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other although contribution may be available. Degen v. Bayman, S.D.1972, 200 N.W.2d 134, 86 S.D. 598. Contribution ☞ 5(1); Indemnity ☞ 58

No indemnity lies between two negligent tort-feasors, and each must pay their own portion of plaintiff's damages according to contribution statute. Koehring Mfg. Co. v. Earthmovers of Fairbanks, Inc., Alaska 1988, 763 P.2d 499. Indemnity ☞ 58

A contractual provision for indemnification is relevant only when a party seeking indemnification is seeking to recover money it has paid to a third party for damages. Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc., Alaska 1984, 694 P.2d 150, rehearing denied 696 P.2d 665. Indemnity ☞ 35

Indemnification between tortfeasors is allowed only when there is a preexisting legal relationship between them or a duty imposed by law upon one of the tort-feasors to hold the other harmless for the injuries. Public Service Co. of Colorado v. District Court In and For City and County of Denver, Colo.1981, 638 P.2d 772. Indemnity

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

🗝 50; Indemnity 🗝 58

Issue of indemnity is not concerned with tort-feasor's liability to plaintiff; it is remedy solely concerned with equities existing among tort-feasors. Stock v. ADCO General Corp., N.M.App.1981, 632 P.2d 1182, 96 N.M. 544, certiorari denied 632 P.2d 1181, 96 N.M. 543. Indemnity 🗝 20

"Indemnity" is that form of compensation in which first party is liable to pay second party for loss or damage second party incurs to third party. Jourdan v. Boggs/Vaughn Contracting, Inc., S.C.App.1996, 476 S.E.2d 708, 324 S.C. 309, rehearing denied. Indemnity 🗝 20

Indemnity provision of agency agreement, which called for agent to indemnify principal as to any and all claims, liabilities, and causes of action for injury to or death of any person or loss or damage to any property arising out of or attributable to performance of agent or its agents, was intended to make good and save principal harmless from loss or obligation it incurred to third party, not to protect principal from loss of property directly caused by agent or its agents. Smith v. Carolina Coach Co., N.C.App.1995, 461 S.E.2d 362, 120 N.C.App. 106. Indemnity 🗝 33(1)

Indemnification provision in contract is limited to the reimbursement for damages, costs, expenses, and similar items incurred in third-party actions, not in actions between the contracting parties. Smoak v. Carpenter Enterprises, Inc., S.C.1995, 460 S.E.2d 381, 319 S.C. 222, rehearing denied. Indemnity 🗝 36; Indemnity 🗝 37

Agreements to indemnify indemnitee against its own negligence are generally disfavored, closely scrutinized, strictly construed against indemnitee and in favor of indemnitor, and will not be upheld unless expressed in such clear and unequivocal terms that no other meaning can be ascribed. Potlatch Corp. v. Missouri Pacific R. Co., Ark.1995, 902 S.W.2d 217, 321 Ark. 314. Indemnity 🗝 30(1); Indemnity 🗝 31(6)

Trial court, as the trier of fact, was required to consider alleged negligence of Florida Board of Regents (FBOR) physicians in apportioning fault under the Uniform Contribution Among Tortfeasors Act, in malpractice action that involved allegations of negligence in the care and treatment of patient at university hospital, although FBOR's liability for acts of university physicians was limited by sovereign immunity and remaining liability was for non-physician negligence; Act did not provide separate amounts of "entire liability" based on the separate identities of the tortfeasors. Healthcare Staffing Solutions, Inc. v. Wilkinson ex rel. Wilkinson, Fla.App. 1 Dist.2009, 5 So.3d 726, rehearing denied. Contribution 🗝 7

Where indemnity provision is included as an incident to a contract, the main purpose of which is not indemnification, indemnity provision must be construed strictly in favor of indemnitor. U.S.B. Acquisition Co., Inc. v. Stamm, Fla.App. 4 Dist.1995, 660 So.2d 1075, rehearing denied , review denied 670 So.2d 941. Indemnity 🗝 31(5)

Enforcement of agreement to indemnify parties against their own wrongful acts will be denied in absence of clear and unequivocal contractual expression of such an intent; without such an expression, a contractual indem-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

nitor's obligation is negated by any fault of indemnitee which was legal cause of its own loss. Jones v. Holiday Inns, Inc., Fla.App. 1 Dist.1981, 407 So.2d 1032, review denied 417 So.2d 329. Indemnity ⚿ 30(1)

Obligation to indemnify arises from express or implied contractual relationship between tort-feasors. First Church of Christ Scientist v. City of St. Petersburg, Fla.App. 2 Dist.1977, 344 So.2d 1302. Indemnity ⚿ 20; Indemnity ⚿ 25; Indemnity ⚿ 54

   65. ---- Contribution distinguished from and opposed to indemnity

Under Arkansas law, if one tort-feasor is sued for a loss which is partly the fault of another tort-feasor, then he is entitled to contribution or indemnity as the case may be. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. First Nat. Bank of Little Rock, Ark., C.A.8 (Ark.) 1985, 774 F.2d 909. Contribution ⚿ 5(5); Indemnity ⚿ 58

"Indemnity" applies only where the one held liable is without personal fault, in contrast to the rules of "contribution," where the burden of liability is shared in proportion to the degree of fault. Highway Const. Co. v. Moses, C.A.8 (S.D.) 1973, 483 F.2d 812. Contribution ⚿ 7; Indemnity ⚿ 59

Under Pennsylvania law, contribution is authorized among joint tortfeasors, but in absence of contract, right to indemnity is not recognized among them; whereas the right to indemnity is recognized as between a tort-feasor secondarily and one primarily liable, but not a right to contribution. Globe Indem. Co. v. Agway, Inc., C.A.3 (Pa.) 1972, 456 F.2d 472. Contribution ⚿ 5(1); Indemnity ⚿ 58; Indemnity ⚿ 61

Contribution and indemnity are alternative remedies and are in no sense cumulative. Globe Indem. Co. v. Agway, Inc., C.A.3 (Pa.) 1972, 456 F.2d 472. Contribution ⚿ 1; Indemnity ⚿ 20

Indemnity is appropriately sought by party only secondarily or passively liable, while contribution is appropriate remedy among joint tort-feasors. Consolidated Rail Corp. v. Youngstown Steel Door Co., E.D.Pa.1988, 695 F.Supp. 1577. Contribution ⚿ 5(1); Indemnity ⚿ 60; Indemnity ⚿ 61

There is important distinction between contribution, which distributes the loss among the tort-feasors by requiring each to pay his proportionate share, and indemnity, which shifts entire loss from one tort-feasor who has been compelled to pay it to another who should bear it instead; the simplest basis for indemnity is a contract which provides for it; however, right to indemnity may arise without agreement and by operation of law to prevent a result which is regarded as unjust or unsatisfactory. Aetna Cas. and Sur. Co. v. L. K. Comstock & Co., Inc., D.C.Nev.1980, 488 F.Supp. 732. Contribution ⚿ 7; Indemnity ⚿ 20; Indemnity ⚿ 50; Indemnity ⚿ 74

Contribution and indemnity are mutually exclusive remedies; contribution contributes the loss among tort-feasors by requiring each to pay his proportionate share, while indemnity shifts entire loss from one tort-feasor who has been compelled to pay it to the shoulders of another who should bear it instead. Missouri Pac. R. Co. v. Star City Gravel Co., Inc., D.C.Ark.1978, 452 F.Supp. 480, affirmed 592 F.2d 455. Contribution ⚿ 5(1); In-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

demnity ➤ 58; Indemnity ➤ 74

Statutory right to contribution, unlike right to indemnity, is based on shared fault of joint tort-feasors. Slocum v. Donahue, Mass.App.Ct.1998, 693 N.E.2d 179, 44 Mass.App.Ct. 937, review denied 700 N.E.2d 268, 427 Mass. 1108. Contribution ➤ 5(1)

Where two parties actively participate in the commission of a tort they are concurrent tort-feasors, and no right of indemnification can exist between the two, although contribution may be proper. Lattea v. City of Akron, Ohio App.1982, 458 N.E.2d 868, 9 Ohio App.3d 118, 9 O.B.R. 182. Contribution ➤ 5(1); Indemnity ➤ 58

If party breaching implied warranty of merchantability could not demonstrate that he was only liable vicariously for motor vehicle accident, he would not be entitled to use indemnity as a bar to contribution by codefendant. Wolfe v. Ford Motor Co., Mass.1982, 434 N.E.2d 1008, 386 Mass. 95. Contribution ➤ 5(7)

Trial court could properly determine that where defendant was directly liable to injured plaintiff it was a joint tortfeasor and could be ordered to pay contribution to one codefendant as well as to indemnify another code-fendant. Jennett v. Colorado Fuel & Iron Corp., Mass.App.Ct.1980, 398 N.E.2d 755, 9 Mass.App.Ct. 823. Con-tribution ➤ 5(6.1); Indemnity ➤ 58

Although similar in nature and having a common basis in equitable principles, contribution and indemnity differ in the kind and measure of relief provided; contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely. Degen v. Bayman, S.D.1972, 200 N.W.2d 134, 86 S.D. 598. Contribution ➤ 7; Indemnity ➤ 20

"Indemnity" is concerned with obligation of primary tort-feasor to respond for all damages recovered against secondary tort-feasor, as compared with "contribution," which is obligation of one joint tort-feasor to contribute his share to discharge of common liability. Rio Grande Gas Co. v. Stahmann Farms, Inc., N.M.1969, 457 P.2d 364, 80 N.M. 432. Contribution ➤ 1; Indemnity ➤ 61; Indemnity ➤ 74

Salvage yard operator which was a joint tortfeasor with trucking company, with respect to accident that caused communications tower to collapse, was not a joint tortfeasor as to its own injury, and thus trucking company was not entitled to contribution from salvage yard operator under the Uniform Contribution Among Tortfeasors Act for settlement trucking company paid to salvage yard operator, even though trucking company had a right under release signed by salvage yard operator to seek and pursue indemnity and/or contribution rights for all monies paid, where trucking company requested only contribution, and not indemnity; there was no common liability. G & P Trucking v. Parks Auto Sales Service & Salvage, Inc., S.C.App.2003, 591 S.E.2d 42, 357 S.C. 82, rehearing denied, certiorari granted, certiorari dismissed as improvidently granted 615 S.E.2d 454, 365 S.C. 23. Contribu-tion ➤ 5(6.1)

Uniform Contribution Among Tort-feasors Act section, providing that no contribution existed where indemnity existed, did not exclude indemnity actions or preclude application of the Act in situations involving vicarious li-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ability. Yates v. New South Pizza, Ltd., N.C.1992, 412 S.E.2d 666, 330 N.C. 790, rehearing denied 417 S.E.2d 73, 331 N.C. 292. Contribution ☞ 5(4); Indemnity ☞ 22; Indemnity ☞ 59

In the case of joint tort-feasors, one is not entitled to indemnification; the remedy in cases involving joint tort-feasors is restitution by way of contribution. Terminal Transport Co., Inc. v. Cliffside Leasing Corp., Tenn.1979, 577 S.W.2d 455. Contribution ☞ 5(1); Indemnity ☞ 58

Where right of full indemnity exists between persons liable in tort, no right of contribution exists. Craven v. Lawson, Tenn.1976, 534 S.W.2d 653. Contribution ☞ 8

Because claim in contribution is predicated on finding of common liability, resolution of liability as between plaintiff and one of two codefendants binds other defendant, but issues as to indemnity will not necessarily be resolved in initial dispute between plaintiff and defendant. Holton v. H.J. Wilson Co., Inc., Fla.1986, 482 So.2d 341. Contribution ☞ 5(5); Indemnity ☞ 85

State was open to suit for contribution brought as third-party action by subcontractor and subcontractor's insurer, alleging that State was a joint tort-feasor together with subcontractor for negligence with respect to installation of radar equipment shelter exhaust fan which caused injury to contractor, notwithstanding the existence of an indemnity agreement between State and contractor, where the indemnity agreement did not provide immunity from suit by a joint tort-feasor, but rather merely forced contractor to assume liability where State, as joint tort-feasor, was held partially responsible for injury to third party. Florida Farm Bureau Cas. Co. v. Batton, Fla.App. 4 Dist.1984, 444 So.2d 1128. Contribution ☞ 5(6.1)

66. ---- Notice and opportunity to defend, indemnity

Owner of construction site failed to give contractor prompt notification of claim by injured worker, as required by indemnification agreement, and thus contractor was relieved of its contractual obligation to indemnify owner, where owner first notified contractor of worker's claim two and one-half years after it had been filed, and there was no contention that prompt notification to contractor would have been futile. Cheschi v. Boston Edison Co., Mass.App.Ct.1995, 654 N.E.2d 48, 39 Mass.App.Ct. 133, review denied 655 N.E.2d 1277, 421 Mass. 1102, review denied 656 N.E.2d 1258, 421 Mass. 1105. Indemnity ☞ 40

Contractor, that did not receive prompt notification from owner of construction site from owner of claim brought by injured worker, was not required to show prejudice from owner's failure to give prompt notification of claim as required by the parties' indemnification agreement, as both parties were sophisticated business concerns, they negotiated an indemnification clause as part of a private construction contract, and chose to insert a prompt notification clause; thus, rules addressing the special circumstances of form insurance policies were inapplicable, and applying traditional contract principles, Appeals Court would look to language of indemnity clause, which established prompt notification as condition precedent to contractor's obligation to indemnify owner. Cheschi v. Boston Edison Co., Mass.App.Ct.1995, 654 N.E.2d 48, 39 Mass.App.Ct. 133, review denied 655 N.E.2d 1277, 421 Mass. 1102, review denied 656 N.E.2d 1258, 421 Mass. 1105. Indemnity ☞ 40

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Since realty company was 100% at fault for injuries sustained by plaintiff, prospective buyer of property, when she was attacked by dog located in backyard of property and since no fault whatsoever could be attributable to owners of property and dog, property owners' liability was secondary to that of realty company, and thus homeowners' insurer's claim as subrogee of property owners was for indemnity and not for contribution, which was barred by lack of proper notice to realty company. Allstate Ins. Co. v. U.S. Associates Realty, Inc., Ohio App.1983, 464 N.E.2d 169, 11 Ohio App.3d 242, 11 O.B.R. 368. Contribution ☞ 5(6.1); Indemnity ☞ 65; Indemnity ☞ 79

Purported indemnitor was not bound as a matter of law by insured's judgment against purported indemnitee since indemnitor had not been given timely notice or opportunity to appear and defend the action. Hull & Co., Inc. v. McGetrick, Fla.App. 3 Dist.1982, 414 So.2d 243. Insurance ☞ 3556

When there is no notice to a purported indemnitor of action against purported indemnitee who subsequently seeks indemnity from indemnitor, indemnitee must, ab initio and irrespective of the prior action, establish facts which support right to indemnification, and indemnitor is free to contest those facts. Hull & Co., Inc. v. McGet-rick, Fla.App. 3 Dist.1982, 414 So.2d 243. Indemnity ☞ 85

### 67. ---- Warning of hazardous condition, indemnity

While one may contract to indemnify one's own negligence, an indemnitee may not enforce such an indemnity contract where indemnitor is prevented by indemnitee from properly relieving or warning of a hazardous condition caused by indemnitee's negligence. Butler v. U.S., C.A.5 (Miss.) 1984, 726 F.2d 1057. Indemnity ☞ 30(1)

### 68. ---- Employer and employee relationship, indemnity

Under agreement for lease of tractors stating that lessor would, at his own expense, furnish lessee with qualified employees and pay for related claims and liabilities of every kind, driver of tractor which was driven into over-head canopy of service station was lessor's "employee," for purposes of lessee's action against lessor and driver for indemnity for sums lessee paid for repair of canopy. Fleet Transport Co., Inc. v. Mullis, C.A.4 (N.C.) 1984, 727 F.2d 327. Indemnity ☞ 33(3)

Under Maryland law, foreman of state university's electrical shop, who was state's liaison with electrical contractor doing work at university and who was responsible for inspection of contractor's work, was "representative" of state, who was entitled to indemnification from contractor, under terms of its contract with state, in relation to action against foreman for death of contractor's employee during university project. Scarbor-ough v. Ridgeway, C.A.4 (Md.) 1984, 726 F.2d 132. Indemnity ☞ 33(5)

Under Arkansas law, right of indemnity may arise from express contract of indemnity or from special relation-ship between third party and employer which would give rise to the right; however, in absence of contract for in-demnity running in favor of third party, negligent third-party tort-feasor is not entitled to either indemnity or contribution from a negligent employer where their concurrent negligence has produced injury or death of em-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ployee. Dulin v. Circle F Industries, Inc., C.A.8 (Ark.) 1977, 558 F.2d 456. Contribution ☞ 5(6.1); Indemnity ☞ 20; Indemnity ☞ 58; Indemnity ☞ 65

Even assuming that painter's employer was guilty of causal negligence in connection with painter's accidental death by electrocution, employer and female conductor manufacturer, which had been found by jury to be negligent, were simply joint tort-feasors and thus manufacturer was not entitled to indemnity from employer under Arkansas law. Dulin v. Circle F Industries, Inc., C.A.8 (Ark.) 1977, 558 F.2d 456. Indemnity ☞ 65

Under the comparative fault statutes, the employer may seek indemnity against the independent contractor in cases of the employer's pure vicarious liability for the independent contractor's fault, or contribution against an independent contractor in cases in which the employer has some degree of independent liability. Wiggs v. City of Phoenix, Ariz.2000, 10 P.3d 625, 198 Ariz. 367, 111 A.L.R.5th 815. Contribution ☞ 5(6.1); Indemnity ☞ 71

County was not required, under indemnity provisions of contract between county and Department of Transportation for resurfacing and shoulder repairs on portion of rural road, to defend and indemnify employee of state Department of Transportation, with respect to lawsuit filed by motorist who was severely injured when his vehicle left roadway after striking an unmarked dip therein caused by county construction work, for state employee's alleged negligence in ordering and allowing county to do roadwork under his supervision that it was ill-equipped and incapable of properly performing, because there was no intent, express or implied, in indemnity provisions to indemnify state or its employees against their acts of negligence. Wajtasiak v. Morgan County, Tenn.App.1982, 633 S.W.2d 488. Indemnity ☞ 33(5)

69. ---- Res judicata or estoppel, indemnity

A judgment rendered against an indemnitee is conclusive for res judicata or estoppel by judgment purposes against a purported indemnitor, but only upon condition that indemnitor has been given timely notice and an opportunity to appear and defend the action. Hull & Co., Inc. v. McGetrick, Fla.App. 3 Dist.1982, 414 So.2d 243. Indemnity ☞ 85

70. ---- Attorney's fees, indemnity

Since contractual provision that losing party will pay prevailing party's attorney fees is agreement for indemnification, prevailing party under such agreement can recover no more than amount he has actually paid or obligated himself to pay his attorney, but such does not mean that party entitled to recover must be awarded amount which he has paid or agreed to pay his attorney if such amount is excessive or unreasonable. Dunn v. Sentry Ins., Fla.App. 5 Dist.1985, 462 So.2d 107. Indemnity ☞ 37

Defendant in action involving controversy over rights to condominium parking space was not entitled to attorney fees from vendor of parking space under claim for indemnity where defendant was not liable to plaintiffs, in that vendor's alleged obligation to indemnify never arose and defendant did not establish an independent basis for indemnification. Maass v. Christensen, Fla.App. 4 Dist.1982, 414 So.2d 255. Indemnity ☞ 37; Indemnity

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

☞ 42

71. ---- Indemnity held proper in particular cases

Under Massachusetts law, lessor of forklift was entitled to indemnity, based on indemnity clause of lease which provided that lessee would indemnify lessor from all liability arising out of use of forklift, in action brought by worker who was run over by forklift based on negligence of forklift operator; because lessee was operator's employer, lessee would be liable under respondeat superior for any claims arising out of negligence in course of employment, entitling lessor to indemnity, and indemnity clause could not have been intended to entail narrower indemnification than required at common law. Nguyen v. Lewis/Boyle, Inc., D.R.I.1995, 899 F.Supp. 58. Indemnity ☞ 33(3)

When indemnitor expressly agreed to indemnify indemnitee except in certain specified instances in which accident was proximately caused by intervening negligence of indemnitee or third persons and it was determined that exceptions did not pertain, indemnitor was obligated to indemnify. Allen v. Standard Oil Co., Ohio 1982, 443 N.E.2d 497, 2 Ohio St.3d 122, 2 O.B.R. 671. Indemnity ☞ 33(1)

Exculpatory language in service order executed by oil and gas well operator for wireline service provider's work on well was sufficiently explicit in its intention to exculpate provider for any negligence stemming from services performed on well, despite fact that language did not contain word "negligence," where language provided that operator would indemnify and hold provider harmless from all liabilities arising in favor of operator or any third party in connection with equipment or services furnished by provider. Kinkead v. Western Atlas Intern., Inc., Okla.App. Div. 1 1993, 894 P.2d 1123, certiorari denied. Indemnity ☞ 33(5)

Lessor of automobile, as a "conduit" between title owner of automobile and driver was liable for indemnification to its lessee and driver who was lessee's permittee for damages arising from driver's alleged negligent operation of automobile. Sunshine Dodge, Inc. v. Ketchem, Fla.App. 5 Dist.1984, 445 So.2d 395. Indemnity ☞ 33(3)

Indemnitors were properly held liable on their indemnification agreement, which provided that they would indemnify indemnitee against any and all manner of claims, whether matured or unmatured, in connection with indemnitee's business dealings with indemnitors. Viyella v. Pina, Fla.App. 3 Dist.1982, 414 So.2d 5. Indemnity ☞ 33(1)

72. ---- Indemnity held not proper in particular cases

Under New York law, third-party plaintiff owner was not entitled to indemnity from third-party defendant subcontractor for owner's own negligence where indemnity contract, which was entered into in New York, did not express such intention in unequivocal terms. Fred Teitelbaum Const. Co. of Florida, Inc. v. Sante Fe Development Corp., Fla.App. 3 Dist.1985, 462 So.2d 560. Indemnity ☞ 30(5)

Where indemnity clause of license agreement between hotel owner and operators did not clearly and unequivoc-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ally call for owner's indemnification for judgments based upon its own negligence, where it was unclear whether general verdict against owner in suit by hotel employee was based upon owner's affirmative negligence or upon owner's vicarious liability for operators' conduct, and where punitive damage award demonstrated that jury found that owner was at least partially at fault for employee's injury, owner was not entitled to contractual indemnification based on license agreement. Jones v. Holiday Inns, Inc., Fla.App. 1 Dist.1981, 407 So.2d 1032, review denied 417 So.2d 329. Indemnity 🗝️ 33(5)

73. Contributions from minors

Apportioning fault, for sudden stop on county bus which injured passenger, to four-year-old child who activated emergency stop switch was error; child under age of six was incapable of fault of negligence. Price v. Kitsap Transit, Wash.App. Div. 2 1993, 856 P.2d 384, 70 Wash.App. 748, review granted 868 P.2d 871, 123 Wash.2d 1001, affirmed 886 P.2d 556, 125 Wash.2d 456. Carriers 🗝️ 306(1); Infants 🗝️ 61

Child under age of six years, who is legally incapable of negligence, also is incapable of being at fault under statute requiring apportionment of fault. Price v. Kitsap Transit, Wash.App. Div. 2 1993, 856 P.2d 384, 70 Wash.App. 748, review granted 868 P.2d 871, 123 Wash.2d 1001, affirmed 886 P.2d 556, 125 Wash.2d 456. Negligence 🗝️ 535(5)

74. Insolvency of joint tortfeasor

The principles of equity which apply through the Uniform Contribution Among Tortfeasors Act were intended to govern contribution when one defendant is found to be insolvent, and were not intended to affect requirement that relative degrees of fault are not to be considered as factor in apportionment. Arctic Structures, Inc. v. Wedmore, Alaska 1979, 605 P.2d 426. Contribution 🗝️ 7

75. Nondivisible injuries

In case which involves injury that is not divisible, apportionment cannot rationally be applied. Chrysler Corp. v. Todorovich, Wyo.1978, 580 P.2d 1123. Contribution 🗝️ 5(1)

76. Payment of more than percentage of fault

Uniform Contribution Among Tortfeasors Act (UCATA) preserves a joint tortfeasor's right to contribution in a variety of contexts and situations, to the extent that joint tortfeasor's discharge of liability exceeds its pro rata share of liability. Gump v. Walmart Stores, Inc., Hawai'i App.1999, 5 P.3d 418, 93 Hawai'i 428, certification granted, affirmed in part , reversed in part 5 P.3d 407, 93 Hawai'i 417. Contribution 🗝️ 6

Cross-claim of mall owner and manager for contribution against mall protective service was viable, where possibility existed that owner and manager could be required to pay more than their percentage of determined fault to plaintiff, who was shot in mall by unknown assailant. Rea v. Barton Protective Services, Inc., Fla.App. 4 Dist.1995, 660 So.2d 772. Contribution 🗝️ 5(6.1)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

77. Jurisdiction

Substantive right to contribution among joint tort-feasors is not part of equity's traditional jurisdiction since that right was created when Uniform Contribution Among Tort-Feasors Act was enacted. Clark v. Teeven Holding Co., Inc., Del.Ch.1992, 625 A.2d 869. Equity ⚷ 15

Defendant who was alleged tort-feasor under state environment statutes had adequate remedy at law, namely Uniform Contribution Among Tort-Feasors Act, for his claim for contribution from third-party defendants and therefore, Court of Chancery would not entertain claim. Clark v. Teeven Holding Co., Inc., Del.Ch.1992, 625 A.2d 869. Equity ⚷ 43

An action for contribution is within the circuit court's general jurisdiction, although the doctrine of contribution originated in the courts of equity. Young v. Kittrell, Tenn.Ct.App.1992, 833 S.W.2d 505, appeal denied. Contribution ⚷ 9(.5)

Jurisdiction in matters concerning contribution is concurrently in courts of law and courts of equity. Celotex Corp. v. Campbell Roofing and Metal Works, Inc., Miss.1977, 352 So.2d 1316. Contribution ⚷ 9(1)

78. Parties

Under Mississippi law, where neither manufacturer nor seller of allegedly defective automobile was a party to suit which arose out of rear-end collision at intersection, tort-feasor's insurer could not recover contribution from the manufacturer or seller for amount which insurer paid to survivors of victim who was burden to death when the allegedly defective automobile exploded. Hartford Acc. & Indem. Co. v. Mitchell Buick-Pontiac and Equipment Co., D.C.Miss.1979, 479 F.Supp. 345. Contribution ⚷ 5(7)

Mississippi statute governing apportionment or contribution is applicable only in an action for damages where judgment is rendered against two or more defendants jointly and severally as joint tort-feasors and is inapplicable in situation where defendant is sued alone as a tort-feasor. Hood v. Dealers Transport Co., D.C.Miss.1979, 472 F.Supp. 250. Contribution ⚷ 5(2)

Defendant driver of vehicle which struck vehicle in which plaintiff's decedent was riding was not entitled to obtain contribution from plaintiff under law of Mississippi on theory that negligence on part of plaintiff's driver contributed to collision where defendant was sued alone as a tort-feasor and, hence, judgment would not be rendered against two or more defendants jointly and severally as joint tort-feasors and, in any event, decedent could not, under Mississippi law, have sued plaintiff, his father, for damages on account of his injuries had death not ensued. Hood v. Dealers Transport Co., D.C.Miss.1979, 472 F.Supp. 250. Contribution ⚷ 5(7)

Under Pennsylvania law, manufacturer of motorcycle which was allegedly not crashworthy that was defendant in personal injury action by motorcycle rider would not be permitted to join as third-party defendant estate of driver of automobile which struck motorcycle on basis that automobile driver negligently caused the accident; the cause of action against each party was based on a different theory, the injuries for which each party could be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

found liable would be divisible, and different evidence would be necessary to support the allegations against each party. Frazier v. Harley Davidson Motor Co., Inc., W.D.Pa.1985, 109 F.R.D. 293. Parties ☞ 51(4)

Trial court could not exercise jurisdiction to grant cross-claim for contribution against manufacturer of asbestos in strict products liability action pursuant to cross-claim stipulation, where manufacturer was never named in original or amended complaint, and no defendant sought to implead manufacturer into case. Owens-Illinois, Inc. v. Zenobia, Md.1992, 601 A.2d 633, 325 Md. 420, reconsideration denied 602 A.2d 1182, 325 Md. 665. Contribution ☞ 9(4)

Inasmuch as surety on performance bond issued in connection with approval of subdivision development map was not alleged to be one of the tort-feasors and was not a party to negligence action by grantors of easement for storm sewer required in connection with the development, township which had paid entire judgment obtained by grantors against township and developer did not have right to contribution from surety. Wyckoff Tp. v. Sarna, N.J.Super.A.D.1975, 347 A.2d 16, 136 N.J.Super. 512. Contribution ☞ 5(6.1)

Potential right of contribution that each joint tort-feasor has against the other constitutes him an indemnitee pro tanto and entitles him to have other joint tort-feasors, if he calls upon them to do so, to participate in defense of lawsuit by claimant or be subject to outcome of the action just as if they had participated. Keitz v. National Paving & Contracting Co., Md.1957, 136 A.2d 229, 214 Md. 479. Contribution ☞ 5(1)

Construction contractor was not entitled to contribution from Ohio Department of Transportation (ODOT) in action arising from accident which occurred when vehicle hit "gore" median and left roadway, resulting in fatal injuries, where contractor was found to have breached its duty to install proper pavement markings or otherwise properly mark the gore median, and the damages awarded against contractor were determined to be for contractor's proportionate share of the total damages suffered by plaintiffs. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ☞ 5(7)

Absent concerted action, there is no third-party claim for contribution among tortfeasors. Pierce v. Shannon, N.D.2000, 607 N.W.2d 878. Contribution ☞ 5(5)

Driver was not entitled to maintain third-party action for contribution against contractor on road construction project, in injured motorist's personal injury action for injuries she sustained when driver's vehicle struck her vehicle in construction area; there was no allegation of concerted action, and driver only settled motorist's claims against him, and motorist was reserving any claims she had against other parties, including contractor. Pierce v. Shannon, N.D.2000, 607 N.W.2d 878. Contribution ☞ 5(7)

79. Pleadings

Allegation by owners of building damaged by fire, that third-party defendant's improper certification of building materials contributed to spread of fire stated claim for contribution under Pennsylvania Uniform Contribution Among Tort-Feasors Act. In re One Meridian Plaza Fire Litigation, E.D.Pa.1993, 820 F.Supp. 1492. Contribution ☞ 9(5)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Third-party complaint of city defendants, who decided to drop explosive device on house containing weapons, explosives and flammable material, stated cause of action against member of group living in house for contribution for injuries to residents and owners of property damaged or destroyed following confrontation between group members and law enforcement officials by alleging that member's actions contributed to confrontation and to damage to property. In re City of Philadelphia Litigation, E.D.Pa.1989, 714 F.Supp. 743. Contribution ⚿ 9(5)

Auditors who had been sued by buyer of corporation's stock for alleged negligence and breach of contract in failing to discover and report overvaluation of corporation's inventory stated claim for contribution under Pennsylvania law, in third-party complaint against public accounting firm also engaged to perform certain accounting services for the buyer, even though auditors and accountants may have acted independently, where pleaded facts indicated that auditors and accountants may have breached common duty causing single, indivisible injury to buyer and that each may have had an opportunity to guard against the other's negligence. Pennine Resources, Inc. v. Dorwart Andrew & Co., E.D.Pa.1986, 639 F.Supp. 1071. Contribution ⚿ 9(5)

Allegation of joint undertaking or conduct is not needed to state a claim for contribution under Pennsylvania law. Pennine Resources, Inc. v. Dorwart Andrew & Co., E.D.Pa.1986, 639 F.Supp. 1071. Contribution ⚿ 9(5)

Under allegation of third-party complaint by material supplier against contractor that contractor negligently performed its duties and such negligence was the cause of damage, if any, which building owner sustained would negate any liability on part of material supplier and destroy any basis for claim that material supplier and contractor were jointly or severally liable for the alleged injury to building owner, and on this postulate claim by material supplier for contribution from contractor would not lie under applicable Delaware law. ICI America, Inc. v. Martin-Marietta Corp., D.C.Del.1974, 368 F.Supp. 1148. Contribution ⚿ 5(6.1)

Where third-party action against city was predicated upon an act of negligence subsequent to and wholly separate and distinct from that which was the basis of the original action, in that after describing the act of city policeman, occurring in placing plaintiff in an ambulance, the third-party alleged that damages resulting to the plaintiffs were caused solely by the negligence of third-party defendant's agencies, through the improper treatment of the plaintiff, allegations were insufficient to establish a joint tort authorizing contribution. Martin v. U. S., D.C.Pa.1958, 162 F.Supp. 441. Contribution ⚿ 9(5)

Retailer failed to state claim for contribution against manufacturer of allegedly defective bicycle which caused injury to consumer, where retailer's third-party complaint contained insufficient facts to hold manufacturer liable in negligence, and retailer did not allude to factual basis for its claim that product was negligently manufactured. Mattia v. Sears, Roebuck & Co., Pa.Super.1987, 531 A.2d 789, 366 Pa.Super. 504, appeal denied 546 A.2d 622, 519 Pa. 660. Contribution ⚿ 9(5)

Where there has been no other clear determination as to whether two parties are joint tort-feasors, plaintiff's pleadings should control. Degen v. Bayman, S.D.1976, 241 N.W.2d 703, 90 S.D. 400. Torts ⚿ 141

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

For a party to seek contribution under the Uniform Contribution Among Tortfeasors Act, the parties must be jointly or severally liable, and an allegation that the party against whom contribution is sought is solely liable to the plaintiff, or that the party seeking contribution is not liable at all, is insufficient. Daugherty v. Farmers Co-op. Ass'n, Okla.App. Div. 3 1989, 790 P.2d 1118. Contribution ☞ 5(1); Contribution ☞ 9(5)

Defendant in products liability action was not entitled to amend third-party petition against manufacturer of component part of finished product seeking indemnification to include claims for negligence, products liability and contribution, where no cause of action remained based on negligence or products liability and allegations in plaintiff's complaint did not provide for contribution under Uniform Contribution Among Tortfeasors Act. Daugherty v. Farmers Co-op. Ass'n, Okla.App. Div. 3 1989, 790 P.2d 1118. Indemnity ☞ 97

Conduct of maritime services company's employee in allegedly inducing physician to make false physical examination report declaring another person unfit for work aboard ship was intentional wrongdoing for which contribution could not be had; therefore, insurer for physician failed to state contribution cause of action against maritime services company. Insurance Co. of North America v. Poseidon Maritime Services, Inc., Fla.App. 3 Dist.1990, 561 So.2d 1360. Contribution ☞ 5(6.1)

Party seeking contribution need only allege facts showing that the negligence of the party from whom he seeks contribution combined with his own to cause the damage for which plaintiff seeks recovery. Robert L. Turchin, Inc. v. Gelfand Roofing, Inc., Fla.App. 3 Dist.1984, 450 So.2d 554, petition for review dismissed 453 So.2d 1365, review denied 494 So.2d 1149. Contribution ☞ 9(5)

Third-party complaint which alleged that city had contracted with church to provide bus and operator to transport persons to church, that injuries of passenger sustained when she was struck by automobile after she existed bus were directly and proximately caused by city's failure to perform its contractual duty and which alleged that city's negligence was active or primary and that negligence, if any, of church was passive or secondary, stated cause of action for indemnity against city and also stated cause of action under Uniform Contribution Among Tortfeasors Act should trier of fact find church and city be joint tort-feasors. First Church of Christ Scientist v. City of St. Petersburg, Fla.App. 2 Dist.1977, 344 So.2d 1302. Contribution ☞ 9(5); Indemnity ☞ 65

80. Assumption of risk

Assumption of risk was no defense to couch owner's third-party complaint for indemnity and contribution against couch manufacturer and seller based upon strict products liability, where no employee of the couch owner voluntarily encountered the risk created by the broken couch while realizing the danger. Central Telephone Co. v. Fixtures Mfg. Corp., Nev.1987, 738 P.2d 510, 103 Nev. 298. Contribution ☞ 8; Indemnity ☞ 94

81. Collateral estoppel

Mother who was driving vehicle at time infant daughter was killed in collision was not established to be liable jointly with driver of vehicle which collided with mother's vehicle as joint tort-feasor, in wrongful death action brought by mother and her husband against driver, nor was her liability to estate of daughter established, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

thus, doctrine of collateral estoppel was not available to driver's insurer to show joint and several liability of mother, for purposes of contribution claim against mother, even though jury found that mother's negligence proximately caused death of daughter; purpose of jury determination was to determine amount of damages to be assessed against driver. State Farm Mut. Auto. Ins. Co. v. Holland, N.C.1989, 380 S.E.2d 100, 324 N.C. 466. Contribution ⟬ 5(7); Judgment ⟬ 735

Trial court in automobile negligence case properly dismissed defendants' motion for contribution filed against driver of automobile in which plaintiff was a passenger, where defendants were seeking to use jury's determination of driver's liability as a joint tort-feasor affirmatively under doctrine of collateral estoppel to bind driver's insurer, but insurer was not a party to litigation, because defendants had dismissed counterclaim joining insurer before trial, as liability of insurer could not be bindingly determined in a suit to which it was not a party, particularly where it was prevented from participating through no fault of its own. Dudley v. Carroll, Fla.App. 5 Dist.1985, 467 So.2d 706, review dismissed 469 So.2d 749. Judgment ⟬ 632

82. Res judicata, generally

Claim by pathologist's insurer to recover contribution from surgeon, his employer, and his insurer was res judicata after prejudicial dismissal of contribution action for failure to pay portion of settlement in cash, even though cash payment was made before second action was brought. Florida Patient's Compensation Fund v. St. Paul Fire and Marine Ins. Co., Fla.1990, 559 So.2d 195. Judgment ⟬ 654

83. Burden of proof

Under Pennsylvania law, parent of injured oil field worker's employer and its wholly owned subsidiary, as third-party plaintiffs in products liability action arising when worker was injured as alleged result of allegedly defective snap hook, were not required to specifically identify company that actually distributed hook to seek contribution or indemnity from distributors; rather, identification of manufacturer most likely to have produced snap hook shifted burden to possible distributors to prove which of them sold hook. Chelton v. Keystone Oilfield Supply Co., Inc., W.D.Pa.1991, 777 F.Supp. 1252. Contribution ⟬ 9(6); Indemnity ⟬ 100

In order to state a claim for contribution from a joint tortfeasor, the party seeking contribution must show that the potential contributor is directly liable to the tort plaintiff. Panagakos v. Walsh, Mass.2001, 749 N.E.2d 670, 434 Mass. 353. Contribution ⟬ 5(5)

Third-party plaintiff failed to meet its burden of affirmatively showing that third-party defendants' liability to original plaintiff had been extinguished, and could not recover contribution from third-party defendant. King v. Humphrey, N.C.App.1987, 362 S.E.2d 614, 88 N.C.App. 143. Contribution ⟬ 9(6)

Under Uniform Contribution Among Tort-feasors Act, where party seeking contribution has entered into settlement with plaintiff in underlying tort case, party seeking contribution has burden of proving that common liability exists between parties and that settlement was reasonable. Home Ins. Co. v. Advance Mach. Co., Fla.App. 1 Dist.1986, 500 So.2d 664. Contribution ⟬ 9(6)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

After claimant makes prima facie case for contribution, burden shifts to defendant to show nonexistence of any fact essential to establish that he was liable at time to injured person, or he may show that amount paid by claimant in settlement was not paid in good faith or was unreasonable. Home Ins. Co. v. Advance Machine Co., Fla.App. 1 Dist.1983, 443 So.2d 165. Contribution ⬤⟶ 9(6)

84. Prima facie case

General rule is that prima facie case of contribution is made if claimant establishes common liability and introduces proof of fact of and amount of settlement reached. Home Ins. Co. v. Advance Machine Co., Fla.App. 1 Dist.1983, 443 So.2d 165. Contribution ⬤⟶ 9(6)

85. Questions of fact

Whether defendants qualify as joint tort-feasors, so as to be entitled to contribution, is ordinarily question for trier of fact, at least in cases in which no settlements have occurred. Collier v. Eagle-Picher Industries, Inc., Md.App.1991, 585 A.2d 256, 86 Md.App. 38, certiorari denied 591 A.2d 249, 323 Md. 33. Contribution ⬤⟶ 9(7)

In regard to incident in which injuries were allegedly sustained when explosion and flash fire occurred in telephone utility's manhole, utility was not precluded from relying upon distinction between "active" and "passive" negligence with respect to original defendant's claim for contribution, and such concepts were relevant and there were sufficient facts to support submission of the issue to trier of fact. Chesapeake Utilities Corp. v. Chesapeake and Potomac Tel. Co. of Maryland, Del.Super.1980, 415 A.2d 486. Contribution ⬤⟶ 5(6.1)

Issue of proximately causative negligence for purposes of determining whether general contractor was entitled to contribution from subcontractor was question for jury in action for injuries sustained by two workmen in fall of concrete floor planks where general contractor had assumed some obligation to inspect jobsite for safety violations, employed safety consultant, and had full-time employee on jobsite, notwithstanding that subcontractor was erecting beams and laying planks involved in accident. Sweetman v. Strescon Industries, Inc., Del.Super.1978, 389 A.2d 1319. Contribution ⬤⟶ 9(7)

Under statute establishing right of action for contribution among joint tort-feasors, both issue of reasonableness of settlement and issue of liability of nonsettling tort-feasor were for trier of fact in contribution action. City of Tucson v. Superior Court In and For County of Pima, Ariz.1990, 798 P.2d 374, 165 Ariz. 236. Contribution ⬤⟶ 9(7)

Jury question was presented as to whether act of city's pickup truck driver in driving forward while student was disembarking from truck was foreseeable so as to render school board liable to city for contribution for injuries sustained by student while climbing down from bed of truck unassisted and unsupervised after returning from homecoming parade. City of Riviera Beach v. Palm Beach County School Bd., Fla.App. 4 Dist.1991, 584 So.2d 84. Contribution ⬤⟶ 9(7)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

86. Questions of law

Where defect or negligence in design or manufacture of automobile seat track was a concurring cause, along with negligence of drunk driver, of head-on collision, and defendant manufacturer produced no evidence that injuries were divisible, the trial court, under Florida law, correctly took from jury the apportionment issue. McLeod v. American Motors Corp., C.A.11 (Fla.) 1984, 723 F.2d 830, rehearing denied 729 F.2d 1468. Contribution ⟨key⟩ 9(7)

87. Instructions

Any error in trial court's refusal, in negligence action, to instruct jury on aerial work platform owner's contribution cross-claim against platform distributor did not require correction under Oklahoma products liability law, where platform owner entered into postjudgment settlement with worker, who was injured when platform collapsed, and settlement amount was less than what jury determined platform owner's pro rata share of liability to be. Woolard v. JLG Industries, Inc., C.A.10 (Okla.) 2000, 210 F.3d 1158. Contribution ⟨key⟩ 9(7)

Under Oklahoma law, jury should have been instructed under contribution theory on gasoline company's claim against natural gas company for reimbursement of remediation costs where state suffered an injury when gasoline and fuel oil from pipeline leak polluted state waters, where costs gasoline company incurred in complying with state's clean up order were the direct result tort committed against state waters, and where gasoline company presented evidence that natural gas company was jointly or severally liable for the leak that caused the pollution. Conoco Inc. v. ONEOK, Inc., C.A.10 (Okla.) 1996, 91 F.3d 1405. Contribution ⟨key⟩ 9(7)

Evidence that ill-fitting door on furnace, altered hinge bracket on door of furnace, and existence of substantial amounts of foreign liquids in natural gas system could not reasonably have been anticipated entitled furnace manufacturer to instruction on misuse of furnace in gas company's action to recover contribution after settlement of products liability case. Pratt v. Rocky Mountain Natural Gas Co., Inc., Colo.App.1990, 805 P.2d 1144, certiorari denied. Contribution ⟨key⟩ 9(7)

Automobile manufacturer and driver of second automobile which collided with plaintiff's automobile were "joint tortfeasors" within meaning of statute under which relative degrees of fault of joint tort-feasors may bear upon rights of contribution, since evidence disclosed negligent conduct on part of each defendant constituting legal cause of harm to plaintiff because it was substantial factor in bringing about harm; thus, instruction permitting jury to find manufacturer liable if they found that alleged manufacture defect was one of the causes of plaintiff's injury, even though they might also believe that negligence of second automobile driver was contributing factor in causing accident, was correct. Chrysler Corp. v. Todorovich, Wyo.1978, 580 P.2d 1123. Contribution ⟨key⟩ 5(7); Products Liability ⟨key⟩ 203

88. Verdict

Where defendants did not plead statutory rights under Uniform Contribution Among Tort-Feasors Act as affirmative defense and presented no evidence on the issue at trial, they could not claim, following jury verdict, that judgment could not be entered without resolution of contribution issues. Broussard v. Meineke Discount Muffler

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Shops, Inc., W.D.N.C.1997, 958 F.Supp. 1087, reversed 155 F.3d 331. Contribution ☞ 9(5)

In breach of contract and negligence action arising out of a construction contract, judgment in favor of contract-or against engineer was proper in that one special verdict found the contractor to be without fault and another found the engineer entirely at fault. Carroll-Boone Water Dist. v. M. & P. Equipment Co., Ark.1983, 661 S.W.2d 345, 280 Ark. 560. Contribution ☞ 9(8)

89. Damages

Contribution and indemnity cannot be maintained for awards of punitive damages. Rollins v. Peterson Builders, Inc., D.R.I.1990, 761 F.Supp. 918. Contribution ☞ 5(3); Indemnity ☞ 74

If punitive damages were awarded against architect and engineer, under Maryland law, contribution would not be available from any other defendant. Pyramid Condominium Ass'n v. Morgan, D.C.Md.1985, 606 F.Supp. 592. Contribution ☞ 5(6.1)

Uniform Contribution Among Tortfeasors Act does not apply to punitive damages; settlement of punitive dam-age claim by one tortfeasor will not reduce compensatory or punitive damage award against nonsettling tortfeas-ors. Owens-Illinois, Inc. v. Armstrong, Md.1992, 604 A.2d 47, 326 Md. 107, certiorari denied 113 S.Ct. 204, 506 U.S. 871, 121 L.Ed.2d 145. Contribution ☞ 5(3); Damages ☞ 63

Uniform Contribution Among Tortfeasors Act applies only to compensatory damages where there is common li-ability among joint tort-feasors. Exxon Corp. v. Yarema, Md.App.1986, 516 A.2d 990, 69 Md.App. 124, certior-ari denied 522 A.2d 392, 309 Md. 47. Contribution ☞ 5(5)

Where all three defendants were liable for same injury but insofar as defendant exterminator was concerned the judgment against it consisted of $5,000 for compensatory damages and $10,000 for penalty provided by Con-sumer Fraud Act, liability of the other two parties, the broker and house vendors was limited to compensatory damages for their common-law wrong, and only the compensatory portion of the exterminator judgments should be considered in computation of contribution rights among tort-feasors. Neveroski v. Blair, N.J.Super.A.D.1976, 358 A.2d 473, 141 N.J.Super. 365. Contribution ☞ 7

Rule that where consideration paid by one joint tort-feasor for release represents full compensation for the injury the other tort-feasor is discharged does not apply to an award by punitive damages since theory behind punitive damages would best be served by adoption of rule that allows apportionment of such damages among several wrongdoers according to degree of culpability or according to existence or nonexistence of requisite state of mind for such damages in defendants. Cheek v. J. B. G. Properties, Inc., Md.App.1975, 344 A.2d 180, 28 Md.App. 29.

Punitive damages may be apportioned among joint tort-feasors. Cheek v. J. B. G. Properties, Inc., Md.App.1975, 344 A.2d 180, 28 Md.App. 29. Contribution ☞ 7

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Compensatory damages may not be apportioned among joint tort-feasors. Cheek v. J. B. G. Properties, Inc., Md.App.1975, 344 A.2d 180, 28 Md.App. 29. Contribution ☞ 7

Statutes regarding joint tort-feasors permit a defendant under certain circumstances to recover as contribution from the other tort-feasor a portion of the damages paid to the plaintiff. Nevins v. Ohio Dept. of Transp., Ohio App. 10 Dist.1998, 724 N.E.2d 433, 132 Ohio App.3d 6. Contribution ☞ 5(1)

Contractor which sought contribution from city and state in connection with its liability for wrongful death of travelers who were killed when a sidewalk collapsed during the course of bridge repair work was entitled to recover from the state and the city only to the extent that contractor had paid more than its proportionate share of the common liability; its recovery was limited to the amount it paid in excess of its proportionate share, with the state and city each required to pay its proportionate share of the liability. Lattea v. City of Akron, Ohio App.1982, 458 N.E.2d 868, 9 Ohio App.3d 118, 9 O.B.R. 182. Contribution ☞ 7

Under statute providing right of contribution for joint or several liability in tort "for the same injury to person or property," accounting firm could maintain contribution claim against agencies that rated investment certificates, even though damage was economic; "property" included purely economic loss. Commercial Financial Services, Inc. v. Arthur Andersen LLP, Okla.Civ.App. Div. 4 2004, 94 P.3d 106, certiorari denied. Contribution 5(6.1)

Under statute establishing right of action for contribution, liability of defendant in contribution action is determined by amount of common liability--an amount representing total damages caused by negligence of all defendants--and degree of fault, i.e., pro rata share, attributable to each of tort-feasors; amount can be established either by verdict or through settlement. City of Tucson v. Superior Court In and For County of Pima, Ariz.1990, 798 P.2d 374, 165 Ariz. 236. Contribution ☞ 7

90. Joint judgment

Under Massachusetts law, joint tort-feasor who settled negligence action after return of adverse jury verdict but while posttrial motions were pending and before entry of judgment on verdict was required to follow procedures for bringing contribution action applicable when joint tort-feasor pays damages under settlement agreement, not procedures applicable when tort-feasor pays pursuant to judgment against it. Medical Professional Mut. Ins. Co. v. Breon Laboratories, Inc., D.Mass.1997, 966 F.Supp. 120, question certified 141 F.3d 372, certified question answered 705 N.E.2d 260, 428 Mass. 818, answer to certified question conformed to 181 F.3d 80. Contribution ☞ 9(1)

Under this Act a joint judgment is not a necessary requisite to the right to contribution. Douglas v. Sheridan, N.J.Super.L.1953, 98 A.2d 632, 26 N.J.Super. 544. Contribution ☞ 5(1)

91. Conditional judgment

Although a joint tort-feasor may not obtain a money judgment against his cotort-feasor, under 12 P.S. § 2082 et

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

seq., until he has paid more than his prorata share of any judgment obtained by plaintiff, a conditional judgment may be entered for contribution. Falciani v. Philadelphia Transp. Co., D.C.Pa.1960, 189 F.Supp. 203. Contribution ☞ 9(8)

### 92. Prior decisions in or prior disposition of case

Prior disposition of case against law firm on statute of limitations grounds did not effect any right to contribution against law firm. Manning v. Fort Deposit Bank, D.C.Tenn.1985, 619 F.Supp. 1327, appeal dismissed 798 F.2d 469, appeal dismissed 798 F.2d 470, remanded 849 F.2d 222. Contribution ☞ 8

Prior decision that all service station lessees, lessors and sublessees, save sublessor who orally subleased station to operator who was injured when a portion of stone facade of station collapsed and fell on him, could not be held directly liable to operator would preclude oral sublessor's cross claim for contribution against original lessee. Coleman v. Texaco, Inc., Ark.1985, 688 S.W.2d 741, 286 Ark. 14. Contribution ☞ 5(6.1)

### 93. Review

Orders severing for trial asbestos-related personal injury claims against those defendant manufacturers who had not filed for bankruptcy were not final for purpose of appeal notwithstanding contention that severance would preclude nonbankrupt defendants from recovering contribution from the bankrupt defendants or maintaining action for contribution and apportioned damages or would preclude claims that those defendants who filed bankruptcy were wholly or partially responsible for the injuries and notwithstanding prospect of bankruptcy court orders of discharge. Matthews v. Johns-Manville Corp., Pa.Super.1982, 453 A.2d 362, 307 Pa.Super. 300. Appeal And Error ☞ 78(1)

When jury, in personal injury actions by driver of leased truck against lessor thereof and another defendant which had allegedly directed parking of vehicle into which leased truck crashed, returned verdict against both defendants, defendant truck lessor had right to seek relief under Joint Tortfeasors Contribution Law, and when trial judge subsequently granted other defendant's motion for judgment notwithstanding verdict, truck lessor became aggrieved party with right of appeal. Ettin v. Ava Truck Leasing, Inc., N.J.1969, 251 A.2d 278, 53 N.J. 463. Appeal And Error ☞ 151(2); Contribution ☞ 5(7)

Footnote in Supreme Judicial Court opinion on appeal of underlying tort action noting that various contribution claims remained outstanding and that trial court had reserved those claims for future disposition did not authorize trial court, on remand, to resolve contribution claims in manner inconsistent with order vacating tort judgments. Hopper Feeds, Inc. v. Cincinnati Milacron, Inc., Mass.1991, 581 N.E.2d 1023, 411 Mass. 273. Contribution ☞ 5(1)

Prior decisions holding that one defendant may not appeal from grant of directed verdict in favor of a codefendant are no longer controlling since the enactment of the Uniform Contribution Among Tortfeasors Act. Carey v. Jones, Tenn.App.1976, 546 S.W.2d 814. Courts ☞ 89

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Since one defendant has a right of contribution if codefendant is also found liable, judgment defendant is entitled to appeal decision dismissing the codefendant. Carey v. Jones, Tenn.App.1976, 546 S.W.2d 814. Appeal And Error ☞ 151(6)

Uniform Contribution Among Tortfeasors Act changed substantive law, giving defendant the right to contribution from codefendant whose negligence contributed to plaintiff's injuries; having the right to contribution from codefendant who is joint tort-feasor, defendant's liability would be affected by dismissal of charges against his codefendant, and defendant therefore qualifies as an aggrieved party having the right to appeal dismissal of charges against codefendant. Cole v. Arnold, Tenn.1977, 545 S.W.2d 95. Appeal And Error ☞ 151(6); Contribution ☞ 5(2)

Defendant was aggrieved party and had right to appeal from decision exonerating codefendant from liability in negligence action, in view of fact that defendant would have right of contribution from codefendant if codefendant were found to be a joint tort-feasor, and defendant was therefore affected by dismissal of charges against codefendant. Cole v. Arnold, Tenn.1977, 545 S.W.2d 95. Appeal And Error ☞ 151(6)

Unif. Contribution Among Tortfeasors Act § 1, ULA CONTRIB TORTFEAS § 1

Copr. (C) Thomson Reuters 2011. All rights reserved. Official Text and Comments Reproduced with Permission of the National Conference of Commissioners on Uniform State Laws. Current through 2010 Annual Meeting of the National Conference of Commissioners on Uniform State Laws.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

▷

United States Court of Appeals,
Fourth Circuit.
Volpe M. BOYKIN, Administrator of the Estate of
Denzil J. Pereira, Plaintiff,
v.
CHINA STEEL CORPORATION; United States
Steel Mining Company, Incorporated, Defendants-
Appellants,
Bergesen D.Y. A/S, Defendant-Appellee,
and
Wescol Shipping, Incorporated, t/a Lavino Ship-
ping Agencies, Incorporated, Defendant.

No. 94-1267.
Argued Nov. 4, 1994.
Decided Jan. 17, 1996.

Administrators of estates of captain and four
crew members who were killed in methane explo-
sion brought action under Death on the High Seas
Act against owner of ship, shipper of coal which
had been carried in ship's hold, and steel company
which sold coal to shipper. After settling wrongful
death claims, owner of ship sought indemnity from
shipper and steel company, and the United States
District Court for the Eastern District of Virginia,
Henry Coke Morgan, Jr., J., 835 F.Supp. 274, held
that shippers were obligated to indemnify owner.
Shippers appealed, and the Court of Appeals,
Widener, Circuit Judge, held that: (1) shipper was
bound under terms of charter party, which provided
that English law applied, to indemnify owner, and
(2) owner was entitled to indemnity under general
maritime law.

Affirmed.

West Headnotes

**[1] Indemnity 208** ⬤➜**33(8)**

208 Indemnity
    208II Contractual Indemnity

        208k33 Particular Cases and Issues
            208k33(8) k. Maritime Cases. Most Cited
Cases
        (Formerly 208k13.2(7), 208k8(4))

**Indemnity 208** ⬤➜**69**

208 Indemnity
    208III Indemnification by Operation of Law
        208k63 Particular Cases and Issues
            208k69 k. Maritime Cases. Most Cited
Cases
        (Formerly 208k13.2(7))

Charterer was bound under terms of charter
party, which provided that English law governed
agreement, to indemnify owner of ship for amounts
paid in settlement of wrongful death claims brought
after crew members were killed in methane explo-
sion caused by fumes from coal in hold of ship;
charterer failed to provide adequate notice of haz-
ardous nature of coal, and under English law char-
terer impliedly warrants that cargo is fit for ordin-
ary carriage and does not present hazardous charac-
teristics of wholly different kind from what ought
reasonably to be anticipated and is liable by way of
indemnity for damages to ship owner for all prop-
erty damages, personal injury, debt settlements, and
loss of hire.

**[2] Indemnity 208** ⬤➜**69**

208 Indemnity
    208III Indemnification by Operation of Law
        208k63 Particular Cases and Issues
            208k69 k. Maritime Cases. Most Cited
Cases
        (Formerly 208k13.5)

**Indemnity 208** ⬤➜**95**

208 Indemnity
    208V Actions
        208k95 k. Settlement with Third Party as Bar
to Action. Most Cited Cases
        (Formerly 208k13.5)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

Shipper of coal, which was carried in hold of ship and caused methane gas explosion in which five crew members were killed, and steel company which supplied coal to shipper were obligated under maritime law to indemnify owner of ship for amounts paid by owner in settlement of wrongful death claims, even though owner chose to settle claims rather than defend; negligence of shipper and steel company had caused accumulation of methane gas which led to explosion and caused vessel to be unseaworthy, owner was not joint tortfeasor but was liable without fault, and shipper and steel company had been offered defense of action but had declined.

**[3] Indemnity 208 ⟲69**

208 Indemnity
    208III Indemnification by Operation of Law
      208k63 Particular Cases and Issues
        208k69 k. Maritime Cases. Most Cited Cases
    (Formerly 208k13.5)

**Indemnity 208 ⟲79**

208 Indemnity
    208III Indemnification by Operation of Law
      208k79 k. Notice in General. Most Cited Cases
    (Formerly 208k13.5)

**Indemnity 208 ⟲81**

208 Indemnity
    208III Indemnification by Operation of Law
      208k81 k. Accrual of Liability. Most Cited Cases
    (Formerly 208k13.5)

Establishment of indemnity in admiralty law under *Vaughn* has four requirements: indemnitor-indemnitee relationship must exist, indemnitee must demonstrate that it was under some compulsion to satisfy original claim of plaintiff, indemnitee must prove that its settlement with plaintiff in underlying action was reasonable, and indemnitee must show that unlawful act of indemnitor proximately caused injury to original plaintiff, and additional requirement is that proposed indemnitor be notified of underlying claim and tendered defense of claim.

***540 ARGUED:** Timothy B. Dyk, Jones, Day, Reavis & Pogue, Washington, DC, for Appellants. D. Arthur Kelsey, Hunton & Williams, Norfolk, Virginia, for Appellee. **ON BRIEF:** Gregory G. Katsas, Jones, Day, Reavis & Pogue, Washington, DC; Edward C. Schmidt, Richard P. Bress, Pittsburgh, Pennsylvania; Morton H. Clark, Carter T. Gunn, Vandeventer, Black, Meredith & Martin, Norfolk, Virginia; William R. Hawkins, J.F. Wilson, U.S. Steel Group, Pittsburgh, Pennsylvania, for Appellants. John E. Holoway, Hunton & Williams, Norfolk, Virginia, for Appellee.

Before WIDENER and HALL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge HALL and Senior Judge CHAPMAN joined.

OPINION

WIDENER, Circuit Judge:

Appellants China Steel Corporation and U.S. Steel Mining Company (defendants) appeal from a judgment against them in a maritime action brought under the Death on the High Seas Act, 46 U.S.C.App. §§ 761-768, on behalf of Denzil Pereira, the captain, and four crew members, killed on October 27, ***541** 1990 by an explosion on board the *M/V Berge Charlotte.* Although this appeal initially raised numerous issues, an interim settlement of the dispute between the defendants and Pereira's estate leaves open only the issue of a $540,000 indemnity award granted to Bergesen D.Y. A/S, the owner of the ship and a defendant in the underlying action, for payments it made to the survivors of the five decedents under a pretrial settlement agreement. We affirm the judgment of the district court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

requiring defendants to indemnify Bergesen for amounts paid under the settlement agreement.

The facts of this case are no longer in dispute and appear in two published opinions of the district court in 835 F.Supp. 274 (E.D.Va.1993) and 842 F.Supp. 874 (E.D.Va.1994). The *M/V Berge Charlotte,* owned by Bergesen and chartered by China Steel, was carrying a load of coal, supplied by U.S. Steel and purchased by China Steel, from Norfolk to Taiwan. See *Boykin v. Bergesen D.Y. A/S,* 835 F.Supp. 274, 276, 281 (E.D.Va.1993). U.S. Steel represented that the coal was category A, *see Boykin,* 835 F.Supp. at 279, which is the most common type of coal and is not considered such a dangerous cargo because it emits its methane gas more quickly, resulting in the emission of the gas before loading in the hold and reducing the likelihood of explosion.     See *Boykin,* 835 F.Supp. at 279. In fact, U.S. Steel knew or had reason to know that the coal on board the ship was category B coal. See *Boykin,* 835 F.Supp. at 280. Category B coal emits its methane gas more slowly, retaining more methane for release in the hold, and the resulting methane accumulation is highly volatile unless subject to frequent or continuous ventilation. See, e.g., *Boykin,* 835 F.Supp. at 281. Because of bad weather, see *Boykin,* 835 F.Supp. at 281-82, and because category A coal does not require such ventilation, see *Boykin,* 835 F.Supp. at 281, the ship did not so ventilate the load. See *Boykin,* 835 F.Supp. at 281. This resulted in a methane explosion which killed Pereira and the four crewmen. See *Boykin,* 835 F.Supp. at 276.

Boykin, as administrator of the estate of Pereira, sued Bergesen, U.S. Steel, China Steel, and another in a Virginia state court, and the case was removed to the federal district court. Bergesen and the defendants cross-claimed for indemnity and contribution, and Bergesen further sought recovery from the defendants for damage to the ship. *Boykin,* 835 F.Supp. at 275. Bergesen then settled with Boykin and with the other decedents, leaving only Boykin's claims against China Steel and U.S. Steel

and the cross-claims between Bergesen and those defendants. The district court awarded judgment to Boykin [FN1] and to Bergesen, finding that "the Steel defendants were one hundred percent at fault and ... Bergesen was zero percent at fault." *Boykin v. Bergesen D.Y. A/S,* 842 F.Supp. 874, 879, 883 (E.D.Va.1994). The district court also ordered China Steel and U.S. Steel to indemnify Bergesen for $540,000, the amount paid by Bergesen to the decedents under the settlement. *Boykin,* 835 F.Supp. at 287. It is this indemnity award which the defendants challenge on appeal and which is the only issue remaining in the case. The district court based its decision requiring that Bergesen be paid indemnity by China Steel and U.S. Steel on two alternate bases, first, on the basis of contractual indemnity under the charter party, and second, under the admiralty law of indemnity in this circuit as set out in *Vaughn v. Farrell Lines, Inc.,* 937 F.2d 953 (4th Cir.1991).

> FN1. The district court entered judgment against China Steel and U.S. Steel in favor of Boykin for approximately $774,000. See *Boykin,* 835 F.Supp. at 287. This award was not reduced to reflect Bergesen's settlement with Boykin. Although the defendants moved the district court to credit the judgment by amounts paid by Bergesen under the settlement, it denied the motion and adopted a proportionate-share rule that has since been announced by the Supreme Court in *McDermott.* See *Boykin,* 842 F.Supp. at 882-83.
>
> Thus, because the district court also awarded indemnity to Bergesen for amounts paid by Bergesen under the settlement, China Steel and U.S. Steel were required to pay *in toto* more than the total damages found for each individual decedent.

It set out that "Bergesen's claim for indemnity against [U.S. Steel] is based on tort principles, [referring to indemnity implied in law] while its

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

claim against China Steel is based on the charter party" and that U.S. *542 Steel "agreed to take over China Steel's defense and hold China Steel harmless for any damages." Boykin, 835 F.Supp. at 287 n. 19. It had previously stated that "Bergesen's claim for indemnity rests on the terms of a charter party, and the question of whether, under that agreement, China Steel provided sufficient notice to Bergesen of the hazardous characteristics of the cargo." Boykin, 835 F.Supp. at 278 n. 4. The court then provided, "In addition, with regard to indemnity under the charter party, the Court has previously found that China Steel breached the terms of the charter party by failing to provide adequate notice of the hazardous nature of the cargo." Boykin, 835 F.Supp. at 287 (footnote omitted).

With respect to indemnity under Vaughn, the court stated that "The indemnitor-indemnitee relationship is established because the Court has found that the Steel Defendants were guilty of active or primary wrongdoing, and that Bergesen has not been proven negligent. The Court has further found that the Steel Defendants' negligence proximately caused the harm for which Bergesen paid in settlement, and FINDS that Bergesen's payments were reasonable. Further, Bergesen tendered its defense to U.S. Steel. (Berg Ex. 72)." Boykin, 835 F.Supp. at 287 (citations omitted).

[1] We will first consider indemnification under the charter party. Rider clause 42 of the charter party provides that that agreement "shall be governed by English Law." An affidavit of an English attorney explained that under English law a charterer, China Steel here, impliedly warrants that his cargo is fit for ordinary carriage and does not present any hazardous characteristics which are of a wholly different kind from what ought reasonably to be anticipated. As stated above, the district court found as a fact that China Steel failed to provide adequate notice of the hazardous nature of the cargo. The affidavit mentioned further provides that for breach of such a warranty, the charterer is liable by way of an indemnity for damages to the ship

owner for all property damages, personal injury, debt settlements, and loss of hire. Therefore, the liability of China Steel in indemnity is based on the indemnity provided in the written charter party and does not independently depend for its existence on the indemnity in admiralty law provided in Vaughn.

China Steel and U.S. Steel argue that McDermott, Inc. v. AmClyde & River Don Castings, Ltd., 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148, (1994), has done away with all notions of indemnity in favor of a settling defendant against a non-settling defendant in admiralty. The short answer to that contention is that any changes McDermott may have made to the law of indemnity in admiralty we do not think affect an indemnity obligation such as that which was imposed upon China Steel by virtue of a written agreement. That reason alone would serve to sustain the judgment of the district court in favor of Bergesen.

In connection with indemnity under the charter party, no question as to the district court's treatment of that aspect of the case was raised on appeal until the reply brief of China Steel and U.S. Steel. Bergesen claims, probably properly, that contentions made by the steel defendants in the reply brief with respect to English law have been waived. We do not base our decision on waiver, however, for we are of opinion that the district court correctly treated China Steel's liability under the charter party as the breach of warranty which it was, and we are further of opinion that the district court's findings of fact upon which that decision was based are not clearly erroneous. Indeed, there is not even a claim that the factfinding just referred to is clearly erroneous.

The last thing we consider is the liability of the steel defendants under Vaughn. With respect to that question, it is quite important that Vaughn 's requirements be considered and, as well, the factual setting of the instant case. Vaughn was a case in which an injured seaman had sued the vessel owner and Foster Wheeler, the manufacturer of a boiler, on account of cancer caused by the use of asbestos

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

in the boiler. The district court found that the use of asbestos in the boiler by Foster Wheeler had made the vessel unseaworthy and that the ship owner was guilty of no wrongdoing. The plaintiff's personal representative had settled with the shipowner **\*543** prior to trial but had not settled with Foster Wheeler. The district court found that Foster Wheeler was an active wrongdoer in supplying a defective boiler to the shipowner, that the defective boiler made the ship unseaworthy, and that the ship owner had not been guilty of any negligence which contributed to the loss. We found that indemnity was called for, stating that it "... typically arises when the indemnitee has been found absolutely liable for the wrongful act of another as in an 'admiralty context where a shipowner held liable on an unseaworthiness claim is awarded indemnity against a third party whose negligence caused the unsafe condition resulting in injury to a seaman.' " *Vaughn,* 937 F.2d at 957.

[2] The case at hand is on facts which are indistinguishable from those in *Vaughn.* The negligence of the steel defendants caused the accumulation of methane gas in the hold of the ship involved, the explosion of which caused the death of the captain and four members of the crew. It is idle to argue that the *Berge Charlotte* was in a seaworthy condition when her hold was laden with the methane exuding coal unventilated due to the sole fault of the steel defendants. To say that the ship had to defend, instead of settle, in such an action at the risk of forfeiting any indemnity claim against the wrongdoers, is to require the ship to take a position as unrealistic as it is unreasonable, we think.

[3] The establishment of indemnity under *Vaughn* has four requirements: first, an indemnitor-indemnitee relationship must exist; second, the indemnitee must demonstrate that it was under some compulsion to satisfy the original claim of the plaintiff; third, the indemnitee must prove that its settlement with the plaintiff in the underlying action was reasonable; and fourth, the indemnitee must show that the unlawful act of the indemnitor

proximately caused the injury to the original plaintiff. An additional requirement is that the proposed indemnitor be notified of the underlying claim and tendered the defense of the claim. The steel defendants do not contest that each of the requirements of *Vaughn* has been satisfied. And not of the least consequence is the fact that the district court found as a fact that "[f]urther, Bergesen tendered its defense to U.S. Steel (Berg Ex. 72)." *Boykin,* 835 F.Supp. at 287.[FN2] So unless *McDermott* has overruled *Vaughn* by implication, the district court's order should also be affirmed on the alternate ground that indemnity was required under *Vaughn.*

> FN2. The exhibit showing the tender of the defense is not even included in the record on appeal.

The facts of *McDermott* are to the effect that a crane purchased by McDermott from AmClyde (apparently the manufacturer) caused considerable damage to the crane itself and to deck of the oil and gas rig in the Gulf of Mexico on which the crane was working. The casualty was occasioned by the failure of a hook supplied by River Don Castings or by a sling supplied by one of three other defendants. McDermott settled with the sling defendants for any of their liability for both crane and rig damages. McDermott agreed to indemnify the sling defendants against any contribution action. Upon a trial, the jury found that the total damages to the rig [FN3] amounted to $2.1 million and allocated responsibility, 32% to Amclyde, 38% to River Don, and 30% to McDermott and the sling defendants. The question before the court was the allocation of damages on those facts.

> FN3. Crane damage was not included in the jury verdict.

The Court adopted option 3 from the comment on the caveat to *Restatement (Second) of Torts § 886A (1977)* which is "(3) The money paid extinguishes any claim that the injured party has against the released tort-feasor and also diminishes the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." 511 U.S. at ----, 114 S.Ct. at 1464-66.

The Court proceeded to state that under this approach no suits for contribution from the settling defendants are permitted, nor are they necessary, because the non-settling defendants pay no more than their share of the judgment. The steel defendants now argue that indemnity is equated to contribution and take the position that indemnity, as **\*544** under *Vaughn,* has been abolished by *McDermott.*

We do not agree, for several reasons. First, Bergesen and the steel defendants are not joint tortfeasors. Even in the face of a claim that they might have been, Bergesen has been found not a tortfeasor as a matter of fact and not guilty of any fault, which holding has not been questioned.FN4 In the case of *Westinghouse Credit Corp. v. M/V NEW ORLEANS,* 39 F.3d 553 (5th Cir.1994), the proportionate share rule of *McDermott* was held not to apply in favor of non-settling defendants unless they were joint tort-feasors with the settling defendants. Under that reasoning, the proportionate share rule would have no application here.

> FN4. Bergesen is also not a joint tortfeasor because its liability for an unseaworthy vessel is liability without fault, a different legal duty than that which applies to the steel defendants.

While at first blush it may seem inequitable for the steel defendants not to have received any credit against the judgment against them for the amount of the settlement paid by Bergesen, and also being required to indemnify Bergesen, that does not state the whole case. The liability to which the undoubted negligence of the steel defendants exposed Bergesen was not merely that of a joint tort-feasor, it was the liability without fault attaching to an unseaworthy ship. In a very similar case to the one at hand, it has been held in admiralty that when the negligence of two tort-feasors occasioned the liabil-

ity without fault of payments of maintenance and cure, the employer was entitled to recovery of the entire maintenance and cure payments from the tort-feasors, although the employee was partially at fault and had settled with the employer as well as with the tort-feasors. In the case of *Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008 (5th Cir.1994), an employee of Energy was injured while on the job on a drilling rig in the Gulf of Mexico. The employee settled with all concerned, and upon a trial, fault was allocated 60% to the employee, 20% to a contractor on the job, and 20% to the platform owner. The court held that Energy, the employer, was not a joint tort-feasor with the contractor and the platform owner and that its liability for maintenance and cure was regardless of whether or not it was negligent. Because the negligence of Houma and Freeport, the tort-feasors, had partially caused the injury to the employee which had occasioned the payment of maintenance and cure, the employer, who was free from fault, was entitled to be reimbursed completely 50% by each of the equally at fault tort-feasors, although their liability was found to be only 20% each. The court held that the proportional fault rule of *McDermott* did not prevent this reimbursement in a fact situation little different from the one present here.

Of equal consequence in our reasoning is a discussion by the Supreme Court in *McDermott* of the various values to be considered in the allocation of loss in situations in which one defendant has settled and another or others has not. Not least among them is the risk involved and the practical situation in which each of the defendants finds itself. In the case at hand in a defense of the claim by the decedents' estates, Bergesen would have had to show that the vessel was seaworthy when its hold was laden with methane exuding coal which was not being properly ventilated. That condition, from any point of view disclosed by this record, made Bergesen's chances of success about as near zero as any case we have seen. In that situation, Bergesen was able to settle on account of the five deaths caused by the explosion. Had it not attempted to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

73 F.3d 539, 1996 A.M.C. 920
**(Cite as: 73 F.3d 539)**

settle, its judgment would certainly have been questioned. Prior to settlement, however, Bergesen offered the defense of the case to the steel defendants whose negligence had caused the dangerous situation. When the steel defendants refused the defense of the case, they assumed the risk of the defense. And a part of that risk was reimbursing by way of indemnity Bergesen for its payment for the deaths caused by a vessel which was undoubtedly unseaworthy. We do not think that the argument of the steel defendants, that Bergesen took a poor risk in settling the case, is valid. The poor risk was taken by the steel defendants when they were tendered the defense and declined it.

**\*545** We are thus of opinion that the district court should be affirmed on either alternate ground upon which it found indemnity in favor of Bergesen.

The judgment of the district court is

*AFFIRMED.* FN5

> FN5. The steel defendants, in their opening brief, p. 30, have foregone any claim for a reduction in the plaintiff's judgment on account of the settlement by Bergesen. Cf. *McDermott,* 511 U.S. at ----, 114 S.Ct. at 1464-66. That position necessarily forfeits any claim under what the Court has called the "one satisfaction rule" and has been mentioned in *McDermott* at ----, 114 S.Ct. at 1470-71, where the Court stated in that case it would not apply the rule even if that resulted in an over-compensation of McDermott. This circuit, in a studied opinion, adopted the rule from a tentative draft of the *Restatement (Second) of Torts* § 885(3), in *MacKethan v. Burrus, et al.,* 545 F.2d 1388 (4th Cir.1976). The rule appears in the *Restatement (Second)* (1977) as § 885(3) with little change. The fact that the steel defendants here elected not to claim on account of that theory should not be taken as any indication that we think the

theory is no longer extant in this circuit or might not have been applied in this case. We express no opinion on either such question.

The motion of U.S. Steel to strike Bergesen's reply brief is denied.

C.A.4 (Va.),1996.
Boykin v. China Steel Corp.
73 F.3d 539, 1996 A.M.C. 920

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1426678 (E.D.La.)
**(Cite as: 2001 WL 1426678 (E.D.La.))**

---

**C**

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
CARGILL FERROUS INTERNATIONAL DIVISION OF CARGILL, INC.
v.
M/V PRINCESS MARGHERITA, et al.

No. Civ.A. 98-3825.
Nov. 13, 2001.

DUVAL, J.

**\*1** Before the Court is a Motion to Dismiss Third Party Complaint (Doc. 28) filed by Bossclip Ltd. ("Bossclip"). Having reviewed the pleadings, memoranda and the relevant law, the Court finds the motion to have merit for the reasons that follow.

Background

This cases arises out of damage to steel coils contained in Holds 1, 2, and 3 in the M/V PRINCESS MARGHERITA. This vessel is owned by Friendship Marine Co., Ltd. ("Friendship") and operated by Cyprus Maritime Co., Ltd. (Cyprus). The vessel was time chartered to Boss Lines Ltd., then subchartered to Bossclip. Bossclip then voyage chartered the vessel to Cargill Ferrous International ("Cargill"). The relevant charter between Cargill and Bossclip contained an arbitration clause which required disputes to be resolved by arbitration in London.

Cargill sued the vessel *in rem,* Bossclip, Friendship, Cyprus and the relevant insurer for damages to the cargo. Bossclip filed a Motion to Stay Pending Arbitration, which motion was granted on August 27, 1999. Subsequently, Cargill, without the benefit of a settlement with Bossclip, dismissed *with prejudice* Bossclip. Subsequently, Friendship and Cyprus filed a Third-Party Complaint against Bossclip seeking contribution and tort indemnity. In response, Bossclip filed the subject motion.

Analysis

Bossclip argues that based on the Supreme Court's decision in *McDermott Inc. v. AmClyde,* 114 S.Ct. 1461 (1994), the claims for contribution and indemnity should be dismissed. In *AmClyde,* the Supreme Court adopted the proportionate share approach in resolving claims between settling and non-settling defendants in a maritime setting. As a result of that rule, all claims against the settling defendant are extinguished including claims for contribution and tort indemnity by non-settling defendants.FN1 Friendship and Cyprus argue that because no formal settlement agreement was confected (i.e. no money changed hands), *AmClyde* is inapplicable. However, the Court finds otherwise.

> FN1. Actions for contractual indemnity would not be barred by *AmClyde.*

The thrust of *AmClyde* is that no suit for contribution from the settling defendants is neither permitted, nor necessary, because the non-settling defendants pay no more than their share of the judgment. There is no requirement under *AmClyde* that the settlement be for a reasonable amount, or for any amount of money at all. If the plaintiff chooses to dismiss a defendant with prejudice, there is no logical reason why the rule of *AmClyde* would not apply. There is absolutely no prejudice to the remaining defendants as they will only be liable for their respective percentages of negligence, if any. Additionally, they will have the advantage of pointing to an empty chair.

Although *AmClyde* did not specifically discuss actions for tort indemnity, it is clear that the analysis is applicable to such a claim. In *D.N.H. Towing Co., Inc.,* 1998 WL 51835 (Feb. 5, 1998) (Vance, J.), the court held that as a result of settlement, the claims for contribution and indemnity were barred. *See Pacific Employers Ins. Co. v. M/T IVER CHAMPION,* 1996 WL 139724 (March 27, 1996); *Mayer v. Cornell Uni., Inc.,* 1995 WL 94575. In *Luke v. Signal Oil & Gas Co.,* 523 F.2d 1190, 1191

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1426678 (E.D.La.)
**(Cite as: 2001 WL 1426678 (E.D.La.))**

(5 [th] Cir.1975), the court stated that a dismissal with prejudice has the force and effect of a full release. Clearly a dismissal with prejudice is a full release, and the released party would have the identical rights as a party that is released by a formal settlement agreement under the *AmClyde* rule. Accordingly,

**\*2** IT IS ORDERED that Bossclip Ltd.'s Motion to Dismiss is GRANTED.

E.D.La.,2001.
Cargill Ferrous Intern. Div. of Cargill, Inc. v. M/V PRINCESS MARGHERITA
Not Reported in F.Supp.2d, 2001 WL 1426678 (E.D.La.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 94575 (N.D.N.Y.)
**(Cite as: 1995 WL 94575 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.

Margaret MAYER, individually and as executrix of
the estate of James E. Mayer, DECEASED,
Plaintiff,
v.

CORNELL UNIVERSITY, INC., David Blanton d/
b/a Voyagers International, Horizontes Nature Ad-
ventures, Kenneth Rosenberg, and Laura Brown,
Defendants.

No. 92-CV-220.
Feb. 27, 1995.

Lopinto, Schlather Law Firm, Ithaca, NY (Ray-
mond M. Schlather, of counsel), for plaintiff.

Cornell University, Office of Counsel, Ithaca, NY (
Thomas Mead Santoro, Monica C. Barrett, of coun-
sel), for defendant Cornell and Laura Brown.

MEMORANDUM DECISION & ORDER
McAvoy, Chief Judge.

*1 ON August 15, 1994 defendants David
Blanton d/b/a Voyagers International and Kenneth
Rosenberg settled with plaintiff Margaret Mayer as
to all claims against them arising from the events
underlying this action. Defendants Voyagers and
Rosenberg, however, remain presently subject to
various Cross-claims asserted by Cornell and
Brown in their answer to plaintiff's amended com-
plaint. Cornell University and Laura Brown are
now the sole defendants as to plaintiff's wrongful
death claim, governed by the Death on the High
Seas Act, 46 U.S.C. § 761 *et seq.,* and plaintiff's de-
cedent's survival claim for pain and suffering. The
following Memorandum Decision and Order ad-
dresses various outstanding pre-trial issues.

a. Defendant Voyagers and Rosenberg's Motion to

Dismiss Cornell's Cross-Claims:

Counsel for the settling defendants points to
provisions in the settlement agreement between
plaintiff and Blanton and insists that Cornell's
cross-claims against them for indemnity and contri-
bution must be dismissed. In particular, the settling
defendants claim that plaintiff's agreement that "the
total amount of damages recoverable against all of
the tort-feasors ... which releasor may obtain by
way of verdict in any action against the other non-
released joint tort-feasors shall be reduced to the
extent of the pro-rata (meaning proportionate) share
of liability attributed to the releasees herein."
*Stlmt.Agrmnt., Joint Tortfeasor Release,* ¶ 3. The
settlors claim that this release, read in light of *Mc-
Dermott, Inc. v. AmClyde,* 114 S.Ct. 1461 (1994),
compels the conclusion that the cross-claims of de-
fendants Cornell and Brown fail to state a claim
upon which relief can be granted.

This Court finds that application of *McDer-
mott's* doctrine of proportionate share to the instant
facts compels dismissal of Cornell and Brown's
first two cross-claims against Voyagers and Rosen-
berg. *Dft. Cornell & Brown Ansr. to Amnd. Cplt,* ¶¶
51-54. These cross-claims amount to nothing more
than simple claims for contribution based on the al-
leged negligence of the settling defendants. Under
the *McDermott* proportionate share approach,
however, "*no suits for contribution from the set-
tling defendants are permitted,* nor are they neces-
sary, because the nonsettling defendants pay no
more than their share of the judgment." *Id.* at 1466
(emphasis added). It follows that if suits for contri-
bution are forbidden and unnecessary under *Mc-
Dermott,* Brown and Cornell's cross-claims for con-
tribution are likewise unsustainable.

The Court is mindful that no prejudice will res-
ult to Cornell and Brown by the loss of these cross-
claims: in no event can these non-settling defend-
ants be forced to pay more than precisely their
equitable share of damages as ascertained at trial.
Furthermore, this dismissal in no way precludes the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 94575 (N.D.N.Y.)

**(Cite as: 1995 WL 94575 (N.D.N.Y.))**

nonsettlors from "argu[ing] the 'empty chair' in the hope of convincing the jury that the settling party was exclusively responsible for the damage." *Id.* at 1470. In light of the joint tortfeasor settlement, however, no relief can be granted to Cornell and Brown on their claims for contribution which arise from their settling co-defendants' alleged negligence and so Cornell and Brown's first two cross-claims against Voyagers and Rosenberg must be dismissed.

**\*2** Cornell and Brown's third cross-claim against Voyagers alone, however, stands on a different footing. That claim for indemnification does *not* arise from allegations of Voyagers negligence but rather appears to be a claim in the nature of contractual indemnity. *Dft. Cornell & Brown Ansr. to Amnd. Cplt,* ¶¶ 55-57. Nothing in *McDermott* compels the conclusion that contractual indemnification is voided by operation of the proportional share approach. Therefore, reading this cross-claim in the light most favorable to its proponents, the motion to dismiss as against this third cross-claim must be denied.

Counsel have not argued the substantive merits of this indemnity claim and the Court today expresses no opinion as to the claim's efficacy. The Court merely holds that paragraphs fifty five through fifty seven of Cornell and Brown's answer states a claim against Voyagers upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Voyagers remains free to raise arguments not addressed herein, either *in limine* or at trial, for dismissal of this cross-claim. Alternatively, as pointed out by Cornell and Brown, Voyagers is also free to rely on the soundness of their settlement agreement to shield them from further liability and raise no defense to the cross-claim. Voyagers motion to dismiss the third cross-claim for failure to state a claim upon which relief may be granted, however, is DENIED.

b. Defendant Cornell's Motion in Limine to Preclude Introduction of Plaintiff's Expert Testimony:

Upon consideration of the parties' letter mo-

tions and after examination of the relevant portions of the parties' pre-trial submissions the Court anticipates that Thomas Ebro will qualify as an expert for purposes of testifying on various issues underlying plaintiff's claims in this case and that much of his proposed expert testimony will be determined to be helpful to the trier of fact. Unfortunately, the Court will require a full examination of this witnesses background and expertise as well as a proffer of the disputed testimony in order to determine which areas, if any, Mr. Ebro will be unqualified to testify regarding or which of the issues he addresses, if any, will be unsuitable for expert testimony. At this time, working from only a paper record and the parties' suppositions as to the nature of Mr. Ebro's anticipated testimony, the Court is unable to rule on admissibility specifics as requested by the parties.

Therefore, in light of plaintiff's expressed concerns as to his expert's availability for trial the Court directs that the requested videotaping of Thomas Ebro's trial testimony go forward with defendants Cornell and Brown preserving their objections for trial in conformity with the Local Rules of Practice for the Northern District of New York. The Court anticipates that the parties will structure the deposition so as to segregate testimony on the contested issues thereby simplifying the process of determining the admissibility of Mr. Ebro's testimony and further anticipates holding an evidentiary hearing directly prior to trial to resolve the admissibility questions.

c. Trial by Jury:

**\*3** Finally, the Court notes that, notwithstanding the apparent understanding of the parties to the contrary, the Court has never determined that a jury trial is unavailable in the instant action. Indeed, as counsel for Cornell and Brown pointed out at oral argument, the Court's decision on motion of September 23, 1994 did not determine that a jury trial would be unavailable to plaintiff. Furthermore, in light of prevailing case law it is not at all clear to the Court that plaintiff must be precluded from trial

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 94575 (N.D.N.Y.)

**(Cite as: 1995 WL 94575 (N.D.N.Y.))**

by jury. *See, Friedman v. Mitsubishi Aircraft International, Inc.,* 678 F.Supp. 1064, 1065-66, nn. 3 & 5 (S.D.N.Y.1988); *Mynatt v. Heine,* 1991 WL 45734 *3 (D.D.C.1991)* (DOHSA claim joined with D.C.Code Statutory survival action: summary judgment denied because of "sufficient evidence to indicate that a *jury* might find that decedents suffered conscious pain and suffering prior to death.") (emphasis added); *see also, In re Korean Air Lines Disaster,* 798 F.Supp. 755 (E.D.N.Y.1992), *In re Air Crash Disaster Near Honolulu,* 783 F.Supp. 1261 (N.D.Cal.1992) (where plaintiff has Warsaw Convention survival claims sounding at law joined with DOHSA claims sounding in admiralty all of plaintiff's claims may be tried before a jury); *In re Korean Air Lines Disaster,* 798 F.Supp. 750, 753-54 (D.D.C.1992) ("fact that plaintiffs filed a jury triable survival claim with the wrongful death claim arising from the same accident, allows the joint claims to be tried to the jury"); *cf. In re Complaint of Berkley Curtis Bay Co.,* 569 F.Supp. 1491, 1494 (S.D.N.Y.1983) ( "where the nonjury admiralty tradition and a plaintiff's jury right conflict, the jury right must prevail."); *Favaloro v. S/S Golden Gate,* 687 F.Supp. 475, 481 (N.D.Cal.1987) ("Even though claims may sound in admiralty, where diversity jurisdiction can be established there is a right to a jury trial.").

In light of plaintiff's initial demand for a trial by jury and the Court's expectation that the parties would address this question via their pre-trial submissions, plaintiff may, if still desirous of a jury trial, supplement her trial brief by not more than ten pages addressing the issue of whether a jury trial may be had. Such supplemental brief shall be filed no later than fifteen days from the date of this order. In the event that plaintiff chooses to file such supplemental briefing in support of a jury trial, defendants Cornell and Brown may respond, within fifteen days of plaintiff's filing, subject to the same limitation as to length.

IT IS SO ORDERED

N.D.N.Y. 1995
Mayer v. Cornell University, Inc.
Not Reported in F.Supp., 1995 WL 94575 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J |
| Applies to: B1 Master Complaint | * * * * * | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER AND REASONS

### [As to Motions to Dismiss the B1 Master Complaint]

This multi-district litigation ("MDL") consists of hundreds of consolidated cases, with thousands of claimants, pending before this Court. These cases arise from the April 20, 2010 explosion, fire, and sinking of the DEEPWATER HORIZON mobile offshore drilling unit ("MODU"), which resulted in the release of millions of gallons of oil into the Gulf of Mexico before it was finally capped approximately three months later. The consolidated cases include claims for the death of eleven individuals, numerous claims for personal injury, and various claims for environmental and economic damages.

In order to efficiently manage this complex MDL, the Court consolidated and organized the various types of claims into several "pleading bundles." The "B1" pleading bundle includes all claims for private or "non-governmental economic loss and property damages." There are in excess of 100,000 individual claims encompassed within the B1 bundle.

In accordance with Pretrial Order No. 11 (Case Management Order No.1), the Plaintiffs' Steering Committee ("PSC") filed a B1 Master Complaint (Rec. Doc. 879) and a First Amended

1

Master Complaint (Rec. Doc. 1128) (collectively "B1 Master Complaint").  Before the Court are various Defendants' Motions to Dismiss the B1 Master Complaint (Rec. Docs. 1440, 1390, 1429, 1597, 1395, 1433, 1414, and 2107) and their Replies (Rec. Docs. 2312, 2188, 2298, 2216, 2191, 2212, 2217, and 2208), as well as Plaintiffs' Oppositions (Rec. Docs. 1803, 1804, 1808, 1821, and 2131).

## I. <u>PROCEDURAL HISTORY</u>

In the B1 Master Complaint, the PSC identifies a number of categories of claimants seeking various types of economic damages, including Commercial Fishermen Plaintiffs, Processing and Distributing Plaintiffs, Recreational Business Plaintiffs, Commercial Business Plaintiffs, Recreation Plaintiffs, Plant and Dock Worker Plaintiffs, Vessel of Opportunity ("VoO") Plaintiffs, Real Property Plaintiffs, Real Property/Tourism Plaintiffs, Banking/Retail Business Plaintiffs, Subsistence Plaintiffs, Moratorium Plaintiffs, and Dealer Claimants.

Plaintiffs named the following as Defendants in their B1 Master Complaint: BP Exploration & Production Inc., BP America Production Company and BP p.l.c. (collectively "BP"); Transocean Ltd., Transocean Offshore, Transocean Deepwater, Transocean Holdings (collectively "Transocean"); Halliburton;  M-I;  Cameron; Weatherford; Anadarko, Anadarko E&P (collectively "Anadarko");  MOEX Offshore, MOEX USA (collectively "MOEX"); and MOECO.  All of the Defendants, with the exception of MOECO, have filed Motions to Dismiss.  Additionally, Dril-Quip, which was not named as a Defendant in the Master Complaint, has filed a Motion to Dismiss (Rec. Doc. 2107) because of the procedural effect of the Rule 14(c) tender in Transocean's Third-Party Complaint.

Plaintiffs allege claims under general maritime law, the Oil Pollution Act of 1990 ("OPA"),

33 U.S.C. § 2701, et seq., and various state laws. Under general maritime law, Plaintiffs allege

claims for negligence, gross negligence, and strict liability for manufacturing and/or design defect.

Under various state laws, Plaintiffs allege claims for nuisance, trespass, and fraudulent concealment,

and they also allege a claim for strict liability under the Florida Pollutant Discharge Prevention and

Control Act, Fla. Stat. § 376.011, et seq. Additionally, Plaintiffs seek punitive damages under all

claims and request declaratory relief regarding any settlement provisions that purport to affect the

calculation of punitive damages.

## II.  LEGAL STANDARD ON MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "'to state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially

plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* at 1949. A court "must . . . accept all factual

allegations in the complaint as true" and "must draw all reasonable inferences in the plaintiff's

favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court is not,

however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct.

at 1949-50.

## III.  PARTIES' ARGUMENTS AND DISCUSSION

The subject Motions to Dismiss go to the heart of Plaintiffs' claims in this case. Various

Defendants advance somewhat different arguments as to why some or all of the B1 bundle claims

should be dismissed. At bottom, however, all Defendants seek dismissal of all non-OPA claims for

purely economic damages resulting from the oil spill.[1]  Essentially, Defendants move to dismiss all claims brought pursuant to either general maritime law or state law.  All parties advance a number of arguments regarding the law that should apply to the Plaintiffs' claims for economic loss.  The Defendants' Motions raise a number of issues involving choice of law, and especially the interplay among admiralty, the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1301, *et seq.*, OPA, and various state laws.

A.  **Vessel status**

Although it was unclear prior to oral argument, it is now apparent that only Defendant Cameron suggests that the DEEPWATER HORIZON MODU was not a vessel in navigation at the time of the casualty on April 20, 2010.  Plaintiffs and all other Defendants agree that the DEEPWATER HORIZON MODU was at all material times a "vessel" as that term is defined and understood in general maritime law.  Cameron argues that although the DEEPWATER HORIZON may have been a vessel during the times it was moved from one drilling location to another, at the time of the casualty it was stationary and physically attached to the seabed by means of 5,000 feet of drill pipe.  Cameron relies on a line of cases beginning with *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352 (1969), for the proposition that a drilling platform permanently or temporarily attached to the seabed of the Outer Continental Shelf is considered an "fixed structure" and not a vessel.  Accordingly, argues Cameron, admiralty jurisdiction is absent and general maritime law does not apply.  Cameron contends that no state law, other than that of Louisiana law used as surrogate federal law under OCSLA, governs Plaintiffs' claims.

---

[1] Additionally, Defendants move to dismiss all OPA claimants who have not complied with OPA's "presentment" requirement. They also question whether Plaintiffs can properly sue parties under OPA who have not been named as Responsible Parties, as well as whether VoO Claimants and Moratorium Claimants have stated viable OPA claims.

The Court is not persuaded by Cameron's arguments. Under clearly established law, the DEEPWATER HORIZON was a vessel, not a fixed platform. Cameron's arguments run counter to longstanding case law which establishes conclusively that the Deepwater Horizon, a ***mobile*** offshore drilling unit, was a vessel.

In the seminal case of *Offshore Co. v. Robison*, the Fifth Circuit held that a "special purpose vessel, a floating drilling platform" could be considered a vessel. 266 F.2d 769, 779 (5th Cir. 1959). Specifically, the defendants in that case, who claimed that the floating platform should not be considered a vessel, argued that "[t]he evidence shows that Offshore 55 was a platform designed and used solely for the purpose of drilling oil wells in offshore waters—in this instance, the Gulf of Mexico. That the platform was not self-propelled and when moved from one well to another, two large tugs were used. Further, when an oil well was being drilled the platform was secured to the bed of the Gulf in an immobilized position with the platform itself raised forty to fifty feet above the water level . . . ." *Id.* at 773 n.3. Nonetheless, the Fifth Circuit held that such a "floating drilling platform" can be a vessel, though secured to the seabed while drilling a well.

Cameron's argument is also foreclosed by more recent Fifth Circuit precedent in *Demette v. Falcon Drilling Co., Inc*., 280 F.3d 492, 498 n.18 (5th Cir. 2002) ("This circuit has repeatedly held that special-purpose movable drilling rigs, including jack-up rigs, are vessels within the meaning of admiralty law."), *overruled in part, on other grounds by, Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 & n.8 (5th Cir. 2009) (en banc). In fact, in *Demette*, the Fifth Circuit expressly rejected the very same argument that Cameron makes in this case. *Id.* More recently, the Supreme Court held "a 'vessel' is any watercraft practically capable of maritime transportation." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 497 (2005). Noting that "a watercraft

5

need not be in motion to qualify as a vessel . . . ," the Supreme Court explained that "[l]ooking to whether a watercraft is motionless or moving is the sort of 'snapshot' test that we [previously] rejected . . . . Just as a worker does not 'oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured, neither does a watercraft pass in and out of Jones Act coverage depending on whether it was moving at the time of the accident." *Id.* at 495-96 (internal citation omitted).

The B1 Master Complaint alleges that the DEEPWATER HORIZON was a dynamically-positioned semi-submersible deepwater drilling vessel. It employed a satellite global positioning device and complex thruster technology to stabilize itself. At all material times, the vessel was afloat upon the navigable waters of the Gulf of Mexico. Unlike the jack-up drilling rig in *Demette*, the DEEPWATER HORIZON had no legs or anchors connecting it to the seabed. Its only physical "attachment" to the wellhead was the 5,000 foot string of drill pipe. Again, this is no more of a connection than the casing that was being hammered into the seabed by the casing crew in *Demette*. 280 F.3d at 494-95. The DEEPWATER HORIZON was practically capable of maritime transportation, and thus is properly classified as a vessel. *See also Herb's Welding v. Grey*, 470 U.S. 414, 417 n.2 (1985) ("Offshore oil rigs are of two general sorts: fixed and floating. Floating structures have been treated as vessels by the lower courts." (citations omitted)); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 (5th Cir. 2002) ("because the *Ocean Concorde* is a semi-submersible drilling rig, which is undisputably a vessel . . . ."), *overruled in part, on other grounds by, Grand Isle Shipyards, Inc.*, 589 F.3d at 788 & n.8.

Cameron argues that its blowout preventer ("BOP") was physically attached to the wellhead, located on the seabed some 5,000 feet below the surface of the water, and that the oil spill occurred

6

at the wellhead, not from the DEEPWATER HORIZON. This does not persuade the Court to reach a different conclusion. The B1 Master Complaint alleges that both the BOP and the drill string were part of the vessel's gear or appurtenances. Maritime law "ordinarily treats an 'appurtenance' attached to a vessel in navigable waters as part of the vessel itself." *Grubart, Inc v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 535 (1995).

## B. OCSLA jurisdiction

All parties agree that at the time of the spill, the DEEPWATER HORIZON was operating in the Gulf of Mexico approximately fifty miles offshore, above the Outer Continental Shelf, triggering OCSLA jurisdiction. Indeed, this Court has already held in this MDL that it has OCSLA jurisdiction pursuant to 43 U.S.C. § 1349 because "(1) the activities causing the injuries in question could be classified as an operation on the OCS involving exploration or production of minerals, and (2) because the case arises in connection with the operation." *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 747 F. Supp. 2d 704 (E.D. La. 2010). In that previous decision, this Court did not address choice-of-law questions, explaining that "having determined that a decision that admiralty jurisdiction applies would not affect the Court's jurisdiction determination, a decision on whether state, admiralty, or other law applies does not need to be addressed at this time." *Id.* at 709.

## C. Admiralty jurisdiction

The test for whether admiralty jurisdiction exists in tort cases was outlined by the Supreme Court in *Grubart, Inc v. Great Lakes Dredge & Dock Co.*:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water. The connection test raises two issues. A court, first,

must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise of the incident shows a substantial relationship to traditional maritime activity.

513 U.S. 527, 534 (1995)(citations and internal quotations omitted).

The location test, which is satisfied when the tort occurs on navigable water, is readily satisfied here. The B1 Master Complaint alleges that the blowout, explosions, fire, and subsequent discharge of oil, occurred on or from the DEEPWATER HORIZON and its appurtenances, which was operating on waters overlying the Outer Continental Shelf; i.e., navigable waters. The connection test is also met. First, there is no question that the explosion and resulting spill caused a disruption of maritime commerce, which exceeds the "potentially disruptive" threshold established in *Grubart*. Second, the operations of the DEEPWATER HORIZON bore a substantial relationship to traditional maritime activity. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir. 1986) ("oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce"). Further, injuries incurred on land (or in the seabed) are cognizable in admiralty under the Admiralty Extension Act, 46 U.S.C. § 30101.

This case falls within the Court's admiralty jurisdiction. With admiralty jurisdiction comes the "application of substantive admiralty law." *Grubart*, 513 U.S. at 545. "[W]here OCSLA and general maritime law both could apply, the case is to be governed by maritime law." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).

**D. Plaintiffs' state law claims**

Plaintiffs designated their B1 Master Complaint as "an admiralty or maritime case" under Rule 9(h) of the Federal Rules of Civil Procedure. Although Plaintiffs acknowledge that admiralty jurisdiction applies to this case, they insist that substantive maritime law does not preempt their

8

state-law claims because state law can "supplement" general maritime law, either where there is a substantive gap in maritime law or where there is no conflict with maritime law.  Plaintiffs also argue that OPA contains a state-law savings provision, which preserves these claims.  However, Plaintiffs do **not** argue that state law applies as surrogate federal law through OCSLA, and, in fact, argue against this position.

Relative to OCSLA, some Defendants argue that the only state law that could apply to the B1 Plaintiffs' claims is Louisiana law, because OCSLA permits the application of only the adjacent state's law.  On these grounds it is urged that the laws of all non-adjacent states must be dismissed.

The OCSLA provision that allows adjacent-state law to be adopted as surrogate federal law is § 1333(a)(2)(A):

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, **and artificial islands and fixed structures erected thereon**, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A) (emphasis added).  It is argued that § 1333(a)(2)(A) does not apply, because the DEEPWATER HORIZON was not an "artificial island" or a "fixed structure."  Based on the language of § 1333(a)(2)(A), this argument has appeal.  *See also Herb's Welding*, 470 U.S. at 417 n.2 (noting the distinctions between "fixed" and "floating" platforms).  However, since 1990 the Fifth Circuit has employed the "*PLT* test" to determine whether state law may be adopted as surrogate state law under OCSLA:

> For state law to apply as surrogate federal law, three conditions must be met: "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed,

9

or artificial structures permanently **or temporarily attached** thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law."

*Grand Isle Shipyard, Inc.*, 598 F.3d at 783(emphasis added) (quoting *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)). As the emphasized language indicates, the first prong of the *PLT* test ("situs prong") is not limited to artificial islands and fixed structures. Instead, the *PLT* test incorporates into § 1333(a)(2)(A) the locations referenced in § 1333(a)(1),[2] specifically "temporarily attached" structures. *See Demette*, 280 F.3d at 496 ("[Section 1333(a)(1) creates a 'situs' requirement for the application of other sections of the OCSLA, including sections 1333(a)(2) and 1333(b)."). This test has been applied to contract cases and tort cases. *See Grand Isle, supra* (contract); *Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 668 (5th Cir. 2006) (tort).[3]

Assuming the DEEPWATER HORIZON met the *PLT* test's situs prong,[4] the second prong

---

[2] Section 1333(a)(1) states:

The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and **all installations and other devices permanently or temporarily attached to the seabed**, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

43 U.S.C. § 1333(a)(1) (emphasis added).

[3] At least one commentator has argued that Congress intended that state law would only apply to "fixed" platforms, while "temporarily attached structures" (jack-up rigs, semi-submersible drilling rigs, etc.) would remain the province of federal law, particularly maritime law. *See* David W. Robertson, *The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies, and Choice of Law: Correcting the Fifth Circuit's Mistakes*, 38 J. Mar. L & Com. 487, 534-35, 541-42 (2007).

[4] It is questionable whether the DEEPWATER HORIZON would satisfy *PLT*'s situs prong. The Fifth Circuit has explained that the situs prong consists of three locations: (1) the subsoil and seabed of the OCS; (2) any artificial island, installation, or other device if (a) it is permanently or temporarily attached to the seabed of the OCS, and (b) it has been **erected on the seabed** of the OCS, and (c) its presence on the OCS is to explore for, develop, or produce resources from
(continued...)

10

of the *PLT* test still precludes application of state law under OCSLA. As discussed, admiralty jurisdiction was invoked by this incident, *see supra* Section C. Therefore, general maritime law applies to the claims of the B1 Plaintiffs. Moreover, OPA applies of its own force, because that act governs, *inter alia*, private claims for property damage and economic loss resulting from a discharge of oil in navigable waters. *See* 33 U.S.C. § 2702(a), (b)(2)(B), (b)(2)(C), (b)(2)(E). Because OPA and/or general maritime law applies to the B1 Plaintiffs' claims,[5] state law may not be adopted as surrogate federal law under OCSLA § 1333(a)(3)(A). *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352 (1969) ("for federal law to oust adopted state law federal law must first apply."). Consequently, adjacent-state law is not adopted under § 1333(a)(2)(A), nor does that Section preempt non-adjacent state law.

The focus turns, then, to the relationship between federal maritime law and state law. As mentioned, with the admiralty jurisdiction comes substantive maritime law. This means that general maritime law—an amalgam of traditional common law rules, modifications of those rules, and newly created rules—applies to this matter to the extent it is not displaced by federal statute. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). This framework, established by the Constitution,[6] intends that a consistent, uniform system will govern maritime commerce. *See*

---

[4](...continued)
the OCS; (3) any artificial island, installation, or other device if (a) it is permanently or temporarily attached to the seabed of the OCS, and (b) it is not a ship or vessel, and (c) its presence on the OCS is to transport resources from the OCS. *Demette*, 280 F.3d at 497. The first and third locations are not applicable. *See Diamond*, 302 F.3d at 544 n.13. Under the second location, a question arises whether the DEEPWATER HORIZON could be said to be "erected on the seabed of the OCS," given that it floated above the seabed. Regardless, the Court does not reach this issue since it finds that the second prong of the *PLT* test precludes the application of state law under OCSLA, as discussed in the main text.

[5]How OPA affects general maritime law is discussed later.

[6] Article III, § 2 extends the judicial power to "all cases of admiralty and maritime jurisdiction." Congress legislates in this area by virtue of the Interstate Commerce Clause and Necessary and Proper Clause. U.S. Const. Art. I, § 8. The
(continued...)

11

*The Lottawanna*, 88 U.S. 558, 575 (1874) ("It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states.").[7] Admiralty does not entirely exclude state law, however, and States may "create rights and liabilities with respect to ***conduct within their borders***, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction." *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 375 n.42 (1959) (emphasis added; internal quotations and citations omitted).

But this case does not concern conduct within state borders (waters). This casualty occurred over the Outer Continental Shelf—an area of "exclusive federal jurisdiction"—on waters deemed to be the "high seas." 43 U.S.C. §§ 1332(2), 1333(a)(1)(A). The Admiralty Extension Act, though not itself a grant of exclusive jurisdiction, *see Askew, infra*, nevertheless ensures that damages incurred on land are cognizable in admiralty. *See Grubart*, 513 U.S. at 531. Citizens from multiple states have alleged damage, and multiple states' laws are asserted. While it is recognized that States

---

[6](...continued)
Supremacy Clause, Article VI, ensures federal maritime law supercedes state law. *See* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* §§ 4-1 to 4-2 (4th ed. 2004).

[7] *See also Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 157 (1920) ("The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the states all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the federal government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere."); Schoenbaum, *supra* note 6, § 4-1 at 158 (stating that a desire for national uniformity drove the drafters to vest the federal courts with jurisdiction over admiralty cases). Although *Knickerbocker Ice* and its predecessor, *Southern Pacific Co. v. Jensen*, 244 U.S. 205 (1916), have certainly been limited by later decisions, they still retain "vitality." *See Askew v. Am. Waterways Operator, Inc.*, 411 U.S. 325, 344 (1973).

12

have an interest to protect their citizens, property, and resources from oil pollution, to subject a discharger to the varying laws of each state into which its oil has flowed would contravene a fundamental purpose of maritime law: "[t]o preserve adequate harmony and appropriate uniform rules relating to maritime matters." *Knickerbocker Ice Co.*, *see supra* note 7. Thus, to the extent state law could apply to conduct outside state waters, in this case it must "yield to the needs of a uniform federal maritime law." *Romero*, 358 U.S. at 373. (citing *S. Pac. Co. v. Jensen*, 244 U.S. 205 (1916)).

Plaintiffs argue that state law is not preempted in this instance because state law can supplement maritime law. Plaintiffs rely heavily on *Yamaha Motor Corp. v. Calhoun*, which involved a young girl killed in a jet ski accident in state territorial waters, where there is no federal statute providing a remedy for wrongful death. 516 U.S. 199 (1996). The decedent's parents attempted to sue under the state wrongful death statute. The question in *Yamaha* was whether general maritime law's wrongful death action, often called the "*Morange* action" (named for the case that created it, *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970)), preempted state law.

The Court held that state law was not preempted. The *Yamaha* Court noted that before the *Morange* action was created in 1970, courts permitted state wrongful death statutes to fill the substantive gap in the law. It also noted that the *Morange* Court was focused on curing an anomaly that existed for seafarers (generally speaking, seamen and longshoremen): When killed outside territorial waters, seafarers could base a wrongful death claim on unseaworthiness (because the Death on the High Seas Act ("DOHSA") incorporates unseaworthiness for seafarers), but not when killed within state waters (because DOHSA does not apply there; thus seafarers could only use state

13

law, which was negligence-based). Although *Morange* ended this anomaly, it specifically left in place the seafarer's **pre-existing** ability to bring a wrongful death action under state law. Thus, the *Morange* action was "in many respects a gap-filling measure to ensure that seamen (and their survivors) would all be treated alike," irrespective of whether death occurred within or beyond state waters," and "showed no hostility to concurrent application of state wrongful death statues." *Id.* at 214 (quotations omitted).[8] Accordingly, *Yamaha* does not support using state law to supplement maritime law in this case, since there is no substantive gap for state law to fill (as contrasted with the situation in state waters before the creation of the *Morange* action); remedies are available under both OPA and general maritime law. Also significant is the *Yamaha* Court's observation that maritime law had long accommodated States' interests in regulating maritime affairs that occurred **within their territorial waters**. *Id.* at 215 n.13. Again, this casualty occurred beyond state waters, so *Yamaha* is also distinguishable for this reason.

*Louisiana v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985) (applying maritime law and rejecting state-law claims for nuisance by plaintiffs seeking to recover for economic losses sustained in connection with an oil spill from a vessel on the Mississippi River), and *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49 (5th Cir. 1992) (using general common law rather than state law to supplement maritime law in order to promote uniformity of maritime law) provide further support for the conclusion that Plaintiffs' state-law claims are not viable.

Plaintiffs' contention that OPA's savings provisions preserves its state-law claims is also

---

[8] The *Morange* Court did not apply the *Morange* action to nonseafarers. This was done by subsequent courts. *See Yamaha*, 515 U.S. at 210 n.7.

14

unavailing.  These provisions state:

> (a) Preservation of State authorities; Solid Waste Disposal Act
>
> Nothing in this Act or the Act of March 3, 1851 shall—
>
>> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to—
>>
>>> (A) the discharge of oil or other pollution by oil within such State; or
>>>
>>> (B) any removal activities in connection with such a discharge; or
>>
>> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law.
>
> . . .
>
> (c) Additional requirements and liabilities; penalties
>
> Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof—
>
>> (1) to impose additional liability or additional requirements; or
>>
>> (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law;
>
> relating to the discharge, or substantial threat of a discharge, of oil.

33 U.S.C. § 2718.  These provisions evince Congress' intent to preserve the States' police power to govern pollution discharges within their territorial waters.  The Court does not read as them giving States the power to govern out-of-state conduct affecting multiple states.  "The usual function of a saving clause is to preserve something from immediate interference—not to create; and the rule is that expression by the Legislature of an erroneous opinion concerning the law does not alter it." *Knickerbocker Ice*, 253 U.S. at 162.  In other words, although Congress has expressed its intent to not preempt state law, this intent does not delegate to the States a power that the Constitution vested

in the federal government.[9]

This conclusion is consistent with the Supreme Court's rationale in *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). There the Court addressed the question of "whether the [Clean Water] Act preempts a common-law nuisance suit filed in a Vermont court under Vermont law, when the source of the alleged injury is located in New York." *Id.* at 483. The Clean Water Act ("CWA") contained two provisions relating to state-law remedies:

> Except as expressly provided . . . nothing in this chapter shall . . . be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.
> . . .
> Nothing in this section [Citizen Suits] shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief . . . .

*Id.* at 485 (quoting 33 U.S.C. §§ 1370, 1365(e)). Notwithstanding these provisions, the *Ouellette* Court determined that ". . . when a court considers a state-law claim concerning interstate water pollution that is subject to the CWA, the court must apply the law of the State in which the point source is located." *Id.* at 487. According to the Court, "[a]pplication of an affected State's law to an out-of-state source would . . . undermine the important goals of efficiency and predictability in the permit system." *Id.* at 496. The Court also noted that prohibiting an action under the affected State's laws did not leave the plaintiffs without a remedy, as they could avail themselves of either

---

[9] After oral arguments and the Motions were taken under advisement, the States' Coordinating Counsel raised what it considered a new argument: Prior to OPA's enactment, OCSLA previously contained a savings provision purporting to preserve the States' ability to enact pollution laws respecting oil spills on the Outer Continental Shelf, and this provision was essentially moved to OPA. Counsel contends that in light of this, OPA's savings provisions should be interpreted in line with the former OCSLA provision. The Court has considered this argument, but is not persuaded. Even if the OCSLA savings provision was not repealed, it, like the OPA savings provisions, cannot grant to the states a right that is not permitted by the framework established by Constitution.

the source State's law or the CWA's citizen suit provision. *Id.* at 497-98 & n.18. Although this matter may not immediately concern a permitting process, similar goals exist in maritime law (uniformity), as discussed above. Thus, just as the Supreme Court limited the state-law claims preserved by the CWA savings clause, this Court finds it appropriate to limit state-law claims purportedly saved by OPA.

Plaintiffs' reliance on *Askew v. American Waterways Operators, Inc.* is unpersuasive despite that Court's observance that ship-to-shore pollution control is "historically within the reach of the police power of the States," and "not silently taken away from the States by the Admiralty Extension Act." 411 U.S. 325, 337 (1973). *Askew* involved a challenge to the constitutionality of the Florida Oil Spill Prevention and Pollution Control Act, which governed state and private damages incurred as a result of an oil spill in the State's ***territorial*** waters. The Court also noted that previous decisions "gave broad 'recognition of the authority of the States to create rights and liabilities with respect to ***conduct within their borders*** . . . .'" *Id.* at 340 (emphasis added). Thus, *Askew* does not suggest that state laws could apply to an out-of-state polluter. *Askew* is also distinguishable on the grounds that there was no overlap between the relevant federal and state statutes at issue, as there is with OPA. The federal statute in *Askew* addressed federal cleanup costs; the state statute addressed state and private damages. Thus, there was no available federal statutory remedy for the damages sought in *Askew*.

The Court's analysis is also not in tension with *United States v. Locke*, which held that OPA did not save Washington's tanker-design statutes. 529 U.S. 89 (2000). Plaintiffs emphasize the Supreme Court's point that "[p]lacement of the savings clauses in Title I of OPA suggests that Congress intended to preserve state laws of a scope similar to the matters contained in Title I of

OPA . . . . The evident purpose of the savings clauses is to preserve state laws which, rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills." *Id.* at 105. Plaintiffs use this point to advance the argument that if the statute at issue in *Locke* dealt with liability rather than tanker design, it would have been preserved under OPA. This is an overly broad interpretation. The Washington statute governed tankers operating in Washington state waters. Although the Supreme Court observed that the savings clause in OPA preserved state statutes relative to liability, it did not declare a rule so broad as to allow state liability statutes to apply to oil spills outside of state waters.

Plaintiffs also insist that under *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216 (Fla. 2010), "any person" can recover for damages suffered as a result of pollution under the Florida Pollutant Discharge Prevention and Control Act ("FPDPCA"). *Curd* involved commercial fishermen who made claims for economic damages resulting from an oil spill caused by a vessel operating in Tampa Bay, i.e., Florida territorial waters. As with the cases above, this case is distinguishable from a discharge occurring over the Outer Continental Shelf.

Accordingly, Plaintiffs' state common-law claims for nuisance, trespass, and fraudulent concealment, as well as Plaintiffs' FPDPCA claims are dismissed. Because the Court finds that state law is inapplicable to this case, Plaintiffs' arguments regarding the economic-loss doctrines of various states are moot.

## E.  General maritime law claims

Defendants seek to dismiss all general maritime claims, contending that when Congress enacted OPA, it displaced pre-existing federal common law, including general maritime law, for claims covered by OPA. Defendants argue that OPA provides the sole remedy for private, non-

18

governmental entities asserting economic loss and property damage claims. They urge that when Congress enacts a comprehensive statute on a subject previously controlled by federal common law, the federal statute controls and displaces the federal common law. Defendants further argue that under OPA, Plaintiffs are allowed to pursue their claims for economic damages solely against the designated "Responsible Party" and that OPA does not allow claims directly against non-Responsible Parties.

Prior to the enactment of OPA in 1990, a general maritime negligence cause of action was available to persons who suffered physical damage and resulting economic loss resulting from an oil spill. General maritime law also provided for recovery of punitive damages in the case of gross negligence, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), and strict product liability for defective products, *E. River S.S. Corp., Inc.*, 476 U.S. 858 (1986). However, claims for purely economic losses unaccompanied by physical damage to a proprietary interest were precluded under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). The Fifth Circuit has continuously reaffirmed the straightforward application of the *Robins Dry Dock* rule, explaining that "although eloquently criticized for its rigidity, the rule has persisted because it offers a bright-line application in an otherwise murky area." *Mathiesen v. M/V Obelix*, 817 F.2d 345, 346-47 (5th Cir. 1987) (citing *Louisiana v. M/V Testbank*, 752 F.2d 1019 (5th Cir. 1985)); *see also Wiltz v. Bayer CropScience, Ltd.*, --- F.3d ---, 2011 WL 2535552 (5th Cir. 2011); *Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.*, 639 F.3d 207 (5th Cir. 2011) (both reaffirming the applicability of *Robins Dry Dock*).

One relevant exception to the *Robins Dry Dock* rule applies in the case of commercial fishermen. *See Louisiana v. M/V Testbank*, 524 F. Supp. 1170, 1173 (E.D. La. 1981) ("claims for [purely] economic loss [resulting from an oil spill and subsequent river closure] asserted by the

19

commercial oystermen, shrimpers, crabbers, and fishermen raise unique considerations requiring separate attention . . . seamen have been recognized as favored in admiralty and their economic interests require the fullest possible legal protection."). A number of other courts have recognized that claims of commercial fishermen are sui generis because of their unique relationship to the seas and fisheries, treating these fishermen as akin to seamen under general maritime law. *See Yarmouth Sea Prods. Ltd. v. Scully*,131 F.3d 389 (4th Cir. 1997); *Union Oil Co. v. Oppen*, 501 F.2d 558 (9th Cir. 1974).

Accordingly, long before the enactment of OPA, this was the state of general maritime law. Persons who suffered physical damage to their property as well as commercial fisherman had a cause of action under general maritime law to recover losses resulting from unintentional maritime torts. In the case of gross negligence or malicious, intentional conduct, general maritime law provided a claim for punitive or exemplary damages. *Baker*, 554 U.S. 471. And, in the case of a defective product involved in a maritime casualty, maritime law imposed strict liability. *E. River S.S. Corp.*, 476 U.S. 858 (1986).

In the wake of the EXXON VALDEZ spill in 1989, there were large numbers of persons who suffered actual economic losses but were precluded from any recovery by virtue of the *Robins Dry Dock* rule. At that time, an oil spill caused by a vessel on navigable water was governed by a web of different laws, including general maritime law, the CWA, and the laws of states affected by the spill in question. Various efforts had been made in the past to enact comprehensive federal legislation dealing with pollution from oil spills. With impetus from the EXXON VALDEZ incident, Congress finally enacted OPA in 1990.

OPA is a comprehensive statute addressing responsibility for oil spills, including the cost of

clean up, liability for civil penalties, as well as economic damages incurred by private parties and public entities.  Indeed, the Senate Report provides that the Act "builds upon section 311 of the Clean Water Act to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution."  S. Rep. 101-94, at 730 (1989).  One significant part of OPA broadened the scope of private persons who are allowed to recover for economic losses resulting from an oil spill. OPA allows recovery for economic losses "resulting from" or "due to" the oil spill, regardless of whether the claimant sustained physical damage to a proprietary interest.  OPA allows recovery for "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, or natural resources, which shall be recoverable by ***any claimant***." 33 U.S.C. § 2702(b)(2)(E) (emphasis added).  Furthermore, the House Report noted that "[t]he claimant need not be the owner of the damaged property or resources to recover for lost profits or income." H.R. Conf. Rep. 101-653, at 781 (1990).

Clearly, one major remedial purpose of OPA was to allow a broader class of claimants to recover for economic losses than allowed under general maritime law. Congress was apparently moved by the experience of the Alaskan claimants whose actual losses were not recoverable under existing law.  Another obvious purpose of OPA was to set up a scheme by which a "Responsible Party" (typically the vessel or facility owner) was designated and made strictly liable (in most instances) for clean up costs and resulting economic damages.  The intent is to encourage settlement and reduce the need for litigation.  Claimants present their claims to the Responsible Party, who pays the claims and is then allowed to seek contribution from other allegedly liable parties. 33 U.S.C. §§ 2709, 2710, 2713.  If the Responsible Party refuses or fails to pay a claim after ninety days, the claimant may either pursue its claim against the government-created Oil Spill Liability Trust Fund

21

or file suit in court.  *Id.* § 2713.  There was much debate in Congress about whether or not this new

federal statute should completely preempt or displace other federal or state laws.  Ultimately, the

statute included two "saving" provisions, one relating to general maritime law[10] and the other to state

laws (discussed above).  The question arises in this case as to whether, or to what extent, OPA has

displaced any claims previously existing under general maritime law, including claims for punitive

damages.

    Only a handful of courts have had the opportunity to address whether OPA displaces general

maritime law.  For example, the First Circuit in *South Port Marine, LLC v. Gulf Oil Limited*

*Partnership*, 234 F.3d 58 (1st Cir. 2000), held that punitive damages were not available under OPA.

The First Circuit began by noting that in enacting OPA "Congress established a comprehensive

federal scheme for oil pollution liability" and "set[] forth a comprehensive list of recoverable

damages." *Id.* at 64.  "Absent from that list of recoverable damages is any mention of punitive

damages." *Id.*

    The First Circuit found that the Supreme Court decision of *Miles v. Apex Marine*, 498 U.S.

19 (1990), led to the conclusion that OPA did not allow for punitive damages.  "The Court [in *Miles*]

refused to allow recovery for loss of society when such damages were not provided in [Death on the

High Seas Act], reasoning that 'in an area covered by statute, it would be no more appropriate to

prescribe a different measure of damage than to prescribe a different statute of limitations, or a

different class of beneficiaries.'" *Id.* at 65-66 (internal citations omitted).  Likewise, the First Circuit

determined that OPA's absence of an allowance for punitive damages was conclusive.  In *Clausen*

---

[10] "Except as otherwise provided in this Act, this Act does not affect— (1) admiralty and maritime law; or (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 33 U.S.C. § 2751(e).

*v. M/V New Carissa*, the district court adopted the First Circuit's rationale and held that punitive damages were not allowable under OPA. 171 F. Supp. 2d 1127 (D. Or. 2001).

In *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 747 (E.D. La. 2009), the district court determined that OPA preempted maritime law claims for economic loss, using the four factors articulated in *United States v. Oswego Barge Corp.*, 664 F.2d 327 (2d Cir. 1981), to analyze whether OPA displaced general maritime law: "(1) legislative history; (2) the scope of legislation; (3) whether judge-made law would fill a gap left by Congress's silence or rewrite rules that Congress enacted; and (4) likeliness of Congress's intent to preempt 'long established and familiar principles of the common law or the general maritime law.'"

However, more recent Supreme Court precedents cause this Court to question the notion that long-standing federal common law can be displaced by a statute that is silent on the issue. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) (holding that the CWA did not displace a general maritime remedy for punitive damages) and *Atlantic Sounding Co. v. Townsend*, -- U.S. --, 129 S. Ct. 2561 (2009) (holding that the Jones Act did not displace the availability of punitive damages for a seaman's maintenance and cure claim).

In *Baker*, the Court employed a three-part analysis to determine if a statute preempts or displaces federal common law. First, is there a clear indication that Congress intended to occupy the entire field? Second, does the statute speak directly to the question addressed by the common law? Third, will application of common law have a frustrating effect on the statutory remedial scheme? 554 U.S. at 489. The question presented in *Baker* was whether the CWA preempted or displaced general maritime punitive damages for economic loss. The Court first stated that it saw no clear indication of congressional intent to occupy the entire field of pollution remedies. Next,

23

the Court noted that the CWA made no mention of punitive damages, and that "[i]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law. Finally, the Court did not perceive that punitive damages for private harms would have any frustrating effect on the CWA remedial scheme. Accordingly, the Court concluded that the CWA did not preempt punitive damages under general maritime law.

In *Townsend*, the Supreme Court revisited its prior holding in *Miles v. Apex Marine*, 498 U.S. 19 (1990), on which the *South Port Marine* court hinged its analysis. The *Townsend* Court explained that *Miles* did not allow punitive damages for wrongful death claims because it was ***only*** as a result of federal legislation that a wrongful death cause of action existed. 129 S.Ct. at 2572-73. Accordingly, "to determine the remedies available under the common-law wrongful-death action, 'an admiralty court should look primarily to these legislative enactments for policy guidance.' It would have been illegitimate to create common-law remedies that exceeded those remedies statutorily available under the Jones Act and DOHSA." *Id.* at 2572 (citing *Miles*, 498 U.S. at 27). The Court contrasted the situation in *Miles* with the question before it in *Townsend*, and it concluded that "both the maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act." *Id.* In other words, the Court limited the application of *Miles* when it concluded that punitive damages were available to the seaman asserting a cause of action for maintenance and cure.

The B1 Master Complaint alleges economic loss claims on behalf of various categories of claimants, many of whom have not alleged physical injury to their property or other proprietary interest. Pre-OPA, these claimants, with the exception of commercial fishermen, would not have had a viable cause of action and would be precluded from any recovery by virtue of *Robins Dry*

24

*Dock*. Accordingly, claims under general maritime law asserted by such claimants are not plausible and must be dismissed.

However, the Court finds that the B1 Master Complaint states a viable cause of action against the non-Responsible Parties under general maritime law on behalf of claimants who either allege physical damage to a proprietary interest and/or qualify for the commercial fishermen exception to *Robins Dry Dock*. In brief, these claims are saved and not displaced by OPA for the following reasons.

First, when reading OPA and its legislative history, it does not appear that Congress intended to occupy the entire field governing liability for oil spills, as it included two savings provisions—one that preserved the application of general maritime law and another that preserved a State's authority with respect to discharges of oil or pollution within the state. 33 U.S.C. §§ 2718, 2751.

Second, OPA does not directly address or speak to the liability of non-Responsible Parties to persons who suffer covered losses. Although OPA contains provisions regarding the Responsible Party's ability to seek contribution and indemnification, *Id.* §§ 2709, 2710, it is silent as to whether a claimant can seek redress directly from non-Responsible Parties. Prior to OPA's enactment, commercial fisherman and those who suffered physical damage had a general maritime law cause of action against these individuals.

Third, there is nothing to indicate that allowing a general maritime remedy against the non-Responsible Parties will somehow frustrate Congress' intent when it enacted OPA. Under OPA, a claimant is required to first present a claim to the Responsible Party. If the claim is not paid within ninety days, the claimant may file suit or file a claim against the Oil Spill Liability Trust Fund. A Responsible Party is strictly liable and damages are capped unless there is gross negligence or

25

violation of a safety statute or regulation that proximately caused the discharge.  To allow a general maritime claim against the Responsible Party would serve to frustrate and circumvent the remedial scheme in OPA.

Thus, claimants' maritime causes of action against a Responsible Party are displaced by OPA, such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure.  However, as to the non-Responsible Parties, there is nothing in OPA to indicate that Congress intended such parties to be immune from direct liability to persons who either suffered physical damage to a proprietary interest and/or qualify for the commercial fishermen exception.  Therefore, general maritime law claims that existed before OPA may be brought directly against non-Responsible parties.

## F.  Claims for punitive damages

OPA is also silent as to the availability of punitive damages.  Plaintiffs who could assert general maritime claims pre-OPA enactment may plausibly allege punitive damages under general maritime for several reasons.  First, "[p]unitive damages have long been available at common law" and "the common-law tradition of punitive damages extends to maritime claims." *Townsend*, 129 S. Ct. at 2569.  Congress has not occupied the entire field of oil spill liability in light of the OPA provision preserving admiralty and maritime law, "[e]xcept as otherwise provided."  OPA does not mention punitive damages; thus, while punitive damages are not available under OPA, the Court does not read OPA's silence as meaning that punitive damages are precluded under general maritime law.  Congress knows how to proscribe punitive damages when it intends to, as it did in the commercial aviation exception under the Death on the High Seas Act, 46 U.S.C. § 30307(b) ("punitive damages are not recoverable").

There is also nothing to indicate that allowing a claim for punitive damages in this context would frustrate the OPA liability scheme. As stated above, claims against the Responsible Party must comply with OPA's procedure, regardless of whether there is also cause of action against the Responsible Party under general maritime law. However, the behavior that would give rise to punitive damages under general maritime law–gross negligence–would also break OPA's limit of liability. *See* 33 U.S.C. § 2704(a). Thus, the imposition of punitive damages under general maritime law would not circumvent OPA's limitation of liability.

Finally on this issue, the Court notes Justice Stevens' concurrence in *Baker* in which he wrote that the Trans-Alaska Pipeline Authorization Act ("TAPAA"), which provided "the liability regime governing certain types of Alaskan oil spills, imposing strict liability but also capping recovery," "did not restrict the availability of punitive damages." 554 U.S. at 518. Although the issue of whether TAPAA precluded an award of punitive damages was not squarely before the Court in *Baker*, Justice Stevens' concurrence adds further support for this Court's conclusion. OPA, like TAPAA, creates a liability regime governing oil spills, imposes strict liability on the Responsible Parties, includes liability limits, and is silent on the issue of punitive damages.

Thus, OPA does not displace general maritime law claims for those Plaintiffs who would have been able to bring such claims prior to OPA's enactment. These Plaintiffs assert plausible claims for punitive damages against Responsible and non-Responsible parties.

## G. Negligence claims against Anadarko and MOEX

Anadarko and MOEX, the non-operating lessees for the Macondo well, have joined in the

arguments made by other Defendants.[11]   However, these two Defendants advance additional, independent reasons supporting their Motions to Dismiss.  In essence, Defendants argue that under the Joint Operating Agreement ("JOA") existing between BP and themselves, BP was the operating partner, responsible for the drilling of the Macondo well.  Anadarko or MOEX had no personnel present aboard the DEEPWATER HORIZON and assert they had no right to control BP's conduct.

*Ainsworth v. Shell Offshore, Inc.* lays out the analysis for evaluating Plaintiffs' negligence claim against Anadarko and MOEX .  829 F.2d 548 (5th Cir. 1987).  "[A] principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties." *Id.* at 549.  There are two recognized exceptions to this general principle, in the case of an ultra-hazardous activity, or when the principal retains or exercises operational control. *Id.* at 550.  Offshore drilling operations are not considered ultra-hazardous.  *Id.*  As to operational control, the Court in *Ainsworth* did not find that this exception was met even when the principal had a company man present on the platform.  In this case, it is not alleged that either Anadarko or MOEX had anyone present on the DEEPWATER HORIZON.  Under the JOA, BP was solely responsible for the drilling operations.  Any access to information that Anadarko and MOEX may have had did not give rise to a duty to intercede in an independent contractor's operations—especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and Transocean personnel either onshore or on the rig.

Plaintiffs attempt to avoid dismissal by suggesting that they do not argue for vicarious liability of the Non-Operating Defendants, but rather that Anadarko and MOEX were directly

---

[11] Although minority interest lessees, Anadarko and MOEX contest their status as Responsible Parties. Neither has been formally named as a Responsible Party at this time.

negligent.  However, adding a "direct-duty" label to their claims does not add merit to them. *See*

*Dupre v. Chevron U.S.A. Inc.*, 913 F. Supp. 473, 483 (E.D. La. 1996) (rejecting plaintiffs' attempt

to disguise a vicarious liability claim as one of direct duty because doing so "would amount to an

end-run around a large body of Fifth Circuit precedent finding no 'operational control' despite some

knowledge of risk or involvement with safety issues and the presence of 'company men' on the

contractor's rig").  Simply put, Plaintiffs have failed to allege a plausible general maritime

negligence claim against the two Non-Operating Defendants.  All general maritime negligence

claims against Anadarko and MOEX must be dismissed.[12]

## H.  Presentment under OPA.

Defendants also seek to dismiss all OPA claims because the B1 Master Complaint does not

properly allege that the B1 Claimants have complied with the "presentment" requirements of OPA.

Defendants argue that presentment to the Responsible Party is either a jurisdictional requirement or,

alternatively, a mandatory condition precedent before filing suit.

The Court finds that the text of OPA clearly requires that OPA claimants must first "present"

their OPA claim to the Responsible Party before filing suit.  The "Claims Procedure" section of OPA

reads:

(a) Presentation

Except as provided in subsection (b) of this section, ***all claims for*** removal costs or ***damages shall be presented first to the responsible party*** or guarantor of the source designated under section 2714 (a) of this title. . . .

(c) If a claim is presented in accordance with subsection (a) of this section and—

---

[12] Because it is plausible that Anadarko and MOEX will be found to be Responsible Parties and thus liable under OPA, OPA claims are not dismissed.

> (1) each person to whom the claim is presented denies all liability for the claim, or
>
> (2) the claim is not settled by any person by payment within 90 days after the date upon which
>
>> (A) the claim was presented, or
>>
>> (B) advertising was begun pursuant to section 2714 (b) of this title, whichever is later,
>
> the claimant may elect to commence an action in court against the responsible party or guarantor or to present the claim to the Fund.

33 U.S.C. § 2713 (emphasis added).

The text of the statute is clear. Congress intended presentment to be a mandatory condition precedent to filing suit. *See Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235 (11th Cir. 1995) (presentment is a mandatory condition precedent to filing suit under OPA); *Gabarick v. Laurin Maritime (America), Inc.*, 2009 WL 102549 (E.D. La. 2009) (noting that the purpose of the claim presentation procedure is to promote settlement and avoid litigation).

Defendants argue that the B1 Master Complaint does not sufficiently allege that claimants have presented their claims to BP as the Responsible Party. There are likely large numbers of B1 claimants who have completely bypassed the OPA claim presentation requirement, others who have attempted to present their claims but may not have complied with OPA, and others who have properly presented their claims but have been denied for various reasons.[13] Claimants who have not complied with the presentment requirement are subject to dismissal without prejudice, allowing them to exhaust the presentment of their claims before returning to court. In the ordinary case, the Court would simply dismiss those claims without prejudice. However, as the Court has previously noted, this is no ordinary case. A judge handling an MDL often must employ special procedures and

---

[13] Counsel for BP acknowledged at oral argument that at least *some* of the B1 claimants have properly presented their claims.

30

case management tools in order to have the MDL operate in an orderly and efficient manner.[14]  In this massive and complex MDL, the Court is faced with a significant practical problem.  It would be impractical, time-consuming, and disruptive to the orderly conduct of this MDL and the current scheduling orders if the Court or the parties were required to sort through in excess of 100,000 individual B1 claims to determine which ones should be dismissed at the current time.  Moreover, such a diversion at this time would be unproductive and would not advance towards the goal of allowing the parties and the Court to be ready for the limitation and liability trial scheduled to commence in February 2012.  No matter how many of the individual B1 claims might be dismissed without prejudice, the trial scheduled for February would still go forward with essentially the same evidence.

In summary on this issue, the Court finds that presentment is a mandatory condition-precedent with respect to Plaintiffs' OPA claims.[15]  The Court finds that Plaintiffs have sufficiently alleged presentment in their B1 Master Complaint, at least with respect to some of the Claimants.  For the reasons stated above, the Court does not intend to engage in the process of sorting through thousands of individual claims at the present time to determine which claims have or have not been properly presented.[16]

---

[14] *See, e.g., In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, No.  10-md-2179, (Rec. Doc.  676) (E.D. La.  Nov.  15, 2010) (Pretrial Order 15, continuing all pending and future motions); *see also* Fed. Judicial Ctr., *Manual for Complex Litigation, Fourth* §§ 10.1 (2004) (explaining that Fed.  R.  Civ.  Proc.  16 (c)(12) authorizes a judge to adopt special procedures for managing complex litigation).

[15] Of course, there is no presentment requirement for Plaintiffs to pursue any general maritime law claims which survive the present Motions to Dismiss.

[16] The Court does not decide today what constitutes "presentment."  OPA requires a claimant to present his or her claim for a "sum certain" to the Responsible Party.  How this requirement can be applied in the context of the BP oil spill is unclear.  The long  term effects on the environment and fisheries may not be known for many years.

## I. **Vessel of Opportunity and Moratorium claims**

The parties disagree as to whether the Vessel of Opportunity ("VoO") and Moratorium Plaintiffs have stated plausible B1 claims. Plaintiffs argue that OPA may apply to some of the claims presented by VoO claimants because OPA provides for liability on the part of Responsible Parties for damages that **"result from"** discharges of oil. At least some of the VoO claimants allege property damage to their vessels. Moratorium Plaintiffs argue that they have stated a viable OPA claim because there are some losses that would have been incurred regardless of the Moratorium and further because the Moratorium was a foreseeable response to the spill. Defendants counter that OPA does not apply to claims alleged by VoO Plaintiffs because their injuries occurred as a result of their participation in the VoO program, not as a result of the spill. Defendants also argue that Moratorium claims must be dismissed for failure to state an OPA claim because the imposition of the Moratorium was an intervening or superseding cause of damage that could not reasonably have been anticipated.

Few courts have had occasion to address the question of OPA causation. *See, e.g., Gatlin Oil Co. v. United States*, 169 F.3d 207 (4th Cir. 1999) (holding that a plaintiff could not recover for fire damage because the evidence did not show that the fire caused the discharge of oil into navigable waters); *In re Settoon Towing LLC*, 2009 WL 4730969 (E.D. La. Dec. 4, 2009) (explaining that it was potentially possible for an injured party to recover for damages incurred as the result of a shutdown of the Gulf Intracoastal Waterway in the wake of a spill). The parties acknowledge that these claims are fact specific and present a more attenuated causation analysis than the other claims for economic loss, and they compare and contrast the instant Moratorium claims and VoO claims with the facts in the few cases that have been decided.

The Court reminds the parties that the issue before the Court on a Motion to Dismiss is simply whether Plaintiffs have stated a plausible claim for relief. A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court "must . . . accept all factual allegations in the complaint as true" and "must draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232.

The Court notes that OPA does not expressly require "proximate cause," but rather only that the loss is "due to" or "resulting from" the oil spill. While the Court need not define the precise contours of OPA causation at this time, it is worth noting that during oral argument both counsel for BP and the PSC conceded that OPA causation may lie somewhere between traditional "proximate cause" and simple "but for" causation. *See CSX Transp. Inc. v. McBride*, 131 S. Ct. 2630, 2642-43 (2011) ("Congress, it is true, has written the words 'proximate cause' into a number of statutes. But when the legislative text uses less legalistic language, *e.g.*, 'caused by,' 'occasioned by,' 'in consequence of,' . . . and the legislative purpose is to loosen constraints on recovery, there is little reason for courts to hark back to stock, judge-made proximate-cause formulations.").

The Court need not define causation under OPA—necessarily a highly factual analysis— at this stage of the pleadings. The Court is satisfied that the VoO and Moratorium Plaintiffs have alleged sufficient facts to state plausible claims in the B1 bundle.

## J. Dril-Quip as 14(c) Defendant

Dril-Quip, which was not named as a Defendant in the Master Complaint, has filed a Motion to Dismiss (Rec. Doc. 2107) because of the procedural effect of the Rule 14(c) tender in Transocean's Third-Party Complaint. Although the Court has dismissed all state-law claims alleged

33

by Plaintiffs in their B1 Master Complaint, Dril-Quip remains a 14(c) Defendant with respect to Plaintiffs' claims saved by this Order.

## K. Claims for declaratory relief

Plaintiffs seek a declaratory judgment that "any settlement provisions [with Defendants] that purport, directly or indirectly, to release or to affect the calculation of punitive damages without a judicial determination of fairness, adequacy, and reasonableness are ineffective as contrary to law, equity, and public policy." (Rec. Doc. 1128 at 193.) Plaintiffs also seek a declaration that "the conduct of BP and its agents and representatives, including the Gulf Coast Claims Facility ("GCCF"), in obtaining releases and/or assignments of claims against other parties, persons, or entities is not an obligation of BP under OPA." (*Id.* at 193-94.)

The Court finds Plaintiffs' claims for declaratory relief fatally problematic in at least two respects. First, Plaintiffs do not identify any cause of action entitling them to declaratory relief. Under the Declaratory Judgment Act, "a party's legal interest must relate to an actual 'claim arising under federal law that another asserts against him . . . .'" *Collin County, Tex. v. Homeowner's Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990). Accordingly, because "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action." *Id.* Here, the Court agrees with BP that Plaintiffs have not identified a cause of action that would entitle them to their requested relief.

The second obvious flaw in Plaintiffs' request for declaratory relief is that nothing prohibits Defendants from settling claims for economic loss. While OPA does not specifically address the

34

use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it. In fact, as the Court has recognized in this Order, one of the goals of OPA was to allow for speedy and efficient recovery by victims of an oil spill. The Court finds that Plaintiffs' declaratory relief claim fails on this ground as well.

## L.  **OPA claims against Anadarko E&P**

One of the Anadarko entities, Anadarko E&P, urges dismissal of Plaintiffs' OPA claim, arguing that Anadarko E&P did not hold a lease interest in the Macondo Prospect at the time of casualty.  Plaintiffs allege Anadarko E&P held a 22.5% ownership interest in the lease of the Macondo Prospect at all relevant times, including at the time of the blowout and oil spill.  The Court concludes Plaintiffs have stated a colorable OPA claim against Anadarko E&P and accordingly this claim survives Anadarko E&P's Motion to Dismiss.

## M.  **Claims for attorneys' fees**

Plaintiffs argue that attorneys' fees are available under general maritime law.  Plaintiffs cite cases in which courts have allowed attorneys' fees for bad faith failure to pay maintenance and cure, claims that are not present in the B1 Master Complaint.  The line of cases relied upon go back to *Vaughan v. Atkinson*, 369 U.S. 527 (1962), where a seaman was forced to hire a lawyer and go to court to recover benefits plainly owed under what the Court referred to as "laws that are centuries old."  The default was willful and persistent, and since it was a maintenance and cure claim, there was no defense.  Under these circumstances the Supreme Court allowed a claim for attorneys' fees. This rule has generally been limited to maintenance and cure cases.

Pursuant to the "American Rule" in the United States, the prevailing litigant is ordinarily not

entitled to collect attorneys' fees from the losing party. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975); *see also Delta Steamship Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1011 (5th Cir. 1984) ("The general rule in admiralty is that attorneys' fees are not recoverable by the prevailing party"). Generally, litigants must pay their own attorneys' fees absent statute or enforceable contract. Plaintiffs allege a claim for attorneys' fees under the so-called "bad-faith exception" to the "American Rule."

Plaintiffs misread the bad-faith exception, which is designed to cover situations in which the defendants have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 356 (5th Cir. 1995). In that case, the Fifth Circuit reversed an award of attorneys' fees in a maritime allision case because there was "no evidence that the defendants took this [legal] position maliciously or in bad faith, nor that they failed to comply with discovery requests, filed frivolous pleadings, or otherwise abused the litigation process." *Id.* at 359.

A more recent case from the Sixth Circuit discussed the older line of cases and the bad faith exception in some detail. In *Shimman v. International Union of Operating Engineers*, the Sixth Circuit held that a person who harms another in bad faith is nonetheless entitled to defend a lawsuit. 744 F.2d 1226, 1228-34 (6th Cir. 1984) (en banc). *Shimman* made clear that the focus of the inquiry is not the actions that precipitated the law suit, but rather the manner in which the litigation itself is carried out. That is, the rule is intended to penalize the litigant who brings to court a frivolous suit or defense, or abuses the process so as to create an injury separate from the underlying claim. The Fifth Circuit has adopted this same reasoning. In *Guidry v. International Union of Operating Engineers*, the Court rejected a claim for attorneys' fees because there was no evidence that the

36

defendants in the case had either brought a frivolous defense or pursued the litigation in a vexatious manner. 882 F.2d 929 (5th Cir. 1989).

Even more to the point, the Fifth Circuit seems to have ratcheted up the standard for a bad faith attorneys' fee claim since *Guidry*. "A court should invoke its inherent power to award attorneys' fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine v. Rinher*, 41 F.3d 997, 1005 (1995). In *Boland*, the Fifth Circuit held that a determination that the defendant instituted the proceedings, or required the proceedings to be instituted, without reasonable grounds is not the equivalent to a finding that fraud was perpetrated on the Court or that the "very temple of justice has been defiled which is required for a court to assess attorney's fees through its inherent powers." *Id.*

The Court concludes that plaintiffs' complaint does not allege a plausible claim for attorneys' fees under either general maritime law or the bad faith exception, and this claim must be dismissed.[17]

## IV. SUMMARY

In summary, the Court finds as follows:

1.     The DEEPWATER HORIZON was at all material times a vessel in navigation.

2.     Admiralty jurisdiction is present because the alleged tort occurred upon navigable waters of the Gulf of Mexico, disrupted maritime commerce, and the operations of the vessel bore a substantial relationship to traditional maritime activity. With admiralty jurisdiction comes the application of substantive maritime law.

---

[17] This ruling is not intended to preclude possible claims for attorneys' fees available by statute or federal rule, or some other non-statutory exception to the American Rule, such as common-fund fees, or situations where a party willfully violates a court order. See Boland, 41 F.3d at 1005.

3.   OCSLA jurisdiction is also present because the casualty occurred in the context of exploration or production of mineral on the Outer Continental Shelf.

4.   The law of the adjacent state is not adopted as surrogate federal law under OCSLA, 43 U.S.C. § 1333(a)(2)(A).

5.   State law, both statutory and common, is preempted by maritime law, notwithstanding OPA's savings provisions. All claims brought under state law are dismissed.

6.   General maritime law claims that do not allege physical damage to a proprietary interest are dismissed under the *Robins Dry Dock* rule, unless the claim falls into the commercial fishermen exception. OPA claims for economic loss need not allege physical damage to a proprietary interest.

7.   OPA does not displace general maritime law claims against non-Responsible parties. As to Responsible Parties, OPA does displace general maritime law claims against Responsible Parties, but only with regard to procedure (i.e., OPA's presentment requirement).

8.   Presentment under OPA is a mandatory condition precedent to filing suit against a Responsible Party.

9.   There is no presentment requirement for claims against non-Responsible Parties.

10.  Claims for punitive damages are available for general maritime law claimants against Responsible Parties (provided OPA's presentment procedure is satisfied) and non-Responsible Parties.

11.     All general maritime negligence claims against Anadarko and MOEX are dismissed, as Plaintiffs have failed to state a plausible claim against the Non-Operating lessees/Defendants.

12.     Plaintiffs have plausibly alleged OPA claims for VoO claimants and Moratorium claimants.

13.     Dril-Quip remains a 14(c) Defendant.

14.     Plaintiffs' claims for declaratory relief are dismissed.

15.     Plaintiffs have plausibly alleged OPA claims against Anadarko E&P.

16.     Plaintiffs' claims for attorneys' fees under general maritime law are dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss the B1 Master Complaint (Rec. Docs. 1440, 1390, 1429, 1597, 1395, 1433, 1414, and 2107) are hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth above.


New Orleans, Louisiana, this 26th day of August, 2011.

UNITED STATES DISTRICT JUDGE



33 U.S.C.A. § 2704                                                                                                    Page 1

**Effective:[See Notes]**

United States Code Annotated Currentness
   Title 33. Navigation and Navigable Waters (Refs & Annos)
      Chapter 40. Oil Pollution (Refs & Annos)
         Subchapter I. Oil Pollution Liability and Compensation
         ➡ **§ 2704. Limits on liability**

(a) General rule

Except as otherwise provided in this section, the total of the liability of a responsible party under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed--

  **(1)** for a tank vessel, the greater of--

    **(A)** with respect to a single-hull vessel, including a single-hull vessel fitted with double sides only or a double bottom only, $3,000 per gross ton;

    **(B)** with respect to a vessel other than a vessel referred to in subparagraph (A), $1,900 per gross ton; or

    **(C)(i)** with respect to a vessel greater than 3,000 gross tons that is--

      **(I)** a vessel described in subparagraph (A), $22,000,000; or

      **(II)** a vessel described in subparagraph (B), $16,000,000; or

    **(ii)** with respect to a vessel of 3,000 gross tons or less that is--

      **(I)** a vessel described in subparagraph (A), $6,000,000; or

      **(II)** a vessel described in subparagraph (B), $4,000,000;

  **(2)** for any other vessel, $950 per gross ton or $800,000, whichever is greater;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:10-md-02179-CJB-DPC   Document 4457-40   Filed 11/01/11   Page 163 of 175

**(3)** for an offshore facility except a deepwater port, the total of all removal costs plus $75,000,000; and

**(4)** for any onshore facility and a deepwater port, $350,000,000.

(b) Division of liability for mobile offshore drilling units

(1) Treated first as tank vessel

For purposes of determining the responsible party and applying this Act and except as provided in paragraph (2), a mobile offshore drilling unit which is being used as an offshore facility is deemed to be a tank vessel with respect to the discharge, or the substantial threat of a discharge, of oil on or above the surface of the water.

(2) Treated as facility for excess liability

To the extent that removal costs and damages from any incident described in paragraph (1) exceed the amount for which a responsible party is liable (as that amount may be limited under subsection (a)(1) of this section), the mobile offshore drilling unit is deemed to be an offshore facility. For purposes of applying subsection (a)(3) of this section, the amount specified in that subsection shall be reduced by the amount for which the responsible party is liable under paragraph (1).

(c) Exceptions

(1) Acts of responsible party

Subsection (a) of this section does not apply if the incident was proximately caused by--

**(A)** gross negligence or willful misconduct of, or

**(B)** the violation of an applicable Federal safety, construction, or operating regulation by,

the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party (except where the sole contractual arrangement arises in connection with carriage by a common carrier by rail).

(2) Failure or refusal of responsible party

Subsection (a) of this section does not apply if the responsible party fails or refuses--

**(A)** to report the incident as required by law and the responsible party knows or has reason to know of the incident;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(B)** to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities; or

**(C)** without sufficient cause, to comply with an order issued under subsection (c) or (e) of section 1321 of this title or the Intervention on the High Seas Act (33 U.S.C. 1471 et seq.).

(3) OCS facility or vessel

Notwithstanding the limitations established under subsection (a) of this section and the defenses of section 2703 of this title, all removal costs incurred by the United States Government or any State or local official or agency in connection with a discharge or substantial threat of a discharge of oil from any Outer Continental Shelf facility or a vessel carrying oil as cargo from such a facility shall be borne by the owner or operator of such facility or vessel.

(4) Certain tank vessels

Subsection (a)(1) of this section shall not apply to--

**(A)** a tank vessel on which the only oil carried as cargo is an animal fat or vegetable oil, as those terms are used in section 2720 of this title; and

**(B)** a tank vessel that is designated in its certificate of inspection as an oil spill response vessel (as that term is defined in section 2101 of Title 46) and that is used solely for removal.

(d) Adjusting limits of liability

(1) Onshore facilities

Subject to paragraph (2), the President may establish by regulation, with respect to any class or category of onshore facility, a limit of liability under this section of less than $350,000,000, but not less than $8,000,000, taking into account size, storage capacity, oil throughput, proximity to sensitive areas, type of oil handled, history of discharges, and other factors relevant to risks posed by the class or category of facility.

(2) Deepwater ports and associated vessels

(A) Study

The Secretary shall conduct a study of the relative operational and environmental risks posed by the transportation of oil by vessel to deepwater ports (as defined in section 1502 of this title) versus the transportation of oil by vessel to other ports. The study shall include a review and analysis of offshore lightering practices used in connection with that transportation, an analysis of the volume of oil transported by vessel using those practices, and an analysis of the frequency and volume of oil discharges which occur in connection with the use of those practices.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(B) Report

Not later than 1 year after August 18, 1990, the Secretary shall submit to the Congress a report on the results of the study conducted under subparagraph (A).

(C) Rulemaking proceeding

If the Secretary determines, based on the results of the study conducted under this [FN1] subparagraph (A), that the use of deepwater ports in connection with the transportation of oil by vessel results in a lower operational or environmental risk than the use of other ports, the Secretary shall initiate, not later than the 180th day following the date of submission of the report to the Congress under subparagraph (B), a rulemaking proceeding to lower the limits of liability under this section for deepwater ports as the Secretary determines appropriate. The Secretary may establish a limit of liability of less than $350,000,000, but not less than $50,000,000, in accordance with paragraph (1).

(3) Periodic reports

The President shall, within 6 months after August 18, 1990, and from time to time thereafter, report to the Congress on the desirability of adjusting the limits of liability specified in subsection (a) of this section.

(4) Adjustment to reflect consumer price index

The President, by regulations issued not later than 3 years after July 11, 2006, and not less than every 3 years thereafter, shall adjust the limits on liability specified in subsection (a) of this section to reflect significant increases in the Consumer Price Index.

CREDIT(S)

(Pub.L. 101-380, Title I, § 1004, Aug. 18, 1990, 104 Stat. 491; Pub.L. 104-55, § 2(d)(1), Nov. 20, 1995, 109 Stat. 546; Pub.L. 105-383, Title IV, § 406, Nov. 13, 1998, 112 Stat. 3429; Pub.L. 109-241, Title VI, § 603(a)(1), (2), (b), July 11, 2006, 120 Stat. 553, 554; Pub.L. 111-281, Title IX, § 903(a)(2), (e)(1), Oct. 15, 2010, 124 Stat. 3010, 3011.)

[FN1] So in original. The word "this" probably should not appear.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1990 Acts. Senate Report Nos. 101-94 and 101-99, House Conference Report No. 101-653, and Statement by President, see 1990 U.S. Code Cong. and Adm. News, p. 722.

1995 Acts. House Report No. 104-202(Parts I and II), see 1995 U.S. Code Cong. and Adm. News, p. 475.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

1998 Acts. House Report No. 105-236, see 1998 U.S. Code Cong. and Adm. News, p. 794.


2006 Acts. House Conference Report No. 109-413, see 2006 U.S. Code Cong. and Adm. News, p. 579.


Statement by President, see 2006 U.S. Code Cong. and Adm. News, p. S29.


References in Text

This Act, referred to in subsec. (b)(1), is Pub.L. 101-380, Aug. 18, 1990, 104 Stat. 484, as amended, known as the Oil Pollution Act of 1990, which is classified principally to this chapter. For complete classification to the Code, see Short Title note under 33 U.S.C.A. § 2701 and Tables.


Reference in subsec. (c)(2)(C) to the amendment of section 1321 of this title "by this Act" refers to amendment by Pub.L. 101-380, Aug. 18, 1990, 104 Stat. 484.


The Intervention on the High Seas Act, referred to in subsec. (c)(2)(C), is Pub.L. 93-248, Feb. 5, 1974, 88 Stat. 8, as amended, which is classified generally to chapter 28 (§ 1471 et seq.) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1471 of this title and Tables.


The Deepwater Port Act of 1974, referred to in subsec. (d)(2)(A), is Pub.L. 93-627, Jan. 3, 1975, 88 Stat. 2126, as amended, which is classified generally to chapter 29 (§ 1501 et seq.) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1501 of this title and Tables.


Amendments

2010 Amendments. Pub.L. 111-281, § 903(a)(2), amended directory language of Pub.L. 109-241, § 603(a)(2), resulting in no change in text.


Subsec. (a)(2). Pub.L. 111-281, § 903(e)(1), struck out the first comma following "$800,000".


2006 Amendments. Subsec. (a)(1)(A). Pub.L. 109-241, § 603(a)(1), rewrote subpar. (A), which formerly read: "$1,200 per gross ton; or".


Subsec. (a)(1)(B). Pub.L. 109-241, § 603(a)(1), rewrote subpar. (B), which formerly read:


"(B)(i) in the case of a vessel greater than 3,000 gross tons, $10,000,000; or


"(ii) in the case of a vessel of 3,000 gross tons or less, $2,000,000;".


© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Subsec. (a)(1)(C). Pub.L. 109-241, § 603(a)(1), added subpar. (C).

Subsec. (a)(2). Pub.L. 109-241, § 603(a)(2), as amended by Pub.L. 111-281, § 903(a)(2), struck out "$600 per gross ton or $500,000" and inserted "$950 per gross ton or $800,000,".

Subsec. (d)(4). Pub.L. 109-241, § 603(b), rewrote par. (4), which formerly read:

**"(4) Adjustment to reflect Consumer Price Index**

"The President shall, by regulations issued not less often than every 3 years, adjust the limits of liability specified in subsection (a) of this section to reflect significant increases in the Consumer Price Index.".

1998 Amendments. Subsec. (a)(1). Pub.L. 105-383, § 406(1), struck out "(except a tank vessel on which the only oil carried as cargo is an animal fat or vegetable oil, as those terms are used in section 2720 of this title)" and inserted a comma in lieu thereof, following "for a tank vessel".

Subsec. (c)(4). Pub.L. 105-383, § 406(2), added par. (4).

1995 Amendments. Subsec. (a)(1). Pub.L. 104-55, § 2(d)(1), excepted tank vessels on which the only oil carried is an animal fat or vegetable oil from the potential liability imposed under par. (1).

Effective and Applicability Provisions

2010 Acts. Amendments by Pub.L. 111-281, § 903(a) to Pub.L. 109-241 are effective with enactment of Pub.L. 109-241, July 11, 2006, see Pub.L. 111-281, § 903(a), set out in part as a note under 16 U.S.C.A. § 460kkk.

1990 Acts. Section applicable to incidents occurring after Aug. 18, 1990, see section 1020 of Pub.L. 101-380, set out as a note under section 2701 of this title.

Termination of Reporting Requirements

For termination of reporting provisions of subsec. (d)(3) of this section, effective May 15, 2000, see Pub.L. 104-66, § 3003, as amended, set out as a note under 31 U.S.C.A. § 1113, and the 10th item on page 36 of House Document No. 103-7, which references subsec. (d)(3) of Pub.L. 101-380, § 1004, which enacted this section.

Delegation of Functions

The functions vested in the President by subsec. (d) of this section respecting the establishment of limits of liab-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ility, with respect to classes or categories of non-transportation-related onshore facilities, the reporting to Congress on the desirability of adjusting limits of liability with respect to non-transportation-related onshore facilities, and the adjustment of limits of liability to reflect significant increases in the Consumer Price Index with respect to non-transportation-related onshore facilities, are delegated to the Administrator of the Environmental Protection Agency, acting in consultation with the Secretary of Transportation, the Secretary of Energy, and the Attorney General, see Ex. Ord. No. 12777, Oct. 18, 1991, 56 F.R. 54757, set out as a note under section 1321 of this title.

The functions vested in the President by subsec.(d) of this section respecting the establishment of limits of liability, with respect to classes or categories of transportation-related onshore facilities, the reporting to Congress on the desirability of adjusting limits of liability, with respect to vessels or transportation-related onshore facilities and deepwater ports subject to chapter 29 [section 1501 et seq.] of this title , and the adjustment of limits of liability to reflect significant increases in the Consumer Price Index with respect to vessels or transportation-related onshore facilities and deepwater ports subject to chapter 29 of this title, are delegated to the Secretary of Transportation, see Ex. Ord. No. 12777, Oct. 18, 1991, 56 F.R. 54757, set out as a note under section 1321 of this title.

The functions vested in the President by subsec. (d) of this section, respecting the reporting to Congress on the desirability of adjusting limits of liability with respect to offshore facilities, including associated pipelines, other than deepwater ports subject to chapter 29 [section 1501 et seq.] of this title, and the adjustment of limits of liability to reflect significant increases in the Consumer Price Index with respect to offshore facilities, including associated pipelines, other than deepwater ports subject to chapter 29 of this title, are delegated to the Secretary of the Interior, see Ex. Ord. No. 122777, Oct. 18, 1991, 56 F.R. 54757, set out as a note under section 1321 of this title.

Limitation on Application

Pub.L. 109-241, Title VI, § 603(a)(3), July 11, 2006, 120 Stat. 554, provided that: "In the case of an incident occurring before the 90th day following the date of enactment of this Act [July 11, 2006], section 1004(a)(1) of the Oil Pollution Act of 1990 (33 U.S.C. 2704(a)(1)) shall apply as in effect immediately before the effective date of this subsection [which probably means July 11, 2006, the approval date of Pub.L. 109-241, which enacted this note]."

Report

Pub.L. 109-241, Title VI, § 603(c), July 11, 2006, 120 Stat. 554, provided that:

"**(1) Initial report.**--Not later than 45 days after the date of enactment of this Act [July 11, 2006], the Secretary of the department in which the Coast Guard is operating shall submit a report on liability limits described in paragraph (2) to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**"(2) Contents.**--The report shall include, at a minimum, the following:

"**(A)** An analysis of the extent to which oil discharges from vessels and nonvessel sources have or are likely to result in removal costs and damages (as defined in section 1001 of the Oil Pollution Act of 1990 (33 U.S.C. 2701)) for which no defense to liability exists under section 1003 of such Act [33 U.S.C.A. § 2703] and that exceed the liability limits established in section 1004 of such Act [this section], as amended by this section.

"**(B)** An analysis of the impacts that claims against the Oil Spill Liability Trust Fund for amounts exceeding such liability limits will have on the Fund.

"**(C)** Based on analyses under this paragraph and taking into account other factors impacting the Fund, recommendations on whether the liability limits need to be adjusted in order to prevent the principal of the Fund from declining to levels that are likely to be insufficient to cover expected claims.

"**(3) Annual updates.**--The Secretary shall provide an update of the report to the Committees referred to in paragraph (1) on an annual basis."

## LAW REVIEW COMMENTARIES

Crude legislation: Liability and compensation under the Oil Pollution Act of 1990. Daniel Kopec and Philip Peterson, 23 Rutgers L.J. 597 (1992).

Stormy seas? Analysis of new oil pollution laws in the west coast states. James E. Beaver, James N. Butler, III, and Susan E. Myster, 34 Santa Clara L.Rev. 791 (1994).

## LIBRARY REFERENCES

American Digest System

Health and Environment ⊙⇝ 25.7(23).
Key Number System Topic No. 199.

## RESEARCH REFERENCES

Encyclopedias

Am. Jur. 2d Pollution Control § 1001, Claim by Responsible Party.

Forms

7 West's Federal Forms § 11096, Complaint by the United States Charging Oil Pollution--At Berth.

Treatises and Practice Aids

Federal Procedure, Lawyers Edition § 32:1054, General Requirements for a Claim.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Federal Procedure, Lawyers Edition § 32:1069, Shifting Responsibility to Third Parties.


NOTES OF DECISIONS

Authority of agency 1/2
Burden of proof 1
Remand 2


1/2. Authority of agency

National Pollution Funds Center's (NPFC) determination that vessel operator failed to establish its entitlement under Oil Pollution Act (OPA) to reimbursement of costs and damages incurred in connection with oil spill was not arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law, where vessel was being operated in violation of relevant wave height restrictions at time of incident. Bean Dredging, LLC v. U.S., D.D.C.2011, 2011 WL 1134601. Environmental Law ⟲ 444


1. Burden of proof

Insurer of capsized tug boat had burden of proof to demonstrate that it was entitled to limitation of liability as to oil spill resulting from capsizing of tug; no presumption of entitlement to limitation existed under plain language of Oil Pollution Act, and thus United States did not bear burden of proof. Water Quality Ins. Syndicate v. U.S., D.Mass.2009, 632 F.Supp.2d 108. Environmental Law ⟲ 464


2. Remand

Remand to the National Pollution Funds Center (NPFC) was warranted for further explanation as to its interpretation of the term "seas" within the meaning of an Oil Protection Act (OPA) regulation providing that a "hopper dredge assigned a working freeboard may be operated at drafts from the normal freeboard to the working freeboard if," inter alia, the "[s]eas are not more than 10 feet"; record was devoid of any explanation as to the reasons for NPFC's rejection of a vessel operator's interpretation, and the NPFC did not clearly explain the contours of its own interpretation of the regulation. Bean Dredging, LLC v. U.S., D.D.C.2010, 699 F.Supp.2d 118. Environmental Law ⟲ 698


33 U.S.C.A. § 2704, 33 USCA § 2704


Current through P.L. 112-28 approved 8-12-11


Westlaw. (C) 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

Page 1

722 F.Supp.2d 710, 72 ERC 1573
**(Cite as: 722 F.Supp.2d 710)**

**H**

United States District Court,
E.D. Louisiana.
In the Matter of the PETITION OF SETTOON
TOWING LLC.

Civil Action No. 07-1263.
June 16, 2010.

**Background:** Government petitioned to determine
responsible parties under the Oil Pollution Act for
costs of removal and cleanup of oil spill caused
when barge struck offshore oil well. Following de-
termination that assignee of lessee's oil well rights
was responsible party and that assignee had right to
seek contribution from others, government moved
for partial summary judgment, seeking to have less-
ee of oil well designated as an additional respon-
sible party.

**Holding:** The District Court, Mary Ann Vial Lem-
mon, J., held that assignment by lessee did not af-
fect lessee's status as responsible party under Oil
Pollution Act.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⟨⟩2546**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
     170AXVII(C)3 Proceedings
      170Ak2542 Evidence
        170Ak2546 k. Weight and suffi-
ciency. Most Cited Cases

    The non-movant cannot satisfy the summary
judgment burden with conclusory allegations, un-
substantiated assertions, or only a scintilla of evid-
ence. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⟨⟩2544**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
     170AXVII(C)3 Proceedings
      170Ak2542 Evidence
        170Ak2544 k. Burden of proof.
Most Cited Cases
    If the party opposing summary judgment bears
the burden of proof on the issue at trial, the moving
party does not have to submit evidentiary docu-
ments to properly support its motion, but need only
point out the absence of evidence supporting the es-
sential elements of the opposing party's case.
Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[3] Environmental Law 149E ⟨⟩437**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
     149Ek437 k. In general. Most Cited Cases
    The purpose of the Oil Pollution Act is to
streamline federal law and provide quick and effi-
cient cleanup of oil spills, compensate victims of
such spills, and internalize the costs of spills with
the petroleum industry. Oil Pollution Act of 1990,
§§ 1001(21), 1002(a), 33 U.S.C.A. §§ 2701(21),
2702(a).

**[4] Environmental Law 149E ⟨⟩445(1)**

149E Environmental Law
  149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
     149Ek445 Persons Responsible
      149Ek445(1) k. In general. Most Cited
Cases

    The Oil Pollution Act imposes strict liability
upon all responsible parties to cover cleanup costs
of oil spills. Oil Pollution Act of 1990, § 1002(a),
33 U.S.C.A. § 2702(a).

**[5] Environmental Law 149E ⟨⟩447**

149E Environmental Law

722 F.Supp.2d 710, 72 ERC 1573
**(Cite as: 722 F.Supp.2d 710)**

149EIX Hazardous Waste or Materials
    149Ek436 Response and Cleanup; Liability
        149Ek447 k. Contribution and indemnity;
allocation of liability. Most Cited Cases

Although the Oil Pollution Act permits indemnification agreements to cover cleanup costs of oil spills between responsible parties, it prohibits them from transferring liability. Oil Pollution Act of 1990, §§ 1002(a), 1010, 33 U.S.C.A. §§ 2702(a), 2710.

**[6]** **Environmental Law 149E ⟨⟩445(1)**

149E Environmental Law
    149EIX Hazardous Waste or Materials
        149Ek436 Response and Cleanup; Liability
            149Ek445 Persons Responsible
                149Ek445(1) k. In general. Most Cited Cases

Assignment by lessee of offshore oil well rights to assignee did not affect lessee's status as a responsible party for cleanup costs of oil spill from that well under the Oil Pollution Act. Oil Pollution Act of 1990, §§ 1001(21), 1002(a), 1010, 33 U.S.C.A. §§ 2701(21), 2702(a), 2710.

**\*711** Bertrand M. Cass, Jr., Francis J. Barry, Jr., Paul D. Hale, Deutsch, Kerrigan & Stiles, LLP, New Orleans, LA, for Defendant.

David Louis Carrigee, Jedd Spencer Malish, John C. Enochs, William Daniel Wellons, Baldwin, Haspel, Burke & Mayer, LLC, Deborah Bila Rouen, Edwin Christian Laizer, Thomas G. O'Brien, Adams & Reese, LLP, James H. Roussel, Nyka M. Scott, Baker Donelson Bearman Caldwell & Berkowitz, New Orleans, LA, for Petitioner.

**ORDER AND REASONS**
MARY ANN VIAL LEMMON, District Judge.

**IT IS HEREBY ORDERED** that the United States of America's Motion for Partial Summary Judgment Regarding the Status of Alpine Exploration Companies, Inc. as a Responsible Party under the Oil Pollution Act of 1990 (Doc. # 310) is

**GRANTED.**

**BACKGROUND**

On January 20, 2007, the M/V CATHY M. SETTOON, while pushing a barge, **\*712** struck a well owned and operated by ExPert Oil & Gas, LLC ("ExPert"), in Bayou Perot in Jefferson Parish, Louisiana. The well was installed on Louisiana State Lease 18748, which was held by Alpine Exploration, Co., Inc. ("Alpine"). On September 9, 2007, Alpine assigned its lease to the working interest owners, including ExPert, retroactive to August 1, 2006. The Louisiana Mineral Board approved the assignment on December 12, 2007, and the assignment was recorded in Jefferson Parish, Louisiana on January 30, 2008.

The allision caused extensive damage to the wellhead and resulted in an uncontrolled spray of crude oil into the bayou. On February 23, 2007, Settoon Towing LLC ("Settoon"), the owner of the M/V CATHY M. SETTOON, gave the first official notice of the incident, when the United States Coast Guard interviewed the captain of the vessel. On March 12, 2007, Settoon filed a Complaint for Exoneration from or Limitation of Liability, pursuant to the Limitation of Liability Act, 46 App. U.S.C. § 181 et seq. ExPert, St. Paul Surplus Lines Insurance Company, and the United States of America (the "United States") filed claims. The United States filed claims pursuant the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. ("OPA"), along with other claims. In pertinent part, the United States asserts a claim on behalf of the Oil Spill Liability Trust Fund (the "Fund") for to recover the costs that it incurred in connection with the removal, cleanup, and other response efforts related to the oil spill from the responsible parties.

Upon a motion filed by the United States, the court previously held that ExPert is a responsible party, and that ExPert has the right to seek contribution from a third party and to avail itself of defenses to liability provided in 33 U.S.C. § 2703(a)(3) by establishing at trial that a third party is solely responsible and that it exercised due care,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

722 F.Supp.2d 710, 72 ERC 1573
**(Cite as: 722 F.Supp.2d 710)**

and took precautions against any acts or omissions of the third party. Further, the court has also held that the United States is entitled to recover $11,650,264.87 in removal costs from the responsible parties, and that it will be determined at trial how ExPert, as a responsible party, and Settoon, as a potential non-sole-fault third-party, will share the allocation of the costs incurred with each other and any other responsible party.

The United States then filed a motion for summary judgment seeking to have Alpine designated as an additional responsible party. The United States argues that, at the time of the oil spill, Alpine was the lessee of the area in which the oil spill occurred, and thus Alpine fits OPA's definition of a responsible party and is strictly liable for the oil spill. The United States contends that Alpine's post-spill assignment of the lease to the working interest owners does not affect Alpine's status as a responsible party or its liability to the United States.

**ANALYSIS**

**1. Legal Standard**

[1][2] Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 809 (5th Cir.1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations,**713** unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting

the essential elements of the opposing party's case. *Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991).

**2. Alpine as a Responsible Party**

[3] Congress enacted OPA in response to the Exxon Valdez oil spill in Prince William Sound, Alaska. *Rice v. Harken Exploration Co.,* 250 F.3d 264, 266 (5th Cir.2001) (citing Senate Report No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. 772, 723). The law was intended to streamline federal law and "provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills with the petroleum industry." *Id.*

OPA imposes strict liability upon parties that discharge oil into "navigable waters," a term defined in the statute to mean "the waters of the United States, including the territorial sea." *In Re Needham,* 354 F.3d 340, 345 (5th Cir.2003); 33 U.S.C. § 2701(21). OPA further provides that "[n]otwithstanding any other provision of law ... *each responsible party* for a vessel or a facility from which oil is discharged ... into or upon the navigable waters or adjoining shorelines ... is liable for the removal costs and damages specified in subsection (b) of this subsection that result from such incident." 33 U.S.C. § 2702(a) (emphasis added); *see also In Re Needham,* 354 F.3d at 345 n. 5; *In re Taira Lynn Marine Ltd. No., LLC,* 444 F.3d 371, 382 (5th Cir.2006). A "responsible party" with regard to an offshore facility,[FN1] is "the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under the applicable State law ... for the area in which the facility is located (if the holder is a different person than the lessee or permittee) ..." 33 U.S.C. § 2701(32)(A). A "lessee" is "a person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters ... or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. 1331 *et seq.*)." *Id.* at § 2701(16).

FN1. An "offshore facility" is "any facility

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

722 F.Supp.2d 710, 72 ERC 1573
**(Cite as: 722 F.Supp.2d 710)**

of any kind located in, on, or under any of the navigable waters of the United States, and any facility of any kind which is subject to the jurisdiction of the United States and is located in, on, or under any other waters, other than a vessel or a public vessel." 33 U.S.C. § 2701(22). It is undisputed that the well was an offshore facility.

On January 20, 2007, the date of the allision that caused the oil spill, Alpine was the lessee of the area in which the offshore facility from which the oil leaked was located. Although Alpine granted an assignment to ExPert, who then became a responsible party, as lessee of the area in which the offshore facility was located, Alpine is a responsible party under OPA.FN2

> FN2. In Louisiana State Lease 18748, Alpine agreed:
>
> > 4. Environmental and Other Considerations
> >
> > Lessee hereby agrees, as one of the obligations of this rider, that in exercising the rights granted it under the Lease, it will comply with and be subject to all applicable environmental and other laws and regulations validly adopted or issued by the State of Louisiana, or its agencies, or by the United States, or its agencies. Lessee further agrees that it will comply with all minimum water quality standards validly adopted by said governmental authorities with respect to oil pollution and noxious chemicals and waste being introduced into affected water areas ...

**\*714** [4] OPA imposes strict liability upon responsible parties. In Re Needham, 354 F.3d at 345. Also, there can be more than one responsible party. See 33 U.S.C. § 2702(a); see also Smith Property Holdings v. United States, 311 F.Supp.2d 69, 81 (D.D.C.2004) (citing United States v. Bois D'Arc

Operating Corp., 1999 WL 130635 (E.D.La.1999)). When there is more than one responsible party under OPA, their liability is joint and several. 3 BENEDICT ON ADMIRALTY § 112(a)(2) (7th ed. rev.2004) (citing H.R. Conf. Rep. No. 101653, at 102 (1990), 1990 U.S.C.C.A.N. 779, 780). Therefore, both Alpine and ExPert are responsible parties that share joint and several liability to the United States.

[5][6] Further, although OPA permits indemnification agreements between responsible parties, it prohibits them from transferring liability. Section 2710 provides:

> (a) Agreements not prohibited. Nothing in this Act prohibits any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this Act.

> (b) Liability not transferred. No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer liability imposed under this Act from a responsible party or from any person who may be liable for an incident under this Act to any other person.

> (c) Relationship to other causes of action. Nothing in this Act, including the provisions of subsection (b) of this section, bars a cause of action that a responsible party subject to liability under this Act, or a guarantor, has or would have, by reason of subrogation or otherwise, against any person.

Pursuant to § 2710, Alpine may contract with ExPert for indemnity, and pursue those rights between themselves, but Alpine cannot under OPA transfer its liability as a responsible party. Therefore, Alpine's assignment of Louisiana State Lease 18748 does not affect its status as a responsible party as the lessee.

**CONCLUSION**
**IT IS HEREBY ORDERED** that the United States' Motion for Partial Summary Judgment Re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

722 F.Supp.2d 710, 72 ERC 1573
**(Cite as: 722 F.Supp.2d 710)**

garding the Status of Alpine Exploration Companies, Inc. as a Responsible Party under the Oil Pollution Act of 1990 (Doc. # 310) is **GRANTED.**

E.D.La.,2010.
In re Petition of Settoon Towing LLC
722 F.Supp.2d 710, 72 ERC 1573

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.