# CORBIN ON CONTRACTS

## CONTRACTS CONTRARY TO PUBLIC POLICY

By

**GRACE McLANE GIESEL**

Distinguished Teaching Professor
Louis D. Brandeis School of Law
University of Louisville

## Volume 15

REVISED EDITION

**JOSEPH M. PERILLO, Editor**

§§ 79.1–89.23

2003



LexisNexis™
Matthew Bender®

## § 85.18   Bargains for Exemption From Liability for Negligence

The general rule of exculpatory agreements is that a party may agree to exempt another party from tort liability if that tort liability results from ordinary negligence. Courts do not enforce agreements to exempt parties from tort liability if the liability results from that party's own gross negligence, recklessness, or intentional conduct.[1]

This general rule of enforceability of exculpatory agreements regarding negligence does not apply to certain types of contracts.

### Public Service—Common Carriers

Perhaps the most significant limit is that courts have not enforced exculpatory agreements if the party who is released from liability renders a public service and the exculpatory agreement relates to that public service.[2]

---

[1] See, e.g.:

**U.S.**—Houston Exploration Co. v. Halliburton Energy Servs., Inc., 269 F.3d 528 (5th Cir. 2001); Beaver v. Grand Prix Karting Ass'n, Inc., 246 F.3d 905 (7th Cir. 2001); Royal Ins. Co. v. Southwest Marine, 194 F.3d 1009 (9th Cir. 1999); Brooks v. Timberline Tours, Inc., 127 F.3d 1273 (10 Cir. 1997); Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195 (3d Cir. 1995); Associated Resources Corp. v. Halliburton Oil Well Cementing Co., 238 F.2d 957 (8th Cir. 1956), cert. denied, 353 U.S. 912 (1957); Thomas v. Atlantic Coast Line Ry., 201 F.2d 167 (5th Cir. 1953) (a fire destroyed the property of a lessee on land by a railroad; although the lessee had agreed to indemnify the railroad against such losses, even though due to negligence, the court sustained the complaint on the ground that it could be construed as alleging wilful or wanton negligence); Wolfgang v. Mid-Am. Motorsports, Inc., 898 F. Supp. 783 (D. Kan. 1995).

**Fla.**—Zuckerman-Vernon Corp. v. Rosen, 361 So. 2d 804 (Fla. Dist. Ct. App. 1978).

**Ga.**—Flanigan v. Executive Office Ctrs., Inc., 249 Ga. App. 14, 546 S.E.2d 559 (2001).

**Ind.**—LaFrenz v. Lake County Fair Bd., 172 Ind. App. 389, 360 N.E.2d 605 (1977).

**Mass.**—Vallone v. Donna, 49 Mass. App. 330, 729 N.E.2d 648 (2000); Zavras v. Capeway Rovers Motorcycle Club, 44 Mass. App. 17, 687 N.E.2d 1263 (1997).

**N.M.**—Conant v. Rodriguez, 113 N.M. 513, 828 P.2d 425 (N.M. Ct. App. 1992).

**N.Y.**—Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 593 N.E.2d 1365, 583 N.Y.S.2d 952 (1992).

**Ohio**—Pippin v. M.A. Hauser Enters., Inc., 111 Ohio App. 3d 557, 676 N.E.2d 932 (1996).

See also Restatement (Second) of Contracts § 195 (1981).

Some states forbid exculpatory provisions regarding the actor's own negligence. See, e.g., Spath v. Dillon Enters., Inc., 97 F. Supp. 2d 1215, 1218 (D. Mont. 1999) ("Montana law prohibits exculpatory phrases contained in contracts.").

[2] See Lynch v. Santa Fe Nat'l Bank, 97 N.M. 554, 558, 627 P.2d 1247, 1251 (N.M. Ct. App. 1981) (quoting Southwestern Public Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 118, 353 P.2d 62, 69 (N.M. Ct. App. 1960)):

Courts have had no difficulty concluding that common carriers offer a public service such that exculpatory agreements relating to the service are unenforceable. Courts have held that in any bargain to render service as a common carrier for compensation, a provision for exemption from liability for negligence of the carrier or its servants is contrary to public policy and unenforceable.[3] Such a provision tends to lower the standard of care below

that required by the pub
policy. So strong is this
a provision even when t
by a foreign carrier to

Courts have held en
gains for the rendering
indirect, or for some p
service. Thus, courts 1
carrier and passenger:
enforced exculpatory a
warehouseman, or in c
building on the carrier

---

Under this limitation the courts are in complete accord in holding that a public service corporation, or a public utility such as an electric company, cannot contract against its negligence in the regular course of its business, or in performing one of its duties of public service, or where a public duty is owed, or where a public interest is involved.

See also Restatement (Second) of Contracts § 195 (1981); Restatement (Second) of Torts § 496B cmt. g (1965).

[3] See, e.g.:

U.S.—Boston & M. R.R. v. Piper, 246 U.S. 439, 38 S. Ct. 354, 62 L. Ed. 820 (1918); The Kensington, 183 U.S. 263, 22 S. Ct. 102, 46 L. Ed. 190 (1902); New York Cent. Ry. v. Lockwood, 84 U.S. 357, 21 L. Ed. 627 (1873); Shippers Nat'l Freight Claim Council, Inc. v. I.C.C., 712 F.2d 740 (2d Cir. 1983); Air Transport Assocs. v. United States, 221 F.2d 467 (9th Cir. 1955) (the United States, maintaining the only airfield at Anchorage, Alaska, permitted a commercial airline carrying passengers and freight to use the field for compensation under a written contract expressly exempting the defendant from liability for negligence in operating the field; the court held the exemption provision to be unenforceable because running the airfield was a public enterprise involving passengers and freight); Sassaman v. Pennsylvania R.R., 144 F.2d 950 (3d Cir. 1944); Indemnity Ins. Co. v. Pan American Airways, 58 F. Supp. 338 (S.D.N.Y. 1944); The Finland, 35 F.2d 47 (E.D.N.Y. 1929).

Colo.—Otis Elevator Co. v. Maryland Casualty Co., 95 Colo. 99, 107, 33 P.2d 974, 977 (1934). The court held an agreement by a building company to indemnify the elevator company against claims for injuries arising out of use of the elevator unenforceable because "the public was concerned with the security of such of its citizens as would use the elevator." The building company could insure itself against liability for the negligence of the elevator company, even though the "citizens" suffered the injuries. The court treated the elevator company the same as a common carrier.

Ill.—Kopta v. Greer Shop Training, 327 Ill. App. 470, 64 N.E.2d 570 (1946) (the entity obligated to provide elevator service in a building is a common carrier and cannot limit tort liability by contract).

N.Y.—Clairol Inc. v. Moore-McCormack Lines, Inc., 79 A.D.2d 297, 436 N.Y.S.2d 279, 287 (1981) (quoting F.A. Straus & Co. v. Canadian Pac. Ry., 254 N.Y. 407, 411–12, 173 N.E. 564, 566–67 (1930)):

The Court noted that where the United States Congress has not acted so as to impose uniformity on the federal and state courts, the courts of this State continue to follow their early decisions, and enforced agreements exempting common carriers from liability for negligence. "[a]lthough the United States courts and the courts of most of the States adhered to the Federal rule." (Id., at pp. 411–12, 173 N.E. at 566). It was then noted that the historical evolution of the policy of New York State has brought it into conformance with the Federal rule "to the effect that contracts which purport to totally exempt . . . from liability for negligence are against the public policy of the State and

the early cases, which
of the State when mac

N.C.—Hill v. Carolina F

Ohio—Jacob v. Pennsyl
a contract between an exp
regarded as a passenger, an
liability for its negligence.

Okla.—Western Union
(1951).

[4] See Oceanic Steam Nav
was for exemption unless no
While the giving of notice
liability, three days was he
the law of England should
not to be against public po
a citizen of the United St

For English law, see H
Rowntree, [1894] A.C. 21

See also The Kensingto
held that a provision that
the United States when it

[5] See, e.g.:

U.S.—Francis v. South
New York Cent. Ry. v. M
Pac. Ry. v. Adams, 192
Disaster, 86 F.3d 498 (6
F.2d 814 (6th Cir.), cert.
Corp., 756 F. Supp. 863 (I
422 (E.D. Mich. 1989); 

Okla.—Missouri, K. &

[6] See, e.g.:

U.S.—Santa Fe P. &

that required by the public interest. Thus, such a provision violates public policy. So strong is this belief that one court refused enforcement of such a provision even when the provision was contained in a bargain for service by a foreign carrier to be rendered wholly outside of the United States.[4]

Courts have held enforceable exculpatory provisions contained in bargains for the rendering of service wholly without compensation, direct or indirect, or for some performance that is not within the ambit of public service. Thus, courts have enforced exculpatory agreements between a carrier and passengers riding on free passes.[5] Likewise, courts have enforced exculpatory agreements in contracts for service exclusively as a warehouseman, or in contracts granting permission to erect or maintain a building on the carrier's right of way.[6]

---

the early cases, which expressed a different view and represented the public policy of the State when made, have been superseded." (Id. at p. 413, 173 N.E. 567).

**N.C.**—Hill v. Carolina Freight Carriers Corp., 235 N.C. 705, 71 S.E.2d 133 (1952).

**Ohio**—Jacob v. Pennsylvania R.R., 203 F.2d 290 (6th Cir. 1953) (by the law of Ohio, a contract between an express agent, riding without payment of fare, but nevertheless regarded as a passenger, and the railroad carrying the passenger, exempting the carrier from liability for its negligence, is unenforceable).

**Okla.**—Western Union Tel. Co. v. Jordan Petroleum Co., 205 Okla. 452, 238 P.2d 820 (1951).

[4] See Oceanic Steam Navigation Co. v. Corcoran, 9 F.2d 724 (2d Cir. 1925). The provision was for exemption unless notice of injury should be given within three days from debarkation. While the giving of notice within a reasonable time may properly be made a condition of liability, three days was held to be an unreasonably short time. The bargain provided that the law of England should be applicable. English courts of the time held such provisions not to be against public policy. The parties made the bargain in Boston and one party was a citizen of the United States.

For English law, see Hood v. Anchor Line, [1918] A.C. 837; Richardson, S. & Co. v. Rowntree, [1894] A.C. 217; Parker v. South Eastern R. Co., L.R. 2 C.P. 416 (C.A.).

See also The Kensington, 183 U.S. 263, 22 S. Ct. 102, 46 L. Ed. 190 (1902) (the Court held that a provision that the law of Belgium should govern would not be enforceable in the United States when its application conflicts with notions of public policy).

[5] See, e.g.:

**U.S.**—Francis v. Southern Pac. Co., 333 U.S. 445, 68 S. Ct. 611, 92 L. Ed. 798 (1948); New York Cent. Ry. v. Mohney, 252 U.S. 152, 40 S. Ct. 287, 64 L. Ed. 502 (1920); Northern Pac. Ry. v. Adams, 192 U.S. 440, 24 S. Ct. 408, 48 L. Ed. 513 (1903); In re Air Crash Disaster, 86 F.3d 498 (6th Cir. 1996); Thompson v. National R.R. Passenger Corp., 621 F.2d 814 (6th Cir.), cert. denied, 449 U.S. 1035 (1980); Keyes v. National R.R. Passenger Corp., 756 F. Supp. 863 (E.D. Pa. 1991); Morris v. Northwestern Airlines, Inc., 737 F. Supp. 422 (E.D. Mich. 1989); Sassaman v. Pennsylvania R.R., 144 F.2d 950 (3d Cir. 1944).

**Okla.**—Missouri, K. & T. Ry. v. Zuber, 76 Okla. 146, 184 P. 452 (1919).

[6] See, e.g.:

**U.S.**—Santa Fe P. & P. Ry. v. Grant Bros. Constr. Co., 228 U.S. 177, 33 S. Ct. 474,

*(Text continued on page 459)*

57 L. Ed. 787 (1913); Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry., 175 U.S. 91, 20 S. Ct. 33, 44 L. Ed. 84 (1899); Minneapolis-Moline Co. v. Chicago, M. & St. P. Ry., 199 F.2d 725 (8th Cir. 1952); Michigan Millers Mut. Fire Ins. Co. v. Canadian N. Ry., 152 F. 2d 292 (8th Cir. 1946); Franklin Fire Ins. Co. v. Chesapeake & O. Ry., 140 F.2d 898 (6th Cir. 1944); Aetna Ins. Co. v. Atlantic Coast Line Ry., 79 F.2d 463 (4th Cir. 1935), cert. denied, 297 U.S. 704 (1936); Westre v. Chicago, M. & St. P. Ry., 2 F.2d 227 (8th Cir. 1924); In re Wechsler, 121 F. Supp. 2d 404, 434 (D. Del. 2000) (quoting Santa Fe P. & P. Ry. v. Grant Bros. Constr. Co., 228 U.S. 177, 33 S. Ct. 474, 57 L. Ed. 787 (1913)).

As the *Santa Fe* Court, 288 U.S. at 185, 33 S. Ct. at 477, 57 L. Ed. at 791, continued:

> [T]his rule has no application when a . . . company is acting outside the performance of its duty as a common carrier. In such case, it is dealing with matters involving ordinary considerations of contractual relation; those who choose to enter into engagements with it are not at a disadvantage; and its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it. It is apparent that there may be special engagements which are not embraced within its duty as a common carrier, although their performance may incidentally involve the actual transportation of persons and things, whose carriage in other circumstances might be within its public obligation.

**Ala.**—Great S. R.R. v. Sumter Plywood Corp., 359 So. 2d 1140 (Ala. 1978) (the court determined that the matter before it did not fit the exception); McKinney v. Mobile & O. R.R., 215 Ala. 101, 109 So. 752 (1926).

**Ill.**—Bartee Tie Co. v. Jackson, 281 Ill. 452, 117 N.E. 1007 (1917); Checkley v. Illinois Cent. R.R., 257 Ill. 491, 100 N.E. 942 (1913).

**Mass.**—New York, N.H. & H. R.R. v. Walworth Co., 340 Mass. 1, 162 N.E.2d 789 (1959); New York Cent. R.R. v. Wm. Culkeen & Sons Co., 249 Mass. 71, 144 N.E. 96 (1924); Porter v. New York, N.H. & H. R.R., 205 Mass. 590, 91 N.E. 875 (1910).

**Mich.**—Klann v. Hess Cartage Co., 50 Mich. App. 703, 214 N.W.2d 63 (1973). Mann v. Pere Marquette R.R., 135 Mich. 210, 97 N.W. 721 (1903).

**Minn.**—Northern Pac. Ry. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226 (1939).

**Neb.**—Luedeke v. Chicago & N.W. Ry., 120 Neb. 124, 231 N.W. 695 (1930).

**N.J.**—Township of Hillside v. Lehigh Valley R.R., 96 N.J. Super. 167, 232 A.2d 683 (1967) (the township built a footbridge over the railroad track; the railroad was negligent and the footbridge was destroyed; the township had agreed not to hold the railroad responsible for negligence, and the court enforced the exculpatory provision because the railroad was not acting as a carrier in relation to the footbridge matter).

**Pa.**—Rundell & Co. v. Lehigh Valley R.R., 254 Pa. 529, 98 A. 1054 (1916).

**Tenn.**—Carolina, C. & O. Ry. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S.W. 591 (1914).

**Wis.**—Frederick v. Great N. Ry., 207 Wis. 234, 240 N.W. 387 (1932).

See also Robinson Ins. & Real Estate Inc. v. Southwestern Bell Tel. Co., 366 F. Supp. 307 (W.D. Ark. 1973). In Georges v. Pacific Tel. & Tel. Co., 184 F. Supp. 571 (D. Or. 1960), the plaintiff contracted for an advertisement of a phone number in the yellow pages of the telephone directory. The defendant printed it erroneously. The advertising contract, however, expressly limited the company's liability in damages for such an error to a proportionate part of the amount paid for the advertisement. The court held the limitation valid, even though the defendant was engaged in public service with a lawful monopoly,

A common carrier or other public servant can lawfully bargain for a limitation on the amount for which it shall be liable in case of harm to property caused by negligence, provided that, at the same time, the carrier offers to render its service at a reasonable rate without such a limitation.[7] The party contracting for the service must be given a choice between the two forms of liability and the two rates. Usually the limitation is in the form of an agreed valuation of the property entrusted to the public servant. Such a limitation of liability is ineffective if the only alternative agreement offered is an improper and unenforceable one.[8]

Courts in the last years of the twentieth century shifted their analysis somewhat in evaluating the applicability of the ban on enforcement of exculpatory contracts for public services. As the earlier common carrier cases indicate, early courts' views focused on the traditional and narrow notion of what sort of business was a public servant. A common carrier was obviously a public servant, and thus the courts did not enforce exculpatory contracts of common carriers unless the common carrier convinced the court that the exculpatory agreement did not involve public service. Modern courts would not reach a different result in common carrier cases, but do use a more expansive analysis to decide the public service issue. Courts today are likely to subject any exculpatory clause to the same analysis, whether in a common-carrier situation or a situation involving a snow-skiing establishment. The analysis focuses largely on the business's relationship with the public.

A commonly used form of the analysis has six factors. First, is the activity suitable for public regulation? Second, is the thing offered an important public service? Third, is the service provided to any member of the public within standardized parameters? Fourth, does the business maintain control over the person seeking the service or the property to be used? Fifth, is there a decisive inequality of bargaining power? Sixth, is the exculpatory provision a part of a contract of adhesion?[9] Courts using this analysis do

---

for the reason that the advertising contract was merely private business and not an attempt to limit liability for negligence in the performance of its public service.

[7] See, e.g.:

U.S.—Union Pac. R.R. v. Burke, 255 U.S. 317, 41 S. Ct. 283, 65 L. Ed. 656 (1921); Adams Express Co. v. Croninger, 226 U.S. 491, 33 S. Ct. 148, 57 L. Ed. 314 (1913); Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859 (1st Cir. 1987).

The agreement must be a valuation in good faith of the goods as they should have been delivered at point of destination and not a valuation as of the point of shipment for the purpose of reducing liability.

See The Ansaldo San Giorgio I v. Rheinstrom Bros., 294 U.S. 494, 55 S. Ct. 483, 79 L. Ed. 1016 (1935).

[8] See, e.g., The Kensington, 183 U.S. 263, 22 S. Ct. 102, 46 L. Ed. 190 (1902).

[9] See:

not require affirmative answers to all six questions in order to find an exculpatory agreement to be contrary to public policy. But the second factor—whether the service offered is an important public service—is particularly relevant.[10]

An excellent example of this analysis is a case involving an exculpatory provision a public school required students and their parents to accept in

---

Alaska—Moore v. Hartley Motors, Inc., 36 P.3d 628 (Alaska 2001) (the court applied the six factors applied to an exculpatory provision involving an all terrain vehicle safety course and concluded that the provision was enforceable).

Cal.—Tunkl v. Regents of Univ. of Cal., 60 Cal. 2d 92, 98, 383 P.2d 441, 32 Cal. Rptr. 33 (1963):

> Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

Fla.—Goeden v. CM III, Inc., 756 So. 2d 1105 (Fla. Dist. Ct. App. 2000) (the court applied the six factors to a motorcycle school exculpatory provision and found the provision enforceable).

Ga.—Porubiansky v. Emory Univ., 156 Ga. App. 602, 275 S.E.2d 163 (1980), aff'd, 248 Ga. 391, 282 S.E.2d 903 (1981).

Tenn.—Olson v. Molzen, 558 S.W.2d 429 (Tenn. 1977).

Wash.—Wagenblast v. Odessa Sch. Dist., 110 Wash. 2d 845, 758 P.2d 968 (1988) (a public school required student to release the school from liability as a condition to participating in interscholastic sports; the court found the provision unenforceable); Chauvalier v. Booth Creek Ski Holdings, Inc., 109 Wash. App. 334, 35 P.3d 383 (2001) (an exculpatory provision relating to snow skiing was enforceable).

W. Va.—Kyriazis v. University of W. Va., 192 W. Va. 60, 450 S.E.2d 649 (1994) (the court concluded that an exculpatory clause related to playing rugby was unenforceable under this test).

Another similar approach uses four factors: the existence of a duty to the public, the nature of the service performed, whether the contract was fairly entered into, and whether the intention of the parties is clearly and unambiguously expressed. See:

Colo.—Jones v. Dressel, 623 P.2d 370 (Colo. 1981).

Wyo.—Milligan v. Big Valley Corp., 754 P.2d 1063 (Wyo. 1988).

[10] See Chauvalier v. Booth Creek Ski Holdings, Inc., 109 Wash. App. 334, 35 P.3d 383 (2001) (three of the six factors were present but the second factor was not present).

order for the students to play interscholastic athletics. The court found that all six factors were present. Thus, the exculpatory provision was contrary to public policy.[11] In contrast, a court found only three of the factors present in a case involving a snow-skiing establishment, and thus held the provision enforceable.[12]

*Recreational Activities*

Regardless of the form of the analysis of the exculpatory clause in question, courts tend to enforce clauses dealing with participation in recreational activities, especially obviously risky ones, if the point of the provision is clear. Courts have upheld provisions relating to car races,[13] snow skiing,[14] ice-skating,[15] roller-skating,[16] skydiving,[17] and other such activities.[18] Exculpatory provisions for nonrecreational activities receive a

---

[11] Wagenblast v. Odessa Sch. Dist., 110 Wash. 2d 845, 758 P.2d 968 (1988).

[12] Chauvalier v. Booth Creek Ski Holdings, Inc., 109 Wash. App. 334, 35 P.3d 383 (2001). See also Moore v. Hartley Motors, Inc., 36 P.3d 628 (Alaska 2001) (concluding that an all-terrain vehicle safety course was not an essential service and therefore no decisive advantage of bargaining strength existed, the court enforced the provision).

[13] See, e.g.:

**U.S.**—Cadek v. Great Lakes Dragaway, Inc., 843 F. Supp. 420 (N.D. Ill. 1994). Wolfgang v. Mid. American Motorsports, Inc., 898 F. Supp. 783 (D. Kan. 1995).

**Ark.**—Plant v. Wilbur, 345 Ark. 487, 47 S.W.3d 889 (2001).

**Ga.**—Barbazza v. International Motor Sports Ass'n, 245 Ga. App. 790, 538 S.E.2d 859 (2000).

[14] See, e.g.:

**Or.**—Harmon v. Mt. Hood Meadows, Ltd., 146 Or. App. 215, 932 P.2d 92 (1997).

**Wash.**—Chauvalier v. Booth Creek Ski Holdings, Inc., 109 Wash. App. 334, 35 P.3d 383 (2001).

But see Dalury v. S-K-I, Ltd., 164 Vt. 329, 670 A.2d 795 (1995) (the court concluded that snow skiing was of great public interest and refused to enforce the provision).

[15] See, e.g., Vallone v. Donna, 49 Mass. App. 330, 729 N.E.2d 648 (2000).

[16] See, e.g., Benjamin v. Gear Roller Hockey Equip., Inc., 198 Ariz. 462, 11 P.3d 421 (Ariz. Ct. App. 2000).

[17] See, e.g., Scrivener v. Sky's The Limit, Inc., 68 F. Supp. 2d 277 (S.D.N.Y. 1999).

[18] See, e.g.:

**U.S.**—Street v. Darwin Ranch, Inc., 75 F. Supp. 2d 1296 (D. Wyo. 1999) (the court enforced a clause relating to horseback riding); Rose v. National Tracker Pullers Ass'n, 33 F. Supp. 2d 757 (W.D. Wis. 1998) (an exculpatory provision relating to a tractor pull was enforceable).

**Alaska**—Moore v. Hartley Motors, Inc., 36 P.3d 628 (Alaska 2001) (the court concluded that the provision applying to an all terrain vehicle safety class was enforceable).

**Fla.**—Goeden v. CM III, Inc., 756 So. 2d 1105 (Fla. Dist. Ct. App. 2000) (the court enforced a provision relating to a motorcycle riding school).

**Md.**—Seigneur v. National Fitness Inst., Inc., 132 Md. App. 271, 752 A.2d 631 (2000) (the court enforced a provision relating to fitness activities).

cooler reception.[19] For example, a court has held void an exculpatory provision in the context of injury in a pre-employment physical examination. This follows a generally held position that medical services are permeated by public interest and thus exculpatory provisions relating to medical care are against public policy.[20]

*Banking Services*

In recent years, courts evaluating exculpatory clauses in the context of banking services have concluded that many banking activities are public service oriented. As a consequence, courts have refused to enforce exculpatory clauses involving basic bank services.[21]

---

**N.D.**—Reed v. University of N.D., 589 N.W.2d 880 (N.D. 1999) (the court enforced a provision relating to a foot race).

**Ohio**—Finkler v. Toledo Ski Club, 63 Ohio App. 3d 11, 577 N.E.2d 1114 (1989) (the court enforced a provision relating to a canoe trip).

**Tex.**—Newman v. Tropical Visions, Inc., 891 S.W.2d 713 (Tex. Ct. App. 1994) (the court enforced a provision relating to scuba diving).

**Wis.**—Dobratz v. Thomson, 161 Wis. 2d 502, 468 N.W.2d 654 (1991) (the court enforced a provision relating to water skiing).

**Wyo.**—Massengill v. S.M.A.R.T. Sports Med. Clinic, P.C., 996 P.2d 1132 (Wyo. 2000) (the court enforced a provision relating to weight lifting).

See generally Mario R. Arango & William R. Trueba, Jr., *The Sports Chamber: Exculpatory Agreements Under Pressure*, 14 U. MIAMI ENT. & SPORTS L. REV. 1 (1997).

[19] See, e.g.:

**Cal.**—Tunkl v. Regents of Univ. of Cal., 60 Cal. 2d 92, 98, 383 P.2d 441, 32 Cal. Rptr. 33 (1963) (the court refused to enforce the provision involving medical treatment).

**Ga.**—Porubiansky v. Emory Univ., 156 Ga. App. 602, 275 S.E.2d 163 (1980), aff'd, 248 Ga. 391, 282 S.E.2d 903 (1981).

**N.Y.**—Ash v. New York Univ. Dental Ctr., 164 A.D.2d 366, 564 N.Y.S.2d 308 (1990).

**Wash.**—Vodopest v. MacGregor, 128 Wash. 2d 840, 913 P.2d 779 (1996).

[20] See Eelbode v. Chec Medical Ctrs., Inc., 97 Wash. App. 462, 984 P.2d 436 (1999). Applying the six-factor analysis, the court concluded that physical therapy was regulated and pre-employment physicals were of public importance. The entity seeking enforcement of the exculpatory provision offered the service to anyone seeking it. The court noted that the entity had a decisive advantage in bargaining strength and used it to form an adhesion contract. Finally, the patient was under the control of the entity during the exam. The court thus refused to enforce the provision.

[21] See UCC §§ 4-103 (1), 4-403 cmt. 8.

See also:

**N.H.**—Cambridge Trust Co. v. Carney, 115 N.H. 94, 333 A.2d 442 (1975).

**N.J.**—Hy-Grade Oil Co. v. New Jersey Bank, 138 N.J. Super. 112, 350 A.2d 279 (1975).

**N.Y.**—Grace v. Sterling, Grace & Co., 30 A.D.2d 61, 289 N.Y.S.2d 632 (1968).

**Pa.**—Thomas v. First Nat'l Bank, 376 Pa. 181, 101 A.2d 910 (1954).

Exculpatory provisions regarding stockbrokers receive different treatment. See, e.g., Wolf v. Ford, 335 Md. 525, 644 A.2d 522 (1994).

*Bailment*

Historically, bailees have received mixed treatment. Some courts view a bailee as offering a public service.[22] Other courts view a bailee as not offering a public service.[23] Of course, many of these conclusions may result from the specific context of the bailment before the court. In addition, the different treatment may be based on statutory provisions. For example, the Uniform Warehouse Receipts Act, in effect in some states before the Uniform Commercial Code came into existence, prohibited exemption from

---

[22] See, e.g.:

**U.S.**—Hall-Scott Motor Car Co. v. Universal Ins. Co., 122 F.2d 531 (9th Cir.), cert. denied, 314 U.S. 690 (1941).

**Ala.**—Ex parte Mobile Light & R.R., 211 Ala. 525, 101 So. 177 (1924) (the case involved a parking lot).

**Colo.**—Denver Union Terminal Ry. v. Cullinan, 72 Colo. 248, 210 P. 602 (1922).

**Neb.**—Gesford v. Star Van & Storage Co., 104 Neb. 453, 177 N.W. 794 (1920) (an exemption as to loss by freezing was valid in a warehouse known to have no heating facilities).

**N.C.**—Jordan v. Eastern Transit & Storage Co., 266 N.C. 156, 146 S.E.2d 43 (1966).

**Okla.**—Fisk v. Bullard, 205 Okla. 502, 239 P.2d 424 (1951).

**Or.**—Voyt v. Bekins Moving & Storage Co., 169 Or. 30, 119 P.2d 586 (1941); Pilson v. Tip-Top Auto Co., 67 Or. 528, 136 P. 642 (1913).

**Wash.**—Sporsem v. First Nat'l Bank, 133 Wash. 199, 233 P. 641 (1925) (the case involved a safe deposit box).

[23] See, e.g.:

**U.S.**—Interstate Compress Co. v. Agnew, 255 F. 508 (8th Cir. 1919) (the provision was valid except as to gross negligence); Michigan Millers Mut. Fire Ins. Co. v. Canadian N. Ry., 58 F. Supp. 326 (D. Minn. 1944), aff'd, 152 F.2d 292 (8th Cir. 1945) (the railroad was acting as a warehouseman).

**Cal.**—Northwestern Mut. Fire Ass'n v. Pacific Wharf & Storage Co., 187 Cal. 38, 200 P. 934 (1921) (the exculpatory provision applied to lumber piled on a wharf).

**D.C.**—Manhattan Co. v. Goldberg, 38 A.2d 172 (D.C. 1944) (the exculpatory provision applied to laundry).

**Mich.**—Michigan Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 223 Mich. App. 19, 566 N.W.2d 7 (1997) (the case involved a safe deposit box).

**N.Y.**—Uribe v. Merchants Bank, 91 N.Y.2d 336, 693 N.E.2d 740, 670 N.Y.S.2d 393 (1998) (the case involved a safe deposit box).

**Ohio**—Collins v. Click Camera & Video, Inc., 86 Ohio App. 3d 826, 621 N.E.2d 1294 (1993).

**R.I.**—Rhode Island Hosp. Trust Nat'l Bank v. Dudley Serv. Corp., 605 A.2d 1325 (R.I. 1992).

**Tex.**—Eller v. NationsBank of Texas, N.A., 975 S.W.2d 803 (Tex. Ct. App. 1998) (the case involved a safe deposit box).

liability for negligence.[24] The Uniform Commercial Code, however, allows exculpatory provisions.[25]

### Employment

The treatment of exculpatory provisions relating to employment is a bit different. Courts have long recognized that an employer cannot bargain for exemption from liability for harm to an employee caused by negligence.[26] This is due in part to specific statutory enactments. Even in absence of statutes, the pressure of social opinion has made the unenforceability of exculpatory provisions the common law rule.

### Leases

Exculpatory clauses in leases may be enforceable.[27] A provision in a lease exempting the lessor from liability for loss due to lack of repair is not rendered invalid by expressly including harm caused by the negligence of the landlord or the landlord's employees.[28] Of course, a tenant can

---

[24] See Uniform Warehouse Receipts Act § 3.

[25] See UCC § 7-204.

[26] See Restatement (Second) of Contracts § 195 (1981).

But see Lawrence v. CDB Servs., Inc., 44 S.W.3d 544 (Tex. 2001).

See also Etu v. Fairleigh Dickinson Univ. West Indies, 635 F. Supp. 290 (D.V.I. 1986). In Oregon Portland Cement Co. v. E.I. Du Pont de Nemours & Co., 118 F. Supp. 603 (D. Or. 1953), the defendant gratuitously supplied one of its experts to the plaintiff to aid in blasting operations. The plaintiff expressly agreed that in so acting the expert should be acting as its own employee and the defendant should be wholly indemnified as to liability for injuries. The court held the agreement valid.

[27] See, e.g., Topp Copy Prods., Inc. v. Singletary, 533 Pa. 468, 626 A.2d 98 (1993).

See generally William K. Jones, *Private Revision of Public Standards: Exculpatory Agreements in Leases*, 63 N.Y.U.L. Rev. 717 (1988).

[28] See, e.g.:

Cal.—Mills v. Ruppert, 167 Cal. App. 2d 58, 333 P.2d 818 (1959); Inglis v. Garland, 19 Cal. App. 2d Supp. 767, 64 P. 2d 501 (Cal. Super. Ct. 1936).

Ind.—Franklin Fire Ins. Co. v. Noll, 115 Ind. App. 289, 58 N.E.2d 947 (1945).

Ky.—Cobb v. Gulf Refining Co., 284 Ky. 523, 145 S.W.2d 96 (1940).

La.—Roppolo v. Pick, 4 So. 2d 839 (La. Ct. App. 1941); Pecararo v. Grover, 5 La. App. 676 (1927).

Mass.—Levins v. Theopold, 326 Mass. 511, 95 N.E.2d 554 (1950); Clarke v. Ames, 267 Mass. 44, 165 N.E. 696 (1929).

Minn.—Weirick v. Hamm Realty Co., 179 Minn. 25, 228 N.W. 175 (1929).

Mo.—Gralnick v. Magid, 292 Mo. 391, 238 S.W. 132 (1921).

N.J.—Wade v. Park View, Inc., 25 N.J. Super. 433, 96 A.2d 450, aff'd, 27 N.J. Super. 469, 99 A.2d 589 (1953) (the court held that the rule applicable to common carriers did

contract to make all repairs. A landlord who provides against all liability for not repairing can scarcely be said to have undertaken any legal duty whatever as to repairs. On the other hand, a landlord may contract so as to be bound to make and to pay for repairs and yet be exempt from liability for consequential injuries caused by the landlord's failure to perform duties.[29]

### Admiralty

Courts have not enforced exculpatory agreements in the admiralty context if the exculpatory provision relates to towage matters. In *Bisso v. Inland*

---

not apply to the business of carrying on a multiple-apartment house even though 3,500 people were housed).

**N.Y.**—Hirsch v. Radt, 228 N.Y. 100, 126 N.E. 653 (1920) (the court held valid an exemption that applied in absence of written notice of the defect); Vanderhoff v. Casler, 91 A.D.2d 49, 458 N.Y.S.2d 289 (1983).

**Pa.**—Manius v. Housing Auth., 350 Pa. 512, 39 A.2d 614 (1944); Cannon v. Bresch, 307 Pa. 31, 160 A. 595 (1932).

But see

**N.H.**—Papakalos v. Shaka, 91 N.H. 265, 18 A.2d 377 (1941).

**Ill.**—Cerny Pickas & Co. v. C.R. Jahn Co., 347 Ill. 379, 106 N.E.2d 828 (1952) (the court refused to enforce an exemption from liability for injury caused by the lessee's construction on the premises in direct violation of a city ordinance).

**Iowa**—Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462 (1957).

See also:

**N.J.**—Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 111 A.2d 425 (1955). A lease provided that the landlord should under no circumstances be liable for any loss or damage to the tenant "however such loss or damage may arise." The plaintiff fell down stairs and alleged that this was due to the negligence of the landlord. The court held that on these allegations it was error to enter a summary judgment for the landlord. The court refused to enforce the exculpatory provision because it encompassed intentional or willful acts. The court noted also that apartment houses have been made the subject of safety regulation and that a housing shortage had reduced the tenant's bargaining power.

**N.Y.**—Kirshenbaum v. General Outdoor Advertising Co., 258 N.Y. 489, 495, 180 N.E. 245, 247 (1932) ("Stipulations between landlord and tenant, determining which shall bear a loss arising from nonrepair or misrepair of the tenement, and which shall be immune, are not matters of public concern. Moreover, the two stand upon equal terms.").

[29] See:

**Cal.**—Mills v. Ruppert, 167 Cal. App. 2d 58, 333 P.2d 818 (1959). A lease provided that the lessor should keep roofs and exterior walls in repair, but also that the lessee waived all claims for damages to goods "from any cause." The lessee claimed damages for injuries to goods caused by the lessor's breach of the covenant to keep the walls in repair. The court held that the exculpatory provision was valid as a defense.

**Ill.**—O'Callaghan v. Waller & Beckwith Realty Co., 15 Ill. 2d 436, 155 N.E.2d 545 (1959) (the court held that the provision was not against public policy, even though a prevailing housing shortage put the lessors in a much superior bargaining position).

*Waterways Corp.*,[30] a barge, while being towed by a tug, collided with a bridge pier and sank. The negligence of the tug was the recognized cause of the loss of the barge. The towing contract provided that the towing movement should be at the "sole risk" of the barge and that the masters, crews, and employees of the tug should be considered the servants of the barge for the purposes of the tow service. The court held that these provisions were contrary to public policy in that they purported to relieve the tug owner from liability for negligence in the performance of the towing contract. There was no statute on the point. The tug was not a common carrier. The court declared the rule as necessary to discourage negligence in the field of towage and to prevent tug owners from overreaching those in need of towage. The result of the rule is that the cost of the insurance will be borne by those who employ the tug.[31]

Courts have enforced exculpatory provisions relating to ship repair.[32] Many of these courts will not enforce such provisions if they absolve the actor of all liability.[33]

*Machinery and Equipment*

In general, parties can agree to exculpatory provisions relating to the installation or service of machinery and equipment.[34] Any disclaimer of

---

[30] 349 U.S. 85, 75 S. Ct. 629, 99 L. Ed. 911 (1955).

[31] The *Bisso* decision is effectively analyzed and criticized in Note, *Unconscionable Business Contracts: A Doctrine Gone Awry*, 70 YALE L.J. 453 (1961).

[32] See Royal Ins. Co. v. Southwest Marine, 194 F.3d 1009 (9th Cir. 1999); Arcwel Marine, Inc. v. Southwest Marine, Inc., 816 F.2d 468 (9th Cir. 1987), cert. denied, 484 U.S. 1008 (1988); M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1488 (9th Cir. 1983) ("It is well settled that in admiralty law, the parties to a repair contract may validly stipulate that the shipowner is to assume all liability for damage occasioned by the negligence of the shipyard.").

[33] See, e.g., La Esperanza de P.R., Inc. v. Perez y Cia. de Puerto Rico, Inc., 124 F.3d 10, 19 (1st Cir. 1997) ("[C]ourts today will enforce red letter clauses that are expressed clearly in contracts entered into freely by parties of equal bargaining power, provided that the clause does not provide for a total absolution of liability.").

[34] See, e.g.:

U.S.—Sinclair Refining Co. v. Stevens, 123 F.2d 186 (8th Cir. 1941), cert. denied, 315 U.S. 804 (1942).

Iowa—Weik v. Ace Rents, 249 Iowa 510, 87 N.W.2d 314 (1958) (the plaintiff rented a power lawn mower from the defendant, agreeing to exempt the defendant from all liability for negligence; the exemption was held valid even as against allegations that the machine was defective and dangerous).

N.C.—Hall v. Sinclair Refining Co., 242 N.C. 707, 89 S.E.2d 396 (1955) (the court held that an express provision in a contract between a service station operator and a supplier exempting the latter from liability for negligence in installation of tank and equipment was valid; the operator had no action for loss by leakage).

warranties regarding the product, however, must be done in accordance with the disclaimer provisions of the Uniform Commercial Code as enacted by the states.[35] A party cannot contract away liability under product liability law.[36]

### Contracts of Adhesion

In determining whether a provision is contrary to public policy, courts using the six-factor analysis discussed above consider, as one of the factors, whether a contract is one of adhesion. Even if a court does not use the six-factor analysis, this issue is an important one in evaluating whether the exculpatory provision violates public policy.[37] Many commercial entities have adopted printed form contracts for mass use. These contracts generally contain broad limitation of liability provisions. These exculpatory provisions may be printed in fine type on the reverse side of the substance of the agreement. There may be a statement on the signed page that some of the terms are on the reverse side and that by signing the signer assents to them. Yet the party's attention may not be called to them, and the signer may, in fact, have no knowledge of them. Courts are wary of enforcing any exculpatory provision that is part of such an arrangement. Even if the agreement does not rise to the level of adhesion, courts often state that exculpatory clauses must be conspicuous to be enforced. By this, the courts seem to mean that the exculpatory clauses must be physically as well as substantively conspicuous.[38]

---

[35] See UCC § 2-316.

[36] See Restatement (Second) of Torts § 402A cmt. m (1965) (a products liability claim "is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands"). See also Restatement (Third) of Torts: Products Liability § 18 (1998). See generally Richard C. Ausness, *"Waive" Goodbye to Tort Liability: A Proposal to Remove Paternalism From Product Sales Transactions*, 37 SAN. DIEGO L. REV. 293 (2000).

[37] But see Seigneur v. National Fitness Inst., Inc., 132 Md. App. 271, 752 A.2d 631 (2000) (the court enforced a provision relating to fitness activities though it concluded that the contract was one of adhesion).

[38] See, e.g.:

U.S.—Brooks v. Timberline Tours, Inc., 127 F.3d 1273 (10th Cir. 1997).

Ga.—Parkside Ctr., Ltd. v. Chicagoland Vending, Inc., 250 Ga. App. 607, 612, 552 S.E.2d 557, 562 (2001) ("Lacking any indicia of prominence, the exculpatory clause is unenforceable.").

Or.—Anderson v. Ashland Rental, Inc., 122 Or. App. 508, 858 P.2d 470 (1993).

§ 85.18   CONTRACTS CONTRARY TO PUBLIC POLICY   Pt. 8

*Strict Construction of Exception*

Even in cases where exemption from liability for negligence is not against public policy, courts construe the exemption strictly.[39] Many cases have stated that an exemption from liability for loss or damage in general terms will not be interpreted as an exemption from liability for harm negligently caused. Many of these courts require that the provision expressly include the actor's negligence.[40] Other courts acknowledge that the intention to exclude liability for negligence may be made clear without using the word "negligence" itself.[41] All courts agree that the exculpatory provision cannot

---

[39] See:

Ariz.—Benjamin v. Gear Roller Hockey Equip., Inc., 198 Ariz. 462, 11 P.3d 421 (Ariz. Ct. App. 2000).

Kan.—Belger Cartage Serv. v. Holland Constr. Co., 224 Kan. 320, 582 P.2d 1111 (1978).

Fla.—Covert v. South Florida Stadium Corp., 762 So. 2d 938 (Fla. Dist. Ct. App. 2000).

Miss.—Turnbough v. Ladner, 754 So. 2d 467 (Miss. 2000).

N.Y.—DeVito v. New York Univ. College of Dentistry, 145 Misc. 2d 144, 544 N.Y.S.2d 109 (N.Y. Sup. Ct. 1989).

[40] Texas courts refer to the requirement that the word "negligence" be used as the "express negligence doctrine." See Eller v. NationsBank of Texas, N.A., 975 S.W.2d 803 (Tex. Ct. App. 1998).

See also:

U.S.—California & Hawaiian Sugar Refining Corp. v. Harris County Houston Shipping Channel Navigation Dist., 27 F.2d 392 (S.D. Tex. 1928).

Ariz.—Sirek v. Fairfield Snowbowl, Inc., 166 Ariz. 183, 187, 800 P.2d 1291, 1295 (1990) ("[I]f [the defendant] intended to absolve itself from its own negligence, it should have clearly and explicitly stated so.").

Del.—J.A. Jones Constr. Co. v. City of Dover, 372 A.2d 540 (Del. Super. Ct. 1977).

Ind.—Powell v. American Health Fitness Ctr. of Fort Wayne, Inc., 694 N.E.2d 757, 761 (Ind. Ct. App. 1998) ("[T]he exculpatory clause must both specifically and explicitly refer to the negligence of the party seeking release from liability.").

N.J.—George M. Brewster & Son v. Catalytic Constr. Co., 17 N.J. 20, 109 A.2d 805 (1954); Freddi-Gail, Inc. v. Royal Holding Corp., 34 N.J. Super. 142, 144, 111 A.2d 636, 638 (1955) ("Since the clause does not in plain terms exonerate the landlord from its own acts of negligence, it does not bar plaintiff's claim here.").

[41] See, e.g.:

U.S.—Street v. Darwin Ranch, Inc., 75 F. Supp. 2d 1296 (D. Wyo. 1999) (the court stated that the provision can be clear without using the term "negligence").

Fire Ass'n of Philadelphia v. Allis Chalmers Mfg. Co., 129 F. Supp. 335 (N.D. Iowa 1955). The contract before the court was one for the manufacture and sale of electrical equipment. The injury was caused by the seller's negligence. The court held that such an exemption or indemnification provision in a "vendor-vendee contract" is not invalid as against public policy. The court held also that such provisions should be given a fair and reasonable interpretation, and if, when so interpreted, they indicate an intention to give exemption from liability for injury however caused, they may be held to include injury caused by negligence even though the word "negligence" is not mentioned.

468

be enforced if the words do not clearly express an intention to exclude liability.[42]

---

**Md.**—Seigneur v. National Fitness Inst., Inc., 132 Md. App. 271, 280, 752 A.2d 631, 636 (2000) ("In Maryland, for an exculpatory clause to be valid, it 'need not contain or use the word "negligence" or any other "magic words." ' ") (quoting Adloo v. H.T. Brown Real Estate, Inc., 344 Md. 254, 266, 686 A.2d 298, 304 (1996)).

**N.H.**—Barnes v. New Hampshire Karting Ass'n, 128 N.H. 102, 509 A.2d 151 (1986).

**Or.**—Southern Pac. Co. v. Morrison-Knudsen Co., 216 Or. 398, 417, 338 P.2d 665, 674 (1959) (quoting Stern v. Larocca, 49 N.J. Super. 496, 503–04, 140 A.2d 403, 407 (1958)). The court held in a well-considered opinion reviewing and citing many cases, that in a spur-track case a contract provision to indemnify the railroad "from all liability, cost and expense resulting directly or indirectly from the presence or use of said bunker," included liability resulting from the negligence of the railroad company itself. In this case, an injured employee recovered a judgment against the railroad. Although the indemnity provision did not expressly include "negligence" of the railroad, there were many other factors making it just and reasonable to include it and justifying a refusal to exclude one kind of liability from a general provision for indemnity against "all liability." The court quoted *Stern v. Larocca* as follows: "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances."

[42] See, e.g.:

**U.S.**—Chicago & N.W. Ry. v. Chicago Packaged Fuel Co., 195 F.2d 467 (7th Cir.), cert. denied, 344 U.S. 832 (1952); Frankel v. Johns-Manville Corp., 257 F.2d 508 (3d Cir. 1958).

**Cal.**—Saenz v. Whitewater Voyages, Inc., 276 Cal. App. 3d 758, 276 Cal. Rptr. 672 (1990); Basin Oil Co. v. Baash-Ross Tool Co., 125 Cal. App. 2d 578, 271 P.2d 122 (1954).

**Fla.**—Sunny Isles Marina, Inc. v. Adulami, 706 So. 2d 920, 922 (Fla. Dist. Ct. App. 1998) ("Such clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.").

**Ga.**—Seaboard Coast Line R.R. v. Dockery, 135 Ga. App. 540, 218 S.E.2d 263 (1975); Bohannon v. Southern Ry., 97 Ga. App. 849, 104 S.E.2d 603 (1958).

**Ill.**—Moss v. Hunding, 27 Ill. App. 2d 189, 192, 169 N.E. 2d 396, 398 (1960) (a lease provided in fine print that the lessor should not "be liable to the lessee for injury to person . . . from any cause").

**Miss.**—Turnbough v. Ladner, 754 So. 2d 467, 469 (Miss. 2000) (the court refused to enforce a provision relating to scuba diving, stating that "[t]he wording of an exculpatory agreement should express as clearly and precisely as possible the extent to which a party intends to be absolved from liability").

**N.Y.**—Ash v. New York Univ. Dental Ctr., 164 A.D.2d 366, 564 N.Y.S.2d 308 (1990); Jordan v. City of New York, 3 A.D.2d 507, 511, 162 N.Y.S.2d 145, 149 (1957), aff'd, 5 N.Y.2d 723, 152 N.E.2d 667, 177 N.Y.S.2d 709 (1958) (a contractor promised to indemnify the city against claims, "whether such damages or injuries be attributable to negligence of the Contractor or his employees or otherwise").

**N.C.**—Winkler v. Appalachian Amusement Co., 238 N.C. 589, 79 S.E.2d 185 (1953); Lexington Ins. Co. v. Tires Into Recycled Energy & Supplies, Inc., 136 N.C. App. 223, 522 S.E.2d 798 (1999).

*Favors*

In some transactions, one party may have asked the party seeking exculpation for a favor and the party may have granted that favor. Yet the grantor of the favor received no consideration or other benefit in return. Some courts may consider the lack of benefit as a factor to be evaluated in the analysis of the enforceability of the exculpatory provision. This factor may have less than decisive weight.[43]

*Claims of Minor Children*

Courts do not enforce exculpatory provisions agreed to by parents to release prospective claims of minor children. Parents cannot compromise a child's existing cause of action. Thus, courts reason, parents cannot release liability claims prospectively.[44]

---

**Or.**—Estey v. MacKenzie Eng'g Inc., 324 Or. 372, 927 P.2d 86 (1996); Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944).

[43] See Gray Line Co. v. Goodyear Tire & Rubber Co., 280 F.2d 294 (9th Cir. 1960). The court draws a distinction between Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944) and Southern Pac. Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (Or. 1959). In the *Layman* case, the indemnity clause was sufficiently general to include all losses however caused, but not expressly including losses caused by the indemnitee's own negligence. In the *Morrison-Knudsen* case, the contract clause was similar; but the contract containing it was one that was made for the benefit of the indemnitor and dealt with a situation that increased the risks of the indemnitee. Thus, the court in *Morrison-Knudsen* enforced the indemnity provision. In the *Layman* and *Gray Line* cases, the purposes and benefits of the matter dealt with in the contract were different. The indemnitee that was itself negligent was denied indemnity because negligence was not expressly mentioned. Chicago & Northwestern Ry. v. Rissler, 184 F. Supp. 98, 100 (D. Wyo. 1960). In return for the railway's granting the privilege of using a temporary crossing for the defendant's own private business, the defendant agreed to indemnify the company "against any loss or damage . . . even though the operation of the Railway Company's railroad may have caused or contributed thereto." The court held that even though the provision did not use the word negligence, the quoted words were sufficient to include negligent action by the company. The company was a common carrier, but it was not rendering public service with respect to this defendant. The granting of the license for the temporary crossing was not in the least for the benefit of the company.

[44] See, e.g.:

**Conn.**—Fedor v. Mauwehu Council, Boy Scouts of Am., Inc., 21 Conn. Supp. 38, 143 A.2d 466 (Conn. Super. Ct. 1958).

**Ill.**—Meyer v. Naperville Manner, Inc., 262 Ill. App. 3d 141, 634 N.E.2d 411, 199 Ill. Dec. 572 (1994).

**Me.**—Doyle v. Bowdoin College, 403 A.2d 1206 (Me. 1979).

**N.J.**—Fitzgerald v. Newark Morning Ledger Co., 111 N.J. Super. 104, 267 A.2d 557 (1970).

**Tenn.**—Childress v. Madison County, 777 S.W.2d 1 (Tenn. Ct. App. 1989).

**Tex.**—Munoz v. II Jaz Inc., 863 S.W.2d 207 (Tex. Ct. App. 1993).

*Limitation of Damages*

A party may contract to limit liability in damages for nonperformance of promises. Liquidated damages clauses are commonly enforced by modern courts.[45] Such a provision is not effective, however, if that party acts fraudulently or in bad faith. For example, in the situation of a contract between a homeowner and a builder, a court will enforce a provision that limits the owner's ability for causing delay in the builder's performance if the owner has not acted in bad faith.[46]

## § 85.19  Effect of a Sham Bargain Intended Only to Deceive Others

When two parties execute a written instrument purporting to be a contract when in fact it is not, their purpose being to use it to deceive or defraud a third person, the written instrument is not itself enforceable as a contract.[1]

---

**Utah**—Hawkins ex rel. Hawkins v. Peart, 37 P.3d 1062, 1065 (Utah 2002) ("A clear majority of courts treating the issue have held that a parent may not release a minor's prospective claim for negligence.").

**Wash.**—Scott v. Pacific W. Mountain Resort, 119 Wash. 2d 484, 834 P.2d 6 (1992).

[45] See UCC § 2-719. See also Wassenaar v. Panos, 331 N.W.2d 357 (Wis. 1983).

[46] See Psaty & Fuhrman v. Housing Auth., 76 R.I. 87, 68 A.2d 32 (1949).

[1] See, e.g.:

**U.S.**—United States v. Aetna Casualty. & Sur. Co., 480 F.2d 1095, 1099 (8th Cir. 1973) (holding that a letter reciting full payment by the prime contractor in full settlement of all accounts was a sham and not a full discharge; the court stated that "it is settled and sound law that when two parties execute a written instrument purporting to be a contract when in fact it is not, the purpose being to deceive a third person, the instrument is unenforceable by either of the immediate parties"); Nice Ball Bearing Co. v. Bearing Jobbers, 205 F.2d 841 (7th Cir.), cert. denied, 346 U.S. 911 (1953) (an apparently integrated contract for the sale of stock was held to be a sham and not operative).

**Ariz.**—Arizona Cotton Ginning Co. v. Nichols, 9 Ariz. App. 493, 454 P.2d 163 (1969) (the court held a note was a sham).

**Ill.**—Esser v. Community Consol. Sch. Dist., 335 Ill. App. 199, 81 N.E.2d 270 (1948) (the court gave a contractor judgment for an amount due for labor and materials even though the contractor had executed a release under seal of all claims; the release was executed as a sham to aid the school district in obtaining a subsidy).

**Md.**—Southern St. Ry. Advertising. Co. v. Metropole Shoe Mfg. Co., 91 Md. 61, 46 A. 513 (1900) (in a suit on a document purporting to be a fully executed contract, the court admitted evidence to show that it was executed at the plaintiff's request to be used to induce other parties to make similar contracts; the real agreement was for a smaller amount of advertising and at lower rates, and it made no difference that the writing stated that "[n]o verbal conditions made by agents will be recognized").

**N.J.**—Sampson v. Pierson, 140 N.J. Eq. 524, 55 A.2d 218 (N.J. Ch. 1947), rev'd, 142 N.J. Eq. 24, 59 A.2d 5 (1948). If, in violation of a statute providing for maximum rentals,