UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ENERGY XXI, GoM, LLC § | |
| § | |
| *Plaintiff*, § | |
| § | |
| *vs.* § | Civil Action No. 4:10-cv-00110 |
| § | |
| NEW TECH ENGINEERING, L.P. § | |
| § | |
| *Defendant.* § | |
| § | |

**NEW TECH ENGINEERING, L.P.'S MOTION FOR
CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW New Tech Engineering, L.P. ("New Tech"), defendant and counter-plaintiff herein, and files this Motion for Certification of Order for Interlocutory Appeal. New Tech respectfully asks this Court to certify one question raised in its April 15, 2011 Order (Rec. Doc. 42) for interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). In support thereof, New Tech would respectfully show this Honorable Court the following:

### I. INTRODUCTION

1.1  Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if it presents a "controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." This Court's April 15, 2011 Order (Rec. Doc. 42) raises just such a question—i.e. whether a reciprocal

indemnity agreement between two contracting parties is enforceable under maritime law for claims of gross negligence.[1] As such, New Tech requests that the Court amend its Order to certify this question for interlocutory appeal.

## II. FACTS

2.1 Energy XXI, GoM, LLC ("EXXI") originally filed suit against New Tech for negligence arising out of an alleged incident on a drilling rig that was performing a recompletion operation on the South Timbalier 21, No. 128 oil and gas well (hereinafter "the Well"). (Rec. Doc. 1). New Tech contracted with EXXI to provide an independent consultant to serve as EXXI's company man for this operation. The parties had previously entered into a Master Service Contract ("MSC") which governed the services being provided by New Tech for the Well. The MSC contained reciprocal indemnity provisions whereby the parties agreed to defend, indemnify, and hold each other harmless in certain situations. New Tech's Mot. for Summ. J, Ex. C at § 4 (Rec. Doc. 16). The relevant indemnity provision at issue in this case states as follows:

> ENERGY XXI SHALL BE RESPONSIBLE, AND [NEW TECH] SHALL NEVER BE LIABLE, FOR PROPERTY DAMAGE OF... ENERGY XXI... AND **ENERGY XXI AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS, [NEW TECH], AGAINST ANY AND ALL SUCH CLAIMS, DEMANDS, LOSSES OR SUITS,** (INCLUDING, BUT NOT LIMITED TO, CLAIMS, DEMANDS, OR SUITS FOR PROPERTY DAMAGE...)

---

[1] This is a contract between two sophisticated entities, which entities have chosen to allocate the risk of loss between themselves as an integral component of their contractual relationship. As the Fifth Circuit has never had to address the conduct that is sufficient to overturn such contractual allocations in an admiralty case, we believe that court should determine whether the public policy favoring freedom of contract between these contracting parties should prevail in admiralty as the Texas Supreme Court recently did with respect to Texas state law in Fairfield Ins. Co. v. Stephens Martin Paving, LP, 246 S.W.3d 653 (Tex. 2008). While we acknowledge and respect this Honorable Court's decision, there is a split of decisions on this issue in the district courts within the Fifth Circuit, and it is important to resolve the scope of contractual risk allocation.

> WHICH MAY BE BROUGHT AGAINST [NEW TECH] BY ENERGY XXI... IN ANYWISE ARISING OUT OF OR INCIDENT TO WORK BEING PERFORMED ON OR ABOUT ENERGY XXI'S PROPERTY OR JOBSITE... EVEN THOUGH OCCASIONED, BROUGHT ABOUT, CAUSED BY, ARISING OUT OF OR RESULTING FROM...THE NEGLIGENCE OR STRICT LIABILITY, IN WHOLE OR IN PART, OF [NEW TECH], OR BY OR FROM ANY OTHER MEANS, RELATIONSHIP OR CAUSE, WITHOUT LIMITATION WHATSOEVER.

*Id.* at ¶ 4(F) (emphasis added) (Rec. Doc. 16).

2.2 Accordingly, New Tech filed its counterclaim for breach of contract and a request for declaratory relief that EXXI's claims were barred by this indemnity provision in the MSC. (Rec. Doc. 6). EXXI then filed its First Amended Complaint adding claims for gross negligence and breach of contract arising from the same incident. Following some discovery, New Tech filed its Motion for Summary Judgment on its counterclaim seeking dismissal of all of EXXI's claims. (Rec. Doc. 16). EXXI responded by arguing that the indemnity provision in paragraph 4(F) of the MSC was not broad enough to include claims for breach of contract and gross negligence. (Rec. Doc. 20). EXXI also argued that the indemnity provision could not apply its gross negligence claim as a matter of public policy. *Id.*

2.3 The Court ruled on the motion in its April 15, 2011 Order holding that New Tech was entitled to indemnity under the MSC for EXXI's negligence and breach of contract claims. Order at 14–19 (Rec. Doc. 42). The Court also found that the language of the indemnity provision was broad enough to include EXXI's claim for gross negligence. *Id.* at 20–21 (Rec. Doc. 42). However, the Court ruled that maritime law precludes

3

enforcement of the indemnity provision a matter of public policy to the extent that the provision covers claims for gross negligence. *Id*. at 21–24 (Rec. Doc. 42).

2.4     New Tech now requests that the Court certify for interlocutory appeal the question of whether two contracting parties may agree to indemnify each other for claims of gross negligence under maritime law. The only remaining claim in this case is EXXI's claim for gross negligence, thus making this question dispositive of the entire case. New Tech does not seek to delay this lawsuit, but only have this purely legal question decided without the need of going through an extended, costly trial.

### III.     ARGUMENT AND AUTHORITIES

3.1     An order is subject to certification if the trial court determines (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion as to that issue; and (3) immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991); *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702 (5th Cir. 1961) (noting that "[t]he statute was framed in broad language"). The Federal Rules of Appellate Procedure permit the Court, at any time before final judgment, to "amend its order, either on its own or in response to a party's motion, to include the required permission or statement" for certification. FED. R. APP. P. 5(a)(3) [(1)]; *see also Aparcio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. 1981). As shown below, all three requirements are satisfied here.

4

A.  **Controlling Issue of Law and Material Advancement of Termination of Litigation**

3.2    The first and third requirements for certification are easily met in this case. An issue of law is controlling, and thus proper for certification, if it involves a pure issue of law and not merely the application of law to fact. *See, e.g., Clark-Dietz & Assocs. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) ("[F]act-review questions" are "inappropriate for § 1292(b) review"); *Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000) ("because it was an abstract issue of law, it was suitable for determination by an appellate court without a trial record"); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("To summarize, § 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); *Smith v. AET Inc., Ltd.*, 2007 U.S. Dist. LEXIS 40691, at *6 (S.D. Tex. 2007) ("The arguments set forth in regard to both appealed orders are heavily fact-based and necessarily involve a review of the factual record. Accordingly, these orders are not appropriate for interlocutory review under the standard set forth in 28 U.S.C. § 1292(b)").

3.3    Further, whether an issue of law is controlling generally hinges upon its potential to have some impact on the course of the litigation. *Ryan v. Flowserve*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006). Courts have found issues to be controlling if reversal of the district court's holding would result in dismissal of the action. *Id*. But the result of dismissal is not necessary to justify § 1292(b) certification. All that must be

5

shown in order for a question to be "controlling" is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court. *Castano v. Am. Tobacco.*, 162 F.R.D. 112, 115 (E.D. La. 1995).

3.4     Whether the indemnity provision in the MSC is enforceable as to EXXI's gross negligence claim is undoubtedly a controlling legal question that is dispositive of this entire case. The Court held that the indemnity provision in paragraph 4(F) of the MSC was unenforceable as to claims for gross negligence because of public policy reasons. This determination was not premised upon an interpretation of the contract or analysis of any of the facts particular to this case. It was a purely legal determination, which can be heard on interlocutory appeal.

3.5     Further, if the Fifth Circuit determines that this legal determination was incorrect, then it would resolve the entire case. EXXI's gross negligence claim is the only remaining claim in this lawsuit and the Court has already ruled that the MSC's indemnity provision is broad enough to include claims for gross negligence. Thus, if indemnity for gross negligence is not against public policy under maritime law, then EXXI's remaining claim must be dismissed. Accordingly, there is no real dispute that these two requirements under Section 1292(b) are met in this case. A decision by the Fifth Circuit in favor of New Tech would result in a saving of the judicial resources of a full trial on the merits of the only remaining claim.

**B.     Substantial Ground for Difference of Opinion**

3.6     Under section 1292(b), there is substantial ground for difference of opinion when the authority on a point of law is in conflict, or when there is a "relative lack of

6

authority on the precise question." *In re Prudential Lines, Inc.*, Nos. 93 Civ. 1481 (CSH), 93 Civ. 7164 (CSH), 1995 U.S. Dist. LEXIS 2056, at *1 (S.D.N.Y. Feb. 22, 1995). Substantial grounds for a difference of opinion also arise when an issue involves one or more difficult and pivotal questions of law not settled by controlling authority. *Nat'l Union Fire Ins. Co. v. Ready Pac Foods, Inc.*, No. 09-3220 RSWL, 2011 U.S. Dist. LEXIS 28765, at *10 (citing 28 U.S.C. § 1292(b)). In the present case there is both a relative lack of authority on the precise question, and the authority that exists is in conflict.

3.7 Whether maritime law allows contracting parties to indemnify each other for gross negligence is an issue that has not been directly addressed by the Fifth Circuit and that has divided the district courts. There is dictum from the Fifth Circuit concerning unilateral exemptions from liability in maritime contracts, but that dictum is not applicable to situations, as in this case, concerning reciprocal indemnity clauses. The district courts dealing with this specific issue are divided, necessitating guidance from the Fifth Circuit.

3.8 The first Fifth Circuit case touching on the issue, which this Court relied upon in its Order, is *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982). In that case, the Fifth Circuit made a statement in dictum concerning the standard for "[g]ross negligence, which will invalidate an exemption from liability." *Id.* at 411. The court's actual holding was that there was insufficient evidence to support the district court's finding of gross negligence so that the contractual exemption was valid. The Ninth Circuit later summarized: "No court of appeals has held an exculpatory clause in a

7

maritime contract inapplicable to gross negligence. The First and Fifth Circuits have indicated that exculpatory clauses do not cover gross negligence, but concluded that such conduct had not been established in the particular cases." *Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) (citing *Todd Shipyards*). More importantly, the dictum in *Todd Shipyards* dealt with a unilateral exculpatory clause that limited one party's liability for negligence or breach of contract to a certain amount of damages. *Todd Shipyards*, 674 F.2d at 409. The dictum did not apply to the issue of reciprocal indemnity agreements.

3.9     The *Todd Shipyards* case also involved indemnity claims. The district court in *Todd Shipyards* initially held that the contractual limitation of $300,000 in Todd's contract with the plaintiff vessel owner "was ineffective because Todd was guilty of gross negligence." *Todd Shipyards*, 674 F.2d at 410. Despite its finding that Todd was guilty of gross negligence that rendered its contractual limitation of liability ineffective, however, the district court awarded Todd full indemnity from its contractor, Turbine Service, and its subcontractor, Gonzales Manufacturing & Industrial Machine Works. *Id.* at 416, 417. Thus, the district court did not consider its finding of gross negligence to be a bar to an award of indemnity to Todd from Todd's contractor and subcontractor.

3.10    The other cases cited by the Court in its Order concern exculpatory clauses or limitation of liability clauses, and not reciprocal indemnity agreements. *See Agip Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, 920 F. Supp. 1330, 1341 (S.D. Tex. 1996) (holding that exculpatory clause limiting consequential damages could not limit liability for gross negligence); *Royal Ins. Co.*, 194 F.3d at 1016 (holding unilateral

8

exculpatory clauses could not be used by a party to "shield itself contractually from liability for gross negligence"); *La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc.*, 124 F.3d 10, 19 (1st Cir. 1997) (noting that a red letter exculpatory clause may not limit liability for gross negligence under maritime law). All of these cases cite to the dictum in *Todd Shipyards* to support their holdings.

    3.11    Like the district court in *Todd Shipyards*, cases dealing with actual indemnity agreements, and not merely exculpatory clauses, support the position that such agreements are enforceable under maritime law. First, Judge Sim Lake, in adopting the magistrate judge's opinion, held that an indemnity agreement requiring indemnification for damages caused by gross negligence was enforceable for claims of reckless conduct. *In re Horizon Vessels Inc.*, No. H-03-3280, 2005 U.S. Dist. LEXIS 42110, at *34 (S.D. Tex. Nov. 18, 2005), *opinion adopted as* modified, 2005 U.S. Dist. Lexis 42117 (S.D. Tex. Dec. 22, 2005).

    3.12    Second, other courts dealing with the issue of indemnity for gross negligence have indicated that such clauses are enforceable if the clause is broad enough to include claims for gross negligence. The federal district court for the Eastern District of Louisiana has repeatedly held that an indemnity provision did not apply to claims for gross negligence because the provision was silent on the issue of gross negligence. *In re TT Boat Corp.*, No. Civ. A 98-0494, 98-1109, 1999 U.S. Dist. LEXIS 21025 (E.D. La. Sept. 10, 1999); *In re Torch, Inc.*, No. 94-2300, 95-1982, 1996 U.S. Dist. LEXIS 5053 (E.D. La. April 16, 1996); *Ruehs v. Alliance Offshore*, C.A. No. 05-6360, 2007 AMC 275, 2007 U.S. Dist. Lexis 5828 (E.D. La. Jan. 26, 2007). None of these cases stated that

9

maritime law would prohibit indemnity for gross negligence. This comports with the general maritime principal that "[a] duty to indemnify in a given situation will exist if the parties' intention for a particular indemnification can reasonably be inferred from the language of a contract . . . ." *East v. Premier, Inc.*, 98 Fed. App'x 317, 320 (5th Cir. 2004).

3.13 This Court has already held that the indemnity clause in the MSC is broad enough to include gross negligence, and that only public policy prevents the clause from applying to EXXI's claim for gross negligence in this case. The Court's holding conflicts with the district court decision in *Todd Shipyards,* the *In re Horizon* decision from this district, as well as the series of cases from the Eastern District of Louisiana. There is also no binding authority from the Fifth Circuit on this particular issue. For these reasons, New Tech believes there is a sufficient basis to certify the specific issue of whether reciprocal indemnity agreements covering claims for gross negligence are enforceable under maritime law.

## IV. PRAYER

WHEREFORE PREMISES CONSIDERED, Defendant and Counter-Plaintiff, New Tech Engineering, L.P., respectfully requests that this Honorable Court amend its Order (Rec. Doc. 42) and enter findings pursuant to 28 U.S.C. § 1292(b) that there is a controlling question of law, that there is substantial ground for a difference of opinion regarding the question, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Respectfully submitted,

BROWN SIMS, P.C.

By:  /s/ Robert M. Browning
    Robert M. Browning
    Texas Bar No. 00796264
    Southern District Id. 21097
    Kenneth G. Engerrand
    Texas Bar No. 06619500
    Southern District Id. 2078
    1177 West Loop South, Tenth Floor
    Houston, Texas 77027-9007
    (713) 629-1580
    (713) 629-5027  (Telecopier)

*ATTORNEY IN CHARGE FOR DEFENDANT AND COUNTER-PLAINTIFF NEW TECH ENGINEERING, L.P.*

OF COUNSEL

BROWN SIMS, P.C.
Ryan T. Kinder
Texas Bar No. 24065560
Southern District I.D. 1199303
1177 West Loop South, Tenth Floor
Houston, Texas 77027-9007
(713) 629-1580
(713) 629-5027  (Telecopier)

## CERTIFICATE OF CONFERENCE

I certify that Energy XXI, GoM, LLC is opposed to this Motion.

## CERTIFICATE OF SERVICE

I certify that on October 13, 2011, all counsel of record were served with New Tech Engineering, L.P.'s Motion for Certification of Order for Interlocutory Appeal through the Court's CM/ECF system under Local Rule CV-5(a)(3).

                                               /s/ Robert M. Browning
                                                 Robert M. Browning