In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

NEIL CRAMOND          April 25, 2011     THU BUI, CCR, RPR

                                                          Page 1

                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


        IN RE:  OIL SPILL      )     MDL NO. 2179
        by the OIL RIG,        )
        DEEPWATER HORIZON in   )     SECTION "J"
        the GULF OF MEXICO,    )
        April 20, 2010         )     JUDGE BARBIER
                               )
                               )     MAG.  JUDGE
                               )     SHUSHAN




                Deposition of NEIL CRAMOND,
        taken at Pan-American Building, 601 Poydras
        Street, 11th Floor, New Orleans, Louisiana,
        70130, on the 25th of April, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters    Facsimile:(504) 525-9109

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                                    Reported by:

NEIL CRAMOND              April 25, 2011        THU BUI, CCR, RPR

Page 198

21    A.   So a number of the findings were
22  verified by the audit assessment team in
23  September.  A number of the findings were
24  verified by wellsite leaders at the end of
25  September.  There was a follow-up visit by

Page 199

1   Mr. Rodriguez in October and there was a
2   follow-up visit by Mr. Rodriguez in
3   March 2010.  It was believed that that was
4   sufficient to progress -- progress
5   verification of the finding.
6       Q.   As you sit here today, do you
7   still believe that to be sufficient?
8         MR. COLLIER:
9            Object to form.
10      A.   I'm not aware that there were
11  any items from the assessment that were
12  outstanding and that were related directly
13  to the incident on April the 20th.

Page 200

Page 201

51 (Pages 198 to 201)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters   Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

NEIL CRAMOND          April 25, 2011     THU BUI, CCR, RPR

Page 290

18     Q.          At any point in
19   time, from September of 2009 through April
20   of 2010, did you ever have the opportunity,
21   or did a situation ever arise where you had
22   to directly advise any of these individuals
23   that you reported to, of any safety
24   concerns concerning the HORIZON?
25     A.   No.

Page 291

Page 292

Page 293

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters   Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010
Reported by:

NEIL CRAMOND          April 25, 2011       THU BUI, CCR, RPR

Page 294

Page 296

Page 295

Page 297

14    Q.   All right.  In this instance, do
15   you feel as though that the September of
16   2009 audit of the DEEPWATER HORIZON was
17   indeed thorough?
18        MR. COLLIER:
19          Object to form.
20    A.   I would describe it as thorough,
21   from a number of perspectives in terms of
22   the assessment team did a thorough job in
23   terms of performing the assessment.  And
24   the assessment protocol is a thorough
25   protocol as prescribed by the industry.

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile:(504) 525-9109

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

NEIL CRAMOND          April 25, 2011       THU BUI, CCR, RPR



Page 302

6     Q.   All right.  And ultimately there
7   was a meeting, I believe, you testified
8   earlier to in September, on the 22nd of
9   September, where you reached the conclusion
10   at that point that the mitigation fact --
11   the mitigation plan had been put in place
12   and the conditions were rectified, correct?
13      A.   Correct.
14      Q.   All right.  And at that point,
15   you felt that the DEEPWATER HORIZON did not
16   pose a marine safety risk from the
17   standpoint of BP; is that correct?
18      A.   It did not pose an unacceptable
19   marine risk, correct.
20      Q.   All right.  If it did pose any
21   marine safety risk at that point on
22   September 22nd of 2009, you would not have
23   released the rig to return to service; is
24   that a correct statement?
25      A.   That is correct.

Page 303

Page 304

Page 305

77 (Pages 302 to 305)

601 Poydras Street, Suite 1720
New Orleans, LA 70130-6029
GAUDET KAISER, L.L.C.
Board-Certified Court Reporters
Telephone: (504) 525-9100
Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

NEIL CRAMOND        April 25, 2011      THU BUI, CCR, RPR



Page 310

Page 312

Page 311

Page 313

```
12      Q.            There was also some
13  questioning earlier implying, perhaps, that
14  one or two or three physical visits or
15  actual visits to the rig to check on the
16  progress were maybe insufficient for one
17  reason or another, and I think you -- you
18  disputed or disagreed with that assertion;
19  is that correct?
20      A.   Again, I believe the
21  verification process was -- was full and
22  complete.  There was ongoing dialogue
23  between Mr. Rodriguez and the different
24  accountable parties, both onshore and
25  offshore.  Mr. Rodriguez was given
```

79 (Pages 310 to 313)

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

NEIL CRAMOND          April 25, 2011       THU BUI, CCR, RPR

Page 314

1    authority to initiate a visit whenever he
2    felt it was required as part of the
3    process.
4        Q.   And during that period of time,
5    at any point in time from September of '09
6    through April of 2010, if you did not feel
7    like progress was being made or these
8    issues were being rectified to your
9    satisfaction and BP's satisfaction, you had
10   the ultimate authority to suspend
11   operations on that rig, correct?
12       A.   Correct.
13       Q.   And that was not done?
14       A.   There was no information that
15   would lead me towards being required to
16   take that action.



601 Poydras Street, Suite 1720  GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters    Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

NEIL CRAMOND            April 25, 2011        THU BUI, CCR, RPR



Page 318

Page 320

Page 319

4      Q.          As of February 22nd
5   of 2010, did you or BP have any concerns
6   from a marine standpoint that the DEEPWATER
7   HORIZON was posing a safety risk?
8          MR. COLLIER:
9              Object to form.
10     A.   I was not aware of any
11  conditions that would give rise to concern.
12     Q.   Did you have any concerns at any
13  of the corrective actions, so to speak,
14  that needed to be taken from a marine
15  integrity standpoint were not progressing
16  within the time frame that you expected?
17     A.   As the e-mail would indicate, if
18  there would seem to be progressing in a
19  timely manner.

Page 321

22     Q.          Were you aware --
23  well, first of all, you approved his visit
24  out to the rig on March 29th and 30th of
25  2010; did you not?

81 (Pages 318 to 321)

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

NEIL CRAMOND          April 25, 2011          THU BUI, CCR, RPR



Page 322

1     A.   Correct.
2     Q.   All right.  So you're aware he
3  went -- that he went out there, correct?
4     A.   Correct.
5     Q.   All right.  When he returned,
6  was there a meeting that took place between
7  you and him and/or Mr. Endicott as to what
8  his findings and conclusions were after the
9  rig visit?
10     A.   I did not progress a meeting of
11  that nature.
12     Q.   Okay.  Were you -- isn't it true
13  that after that trip to the rig, you were
14  not made aware of any pending safety issues
15  from a marine standpoint that had not been
16  rectified; is that correct?
17     A.   That's correct.

Page 324

23     Q.          Is it -- is it fair to
24  say, Mr. Cramond, that -- that within your
25  job responsibilities and duties as the Gulf

Page 323

Page 325

1  of Mexico marine authority, you were not
2  hesitant or reluctant to impose a safety
3  stand-down if the circumstances warranted
4  it?
5     A.   I think that's an accurate
6  statement.
7     Q.   All right.  And at no point in
8  time, from September of 2009 up until
9  April 20th of 2010, were you provided any
10  information that would have caused you to
11  even consider a safety stand-down on the
12  HORIZON.  Is that correct?
13     MR. CHAKERES:
14          Object to form.
15     A.   I have no information that would
16  lead me to take that cause of action.
17     Q.   All right.  And in these other
18  situations, information was provided to you
19  through the normal course of business of BP
20  through audits or incident reportings that
21  brought those situations to your attention,
22  correct?
23     A.   Correct.
24     Q.   You would fully expect it if
25  there was a safety concern involving marine

82 (Pages 322 to 325)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                    Reported by:
NEIL CRAMOND              April 25, 2011      THU BUI, CCR, RPR



Page 326

1   integrity or marine safety aboard the
2   HORIZON, that that information would have
3   been provided to you as the Gulf of Mexico
4   marine authority, would you not?
5        MR. COLLIER:
6            Object to form.
7        MR. CHAKERES:
8            Object to form.
9   Q.   You would, correct?
10  A.   I would.

Page 328

Page 327

Page 329

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile:(504) 525-9109

95bbb54a-98f5-4167-a6a6-2fa3405100ac

GAUDET KAISER, L.L.C.
601 Poydras Street, Suite 1720          New Orleans, Louisiana 70130
Phone: (504) 525-9100          Fax: (504) 525-9109
BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE

I, **NEIL CRAMOND,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

24ᵀᴴ June 2011                    NC

(Date  Signed)                    (Signature)


NC Signed  with  corrections  as  attached.

_____  Signed  with  no  corrections  noted.

BRENDALYN J. HALL
My Commission Expires
August 24, 2014

Brendalyn J Hall
June 24, 2011

11745 Bricksome Avenue, Suite A-4          PHONE  (225) 291-3411
Baton Rouge, Louisiana 70816          FAX  (225) 291-7990
263 W. Causeway Approach          PHONE  (504) 525-9100
Mandeville, Louisiana 70448          FAX  (504) 525-9109

RECEIVED 06/28/11

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    )  MDL NO. 2179
BY THE OIL RIG      )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010   )  JUDGE BARBIER
       )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1 of 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of KEITH DAIGLE, taken
at Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
July 19, 2011.

**2**

```
 1             A P P E A R A N C E S
 2   APPEARING FOR MDL PLAINTIFFS:
 3       Mr. Conrad S.P. (Duke) Williams, III
         Mr. J. Christopher Zainey, Jr.
         WILLIAMS LAW GROUP, LLC
 4       909 Poydras Street, Suite 1650
         New Orleans, Louisiana  70112
 5
 6   APPEARING FOR THE UNITED STATES:
 7       Mr. Matthew Z. Leopold
         U.S. DEPARTMENT OF JUSTICE
 8       ENVIRONMENTAL & NATURAL
         RESOURCES DIVISION
         ATTORNEY ADVISOR, LAW AND POLICY
 9       SECTION
10       950 Pennsylvania Avenue, N.W.,
           Room 2616
11       Washington, D.C.  20530
12   APPEARING FOR THE STATE OF LOUISIANA:
13       Mr. Lambert J. "Joe" Hassinger, Jr.
         GALLOWAY, JOHNSON, TOMPKINS, BURR
14       AND SMITH
         701 Poydras Street, 40th Floor
15       New Orleans, Louisiana  70139
16   APPEARING FOR THE WITNESS:
17       Mr. Jim E. Lavine
         ZIMMERMANN, LAVINE, ZIMMERMANN &
18         SAMPSON, P.C.
         770 South Post Oak Lane, Suite 620
         Houston, Texas  77056
19
20   APPEARING FOR BP, INC.:
21       Mr. Chadwick Morriss
         Ms. Kimberly Branscome
22       COVINGTON & BURLING
         1201 Pennsylvania Avenue, Northwest
23       Washington, D.C.  20004-2401
24       Mr. Haris Hadzimuratovic
         KIRKLAND & ELLIS
25       300 North LaSalle
         Chicago, Illinois  60654
```

**3**

```
 1   APPEARING FOR TRANSOCEAN:
         Mr. Richard J. Hymel
 2       Mr. M. Benjamin Alexander
         PREIS & ROY
 3       Versailles Centre, Suite 400
         102 Versailles Boulevard
 4       Lafayette, Louisiana 70501
 5
       APPEARING FOR ANADARKO PETROLEUM COMPANY:
 6       Mr. Peter C. Neger
         Mr. Brandyne S. Warren
 7       BINGHAM MCCUTCHEN
         399 Park Avenue
 8       New York, New York 10022-4689
 9
       APPEARING FOR HALLIBURTON:
10       Ms. Aimee L. Williams
         Ms. Laci M. Dreher
11       GODWIN RONQUILLO
         1201 Elm Street, Suite 1700
12       Dallas, Texas 75270-2041
13
       APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
14       Ms. Kathleen A. Gallagher
         BECK, REDDEN & SECREST
15       One Houston Center
         1221 McKinney  Street, Suite 4500
16       Houston, Texas  77010-2010
17
       APPEARING FOR WEATHERFORD:
18       Mr. Gary Russo
         JONES, WALKER, WAECHTER, POITEVENT,
19         CARRERE & DENEGRE, LLP
         600 Jefferson Street, Suite 1600
20       Lafayette, Louisiana 70501
21       Ms. Sara C. Valentine
         JONES, WALKER, WAECHTER, POITEVENT,
         CARRERE & DENEGRE, LLP
22       201 St. Charles Avenue
23       New Orleans, Louisiana  70170-5100
24
25
```

**4**

```
 1   APPEARING FOR DRIL-QUIP, INC.:
         Ms. Margaret Bryant
 2       WARE, JACKSON, LEE & CHAMBERS
         America Tower, 42nd Floor
 3       2929 Allen Parkway
         Houston, Texas  77019-7101
 4
 5   APPEARING FOR M-I SWACO:
         Mr. W. Brad Nes
 6       MORGAN, LEWIS & BOCKIUS, LLP
         1111 Pennsylvania Avenue, NW
 7       Washington, D.C.  20004
 8
 9   APPEARING FOR RONALD W. SEPULVADO:
         Mr. Ralph S. Whalen, Jr.
10       1100 Poydras Street, Suite 2950
         New Orleans, Louisiana  70163-1133
11
       ALSO PRESENT:
12       Mr. James Deel, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



18      Have you ever been
aboard the HORIZON?
19      A.    Yes, sir.
20      Q.    Okay.  How many times?
21      A.    I'd say between four and six
times in my career.
22      Q.    And in the last year before
24  April 20, 2010?
25      A.    Two times in -- in 2009.

**PURSUANT TO CONFIDENTIALITY ORDER**

213

```
:32   1      Q.    When you went aboard the
:37   2   HORIZON, did -- did you get to know any of
:40   3   the workers -- the Transocean workers aboard
:43   4   the HORIZON?
:49   5      A.    Yes, I met -- I met several of
:45   6   them, yes, sir.
:48   7      Q.    And who were they?
:48   8      A.    Ricky Ezell, Jason Anderson,
:49   9   Dewey, the captain, Jimmy -- Jimmy Harrell.
:50  10   There's a few others.  I just can't think of
:53  11   their names.
:53  12      Q.    And --
:54  13      A.    It's --
:54  14      Q.    -- in your work at BP, did you
:56  15   get to know any of the Transocean employees
:59  16   in the Houston office who worked with the
:00  17   HORIZON?
:01  18      A.    Yes, over the years I -- I met
:04  19   Jon Keeton --
:06  20      Q.    Okay.
:08  21      A.    -- Paul Johnston, yeah.
:08  22      Q.    Okay.  Now, the individuals we
:19  23   just discussed, the individuals on the rig as
:19  24   well as the individuals on land who were
:22  25   involved with the HORIZON, did you ever
```

215

```
 1      Q.    Okay.  There's an e-mail from
 2   Mr. Guide going to you and Mr. Cocales.  And
 3   Mr. Guide writes, "See below, Norman" -- and
 4   that -- I believe that's Norman Wong --
 5   throwing DW HORIZON under the bus."
 6          And that was the e-mail
 7   Mr. Guide sent to you?
 8      A.    Yes, sir.
 9      Q.    And your response to him was
10   what?
11      A.    Do you want me to read it?
12      Q.    Sure.
13      A.    Yes, sir.  "Yea, I thought the
14   same thing last night when I read this.
15   Everybody wants to take a shot" at "the
16   leader at one time or another eh."
17      Q.    Okay.  And you say, "Everybody
18   wants to take a shot" at "the leader at one
19   time or the other -- or another eh," the
20   leader, you're referring to the DEEPWATER
21   HORIZON?
22      A.    That's correct.
23      Q.    Okay.  And what did you mean
24   when you said "leader"?
25      A.    DEEPWATER HORIZON was a -- was
```

214

```
:23   1   experience any indication that any of those
:26   2   Transocean employees were indifferent or
:29   3   callous toward the safety of individuals
:35   4   or -- or the environment?
:32   5      A.    No, sir.
      6
```



```
     15      Q.    Okay.  Now, when you were aboard
     16   the HORIZON, did you have any concerns about
     17   the safety of the HORIZON?
     18      A.    No, I did not.
```

216

```
 1   a -- good-performing rig and -- and -- and a
 2   very safety-oriented rig.  So kind of I
 3   always thought it was one of the leaders of
 4   the pack.
```

**PURSUANT TO CONFIDENTIALITY ORDER**



217

```
2       Q.    Okay.  Turn to Tab 17, please.
3   Tab 17 is a series of e-mails that's Bates
4   No. BP-HZN-2179MDL02486517.  And there's one
5   e-mail in the middle of the page from you to
6   George Gray and Mr. Sankar.
7           Can you take a look at that
8   e-mail?
9       A.    Yes, sir.
10      Q.    Okay.  You've seen that?
11      A.    Yes, sir.
12      Q.    There's a statement down towards
13  the end of that e-mail.  And it states, "If
14  we would honor everyone's request to go to
15  the HORIZON, then we would not have many
16  folks to work most of the other operations."
17          Is that what you said?
18      A.    Yes, sir, it's what I said.
19      Q.    And what did you mean by that,
20  when you said "honor everyone's request to go
21  to the HORIZON"?  Who's "everyone"?
22      A.    Other well site leaders.
23      Q.    Okay.  My interpretation of
24  reading this e-mail is that the well site
25  leaders wanted to be assigned to the HORIZON.
```

218

```
1       Is that a correct interpretation of what you
2   were saying?
3       A.    Yes, sir.
```

219

220

**PURSUANT TO CONFIDENTIALITY ORDER**

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      ) MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN   ) SECTION "J"
THE GULF OF MEXICO, ON   )
APRIL 20, 2010        ) JUDGE BARBIER
                      ) MAG. JUDGE SHUSHAN

*********************
VOLUME 2
*********************

Deposition of MIKE DALY, taken at Kirkland &
Ellis International, 30 St. Mary Axe, 22nd Floor,
London EC3A 8AF, England, United Kingdom, on the
22nd of September, 2011.

**Page 2**

1        A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
    Mr. Scott Summy
    BARON & BUDD, P.C.
4   3102 Oak Lawn Avenue, Suite 1100
    Dallas, Texas 75219
5
    Mr. Ervin A. Gonzalez
6   Mr. Geoff J. Keiser
    COLSON, HICKS EIDSON
7   600 Carondelet Street, Rm 810
    New Orleans, Lousiana 70130
8
9   APPEARING FOR BP, INC.:
10  Mr. Michael Brock
    COVINGTON & BURLING
11  1201 Pennsylvania Avenue, Northwest
    Washington, D.C. 20004-2401
12  Ms. Hariklia "Carrie" Karis
    KIRKLAND & ELLIS
13  300 North LaSalle
    Chicago, Illinois 60654
14
15  APPEARING FOR THE WITNESS, MIKE DALY:
    Mr. David C. Esseks
16  Ms. LaToya Edwards
    ALLEN & OVERY, LLP
17  1221 Avenue of the Americas
    New York, New York 10020
18
19  APPEARING FOR TRANSOCEAN:
20  Mr. Daniel Johnson
    Ms. Stephany LeGrand
21  SUTHERLAND ASBILL & BRENNAN
    1001 Fannin, Suite 3700
    Houston, Texas  77002-6760
22
23  APPEARING FOR ANADARKO PETROLEUM COMPANY:
    Mr. Tony Forte
24  BINGHAM MCCUTCHEN
    399 Park Avenue
25  New York, New York 10022-4689

**Page 3**

1   Warren Anthony Fitch
    BINGHAM MCCUTCHEN
2   2020 K Street, Northwest
    Washington, D.C. 20006-1806
3
4   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
    Mr. Thomas Ganucheau
5   BECK, REDDEN & SECREST
    One Houston Center
6   1221 McKinney Street, Suite 4500
    Houston, Texas  77010-2010
7
8   APPEARING FOR WEATHERFORD:
    Mr. Joseph L. Lowenthal, Jr.
9   JONES, WALKER, WAECHTER, POITEVENT,
      CARRERE & DENEGRE, LLP
10  201 St. Charles Avenue
    New Orleans, Louisiana 70170
11
12  APPEARING FOR M-I SWACO:
    Mr. John C. Funderburk
13  MORGAN, LEWIS & BOCKIUS, LLP
    1000 Louisiana Street, Suite 4000
14  Houston, Texas 77002-5006
15
16  APPEARING FOR HALLIBURTON:
    Mr. Donald E. Godwin
    Ms. Stefanie K. Major
17  Mr. James E. Johanns
    GODWIN RONQUILLO
18  1331 Lamar, Suite 1665
    Houston, Texas  77010-3133
19
20  APPEARING FOR DRIL-QUIP, INC.:
    Mr. C. Dennis Barrow, Jr.
21  WARE, JACKSON, LEE & CHAMBERS
    America Tower, 42nd Floor
22  2929 Allen Parkway
    Houston, Texas  77019-7101
23
24  APPEARING FOR THE UNITED STATES:
    Mr. A. Nathaniel Chakeres
25  U.S. DEPARTMENT OF JUSTICE
    ENVIRONMENTAL & NATURAL

**Page 4**

1   RESOURCES DIVISION
    601 D Street, N.W.
2   Washington, D.C. 20004
3   Ms. Malinda Lawrence
    U.S. DEPARTMENT OF JUSTICE
4   TORT BRANCH, CIVIL DIVISION
    1425 New York Avenue, N.W.
5   Suite 10100
    Washington, D.C. 20005
6   Post Office Box 14271
    Washington, D.C. 20044-4271
7
8   APPEARING FOR THE STATE OF LOUISIANA:
9   Mr. Douglas R. Kraus
    KANNER & WHITELEY
    701 Camp Street
10  New Orleans, Louisiana 70130-3504
11  Mr. Michael Keller
    Assistant Attorney General
12  Litigation Division
    LOUISIANA DEPARTMENT OF JUSTICE
13  400 Poydras Street, Suite 1600
    New Orleans, Louisiana 70130-3220
14
15  APPEARING FOR MOEX:
    Mr. Jack Reynolds
16  PILLSBURY WINTHROP SHAW PITTMAN
    2 Houston Center
17  909 Fannin, Suite 2000
    Houston, Texas  77010-1018
18
19  ALSO PRESENT:
    Mr. Peter Jennings, videographer
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



9

5    Q.  Okay.  I gather, then, from your
6  responses, you're not aware of -- of anyone at
7  TransOcean acting in a manner that reflected a
8  willful disregard for the environment.  Would that
9  be accurate?
10    A.  I'm not aware of such a thing, no.
11    Q.  Okay.  And the same would -- would --
12  would be true with respect to the safety of other
13  human beings.  You've never -- you're not aware of
14  anyone at TransOcean acting in a way that's in
15  disregard for the safety of other humans; is that
16  accurate?
17    A.  I think that's true, yes.  I'm not aware
18  of it.

10

11

21    Q.  Had the DEEPWATER HORIZON drilled any of
22  your prospect wells prior to the Macondo Well that
23  you were -- that you can recall?
24    A.  Yes, I believe so.
25    Q.  And based on those experience, there was

12

1  nothing that concerned you or gave you any
2  hesitation about using the DEEPWATER HORIZON to
3  finish the Macondo Well; is that fair?
4    A.  That's, yeah, fair to say, yes.
5    Q.  Okay.  And no one ever reported any
6  concerns to you about the DEEPWATER HORIZON and
7  its use on the Macondo Well; is that true?
8    A.  That's correct.

3  (Pages 9 to 12)

**PURSUANT TO CONFIDENTIALITY ORDER**



13

1

3 ¹

14

15

Well, and irrespective of whether
it's appropriate or not, I just wanted to make
sure that in receiving these weekly drilling
reports --

23
24
25

16

1    A. Uh-huh.
2    Q. -- that you can't recall, as you sit here
3  today, any report that contained any criticism of
4  the DEEPWATER HORIZON or its crew.
5    A. No.
6    Q. Is that right?
7    A. That's correct, yeah.

4 (Pages 13 to 16)

**PURSUANT TO CONFIDENTIALITY ORDER**



53

54

55

```
 5          With respect to the
"previous kicks" that are referenced here, this
 6   report indicates that the TransOcean crews, quote,
 7   "safely managed the previous kicks"; is that
 8   correct, sir?
 9       A. That's what it says, yeah.
10       Q. And you have no reason, as you sit here
11   today, to disagree with that; is that fair?
12       A. I have no reason to agree or disagree with
13   it.
14       Q. Okay.  The -- the last bullet point also
15   cites "multiple loss circulation events during the
16   drilling of the well."  Do you see that?
17       A. I do.
18       Q. And the report reflects that these events
19   were managed effectively by the TransOcean crew;
20   is that correct?
21       A. It says that they were managed effectively
22   by the rig crews, yeah.
23       Q. You understand that to mean the TransOcean
24   rig crew, right?
25       A. I understand it was a TransOcean rig.
```

56

```
 1       Q. And you have no reason, as you sit here
 2   today, to disagree with that?
 3       A. I don't.
```

14  (Pages 53 to 56)

**PURSUANT TO CONFIDENTIALITY ORDER**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL        )   MDL NO. 2179
BY THE OIL RIG          )
"DEEPWATER HORIZON" IN  )   SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010          )   JUDGE BARBIER
                        )   MAG. JUDGE SHUSHAN


*****************
VOLUME 1
*****************


Deposition of Scherie Douglas, taken at
the Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
11th day of October, 2011.

2

1       A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
        Mr. William W. Dills
4       WILLIAMSON & RUSNAK
        4310 Yoakum Boulevard
5       Houston, Texas  77006-5818
6       Mr. Guy E. Matthews
        MATTHEWS, LASON & JOHNSON
7       200 Bering Drive, Suite 700
        Houston, Texas  77057-3778
8
9   APPEARING FOR BP, INC.:
        Mr. Frank M. Holozubiec
10      KIRKLAND & ELLIS
        Citigroup Center
11      153 East 53rd Street
        New York, New York  10022-4611
12
        Ms. Catherine E. Stahl
13      KIRKLAND & ELLIS
        300 North LaSalle
14      Chicago, Illinois  60654
15
    APPEARING FOR TRANSOCEAN:
16      Mr. Paul C. Thibodeaux
        FRILOT
17      1100 Poydras Street, Suite 3600
        New Orleans, Louisiana  70163
18
        Mr. M. Benjamin Alexander
19      PREIS & ROY
        Versailles Centre, Suite 400
20      102 Versailles Boulevard
        Lafayette, Louisiana  70501
21
22  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Mr. Matthew I. Kliegman
23      BINGHAM MCCUTCHEN
        399 Park Avenue
24      New York, New York 10022-4689
25

3

1   APPEARING FOR MOEX:
        Ms. Catherine C. McCulley
2       PILLSBURY WINTHROP SHAW PITTMAN
        2 Houston Center
3       909 Fannin, Suite 2000
        Houston, Texas  77010-1018
4
5   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
        Mr. Geoff Gannaway
6       BECK, REDDEN & SECREST
        One Houston Center
7       1221 McKinney Street, Suite 4500
        Houston, Texas  77010-2010
8
9   APPEARING FOR WEATHERFORD:
        Ms. Virginia Weichert Gundlach
10      JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
11      201 St. Charles Avenue
        New Orleans, Louisiana  70170-5100
12
13  APPEARING FOR DRIL-QUIP, INC.:
        Ms. Wendy Ware Bishop
14      WARE, JACKSON, LEE & CHAMBERS
        America Tower, 42nd Floor
15      2929 Allen Parkway
        Houston, Texas  77019-7101
16
17  APPEARING FOR M-I SWACO:
        Mr. Steven A. Luxton
18      MORGAN, LEWIS & BOCKIUS, LLP
        1111 Pennsylvania Avenue, NW
19      Washington, D.C.  20004
20
21  APPEARING FOR HALLIBURTON:
        Mr. Floyd R. Hartley, Jr.
22      Ms. Lauren L. Mitchell
        GODWIN RONQUILLO
        Renaissance Tower
23      1201 Elm Street, Suite 1700
        Dallas, Texas 75270-2041
24
25

4

1   APPEARING FOR THE UNITED STATES:
        Mr. Daniel A. Spiro
2       U.S. DEPARTMENT OF JUSTICE
        CIVIL DIVISION, FRAUD SECTION
3       601 D Street N.W., Room 9128
        Washington, D.C.  20004
4       Post Office Box 261
        Ben Franklin Station
5       Washington, D.C.  20044
6       Ms. Elizabeth Young
        U.S. DEPARTMENT OF JUSTICE
7       601 D Street, N.W.
        Washington, D.C.  20004
8
9   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Henry Dart
10      510 North Jefferson Street
        Covington, Louisiana  70433
11
12  APPEARING FOR THE WITNESS SCHERIE DOUGLAS:
        Mr. Robert P. Trout
13      Ms. Gloria B. Solomon
        TROUT CACHERIS
14      1350 Connecticut Avenue, N.W., Suite 300
        Washington, D.C.  20036
15
16  ALSO PRESENT:
        Mr. Peter Jennings, Videographer
17      Mr. Danny Damiani
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**

285

[redacted]

287

[redacted]

286

[redacted]

288

[redacted]

**Q. [redacted] Are you notified when INC is issued for a rig?**

A. I would be notified if it was my rig, yes.

**Q. If it was your rig?**

A. Yes.

**Q. Okay. Were there any INCs issued for the Macondo rig -- or for the DEEPWATER HORIZON while it was on the Macondo Well?**

A. There was not any instance of noncompliance for the HORIZON. [redacted]

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JAMES H. DUPREE VOL. II June 17, 2011    SANDRA D. FILES, CCR

Page 357

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL     MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN


            Volume 2 of 2 of the Videotaped
Deposition of JAMES H. DUPREE, 314 Knipp
Road, Houston, Texas 77024, taken in the
Pan American Life Center, 11th Floor, 601
Poydras Street, New Orleans, Louisiana
70130, on Friday, June 17, 2011.


APPEARANCES:



DEGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
By:  Michael C. Palmintier, Esquire
618 Main Street
Baton Rouge, LA 70801-1910
            (Attorneys for Plaintiffs
            Steering Committee)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C    Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters    Facsimile: (504) 525-9109

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

JAMES H. DUPREE VOL. II June 17, 2011    SANDRA D. FILES, CCR



Page 386

Page 387

Page 388

Page 389

15      Q.          Well, tell me a little
16  bit about your observations of the
17  competency and professionalism of the
18  individuals at Transocean with whom you had
19  the opportunity to work or interact with.
20      A.    So those individuals in the past
21  or --
22      Q.    Yes.  In your dealings with --
23      A.    So I thought they were quite
24  professional and did a good job.
25      Q.    At any time did any of those

9 (Pages 386 to 389)

9734d017-737b-430d-b99f-853767a24a41

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                                 Reported by:

JAMES H. DUPREE VOL. II June 17, 2011     SANDRA D. FILES, CCR

Page 390

1   individuals you dealt with at Transocean
2   ever indicate to you that they were
3   indifferent to the health and welfare of
4   individuals that worked on their drilling
5   rigs?
6       A.   No.

Page 392

Page 391

Page 393

22       Q.   But bottom line, you never
23   observed any indifference to the welfare of
24   individuals or the environment on the part
25   of Transocean?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C     Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters     Facsimile: (504) 525-9109

9734d017-737b-430d-b99f-853767a24a41

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                     Reported by:

JAMES H. DUPREE VOL. II June 17, 2011     SANDRA D. FILES, CCR



Page 394

1    A.   Me personally, I didn't observe
2  any indifference.
3    Q.   Okay.  And I'm assuming that as
4  of April 20th, 2010, whatever your
5  oversight was for the Gulf of Mexico
6  drilling and production, if someone had
7  suggested to you -- strike that.
8        As of April 20th, 2010, had
9  anyone suggested to you that the Deepwater
10  Horizon should be taken off line?
11    A.   Did anyone in Transocean suggest
12  that?
13    Q.   No.  Had anyone from BP
14  suggested to you that the Deepwater Horizon
15  should be taken off line?
16    A.   So you mean taken off line, you
17  mean -- you mean de -- moved out, taken off
18  contract or --
19    Q.   Yes.
20    A.   No.
21    Q.   Or that Transocean as a company
22  should be put in time out?
23    A.   For -- for the Deepwater Horizon
24  or for all the --
25    Q.   For any -- for anything.

Page 395

1    A.   Official time out, you mean
2  contractually challenged for their behavior
3  and policies or --
4    Q.   Well, at the time of April 20th
5  were they a preferred -- on the preferred
6  provider list for BP?
7    A.   Yes.
8    Q.   Okay.  Had anyone suggested to
9  you that they should be removed from that
10  preferred provider list?
11    A.   I'm not in procurement, but no,
12  I hadn't heard anything --
13    Q.   Okay.
14    A.   -- around that from the -- the
15  global organization.

Page 396

Page 397

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C     Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters     Facsimile: (504) 525-9109

9734d017-737b-430d-b99f-853767a24a41

JAMES H. DUPREE     6/16/2011
IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO,
ON APRIL 20, 2010
Reported by: SANDRA D. FILES, CCR, RPR

355

1

2              WITNESS' CERTIFICATE

3

4

5         I, JAMES H. DUPREE, have read or

6    have had the foregoing testimony read to me

7    and hereby certify that it is a true and

8    correct transcription of my testimony, with

9    the exception of any attached corrections

10   or changes.

11

12

13

14

15

16              JAMES H. DUPREE

17

18   (Check One)

19   (  )   NO CORRECTIONS.
     (X)   CORRECTIONS; ERRATA SHEET(S)
20   ENCLOSED.

21

22

23

24

25

601 Poydras Street, Suite 1720     GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130           Board-Certified Court Reporters     Facsimile: (504) 525-9109

Received 08/18/11

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL       )   MDL NO. 2179
BY THE OIL RIG         )
"DEEPWATER HORIZON" IN      )   SECTION "J"
THE GULF OF MEXICO, ON      )
April 20, 2010        )   JUDGE BARBIER
                      )   MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOLUME 1

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of STEVEN A. FLYNN, taken at
Kirkland & Ellis International, 30 St. Mary Axe, 22nd
Floor, London EC3A 8AF, England, United Kingdom, on the
29th of June, 2011.

**2**

```
 1        A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
     Mr. Duke Williams
 4     WILLIAMS LAW GROUP, LLC
       435 Corporate Drive, Suite 101
       Houma, Louisiana 70360
 5
     Mr. Ian F. Taylor
 6     LEWIS, KULLMAN, STERBCOW & ABRAMSON
       2615 Pan-American Life Center
 7     601 Poydras Street
       New Orleans, Louisiana 70130-6030
 8
 9   APPEARING FOR BP, INC.:
     Mr. Mike Brock
10   Ms. Kimberly Branscome
       COVINGTON & BURLING, LLP
11     1201 Pennsylvania Avenue, N. W.
       Washington, D. C. 20004-2401
12
     Ms. Leslie S. Garthwaite
13     KIRKLAND & ELLIS, LLP
       300 North LaSalle
14     Chicago, Illinois 60654
15
16   APPEARING FOR TRANSOCEAN:
     Mr. Richard J. Hymel
17   Mr. M. Benjamin Alexander
       PREIS & ROY
18     Versailles Centre, Suite 400
       102 Versailles Boulevard
       Lafayette, Louisiana 70501
19
20   APPEARING FOR ANADARKO PETROLEUM COMPANY:
     Mr. Steven Brody
21     BINGHAM McCUTCHEN, LLP
       399 Park Avenue
22     New York, New York 10022-4689
23   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
     Mr. Jeffrey M. Golub
24     BECK, REDDEN & SECREST
       1221 McKinney Street, Suite 4500
25     Houston, Texas 77010-2010
```

**3**

```
 1   APPEARING FOR DRIL-QUIP, INC.:
     Ms. Wendy W. Bishop
 2     WARE JACKSON LEE CHAMBERS, LLP
       America Tower, 42nd Floor
 3     2929 Allen Parkway
       Houston, Texas 77019-7101
 4
 5   APPEARING FOR M-I SWACO:
     Mr. Christopher C. Loeber
 6     MORGAN, LEWIS & BOCKIUS, LLP
       502 Carnegie Center
 7     Princeton, New Jersey 08540-6241
 8
     APPEARING FOR HALLIBURTON:
 9   Ms. Jenny Martinez
     Mr. Kodie Bennion
10     GODWIN RONQUILLO
       1201 Elm Street, Suite 1700
11     Dallas, Texas 75270-2041
12
13   APPEARING FOR THE UNITED STATES:
     Mr. A. Nathaniel Chakeres
14     U. S. DEPARTMENT OF JUSTICE
       Environment & Natural Resources Division
       601 D. Street, N. W.
15     Washington, D. C. 20004
16   APPEARING FOR THE STATE OF LOUISIANA:
     Mr. Henry Dart
17     ATTORNEY AT LAW
       510 N. Jefferson Street
18     Covington, Louisiana 70433
19
20   APPEARING FOR MOEX OFFSHORE 2007 LLC and MOEX USA
     CORPORATION:
     Mr. Greg T. Lembrich
21     PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP
       1540 Broadway
22     New York, New York 10036-4039
23   APPEARING FOR SECURITIES LEAD SUBCLASS PLAINTIFFS:
     Mr. Victor S. Elias
24     COTCHETT, PITRE & McCARTHY, LLP
       840 Malcolm Road
25     Burlingame, California 94010
```

**4**

```
 1   THE VIDEOGRAPHER:
        Mr. Peter Jennings
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



193

11      Q.                        Did anyone ever suggest to you
12 that Transocean as a corporation had a philosophy of
13 indifference to the welfare of the environment?
14      A.  I've not heard that.
15      Q.  Okay.  Or that any of its employees were
16 indifferent to the welfare of the environment?
17      A.  It's not something I've heard.
18      Q.  Okay.  Did anyone ever suggest to you that
19 Transocean was indifferent to the welfare of
20 individuals?
21      A.  It's not something I've -- I've heard.
22      Q.  Okay.  Or that any of its employees were
23 indifferent to the welfare of individuals.  Have you
24 ever heard that?
25      A.  It's not something I've heard.

195

194

1      Q.  Okay.  And if anyone had come to you and
2 suggested to you that Transocean or any of its employees
3 were callus, indifferent about the welfare of
4 individuals or the environment, would -- it would have
5 been your obligation to do something about that,
6 correct?
7           MR. BROCK: Object to form.
8      A.  That's not something that -- that's happened.

196

**PURSUANT TO CONFIDENTIALITY ORDER**

323

```
1          I, STEVEN A. FLYNN, have read the foregoing
    deposition and hereby affix my signature that same is
2   true and correct, except as noted above.
3
4                    _____    _____
                         STEVEN A. FLYNN
5
6
7   STATE OF _____    *
    COUNTY OF _____    *
8
9          Before me, _____, on this day
    personally appeared STEVEN A. FLYNN, known to me, or
    proved to me under oath or through _____
10  (description of identity card or other document), to be
    the person whose name is subscribed to the foregoing
11  instrument and acknowledged to me that they executed the
    same for the purposes and consideration therein
12  expressed.
13         Given under my hand and seal of office on
    this, the _____ day of _____, 2011.
14
15
16                    _____
                      Notary Public, State of _____
17
18  My Commission Expires: _____  _____
19
20
21
22
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

CHERYL ANN GROUNDS      May 4, 2011      THU BUI, CCR, RPR

Page 1

                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


        IN RE:  OIL SPILL      )    MDL NO. 2179
        by the OIL RIG,        )
        DEEPWATER HORIZON in   )    SECTION "J"
        the GULF OF MEXICO,    )
        April 20, 2010         )    JUDGE BARBIER
                               )
                               )    MAG.  JUDGE
                               )    SHUSHAN








                Deposition of CHERYL ANN
        GROUNDS, taken at Pan-American Building,
        601 Poydras Street, 11th Floor, New
        Orleans, Louisiana, 70130, on the 4th of
        May, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

bd54044d-229f-4a33-b6f4-2e2873c28730

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                                                    Reported by:
CHERYL ANN GROUNDS        May 4, 2011        THU BUI, CCR, RPR



Page 350

5     Q.   I want to ask those same
6  questions with regard to Transocean.
7            Are you aware of any
8  evidence that anyone or the company itself
9  deliberately wanted to cause injury to the
10  environment or to any person?
11     A.   No.
12     Q.   Do you know of any evidence that
13  anyone or the company itself in -- was
14  malicious or didn't care in any way about
15  causing injury to another human or to the
16  environment?
17     A.   No.
18     Q.   Are you aware of any evidence
19  that anyone or the company, Transocean,
20  willfully inflicted harm on any person or
21  to the environment?
22     A.   No.
23     Q.   Are you aware of any negligent
24  conducts or any evidence of any negligent
25  conduct on behalf of Transocean or its crew

Page 351

1  on April the 20th, 2010?
2        MR. DART:
3            Object to form.
4     A.   My only understanding of any
5  Transocean participation is by virtue of
6  the Bly report.
7     Q.   Are you aware of any evidence of
8  negligence on the part of Transocean
9  yourself?
10        MR. DART:
11            Object to form.
12     A.   No.

Page 352

Page 353

89 (Pages 350 to 353)

601 Poydras Street, Suite 1720    GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

bd54044d-229f-4a33-b6f4-2e2873c28730

**GAUDET KAISER, L.L.C.**

601 Poydras Street, Suite 1720        New Orleans, Louisiana 70130
Phone: (504) 525-9100                Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE

I, **CHERYL ANN GROUNDS,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

*17 June 2011*

**(Date Signed)**

*Cheryl A. Grounds*

**(Signature)**

_X_ Signed with corrections as attached.

_____ Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4        PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816             FAX     (225) 291-7990

263 W. Causeway Approach                 PHONE   (504) 525-9100
Mandeville, Louisiana 70448              FAX     (504) 525-9109

Website: www.gaudetkaiser.com           ALT. EMAIL
                                         GK2007@aol.com & gkjp@gaudetkaiser.com

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                   Reported by:
A. JOHN GUIDE                    May 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL     MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN




        Deposition of A. JOHN GUIDE, taken
in the Pan American Life Center, Bayou
Room, 11th Floor, 601 Poydras Street, New
Orleans, Louisiana 70130, on Monday, May 9,
2011.



APPEARANCES:


        COTCHETT, PITRE & MCCARTHY
        (By:  Bryan Payne, Esquire)
        San Francisco Airport Office Center
        840 Malcolm Road
        Suite 200
        Burlingame, California 94010
            (Attorneys for MDL 2185
             Securities plaintiffs subclass)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile: (504) 525-9109

8d4f3d9a-5bbe-488e-a9fa-06f2c5500bb9

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010

A. JOHN GUIDE                    May 9, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 194

Page 196

Page 195

Page 197

10          And then there were other risk
11    assessments that were done by and
12    controlled by Transocean which was part of
13    the SMS system, which was safety management
14    system which we operated under.
15          And they had a, in my opinion, a
16    good safety management system that included
17    risk assessments.

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile: (504) 525-9109

8d4f3d9a-5bbe-488e-a9fa-06f2c5500bb9

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010                                      Reported by:
A. JOHN GUIDE VOL. II          May 10, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 471

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL     MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN



VOLUME II

     Deposition of A. JOHN GUIDE, taken
in the Pan American Life Center, Bayou
Room, 11th Floor, 601 Poydras Street, New
Orleans, Louisiana 70130, on Tuesday, May
10, 2011.



APPEARANCES:


     COTCHETT, PITRE & MCCARTHY
     (By:  Bryan Payne, Esquire)
     San Francisco Airport Office Center
     840 Malcolm Road
     Suite 200
     Burlingame, California 94010
          (Attorneys for MDL 2185
           Securities plaintiffs subclass)

378c5df3-294a-4e03-84f3-f44083220b92

A. JOHN GUIDE VOL. II          May 10, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 480

Page 482

14    Q.   In your position as wells team
15  leader for the DEEPWATER HORIZON, you got
16  to know the condition of the DEEPWATER
17  HORIZON; correct?
18    A.   I did.
19    Q.   And I take it you were involved
20  in the September 2009 audit of the rig and
21  you were involved in resolving the issues
22  identified in the audit?
23    A.   That's correct.
24    Q.   And you personally spoke with
25  Paul Johnson on a regular basis, once a

Page 481

* * * * *

Page 483

1   week or every 10 days or so to make sure
2   that Transocean was making progress
3   concerning the audit findings; correct?
4     A.   Correct.
5     Q.   And you believe that Transocean
6   was making very good progress in addressing
7   the audit items; correct?
8     MS. KARIS:
9         Object to form.
10    THE WITNESS:
11        Correct.
12  EXAMINATION BY MR. HYMEL:
13    Q.   Let's talk about Transocean
14  personnel.  Obviously you knew Mr. Johnson,
15  you spoke with him regarding the audit.
16  Did you know Jimmy Harrell?
17    A.   Yes.
18    Q.   Randy Ezell?
19    A.   Yes.
20    Q.   Jason Anderson?
21    A.   Not as well as the other two but
22  I did know him.
23    Q.   Did you know Dewey Revette?
24    A.   Yes.
25    Q.   Did you you know Stephen Curtis?

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029       Board-Certified Court Reporters   Facsimile: (504) 525-9109

378c5df3-294a-4e03-84f3-f44083220b92

Page 484

1     A.   Not very well but to see him,
2 yes.
3     Q.   Did you know Don Clark?
4     A.   Yes.
5     Q.   Did you know Captain Kuchta?
6     A.   Yes.
7     Q.   You actually learned about the
8 explosion from Paul Johnson; is that
9 correct?
10     A.   That is correct.
11     Q.   Now, knowing the competency of
12 the crew and the condition of the rig, did
13 it surprise you when you learned what
14 occurred?
15     A.   Yes.
16     Q.   And why?
17     A.   It never crossed my mind that
18 that would happen.
19     Q.   You visited that rig in 2010;
20 correct?
21     A.   Yes.
22     Q.   And during that visit did you
23 sleep on the rig?
24     A.   Yes.
25     Q.   If you had any concerns about

Page 485

1 the safety of that rig, would you have
2 slept on it?
3     A.   No.
4     Q.   In February?  The men we
5 discussed, the guys that you know, did any
6 of them seem like men that would lie to
7 you?
8     A.   No.
9     Q.   Did any of them seem like men
10 who would themselves hide issues that would
11 subject them or anyone else to safety
12 issues out on that rig?
13     A.   No.
14     Q.   How well did you know Paul
15 Johnson?
16     A.   I met him in September, August,
17 the end of August of 2009 so I knew him
18 from then until the incident.  I've not
19 seen him very much since then, no.  Six
20 months.
21     Q.   I'm sorry.  I apologize.
22     A.   Six months.
23     Q.   Were you comfortable with Paul
24 Johnson as the rig manager?
25     A.   Yes.

Page 486

1     Q.   Did you ever experience any
2 indication that he was indifferent or
3 callous towards the safety of individuals
4 or the environment?
5     A.   No.
6     Q.   Was it just the opposite?  Did
7 you feel like he had a concern for
8 individuals and the environment?
9     A.   Yes.
10     Q.   From your experience with
11 Mr. Johnson, what was the attitude toward
12 safety of individuals and the environment?
13     MS. KARIS:
14         Object to form.
15     THE WITNESS:
16         I thought he had a good attitude
17 towards safety and the environment.
18 EXAMINATION BY MR. HYMEL:
19     Q.   Were you comfortable with
20 Mr. Harrell as the OIM of the DEEPWATER
21 HORIZON?
22     A.   Yes.
23     Q.   Did you ever experience any
24 indication that he was indifferent or
25 callous towards the safety of individuals

Page 487

1 or the environment?
2     A.   No.
3     Q.   In your experience with
4 Mr. Harrell, what was his attitude toward
5 the safety of the individuals and the
6 environment?
7     A.   It was good.
8     Q.   How well did you know Randy
9 Ezell?
10     A.   I knew him, you know, fairly
11 well.
12     Q.   Were you comfortable with Randy
13 Ezell as the senior toolpusher on the
14 DEEPWATER HORIZON?
15     A.   Yes.
16     Q.   Did you ever experience any
17 indication that he was indifferent or
18 callous towards the safety of the
19 individuals or the environment?
20     A.   No.
21     Q.   In your experience with
22 Mr. Ezell, what was his attitude toward the
23 safety of individuals and the environment?
24     A.   Good.
25     Q.   Were you comfortable with Jason

378c5df3-294a-4e03-84f3-f44083220b92

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010                                    Reported by:
A. JOHN GUIDE VOL. II          May 10, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 488

1  Anderson as a toolpusher on the DEEPWATER
2  HORIZON?
3      A.   Yes.
4      Q.   Did you ever experience any
5  indication that he was indifferent or
6  callous towards the safety of individuals
7  or the environment?
8      A.   No.
9      Q.   In your experience with
10 Mr. Anderson, what was his attitude toward
11 the safety of the individuals and the
12 environment?
13     A.   It was okay.
14     Q.   Dewey Revette, how well did you
15 know him?
16     A.   You know, not very well, but I
17 did visit with him on numerous occasions.
18     Q.   Did you feel comfortable with
19 Mr. Revette as one of the drillers on the
20 DEEPWATER HORIZON?
21     A.   Yep.
22     Q.   Did you ever experience any
23 indication that he was indifferent or
24 callous towards the safety of individuals
25 or the environment?

Page 489

1      A.   No.
2      Q.   In your experience with
3  Mr. Revette, what was his attitude towards
4  the safety of individuals and the
5  environment?
6      A.   It was okay.
7      Q.   Now, Mr. Curtis, did you know
8  him well enough to have formed an opinion
9  on his competency?
10     A.   No, I do not.
11     Q.   And Mr. Clark, the same
12 question, did you know him well enough to
13 form an opinion of his competency?
14     A.   No, I do not.
15     Q.   Captain Kuchta, did you know him
16 well enough to form an opinion on his
17 competency?
18     A.   Yes.
19     Q.   Were you comfortable with
20 Captain Kuchta as the captain of the
21 DEEPWATER HORIZON?
22     A.   Yes.
23     Q.   Did you ever experience any
24 indication that he was indifferent or
25 callous towards the safety of the

Page 490

1  individuals or the environment?
2      A.   No.
3      Q.   In your experience with him,
4  what was his attitude toward the safety of
5  the individuals and the environment?
6      A.   Good.
7      Q.   If you could turn back the clock
8  knowing what you know today, if this same
9  crew was assigned to a different rig, would
10 you feel comfortable and confident to
11 serving as the wells team leader for that
12 rig with that same exact crew with regard
13 to safety and the ability to effectively
14 drill deepwater wells?
15     A.   Yes.
16     Q.   There's a section in the Bly
17 report, and I brought a copy in case you
18 don't have it.  It was Exhibit 1 and we
19 were bringing all the exhibits and it got
20 cumbersome so I brought copies for you and
21 your attorney if you need it.
22     MR. STETLER:
23         Thank you.
24 EXAMINATION BY MR. HYMEL:
25     Q.   I want you to turn to page 43 of

Page 491

1  that report, the last paragraph down at the
2  bottom, the first sentence, you see that
3  starts with key members?
4      A.   Yes, sir.
5      Q.   That sentence says, and this is
6  in the Bly report, key members of the rig
7  crew need to be trained and demonstrate
8  competency.
9          Am I safe in assuming that based
10 upon everything that we just discussed,
11 that you did not feel like Paul Johnson,
12 Jimmy Harrell, Randy Ezell, Jason Anderson,
13 Dewey Revette or Captain Kuchta were in
14 need of any additional training to show any
15 additional competency?
16     MS. KARIS:
17         Object to form.
18 THE WITNESS:
19         That's correct.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters      Facsimile: (504) 525-9109

378c5df3-294a-4e03-84f3-f44083220b92

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010                              Reported by:
A. JOHN GUIDE VOL. II              May 10, 2011 JOSEPH R. KAISER, JR., CCR, RPR



Page 498

1      Q.   It's your opinion that
2    Transocean has a safety management system
3    that they use all over the world and that
4    Transocean is very good at managing that
5    safety management system; is that correct?
6        MS. KARIS:
7            Object to form.
8        THE WITNESS:
9            That's correct.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile: (504) 525-9109

378c5df3-294a-4e03-84f3-f44083220b92

Page 448

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL          )     MDL NO. 2179
BY THE OIL RIG             )
"DEEPWATER HORIZON" IN      )     SECTION "J"
THE GULF OF MEXICO, ON      )
APRIL 20, 2010              )     JUDGE BARBIER
                            )     MAG. JUDGE SHUSHAN

****************
VOLUME 2
****************

        Deposition of Anthony Hayward, taken at
Kirkland & Ellis International, 30 St. Mary Axe, 22nd
Floor, London EC3A 8AF, England, United Kingdom, on the
8th of June, 2011.

PURSUANT TO CONFIDENTIALITY ORDER

f43521ab-d719-42e1-aa06-8768f1f9a456



Page 537

Page 539

10    Q.   (By Mr. Roberts) Do you know Transocean, sir?
11    A.   I do, yeah.
12    Q.   How do you know it?
13    A.   As one of the world's largest and most
14  respected drilling contractors.

Page 540

3     Q.   Is -- was BP, at least as of the time you
4   left -- excuse me.
5         Was Transocean, as of the time you left BP,
6   one of the preferred providers throughout the world for
7   BP in drilling its deepwater wells?
8     A.   It was.

high regard?

24  (Pages 537 to 540)

PURSUANT TO CONFIDENTIALITY ORDER

f43521ab-d719-42e1-aa06-8768f1f9a456

Page 541

2      Q.   All right.  Did anyone in your Senior
3  Management or lower down ever come to you and suggest
4  to you that Transocean, as a corporation, had a
5  philosophy of indifference to the welfare of the
6  environment?
7      A.   No.
8      Q.   Or that any of its employees were indifferent
9  to the welfare of the environment?
10     A.   No.
11     Q.   Did anyone in your Senior Management ever come
12  to you and say Transocean was indifferent to the
13  welfare of individuals, the employees and -- and their
14  health?
15     A.   No.
16     Q.   All right.  Have you ever heard that suggested
17  by anyone?
18     A.   Not in the time I was at BP.

Page 542

5      Q.   If anyone in your company had ever come to you
6  and suggested that Transocean was callous, indifferent,
7  or just didn't plain give a damn about the welfare of
8  the environment or individuals, wouldn't it have been
9  your obligation as CEO to either terminate the
10  relationship with Transocean or appoint someone to look
11  into those allegations?
12          MR. WEBB:  Objection, form.
13          MR. GODFREY:  Object as to form.
14     A.   The reality, of course, that if that was --
15  had been the case, other -- others would have taken
16  action before it got to me, I'm certain.

Page 543

Page 544

PURSUANT TO CONFIDENTIALITY ORDER

f43521ab-d719-42e1-aa06-8768f1f9a456

Page 545

[redacted]

20    Q.   That -- that service, the Memorial Service you
21  attended, was that the Transocean Memorial Service?
22    A.   It was.  It was.
23    Q.   And -- and at that service, you met a number
24  of the families?
25    A.   I did.

Page 546

1    Q.   A number of the people involved in the rig?
2    A.   Yes.
3    Q.   And you at least got a sense of their
4  feelings, their attitudes, and their emotions, correct?
5    A.   I did, yes.
6    Q.   What did you think about those folks?
7    A.   I thought they were great people, and I was
8  deeply touched by the sorrow that they were feeling and
9  the loss that they experienced.
10    Q.   Did you get any inim -- any impression from
11  them that they were callous or hardened people that
12  didn't care about the welfare of others?
13    A.   No.
14    Q.   Quite the contrary, did you -- did you get the
15  impression that those employees that you met were
16  deeply care -- deeply cared about others and their own
17  family?
18    A.   Indeed, yes.
19    Q.   Their own drilling family, I'm talking about.
20    A.   Yeah.  I -- I understand your -- entirely your
21  sentiment.
22    Q.   Did you get the impression of how close the
23  family on the drilling rig was; that is, the men that
24  worked together on the --
25    A.   I did.

Page 547

1    Q.   -- drilling rig?
2         Did you get a chance to talk to some of your
3  employees who worked on the DEEPWATER HORIZON with
4  these men?
5    A.   I did.
6    Q.   And did you get the impression that they all
7  considered themselves one big family, even though they
8  were from different companies?
9    A.   Yes.

[redacted]

Page 548

[redacted]

PURSUANT TO CONFIDENTIALITY ORDER



548

550

549

551

12      Q.  (By Mr. Roberts) What I've handed to you is a
13  transcript of a -- it's actually a copy of a "Forbes"
14  magazine interview entitled, "In His Own Words:  Forbes
15  Q&A With BP's Tony Hayward," and dated May 18, 2010.
16  Do you see that, sir?
17      A.  I do.
18      Q.  Do you recall giving this interview?
19      A.  I don't, no.
20      Q.  Sir?
21      A.  I don't recall it, no.
22      Q.  You were giving a lot of interviews --
23      A.  I was doing lots of -- lots of things.
24      Q.  It -- it says:  "Last" -- it begins:  "Last
25  week Forbes sat down with BP Chief Executive Tony

26  (Pages 548 to 551)

**PURSUANT TO CONFIDENTIALITY ORDER**

552

1    Hayward at the company's emergency response center in
2    Houston," then goes on to say something that I am sure
3    is inaccurate:  "A well-rested Hayward shared his
4    thoughts..."
5         I can't imagine you were well-rested at that
6    point.
7         A.  It's the definition of "well-rested," of
8    course, but at the time I was getting probably four or
9    five hours' sleep a night.
10        Q.  Yeah.
11        I want to go to the last page.  There's a
12   question that's asked of you beginning at the top:
13   "That makes me think...you didn't mean a real insurance
14   policy of course, but if one was to go to Lloyd's of
15   London and insure against a 25 billion hit to my market
16   cap and 5 billion in punitive damages, what kind of
17   premiums would you have to pay?"
18        The answer that's written down here is:  "You
19   can't insure.  That's why we're self-insured.  You
20   can't insure risks you want to insure.  And the things
21   you can insure, premiums are so high that it makes no
22   sense for a company like" P -- "BP to do anything other
23   than self-insure."  Do you see that, sir?
24        A.  I do.
25        Q.  Do you recall giving that answer?

553

1         A.  I -- I don't, but it's -- it's not an
2    unreasonable answer.  I don't recall it, no.
3         Q.  You're not denying that you gave it?
4         A.  No.
5         Q.  You just --
6         A.  Yeah, yeah.
7         Q.  -- don't recall giving it?
8         A.  I don't recall, yeah.
9         Q.  And the answer that is there is certainly
10   consistent with your thought process and your
11   understanding of the situation?
12              MR. GODFREY:  Objection as to form.
13        A.  Certainly that BP is self-insured.  We don't
14   have insurance policies in place, correct.
15        Q.  (By Mr. Roberts) Right.
16        A.  Certainly --
17        Q.  It goes on to say that if you did get
18   insurance, "...the premiums are so high that it makes
19   no sense for a company like BP to do anything other
20   than self-insure."  Is that accurate as well?
21        A.  Can -- sorry.  The -- you -- you mean the next
22   question, or is --
23        Q.  No, the next statement, "...and the things you
24   can insure, the premiums" --
25        A.  I'm sorry.

554

1         Q.  -- "are so high..."
2         A.  I'm sorry.  Yes.  M-h'm, yeah.  Yes.
3         Q.  All right.  Let's start with that.  What does
4    "self-insurance" mean to you, at least when you were
5    CEO of BP?
6         A.  It meant that the company didn't have an
7    insurance policy against the risks it was -- it was
8    undertaking, in essence, and the -- and as it says
9    here, we self-insured and took those risks onto our
10   balance sheet.
11        Q.  Is -- is "self-insured" an -- another way of
12   saying "no insurance"?
13        A.  Yes.  Well, no -- no external third-party
14   insurance, yeah.
15        Q.  All right.
16        A.  Yes.
17        Q.  So BP elected to have no external insurance --
18        A.  M-h'm.
19        Q.  -- for terms of the environmental risks that
20   might be occasioned in connection with deepwater
21   drilling?
22              MR. GODFREY:  Objection as to form.
23        A.  We had no external insurance for anything at
24   BP.
25        Q.  (By Mr. Roberts) For anything at BP?

555

1         A.  That's correct.
2         Q.  Okay.  I don't know about the cars y'all drive
3    or that kind of stuff.  I'm -- I'm only interested in
4    deepwater drilling --
5         A.  Obviously we're think -- thinking of --
6         Q.  -- particularly the Gulf of Mexico.
7         A.  -- any other operational activity.
8         Q.  Okay.  The statement here that the premiums
9    are so high that it makes no sense, like BP, to do
10   anything else other than self-insure, am I right that
11   BP, some years ago, made a corporate decision that the
12   differential the cost of having insurance in
13   connection with the claims that it was covering were
14   such that BP might as well not have insurance, handle
15   the claims itself, and in the end save itself money?
16        A.  That's cor -- that was a decision taken in
17   about 1991.
18        Q.  And that was still the decision in effect at
19   the time --
20        A.  M-h'm.
21        Q.  -- you undertook your --
22        A.  That's correct.
23        Q.  -- undertook the CEO position?
24        A.  That's correct.
25        Q.  That was still the situation as of Macondo?

PURSUANT TO CONFIDENTIALITY ORDER

556

1    A.  That's correct.
2    Q.  Is there any reason, in your mind, to think
3  that deepwater well pollution insurance, if it's not
4  affordable on a practical level to BP, would be
5  affordable on a practical level to somebody like
6  Halliburton or MI or Dril-Quip or Transocean?
7         MR. WEBB:  Object to the form.
8         MR. GODWIN:  Objection as to form.
9    A.  I don't know anything about the insurance
10  market, I'm afraid, so I can't make that -- take that
11  view.  I think everyone, every company, looks at the
12  risks they're undertaking, the cost of insurance,
13  and weighs that against the likelihood of occurrence,
14  and makes a decision appropriately.  I -- I'm -- I --
15  but I'm not an expert in the insurance market, so I
16  can't answer your question, I'm afraid.
17    Q.  (By Mr. Roberts) Did you have any expectation
18  that your subcontractors would go out and purchase
19  insurance for you, since you had a -- made a corporate
20  decision not to purchase insurance for yourself?
21         MR. WEBB:  Objection, form.
22         MR. GODFREY:  Same objection.
23    A.  We had no expectation of what our contractors
24  did and did not -- insur -- what insurance our
25  contractors did and did not purchase with respect to

557

1  risks that they were undertaking.
2    Q.  (By Mr. Roberts) As -- while you were CEO of
3  BP, as between BP, on the one hand, and its contractors
4  that were involved in drilling of wells, in the other
5  hand, was there a normal allocation of environmental
6  risks in the contracts that BP entered into?
7         MR. GODFREY:  Object as to form.
8    A.  Would you just repeat your question again?
9    Q.  (By Mr. Roberts) Sure.  You know what
10  environmental risks are?
11    A.  Yeah.  Yes.
12    Q.  All right.  And you know that in your
13  contracts with subcontractors, there is an allocation
14  of who's responsible for those risks?
15    A.  M-h'm.
16    Q.  You're familiar with the term of indem --
17  you're familiar with the term "indemnity"?
18    A.  Yes.
19    Q.  All right.  While you were CEO, what was the
20  policy with respect -- at BP -- as to who would assume
21  environmental risk for blowout pollution, for
22  instance -- BP or its subcontractors?
23         MR. GODFREY:  Objection as to form.
24    A.  I think the -- it de -- it de -- in the
25  contracts, of course, it's -- I -- I -- I -- I don't

558

1  have a contract in front of me, and I won't remember
2  the right language.  But if there was -- if there was
3  reasons to believe that the contractor was at fault,
4  then the indemnity may or may not apply.
5    Q.  (By Mr. Roberts) "At fault" meaning what?
6         MR. WEBB:  Well, object to the form.
7  Object to the form of the question, without a document.
8         MR. GODFREY:  The same objection.
9    A.  A -- a -- a -- some sort -- some form of
10  fault.  I'm not a lawyer.  I'm not going to try and
11  describe a legal description.
12    Q.  (By Mr. Roberts) All right.  Well, let's --
13    A.  I certainly won't try and do it without the --
14    Q.  Let's go back up --
15    A.  -- without the contract in front of us.
16    Q.  Let's go back up to your level, the
17  40,000-foot level of a CEO.  And I don't mean that
18  disrespectfully.  I understand you don't read the
19  details of every contract -- of all your contracts.
20         But what -- what was the industry -- you
21  talked yesterday at length about the industry.  In
22  general, what was the industry allocation of
23  environmental risk between an Operator such as BP and
24  subcontractors who worked for the Operator while
25  drilling wells for the Operator?

559

1         MR. WEBB:  Object to form.
2         MR. GODFREY:  Same objection.
3         MR. GODWIN:  Object to form.
4    A.  The industry norm would be, in most
5  circumstance, that the Operator would take that risk.
6    Q.  (By Mr. Roberts) Okay.
7    A.  But circumstances, of course, differ in time
8  and place.
9    Q.  Right.  But that was the industry standard?
10    A.  M-h'm, yeah.
11    Q.  Has been that way for years, hasn't it?
12    A.  Yeah, it is.

28  (Pages 556 to 559)

**PURSUANT TO CONFIDENTIALITY ORDER**



**564**

**566**

1   what -- what --
2     A.  It's -- it's the Code by which we expect
3   everyone in BP to conduct business.  It sets out the
4   norms and standards of performance and behavior --
5     **Q.  So you would --**
6     A.  -- in business.
7     **Q.  I'm sorry, did I --**
8     A.  Yes.
9     **Q.  -- interrupt you?**
10     A.  No, no.  Go.  I finished.
11     **Q.  You would expect all representatives of BP to**
12   **conduct themselves at the highest level of**
13   **professionalism consistent with this Code of Conduct?**
14     A.  I would.
15     **Q.  You would, for instance, expect all levels of**
16   **BP representatives to honor contractual commitments**
17   **that they make?**
18     A.  I would.
19     **Q.  You would, of course, expect all BP**
20   **representatives not to enter into contracts that they**
21   **didn't intend to honor?**
22       **MR. GODFREY:  Objection, form.**
23       **MR. WEBB:  Objection, form.**
24     A.  Indeed.

**565**

**567**

25     **Q.  What is the BP Code of Conduct in general,**

**PURSUANT TO CONFIDENTIALITY ORDER**

568



16    Q.  Well, you know that this industry, the
17  industry that you've been a proud member of for over 30
18  years, is characterized by men of great integrity and
19  honesty?
20        MR. WEBB:  Objection, form.
21    A.  I agree with that.
22    Q.  (By Mr. Roberts) Well --
23    A.  I agree with that.
24    Q.  Despite your lawyer, I knew you were going to
25  agree with that.  And you know that men in this

569

1  industry expect others to honor their contractual
2  commitments?
3    A.  That's correct.
4        MR. GODFREY:  Objection to form.
5    Q.  (By Mr. Roberts) And that's been a cornerstone
6  of this industry throughout its existence?
7    A.  That's correct.
8    Q.  It's the only way it works, isn't it, sir?
9        MR. WEBB:  Objection, form.
10        MR. GODFREY:  Objection, form.
11    A.  It is.

20    Q.  You -- you've got a -- what do you call it, an
21  IPO, investment group going in the energy business
22  that's starting up now?
23    A.  That's correct.
24    Q.  What's the name of that company?
25    A.  It's called Vallares.

570

1    Q.  Vallares?
2    A.  M-h'm.
3    Q.  Sounds like a song, "Vo-la-re."  That's not
4  that same group, though, I guess.
5        Anyway, what is this company going to do?
6    A.  It's -- it's going to invest in oil and gas
7  opportunities.
8    Q.  As in drilling?
9    A.  Potentially in drilling, almost -- almost
10  certainly at some point will be involved in drilling, I
11  expect.
12    Q.  If -- if the opportunity comes up, any reason
13  you wouldn't use Transocean to drill one of those
14  wells?
15        MR. GODFREY:  Objection as to form.
16    A.  We would look very hard at all the potential
17  contractors and make an appropriate decision.

571

**PURSUANT TO CONFIDENTIALITY ORDER**

1

2          I, ANTHONY HAYWARD, have read the foregoing

3   deposition and hereby affix my signature that same is

4   true and correct, except as noted on the attached

5   Amendment Sheet.

6

7          _____

8                ANTHONY HAYWARD

9

10  THE STATE OF _____)

11  COUNTY OF _____  )

12          Before me, _____, on
    this day personally appeared ANTHONY HAYWARD, known to
13  me (or proved to me on the oath of _____
                              or through _____)
14  to be the person whose name is subscribed to the
    foregoing instrument and executed the same for the
15  purposes and consideration therein expressed.
            GIVEN UNDER my hand and seal of office this
16  _____ day of _____, 2011.

17

18          _____
            Notary Public in and for
19          The State of _____

20

21

22

23

24

25

PURSUANT TO CONFIDENTIALITY ORDER

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    )    MDL NO. 2179
by the  OIL RIG,        )
DEEPWATER HORIZON in   )   SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010       )   JUDGE BARBIER
                      )
                      )   MAG. JUDGE
                      )   SHUSHAN

Videotaped deposition of CURTIS JACKSON, taken at Hilton Hotel, 333 St. Charles Avenue, 5th Floor, New Orleans, Louisiana, 70130, on the 21st of July, 2011.

**Page 2**

```
 1          A P P E A R A N C E S
 2
 3   Mr. Paul Sterbcow
     LEWIS, KULLMAN, STERBCOW & ABRAMSON
 4   601 Poydras Street, Suite 2615
     New Orleans, Louisiana 70130
 5   Phone:  504-588-1500
 6   Mr. Ian Taylor
     LEWIS, KULLMAN, STERBCOW & ABRAMSON
 7   601 Poydras Street, Suite 2615
     New Orleans, Louisiana 70130
 8   Phone:  504-588-1500
 9        APPEARING FOR THE PLAINTIFFS'
           STEERING COMMITTEE
10
11   Mr. Walter R. Lancaster
     KIRKLAND & ELLIS, LLP
     333 South Hope Street
12   Los Angeles, California 90071
     Phone:  213-680-8329 Fax:  213-680-8500
13
14   Ms. Leslie S. Garthwaite
     KIRKLAND & ELLIS, LLP
     300 North LaSalle
15   Chicago, Illinois 60654
     Phone:  312-862-7431 Fax:  312-862-2200
16
17        APPEARING FOR BP, INC.
18   Ms. Jessica L. McClellan
     U.S. DEPARTMENT OF JUSTICE
     Aviation & Admiralty Litigation
19   1425 New York Avenue, N.W.
     Suite 10100
20   Washington, D.C. 20044
     Phone:  202-616-4022 Fax:  202-616-4002
21
22        APPEARING FOR THE UNITED
           STATES
23
24
25
```

**Page 3**

```
 1   APPEARANCES: (Continued)
 2
 3   Mr. Peter C. Neger
     BINGHAM McCUTCHEN, LLP
     399 Park Avenue
 4   New York, New York 10022
     Phone:  212-705-7226 Fax:  212-702-3616
 5
 6        APPEARING FOR ANADARKO
 7   Mr. Paul Thibodeaux
     FRILOT, L.L.C.
 8   1100 Poydras Street, Suite 3700
     New Orleans, Louisiana 70163
 9   Phone:  504-599-8204
10   Ms. Mary Klinefelter
     FRILOT, L.L.C.
11   1100 Poydras Street, Suite 3700
     New Orleans, Louisiana 70163
12   Phone:  504-599-8204
13        APPEARING FOR TRANSOCEAN
14   Mr. Eric G. Blankenstein
     WILLIAMS & CONNOLLY, LLP
15   725 Twelfth Street, N.W.
     Washington, D.C. 20005
16   Phone:  202-434-5026 Fax:  202-434-5029
17        APPEARING FOR CAMERON
18
     Ms. Aimee L. Williams
19   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
20   Dallas, Texas 75270-2041
     Phone:  214-939-4459 Fax:  214-527-3136
21
     Ms. Laci M. Dreher
22   GODWIN RONQUILLO
     1201 Elm Street, Suite 1700
23   Dallas, Texas 75270-2041
     Phone:  214-939-4468 Fax:  214-527-3146
24
          APPEARING FOR HALLIBURTON
25
```

**Page 4**

```
 1   APPEARANCES: (Continued)
 2
 3   Mr. David Pote
     KANNER & WHITELEY, L.L.C.
 4   701 Camp Street
     New Orleans, Louisiana 70130
 5
 6        APPEARING FOR THE STATE OF
           LOUISIANA
 7
 8   Mr. R. Sean Brennan, Jr.
     MORGAN LEWIS
 9   1000 Louisiana Street, Suite 4000
     Houston, Texas 77002
10        APPEARING FOR M-I SWACO
11   Mr. Corey Maze
     STATE OF ALABAMA
12   ATTORNEY GENERAL'S OFFICE
     501 Washington Avenue
13   Montgomery, Alabama 36130
14        APPEARING FOR ALABAMA
15   Mr. Etienne Balart
     JONES WALKER
16   201 St. Charles Avenue
     New Orleans, Louisiana 70170
17
18        APPEARING FOR WEATHERFORD
19   Ms. Margaret Bryant
     WARE, JACKSON, LEE & CHAMBERS
20   4929 Allen Parkway, 42nd Floor
     Houston, Texas 77019
21
22        APPEARING FOR DRIL-QUIP
23
24
25
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



173

174

175

5      Q.      In your time as HSSE manager,
6  has anyone ever suggested to you that
7  Transocean had a philosophy of indifference
8  or callous disregard for the environment?
9      A.    No.  Not that I recall, no.
10     Q.      No one's ever suggested to you
11 that Transocean had a philosophy of
12 indifference or callous disregard for the
13 safety of individuals, right?
14     A.    No.
15     Q.      And if you ever did learn of
16 something like that, as HSSE manager, it
17 would have been your duty to do something
18 about that, correct?
19     A.    It would have been my duty at
20 least to -- to make sure that my -- my
21 manager was informed of that.
22     Q.      And you never took any actions
23 like that, correct?
24     A.    No, I did not.

176

**PURSUANT TO CONFIDENTIALITY ORDER**

247

1

2

3                     SIGNATURE PAGE

4

5      I, CURTIS JACKSON, have read the
foregoing deposition and hereby affix my
signature that same is true and correct,

6 except as noted on the correction page.

7

8                   _Curtis W. Jackson_
                  CURTIS JACKSON

9

10

11

   THE STATE OF             )

12    COUNTY OF               )

13

     Before me _Matthew Wilson Robertson_ on this

14 day personally appeared _Curtis Jackson_
known to me [or proved to me on the oath of

15 _____ or through
_Photo ID._____ (description of

16 identity card or other document)] to be the
person whose name is subscribed to the

17 foregoing instrument and acknowledged to me
that he/she executed the same for the

18 purposes and consideration therein expressed.
     Given under my hand and seal of office

19 this _30_ day of _August_____, 2011.

20

21            _Matthew W. Robertson_
     NOTARY PUBLIC IN AND FOR

22      THE STATE OF

23

My Commission Expires:

24 _August 30, 2011_

25

MATTHEW WILSON ROBERTSON
Notary Public, State of Texas
My Commission Expires
August 26, 2013

**PURSUANT TO CONFIDENTIALITY ORDER**