UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179<br>SECTION: J<br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

Deposition of PAUL J. JOHNSON, taken in the Pan American Life Center, Bayou Room, 11th Floor, 601 Poydras Street, New Orleans, Louisiana 70130, on Monday, March 28, 2011.

APPEARANCES:

LEGER & SHAW
(By: Walter J. Leger, Jr., Esquire)
600 Carondelet Street
9th Floor
New Orleans, Louisiana 70130
(Plaintiff's Steering Committee)

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
Reported by:
PAUL J. JOHNSON March 28, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 190

Page 191

Page 192

Page 193

Q. Can you tell me, briefly, what was the experience level, if you know, of, let's take Mr. Harrell?

A. Jimmy, Jimmy Harrell was very experienced at being an OIM quite a while, you know. I don't know exactly, you know. You know, he's over 20 years.

Q. Maybe we'll get to ask him.

Did he have more experience than you did as a driller, toolpusher?

A. Quite possibly. I don't know for sure.

Q. How about Randy Ezell?

A. Randy's the same. He's very

49 (Pages 190 to 193)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a



In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 Reported by:
PAUL J. JOHNSON March 28, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 194

experienced, you know, I know him for a long time. I just couldn't tell you the time in each position, but he's very experienced.

Page 196

Page 195

Page 197

50 (Pages 194 to 197)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 Reported by:
PAUL J. JOHNSON March 28, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 206

Page 208

Q. Did BP ever criticize to you any of the Transocean personnel with regard to well control?

A. No. No. I don't believe they did. I don't recall any. No.

Page 207

Page 209

53 (Pages 206 to 209)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
PAUL J. JOHNSON March 28, 2011 Reported by: JOSEPH R. KAISER, JR., CCR, RPR

Page 302

[REDACTED]

Page 303

[REDACTED]

Page 304

Q. [REDACTED] But the fact remains that as the operations manager of the DEEPWATER HORIZON, it was your responsibility not to operate the rig if a

Page 305

critical piece of equipment was out of certification; correct?

MR. JOHNSON:

Object to the form of the question.

THE WITNESS:

Okay. Take a step back. I was the rig manager, not the operations manager. And that I would not operate the rig if the rig wasn't operational and wasn't safe to operate.

77 (Pages 302 to 305)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

0c605735-49d6-46a1-bcab-5c1a69dae10a

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 Reported by:
PAUL J. JOHNSON March 29, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 420

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

MDL NO. 2179

SECTION: J

JUDGE BARBIER
MAG. JUDGE SHUSHAN

VOLUME II

Deposition of PAUL J. JOHNSON, taken in the Pan American Life Center, Bayou Room, 11th Floor, 601 Poydras Street, New Orleans, Louisiana 70130, on Tuesday, March 29, 2011.

APPEARANCES:

LEGER & SHAW
(By: Walter J. Leger, Jr., Esquire
and Christine L. DeSue,
Esquire)
600 Carondelet Street
9th Floor
New Orleans, Louisiana 70130
(Attorneys for PSC)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 Reported by:
PAUL J. JOHNSON March 29, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 545

[redacted]

Page 546

[redacted]
Q. Okay. I want to start with a few questions about the 2009 BP audit, sir.
A. Okay.
Q. To be clear, when was that audit conducted?
A. It was conducted early September, 2009.
Q. Okay. What was the operational status of the DEEPWATER HORIZON at the time of the BP inspection?
A. The rig was in a plan that would service period, so it was out of service and doing maintenance.
Q. Do you have an understanding as to whether or not BP had the opportunity or the right to demand that any issue be resolved before it agreed that the rig would go back into service?
A. That was my understanding, yes.
Q. Did that, in fact, happen? Did BP request that the rig not go back into service until some issue was resolved?
A. Yes, they did.
Q. Did Transocean resolve that

Page 547

issue to BP's satisfaction, as far as you have an understanding?
A. Yes, we did.
Q. And what about Transocean, was there anything that Transocean wanted to resolve before sending the rig back into service?
A. Yes, there was.
Q. And what was that, sir?
A. We had an issue with the PRS, which is the pipe racking system. We did extensive overhaul during that period and then when we put it back together and commissioned it, we thought we had it all worked out but there was obviously was another problem with it.
Which I suppose we could have lived with and risk assessment and carried on, and but after consultation with the OIM and the rig team, the feelings were the best thing was to stop and fix it, so that's what we did.
Q. Who made the decision to stop and fix it, Mr. Johnson?
A. Me.

Page 548

Q. Were you new in your position as rig manager for performance at that time?
A. Yes. I'd only been there a couple of weeks at that point, somewhere around that.
Q. Did you experience any hesitation despite being new in your position in informing BP that you wanted to resolve an issue before the rig went back into service?
A. No.
Q. Did you feel as if Transocean management backed you on your decision?
A. Yes. Yes, they did. And although I was confident, you're still not sure how that information will be received when you inform your bosses. So, you know, I do recall actually the first time I went was my first ever operation meeting I went to. And I went to the meeting and I informed the team that we're talking about rig schedule or something, I don't recall.
That's when I told them that the rig was going to be an additional six or so days -- I can't recall the time frame --

33 (Pages 545 to 548)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 Reported by:
PAUL J. JOHNSON March 29, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 549

late. They asked why and I informed them why and they asked how long it was going to be and I told them and they said okay to that and we moved on to another subject.

Page 550

Page 551

Page 552

Q. Did you ever receive any feedback from BP personnel regarding Transocean's efforts to close out audit items?

A. Yes, I did.

Q. Could you tell me what the nature of that feedback was, Mr. Johnson?

A. We received very positive feedback from BP on our approach to handling the issues, closing them out and communicating to BP. They were very satisfied with our performance on the action items.

Q. From whom did you receive BP -- that type of feedback from BP?

A. You know, we received written feedback from Angel Rodriguez, you know, and I sat and met regularly with Angel, Brett Cocales, John and Joe Neumeyer and they we.

34 (Pages 549 to 552)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010
Reported by:
PAUL J. JOHNSON March 29, 2011 JOSEPH R. KAISER, JR., CCR, RPR

Page 557

Page 559

Q. Okay. I want to turn just a minute, if we can, to the culture aboard the DEEPWATER HORIZON. DEEPWATER HORIZON. And I apologize in advance, Mr. Johnson, if some of these questions are difficult to answer.

Did you have any impression about whether the men and women aboard the DEEPWATER HORIZON took pride in their work?

A. Yes, they did.

Q. Did you consider the men and women aboard the DEEPWATER HORIZON to be well trained?

A. Yes.

Q. Did you consider the DEEPWATER HORIZON to have a good safety culture?

A. Yes, I did.

Q. Why?

A. Various reasons, you know. I have to characterize it -- I pushed tirelessly on safety, that was kind of my number one priority in building the culture. You can fix everything else, okay, you can fix downtime, you can fix

Page 558

Page 560

everything but you can't fix safety. If you hurt somebody, you can't take it back.

So it was high on my list and we talked about safety every day. And it was the start of our conversations, it was the start of our meetings, it was in the forefront of everything we did.

Q. Was there anything else, Mr. Johnson that was a higher priority than the safety of the men and women aboard the DEEPWATER HORIZON?

A. No.

36 (Pages 557 to 560)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C. Telephone: (504) 525-9100
New Orleans, LA 70130-6029 Board-Certified Court Reporters Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010    Reported by:
PAUL J. JOHNSON                    March 29, 2011    JOSEPH R. KAISER, JR., CCR, RPR



Page 565 / Page 566 (redacted)

Page 567

```
 2        First, if you can tell us who on
 3   the Transocean DEEPWATER HORIZON crew would
 4   have had well control responsibilities as
 5   of the time of the incident in terms of
 6   activating the BOP?
 7     A.   Transocean personnel?
 8     Q.   Yes, sir.
 9     A.   Assistant drillers.  Drillers,
10   toolpushers.  OIM, subsea engineer.
11     Q.   What were their names,
12   Mr. Johnson?
13     A.   Steven Curtis, Tom Clark.  Dewey
14   Revette, Jason Anderson.
15     Q.   Were these hard workers,
16   Mr. Johnson?
17     A.   Yeah.
18     Q.   Were they good workers?
19     A.   Yes, they were.
20     Q.   Were they well trained?
21     A.   Yes.
22     Q.   They're the type of workers,
23   based on your experiences, that would have
24   become complacent in doing their jobs?
25     A.   No.
```

Page 568 (redacted)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029   Board-Certified Court Reporters   Facsimile: (504) 525-9109

01345a41-c9e4-46f0-ac21-bb90b03bbc3c

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL ) MDL NO. 2179
**by the** OIL RIG, )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO, )
April 20, 2010 ) JUDGE BARBIER
)
) MAG. JUDGE
) SHUSHAN

VOLUME 1

Deposition of JONATHAN D. KEETON, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on August 17, 2011.

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

Mr. Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, Louisiana 70601
mlundy@lundylawllp.com

-

Ms. Lauren Lundy Adcock
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
300 North College Avenue, Suite 309
Fayetteville, Arkansas 72701
llundy@lundylawllp.com

-

Mr. Jimmy Williamson
WILLIAMSON & RUSNAK
4310 Yoakum Boulevard
Houston, Texas 77006-5818
Jimmy@jimmywilliamson.com

-

Mr. Andrew Lemmon
LEMMON LAW FIRM
650 Poydras Street, Suite 2335
New Orleans, LA 70130
andrew@lemmonlawfirm.com

APPEARING FOR BP, INC.:
Mr. Don K. Haycraft
LISKOW & LEWIS
701 Poydras, Street 5000
New Orleans, Louisiana 70139-5099
dkhaycraft@liskow.com

**APPEARING FOR ANADARKO PETROLEUM COMPANY:**
Ms. Marilee J. Allan
BINGHAM McCUTCHEN
Three Embarcadero Center
San Francisco, California 94111
marilee.allan@bingham.com

**APPEARING FOR TRANSOCEAN:**
Mr. M. Benjamin Alexander
Mr. Robert Kallam
PREIS & ROY, PLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70501
mba@preisroy.com
rmk@preisroy.com

**APPEARING FOR HALLIBURTON:**
Mr. Bruce W. Bowman
Ms. Elizabeth Dolghih
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
bbowman@godwinronquillo.com
edolghih@godwinronquillo.com

**APPEARING FOR CAMERON:**
Mr. Thomas Ganucheau
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
tganucheau@brsfirm.com

APPEARING FOR THE STATE OF LOUISIANA
Mr. Henry Dart
HENRY DART ATTORNEYS AT LA, PC
510 North Jefferson Street
Covington, Louisiana 70433
hdart@dartlaw.com

**APPEARING FOR WEATHERFORD:**
Mr. Brett S. Venn
JONES WALKER
201 St. Charles Avenue
New Orleans, Louisiana 70170
bvenn@joneswalker.com

APPEARING FOR DRIL-QUIP:
Ms. Wendy Ware Bishop
WARE, JACKSON, LEE & CHAMBERS
2929 Allen Parkway, 42nd Floor
Houston, Texas 77019-2185
wendybishop@warejackson.com

APPEARING ON BEHALF OF M-I SWACO, LLC:
Mr. John Funderburk
MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
1000 Louisiana St., Suite 4000
Houston, Texas 77002-5006
jfunderburk@morganlewis.com

APPEARING FOR MOEX USA AND MOEX OFFSHORE 2007, LLC

Mr. Greg T. Lembrich
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1540 Broadway
New York, New York 10036-4039
greg.lembrich@pillsburylaw.com

PURSUANT TO CONFIDENTIALITY ORDER



273

**Q. Did you feel that either you or BP ever cut corners in order to save money and compromise safety?**

A. No, never.

275

274

276

**PURSUANT TO CONFIDENTIALITY ORDER**

317

**Q. Were the employees, including the OIM, the toolpusher, the senior toolpusher, the driller and the assistant drillers, all empowered to make their own safety calls on DEEPWATER HORIZON?**

A. That is --

**MR. KALLAM:** Object to the form.

A. -- correct.

**Q. (BY MR. HAYCRAFT) Did they -- were they instructed that they should not -- that they were obligated not to proceed on a task until they are totally confident the conditions are safe?**

A. If they felt the job was not safe, they had the right to stop the job.

**Q. Did they have the obligation to stop the job?**

A. Yes.

**Q. Were they empowered to stop the job?**

A. I empowered all of them to do that.

318

319

320

**Q. So as a manager for Transocean, did you always put safety first?**

A. Safety was always paramount, yes.

PURSUANT TO CONFIDENTIALITY ORDER



321

**Q. In other words, saving hours -- man hours**

322

**as long as safety is not compromised is a good thing for performance benchmarks, isn't it?**

A. We will not compromise safety for performance.

323

324

**PURSUANT TO CONFIDENTIALITY ORDER**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL ) MDL NO. 2179
**by the** OIL RIG, )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO, )
April 20, 2010 ) JUDGE BARBIER
)
) MAG. JUDGE
) SHUSHAN

VOLUME 2

Deposition of JONATHAN D. KEETON, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on August 18, 2011.

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

Mr. Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, Louisiana 70601
mlundy@lundylawllp.com

-

Ms. Lauren Lundy Adcock
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
300 North College Avenue, Suite 309
Fayetteville, Arkansas 72701
llundy@lundylawllp.com

APPEARING FOR BP, INC.:

Mr. Don K. Haycraft
LISKOW & LEWIS
701 Poydras, Street 5000
New Orleans, Louisiana 70139-5099
dkhaycraft@liskow.com

APPEARING FOR ANADARKO PETROLEUM COMPANY:

Ms. Marilee J. Allan
BINGHAM McCUTCHEN
Three Embarcadero Center
San Francisco, California 94111
marilee.allan@bingham.com

**APPEARING FOR TRANSOCEAN:**
Mr. M. Benjamin Alexander
Mr. Robert Kallam
PREIS & ROY, PLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70501
mba@preisroy.com
rmk@preisroy.com

**APPEARING FOR HALLIBURTON:**
Mr. Bruce W. Bowman
Ms. Elizabeth Dolghih
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
bbowman@godwinronquillo.com
edolghih@godwinronquillo.com

**APPEARING FOR CAMERON:**
Mr. Thomas Ganucheau
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
tganucheau@brsfirm.com

APPEARING FOR THE STATE OF LOUISIANA
Mr. Henry Dart
HENRY DART ATTORNEYS AT LA, PC
510 North Jefferson Street
Covington, Louisiana 70433
hdart@dartlaw.com

**APPEARING FOR WEATHERFORD:**
Mr. Matthew S. Lejeune
JONES WALKER
201 St. Charles Avenue
New Orleans, Louisiana 70170
bvenn@joneswalker.com

APPEARING FOR DRIL-QUIP:

Ms. Wendy Ware Bishop
WARE, JACKSON, LEE & CHAMBERS
2929 Allen Parkway, 42nd Floor
Houston, Texas 77019-2185
wendybishop@warejackson.com

APPEARING ON BEHALF OF M-I SWACO, LLC:

Mr. John Funderburk
MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
1000 Louisiana St., Suite 4000
Houston, Texas 77002-5006
jfunderburk@morganlewis.com

APPEARING FOR MOEX USA AND MOEX OFFSHORE 2007, LLC:
Mr. Greg T. Lembrich
PILLSBURY WINTHROP SHAW PITTMAN, LLP
1540 Broadway
New York, New York 10036-4039
greg.lembrich@pillsburylaw.com

FOR THE WITNESS:
Mr. Matt Hennessy
ATTORNEY AT LAW
1001 Fannin, Suite 1950
Houston, Texas 77002
matt@hennesyfirm.com



638

**Q. Are you able to quantify in a percentage term or hours per day how much of your time as rig manager from April of 2001 through August of 2009 was devoted to safety?**

A. Safety is part of my day all day and even in the night.

**Q. Can you elaborate on that for us? What specific tasks do you do throughout the day that**

639

**have safety intertwined or focus of safety?**

A. It will start with a morning call, normally around 6:15. We talk about the safety of the vessel. I review safety alerts that come by or -- or any safety issues that come by through the office that day, any safety issues onboard the vessel with personnel. I review HS&E reports. Any major tasks we talk about safety.

**Q. Okay.**

A. I talk about safety on the way to work, safety on the way home.

**Q. Is it fair to say that safety was your No. 1 priority?**

**MR. DART:** Objection; form.

A. It was -- it's not a priority. It's a core value with me.

**Q. (BY MR. KALLAM) Was it also a core value of Transocean?**

**MR. DART:** Objection; form.

A. Yes.

**Q. (BY MR. KALLAM) Did you ever observe any action on the part of Transocean or Transocean's management during your tenure as a rig manager of the DEEPWATER HORIZON that led you to believe that safety was not the core value of the**

640

**company?**

**MR. HAYCRAFT:** Objection; form.

A. I've never seen safety not be the core value of the company.

**Q. (BY MR. KALLAM) From April of 2001 until August of 2009, did you ever receive any complaints from any BP contact concerning the condition of the DEEPWATER HORIZON not being safe and seaworthy and able to carry out its function for them in drilling their wells?**

**MR. HAYCRAFT:** Objection; form.

A. Not that I can recall.

**Q. (BY MR. KALLAM) Did you ever receive in complaints from BP or any of their representatives from April of 2001 until August of 2009 that the BOP aboard the DEEPWATER HORIZON was not functioning safely?**

**MR. HAYCRAFT:** Object to the form.

A. Not that I recall.

**Q. (BY MR. KALLAM) Did you ever receive any complaints about -- from them about the BOP not able to perform its function?**

A. No.

**Q. Did you ever receive from BP any BP contacts or any governmental agency any**

641

**information that the BOP was not in full compliance with any applicable standards?**

**MR. DART:** Object to the form.

A. No, I've never received that.

**Q. (BY MR. KALLAM) Had you ever received any complaints from BP or any of your representatives that you dealt with at BP that the crew onboard the DEEPWATER HORIZON was not adequately trained?**

A. No.

**Q. Did you ever receive any complaints that they were not competent to complete their job duties and responsibilities?**

A. No.

**Q. Did you ever receive any complaints from BP or any of their -- any of your BP contacts that the crew aboard the HORIZON was not trained or experienced in well control?**

A. No.

PURSUANT TO CONFIDENTIALITY ORDER



**Q. In reviewing reports, speaking to the crew or observing their actions, did you form any opinions as to the drilling crew's ability to respond to a well control situation?**

**MR. HAYCRAFT:** Object to the form.

A. No, because they had caught well kicks half a barrel to a barrel, and there is very few people that can ever catch them that quick.

**Q. (BY MR. KALLAM) My question was, if you -- during the course of observing them in action, so to speak, in the trenches, responding to these well control situations, had you**

**formulated any opinions as to their competency based on their training and experience to address a well control situation?**

**MR. HAYCRAFT:** Objection; form.

**MR. DART:** Objection; form.

A. They were very competent, in my opinion.

**Q. (BY MR. KALLAM) And what's the basis of your statement to make that characterization of the crew of the HORIZON?**

A. They -- they showed to be very professional and on top of what they were doing. I mean, some of these guys were the best of the best.

**Q. You knew Dewey Revette?**

A. I've known Dewey for 25 years.

**Q. You knew Jason Anderson?**

A. I've known Jason Anderson probably from '97.

**Q. Mr. Anderson was a toolpusher onboard the HORIZON the night of April 20th; is that right?**

A. That is correct.

**Q. Had you made any recommendations concerning the future employment of Mr. Anderson?**

A. Mr. Anderson was to come off of the HORIZON the following day to come to me to be

promoted up to senior toolpusher.

**Q. When was that going to take effect?**

A. The day after the incident.

**Q. And Mr. Dewey Revette you had worked with on a number of occasions in the past?**

A. Many occasions.

**Q. Had actually worked side by side him as well as over him, correct?**

A. That is correct.

**Q. Would you characterize either of those individuals as risk -- risk takers?**

A. Neither one of them take risks.

**Q. How would you characterize their work ethic and their work attitude insofar as well control was concerned?**

A. They -- they took well control very serious. I mean, if -- if they would have known that this well would have done whatever it done, they would have never done it. So, I mean, I don't know how to really -- really qualify -- I mean but these guys were very professional and on top of their game.

**Q. Is there any doubt in your mind that Mr. Revette and Mr. Anderson would have done everything within their power to act in**

**accordance with the well control policies and procedures that they were trained to perform and those that you had seen them exhibit in the past?**

**MR. HAYCRAFT:** Objection; form.

A. I have never seen them do anything that wasn't what they were supposed to do in well control, and I have no reason to doubt that they would do anything wrong.

PURSUANT TO CONFIDENTIALITY ORDER