UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL            ) MDL NO. 2179
BY THE OIL RIG              )
"DEEPWATER HORIZON" IN      ) SECTION "J"
THE GULF OF MEXICO, ON      )
APRIL 20, 2010              ) JUDGE BARBIER
                            ) MAG. JUDGE SHUSHAN

Deposition of STEVEN LEON NEWMAN, taken at The Four Seasons Hotel, 1300 Lamar, Ballroom A, Houston, Texas, 70130, on the 30th day of September, 2011.

APPEARANCES

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
Mr. Jimmy Williamson
WILLIAMSON & RUSNAK
4310 Yoakum Boulevard
Houston, Texas 77006-5818

APPEARING FOR BP, INC.:
Mr. Matthew T. Regan
Ms. Whitney Becker
KIRKLAND & ELLIS
300 North LaSalle
Chicago, Illinois 60654

APPEARING FOR TRANSOCEAN:
Mr. Brad D. Brian
MUNGER TOLLES & OLSON
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Ms. Rachel Giesber Clingham
Mr. Robert A. Lemus
SUTHERLAND ASBILL & BRENNAN
1001 Fannin, Suite 3700
Houston, Texas 77002-6760
Ms. Lauren Woodard
ROYSTON RAYZOR
711 Louisiana Street, Suite 500
Houston, Texas 77002

APPEARING FOR ANADARKO PETROLEUM COMPANY:
Ms. Jennifer S. Rosen
Ms. Marilee J. Allan
BINGHAM MCCUTCHEN
Three Embarcadero Center
San Francisco, California 94111-4067

APPEARANCES (Continued)

APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
Mr. Alex Roberts
BECK, REDDEN & SECREST
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010

APPEARING FOR WEATHERFORD:
Mr. Michael A. Chernekoff
JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE, LLP
JP Morgan Chase Tower
600 Travis, Suite 6601
Houston, Texas 77002

APPEARING FOR M-I SWACO:
Mr. Wendell Bruce Hays
MORGAN, LEWIS & BOCKIUS, LLP
1000 Louisiana Street, Suite 4200
Houston, Texas 77002-5006

APPEARING FOR HALLIBURTON:
Ms. Angelle M. Adams
Mr. Bruce W. Bowman, Jr.
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

APPEARING FOR THE UNITED STATES:
Ms. Deanna J. Chang
U.S. DEPARTMENT OF JUSTICE
TORT BRANCH, CIVIL DIVISION
1425 New York Avenue, N.W.
Suite 10100
Washington, D.C. 20005
Post Office Box 14271
Washington, D.C. 20044-4271

APPEARANCES (Continued)

APPEARING FOR THE UNITED STATES COAST GUARD:
Lt. Christopher Jones
Marine Investigator
U.S. COAST GUARD
9640 Clinton Drive
Houston, Texas 77029-4328

APPEARING FOR THE STATE OF LOUISIANA:
Mr. Lambert J. "Joe" Hassinger, Jr.
GALLOWAY, JOHNSON, TOMPKINS, BURR AND SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139

ALSO PRESENT:
Mr. Mark Hendrix, Videographer

**PURSUANT TO CONFIDENTIALITY ORDER**

157

158

159

160

15  Q.  You have an expectation
16  that if any Transocean employee were to see
17  something that they felt represented a
18  potential unsafe operation, that they would
19  stop the job?
20  A.  Stop work authority is a -- is a
21  key component of our safety management system
22  and -- and so, you know, you -- you've got
23  the policy statement right there in front of
24  you where we talk about every employee has
25  not only the right, but the obligation to

**PURSUANT TO CONFIDENTIALITY ORDER**

161

1  exercise that -- that stop work authority and
2  so, you know, in -- in my role as CEO, every
3  time I meet with our people I talk about
4  that.

162

12      Q.   (BY MR. REGAN)  Yeah, if you
13  were on a Transocean rig and you directed the
14  newest Transocean employee to do something
15  and that employee thought it was unsafe, they
16  had the authority and obligation to stop the
17  job?
18      A.   That -- that's the kind of
19  culture we're -- that's the kind of culture I
20  think we have.
21      Q.   Regardless of the fact that you
22  had ultimate responsibility, correct?
23      MS. CLINGMAN:  Let him answer.  Let him
24  answer.
25      A.   As I was about to say, that's

163

1  the kind of culture I think we have.  No
2  matter what the individual's relative ranks
3  or levels of responsibility or supervision,
4  that -- that obligation of stop work
5  authority, that principle of stop work
6  authority is all inclusive.  It goes -- it
7  cuts across chains of command.  It cuts
8  across departmental roles and responsibility.
9  It's -- if you see something unsafe, you're
10  supposed to stop it.
11      Q.   (BY MR. REGAN)  And if a company
12  man were to say something or direct a
13  Transocean rig hand to do something that the
14  Transocean rig hand thought was unsafe or
15  didn't understand, that rig hand has the
16  entitlement and obligation to stop the job?
17      A.   That -- that's just the way our
18  stop work authority system is supposed to
19  work.  It doesn't matter what you're asked to
20  do or who asks you to do it; if you're not
21  comfortable, if you don't get all of the
22  reassurance from the individual that's giving
23  the instruction that it is safe to proceed,
24  that every aspect of it's been evaluated,
25  it's okay, you're good to go.

164

1      Q.   And if you don't feel like you
2  have enough information about the job you're
3  about to do, it's your responsibility and
4  obligation to stop the job as a Transocean
5  employee, correct?
6      MS. CLINGMAN:  Objection; form.
7      A.   If it's -- you know, if it's a
8  situation where -- where you feel you've been
9  inadequately informed, where -- where you
10  recognize that you don't have all of the
11  information you need, where you recognize
12  that the -- that the assurance you're
13  receiving from your -- from whoever is
14  delivering it is for some reason suspect or
15  you have reason to doubt what they're telling
16  you, you ought to -- you ought to exercise
17  stop work authority and pursue that.
18      Q.   (BY MR. REGAN)  And that's your
19  expectation as the CEO for the behavior that
20  you're instilling in a safety culture at
21  Transocean, correct?
22      A.   That's the -- that's the kind of
23  culture I'm trying to instill in all of our
24  employees every time I meet with them.



41 (Pages 161 to 164)

**PURSUANT TO CONFIDENTIALITY ORDER**

357

3    Q.   Did BP ever express an objection
4  to the safety management system that
5  Transocean was using?
6    A.   To my knowledge, BP never
7  objected.
8    Q.   Okay. You were asked some
9  questions about the procedures that y'all
10 used in terms of well procedures. Do you
11 remember that, the Transocean well control
12 manual? You were asked an entire series of
13 questions.
14   A.   I remember those discussions.
15   Q.   Sure. Did BP ever object to the
16 well control procedures that Transocean had
17 in its manual before the disaster?
18   A.   Not that I recall.
19   Q.   Did BP ever say, we want to
20 change these procedures because we're unhappy
21 with them?
22   A.   I don't believe so.
23   Q.   Did BP ever even go to the
24 trouble to review them with your upper
25 management? Did BP even go to the trouble of

358

1  having a meeting to review them and say we
2  are unhappy with the well control procedures
3  that Transocean has implemented?
4    MR. REGAN: Object to form.
5    A.   If -- if BP were unhappy, they
6  never brought it to my attention.

359

360

5    Q.   Did they ever say we are unhappy
6  with your blowout preventer procedures and we
7  want to change the way you're doing it, did
8  BP ever do that to your knowledge?
9    A.   Not to my knowledge.
10   Q.   By the way, if BP -- you have
11 this stop the work philosophy, correct? I
12 believe that's part of your system, correct?
13   A.   Yes, stop work authority.
14   Q.   Does that extend to the company
15 representatives on your rigs?
16   A.   Absolutely.
17   Q.   Okay. With respect to BP
18 particular -- that's true for all your
19 customers, not just BP, correct?
20   A.   That -- our -- our philosophy
21 around time out for safety, which is what we
22 call it, stop work authority, time out for
23 safety, our philosophy with respect to time
24 out for safety applies to anybody on our
25 drilling rigs.

90 (Pages 357 to 360)

**PURSUANT TO CONFIDENTIALITY ORDER**

376

I, STEVEN LEON NEWMAN, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.



STEVEN LEON NEWMAN
OCTOBER 13, 2011

Frank R. Gordon   Oct 13, 2011

FRANK ROBERT GORDON
MY COMMISSION EXPIRES
October 21, 2013

**PURSUANT TO CONFIDENTIALITY ORDER**