IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

CHRISTOPHER PLEASANT March 14, 2011      THU BUI, CCR, RPR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL       )     MDL NO. 2179
by the OIL RIG,         )
DEEPWATER HORIZON in    )     SECTION "J"
the GULF OF MEXICO,     )
April 20, 2010          )     JUDGE BARBIER
                        )
                        )     MAG. JUDGE
                        )     SHUSHAN



            * * * * * * * * * * * * * *
                   VOLUME 1
            * * * * * * * * * * * * * *



            Deposition of CHRISTOPHER
PLEASANT, taken at Pan-American Building,
601 Poydras Street, 11th Floor, New
Orleans, Louisiana, 70130, on the 14th of
March, 2011.


APPEARANCES:


Mr. Guy E. Matthews
MATTHEWS, LAWSON & JOHNSON, PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057-3778
Phone:  713-355-4200 Fax:  713-355-9689

d707c43d-85cb-437a-b4c8-fade28a01aa0

IN RE:  OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

CHRISTOPHER PLEASANT March 14, 2011      THU BUI, CCR, RPR

Page 34

Page 36

1  happened to make the rig explode.  I know
2  that I slept on that rig every night.
3      Q.   Yeah?
4      A.   It was a safe rig.  Real safe.
5      Q.   Until April the 20th?
6      A.   I felt comfortable getting in my
7  bed every morning going to sleep on that
8  rig.  You know, what happened on
9  April 20th, I can't tell you.

Page 35

Page 37

13     Q.   Do you think this rig exploded
14 because it just was happenstance?  It
15 wasn't a man-made occurrence of gross
16 negligence?
17     MR. BAAY:
18         Object to the form of the
19 question.
20     MR. BROCK:
21         Object to the form.
22     MR. GODWIN:
23         Object to the form.
24     A.   You know, the only thing I can
25 say about that is, I don't know what

10 (Pages 34 to 37)

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters    Facsimile:(504) 525-9109

d707c43d-85cb-437a-b4c8-fade28a01aa0

Page 417

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL      )    MDL NO. 2179
by the OIL RIG,        )
DEEPWATER HORIZON in   )    SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010         )    JUDGE BARBIER
                       )
                       )    MAG. JUDGE
                       )    SHUSHAN



\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 2
\*\*\*\*\*\*\*\*\*\*\*\*\*\*



          Deposition of CHRISTOPHER
PLEASANT, taken at Pan-American Building,
601 Poydras Street, 11th Floor, New
Orleans, Louisiana, 70130, on the 15th of
March, 2011.



APPEARANCES:


Mr. Guy E. Matthews
MATTHEWS, LAWSON & JOHNSON, PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057-3778
Phone:  713-355-4200 Fax:  713-355-9689

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                     Reported by:
CHRISTOPHER PLEASANT VOL. II   March 15, 2011            THU BUI, CCR, RPR



Page 650

Page 652

Page 651

Page 653

15      Q.   Do you believe that safety was
16  something that was emphasized on the
17  Deepwater Horizon?
18      A.   Yes.
19          MR. WILLIAMSON:
20             Objection, form.
21      Q.   What do you believe Transocean
22  did to emphasize safety?
23      A.   Before every job, you had a
24  pre-job meeting and you discussed the
25  hazards of that job.  Before you even go to

601 Poydras Street, Suite 1720   GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029      Board-Certified Court Reporters   Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                Reported by:
CHRISTOPHER PLEASANT VOL. II   March 15, 2011                    THU BUI, CCR, RPR

Page 654

1   work, they had safety meetings.  They have
2   weekly safety meetings as well.
3       Q.   Okay.  What other things?
4           MR. GODWIN:
5              Objection, form.
6       A.   I don't understand.
7       Q.   Well, for example, on Sundays,
8   would you attend master drills?
9       A.   Yes.  We -- on Sundays, we -- we
10  had a weekly fire drill, and you had also
11  had a -- a weekly safety meeting on Sundays
12  that -- as well.
13      Q.   Are you familiar with something
14  called think plans?
15      A.   Yes.
16      Q.   Describe for me what that is.
17      A.   Think plan is a -- it's a
18  written plan of -- of the job that you
19  about to do.  You write, in detail, what
20  you're going to do.  You write the hazards
21  in it.  You write how you're going to
22  mitigate the hazards, you know, what
23  hazards you found, how you're going to
24  mitigate the risk of not having an
25  incident.

Page 655

1       Q.   How about start cards?  Are you
2   familiar with start cards?
3       A.   Yes.
4       Q.   Describe for me what a START
5   card is.
6       A.   A START card is -- if I was out
7   observing somebody else doing a good job or
8   a bad job, you know, you know, and I give
9   that person some feedback, you know,
10  telling them what it is they did good or
11  what it is they didn't do good.  And you
12  know, I wouldn't put no name on it, who it
13  was, but, you know, I turn the START card
14  in.
15      Q.   In -- let's just take your last
16  several years as a subsea supervisor on the
17  Horizon.  How much time would you estimate
18  that you spent on the Horizon?
19      A.   I spent over half of my life on
20  there.
21      Q.   Did you feel safe living on the
22  Horizon?
23      A.   Yes.
24      Q.   And did -- do you believe that
25  Transocean's rig management, based on the

Page 656

1   experience that you saw, took safety drills
2   seriously?
3           MR. WILLIAMSON:
4              Objection to form.
5       A.   Yes.
6       Q.   Did you take those drills
7   seriously?
8       A.   Yes, I did.



15      Q.   ▮▮▮▮.  In your role as a subsea
16  supervisor, if you saw something that you
17  believe to be unsafe related to the blowout
18  preventer, would you make Mark Hay aware of
19  those things?
20      A.   Yes, I would.
21      Q.   That was your practice and habit
22  aboard the Horizon?
23      A.   Yes.

Page 657

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.   Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE:  OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:
CHRISTOPHER PLEASANT VOL. II   March 15, 2011                         THU BUI, CCR, RPR

Page 658



25   Q.   Was there one person that you

Page 660

1  stopped doing your work as a pump hand and
2  went into full time training to be a subsea
3  supervisor, what is the first thing you
4  did?  Did you leave the Horizon?
5      A.   Yes.  I left the Horizon.  I
6  went to other rigs, wherever they was doing
7  the rig move with the BOP on deck, and I
8  assisted them with their rig move.
9      Q.   How many other different rigs
10  did you serve on?
11     A.   I don't recall.
12     Q.   Okay.  More than five?
13     A.   Yes.
14     Q.   Okay.  And on each of these
15  rigs, you would be under the
16  apprenticeship, for lack of a better word,
17  of -- of the senior on the rig?
18         MR. WILLIAMSON:
19             Objection to form.
20     A.   Yes.
21     Q.   And what would that person --
22  what were the type of activities you did
23  during your training?
24     A.   During my training?  Man, one
25  rig we -- when I got there, they had taken

Page 659

1  made it known to that you wanted to be a
2  subsea supervisor?
3         MR. WILLIAMSON:
4             Objection, form.
5      A.   Yes.
6      Q.   Who was it?
7      A.   Billy Stringfellow.
8      Q.   Okay.  And then he started
9  incorporating you into this program that
10  you've been telling us about?
11     A.   No.  He just -- he told me what
12  I needed to do to be one.
13     Q.   Okay.  How long did you do this
14  volunteer subsea work or this on-the-job
15  training subsea work before you went into a
16  formal training program?
17     A.   Roughly about three years.
18     Q.   On the Horizon?
19     A.   Yes.
20     Q.   And then when you entered formal
21  training, describe for us what the first
22  step in that was, in that process.
23     A.   I don't understand what you're
24  asking.
25     Q.   Sure.  When you -- when you

Page 661

1  all the bonnet doors off and they -- we had
2  to put them back on when I got there.
3  Hosing up in a --a pod, you know.  A couple
4  of rigs it was, you know, just changing out
5  the very basics.  Changing out the rubber
6  goods.
7      Q.   Was the focus, to your
8  understanding, to put you through all the
9  steps of BOP maintenance so that you can
10  see those and learn how to do them?
11     A.   Yes.
12     Q.   And how long did that program
13  last?
14     A.   For me, approximately 10,
15  11 months.  Ten months to a year.
16     Q.   After that -- those ten months,
17  were you then assigned back to the Horizon?
18     A.   Yes.
19     Q.   Did you feel at the end of that
20  time that you had received good quality
21  training?
22     A.   Yes.



601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters  Facsimile:(504) 525-9109

6a51db20-5afa-4b0e-bedc-870742100846

IN RE: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010

Reported by:

CHRISTOPHER PLEASANT VOL. II    March 15, 2011                   THU BUI, CCR, RPR



Page 665

5     Q.   Okay.  Do you feel that
6  Transocean always supported your desire to
7  go get additional education?
8     A.   Yes.
9     Q.   And additional training to be a
10  subsea supervisor?
11     A.   Yes.
12     Q.   Was there ever a time where
13  Transocean said, no, you can't go get
14  additional training?
15     A.   Never.

63  (Pages 662 to 665)

6a51db20-5afa-4b0e-bedc-870742100846

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL      MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"   SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL      JUDGE BARBIER
20, 2010              MAG. JUDGE SHUSHAN

         Volume 1 of 2 of the Videotaped
Deposition of ADRIAN PAUL ROSE, 2299 Lone
Star Drive, Sugarland, Texas, taken in the
Pan American Life Center, 11th Floor, 601
Poydras Street, New Orleans, Louisiana
70130, on Tuesday, April 25, 2011.

APPEARANCES:

GAINSBURGH, BENJAMIN, DAVID,
  MEUNIER & WARSHAUER
By:  Gerald E. Meunier  Esquire
1100 Poydras Street, Suite 2800
New Orleans, La 70163
        (Attorneys for Plaintiffs
        Steering Committee)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters     Facsimile: (504) 525-9109

**748fbd8e-1271-4aad-b49a-6d4c44931f67**

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010    Reported by:

ADRIAN PAUL ROSE        April 25, 2011 SANDRA D. FILES, CCR



Page 94

Page 96

Page 95

Page 97

23    Q.   Were there any SQA statements
24  generated by BP which made reference to the
25  Safety Management System of Transocean

25 (Pages 94 to 97)

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE    April 25, 2011 SANDRA D. FILES, CCR



Page 98

1  aboard the DEEPWATER HORIZON?
2      A.   I honestly don't -- don't
3  remember.  I -- you know, I would have to
4  look up the document.
5      Q.   All right.  Well, you said you
6  reviewed it since.
7      A.   I did, I did, but it was -- it
8  was seven or eight months ago, and I -- I
9  have not reviewed it for the purposes of
10  today; otherwise, I -- if you have the
11  document, I would be happy to talk to it.
12  But I seem to remember that it was pretty
13  positive about most aspects of the
14  performance.
15      Q.   Well, that's -- that's really my
16  question.
17      A.   Yeah.
18      Q.   We'll -- we'll get it if we need
19  to --
20      A.   Yeah.
21      Q.   -- but it's true, isn't it, that
22  BP at no time through that service quality
23  process --
24      A.   Yeah.
25      Q.   -- complained about the safety

Page 99

1  practices of Transocean aboard the
2  DEEPWATER HORIZON?
3      A.   No, I think they were --
4  MR. HAYCRAFT:
5  I object to the form.
6      A.   -- they were actually highly
7  complimentary.

ee this?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C          Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 106



Page 108

18     Q.               Now, briefly tell me
19   what the THINK process, START process and
20   Time Out For Safety components refer to in
21   the Transocean Safety Management System.
22     A.   Briefly, they are three of the
23   key processes in us managing safety onboard
24   our rigs and, in fact, in all our
25   facilities.  The THINK process really

Page 107

Page 109

1   involves risk management and planning, so
2   it's really our THINK planning process.
3   And for every task we undertake on the rig
4   or onshore in our facilities, the THINK
5   planning process is used.  The steps are
6   plan, inspect, identify, communicate and
7   control.
8          And if we use -- we believe that
9   if we use those five simple steps for every
10   task we undertake -- which means to plan
11   the task effectively so you have a plan,
12   inspect the equipment or the area where
13   you're going to conduct the task, look for
14   hazards, and thirdly identify those
15   hazards, communicate with other people that
16   may be affected by the task you're
17   undertaking, and then control those
18   hazards, put in controls for the hazards
19   that you have identified, have you got
20   control measures in place.
21          So at its fundamental level, the
22   THINK planning process is basically a -- a
23   tool, a mental process, and as the
24   criticality, difficulty of the task
25   increases, the level of the THINK planning

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                    Reported by:

ADRIAN PAUL ROSE       April 25, 2011 SANDRA D. FILES, CCR

Page 110

1  process increases, rising from a mental
2  process that somebody would use on a low
3  potential job to a written THINK plan that
4  they would use where the task is more
5  complex or critical, rising all the way up
6  to a task risk assessment for, you know,
7  the tasks that require it.
8      Q.  Is the client representative on
9  the rig not only expected, but offered the
10 opportunity to have input in the THINK
11 process of --
12     MR. HAYCRAFT:
13          Object to the form.
14 BY MR. MEUNIER:
15     Q.  -- of Transocean?
16     A.  Absolutely.  Everybody onboard
17 the rig has input in the THINK planning
18 process.  Everybody coming onboard the rig
19 is inducted into it and has an orientation
20 outlining the THINK planning process.
21     Q.  How about the START process?
22     A.  The same.  The START process is
23 our observation and monitoring process, so
24 for those tasks I just described where we
25 use the THINK planning tool and -- for risk

Page 111

1  management, START is equally important
2  because that's our monitoring.  So you're
3  in a task, you want to monitor that the
4  task is going to plan.  In fact, we use the
5  START process as -- as often as the simple
6  management of change.  You -- you commence
7  a task.  An example would be the weather
8  changes.  That's a management of change
9  issue at a simple level.
10          So you may want to suspend the
11 task or adjust or change your PP or
12 something as a result.  So "START" stands
13 for see, think, act, reinforce and track.
14     Q.  And the client representative on
15 a rig clearly has input and participation
16 in the START process, true?
17     A.  Yes.  They --
18     MR. HAYCRAFT:
19          Object to the form.
20     A.  -- they -- they can, and do so,
21 in fact.  In the vast majority of cases,
22 our clients actively encourage, support and
23 participate in THINK and START onboard the
24 rig.
25 BY MR. MEUNIER:

Page 112

1      Q.  Is that true in the case of BP?
2      A.  Yes.
3      Q.  And then finally, Time Out For
4  Safety is what?
5      A.  Time Out For Safety is simply
6  our stop work authority.  It's our -- when
7  hazards are seen by somebody, anybody
8  onboard the rig is in -- is entitled to
9  stop the job.  In fact, we -- we have in
10 our highest level policy that it's an
11 obligation of everybody to interrupt an
12 operation if they see something that they
13 believe is unsafe.
14     Q.  And that would extend to
15 clients' representatives?
16     A.  Everybody, everybody on the rig.
17     Q.  A customer like BP would
18 certainly be told and made well aware of
19 the fact that Time Out For Safety is a tool
20 that the company reps are also expected to
21 employ?
22     A.  Yes, and -- and I believe they
23 are very, very supportive of that, too.
24 All our clients are.

Page 113

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C        Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029 Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010

ADRIAN PAUL ROSE       April 25, 2011 SANDRA D. FILES, CCR



30 (Pages 114 to 117)

748fbd8e-1271-4aad-b49a-6d4c44931f67

In Re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010                                    Reported by:

ADRIAN PAUL ROSE      April 25, 2011 SANDRA D. FILES, CCR

Page 118

1    A.   We -- we wanted to have an
2  independent review, totally independent
3  from a recognized industry expert as to the
4  perceptions aboard our rigs of our safety
5  culture and climate and an independent
6  review of the robustness, tone and clarity
7  of our Safety Management System.



23   A.   Well, the -- the project was a
24 large global project.  We wanted them to go
25 to several divisions around the world and

Page 119

1  visit I think in excess of 20 rigs.  So it
2  would be quite a long project, and we
3  wanted to have interim reviews of how the
4  project was going and to steer the project
5  in the right direction.  So it was merely a
6  steering committee where we were to have
7  project meetings with the -- with the
8  consultants.

Page 120

Page 121

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C      Telephone (504) 525-9100
New Orleans, Louisiana 70130-6029  Board-Certified Court Reporters      Facsimile: (504) 525-9109

748fbd8e-1271-4aad-b49a-6d4c44931f67



GAUDET KAISER L.L.C.

601 Poydras Street, Suite 1720     New Orleans, Louisiana 70130
Phone: (504) 525-9100            Fax: (504) 525-910

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SU

RECEIVED
JUN - 6 2011

## WITNESS CERTIFICATE

I, **ADRIAN PAUL ROSE,** have read or have had
the foregoing testimony read to me and hereby
certify that it is a true and correct transcription
of my testimony, with the exception of any
attached corrections or changes.

_APRose_

_6/1/2011_

(Date Signed)                    (Signature)

_____ Signed with corrections as attached.

_____ Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4      PHONE   (225) 291-3411
Baton Rouge, Louisiana 70816           FAX     (225) 291-7990
263 W. Causeway Approach               PHONE   (504) 525-9100
Mandeville, Louisiana 70448            FAX     (504) 525-9109
Website: www.gaudetkaiser.com          ALT. EMAIL
                                       gk2008@aol.com & gkgk.gaudetkaiser.com

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )   MDL NO. 2179
by the  OIL RIG,      )
DEEPWATER HORIZON in  )   SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010        )   JUDGE BARBIER
                      )
                      )   MAG. JUDGE
                      )   SHUSHAN

*****************

VIDEOTAPED DEPOSITION OF STUART WILLIAM SANNAN
VOLUME I

Deposition of Stuart William Sannan,
taken at the Hilton Conference Center, 333 St.
Charles Avenue, New Orleans, Louisiana, 70130, on
Wednesday, July 27, 2011.

**2**

1               A P P E A R A N C E S
2   Mr. Charles A. DeMonaco
    FOX ROTHSCHILD, LLP
3   625 Liberty Avenue, 29th Floor
    Pittsburgh, Pennsylvania  15222
4           APPEARING FOR THE WITNESS
5   Mr. Guy E. Matthews
    Mr. Joshua Shamburger
6   MATTHEWS, LAWSON & JOHNSON, PLLC
    2000 Bering Drive, Suite 1700
7   Houston, Texas  77057
            APPEARING FOR THE
8           PLAINTIFFS' STEERING COMMITTEE
9   Mr. William Dills
    WILLIAMSON & RUSNAK
10  4310 Yoakum Boulevard
    Houston, Texas  77006
11          APPEARING FOR THE
            PLAINTIFFS' STEERING COMMITTEE
12
    Mr. Devin C. Reid
13  Mr. Don Haycraft
    LISKOW & LEWIS
14  One Shell Square
    701 Poydras Street, Suite 5000
15  New Orleans, Louisiana  70139
            APPEARING FOR BP, INC.
16
    Mr. Thomas A. Porteous
17  Ms. Leigh Ann Schell
    KUCHLER POLK
18  1616 Poydras Street, Suite 1300
    New Orleans, Louisiana  70112
19          APPEARING FOR ANADARKO
20  Mr. Michael Doyen
    MUNGER TOLLES & OLSON, LLP
21  355 South Grand Avenue, 35th Floor
    Los Angeles, California  90071
22          APPEARING FOR TRANSOCEAN
23  Mr. Richard G. Murphy
    SUTHERLAND ASBILL & BRENNAN, LLP
24  1275 Pennsylvania Avenue, NW
    Washington, D.C. 20004
25          APPEARING FOR TRANSOCEAN

**3**

1   Mr. Bruce W. Bowman
    Ms. Elisaveta Dolghih
2   GODWIN RONQUILLO
    1201 Elm Street, Suite 1700
3   Dallas, Texas 75270-2041
            APPEARING FOR HALLIBURTON
4
    Mr. Tarak Anada
5   JONES WALKER
    201 St. Charles Avenue
6   New Orleans, Louisiana  70170
            APPEARING FOR WEATHERFORD
7
    Mr. Joe Redden
8   BECK REDDEN & SECREST
    One Houston Center
9   1221 McKinney Street, Suite 4500
    Houston, Texas  77010
10          APPEARING FOR CAMERON
11  Mr. Lucas Elliot
    MORGAN LEWIS
12  1000 Louisiana Street, Suite 400
    Houston, Texas  77002
13          APPEARING FOR M-I SWACO
14  Ms. Wendy Ware Bishop
    WARE JACKSON LEE & CHAMBERS
15  2929 Allen Parkway, 42nd Floor
    Houston, Texas  77019
16          APPEARING FOR DRIL-QUIP
17  Mr. David A. Pote
    KANNER & WHITELEY, LLC
18  701 Camp Street
    New Orleans, Louisiana  70130
19          APPEARING FOR STATE OF LOUISIANA
20  ALSO PRESENT:
21  Kayla Barnes, Videographer
    Danny Damiani, Paralegal
22
23  REPORTED BY:
            MELISSA L. MAGEE, CSR, RPR, RMR
24          Certified Shorthand Reporter
            Registered Professional Reporter
25          Registered Merit Reporter

**4**

1                       INDEX
                                          PAGE
2

3   Title Page................................... 1

4   Appearances Page............................. 2

5   Index Page................................... 4

6   Exhibits Page................................ 5

7   Examination of Stuart William Sannan:
        By Mr. Matthews.................... 7
        By Mr. Pote...................... 119
8       By Mr. Haycraft.................. 179
9   Witness' Certificate...................... 295
10  Reporter's Certificate.................... 297

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



29

31

4       **Q.**     **Okay. Have you reported on the**
5  **performance of the Deepwater Horizon?**
6       A.    Yes, and the other rigs.
7       **Q.**     **What was your report with respect to**
8  **the Deepwater Horizon and its performance?**
9       **MR. DOYEN:** Object to the form.
10      **THE WITNESS:** The reports came in various
11 forms. Tracking the safety performance, drilling
12 efficiency, down time.
13 **BY MR. MATTHEWS:**
14      **Q.**     **What was -- did you report at any**
15 **time, including after April the 20th, 2010, that**
16 **the safety performance of the Deepwater Horizon**
17 **was good?**
18      A.    The safety performance and -- you're
19 asking me if I specifically said the safety
20 performance of the Deepwater Horizon was good. I
21 believe that the safety performance of the
22 Deepwater Horizon was very good.
23      The reports that I would prepare
24 would show what -- and I didn't personally
25 prepare them, but would have them prepared from

30

32

1  the data that we have in our systems -- would
2  show what the performance statistics were for the
3  rigs. And the Deepwater Horizon ranked at the
4  top of that. Or not always at the top, but very
5  high at the top.

8 (Pages 29 to 32)

**PURSUANT TO CONFIDENTIALITY ORDER**



73

75

1   safety.

74

11      Q.      Well, you wouldn't intentionally and
12  deliberately keep drilling if you had an unsafe,
13  undesirable condition, would you?
14      A.      If we had a condition that was
15  deemed unsafe to the safety of the people on the
16  rig, we would correct the condition or we might
17  take the equipment out of service to ensure it
18  was not used.  But we would not expose our people
19  to conditions that would -- --
20      Q.      Well, that raises an interesting --
21      MR. DOYEN: Let him finish his answer.
22  BY MR. MATTHEWS:
23      Q.      I'm sorry.  I thought you were.
24      A.      We would not expose our people to
25  conditions that we knowingly violated their

76

PURSUANT TO CONFIDENTIALITY ORDER



177

179

24    I'm going to start with April the
25  20th, 2010.  I understand that you were actually

178

180

on the Deepwater Horizon on April the 20th, 2010?

1    on the Deepwater Horizon on April the 20th, 2010?
2        A.    I was on the Deepwater Horizon on
3    April 20th, 2010, for a very brief period.
4        Q.    Could you tell us how brief?  An
5    hour? two hours? half hour?
6        A.    In my recollection, it was about an
7    hour.
8        Q.    Was that in the afternoon of
9    April the 20th?
10       A.    That was in the afternoon, yes.
11       Q.    Did you get a chance to talk to the
12   OIM on Deepwater Horizon?
13       A.    I spoke briefly with Jimmy Harrell.

45 (Pages 177 to 180)

**PURSUANT TO CONFIDENTIALITY ORDER**



181

12      Q.    When you talked to the OIM,
13  Mr. Harrell, did he suggest to you that there
14  were any difficulties being encountered by the
15  rig on Macondo 252?
16      A.    He did not suggest that during that
17  conversation.

21      Q.    Did he make any statements to you
22  that suggested, to your mind, that he was worried
23  about activities out there on the Deepwater
24  Horizon?
25      A.    He made no statements to that

183

182

1  effect.
2      Q.    Did he make any comments to you that
3  suggested he believed anything unsafe was
4  occurring out on that rig?
5      A.    He made no statements to me to that
6  effect.

184

**PURSUANT TO CONFIDENTIALITY ORDER**

296

1

2

     I, WILLIAM SANNAN, have read the foregoing deposition and hereby affix my signature that same is true and correct, except

3 as noted on the correction page.

4

5

WILLIAM SANNAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

1

1     UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA
2
3   IN RE: OIL SPILL    )   MDL NO. 2179
      by the OIL RIG,    )
4   DEEPWATER HORIZON in  )   SECTION "J"
      the GULF OF MEXICO,   )
5   April 20, 2010    )   JUDGE BARBIER
6                       )   MAG. JUDGE
                         )   SHUSHAN
7
8
9
10
11
12
13
14
15
16
17
18          VOLUME 1 OF 2
19
        Deposition of NEWTON PHARR SMITH, taken
20   at Pan-American Building, 601 Poydras Street,
      11th Floor, New Orleans, Louisiana, 70130, on
21   June 27, 2011.
22
23
24
25

2

1          A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING
      COMMITTEE:
4
5     Mr. Soren Gisleson
      Mr. Craig Robinson
6     Mr. Carl "Trey" Woods
      HERMAN, HERMAN KATZ & COTLAR, LLP
7     820 O'Keefe Avenue
      New Orleans, Louisiana 70113
8     sgisleson@hhkc.com
      crobinson@hhkc.com
9
10   APPEARING FOR TRANSOCEAN AND PHARR SMITH:
11    Mr. Richard G. Murphy, Jr.
      SUTHERLAND, ASBILL & BRENNAN, LLP
12    1275 Pennsylvania Avenue, NW
      Washington, DC 20004-2415
13    Rick.murphy@sutherland.com
14    Mr. David A. Baay
      SUTHERLAND, ASBILL & BRENNAN, LLP
15    1001 Fannin, Suite 3700
      Houston, Texas 77002
16    david.baay@sutherland.com
17
18   APPEARING FOR BP, INC.:
19    Mr. Don K. Haycraft
      LISKOW & LEWIS
20    701 Poydras, Street 5000
      New Orleans, Louisiana 70139
21    dkhaycraft@liskow.com
22
23
24
25

3

1   APPEARING FOR HALLIBURTON:
2     Mr. Floyd Hartley
      Mr. Sean Fleming
3     GODWIN RONQUILLO
      1201 Elm Street, Suite 1700
4     Dallas, Texas 75270-2041
      fhartley@GodwinRonquillo.com
5     sfleming@GodwinRonquillo.com
6
7   APPEARING FOR CAMERON:
8     Mr. Brad Coffey
      BECK, REDDEN & SECREST
9     1221 McKinney Street, Suite 4500
      Houston, Texas 77010-2010
10    bcoffey@brsfirm.com
11
12   APPEARING FOR THE STATE OF LOUISIANA:
13    Mr. Douglas R. Kraus
      KANNER & WHITELEY
14    701 Camp Street
      New Orleans, Louisiana 70130
15    D.Kraus@kanner-law.com
16
17   APPEARING FOR ANADARKO PETROLEUM COMPANY:
18    Ms. Rianne Rocca
      BINGHAM McCUTCHEN
19    Three Embarcadero Center
      San Francisco, California 94111
20    rianne.rocca@bingham.com
21
22
23
24
25

4

1   APPEARING FOR WEATHERFORD:
2     Mr. William "Bill" Joyce
      JONES WALKER
3     201 St. Charles Avenue
      New Orleans, Louisiana 70170
4     bjoyce@joneswalker.com
5
6   APPEARING FOR DRIL-QUIP:
7     Ms. Margaret Bryant
      WARE, JACKSON, LEE & CHAMBERS
8     2929 Allen Parkway, 42nd Floor
      Houston, Texas 77019
9     margaretbryant@warejackson.com
10
11   APPEARING ON BEHALF OF M-I, LLC:
12    Mr. Patrick K. A. Elkins
      MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
13    1000 Louisiana St., Suite 4000
      Houston, Texas 77002-5006
14    pelkins@morganlewis.com
15
16   APPEARING FOR MOEX USA AND MOEX OFFSHORE
      2007, LLC
17
      Mr. R. Jack Reynolds
18    PILLSBURY WINTHROP SHAW PITTMAN, LLP
      909 Fannin, Suite 2000
19    Houston, Texas 77010
      (713) 276-7633
20    jack.reynolds@pillsburylaw.com
21
      ALSO PRESENT:
22    Ms. Mary Gaasch - The Videographer
23   REPORTED BY:
      RENE WHITE MOAREFI, CSR, CCR
24    Texas Certified Shorthand Reporter
      Louisiana Certified Court Reporter
25

**1 (Pages 1 to 4)**



10      Q.    Okay.  Are you familiar -- well,
11  how would safety generally play into your job
12  description?
13      A.    It's a major part of my job
14  description.
15      Q.    Tell me -- tell me how it's a
16  major part.
17      A.    Well, in -- in general, safe
18  operations is one of the primary core values
19  of Transocean.



1   **DEEPWATER HORIZON was a top performer. What**
2   **do you mean by that?**
3      A.  Well, some rigs in the fleet
4   need more attention than others for whatever
5   reason, good and bad. And the HORIZON just
6   seemed to be -- I mean, it was just
7   performing generally well. I -- I had a very
8   thin file on the HORIZON.

14      **Did you ever have any contact**
15   **with anyone from BP regarding the Macondo**
16   **well or the DEEPWATER HORIZON prior to**
17   **April 20, 2010?**
18      A.  I'm having difficulty answering
19   that because the HORIZON was generally such a
20   top performer that it was really off my
21   personal radar screen.
22      Whether we -- I had any meetings
23   with someone from BP, I'm having a hard time
24   remembering what that might have been about.
25   Q.  You just stated that the

Worldwide Court Reporters, Inc.
(800) 745-1101

293



4        Q.              Now, in your experience
5   on the -- on the engineering and technical
6   support side from Transocean's perspective,
7   if Transocean needs to take rig downtime in
8   order to perform maintenance that relates to
9   safety, does Transocean do that?
10        A.    Yes.
11        Q.    If Transocean needs to do
12  preventative maintenance in order to keep its
13  rigs safe, does Transocean do that preventive
14  maintenance?
15        A.    Yes.
16        Q.    And if Transocean needs to do
17  either downtime for a repair or preventive
18  maintenance, does it do that regardless of --
19  of -- of what the customer insists on?
20        A.    I'm sorry.  Was a part of that
21  question again to keep it safe?
22        Q.    Yes.
23        A.    Absolutely.
24        Q.    Would Transocean ever hesitate
25  to tell its customer that it needed to take

294

1   rig downtime even if its daily rate would
2   somehow be affected by that insistence?
3        A.    Transocean's a big word.  Senior
4   management at Transocean I know would be
5   committed to getting the maintenance done
6   regardless of the impact it might have on
7   earnings.

348

SIGNATURE PAGE

I, NEWTON PHARR SMITH, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted on the correction page.

_NEWTON PHARR SMITH_

THE STATE OF _Texas_                )
COUNTY OF _Harris_                   )

Before me _Vicky C. Smith_ on this day personally appeared _Newton Pharr Smith_ known to me [or proved to me on the oath of _____ or through _____ (description of identity card or other document)] to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _15th_ day of ____ _July_ ____, 2011.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF

My Commission Expires:
_4/22/2014_

VICKY C. SMITH
Notary Public, State of Texas
My Commission Expires
April 22, 2014

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

**1**

1   UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF LOUISIANA
2
3   **IN RE:** OIL SPILL      )   MDL NO. 2179
      **by the** OIL RIG,      )
4   DEEPWATER HORIZON in   )   SECTION "J"
      the GULF OF MEXICO,   )
5   April 20, 2010      )   JUDGE BARBIER
                            )
6                        )   MAG. JUDGE
                            )   SHUSHAN
7
8
9
10
11
12
13
14
15
16
17
18
19          VOLUME 2 OF 2
20
          Deposition of NEWTON PHARR SMITH, taken
21   at Pan-American Building, 601 Poydras Street,
      11th Floor, New Orleans, Louisiana, 70130, on
22   June 28, 2011.
23
24
25

**2**

1
2          A P P E A R A N C E S
3
      APPEARING FOR THE PLAINTIFFS' STEERING
      COMMITTEE:
4
      Mr. Soren Gisleson
5      Mr. Carl "Trey" Woods
      HERMAN, HERMAN KATZ & COTLAR, LLP
6      820 O'Keefe Avenue
      New Orleans, Louisiana 70113
7      sgisleson@hhkc.com
      crobinson@hhkc.com
8
9
      APPEARING FOR TRANSOCEAN AND PHARR SMITH:
10
      Mr. Richard G. Murphy, Jr.
11    SUTHERLAND, ASBILL & BRENNAN, LLP
      1275 Pennsylvania Avenue, NW
12    Washington, DC 20004-2415
      Rick.murphy@sutherland.com
13
      Mr. David A. Baay
14    SUTHERLAND, ASBILL & BRENNAN, LLP
      1001 Fannin, Suite 3700
15    Houston, Texas  77002
      david.baay@sutherland.com
16
17
      APPEARING FOR BP, INC.:
18
      Mr. Don K. Haycraft
19    LISKOW & LEWIS
      701 Poydras, Street 5000
20    New Orleans, Louisiana 70139
      dkhaycraft@liskow.com
21
22
23
24
25

**3**

1   APPEARING FOR HALLIBURTON:
2      Mr. Floyd Hartley
      Mr. Sean Fleming
3      GODWIN RONQUILLO
      1201 Elm Street, Suite 1700
4      Dallas, Texas 75270-2041
      fhartley@GodwinRonquillo.com
5      sfleming@GodwinRonquillo.com
6
7   **APPEARING FOR CAMERON:**
8      Mr. Eric J.R. Nichols
      BECK, REDDEN & SECREST
9      1221 McKinney Street, Suite 4500
      Houston, Texas 77010-2010
10    enichols@brsfirm.com
11
12
13   APPEARING FOR THE STATE OF LOUISIANA:
14      Mr. Douglas R. Kraus
      KANNER & WHITELEY
15    701 Camp Street
      New Orleans, Louisiana 70130
16    D.Kraus@kanner-law.com
17
18   APPEARING FOR ANADARKO PETROLEUM COMPANY:
19      Ms. Rianne Rocca
      BINGHAM McCUTCHEN
20    Three Embarcadero Center
      San Francisco, California 94111
21    rianne.rocca@bingham.com
22
23
24
25

**4**

1
2   APPEARING FOR WEATHERFORD:
3      Mr. William "Bill" Joyce
      JONES WALKER
4      201 St. Charles Avenue
      New Orleans, Louisiana 70170
5      bjoyce@joneswalker.com
6
7   APPEARING FOR DRIL-QUIP:
8      Ms. Margaret Bryant
      WARE, JACKSON, LEE & CHAMBERS
9      2929 Allen Parkway, 42nd Floor
      Houston, Texas 77019
10    margaretbryant@warejackson.com
11
12   APPEARING ON BEHALF OF M-I, LLC:
13      Mr. Patrick K. A. Elkins
      MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
14    1000 Louisiana St., Suite 4000
      Houston, Texas 77002-5006
15    pelkins@morganlewis.com
16
17   APPEARING FOR MOEX USA AND MOEX OFFSHORE
      2007, LLC
18    Mr. R. Jack Reynolds
      PILLSBURY WINTHROP SHAW PITTMAN, LLP
19    909 Fannin, Suite 2000
      Houston, Texas 77010
20    (713) 276-7633
      jack.reynolds@pillsburylaw.com
21
22   ALSO PRESENT:
      Ms. Mary Gaasch - The Videographer
23
      REPORTED BY:
24      RENE WHITE MOAREFI, CSR, CCR
      Texas Certified Shorthand Reporter
25      Louisiana Certified Court Reporter

**1 (Pages 1 to 4)**



37

38

39

```
 2          Q.      And -- and although I know you
 3     testified you weren't aware of what that term
 4     meant, are you aware of Transocean policies
 5     or procedures that are in place to prevent
 6     the event or occurrence of catastrophic
 7     events?
 8          A.      Yes.
 9          Q.      And -- and what are some of
10     those policies and procedures?
11          A.      Actually, in my experience,
12     Transocean was -- was unique in my experience
13     because they concentrated both on behavioral
14     safety and on major event avoidance.
15               We had audits that were
16     conducted on the rigs on a regular basis that
17     were focused on major hazards.  We had
18     what -- I can't remember the acronyms, to be
19     honest with you.  One was a major hazard risk
20     assessment, which was primarily rig-based,
21     where a group would go from compartment to
22     compartment and look specifically not for
23     little trips, slips and falls-type stuff, but
24     big picture, you know, what could happen as
25     identification.
```

40

```
 1               And then there was a separate
 2     process -- and I can't remember the name of
 3     it -- but it was more overarching, if you
 4     will, that looked at policies, procedures,
 5     company management system, down through the
 6     division at the rig operating and its overall
 7     processes to -- to identify major hazards and
 8     either eliminate or mitigate them.
 9          Q.      And -- and just from that
10     response, I -- I think I know the answer.
11     But it sounds like, then, that you are
12     familiar with those types of policies at
13     Transocean?
14          A.      Yes.
```

10 (Pages 37 to 40)



41

43

1    DEEPWATER HORIZON?
2        A.    Of course.

42

44

22        Q.    Is it your understanding that BP
23    would have had the authority to stop
24    operations if they felt any of the rig
25    maintenance was undermining the safety of the

re

```
 1                    SIGNATURE PAGE

 2         I, NEWTON PHARR SMITH, have read the

 3   foregoing deposition and hereby affix my

     signature that same is true and correct,

 4   except as noted on the correction page.

 5

 6

                     NEWTON PHARR SMITH

 7

 8

 9

     THE STATE OF    Texas       )

10   COUNTY OF       Harris      )

11         Before me  Vicky C. Smith        on this

12   day personally appeared  Newton Pharr Smith

     known to me [or proved to me on the oath of

13   _____ or through

     _____ (description of

14   identity card or other document)] to be the

     person whose name is subscribed to the

15   foregoing instrument and acknowledged to me

     that he/she executed the same for the

16   purposes and consideration therein expressed.

           Given under my hand and seal of office

17   this  15th  day of   July        , 2011.

18

19

           NOTARY PUBLIC IN AND FOR

20         THE STATE OF

21

     My Commission Expires:

22    4/22/2014
                        VICKY C. SMITH
23                      Notary Public, State of Texas
                        My Commission Expires
24                      April 22, 2014

25
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL        )    MDL NO. 2179
**by the** OIL RIG,        )
DEEPWATER HORIZON in   )    SECTION "J"
the GULF OF MEXICO,    )
April 20, 2010      )    JUDGE BARBIER
                    )
                    )    MAG. JUDGE
                    )    SHUSHAN

Deposition of CARL BARRETT TAYLOR, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on July 14, 2011.

**Page 2**

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
 Mr. Michael C. Palminitier
 deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ
 618 Main Street
 Baton Rouge, Louisiana 70801
 mpalminitier@dphf-law.com

APPEARING FOR BP, INC.:
 Mr. Martin R. Boles
 Ms. Sibo Mack-Williams
 KIRKLAND & ELLIS, LLP
 333 South Hope Street
 Los Angeles, CA 90071
 martin.boles@kirkland.com
 Sibo.mack-williams@kirkland.com

APPEARING FOR ANADARKO PETROLEUM COMPANY:
 Mr. David Magee
 BINGHAM McCUTCHEN
 One Federal Street
 Boston, Massachusetts 02110
 david.magee@bingham.com

APPEARING FOR TRANSOCEAN:
 Mr. Ryan King
 Ms. Amy Jaasma
 GOFORTH GEREN EASTERLING, LLP
 4900 Woodway, Suite 750
 Houston, Texas 77056
 ryanking@goforthlaw.com
 ajaasma@goforthlaw.com
 -

**Page 3**

 Mr. Edward F. Kohnke, IV
 PREIS & ROY, PLC
 601 Poydras, Suite 1700
 New Orleans, Louisiana 70130-6002
 efk@preisroy.com

APPEARING FOR HALLIBURTON:
 Ms. Aimee Williams
 Mr. Kodie Bennion
 GODWIN RONQUILLO
 1201 Elm Street, Suite 1700
 Dallas, Texas 75270-2041
 awilliams@godwinronquillo.com
 kbennion@godwinronquillo.com

APPEARING FOR CAMERON:
 Mr. Brad Coffey
 BECK, REDDEN & SECREST
 1221 McKinney Street, Suite 4500
 Houston, Texas 77010-2010
 bcoffey@brsfirm.com

APPEARING FOR THE STATE OF LOUISIANA:
 Mr. Douglas R. Kraus
 KANNER & WHITELEY
 701 Camp Street
 New Orleans, Louisiana 70130
 d.kraus@kanner-law.com

APPEARING FOR WEATHERFORD:
 Mr. L. Etienne Balart
 JONES WALKER
 201 St. Charles Avenue
 New Orleans, Louisiana 70170
 ebalart@joneswalker.com

**Page 4**

APPEARING FOR DRIL-QUIP:
 Ms. Wendy Ware Bishop
 WARE, JACKSON, LEE & CHAMBERS
 2929 Allen Parkway, 42nd Floor
 Houston, Texas 77019-2185
 wendybishop@warejackson.com

APPEARING FOR M-I SWACO, LLC:
 Mr. Lucas T. Elliot
 MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
 1000 Louisiana St., Suite 4000
 Houston, Texas 77002-5006
 lelliot@morganlewis.com

APPEARING FOR THE WITNESS:
 Mr. Cory D. Itkin
 ARNOLD & ITKIN
 1401 McKinney Street, Suite 2550
 Houston, Texas 77010
 citkin@arnolditkin.com
        -
 Mr. Guy L. Womack
 ATTORNEY AT LAW
 402 Main Street, Suite 6 North
 Houston, Texas 77002
 guy.womack@usa.net

ALSO PRESENT:
 Mr. James Deel - The Videographer

REPORTED BY:

 Tamara Chapman, CSR
 Certified Shorthand Reporter
 State of Texas

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



11    Q.        Some of those people that
12  you mentioned having technical knowledge or
13  technical expertise in terms of the well and
14  its safety, would that include the OIM?
15    A.    Sure.
16    Q.    Would that include drillers on
17  the DEEPWATER HORIZON?
18    A.    Yes.
19    Q.    And I'm sure there are others as
20  well that you would regard as having that
21  kind of technical expertise that were on the
22  DEEPWATER HORIZON?
23    A.    Yes.
24    Q.    Did any of them ever say to you
25  prior to the incident, We should stop

**PURSUANT TO CONFIDENTIALITY ORDER**



157

1    drilling this well, it's too dangerous?
2         A.    No.
3         Q.    Did anybody ever say to you
4    anything to that effect prior to the
5    incident?
6         A.    No.
7         Q.    Did anybody ever say that
8    this -- this well cannot be drilled safely,
9    in words or substance?
10        A.    No.
11        Q.    Did anybody from Transocean ever
12   say to you, We're rushing this too much,
13   we're not -- we're doing this job too
14   quickly, it's not being done right?
15        A.    No.
16        Q.    Did you ever get that impression
17   from what you observed on the DEEPWATER
18   HORIZON?
19        A.    No.

PURSUANT TO CONFIDENTIALITY ORDER

SIGNATURE PAGE

I, CARL BARRETT TAYLOR, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted on the correction page.

_Carl Barrett Taylor_

CARL BARRETT TAYLOR


THE STATE OF _Mississippi_
COUNTY OF _Rankin_ )

Before me _Debra G. Sylvester_ on this day personally appeared _CARL BARRETT TAYLOR_ known to me [or proved to me on the oath of _____ or through _Drivers License_ (description of identity card or other document)] to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___3___ day of _August_, 2011.

_Debra Gainey Sylvester_
NOTARY PUBLIC IN AND FOR
THE STATE OF _Mississippi_

My Commission Expires:
_03-26-15_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 53713
DEBRA GAINEY SYLVESTER
Commission Expires
March 26, 2015
RANKIN COUNTY

**PURSUANT TO CONFIDENTIALITY ORDER**



**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL    )  MDL NO. 2179
by the  OIL RIG,    )
DEEPWATER HORIZON in  )  SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010    )  JUDGE BARBIER
            )
            )  MAG. JUDGE
            )  SHUSHAN

Deposition of ROBERT JOSEPH TIANO, taken at Pan-American Building, 601 Poydras Street, 11th Floor, New Orleans, Louisiana, 70130, on August 25, 2011.

**Page 2**

APPEARANCES

APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:

Mr. Joseph M. Bruno
Ms. Melissa DeBarbieris
BRUNO & BRUNO
855 Baronne Street
New Orleans, LA 70113-1152
joe@brunobrunolaw.com
melissa@brunobrunolaw.com

APPEARING FOR BP, INC.:

Mr. Don K. Haycraft
LISKOW & LEWIS
701 Poydras, Street 5000
New Orleans, Louisiana 70139-5099
dkhaycraft@liskow.com

APPEARING FOR THE UNITED STATES:

Ms. Michelle Delemarre
U.S. DEPARTMENT OF JUSTICE
1425 New York Avenue, NW
Washington, D.C.  20044
michelle.delemarre@usdoj.gov

APPEARING FOR ANADARKO PETROLEUM COMPANY:

Ms. Marilee J. Allan
BINGHAM McCUTCHEN
Three Embarcadero Center
San Francisco, California  94111
marilee.allan@bingham.com

**Page 3**

APPEARING FOR TRANSOCEAN:

Mr. Daniel Johnson
SUTHERLAND, ASBILL & BRENNAN, LLP
1001 Fannin, Suite 3700
Houston, Texas  77002-6760
daniel.johnson@sutherland.com

Ms. Lauren Wygant Woodard
ROYSTON RAYZOR
711 Louisiana Street, Suite 500
Houston, Texas  77002
lauren.woodard@roystonlaw.com

Mr. John Kinchen
HUGHES ARRELL KINCHEN, LLP
2211 Norfolk, Suite 1110
Houston, Texas 77098
jkinchen@haklLP.com

APPEARING FOR HALLIBURTON:

Mr. Floyd R. Hartley
Mr. Joel D. Beus
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
fhartley@godwinronquillo.com
jbeus@godwinronquillo.com

APPEARING FOR CAMERON:

Mr. Geoff Gannaway
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
ggannaway@brsfirm.com

**Page 4**

APPEARING FOR THE STATE OF LOUISIANA:

Mr. David Allen Pote
KANNER & WHITELEY
701 Camp Street
New Orleans, Louisiana 70130
d.pote@kanner-law.com

APPEARING FOR WEATHERFORD:

Mr. Tarak Anada
Mr. L. Etienne Balart
JONES WALKER
201 St. Charles Avenue
New Orleans, Louisiana 70170
mlejeune@joneswalker.com
tanada@joneswalker.com
ebalart@joneswalker.com

APPEARING FOR DRIL-QUIP:

Ms. Wendy Ware Bishop
WARE, JACKSON, LEE & CHAMBERS
2929 Allen Parkway, 42nd Floor
Houston, Texas 77019-2185
wendybishop@warejackson.com

APPEARING ON BEHALF OF M-I SWACO, LLC:

Mr. Patrick K. A. Elkins
MORGAN, LEWIS, LEWIS & BOCKIUS, LLP
1000 Louisiana St., Suite 4000
Houston, Texas 77002-5006
pelkins@morganlewis.com

ALSO PRESENT:

Mr. Mike Flores - The Videographer

Ms. Tamara Chapman - The Reporter

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



21   Q.  Mr. Tiano, you slept on this rig; is that
22   true?
23      A.  Yes, sir.
24      Q.  Okay.  And -- and you slept on this rig
25   during the time you were the maintenance

**PURSUANT TO CONFIDENTIALITY ORDER**



313

```
1    supervisor, right?
2        A.  Yes, sir.
3        Q.  Did you feel safe?
4        A.  Yes, sir.
```

315

```
2         Q.  (BY MR. JOHNSON)  I'm not going to ask
3    you about each one of the men who died
4    individually, Mr. Tiano.  But I want to ask you
5    if there was any one of those men that you knew
6    that you ever found were the type of person that
7    would endanger the lives of any of their
8    coworkers?
9         MR. HAYCRAFT: Objection; form.
10        A.  Not that I know of.
11        Q.  (BY MR. JOHNSON)  These aren't the type
12   of individuals that you were -- that you were
13   aware of would become complacent in doing their
14   jobs?
15        MR. HAYCRAFT: Objection; form.
16        A.  Not that I'm aware of any of them.
```

314

316

```
1         CORRECTION PAGE
2    WITNESS NAME: ROBERT JOSEPH TIANO
3    DATE: 08/25/2011
4    PAGE  LINE  CHANGE   REASON
5    _____
6    _____
7    _____
8    _____
9    _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

**PURSUANT TO CONFIDENTIALITY ORDER**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL     )  MDL NO. 2179
BY THE OIL RIG       )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010       )  JUDGE BARBIER
                     )  MAG. JUDGE SHUSHAN

Deposition of BUDDY JOSEPH
TRAHAN, taken at Liskow & Lewis, 1001 Fannin,
Suite 1800, Houston, Texas, 77002, on the
28th day of September, 2011.

---

2

```
 1        A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS' STEERING
        COMMITTEE:
 4      Mr. Guy E. Matthews
        Mr. Lee N. Joseph
 5      MATTHEWS, LASON & JOHNSON
        200 Bering Drive, Suite 700
 6      Houston, Texas  77057-3778
 7
 8   APPEARING FOR BP, INC.:
        Mr. Keith R. Jarrett
 9      LISKOW & LEWIS
        One Shell Square
10      701 Poydras Street, Suite 5000
        New Orleans, Louisiana 70139-5099
11
12   APPEARING FOR TRANSOCEAN:
        Mr. M. Benjamin Alexander
13      PREIS & ROY
        Versailles Centre, Suite 400
        102 Versailles Boulevard
14      Lafayette, Louisiana  70501
15      Mr. Steven L. Roberts
        SUTHERLAND ASBILL & BRENNAN
16      1001 Fannin, Suite 3700
        Houston, Texas  77002-6760
17
        Mr. John Kinchen
18      HUGHES ARRELL KINCHEN, LLP
        Norfolk Tower
19      2211 Norfolk, Suite 1110
        Houston, Texas  77098
20
21   APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Ms. Jennifer S. Rosen
22      Ms. Marilee J. Allan
        BINGHAM MCCUTCHEN
23      Three Embarcadero Center
        San Francisco, California 94111-4067
24
25
```

---

3

```
 1        A P P E A R A N C E S (Continued)
 2
 3   APPEARING FOR CAMERON INTERNATIONAL
        CORPORATION:
 4      Ms. Kathleen A. Gallagher
        BECK, REDDEN & SECREST
 5      One Houston Center
        1221 McKinney  Street, Suite 4500
 6      Houston, Texas  77010-2010
 7
 8   APPEARING FOR WEATHERFORD:
        Mr. Michael A. Chernekoff
 9      JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
10      JP Morgan Chase Tower
        600 Travis, Suite 6601
        Houston, Texas 77002
11
12   APPEARING FOR DRIL-QUIP, INC.:
        Mr. Christopher W. Van Kleef
13      WARE, JACKSON, LEE & CHAMBERS
        America Tower, 42nd Floor
14      2929 Allen Parkway
        Houston, Texas  77019-7101
15
16   APPEARING FOR M-I SWACO:
        Ms. Denise Scofield
17      MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4200
18      Houston, Texas 77002-5006
19
20   APPEARING FOR HALLIBURTON:
        Mr. Donald E. Godwin
        Ms. Stefanie K. Major
21      GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
22      Dallas, Texas 75270-2041
23
24
25
```

---

4

```
 1        A P P E A R A N C E S (Continued)
 2
 3   APPEARING FOR THE UNITED STATES:
        Ms. Rachel Hankey
 4      U.S. DEPARTMENT OF JUSTICE
        ENVIRONMENTAL & NATURAL
 5      RESOURCES DIVISION
        601 D Street, N.W.
 6      Washington, D.C.  20004
 7
 8   APPEARING FOR THE UNITED STATES COAST GUARD:
        Lt. Christopher Jones
        Marine Investigator
 9      U.S. COAST GUARD
        9640 Clinton Drive
10      Houston, Texas  77029-4328
11
12   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Lambert J. "Joe" Hassinger, Jr.
13      GALLOWAY, JOHNSON, TOMPKINS, BURR
        AND SMITH
        701 Poydras Street, 40th Floor
14      New Orleans, Louisiana  70139
15
16   APPEARING FOR BUDDY JOSEPH TRAHAN:
        Mr. Chris Flood
17      FLOOD & FLOOD
        914 Preston at Main, Suite 800
        Houston, Texas  77002
18
        Mr. Lance H. Lubel
19      Ms. Jill D. Trahan
        LUBEL VOYLES, L.L.P.
20      5020 Montrose, Suite 800
        Houston, Texas  77006
21
22   ALSO PRESENT:
        Mr. Max Kennedy, Videographer
23      Mr. Danny Damiani
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

153



155

11    Q.    In 2009 and 2010, in your
12  position as operations manager assets, the
13  operations culture, the safety culture that
14  you observed on the Horizon, that's the same
15  culture that you know to be in place on other
16  Transocean rigs?
17    A.    Yes.
18    Q.    So what we know from this case,
19  the evidence that's been developed about the
20  way things were done on the Horizon, that's
21  the way it's done Transocean-wide?
22    A.    Well, you'd have to be specific.
23    Q.    Can you think of any example, as
24  you sit here today, again, relating to the
25  years 2009 and 2010, where you found

154

156

1   something that was done on the Horizon that
2   just didn't fit with the way Transocean did
3   things on its other rigs?
4     MR. KINCHEN: Object to form.
5     A.    I can't recall of anything.

**PURSUANT TO CONFIDENTIALITY ORDER**



157

7    Q.    (BY MR. HASSINGER)  Have you
8   ever had any conversations with any
9   Transocean employees, the gist of which was
10  their concern that Transocean's maintenance
11  program was a "run it until it breaks"
12  culture?
13      A.    Not that I recall.

159

158

160

PURSUANT TO CONFIDENTIALITY ORDER



237

239

238

240

17    Q.    Did you ever hear anyone else
18  express concerns to you on that subject about
19  drilling personnel on the Deepwater Horizon
20  or any other Transocean rig?
21    MR. KINCHEN: Object to form.
22    A.    Not that I recall specifically.

60 (Pages 237 to 240)

**PURSUANT TO CONFIDENTIALITY ORDER**

**1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE:** OIL SPILL     ) MDL NO. 2179
**by the** OIL RIG,     )
DEEPWATER HORIZON in ) SECTION "J"
the GULF OF MEXICO,   )
April 20, 2010     ) JUDGE BARBIER
                    )
                    ) MAG. JUDGE SHUSHAN
                    )

Deposition of NICK WATSON, taken at
Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
July 14, 2011.

**2**

1       A P P E A R A N C E S
2
3   APPEARING FOR THE PLAINTIFFS' STEERING
    COMMITTEE:
4   Mr. Joseph M. Bruno
    Ms. Melissa DeBarbieris
5   BRUNO & BRUNO
    855 Baronne Street
6   New Orleans, LA 70113-1152
    joe@brunobrunolaw.com
7   melissa@brunobrunolaw.com
8
9   APPEARING FOR THE WITNESS:
10  Mr. Michael E. Pierce
    ARNOLD & ITKIN, LLP
11  1401 McKinney, Suite 2550
    Houston, Texas 77010
12  Mpierce@arnolditkin.com
13  Mr. Geoff L. Womack
    GUY L. WOMACK & ASSOCIATES, PC
14  402 Main Street, 6th Floor
    Houston, Texas 77002
15  glwomack@usa.net
16  APPEARING FOR THE UNITED STATES:
17  Mr. David J. Pfeffer
    U.S. DEPARTMENT OF JUSTICE
18  Civil Division, Torts Branch
    1425 New York Avenue, NW, Suite 10100
19  Washington, D.C. 20005
    david.j.pfeffer@usdoj.gov
20
21  APPEARING FOR THE STATE OF LOUISIANA:
22  Mr. Lambert J. "Joe" Hassinger Jr.
    GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
23  701 Poydras Street, 40th Floor
    New Orleans, Louisiana 70139
24  jhassinger@gjtbs.com
25

**3**

1   APPEARING FOR BP, INC.:
2   Ms. Kimberly O. Branscome
    COVINGTON & BURLING, LLP
3   1201 Pennsylvania Avenue, NW
    Washington, D.C. 20004-2401
4   kbranscome@cov.com
5   Mr. Don K. Haycraft
    LISKOW & LEWIS
6   701 Poydras, Street 5000
    New Orleans, Louisiana 70139-5099
7   dkhaycraft@liskow.com
8
9   APPEARING FOR TRANSOCEAN:
10  Mr. Daniel Johnson
    SUTHERLAND, ASBILL & BRENNAN, LLP
11  1001 Fannin, Suite 3700
    Houston, Texas 77002-6760
12  daniel.johnson@sutherland.com
13  Mr. Daniel O. Goforth
    GOFORTH GEREN EASTERLING, LLP
14  4900 Woodway, Suite 750
    Houston, Texas 77056
15  dangoforth@goforthlaw.com
16  **APPEARING FOR CAMERON:**
17  Mr. Joe W. Redden
    BECK, REDDEN & SECREST
18  1221 McKinney Street, Suite 4500
    Houston, Texas 77010-2010
19  jredden@brsfirm.com
20
21  APPEARING FOR ANADARKO PETROLEUM COMPANY:
22  Ms. Marilee J. Allan
    BINGHAM McCUTCHEN
23  Three Embarcadero Center
    San Francisco, California 94111
24  marilee.allan@bingham.com
25

**4**

1   APPEARING FOR HALLIBURTON:
2   Ms. Gwen E. Richard
    GODWIN, RONQUILLO, PC
3   1331 Lamar, Suite 1665
    Houston, Texas 77010
4   grichard@godwinronquillo.com
5   Ms. Laci M. Dreher
    GODWIN RONQUILLO
6   1201 Elm Street, Suite 1700
    Dallas, Texas 75270-2041
7   ldreher@godwinronquillo.com
8
9   APPEARING FOR WEATHERFORD:
10  Mr. William "Bill" Joyce
    JONES WALKER
11  201 St. Charles Avenue
    New Orleans, Louisiana 70170
12  bjoyce@joneswalker.com
13  APPEARING FOR DRIL-QUIP:
14  Ms. Margaret Bryant
    WARE, JACKSON, LEE & CHAMBERS
15  2929 Allen Parkway, 42nd Floor
    Houston, Texas 77019-2185
16  Margaretbryant@warejackson.com
17
18  APPEARING ON BEHALF OF M-I SWACO, LLC:
    Mr. Paul E. Krieger
19  MORGAN, LEWIS & BOCKIUS, LLP
    1000 Louisiana St., Suite 4000
20  Houston, Texas 77002-5006
    pkrieger@morganlewis.com
21  ALSO PRESENT:
22  Mr. Mike Flores - The Videographer
    REPORTED BY:
23  RENE WHITE MOAREFI, CSR
    Certified Shorthand Reporter
24  State of Texas
    Certified Court Reporter
25  State of Louisiana

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



13

13    Q.         Obviously you were aboard
14 the HORIZON.  What I'd like to know first is:
15 How many other rigs did you work aboard when
16 you worked for Transocean before this
17 explosion in April of last year?
18    A.    I spent all three years on -- on
19 the HORIZON.
20    Q.    Oh, the whole time?
21    A.    Yes, sir.
22    Q.    Okay.  Did you -- tell me:  Did
23 you have an opinion about the HORIZON itself,
24 the rig?
25    MR. JOHNSON:

14

1         Objection, form.
2    A.    On the rig, three years that I
3 was there, it was prior -- the -- most of the
4 workers, we was proud.  We always said the
5 mighty HORIZON.
6    THE REPORTER:
7      I'm sorry?
8    THE WITNESS:
9      We always said the mighty
10 HORIZON, like we was proud of -- proud of --
11 of our rig, so . . .
12 EXAMINATION BY MR. BRUNO:
13    Q.    All right.  So you were proud of
14 the rig.  You didn't have any problems
15 working on that rig, it was comfortable?
16    A.    Yes.

15

16

4  (Pages 13 to 16)

**PURSUANT TO CONFIDENTIALITY ORDER**



17  Q.   So what I'm trying to know is if
18  when you were on that rig working for
19  Transocean on the HORIZON, did you have some
20  sense of whether or not you were expected to
21  please the company man?
22     MS. BRANSCOME:
23        Object to form.
24     A.   Like I said, our work
25  environments was basically, you know -- our

12 (Pages 45 to 48)

**PURSUANT TO CONFIDENTIALITY ORDER**

49

1  reputation as -- like I said, we had pride in
2  our rig.  And it was -- third party, from
3  everybody, was that you could depend on those
4  guys.  It didn't matter who gave directive.
5  You know, as a crew you wanted to look good.
6  You didn't want to be -- you know, look like
7  you couldn't get the job done.  So it doesn't
8  matter who it was.  It was just doing our
9  job.

19        Q.   Did you treat all those third
20  parties the same way as you treated the BP
21  third parties?
22        A.   Yes.  We were family.  If they
23  needed something, we went and helped them.

50

51

52

**PURSUANT TO CONFIDENTIALITY ORDER**





8    Q.    Did you ever -- did you -- did
9  you feel comfortable reporting safety issues
10 to your supervisors?
11    A.    Yes, ma'am.
12    Q.    Did you ever feel pressure not
13 to report a safety issue?
14    A.    No, ma'am.
15    Q.    Did you ever fear any
16 consequences if you were to report a safety
17 issue either to a Transocean employee or to
18 be a BP employee?
19    A.    No, ma'am.

PURSUANT TO CONFIDENTIALITY ORDER



149

150

151

1 information or training that you would have
2 liked to have had to perform your job?
3     A.    No, ma'am.
4     Q.    How would you describe the
5 safety culture of Transocean?
6     MR. JOHNSON:
7         Objection, form.
8     A.    On my rig -- I can only just
9 talk about my rig.  On my rig it was law
10 if -- like I said, that camera -- if the
11 OIMs -- you got up there and you didn't have
12 a harness on, you going to -- you know, the
13 driller's going to get a phone call.  And it
14 was pretty much law.  You know, it was
15 strict.

152

21     Q.    Okay.  Did you feel you had the
22 information and training necessary to perform
23 your job safely?
24     A.    Yes, ma'am.
25     Q.    Okay.  Was there any additional

**PURSUANT TO CONFIDENTIALITY ORDER**



22
23
24
25

**Q.    I gathered from your testimony earlier, which I know was difficult, that you knew Dale Burkeen pretty well?**
      A.    Yes, sir.

41 (Pages 161 to 164)

**PURSUANT TO CONFIDENTIALITY ORDER**

165

1    Q.   Good man?
2    A.   Very good man.
3    Q.   Hard worker?
4    A.   Yes, sir.
5    Q.   Safety conscious worker?
6    A.   Yes, sir.
7    Q.   You spent, you know, half your
8    life out on that rig during the years that
9    you worked out there; is that right?
10   A.   Three years.  Yes, sir.
11   Q.   So you were -- you were on the
12   rig half the time, and then you'd go home
13   half the time; is that right?
14   A.   Yes, sir.
15   Q.   So you'd get to know folks
16   pretty well?
17   A.   Yes, sir.
18   Q.   Get to know whether they were
19   hard working folks, whether they were safety
20   conscious; is that true?
21   A.   Yes, sir.
22   Q.   During a lot of the time that
23   you worked on the DEEPWATER HORIZON, you knew
24   Jimmy Harrell was as OIM, right?
25   A.   Yes, sir.

166

1    Q.   And he was a safety conscious
2    OIM; isn't that true, sir?
3    A.   Yes, sir.
4    Q.   And do you know a gentleman by
5    the name of Randy Ezell?
6    A.   Yes, sir.
7    Q.   He was a senior toolpusher on
8    the rig; isn't that right?
9    A.   Yes, sir.
10   Q.   And during the time that you
11   worked on the rig, you -- you had occasions
12   where you worked around Mr. Ezell; isn't that
13   right?
14   A.   I knew him personally.
15   Q.   Well, not personally.  What I'm
16   saying is he -- he worked on the rig during
17   the same time during the period that you were
18   out there?
19   A.   Yes, sir.
20   Q.   Okay.  And as far as you know,
21   he was a safety conscious worker; isn't that
22   right?
23   A.   Yes, sir.
24   Q.   Did you know Jason Anderson?
25   A.   Yes, sir.

167

1    Q.   Good man?
2    A.   Yes, sir.
3    Q.   Hard worker?
4    A.   Yes, sir.
5    Q.   Safety conscious?
6    A.   Yes, sir.
7    Q.   Nothing that he ever did and
8    nothing you ever heard ever indicated he was
9    the type of individual that would put the
10   lives of your co-workers in jeopardy; is that
11   true?
12   MR. HASSINGER:
13        Object.
14   A.   That's true.
15   EXAMINATION BY MR. JOHNSON:
16   Q.   Dewey Revette, did you know him,
17   sir?
18   A.   Yes, sir.
19   Q.   Good man?
20   A.   Yes, sir.
21   Q.   Safety conscious?
22   A.   Yes, sir.
23   Q.   You never saw him do anything
24   that you deemed was unsafe; is that true?
25   A.   He was by the book.

168

16   Q.   And I think you were just asked
17   some questions about the authority to stop a
18   job?
19   A.   Yes, sir.
20   Q.   And that's referred to as a time
21   out for safety on the rig; isn't that right?
22   A.   Yes, sir.
23   Q.   And that was a policy on the
24   rig, wasn't it, Mr. Watson?
25   A.   Yes, sir.



42 (Pages 165 to 168)

**PURSUANT TO CONFIDENTIALITY ORDER**

169

1    Q.    That was something that you and
2  everybody else was empowered to do.  If you
3  saw something was unsafe, you could call that
4  timeout for safety; isn't that right?
5    A.    Yes, sir.
6    Q.    And you had seen that be -- been
7  done by other people; isn't that true?
8    A.    Yes, sir.
9    Q.    And if you saw something unsafe,
10 you wouldn't hesitate to call a timeout for
11 safety; isn't that right?
12   A.    Yes, sir.
13   Q.    Now, I think we talked a -- a
14 little bit earlier.  You were asked some
15 questions about a -- a weekly safety meeting;
16 is that right?
17   A.    Yes, sir.
18   Q.    And so that was a meeting that
19 took place once a week where y'all would -- I
20 think sometimes you said you would discuss
21 other incidents and maybe lessons learned.
22 Is that one of the things that you would
23 discuss?
24   A.    Yes, sir.
25   Q.    And the purpose of that weekly

170

1  meeting would be to discuss safety issues; is
2  that right?
3    A.    Yes, sir.
4    Q.    Now, separate and apart from
5  that, there were morning meetings that took
6  place on the rig; is that right?
7    A.    Yes, sir.
8    Q.    And I understood you described
9  some of that earlier; isn't that true?
10   A.    Yes, sir.
11   Q.    And the OIM would speak, and
12 then the company man for BP would talk at
13 those meetings, right?
14   A.    Yes, sir.
15   Q.    And fair to say that safety was
16 a big topic that was emphasized in those
17 morning meetings?
18   A.    Yes, sir.
19   Q.    For example, those meetings
20 might be used to discuss what was going to
21 take place that day and to coordinate those
22 activities in a safe manner; isn't that true?
23   A.    Yes, sir.
24   Q.    Okay.  Now, while you were on
25 the rig, there were regular emergency drills

171

1  that were conducted on Sundays; isn't that
2  true?
3    A.    Yes, sir.
4    Q.    And on those drills there were
5  variations; isn't that right?  So, for
6  example, there may be a fire in one location
7  during one drill and then they would change
8  that up for the next drill; isn't that right?
9    A.    Yes, sir.
10   Q.    And that way you'd be prepared
11 for different scenarios if an actual event
12 occurred; isn't that true?
13   A.    Yes, sir.
14   Q.    Okay.  And people took those
15 drills seriously, didn't they, sir?
16   A.    Yes, sir.
17   Q.    And you took those drills
18 seriously; isn't that true?
19   A.    Yes, sir.

172

**PURSUANT TO CONFIDENTIALITY ORDER**



3   Q.    Okay.  Did you feel like you got
4  sufficient training in safety during your
5  time at Transocean?
6   A.    Yes, ma'am.

**PURSUANT TO CONFIDENTIALITY ORDER**

SIGNATURE PAGE

I, NICK WATSON, have read the foregoing
deposition and hereby affix my signature that
same is true and correct, except as noted on
the correction page.

_____
NICK WATSON

THE STATE OF _Louisiana_ )
~~COUNTY~~ OF _Morehouse_ )
PARISH

Before me _Carol Jones_ on this
day personally appeared _Nicholas J Watson_
known to me [or proved to me on the oath of
_____ or through
_Driver License_ (description of
identity card or other document)] to be the
person whose name is subscribed to the
foregoing instrument and acknowledged to me
that he/she executed the same for the
purposes and consideration therein expressed.

Given under my hand and seal of office
this _5th_ day of _August_ , 2011.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _Louisiana_
#72524

My Commission Expires:
_June 3, 2012_

**PURSUANT TO CONFIDENTIALITY ORDER**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL      )  MDL NO. 2179
BY THE OIL RIG        )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010        )  JUDGE BARBIER
                      )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of Michael Keith Williams,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on the 20th day of July, 2011.

---

3

1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
        Mr. Alex Roberts
2       BECK, REDDEN & SECREST
        One Houston Center
3       1221 McKinney Street, Suite 4500
        Houston, Texas  77010-2010
4
5   APPEARING FOR WEATHERFORD:
        Mr. William C. Baldwin
6       JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
7       201 St. Charles Avenue
        New Orleans, Louisiana  70170-5100
8
9   APPEARING FOR DRIL-QUIP, INC.:
        Ms. Wendy Ware Bishop
10      WARE, JACKSON, LEE & CHAMBERS
        America Tower, 42nd Floor
11      2929 Allen Parkway
        Houston, Texas  77019-7101
12
13  APPEARING FOR M-I SWACO:
        Mr. Patrick Elkins
14      MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4200
15      Houston, Texas 77002-5006
16
17  APPEARING FOR HALLIBURTON:
        Mr. Sean W. Fleming
        Mr. Israel R. Silvas
18      GODWIN RONQUILLO
        1201 Elm Street, Suite 1700
19      Dallas, Texas 75270-2041
20
    APPEARING AS OBSERVER FOR THE
21  U.S. DEPARTMENT OF THE INTERIOR:
        Mr. Lance C. Wenger
22      OFFICE OF THE SOLICITOR
        ROCKY MOUNTAIN REGION
23      U.S. DEPARTMENT OF THE INTERIOR
        755 Parfet Street, Suite 151
24      Lakewood, Colorado  80215
25

---

2

1      A P P E A R A N C E S
2
3
4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
        Mr. William W. Dills
5       WILLIAMSON & RUSNAK
        4310 Yoakum Boulevard
6       Houston, Texas  77006-5818
7
8   APPEARING FOR MICHAEL KEITH WILLIAMS:
        Mr. Ronnie G. Penton
9       LAW OFFICES OF RONNIE G. PENTON
        209 Hoppen Place
        Bogalusa, Louisiana  70427-3827
10
11  APPEARING FOR BP, INC.:
        Mr. David W. Leefe
12      Mr. Devin C. Reid
        LISKOW & LEWIS
13      One Shell Square
        701 Poydras Street, Suite 5000
14      New Orleans, Louisiana  70139-5099
15
16  APPEARING FOR TRANSOCEAN:
        Mr. Edward F. Kohnke
17      PREIS & ROY
        Pan American Life Center
        601 Poydras Street, Suite 1700
18      New Orleans, Louisiana  70130
19      Mr. Daniel O. Goforth
        GOFORTH GEREN EASTERLING
20      4900 Woodway, Suite 750
        Houston, Texas  77056
21
22  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Ms. Marilee J. Allan
23      Ms. Jennifer S. Rosen
        BINGHAM MCCUTCHEN
24      Three Embarcadero Center
        San Francisco, California 94111-4067
25

---

4

1   APPEARING FOR THE UNITED STATES:
2       Mr. David J. Pfeffer
        U.S. DEPARTMENT OF JUSTICE
        TORT BRANCH, CIVIL DIVISION
3       1425 New York Avenue, N.W.
        Suite 10100
4       Washington, D.C.  20005
5
    ALSO PRESENT:
6       Mr. Mark Hendrix, Videographer
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



221

223

19      Q.  Mr. Williams, let me ask you a question
20  that, in retrospect, may seem like an odd
21  question, but up until the time of the incident,
22  did you actually like working on the HORIZON rig?
23      A.  Yes, I did.

222

224

PURSUANT TO CONFIDENTIALITY ORDER



261

263

262

264

10   Q.          Did you have any concerns or
11   quarrels with the abilities of others working
12   either above you or below you, in your
13   Department, I should say?
14      A.  In my Department, no.
15      Q.  Okay.  What about your Supervisors?
16      A.  They were competent.
17      Q.  Okay.  And the people that were working
18   directly under you, were they competent, as well?
19      A.  Yes, they were.

PURSUANT TO CONFIDENTIALITY ORDER

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 395

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL       )     MDL NO. 2179
by the OIL RIG,         )
DEEPWATER HORIZON in    )     SECTION "J"
the GULF OF MEXICO,     )
April 20, 2010          )     JUDGE BARBIER
                        )
                        )     MAG. JUDGE
                        )     SHUSHAN


* * * * * * * * * * * * * *
VOLUME 2
* * * * * * * * * * * * * *


Deposition of DAUN WINSLOW,
taken at Pan-American Building, 601 Poydras
Street, 11th Floor, New Orleans, Louisiana,
70130, on the 21st of April, 2011.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters    Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010          Reported by:

DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 604

1      Q.   In your role as an operations
2  manager, can you tell me what percentage of
3  your job is devoted or dedicated in some
4  way to safety?
5      A.   Probably 70 percent of the time
6  is about safety.
7      Q.   And what comprises that
8  70 percent of the time that -- that -- of
9  your job that you focus on safety?  What
10  types of things are you -- are you focusing
11  on?
12      A.   Focus, about like dropped
13  objects, possible hand injuries,
14  communicating to the rig managers and the
15  crews.  Every conversation is about safety
16  in one way or the other, you know, and
17  we're doing timeout for safety, asked all
18  employees what they've done for safety
19  today.
20      Q.   You ever had occasion in your
21  role as operations manager to participate
22  in calls with the rig?
23      A.   Yes.
24      Q.   What's the first thing that's
25  discussed in every call with the rig?

Page 605

1      A.   Every rig manager talks about
2  safety first.  What -- what the crews have
3  done and how many work permit audits
4  they've done, how many times out for safety
5  or people that participate in the process.
6      Q.   How long have you known Jimmy
7  Harrell?
8      A.   Since about 1996, 1997.
9      Q.   What are your impressions of
10  Mr. Harrell in terms of his approach to
11  performing his job duties?
12      A.   Jimmy was -- or is one -- one of
13  the best drilling hands that I worked with
14  in deepwater.  When I first met him as a
15  toolpusher and even as an OIM, he's a --
16  he's compassionate about his people.  He's
17  compassionate about safety.  That's how he
18  approaches every day.
19      Q.   Was he a hard worker?
20      A.   Definitely.
21      Q.   Was he conscientious?
22      A.   Absolutely.
23      Q.   In your experience --
24  experiences with Jimmy, was he a safety
25  conscious manager?

Page 606

1      A.   Yes, sir.

Page 607

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters      Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                     Reported by:

DAUN WINSLOW VOL. II April 21, 2011     THU BUI, CCR, RPR

Page 624

2        Prior to BP's lawyers
3  filing a lawsuit yesterday against
4  Transocean on the one year date marking the
5  death of 11 men, had anyone from BP ever
6  told you that they had concerns about the
7  condition of the DEEPWATER HORIZON as of
8  April 20th, 2010?
9      MR. HAYCRAFT:
10        Object to form.
11   A.   No.
12   Q.   Prior to BP's lawyers filing a
13  lawsuit on the one year date marking the
14  tragic death of 11 men, did anyone from BP
15  ever tell you they had concerns about the
16  competence of the crew onboard the
17  DEEPWATER HORIZON on April 20th, 2010?
18      MR. HAYCRAFT:
19        Object to form.
20   A.   No.  On the contrary.
21   Q.   What do you mean, sir, on the
22  contrary?
23   A.   I heard more praise about the
24  machines and the crews of the HORIZON.
25   Q.   Did BP have the right to stop

Page 625

1  work on the DEEPWATER HORIZON if it
2  believed an unsafe condition existed?
3   A.   Absolutely.
4   Q.   During anytime while the
5  DEEPWATER HORIZON was working for BP on the
6  Macondo well, are you aware of anytime when
7  BP requested that Transocean stop work
8  because of an unsafe condition on the rig?
9   A.   No.
10   Q.   Is that something you would have
11  been made aware of, sir?
12   A.   Yes.

Page 626

19      Based on your experiences
20  with Mr. Revette, did you consider him to
21  be a safe worker?
22   A.   Dewey Revette was a very safe
23  worker.  Conscientious, knowledgeable.
24   Q.   Yesterday was, in fact, the one
25  year anniversary of Mr. Revette's tragic

Page 627

1  passing; isn't that true?
2   A.   Yes, sir.
3   Q.   Prior to April 20, 2010, did
4  anyone from BP ever express concerns about
5  Mr. Revette's competency?
6   A.   No.
7   Q.   How about Mr. Revette's
8  training?
9   A.   No.
10   Q.   The document that I handed you,
11  sir, would you turn to Page 10.  I'd like
12  to direct you to -- to Paragraph 32.  And
13  I'm going to read the last sentence there
14  to you.
15      Transocean's drillers could
16  and should be able to identify a kick in a
17  well by monitoring the flow of drilling
18  fluids into and out of the well.
19      Who would have been the
20  Transocean driller on tour the night of the
21  incident?
22   A.   Dewey Revette.
23   Q.   If you would, sir, I would like
24  for you to turn to Page 23.  Actually, the
25  top of 24.  One of the items that BP, in



601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6029     Board-Certified Court Reporters     Facsimile: (504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

In Re: OIL SPILL by the OIL RIG, DEEPWATER HORIZON in the GULF OF MEXICO, April 20, 2010                    Reported by:

DAUN WINSLOW VOL. II April 21, 2011      THU BUI, CCR, RPR

Page 628

1  this document, alleges that Transocean
2  failed to do is captured on the top of Page
3  24, and it indicates that Transocean failed
4  to provide a competent and qualified crew.
5  Do you see that, sir?
6      A.  Yes.
7      Q.  I just want to be very clear for
8  the record.  You were a person in your role
9  that BP could come to if they had any
10  concerns or problems with the DEEPWATER
11  HORIZON or its crew; is that right?
12      A.  Yes, sir.
13      Q.  Prior to BP's lawyers filing
14  this document, alleging that Mr. Revette
15  was incompetent in the performance of his
16  job, did anyone from BP ever tell you or
17  express concerns to you, Mr. Winslow, that
18  Dewey Revette was incompetent?
19      MR. HAYCRAFT:
20          Object to form.
21      A.  Never.
22      Q.  Did anyone from BP -- prior to
23  having their lawyers file this document on
24  the one year anniversary after
25  Mr. Revette's death, did anyone from BP

Page 629

1  ever tell you they had concerns about
2  Mr. Revette's training?
3      MR. HAYCRAFT:
4          Object to form.
5      A.  No.
14
15
16
17
18
19
20
21
22
23
24
25

Page 630

1
2
3
4
5
6
7          WITNESS' CERTIFICATE
8
9
10
11      I, DAUN WINSLOW, read or have
12  had the foregoing testimony read to me and
13  hereby certify that it is a true and
14  correct transcription of my testimony, with
15  the exception of any attached corrections
16  or changes.
17
18
19
20
21
22          DAUN WINSLOW
23
24
25

Page 631

1          REPORTER'S CERTIFICATE
2
3      I, THU BUI, CCR, RPR, Certified
4  Court Reporter, State of Louisiana, State
5  of Texas, do hereby certify that the
6  above-mentioned witness, after having been
7  first duly sworn by me to testify to the
8  truth, did testify as hereinabove set
9  forth;
10      That the testimony was reported
11  by me in shorthand and transcribed under my
12  personal direction and supervision, and is
13  a true and correct transcript, to the best
14  of my ability and understanding;
15      That I am not of counsel, not
16  related to counsel or the parties hereto,
17  and not in any way interested in the
18  outcome of this matter.
19
20
21
          THU BUI, CCR, RPR
22      Certified Court Reporter
          State of Louisiana
23      State of Texas
24
25

60  (Pages 628 to 631)

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6029    Board-Certified Court Reporters   Facsimile:(504) 525-9109

215365a0-4255-43f9-97ea-0247bb961a0a

**GAUDET KAISER, L.L.C.**
601 Poydras Street, Suite 1720          New Orleans, Louisiana 70130
Phone: (504) 525-9100                   Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE



RECEIVED
MAY 3 1 2011

I, **DAUN WINSLOW,** have read or have had the

foregoing testimony read to me and hereby certify

that it is a true and correct transcription of

my testimony, with the exception of any

attached corrections or changes.

_May/24/2011_                    _Daun Winslow_

(Date Signed)                    (Signature)

___✓___ Signed with corrections as attached.

_____ Signed with no corrections noted.

11745 Bricksome Avenue, Suite A-4      PHONE  (225) 291-3411
Baton Rouge, Louisiana 70816           FAX    (225) 291-7990

263 W. Causeway Approach                PHONE  (504) 525-9100
Mandeville, Louisiana 70448             FAX    (504) 525-9109

Website: www.gaudetkaiser.com           ALT. EMAIL:
                                        Gkp2003@aol.com & gkp@gaudetkaiser.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL     )  MDL NO. 2179
BY THE OIL RIG       )
"DEEPWATER HORIZON" IN )  SECTION "J"
THE GULF OF MEXICO, ON )
APRIL 20, 2010     )  JUDGE BARBIER
                   )  MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of David William Young, taken
at the Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on the
22nd day of September, 2011.

---

2

1        A P P E A R A N C E S
2
3
4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
5       Mr. Matthew E. Lundy
        LUNDY, LUNDY, SOLLEAU & SOUTH, LLP
        501 Broad Street
6       Lake Charles, Louisiana 70601
7
    APPEARING FOR BP, INC.:
8       Mr. Don K. Haycraft
        LISKOW & LEWIS
9       One Shell Square
        701 Poydras Street, Suite 5000
10      New Orleans, Louisiana 70139-5099
11      Ms. Sylvia Nichole Winston
        KIRKLAND & ELLIS
12      300 North LaSalle
        Chicago, Illinois 60654
13
14  APPEARING FOR TRANSOCEAN:
        Mr. John Kinchen
15      HUGHES ARRELL KINCHEN
        Norfolk Tower
16      2211 Norfolk, suite 1110
        Houston, Texas 77098
17
        Mr. Matthew O. Gatewood
18      SUTHERLAND ASBILL & BRENNAN
        1275 Pennsylvania Avenue, N.W.
19      Washington, D.C. 20004
20
21  APPEARING FOR ANADARKO PETROLEUM COMPANY:
        Mr. Warren E. George
22      BINGHAM MCCUTCHEN
        Three Embarcadero Center
        San Francisco, California 94111-4067
23
24
25

---

3

1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
        Mr. Brad Coffey
2       BECK, REDDEN & SECREST
        One Houston Center
3       1221 McKinney Street, Suite 4500
        Houston, Texas 77010-2010
4
5   APPEARING FOR WEATHERFORD:
        Mr. R. Scott Jenkins
6       JONES, WALKER, WAECHTER, POITEVENT,
        CARRERE & DENEGRE, LLP
7       201 St. Charles Avenue
        New Orleans, Louisiana 70170-5100
8
9   APPEARING FOR DRIL-QUIP, INC.:
        Ms. Wendy Ware Bishop
10      WARE, JACKSON, LEE & CHAMBERS
        America Tower, 42nd Floor
11      2929 Allen Parkway
        Houston, Texas 77019-7101
12
13  APPEARING FOR M-I SWACO:
        Mr. Lucas T. Elliot
14      MORGAN, LEWIS & BOCKIUS, LLP
        1000 Louisiana Street, Suite 4000
15      Houston, Texas 77002-5006
16
17  APPEARING FOR HALLIBURTON:
        Mr. Floyd R. Hartley, Jr.
        Ms. Jill J. Prudhomme
18      GODWIN RONQUILLO
        Renaissance Tower
19      1201 Elm Street, Suite 1700
        Dallas, Texas 75270-2041
20
21  APPEARING FOR THE UNITED STATES:
        Ms. Michelle T. Delemarre
22      U.S. DEPARTMENT OF JUSTICE
        TORT BRANCH, CIVIL DIVISION
23      1425 New York Avenue, N.W.
        Suite 10100
24      Washington, D.C. 20005
        Post Office Box 14271
25      Washington, D.C. 20044-4271

---

4

1   APPEARING FOR THE UNITED STATES COAST GUARD:
        LCDR David M. DuBay
2       U.S. DEPARTMENT OF HOMELAND SECURITY
        OFFICE OF CLAIMS AND LITIGATION
3       U.S. COAST GUARD
        2100 2nd Street, S.W., Stop 7121
4       Washington, D.C. 20593-7121
5
6   APPEARING FOR THE STATE OF LOUISIANA:
        Mr. Henry Dart
        510 North Jefferson Street
7       Covington, Louisiana 70433
8
9   APPEARING FOR THE WITNESS DAVID WILLIAM YOUNG:
        Mr. Tim Johnson
10      LOCKE, LORD, BISSELL & LIDDELL
        600 Travis, Suite 2800
        Houston, Texas 77002
11
12  ALSO PRESENT:
        Mr. Mark Hendrix, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**



285

287

4      Q.  (By Mr. Haycraft) Well, let's assume that
5  a Transocean lawyer were sitting across the table
6  from you during this deposition and said:  "Was
7  Dewey Revette or was Jason Anderson or was Jimmy
8  Harrell a competent, safety-conscious Driller or
9  Toolpusher or OIM?"  Would you be able to answer
10  that question?
11          MR. KINCHEN: Objection to form.
12      A.  Are you asking me if they were?
13      Q.  (By Mr. Haycraft) Yeah.
14      A.  Yes, they were.

20      Q.  Okay.  So the reason why you would have
21  some reason to give an opinion on the competence
22  or character of the drill crew aboard the
23  DEEPWATER HORIZON is because you worked regularly
24  with them over a long period of time?
25      A.  That's correct.

286

288

**PURSUANT TO CONFIDENTIALITY ORDER**



**321**

**322**

17  Q.  Did you consider the DEEPWATER HORIZON to
18  be a safe rig?
19         MR. HAYCRAFT: Objection, form.
20  A.  I did.

25  Q.  (By Mr. Kinchen) Did you have any

**323**

1  concerns about maintenance of the DEEPWATER
2  HORIZON?
3      A.  I did not.
4      Q.  Was -- was -- was safety a priority for
5  you on the DEEPWATER HORIZON?
6      A.  It was.
7      Q.  Was it a priority, as far as you know,
8  for your crew members?
9      A.  As far as I know, it was.
10     Q.  Was it your top priority?
11     A.  Yes, it was.
12     Q.  Describe -- how long did you -- did you
13  spend on the DEEPWATER HORIZON?
14     A.  Four and a half years, approximately.
15     Q.  Okay.  Based on your experience, describe
16  the -- the safety culture on the DEEPWATER
17  HORIZON.
18     A.  It was a top-down safety culture.
19  It -- and it -- it really worked in both
20  directions.  You had -- the Supervisors
21  were -- were there to -- to teach everybody
22  about the expectations.  And at the same time,
23  you were able to -- the -- the guys at the
24  lower end were able to stop jobs and -- and bring
25  up safety issues that would be addressed by the

**324**

1  upper level management.

19     Q.  Did you ever observe any Transocean
20  crew member on the DEEPWATER HORIZON have a --
21  were callous or indifference about the safety of
22  others or the environment?
23     A.  I did not.

**PURSUANT TO CONFIDENTIALITY ORDER**

327

1

2          I, DAVID WILLIAM YOUNG, have read the

3    foregoing deposition and hereby affix my

4    signature that same is true and correct, except

5    as noted on the attached Amendment Sheet.

6

7

                    DAVID WILLIAM YOUNG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**