Page 1

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

H

United States Court of Appeals,
Fifth Circuit.
FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff–Appellee Cross–Appellant,
v.
THOMAS R. CONNER, et al., Defendants–Appellants Cross–Appellees,
and
Federal Deposit Insurance Corporation, Defendant–Intervenor–Appellant Cross–Appellee.

No. 91–2782.
Oct. 1, 1992.
Rehearing and Rehearing En Banc Denied Dec. 2, 1992.

Directors and officers liability insurer sought declaratory judgment that it had no duty to provide coverage for claims by Federal Deposit Insurance Corporation (FDIC) against bank's former directors. FDIC intervened. The United States District Court for the Southern District of Texas, Melinda Harmon, J., entered summary judgment in favor of insurer. FDIC appealed. The Court of Appeals, Emilio M. Garza, Circuit Judge, held that public policy did not invalidate regulatory exclusion and "insured v. insured" exclusion of directors and officers liability policy.

Affirmed.

West Headnotes

**[1] Insurance 217 ⇐⇒2380(2)**

217 Insurance
   217XVII Coverage—Liability Insurance
      217XVII(B) Coverage for Particular Liabilities
         217k2377 Directors' and Officers' Liabilities
            217k2380 Particular Exclusions
               217k2380(2) k. Regulatory exclusions. Most Cited Cases
   (Formerly 217k138(4))

Statutory right of Federal Deposit Insurance Corporation (FDIC) to exercise all shareholders' and depositors' rights and privileges did not invalidate regulatory exclusion of directors and officers liability policy barring coverage for losses in connection with claim by FDIC; FDIC made no attempt to show independent breach of duty toward depositors or shareholders, asserted claim as subrogee of bank, and was not exercising shareholder/depositor derivative rights. Federal Deposit Insurance Act, § 2[11](d)(2)(A)(i), as amended, 12 U.S.C.A. § 1821(d)(2)(A)(i); Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.

**[2] Insurance 217 ⇐⇒2380(3)**

217 Insurance
   217XVII Coverage—Liability Insurance
      217XVII(B) Coverage for Particular Liabilities
         217k2377 Directors' and Officers' Liabilities
            217k2380 Particular Exclusions
               217k2380(3) k. Disputes among insureds. Most Cited Cases
   (Formerly 217k433.1, 217k433(1))

Claim by Federal Deposit Insurance Corporation (FDIC) against bank's former directors was not "derivative" within meaning of exception to "insured v. insured" exclusion of directors and officers liability policy permitting coverage for liability in shareholders' derivative action; complaint by FDIC made no attempt to show independent breach of duty toward bank's depositors or shareholders.

**[3] Insurance 217 ⇐⇒2380(2)**

217 Insurance
   217XVII Coverage—Liability Insurance
      217XVII(B) Coverage for Particular Liabilities
         217k2377 Directors' and Officers' Liabil-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

ities
        217k2380 Particular Exclusions
           217k2380(2) k. Regulatory exclusions. Most Cited Cases
  (Formerly 217k139)

**Insurance 217 🔑 2380(3)**

217 Insurance
    217XVII Coverage—Liability Insurance
      217XVII(B) Coverage for Particular Liabilities
        217k2377 Directors' and Officers' Liabilities
          217k2380 Particular Exclusions
            217k2380(3) k. Disputes among insureds. Most Cited Cases
  (Formerly 217k139)

    Public policy did not invalidate regulatory exclusion and "insured v. insured" exclusion of bank's directors and officers liability policy barring coverage for losses in connection with claim by Federal Deposit Insurance Corporation (FDIC) and in connection with claim by director or officer against director or officer; rather, right of FDIC to recover as bank's subrogee against former directors was confined within scope of policy. Federal Deposit Insurance Act, § 2[11](d)(2)(A)(i), as amended, 12 U.S.C.A. § 1821(d)(2)(A)(i); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, §§ 918–1216, 12 U.S.C.A. §§ 1833–1833e.

**[4] Contracts 95 🔑 108(1)**

95 Contracts
    95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
        95k108 Public Policy in General
          95k108(1) k. In general. Most Cited Cases

    Although contractual agreements may be invalidated on grounds of public policy, public policy opens only narrow exception within this general rule—exception to be applied cautiously and only in plain cases involving dominant public interest.

**[5] Contracts 95 🔑 108(1)**

95 Contracts
    95I Requisites and Validity
      95I(F) Legality of Object and of Consideration
        95k108 Public Policy in General
          95k108(1) k. In general. Most Cited Cases

    In invalidating contract on grounds of public policy, courts must not apply their own substantive views of public policy.

**[6] Insurance 217 🔑 3436**

217 Insurance
    217XXIX Persons Entitled to Proceeds
      217XXIX(A) In General
        217k3434 Status of Claimant in General
          217k3436 k. Third-party beneficiary. Most Cited Cases
  (Formerly 217k594.2(3), 217k594.3(1))

    Right of allegedly injured third party, such as bank, and right of subrogee of that third party, such as Federal Deposit Insurance Corporation (FDIC) as receiver, or that subrogee's assignee, such as FDIC-corporate, to recover on insurance contract is confined within scope of policy's coverage.

**[7] Insurance 217 🔑 2097**

217 Insurance
    217XV Coverage—in General
      217k2096 Risks Covered and Exclusions
        217k2097 k. In general. Most Cited Cases
  (Formerly 217k139)

    Public policy does not create insurance coverage that never existed.

**[8] Insurance 217 🔑 2380(2)**

217 Insurance
    217XVII Coverage—Liability Insurance
      217XVII(B) Coverage for Particular Liabilities
        217k2377 Directors' and Officers' Liabilities

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

217k2380 Particular Exclusions

217k2380(2) k. Regulatory exclusions. Most Cited Cases

(Formerly 217k433.1, 217k433(1))

Regulatory exclusion of bank's directors and officers liability policy barred coverage for claim of Federal Deposit Insurance Corporation (FDIC) against former directors.

**\*1237** W. Ralph Canada, Teresa E. Brown, Hopkins & Sutter, Dallas, Tex., Eugene J. Comey, Sean M. Fitzpatrick, Beth M. Bollinger, Washington, D.C., for FDIC.

Alvin Laser, Jennifer A. Bryant, Bruce D. Beach, Kruse & Laser, Houston, Tex., for Conner.

Barry G. Flynn, Mark W. Thayer, Houston, Tex., for Roger Mott.

Robert N. Hinton, Hinton & Cox, Houston, Tex., for Kovacs and Moreland.

Steven E. Halpin, Houston, Tex., for Christian and Poe.

Van E. McFarland, Houston, Tex., for Dressen, Goss & Trausch.

P. Michael Jung, Duncan L. Clore, Michael Keeley, Strasburger & Price, Dallas, **\*1238** Tex., for Fidelity & Deposit Co. of Maryland.

Paul D. Schoonover, Scott E. Hayes, Vial, Hamilton, Koch & Knox, Dallas, Tex., for National Union Fire Ins. Co. of Pittsburgh, Pa.

Barbara E. Etkind, Peter G. Thompson, Ross, Dixon & Masback, Washington, D.C., for Casualty Co. of Reading, Pa., and Intern. Ins. Co.

Appeals from the United States District Court for the Southern District of Texas.

Before WISDOM, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC") appeals a judgment declaring that Fidelity and Deposit Company of Maryland ("F & D") has no duty to provide coverage under a directors and officers ("D & O") liability insurance policy issued to Northwest Commercial Bank, N.A. ("the Bank") for claims brought by the FDIC against former Bank directors. Concluding that (i) the FDIC's claim does not constitute a derivative shareholder/depositor claim, (ii) public policy does not invalidate the D & O policy exclusions at issue, and (iii) the regulatory exclusion is effective against the FDIC, we affirm.

I

F & D brought this action to obtain a judgment declaring its rights and obligations under a D & O policy it issued to the Bank. The policy—effective January 3, 1986 through January 3, 1987—provides up to $1 million in liability coverage for (i) claims made against the Bank's directors and officers during the policy period and (ii) potential claims against these directors and officers arising out of occurrences about which F & D was notified.[FN1] The policy includes a regulatory exclusion, which provides:

> [FN1]. When the policy expired, the Bank exercised its right to purchase a 90–day extension of coverage—effective through April 3, 1987—to discover claims arising from wrongful acts committed prior to January 3, 1987. The Bank gave F & D notice of potential claims on September 11, 1986; December 2, 1986; December 8, 1986; December 10, 1986; December 31, 1986; January 12, 1987; and April 2, 1987.

> It is understood and agreed that the Company shall not be liable to make payment for Loss in connection with any claim made against the Directors and Officers by any State or Federal Official or Agency, including but not limited to the Federal Deposit Insurance Corporation or Federal Savings and Loan Insurance Corporation.[FN2]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

FN2. Record Excerpts of Federal Deposit Insurance Corporation as Appellant at 6, *Conner & FDIC v. Fidelity and Deposit Co. of Maryland,* No. 91–2782 (5th Cir. filed Oct. 17, 1991) ["Record Excerpts"].

It also contains an insured v. insured exclusion:

It is understood and agreed that the Company shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers by any other Director or Officer of the Bank/Association or by the Bank/Association, *except for a shareholders' derivative action* when such action is brought by a shareholder who is neither a Director nor Officer of the Bank/Association nor a beneficial holder of shares for a Director or Officer of the Bank/Association.FN3

FN3. *Id.*

On June 11, 1987, the Office of the Comptroller of the Currency declared the Bank—a federally-chartered national banking association—insolvent and appointed the FDIC receiver in accordance with 12 U.S.C. § 1821(c) (1987). The FDIC then sold certain Bank assets it held as receiver to the FDIC in its corporate capacity, including the Bank's right to assert claims against its officers and directors arising from the performance of their duties as officers and directors.

On January 9, 1989, the FDIC filed suit in federal district court against a number of the Bank's former directors.FN4 The **\*1239** FDIC's complaint sought damages in excess of $2 million against the directors for breach of fiduciary duty, negligence, negligence per se, and breach of contract under federal law. On February 1, 1990, Conner—a defendant in the FDIC action—filed a third-party complaint against a number of former directors who had not been named as defendants by the FDIC, alleging that these directors were jointly liable in connection with the acts and omissions alleged in the FDIC action. All defendants except McKinney notified F & D of the lawsuit, and all defendants except McKinney, Goss, and Trausch demanded that F & D defend them under the terms of the D & O policy. F & D refused to provide a defense.

FN4. These former directors are Thomas R. Conner, Thomas K. Dreessen, Stan Goss, A. Gary Kovacs, David W. McKinney, Duke R. Moreland, Roger Mott, and Kenneth G. Trausch.

F & D filed this action on March 17, 1989, seeking a declaratory judgment that it has no duty to provide coverage under the D & O policy for claims asserted against the Bank's directors by the FDIC. The FDIC intervened in this action and moved for partial summary judgment declaring that the regulatory and insured v. insured exclusions in the D & O policy do not preclude coverage for its claims; F & D cross-moved for summary judgment declaring that these exclusions preclude coverage.

The district court granted summary judgment in favor of F & D, holding that coverage for the claims asserted by the FDIC is barred by the regulatory exclusion. Although the district court found it unnecessary to resolve issues regarding applicability and enforceability of the insured v. insured exclusion, it did hold that this exclusion bars coverage for the third-party claims asserted by Conner.

II

Appealing the district court's grant of summary judgment in favor of F & D, the FDIC and Conner (together referred to as "the FDIC") assert that:

A. *The district court's holding that the regulatory exclusion bars coverage for the FDIC's claims violates public policy because it deprives the FDIC of the rights of the Bank's shareholders and depositors—rights Congress specifically granted to the FDIC; and*

B. *The regulatory and insured v. insured exclusions do not unambiguously exclude coverage for*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*claims asserted by the FDIC.*

A

1

The FDIC challenges the district court's grant of summary judgment in favor of F & D on the grounds that such coverage is barred by the D & O policy's regulatory exclusion clause. In considering this summary judgment challenge, we review the record de novo, and with the guidance of Rule 56 of the Federal Rules of Civil Procedure and several Supreme Court cases interpreting this rule. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The summary judgment standard is securely settled: "Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian,* 954 F.2d at 1131.

2

[1] The FDIC asserts that:

> [j]udicial enforcement of the Regulatory Exclusion (or the Insured v. Insured Exclusion) to bar coverage for the claims asserted by the FDIC in the FDIC Action would violate public policy because it would substantially impair the congressional policy to grant the FDIC "all rights, titles, powers, and privileges" of the shareholders and depositors of Northwest Commercial Bank with respect to the assets of the Bank. Among **\*1240** the assets of the shareholders and depositors of the Bank under federal law is the right to assert derivative claims against the Bank's officers and directors for mismanagement.[FN5]

FN5. Brief of Federal Deposit Ins. Corp. as Appellant at 2, *Conner and FDIC v. Fidelity and Deposit Co. of Md.,* No. 91–2782 (5th Cir. filed Oct. 17, 1991) ["FDIC Brief"].

Untangled, these contentions separate into the following: (a) the FDIC's claim is a derivative shareholder claim and, to the extent that the regulatory exclusion bars the FDIC from bringing such claims but does not bar shareholders, the exclusion is invalid as a matter of public policy because the FDIC is entitled to exercise *all* shareholders' and depositors' rights and privileges, and, (b) more generally, the D & O policy exclusions deprive the FDIC of its statutory rights under 12 U.S.C. § 1821(d)(2)(A)(i) as subrogee of the Bank or as subrogee of the Bank's stockholders and depositors.

(a)

The D & O policy unambiguously excludes coverage for losses "in connection with any claim made against the Directors and Officers by any State or Federal Official or Agency, including but not limited to the Federal Deposit Insurance Corporation or Federal Savings and Loan Insurance Corporation."[FN6] Therefore, although section 1821(d)(2)(A)(i) empowers the FDIC to act as successor to the rights of the Bank, its stockholders, depositors, and directors,[FN7] the policy's regulatory exclusion explicitly omits coverage for all of these entities for claims brought by the FDIC.

FN6. Record Excerpts at 6.

FN7. Section 1821(d)(2)(A)(i) provides, in pertinent part, that:

> The Corporation shall, as conservator or receiver, and by operation of law, succeed to—
>
> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or dir-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

ector of such institution with respect to the institution and the assets of the institution....

12 U.S.C. § 1821(d)(2)(A)(i).

[2] The FDIC attempts to ride around this exclusion by characterizing its action as a shareholder/depositor derivative action.[FN8] We find that the FDIC's action is not "derivative" for section 1821(d)(2)(A)(i) purposes.

> FN8. Specifically, the FDIC asserts that the regulatory exclusion deprives it of the opportunity to subrogate to the shareholders' and depositors' right to bring a covered derivative claims against the directors:
>
>> Under F & D's interpretation of [the policy's] Exclusions, such derivative claims are covered claims if asserted by shareholders and depositors, but are excluded from coverage if asserted by their statutory successor, the FDIC. Judicial enforcement of the Exclusions would seriously impair the FDIC's ability to accomplish the congressional mandate following the FDIC to exercise *all* rights, titles, powers, and privileges of the Bank's shareholders and depositors with respect to assets such as the derivative claims at issue here.
>
> FDIC Brief at 7.

The FDIC's complaint makes no attempt to show an independent breach of duty toward the Bank's depositors or shareholders—a requirement for independent shareholder liability. *See Commonwealth of Mass. v. Davis,* 140 Tex. 398, 407–08, 168 S.W.2d 216, 221–22 (1942) (Although the general rule is that "individual stockholders have no independent right of action for injuries suffered by the corporation[,].... exception has been applied more often in cases where there was a fiduciary relationship which required the wrongdoer to protect the interest of the stockholder ... and full relief to the stockholder could not be had through a recovery by the corporation."), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). In fact, the complaint, devoid of derivative action allegations, makes no effort to comply with Rule 23.1 of the Federal Rules of Civil Procedure.[FN9] The pleading requirements of **\*1241** Rule 23.1 reflect the fact that a shareholder's or depositor's right to bring a derivative action on behalf of the corporation arises out of unwillingness on the part of management of that corporation to bring the claim directly. In short, "[t]he right to sue arises from the fact that the corporation itself refuses to sue." 13 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5954 (rev. ed. 1991).[FN10] Therefore, we find that the FDIC's claims against the Bank's directors are asserted as subrogee of the Bank and do not constitute the exercise of shareholder/depositor derivative rights.

> FN9. Rule 23.1 provides:
>
>> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, *the complaint shall be verified and shall allege* (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. *The complaint shall also allege with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the reasons for the plaintiff's failure to obtain the action or for not making the effort.

FED.R.CIV.P. 23.1 (emphasis added).

FN10. Texas courts held long ago that unwillingness of corporate management to assert the "derivative" claim, whether shown by demand and refusal or inferred from the circumstances, is more than mere formality: It is what makes a derivative claim a derivative claim. *See New Birmingham Iron & Land Co. v. Blevens,* 12 Tex.Civ.App. 410, 34 S.W. 828, 833 (1896) (A shareholder suing in derivative capacity "must show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes."); *see generally,* Note, *Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit,* 73 HARV.L.REV. 746 (1960).

(b)

[3] The FDIC also raises a more general public policy challenge to the validity of the D & O policy exclusions. Specifically, the FDIC asserts that the D & O policy exclusions deprive the FDIC of its statutory rights under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, § 220(b)(3), 103 Stat. 183, 265–66 (FIRREA), *codified at* 12 U.S.C. §§ 1811–1833(e) (1989). We find that, although FIRREA arms the FDIC with public policy braided from strong, well-defined fibers,[FN11] the FDIC swings its public policy lasso too broadly in the case before us.

FN11. *See, e.g., supra* note 7, *quoting* 12 U.S.C. § 1821(d)(2)(A)(i).

[4][5] Whether an insurance policy exclusion violates public policy, "[l]ike other questions of contract interpretation, ... is a question of law which we review de novo." *St. Paul Fire & Marine Ins. Co. v. FDIC,* 968 F.2d 695, 702 (8th Cir.1992), *citing FDIC v. Aetna Cas. & Surety Co.,* 903 F.2d 1073, 1077 (6th Cir.1990). "The general rule is that competent persons shall have the utmost liberty of contract and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Twin City Pipe Line v. Harding Glass,* 283 U.S. 353, 356, 51 S.Ct. 476, 477, 75 L.Ed. 1112 (1931). Although contractual agreements may be invalidated on grounds of public policy, public policy opens only a narrow exception within this general rule—an exception to be applied cautiously and only in plain cases involving dominant public interests.[FN12] *See Twin City,* 283 U.S. at 356, 51 S.Ct. at 477; *see also Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945) ("Only dominant public policy would justify such action."). In exercising this exception, courts may not apply their own substantive views of public policy: "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Muschany,* 324 U.S. at 66, 65 S.Ct. at 451; *see* \***1242***United Paperworkers Int'l. Union v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (holding that court's refusal to enforce arbitrator's interpretation of contract is limited to situations where contracts as interpreted would violate explicit, well-defined public policy) (quoting *Muschany,* 324 U.S. at 66, 65 S.Ct. at 451); *W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (Stating that, although court may not enforce agreement contrary to public policy, "[s]uch a policy, however, must be well defined and dominant ..."); *cf. FDIC v. Jenkins,* 888 F.2d 1537, 1546 (11th Cir.1989) ( "We are not convinced that Congress considered collections against parties such as the bank-related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this court."). FN13

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN12. In *Jackson Purchase Rural Elec. Coop. Assoc. v. Local Union* 816, 646 F.2d 264 (6th Cir.1981), the Sixth Circuit set forth the factors that should be considered in performing this balancing test:

> [1] the justified expectations of the parties; [2] the forfeiture that would result from non-enforcement of the agreement; [3] any special public interest in enforcement; [4] the strength of the public policy that the agreement violates, as shown by legislation or court decision; [5] the likelihood that refusal to enforce will further that policy; and [6] the seriousness of the misconduct.

646 F.2d at 267, *citing* RESTATEMENT (SECOND) OF CONTRACTS § 320(1) (Tent.Draft No. 12, 1977).

FN13. The amorphous and didactic nature of "public policy" was recognized by the Supreme Court long ago:

> [T]he theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another.

*Patton v. United States,* 281 U.S. 276, 306, 50 S.Ct. 253, 261, 74 L.Ed. 854 (1930). Therefore, "[a]s the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to the policy." *Muschany,* 324 U.S. at 66; 65 S.Ct. at 451. To justify invalidating a contractual agreement, public policy must be "well defined and dominant." *Local 759,* 461 U.S. at 766, 103 S.Ct. at 2183.

The FDIC contends that enforcement of the regulatory exclusion would "seriously impai[r] the congressional policy reflected in FIRREA." FN14 However, FIRREA's legislative history includes a chapter in which the FDIC submitted proposed statutory language that would have granted the FDIC what it seeks in the case before us—that is, statutory authority to avoid regulatory and insured v. insured exclusions in D & O policies.FN15 Just as we now reject the FDIC's interpretation of the congressional policy surrounding FIRREA, Congress rejected the FDIC's proposed language and opted for the following:

FN14. FDIC Brief at 20.

FN15. The language proposed by the FDIC is as follows:

> The Corporation may enforce any contract entered into by the financial institution to the same extent as the financial institution in default, notwithstanding any provision of the contract to the contrary, which it deems in its discretion to be necessary for the orderly execution of its duties.

S. 413, 101st Cong., 1st Sess. § 211(2), *proposing language to be codified at* 12 U.S.C. § 1821(c)(2)(H).

The conservator or receiver may enforce any contract, *other than a director's or officer's liability insurance contract or a depository institution bond,* entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, solvency or the appointment of a conservator or receiver.

12 U.S.C. § 1821(e)(12)(A) (1989) (emphasis added). In fact, FIRREA's legislative history reveals

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

that Congress intended to remain neutral regarding regulatory exclusions.[FN16] We conclude, therefore, that the ***1243** FDIC cannot rely upon FIRREA as creating public policy against enforcement of the regulatory exclusion. *See FDIC v. American Casualty Co.,* 975 F.2d 677, 682 (10th Cir.1992) (rejecting FDIC's assertion that exclusionary clause in director and officer liability policy was void as contrary to public policy, court stated that "Congress intended to remain neutral on the question in FIRREA."); *St. Paul,* 968 F.2d at 702 (Where court rejected FDIC challenge to regulatory exclusion in D & O policy on grounds of public policy, holding that "[t]he FDIC's public policy argument is undermined by FIRREA and its legislative history."); *American Cas. Co. v. Baker,* 758 F.Supp. 1340, 1347 (C.D.Cal.1991) ("There is no statute, including various provisions of FIRREA, which expressly invalidates the exclusionary clauses in director and officer liability policies."); *cf. FDIC v. Aetna Cas. & Surety Co.,* 903 F.2d 1073, 1078 (6th Cir.1990) (where termination provisions of blanket bond were challenged as against public policy, holding that FIRREA does not "provide the basis for a 'dominant public policy' which would justify voiding" applicable bond provisions).

> FN16. Concerned that refusing to permit regulatory and insured v. insured exclusions might eliminate the market for D & O coverage for financial institutions, Congress commissioned a comprehensive study which consisted of written submissions from numerous insurers, banking and insurance industry representatives, and others. *See* Brief of Appellee and Cross–Appellant Fidelity and Deposit Co. of Md. at 36–37, *FDIC v. Conner,* No. 91–2782 (5th Cir. filed Dec. 18, 1991) ["F & D Brief"]. These submissions—*see, e.g.,* Plaintiff's Exhibits 5 & 6—indicate concern that refusing to permit regulatory and insured v. insured exclusions would result in a market with few or no providers and little or no affordable coverage. Conscious of this concern, Senator Garn, one of FIRREA's sponsors, made a statement of neutrality as to the enforceability of the regulatory exclusion:
>
> > [w]ith respect to Directors' and Officers' liability insurance contracts, there has been a substantial split in the decisions relating to the validity of regulatory exclusion clauses that prohibits a regulator from enforcing rights under the contract. Compare *Continental Casualty Co. v. Allen with Branning v. CNA Ins. Companies* (citations omitted). It is not the intent of the conferees to influence these decisions or to affect the development of case law or statutory provisions relating to the validity of these clauses and directors' and officers' liability insurance contracts or fidelity or indemnity bonds. *The intent of the conferees is to remain neutral on these matters.*
>
> 135 CONG.REC. S10198 (daily ed. Aug. 4, 1989), (statement of Sen. Garn) (emphasis added; *see also* H.R.REP. No. 101–54(I), 101st Cong., 1st Sess. 331, 416–17, *reprinted in* 1989 U.S.C.C.A.N. 86, 127, 212–13.

[6][7] In sum, the Bank owned the right to pursue certain claims directly against its directors. The FDIC-receiver succeeded to this right by statute, and the FDIC-corporate then succeeded to it by assignment. Nevertheless, the right of an allegedly injured third party (such as the Bank) and, correspondingly, the right of a subrogee of that third party (such as the FDIC-receiver) or that subrogee's assignee (such as FDIC-corporate) to recover on an insurance contract is confined within the scope of the insurance contract's coverage. *See, e.g., Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169, 1177 (5th Cir.1973) ("Generally, the right of any injured party to proceed against the insurer un-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

der the policy depends upon the insured's right of action against the insurer. The claimant has no greater rights than the insured.") (citations omitted), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); *Seguros Tepeyac, S.A. v. Bostrom,* 347 F.2d 168, 178 (5th Cir.1965) ("In the absence of statutory provisions or required form policies, it is generally held that the injured person stands in the shoes of the insured, and his rights against the insurer are no greater and no less than those of the insured.") (quoting 8 APPELMAN, INSURANCE LAW AND PRACTICE § 4811 (1962 rev. ed.)); *Klein v. Century Lloyds,* 154 Tex. 160, 162, 275 S.W.2d 95, 96 (1955) ("It should be kept in mind that this is a suit on an insurance policy executed to [the insured] and that it can benefit petitioners only to the degree which it affords protection to [the insured]."). In short, public policy does not create insurance coverage that never existed:

> FDIC argues that to hold the [regulatory and insured v. insured] endorsements enforceable gives the parties the right to bargain away FDIC's statutory right to marshal and collect assets. However, the FDIC overlooks the very important fact that in order to marshal and collect an asset, the failed bank must have it as an asset. Here, the bank did not own as an asset directors' and officers' liability insurance without an FDIC endorsement. Therefore, such argument fails. Nothing in the endorsement affects FDIC as receiver to have all the rights and claims that the failed banking institution would have had.

*Continental Cas. v. Allen,* 710 F.Supp. 1088, 1099–1100 (N.D.Tex.1989). In fact, it would not have been against public policy for the Bank to have purchased no D & O coverage at all.[FN17] Accordingly, this court ***1244** joins the overwhelming majority of courts which, confronted with this issue, have ruled that regulatory exclusions are enforceable.[FN18]

> FN17. Presently, although applicable regulations authorize the purchase of D & O policies by insured institutions, 12 C.F.G. § 7.5217(d), and expressly prohibit certain D & O policy coverage, *id.* (policy must exclude coverage for formal order assessing civil money penalties against bank director or employee), insured institutions are not required to obtain D & O coverage. If the FDIC's inability to collect on D & O insurance policies inflicts unacceptable violence upon the " 'compelling federal interest' in the maintenance of the integrity of federal deposit insurance funds to prevent the federal treasury from having to shoulder the burden of an inadequate fund," FDIC Brief at 20, Congress and the FDIC should *require* member banks to carry such insurance policies without regulatory exclusions—that is, require banks to purchase D & O coverage for the risk of bank failure.

> FN18. *See, e.g., St. Paul,* 968 F.2d at 702 ("In light of this express statutory provision exempting enforcement of D & O liability policies by a conservator or receiver, we cannot see how enforcement of the regulatory exclusion would violate public policy."); *American Cas. Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991) (regulatory exclusion excluding coverage in connection with claim brought by FDIC is not unconscionable); *FDIC v. Zaborac,* 773 F.Supp. 137, 141 (C.D.Ill.1991) ("This Court adopts the holding and reasoning ... [that the regulatory] exclusion unambiguously excludes coverage when read as a whole."); *Powell v. American Cas. Co.,* 772 F.Supp. 1188, 1190 (W.D.Okla.1991) ("Plaintiffs' argument that the exclusion doesn't apply to the FDIC action is a strained interpretation of the endorsement language."); *American Cas. Co. v. Baker,* 758 F.Supp. 1340, 1343–47 (C.D.Cal.1991) (holding that regulatory exclusion bars claims made by Resolution Trust Corporation against officers and dir-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ectors); *Gary v. American Cas. Co.,* 753 F.Supp. 1547, 1550–51 (W.D.Okla.1990) (regulatory exclusion excludes coverage for FDIC's claims); *id.* at 1552–53 (rejecting FDIC's public policy arguments parallel to those raised in the suit before us); *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088, 1098–1100 (N.D.Tex.1989) (rejecting FDIC's public policy arguments); *FDIC v. Bowen,* 824 P.2d 41, 43 (Colo.Ct.App.1991) ("[W]e are not persuaded that there is any public policy which precludes this contractual limitation on [insurer's] liability under the policy."); *see also Finci v. American Cas. Co.,* 323 Md. 358, 372–81, 593 A.2d 1069, 1076–80 (1991) (finding regulatory exclusion unambiguous and that it does not violate public policy by barring claims brought by state depositor insurance fund). *Contra Branning v. CNA Ins. Cos.,* 721 F.Supp. 1180, 1183–84 (W.D.Wash.1989) (exclusionary clause hinders FSLIC's exercise of federal powers and is, therefore, contrary to public policy); *FSLIC v. Mmahat,* No. 86–5160, 1988 WL 19304, at * 2 (E.D.La. Mar. 3, 1988) ("In sum, not only are both exclusions ambiguous, but their application to this case would contravene public policy."); *FSLIC v. Oldenburg,* 671 F.Supp. 720, 723–24 (D.Utah 1987) (exclusion is void as against public policy).

B

[8] As an alternative to its "public-policy trumps exclusions" assertion, the FDIC contends that the regulatory and insured v. insured exclusions do not unambiguously exclude coverage for claims asserted by the FDIC. We disagree.

The FDIC was initially a stranger to this policy and acquired rights under it only by virtue of receivership, which subrogated the FDIC to the policy rights of the Bank and its shareholders and depositors. The FDIC holds all of the rights under the D & O policy held by its predecessors in interest,[FN19] but that policy explicitly excludes (i) coverage for "Loss in connection with any claim made against the Directors and Officers by ... the Federal Deposit Insurance Corporation or Federal Savings and Loan Insurance Corporation"[FN20] and (ii) "Loss in connection with any claim made against the Directors and Officers by any other Director or Officer of the Bank/Association or by the Bank/Association, except for a shareholders' derivative action...."[FN21] Although we construe ambiguity in policy language in favor of the insured,[FN22] this ***1245** court "has no right to read an ambiguity into the plain language of an insurance contract in order to construe it against the insurer." *St. Paul,* 968 F.2d at 701 (internal quotation omitted). Accordingly, we will not read ambiguity into the language of the D & O policy exclusions. *See Sharp v. FSLIC,* 858 F.2d 1042, 1045 (5th Cir.1988) ( "[C]ourts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties."), *quoting Calcasieu–Marine National Bank v. American Employers' Ins. Co.,* 533 F.2d 290, 296 (5th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).

> FN19. The FDIC argues that it holds much more—that "courts have consistently held that the FDIC does not simply 'stand in the shoes' of a failed institution in asserting claims against the institution's directors and officers, but instead has broader rights pursuant to its statutory authority." FDIC Brief at 32 (citations omitted). Although the FDIC is armed with potent public policy powers (*see, e.g., Texas Refrigeration Supply v. FDIC,* 953 F.2d 975, 978–80 (5th Cir.1992), where this court discusses expansion of the doctrine of *D'Oench, Duhme* ), we have concluded that such assertions are misplaced in the case before us because "the power to refuse to enforce contracts on the ground of public policy is limited to occasions where the contract would violate 'some explicit public policy'

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

that is 'well defined and dominant ...' " *St. Paul,* 968 F.2d at 702, *quoting St. Paul Mercury Ins. Co. v. Duke Univ.,* 849 F.2d 133, 135 (4th Cir.1988); *see supra* Part II.A.2. In short, for the purposes of overcoming the D & O policy's exclusions, the FDIC's public policy arguments are "undermined by FIRREA and its legislative history." *St. Paul,* 968 F.2d at 702.

FN20. *See* text accompanying *supra* note 2 (quoting the regulatory exclusion in its entirety).

FN21. *See* text accompanying *supra* note 3 (quoting the insured v. insured exclusion in its entirety).

FN22. *See Kelly Assocs., Ltd. v. Aetna Cas. and Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984) ("When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery."), *quoting Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344 (Tex.1976); *see also Maryland Cas. Co. v. State Bank & Trust Co.,* 425 F.2d 979, 982 (5th Cir.) (whether ambiguity exists in language of an exclusionary provision of an insurance policy is a matter of law for the court to decide), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970).

We find that there is only one interpretation of the insured v. insured exclusion as it pertains to the third-party claims asserted by Conner—that is, the plain language of the insured v. insured exclusion bars Conner's claims against his former colleagues.[FN23] *See Continental Savings Ass'n v. United States Fidelity Guar. Co.,* 762 F.2d 1239, 1245 (5th Cir.) (holding that a provision is ambiguous only if it is subject to two or more reasonable interpretations which are inconsistent) (citation omitted), *amended in part,* 768 F.2d 89 (5th Cir.1985). As for the FDIC's challenge to this insured v. insured exclusion, we have already concluded that (i) the FDIC's claim does not constitute a derivative shareholder/depositor claim,[FN24] (ii) public policy does not invalidate the D & O policy exclusions,[FN25] and (iii) the regulatory exclusion is effective against the FDIC.[FN26] Therefore, although a number of courts have recognized that, when both are suing the bank's officers and directors, an insured bank and its receiver share equivalent status under an insured v. insured exclusion,[FN27] we do not reach this issue in the case before us.

FN23. *See* text accompanying *supra* note 3 (quoting the exclusion).

FN24. *See supra* Part II.A.2.(a).

FN25. *See supra* Part II.A.2.(b).

FN26. *Id.*

FN27. *See, e.g., Gary v. American Cas. Co.,* 753 F.Supp. 1547, 1554 (W.D.Okla.1990) ("[T]he FDIC is standing in the shoes of the bank in prosecuting these claims. As such, the 'Insured v. Insured' exclusion in the 1983 policy applies to the FDIC's claims and precludes D & O insurance coverage therefor."); *American Cas. Co. v. FDIC,* 677 F.Supp. 600, 604 (N.D.Iowa 1987) (finding an insured v. insured exclusion unambiguous as to its applicability regarding the FDIC); *Mount Hawley Ins. Co. v. FDLIC,* 695 F.Supp. 469, 481–83 (C.D.Cal.1987) (insured v. insured exclusion applies to claim by FSLIC in its capacity as receiver of insured institution) ("FSLIC, in its suit, has asserted claims belonging to CSB. These claims would not be covered under the policy if asserted by CSB; it is difficult to argue that they should be covered when asserted on behalf of CSB by its receiver.").

III

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109
**(Cite as: 973 F.2d 1236)**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of F & D.

C.A.5 (Tex.),1992.
Fidelity & Deposit Co. of Maryland v. Conner
973 F.2d 1236, 61 USLW 2221, 23 Fed.R.Serv.3d 1109

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.