174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

▷

Court of Appeals of Texas,
Houston (14th Dist.).
Cynthia ENGLISH d/b/a English Land Service and
American States Insurance Company, Appellants,
v.
BGP INTERNATIONAL, INC., Appellee.

No. 14–04–00491–CV.
Sept. 15, 2005.

**Background:** Indemnitee on seismic exploration contract brought action against indemnitor for a declaratory judgment that it owed duty to defend and indemnify indemnitee in landowners' lawsuits. The 334th District Court, Harris County, Mauricio Rondon, J., entered summary judgment in favor of indemnitor. Indemnitee appealed.

**Holdings:** The Court of Appeals, J. Harvey Hudson, J., held that:

(1) the duty to defend issue was justiciable before determination of liability and duty to indemnify;

(2) the indemnitor owed a duty to defend; and

(3) the indemnitor was not required to indemnify the indemnitee from its own negligent acts.

Reversed and remanded.

West Headnotes

**[1] Declaratory Judgment 118A ⬤⟳143.1**

118A Declaratory Judgment
 118AII Subjects of Declaratory Relief
  118AII(G) Written Instruments and Contracts
   118AII(G)1 In General
    118Ak143 Particular Contracts
     118Ak143.1 k. In General. Most Cited Cases

 Indemnitor's alleged duty to defend indemnitee in lawsuits was justiciable before determination of liability and duty to indemnify, and, thus, indemnitee's claim was not premature in declaratory judg-

ment action; the indemnitor agreed to protect, defend, and hold the indemnitee harmless.

**[2] Indemnity 208 ⬤⟳36**

208 Indemnity
 208II Contractual Indemnity
  208k34 Scope and Extent of Liability
   208k36 k. Costs and Expenses. Most Cited Cases

 Generally, when parties include an indemnity provision in a contract, the duty to indemnify includes the duty to pay for all costs and expenses associated with defending suits against the indemnitee.

**[3] Indemnity 208 ⬤⟳31(7)**

208 Indemnity
 208II Contractual Indemnity
  208k31 Construction and Operation of Contracts
   208k31(7) k. Duty to Defend. Most Cited Cases

 An indemnitor's duty to defend the indemnitee may arise even when it is later determined that the indemnitor has no duty to indemnify.

**[4] Indemnity 208 ⬤⟳31(7)**

208 Indemnity
 208II Contractual Indemnity
  208k31 Construction and Operation of Contracts
   208k31(7) k. Duty to Defend. Most Cited Cases

 The indemnitor's duty to defend the indemnitee is determined solely by the precise language in the contract and the factual allegations in the pleadings.

**[5] Contracts 95 ⬤⟳147(1)**

95 Contracts
 95II Construction and Operation
  95II(A) General Rules of Construction

© 2011 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954

**(Cite as: 174 S.W.3d 366)**

95k147 Intention of Parties

    95k147(1) k. In General. Most Cited Cases

In interpreting contractual language, a court's primary concern is to ascertain the true intentions of both parties.

**[6] Contracts 95 ⬌143.5**

95 Contracts

    95II Construction and Operation

      95II(A) General Rules of Construction

        95k143.5 k. Construction as a Whole. Most Cited Cases

Courts must give reasonable effect to a contractual provision and the contract as a whole.

**[7] Indemnity 208 ⬌31(7)**

208 Indemnity

    208II Contractual Indemnity

      208k31 Construction and Operation of Contracts

        208k31(7) k. Duty to Defend. Most Cited Cases

If the underlying pleadings do not allege facts within the scope of the agreement, the indemnitor is not required to defend a suit against its indemnitee.

**[8] Indemnity 208 ⬌31(7)**

208 Indemnity

    208II Contractual Indemnity

      208k31 Construction and Operation of Contracts

        208k31(7) k. Duty to Defend. Most Cited Cases

In reviewing the pleadings to determine whether indemnitor owes duty to defend indemnitee, a court must focus on the facts that show the origin of the damages, rather than on the particular legal theories alleged; courts do not consider the veracity of the allegations in the underlying pleadings, read facts into the pleadings, or look outside the pleadings for additional facts that could have been pled.

**[9] Indemnity 208 ⬌31(7)**

208 Indemnity

    208II Contractual Indemnity

      208k31 Construction and Operation of Contracts

        208k31(7) k. Duty to Defend. Most Cited Cases

**Indemnity 208 ⬌33(1)**

208 Indemnity

    208II Contractual Indemnity

      208k33 Particular Cases and Issues

        208k33(1) k. In General. Most Cited Cases

Contract requiring indemnitor to protect, indemnify, defend, and hold harmless indemnitee from any claim or suit, including trespass, if indemnitor commenced field operations without the permission of all mineral and surface owners, was an agreement to defend the indemnitee separate and apart from the duty to indemnify it.

**[10] Indemnity 208 ⬌31(7)**

208 Indemnity

    208II Contractual Indemnity

      208k31 Construction and Operation of Contracts

        208k31(7) k. Duty to Defend. Most Cited Cases

**Indemnity 208 ⬌33(1)**

208 Indemnity

    208II Contractual Indemnity

      208k33 Particular Cases and Issues

        208k33(1) k. In General. Most Cited Cases

Indemnitor's agreement to defend indemnitee from any claim or suit, including trespass, if indemnitor commenced field operations without the permission of all mineral and surface owners, required indemnitor to defend indemnitee in landowners' suits alleging trespass and negligence in connection with seismic testing; the negligence theories stemmed primarily from the fact that the indemnitor

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

was exploring without the permission of all landowners, the negligence claims would be negated in the absence of trespass, and no reason existed to segregate the trespass and negligence claims.

**[11] Indemnity 208 ⟾31(7)**

208 Indemnity
  208II Contractual Indemnity
    208k31 Construction and Operation of Contracts
      208k31(7) k. Duty to Defend. Most Cited Cases

When some theories of liability fail to give rise to the indemnitor's duty to defend the indemnitee, but other theories do, the indemnitor should be required to provide a defense.

**[12] Indemnity 208 ⟾30(1)**

208 Indemnity
  208II Contractual Indemnity
    208k26 Requisites and Validity of Contracts
      208k30 Indemnitee's Own Negligence or Fault
        208k30(1) k. In General. Most Cited Cases

The "express negligence doctrine" requires a party contracting for indemnity from the consequences of its own negligence to clearly express that intent within the four corners of the contract.

**[13] Indemnity 208 ⟾30(1)**

208 Indemnity
  208II Contractual Indemnity
    208k26 Requisites and Validity of Contracts
      208k30 Indemnitee's Own Negligence or Fault
        208k30(1) k. In General. Most Cited Cases

Indemnity provisions that do not unequivocally state within the four corners of the instrument the intent of the parties regarding indemnity for party's negligence are unenforceable as a matter of law under express negligence doctrine.

**[14] Indemnity 208 ⟾97**

208 Indemnity
  208V Actions
    208k97 k. Pleading. Most Cited Cases

**Indemnity 208 ⟾104**

208 Indemnity
  208V Actions
    208k104 k. Questions for Jury. Most Cited Cases

The requirement that a party contracting for indemnity from the consequences of its own negligence must clearly express that intent within the four corners of the contract is not an affirmative defense; it is a rule of contract interpretation which is determinable as a matter of law.

**[15] Judgment 228 ⟾181(19)**

228 Judgment
  228V On Motion or Summary Proceeding
    228k181 Grounds for Summary Judgment
      228k181(15) Particular Cases
        228k181(19) k. Contract Cases in General. Most Cited Cases

The test whether an indemnity agreement clearly expresses intent to cover indemnitee for consequences of own negligence may be applied at the summary judgment stage of a trial.

**[16] Indemnity 208 ⟾30(1)**

208 Indemnity
  208II Contractual Indemnity
    208k26 Requisites and Validity of Contracts
      208k30 Indemnitee's Own Negligence or Fault
        208k30(1) k. In General. Most Cited Cases

Indemnitor was not required to indemnify indemnitee from its own negligent acts in connection with seismic exploration; the indemnitor was required to provide indemnity from any claim or suit arising out of the negligent actions or omissions of the indemnitor, its subcontractors, or employees.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

**[17] Indemnity 208 ⟶30(1)**

208 Indemnity
    208II Contractual Indemnity
        208k26 Requisites and Validity of Contracts
            208k30 Indemnitee's Own Negligence or Fault
                208k30(1) k. In General. Most Cited Cases

The express negligence doctrine which requires a party contracting for indemnity from the consequences of its own negligence to clearly express that intent within the four corners of the contract does not apply to non-negligence actions.

**[18] Indemnity 208 ⟶30(1)**

208 Indemnity
    208II Contractual Indemnity
        208k26 Requisites and Validity of Contracts
            208k30 Indemnitee's Own Negligence or Fault
                208k30(1) k. In General. Most Cited Cases

The failure of an indemnity agreement to meet the express negligence test precludes a party from seeking indemnification for its own negligence.

**\*368** Christopher Lee Burke, San Antonio, for appellants.

Joseph L. Segrato, Vaughan E. Waters, Corpus Christi, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

This appeal arises from a dispute over responsibility for providing a defense in a series of underlying lawsuits. Cynthia English d/b/a English Land Service and American States Insurance Company FN1 (collectively, "English"), appeal from the trial court's order denying their motion for summary

judgment and granting the motion for summary judgment of BGP International,**\*369** Inc. ("BGP"). We reverse and remand.

> FN1. American States Insurance Company is the commercial general liability insurance carrier for English Land Service and is a party to this lawsuit by virtue of its subrogation interest. Both American States and English Land Service demanded that BGP provide and pay for a defense to the underlying lawsuits.

Factual and Procedural Background

BGP contracted with English to provide seismic exploration services on land located in Hidalgo County. The land was owned by approximately 15,000 different parties. Before BGP could commence their exploration activities, each of the affected landowners had to consent. BGP, however, began operations before all of the Hidalgo County landowners had given permission. FN2 Subsequently, 43 of the owners filed suit in Hidalgo County against BGP, English, and their affiliated entities for trespass and various negligence actions.

> FN2. Although English had obtained the necessary permits from both the city of Donna and Hidalgo County, it had not received permission from 100 percent of the landowners, both mineral estate and surface owners, when BGP began its seismic explorations.

Pursuant to an indemnity provision in the contract, English asked BGP to defend it in the 43 underlying lawsuits. The provision specifically required BGP to:

> [P]rotect, defend, indemnify and hold harmless [English] ... against loss or damage arising out of any claim or suit, including trespass (whether geophysical or surface), property loss or damage, or any civil fines or penalties imposed ... resulting from operations when BGP ... commence[s] field operations without the permit acquisition of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

100% of the mineral owners and 100% of the surface owners, or any claim or suit arising out of the negligent actions or omissions of BGP....

When BGP refused to provide a defense, English filed suit in Harris County seeking a declaratory judgment that BGP was required to defend and indemnify English against the Hidalgo County actions.

Subsequently, both parties moved for summary judgment. The trial court denied English's motion and granted BGP's motion. Accordingly, the court dismissed English's suit without prejudice and explained that English's request for indemnification was premature and not ripe for adjudication until after the conclusion of the underlying Hidalgo County lawsuits.

On appeal, English contends the trial court erred in denying its request for declaratory judgment. English argues that BGP is required to pay for defense of the 43 Hidalgo County suits despite the unresolved nature of those actions because that is what the parties intended when they contracted. BGP, on the other hand, argues that the issue of who bears responsibility to pay for English's defense is non-justiciable until such time that the Hidalgo County suits are resolved, either by settlement or judgment. BGP also claims the express negligence doctrine precludes English from shielding itself from its own negligence. Thus, the ultimate issue presented to this court is whether BGP owes a duty to step in and defend English in the landowner lawsuits.[FN3]

> **FN3.** English originally requested a declaration that BGP has a duty to both *defend* and *indemnify* English from the underlying Hidalgo County lawsuits. However, in its appellate briefs, English made it clear that it is not asserting any right to indemnity and conceded that such a right is not justiciable until the underlying cases are resolved. Instead, English is seeking only a determination as to BGP's *duty to defend*

English in the underlying suits. Therefore, we do not decide today the issue of BGP's indemnity obligations.

Standard of Review

To prevail on a motion for summary judgment, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); **\*370***Rhone– Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). In reviewing a trial court's decision on a request for summary judgment, we take as true all evidence favorable to the non-movant, and we make all reasonable inferences in the non-movant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). When, as in this case, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, this court should review both parties' summary judgment evidence and determine all questions presented. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

We review declaratory judgments under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997); *City of Galveston v. Giles,* 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Giles,* 902 S.W.2d at 170. Here, because the trial court resolved the case on competing motions for summary judgment, we review the propriety of the trial court's denial of the declaratory judgment under the same standards as we apply to review the summary judgment. *Unauthorized Practice of Law Comm. v. Jansen,* 816 S.W.2d 813, 814 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Therefore, we must determine whether the trial court properly denied English's declaratory judgment request and, if not, enter the judgment which should have been entered by the trial court.

Justiciability

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

[1] The trial court granted BGP's request for summary judgment on the basis that the issue is not justiciable until liability has been determined in the 43 Hidalgo County lawsuits. On appeal, English notes that there is little case law regarding the timing of an indemnitor's duty to defend its indemnitee. However, English argues that the trial court's decision was incorrect because, unlike the duty to indemnify, the duty to defend can arise before liability is determined. Specifically, English differentiates between the *duty to defend* and the *duty to indemnify,* and argues that BGP's duty to provide a defense to the 43 Hidalgo County lawsuits arose separate and apart from its duty to indemnify. Furthermore, English analogizes BGP's contractual obligation to defend with that of an insurer's duty to defend its insured under an insurance policy. Drawing that parallel, English argues that the contract imposed upon BGP the duty to pay for or provide a defense to the Hidalgo County lawsuits independent from BGP's duty to indemnify. Otherwise, English contends, BGP's interpretation of the contract would render the word "defend" meaningless.

BGP counters by arguing that a declaratory judgment in favor of English would be an improper advisory opinion. Specifically, BGP contends that the issue of who bears the responsibility of providing a defense to the Hidalgo County lawsuits is an unripe, non-justiciable question until liability is established in those underlying suits. In support of this contention, BGP relies on several cases which strictly limit the justiciability of the right to indemnity.

[2] Generally, when parties include an indemnity provision in a contract, the duty to indemnify includes the duty to pay for all costs and expenses associated with defending suits against the indemnitee. *See, e.g., Fisk Elec. Co. v. Constructor's & Assoc., Inc.,* 888 S.W.2d 813, 815 (Tex.1994) ( "[An] obligation to pay attorney's fees arises out of [a] duty to indemnify."); **\*371***Keystone Equity Mgmt. v. Thoen,* 730 S.W.2d 339, 340 (Tex.App.-Dallas 1987, no writ) ("The ordinary and commonly accepted meaning of the phrase 'indemnify, defend, and save harmless' ... encompasses attorney's fees.... We hold that [the] *contractual promise to* 'defend' ... all suits in connection with the premises' *includes the obligation to pay for the defense of such suits.* ") (emphasis added). However, "absent a duty to indemnify, there is no obligation to pay attorney's fees." *Fisk Elec. Co.,* 888 S.W.2d at 815. BGP relies on this latter principle to assert that because there has been no determination that it must indemnify English, BGP has no responsibility to bear the costs of providing a defense for English. Instead, BGP claims its duty to defend, or pay costs of defense, only arises if and when BGP is determined to owe a duty of indemnification. Therefore, BGP concludes the duty to defend is not a justiciable question until a determination has been made on the issue of liability. However, numerous courts have held that the duty to defend, unlike the duty to indemnify, is, in most situations, a justiciable issue.[FN4]

FN4. *See, e.g., Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 332 (Tex.1968) (holding the question of an insurance company's duty to defend is a justiciable issue); *Nat'l County Mut. Fire Ins. Co. v. Johnson,* 829 S.W.2d 322, 324 (Tex.App.-Austin 1992), *aff'd,* 879 S.W.2d 1 (Tex.1993) ("Whether an insurer has a duty to defend presents a justiciable question suitable for a declaratory judgment action."); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 852 (Tex.App.-Dallas 1987, no writ) ("[T]o the extent a declaratory judgment decides that the insurer owes no duty to defend ... a justiciable controversy was before the trial court."). Moreover, courts readily distinguish the *duty to defend* and the *duty to indemnify* and often find the duty to defend even where there is no finding of liability or duty to indemnify. *See, e.g., Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997) (holding an insurer's duty to defend and duty to indemni-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

fy are distinct and separate duties); *Collier v. Allstate County Mut. Ins. Co.,* 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.) ("In contrast to the duty to defend, the duty to indemnify only arises after an insured has been adjudicated ... to be legally responsible for damages in a lawsuit."); *Reser v. State Farm Fire & Cas. Co.,* 981 S.W.3d 260, 263 (Tex.App.-San Antonio 1998, no pet.) (using similar language and explaining that the duty to defend "is unaffected by facts ascertained before suit, developed in trial, or by the ultimate outcome of the case"); *E & L Chipping Co., Inc. v. Hanover Ins. Co.,* 962 S.W.2d 272, 274–75 (Tex.App.-Beaumont 1998, no pet.) (holding that the duty to defend is broader than the duty to indemnify).

[3] For example, in *Griffin,* the Texas Supreme Court explained that "[a]n insurer's duty to defend and duty indemnify are distinct and separate duties. *Thus, an insurer may have a duty to defend but, eventually, no duty to indemnify.*" 955 S.W.2d at 82 (emphasis added). Providing an example of how these two duties might diverge, the court said "a plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted intentionally and not negligently [i.e., not within the policy's coverage] may negate the insurer's duty to indemnify." *Id.* Therefore, *Griffin* makes it clear that a party's duty to defend may arise even when it is later determined that the party has no duty to indemnify. *See also Reser,* 981 S.W.3d at 263 (noting that the duty to defend is unaffected by the ultimate outcome of the case). Because the duty to defend may be decided in an action for declaratory judgment, the trial court incorrectly determined that English's claim was premature. *See Johnson,* 829 S.W.2d at 324.[FN5] We *372 must next determine whether BGP had a duty to defend and, therefore, whether English's request for declaratory judgment should have been granted.

FN5. BGP also relies on several cases to support its contention that only a *post-trial* recovery of attorney fees would be appropriate. First, BGP cites *Fisk Elec. Co.,* for the proposition that there is no obligation to pay attorney fees or expenses where there is no duty to indemnify. 888 S.W.2d at 814–15. However, as we have previously observed, *Fisk Elec. Co.* is distinguishable from the present case. Next, BGP refers to *Patch v. Amoco Oil Co.* for the proposition that an indemnitee can recover the costs of litigation only after the indemnitee is found "not negligent." 845 F.2d 571, 572 (5th Cir.1988) (citing *Fisher Constr. Co. v. Riggs,* 320 S.W.2d 200 (Tex.Civ.App.-Houston), *rev'd on other grounds,* 160 Tex. 23, 325 S.W.2d 126 (Tex.1959)). However, the contract in *Patch* did not require the indemnitor to separately *defend* any lawsuits brought against its indemnitee. *Id.* Finally, BGP turns to *Keystone Equity,* a case originally cited by appellants, and argues that because the court said attorney fees are necessarily included in the contractual phrase "indemnify, defend, and save harmless," *post-trial* payment of these fees is all that is required of the indemnitor to fully meet its obligations. 730 S.W.2d at 340. However, this argument ignores the critical distinction between the duty to defend and the duty to indemnify. Moreover, nothing in *Keystone Equity* requires an indemnitee to wait until after conclusion of the underlying lawsuits in order to seek a defense from its indemnitor.

### Duty to Defend

[4][5][6] The duty to defend is determined solely by the precise language in the contract and the factual allegations in the pleadings. *Griffin,* 955 S.W.2d at 82; *see also Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 125 (Tex.App.-Houston [1st Dist.] 2003, pet. denied)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

("The duty to defend may be triggered by the pleadings, but the duty to indemnify is based on the jury's findings."). In interpreting the contractual language, our primary concern is to ascertain the true intentions of both parties. *Tenneco Oil Co. v. Gulsby Eng'g, Inc.,* 846 S.W.2d 599, 606 (Tex.App.-Houston [14th Dist.] 1993, writ denied). We must give reasonable effect to the provision and the contract as a whole. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985) (explaining that because parties to a contract intend every clause to have some effect, courts should attempt to provide a reasonable interpretation of the contract); *Keystone Equity Mgmt.,* 730 S.W.2d at 340 (explaining that courts should give words and phrases their ordinary and commonly accepted meaning when determining the parties' intent in an agreement); *Manzo v. Ford,* 731 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1987, no writ) (holding contract language must be construed by determining how a reasonable man would have used and understood such language).

[7][8] In addition, if the underlying pleadings do not allege facts within the scope of the agreement, the indemnitor is not required to defend a suit against its indemnitee. *E & L Chipping Co.,* 962 S.W.2d at 274. In reviewing the pleadings, the court must focus on the facts that show the origin of the damages rather than on the particular legal theories alleged. *Griffin,* 955 S.W.2d at 82; *E & L Chipping Co.,* 962 S.W.2d at 274–75; *Tesoro Petroleum Corp.,* 106 S.W.3d at 125. We do not consider the veracity of the allegations in the underlying pleadings, read facts into the pleadings, or look outside the pleadings for additional facts that could have been pled. *E & L Chipping Co.,* 962 S.W.2d at 275 (citing *Katerndahl v. State Farm Fire and Cas. Co.,* 961 S.W.2d 518, 521 (Tex.App.-San Antonio 1997, no pet.)).[FN6]

> FN6. We recognize that most of the cases addressing this issue, and many of the cases we have cited, involve the duty to defend in the insurance context. However,

we find little reason why the principles regarding an insurer's duty to defend should not apply with equal force to an indemnitor's contractual promise to defend its indemnitee. *See generally Gen. Motors Corp. v. Am. Ecology Envtl. Svcs. Corp.,* No. Civ.A.399CV2625L, 2001 WL 1029519, at *6–8 (N.D.Tex. Aug.30, 2001) (applying the same principles regarding the duty of an insurer to defend in the insurance context to the duty of an indemnitor who has contractually agreed to defend its indemnitee); *Fisk Elec. Co.,* 888 S.W.2d at 815 ("[T]he standard for determining whether a contractual indemnitor has a duty to defend is the same as in cases involving an insurer's duty.").

**\*373** [9] The relevant language in the BGP–English contract explicitly states that "BGP shall protect, indemnify, *defend,* and hold harmless [English] ... [from] any claim or suit, including trespass ... when BGP ... commence[s] field operations without the permit acquisition of 100% of the mineral owners and 100% of the surface owners." (Emphasis added.) Based on our interpretation of this provision, it appears BGP agreed to both *defend* and *indemnify* English in suits arising from BGP's operations when those operations began before 100 percent of the landowners had consented. Giving reasonable effect to every word used in the contract, and understanding the separate and distinct nature of the two duties, we hold that BGP agreed to *defend* English—separate and apart from its duty to indemnify—from suits falling within the terms outlined in the contract. *See Griffin,* 955 S.W.2d at 82; *Tesoro Petroleum Corp.,* 106 S.W.3d at 125; *E & L Chipping Co.,* 962 S.W.2d at 274.

[10] Turning to a review of the pleadings in the 43 underlying lawsuits, the plaintiffs alleged that BGP, English, and their affiliated entities "did seismic testing without first obtaining the permission of landowners, and beyond the boundaries (both temporal and geographic) of the permits." Thus, it ap-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

pears the allegations fall sufficiently within the terms outlined in the contract. However, BGP contends that the only cause which arguably falls under the contract is the plaintiff's trespass action. The pleadings allege causes of action other than trespass. Specifically, the petitions complain of: (1) trespass (either surface or subsurface); (2) negligence in failing to obtain permission to explore; (3) negligence in failing to warn of impending exploration; (4) negligence in failing to carefully explore; (5) negligence per se in exploring without permission; (6) negligence per se in exploring beyond the geographical boundaries of the permits; and (7) negligence per se in exploring beyond the time limits of the permits.

Although the pleadings specifically allege "negligence" and "negligence per se," it appears that these theories of liability stem primarily from the fact that BGP was exploring without the permission of all the landowners. In other words, remove the trespass and all other causes of action are negated. Moreover, "[t]he focus of the inquiry is the facts alleged; legal theories alleged are not determinative of the duty to defend." *Paradigm Ins. Corp. v. Tex. Richmond Corp.,* 942 S.W.2d 645, 649 (Tex.App.-Houston [14th Dist.] 1997, writ denied). Therefore, simply pleading negligence is not sufficient to void BGP's responsibility to provide a defense from suit caused, initially, by its commencement of operations before receiving 100 percent of the landowners' permission.

[11] Assuming arguendo that the pleadings sufficiently allege separate negligence causes of action, that still does not relieve BGP of its duty to defend English in the underlying lawsuits. When some theories of liability fail to give rise to the duty to defend but other theories do, the party should be required to provide a defense. *See Gen. Motors Corp.,* 2001 WL 1029519, at *7 ("Typically, an insurer has a duty to defend, despite theories of liability asserted ... which are not covered under the policy, if there are *any* theories of recovery that fall within ... the policy.") **374** (emphasis in original);

*cf. Fid. & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982) (explaining that when a petition only alleges facts excluded by an insurance policy, the insurer is not required to defend). It is only when no facts sufficiently fall within the agreement that the party is excused from its duty to defend. *McManus,* 633 S.W.2d at 788 (citing *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24–25 (Tex.1965)). Therefore, even assuming the negligence theories are not covered by the contract in this case, the trespass theory undoubtedly falls within the agreement's parameters. Thus, at a minimum, BGP is required to defend the 43 actions for trespass. We see no reason to segregate the claims and require BGP to defend the trespass actions while separately requiring English to defend the remaining causes. Requiring such a separation would do little to promote judicial economy and would likely cause additional, unnecessary expense to the 43 plaintiffs by forcing them to litigate their related claims in separate proceedings.

Neither do we see sufficient justification to permit BGP to escape the effects of its agreed upon contractual obligations. If BGP had no desire or intention to provide a defense for English in suits arising from its exploration activities, it could have left out the word "defend" from the contract. An example of a contract with an indemnity excluding the duty to defend was at issue in *Patch,* 845 F.2d at 572, a case relied on by BGP. In *Patch,* the Fifth Circuit held that it could not decide the purely "academic question" of who owed indemnity until the indemnitee's liability was established. *Id.* This is the exact holding BGP is seeking from this court. However, the critical distinction is that, unlike the BGP–English contract, the contract in *Patch* did not require the indemnitor to "defend" its indemnitee. Here, however, BGP specifically agreed to defend English in suits stemming, at least in part, from BGP's beginning operations before all landowners had consented. Because the pleadings sufficiently fall within this agreement, we hold that BGP is required to defend the 43 underlying Hidalgo County

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

lawsuits.

Express Negligence Doctrine

The only issue remaining for our determination is whether the express negligence doctrine applies, as asserted by BGP, effectively voiding any right English otherwise has to indemnification, including the costs of defense. BGP specifically argues that the contract fails to satisfy the express negligence doctrine because it does not expressly indemnify English from its own negligence. Furthermore, BGP contends that, because the plaintiffs in the underlying lawsuits sued English for negligence, the express negligence doctrine voids any obligation BGP had to indemnify or pay for costs and attorney's fees incurred by English.

[12][13][14][15] The express negligence doctrine requires a party contracting for indemnity from the consequences of its own negligence to clearly express that intent within the four corners of the contract. *Fisk Elec. Co.,* 888 S.W.2d at 814. The doctrine is intended to remove the ambiguity from indemnity provisions and ultimately reduce the need for satellite litigation regarding interpretation of indemnity clauses. *Id.* (citing *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987)). Indemnity provisions that do not unequivocally state the intent of the parties within the four corners of the instrument are unenforceable as a matter of law. *Id.* The express negligence requirement is not an affirmative defense, but a rule of contract interpretation which is determinable*375 as a matter of law. *Id.* Such a determination should not depend on the outcome of the underlying suit, but should be established as a matter of law from the pleadings. *Id.* Therefore, the express negligence test may properly be applied at the summary judgment stage of a trial. *MAN GHH Logistics GMBH v. Emscor, Inc.,* 858 S.W.2d 41, 43 (Tex.App.-Houston [14th Dist.] 1993, no writ).

[16] Applying the doctrine to this case, the contractual provision clearly does not indemnify English from its own negligent acts. In fact, the only reference to negligence in the provision requires BGP to indemnify English from "any claim or suit arising *out of the negligent actions or omissions of BGP,* its subcontractors or employees." (Emphasis added.)

[17] Further, the express negligence doctrine does not apply to non-negligent actions. For example, in *DDD Energy, Inc. v. Veritas DGC Land, Inc.,* this court held that an indemnitee could seek indemnification for claims not based on negligence. 60 S.W.3d 880, 885 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Relying on Texas Supreme Court precedent, we reasoned that because "[s]ome of the claims brought ... are not negligence based claims ... the express negligence component of the fair notice requirements does not apply." *Id.* (citing *Dresser Indus., Inc. v. Page Petroleum Inc.,* 853 S.W.2d 505 (Tex.1993)). We recognize that, in *DDD Energy, Inc.,* the indemnitee was permitted to seek indemnification for the underlying *non-negligence* claims but was simultaneously precluded from indemnification for the negligence. However, the indemnitee appealed only the court's decision on indemnification—not whether the indemnitor was required to step in and *defend* the underlying suits. Accordingly, we did not address the distinction between the duty to defend and the duty to indemnify, and we did not provide an explicit ruling on the indemnitor's duty to step in and defend its indemnitee.

[18] BGP also cites *Fisk Elec. Co.* for the proposition that where an indemnity agreement fails the express negligence test, the indemnitee is precluded from recovering attorney's fees and expenses. *See* 888 S.W.2d at 814. We agree that failure to meet the express negligence test precludes a party from seeking indemnification for its own negligence. However, we do not read *Fisk Elec. Co.* to be so limiting as BGP proposes. First, the *only* cause of action asserted against the indemnitee in *Fisk Elec. Co.* was based exclusively on the indemnitee's negligence. Here, the underlying plaintiffs asserted non-negligence claims that are not governed by the requirements of the express negligence

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

174 S.W.3d 366, 162 Oil & Gas Rep. 954
**(Cite as: 174 S.W.3d 366)**

doctrine. *See DDD Energy, Inc.,* 60 S.W.3d at 885. Moreover, as already explained, even assuming some of the Hidalgo County plaintiffs' claims arise from English's negligence, the additional trespass claims undoubtedly give rise to BGP's obligation to defend English regardless of the express negligence doctrine. *See Griffin,* 955 S.W.2d at 82; *Collier,* 64 S.W.3d at 62; *Reser,* 981 S.W.2d at 263. Thus, we disagree with BGP's assertion that the express negligence doctrine relieves it of its responsibility to pay for or provide a defense to the Hidalgo County lawsuits.

### Conclusion

Because the duty to defend is a separate and distinct obligation that may arise regardless of the duty to indemnify, and because the pleadings in the underlying Hidalgo County lawsuits sufficiently pled facts which obligate BGP to defend English, we find the trial court erred in denying English's request for declaratory judgment. Accordingly, we reverse and render judgment in favor of English and find that **\*376** BGP has a contractual obligation to defend English in the 43 underlying Hidalgo County actions.

Tex.App.–Houston [14 Dist.],2005.
English v. BGP Intern., Inc.
174 S.W.3d 366, 162 Oil & Gas Rep. 954

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.