UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J JUDGE BARBIER |
| This Document Relates to: | * * | MAG. JUDGE SHUSHAN |
| *All Cases* | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE BP TESTIMONY AND ARGUMENTS ON REGARDING BOP REGULATORY COMPLIANCE OR TEMPORARY ABANDONMENT PLAN

Plaintiffs respectfully submit the following memorandum in support of their Motion *in Limine* to Exclude Evidence and Argument Regarding BOP Regulatory Compliance or Temporary Abandonment Plan:

MAY IT PLEASE THE COURT:

After numerous requests from the PSC, meet and confers, an Order from the Magistrate Court, and two 30(b)(6) depositions of corpoate representatives who could not address BOP regulatory compliance, it is respectfully submitted that BP has run out of chances and forfeited any opportunity to argue, admit evidence, or call witnesses at trial for the proposition that BP complied with regulations regarding the blowout preventer (BOP) and its component parts or on its Temporary Abandonment Plan.

I.   BACKGROUND.

   A.   **BOP Regulatory Compliance Issues.**

On March 23, 2011, Plaintiffs issued a Rule 30(b)(6) Deposition Notice of BP Defendants in connection with several topics. *3/23/11 Agreed 30(b)(6) Deposition*

1

*Notice of BP Defendants*, attached as *Exhibit 1*.  Areas of Inquiry included BP's knowledge of BOPs and its associated systems.

In connection with the 30(b)(6), BP designated Mike Byrd to be their corporate representative on BOP issues, specifically on BOP regulatory compliance.  *See The BP Parties' Fourth Amended Responses and Objections to Plaintiffs' Agreed 30(b)(6) Deposition Notice with 30(b)(5) Document Requests*, attached as *Exhibit 2*.  BP presented Mr. Byrd for deposition on July 13, 2011.

At the deposition, Mr. Byrd, when asked what he knew about the regulations regarding BOP regulatory compliance, stated he had no knowledge regarding that subject:

> Q. If I went down and I started going through 30 CFR Chapter 250, which deals with drilling operations, you are not an expert on regulatory compliance?
>
> A. That is correct.
>
> Q. So you're not going to be able to tell me whether – what BP's policies are on regulatory compliance in connection with blowout preventers?
>
> A. No.

*Deposition of Mike Byrd,* at 58 (July 13, 2011), attached as *Exhibit 3*.

When Mr. Byrd was asked if he was prepared to address BOP regulatory compliance, he said he had not prepared to address it.  When Mr. Byrd was asked if he knew what the regulations were regarding BOPs, and how BOPs would be tested, used, installed, maintained, designed in the Gulf of Mexico (GoM) under existing Code of Federal Regulation Guidelines, Mr. Byrd said he did not know any of that information.  *Deposition of Mike Byrd*, at 59-60 (July 13, 2011), attached as *Exhibit 4*.

At that point in time, Mr. Williamson, the attorney taking the deposition on behalf of the PSC, called Magistrate Shushan and asked that BP be required to designate another BOP 30(b)(6) witness.  Magistrate Shushan requested Mr. Williamson to continue the deposition of Mr. Byrd, and said she would take the matter regarding the omitted subjects up in due course.  *Id.*, at 54 -58, attached as *Exhibit 5*.

Thereafter, Magistrate Shushan ordered BP to produce another corporate representative to address BOP regulatory compliance issues.  *7/18/11 Discovery Order*, attached as *Exhibit 6*.  BP agreed to do so.

BP designated Andrew Frazelle, a Wells Operations Manager, as the corporate representative on BOP regulatory compliance.  *Deposition of Andrew Frazelle*, at 78 (September 26, 2011), attached as *Exhibit 7*; *See also 9/20/11 Letter from Langan to Herman re: Frazelle witness designation*, attached as *Exhibit 8*.  On September 26, 2011, Andrew Frazelle was deposed.

Mr. Williamson, again for the PSC, took Mr. Frazelle's deposition on BOP regulatory compliance.  When asked who at BP was required to ensure compliance with 30 CFR 250.416(e), Mr. Frazelle could not answer:

> Q. [I]'m going to talk about 416(e) as in "egg" Okay? You have to give to MMS: "Information that shows the blind-shear rams installed in the BOP stack (both surface and subsea stacks) are capable of shearing the drill pipe in the hole under maximum anticipated surface pressures."  Did I read it correctly?
>
> A. Yes, sir.
>
> Q. Okay.  Who at BP is responsible for making sure that gets done?
>
> A. I cannot answer that on behalf of BP.  I cannot give you a name or a role on that.
>
> Q. Okay.

>    A.     I'm not prepared to answer that.

*Deposition of Andrew Frazelle*, at 155-156, attached as *Exhibit 9*.

Nor could Mr. Frazelle answer the following questions concerning Section BP's regulatory compliance: (1) Has BP designated a person responsible for Section 250.416(e) compliance?; (2) Does BP have a system for insuring regulatory compliance with Section 250.416(e)?; (3) What actions have been taken to insure compliance with Section 250.416(e)?; (4) Why is there nothing in the Application for Permit to Drill on the Macondo well that shows compliance with this particular regulation?; (5) What audit procedure, if any, exists within BP to insure regulatory compliance?; (6) What safety process system, or safety management system, is in place that would apply to Gulf of Mexico regulatory compliance, particularly with regard to this particular issue?; and (7) What supervisory personnel are responsible for insuring compliance by their employees with this particular regulation?  *Id.* at 111-113; 114-115; 121; 155-159, attached as *Exhibit 10*.

**B.     Temporary Abandonment Plan and Procedure.**

The temporary abandonment plan and procedure issue was Topic 7 in the Agreed 30(b)(6) Deposition Notice of BP Defendants.  *See Exhibit 1*.  BP originally designated Dennis Sustala to testify on this topic.  *See Exhibit 2*.

Mr. Sustala's deposition was cancelled because he was unprepared for questions regarding the temporary abandonment procedures and deviations and the parties' disagreement over the scope of Topic 7. See *7/21/11 Letter from Fitch to Langan*, attached as *Exhibit* 11;  *7/27/11 Letter from Langan to Fitch*, attached as *Exhibit* 12; *7/28/11 Letter from Breit to Langan*, attached as *Exhibit* 13.  The lack of preparation of

4

BP witnesses, including Mr. Sustala, was noted in Magistrate Shushan's Discovery Order. *See Exhibit 2*. An Order outlining and clarifying Topic 7 was then issued by Magistrate Shushan. *See 8/9/11 Order Regarding Topic 7 of the Rule 30(b)(6) Notice to BP*, attached as *Exhibit* 14.

BP then designated Mr. Frazelle as the corporate representative for Topic No. 7 which reads:

> The background, basis (or bases), intent, preparation, drafting, submission and approval of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note."

*Deposition of Andrew Frazelle*, at 10, attached as *Exhibit* 15; *see also 9/20/11 Letter from Langan to Herman re: Frazelle witness designation*, attached as *Exhibit 8*.

Mr. Sterbcow, for the PSC, took Mr. Frazelle's deposition relating to temporary abandonment issues on the same day he was questioned on BOP issues by Mr. Williamson. When asked about his preparation and knowledge regarding Macondo's temporary abandonment, it became apparent that Mr. Frazelle could not adequately testify:

> Q. When did you find out that you were going to appear on behalf of BP to address what I'm going to call Topic 7?
>
> A. H'm, approximately two weeks ago.
>
> Q. Prior to two weeks ago, did you have any involvement whatsoever as a BP employee in the Macondo Temporary Abandonment Process?
>
> A. No, sir.
>
> . . .

Q. Prior to reading those Temporary Abandonment Procedures, did you attend any meetings - - not lawyer involved meetings, BP meetings - - where the temporary Abandonment Procedure for Macondo was discussed either before or after April 20, 2010?

A. No, sir.

Q. Have you ever spoken to Brian Morel about the Temporary Abandonment Procedure at Macondo?

A. No, sir.

Q. Have you ever spoken to either of the Well Site Leaders, Mr. Vidrine or Mr. Kaluza, about the Temporary Abandonment Procedures?

A. No, sir.

*Deposition of Andrew Frazelle*, at 10-11, 13–14, attached as *Exhibit* 16.

When asked about the details of John Guide's involvement in the temporary abandonment procedure, Mr. Frazelle was not knowledgeable. *Id.* at 17-18, attached as *Exhibit* 17.

In regards to temporary abandonment procedure changes, particularly with respect to the setting of the lockdown sleeve, Mr. Frazelle, on behalf of BP, could not provide the reasons for the changes. *Deposition of Andrew Frazelle*, at 21, attached as *Exhibit* 18.

Mr. Frazelle could not answer many questions regarding the background of several of the Temporary Abandonment e-mails, particularly an updated Temporary Abandonment Procedure sent by email on April 14th, 2010. *Id.* at 43–44, attached as *Exhibit* 19.

Mr. Frazelle could not even confirm whether or not Brian Morel ever had his Temporary Abandonment plan reviewed. *Id.* at 63, attached as *Exhibit* 20.

Indeed, on multiple occasions, Mr. Frazelle was asked very pointed questions regarding authorship and background of particular documents and was unable to respond to the questions for lack of information :

> Q.  And as you sit here today on behalf of BP, you have no knowledge, have seen no documents as to exactly how this Abandonment Plan was authored, who authored it, or who reviewed it to determine whether or not the Risk Assessment or any changes needed to be made.
>
> Ms. Harding: Object to form.
>
> Q.  (By Mr. Sterbcow) Correct?
>
> A.  Correct.

*Deposition of Andrew Frazelle*, at 65, attached as *Exhibit* 21.

Finally, Mr. Frazelle was not able to communicate an alternative method of running the negative test in tandem with the displacement of seawater as part of the Temporary Abandonment Procedure. *Deposition of Andrew Frazelle*, at 26, attached as *Exhibit* 22.

## II.  BP HAS FAILED ITS LEGAL DUTIES UNDER RULE 30(b)(6).

A party is required to make a good-faith effort to designate knowledgeable representatives.  *Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* 497 F.3d 1135, 1146-47 (10th Cir. 2007) (holding that organization must designate representatives, and cannot use lack of knowledgeable employees as an excuse).  The representatives must testify about the organization's collective knowledge and information.  *FCC v. Mizuho Medy Co. Ltd.,* 257 F.R.D. 679, 681 (S.D. Cal. 2009); *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527-28 (D.Kan. 2006).  If the representatives designated are not knowledgeable about relevant facts, and the party fails to identify an available,

knowledgeable witness, "then the appearance is, for all practical purposes, no appearance at all." *Brazos River Authority* at 433-34 (quoting *Resolution Trust Corp.v. S. Union,* 985 F.2d 196, 197 (5th Cir. 1993)).

Rule 37(b)(2)(A) lists several penalties which may be imposed upon a non-cooperating party, such as BP, that fails to obey a discovery order. For example, the first three orders which may be imposed include:

(i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) Striking pleadings in whole or in part.

Fed. R. Civ. P. Art. 37(b)(2)(A).

A district court possesses considerable discretion to impose sanctions under Rule 37(b). *McLeod, Alexander, Powel & Apffel*, 894 F.2d 1482, 1486 (5th Cir. 1990) (quoting *Sciambra v. Graham News Co.*, 841 F.2d 651, 655 (5th Cir. 1988)); *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

### III.   BP SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF BOP REGULATORY COMPLIANCE AND TEMPORARY ABANDONMENT PLAN.

Because neither of BP's corporate representatives could answer questions concerning BOP regulatory compliance, BP should be precluded from arguing or introducing evidence that it complied with BOP regulations.

Section 250.416(e) specifically requires an operator to tell the MMS that they have verified that their blind shear rams (*i.e.,* the shearing and sealing ram) will secure

the wellbore at Maximum Anticipated Surface Pressure ("MASP"). Mr. Frazelle was unable to answer the following questions concerning Section 250.416(e) and BP's BOP regulatory compliance:

a. Who at BP is responsible for Section 250.416(e) compliance?

b. Has BP designated a person responsible for Section 250.416(e) compliance?

c. Does BP have a system for insuring regulatory compliance with Section 250.416(e)?

d. What actions have been taken to insure compliance with Section 250.416(e)?

e. Why is there nothing in the Application for Permit to Drill on the Macondo well that shows compliance with this particular regulation?

f. What audit procedure, if any, exists within BP to insure regulatory compliance?

g. What safety process system, or safety management system, is in place that would apply to Gulf of Mexico regulatory compliance, particularly with regard to this particular issue?

h. What supervisory personnel are responsible for insuring compliance by their employees with this particular regulation?

*Deposition of Andrew Frazelle*, at 111-113; 114-115; 121; 155-159, attached as *Exhibit 10*.

None of these questions have been answered because BP has presented two witnesses, neither of whom have been prepared to address these issues. The issues go to the very heart of the case. Namely, why did the blind shear ram on the Macondo well fail to seal this well for a period of 88 days? Why didn't BP know that this blind shear ram would fail to secure this well? What preparations, if any, did BP make to insure that the

blind shear rams would be functional at elevated wellbore pressures, such as those that were present on the evening of April 20, 2010?

The same is true of Area of Inquiry No. 7 concerning the temporary abandonment plan and procedure.  The temporary abandonment procedure was the end goal of the Deepwater Horizon's mission at the Macondo well.  The decisions made on the rig and the extensive planning on shore go towards the very causes of the blowout.  This the very essence of well design and well planning.  The April 16, 2010 temporary abandonment procedure represents the culmination of BP's decisions that lead to the blowout.  BP's failure to produce a knowledgeable witness represents an intentional side-step of critical liability issues central to the cause of the blowout, depriving Plaintiffs of the right to determine what actually happened and how it compared to BP's policies, practices, and procedures for creating a temporary abandonment procedure.

Plaintiffs respectfully submit that BP should be barred from presenting or arguing evidence claiming affirmative answers to the above questions.  BP has been given the opportunity on two occasions over a period of several months to produce a witness to testify to these particular subjects and to address BP's corporate position.

The Fifth Circuit has upheld discovery sanctions against a party that possessed documents that plainly identified a witness as having personal knowledge of the subject of the deposition but did not furnish those documents or designate that witness until after it had designated two other witnesses with no personal knowledge.  *See Resolution Trust* 985 F.2d at 197.

**Conclusion**

For the above and foregoing reasons, Plaintiffs' Motion in *Limine* should be granted.

This 5th day of November, 2011.


Respectfully submitted,


| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| **STEPHEN J. HERMAN** (La. Bar #23129) | **JAMES PARKERSON ROY** (La. Bar #11511) |
| **Herman Herman Katz & Cotlar, LLP** | **Domengeaux Wright Roy & Edwards LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, LA 70113 | Lafayette, LA 70501 |
| Office: (504) 581-4892 | Office: (337) 233-3033 |
| Telefax: (504) 569-6024 | Telefax: (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel* | *Plaintiffs' Liaison Counsel* |


**Plaintiffs' Steering Committee**

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS,<br>MITHCELL, ECHSNER & PROCTOR, PA<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgeeenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office: (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN,<br>PORTIS & MILES, P.C.<br>218 Commerce Street, P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail: rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Office: (415) 956-1000 | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029 |

| | |
|---|---|
| Telefax: (415) 956-1008<br>E-Mail: ecabraser@lchb.com<br><br>Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA  70037<br>Office: (504) 394-9000<br>Telefax: (504) 394-9110<br>E-Mail: pcossich@cossichlaw.com<br><br>Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P.O. Box 66705<br>Mobile, AL  36660<br>Office: (251) 471-6191<br>Telefax: (251) 479-1031<br>E-Mail: rtc@cunninghambounds.com<br><br>Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS  39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-mail: mike@mikespy.com<br><br>Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA  70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw.com<br><br>Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL  33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: Ervin@colson.com<br><br>Joseph F. Rice<br>MOTLEY RICE, LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant SC 29465<br>Office: (843) 216-9000<br>Telefax: (843) 216-9450<br>E-Mail: jrice@motleyrice.com | E-Mail: mlundy@lundylawllp.com<br><br>Michael C. Palmintier<br>deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ<br>618 Main Street<br>Baton Rouge, LA  70801-1910<br>Office: (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail: mpalmintier@dphf-law.com<br><br>Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA  70130<br>Office: (504) 588-1500<br>Telefax: (504) 588-1514<br>E-Mail: psterbcow@lksalaw.com<br><br>Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX  75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com<br><br>Mikal C. Watts (PSC)<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX  78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com<br><br>Conrad S.P. "Duke" Williams<br>WILLIAMS LAW GROUP, LLC<br>Maison Grand Caillou<br>435 Corporate Drive, Suite 101<br>Houma, LA  70360<br>Office: (985) 876-7595<br>Telefax: (985) 876-7594<br>E-Mail: duke@williamslawgroup.org |

**CERTIFICATE OF SERVICE**

      WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 5th day of November, 2011.

                                        /s/  James Parkerson Roy and Stephen J. Herman