# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | **SECTION: J** |
| | * | |
| **This Document Relates to:** | * | **JUDGE BARBIER** |
| **All Cases and Cause No. 2:10-CV-02771** | * | |
| | * | **MAGISTRATE NO. 1** |
| | * | |
| | * | **MAGISTRATE SHUSHAN** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

# REPLY MEMORANDUM OF
## MOEX OFFSHORE 2007 LLC IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CROSS-CLAIMS OF HALLIBURTON ENERGY SERVICES INC.

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.      HALLIBURTON'S CROSS-CLAIMS ARE PRECLUDED BY THE COURT'S B1
ORDER ....................................................................................................................... 1

II.     OFFSHORE OWED NO DUTY TO HALLIBURTON ........................................... 3

III.    OFFSHORE'S LACK OF OPERATIONAL CONTROL HAS ALREADY BEEN
DETERMINED BY THE COURT ........................................................................... 5

IV.    HALLIBURTON'S ASSERTION THAT OFFSHORE AUTHORIZED UNSAFE
PRACTICES FAILS TO STATE A VIABLE CLAIM ............................................. 7

V.     OFFSHORE HAS NO LIABILITY FOR NEGLIGENTLY "HIRING" BP AS
OPERATOR ............................................................................................................... 7

VI.    OFFSHORE IS NOT VICARIOUSLY LIABLE AS A JOINT VENTURER .......... 11

VII.   THE B1 ORDER PRECLUDES HALLIBURTON'S CONTRIBUTION CLAIMS
UNDER OPA, WHICH ARE GOVERNED BY PRINCIPLES OF
PROPORTIONATE FAULT ................................................................................... 14

CONCLUSION ................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ainsworth v. Shell Offshore Inc.*,
 829 F.2d 548 (5th Cir. 1987) ..................................................................................3

*Archer v. Bill Pearl Drilling Co., Inc.*,
 655 S.W.2d 338 (Tex.App.1983) ..........................................................................13

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009)............................................................................................9

*Ayco Development Corp. v. G.E.T. Serv. Co.*,
 616 S.W.2d 184 (Tex.1981)..................................................................................13

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................9

*Blocker Exploration Co. v. Frontier Exploration, Inc.*,
 740 P.2d 983 (Colo. 1987)....................................................................................13

*Bolivar v. R & H Oil and Gas Co.*,
 789 F. Supp. 1374 (S.D. Miss. 1991)....................................................................13

*Bourg v. BT Operating Co.*,
 No. H-08-0596, 2009 U.S. Dist. LEXIS 29574 (S.D. Tex. April 8, 2009)...........9

*Cape Flattery Ltd. v. Titan Maritime LLC*,
 607 F. Supp. 2d 1179 (D. Hawaii 2009) ..............................................................14

*Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*,
 67 So.3d 1277 (La. Ct. App. 2011)...................................................................9, 10

*Chaffe McCall, LLP v. World Trade Center of New Orleans*,
 641 F. Supp. 2d 585 (E.D. La. 2009) .....................................................................3

*Evans v. Allstate Insurance Co.*,
 194 So. 2d 762 (La. App. 1967)............................................................................10

*Howard v. Fidelity & Deposit Co. of Maryland (In re Royale Airlines, Inc.)*
 98 F.3d 852 (5th Cir. 1996) ..................................................................................11

*In re: Fun Time Boat Rental & Storage, LLC*,
 431 F. Supp. 2d 993 (D. Ariz. 2006) ......................................................................8

*James v. Nico Energy Corp.*,
    838 F.2d 1365 (5th Cir.1988) ........................................................12

*Joyce v. Joyce*,
    975 F.2d 379 (7th Cir.1992) ...........................................................8

*Key v. Wise*,
    629 F.2d 1049 (5th Cir. 1980) ........................................................5

*Lang v. DirecTV, Inc.*,
    735 F. Supp. 2d 421 (E.D. La. 2010)...........................................13

*Loumar v. Smith*,
    698 F.2d 759 (5th Cir.1983) ...........................................................5

*Marathon Pipeline Co. v. LaRoche Indus., Inc.*,
    944 F. Supp. 476 (E.D. La. 1996)..................................................14

*Perkins v. Gregory Manufacturing Co.*,
    671 So. 2d 1036 (La. App. 1996).....................................................10

*Posavina Shipping co. v. Alex C Corp.*,
    2010 WL 4292328 (D. Mass. Nov. 1, 2010) ...................................14

*Shell Oil Co. v. Prestidge*,
    249 F.2d 413 (9th Cir. 1957) .........................................................13

*Smolnikar v. Royal Caribbean Cruises Ltd.*,
    787 F. Supp. 2d 1308 (S.D. Fla. 2011) ............................................9

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ..........................................................3

*Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge or Vessel Mr. Charlie*,
    294 F. Supp. 1025 (E.D. La. 1968)...........................................12, 13

*United States v. U.S. Smelting, Refining & Mining Co.*,
    339 U.S. 186 (1950)........................................................................5

*United States v. Mendez*,
    102 F.3d 126 (5th Cir. 1996) ..........................................................5

*United States v. Reliable Transfer Co.*,
    421 U.S. 397 (1975).......................................................................15

## RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6)...................................................................................................................1

MOEX Offshore 2007 LLC ("Offshore") respectfully submits this reply memorandum in further support of its motion to dismiss the cross-claims of defendant Halliburton Energy Services, Inc. ("Halliburton") pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.[1]

## INTRODUCTION

Halliburton's Response in Opposition to Offshore's Motion to Dismiss its First Amended Cross-Claims (Dkt. #4310; "Opp.") consists almost entirely of arguments that this Court already rejected in its August 26, 2011 Order and Reasons as to Motions to Dismiss the B1 Master Complaint (Dkt. # 3830) ("B1 Order").

While Halliburton urges that the Court erred in ruling that the Non-Operating Defendants, including Offshore, could not be held liable for maritime negligence, it offers no compelling reasons for the Court to reconsider, much less reverse, the B1 Order. The additional arguments now offered by Halliburton to avoid dismissal of its cross-claims are implausible and, particularly in light of the Court's previous findings, fail to state claims upon which relief may be granted.

As set forth below, each of Halliburton's arguments should be rejected and its cross-claims against Offshore dismissed.

## I.     HALLIBURTON'S CROSS-CLAIMS ARE PRECLUDED BY THE COURT'S B1 ORDER

After Offshore's motion to dismiss was filed, the Court issued its B1 Order on August 26, 2011. In that decision, the Court held that "BP was solely responsible for the drilling operations" under the Operating Agreement, and also that any access to information Offshore "may have had did not give rise to a duty to intercede in an

---

[1]  Unless otherwise noted, the abbreviations and citation forms adopted in Offshore's Opening Memorandum (Dkt. #2882-1) are continued herein.

independent contractor's operations," especially since there was no allegation that Offshore had access to any information not already available to BP and Transocean personnel either onshore or on the rig.  B1 Order at 28.

Thus, the Court ruled that Offshore lacked operational control over BP's activities with respect to the Macondo Well.  *Id.*  Discussing plaintiffs' "attempt to avoid dismissal by suggesting that they do not argue for vicarious liability of the Non-Operating Defendants, but rather that Anadarko and MOEX were directly negligent," the Court further concluded that "adding a 'direct-duty' label to their claims does not add merit to them."  *Id.* at 28-29.  Accordingly, the Court ruled that there can be no "plausible general maritime negligence claim" against Offshore (*id.* at 29), and held that "[a]ll general maritime negligence claims against … MOEX are dismissed, as Plaintiffs have failed to state a plausible claim against the Non-Operating lessees/Defendants" (*id.* at 39).

The Court confirmed the result in the B1 Order a month later, when it dismissed the B3 Bundle Master Complaint's claims against Offshore for the same reasons. *See* Sept. 30, 2011 Order and Reasons as to Motions to Dismiss the B3 Master Complaint (Dkt #4159) ("B3 Order") at 6.

The B1 Order and B3 Orders are fatal to Halliburton's Cross-Claims against Offshore.  The ruling that Offshore was not negligent precludes Halliburton's negligence cross-claim.  Further, the determination that Offshore lacked operational control over BP's activities in connection with the Macondo Well forecloses Halliburton's cross-claims for contribution and indemnity under general maritime law.  Halliburton, in fact, concedes that the "likely effect" of the B1 Order is the dismissal of its Cross-Claims against Offshore.  Opp. at 3 n.4; *see also* Opp. at 19 n.18 (acknowledging that the Court's

B1 Order will likely "prevent [Halliburton] from succeeding on its indemnity and contribution cross-claims").

As set forth more fully below, the B1 and B3 Orders support the arguments advanced by Offshore in its opening memorandum and establish that Halliburton's Cross-Claims against Offshore must be dismissed.  Further, Halliburton's request to amend its Cross-Claims should be denied because any such amendment would be futile in light of the B1 and B3 Orders.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 576 n.8 (5th Cir. 2005) (noting that a court may deny leave to amend due to "futility of the amendment"); *see also Lang v. DirecTV, Inc.,* 735 F. Supp. 2d 421, 430 (E.D. La. 2010) ("it is within the court's discretion to deny a motion to amend if it is futile"); *see, e.g., Chaffe McCall, LLP v. World Trade Center of New Orleans*, 641 F. Supp. 2d 585, 596-97 (E.D. La. 2009) (Barbier, J.) (denying motion for leave to amend as futile).

## II.     OFFSHORE OWED NO DUTY TO HALLIBURTON

In attempting to overcome the B1 and B3 Orders, Halliburton first seeks to salvage its Cross-Claims by arguing that Offshore owed a duty of care to Halliburton and others.  Opp. at 7-8.  To establish such a purported duty, Halliburton begins by arguing that *Ainsworth v. Shell Offshore Inc.*, 829 F.2d 548 (5th Cir. 1987) and similar cases do not apply to "the circumstances at issue here."  Opp. at 6-7.

As Halliburton acknowledges (Opp. at 2 n.3), however, Offshore is not alone in applying *Ainsworth* to this case.  This Court itself followed *Ainsworth* when dismissing the B1 Complaint's negligence claims against Offshore.  *See* B1 Order at 28.

Halliburton asserts that Offshore's duty arose from having "access to information" regarding the drilling operations at the Macondo Well.  Opp. at 7-8.  The B1

Order considered and squarely rejected that argument: "Any access to information that … MOEX may have had did not give rise to a duty to intercede in an independent contractor's operations—especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and Transocean personnel either onshore or on the rig."  B1 Order at 28.  Although Halliburton says it "respectfully disputes" that conclusion (Opp. at 19 n.18), Halliburton tellingly fails to identify any allegation that Offshore had access to information that was not already available to BP and Transocean.

Further, Halliburton's own expert on well design, control, drilling, and monitoring has opined that BP and Transocean "were the only parties with access to all operational and kick detection information"; that "the rapidity with which the blowout occurred offered little opportunity for crews to assess and respond to the changing well conditions"; and that, "[a]s the owner and operator, BP was the only party fully aware of the flow potential of the subsurface hydrocarbon bearing formations."  *See* Expert Report of Dr. Frederick "Gene" Beck at 16.[2]

Having already decided in the B1 and B3 Orders that Offshore owed no duties as a non-operating, minority investor, this Court should apply the "law of the case" doctrine and reach the same conclusion here.  The law of the case doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."  *United States v. U.S. Smelting, Refining & Mining Co.*, 339 U.S. 186, 198 (1950); *accord United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) ("The

---

[2]  Among other things, the opinion of Halliburton's expert renders wholly implausible the assertion that Offshore – which, as this Court recognized, "had no personnel present aboard the DEEPWATER HORIZON" (B1 Order at 28) – may be held liable because it "failed to warn the drilling vessel crew of the imminent blowout" (Opp. at 6).

doctrine of the law of the case 'expresses the practice of courts generally to refuse to reopen what has been decided'" and "creates a strong presumption of finality within the case"); *Key v. Wise*, 629 F.2d 1049, 1054 (5th Cir. 1980) (noting that the law of the case rule is "predicated on the premise that ... it would be impossible for a ... court 'to perform its duties satisfactorily and efficiently' and expeditiously 'if a question, once considered and decided by it were to be litigated anew in the same case'").

Thus, a court "will follow a ruling previously made unless the prior ruling was erroneous, is no longer sound, or would work an injustice." *Loumar v. Smith*, 698 F.2d 759, 762 (5th Cir.1983). None of those limited exceptions applies here. The Court's ruling that "access to information" did not create a tort duty for non-operating investors was correct when issued as to the B1 Bundle; it was subsequently reaffirmed by the Court in the B3 Order; and it is eminently just because it does not impose on pure investors undefined, unreasonable and unmanageable duties to interfere with their independent contractors' operations. Consequently, the Court should dismiss Halliburton's Cross-Claims against Offshore for maritime negligence, contribution and indemnity because Offshore had no duty to Halliburton.

## III. OFFSHORE'S LACK OF OPERATIONAL CONTROL HAS ALREADY BEEN DETERMINED BY THE COURT

Halliburton next urges that the issue of operational control cannot be decided on the pleadings. Opp. at 9-12. Yet, Halliburton's own Cross-Claims conclusively demonstrate that Offshore lacked the requisite operational control, because they allege expressly that BP was the "sole Operator at the Macondo Well." Halliburton's First Amended Cross-Claims ("Cross-Claims"), Dkt. 445 at ¶43. The Cross-Claims further allege that "BP controlled most, if not all, of the actions of BP's sub-contractors"; that

"BP decided on the well design [and] decided when to conduct rig activities"; and that

"BP decided what products and services to use, and whether to accept or reject its

contractors recommendations regarding those products and services."  Cross-Claims, Dkt.

#445 in Case 10-2771 at ¶43.

Consequently, the Court correctly perceived – at the pleading stage[3] – that

Offshore lacked operational control over the Macondo Well.  B1 Order at 28.

The Operating Agreement itself, which is properly before the Court (*see* Dkt

#2882-1 at 12 n.7), confirms the point.  It expressly designated BP Exploration &

Production Inc. as "the Operator"; it stated that, except as otherwise provided, "the

Operator has the exclusive right and duty to conduct (or cause to be conducted) all

activities or operations under this Agreement"; it provided that, with exceptions not

relevant here, "[i]n performing services under this Agreement for the Non-Operating

Parties, the Operator is an independent contractor, not subject to the control or direction

of Non-Operating Parties"; and it established that "[t]he Operator is not the agent or

fiduciary of the Non-Operating Parties."  Dkt. #1414-2, Operating Agreement Arts. 4.1,

5.1.

The Court, therefore, should apply the law of the case established in the B1 and

B3 Orders and dismiss Halliburton's cross-claims for contribution and indemnity against

Offshore because Offshore lacked operational control.

---

3   *Compare* Opp. at 9 (stating that MOEX had not "cite[d] any authority for the proposition that
determinations regarding operational control can be made at the pleading stage, based strictly on the
JOA and the parties' pleadings").

**IV.  HALLIBURTON'S ASSERTION THAT OFFSHORE AUTHORIZED UNSAFE PRACTICES FAILS TO STATE A VIABLE CLAIM**

According to Halliburton, this Court should disregard the general rule that a party is not liable for an independent contractor's activities because Offshore allegedly authorized unsafe practices by BP.  Opp. at 12.  The purported basis for this allegation is that unspecified unsafe practices at the Macondo Well were "impliedly authorized" by Offshore because of its "access to information" about the well.  *Id.* at 13.

Again, Halliburton attempts to reargue an issue that this Court has already decided.  In the B1 Order, the Court specifically considered the information to which Offshore had access and deemed it insufficient to establish liability for negligence: "[a]ny access to information that … MOEX may have had did not give rise to a duty to intercede in an independent contractor's operations."  B1 Order at 28.  Halliburton offers no new factual or legal arguments to justify departing from the B1 Order on this point.

**V.  OFFSHORE HAS NO LIABILITY FOR NEGLIGENTLY "HIRING" BP AS OPERATOR**

Seeking to circumvent this Court's finding that Offshore cannot be held liable in tort for BP's actions as Operator and independent contractor, Halliburton contends that Offshore was guilty of "negligent hiring" in "selecting" BP as the Operator of the Macondo Well.  *See* Opp. at 13-14.  Halliburton's Cross-Claims fail to state a claim on that theory because (1) Halliburton has failed to plead a plausible claim under the applicable federal pleading standard; and (2) Halliburton cannot, as a matter of law, establish a claim for negligent hiring or entrustment against Offshore.

As Halliburton acknowledges, "[t]o state a negligent hiring claim under maritime law, the plaintiff must establish that the employer either failed to exercise reasonable care

in the selection of the contractor or had actual or constructive knowledge of the contractor's insufficiency."  Opp. at 13-14 (citation omitted).[4]

Halliburton's Cross-Claims, however, contain nothing more than a single conclusory allegation on this subject:  "Alternatively, the Non-Operating Cross-Defendants were negligent, grossly negligent and/or acted with willful misconduct by entrusting BP to make decisions relative to the Lease and to the DEEPWATER HORIZON'S drilling operations."  Cross-Claims, Dkt. #445 at ¶50.  The Cross-Claims contain no factual allegation that (1) Offshore failed to exercise reasonable care in its "selection" of BP as Operator of the *Deepwater Horizon*, or (2) that Offshore had actual or constructive knowledge that would make the designation as Operator improper.

Nor does Halliburton allege any facts showing that, given Offshore's acknowledged 10% minority interest in the project versus BP's 65% controlling interest, Offshore could be said to have "hired" BP as the Operator in the first place, or that Offshore had the unilateral power to "hire" a different Operator.  As Halliburton has affirmatively pleaded, BP was the "primary owner of the Lease," while Offshore was a 10% minority investor in the project.  Cross-Claims at ¶¶13, 43.  Because Halliburton has failed to plead "sufficient factual matter, accepted as true, [that would] 'state a claim to relief that is plausible on its face[,]'" its cross-claims for contribution and indemnity

---

[4]   The common-law tort of negligent entrustment, while applicable in the maritime context, is more commonly applied in the context of entrustment of property, rather than operational duties such as those at issue here.  Similar to a claim for negligent hiring, a claim of negligent entrustment requires an allegation that the property owner knew or should have known that the party to whom the property was entrusted "was likely to use it in a dangerous manner."  *See, e.g., In re: Fun Time Boat Rental & Storage, LLC,* 431 F.Supp.2d 993, 1001 (D. Ariz. 2006) ("While maritime law recognizes the tort of negligent entrustment, such a tort requires that the boat owner knew or should have known that the person to whom the boat was entrusted was likely to use it in a dangerous manner"); *see also Joyce v. Joyce,* 975 F.2d 379, 385 (7th Cir.1992) ("[T]he essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the vessel safely.").

based upon negligent hiring must be dismissed.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); B1 Order at 3;

B3 Order at 4-5.

Even if Halliburton had sufficiently pleaded a claim for negligent hiring or

entrustment, such a claim cannot be maintained because it fails to state a plausible claim

for relief.  *See Iqbal*, 129 S. Ct. at 1950 ("[O]nly a complaint that states a plausible claim

for relief survives a motion to dismiss."); *Twombly*, 550 U.S. at 570 (2007).

To establish liability for negligently hiring an independent contractor, the

claimant must show that the principal "knew or should have known that [the contractor]

was irresponsible."  *Bourg v. BT Operating Co.*, No. H-08-0596, 2009 U.S. Dist. Lexis

29574, *30 (S.D. Tex. April 8, 2009) (applying Louisiana law); *accord Smolnikar v.

Royal Caribbean Cruises Ltd.,* 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) ("a plaintiff

bringing a claim for negligent hiring or retention of an independent contractor must prove

that '(1) the contractor was incompetent or unfit to perform the work; (2) the employer

knew or reasonably should have known of the particular incompetence or unfitness; and

(3) the incompetence or unfitness was a proximate cause of the plaintiff's injury'")

(internal citation omitted).  The principal must have that knowledge at the time of hiring.

*See, e.g.*, *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 67 So. 3d 1277,

1282-83 (La. Ct. App. 5th Cir. 2011) ("[T]o determine whether a principal is negligent

for hiring an irresponsible independent contractor, the court must consider the principal's

knowledge at the time of the hiring."); *see also Bourg*, 2009 U.S. Dist. Lexis 29574 at

*30 (to be held liable for negligent hiring, principal would have to know "*before* it hired"

the contractor that the contractor would be irresponsible) (emphasis in original).

The required foreknowledge may not be implied merely because some factual issues might be raised as to the contractor's relative quality, particularly where there is evidence that the contractor had the necessary skills to complete the task at hand.  *See, e.g.*, *Certified Cleaning & Restoration*, 67 So. 3d at 1284 (where contractor had a track record of successfully completing the task in question, mere fact that independent contractor did not possess a contractor's license at the time of the incident not sufficient, in and of itself, to find principals independently negligent in hiring the contractor); *Perkins v. Gregory Mfg. Co.*, 671 So.2d 1036, 1040 (La. App. 1996) (principal found not negligent, despite failing to investigate the trucking company's safety procedures and training, where principal had contracted with the company before with good results); *Evans v. Allstate Ins. Co.*, 194 So. 2d 762, 767 (La. App. 1967) (fact that principal hired 16-year-old to drive a vehicle as an independent contractor insufficient to establish that contractor was inherently "irresponsible" where contractor held a valid driver's license).

Here, Halliburton argues that Offshore was negligent in selecting BP as Operator in light of BP's supposedly "notorious" safety record.  Opp. at 14.  Yet, the Cross-Claims contain no allegation of violations by BP or Offshore's knowledge of any such violations.  To the contrary, on the record before the Court, Halliburton cannot plausibly allege that BP was incapable of safely performing the task of drilling an offshore well.

*First,* the U.S. Department of the Interior, Minerals Management Service ("MMS") leased the Macondo site to BPXP[5] and approved the designation of BPXP as Operator for the project.[6]

---

[5]  *See* Dkt. #1797-2 (copy of Lease).

[6]  *See* Dkt. #2927-5 (Designation of Operator).

*Second,* BP was one of the most experienced operators in the Gulf of Mexico; the public record establishes that BP was a finalist for a BOEMRE safety award as a "High Activity Operator" in 2009,[7] and was again named as a finalist in 2010.[8]

*Third*, Halliburton itself agreed to act as BP's cement contractor on the Macondo Well project and its own expert states that, in performing cementing services, Halliburton relied extensively upon information provided by BP.  *See* Expert Report of David Bolado at 8-12, 18-23, 30-33.  And, Halliburton was in at least as good a position as Offshore to assess BP's safety record and competence before participating in the Macondo Well project.  Surely, Halliburton would not have agreed to work shoulder to shoulder with BP on the Macondo Well if it believed that BP had a "notorious" safety record or that it was incapable of safely drilling the well.  Indeed, if BP had a "notorious" safety record, then Halliburton was negligent in contracting to work with BP as Operator, relying on BP's information, and performing cement work on the Macondo Well being drilled by BP. Under such circumstances, even if Offshore were found to be negligent in investing in a well to be drilled by BP (which it was not), Halliburton would be barred from seeking contribution by the doctrine of *in pari delicto*.[9]

## VI.    OFFSHORE IS NOT VICARIOUSLY LIABLE AS A JOINT VENTURER

Despite Halliburton's argument to this effect (Opp. at 15-16), the Cross-Claims nowhere allege that Offshore is vicariously liable as a joint venture partner with BP. Indeed, Halliburton's legal definition of a joint venture – "two or more parties combining

---

[7]    *See* http://www.boemre.gov/awards/2009/HighActivityOperators.htm.

[8]    *See* http://news.blogs.cnn.com/2010/04/30/in-ironic-twist-bp-finalist-for-pollution-prevention-award.

[9]    Under the doctrine of *in pari delicto*, a claimant's recovery is barred by his own wrongful conduct where the plaintiff has participated in "the same sort of wrongdoing" as alleged against the defendant.  *See Howard v. Fidelity & Deposit Co. of Maryland (In re Royale Airlines, Inc.)*, 98 F.3d 852, 856 (5th Cir. 1996).

their property, labor, skill, etc. in the conduct of a venture for joint profit, with each having some right of control" (Opp. at 15; citation omitted) – on its face excludes Offshore's contractual relationship with BPXP.  The Cross-Claims contain no allegation that Offshore contributed property, labor or skill to the Macondo Project; rather, Offshore was a pure investor.  Nor, as the Court has previously concluded, did Offshore have a right of control over BPXP.  *See* B1 Order at 28-29.

Even if Halliburton had made such allegations in its pleading or were permitted to replead and add them, the Operating Agreement and the relevant caselaw demonstrate that Offshore and BP were not joint venturers.

*First,* the Operating Agreement states specifically that "nothing in this Agreement shall be construed to create a partnership, joint venture, association, or other form of business entity recognizable in law for any purpose."  Dkt. #1414-2, Operating Agreement Art. 22.1.  The Operating Agreement further establishes that BP is an "independent contractor, not subject to the control or direction" of Offshore, and is not Offshore's "agent or fiduciary."  *Id.* Art. 5.1.  Moreover, the Operating Agreement states that it "contains the final and entire agreement of the Parties for the matters covered by this Agreement" (*id.*, Art. 26.5.5), making the parties' agreement *not* to conduct a joint venture the last contractual word.

*Second,* a joint venture, and thus vicarious liability, cannot be found in the absence of a right to control operations.  *See, e.g.*, *James v. Nico Energy Corp.*, 838 F.2d 1365, 1373 (5th Cir.1988) (finding no joint venture where one party's involvement in oil wells was limited to investment of capital and another party had sole right of control in drilling and operating of wells); *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge*

*or Vessel Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (holding that non-operating partners could not be found vicariously liable for operator's negligence), *aff'd in relevant part and rev'd in part on other grounds*, 424 F.2d 684 (5th Cir. 1970); *Bolivar v. R & H Oil and Gas Co.*, 789 F. Supp. 1374, 1381–82 (S.D. Miss. 1991) (finding that non-operating investor had no right to control oil and gas operations and could not be held vicariously liable as joint venturer; noting that "the legion of authorities from major oil producing states which have addressed the issue are in accord."); *Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983, 988 (Colo. 1987) (finding no joint venture where nonoperating partner merely invested funds and enjoyed right to receive data, to elect whether to continue participation and to have access to the site)*; Archer v. Bill Pearl Drilling Co., Inc.,* 655 S.W.2d 338, 344 (Tex.App.1983) (finding no joint venture where part-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex.1981) (finding no joint venture where defendants invested by paying costs of drilling well but did not participate in actual drilling, operation and control of the well).

Despite attempts to distinguish *Transcontinental Gas Pipeline* and *Bolivar* based on immaterial factual variations (*see* Opp. at 16 n.15), Halliburton fails to overcome the firmly established requirement of operational control before vicarious liability is imposed on a joint venture theory.  The 54-year-old, out-of-Circuit case on which Halliburton relies, *Shell Oil Co. v. Prestidge*, 249 F.2d 413 (9th Cir. 1957), is completely inapplicable to the situation here.  In *Prestidge*, observing that "mutual control over the subject matter of the enterprise" was a necessary element of a joint venture (*id.* at 415), the court found

that the defendant Shell was a joint venturer because it had a contractual right to "determin[e] when drilling of the test well should be discontinued," and "did in fact exercise control over the actual drilling" (*id.* at 416-17).  The Cross-Claims make no such allegations regarding Offshore and the Macondo Well, nor could they.

This Court has already determined that Offshore did not retain or exercise operational control.  B1 Order at 28.  Halliburton has acknowledged as much.  *See* Opp. at 19 n.18.  Thus, no joint venture may be plausibly alleged, and Halliburton's cross-claims for contribution and indemnity based on vicarious liability must be dismissed.

## VII.   THE B1 ORDER PRECLUDES HALLIBURTON'S CONTRIBUTION CLAIMS UNDER OPA, WHICH ARE GOVERNED BY PRINCIPLES OF PROPORTIONATE FAULT

The Court should reject Halliburton's argument that, notwithstanding the B1 Order, it should be permitted to maintain a claim for contribution under OPA (*see* Opp. at 18-19).  OPA authorizes contribution claims against other parties liable under OPA or liable "under another law." See 33 U.S.C. §2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.").  Beyond identifying who may be sued, however, Section 2709 is not specific as to how liability should be apportioned among responsible and potentially responsible parties in contribution actions.

Courts addressing the issue have concluded that in an OPA contribution action, liability must be allocated in proportion to the parties' percentage of fault.  *See Posavina Shipping Co. v. Alex C Corp.*, 2010 WL 4292328, at *15 (D. Mass.) (allocating damages in an OPA contribution case in proportion to fault); *see also Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Hawaii 2009) (suggesting OPA

contribution claims would be calculated by proportion of fault); *Marathon Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (same).  A leading treatise on maritime law likewise concludes that, "under OPA . . the responsible party . . . will be able to recover over against third parties . . . through contribution according to principles of comparative fault." Schoenbaum, Admiralty and Maritime Law § 18-2 n.26 (2004).

As these courts and scholars have recognized, OPA incorporates the rule that "principles of comparative fault" are used in allocating damages in maritime cases. Schoenbaum, supra § 5-18. It was well-understood at the time that Congress adopted OPA that, in any maritime contribution case, liability would be allocated in proportion to degree of fault. *See U.S. v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) (recognizing that comparative liability must be basis for allocating damages in maritime cases). Congress expressly adopted this background rule, providing in OPA that "Except as otherwise provided in this Act, [OPA] does not affect . . . admiralty or maritime law…." 33 U.S.C. § 2751.

This Court has already held that general maritime law governs this case, and that maritime law fills gaps in the statutory regime where OPA is silent. *See* B1 Order at 26 (holding that because OPA is silent with respect to claims against non-responsible parties, maritime law provides a remedy). Accordingly, like other courts addressing this issue, this Court should fill OPA's silence with respect to apportionment of liability among defendants with the established maritime law rule of comparative fault.

When the Court uses proportionate fault principles to determine liability for OPA contribution claims, the Cross-Claims for contribution under OPA must necessarily fail

against Offshore in light of the Court's holding in the B1 Order that Offshore, as a non-operating party, had no operational control or negligence liability.  Because it cannot plausibly be shown that Offshore was at fault, any OPA contribution claims against it should be dismissed with prejudice.

## CONCLUSION

For the reasons stated herein and in Offshore's Opening Memorandum, Halliburton's Cross-Claims against MOEX Offshore 2007 LLC should be dismissed in their entirety.

Dated:  November 7, 2011

Respectfully submitted,

s/  John F. Pritchard

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 7, 2011.

s/ John F. Pritchard
John F. Pritchard