## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | |
| | * | SECTION: J |
| | * | |
| This Document Relates to: | * | |
| Case No. 10-CV-2771 | * | JUDGE BARBIER |
| | * | MAGISTRATE JUDGE SHUSHAN |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

## REPLY MEMORANDUM IN SUPPORT OF MOEX OFFSHORE 2007 LLC'S MOTION TO DISMISS TRANSOCEAN'S FIRST AMENDED RULE 13 CROSS-CLAIMS/COUNTER-CLAIMS AND THIRD-PARTY COMPLAINT

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

I.   THE COURT'S B1 ORDER PRECLUDES TRANSOCEAN'S CLAIMS
     FOR NEGLIGENCE, CONTRIBUTION AND INDEMNITY UNDER
     MARITIME LAW ................................................................................................. 2

II.  THE B1 ORDER PRECLUDES TRANSOCEAN'S CONTRIBUTION
     CLAIMS UNDER OPA, WHICH ARE GOVERNED BY PRINCIPLES
     OF PROPORTIONATE FAULT ........................................................................... 4

III. TRANSOCEAN CANNOT STATE A PLAUSIBLE CLAIM FOR
     SUBROGATION .................................................................................................... 6

CONCLUSION ............................................................................................................. 7

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)............................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................6

*Cape Flattery Ltd. v. Titan Maritime LLC*,
    607 F. Supp. 2d 1179 (D. Hawaii 2009) ...............................................................5

*Key v. Wise*,
    629 F.2d 1049 (5th Cir. 1980) ...............................................................................3

*Loumar v. Smith*,
    698 F.2d 759 (5th Cir.1983) ..................................................................................3

*Marathon Pipeline Co. v. LaRoche Industries Inc.*,
    944 F. Supp. 476 (E.D. La. 1996).........................................................................5

*Posavina Shipping Co. v. Alex C Corp.*,
    2010 WL. 4292328 (D. Mass. Nov. 1, 2010) .......................................................4

*U.S. v. Reliable Transfer Co.*,
    421 U.S. 397 (1975)...............................................................................................5

*United States v. Mendez*,
    102 F.3d 126 (5th Cir. 1996) .................................................................................3

*United States v. U.S. Smelting, Refining & Mining Co.*,
    339 U.S. 186 (1950)...............................................................................................3

### STATUTES AND RULES

33 U.S.C. §2709.................................................................................................................4

33 U.S.C. § 2751................................................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

### OTHER

Schoenbaum, Admiralty and Maritime Law (2004)...........................................................5

MOEX Offshore 2007 LLC ("Offshore") respectfully submits this reply memorandum in further support of its motion to dismiss Transocean's cross-claims and third-party claims against Offshore (Dkt #2068, 2574; "Cross-Claims") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.[1]

## INTRODUCTION

Referring to the Court's August 26, 2011 Order,[2] Transocean acknowledges in its Opposition Memorandum[3] that "the Court's B1 Order dismissed the fault-based claims against … MOEX." Opp. at 3 n.7. Transocean further acknowledges that the plaintiffs' allegations from the B1 Bundle Master Complaint were "incorporate[d] into [Transocean's] own cross-claims and third-party complaints." *Id.*

The result is that, as the Court held with respect to the B1 Master Complaint, the Cross-Claims asserted by Transocean fail to state a claim against Offshore under maritime law. As set forth more fully below, (1) the B1 Order precludes Transocean's cross-claims for negligence, indemnity and contribution under general maritime law; (2) Transocean's claim for contribution under OPA is likewise barred because it would also be fault-based; and (3) Transocean cannot plausibly state a claim for subrogation because it cannot establish any fault on Offshore's part, and also because Transocean has not received any claims that would be the subject of subrogation. Transocean's Cross-Claims against Offshore accordingly must be dismissed.

---

[1]  Unless otherwise noted, the abbreviations and citation forms adopted in Offshore's Opening Memorandum (Dkt. #2873-1) are continued herein.

[2]  Order and reasons As to Motions to Dismiss the B1 Master Complaint (Dkt. # 3830; "B1 Order").

[3]  Response in Opposition to Offshore's Motion to Dismiss Transocean's Cross-Claims and Third-Party Complaint (Dkt. 4273; "Opp.").

I.   **THE COURT'S B1 ORDER PRECLUDES TRANSOCEAN'S CLAIMS FOR NEGLIGENCE, CONTRIBUTION AND INDEMNITY UNDER MARITIME LAW**

After Offshore's motion to dismiss was filed, the Court issued its B1 Order on August 26, 2011. In that decision, the Court held that under the Operating Agreement, "BP was solely responsible for the drilling operations." B1 Order at 28. The Court further held that "[a]ny access to information that … [Offshore] may have had did not give rise to a duty to intercede in an independent contractor's operations," especially since there was no allegation that Offshore had access to any information not already available to BP and Transocean personnel either onshore or on the rig. B1 Order at 28.

Thus, the Court ruled that Offshore lacked operational control over BP's activities with respect to the Macondo Well. *Id.* Discussing plaintiffs' "attempt to avoid dismissal" by suggesting that Offshore was "directly negligent," the Court further concluded that "adding a 'direct-duty' label to their claims does not add merit to them." *Id.* at 28-29. Accordingly, the Court ruled that there can be no "plausible general maritime negligence claim" against Offshore (*id.* at 29), and held that "[a]ll general maritime negligence claims against … [Offshore] are dismissed, as Plaintiffs have failed to state a plausible claim against the Non-Operating lessees/Defendants" (*id.* at 39).

The Court confirmed that result a month later by dismissing the B3 Bundle Master Complaint's claims against Offshore in their entirety. *See* Sept. 30, 2011 Order on Motions to Dismiss the B3 Master Complaint (Dkt #4159) ("B3 Order") at 6.

The determinations in the B1 Order that Offshore owed no duty, lacked operational control over BP's activities in connection with the Macondo Well, and cannot be held liable for negligence are fatal to Transocean's cross-claims for negligence, indemnity and contribution under maritime law. That is especially true because, rather than stating separate claims against

Offshore, Transocean's Cross-Claims simply incorporated the plaintiffs' allegations by reference.  *See* Cross-Claims, Dkt. #2574 ¶36, Dkt. #2068 ¶56.  Having already decided in the B1 Order that the maritime law negligence claims against Offshore must be dismissed, this Court should apply the "law of the case doctrine" and reach the same conclusion here with regard to Trancoean's cross-claims for negligence and maritime indemnity and contribution against Offshore.

The authority given to "law of the case" is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."  *United States v. U.S. Smelting, Refining & Mining Co.*, 339 U.S. 186, 198 (1950); *see also United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) ("The doctrine of the law of the case 'expresses the practice of courts generally to refuse to reopen what has been decided'" and "creates a strong presumption of finality within the case"); *Key v. Wise*, 629 F.2d 1049, 1054 (5th Cir. 1980) (noting that the law of the case rule is "predicated on the premise that ... it would be impossible for [a] … court 'to perform its duties satisfactorily and efficiently' and expeditiously 'if a question, once considered and decided by it were to be litigated anew in the same case'").  Thus, a court "will follow a ruling previously made unless the prior ruling was erroneous, is no longer sound, or would work an injustice."  *Loumar v. Smith*, 698 F.2d 759, 762 (5th Cir.1983).

None of those limited exceptions applies here.  The Court's ruling that "access to information" did not create a tort duty for non-operating investors was correct when issued as to the B1 Bundle; it was subsequently reaffirmed by the Court in the B3 Order; and it is eminently just because it does not impose on pure investors undefined, unreasonable and unmanageable duties to interfere with their independent contractors' operations.  Consequently, the Court

should dismiss Transocean's Cross-Claims against Offshore for contribution and indemnity because Offshore had no duty to Transocean.

Moreover, as set forth in Offshore's Opening Memorandum, Transocean cannot state a valid claim for indemnity under maritime law against Offshore because (1) there is no agreement by which Offshore agreed to indemnify Transocean in connection with operations on the Macondo Well; (2) the Ryan Doctrine is inapplicable; and (3) Transocean does not, and cannot, allege any "actual fault" on the part of Offshore.  Opening Memorandum at 7-8.  The third argument now applies with even greater force in light of the Court's B1 Order, which determined that Offshore owed no duties and did not exercise operational control over activities at the Macondo Well.  *See* B1 Order at 28-29.  Transocean's Opposition is silent with respect to its maritime indemnification claim, leaving uncontested the reasons for dismissal set forth by Offshore.  Thus, to the extent Transocean has not abandoned this claim, it should be dismissed.

## II.     THE B1 ORDER PRECLUDES TRANSOCEAN'S CONTRIBUTION CLAIMS UNDER OPA, WHICH ARE GOVERNED BY PRINCIPLES OF PROPORTIONATE FAULT

The Court should reject Transocean's argument that, notwithstanding the B1 Order, it should be permitted to maintain a claim for contribution under OPA (*see* Opp. at 4-7).  OPA authorizes contribution claims against other parties liable under OPA or liable "under another law." See 33 U.S.C. §2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.").  Beyond identifying who may be sued, however, Section 2709 is not specific as to how liability should be apportioned among responsible and potentially responsible parties in contribution actions.

Courts addressing the issue have concluded that in an OPA contribution action, liability must be allocated in proportion to the parties' percentage of fault.  *See Posavina Shipping Co. v. Alex C Corp.*, 2010 WL 4292328, at *15 (D. Mass. Nov. 1, 2010) (allocating damages in an OPA

contribution case in proportion to fault); *see also Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Hawaii 2009) (suggesting OPA contribution claims would be calculated by proportion of fault); *Marathon Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (same). A leading treatise on maritime law likewise concludes that, "under OPA . . the responsible party . . . will be able to recover over against third parties . . . through contribution according to principles of comparative fault." Schoenbaum, Admiralty and Maritime Law § 18-2 n.26 (2004).

As these courts and scholars have recognized, OPA incorporates the rule that "principles of comparative fault" are used in allocating damages in maritime cases. Schoenbaum, supra § 5-18. It was well-understood at the time that Congress adopted OPA that, in any maritime contribution case, liability would be allocated in proportion to degree of fault. *See U.S. v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) (recognizing that comparative liability must be basis for allocating damages in maritime cases). Congress expressly adopted this background rule, providing in OPA that "Except as otherwise provided in this Act, [OPA] does not affect . . . admiralty or maritime law . . . ." 33 U.S.C. § 2751.

This Court has already held that general maritime law governs this case, and that maritime law fills gaps in the statutory regime where OPA is silent. *See* B1 Order at 26 (holding that because OPA is silent with respect to claims against non-responsible parties, maritime law provides a remedy). Accordingly, like other courts addressing this issue, this Court should fill OPA's silence with respect to apportionment of liability among defendants with the established maritime law rule of comparative fault.

When the Court uses proportionate fault principles to determine liability for OPA contribution claims, the Cross-Claims for contribution under OPA must necessarily fail against

Offshore in light of the Court's holding in the B1 Order that Offshore, as a non-operating party, had no operational control or negligence liability.  Because it cannot plausibly be shown that Offshore was at fault, any OPA contribution claims against it should be dismissed with prejudice.

## III.     TRANSOCEAN CANNOT STATE A PLAUSIBLE CLAIM FOR SUBROGATION

Although Transocean argues that a finding of fault against Offshore is not required for success on its subrogation claim, its own allegations (as cited in the Opposition) belie this contention.  Transocean has alleged that the "April 20, 2010 incident and the BP Oil Spill were caused not by any negligent acts, omissions, or culpable conduct of Transocean, but were caused in whole or in part by the negligent acts, omissions or culpable conduct of the Cross-Defendants," including Offshore.  Opp. at 9, citing Dkt. #2068 ¶65 and Dkt. #2574 ¶42.  Thus, Transocean's subrogation claim against Offshore depends on a finding of fault.  In light of the B1 Order (at 28-29), it cannot plausibly be alleged that the April 20, 2010 incident and the resulting oil spill were caused by any "negligent acts, omissions, or culpable conduct" of Offshore.

Moreover, not only does Transocean fail to argue that it has made any payments to which its alleged subrogation right would apply, it also acknowledges that it does not even face any such claims.  *See* Opp. at 8.

A claim that is not plausible must be dismissed.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss).  Here, the Court has already determined that Offshore, as a non-operating party, was not at fault, and in

any event Transocean faces no claims to which subrogation would apply.  Consequently,

dismissal is warranted.

<u>**CONCLUSION**</u>

For the reasons stated herein and in Offshore's Opening Memorandum, Transocean's

Cross-Claims and Third-Party Complaint against MOEX Offshore 2007 LLC must be dismissed

in their entirety.

Dated:  November 7, 2011

Respectfully submitted,

s/  John F. Pritchard_____

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 7, 2011.

s/ John F. Pritchard

John F. Pritchard