**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION: J |
| | * | |
| This Document Relates to: | * | |
| All Cases and No. 2:10-CV-02771, | * | JUDGE BARBIER |
| | * | |
| | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*


**REPLY MEMORANDUM IN SUPPORT OF**
**MOEX OFFSHORE 2007 LLC'S MOTION TO DISMISS**
**FIRST AMENDED CROSS-CLAIMS OF M-I  L.L.C.**

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................................... 1

I. THE COURT'S B1 ORDER PRECLUDES M-I'S CROSS-
CLAIM FOR CONTRIBUTION AND INDEMNITY UNDER
MARITIME LAW .............................................................................................................. 1

II. M-I CANNOT PLAUSIBLY PLEAD DIRECT OR
VICARIOUS LIABILITY AGAINST OFFSHORE ........................................................ 5

III. THE B1 ORDER PRECLUDES M-I'S CONTRIBUTION
CLAIMS UNDER OPA, WHICH ARE GOVERNED BY
PRINCIPLES OF PROPORTIONATE FAULT ............................................................. 5

V. LEAVE TO AMEND SHOULD BE DENIED ............................................................... 7

CONCLUSION ........................................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Ainsworth v. Shell Offshore, Inc.*,
  829 F.2d 548 (5th Cir. 1987) ........................................................................3

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .................................................................................3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................3

*Cape Flattery Ltd. v. Titan Maritime LLC*,
  607 F. Supp. 2d 1179 (D. Hawaii 2009) ......................................................6

*Chaffe McCall, LLP v. World Trade Center of New Orleans*,
  641 F. Supp. 2d 585 (E.D. La. 2009) ...........................................................7

*Key v. Wise*,
  629 F.2d 1049 (5th Cir. 1980) ......................................................................4

*Lang v. DirecTV, Inc.*,
  735 F. Supp. 2d 421 (E.D. La. 2010) ...........................................................7

*Loumar v. Smith*,
  698 F.2d 759 (5th Cir.1983) .........................................................................4

*Marathon Pipeline Co. v. LaRoche Industries Inc.*,
  944 F. Supp. 476 (E.D. La. 1996) ................................................................6

*Posavina Shipping Co. v. Alex C Corp.*,
  2010 WL. 4292328 (D. Mass. Nov. 1, 2010) ...............................................6

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) ........................................................................7

*United States v. Reliable Transfer Co.*,
  421 U.S. 397 (1975) .....................................................................................6

*United States v. Mendez*,
  102 F.3d 126 (5th Cir. 1996) ........................................................................4

*United States v. U.S. Smelting, Refining & Mining Co.*,
  339 U.S. 186 (1950) .....................................................................................4

## STATUTES AND RULES

33 U.S.C. § 2709....................................................................................................................5

33 U.S.C. § 2751....................................................................................................................6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1

## OTHER

Schoenbaum, Admiralty and Maritime Law (2004) .........................................................6

MOEX Offshore 2007 LLC ("Offshore") respectfully submits this reply memorandum in further support of its motion to dismiss M-I's First Amended Cross-Claims (Dkt. #2531; "Cross-Claims") pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.[1]

## INTRODUCTION

M-I's Opposition to Offshore's Motion to Dismiss its First Amended Cross-Claims (Dkt. #4322; "Opp.") consists almost entirely of arguments that have already been rejected by this Court in its Order and Reasons as to Motions to Dismiss the B1 Master Complaint (Dkt. # 3830) ("B1 Order"). M-I concedes that "the Court ruled in the B1 Order that MOEX … had no duty that could support a negligence claim, either directly or through vicarious liability." Opp. at 4 n.3. As set forth more fully below, the B1 Order precludes M-I's cross-claims for contribution and indemnity against Offshore. Accordingly, M-I's Cross-Claims should be dismissed with prejudice.

## I.      THE COURT'S B1 ORDER PRECLUDES M-I'S CROSS-CLAIM FOR CONTRIBUTION AND INDEMNITY UNDER MARITIME LAW

After Offshore's motion to dismiss was filed, the Court issued its B1 Order on August 26, 2011. In that decision, the Court held that under the Operating Agreement, "BP was solely responsible for the drilling operations." B1 Order at 28. The Court further held that "[a]ny access to information that … [Offshore] may have had did not give rise to a duty to intercede in an independent contractor's operations," especially since there was no allegation that Offshore had access to any information not already available to BP and Transocean personnel either onshore or on the rig. B1 Order at 28.

---

[1]   Unless otherwise noted, the abbreviations and citation forms adopted in Offshore's Opening Memorandum (Dkt. #2903-1) are continued herein.

Thus, the Court ruled that Offshore lacked operational control over BP's activities with respect to the Macondo Well.  *Id.*  Discussing plaintiffs' "attempt to avoid dismissal" by suggesting that Offshore was "directly negligent," the Court further concluded that "adding a 'direct-duty' label to their claims does not add merit to them." *Id.* at 28-29.  Accordingly, the Court ruled that there can be no "plausible general maritime negligence claim" against Offshore (*id.* at 29), and held that "[a]ll general maritime negligence claims against … [Offshore] are dismissed, as Plaintiffs have failed to state a plausible claim against the Non-Operating lessees/Defendants" (*id.* at 39).

The Court confirmed that result a month later by dismissing the B3 Bundle Master Complaint's claims against Offshore in their entirety. *See* Sept. 30, 2011 Order on Motions to Dismiss the B3 Master Complaint (Dkt #4159) ("B3 Order") at 6.

M-I's Cross-Claims against Offshore for contribution and indemnity are premised upon allegations that Offshore was negligent.  *See* Cross-Claims ¶¶66 (alleging that Offshore was negligent because it knew of BP's design and operation of the well, and knew or should have known of imminent blowout), 67 (alleging that oil spill "resulted from the negligence" of Offshore and other parties), 68 (alleging entitlement to indemnity "[a]s a result of … the MOEX Parties' negligence").

In its Opening Memorandum, Offshore argued that indemnity under maritime law was unavailable for three reasons, including the fact that M-I could not plausibly allege "actual fault" on the part of Offshore.  Opening Memorandum at 6-7.  Offshore further argued that it could not be held liable to M-I for contribution because Offshore, as a non-

operating party, had no right to control the drilling operations.  Opening Memorandum at 9-12.[2]

Those arguments take on overwhelming force in light of the Court's B1 Order. This Court has now held that Offshore, as a non-operating party, lacked operational control over activities at the Macondo Well and consequently the B1 plaintiffs failed to state a "plausible general maritime negligence claim" against Offshore.  *See* B1 Order at 28-29.  The B1 plaintiffs' allegations against Offshore were echoed in M-I's Cross-Claims.  *Compare* Cross-Claims ¶¶59-67 *with* Dkt. #1128, B1 Master Complaint ¶¶282-85, 573-74.  Where a complaint fails to state a plausible claim, it must be dismissed.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss).

M-I tries to salvage its Cross-Claim for indemnification by arguing that, "[g]iven the enormous complexity of this litigation…it may very well be impossible to rationally determine proportionate degrees of fault."  Opp. at 2.  Such speculation cannot support continued litigation of the Cross-Claims against Offshore, particularly since this Court has already determined that, as a non-operating party, Offshore was not negligent.

M-I's Opposition also makes clear that its Cross-Claims are premised on the legal argument that *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550-51 (5th Cir. 1987) does not govern the claims against Offshore here (*see* Opp. at 5).  This Court, however,

---

[2]  In fact, the Cross-Claims affirmatively alleged that BP was the controlling party.  *See* Cross-Claims ¶53.

has already held that *Ainsworth* does govern.  *See* B1 Order at 28 (ruling that *Ainsworth* "lays out the analysis for evaluating Plaintiffs' negligence claim against … MOEX").

Having decided in the B1 Order that the maritime law negligence claims against Offshore must be dismissed, the Court should apply the "law of the case" doctrine and reach the same conclusion with regard to M-I's Cross-Claims.  The rule of law of the case is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."  *United States v. U.S. Smelting, Refining & Mining Co.*, 339 U.S. 186, 198 (1950); *see also United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) ("The doctrine of the law of the case 'expresses the practice of courts generally to refuse to reopen what has been decided'" and "creates a strong presumption of finality within the case"); *Key v. Wise*, 629 F.2d 1049, 1054 (5th Cir. 1980) (noting that the law of the case rule is "predicated on the premise that ... it would be impossible for [a] … court 'to perform its duties satisfactorily and efficiently' and expeditiously 'if a question, once considered and decided by it were to be litigated anew in the same case'").  Thus, a court "will follow a ruling previously made unless the prior ruling was erroneous, is no longer sound, or would work an injustice."  *Loumar v. Smith*, 698 F.2d 759, 762 (5th Cir.1983).

None of those limited exceptions applies here.  The Court's ruling that "access to information" did not create a tort duty for non-operating investors was correct when issued as to the B1 Bundle; it was subsequently reaffirmed by the Court in the B3 Order; and it is eminently just because it does not impose on pure investors undefined, unreasonable and unmanageable duties to interfere with their independent contractors'

operations.  Consequently, the Court should dismiss M-I's Cross-Claims against Offshore

for contribution and indemnity because Offshore had no duty to M-I.

## II.     M-I CANNOT PLAUSIBLY PLEAD DIRECT OR VICARIOUS LIABILITY AGAINST OFFSHORE

The B1 Order's holding that Offshore was not negligent and lacked operational

control over BP's activities in connection with the Macondo Well forecloses M-I's Cross-

Claims based on vicarious liability, as well as those based on direct liability.  M-I, in fact,

admits that the B1 Order means that Offshore had no duty that would support a

negligence claim, "either directly or through vicarious liability," and states that it is

merely "mak[ing] these arguments to preserve the issue."  Opp. at 4 n.3.

The Court, therefore, should apply the law of the case doctrine and dismiss M-I's

Cross-Claims to the extent they allege vicarious liability (*see* Cross-Claims ¶65).  That

result is also dictated by the Operating Agreement, which clearly stated that "the

Operator [BP] is an independent contractor, not subject to the control or direction of the

Non-Operating Parties";  established that "[t]he Operator is not the agent or fiduciary of

the Non-Operating Parties"; and provided that "the Operator has the exclusive right and

duty to conduct (or cause to be conducted) all activities or operations under this

Agreement."  Dkt. #1414-2 Operating Agreement Arts. 4.1, 5.1; *see* Opening

Memorandum at 7-8.

## III.    THE B1 ORDER PRECLUDES M-I'S CONTRIBUTION CLAIMS UNDER OPA, WHICH ARE GOVERNED BY PRINCIPLES OF PROPORTIONATE FAULT

The Court should reject M-I's argument that, notwithstanding the B1 Order, it

should be permitted to maintain a claim for contribution under OPA (*see* Opp. at 2-3).

OPA authorizes contribution claims against other parties liable under OPA or liable

"under another law." See 33 U.S.C. §2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.").  Beyond identifying who may be sued, however, Section 2709 is not specific as to how liability should be apportioned among responsible and potentially responsible parties in contribution actions.

Courts addressing the issue have concluded that in an OPA contribution action, liability must be allocated in proportion to the parties' percentage of fault.  *See Posavina Shipping Co. v. Alex C Corp.*, 2010 WL 4292328, at *15 (D. Mass. Nov. 1, 2010) (allocating damages in an OPA contribution case in proportion to fault); *see also Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Hawaii 2009) (suggesting OPA contribution claims would be calculated by proportion of fault); *Marathon Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (same).  A leading treatise on maritime law likewise concludes that, "under OPA . . the responsible party . . . will be able to recover over against third parties . . . through contribution according to principles of comparative fault." Schoenbaum, Admiralty and Maritime Law § 18-2 n.26 (2004).

As these courts and scholars have recognized, OPA incorporates the rule that "principles of comparative fault" are used in allocating damages in maritime cases. Schoenbaum, supra § 5-18. It was well-understood at the time that Congress adopted OPA that, in any maritime contribution case, liability would be allocated in proportion to degree of fault.  *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975) (recognizing that comparative liability must be basis for allocating damages in maritime cases). Congress expressly adopted this background rule, providing in OPA that "Except

as otherwise provided in this Act, [OPA] does not affect . . . admiralty or maritime law…." 33 U.S.C. § 2751.

This Court has already held that general maritime law governs this case, and that maritime law fills gaps in the statutory regime where OPA is silent. *See* B1 Order at 26 (holding that because OPA is silent with respect to claims against non-responsible parties, maritime law provides a remedy). Accordingly, like other courts addressing this issue, this Court should fill OPA's silence with respect to apportionment of liability among defendants with the established maritime law rule of comparative fault.

When the Court uses proportionate fault principles to determine liability for OPA contribution claims, the Cross-Claims for contribution under OPA must necessarily fail. As the Court has already held in the B1 Order, as a non-operating party, Offshore had no operational control or negligence liability.  Because it cannot plausibly be shown that Offshore was at fault, any OPA contribution claims against it should be dismissed with prejudice.

## V.    LEAVE TO AMEND SHOULD BE DENIED

M-I's request for leave to amend its complaint should be denied.  Because the Court has ruled that Offshore, as a non-operating party, (i) did not exercise operational control; (ii) owed no duty; and (iii) was not negligent, M-I will not be able to plead a viable Cross-Claim against Offshore for contribution or indemnity.  Therefore, M-I's request to amend its Cross-Claims against Offshore is futile.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 576 n.8 (5th Cir. 2005) (noting that a court may deny leave to amend due to "futility of the amendment"); *see also Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 430 (E.D. La. 2010) ("It is within the district court's discretion to deny a motion to amend if it is futile."); *see, e.g., Chaffe McCall, LLP v. World Trade Center of*

*New Orleans*, 641 F. Supp. 2d 585, 596-97 (E.D. La. 2009) (Barbier, J.) (denying motion for leave to amend as futile).

## CONCLUSION

For the reasons set forth herein and in Offshore's Opening Memorandum, M-I's Cross-Claims against Offshore should be dismissed.

Dated:  November 7, 2011

Respectfully submitted,

s/  John F. Pritchard_____

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 7, 2011.

s/  John F. Pritchard
John F. Pritchard