IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on April 20, 2010 | MDL NO. 2179 |
| | SECTION:  J |
| | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO: ALL CASES | |

### DEFENDANT DRIL-QUIP, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS BP PARTIES' COUNTER-COMPLAINT FOR FAILURE TO STATE A CLAIM

### ARGUMENT

**A.     Pleading Standards**

The BP Parties present a measured and scholarly argument that Rule 8 still requires no more than notice pleading, that what constitutes adequate pleading after *Atlanta Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1987 (2009), is context-specific, and that, measured against these requirements, their counterclaim states a plausible claim against Dril-Quip.  But the Court should not be misled by this attempt to frame the BP Parties' barebones pleadings in the most favorable manner, because the first premise is false, the second is overstated, and even if they were accepted as stated, the flattering frame cannot save the excessively abstract claim the BP Parties' have pled against Dril-Quip.

Relying on a case from the D.C. Circuit and the federal pleading forms, the BP Parties contend that "*Twombly* leaves the long-standing fundamentals of notice pleading in place." Opposition at 5 (quoting *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008)).  But *Fame Jeans* was decided before *Iqbal* and has been questioned by a later

D.C. Circuit opinion, *see Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009), and most interpreters of *Twombly-Iqbal* disagree with its conclusion. *See, e.g.,* A. Benjamin Spencer, *Plausibility Pleading,* 93 B.C.L.Rev. 431 (2008) ("Notice pleading is dead."); Scott Dodson, *Pleading Standards After Bell Atlantic v. Twombly*, 93 Va. L.Rev. In Brief (2007), available at http.//www.virginialawreview.org/inbrief/2007/07/09/Dodson.pdf ("… rule 8 now requires notice-plus pleading for all cases …"). As for the pleading forms, they do what the BP Parties' pleadings failed to do: state enough facts to permit a reasonable inference of wrongdoing on the part of the defendant. *See* A. Benjamin Spencer, *Understanding Pleading Doctrine*, 108 Mich.L.Rev.1, 15 (2009) (discussing Federal Form 11).

While the BP Parties' context-specificity contention is not altogether incorrect, the implication that context-specificity renders superficial, conclusory pleading adequate does not follow. For example, Professor Spencer demonstrates the inadequacy of a product liability claim that is remarkably similar to the pleadings on which the BP Parties rely because, when stripped of conclusory and tendentious language, that claim fails adequately to support an inference of defendant's fault. *See id*. at 15-16.

**B.     Deficient Pleading**

In their Opposition, the BP Parties argue their own claims by selecting several statements of claims by other parties. *See* Opposition at 10. Yet those statements still fail to meet federal pleading standards. Stripped of conclusory language, as *Twombly* and *Iqbal* mandate, those claims assert only that Dril-Quip manufactured or designed oilfield equipment and assisted in its installation. Manufacturing and/or designing oilfield equipment and assisting in its installation do not constitute a tort. The BP Parties set forth no facts suggesting improper conduct on Dril-Quip's part. They merely assert liability by association with an ill-fated drilling project.

After *Twombly* and *Iqbal,* Rule 8 requires more.  *See, e.g.,* Robert G. Bone, Twombly, *Pleading Rules and the Regulation of Court Rules*, 94 Iowa L. Rev. 873, 885-86 (2009) ("…[W]hat the *Twombly* court requires are allegations that differ in some significant ways from the baseline… in a way that supports a higher probability of wrongdoing than is ordinarily associated with baseline conduct").  This does not mean that it is enough to show that it is plausible that the blowout and explosion on the *Deepwater Horizon* resulted from some person's fault and that Dril-Quip was in a position to be such a person.  Dril-Quip's involvement as the manufacturer of the wellhead may be undisputed, but what is neither known nor alleged by BP or any other party is any fact tending to show a failure or malfunction attributable to the wellhead. *Iqbal* states, "A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  129 S.Ct. at 1940.  *Twombly* states, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ."  550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The Fifth Circuit recently reversed the denial of a motion to dismiss for these very reasons.  *See Higgenbotham v. Connatser*, 420 Fed.App'x. 466, 466 (5th Cir. 2011) (unpublished opinion).[1]  The BP Parties' counter-complaint does not contain enough factual content to allow this court to draw a reasonable inference that Dril-Quip is liable for the misconduct alleged.  Rather, it contains nothing more than "labels and conclusions" and "formulaic recitation of the elements" of several parties' claims against Dril-Quip.  Accordingly, the BP Parties' Counter-Complaint should be dismissed for fatal factual insufficiency.

---

[1] Just this year, several other circuits have upheld dismissals based on *Twombly* and *Iqbal.  See Burtch v. Milberg Factions, Inc.*, __ F.3d __, 2011 WL 5027511 (3d Cir., Oct. 24, 2011);  *McCauley v. City of Chicago*, __ F.3d __, 2011 WL 4975644 (7th Cir., Oct. 20, 2011); *Jones v. STOA International/Florida, Inc.*, 422 Fed. App'x 851, at *1 (14th Cir. 2011); *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, at *3 (1st Cir. 2011).

The BP Parties assert that several recent district court cases should control this case. *See* Opposition at 12-13 (citing *Singleton v. Chevron U.S.A., Inc.,* 2011 WL 2981396 (E.D. La., July 21, 2011); *Winslow v. W. L. Gore & Assocs.*, 2011 WL 873562 (W.D. La., Mar. 11, 2011); *Wright v. Shell Offshore Inc.*, No. 10-2108, 2011 WL 690530 (E.D. La. Feb. 17, 2011); *Richardson West-ward Phons., Inc.*, 2010 WL 3879541 (S.D. Miss., Sept. 28, 2010). Dril-Quip respectfully disagrees. *Wright* and *Singleton* involved claims for injuries and death due to plaintiffs' longtime exposure to benzene. *See 2011 WL 2981396* at *1; 2011 WL 690530 at *1. That allegation alone provides more information than the allegations against Dril-Quip. Because benzene exposure has been a subject of litigation for quite some time, its dangers are well known. *See, e.g., Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980) (adjudicating status of OSHA role on permissible exposure). A claim that a defendant caused injury with its benzene products gives that defendant significant information concerning the plaintiff's claims. Moreover, the extended exposure period renders it less likely that specific periods and manners of exposure can be known prior to discovery. By contrast, the BP Parties have pleaded no factual link between Dril-Quip's product and the blowout/explosion or his injuries, and Dril-Quip is grouped with defendants who supplied starkly different products and services from its own, under different contracts imposing different duties. It may be reasonable in *Singleton* and *Wright* to build a liability syllogism such as: defendants manufactured benzene; benzene injured plaintiff; therefore one or more defendants injured plaintiff. No such syllogism can be constructed for this litigation. At present, the BP Parties' position seems to be that something went wrong on the Macondo project, and Dril-Quip may be liable because it furnished something for the project. That is not enough, and *Wright* and *Singleton* do not hold otherwise.

*Winslow* involved a claim in which a single plaintiff claimed injury against a single defendant from "a deteriorating implanted wire mesh which cause[d] infection," 2011 WL 873662 at *1. That case obviously met the requirement that the factual predicate point to wrongdoing by the defendant. Finally, although *Richardson* discusses Rule 8, most of the opinion deals with legal sufficiency issues. As to the breach of warranty claim, which was allowed despite having both pled in the language of a Mississippi statute, Dril-Quip suggests the decision is simply incorrect, because, as previously noted, "a formulaic recitation of the elements of a cause of action will not do." See page 4, *supra* (quoting *Twombly*, 550 U.S. at 555).

The BP Parties also challenge the applicability of *Funk v. Stryker*, 631 F.3d 777 (5th Cir. 2011), dismissing it as a preemption case. But the portion of *Funk* cited by Dril-Quip deals with the adequacy of the portion of Funk's compliant that *survived* preemption. See Doct. 3254-1 at 9 (citing *Funk*, 631 F.3d at 382). As the court stated, that portion was "impermissibly conclusory and vague," 631 F.3d at 382. Thus, *Funk* supports Dril-Quip's position, while the BP Parties' purported distinction is irrelevant.

C.   **Negligence Law**

The BP Parties contend that Dril-Quip's argument that it did not owe a duty to Plaintiff because it did not control any operation on the *Deepwater Horizon* is mistaken because the issue of control is only relevant if Plaintiff is alleging vicarious liability. Response at 10. But the contention is wrong, because the *issue* is whether Dril-Quip owed or breached a duty of care to BP. *See Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000). The issue of duty is a matter of law. *See id.* at 376. It turns principally on the "scope of the risk that negligent conduct foreseeably entails." *Id.* at 377 (quoting *Consolidated Aluminum Corp. v. C. F. Bean Corp.,* 833 F.2d 65, 67 (5th Cir. 1987)). The absence of control over operations serves to limit

the scope of Dril-Quip's duty to the foreseeable consequences of furnishing a piece of equipment to BP because it demonstrates that Dril-Quip engaged in no other independent conduct on the rig, just as the absence of control in *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548 (5th Cir. 1987), meant that Shell Offshore had engaged in no conduct that would strip it of its status as a passive principal and expose it to liability.[2]

      Examination of the BP Parties' counter-complaint and its Opposition illustrates the point. Except for the product liability claims, which are fatally conclusory, the failures and violations listed there concern drilling operations in which Dril-Quip did not participate and over which it exercised no control. Accordingly, Dril-Quip cannot be held accountable for that conduct because it did not engage in it, directly or indirectly.

---

[2] The BP Parties dismiss *Ainsworth* and its progeny as vicarious liability cases. This characterization is not accurate. *Ainsworth* turned on the applicability of *an exception* to Louisiana's general rule that a principal is not liable for the offenses of an independent contractor. *See* 829 F.2d at 550. That exception "imposes liability on a principal in the negligent acts of an independent contractor when the principal retains or exercises operational control." *Id.* Control has been held to be the decisive factor in other maritime contracts as well. *See, e.g., Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d 85, 91 (5th Cir. 1981) (control entails responsibility for fault in barge contract case). The point is, whether liability is vicarious or direct, a party must exercise responsibility over actions to be held liable for their consequences. *See also* Restatement (Third) of Torts §5 (1998) (component parts doctrine).

      Dril-Quip, reasoning analogically from *Ainsworth*, argues that it is outside the zone of duty for all operational conduct and omissions aboard the *Deepwater Horizon*. It does not contend that it is not liable for its own acts. Rather, it contends that its only acts were the sale of equipment and provision of associated installation services to BP and, therefore, that, as a matter of law, it has engaged in none of the conduct that complaining parties have identified as negligent.

### D. Leave to Amend

The BP Parties seek leave to amend their claims in the event the Court finds them insufficient. Dril-Quip opposes such relief. Because the proposed amendment would disrupt the current pretrial schedule, the BP Parties must show good cause to amend. *See S & W Enters., LLC v. South Trust Bank of Ala. N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). As the BP Parties cannot show sufficient diligence to satisfy this standard, *see, e.g., Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.,* 591 F.3d 458 (5th Cir. 2009), repleading at this point in the case would amount to an exercise in creative writing, exacerbating the litigation burdens already imposed on Dril-Quip, and disrupting a "massive multidistrict litigation." *See, e.g., In re Enron Corp.*, 610 F. Supp. 2d 600, 652-54 (S.D. Tex. 2009).

Analysis of the factors set forth in *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161 (5th Cir. 2010), should not persuade the Court to grant leave to replead. Only one Dril-Quip representative has been deposed, and no party, including the BP Parties, sought leave to amend on the basis of his testimony. Moreover, the claims in question postdated many other depositions and document discovery, as well as investigative reports. In short, the BP Parties had ample time to investigate and material to review before pleading.

The second factor, "the importance of the amendment," cannot be justified on the ground asserted (that the alternative is dismissal), because that is so often the case that amendment would rarely be denied. As both parties acknowledge, their controversy is largely driven by the procedural structure of this case. *See* Opposition at 3-4. Such a predicate establishes the *unimportance* to the BP Parties of its claims against Dril-Quip.

The third and fourth factors also cut against repleading. Dril-Quip has already noted the prejudice to it of having had to defend for more than a year against hundreds of thousands of

claims that fail to allege factual wrongdoing against it. *See* Motion to Dismiss Transocean's Third-Party Claims [Doc. No. 1902], 6. Such prejudice could only be compounded by specification of those claims less than four months before a trial that the Court has repeatedly stated will not be continued. *See, e.g.,* Order [Regarding Halliburton's Motion to File Second Amended Cross-Claim [Doc. No. 3893]] (E.D. La., Oct. 11, 2011). [Doc. No. 4267]

## CONCLUSION

In short, Dril-Quip moves to dismiss because the BP Parties have not pled facts tending to show that Dril-Quip's conduct was actionable in any way or that it was involved in any of the alleged conduct that *is* arguably actionable. Dril-Quip acknowledges that the BP Parties may have a cause of action in contribution against someone, but have failed to provide any facts that plausibly suggest that Dril-Quip is that someone. Therefore, the Court should dismiss the BP Parties' claims against Dril-Quip because no claim upon which relief may be granted has been stated against it and deny leave to replead.

Date: November 7th, 2011

              Respectfully submitted,

              **WARE, JACKSON, LEE & CHAMBERS, LLP**

              BY: /s/ C. Dennis Barrow, Jr
               Don Jackson
               Texas Bar No. 10476000
               Fed ID No. 6915
               C. Dennis Barrow, Jr.
               Texas Bar No. 00796169
               Fed ID No. 20624
               America Tower
               2929 Allen Parkway, 42nd Floor
               Houston, TX 77019
               Phone : (713) 659-6400
               Fax : (713) 659-6262

              *Attorneys for Defendant, Dril-Quip, Inc.*

**CERTIFICATE OF SERVICE**

     I certify that the above and foregoing Reply Memorandum of Law in Support of Motion to Dismiss will be served on all counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of November, 2011.

                                                 /s/ C. Dennis Barrow, Jr.
                                                 C. Dennis Barrow, Jr.