UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179<br><br>SECTION: J |
| This document relates to:<br><br>2:10-cv-02771 | § § § § § | Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |

### REPLY IN SUPPORT OF M-I L.L.C.'S MOTION TO DISMISS CROSS-CLAIM OF ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP

In response to M-I L.L.C.'s ("M-I") Motion to Dismiss (Dkt. No. 2817), Anadarko Petroleum Corporation and Anadarko E&P Company LP (collectively, "Anadarko") attempt to go beyond the allegations made against M-I in order to preserve their claim of gross negligence. Anadarko's attempts to stretch its pleadings fail.[1]

### ARGUMENT

**I.  APPLICABLE LAW**

While Anadarko claims that M-I "cherry pick[ed] only its preferred formulations from among the many potentially applicable standards by which the Court can evaluate M-I's liability for gross negligence," Opp. 3, the parties do not disagree significantly as to the applicable law. Courts measure both ordinary negligence and gross negligence against the same standard of care: namely, the exercise of reasonable care under the circumstances. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Royal Ins. Co. of Am. v. Sw. Marine*, 194

---

[1] In accordance with this Court's August 26, 2011 Order as to the defendants' motions to dismiss the B1 Master Complaint, which dismissed all claims brought under state law as being preempted by maritime law, only Anadarko's claim of gross negligence under maritime law remains. *See* Aug. 26, 2011 Order and Reasons 8-18, 38 (Dkt. No. 3830).

F.3d 1009, 1015 (9th Cir. 1999). However, whereas ordinary negligence involves any deviation from the standard of care, gross negligence involves an "extreme" deviation. *Royal Ins.*, 194 F.3d at 1015; *Kuroshima Shipping S.A. Act of God Def. & Limit of Liab. Analysis*, 2003 Am. Mar. Cases 1681, 1693 (U.S. Coast Guard Nat'l Pollution Funds Ctr. 2003), *aff'd*, *Water Quality Ins. Syndicate v. United States*, 632 F. Supp. 2d 108, 114-15 (D. Mass. 2009).

The Fifth Circuit has articulated what constitutes such an extreme degree of deviation in many different ways.[2] The court recited some of these formulations in *Houston Exploration Co. v. Halliburton Energy Services, Inc.*, 269 F.3d 528, 531-32 (5th Cir. 2001):

- "[G]ross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Id.* at 531 (citing *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)) (Louisiana law); *see also Becker*, 586 F.3d at 367.

- "'Gross negligence is substantially and appreciabl[y] higher in magnitude than ordinary negligence.'" *Hou. Exploration*, 269 F.3d at 532 (quoting *Orthopedic & Sports Injury Clinic*, 922 F.2d at 224 n.3).

- "Other courts have defined gross negligence as the 'entire absence of care,' the 'want of even slight care and diligence,' and the 'utter disregard of the dictates of prudence, amounting to the complete neglect of the rights of others.'" *Hou. Exploration*, 269 F.3d at 532 (quoting *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F. Supp. 198, 201 (E.D. La. 1953) and *State v. Vizant*, 7 So. 2d 917, 922 (La. 1942)); *see also Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) ("Gross negligence . . . has been defined as ' . . . harm wilfully inflicted or caused by gross or wanton negligence.'" (quoting 6A Corbin On Contracts § 1472 (1964 ed.)))

- "[O]ne is grossly negligent when he 'has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.'" *Hou. Exploration*, 269 F.3d at 532 (quoting *Cates v. Beauregard Elec. Coop., Inc.*, 316 So. 2d 907, 916 (La. Ct. App. 1975), *aff'd*, 328 So. 2d 367 (La. 1976)).

---

[2] In crafting gross-negligence articulations under maritime law in particular, federal courts have looked to state law and general principles of negligence law. *See Becker v. Tidewater Marine, Inc.*, 586 F.3d 358, 367 (5th Cir. 2009) (looking to Louisiana law); *Royal Ins.*, 194 F.3d at 1015 (looking to California law). *See generally In re Signal Int'l, LLC*, 579 F.3d 478, 491 (5th Cir. 2009) ("The analysis of a maritime tort is guided by general principles of negligence law." (citation and quotation marks omitted)).

- "Mere inadvertence or honest mistake does not amount to gross negligence." *Hou. Exploration*, 269 F.3d at 532 (citing *Orthopedic & Sports Injury Clinic*, 922 F.2d at 224 n.3); *see also Becker*, 586 F.3d at 367 (defining gross negligence in context of Outer Continental Shelf Lands Act and Longshore and Harbor Workers' Compensation Act).

The exact formulation applied in this case is not important because Anadarko fails to state a claim for gross negligence under any standard.

Anadarko cites *Toth v. Calcasieu Parish*, No. 06-0998, 2007 WL 710192, at *9 (W.D. La. Mar. 6, 2007), for the proposition that allegations sufficient to state a claim for negligence are also sufficient to state a claim for gross negligence. Opp. 6. Rather than standing for such a proposition of law, the *Toth* court merely concluded that based on the particular allegations taken as true, the plaintiffs had pleaded sufficient facts for claims of both ordinary negligence and gross negligence. *Toth*, 2007 WL 710192, at *9 (applying Louisiana law). Although facts sufficient to state a claim for gross negligence necessarily state a claim for ordinary negligence, the converse is not necessarily true. *See Becker*, 586 F.3d at 367.

Despite Anadarko's insinuation otherwise, gross negligence and ordinary negligence require different factual allegations. Under any of the Fifth Circuit's articulations of gross negligence, Anadarko has failed to allege facts establishing a claim for gross negligence.

## II. ANALYSIS

### A. Scope Of Opposition

Anadarko's Cross-Claim asserts only three instances of misconduct purportedly amounting to gross negligence by M-I: (1) M-I failed to use the mud and spacer solutions in a "reasonably safe manner," (2) M-I used "an unconventional fluid mixture, and an unusually large volume of it," which "may have interfered with the negative pressure test results and/or caused damage or clogging," and (3) M-I failed "to assess or communicate that fluid and pressure levels indicated hydrocarbons were coming up the well." Cross-Claim ¶ 259. In its

Motion to Dismiss, M-I demonstrates how each alleged occurrence fails to allege a factual basis for gross negligence.  *See* Mot. to Dismiss 3-4.  In its Opposition, Anadarko responds only as to the second alleged instance of misconduct.  *See* Opp. 4-6.  Hence, Anadarko forfeits its claim for gross negligence as to the other two alleged instances.  *See, e.g.*, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)  ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citations omitted)), *aff'd*, 98 F. App'x 8 (D.C. Cir. May 27, 2004).

> **B.    Anadarko Fails To State A Claim For Gross Negligence Based On The Volume And Composition Of The Spacer.**

In an attempt to resuscitate its only remaining potential ground for gross negligence—which focuses on the volume and composition of the spacer—Anadarko culls allegations from both its Cross-Claim and the B1 Master Complaint.  *See* Opp. 4-6. These allegations, however, viewed within their original context and read in their entirety, actually demonstrate M-I's diligence rather than gross negligence.[3]

First, Anadarko asserts that M-I "made the recommendation to use the untested spacer fluid regardless of its potential for disastrous consequences without taking even basic precautions."  Opp. 4.  The B1 Master Complaint allegations, which Anadarko incorporated into its Cross-Claims, contradict this allegation, stating that M-I's drilling fluid specialist "calculated [the] mud displacement plan *according to BP's specifications*."   B1 Master Compl. ¶ 368 (emphasis added); *see* Cross-Claim ¶ 85(k) (incorporating B1 Master Compl. ¶¶ 365-68).

---

[3] As noted in M-I's motion to dismiss, the "Statement of Facts" in Anadarko's Cross-Claim mentions M-I only twice.  Cross-Claim ¶¶ 27(c), 59.  The first mention occurs in paragraph 27(c), which abruptly ends mid-sentence, followed by a blank space approximately seven lines in length.  Despite being informed of this omission—first in person by M-I's counsel in May 2011 and again in M-I's Motion to Dismiss in June—Anadarko has failed to correct its error or seek leave to amend its pleading to identify what allegations, if any, are actually missing.

Second, Anadarko asserts now that its Cross-Claim:

> specifically alleges that M-I was aware that the spacer might "dangerously 'set up' or congeal in 'small restrictions' in tools on the drill pipe" which could have the effect of fouling the cement job critical to sealing and temporarily abandoning the well, and preventing a blowout.

Opp. 5 (citing Cross-Claim ¶ 59). Anadarko misrepresents the quoted Cross-Claim allegation, which, in its entirety, presents a very different story:

> BP ignored warnings by M-I, the contractor chosen by BP to provide services related to spacers and other drilling products, that the spacer chosen by BP might dangerously "set up" or congeal in "small restrictions" in tools on the drill pipe.

Cross-Claim ¶ 59. Rather than alleging that M-I somehow negligently recommended the spacer despite this supposed risk, the allegation instead states that M-I actually took the precautionary step of warning BP.[4] As with M-I's calculation of the mud displacement plan, this warning is inconsistent with the reckless or wanton conduct required for gross negligence. *See Hou. Exploration*, 269 F.3d at 532.

Anadarko's other allegations about M-I's use of the spacer fare no better. Anadarko alleges that because temporarily abandoning a deepwater well is "inherently dangerous," M-I's supposed deviation from the standard of care by using an unconventional spacer "without taking even basic safety precautions" was grossly negligent. Opp. 4. If Anadarko's allegations were true (which M-I does not concede), then the "inherently dangerous" circumstances surrounding the use of the spacer would only heighten the particular standard of care required; however, mere deviation from that standard of care establishes only ordinary negligence. *See Royal Ins.* 194, F.3d at 1015; *Kuroshima Shipping*, 2003 Am. Mar. Cases at 1693 ("A greater degree of care is required when the circumstances present a greater apparent risk."). In other words, the standard

---

[4] Additionally, Anadarko's assertion that the spacer "could have [had] the effect of fouling the cement job critical to sealing and temporarily abandoning the well, and preventing a blowout," Opp. 5, is nowhere in its Cross-Claim or even in the B1 Master Complaint.

5

of care might be higher in an inherently dangerous situation (again, M-I does not agree that this was such a situation), but a mere deviation, even from a high standard of care, is not automatically grossly negligent.  In any case, Anadarko has failed to allege facts supporting an inference that the increase in risk due to M-I's conduct in particular—as opposed to the risks that may be "inherent" in temporary abandonment—was so great as to render the recommendation of the spacer an extreme deviation from the applicable standard of care.

Anadarko further alleges that the spacer "was denser than [both] the drilling mud being displaced . . . and . . . the seawater that was to be placed in the well during the negative pressure test." Cross-Claim ¶ 57.  This greater density, according to Anadarko, "increased the risk that the spacer would migrate downward through the seawater and through the BOP annulars" and that "[t]he spacer . . . created a risk of clogging flow paths." *Id.* ¶ 58-59.  Anadarko concludes that these risks "*may* have interfered with the negative pressure test results." *Id.* ¶ 259(b) (emphasis added).  Anadarko likewise asserts that the "abnormally large" volume of spacer used "ma[d]e a correct interpretation of the negative pressure test more difficult than otherwise." *Id.* ¶ 171(j).  Andarko's speculation that the spacer "may" have increased the difficulty of the negative-pressure test does not amount to an assertion of a "risk . . . so obvious that [M-I] must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."[5]  *Hou. Exploration*, 269 F.3d at 532 (citation and internal quotation marks omitted).

Finally, Anadarko notes that the spacer was composed of lost-circulation materials ("LCMs"). Cross-Claim ¶ 259(a).  Anadarko quotes the following allegation from the B1 Master Complaint, incorporated into its Cross-Claim:

> M-I acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety and health of the environment and Plaintiffs by, *inter alia*, using an untested, abnormally large volume of mixed spacer solutions to

---

[5] Again, M-I is citing Anadarko's allegations as it must in a 12(b)(6) motion, but M-I does not accept them as true.

> avoid having to properly dispose of the two separate spacer substances as hazardous wastes.

B1 Master Compl. ¶ 635; Cross-Claim ¶ 85(h) (incorporating B1 Master Compl. ¶¶ 355-61). Anadarko fails to allege—apart from its general allegations concerning density and volume—if or how the use of LCMs created or increased any risk of harm, much less that the risk was so great as to render the recommendation of the spacer an extreme deviation from the applicable standard of care. Furthermore, this allegation fails to state any claim because nowhere does Anadarko allege, expressly or by incorporation, a causal connection between the LCMs' alleged status as "hazardous waste" and the harm for which Anadarko seeks relief.

Anadarko's allegations, taken as true, establish that M-I recommended the spacer only after taking the precautions of "calculat[ing] a mud displacement plan according to BP's specifications," B1 Master Compl. ¶ 368, and "warning[] . . . [BP] that the spacer . . . might dangerously 'set up' or congeal in 'small restrictions' in tools on the drill pipe," Cross-Claim ¶ 59. Therefore, Anadarko has not alleged facts which, if true, would establish a claim for gross negligence against M-I. Thus, under Fifth Circuit law, this Court should dismiss Anadarko's cross-claim to the extent it seeks recovery for gross negligence.

## CONCLUSION

For the foregoing reasons, M-I respectfully requests that this Court dismiss Anadarko's Cross-Claim under Federal Rule of Civil Procedure 12(b)(6) to the extent it seeks recovery for gross negligence.

November 7, 2011

          Respectfully submitted,

          MORGAN, LEWIS & BOCKIUS LLP

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

By: */s/ Hugh E. Tanner*
    Hugh E. Tanner
    htanner@morganlewis.com
    Texas Bar No. 19637400
    1000 Louisiana, Suite 4000
    Houston, Texas  77002
    Telephone:  (713) 890-5000
    Facsimile:  (713) 890-5001

**ATTORNEY FOR DEFENDANT
M-I L.L.C.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply In Support of M-I L.L.C.'s Motion to Dismiss Anadarko's Cross-Claim has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of November, 2011.

                                          /s/ *Hugh E. Tanner*
                                          Hugh E. Tanner