**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………….. | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE**
**TO PRECLUDE THE INTRODUCTION INTO EVIDENCE OF**
**OTHER GOVERNMENTAL REPORTS AND DOCUMENTS**

The PSC has proposed that a number of governmental reports and documents that are admittedly hearsay are nevertheless admissible under the "public records" exception set out in Federal Rule of Evidence 803(8).  None of these documents qualify for this exception.[1]

**I.      The National Commission Report.**

The Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling (2011) (the "National Commission Report") is strewn with content that precludes its admission under the hearsay exception in Rule 803(8).

---

[1] Please note that several of these documents are also implicated by other pending and anticipated motions *in limine*.  Thus a finding as to whether a document is admissible under Rule 803(8) does not necessarily resolve all issues with respect to that document.  Please also note that other documents not yet submitted as exhibits may raise these same issues.  BP reserves the right to object to any additional documents asserted to be "public records" under Rule 803(8), consistent with the arguments set out herein and any rulings made by the Court on this motion.  The following exhibits on the PSC's initial list of 300 trial exhibits are implicated by this motion because they fail to qualify for the "public records" exception to the hearsay rule:  TREX-00870 (OSHA Press Release), TREX-00986 (Chief Counsel's Report), TREX-02033 (Congressional Interview of Jesse Gagliano), TREX-06001 (Tony Hayward Congressional Testimony), TREX-06010 (Deferred Prosecution Agreement), TREX-06012 (CSB Texas City Report), TREX-06028 (OSHA Press Release), and TREX-06300 (National Commission Report).

*First*, the National Commission Report is replete with citations to and reproductions of Joint Investigation hearing testimony.  The notes to the National Commission Report contain more than *60* citations to Joint Investigation hearing transcripts.  *See* National Commission Report, at 307-355 (2011).  Many of these references are linked to direct quotations of Joint Investigation testimony within the main body of the National Commission Report.  Many others constitute the *sole* supporting authority for the given factual statement or finding espoused.  *See, e.g.*, *Id.* at 5 & nn. 31-32 (solely relying on Joint Investigation hearing testimony to establish part of sequence of events involving "VIP" visit to rig on April 20, 2010).  This renders the National Commission Report inadmissible under 46 U.S.C. §6308, and that rule is not trumped by any other provision of law, including Rule 803(8).

*Second*, portions of the National Commission Report merely present the facts and conclusions of other investigative (or non-investigative) bodies, which do not qualify as "factual findings" under Rule 803(8)(C) and are thus not excepted from the general prohibition on hearsay.  Courts have understood this as a requirement that, for a document to be admissible under the Rule, its content must be the result of an "evaluative process."  *United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994); *Crawford v. City of Kansas City, Kansas*, 952 F. Supp. 1467, 1472 (D. Kan. 1997).  To be admissible, there must, in other words, be some sort of "assessment [and] weighing of the evidence gathered."  *Osterneck v. E.T. Barwick Industries, Inc.*, 106 F.R.D. 327, 334 (D.C. Ga. 1984).  Where a report merely provides facts without offering any analytical gloss, that content does not qualify as "factual findings" under Rule 803(8).  *See Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998) (report not "the type of factual investigatory report contemplated by" the rule).

**Third**, portions of the National Commission Report go beyond the purview of the National Commission's authority.  Whether under Rule 803(8)(B) or (C), for a document to be admissible, the authoring body must have authority, either to investigate and report or to record and report.  Without such authority, the report is not admissible under the Rule.  *See*, *e.g., Flannery Properties v. Ron Byrne*, Nos. 98-1122, 98-1134, 2000 WL 781964, at *3 (10th Cir. May 30, 2000).  The National Commission's [m]ission" was: (1) to "examine the relevant facts and circumstances concerning the root causes of the Deepwater Horizon [accident];" (2) to "develop options for guarding against . . . and mitigating the impact of . . . oil spills associated with offshore drilling[.]"  Yet the entire second chapter of the National Commission Report consists of an extended digression on the development of the oil industry.  *See* National Commission Report, at 21-54 (2011).  Throughout the report, there are breakaway sections presenting "Voices from the Gulf."  *See, e.g.*, *Id.* at 163.  This sort of material is well beyond the scope of the National Commission's charge.

**Fourth**, the National Commission Report is replete with instances of double hearsay.  A finding that a report is generally admissible under Rule 803(8) does not exempt the party seeking admission from having to address the double hearsay in that report.  *Dresser v. Ohio Hempery, Inc.*, Civil Action No. 98-2425, 2011 WL 2416595, at *9 (E.D. La. June 13, 2011) ("'hearsay within hearsay' is not admissible unless it falls within a separate hearsay exception") (quoting *Federal Deposit Insurance Corp. v. Mmahat*, 907 F.2d 546, 551 n.6 (5th Cir. 1990)).  Curing these deficiencies would leave little, if any, of the National Commission Report intact – far past the point where its value as relevant evidence would evaporate.  As such, the only appropriate course of action is simply to bar it from evidence in its entirety.

## II.     The Chief Counsel's Report.

The Chief Counsel's Report was made in the absence of either a duty to report or a statutory duty to investigate.  In the absence of statutory authority, courts have made clear that Rule 803(8) will *not* protect reports from the general admissibility prohibition on hearsay.  *See*, *e.g.*, *Flannery Properties v. Ron Byrne*, Nos. 98-1122, 98-1134, 2000 WL 781964, at *3 (10th Cir. May 30, 2000); *Moore*, 2004 WL 2958769 at *5.  Even if the Chief Counsel's Report had been authorized, it is laden with instances of double hearsay and excerpts of inadmissible Joint Investigation materials.   The Chief Counsel's Report contains approximately *150* separate references to Joint Investigation hearing testimony.  *See generally* Chief Counsel's Report, at 262-345 (2011).  Many of these references link to direct quotations from Joint Investigation testimony within the main body of the report.  *See, e.g.*, Chief Counsel's Report, at 51 & n. 88 (2011).  Many others constitute the *sole* supporting reference for the factual statement or finding being espoused.  *See, e.g.*, *Id.* at 69-70 & nn. 13, 16.  Finally, the Chief Counsel's Report is replete with instances of double hearsay.  A representative range includes excerpts from books, *Id.* at 42 & n.11, and private industry reports, *Id.* at 72 & n.21, facts extracted from newspaper publications, *Id.* at 78 & n.47, and direct quotes from private company websites, *Id.* at 249 & n.229.  These smaller segments of double hearsay exist alongside larger double hearsay content, such as where private correspondence between different parties' employees is reproduced in full form.  *Id.* at 84-85.  None of this is admissible under Rule 803(8).

## III.     The Marshall Islands Report

The Republic of the Marshall Islands' report on the *Deepwater Horizon* accident ("Deepwater Horizon Marine Casualty Investigation Report" (hereafter the "RMI Report")) is also not admissible under Rule 803(8).  *First*, portions of the report go beyond the scope of the

RMI Administrator's authority.  The Report mentions on multiple occasions how its discussions of topics ranging from the cause of the "casualty and the subsequent fire and explosion[,]" RMI Report, at 49 & n.461 (2011), to the "regulation and oversight of drilling operations[,]" *Id.* at 53, are beyond the purview of the RMI Administrator's statutory authority.  ***Second***, the anonymous authors of the RMI Report acknowledged inability to gain access to evidence or subpoena witnesses indicates that, in fact, the report was not based on an investigation conducted "pursuant to authority granted by law."  "[T]he [RMI] Administrator was not provided timely access to all of the investigation materials held by the [Joint Investigation] team, nor was [he] provided with a similar ability as the coastal State to follow-up [*sic*] with the questioning of witnesses."  RMI Report, at xv (2011).  In *Osterneck*, a district court confronted the admissibility of a similarly beleaguered "report."  *Osterneck*, 106 F.R.D. 327.  There, plaintiffs sought to introduce under Rule 803(8) a report that had been created by a special commission.  Like the RMI Report, the special commission's report "openly acknowledged" a number of deficiencies with regard to its pedigree.  *Id.*  The court found that the commission's report was inadmissible under Rule 803(8) because it was "not clear whether the [special commission's] [r]eport [was] really one 'made pursuant to authority granted by law.'"  So too here.  The RMI Report is largely a regurgitation of the Joint Investigation and privately commissioned experts.  No "investigation" was ever carried out.  ***Third***, the RMI Report's Annexes B and C contain reports written by private authors.  These reports are, as privately authored documents, fully inadmissible.  *See Lamphere v. Brown University*, 685 F.2d 743 (1st Cir. 1981) (rejecting a report on the grounds that the authoring "panel [is] not [a] public agenc[y], and its members are not public officials" and that, therefore, "[t]heir opinions are … not covered by [Rule] 803(8)[.]"  *Id.  See also Wetherill v. University of Chicago*, 518 F. Supp. 1387, 1389-1390 (N.D. Ill. 1981).  ***Fourth***, the RMI Report

contains extensive references to Joint Investigation materials.  These materials are inadmissible under 46 U.S.C. § 6308.  ***Fifth***, like the other documents discussed above, the RMI Report is replete with instances of double hearsay, none of which are admissible.  There is nothing of substance left of the RMI Report that is admissible, and it should be excluded in its entirety.

## IV.    The CSB Texas City Report

The United States Chemical Safety and Hazard Investigation Board's "Investigation Report: Refinery Explosion and Fire" on the BP Texas City, Texas incident of March 23, 2005 (the "CSB Report") is also not admissible under Rule 803(8).

***First***, the CSB report is barred from evidence by 42 U.S.C. § 7412(r)(6)(G), which provides that "No part of the conclusions, findings, or recommendations of the [Chemical Safety] Board relating to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any matter mentioned in such report."  The statute is clear.  The report cannot be used to prove liability based on the events it concerns.  Yet this is precisely what the PSC seeks to do by admitting the report into evidence.

***Second***, as with other reports that the PSC has sought to have introduced *carte blanche* into these proceedings, the CSB Report is chock full of inadmissible double hearsay.  A small sampling reveals the pervasive problem: there are whole-cloth reproductions of unrelated safety investigations, CSB Report, at 19, 27-28 (2007), excerpts from by-now outdated BP internal company documents, *Id.* at 44 & n.24, wholly un-sourced direct quotations from alleged "expert[s]," *Id.* at 71, and quotations from field books of uncertain stature or relevance, *Id.*, at 95.

***Third***, significant portions of the CSB Report fail to qualify as "factual findings[,]" but instead merely report the determinations of private parties.  For the contents of a report to constitute "factual findings resulting from an investigation" they must embody the results of some sort of "evaluative process."  *D'Anjou*, 16 F.3d at 610; *Crawford*, 952 F. Supp. 1467, 1472.

Mere summaries or glosses on facts found elsewhere do not satisfy this standard.  *E.g.*, *Ariza*, 139 F.3d 132.  In particular, the CSB Report often merely transcribes the contents of some other body's investigative analysis or conclusions or recommendations – turning the CSB Report into a simulacrum of whatever underlying source is being resorted to.  For example, the report spends several paragraphs conveying the contents of a private refinery's study of "safe communication at shift handover[.]"  CSB Report, at 287 (2007).  "Appendix H" of the report consists of "highlights of [a privately commissioned] report" that the CSB procured to gain insight into the "release and explosion consequences" of the Texas City vapor cloud.  *See Id.* at 265 *et seq.* Elsewhere, the report reproduces the contents of a BP internal audit review related to safety issues.  *Id.* at 166.  The findings, conclusions, and recommendations of others ***do not*** become admissible by virtue of their inclusion in a "public" report.  *See Romero-Baldazo*, 1999 WL 824563 at *1.

## V.     Other Documents

***Deferred Prosecution Agreement.***  The PSC seeks to admit a 2007 deferred prosecution agreement ("DPA") between BP and the Department of Justice regarding matters wholly unrelated to these proceedings.  Setting asides the irrelevance of the document, the PSC's efforts to have the DPA admitted through Rule 803(8) are simply wrongheaded.  No precedent supports admitting such an agreement under the Rule for the simple reason that the provision is not meant to address private contractual arrangements between the government and an adverse party.  The Rule is explicit regarding what falls within its ambit: "Records, reports, statements or data compilations" that set forth "the activities of the . . . agency"; "matters observed pursuant to duty imposed by law [and] a duty to report"; or "factual findings resulting from an investigation."  A DPA is none of these things.  Nor can the DPA be construed as a document that sets forth "the activities of the . . . agency," that contains matters observed and then recorded in fulfillment of a duty, or that reports on factual findings generated through investigative efforts.  At most, the DPA

recounts potential allegations the government said it would attempt to prove.  In addition, the DPA contains a series of legal conclusions which are beyond the ambit of Rule 803(8). Documents containing legal conclusions are ***not*** admissible under the rule. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) (discussing cases).    Moreover,  the  DPA fails  the  prerequisite  "trustworthiness"  test  of  Rule  803(8)  because  of  "possible  motivational problems"  in  connection  with  its  genesis.    *Dresser*, 2011 WL 2416595, at *9 (internal quotation omitted).  *See United States v. Central Gulf Lines, Inc.*, 974 F.2d 621, 627 (5th Cir. 1992) (discussing the fourth factor of the trustworthiness inquiry in terms of "possible bias when the reports are prepared in anticipation of litigation" and citing cases).  Finally, the DPA contains significant instances of double hearsay.  *See* DPA, at 45-57 (2007).  Absent an independent basis for each such incorporation, this also renders large swaths of the DPA inadmissible.

***Congressional Hearing Testimony.***  Tony Hayward's June 17, 2010 testimony before the House of Representatives Committee on Energy and Commerce, Subcommittee on Oversight and Investigations (and the Congressional interview of Jeese Gagliano) are inadmissible hearsay not subject to the hearsay exception in Rule 803(8).  The congressional hearing in which Dr. Hayward participated was ***not*** "an investigation" and the discussion in that hearing does ***not*** in any way qualify as "factual findings[.]"  FED. R. EVID. 803(8)(C) (2011).  *See Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 815 (D.D.C. 1987) ("It is one of the most fundamental rules of evidence that . . . testimony [such as that given before the "House Sub[c]ommittee on Crime"] is inadmissible[;] [u]nder no stretch of the imagination could such evidence fit within one of the exceptions to the hearsay rule--least of all [Rule] 803(8)(C) which only applies to a government report of factual findings, not to witness testimony.").  Courts in this district concur, recognizing  that  there  are  inherent  relevance  concerns  that  arise  because  of  the  diffuse,

adversarial, and political nature of congressional hearings, even where, ostensibly, the hearing relates to the matter before the court. *See In re FEMA Trailer Formaldehyde Products Liability Litigation*, MDL No. 07-1873, 2009 WL 2900028, at *1 (E.D. La. Sept. 3, 2009) (granting motion to exclude, among other things, congressional hearing transcripts on grounds that, "[w]hile those inquiries [conducted pursuant to the hearings] might well touch upon matters central to the trial in this matter, they were conducted for various purposes, including review of past policy decisions and future policy formulation and . . . planning"). Indeed, in light of the inherent "political nature" of congressional hearings, courts have not hesitated to find documents generated in the course of congressional hearings inadmissible under Fed. R. Evid. 803(8) for failure to satisfy the provision's trustworthiness requirement. *See Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) ("[T]his [subcommittee] report lacks the trustworthiness necessary to bring [Fed. R. Evid.] 803(8)(C) into play[;] . . . [t]he subcommittee report did not contain factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing."); *Pearce*, 653 F. Supp. at 814 (finding draft congressional report inadmissible for lack of "sufficient trustworthiness" under Fed. R. Evid. 803(8)(C) due to concern that report was not created as part of an objective government investigation and recognizing that, "[g]iven the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under [Fed. R. Evid.] 803(8)(C) against a private party.")[2]

---

[2] The fact that courts in other jurisdictions may have taken judicial notice of publicly accessible hearing transcripts (that is, of matters of "public record") does not indicate whether the documents are admissible into evidence. *See, e.g., Glover v. Wachovia Equity Servicing LLC*, No. 03:11-cv-00210-HU, 2011 WL 3794828, at *4 (D. Or. July 18, 2011) (separating arguments that a document contains "'pure inadmissible hearsay' and [is] '. . . unauthenticated'" from whether it is a "public record"); *Everett v. Cook County*, 704 F. Supp. 2d 794, 803 n.3 ("Taking judicial notice . . . does not, however, mean that the content of the reports is necessarily

***OHSA Fact Sheet.***   The PSC asserts that an informational flyer from the OSHA website qualifies as a public record for admission pursuant to Rule 803(8).  In fact, this flyer lacks any of the basic characteristics required for admission under the Rule.  The OSHA flyer is nothing more than a ***summary*** of BP's alleged failure to comply with a settlement agreement.  *See Ariza*, 139 F.3d at 134 (rejecting application of Rule 803(8) to report that was merely "a summary" and not "the type of factual investigatory report contemplated by [Rule] 803(8)(C)").  The flyer was created solely for informational purposes, not pursuant to any statutory duty to record, investigate, or report.  *See* OSHA Flyer, at 2 ("This Fact Sheet is advisory in nature and informational in content.  It is not a standard or regulation, and it neither creates new legal obligations nor alters existing obligations . . . .").  The flyer merely summarizes pre-existing, pre-established facts, and is intended solely for "advisory" and "informational purposes."  And it does not even purport to present the results of an agency investigation.  "It is the methodology of factual investigation which provides a threshold safeguard against untrustworthiness."  *Ariza*, 139 F.3d at 134.  No such "safeguard" exists here, and thus, the OSHA flyer is inadmissible hearsay.

***Expert Reports and Testimony.***   The extent to which experts may rely on the documents discussed above is a fact-specific inquiry.  Experts are often permitted to rely upon materials that are not admissible into evidence.  Many portions of these documents, however, fail to qualify for the public record exception for reasons, such as, for example, the statutory prohibitions on the use of the Joint Investigation report and the CSB report, that trump the general rule.  BP reserves the right to raise such issues in the appropriate context, including in its motions to exclude or limit expert testimony.

---

admissible for the truth of the matter asserted."); *Natural Resources Defense Council v. Kempthorne*, No. 1:05-CV-01207 OWW GSA, 2009 WL 1119017, at *2 & n.1 (distinguishing between taking "judicial notice on the ground that [the document in question] is a public record" and the admissibility of the document).

Dated:  November 7, 2011

Respectfully submitted,


/s / Don K. Haycraft.


Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &*
*Production Inc. & BP America Production*
*Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of November, 2011.

/s/  Don K. Haycraft