**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| No. 10-2771; No. 10-4536 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

**CONSOLIDATED REPLY IN SUPPORT OF ANADARKO ENTITIES'**
<u>**MOTIONS TO DISMISS CROSS-CLAIMS**</u>

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

      A.    Cross-Claimants' Negligence Claims Against Anadarko Mirror Those Of
            The Plaintiffs And Must Be Dismissed ................................................... 4

      B.    The Contribution And Indemnity Cross-Claims Against Anadarko Must
            Be Dismissed Because Anadarko Has No Fault As A Matter Of Law ................. 5

            1.    Anadarko must be allocated 0% fault under a comparative fault
                  analysis and cannot be liable for contribution ........................... 5

            2.    Contribution claims under OPA are governed by principles of
                  comparative fault ................................................................ 7

            3.    Application of comparative fault principles to OPA contribution
                  claims accords with the language of OPA Section 2709 ................ 9

            4.    Transocean offers no viable alternative to maritime law's rule of
                  comparative fault ............................................................... 10

      C.    The Court's B1 And B3 Orders Dismissing Claims Against Anadarko Are
            Correct And There Is No Basis For Reconsideration ............................. 11

            1.    The Law of the Case Doctrine Bars Halliburton and M-I's
                  Arguments ....................................................................... 11

            2.    In Any Event, Halliburton and M-I's Cross-Claims Fail as a Matter
                  of Law .......................................................................... 13

                  a.    Anadarko owed no direct duty to Halliburton ..................... 13

                  b.    Halliburton's vicarious liability theories fail as a matter of
                        law ...................................................................... 15

                  c.    Halliburton's "negligent entrustment" and "implied
                        authorization" theories of liability fail as a matter of law .......... 16

      D.    Leave to Amend Should be Denied ...................................................... 18

III.  CONCLUSION .................................................................................................. 19

i

**MAY IT PLEASE THE COURT:**

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively, "Anadarko") respectfully submit their Consolidated Reply in Support of the Anadarko Entities' Motions to Dismiss the Cross-Claims against it asserted by Transocean, Halliburton, M-I, and Cameron (the "Cross-Claimants").[1]

## I.
## INTRODUCTION

After Anadarko moved to dismiss these cross-claims, the Court ruled upon Anadarko's motion to dismiss the Amended Master Complaints for Pleading Bundles B1 and B3.  In those rulings, the Court dismissed all maritime negligence claims against Anadarko because, as a non-operating investor in the Macondo Prospect without any operational control, Anadarko owed no duties to third parties and thus breached no duties in connection with the operations on the *Deepwater Horizon* that led to the blowout and oil spill.  The Court held that "Under the JOA, BP was solely responsible for the drilling operations. Any access to information that Anadarko and MOEX may have had did not give rise to a duty to intercede in an independent contractor's operations—especially because Plaintiffs have not alleged in their Complaint that Non-Operating Defendants had access to any information not already available to BP and Transocean personnel either onshore or on the rig."  B1 Order at 28.

---

[1]     In order to preserve judicial and litigant resources, this Reply consolidates into one memorandum Anadarko's responses to the Cross-Claimants' Oppositions to the following pending Motions to Dismiss: Anadarko's Motion to Dismiss Transocean's Cross-Claims in the Limitation Action [Rec. Doc. 2479]; Anadarko's Motion to Dismiss Transocean's Cross-Claims in the United States Case [Rec. Doc. 2924]; Anadarko's Motion to Dismiss the Cross-Claims of Halliburton, Cameron, Dril-Quip, M-I, and Weatherford in the Limitation Action [Rec. Doc. 2927]; Anadarko's Motion to Dismiss the Duplicative Cross-Claims and/or Counterclaims of Cameron International Corporation in all Cases in Which Cameron is Named as a Defendant [Rec. Doc. 3260].  Anadarko also moved to dismiss the cross-claims of Dril-Quip, to the extent Dril-Quip intended to assert any cross-claims against Anadarko. Dril-Quip did not respond to the Motion.  Anadarko has moved for leave to withdraw its Motion to Dismiss the Cross-Claims of Weatherford [Rec. Doc. 4483] and therefore does not respond to Weatherford's Opposition to the Motion to Dismiss.

That holding also controls Anadarko's motions to dismiss the cross-claims against it. Cross-Claimants bring two categories of cross-claims against Anadarko, both of which must be dismissed under the Court's prior Orders. The first are maritime negligence claims that mirror the Plaintiffs' negligence claims that were dismissed by the B1 and B3 Orders. Every Cross-Claimant concedes that these negligence cross-claims must be dismissed under the terms of those Orders.

The second category of cross-claims against Anadarko are claims for contribution and/or indemnity under maritime law or the Oil Pollution Act ("OPA"). The law under both general maritime law and OPA is uniform and well-settled that contribution and indemnity actions are governed by principles of comparative fault. Because, as the B1 and B3 Orders establish, Anadarko owed no duty in connection with operations on the Macondo Prospect, Anadarko cannot bear any fault for the incident and thus cannot be liable for contribution, indemnity, or negligence to any of the Cross-Claimants. It necessarily follows that Anadarko is entitled to a 0% allocation of fault and complete indemnification for any liability owed to the Plaintiffs and that the contribution and indemnity cross-claims against it should be dismissed as a matter of law.

Notably, no Cross-Claimant contests that if the contribution and indemnification claims are governed by comparative fault, then the Court's B1 and B3 orders entitle Anadarko to a 0% allocation and dismissal. Indeed, even Plaintiffs agree that under the B1 Order Anadarko bears no measure of fault for the incident giving rise to their alleged injuries. *See* Plaintiffs' Opposition to Anadarko's Motion *In Limine* Re: Evidence Of Its Knowledge Or Access To Information About Well Design And/Or Operations, [Rec. Doc. 4485] at 2 ("Plaintiffs agree"

that "Anadarko's knowledge is irrelevant to the claims by cross- and counter-claimants for contribution and apportionment of fault").

Halliburton and M-I also concede, as the law makes clear, that maritime law comparative fault principles govern the contribution and indemnity claims.  Only Transocean argues that factors other than comparative fault govern contribution under OPA.  Transocean, however, never offers a coherent alternative and cites no authority whatsoever for its contention, which is belied by every decision to have considered the issue.

Unlike Transocean, Halliburton and M-I accept the inevitable conclusion that the Court's B1 and B3 Orders compel dismissal of all their cross-claims, including those for contribution and indemnification.  However, they refuse to accept the validity of the Court's Orders and convert their response to Anadarko's motion to dismiss into an improper and unfounded attack on the Court's prior holdings.  But they have not shown that reconsideration is appropriate or that the Court's decisions were incorrect.

For these reasons, and those set forth in the motions to dismiss, Anadarko's motions to dismiss the cross-claims against it should be granted in their entirety.  There is no basis for reconsidering this Court's B1 and B3 Orders, and those orders, together with settled law governing contribution and indemnity under both general maritime law and OPA, compel the dismissal of all cross-claims against Anadarko.

## II.
## ARGUMENT

Cross-Claimants have asserted two categories of cross-claims against Anadarko:  claims for maritime negligence and claims for contribution and indemnity under maritime law and

OPA.[2]  This Court's B1 and B3 Orders compel the dismissal of all cross-claims against Anadarko.

**A.      Cross-Claimants' Negligence Claims Against Anadarko Mirror Those Of The Plaintiffs And Must Be Dismissed.**

Because their allegations mirror the Plaintiffs', Transocean, Halliburton and M-I's cross-claims against Anadarko asserting general maritime negligence must fail under the reasoning of the Court's B1 and B3 Orders.  Like the Plaintiffs, these Cross-Claimants contend that Anadarko owed them a duty to intervene in BP's and its contractors' operations to somehow prevent the disaster.  This "theory" is predicated entirely on Anadarko's purported knowledge of, or access to information about, operations on the *Deepwater Horizon* at the Macondo Well. Transocean Cross-Claims [Rec. Doc. 2068] at ¶132; Halliburton Cross-Claims [Lim. Rec. Doc. 445] at ¶50; M-I Cross-Claims [Rec. Doc. 2531] at ¶63-64.  This recycled contention is unavailing, because the Court held in the B1 Order that whatever access to information Anadarko may have had, it gave rise to no duty to the Plaintiffs because Anadarko had no right of operational control over BP or the *Deepwater Horizon*.  B1 Order at 28.  For the same reason, Anadarko owed no duty to these Cross-Claimants, all of which had the same or even more information regarding well operations than the non-operating investors.  Indeed, the Cross-Claimants <u>expressly acknowledge</u> that their negligence cross-claims against Anadarko must be dismissed under the reasoning of the B1 Order.  Halliburton Opposition, [Rec. Doc. 4310] at 3 ("[T]he likely effect of the [B1] Order and Reasons is the dismissal of HESI's Cross-Claims…"); Transocean Opposition [Rec. Doc. 4273] at 3, n. 7 ("Transocean acknowledges that the Court's B1 Order dismissed the fault-based

---

[2]      Transocean also asserts a cross-claim against Anadarko for subrogation under OPA.  Transocean Cross-Claims at ¶86 [Rec. Doc. 2068].  Because Transocean's subrogation claim is the same as its claim for contribution under OPA in that it also requires a showing of fault on the part of Anadarko, it is not separately addressed herein.  *See* Memorandum in Support of Anadarko's Motion to Dismiss Transocean's Cross-Claims in the Limitation Action [Rec. Doc. 2479-1] at 15.

claims against Anadarko…"); M-I Opposition [Rec. Doc. 4322] at 4 ("[T]he Court ruled in the B1 Order that MOEX and Anadarko had no duty that could support a negligence claim, either directly or through vicarious liability.").

**B.     The Contribution And Indemnity Cross-Claims Against Anadarko Must Be Dismissed Because Anadarko Has No Fault As A Matter Of Law.**

All the Cross-Claimants also assert claims for contribution and indemnity against Anadarko.  Those cross-claims fail under the B1 Order because Anadarko owed no duty to the Plaintiffs and therefore bears no fault for the incident.  Because Anadarko is 0% at fault, as a matter of law it cannot be obligated to reimburse any of the Cross-Claimants for future damages they might pay to the Plaintiffs.  Halliburton and M-I concede that because Anadarko owed no duty to the Plaintiffs their claims for contribution and indemnity must be dismissed. Halliburton Opposition, at 3; M-I Opposition at 4.  Only Transocean argues that its contribution claim against Anadarko survives the B1 Order.  TO Opp. at 6.  Transocean is wrong, and all cross-claims for contribution and indemnity must be dismissed.

**1.     Anadarko must be allocated 0% fault under a comparative fault analysis and cannot be liable for contribution.**

Under maritime law, a party is entitled to contribution only in proportion to the negligence or fault of a third party. *Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106, 115 (1974) ("Contribution rests upon a finding of concurrent fault."); *In re Liberty Seafood, Inc.*, 38 F.3d 755, 757 (5th Cir. 1994) (holding that "contribution from the third-party tortfeasor" must be "in proportion to the third-party's fault"); *Adams v. Texaco*, 640 F.2d 618, 621 (5th Cir. 1981) (stating that "a concurrently negligent tortfeasor should proportionately contribute . . . . to the extent occasioned by its fault").  Under the general maritime law, "fault" is defined as a "breach of duty" or negligence. *Grigsby v. Coastal Marine Svc. of Tex. Inc.*, 412 F.2d 1011, 1026 (5th Cir. 1969) ("Fault . . .  may be defined as a breach of duty as well as a want of that degree of care

required in a given case.  It is immaterial whether that duty is imposed by state statute, the common law or the maritime law.  In any case the failure to perform the duty constitutes 'fault.'").

No factors other than fault are relevant to allocation of liability under the general maritime law (or, as discussed below, OPA).  Accordingly, maritime law has long recognized that "non-negligent tortfeasors" — a misnomer for "those defendants on which the law imposes responsibility even though they committed no negligent acts" or breached no duty — cannot be allocated any measure of fault but, rather, must be fully recompensed via indemnity or complete contribution from the persons who are actually at fault.  *See Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 (5th Cir. 1992); *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985) ("a non-negligent or constructively liable tortfeasor" is entitled to complete indemnity "from a co-debtor guilty of actual fault.").

It is therefore hardly anomalous for a strictly liable party like Anadarko to be allocated no fault under comparative fault analysis.  For example, maritime law demands that a ship owner pay maintenance and cure whenever a seaman on his ship is injured.  *See Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1017 (5th Cir. 1994).  When the ship owner has not caused the seaman's injury (and is, in essence, vicariously or constructively liable for the actions of a third-party tortfeasor), the ship owner may seek complete contribution from the actual tortfeasors.  *See Adams v. Texaco, Inc.,* 640 F.2d 618, 620 (5th Cir. 1981) (the underlying rationale for granting the ship owner indemnity "is that the burden of maintenance and cure should be borne by the tortfeasor, not an innocent ship owner"); *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 722 (5th Cir. 1980) ("a seaman's innocent employer is entitled to reimbursement from a third

party for maintenance and cure payments made necessary by the third party's negligence.").[3] Courts do not consider the ship owner's non-negligent conduct before deciding how much contribution he is entitled to because non-negligent conduct is irrelevant to allocating fault. By the same token, third-party tortfeasors cannot maintain contribution actions against the innocent ship owner who is, by definition, faultless.

A leaseholder's strict liability under OPA is indistinguishable from a ship owner's strict liability to pay maintenance and cure. Both systems are in place to provide immediate assistance to the injured party, and both are entirely divorced from fault. Just as a ship owner's status as a strictly liable "non-negligent tortfeasor" is immaterial to contribution claims (and associated allocation of fault) in maintenance and cure cases, whether Anadarko is a strictly liable responsible party under OPA is irrelevant to the allocation of fault in OPA contribution actions.

The Court has already held that Anadarko owed no duty to third parties in connection with the operations on the Macondo Prospect, B1 Order at 28, and therefore cannot have breached any duty and cannot be found to bear any percentage of fault for the incident. Accordingly, all cross-claims for contribution or indemnity against Anadarko must be dismissed.

## 2. Contribution claims under OPA are governed by principles of comparative fault.

OPA authorizes contribution claims against other parties liable for an oil spill under OPA or "under any other law." 33 U.S.C. §2709 ("A person may bring a civil action for contribution

---

[3]      The same rules apply in analogous non-maritime cases. *See, e.g., Dusenbery v. McMoran Exploration Co.*, 458 So. 2d 102, 105 (La. 1984) ("When liability to the injured party is imposed on one party on the basis of strict liability only and on a second party on the basis of negligence or actual fault, the strict liability defendant may recover full indemnity by incidental demand against the party actually at fault."). In *Dusenbery*, an oil field worker was killed in an oil well pressure explosion. His survivors brought a wrongful death action against the owners of the well under Louisiana strict liability theories of recovery. The defendant owners of the well filed a third party demand for indemnification against the oil field contractor whose employees' negligence caused the accident. The Louisiana Supreme Court held that the well owners, though strictly liable to the plaintiff by statute, were entitled to complete indemnity from the oilfield contractor who was actually at fault for the accident. It was irrelevant to the allocation of fault that the Louisiana statute made the well owners strictly liable to the plaintiff in the first instance.

against any other person who is liable or potentially liable under this Act or any other law."). Beyond identifying *who* may be sued in an OPA contribution action, Section 2709 is silent as to *how* liability should be allocated in Section 2709 contribution actions.

As this Court has held, general maritime law fills gaps in OPA. *See* B1 Order at 26 (holding that because OPA is silent with respect to claims against non-responsible parties, maritime law provides a remedy).  Liability in maritime contribution cases is allocated in proportion to fault.  *See U.S. v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975).  OPA, accordingly, incorporates the rule that "principles of comparative fault" are used in allocating damages "in all maritime cases."  Schoenbaum, Admiralty and Maritime Law § 5-18.  (emphasis added).

Every court to address contribution claims under OPA has looked to maritime law's rule of comparative fault.  *See U.S. v. Egan Marine Corp.*, No. 08 C 3160, 2011 WL 3489811, at *10 (N.D. Ill., Aug. 9, 2011) (applying maritime law to adjudicate OPA contribution claim and accordingly dismissing contribution claim against party who breached no duty and did not cause accident); *In re Alex C Corp.*, Civil Action Nos. 00-12500-DPW, 01-12186-DPW, 2010 WL 4292328, at *15 (D. Mass., Nov. 1, 2010) (allocating damages in an OPA contribution case in proportion to fault under maritime law); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, (E.D. Va. 1996) (applying maritime rule of comparative fault to adjudicate OPA contribution claim), *aff'd* 122 F.3d 1062 (4th Cir. 1997), *cert. denied*  523 U.S. 1021 (1998); *see also Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Haw. 2009) (noting as consideration in OPA contribution claim that maritime contribution is calculated by proportion of fault); *Marathon Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996) (same).  A leading treatise on maritime law likewise

concludes that, "under OPA . . the responsible party . . . will be able to recover over against third parties . . . through contribution according to principles of comparative fault." Schoenbaum, Admiralty and Maritime Law § 18-2 n.26.

### 3. Application of comparative fault principles to OPA contribution claims accords with the language of OPA Section 2709.

Transocean contends that applying maritime law's principles of comparative fault to OPA contribution claims would render the words "this Act" in Section 2709 superfluous.[4] *See* Transocean Opp. at 7.  That contention is meritless.  Section 2709 identifies two classes of persons who may be sued for contribution under OPA:  persons liable for a spill "under this Act" and persons liable for the spill under "any other law."  In light of the B1 Order, it is clear that the two classes do not overlap; a responsible party liable for spill damages under OPA ("this Act") is not liable for the same under general maritime law ("any other law").  B1 Order at 26 (holding that "claimants' maritime causes of action against a Responsible Party are displaced by OPA").  The words "this Act," then, are necessary for a Section 2709 contribution action to be maintained against responsible parties under OPA; without those words, no responsible party could be sued for contribution under Section 2709.  The words are not rendered superfluous simply because, in *one* particular case, the principles for allocating fault indicate that *one* particular responsible party cannot be liable for contribution.  The words still do work because, in the same case, another responsible party may be allocated fault and because, in a different case, all responsible parties may be partially at fault.

---

[4]     Cameron simply asserts without argument or elaboration that because Anadarko is alleged to be a responsible party under OPA,  Cameron's cross-claim for contribution survives the B1 Order.  Cameron Opp. at 2.  That *ipse dixit* is belied by the long list of cases making clear that comparative fault governs OPA contribution claims, even though OPA liability is strict.

**4.  Transocean offers no viable alternative to maritime law's rule of comparative fault.**

Transocean's reading of Section 2709 is flawed.  Transocean contends that the three words "under this Act," by themselves, create an entirely new form of contribution action governed by something other than comparative fault.  Transocean Opp. at 7.  But there is no need or authority to invent a new method of resolving contribution claims under OPA.  Congress specifically provided that OPA does not alter existing maritime law except as otherwise provided in the Act.  33 U.S.C. § 2751(e).  Nothing in OPA suggests that the Court can or should abandon the prevailing maritime rule of comparative fault in adjudicating claims for contribution under OPA.

Transocean cites no authority for its contention that contribution claims under OPA turn on something other than fault.  *See* Transocean Opp. at 5.  Instead, Transocean contrives three hypothetical cases from which it concludes that some factors other than fault must be relevant to contribution actions under Section 2709.  None works.

The first two hypothetical cases posit circumstances where oil is spilled but no responsible party is at fault; Transocean suggests that the responsible parties' ownership interests or the volumes of oil spilled would influence allocation.  *Id.*  But by definition, when no responsible party is at fault for a spill, the spill must be either an act of God (which absolves all responsible parties of strict liability and requires the Fund to pay claimants) or the fault of a third party (in which case, the responsible parties either are absolved of strict liability or can seek complete contribution from the third party).  *See* 33 U.S.C. §§ 2703(a)(1), (a)(3); *see also Simmons v. Berglin*, 401 Fed. Appx. 903, 906 (5th Cir. 2010) (applying maritime law's "act of God" defense, "the test for determining whether [a party] is free from fault is whether [she] took reasonable precautions under the circumstances as known or reasonably to be anticipated.  If [she

10

was] reasonable in [her] anticipation of the severity of the impending storm and undertook reasonable preparations in light of such anticipation, then [she is] relieved of liability.").

In Transocean's third hypothetical, the relative fault of the responsible parties is disputed. But a dispute about relative fault is certainly not a reason for the fact-finder to abandon the fault analysis. Instead, the fact-finder resolves the dispute, determines fault, and allocates liability accordingly.

## C.   The Court's B1 And B3 Orders Dismissing Claims Against Anadarko Are Correct And There Is No Basis For Reconsideration.

Because the B1 Order defeats their cross-claims against Anadarko, Halliburton and M-I improperly use their responses to Anadarko's motions to dismiss to attack the Court's B1 Order, specifically, the Court's holding that Anadarko owed no duty in connection with operations on the Macondo Prospect, and that Anadarko is not liable under a direct or vicarious theory of liability. Halliburton Opp. at 19, n. 18; M-I Opp. at 4, n. 3. Halliburton and M-I offer no good reason to reconsider that correct holding.

### 1.   The Law of the Case Doctrine Bars Halliburton and M-I's Arguments.

Absent extraordinary circumstances warranting reconsideration, the B1 Order is law of the case; it will continue to govern the same issues throughout subsequent stages of this case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *see also North Mississippi Communications, Inc. v. Jones*, 951 F.2d 652 (5th Cir. 1992) (the law of the case should be followed unless doing so would work a "manifest injustice").[5]   Significantly, the

---

[5]      Halliburton argues that B1 Order was premature because the question of Anadarko's control is not one to be decided on the pleadings. *See* Halliburton Opp. at 9. Halliburton's argument flies in the face of settled practice. "[W]here facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted." *Stockman v. Flotek Industries, Inc.*, Civil Action No. H–09–2526, 2010 WL 3785586, at *2 (S. D. Tex., Sept. 29, 2010). "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 738 (S. D. Tex. 1998). It is noteworthy that,

Court's holding that Anadarko owed no duty in connection with operations on the Macondo Prospect was not without consequence. The Court dismissed with prejudice all general maritime law claims the B1 and B3 plaintiffs brought against Anadarko. Not even the plaintiffs who lost their claims filed for reconsideration after the B1 Order. Rather, ***Plaintiffs agree*** that under the B1 Order Anadarko bears ***no measure of fault*** for the incident giving rise to their alleged injuries and cannot be liable to the Cross-Claimants for contribution. *See* Plaintiffs' Opposition to Anadarko's Motion *In Limine* [Rec. Doc. 4485] at 2.

Nevertheless, in order to prevent their substantially identical cross-claims (based on substantially identical allegations) from suffering the same fate, Halliburton and M-I ask the Court to reconsider its prior Order. Halliburton Opp. at 19, n. 18; M-I Opp. at 4, n. 3. A motion for reconsideration is treated like a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). *See Nationwide Mut. Fire Ins. Co. v. Pham*, 193 F.R.D. 493 (S.D. Miss. 2000); *see also Mangieri v. Clifton*, 29 F.3d 1012, 1015 n. 5 (5th Cir.1994). "Courts in this district hold that a moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law." *Motiva Enterprises LLC v. Wegmann*, No. CIV. A. 00–3096, 2001 WL 246414, at *2 (E.D. La., March 12, 2001) (Vance, J.); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). A motion for reconsideration may not be used to relitigate old matters, raise arguments, or present evidence that could have been raised earlier. *Rosenzweig*

---

while Halliburton argues that the issue of operational control should be decided at the summary judgment stage, Phase One discovery in this case is all but completed and yet Halliburton points to <u>no record evidence</u> that it contends supports a finding that Anadarko exercised operational control.

*v. Azurix Corp*., 332 F.3d 854, 863 (5th Cir. 2003); *Simon v. United* States, 891 F.2d 1154, 1159 (5th Cir. 1990).

None of those threshold requirements is present.  Neither Halliburton nor M-I point to any new allegation of fact that the Court has not previously considered.  Halliburton and M-I do not identify an intervening change in the law or a recent decision supporting their theories; indeed, like the Plaintiffs, neither Halliburton nor M-I identify any *old* case from any jurisdiction where a non-operating interest owner in a mineral lease was held liable in tort for injuries to third parties.  Neither Halliburton nor M-I point to any evidence that has come to light in Phase One discovery that would make their claims plausible.  The Court, accordingly, should reject Halliburton and M-I's implicit -- and improper -- motions for reconsideration.

### 2. In Any Event, Halliburton and M-I's Cross-Claims Fail as a Matter of Law.

#### a. Anadarko owed no direct duty to Halliburton.

On the assumption that the Court will at least entertain reconsideration, Halliburton principally argues that Anadarko owed a duty to Halliburton that Halliburton can enforce in tort.[6]

The contention that Anadarko owed Halliburton a duty in connection with the operations on the Macondo Prospect is implausible in the extreme.  Halliburton alleges that Anadarko "knew or should have known" of the entry of hydrocarbons into the well because Anadarko had a contractual right of access to certain data from the well, and that Anadarko thus owed a duty to Halliburton warn the rig crew of an imminent disaster.  Yet, as Halliburton concedes, all of the data from the well was provided by Halliburton over Halliburton's proprietary systems.  Halliburton Opp. at 7, n. 9.  Further, Halliburton, through its subsidiary Sperry-Sun, undertook a contractual obligation to constantly monitor that data for the specific purpose of detecting kicks

---

[6]     Because M-I makes the same basic allegations and arguments as Halliburton (though in less detail) its arguments are necessarily encompassed by Anadarko's responses to Halliburton, and in the interest of avoiding duplicative argument only Halliburton's specific contentions are addressed.

and preventing a blowout. If Anadarko "knew or should have known" of the entry of hydrocarbons into the well, it could only be because <u>Halliburton</u> should have known that fact first.

In essence, Halliburton argues that Anadarko owed Halliburton a duty to perform Halliburton's job of constantly monitoring well conditions in order to ensure that Halliburton's cement job successfully sealed the well. The law does not exculpate Halliburton and impose such a duty on Anadarko. Rather, a leaseholder owes no duty to warn independent contractors of hazardous conditions on the leased property, especially when the independent contractors "know or should know of the existence of a particular condition and [] appreciate or should appreciate its dangers." *Gulf Oil Corp. v. Bivins*, 276 F.2d 753, 756 (5th Cir. 1960) (premises liability); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) ("[T]here is no duty on the owner to warn the employees of the contractor if they are already fully aware of the danger") (negligence). The Court ruled in the B1 Order that Anadarko owed no duty to Plaintiffs because the Plaintiffs did not allege that Anadarko had access to information that was not also available to BP or Transocean. B1 Order at 28. That ruling holds even greater force with respect to Halliburton: because Anadarko owed no duty of care to Halliburton, all of Halliburton's direct negligence theories, including its "negligent entrustment" (or "negligent hiring") theories fail utterly.

The legal basis of Halliburton's argument also fails as a matter of law. Contrary to the B1 Order, Halliburton argues that *Ainsworth v. Shell*, 829 F.2d 548 (5th Cir. 1987) and its progeny are inapplicable "personal injury cases standing for the principle that a party is not liable for the negligence of independent contractor absent some form of operational control over the activities of the contractor." Halliburton Opp. at 6. Halliburton notes that none of the *Ainsworth*

cases "deal[s] with the relationship between an operator and non-operating lessees," but that distinction is no help to Halliburton.  If anything, *Ainsworth* is an overgenerous standard to apply to Halliburton's claims, because it focuses on <u>operators</u> rather than <u>non-operating</u> investors like Anadarko.  *Ainsworth* holds that unless an operator retains a right of operational control, the operator owes no duty to intervene to prevent an accident — even when it has a company representative present at a site and has actual knowledge of dangerous conditions.  The same conclusion follows *a fortiori* for a <u>non-operator</u> hundreds of miles away from the accident. Halliburton's effort to evade *Ainsworth* must be rejected.

> **b.    Halliburton's vicarious liability theories fail as a matter of law.**

Like the Local Government Entity Plaintiffs and the State of Alabama,[7] Halliburton also seeks to circumvent *Ainsworth* by contending that Anadarko is vicariously liable for BP's conduct on the leased property.  *See* Halliburton Opp. at 15.  Because Halliburton's vicarious liability theory has been previously argued, it can be dispensed with readily.

First, as Halliburton concedes, it does not allege a critical fact — the existence of a joint venture between Anadarko and BP.  Halliburton Opp. at 15, n. 14.   Of course, even if Halliburton had included the necessary allegations, its joint venture theory would fail because, as the Operating Agreement proves, Anadarko had no right of operational control over the activities on the Macondo Prospect. *See Ferry v. Deeper Life Christian Church*, *Inc. of Tampa, Fla*., No. 99-2955, 2002 WL 1974112, at *2 (E.D. La., Aug. 27, 2002) (*citing Aupied v. Joudeh*, 694 So.2d 1012, 1014 (La. App. 5 Cir. 1997)) (emphasis in original) ("Imputation of negligence of one person, or entity, to another is allowed only when there exists between them some relation . . .

---

[7]    *See* Consolidated Reply in Support of Motions of Anadarko Petroleum Corporation and Anadarko E&P Company LP to Dismiss the Amended Complaints of the State of Alabama, the State of Louisiana, and the Voluntary Local Government Entity Master Complaint ["Bundle C"] [Rec. Doc. 3582] at 30-32.

invoking the principles of agency, or . . . the person to whom the negligence is imputed must have had a legal right to control the action of the person who was actually negligent."). "Absent factual support of such control, vicarious liability cannot be imposed." *Id.* (*citing Eckler v. Gen. Council of the Assemblies of God*, 784 S.W.2d 935, 939 (Tex. App. 1990)).  Accordingly, even under a "joint venture" theory of vicarious liability, Halliburton cannot avoid the rule of *Ainsworth* that one who lacks control cannot be held liable for injuries resulting from the operation—either directly or indirectly.  *See Dupre v. Chevron U.S.A., Inc.,*, 913 F. Supp. 473, 483 (E.D. La. 1996) (holding that there is "no practical difference" between vicarious and direct liability theories under cases governed by *Ainsworth*), *aff'd per curiam*, 109 F.3d 230 (5th Cir. 1997).

Halliburton's contention that the designation of operator form required by the MMS is evidence of a joint venture relationship is wrong.  Halliburton Opp. at 15.  The designation of operator form expressly invests BP and BP alone with all authority and control over the operations on the leased property.  If anything, it is evidence that no joint venture existed.

Halliburton's reliance on *Shell Oil Co. v. Prestidge*, 249 F.2d 413 (9th Cir. 1957) is also misplaced.  In that case, it was alleged and proven that both parties to the operating agreement, Shell and Rocky Mountain, actually performed operations at the well-site and jointly exercised actual control over drilling operations.  *Id.* at 415.  Even in its brief, Halliburton does not contend that Anadarko was involved in or had any control over drilling operations on the Macondo Prospect.

          **c.**     **Halliburton's "negligent entrustment" and "implied authorization" theories of liability fail as a matter of law.**

In a last ditch effort to circumvent *Ainsworth*, Halliburton advances two theories of liability that it contends were not considered in the B1 Motion to Dismiss briefing: (a) that

Anadarko is liable because it "negligently entrusted" BP to make decisions relative to the lease and the *Deepwater Horizon*; and (b) that Anadarko implicitly authorized BP's unsafe practices. Halliburton Opp. at 13; 12.  Both flawed theories fail for the same reason that all other attempts to impose tort liability on Anadarko in this case fail: both require that Anadarko have had control over the operation, instrumentality, or chattel that allegedly caused harm.

First, Halliburton does not assert a *prima facie* negligent entrustment claim.[8]  "Negligent entrustment liability will be imposed when one who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Restatement (Second) of Torts § 390.  "[T]he most critical consideration in a claim for negligent entrustment is the issue of right of control."  *Savage v. LaGrange*, 815 So.2d 485 (Miss. App. 2002) (emphasis added).  "In general, the doctrine of negligent entrustment requires that the defendant have a greater right of possession or control of the chattel than the person to whom he or she entrusts it." 57A Am. Jur. 2d Negligence § 321; *see also Garcia v. Cross*, 27 S.W.3d 152 (Tex. App. 2000) (holding that to be liable for negligent entrustment one must have control over the thing entrusted).  Anadarko is not alleged to have supplied any chattel to BP.  Furthermore, no

---

[8]     It is not entirely clear from Halliburton's brief whether it intends to assert a "negligent entrustment" theory of liability or a "negligent hiring" theory of liability. Halliburton Opp. at 13.  To the extent Halliburton intended a "negligent hiring" theory, it fails for much the same reasons.  Halliburton fails to allege even the *prima facie* elements of a "negligent hiring" claim.  *See* Restatement (Second) of Torts § 411 (1965); *see also Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1033 (1977) (dismissing claim of employee of independent contractor against principal because he was not a "third person" under Restatement § 411) *rehear. denied* 564 F.2d 97 (1977).  Moreover, given BP's controlling 65% interest in the lease relative to the 25% interest that it later assigned to Anadarko after it had already begun drilling operations, Halliburton's contention that Anadarko "entrusted" or "hired" BP to conduct operations is implausible on its face.  Halliburton Cross-Claims at ¶¶ 11-12; 50.

party alleges that Anadarko retained or exercised operational control, or had any ownership or other interest, in the *Deepwater Horizon*.  According to Halliburton's own allegations, whatever limited possessory or control rights Anadarko may have had with respect to the operations on the Macondo Prospect, they were far exceeded by BP's sole authority and control over the operations on the leasehold.  Halliburton's "negligent entrustment" gambit must be rejected.

Second, Halliburton misstates the law by contending that the "implied authorization" theory of liability is somehow different or separate from the "operational control" exception to the ordinary rule that a principal is not liable for the torts of an independent contractor. Halliburton Opp. at 12. "Operational control" and "implied authorization" are two sides of the same coin: "[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable under the operational control exception." *Coulter v. Texaco*, 117 F.3d 909, 912 (5th Cir. 1997).  Because Anadarko did not retain a right of operational control, Anadarko could not, and did not, either expressly or implicitly, order BP to undertake any unsafe activity.  *See, e.g., Martin v. Pride Offshore Co.,* No. CIV.A. 97–3754, 1999 WL 4921, at *4 (E. D. La., Jan. 6, 1999), *aff'd per curiam* 198 F.3d 241 (5th Cir. 1999) (rejecting operational control liability theory against rig operator because there was no implied authorization of unsafe practice evidenced by invoices or reports of operations).  Halliburton erroneously argues that an implied authorization can be inferred entirely from Anadarko's "unfettered access to information" about operations. Halliburton Opp. at 13.  This contention is squarely at odds with *Ainsworth*, and courts have accordingly rejected it.  *See, e.g., Ransom v. Panaco, Inc.*, 28 F.Supp.2d 1009, 1013 (E.D. La., 1998) (holding that under *Ainsworth* "[e]ven if [owner] had been made aware of [contractor's] plans and had observed the operations, such actions would not amount to express or implied authorization.").

18

**D.     Leave to Amend Should be Denied.**

Recognizing that their cross-claims are both foreclosed by the B1 Order and fail on their own merits, Halliburton, Cameron, and M-I seek leave to amend their complaints.  Halliburton Opp. at 15. n. 14; Cameron Opp. at 3; M-I Opp. at 8.  Anadarko will be greatly prejudiced if their requests are granted at this advanced stage of the case and under these circumstances.  Phase One fact discovery is completed, and that very complex and demanding Phase of the case is going to trial in less than four months.  Anadarko has no further opportunity to undertake additional discovery to defend against new claims.  More importantly, any amendments would be futile.  Cross-Claimants' new legal theories lack merit (as shown above).  They also have not identified any evidence in the ample discovery record that would support allegations sufficient to state a plausible claim against Anadarko under any of their various theories of liability.

**III.**
**CONCLUSION**

For all the reasons set forth herein, the cross-claims of Transocean, Halliburton, Cameron and M-I against Anadarko under the general maritime law and the Oil Pollution Act must be dismissed for failure to state a claim for which relief can be granted.

Respectfully submitted,

DATED: November 7, 2011            BINGHAM McCUTCHEN LLP


/s/ *Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com

Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of November, 2011.

_/s/ Ky E. Kirby_

Ky. E. Kirby