# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## TRANSOCEAN'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE BLANKET INTRODUCTION OF THE NATIONAL COMMISSION AND CHIEF COUNSEL REPORTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling Inc.; Transocean Holdings LLC; Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively, "Transocean") and file this their Memorandum in Support of Motion in Limine to preclude from the February 27, 2012 trial of liability, limitation, exoneration and fault allocation the blanket introduction into evidence of the entire Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling (Trial Exhibit 06300), and/or its companion, the Chief Counsel's Report (Trial Exhibit 00986) (collectively "the Reports").  This memorandum also serves as Transocean's response to the PSC's letter to the Court dated October 17, 2011 regarding "Public Records," in which the PSC *inter alia* seeks a ruling that the Reports are admissible in their entirety as public records under Fed. R. Evid. 803(8).  [Dkt. 4340-2.]  The Reports should not be admitted in their entirety because they do not satisfy the criteria set forth in Rule 803(8).

A.      <u>The Reports</u>

Under Rule 803(8), the document in question is inadmissible if "the sources of information or other circumstances indicate lack of trustworthiness." The circumstances under which the Reports were generated – including a strict six-month time limit on producing the reports – show a lack of trustworthiness.

The Reports were produced by an *ad hoc* presidential commission and a general counsel's staff with no expertise in the subject matter of the Reports. Furthermore, the Reports were produced under a strict six-month time limit. Consequently, as the Reports acknowledge, they were completed before all relevant evidence was developed. The Chief Counsel's Report states that it was produced at the request of the Presidential Commission: "Given the factual and technical complexity of some of the underlying causes of the blowout, the Commission asked the Chief Counsel team to issue a separate Chief Counsel's Report setting forth in greater detail their findings and conclusions … ." (Chief Counsel's Report at 1.) The causes of the accident in question are indeed highly technical and complex. Inherently, those causes cannot be determined absent a complete investigation.

The Reports on their face show they were produced before there was a complete examination of all the evidence. For example, the Reports were produced before an examination of a key piece of evidence in the case, the blowout preventer (BOP), was complete: "The Chief Counsel's team cannot offer any final conclusions regarding whether and to what extent the Macondo well's blowout preventer (BOP) failed." (Chief Counsel's Report at 2.) Another example of the incompleteness of the Chief Counsel's Report concerns another key issue, the flow path. Chapter 4.1 of the Chief Counsel's Report, which examines that key issue, begins by offering a potential flow path, through the production casing, but then states, "However, the

2

Chief Counsel's team cannot rule out the possibility that hydrocarbons may have entered the production casing from the annulus through a breach in the production casing somewhere near the bottom of the casing." (Chief Counsel's Report at 39.)  That statement is immediately followed by:  "The analysis in this section reflects information currently available to the Chief Counsel's team.  The team recognizes that various parties continue to gather additional information that may be relevant to flow path analysis." (*Id.*)

The Presidential Commission Report itself candidly admits it is incomplete:  "While we took a broad view of the spill, it could not be exhaustive.  There is still much we do not know— for instance, the blowout preventer, the last line of defense against loss of well control, is still being analyzed[.]"  (Presidential Comm'n Report at xi.)  The effect of the six-month time limit was acknowledged in the Report:  "The understandable, immediate need to provide answers and concrete suggestions trumped the benefits of a longer, more comprehensive investigation."  *Id.*

The Reports are patently incomplete and are, therefore, unreliable.  The opinions expressed therein are equally unreliable, because they are not based on the whole evidence now available, which has been produced over many months following the Reports.

Even in the landmark decision of  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), where the Supreme Court considered whether the trial court had properly admitted part of an investigative report, the trial court refused to admit another part of the report because it was "'nothing but a possible scenario.'"  *Id.* at 159.  In *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1310 (5th Cir. 1991), the court affirmed the exclusion of a government report where a "key player" was not interviewed.  Here, a key piece of evidence, the BOP, was not part of the Reports, and the evidence overall was still in the developmental stage.  Reports made on incomplete facts are not trustworthy.  *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 623

3

(8th Cir. 1986) (trooper's failure to determine whether tire and gouge marks were made before or after impact and trooper's other omissions made conclusions about accident speculative and untrustworthy).

In short, the Report of the Presidential Commission and the Chief Counsel's Report are based on incomplete evidence and, as a result, are highly speculative and unreliable. The Reports and their conclusions should not be admitted into evidence in their entirety, as the PSC requests. Whether any part, or parts, of the Reports satisfy the trustworthiness criteria of Rule 803(8) should be assessed in context if and when a party moves for admission of a specific excerpt. Only then could the Court fairly evaluate whether the excerpt provides trustworthy support for the proposition at issue.

And even to the extent that parts of the reports are ultimately admitted, the timing and limited record before the Commission should be considered with respect to the weight to be given to the conclusions in the Reports. This Court, with the benefit of many more months of testimony, fully tested by cross-examination from parties of various and competing interests, plus substantial additional investigation and expert assistance, will have a much more comprehensive record from which to draw conclusions than did the National Commission or Chief Counsel.

  B. <u>Congressional Testimony of Tony Hayward and Other Prior Testimony</u>

The PSC's October 17 letter also seeks the admission, as a "public record" under Rule 803(8), of Congressional testimony given by BP's then CEO, Tony Hayward. [Dkt. 4340-2 at 3.] While the testimony may be admissible against BP to the extent it contains party admissions or prior inconsistent statements, it is plainly not admissible against Transocean. The same is true of any testimony before the Presidential Commission – although such testimony might in

4

appropriate circumstances be admitted against the individual or party testifying, the testimony, as hearsay, cannot be admitted for the truth of what is stated as to other parties. None of the cases cited by the PSC stands for the proposition that prior testimony by a witness before Congress or some other public agency can be used as a "public record" in a subsequent litigation for the truth of what is stated as to all parties. Instead, the cases stand at most for the proposition that the public record establishes that the testimony was given. The use of the testimony in a subsequent hearing on the merits would depend on other relevant rules of evidence.

  C. <u>Conclusion</u>

For the foregoing reasons, Transocean respectfully requests that the Court reject the PSC's requests (1) that the Reports be admitted in their entirety and (2) that the Congressional testimony of Tony Hayward be admitted as to parties other than BP.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

5

        601 Poydras Street, Suite 1700
        New Orleans, Louisiana 70130
        Telephone: (504) 581-6062
        Facsimile: (504) 522-9129
        Email: egp@preisroy.com, rjh@preisroy.com

        -and-

        By:   /s/ Brad D. Brian
        Brad D. Brian (California, No. 79001)
        Allen M. Katz (California, No. 54933)
        Munger Tolles & Olson LLP
        355 South Grand Avenue, 35th Floor
        Los Angeles, California 90071
        Telephone: (213) 683-9100
        Facsimile: (213) 683-5180, (213) 683-4018
        Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

        *Counsel for Triton Asset Leasing GmbH,*
        *Transocean Holdings LLC, Transocean*
        *Offshore Deepwater Drilling Inc. and*
        *Transocean Deepwater Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2011, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller
KERRY J. MILLER