UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| Applies to:   All Cases | | |

### HESI'S BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE JIT REPORT OF INVESTIGATION

Halliburton Energy Services, Inc. ("HESI") asks this Court to exclude from evidence the entire Report of Investigation of the Joint Investigation Team (the "JIT Report"), as referenced in the PSC's letter of October 17, 2011. Rec. doc. 4340 (the "PSC Ltr."). HESI disputes the wholesale admissibility of the JIT Report as follows.

**I.   Coast Guard Marine Casualty Reports are Inadmissible.**

By clear statutory language a marine casualty investigation report ("MCIR") such as the JIT Report is not admissible in litigation:

> Notwithstanding any other provision of law, *no part* of a report of a marine casualty investigation conducted under section 6301 of this title, *including* findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C.A. § 6308 (emphasis added). *See also Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 658 (E.D. La. 2002) (citing 46 U.S.C. § 6308); *Bean Dredging, LLC v. United States*, 699 F. Supp. 2d 118 (D.D.C. 2010) (same). The statutory language is unequivocal. "No part" of an

MCIR is admissible as evidence in civil proceedings. By inserting the word "including" before the terms "findings of fact, opinions, recommendations, deliberations, or conclusions," the statute provides a *non-exclusive* list of items in a report that are not admissible.

### A. Photographs and other materials contained in MCIRs are not admissible.

The PSC cites one case for the proposition that MCIR materials that do not constitute "findings of fact, opinions, recommendations, deliberations, or conclusions" are admissible. PSC Ltr. at 2 (citing *In re Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783, 785 (E.D. La. 2003) (Porteous, J.)). In *Danos & Curole*, the photos in the MCIR at issue were of running light wiring that was subsequently stripped from the vessel. Different wiring was substituted, "materially altering the condition and appearance of the wiring" which was the subject of the MCIR. Because the original wiring was never recovered, and no other evidence of the unaltered wiring existed, the photos were allowed into evidence to demonstrate the condition of the wiring at the time the pictures were taken. 278 F. Supp. 2d at 785. *Danos & Curole* does not apply to this proceeding because there is no allegation that any evidence examined by the JIT was altered.

*Danos & Curole'*s holding was rejected in *Bruce Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Ma. 2005). Citing this Court's more recent opinion in *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. 03-1230, 2004 U.S. Dist. LEXIS 6900, at *3 (E.D. La. April 20, 2004), the *Bruce Falconer* court held that photographs and notes taken by a Coast Guard investigator were inadmissible because "the language of the statute is clear and must control." *Bruce Falconer*, 397 F. Supp. 2d at 70.

To make admissibility exceptions for portions of a report under the theory that they are not the "type of conclusory items" described in the statute's illustrative list ("findings of fact, opinions, recommendations, deliberations, or conclusions") is to read exceptions into the statute

that Congress did not intend or state.  *See Baker Hughes Oilfield Operations, Inc*., 2004 LEXIS 6900 at *3 ("The Court intends to enforce 46 U.S.C. § 6308(a) by striking any portion of the Coast Guard report, however it may be presented.").  Section 6308(a) is illustrative and not exclusive.  Consequently, no portion of the JIT Report is admissible.

### B. Volume II of the JIT Report is Not Admissible.

The PSC argues that Volume II of the JIT Report, the "BOEMRE Report," is not a "marine casualty investigation report" and, thus, is admissible.  *See* PSC Ltr at 3.  Because Volume II is an integral part of the JIT Report, it is not admissible pursuant to 46 U.S.C. § 6308.  The JIT was created by Department of the Interior and Department of Homeland Security pursuant to a Statement of Principles and Convening Order (the "Convening Order," attached as Exhibit 1).  The Convening Order specifies that the Joint Investigation will be conducted pursuant to 46 U.S.C. §§ 6301 *et seq*., among other statutes, and 46 C.F.R. Part 4, among other regulations. Exhibit 1 ¶¶ 3-4; *see also* 33 C.F.R. § 140.203 (investigations of accidents arising from outer continental shelf activities shall follow the procedures of 46 C.F.R. Part 4).  As discussed above, § 6308 provides that *no part* of a report of a marine casualty investigation conducted under § 6301 is admissible as evidence.  A marine casualty is "[a]ny casualty . . . involving any vessel . . . that . . . [o]ccurs upon the navigable waters of the United States, its territories or possessions."  46 CFR §4.03-1(a).  The term "marine casualty or accident" "applies to events caused by or involving a vessel . . . ."  46 C.F.R. §4.03-1(b).  The *Deepwater Horizon* was clearly a vessel and the entire JIT Report constitutes a report of a marine casualty investigation.

The PSC's attempt to treat Volume II of the JIT Report as the product of a separate investigation is unavailing.  *See, e.g*., PSC Ltr at 3.  The Convening Order specifically provides

that the investigation was joint and co-chaired by both the MMS (now BOEMRE) and the USCG.  *See* Exhibit 1 ¶ 3.  It also provides that if the procedures of the Marine Board of Inquiry differ from those of a panel investigation, the Marine Board of Inquiry procedures shall govern the JIT investigation.  *Id*. ¶ 4.  The Convening Order provides that the JIT "will issue a single report," *id*. ¶ 5, which the JIT did, labeling Volume I as addressing issues within the jurisdiction of the USCG and Volume II as addressing issues within the jurisdiction of BOEMRE.  *See* Joint Cover Memo on Joint Investigation Team Report of Investigation, attached hereto as Exhibit 2.  The prohibitions in § 6308 apply with equal force to both Volumes I and II of the JIT Report.

The PSC cites to a single case as authority for the admissibility of an MMS report.  *See* PSC Ltr at 3; *Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 U.S. App. LEXIS 9717 (5th Cir. Apr. 12, 2006).  The *Underwriters* case involved a fixed platform, as opposed to a vessel, and the report at issue was not the result of a marine casualty investigation conducted under 46 U.S.C. § 6301.  Accordingly, *Underwriters* does not apply to the JIT Report and does not support the PSC's argument that Volume II is admissible.

Pursuant to the Convening Order, the JIT Investigation was a marine casualty investigation conducted pursuant to Section 6301.  Section 6308 provides that *no part* of a report of a marine casualty investigation conducted under section 6301 is admissible.  Because Volume II is part and parcel of the JIT Report by virtue of the Convening Order, it is not admissible.

## II.     The Reports <u>May</u> Be Admissible for Impeachment Purposes.

The PSC correctly cites cases where the Eastern District of Louisiana has deferred ruling on the admissibility of certain MCIRs purely for impeachment purposes until trial.  *See* PSC Ltr. at 2.  HESI agrees that the Court should defer judgment on this issue until trial.

**III.   JIT Testimony of Witnesses Unavailable Due to Invoking the Fifth Amendment <u>May</u> be Admissible.**

HESI also agrees that the JIT testimony of a witness who is unavailable because of an invocation of Fifth Amendment rights against self-incrimination <u>may</u> be admissible in certain circumstances under Rule 804(b) and Fifth Circuit precedent.  HESI currently does not object to the admissibility of Trial Exhibit 02032 (MBI Testimony of Jesse Gagliano).  However, HESI's position may change if Mr. Gagliano actually testifies at trial.  Because it is currently unknown which witnesses will invoke their Fifth Amendment rights at trial, the Court should defer until trial any ruling on the admissibility of the JIT testimony of witnesses who invoked the Fifth Amendment in their depositions.

Dated:  November 7, 2011.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Halliburton Energy Services, Inc.'s *Brief in Support of its Motion to Exclude the JIT Reports* was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 7th day of November, 2011.

                                                 /s/ Donald E. Godwin
                                                 Donald E. Godwin

JOINT DEPARTMENT OF THE INTERIOR
AND
DEPARTMENT OF HOMELAND SECURITY
STATEMENT OF PRINCIPLES AND CONVENING ORDER
REGARDING
INVESTIGATION INTO THE MARINE CASUALTY, EXPLOSION, FIRE,
POLLUTION, AND SINKING OF MOBILE OFFSHORE DRILLING UNIT
DEEPWATER HORIZON, WITH LOSS OF LIFE
IN THE GULF OF MEXICO 21-22 APRIL 2010

1. The Department of the Interior and the Department of Homeland Security (collectively, "the Agencies") have determined that a joint investigation ("Joint Investigation") of the April 21-22, 2010 explosion and sinking of the mobile offshore drilling unit DEEPWATER HORIZON is warranted. Therefore, the Agencies hereby adopt the following statement of principles and convening order regarding the Joint Investigation. Each Agency, at its discretion, may elect to adopt additional internal measures to govern direction and oversight of their respective portion of the Joint Investigation.

2. The Outer Continental Shelf Lands Act ("OCSLA") grants the Secretaries of the Agencies the authority to investigate incidents resulting from operations on the U.S. Outer Continental Shelf ("OCS"). 43 U.S.C. § 1348. The Minerals Management Service ("MMS"), a unit of the Department of the Interior, and the United States Coast Guard ("USCG"), a component of the Department of Homeland Security, have identified a process for conducting investigations under the authority of the OCSLA in a Memorandum of Agreement ("MOA"), dated 27 March 2009. As set forth in the MOA, the MMS investigates incidents associated with, *inter alia*, exploration and drilling operations for hydrocarbons on the OCS, and the USCG investigates, *inter alia*, deaths, injuries, property loss, and environmental damage arising from such incidents.

3. A Joint Investigation is hereby convened in accordance with the MOA, as modified herein. The Joint Investigation is classified as a Coast Guard Marine Board of Investigation within the meaning of 46 C.F.R. § 4.09 and a Panel Investigation within the meaning of 30 C.F.R. § 250.191. The Joint Investigation is convened pursuant to agency authorities and will be conducted pursuant to the procedures contained in 43 U.S.C. § 1348, 14 U.S.C. § 141, 46 U.S.C §§ 6301 *et seq.*, 33 C.F.R. § 140, Subpart C; 30 C.F.R. §§ 250.186-191, and 46 C.F.R. Part 4.

4. The Agencies intend to conduct the Joint Investigation as follows: The MMS and the USCG will co-chair the Joint Investigation. The Joint Investigation team will investigate thoroughly the matter hereby submitted to it in accordance with the provisions of 43 U.S.C. § 1348, 46 U.S.C. § 6301 *et seq.*, and the applicable regulations thereunder. The Joint Investigation shall have the powers of both Agencies, and, for the public hearing portions of the Joint Investigation, shall follow the policies and procedures for a Marine Board of Investigation contained in 46 C.F.R. § 4.09 and the Coast Guard Marine Safety Manual, Volume V. In cases where the procedures of a Marine Board of Investigation and a Panel Investigation appear to differ, the procedures for a Marine Board of Investigation shall govern. Any issue involving procedure may be referred to

Exhibit 1

the Chief of the Accident Investigation Board of the MMS, and the Chief of USCG Office of Investigations and Casualty Analysis. They will refer any unresolved procedural issue to the Chief, Office of Offshore Regulation, MMS, and the Commandant, Director of Prevention Policy (CG-54), USCG, who will consider the matter together and provide guidance jointly to the Joint Investigation.

5. Upon completion, the Joint Investigation team will issue a single report to the Director, MMS, and the Commandant, USCG, containing the evidence adduced, the facts established thereby, and its conclusions and recommendations. The report shall meet the requirements of both the MMS and USCG. Any conclusions or recommendations concerning commendatory actions or misconduct which would warrant further inquiry shall be referred by separate correspondence to the cognizant Regional Coordinator or District Commander. Similarly, any information warranting further evaluation for potential civil violations or criminal activity shall be referred in accordance with applicable procedures. On days that the Joint Investigation conducts a public hearing, a daily summary of significant events shall be transmitted to the Chief of the Accident Investigation Board and the Chief of USCG Office of Investigations and Casualty Analysis. The Joint Investigation team will report its progress, as may be requested by superior authority designated by the Department of Interior or the Department of Homeland Security.

6. The report should be completed and submitted simultaneously to the Director, MMS, and the Commandant, USCG, within nine months of the convening date. If this deadline cannot be met, at least thirty calendar days prior, a written explanation for the delay and the expected completion date shall be submitted to the Director, MMS, and Commandant, USCG. The Joint Investigation team is encouraged to submit interim recommendations intended to prevent similar casualties, if appropriate, early in the Joint Investigation.

7. Prior to submission of the team's report to the Director, MMS, and the Commandant, USCG, the Joint Investigation team will confer with the Chief of the Accident Investigation Board and the Chief of USCG Office of Investigations and Casualty Analysis, both of whom will review the report and reconcile any remaining issues to the maximum extent practicable. If the respective Chiefs are unable to reconcile any remaining issues, they will elevate the issues to appropriate officials within their respective Agency.

8. The Director, MMS, and the Commandant, USCG, will jointly sign and release the final report. If either Agency differs with the other concerning any conclusions or recommendations, either Agency may issue a supplemental or separate report.

9. David Dykes, MMS, and Captain Hung Nguyen, USCG, are designated as Co-Chairs of the Joint Investigation. Other Members and the Recorder of the Joint Investigation will be designated by separate correspondence, and each Agency has the right to be equally represented. Agency costs for the Joint Investigation shall be borne by the Agency incurring the expense.

10. The Government of Marshall Islands, the flag state administration of the DEEPWATER HORIZON has requested to participate in this Joint Investigation. It shall be designated as a Party In Interest and given the rights associated with such status in accordance with 46 U.S.C. § 6303.

*[signature]*
THAD W. ALLEN
Admiral, U.S. Coast Guard
Commandant

Date: APR 26 2010

*[signature]*
JANET NAPOLITANO
Secretary
Department of Homeland Security

Date: APR 27 2010

*[signature]*
S. ELIZABETH BIRNBAUM
Director
Minerals Management Service

Date: APR 27 2010

*[signature]*
KEN SALAZAR
Secretary
Department of the Interior

Date: APR 27 2010




Joint Cover Memo on
Joint Investigation Team Report of Investigation

The United States Coast Guard and the Bureau of Ocean Energy Management, Regulation & Enforcement (BOEMRE) have completed their joint investigation into the explosion and fire onboard the Mobile Offshore Drilling Unit (MODU) *DEEPWATER HORIZON* that occurred on April 20, 2010.

A jointly-issued Convening Order dated April 27, 2010, formed a Joint Investigation Team (JIT) to help both agencies identify the causal factors that led to the blowout at the Macondo well and the explosion and fire on the *DEEPWATER HORIZON* and make recommendations to prevent similar incidents in the future. The joint investigation was conducted under an agreed Statement of Principles that ensured the investigative process was rigorous, comprehensive, independent and transparent. The JIT was composed of four lead members and supporting technical staff from each agency. Together, the JIT held seven public hearings and took the testimony of more than 80 witnesses; conducted multiple interviews with more than 25 individuals: received, processed, and analyzed hundreds of thousands of pages of documents; and maintained custody of hundreds of pieces of physical evidence, ranging from small rock samples to the blowout preventer that had been in place at the Macondo wellhead. The JIT designated 17 Parties in Interest, who were afforded their statutory rights specified in 46 U.S.C. § 6303. We thank the members of the JIT for their diligent work in completing this challenging assignment and commend them for their thorough inquiry.

The enclosed Report of Investigation contains the findings, analyses, conclusions, and recommendations of the JIT. Volume I, as accepted by the Commandant's Final Action, of the report addresses issues within the jurisdiction of the United States Coast Guard, specifically the factors related to the vessel and its systems that likely contributed to the marine casualty, and the subsequent evacuation, firefighting and search and rescue efforts. Volume II addresses the causes of the blowout, including factors related to the Macondo well drilling operations, well abandonment procedures and well control that are within the jurisdiction of BOEMRE. Each volume was prepared according to the respective agency's internal processes and complements the other. Together, they provide a comprehensive assessment of the incident. The two volumes comprise the completed joint Report of Investigation.

Exhibit 2

As reflected in the Report of Investigation, the United States Coast Guard and BOEMRE are already undertaking significant reforms of the domestic regulatory and oversight regime for MODUs and offshore activities on the outer continental shelf (OCS), and where appropriate, within the international maritime community. The United States Coast Guard and BOEMRE are committed to maintaining a close partnership that will leverage our respective authorities and expertise for protecting our OCS and the offshore industry workforce. We will work to keep pace with changes in industry practices and drilling procedures, and will work together to implement a structured framework with appropriate standards to effectively manage risks to ensure safe, secure, and environmentally responsible operations.

Admiral R. J. Papp, Jr.
Commandant, U.S. Coast Guard

Michael R. Bromwich
Director, Bureau of Ocean Energy
Management, Regulation & Enforcement

SEP 09 2011