## MASTER SERVICE AGREEMENT

This Agreement, entered into as of the <u>28th</u> day of <u>September</u>, 200<u>0</u>, by and between TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., or one of its subsidiaries or any other entity in which it owns, either directly or indirectly, at least a fifty percent (50%) equity interest, with offices at P.O. Box 2765, Houston, Texas 77252-2765 ("Transocean") and <u>Cameron Division and Cameron Controls Division,</u> <u>Cooper Cameron Corporation, P. O. Box 1212, Houston, TX 77251-1212</u>

_____

_____ ("Contractor"),

## W I T N E S S E T H :

WHEREAS, Transocean is engaged in the business of drilling, completing, and reworking oil and gas wells for the account of others; and

WHEREAS, Transocean in the course of its operations may desire to utilize the services, equipment and/or materials ("Work") of Contractor; and

WHEREAS, Contractor represents that it has materials and/or equipment which are sufficient in quantity and fit for the purpose intended; and

WHEREAS, Contractor represents that it has fully trained personnel capable of efficiently operating its equipment and/or performing services in a safe, diligent, and workmanlike manner;

6/22/97

Exhibit 5

CONFIDENTIAL
ACCESS
RESTRICTED

CAM_CIV_0017212

NOW THEREFORE, in consideration of the mutual promises and obligations herein contained and the inclusion of Contractor on Transocean's approved list of subcontractors, the parties agree as follows:

1.    <u>SCOPE OF AGREEMENT</u>.

If the Transocean contracting party is Transocean Offshore Deepwater Drilling Inc., this Agreement shall be signed by that company, but if the Transocean contracting party is one of the subsidiaries or other entities of Transocean Offshore Deepwater Drilling Inc., this Agreement shall be signed by that subsidiary or other entity.  Contractor agrees to any unilateral assignment of this Agreement by Transocean to any of its subsidiaries or affiliated companies that may be performed hereafter.  As between the parties hereto, this Agreement shall control and govern all Work and any applicable oral and/or written specifications, including purchase orders, ("Work Order") which are in any way connected with Transocean including, but not limited to, the performance of all Work by Contractor, its affiliates, and/or its and their subcontractors for or with Transocean, any of the Transocean subsidiaries or other entities, and/or any third party (including any third party for whom or with which Transocean is rendering services or under contract and regardless of whether or not a Work Order has been issued hereunder) where such Work is performed at the same drill site, well location, vessel, fixed platform, or other location (including on the way to or from such location) as Transocean is located, operating, and/or performing services ("Work Premises").

2.    <u>SUPPLIES AND SERVICES</u>.

Contractor shall perform all Work in a good and workmanlike manner and in strict compliance with the requirements contained in this Agreement, including Exhibit "A" (Insurance Requirements), Exhibit "B" (EEOC Supplement), Exhibit

CONFIDENTIAL
ACCESS
RESTRICTED

CAM_CIV_0017213

"C" (Contraband Policy), and any applicable Work Order, each of which is hereby incorporated by reference.  Contractor warrants that the work will be the kind and quality described in the contract and will be free of defects in workmanship or material.  Should any failure to conform with this warranty appear within twelve (12) months from the date of delivery, Contractor shall, in complete fulfillment of its liabilities under this warranty, if given prompt written notice by Transocean Offshore Deepwater Drilling Inc. correct by repair or replacement, FOB Transocean Offshore Deepwater Drilling Inc.'s Factory any nonconformity which shall appear under proper storage, installation, maintenance and use of the goods.  Transocean Offshore Deepwater Drilling Inc. shall make the goods available for correction.  In no event will Contactor be responsible for providing access to the defective part or parts for the disassembly, removal, or reinstallation of the goods or components thereof.

For goods replaced or repaired under the warranty, the warranty period will commence again and be for a period not to exceed six (6) months after replacement or completion of the repair or replacement but not longer than a period of twelve (12) months calculated from the end of the warranty period referred to above.

The warranty contained in this section will terminate immediately if Transocean Offshore Deepwater Drilling Inc. or a third party undertakes inappropriate or improper modification or repairs or if Transocean Offshore Deepwater Drilling Inc. in case of a defect, does not immediately take all appropriate steps to mitigate damages and notify Contractor in writing of its obligations to remedy such defect.

CONFIDENTIAL
ACCESS
RESTRICTED

Correction of nonconformities in the manner and for the period of time provided above shall constitute fulfillment of all liabilities of Contractor to Transocean Offshore Deepwater Drilling Inc. whether based on contract, negligence or otherwise, with respect to such goods.

THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES OF MECHANTABILITY, FITNESS FOR PURPOSE, OR OTHER WARRANTIES OF QUALITY, WHETHER EXPRESSED OR IMPLIED.

3.    <u>NO OBLIGATION</u>.

This Agreement does not obligate Transocean to order any Work from Contractor.

4.    <u>INDEPENDENT CONTRACTOR</u>.

Contractor shall be an independent contractor with respect to the performance of all Work for Transocean hereunder; and neither Contractor, its principals, agents, partners, or subcontractors nor its or their employees shall be servants, agents, or employees of Transocean.  Transocean shall have no direction or control of such parties, except for directing the results to be obtained and in Transocean's general right of inspection to ensure that the Work is being performed in accordance with this Agreement and any applicable Work Order.

5.    <u>COMPLIANCE WITH LAWS</u>.

Contractor shall comply and ensure that all of its subcontractors and its and their employees and agents comply with all applicable laws, rules, and regulations of any governmental authority which are now or may become applicable to operations arising out of or in any way incident to Contractor's Work; and

Contractor shall defend, indemnify, and hold Transocean its parents, subsidiaries and affiliated companies and its and their officers, directors, employees and agents harmless from and against any claim or penalty incurred in connection with any failure of the Contractor to comply with said laws.

6.  <u>PAYMENT</u>.

Transocean shall pay Contractor for Work furnished to Transocean, subject to Transocean's verification that Contractor has complied with all terms and conditions of this Agreement and any applicable Work Order.  Transocean shall pay invoices within thirty (30) days after receipt.  In the event Transocean should dispute any invoice, undisputed portions thereof shall be paid; and upon resolution of all disputed items, a supplemental invoice will be submitted to Transocean for payment.

7.  <u>RECORDS RETENTION; AUDIT</u>.

Contractor shall support all invoices with any data and/or information reasonably requested by Transocean.   Contractor agrees to retain all applicable documentation and records for a period of not less than two (2) years after completion of the Work.  Transocean or any party with which Transocean is rendering services or under contract shall be entitled to audit and examine all documents and/or records necessary to verify the correctness of charges contained in any invoice.  The payment of an invoice shall not preclude Transocean's right to audit any charge during said two-year period.

8.  <u>TAXES</u>.

Contractor shall pay all taxes, duties, licenses, and fees levied, assessed, and/or incurred by Contractor directly or indirectly with respect to this Agreement

CONFIDENTIAL
ACCESS
RESTRICTED

which are imposed by any governmental authority, and all taxes and fees assessed or levied against or on account of wages, old age benefits, social security, or other benefits paid to Contractor's employees or agents. Contractor agrees to promptly reimburse Transocean for all such amounts paid by Transocean. At its election, Transocean is authorized to deduct all sums paid by Transocean for such taxes and governmental charges from such amounts as may be or become due to Contractor hereunder.

9.    <u>INSURANCE</u>.

During the term of this Agreement, Contractor shall maintain at its sole expense the minimum insurance coverage specified in Exhibit "A" with underwriters acceptable to Transocean. Except as provided by law, the limits specified therein shall in no way limit liabilities or obligations of Contractor for claims arising from performance of this Agreement and any applicable Work Order. Transocean may require Contractor to obtain additional insurance as a condition of issuing a Work Order hereunder. The insolvency, liquidation, bankruptcy, or failure of any insurance company providing insurance for Contractor or its subcontractors, or failure of any such insurance company to pay claims accruing, shall not be considered a waiver of, nor shall it excuse Contractor from complying with, any of the provisions of this Agreement. If any of the insurance policies are not procured or maintained pursuant to this Agreement, Transocean, at its option, may notify Contractor that the failure to provide the insurance is a material omission whereupon it is agreed that Transocean, at its sole option and without prejudice to any of its rights hereunder, shall have the right either to (a) purchase similar coverage, the cost thereof to be charged to Contractor, or (b) terminate this Agreement notwithstanding other provisions contained herein, or

CONFIDENTIAL
ACCESS
RESTRICTED

(c) reduce the applicable rate paid to Contractor by ten (10) percent until such time as appropriate evidence is provided to Transocean that Contractor has fully satisfied the insurance requirements of this Agreement.

10.   <u>ACCIDENTS</u>.

Contractor shall report to Transocean as soon as practicable all accidents or occurrences resulting in injuries to or property damage of any third party, Transocean, Contractor, and/or their employees or agents arising out of or incident to Work furnished pursuant to this Agreement.   Upon request, Contractor shall furnish Transocean with copies of all reports submitted to Contractor's insurer.

11.   <u>SAFETY</u>.

Contractor shall comply, notify, and require its subcontractors and its and their employees, invitees, and agents to comply with Transocean's safety rules and procedures, including its Corporate Policy Directive (Exhibit "C") which prohibits possession of contraband items in work areas.

12.   <u>PATENTS</u>.

Contractor shall at all times and at its own expense indemnify, defend, and hold Transocean, its parents, subsidiaries and affiliated companies, and its and their officers, directors, employees and agents, harmless from and against any and all claims or actions of any kind arising out of alleged or actual infringement of any patents, trademarks, or copyrights (U.S. or foreign) in regard to all Work of Contractor and/or its subcontractors.

CONFIDENTIAL
ACCESS
RESTRICTED

13. <u>FORCE MAJEURE</u>.

Each party hereto shall be excused from performance under this Agreement for so long as such performance is hindered or impeded by a force majeure event. As used in this Agreement, a "force majeure" event includes riots, strikes, wars, terrorist acts, civil disturbances, governmental authority (whether such authority be actual or assumed), fires, floods, storms, other acts of God, or such other causes which are reasonably beyond the control of the party so affected.

Any party to this Agreement which is unable, in whole or in part, to carry out its obligations under this Agreement due to force majeure shall promptly give written notice to that effect to the other party stating in reasonable detail the circumstances underlying such force majeure.

Any party to this Agreement claiming force majeure shall diligently use all reasonable efforts to remove the cause of such force majeure, shall promptly give written notice to the other party of the termination of such force majeure and shall resume performance of any suspended obligations as soon as reasonably possible after termination of such force majeure.

If any such force majeure delay extends beyond a period of ten (10) days, Transocean may, at its sole option, terminate this Agreement by notice thereof to Contractor.

14. <u>TERMINATION</u>.

Either party may terminate this Agreement by providing thirty (30) days prior written notice to the other party.  Such cancellation shall not relieve either party

CONFIDENTIAL
ACCESS
RESTRICTED

of obligations accrued hereunder prior to the time such termination becomes effective; provided, however, that Transocean at any time without prior notice and at its sole discretion may terminate any Work or Work Orders issued hereunder.   In such a case Termination payments to Contractor shall be calculated on the basis on the percent of the work completed as of termination data, which shall include (a) the agreed unit prices for equipment (or components or units of components) delivered and work completed; (b) the costs and expenses incurred by Contractor directly connected with work in addition to that in (a) above under this contract prior to the date of cancellation; (c) six percent (6%) of the costs and expenses referred to in (b) above in lieu of profit; and (d) such other costs and expenses, including cancellation charges under subcontracts, as Contractor may incur in connection with such cancellation.

15.  __INDEMNITY__.

A.  Contractor shall defend, release, indemnify and hold harmless Transocean, its parents, subsidiaries, affiliates, officers, directors, agents, employees from and against all liens, claims, demands, causes of action, costs, expenses or losses (including but not limited to attorneys' fees) attributable to, for or on account of injury to, illness or death of employees, invitees and/or agents of Contractor, its affiliates and subcontractors, or loss or damage to property of Contractor, its affiliates and subcontractors which arise from, are incident to or result directly or indirectly from the performance of the Work, the presence of employees or invitees of Contractor at any job or worksite, or transportation to or from such locations, performance of this Agreement, or breach hereof.

CONFIDENTIAL
ACCESS
RESTRICTED

B.  Transocean shall defend, release, indemnify and hold harmless Contractor, its parents, subsidiaries, affiliates, officers, directors, employees and agents from and against all liens, claims, demands, causes of action, costs, expenses or losses (including but not limited to attorneys' fees) attributable to, for or on account of injury to, illness or death of employees, invitees and/or agents of Transocean, its affiliates and subcontractors (other than Contractor and Contractor's agents, affiliates and subcontractors), or loss or damage to property of Transocean, its affiliates and subcontractors (other than Contractor and Contractor's agents, affiliates and subcontractors) which arise from, are incident to or result directly or indirectly  from the performance of the Work, the presence of employees or invitees of Transocean at any job or worksite, or transportation to or from such locations, performance of this Agreement, or breach hereof.

C.  If it is judicially determined that with respect to injury, illness or death of employees of Contractor, 33 U.S.C. 905 (c) would be applicable to this Agreement or the parties hereto or referred to herein, then Transocean shall be deemed to indemnify Contractor, its parents, subsidiaries, affiliates, officers, directors, agents, and employees from and against all liens, claims, demands, causes of action, costs, expenses or losses attributable to, for or on account of injury to, illness or death of employees of the "vessel" as such term is used in said statute, which arise from, are incident to, connected with, or result directly or indirectly from the performance of the Work, the presence of employees or invitees of Contractor at any job or worksite, or transportation thereof to or from such locations, performance of this Agreement or breach hereof.

CONFIDENTIAL
ACCESS
RESTRICTED

D.   All indemnities under this Agreement (i) shall be supported by available liability (or other appropriate) insurance to be carried by the indemnifying party at its sole cost and expense; and (ii) shall survive and not be affected by termination of this Agreement or completion of the Work.  If it is judicially determined that the monetary limits of insurance required hereunder or the indemnities or releases assumed under this Agreement exceed the maximum monetary limits or scope permitted under applicable law, it is agreed that said insurance requirements or indemnities or releases shall automatically be amended to conform to the maximum monetary limits or scope permitted under such law.

E.   **ALL OF THE INDEMNITIES AND ALLOCATIONS OF RISK CONTAINED IN THIS PARAGRAPH 15 OR ELSEWHERE IN THIS AGREEMENT SHALL APPLY NOTWITHSTANDING THE SIMPLE, GROSS, SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ANY PERSON OR PARTY (REGARDLESS OF WHETHER SUCH PERSON OR PARTY IS AN INDEMNITEE OR NOT), THE UNSEAWORTHINESS OR OTHER FAULT OF ANY VESSEL, "RUIN," OR STRICT LIABILITY, LIABILITY IMPOSED BY STATUTE, DEFECTS IN PREMISES, EQUIPMENT OR MATERIAL, OR ANY OTHER EVENT OR CONDITION WHETHER ANTICIPATED OR UNANTICIPATED AND REGARDLESS OF WHETHER PRE-EXISTING THIS AGREEMENT.  INDEMNITEES SHALL BE ENTITLED TO REASONABLE ATTORNEYS' FEES INCURRED IN ASSERTING OR ENFORCING THE INDEMNITIES GRANTED HEREIN.**

16.   <u>LIMITATION OF DAMAGES</u>.

CONFIDENTIAL
ACCESS
RESTRICTED

**IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT OR BUSINESS INTERRUPTIONS, HOWEVER SAME MAY BE CAUSED.    THE REMEDIES OF Transocean Offshore Deepwater Drilling Inc. SET FORTH HEREIN ARE EXCLUSIVE, AND CONTRACTOR'S LIABILITY WITH RESPECT TO ANY CONTRACT OR SALE OR ANYTHING DONE IN CONNECTION THEREWITH, WHETHER IN CONTRACT IN TORT, UNDER ANY WARRANTY, OR OTHERWISE, SHALL NOT, EXCEPT AS EXPRESSLY PROVIDED HEREIN EXCEED THE COST OF THE GOODS OR PART ON WHICH SUCH LIABILITY IS BASED.**

17.    <u>ASSIGNMENT</u>.

This Agreement shall be binding upon the parties, their successors, and assigns; provided, however, that Contractor shall not assign this Agreement or any part of any Work for Transocean without Transocean's prior written consent.    The subcontracting of any portion of the Work to be provided by Contractor shall not relieve Contractor from any of its obligations to perform in accordance with this Agreement.

18.    <u>GOVERNING LAW</u>.

THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE GENERAL MARITIME LAWS OF THE UNITED STATES, EXCLUDING, HOWEVER, ANY CONFLICTS OF LAW RULES THAT WOULD APPLY THE LAWS OF ANY OTHER JURISDICTION.    VENUE OF ANY LITIGATION SHALL BE HARRIS COUNTY, TEXAS.    CONTRACTOR HEREBY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE

CONFIDENTIAL
ACCESS
RESTRICTED

AND FEDERAL COURTS SITTING IN HOUSTON, TEXAS. SERVICE ON THE SECRETARY OF STATE MAY BE MADE  BY ANY MEANS PERMITTED AS IF ANOTHER AGENT HAD BEEN APPOINTED IN TEXAS.

19.   ENTIRE AGREEMENT.

This Agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all previous undertakings, considerations, writings, specifications, or commitments, whether oral or in writing.  No amendment, modification, or waiver of this Agreement shall be effective unless it is in writing and signed by an officer of Transocean and a duly authorized representative of Contractor.

20.   FOREIGN CORRUPT PRACTICES ACT.

**The parties to this Agreement each agree that they will at all times comply with the provisions of the Foreign Corrupt Practices Act of 1977, as amended, and it and its employees and agents will not pay, offer or promise to give, or authorize the giving of any services or anything else of value, either directly or through a third party, to any official or any employee of any government or of any governmental instrumentality, or to any political party or official thereof or to any candidate for political office for the purpose of (a) influencing any act or decision of that person in his official capacity or inducing such person to do any act in violation of the lawful duty of such person, or (b) inducing such person to use his influence with such government or instrumentality to affect or influence any act of decision thereof, in order to promote or assist in the performance of Contractor's or Subcontractor's obligations hereunder or to obtain or retain business.**

CONFIDENTIAL
ACCESS
RESTRICTED

21.   <u>MODIFICATION</u>.

In the event any provision of this Agreement is inconsistent with or contrary to any applicable law, rule, or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule, or regulation; and as so modified, said provision and this Agreement shall continue in full force and effect.

22.   <u>NOTICES</u>.

All notices, invoices, and payments shall be sent to the addresses shown hereinabove.

23.   <u>AUTHORITY</u>.

Transocean represents and warrants that it has full and complete authority to enter into and to perform this Agreement.  Contractor represents and warrants that it has full and complete authority to enter into and to perform this Agreement.  Each person who executes this Agreement on behalf of Transocean represents and warrants that he or she has full authority to do so and that Transocean will be bound thereby.  Each person who executes this Agreement on behalf of Contractor represents and warrants that he or she has full authority to do so and that Contractor will be bound thereby.

IN  WITNESS  WHEREOF,  the  parties  hereto  have  executed  this Agreement effective as of the day and year herein above first written.

CONFIDENTIAL
ACCESS
RESTRICTED

_Transocean Offshore Deepwater Drilling_

[Transocean Company]

By _Eric W. Brown_

Name: _Eric Brown_

Title: _General Counsel_

Cameron And Cameron Controls Divisions,

[Contractor] Cooper Cameron Corporation

By _Charlinda D. Hebert_

Name: _Charlinda D. Hebert_

Title: _WH Contract Admin/Negotiator_

CONFIDENTIAL
ACCESS
RESTRICTED

## EXHIBIT "A"

### INSURANCE REQUIREMENTS

Throughout the term of this Agreement Contractor shall maintain the following insurance as is applicable to it and shall instruct its underwriters to forward a Certificate of Insurance to Transocean Offshore (Transocean Offshore Deepwater Drilling Inc., P. O. Box 2765, Houston, Texas, 77252-2765, Attn: Insurance Dept.)   and to provide Transocean Offshore thirty (30) days advance notice of changes, nonrenewal, or cancellation of such insurance whether by Contractor or by underwriters.  Contractor will ensure that all subcontractors engaged by it in the performance of this Agreement shall, if not covered by Contractor's Insurance, secure and maintain all applicable Insurance included herein.  All insurance policies shall contain a waiver of subrogation in favor of Transocean Offshore, its affiliated companies, and any third parties to whom or for which Transocean Offshore is under contract or rendering services and/or its and their employees and agents.  All insurance policies, except Worker's Compensation, shall name all such parties as additional assureds.  All such policies shall be endorsed to provide that additional assureds shall not be liable for premiums and that such policies shall be primary as to additional assureds, regardless of any "excess" or "other insurance" clauses therein.  Self-insured retention and deductibles in all Contractor policies shall be for the account of Contractor and shall be subject to approval by Transocean Offshore.

| COVERAGE | LIMITS OF LIABILITY |
|---|---|
| A)  Worker's Compensation[1] | Statutory Limits |
| B)  Employer's Liability[1] | |
| 1.  Onshore Operations | Bodily Injury<br>$1,000,000 each person<br>$1,000,000 each occurrence |
| 2.  Over Water Operations | Bodily Injury<br>$1,000,000 each person<br>$1,000,000 each occurrence |
| C)  Comprehensive General Liability | |
| 1.  Onshore Operations | Bodily Injury & Property Damage<br>$1,000,000 each occurrence<br>Combined Single Limit |
| 2.  Over Water Operations | Bodily Injury & Property Damage<br>$1,000,000 each occurrence<br>Combined Single Limit |
| D)  Automotive Liability<br>(includes coverage for<br>owned, nonowned and hired<br>vehicles) | Bodily Injury<br>$1,000,000 each person<br>$1,000,000 each occurrence |
| | Property Damage<br>$1,000,000 each occurrence |
| F)  Vessels<br>Full form Hull and<br>Machinery[3] | Declared value of vessel each<br>occurrence |
| Protection and Indemnity,<br>Towers and Collision Liability[3] | Declared value of vessel or<br>$5,000,000, whichever is greater,<br>each occurrence |

CONFIDENTIAL
ACCESS
RESTRICTED

G)   Excess Umbrella Liability

All underlying coverages required herein, except Workers Compensation and Hull and Machinery, to be scheduled under Excess policy

1. Onshore Operations                    $1,000,000 Combined Single Limit

2. Over Water Operations                 $5,000,000 Combined Single Limit

CONFIDENTIAL
ACCESS
RESTRICTED

---

[1]   These policies (including occupational disease) shall have the following endorsements:   borrowed servant, voluntary compensation, and alternative employer.  If the Work is performed over water, the policies shall be endorsed to general maritime law claims, USL&H, including its extension by the Outer Continental Shelf Lands Act.

[2]   When Contractor is to furnish transportation by air, Contractor shall procure Aircraft Liability Insurance with coverage for the following liabilities:  public, passengers, property damage, and airport.  Coverage shall be on all owned and non-owned helicopters and other aircraft and shall include full form Hull insurance with limits equal to the full value of applicable helicopter or other aircraft.

[3]   When Contractor is to furnish transportation by water, Contractor shall procure full form Hull and Machinery Insurance on American Institute Time (Hulls) clauses or equivalent, including Collision Liability, with the sistership clause unamended and endorsed to provide that additional assureds may, but shall not be obligated to, sue in labor.  If the vessels are engaged in towing operations, such insurance shall include full Tower's Liability with the sistership clause unamended.   Contractor shall also procure for such vessels full form Protection and Indemnity Insurance on SP-23 clauses or equivalent and insurance for voluntary removal of wreck and/or debris, diving operations, and liability for seepage, pollution, containment, and cleanup.  All such policies shall insure additional assureds in all of their capacities under this Agreement, and underwriters' limitations of liability rights as respects additional assureds shall be deleted by endorsement from the primary and excess Protection and Indemnity policies.

CONFIDENTIAL
ACCESS
RESTRICTED

**EXHIBIT "B"**

EQUAL EMPLOYMENT OPPORTUNITY SUPPLEMENT TO MASTER SERVICE AGREEMENT

Contractor shall abide by the following equal employment opportunity programs where applicable and to the extent required of it by law:

1.  Employment of the Handicapped [applicable to contracts amounting to $2,500 or more, 41 C.F.R. 60-741.4].

2.  Equal Opportunity Clause [applicable to contracts exceeding $10,000, 41 C.F.R. 60-1.4].

3.  Employment of Disabled Veterans and Veterans of the Vietnam Era [applicable to contracts amounting to $10,000 or more, 41 C.F.R. 60-250.4].

4.  Utilization of Minority Business Enterprises [applicable to contracts which may exceed $10,000, 41 C.F.R.1-1.1310-2(a)].

5.  Utilization of Women Owned Business Concerns [applicable to contracts expected to exceed $10,000, 35 F.R. 31033].

6.  Utilization of Small Business Concerns and Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged Individuals [applicable to contracts exceeding $10,000, 45 F.R. 31028].

7.  Utilization of Labor Surplus Area Concerns [applicable to contracts which may exceed $10,000, 41 C.F.R. 1-1.805-3].

8.  Certification of Non-Segregated Facilities [applicable to contracts exceeding $10,000, 41 C.F.R. 60-1.8].

9.  Equal Employment Opportunity Reporting Requirements [applicable to contracts amounting to $50,000 or more if Contractor has 50 employees or more, 41 C.F.R. 60-1.7].

10. Affirmative Action Compliance Program [applicable to contracts amounting to $50,000 or more if Contractor has 50 or more employees, 41 C.F.R. 60-1.40].

11. Affirmative Action Program for Handicapped Workers [applicable to contracts amounting to $50,000   or   more if Contractor has 50 or more employees, 41 C.F.R. 60-741.5].

12. Minority Business Enterprises Subcontracting Program [applicable to contracts which may exceed $500,000 which contain the clause required by 41 C.F.R. 1-1.1310-2(a) and which, in the opinion of the procuring activity, offer substantial subcontracting possibilities, 41 C.F.R. 1-1.1310-2(b)].

13. Women Owned Concerns Subcontracting Program [applicable to contracts expected to exceed $500,000 which contain the clause required by paragraph 5 above, 45 F.R. 31034].

14. Small Business and Small Disadvantaged Business Subcontracting Plan [applicable to contracts expected to exceed $500,000 which are required to include a clause entitled Utilization of Small Business Concerns and Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged individuals, 45 F.R. 31029].

15. Labor Surplus Area Subcontracting Program [applicable to contracts which may exceed $500,000 which are required to include the labor surplus area utilization clause and offer substantial subcontracting possibilities, 41 C.F.R. 1-1.805-3(b)].

16. Small Business Subcontracting Program [applicable to contracts which may exceed $500,000, which contain the clause required by 41 C.F.R. 1-1.710-3(a) and which, in the opinion of the procuring activity, offer substantial subcontracting possibilities.

CONFIDENTIAL
ACCESS
RESTRICTED

**EXHIBIT "C"**

CORPORATE POLICY DIRECTIVE
POSSESSION OF CONTRABAND ITEMS

It is the policy of Transocean Offshore Deepwater Drilling Inc. and its subsidiary and affiliated companies ("Transocean Offshore") to maintain a safe work environment for its employees.   To this end, the possession of any illegal drug, drug paraphernalia, alcoholic beverage, explosive, weapon or any other similar item or substance which could cause or contribute to injury to Transocean Offshore personnel or damage to its property ("contraband") is strictly prohibited at work locations or other business premises ("work areas") of Transocean Offshore.  This policy may be implemented by such reasonable means as may from time to time be determined appropriate, including searches of the person and personal effects of any person.

Compliance with this policy is a condition of employment of Transocean Offshore and employees who decline to be searched or who are otherwise found in violation of this policy will be subject to immediate termination.   Non-employees who decline to be searched or are  otherwise found in violation of this policy or Transocean Offshore's Substance Abuse Policy will be excluded from Transocean Offshore work areas.  Attached is a Notice outlining Transocean Offshore's Substance Abuse Policy.

CONFIDENTIAL
ACCESS
RESTRICTED

## NOTICE

### DRUGS, ALCOHOL, FIREARMS, SEARCHES

Transocean Offshore Deepwater Drilling Inc. is concerned about the effects of the use of illegal drugs and the abuse of alcohol on the health and safety of its employees.  We recognize that alcoholism and the illegal use of drugs leads to increased accidents and medical claims, and can lead to the destruction of an employee's health, and adversely affect his or her personal life.  Employees who abuse drugs and alcohol are a danger not only to themselves, but also to their fellow employees.  In addition, the medical costs incurred by employees with drug or alcohol problems are much higher than those of other employees, and the decreased productivity of these individuals can adversely affect a company's ability to operate competitively.  To help prevent substance abuse among our employees, Transocean Offshore has a policy and practice of testing applicants, employees, and others who may regularly work in or on Transocean Offshore premises.  Applicants for employment will be required to undergo a drug screening test as part of consideration for employment.  Employees and others will be required, under certain circumstances, to cooperate with drug testing procedures and drug searches.

Accordingly, the unauthorized possession or use of illegal, drugs, narcotics, alcohol and firearms is not permitted on any Company property or job site that is not Company property, and the use of, possession of, and/or distribution of such items by any person on any Company installations, property, or facilities poses a serious threat to the safety of our employees, other personnel and operations.

### SEARCHES, INSPECTIONS, AND ANALYSES

We reserve the right, at all times, to have authorized personnel conduct reasonable searches or inspections on Company property of personal effects, lockers, baggage, vehicles, and quarters of employees and other personnel for the purpose of determining if any such persons are in possession of any illegal or unauthorized items.  These searches will be conducted in cases where the Company receives reliable information indicating that reasonable cause exists to conduct a search.

Any Company employee who refuses to submit to a search, urinalysis, blood test, or who is found in possession of any such illegal or unauthorized items without an explanation satisfactory to us will be subject to disciplinary action up to and including immediate discharge.

When appropriate, such items discovered through these Company searches may be taken into custody and may be turned over to the proper law enforcement authorities.

CONFIDENTIAL
ACCESS
RESTRICTED

**AMENDMENT NO. 1 TO**
**TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.**
**MASTER SERVICE AGREEMENT**

**This Amendment to the Master Service Agreement,** made and entered into as of the 19th day of September, 2000, by and between **Transocean Offshore Deepwater Drilling, Inc**. (hereinafter referred to as "Transocean") and **Cameron Division of Cooper Cameron Corporation,** (hereinafter referred to as "Contractor") hereby modifies the said Agreement.

**This Agreement is limited to the Cameron Division and does not include other divisions or business units of Cooper Cameron Corporation.**

Page 1: Under **"WITNESSETH:"**, Third paragraph:
    Deleted:
    "and fit for the purpose intended;"

2.      SUPPLIES AND SERVICES

    Changed to read:

    "All products of Contractor's manufacture are warranted against defects of material and workmanship for a period of twelve (12) months from the date of installation or eighteen (18) months from date of shipment, whichever period first expires, when such products are used in the service and within the pressure range for which they were manufactured. In the case of products or parts not wholly of Contractor's manufacture, Contractor's liability shall be limited to the extent of its recovery from the manufacturer of such products or parts under its liability to Contractor.

    Any repair work performed by Contractor is warranted for one year from completion of such repairs and applies only to work performed.

    If, within these specified periods, the Contractor receives notice from Transocean of any alleged defect in or nonconformance of any product or repair and if in the Contractor's sole judgment the product or repair does not conform or is found to be defective in material or workmanship, then, Transocean shall, at Contractor's request, return the part or product F.O.B. Contractor's designated plant or service location. Contractor, at its option and expense, shall repair or replace the defective part or product, or repay to Transocean the full price paid by Transocean for such defective part, repair or product. Any repayment of purchase price shall be without interest.

    Contractor's warranty liability, including defects caused by Contractor's negligence, shall be limited to such repair, replacement or refund, and shall not include claims for labor costs of Transocean or any third party, expenses of Transocean resulting from such defects, recovery under general tort law or strict liability or for damages resulting from delays, loss of use, or other direct, indirect, incidental or consequential damages of any kind. Contractor will not be responsible for failures of products which have been in any way tampered with or altered by anyone other than an authorized representative of Contractor, failures due to lack of compliance with recommended maintenance procedures, or products which have been repaired or altered in such a way (in Contractor's judgment) as to affect the products

1

CONFIDENTIAL
ACCESS
RESTRICTED

adversely.  THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY AND WARRANTY OF FITNESS FOR PARTICULAR PURPOSE WHICH EXCEED THE FOREGOING WARRANTY."

10.    ACCIDENTS

Changed: (in next to last line of paragraph):
"shall furnish Transocean with copies of all reports ..."

To read:
"shall furnish Transocean with copies or extracts or summaries of all reports ..."

Added to end of Article:
"In no event shall Contractor be required to produce any statements, reports, documentation or other information privileged under the attorney-client or work product privilege."

15.    INDEMNITY

Added to end of B:
"Transocean agrees that if Transocean is entitled to indemnity under any contract with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, Transocean will provide Contractor with the benefit of such indemnity to the fullest extent possible."

## EXHIBIT "A"
## INSURANCE REQUIREMENTS

Added to end of first paragraph:
"Any requirement for additional insured, waiver of rights of subrogation or recognition of Contractor's insurance as primary shall apply only to the extent of the legally-binding indemnities agreed-to by Contractor in this Contract."

F) Deleted; not applicable to Contractor.

CAMERON DIVISION,                          TRANSOCEAN ~~SEDCOFOREX~~ *OFFSHORE DEEPWATER DRILLING INC.*
COOPER CAMERON CORPORATION

BY: _Charlinda D. Hebert_                   BY: _Earl Brown_
    Charlinda D. Hebert

TITLE: Western Hemis. Contract              TITLE: *Senior Vice President + General Council*
       Admin/Negotiator

DATE: September 27, 2000                    DATE: _7/27/00_

2

CONFIDENTIAL
ACCESS
RESTRICTED

CAM_CIV_0017234