Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  OIL SPILL          MDL NO. 2179
BY THE OIL RIG
"DEEPWATER HORIZON"        SECTION:  J
IN THE GULF OF
MEXICO, ON                 JUDGE BARBIER
APRIL 20, 2010             MAG. JUDGE SHUSHAN




VOLUME 1



     Deposition of MATTHEW JOHN LUCAS, 501

Westlake Park Boulevard, Houston, Texas

77210, taken in the Pan American Life Center,

Bayou Room, 11th Floor, 601 Poydras Street,

New Orleans, Louisiana 70130, reported on

Thursday, February 24th, 2011.

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                    Reported By:
MATTHEW JOHN LUCAS                February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 2

```
 1   APPEARANCES:

 2

     ON BEHALF OF THE PLAINTIFFS
 3        STEERING COMMITTEE:

 4

 5        LEWIS, KULLMAN, STERBCOW & ABRAMSON
          (BY:  PAUL M. STERBCOW, ESQUIRE)
 6        601 POYDRAS STREET
          SUITE 2615
 7        NEW ORLEANS, LOUISIANA 70130

 8                 - AND -

 9        CUNNINGHAM BOUNDS, LLC
          (BY:  ROBERT T. CUNNINGHAM, ESQUIRE
10        (PRO HAC VICE)
          1601 DAUPHIN STREET
11        MOBILE, ALABAMA 36604

12                 - AND -

13        LEGER & SHAW
          (BY:  WALTER J. LEGER, JR., ESQUIRE)
14             CHRISTINE E. SEVIN, ESQUIRE)
          600 CARONDELET STREET, 9TH FLOOR
15        NEW ORLEANS, LOUISIANA 70130

16                 - AND -

17        WILLIAMS LAW GROUP, LLC
          (BY:  DUKE WILLIAMS, ESQUIRE)
18        909 POYDRAS STREET, SUITE 1650
          NEW ORLEANS, LOUISIANA 70112
19

20        KIRKLAND & ELLIS, LLP
          (BY:  HARIKLIA KARIS, ESQUIRE)
21        300 NORTH LASALLE
          CHICAGO, ILLINOIS 60654
22
                  ATTORNEYS FOR BP
23

24

25
```

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS                February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 3

```
 1    APPEARANCES (Continued):

 2

          MITHOFF LAW FIRM
 3        (BY:  WILLIAM J. STRADLEY SR., ESQUIRE)
          ONE ALLEN CENTER - PENTHOUSE
 4        500 DALLAS STREET
          HOUSTON, TEXAS 77002

 5

              MDL 2185 SECURITIES PLAINTIFFS
 6            SUBCLASS

 7

          GODWIN RONQUILLO
 8        (BY:  BRUCE W. BOWMAN, JR., ESQUIRE)
              FLOYD R. HARTLEY, JR., ESQUIRE)
 9            JAMES E. JOHANNS, ESQUIRE)
          1201 ELM STREET
10        SUITE 1700
          DALLAS, TEXAS 75270-2041

11
              ATTORNEYS FOR HALLIBURTON
12

13        GOFORTH GEREN EASTERLING, LLC
          (BY:  DANIEL O. GOFORTH, ESQUIRE)
14            BROOK GEREN, ESQUIRE)
          4900 WOODWAY, SUITE 750
15        HOUSTON, TEXAS 77056

16            ATTORNEYS FOR TRANSOCEAN

17

          FRILOT, LLC
18        (BY:  PAUL C. THIBODEAUX, ESQUIRE)
          1100 POYDRAS STREET, SUITE 3700
19        NEW ORLEANS, LOUISIANA 70163

20            ATTORNEYS FOR TRANSOCEAN

21

22        JONES, WALKER, WAECHTER, POITEVENT,
          CARRÈRE & DENÈGRE, LLP
23        (BY:  TARAK ANADA, ESQUIRE)
          201 ST. CHARLES AVENUE
24        NEW ORLEANS, LOUISIANA 70170-5100

25                ATTORNEYS FOR WEATHERFORD
```

Page 4

```
 1    APPEARANCES (Continued):

 2

         BINGHAM McCUTCHEN
 3       (BY:  DIANE C. HERTZ, ESQUIRE)
         399 PARK AVENUE
 4       NEW YORK, NEW YORK 10022-4689

 5            ATTORNEYS FOR ANADARKO PETROLEUM
              AND MOEX OFFSHORE 2007, LLC
 6

 7       KUCHLER POLK SCHELL WEINER & RICHARDSON
         (BY:  ROBERT E. GUIDRY, ESQUIRE)
 8       1615 POYDRAS STREET
         NEW ORLEANS, LOUISIANA 70112
 9
              ATTORNEYS FOR ANADARKO PETROLEUM
10            AND MOEX OFFSHORE 2007, LLC

11

         U.S. DEPARTMENT OF JUSTICE
12       TORTS BRANCH, CIVIL DIVISION
         (BY:  R. MICHAEL UNDERHILL, ESQUIRE)
13       450 GOLDEN GATE AVENUE
         7TH FLOOR, ROOM 5395
14       SAN FRANCISCO, CALIFORNIA 94102-3463

15            ATTORNEYS FOR THE UNITED STATES

16

         OFFICE OF THE ATTORNEY GENERAL
17       (BY:  OLIVIA W. MARTIN, ESQUIRE)
         501 WASHINGTON AVENUE
18       MONTGOMERY, ALABAMA 36101

19            ATTORNEYS FOR THE STATE OF
              ALABAMA

20

21       KANNER & WHITELEY, LLC
         (BY:  DAVID POTE, ESQUIRE)
22       701 CAMP STREET
         NEW ORLEANS, LOUISIANA 70130-3504
23            ATTORNEYS FOR LOUISIANA ATTORNEY
              GENERAL

24

25
```

Page 5

```
 1    APPEARANCES (Continued):

 2
           BECK, REDDEN & SECREST, LLP
 3         (BY:  GEOFF GANNAWAY, ESQUIRE
                 PATRICE B. CHILDRESS, ESQUIRE)
 4         ONE HOUSTON CENTER
           1221 McKINNEY STREET
 5         SUITE 4500
           HOUSTON, TEXAS 77010-2010
 6
               ATTORNEYS FOR CAMERON
 7             INTERNATIONAL CORPORATION

 8
           MORGAN, LEWIS & BOCKIUS, LLP
 9         BY:  STEVEN A. LUXTON, ESQUIRE)
           1201 LAKE ROBBINS DRIVE
10         THE WOODLANDS, TEXAS 77380-1124

11             ATTORNEYS FOR M-I SWACO

12
13         WARE, JACKSON, LEE & CHAMBERS, LLP
           (BY:  W. CHRISTIAN VAN KLEEF, ESQUIRE)
14         AMERICA TOWER
           2929 ALLEN PARKWAY
15         HOUSTON, TEXAS 77019

16             ATTORNEYS FOR DRIL-QUIP

17
           GERGER & CLARKE
18         (BY:  SHAUN CLARKE, ESQUIRE)
           1001 FANNIN STREET, SUITE 1950
19         HOUSTON, TEXAS 77002

20             ATTORNEYS FOR ROBERT KALUZA

21
22
23
24
25
```

Page 6

```
 1    APPEARANCES (Continued):

 2

              HENRY DART, ATTORNEYS AT LAW
 3            (BY:  HENRY T. DART, ESQUIRE)
              510 NORTH JEFFERSON STREET
 4            COVINGTON, LOUISIANA 70433

 5                 SPECIAL COUNSEL FOR THE LOUISIANA
                   ATTORNEY GENERAL REPRESENTING THE
 6                 STATE OF LOUISIANA

 7

              LANCE C. WENGER, ESQUIRE
 8            ATTORNEY-ADVISOR
              OFFICE OF THE SOLICITOR
 9            ROCKY MOUNTAIN REGION
              U.S. DEPARTMENT OF THE INTERIOR
10            755 PARFET STREET
              SUITE 151
11            LAKEWOOD, COLORADO 80215

12                 OBSERVER FOR THE U.S. DEPARTMENT
                   OF THE INTERIOR

13

14            FEDERMAN & SHERWOOD
              (BY:  WILLIAM B. FEDERMAN, ESQUIRE)
15            10205 N.PENNSYLVANIA
              OKLAHOMA CITY, OKLAHOMA 73120

16
              ATTORNEYS FOR SHAREHOLDERS DERIVATIVE
17            ACTION IN 2185

18

19

20    REPORTED BY:

21            DIANE TEWIS CLARK, RPR, RMR, CRR
              CERTIFIED COURT REPORTER
22

23    ALSO PRESENT:

24            TODD MEAUX, CLVS
              DEPO-VUE, INC.
25
```

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                                     Reported By:
MATTHEW JOHN LUCAS                         February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 7

```
 1                      *   *   *

 2                 EXAMINATION INDEX

 3                                          Page

 4   EXAMINATION BY MR. LEGER    ...........11

 5   EXAMINATION BY MR. FEDERMAN .........242

 6   EXAMINATION BY MR. UNDERHILL ........258

 7   EXAMINATION BY MR. DART .............309

 8   EXAMINATION BY MS. MARTIN ...........396

 9

10                      *   *   *

11                 INDEX OF EXHIBITS

12                                          Page

13

14   Exhibit No. 500  ....................69

15     Handwritten notebook,
       BP-HZN-BLY00172767 through
16     BP-HZN-BLY00172774

17   Exhibit No. 501  ....................79

18     Bp Confidential - Draft - Work in
       Progress - Subject to Revision in
19     Light of Additional and Incoming
       Information/Further Analysis and
20     Quality Checks - Attorney-Client
       Privileged Draft for Legal Review,
21     BP-HZN-BLY00172775 through
       BP-HZN-BLY00172822

22

23   Exhibit No. 502  ...................109

24     Appendix I.  Deepwater Horizon
       Investigation Fault Trees
25
```

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6009    Board-Certified Court Reporters   Facsimile: (504) 525-9109

Page 8

1    Exhibit No. 503   ...................146

2      PowerPoint

3    Exhibit No. 504   ...................148

4      PowerPoint to Rodney Hosein, Dave
       Wall, Stephen Renter, Jim McKay,
5      Tony Emmerson, Jim Cowie and Matt
       Lucas from Went Goodman sent
6      Friday, August 13, at 01:43:31,
       2010, BP-HZN-BLY00107814

7

8    Exhibit No. 506   ...................174

9      BP Incident Investigation Team --
       Notes of Interview with David Sims,
10     June 24, 2010 at BP Westlake 1 at
       8:30 a.m. CDT, BP-HZN-BLY00125436
11     through BP-HZN-BLY00125446

12   Exhibit No. 507   ...................213

13     BP Operating Management System from
       the internet

14

15   Exhibit No. 508   ...................238

16     Document from the internet entitled
       "BP's Golden Rules of Safety"

17

18   Exhibit No. 509   ...................261

19     E-mail to James Wetherbee, Kent
       Corser, Brian J. Martin, Jim Cowie,
20     cc:  Matt Lucas, from Wendy
       Goodman, sent Monday, May 10 at
21     21:10:31, 2010, BP-HZN-BLY00091784

22   Exhibit No. 510   ...................264

23     E-mail from Kevin W. Fontenot to
       Matt Lucas sent Tuesday, May 18,
24     17:14:30, 2010, BP-HZN-BLY00190353

25

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS                    February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 9

    1    Exhibit No. 511  ...................271

    2      Transocean Horizon Investigation
           Team Members Register

    3

    4    Exhibit No. 512  ...................336

    5      The Report of the BP U.S.
           Refineries Independent Safety

    6      Review Panel, January 2007

    7    Exhibit No. 513  ...................355

    8      Request for Support for an
           Exception from the Incident

    9      Investigation GDP -- Deepwater
           Horizon Incident Investigation,

   10      BP-HZN-BLY00180368 through
           BP-HZN-BLY00180369

   11

   12    Exhibit No. 514  ...................385

   13      "Driving Operating Excellence
           Across an Organisation," John S.

   14      Sieg, Jr., Vice President of Safety
           and Operations -- BP America

   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25

1              S T I P U L A T I O N

2              It is stipulated and agreed by and

3    between counsel for the parties hereto that

4    the deposition of the aforementioned witness

5    is hereby being taken pursuant to the Federal

6    Rules of Civil Procedure;

7

8              All formalities, with the

9    exception of the reading and signing of the

10   transcript by the witness, are hereby waived;

11

12             All objections, except those as to

13   the form of the question and the

14   responsiveness of the answer, are hereby

15   reserved until such time as this deposition,

16   or any part thereof, may be used or sought to

17   be used in evidence.

18                        * * *

19

20             DIANE TEWIS CLARK, RPR, RMR, CRR,

21   Certified Court Reporter, State of Louisiana,

22   officiated in administering the oath to the

23   witness.

24

25

Page 351

1       A.     The exception was granted, so I

2   have to look at the sheet -- yes.

3       Q.     Who did he apply to for this

4   exception and who granted it?

5   MS. KALIS:

6           Object to form.

7   THE WITNESS:

8           I would have to look at that sheet

9   again, wherever it was.

10          EXAMINATION BY MR. DART:

11      Q.     What sheet?

12      A.     The exception.  I would have to

13  look at the exception itself.

14      Q.     Where is that?  I don't know

15  what you're talking about.

16  MS. KALIS:

17          Object to form.

18          EXAMINATION BY MR. DART:

19      Q.     What exception are you referring

20  to?  You saw a document?

21      A.     The exception to the GDP.

22      Q.     Where -- is that an exhibit you

23  saw today?

24      A.     No.

25      Q.     Where did you see the exception

IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                         Reported By:
MATTHEW  JOHN  LUCAS              February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 352

1   to the GDP?

2        A.    I don't know where it is.  I saw

3   it during the last few days.

4        Q.    Okay.  So several lawyers have

5   gone over the documents you reviewed in

6   preparation.  Is this a new one, this is

7   another document you reviewed in preparation

8   for today's deposition, was the exception to

9   the GDP?

10        A.    Yes.

11        Q.    Okay.

12   MR. DART:

13        Has that been produced, Counsel?

14   MS. KALIS:

15        I believe it has been produced;

16   however, there is a privilege, a potential

17   privilege issue, because that document

18   contains an attorney -- it was submitted by

19   an attorney, so we're in the process of

20   investigating it, but I will say it has been

21   produced.

22   MR. LEGER:

23        Subject to a privilege?

24   MS. KALIS:

25        No.  We produced it, and when I

Page 353

```
 1    identified it in the last couple of days,

 2    we're looking into whether, in fact, that

 3    document is privileged.  So we're not waiving

 4    any privilege.  But it has been produced.

 5         MR. DART:

 6              Do you know when?

 7         MS. KALIS:

 8              I believe --

 9         MR. DART:

10              In the last few days?

11         MS. KALIS:

12              No.  I don't believe it's in the

13    last few days.

14         EXAMINATION BY MR. DART:

15         Q.    I've not seen the exception, so

16    I can't really discuss it with you, Mr.

17    Lucas, but can you rack your brain and tell

18    me if you remember who it was that signed off

19    on that exception?

20         MR. BOWMAN:

21              If you don't speak up a little bit,

22    it's kind of hard to hear y'all.  It's late

23    in the day and y'all are getting a little

24    quiet.

25         THE WITNESS:
```

Page 354

1           I believe it was signed by John

2   Baxter.

3           EXAMINATION BY MR. DART:

4           Q.    Who is John Baxter?

5           A.    I don't know his exact title.

6           Q.    Do you know what company he

7   works for?

8           A.    Yeah.  He works for BP in the

9   safety and operations group.

10          MS. KALIS:

11          Counsel, just so I'm clear, I will

12   allow him to answer questions regarding that

13   document subject to an agreement that we are

14   not waiving any privilege.

15          MR. DART:

16          Understood.

17          EXAMINATION BY MR. DART:

18          Q.    The safety and what group, I'm

19   sorry?

20          A.    Safety and operations group.

21          Q.    Is that attached to the Gulf of

22   Mexico SPU?

23          A.    No.

24          Q.    That's --

25          A.    It's a group.

Page 355

1      Q.    It's a group entity?

2      A.    Yes.

3      Q.    Do you know where Mr. Baxter is

4   located?

5      A.    In the UK.

6      Q.    Now, do you know why Mr. Baxter

7   would have had to approve this exception?

8      A.    No.

9      Q.    Do you know if it was submitted

10   to BP E&P, Inc., which issued the terms of

11   reference to begin with?

12      A.    I don't know.

13      MR. DART:

14          There's five minutes left on the

15   tape.  I think we're going to take a little

16   break right now and let him change the tape.

17      THE VIDEOGRAPHER:

18          We're going off the record at 4:28.

19   This is the end of Tape 7.

20          (Whereupon, a brief recess was

21   taken.)

22      THE VIDEOGRAPHER:

23          We're back on the record at 4:39.

24   This is the beginning of Tape 8.

25          (Exhibit No. 513 marked for

Page 356

1    identification.)

2        EXAMINATION BY MR. DART:

3        Q.       All right, Mr. Lucas, I've

4    handed you a document that we've marked as

5    Exhibit 513.  And I'm going to ask you to

6    look at that, and it's a four-page document,

7    Bates --

8        MS. KALIS:

9            And, again, Counsel, for the

10   record, this is the document that -- given

11   that it's submitted by Rupert Bondy who is

12   BP's general counsel --

13       MR. DART:

14           Understood.

15       MS. KALIS:

16           -- there's a privilege here, we

17   believe.

18       EXAMINATION BY MR. DART:

19       Q.       The Bates numbers are

20   BP-HZN-BLY00180368 through 0371.  Is that the

21   exception we were talking about earlier?

22       A.       Yes.

23       Q.       And the heading on the document

24   is "Request for Support for an Exception from

25   the Incident Investigation, GDP, DEEPWATER

Page 357

1    HORIZON Incident Investigation"; correct?

2          A.        Correct.

3          Q.        And it requests support for an

4    exception from BP's incident investigation,

5    group defined practice, 4.4-0002,

6    October 2009; correct?

7          MS. KALIS:

8                Counsel, so I don't keep making the

9    same objection, do we have an agreement that

10   I have a standing objection on privilege as

11   to all the questions relating to this

12   document?

13         MR. DART:

14                We do.

15         MS. KALIS:

16                Fair enough.  Thank you.

17         MR. DART:

18                I'm not saying I go along with it,

19   but you have a standing objection, yes, and I

20   recognize that.

21         MS. KALIS:

22                You agree that we are not waiving

23   our privilege by allowing these questions to

24   be answered.

25         MR. DART:

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                    Reported By:
MATTHEW JOHN LUCAS           February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 358

1          I agree, to the extent that a

2     privilege exists.

3         MS. KALIS:

4              Yes.  Understood.

5         EXAMINATION BY MR. DART:

6         Q.      In the second paragraph it says

7     that:  "On 23 April 2010, terms of reference

8     were established and it says see

9     appendix below."

10              And the last two pages of the

11     document are the terms of reference that are

12     the same as set forth in exhibit -- or

13     Appendix A to the report; correct?

14         A.      Yes.

15         Q.      All right.

16         A.      And there's some titles and

17     stuff on there --

18         Q.      Correct, but the substance --

19         A.      Yeah.

20         Q.      -- of the terms of reference is

21     the same; correct?

22         A.      Yes.

23         Q.      And then in the section numbered

24     2, it describes the GDP such that, as you had

25     testified a moment ago, you would have had to

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters     Facsimile: (504) 525-9109

Page 359

1    investigate the immediate causes, the system

2    causes and the systemic causes; right?

3         A.      That's correct.

4         Q.      Pursuant to the GDP?

5         A.      That's correct.

6         Q.      All right.  Now, in Section 3 is

7    the request for the exception itself; right?

8         A.      Correct.

9         Q.      And it recognizes in the first

10   sentence that the DEEPWATER HORIZON

11   investigation departs from what the GDP would

12   otherwise require in that the terms of

13   reference asked the team to identify critical

14   factors, immediate causes and system causes

15   and to make recommendations.

16   It did not ask that the team determine

17   systemic root causes; is that right?

18        A.      That's correct.

19        Q.      The next sentence in that

20   section says:  "It was understood at the

21   outset that there would likely be

22   governmental and other investigations (and,

23   in fact, numerous governmental investigations

24   have been launched or announced and many

25   civil suits have been filed) with the result

Page 360

1    that witnesses, particularly those who work

2    for other companies and other material

3    evidence would likely be inaccessible to BP's

4    incident investigation team, making it

5    difficult to assess systemic root causes."

6         And I had asked you earlier what

7    evidence or what witnesses would have not

8    been accessible to your investigative team

9    within BP for you to assess or investigate

10   systemic failures within BP?

11        A.      I don't know without digging

12   down into the deeper levels, one by one, to

13   figure out what things need to be looked at.

14        Q.      Okay.  So when you went -- who

15   drafted this, by the way?  This is a lawyer?

16   Mr. Rupert Bondy?

17        MS. KALIS:

18             Object to form.

19        MR. DART:

20             Okay.

21        EXAMINATION BY MR. DART:

22        Q.      When this request was made, the

23   rationale for making it, the inaccessibility

24   of witnesses was unknown; was it not?

25        MS. KALIS:

Page 361

1          Object to form.

2          EXAMINATION BY MR. DART:

3     Q.     Based on what you just said?

4     A.     Yes.

5     Q.     And in the next paragraph says:

6     "Given the exceptional nature and severity of

7     the incident, the group head of safety and

8     operations was asked to lead the

9     investigation.  While not a trained

10    investigation manager, the team lead is

11    supported by four Master Root Cause

12    Specialists."

13          That's you and your team; right?

14    A.     That's correct.

15    Q.     "One being the BP group's senior

16    MRCS."

17          Is that you?

18    A.     Yes.

19    Q.     What's an MRCS?

20    A.     Master Root Cause Specialist.

21    Q.     Okay.  "Who is responsible for

22    the training of investigation managers across

23    BP."

24          Why does that justify not looking

25    into systemic causes?

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS          February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 362

1          MS. KALIS:

2                Object to form.

3          EXAMINATION BY MR. DART:

4          Q.    The fact that you have four

5    highly qualified root cause specialists who

6    are trained to investigate systemic causes

7    pursuant to the GDP, why does that justify

8    the exception?

9          MS. KALIS:

10               Object to form.

11         THE WITNESS:

12               Can you restate the question,

13   please.

14         EXAMINATION BY MR. DART:

15         Q.    Sure.  This is -- this is part

16   of the section trying to justify the

17   exception; right?

18         A.    No.  It is -- it is a second

19   exception.

20         Q.    A second exception?

21         A.    Yes.

22         Q.    And what is that exception?

23         A.    The paragraph that you just read

24   there, given the exceptional nature.

25         Q.    Oh.  Is the requirement of the

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters     Facsimile: (504) 525-9109

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS          February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 363

1  GDP that you have a trained investigation

2  manager lead the team, is that what the GDP

3  says?

4       A.     Yes.

5       Q.     Since Mark Bly was not a trained

6  investigator, you had to apply for a second

7  exception to have him as the head of the

8  investigation team?

9       A.     That is correct.

10      Q.     Okay.  I understand now.

11           So is it only the paragraph

12  preceding that that is the justification for

13  the exception to having -- to investigate

14  systemic causes?

15      A.     That's correct.

16      Q.     Okay.  And as you said, the

17  evidence you might need to do that systemic

18  cause investigation was unknown at the time

19  this request was made?

20      MS. KALIS:

21           Object to form.

22      EXAMINATION BY MR. DART:

23      Q.     Correct?

24      A.     I think some was known and some

25  was unknown.

Page 364

1        Q.      Okay.  Which was known?

2        A.        I don't know at that given point

3    what we knew and what we didn't.  I don't

4    know if the rig had already sunk at that

5    particular time of discussion or not.  But if

6    there was -- for example, couldn't touch the

7    BOP, then it's going to be difficult to

8    determine some of the root causes as easy as

9    if we had it right in front of us.

10       Q.      What would access to the BOP

11   have to do with investigation of systemic

12   organizational causes?

13       A.      Because after you drill down

14   through the physical root causes of some

15   cause that is determined --

16       Q.      Uh-huh (indicating

17   affirmatively)?

18       A.      -- you might determine that

19   there's a carbon steel piece instead of a

20   stainless steel piece, and you drill down

21   deeper and deeper and you find out that it's

22   because of some systemic issue, warehousing

23   issue, let's say.

24       Q.      Well, your team was able to

25   investigate immediate causes of the BP -- BOP

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                      Reported By:
MATTHEW  JOHN  LUCAS                    February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 369

1                Object to form.

2                EXAMINATION BY MR. DART:

3         Q.      Because your terms of reference

4    say don't look; isn't that true?

5         A.      I don't know if the teams looked

6    or not.

7         Q.      But they were instructed not to

8    look by the terms of reference; right?

9         A.      Yes.

10        Q.      Okay.  I'm still confused about

11   the justification for this exception now.

12   Can you explain to me why the paragraph

13   requesting the exception justifies the

14   granting of the exception?  Before you answer

15   that question, let me ask you another one.

16   Aren't exceptions to be granted only under

17   unusual, exceptional circumstances?

18        MS. KALIS:

19                Object to form.

20        THE WITNESS:

21                I'd have to look at the GDP, to see

22   whether it says those words or not.

23        EXAMINATION BY MR. DART:

24        Q.      Regardless, I'm going to ask you

25   my question again:  What is it in this

Page 370

1  request for an exception that justifies the

2  granting of the exception?

3       MS. KALIS:

4            Object to form.

5       THE WITNESS:

6            I don't know.  You would have to

7  ask the people that wrote that.

8       EXAMINATION BY MR. DART:

9       Q.     I'm asking you.

10      A.     I don't know why they wrote it.

11      Q.     I'm not asking why they wrote

12  it, I'm asking you to read this paragraph

13  because this is what the person who granted

14  the exception got, right, was this document?

15      MS. KALIS:

16           Object to form.

17      EXAMINATION BY MR. DART:

18      Q.     Correct?

19      A.     Can you repeat the question,

20  please?

21      Q.     What the person who granted the

22  exception received was this document; right?

23      MS. KALIS:

24           Object to form.

25      THE WITNESS:

Page 371

1    Yes.

2        EXAMINATION BY MR. DART:

3        Q.    Okay.  Were there any other

4    documents submitted with it?

5        A.    Not to my knowledge other than

6    this.

7        Q.    Okay.  So all Mr. Baxter, I

8    think it is, all he had over in England, in

9    London at BP headquarters was this piece of

10   paper with a paragraph in it to justify the

11   exception; right?

12       MS. KALIS:

13           Object to form.

14       THE WITNESS:

15           I don't -- I don't know what he

16   had.

17       EXAMINATION BY MR. DART:

18       Q.    Okay.  Can you tell me, let's do

19   a pretend here.  Let's pretend you are the

20   person to whom an exception is being

21   submitted and this is what you get.  Can you

22   tell me what in that paragraph, assuming

23   that's the only information you have, what in

24   that paragraph justifies the granting of an

25   exception from investigating systemic causes?

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                      Reported By:
MATTHEW JOHN LUCAS                February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 372

1       MS. KALIS:

2            Object to form.

3       THE WITNESS:

4            I don't feel comfortable asking --

5       answering a hypothetical question.

6       EXAMINATION BY MR. DART:

7            Q.    You don't?  Well, I'm sorry,

8       you're going to have to answer it anyway.

9            Tell me what in that paragraph, in

10      your mind, justifies the granting of an

11      exception from having to look at systemic

12      causes?

13      MS. KALIS:

14           Object to form.

15      EXAMINATION BY MR. DART:

16           Q.    Look at the paragraph, make sure

17      you understand it.

18           A.    I can't speculate on what action

19      I would take if it was put in front of me.

20           Q.    Okay.  Now, let's look at the

21      second page of this document, 80369.  You see

22      where it says "submitted:  Rupert Bondy"?

23           A.    Yes.

24           Q.    And on what date was it

25      submitted?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6009      Board-Certified Court Reporters      Facsimile: (504) 525-9109

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                  Reported By:
MATTHEW JOHN LUCAS          February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 373

1       A.      Yes.

2       Q.      What date was -- read it.

3       A.      8th July 2010.

4       Q.      Okay.  So May, June, July -- two

5    and a half months after you started the

6    investigation you requested the exception.

7    Is that what you're saying?

8           MS. KALIS:

9               Object to form.

10          THE WITNESS:

11              I don't know, I wasn't the one that

12   submitted it.

13          EXAMINATION BY MR. DART:

14      Q.      When did you bring this to Mark

15   Bly's attention in that conversation that we

16   talked about earlier?

17      A.      Within the first several weeks.

18      Q.      All right.  So in April or early

19   May; is that right?

20      A.      Yes.

21      Q.      And Mr. Bly said, "Don't worry,

22   we're going to get an exception."  Is that

23   what he said?

24          MS. KALIS:

25              Object to form.

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

MATTHEW JOHN LUCAS          February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR          Reported By:

Page 375

1    everything, to go through it and review it

2    and make sure that we were meeting the GDP.

3          Q.     Okay.  And did you go back and

4    check the GDP?

5          A.     Yes.

6          Q.     Is that when you came back to

7    him and told him, "Oops, there's another

8    problem.  You're not a registered

9    investigator, so we have got to get an

10   exception for that, too"?

11         A.     Yes.

12         Q.     Did you bring up any other

13   exceptions, any other conflicts with the GDP?

14         MS. KALIS:

15              Object to form.

16         THE WITNESS:

17              This third one that's in the last

18   paragraph.

19         EXAMINATION BY MR. DART:

20         Q.     What is that?

21         A.     It's the use of more accurate

22   incident specific descriptors than the

23   generic ones in our investigation

24   classifications.

25         Q.     That's the CLC?

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.     Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters     Facsimile: (504) 525-9109

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                      Reported By:
MATTHEW JOHN LUCAS                    February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 376

```
 1        A.     That's correct.

 2        Q.     What does that stand for?

 3        A.     Comprehensive list of causes.

 4        Q.     Okay.  And under the GDP, you're

 5   supposed to, it's like a pick list, right,

 6   you pick a cause, you identify a cause and

 7   then pick from that list what it might be.

 8   Is that how it works?

 9        A.     Something like that, yes.

10        Q.     So why do you need an exception

11   from the CLC in this case?

12        A.     Because the descriptors aren't

13   always specific as we wanted to be in the

14   report.

15        Q.     Okay.  So you needed an

16   exception for that, too?

17        A.     Yes.

18        Q.     Okay.  Did you bring that to

19   Mr. Bly's attention on the second discussion

20   after you looked at the GDP?

21        A.     I don't remember the exact

22   timing, but after we reviewed the whole

23   thing, then we talked about all three of

24   them.

25        Q.     You and Mr. Bly?
```

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters      Facsimile: (504) 525-9109

Page 377

 1        A.      Yes.

 2        Q.      Was anyone else in on the

 3   conversation?

 4        A.      Counsel.

 5        Q.      Mr. Bondy?

 6        A.      No.

 7        Q.      Who?

 8   MS. KALIS:

 9           Given that counsel was involved, I

10   am going to instruct the witness not to

11   answer questions regarding conversations with

12   counsel.

13      MR. DART:

14           Okay.

15      EXAMINATION BY MR. DART:

16        Q.      When was that meeting with you

17   and Mr. Bly and counsel?

18        A.      I don't recall the --

19        Q.      Give me a ballpark.

20        A.      It was in May or June.

21        Q.      Okay.  And how long did it take

22   you after you had that first conversation

23   with Mr. Bly to go to the GDP, look it up and

24   do whatever research you had to do?

25        A.      I wanted to do it -- I was asked

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS              February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 379

1        Q.     What was the name of the lawyer

2   that you worked with on this GDP project?

3        A.     Mike Nash.

4        Q.     Is Mike Nash in-house counsel

5   with BP or outside counsel?

6        A.     Inside.

7        Q.     Inside.   What department is

8   Mr. Nash -- is there a legal department or is

9   he assigned to a certain business unit?

10        A.     There's a legal department.

11        Q.     Can you tell me why it took from

12   the time you first brought it up until

13   July 8th to submit this exception?

14        A.     No.

15        Q.     When was the last time that you

16   met with anybody to prepare or submit this

17   exception?

18        A.     I don't recall.  It was shortly

19   after that exercise or at the end of --

20        Q.     So in May or June?

21        A.     Yes.

22        Q.     And you don't know why it took

23   so long from June to July 8th to prepare this

24   document?

25        A.     I do not.

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS              February 24, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 380

1          Q.      Did you have a hand in preparing

2     it, did you write any of the words or give

3     any input into the document?

4          A.      No.

5          Q.      At the very bottom of --

6          A.      I'm sorry, can you explain what

7     you mean by input?  I mean, we sat together,

8     so is that input?

9          Q.      Well, I understand you had

10    discussions about the conflicts with the GDP;

11    right?

12         A.      Yes.

13         Q.      All right.  Did you have any

14    input into the substance of the words that

15    are on this exception?

16        MS. KALIS:

17              To the extent those discussions

18    took place in the presence of counsel, I

19    would instruct you to not answer the

20    question, that is, if you provided -- if you

21    had a communication with counsel regarding

22    language of this letter, I would instruct you

23    to not answer that question.

24        MR. DART:

25              I'm not asking him about

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6009      Board-Certified Court Reporters      Facsimile: (504) 525-9109

Page 381

1    communications with counsel.  I'm asking if

2    he had any input into the substance of the

3    letter.

4         MS. KALIS:

5              If the input was to counsel, that's

6    a conversation with counsel.  And so I'm

7    going to stand by my instruction that if you

8    had communications with counsel regarding the

9    language of this document, I would instruct

10   you to not disclose those conversations.

11        EXAMINATION BY MR. DART:

12        Q.     Is that what happened, all the

13   -- the input you had was with a lawyer?  You

14   can answer that question.

15        MS. KALIS:

16             Answer that question.

17        THE WITNESS:

18             Yes.

19        EXAMINATION BY MR. DART:

20        Q.     Yes.  And this was BP's lawyer,

21   in-house counsel, right, Mr. Nash?

22        A.     Yes.

23        Q.     Okay.  Now, look at the bottom

24   -- it's around the middle of the page, but

25   the bottom of the text on the second page of

Page 382

1    the exception.  It says "Supported/Comments:"

2    Blank.  Do you know what that means?

3         A.      No, I don't.

4         Q.      And then below that it says:

5    "John Baxter:  Acting group head of S&O,

6    having consulted Steve Flynn, group head of

7    HSSE, and content owner for the GDP, 2010."

8              What does that mean?  Is that the

9    approval?

10        A.      That's -- I believe so.

11        Q.      Have you seen any other document

12   coming from John Baxter or anyone else saying

13   "exception approved"?

14        A.      I don't know whether I saw one

15   that was approved or not, but I was notified

16   that it was approved.

17        Q.      All right.  And just to recap,

18   there was a conflict between the GDP and the

19   terms of reference?

20      MS. KALIS:

21          Object to form.

22       EXAMINATION BY MR. DART:

23        Q.      Correct?

24      MS. KALIS:

25          Object to form.

Page 384

```
 1        Q.     Sure.  Okay.  But you didn't;

 2   did you?

 3        MS. KALIS:

 4             Object to form.

 5        EXAMINATION BY MR. DART:

 6        Q.     When I say you, I mean the whole

 7   investigative team did not look into systemic

 8   causes?

 9        A.     That's correct.

10        Q.     And that's because you were told

11   not to in the terms of reference; correct?

12        A.     That's correct.

13        Q.     And that's -- and that was

14   honored because you, your team, on Mr. Bly's

15   instruction applied for an exception which

16   was granted by BP PLC in London; correct?

17        MS. KALIS:

18             Object to form.

19        THE WITNESS:

20             I didn't apply for the exception.

21   The exception was submitted by Rupert Bondy.

22        EXAMINATION BY MR. DART:

23        Q.     Right.  But you did not

24   investigate systemic causes because this

25   exception was submitted, and because BP PLC,
```

Page 596

1    you were asked about yesterday?

2         A.      Not other than seeing the

3    distribution list on the e-mail presented.

4         Q.      To perform your job

5    responsibilities -- now that you've seen that

6    e-mail -- to perform your job

7    responsibilities, do you think that you

8    needed that e-mail to perform your function

9    of facilitating discussions?

10       MR. BOWMAN:

11            Objection.  Form.

12       THE WITNESS:

13            No.

14   EXAMINATION BY MS. KARIS:

15       Q.      Why not?

16       A.      Because the teams themselves had

17   that information and can do that analysis

18   within those teams.

19       Q.      Let's switch gears.  And, again,

20   I will state the following questions are

21   subject to the privilege assertion that I

22   made yesterday on the dispensation from the,

23   excuse me, to the GDP.

24       MR. LEGER:

25            And I object to this entire line of

Page 597

1    questioning because you will cause me to ask

2    those questions and take up my time when it

3    should be saved for another proceeding.

4        MS. KARIS:

5            I believe I permitted questioning

6    on it yesterday and got agreement to it.

7        MR. LEGER:

8            Go ahead.

9        MS. KARIS:

10            So let's proceed.

11   EXAMINATION BY MS. KARIS:

12        Q.    Are you familiar with the group

13   defined practices on incident investigation?

14        A.    Yes.

15        Q.    Does the group defined practice

16   permit dispensations from some of the

17   practices set out in that GDP?

18        A.    Yes.

19        Q.    Is there anything about the

20   dispensation that was received in this case

21   that would not be permitted or would be in

22   conflict, I think was the word used

23   yesterday, with the GDP?

24        A.    No.

25        Q.    Can you explain to us why?

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                    Reported By:
MATTHEW JOHN LUCAS          February 25, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 598

1        A.      Because the GDP itself allows

2    for exceptions and that exception was

3    requested and granted, meeting the intent of

4    the GDP.

5        Q.      And what is your understanding

6    for why there was a dispensation granted with

7    respect to conducting a systemic cause

8    investigation?

9        MR. LEGER:

10            Objection.  Form.

11        MR. BOWMAN:

12            Objection.  Form.

13        THE WITNESS:

14            Can I see the document, please?

15        MS. KARIS:

16            I have a copy of it in my bag, if

17    we need to.  It was an exhibit from yesterday

18    -- if we can go off the record for one

19    second.

20        THE VIDEOGRAPHER:

21            We're off the record at 1:40.

22            (Whereupon, a brief recess was

23    taken.)

24        THE VIDEOGRAPHER:

25            We're back on record at 1:40.

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.    Telephone: (504) 525-9100
New Orleans, LA 70130-6009    Board-Certified Court Reporters    Facsimile: (504) 525-9109

Page 599

1          MS. KARIS:

2               Could I have you read the last

3     question back.

4               (Whereupon, the requested

5     testimony was read by the Court Reporter)

6          "Q     And what is your

7          understanding for why there was a

8          dispensation granted with respect to

9          conducting a systemic cause

10         investigation?"

11    EXAMINATION BY MS. KARIS:

12         Q.     Let me ask a foundational

13    question first.

14              Do you have an understanding, as

15    the Master Root Cause Specialist and the team

16    lead for the root cause, as to why

17    dispensation was granted for performing a

18    systemic cause investigation?

19         MR. LEGER:

20              Object to the form.

21         THE WITNESS:

22              Yes.

23    EXAMINATION BY MS. KARIS:

24         Q.     What is your understanding?

25         MR. LEGER:

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                Reported By:
MATTHEW JOHN LUCAS                February 25, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

                                                                    Page 610

 1          THE WITNESS:

 2               That's one example.

 3     EXAMINATION BY MR. LEGER:

 4          Q.      Could leadership be a systemic

 5     cause?

 6          A.      It could be.

 7          Q.      Communications, could that be a

 8     systemic cause?

 9          A.      I would say no.

10          Q.      What would communication or lack

11     of communication be, would that be a system

12     cause?

13          A.      That's probably the category I

14     would put it in.

15          Q.      Now, as I appreciate it, this

16     document which has been marked as

17     Exhibit 513 expresses a -- you called it a

18     dispensation to the group defined benefit

19     practice for incident investigation; right?

20          MS. KARIS:

21               Counsel, I'm going to renew my

22     objection from yesterday.  Agreed to allow

23     the witness to answer questions.

24          MR. LEGER:

25               And I object to having to use my

601 Poydras Street, Suite 1720 GAUDET KAISER, L.L.C.      Telephone: (504) 525-9100
New Orleans, LA 70130-6009     Board-Certified Court Reporters     Facsimile: (504) 525-9109

Page 611

1  time to examine what you charge as a

2  privilege attack because I have got to now

3  defend that instead of asking questions I

4  want to.  Thank you.

5  EXAMINATION BY MR. LEGER:

6      Q.     What do you call this, this is a

7  dispensation you're talking about?

8      MS. KARIS:

9          Before we proceed, I just want an

10  agreement like I got yesterday, that there's

11  going to be no claim of waiver by allowing

12  this witness to answer questions.

13      MR. LEGER:

14          I'm not waiving my desire to bring

15  it back to ask him more stuff about this or

16  the fact that you're taking -- causing me to

17  take up my time on a silly claim of

18  privilege.

19      MS. KARIS:

20          Well, the fact that the general

21  counsel's name on it -- is on there is

22  submitted, we're not going to debate that now

23  whether it's privileged or not.  I just want

24  to make my objection for the record.

25  EXAMINATION BY MR. LEGER:

Page 613

1       Q.      Do you have trouble with

2   referring to it as a tragic explosion?

3       A.      No.

4       Q.      You don't mean to minimize it by

5   referring to it as an incident; do you?

6       A.      No.

7       Q.      How long after April 23rd, did

8   you see that there was no suggestion of

9   systemic -- of the investigation of systemic

10  causes?

11      A.      Shortly after that.

12      Q.      And not until July 22nd was an

13  exception given; correct?  If you want to

14  look at it.

15      A.      Just verify the date.  July 8th.

16      Q.      July 8th.  So during the month

17  of May, June and then into July, you guys

18  went forward in violation of a group defined

19  practice; correct?

20      MS. KARIS:

21          Object to form.

22  EXAMINATION BY MR. LEGER:

23      Q.      Is that right?

24      A.      We continued the processes we

25  normally would.

Page 627

1    go to Mr. Bly and tell him we have a defect

2    in our terms of reference, such that we have

3    to get an exception all the way up to London

4    for us to go forward?

5         MS. KARIS:

6              Object to form.

7    EXAMINATION BY MR. LEGER:

8         Q.    If there's such a minor nuance?

9         A.    I don't believe it to be a

10   defect. I believe we followed the intent of

11   the GDP.

12        Q.    Then why was it necessary to get

13   an exception?

14        A.    I think I answered that to my

15   counsel in the last testimony.

16        Q.    And what did you say?  Oh, now

17   you're going to read it from?

18        A.    Yes, I am.

19        Q.    That's okay.  We can read the

20   document.

21        A.    Okay.

22        Q.    I'm just wondering if you have

23   an opinion other than what's written by,

24   apparently, one of your counsel, a lawyer.

25              You have no opinion of your own,

IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                    Reported By:

MATTHEW JOHN LUCAS        February 25, 2011 DIANE TEWIS CLARK, RPR, RMR, CRR

Page 628

1    you need to read the writings of the lawyer

2    to decide why there should be an exception;

3    is that right?

4         A.      I had to document as to the

5    reasons why and I want to make sure that

6    I --

7         Q.    Okay.  Again, I'm going to ask

8    you things about what may or may not be --

9    I'm really confused about this systemic

10   thing.

11             You said it was something about a

12   deep cause?

13        A.    A deeper.

14        Q.    Deeper than system cause?

15        A.    Yes.

16        Q.    By deeper, you mean that the

17   root is deeper?

18        A.    Yes.

19        Q.    Are we digging for the deepest

20   possible roots to try to do a root cause

21   analysis or are we looking for the surface

22   roots?

23        MS. KARIS:

24             Object to the form.

25        THE WITNESS: