UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | : | MDL No. 2179 |
| "Deepwater Horizon" | : | |
| in the Gulf of Mexico, | : | SECTION: J |
| on April 20, 2010 | : | |
| | : | |
| This Document Relates to: | : | JUDGE BARBIER |
| No. 10-4536 | : | MAGISTRATE SHUSHAN |
| | : | |

-----------------------------------------------------------------------

**THE UNITED STATES OF AMERICA'S OPPOSITION TO ANADARKO ENTITIES' "MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING ANADARKO ENTITIES' KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS ON THE MACONDO PROSPECT FROM THE LIMITATION OF LIABILITY TRIAL" [Rec. Doc. 4319]**

Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P") (collectively, "Anadarko") have moved to exclude a broad range of evidence of Anadarko's involvement in the Macondo Prospect and Well, contending that such evidence is irrelevant to the Phase One trial scheduled to begin in February 2012. Anadarko's motion focuses exclusively on liability and allocation of fault under the Oil Pollution Act and maritime law and omits any discussion of the pending Clean Water Act claims or the claim that it is liable to the United States - without limitation - under the Oil Pollution Act that have been brought against it in *United States v. BP, et al.*, No. 10-4536. Even if Anadarko does not intend to prohibit the United States from introducing evidence probative to the United States' claims, Anadarko's proposed order is broadly written so as to preclude "*all the Parties* . . . from introducing evidence in the Limitation of Liability [Phase One] Trial . . . for the purpose of demonstrating that Anadarko had knowledge of, or access to information about, well design and/or operations on the Macondo Prospect . . . ." (emphasis added). The Phase One trial encompasses issues related to

1

liability of the parties resulting from the Macondo incident, including Anadarko's liability under the Clean Water Act as an owner, operator or person in charge of the Macondo Well and whether the Oil Pollution Act's liability limitations apply to Anadarko.  Accordingly, such evidence remains relevant to the United States' claims in Phase One, and Anadarko's motion must be denied.

## I. Anadarko's Motion *in Limine*

Anadarko moves *in limine* to exclude evidence of its knowledge of or access to information regarding the Macondo Well's design or operations, but also more broadly, to exclude evidence of its dealings with BP and its financial contributions to the drilling and operation of the Macondo Well.[1]  While Anadarko purports to confine its motion to proceedings in Case No. 10-2771, its proposed order precludes "all parties" from introducing such evidence, claiming that it is not relevant to "any party's claims or defenses" to be addressed in Phase One.

To support its motion, Anadarko relies on the Court's orders on the motions to dismiss the private plaintiffs' Amended Master Complaints for Pleading Bundles B1 and B3.  B1 Order [Rec. Doc. 3830]; B3 Order [Rec. Doc. 4159].  The B1 and B3 Orders, *inter alia*, held that the private plaintiffs failed to state a cognizable claim against Anadarko based on the general maritime law of negligence, reasoning that "[a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations[.]"  B1 Order [Rec. Doc. 3830] at 28; *see also* B3 Order [Rec. Doc. 4159] at 6.  Based on these Orders, Anadarko asserts that the only remaining claim of the private plaintiffs is under the Oil Pollution Act, a strict liability statute that does not depend on a party's access to information about Well

---

[1] For example, Anadarko lists exhibits 01919, 01920, 01921, 01922 as being subject to the motion *in limine*.  *See* Memorandum in Support of Anadarko Motion *in Limine* [Rec. Doc. 4319] at 5, n.4. These exhibits reflect Anadarko's approval of authorizations for expenditures for Macondo Well operations and activities.

operations.  Memorandum in Support of Anadarko Motion *in Limine* ("Mem.") [Rec. Doc. 4319-1] at 2-3.  As to the other defendants' cross-claims for contribution and indemnity against Anadarko scheduled for adjudication as part of the Phase One trial, Anadarko contends no proportion of fault can be allocated to it because – according to the Court's Orders – it was not negligent under general maritime law.  Mem. at 5.

As Anadarko itself has conceded in a separate pleading, however, the B1 and B3 Orders concerning the private plaintiffs' claims do not resolve any of the bases of Clean Water Act liability that the United States has asserted against Anadarko.  *See* Memorandum of Anadarko Petroleum Corporation and Anadarko E&P Company LP on the Effects of the Court's Order on the Motions to Dismiss the B1 Master Complaint [Rec. Doc. 3991] at 3, 10 n.3.  Yet nowhere in its motion *in limine* does Anadarko refer to the United States' claims for Clean Water Act penalties nor provide any insight with regard to the presentation of evidence with respect to such claims.  Anadarko's omission is perplexing.  As discussed *infra*, many issues relevant to Anadarko and the other defendants' liability for CWA violations and applicable penalties arising out of the Macondo Well event will and should be addressed in Phase One of the trial.

## II.    Trial Structure

The Court has determined that Phase One will encompass "issues arising out of the conduct of various parties . . . allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22, 2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the 'Incident')."  Pre-Trial Order 41 [Rec. Doc. 4083] at 2.  Accordingly, this Phase may include issues related to the nature of parties' involvement in the making and

executing of decisions related to the construction and operations of the Macondo Well leading up to the Incident.

Subsequent phases will address post-blowout issues relating to the stopping of the release of hydrocarbons from the Incident and the amount of oil released into the Gulf of Mexico (Phase Two), as well as efforts taken to contain the discharge through *in situ* burning and use of dispersants (Phase Three). *Id.* at 2-3. Not yet scheduled is a Phase in which the Court will be called upon to assess a specific dollar amount of the civil penalty under the Clean Water Act. To avoid duplication and inefficiency, the Court has ordered that "[a]ll parties shall present evidence relevant to a particular Phase during that Phase and should not expect they will be permitted to fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase . . . ." *Id.* at 4. Accordingly, a motion *in limine* to exclude a broad category of evidence from Phase One, such as advanced by Anadarko here, should be carefully scrutinized.

### III. Evidence Related to Anadarko's Knowledge of Macondo Well Design and Operations is Directly Relevant to Issues Concerning Limits on its Liability under the Oil Pollution Act and its Liability for Clean Water Act Penalties

#### a. OPA Liability Limits

OPA establishes limits on the amount of damages that responsible parties must pay. 33 U.S.C. § 2704(a)(3) (liability of the lessees of an offshore facility limited to $75 million in damages). However, no damages limitation applies "if the incident was proximately caused by (A) gross negligence or willful misconduct of, or (B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party." 33 U.S.C. § 2704(c). Unlike BP, the Anadarko Entities have not elected to waive this limitation, thus requiring the United States to seek to prove that the Anadarko Entities

– either directly or through their relationship with BP – violated regulations or acted with gross negligence or willful misconduct.  *See* Second Claim for Relief in Complaint, *United States v. BP, et al.*, No. 10-4536.  Evidence of the course of dealings and access to information may be probative of these factors.

        b.    Liability for Clean Water Act Penalties

Section 311(b)(3) of the Clean Water Act prohibits, *inter alia*, the "discharge of oil . . . into or upon the navigable waters of the United States, adjoining shorelines, . . . or [ ] in connection with activities under the Outer Continental Shelf Lands Act [43 U.S.C. § 1331 et seq.] . . . in such quantities as may be harmful as determined by the President . . . ." 33 U.S.C. § 1321(b)(3).  Section 311(b)(7)(A) of the Act mandates that "[a]ny person who is the owner, operator or person in charge of any . . . offshore facility from which oil is discharged in violation of paragraph (3), shall be subject to a civil penalty." 33 U.S.C. § 1321(b)(7)(A).  Thus, the Act provides for three separate bases for liability for civil penalties:  "owner," "operator," or "person in charge" of a facility from which there is a discharge of oil.

Liability under the Section 311(b) is strict and imposes an "absolute" liability standard on polluters.  *United States v. Coast States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981).  Penalties are heightened where the discharge is the result of gross negligence or willful misconduct.  33 U.S.C. § 1321(b)(7)(D). Additional factors that the court "shall consider" in determining the amount of penalties are set forth in Section 311(b)(8) and include:  the seriousness of the violation or violations; the degree of culpability involved; the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge; any history of prior violations; any other penalty for the same incident; the economic impact of the penalty on the violator; the economic benefit to the violator, if any, resulting from

the violation; and any other matters as justice may require. 33 U.S.C. § 1321(b)(8). The penalty factors thus contemplate an individual assessment of each violator's culpability, ability to pay, economic benefit, and so forth. The amount of the penalty is to be determined by the court following consideration of the evidence presented regarding the broad range of penalty factors of Section 311(b)(8) and a determination of gross negligence or willful misconduct per Section 311(b)(7)(D). "*Any person* who is the owner, operator or person in charge of any. . . offshore facility from which oil is discharged in violation of paragraph (3), *shall be* subject to a civil penalty," 33 U.S.C. § 1321(b)(7)(A) (emphases added); accordingly, penalties are to be calculated on an individual basis against each violator in order to achieve the appropriate deterrent effect. *See Coastal States*, 643 F.2d at 1128 (agreeing that a purpose of Section 311 is "to deter conduct causing spills").

The United States' Complaint alleges that the Defendants, including the two Anadarko entities – Anadarko Petroleum Corporation and Anadarko E&P – are liable for Clean Water Act penalties based on their status as owners, operators, and/or persons in charge of the Macondo Well.[2] The evidence that Anadarko seeks to exclude is relevant to its liability under the Clean Water Act's three bases for liability, as well as to the amount of the penalty.

First, evidence regarding Anadarko's knowledge of operations at the Macondo Well is directly relevant to its alleged liability as a "person in charge." Under Fifth Circuit precedent, a "person in charge" includes one who, among other factors, has "the capacity to make timely discovery of oil discharges." *United States v. Mobil Oil Corp.*, 464 F.2d 1124, 1127 (5th Cir.

---

[2] AE&P has filed a Motion to Dismiss the United States' Complaint as to the United States' Clean Water Act claim, as well as the United States' Second Claim for Relief under OPA [Rec. Doc. 1861], while the other Defendants, including APC, filed Answers. In May 2010, the United States opposed AE&P's Motion to Dismiss and also moved for partial summary judgment as to the liability of APC and AE&P under OPA and as operators as a matter of law under the Clean Water Act. [Rec. Doc. 2587].

1972) (setting forth three factors in concluding that an owner-operator was also a "person in charge").  In support of this basis for liability, the United States has alleged that Anadarko was provided with detailed technical information and received "real time" data regarding operations at the Macondo Well.  Compl. ¶ 36.  Accordingly, evidence that establishes the nature and extent of Anadarko's knowledge about well operations is probative to its CWA liability and should not be excluded from the Phase One trial, which is to determine issues related to the conduct of the parties leading up to the well blowout.

Such factual evidence may also be relevant to Anadarko's liability as a CWA operator.  Although the United States maintains that Anadarko is liable as an operator as a matter of law under the CWA by virtue of its interest in the lease for the Macondo Prospect and the unique statutory scheme of the Outer Continental Shelf Lands Act ("OSCLA"), see [Rec. Doc. 2587] at 20-25, Anadarko contends that the fact-bound standard set forth in *United States v. Bestfoods*, 524 U.S. 51 (1998) applies in this case.  *See* Memorandum in Support of AE&P Motion to Dismiss United States' Complaint [Rec. Doc. 1816-1] at 24-25.  Under *Bestfoods*, an entity must "manage, direct, or conduct operations specifically related to pollution," through, for example, involvement in decisions related to environmental compliance.  524 U.S. at 66-67.  Evidence relating to the extent of Anadarko's knowledge of Macondo operations may shed light on or overlap with evidence demonstrating Anadarko's involvement in decisions leading up to the blowout.

Evidence that is encompassed by Anadarko's motion *in limine* also is relevant to its liability as an owner.  Anadarko's list of exhibits it wishes to eliminate from the Phase One trial, referenced *supra* at n.1, not only contain information related to its access to information about operations at the Macondo Well, but also go more broadly to its financial dealings with BP and

agreements to fund operations and equipment at the Well.  Anadarko's funding of tangible components comprising the Well support its ownership liability.

Moreover, evidence that Anadarko seeks to exclude may be relevant to certain CWA penalty factors.  While Section 311(b), 33 U.S.C. § 1321(b), imposes "absolute liability," *Coastal States*, 643 F.2d at 1127, evidence with regard to the various statutory penalty factors set forth in Section 311(b)(8), 33 U.S.C. § 1321(b)(8), inform an assessment of the appropriate penalty amount.  For example, the extent to which Anadarko conducted due diligence prior to partnering with BP and signing on for an interest in the Well may provide evidence regarding its culpability.  Evidence that Anadarko, a sophisticated party in Gulf oil and gas exploration, was aware of pre-Incident well control or safety issues, but continued to contribute financially towards operations at the Well with the expectation of profit, likely would be relevant to the culpability factor.

This and other evidence that relates to Anadarko's involvement in the events leading up to the April 20, 2010 blowout most appropriately fits in the Phase One trial.  While other CWA 311 penalty factors more clearly implicate evidence that that would be received in Phase Two, Phase Three (e.g., evidence related to source control, volume, or efforts taken to mitigate the damage from the oil) or in a yet-to-be-scheduled Phase in which the Court will be called upon to assess a specific dollar amount of the civil penalty under the CWA, the evidence that Anadarko seeks to exclude dovetails with other evidence that will be presented in the Phase One trial.

For example, BP's monitoring of the well and well control issues will be at issue in Phase One and will involve witnesses and evidence that overlap with the witnesses and evidence related to Anadarko's sophisticated tracking of developments at the Macondo Well.  BP witnesses involved in well drilling and other operations may also be able to provide testimony as

8

to BP's relationship with Anadarko and Anadarko's dealings with respect to the Well. Introducing such evidence in Phase One helps to reduce duplication and promote efficiencies, and, as discussed *supra* at Part II, in fact is required by Pre-Trial Order 41. PTO 41 [Rec. Doc. 4083] at 4 (Parties "should not expect they will be permitted to fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase . . . .").

In the bench trial contemplated here, the Court will receive evidence that bears on numerous parties' claims and defenses under various statutes, legal standards, and theories. As long as the evidence goes to pre-explosion actions or inactions of a defendant and is relevant to some, even if not all, of the pending claims, the efficient approach (and the one likely to help the Court determine what really happened here) is to receive all evidence at the same time, in Phase One.

In sum, Anadarko's motion, which exclusively addresses issues related to the Oil Pollution Act and maritime law in the context of claims and cross-claims of the private plaintiffs and defendants, would inappropriately exclude evidence relevant to the United States' pending claims for Clean Water Act penalties and OPA liability limits from Phase One. Because Anadarko's motion broadly applies to "all parties" seeking adjudication of issues in the Phase One trial, it must be rejected.

DATE: November 8, 2011

Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO | TONY WEST |
| Assistant Attorney General | Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |

| | |
|---|---|
| JAMES NICOLL | PETER F. FROST |
| Senior Counsel | Director, Torts Branch, Civil Division |
| NANCY FLICKINGER | Admiralty and Aviation |
| SARAH HIMMELHOCH | STEPHEN G. FLYNN, |
| Senior Attorneys | Assistant Director |
| DEANNA CHANG | MICHELLE DELEMARRE |
| SCOTT CERNICH | SHARON SHUTLER |
| A. NATHANIEL CHAKERES | JESSICA SULLIVAN |
| JUDY HARVEY | JESSICA MCCLELLAN |
| MATT LEOPOLD | DAVID PFEFFER |
| Trial Attorneys | Trial Attorneys |
| | |
| /s/ Steven O'Rourke | /s/ R. Michael Underhill |
| STEVEN O'ROURKE | R. MICHAEL UNDERHILL, T.A. |
| Senior Attorney | Attorney in Charge, West Coast Office |
| Environmental Enforcement Section | Torts Branch, Civil Division |
| U.S. Department of Justice | U.S. Department of Justice |
| P.O. Box 7611 | 7-5395 Federal Bldg, Box 36028 |
| Washington, D.C. 20044 | 450 Golden Gate Avenue |
| Telephone: 202-514-2779 | San Francisco, CA 94102-3463 |
| Facsimile: 202-514-2583 | Telephone: 415-436-6648 |
| E-mail: steve.o'rourke@usdoj.gov | Facsimile: 415-436-6632 |
| | E-mail: mike.underhill@usdoj.gov |

JIM LETTEN
United States Attorney
SHARON SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing United States of America's Opposition to Anadarko Entities' "Motion *In Limine* to Exclude Evidence Regarding Anadarko Entities' Knowledge or Access to Information About Well Design And/Or Operations on the Macondo Prospect From the Limitation of Liability Trial" has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of November, 2011.

/s/ *Steven O'Rourke*
Steven O'Rourke