UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § | MDL No. 2179<br><br>SECTION:  J<br><br>JUDGE BARBIER<br><br>MAG. JUDGE SHUSHAN |
| Applies to:   All Cases | | |

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS**

Halliburton Energy Services, Inc. ("HESI") responds to Anadarko Petroleum Corporation ("APC") and Anadarko E&P LP Company LP ("Anadarko E&P") (collectively "Andarko")'s Motion *in Limine* to exclude evidence relating to Anadarko's knowledge of, or access to information about, the design of the Macondo well or operations on the Macondo prospect from the limitations of liability trial scheduled to begin on February 27, 2012.  Rec. doc. 4319.  HESI asks this Court to deny Anadarko's motion *in limine*[1] and would show the Court as follows.

## INTRODUCTION AND PROCEDURAL HISTORY

Pending before this Court are Anadarko's motions to dismiss the cross-claims against it and responses thereto which raise issues overlapping its motion *in limine* as all are premised on the idea that Anadarko was merely a passive investor in the Macondo Well and had no authority to take any actions that could have prevented the April 20, 2010, blowout and explosion aboard

---

[1] MOEX Offshore 2007 LLC and MOEX USA Corporation (collectively, "MOEX") joined in Anadarko's arguments in its motion *in limine* and accompanying brief.  Rec. doc. 4498.  HESI's response applies to MOEX as well.

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 1 of 10

the MODU *Deepwater Horizon* ("the Incident") or mitigated the damages arising therefrom.  *See* Rec. docs. 2479, 2924, 2927, 3260; *see also* Rec. doc. 4273, 4304, 4310, 4316, 4322 (responses thereto);[2] Rec. doc. 4282 (Anadarko's Objections to the PSC's 'Sample 300' Trial Exhibit List).

In its First Amended Cross-Claims, HESI alleged contribution, indemnity, negligence, gross negligence, and willful misconduct claims against Anadarko arising out of the Incident. *See* HESI's First Am. Cross-Claims ("HESI's Cross-Claims") Rec. doc. 445 at ¶¶ 1, 11-14, 34-35, 38-38, 46-50.  HESI argues that Anadarko owed a duty of care to HESI because the blowout and explosion were eminently foreseeable to Anadarko but it failed to prevent the Incident. Furthermore, HESI has sufficiently pled that Anadarko did in fact have operational control. Moreover, Anadarko authorized unsafe practices and negligently entrusted decisions related to the Macondo Well and the *Deepwater Horizon* to BP thus subjecting Anadarko to liability.

On August 26, 2011, this Court entered its Order and Reasons as to Motions to Dismiss the B1 Master Complaint ("Order and Reasons").  Rec. doc. 3830.  The Court concluded, among other things, that:  (1) general maritime law applies in this matter, to the extent it is not displaced by federal statute; (2) general maritime law claims against non-Responsible parties are not displaced by the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq.*; and (3) the PSC's negligence claims against Anadarko and MOEX should be dismissed.  *See* Order and Reasons (Rec. doc. 3830) at 11, 25-29.  Anadarko E&P remains subject to liability under OPA as a designated responsible party.  *See id.*, at 39.

---

[2] MOEX filed similar motions to dismiss based on a similar premise.  *See* Rec. doc. 2882, 2885, 4310 (response), 4489, 4493 (replies).

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 2 of 10**

Because HESI has alleged sufficient facts to support its claims against Anadarko and because Anadarko E&P remains subject to OPA liability, the evidence regarding Anadarko's knowledge or access to information about well design and/or operations on the Macondo should not be excluded.

In addition, the evidence Anadarko wishes to limine out of the trial has application beyond claims against Anadarko. The evidence also sheds light on BP's actions during the operation of the Macondo well leading up to the Incident on April 20, 2010.[3] Consequently, the evidence Anadarko seeks to exclude from the trial should be admitted for the purposes of HESI proving its claims and defenses vis-à-vis BP.

## ARGUMENT

**I.    The challenged evidence is admissible and relevant to HESI's cross-claims against Anadarko.**

    **A.    HESI's allegations against Anadarko are intertwined with Anadarko's working relationship with BP.**

In its First Amended Cross-Claim, HESI makes the following allegations against Anadarko based in part on the terms of the Joint Operating Agreement ("JOA") entered into by and between Anadarko E&P, Anadarko Petroleum, MOEX Offshore, MOEX USA, and MOECO ("collectively, the "Non-Operating Cross-Defendants") and BP:

> (a)    The JOA required BP to obtain the approval of the Non-Operating Cross-Defendants to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking their authorization for the expenditure of funds and/or by seeking their election or vote to participate in the next stage of operations. HESI's Cross-Claims at ¶ 46.

---

[3] The PSC included the Anadarko exhibits on its Sample 300 list for this very reason. *See* Rec. doc. 4485 at 2 (as submitted under seal).

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 3 of 10**

(b)  The JOA further required BP to provide the Non-Operating Cross-Defendants with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information. The Non-Operating Cross-Defendants had the right to and did obtain "real-time" data as set forth in Section 5.7 of the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data from the rig. HESI's Cross-Claims at ¶ 47.

(c)  The JOA provided for the prompt invoicing by BP of costs incurred under the JOA and prompt payment of their agreed-upon share by the Non-Operating Cross-Defendants, including, based upon information and belief, the costs of the well casing and wellhead and other materials purchased by BP. HESI's Cross-Claims at ¶ 48.

(d)  The JOA provided the Non-Operating Cross-Defendants with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease. *Id.*

(e)  The JOA allocated joint control of the entire venture among Anadarko, MOEX, and BP. Each party had a voting interest equal to its working or participating interest. JOA ¶ 8.1.1. BP was prohibited from making expenditures in excess of $500,000 without prior approval of the participating parties. JOA ¶ 6.2. The JOA provided procedures to challenge BP's conduct of operations. JOA ¶ 4.2. The JOA also provided for the removal of BP as Operator. JOA ¶ 4.4.

(f)  On various dates, the Non-Operating Cross Defendants each designated BP as their operator and local agent, with full authority to act on their behalf in complying with the terms of the Lease and applicable regulations. HESI's Cross-Claims at ¶ 49.

(g)  The Non-Operating Cross-Defendants are liable for the acts and omissions of their agent, BP. The Non-Operating Cross-Defendants were further negligent, and/or acted with willful misconduct (1) because they approved, authorized, and participated in BP's grossly negligent design and operations of the well, (2) because they knew, or should have known, of the presence of hydrocarbons in the well on the evening of April 20, 2010 and failed to warn the drilling vessel crew of the imminent blowout so that the drilling vessel crew could take action, and (3) because they entrusted BP to make decisions relative to the Lease and to the *DEEPWATER HORIZON'S* drilling operations. HESI's Cross-Claims at ¶¶ 49-50.

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 4 of 10**

1787510 v1-24010/0002 PLEADINGS

Anadarko's knowledge of and access to information regarding the well design and operations are intertwined with its working relationship with BP whether by the terms of their contract or in fact in the months and weeks leading up to the Incident.[4]

### B. Anadarko in fact acted in accordance with its joint venture, contractual relationship with BP by monitoring the progress of the Macondo Well and granting its approval at critical steps.

When not thwarted by BP's lack of communication with its contracting partners, Anadarko in fact kept itself apprised of the activities on the *Deepwater Horizon* and the design of the Macondo Well as it exercised its contractual rights to approve certain critical decisions by BP.[5] Anadarko had unrestricted access to InSite Anywhere, which allowed it to monitor real-time data at any time, and to Wellspace, which allowed it to access reports, logs and other data regarding operations and analyses, including geological and petrophysical data.[6] Anadarko received daily operating and drilling reports, mudlogging reports, PP/FG reports, wireline and LWD logs, shallow hazard reports, and geological reports. Anadarko routinely kept itself apprised of daily developments and operational issues with the Macondo Well, reviewed the drilling plan, casing plan, and casing points, tracking mud weight, pore pressure and fracture gradient, and reviewing information regarding well control events. Anadarko closely evaluated geologic and lithographic information and diligently evaluated the sands, was specifically aware of BP's well design, casing, and completion plans, and Anadarko and MOEX received and approved BP's authorizations for expenditures ("AFEs") relating to changes in well design and

---

[4] MOEX had similar powers under the JOA and HESI has made similar allegations against MOEX. *See* Rec. doc. 4310 at 5-6, 11-12.

[5] MOEX took similar actions in accordance with its agreements with BP as previously briefed to this Court. *See* Rec. doc. 4310 at 12-18.

[6] InSite Anywhere and Wellspace are HESI proprietary programs containing real-time data.

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 5 of 10**

operational modifications. Moreover, Anadarko had specific knowledge of Mississippi Canyon 252 geology, having submitted a bid for the MC 252 block at the MMS auction and had substantial Mississippi Canyon expertise due to its ownership interests in numerous Mississippi Canyon blocks as well as leases in nearby blocks exhibiting similar geology. In its experience as an operator, Anadarko had firsthand knowledge that a Gulf of Mexico well with a narrow pore pressure and fracture gradient margin can have a catastrophic blowout, having experienced such an event in a Gulf of Mexico well in 2003.

In sum, Anadarko was not a completely passive investor, and in fact had the contractual and practical authority to have input into key decisions about the operations of the Macondo Well. *See Serigne v. Cox Operating, LLC*, No. 06-5861, 2008 U.S. Dist. LEXIS 89792, at *17-18 (E.D. La. Aug. 26, 2008); *Calcote v. Coulon Sports Fishing Co.*, No. 92-3157, 1993 U.S. Dist. Lexis 16662, *5-8 (E.D. La. Nov. 22 1993). Moreover, a principal may be liable for the acts of an independent contractor where the principal expressly or impliedly authorizes an unsafe practice. *See Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987). Anadarko's role in the Macondo Well was beyond that of a passive investor, and even if its role was so limited, it expressly or impliedly authorized unsafe practices by its approval of the AFEs.

Anadarko, as co-lessee under a JOA worth millions of dollars, with unfettered access to information about the Macondo Well, and knowledge about operations, well planning and design, the geological formations in the well, drilling speed, tight margins, and numerous problems, delays, cost overruns, safety, and well integrity issues foresaw, or should have foreseen, the exact type of harm at issue. Thus, there is ample support for this Court to find that Anadarko owed a duty of care to HESI and others. HESI has stated a plausible claim that

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 6 of 10**

Anadarko negligently entrusted BP to direct operations on the Macondo Well.  Moreover, HESI alleges facts that underlie its claim that Anadarko negligently entrusted BP with substantial operational control on the Macondo Well — despite its knowledge of BP's notorious history of safety violations are still the subject of discovery.  Under the JOA and subsequent related BP-Anadarko agreements, Anadarko had to approve certain decisions, including critical decisions near the time of the Incident such as the design of the production casing, *see* Exs. 2636, 2855, or temporarily abandoning the well.  Ex. 2991.[7]

Consequently, evidence regarding Anadarko's knowledge of and access to information about the well design and operations of the Macondo Well is highly relevant to HESI's claims against Anadarko during the Phase One trial and should not be excluded.

## II.     The evidence is relevant to HESI's defenses regardless of any claims against Anadarko.

During the February 2012 limitation of liability trial, this Court will determine the percentage responsibility of each party for the Incident at the Macondo Well.  Rec. doc. 4083 at 1-2.  The PSC's OPA claims against Anadarko E&P remain.  Rec. doc. 3830 at 35, 39.  Most importantly, the trial "will address issues arising out of the conduct of various parties, third parties, and non-parties allegedly relevant" to the loss of well control and the ensuing explosion.  Rec. doc. 4083 at 2.  Thus, even if all claims against Anadarko are dismissed, the facts and evidence surrounding what Anadarko knew about well design and operations are still relevant to the trial.

---

[7] Each of these three exhibits is listed on Anadarko's Objections to the PSC's 'Sample 300' Trial Exhibit List.  Rec. doc. 4282.  Moreover, the PSC's letter in opposition to Anadarko's motion in limine, as filed under seal discusses these exhibits.  *See* Rec. doc. 4485 at 5 (Ex. 2991), 6 (Ex. 2636), 9 (Ex. 2855).

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 7 of 10**

1787510 v1-24010/0002 PLEADINGS

HESI joins the position the PSC has taken in opposition to Anadarko's motion *in limine* that the Anadarko exhibits are relevant to "*BP's knowledge* of geological, well design, and well control issues; BP's pattern of unwillingness to provide material information to its drilling partners (and, by inference, its contractors); and the financial pressure driving BP to drill the Macondo well as quickly and cheaply as possible."  Rec. doc. 4485 at 2; *see also* Rec. doc. 4485 (as submitted under seal) at 3-10 and exhibits cited therein; *e.g.*, Exhibits 1917, 1928, 1947, 2691 discussed at *id.*, 7-8).

In sum, the evidence regarding Anadarko's knowledge of and access to information about the well design and operations remains relevant to the issues at trial regardless of whether HESI or other parties have claims against Anadarko directly.  This Court should deny Anadarko's motion *in limine*.

Dated:  November 8, 2011.

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 8 of 10**

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 9 of 10**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Halliburton Energy Services, Inc.'s *Response to Anadarko's Motion in Limine to Exclude Evidence Regarding the its Knowledge or Access to Information About Well Design and/or Operations* was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 8th day of November, 2011.

/s/ Donald E. Godwin
Donald E. Godwin

**HALLIBURTON ENERGY SERVICES, INC.'S OPPOSITION TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ITS KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS – Page 10 of 10**

1787510 v1-24010/0002 PLEADINGS