**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>All cases. | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S RESPONSE IN OPPOSITION
TO ANADARKO'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE**

TO THE HONORABLE JUDGE CARL J. BARBIER:

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean") and file this, their Response in Opposition to Anadarko's[1] Motion *in Limine* to Exclude Evidence Regarding Anadarko's Knowledge or Access to Information about Well Design or Operations on the Macondo Prospect from the Limitation of Liability Trial, **Rec. Doc. 4319** (filed in the Limitation proceedings). For the reasons set forth below, Anadarko's motion must be denied.

**BACKGROUND**

Relying on the dismissal of several claims against Anadarko in the Court's B1 and B3 Orders, Anadarko proposes that all that remains to be decided with regard to Anadarko is the fact of its ownership or interest in the Macondo lease. According to Anadarko, the only outstanding issue is whether Anadarko's involvement meets certain black-and-white statutory definitions. Anadarko states that evidence of its "purported knowledge or access to information about the Macondo well design or operations on the Macondo Prospect is irrelevant to any issue to be addressed in the Limitation of Liability trial, and must be excluded." **Rec. Doc. 4319-1, at 1.**

---

[1] "Anadarko" consists of Anadarko Petroleum Corp. and Anadarko E&P Co. LP.

Yet, as shown below, the matters to be tried are not as simple as Anadarko proposes. Anadarko is not the only defendant. This is a multi-party incident triggering the applicability of several different federal statutes which have specific requirements for the assessment of liability and the allocation of that liability. Specifically, as to Anadarko's motion *in limine*, the evidence Anadarko hopes to exclude is directly relevant both to Anadarko's own liability and to its co-defendants' defenses or liability, as well as the allocation of that liability, under both the Oil Pollution Act and the Clean Water Act. The Court's stated preference is for one Trial. The Trial beginning in February 2012 "will address all allocation of fault issues that may properly be tried to the Bench without a jury, including the negligence, gross negligence, or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, and nonparties with respect to the issues, including limitation of liability." **Rec. Doc. 4033** (PTO No. 41/CMO No. 3), **at 1.** In short: just because the Plaintiffs' fault-based, *Ainsworth*-type general maritime law claims against Anadarko did not survive the B1 and B3 Orders does not mean that Anadarko is done as far as its involvement in the incident and ensuing litigation are concerned, because the Trial will cover both "fault issues" and "other bases of liability," as well as allocation of this liability.

Anadarko seems to acknowledge that the evidence at issue may be relevant in *some part* of the Trial: Anadarko's motion proposes that the Court order the complete exclusion of the evidence from the *entire* "Limitation of Liability Trial . . . because such evidence is irrelevant to any party's claims or defenses to be addressed *in Phase One*." **Rec. Doc. 4319-2, at 1** (emphasis added). Yet the Court has already addressed this issue in Pre-Trial Order No. 41/Case Management Order No. 3:

> All parties shall present evidence relevant to a particular Phase during that Phase and should not expect they will be permitted to

> fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase; provided, however, that there may be circumstances in which it is appropriate to present evidence in one phase that is relevant to another phase—such as, but not limited to, where the evidence is relevant to more than one phase or where efficiency is best served by permitting evidence to be admitted in more than one phase.

**Rec. Doc. 4033, at 3.** Even if Anadarko were correct (and it is not) that the evidence it wishes to exclude is irrelevant in Phase One, its relevance in the other Phases compels its admissibility and consideration any time it fits into the Court's chronological, development-based Trial plan.

## THE COURT'S B1 AND B3 ORDERS

In the B1 Order, **Rec. Doc. 3830**, the Court concluded that "Plaintiffs have failed to allege a plausible general maritime negligence claim against" Anadarko, and all "general maritime negligence claims against Anadarko . . . must be dismissed," *id.* **at 29.** The Court also noted, however: "Because it is plausible that Anadarko . . . will be found to be [a] Responsible Part[y] and thus liable under OPA, OPA claims are not dismissed." *Id.* **n.12.** The Court confirmed this in its B3 Order, **Rec. Doc. 4159**, observing that the B1 Order "preserved claims brought under OPA against [Anadarko]," *id.* **at 6.**

In other words, the Plaintiffs' complaints in the B1 and B3 Bundles did not allege a general maritime law negligence claim against Anadarko that met the standard in *Ainsworth*. But the OPA issues—whether those alleged by the Plaintiffs or those brought by the governmental entities—remain viable even after the B1 and B3 Orders.

## ANADARKO'S MOTION AND SUPPORTING MEMORANDUM

As stated previously, the language of Anadarko's motion *in limine* purports to exclude evidence "from the Limitation of Liability Trial scheduled to begin February 27, 2012." **Rec. Doc. 4319, at 1**. Anadarko's accompanying order in turn contains language that would preclude

3

the parties from introducing evidence in the *entire* Limitation of Liability Trial, "because such evidence is irrelevant to any parties' claims or defenses to be addressed in *Phase One*" of the Limitation of Liability Trial.

A substantial portion of Anadarko's memorandum specifically addresses what it refers to as the PSC's improper exemplar exhibits that would be excluded if Anadarko's Motion is granted.  **Rec. Doc. 4319-1, at 4–5 & n.4**.  In this opposition, Transocean does not intend to address the specifics of the PSC's exhibits and, instead, assumes that the PSC will file a response in opposition addressing its particular exemplar exhibits.[2]  However, Anadarko's memorandum also asserts that Anadarko's knowledge is irrelevant to the cross-claims and to allocation of fault, which directly impacts Transocean and which necessitates this opposition.  **Rec. Doc. 4319-1, at 5–10**.  For the following reasons, Anadarko's motion should be denied.

## ARGUMENT

### I.  THE EVIDENCE IS RELEVANT UNDER THE OIL POLLUTION ACT.

Anadarko argues that the only evidence relevant to the OPA aspects of this litigation is "whether Anadarko was a leaseholder subject to strict liability as a responsible party under OPA," and all evidence that does not support that proposition must be excluded.  **Rec. Doc. 4319-1, at 4.**  But OPA does not stop at § 2702(a).  As just one example of its complexity—and why a broad motion *in limine* is inadequate in light of the manifold issues to be tried—OPA imposes definite limits on the damages that can be imposed pursuant to the strict liability it establishes.  *See* 33 U.S.C. § 2704(a) ("Except as otherwise provided in this section, the total of the liability of a responsible party under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed" certain

---

[2] For the purposes of responding to this motion (and for the sake of simplicity since it is relevant no matter how characterized), Transocean will accept Anadarko's broad characterization of the evidence it seeks to exclude.

4

defined limits). But OPA's relative softening of the harshness of strict liability by way of damage caps does not apply in circumstances where a responsible party does not warrant soft treatment. *See id.* § 2704(c)(1)–(2) (discussing culpability of responsible party).

Unlike BP, Anadarko has not waived OPA's damage caps or limitations, and they are likely to be an issue at Trial. Thus, there are OPA-related issues that go beyond Anadarko's oversimplification of the question as being whether Anadarko was a lessee or not. *See* **Rec. Doc. 4319-1, at 4** (Anadarko describes the only issue as being "whether Anadarko was a leaseholder subject to strict liability as a responsible party under OPA"). Because the evidence is relevant in assessing liability under the plain language of OPA, and because every Phase of this multi-defendant litigation is much more complicated than the mere question of whether Anadarko did or did not own part of the Macondo lease, its motion *in limine* must be denied.

## II. THE EVIDENCE IS RELEVANT UNDER THE CLEAN WATER ACT.

While the CWA may also impose strict liability like OPA, it—like OPA—goes beyond strict liability in permitting consideration of a variety of factors in imposing damages against parties liable under the CWA. For example, the CWA assesses civil penalties against "[a]ny person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation" of the CWA. *See* 33 U.S.C. § 1321(b)(7). Similar to OPA, it sets per-day or per-barrel caps on the dollar amount of those penalties. *See id.* The CWA is like OPA in another way, in that whether or not those caps are reached depends upon the culpability of a CWA violator, and a host of other factors:

> **(8) Determination of amount.—**
> In determining the amount of a civil penalty under paragraphs (6) and (7), the Administrator, Secretary, or the court, as the case may be, shall consider the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for

> the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, ***and any other matters as justice may require.***

*See id.* § 1321(b)(8) (emphasis added).  Again, while the basis for CWA liability may very well be strict, the basis for the quantum of that liability is anything but strict.  The above-quoted factors for assessing CWA penalties are as broad as can be imagined to permit the Court to fashion remedies on a case-by-case basis.  For example, the United States will no doubt attempt to use these factors, and all relevant supporting evidence, to convince the Court to impose the maximum allowable civil penalties under the CWA.  Conversely, Transocean—and probably other defendants, such as Anadarko—will rely on these factors and all supporting evidence to urge the Court to depart downward from the maximum penalty amounts set by statute.  In each case, the proponent of the evidence will argue that "justice . . . require[s]" consideration of the sort of evidence Anadarko wishes prematurely to exclude.  *See id.*  This is just one example of how the evidence will definitely be relevant under the CWA.

The evidence Anadarko wishes to keep out of the Trial is just as relevant to the CWA aspects of the case just as it is to the OPA components.  According to the Court's B1 and B3 Orders, general maritime law negligence claims against Anadarko were dismissed owing to the deficiencies in the Plaintiffs' allegations under the *Ainsworth* authority.  Yet this does not simply render irrelevant all evidence of Anadarko's involvement with this entire incident, especially where the parties and Court would prefer no repetition in the trial of this case.  As noted above, the OPA and CWA may provide for strict liability as a threshold matter.  But beyond that, their provisions require consideration of a multitude of factors in determining how much a violator will have to pay.  Further, the Court has specifically stated that the OPA claims—which require

6

far more consideration than whether Anadarko is a lessee or not—remain pending.  Thus, Anadarko should not be able to insulate itself from any further evidence of its actions by hiding behind one, limited 12(b)(6) victory for the rest of this case.

### III.    THE EVIDENCE IS RELEVANT TO THE OPA CROSS-CLAIMS.

In separate filings, Anadarko has moved to dismiss Transocean's (and other co-defendants') cross-claims against it on the ground that Anadarko allegedly bears no fault for the incident and, therefore, cannot be liable for contribution and indemnity under OPA or general maritime law.  **Rec. Doc. 2479**; *see also* **Rec. Doc. 2924.**  In its recently filed memorandum in support of its motion *in limine*, Anadarko argues: "For the same reason that all Cross-Claims against Anadarko must be dismissed, Anadarko's knowledge or access to information is irrelevant to allocation of fault in this case." *Id.* **at 6.**

Transocean, and other co-defendants, have filed responses in opposition to Anadarko's motion to dismiss the cross-claims.  **Rec. Doc. 4273** (Transocean)**; Rec. Doc. 4304** (Cameron)**; Rec. Doc. 4310** (Halliburton)**; Rec. Doc. 4316** (Weatherford).  Therefore, neither Transocean, nor its co-defendants, concede that their cross-claims against Anadarko should be dismissed.  It follows that, if the Court denies Anadarko's motion to dismiss Transocean's and the other co-defendants' cross-claims, it should similarly deny Anadarko's motion to exclude evidence relevant to those cross-claims and to allocation of fault between these parties.  Therefore, as a preliminary response, Transocean submits that the Court should defer any ruling on Anadarko's motion *in limine* until it addresses the propriety of the underlying cross-claims.

Turning to the merits of Anadarko's motion, Anadarko makes three contentions: (1) contribution claims under OPA and maritime law are governed by principles of proportionate fault; (2) any evidence intended to demonstrate Anadarko's fault—including evidence of its

7

purported knowledge or access to information—must be excluded from Phase One of the Trial; and (3) no factors other than fault are relevant in an OPA or maritime law contribution action.

Anadarko's motion *in limine* is necessarily premised upon the Court's B1 ruling which applied the *Ainsworth* analysis to the general maritime law negligence claims. In conjunction with the Court's B1 ruling, Anadarko essentially offers the basic proposition that contribution claims under the general maritime law are governed by principles of proportionate fault, a proposition with which Transocean agrees. But the authorities Anadarko cites in support of its motion dealt only with contribution claims under OPA's Section 2709 that were brought under "another law."[3] And while the authorities cited by Anadarko do indeed set forth this very basic proportionate fault principle as applied in the context of general maritime contribution actions, all of these authorities relate to contribution claims brought under "another law," not under OPA.

OPA provides that a responsible party who has incurred OPA liability may bring a civil action for contribution against any other person **who is liable or potentially liable under this Act (OPA) <u>or</u>** who is liable or potentially liable under "another law," such as general maritime law, or, in some cases not applicable here, State law. *See* 33 U.S.C. § 2709 ("A person may bring a civil action for contribution against any other person **who is liable or potentially liable under this Act or another law**. The action shall be brought in accordance with Section 2717 of this Title." (emphasis added)). Therefore, there are two possible claims for contribution under OPA's section 2709. The first is a claim for contribution under the Act—under OPA—and the second is a claim for contribution under "another law"; here, maritime law. Anadarko's memorandum therefore extends the basic contribution/proportionate fault principle too broadly when it asserts

---

[3] Anadarko cites *Posavina Shipping Co. v. Alex C Corp.*, 210 WL 4292328, at *15 (D. Mass.), *Cape Flattery Ltd. v. Titan Maritime LLC*, 607 F. Supp. 2d 1179, 1188-89 (D. Hi. 2009), *Maritime Pipeline Co. v. LaRoche Industries Inc.*, 944 F. Supp. 476, 479 (E.D. La. 1996), and the *Schoenbaum* treatise, for the proposition that "in a contribution action arising from an OPA case, liability must be allocated in proportion to the parties' percentage of fault."

56816:10089696

that "[n]o factor other than fault is relevant **in an OPA** or maritime law contribution action." **Rec. Doc. 4319-1, at 9** (emphasis added). While Transocean agrees that this Court's *Ainsworth* analysis is undoubtedly relevant to, and impacts, contribution claims under general maritime law, and therefore may impact evidence relevant to contribution claims under the general maritime law, the Court's B1 ruling also preserved OPA claims, including contribution claims under OPA.

Here, Anadarko has been named a responsible party with respect to the discharge of crude oil from the wellhead, below the surface of the water.[4] In contrast, Transocean has been named a responsible party with respect to discharge of diesel above the surface of the water.[5] As Transocean argues in response to Anadarko's/MOEX's motion to dismiss Transocean's cross-claims, **Rec. Doc. 4273**, contribution under OPA is not necessarily based on fault. For this reason, this Court's previous determination that the pleadings do not sufficiently allege fault by Anadarko does not preclude a claim by Transocean (or other co-defendants) for contribution under OPA, as Anadarko has been named a responsible party under OPA by the Coast Guard. As previously argued in that opposition, just a few hypothetical examples demonstrate that the underlying premise of Anadarko's motion—that no factors other than fault are relevant to the allocation of liability under OPA—must be rejected.[6] And if contribution claims under OPA can

---

[4] *See, e.g.*, **Rec. Doc. 1128, at 53 ¶ 210, at 176 ¶ 680; Rec. Doc. 1510, at 7 ¶ 179, at 130 ¶ 661.**

[5] *See, e.g.*, **Rec. Doc. 1128, at 58 ¶ 223, at 176 ¶ 680; Rec. Doc. 1510, at 11-12 ¶ 192, at 130 ¶ 661.**

[6] *See* **Rec. Doc. 4273, at 5–6**. These hypothetical situations are as follows:

1. A single vessel owned in equal shares by A, B and C discharges oil. No party is negligent. A, B and C are each named responsible parties. Plaintiffs suffer economic loss recoverable under OPA but not recoverable under general maritime law. Plaintiffs pursue their OPA claims solely against A and obtain a judgment for all of their damages. Transocean submits that Section 2709 would allow A to seek contribution "under this Act" from B and C, the other responsible parties, and the loss would likely be allocated based on their equal ownership interests.
2. Vessel A collides with Vessel B, causing a discharge of 10 barrels of oil from Vessel A and a discharge of 990 barrels of oil from Vessel B. No party is negligent. The owner of Vessel A and the owner of Vessel B are both named as responsible parties. Plaintiffs suffer economic loss

be based on factors other than fault, then the underlying premise of Anadarko's entire motion *in limine* is flawed and the motion should be denied.

Further, the admissibility of any and all evidence that may be pertinent to the Court's determination of the allocation of liability on an OPA contribution claim in this case should and need not be decided now, particularly since in this case the issue of whether Transocean is jointly and severally liable with BP, Anadarko and MOEX is itself disputed, and the Court has not yet considered that issue. What is clear is that the court could consider allocating liability on an OPA contribution claim on a basis other than fault. Evidence which may be relevant to allocating liability between co-defendants on some basis other than fault may be relevant to the OPA contribution claims and, for this reason, Anadarko's motion should be denied.

---

recoverable under OPA but not recoverable under general maritime law. Plaintiffs pursue their OPA claims solely against the owner of Vessel A and obtain a judgment for all of their damages. Transocean submits that Section 2709 would allow the owner of Vessel A to seek contribution "under this Act" from the owner of Vessel B, and the loss would likely be allocated based on the relative quantity of oil that was discharged from each vessel. The owner of Vessel A would likely recover 99% of the damages from the owner of Vessel B.

3. Same facts as in hypothetical 2, except the relative fault of Vessel A and Vessel B are disputed. Transocean submits that Section 2709 would allow the owner of Vessel A to seek contribution "under this Act" from the owner of Vessel B, and believes the court would consider the equities of the entire case in determining whether to allocate the loss based on the relative quantity of oil that was discharged from each vessel, or whether to try the issue of fault and allocate liability based on fault.

## **CONCLUSION**

For all of the reasons above, Anadarko's motion *in limine* should be denied.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

11

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of November, 2011, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/  Kerry J. Miller

12

56816:10089696