# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PINELLAS MARINE SALVAGE, INC., and
JOHN MAVROGIANNIS

      Plaintiffs,

                                           Case No. 8:11-cv-00582-EAK-TBM

v.

KENNETH R. FEINBERG, and           On Removal from the Circuit Court
FEINBERG ROZEN, LLP,                of the Sixth Judicial Circuit In and
d/b/a GULF COAST CLAIMS FACILITY    For Pinellas County, Florida
                                       Case No. 11-1744 CI 013

      Defendants.

_____/

## PLAINTIFFS' MOTION TO REMAND
## AND MEMORANDUM OF LAW

Pursuant to 28 U.S.C. § 1447(c) and this Court's local rules, Pinellas Marine Salvage, Inc. and John Mavrogiannis ("Plaintiffs"), by and through their undersigned counsel, hereby move to remand this case to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida for the reasons set out herein.

## PRELIMINARY STATEMENT

Defendants, with 13 offices located in the State of Florida, independently administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Defendants, while repeatedly claiming the protocols under which they operate are structured to be compliant with the Oil Pollution Act of 1990 ("OPA") and apply the standards of OPA, circumvent many of the rights provided to victims of the BP oil spill under OPA. Defendants, in part by making

numerous false statements of material fact to Plaintiffs (*See* Complaint, ¶ 136), breached

their legal duty to Plaintiffs, failed to exercise reasonable care, and acted with reckless, willful,

and wanton disregard for the business and livelihood of Plaintiffs in their negligent operation of

Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and

payment services. Defendants knew or should have known that their conduct, commonly referred

to as a "Delay, Deny, Defend" strategy, would foreseeably result in the financial ruin of Plaintiff

Pinellas Marine Salvage, Inc. ("PMS") and cause irreversible damage to the health and the

economic interests of Plaintiff John Mavrogiannis.

Plaintiff PMS is a close corporation organized under the laws of the State of Florida.

PMS, believed to be the only full-service marine salvage facility on the west coast of Florida

serving the Gulf Coast states of Louisiana, Mississippi, Alabama and Florida, was founded in

January, 1997 by Plaintiff John Mavrogiannis. The company's principal place of business is

located in Pinellas County at 198 E. Oakwood Street, Tarpon Springs, FL 34689. As a direct and

proximate result of Defendants' conduct, Plaintiffs have suffered legal injury and damages, in an

amount to be proven at trial, including, but not limited to, loss of profit, loss of business

reputation, loss of livelihood, loss of income, and other economic loss. Accordingly, Plaintiffs

filed this action against Defendants in Florida state court asserting claims arising exclusively

under Florida state law in order to obtain recovery for the damages they incurred.

Defendants improperly removed this action by alleging this Court has original

jurisdiction over this case under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

Defendants rely on two federal statutes - OPA and the Outer Continental Shelf Lands Act

("OCSLA") - to allege this Court has original federal subject matter jurisdiction over this action.

With respect to OPA, Defendants cannot cite to a single authority, statutory provision, or fragment of legislative history supporting their position that OPA creates a basis for removal in light of the fact that Plaintiffs do not assert a claim under OPA. Defendants merely state, "This case arises under OPA because..........all of Plaintiffs' claims assert violations of OPA and will require an interpretation of OPA notwithstanding that Plaintiffs' claims are purportedly asserted under state law." Plaintiffs' allegations that Defendants violate OPA are evidence of Defendants' violation of their duty of due care, but do not create a removable federal question.

In addition, the Court should reject Defendants' argument that they could remove this action based on OCSLA because OCSLA does not create a federal question that justifies removal from state court.

With respect to diversity jurisdiction, as explained below, Defendants also fail to meet their burden of establishing the citizenship of the parties for the purpose of proving that complete diversity existed at the time of removal to the federal court.

In short, Defendants have no basis to remove this action.

## PROCEDURAL BACKGROUND

On February 25, 2011, Plaintiffs filed this action against Defendants in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida asserting claims for gross negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust enrichment. Defendants operate, conduct, engage in, or carry on a business or business venture in 13 offices located in the State of Florida, including one office in Pinellas County, Florida.

-3-

On March 18, 2011, Defendants removed this action on the erroneous grounds that this Court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.

## SUMMARY OF ARGUMENT

Defendants argue that removal is proper because:

(1) "Federal District Courts 'have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States;'" and "this case arises under OPA because.....all of Plaintiffs' claims assert violations of OPA and will require an interpretation of OPA notwithstanding that Plaintiffs' claims are purportedly asserted under state law;" (2) "33 U.S.C. § 2717(b) gives federal courts 'original jurisdiction over all controversies arising under this Act [OPA], without regard to the citizenship of the parties or the amount in controversy;'" (3) Plaintiffs' claims allegedly raise federal questions under OSCLA sufficient to support removal under 28 U.S.C. § 1441; and (4) Complete diversity exists between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000.00 thereby giving Defendants the right to remove the case under 28 U.S.C. § 1441.

All four arguments are without merit. Neither OPA nor OCSLA provides a basis for removal. Therefore, the Court lacks subject matter jurisdiction. First, Defendants were not permitted to remove this action on the ground that this case "arises under" OPA or that Plaintiffs' state law claims are preempted by federal law. Second, OPA does not provide original federal jurisdiction over claims for oil spill damages because it does not create a federal question where a plaintiff does not assert a claim under OPA's substantive provisions, nor does it preempt state common law claims. In the present case, Plaintiffs do not assert any claims under OPA and rely

-4-

solely on state law. Plaintiffs' allegations that Defendants violated OPA are merely evidence of, at the very least, Defendants' negligence and do not create a removable federal question; Third, removal under OCSLA's jurisdictional provision in 43 U.S.C. § 1349 was improper because: (i) OCSLA must be read in conjunction with the later-enacted provisions of OPA that specifically preserve victims' rights to seek remedies in state court under state law; and (ii) the original jurisdiction provision in 43 U.S.C. § 1349(b)(1)(A) does not transform state law claims into federal questions removable under 28 U.S.C. § 1441; Fourth, Defendants fail to meet their burden of establishing the citizenship of the parties for the purpose of proving that complete diversity existed at the time of removal to the federal court.

## ARGUMENT AND AUTHORITIES

### A.     The Standard For Removal

As the removing parties, Defendants bear the burden of establishing that removal is proper pursuant to 28 U.S.C. § 1441. The defendant must prove the jurisdictional requirements for removal by a preponderance of the evidence. *Leonard v. Enter. Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002). The Court must remand this case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper." *Gross v. Deberardinis*,722 F. Supp. 2d 532, 533 (D. Del. 2010) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 St. Ct. 868, 85 L. Ed. 1214 (1941). Even assuming Defendants' arguments may (but also may not) ultimately be successful in a motion to dismiss the state law claims, if this Court is uncertain whether it can exercise removal jurisdiction, it must err on the side of remand. Now is not the time to determine the merits of

Defendants' dismissal arguments. See *Hufnagel v. Omega Services Indus., Inc.*, 182 F. 3d 340, 345 (5th Cir. 1999) ("[A] district court should not pre-try a case to determine its removal jurisdiction."). *The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc.*, C.A. No. 1:10-cv-968-LPS, 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided).

The issue of removal jurisdiction must be "determined by reference to the well-pleaded complaint rule." *Merrell Dow Pharm. Inc.* v. *Thompson,* 478 U.S. 804, 808 (1986). That rule "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiffs properly pleaded complaint." *Caterpillar Inc.* v. *Williams,* 482 U.S. 386,392 (1987); *see also Westmoreland Hosp. Ass 'n* v. *Blue Cross of W Pa.,* 605 F.2d 119, 122 (3d Cir.1979) ("[A] 'right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiffs cause of action' and ... 'the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. '") (quoting *Gully* v. *First Nat 'I Bank,* 299 U.S. 109, 113 (1936)). Consequently, "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar,* 482 U.S. at 399. *The St. Joe Company,* 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided). A federal defense, or the anticipation of such defense in the complaint, is irrelevant in the well-pleaded complaint analysis. *See Beneficial Nat 'I Bank* v. *Anderson,* 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses."). "[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise ... or that a federal defense the defendant may raise is not sufficient to defeat the

claim." *Franchise Tax Bd. v. Constr. Laborers,* 463 U.S. 1, 10 (1983). No federal question is created by asserting that the state law on which a complaint is based has been preempted by federal law, i.e., a federal preemption defense. *See Beneficial Nat'l Bank,* 539 U.S. at 6 ("[A] defense that relies on ... the pre-emptive effect of a federal statute ... will not provide a basis for removal."). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff s complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar,* 482 U.S. at 393.

In *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004), the Eleventh Circuit clearly stated, "The Supreme Court has settled the law on how the citizenship of a limited partnership is determined for purposes of diversity jurisdiction. In *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990), the Supreme Court held that for purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens. In reaching this holding, the Court noted the long-standing rule that the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all the members composing the organization.494 U.S. at 195-96, 110 S.Ct. at 1021." In *Rolling Greens*, the Eleventh Circuit also clearly stated, "A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties." *Williams v. Best Buy Co., Inc.,* 269 F.3d at 1319 (11th Cir. 2001). Federal courts are directed to construe removal statutes strictly, resolve all doubts about jurisdiction in favor of remand, and employ a presumption in favor of remand to state courts. *Univ. of S. Ala. v. Am. Tobacco,* 168 F.3d 405, 411 (11th Cir. 1999).

**B.**  **Plaintiffs' Allegations That Defendants Violate OPA Are Evidence of Defendants' Violation of Their Duty of Due Care, But Do Not Create a Removable Federal Question**

Defendants erroneously contend that OPA provides a basis for removal because "all of Plaintiffs' claims assert violations of OPA and will require an interpretation of OPA....." This is inaccurate. For example, an interpretation of OPA shall not be required to prove Plaintiffs' fact-bound and situation-specific allegations in regard to false statements of material fact made to Plaintiffs (Complaint, ¶¶ 131, 136, 142), negligent operation of Defendants' claim intake, claim review, claim evaluation and claim settlement and payment services, and the "Delay, Deny, Defend" strategy employed by Defendants (Complaint, Counts I and II, ¶ 151).

Defendants "bear the burden of proving" that federal jurisdiction over this purely state-claim suit exists, and that it existed at the time of removal. *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294 (11th Cir. 2008). If the court has any doubts about the "propriety of federal jurisdiction," moreover, those doubts "should be resolved in favor of remand to the state court." *Id.* If federal jurisdiction does exist in this case, the basis for it must be present on the face of the complaint, *Kemp v. International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir. 1997), for the plaintiff is always the master of his own claim. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). This requires that we consider the allegations of Plaintiffs' Complaint to determine if the plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law." *Empire HealthChoice Assurance, Inc v. McVeigh,* 547 U.S. 677, 690 (2006).

Every claim alleged in Plaintiffs' Complaint arises under state, not federal, law and only a "special and small category" of such state law complaints could possibly raise the substantial

-8-

question of federal law necessary to justify removal on federal question grounds. *Empire HealthChoice,* at 547 U.S. 699. It remains important under the removal case law that the plaintiff has not alleged, and has no interest in alleging, a federal claim. *Ekas v. Burris,* 2007 U.S. LEXIS 84340 at *9-12 (S.D. Fla. Nov.14, 2007). As the courts in this circuit have emphasized, state law complaints are particularly unsuitable for removal where the disputed federal issue is "between private parties" and "will not be dispositive of all of plaintiffs' claims, which are 'fact-bound and situation-specific.' " *Certified Enterprises, LLC v. Dauphin Creek Apartments, LLC,* 2009 U.S. Dist. LEXIS 80306 at *15 (S.D. Fla. June 24, 2009), quoting from *Empire HealthChoice,* at 547 U.S. 700-01. *See also Adventure Outdoors,* at 552 F.3d at 1299 (similarly viewing a fact-specific dispute between private parties that merely raised a contested federal issue as insufficient to support federal question removal); *Dunlap v. G&L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir. 2004) (noting that the mere presence of a federal issue in a state cause of action will not ordinarily suffice for removal). This is such a case.

In *Empire HealthChoice,* the Supreme Court was careful to note, in distinguishing its holding from that of *Grable & Sons Metal Products, Inc v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), that removal in state cases which raise federal issues between non-diverse parties is seldom justified - particularly where permitting removal would disturb a "congressionally approved balance of federal and state judicial responsibilities." *Grable,* at 545 U.S. 314. As the Supreme Court remarked in *Empire HealthChoice:* "In sum, *Grable* emphasized that it takes more than a federal element 'to open the 'arising under' door' . . This case cannot be squeezed into the slim category *Grable* exemplifies." *Id.,* at 547 U.S. 701. In short, Plaintiffs' Complaint, which merely refers to federal law (OPA) as a standard of conduct

-9-

under which Defendants repeatedly claim they operate, cannot be squeezed into the "slim category" of cases eligible for removal on federal question grounds.

A state complaint that refers to a federal act only as the necessary standard of care does not, as a matter of law, frame a substantial federal question. A complaint that presents only a "fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law," does not present a federal issue that must be resolved in federal court. *Adventure Outdoors,* at 552 F.3d 1299 (internal quotations omitted). *See also Empire HealthChoice,* at 547 U.S. 700; *Grable,* at 545 U.S. at 315. This is such a case.

All of the Supreme Court and Eleventh Circuit cases make it clear that removal of state law claims that incidentally involve federal issues are seldom removable unless they present discrete questions of federal law that are substantial and important – questions that a "federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors,* 552 F.3d at 1295, quoting from *Grable* at 545 U.S. 314. Plaintiffs' Complaint does not present such a substantial federal question, let alone one that involved a "nearly pure issue of law," *Empire HealthChoice,* at 547 US 700, a "crucial factor" to removal. *Adventure Outdoors,* at 552 F.3d 1299.

## C.    OPA Makes It Clear That Plaintiffs May Bring State Law Claims In State Court

Defendants argue 33 U.S.C. § 2717(b) gives federal courts "original jurisdiction over all controversies arising under this Act [OPA], without regard to the citizenship of the parties or the amount in controversy." Disingenuously, Defendants fail to disclose that 33 U.S.C. § 2717(b) applies *"except as provided in subsections (a) and (c) of this section,"* and that subsection (c) explicitly allows state courts to hear claims for oil spill damages, whether asserted under state

law or even under OPA. *See* 33 U.S.C. § 2717(b) and (c).

Furthermore, under OPA, an injured person may also bring a claim under state common

law pursuant to 33 U.S.C. § 2718, which states in relevant part:

> (a) Nothing in this Act ....shall -
>> (1) affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to -
>>
>> (A) the discharge of oil or other pollution by oil within such State; or
>> (2) affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under.......State law, *including common law.*
>
> (c) Nothing in this Act......shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof -
>> (1) to impose additional liability or additional requirements.....relating to the discharge, or substantial threat of a discharge, of oil.

In addition to explicitly preserving state statutory and common law claims for oil spill

damages, OPA also expressly provides that these claims may be prosecuted in state court. In

particular, as noted above, 33 U.S.C. § 2717 provides that:

> (c) A State trial court of competent jurisdiction over claims for removal costs or damages, as defined under this Act, may consider claims under this Act or State law and any final judgment of such court (when no longer subject to ordinary forms of review) shall be recognized, valid, and enforceable for all purposes of this Act.

### 1. The legislative history demonstrates that Congress intended for OPA not to preempt state law claims.

In the course of debating and enacting OPA, Congress articulated that its purpose was to

consolidate several oil spill remediation regimes into a single act, which would benefit the

victims of spills and give them the procedural advantage:

> What the Nation needs is a package of complimentary international, national, and State

> laws that will adequately compensate victims of oil spills... Instead, there is a fragmented
> collection of Federal and State laws providing inadequate cleanup and damage remedies,
> taxpayer subsidies to cover cleanup costs, third party damages that go uncompensated,
> and substantial barriers to victim recoveries - such as legal defenses, statutes of
> limitation, the corporate form, and the burdens of proof that favor those responsible for
> the spill. *See* S. Rep. No. 101-94, at *2 (1989), reprinted in 1990 U.S.C.C.A.N. 722.

The "fragmented collection" of pre-OPA federal statutes included OCSLA, the Clean Water Act,

the Limitation of Liability Act of 1851 (for maritime claims), the Deepwater Ports Act, and the

Trans-Alaska Pipeline Authorization Act. *Id.* at *3, *6. The Legislature's intent to package these

conflicting regimes into one cohesive whole did not, however, extend to an intent to deprive the

states of their power to provide rights of action for their own citizens. As noted in the Senate

debate over OPA:

> To date, Federal legislation has affirmed the rights of States to protect their own air,
> water, and land resources by permitting them to establish State standards which are more
> restrictive than Federal Standards.
>
> [OPA] would permit such State laws to continue and would not preclude enactment of
> new State laws.
>
> The theory behind the Committee action is that the Federal statute is designed to provide
> basic protection for the environment and victims damaged by spills of oil. Any State
> wishing to impose a greater degree of protection for its own resources and citizens is
> entitled to do so. On the other hand, a State might feel adequately protected by the
> Federal statute and therefore choose not to enact additional State law. In any event, the
> Committee chose not to impose, arbitrarily, the constraints of the Federal regime on the
> States while at the same time preempting their rights to their own laws. *Id.* at *6.

The Senate report also notes that:

> Preemption has been discussed by the members of the Committee more than any other
> single issue. [OPA] does not embrace any preemption of State oil spill liability laws... *Id.*
> at *17.

The joint Congressional conference report also reaffirmed that OPA was not intended to preempt

state causes of action when it reported that:

-12-

[The OPA] states explicitly that nothing in the substitute...shall affect in any way the authority of a State or local government to impose additional liability or other requirements with respect to oil pollution... *See* H.R. Rep. No. 101-653, at *21 (1990)(Conf.   Rep.), reprinted in 1990 U.S.C.C.A.N. 779.

In considering a preemption argument made under OPA, the First Circuit held, "Congress did not intend the OPA to bar the imposition of additional liability by the States." *S. Port Marine, LLC v. Gulf Oil L.P.*, 234 F.3d 58, 65 (1st Cir. 2000).

The argument that OPA preempts state common law causes of action to recover damages in oil spill cases because the state actions would somehow conflict with OPA "was effectively put to rest in *U.S. v. Locke*, decided by the Supreme Court." *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d at 564-65 (D. Md. 2000)(citing *United States v. Locke*, 529 U.S. 89, 105 (2000)). Indeed, the state law "savings clause" contained in 33 U.S.C. § 2718 "was meant to allow the states to go beyond the basic protection of the federal law. The beneficiaries of the savings clause, therefore, are the victims of oil spills." *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1448 (E.D. Va. 1996).

The general rule is that state law claims are not preempted by a federal statute absent "extraordinary" language in the statute indicating Congressional intent to displace those state claims. *Ortega v. HomEq Servicing*, 2010 WL 383368 at *4 (C.D. Cal. Jan. 25, 2010). The "depositive question" is whether or not the supposedly preemptory statute "provides the exclusive cause of action." *Ortega*, 2010 WL 383368 at *4. Here, OPA's own state law savings clause renders it unambiguously non-exclusive. 33 U.S.C. § 2718.

In short, OPA permits a plaintiff to assert state statutory and common law claims for damages incurred as a result of an oil spill, that such claims are not preempted, and that such claims may be asserted in state court.

-13-

**2. The damages incurred by Plaintiffs as a result Defendants' tortious acts are not recoverable by Plaintiffs under OPA.**

OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her damages "resulted from" the oil spill. OPA states, "The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages that result from such incident." *See* 33 U.S.C. § 2702(a). Damages "equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources" are recoverable by any claimant against the responsible party under OPA. 33 U.S.C. § 2702(b)(2)(E).

In the present case, Defendants are not "responsible parties" under OPA. *See* 33 U.S.C. § 2701(32)(C). Defendants, with 13 offices located in the State of Florida, are *independent contractors* (Complaint, ¶ 31) that administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Accordingly, the damages incurred by Plaintiffs as a result of Defendants' tortious acts are not recoverable by Plaintiffs under OPA.

**D. OCSLA Does Not Grant Removal Jurisdiction Absent a Separate Federal Question**

Defendants further argue the case also arises under OCSLA, "which grants a federal district court subject-matter jurisdiction of a case or controversy 'arising out of, or in connection with....any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental

-14-

Shelf.' 43 U.S.C. § 1349(b)(1)." In support of their OCSLA argument, Defendants are able to

only cite *Phillips v. BP LPC*, 2010 U.S. Dist. LEXIS 84432 *3 (Aug. 17, 2010, N.D. Fla.).

In *The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc.*, C.A. No. 1:10-

cv-968-LPS, 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided), Plaintiff St. Joe, a

Florida corporation, sued Defendants Transocean Offshore Deepwater Drilling, Inc., et al,

Delaware business entities, in Delaware Superior Court asserting claims for negligence, gross

negligence, and strict liability pursuant to Florida law for damages resulting from the BP oil spill

in the Gulf of Mexico, which occurred when the Deepwater Horizon oil rig exploded on April

20, 2010. Defendants removed the action to the U.S. District Court for the District of Delaware.

In its notice of removal, Defendants allege that: (a) "this Court has federal question jurisdiction

under the Oil Pollution Act ['OPA'] over claims alleged in the Complaint; and (b) "removal

jurisdiction is appropriately based on OCSLA." The Court, while noting the *Phillips'* decision,

disagreed with Defendants and granted Plaintiff's motion to remand.

### 1. To the extent OCSLA conflicts with OPA's more specific provisions giving plaintiffs the right to sue under state law in state court, OPA governs.

OCSLA cannot be the source of a removable federal question in this action because

OCSLA, by its own terms, gives way to any other provision of law that reaches conduct

occurring on the outer Continental Shelf:

> "The specific application by this section of certain provisions of law to the subsoil and seabed of the outer Continental Shelf and the artificial islands, installations, and other devices referred to in subsection (a) of this section or to acts or offenses occurring or committed thereon shall not give rise to any inference that the application to such islands and structures, acts, or offenses of any other provision of law is not intended." 43 U.S.C. § 1333(f). See also *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340,351, n.7 (5th Cir. 1999) (holding that § 1333(f) "makes clear that the applicability of OCSLA law...shall not give rise to any inference that other provisions of law...do not also apply").

Moreover, as discussed above, OPA merged a variety of pre-existing federal laws, including OCSLA, and explicitly reserved to the states the power to provide state law protections in their own courts for victims of an oil spill. Therefore, OPA, not OCSLA, is the salient federal jurisdictional statute and this Court need only resolve the question of whether federal question removal is proper under OPA, which for all the reasons discussed above in Section C, it is not.

In *The St. Joe Company v. Transocean*, Defendant Transocean initially argues that OPA, because of its comprehensive nature, trumps OCSLA in regard to oil spills, but then turns sharply and attempts to base removal jurisdiction on OCSLA. The U.S. District Court for the District of Delaware concluded that Transocean's initial argument, that OPA is the "sole federal law applicable in this area of maritime pollution," is correct. *The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc.*, 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided).

### 2. The grant of "original jurisdiction" in OCSLA § 1349(b)(1) does not establish a basis for removal.

OCSLA does not create federal question removal jurisdiction because even though 43 U.S.C. § 1349 provides the district courts with subject-matter jurisdiction of a case or controversy arising out of, or in connection with....any operation conducted on the Outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the Outer Continental Shelf, that Section's grant of original jurisdiction to the district courts does not implicate a federal question for the type of claims that Plaintiffs are asserting against Defendants. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479, 484 (1981). The Supreme Court made this patently clear in *Gulf Offshore Co. v. Mobil Oil Corp.*, where it permitted a plaintiff to assert tort claims in state court for injuries sustained on the Outer

Continental Shelf lands because "nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction" over all claims arising on the Outer Continental Shelf. 453 U.S. at 479, 484 (discussing claims for personal injury); *see also Id.* at 479, n.6 (making clear that 43 U.S.C. § 1333(a)(2) likewise does not confer exclusive jurisdiction to federal courts). The *Gulf Offshore* Court was careful to draw the distinction between sovereignty - which for the Outer Continental Shelf rests exclusively with the federal government - and each state's power to adjudicate its citizens' claims even when those claims arise from conduct that occurred within the area of federal sovereignty. *Gulf Offshore Co.*, 453 U.S. at 481. The fact "[t]hat the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject-matter jurisdiction." *Gulf Offshore Co.*, 453 U.S. at 481-82.

Thus, there is no doubt that Plaintiffs may assert solely state law causes of action for conduct occurring on the Outer Continental Shelf. The only remaining question is whether such state court actions are removable as presenting federal questions pursuant to 28 U.S.C. § 1441(b) solely because they "arise out of or in connection with" OCSLA. They are not. It is clear that federal question jurisdiction does not exist "by virtue of jurisdiction under [OCSLA]." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 156 (5th Cir. 1996); see also *Hufnagel*, 182 F.3d at 351. Courts have repeatedly held that removal is impermissible whenever plaintiff's well-pleaded complaint presents no claim "arising under the Constitution, treaties or laws of the United States," 28 U.S.C. § 1441(b), notwithstanding that the location of the incident falls within OCSLA's jurisdictional scope. *Bulen v. Hall-Houston Oil Co.*, 953 F. Supp. 141, 145

-17-

(E.D. La. 1997)(OCSLA does not create removal jurisdiction over claim not otherwise

presenting federal question). Indeed, "where the plaintiff has decided not to assert a federal claim

[under OCSLA], although such a claim may be available to him...a defendant cannot use the

unasserted federal claim as the basis for removing [the] case to federal court. *Coody v. Exxon

Corp.*, 630 F. Supp. at 205 (M.D. La. 1986).

Again, in analyzing Section 1349(b)(1) of OCSLA, the Supreme Court has stated that

"the mere grant of jurisdiction to a federal court does not operate to oust a state court from

concurrent jurisdiction over the cause of action." *Gulf Offshore Co.* v. *Mobil Oil Corp.,* 453 US

473,479 (1981). The Supreme Court noted that in 43 U.S.C. § 1333(a)(1), "OCSLA declares the

Outer Continental Shelf to be an area of 'exclusive federal jurisdiction,'" but this provision grants

only exclusive political jurisdiction, not exclusive judicial jurisdiction. *Id* at 479-80. It follows

that state courts are not prohibited from hearing controversies falling within OCSLA jurisdiction.

*The St. Joe Company v. Transocean,* 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided).

Accordingly, 43 U.S.C. § 1349 does not create a federal question and does not justify

Defendants' removal of this action.

## E.     **Diversity Jurisdiction Does Not Exist.**

When considering a timely motion to remand for improper removal, the court must look

only to the evidence in the record when the motion to remand was filed.

> In assessing whether removal was proper . . . , the district court has before it only the
> limited universe of evidence available when the motion to remand is filed - i.e., the notice
> of removal and accompanying documents. If that evidence is insufficient to establish that
> removal was proper or that jurisdiction was present, neither the defendants nor the court
> may speculate in an attempt to make up for the notice's failings. . . . The absence of
> factual allegations pertinent to the existence of jurisdiction is dispositive.

*See Lowery v. Alabama Power Co.*, 483 F.3d at 1213-15 (11th Cir. 2007), *cert. denied*, 128 S.Ct. 2877 (2008).

For the purposes of removal and diversity of citizenship jurisdiction, a corporation is a citizen of any state in which it is incorporated and of the state of its principal place of business. 28 U.S.C.S. § 1332. Pleadings that allege that the defendant is incorporated in a given state but do not indicate the defendant's principal place of business are inadequate for removal based on diversity of citizenship. *M.D.C. Wallcoverings v. State Bank of Woodstock*, 1990 U.S. Dist. LEXIS 19110 (D. Ill., September 10, 1990).

In *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004), the Eleventh Circuit clearly stated, "The Supreme Court has settled the law on how the citizenship of a limited partnership is determined for purposes of diversity jurisdiction. In *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990), the Supreme Court held that for purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens. In reaching this holding, the Court noted the long-standing rule that the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all the members composing the organization.494 U.S. at 195-96, 110 S.Ct. at 1021." In *Rolling Greens*, the Eleventh Circuit also clearly stated, "A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties." *Williams v. Best Buy Co., Inc.*, 269 F.3d at 1319 (11th Cir. 2001).

In the present case, Defendants allege diversity jurisdiction exists in an unsupported conclusionary manner: ".......Defendant Feinberg Rozen is a District of Colombia limited liability

partnership with its principal place of business in Washington, D.C. Defendant GCCF is simply an entity created by Defendant Feinberg and Defendant Feinberg Rozen. Thus complete diversity exists between the Plaintiffs and the Defendants." Here, Defendants, the removing parties, failed to adequately allege in their notice of removal the citizenships of Feinberg Rozen or of GCCF. And, nothing in the record establishes their citizenships. Only Defendants have full knowledge of the true citizenship of the Feinberg Rozen limited liability partnership and the citizenship of GCCF which has 13 offices located in the State of Florida. To sufficiently allege the citizenships of Feinberg Rozen, an unincorporated business entity, Defendants must list the citizenships of all the partners of the limited liability partnership at the time of removal to the federal court. To sufficiently allege the citizenship of GCCF, an unincorporated business entity, Defendants must sufficiently allege the citizenship of GCCF at the time of removal to the federal court. It is insufficient for Defendants to merely state: "Defendant GCCF is simply an entity created by Defendant Feinberg and Defendant Feinberg Rozen."

Because Defendants failed to adequately allege in their notice of removal the citizenships of Feinberg Rozen or of GCCF, both unincorporated business entities, Defendants failed to carry their burden of establishing diversity of citizenship.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court: (1) grant this motion; (2) remand this action to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida; and (3) grant Plaintiffs their just costs and actual expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c).

## LOCAL RULE CERTIFICATION

The undersigned certifies, pursuant to Middle District Rule 3.01(g), that he has conferred with counsel for Defendants requesting consent to the filing of Plaintiffs' Motion to Remand. Counsel for Defendants stated, "My client does oppose the anticipated relief requested in the motion for remand."


DATED: March 30, 2011                        Respectfully submitted,

                                             s/ Brian J. Donovan
                                             Brian J. Donovan
                                             Attorney for Plaintiffs
                                             Florida Bar No. 143900
                                             3102 Seaway Court, Suite 304
                                             Tampa, FL 33629
                                             Tel: (352)328-7469
                                             BrianJDonovan@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF system. I further certify a copy of the foregoing was sent via U.S. Mail to:

**Eric S. Adams, Esquire**, Shutts & Bowen LLP, 100 S. Ashley Dr., Suite 1500, Tampa, FL

33602, **David B. Pitofsky, Esquire**, Goodwin Procter, LLP, 620 Eighth Avenue, New York, NY

10018, and **William F. Sheehan, Esquire**, Goodwin Procter, LLP, 901 New York Avenue, NW,

Washington, DC 20001, this <u>30th</u> day of March, 2011.

**s/ Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Telephone: (352)328-7469
BrianJDonovan@verizon.net
