**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:   All Cases | § | |
| | § | MAG. JUDGE SHUSHAN |
| | § | |

_____          _____

<u>**HALLIBURTON ENERGY SERVICES, INC.'S BRIEF IN SUPPORT OF ITS
MOTION TO DISQUALIFY MICHAEL VIATOR, FRED SABINS, AND CSI
TECHNOLOGIES, INC. AND TO STRIKE EXPERT OPINIONS**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................(ii)

EXHIBIT LIST ...........................................................................................................(iii)

I.      SUMMARY OF THE MOTION ......................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................1

III.    ARGUMENTS AND AUTHORITIES...............................................................6

      A.    Because Viator Directly Assisted HESI in Defense of This Litigation, Viator, Sabins, and CSI Should Be Disqualified. ....................................6

            1.    When an expert switches sides in the same litigation, courts must disqualify the expert from any further work on the case. ...........................6

            2.    Viator, Sabins, and CSI should be disqualified under the bright-line rule because Sabins assigned Viator to perform the same tasks he did for HESI in defense of this litigation. ................................................7

      B.    Even If the Court Does Not Apply the Bright-Line Rule to Sabins and CSI, They Should Be Disqualified Because They Actually Received HESI's Confidential Information from Viator. ........................................8

            1.    An expert may be disqualified if he had access to confidential information, the movant reasonably expects that its confidences be kept, and when public policy favors disqualification. ................................9

            2.    Sabins and CSI should be disqualified because HESI had a reasonable expectation that its communications with Viator were confidential, Viator received confidential information prior to working with Sabins and CSI on this litigation, and the balance of competing policy objectives favors disqualification.................................10

                 a.    HESI had a reasonable expectation of confidentiality..................10

                 b.    Viator had access to and received confidential information, then worked with Sabins and CSI on this litigation......................11

                 c.    The balance of competing policy objectives favors disqualifying Sabins and CSI.........................................................13

IV.    CONCLUSION...............................................................................................16

V.     HESI SEEKS FURTHER DISCOVERY IN THE ALTERNATIVE...............................17

VI.    PRAYER.........................................................................................................17

CERTIFICATE OF SERVICE ......................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Am. Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) ..................................................... 8

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith*,
  646 F.2d 1020 (5th Cir. 1981) ................................................. 8-9

*Hewlett-Packard Co. v. EMC Corp.*,
  330 F. Supp. 2d 1087 (N.D. Cal. 2004) .................................... 11

*Koch Refining Co. v. Jennifer L. Boudreaux MV*,
  85 F.3d 1178 (5th Cir. 1996) ................................... 6, 8, 9, 10, 11, 12, 13

*Liger v. New Orleans Hornets NBA Ltd. P'ship*,
  No. 05-1969, 2008 U.S. Dist. LEXIS 46033 (E.D. La. 2008) .................... 9

*Marvin Lumber & Cedar Co. v. Norton Co.*,
  113 F.R.D. 588 (D. Minn. 1986) .................................................. 6, 7

*Paul v. Rawlings Sporting Goods Co.*,
  123 F.R.D. 271 (S.D. Ohio 1988) ............................................... 11

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*,
  811 F. Supp. 651 (M.D. Fla. 1992) ........................................... 7, 15

*Rhodes v. E.I. Dupont De Nemours & Co.*,
  558 F. Supp. 2d 660 (S.D. W.Va. 2008) ......................... 9, 10, 11, 12, 13

*Sensormatic Elecs. Corp. v. WG Sec. Prods.*,
  No. 2:04-CV-167, 2006 U.S. Dist. LEXIS 97108, (E.D. Tex. 2006) .............. 13

*Stencel v. Fairchild Corp.*,
  174 F. Supp. 2d 1080 (C.D. Cal. 2000) ................................. 11, 14, 15

*Wang Labs., Inc. v. Toshiba Corp.*,
  762 F. Supp. 1246 (E.D. Va. 1991) ............................................ 6, 7

### STATE CASES

*Conforti & Eisele, Inc. v. Div. of Building and Constr.*,
  405 A.2d 487 (Sup. Ct. N.J. 1979) ............................................... 7

*Nat'l Med. Enters. v. Godbey*,
  924 S.W.2d 123 (Tex. 1996) .................................................... 14

## EXHIBIT LIST

A.    Intellectual Property Agreement of Halliburton Energy Services, Inc., dated July 5, 2006

B.    Deposition of Michael Viator, Nov. 2, 2011 (filed under seal)

C.    Presentation (work product prepared by Viator for HESI post-incident) (filed under seal)

D.    9.875" x 7" Foamed Production Casing Post Job Report (prepared by Viator for HESI post-incident), dated Aug. 17, 2010 (filed under seal)

E.    Affidavit of Michael Viator, dated Oct. 12, 2011

F.    Iron Mountain Discovery Escrow Services Agreement, dated Sept. 28, 2011

G.    Expert Report of Fred Sabins, dated Oct. 17, 2011

H.    Hearing Transcript, Oct. 14, 2011

I.    CSI Technologies Key Staff, *available at* http://www.csi-tech.net/contacts.html

J.    Letter from J. Andrew Langan to Donald E. Godwin dated May 23, 2011

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully files this Brief in Support of its Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. and to Strike Expert Opinions, and shows as follows:

## I.
## SUMMARY OF THE MOTION

Michael Viator was employed by HESI from July 5, 2006, to March 12, 2011.  During his employment with HESI, Viator met with, strategized with, and assisted HESI's defense counsel to formulate defense strategies in this litigation.  Viator participated in and had access to work product documents and computer models created for HESI's counsel.

Viator resigned from HESI in March 2011, and shortly thereafter, without HESI's knowledge, Viator "switched sides" and began working for BP's cement expert, Fred Sabins, and his company, CSI Technologies, Inc. ("CSI").  HESI recently learned that Viator, after switching sides, revealed confidential information to Sabins and CSI as they assisted BP in formulating its claims and defenses against HESI.  Viator testified that he informed Sabins of his prior work for HESI, but that Sabins dismissed any concerns over misuse of confidential information.  Because Sabins and CSI consciously and affirmatively tainted themselves by hiring a former HESI employee with knowledge of HESI's defenses in this case and assigned him to work for BP, their continued work for BP is a direct conflict, unfairly prejudices HESI, and irreparably taints the appearance and integrity of the judicial process.  Accordingly, Viator, Sabins, and CSI should be disqualified as experts in this litigation, and their expert opinions should be stricken.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Michael Viator began working for HESI as a chemical engineer on July 5, 2006.  That same day, he executed an Intellectual Property Agreement, agreeing that:

> . . . he . . . shall not, during or at any time after the period of his . . .
> employment . . . use for himself . . . or divulge to others, any secret
> or confidential information, knowledge, or data of the Company
> obtained as a result of his . . . employment, unless authorized by
> the Company in writing.

Intellectual Property Agreement of Halliburton Energy Services, Inc., attached as Exhibit A at 1
(the "Agreement").

Shortly after the Macondo incident, Viator assisted in HESI's Relief Well efforts and was
tasked with serving as a "second pair of eyes" on the Macondo Production Casing Post Job
Report.  *See* Deposition of Michael Viator attached hereto as Exhibit B at 34:12–36:25; 103:25–
106:5.  Viator gained intimate familiarity with the events that occurred at Macondo during this
time.  After the relief well efforts ended, HESI's counsel invited Viator to become part of an
internal team of experts assembled to aid in preparing HESI's defense strategies in this litigation.
*Id.* at 21:8–12; 25:22–27:2.  Viator accepted this invitation and was tasked with the analysis of
pre-incident Macondo data.  *See* Viator's Depo. Exs. 7341 and 715, attached as Exhibits C & D.[1]
In connection with this analysis, Viator created computer models using HESI's OptiCem™
software.  This modeling allowed Viator to evaluate critical defense issues relating to cement
channeling.  Viator also analyzed lab testing associated with the compressive strength[2] of the
cement slurry used in the Macondo well production casing and ran modeling utilizing three-
dimensional displacement software.  *See* Exhibit B at 63:2–64:12.

In addition to Viator's access to HESI's internal lawyers and their strategies, Viator had
access to an internal secure server which contained:  (1) all of Jesse Gagliano's Macondo-related

---

[1] Exhibit C is attorney work-product.  Consequently HESI does not describe it in detail here, but encourages the
Court to review it to see the depth of Viator's involvement in HESI's internal development of defenses to this
litigation.  Exhibit D is a confidential document that has been produced to other parties and likewise speaks for

[2] Compressive strength relates to the amount of time needed for a cement slurry to solidify.

**HALLIBURTON ENERGY SERVICES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY
MICHAEL VIATOR, FRED SABINS, AND CSI TECHNOLOGIES, INC. AND TO STRIKE EXPERT
OPINIONS**                                                                      **PAGE 2**

files; (2) all of HESI's work product files; and (3) all of HESI's compiled Macondo data.  Viator admits that he had "access" to the information stored on HESI's secure servers.  *See id*. at 71:19–81:23; 85:15–88:18.

While working on the team, Viator met with both in-house and outside defense counsel. He understood that his work, performed at the direction of counsel, was "highly confidential." *Id.* at 35:5–19; 37:24-38:24; 46:4–12.  Viator testified that he provided HESI's defense counsel with confidential "information that [the internal expert team] simulated and investigated" and that he participated in a face-to-face "informative meeting" with counsel to discuss what was found and to explain how to understand the material.  *Id.* at 41:18–42:24.

On March 12, 2011, Viator left HESI because he was "unhappy" with his position.  *Id.* at 28:7–28:14.  Prior to leaving HESI, Viator transferred confidential electronic files that he utilized as part of the internal expert team, including simulations, onto an external thumb drive, which he still has in his possession.  *Id.* at 71:19–81:23.

On April 14, 2011, Viator joined CSI.  *See* Affidavit of Michael Viator ("Viator Aff."), attached hereto as Exhibit E ¶ 1.  CSI is a small company, and Fred Sabins, BP's testifying expert on cement issues, is its President.  *See* CSI Technologies Key Staff, attached as Exhibit I.  Prior to joining CSI, Viator informed Sabins that he was involved in HESI's internal defense team relating to the Macondo incident.  *See* Exhibit B at 49:9–50:22.  He specifically informed Sabins that he created computer simulations as part of the defense team.  *See id.* at 51:21–52:3.  Despite this revelation of confidential information and a clear conflict of interest, Sabins hired Viator and assigned him to work for BP on the Macondo litigation.

Shortly after Viator began working for CSI and Sabins, BP suddenly turned its attention to gaining access to HESI's proprietary software and the data inputs.  *See* Letter from J. Andrew

Langan to Donald E. Godwin dated May 23, 2011, attached hereto as Exhibit J, at 2 ¶ 3 (BP demands a "fully functional representative version of Opticem" and a "trained Halliburton witness" to "perform Opticem runs replicating the modeling performed by [HESI] for the Macondo Well, as well as using additional inputs provided by BP").  BP's abrupt focus on accessing HESI's modeling software was occasioned by Viator's disclosure of HESI's work product, his post-incident modeling.  This disclosure provided BP with insight into HESI's defense strategy.

On September 28, 2011, in response to BP's demand for access to HESI's proprietary version of OptiCem, the parties' discussions culminated in BP and HESI entering into a software escrow agreement to enable certain authorized BP attorneys and BP cement experts to run OptiCem simulations using the actual data inputs used by HESI in April 2010.  *See* Iron Mountain Discovery Escrow Services Agreement, attached hereto as Exhibit F at p. 9.  The parties agreed to utilize Iron Mountain as the escrow agent.  Iron Mountain's security policies required the parties to submit a written list of authorized personnel who could access the software and data.  *See id*.

HESI first learned that Viator worked for CSI on or about October 4, 2010, when Viator was included on the list of BP representatives who would run OptiCem simulations.  When HESI discovered that its former employee — who had knowledge of highly confidential and privileged information — was working for BP in this litigation, HESI promptly objected and sought Viator's deposition to determine what, if any, information had been shared with Sabins and CSI.

Sabins served his opening expert report ("the Report") on October 17, 2011.  In his Report, Sabins relied upon his own OptiCem modeling to rebut HESI's allegations of inadequate centralization and to attack the accuracy of HESI's OptiCem model.  In his opening Report,

Sabins notes that he created numerous OptiCem models of his own, and significant portions of the Report are devoted to the OptiCem modeling.  Exhibit G at 62-67.

On November 2, 2010, HESI took Viator's deposition and discovered that he had also revealed confidential information to CSI related to compressive strength of foam cement, and went as far as performing "an expert review" directly related to a key issue in this case — compressive strength for foam cement.  Sabins assigned Viator to at least two tasks related to this litigation, and Viator knew that this work would be used against HESI.  *See* Exhibit B at 60:1–10.  Viator describes the first task as follows:

> During the period from September 19, 2011 through October 4, 2011, I performed a review of works published in scientific journals at the request of Fred Sabins.  The literature related to pressure effects on cement slurries.  Based on my review, I prepared a written summary of the various published works I reviewed.

Exhibit E ¶ 7.  Viator described his work as studying the effect of pressure on compressive strength as it relates to set time.[3]  Exhibit B at 60:11–61:14.  This subject appears in the Report.  Exhibit G at 85-86.  Viator's second task for CSI was to perform the same modeling work for BP that he had performed for HESI while working on its internal expert team.  *See* Exhibit F, at 9.  Viator testified that he felt "uncomfortable" with this task because he possessed confidential information that he used in the HESI investigation.  Exhibit B at 100:6-24.  Viator sought confirmation from Sabins that he was authorized to participate, but Sabins, CSI's president, did nothing to exclude him from the work CSI was doing in the litigation for BP.  *Id.* at 98:17–99:1.

CSI tried to cover up the true extent of Viator's participation in this litigation.  In order to prevent his deposition from going forward, CSI provided HESI an affidavit signed by Viator

---

[3]  The work described by Viator is likely referenced in the Report which discusses pressure effects on cement wait time.  *See* Exhibit G, at pp. 85–86.  Notably, this section of the Report specifically references HESI's lab testing relating to compressive strength.

stating "I am aware that employees of CSI Technologies have performed certain work for BP in connection with the Deepwater Horizon oil spill litigation.  I have not participated in that work except as described in paragraph 7 below."  Exhibit E at ¶ 6 (referring to ¶ 7, *supra*) (listing only Viator's review of scientific journal articles).  Viator's affidavit fails to acknowledge that he disclosed confidential information to Sabins and CSI by informing them of his computer simulations for HESI's defense team.  The affidavit also fails to mention his assignment to the CSI modeling team.  *See generally* Exhibit E; Exhibit F at 9.

## III.
## ARGUMENTS AND AUTHORITIES

**A.**     **Because Viator Directly Assisted HESI in Defense of This Litigation, Viator, Sabins, and CSI Should Be Disqualified.**

      **1.**     **When an expert switches sides in the same litigation, courts must disqualify the expert from any further work on the case.**

A trial court has inherent power to disqualify an expert witness when confidential information is threatened.  *See Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996).  Pursuant to the bright-line rule outlined in *Wang Labs., Inc. v. Toshiba Corp.*, if an expert switches sides in the same litigation, disqualification is required.  *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991).  Citing *Wang Labs.*, the Fifth Circuit agreed that "no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party . . . .  This is a clear case for disqualification."  *Koch Refining Co.*, 85 F.3d at 1181 (quoting *Wang Labs., Inc.*, 762 F. Supp. at 1248).  "The threat or potential threat that confidences may be disclosed is enough."  *Marvin Lumber & Cedar Co. v. Norton Co.*, 113

F.R.D. 588, 591 (D. Minn. 1986).  There is no question that Viator was acting as an internal consulting expert to HESI.

Furthermore, when an expert switches sides, an entire firm may be disqualified.  In *Marvin Lumber & Cedar Co.*, the court disqualified an independent testing lab because it had consulted with the movant prior to working for the responding party.  *Marvin Lumber & Cedar Co.*, 113 F.R.D. at 591-92.  The court was concerned with the threat that confidences would be disclosed.  *Id*. ("The rules governing disqualification are designed to protect against the potential breach of such confidences, even without any predicate showing of actual breach").  Similarly, the court in *Conforti & Eisele* disqualified an engineering firm retained by the responding party because individuals at the firm had previously consulted with the movant during an earlier phase of the litigation.  *Conforti & Eisele, Inc. v. Div. of Building and Constr*., 405 A.2d 487 (Sup. Ct. N.J. 1979) ("to permit [plaintiffs] to hire [the other party's former] expert would enable plaintiffs to obtain indirectly that which they clearly are not permitted to achieve through discovery").

> **2.** **Viator, Sabins, and CSI should be disqualified under the bright-line rule because Sabins assigned Viator to perform the same tasks he did for HESI in defense of this litigation.**

Viator, Sabins, and CSI should be disqualified because Viator has switched sides in this litigation, and because Sabin assigned Viator to perform the same tasks for CSI, OptiCem computer modeling, that he performed for HESI's counsel.[4]  While employed by HESI and while working directly with HESI's defense team, Viator received and utilized HESI's confidential and privileged information related to this litigation.  Exhibit B at 41:18-42:24.  It is no coincidence

---

[4] Given the scarcity of expert disqualification cases, HESI was unable to locate a case with facts exactly like those presented here:  an expert firm hires an opponent's employee who has knowledge of and worked on the litigation at issue.  However, each of the cases cited herein provide a basis for disqualification of CSI.  For example, in *Wang Labs., Inc*., an expert was disqualified after switching sides.  762 F. Supp. at 1248.  Also, in *Rentclub, Inc. v. Transamerica Rental Fin. Corp*., a law firm was disqualified when it hired an employee of the opposing party as a "trial consultant" who was privy to and retained confidential information.  811 F. Supp. 651 (M.D. Fla. 1992).

that shortly after Viator switched sides, BP's central focus became obtaining access to OptiCem. *See* Exhibit J, at 2 ¶ 3. With full knowledge of Viator's prior involvement in modeling for HESI's defense counsel, Sabins and CSI chose to involve him directly in CSI's modeling team to run simulations for the benefit of BP. *See id*. at 60:1-10; 62:14-22. Viator, Sabins, and CSI knew that Viator's work product would be used against HESI in this litigation. This inclusion casts serious doubt upon the truthfulness of Viator's statements in his affidavit that his duties for CSI which related to the Deepwater Horizon oil spill litigation were limited. *See* Exhibit E at ¶¶ 6-7. The degree of Viator's involvement with this case at CSI is not important; rather, the fact that Viator had *any* involvement with this case at CSI after his employment with HESI is dispositive on this issue. *See Marvin Lumber*, 113 F.R.D. at 591 (finding disqualification "particularly apropos" because the subject matter of the prior relationship clearly impinges upon the litigation). For these reasons, Viator,[5] Sabins, and CSI should be disqualified.

**B.**     **Even If the Court Does Not Apply the Bright-Line Rule to Sabins and CSI, They Should Be Disqualified Because They Actually Received HESI's Confidential Information from Viator.**

This is not a case where HESI asks the Court to presume, infer, or impute Viator's knowledge to CSI. Here, Viator admitted that he worked on the same tasks for BP that he did for HESI. Whether the case involves migratory experts or migratory attorneys, courts are always concerned with protecting the confidential information of litigants and will disqualify experts or attorneys to do so. *See Koch Refining Co.*, 85 F.3d at 1181; *In re Am. Airlines, Inc.*, 972 F.2d 605, 615 (5th Cir. 1992) (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d

---

[5] While CSI may claim it has created or can create a "Chinese Wall" separating Viator from this litigation, it is too late. Viator already obtained HESI's confidential information and already worked for CSI and Sabins on this litigation.

1020, 1032 (5th Cir. 1981)).  This concern is paramount in the Fifth Circuit's three-part test to

determine disqualification in cases where side-switching is not clear.

> 1. **An expert may be disqualified if he had access to confidential information, the movant reasonably expects that its confidences be kept, and when public policy favors disqualification.**

If it is not clear whether the expert has indeed switched sides, courts use the three-part

test in lieu of the bright-line rule.  *Koch Refining Co.*, 85 F.3d at 1181; *Rhodes v. E.I. Dupont De*

*Nemours & Co.*, 558 F. Supp. 2d 660, 664 (S.D. W.Va. 2008) (disqualifying under both tests);

*Wang Labs., Inc.*, 762 F. Supp. at 1248.  In such circumstances, expert disqualification is

appropriate if:  (1) the retaining party and the expert had a relationship which permitted the

retaining party to reasonably expect that the expert would keep communications confidential;

(2) the expert received, or had reasonable access to, confidential information; and (3) the balance

of competing policy objectives warrants expert disqualification.  *Koch Refining Co.*, 85 F.3d at

1182.  When any confidential information is shared with an expert, a court will disqualify that

expert.  *See Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2008 U.S. Dist.

LEXIS 46033, at *4 (E.D. La. 2008) (disqualifying expert who merely had an introductory

meeting with the moving party but who was privy to "thoughts, mental impressions, and

concerns" about the litigation).  Crucial to the court's inquiry is the nature of the communications

between the attorney and the expert and whether they appreciate the significance or

confidentiality of the communications.  *Id*. (citation omitted).  The burden is on the party who

seeks disqualification to establish the three prongs of the test.  *Koch Refining Co.*, 85 F.3d at

1181.

Viator actually disclosed confidential information to Sabins and CSI when he informed

them that he ran OptiCem simulations as part of the internal expert team.  *See* Exhibit B at 51:5-

52:3.  However, HESI is not required to prove that Viator disclosed confidential information in

order to disqualify Sabins and CSI.  In this case, even if HESI did not have proof that Viator actually had access to and used HESI's privileged and confidential information at CSI, Viator, Sabins, and CSI would still be subject to disqualification.  Sabins and CSI, with full knowledge of Viator's prior work, failed to take any precautions to avoid disclosure of confidential or privileged information.

> **2.  Sabins and CSI should be disqualified because HESI had a reasonable expectation that its communications with Viator were confidential, Viator received confidential information prior to working with Sabins and CSI on this litigation, and the balance of competing policy objectives favors disqualification.**

HESI's expectation of confidentiality is beyond dispute.  Viator accessed and utilized HESI's confidential information while working directly with HESI's defense counsel to develop defense strategies.  Exhibit B at 23:21-26:1; *see also* Exhibits C & D.  Viator disclosed confidential information when he informed Sabins and CSI of his post-incident OptiCem simulations.  Exhibit B at 51:21–52:3.  Given the public importance and the magnitude of this unprecedented litigation, such indiscretions cannot be tolerated.  Sabins' and CSI's continued representation of BP in this case erodes the appearance and integrity of the judicial process.  Accordingly, the balance of competing policy objectives articulated in *Koch Refining* heavily favor disqualification.

> **a.  HESI had a reasonable expectation of confidentiality.**

The first prong requires the moving party to have acted reasonably in assuming that a confidential or fiduciary relationship existed.  *Koch Refining Co.*, 85 F.3d at 1181; *Rhodes*, 558 F. Supp. 2d at 667.  In determining whether this assumption is reasonable, courts consider: whether the moving party funded the formation of an opinion; whether the parties entered into a formal confidentiality agreement; whether the expert was retained to assist in the litigation; whether work product was discussed or documents were provided to the expert; whether the

expert was paid a fee; and whether the expert derived any of his specific ideas from work done under the direction of the retaining party.  *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004).

HESI easily satisfies *Koch Refining*'s first prong.  On July 5, 2006, Viator executed the Agreement promising to keep confidential "any secret or confidential information, knowledge, or data of the Company, obtained as a result of [his] employment."  Exhibit A at 1.  Viator admits that he was and is bound by the Agreement.  Exhibit B at 25:9–25:21; 35:5–35:19.  HESI specifically assigned Viator to assist in this litigation, and in doing so, he discussed work product with HESI's defense counsel and he was given confidential information.  Viator clearly derived his specific ideas about the compressive strength of the slurry from work done under HESI's direction based on data derived from Macondo.  HESI had a confidential relationship with Viator, and it was specifically related to this litigation.  Accordingly, HESI reasonably expected that its communications with Viator were in confidence.

**b.  Viator had access to and received confidential information, then worked with Sabins and CSI on this litigation.**

HESI also satisfies the second prong because Viator admits that he had access to and received confidential information then worked with Sabins and CSI on this litigation.  *See Koch Refining Co.*, 85 F.3d at 1181; *Rhodes*, 558 F. Supp. 2d at 667.  Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged.  *Stencil v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2000) (citing *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 281 (S.D. Ohio 1988)).  However, courts broadly view the scope of confidential information in the expert disqualification context.  Confidential information is information "of either particular significance or [that] which can be readily identified as either attorney work product or

within the scope of the attorney-client privilege." *Rhodes*, 558 F. Supp. 2d at 667 (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1094 (citations omitted)) (alteration in original). Courts are more likely to disqualify an expert if any of the following information is shared: legal strategies, the types of experts to be called, the attorney's views on the relative strengths or merits of a claim or defense, or the role of other witnesses at trial or anticipated defenses. *Koch Refining Co.*, 85 F.3d at 1182. Thus, if a party gave an expert any information of "particular significance" that information is confidential information that the courts should protect.

Viator assisted HESI throughout its relief well efforts and worked with HESI's defense counsel to prepare defense strategies. *See id* at 34:12–36:25; 103:25–106:5; 21:8–22:17; 25:22–27:2; 35:5–35:19; 37:24-38:24; 46:4–12. Viator even retained copies of HESI's files related to the internal investigation on a flash drive, which he still has in his possession. *Id.* at 71:19–81:23. Viator admits that his work with HESI 's defense counsel was confidential in nature:

> Q.  Okay. And -- and you said that giving them info- -- the lawyers information that you had found?
>
> A.  Not only me but the team.
>
> Q.  Okay. The team on the investigative team?
>
> A.  Yes, sir.
>
> Q.  Okay. Did -- and -- and what information, generally, were you talking about that you and others on the team gave to the lawyers for Halliburton?
>
> A.  I don't want to get into specifics because I don't know if it's been released.
>
> Q.  I just said generally.
>
> A.  Snapshots of simulations –
>
> Q.  Okay.
>
> A.  -- and also data found, I remember, in Excel spreadsheets.

Q.  Okay.  And did you deem all of that information to be confidential?

A.  Yes, I did.

*Id*. at 42:5-24.  Viator analyzed pre-incident data in order to create post-incident work product.

*See* Exhibits C & D.  Viator was privy to confidential HESI information with a direct bearing

upon these proceedings.  Accordingly, HESI satisfies *Koch Refining*'s second prong.

### c.   The balance of competing policy objectives favors disqualifying Sabins and CSI.

The third prong requires the court to "balance the competing policy objectives."  *Koch*

*Refining Co.*, 85 F.3d at 1182-83; *Rhodes*, 558 F. Supp. 2d at 667-68.  In analyzing the third

prong, courts consider:

- Maintaining the appearance and integrity of the judicial process;
- Ensuring the parties have access to expert witnesses with specialized knowledge;
- Allowing experts to pursue their professional calling;
- Preventing unscrupulous attorneys from attempting to create an inexpensive relationship to keep an expert from an opposing party; and
- Whether a replacement expert is available and whether the opposing party has time to hire the replacement before trial.

*See Koch Refining Co.*, 85 F.3d at 1182-83; *Sensormatic Elecs. Corp. v. WG Sec. Prods.*, No.

2:04-CV-167, 2006 U.S. Dist. LEXIS 97108, at *11 (E.D. Tex. 2006).  Not only is it clear that

Viator, Sabins, and CSI should be disqualified under the bright-line elements of the *Koch*

*Refining* test, but fairness and policy objectives strongly favor disqualification.

Sabins and CSI knew that Viator was a HESI employee and that his duties related to the

Macondo post-incident defense team.  *See* Exhibit B at 49:9–50:22.  Despite this clear conflict,

Sabins hired Viator and sought to utilize him to run OptiCem simulations.  Sabins did this with

the intent to use Viator's knowledge and training, and HESI's confidential information, against

HESI.  *Id*. at 60:1–10; 62:7–22.  Not surprisingly, Viator's knowledge about the compressive

strength of the slurry found its way into BP's expert report.  *See* Exhibit G at pp. 85–86.  Viator knew his work for Sabins and CSI would be used in this capacity.  *See* Exhibit B at 60:1-10.

Along with Viator, Sabins and CSI should be disqualified based upon the first competing policy objective — maintaining the appearance and integrity of the judicial process.  Allowing Sabins and CSI to present opinions against HESI — after they knowingly hired an internal HESI cement expert to utilize against HESI — would irreparably damage the appearance and integrity of the judicial process.  Aside from damage to the appearance of the judicial process itself, HESI's confidential information was disclosed or is in danger of being disclosed to CSI.  Viator admits that he disclosed confidential information and assisted BP while in possession of confidential information that was used in preparing HESI's defenses.  *Id.* at 100:15-18. Additional confidential information could easily have been provided to BP intentionally or unintentionally through Viator, and the result is extreme prejudice to HESI.  *See Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 133 (Tex. 1996) ("[former client] is not likely to be struck by lightning in the pending case, even though he is in the midst of a severe thunderstorm, but he is entitled to object to being forced by his former lawyer to stand under a tree while the storm rages on").

While there are very few cases analyzing the disqualification of an entire expert firm, under these rare and egregious facts, Sabins and CSI should be disqualified.  Where confidential information is likely to be shared, disqualification is warranted.  In contrast, where confidential information is not endangered, courts will not disqualify.  In *Stencel*, the court declined to disqualify an expert from the San Francisco office of a multi-office firm, after an expert in the firm's Newport Beach office received confidential information, but declined representation. *Stencel*, 174 F. Supp. 2d at 1082.  There was absolutely no evidence that the defendant acted in

bad faith or even knew the plaintiff had attempted to hire an expert in the same firm. *Id*. at n.4. The court applied the *Koch Refining* test and refused the plaintiff's invitation to impose a strict imputation rule for experts. *Id*. at 1085-86. The court approved the use of screening or Chinese Walls for experts as a mechanism to protect confidentialities and found that an adequate screen was in place. *Id*. at 1086. The two experts had no interactions with each other, aside from discovering that both had been contacted about the same case. The first expert had no opportunity to share, and stated that he had not shared, any confidences. *Id*. The experts had no access to each others' case files, and they worked in offices more than 500 miles apart. *Id*.

In stark contrast, CSI is Sabins' small, one-office operation. Sabins knew Viator worked on this litigation for HESI, yet Sabins tasked Viator with assisting BP in its claims against HESI. Sabins failed to put up any screen at all. Exhibit B at 50:23-51:6. Confidences have likely been shared whether inadvertently or not as Viator has possession of HESI's confidential information directly on point to the issues Sabins is investigating for BP. Therefore, *Stencel* is inapposite to the facts here and, along with Viator, both Sabins and CSI should be disqualified. While CSI may seek to segregate Viator from the litigation in the future, the proverbial bell has been rung. Sabins already assigned Viator to this litigation at least twice.

This conflict of interest casts a shadow on the integrity of the judicial process. HESI has been prejudiced by Sabins' actions. For this policy objective alone, Sabins and CSI should be disqualified and all materials relating to CSI's expert opinions should be stricken. Adding Viator to the team of modeling experts who would access HESI's data and proprietary software is unscrupulous behavior designed by Sabins to subvert the legal privileges and confidences to which HESI is entitled. *See Rentclub, Inc*. *v. Transamerica Rental Fin. Corp*., 811 F. Supp. 651, 655-56 (M.D. Fla. 1992). The policy of not allowing a party to benefit from such acts is best

served by excluding Sabins' and CSI's taint from the Court's proceedings to the fullest extent possible.

Sabins' and CSI's acts are sufficiently egregious to warrant both disqualification and the exclusion of Sabins' expert report.  The prejudice to HESI in allowing Sabins and CSI to continue to assist BP in this litigation far outweighs the burden upon BP.  Moreover, if Sabins and CSI continue to assist BP, it will cast a shadow on the integrity and fairness of this litigation. There is no argument BP can make regarding Viator's application of separate knowledge to his work at CSI, because he already admitted to working on the same case for both sides, despite his possession of confidential HESI information.  Moreover, the evidence presented with this Motion casts grave doubt upon the representations made to this Court by Viator's counsel that "he has no involvement in CSI's work for BP" or that he did not discuss his work with HESI related to the Macondo Well with Fred Sabins, CSI staff, or BP.  *See* Hearing Transcript of October 14, 2011 at 56:21-24; 57:17-24, attached hereto as Exhibit H.

HESI should not be prejudiced by the inappropriate acts of BP's experts or forced to bear the risk that Viator's assurances are accurate and will remain so through this litigation.  For these reasons, the balance of competing policy objectives favors disqualification of Viator, Sabins, and CSI by the Court.

## IV.
## CONCLUSION

After switching sides in this litigation, HESI's former employee revealed confidential information to BP and assisted BP in formulating its claims against HESI.  Sabins and CSI consciously and affirmatively tainted themselves by participating in a scheme to utilize HESI's privileged and confidential information to BP's benefit.  Because Sabins' and CSI's continued

work for BP unfairly prejudices HESI and irreparably taints the judicial process, they should be disqualified as experts in this litigation and their expert opinions should be stricken.

## V.
## HESI SEEKS FURTHER DISCOVERY IN THE ALTERNATIVE

In the alternative, HESI requests an opportunity to conduct further discovery to more fully evaluate the facts.  Specifically, HESI requests the deposition of Fred Sabins and the production of Viator's time sheets, the work-product he prepared relating to the Macondo litigation, and related correspondence.  Further, HESI requests the production of all its information still in Viator's possession, specifically the thumb drive in his possession.

## VI.
## PRAYER

HESI prays that upon considering this Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. and to Strike Expert Opinions, the Court grant said motion and strike the expert opinions, testimony, and expert reports to which Viator, Sabins, or CSI contributed, and disqualify Viator, Sabins, and CSI from the remainder of these proceedings.  HESI also prays for all other relief, legal and equitable, to which it is justly entitled.


Dated:  November 15, 2011.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**   /s/  *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Halliburton Energy Services, Inc.'s Brief in Support of its Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. and to Strike Related Evidence* was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 15th day of November 2011.

/s/ Donald E. Godwin
Donald E. Godwin