UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON: IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| *ALL CASES* | * * | MAG. JUDGE SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AGREED 30(b)(6) DEPOSITION NOTICE OF HALLIBURTON ENERGY SERVICES, INC. DEFENDANT (WITH 30(b)(2) DOCUMENT REQUESTS)

By agreement of Plaintiffs' Liaison Counsel, Defense Liaison Counsel, Coordinating Counsel for the States, Coordinating Counsel for the U.S., and Counsel for Defendant Halliburton Energy Services, Inc., ("Halliburton"), Halliburton Defendant shall—pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-TRIAL ORDER NO. 17 (as supplemented and amended by PRE-TRIAL ORDER 27)—designate and produce one or more officers, managers, agents, employees, or other representatives of the Halliburton Defendant to discuss the Areas of Inquiry identified below. The times and locations of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

### Areas of Inquiry

1. For any and all attempts by anyone after April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill the Macondo Well by each of the following methods and any other method(s) used but not listed here: Actuation of the Deepwater Horizon BOP, Riser Insertion Tube Tool ("RITT"), Top Hat, Top Kill, Junk Shot, Cofferdam, Capping Stack, BOP on BOP

strategies, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 (hereinafter, collectively referred to as "Methods"):

    a. The total input that Halliburton had for each attempt and/or Method, including, but not limited to, labor, communications to contractors and/or other entities working on Halliburton's behalf, materials, overhead and components, parts, equipment, material, and/or supplies used on same;

    b. The communications and plans to implement each attempt and/or Method, including the identity of each person who gave input;

    c. A description of any manner and methodology discussed or suggested or recommended, including computer models for each attempt, idea, or Method;

    d. A description of the explanations and/or justifications for each attempt, suggestion or Method made, discussed or prepared;

    e. Dates when planning began for each attempt, suggestion and/or Method, including the length of time to plan;

    f. An explanation of and timeline for the steps involved in planning and implementing any attempt and/or Method;

    g. The identity of Halliburton employees and contractors who planned, managed, supervised or assisted in the implementation of any attempt and/or Method;

    h. A description of each office, department, or other organization at Halliburton that participated in planning, engineering, approval, supervision, coordination, and/or implementation of any attempt and/or Method; and

    i. For each Method in which Halliburton played a role, an explanation of and timeline for the steps involved in such actions, including the identity of Halliburton employees and contractors who performed each action, and the identity of documents (with custodians) recording the actions.

2. For any and all attempts between January 1, 2000 and April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill a flowing subsea Gulf of Mexico well by any Method listed above or by any other method(s) used but not listed above:

    a. The input that Halliburton had to complete each attempt and/or Method,

    b. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

2

    c. A description of the explanations and/or justifications for each attempt and/or Method within Halliburton;

    d. Dates when planning began for each attempt and/or Method, including the length of time to plan and budget;

    e. An explanation of and timeline for the steps involved in planning and implementing each attempt and/or Method;

    f. The identity of Halliburton employees and contractors who planned, managed, and supervised the implementation of each attempt and/or Method;

    g. A description of each office, department, or other organization at Halliburton that participated in the planning, budgeting, engineering, approval, supervision, coordination, and/or implementation of each attempt and/or Method; and

    h. For each Method actually performed in which Halliburton participated, the identity of Halliburton employees and contractors who worked on each Method, and the identity of documents (with custodians) recording the performance of each Method.

3. The manner, methodology and mode Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf, predicting, estimating, characterizing and/or measuring any discharge from the Macondo Well (including any knowledge or information known, disclosed or obtained) from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf.

4. The manner, methodology and mode Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the physical or chemical properties of any substance discharged from the Macondo Well from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf.

5. The manner, methodology and mode Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the potential or actual daily depletion of the hydrocarbon reservoir tapped by the Macondo Well from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf.

6. The manner, methodology and mode Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf used (or have knowledge of, or information about)to predict, estimate, characterize and/or measure the pressure inside the Macondo Well, including but not limited to the reservoir pressure, the pressure inside the wellbore, the pressure at the BOP, and the pressure at the point of discharge for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf.

7. The manner, methodology and mode Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the temperature of the discharge from the Macondo Well for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

    including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf.

8. Knowledge of all person(s) and/or entities charged with predicting, calculating, analyzing, determining, estimating, modeling, simulating, reporting, presenting, and/or releasing to the media and/or the public any information regarding the amount of hydrocarbons released from the Macondo Well into the atmosphere, ocean, and/or environment for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 to the present.

9. All knowledge or information pertaining to planning, preparations, discussions, evaluations and/or training with regard to a hydrocarbon discharge event, or an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico prior to April 20, 2010.

10. Costs, expenses, or expenditures incurred—including both out-of-pocket costs and/or internal costs—in association with the planning, preparations, discussions, evaluations and/or training for a) a well control/hydrocarbon discharge event or b) an uncontrolled subsea release of hydrocarbons into the Gulf of Mexico prior to April 20, 2010.

11. All planning, preparations, discussions, evaluations and/or training for a) a "Worst Case Scenario" well control/hydrocarbon discharge event, or b) an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico after April 20, 2010.

12. Any and all such efforts by Halliburton to model the kick or influx from the Macondo well or the effects of such a kick, including but not limited to modeling of "kick simulation," "casing liftoff," and "geothermal" profiles vs. time," referenced in HAL_0955431.

13. Halliburton's use, or contemplated use, of wireline tools or other technology to estimate the flow of fluids through the BOP or riser before, during, or after the Top Kill.

14. Knowledge or information of all communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged with the public, press, third parties, including, without limitation, scientists, engineers, educators, reporters, spokespersons, and/or representatives, officials, and/or designees of the United States, Louisiana, Mississippi, Alabama, Florida, and/or Texas regarding the amounts of hydrocarbons released from the Macondo Well from April 20, 2010 through the present including, without limitation, any communications criticizing, qualifying, discrediting, refuting, rejecting, and or denying the validity calculations or analysis by other person(s) and/or entities regarding quantification of hydrocarbons being released from the Macondo Well.

15. All equipment, products, and/or materials presently identified, reserved, set aside, under construction / development, purchased, and/or developed by, or at the request of, Halliburton or its' customers for the use in an uncontrolled subsea blowout in the Gulf of Mexico.

16. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third parties regarding any Halliburton customer's determination of what the "Worst Case Scenario" was for the Macondo Well.

17. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third parties regarding the creation of any Halliburton customer's Oil Spill Response Plan.

18. All knowledge of, or information known, regarding calculations and analyses performed to quantify the amount of oil flowing through the capping stack at any time between the installation of the capping stack and the shut-in of the Macondo Well.

19. The configuration of the capping stack (including ram position) and all pressure measurements (including calibration measurements) and temperature

6

measurements taken from the capping stack between the installation of the capping stack and the commencement of the static kill.

20. All attempts, both successful and unsuccessful, Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf made to measure the pressure and/or temperature of any portion of the Macondo Well or its discharge—either above, at or below the BOP—between April 20, 2010 and the static kill.

21. All post-blowout efforts by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf to calculate, estimate, predict, and/or model the shut-in wellhead pressure of the Macondo Well.

22. All analysis, calculations, modeling, or estimates by Halliburton, Halliburton's contractors and/or any other entity working on Halliburton's behalf relating to the effect of obstructions in the wellbore, the BOP, and/or the riser on the rate of flow from the Macondo Well.

23. Any information regarding the quantity of substances released from the Macondo Well from April 20, 2010 to the present.

24. Any information regarding efforts by others to control, stop or restrict the release of substances from the Macondo Well.

25. All information regarding documents, work services, personnel, equipment, changes, and costs, done on the Macondo Well up to, and including, April 20, 2010.

26. All information regarding documents, work services, personnel, equipment, changes, and costs, done on the Deepwater Horizon up to, and including, April 20, 2010.

## Document Requests

The Halliburton Defendant are further requested, in accordance with Rule 30(b)(2) of the Federal Rules of Civil Procedure, as well as Rule 26, Rule 34, and PRE-TRIAL ORDERS NOS. 16, 17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the following documents, at least ten (10) days prior to the time of the relevant designee's deposition:

**First Set of Requests**

For each Area of Inquiry identified above, please produce all documents provided to, reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

**Second Set of Requests**

For each Area of Inquiry identified above, please produce all documents which relate, pertain, evidence and/or reflect the issues, topics and/or events described therein or associated therewith.

**Third Set of Requests**

For each corporate designee, please produce a copy of his or her custodial file, current resume or CV, and a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

       This ____ day of _____, 2011.

Respectfully submitted,

_____      _____

Stephen J. Herman, La. Bar No. 23129    James Parkerson Roy, La. Bar No. 11511
Herman Herman Katz & Cotlar LLP      Domengeaux Wright Roy & Edwards LLC
820 O'Keefe Avenue                            556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113            Lafayette, Louisiana 70501
Telephone: (504) 581-4892                Telephone: (337) 233-3033
Fax No. (504) 569-6024                    Fax No. (337) 233-2796
E-Mail: Sherman@hhkc.com              E-Mail: jimr@wrightroy.com

*Plaintiffs Liaison Counsel*                     *Plaintiffs Liaison Counsel*

## **CERTIFICATE OF SERVICE**

      WE HEREBY CERTIFY that the above and foregoing Motion will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

                                                  _____

                                                  James Parkerson Roy and Stephen J. Herman