UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico on April 20, 2010** | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| **No. 10-2771; 10-4536** | * | **MAGISTRATE NO. 1** |
| | * | **MAGISTRATE SHUSHAN** |
| * * * * * * * * * * * * | | |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE FROM THE LIMITATION OF LIABILITY TRIAL EVIDENCE REGARDING THE ANADARKO ENTITIES' KNOWLEDGE OR ACCESS TO INFORMATION ABOUT WELL DESIGN AND/OR OPERATIONS ON THE MACONDO PROSPECT**

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 1

    A. Anadarko's Knowledge Or Access To Information Is Not Relevant To The Allocation Of Fault In The Limitation Of Liability Trial ....................................... 1

    B. The United States' CWA Claim Against Anadarko Provides No Basis For Denying The Motion *In Limine* ................................................................................ 2

        1. CWA Liability and Assessment of Civil Penalties Will Not Be Tried in Any Phase of the Limitation of Liability Trial............................. 2

        2. In Any Event, Anadarko's Knowledge or Access to Information is Irrelevant to Determination of Liability or Assessment of Penalties Under the CWA ....................................................................................... 4

        3. The U.S.'s Approach Will Needlessly Expand the Length and Complexity of the Limitation of Liability Trial.......................................... 5

    C. Anadarko's Knowledge Or Access To Information Is Also Irrelevant To The Availability Of The OPA Cap .......................................................................... 6

    D. That Certain Exhibits Are Relevant To Issues Other Than Anadarko's Knowledge Or Access To Information Provides No Basis for Denying The Motion................................................................................................................. 7

III. CONCLUSION.................................................................................................................... 7

## I.  INTRODUCTION

The United States ("U.S."), the Plaintiffs' Steering Committee ("PSC"), Halliburton, M-I and Transocean have opposed Anadarko's Motion *in Limine*, arguing as follows:

(1) The PSC agrees with Anadarko that under the B1 Order Anadarko is entitled to a 0% allocation of fault and that, as a result, evidence related to Anadarko's knowledge or access to information "would not be relevant to the liability issues to be tried;"[1]

(2) The U.S. argues that Anadarko's knowledge or access to information is relevant to Anadarko's liability under the Clean Water Act ("CWA"), assessment of CWA penalties, and Anadarko's right to cap its liability under the Oil Pollution Act (U.S. Opp. at 1-2);

(3) Halliburton and M-I argue that Anadarko's knowledge or access to information is relevant to their cross-claims against Anadarko for negligence, contribution and indemnity, and join in the PSC's argument, *supra*; and,

(4) Transocean, which filed late, essentially repeats all three arguments.

The arguments of the U.S., Transocean, Halliburton and M-I conflict with and are precluded by the Court's B1 Order and the Court's Trial Structure Order.  Those arguments are also wrong as a matter of law.  Anadarko's Motion *in Limine* should be granted.

## II.  ARGUMENT

### A.   Anadarko's Knowledge Or Access To Information Is Not Relevant To The Allocation Of Fault In The Limitation Of Liability Trial.

As the PSC recognizes, the argument put forth by Halliburton, M-I, and Transocean that Anadarko's knowledge or access to information is relevant to their cross-claims for contribution and associated allocation of fault is inconsistent with the B1 Order and wrong as a matter of law. PSC Opp. at 2.  Consistent with longstanding Fifth Circuit law, this Court held that Anadarko owed no duty to intervene in BP's or its contractors' operations.  B1 Order at 28.  Because Anadarko owed no duties to third parties in connection with the operations, Anadarko cannot be

---

[1]   The PSC contends that certain of its exemplar exhibits remain admissible because they are relevant to issues apart from Anadarko's knowledge or access to information (PSC Opp. at 1).  Because such issues are beyond the reach of this Motion *in Limine*, the PSC's argument provides no basis for denying the Motion.  *See* Part D, *infra*.

liable to Halliburton, M-I or Transocean for contribution nor can Anadarko be allocated any percentage of fault. Anadarko's knowledge or access to information is therefore irrelevant to the doomed cross-claims of Halliburton, M-I and Transocean.[2] Because their cross-claims fail as a matter of law, so do their arguments that Anadarko's knowledge or access to information is relevant to the issues to be addressed in the Limitations Trial.

**B.     The United States' CWA Claim Against Anadarko Provides No Basis For Denying The Motion *In Limine*.**

    **1.     CWA Liability and Assessment of Civil Penalties Will Not Be Tried in Any Phase of the Limitation of Liability Trial.**

After careful consideration, this Court has ordered that Phase One of the Limitations Trial will address only two sets of factual issues: (1) "issues arising out of the conduct" of various parties that is "allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010. . ." and the resulting discharge; and (2) issues relevant to the defendants' cross-claims against each other for contribution and the associated allocation of fault. PTO41 [Rec. Doc. 4083] at 2. The Court has further ordered that Phases Two and Three of the Limitations Trial will address post-explosion source control efforts, quantification of the discharge, containment efforts, and the oil's migration path. PTO41 at 2. Issues relevant to the U.S.'s claims for civil penalties under the CWA are not to be addressed in any Phase of the Limitations Trial.

The U.S. now seeks to stand the Court's phased approach on its head, arguing that evidence otherwise irrelevant to the issues to be tried in Phase One should be admitted for the

---

[2]     *See* Consolidated Reply In Support of Anadarko Entities' Motions to Dismiss Cross-Claims, [Rec. Doc. 4518].

purpose of resolving issues reserved for a future jury trial of the U.S.'s CWA claims.[3]  The U.S.'s attempt to inject CWA liability and civil penalty issues into Phase One is flatly inconsistent not only with PTO 41/CMO 3, but also with the U.S.'s own prior representations to the Court.  Indeed, the U.S. expressly, and successfully, argued that its CWA claims must remain separate from the Limitations Trial:

> *[N]either fault nor intent are relevant to strict liability under 33 U.S.C. § 1321(b)(7)* **[the CWA]***, except in connection with the amount of penalty imposed, <u>which would not be determined at the Phase 1 or Phase 2 trial</u>. . . .  The amount of civil penalty … should not be consolidated or even joined for trial purposes with 10-2771* **[and]** *should be tried later (if needed) in a separate trial within 10-4536, and should not be tried jointly with 10-2771 or any other case filed in the MDL.*

[Rec. Doc. 2671] at 9, 13 (emphasis added).  The U.S. cannot now reverse course and try to force factual issues it claims are relevant *only* to its CWA claims into the Limitations Trial.  Doing so would destroy the orderly progress and efficiency of the Trial Structure Plan the Court and the parties have worked so hard to formulate.

Moreover, any attempt to inject factual issues related to CWA liability into the Limitations Trial would run afoul of the Seventh Amendment, which no party has disputed entitles Anadarko to a jury trial on any and all evidence that the U.S. contends to be pertinent to its claim that Anadarko is liable under the CWA.  *See Tull v. United States*, 481 U.S. 412 (1987).[4]  Accordingly, the U.S.'s CWA claim cannot now be surreptitiously shoe-horned into the Limitations Trial, and must be heard separately.[5]

---

[3] The U.S. asserts that "many issues relevant to Anadarko and the other defendants' liability for CWA violations and applicable penalties arising out of the Macondo Well event will and should be addressed in Phase One of the trial." U.S. Opp. at 3; s*ee also, id*. at 1, 4.

[4] The U.S. indicated that it might move to strike or seek clarification of Anadarko's jury demand, but after six months it has not done so. [Rec. Doc. 2671] at n.5.

[5] The penalty assessment phase of a CWA claim is not subject to a jury right.  Thus, for example, Phase Two of the Limitations trial will focus on "volume of discharge," and the Court's findings may arguably be relevant to both the Plaintiffs' claims and the statutory maximum cap on CWA penalties.  *See* Anadarko's Supplemental Memorandum [Rec. Doc. 2826-1].  But the U.S.'s attempt to raise issues in the Limitations Trial that it claims go

### 2. In Any Event, Anadarko's Knowledge or Access to Information is Irrelevant to Determination of Liability or Assessment of Penalties Under the CWA.

The U.S. asserts that Anadarko may be strictly liable under the CWA as an owner, operator or person in charge of an offshore facility. U.S. Compl. at ¶ 72. But, as noted above, the U.S. has conceded that "neither fault nor intent are relevant to strict liability under 33 U.S.C. § 1321(b)(7) [the CWA]," and this Court has already concluded that Anadarko had no operational control, and that BP was solely responsible for all operations. Under the rationale of the B1 Order, Anadarko cannot be an "operator" or "person in charge."[6] The only remaining basis for potential liability under the CWA is as an "owner" of a facility. Knowledge of or access to information is irrelevant to ownership status (and in any event would have to be tried to a jury).

Anadarko's knowledge or access to information is also irrelevant in this case to assessment of CWA penalties. The statute directs the Court to consider various factors in assessing a penalty, only two of which are even arguably implicated here: the culpability of the defendant, and "such other matters as justice may require." 33 U.S.C. § 1321(b)(8). Anadarko's knowledge or access to information is not probative of either factor. "Culpability" is the same as "fault," and as already demonstrated, because Anadarko owed no duty it cannot be at fault for the incident.[7] The "as justice may require" element "is meant to "operate as a safety mechanism when necessary to prevent an injustice;" accordingly "use of the justice factor should not be routine." *In re: Gordon Poppens*, Docket No. SDWA-08-2007-0088, 2010 WL 5638644 (E.P.A., Oct. 14, 2010). Justice is cannot, by definition, be served by considering Anadarko's

---

solely to CWA penalty amounts clearly violates the Trial Structure Order and threatens to complicate and prolong the already lengthy Phase One.

[6] Anadarko does not here address in detail the U.S.'s oxymoronic argument that a legally designated "non-operator" is somehow an "operator as a matter of law." The U.S. provides no support for this argument, and no such counter-intuitive paradox exists in the law.

[7] *See In re: Phoenix Const. Svcs., Inc.*, 11 E.A.D. 379, 2004 WL 1059751 (E.P.A., April 15, 2004) ("The culpability statutory factor generally measures the level of the violator's fault or 'blameworthiness'" or negligence.). (internal citation omitted).

knowledge of or access to information in assessing penalties where this Court has already found as a matter of law that Anadarko's knowledge or access to information did not give rise to any duty to act.[8]

Thus, even if the U.S. were to be allowed to renege on its position that its CWA claims must be tried separately, Anadarko's knowledge or access to information is nevertheless irrelevant and should be excluded.

### 3. The U.S.'s Approach Will Needlessly Expand the Length and Complexity of the Limitation of Liability Trial.

The U.S. misinterprets the Court's admonition in PTO 41/CMO 3 that "Parties should not expect they will be permitted to fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase…." U.S. Opp. at 8. The sentence is intended to caution Parties not to attempt in a subsequent Phase to "clean up" evidentiary gaps or unwelcome testimony from earlier Phases. The U.S. inverts the Court's commonsense forewarning, treating it as license to introduce in Phase One all evidence that may be relevant to any subsequent Phase or proceeding. Such an approach would destroy any efficiencies to be gained from conducting multiple carefully delineated Phases.

Just because certain witnesses on proper Phase One subjects may also have knowledge relevant to Anadarko's knowledge of or access to information is no justification to introduce such evidence at the same time. Doing so will knock the trial off of its set track, require potentially lengthy cross-examination that will be irrelevant to the Phase One issues, and hinder, rather than serve, trial efficiency. Even more fundamentally, to the extent such evidence is

---

[8] Indeed, under the Government's own regulations, while "[k]nowing or willful violations can give rise to criminal liability . . . the lack of any culpability may, depending upon the particular program, indicate that no penalty action is appropriate." EPA General Enforcement Policy #GM-22, *A Framework for Statute-Specific Approaches to Penalty Assessments: Implementing EPA's Policy on Civil Penalties* ("Penalty Framework") (Feb. 16, 1984) at 18.

5

intended to demonstrate Anadarko's liability under the CWA, it would be unusable, and would have to be re-heard by a jury in the eventual CWA trial. The U.S.'s stratagem, if tolerated, would subvert the Court's trial plan and lengthen Phase One interminably.

**C.    Anadarko's Knowledge Or Access To Information Is Also Irrelevant To The Availability Of The OPA Cap.**

The U.S. and Transocean also argue that Anadarko's knowledge or access to information is relevant to Anadarko's entitlement to cap its potential liabilities under OPA. This contention is foreclosed by the B1 Order and is otherwise wrong as a matter of law. An OPA responsible party is entitled to limit its liability under the Act unless the discharge was <u>proximately caused</u> by its gross negligence, willful misconduct, or violation of federal statute or regulation, or by that of an agent, employee "or person acting <u>pursuant to</u> a contractual relationship with the responsible party." 33 U.S.C. § 2704(c)(1) (emphasis added). The B1 Order makes clear that Anadarko's knowledge or access to information did not give rise to a duty to intervene to somehow prevent the incident. B1 Order at 28. In the absence a duty to act, no conduct of Anadarko's possibly can be said to have <u>proximately caused</u> the discharge. *See* RESTATEMENT (SECOND) OF TORTS § 430 (unless an actor is negligent "the question of the causal relation between it and the other's harm is immaterial."). Anadarko's knowledge or access to information is therefore irrelevant to whether any action by Anadarko renders the cap unavailable.

Nor is evidence of <u>Anadarko's</u> knowledge or access to information in any way relevant to whether <u>another party</u>, such as BP, acted with gross negligence, willful misconduct, or in violation of federal law "pursuant to a contractual relationship" with Anadarko. Rather, such an inquiry would turn only on BP's knowledge and conduct and the terms of the contractual relationship with Anadarko, none of which has anything to do with Anadarko's knowledge or access to information.

6

**D.     That Certain Exhibits Contain Evidence Relevant To Issues Other Than Anadarko's Knowledge Or Access To Information Provides No Basis for Denying The Motion.**

Finally, the PSC asserts that some of its exemplar exhibits contain information or data admissible to prove facts other than Anadarko's knowledge or access to information and may be admissible on those alternative grounds. PSC Opp. at 3-10. For example, certain communications between BP and Anadarko contain hard data, or statements by BP about the size and content of the Macondo well, that arguably are admissible <u>as to those facts</u>. The PSC's argument is consistent with Anadarko's Motion, which seeks only to establish that the fact of Anadarko's knowledge or access to information is irrelevant to the issues in the Limitations Trial. Accordingly, Anadarko's Proposed Order asks the Court to rule only that Parties are precluded from introducing evidence "**<u>for the purpose of demonstrating</u> that Anadarko had knowledge of, or access to information about, well design and/or operations on the Macondo Prospect….**" [Rec. Doc. 4319-2] (emphasis added). Thus, evidence or argument predicated on the fact of Anadarko's knowledge or access to information should be excluded, but relevant evidence introduced for a purpose unrelated to Anadarko's knowledge or access to information would not be excluded. The PSC's arguments therefore provide no reason to deny Anadarko the specific relief requested.

### III. <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant Anadarko's Motion *in Limine* and exclude evidence submitted for the purpose of demonstrating Anadarko's knowledge or access to information about operations and/or well design, because Anadarko's knowledge or access to information is irrelevant to any issue to be addressed in the Limitations Trial.

             Respectfully submitted,

DATED: November 15, 2011   BINGHAM McCUTCHEN, LLP


             /s/*Ky E. Kirby*_____
             Ky E. Kirby
             ky.kirby@bingham.com
             David B. Salmons
             david.salmons@bingham.com
             Michael B. Wigmore
             michael.wigmore@bingham.com
             Warren Anthony Fitch
             tony.fitch@bingham.com
             Randall M. Levine
             randall.levine@bingham.com
             2020 K Street, NW
             Washington, DC 20006-1806
             Telephone (202) 373-6000
             Facsimile (202) 373-6001

             James J. Dragna
             jim.dragna@bingham.com
             Bingham McCutchen LLP
             355 South Grand Avenue
             Suite 4400
             Los Angeles, California 90071-3106
             Telephone (213) 680-6436
             Facsimile (213) 680-8636

             KUCHLER POLK SCHELL
             WEINER & RICHESON, LLC

             Deborah D. Kuchler, T.A. (La. Bar No. 17013)
             dkuchler@kuchlerpolk.com
             Janika Polk (La. Bar No. 27608)
             jpolk@kuchlerpolk.com
             Robert Guidry (La. Bar No. 28064)
             rguidry@kuchlerpolk.com
             1615 Poydras Street, Suite 1300
             New Orleans, LA  70112
             Tel:  (504) 592-0691
             Fax:  (504) 592-0696

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 15, 2011.

                                                                     _____/s/ *Ky E. Kirby*_____
                                                                                 Ky E. Kirby