UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>Of Mexico, on April 20, 2010<br><br>This Document applies to All Cases | MDL No. 2179<br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

### TRANSOCEAN'S SUR-REPLY IN OPPOSITION TO M-I L.L.C.'s MOTIONS TO DISMISS TRANSOCEAN'S CROSS-CLAIMS AND THIRD-PARTY CLAIM

TO THE HONORABLE JUDGE BARBIER:

Transocean[1] respectfully submits this Sur-Reply in Opposition to M-I's Motions to Dismiss Transocean's Cross-Claims in the Limitation case and Third-Party Claims in the United States case, **Rec. Docs. 2520 & 2836**.

### BACKGROUND

M-I's initial, one-paragraph argument was that the maritime law warranty of workmanlike performance (WWLP) must arise from a contract, and was not to be implied; no written contract between Transocean and M-I meant that there could be no warranty and no breach. Transocean's brief response showed, citing two Fifth Circuit opinions,[2] that the WWLP indeed could be implied in the absence of a contract. **Rec. Doc. 4274.** Only in its reply, **Rec. Doc. 4516**—which is twice as long as its motion to dismiss—did M-I elaborate and expand upon its argument. M-I now argues that no "contractual relationship" whatsoever exists between M-I

---

[1]     Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean").

[2]     The cases cited are *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394 (5th Cir. 1971), and *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401 (5th Cir. 1982).

and Transocean, whether direct (contractual privity) or indirect (third-party beneficiary).  M-I's reply also dismisses the significance of the holdings in the two Fifth Circuit cases cited by Transocean, arguing that each depended upon there being a third-party beneficiary relationship which, M-I argues at length, is lacking here.  M-I contends: "In *Whisenant*, the Fifth Circuit affirmed the application of the warranty of workmanlike performance in a situation without privity of contract because the circumstances showed that the party without privity was in 'the zone of modern law that recognizes rights in *third-party beneficiaries*.' 446 F.2d at 401 (emphasis added).  *Todd Shipyards* merely summarily repeated *Whisenant*'s holding.  674 F.2d at 417.  Thus, these cases recognize that a third-party beneficiary relationship is the lynchpin to applying the warranty of workmanlike performance outside of a direct contractual relationship." **Rec. Doc. 4516, at 2.**  While that last sentence of M-I's argument is essentially true, ***if understood and applied correctly***, M-I's argument as a whole demonstrates that M-I mischaracterizes the nature of the WWLP.  M-I fails to see that the WWLP does not arise from M-I's contract with BP. The WWLP arises from the ship-owners' consent to allow the contractor to perform a service aboard the vessel. Whether Transocean is privy to the BP/M-I contract and whether Transocean is a third-party beneficiary of the BP/M-I contract are separate issues which are irrelevant to whether the WWLP exists in this case.

## <u>ARGUMENT</u>

**A.     M-I Overlooks the Unique Nature of "Third-Party Beneficiary" Relationships in the Context of the Implied Warranty of Workmanlike Performance.**

M-I dismisses *Whisenant* and *Todd Shipyards* as run-of-the-mill third-party beneficiary cases and then argues that, because Transocean "does not claim to be a third-party beneficiary of M-I's contract with BP," ***id.* at 2**, no WWLP arose in favor of Transocean.  M-I misreads those cases.  While some cases  contain "third-party beneficiary" terminology, they use it to explain a

concept that is distinct from the traditional contract law doctrine of the same name (*cf.* stipulation *pour autrui*).  M-I cues off on that term of art but overlooks that, in the context of the maritime law implied WWLP, third-party beneficiary status is conceptually distinct from that applied in traditional contract law.  M-I further compounds its mistake by citing several cases stating the rigorous presumptions against third-party beneficiaries in the traditional contract context; importantly, none of those are in the context of the implied WWLP.  ***Id.* at 3.**

Unlike the typical third-party beneficiary situation, Transocean is not trying to enforce some term of M-I's contract with BP by claiming that an explicit promise therein should run in Transocean's favor, despite its not being in privity.  Rather, Transocean is suing M-I for a breach of the warranty that is ***implied directly in Transocean's favor*** whenever a contractor such as M-I sets foot on Transocean's vessel to perform services that benefit the vessel or further its mission and purpose.  "[S]hore-based contractors who go aboard a vessel by the owner's arrangement ***or by his consent*** to perform service for the ship's benefit impliedly warrant ***to the shipowner*** that they will accomplish their task in a workmanlike manner."  *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 301 (5th Cir. 1973) (emphases added).

The WWLP is a creation of maritime law, originally arising out of the need to balance protection of seamen against the rights of vessel owners.  It is not strictly a contract doctrine. *See, e.g.*, *Royal Embassy of Saudi Arabia & Ins. Co. of N. Am. v. Ioannis Martinos*, 1986 AMC 769, 781 (E.D.N.C. 1984) ("This theory [*Ryan* indemnity for breach of the WWLP] as applied to admiralty law has its genesis in both contract and tort.").  Thus, M-I's cited cases—in which a stranger to a contract attempts to enforce some aspect of that contract—are simply not on point in this situation.  Strict third-party beneficiary rules are usually applied to avoid exposing the contract's parties to unlimited liability to, or conferring unintended benefits upon, unanticipated

3

third parties. In contrast, the maritime law WWLP does not present that problem; it deals with a finite group of parties on a vessel, the owner of which is potentially subject to claims for unseaworthiness for conditions caused by the party providing services. Thus, the implied nature of the WWLP makes sense on a practical level: putative claimants remain protected in that they have a readily-identifiable defendant to remedy their injuries caused by unseaworthy conditions, but the WWLP protects vessels saddled with technical liability by granting them an indemnity against the responsible party on its vessel, regardless of contractual privity.

**B.    The Fifth Circuit Does Not Apply "Traditional" Third-Party Beneficiary Rules in the Implied Warranty of Workmanlike Performance Context.**

M-I cites no case applying strict third-party beneficiary law to a claim for breach of the WWLP, and does not suggest that such application is even appropriate. In *Whisenant* and *Todd Shipyards*, neither party alleging a breach of the WWLP claimed to be a third-party beneficiary of anything. *Todd Shipyards* does not even mention the words in noting that a WWLP existed in that case. In *Whisenant*, a Loomis (Texaco's independent contractor) employee was crushed to death while doing specialized testing of oil drilling equipment on a Brewster-Bartle drilling barge contracted for by Texaco. There was no privity between Brewster-Bartle and Loomis; each contracted with Texaco. Brewster-Bartle settled with the Loomis employee's widow and sought indemnity from Loomis for a breach of the WWLP. The court concluded that it was Loomis' breach of the WWLP that caused Brewster-Bartle's drilling barge to be unseaworthy, and Loomis therefore owed indemnity. Loomis argued that:

> the absence of a contractual relationship between Loomis and Brewster-Bartle should have been fatal to Brewster-Bartle's *Ryan* [*Ryan Stevedoring Co. v. Pan Atl. Steamship Co.*, 350 U.S. 124 (1956)] claim of indemnification against Loomis since the warranty of workmanlike performance does not extend to the vessel owner when there is no privity of contract between the vessel owner and the company performing the services. In

4

maintaining that it is under no obligation to indemnify Brewster-Bartle, Loomis argues that it was not a party to Brewster-Bartle's agreement with Texaco, and that Brewster-Bartle was not a third party beneficiary of the Loomis-Texaco contract.  This argument, however, rests on a misunderstanding of the nature of the obligation to indemnify and totally ignores the Supreme Court holding in *Crumady v. Joachim Hendrik Fisser* [358 U.S. 423 (1959)].  The basis of the obligation is an implied warranty of workmanlike service.  Moreover, the obligations which arise from the implied warranty are not limited to the confines of the usual action on contract; the zone of responsibility may extend to parties who are not in direct contractual relationship.  In *Crumady*, the Supreme Court settled this precise question:

> The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not.  That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries.

446 F.2d at 401 (footnotes omitted).  In other words, *Whisenant* teaches that the "third-party beneficiary" terminology is used to describe the relationship that arises impliedly when a service provider steps foot on a vessel to perform services, because those services are "plainly" for the benefit of the vessel.  It is not a question (as in traditional third-party beneficiary doctrine) of what benefit the parties in privity intended to confer on the non-privy third party; rather, the warranty and the indemnity for its breach are implied situationally, and they run from the shore-based contractor directly to the vessel and its owner regardless of any contract or privity.  *See Parfait*, 484 F.2d at 301.  *Crumady* reinforces that, while the third-party beneficiary terminology is useful to describe this relationship, the actual relationship that exists in the WWLP context is something broader, something merely within "the zone of modern law that recognizes rights in third-party beneficiaries."

M-I's role on Transocean's vessel is indistinguishable from Loomis's role on Brewster-Bartle's barge in *Whisenant* (except both M-I and Transocean lost employees on the *Deepwater*

*Horizon*).  Loomis's challenge, "that Brewster-Bartle was not a third party beneficiary of the Loomis-Texaco contract," was completely disregarded by the Fifth Circuit because that argument "rest[ed] on a misunderstanding of the nature of the obligation to indemnify."  446 F.2d at 401.  That is the same misunderstanding shown in M-I's argument here.

If Brewster-Bartle was "***plainly***" a beneficiary of Loomis's warranty, then Transocean is equally plainly a beneficiary of M-I's warranty here.  As to the facts, Transocean alleges that:

> On the *Deepwater Horizon*, M-I provided mud products, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the April 20, 2010 Macondo Well blow-out.

**Rec. Doc. 2068, at 8–9** (Transocean's cross-claims).  The Bundle A claimants alleged (among other claims) unseaworthiness.  **Rec. Doc. 2068, at 24.**  The Bundle B claimants have brought similar allegations, ***id.* at 25**, as have the Bundle C claimants, ***id.* at 25–26**.  Transocean cross-claimed against M-I for any such liability.  Those are sufficient allegations to trigger the warranty and indemnity M-I owes to Transocean.

## CONCLUSION

For the reasons above, M-I's motions to dismiss Transocean's cross-claims and third-party complaint must be denied.

Respectfully submitted,

By:____/s/ Steven L. Roberts_____          By:____/s/ Kerry J. Miller_____
Steven L. Roberts (Texas, No. 17019300)          Kerry J. Miller (Louisiana, No. 24562)
Rachel Giesber Clingman (Texas, No. 00784125)    Frilot, L.L.C.
Kent C. Sullivan (Texas, No. 19487300)           1100 Poydras Street, Suite 3700
Sutherland Asbill & Brennan LLP                  New Orleans, Louisiana 70163
1001 Fannin Street, Suite 3700                   Telephone: (504) 599-8169
Houston, Texas 77002                             Facsimile: (504) 599-8154
Telephone: (713) 470-6100                        Email: kmiller@frilot.com
Facsimile: (713) 654-1301                                 -and-
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com                   By:____/s/ Edwin G. Preis, Jr._____
kent.sullivan@sutherland.com                     Edwin G. Preis, Jr. (Louisiana, No. 10703)
                                                 Edward F. Kohnke, IV (Louisiana, No. 07824)
                                                 Preis & Roy PLC
                                                 102 Versailles Boulevard, Suite 400
                                                 Lafayette, Louisiana 70501
                                                 Telephone: (337) 237-6062
                                                 Facsimile: (337) 237-9129

                                                 -and-

                                                 601 Poydras Street, Suite 1700
                                                 New Orleans, Louisiana 70130
                                                 Telephone: (504) 581-6062
                                                 Facsimile: (504) 522-9129
                                                 Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

56816:10092884

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 15th day of November, 2011.

/s/ Kerry J. Miller

56816:10092884