IN RE: DEEPWATER HORIZON LITIGATION
MDL NO. 2179

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards LLC
556 Jefferson St. Suite 500
Lafayette, LA 70501
Telephone: (337) 233-3033
Direct: (337) 593-4190
Fax: (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
Telephone: (504) 581-4892
Direct: (504) 680-0554
Fax: (504) 561-6024

November 16, 2011

BY HAND

*IN CAMERA* SUBMISSION

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130

Re:  E-Mail Strings

Dear Judge Barbier,

On October 17, 2011, the PSC submitted a Letter Brief addressing the general admissibility of e-mail strings produced by Defendants. On November 10, 2011, Transocean transmitted a response; Halliburton submitted a response the next day, and on November 14, 2011, BP submitted a letter both responding to the PSC's letter and raising related issues relating to the business record exception under Federal Rule of Evidence 803(6) and party admissions under Federal Rule of Evidence 801(d)(2). The PSC respectfully submits the following Letter Brief in reply.[1]

All Defendants acknowledge that some e-mail communications produced by a party are admissible under the business records exception set forth in Federal Rule of Evidence 803(6).[2] What is more, Defendants agree that the requirements for the admission of e-mail communications are no different than the standards that govern the admissibility of any other documentary evidence proposed to qualify as a "business record." Indeed, the Fifth Circuit has clearly laid out five necessary foundational elements for any business record:

---

[1] In the interest of efficiency, the PSC incorporates by reference the arguments set forth in its October 17, 2011 letter addressing the admissibility of e-mail communications produced by Defendant parties.

[2] *See* BP Ltr. of Nov. 14, 2011 at 1; Halliburton Ltr. of Nov. 11, 2011 at 1; Transocean Ltr. of Nov. 10, 2011 at 1.

1

> (a) That the document [was] made 'at or near' the time of the matters recorded therein; (b) that the document [was] prepared by, or from information transmitted by a person 'with knowledge of the matters recorded'; (c) that the person or persons who prepared the document [were] engaged in preparing it, in some undertaking, enterprise or business which can fairly be termed a 'regularly conducted business activity'; (d) that it [was] the regular practice of that business activity to make documents of that nature; and (e) that the documents [were] retained and kept in the course of that or some other regularly conducted business activity.

*Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989) (quoting *White Indus. v. Cessna Aircraft*, 611 F. Supp. 1049 (D. Mo. 1985)).

These five requirements apply to e-mail communications just as they do to any exhibit proffered for admission under Rule 803(6). Moreover, courts have increasingly ruled that company e-mail strings are admissible under Rule 803(6).[3] *See, e.g.*, *Penberg v. HealthBridge Mgmt.*, 2011 U.S. Dist. LEXIS 119564, at *49-56 (E.D.N.Y. Oct. 17, 2011); *Canataxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008); *Pierre v. RBC Liberty Life Ins.*, 2007 WL 2071829, at *2 (M.D. La. July 13, 2007) (Tyson, C.J.); *LeBlanc v. Nortel Networks Corp.*, 2006 WL 839180, at *5 (M.D. Ga. Mar. 30, 2006); *DirecTV, Inc. v. Murray*, 307 F. Supp. 2d 764, 772-73 (D.S.C. 2004); *see also United States v. Stein*, 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (recognizing that company e-mails are admissible under Rule 803(6)).

The e-mail communications produced by Defendants meet the standards of admissibility set forth by the Fifth Circuit in *Wilander*. To consider an example highlighted by BP in its letter brief: **TREX-03112** is a June 10, 2010 e-mail from Halliburton employee Christopher Haire to Halliburton employee Vincent Tabler regarding two negative pressure tests performed during the temporary abandonment procedure on April 20, 2010. BP does not dispute that this correspondence was made at or near the time of the matters recorded therein; that it was prepared by a person without knowledge of the matters recorded; that the person preparing it was engaged in a regularly conducted business activity; or that the e-mail communication was retained and kept in the course of Halliburton's business. Rather, BP disputes only that it was the regular practice of Halliburton employees to make a document of this nature. Specifically, BP argues that there is no foundation that "Halliburton imposed on Mr. Haire a business duty to read and interpret unidentified reports about the April 20, 2010 incident." BP Ltr. of Nov. 14, 2011 at 4-5. Such an objection is without merit, and attempts to impose too onerous a degree of specificity. It was undoubtedly within the regular course of Halliburton's business to create correspondence concerning the integrity of the cement job at Macondo. This is all that Rule

---

[3] As the PSC argued in its initial Letter Brief, the law regarding the admissibility of e-mail communications as business records has steadily evolved in favor of an increasingly liberal admissibility standard. This is not surprising, for most business entities routinely rely upon e-mail communication in the modern marketplace. *See* PSC Ltr. of Oct. 17, 2011 at 2 n.1.

803(6) requires. *See Wilander*, 887 F.2d at 91 (explaining that it must be within the employee's regular practice to make documents of the given nature).

A second exhibit, which is representative of much e-mail correspondence produced in this matter, is **TREX-06221** — a string of communications between BP cementing specialists. This exchange is dated July 2010. It concerns cementing issues experienced at Macondo. The document was stored on BP's servers and produced by BP.[4] It is authored by and sent to BP employees. The document is, quite clearly, one created and retained in the regular course of BP's business concerning BP's deepwater project.[5] Such a document meets every requirement set forth in *Wilander* and exhibits the indicia of reliability and trustworthiness that courts expect of business records admissible under Rule 803(6).

Like e-mails composed by and transmitted to employees of the same Defendant, such as TREX-06221, "mixed recipient" e-mails were regularly created and maintained by the producing Defendants and concern activities related to the drilling of the Macondo well.

As set forth in its original October 17th Letter Brief, the PSC submits that such "mixed recipient" e-mails are generally admissible on a number of bases: **(i)** as the business records of the producing party; and/or **(ii)** as the business records of the other company whose employee is communicating with the producing party in the ordinary course of that company's business; and/or **(iii)** as the admission(s) of the producing party and/or co-defendant; and/or **(iv)** as an adoptive admission under Rule 801(d)(2)(B). Further, to the extent that one or more portions of an e-mail string cannot be introduced for the truth of the matter asserted, they are generally nevertheless admissible **(v)** to show notice to, knowledge and/or state of mind of the producing party and/or its employees.

.       **TREX-00287**, for instance, is an April 17, 2010 e-mail from Halliburton employee Jesse Gagliano to BP employees Brian Morel, Mark Hafle, Brett Cocales, and Gregory Walz regarding the cement lab testing at Macondo. These individuals engage in a detailed conversation regarding the specifics of the cement job, discussing, among other things, foam stability and

---

[4] BP focuses on language in the *Canataxx* decision to the effect that the proponent of an e-mail must demonstrate that the employer "imposed a business duty to make and maintain such a record." *Canataxx Gas Storage v. Silverhawk Capital Partners LLC*, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008). Although the PSC does not disagree with this formulation, it is simply a restatement of the Fifth Circuit's explanation in *Wilander*—namely, the proponent must show that the document was "retained" and "kept" in the regular course of business. To the extent there is any difference between the formulations, the Fifth Circuit's controls.

[5] No Defendant seriously suggests that the content of the e-mail communications in the exhibits identified in the PSC "Sample 300 List" concern issues unrelated to the business of producing oil and hydrocarbons from the Macondo tract. The PSC submits that any such suggestion is simply an attempt to distract the Court from the issues at hand. For example, Halliburton zeroes in on a statement by BP employee Robert Bodek in a March 23, 2010 e-mail wherein Bodek states, "and then I'm going to walk on water back to land." Bodek signed the letter, "Jesus." In its letter brief, Halliburton argues that the Court may not admit Bodek's statement for the truth of the matter asserted. *See* Halliburton Ltr. of Nov. 11, 2011 at 3. Needless to say, the PSC agrees. The statement nevertheless evidences the motive, intent and state of mind of the declarant, and, by implication, BP.

additives to the slurry. This document, which was retained on BP's servers and clearly created in the regular course of both the author and recipients' business activity, meets each requirement of *Wilander*. Moreover, it retains the hallmark characteristics of reliability exhibited by all business records; those individuals participating in the communication are doing so for a regular business purpose and, as such, have every incentive to speak to one another reliably and truthfully.[6] *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000); *United States v. Wells*, 262 F.3d 455, 459-60 (5th Cir. 2001).

The foregoing addresses the general admissibility concerns raised by BP, Transocean, and Halliburton in their letter briefs regarding the admissibility of Defendant-produced e-mail communications. BP, however, raises several additional arguments. The PSC addresses those in turn.

**TREX-01178 Is A Business Record And Therefore Falls Within The 803(6) Exception To The Hearsay Rule.**

TREX-01178 is a list of modifications made to the blowout preventer stack (the "BOP") used by the Deepwater Horizon. The document was produced by Transocean. While it is undisputed that the document comes in as an admission by Transocean, BP claims that the document is inadmissible *against BP* because it was allegedly not prepared in the ordinary course of Transocean's business, but was, instead, prepared in response to a June 25, 2010 *subpoena*.

The fact that a document was used or otherwise produced in response to a *subpoena* does not exclude the possibility that the document was originally - or also – made and kept in the ordinary course of business.

Like BP, Transocean – in the ordinary course of its business - conducted an investigation of the Deepwater Horizon disaster starting in the days immediately following the incident (Transocean Report, Executive Summary, p.9). Just as BP's internal investigation report, the September 8, 2010 Deepwater Horizon Accident Investigation Report (the "Bly Report") (TREX-00001), is a business record,[7] Transocean's list of modifications is the result of that company's internal investigation and also qualifies as a business record. Among the matters Transocean investigated immediately following the disaster were the number and nature of

---

[6] BP argues that "mixed recipient" e-mails are not admissible and points to **TREX-03092** as an example. That document is an e-mail string that contains, *inter alia*, a July 23, 2010 communication from Carl Butler, an employee of non-party Cobalt International. First, it is a Halliburton business record. Additionally, the document would appear to be a business record of Cobalt. Even assuming *arguendo* nevertheless, that the Cobalt employee's statements cannot be admitted for the truth of the matter asserted, it nevertheless goes to knowledge and notice to Halliburton. And provides context for the remainder of the communications in the string.

[7] *See* BP's November 4, 2011 Response to the PSC's October 17, 2011 Letter Regarding Alleged Daubert/702 Issues within Defendants' Business Records; Bly Interview Notes; and Other Misc. Business Records, p. 2 (admitting that the Bly Report is admissible as a business record).

modifications made to the BOP (Transocean Report, Appendix H "Modifications to BOP"). That the list was produced or otherwise utilized in responding to a *subpoena* does not, in itself, indicate that it was prepared "in anticipation of litigation". The information provided in the response was the result of an investigation that was already being performed by Transocean in the ordinary course of its business before the *subpoena* was issued. Hence, it is not only admissible against Transocean as a party admission under Fed. R. Evid. 801(d)(2), it is a business record that falls within the exception to the hearsay rule pursuant to Fed. R. Evid. 803(6). It is, in short, admissible against all party Defendants.

The Fifth Circuit's decision in *Brauninger v. Motes*, 260 Fed. Appx. 634, 638 (5th Cir. 2007), does not support BP's argument and, indeed, demonstrates that TREX-01178 is admissible. In *Brauninger,* an employment discrimination case, the court found that the reports of human resources supervisors that supported the decision to terminate plaintiff's employment were admissible under Rule 803(6). The reports were the result of an internal investigation of complaints made against the plaintiff and were prepared at or near the time of the investigations. The court rejected the plaintiff's argument that the reports were prepared in anticipation of litigation because the investigation was triggered by employees' harassment complaints and not the plaintiff's subsequent threat to sue. Furthermore, it was an ordinary practice for human resources managers to investigate such complaints. The court considered the reports trustworthy even though one of them was written after the termination decision was made. *Id.* at 638. Similarly, as Transocean's internal investigation report reveals, its investigation into the cause of the Deepwater Horizon disaster, including the modifications to the BOP, began immediately after the incident, not in response to any lawsuit. Transocean was already investigating the modifications to the BOP in the ordinary course of its business when it was served with the subpoena. TREX-01178 was thus the result of that ongoing investigation and it is, accordingly, admissible as a business record because it exhibits the indicia of reliability and trustworthiness expected of such a document.

**BP's E-mails Are also Admissions by a Party Opponent and Not Hearsay**

A statement is not hearsay if "the statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See* Fed. R. Evid. 801(d)(2)(D).

BP argues that "not all e-mail correspondence of the producing defendant is an admission of a party opponent" under FRE 801(d)(2)(D).

Of course, although not "all" e-mails are admissible as admissions, certainly e-mails produced by BP, between BP employees, on subjects concerning the employee's job or the function of BP, or any other work-related issue, are admissions by a party opponent under this rule. *See Sea-Land Serv. v. Lozen Int'l, LLC*, 285 F.3d 808, 822 (9th Cir. 2002) (holding the district court abused its discretion in excluding an e-mail for lack of foundation as to the author's scope of employment and finding the e-mail was an internal company e-mail authored by an employee of the company at the time the e-mail was written); *see also Sklar v. Clough*, 2007 U.S. Dist. LEXIS 49248 (N.D. Ga. July 6, 2007) (stating that "[t]he court has reviewed the e-

5

mails in question. *It is evident from the face of the e-mails* that [subject matter] was not something that happened in [the sender's] free time or outside of [the sender's] job"). Such is the case for the exhibits that BP has objected to here.[8]

BP objects, for example, to **TREX-06221**, which is an e-mail string between Daryl Kellingray and Erick Cunningham. On their face, these e-mails are written by BP employees and are made and kept within their scope of employment. Kellingray states "I've suspected all along with the lack of centralisation small volumes likelihood of mud contamination we would have had nitrogen breakout." Kellingray is the Global Well Cementing Specialist (as noted in his e-mail electronic signature) and it is apparent that his statements concern his area of "specialty." Cunningham is also a cementing specialist and he remarks, *inter alia*, "very interesting foam stability data set came from CSI looking at stability across the entire range of predicted foam quality during the job . . . ." Again, this statement is made within Cunningham's scope as a cementing specialist. To suggest that these statements are made outside the scope of employment is clearly incorrect.

BP also objects to **TREX-06225** on the basis that this e-mail was not written within the scope of the sender's employment. Again, the e-mail reflects on its face that it was written within the scope of employment. Cunningham, a BP cement specialist, and Kellingray exchange multiple e-mails regarding cementing operations. Cunningham writes a lengthy e-mail on cementing that starts by stating, "I do have some comments on this, around when we implement this type of approach to BP cementing and to what level of detail is required, how we structure accountability, and risk ownership." To suggest that BP's own cement specialist can write lengthy e-mails on cementing policies and procedures and that somehow these statement are outside the scope of his employment is incorrect, and would render Rule 801(d)(2)(D) meaningless. This exhibit, in addition to being a business record, is clearly an admission of a party opponent. The PSC respectfully requests that the Court reject BP's restrictive notion of Rule 801(d)(2)(D) and admit any e-mail communication written by a party's employee—and concerning activities in and around the Macondo tract—as an admission by a party opponent.[9]

---

[8] On the excel chart filed with its letter brief, BP notes that two exhibits are hearsay and not subject to FRE 801(d)(2)(D) – TREX-06221 and TREX-06225. However, in its letter brief it uses TREX-06228 as an example of statements made outside the scope of employment. BP has not objected to TREX-06228. Accordingly, we address here only the exhibits identified in BP's spreadsheet.

[9] BP also takes issue with the PSC's contention that "mixed recipient" e-mail communications should be admitted where an individual has adopted the statements of a previous sender. *See* PSC Ltr. of Oct. 17, 2011 at 4. BP cites no case law to support its position, however, and does not address the arguments set forth on the PSC's behalf in its initial letter brief. The PSC therefore respectfully requests that the Court reject BP's arguments and admit "mixed recipient" communications where an employee of a party has adopted the admissions in an earlier e-mail.

For the above foregoing reasons, and for the reasons set forth in Plaintiffs' original October 17 Letter Brief, the PSC respectfully requests that the Court admit all of the "List of 300" e-mail strings in question.

Respectfully submitted,

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Plaintiffs' Liaison Counsel*

Enclosures (submitted *in camera*)

cc: Hon. Sally Shushan (*via* E-Mail)
DEFENSE LIAISON COUNSEL (*via* E-Mail)
Mike Underhill, Esq. (*via* E-Mail)
Hon. Luther Strange (*via* E-Mail)
Ben Allums (*via* E-Mail)
Mike O'Keefe (*via* E-Mail)