01-38787
EAF/dlr

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG        )        MDL NO.  2179
"DEEPWATER HORIZON" in the             )
GULF OF MEXICO,  on                    )        SECTION: J
APRIL 20, 2010                         )
                                       )        JUDGE BARBIER
                                       )
                                       )        MAG. JUDGE SHUSHAN

# CONFIDENTIAL

## WorldwideVIEW™
### Interactive Deposition Digital Display

ORAL AND VIDEOTAPED DEPOSITION OF:



# Rory Ronald Davis, PhD, PE
## VOLUME 1

NOVEMBER 16, 2011

# COPY



Systems Technology for the Litigation World

Litigation Group◆Court Reporting◆Video Production◆Videoconferencing

**For U.S. & International Services**
**800 - 745 - 1101**

EXHIBIT A

1

1                    UNITED STATES DISTRICT COURT

                     EASTERN DISTRICT OF LOUISIANA

2

3  IN RE:  OIL SPILL        )  MDL NO. 2179

   BY THE OIL RIG           )

4  "DEEPWATER HORIZON" IN )  SECTION "J"

   THE GULF OF MEXICO, ON )

5  APRIL 20, 2010           )  JUDGE BARBIER

                            )  MAG. JUDGE SHUSHAN

6

7

8

9

10

11

12

13

14

15

16

17                 * * * * * * * * * * * * * * * *

                          VOLUME 1

18                 * * * * * * * * * * * * * * * *

19

20

           Deposition of Rory Ronald Davis, PhD, PE,

21  taken at the Pan-American Building, 601 Poydras

   Street, 11th Floor, New Orleans, Louisiana,

22  70130, on the 16th day of November, 2011.

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

8

1     Q.  And what's your role with Convergence?

2     A.  I am the principal -- Mechanical

3 Engineering Services Company, and I'm the

4 Principal Owner and Chief Engineer.

5     Q.  Now, Mis -- or, Dr. Davis, I understand

6 you've been deposed previously, correct?

7     A.  Yes.

8     Q.  And I just have a -- a couple of ground

9 rules that I'll request that you follow.  If you

10 could let me know if you do not understand a

11 question that I ask, I would appreciate it.  And

12 if you can provide a verbal response to the

13 questions that I ask, I would appreciate it.

14     Would you agree to abide by those ground

15 rules?

16     A.  Yes.

17     Q.  You've been retained by the U.S.

18 Department of Justice to act as an Expert in this

19 matter; is that correct?

20     A.  Correct.

21     Q.  And when were you retained?

22     A.  I don't remember the date exactly, but it

23 was just before the start of Phase I activities

24 at Michoud.

25     Q.  And that would be sometime in 2010; is

**PURSUANT TO CONFIDENTIALITY ORDER**

10

1    Q.   And one of the other coauthors of the

2  Report was Patrick Novak, correct?

3    A.   Correct.

4    Q.   And is he also a subcontractor through

5  Talas Engineering?

6    A.   Correct.

7    Q.   The only employee of Talas Engineering

8  who was a -- an author on the Reports that were

9  submitted is Raymond Merala; is that right?

10    A.   Correct.

11    Q.   Now, if you can open that binder in front

12  of you, Dr. Davis.   There are two documents

13  behind the first two tabs, Tab 1 and Tab 2, which

14  are the Expert Reports that you have submitted in

15  this case.

16        And if you can pull those out of the

17  binder for me.

18    A.   (Complying.)

19    Q.   You can refer to the -- the document that

20  was behind Tab 1.   The title of this document is

21  "EXPERT REPORT DEEPWATER HORIZON BLOWOUT

22  PREVENTER EXAMINATION AND TESTING" "Prepared by:

23  The team of Talas Engineering, Inc."

24        Do you see that?

25    A.   Yes.

**PURSUANT TO CONFIDENTIALITY ORDER**

1    Q.   And it says underneath that:   "Lead

2  Author Dr. Rory R. Davis, PE."

3         Do you see that?

4    A.   Yes.

5    Q.   And that's you; is that correct?

6    A.   Yes.

7    Q.   And this is the Report that you submitted

8  on October 17th for this matter; is that correct?

9    A.   October 17th, yes, I believe that's

10 right.

11   Q.   And this was submitted on behalf of the

12 U.S. Department of Justice; is that right?

13   A.   Yes.

14   Q.   And if you can go ahead and put an

15 exhibit sticker on that document for me.

16             MR. COLLIER:   And for the record,

17 this will be Deposition Exhibit 7660.

18        (Exhibit No. 7660 marked.)

19   Q.   (By Mr. Collier) Now, if you could refer

20 to the -- the document that was behind Tab 2.

21 And the title of this document reads "EXPERT

22 REBUTTAL REPORT DEEPWATER HORIZON BLOWOUT

23 PREVENTER EXAMINATION AND TESTING."

24        Do you see that?

25   A.   Yes.

PURSUANT TO CONFIDENTIALITY ORDER

13

1   is that correct?

2       A.   Yes.

3       Q.   Are there any opinions that you intend to

4   offer in this matter that are not included within

5   these Reports, Exhibit 7660 and 7661?

6       A.   No.

7       Q.   And in preparing these Reports, you

8   understood that you needed to identify the bases

9   for the opinions that you intend to offer in this

10  matter within these Reports, correct?

11      A.   Yes.

12      Q.   Are there any bases on which you rely for

13  your opinions that are not included within these

14  Reports, Exhibit 7660 and 7661?

15      A.   Or within the references referenced

16  within the Report.  They are included, yes.

17      Q.   Okay.  Now, your Expert Reports disclose

18  your analysis regarding the DEEPWATER HORIZON

19  blowout preventer, correct?

20      A.   Yes.

21      Q.   And you explain in these Reports why you

22  believe the -- the DEEPWATER HORIZON blowout

23  preventer did not seal the well during the

24  Macondo incident; is that right?

25      A.   Yes.

**PURSUANT TO CONFIDENTIALITY ORDER**

1    Q.   Did you review the finite element

2  analysis that DNV performed showing the drill

3  pipe being crushed and cut by the blind shear

4  rams?

5    A.   I believe you're talking about their

6  buckling analysis, and I saw that in their

7  Report.

8    Q.   And does the finite element analysis that

9  DNV performed support the conclusion that the

10  drill pipe was offset at the time the blind shear

11  rams are closed?

12            MS. DELEMARRE:   I have to object to

13  the question.   You're asking him to opine on a

14  Report that falls within 6308.   I have to

15  instruct him not to answer.   If you wish to

16  rephrase, I think you can do so without

17  referencing the other thing.

18    Q.   (By Mr. Collier) Is there any doubt in

19  your mind, Dr. Davis, that at the time the blind

20  shear rams are closed the drill pipe was offset?

21    A.   No, there's no doubt.

22    Q.   And that's based on your physical

23  examination and -- well, that's based primarily

24  on your physical examination of the physical

25  evidence of the ram blocks and the drill pipe

**PURSUANT TO CONFIDENTIALITY ORDER**

1  pieces, correct?

2      A.  Correct.

3              MR. BAAY:  Sorry to interrupt.  Just

4  so I'm clear, your objection is that he can't

5  opine on any of your work?

6              MS. DELEMARRE:  That's right.

7  Pursuant to --

8              MR. BAAY:  Even though he relies on

9  that --

10             MR. COLLIER:  Well, that's what I

11 was looking for.  Yeah.  I think, Counsel,

12 Dr. Davis does refer to that finite element

13 analysis in his Expert Report.

14             MS. DELEMARRE:  He refers to it.

15 He's not relying on it.  He's done his own

16 independent analysis, I think.  I mean, ask him.

17 He's the witness.

18     Q.  (By Mr. Collier) Dr. Davis, are you

19 relying on the finite element analysis that DNV

20 performed to support your conclusion that the

21 drill pipe was offset at the time the blind shear

22 rams are closed?

23     A.  No.  In general, I use data that DNV

24 obtained, and the activities at Michoud, I do not

25 use their analysis or their opinions.

**PURSUANT TO CONFIDENTIALITY ORDER**

151

1      Q.    Okay.   What caused you to do that -- that

2   model to support your opinion in your Rebuttal

3   Report?

4      A.    Well, it was really to rebut the opinions

5   of other Experts, really, because there was still

6   the opinion and -- and no one had investigated

7   in-depth enough concerning the possibility of

8   upward forces and what those forces might be.

9           So after I saw that the other Experts

10  were not really addressing that question in

11  enough detail, I didn't believe, and because I

12  was skeptical of the upward force that was being

13  used by people, I decided that it was necessary

14  to rebut that with a loads analysis on the pipe.

15  So I started by doing that loads analysis, and

16  got some different numbers.

17          And then to further rebut what they were

18  talking about, I showed by analysis of the pipe

19  with those loads --

20     Q.    You --

21     A.    -- what it would be doing.

22     Q.    You were aware, weren't you, at the time

23  you wrote your initial Report that DNV had

24  concluded that an upward force had bent the pipe

25  in the BOP?

**PURSUANT TO CONFIDENTIALITY ORDER**

152

1          MS. DELEMARRE:  Hang on.  Let me

2  just state an objection for the record.  It's our

3  position that 6308 pro -- prohibits the use of

4  DNV conclusions in this case.

5          MR. BAAY:  But that doesn't mean

6  he's prevented from giving an opinion on what DNV

7  concluded as to the -- the bending of the drill

8  pipe.

9          MS. DELEMARRE:  I would disagree

10  with that.  I think you can ask him for his

11  independent opinion without referencing DNV.

12          MR. BAAY:  I'm simply asking him if

13  he's aware of that opinion.

14          MS. DELEMARRE:  Fine.

15      You can answer if you're aware.

16    Q.  (By Mr. Baay) Doctor, do you understand

17  the question that I posed?

18    A.  I was aware of that opinion, yes.

19    Q.  All right.  And so you didn't think it

20  necessary at the time to do any calculations or

21  analysis to rebut DNV's opinion that upward force

22  caused the drill pipe to shift off-center?

23    A.  No.

24    Q.  What I said is true?

25    A.  Yes, what you said is true.

**PURSUANT TO CONFIDENTIALITY ORDER**