## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| **This Document Relates to:  *All Cases*** | **SECTION: J** |
| **(Including No. 10-2771)** | **JUDGE BARBIER** |
| | **MAGISTRATE SHUSHAN** |

### PLAINTIFFS' OPPOSITION TO MOTIONS *IN LIMINE* REGARDING EVIDENCE RELATING TO COAST GUARD, JOINT INVESTIGATION TEAM, MBI and/or BOEMRE TESTIMONY and/or REPORTS

Plaintiffs respectfully submit the following memorandum in response to BP's [Doc 4511], Cameron's [Doc 4520], Transocean's [Doc 4519] and Halliburton's [Doc 4522] Motions *in Limine* to preclude various evidence stemming from the Coast Guard, MBI, BOEMRE and/or Joint Investigation Team testimony and/or reports:

**Photographs, Statements, Testimony, and Other Non-Conclusory Items are Admissible**

The underlying items of non-conclusory evidence gathered and discovered pursuant to the Joint Investigation are not excluded from evidence under 46 U.S.C. §6308(a).  The intent of Congress under 46 U.S.C. §6308(a) was to exclude only the opinions, mental impressions, and conclusions of Coast Guard investigators contained within the Coast Guard investigation report from being admissible into evidence under the public records exception of Federal Rule of Evidence 803(8).  It was not the intent of Congress to exclude the underlying facts gathered throughout the Coast Guard's investigation (photographs, physical evidence, the statements and/or testimony of non-Coast Guard persons, and other non-conclusory items of evidence) from being admissible into evidence.  A broad reading of the statute excluding such evidence leads to

absurd results, and does not serve Congress' stated purpose that it did not want the Coast Guard

enveloped in civil litigation between private citizens.

Congress' purpose in enacting the Coast Guard statute is telling.  46 U.S.C. §6308 has a

limited, specific goal - to shield *Coast Guard* inquiries and *Coast Guard* inquiries only:

> Marine casualty investigations are intended to expeditiously determine the factors
> that cause accidents, to determine whether there is a need for regulatory or
> statutory changes, to determine whether a material failure caused or contributed to
> the casualty, and whether there is evidence that warrants enforcement action.  The
> amendments made by this section will ensure that the *deliberative process of
> Coast Guard casualty investigations* will be unaffected by the prospects of future
> litigation.

H.R. Rep. No. 106, 104th Cong., 1st Sess. § 414 (1995) (emphasis added).  This purpose simply

has no applicability to the underlying non-conclusory evidence gathered during the Coast

Guard's investigation.

Indeed, photographs, prior statements/testimony of private individuals, and physical

evidence are different than the items set forth in 6308's illustrative list.  The listed items are all

products of the investigation which contain the mental impressions and conclusions of the Coast

Guard investigators.  Their inadmissibility helps to ensure that the "*deliberative process* of Coast

Guard casualty investigations will be unaffected by the prospects of future litigation." *Id.*

(emphasis added). A witness' prior statement or testimony is not conclusory, nor does it reflect

the mental impressions or decision-making processes of Coast Guard investigators. In *In re

Danos & Curole Marine Contractors, Inc.,* 278 F.Supp.2d 783 (E.D. La. 2003), Judge Duvall

held that to the extent that photographs "merely illustrate the condition of the objects depicted in

the photos," they are admissible. 278 F.Supp.2d at 785.  46 U.S.C. §6308(a) excludes only

"findings of fact, opinions, recommendations, deliberations or conclusions" by its unambiguous

terms.  Therefore, to the extent that photos and other materials made part of the USCG report do

not constitute "findings of fact, opinions, recommendations, deliberations or conclusions," they are admissible.

Interpretation of the exclusionary rule of the statute as broadly as the court did in *In re American Milling Co.*, 270 F.Supp.2d 1068, 1074-75 (E.D. Mo. 2003) (transcript of marine casualty investigation inadmissible pursuant to §6308), leads to absurd consequences. If no part of a Coast Guard investigation could ever be deemed admissible in a subsequent civil action, and the interpretation of "part of a Coast Guard investigation" included non-conclusory items, then Congress created immunity for those being investigated by the Coast Guard. All physical evidence and all other non-conclusory evidence gathered by Coast Guard investigators would be inadmissible under all circumstances. In this case, the testimony of more than 80 witnesses, hundreds of thousands of documents reviewed and analyzed by the Coast Guard investigators, and the hundreds of pieces of physical evidence (ranging from small rock samples to the Deepwater Horizon blowout preventer) would all be inadmissible because they are "part" of the investigation. Such a result is absurd on its face. The illustrative list set forth in §6308 serves to narrow the interpretation of the evidentiary exclusion, thereby limiting the breadth of the exclusion rather than expanding it.[1]

## The USCG Report, MBI Statements and/or Testimony Are Admissible for Impeachment

As recently noted:

> In practice, testimony or written statements given by a witness in connection with a Coast Guard hearing or investigation are used in litigation to impeach a witness at trial as "prior inconsistent statements" under Federal Rule of Evidence 801(d)(1). Testimony may also be admissible in a civil case as former testimony if the witness is unavailable pursuant to Federal Rule of Evidence 804(b)(1) or as a statement against

---

[1]     Cameron argues that Your Honor's prior denial of its motion to compel documents concerning a third party consultant hired by BOEMRE to investigate the accident is controlling  [Doc. 4520-1, pp 5-6].  However, the documents at issue contained fact findings, opinions, recommendations and conclusions of investigators, not the underlying physical evidence and private witness testimony on which those opinions were based.

interest under Federal Rule of Evidence 801(d)(2), provided there is an opportunity for cross-examination by opposing counsel or another party with the same interest.

Forbes, Thomas D., *Maritime Catastrophies:  Marine Investigation and Mass Claims Practice: Marine Casualty Investigations*, 85 TUL.L.REV. 1363, 1383 (June 2011).   Indeed, while USCG marine casualty reports themselves are generally inadmissible under 46 U.S.C. §6308(a), Courts in the Eastern District of Louisiana have frequently deferred judgment on the question of whether a Coast Guard Report might be admissible for impeachment purposes.[2]

Accordingly, the MBI Testimony of an "available" witness can be used to impeach the witness under FRE 801(d)(1), testimony of an "unavailable" witness is admissible under FRE 804(b)(1) or as a statement against interest under FRE 801(d)(2), and the issue of report admissibility should be deferred until the impeachment issue arises at trial.

46 U.S.C. §6308 does not automatically foreclose this evidence in these situations where opportunity for cross examination by parties with the same interest exists.  As will be shown, defendants all had ample opportunity.

**MBI Testimony of Witnesses Now Invoking the 5th Amendment is Admissible**

The MBI testimony of non-Coast Guard witnesses now invoking the 5th Amendment is admissible.  First, it is not barred under 46 U.S.C. §6308(a) since it does not contain the mental impressions or conclusions of Coast Guard personnel. Second, as previously noted, FRE 804 exempts from the hearsay rule an individual's former testimony if (1) the individual is "unavailable"; and (2) "the party against whom the testimony is now offered, or, in a civil action

---

[2]    *See, e.g., In re Danos & Curole Marine Contractors, Inc.,* 278 F.Supp.2d 783, 786 (E.D. La. 2003); *Orgulf Transport Co. v. Magnolia Marine Transport, et al.,* No. 97-1411, 1999 WL 221125, *1 (E.D. La. April 12, 1999); *TT Boat Corp.,* No. 98-0494, 1999 WL 169458, * 1 (E.D. La. March 25, 1999); *Eckstein Marine Service, Inc. v. Crescent Marine Towing, Inc.,* No. 98-1467, 1999 WL 58264, * 1 (E.D. La. Feb. 2, 1999).  -  Halliburton concedes that certain reports may be admissible for impeachment and concurs with plaintiffs in this regard.  [Doc. 4522-1, at p 4]

or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." FED. RULE EVID. 804(a) & (b)(1).  Rule 804(a)(5) defines unavailability as including "situations in which the declarant (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement…" FED RULE EVID. 804(a)(5). In the Fifth Circuit, a witness who invokes his Fifth Amendment privilege against self-incrimination is "unavailable" within the meaning of Rule 804(b).[3]  Hence, any witness who asserts the Fifth Amendment privilege in this case should be deemed "unavailable" for purposes of Rule 804, and his previous testimony before the Board should be admissible at trial under Rule 804(b)(1).[4]

All defendants were named as "parties in interest" in the Joint Investigation. By regulation, parties in interest are entitled "to be represented by counsel, to examine and cross-examine witnesses and to call witnesses in their own behalf." 46 CFR 4.07-35(a).  Captain Hung Nguyen, the Commander of Sector Ohio Valley and co-chairman of the Joint Investigation, announced during the first day of hearings that parties in interest were permitted to be represented by counsel and to examine and cross-examine witnesses. (May 11, 2010 Board Hearing Transcript, pp.1,12.)  All of the defendants were present, represented by counsel and conducted cross examination as each deemed appropriate.  Hence, all of the defendants had the "opportunity" to develop the testimony of the witnesses who testified before the Board.

Further, defendants had a substantially similar interest in prevailing on the issues addressed to the now-unavailable witnesses who testified in the hearings as they will have in the

---

[3]     *United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998); *United States v. Briscoe*, 742 F.2d 842, 846 (5th Cir. 1984); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978); *Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 36654, *10-11 (S.D. Tex. May 18, 2007); *United States v. Skilling*, 2006 U.S. Dist. LEXIS 28424, *5 (S.D. Tex. April 27, 2006); *see also, United States v. Salerno*, 505 U.S. 317, 320-321 (1992) (parties agreed that proper invocation of the Fifth Amendment privilege renders a witness unavailable).
[4]     Halliburton agrees that the JIT testimony of a witness who is unavailable because of invocation of Fifth Amendment rights may be admissible in certain circumstances under FRE Rule 804(b).  [Doc. 4522-1, p 5]

trial of this case.  The hearings transcripts confirm that the issues raised before the Board were similar to many that will be raised at the Phase I trial.  On the first day of the Board's hearings, Captain Nguyen explained that the Board had the powers of both the Coast Guard and the MMS. He described the purpose of the investigation as follows:

> This investigation is intended to determine the cause of the casualty to the extent possible and the responsibilities thereof. Subject to the final review and approval of the Commandant of the Coast Guard and the Director of Minerals Management Service and to obtain information for the purpose of preventing or reducing the effects of similar casualties in the future. *This investigation is also intended to determine if there is evidence that incompetence, misconduct, unskillfulness or willful violation of the law on the part of any licensed officer, pilot, seaman, employee, owner or agent of such owner of any vessel involved or an inspector, officer of the Coast Guard, the Minerals Management Service or other officer or employee of the United States or any other person caused or contributed to the cause of this casualty or if there is evidence of any act in violation of any of the provision of the United States Code or any of the regulations....*

(May 11, 2010 Board Hearing Transcript, p.10) (emphasis added).

While the discovery and other proceedings since the hearings have enlarged and to some extent re-framed or re-focused several of the issues, the defendants were clearly on the same general side of the same general issues in the former proceeding as they will be at trial. The motives of the defendants as parties in interest before the Board are "similar" to their motives as defendants in the MDL – to avoid responsibility for having caused or contributed to the *Deepwater Horizon* disaster and to discredit any witness whose testimony indicated that the defendants were to blame.  The motive is not required to be identical.  The test for similar motive turns on "not only whether the questioner is on the same side of the same issue at both proceedings, but also whether the questioner had a substantially similar interest in asserting and prevailing on the issue." *Battle v. Memorial Hosp. at Gulfport,* 228 F.2d 544, 552 (5th Cir.

2000).[5]   Defendants simply cannot argue that they did not have the opportunity and a "substantially similar interest" to cross-examine the witnesses or that the testimony is not "reliable."  Anyone who attended the hearings knows this to be untrue.

Therefore, the previous testimony of now unavailable Fifth Amendment witnesses before the Board is admissible at trial under Rule 804(b)(1).  The parties against whom the testimony will be offered were parties-in-interest during the Coast Guard Hearings, and all had an opportunity and similar motive to develop the testimony by direct, cross, or re-direct examination.  Indeed, all of them did so.

**BOEMRE's Volume of the Joint Investigation Report is Admissible.**

The BOEMRE report is separate from the "joint" report and the Coast Guard marine casualty investigation report.  It is admissible under FRE 803(8) because it was not conducted pursuant to Section 6301. *See Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 WL 941794 (5th Cir. 4/12/06) (admitting a MMS accident report into evidence in a Gulf of Mexico well blowout case).  The plain language of 46 U.S.C. §6308(a) makes this clear:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil proceedings, other than an administrative proceeding initiated by the United States . . . . (emphasis added)

To be inadmissible under this provision, a report must be (1) a marine casualty investigation report and (2) be conducted under 46 U.S.C. §6301.  The BOEMRE Report is neither.

A "marine casualty investigation report" investigates marine casualties involving deaths, injuries, property/equipment loss, vessel safety systems, and environmental damage resulting

---

[5]    The similar motive inquiry "appropriately reflects narrow concerns of ensuring the reliability of evidence admitted at trial."  *United States v. Salermo,* 505 U.S. 317, 112 S.Ct. 2503, 2509, 120 L.Ed. 2d 255 (1992).

from incidents aboard vessels subject to U.S. jurisdiction. *See* COAST GUARD REPORT at v (describing Coast Guard investigatory jurisdiction); *see also* 46 C.F.R. §4.03-1. By contrast, the BOEMRE investigation examined "the causes of the blowout, including factors related to the Macondo well drilling operations, well abandonment procedures and well control." JOINT COVER MEMO at 1. BOEMRE's responsibilities focused upon "exploration, drilling, completion, workover, production, pipeline and decommissioning operations for hydrocarbons and other minerals on the [Outer Continental Shelf]." COAST GUARD REPORT at v. These subject areas fall squarely within BOEMRE's jurisdiction, but not the Coast Guard's.

BOEMRE's investigation was not "conducted under §6301"; therefore, the inadmissibility provision of §6308 is wholly inapplicable. Nothing in the Joint Cover Memo, the Coast Guard Report, or the BOEMRE Report purports to derive investigatory authority for the BOEMRE Report from §6301. Indeed, only the Coast Guard (and not BOEMRE) may conduct an investigation under §6301. *See* 46 U.S.C. §6301 (providing the Coast Guard with authority to investigate marine casualties).[6] Because §6308 only applies to "marine casualty investigative reports" by its plain terms, no other agency's report may be bootstrapped into the statute's inadmissibility provision. The Court can therefore end its inquiry with a plain reading of the

---

[6] Congress' purpose in enacting the Coast Guard statute is telling. In short, passage of §6308 had a limited, specific goal—to shield *Coast Guard* inquiries and *Coast Guard* inquiries only:

> Marine casualty investigations are intended to expeditiously determine the factors that cause accidents, to determine whether there is a need for regulatory or statutory changes, to determine whether a material failure caused or contributed to the casualty, and whether there is evidence that warrants enforcement action. The amendments made by this section will ensure that the deliberative process of *Coast Guard casualty investigations* will be unaffected by the prospects of future litigation.

H.R. Rep. No. 106, 104th Cong., 1st Sess. § 414 (1995) (emphasis added). This purpose simply has no applicability to the distinct areas of inquiry overseen by BOEMRE: "well drilling operations, well abandonment procedures and well control." JOINT COVER MEMO at 1.

statute.  The description of the goal of the BOEMRE investigation stated herein further confirms this point.

Even if the Court were to look further than the Coast Guard statute, and examine the regulations promulgated pursuant thereto, the analysis remains the same.  The regulations governing a marine casualty investigation are codified at 46 C.F.R. §4.01-1 *et seq*.  These regulations do not extend a "marine casualty investigation" to any investigation other than one performed by the Coast Guard.  Subpart 4.03-30 explicitly defines an investigating officer as an employee of the Coast Guard, not BOEMRE or any other agency.  Further, the investigating (Coast Guard) officer must himself investigate each marine casualty.  46 C.F.R. §4.03-30(a).  Thus, under the regulations, the Coast Guard and its investigating officer cannot delegate a "marine casualty investigation" to another agency.  While a second agency may work in conjunction with the Coast Guard, that second agency is not conducting a §6301 "marine casualty investigation."  Only the Coast Guard may do so.

The relevant Coast Guard regulations contain mention of but one other agency, the National Transportation Safety Board (NTSB), which is also statutorily required to investigate certain marine casualties. *See* 46 C.F.R. §4.40-3.  Even here, however, the regulations are clear that "[t]he Coast Guard's responsibility to investigate marine casualties is not eliminated nor diminished by the regulations in this subpart."  In joint investigations by the Coast Guard and the NTSB, the proceedings and investigations are "conducted independently but so as to avoid duplication as much as possible." *Id*.  Again, the import of the regulations is clear: even where the Coast Guard works with another agency (such as NTSB), no agency save the Coast Guard may conduct a marine casualty investigation under §6301.  Because no other agency may conduct a "marine casualty investigation," and because no agency can supplant the Coast

Guard's role to investigate such a casualty under § 6301, it follows that *only* the Coast Guard can author a report pursuant to §6301.  Under the statute, only a marine casualty investigation report written under §6301 can be made inadmissible pursuant to §6308(a).[7]

Finally, for Defendant to attempt to bootstrap the BOEMRE Report into a "marine casualty investigation" under the Coast Guard statute ignores the intent of the JIT. To be sure, BOEMRE and the Coast Guard joined forces to avoid duplicative efforts and competing hearings. However, their purposes were separate and they stated as much.  The prologue of the Coast Guard Report is revealing in this regard:

> BOEMRE is responsible for investigating incidents related to systems associated with exploration, drilling, completion, workover, production, pipeline and decommissioning operations for hydrocarbons and other minerals on the OCS. The USCG is responsible for investigating marine casualties involving deaths, injuries, property/equipment loss, vessel safety systems, and environmental damage resulting from incidents aboard vessels subject to U.S. jurisdiction.  The MOA assigns responsibility in joint investigations according to these responsibilities.  **Volume I [Coast Guard Report] addresses the areas of USCG responsibility and Volume II [BOEMRE Report] will address the areas of BOEMRE responsibility.**

COAST GUARD REPORT at v, (emphasis supplied).

As is clear, the agencies' responsibilities were delineated from the outset, as were their purposes, investigations, and finally, their reports.  The agencies intentionally separated their reports into separate volumes and released the volumes on separate dates.  Each agency report "was prepared according to the respective agency's internal processes." JOINT COVER MEMO, at 2.  Volume I is clearly the Coast Guard's marine casualty investigation report and is inadmissible.  Volume II is clearly BOEMRE's report and is admissible because it is not a "marine casualty report" and no other statute precludes its admission.

---

[7]     BP mistakenly relies on *Nexen Petroleum U.S.A. v. Sea Mar Division of Pool Well Services Co.,* Civil Action No. 06-3043, 2007 WL 2874805 (E.D. La. 9/26/07) as Nexen did not involve a report of an investigative body other than the USCG and is therefore irrelevant to this issue.

## Conclusion

For the above and foregoing reasons, the defendants' motions in limine should largely be denied.

This 18th day of November, 2011.

Respectfully submitted,


_____/s/ Stephen J. Herman_
Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN KATZ
    & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2179*

_____/s/ James Parkerson Roy_
James Parkerson Roy, La. Bar No. 11511
DOMENGEAUX WRIGHT ROY
    & EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel MDL 2179*


### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS
& MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159

Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Opposition will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of November, 2011.


/s/ Stephen J Herman and James Parkerson Roy