UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| IN RE: OIL SPILL BY THE OIL RIG, | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, | * | SECTION: J |
| 2010 | * | |
| | * | |
| Relates to:  *All Cases* | * | JUDGE BARBIER |
| | * | |
| (Including No. 10-2771) | * | MAG. JUDGE SHUSHAN |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS *IN LIMINE* TO PRECLUDE THE INTRODUCTION OF GOVERNMENTAL
REPORTS AND DOCUMENTS, INCLUDING CONGRESSIONAL TESTIMONY

Plaintiffs respectfully submit the following memorandum to address the admissibility of various government reports, including, specifically, the Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling [TREX-06300], and the Chief Counsel's Report [TREX-00986].  Three Defendants have filed motions *in limine* to exclude these governmental reports as hearsay - Halliburton [Doc 4523]; Transocean [Doc 4521]; and BP [Doc 4515].  Additionally, BP moves to preclude the following additional governmental reports and documents: the Congressional Testimony of Anthony Hayward [TREX-06001]; the Congressional Testimony of Jesse Gagliano [TREX-02033]; an OSHA press release and Fact Sheet [TREX-00870 and TREX-06028]; BP Deferred Prosecution Agreement [TREX-06010]; and the Chemical Safety Board Investigative Report on the Texas City BP Refinery Explosion [TREX-06012].[1]  Cameron also seeks to exclude Congressional Testimony [Doc 4506].  For the following reasons, these reports and documents are admissible under the Public Records exception to the general hearsay rule. *See* Fed. R. Evid. 803(8).[2]

**<u>Admissibility of Public Records and Reports</u>**

Federal Rule of Evidence 803(8) excepts from the general hearsay rule any "records, reports, statements, or data compilation, *in any form*, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, . . . or (C) in civil actions and proceedings . . . , factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8) (emphasis added).

---

[1] Additionally, although BP does not list the Marshall Islands' Report [TREX-20040] as one in which they object to on their opening page of their memorandum, it nevertheless addresses that report within its brief.  Therefore, the PSC will address the admissibility of the Marshall Islands' Report as well.

[2] The PSC previously briefed this issue in a Letter Brief dated October 17, 2011, and respectfully incorporates and reasserts many of the arguments of that letter herein.

For nearly a century, the Public Records exception to hearsay has been recognized by the Supreme Court, due to the high reliability of government records and reports. *See Chesapeake & Del. Canal Co. v. United States*, 250 U.S. 123, 128-29 (1919) (noting that "their character as public records . . . make these . . . admissible as unusually trustworthy sources of evidence"). Moreover, due to the high reliability of this evidence, this exception has been interpreted broadly. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988) (explaining that Rule 803(8)(C) embodies a "broad approach to admissibility" and holding that "portions of a . . . report containing conclusions . . . were not inadmissible under Rule 803(8)(C)"). Indeed, the Rule permits admission of a report's "factual findings," which encompass its rote recitation of the facts, as well as its opinions and conclusions. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991) (holding "opinions and conclusions, as well as facts, are covered by Rule 803(8)(C)") (citation omitted). In *Beech Aircraft,* the Supreme Court noted that the primary protection against admission of unreliable evidence was the Rule's provision directing exclusion of all elements of the report—both factual and evaluative—if the court determines that they lack trustworthiness. 488 U.S. at 167 n.11 (citing Fed. R. Evid. 803(8) advisory committee note). Therefore, if the record facially satisfies the requirements of the rule, <u>the opponent has the burden</u> to demonstrate lack of trustworthiness. *See Graef v. Chemical Leaman Corp.,* 106 F.3d 112, 118 (5th Cir. 1997); *see also Moss,* 933 F.2d at 1305 (5th Cir. 1991).

Thus, under the Rules, governmental investigative reports are admissible. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201 (5th Cir. 1992) (holding that under Fed. R. Evid. 803(8)(C), investigative reports made by government agencies are removed from the rule against hearsay unless circumstances indicate untrustworthiness); *see also McClure v. Mexia Indep. Sch.*

*Dist.*, 750 F.2d 396 (5th Cir. 1985) (same).  The reports proffered here are reliable and the defendants have not met their burden of demonstrating that any of them lack trustworthiness.

### A. The Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling and the Chief Counsel's Report are both admissible[3]

The President announced the creation of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling on May 22, 2010, and directed it to provide a thorough analysis and impartial judgment in determining the causes of the Deepwater Horizon disaster. The Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling was the result of an intense six-month effort to fulfill the President's charge.

Halliburton alone argues that the Commission is not a public office or agency and had no authority granted by law or duty imposed by law to report fact findings and that the Commission did not have any public officials that reported "matters observed."[4]  This argument is clearly misplaced.  First, the Commission was established by the President of the United States pursuant to Executive Order No. 13543 of May 21, 2010.   The executive order was issued under the President's authority vested "by the Constitution and the laws of the United States of America," including the Federal Advisory Committee Act, codified at 5 U.S.C. App. 1 *et seq.*.   The President directed the Commission to, *inter alia,* "examine the relevant facts and circumstances concerning the root causes of the Deepwater Horizon oil disaster."  Executive Order 13543 (May 21, 2010).   Even after citing this Executive Order—and without any case law to support its position—Halliburton wrongly suggests that the Commission's work was not conducted by a public agency or body.  This argument ignores the fact that the Commission was a public body

---

[3]  For each challenged Exhibit, the PSC addresses the issue directly and responds to as many of the defendants' arguments as possible.  Because the defendants' arguments seeking to exclude the Commission's Report and the Chief Counsel's Report are similar, the PSC does not address these Reports separately.

[4]  Although all three defendants move for exclusion of this report, only Halliburton suggests that it is not a "governmental report" completed by a governmental agency  (the other defendants focus their argument on the trustworthiness / reliability aspect of the Rule).

appointed by the President of the United States to report on an event of national importance. Further, under the Executive Order, the Commission had a staff, including an Executive Director that was paid by public funds, as were its operational expenses. Furthermore, several high officials of various federal agencies (Department of Energy, Department of Interior) were designated to assist the work of the public commission. To suggest that a presidentially appointed commission is not a public entity is simply without case law support because it lacks logical support.

Furthermore, Halliburton argues that even if the Commission was a public entity, this type of report is inadmissible because of the nature of the special commission the President appointed. In support of this vague argument, Halliburton cites a lone district court case from the District of Connecticut that held that the Tower Report, which was tasked to review the Iran-Contra affair, was inadmissible because it lacked trustworthiness. Halliburton Memo. at pp.4-5 (citing *United States v. Durrani*, 659 F. Supp. 1183, 1987 (D. Conn., 1987)). However, on appeal, the Court of Appeals for the Second Circuit called this decision "perhaps ill-advised," but affirmed the decision under the wide discretion given to the district court to adjudge "whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *See United States v. Durrani*, 834 F.2d 410, 425 (2d Cir. 1987). Because the Court of Appeals questioned the wisdom of the district court's decision, the district court's holding is not persuasive and is, frankly, irrelevant. In any event, this Court clearly must review the reliability of the Presidential Commission's Report alone. A stray, twenty-year-old district court decision is of no moment.

As to reliability or the trustworthiness of the public report, Halliburton suggests it is not trustworthy as the committee lacked special skill or experience; the hearings were simply a

presentation of preliminary facts; "possible" motivational problems; and the investigative methods were unsound.   Defendants' arguments, stripped to their essence, are simply red herrings.   For example, Halliburton argues the Commission lacked technical engineering expertise.   This overlooks the blatant fact that the Commission hired an extensive staff to offer technical advice, and one Commissioner is a highly trained engineer, currently serving as the Dean of the School of Engineering at Harvard University.

As to Halliburton's questioning of the motivations of the Commission, the President appointed a bipartisan commission without consideration of any motivation other than to examine the root causes of this disaster.  *Cf. Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (finding Congressional report inadmissible because report consisted of "the rather heated conclusions of a politically motivated hearing") (emphasis added)*; Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987) (draft report of Subcommittee on Crime of the House Judiciary Committee is inadmissible under Fed. R. Evid. 803(8)(C) in part because it was produced by a politically-motivated, partisan body) (emphasis added).   Here, there is no suggestion that the Commission's report is unreliable due to any motivation of partisanship.   Finally, Halliburton is again without case law support and misses the mark when suggesting these Reports are not admissible because they are not final, as some facts were still developing when they were completed (as indeed has been the case with every report issued in this case and even this litigation is still uncovering additional facts).   Any argument of a report being inadmissible due to lack of finality only pertains to a "draft" report being inadmissible, but not a final report where more facts may later be recovered.   Indeed, these Reports are final under the Executive Order and the direction given by the President.

BP argues that the Commission's report is based simply on the conclusions of other bodies and entities.   However, this ignores the important work that the Commission accomplished.   In 397 pages, the Commission certainly cited to other bodies' factual findings, but it made its own independent conclusions and findings.   To characterize it as a simple presentation of other bodies' findings is disingenuous.   BP also argues that because the Commission's report goes beyond the April 20, 2010 event and discusses in Chapter 2 the history of the development of the oil industry that the Commission was acting outside the scope of its authority granted by the President.   However, the President set forth a request to the Commission to develop improvements to federal laws, regulations, and industry practices.   The Commission, in fulfilling this request, set forth the history of the oil industry to give context to its recommendations and to help the President and the public contextually understand what happened on April 20, 2010 as part of its examination of the oil industry.[5]   Finally, BP argues that the report contains hearsay within hearsay but never gives even one example of the hearsay within hearsay.   Without citing specifics, BP has not carried its burden to show that there is hearsay within hearsay.[6]

Finally, Transocean argues that the Commission's report lacks trustworthiness because of the short time frame within which the Commission issued the report, and because the report was issued prior to the inspection of the Blowout Preventer.   With all due respect, Transocean's argument goes to the weight of the evidence and not its admissibility, which Transocean recognizes at the conclusion of its argument. Transocean Memorandum at p.4 (noting "[a]nd even to the extent that parts of the reports are ultimately admitted, the timing and limited record

---

[5] If the Court were persuaded that the chapter on the history of the industry is inappropriate, the Court need not deem the entire report inadmissible, but need only redact Chapter 2 of the report.

[6] BP also argues that the Commission's report is not a public record because it relies on JIT testimony.  As the Court is aware, separate memoranda address the admissibility of the JIT testimony and reports.  However, the applicability of a statutory exclusion provision has no bearing on whether a document is a public record under the Federal Rules.

before the Commission should be considered with respect to the weight to be given to the conclusions of the reports"). The President directed a report to be given in six months, and the Commission undoubtedly, with an extensive staff, worked tirelessly to report to the President in a timely manner. This accomplishment does not negate the trustworthiness of its report.

### B. Congressional Testimony is Admissible

The Congressional Testimony of Tony Hayward and Jesse Gagliano is admissible as a public record. The Fifth Circuit has held that certified court records, including hearing transcripts, come within the ambit of the "public records" exception. *See Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 291-292 (5th Cir. 2002) ("The district court's conclusion that the transcript of the state court hearing was an admissible public record is persuasive. We accordingly find no error in the court's having admitted the hearing transcript"); *Anderson v. Parish of Ascension,* 2011 U.S. Dist. LEXIS 32839, 5-8 (M.D. La. Mar. 28, 2011) (citing *Cozzo* and noting that "the Fifth Circuit has been relatively unequivocal in its pronouncements that court records are exempt from the hearsay exception"). *See United States v. Mayfield,* 31 Fed. Appx. 160, 2001 WL 1751481, at *1 (5th Cir. 2001) (stating that "certified court records are public records which fall within the public-records exception to the hearsay rule"); *United States v. Cantu,* 167 F.3d 198, 203 (5th Cir. 1999) (stating that "certified court records are public records, thereby falling within the public records exception to the hearsay rule").

Additionally, multiple courts have specifically found congressional testimony to be a public record. *See In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493, 504 (S.D.N.Y. 2009) (holding transcripts of congressional hearing testimony are public records, which courts have found to be subject to judicial notice); *see also Johnson & Johnson v. Am. Nat. Red Cross,* 528

F.Supp.2d 462, 463 n.1 (S.D.N.Y. 2008) (finding that congressional hearing testimony is a public record and is subject to judicial notice); *Newby v. Lay (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 258 F.Supp.2d 576, 624 n.54 (S.D. Tex. 2003) (taking judicial notice of congressional testimony).  The testimony thus meets the definition of a "public record" pursuant to Rule 803(8)(C), and it is therefore admissible as an exception to the hearsay rule.

Neither Cameron nor BP have cited anything in the proceedings before the Subcommittee as evidence that testimony offered during the proceedings is "untrustworthy."  Instead, they simply asserts that congressional proceedings are "political" in nature, and therefore testimony offered during such hearings is inherently untrustworthy.  In this regard, Cameron and BP place undue reliance on the District of Columbia district court's decision in *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 815 (D.D.C. 1987).   There, the Court prevented a plaintiff in a libel suit from relying on a draft report of a congressional subcommittee in opposing a summary judgment motion.  The Court noted that the report was produced by "a politically motivated, partisan body," and lacked trustworthiness. *Id.* at 814.   Here, Cameron and BP have shown nothing to suggest that the congressional hearings in this case were "politically motivated."  Further, *Pearce* is at odds with decisions in this Circuit, particularly *Cozza*, wherein the Court held that a hearing transcript was admissible as a public record.  In addition, the decision was based in part on the fact that the report itself was not admissible whereas, here, the Commission's report is admissible as set forth above.   Moreover, in *Pearce,* the admissibility of the testimony in question was never fully addressed; instead, counsel for the plaintiff stated that the testimony was admissible, but never cited any authority for it.  The Court apparently made its decision without the benefit of any briefing on the issue.  Accordingly, the decision in *Pearce* has no persuasive value here.

8

Furthermore, this Court's decision in *Major v. Treen*, 574 F.Supp. 325, 330 n.6 (E.D. La. 1983) demonstrates that this Court, unlike the *Pearce* court, does not consider congressional records untrustworthy. In *Major*, this Court held that transcripts and minutes of joint committees and subcommittees of the Louisiana Legislature fall within the public record exception to the hearsay rule.

BP cites this Court's decision on a motion in *In re FEMA Trailer Formaldehyde Products Liability Litigation,* MDL No. 07-1873, 2009 WL 2900028 (E.D. La. Sept. 3, 2009), as evidencing the concurrence of courts in this Circuit with the holding in *Pearce.* In that case, the Court granted the motion *in limine* because the congressional testimony was not **relevant** to the products liability issues in **that case**. BP erroneously suggests that the *FEMA Trailer* Court made a general declaration as to the admissibility of congressional testimony. On the contrary, the Court's decision in *In re FEMA Trailer* suggests that, had the congressional testimony been relevant to the issues being addressed, it would have been admissible as a public record.

As Transocean correctly notes (and BP apparently does not contest), Hayward's Congressional Testimony would be admissible as non-hearsay against BP **(i)** as an admission by a party opponent under Fed. R. Evid. 801(d)(2)(A), (C), and/or (D), and **(ii)** as a prior inconsistent statement that can be used for impeachment purposes during the cross-examination of Dr. Hayward pursuant to Fed. R. Evid. 801(d)(1). Likewise, Gagliano's Congressional Testimony would be admissible against Halliburton pursuant to Fed. R. Evid. 801(d)(2)(D), and for impeachment purposes under Fed. R. Evid. 801(d)(1).

### C.  Other Government Reports

BP also argues that The Marshall Islands Report; The Chemical Safety Board Final Report on the BP Texas City Refinery Explosion;[7] the Deferred Prosecution Agreement; and the OSHA Fact Sheet and Press Release are inadmissible and not public records.  For the same substantive basis outlined above, these reports are public records.  Each was issued by the Government and has the same indicia of reliability that the Supreme Court has recognized for eighty years and that was codified in the Federal Rules of Evidence.  It is BP's burden alone to show the lack of trustworthiness of these documents, and it has failed to do so.

To address a few of BP's misplaced arguments, BP suggests, for example, that the Deferred Prosecution Agreement lacks trustworthiness.  This argument is completely astounding, for the Deferred Prosecution Agreement is a document BP itself signed and agreed to and, therefore, indicates trustworthiness as a public record.  Furthermore, BP stipulated that:

> BP America admits, accepts and acknowledges responsibility for the acts of its current and former officers and employees of the BP Entities as set forth in the Statement of Facts . . . BP America further agrees the factual statements set forth in the Statement of Facts are accurate.

TREX-06010, p.2.  BP cannot stipulate to the accuracy of the facts in the agreement and now suggest they are not accurate as a public record.

Furthermore, even if the Court were to find that this document were not a public record, it is unquestionably a party admission or an admission against interest and therefore admissible. *See* Fed. R. Evid. 801(d)(2) (providing that admissions by party opponents are not hearsay); Fed. R. Evid. 804(3) (stating as an exception to the hearsay rule statements by a party that are against

---

[7]  BP suggests that the Chemical Safety Board's Report is not a public record under 803(8) because the report is excluded from use at trial by statute.  *See* BP Memorandum at 6.   BP has not moved to exclude the report on the basis of this statute, as it did with the Coast Guard statute.  However, whether a federal statutory exclusion provision applies to the Chemical Safety Board's Report has no bearing on whether a document is a public record under the Federal Rules of Evidence and is a wholly separate question.

its civil or criminal interests).  Finally, even if this record is hearsay, it is admissible for other purposes – *i.e.,* to show BP's knowledge and notice of its problems occurring prior to April 20, 2011 with process safety and corporate safety culture.

BP also contends that the OSHA news release and fact sheet are not public records. These exhibits are found on the Occupational Safety & Health Administration website of the United States Department of Labor.   They simply record information that the agency has compiled, including the monetary fine assessed to BP, and BP's agreement to take corrective action, as well as factual information gathered in OSHA's investigation.   Rule 803(8) permits governmental records "*in any form*" to be admissible.   This format – a news release and fact sheet – by an official governmental agency is no different than had they titled it an official "report of findings" and reported the same fine and listed the same incidents that they did in the release and fact sheet.   What is more, BP does not contend that the OSHA figures are inaccurate.[8]   In short, this exhibit retains its reliability and trustworthiness as a public document or otherwise, and, therefore, should be admitted.

D.  **Plaintiffs' Experts May Rely Upon Congressional Testimony**

Cameron's argument that the congressional testimony of Hayward and others cannot be relied upon by Plaintiffs' experts is baseless since the testimony is admissible as a public record. Also, the testimony is admissible as a party admission against BP pursuant to Rule 801(d)(2) (or,

---

[8] *See Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799, 807-811 (E.D. Tex. 2005) (finding indicia of trustworthiness in article when party opposing admission never moved to correct public record); *see also, Dallas Cnty. v. Commercial Union Assurance Co.*, *Ltd.*, 286 F.2d 388, 395 (5th Cir. 1961) (applying a "liberal, flexible rule for the admissibility of evidence to admit newspaper article in a decision that served as the archetype for what would become Rule 807); *Larez v. City of Los Angeles*, 946 F.2d 630, 643 & n.6 (9th Cir. 1991) (finding circumstantial guarantees of trustworthiness where publication was based upon secondary supporting evidence and not simply a reporter's perception or memory); *see also Wright v. Montgomery Cnty.*, 2002 WL 1060528, at *1 (E.D. Pa. May 20, 2002) (same).

in the case of other congressional witnesses, against their employers who are defendants in this case).  Yet, even if the testimony were inadmissible, Plaintiffs' experts could rely upon it.

It is well-settled under Rule 703 that experts may rely on facts that are otherwise inadmissible if of a type reasonably relied upon by experts in the particular field. Fed. Rule Evid. 703; *Maxwell v Ford Motor Co.,* 160 Fed. Appx. 420, 424 (5th Cir. 2005); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 n.6 (5th Cir. 1994).  Trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Maxwell supra* (quoting *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989)).

Finally, the potential for prejudice that Cameron forecasts is simply not present here. Cameron cites the provision in Rule 703 that inadmissible facts shall not be disclosed to "to the jury" by the proponent of an opinion unless the court determines they their probative value outweighs their prejudicial effect.  It also cites the advisory committee notes that provide that when information is "reasonably relied upon by an expert and yet is admissible only for the purpose of assisting the *jury* in evaluating an expert's opinion, a trial court applying [Rule 703] must consider the information's probative value in assisting the *jury* to weigh the expert's opinion on the one hand, and the risk of prejudice resulting from the *jury's* potential misuse of the information for substantive purposes on the other." ADVISORY COMMITTEE'S NOTE, Fed. Rule Evid. 703 (emphasis added).  Cameron argues that experts should be precluded from disclosing the congressional testimony because testimony of "interested party witnesses" is likely to prejudice Cameron and will outweigh its probative value, thereby failing Rule 703's balancing test.  This case, however, will be tried to the court, not a jury; accordingly, Cameron's apprehension regarding the alleged "prejudicial" effect is unfounded. *See Verizon Directories Corp. v. Yellow Book United States, Inc*., 331 F. Supp. 2d 134, 136 (E.D.N.Y. 2004) (stating that,

while the probative effect of the inadmissible evidence upon which an expert relied was low, its prejudicial effect was even less given that the case was being tried to the bench and not a jury); *Triche v. Overnite Transp. Co.*, 1996 U.S. Dist. LEXIS 7224 (E.D. La. May 21, 1996) (noting that, in a non-jury trial, the possible prejudice caused by unreliable expert testimony going to a jury is not present).  Thus, this Court should reject Cameron's argument that Plaintiffs' experts cannot rely on congressional testimony in forming their opinions.

## <u>Conclusion</u>

For the above and foregoing reasons, the defendants' motions *in limine* to preclude the admission of public records should be denied.

This <u>18th</u>day of <u>November</u>, <u>2011</u>.


Respectfully submitted,


<u>        /s/ Stephen J. Herman </u>
Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN KATZ
    & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs' Liaison Counsel MDL 2179*

<u>        /s/ James Parkerson Roy </u>
James Parkerson Roy, La. Bar No. 11511
DOMENGEAUX WRIGHT ROY
    & EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel MDL 2179*


### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802

Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193

Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS
& MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257

Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Opposition will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of November, 2011.


/s/ Stephen J Herman and James Parkerson Roy


15