IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the GULF<br>OF MEXICO, on April 10, 2010<br><br>RELATES TO: All Cases and 2:11-cv-00263 | :   MDL 2179<br>:<br>:<br>:   SECTION J<br>:<br>:   JUDGE BARBIER<br>:<br>:   MAG. JUDGE SHUSHAN |

**PLAINTIFF BUDDY TRAHAN'S RESPONSE AND OPPOSITION TO MOTION TO
TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES**

Pending before the Court in the above-captioned proceeding is, <u>inter alia</u>, a motion

("Motion") by (i) Plaintiffs' Co-Liaison Counsel, and (ii) members of the Plaintiffs' Steering

Committee (collectively, the "PSC") for an "an order establishing a court-supervised escrow and

reserve…." Motion, at 1.[1] (Rec. Doc. 4507). More specifically, the Motion seeks an Order

requiring the defendants to reserve and deposit into a precautionary common benefit fund 6% of

"ongoing settlements, judgments or other payments…." <u>Id</u>. Buddy Trahan ("Trahan"), the

plaintiff in removed Case No. 2:11-cv-00263-CJB-SS, opposes the Motion <u>as currently filed</u> and

submits for the Court's consideration the following response in opposition thereto.

## I.      INTRODUCTION

(i)      Trahan was severely injured in the explosion aboard the Deepwater Horizon. He

filed a personal injury action against 14 defendants--none of which was a "Transocean" entity--

in state court in Harris County, Texas. The defendants removed the action to the United States

District Court for the Southern District of Texas, and Trahan promptly moved to remand the case

to state court. Rather than ruling on the motion to remand, Judge Atlas stayed the case pending a

---

1        Filed with the Motion is the PSC Annual Status Report and Memorandum in Support of Motion
to Establish Account and Reserve for Common Benefit Litigation Expenses ("Mem."). (Rec. Dcc. 4507-2).

1

decision by the JPML on transfer <u>vel</u> <u>non</u> to this Court.[2] After the case was transferred, Trahan

re-filed his motion to remand in accordance with the instruction in Pre-Trial Order No. 5. <u>See</u>

Plaintiff Buddy Trahan's Motion to Remand, filed April 8, 2011. (Rec. Doc. 1900). Further, he

re-urged the necessity for decision on the motion in opposing motions to dismiss filed by two of

the defendants. (Rec. Doc. 1904, 1905). In other words, Trahan has sought from the beginning (i)

<u>not</u> to be included in MDL 2179, and (ii) to have his action remanded to the Texas state court

from which it was wrongly removed. Nonetheless, the motion to remand remains pending.

      (ii)    From the inception of MDL 2179, the Court anticipated that attorneys would

perform "common benefit" work. <u>See</u>, <u>e.g.</u>, Pretrial Order No. 1, filed August 10, 2010. (Rec.

Doc. 2). The Court appointed the members of the PSC, and established standards and procedures

to be used by counsel seeking payment of fees and expenses, on October 8, 2010. <u>See</u> Pretrial

Order Nos. 8, 9. (Rec. Doc. 506, 508). For reasons unknown to Trahan, however, the PSC did

not file the Motion until November 7, 2011, <u>i.e.</u>, a full year later. In the interim, two things have

happened. <u>First</u>, the PSC, and other attorneys acting at its request, have invested over 230,000

hours and incurred over $11.5 million dollars in out-of-pocket expenses "for the common benefit

of claimants, litigants, and putative classmembers affected by" the Deepwater Horizon

explosion. Motion, at 1. <u>Second</u>, a substantial number of the claims and lawsuits arising from the

explosion have settled or been paid. For example, according to the website of the Gulf Coast

Claims facility ("GCCF"), $5,673,848,207.31 has been paid as of November 16, 2011. Claims

for "personal injury/death" have been paid in an aggregate amount of $155,031,207.31.[3]

---

2      Trahan's action was originally filed as <u>Trahan v. BP, plc, et al.</u>, No. 2010-52092, in the 270th Judicial District Court of Harris County, Texas. Upon removal to the Southern District of Texas, the case was assigned No. 4:10-3198. In a Transfer Order filed herein on February 7, 2010, the Judicial Panel on Multidistrict Litigation (i) denied Trahan's motion to vacate the conditional transfer previously directed, and (ii) ordered the case transferred for inclusion in MDL 2179. In this Court, the case is assigned number 2:11-cv-00263-CJB-SS.

3      <u>See</u> www.http://gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf, at 1, 6.

(iii)    The Motion notes that the PSC's request for a reserve is precautionary, and that its ultimate goal is to recoup the costs of prosecuting this litigation directly from the defendants. See Motion, at 2. Perhaps for that reason, it neither (i) quantifies the value of common benefit time incurred to date, nor (ii) offers any estimate of the amount or value of common benefit time and expenses expected to be incurred in the future.[4] Thus, the PSC asks the Court to establish a 6% holdback on future settlements and payments in an informational vacuum. Indeed, the basis for selecting 6% as the holdback amount--as opposed to some other percentage--is simply that 6% is in line with the holdbacks established in other MDL cases. Id., at 3. But the PSC also proposes to have the Court order that (i) only 4% of payments to the States of Alabama and Louisiana be reserved, and (ii) no holdback be imposed on payments to the United States. Id., at 2 n.1. In addition, it seeks no holdback provision with respect to the $5.6 billion paid by the GCCF to date, while imposing a 6% reserve on payments made after a de facto magic date to claimants and plaintiffs advancing similar, if not wholly identical, claims. With all respect to the PSC and its efforts, its proposal for a reserve fund should be rejected as presented.

## II.    ARGUMENT

The Motion is filed by the PSC "on behalf of attorneys contributing common benefit time and expenses…." Motion, at 1. Trahan does not oppose appropriate common benefit payments. Nor does he oppose appropriate hold-backs to establish a fund for such payments. For at least three reasons, however, the reserve proposal urged by the PSC is inappropriate, both in general, and as it would apply to Trahan. First, the proposal is underinclusive--and unfair--because it

---

4        The Motion states that, "[s]ince the inception of this litigation, over 300 lawyers from more than ninety different law firms have invested over 230,000 hours…for the common benefit of claimants, plaintiffs, and putative classmembers." Motion, at 1. Under the procedures required by the Court, the value of that time should be readily ascertainable by the PSC, just as (for example) the total amounts paid out by the GCCF is ascertainable. While the common benefit cost-to-date is not necessarily indicative of what the future may hold, it would be useful to know where things now stand in order to assess whether a holdback of 6%--as opposed to a lesser amount--is justified. And this would be all the more so if the court were to require retroactive holdbacks on GCCF payments.

would not be applied to the <u>billions</u> of dollars already paid out of the GCCF. In other words,

payments made for resolutions prior to the Motion would not incur a holdback, placing the entire

burden of any common benefit payments on remaining claimants, plaintiffs and class members.[5]

<u>Second</u>, the proposal is overinclusive--and further unfair--because it implicitly assumes that the

work undertaken by the PSC confers a uniform common benefit on all claimants, plaintiffs, and

class members. Because that is not so, a uniform holdback unfairly treats those who, like Trahan,

are only incrementally benefitted by the PSC's common benefit work. <u>Third</u>, and in any event,

the PSC does not explain how--in the absence of a finding that it has subject matter jurisdiction

over Trahan's claims, which requires decision on his motion to remand--the Court has power to

impose a holdback on any payment that Trahan might receive. Accordingly, as explained below,

the Court should deny the Motion (without prejudice) either <u>in</u> <u>toto</u>, or as applied to Trahan.

### A.      The PSC's Proposal is Unfair as Underinclusive.

As the form Order submitted with the Motion makes clear, the PSC proposes to establish

a "magic date" for holdbacks to begin of November 7, 2011. In other words, (i) any payments

made on or after that date (except to the United States) would be subject to a holdback, but (ii)

payments made before that date are exempt from contributing to the common benefit reserve

fund. The PSC cannot be unaware of the colossal impact that including payments made before

November 7, 2011 would have on the holdback percentage. Indeed, while the Motion does not

disclose the total amounts of common benefit attorneys' fees claimed to date, it strains credulity

to think that all such fees (and common benefit expenses as well) would not be dwarfed by an

---

5        The Motion states that "[t]he PSC members earlier agreed to a voluntary reserve <u>from the attorney</u> <u>fee portion</u> of their clients' settlements, and will likewise place those funds into the court-supervised account." Motion, at 3 (emphasis added). That "voluntary agreement" would be superseded by an Order granting the Motion. <u>Id.</u>, at 3 n.3. The result would be that the PSC's members' clients would be treated differently, depending on when their cases were resolved. Clients lucky enough to have their claims resolved prior to November 7, 2011 would not be subject to a holdback on their portion of the payment received, while those whose claims are resolved after that date would have a holdback imposed on their portion of the payment received. Notably, the Motion does not quantify the amounts that would be "left on the table," as it were, under the PSC's proposal.

assessment of substantially less than 6% on the $5.6 billion already paid by the GCCF. The PSC cautiously intimates that "a common benefit award may be owed with respect to settlements or other payments previously made through the GCCF or otherwise…" Mem., at 37. But that, it says, "is an issue left for another day." Id. Thus, having created a quandary by waiting a full year to file the Motion--and offering neither an explanation for that treatment, nor a proposed solution to the problem--the PSC would have the Court simply look past an important question.

Trahan recognizes that the Motion does not seek awards of common benefit funds, and instead requests only that the Court create a mechanism for funding a reserve that may, or may not, need to be tapped in the future. Nonetheless, it is fundamentally unfair to (i) have the reserve funded solely by claimants and plaintiffs receiving payments after the arbitrarily-selected date of November 7, 2011, while (ii) leaving the contributors completely in the dark as to whether their un-assessed counterparts will ever be required to contribute either to the fund, or to any common benefit awards that may be made. Indeed, the unfairness and uncertainty unleashed by the PSC's proposal will make settlements more difficult on a go-forward basis because claimants and plaintiffs will be forced to attempt to negotiate higher payments in anticipation of having to fund the entirety of any common benefit awards. Accordingly, while the Court may well need to set a protocol for funding a common benefit reserve, it should not do so without addressing the issues left open by the Motion. Hence, before the Court acts on the Motion, the PSC should be required to explain (i) the reason for its year-long delay, (ii) how it proposes to deal with common benefit assessments on payments made prior to November 7, 2011, (iii) whether some or all such payments can even be subject to assessments at all, and (iv) justify the amount of the proposed holdback. Anything less is wholly unfair.[6]

_____

    6       Again, the Motion does not seek a common benefit award. It is manifestly illogical, however, to have a common benefit reserve funded by less than the universe of those who could be required to share in the

In addition, the PSC should be required to provide more and better information on at least two other matters. <u>First</u>, the Motion requests reduced holdbacks of 4% for payments made to the States of Alabama and Louisiana. The only explanation for that treatment is that the request is made "in light of the ongoing and substantial coordination and contributions" between the PSC and these States. <u>See</u> Mem., at 3 n.3; Motion, at 2 n.1. This explanation is inadequate to justify a reduced holdback. Indeed, it is so vague that it is essentially meaningless. The Court should not endorse such massively differential treatment without full transparency. <u>Second</u>, the Motion requests <u>no</u> holdbacks for payments made to the United States. The PSC offers no explanation for that treatment. Again, the Court should not endorse starkly differential treatment without an explanation of why it is requested and appropriate. The point, of course, is that the PSC proposes to treat certain classes of claimants and plaintiffs differently, but with either no, or insufficient, explanation. The Court should require full and complete explanations on each of these issues.[7]

**B.      <u>The PSC's Proposal is Unfair as Overinclusive</u>.**

The PSC acknowledges that appropriate common benefit awards may vary "in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances." Motion, at 3. <u>See</u> <u>also</u> Mem., at 3. Trahan agrees--as a plaintiff with personal injury claims, he has not been, and will not be, afforded the same common benefit from the PSC's common benefit work as claimants and plaintiffs with economic and/or environmental injury claims. Indeed, the PSC's description of its various activities makes abundantly clear that its efforts are directed primarily at such claims, and only incidentally at other types of claims. This treatment is understandable

burden of paying common benefit awards. Concomitantly, it is important to define up front the universe of those who could <u>not</u> be required to contribute to common fund awards under any circumstances.

7        The Motion states that the PSC members earlier agreed to voluntary holdbacks from the attorneys' fee portions of awards to their clients, but it offers neither the specifics of that agreement, nor the amounts actually held back pursuant thereto. <u>See</u> Motion, at 2; Mem., at 3. Nor does the PSC explain why its members confected a voluntary holdback agreement instead of filing the Motion earlier. The Court should require an explanation in all three regards so that the voluntary holdbacks can be compared to the holdbacks requested in the Motion. Otherwise, the full measure of the disparate treatments proposed by the Motion, and the reasons therefor, will be unknown.

and not inappropriate, but it demonstrates that the PSC's efforts will not, and cannot, produce a uniform common benefit for all claimants and plaintiffs. And because the common benefit will not be uniform, the holdback proposed by the PSC should not be uniform. To the contrary, for personal injury plaintiffs like Trahan, the holdback--if any--should be nominal at most. Three examples of the PSC's common benefit work to date suffice to illustrate this point.

(i)     Pleading Bundles. In Pretrial Order No. 11, the Court divided the MDL into four categories (and subcategories) of cases, and ordered "pleading bundles" under which claims for personal injury and death must be pled individually. Trahan's state-court pleadings have not been amended in the MDL and, while it opposed motions to dismiss Bundle "A" claims, the PSC has spent no time drafting Bundle "A" pleadings. Conversely, it established research and writing work groups to file and defend the other bundled pleadings ordered by the Court, all of which has been done. See Mem., at 7, 13-14. None of the latter work benefitted Trahan, or any other plaintiff with personal injury or death claims. The Motion takes none of this into account.

(ii)    Limitation Trial. The PSC has devoted considerable effort to preparing for the Limitation Trial scheduled to commence on February 27, 2012. See, e.g., id., at 8 (work groups for trial), 13 (depositions for trial), 14-15 (participation in establishing trial structure). At most, only Phase I of the Limitation Trial could even conceivably provide a benefit to Trahan.[8] Even then, however, the possible benefit is attenuated because Trahan has sued no Transocean entities. Thus, while it is clear that Phases II and III can provide no common benefit to Trahan, it is not clear that even Phase I stands to provide a common benefit for him. Again, the Motion takes none of this into account, and simply assumes a uniform common benefit from the PSC's work.

---

[8]     Phase I will cover "loss of well control, the fire, explosion and sinking of the Deepwater Horizon, culminating in the release of oil from the Macondo well." Mem., at 15. Phase II will address "source control and the quantification of the oil discharged," while Phase III will address claims arising from the clean-up efforts. Id. Phase I may, or may not, yield a benefit to the remaining plaintiffs with for personal injury or death, the vast majority of which settled prior to November 7, 2011. Phases II and III can produce no possible benefit for such claims.

(iii)    <u>Science and Experts</u>. The PSC has established six Science, Environmental and Damages Work Groups. <u>See</u> Mem., at 8. Five of those groups relate (by title) only to economic, environmental, ecological, or other property damage. None of the work done by those groups can produce a benefit to Trahan, whose claims are only for personal injury. Likewise, the experts that have been retained or consulted in these areas cannot produce a benefit to Trahan. <u>Id.</u>, at 15. Nor does Trahan stand to benefit from the PSC's efforts to ensure compliance with the Oil Pollution Act. <u>Id.</u>, at 16-17. Finally, and again understandably, the PSC "has focused on the oil spill's environmental and ecological impacts and the damages flowing from those impacts." <u>Id.</u>, at 17. Its efforts in these regards are laudable, but also incapable of producing <u>any</u> benefit to Trahan and other claimants and plaintiffs with claims only for personal injury or death. <u>Id.</u>, at 17-19.

In short, the PSC has focused its efforts largely on matters that cannot and will not yield a benefit to personal injury and death plaintiffs such as Trahan. Indeed, the PSC incorrectly posits that the answers to its litany of environmental and ecological questions "are critical to calculating the damages of <u>any</u> of the plaintiffs in the MDL…." <u>Id.</u>, at 19 (emphasis added). This statement is true (if at all) only with respect to plaintiffs with claims for property, environmental, or ecological damages. Trahan is not such a plaintiff, and can receive no benefit from the PSC's efforts in these regards, no matter how laudable they may be.[9] Moreover, at least some of the BP defendants that Trahan has sued have (i) publicly acknowledged fault and responsibility for the explosion, and (ii) funded the GCCF with $20 billion even before this MDL was created. Any holdback imposed on Trahan should reflect these realities, and be in a nominal percentage at most. To that end, the PSC should be required to segregate and state the efforts allocable to personal injury and death plaintiffs.

---

[9]    The section on "Science" does not even include the cause of the explosion. <u>See</u> Mem., at 17-19.

### C.    The Court Lacks Power to Impose a Holdback on Any Payments to Trahan.

The discussion set forth above demonstrates that, if a holdback is imposed by the Court

on Trahan, then the amount of the holdback should be considerably less than 6%. There remains,

however, the question of whether the Court can impose a holdback on Trahan at all, when he (i)

has challenged subject matter jurisdiction over this removed case, and (ii) is before the Court

only involuntarily. Although the PSC sets forth an extensive general discussion of the common

benefit doctrine, see Mem., at 21-35, it does not address this issue. In other words, it does not

explain how the Court has power to act with respect to Trahan under these circumstances. We fill

that void by explaining why the Court lacks power to order a holdback as to Trahan.

In In re Genetically Modified Rice Litig., 2010 U.S. Dist. LEXIS 19168 (E.D. Mo.

February 24, 2010), the equivalent of the PSC herein moved to create a common benefit reserve

fund. As part of that request, it asked the court to include state-court cases in the holdback order,

"so that defendants would be required to hold back and contribute a portion of any settlements or

judgments from those cases as well as from the MDL cases." 2010 U.S. Dist. LEXIS 19168, at *

129. Declining to order holdbacks in state-court cases--including improperly removed cases it

had remanded to state court--the court held that it "[did] not have jurisdiction to order hold-backs

for…state court cases." Id., at * 121. Expanding on that holding, the court followed In re Showa

Denko K.K. L-Tryptophan Products Liability Litigation-II, 953 F. 2d 262 (4th Cir. 1992), which

"found that the trial court [in that case] did not have jurisdiction to order…contributions from

parties who were not before it." Id., at * 130, citing Showa Denko, supra, at 166-67. It further

observed that "[m]ost courts considering this issue have reached the same conclusion." Id.[10]

---

[10]    The court subsequently reaffirmed its holding that it had no jurisdiction to order a holdback with respect to state-court litigation, even as a litigant that was a party in a separate proceeding in the MDL. See In re Genetically Modified Rice Litig., 2011 U.S. Dist. LEXIS 17211, at * 176-179 (E.D. Mo. February 11, 2011) .

The result is that, if the Court had previously remanded Trahan's case to the state court from which it was improperly removed, then it would lack jurisdiction to impose a mandatory holdback on any payment that he might receive in settlement or after trial. Any such holdback would instead be a matter either for the state court to address, or for negotiation between the PSC and Trahan's counsel. The Court has not, however, ruled on Trahan's motion to remand, which presently leaves the issue in a different, and indefinite, posture. Under these circumstances, the most prudent course of action is for the Court to deny the Motion as to Trahan, without prejudice to re-filing if his motion to remand is denied. Alternatively, the Court should address Trahan's challenge to subject matter jurisdiction prior to ruling on the Motion as it applies to him, i.e., it should carry the Motion with respect to Trahan pending decision on his motion to remand.

Finally, it bears repeating that Trahan is before the Court only involuntarily, having been swept into this MDL against his will through (i) an improper removal of his state-court case, and (ii) the seemingly inexorable process by which his case--and his motion to remand--found their way to this Court. But again, there is no diversity of citizenship, Trahan's pleadings raise no conceivable federal question, and no Transocean entity is a defendant in the action. Nor, for that matter, is Trahan a party to the Limitation Action. In short, this is a state-court case that should be remanded to the state court from which it was improperly removed. Unless and until the Court holds otherwise, the Motion should be denied or deferred with respect to Trahan.

## III.    CONCLUSION

For the reasons set forth above, the Motion should be denied in toto, subject to being re-filed with provision of adequate information. Alternatively, the Court should either deny or defer the Motion as it applies to Trahan. If the Motion is granted as to Trahan, however, then the holdback as to him should be nominal and, in any event, considerably less than 6%.

Dated: November 21, 2011                    Respectfully submitted,

                                            **Lubel Voyles LLP**

                                            By: /s/ Lance H. Lubel
                                                  Lance H. Lubel
                                                  Texas State Bar No.: 12651125
                                                  Adam Q. Voyles
                                                  Texas State Bar No.: 24003121
                                                  McKenna Harper
                                                  Texas State Bar No.: 24041056
                                                  5020 Montrose Blvd., Suite 800
                                                  Houston, Texas 77006
                                                  Telephone No.: (713) 284-5200
                                                  Facsimile No.: (713) 284-5250
                                                  Email: lance@lubelvoyles.com
                                                           adam@lubelvoyles.com
                                                           mckenna@lubelvoyles.com
                                            **ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing ***Plaintiff Buddy Trahan's  Response and Opposition to Motion to Establish Account and Reserve for Litigation Expenses*** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 21st day of November, 2011.


                                            /s/ Lance H. Lubel_____
                                            Lance H. Lubel