UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig | * | MDL No. 2179 |
|              "Deepwater Horizon" in the | * | |
|              Gulf of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| **THIS PLEADING APPLIES TO:** | * | JUDGE:  BARBIER |
| | * | |
| In Re The Complaint and Petition of | * | MAGISTRATE:  SHUSHAN |
| Triton Asset Leasing GmbH, Transocean | * | |
| Holdings LLC, Transocean Offshore | * | |
| Deepwater Drilling Inc., and Transocean | * | |
| Deepwater Inc., as Owner, Managing | * | |
| Owners, Owners *Pro-Hac Vice*, and/or | * | |
| Operators of the MODU Deepwater | * | |
| Horizon, in a Cause for Exoneration from or | * | |
| Limitation of Liability | * | |
| | * | |
| Civil Action Nos.: | * | |
| 2:10-cv-2771 and 2:10-cv-2179 | * | |

### WEATHERFORD U.S., L.P. AND WEATHERFORD INTERNATIONAL, INC.'S MEMORANDUM IN OPPOSITION TO THE PSC'S MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

**MAY IT PLEASE THE COURT:**

Weatherford U.S., L.P. and Weatherford International, Inc. (collectively, "Weatherford") submit this Memorandum in Opposition to the PSC's Motion to Establish Account and Reserve for Litigation Expenses.  (Rec. Doc. 4507).  As set forth below, there is no legal support for the PSC's request for a reserve fund, as opposed to a true "hold-back" fund; and the PSC's request should be denied.

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

In its Motion, the PSC seeks to establish a "common benefit" fund by requiring the Defendants to fund an account and reserve for litigation expenses.  Instead of seeking hold-back

assessments or deductions from each settlement or judgment in this multi-district litigation ("MDL"), the PSC requests that the Defendants be assessed a "reserve" amount equivalent to 6% of each settlement entered into, or judgment recovered, by any non-governmental claimant in the MDL.  PSC Memo in Support, p. 29.  In effect, the PSC's request would amount to a 6% surcharge on all settlements and judgments arising out of the "Macondo / *Deepwater Horizon* disaster"; and this surcharge would be paid by the Defendants ***in addition to*** the full payment of all settlements or judgments.  PSC Proposed Order, p. 2.

The PSC's Motion acknowledges that the typical "common benefit" account is funded by hold-back assessments against settlements and judgments- *i.e.*, where an MDL court authorizes a 6% hold-back assessment and a defendant settles with an MDL plaintiff, the settling defendant remits 94% of the settlement to the plaintiff and 6% of the settlement to the hold-back fund.  PSC Memo in Support, pp. 28-29.  Nonetheless, the PSC requests that the Court direct the Defendants to fund the account through a reserve and not a hold-back assessment.

As support for this requested reserve, the PSC states:

> This "hold back" frequently does not diminish the plaintiffs' recovery, or increase their attorneys' fees: it may, depending upon the circumstances, be assessed potentially or entirely against the defendants, or against the plaintiff attorney fee portion of any recovery.  In some instances, it has been paid by the defendants in addition to awards to plaintiffs – *e.g.*, under statutory attorney fee provisions, or as a separately negotiated settlement term.  This is the PSC's goal and preference here.

PSC Memo in Support, p. 29.  The PSC fails to cite to any case law or provision of the Manual for Complex Litigation which supports the PSC's blanket statement that other courts have authorized hold back funds to be "paid by the defendants in addition to awards to plaintiffs." The PSC further claims:

> Clearly, each litigation presents circumstances that may call for variations; this litigation includes the prospect of statutory fee awards under *e.g.*, the Clean Water Act and OPA, making appropriate a hold back equivalent to, rather than deducted from, a specified percentage.

PSC Memo in Support, pp. 34-35.  As discussed below, the PSC's cursory reference to potential statutory fee awards is misleading and unsupported in law or by the current MDL practice.

Additionally, the PSC's proposed Order does not limit the obligation of funding this requested reserve to the settling defendant(s) and/or the defendant(s) cast in judgment. The proposed Order states:

> **It is Further Ordered** that Defendants, or any agent or representative acting on a Defendant's behalf, shall deposit an amount equivalent to six percent (6%) of the gross settlements, judgments or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to any other plaintiff, putative classmember or other claimant, arising out of the Macondo / *Deepwater Horizon* disaster, (with the exception of settlements, judgments or other payments to the United States), into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and/or expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.

PSC Proposed Order, pp. 1-2.  As set forth below, to the extent that any "hold back" fund is established, it is respectfully submitted that only the settling defendant(s) and/or defendant(s) cast in judgment should be obligated to fund the hold back account.  Moreover, the PSC's proposed Order places the onus on the defendant(s) to fund this reserve and does not require the claimant(s) to fund the account to the extent that a hold back assessment is not made by the proper defendant(s).  Weatherford respectfully suggests that where no hold back assessment is made, the obligation to fund the "hold back" account should belong to the claimant receiving the settlement and not the Defendants as a whole.

II.   **LAW AND ARGUMENT**

While MDL procedure and practice allow for the establishment of a true "hold back" fund, there is no legal basis or support for the PSC's request for a reserve fund.  The PSC's

{N2384034.1}

3

request is a thinly veiled attempt to recover attorneys' fees from the Defendants in the form of a reserve fund, and it should be denied.

### A. The Common Benefit Fund and MDL Procedure for Common Benefits Funds through Hold Back Accounts

The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989) (internal quotation omitted). Courts presiding over MDLs have regularly established common benefit funds, and required them to be funded through hold back assessments from individual settlements and judgments in the particular MDL but not as an additional payment on top of the settlement or judgment to a fund by a defendant who is funding a settlement or paying a judgment. For example, in *In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1008 (5th Cir. 1977) ("*Everglades*"), the Fifth Circuit upheld the district court's authority to make an assessment on the contingent fees of attorneys who represented MDL plaintiffs but who were not on the district court-appointed Plaintiffs' Committee. As noted by the Fifth Circuit in *Everglades*, an MDL court "may designate one attorney or set of attorneys to handle pre-trial activity on aspects of the case where the interests of all co-parties coincide." *Id.* at 1014. The Fifth Circuit found that this authority would be "illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation." *Id.* at 1016. Accordingly, assessment of those fees against other retained lawyers for claimants who benefited from the work done was permissible and appropriate. *See id.* at 1019-20.

Recently, in *In re Vioxx Products Liability Litigation,* 760 F. Supp. 2d 640 (E.D. La. 2010) ("*Vioxx*"), Judge Fallon approved a common benefit fund in the form of a true "hold-back" fund. *Id.* at 643 ("[T]he Court . . . established a Plaintiffs'' Litigation Expense Fund to

compensate and reimburse attorneys for services performed and expenses incurred for the common benefit. Pursuant to [the Court's] Order, any case that was settled, compromised, dismissed, or otherwise reduced to judgment for monetary relief, with or without trial, was subject to an assessment."); *see also In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation*, No. 3:09-md-02100, 2010 U.S. Dist. LEXIS 22361, at *10 (S.D. Ill. Mar. 8, 2010) ("The assessment represents a hold back."); *In re: Phenylpropanolamine (PPA) Products Liability Litigation*, MDL No. 1407, 2009 U.S. Dist. LEXIS 126729, at *2-*3 (W.D. Wash. Sept. 18, 2009) (requiring "portions of settlement and judgment proceeds received by plaintiffs in [an] MDL . . . and coordinated state cases be deposited into an MDL . . . Fee and Cost Trust Account, to provide the funds from which common benefit claimant-attorneys would be reimbursed and compensated."); *In re Zyprexa Products Liability Litigation*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) ("In a consolidated national mass litigation such as the present one, it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds."); *In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, 669 (E.D. Pa. 2003) ("Defendants shall be responsible for deducting a percentage to be designated by the Court of the total payment by defendants to tag-along plaintiffs, or the present value of any future payments, into the MDL . . . Fee and Cost Account.").

In this case, the PSC seeks to turn the common benefit fund on its head by requesting that the Defendants pay into the fund a "reserve" equal to a specified percentage of each settlement or judgment. The PSC does not request the establishment of a typical "hold-back" fund to be funded by an assessment against each settlement or judgment; rather, the PSC wants the Defendants to pay a 6% surcharge on each settlement or judgment. The PSC has failed to

provide the Court with any authority for the establishment of a reserve fund as opposed to a true "hold-back" fund. In Weatherford's independent research, no such case law or authority was found; rather, every MDL which has established a common benefit fund did so by assessing a hold-back against any individual settlements or judgments. Moreover, in the three representative MDL Orders attached to the PSC's Memorandum in support of its Motion, the hold-back assessments were to be made out of any actual settlements with claimants and were not in the form of a reserve as suggested here by the PSC. *See* PSC Memo in Support, Exhibits 1-3.

The basic tenet of the common benefit fund is that tag-along plaintiffs must compensate the attorneys on the PSC for the work performed by the PSC attorneys that benefits all claimants. *See Everglades*, 549 F.2d at 1008. As a result, these tag-along plaintiffs are the parties which must fund the common benefit fund and not the Defendants in the MDL; otherwise, there is unjust enrichment on the part of the tag-along plaintiffs. It is illogical to propose, as the PSC does here, that the Defendants contribute a reserve to the common benefit fund when the Defendants receive absolutely no benefit from the PSC. Doing so would require the Defendants to fund the prosecution of claims against them, and it would turn the common benefit fund doctrine on its head. Accordingly, the PSC's request for a reserve fund is improper.

Further, not only has no other MDL court established a reserve account for a common benefit fund, but the PSC's reference to potential statutory fee awards as a basis for a reserve account ignores the significant difference between statutory fee-awards and common benefit funds. In *Skelton v. General Motors Corp.*, 860 F.2d 250, 251 (7th Cir. 1989), the Seventh Circuit expressly distinguished between the recovery of statutory fees and the recovery of common benefit fees:

{N2384034.1}

6

> Thus, a plaintiff that prevails in an action brought under a statute with a fee-shifting provision recovers the amount of its attorney's fee from the defendant. In contrast, when a case results in the creation of a common fund for the benefit of a plaintiff class, a court will exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund.

*Id.*

The Seventh Circuit in *Skelton* noted that "there is a difference between statutory fee-shifting cases and common fund cases . . . [as] to who bears the direct burden of compensating plaintiffs' attorneys." *Id.* Indeed, the Manual for Complex Litigation expressly distinguishes between "Common-fund cases" and "Statutory-fee cases." Manual for Complex Litigation 4th (2004), § 14.11, p. 185. In the former, a "separate fund to pay attorney fees is created," whereas, in the latter, the award of attorneys' fees is through a court-awarded judgment on a statutory claim for attorneys' fees. *Id.* The rationale underlying statutory fee-awards is a congressional intent to punish the nonprevailaing party and to encourage private parties to enforce substantive statutory rights. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

Moreover, as noted in the Manual for Complex Litigation, statutory fees are awarded only to a prevailing party; and "[a] litigant's status as the beneficiary of an out-of-court settlement, or as the beneficiary of any adversary's voluntary action mooting a case, does not by itself entitle that litigant to an award of attorney fees as a prevailing party." Manual for Complex Litigation 4th (2004), Attorney's Fees, § 14.13, pp. 196-97 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 605 (2001). Since a settling claimant is not entitled to attorneys' fees as a prevailing party under a fee-shifting statute, it follows that a reserve for a potential statutory fee award should not be assessed against settlements.

### B. The PSC Has No Claim for Statutory Fees

As this Court recognized in its B1 Order, "[p]ursuant to the 'American Rule' in the United States, the prevailing litigant is ordinarily not entitled to collect attorneys' fees from the losing party." B1 Order, pp. 35-36 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975)). "Generally, litigants must pay their own attorneys' fees absent statute or enforceable contract." *Id.* at p. 36. As noted above, the common benefit fund is also an exception to the American Rule. *See Vioxx*, 760 F. Supp. 2d at 647.

In this case, the PSC requests a judicial extension of the "common benefit fund" exception, arguing that "this litigation includes the prospect of statutory fee awards under *e.g.*, the Clean Water Act and OPA, making appropriate a hold back equivalent to, rather than deducted from, a specified percentage." PSC Memo in Support, pp. 34-35. However, the Oil Pollution Act does not provide for the recovery of attorneys' fees by private parties. *Unocal Corp. v. United States*, 222 F.3d 528, 543 (9th Cir. 2000) ("The OPA specifically permits fee awards for the government, not for private parties."). Moreover, in the various Master Complaints filed by the PSC, the plaintiffs have not alleged a claim for attorneys' fees under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq. See generally*, First Amended Bundle B1 Master Complaint, Rec. Doc. 1128; First Amended Bundle B3 Master Complaint, Rec. Doc. 1812; Bundle C Master Complaint, Rec. Doc. 1510. Similarly, the plaintiffs have not alleged a citizens suit claim under the Clean Water Act ("CWA"), *see* 33 U.S.C. § 1365, or a claim for attorneys' fees under the CWA. *See generally*, First Amended Bundle B1 Master Complaint, Rec. Doc. 1128; First Amended Bundle B3 Master Complaint, Rec. Doc. 1812; Bundle C Master Complaint, Rec. Doc. 1510. More importantly, since the United States government has instituted an action for civil penalties under the CWA (see Cause No. 2:10-cv-4536), the plaintiffs herein

are precluded from prosecuting a citizens suit under the statute. *See* 33 U.S.C. §§ 1365(b)(1)(B), 1319(g)(6)(B); *see also* May, James R., *Citizen Suits and Defenses Against Them*, SS028 ALI-ABA 461 (2011) ("Citizen suits are barred under the act if diligent state or federal enforcement is underway.").

Finally, even if a statutory fee award were available to the PSC under either OPA or the CWA, Weatherford is not a potentially liable party under either statute. *See* 33 U.S.C. § 2701, *et seq.*; 33 U.S.C. § 1321.  By its clear language, a claimant is entitled to recover damages under OPA only against a "responsible party," which, in the case of a vessel, means "any person owning, operating, or demise chartering the vessel," and in the case of an offshore facility, "the lessee or permittee of the area in which the facility is located."  33 U.S.C. §§ 2702, 2701(32).  At most, Weatherford faces potential exposure from only OPA or CWA contribution claims by co-defendants. With respect to the CWA, a citizens suit for civil penalties may be brought only against the owner or operator of a vessel or an offshore facility from which the oil is discharged.  *See* 33 U.S.C. § 1321(b)(7).  Accordingly, since Weatherford was not alleged to be either the owner nor the operator of the *Deepwater Horizon* or the Macondo well, it is improper to require third parties such as Weatherford to fund a reserve on the basis of potential statutory fee awards when no such awards are available against a party like Weatherford.

### C. The PSC's Request Does Not Limit the Obligation to Fund the Common Benefit Account

In its current form, the PSC's proposed Order reads as follows:

**It is Further Ordered** that Defendants, or any agent or representative acting on a Defendant's behalf,  shall deposit an amount equivalent to six percent (6%) of the gross settlements, judgments or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to any other plaintiff, putative classmember or other claimant, arising out of the Macondo / *Deepwater Horizon* disaster, (with the exception of settlements, judgments or other payments to the United States), into a court-supervised escrow account, in order to establish a fund

>from which common benefit litigation fees and/or expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.

PSC Proposed Order, pp. 1-2.  The above language in the proposed Order does not specifically limit the obligation to fund the reserve to the settling Defendant or the Defendant against whom Judgment is cast.  To the extent that any assessment is approved by the Court, whether in the form of a "hold-back" or a "reserve," Weatherford respectfully submits that the assessment should be made only by the settling defendant or the defendant against whom judgment is cast; and the non-settling or non-liable defendants should have no obligation to fund the assessment. *See Skelton*, 860 F.2d at 251 (explaining that the plaintiffs in an MDL are the parties responsible for funding a common benefit fund).

### III.  CONCLUSION

The PSC's request for a reserve fund amounts to a request that the Defendants be taxed a 6% surcharge on all settlements and judgments arising out of the Macondo blowout.  Such a request is not supported by either the case law or the Manual on Complex Litigation.  Moreover, while the PSC bases its request for a reserve fund on the potential recovery of statutory fees, the PSC has not asserted any claim for statutory fees and is not entitled to recover such fees, particularly against a party like Weatherford that neither owned nor operated the *Deepwater Horizon* or the Macondo well.  Accordingly, Weatherford submits that the PSC's request for a reserve fund should be denied.  Additionally, in its current form, the PSC's request does not limit the obligation to fund a common benefit fund to the settling defendant or the defendant against whom judgment is cast; and Weatherford respectfully requests that such a limitation on the assessment obligation be imposed as a condition of the fund.

This 21st day of November, 2011.

        Respectfully submitted:

        */s/ Glenn G. Goodier*
        GLENN G. GOODIER (#06130)
        RICHARD D. BERTRAM (#17881)
        LANCE M. SANNINO (#29409)
        JONES, WALKER, WAECHTER, POITEVENT,
         CARRÈRE & DENÈGRE, L.L.P.
        201 St. Charles Avenue. 48th Floor
        New Orleans, Louisiana 70170-5100
        Telephone:   (504) 582-8174
        Facsimile:   (504) 589-8174
        ggoodier@joneswalker.com
        rbertram@joneswalker.com
        lsannino@joneswalker.com

        MICHAEL G. LEMOINE, T.A. (#8308)
        GARY J. RUSSO (#10828)
        DOUGLAS C. LONGMAN, JR. (#8719)
        JONES, WALKER, WAECHTER, POITEVENT,
         CARRÈRE & DENÈGRE, L.L.P.
        600 Jefferson Street, Suite 1600
        Lafayette, Louisiana 70501-5100
        Telephone:   (337) 593-7624
        mlemoine@joneswalker.com
        grusso@joneswalker.com
        dlongman@joneswalker.com

        *Counsel for Weatherford U.S., L.P. and*
        *Weatherford International, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 21st day of November, 2011, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

        */s/ Glenn G. Goodier*