IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 10, 2010 | : : : | MDL 2179<br><br>SECTION J |
| THIS DOCUMENT RELATES TO:<br>All Cases and 4:11-CV-01796 | : : : : | JUDGE BARBIER<br><br>MAG. JUDGE SHUSHAN |

## PLAINTIFF KEVIN SENEGAL'S RESPONSE AND OPPOSITION TO MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

Pending before the Court in the above-captioned proceeding is, inter alia, a motion ("Motion") by (i) Plaintiffs' Co-Liaison Counsel, and (ii) members of the Plaintiffs' Steering Committee (collectively, the "PSC") for an "an order establishing a court-supervised escrow and reserve…." Motion, at 1.[1] (Rec. Doc. 4507). More specifically, the Motion seeks an Order requiring the defendants to reserve and deposit into a precautionary common benefit fund 6% of "ongoing settlements, judgments or other payments…." Id. Kevin Senegal ("Senegal"), the plaintiff in removed Case No. 4:11-CV-01796 (removed from the 129th Judicial District Court, Harris County, Texas where it was referred to as Cause Number 2011-23923), opposes the Motion as currently filed and submits for the Court's consideration the following response in opposition thereto.

### I.INTRODUCTION

(i)     Senegal was severely injured in the explosion and aftermath aboard the Deepwater Horizon. He filed a personal injury action against five defendants: BP, PLC, BP

---

[1]       Filed with the Motion is the PSC Annual Status Report and Memorandum in Support of Motion to Establish Account and Reserve for Common Benefit Litigation Expenses ("Mem."). (Rec. Dcc. 4507-2).

America, Inc., BP Exploration & Production, Inc., BP Products North America, Inc., and Halliburton Energy Services, Inc. None of these defendants were "Transocean" entities and the state court of Harris County, Texas was the appropriate forum in which to file Senegal's claims. The defendants removed the action to the United States District Court for the Southern District of Texas on May 11, 2011 and Senegal promptly moved to remand the case to state court. The BP defendants filed an opposed Motion for Stay of Proceedings pending transfer by the JPMDL, to which Senegal filed response on June 7, 2011. Judge Kenneth Hoyt denied the Motion for Stay of Proceedings on June 8, 2011.[2] Judge Hoyt denied Plaintiff's Motion to Remand on July 7, 2011. Senegal has sought from the beginning (i) not to be included in MDL 2179, and (ii) to have his action remanded to the Texas state court from which it was wrongly removed. Nonetheless, Senegal's claim remains as part of this MDL.

(ii) From the inception of MDL 2179, the Court anticipated that attorneys would perform "common benefit" work. See, e.g., Pretrial Order No. 1, filed August 10, 2010. (Rec. Doc. 2). The Court appointed the members of the PSC, and established standards and procedures to be used by counsel seeking payment of fees and expenses, on October 8, 2010. See Pretrial Order Nos. 8, 9. (Rec. Doc. 506, 508). For reasons unknown to Senegal, however, the PSC did not file the Motion until November 7, 2011, i.e., a full year later. In the interim, three things have happened. First, the PSC, and other attorneys acting at its request, have invested over 230,000 hours and incurred over $11.5 million dollars in out-of-pocket expenses "for the common benefit of claimants, litigants, and putative classmembers affected by" the Deepwater Horizon explosion. Motion, at 1. Second, a substantial number of the claims and lawsuits arising from the

---

[2]      Senegal's action was originally filed as Senegal v. BP, plc, et al., No. 2011-23923, in the 129th Judicial District Court of Harris County, Texas. Upon removal to the Southern District of Texas, the case was assigned No. 4:11-CV-01796. In a Transfer Order filed herein on August 9, 2011, the Judicial Panel on Multidistrict Litigation (i) denied Senegal's motion to vacate the conditional transfer previously directed, and (ii) ordered the case transferred for inclusion in MDL 2179. In this Court, the case is assigned number 11-01796.

explosion have settled or been paid. For example, according to the website of the Gulf Coast Claims facility ("GCCF"), $5,673,848,207.31 has been paid as of November 16, 2011. Claims for "personal injury/death" have been paid in an aggregate amount of $155,031,207.31.[3]  Third, Senegal resolved his claims on November 7, 2011.

(iii)    The Motion notes that the PSC's request for a reserve is precautionary, and that its ultimate goal is to recoup the costs of prosecuting this litigation directly from the defendants. See Motion, at 2. Perhaps for that reason, it neither (i) quantifies the value of common benefit time incurred to date, nor (ii) offers any estimate of the amount or value of common benefit time and expenses expected to be incurred in the future.[4] Thus, the PSC asks the Court to establish a 6% holdback on future settlements and payments in an informational vacuum. Indeed, the basis for selecting 6% as the holdback amount--as opposed to some other percentage--is simply that 6% is in line with the holdbacks established in other MDL cases. Id., at 3. But the PSC also proposes to have the Court order that (i) only 4% of payments to the States of Alabama and Louisiana be reserved, and (ii) no holdback be imposed on payments to the United States. Id., at 2 n.1. In addition, it seeks no holdback provision with respect to the $5.6 billion paid by the GCCF to date, while imposing a 6% reserve on payments made after a de facto magic date to claimants and plaintiffs advancing similar, if not wholly identical, claims. With all respect to the PSC and its efforts, its proposal for a reserve fund should be rejected as presented.

II.ARGUMENT

---

[3]

[4]        See www.http://gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf, at 1, 6.

The Motion states that, "[s]ince the inception of this litigation, over 300 lawyers from more than ninety different law firms have invested over 230,000 hours . . . for the common benefit of claimants, plaintiffs, and putative classmembers." Motion, at 1. Under the procedures required by the Court, the value of that time should be readily ascertainable by the PSC, just as (for example) the total amounts paid out by the GCCF is ascertainable. While the common benefit cost-to-date is not necessarily indicative of what the future may hold, it would be useful to know where things now stand in order to assess whether a holdback of 6%--as opposed to a lesser amount--is justified. And this would be all the more so if the court were to require retroactive holdbacks on GCCF payments.

The Motion is filed by the PSC "on behalf of attorneys contributing common benefit time and expenses…." Motion, at 1. Senegal does not oppose appropriate common benefit payments. Nor does he oppose appropriate hold-backs to establish a fund for such payments. For at least three reasons, however, the reserve proposal urged by the PSC is inappropriate, both in general, and as it would apply to Senegal. First, the proposal is underinclusive--and unfair--because it would not be applied to the billions of dollars already paid out of the GCCF. In other words, payments made for resolutions prior to the Motion would not incur a holdback, placing the entire burden of any common benefit payments on remaining claimants, plaintiffs and class members such as Kevin Senegal, whose case was settled **on November 7, 2011..**[5]   Second, the proposal is overinclusive--and further unfair--because it implicitly assumes that the work undertaken by the PSC confers a uniform common benefit on all claimants, plaintiffs, and class members. Because that is not so, a uniform holdback unfairly treats those who, like Senegal, have not sought nor received any benefit from the PSC's common benefit work and is only by "timing" subjected to the PSC's claim for a holdback.   Senegal accepted an offer made through an authorized representative of the GCCF to resolve his claim without prior notice that the PCS would seek a holdback.   Ironically, had Senegal accepted the day prior, this motion would not apply. Third, the PSC does not explain how the Court has power to impose a holdback on any payment that Senegal might receive, where no such holdbacks were imposed heretofore. Accordingly, as explained below, the Court should deny the Motion (without prejudice) either in toto, or as applied to Senegal.

---

[5]      The Motion states that "[t]he PSC members earlier agreed to a voluntary reserve from the attorney fee portion of their clients' settlements, and will likewise place those funds into the court-supervised account." Motion, at 3 (emphasis added). That "voluntary agreement" would be superseded by an Order granting the Motion. Id., at 3 n.3. The result would be that the PSC's members' clients would be treated differently, depending on when their cases were resolved. Clients lucky enough to have their claims resolved prior to November 7, 2011 would not be subject to a holdback on their portion of the payment received, while those whose claims are resolved after that date would have a holdback imposed on their portion of the payment received. Notably, the Motion does not quantify the amounts that would be "left on the table," as it were, under the PSC's proposal.

A.      The PSC's Proposal is Unfair as Underinclusive.

As the form Order submitted with the Motion makes clear, the PSC proposes to establish a "magic date" for holdbacks to begin on November 7, 2011. In other words, (i) any payments made on or after that date (except to the United States) would be subject to a holdback, but (ii) payments made before that date are exempt from contributing to the common benefit reserve fund. The PSC cannot be unaware of the colossal impact that including payments made before November 7, 2011 would have on the holdback percentage. Indeed, while the Motion does not disclose the total amounts of common benefit attorneys' fees claimed to date, it strains credulity to think that all such fees (and common benefit expenses as well) would not be dwarfed by an assessment of substantially less than 6% on the $5.6 billion already paid by the GCCF. The PSC cautiously intimates that "a common benefit award may be owed with respect to settlements or other payments previously made through the GCCF or otherwise…" Mem., at 37. But that, it says, "is an issue left for another day." Id. Thus, having created a quandary by waiting a full year to file the Motion--and offering neither an explanation for that treatment, nor a proposed solution to the problem--the PSC would have the Court simply look past an important question.

Senegal recognizes that the Motion does not seek awards of common benefit funds, and instead requests only that the Court create a mechanism for funding a reserve that may, or may not, need to be tapped in the future. Nonetheless, it is fundamentally unfair to (i) have the reserve funded solely by claimants and plaintiffs receiving payments after the arbitrarily-selected date of November 7, 2011, while (ii) leaving the contributors completely in the dark as to whether their un-assessed counterparts will ever be required to contribute either to the fund, or to any common benefit awards that may be made. Indeed, the unfairness and uncertainty unleashed by the PSC's proposal will make settlements more difficult on a go-forward basis because

claimants and plaintiffs will be forced to attempt to negotiate higher payments in anticipation of having to fund the entirety of any common benefit awards. Accordingly, while the Court may well need to set a protocol for funding a common benefit reserve, it should not do so without addressing the issues left open by the Motion. Hence, before the Court acts on the Motion, the PSC should be required to explain (i) the reason for its year-long delay, (ii) how it proposes to deal with common benefit assessments on payments made prior to November 7, 2011, and (iii) whether some or all such payments can even be subject to assessments at all. Anything less is wholly unfair.[6]

In addition, the PSC should be required to provide more and better information on at least two other matters. First, the Motion requests reduced holdbacks of 4% for payments made to the States of Alabama and Louisiana. The only explanation for that treatment is that the request is made "in light of the ongoing and substantial coordination and contributions" between the PSC and these States. See Mem., at 3 n.3; Motion, at 2 n.1. This explanation is inadequate to justify a reduced holdback. Indeed, it is so vague that it is essentially meaningless. The Court should not endorse such massively differential treatment without full transparency. Second, the Motion requests no holdbacks for payments made to the United States. The PSC offers no explanation for that treatment. Again, the Court should not endorse starkly differential treatment without an explanation of why it is requested and appropriate. The point, of course, is that the PSC proposes to treat certain classes of claimants and plaintiffs differently, but with either no, or insufficient, explanation. The Court should require full and complete explanations on each of

---

[6]         Again, the Motion does not seek a common benefit award. It is manifestly illogical, however, to have a common benefit reserve funded by less than the universe of those who could be required to share in the burden of paying common benefit awards. Concomitantly, it is important to define up front the universe of those who could not be required to contribute to common fund awards under any circumstances.

these issues.[7]

    B.    <u>The PSC's Proposal is Unfair as Overinclusive</u>.

The PSC acknowledges that appropriate common benefit awards may vary "in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances." Motion, at 3. <u>See</u> <u>also</u> Mem., at 3. Senegal agrees--as a plaintiff with personal injury claims, he has not been, and will not be, afforded the same common benefit from the PSC's common benefit work as claimants and plaintiffs with economic and/or environmental injury claims; moreover, Senegal has accepted the offer of settlement. Indeed, the PSC's description of its various activities makes abundantly clear that its efforts are directed primarily at such claims, and only incidentally at other types of claims. This treatment is understandable and not inappropriate, but it demonstrates that the PSC's efforts will not, and cannot, produce a uniform common benefit for all claimants and plaintiffs. And because the common benefit will not be uniform, the holdback proposed by the PSC should not be uniform. To the contrary, for personal injury plaintiffs like Senegal, who settled his claim on November 7, 2011, and who has received no benefit from any work performed by the PSC, the holdback should not be assessed. Three examples of the PSC's common benefit work to date suffice to illustrate this point.

    (i)    <u>Pleading Bundles</u>. In Pretrial Order No. 11, the Court divided the MDL into four categories (and subcategories) of cases, and ordered "pleading bundles" under which claims for

---

[7]    7    The Motion states that the PSC members earlier agreed to voluntary holdbacks from the attorneys' fee portions of awards to their clients, but it offers neither the specifics of that agreement, nor the amounts actually held back pursuant thereto. <u>See</u> Motion, at 2; Mem., at 3. Nor does the PSC explain why its members confected a voluntary holdback agreement instead of filing the Motion earlier. The Court should require an explanation in all three regards so that the voluntary holdbacks can be compared to the holdbacks requested in the Motion. Otherwise, the full measure of the disparate treatments proposed by the Motion, and the reasons therefor, will be unknown.

personal injury and death must be pled <u>individually</u>. Senegal's state-court pleadings have not been amended in the MDL and, while the PSC opposed motions to dismiss Bundle "A" claims, it has spent no time drafting Bundle "A" pleadings. Conversely, it established research and writing work groups to file and defend the other bundled pleadings ordered by the Court, all of which has been done. <u>See</u> Mem., at 7, 13-14. None of the latter work benefitted Senegal, or any other plaintiff with personal injury or death claims. The Motion takes none of this into account.

(ii)     <u>Limitation Trial</u>. The PSC has devoted considerable effort to preparing for the Limitation Trial scheduled to commence on February 27, 2012. <u>See</u>, <u>e.g.</u>, <u>id.</u>, at 8 (work groups for trial), 13 (depositions for trial), 14-15 (participation in establishing trial structure). At most, only Phase I of the Limitation Trial could even conceivably provide a benefit to Senegal.[8] Even then, however, the possible benefit is attenuated because Senegal has sued <u>no</u> Transocean entities and has been working toward settlement of his claims with the GCCF since April 29, 2011. Thus, while it is clear that Phases II and III can provide no common benefit to Senegal, it is not clear that even Phase I stands to provide any common benefit for him. Again, the Motion takes none of this into account, and simply assumes a uniform common benefit from the PSC's work.

(iii)    <u>Science and Experts</u>. The PSC has established six Science, Environmental and Damages Work Groups. <u>See</u> Mem., at 8. Five of those groups relate (by title) only to economic, environmental, ecological, or other property damage. None of the work done by those groups can produce a benefit to Senegal, whose claims are only for personal injury and were settled on November 7, 2011. Likewise, the experts that have been retained or consulted in these areas

---

[8]       Phase I will cover "loss of well control, the fire, explosion and sinking of the Deepwater Horizon, culminating in the release of oil from the Macondo well." Mem., at 15. Phase II will address "source control and the quantification of the oil discharged," while Phase III will address claims arising from the clean-up efforts. <u>Id</u>. Phase I may, or may not, yield a benefit to the remaining plaintiffs with for personal injury or death, <u>the vast majority of which settled prior to November 7, 2011</u>. Phases II and III can produce no possible benefit for such claims.

cannot produce a benefit to Senegal. Id., at 15. Nor does Senegal stand to benefit from the PSC's efforts to ensure compliance with the Oil Pollution Act. Id., at 16-17. Finally, and again understandably, the PSC "has focused on the oil spill's environmental and ecological impacts and the damages flowing from those impacts." Id., at 17. Its efforts in these regards are laudable, but also incapable of producing any benefit to Senegal and other claimants and plaintiffs with claims only for personal injury or death. Id., at 17-19.

***

In short, the PSC has focused its efforts largely on matters that cannot and will not yield a benefit to personal injury and death plaintiffs such as Senegal. Indeed, the PSC incorrectly posits that the answers to its litany of environmental and ecological questions "are critical to calculating the damages of any of the plaintiffs in the MDL…." Id., at 19 (emphasis added). This statement is true (if at all) only with respect to plaintiffs with claims for property, environmental, or ecological damages. Senegal is not such a plaintiff, and can receive no benefit from the PSC's efforts in these regards, no matter how laudable they may be.[9] Moreover, at least some of the BP defendants that Senegal has sued have (i) publicly acknowledged fault and responsibility for the explosion, and (ii) funded the GCCF with $20 billion. Thus, liability issues germane to Senegal will not (or should not) be complicated. Any holdback request upon Senegal's settlement should reflect these realities. To that end, the PSC should be required to segregate and state the efforts allocable to personal injury and death plaintiffs, such as Senegal.

    C.    <u>The Court Lacks Power to Impose a Holdback on Any Payments to Senegal</u>.

The discussion set forth above demonstrates that there should be no holdback assessed against Senegal.  However, if the Court deems a holdback should be imposed upon Senegal's settlement achieved November 7, 2011, then this should be considerably less than that discussed

---

[9]    The section on "Science" does not even include the cause of the explosion. See Mem., at 17-19.

by the PSC. There remains, however, the question of whether the Court can impose a holdback on Senegal at all, when he (i) has challenged subject matter jurisdiction over this removed case, and (ii) is before the Court only involuntarily. Although the PSC sets forth an extensive general discussion of the common benefit doctrine, see Mem., at 21-35, these and the issues of Plaintiffs who have settled their claims prior to or virtually concurrently with the dates suggested in the PSC's motion are not addressed.

In In re Genetically Modified Rice Litig., 2010 U.S. Dist. LEXIS 19168 (E.D. Mo. February 24, 2010), the equivalent of the PSC herein moved to create a common benefit reserve fund. As part of that request, it asked the court to include state-court cases in the holdback order, "so that defendants would be required to hold back and contribute a portion of any settlements or judgments from those cases as well as from the MDL cases." 2010 U.S. Dist. LEXIS 19168, at * 129. Declining to order holdbacks in state-court cases--including improperly removed cases it had remanded to state court--the court held that it "[did] not have jurisdiction to order hold-backs for...state court cases." Id., at * 121. Expanding on that holding, the court followed In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II, 953 F. 2d 262 (4th Cir. 1992), which "found that the trial court [in that case] did not have jurisdiction to order...contributions from parties who were not before it." Id., at * 130, citing Showa Denko, supra, at 166-67. It further observed that "[m]ost courts considering this issue have reached the same conclusion." Id.[10]

The result is that, if the Court had previously remanded Senegal's case to the state court from which it was improperly removed, then it would lack jurisdiction to impose a mandatory holdback on any payment that he might receive in settlement or after trial. Any such holdback would instead be a matter either for the state court to address, or for negotiation between the

---

[10]         The court subsequently reaffirmed its holding that it had no jurisdiction to order a holdback with respect to state-court litigation, even as a litigant that was a party in a separate proceeding in the MDL. See In re Genetically Modified Rice Litig., 2011 U.S. Dist. LEXIS 17211, at * 176-179 (E.D. Mo. February 11, 2011) .

PSC and Senegal's counsel.

Finally, it bears repeating that Senegal is before the Court only involuntarily, having been swept into this MDL against his will through (i) an improper removal of his state-court case, and (ii) the seemingly inexorable process by which his case--and his motion to remand--found their way to this Court. But again, there is no diversity of citizenship, Senegal's pleadings raise no conceivable federal question, and no Transocean entity is a defendant in the action.

In short, this was a state-court case that should have been remanded to the state court from which it was improperly removed by defendants. The plaintiff, Kevin Senegal, sought from the beginning to avoid inclusion in the MDL. The PSC has performed no services which benefit Kevin Senegal. Kevin Senegal settled his claims with the GCCF on November 7, 2011.

Unless and until the Court holds otherwise, the Motion should be denied with respect to Senegal.

## III. CONCLUSION

For the reasons set forth above, the Motion should be denied in toto, Alternatively, if the Court grants the Motion of the PSC, as it applies to Kevin Senegal, the holdback should be of the most nominal amount,  and certainly less than 6%.

Dated: November 21, 2011

Respectfully submitted,

STEVENSON & MURRAY

By: /s/ John W.  Stevenson, Jr.
Texas State Bar No.  19196050
Mark T.  Murray
Texas State Bar No.  14724810
24 East Greenway Plaza, Ste.  750
Houston, Texas 77046
Telephone: (713) 622-3223
Facsimile: (713 622-3224
Email: jstevenson@johnstevensonlaw.com

ATTORNEYS FOR PLAINTIFF

11

**CERTIFICATE OF SERVICE**

We hereby certify that the above and foregoing Plaintiff, Kevin Senegal's Response and Opposition to Motion to Establish Account and Reserve for Litigation Expenses has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 21st day of November 2011.

/s/ John W. Stevenson, Jr.
_____
John W. Stevenson, Jr.