# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE" OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, on April 20, 2010 | § | SECTION J |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE BARBIER |
| | § | |
| 2:11-cv-02526 | § | MAG. JUDGE SHUSHAN |

## PLAINTIFF'S AND INTERVENOR'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND

## I.
## NATURE AND STAGE OF THE PROCEEDINGS

Stephen Curtis and Wyman Wheeler were Jones Act seamen assigned to the *Deepwater Horizon*.[1]  Curtis was an assistant driller, and Wheeler was a toolpusher.  Curtis died as a result of the explosion and fire aboard this vessel on April 20, 2010.[2]  Wheeler also sustained severe injuries as a result of the same casualty.[3]

Curtis is survived by his son, Treavor, who was 14 years old at the time of his father's death.[4]  Treavor's mother, Nyoka Curtis, and Stephen's widow, Nancy, filed suit solely on Treavor's behalf in state court,[5] and Wheeler intervened.[6]  Both Curtis and Wheeler asserted claims under the Jones Act and general maritime law against BP Exploration & Production Inc., BP America Inc., and BP

---

[1]   Curtis's First Amended Original Petition and Request for Disclosure is attached as Exhibit 1, pp. 3-4, and Wheeler's Original Petition in Intervention is attached as Exhibit 2, pp. 3-4.  All Exhibits attached hereto are incorporated herein by reference as if fully set forth.

[2]   Exhibit 1, p. 3.

[3]   Exhibit 2, p. 3.

[4]   Exhibit 1, p. 6.

[5]   *Id*. at 1 and 3.

[6]   Exhibit 2, p. 1 and 3.

Products North America Inc. (collectively "BP") and Halliburton Energy Services, Inc. ("Halliburton").[7]  Neither Curtis nor Wheeler asserted claims under the Outer Continental Shelf Lands Act ("OCSLA").[8]

Nevertheless, BP argues that OCSLA governs Curtis's and Wheeler's claims and provides a basis for removal.[9]  In this connection, BP argues that "this Court has subject matter jurisdiction under 43 U.S.C. §1349(b)(1)(A)" and "also has subject matter jurisdiction under 28 U.S.C. §1331, . . . ."[10]  Halliburton consented to removal.[11]

Curtis and Wheeler timely re-file their Motion to Remand for consideration by this Court. [MDL Doc. #17.]

## II.
## QUESTION PRESENTED

Has BP discharged its burden in establishing removal jurisdiction?

## III.
## SUMMARY OF ARGUMENT

BP confuses removal jurisdiction with original jurisdiction.  (Indeed the phrase "removal jurisdiction" is conspicuously absent from BP's Notice of Removal.)  Under OCSLA, District Courts have original jurisdiction over claims that arise from events that occur on the Outer Continental Shelf ("OCS") and involve the exploration, development, or production of minerals.[12]  Although

---

[7]   Exhibit 1, pp. 2-6, and Exhibit 2, pp. 1-6.

[8]   Exhibit 1, pp. 3-6, and Exhibit 2, pp. 3-6.

[9]   Civil Action No. 4:11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 2.

[10]   *Id.* at 3.

[11]   *Id.* at 4.

[12]   *Hufnagel v. Omega Servs. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999).

OCSLA may confer original jurisdiction over those claims (but not exclusive jurisdiction, as BP argues[13]), District Courts do not automatically have removal jurisdiction over them.[14]  As the Fifth Circuit has observed, "OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal law."[15]  And it is axiomatic that maritime claims do not "arise under" federal law for purposes of removal jurisdiction.[16]

A respected practitioner in this area has observed, "The jurisdictional provision [of OCSLA] is broad and independent of the sections of the OCSLA selecting the applicable law.  Nonetheless, the courts have struggled with the relationship between jurisdictional issues and choice of applicable law."[17]  In *Union Texas Petroleum Corp. v. PLT Engineering, Inc.* ("*PLT*"), the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA:  "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with Federal Law."[18]  Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e.*, an artificial structure permanently or temporarily attached to the

---

[13]   Civil Action No. 4:11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 2.  The Supreme Court has rejected this interpretation of OCSLA.  *Gulf Shore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) (43 U.S.C. §1333(a)(1) grants only exclusive political jurisdiction, not exclusive judicial jurisdiction).

[14]   *Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 318 (E.D. La. 2004).

[15]   *Hufnagel*, 182 F.3d at 350.

[16]   *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377-79 (1959) (discussing non-removability of saving-to-suitors claim on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not present federal questions).

[17]   Kenneth G. Engerrand, *Primer of Remedies on the Outer Continental Shelf*, 4 Loy. Mar. L. J. 19, 25 (Spring 2005).

[18]   *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

subsoil seabed, and the maritime law applies of its own force.

The test for deciding whether the maritime law governs a tort claim is whether the incident has both a "maritime situs and a connection to a traditional maritime activity."[19]  The maritime situs or location test is easily met here.  The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig floating on the waters of the Gulf of Mexico at the time of the explosion and was not attached to the seabed of the OCS with anchors or an anchoring system.[20]  The Fifth Circuit has long held that a semi-submersible drilling rig is a "vessel," as a matter of law.[21]  So too is the traditional maritime activity test easily satisfied.  "Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[22]  Moreover, in an en banc decision, the Fifth Circuit recognized that offshore drilling incidents give rise to maritime tort claims.[23]  As a result, the maritime law governs Curtis's and Wheeler's claims because, as a matter of law, OCSLA cannot replace the maritime law.[24]

This conclusion triggers the rule that admiralty and maritime claims are properly removed

---

[19]  *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

[20]  As a result, the OCSLA situs requirement is not met.  *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir. 2009) (en banc); *cert. denied*, 130 S.Ct. 3386, 177 L.Ed.2d 302 (2010) ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

[21]  *Solana v. GSF Development Driller I*, 587 F.3d 266, 267 (5th Cir. 2009) (reviewing salvors' action, *in rem*, against semi-submersible drilling rig); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n. 5 (5th Cir. 1986) (finding a semi-submersible drilling rig to be "indisputably a vessel").

[22]  *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir. 1986).

[23]  *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc).

[24]  *Hufnagel*, 182 F.3d at 350 ("Because OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply.").

only if no defendant is a citizen of the forum state.[25]  District Courts in this District[26] and the Eastern District of Louisiana[27] have applied this rule to maritime claims arising on the OCS.  The Fifth Circuit has suggested this application is correct.[28]  BP and Halliburton have their principal places of business in Houston and are, therefore, citizens of Texas.  Therefore, removal was improper, and remand is required.[29]

## IV.
## FACTUAL BACKGROUND AND EVIDENCE

Curtis and Wheeler were Jones Act seamen assigned to the *Deepwater Horizon*.[30]  Curtis was an assistant driller, and Wheeler was a toolpusher.  Curtis died as a result of the explosion and fire aboard this vessel on April 20, 2010.[31]  Wheeler also sustained severe injuries as a result of the same casualty.[32]

In the wake of this casualty, Transocean Offshore Deepwater Drilling, Inc. and its affiliated

---

[25]  *See In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991) (interpreting 28 U.S.C. §1441(b) ("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.")).

[26]  *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417-18 (S.D. Tex. 1993).

[27]  *See, e.g., Nase*, 347 F.Supp.2d at 319-20 (collecting cases).

[28]  *See, e.g., Morris v. T E Marine Corp.*, 344 F.3d 439, 443-44 (5th Cir. 2003).

[29]  *Nase*, 347 F. Supp. 2d at 319-22 (remanding case to state court because the maritime law governed the plaintiff's claims and one of the defendants was a Louisiana citizen).

[30]  BP does not deny that Curtis and Wheeler were Jones Act seamen.  Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 5.  Instead BP argues Curtis and Wheeler "intentionally failed to include Transocean . . . as a defendant in this action."  *Id*.  Of course, the injunction entered in Transocean's limitation proceeding prohibited Curtis and Wheeler from prosecuting their claims against Transocean in this case.  As explained in Curtis's and Wheeler's Motion to Remand, there is a disputed question of fact as to whether Curtis and Wheeler were BP's borrowed servants because of the control exercised by BP over drilling operations.  *See Addison v. Gulf Coast Contracting Servs., Inc.*, 744 F.2d 494, 498-99 (5th Cir. 1984).

[31]  Exhibit 1, p. 3.

[32]  Exhibit 2, p. 3.

companies (collectively "Transocean"), owners and operators of the *Deepwater Horizon,* filed a limitation of liability proceeding in this District.[33]  In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[34]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service, Curt Kuchta, the *Deepwater Horizon*'s captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[35]  Captain Kuchta agreed that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.,* "not at anchor or made fast to shore or ground."[36]  Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system.[37]  Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.

Both BP and Halliburton are Texas citizens.  BP has its principal place of business in the United States at 501 Westlake Park Boulevard, Houston, Texas  77079—a short drive from the federal courthouse.[38]  Haliburton's website shows that its American corporate offices are located at 3000 North Sam Houston Parkway East, Houston, Texas  77032.[39]  Approximately a year ago,

---

[33]   *See In re Triton Asset Leasing GmbH, et al.*, No. 4:10-cv-01721.

[34]   *Id*. at Pacer Document 1, pp. 2-4.

[35]   *See* Excerpts from the Transcript of the Testimony Given in the Joint United States Coast Guard/Minerals Management Service Investigation attached as Exhibit 3, p. 206, and incorporated herein by reference.

[36]   *Id*. at 150-51, 155, and 206-07.

[37]   *Id.* at 4-5 and 133.

[38]   *See* BP's website at http://www.bp.com/contacts.do?categoryId=488&contentId=2000552.

[39]   *See* Halliburton's website at www.halliburton.com.

Transocean filed its Response to Motions to Transfer before the JPML.[40]  Advocating that the lawsuits be consolidated in this District and Division, Transocean wrote that "Houston is the corporate headquarters of the operating subsidiaries of the four major defendants in the oil spill litigation—BP, Halliburton, Cameron, and Transocean—and it is those defendants' employees, documents, and evidence that will be the focus of the MDL proceedings."[41]

## V.
## MOTION TO REMAND'S ARGUMENTS & AUTHORITIES

Pursuant to 28 U.S.C. § 1447(c), Curtis and Wheeler move the Court to remand this case to the 129th Judicial District Court of Harris County, Texas.

### A.   Some Basic Removal Principles

Federal jurisdiction is limited.[42]  Federal courts "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree."[43]  The Court should begin with the presumption that a case lies outside its limited jurisdiction.[44]  The burden of establishing removal jurisdiction rests on the party seeking the federal forum.[45]  The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case

---

[40]   *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179-CJB-SS, Pacer Document 119.

[41]   *Id.* at 10.

[42]   *See Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[43]   *Id.* (quoting *Kokkonen,* 511 U.S. at 377).

[44]   *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[45]   *Black v. Xpress Global Sys., Inc.*, Civil Action No. H-09-2912, 2009 U.S. Dist. LEXIS 107000, at *5 (S.D. Tex. November 12, 2009).

properly before it and thereby implicates important federalism concerns."[46]  "Any doubt as to the

district court's jurisdiction must be resolved in favor of remand."[47]

### B.   These Jones Act Cases Are Not Removable

Curtis and Wheeler were Jones Act seamen assigned to the *Deepwater Horizon*.[48]  Curtis was

an assistant driller, and Wheeler was a toolpusher.[49]  When a plaintiff sues under the Jones Act, the

defendant generally cannot remove the case to federal court.[50]  BP does not deny that Curtis and

Wheeler were Jones Act seamen.[51]  Instead BP argues Curtis and Wheeler "intentionally failed to

include Transocean . . . as a defendant in this action."[52]  Of course, the injunction entered in

Transocean's limitation proceeding prohibited Curtis and Wheeler from prosecuting their claims

against Transocean in state court.  In addition, BP argues that Curtis and Wheeler "fraudulently

joined the BP Defendants in the lawsuit" because BP did not employ Curtis or Wheeler.[53]

Both Curtis and Wheeler have pleaded that they were seamen employed by the operator of

the *Deepwater Horizon* or BP.[54]  In this way, both Curtis and Wheeler have invoked the borrowed

servant doctrine which "is the functional rule that places the risk of a worker's injury on his actual

---

[46]   *Frank v. Bear Sterns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997).

[47]   *Black*, 2009 U.S. Dist. LEXIS 107000, at *5 (citing *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211(5th Cir. 2002)).

[48]   Exhibit 1, pp. 3-4, and Exhibit 2, pp. 3-4.

[49]   *See* the Affidavit of Wyman W. Wheeler attached as Exhibit 4.

[50]   *Holmes v. Atl. Sounding Co*., 437 F.3d 441, 445 (5th Cir. 2006).

[51]   Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 5.

[52]   *Id*.

[53]   *Id*. at 5-6.

[54]   Exhibit 1, p. 4, and Exhibit 2, p. 4.

rather than his nominal employer.  It permits the injured worker to recover from the company that was actually directing his work."[55]  Steven Curtis is deceased.  But Wheeler has provided an affidavit that shows BP exercised control over operations on the drill floor aboard the *Deepwater Horizon*.[56]

During Wheeler's time on the *Deepwater Horizon*, especially during the days and hours immediately preceding the explosion and fire that occurred on April 20, 2010, BP employees actually exercised control over the operation while he worked on and around the drill floor.  Wheeler regularly carried out orders that BP issued.  BP exercised its control over the drilling operations through its company men.  BP's company men were on the drill floor every day to watch operations and told the toolpushers, like Wheeler, and drillers, like Curtis, exactly what they wanted done.  In this connection, the company men made frequent visits to the rig floor.[57]

Consistent with BP's control over the work on the drill floor and the drilling operation, BP controlled the decisions, among other things, on the following:  (1) how much casing to run; (2) how much cement to pump and the mud to displace it with; (3) how many centralizers to use (fewer than originally planned); (4) where to use saltwater instead of drilling mud; (5) use of nitrogen cement job; and (6) not to run cement bond log.  The work Wheeler and Curtis were performing on the

---

[55]  *Baker v. Raymond Int'l, Inc.*, 656 F.3d 173, 178 (5th Cir. 1981) (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224-26 (5th Cir. 1975)); *see also Meinhart v. Halliburton Energy Servs., Inc.*, Civil Action No. H-11-0073, 2011 U.S. Dist. LEXIS 36430, at *10 n.5 (S.D. Tex. Apr. 4, 2011) (Rosenthal, J.).

[56]  *See* Exhibit 4.

[57]  Exhibit 4 supports the facts discussed in this paragraph.

*Deepwater Horizon* was BP's work, *i.e.*, in furtherance of the accomplishment of BP's goal to develop the Macondo 252 well.[58]   As the Court recently observed, a removing party must show there is no reasonable possibility of establishing a Jones Act claim on the merits.[59]  BP has failed to discharge its burden because BP's Affiants, Cynthia Garza and Stuart William Sanaan, were not working aboard the *Deepwater Horizon* in the days and hours immediately preceding the explosion. In contrast, Wheeler was.  His affidavit proves that there is a reasonable possibility that Curtis and Wheeler can establish a Jones Act claim on the merits.  Therefore, BP's removal was improper, and remand is appropriate.

### C.   Even if OCSLA Applied (Which It Does Not), Federal Courts Do Not Have Exclusive Jurisdiction Over OCSLA Claims

BP argues that Curtis's and Wheeler's claims "are subject to the **exclusive** federal jurisdiction of the federal courts under the provisions of 43 U.S.C. §1331 for several reasons, including the nexus of this case to a federal enclave."[60]  But BP fails to account for controlling Supreme Court precedent.

OCSLA claims are not subject to the exclusive jurisdiction of the federal courts.  In *Gulf Shore Co. v. Mobil Oil Corp.,* the Supreme Court wrote that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action."[61]  In fact, 43 U.S.C. § 1333(a)(1), entitled "Law and Regulations Governing Lands, uses the word "exclusive" only once:  "The Constitution and laws and civil and **political** jurisdiction are

---

[58]   *Id.*

[59]   *Meinhart*, 2011 U.S. Dist. LEXIS 36430, at *9.

[60]   Civil Action No. 4:11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 3 (emphasis added).

[61]   *Gulf Shore Co.*, 453 U.S. at 479.

hereby extended to . . . the outer Continental Shelf . . . as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . ."[62]  The Supreme Court concluded that 43 U.S.C. § 1333(a)(1) grants only exclusive political jurisdiction, **not exclusive judicial jurisdiction**.[63]

Based on *Gulf Shore Co. v. Mobil Oil Corp.,* the Court should reject BP's argument that Curtis's and Wheeler's claims are subject to the exclusive jurisdiction of the federal courts under OCSLA.

### D.   Maritime Law, Not OCSLA, Governs Curtis's and Wheeler's Claims

It is axiomatic that maritime claims do not "arise under" federal law for purposes of federal removal jurisdiction.[64]  In *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc*., the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA:  "(1) The controversy must arise on a situs covered by OCSLA (*i.e*., the subsoil seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with Federal Law."[65]  Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e*., an artificial structure permanently or temporarily attached to the subsoil seabed, and the maritime law applies of its own force.

---

[62]   43 U.S.C. §1333(a)(1) (emphasis added).

[63]   *Gulf Shore Co.*, 453 U.S. at 479-80 (emphasis added).

[64]   *Romero*, 358 U.S. at 377-79 (discussing non-removability of saving-to-suitors claim on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not present federal questions).

[65]   *PLT*, 895 F.2d at 1047.

### 1. The Test for Maritime Tort Jurisdiction

The test for deciding whether the maritime law governs a tort claim is whether the incident has both a "maritime situs and a connection to a traditional maritime activity."[66] Applying the situs or location test, a court "must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water."[67] The connection test raises two issues. First, a court "must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce."[68] Second, a court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[69] The key inquiry is whether the alleged tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[70]

### 2. Curtis's and Wheeler's Claims Have a Maritime Location Because The *Deepwater Horizon* Was a Vessel on Navigable Waters

The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig with state-of-the-art navigation and propulsion systems (technically referred to as a "Mobile Offshore Drilling Unit Dynamically Positioned Vessel (MODU-DPV)" that was floating on the waters of the Gulf of Mexico at the time of explosion. The Fifth Circuit has long held that a semi-submersible drilling

---

[66]  *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Grubart*, 513 U.S. at 534).

[67]  *Grubart*, 513 U.S. at 534 (citing 46 U.S.C. §740).

[68]  *Id.* (internal quotations and citations omitted).

[69]  *Id.* (internal quotations omitted).

[70]  *Id*. at 539-40.

rig is a "vessel," as a matter of law.[71]

Transocean, in its capacity as owners and operators of the *Deepwater Horizon,* filed a limitation of liability proceeding in this District.[72]  In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[73]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service,[74] Curt Kuchta, the *Deepwater Horizon's* captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[75]  Captain Kutcha agreed that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.,* "not at anchor or made fast to shore or ground."[76]  Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system.[77]  Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.

Accordingly, the Court should conclude that the *Deepwater Horizon* was a vessel on navigable water, and therefore, the maritime situs or location prong of the test for maritime tort

---

[71]  *Solana*, 587 F.3d at 267 (reviewing salvors' action, *in rem*, against semi-submersible drilling rig); *Fontenot*, 791 F.2d at 1214 n. 5 (finding a semi-submersible drilling rig to be "indisputably a vessel").

[72]  *See In re Triton Asset Leasing GmbH, et al.*, Civil Action No. 4:10-cv-01721.

[73]  *Id.* at Pacer Document 1, pp. 2-4.

[74]  One District Court has recently observed that the Minerals Management Service was renamed the Bureau of Ocean Energy Management, Regulation, and Enforcement as of June 21, 2010.  *Abbott v. BP Exploration and Prod. Inc.*, Civil Action No. H-09-1193, 2011 WL 923504, at *1 n. 3 (S.D. Tex. March 15, 2011).  Because the *Deepwater Horizon* investigation was launched before June 10, 2010, Curtis and Wheeler will refer to the agency as the Minerals Management Service.

[75]  *See* Exhibit 3, p. 206.

[76]  *Id.* at 150-51, 155, and 206-07.

[77]  *Id.* at 4-5 and 133.

jurisdiction is met.  In addition, the Court should conclude that the OCSLA situs requirement is not met because the tort occurred on navigable waters instead of a fixed platform or other structure attached to the seabed of the OCS.[78]

### 3.  Curtis's and Wheeler's a Connection to a Traditional Maritime Activity

There is no dispute that the crew of the *Deepwater Horizon* was performing drilling and completion operations at the time of the explosion.  This event and its aftermath resulted in a well publicized "disruptive impact on maritime commerce."  In *Coats v. Penrod Drilling*, the plaintiff suffered a severe knee injury when the jack-up rig's bullplug failed during a pressure test conducted while the vessel was sitting in navigable waters.[79]  On these facts, an en banc Fifth Circuit found that a potentially disruptive impact on maritime commerce existed.[80]  Based on *Coats*, the Court should find that the death and injuries resulting from the explosion aboard the *Deepwater Horizon* satisfy "the disruptive impact" issue.

The "activity traditionally subject to admiralty law" issue is easily satisfied because "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[81]  Moreover, the en banc Fifth Circuit in *Coats* observed that "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws."[82]  Curtis and Wheeler have brought suit for compensation for injuries sustained aboard the Deepwater Horizon.  Accordingly, the Court should

---

[78]   *Grand Isle*, 589 F.3d at 784.

[79]   *Coats*, 61 F.3d at 1117.

[80]   *Id*. at 1119.

[81]   *Theriot*, 783 F.2d at 538-39.

[82]   *Coats*, 61 F.3d at 1119.

conclude that "activity traditionally subject to admiralty law" is met, and Curtis and Wheeler have alleged a maritime tort.[83]

**E.     Even if OCSLA Applied (Which It Does Not), Removal Is Prohibited Based on OCSLA When a Forum Defendant Is Present**

The conclusion that the maritime law governs Curtis's and Wheeler's claims triggers the rule that admiralty and maritime claims are properly removed only if no defendant is a citizen of the forum state.[84]  District Courts in this District[85] and the Eastern District of Louisiana[86] have applied this rule to maritime claims arising on the OCS.  The Fifth Circuit has indicated this application is correct in *Morris v. T E Marine Corp*., 344 F.3d 439, 443-44 (5th Cir. 2003.)  Professor David W. Robertson, one of the preeminent maritime law scholars in the nation, has cited *Morris v. T E Corp*. for the proposition that where admiralty and OCSLA jurisdiction overlap, as they do in this case, "these overlap cases are removable only under the constraint of the second sentence of § 1441(b): no defendant can be a citizen of the forum state."[87]

And the *Morris* Court and Professor Robertson are indeed correct.  28 U.S.C. §1441(b) provides:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any

---

[83]   *Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 669 (5th Cir. 2006) (wireline worker injured aboard a lift boat on OCS held to have alleged maritime tort for failure to provide a safe place to work).

[84]   *See Dutile*, 935 F.2d at 63 (interpreting 28 U.S.C. §1441(b) ("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.")).

[85]   *Walsh*, 836 F. Supp. at 417-18.

[86]   *See, e.g., Nase*, 347 F.Supp.2d at 319-20 (collecting cases).

[87]   David W. Robertson, *The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies, and Choice of Law:  Correcting the Fifth Circuit's Mistakes*, 38 J. Mar. L & Com. 487, 523-24 (20007).

other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.[88]

Interpreting this statute, Chief Judge Edith Jones has written:

The first sentence of this subsection provides that removal of an action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" is appropriate without regard to the parties' citizenship. Emphatically claims in admiralty, whether designated in rem or in personam, do *not* fall within that category. Thus, admiralty and general maritime claims fall within the category of "any other [civil] action" governed by the second sentence of § 1441(b). As such, they are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action was brought."[89]

Both BP and Halliburton are Texas citizens. BP has its principal place of business in the United States at 501 Westlake Park Boulevard, Houston, Texas 77079—a short drive from the federal courthouse.[90] Halliburton's website shows that its American corporate offices are located at 3000 North Sam Houston Parkway East, Houston, Texas 77032.[91] Approximately a year ago, Transocean filed its Response to Motions to Transfer before the Judicial Panel on Multidistrict Litigation.[92] Advocating that the lawsuits be consolidated in this District and Division, Transocean wrote that "Houston is the corporate headquarters of the operating subsidiaries of the four major defendants in the oil spill litigation — BP, Halliburton, Cameron, and Transocean — and it is those defendants' employees, documents, and evidence that will be the focus of the MDL proceedings."[93]

---

[88]   28 U.S.C. §1441(b).

[89]   *Dutile,* 935 F.2d at 63 (italics original) (citation to *Romero,* 358 U.S. at 378, omitted).

[90]   *See* BP's website at http://www.bp.com/contacts.do?categoryId=488&contentId=2000552.

[91]   *See* Halliburton's website at www.halliburton.com.

[92]   *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL Docket No. 2179, Pacer Document 119.

[93]   *Id.* at 10.

Because BP and Halliburton are citizens of Texas, removal was improper, and remand is required.[94]

## VI.
## CONCLUSION

Based on the foregoing authority and analysis, Nyoka Curtis, as Next Friend of Treavor Ray Curtis, a Minor, and Nancy Curtis, in Her Capacity as Personal Representative of the Estate of Stephen Ray Curtis and His Beneficiaries and on Behalf of Treavor Ray Curtis, a Minor, and Wyman Wheeler respectfully request that the Court remand this case to the 129th Judicial District Court of Harris County, Texas.

Respectfully submitted,

**STEVENSON & MURRAY**

By: _/s/ John W. Stevenson, Jr._

**JOHN W. STEVENSON, JR.**
Attorney-In-Charge
E-Mail:  jstevenson@johnstevensonlaw.com
Texas Bar No. 01159820
Southern District of Texas No. 3992
**JOHN C. SCHWAMBACH, JR.**
E-Mail:  jschwambach@johnstevensonlaw.com
Texas Bar No. 19196050
Southern District of Texas No. 22904
Weslayan Tower, Suite 750
24 Greenway Plaza
Houston, Texas  77046-2416
(713) 622-3223
(713) 622-3224 (fax)

Counsel for Plaintiff, Nyoka Curtis, as Next
Friend of Treavor Ray Curtis, a Minor, *et al*.

---

[94]   *Nase*, 347 F.Supp.2d at 319-22 (remanding case to state court because the maritime law governed the plaintiff's claims and one of the defendants was a Louisiana citizen).

and

**HORTMAN HARLOW BASSI ROBINSON &
  McDANIEL, PLLC**

By:   _/s/ Christopher B. McDaniel_
      **CHRISTOPHER B. McDANIEL**
      Mississippi Bar No. 10711
      Texas Bar No. 24075440
      E-Mail:  cmcdaniel@hartmonharlow.com
      **BRETT W. ROBINSON**
      Mississippi Bar No. 10006
      E-Mail:  brobinson@hortmanharlow.com
      414 West Oak Street
      Laurel, Mississippi  39440-3947
      Post Office Drawer 1409
      Laurel, Mississippi  39441-1409
      (601) 649-8611
      (601) 649-6062 (fax)

      Counsel for Intervenor, Wyman W. Wheeler

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the above and foregoing ***Plaintiff's and Intervenor's Memorandum In Support of Motion to Remand*** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 21st day of November, 2012.

/s/ John C. Schwambach, Jr.
_____

**JOHN C. SCHWAMBACH, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's and Intervenor's Motion to Remand has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this the 21st day of November, 2011.

Mr. Thomas W. Taylor
**ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002

Mr. Richard C. Godfrey, P.C.
Mr. J. Andrew Langan, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois  60654

Mr. Donald E. Godwin
Mr. Bruce W. Bowman, Jr.
Ms. Jenny L. Martinez
Mr. Floyd R. Hartley, Jr.
**GODWIN RONQUILLO PC**
1201 Elm Street, Suite 1700
Dallas, Texas  75270-2041

Mr. Taylor Townsend
**KELLY & TOWNSEND, LLC**
137 Saint Dennis Street
Natchitoches, Louisiana  71457

Mr. Christopher B. McDaniel
**HORTMAN HARLOW BASSI**
        **ROBINSON & MCDANIEL, PLLC**
Post Office Drawer 1409
Laurel, Mississippi  39441

Mr. R. Alan York
Mr. Jerry C. von Sternberg
**GODWIN RONQUILLO PC**
1331 Lamar, Suite 1665
Houston, Texas  77010


_/s/ John W. Stevenson, Jr._
**JOHN W. STEVENSON, JR.**