IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" in the GULF | : | |
| OF MEXICO, on April 10, 2010 | : | SECTION J |
| | : | |
| | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | MAG. JUDGE SHUSHAN |
| | : | |

PLAINTIFF NYOKA CURTIS'S AND WYMAN WHEELER'S RESPONSE AND
OPPOSITION TO MOTION
TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

Pending before the Court in the above-captioned proceeding is, inter alia, a motion

("Motion") by (i) Plaintiffs' Co-Liaison Counsel, and (ii) members of the Plaintiffs' Steering

Committee (collectively, the "PSC") for an "an order establishing a court-supervised escrow and

reserve...." Motion, at 1.[1] (Rec. Doc. 4507). More specifically, the Motion seeks an Order requiring

the defendants to reserve and deposit into a precautionary common benefit fund 6% of "ongoing

settlements, judgments or other payments...." Id. Plaintiff, Nyoka Curtis, as Next Friend of Treavor

Ray Curtis, a Minor, and Nancy Curtis, in Her Capacity as Personal Representative of the Estate of

Stephen Ray Curtis and His Beneficiaries and on Behalf of Treavor Ray Curtis, a Minor and Wyman

Wheeler ("hereinafter collectively referred to as Curtis")[2], the plaintiff in removed Case No. 2:11-cv-

02526-CJB-SS, opposes the Motion as currently filed and submits for the Court's consideration the

---

[1]      Filed with the Motion is the PSC Annual Status Report and Memorandum in Support of Motion to Establish Account and Reserve for Common Benefit Litigation Expenses ("Mem."). (Rec. Dcc. 4507-2).

[2]      Wyman Wheeler was injured during the explosion and its aftermath aboard the Deepwater Horizon and joins in this response.

following response in opposition thereto.

## I.  INTRODUCTION

(I)  Stephen Curtis, father of Treavor Curtis, was killed in the explosion and its aftermath aboard the Deepwater Horizon. Curtis filed a wrongful death action against several defendants - none of which was a  "Transocean" entity - in state court of Harris County, Texas.  The defendants removed the action to the United States District Court for the Southern District of Texas, and Curtis promptly moved to remand the case to state court. Rather than ruling on the motion to remand, Judge Rosenthal stayed the case pending a decision by the JPML on transfer vel non to this Court.[3] After the case was transferred, Curtis re-filed his motion to remand in accordance with the instruction in Pre-Trial Order No. 5. See Plaintiff Curtis' Motion to Remanded filed on November 21, 2011. (Rec. Doc. 4676).   In other words, Curtis has sought from the beginning (i); not to be included in MDL 2179, and (ii) to have his action remanded to the Texas state court from which it was wrongly removed. Nonetheless, the motion to remand remains pending.

(ii)  From the inception of MDL 2179, the Court anticipated that attorneys would perform "common benefit" work. See, e.g., Pretrial Order No. 1, filed August 10, 2010. (Rec. Doc. 2). The Court appointed the members of the PSC, and established standards and procedures to be used by

---

[3]  Curtis action was originally filed as Nancy Curtis, as personal Representative of the Estate of Stephen Ray Curtis, on Behalf of Treavor Ray Curtis, a Minor, and Nyoka Curtis, As Next Friend of Treavor Ray Curtis, a Minor et al. vs. BP Exploration and Production, Inc., BP, PLC, BP America, Inc., BP Products North America, Inc., and Halliburton Energy Services, Inc.; In the 129th District Court of Harris County, Texas.  Upon removal to the Southern District of Texas, the case was assigned No. 04:11-CV-02231. In a Transfer Order filed herein on August 9, 2011, the Judicial Panel on Multidistrict Litigation (i) denied Curtis' motion to vacate the conditional transfer previously directed, and (ii) ordered the case transferred for inclusion in MDL 2179. In this Court, the case is assigned number 11-01796.

counsel seeking payment of fees and expenses, on October 8, 2010. See Pretrial Order Nos. 8, 9.

(Rec. Doc. 506, 508). For reasons unknown to Curtis, however, the PSC did not file the Motion until

November 7, 2011, i.e., a full year later. In the interim, two things have happened. First, the PSC,

and other attorneys acting at its request, have invested over 230,000 hours and incurred over $11.5

million dollars in out-of-pocket expenses "for the common benefit of claimants, litigants, and

putative classmembers affected by" the Deepwater Horizon explosion. Motion, at 1. Second, a

substantial number of the claims and lawsuits arising from the explosion have settled or been paid.

For example, according to the website of the Gulf Coast Claims facility ("GCCF"),

$5,673,848,207.31 has been paid as of November 16, 2011. Claims for "personal injury/death" have

been paid in an aggregate amount of $155,031,207.31.[4]

 (iii) The Motion notes that the PSC's request for a reserve is precautionary, and that its

ultimate goal is to recoup the costs of prosecuting this litigation directly from the defendants. See

Motion, at 2. Perhaps for that reason, it neither (i) quantifies the value of common benefit time

incurred to date, nor (ii) offers any estimate of the amount or value of common benefit time and

expenses expected to be incurred in the future.[5] Thus, the PSC asks the Court to establish a 6%

holdback on future settlements and payments in an informational vacuum. Indeed, the basis for

selecting 6% as the holdback amount--as opposed to some other percentage--is simply that 6% is in

_____

[4]

 See www.http://gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf, at 1, 6.

[5]

 The Motion states that, "[s]ince the inception of this litigation, over 300 lawyers from more than ninety different law firms have invested over 230,000 hours…for the common benefit of claimants, plaintiffs, and putative classmembers." Motion, at 1. Under the procedures required by the Court, the value of that time should be readily ascertainable by the PSC, just as (for example) the total amounts paid out by the GCCF is ascertainable. While the common benefit cost-to-date is not necessarily indicative of what the future may hold, it would be useful to know where things now stand in order to assess whether a holdback of 6%--as opposed to a lesser amount--is justified. And this would be all the more so if the court were to require retroactive holdbacks on GCCF payments.

line with the holdbacks established in other MDL cases. Id., at 3. But the PSC also proposes to have

the Court order that (I) only 4% of payments to the States of Alabama and Louisiana be reserved,

and (ii) no holdback be imposed on payments to the United States. Id., at 2 n.1. In addition, it seeks

no holdback provision with respect to the $5.6 billion paid by the GCCF to date, while imposing a

6% reserve on payments made after a de facto magic date to claimants and plaintiffs advancing

similar, if not wholly identical, claims. With all respect to the PSC and its efforts, its proposal for

a reserve fund should be rejected as presented.

## II. ARGUMENT

The Motion is filed by the PSC "on behalf of attorneys contributing common benefit time

and expenses…." Motion, at 1. Curtis does not oppose appropriate common benefit payments. Nor

does he oppose appropriate hold-backs to establish a fund for such payments. For at least three

reasons, however, the reserve proposal urged by the PSC is inappropriate, both in general, and as it

would apply to Curtis. First, the proposal is underinclusive--and unfair--because it would not be

applied to the billions of dollars already paid out of the GCCF. In other words, payments made for

resolutions prior to the Motion would not incur a holdback, placing the entire burden of any common

benefit payments on remaining claimants, plaintiffs and class members such as Curtis.[6]  Second, the

proposal is overinclusive--and further unfair--because it implicitly assumes that the work undertaken

by the PSC confers a uniform common benefit on all claimants, plaintiffs, and class members.

---

[6]

The Motion states that "[t]he PCS members earlier agreed to a voluntary reserve from the attorney fee portion of their clients' settlements, and will likewise place those funds into the court-supervised account." Motion, at 3 (emphaiss added). That "voluntary agreement" would be superseded by an Order granting the Motion. Id., at 3 n.3. The result would be that the PSC's members' clients would be treated differently, depending on when their cases were resolved. Clients lucky enough to have their claims resolved prior to November 7, 2011 would not be subject to a holdback on their portion of the payment received. Notably, the Motion does not quantify the amounts that would be "left on the table," as it were, under the PSC's proposal.

Because that is not so, a uniform holdback unfairly treats those who, like Curtis, are only incrementally benefitted by the PSC's common benefit work. Third, and in any event, the PSC does not explain how - in the absence of a finding that the Court has removal jurisdiction - power to impose a holdback on any payment that Curtis might receive.

Accordingly, as explained below, the Court should deny the Motion (without prejudice) either in toto, or as applied to Curtis.

A.     The PSC's Proposal is Unfair as Underinclusive.

As the form Order submitted with the Motion makes clear, the PSC proposes to establish a "magic date" for holdbacks to begin on November 7, 2011. In other words, (i) any payments made on or after that date (except to the United States) would be subject to a holdback, but (ii) payments made before that date are exempt from contributing to the common benefit reserve fund. The PSC cannot be unaware of the colossal impact that including payments made before November 7, 2011 would have on the holdback percentage. Indeed, while the Motion does not disclose the total amounts of common benefit attorneys' fees claimed to date, it strains credulity to think that all such fees (and common benefit expenses as well) would not be dwarfed by an assessment of substantially less than 6% on the $5.6 billion already paid by the GCCF. The PSC cautiously intimates that "a common benefit award may be owed with respect to settlements or other payments previously made through the GCCF or otherwise…" Mem., at 37. But that, it says, "is an issue left for another day." Id. Thus, having created a quandary by waiting a full year to file the Motion--and offering neither an explanation for that treatment, nor a proposed solution to the problem--the PSC would have the Court simply look past an important question.

Curtis recognizes that the Motion does not seek awards of common benefit funds, and instead

requests only that the Court create a mechanism for funding a reserve that may, or may not, need to be tapped in the future. Nonetheless, it is fundamentally unfair to (i) have the reserve funded solely by claimants and plaintiffs receiving payments after the arbitrarily-selected date of November 7, 2011, while (ii) leaving the contributors completely in the dark as to whether their unassessed counterparts will ever be required to contribute either to the fund, or to any common benefit awards that may be made. Indeed, the unfairness and uncertainty unleashed by the PSC's proposal will make settlements more difficult on a go-forward basis because claimants and plaintiffs will be forced to attempt to negotiate higher payments in anticipation of having to fund the entirety of any common benefit awards. Accordingly, while the Court may well need to set a protocol for funding a common benefit reserve, it should not do so without addressing the issues left open by the Motion. Hence, before the Court acts on the Motion, the PSC should be required to explain (i) the reason for its year-long delay, (ii) how it proposes to deal with common benefit assessments on payments made prior to November 7, 2011, and (iii) whether some or all such payments can even be subject to assessments at all. Anything less is wholly unfair.[7]

B.     The PSC's Proposal is Unfair as Overinclusive.

The PSC acknowledges that appropriate common benefit awards may vary "in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances." Motion, at 3. See also Mem., at 3. Curtis agrees--as a plaintiff with wrongful death claims, he has not been, and will not be, afforded the same common benefit from the PSC's common benefit work as claimants and

---

[7]

Again, the Motion does not seek a common benefit award. It is manifestly illogical, however, to have a common benefit reserve funded by less than the universe of those who could be required to share in the burden of paying common benefit awards. Concomitantly, it is important to define up front the universe of those who could not be required to contribute to common fund awards under any circumstances.

plaintiffs with economic and/or environmental injury claims. Indeed, the PSC's description of its various activities makes abundantly clear that its efforts are directed primarily at such claims, and only incidentally at other types of claims. This treatment is understandable and not inappropriate, but it demonstrates that the PSC's efforts will not, and cannot, produce a uniform common benefit for all claimants and plaintiffs. And because the common benefit will not be uniform, the holdback proposed by the PSC should not be uniform. To the contrary, for wrongful death plaintiffs like Curtis, the holdback - if any - should be nominal at most. Three examples of the PSC's common benefit work to date suffice to illustrate this point.

(i)     Pleading Bundles. In Pretrial Order No. 11, the Court divided the MDL into four categories (and subcategories) of cases, and ordered "pleading bundles" under which claims for personal injury and death must be pled individually. Curtis' state-court pleadings have not been amended in the MDL and, while it opposed motions to dismiss Bundle "A" claims, the PSC has spent no time drafting Bundle "A" pleadings. Conversely, it established research and writing work groups to file and defend the other bundled pleadings ordered by the Court, all of which has been done. See Mem., at 7, 13-14. None of the latter work benefitted Curtis, or any other plaintiff with personal injury or death claims. The Motion takes none of this into account.

(ii)    Science and Experts. The PSC has established six Science, Environmental and Damages Work Groups. See Mem., at 8. Five of those groups relate (by title) only to economic, environmental, ecological, or other property damage. None of the work done by those groups can produce a benefit to Curtis, whose claims are related to the wrongful death of his father. Likewise, the experts that have been retained or consulted in these areas cannot produce a benefit to Curtis. Id., at 15. Nor does Curtis stand to benefit from the PSC's efforts to ensure compliance with the Oil

7

Pollution Act. Id., at 16-17. Finally, and again understandably, the PSC "has focused on the oil spill's environmental and ecological impacts and the damages flowing from those impacts." Id., at 17. Its efforts in these regards are laudable, but also incapable of producing any benefit to Curtis and other claimants and plaintiffs with claims only for personal injury or death. Id., at 17-19.

In short, the PSC has focused its efforts largely on matters that cannot and will not yield a benefit to personal injury and death plaintiffs such as Curtis. Indeed, the PSC incorrectly posits that the answers to its litany of environmental and ecological questions "are critical to calculating the damages of any of the plaintiffs in the MDL…." Id., at 19 (emphasis added). This statement is true (if at all) only with respect to plaintiffs with claims for property, environmental, or ecological damages. Curtis is not such a plaintiff, and can receive no benefit from the PSC's efforts in these regards, no matter how laudable they may be.[8] Moreover, at least some of the BP defendants that Curtis has sued have (i) publicly acknowledged fault and responsibility for the explosion, and (ii) funded the GCCF with $20 billion. Thus, liability issues germane to Curtis will not (or should not) be complicated. Any holdback request on Curtis should reflect these realities, and be in a nominal percentage at most. To that end, the PSC should be required to segregate and state the efforts allocable to personal injury and death plaintiffs, such as Curtis.

C.    The Court Lacks Power to Impose a Holdback on Any Payments to Curtis.

The discussion set forth above demonstrates that, if a holdback is imposed by the Court on Curtis, then the amount of the holdback should be considerably less than 6%.  There remains, however, the question of whether the Court can impose a holdback on Curtis at all, when he (i) has challenged removal jurisdiction over this removed case, and (ii) is before the Court only

---

[8]    The section on "Science" does not even include the cause of the explosion. See Mem., at 17-19.

8

involuntarily. Although the PSC sets forth an extensive general discussion of the common benefit doctrine, see Mem., at 21-35, it does not address the issue. In other words, it does not explain how the Court has power to act with respect to Curtis under these circumstances. We fill that void by explaining why the Court lacks power to order a holdback as to Curtis.

In In re Genetically Modified Rice Litig., 2010 U.S. Dist. LEXIS 19168 (E.D. Mo. February 24, 2010), the equivalent of the PSC herein moved to create a common benefit reserve fund. As part of that request, it asked the court to include state-court cases in the holdback order, "so that defendants would be required to hold back and contribute a portion of any settlements or judgments from those cases as well as from the MDL cases." 2010 U.S. Dist. LEXIS 19168, at * 129. Declining to order holdbacks in state-court cases--including improperly removed cases it had remanded to state court--the court held that it "[did] not have jurisdiction to order hold-backs for…state court cases." Id., at * 121. Expanding on that holding, the court followed In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II, 953 F. 2d 262 (4th Cir. 1992), which "found that the trial court [in that case] did not have jurisdiction to order…contributions from parties who were not before it." Id., at * 130, citing Showa Denko, supra, at 166-67. It further observed that "[m]ost courts considering this issue have reached the same conclusion." Id.[9]

The result is that, if the Court had previously remanded Curtis' case to the state court from which it was improperly removed, then it would lack jurisdiction to impose a mandatory holdback on any payment that he might receive in settlement or after trial. Any such holdback would instead be a matter either for the state court to address, or for negotiation between the PSC and Curtis'

---

[9]

      The court subsequently reaffirmed its holding that it had no jurisdiction to order a holdback with respect to state-court litigation, even as a litigant that was a party in a separate proceeding in the MDL. See In re Genetically Modified Rice Litig., 2011 U.S. Dist. LEXIS 17211, at * 176-179 (E.D. Mo. February 11, 2011) .

counsel. The Court has not, however, ruled on Curtis' motion to remand, which presently leaves the issue in a different, and indefinite, posture. Under these circumstances, the most prudent course of action is for the Court to deny the Motion as to Curtis, without prejudice to refiling if his motion to remand is denied. Alternatively, the Court should address Curtis' challenge to removal jurisdiction prior to ruling on the Motion as it applies to him., i.e., it should carry the Motion with respect to Curtis pending decision on his motion to remand.

Finally, it bears repeating that Curtis is before the Court only involuntarily, having been swept into this MDL against his will through (i) an improper removal of his state-court case, and (ii) the seemingly inexorable process by which his case--and his motion to remand--found their way to this Court. But again, there is no diversity of citizenship, Curtis pleadings raise no conceivable federal question, and no Transocean entity is a defendant in the action. Nor, for that matter, is Curtis a party to the Limitation Action. In short, this is a state-court case that should be remanded to the state court from which it was improperly removed. Unless and until the Court holds otherwise, the Motion should be denied or deferred with respect to Curtis.

### III.  CONCLUSION

For the reasons set forth above, the Motion should be denied in toto, subject to being refiled with provision of adequate information. Alternatively, the Court should either deny or defer the Motion as it applies to Curtis. If the Motion is granted as to Curtis, however, then the holdback as to him should be nominal and, in any event, considerably less than 6%.

Dated: November __, 2011

10

Respectfully submitted,

**STEVENSON & MURRAY**

By: _John C. Schwambach, Jr._

**JOHN W. STEVENSON, JR.**
Attorney-In-Charge
Texas Bar No. 01159820
Southern District of Texas No. 3992
**JOHN C. SCHWAMBACH, JR.**
Texas Bar No. 19196050
Southern District of Texas No. 22904
Weslayan Tower, Suite 750
24 Greenway Plaza
Houston, Texas  77046-2416
(713) 622-3223
(713) 622-3224 (fax)
Attorneys for Nyoka Curtis, as Next Friend of
Treavor Ray Curtis, a Minor, *et al*.

11

and

**HORTMAN HARLOW BASSI ROBINSON & McDANIEL, PLLC**

By: ___/s/ Christopher B. McDaniel_____

**CHRISTOPHER B. McDANIEL**
Mississippi Bar No. 10711
Texas Bar No. 24075440
E-Mail: cmcdaniel@hartmonharlow.com
**BRETT W. ROBINSON**
Mississippi Bar No. 10006
E-Mail: brobinson@hortmanharlow.com
414 West Oak Street
Laurel, Mississippi  39440-3947
Post Office Drawer 1409
Laurel, Mississippi  39441-1409
(601) 649-8611
(601) 649-6062 (fax)

Counsel for Intervenor, Wyman W. Wheeler

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff Nyoka Curtis's and Wyman Wheeler's Response and Opposition to Motion to Establish Account and Reserve for Litigation Expenses has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this the 21st day of November, 2011.

Mr. Thomas W. Taylor
**ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002

Mr. Taylor Townsend
**KELLY & TOWNSEND, LLC**
137 Saint Dennis Street
Natchitoches, Louisiana  71457

12

Mr. Richard C. Godfrey, P.C.
Mr. J. Andrew Langan, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois  60654

Mr. Donald E. Godwin
Mr. Bruce W. Bowman, Jr.
Ms. Jenny L. Martinez
Mr. Floyd R. Hartley, Jr.
**GODWIN RONQUILLO PC**
1201 Elm Street, Suite 1700
Dallas, Texas  75270-2041

Mr. Christopher B. McDaniel
**HORTMAN HARLOW BASSI**
    **ROBINSON & MCDANIEL, PLLC**
Post Office Drawer 1409
Laurel, Mississippi  39441

Mr. R. Alan York
Mr. Jerry C. von Sternberg
**GODWIN RONQUILLO PC**
1331 Lamar, Suite 1665
Houston, Texas  77010

*John C. Schwambach, Jr.*

**JOHN C. SCHWAMBACH, JR.**