UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 <br><br> CIVIL ACTION NO. 2:10-MD-02179 <br><br> SECTION: J |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

*****************************************************************

## OPPOSITION TO PSC'S "MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES"[1]

According to the United States Supreme Court, the common benefit doctrine provides that when the efforts of the litigant or attorney <u>create</u>, <u>preserve</u>, <u>protect</u>, <u>increase</u> or <u>discover</u> a common fund, all who benefit from that fund must contribute proportionately to the costs of the litigation.[2] The doctrine rests on the equitable concept that persons who obtain the benefit of a lawsuit without contributing to its cause are unjustly enriched at the successful litigant's expense.[3] While it would be grossly unfair to allow claimants and counsel to "take advantage of or piggy back on [the] work"[4] of attorneys "whose efforts and expenditures have recovered, preserved, or enhanced recoveries for the benefit of others,"[5] it is equally offensive to make litigants pay for work that was never used nor needed to make their respective recoveries. It is the latter situation that the Plaintiff Steering Committee's ("PSC's") "holdback" motion involves, not the former.

---

[1] Undersigned counsel collectively represent hundreds of clients subject to the PSC's holdback motion.
[2] *Bowing Co. v. Van Gemert*, 444 U.S. 472, 479, 100 S.Ct. 745, 62 L.Ed.2d. 676 (1980). *Central R.R. and Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), *Trustees v. Greenough*, 105 U.S. 527, 532-33, 105 U.S. 527, 26 L.Ed. 1157 (1881).
[3] *Bowing*, 444 U.S. at 478.
[4] PSC Status Report and Memorandum in Support of Motion to Establish Account and Reserve for Litigation Expenses, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc. R. 4507-1 at p. 27.
[5] *Id.* at p. 24.

1

The PSC itself states that, "The <u>only</u> work entitled to compensation from a common benefit fund is work that has <u>demonstrably provided a benefit</u> to all plaintiffs, or to a defined group of plaintiffs as a whole — the common benefit work."[6] The PSC fails its own test. It has not — it cannot — articulate that it has performed work that has "demonstrably provided a benefit" to claimants represented by undersigned counsel who resolve their claims under the Oil Pollution Act (OPA) through negotiations with the Gulf Coast Claims Facility (GCCF). In particular:

- The PSC cannot take credit for <u>creation</u> of the GCCF Fund since the GCCF was created and publicly announced on June 16, 2010,[7] before the Judicial Panel on Multidistrict Litigation issued its transfer order, consolidating this MDL in this Court on August 8, 2010[8] and before the PSC was appointed by this Court on October 11, 2010.[9]
- The PSC cannot take credit for the <u>creation</u> of the GCCF Fund since the GCCF was established due to BP's designation as a "Responsible Party" under the Oil Pollution Act of 1990 (OPA).
- The PSC cannot take credit for <u>payments</u> from the GCCF Fund to undersigned counsel's clients since those payments are case specific, not in any way related to or dependent upon any of the work done by the PSC here.

For these reasons, and those more fully articulated below, the PSC's holdback motion should be denied as to the clients represented by undersigned counsel who resolve their OPA claims in the GCCF.

---

[6] *Id.* at p. 32 (*Emphasis added*).
[7] Fact Sheet: Claims and Escrow, The White House, Office of the Press Secretary, June 16, 2010 available at http://www.whitehouse.gov/the-press-office/fact-sheet-claims-and-escrow (last visited November 20, 2011).
[8] United States Judicial Panel on Multi-District Litigation, Transfer Order for MDL No. 2179 to the Eastern District of Louisiana, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc. R. 1.
[9] Pretrial Order #8 – Appointment of PSC and Plaintiff Executive Committee, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc. R. 506.

2

### 1. The Oil Pollution Act Is Responsible For Creation Of The GCCF Fund -- And The Payments From It -- Not The PSC.

A review of the applicable law governing the claims process in which undersigned counsel's clients are engaged is necessary and appropriate here. Such a review shows that the PSC cannot lay claim to any payments made to those clients from the GCCF for those clients' OPA claims and a holdback of any money from those clients is improper.

Under the Oil Pollution Act, 33 U.S.C. §2701, *et seq* ("OPA"), "each responsible party for a vessel or facility...from which oil is discharged...is liable for removal costs and damages," including "the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant." 33 U.S.C. §2702. A responsible party in the case of a vessel is any person owning, operating, or demise chartering the vessel. 33 U.S.C. §2701(32)(A). A responsible party for an offshore facility is the lessee or permittee of the area in which the facility is located. 33 U.S.C. §2701(32)(C). A lessee is any "person holding a leasehold interest in an oil or gas lease on lands beneath navigable waters (as that term is defined in section 1301(a) of Title 43) or on submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. 1331 et seq.)." 33 U.S.C. §2701(16). For purposes of determining the responsible parties for a mobile offshore drilling unit, it is first deemed to be a tank vessel and then treated as an offshore facility for excess liability. 33 U.S.C. §2704(b)(1)&(2).

BP, as a leaseholder and designated operator of the Mississippi Canyon Block 252 lease and as lessor of the Deepwater Horizon, is strictly liable and has accepted responsibility under OPA for damages caused by the discharge of oil from its Macondo well. Important for purposes

of the PSC's holdback motion, it is critical to note that no proof of liability is required under OPA, only individual injury.

Before suit can be filed against BP as the Responsible Party under OPA, however, a claimant must articulate those individual damages and give BP the opportunity to settle the claim. 33 U.S.C. 2713 (a). Only after presentment of the claim and either denial of the claim or passage of 90 days, may the claimant "elect to commence an action in court against the responsible party . . ." 33 U.S.C. 2713(c). The purpose behind requiring such a measure is to reduce the costs of litigation on all parties and to insure claimants are properly and quickly compensated for their damages.

BP recognized its legal responsibility early on and began paying some claims submitted to it. At the July 27, 2010 status conference, BP's counsel, Donald K. Haycraft, reported that as of July 26, 2010, BP had paid $251 million dollars to claimants "through the BP claims process, which is part of the statutory responsibility that BP has a (sic) Responsible Party under the Oil Pollution Act of 1990."[10] After the passage of some time, the BP claims process transitioned to the GCCF, a twenty billion dollar fund administered by Ken Feinberg. In his October 22, 2010 letter to this Court, Mr. Haycraft re-affirmed BP's acceptance of its role as a Responsible Party under OPA and, importantly, verified that the presentment of claims to the GCCF satisfied the statutory presentment requirement of OPA.[11] Mr. Haycraft wrote:

> At the October 15 status conference, the Court asked BP's counsel to confirm that presentment to the Gulf Coast Claims Facility (GCCF) constitutes presentment to BP as a designated Responsible Party under OPA 90. As we have stated previously, BP acknowledges that presentment to GCCF in accordance with the requirements of OPA 90

---

[10] Attachment #2 to Order filing Letter from D. Haycraft and Exhibit to Letter in Record, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc. R. 594-2 at p. 4.
[11] Order filing Letter from D. Haycraft and Exhibit into Record, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc.R. 594.

and GCCF procedures will be considered presentment under OPA 90, without any requirement that presentment be made separately to BP.[12]

Thus, clients of undersigned counsel who submit claims and settle them through negotiations with the GCCF are simply following the law. Those claimants have no right to pursue litigation under OPA, and thereby even potentially avail themselves of the work product of the PSC, before doing exactly what they are doing now. The PSC surely cannot take credit for the passing of OPA and its requirement for "presentment" any more than it can take credit for creation of the $20 billion GCCF fund itself, established as a result BP's designation as a "Responsible Party" under OPA. Both of these factors, OPA's statutory requirements and the creation of the GCCF, have led to the resolution of many claims and will lead to more in the future. The PSC cannot legitimately claim any responsibility for either.

Further, the PSC cannot take credit for any actual payment to undersigned counsel's clients from the GCCF. Those payments are specific to claimant's individual situations and not dependent on any general theories of liability or damage. The PSC offers no evidence to the contrary. For these reasons alone, the PSC's holdback motion should be denied for undersigned's clients who resolve their claims in the GCCF.

### 2. The Unique Facts Of This Case Do Not Support Any Holdback From Any Of Undersigned Counsel's Clients Who Resolve Their Case In The GCCF.

Given the unique facts of this case, all of the case law cited by the PSC in support of its holdback motion, while generally correct, is inapposite and unavailing here. In none of those cases was there a defendant strictly liable for economic damages and who agreed — before a PSC was even appointed — to fund up to $20 billion in settlements and where it was required under federal law — as a condition precedent to filing suit — that some effort be made to resolve

---

[12] Attachment #1 (Haycraft Letter) to Order filing Letter from D. Haycraft and Exhibit to Letter into Record, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010* (10-02179); Doc.R. 594-1.

5

cases through a settlement program. The biggest difference between this case and any of the cases cited by the PSC is that there is a mechanism here, established prior to the formation of the PSC and pursuant to federal law, to resolve claims.

Additionally, this situation is different than those situations in which an MDL PSC has negotiated a settlement in an MDL proceeding and state court litigants, when they choose to participate in the settlement crafted in federal court, are properly taxed for expenses incurred in the creation of that fund.

This situation also differs from those situations in which counsel who are part of the MDL leadership take the work performed there and then settle cases outside of the confines of the MDL. Undersigned counsel are not members of the MDL leadership, Plaintiff Steering Committee or any Discovery or Science Committee. These counsel have no role or position in the MDL and thus have not participated in any meaningful fashion in the MDL and have not been privy, in any way, to the work done there.

It is even different from those situations where counsel outside of the MDL leadership file state court cases but then order deposition transcripts taken by MDL leadership, copy work product in their state cases, and otherwise "piggyback" on work performed by others to resolve their own cases.

Further and perhaps most importantly, any objective review of the work done to date in this MDL indicates that the PSC has focused on many things — but not the *sine qua non* of any claim for resolution in the GCCF under OPA — individual economic damage. Indeed, given the unique facts of this case and the parameters of the GCCF and OPA, such work could never be done at the MDL level.

The linchpin of the common benefit doctrine is that when work is done for the benefit of others, it is patently unfair to give the beneficiaries of that work "a free ride." But nowhere in the PSC's motion is there any evidence, even indication, of how the work done which, to date, appears to have been focused primarily on general liability and environmental damages — not individual economic damages -- has been offered to or used by any of undersigned counsel's clients. In fact, the PSC's motion indicates just the opposite. In footnote 14, the PSC admits that it "will not disclose the names of the experts retained nor the specific studies and projects the PSC has undertaken to establish the extent and duration of environmental and ecological damages."[13] Despite this admission, the PSC nevertheless seeks payment for that work from claimants in the GCCF who have never even seen, much less used, that work. There certainly could be no "demonstrable benefit" provided by that work when it is being held under such obviously tight wraps.

### 3. The PSC's Requested Holdback Motion Suffers From a Fatal Procedural Flaw.

Establishing, and then seeking disbursement from, a common benefit fund is a two step process. In its motion, the PSC attempts to blur the two steps and confuses the factors for each. Before any money can be "held back" from any settlement, there must <u>first</u> be a showing that the work of the common benefit lawyers created, or at least has the potential to create, a corpus from which other litigants may receive compensation.[14] It is not a question of <u>if</u> work is performed by a PSC. Unquestionably, some work is always performed. Rather, the question is <u>whether</u> the work performed has provided, or will provide, some "demonstrable benefit" to other litigants. It is the second and critical question that the PSC raises, but fails to answer.

---

[13] PSC Status Report, Doc. R.4507-1 at note 14.
[14] Such a "corpus" could also be a settlement program of individual cases and does not necessarily have to be a "single" fund.

Instead of dealing head-on with this issue, the PSC instead extols the amount and quality of work it has performed for essentially the first 17 pages of its brief. In the next section, the PSC spends an almost equal amount of time on a thorough review of the common benefit doctrine and examples of holdbacks in other MDLs. The PSC thus spends precious little time on the critical issue -- how any of the work, exemplary in legal quality as it may be, provides <u>any</u> benefit to the clients of undersigned counsel who resolve OPA claims in the GCCF.

Indeed, the PSC simply cannot make such a claim since the GCCF was created by BP as a result of BP's statutory obligation as a Responsible Party under OPA, and long before appointment of the PSC by this Court. Further all of the work that the PSC contends entitles it to a holdback – document review, discovery conferences with the magistrate, cooperation and coordination among counsel, depositions, legal research and court filings, work with experts, efforts to protect unrepresented putative class members, and development of science – are unneeded for resolution of OPA claims in the GCCF.

Instead of dealing with these facts, the PSC attempts to pivot and argue that it does not seek an <u>award</u> of common benefit time and expenses at this time, only a <u>holdback</u> from which a future award may come. The PSC, however, ignores the fact that the fund from which undersigned counsel's clients' claims are settled, and from which the PSC seeks a holdback, was not <u>created</u> by it. Thus, a holdback of <u>any</u> monies from that fund is unwarranted and would be simply unfair to needy claimants and contrary to the common benefit doctrine. Businesses and individuals injured by this oil spill have waited long enough for compensation due them. They should not have to forfeit one penny of those funds to pay for work they did not need and did not use. This is particularly so in light of the complete lack of any evidence that the PSC's work

produced, or will produce, any "demonstrable benefit" to clients who resolve OPA claims in the GCCF.

### 4. The PSC's Holdback Request Is Arguably Overbroad.

This Court very well may lack jurisdiction over cases not actually before it, such as those claimants that have chosen not to litigate, but instead to compromise their claims through the GCCF. This is yet another reason to deny the holdback request. See, e.g. *In re Showa Denko K.K. L–Tryptophan Products Liability Litigation II*, 953 F.2d 162, 165–66 (4th Cir.1992) (finding that the trial court did not have jurisdiction to order contributions from parties who were not before the court, including unfiled claims that might be settled); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir.1976) (deciding that trial court could not order non-parties to contribute to a common benefit fund); *In re Genetically Modified Rice Litigation*, 2010 WL 716190 (E.D. Mo. 2010) (holding that trial court does not have jurisdiction to require defendant to hold back and contribute portions of settlements from state court claims); *In re Baycol Products*, 2004 WL 1058105 (D. Minn. 2004) (finding that since no class was certified, defendant had a right to negotiate individual settlements and court has no jurisdiction over third party payors who did not submit to the court's jurisdiction by joining in suit).

### 5. Conclusion.

Service on a Plaintiff Steering Committee is a risky business. Time, effort, and money are all expended with no guarantee of a return. When a positive result is obtained, or even likely to be obtained, common benefit counsel deserve to be compensated for the risks undertaken. On the other hand, when no "demonstrable benefit" is obtained from that work, it is patently unfair to expect others to compensate the PSC for the risks they voluntarily undertook. As the PSC itself admits, the PSC's "expenditures will not be reimbursed, in whole or in part, unless and

until this litigation generates benefit for the plaintiffs."[15] As to settlements from the GCCF under OPA, the PSC cannot legitimately claim that it generated any "demonstrable benefit" and, under its own rule, should not be allowed to tax those settlements.[16]

The businesses and individuals affected by BP's oil spill have waited long enough for 100% compensation for their injuries. They should not have to wait any longer and forfeit even 6% of that recovery to pay for work that was not needed, and not used, to obtain their recoveries. As to OPA claims settled in the GCCF, the PSC's holdback motion should be denied.

Respectfully submitted,

BY: /s/Michael G. Stag
Michael G. Stag
SMITH STAG, LLC
ONE CANAL PLACE
365 CANAL STREET, SUITE 2850
NEW ORLEANS, LA 70130
(504) 593-9600

Richard J. Arsenault
J.R. Whaley
NEBLETT, BEARD & ARSENAULT
P.O. BOX 1190
ALEXANDRIA, LA 71309
(318) 487-9874

Edwin Armistead Easterby
WILLIAM, KHERKER, HART &
BOUNDAS, LLP
8441 GULF FREEWAY
SUITE 600
HOUSTON, TX 77017
(713) 230-2200

---

[15] PSC Status Report, Doc. R. 4507-1 at p. 36.
[16] Of course, should the PSC successfully create another fund, from other defendants or from BP, it would be entitled to a holdback and common benefit fee and costs reimbursement. Also, not all OPA claims will be resolved in the GCCF, and litigation will naturally follow. At that point, undersigned counsel would have no objection to a 6% holdback of any settlements processed through that fund and achieved as a result of reliance on the PSC's work. Until then, however, any holdback is inappropriate, even under the PSC's own standard, since no "demonstrable benefit" has been shown from that work.

Daniel Becnel
BECNEL LAW FIRM, LLC
106 W. SEVENTH STREET
P.O. DRAWER H
RESERVE, LA 70084
(985) 536-1186


Jerrold S. Parker
PARKER WAICHMAN
    ALONSO LLP
3301 BONITA BEACH ROAD
BONITA SPRINGS, FL 34134
(239) 390-1000


Tim Howard
HOWARD & ASSOCIATES, P.A.
8511 BULL HEADLEY ROAD, SUITE 405
TALLAHASSEE, FL 32312
 (850) 298-4455

Douglas S. Lyons
LYONS & FARRAR, P.A.
325 N. CALHOUN STREET
TALLAHASSEE, FL 32301
(850) 222-8811

Al J. Robert, Jr.
LAW OFFICE OF
    AL J. ROBERT, JR LLC
643 MAGAZINE STREET,
SUITE 402
NEW ORLEANS, LA 70130


Camilo K. Salas III
SALAS & CO., L.C.
650 POYDRAS STREET
SUITE 2000
NEW ORLEANS, LA 70130
(504) 799-3080

Samuel T. Adams
460 GRACE AVENUE
PO BOX 191
PANAMA CITY, FL 32402-0191
(850) 785-3469


## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2011, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Don K. Haycraft, James P. Roy and Stephen J. Herman by operation of the Court's electronic filing system and to all counsel of record through the Lexis Nexis File & Serve.

/s/Michael G. Stag