UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179<br><br>SECTION:  J<br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |
| **THIS APPLIES TO ALL CASES AND 10-2771** | : : : | JURY TRIAL DEMANDED |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

### CAMERON INTERNATIONAL CORPORATION'S OPPOSITION TO MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

The Plaintiffs' Co-Liaison Counsel and members of the Plaintiffs' Steering Committee (the "PSC") filed a Motion to Establish Account and Reserve for Litigation Expenses ("PSC's Motion") seeking a Court Order establishing a common benefit fund. Cameron International Corporation ("Cameron") opposes the PSC's Motion because the motion is devoid of legal and factual support, as more fully set out below.

I.      THE PSC'S PROPOSED COMMON BENEFIT FUND

The common benefit fund proposed by the PSC would create a mandatory two tiered funding structure upon the Defendants imposing: 1) a four percent (4%) surcharge of "the gross settlements, judgments, or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to the State of Alabama or the State of Louisiana," arising out of the *Deepwater Horizon* and  2) a six percent (6%) surcharge on "the gross settlements, judgments or other payments" by "Defendants, or any agent or representative acting on a Defendant's behalf" to any "plaintiff, putative classmember or other claimant arising out of the Macando / *Deepwater Horizon* disaster." [Proposed Order at 1-2.] The alleged purpose of this mandatory tax on Defendants is to reimburse the PSC for purportedly establishing a "common

1075806v.2

fund" or providing a "substantial benefit" that added value to any "plaintiff, putative classmember or other claimant."

## II. COMMON BENEFIT FUNDS ARE JUSTIFIED IN LIMITED CIRCUMSTANCES

The common fund doctrine is founded upon the premise that "such allowances are appropriate only in exceptional cases and for dominant reasons of justice." *McIntosh v. Pacific Holding Co.*, 928 F.Supp. 1464, 1473 (D. Neb. 1996) (citing *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167 (1939), *rvsd on other grounds* 120 F.3d 911 (8th Cir. 1997)). Conceptually, this equitable fee-spreading rule is premised on the notion that "persons who obtain the benefit of a lawsuit without contributing to its costs are *unjustly enriched at the **successful litigant's expense***." *Boeing*, 444 U.S. at 478 (emphasis added); *accord Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 360 (5th Cir. 2003). To avoid this unjust result, when appropriate, the Court can "'assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.'" *Boeing*, 444 U.S. at 478 (emphasis added) (quotation omitted).

To recover fees under the "substantial benefit" or "common fund" doctrine, an attorney must show that his or her efforts (1) were successful, ***and*** (2) conferred a substantial benefit on others. In the words of the Fifth Circuit, "[a]ttorney's fees may . . . be awarded to a ***successful litigant*** whose success confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 593 (1970)) (emphasis added).

Additionally, the following three requirements also must be satisfied before costs may be shifted onto others:

(1) The classes of person benefited by the lawsuits are small in number and easily identifiable.

(2) The benefits must be traceable with reasonable accuracy.

(3) The court must be confident that the costs of litigation can be shifted with exactitude to those benefitting.

*Boeing v. Van Gemert*, 444 U.S. 472, 478-79, 100 S. Ct. 745, 749, 2 L. Ed. 2d 676 (1980); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries with some exactitude.") (internal citations omitted).

Furthermore, the "common fund" doctrine *only* applies when the litigation produces an actual monetary fund under the Court's jurisdiction, from which the attorneys' fees can be drawn. The doctrine cannot be used to impose additional liability on the defendants or the fund beneficiaries. *See, e.g., Boeing,* 444 U.S. at 478-479; *Knight,* 982 F.2d at 1579 ("[T]he common fund theory does not impose additional liability on the losing defendant."); *Morganroth & Morganroth*, 213 F.3d. at 1319 ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit. Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "fund" from which fees could be recovered).

### III. MANDATORY COMMON BENEFIT FUNDS ARE NOT APPROPRIATE IN ALL MDL'S

As evidenced by the recent order entered by Judge Fallon in the Chinese Drywall MDL, the creation of a mandatory common benefit fund is not warranted or appropriate in all

- 3 -

MDL's [MDL 2047 Doc. 8545.] In the Chinese Drywall MDL, for example, the Plaintiffs' Steering Committee filed a motion requesting the creation of a mandatory common benefit fund similar to the PSC's Motion presently pending before this Court. The PSC also filed a Motion to Establish a Court Supervised Account for Voluntary Deposit of Funds to Compensate and Reimburse Common Benefit Counsel. Rather than entering an order **mandating** the contribution of monies to a common benefit fund, Judge Fallon instead entered an order "that a settling party at this time may **voluntarily** set aside a portion of settlement proceeds by depositing that portion into the registry of the court so that the funds may be allocated at a future date to common benefit costs." [*Id.*] (Emphasis added.) Judge Fallon entered the order creating a voluntary rather than a mandatory fund even though he recognized "that the Plaintiffs' Steering Committee ("PSC") and other common benefit counsel have been actively pursuing this litigation on behalf of several property owners." [*Id.*] Indeed, in the Chinese Drywall MDL, some plaintiffs actually recovered damages through the MDL.[1] Notwithstanding that the Chinese Drywall PSC has collected settlements on behalf of MDL plaintiffs, the PSC requested a stay of its motion for the creation of a mandatory fund, and Judge Fallon agreed. Similarly, Cameron believes that a voluntary, not a mandatory, fund may be appropriate under the present circumstances.

---

[1] According to the PSC's Motion, the PSC members in this case already have agreed to a voluntary reserve from the attorney fee portion of their clients' settlements. [PSC Motion at ¶ X.]

- 5 -

## IV. THE PSC FAILS TO DEMONSTRATE THAT ITS EFFORTS HAVE BENEFITTED ANY PARTIES AS REQUIRED TO JUSTIFY THE RELIEF REQUESTED

### A. The PSC Has Failed to Show That Any Plaintiff Has Received Or Will Ever Receive Any Substantial Benefit From The PSC's Efforts.

As explained above, the purpose of a common benefit fund is to prevent the unjust enrichment of persons who do not contribute but who obtain a "substantial benefit" from the work of the PSC and other common benefit counsel. The PSC offers no factual justification to support its request for the creation of a common benefit fund in this MDL. Instead, the PSC relies primarily on sweeping general statements such as "multidistrict transferee courts routinely enter orders that create a source for future court -approved compensation to liaison counsel and court-appointed committees."[2] However, this MDL is neither routine nor typical, and given the unique facts and circumstances of this MDL, a common benefit fund is unjustified.[3]

The PSC has not demonstrated that it has successfully conferred *any* benefit yet on the plaintiffs, much less a "substantial" one. The mere fact that the PSC has expended substantial effort and monies on certain issues does not automatically mean that its efforts have been or will be beneficial to the plaintiffs in general. Effort and costs do not in and of themselves establish that a benefit has been or will be obtained.

In fact, most of the 100,000-plus Pleading Bundle B-1 claims are OPA claims. OPA prescribes a streamlined, comprehensive, and exclusive remedial process pursuant to which designated responsible parties compensate claimants for the amount of their verifiable damages. OPA makes these responsible parties liable, without proof of fault, for prescribed costs and

---

[2] PSC's Memorandum at 31.

[3] The Court has noted that "this is no ordinary case." [Doc. 3830 at 30.]

damages.[4]  Therefore, OPA claimants here are not required to prove fault of any defendant, only damages.

To date, the PSC has expended substantial effort to allocate fault among the defendants.  The intra-defendant allocation of fault provides no significant value to individual plaintiffs who, without having to prove any liability, already had available to them a fully funded OPA "common fund" paid for by BP long before the PSC was appointed.  The thousands of MDL plaintiffs who have only OPA claims have not derived and will not derive any benefit from the activities described in the PSC's Motion.

In sum, "substantial benefit" common fund attorneys' fees are not available simply because an attorney claims to have invested a significant amount of time or money on a case.  Rather, such fees are *only* available when the attorney's efforts were (1) successful, *and* (2) conferred a substantial benefit on other claimants who did not contribute to the costs of the litigation.  *Rogers*, 988 F.2d at 616.  The PSC has failed to demonstrate that either of these requirements has been met.

Because the PSC has failed to establish a substantial benefit to plaintiffs from their activities to date, it is unnecessary to discuss the three additional *Boeing* requirements.  But even if the Court were to assume some benefit from the PSC's activities, there would be no way to identify which plaintiffs received such benefits, nor would there be any reasonably objective

---

[4]  "Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, . . . into or upon the navigable waters . . . is liable for [specified] removal costs and damages . . . that result from such incident." 33 U.S.C. § 2702(a).  There are six such categories of removal costs and damages for which the responsible parties are liable, including damages for injury to natural resources, economic loss for injury to property, and increased costs due to injury to property.  33 U.S.C. § 2702(b)

way to trace those hypothetical benefits to any particular activities on the part of the PSC. As a result, the Court could not be "confident" that it was shifting the costs of the PSC's efforts with the degree of exactitude required. *See Boeing*, 444 U.S. 478-479.

> **B.     The PSC's Motion Violates The American Rule by Improperly Seeking to Shift Plaintiffs' Costs And Attorneys' Fees to Defendants.**

The relief sought by the PSC's Motion would also violate the American Rule. *Boeing*, 444 U.S. at 481-82. As the *Boeing* court stated, the common fund doctrine does not allow the shifting of plaintiffs' attorneys' fees and costs to the defendant, and doing so violates the American Rule. Here, the relief sought by the PSC would violate the American Rule by imposing a surcharge directly on Defendants. *Id.; Knight v. United States,* 982 F.2d. 1573, 1579 (Fed. Cir. 1993) ("[T]he common fund theory does not impose additional liability on the losing defendant.").Rather than order plaintiffs to fund costs associated with what the PSC claims were required to award benefits, the PSC seeks to tax Defendants directly. Such a de facto taxing of attorney fees and costs to Defendants is impermissible under *Boeing*.

> **C.     The PSC's Proposed Order Would Include Settlements Between Defendants.**

The PSC's Proposed Order will assess 6% surcharges on settlements entered into between Defendants. Creating a common benefit fund using a surcharge on settlements between Defendants would shift plaintiffs' attorneys' fees and costs to Defendants in clear violation of the American Rule. *See, e.g., Boeing*, 444 U.S. at 478-479; *Knight*, 982 F.2d at 1579. Moreover, the PSC has not demonstrated and cannot demonstrate that individual Defendants have derived any benefit from the PSC's work.

**V.     THE PSC'S PROPOSED ORDER ENCOMPASSES NON-PARTIES**

The proposed order accompanying the PSC's Motion casts a broad net that includes all "claimants" regardless of whether they are parties in the MDL, and encompasses not

- 8 -

only judgments and settlements, but also "other payments." The PSC's Proposed Order reads in part:

> Defendants, or any agent or representative acting on a Defendant's behalf, shall deposit an amount equivalent to six percent (6%) of the gross settlements, judgments or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to any other plaintiff, putative classmember or other claimant, arising out of the Macando / *Deepwater Horizon* disaster (with the exception of settlements, judgments, or other payments to the United States), into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and/or expenses may be paid . . .

(Proposed Order pgs. 1-2).

Undoubtedly, the "agent" provision was intended to tax GCCF payments. As of November 16, 2011, nearly 400,000 claimants affirmatively have elected not to participate in this MDL and instead have presented their claims and proved their damages to the GCCF.[5] The GCCF has paid out over $5 billion to claimants affected by the oil spill.[6] And, the GCCF continues to evaluate and pay claims. The PSC cannot legitimately contend that their efforts have or will confer a "substantial benefit" on the GCCF claimants. Nevertheless, the PSC's Motion seeks to subject all GCCF claimant payments after November 7, 2011 to the common benefit fund surcharge.

Taxing the GCCF payments also is not allowable under OPA, which created the Responsible Party's fund to operate extra-judicially. The Fund as managed by GCCF is not a party to these proceedings, and under OPA, the Fund operates without judicial management.[7]

---

[5] http://www.gulfcoastclaimsfacility.com/GCCF_Overall_Status_Report.pdf

[6] *Id.*

[7] 33 USC 2713 and 33 USC 2705(a).

Nor does the Court have jurisdiction to order contributions from parties who are not before it. *See, In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-I*, 953 F.2d 162, 166-67 (4th Cir. 1992) (MDL court does not have jurisdiction over non parties). *See also Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) (court "had not even a semblance of jurisdiction" to order non-parties to contribute to a common benefit fund). Thus, the PSC's request cannot be granted by the Court.

## VI. CONCLUSION

The PSC's Motion to Establish Account and Reserve for Litigation Expenses should be denied. If a fund is created at all, it should be a voluntary fund, like the fund created by Judge Fallon in the Chinese Drywall MDL, allowing plaintiffs' counsel to set aside a portion of their settlement proceeds into the registry of the court.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A.<br>    dbeck@brsfirm.com<br>Joe W. Redden, Jr.<br>    jredden@brsfirm.com<br>David W. Jones<br>    djones@brsfirm.com<br>Geoffrey Gannaway<br>    ggannaway@brsfirm.com<br>BECK, REDDEN & SECREST, L.L.P.<br>One Houston Center<br>1221 McKinney, Suite 4500<br>Houston, TX 77010-2010<br>713-951-3700<br>713-951-3720 (fax) | */s/ Phillip A. Wittmann*<br>Phillip A. Wittmann, 13625<br>    pwittman@stonepigman.com<br>Carmelite M. Bertaut, 3054<br>    cbertaut@stonepigman.com<br>Keith B. Hall, 24444<br>    khall@stonepigman.com<br>Jared A. Davidson, 32419<br>    jdavidson@stonepigman.com<br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana 70130<br>504-581-3200<br>504-581-3361 (fax)<br><br>**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION** |

1075806v.2

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Cameron International Corporation's Opposition to Motion to Establish Account and Reserve for Litigation Expenses has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve (Transaction ID 40882027) in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 21st day of November, 2011.

                                                       */s/ Phillip A. Wittmann*
                                                       Phillip A. Wittmann

1075806v.2