UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>Relates to: *All Cases*<br><br>(Including No. 10-2771) | * MDL NO. 2179<br>*<br>*<br>* SECTION J<br>*<br>* JUDGE BARBIER<br>*<br>* MAG. JUDGE SHUSHAN |

**REPLY BRIEF
IN FURTHER SUPPORT OF THE PSC's MOTION TO
ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES**

The Plaintiffs' Steering Committee, by and through Plaintiffs' Liaison Counsel, and on behalf of all Common Benefit Attorneys, respectfully submits the following Reply Brief in further support of the PSC's Motion to Establish Account and Reserve for Litigation Expenses:

**MAY IT PLEASE THE COURT:**

In response to the various Oppositions and other Responses to the instant Motion, the PSC believes it would be helpful to make it clear that: **(i)** The Proposed Order, if granted, would not result in a "shifting" of fees to the defendants; **(ii)** The Proposed Order, if granted, would only apply to settlements, judgments or other payments made after November 7, 2011; **(iii)** The Proposed Order is not intended to apply to judgments or settlements between and among Defendants; and **(iv)** The Court is not asked to determine that a four percent (4%) or six percent (6%) or any other common benefit fee is owed with respect to any settlement, judgment or other payment at this time.[1]

---

[1] *See* Proposed ORDER [Doc 4507-2].

934310.1                                -1-

**Objections that the Common Benefit Work Performed May Not Benefit Certain Claimants or Litigants Are Premature at This Time**

While the Plaintiff Steering Committee disagrees with the notion that the Common Benefit Work performed does not, directly and/or indirectly, benefit all claims settled or tried after November 7, 2011, such an inquiry is premature at this time. As noted:

> …the PSC does *not* seek a common benefit cost and/or fee award of 6%, nor suggest that six percent (6%) will be an appropriate award for their work and/or cost contributions at the end of the day.
>
> ….**an appropriate award may be less (or more) than six percent (6%), and could conceivably vary, in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances**….
>
> A determination as to the propriety, source, appropriate amount and allocation of any common benefit fee and/or cost reimbursement award (if any), should be reserved … for another day.[2]

It is respectfully suggested that such determination should be made based upon an evidentiary record, in light of all facts and circumstances surrounding the ultimate judgments, settlements or other payments at issue, and not in a vacuum, based on little more than unsupported assumptions, assertions or self-motivated protestations.

**The Proposed Order Does Not "Shift" Attorneys Fees to Defendants**

While the defendants might ultimately be responsible to Plaintiffs for attorneys' fees under one or more fee-shifting provisions, the Proposed Order does not compel the defendants to fund the hold-back reserve fund over and above the plaintiff's recovery. Rather, the Order, as proposed, affords the parties the flexibility to negotiate a resolution whereby either the defendant agrees to fund the reserve over and above the settlement amount, or the entire reserve is "held

---

[2] MOTION [Doc 4507] ¶¶ VII, VIII and XI (emphasis supplied).

back" out of the settlement amount - or where the reserve is funded on a shared basis. Nothing in the Order, as proposed, would *require* a defendant to pay attorneys' fees.[3]

### The Proposed Order Is Not Intended to Apply to Settlements Between and Among the Defendants

The Proposed Order is not intended to apply to judgments, settlements or other payments between and among BP, Transocean, Cameron, Halliburton, Weatherford, M1-Swaco, Anadarko or the other Defendants.

### The Hold-Back Order, As Currently Presented, Would Only Apply to Settlements, Judgments or Other Payments Occurring After November 7, 2011

While even some of the Oppositions suggest that the PSC and other Common Benefit Attorneys are likely entitled to at least some common benefit fee with respect to the approximately Six Billion Dollars already paid out by the GCCF, (and while reserving any rights to same), the Proposed Order, as currently presented, would only apply to judgments, settlements or other payments occurring after November 7, 2011.

While it is possible that some payments are still being made on a "mechanical" or "strict liability" basis under the OPA scheme, the Responsible Party has had eighteen (18) months to evaluate and recognize OPA claims.

Particularly given the broad GCCF Release, the Court's initial rulings on issues such as the availability of punitive damages under General Maritime Law and the viability of so-called "Moratorium" claims (heretofore not recognized by the GCCF), and the impending February

---

[3] To be sure: The PSC will, of course, attempt to negotiate settlement with one or more Defendants wherein the defendants agree to pay common benefit fees (and/or other attorneys' fees) over and above the settlement corpus, as part of the terms of the negotiated settlement. In the event, however, that Defendants are not willing to voluntarily fund the reserve out of their own pockets, the reserve (absent a final judgment requiring Defendants to pay some or all attorneys' fees) would be "held back" out of the judgment, settlement or other payment to the plaintiff.

2012 trial date, it is reasonable to assume that GCCF settlements at this point are at least as much a function of litigation risk as they are a function of voluntarily compliance with OPA.

Nor can it credibly be argued that the efforts of PSC and other Common Benefit Attorneys have not benefited persons and businesses (and in many cases their attorneys) prosecuting GCCF claims.  Among other things, the PSC and other Common Benefit Attorneys:

- Challenged ambiguities in and other problems with the initial BP Claims Process;

- Ensured that BP Claims Process and GCCF forms and information would be provided in Spanish, Cambodian and Vietnamese;

- Ensured, both pre-GCCF and within the GCCF, that payments to Vessel of Opportunity and other Clean-Up Workers would not be used as a set-off against, nor release of, claims for economic loss or other OPA claims;

- Met with Feinberg and others at the GCCF on numerous occasions, to make the claims process and methodologies more fair;

- Pursued motions and orders to assure fairness and accuracy in the communications provided by Feinberg and the GCCF to *pro se* litigants and represented parties;

- Developed and provided legal, scientific and economic information to be used in claims presentation and negotiations;

- Developed and confronted Feinberg and GCCF with legal, scientific and economic information;

- Participated in numerous community outreach and *pro bono* projects to educate claimants and attorneys regarding the GCCF claims process and assisting them with their claims;

- Pushed for OPA compliance;

- Pushed for the payment of interim claims;

- Challenged the scope and effect of the GCCF releases;

- Investigated, uncovered, documented, confronted the GCCF, and otherwise presented to the public, claimants and the Court delays, denials, inconsistencies, lack of transparency, and other individual and systemic problems or abuses within the GCCF;

- Participated in efforts with the U.S. Department of Justice and the States to audit the GCCF;

- Provided a mechanism for, notice to, and assistance to both represented parties and *pro se* litigants with respect to the Short Forms, in order to preserve their rights in the event that they could not, and/or do not, gain complete relief within the GCCF; and,

- Exerted an enormous litigation pressure, risk, leverage and incentive for BP, through the GCCF, to try to settle its liabilities, in advance of trial.

It would not be fair, it is respectfully submitted, for the plaintiffs who acted responsibly to preserve their rights before the Monition Date to bear the entire common benefit fee burden, (if any), while those who did not file in the MDL, but receive the same benefits, shoulder none of the responsibility.

Nor would it be fair to allow plaintiffs' attorneys, who are relying on the PSC and other Common Benefit Attorneys to develop the case and prepare it for trial, to pocket the entire attorney fee for themselves, by settling their clients' cases with Feinberg through the GCCF on the eve of trial.

## Conclusion

For these reasons, and for the reasons set forth in the original PSC STATUS REPORT AND MEMORANDUM IN SUPPORT OF MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES, the Motion should be granted.

This 22nd day of November, 2011.

Respectfully submitted,

|  |  |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No. 11511 |
| **HERMAN HERMAN KATZ & COTLAR LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |

| | |
|---|---|
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel* | *Plaintiffs' Liaison Counsel* |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Reply Brief will be filed into the record *via* the Court's ECF electronic filing system and will be served on all counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 22nd day of November, 2011.

/s/ Stephen J. Herman and James Parkerson Roy