UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION: J |
| Applies to: *All Cases.* | * * | JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN RESPONSE TO MOTION TO DISQUALIFY

MAY IT PLEASE THE COURT:

> *"Each lawyer [] must surely advocate his client's position vigorously, but only if it is truth which the client seeks to advance. The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end. It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit."[1]*

It is with this principle in mind that CSI Technologies, Fred Sabins and Michael Viator submit this memorandum in response to the Motion to Disqualify filed by Halliburton Energy Services, Inc. ("HESI"). HESI's Motion crosses the line between zealous advocacy and lack of candor. And in so doing, HESI's Motion impugns the character of undersigned counsel, Mr. Sabins and Mr. Viator. This memorandum is submitted to set the record straight.

---

[1]   *United States v. Shaffer Equip. Co*., 11 F.3d 450, 457-58 (4th Cir. 1993)

This Court previously granted HESI's request to depose its former employee, Michael Viator, to ascertain whether Mr. Viator had disclosed confidential information about his work at HESI, and in particular his work related to the Macondo blowout, to anyone at CSI Technologies. In that deposition, Mr. Viator was unequivocal:

> Q. Okay. And you told Mr. Godwin, and I think Mr. Chen as well, that you consider all of your work at Halliburton to be confidential; is that correct?
>
> A. Yes.
>
> Q. And have you disclosed any of the information you consider to be confidential to any employee of CSI?
>
> A. No.
>
> Q. Have you used any confidential information in performing any job duty at CSI?
>
> A. Confidential information? No.[2]

Notwithstanding this testimony, and without any supporting evidence, HESI has filed a Motion to Disqualify in which it asserts boldly that Mr. Viator "revealed confidential information and assisted BP in formulating its claims against HESI in this litigation."[3] HESI further accuses Mr. Viator of intentionally copying and removing HESI files when he left. As set forth below, HESI's assertions are false and misleading on all counts.

### (A)  Mr. Viator did not "reveal confidential information".

As the testimony quoted above demonstrates, Mr. Viator testified unambiguously that he has not disclosed any information about his work at HESI to anyone at CSI. This testimony was consistent with the affidavit previously submitted to the court by Mr Viator, in which he stated:

> 5.   Other than a general disclosure that I performed work for Halliburton related to the Deepwater Horizon oil spill, I have not discussed the work I performed for Halliburton related to the Deepwater Horizon oil spill with any

---

[2]  Viator Deposition at p. 115, lines 6-17.
[3]  HESI Motion at p. 1.

employee or representative of CSI Technologies or with any employee or representative of BP or any attorney for BP.

HESI's counsel questioned Mr. Viator extensively about the "general disclosure" referenced in his affidavit. And contrary to HESI's assertion that Mr. Viator testified that he "revealed confidential information," Mr. Viator's testimony confirmed exactly what he said in his affidavit – that he made a general disclosure that he had performed work for Halliburton related to the Deepwater Horizon oil spill:

> Q. Okay. My question was: In the first interview, when you first interviewed with Mr. Sabins and others from CSI, did you tell them then that you had been involved as a member of the investigative team under the direction of Richard had been a member of Halliburton's investigative team concerning the events leading up to the Macondo Well blowout? Is that correct?
>
> A. I did not tell them I was part of that investigative team. I did notify them that I was involved in part of the investigation.
>
> Q. Okay. What part of the investigation did you tell them in the interview you were involved in?
>
> A. Most I told them was I did some postjob analysis and was on the relief well plans, the bottom kill.
>
> Q. And what did you tell them the services were that you provided regarding the postjob analysis?
>
> A. I just --
>
> Q. And by "them," I mean Mr. Sabins and others in the interview.
>
> A. I told CSI that I was just involved in the investigation. I did not go any farther.
>
> Q. Okay. And -- did you tell -- did you say there during the interview that you had performed any OptiSim simulations along with Mr. Nate Chaisson and/or others –
>
> A. I told them –
>
> Q. Vargo?
>
> A. Yes. In the first interview, I did tell them that I was involved in the investigation and involved on the rig.

> Q. Okay. And did you tell -- strike that. Did you say in that first interview -- maybe the only one, but certainly the first one, did you tell Mr. Sabins and others there on behalf of CSI that you were working under the direction -- on the investigative team working under the direction of Mr. Richard Vargo?
>
> A. No. I did not give any names.
>
> Q. Okay. Were you asked there in the first interview how long you had been a member of the investigative team at Halliburton?
>
> A. No, sir.
>
> Q. Okay. But you tell us you did make it clear to Mr. Sabins and others in that interview that you had worked at Halliburton on events -- on matters related to postincident matters concerning the Macondo Well, correct?
>
> A. Yes, I did clarify that to them.
>
> Q. Okay. And are you telling us here that you did, in the interview, state there to Mr. Sabins and others in the interview that you -- concerning the Macondo Well?
>
> A. I did tell them I was involved in simulations. I did not specify what simulations.
>
> Q. Okay. And did you tell them how many simulations you had been involved in while you were at Halliburton pertaining to the Macondo Well?
>
> A. No, I did not.[4]

Thus, while Mr. Viator advised that he was "was involved in some simulations," he did not specify what kind of simulations (or even how many) he was involved in. The mere fact that Halliburton performed post-job simulations is <u>not</u> confidential information. Indeed, the record in this case reflects that the parties have hotly contested the extent to which documents related to post-incident modeling done by Halliburton must be produced. *See, e.g.* Rec. Doc. 3959 (in which Halliburton advises the Court that "HESI has assured BP that HESI has produced or will produce any documents related to testing or modeling that was not done at the direction of counsel ('Non-Privileged Post-Incident Activities')."

---

[4] Viator deposition at p. 49, line 21 to p. 52, line 8.

HESI goes further in its violation of the "duty not to misrepresent the evidence in argument before the court,"[5] by stating that after this general disclosure was made, "Mr. Sabins dismissed any concerns over the misuse of confidential information."[6] Mr. Viator's testimony on this point was quite the opposite:

> Q. And when you began -- before you started work at CSI, did Mr. Sabins give you any sort of statement about using or not using confidential work information that you had in your work at CSI?
>
> MR. GODWIN: Object to form.
>
> A. I did notify him that I worked on the Macondo project. He also notified me at that time that they were involved in litigation, that we should not discuss anything involving Macondo while I was at CSI.
>
> Q. (BY MR. CHEN) And did you follow that instruction?
>
> A. Yes, I did.[7]

In sum, although HESI's Motion repeatedly accuses Mr. Viator of revealing confidential information, and Mr. Sabins of callously misusing that information, there is no evidence to support these attacks on the professional reputations of Mr. Viator and Mr. Sabins.

### (B) Mr. Viator did not "assist BP in formulating its claims and defenses against HESI."

#### 1. Mr. Viator's literature review was (as previously disclosed) a book report on published articles in scientific journals.

In the affidavit Mr. Viator previously submitted to the Court, Mr. Viator testified as follows:

> 6. I am aware that employees of CSI Technologies have performed certain work for BP in connection with the Deepwater Horizon oil spill litigation. I have not participated in that work except as described in paragraph 7 below.

---

[5] *In re Disciplinary Action Curl*, 803 F.2d 1004, 1005-06 (9th Cir. 1986) *overruled on other grounds by Partington v. Gedan,* 923 F.2d 686 (9th Cir. 1991).
[6] HESI Memorandum at p. 1.
[7] Viator deposition at p. 108, line 19 to p. 109, line 6.

> 7. During the period from September 19, 2011 through October 4, 2011, I performed a review of works published in scientific journals at the request of Fred Sabins. The literature related to pressure effects on cement slurries. Based on my review, I prepared a written summary of the various published works that I reviewed.[8]

In his deposition, Mr. Viator was also questioned about this topic. But, as with the issue of disclosure of confidential information, the assertions made in HESI's Motion bear no resemblance to Mr. Viator's testimony.

HESI asserts that Mr. Viator "assisted BP in formulating its claims against HESI in this litigation." HESI explains that this assistance was, in fact, Mr. Viator's literature review: "On November 2, 2010, HESI took Viator's deposition and discovered that he had also revealed confidential information to CSI related to compressive strength of foam cement, and went as far as performing 'an expert review' directly related to a key issue in this case — compressive strength for foam cement."[9] Thus, HESI accuses Mr. Viator and undersigned counsel of misrepresenting the nature of Mr. Viator's previously-disclosed literature review.

At the outset, we note that the literature reviewed by Mr. Viator related *not* to foam cements, as HESI says, but to Portland cement in general:

> Q. Where it talks about that the literature related to pressure effects, what does that mean to you?
>
> A. The actual slur- -- subject that I was referencing was the pressure effects on compressive strength development of Portland cement.[10]

More importantly, HESI's contention that the literature review involved the misuse of HESI information is directly contrary to Mr. Viator's testimony:

---

[8] Viator Affidavit at ¶ 6-7. Undersigned counsel also submits herewith the information on which Mr. Viator's affidavit was based.
[9] HESI Memorandum at p. 1, 5.
[10] Viator deposition at p. 60, lines 18-24.

> Q. All right. In connection with the literature review, can you just describe in a little more detail what you did to perform that literature review?
>
> A. I actually gathered the SPE papers and other scientific journals, reviewed the paperwork to see if it did pertain to compressive strengths on Portland cement, and I summarized, as in a book report, of what those -- those journals were.
>
> Q. So you reviewed the papers, correct?
>
> A Yes.
>
> Q. And then you summarized the contents of those papers?
>
> A. Yes. I did summarize into a -- tried to get a one-paragraph summary of the journals, each journal.
>
> Q. And did you use any information from Halliburton that you considered to be confidential in performing that project?
>
> A. No.[11]

In sum, there is no support for HESI's statement that Mr. Viator revealed confidential information in connection with his literature review.

## 2.   Mr. Viator was not assigned to perform modeling for CSI.

At the hearing before this Court regarding HESI's request to depose Mr. Viator, undersigned counsel accurately summarized the facts giving rise to Halliburton's request as follows:

> Mr. Viator, as Mr. Godwin said, left Halliburton I believe in March, and joined CSI about four weeks later as a research engineer. And he has had no involvement in CSI's work for BP, with the exception of some scientific journal research that he did as background, you know, published research, that he was asked to do during that time period in his affidavit.
>
> He was an employee at CSI, left the company, and his name was put in on this list to go to the vault. He's never been to the vault, he's never reviewed any Halliburton documents while at CSI, but his name got put on that list. Which immediately raised a concern on the part of Halliburton, which they immediately expressed. And which we acknowledged was a concern that they had. And so he

---

[11]  Viator deposition at p. 113, line 20 to p. 114, line 14.

will not be participating in any visit to the vault. He will not be performing any work. And he hasn't in the past performed any work.[12]

Consistent with this description, Mr. Viator testified as follows:

> Q. Okay. Did anybody ask you -- before your name was put on the list of authorized personnel for accessing Halliburton's vault at the Iron Mountain facility, did anybody ask you if they could list you as a person to go in there?
>
> A. Yes, I was asked.
>
> Q. And who asked you if you could go in?
>
> A. I believe it was Mr. Larry Waters that asked if I would be willing to work on the project.
>
> Q. Okay. And you told him yes?
>
> A. I told him that I'm willing to work on it, but we have to get -- we have to get approval that I am able to work on it.[13]

And Mr. Viator further testified that he learned subsequently that he would not be going to the Iron Mountain facility.[14]

It is difficult to conceive of how the foregoing facts ended up serving as the basis of HESI's accusation that "CSI tried to cover up the true extent of Viator's participation in this litigation" by submitting an affidavit that "fails to mention his assignment to the CSI modeling team."[15]  CSI certainly did not cover up anything.  Viator's sole connection to any modeling team is that he was put on a list of individuals that might go to the Iron Mountain facility – it was his inclusion on the list that prompted HESI's request to depose Mr. Viator, and undersigned counsel candidly addressed his inclusion on the list at the hearing.  In short, Mr. Viator has performed no work related to this litigation while at CSI other than the literature review

---

[12]  Transcript of Status Conference held before Magistrate Shushan, 10/14/11 at p. 56, line 19 to p. 57, line 8.
[13]  Viator deposition at p. 100, line 24 to p.101, line 13.
[14]  Viator deposition at p. 99, lines 17-18 ("And I received word at, I believe about five days later, that I was denied access.").
[15]  HSEI Memorandum at pp. 5-6.

previously disclosed. HESI's suggestion to the contrary is wholly unsupported by the evidence, and its charge that CSI and undersigned counsel have been anything less than candid with the Court is unwarranted.

**(C)** **Mr. Viator did not intentionally remove HESI files.**

Finally, HESI's Motion states: "Prior to leaving HESI, Viator transferred confidential electronic files that he utilized as part of the internal expert team, including simulations, onto an external thumb drive, which he still has in his possession."[16] This statement is misleading, and HESI knows it. During his testimony, Mr. Viator recalled that he might have a personal thumb drive and that, in addition to personal files such as his resume, the thumb drive may have some files on it that were saved to the thumb drive in the normal course of his employment of HESI. As the following exchange demonstrates, HESI's counsel attempted to recharacterize Mr. Viator's testimony as an intentional theft of HESI files, but Mr. Viator made clear that this was incorrect:

> Q. (BY MR. GODWIN) Yeah. You did tell us that when you left the company, that you copied some of Halliburton's information onto a thumb drive, did you not?
>
> A. Not when I left. It was while I was working there that information was copied to and from the computer to the thumb drive.
>
> \* \* \*
>
> Q. Okay. Why did you not leave that thumb drive there at Halliburton when you left?
>
> A. That is actually -- the one that I have that may have information is a personal thumb drive. I have documents from when I was in college, resumes, pictures, things like that.[17]

---

[16] HESI Memorandum at p. 3.
[17] Viator deposition at p. 73, lines 6-12; p. 77, lines 16-21.

In addition, Mr. Viator testified unequivocally that he has not allowed any person to have access to that thumb drive since leaving Halliburton.[18]  Counsel for HESI suggested at the deposition that Mr. Viator should have deleted any files related to HESI from his personal thumb drive when he left, and we agree that this should be done.[19]  But the facts related to the thumb drive simply do not warrant the charge that Mr. Viator intentionally took files from HESI.

### Conclusion

Notwithstanding the duty to serve as a zealous advocate, attorneys have an obligation to be truthful and candid.  This obligation includes a prohibition on "shading" statements so they appear to be true, but are in fact false.  As outlined above, HESI's Motion does not provide an accurate account of the evidence, and it assaults the character and professionalism of CSI, Mr. Sabins, Mr. Viator, and undersigned counsel.  As such, the Motion should be denied.  And in the event this Court desires it, Mr. Sabins and Mr. Viator would willingly to appear before the Court to respond to any questions the Court may have.

Respectfully submitted,

  /s/Loretta G. Mince
Loretta G. Mince, 25796
FISHMAN HAYGOOD PHELPS
  WALMSLEY   WILLIS   &   SWANSON,
  L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
lmince@fishmanhaygood.com

Attorney for CSI Technologies, Inc.

---

[18]  Viator deposition, p. 78, lines 13-16.
[19]  To accomplish this, undersigned counsel suggests that a list of all files on the thumb drive be provided to HESI, through its counsel, and that HESI be permitted to identify which files should be deleted.

**Error! Unknown document property name.**

**CERTIFICATEOF SERVICE**

I hereby certify that on November 23, 2011, I electronically filed the foregoing Memorandum with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

_____/s/Loretta G. Mince_____