UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION: J JUDGE BARBIER |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * * * * * | MAGISTRATE JUDGE SHUSHAN |

************************************************************************

**BP'S OPPOSITION TO HALLIBURTON ENERGY SERVICES, INC.'S
MOTION TO DISQUALIFY MICHAEL VIATOR, FRED SABINS, AND
CSI TECHNOLOGIES, INC. AND TO STRIKE EXPERT OPINIONS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 6

I.   MR. VIATOR SHOULD NOT BE DISQUALIFIED UNDER THE TWO-PART
     TEST IN KOCH. ........................................................................................................ 8

     A.   Halliburton Has Not Met Its Burden of Establishing that It Had a
          Confidential Relationship with Mr. Viator. ................................................... 8

     B.   Halliburton Has Not Met Its Burden of Establishing that Confidential or
          Privileged Information Was Disclosed to Mr. Viator. .................................. 9

II.  EVEN IF MR. VIATOR WERE DISQUALIFIED, HIS PRIOR EMPLOYMENT
     WITH HALLIBURTON SHOULD NOT DISQUALIFY MR. SABINS AND
     CSI. ........................................................................................................................ 11

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AstraZeneca Pharm., LP v. Teva Pharm. USA, Inc.*,
No. 05-5333, 2007 WL 4292384 (D.N.J. Dec. 4, 2007) ........................................................ 10

*BP Amoco Chem. Co. v. Flint Hills Resources, LLC*,
500 F. Supp. 2d 957 (N.D. Ill. 2007) ................................................ 7, 8, 10, 12, 13

*English Feedlot, Inc. v. Norden Lab., Inc.*,
833 F. Supp. 1498 (D. Colo. 1993) ................................................................ 12, 14

*Excel Jet, Ltd. v. United States*,
Nos. 07-cv-02181 & 08-cv-01218,
2009 WL 1194936 (D. Colo. May 1, 2009) ........................................................ 6

*Fox v. Taylor Diving & Salvage Co.*,
694 F.2d 1349 (5th Cir. 1983) ........................................................................... 11

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*,
202 F.R.D. 426 (E.D. Pa. 2001) ................................................................ 7, 13, 15

*Hewlett-Packard Co. v. EMC Corp.*,
330 F. Supp. 2d 1087 (N.D. Cal. 2004) ................................................................ 8, 9

*High Tech Comms., Inc. v. Panasonic Co.*,
No. 94-1477, 1995 WL 83614 (E.D. La. Feb. 24, 1995) ........................................ 11

*Koch Refining Co. v. Jennifer L. Boudreaux M/V*,
85 F.3d 1178 (5th Cir. 1996) ........................................ 6, 7, 8, 9, 10, 11, 17

*Mayer v. Dell*,
139 F.R.D. 1 (D.D.C. 1991) ................................................................................. 10

*Nikkal Indus. Ltd. v. Salton, Inc.*,
689 F. Supp. 187 (S.D.N.Y. 1988) ................................................................. 10, 11

*Paul v. Rawlings Sporting Goods Co.*,
123 F.R.D. 271 (S.D. Ohio 1988) ......................................................................... 10

*Shields v. Sturm, Ruger & Co.*,
864 F.2d 379 (5th Cir. 1989) ............................................................................... 11

*Stencel v. Fairchild Corp.*,
174 F. Supp. 2d 1080 (C.D. Cal. 2001) ........................................................ 7, 8, 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Viskase Corp. v. W.R. Grace & Co.-Conn.,*
   No. 90 C 7515, 1992 WL 13679 (N.D. Ill. Jan. 24, 1992) ........................................................ 17

*Wang Labs., Inc. v. Toshiba Corp.,*
   762 F. Supp. 1246 (E.D. Va. 1991) ......................................................................................... 6

*Yelton v. PHI, Inc.,*
   Nos. 09-3144 & 09-4197,
   2011 WL 2294392 (E.D. La. June 8, 2011) ............................................................................. 8

BP Exploration & Production Inc. and BP America Production Co. (collectively, "BP") respectfully submit this opposition to Halliburton Energy Services, Inc.'s ("Halliburton's" or "HESI's") Motion to Disqualify Mr. Michael Viator, Mr. Fred Sabins, and CSI Technologies, Inc. and to Strike Expert Opinions.

## INTRODUCTION

Fred Sabins is one of the world's leading experts in oil field cementing and his firm, CSI Technologies, Inc. ("CSI"), is one of only a handful of independent cementing laboratories in the industry. BP retained Mr. Sabins and CSI in August of 2010 as consulting experts for litigation related to the *Deepwater Horizon* oil spill. Michael Viator is a former Halliburton employee who left Halliburton's employment in March of 2011. In April of 2011, CSI hired Mr. Viator to work in its cementing operations. ████████████████████████████████████ ████████████████████████████████████████████████ In its motion to disqualify Mr. Sabins, Halliburton claims that Mr. Viator improperly communicated confidential information relating to his post-incident litigation-related work to Mr. Sabins.

Halliburton's motion is replete with material mischaracterizations of the evidence and testimony. █████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████ The following table illustrates Halliburton's blatant mischaracterization of Mr. Viator's deposition testimony:



| Halliburton's Characterization of Mr. Viator's Testimony | Mr. Viator's Actual Sworn Deposition Testimony |
|---|---|
| "HESI recently learned that Viator, after switching sides, revealed confidential information to Sabins and CSI as they assisted BP in formulating its claims and defenses against HESI."<br><br>Doc. 4595-1 at 1. | Ex. A (Viator Dep.) at 108:2-9; 15-18. |
| "Viator testified that he informed Sabins of his prior work for HESI, but that Sabins dismissed any concerns over misuse of confidential information."<br><br>*Id.* at 1. | Viator Dep. at 108:19-109:6. |



| Halliburton's Characterization of Mr. Viator's Testimony | Mr. Viator's Actual Sworn Deposition Testimony |
|---|---|
| "On November 2, 2010, HESI took Viator's deposition and discovered that he had also revealed confidential information to CSI related to compressive strength of foam cement, and went as far as performing 'an expert review' directly related to a key issue in this case—compressive strength for foam cement."<br><br>Doc. 4595-1 at 5. | <br>Viator Dep. at 113:20-114:3, 114:11-14. |
| "Viator's second task for CSI was to perform the same modeling work for BP that he had performed for HESI while working on its internal expert team."<br><br>*Id.* | *Id.* at 43:17-24. |

3

These are just selected examples of the numerous and persistent misrepresentations of the record in Halliburton's memorandum.  Put simply, Halliburton cannot point to any facts or testimony that would warrant the unusual and extraordinary step of disqualifying Mr. Sabins or CSI from this litigation.  Instead, Halliburton resorts to distortions of facts and testimony, and unsupported innuendo to argue in support of an unfounded motion.  Litigation tactics of this kind should be discouraged and Halliburton's motion should be denied as utterly unmeritorious.

## BACKGROUND

BP retained Mr. Sabins, CSI's president, as an expert consultant in this matter in August of 2010.



On March 25, 2011, before Mr. Viator's employment at CSI, BP served its first set of document requests on Halliburton, requesting, among other things, Halliburton's OptiCem files and an executable copy of its OptiCem software.   Ex. C (BP's First Set of Requests for Production to Halliburton) at No. 14 ("Please produce an executable copy of, a source code copy of and manuals for each version of the OptiCem program used by Jesse Gagliano to run models for the Macondo well.").  On May 23, 2011, BP followed up with Halliburton on nine categories of missing discovery, including access to the OptiCem program.  Rec. Doc. 4595-11 (Ex. J) at 2. Specifically, BP offered to accept a 30(b)(6) deposition of a witness knowledgeable in OptiCem in lieu of the OptiCem program if Halliburton refused to produce the software. *Id.*

In  September  of  2011,  BP  and  Halliburton  agreed  that  BP  experts  could  access Halliburton's OptiCem program and files at an escrow company.  According to the agreement,

5

BP was to provide a list of individuals who might visit the site to use the software. BP inadvertently placed Mr. Viator's name on a list of potential visitors ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

## ARGUMENT

Halliburton's motion to disqualify should be denied for two independent reasons. *First and foremost*, Halliburton cannot show that it has an objectively reasonable basis for requesting disqualification of Mr. Viator (and thus there can be no imputed disqualification of Mr. Sabins and CSI). Even if BP had retained Mr. Viator as its expert (which it has not), the Fifth Circuit has explained that an expert witness who has a previous relationship with an opposing party may be disqualified *only if* a two-part test is satisfied: (1) the party seeking disqualification (here, Halliburton) has an objectively reasonable basis for believing that it had a confidential relationship with the expert; and, (2) the party seeking disqualification actually disclosed confidential or privileged information to the expert. *Koch Refining Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991).[1]

---

[1] A "bright-line" rule controls in some circumstances, but not here. The "bright-line" rule for disqualification applies only where the parties do not dispute that a consultant was previously retained as an expert by the adverse party in the same litigation and later "clearly switched sides." *Koch*, 85 F.3d at 1181; *Wang Labs.*, 762 F. Supp. at 1248 (noting that in cases where "the parties dispute whether the earlier retention and passage of confidential information occurred . . . courts should undertake a two-step inquiry"). ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████  Courts have held that lawyers "bear a burden to make clear to consultants that retention and a confidential relationship are desired and intended." *Wang Labs.*, 762 F. Supp. at 1248; *see also Excel Jet, Ltd. v. United States*, Nos. 07-cv-02181 & 08-cv-01218, 2009 WL 1194936, at *3 (D. Colo. May 1, 2009).████████████████████████████████████████████████████████

The moving party bears the "heavy burden" of proving that both elements of the test are satisfied; disqualification is inappropriate if either inquiry yields a negative response. *BP Amoco Chem. Co. v. Flint Hills Resources, LLC*, 500 F. Supp. 2d 957, 960 (N.D. Ill. 2007) (citing *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 429 (E.D. Pa. 2001)); *see also Koch*, 85 F.3d at 1181. "Only if the answers to both questions are affirmative should the witness be disqualified." *Koch*, 85 F.3d at 1181. Neither question may be answered in the affirmative here.[2]

In this regard, it bears emphasizing that disqualification of an expert is an extreme measure that courts should undertake only "when absolutely necessary." *Flint Hills*, 500 F. Supp. 2d at 960. Accordingly, the moving party cannot satisfy its burden of proof with "merely conclusory or *ipse dixit* assertions." *Greene, Tweed*, 202 F.R.D. at 429.

*Second*, even assuming that Halliburton had any basis for seeking the disqualification of Mr. Viator, it would have no basis for disqualifying Mr. Sabins and CSI. Simply put, the imputation rules that may apply in the context of attorney disqualification are inapplicable to experts. Instead, courts are extremely reluctant to disqualify an expert's entire firm where one member of the firm possesses the other side's confidential information. *See, e.g., Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080 (C.D. Cal. 2001); *Flint Hills*, 500 F. Supp. 2d at 960-61.

In *Stencel*, a case cited by Halliburton, the court found that it did not make sense to disqualify an entire firm solely because one expert in the firm (who was not working on the case at issue) had a prior confidential relationship with the moving party. *Stencel*, 174 F. Supp. 2d. at

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
The "bright-line" rule of disqualification is therefore inapplicable here.

---

[2] Some courts also consider a third element: the policy objectives that would be furthered by permitting the individual to continue serving as an expert. *Koch*, 85 F.3d at 1181 (citing *English Feedlot, Inc. v. Norden Lab., Inc.*, 833 F. Supp. 1498, 1504-05 (D. Colo. 1993) (noting that the main policy objectives militating against disqualification are "ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling")). This factor illustrates even more clearly why Halliburton's motion is meritless. Leaving aside Halliburton's misrepresentations of the factual record and deposition transcripts, there is no plausible public policy reason for disallowing the introduction of Mr. Sabins' expert testimony in this case.

1087. In declining to apply the lawyer/law firm imputed-knowledge doctrine to expert witnesses, the court noted that lawyers and experts "perform a very different function in litigation." *Id.* at 1085. Experts are "beholden to the truth first, and the party second, if at all," while attorneys are "charged with selflessly serving their client's interests." *Id.* at 1085-86.

## I.   MR. VIATOR SHOULD NOT BE DISQUALIFIED UNDER THE TWO-PART TEST IN *KOCH*.

Under the two-part test set forth by the Fifth Circuit in *Koch*, "only if the answers to both questions are affirmative should the witness be disqualified." 85 F.3d at 1181. Here, Halliburton has not established that either question would be answered in the affirmative for Mr. Viator, let alone met its "heavy burden" of proving that ***both elements*** of the *Koch* test are satisfied. *See Flint Hills*, 500 F. Supp. 2d at 960.

### A.   Halliburton Has Not Met Its Burden of Establishing that It Had a Confidential Relationship with Mr. Viator.

Mr. Viator's prior employment with Halliburton, without more, is insufficient to establish a confidential relationship. To meet the first prong under *Koch*, a confidential relationship must consist of "a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Koch*, 85 F.3d at 1182 (internal citations omitted); *see also Yelton v. PHI, Inc.*, Nos. 09-3144 & 09-4197, 2011 WL 2294392, at *3 (E.D. La. June 8, 2011).

Thus, in evaluating whether there was an objectively reasonable confidential relationship, a court will consider, among other factors, whether the expert was retained by the moving party to assist in the litigation, whether work product was discussed or documents were provided to the expert, whether alleged confidential communications were from expert to party or vice-versa, the number of meetings between the expert and the attorneys, and whether a formal confidentiality agreement was signed. *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004). Even a confidentiality agreement does not necessarily render a relationship

"confidential" such that disqualification is warranted. *Id.* at 1094 ("Disqualification thus may not be warranted even if the expert witness has signed a confidentiality agreement with the adversary.").



**B.      Halliburton Has Not Met Its Burden of Establishing that Confidential or Privileged Information Was Disclosed to Mr. Viator.**

Halliburton also fails to establish that confidential or privileged information was actually disclosed to Mr. Viator.   In *Koch*, the Fifth Circuit provided a detailed definition of what "confidential information" means within the framework for expert disqualification.   Specifically, confidential information includes "discussion of the [moving party's] strategies in litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and

weaknesses of each side, the role of each of [the party's] witnesses to be hired, and anticipated defenses." 85 F.3d at 1182 (quoting *Mayer v. Dell*, 139 F.R.D. 1, 4 (D.D.C. 1991)); *see also Flint Hills*, 500 F. Supp. 2 at 961-62 (finding that an expert's work for retaining party was not confidential or privileged because it "was not in anticipation of this litigation" and expert did not consult with moving party's counsel in performing work); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 279 (S.D. Ohio 1988) (refusing to disqualify expert where there was "lack of communication of any information of either particular significance or which can be readily identified as either attorney work product or within the scope of the attorney-client privilege"). The Fifth Circuit in *Koch* also distinguished purely technical information from information pertaining to litigation strategy, stating that "purely technical information is not confidential." *Koch*, 85 F.3d at 1182 (quoting *Nikkal Indus. Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191-92 (S.D.N.Y. 1988)).

This is precisely the type of "purely technical information" that is not confidential (or privileged) under the Fifth Circuit's framework. *Koch*, 85 F.3d at 1182; *see also Nikkal Indus.*, 689 F. Supp. at 191-92 ("Communication based upon technical information as opposed to legal advice is not considered privileged.").



In short, Halliburton's assertion that Mr. Viator "worked with Halliburton's defense counsel to prepare defense strategies" (HESI Br. at 12) has no basis in the factual record.

*See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (work product waived when attorney discloses information to court voluntarily or makes no objection when it is offered); *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) (same); *High Tech Comms., Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 83614, at *5 (E.D. La. Feb. 24, 1995) (work product waived when party asserting privilege substantially increases likelihood that opposing party would come into possession of work product). Further, this type of analysis is exactly the type of "purely technical information" that is not confidential (or privileged) under the Fifth Circuit's framework. *Koch*, 85 F.3d at 1182; *see also Nikkal Indus.*, 689 F. Supp. at 191-92.

In the final analysis, Halliburton has satisfied neither prong under the *Koch* test.

## II.   EVEN IF MR. VIATOR WERE DISQUALIFIED, HIS PRIOR EMPLOYMENT WITH HALLIBURTON SHOULD NOT DISQUALIFY MR. SABINS AND CSI.

Halliburton's motion to disqualify fails on a second, independent ground:  In the case of

11

experts, an alleged conflict of interest for one individual cannot be imputed to the individual's employer (or other employees) as a matter of course.   To the contrary, courts rarely take the extreme measure of disqualifying an expert's entire firm even when the individual in question has confidential information.  *See, e.g., Stencel*, 174 F. Supp. 2d at 1085-87; *Flint Hills*, 500 F. Supp. 2d at 960-61.  Doing so would cut against the dual policy objectives of ensuring that parties have access to experts with specialized knowledge and allowing experts to pursue their professional callings. *See English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1504-05 (D. Colo. 1993).

Halliburton itself acknowledges that "there are very few cases" that support its argument that disqualification of an entire firm is warranted because of the minimal involvement of just one individual at that firm.  HESI Br. at 14.  Halliburton fails to cite *a single case* that imputes an expert's alleged conflict to his firm. ███████████████████████████
███████████████████████████████████████████████████

███████████Despite the lack of any legal support, Halliburton seeks the extreme measure of disqualifying BP's testifying expert and his entire firm three months before trial. █████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████
███████████████████████████████

███████████████████████████████████████████
███████████████████
███████████████████████████████████
█████████████████████████████████████████
███████████

12



Viator Dep. at 108:3-18.

*Id.* at 108:19-109:6.

But it is well-settled that conclusory claims of this nature, coupled with an utter lack of support in the evidentiary record, cannot bring about the disqualification of an entire firm. *See Flint Hills*, 500 F. Supp. 2d at 960 (the moving party bears the "heavy burden" of proving that both elements of the test are satisfied); *Greene, Tweed*, 202 F.R.D. at 429 (the moving party cannot satisfy its

13

burden of proof with "mere conclusory or *ipse dixit* assertions."); *English Feedlot*, 833 F. Supp. at 1504-05 (the main policy objectives militating against disqualification are "ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling")).



---

[3] Halliburton's contention that "BP's abrupt focus on accessing HESI's modeling software was occasioned by Viator's disclosure of HESI's work product, his post-incident modeling," HESI Br. at 8, is completely lacking in factual support



Again, Halliburton ignores the fact that Mr. Sabins is one of the world's leading experts on cement, including foam cement.  Indeed, the formula utilized by Halliburton and the industry for understanding the compressive strength of foam cement is derived from Mr. Sabins' research, for which he has a patent.  *See* U.S. Patent No. 6,345,535 (Apparatus and Method for Estimating the Compressive Strength of Foam Cement).

Viator Dep. at 63:2-15.



Halliburton's assertions are pure speculation.

Viator Dep. at 60:25-61:14.

*Accord*

16

*Viskase Corp. v. W.R. Grace & Co.-Conn.*, No. 90 C 7515, 1992 WL 13679, at *2 (N.D. Ill. Jan. 24, 1992) (denying motion to disqualify in part because testimony would be based on expert's general knowledge and experience).[4]



## CONCLUSION

Halliburton's motion is unsupported, contrary to the evidentiary record, and replete with speculation. For these reasons, and those explained in this memorandum, Halliburton's motion to disqualify Mr. Viator, Mr. Sabins, and CSI should be denied. For the same reasons, Halliburton brief raises no good-faith basis for additional discovery, and its request, in the alternative, for such discovery should be denied.

Dated: November 23, 2011

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504 -581-7979
Facsimile:  504 -556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985

**Attorneys for BP Exploration & Production
Company and BP America Production Company**

18

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23th day of November, 2011.

/s/ Don K. Haycraft
Don K. Haycraft