# Exhibit 1

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

November 11, 2011

**By Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Litigation Counsel for E-Discovery
Environmental & Natural Resources Division
U.S. Department of Justice
RFK Main Building
950 Pennsylvania Ave., NW
Washington DC, 20530

Re: **MDL No. 2179 — "Event" or Phase 1 Discovery Issues**

Dear Sarah:

This letter addresses several outstanding Phase 1 discovery issues. Its timing and our need for an early response are prompted by the government's decision to decline to extend on a mutual basis the motion to compel deadline as between the US and BP for Phase 1 discovery, which is November 15, 2011.

Although the Phase 1 issues discussed below now have the greatest urgency, this letter also touches Phase 2 issues in those instances where Phase 1 and Phase 2 issues cannot reasonably be separated. If we cannot reach agreement on resolving the Phase 1 issues before the November 15 deadline, BP reserves the right, as appropriate, to file motions practice on those issues that remain unresolved.

1. **Privilege Logs**

One issue that is not particularly amenable to separation between litigation phases involves the US's 10 privilege logs. BP has two concerns with the US's privilege logs. *First*, the US has withheld numerous documents on the basis of coding for which the US has provided no description. Please advise us if the government will now define the following designations and the specific statutory, regulatory, or other support for such designations as a basis for declining to produce responsive documents: DP, LE, JT, PA, PII, and NR.

*Second*, there are insufficient descriptions for some entries labeled as being subject to work-product protection or an attorney-client privilege. As you know, to assert work-product

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 2


protection, a privilege log description must, among other things, explain that the document has been prepared in anticipation of litigation. And to adequately assert an attorney-client privilege, the description, must among other things, provide the circumstances giving rise to the privilege.

Our review of US privilege logs indicates those logs fall short of these requirements for the documents listed below, each of which is designated "WP" or "AC." For example, the United States has labeled many documents as protected by the "attorney-client" privilege by merely stating in conclusory fashion the "email chain contains attorney-client communication." *See, e.g.*, IMS214-17489 - IMS214-17491. But this type of description does not explain why the "attorney-client communication" is privileged. Accordingly, we ask that you please provide a more detailed description of the bases for your assertions that the following documents are protected by the work-product doctrine and/or attorney-client privilege.

IMS207-3582 - IMS207-3591
IMS207-5744 - IMS207-5744
IMS207-11017 - IMS207-11018
IMS207-13321 - IMS207-13323
IMS207-14151 - IMS207-14153
IMS207-15571 - IMS207-15571
IMS214-3948 - IMS214-3956
IMS214-11361 - IMS214-11361
IMS214-14125 - IMS214-14127
IMS214-14843 - IMS214-14845
IMS214-14859 - IMS214-14861
IMS214-16388 - IMS214-16391
IMS214-17489 - IMS214-17491
IMS214-33706 - IMS214-33708
IMS214-34736 - IMS214-34739
IMS214-34751 - IMS214-34754
IMS217-2065 - IMS217-2066
IMS217-2374 - IMS217-2376
IMS217-3695 - IMS217-3699
IMS217-4183 - IMS217-4184

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 3

### 2. Interrogatory Responses

Having carefully reviewed the US's responses to BP's interrogatories on Phase 1 topics, we believe the responses are deficient in the following respects.

*First*, the US responded to most interrogatories served by BP by directing BP to documents produced in response to various Requests for Production (RFPs). For example, the US's response to BP's second interrogatory: "[t]he United States directs BP to the documents produced in response to BP's request for production of documents, particularly Requests for Production 1-7, 12, and 41-62." For reasons explained below, this response and those like it are insufficient as a matter of law.

Although Federal Rule of Civil Procedure 33 permits a party to produce documents in response to an interrogatory "if the burden of ascertaining the answer will be substantially the same for either party," — a point we dispute for some responses — the Rule crucially requires the responding party to "specify[] the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 30(d)(1).

Here, however, the interrogatory responses provided by the United States furnish no information that would permit BP to locate the precise documents that the US has "specified." Likewise, the document productions BP has received from the United States are not segregated according to, and do not otherwise identify, which documents respond to which RFPs, thereby making the associated interrogatory response the effective equivalent of "see our production" — a clearly inadequate response under any reading of Rule 33(d). Moreover, even if the US had provided all Bates numbers for all documents the US has produced as a response to RFPS 1-7, 12, and 41-62, this too would be insufficiently specific to comply with Rule 33(d). Whichever way the issue is viewed, it is clear that the US should supplement its responses so they point BP to some reasonably defined universe of documents (from among the millions of documents produced to date) that the US believes are responsive.

We note in this regard that in almost all instances BP's own Rule 33(d) responses to the US's interrogatories identify documents by Bates numbers, and, even in those few instances where they do not, BP had agreed to search for and produce new, responsive documents. (*See* BPXP's Objections and Resps. to the US's First Set of Interrogs. (July 25, 2011).) Against this backdrop, we ask that the United States please provide revised interrogatory responses that exhibit a similar degree of specificity to the responses BP has provided to the United States.

**KIRKLAND & ELLIS LLP**

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 4

*Second*, the US's response to BP's Interrogatory 21 directs BP to review all "the deposition transcripts and documents exchanged in discovery in this action and the numerous press articles and websites available to the public." This response is similarly inadequate under Federal Rule of Civil Procedure 33(d).

*Third*, the US's response to BP's sixth interrogatory is also inadequate. That response states, *in toto* and in circular fashion, "The United States hereby incorporates by reference its objections to Interrogatory 6." (US's Initial Response to BPXP's First Set of Discovery Requests at 108.) BP assumes this response was a result of typographical error. If so, please correct the error, so that BP may fully evaluate the adequacy of your response. Additionally, the US's objections to interrogatories 7 and 8 also incorporate this circular objection to interrogatory 6. Please correct those responses as well.

*Fourth*, the US's present responses to Interrogatories 3, 4, and 16 all state that the US "will provide its specific response and any additional further relevant objections on or before July 31, 2011." The US has not yet provided such specific responses or further objections. Please do so immediately.

3.   **Custodians**

Pursuant to the Order Regarding Deadlines for the United States' Production of Documents, dated October 19, 2011 ("Order"), the United States agreed to make the following correction, among others, to the load files provided for all productions, "replacement metadata for its past productions which will identify the custodian (or centralized filing system organization and location) from whom the documents were collected, rather than the collecting agent or interim custodian." (Order, Item 5 at p. 4.) We acknowledge that the United States agreed to produce these corrected load files to BP by November 15, 2011, and we have not yet reached that date. (*Id.*)

In spite of the corrective measures contained within the Order, the United States continues to produce documents that lack accurate identifying metadata. We have reviewed the United States' cumulative productions to date and, based on this review and focusing on associated metadata, we have found numerous "unidentifiable" individuals listed as document custodians. By "unidentifiable" we mean to say that these custodians' names do not appear either (i) on any internal US custodial lists or (ii) on the list appearing in Attachment 4, *Custodial Files Being Searched*, to the United States' Status Report, dated September 6, 2011.

In particular, through US production GOV066-002, we have counted over 120 unidentifiable individuals presented by the United States as document custodians. (*See*

**KIRKLAND & ELLIS LLP**

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 5

Attachment 1.) Of these 120 unidentifiable custodians, at least 15 were submitted in productions between the date of the Order and October 31, 2011. Please identify the custodians on Attachment 1 and, if any custodians are collecting agents, please identify such capacity and the underlying custodial data files produced.

### 4. Autonomy, or Zantaz, Server

Another issue that affects both Phase 1 and Phase 2 is the Department of Interior's Autonomy, or Zantaz, archive server. You stated previously that discovery of the Zantaz server would produce duplicative documents at great time and expense. You agreed, however, to let us confirm just how duplicative the Zantaz archive truly is, and, to further that inquiry, you provided to our third-party contractor, eDox USA, the documents for four custodians both from the current collection site and from the Zantaz archive. We greatly appreciate your cooperation in this regard.

Pursuant to our confidentiality agreement, eDox USA has now completed a comparison between the sizes of the two document sets for each custodian using both appropriate search terms and appropriate privilege terms. The two charts below summarize the results of this comparison, showing in each instance the relevant number of "hits," with duplicates removed and before adding in family members:

| Custodian | Total Responsive Hits | | | |
|---|---|---|---|---|
| | | | | |
| Neal, Eric | 148 | 774 | 626 | 423% |
| Neal, Robert | 36 | 658 | 622 | 1728% |
| Patton, Frank | 8,605 | 15,234 | 6,629 | 77% |
| Saucier, Mike | 24,595 | 41,425 | 16,830 | 68% |
| **Total Counts** | 33,384 | 58,091 | 24,707 | 74% |

**KIRKLAND & ELLIS LLP**

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 6

| Custodian | Total Responsive Hits LESS Privilege Hits | | | |
|---|---|---|---|---|
| | Government Collected Data* | ZANTAZ Archive Data | # of Additional Hits in ZANTAZ | % of Additional Hits in ZANTAZ |
| Neal, Eric | 84 | 442 | 358 | 426% |
| Neal, Robert | 21 | 334 | 313 | 1490% |
| Patton, Frank | 3,800 | 7,256 | 3,456 | 91% |
| Saucier, Mike | 11,316 | 17,248 | 5,932 | 52% |
| **Total Counts** | 15,221 | 25,280 | **10,059** | **66%** |

\* Please note that the "Government Collected Data" set was de-duplicated so that the comparison to the single-instance (*i.e.* de-duplicated) "ZANTAZ Archive Data" would be accurately portrayed.

As you can see, there is a significant difference between the total number of responsive hits under the current collection methods and the Zantaz archive — a total of 24,707 documents or 74% more documents. Moreover, even when documents that hit on privilege terms are extracted out, this difference remains quite significant — 10,059 documents or 66% more documents located on the Zantaz server than in the US's current collection.

(We would note here that a large percentage of responsive hits are being screened out by privilege terms; indeed, over half of the responsive documents would be held back as potentially privileged under either collection regime. We reserve the right to address this issue separately, as appropriate.)

In light of the above statistics, any previously raised concerns about cost and time are outweighed by the number of non-dupliactive, responsive, non-privileged documents that can be accessed only via the Zantaz server — 10,059 at minimum for just these four custodians. Accordingly, BP respectfully requests that the United States begin immediately collecting from the Zantaz archive for all already agreed-upon custodians.

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
November 11, 2011
Page 7

### 5. Status of Phase 1 Discovery

Finally, BP requests that the US inform BP whether it has completed its document productions related to Phase 1.

\* \* \*

As always, we look forward to working collaboratively and successfully with you to address these important issues in the document production process. With that in view, might we schedule a call early Monday morning to discuss these issues?

Sincerely,

Robert R. Gasaway

Enclosures

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Allison B. Rumsey
Joel M. Gross
Barry E. Fields, P.C.
Maureen F. Browne
J. Andrew Langan, P.C.
Mark J. Nomellini
Stuart A.C. Drake
Joseph A. Eisert
Don K. Haycraft
Michael A. Petrino