# Exhibit 2

| From: | Himmelhoch, Sarah (ENRD) [Sarah.Himmelhoch@usdoj.gov] |
|---|---|
| Sent: | Monday, November 14, 2011 11:13 AM |
| To: | Gasaway, Robert R. |
| Cc: | Nomellini, Mark J.; Eisert, Joseph A.; Pixton, Allan; Mariani, Tom (ENRD); Mike.Underhill@usdoj.gov; O'Rourke, Steve (ENRD); Mike.Underhill@usdoj.gov; Frost, Peter (CIV); Flynn, Stephen (CIV) |
| Subject: | Deepwater Horizon:  Response to Veteran's Day Missive |

ROB –

I write in response to your latest letter regarding Phase I discovery, raising new issues never before identified by BP to the United States. I will try to respond as thoroughly as possible given BP's deadline of tomorrow for Motions to Compel relating to Phase I.

**Privilege Logs** -- The United States will be supplementing its privilege logs on November 30, 2011 as part of its compliance with Docket No. 4364. I believe these supplements will provide all the information necessary to justify the privilege (or result in the production of the documents and removal of the documents from the privilege log). Accordingly, the United States will agree to extend BP'! s deadline for motions to compel with respect to the November 30, 2011 privilege log until December 30, 2011. In the meantime, here is an explanation of the privilege codes you identified:

DP – Deliberative Process Privilege
LE – Law Enforcement Privilege
JT – Joint Investigation Team materials protected by § 6308
PA, PII – Privacy Act/Personally Identifying Information (note these entries will be removed based upon BP's advice that redactions necessary to comply with the Privacy Act need not be logged)
NR – Not relevant (note these documents should not have been on the logs, as they are not relevant or responsive to the discovery requests)

**Interrogatory Responses** -- BP raises for the first time its contention that the United States' interrogatory responses are insufficient.

**Interrogatory 2** – Interrogatory 2 seeks the identity of "every United States officer, employee or other person associated with the United States . . . who participated in any review, inspection, evaluation, approval, or disapproval of any submission relating to the Transocean's Deepwater Horizon rig." BP contends that the United States' response to Interrogatory 2 is insufficient because it does not identify the responsive documents. Such a claim is inaccurate. The United States has identified for BP the responses to document requests which contain the responsive information and has provided BP with the very search terms used to obtain those documents. BP is in the! same position as the United States to conduct those searches and identify the responsive documents. Moreover, BP conducted a Rule 30(b)(6) deposition seeking "Participation in the inspection, audit, evaluation of, or any rig-visits on Transocean's *Deepwater Horizon* rig, including the blow-out
preventer on the *Deepwater Horizon* ." BP has conducted that Rule 30(b)(6) and any deficiencies in the United States' interrogatory responses on the same topic could and should have been addressed before or during that deposition. At this time, the United States relies upon its responses to this interrogatory.

**Interrogatory 21** – BP's interrogatory on this request is very broad – seeking the identification of "each person who has or may have knowledge or information relating to the all legations in the United States' Complaint." In response to such a broad discovery request, it is both proportional and appropriate for the United States to provide a broad response to BP that identifies the categories of documents that contain information about people who "may have knowledge" of

"information relating to" the allegations in the United States' Complaint. The United States relies upon its response to this Interrogatory.

Interrogatories 6-8 – You are correct that these responses contain a typographical error. The cross-reference in response to these interrogatories is to our response to Interrogatory 5.

Interrogatories 3, 4, and 16 – I direct you to the United States' Third Response to BP's First Set of Discovery Requests ser ved June 20, 2011, Lexis Nexi No. 38249297, which contains a response to each of these interrogatories.

**Custodians --** BP accuses the United States of continuing "metadata issues" related to individuals who are "unidentifiable custodians."

I fail to believe that some of these individuals are "unidentifiable." For instance, among those listed on the "unidentified custodians" are Rory R. Davis, Alan Huffman, Richard Heenan, and Glen Benge, experts designated to testify on behalf of the United States. Given that the United States was required to produce his "considered" and "relied" upon documents by dates certain, it is far from inappropriate for these names to appear as a custodian on files produced by the United State! s. Similarly, Greg Garrison has been identified to BP and even deposed by the parties.

Further, some of the individuals on your list are individuals for whom custodial productions were made as part of response to the Rule 30(b)(6) notices served on the United States. These individuals included Steve Bertone, Miles Randall Ezell, and Christopher Ryan Haire. Another one of the "unidentified custodians" is Steve Sutton, one of the United States' Rule 30(b)(6) designees, and therefore an individual known to BP.

In addition, some of the individuals are simply people who were not identified on our custodian list but when the National Laboratories conducted their inquiries and searches were identified as custodians of responsive information. These individuals include Charlie Brandt, Terry Jor! dan, David Keese, George Richards, William Rogers, Mehrdad Shahnam, Erik Shuster, Katrina Waters. Similarly, several of the DOI custodians are individuals identified as having responsive information after the custodian list was finalized.

With respect to the remaining custodians, we have reviewed all custodians contained in the corrected load files being prepared pursuant to Docket No. 4364 and taken steps to ensure that the individuals identified are in fact actual custodians and not collecting agents. We ask BP to wait until the corrected load files have been produced in accordance with the agreed upon schedule, review that list of custodians, and determine if there are truly individuals whose identity is unfamiliar. If you identify any such individuals, we can discuss those individuals at that time.

I **Autonomy-Zantaz Archive** -- BP demands that the United States begin "immediately collecting from the Zantaz Archive" for all already agreed-upon custodians. The simple numbers may or may not be accurate and are not the end of the story in any case. The question is whether the marginal utility of these "additional documents" is significant enough to warrant the expense and delay associated with production of these emails. Moreover, we note that de-duplication between Zantaz and Outlook has proven difficult for us because of anomalies in the date fields and, therefore, we cannot rely on the numbers you cite without additional information. For all these reasons, we decline to do commence searches in the Zantaz archive without significant additional information. We request that BP provide any report it received from its consultant and all communications with its consultant so that we can determine the accuracy of the analysis. Further, we ask that the consultant provide the United States with a copy of .psts and Zantaz folders containing the responsive emails LESS privilege hits, so that we can be sure the parties are all speaking about the same categories of documents. We will agr! ee to extend BP's deadline for a motion to compel with respect to this issue until December 15, 2011 to allow the parties time to discuss this issue.

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice

P.O. Box 7611
Washington, DC 20044-7611
202-514-0180 (phone)

# Exhibit 3



**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

**THE UNITED STATES' INITIAL RESPONSE TO**
**BP EXPLORATION & PRODUCTION INC.'S FIRST SET OF**
**DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA**

The United States of America by its undersigned Counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submits the following objections and initial responses to BP Exploration & Production Inc.'s First Set of Discovery Requests to the United States of America.

**GENERAL OBJECTIONS**

The United States asserts the following objections to BP Exploration & Production Inc.'s ("BP") first set of discovery requests. The United States has endeavored to identify the most relevant of these general objections in response to each individual request. Nonetheless, these general objections are incorporated by reference into each specific response set forth by the United States and are neither waived nor limited by the specific responses.

1.      The United States objects to the extent BP's requests call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

2.      The United States objects to BP's requests as premature to the extent they seek information scheduled for disclosure at a later time (such as witness lists and expert reports).

3.      The United States objects to the extent BP's requests are premature because they seek immediate discovery of documents or information not relevant to the issues to be tried in the first phase trial, scheduled to commence in February 2012.  The United States will search for and produce information related to post-April 22, 2010 events other than Flow Rate and Source Control after discovery necessary for the February 2012 trial has been completed.

4.      The United States objects to the extent that BP's requests call for the production of electronically stored information in any manner other than that required under Federal Rule of Civil Procedure 34, the Rules and Orders of this Court (including specifically Pretrial Order 16), and ongoing negotiations and discussions among counsel.

5.      The United States objects to the extent BP's requests seek discovery from sources that are not reasonably accessible, including specifically the categories of information identified in Paragraph 14 of Pretrial Order 22 (regardless of whether or not the United States has preserved those categories of information pursuant to the other provisions of Pretrial Order 22).

6.      The United States objects to the extent the BP's requests seek information or documents protected by the attorney-client privilege, the work-product doctrine, the deliberative process or executive privilege, the law enforcement privilege, the joint prosecution or common interest privilege, or any other applicable privilege, exemption, or immunity. The United States will identify specific documents withheld on these grounds to the extent and in the manner required by Pre-Trial Order 14 and such further orders of the Court.  The United States anticipates seeking an extension of the time to provide privilege logs for at least its initial responses to these requests and will rely upon any agreements reached among counsel.  The United States incorporates its forthcoming privilege logs and all related information into this

general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from disclosure.

7.      The United States objects to BP's requests to the extent they seek documents or information protected from disclosure pursuant to the law enforcement privilege or Federal Rule of Criminal Procedure 6(e). The United States will not identify such information on privilege logs. The United States has specifically excluded from its searches for responsive information any information that constitutes the work product of any criminal investigations conducted with respect to the *Deepwater Horizon* incident. The United States has also excluded any ongoing investigations by any Inspectors General being conducted with respect to the *Deepwater Horizon* incident.

8.      The United States objects to the extent BP's requests seek information protected from disclosure by 46 U.S.C. § 6308.

9.      The United States objects to the extent BP's requests seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not reasonably calculated to lead to the discovery of admissible evidence by operation of Federal Rule of Evidence 408 and that discovery of such information would be unduly burdensome because it would deter the voluntary resolution of disputes in conflict with Federal Rule of Civil Procedure 1. The United States has circulated a proposed order protecting such communications from disclosure and has not searched for and will not produce settlement communications or documents discussing settlement or potential settlement of disputes.

10.     The United States objects to the extent BP's requests call for information or documents not within the United States' possession, custody, or control. All responses are made

on behalf of the United States only and are limited to information or documents within the United States' possession, custody, or control.

11.     The United States objects to the extent BP's requests are unduly burdensome, oppressive, or overbroad because they are unlimited as to time period.

12.     The United States objects to the extent BP's requests are unduly burdensome, oppressive, or overbroad because they seek information not relevant to the claims or defenses in this action and not reasonably calculated to lead to the discovery of information admissible in this action.

13.     The United States objects to the extent BP's requests seek information where the probative value of such information is far outweighed by the expense and burden of searching for and producing such information.

14.     The United States objects to the extent BP's requests call for information that is not relevant because it reflects the internal discussions and non-public, unofficial statements of employees of the United States who are not authorized to speak on behalf of the United States with respect to a policy or decision. *See United States v. Farley,* 11 F.3d 1385, 1390-91 (7th Cir. 1993).

15.     The United States objects to the extent BP's requests seek the disclosure of information or documents that would violate any statutory protection given to information submitted to the United States, including protections afforded personally identifying information (such as the Privacy Act, 5 U.S.C. § 552a) and health and medical information (such as the Health Insurance Portability and Accountability Act ("HIPAA")).

16.     The United States objects to the extent BP's requests seek information or documents that contain proprietary business information or trade secrets submitted to the United

States by third parties the disclosure of which would violate any statutory or regulatory protection given to such information (such as the Magnuson-Stevens Act, 16 U.S.C. § 1881a, the Outer Continental Shelf Lands Act, 43 U.S.C. § 1352, the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S. C. § 9604(e)(7), the Clean Water Act, 33 U.S.C. § 1318(b), the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11042, and the Confidential Information Protection and Statistical Efficiency Act, 44 U.S.C. § 3501 note).

17.     The United States objects to the extent BP's requests seek the disclosure of information regarding sensitive cultural and environmental resources that is protected by statute or regulation (such as the National Parks Omnibus Management Act, the Archaeological Resources Protection Act, the National Historic Preservation Act and its Amendments, 7 U.S.C. § 1502(c), 7 U.S.C. § 2018(c), 7 U.S.C. § 2276, 7 U.S.C. § 8791(b), 21 U.S.C. § 331(j), 30 U.S.C. § 26(c), and all applicable regulations or orders).

18.     The United States objects to the extent BP's requests seek documents already in the possession of BP.

19.     The United States objects to the extent BP's requests seek documents that are publicly available or otherwise equally available to BP.

20.     The United States objects to the extent BP's requests are duplicative of prior requests made by BP or other parties.

21.     The United States objects to the extent BP's requests seek information from the United States that is equally or more available from other parties in this action, including but not limited to internal records of other defendants or parties in this action.

## GENERAL RESPONSES

The following responses are applicable to all of the United States' responses to BP's first set of discovery requests upon the United States and are incorporated into each specific response below:

1.      To the extent the United States responds that it will produce documents in response to the requests, the United States will produce such documents on a rolling basis with such reasonable speed as the United States can locate and process them, without sacrificing critical operations of the responding agency or a meaningful review for responsiveness, privilege, and confidentiality.

2.      To the extent that the United States indicates it will respond to a request for production, it will conduct a good faith search consistent with the proposed search terms and custodians or collections as set forth in its response.  The United States is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of its hundreds of thousands employees and agents where any such items are not included within the results of a reasonable search as described in the specific response.

3.      The United States' decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the interrogatories or document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of the United States' general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

4.      The United States reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

5.      For purposes of conducting a privilege review of electronically stored information, the United States will rely in part upon searches and other automated categorization of potentially privileged information such that certain electronically stored information will be produced without having been reviewed by an attorney.  For instance, the United States will conduct searches to identify communications involving counsel or referencing discussions of counsel and other documents containing words or phrases signifying potentially privileged status.  Electronically stored information that does not fall within these searches may be produced without further review, depending on the information provided by the originating agency.  Given the large volume of information responsive to BP's requests, the United States believes reliance upon such electronic search tools constitutes reasonable efforts to protect privileged information within the meaning of Pretrial Order 14 and Federal Rule of Civil Procedure 26(b)(5)(B).  The United States expressly states its intent to rely upon the claw-back procedures of Pretrial Order 14 as necessary and appropriate.

6.      The search terms and custodian lists included in this response are provided for further discussion, testing and negotiation with BP.  The United States reserves the right to alter and adjust the search terms and methods once it has had an opportunity to test the search terms within the individual information technology systems.

7.     The custodians identified on the attached lists are those that were identified through reasonable good faith inquiry in the time available.  Several agencies continue to work to identify custodians for particular requests and the United States will supplement these lists as soon as practicable.  The United States reserves the right to add or delete custodians as its inquiry continues and additional information is obtained.

## BP'S DEFINITIONS AND INSTRUCTIONS

1.     "You," "your," and "yours," whether or not capitalized, shall mean the United States.

**OBJECTION:**  The United States hereby incorporates by reference its objection to the definition of United States (BP's Definition no. 2).

2.     "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities, and any person who possesses information or documents within the custody and control of these departments, agencies, and instrumentalities.

**OBJECTION:**  The United States hereby incorporates by reference its General Objection 12 (Overbroad as to Subject Matter).  The inclusion of all federal agencies, regardless of their level of involvement in the events giving rise to this action, would require the search of hundreds of separate information technology systems and offices with little concomitant benefit. The United States will respond by searching the central and custodial files as identified in each specific response.

3.     "Person," whether or not capitalized, shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, government agency or subdivision or consultant, or any other organization.

4.     "BOEM" shall mean the Bureau of Ocean Energy Management Regulation and Enforcement (formally the Minerals Management Service) and all current or former employees, agents or representatives, or anyone acting or purporting to act for or on the BOEM's behalf for any purpose whatsoever.

**OBJECTION:** The United States hereby incorporates by reference its General

Objections 10 (Outside Possession, Custody, or Control) and 12 (Overbroad as to Subject

Matter) particularly to the extent it seeks to impose an obligation on the United States to obtain

information in the exclusive custody of former employees or individuals purporting but not

authorized to act on BOEM's behalf.

5. "Transocean" shall mean Transocean Ltd. and all of its affiliates and subsidiaries as well as all current or former employees, agents or representatives, or anyone acting or purporting to act for or on the Transocean's behalf for any purpose whatsoever.

6. "BP" means BP Exploration & Production Inc. and all of its affiliates and subsidiaries.

7. "Communication" shall mean any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

**OBJECTION:** The United States incorporates its General Objection 1 (Beyond

Requirements of FRCP/Orders) to the extent this definition seeks to require the recording or

notation of "face-to-face" conversations.

8. "Document" or "documents" shall have the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) including ESI, and includes the original and any identical or nonidentical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium

by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

**OBJECTION:** The United States hereby incorporates its General Objection 1 (Beyond Requirements of FRCP/Orders) to the extent BP seeks to require production of information that is exempt from preservation pursuant to Pre-Trial Order 22 and to the extent it seeks to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.

9.  "Identify," whether or not capitalized, when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

**OBJECTION:** The United States hereby incorporates by reference its General Objection 13 (Proportionality) as it relates to documents. The United States will identify documents by Bates number.

10.  "Including" or "includes," whether or not capitalized, shall mean "including but not limited to" or "including without limitation."

11.  "Relating to" or "related to," whether or not capitalized, when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

**OBJECTION:** The United States hereby incorporates by reference its General Objections 1 (Beyond Requirements of FRCP/Orders) and 12 (Overbroad as to Subject Matter). The United States will produce documents that contain substantive information that is either relevant to a claim or defense in this action or reasonably calculated to lead to the discovery of admissible evidence relevant to a claim or defense. To the extent this definition seeks to impose an obligation to produce additional information, the United States objects.

12.    "Complaint" shall mean the complaint filed by the United States of America on December 15, 2010, in civil action number 2:10-cv-04536 pending in the United States District Court for the Eastern District of Louisiana.

13.    "Submission," whether or not capitalized, shall mean any application, filing, or submission to the United States.

14.    "*Deepwater Horizon* Incident" and "Incident" shall mean the loss of control of the MC252 Well and the fire and explosion(s) on board, and resulting sinking of, Transocean's *Deepwater Horizon* rig, in addition to the resulting oil spill in the Gulf of Mexico.

15.    "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

16.    "Blowout," whether or not capitalized, shall mean an uncontrolled release of well fluids.

17.    "Capping Stack," whether or not capitalized, shall mean the mechanical device installed onto the *Deepwater Horizon* blowout preventer on July 10, 2010, and subsequently used to shut in the MC252 Well on July 15, 2010.

18.    "*Deepwater Horizon* blowout preventer" shall mean the blowout preventer from Transocean's *Deepwater Horizon* rig that was installed on the MC252 Well.

19.    "Kick," whether or not capitalized, shall mean the intrusion of liquid or gas into the wellbore.

20.    "Well control incident," whether or not capitalized, shall mean any kick or blowout.

21.    "Area Contingency Plan" shall have the meaning given in 40 C.F.R. § 300.5.

22.    "Area Committee" shall have the meaning given in 40 C.F.R. § 300.5.

23.    "Response Activities," whether or not capitalized, shall mean any and all activities performed to respond to the release of oil and hydrocarbons from the MC252 Well following the Incident.

**OBJECTION:** The United States objects to this definition as overly broad to the extent

it seeks to require the production of information related to activities that are not the subject of

any claim or defense in this action.  The United States also objects to this definition as premature

to the extent it seeks information relevant to Response Activities other than Emergency

Response, Source Control, or Quantification. The United States will produce documents and

information related to Response Activities other than Emergency Response, Source Control, or

Quantification after discovery necessary for the February 2012 trial has been completed.

24.    "Common Operating Picture" shall mean a common awareness of information
and data related to and among those involved in the Response Activities.

**OBJECTION:** The United States objects to this definition as vague and ambiguous.

25.    "Unified Command" shall mean the structure, organization, and team established
to oversee and manage the response to the release of oil and hydrocarbons from the MC252 Well
following the Incident.

**OBJECTION:** The United States objects to this definition as vague. The United States

will provide its proposed definition of Unified Command when responding to the requests using

this definition.

26.    "National Incident Commander" shall have the meaning given in 40 C.F.R. Part
300.

27.    "Incident Commander" shall mean the individuals within the Unified Command
responsible for management of the Response Activities, including the development of strategies
and tactics.

**OBJECTION:** The United States objects to this definition as vague. The United States

will provide its proposed definition of Unified Command when responding to the requests using

this definition.

28.    "Incident Command Post" shall mean the locations of the on-scene command and

management organizations responsible for the Response Activities.

**OBJECTION:** The United States objects to this definition as vague. The United States

will provide its proposed definition of Unified Command when responding to the requests using

this definition.

29.    "National Laboratories" shall mean the U.S. National Laboratories and
Technology Centers, whose employees assisted in the response to the oil spill.

**OBJECTION:** The United States objects to this definition to the extent it seeks to include National Laboratories not reasonably likely to have possession, custody, or control of information relevant to the claims or defenses in this action or reasonably calculated to lead to the discovery of admissible evidence relevant to the claims or defense in this action. The United States will construe this term to mean the following National Laboratories: Sandia National Laboratories, Los Alamos National Laboratory, Lawrence Livermore National Laboratory, National Energy Technology Laboratory, Oak Ridge National Laboratory, Pacific Northwest National Laboratory, and Lawrence Berkeley National Laboratory.

30.     "Science Advisors" shall mean the team of scientists selected by U.S. Secretary of Energy Steven Chu to provide advice on, and review of, source control efforts during the response to the oil spill from the MC252 Well, excluding scientists employed by the National Laboratories.

**OBJECTION:** The United States objects to this definition to the extent it seeks to include any individual other than the following: Alexander Slocum, George Cooper, Richard Garwin, Jonathan Katz, and Tom Hunter.

31.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

32.     Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

**OBJECTION:** The United States objects to this instruction for specific requests because the time frame is too broad and calls for information not relevant to the claims or defense or is unduly burdensome in that the value of the information to be collected and produced is far outweighed by the cost of such production.

33.     Produce all documents in the order in which they appear in your files. Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in this same condition.

**OBJECTION:** The United States objects to this instruction to the extent it seeks to impose obligations beyond those set forth in Pre-Trial Order 16. Electronically stored information will be produced with the metadata fields specified in Pretrial Order 16 (where those metadata fields exist). Paper documents shall be scanned and produced as required by the Order, except for paper documents collected from the Incident Command Posts and Forward Operating Bases established during the response. The scanning and processing of these huge collections of documents would be made unreasonably more expensive by replicating the parent child relationships within these scanned documents. The United States will preserve the original documents in their parent-child relationships (as they were found at the time the documents reached the documentation unit). To the extent, reasonable clarification on the relationships between documents from the Incident Command Posts and Forward Operating Bases is required, the United States will provide such clarification. In addition, the United States objects to this instruction to the extent it seeks to require the United States to re-collect and re-produce collections of documents already conducted. For instance, several of BP's requests for production seek documents collected and produced to Congress, members of the media, citizens, or other entities. The United States will produce non-privileged information from these collections in the format set forth in Pretrial Order 16 except that the United States will not go back to the original files to obtain metadata fields that were not captured at the time of the production to Congress, members of the media, citizens, or other entities.

34.     Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of any United States government employee, agent, representative, consultant, attorney, accountant, advisors, or other persons directly or indirectly connected with you or subject to your control, any government department, agency or any other government subdivision.

**OBJECTION:**  The United States objects to this instruction to the extent it seeks to impose an obligation to produce documents that the United States does not have the legal authority to obtain upon demand.  *See, e.g., Enron Corp. Savings Plan v. Hewitt Assocs., LLC,* 258 F.R.D. 149, 164 (S.D. Tex. 2009).  The United States also incorporates its objection to the definition of the "United States" into this general objection and also incorporates General Objections 6 (Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308).

35.    If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

**OBJECTION:**  The United States objects to this instruction as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The United States has made reasonable good faith efforts to preserve all potentially relevant information.  BP's discovery requests, however, are broad and call for many documents that were created long before this litigation was reasonably anticipated.  It would be unduly burdensome for the United States to identify every document that may at one time have existed and been responsive to BP's request but no longer exists and to investigate the fate of each such document.  To the extent BP identifies particular documents of material relevance to the claims or defenses in this action that the United States has not produced, the United States will respond to reasonable requests to investigate the fate of such documents.

36.    If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, please specifically set forth the privilege being asserted and any factual or legal basis for its assertion. Also set forth the date and title of the document, its subject matter generally, its author(s) and recipient(s), and its Bates number(s).

**OBJECTION:**  The United States objects to this instruction to the extent it seeks to impose obligations beyond those set forth in Pre-trial Order 14, which governs the treatment of privileged materials.  Further, the United States will seek BP's agreement to reasonable

modifications to the schedule and format of privilege log as required by Pre-trial Order 14 in light of the large quantity of information sought in these discovery requests.

37.    Each paragraph is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular request.

**OBJECTION:** The United States objects to this instruction as ambiguous.  The United States will interpret BP's discovery requests in accordance with the Federal Rules of Civil Procedure.

38.    If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

**OBJECTION:** The United States objects to this instruction to the extent it seeks to require the United States to conduct a search for information not within its possession, custody or control.

39.    Pursuant to the Federal Rules of Civil Procedure, these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

**OBJECTION:** The United States objects to this instruction as inconsistent with the requirements of Federal Rule of Civil Procedure 26(e)(1)(A), which requires supplementation of a response "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [BP] during the discovery process or in writing . . . ."  The United States will comply with the requirements of Rule 26(e)(1)(A).

## United States' Definitions

For purposes of this response, the United States uses the following definitions, in addition to those provided by BP (and modified in the United States' objections):

1.      "Source Control" shall mean efforts to control or contain the flow of hydrocarbons and other fluids from the MC252 Well at the wellhead undertaken between April 20, 2010 and September 19, 2010, such as relief well operations, cofferdam containment domes, Riser Insertion Tube Tool, "Top Kill," "Top Hat" containment system, subsea manifold containment system, three-ram capping stack system, "Static Kill" operations, and "Bottom Kill" operations.   Source Control shall not include efforts to contain or disperse hydrocarbons beyond the wellhead, such as in situ burning, application of dispersants, skimming, or placement of booms.

2.      "Quantification" shall mean efforts undertaken between April 20, 2010 and September 16, 2010 to estimate the flow of hydrocarbons from the MC252 Well as part of the Response Actions being directed by the Unified Command, such as efforts undertaken by the Flow Rate Technical Group or Secretary Chu's Science Advisors.

4.      "Event" shall mean events and information generated prior to April 20, 2010 relating to the causes of the *Deepwater Horizon* Incident as well as the efforts undertaken by the U.S. Coast Guard and other agencies assisting the Coast Guard in the rescue of personnel and fire fighting in response to the explosion and fire on the *Deepwater Horizon* extending through the date on which the rig sank, April 22, 2010 and the events that occurred on the *Deepwater Horizon* beginning on April 20, 2010.

## REQUESTS FOR PRODUCTION

### I.      Macondo Specific Document Requests

1.      All documents referring or relating to the MC252 Well created on or after January 1, 2008.

**OBJECTION:** The United States hereby incorporates by reference all of its General Objections.  Were the United States to read this request as instructed by BP, this request would

extent this request is overly broad by not limiting the request to the factual information related to the witnesses testimony (as opposed, for example, to information regarding travel arrangements or scheduling of meetings).

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

To the extent non-privileged documents related to the substance of any witnesses identified on the United States' May 1, 2011 witness list (or subsequent witness lists) have not been produced in response to prior requests for production, the United States will produce such documents as they are identified.

178.    All documents identified in the responses to the Interrogatories set forth below.

**OBJECTION:** The United States hereby incorporates by reference its objections to BP's interrogatories.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

In accordance with the objections and limitations set forth in its responses to the Interrogatories, the United States will produce non-privileged documents identified in its responses to BP's interrogatories.

<u>INTERROGATORIES</u>

1.    Please identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any review, evaluation, approval or disapproval of any submission by BP related to the MC252 Well and state that person's involvement with the MC252 Well.

**OBJECTION:** The United States incorporates by reference its General Objections 6 (Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308) because it seeks all

individuals who participated in any review of submissions, including those by attorneys working

on behalf of the United States or individuals working at the direction of counsel for purposes of

litigation. The United States also incorporates by reference its General Objection 13

(Proportionality) because the request seeks to require the United States to compile information

that it is equally available to BP. The United States further incorporates by reference its General

Objection 2 (Scheduled Disclosures) to the extent this requests seeks witness lists and expert

disclosures scheduled for disclosure pursuant to Court Orders.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 3, 12, 47-62.

2.      Please identify every United States officer, employee or other person associated
with the United States, including consultants and agents, who participated in any review,
inspection, evaluation, approval or disapproval of any submission related to or referring to
Transocean's *Deepwater Horizon* rig and state that person's involvement with Transocean's
*Deepwater Horizon* rig.

**OBJECTION:** The United States incorporates by reference its General Objections 6

(Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308) because it seeks all

individuals who participated in any review of submissions, including those by attorneys working

on behalf of the United States or individuals working at the direction of counsel for purposes of

litigation. The United States also incorporates by reference its General Objection 13

(Proportionality) because the request seeks to require the United States to compile information

that it is equally available to BP. The United States further incorporates by reference its General

Objection 2 (Scheduled Disclosures) to the extent this requests seeks witness lists and expert

disclosures scheduled for disclosure pursuant to Court Orders.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 1-7, 12, and 41-62.

3.      State whether the Application for Permit to Drill for the MC252 Well and
subsequent amendments approved by the United States in 2009 and 2010 complied with federal
law and regulation. If the answer is in the negative, (a) identify each respect in which the
Application for Permit to Drill for the MC252 Well and subsequent amendments approved by the
United States in 2009 and 2010 did not comply with federal law or regulation, and (b) identify
each document upon which the response is based.

**OBJECTION:** The United States incorporates by reference its General Objections 6

(Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308) because it seeks analyses

being conducted as part of ongoing attorney and other investigation.  The United States also

incorporates by reference its General Objection 2 (Scheduled Disclosures) to the extent it seeks

premature disclosure of expert opinion.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States will provide its specific response and any additional further relevant

objections on or before July 31, 2011.

4.      Identify with particularity any alleged variations or deviations in the casing
strings installed in the MC252 Well as compared to the casing string designs approved by the
United States in 2009 and 2010.

**OBJECTION:** The United States incorporates by reference its General Objections 6

(Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308) because it seeks analyses

being conducted as part of ongoing attorney and other investigation.  The United States also

incorporates by reference its General Objection 2 (Scheduled Disclosures) to the extent it seeks

premature disclosure of expert opinion.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States will provide its specific response and any additional further relevant

objections on or before July 31, 2011.

5.      Identify and describe in detail (including name and location of the well,
leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that utilized a
long string production casing design that the United States Government approved.

**OBJECTION:** The United States incorporates by reference its General Objections 6

(Privilege), 7 (Criminal and OIG Investigations), and 8 (JIT/6308) because it seeks all

individuals who participated in any review of submissions, including those by attorneys working

on behalf of the United States or individuals working at the direction of counsel for purposes of

litigation. The United States also incorporates by reference its General Objection 13

(Proportionality) because the request seeks to require the United States to compile information

that it is equally available to BP.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 12, 27-41, 47, 49, 52, 55-62.

6.      Identify and describe in detail (including name and location of the well,
leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that utilized a
liner or liner with a tie back production casing design that the United States Government
approved.

**OBJECTION:**  The United States hereby incorporates by reference its objections to

Interrogatory 6.

**RESPONSE:**  The United States hereby incorporates by reference its response to

Interrogatory 6.

7.     Identify and describe in detail (including name and location of the well, leaseholder, operator and spud date) each deepwater well in the Gulf of Mexico that involved a temporary abandonment procedure and provide all steps in such temporary abandonment procedure approved by the United States Government.

**OBJECTION:**  The United States hereby incorporates by reference its objections to

Interrogatory 6.

**RESPONSE:**  The United States hereby incorporates by reference its response to

Interrogatory 6.

8.     Please identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any way in any effort to predict, estimate or measure the amount of discharge from the wellhead of the MC252 Well, or in any effort to predict, estimate, characterize or measure the physical or chemical properties of any substance contained in the discharge from the MC252 Well.

**OBJECTION:**  The United States hereby incorporates by reference its objections to

Interrogatory 6.

**RESPONSE:**  Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 80-86.

9.     Please identify each person who was not a full-time employee of the United States when contacted and was contacted to assist, advise or represent the United States or the Unified Command in connection with efforts to contain the flow from the wellhead of the MC252 Well, to participate in any way in the response to the Incident, or to provide scientific or other advice related to the Incident or the response to the Incident.

US' Initial Responses to BP's First Set of Discovery Requests                              Page 108

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 6.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the documents produced in response to BP's requests for production of documents, particularly Requests for Production 67-77.

10.     For each person identified in the response to Interrogatory No. 9, state the intended role or function of that person in the participation in the response to the Incident or in providing scientific or other advice.

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 6. The United States also incorporates its General Objection 3 (Beyond Scope of First Trial) to the extent it calls for information related to Response Activities other than Emergency Response, Quantification or Source Control.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the documents produced in response to BP's requests for production of documents, particularly requests for production 67-77.

11.     Please identify each person who assisted, advised or represented the United States or the Unified Command in connection with efforts to contain the flow from the wellhead of the MC252 Well, participated in any way in the response to the Incident, or provided scientific or other advice related to the Incident or the response to the Incident, who was not an officer or enlisted person in the U.S. Coast Guard.

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 6.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 67-77.

12.     For each person identified in the response to Interrogatory No. 11, state the role or function of that person in the participation in the response or in providing scientific or other advice.

**OBJECTION:** The United States hereby incorporates by reference its objections to

Interrogatory 11.

**RESPONSE:** The United States hereby incorporates by reference its response to

Interrogatory 11.

13.     Please identify every United States officer, employee or other person associated with United States, including consultants and agents, who participated in any way in decisions or plans to approve, disapprove, limit, control or review the use of chemical dispersants in connection with the Response Activities.

**OBJECTION:** The United States hereby incorporates by reference its objections to

Interrogatory 6.

**RESPONSE:** Subject to, and without waiving the foregoing general and specific

objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the

documents produced in response to BP's requests for production of documents, particularly

Requests for Production 47, 51-62, 123-137.

14.     Please identify each person who assisted, advised or represented the United States or the Unified Command in connection the decision whether or not to proceed with the blowout preventer on blowout preventer option following the top kill attempt.

**OBJECTION:** The United States hereby incorporates by reference its objections to

Interrogatory 11.

**RESPONSE:** The United States hereby incorporates by reference its response to

Interrogatory 11.

15.    Please identify each person who participated in discussions or provided advice to the United States regarding the decision whether or not to allow BP to install and, subsequently, shut the Capping Stack.

**OBJECTION:** The United States hereby incorporates by reference its objections to

Interrogatory 11.

**RESPONSE:** The United States hereby incorporates by reference its response to

Interrogatory 11.

16.    State whether the BP Gulf of Mexico Oil Spill Response Plan approved by the United States in 2009 complied with federal law and regulation. If the answer is in the negative, (a) state each respect in which the BP Gulf of Mexico Oil Spill Response Plan approved by the United States in 2009 did not comply with federal law or regulation, and (b) identify each document upon which your negative answer is based.

**OBJECTION:** The United States hereby incorporates by reference its objections to

Interrogatory 3.

**RESPONSE:** The United States will respond to this interrogatory on or before July 31,

2011.

17.    State separately (as to the waters of the Gulf of Mexico and the shoreline of the Gulf of Mexico) the amount of the "spill" that "remains in the waters of the Gulf of Mexico and upon the adjoining shorelines of the United States," as alleged in the Complaint, and identify each document upon which your answer is based or that supports your answer.

**OBJECTION:** The United States hereby incorporates by reference its General

Objection 3 (Beyond Scope of First Trial).  The United States will respond to this interrogatory,

and provide any relevant additional objections, after discovery related to the February 2012 trial

has been completed.

18.    Describe fully the role and authority of U.S. Secretary of Energy Steven Chu, his Science Advisors, and members of the National Laboratories within the Unified Command during the effort to cap, seal, estimate the volume of, or collect hydrocarbons from the MC252 Well.

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 11.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the documents produced in response to BP's requests for production of documents, particularly Requests for Production 47, 51-62, 77 and 80-85.

19.    Identify each person you intend to call or may call as a witness in this matter and, for each person identified, state the subject of their expected testimony.

**OBJECTION:** The United States incorporates by reference its General Objections 6 (Privilege) to the extent this request calls for the disclosure of information protected by the attorney-client or law enforcement privilege or the work product doctrine including Federal Rule of Civil Procedure 26(b)(4). The United States also incorporates by reference its General Objection 2 (Scheduled Disclosures) because the Court has already established a schedule for disclosure of expert opinions for the upcoming February 2012 trial.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States will provide its witness lists in the manner and to the extent required by the Court and directs BP to the tentative witness list filed by the United States on May 9, 2010.

20.    Identify each person you have retained as an expert or consultant in this matter and, for each person identified, state: (a) the subject matter on which the expert is expected to

testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

**OBJECTION:**  The United States incorporates by reference its General Objections 6 (Privilege) to the extent this request calls for the disclosure of information protected by the attorney-client or law enforcement privilege or the work product doctrine including Federal Rule of Civil Procedure 26(b)(4).  The United States also incorporates by reference its General Objection 2 (Scheduled Disclosures) because the Court has already established a schedule for disclosure of expert opinions for the upcoming February 2012 trial.  Further, the United States incorporates by reference its General Objection 1 (Beyond Requirements of FRCP/Orders) to this request it seeks disclosures other than those required by Federal Rule of Civil Procedure 26.

**RESPONSE:**  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States will provide its expert reports in the manner and to the extent required by the Court and the Federal Rules of Civil Procedure.

21.  Identify each person who has or may have knowledge or information relating to the allegations in the United States' Complaint. For each person identified, state the subject area of knowledge.

**OBJECTION:**  The United States incorporates by reference its General Objections 6 (Privilege), 7 (Criminal and OIG Investigations) and 8 (JIT/6308).  The United States further incorporates its General Objection 12 (Overbroad as to Subject Matter) because information "relating to the allegations in the complaint" encompasses information related to the drafting of the complaint as well as the factual support for the claims in the complaint.  The United States also incorporates by reference its General Objection 2 (Scheduled Disclosures).  Further, the United States incorporates by reference its General Objections 19 (Publicly Available) and 18 (BP Already Has) because much of this information is available from the deposition transcripts

and documents exchanged in discovery, as well as from the transcripts of the Marine Board Investigation.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States directs BP to its preliminary witness list filed on May 9, 2011, as well as the preliminary witness lists of the other parties in the action and the Master List of Deponents created by the parties under the supervision of the Court. In addition, the United States directs BP to the deposition transcripts and documents exchanged in discovery in this action and the numerous press articles and websites available to the public.

## REQUESTS FOR ADMISSION

### I. BP's Permit Applications and the MC252 Well

1.    Admit that the United States Government received BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009.

**RESPONSE:** In accordance with agreement of counsel, the United States will provide its objections and response to this Request for Admission on June 7, 2011.

2.    Admit that the United States Government evaluated BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009.

**RESPONSE:** In accordance with agreement of counsel, the United States will provide its objections and response to this Request for Admission on June 7, 2011.

3.    Admit that the United States Government approved BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009.

**RESPONSE:** In accordance with agreement of counsel, the United States will provide its objections and response to this Request for Admission on June 7, 2011.

4.    Admit that the United States Government's approval of BP's Initial Exploration Plan Mississippi Canyon Block 252 OCS-G 3230, dated February 2009, was made in accordance with 30 CFR 250.233(b)(1).

# Exhibit 4



38249297
Jun 20 2011
8:26PM

**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

**UNITED STATES' INITIAL RESPONSE TO**
**BP EXPLORATION & PRODUCTION INC.'S SECOND SET OF**
**DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA**

The United States of America by its undersigned Counsel, and pursuant to Rules 26, 33,

34, and 36 of the Federal Rules of Civil Procedure, hereby submit the following objections and

initial responses to BP Exploration & Production Inc.'s Third Set of Discovery Requests to the

United States of America.

**GENERAL OBJECTIONS**

The United States hereby incorporates by reference its general objections to BP

Exploration & Production Inc.'s ("BP") first set of discovery requests.  These general objections

are incorporated by reference into the specific response set forth by the United States and are

neither waived nor limited by the specific responses.

**DEFINITIONS AND INSTRUCTIONS**

BPXP respectfully adopts and incorporates all Definitions and Instructions set forth in BP
Exploration & Production Inc.'s First Set of Discovery Requests on the United States of
America, served on all counsel on April 7, 2011.

The United States hereby incorporates by reference the objections to the definitions and

instructions set forth in the United States' Initial Response to BP's First Set of Discovery

Requests on the United States.

Additionally, if your response to any of the following Requests for Admission would differ based upon a specific Area Contingency Plan, respond separately for each Area Contingency Plan subject to the request: 129-139.

**OBJECTION**: The United States hereby incorporates by reference its General Objections 1 (Beyond Requirements of FRCP/Orders) and 3 (Beyond the Scope of the First Trial).

Furthermore, these additional terms are defined as follows:

1.     "Administrative decision-making" shall have the same meaning as contained in the Brief of the United States Regarding the Plan for the February 2012 Liability Trial, filed April 13, 2011 [Doc. 1946].

2.     "Alternative Response Tool Evaluation System" shall mean a system to evaluate conventional and non-conventional response technologies proposed by members of the general public during the response to the discharge from the MC252 Well.

3.     "Analyte(s)" shall mean a substance or chemical constituent that is the subject of chemical analysis.

4.     "Biodegradation" shall mean the chemical dissolution or breakdown of materials by bacteria or other biological means.

5.     "Branch Area Perimeter Air Sampling Program" shall mean the protocols established in connection with the Incident and Response Activities for (i) sampling background concentrations around certain branches conducting decontamination activities; and (ii) monitoring air quality during mitigation activities.

6.     "Coastal Surface Water Sampling Program" shall mean the United States Environmental Protection Agency drafted protocols for the sampling of the coastal waters for oil and dispersants, and monitoring impact on human health or aquatic life in connection with the Incident and Response Activities.

7.     "Community Air Sampling and Analysis Program" shall mean the protocols established in connection with the Incident and Response Activities for sampling air concentrations for the purpose of (i) compiling baseline data; (ii) monitoring air quality during Response Activities; and (iii) any additional monitoring in support of Response Activities.

8.     "Decontamination" shall mean the process by which oily material is removed from oil-affected equipment, vessels, and response personnel.

9.     "Detection limit levels" shall mean the air contaminant limit levels established by the United States Environmental Protection Agency and measured by using the United States Environmental Protection Agency Method Detection Limit procedure.

10.     "Dynamic Kill (SOMB) Mud Samples" shall mean the samples collected from the Halliburton/Baroid Mud Plant, in Port Fourchon, Louisiana, pursuant to the Procedure for Obtaining Dynamic Kill (SOMB) Mud.

11.     "Effective daily recovery" shall have the meaning given in 30 C.F.R. Part 254.

12.     "Environmentally sensitive areas" shall mean areas of the shore and waters that contain features (including, but not limited to, barrier islands, coastal wetlands, beaches, coral reefs, fish and bird nurseries, and estuaries) that are particularly sensitive to environmental disruption (such as but not limited to oiling), which are supposed to be identified and addressed in Area Contingency Plans pursuant to the National Contingency Plan.

13.     "Environmental impact statement" shall have the meaning given in 42 U.S.C. § 4332 and the rules and regulations promulgated thereunder, including 40 C.F.R. Part 1508.

14.     "Environmental assessment" shall have the meaning given in 42 U.S.C. § 4332 and the rules and regulations promulgated thereunder, including 40 C.F.R. Part 1508.

15.     "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

16.     "General Jones Act waiver" shall mean a waiver issued by the United States Government declaring that the requirements of the Merchant Marine Act of 1920 (also known as the Jones Act) do not apply during an emergency situation. For example, the Jones Act was waived by the Secretary of the Department of Homeland Security in 2005 during the United States Government's response to Hurricane Katrina to permit the participation of foreign vessels in the response.

17.     "Government Science Team" shall mean any and all combinations of the individuals comprising the "National Laboratories" and "Science Advisors," as those terms were defined in BP's First Set of Discovery Requests to the United States of America.

18.     "Joint Information Center" shall mean the organization or entity in Unified Command of the same name that coordinated all Unified Command press releases, statements to the press, or communications to the press.

19.     "Levels of concern" shall mean an occupational exposure limit established by federal and state law, rule, or regulation.

20.     "LMRP Cap" and "Top Hat" shall mean the mechanical device used to collect hydrocarbons from the top of the Lower Marine Riser Package up to the *Discover Enterprise* after the riser was cut off in June 2010.

21.     "National Contingency Plan" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan as set forth in 40 C.F.R. Part 300.

22.     "National Environmental Policy Act" shall mean the law codified at 42 U.S.C. § 4321 et seq.

23.     "National Institute for Occupational Safety and Health" shall mean the entity established under Section 22 of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 671.

24.     "Near-Shore Water and Sediment Sampling and Analysis Plan" shall mean the protocols established in connection with the Incident and Response Activities to guide near shore water sampling along the coast of Mississippi, Alabama, and Florida in state waters.

25.     "Occupational Exposure Limits" shall mean a generic term used to represent a pair of numbers consisting of (i) the agent concentration or intensity that is allowable (based on health effects data); and (ii) the period over which one averages workplace concentrations to evaluate whether the measured concentrations are less than the allowable limit.

26.     "One Gulf Plan" shall mean the multi-area contingency plan that serves as the initial portion of the Area Contingency Plan for several Area Committees in the Gulf of Mexico.

27.     "On-Shore Surface Water Sampling Plan" shall mean the protocols originally titled "Surface Water Sampling Plan" established in connection with the Incident and Response Activities to (i) measure effectiveness of Response Activities; (ii) facilitate public health decisions; and (iii) provide baseline samples.

28.     "Personal Breathing Zone(s)" shall mean the area identified by the National Institute for Occupational Health and the Department of Health and Human Services as close to a person's nose and mouth, within 30 cm (1 ft) of a person's nose and mouth, or simply representative of the person's exposure for the purpose of measuring atmospheric contaminants.

29.     "Permissible Exposure Limits" shall mean the regulatory limits established by the United States Occupational Safety and Health Administration on the amount or concentrations of a substance in the air as set forth in 29 C.F.R. Part 1910.

30.     "President" shall mean the elected official known as President of the United States during the time period relevant to the specific request.

31.    "RAT: Offshore Oil and Water Sampling Protocol" shall mean the protocols established in connection with the Incident and Response Activities for the collection of floating oil and water offshore.

32.    "Riser kink" shall mean the area of the riser immediately above the lower marine riser pack that was bent at an angle greater than 90 degrees.

33.    "RITT" shall mean the riser insertion tube tool used to siphon hydrocarbons from the end of the riser to the *Discover Enterprise* in May 2010.

34.    "Sediment and Water Column Sampling and Analysis Plan for Oil Fate Assessment" shall mean the protocols established in connection with the Incident and Response Activities for the sampling of submerged or entrained oil using water column fluorometry profiles, water quality measurements, chemical analysis, and toxicity studies.

35.    "Snare Sentinel Monitoring Procedure" shall mean the protocols established at the Mobile Incident Command Post to sample near shore and offshore waters for submerged and sunken oil in the water column through the use of polypropylene oleophilic absorbent materials (i.e., snare sentinels).

36.    "Submerged Oil Snare Sentinel Program" shall mean the protocols established at the Houma Incident Command Post to sample near shore and offshore waters for submerged and sunken oil in the water column through the use of passive monitoring devices made of polypropylene oleophilic absorbent materials (i.e., snare sentinels).

37.    "Targeted Beach Sediment Sampling and Assessment Plan" shall mean the protocols established at the Mobile Incident Command Post for the sampling of beach sediments identified by Shoreline Cleanup Assessment Technique (SCAT) teams as impacted by weathered oil in the states of Alabama, Florida and Mississippi.

38.    "Top Kill Mud Samples" shall mean the samples collected from the four vessels used in the Top Kill exercise pursuant to the Procedure for Obtaining "Top Kill" Mud Samples Sampling Analysis Plan.

39.    "United States Environmental Protection Agency's independent study of alternative dispersants" shall mean the United States Environmental Protection Agency's testing of eight dispersant products on the NCP Product Schedule during the response. The results of the United States Environmental Protection Agency's Phase I testing were released in reports dated June 30, 2010, and the results of Phase II testing were released in a report dated July 31, 2010. An update to the toxicity testing was released in a report dated August 31, 2010.

40.    "United States Occupational Safety and Health Administrative occupational safety standards" shall mean the standards provided in 29 C.F.R. Part 1910.

41.     "Vessels of Opportunity program" shall mean the program through which BP contracted directly with Gulf Coast vessel owners under master vessel charter agreements for use of vessels in connection with Response Activities.

42.     "Weathered crude oil" shall mean deteriorated or disintegrated crude oil that has been exposed to the weathering action of the elements (e.g., oil mousse or tarballs).

43.     "Worst case discharge" shall have the meaning given in 33 U.S.C. § 1321(a)(24) and the rules and regulations promulgated thereunder, including 30 C.F.R. Part 254.

## REQUESTS FOR PRODUCTION

179.    All documents referring or relating to the Joint Investigation conducted by the United States Coast Guard and the Bureau of Ocean Energy Management, Regulation and Enforcement into the causes of the Incident.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objections 6 (Privilege), 7 (Criminal/OIG), 12 (Overbroad as to Subject Matter), and 13

(Proportionality) because this request seeks "all documents referring or relating" to the Joint

Investigation, thereby seeking privileged information, as well as information of a purely

administrative or otherwise irrelevant nature.  The United States further incorporates by

reference its General Objection 8 (6308) because this request improperly seeks information

protected from discovery and/or disclosure pursuant to 46 U.S.C. § 6308.  The United States also

incorporates by reference its General Objections 18 (Already Have), 19 (Publicly Available), and

20 (Duplicative) because this request is duplicative of prior requests served by BP upon the

United States and because this request seeks information posted on the world-wide web.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to the documents produced in response to BP's First Set of

Requests for Production, including request 62.  The United States will supplement this response

to the extent appropriate upon the conclusion of the Joint Investigation.

or Quantification. The United States will respond to this request and provide any additional

relevant objections after discovery for the February 2012 trial is completed.

203.     All documents that constitute, contain, describe or refer to any guideline, policy
or practice for use in determining when and how the United States Government may invoke the
Executive Privilege or the Deliberative Process Privilege in civil litigation.

**OBJECTION**:  The United States has not yet asserted the Executive Privilege or

Deliberative Process privilege in this litigation and, therefore, there  is no relevance to the

information subject to this request.  Moreover, to the extent the United States does assert either

such privilege, collateral discovery regarding the policies for asserting these privileges is

inappropriate because such information is not necessary for the Court to determine whether a

particular privilege claim is well founded in law or fact.

204.     All documents identified in responses to the Interrogatories set forth below.

**OBJECTION**:  The United States hereby incorporates by reference its objections to each

of the Interrogatories set forth below.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States will produce non-privileged documents responsive to those

Interrogatories properly propounded in this phase of the litigation.

## INTERROGATORIES

22.     Please identify every United States officer, employee or other person associated
with the United States, including consultants and agents, who participated in any way in any
firefighting efforts in response to the Incident on Transocean's *Deepwater Horizon* rig.

**OBJECTION**:  In addition, the United States incorporates its General Objection 12

(Overbroad as to Subject Matter) because the request seeks an identification of all persons,

including those simply "associated with the United States",  regardless of the nature of their

involvement in the response. The United States further incorporates by reference its General

Objection 13 (Proportionality) because the burden of searching the paper files created during this

massive response effort far exceeds the potential probative value of much of the information

sought by this request and because BP is equally as able as the United States to review the

documents regarding the response activities and generating a list of such individuals.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based upon information and belief, the Coast Guard did not participate in any firefighting

efforts in response to the Incident on the *Deepwater Horizon*, rather, the vessel owner is

responsible for firefighting efforts. With respect to the Coast Guard's emergency response

activities between April 20 and 22, 2010, pursuant to Federal Rule of Civil Procedure 33, the

United States directs BP to the documents produced and to be produced in response to BP's First

Set of Requests for Production, including requests 63-66.

23.     Please identify each person who assisted, advised or represented the United States
or the Unified Command in connection with any firefighting efforts in response to the Incident
on Transocean's *Deepwater Horizon* rig, who was not an officer or enlisted person in the United
States Coast Guard.

**OBJECTION**: The United States hereby incorporates by reference its objections to

Interrogatory 22.

**RESPONSE:** The United States hereby incorporates by reference its response to

Interrogatory 22.

24.     State the number of barrels and gallons of oil and every other material
(identifying each such material) discharged from the MC252 Well into the Gulf of Mexico as a
result of the Incident, and your method(s) for calculating or otherwise determining that number,
and identify each document on which your answer is based or that supports your answer.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objections 2 (Scheduled Disclosures), 6 (Privilege), and 7 (Criminal/OIG) to the extent this

Interrogatory seeks the disclosure of attorney or expert opinions or opinions developed in the

course of any criminal investigations of the Incident.  In addition, the United States objects to

this Interrogatory as premature.  The Court has directed the parties to work to narrow the scope

of discovery related to the volume of oil discharged by from the MC252 Well on and after April

20, 2010 and that process has just begun. The United States also incorporates by reference its

General Objections 18 (Already Have), 19 (Publicly Available), and 20 (Duplicative) because

this interrogatory seeks information posted on the world wide web and information responsive to

prior discovery requests propounded by BP.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

As agreed by counsel (*see* Email from Rob Gasaway to Sarah Himmelhoch (June 3,

2011)), the United States will provide its response to this Interrogatory, and any further

appropriate objections, on August 1, 2011.

25.    Identify any administrative decision-making which has taken place or which you
expect to take place relating to the determination of the rate or volume of oil discharged from the
MC252 Well, and for each such decision making state the decision that was reached.

**OBJECTION**:  The United States hereby incorporates by reference its objections to

Interrogatory 24.

**RESPONSE**:  The United States hereby incorporates by reference its response to

Interrogatory 24.

26.    Explain fully how the estimated flow rate values and flow volumes for the
discharge from the MC252 Well and the uncertainty to be assigned to those values and volumes,
contained in the report dated March 10, 2011 and entitled "Assessment of Flow Rate Estimates
for the Deepwater Horizon/Macondo Well Oil Spill," were prepared. Identify all documents that

refer or relate to that report, including but not limited to all appendices and peer review documents and documents that disagree with the contents of the report or its method of preparation, and identify all persons who participated in the preparation, review or approval of that report or its contents.

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 24.

**RESPONSE:** The United States hereby incorporates by reference its response to Interrogatory 24.

27.    State whether that report identified in Interrogatory No. 24 presents the opinion of the United States Government about the estimated flow rate values and flow volumes for the discharge from the MC252 Well and the uncertainty to be assigned to those values and volumes.

**OBJECTION:** The United States hereby incorporates by reference its objections to Interrogatory 24.

**RESPONSE:** The United States hereby incorporates by reference its response to Interrogatory 24.

28.    Identify each person whom you may call as an expert witness in this matter, including each and every person whom you may call as either a retained or a non-retained expert (such as a current employee, agent or independent contractor), and, for each person identified, state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

**OBJECTION:** The United States hereby incorporates by reference its objections to BP's Interrogatory 20.

**RESPONSE:** The United States hereby incorporates by reference its response to BP's Interrogatory 20.

## REQUESTS FOR ADMISSION

### I.   Environmental Documents and Assessments

115.   Admit that the United States Government prepared an environmental impact statement under the National Environmental Policy Act that applied to the leasing of Mississippi Canyon Block 252.

**RESPONSE**:  Subject to, and without waiving, the foregoing general objections, the United States responds as follows:

Admitted.

116.   Admit that the environmental impact statement prepared by the United States Government with respect to the leasing of Mississippi Canyon Block 252 complied with the National Environmental Policy Act.

**RESPONSE**:  Subject to, and without waiving, the foregoing general objections, the United States responds as follows:

Admitted.

117.   Admit that the United States Government prepared a multisale environmental impact statement under the National Environmental Policy Act that applied to the leasing of Mississippi Canyon Block 252.

**RESPONSE**:  Subject to, and without waiving, the foregoing general objections, the United States responds as follows:

Admitted.

118.   Admit that the multisale environmental impact statement prepared by the United States Government with respect to the leasing of Mississippi Canyon Block 252 complied with the National Environmental Policy Act.

**RESPONSE**:  Subject to, and without waiving, the foregoing general objections, the United States responds as follows:

Admitted.

# Exhibit 5

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |



**THIS DOCUMENT RELATES TO ALL CASES**

### UNITED STATES' INITIAL RESPONSE TO
### BP EXPLORATION & PRODUCTION INC.'S THIRD SET OF
### DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA

The United States of America by its undersigned Counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submit the following objections and initial responses to BP Exploration & Production Inc.'s First Set of Discovery Requests to the United States of America.

### GENERAL OBJECTIONS

The United States hereby incorporates by reference its general objections to BP Exploration & Production Inc.'s ("BP") first set of discovery requests. These general objections are incorporated by reference into the specific response set forth by the United States and are neither waived nor limited by the specific responses.

### DEFINITIONS AND INSTRUCTIONS

BPXP respectfully adopts and incorporates all Definitions and Instructions set forth in BP Exploration & Production Inc.'s First Set of Discovery Requests on the United States served on all counsel on April 7, 2011 and BP Exploration & Production Inc.'s Second Set of Discovery Requests on the United States served on all counsel on April 26, 2011.

The United States hereby incorporates by reference the objections to the definitions and instructions set forth in the United States' Initial Response to BP's First Set of Discovery Requests on the United States.

US Initial Response to BP's Third Set of Discovery Requests                    Page 1

loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire."

## REQUESTS FOR PRODUCTION

205.    To the extent not required by other requests, all documents including but not limited to written, audio or visual recordings that comprise, transcribe, refer or relate to interviews of, or statements given by, persons with knowledge of the Incident or the cause or causes of the Incident, including but not limited to any such interviews or statements given or taken on board the *M/V Damon B. Bankston.*

**OBJECTION**: The United States hereby incorporates by reference its General Objections 6

(Privilege), 7 (Criminal/OIG), 12 (Overbroad as to Subject Matter), and 13 (Proportionality)

because this request seeks "all documents referring or relating" to any investigation, thereby seeking

privileged information, as well as information of a purely administrative or otherwise irrelevant

nature. The United States further incorporates by reference its General Objection 8 (6308) because

this request improperly seeks information protected from discovery and/or disclosure pursuant to 46

U.S.C. § 6308. The United States also incorporates by reference its General Objections 18 (Already

Have), 19 (Publicly Available), and 20 (Duplicative) because this request is duplicative of prior

requests served by BP upon the United States and because this request seeks information posted on

the world-wide web.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to the documents produced in response to BP's First Set of

Requests for Production, including requests 55, 56, and 62.

206.    All documents relating or referring to your role in the efforts to cap, seal, contain or collect hydrocarbons from the MC252 Well following April 20, 2010, including, but not limited to any communications regarding such efforts.

**OBJECTION**: The United States hereby incorporates by reference its General Objections 6

(Privilege), 7 (Criminal/OIG), 12 (Overbroad as to Subject Matter), and 13 (Proportionality)

US Initial Response to BP's Third Set of Discovery Requests                                   Page 2

privileged information, as well as information of a purely administrative or otherwise irrelevant

nature. The United States further incorporates by reference its General Objection 8 (6308) because

this request improperly seeks information protected from discovery and/or disclosure pursuant to 46

U.S.C. § 6308. The United States also incorporates by reference its General Objections 18 (Already

Have), 19 (Publicly Available), and 20 (Duplicative) because this request is duplicative of prior

requests served by BP upon the United States and because this request seeks information posted on

the world-wide web. The United States also incorporates by reference its General Objection 3

(Beyond the Scope of First Trial) and objects on grounds of relevance because the question of the

United States' role in the response activities is not related to the Event, Source Control, or

Quantification.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to the documents produced in response to BP's First Set of

Requests for Production, including requests 67-86.

207. All documents referring or relating to procedures, guidelines, policies, recommended
practices or regulations related to formation integrity or leak off tests.

**OBJECTION:** The United States hereby incorporates by reference its General Objections 6

(Privilege), 7 (Criminal/OIG), and 8 (6308) because this request seeks all documents referring to the

procedures and guidelines, and therefore, undoubtedly calls for privileged information. The United

States further incorporates by reference its General Objection 11 (Overbroad as to Time), 12

(Overbroad as to Subject Matter), and 13 (Proportionality) because the request is unlimited as to

time and is not limited to seeking information regarding deepwater oil exploration in the Gulf of

Mexico.

US Initial Response to BP's Third Set of Discovery Requests                    Page 3

objections, the United States responds as follows:

The United States will search the custodial files of the BOEM employees identified in the United States' Second Response to BP Exploration & Production Inc.'s First Set of Requests for Production to the United States of America for information created between April 20, 2005 and April 20, 2010 and responsive to the following search terms (subject to testing):  ("Gulf of Mexico" OR "GOM") AND ("formation integrity" OR "leak off") AND ("procedur*" OR "guide*" OR "polic*" OR "practices" OR "regulation*" OR "investigat*" OR "stud*" OR "analy*" OR "audit*"). The United States will produce responsive, non-privileged documents identified as a result of this search.

208.    All documents referring or relating to any Incidents of Noncompliance for any rig in the Gulf of Mexico related to or referring to formation integrity or leak off tests.

**OBJECTION:** The United States hereby incorporates by reference its General Objections 6 (Privilege), 7 (Criminal/OIG), and 8 (6308) because this request seeks all documents referring to the procedures and guidelines, and therefore, undoubtedly calls for privileged information.  The United States further incorporates by reference its General Objection 11 (Overbroad as to Time), 12 (Overbroad as to Subject Matter), and 13 (Proportionality) because the request is unlimited as to time and is not limited to seeking information regarding deepwater oil exploration in the Gulf of Mexico.  Further, the United States incorporates by reference its General Objection 20 (Duplicative) because this request is duplicative of prior discovery requests served by BP.  The United States also incorporates by reference its objections to BP's Request for Production 5-6.

**RESPONSE**: Subject to, and without waiving, the foregoing, general and specific objections, the United States responds as follows:

Requests for Production, including request for production 5-6 and 12.

209.    All documents referring or relating to investigations, studies, analyses or audits concerning formation integrity and leak off tests conducted in the Gulf of Mexico, including any investigations, studies, analyses or audits relating to the impacts, severity, or implications of formation integrity or leak off tests regardless of whether you ultimately issued an Incident of Noncompliance.

**OBJECTION:**  The United States hereby incorporates by reference its objections to Request

for Production 207.

**RESPONSE:**  The United States hereby incorporates by reference its response to Request

for Production 207.

210.    All documents referring or relating to investigations into Incidents of Noncompliance in the Gulf of Mexico, regardless of whether you ultimately issued an Incident of Noncompliance.

**OBJECTION:**  The United States hereby incorporates by reference its objections to Request

for Production 208.

**RESPONSE:**  The United States hereby incorporates by reference its response to Request

for Production 208.

211.    All documents referring or relating to statistical analyses, studies, or other analyses relating to or comparing the rate of Incidents of Noncompliance in the Gulf of Mexico, including but not limited to the frequency or severity of Incidents of Noncompliance among different companies operating in the Gulf of Mexico.

**OBJECTION:**  The United States hereby incorporates by reference its objections to Request

for Production 208.

**RESPONSE:**  The United States hereby incorporates by reference its response to Request

for Production 208.

212.    All documents identified in responses to the Interrogatories set forth below.

**OBJECTION:**  The United States hereby incorporates by reference its objections to

Interrogatories 29 and 30.

Interrogatories 29 and 30.

## INTERROGATORIES

29.     Please identify each person who conducted, participated in, recorded or transcribed interviews of, or statements given by, persons with knowledge of the Incident or the cause or causes of the Incident, including but not limited to any such interviews or statements given or taken aboard the *M/V Damon B. Bankston*.

**OBJECTION:** The United States hereby incorporates by reference its General Objection 8 (6308) to extent BP seeks discovery of records prepared as part of the investigation and deliberation of the Joint Investigation. In addition, the United States incorporates by reference its General Objections 18 (Already Have) and 20 (Duplicative) because this request is duplicative of prior discovery requests served by BP.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33, the United States directs BP to the documents produced in response to BP's Requests for Production, including request 180.

30.     Please identify each person employed by you who assisted, advised or represented you in connection with efforts to cap, seal, contain or collect hydrocarbons from the MC252 Well following April 20, 2010, and state the role or function of that person in your response.

**OBJECTION:** The United States hereby incorporates by reference its General Objection 8 (6308) to the extent the Joint Investigation addressed such topics. In addition, the United States incorporates by reference its General Objections 18 (Already Have) and 20 (Duplicative) because this request is duplicative of prior discovery requests served by BP.

**RESPONSE:** Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

documents produced in response to BP's Requests for Production, including requests 67-86.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

TONY WEST
Assistant Attorney General
Civil Division

JAMES NICOLL
  Senior Counsel
NANCY FLICKINGER
  Senior Attorney
SARAH HIMMELHOCH
  Senior Litigation Counsel
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
MATT LEOPOLD
RACHEL HANKEY
Trial Attorneys
P.O. Box 7611
Washington, DC 20044-7611

PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
SHARON SHUTLER
JESSICA SULLIVAN
JESSICA MCCLELLAN
DAVID PFEFFER
MALINDA LAWRENCE
Trial Attorneys
Torts Branch, Civil Division
P.O. Box 14271
Washington, DC 20044-4271

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
SARAH D. HIMMELHOCH
Senior Attorneys
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779/202-514-0180
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov
        sarah.himmelhoch@usdoj.gov

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing discovery response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 20th day of June 2011.