

**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0180*
*Sarah.Himmelhoch@usdoj.gov*

November 22, 2011

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re: MDL 2179: United States' Initial Objections to Draft Phase II Rule 30(b)(6) Deposition Notice to the United States

Dear Judge Shushan:

In its Motion to Compel, BP seeks two things (1) a definitive statement from the United States that it has completed its Phase I discovery responses and (2) an order requiring the United States to conduct extensive research into records already in BP's possession to cull and identify information to answer extraordinarily broad interrogatories and organize it for BP's use. The United States addresses each demand in turn.

## I. Completion of Phase I Discovery Responses

BP asks for a definitive statement by the United States as to whether it has completed its Phase I discovery responses. BP has served four categories of Phase I discovery upon the United States: (1) Rule 30(b)(6) deposition notices; (2) requests for admission; (3) interrogatories; and (4) document requests. BP has raised no issue with respect to the United States responses to the first two categories and, subject to completion of the one remaining designee's deposition, the United States can has completed its responses to these categories of Phase I discovery. In addition, as set forth below, the United States has completed its responses to all Phase I Interrogatories.

With the document requests, the United States must necessarily give a more nuanced answer to the question because of the number of agencies involved, the fact that many of BP's requests combined Phase I and Phase II issues, and the sheer volume of tasks being completed in

a short time frame. In general, the United States believes that the vast majority of the non-privileged Phase I documents have been produced and represents that any remaining Phase I information will be produced in accordance with the schedule set forth in this Court's Order regarding Deadlines for the United States' Production of Documents.[1]

## II. The United States' Interrogatory Responses

BP has moved to compel more detailed answers to ten extraordinarily broad interrogatories: 1, 2, 5, 6, 7, 21, 22, 23, 29, and 30. BP contends that the United States' reliance on Rule 33(d) is an inappropriate response to these interrogatories and requests that the Court order the United States to sort through the information within BP's possession and analyze it for BP to support contentions BP may wish to make at trial. The breadth of the interrogatories, the delay in BP's raising these issues, and the fact that the United States' answers comply with the Federal Rules of Civil Procedure all demonstrate that the United States has satisfied its obligations with respect to these interrogatories and no order to compel should issue.

### A. The Breadth of the Interrogatories Permits a Broad Response

The Federal Rules of Civil Procedure clearly impose upon the parties to civil litigation the obligation to serve discovery requests that are "neither unreasonable nor unduly burdensome or expensive considering the needs of the case . . . ." *See* Fed. R. Civ. P. 26(g)(1)(B)(iii). Further, the court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C)(iii). Accordingly, BP's challenge to the United States' responses to the listed interrogatories must be evaluated in light of the overreaching nature of the interrogatories.

Through Interrogatories 1, 2, 5, 6, 7, 23, 29, and 30, BP seeks to require the United States to search large volumes of records for vaguely defined extensive amounts of information and compile that information in a manner that suits BP. For example:

[1] In specific, the United States responds the United States agreed to search the records of the following agencies for Phase I: BOEMRE, NOAA, Coast Guard, and EPA. With respect to BOEMRE and NOAA, the United States prioritized its collection and production of documents to emphasize Phase I custodians. Accordingly, the vast majority of non-privileged information responsive to Phase I has been produced. Nonetheless, it is possible that productions from some of the later custodians will include documents relevant to Phase I. The United States will complete those productions by December 31, 2011 in accordance with the Court's order and the extension granted at the last discovery working group conference. The United States has completed production of the documents the Coast Guard identified specifically as responsive to the Phase I discovery requests. At BP's request, on September 30, 2011, the Coast Guard has agreed to undertake a search in response to BP's request for production 26. It expects to complete that search and produce non-privileged responsive documents no later than December 20, 2011. This summer, BP asked the United States to add EPA to certain of the Phase I discovery searches. Production of non-privileged documents responsive to those searches is expected to be completed by November 30, 2011.

*Interrogatory 1* seeks the identity of "every . . . person associated with the United States . . . who participated in any review, evaluation, approval or disapproval of any submission by BP related to the MC252 Well" and a description of "that person's involvement with the MC252 Well." *See* BP Ex. 1 at 104.

*Interrogatory 2* requests the identity and "involvement" of every "person associated with the United States . . . who participated in any review, inspection, evaluation, approval or disapproval of any submission related to or referring to Transocean's *Deepwater Horizon* rig." *See id.* at 105

*Interrogatory 5* demands that the United States "identify and describe in detail . . . each deepwater well in the Gulf of Mexico that utilized a long string production casing design . . . ." Interrogatories 6 and 7 seek similar information for other design features of wells. *See id.* at 107-108.

*Interrogatory 21* requires the identification of each person who "may have knowledge or information relating to the allegations in the United States' Complaint" and a statement of their area of knowledge. *See id.* at 113.

*Interrogatory 29* requests the identity of "each person who conducted, participated in, recorded or transcribed interviews of, or statements given by persons with knowledge of the Incident . . . ." BP Ex. 5 at 6.

*Interrogatory 30* seeks the identity and role of "each person employed by [the United States] who assisted, advised, or represented [the United States] in connection with efforts to cap, seal, contain or collect hydrocarbons from the MC252 Well following April 20, 2010 . . ."[2] *Id.*

A sweeping interrogatory seeking the identification of each individual who "may have knowledge" relating to one of the deepest and broadest responses of the federal government in recent history, exclusive of combat operations, is so overbroad as to allow the respondent to simply refuse to answer. Similarly, interrogatories that seek detailed information about the design of "every deepwater well in the Gulf of Mexico" are so broad as to be unanswerable on their face. These and BP's other similarly broad interrogatories are simply not appropriate interrogatories and its motion to compel should be denied on those grounds.

**B. BP Already Has the Information Responsive to these Interrogatories**

Moreover, BP already has the information it seeks through these interrogatories. Interrogatory 1 and 2 are targeted (when properly construed for purposes of Phase I) at identifying the individuals involved in the inspection of the rig and the approval of the lease, BP's permit applications, and BP's communications with BOEMRE regarding the well design and progress. With the exceptions described in footnote one, the United States has produced the documents responsive to the requests for production seeking this information. Moreover, BP has conducted Rule 30(b)(6) depositions on the "participation" in the review of any submission from

[2] This interrogatory expressly relates only to Phase II. Nonetheless, the United States will address this interrogatory here for the sake of efficiency.

BP related to the MC252 Well and any inspections of the *Deepwater Horizon*, as well as the training of each person who participated in those activities. *See* US Ex. 1.

Interrogatories 5-7 request detailed information about the design of wells in the Gulf of Mexico. BP has received a copy of the entire collection of documents relating to the review and approval of the design of wells in the Gulf of Mexico for the entire period. After extensive meet and confer efforts, the United States provided these files in native format with an index to the records. Moreover, the United States produced the relevant data from DOI's enterprise database used to track approvals and well design (among many other things). To ensure that BP could access and review this data, the United States spent two days meeting with BP and demonstrating what information is in the database and how to access that information and discussing the best method for exporting and producing that information. *See* Tr. of Meet and Confer (Ex. 2). Accordingly, the United States has provided BP with the records *and the index* that the United States would use to search for and identify the information sought in these interrogatories. Moreover, the United States produced a Rule 30(b)(6) designee who testified on the topic of the "well design plans for all deepwater wells approved by the BOEM from April 20, 2005 through the present that utilized a long string production casing design." *See* US Ex. 1.

Similarly, the United States has provided witness lists as required by this Court, which responds to the non-objectionable portion of BP's Interrogatory 21 – the identity of individuals upon whom the United States will rely to support the allegations contained in its complaint. Moreover, the depositions in this case, the Joint Investigation Team, and Presidential Commission hearings and the document productions identify the individuals most likely to possess information relevant to the claims and defenses in this action. Further, the United States has provided BP with a list of custodians whose records are those most reasonably likely to possess relevant information – a list that also serves to identify the individuals most likely to possess information relevant to the allegations in the United States' complaint.

With respect to Interrogatory 30, which seeks the participants in efforts to cap the well, it is vital to remember that BP was involved in these efforts directly and on a daily basis. There are numerous direct communications between BP and the United States regarding these efforts that identify the participants in the efforts to cap the well. Moreover, BP personnel staffed the controlled entry points at each Incident Command Post and BP has the records of who entered and exited the premises. Further, the identity of these individuals is apparent from the documents relating to well control, many of which have been produced and the remainder of which are already subject to an Order setting a schedule for production.

Interrogatories 22 and 23 present an even clearer case of BP having the information requested by the interrogatories. Both of these interrogatories request the identification of individuals who participated in or advised regarding the "firefighting efforts" between April 20 and April 22, 2010. The United States' Interrogatory response clearly states that "the Coast Guard did not participate in any firefighting efforts, rather, the vessel owner is responsible for the firefighting efforts." BP Ex. 4 at 7-8. That answer satisfies the question asked by BP. To the extent the answer was unclear or ambiguous, BP had an opportunity to clarify the response in its Rule 30(b)(6) deposition of the United States on the topic of the "U.S. Government's

involvement in and emergency response to the Deepwater Horizon incident, including all disaster, search and rescue and firefighting efforts between April 20, 2010 and the sinking of the Transocean's Deepwater Horizon rig on April 22, 2010." *See* Ex. 1 at 4.

In sum, BP's motion to compel is *not* about getting information it does not have. BP's motion *is* about asking the United States to organize the vast quantity of information available to BP to suit BP's needs. Because BP already has the information and, as described below, the tools to organize that information as it sees fit, the Interrogatories are duplicative and unduly burdensome and BP's motion should be denied on these grounds.

### C. BP's Delay Demonstrates that BP Does Not Need a More Detailed Response

The interrogatory responses BP challenges were served on June 20, 2011, more than four and one-half months ago and well before Phase I discovery was to be concluded. If the information sought in these requests were truly important and unavailable to BP, BP would not have waited until now to raise its concerns.[3] BP's demand for detailed interrogatory responses, therefore, appears more to be a tactical effort to divert the United States from preparation for the Phase I trial and its responses to Phase II discovery rather than a legitimate expression of need for missing information. For these reasons, as well, BP's motion should be denied.

Further, BP's delay in raising this issue prejudiced the United States in two ways. First, by raising the issues so late, BP forced the United States to make the difficult choice between extending once again the motion to compel deadline and foregoing any meaningful meet and confer opportunity. Second, by raising the issues so late in the day, BP is forcing the United States to address complaints regarding its five month old discovery responses while preparing for the Phase I trial and dedicating enormous resources to an aggressive effort to comply with massive document productions under very tight time frames.

### D. The United States' Responses Satisfy Rule 33(d)

Finally, the thrust of BP's argument, that the United States' description of documents responsive to the Interrogatories was not sufficiently detailed is unsupported by the law. Federal Rule of Civil Procedure 33(d) states:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining that answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, *in sufficient*

[3] BP clearly was not relying upon these Interrogatories as a source of information necessary to identify its fact witnesses, prepare its experts, or conduct its depositions, as can be seen from the fact that on November 11, 2011 BP asserted that the United States had not yet responded to Interrogatories 3, 4, and 16. *See* BP Letter Ex. 1 at 4. In fact, the United States had provided its response to these interrogatories on June 20, 2011. *Id.*

> *detail to enable the interrogating party to locate and identify them as readily as the responding party could…*

Fed. R. Civ. P. 33(d)(1) (emphasis added).

As explicated by the cases BP cites, this Rule does not require a list of Bates numbers or a specific format of description, it simply requires the responding party to give the requesting party the same tools the responding party has available to conduct the review. For instance, in *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983), the appellants responded to an interrogatory by referring to "books of accounts, banking accounts, records, computer printouts, ledgers and other documents…." that they would make available for inspection. The Court found this description unacceptable because it did not provide information "in sufficient detail to permit the interrogating party to locate and identify, as readily as the party served" the documents. *Id.* In *O'Connor v. Boeing North Am., Inc.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999), the Court required an index describing the topics of the information in the documents and some way to identify each. The Court found in this case that the plaintiff's interrogatories were broad enough to allow defendants to answer under Rule 33(d). However, because the resulting production in response was so voluminous, the Court ruled that they "must be accompanied by indices designed to guide the searcher" to responsive documents. Without some type of specification by category or location, the Court found that "the burden of deriving the answers to the interrogatories is not the same for the parties; rather, it would be easier for…the defendants to locate responsive documents."

Here, the United States has provided just the sort of guidance that the courts require. The United States has:

1. Identified categories of documents by identifying to which Request for Production they were responsive;
2. Provided BP with the *exact* search terms used to find those documents within the United States' productions;
3. Provided the documents in fully searchable form with a load file that serves as a virtual index of the documents and, with respect to the well design interrogatories walked BP through how to use the database.

With the exact same search terms the United States would use and a fully searchable database of records, BP has all the information and guidance it requires to find these documents. Accordingly, on these grounds as well, BP's motion should be denied.

## III. CONCLUSION

The United States' responses to the Interrogatories are appropriate under the Rules, particularly in light of BP's prejudicial delay in raising its concerns, the overbreadth of BP's interrogatories, and the fact that BP has all of the information it legitimately requires.

Sincerely,

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division

cc: Liaison and Coordinating Counsel