

**DALLAS HOUSTON**

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

**GodwinRonquillo.com**

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:    214.939.4412
DIRECT FAX:    214.939.4803
DGODWIN@GODWINRONQUILLO.COM

**Contains Information Designated
Confidential Under The Protective Order**

November 21, 2011

**Via E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
for the Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

        **Re:**     **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179.**

Dear Judge Shushan:

      Halliburton Energy Services, Inc. ("HESI") submits this letter in response to BP Exploration and Production Inc. and BP America Production Co.'s (collectively, "BP") request for an order striking HESI's designation of Roland Chemali ("Chemali") as a non-retained rebuttal expert. HESI finds this request ironic considering BP obtained a court order for Chemali's deposition, questioned him for two-and-half hours regarding the M57B sands, including the triple-combo logs and laminated sand logs, and for all intents and purposes treated him as an expert witness during his deposition. (11/3/11 Chemali Dep. at 155:22-156:3; 160:23-175:2, Ex. A). Apparently not finding Chemali's testimony to its liking, BP now seeks to strike his designation as a rebuttal expert on the grounds that: (1) no other expert has testified on the same subject matter as Chemali and therefore there is nothing for him to rebut; and (2) Chemali's testimony is cumulative of Richard Strickland's ("Strickland") testimony. (11/14/11 Letter at p. 3, Ex. B).

      BP's request is misguided for two reasons. First, two of BP's own experts have opined in their reports regarding what constitutes a "hydrocarbon bearing zone" and whether such zones were properly cemented in the Macondo well. Chemali's expected

1796291 v2-24010/0002 CORR

testimony will rebut these conclusions as to what the proper classification of those zones is and whether they needed to be taken into consideration for purposes of the cement job design. Second, as explained in detail *infra*, Chemali's testimony is not cumulative of Strickland's testimony because Chemali provides a number of additional opinions, driven in part by the differences in the experts' unique backgrounds.

I. **Chemali's Testimony Rebuts Two of BP's Experts' Opinions on the Same Subject Matter, and HESI Timely Disclosed Him Pursuant to Fed. R. Civ. P. 26(a)(2)(C) and the Court's Scheduling Order.**

On November 7, 2011, HESI disclosed Chemali as a non-retained rebuttal expert who may provide testimony concerning "the hydrocarbon bearing zones in the Macondo well." (11/7/11 Disclosure at p. 2, Ex. C). This disclosure complied with the November 7th deadline set by the Court in its July 1, 2011 Order Regarding Revised Schedule for Phase One Expert Discovery. (Doc. 3126).

Contrary to BP's argument that Chemali is a disguised "direct" expert, his expected testimony will rebut the opinions expressed by BP's experts Fred Sabins ("Sabins") and Chuck Schoennagel ("Schoennagel").[1] Since BP's experts opined that the M57B is not a hydrocarbon bearing zone that should be considered during the cement job design process, Chemali's contrary opinion directly rebuts their conclusions. Thus, HESI timely and properly disclosed Chemali as a rebuttal expert on November 7, 2011.

A. *Chemali Rebuts Shoennagel's Conclusion.*

On October 17, 2010, BP submitted Schoennagel's expert report, in which he avows that a hydrocarbon bearing zone under the MMS regulations only includes producible intervals and does not include "all stringers identified in the wellbore" (such as the M57B). (Schoennagel Report 10/17/11 at p. 27, Ex. D). Chemali is expected to rebut this conclusion and testify that even so-called "stringers," or smaller hydrocarbon zones, such as those identified by BP above 17,900 feet should be included as hydrocarbon bearing zones. (Ex. C). Likewise, from both an economic and safety perspective, these smaller hydrocarbon zones should also be considered during the cement job design process. (*Id.*).

B. *Chemali Rebuts Sabins' Opinions.*

Another BP expert, Sabins, also discusses in his report what he considers to be the major hydrocarbon bearing zones and why he believes that they were covered by the top of cement in the final cement job on the Macondo well. Specifically, Sabins concludes in his report that the final cement job covered the "three major hydrocarbon producing zones from 18,051' to 18,233' and thus it was the slurry design and not the location of the slurry that allowed the hydrocarbon flow to enter the well." (Sabins Report 10/17/11 at

---

[1] Rebuttal evidence is that which "explains, repels, counteracts or disproves the evidence of the adverse party." *See United States v. Chrzanowski,* 502 F.2d 573, 576 (3d Cir. 1974).

Page 2 of 6

1796291 v2-24010/0002 CORR

pp. 41-42, 67, Ex. E). Sabins further asserts "with reasonable scientific certainty" that, despite the top of cement being set at 17,300 feet (therefore not addressing the M57B zone), the "hydrocarbon zones were covered with cement at the conclusion of the cement operation." (*Id.* at pp. 42, 74). Contrary to Sabins' conclusion, Chemali is expected to opine that all potential hydrocarbon zones were not covered by cement. (Ex. C).

Because Chemali's opinion regarding the hydrocarbon bearing zones and an operator's corresponding obligations directly contradicts the opinions of both of BP's experts on this issue, Chemali was properly disclosed on November 7, 2011 as a rebuttal expert witness.

## II. Chemali's Testimony Is Not Cumulative of Strickland's Testimony and Will Assist This Court in Understanding the Importance of the M57B Zone.

BP's argument that Chemali's testimony is cumulative of Strickland's testimony, and therefore his designation should be stricken, is without a legal or factual basis. First, even if two experts testify generally on the same topic, the testimony of neither witness should be excluded merely because there may be overlap. *See, e.g., Moore v. Ashland Chemical, Inc.*, 126 F.3d 679, 692 (5th Cir. 1997), *overt'd on other grounds in Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (*en banc*); *see also Johnson v. United States*, 780 F.2d 902, 906 (11th Cir. 1986) (district court abused its discretion in excluding third medical expert witness when the witness had different credentials and would have offered slightly different evidence and analysis). In *Moore*, the Fifth Circuit Court of Appeals determined that where two expert reports were at least partially non-cumulative and the analysis was "somewhat different," that was sufficient to allow both experts to testify. *See Moore*, 126 F.3d at 692.

Second, even where there is some overlap in two experts' testimony, the differences in their backgrounds also support the non-cumulative nature of their analyses. *Id.* (noting that a difference in the experts' education backgrounds, employment, and other experience made their analysis non-cumulative); *see also, e.g., Rodriguez v. County of Stanislaus*, 1:08-cv-00856 OWW GSA, 2010 U.S. Dist. LEXIS 80600 (E.D. Cal. July 7, 2010) ("[A]gain, the education and employment backgrounds of the two experts differ, as do each expert's report, and the presence of mere overlap is insufficient to justify exclusion of the testimony.").

### A.  Chemali and Strickland Provide Different Analyses.

In his expert report, Strickland offers opinions evaluating BP's internal analysis of the data concerning the M57B sands and provides his own detailed analysis of the data. In addition, he ultimately concludes that the M57B zone contained hydrocarbons. While Chemali similarly reviews the underlying data related to the M57B hydrocarbon bearing zone, he will offer the following additional opinions:

(1) Based on his decades of experience developing and evaluating wireline technology, Chemali will opine on the process for proper interpretation of well logs documenting potential hydrocarbon bearing zones;

(2) Chemali will opine that BP was "reckless" in failing to identify and account for the shallow M57B gas zone;

(3) Chemali will opine that a reasonable petrophysicist would have identified at least four zones above 17,900 feet as being potential hydrocarbon bearing zones;

(4) Chemali will opine on how an operator should treat potential hydrocarbon bearing zones from both an economic/commercial and safety/hazard perspective; and

(5) Chemali will opine that BP's failure to design around or take into account the M57B hydrocarbon zone created an unsafe situation at Macondo. Ex. B.

Thus, while there is some overlap in the analysis provided by the two experts, Chemali opines on additional areas not addressed by Strickland and reaches certain conclusions that Strickland's analysis does not touch, making Chemali's opinions non-cumulative under *Moore. See* 126 F.3d at 692, *overt'd on other grounds in* 151 F.3d 269.

### B. The Unique Backgrounds of both Chemali and Strickland Further Support the Non-Cumulative Nature of Their Expert Testimony.

Chemali's experience is different from Strickland's background in petroleum engineering and it results in a unique perspective that this Court will likely find useful when considering the issues related to the hydrocarbon bearing zones and their identification.

The courts in *Moore, Johnson,* and *Rodriguez* each considered whether the differences in experts' backgrounds or employment histories contributed to the non-cumulative nature of their expert testimony, and each court concluded that where differences are sufficiently unique, both experts should be allowed to testify. *See Moore,* 126 F.3d at 692; *Johnson,* 780 F.2d at 906; and *Rodriguez,* 2010 U.S. Dist. 80600 at *7-8 (finding that the qualifications of two experts alone is sufficient reason to permit the designation and testimony of each).

Chemali has a unique training background and experience, which will assist this Court in understanding the underlying data related to the M57B zone. (Chemali's and Strickland's Curricula Vitae are attached hereto as <u>Exhibit F</u> and <u>G</u> respectively). He has two engineering degrees and a Masters of Science in Mathematics and over 40 years of experience in the design and use of downhole measurement tools that analyze the

Page 4 of 6

characteristics of subterranean formations. (Ex. C). While at Schlumberger, Chemali also played a role in the development of the triple combo tool that provides simultaneous measurements of resistivity, density, and porosity, and whose measurements are used to identify the hydrocarbon bearing zones. (*Id.*) This experience makes Chemali uniquely qualified to assist this Court in understanding the issues related to the M57B zone.

### III.    Chemali Rebuts the Testimony of BP's Rebuttal Experts.

BP's claims that none of its experts address the issue of the hydrocarbon zones above 17,900 feet including the M57B interval is disingenuous, particularly considering that two of BP's experts, Lee and Sabins, address this exact issue in their rebuttal reports.

Lee's report analyzes various data related to the M57B zone, including wireline log data, OBMI, and CMR logs, and arrives at the conclusion that it was not a hydrocarbon bearing zone. (Lee Report at pp. 13, 15, Ex. H).[2] Chemali's deposition and trial testimony rebut Lee's conclusions.

Similarly, in Sabins' rebuttal report, he argues that there is no evidence that Jesse Gagliano would have "redesigned" the cement program for the Macondo Well using OptiCem based on proper consideration of the M57B hydrocarbon zone. (Sabins Rebuttal Report at p. 49, Ex. I). To the contrary, Chemali opines that it is the operator's responsibility - and not the cement engineer's responsibility - to properly consider and design around potential hydrocarbon zones and their associated risks.

BP also designated Graham Vinson ("Vinson") as a non-retained rebuttal expert regarding "the M57B zone in the production interval of the Macondo well." (11/7/11 Disclosure, Ex. J). According to BP, Vinson is going to testify "that BP properly identified the top hydrocarbon bearing zone;" "the M57B is not likely to be a hydrocarbon bearing zone;" and "the BP team's analysis of the top hydrocarbon bearing zone was complete and accurate and appropriate." *Id.* Vinson is also expected to testify regarding his analysis of M57B data, including the mud log reports, triple combo log reports, OBMI, CMR, and other wireline and mud log data. *Id.* As discussed *supra*, Chemali's testimony rebuts these conclusions.

***

Chemali's expected testimony directly rebuts the opinions of at least two of BP's experts. Thus, HESI properly and timely designated him as a rebuttal expert witness. In addition, due to Chemali's unique background and the fact that he provides additional analysis, not addressed by Strickland, Chemali's expected testimony is not cumulative and will assist this Court in understanding the issues related to the M57B zone. Finally, Chemali's testimony rebuts the opinions of BP's rebuttal experts. For these reasons,

---

[2] Furthermore, Lee also cited Chemali's deposition testimony in his report to bolster BP's arguments regarding the definition of "hydrocarbon bearing zone." (Ex. H at p. 15).

Halliburton respectfully requests that BP's request for an order striking Chemali's designation be denied.

Best Regards,

*Donald E. Godwin* (signature)

Donald E. Godwin

cc: Bruce W. Bowman Jr.
R. Alan York
Jenny L. Martinez