UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN
LIMINE TO PRECLUDE THE INTRODUCTION INTO EVIDENCE
OF OTHER GOVERNMENTAL REPORTS AND DOCUMENTS**

Whether in concession to the force of its arguments or out of a misapprehension of the salient points, the bulk of the parties' responses to BP's motion to exclude various public reports (and items the PSC has wrongly classified as public reports) are plainly non-responsive. The most egregious example of this is the parties' repeated classification of BP's arguments as being based on the "trustworthiness" or "untrustworthiness" of the items at issue. It is true that an "untrustworthy" document may not be admitted under Rule 803(8). But this is hardly the only – or even the primary – reason for why courts in this circuit have excluded documents like the ones at issue here. BP's memorandum references issues of "trustworthiness" or "untrustworthiness" but twice, both times as one of several other reasons why the proffered exhibits do not qualify for admission as "public records." The many other substantive grounds for inadmissibility that BP raised were left largely unaddressed in the parties' responses.

**I. The National Commission and Chief Counsel Reports Are Inadmissible.**

BP raised a number of issues related to the National Commission and Chief Counsel's Reports: (1) reliance on inadmissible Joint Investigation materials, including its two-volume report and hearing transcripts; (2) failure to embody an "evaluative process" – instead acting as

1

parrots for the findings and conclusions of other reports and investigative bodies; (3) content beyond the purview of statutory authority (National Commission's report) or a lack of statutory authority (Chief Counsel's report); and (4) overwhelming use of double hearsay.

No party joined issue with these arguments in any comprehensive (or convincing) manner. The United States' submission is simply non-responsive, relying on sweeping, conclusory language rather than actual argument or analysis. Dril-Quip, without specifically identifying BP, glosses *all* parties' arguments against admissibility as based on the documents being "not final" and "lack[ing]…trustworthiness." Cameron at least correctly identifies BP's argument concerning lack of authority, but it then proceeds to shoehorn the remaining issues into a "trustworthiness" argument. The PSC at least makes a show of addressing some of BP's arguments, but its points fall far short of the mark. The scope of these responses alone is enough to conclude that BP has the stronger position on these proposed exhibits.

Simply because the National Commission had a mandate and produced a report does not mean that report satisfies the requirements of Rule 803(8). The report is strewn with content that is not the product of any independent investigation or analysis and is littered with double hearsay, irrelevant materials, and statutorily inadmissible Joint Investigation evidence. The PSC takes BP to task for not specifying these instances, but does not argue they do not exist. The report plainly contains, for example, extensive excerpts from interviews with Gulf Coast residents (page 163), direct quotations from television talk show programs covering the *Deepwater Horizon* incident (page 167 n."‡"), extracts from websites (page 212 & n.87), quotations from newspaper articles (page 144 & n.127), and much more like it. The PSC has proffered this exhibit and suggested it falls into an exception to the hearsay rule. It has not even come close to meeting its burden to establish admissibility.

The parties' failure to support the introduction of the Chief Counsel's report is even more pronounced.  As BP argued in its opening memorandum, the Chief Counsel's report was issued in the absence of either a duty to report or a statutory duty to investigate.  This lack of both authority and duty should end the admissibility inquiry for failure to satisfy a basic pre-condition for admission under Rule 803(8).

Cameron contends that the National Commission delegated its authority to the Chief Counsel.  As an initial matter, the case law is clear that authorized public bodies *may not* delegate their investigative or reporting functions to private entities for the purposes of admissibility under Rule 803(8).  *See, e.g.*, *United States v. Blackburn*, 992 F.2d 666, 672 (7th Cir. 1993) (private party's analysis inadmissible under Rule 803(8) even though prepared "at the instance of a governmental agency"); *Brown v. Sierra Nevada Memorial Miners Hospital*, 849 F.2d 1186, 1189-1190 (9th Cir. 1988) (materials submitted to an authorized public investigative body by outside entities inadmissible under Rule 803(8)); *see also, e.g.*, *King v. Cessna Aircraft Co.*, No. 03-20482-CIV, 2010 WL 1839266, at *4-5 (S.D. Fla. May 6, 2010) (finding report prepared by private expert at behest of public body inadmissible and refusing to endorse party's argument that the fact that report was "prepared…at the request of [a public official]" made it admissible under Rule  803(8)).

More fundamentally, this theory finds no support in the facts.  The presidential order creating the body that authored the National Commission's report (a portion of whose members formed the authoring body of the Chief Counsel's report) was clear: The National Commission's "[m]ission" was twofold: (1) to "examine the relevant facts and circumstances concerning the root causes of the Deepwater Horizon [accident];" and (2) to "develop options for guarding against . . . and mitigating the impact of . . . oil spills associated with offshore drilling[.]"

NATIONAL COMMISSION ON THE BP DEEPWATER HORIZON OIL SPILL AND OFFSHORE DRILLING, DEEP WATER THE GULF OIL DISASTER AND THE FUTURE OF OFFSHORE DRILLING (2011), at 359-361. At the conclusion of that "[m]ission[,]" the National Commission was instructed to issue a report with its "findings and options[.]" *Id.* Per the presidential order, this was to be done within six months of the first hearing of the National Commission (the first hearing was held on July 12, 2010). *Id.* As the Chief Counsel's report openly admits, the National Commission's report, published on January 11, 2011, *was the report that satisfied the mandate of the presidential order.* CHIEF COUNSEL, MACONDO THE GULF OIL DISASTER (2011), at ix, 1 ("The . . . material presented here offers new details and documentation in support of the [National] Commission's final report . . ., released on January 11, 2011[;] [t]he [National] Commission set forth its findings regarding the root causes of the blowout in a report that it released on January 11, 2011.") Neither the National Commission nor the Chief Counsel nor any party in this case has identified any grant of authority to the Chief Counsel to issue an additional report following the fulfillment of the presidential order.

## II. Dr. Hayward's Congressional Testimony is Inadmissible.

The PSC (the only party to argue congressional testimony should generally be admitted under Rule 803(8) as a "public record") fails to substantiate its position. ***First***, the PSC continues to misconstrue its own case law holding that congressional testimony can constitute "public record[s.]" These cases stand for the proposition that, for purposes of judicial notice, courts can treat such testimony as matters of "public record." ***None*** support the legally distinct idea that such testimony is a "public record" for purposes of Rule 803(8). ***Second***, other cases the PSC cites are even further off-base. The fact that the transcript of a judicially overseen state court proceeding in a § 1983 lawsuit could be admissible under Rule 803(8), as was held in

4

*Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 291-292 (5th Cir. 2002), again tells us nothing about whether extra-judicial statements in a highly publicized congressional "hearing" concerning the *Deepwater Horizon* incident also fall within the ambit of the Rule. The same point applies to the PSC's odd reliance on *Major v. Treen*, 574 F. Supp. 325, 330 n.6 (E.D. La. 1983), which concerned transcripts of diffuse public comments on a state redistricting proposal and provides no guidance when applied to the targeted, politically charged inquiry directed against Dr. Hayward in the aftermath of the *Deepwater Horizon* incident.

### III. Neither the OSHA Fact Sheet Nor the Deferred Prosecution Agreement Are Admissible.

The PSC (again focusing on BP's assertion that the Deferred Prosecution Agreement ("DPA") is untrustworthy), ignores BP's central arguments that: (1) as a private contractual document, the DPA is fully beyond the purview of Rule 803(8) and (2) because it contains a series of legal conclusions, it is explicitly barred from admission based on uncontested precedent. Even the argument the PSC does make fails. BP executed the agreement as part of a negotiated resolution to pending litigation. Its content cannot be assumed to be trustworthy for purposes Rule 803(8).

The PSC's contention that the OSHA Fact Sheet is admissible is likewise off the mark. Rule 803(8) does *not*, as the PSC contends, permit the admission of "governmental records 'in any form.'" The PSC's quotation omits the crucial qualifier: governmental records may be admitted "in any form" provided that they set out: (1) an office's "activities," (2) "matters observed" pursuant to a duty and for which there is a parallel duty to report, or (3) the findings of an authorized "investigation[.]" The PSC has failed to show how a published summary of what purports to be *pre-existing*, *pre-established* facts fits within any of those categories, and it cites no precedent for such a proposition.

5

Dated:  November 28, 2011 	Respectfully submitted,

	/s / Don K. Haycraft.

	Don K. Haycraft (Bar #14361)
	R. Keith Jarrett (Bar #16984)
	LISKOW & LEWIS
	One Shell Square
	701 Poydras Street, Suite 5000
	New Orleans, Louisiana 70139-5099
	Telephone: (504) 581-7979
	Facsimile: (504) 556-4108

	and

	Richard C. Godfrey, P.C.
	(richard.godfrey@kirkland.com)
	J. Andrew Langan, P.C.
	(andrew.langan@kirkland.com)
	Timothy A. Duffy, P.C.
	(tim.duffy@kirkland.com)
	Kirkland & Ellis LLP
	300 North LaSalle Street
	Chicago, IL 60654
	Telephone: (312) 862-2000
	Facsimile: (312) 862-2200

	and

	Robert C. "Mike" Brock
	(mbrock@cov.com)
	Covington & Burling LLP
	1201 Pennsylvania Avenue, NW
	Washington, DC 20004-2401
	Telephone: (202) 662-5985

	*Attorneys for the BP Exploration &
	Production Inc. & BP America Production
	Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 28th day of November, 2011.

/s/  Don K. Haycraft__