UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S REPLY TO RESPONSE OF OTHER PARTIES TO MOTION IN LIMINE TO EXCLUDE JIT INVESTIGATION, SPECIFICALLY THE DNV REPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling, Inc.; Transocean Holdings LLC; Transocean Deepwater, Inc.; and Triton Asset Leasing GmbH (collectively, "Transocean") and file their Reply to the Responses of Other Parties to Motions in Limine to Exclude the JIT Investigation, specifically the portion related to the DNV report on its unique forensic assessment of the blowout preventor ("BOP"):

**I. Given the Unique Nature of the DNV's BOP Examination and Report, the Substance of the DNV Report is Admissible.**

The United States' letter response and Cameron's Response (Dkt. 4643) both acknowledge that the factual materials, such as data, photographs and other media produced as a result of the DNV examination are not barred from admissibility by 46 U.S.C. § 6308, but they argue that the findings and conclusions of DNV are barred by the statute that applies to the report of the U.S. Coast Guard. This argument fails to acknowledge that the DNV examination was not simply an activity of the JIT investigation. It was also a unique activity of the MDL that was authorized and overseen by the Court with the participation of all parties.

> The United States has previously expressly acknowledged that fact:
>
> The United States recognizes, however, that the conduct of the forensic testing of the BOP was not determined solely by the JIT and DNV. The testing was, to varying degrees, governed by and subject to the Court's direction. Due to the unique nature of the BOP forensic examination, the court exercised considerable over-sight for the JIT's testing of the BOP.

(Letter of United States to Judge Shushan, dated June 10, 2011, Dkt. No. 2799, p. 2).

The Court, in fact, provided significant oversight and involvement in the retrieval, storage, and examination of the BOP. At the August 20, 2010 MDL status conference, Mr. Miller, representing Transocean, requested that the MDL litigants have input on the testing protocol for the BOP examination and

> instead of having a testing protocol drafted by the Department of Interior and thrust upon us, that the testing protocol, the transport, the handling of the BOP ought to be the subject of this Court's jurisdiction and ought to be a product of input from all interested parties, including the litigants before the Court, and that's really the subject of our motion for protective order.

(Hearing transcript, p. 13, l. 1 (transcript excerpts attached hereto at Exhibit 1, Appendix A). The Court concurred, "We just want to make sure it's [a protocol for the DNV evaluation] not issued and then they say, 'The testing is going to occur tomorrow and here's the protocol,' that there's some reasonable opportunity for input from the interested parties" (Ex. 1, Appx. A at p. 26, l. 14).

Although not all of the plaintiffs in the MDL were "interested parties" for purposes of the JIT investigation, they did ask the MDL court at an MDL status conference that MDL litigants be included in the oversight of the BOP testing, and the Court agreed. (Ex. 1, Appx. A at p. 27, l. 15) ("As Mr. Roy or Mr. Herman pointed out, they are not technically interested parties perhaps in the context of the Marine Board of Investigation, but they certainly are interested parties in this litigation, so I want them to be included in that. Okay?"). At the end of the conference, when the discussion continued about input on the protocols, Mr. Roy asked, "That's

2

for both the pipe recovery and the BOP procedures that are anticipated for removal; correct?" (*Id.* at p. 34, l. 5). The Court responded, "Correct.  Correct" (*Id.* at p. 34, l. 7).

From that point forward, the Court oversaw and authorized the retrieval, storage and examination of the BOP.  (*See* Exhibit A, and Appendices A-E thereof, illustrating such supervision.)  In short, the Court did the following:

- held hearings on the DNV examination;

- authorized a technical working group (TWG) with each MDL party (including parties who were not parties-in-interest at the JIT hearings) having input into all work/testing;

- approved retrieval, storage and testing protocols; and

- ultimately created a sole and exclusive source for critical evidence regarding the BOP.

In its letter response dated November 18, 2011 (Response to BP's Motion in Limine To Preclude the Introduction into Evidence of the Joint Investigation Report and Testimony),  the United States frankly admits the foregoing, but argues without explanation that although the factual materials are admissible under 46 U.S.C. § 6308, the conclusions and findings of  DNV are not admissible.  At no time throughout the examination under the Court's auspices was there any suggestion by any party, including the United States or Cameron, that the substance of the DNV report would be inadmissible in evidence simply because the DNV's examination was also a part of the JIT investigation.

Contrary to the arguments of the United States and Cameron, the Court (Judge Shushan) did not in the June 28, 2011 Order (Dkt. 3071) rule that the DNV report was inadmissible.  That subject was never addressed.  The scope of the Court's Order was much more narrow.  The United States had objected to the discovery of communications between DNV and JIT members, DNV interim and draft reports and memoranda, and internal DNV communications.  The Court

3

sustained those objections.[1]  However, the admissibility of the DNV report itself was never at issue.  Furthermore, the DNV witnesses have been deposed under Rule 30(b)(6) with no objection.

In sum, as the United States has recognized, the examination of the BOP was "unique." It was not simply the province of the JIT.  It was also performed under the auspices of the Court, and as such, the substance of the DNV report, including the factual material, the findings, and the conclusions of DNV, is admissible in this case.  At the January 28, 2011 status conference, the United States drew a sharp distinction between the DNV report and the JIT report, representing that only the latter was inadmissible under 46 U.S.C. § 6308.  All parties' counsel were present at that hearing, and no one objected to the position stated by the United States.  DNV is the sole expert that was allowed to examine the BOP.  Moreover, the inability of the parties, at this late stage in the proceedings, to utilize the DNV report would be patently unfair because it would seriously impair the parties' ability to try this case.  Accordingly, the Court should rule that the DNV report is admissible in its entirety.

**II.** **The JIT Report, including Factual Materials and Testimony, are Inadmissible.**

In their Response briefs, the Plaintiffs (and Cameron, where indicated) argue the following:

- "non-conclusory evidence gathered and discovered" during the JIT investigation is not inadmissible under 46 U.S.C. § 6308 (Plaintiffs' Response (Document No. 4649), p. 1); Cameron makes the same contention, except Cameron argues that "expert opinions" are not admissible;

- Volume 1 of the JIT Report (by the USCG), MBI statements and/or testimony are admissible for impeachment purposes;

---

[1] This ruling concerning DNV report drafts and communications is consistent with the Court's September 2, 2011 Order (Dkt. 3916) excluding from discovery communications between the MDL parties and their retained experts, as well as their experts' draft reports.

4

- MBI testimony of witnesses who invoked the Fifth Amendment is admissible;

- Volume II of the JIT Report (by BOEMRE) is admissible and not barred by 46 U.S.C. § 6308.

Transocean's Memorandum in Support of its Motion in Limine (Dkt. 4519-1), and the other parties' motions in limine, have thoroughly debunked the notion that the JIT Report can be divided into two separate investigations and two separate reports. Additionally, in its November 18, 2011 letter response, the United States agrees that the JIT cannot be so divided. There was only one investigation and one report, all of which is protected under 46 U.S.C. § 6308. Plaintiffs have cited nothing to refute that undeniable fact. Transocean will not burden the Court with a repetition of the reasons that the entire JIT investigation and report are inadmissible.

Regarding the use of the JIT testimony to impeach witnesses, that decision should be deferred and made on a case-by-case basis, as Transocean stated in its Memorandum in Support of the Motion in Limine (Dkt. 4519-1, pp. 4-5). In the following sections, Transocean will address the Plaintiffs' and Cameron's remaining arguments -- (1) that factual materials developed during the JIT hearings are admissible, and (2) that JIT testimony of witnesses who later invoked the Fifth Amendment is admissible -- both of which fail.

A.   **Factual Materials from the JIT Investigation are Inadmissible.**

46 U.S.C. § 6308(a) states plainly as follows:

**Notwithstanding any other provision of law**, **no part** of a marine casualty investigation conducted under section 6301 of this title, **including** findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

(emphasis added).

5

Plaintiffs and Cameron argue that because only "findings of fact, opinions, recommendations, deliberations, or conclusions" is specifically mentioned in the statute, then other materials must be admissible. But that is not what the statute says. The statute says "no part of a marine casualty investigation … including" the referenced materials is admissible. It does not say that only the referenced materials are inadmissible. Had that been the intent of the drafters, they would have said so plainly. The statute taken as a whole also shows that the Plaintiffs' and Cameron's arguments have no merit. Subsection (b) states as follows:

> **(b)** Any member or employee of the Coast Guard investigating a marine casualty pursuant to section 6301 of this title shall not be subject to deposition or other discovery, or otherwise testify in such proceedings relevant to a marine casualty investigation, without the permission of the Secretary. The Secretary shall not withhold permission for such employee or member to testify, either orally or upon written questions, **on solely factual matters** at a time and place and in a manner acceptable to the Secretary if the information is not available elsewhere or is not obtainable by other means.

(emphasis added). An exception is made for Coast Guard personnel to testify about "solely factual matters" in subparagraph (b), but only where "the information is not available elsewhere or is not obtainable by other means." There is no such exception in subparagraph (a).

Every court considering the issue, with the exception of the Court in *In re Danos & Curole Marine Contractors, Inc.*, 278 F.Supp.2d 783 (E.D. La. 2003) (which the Plaintiffs and Cameron continue to misidentify as an opinion by Judge Duval, but was actually authored by Judge Porteous), has agreed that the list of inadmissible materials is Section 6308(a) is not exhaustive, but rather is illustrative, and every court has barred all evidence gathered at a marine casualty investigation. Even that Court recognized that the list of materials in Section 6308 is "illustrative and not exclusive." *Id.* at 785. Under the extraordinary circumstances of that case (photographs of a vessel's electrical wiring after a casualty were admitted, where the wiring itself was replaced and the original wiring discarded before any party could examine the same),

6

the Court admitted the photographs. Every other court addressing the issue (see p. 5, Transocean's Memorandum in Support of Motion in Limine, Dkt. No. 4519-1) has recognized no exception for factual materials but has instead adhered to the plain language of the statute, that "no part" of a marine investigation is admissible.

In this Court's June 28, 2011 Order (Dkt. 3071), the Court agreed that Section 6308 renders inadmissible any part of a marine casualty investigation, **as an activity**. The Plaintiffs argue that because the purpose of Section 6308 is to shield government personnel from becoming embroiled in civil litigation, admitting factual material will not offend the statute. The sole decision on which the Plaintiffs rely, *In re Danos & Curole, supra*, itself shows the fallacy of that argument. In that case, the court admitted into evidence the photographs in question, but to authenticate the photographs, the Coast Guard officer who took them had to testify. In that case, the Coast Guard gave permission under 46 U.S.C. § 6308(b) for such testimony. 278 F.Supp.2d at 785-86. Factual material developed at a marine casualty investigation is not self-authenticating, much less self-explainable. Allowing factual materials to be admitted will inevitably embroil government personnel in the civil litigation. In light of the foregoing, the Court should find that JIT factual materials are inadmissible.

   **B.** **JIT Testimony, including Testimony of Witnesses Who Later Invoked the Fifth Amendment, is Inadmissible.**

Plaintiffs argue broadly that all testimony given at the JIT hearings is admissible and not subject to Section 6308 because it is simply factual material not subject to the statute. As discussed immediately above, Section 6308(a) does not recognize an exception for factual material. Instead, it states plainly that "no part" of a marine casualty investigation is admissible. The testimony given is part of the JIT investigation and, therefore, is inadmissible under the statute.

7

Relying on the Federal Rules of Evidence for admissibility authority, despite Section 6308, is in direct conflict with the statute. The statute begins, "Notwithstanding any other provision of law." In *United States v. Egan Marine Corp.*, ____ F.Supp.2d ____, 2011 WL 3489811 at *4 (N.D. Ill. Aug. 9, 2011), the court, noting the introductory language of 46 U.S.C. § 6308 ("Notwithstanding any other provision of law"), ruled that an expert's opinion cannot rely on a report that is inadmissible under 46 U.S.C. § 6308 and that Rule 703, Fed. R. Evid., which ordinarily allows an expert to base an opinion on inadmissible facts or data, does not trump the statute. If Section 6308(a) prohibits the evidence, the evidence cannot be admitted regardless of the Federal Rules of Evidence. Accordingly, the mere unavailability of a witness, whether because the witness has invoked the Fifth Amendment or for any other reason, does not make the testimony admissible. The United States in its November 18, 2011 letter response (p. 4) agrees that JIT testimony is inadmissible even if the witness has later invoked his or her Fifth Amendment rights.

In Transocean's Memorandum in Support of its Motion in Limine, pp. 7-9 (Dkt. 4519-1), Transocean argued that, even if the testimony were not barred by Section 6308(a), it would nevertheless not be admissible under Rule 804(b)(1), Fed. R. Evid., because Transocean did not have "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" at the JIT hearings. Plaintiffs' Response (p. 5, Dkt. 4649) states that the parties-in-interest (PIIs) at the hearings had a full opportunity to examine and cross-examine witnesses. In support of that assertion, Plaintiffs cite to the Board Hearing Transcript of May 11, 2010, p. 12. There is nothing at the place in the transcript or anywhere else where the Board stated that the PIIs would have a full opportunity to examine and cross-examine witnesses. Instead, the Board

8

(Capt. Nguyen) stated that **non**-PIIs would **not** have the right to examine and cross-examine witnesses.

To contend that PIIs had the opportunity to fully cross-examine witnesses, or to contend that the hearings were held in accordance with the Federal Rules of Procedure, is belied by the hearing transcripts. To point out every instance where cross-examination was curtailed or where the Rules were violated would require an exhaustive and exhausting discussion.  Both plaintiffs' counsel and defense counsel complained repeatedly about the JIT hearing process.  (*See* Exhibit 2 for several examples taken from transcripts of the JIT hearings  available at http://www.uscg.mil/hq/cg5/cg545/dw/exhib/; last visited on November 28, 2011).  For example, at the October 7, 2010 P.M. Session, Mr. Penton, counsel for MDL plaintiff Mike Williams, who was a designated PII at the JIT hearings, expressed that his frustration with the limited opportunity to question witnesses during the hearing process by complaining, "One question.  This is unbelievable.  This is unbelievable." (*See* full excerpt at Ex. 2).

To contend that the PIIs in interest had a full and fair opportunity to examine and cross-examination witnesses in accordance with the Federal Rules of Evidence, or even that the Federal Rules of Evidence guided the Board, is pure fiction.  As Transocean pointed out in its Memorandum in Support of its Motion in Limine, pp. 7-9, the JIT is an investigatory body, not an adjudicatory body, and the Board's refusal to follow the Federal Rules of Evidence or to allow full cross-examination illustrates that fact.  Transocean had neither a similar motive nor an opportunity to examine and cross-examine witness.

Based on the foregoing, the Court should sustain Transocean's Motion in Limine and exclude all evidence produced during the JIT investigation and all testimony given at the JIT hearings.

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
kent.sullivan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller