**EXHIBIT 2**

The following are examples of both complaints made by plaintiffs' counsel and defense counsel about the JIT hearing process.  Full transcripts of the JIT hearings are available at http://www.uscg.mil/hq/cg5/cg545/dw/exhib/; last visited on November 28, 2011.

- At the May 28, 2010 hearing, Mr. Kohnke, counsel for Transocean, attempted to cross-examine a witness with a document.  Despite the fact that the witness testified he had seen the document before (transcript, p. 85, l. 20), Captain Nugyen refused to allow cross-examination, because the **Board** had not seen the document before (transcript, p. 87, l. 13).  Even after counsel offered to make a copy of the document so the Board could review it, counsel was instructed that such documents had to be presented to the Board in advance.  Counsel asked for clarification:

    > Le me make sure I understand what you're saying.  When we resume and one of these witnesses are here and I have made copies of the BP document and given it to the board then I'll be permitted to cross examine the witness at that time?
    >
    > CAPT NGUYEN:
    >
    > You can request the board to consider witnesses and evidence and if we believe that the witnesses that you offer have relevance to this investigation we will provide that to the PIIs and we can have this discussion during the hearing.
    >
    > (May 28, 2010 Hearing Transcript, p. 89, l. 1 – 16).

- During the July 23, 2010 hearing, counsel for Transocean attempted to cross-examine Dr. John Smith, a petroleum engineering expert hired by the Minerals Management Service, about what good practice required regarding the negative pressure test.  Mr. Smith had earlier testified to the very subject. Counsel asked about a telephone call placed by personnel on the rig to Mr. Hafle on shore about the results of the negative pressure test.  Captain Nguyen prohibited that cross-examination on the grounds that Mr. Hafle should be questioned, not Mr. Smith.  (Transcript p. 142, l. 25 – p. 145, l. 21).  After a heated exchange, where it was pointed out by counsel that hypothetical questions of expert witnesses is perfectly proper, Captain Nuygen responded, "I'm not sure if you heard me right a while ago, and that is, cross-examination and objection, and if they don't further the purposes of this investigation, they are not allowed, period."  (Transcript, p. 148, l. 1 – p. 149, l. 14).  At that point, counsel for Transocean stated that he would bring a copy of the Federal Rules of Evidence for the Board to refer to (transcript, p. 149, l. 15).  Captain Nguyen retorted, "It's possible we can use it. It's possible that we don't have to use it."  (Transcript, p. 154, l. 8).

15498160.1

Contrary to the stance the Plaintiffs are now taking, at the hearings themselves, Mr. Penton, counsel for MDL plaintiff Mike Williams, who was a designated PII at the JIT hearings, complained repeatedly about the JIT hearing process:

- At the August 24, 2010 hearing, Mr. Penton, who was toward the last on the list of counsel to cross-examine the witness, was attempting to cross-examine on the ESD system. There was an objection that the questioning was repetitive, because **another attorney**, representing **another party**, had cross-examined on the same subject (Transcript, p. 226, l. 3). Mr. Penton complained:

  > Judge, every Party in Interest has – just because someone else has asked a question does not mean that every Party in Interest should not be able to ask a particular question (p. 226, l. 24).
  >
  > . . .
  >
  > But I'm way down the list, and I don't want to be restricted because we've been bothering this man for this many hours. I have a right to ask these questions (p. 227, l. 15).

- The transcript of the October 5, 2010, A.M. Session, shows without question that the parties were limited by the Board in the amount of time they would have for questioning. The parties did not have a full or fair opportunity to examine or cross-examine witnesses.

  At that hearing, Mr. Penton attempted to ask about the EDS system, a subject on which the Board and counsel for other parties had questioned the witness, but, in Mr. Penton's words, "I haven't asked a single question about the EDS system, Judge." (Transcript, p. 302, l. 18). Nevertheless, Mr. Penton was prohibited from cross-examining on that subject, prompting the following lengthy complaint:

  > MR. PENTON:
  >
  > Well, because you have covered it five times in this room, does that mean Mike Williams can't ask these questions?
  >
  > . . .
  >
  > CAPT. NUYGEN:
  >
  > But Mr. Klepinger is not responsible for the EDS. He has not been trained on it. He has responded, if I understand Mr. Klepinger, so let's move on. That's not a topic he can comment on. Please move on.

MR. PENTON:

Okay, Captain.

All right.  Let's talk about – Well let me revisit something.

Captain, I need you to reconsider that last comment.  There have been questions – I'm looking at my notes, there have been direct questions of this witness about the EDS system and the engagement and activation of the EDS system.  Why can't we ask a very few questions about the EDS system?

HON. JUDGE ANDERSEN:

This Board has actually studied a variety of things, and unless some member of the Board believes that this witness' testimony on that subject beyond what it has already heard **would help it reach its conclusions**, then we're just going to have to move on.

MR. PENTON:

Well, that means that you don't know my question.

HON. JUDGE ANDERSEN:

Remember, we started this – The statute permits, allows PIIs to participate.  Even though we began these hearings a couple of weeks ago **with a time limit that was the same for everybody** in an effort to give everybody a chance, **you and others argued it was way too short to handle all situations,** and at some point the law of diminishing returns sets in.

If any member of the Board wants to hear additional testimony from this witness on the operation of the EDS system, then as the presiding person as far as questions are concerned, I will allow the question to be asked.

MR. PENTON:

Judge, it's not the operation.

The way those questions arose from the Board were in terms of who was in charge, the transfer of the "in charge," and that was asked by everybody, and that's what I want to ask about.  He was a material witness.  He was there.

HON. JUDGE ANDERSEN:

Does anyone want to hear any more from this witness on this subject? Okay. Let's move on. And we will have another DPO coming up in the future and maybe witnesses will come back, but there isn't one member of the Board, **that has to prepare recommendations**, that believes at his point in time that additional testimony from this witness on this score is worth listening to at this point.

MR. PENTON:

Judge, just so that I'm clear, Mike Williams is not allowed to ask questions on the same topic that the Board and other Parties in Interest asked? I just want to make sure – I just want to make sure what you're doing.

HON. JUDGE ANDERSEN:

I'm doing what I do, so later on if you want to get a transcript and you can argue if it's proper or improper, that's fine. So the perfect is the enemy of the good. If you want to move on to another subject area, you can do it. (Transcript, p. 302, l. 22 – p. 306, l. 6.; emphasis added).

The foregoing exchange went on far longer, with Mr. Penton complaining repeatedly about not being allowed to ask questions, simply because the Board and other counsel had examined on the same topic. The foregoing also reveals that there was a time limit placed on all parties regarding the questioning they were permitted to do, and Mr.Penton and others complained that the time limit was too short. It is clear the Board was interested solely in acquiring just enough information to "reach its conclusions" and "to prepare recommendations." There was no interest in having a complete, thorough examination of witnesses. That is understandable, because as Transocean has pointed out, the proceedings were investigatory only, not adjudicatory. To suggest that the testimony can be imported into a judicial proceeding because the testimony satisfies the requirements of Rule 804, Fed. R. Evid., is to ignore the character of the JIT hearings.

- At the October 7, 2010 P.M. Session, Mr. Penton's frustration reached the boiling point. Again, Mr. Penton attempted to cross-examine the witness on a subject on which Mr. Penton had not asked a single question:

    MR. PENTON:

    I haven't asked a question, Judge.

JUDGE ANDERSEN:

What she is saying is you have already established all of that so we know that, so if you want to get to the question, that would be fine.

MR. PENTON:

I want the witness to testify in terms of the chart. Because the charts that we have, Mr. O'Bryan is not on the ones I have. I want to know where he stands in relation to Mr. Walz and to Mr. Sprague.

MS. KARIS:

I think Mr. O'Bryan is on the chart that the Panel itself has put up respectfully, and Mr. O'Bryan himself was up here for hours testifying where he fits and who he reports to, so in the interest of Mr. Walz –

MR. PENTON:

One question. This is unbelievable. This is unbelievable.

(Transcript, p. 119, l. 14 – p. 120, l. 12).