# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

| Andrew Langan, P.C. | | |
|---|---|---|
| To Call Writer Directly: | (312) 862-2000 | Facsimile: |
| (312) 862-2064 | | (312) 862-2200 |
| andrew.langan@kirkland.com | www.kirkland.com | |

November 7, 2011

**HAND DELIVERY**

| The Honorable Carl J. Barbier | The Honorable Sally Shushan |
|---|---|
| United States District Judge | United States Magistrate Judge |
| United States District Court | United States District Court |
| 500 Poydras Street, Room C-268 | 500 Poydras Street, Room B345 |
| New Orleans, LA 70130 | New Orleans, LA 70130 |

Re: <u>BP's Objections to Certain Exhibits on the PSC's "List of 300":
Newspaper Articles, Learned Treatises; Documents Relevant to Phase II
Issues; and Press Releases Issued by the Parties During Litigation</u>

Dear Judge Barbier and Magistrate Judge Shushan:

On October 17, 2011, the PSC submitted letters to the Court covering certain issues raised by the PSC's "List of 300" Exhibits: (1) MBI Testimony and Reports; (2) E-Mail Strings; (3) Alleged 702 Issues; Bly Interview Notes; (4) Public Records / Govt. Reports; (5) Alleged "Subsequent Remedial Measures"; and (6) Prior Safety Incidents. On November 2, 2011, Magistrate Judge Shushan entered an order containing a schedule for responding to those letters. That schedule also permits BP to raise certain "miscellaneous" document categories not covered by the PSC's list of six issues set forth above; it is that category that is the purpose of this submission. The document categories addressed below are: (1) newspaper articles; (2) learned treatises; (3) documents relevant to Phase II issues; and (4) press releases issued by parties during the pendency of this case.

In connection with this submission, BP is providing the Court with a CD containing various exhibits from the PSC's "List of 300."[1] As in the case of the PSC's six letters, BP's letters do not address all of the objections to the PSC's "List of 300," but instead list examples.[2] BP's remaining objections to the PSC's "List of 300" are included on the attached CD in Microsoft Excel format.

---

[1] That CD contains the following exhibits from the PSC's "List of 300" that are discussed herein: TREX-02641, TREX-04996, TREX-06026, TREX-06027, and TREX-06028

[2] BP reserves its objections to documents that are designated as trial exhibits by the PSC and other parties in the future.

---

Hong Kong   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 2

    1.    <u>TREX-06027 Is A Newspaper/Internet Article And Is Inadmissible Hearsay.</u>

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Once a party makes a hearsay objection, the burden shifts to the proponent of evidence "to show by a preponderance of evidence that the evidence fell within an exclusion or exception to the hearsay rule." *See Sowders v. TIC United Corp.*, Civil Action No. SA-05-CA-309-06, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007).

TREX-06027, which is included in the PSC's "List of 300," is an internet article published on May 17, 2010 by "IWatch News" entitled "Renegade Refiner: OSHA Says BP Has 'Systemic Safety Problem.'" The article contains three levels of hearsay. First, the article itself is hearsay. Second, the article is allegedly based on a "Center for Public Integrity analysis." The "Center for Public Integrity analysis" is not attached to the article. Third, the article - apparently relying on the "Center for Public Integrity analysis" - contains various undocumented assertions about safety incidents at BP refineries, including quotations allegedly attributed to certain government and union officials and an officer from the National Petrochemical & Refiners Association. These quoted statements were allegedly recorded by the "Center for Public Integrity." Although it discusses several refineries, the article contains no discussion of deepwater drilling other than a passing reference to the Deepwater Horizon incident.

Because it contains hearsay, hearsay-within-hearsay, and hearsay-within-hearsay-within-hearsay, Trial Exhibit TREX-06027 is inadmissible. Indeed, as the Fifth Circuit has ruled, newspaper articles are "classic, inadmissible hearsay." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles-classic, inadmissible hearsay."); *Barkley v. Dillard Dept. Stores, Inc.*, 277 F. App'x 406, 412 (5th Cir. 2008) (unpublished opinion) ("We first note that newspaper articles are hearsay and inadmissible."). TREX-06027 is also inadmissible because it contains irrelevant discussions of refineries and other incidents, a subject to be covered by BP's forthcoming Motion in Limine to Preclude Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident.

**<u>The "Residual Hearsay" Exception Does Not Apply To The TREX-06027 Newspaper Article</u>**

During the parties' meet-and-confer discussions, the PSC asserted that TREX-06027 should be admitted into evidence because it falls within the "residual hearsay" exception. In relevant part, Federal Rule of Evidence 807 states: "A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a

# KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 3

material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

The Fifth Circuit has held that "[t]he residual hearsay exception 'is to be 'used only rarely, in truly exceptional cases.'" *U.S. v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005) (*quoting United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000)). As the Fifth Circuit explained in *U.S. v. Phillips*, a party seeking to utilize the residual hearsay exception - as the PSC does here - faces a "heavy burden":

> The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force. [I]n order to find a statement trustworthy, a court must find that the declarant of the ... statement was particularly likely to be telling the truth when the statement was made.

*United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (citations omitted); *see also Authement v. Seacor Marine, Inc.*, CIV. A. 92-1721, 1993 WL 386304, at *1 (E.D. La. Sept. 20, 1993) ("[t]he touchstone of the residual exceptions is that the 'reliability of the evidence must equal or exceed that of the other exceptions to the hearsay rule.'") (alterations omitted).

Here, the PSC has not satisfied its "heavy burden" of demonstrating that any of the multiple levels of hearsay contained in TREX-06027 - including the hearsay statements from the "Center for Public Integrity analysis" or the quoted government, union, or trade organization officials - contain "indicia of both trustworthiness and probative force." *Id.* Accordingly, TREX-06027 is not one of the "truly exceptional" documents that qualify for the "rare" residual hearsay exception under Fifth Circuit law.

Accordingly, BP respectfully requests that the Court exclude TREX-06027 as inadmissible hearsay.

2.  <u>TREX-06026: Documents Are Not Admissible Into Evidence Solely Because They are "Learned Treatises."</u>

TREX-06026 contains scattered pages from a 2008 book titled *Failure to Learn* written by Australian professor Andrew Hopkins. The pages contain allegations relating to other incidents involving BP at Texas City and Grangemouth, and an incident involving an Exxon subsidiary at Longford. Among other things, the author offers the opinion that BP's officers and

# KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 4

management suffer from a "learning disability." The exhibit is inadmissible for at least three independently sufficient reasons: (1) it is hearsay; (2) it is inadmissible for the reasons set forth in BP's forthcoming Motion in Limine to Preclude Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident; and (3) it is incomplete, containing only a small number of pages from a much larger book, *see* Fed. R. Evid. 106.

During the parties' meet and confer, the PSC did not dispute that TREX-06026 contains hearsay; rather, the PSC argued that TREX-06026 should be admitted because it falls within the "scholarly works" exception to the hearsay rule. Assuming that by the "scholarly works" exception the PSC is referring to the "learned treatise" exception, that exception cannot be used to admit TREX-06026 into evidence as the PSC contends. Federal of Evidence 803(18) provides:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. **If admitted, the statements may be read into evidence but may not be received as exhibits.** Fed. R. Evid. 803(18) (emphasis added).

Contrary to the PSC's contention, Federal Rule of Evidence 803(18) does not allow "learned treatises" to be admitted into evidence. Rather, "to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination," "statements" from a document that qualifies as a learned treatise "may be read into evidence but may not be received as exhibits." *Id*. If and when the PSC attempts to use TREX-06026 during direct or cross examination of an expert, the parties can address whether statements from that document "may be read into evidence," depending on the Court's resolution of BP's motion *in limine* objections and whether the other requirements of Fed. R. Evid. 803(18) are met. But the PSC contradicts Fed. R. Evid. 803(18) in arguing that TREX-06026 may be admitted into evidence as a scholarly work or learned treatise.

Accordingly, BP respectfully requests that the Court rule that TREX-06026 may not be admitted into evidence under the learned-treatise rule.

       3.     <u>TREX-02641 and TREX-04996 Are Solely Relevant To Phase II Issues, And Should Not Be Admitted In the Phase I Trial.</u>

## KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 5

TREX-02641 and TREX-04996 are Phase II documents that should be excluded as irrelevant to the Phase I trial.

The Court has ordered that the trial in this case is to be conducted in several phases, and that "[e]ach phase will be comprised of the presentation of evidence . . . pertaining to specific issues that will be the focus of that phase . . . ." Amended Pretrial Order No. 41, Sep. 21, 2011, Dkt. No. 4083, pp. 1-2. The Court has also required that the parties "present evidence relevant to a particular Phase during that Phase . . . ." *Id.* at p. 4.

While the Court has recognized that "there may be circumstances in which it is appropriate to present evidence in one phase that is relevant to another phase," *id.*, the PSC has not demonstrated that any of the following three exhibits present such circumstances:

- TREX-02641 is an email chain sent after April 20, 2010, solely discussing source control issues (a Phase II topic)[3]; and

- TREX-04996 is an email sent after April 20, 2010 solely discussing flow rate (also a Phase II topic).

BP respectfully requests that these exhibits not be admitted as evidence in the Phase I trial; their admissibility can be addressed at the appropriate time.

4. <u>TREX-06028, A Press Release Prepared By A Party During The Litigation, Is Inadmissible.</u>

TREX-06028 is an August 12, 2010 "Fact Sheet" prepared by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA) containing allegations relating to BP's conduct with respect to its Texas City refinery.[4] TREX-06028 is inadmissible for the reasons set forth in BP's forthcoming Motion in Limine to Preclude Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident.  (As

---

[3] During the parties' meet-and-confer discussions, the PSC asserted that TREX-02641 was relevant to Phase I because of a reference to "burst disk subs." Burst disks, also known as rupture disks, are alleged to have some relevance to source control issues, but the PSC has not demonstrated that the "burst disk subs" discussed in TREX-02641are relevant to Phase I of this trial.

[4] Although there is no date on the exhibit, the latest date within the document itself is August 12, 2010, and the HTML coding for the Fact Sheet web page that is on the OSHA website contains a "Date" field with the value of "08/12//2010."

## KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 6

discussed in BP's Motion in Limine to Preclude the Introduction into Evidence of Other Government Reports and Testimony, that Chemical Safety Board report is inadmissible not only because it is irrelevant and contains hearsay, but also because as a Chemical Safety Board report its admissibility is specifically barred by statute: 42 U.S.C. § 7412(r)(6)(G). In addition, TREX-06028 contains inadmissible hearsay and hearsay-within-hearsay: for example, it refers to the Chemical Safety Board's Report on the Texas City incident.

The PSC contends that TREX-06028 is admissible pursuant to Federal Rule of Evidence 803(8), the public records exception. But the PSC cites no authority for the proposition that the public records exception applies to press releases created by the United States during the pendency of cases to which the United States is a party. As a general matter, press releases prepared by the United States during the pendency of this litigation or leading up to the trial should not be admitted into evidence, particularly if they concern matters that the United States contends are relevant to the trial.[5]

For the foregoing reasons, BP respectfully requests that the Court exclude TREX-06028 as inadmissible hearsay.

**Conclusion**

For the foregoing reasons, BP respectfully requests that the Court rule that:

- TREX-06027 is inadmissible;

- TREX-06026 may not be admitted into evidence as a learned treatise;

- TREX-02641 and TREX-04996 are not admissible in the Phase I trial;

- TREX-06028 is inadmissible.

---

[5] The United States apparently contends that the Texas City incident is relevant to the Phase I trial. In certain circumstances, press releases may be offered *against* the issuing party if they meet the requirements for a party admission under Federal Rule of Evidence 801(d)(2), which will depend upon the specifics of the press releases. Whether a press release issued before the incident is admissible should be determined on a case-by-case basis.

## KIRKLAND & ELLIS LLP

The Honorable Carl J. Barbier
The Honorable Sally Shushan
November 7, 2011
Page 7

                                                Respectfully submitted,

                                                /s/ Andrew Langan, P.C.

                                                Andrew Langan, P.C.

cc:    Steve Herman
       James Roy
       Defense Liaison Counsel
       Mike Underhill
       Hon. Attorney General Luther Strange
       Cory Maze
       Ben Allums
       Mike O'Keefe