

U.S. Department of Justice

Civil Division, Torts Branch
Admiralty & Aviation
P.O. Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
*Overnight Delivery Address:*
*7th Floor, Room 7-5395*
*450 Golden Gate Avenue*
*San Francisco, CA 94102-3463*

Telephone: (415) 436-6648
Facsimile: (415) 436-6632
Email: mike.underhill@usdoj.gov

---

<u>Via E-Mail and Hand Delivery</u>                November 22, 2011

The Honorable Carl J. Barbier              The Honorable Sally Shushan
United States District Judge               United States Magistrate Judge
500 Poydras Street, Room C-268             500 Poydras Street, Room B-345
New Orleans, Louisiana 70130               New Orleans, Louisiana 70130

  Re: United States' *(Corrected)* Response to BP's Motion in Limine To Preclude the Introduction into Evidence of the Joint Investigation Report and Testimony [Doc. 4511]

Dear Judge Barbier and Magistrate Judge Shushan:

  The United States hereby responds to the October 17th PSC's letter to the Court and to BP's and other defendants' motions in limine regarding the admissibility of the Joint Investigation report and testimony. *See* Oct. 17, 2011 Letter [Doc. 4340]; Motions in Limine by BP, Halliburton, Transocean, and Cameron [Doc. 4511, 4522, 4519, and 4520, respectively].

  The issues before the Court are the admissibility of the following items: (1) testimony or other statements provided to the Joint Investigation Team ("JIT," comprised of the U.S. Coast Guard and the Bureau of Ocean Energy, Management, Regulation and Enforcement); (2) the JIT Final Report, including Volume II, issued from BOEMRE; (3) photographs taken and data generated during the Joint Investigation; (4) JIT testimony by witnesses who later invoked their Fifth Amendment rights; and (5) the use of the JIT report by expert witnesses.

  The admissibility of this material is controlled by the protections of 46 U.S.C. § 6308, which Congress expressly provided to government investigations of this kind. Although information obtained through the Joint Investigation can be used to inform the parties in this litigation, the statute prohibits admission of transcripts from the Joint Investigation or any portion of the JIT Final Report, both Volumes I and II.

## I. Background

The Department of Homeland Security and the Department of the Interior convened the JIT under Title 46, § 6301 *et seq*, on April 27, 2010. The "Statement of Principles and Convening Order" provides that the JIT will conduct its investigations "in accordance with the provisions of 43 U.S.C. § 1348, 46 U.S.C. § 6301, *et seq.*, and the applicable regulations thereunder." The Convening Order further states that if procedures for the agencies differ, "the procedures for a Marine Board of Investigation shall govern." As authorized by Congress, these types of administrative investigations are conducted to determine the cause of casualties to the fullest extent possible, to promote safety of life and property at sea, and to obtain information for the purpose of preventing or reducing the effects of similar casualties in the future. Thus, 46 U.S.C. § 6301(6) requires that investigations determine "whether there is need for new laws or regulations, or amendment or repeal of existing laws or regulations, to prevent the recurrence of the casualty."

The Coast Guard and BOEMRE investigation team members worked together on a daily basis for over fourteen months. The Coast Guard and BOEMRE achieved the mandate of a single final report by partnering on all aspects of the investigation, including the collection of evidence used in the case, the decisions on witnesses for the public hearings, and the management of the public hearings. The agencies also worked together in drafting both sections of the final report to ensure a comprehensive assessment of the incident. In accordance with the Convening Order, the JIT issued a single, two-volume report on September 14, 2011. The joint report is comprised of Volume I, covering the areas investigated by the Coast Guard, and Volume II, covering the areas investigated by BOEMRE. The fact that the report comprises two volumes does not remove any portion of the final report from either § 6301 or § 6308.

## II. Discussion

### A. The Joint Investigation Final Report

46 U.S.C. § 6308 provides that "[t]he written report will not be admissible at trial." *In re Danos & Curole Marine Contrs., Inc.*, 278 F. Supp. 2d 783, 785 (E.D. La. 2003) (citing *Eckstein Marine Serv., Inc., v. Crescent Marine Towing, Inc.*, 1999 WL 58264 (E.D. La. Feb. 2, 1999) and *ConAgra Inc., v. Weber Marine, Inc.*, 1999 WL 705546 (E.D. La. Sept. 8, 1999)). The Deepwater Horizon Joint Investigation was conducted under 46 U.S.C. § 6301 *et seq.*, and the report is therefore inadmissible under 46 U.S.C. § 6308(a).

Under the jointly issued Convening Order, the Joint Investigation was conducted in accordance with the rules and procedures relating to Marine Boards of Investigation, and the final parts are considered a "single report." (Convening Order ¶ 5.) Government investigations of marine casualties under Section 6301, *et seq.*, serve important federal interests of determining causation and are not intended to assign civil liability. The entire marine casualty investigation report is inadmissible, "including findings of fact, opinions, recommendations, deliberations, or conclusions." *Id.* Investigations of marine casualties are conducted "for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal

responsibility." 46 C.F.R. § 4.07-1. Congress enacted the statute to prevent accident investigators from becoming embroiled in civil litigation. *In re Crazy Cove Marina, Inc.*, 521 F. Supp. 2d 504, 507 (E.D.N.C. 2007). The government holds a strong public safety interest in preserving its right and ability to conduct marine casualty investigations and, likewise, obtain cooperation from private parties who otherwise would be reluctant to provide cooperation because of litigation concerns.

### B.    Testimony or Other Statements Provided to the Joint Investigation

With respect JIT testimony, courts have, in general, deemed the transcripts of testimony presented at Marine Board hearings inadmissible in civil proceedings. *See In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006) (ruling that a transcript was inadmissible); *In re Am. Milling Co.*, 270 F. Supp. 2d 1068, 1074-75 (E.D. Mo. 2003), *rev'd in part on other grounds*, 409 F.3d 1005 (8th Cir. 2005) (a "transcript of the Coast Guard investigatory hearing" was excluded from evidence because the "admissibility of a documents produced in the course of a Coast Guard casualty investigation is governed by 46 U.S.C. § 6308").

Witnesses provided testimony to the JIT during its hearings. The JIT used that testimony as part of the findings and conclusions of both volumes of the report. The JIT testimony is subject to the evidentiary preclusion of § 6308. Subsequently, the parties in the MDL deposed those same witnesses who provided testimony during the investigation, thereby ameliorating the potential need of a witness's testimony before the JIT. Because use of the deposition testimony is freely available, any potential conflict with § 6308 is avoided.

### C.    Photographs and Data from the Joint Investigation

To the extent certain evidentiary materials might otherwise be admissible at trial, the United States does not object to the use of purely factual evidence, such as raw data, photographs of the BOP, and test data and measurements from BOP testing at Michoud, that otherwise would be unavailable to the parties. Due to the unique nature of the BOP, the JIT and the Court allowed the parties to participate in the examination's Technical Working Group and provided the parties with access to this material during the testing process. The Court's orders have recognized that such factual materials should be available for all involved parties. This type of evidence is, of course, distinguishable from the inadmissible JIT and DNV reports that render findings and conclusions drawn *from* the testing. Those reports, which make findings and conclusions based upon the testing and testing data, are subject to the evidentiary preclusion of 46 U.S.C. § 6308(b).

Judge Shushan previously ruled on the evidentiary protections afforded the DNV materials. The Court protected DNV reports and communications from disclosure under § 6308, but permitted disclosure of DNV's factual materials, such as test data and photographs. [Order, June 28, 2011, Doc. 3071.] Similarly, this District has admitted into evidence Coast Guard investigation photographs because they illustrated the condition of the objects prior to being altered by the investigation. *In re Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783 (E.D. La. 2003) (finding Coast Guard photographs admissible); *but see Falconer v. Penn Mar., Inc.*, 397 F. Supp. 2d 68 (D. Me. 2005) (disagreeing with *Danos* in holding that § 6308 prohibits the use of Coast

Guard photographs where the photographs revealed conclusory opinions of the USCG investigating officer); *In re Crosby Tugs, L.L.C.*, 2004 WL 5482859 (E.D. La. Aug. 16, 2004) (distinguishing *Danos* in holding that measurements taken by Coast Guard investigators were not admissible as they also revealed the investigating officer's determination as to the cause of the casualty).

### D. JIT Hearing Testimony from Witnesses Who Have Invoked the Fifth Amendment Protections in this Litigation

Some witnesses who provided substantive testimony at the JIT hearings invoked their Fifth Amendment rights against self-incrimination in their subsequent depositions in the MDL. For those witnesses asserting their Fifth Amendment privilege against self-incrimination, the statutory prohibition in § 6308 should bar their previous JIT testimony from being admitted as "former testimony" under Fed. R. Evid. 804(b)(1). As with witnesses who provided substantive testimony before the JIT, the MDL depositions of the "Fifth Amendment" witnesses may be used in this case. A consequence for the Fifth Amendment depositions is that the Court may draw adverse inferences with respect to questions posed to the witness and that the witness chose not to answer. *See FDIC v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 977-79 (5th Cir. 1995).

### E. Expert Witnesses

Courts have generally ruled that expert witnesses may not testify about a Marine Board report, and that the investigation report does not become admissible if an expert relies on it or cites the findings. *See Baker Hughes Oilfield Operators v. Seabulk Tankers, Inc.*, 2004 WL 859199 (E.D. La. Apr. 20, 2004). An expert report that cites or references a Marine Board report is not necessarily inadmissible, because those portions of the expert's report that refer to or rely on the Marine Board report may be redacted. *Id.* Additionally, the expert is not automatically barred from testifying. *Id.* In that scenario, the Court would consider whether the expert's opinion is supported by adequate bases outside of the Marine Board report. *Id.* This analysis would need to be done on a case-by-case basis.

### III. Conclusion

Thank you for your consideration of the United States' response.

Respectfully submitted,

R. Michael Underhill
Attorney in Charge
Dept. Of Justice, Torts Branch
West Coast and Pacific Rim Office

cc: (via e-mail)
    Plaintiffs' Liaison Counsel
    States Coordinating Counsel
    Defendants' Liaison Counsel
    Steve O'Rourke, DOJ, ENRD
    Ben Alums
    Mike O'Keefe

**Attachment: Convening Order**

Appendix P | CONVENING ORDER JOINT DEPARTMENT OF THE INTERIOR AND DEPARTMENT OF HOMELAND SECURITY STATEMENT OF PRINCIPLES AND CONVENING ORDER REGARDING INVESTIGATION INTO THE MARINE CASUALTY, EXPLOSION, FIRE, POLLUTION, AND SINKING OF MOBILE OFFSHORE DRILLING UNIT DEEPWATER HORIZON, WITH LOSS OF LIFE IN THE GULF OF MEXICO 21-22 APRIL 2010

JOINT DEPARTMENT OF THE INTERIOR
AND
DEPARTMENT OF HOMELAND SECURITY
STATEMENT OF PRINCIPLES AND CONVENING ORDER
REGARDING
INVESTIGATION INTO THE MARINE CASUALTY, EXPLOSION, FIRE,
POLLUTION, AND SINKING OF MOBILE OFFSHORE DRILLING UNIT
DEEPWATER HORIZON, WITH LOSS OF LIFE
IN THE GULF OF MEXICO 21-22 APRIL 2010

1. The Department of the Interior and the Department of Homeland Security (collectively, "the Agencies") have determined that a joint investigation ("Joint Investigation") of the April 21-22, 2010 explosion and sinking of the mobile offshore drilling unit DEEPWATER HORIZON is warranted. Therefore, the Agencies hereby adopt the following statement of principles and convening order regarding the Joint Investigation. Each Agency, at its discretion, may elect to adopt additional internal measures to govern direction and oversight of their respective portion of the Joint Investigation.

2. The Outer Continental Shelf Lands Act ("OCSLA") grants the Secretaries of the Agencies the authority to investigate incidents resulting from operations on the U.S. Outer Continental Shelf ("OCS"). 43 U.S.C. § 1348. The Minerals Management Service ("MMS"), a unit of the Department of the Interior, and the United States Coast Guard ("USCG"), a component of the Department of Homeland Security, have identified a process for conducting investigations under the authority of the OCSLA in a Memorandum of Agreement ("MOA"), dated 27 March 2009. As set forth in the MOA, the MMS investigates incidents associated with, *inter alia*, exploration and drilling operations for hydrocarbons on the OCS, and the USCG investigates, *inter alia*, deaths, injuries, property loss, and environmental damage arising from such incidents.

3. A Joint Investigation is hereby convened in accordance with the MOA, as modified herein. The Joint Investigation is classified as a Coast Guard Marine Board of Investigation within the meaning of 46 C.F.R. § 4.09 and a Panel Investigation within the meaning of 30 C.F.R. § 250.191. The Joint Investigation is convened pursuant to agency authorities and will be conducted pursuant to the procedures contained in 43 U.S.C. § 1348, 14 U.S.C. § 141, 46 U.S.C. §§ 6301 *et seq.*, 33 C.F.R. § 140, Subpart C; 30 C.F.R. §§ 250.186-191, and 46 C.F.R. Part 4.

4. The Agencies intend to conduct the Joint Investigation as follows: The MMS and the USCG will co-chair the Joint Investigation. The Joint Investigation team will investigate thoroughly the matter hereby submitted to it in accordance with the provisions of 43 U.S.C. § 1348, 46 U.S.C. § 6301 *et seq.*, and the applicable regulations thereunder. The Joint Investigation shall have the powers of both Agencies, and, for the public hearing portions of the Joint Investigation, shall follow the policies and procedures for a Marine Board of Investigation contained in 46 C.F.R. § 4.09 and the Coast Guard Marine Safety Manual, Volume V. In cases where the procedures of a Marine Board of Investigation and a Panel Investigation appear to differ, the procedures for a Marine Board of Investigation shall govern. Any issue involving procedure may be referred to

Appendix P | CONVENING ORDER JOINT DEPARTMENT OF THE INTERIOR AND DEPARTMENT OF HOMELAND SECURITY STATEMENT OF PRINCIPLES AND CONVENING ORDER REGARDING INVESTIGATION INTO THE MARINE CASUALTY, EXPLOSION, FIRE, POLLUTION, AND SINKING OF MOBILE OFFSHORE DRILLING UNIT DEEPWATER HORIZON, WITH LOSS OF LIFE IN THE GULF OF MEXICO 21-22 APRIL 2010

the Chief of the Accident Investigation Board of the MMS, and the Chief of USCG Office of Investigations and Casualty Analysis. They will refer any unresolved procedural issue to the Chief, Office of Offshore Regulation, MMS, and the Commandant, Director of Prevention Policy (CG-54), USCG, who will consider the matter together and provide guidance jointly to the Joint Investigation.

5. Upon completion, the Joint Investigation team will issue a single report to the Director, MMS, and the Commandant, USCG, containing the evidence adduced, the facts established thereby, and its conclusions and recommendations. The report shall meet the requirements of both the MMS and USCG. Any conclusions or recommendations concerning commendatory actions or misconduct which would warrant further inquiry shall be referred by separate correspondence to the cognizant Regional Coordinator or District Commander. Similarly, any information warranting further evaluation for potential civil violations or criminal activity shall be referred in accordance with applicable procedures. On days that the Joint Investigation conducts a public hearing, a daily summary of significant events shall be transmitted to the Chief of the Accident Investigation Board and the Chief of USCG Office of Investigations and Casualty Analysis. The Joint Investigation team will report its progress, as may be requested by superior authority designated by the Department of Interior or the Department of Homeland Security.

6. The report should be completed and submitted simultaneously to the Director, MMS, and the Commandant, USCG, within nine months of the convening date. If this deadline cannot be met, at least thirty calendar days prior, a written explanation for the delay and the expected completion date shall be submitted to the Director, MMS, and Commandant, USCG. The Joint Investigation team is encouraged to submit interim recommendations intended to prevent similar casualties, if appropriate, early in the Joint Investigation.

7. Prior to submission of the team's report to the Director, MMS, and the Commandant, USCG, the Joint Investigation team will confer with the Chief of the Accident Investigation Board and the Chief of USCG Office of Investigations and Casualty Analysis, both of whom will review the report and reconcile any remaining issues to the maximum extent practicable. If the respective Chiefs are unable to reconcile any remaining issues, they will elevate the issues to appropriate officials within their respective Agency

8. The Director, MMS, and the Commandant, USCG, will jointly sign and release the final report. If either Agency differs with the other concerning any conclusions or recommendations, either Agency may issue a supplemental or separate report.

9. David Dykes, MMS, and Captain Hung Nguyen, USCG, are designated as Co-Chairs of the Joint Investigation. Other Members and the Recorder of the Joint Investigation will be designated by separate correspondence, and each Agency has the right to be equally represented. Agency costs for the Joint Investigation shall be borne by the Agency incurring the expense.

10. The Government of Marshall Islands, the flag state administration of the DEEPWATER HORIZON has requested to participate in this Joint Investigation. It shall be designated as a Party In Interest and given the rights associated with such status in accordance with 46 U.S.C. § 6303.

2

**Appendix P | CONVENING ORDER JOINT DEPARTMENT OF THE INTERIOR AND DEPARTMENT OF HOMELAND SECURITY STATEMENT OF PRINCIPLES AND CONVENING ORDER REGARDING INVESTIGATION INTO THE MARINE CASUALTY, EXPLOSION, FIRE, POLLUTION, AND SINKING OF MOBILE OFFSHORE DRILLING UNIT DEEPWATER HORIZON, WITH LOSS OF LIFE IN THE GULF OF MEXICO 21-22 APRIL 2010**

THAD W. ALLEN
Admiral, U.S. Coast Guard
Commandant

Date: APR 2 8 2010

JANET NAPOLITANO
Secretary
Department of Homeland Security

Date: APR 2 7 2010

S. ELIZABETH BIRNBAUM
Director
Minerals Management Service

Date: APR 2 7 2010

KEN SALAZAR
Secretary
Department of the Interior

Date: APR 2 7 2010

3