## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010, | § | |
| | § | JUDGE BARBIER |
| Applies to: | § | |
| | § | MAG. JUDGE SHUSHAN |
| *All cases* | § | |
| and No. 10-2771. No. 10-4536, No. 11- | § | |
| 1054, and No. 11-1986 | | |

_____

## MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT
### <u>REGARDING INDEMNITY ISSUES</u>

**Table of Contents**

Index of Authorities ....................................................................................................... ii

I.    Procedural Background ........................................................................................1

II.   Facts ......................................................................................................................2

      A.    The BP-HESI Indemnity Agreement .......................................................2

      B.    Indemnity for Blowout and Uncontrolled Well Event Claims ................3

      C.    Pollution Claims........................................................................................4

      D.    Unlimited Nature of BP's Indemnity Obligation ....................................5

      E.    HESI's Indemnification Request ..............................................................6

III.  HESI is Entitled to Summary Judgment Enforcing BP's Indemnity Obligations...............8

IV.   Standard of Review................................................................................................8

V.    Argument ...............................................................................................................8

      A.    HESI is Entitled to Indemnity Despite the Contribution Claims Between the Parties.........................................................................................9

      B.    HESI is Entitled to Indemnity Against Contribution Claims Under OPA............10

      C.    Allegations of Gross Negligence Do Not Nullify BP's Indemnity Obligations. ...11

      D.    Allegations of Breach of Contract Do Not Nullify BP's Indemnity Obligations...15

      E.    Allegations of Fraud Do Not Nullify BP's Indemnity Obligations.......................16

VI.   Conclusion and Prayer ........................................................................................19

# Index of Authorities

**Page(s)**

## CASES

*Atel Mar. Invs. v. Sea Mar Mgmt.*,
No. 08-1700, 2010 U.S. Dist. Lexis 47834 (E.D. La. 2010) ...................................................16

*Atlantic Richfield Co. v. Petroleum Personnel, Inc.*
768 S.W.2d 724 (Tex. 1989)......................................................................................................12

*Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*,
289 F.3d 373 (5th Cir. 2002) .......................................................................................................8

*Becker v. Tidewater, Inc.*,
586 F.3d 358 (5th Cir. 2009) .............................................................................................13, 15

*Bermuda Container Line Ltd. v. Int'l Longshoremen's Association*,
192 F.3d 250 (2d Cir. 1999)......................................................................................................16

*Boykin v. China Steel Corp.*,
73 F.3d 539 (4th Cir. 1996) .........................................................................................................9

*Bridges v. Metabolife Int'l, Inc.*,
119 Fed. Appx. 660 (5th Cir. 2005).........................................................................................16

*Brown v. Sea Mar Mgmt. L.L.C..*,
288 Fed. Appx. 922 (5th Cir. 2008).........................................................................................18

*Cargill Ferrous Int'l Div. v. M/V Princess Margherita*,
No. 98-3825, 2001 U.S. Dist. LEXIS 19033 (E.D. La. 2001) ...................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................................8

*Clement v. Marathon Oil Co.*,
724 F. Supp. 431 (E.D. La. 1989).............................................................................................11

*Constitution State Ins. Co. v. Iso-Tex, Inc.*,
61 F.3d 405 (5th Cir. 1995) .........................................................................................................8

*Davaco, Inc. v. Dunkin' Brands, Inc.*,
No. 3:08-cv-0581-M, 2008 U.S. Dist. LEXIS 95356 (N.D. Tex. 2008) ................................17

*Diesel Repower, Inc. v. Islander Invs. Ltd.*,
271 F.3d 1318 (11th Cir. 2001) ................................................................................................16

*English v. BGP Int'l, Inc.*,
174 S.W.3d 366 (Tex App.—Houston [14th Dist.] 2005, no pet.)...........................................12

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
   246 S.W.3d 653 (Tex. 2008).................................................................12

*First Jersey Nat'l Bank v. Dome Petroleum Ltd.*,
   723 F.2d 335 (3d Cir. 1983)................................................................13

*Houston Exploration Co. v. Halliburton Energy Services, Inc.*,
   269 F.3d 528 (5th Cir. 2001) .............................................................13

*In re Horizon Vessels, Inc.*,
   No. H-03-3280, 2005 U.S. Dist. LEXIS 42110 (S.D. Tex. Nov. 18, 2005),
   *opinion adopted as modified*, 2005 U.S. Dist. LEXIS 42117
   (S.D. Tex. Dec. 22, 2005) .............................................................11, 14

*Joslyn Mfg. Co. v. Koppers Co.*,
   40 F.3d 750 (5th Cir. 1994) .............................................................11

*Kevin M. Ehringer Enters., v. McData Servs. Corp.*,
   646 F.3d 321 (5th Cir. 2011) .............................................................17

*Marquette Transp. Co. v. Louisiana Mach. Co.*,
   367 F.3d 398 (5th Cir. 2004) .............................................................15

*McDermott, Inc., v. AmClyde*,
   511 U.S. 202 (1994)..........................................................................9

*Pavone v. Mississippi Riverboat Amusement Corp.*,
   52 F.3d 560 (5th Cir. 1995) ..............................................................1

*Taylor v. Lloyd's Underwriters of London*,
   972 F.2d 666 (5th Cir. 1992) .............................................................12

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*,
   106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)....................15

*Todd Shipyards Corp. v. Turbine Service, Inc.*,
   674 F.2d 401 (5th Cir. 1982) .........................................................12, 13

*Trustees of the Northwest Laundry & Dry Cleaners Health & Welfare Trust Fund v.
   Burzynski*, 27 F.3d 153 (5th Cir. 1994)..................................................16

*Valley Health Systems, LLC v. Nurses 'R' Special, Inc.*,
   No. 2:09-cv-1361, 2011 U.S. Dist. LEXIS 40216 (D. Nev. 2011).........................11

*Webb v. Lawson-Avila Constr.*,
   911 S.W.2d 457 (Tex. App. – San Antonio 1995, writ denied)..........................12

STATUTES

33 U.S.C.S. § 2710(a) (West. 1990) ................................................................10

33 U.S.C.S. § 2710(b) (West 1990) ................................................................10

33 U.S.C.S. § 2716(f)(1) (West 2010) ................................................................10

OTHER AUTHORITIES

CORBIN ON CONTRACTS § 1472 (1964 ed.) ................................................................12

Fed. R. Civ. P. 56 ................................................................8

Fed. R. Civ. P. 56(a) ................................................................8

Restatement (Second) of Contracts § 195(1) ................................................................13

**NOW INTO COURT**, comes Halliburton Energy Services, Inc. ("HESI") and respectfully files this Memorandum in Support of Its Motion for Summary Judgment Regarding Indemnity Issues,[1] and respectfully shows the Court as follows:

## I.    Procedural Background

On April 19, 2011, pursuant to a mandatory contractual venue clause, HESI filed in Texas state district court a breach of contract and declaratory judgment suit ("HESI Contract Action") against BP Exploration & Production, Inc. ("BPXP") based on BPXP's failure to comply with the indemnity provisions of the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services, BPM-09-00255 (the "Contract") (attached as Exhibit A)[2] between BPXP and HESI.  In its Original Petition (attached as Exhibit B), HESI asserted (1) a breach of contract claim (Original Pet. ¶¶ 30-35), and (2) a request for declaratory judgment that BPXP has a contractual duty to defend and indemnify HESI in litigation arising out of the *Deepwater Horizon* incident (the "Incident") (Original Pet. ¶¶ 36-40).  HESI's Contract Action relies upon the specific indemnity language in the Contract, discussed *infra*, to support its argument that BPXP has an undeniable duty to indemnify and defend HESI against virtually all claims arising from the Incident.  BPXP removed HESI's Contract Action to federal district court, following which the Judicial Panel on Multi-District Litigation ("JPML") transferred the HESI Contract Action to this Court for pre-trial proceedings.  (2:11-cv-01986-CJB-SS).

On April 20, 2011, after HESI filed its Contract Action, BPXP and BP America Production Company (collectively "BP") filed in this Court its (1) Cross-Complaint and Third-Party Complaint Against HESI (Dkt. No. 2082) in the MDL and Limitation proceedings and (2)

---

[1] Prior to the JPML's transfer of HESI's Contract Action to the MDL proceedings, HESI timely filed its Motion to Remand.  By filing this summary judgment motion, HESI does not waive its right to seek remand of this case to Texas state court and notes its intent to preserve any rights to such remand as set out in its motion.  *See Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 567-68 (5th Cir. 1995).

[2] Due to the length of the Contract, it is attached as several separate sections, all comprising Exhibit A.

its Third-Party Complaint Against HESI (Dkt. No. 2083) in the DOJ suit.[3]  BP also filed a mirror

image suit in the federal district court for the Southern District of Texas which the JPML

ultimately transferred to this Court.  (2:11-cv-01054-CJB-SS).  In each of its filings, BP asserts

claims against HESI for fraud and fraudulent concealment relating to HESI's alleged

performance and representations under the Contract, negligence, gross negligence, contribution

under the Oil Pollution Act ("OPA"), and subrogation under OPA.  One of the focuses of BP's

allegations is that BP's indemnity obligation under the Contract should be nullified.[4]

## II.    Facts

### A.    The BP-HESI Indemnity Agreement

On April 15, 2009, BP contracted with HESI to perform cementing operations and

provide certain other related support services in the Gulf of Mexico.  Contract at p. 42.  Among

other agreements in the Contract, the parties made commitments to indemnify each other in

particular circumstances.  *Id*. at 20-24.  Generally, BP agreed to indemnify HESI for any losses

or claims arising out of a blowout, any personal injury/wrongful death claims by BP employees,

any claims arising out of damage to BP's equipment, any claims or losses arising from pollution

or contamination, and any third party claims arising out of BP's negligence or breach of duty.  *Id*.

at §§ 19.2, 19.3(b), 19.4(a), 19.6.  While the Contract sets out numerous indemnity obligations

between BP and HESI, discussed *infra*, BP's unequivocal agreement to indemnify HESI for

---

[3]  The "MDL proceeding" refers to MDL No. 2179, Cause No. 2:10-md-02179-CJB-SS.  The "Limitation proceedings" refers to the Limitation action instituted by the Transocean Entities, *In re The Complaint and Petition of Triton Asset Leasing GmbH et al.*, Cause No. 2:10-cv-02771-CJB-SS.  The "DOJ suit" refers to the action instituted by the United States in Cause No. 2:10-cv-004536-CJB-SS.

[4]  HESI has previously filed with this Court its Motion to Dismiss pursuant to Fed. R. Civ. P. 21(b) (Dkt. No. 2941 and 2941-1) arguing, to the extent BP's claims address its indemnity obligations, they are compulsory counterclaims to HESI's first-filed Contract Action, and should be dismissed and refiled as counterclaims in HESI's Contract Action (2:11-cv-01986-CJB-SS).  By filing this motion for summary judgment, HESI does not waive its arguments regarding the nature of BP's claims or the procedurally proper method by which those claims should be brought. However, if this Court grants HESI's motion for summary judgment, such ruling would likely moot many of HESI's arguments in that regard.

claims arising from a blowout and from pollution or contamination is applicable and controlling regarding the Incident.

### B.       Indemnity for Blowout and Uncontrolled Well Event Claims

The plain and unequivocal language of the Contract requires BP to defend and indemnify HESI from virtually all claims arising out of the Incident, including a blowout or uncontrolled well event.  Pursuant to § 19.6 of the Contract, BP agreed to the following:

> Subject to Clauses 19.1 and 19.4(b), but notwithstanding anything contained elsewhere in the CONTRACT to the contrary, COMPANY [BP] shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP [HESI and its subcontractors] against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:
>
> ….
>
> (b) blowout, fire, explosion, cratering, or any uncontrolled well condition (including the costs to control a wild well and the removal of debris);
>
> (c) damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom . . . .

Contract at p. 22.[5]  BP's duty to indemnify HESI for claims arising from a blowout or uncontrolled well condition applies "notwithstanding anything contained elsewhere in the CONTRACT to the contrary."  *Id*.

There are certain exceptions to BP's obligation under § 19.6 contained in §§ 19.1 and 19.4(b) which require HESI to indemnify claims brought by HESI's employees (which responsibility HESI originally accepted); claims arising out of damage to HESI's property or equipment (which claims do not exist); and claims for pollution originating from HESI's property and equipment located above the surface of the land or water (which claims are inapplicable

---

[5] BP's agreement to indemnify HESI "against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from" a blowout is all inclusive, and certainly broad enough to include both civil claims and civil fines and penalties.

here).  Contract at pp. 20-22.  Thus, like BP, HESI assumed certain indemnity obligations under the Contract.  The Contract represents the parties' bargained for allocation of risks associated with the work to be performed under the Contract.

### C.    Pollution Claims

In addition to BP's obligation under § 19.6(b) to indemnify HESI for claims resulting from a blowout or uncontrolled well event, BP also agreed to indemnify HESI from any claims arising from pollution or contamination, including contamination or pollution from the reservoir, arising from or related to performance of the Contract.  More specifically, under § 19.4(a) BP agreed as follows:

> Notwithstanding the provisions of Clause 19.3(a) and except as provided by Clause 19.1(a), Clause 19.1(b), and Clause 19.4(b), COMPANY [BP] shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP [HESI and its subcontractors] from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of COMPANY GROUP [BP and its affiliates] arising from or related to the performance of the CONTRACT.

Contract at pp. 21-22. [6]  As is the case with § 19.6, the noted exceptions relating to §§ 19.1 and 19.4(b) are inapplicable here. *See supra*.  Outside of these well-defined but inapplicable exceptions, BP must indemnify HESI from claims arising from pollution or contamination from the reservoir.

Furthermore, the Agreement contains the following **"FAIR NOTICE DISCLOSURE STATEMENT"** at the very beginning of the Contract:

> BOTH PARTIES TO THIS CONTRACT ACKNOWLEDGE THAT THIS STATEMENT COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE LIABILITY FOR NEGLIGENCE OF THE INDEMNITEE (EXPRESS

---

[6]  BP's agreement to indemnify HESI for "any claim of whatsoever nature arising from pollution and/or contamination" is likewise all inclusive, and broad enough to include both civil claims and civil fines and penalties.

> NEGLIGENCE RULE), IS CONSPICUOUS AND AFFORDS
> FAIR AND ADEQUATE NOTICE.

Contract at p. 3.  This conspicuous fair-notice statement is reinforced by § 19.10 which provides:

"CONTRACTOR [HESI] and COMPANY [BP] expressly acknowledge that the indemnities and releases of liability contained in this CONTRACT require assumption of liability for the negligence of the other party."[7]  Contract at p. 24.

### D.    Unlimited Nature of BP's Indemnity Obligation

Likely in recognition of the relative risks and rewards assumed by HESI and BPXP, § 19.7 of the Contract makes clear the parties' intent to give the indemnity provisions their broadest possible meaning and reach.  Specifically, § 19.7 provides:

> All exclusions, releases of liabilities and indemnities given under this Clause (save for those under Clauses 19.3(a) [HESI employees] and 19.3(b) [HESI equipment]) and Clause 21 [consequential losses] shall apply irrespective of cause and notwithstanding the negligence or breach of duty (whether statutory or otherwise) of the indemnified PARTY or any other entity or party and shall apply whether or not the claim, liability, damage, or expense in question is:
>
> (a)    predicated on sole, joint or concurrent fault, negligence (whether active, passive or gross), strict liability, statutory duty, contractual indemnity or otherwise at law, or
>
> (b)    sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against COMPANY GROUP, SERVICE COMPANY GROUP, or CONTRACTOR GROUP as the case may be.

Contract at pp. 22-23.

Thus, BP agreed, with certain inapplicable exceptions, to indemnify HESI from pollution and contamination claims regardless of the cause of the claims, regardless of whether HESI breached a duty to BP, regardless of whether the claims were based on HESI's negligence or

---

[7]  HESI cites these Contract provisions solely to establish fair notice requirements.  By citing to these sections of the Contract, HESI does not concede any negligence on its part.

gross negligence, regardless of whether the claims arose under a strict liability statute or were based on statutory violations, and regardless of whether claims were sought directly or indirectly against BP.  The clear intent of the parties was for BP, as owner and operator, to indemnify HESI, as a service provider, from pollution and contamination claims in all circumstances other than claims involving HESI employees and equipment.

### E.    HESI's Indemnification Request

Within days of the Incident, plaintiffs across the country began filing lawsuits against entities connected with BP's drilling operations at the Macondo well, including various BP entities (*e.g.*, BP Exploration & Production, Inc.; BP America Production Co.; BP p.l.c.), Anadarko entities, Moex entities, Transocean entities, Cameron International Corp., MI-SWACO, and HESI.  With a few exceptions, most of those lawsuits fall into one of two categories: (1) personal injury/wrongful death lawsuits relating to workers who were injured or died as a result of the Incident; and (2) pollution lawsuits brought by individuals, governmental entities, and businesses alleging damages as the result of the oil spill from the Macondo Well.

HESI is a named defendant in the vast majority of lawsuits alleging damages as the result of the Incident and is also a named defendant in the Master Complaints filed in this Court regarding the B1 and B3 Bundle claims, as well as the claims filed by the States of Louisiana and Alabama and various other government entities.  These lawsuits allege that HESI, among others, is responsible for both personal injuries suffered aboard the *Deepwater Horizon* and subsequent third party damages incurred as a consequence of pollution and contamination allegedly arising out of the Incident.

On May 5, 2010, HESI notified BP of the Incident, complying with its notice obligations under § 19.8 of the Contract, which states that:

> If either PARTY becomes aware of any incident likely to give rise
> to a claim under the above indemnities, they shall notify the other
> and both PARTIES shall co-operate fully in investigating the
> incident.

*See* Ex. C.  In its notification letter, HESI tendered to BP the defense and indemnity of HESI in all relevant lawsuits and claims related to the Incident, including the cases already filed as well as similar cases to be filed in the future.  *Id*.  HESI requested that BP take over the costs of its defense in cases related to the Incident and satisfy any judgments rendered and/or fund settlements.  *Id.*  HESI further notified BP that it considered costs incurred in defense of the Incident claims to fall within BP's indemnity and defense obligations under the Contract.  *Id*. Honoring its own indemnity obligations under the Contract, HESI also agreed to indemnify BP and its contractors against the claims of HESI's employees.[8]

On June 25, 2010, BP responded that it could not determine at that time whether it is obligated to defend or indemnify HESI, that it was "premature for either BP or Halliburton to take a definitive position," and reserved its rights in regard to the indemnities.  *See* Ex. D. Despite being a named defendant alongside HESI in claims relating to the Incident and being familiar with the factual allegations of plaintiffs' claims, BP incorrectly claimed that HESI failed to identify the factual and legal predicates on which it intends to rely in invoking §§ 19.4 and 19.6 of the Contract.  *Id*.  BP further indicated its mistaken belief that its indemnity obligations to HESI could be altered by HESI's alleged breach of the Contract, by HESI's gross negligence, or by actions by HESI that increased risk to BP.  *Id*.

On August 4, 2010, HESI responded to BP's indemnity denial and identified pertinent provisions of the parties' Contract, reminded BP of its various obligations, and urged BP to

---

[8] Subsequent to the original indemnity demand, BP has made specific demand upon HESI to indemnify BP for claims brought by two HESI employees.  HESI has declined to do so at this point based upon BP's prior breach of its indemnity obligations.  *See* Exs. F and G.

reconsider its reservations of rights with respect to HESI's request for indemnity.  *See* Ex. E.  BP failed to responded to HESI's second request for defense and indemnity and has since continually refused to accept its indemnity and defense obligations owed to HESI.

### III.    HESI is Entitled to Summary Judgment Enforcing BP's Indemnity Obligations

BP as the owner and operator of the Macondo well stood to make significant profits upon its successful completion.  It makes logical and business sense that BP would undertake the risks associated with the possible upside of the venture.  That logical and business sense is reflected in the allocation of risks that is specifically set out in the Contract between HESI and BPXP.  BP's attempts to avoid its indemnity obligations ignore the specific terms of the Contract, and would re-write, post-Incident, the parties' bargained for allocation of risk in a way the parties never anticipated or agreed to in the terms of the Contract.  This Court should enter summary judgment fully enforcing BP's contractual indemnity obligations.

### IV.    Standard of Review

Summary judgment pursuant to Fed. R. Civ. P. 56 is proper if the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp*., 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment is particularly appropriate in cases, such as this one, involving the interpretation of unambiguous provisions of a contract.  *Constitution State Ins. Co. v. Iso-Tex, Inc*., 61 F.3d 405, 407 (5th Cir. 1995).

### V.    Argument

HESI recognizes that many of the issues made the subject of this summary judgment motion have been previously and extensively briefed by the Transocean Entities in their summary judgment motion.  (Dkt. No. 4457-2, 4457-3).  To the extent applicable, HESI

incorporates the legal arguments and authorities set out in Transocean's summary judgment motion and memorandum in support thereof as support for enforcement of BP's indemnity obligations owed to HESI.  HESI would also show the following regarding BP's specific indemnity obligations to HESI.

**A.      HESI is Entitled to Indemnity Despite the Contribution Claims Between the Parties.**

As this Court is well aware, virtually all defense parties to this litigation have filed contribution claims against one another.  This includes BP, who filed contribution claims against HESI.  However, the existence of these contribution claims does nothing to negate BP's indemnity obligations to HESI.  First, while the United States Supreme Court has clarified the proper application of contribution claims based on proportional fault in general maritime claims, *McDermott, Inc., v. AmClyde*, 511 U.S. 202 (1994), subsequent decisions have made clear that contribution claims do not affect one party's indemnity obligation to another.  *See e.g., Boykin v. China Steel Corp.*, 73 F.3d 539, 542 (4th Cir. 1996) ("any changes *McDermott* may have made to the law of indemnity in admiralty we do not think affect an indemnity obligation . . . imposed . . . by virtue of a written agreement."); *Cargill Ferrous Int'l Div. v. M/V Princess Margherita*, No. 98-3825, 2001 U.S. Dist. LEXIS 19033, *3 n. 1 (E.D. La. 2001) ("Actions for contractual indemnity would not be barred by *AmClyde*.").

In this case, the Contract specifically provides that BP will indemnify HESI regardless of whether claims are "sought directly or indirectly by way of recovery, indemnification, or contribution . . . ."  Contract at § 19.7(b).  Proportional responsibility between the parties does nothing to alter BP's contractual indemnity obligations to HESI.  While it is possible that HESI may ultimately be assessed some percentage of responsibility for the Incident, BP has contractually agreed to indemnify HESI for whatever that percentage may be.  BP's general

contribution claims, and the contribution claims of other parties, do nothing to alter that bargained for contractual obligation.

**B.      HESI is Entitled to Indemnity Against Contribution Claims Under OPA.**

In addition to general contribution claims, BP has also specifically alleged that it is entitled to statutory contribution rights against HESI under OPA.  However, any contribution rights BP may claim remain subject to its indemnity obligations owed to HESI.

OPA specifically addresses the viability of indemnification agreements, stating: "Nothing in this Act prohibits *any* agreement to insure, hold harmless, or indemnify a party to such agreement for *any* liability under this Act."   33 U.S.C.S. § 2710(a) (West. 1990) (emphasis added).  The language of the statute does not place any limits on the breadth or scope of such indemnification other than to make clear that a Responsible Party may not transfer its liability under the statute by way of such an agreement.  33 U.S.C.S. § 2710(b) (West 1990).  Instead, the language of the statute is broad, allowing parties to enter into indemnity agreements as to *any* liability under the Act.  The fact that, in other sections of the statute, Congress saw fit to delineate between the nature of conduct that could and could not serve as a defense illustrates that, if it had chosen to do so, Congress likewise could have limited the nature of indemnity agreements allowed under the statute.  *See e.g*., 33 U.S.C.S. § 2716(f)(1) (West 2010) (excusing the guarantor of a Responsible Party if the Responsible Party engaged in willful misconduct, but making no mention of gross negligence).  Congress chose not to limit the scope and breadth of allowable indemnity agreements as evidenced by the clear and unambiguous language of the statute.

OPA provides a carefully thought out mechanism for addressing oil spill liability and damages, requiring Responsible Parties to assume liability for claims made by those damaged by the oil spill.  BP, among others, has been named as a Responsible Party relating to the Incident.

OPA also allows for the possibility that a Responsible Party may seek statutory contribution from other parties. However, where, as here, BP has entered into a contractual indemnity agreement with HESI that specifically addresses liability arising from contribution claims, and where such a broad indemnity agreement is specifically authorized by the statute under which BP seeks contribution, BP's claim must be subject to the intent of the parties as expressed in the Contract. BP agreed to indemnify HESI for exactly the type of claim it now seeks to assert, and this Court should grant HESI's summary judgment to enforce the contractual indemnity agreement. *See e.g., Joslyn Mfg. Co. v. Koppers Co.*, 40 F.3d 750, 754 (5th Cir. 1994) (noting that, like OPA, "[w]hile CERCLA does not permit the avoidance of liability *vis-à-vis* the government, both CERCLA and LEQA specifically recognize the enforceability of indemnification agreements which allocate environmental liability among responsible parties.").

### C.   Allegations of Gross Negligence Do Not Nullify BP's Indemnity Obligations.

In its indemnity response letter and in its claims, BP has raised the issue of whether HESI's actions related to the Macondo well constitute gross negligence. *See e.g.*, Ex. D; *see also* (Dkt. No. 2082, 2083). HESI maintains that its actions, directed and approved by BP, were not negligent, much less grossly negligent. Nonetheless, even presuming that HESI's actions did constitute gross negligence, which HESI denies, that fact would be insufficient to nullify BP's contractual indemnity obligations to HESI. Furthermore, BP has an existing duty to defend HESI regardless of whether gross negligence is ultimately found to be indemnifiable.[9]

---

[9] The duty to defend is separate and distinct from the duty to indemnify and that distinction is recognized and enforced under maritime law. *See, e.g., Clement v. Marathon Oil Co.*, 724 F. Supp. 431, 433 (E.D. La. 1989) (finding (a) allegations in complaint fell within the terms of the indemnification clause; (b) vessel owner owed indemnitee a defense; and (c) vessel owner "*should have assumed [indemnitee's] defense based on the contract and pleadings*") (emphasis added); *In re Horizon Vessels, Inc.*, No. H-03-3280, 2005 U.S. Dist. LEXIS 42110, *38 (S.D. Tex. Nov. 18, 2005), *opinion adopted as modified*, 2005 U.S. Dist. LEXIS 42117 (S.D. Tex. Dec. 22, 2005) (holding that, under maritime law, the general contractor was entitled to the cost of defending itself in the ongoing action). The duty to defend is triggered by the allegations in the pleadings and exists even where some of the allegations in the underlying action fall outside of the indemnification provision. *See Valley Health Systems, LLC v.*

As both Transocean and Cameron have noted in previous summary judgment filings with this Court (Dkt. 4457-3, 4694), the Fifth Circuit has never expressly decided the issue of whether the gross negligence of an indemnified party nullifies any and all obligations under a contractual indemnity. Indeed, the best example of the fact that this issue remains unresolved lies in the case cited by BP (*Todd Shipyards*) in denying HESI's indemnity claim.[10]

In *Todd Shipyards Corp. v. Turbine Service, Inc*., 674 F.2d 401, 411 (5th Cir. 1982), the Fifth Circuit addressed the district court's finding that Todd Shipyards was guilty of gross negligence. In analyzing the issue, the Court noted that "[g]ross negligence, which will invalidate an exemption from liability has been defined as harm willfully inflicted or caused by gross or wanton negligence." *Id*., *citing* 6A CORBIN ON CONTRACTS § 1472 (1964 ed.). At least two things are important regarding this quotation. First, the Fifth Circuit went on to reverse the

---

Nurses 'R' Special, Inc., No. 2:09-cv-1361, 2011 U.S. Dist. LEXIS 40216 *9-10 (D. Nev. 2011) (applying Texas law) ("competing theories of liability do not relieve the indemnitor's duty to defend"); *English v. BGP Int'l, Inc*., 174 S.W.3d 366, 373 (Tex App.—Houston [14th Dist.] 2005, no pet.) ("When some theories of liability fail to give rise to the duty to defend but other theories do, the party should be required to provide a defense."). Because all theories of liability pled against HESI fall within the terms of BP's contractual obligation to defend and indemnify, BP has a current obligation to pay for HESI's defense. But BP's defense obligation exists even if certain theories fell outside the scope of the indemnity obligations.

[10] Whether a party may be indemnified for its own gross negligence under maritime law is an open question. In *Taylor v. Lloyd's Underwriters of London*, 972 F.2d 666, (5th Cir. 1992), the Fifth Circuit held that "[w]e find that these cases have not established a specific and controlling federal rule disallowing the recovery of punitive damages from an insurance company. The district court, therefore, should have applied the law of the state having the greatest interest in the resolution of the issues." *Id*. at 669. The Contract between BP and HESI was entered in Texas between Texas parties and provides that it shall be construed under maritime law "wherever permissible," but otherwise "the laws of the State of Texas shall apply." Contract at § 27.5. Under Texas law, the courts look to the language of the parties' agreement to determine the scope of the indemnification. In *Atlantic Richfield Co. v. Petroleum Personnel, Inc*., the court noted that the express negligence rule requires scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own action. 768 S.W.2d 724, 726 (Tex. 1989); *see also Webb v. Lawson-Avila Constr*., 911 S.W.2d 457, 461 (Tex. App. – San Antonio 1995, writ denied) ("When the parties to an agreement use the terms 'negligence' it is assumed they mean all shades of negligence"). While the Texas Supreme Court has not specifically decided whether a party may be indemnified for its own gross negligence, *Atlantic Richfield*, 768 S.W.2d at 726 n. 2, *see also Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 688 (Tex. 2008), the Contract was negotiated by sophisticated parties and specifically provides for the indemnification of any "claim, liability, damage, or expense [which is] predicated on . . . negligence (whether active, passive or gross)." Contract at §§ 19.7(a). The indemnification clause expresses clearly BP's intent to indemnify HESI for claims alleging gross negligence and therefore meets the express negligence rule.

district court's finding of gross negligence, making the quoted statement dicta.[11]  *Id*. ("Thus, the district courts' conclusion that Todd was guilty of gross negligence is erroneous.").

Second, even if the Court's quoted language is an affirmative holding, it is inapplicable to the facts of this case.  The Court's quote specifically notes that gross negligence will invalidate "an exemption from liability . . . ."  *Id*.  HESI does not seek an exemption or release from liability, as may be the case when one party agrees to indemnify another party against damages suffered directly by the indemnitor as a result of the indemnitee's gross negligence.  Instead, HESI seeks indemnity from BP for claims made and damages suffered by third parties, which claims have been brought against BP, HESI, and others.  Indeed, the Third Circuit has expressly noted this distinction between exculpation and indemnification and affirmed that the latter does not offend public policy.  *See First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 341 (3d Cir. 1983) ("The district court noted the vital distinction between exculpation and indemnification and held that while public policy may preclude contractual exculpation for reckless, willful, or grossly negligent conduct, it is not offended by indemnification against such conduct.").  Interestingly, the Third Circuit cites to the same provision of CORBIN ON CONTRACTS that the Fifth Circuit relies upon for its statement in *Todd Shipyards*.  *Id*.

This same distinction and approach is endorsed by the Restatement.  Although the Restatement (Second) of Contracts § 195(1) states "[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy,"

---

[11] Likewise, other Fifth Circuit cases noting the issue have addressed it only as dicta. *See Houston Exploration Co. v. Halliburton Energy Services, Inc.*, 269 F.3d 528, 531 (5th Cir. 2001), in which the Court, citing Louisiana law, noted that "[n]either party disputes that a party's gross negligence defeats its right to enforce an indemnity contract of this kind."  However, the Fifth Circuit ultimately determined that "the district court also clearly erred in finding that Costlow's conduct amounted to gross negligence."  *Id*. at 533; *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 367 (5th Cir. 2009) ("It is undisputed that Baker escapes indemnity if Tidewater's actions leading to Seth's injuries were grossly negligent . . . The district court found that Tidewater's actions were negligent but not grossly negligent.").

comment b to this section of the Restatement provides "[t]he rule stated in this Section does not apply to an agreement by a third person to indemnify a party against liability in tort."  In other words, in a situation such as the instant litigation, where the claims made relating to pollution and contamination arising from the Incident are made by individual third-party claimants against BP, HESI, and others, recognized legal authorities provide that indemnification, even in the face of gross negligence, does not violate public policy.  *See e.g., In re Horizon Vessels, Inc*., No. H-03-3280, 2005 U.S. Dist. LEXIS 42110, *34 (S.D. Tex. 2005) (interpreting a clause providing indemnification for damage "caused or contributed to by negligence or other fault (including sole, joint, concurrent or gross negligence) . . . strict liability . . . or any other theory of legal liability" as broad enough to cover both gross negligence and reckless conduct.).

BP and HESI, as sophisticated businesses, entered into a contractual agreement that includes specific indemnity provisions.  As part of that agreement, BP expressly provided that its indemnity of HESI for damages arising from pollution and contamination claims would apply regardless of whether such claims are "predicated on sole, joint or concurrent fault, negligence (*whether active, passive or gross*), strict liability, statutory duty, contractual indemnity or otherwise at law . . . ."  Contract at § 19.7(b) (emphasis added).[12]  BP's attempt to avoid its own clear and undeniable contractual obligations represents nothing more than a situationally specific attempt to apply the terms of the Contract in a way that only benefits BP and has nothing to do with the allocation of risks agreed to by the parties.  BP's efforts are not sanctioned by applicable law or recognized authorities on contract interpretation, and should not be sanctioned by this

---

[12] Likewise, given the breadth of BP's indemnity, there is no basis for any argument BP may make that actions by HESI that allegedly increased BP's risk or prejudiced its rights nullify BP's indemnity obligations.  The cases cited by BP in its indemnity response letter are inapposite.  As a matter of contract interpretation, any such argument by BP is without merit.

Court.  HESI requests that this Court grant its summary judgment motion and hold BP liable for the indemnity obligations for which it contractually bargained.

> **D.      Allegations of Breach of Contract Do Not Nullify BP's Indemnity Obligations.**

As is the case with BP's allegations regarding the impact of gross negligence on its indemnity obligations to HESI, any allegation that HESI breached the Contract also fails to nullify BP's indemnity obligations.[13]

The Fifth Circuit tangentially addressed the issue of whether a breach of a contract that includes an indemnity provision can nullify the indemnity in *Becker v. Tidewater, Inc.*, 586 F.3d 358, 368 (5th Cir. 2009).   In considering language from the Court's previous holding in *Marquette Transp. Co. v. Louisiana Mach. Co.*, 367 F.3d 398 (5th Cir. 2004), the Court noted:

> However, the court in *Marquette*, after finding that the indemnity agreement at issue was enforceable, states only that if the party "had been found to be in breach of those warranties, perhaps our application of the indemnity clause would be different."  367 F.3d at 408.   *Marquette* does not hold that breach of a contract necessitates invalidation of an indemnity agreement included therein.  Even if the indemnity agreement could be invalidated by Tidewater's breach of the time-charter contract, the district court did not err in holding that Tidewater did not breach the contract.

*Becker*, 586 F.3d at 368.[14]

BP has not alleged that HESI breached the Contract.  Absent any such allegation, HESI's performance under the Contract cannot form the basis of a nullification of BP's indemnity obligations.  However, even if BP had alleged a claim for breach of contract, any such breach

---

[13] While BP raised the specter of a breach of contract claim in its indemnity response letter, BP has not made a claim for breach of contract against HESI in this litigation.  Nonetheless, HESI addresses this point briefly to further illustrate the breadth of BP's indemnity and the Fifth Circuit's openness to allowing parties the freedom to contract with regard to indemnity provisions.

[14] Texas law is consistent.  *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Because an indemnity agreement is an independent covenant, Tesoro is not excused from performing under the contract based on unsupported allegations that Nabors breached the contract.").

would not invalidate the Contract's indemnity provisions.  This Court should grant HESI's summary judgment motion and fully enforce HESI's indemnity rights against BP.

### E.        Allegations of Fraud Do Not Nullify BP's Indemnity Obligations.

As noted previously, BP has made claims against HESI for fraud and fraudulent concealment.  Neither of these claims is sufficient to void BP's indemnity obligations to HESI.

"[F]ederal courts sitting in admiralty apply common law fraud principles."  *Atel Mar. Invs. v. Sea Mar Mgmt.*, No. 08-1700, 2010 U.S. Dist. Lexis 47834, at *9 (E.D. La. 2010) (*citing Black Gold Marine, Inc. v. Jackson Marine Co.,* 759 F.2d 466, 470 (5th Cir. 1985)); *see also Diesel Repower, Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1325 (11th Cir. 2001).  Accordingly, to prevail on a fraud claim, a party must prove that: (1) the deceiving party made a material misrepresentation or nondisclosure; (2) the representation was false or the nondisclosure implied that the facts were different from what the deceived party understood them to be; (3) the deceiving party knew that the representation was false or that the nondisclosure implied the existence of false facts; (4) the deceiving party intended the deceived party to rely on the misrepresentation or nondisclosure; and (5) the deceived party detrimentally relied upon the misrepresentation or nondisclosure.  *Atel Maritime Investors*, 2010 U.S. Dist. Lexis 47834 at *9.

Further, a claim for fraudulent concealment exists only if the defendant had a duty to disclose information.  *Trustees of the Northwest Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994) (applying Texas law) ("A defendant's failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact.");  *see also Bridges v. Metabolife Int'l, Inc*., 119 Fed. Appx. 660, 663 (5th Cir. 2005) (examining fraudulent concealment claim in the context of the tolling of statute of limitations and holding "[m]ere concealment is insufficient to establish fraudulent concealment, the defendant must have had a duty to disclose.");  *Bermuda Container Line Ltd.  v.  Int'l*

*Longshoremen's Association*, 192 F.3d 250, 258 (2d Cir. 1999) (noting requirement of duty to disclose in a fraudulent concealment claim).

At the outset, HESI denies that any of its alleged actions or inactions relating to the Incident constitute fraud or fraudulent concealment.  Likewise, HESI denies that the claims asserted by BP are proper fraud and/or fraudulent concealment claims rather than breach of contract claims improperly cloaked as fraud.  *See e.g., Kevin M. Ehringer Enters., v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) ("mere failure to perform contractual obligations as promised does not constitute fraud but is instead a breach of contract.") (applying Texas law); *Davaco, Inc. v. Dunkin' Brands, Inc.*, No. 3:08-cv-0581-M,  2008 U.S. Dist. LEXIS 95356, *8 (N.D. Tex. 2008) ("The breaking of a promise is necessarily present in every breach of contract action, and does not automatically transform a breach of contract claim into a tort.") (addressing personal jurisdiction issues).  Nonetheless, for purposes of this summary judgment motion, even if HESI's actions did rise to the level of fraud or fraudulent concealment, BP is still required by the Contract to indemnify HESI.

As HESI has previously noted, BP's indemnity obligation under the Contract - including indemnity for pollution and contamination claims arising from the reservoir - is extremely broad and all-encompassing, and is enforceable irrespective of any purported fraud claims.  Section 19.7 of the Contract provides:

> All exclusions, releases of liabilities and indemnities given under this Clause (save for those under Clauses 19.3(a) [HESI employees] and 19.3(b) [HESI equipment]) and Clause 21 [consequential losses] ***shall apply irrespective of cause and notwithstanding the negligence or breach of duty (whether statutory or otherwise) of the indemnified PARTY*** or any other entity or party and shall apply whether or not the claim, liability, damage, or expense in question is:

(a)    predicated on sole, joint or concurrent fault, negligence (whether active, passive or gross), strict liability, statutory duty, contractual indemnity *or otherwise at law*, or

(b)    sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against COMPANY GROUP, SERVICE COMPANY GROUP, or CONTRACTOR GROUP as the case may be..

Contract § 19.7 (emphasis added).

The intent of the parties could not be more clear.  While HESI disputes any basis for BP's fraud and fraudulent concealment claims, BP and HESI bargained for and intended that BP would fully indemnify HESI for any and all claims related to pollution and/or contamination arising from the reservoir regardless of the basis of the claims.   Regarding BP's claim for fraudulent concealment, BP expressly included contract language that its indemnity applied even if HESI breached a duty "statutory or otherwise."  Because any claim for fraudulent concealment would necessarily involve a claim that HESI breached its duty to disclose necessary information, the contract language makes clear that BP still owes HESI indemnity.  Likewise, regarding BP's fraud claim, the contract language makes clear that BP indemnifies HESI for pollution and/or contamination claims arising from the reservoir "irrespective of cause" and whether predicated "otherwise at law."

This is the allocation HESI and BP bargained for and agreed to.  As sophisticated businesses, HESI and BP knew the relative risks and rewards relating to the drilling work to be done.   With that knowledge, BP took on the risk associated with a blowout and pollution/contamination claims.  To allow BP to prevail on a contrary contractual interpretation would reward BP with all the potential benefits of the drilling operation and production of oil, while shifting the risk of the operations to HESI - who does not share in those benefits - in direct contravention of the parties' agreement.  *See e.g., Brown v. Sea Mar Mgmt. L.L.C.*., 288 Fed.

Appx. 922, 924-25 (5th Cir. 2008) (quoting *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981) ("indemnity agreements 'should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties.'"). Neither HESI, nor the drilling industry at large, should be subjected to such a reallocation of risk merely because BP has now decided that it does not wish to live by the terms of its specific, detailed, and clear contractual agreement.  This Court should grant HESI's summary judgment motion.

## VI.    Conclusion and Prayer

BP and HESI bargained for and agreed to a specific risk allocation under the Contract. By its terms, BP owes HESI indemnity for all pollution and/or contamination claims arising from the reservoir and all claims relating to the blowout.  BP's contribution claims and its allegations of negligence, gross negligence, fraud, and fraudulent concealment do not alter its contractual obligations.  HESI requests that this Court grant its summary judgment motion and fully enforce BP's indemnity obligations under the Contract.

Dated:  November 30, 2011

Respectfully Submitted,

GODWIN RONQUILLO PC

By:  /s/  Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No.  20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No.  24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Halliburton Energy Services, Inc.'s Motion for Summary Judgment Regarding Indemnity Issues has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 30th day of November, 2011.


/s/ Donald E. Godwin
Donald E. Godwin