# EXHIBIT E



**GODWIN RONQUILLO**
A Professional Corporation

DONALD E. GODWIN - SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:   214.939.4412
DIRECT FAX:    214.939.4803
dgodwin@godwinronquillo.com

DALLAS   HOUSTON

Attorneys and Counselors

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

August 4, 2010

**VIA EMAIL (RICHARD.GODFREY@KIRKLAND.COM) AND**
**VIA FACSIMILE (312) 862-2200**

Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

      Re:    Deepwater Horizon Indemnities

Dear Rick:

      As you know, I represent Halliburton Energy Services, Inc. ("Halliburton") in the litigation arising from the Deepwater Horizon blowout and oil spill. Halliburton is in receipt of your June 25, 2010 letter regarding BP's reservation of rights as to its defense and indemnity obligations to Halliburton and its demand for indemnity from Halliburton as to certain personal injury actions filed by Halliburton employees. Mr. Ferguson has asked me to respond to your letter on Halliburton's behalf.

      Starting on common ground, Halliburton generally agrees with your suggestion that BP and Halliburton cooperate to expeditiously address and resolve the pending personal injury lawsuits. Halliburton hopes for a just outcome for those injured on the Deepwater Horizon on April 20, 2010, and their families.

*Indemnity for and Defense of Pollution and Contamination Claims*

      Halliburton is disappointed with BP's refusal to acknowledge and accept its defense and indemnity obligations under Clauses 19.4(a) and 19.6(b) of the Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services Between BP Exploration and Production, Inc. and Halliburton Energy Services, Inc. ("Contract"), effective April 15, 2009. While we understand that your reservation of rights is preliminary and that BP is not yet taking a definitive position, we do not agree and look forward to BP's acceptance of defense and indemnity obligations in the near future.

August 4, 2010
Page 2

BP's duties to defend and indemnify Halliburton for the pending pollution and contamination claims under Clauses 19.4(a) and 19.6(b) are plainly triggered by the allegations contained in the various pollution/contamination lawsuits. BP should assume these obligations now rather than, possibly, at some unspecified future time. Under Clause 19.4(a), for example, BP agreed to defend and indemnify Halliburton "from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of [BP] arising from or related to the performance of the Contract." Similarly, BP agreed in Clause 19.6 to defend and indemnify Halliburton "against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from . . . blowout, fire, explosion, cratering or any uncontrolled well condition." And these provisions apply "notwithstanding the negligence or breach of duty (whether statutory or otherwise) of [Halliburton] . . . and shall apply whether or not the claim . . . is . . . predicated on sole, joint or concurrent fault, negligence (whether active, passive or gross), strict liability, statutory duty . . . or otherwise at law . . .." *See* Clause 19.7. Even if Halliburton was in any way negligent, which it was not, such provisions are broadly construed by the courts: "indemnity agreements 'should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties.'" *Brown v. Offshore Oil Servs., Inc.*, 288 Fed. Appx. 922, 924-25 (5th Cir. 2008) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981)).

Halliburton does not agree that further investigation into the cause of the Deepwater Horizon incident is a necessary precursor to determining BP's defense and indemnity obligations to Halliburton. The factual allegations made by plaintiffs in the pollution and contamination lawsuits plainly implicate these contractual provisions and trigger BP's duty to defend Halliburton. *See, e.g., Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 234 (5th Cir. 2005) (recognizing in the analogous insurance context that "the factual allegations in the pleadings, along with the policy language, determine an insurer's duty to defend, and its duty to indemnify is triggered by the actual facts establishing liability"). The obligation and duty to defend under such contractual provisions is generally recognized as "black letter law". BP's reservation of rights on the issue is accordingly unacceptable and clearly contravenes the contracted for rights with respect to BP's obligations.

The Contract provisions related to Halliburton's services that you cite do not nullify BP's indemnity obligations. There are certainly other provisions in the Contract that apply to this situation which are not cited in your letter. For example, see Clauses 4.4 and 29.3. Although you state that "the facts may prove that Halliburton is obligated to defend and indemnify BP", you fail to identify any facts or Contract provisions that would essentially shift to Halliburton BP's defense and indemnity obligations for the pollution lawsuits. Clause 19.4(b) is plainly inapplicable (*i.e.*, these cases do not concern "pollution occurring on the premises of [Halliburton] or originating from the property or equipment of [Halliburton] located above the surface of the land or water") and no other Contract provision requires Halliburton to indemnify BP in the circumstances presented here. If BP believes that any provision of the Contract

August 4, 2010
Page 3

requires Halliburton to defend or indemnify BP in the pollution or contamination cases, please advise immediately.

Your suggestion that BP may escape its indemnity obligation if "Halliburton has materially breached the Contract in respect to these matters" contravenes the explicit terms of the Contract. As previously pointed out, BP's indemnity obligations exist "notwithstanding the negligence or breach of duty (whether statutory or otherwise) of [Halliburton] or any other entity or party." *See* Clause 19.7. Even assuming for the sake of argument that Halliburton was negligent (which it was not), maritime law allows the indemnification of a party against the consequences of its own negligence. *See, e.g., Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. Unit A 1981). Further, an alleged material breach of the Contract (which Halliburton denies) does not necessarily invalidate BP's indemnity obligations. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 368 (5th Cir. 2009). Accordingly, your references to Clauses 4.2 and 4.3, and speculation as to some unspecified material breach, do not nullify BP's defense and indemnity obligations. Such obligations continue notwithstanding any alleged breach. To the contrary, however, BP's failure to honor its defense and indemnity obligation would most certainly be a breach of contract giving rise to various known and unknown damages, such as interest on unreimbursed costs, loss of business and market capitalization due to the uncertainty of the contractual protection, increased insurance costs, etc.

Likewise, BP cannot avoid its indemnity obligations with vague references to non-specific gross negligence allegations. First, Halliburton was neither negligent nor grossly negligent. Second, the issue of indemnity for gross negligence is unresolved. By its terms, the contractual defense and indemnity requirement encompasses the gross negligence of the indemnitee. Without first determining the applicable jurisdictional law, it is simply incorrect to broadly state that indemnification for gross negligence is against public policy. In your letter, BP does not identify any factual allegations suggesting that Halliburton was grossly negligent. Unsupported speculation does not obviate BP's indemnity obligation or, more acutely, its initial duty to defend based on the plain language of the pleadings.

Without providing any factual support, you also suggest that BP's indemnity obligation may be impacted if Halliburton materially increased the risk or prejudiced the rights of BP. The cases you cite are not on point as they involve situations in which the indemnitee specifically knew of facts compromising the indemnitor's contractual rights and, perhaps fraudulently, failed to convey such information to the indemnitor resulting in increased liability. *Hiern v. St. Paul-Mercury Indemnity Co.*, 262 F.2d 526, 529 (5th Cir. 1959) (applying Louisiana law where indemnitee repeatedly made false assurances regarding securing assets being misappropriated by co-indemnitor); *General Ins. Co. v. Fleeger*, 389 F.2d 159, 161 (5th Cir. 1968) (indemnitee received notice of defaults by contractors but continued issuing bonds to those defaulting contractors to detriment of indemnitor). BP has not identified any facts supporting its speculation that Halliburton materially increased BP's risk or prejudiced its rights.

Halliburton asks BP to reconsider its reservation of rights with respect to Halliburton's request for indemnity. The relevant facts are sufficiently known that the obligation is clear and

August 4, 2010
Page 4

we believe that cooperation in the management of the litigation will ultimately result in a more satisfactory resolution. Moreover, Halliburton has no inclination to, and sees no benefit in having such issues addressed in the litigation forums under intense public scrutiny, further adversely affecting our clients and their businesses. In the face of the Contract terms and governing law, it would behoove us to refrain from aggressive lawyering in this instance and find a mutually acceptable course through these issues while not additionally aggravating potential liabilities. Accordingly, if BP maintains its indemnity position, it should, at a minimum, fulfill its duty to defend Halliburton in the pollution and contamination cases based on the plain language of the Contract and the allegations made. Halliburton has retained our firm to represent it in the claims and suits in question. If BP accepts this tender of defense, Halliburton requests our firm's continued representation.

*Personal Injury Claims*

Addressing the pending personal injury lawsuits, I want to again emphasize Halliburton's agreement to cooperate with BP in its effort to arrive at a prompt and fair resolution of the personal injury claims relating to the Deepwater Horizon incident. To that end, Floyd Hartley and I will serve as Halliburton's liaison to coordinate the handling of the personal injury claims. Since John Hickey has not contacted Mr. Ferguson as was indicated in your letter, you or he can now contact either Floyd or me at your convenience to discuss a viable approach to arriving at a prompt and fair resolution of the personal injury lawsuits.

Halliburton accepts BP's tender of defense and indemnity of BP with respect to personal injury claims by Halliburton employees, subject to our prior approval of the reasonableness of any settlements. In that regard, Halliburton has already settled potential personal claims with two of the four employees it had on the rig at the time of the blowout and obtained releases from them that include BP and the other contractors. We also consent to the continued representation of BP by Kirkland & Ellis LLP and Andrews Kurth LLP in the suits brought by the Halliburton employees. The associated defense costs should be proportioned among all Plaintiffs in the particular cases and upon presentation of support therefore, Halliburton will offset those against defense costs owed to Halliburton by BP. However, Halliburton reserves the right to tender these cases back to BP should evidence arise which indicates that the defense and indemnity obligation is not owed.

If you have any questions or would like to discuss any aspect of the defense and indemnity issues raised in our correspondence, please do not hesitate to call me.

Sincerely yours,

Don Godwin

Donald E. Godwin