

DONALD E. GODWIN
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

November 18, 2011

*BY EMAIL AND OVERNIGHT DELIVERY*

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana  70130

    Re:    **HESI's Response to BP's Two Motions *in Limine* Regarding (1) Prior Alleged Improper Conduct and (2) Evidence Regarding Adverse Criminal, Civil and Regulatory Proceedings.**

Dear Judge Barbier:

    Halliburton Energy Services, Inc. ("HESI") submits this letter brief in response to BP's Motion *in Limine* to Preclude Introduction of Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident [Rec. Doc. 4514] ("Improper Conduct *limine* motion") and BP's Motion *in Limine* To Preclude Evidence Regarding Prior Adverse Criminal, Civil, or Regulatory Proceedings [Rec. Doc. 4512] ("Adverse Proceedings *limine* motion") (together, the "motions *in limine*").

<u>Summary of the HESI's Response</u>

    BP seeks to exclude from evidence testimony, documents, and expert opinions "concerning prior incidents in which BP's conduct was allegedly unsafe, negligent, or otherwise inappropriate" (Improper Conduct *limine* motion, p. 1) and evidence "concerning prior criminal, civil, and regulatory proceedings against BP." (Prior Proceeding *limine* motion p., 1).  More specifically, BP seeks to exclude evidence related to the incidents at its Texas City Refinery in 2005, the sequential failures at its petrochemical facility in Scotland (Grangemouth), the pipeline incident in Prudhoe Bay, Alaska, and analogous incidents, including the criminal, civil and regulatory findings and penalties arising from these incidents.  This evidence is highly probative of the profound, persistent, and systemic management failures that caused or contributed to the Macondo incident.  Federal Rule of Evidence 404 is not applicable to this evidence.  However if the Court finds otherwise, the evidence should still be admitted as proof of causation, knowledge, absence of mistake or accident, gross negligence, and to establish liability for

The Honorable Carl J. Barbier
November 18, 2011
Page 2

punitive damages.  Rule 408 does not prohibit the admission of evidence of BP's prior related civil, criminal, and regulatory proceedings because the Macondo incident and the prior incidents are not similar enough to constitute the same transaction or occurrence that is required to bar the admission of "compromise" evidence.  Accordingly, the Court should allow and consider the evidence of BP's prior incidents and findings when determining causation and apportionment of liability.

The central issue in Phase One of this trial is apportionment of liability.  In order to apportion liability, the Court must determine the cause, or causes, of the blowout of the Macondo well and the resulting release of hydrocarbons.  The PSC, BP, and HESI have each submitted expert reports and rebuttal expert reports that focus extensively on the issue of process safety.[1]  A key contention of the PSC, HESI, and perhaps other parties is that one of the central causes of the Macondo incident was **BP's inadequate process safety and risk management systems,** *i.e.* **BP's profound, persistent, and systemic managerial failures.**

BP's pre-Macondo history plainly shows that BP has a blind spot when it comes to acknowledging and understanding the importance of process safety in the real world and the causal role that an inadequate process safety system can have in disasters such as Grangemouth, Texas City, and Prudhoe Bay.  After the Macondo blowout, BP promptly issued its Bly Report, which deliberately excluded consideration of the possibility that BP's profound and systemic managerial failures could have been a cause of the Macondo incident.  BP displays this blind spot again in connection with its motions *in limine*, wherein it insists that the rules of evidence preclude the parties from having a full and fair opportunity to assess the degree to which BP's inadequate process safety systems caused the Macondo incident.  Evidence relating to BP's process safety deficiencies should not be excluded from a trial arising from a tragic incident caused by those deficiencies.

## The Evidence Challenged By BP Is Relevant To This Case.

Relevant evidence means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  All relevant evidence is admissible, except as otherwise provided by law.  Fed. R. Evid. 402; *Henson v. Odyssea Vessels, Inc.*, No. 07-613, 2008 U.S. Dist. LEXIS 12026, at *15 (E.D. La. Feb. 15, 2008) (Barbier, J.) (recognizing that the U.S. Supreme Court favors a liberal standard of admissibility).

---

[1] The PSC's process safety experts are Dr. Robert G. Bea and Dr. William E. Gale.  HESI's process safety expert is Dr. Patrick Hudson.  BP's process safety experts are Morris Burch, Robert D. Grace, Kathleen D. Sutcliffe, and Adam T. Bourgoyne.

The Honorable Carl J. Barbier
November 18, 2011
Page 3

*The Contested Evidence is Directly Related to Process Safety and Risk Management and is Highly Probative of its Causal Role at Macondo.*

The evidence BP seeks to exclude is highly relevant to an assessment of BP's process safety and risk management systems. BP's inadequate process safety and risk management was a causal factor in the Macondo incident, and the disputed evidence is probative of the issue of process safety.[2]  For example, as stated by Drs. Bea and Gale, "A key component in Process Safety and Risk Management is the ability to learn from previous accidents."  (*See* Exhibit 1 [Expert Report of Dr. Robert Bea and Dr. William Gale, p. xii])  The ability to learn from prior incidents is considered a type of "reactive barrier" that is a key component in process safety and risk management.  *Id.* at pp. xii, xv-xvi; *see also* Exhibit 2 [Expert Report of Patrick Hudson, pp. 23-29, 48]).  Indeed, BP's own expert on process safety, Dr. Sutcliffe, agrees that the ability to learn from past incidents and improve is an important part of the overall analysis of BP's process safety systems.  (*See* Exhibit 3 [Expert Report of Dr. Sutcliffe, pp. 55-56]).

The Texas City disaster is particularly relevant to the Macondo incident.  In direct response to the Texas City disaster and the resulting Baker Report recommendations, BP implemented a new, company-wide safety process called the Operating Management System ("OMS").  (Exhibit 4 [Mark Bly Dep., p. 240] Ex. 5 [excerpts from OMS]).  The rollout of the new OMS plan in the Gulf of Mexico was implemented in November 2009.  However, BP's work on the Macondo well was not regulated by the new OMS plan.  (Exhibit 6 [Kal Jassal Dep., pp. 139-146; 368]).  It is virtually impossible to discuss BP's existing OMS protocol and the telling fact that it was inapplicable to Macondo without also discussing the incident that gave rise to OMS in the first place.  After Grangemouth, BP promised to institute a new, group-wide standard for process safety—yet BP allowed Texas City to "opt out" of the new standard. Accordingly, Texas City and the other incidents are highly relevant to the issues in this litigation.  The fact that the Macondo project was not regulated by BP's OMS system further reveals the relevance of the Texas City, Grangemouth, and Prudhoe Bay incidents.

BP claims that these prior disasters show nothing more than "the unremarkable fact that industrial accidents have occurred at BP facilities—an unsurprising fact that is true for every large industrial corporation." (Prior Acts *limine* motion, p. 4)  This contention is false.  From 2007 through 2010, BP was cited for 829 willful violations of OSHA standards, and "BP accounted for 97% of the flagrant violations found within the industry."   (*See* Exhibit 1 [Expert Report of Dr. Robert G. Bea and William E. Gale, p. 48]).  These flagrant violations are hardly "unremarkable" or "unsurprising" facts that are true for every large industrial organization.

---

[2] *See* Master Claim in Limitation [Rec. Doc. 879], ¶¶ 430, 433, 434); Exhibit 1 [Expert Report of Dr. Robert G. Bea and William E. Gale, p. ii] ("BP Management's systemic Process Safety and Risk Management failings caused the Macondo blowout"); Exhibit 2 [Expert Report of Patrick Hudson, p. 7] ("Each of the holes in the 'Swiss Cheese' model of the Macondo accident, to use BP's metaphor, can be traced back to BP's flawed process safety and management practices").

The Honorable Carl J. Barbier
November 18, 2011
Page 4

Evidence of BP's profound process safety failures in the past, such as its guilty pleas and the substantial fines and penalties that followed in the wake of such failures, make it more probable that BP had a grossly deficient process safety system in place at Macondo. Accordingly, such evidence is relevant and fully satisfies Rule 401.

*BP Has Affirmatively Made Process Safety An Issue in This Case.*

BP affirmatively injected the process safety issue into the litigation and now seeks to shield itself from evidence of the woefully inadequate process safety standards that caused or contributed to the Macondo incident. BP's expert, Dr. Sutcliffe, affirmatively concludes that BP has an adequately robust process safety system. This conclusion is based upon her opinion that BP learned from prior incidents (*See* Exhibit 3 [Expert Report of Dr. Sutcliffe, p. 56-60] ("BP Has Learned from the Incidents at Grangemouth"; "BP Has Learned from the Incident at Texas City"; "BP Has Learned from the Incidents at Prudhoe Bay")). BP's attempt to use process safety issues as both a sword and a shield should be rejected.

Additionally, within five months of the Macondo blowout, BP published its Bly Report. The Bly investigation team, however, failed to investigate or identify any systemic root causes of the accident and intentionally ignored potential management failures and process safety deficiencies. This lack of a systemic root cause analysis resulted in a gross understatement of BP's role in causing the blowout. This deliberate and calculated failure to engage in a full-blown analysis of process safety was expressly noted in the Bly Report itself: "It may be appropriate for BP to consider further work to examine potential systemic issues beyond the immediate cause and system cause scope of this investigation." (Exhibit 7 [Bly Report, p. 9]; s*ee also* Exhibit 8 [Fontenot Dep. pp. 147-48]; Exhibit 9 [Lucas Dep. pp. 344-60]). On one hand, BP acknowledges that further systemic investigation may be necessary, but on the other hand, it seeks to exclude evidence or expert opinions on this topic.

The deliberate nature of the Bly Report's glaring omission is further demonstrated by its deviation from BP's Incident Investigation Protocol and the Reason model. The BP Incident Investigation Protocol requires investigation of the systemic root causes of accidents such as Macondo. (*See* Exhibit 10 [Exception to BP Group Defined Practice GDP 4.4-0002]). The Bly investigation team, however, obtained a written exception to this Protocol from the London office of BP, Plc, thereby allowing BP to publicize its causation analysis without an investigation of the systemic root causes. *See* Exhibit 10 [Exception to BP Group Defined Practice GDP 4.4-0002]; Exhibit 9 [John Lucas Dep. 345-63, 383]; Exhibit 8 [Kevin Fontenot Dep. 147-48]. In addition, The Bly Report attempts to apportion blame to other parties by using an "adapted" version of the process safety model developed by James Reason, in which BP's eight key findings are represented by holes in eight protective barriers. (*See* Ex. 7 [Bly Report, p. 32] ("Swiss Cheese" model)). BP's "adapted" version of the Reason model conveniently failed to include the organizational factors and managerial systems which are an integral and necessary

The Honorable Carl J. Barbier
November 18, 2011
Page 5

part of the Reason model of process safety. (*See* Exhibit 2 [Expert Report of Dr. Patrick Hudson, p. 14-15]).

*The Evidence of Prior Improper Conduct is Relevant to the Assessment of BP's Gross Negligence and/or Liability for Punitive Damages.*

The evidence of prior acts, and related guilty pleas, fines, and penalties, are also directly relevant to the issues of BP's gross negligence and potential liability for punitive damages. *See TXO Production Corp. v. Alliance Resources, Corp.,* 509 U.S. 443, 462 and n.28 (1993) (rejecting defendant's contention that "admission of evidence of its alleged wrongdoing in other parts of the country" was improper, and holding that "[u]nder well-settled law, however, factors such as these are typically considered in assessing punitive damages."); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562, 572-73 (1st Cir. 1989) (rejecting contention that Rule 404 precluded admission of prior bad acts offered to prove gross negligence of supervisor); *Niver v. Travelers Indemnity Co. of Illinois*, 433 F.Supp. 2d 968, 976-79 (N.D. Ill. 2006) (evidence of prior lawsuits against defendant admissible for purpose of proving punitive damages, despite defendant's Rule 404 objection); *see also Castro v. Sebesta*, 808 S.W.2d, 189, 194 (Tex. App. Houston 1st Dist. 1991, no writ) (holding that 404(b) did not bar the admission of evidence that defendant regularly smoked marijuana while driving a car because it was relevant to the determination of punitive damages); *Moore v. Thompson*, 255 Ga. 236 (Ga. 1985) (holding that evidence of defendant's guilty pleas to driving under the influence before and after the incident is admissible on the question of punitive damages). BP's process safety history is admissible on the question of punitive damages and gross negligence, and thus should not be excluded.

## Rule 404 Does Not Preclude The Contested Evidence.

*BP Fails to Establish that Rule 404 Applies in this Context*

Rule 404 is not applicable in the context of BP's process safety systems, and BP has not carried its burden to show otherwise. The exclusionary principle embedded in Rule 404(b) is BP's primary argument for excluding evidence relevant to BP's deficient process safety system and its causal role for the Macondo blowout. BP contends that such evidence is evidence "of other crimes, wrongs, or acts" that are not admissible "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). As the party seeking to exclude probative evidence, BP bears the burden of establishing the application of an evidentiary rule of exclusion. *Lyondell Chemical Co. v. Occidental Chemical Corp.*, 608 F.3d 284, 295 (5th Cir. 2010). BP has not met its burden.

Rule 404(b) typically applies in the criminal context to exclude evidence of "character," which is defined as an element of one's disposition, and consisting of qualities such as peacefulness, honesty, temperance, truthfulness or aggressiveness. *See United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982). Rule 404(b) is inapplicable where proof of character and "conformity therewith" are not the purposes for which the evidence is sought to prove. The Rule

prohibits the use of character evidence to *indirectly* prove facts via an inference that the person likely acted in conformity with the character trait. Significantly, HESI is <u>not</u> contending that BP — a non-natural person — possesses a corporate character trait of "having a deficient process safety system." The mere fact that a quality can be described in words does not mean that such quality is a "character" trait of the type subject to Rule 404. *See United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992) (noting that a defendant's "propensity to engage in large scale drug dealing is not an admissible character trait" for purposes of Rule 404); *West*, 670 F.2d at 682 ("We do not believe that intelligence is a character trait within the meaning of the rule [Rule 404]"). Nor is HESI is trying to indirectly prove that at Macondo, BP "acted in conformity" with a character trait of "having a deficient process safety system."

HESI will show *directly* that BP had a deficient process safety system, and that BP's deficient process safety system played a key causal role in the Macondo blowout. However, any assessment of a corporation's process safety system requires an analysis of factors such as the corporation's ability to learn from prior incidents. In fact, BP admits that the ability to learn is relevant for the purpose of assessing a process safety system. (*See* Exhibit 3 [Expert Report of Dr. Sutcliffe, p. 54-60]). Therefore, such prior incidents are *directly* relevant to the type of process safety system BP had in place on April 20, 2010, and BP has failed to establish inadmissibility under Rule 404.

## **Rule 404(b) Does Not Preclude Admission of the Challenged Evidence**

Even if Rule 404(b) were to apply, it does not preclude admission of the contested evidence. While Rule 404 is exclusionary as to evidence of bad character, it "very broadly recognizes admissibility" of prior acts for other purposes. *See United States v. Shaw*, 701 F.2d 367, 386 (5th Cir. 1983). For example, such evidence may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Fed. R. Evid. 404(b). Because the contested evidence will be offered for purposes permitted under Rule 404, the evidence is not precluded even if Rule 404 applies.

*Absence of Mistake or Accident*

One BP expert opines that Macondo was a "perfect storm" accident that "could not possibly have been anticipated" and is merely "part of the business and just go[es] with the territory." (*See* Exhibit 11 [Expert Report of Robert Grace, p. 1-2]). Another BP expert opines that the blowout was a "perfect storm" accident, and that "human failures (mistakes)" played a causal role at Macondo. (*See* Exhibit 12 [Expert Report of Adam Bourgoyne, p. 9]). However, an analysis of BP's deficient process safety system demonstrates that the Macondo incident was not a mere mistake, an unforeseeable accident, or one of those things that goes with the territory of oil and gas exploration, and the evidence in question is probative of that fact. The contested evidence of prior incidents is directly relevant to BP's process safety system and its causal role at

The Honorable Carl J. Barbier
November 18, 2011
Page 7

Macondo. Such evidence is, therefore, admissible for the purpose of showing absence of mistake or accident. Fed. R. Evid. 404(b).

*Knowledge*

Knowledge is another applicable exception to Rule 404(b)'s prohibition. Since at least the time of the Grangemouth incident in 2000, BP was on notice that its process safety systems were woefully deficient and that such deficiencies could play a causal role in a disaster. BP knew of such deficiencies as a result of various investigations and analyses (*e.g.* the Baker Report), and as a result of the civil, criminal, and regulatory proceedings that arose after each dramatic failure of its process safety systems. Accordingly, the contested evidence is admissible under Rule 404(b) for purposes of showing BP's knowledge of its process safety deficiencies and their potential causal effects.

*Causation*

The contested evidence is also admissible as an exception to Rule 404(b) as proof of causation. *See Robinson v. Academy Louisiana Co.*, No. 09-771, 2011 U.S. Dist. LEXIS 59873, at *3-4 (M.D. La. June 6, 2011) (permitting evidence of other accidents for purposes of proving causation, notwithstanding objection under Rule 404(b) that such evidence was probative of a character trait of being litigious); *Fairshter v. American Red Cross*, 322 F. Supp. 2d 646, 656-57 (E.D. Va. 2004) (evidence of prior complaints against phlebotomist permitted under Rule 404(b), because relevant to issue of causation). As discussed above, the challenged evidence is directly relevant to BP's deficient process safety systems and the causal role such deficiencies had at Macondo. Thus, even if Rule 404 were to apply, the evidence is still be admissible to prove such causation.

### The Prior Incidents Are Relevantly Similar for Purposes of Rule 404(b).

BP argues that the prior incidents are dissimilar to the events that occurred at Macondo because there is supposedly little similarity in terms of time, geography, or operations. This argument is misguided for at least three reasons. First, the prior events in question all arose from BP's core operations of hydrocarbon exploration, refining, transportation, and BP's lax safety practices. HESI does not seek to use completely unrelated prior acts such as automobile accidents involving BP employees or BP's failure to pay taxes owed to the Republic of Trinidad and Tobago.

Second, the prior acts at issue are all *major* industrial incidents. BP pled guilty to two criminal charges and was fined one million pounds in connection with the three sequential incidents that occurred over a twelve day period at the Grangemouth refinery in Scotland in 2000. The 2005 Texas City disaster was one of the worst industrial disasters in U.S. history, killing 15 people and injuring 80 others. BP eventually pled guilty to felony violations of the

The Honorable Carl J. Barbier
November 18, 2011
Page 8

Clean Air Act, and was given three years probation and fined $50 million. The Prudhoe Bay oil spill in 2006 released over 200,000 gallons of crude oil and shut down 8% of United States oil production. As a result, BP pled guilty to criminal violations of the Clean Water Act, was ordered to pay $20 million in fines and restitution, and was placed on three years probation. Needless to say, the Macondo incident is relevantly similar in terms of its magnitude and severity.

Third, the prior acts are fundamentally similar to Macondo because they reveal BP's underlying process safety deficiencies, which played a key causal role in the Macondo incident. The Baker Panel concluded that there was a profound similarity between the Grangemouth and Texas City incidents:

> In addition, the Panel observes that many of the Process Safety deficiencies it identified during its review are not new to BP. Many of these same deficiencies were identifiable to BP based upon lessons from previous Process Safety incidents, including three major process incidents that occurred at BP's petrochemical complex in Grangemouth, Scotland in 2000 . . . The Panel considers the similarities between the "lessons" from Grangemouth and the Texas City incident to be striking . . . Although the incidents occurred five years apart at different sites in different countries, many of the underlying deficiencies identified after the incidents appear to be the same . . . .

(Exhibit 13 [The Report of the BP U.S. Refineries Independent Safety Review Panel (Jan. 2007), pp. 183-84]). In fact, all of the process safety experts in this case, including BP's own experts, analyzed *these particular disasters* in detail, because they are all major industrial disasters involving BP's core business and are highly relevant to an assessment of BP's process safety structure.

### The Contested Evidence Should Not Be Excluded Under Rule 403.

*Process Safety Evidence Is Not Unduly Prejudicial.*

BP contends that the evidence of prior acts and the resulting civil, criminal and regulatory penalties should be barred as unduly prejudicial. Federal Rule of Evidence 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In the context of a bench trial, however, Rule 403 has no logical application in terms of limiting unduly prejudicial evidence. *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994) (trial court erred in excluding evidence in a bench trial on grounds of prejudicial effect).

The Honorable Carl J. Barbier
November 18, 2011
Page 9


Regardless, exclusion of relevant evidence is "an extraordinary remedy and should be used sparingly."  *United States v. Thevis,* 665 F.2d 616, 633 (5th Cir. 1982)*; see also United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979) (noting that application of Rule 403 "must be cautious and sparing," with its major function "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect"); *Robinson,* 2011 U.S. Dist. LEXIS 59873, at *3 (recognizing "extraordinary remedy of exclusion"); *United States v. Krenzelok*, 874 F.2d 480 (7th Cir. 1989) (noting that where both probative value and prejudicial effect are high, Rule 403 requires admission).  "Prejudicial," in this context, does not mean evidence that is damaging to an adverse party, but rather an unfair prejudice which encourages the fact-finder to decide the matter on some improper basis, often an emotional one. *See Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981); *Henson*, 2008 U.S. Dist. LEXIS 12026, at *15.  Evidence of BP's prior conduct as it relates to its process safety systems is highly relevant, is not "prejudicial" in the required sense, and does not satisfy Rule 403's high standard for exclusion.

*Consideration of Process Safety Evidence Will Not Unduly Delay the Trial.*

BP's contention that the disputed evidence should not be considered because it will unduly delay the trial is equally unsubstantiated.[3]  Significant time will not likely be expended to consider this evidence, as much of it is undisputed or can be the subject of stipulations.  Furthermore, this Court may place reasonable limits on the presentation of all probative evidence, including evidence relating to BP's process safety systems.

## **Rule 408 Does Not Preclude Admission of the Challenged Evidence.**

*Rule 408 Does Not Bar Admission of Evidence Relating to Fines and Penalties.*

In its separately filed motion to preclude evidence regarding adverse proceedings, BP argues that evidence of prior criminal, civil and regulatory proceedings is not admissible under Rule 404, an argument that HESI has addressed in detail herein.  The only additional argument BP offers against admission of evidence regarding fines and penalties is that such evidence is inadmissible as a compromise or offer of compromise under Rule 408, relying solely on the Delaware case of *Masemer v. Delmarva* for this proposition.   723 F. Supp. 1019 (D. Del. 1989).

The leading Fifth Circuit case construing Rule 408 is *Lyondell Chem. Co. v. Occidental Chem. Corp*., 608 F.3d 284, 294-300 (5th Cir. 2010), a case involving CERCLA contribution for waste disposal at two different storage sites.  Rule 408 only excludes offers of compromise evidence to prove the validity of the "claim" that was the subject of the compromise, not of some other, unrelated "claim."  Thus, if the claim subject to compromise arises from a different

---

[3] BP does not allege that evidence relating to its process safety systems is cumulative of other admissible evidence.

The Honorable Carl J. Barbier
November 18, 2011
Page 10

transaction or occurrence, or involved other parties, different facilities, or a different time frame, Rule 408 does not bar admission of compromise evidence in the subsequent, less related litigation. *Id*.

In *Lyondell*, the Fifth Circuit declined to adopt a rigid definition of the degree of similarity required between "claims" that invoke Rule 408's bar of compromise evidence. *Id*. at 298. The Court, nevertheless, made it clear that "similarity" between the previous and current claims is not enough to permit exclusion of evidence under Rule 408. *Id*. at 297-98 ("On the other hand, settlement evidence is not inadmissible because it relates to circumstances that are 'similar' to those being litigated"). The Court in *Lyondell* excluded compromise evidence because the two situations "did not involve circumstances that were merely 'similar' to the current dispute." *Id*. at 298. Instead, the two claims involved the same relevant parties, the same facilities, and the same time frame. Unlike the current litigation, *Lyondell* presented a unique situation in which the waste disposal at the two sites was "inextricably linked" such that a party's liability under one claim was directly linked to that party's liability in the current litigation. *Id*.

When seeking to invoke Rule 404, BP argues that the prior incidents are "wholly dissimilar to, and temporally, operationally, and geographically removed from, the events involving the Macondo Well." (Improper Conduct *limine* motion, p. 6). BP also argues that the contested evidence arises out of "wholly unrelated past events" and that no party has established the "necessary factual similarity between this information and anything involving the Macondo Well." (Adverse Proceedings limine motion, pp. 2-3) BP cannot argue that the dissimilarity of these incidents mandates exclusion under Rule 404 while also claiming that the incidents are so inextricably intertwined as to be the same "claim" for purposes of invoking Rule 408.

In contrast, HESI's position is consistent with the language and interpretations of the rules. Rule 404 does not apply because no genuine character trait is being invoked. Even if a Rule 404 analysis is adopted, the prior events are sufficiently similar to the Macondo incident in terms of BP's deficient process safety systems such as to invoke the exceptions to Rule 404. Yet the similarity of the incidents does not approach the degree of deep connection that would implicate Rule 408. *Id*. at 297-98 ("On the other hand, settlement evidence is not inadmissible because it relates to circumstances that are 'similar' to those being litigated"). Rule 408 does not apply because the prior incidents, fines, and penalties, did not arise from the same underlying transaction or occurrence, and they involved different parties, different facilities, and a different time frame. *Lyondell,* 608 F.3d 298-99.

*If Applicable, Rule 408(b) Exceptions Apply.*

Even if the Court were to conclude that Rule 408 applies in this context, the contested evidence is not precluded because it shows knowledge or absence of mistake. Much like Rule 404(b), Rule 408(b) expressly provides that, even if the rule applies as an initial matter, evidence may be offered for other purposes. The list of exceptions in Rule 408(b) is illustrative, not

The Honorable Carl J. Barbier
November 18, 2011
Page 11

exhaustive. *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987); *see also Orr v. The City of Albuquerque*, 531 F.3d 1210, 1218-19 (10th Cir. 2008). Even if Rule 408 applies, evidence is admissible if offered to prove absence of mistake. *Bradbury*, 815 F.2d at 1364 (evidence admissible to show whether incident was an "isolated mistake"); *Orr*, 531 F.3d at 1219 (evidence admissible to show that incident was "not a random accident"). Accordingly, even if Rule 408 applied in this context, the contested evidence would be admissible to show knowledge or absence of mistake.

### Expert Reports Concerning Process Safety Are Admissible under Rule 703 as Experts May Rely on Otherwise Inadmissible Evidence in Their Reports

BP's motions *in limine* seek to preclude the parties from introducing expert opinions concerning BP's prior improper conduct and the criminal, civil, and regulatory proceedings that arose from those acts. However, even if the Court were to decide that this evidence is inadmissible at trial, these prior acts are precisely the type of evidence on which experts on process safety reasonably rely in forming opinions or drawing inferences. Indeed, BP's own experts rely on these incidents to form the opinion that BP's process safety system was robust. The experts retained by the PSC and HESI rely on this evidence to draw the opposite conclusion. Because experts may rely upon the disputed evidence, their opinions should not be excluded even if the contested evidence is not independently admissible as substantive evidence at trial. Fed. R. Evid. 703.

### The Court Should Not Grant BP's Motion In Limine Prior to Its Evaluation of *Daubert* Challenges to the Process Safety Experts

To the extent the Court believes it would be helpful to assess these *limine* issues within a more comprehensive factual context, it should defer ruling on the admissibility of the evidence bearing on the issue of process safety until the conclusion of the *Daubert* briefing which is scheduled to begin on January 9, 2012. The PSC, BP, and HESI have each retained experts to opine on the key issue of BP's process safety system and its causal role at Macondo. Accordingly, HESI would respectfully request that the Court either deny BP's motions *in limine* for the reasons stated herein or, in the alternative, defer any such ruling until the Court has assessed any *Daubert* challenges made to the process safety experts in this case.

### Conclusion

Evidence related to the incidents at Texas City, Grangemouth, and Prudhoe Bay, including the criminal, civil and regulatory findings and penalties arising from these incidents, is highly probative of BP's profound, persistent, and systemic management failures that caused or contributed to the Macondo incident. HESI explains that neither Federal Rule of Evidence 404 nor Federal Rule of Evidence 408 applies to the contested evidence. However, if the Court finds otherwise, exceptions apply. Rule 404 allows the Court to admit this evidence as proof of

The Honorable Carl J. Barbier
November 18, 2011
Page 12

causation, knowledge, absence of mistake or accident, gross negligence, and to establish liability for punitive damages. Rule 408 does not prohibit the evidence of BP's prior related civil, criminal, and regulatory proceedings because the Macondo incident and the prior incidents are not similar enough to constitute the same transaction or occurrence that is required to bar the admission of "compromise" evidence. Accordingly, the Court should deny BP's motions *in limine* and allow evidence of BP's prior incidents when determining causation and apportionment of liability. In the alternative, the Court should defer any such ruling until it has assessed any *Daubert* challenges made to the process safety experts.

Sincerely,

Donald E. Godwin

cc:

All Liaison Counsel

Enclosure