# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

November 23, 2011

**HAND DELIVERY**

The Honorable Carl J. Barbier
United States District Judge
United States District Court
500 Poydras Street, Room C-268
New Orleans, LA 70130

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:   MDL 2179--Reply Re Interview Notes

Dear Judge Barbier and Magistrate Judge Shushan:

BP submits this reply to the United States and the PSC's filings, submitted on November 18, 2011, regarding the admissibility of IIT interview notes. The PSC originally urged a categorical rule that all IIT interview notes are admissible. *See* PSC's October 17, 2011 Letter Regarding "Alleged Daubert/702 Issues within Defendants' Business Records; Bly Interview Notes; and Other Misc. Business Records" at 2. Both the United States and the PSC now apparently concede, however, that some interview notes may not be admissible for the truth of the matter asserted. This is a critical distinction, because the trial record should reflect whether a particular document was admitted for the truth of the matter versus being admitted for other purposes. In any event, the parties' submissions underscore that the admissibility of IIT interview notes, and the highly variable specific purposes for which the United States and the PSC seek to admit them (*e.g.*, for the truth of the matter asserted, for notice, to show state of mind, to show that statements were false, and for the numerous other purposes discussed below), should be assessed on a case-by-case basis and not on a categorical basis for all interview notes.

The United States and the PSC appear to agree that the focus of the interview notes dispute is not the first level of hearsay (what the interviewer wrote) but the second level of hearsay (what the interviewee said), and potentially the third level (what the interviewee said that somebody else said). Depending on the specific interview, the United States and the PSC assert varying arguments regarding why the interviewee's statements should be admitted. This illustrates that the inquiry is very document-specific and cannot be conducted on a categorical basis. In addition, BP respectfully submits that both the United States and the PSC's arguments regarding the interviewee's statements are not supported by the Federal Rules and the relevant cases.

Hong Kong   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

### 1. Only Some Of The Interviewees' Statements Qualify As Party Admissions. TREX-00816 Is Not a Party Admission Against BP.

The United States and the PSC assert that the interviewees' statements qualify as party admissions. Given the scores of interview notes potentially at issue, BP respectfully submits that this decision should be made on a case-by-case basis. For example, under the following circumstances, interviewees' statements are not party admissions that can be used in determining BP's liability:

- As the United States and the PSC appear to concede, statements by interviewees employed by defendants other than BP ordinarily are not party admissions against BP, and can not be used in assessing BP's liability. *See, e.g., Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000).

- Even a statement by a BP interviewee is not a party admission under Rule 802(d)(2)(D) if it does not "relate to a matter within the scope of agency or employment." FRE 801(d)(2)(D).

- Even a statement by a BP interviewee is not a party admission if it runs afoul of Rule 401, Rule 402, Rule 702, *Daubert*, or other rules of evidence.[1]

The PSC argues that TREX-00816, handwritten notes of the IIT's interview of Halliburton employee Jesse Gagliano, constitute an "adoptive admission" by BP under Rule 801(d)(2)(B), and is thus admissible against BP. While Mr. Gagliano's statements are admissible against Halliburton, the PSC's contention that they are admissible against BP is incorrect. Specifically, the PSC contends that "because the Bly Report includes information obtained by the investigators from the Gagliano interview notes and relies upon them in reaching its conclusions, BP has manifested its belief that the statements are true." (PSC 11/18/2011 Ltr. at 3). But the PSC does not cite any portion of the IIT Report that expressly agrees with any of Mr. Gagliano's assertions, much less portions of the IIT Report that agree with all six single-spaced pages of the Gagliano interview. Instead, the PSC points only to page 63 of the IIT Report, which cites the "OptiCem modeling report." The Opticem modeling report is distinct from the document at issue here (TREX-00816, the six pages of notes of the Gagliano interview). Moreover, the fact that the IIT may have considered Mr. Gagliano's assertions during his interview certainly does not mean that the IIT agreed with or adopted all of Mr. Gagliano's assertions. And even though the PSC bears the burden of proof in seeking to admit the document against BP, the PSC has not: (1) attempted to make an adoptive-admission

---

[1] *See, e.g., Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2003) ("However, the rules calling for generous treatment of party-opponent admissions still do not stand for the proposition that Rule 801(d)(2) trumps all other Federal Rules of Evidence. . . . The plaintiff has made no argument why admissions should always be free from the requirements of Rule 701(c), Rule 702 and *Daubert*. And in this particular case, we see no good reason why unqualified and unreliable scientific knowledge should be exempted from the expert evidence rules simply because the speaker is an employee of a party-opponent.")

showing with respect to all of Mr. Gagliano's assertions; or (2) pointed to any cases applying the adoptive-admission doctrine to interview notes considered in the preparation of a report.

The PSC then argues that, even if they are not admissible against BP for the truth of the matter asserted, certain statements in the Gagliano notes are admissible "to show notice on the part of BP, before the disaster, of the problems with Halliburton's cement mixture." (PSC 11/18/2011 Ltr. at 3). But many of the statements in the Gagliano interview notes on their face have nothing to do with BP's knowledge of Halliburton's cement mixture, *e.g.*:

- "[Gagliano] was confident that they could get cement in place without losses" (BP-HZN-BLY00061276);

- "Did not check for contamination in base oil" (BP-HZN-BLY00061277).

Even the one statement relied upon by the PSC does not "show notice on the part of BP," as the PSC claims. The PSC points to "Gagliano's statement at BP-HZN-BLY00061276 that he '[a]greed with [BP drilling engineer Brian] Morel's decision to go with foam.'" (PSC 11/18/2011 Ltr. at 3) The PSC has not demonstrated that this statement is relevant to BP's notice: it does not establish that anything was communicated by Gagliano to either Morel or BP.

Finally, even if portions of Gagliano's assertions were relevant to show notice by BP, the trial record should be clear that they are admitted for notice purposes alone, and not for the truth of the matter asserted. *See Brooks v. Stringer*, 2007 WL 1087487, at *6 (S.D. Miss. 2007) ("[d]efendants have moved to strike this statement as hearsay; however, it is being offered not for its truth, but <u>to show notice</u> . . . so it is admissible <u>for that purpose only</u>." (emphasis added)).

### 2. The PSC and the United States misapply Fed. R. Evid. 803(3): TREX-00151.

Relying upon Rule 803(3), the United States and the PSC seek to admit against BP Transocean employee Jimmy Harrell's statement in TREX-00151 (" . . . I knew this would happen"). The United States and the PSC argue that under Fed. R. Evid. 803(3), "statements that otherwise may constitute hearsay are admissible if they show the declarant's state of mind" (U.S. 11/18/2011 Ltr. at 4), even when that state of mind is about the past. This is incorrect.

Fed. R. Evid. 803(3) excepts from the hearsay rule a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . ." These examples represent the type of statements that the rule was designed to accommodate - <u>present</u> impressions or future plans, and not <u>past</u> memories or beliefs. To that end, the rule expressly excludes a "statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3); *see also Shepard v. United States*, 290 U.S. 96, 105-06 (1933) ("[d]eclarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored."); *U.S. v. Bishop*, 264 F.3d 535, 549 (5th Cir. 2001) (finding that hearsay statement was properly excluded and not admissible under Fed. R. Evid. 803(3) when it "was not an explanation of [declarant's] current state of mind, but rather was a recitation of her memories of what she did and thought at an earlier date.")

The statements by Mr. Harrell that the PSC and the United States seek to admit against BP are declarations of belief "pointing backwards towards the past": *e.g.*, "I knew this would happen." *Shepard*, 290 U.S. at 105-06. Accordingly, while they are admissible against Transocean as party admissions, they are not admissible against BP under Fed. R. Evid. 803(3).

> 3. **The PSC Concedes That The Triple Hearsay Statements Contained In TREX-01966 Are Not Admissible For Their Truth, But Instead Seek To Admit Them For Specific Purposes That Do Not Apply to All Interview Notes.**

The PSC apparently concedes that certain third-level hearsay sentences from TREX-1966 are not admissible for their truth. The PSC instead argues that certain sentences from TREX-1966 are offered to show that Transocean employees made inaccurate statements about the bladder effect. (PSC 11/18/2011 Ltr. at 5) The PSC's very targeted rationale for the admissibility of statements in TREX-1966 underscores that the admissibility of the interview notes must be made on a case-by-case basis. Even the PSC and the United States do not argue that all of the scores of IIT interview notes relate to Transocean's faulty analysis of the bladder effect.

> 4. **The PSC's and United States' Arguments As To Why Documents Are Not Offered For Their Truth Are Document-Specific.**

TREX-1966 illustrates a broader problem. As illustrated by the chart below, the PSC and the United States offer multiple purported non-hearsay purposes for various exhibits:

| PSC Or U.S. Alleged Non-Hearsay Purpose | Exhibit Number |
|---|---|
| Show Notice of Discrepancy in Test Results | TREX-00296 |
| Reports Were Made | TREX-00296 |
| Show Notice of Problems with Cement | TREX-00816 |
| Explain How Decision was Reached | TREX-00816 |
| Defendants Engaged in "faulty analysis" | TREX-01966 |
| Reliance on a Non-existent Phenomenon | "Bladder Effect" Exhibits |

Each of these arguments applies to some, but not all, of the interview notes. This wide variety of arguments confirms that the various interview notes should be assessed on an individual basis.

### 5. The Business Records Exception and IIT Interview Notes.

The United States asserts that certain interview notes are entirely admissible as business records. (United States 11/18/2011 Letter at p. 2) As an initial matter, some of the interviewees were not BP employees, and there is no evidence that these non-BP interviewees' employers imposed upon them a business duty to participate in the interviews. Thus, the United States and the PSC apparently concede that interviews of non-BP employees do not fall within the business records exception to the hearsay rule.

Even for BP employees, the offering party would need to prove, among other things, that the interviewee was communicating information "at or near" the time he observed it, that the interviewee communicated the information in the ordinary course of business, and that the interviewee himself was not relating a third level of hearsay from another party. *See Wilander v. McDermott Internat'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989). These determinations should be made on a case-by-case basis. For example, TREX-151, which consists of June 24, 2010 notes of an interview of David Sims, contains discussions of events occurring months earlier, not "at or near" the time of the matters recorded therein as required under *Wilander. See, e.g.,* TREX-151 at 4 (June 24, 2010 notes: "David said he and his team became aware of the new guidance in January-February 2010 when the new DWOP was 'rolled out.'"); *see also* TREX-296 (Mark Hafle interview dated July 8, 2010). Finally, the business records exception applies only to the written statements of the interviewers (the first level of hearsay), not the oral statements of the interviewees (the second level or hearsay). *See Kelly ex rel. all Heirs at Law of Kelly v. Labouisse*, 2009 WL 427103, at *6 n.5 (S.D. Miss. Feb. 19, 2009) (the business records exception "is applicable by its terms only to documentary evidence").

As always, we appreciate the Court's time and consideration in this matter.

Respectfully submitted,

/s/ Andrew Langan, P.C.

Andrew Langan, P.C.

cc: Steve Herman
    James Roy
    Defense Liaison Counsel
    Mike Underhill
    Hon. Attorney General Luther Strange
    Cory Maze
    Ben Allums
    Mike O'Keefe