UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § § | MDL NO. 2179<br><br>SECTION J |
| This Document Relates To:<br>*All cases and No.: 2-10-cv-2771* | § § § § | JUDGE BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF
TRANSOCEAN'S REPONSE IN OPPOSITION TO
CAMERON'S MOTION FOR SUMMARY JUDGMENT**

Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling, Inc., and Transocean Deepwater, Inc. (hereinafter collectively referred to as "Transocean") file this Memorandum in Support of Transocean's Response to the Motion for Summary Judgment of Cameron International Corporation:

## I.     INTRODUCTION

Cameron argues that all claims asserted by Transocean against Cameron in Transocean's Rule 13 Cross-Claims/Counter-Claims should be dismissed because Transocean owes three types of indemnity to Cameron:  (1) indemnity for Camerons' potential liability for injuries and deaths of Transocean's employees and invitees aboard the *Deepwater Horizon*; (2) indemnity for Cameron's potential liability for damage to property of Transocean and its affiliates; and (3) indemnity for Cameron's potential liability for discharges emanating from the Macondo well.

There is not and has never been any dispute about Transocean's indemnity obligation for the first two categories.  Transocean repeatedly acknowledged those indemnity obligations and offered to defend and indemnify Cameron. (Ex. 12 to Cameron's Statement of Material Facts).  Cameron does not allege that it has incurred any liability covered by those indemnity provisions.

The sole disputed issue is whether Transocean has any obligation to indemnify Cameron for Cameron's potential liability for pollution from the Macondo well. Cameron could be entitled to indemnity directly from BP if Cameron is a named indemnitee or third-party beneficiary of the Drilling Contract. By its own admission, however, Cameron is not a named indemnitee or third-party beneficiary of the Drilling Contract.

Rather, Cameron relies on an indemnity provision in the Terms and Conditions agreement that accompanied the original sale of the blowout preventer (BOP) from Cameron and a Master Service Agreement (MSA).[1] Cameron and Transocean agree that if Transocean owed indemnity to Cameron under the terms of those agreements, BP, in turn, would owe indemnity to Transocean under the indemnity provisions in the Drilling Contract. As discussed more fully below, Article 24.2 of the Drilling Contract requires BP to fully indemnity Transocean for all liabilities stemming from Macondo well pollution. Article 25.1 of the Drilling Contract then defines the scope of BP's indemnity obligations and provides that where BP owes indemnity to Transocean, that indemnity includes Transocean's indemnity obligations to third parties, such as Cameron.

Consequently, Cameron obtains indemnity from Transocean *only if* the Terms and Conditions imposes a direct, clear and unequivocal indemnity obligation on Transocean. BP then would owe indemnity to Transocean for Transocean's indemnity obligation to Cameron, which would "pass through" to Cameron.

---

[1] Identical pollution indemnity provisions are contained in the Terms and Conditions and the MSA entered into between Transocean and Cameron (Ex. 5 to Cameron's Statement of Material Facts, Amendment No. 1, Clause 15). An MSA, however, is not a self-executing contract. It is the framework for future contracts and requires a work order or the like to trigger the MSA. *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir. 1990). Cameron did not identify a work order or the like that triggered the MSA. In any event, because the pollution indemnity provisions are identical, Transocean will address the pollution indemnity provision in the Terms and Conditions.

Notwithstanding, Transocean maintains it does not owe indemnity directly to Cameron. When the indemnity provision on which Cameron relies is examined in light of the settled legal principles requiring clear and unequivocal language for the indemnity being sought, it is indisputable that the indemnity agreement imposes no direct obligation on Transocean for pollution liability from the Macondo well.

## II.   THE INDEMNITY AGREEMENTS

There are two separate indemnity provisions in the Terms and Conditions agreement (Ex. 4 to Cameron's Statement of Material Facts) that accompanied the sale of the blowout prevent (BOP). One requires Transocean to indemnify Cameron against liability for injuries to and deaths of employees of "Purchaser Group" (including Transocean's employees and invitees), as well as liability for loss of or damage to Purchaser Group property. The second indemnity provision addresses pollution liability.

A comparison of the two indemnity provisions illustrates why Cameron's argument about the meaning of the pollution indemnity provision is untenable. The first indemnity provision, addressing injury, death and property damage, provides in relevant part:

> The Purchaser shall be liable and shall defend, release, indemnify and hold harmless . . . Seller Group . . . from and against any and all claims . . . for injury to or death of any member of the Purchaser Group or for damage to or loss of property owned or leased by the Purchaser Group which injury, illness, damage or loss arises out of or is incident to the Operations REGARDLESS OF WHETHER CAUSED IN WHOLE OR IN PART BY A PRE-EXISTING DEFECT, SELLER'S SOLE, JOINT AND/OR SEVERAL NEGLIGENCE, WILLFUL MISCONDUCT, STRICT LIABILITY, UNSEAWORTHINESS OR ANY VESSEL, OR OTHER LEGAL RESPONSIBILITY OF SELLER.

(Ex. 4, Clause 18; all capitals in original). This provision is absolute, clear and unequivocal in imposing a direct indemnity obligation on Transocean.

In comparison, the second indemnity provision, addressing pollution liability, is *conditional* and states as follows:

3

> *In the event* that Purchaser [Transocean] is entitled to indemnity under any contract with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, Purchaser will provide Seller Group [Cameron] with the benefit of such indemnity to the fullest *extent possible*.

(Ex. 4, Clause 18; emphasis added).

### III. ARGUMENT

**A. If Transocean owes indemnity directly to Cameron under the Terms and Conditions, Transocean would be entitled to indemnity from BP under the Drilling Contract.**

There are two means by which Cameron could obtain indemnity from BP: (1) directly as a named indemnitee or third-party beneficiary under the Drilling Contract or (2) indirectly vis-à-vis BP owing indemnity to Transocean for Transocean's indemnity obligations to Cameron.

Irrefutably, Cameron is neither a named indemnitee nor third-party beneficiary under the Drilling Contract. Thus, Cameron may obtain indemnity only indirectly, pursuant to Article 25.1 of the Drilling Contract, if Transocean owes a direct indemnity obligation to Cameron under the pollution indemnity provision of the Terms and Conditions. In such case, BP would owe indemnity to Transocean for its obligation to Cameron because Article 25.1 would be triggered.

Turning to the Drilling Contract between Transocean and BP, Article 24.2 (Ex. 1 to Cameron's Statement of Material Facts) requires BP to fully indemnify Transocean for pollution liability from the Macondo well.[2] Article 25.1, which defines the scope of all indemnity obligations under the Drilling Contract, requires indemnity "**WITHOUT REGARD TO WHETHER THE CLAIM AGAINST THE INDEMNITEE IS THE RESULT OF AN**

---

[2] BP also owes indemnity to Transocean for any injury or death to BP's personnel (Article 21.2 of the Drilling Contract), damage to BP's property (Article 22.4), loss of the well and damage to the reservoir (Article 23.1), and costs to control the blowout (Article 23.2).

4

**INDEMNIFICATION AGREEMENT WITH A THIRD PARTY**" (all capitals and bold lettering in original).[3]

It follows that, if Transocean owes indemnity to Cameron under the pollution indemnity provision in the Terms and Conditions, then BP must indemnify Transocean for that obligation to Cameron. Cameron agrees that BP is obligated to indemnify Transocean for the losses described above, including liabilities for Macondo well pollution, and also that BP owes indemnity indirectly to Transocean's indemnitees under Article 25.1. Hence, the key issue is whether Transocean owes indemnity directly to Cameron for the Macondo well pollution liability under the Terms and Conditions, so as to implicate Article 25.1 of the Drilling Contract.

**B.     Under settled principles governing the interpretation of maritime indemnity agreements, Transocean does not owe direct indemnity to Cameron under the pollution indemnity provision of the Terms and Conditions agreement.**

An indemnity agreement must expressly, clearly and unequivocally require the indemnity being sought. "In other words, indemnity provisions should not be interpreted to impose liability for losses that are not expressly within the terms of the agreement or are not reasonably inferred from the language of the agreement." *Denesse v. Island Operating Co., Inc.*, No. 03-3280, 2006 WL 1560794 at *3 (E.D. La. June 1, 2006) (Barbier, J.) (citing *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)). A corollary under settled federal and maritime law is that an indemnity agreement will not be construed as requiring indemnity for the indemnitee's

---

[3] A provision merely requiring indemnity "on account of" injuries, deaths, and damages does not require indemnity for the indemnitee's own indemnity obligations to third parties. "Specific language requiring the indemnitor to assume the indemnity liabilities of the indemnitee must be included in the indemnity agreement in order for the indemnitor to be held responsible for the contractual liabilities of the indemnitee." *Mastradonato v. Sea Mar, Inc.*, No. A.99-2547, 2000 WL 1693662 at *3 (E.D. La. Nov. 9, 2000) (Shushan, J.) (citing *Foreman v. Exxon Corp.*, 770 F.2d 490, 498 (5th Cir. 1985); *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)). *Accord, Denesse v. Island Operating Co., Inc.*, No. 03-3280, 2006 WL 1560794 at *3 (E.D. La. June 1, 2006) (Barbier, J.). Article 25.1 contains the required "specific language" by expressly defining the indemnity obligations to encompass Transocean's indemnity obligations to third parties, such as Cameron.

own fault unless the agreement clearly and unequivocally so provides.  *United States v. Seckinger*, 397 U.S. 203, 212-13, 90 S. Ct. 880, 885-86 (1970);  *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986); *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984).

*Seal Offshore* involved two indemnity provisions.  The first, and the one on which Wabco, the aspiring indemnitee, relied, required indemnity for "any and all claims."  The Fifth Circuit held the quoted language did not satisfy the clear and unequivocal test: "An indemnification of 'any and all claims' will not include the negligence of the indemnitee."  *Id.* at 1081.  The second provision, as the Fifth Circuit explained, "explicitly indemnified Wabco against claims arising out of work performed by Houghton on Wabco's premises even if Wabco was negligent."  *Id.*  The Fifth Circuit observed that "[t]he contrast between the latter provision and the indemnity covenant relied upon here strongly cuts against Wabco."  *Id.*

This observation applies with equal force in the instant case.  A comparison between the two indemnity provisions in the Terms and Conditions agreement demonstrates why the pollution indemnity provision cannot be construed as Cameron contends.  The indemnity provision in the Terms and Conditions for injuries, deaths and property damage to Purchaser Group clearly and unequivocally imposes a direct, absolute indemnity obligation on Transocean.  Had Cameron intended to impose a similar direct, absolute indemnity obligation with respect to pollution liability, Cameron knew how to do so.  But, Cameron did not include such language.  Rather, Cameron created a contingent, conditional obligation that "*[i]n the event* that [Transocean] is entitled to indemnity" under the Drilling Contract with BP, Transocean will provide Cameron with the "benefit . . . to the fullest *extent possible*."

**C.     The language of the Terms and Conditions pollution indemnity provision fails the clear and unequivocal test.**

Cameron's proposed interpretation of the pollution indemnity provision in the Terms and Conditions is unconvincing. Without citing any authority on point, Cameron contends the pollution indemnity provision, coupled with the indemnity provisions from the Drilling Contract between Transocean and BP, constitutes:

> Transocean's independent commitment in the Terms and Conditions and the MSA to 'provide' that same protection to Cameron. Nevertheless, Cameron is entitled to that indemnity from Transocean without regard to Transocean's ability to secure its own rights against BP.

(Cameron's Memorandum, p. 3).

Cameron relies on unremarkable interpretation principles that require indemnity contracts to be given their plain meaning where possible, and to avoid interpretations that lead to absurd results. (Cameron Memorandum, pp. 18-19). Notwithstanding, these principles do not support Cameron's proposed interpretation of the pollution indemnity provision of the Terms and Conditions. As Cameron admits, indemnity agreements must clearly and unequivocally provide for indemnity for the indemnitee's own fault (Memorandum, p. 20). To avoid the impact of these maxims, Cameron asserts that:

> Each of the risk allocation agreements between Transocean provides express notice that with respect to certain categories of claims and costs, one of the parties may be called upon to pay damages caused solely by the negligence of the indemnitee even if the claims are based in negligence or product defect. In fact, the key provisions are highlighted through the use of all caps.

(Cameron's Memorandum, p. 20). The pollution indemnity provision in the Terms and Conditions agreement and the MSA are *not* highlighted in all caps. More importantly, there is no clear and unequivocal language in that provision stating that Transocean has assumed a direct obligation to indemnify Cameron for Cameron's own fault.

7

**D.     The pollution indemnity provision in the Terms and Conditions does not create a direct obligation by Transocean to indemnify Cameron, and the Drilling Contract does not create third-party beneficiary status in Cameron.**

The pollution indemnity provision is a *contingent*, *conditional* obligation that states "*[i]n the event*" Transocean is entitled to indemnity in a contract with a customer, Transocean "will provide [Cameron] with the benefit of such indemnity to the fullest *extent possible*." Transocean agrees that BP owes Transocean indemnity for liabilities for pollution emanating from the Macondo well; however, that does not translate into a "benefit" for Cameron. Cameron, in fact, has conceded this point:

> By its Motion, Cameron is not asserting a right as "extended beneficiary of indemnifications" by BP under the Drilling Contract. It is asserting instead its rights against Transocean under the Terms and Conditions and MSA.

(Cameron's Memorandum, p. 15).

The Drilling Contract between Transocean and BP requires BP to indemnify Transocean for all liabilities resulting from pollution from the Macondo well. (Ex. 1 to Cameron's Statement of Materials Facts, Art. 24.2). That indemnity does not extend to Transocean's contractors, suppliers or the like. Art. 25.2, entitled "**BENEFIT OF INDEMNITIES**," (all capitals and bold lettering in original) explicitly states that the indemnity extends to a party's parents, subsidiaries and the like, which are referred to as "**EXTENDED BENEFICIARIES OF INDEMNIFICATION**" (all capitals and bold lettering in original). Art. 25.3, which Cameron has not discussed, states explicitly that no one, other than the EXTENDED BENEFICIARIES OF INDEMNIFICATION, are entitled to assert any rights *against either party*:

> Except as otherwise specifically agreed nothing in this Contract shall be construed or applied so as to permit any person or entity not a direct signatory hereto . . . to enforce or seek damages against either signatory party hereto for any breach of this Contract. The definition of CONTRACTOR and COMPANY herein shall not be construed to enable or entitle any person or entity other than the signatory parties hereto or a successor or permitted assignee of such a signatory party to directly sue or seek relief against the other signatory party hereto except to the

8

> extent that any Extended Beneficiary of Indemnification (as defined in Article 25.2) shall be expressly permitted to enforce such rights of indemnification against the indemnitor. Except for any EXTENDED BENEFICIARIES OF INDEMNIFICATION, no persons or entities are intended to be or become third party beneficiaries of this contract.

(All capitals in original). Despite the clarity of Art. 25.2 and 25.3, Cameron argues:

> When interpreted in light of Drilling Contract § 25.2, "provid[ing] the benefit" of the Drilling Contract "indemnity" necessarily entitles the benefitted party to the same indemnification set out in the Drilling Contract.

(Memorandum, pp. 21-22). Articles 25.2 and 25.3, with perfect clarity, state unequivocally that no one, other than defined "EXTENDED BENEFICIARIES OF INDEMNIFICATION," have any right to assert claims for indemnity.

Cameron contends that the pollution indemnity provision in the Terms and Conditions agreement means that Transocean has an "independent and direct indemnity obligation" to indemnify Cameron, just as BP has a direct duty to indemnify Transocean. (Memorandum, p. 23). According to Cameron, any other interpretation would be "absurd." (*Id.*) Cameron's attempt to incorporate the indemnity provisions of the Drilling Contract into the Terms and Conditions[4] would stand the Drilling Contract's indemnity obligations on their head. Under Cameron's argument, Transocean would be directly and absolutely liable to Cameron for well pollution liability, without regard to Cameron's lack of third-party beneficiary status and without regard to whether Transocean is entitled to indemnity under the Drilling Contract. Such intent is neither "clearly and unequivocally" provided in the pollution indemnity provision of the Terms and Conditions, nor can such an intent be reasonably inferred from the language of that provision.

---

[4] Cameron mistakenly states that the Drilling Contract "was referenced in the Transocean agreements with Cameron. SOF ¶¶ 1-8." (Memorandum, p. 21). Such a statement is not contained in the Statement of Material Facts. There is no reference in the Terms and Conditions indemnity provisions to the Drilling Contract, and there is certainly no language purporting to incorporate the indemnity provisions of the Drilling Contract.

The meaning of the pollution indemnity provision in the Terms and Conditions agreement is plain. ***"In the event"*** Transocean is entitled to indemnity under its contract with BP, Transocean is to provide the "benefit" of that indemnity to the ***"extent possible."*** To illustrate: ***If*** Cameron was a named or third-party beneficiary of the Drilling Contract or ***if*** the indemnity provisions in the Drilling Contract required BP to indemnify Transocean ***and its contractors and suppliers***, ***then*** Transocean could provide that "benefit" to Cameron. But, that simply is not the case. There is no "benefit" to confer on Cameron under the Drilling Contract, and thus it is not "possible" to provide such a "benefit."

The only "benefit" Cameron could obtain under the Drilling Contract is an indirect one. If Transocean had a direct, unconditional obligation to indemnify Cameron under the Terms and Conditions for pollution liability, like that for injuries, deaths and property damage to Purchaser Group, then BP would be obligated to indemnify Transocean for that indemnity obligation under Art. 25.1 of the Drilling Contract. However, the pollution indemnity provision in the Terms and Conditions does not clearly and unequivocally impose a direct, absolute indemnity obligation on Transocean.

In summary, Transocean does not owe a direct obligation to Cameron to indemnify for well pollution liability, and Cameron's Motion for Summary Judgment should be denied with regard to well pollution claims asserted by Transocean in its Rule 13 Cross-Claims/Counter-Claims.

## IV.   CONCLUSION

Transocean respectfully requests that Cameron's motion for summary judgment seeking direct indemnity from Transocean under the Terms and Conditions and MSA for pollution liability from the Macondo well blowout be denied.

Respectfully submitted,

By:  /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,

By:  /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By:  /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 1070)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129
-and-
601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:
John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com,
allen.katz@mto.com

*Counsel for Transocean*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and served on all counsel of record though LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 30th day of November, 2011.

/s/  Kerry J. Miller
KERRY J. MILLER