# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO, | § | SECTION:  J |
| on APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| Applies to:   All Cases | § | |
| | § | MAG. JUDGE SHUSHAN |
| | § | |

_____        _____

## HALLIBURTON ENERGY SERVICES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY MICHAEL VIATOR, FRED SABINS, AND CSI TECHNOLOGIES, INC. AND TO STRIKE EXPERT OPINIONS

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY .................................................................................................................1

II.     ARGUMENTS AND AUTHORITIES................................................................................1

        A.      BP mischaracterizes the Fifth Circuit's test for disqualifying an expert..................1

                1.      BP's argument that HESI and Viator did not share a confidential
                        relationship is absurd. ................................................................................2

                2.      HESI shared privileged and confidential information with Viator..............4

                3.      HESI need not disclose its confidential information to BP in order
                        to disqualify Viator, Sabins, and CSI........................................................6

        B.      Because Sabins and CSI assigned Viator to perform work for BP, CSI and
                Sabins should be disqualified...............................................................................7

III.    CONCLUSION............................................................................................................9

IV.     PRAYER...................................................................................................................10

CERTIFICATE OF SERVICE ...............................................................................................12

1801666 v1-24010/0002 PLEADINGS

## <u>TABLE OF AUTHORITIES</u>

### <span style="font-variant: small-caps;">Cases</span>

*BP Amoco Chem. Co. v. Flint Hills Resources, LLC,* 500 F. Supp. 2d 957 (N.D. Ill. 2007) ..... 3, 9

*Brooks Shoe Manuf. Co. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir. 1983) .............................. 3

*Conforti & Eisele, Inc. v. Div. of Building and Constr.*, 405 A.2d 487 (Sup. Ct. N.J. 1979)......... 9

*English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498 (D. Colo. 1993) ............. 7

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 426
   (E.D. Pa. 2001) .................................................................................................................... 3, 7

*Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087 (N.D. Cal. 2004)......................... 3, 4

*Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178 (5th Cir. 1996) .................. 2, 4, 6

*Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588 (D. Minn. 1986)........................ 6, 9

*Mayer v. Dell*, 139 F.R.D. 1 (D.D.C. 1991)................................................................................. 3

*Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187 (S.D.N.Y. 1988)....................................... 7

*Paul v. Rawlins Sporting Goods Co.*, 123 F.R.D. 271 (S.D. Ohio 1988)................................. 3, 4

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992) ............ 6-7

*Rhodes v. E.I. du Pont de Nemours & Co.*, 558 F. Supp. 2d 660 (S.D. W. Va. 2008) .................. 4

*Sealed Party v. Sealed Party*, No. Civ. A. H-04-2229, 2006 WL 1207732 (S.D. Tex.
   2006) ..................................................................................................................................... 4

*Stencel v. The Fairchild Corp.*, 174 F. Supp. 2d 1080 (C.D. Cal. 2000)...................................... 9

*Vikase Corp. v. W.R. Grace & Co.*, No. 09-C-7515, 1992 WL 13679 (N.D. Ill. 1992)................ 7

*Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246 (E.D. Va. 1991) ...................................... 2

*Yelton v. PHI, Inc.*, No. 09-3144, 2001 WL 2294392 (E.D. La. June 8, 2011)............................. 3

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully replies to BP and CSI's Responses to HESI's Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. (Rec. Docs. 4723, 4718) and shows as follows:

# I.
# SUMMARY

Though CSI and BP cloak their responses with allegations that HESI misrepresents the facts, they fail to address critical and undisputed facts, and BP misrepresent the legal standard applicable in the Fifth Circuit.  CSI and BP do not dispute that: (1) Viator is a party employee, as opposed to an independent expert; (2) while employed by HESI, Viator assisted HESI in its defense of this very litigation; (3) CSI and Sabins hired Viator knowing that he assisted HESI in its defense of this very litigation; (4) CSI and Sabins assigned Viator to the BP litigation project, wherein he billed in excess of fifty hours; (5) Sabins' expert report relies on Viator's work; and (6) Sabins and CSI asked Viator to utilize HESI's proprietary software to HESI's detriment.  CSI and BP fail to even address *how* Viator was assigned to access HESI's modeling software via the OptiCem escrow agreement or *why* his name was on the list.  They simply claim — without evidentiary support — that his name was "inadvertently placed" on the escrow list.  Rec. Doc. 4723 at 6; *see also* Tr. 10/14/11 hearing, at 56-58 (his name "was put on the list" "ended up on the list" "got put on that list").  Because HESI easily satisfies *Koch Refining*, this Court should disqualify Mr. Viator, Fred Sabins, and CSI.

# II.
# ARGUMENTS AND AUTHORITIES

## A.    BP mischaracterizes the Fifth Circuit's test for disqualifying an expert.

According to BP, an expert may work for one side, then switch to working for the other side so long as he promises not to share confidential information — as the expert defines it.  This

is not the law.  An expert cannot switch sides over the protests of the first retaining party.  If an expert switches sides in the same litigation, disqualification is required, regardless of whether or not confidential information was shared.  *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citing *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991)).  Even if this was not a case of clear side switching subject to the bright line rule, HESI satisfies *Koch Refining's* two-part test. , 85 F.3d at 1181.  BP seeks to expand the *Koch Refining* analysis, however, to require (1) proof that Viator disclosed privileged information to Sabins and CSI and (2) HESI's disclosure of the confidences and privileges it seeks to protect.

**1.     BP's argument that HESI and Viator did not share a confidential relationship is absurd.**

BP alleges that Viator cannot be considered a consulting expert because HESI did not make it "clear" to Viator that he was an internal consulting expert for this litigation.  Rec. Doc. 4723 at 6-7, n.1.  Viator's own testimony establishes that he was part of a consulting expert team headed by Richard Vargo working under the direction of counsel.  *See* Viator Dep. at 37:9-38:9 (describing Vargo's team and stating "I did know he was working with counsel, yes."); *see also* Affidavit of Richard Vargo attached as Exhibit A at ¶¶ 5-6.  Viator admits to meeting with HESI's lawyers and to recognizing Gavin Hill's and Bruce Bowman's names.  Viator Dep. at 38:16-39:20.  Not only did Viator sign a confidentiality agreement when he joined HESI, he was reminded by Mr. Vargo throughout 2010 and 2011 that his work was especially confidential and sensitive because he was assisting counsel in preparing HESI's legal defense.  Rec. Doc.  4595, Ex. A; Vargo Aff. at ¶¶ 5-6.  By going to work for BP's expert and working on the BP project, Viator switched sides and must be disqualified.  Even if the court does not view these facts as

switching sides, Viator should be disqualified under the *Koch Refining* test because HESI reasonably believed it had a confidential relationship with Viator — its own employee.

BP misses the point of the first prong of the *Koch Refining* test, namely whether it was reasonable to assume a confidential relationship existed. *See* Rec. Doc. 4723 at 8-9. This prong is an issue in cases where there is some question as to whether the expert was hired by the movant,[1] not when the expert is an *employee* of the movant who worked on the same litigation. Because neither BP nor CSI can dispute that Viator worked for HESI on this litigation, they cannot dispute that HESI reasonably assumed there was a confidential relationship with Viator.

This is not a case of counsel informally consulting with a freelance expert, leaving open the question of whether the expert was retained for particular litigation. *See e.g.*, *Paul v. Rawlins Sporting Goods Co.*, 123 F.R.D. 271 (S.D. Ohio 1988). Nor is this a case of a short-lived relationship. *See e.g.*, *Yelton v. PHI, Inc.*, No. 09-3144, 2001 WL 2294392, *3 (E.D. La. June 8, 2011). Viator worked for HESI full time for five years and signed a confidentiality agreement. Rec. Doc. 4595, Ex. A. BP's authority recognizes that signing a confidentiality agreement establishes that a party and an expert had a confidential relationship. *See BP Amoco Chem. Co. v. Flint Hills Resources, LLC,* 500 F. Supp. 2d 957, 961 (N.D. Ill. 2007); *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers*, *L.L.C.*, 202 F.R.D. 426, 429 (E.D. Pa. 2001); *see also Paul*, 123 F.R.D. at 279 (written contract prohibiting the disclosure of information obtained evidences existence of confidential relationship). Furthermore, Viator knew he was assigned to an investigative team working with defense counsel. Viator Dep. at 37:9-39:23, 41:4-9; Vargo

---

[1] *See e.g.*, *Brooks Shoe Manuf. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 861 n.16 (11th Cir. 1983); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093-94 (N.D. Cal. 2004); *Mayer v. Dell*, 139 F.R.D. 1, 2-3 (D.D.C. 1991).

Aff. at ¶¶ 5-6.  HESI had every reason to believe its relationship with Viator was confidential and it clearly satisfies *Koch Refining*'s first prong.

### 2.       HESI shared privileged and confidential information with Viator.

The Fifth Circuit test explicitly provides that if either "confidential *or* privileged information" was shared with an expert, then the expert must be disqualified.  *Koch Refining*, at 1181 (emphasis added).  The nature of the communications between an attorney and an expert, and the extent to which both parties appreciate the significance or confidentiality of those communications is the crucial focus of the court's inquiry on disqualification.  *Paul*, 123 F.R.D. 279-80.  Confidential information is "information of either particular significance *or* [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege."  *Id*. at 279 (as quoted in *Hewlett-Packard Co. v. EMC Corp*., 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004) and *Rhodes v. E.I. du Pont de Nemours & Co.*, 558 F. Supp. 2d 660, 667 (S.D. W. Va. 2008)).  Confidential information is broadly construed and includes virtually any information relating to a case.  *See Sealed Party v. Sealed Party*, No. Civ. A. H-04-2229, 2006 WL 1207732, *10 (S.D. Tex. 2006) (collecting cases applying both Texas and Louisiana law).

HESI disclosed both privileged and confidential information to Viator.  More specifically, in order to properly assess the strengths and weaknesses of HESI's claims and defenses in this litigation, HESI organized internal consulting expert teams to assist its defense counsel.  Vargo Aff. at ¶ 4-5.  One team included Viator.  *Id*. at ¶ 6.  HESI supplied Viator with confidential information to complete his team assignments, which included his performance of an in-depth review of Jesse Gagliano's work on the Macondo well and an investigation of the facts related to the cement job as alleged by BP in its Bly Report.  *Id*.  Viator was directly involved in tasks performed to refute BP's allegations regarding the lack of cement channeling in

the casing by casing annulus above the 9-7/8 inch liner shoe.  *Id.*  Viator was informed that the information he used and produced was very sensitive and confidential as it was directed by defense counsel.  *Id.* at ¶ 5, 6.

Viator's team had several meetings with Richard Vargo wherein the work of Viator and others was reviewed.  *Id.* at ¶ 7.   During these meetings, Richard Vargo was guided by his discussions with HESI's defense counsel.  *Id.*  On February 17, 2011, Viator and others on the team met personally with defense counsel for approximately four hours.  *Id.*   During this meeting, where Viator and his team members explained their work to defense counsel, counsel asked questions and discussed specific BP allegations against HESI and how HESI could counter those allegations.  *Id.* at ¶ 8.  During the meeting, HESI's counsel also discussed their concerns, the strengths and weaknesses of certain HESI claims and defenses, and the next steps to be taken by the team.  *Id.* at ¶ 9.  Viator admits that during this meeting his team discussed its findings with defense counsel and instructed counsel on how to understand the material.  Viator Dep. at 41:19-42:5.  At his deposition, Viator's memory of the meeting was faded at best.  He never stated, however, that he was not exposed to work product, attorney-client privilege, legal strategies, or other confidential information.  *See* Viator Dep. at 38:16-42:24.  During a follow-up meeting on February 25, 2011, Richard Vargo informed Viator of defense counsel's follow-up questions and concerns for further investigation.  Vargo Aff. at ¶ 9.

Clearly, Viator received information both directly from defense counsel, or indirectly through Mr. Vargo, that was of "particular significance" and that was privileged and confidential.  Viator's knowledge of HESI's defenses and defense strategies requires disqualification.

**3.     HESI need not disclose its confidential information to BP in order to disqualify Viator, Sabins, and CSI.**

BP complains that HESI has not revealed the very confidences and privileges it seeks to protect and that it must do so in order to disqualify Viator, Sabins, and CSI.  Rec. Doc.  4723 at 9-11.  While the burden is on HESI to demonstrate the two prongs of the test, it need not prove in detail what confidences were disclosed to Viator.  *See Koch Refining*, 85 F.3d at 1181.  "The threat or potential threat that confidences may be disclosed is enough."  *Marvin Lumber & Cedar Co. v. Norton Co*., 113 F.R.D. 588, 591 (D. Minn. 1986).  If BP's high burden of proof were the rule, a moving party could not prove confidences were shared without revealing those confidences.

The Court may reasonably infer that confidential information was disclosed to Sabins and CSI because Viator's memory of confidential information is difficult to purge or effectively shield.  *See Rentclub, Inc. v. Transamerica Rental Fin. Corp*., 811 F. Supp. 651 (M.D. Fla. 1992).  In *Rentclub*, the court disqualified an attorney who hired as a "trial consultant" an employee of the opposing party who had access to confidential information relevant to the litigation.  The court found there was a "reasonable probability" that the employee was induced to disclose confidential information and that the attorney acted improperly by paying the employee for testimony.  *Id.* at 655.  The *Rentclub* scenario created an appearance that the party opponent gained an unfair advantage, tainting the judicial process and warranting disqualification.  *Id*. at 657.  The court noted that employees have memories and the company has a vital interest in the employee's knowledge of privileged information.  *Id*. at 658.  In the present case, the appearance of an unfair advantage and tainting of the judicial process is evident.

Because HESI, the public, and this Court can infer that Viator disclosed confidential information to Sabins and CSI, disqualification is warranted.

BP incorrectly argues that Viator only shared "technical" information and was not exposed to "confidential" information.  Rec. Doc.  4723 at 9-10.  BP's authorities for this proposition are factually distinguishable from this case.  *See Greene, Tweed of Delaware*, 202 F.R.D. at 429-30 (refusing to disqualify former employee of moving party as expert for opposing party where employee never had access to confidential information relevant to the issues in the litigation); *Vikase Corp. v. W.R. Grace & Co*., No. 09-C-7515, 1992 WL 13679, *2-3 (N.D. Ill. 1992) (refusing to disqualify former employee where he had no experience specific to the products at issue in the suit); *Nikkal Indus., Ltd. v. Salton, Inc*., 689 F. Supp. 187, 192 (S.D.N.Y. 1988) (refusing to disqualify expert where there was only "a comprehensive employment interview," no retention of the expert, and no showing as to how the information was privileged).  Viator was part of a small internal consulting team working with HESI's defense counsel in this action.  Information flowed between Viator and defense counsel.  *See English Feedlot, Inc. v. Norden Laboratories, Inc*., 833 F. Supp. 1498, 1502 (D. Colo. 1993) (refusing to disqualify expert where the information "flowed in one direction" from the expert to the prior retaining party).  The information Viator received while consulting with HESI's defense counsel about HESI's defenses is not merely "technical information."  *See* Vargo Aff. 5-6.

**B.** **Because Sabins and CSI assigned Viator to perform work for BP, CSI and Sabins should be disqualified.**

BP and CSI argue that HESI should trust their representations and not worry that Viator — inadvertently or not — shared or may share HESI's confidential information.  HESI should not be required to simply trust its opponents under these circumstances and bear the risk that

confidences have been or will be kept.  BP seeks to hold HESI responsible for the largest oil spill in history.  Viator, who admits that he has HESI's confidential information, assisted CSI in preparing its expert report against HESI.  HESI has no reason to trust Viator's assurances that he has kept HESI's information confidential and should not be forced assume this risk.  Rec. Doc. at 4723, at 10-11, 12-13.

BP argues that even if there is a basis for disqualifying Viator, there is no basis for disqualifying Sabins and CSI because the imputation rules that apply to attorneys do not apply to experts.  Rec. Doc.  4723 at 7.  Since CSI and BP admit that Viator worked on the BP project and that Sabin's report relied on this work, the issue of imputation is not even reached.  Disqualification in this case is fair, reasonable, and will promote the integrity of the judicial process.

BP alleges that Viator was "effectively screened" from Sabins' work.  Rec. Doc.  4723 at 5.  However, Viator, CSI, and BP admit that Viator billed in excess of 50 hours to the BP project, and that Sabins' report references Viator's work.  Rec. Doc.  4723 at 5, 16.  Assigning Viator to perform work for BP is the exact opposite of effective screening.  A Chinese Wall is a wall — not a revolving door.  By working with Viator on this case, Sabins tainted himself and his small consulting firm.  Further evidence of imputation of knowledge is unnecessary.

BP incorrectly states that HESI cites no cases where an entire firm is disqualified.  Rec. Doc. 4723 at 11-12.  In both *Marvin Lumber* and *Conforti & Eisele,* entire firms were disqualified for less egregious actions.  *See Marvin Lumber*, 113 F.R.D. at 591-92; *Conforti & Eisele, Inc. v. Div. of Building and Constr.*, 405 A.2d 487, 492 (Sup. Ct. N.J. 1979).  Moreover, BP's authority on this point is distinguishable, as CSI is a small engineering firm.  *Cf. BP Amoco Chem., LLC*, 500 F. Supp. 2d 957 (refusing to disqualify where three engineers of a large 167

engineer firm previously performed work not in anticipation of litigation and were completely screened).

*Stencel* does not support BP's arguments against disqualification.  The tainted expert in *Stencel* had no contact at all with his colleague in a large, multi-city firm other than identifying the conflict at issue.  *See Stencel v. The Fairchild Corp*., 174 F. Supp. 2d 1080 (C.D. Cal. 2000). In contrast, when a firm's expert has a "prior relationship [that] clearly impinges on this litigation" the court may disqualify the entire firm.  *See Marvin Lumber*, 113 F.R.D. at 591-92; *Conforti & Eisele, Inc.,* 405 A.2d at 492.  Moreover, if an expert who is privy to the legal aspects of a case switches sides, even assuming confidential information was not disclosed to the other side, that side still obtains the benefit of this confidential information because it shapes or effects, either consciously or unconsciously, the expert report.  *Conforti & Eisele, Inc.*, 405 A.2d at 492.  Viator was exposed to HESI's confidences and he cannot purge that knowledge from his expertise.  Accordingly, Viator, Sabins, and CSI should be disqualified.

Here, we have much more than a simple interview and the situation is more akin to attorneys working for the same firm — and on the same case.  Thus, the Court may presume that confidential information was shared, whether purposely or inadvertently, given the proximity and shared work goals.  This proximity and these shared work goals are what lead to CSI assigning Viator to work on the BP case.  At the very least, the Court should not require HESI to bear the risk that confidential information will be shared.

### III.
### <u>CONCLUSION</u>

BP's attempt to expand the *Koch Refining* test should be rejected.  Viator should be disqualified because he switched sides after receiving confidential and privileged information

from HESI's defense counsel.  Sabins and CSI should be disqualified because they hired Viator and assigned him to work against HESI with full knowledge that he worked with HESI's defense counsel in this very litigation.  Although HESI is not required to prove that Viator disclosed HESI's confidential information to Sabins and CSI, and the Court should infer such disclosure. If the tables were turned and HESI hired one of CSI's key consultants, such as David Brown or Larry Waters, BP would certainly seek to disqualify those individuals as experts in this case.

## IV.
## PRAYER

HESI respectfully requests that the Court grant its Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. and to Strike Expert Opinions.  HESI requests that the Court strike the expert opinions, testimony, and expert reports to which Viator, Sabins, or CSI contributed, and that the Court disqualify Viator, Sabins, and CSI from the remainder of these proceedings.  In the alternative, HESI prays for additional discovery related to Viator's work for BP in this case.  HESI also prays for all other relief, legal and equitable, to which it is justly entitled.

Dated:  November 30, 2011.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:**  /s/  *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Halliburton Energy Services, Inc.'s Reply Brief in Support of its Motion to Disqualify Michael Viator, Fred Sabins, and CSI Technologies, Inc. and to Strike Related Evidence* was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 30th day of November 2011.

/s/ Donald E. Godwin
Donald E. Godwin