## Exhibit A

### STATES DISTRICT OF COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § § | MDL No. 2179 |
| | | SECTION:  J |
| Applies to:  All Cases | | JUDGE BARBIER |
| 2:10-cv-02771 | | MAG. JUDGE SHUSHAN |
| 2:10-cv-04536 | | |

### AFFIDAVIT OF RICHARD VARGO

1.      "My name is Richard F. Vargo Jr.  I am more than twenty-one years old, of sound mind, have never been convicted of a felony or crime involving moral turpitude, and am fully competent to make this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.      I work for Halliburton Energy Services, Inc. ("HESI"), as did Michael Viator, and I have worked with attorneys with the law firm of Godwin Ronquillo PC in preparing HESI's defense in the above-referenced matter.

3.      Michael Viator joined HESI in 2006, immediately after graduating from college. HESI makes significant investments in training its entry-level technical professionals like Mr. Viator.  These individuals receive at least twelve months of training and additional ongoing on-the-job training.  They also receive mentoring as his or her career progresses.  Mr. Viator received training on cement modeling, using HESI's proprietary software modeling programs including its non-commercial version of OptiCem.  After the Macondo blowout, and pursuant to his normal work duties, HESI assigned Mr. Viator to work on the relief well and the top kill. Subsequently, and under my direction, HESI trained Mr. Viator further by giving him access to HESI's confidential data regarding the Macondo well, including work product arising from HESI's preparation for its defense in this litigation.

4.      Since late 2010, as part of the preparation of HESI's defense in this litigation, I have assisted HESI's in-house and outside defense counsel in assessing the facts, strengths, and weaknesses of HESI's claims and defenses.  Since late 2010, I have acted as a conduit between defense counsel and the internal HESI consulting teams that I manage.  In this capacity, I regularly convey questions, concerns, and answers thereto between and among the expert teams and HESI's defense counsel.

5.      In order to properly facilitate the assessment of the strengths and weaknesses of HESI's claims and defenses, beginning in 2010, I selected certain HESI professionals with

experience in modeling cement designs to perform various tasks and research as defense counsel directed and requested. Beginning in 2011, I assigned Mr. Viator to several of these tasks, informing him that such tasks were extremely confidential and sensitive as we were assisting legal counsel. These tasks included data simulations and analyses. For these tasks, Mr. Viator was given access to confidential and privileged information compiled by HESI's defense counsel and/or by HESI personnel assisting defense counsel. The tasks assigned to Mr. Viator required that he have access to this information, which is confidential and proprietary to HESI. Mr. Viator understood that his work was performed to assist defense counsel. Exhibit C to HESI's motion to disqualify, Rec. doc. 4595, is an example of work product Mr. Viator produced to assist defense counsel.

6.     Since the fall of 2010, I have organized and managed internal HESI consulting expert teams to assist defense counsel in this litigation. One team included Mr. Viator. HESI supplied Mr. Viator and others on this team with data and other confidential information to complete their assignments. As this project began, I instructed Mr. Viator and others on the team that the information they used and produced was very sensitive and confidential as it was directed by counsel in connection with HESI's claims and defenses in this litigation. The assignments given to Mr. Viator and others on the team included an in-depth review of Jesse Gagliano's work on the Macondo well and an investigation of the facts related to the cement job as alleged by BP in its Bly Report. Mr. Viator was directly involved in tasks performed to refute BP's allegations regarding the lack of cement channeling in the casing by casing annulus above the 9-7/8 inch liner shoe.

7.     In February 2011, I organized and attended a series of meetings with Mr. Viator and the others on the team. In these meetings, and when reviewing the work of Mr. Viator and the other team members, I was guided by my discussions with HESI's in-house and outside counsel working on this litigation. On the morning of February 17, 2011, I organized and attended a lengthy working group meeting with Mr. Viator and the others on the team to review their work product. Immediately after this meeting, Mr. Viator, the others on the team, and I met personally with attorneys from Godwin Ronquillo PC, Gavin Hill and Joel Beus, with Bruce Bowman participating by telephone. This meeting with defense counsel lasted from approximately 8:00 am until the lunch hour.

8.     The February 17, 2011 meeting was a working group meeting, not a one-way briefing. During the meeting, Mr. Viator and the others on the team explained their work to the attorneys, who asked questions and discussed specific BP allegations against HESI and how HESI could counter those allegations. During the meeting, HESI's counsel discussed their concerns, the strengths and weaknesses of certain HESI claims and defenses, and the next steps to take in this consulting expert process.

9.     Mr. Viator was present during the entire February 17, 2011 meeting, wherein he participated in discussions with defense counsel about BP's allegations and HESI's defense strategies. During a follow-up meeting on February 25, 2011 with Mr. Viator and the others on the team, I conveyed counsel's follow-up questions and concerns for further investigation.

10.     Accordingly, on numerous occasions throughout 2010 and 2011, I informed Mr. Viator of defense counsel's questions and concerns regarding HESI's claims and defenses

associated with the specific work he was performing. During this process, attorney-client communications, work product, and confidential information were provided to Mr. Viator and the others on the team.

11.     In early 2011, I asked Mr. Viator and the others on the team to keep their confidential data files on a jump or flash drive because the size of the files and security thereof did not lend themselves to sharing via email. Mr. Viator and the others on the team also had access to and utilized an internal server site that was specifically set up for these data files to reside. When Mr. Viator abruptly left HESI in March of 2011, he did not return the jump drive containing HESI's confidential information as I expected him to."

_____
Richard F. Vargo Jr.

SUBSCRIBED AND SWORN TO BEFORE ME on this 30th day of November, 2011, to

certify which witness my hand and seal of office.

Notary Public, State of Texas

PATRICIA K. SUTTLES
Notary Public, State of Texas
My Commission Expires
February 02, 2014