UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BP'S *EX PARTE* MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE THE RICHARD VARGO AFFIDAVIT AND HALLIBURTON'S REPLY IN SUPPORT OF IT MOTION TO DISQUALIFY OR REQUEST FOR RELIEF IN THE ALTERNATIVE**

BP respectfully moves to strike the Affidavit of Richard Vargo (Rec. Doc. 4779-1) and Halliburton's Reply Brief in Support of Its Motion to Disqualify (Rec. Doc. 4779) or, in the alternative, requests the relief detailed below.

BP moves the Court to strike the Vargo Affidavit because the attorney-client privilege and work product doctrine cannot be used as both a sword and a shield. During Mr. Vargo's deposition taken on March 30-31, 2011, Halliburton relied on these doctrines to instruct Mr. Vargo not to answer questions relating to meetings with counsel or about post-incident work done at the direction of counsel. Halliburton counsel repeatedly shut off any questions of Mr. Vargo on these issues. Halliburton cannot now use the Vargo Affidavit to offensively provide a one-sided recitation of the facts it previously shielded from discovery. As such, the Court should strike the Vargo Affidavit from the record.

If the Court does not strike the Vargo Affidavit, BP requests that the Court find that there is no attorney-client privilege or work product protection for the post-incident work conducted by or for Mr. Vargo, including work at the direction of counsel, and order Halliburton to immediately produce all documents withheld on this basis and to produce Mr. Vargo and all other Halliburton witnesses that were instructed not to answer questions on post-incident work for deposition testimony on this limited topic.

BP likewise respectfully moves the Court to strike Halliburton's Reply Brief as the rebuttal argument in that reply brief, for the first time, relies solely on the Vargo Affidavit to rebut the testimony of Mr. Viator.  *See* Ex. E (a copy of Halliburton's reply with the sentences citing to or relying on the Vargo Affidavit redacted).  Having found no support in Mr. Viator's deposition transcript for its motion, Halliburton now attempts, for the first time in a reply brief,  to contradict the record by submitting the Vargo Affidavit and characterizing facts that were not made available in discovery or subject to cross-examination.  If the Court does not strike the obvious and improper sandbag that is Halliburton's reply brief, then BP requests the Court grant it leave to file a sur-reply brief responding to points in Halliburton's brief.  Although Halliburton told the Court 2 weeks ago that it did not plan to file a reply brief absent something "very surprising," and further stated that any potential reply would consist of "very few pages" filed within "two days at the outside" (Ex. F (November 18, 2011 Status Conf. Tr.) at 54), it filed a ten-page reply

brief raising new matter plus a new affidavit on the evening of November 30, 2011—seven days after BP's opposition.

**I.   THE VARGO AFFIDAVIT SHOULD BE STRICKEN TO PREVENT HALLIBURTON FROM USING THE ATTORNEY-CLIENT PRIVILEGE AS BOTH A SHIELD AND A SWORD.**

It is unacceptable for litigants to "hide behind attorney-client privilege if they are relying upon privileged communications to make their case." *New Phoenix Sunrise Corp. v. C.I.R.*, 2010 WL 4807077 at *8 (6th Cir. 2010) ("Litigants cannot hide behind attorney-client privilege if they are relying upon privileged communications to make their case; the attorney-client privilege cannot at once be used as a shield and a sword."). In fact, allowing a party to do so can constitute an abuse of discretion by a district court. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

At the Vargo deposition on March 30-31, 2011, Halliburton counsel repeatedly instructed Mr. Vargo not to answer questions relating to communications with counsel or post-incident work performed at the direction of counsel. These blanket instructions prevented discovery into the circumstances or even basic subject matter of discussions with counsel relating to post-incident work:

> MR. GODWIN:  Just a moment. ***To the extent that the investigation was initiated by attorneys within Halliburton, we're going to instruct the witness not to answer those questions***, but if there were investigations that were conducted prior to the lawyers getting involved, then he would be able to answer that, but not after.  (Ex. G) (Vargo Dep. 59:23-60:13.)
>
> MR. GODWIN:  ***I'm going to instruct the witness that any investigation that was done at the request or instruction of counsel, he's not to answer questions***

3

> *about that*.  If there was an investigation done prior to the involvement of counsel and his awareness of that, then he can so testify, but not otherwise.  (Vargo Dep. 110:24-111:6.)
>
> MR. GODWIN:  She's asking you to divulge attorney-client privileged communications, which is inappropriate.  ***I'm going to instruct you not to answer anything about any conversation that either you said to an attorney or an attorney said to you***, if you will please.  (Vargo Dep. 457:21-458:14.)
>
> MR. GODWIN:  And ***I'll instruct the witness*** in that regard to attorneys inside of Halliburton, ***you're not to reveal any information you received from those attorneys at any time during the matter involving the Deepwater Horizon***.  (Vargo Dep. 656:23-657:3.)
>
> MR. GODWIN:  ***I'm instructing him not to reveal any information that you learned after counsel started working with you in terms of the investigation***.  (Vargo Dep. 770:4-8.)

Despite Halliburton counsel's thwarting discovery by instructing Mr. Vargo not to answer questions about any discussion with counsel or "any investigation that was done at the request or instruction of counsel," the recently submitted Vargo Affidavit addresses that exact subject matter:

> 4.     Since late 2010, as part of the preparation of HESI's defense in this litigation, <u>I have assisted HESI's in-house and outside defense counsel</u> in assessing the facts, strengths, and weaknesses of HESI's claims and defenses.  Since late 2010, I have acted as a conduit between defense counsel and the internal HESI consulting teams that I manage.  In this capacity, <u>I regularly convey questions, concerns, and answers thereto between and among the expert teams and HESI's defense counsel</u>.
>
> 5.     In order to properly facilitate the assessment of the strengths and weaknesses of HESI's claims and defenses, beginning in 2010, I selected certain HESI professionals

4

with experience in modeling cement designs to perform various <u>tasks and research as defense counsel directed and requested</u>… <u>These tasks included data simulations and analyses</u>…

6. Since the fall of 2010, I have organized and managed internal HESI consulting expert teams to assist defense counsel in this litigation… <u>The assignments given</u> to Mr. Viator and others on the team <u>included an in-depth review of Jesse Gagliano's work on the Macondo well and an investigation of the facts related to the cement job as alleged by BP in its Bly Report</u>. Mr. Viator was directly involved in <u>tasks performed to refute BP's allegations regarding the lack of cement channeling in the casing by casing annulus above the 9-7/8 inch liner shoe</u>.

7. In February 2011, I organized and attended a <u>series of meetings with Mr. Viator and the others on the team</u>. In these meetings, and when reviewing the work of Mr. Viator and the other team members, <u>I was guided by my discussions with HESI's in-house and outside counsel</u> working on this litigation.

8. The February 17, 2011 meeting was a working group meeting, not a one-way briefing. During the meeting, Mr. Viator and the others on the team <u>explained their work to the attorneys, who asked questions and discussed specific BP allegations against HESI and how HESI could counter those allegations</u>. During the meeting, <u>HESI's counsel discussed their concerns, the strengths and weaknesses of certain HESI claims and defenses, and the next steps</u> to take in this consulting expert process.

9. Mr. Viator was present during the entire February 17, 2011 meeting, wherein he participated in <u>discussions with defense counsel about BP's allegations and HESI's defense strategies</u>.

10. Accordingly, on numerous occasions throughout 2010 and 2011, <u>I informed Mr. Viator of defense counsel's questions and concerns regarding HESI's claims and defenses</u> associated with the specific work he was performing.

5

(Vargo Affidavit ¶¶ 4-11.)  Halliburton therefore improperly attempts to bolster its arguments with information on the post-incident work that it previously protected under the attorney-client privilege and/or work product doctrine.

Courts "do not take kindly" to the use of such sword and shield discovery tactics. *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991).  In *Chao v. Tyson Foods, Inc.*, the court found a litigant's "selective[] us[e] [of] the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging that assertion" was highly improper.  568 F. Supp. 2d. 1300, 1327-28 (N.D. Ala. 2008) (quoting *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)); *see also Medtronic Sofamor Danek, Inc. v. Michelson,* 2003 WL 2347605 at *7 (W.D. Tenn. 2003) (a party's reliance on a "declaration in support of its argument" and subsequent refusal to disclose the information contained therein was use of the privilege doctrine as a sword and shield).

Halliburton's actions here violate established law.  Halliburton cannot instruct Mr. Vargo not to answer questions related to the post-incident work undertaken for counsel and then unilaterally characterize that work in an affidavit to its advantage.  Courts have sanctioned striking concealed evidence as the appropriate remedy where a litigant has attempted to manipulate the discovery process.  *Chao*, 568 F. Supp. 2d. at 1328.  As such, BP's motion to strike the Vargo Affidavit should be granted.

In the alternative, if the Court does not strike the Vargo Affidavit, then it should find that no attorney-client privilege or work product protection exists for the post-incident work conducted by or for Mr. Vargo, including work conducted at the direction of counsel. If this information is not protected, then BP requests that the Court order Halliburton to immediately produce all documents withheld on this basis and to produce Mr. Vargo and all other Halliburton witnesses that were instructed not to answer questions on post-incident work for deposition on this limited topic.

## II. THE HALLIBURTON REPLY SUBMISSION SHOULD BE STRICKEN AS IT RELIES SOLELY ON THE VARGO AFFIDAVIT.

The Halliburton reply brief presents no new information other than the Vargo Affidavit. *See* Ex. E (a copy of Halliburton's reply with the sentences citing to or relying on the Vargo Affidavit redacted). Notably, every page and line cite to the Viator deposition transcript is lifted from Halliburton's opening brief. Thus, for all the same reasons the Vargo Affidavit should be stricken, the Halliburton reply brief should also be stricken.

The timing of Halliburton's reply brief and affidavit deprived BP of a proper opportunity to evaluate the declaration's assertions and respond. At the November 18, 2011 status conference, Halliburton represented that it had argued its case in the opening brief and it was unlikely that it needed to file a reply unless there was "something very surprising" in BP's opposition and, in that case, Halliburton would file "a very few pages" "within, maybe, two days at the outside":

7

> THE COURT: Yes. As far as Halliburton's reply, I don't see any need. You all have put your case out there, don't you think?
>
> MR. GODWIN: I think we're fine, Judge.
>
> We would ask that you let us at least see what they have. Unless there is something very surprising, we'll inform you that we won't need to file a reply; but, if there is something surprising, we're willing to do that with a very few pages to reply, if necessary. But that would be done within, maybe, two days at the outside. Hopefully, we won't have to do anything.
>
> THE COURT: Okay. Great.

Ex. F (November 18, 2011 Status Conf. Tr.) at 54. Although BP's (and CSI's) response simply relied on the Viator transcript and there was nothing "really surprising," Halliburton filed a ten-page brief with the new affidavit seven days after BP's opposition on Wednesday evening. Halliburton's brief is due to be stricken on its lack of timeliness alone. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) (citing *RepublicBank Dallas v. First Wis. Nat'l Bank of Milwaukee,* 636 F.Supp. 1470, 1472 (E.D. Wis. 1986)).

A further reason to strike Halliburton's reply brief is that the inclusion of new information after BP's opposition, and for the first time in a reply brief, is prejudicial. The Federal Rules require that supporting affidavits be served with a motion. Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion"). This is to prevent the moving party from sandbagging its adversary by "springing new facts on the nonmoving party 'when it is too late for that party to contest them.'" *Peters*, 285 F.3d at 476-477. Unfair surprise and prejudice results where a non-moving party does not have an opportunity to

8

examine and reply to the moving party's papers.  *Id.* at 476 (referencing *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 409 (5th Cir. 1985).  Further, Halliburton's attempt to raise new matter on reply is particularly unfair when, as here, the information disclosed in the Vargo Affidavit consists of information that BP was prevented from obtaining during the discovery period and was unable to test through cross-examination.

If, however, the Court does not strike Halliburton's reply brief (and the Vargo affidavit), then BP requests the Court grant it leave to file a sur-reply brief responding to points in Halliburton's brief.  A sur-reply brief is necessary to allow BP to address Halliburton's late-raised arguments and new facts.

* * *

In sum, the Court should strike the Vargo Affidavit because it sets forth information on post-incident work done at the direction of counsel that Halliburton previously instructed Mr. Vargo not testify on at his deposition.  Likewise, the Court should strike Halliburton's reply brief that raising new matter based on the Vargo Affidavit.  If the Court does not strike the Vargo Affidavit, BP requests a finding that the post-incident work done by or for Mr. Vargo is not protected and permit BP full discovery into Halliburton's post-incident work.  If the Court does not strike Halliburton's reply brief, BP requests leave to file a sur-reply brief that responds to Halliburton's brief.

Dated: December 2, 2011               Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504 -581-7979
Facsimile:  504 -556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985

***Attorneys for BP Exploration & Production Company and BP America Production Company***

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 2d day of December, 2011.

                                                               /s/ Don K. Haycraft
                                                              Don K. Haycraft