**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: Oil Spill by the Oil Rig          MDL No. 2179
       "Deepwater Horizon"
       in the Gulf of Mexico,
       on April 20, 2010            SECTION: J

This Document Relates to:
Salvesen
v. Feinberg, et al.              JUDGE BARBIER
2:11-cv-02533              MAG. JUDGE SHUSHAN
_____/

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION IN OPPOSITION**
**TO CLASS CERTIFICATION OF ANY ACTION IN MDL NO. 2179**

**INTRODUCTION**

       Selmer M. Salvesen ("Plaintiff") opposes class certification of any action in MDL 2179

and respectfully requests that all motions for class certification pursuant to Federal Rule of Civil

Procedure 23, whether pending or filed hereafter, be denied for the following reasons:

**I.     Defendants Feinberg, et al. Have No Incentive to Settle Claims**

       Defendants Feinberg, et al. have been strategically and systematically forcing oil spill

claimants to accept quick payments with accompanying releases because they are offered no

other viable option. Feinberg, et al. have established a claims process with the primary function

of convincing claimants that the only compensation available is a minimal set amount that comes

with a full release attached. The Plaintiffs' Steering Committee ("PSC") states, "The delay in

responding to interim claims, the near-complete failure to pay interim claims, and the skewed

final payment calculation delivers the message to over 112,000 putative class members: the only

way to ever get any more compensation is to take the quick payment amount and sign a release."

(Rec. Doc. 3423 at Page 11).

On August 26, 2011, in the Court's Order and Reasons [As to Motions to Dismiss the B1 Master Complaint]**,** Judge Barbier found, ".... that nothing prohibits Defendants from settling claims for economic loss. While OPA does not specifically address the use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it. In fact, as the Court has recognized in this Order, one of the goals of OPA was to allow for speedy and efficient recovery by victims of an oil spill." (Rec. Doc. 3830 at Page 34, 35). In the same Order, the Court also found, "State law, both statutory and common, is preempted by maritime law, notwithstanding OPA's savings provisions. All claims brought under state law are dismissed." (Rec. Doc. 3830 at Page 38).

## II.   Plaintiff Is Entitled to Receive the True Value of His Claim

The true value of a claim submitted to GCCF for lost earnings or profits is approximately the amount equal to the average monthly loss in earnings or profits for the period from May 1, 2010 through April 30, 2011 multiplied by fifty (50) months. In other words, if the average monthly loss in earnings or profits for the period from May 1, 2010 through April 30, 2011 is $5,000.00, the true value of the claim submitted to GCCF is calculated as follows:

True Value of Claim = ($5,000/month)(50 months) = $250,000.00

The Fifth Circuit has noted, "In addition to skewing trial outcomes, class certification creates insurmountable pressure on defendants to settle, whereas individual trials would not. The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low. These settlements have been referred to as judicial blackmail." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996) (citations and footnote omitted). This generalization is not applicable to class certification in MDL 2179. Here, the class certification

would be in a mass tort context within the context of a multidistrict litigation. Given that "all individual petitions or complaints that fall within Pleading Bundles B1, B3, D1, or D2, whether pre-existing or filed hereafter, are stayed until further order of the Court" (Pretrial Order No. 25, Para. 8), certification of pending class actions would most probably not be decided until the conclusion of the limitation and liability trial which does not commence until February, 2012. "It was reported that one attorney has approximately 23,000 claimants and inquiry was made as to whether the attorney may produce the information in the form in which it is maintained rather than complete individual PPFs." (Rec. Doc. 642 at Page 2). As of November 16, 2011, there are 523 actions, which encompass approximately 130,000 total individual claims, pending in MDL 2179. In other words, tens of thousands of potential class members are in legal limbo. This hardly "creates insurmountable pressure on defendants to settle."

In the context of one of the largest mass tort cases in United States history, the damages suffered by the vast majority of individual potential plaintiffs as a result of the BP oil spill of April, 2010, and the subsequent "Delay, Deny, Defend" strategy of Feinberg, et al., are potentially so great that class treatment would not be necessary to permit effective litigation of the claims. Here, when the amount of damages suffered by the individual is so great, the filing of an individual lawsuit should be economically feasible and would be in the best interests of the plaintiffs.

The associated cost, consumption of time, and ongoing negative publicity of numerous trials, rather than a few class action lawsuits, are required in order exert the proper amount of pressure on the parties to negotiate a settlement which reflects the true value of the claim and not one which focuses on minimizing the liability of Feinberg Rozen, LLP, Feinberg/GCCF, and the

responsible parties.

### III.   MDL 2179 Plaintiffs Are Not Able to Prove That Class Certification is Appropriate Under Federal Rule of Civil Procedure 23

MDL 2179 Plaintiffs in proposed class actions are not able to meet their heavy burden of proving that class certification is appropriate under Federal Rule of Civil Procedure 23 for the reasons discussed more thoroughly below.

Plaintiffs continue to suffer damages from three separate sources: (a) once from the oil spill, the environmental and economic damages of which have devastated their way of life; (b) again by being left in financial ruin as a direct result of Defendants' "Delay, Deny, Defend" strategy; and (c) a third time for daring to demand justice, which will consume their time, energy and hopes for years to come if they are held hostage by protracted litigation.

If motions for class certification pursuant to Federal Rule of Civil Procedure 23 are granted in MDL 2179, Defendants Feinberg, et al. will continue to have no incentive to settle claims, including Plaintiff's claim, and Plaintiffs will never receive the true value of their claims.

## **BACKGROUND**

### I.   FACTUAL BACKGROUND

At approximately 10 p.m. on April 20, 2010, the U.S. Coast Guard District Eight command center in New Orleans, Louisiana received a report of an explosion and fire aboard the mobile offshore drilling unit Deepwater Horizon. On the morning of April 22, 2010, the Deepwater Horizon sank, resulting in a massive oil spill incident. Oil flowed into the Gulf of Mexico unchecked for months. Ultimately, the "Macondo Well" was finally sealed on September 19, 2010, nearly five months after the blowout began. By that time, millions of barrels of oil had

been discharged into the Gulf of Mexico and upon adjoining shorelines, causing immense environmental and economic harm to the entire region.

The Oil Pollution Act of 1990 ("OPA") requires BP Exploration & Production Inc. (hereinafter "BP"), as the designated "responsible party" for the Deepwater Horizon oil spill, to establish a procedure for the payment or settlement of claims for damages resulting from this oil spill incident. In the initial months after this oil spill incident, BP directly received and paid interim claims arising from the oil spill. During the initial four months, BP contracted with one or more claims adjusting firms to assist in handling claims.

On June 16, 2010, President Obama announced that BP agreed to set aside $20 billion to pay economic damage claims to individuals and businesses affected by the Deepwater Horizon oil spill. President Obama stated, "Another important element is that this $20 billion fund will not be controlled by either BP or by the government. It will be put in a escrow account, administered by an impartial, independent third party."

At the request of the White House and BP, Defendant Feinberg, acting through and as Managing Partner of Defendant Feinberg Rozen, established Defendant GCCF to independently administer and where appropriate settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. On August 23, 2010, Defendant GCCF, spearheaded by Defendant Feinberg and Defendant Feinberg Rozen, replaced the original BP claims process and commenced performing BP's obligations under OPA with respect to private economic loss claims.

The nature of the relationship between BP and Defendant Feinberg and Defendant

-5-

Feinberg Rozen has been memorialized in a written agreement between Defendant Feinberg

Rozen and BP, which was negotiated over a period of several months and was finalized and

executed on January 6, 2011. Section 11 of the agreement, titled "Independent Contractor; No

Agency," states:

> "It is the express intention of the parties that Feinberg Rozen shall be an
> independent contractor throughout the Term of this Agreement. Except as
> otherwise agreed to by the parties, nothing in this Agreement shall in any
> way be construed to constitute Feinberg Rozen as an agent or representative
> of BP, and Feinberg Rozen shall otherwise perform the Services hereunder
> as an independent contractor. The execution of this Agreement shall not be
> construed to create an attorney-client relationship between BP and Feinberg
> Rozen, and the provision of Services hereunder shall not constitute, or be
> otherwise construed to constitute, provision of legal advice from Feinberg
> Rozen, or any of its partners or employees, to BP."

## II.    PROCEDURAL BACKGROUND

On June 15, 2011, Plaintiff filed this action against Defendants in the Circuit

Court of the Twentieth Judicial Circuit in and for Lee County, Florida. On July 6, 2011,

Defendants removed this case to the United States District Court for the Middle District of

Florida ("FLMD") on the erroneous grounds that the FLMD has federal question jurisdiction

under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff filed a

Motion to Remand to State Court on July 18, 2011. On July 14, 2011, Defendants filed a Notice

of Tag-Along Case with the MDL Panel. The MDL Panel issued its Conditional Transfer Order

(CTO-29) on July 15, 2011. On October 6, 2011, the MDL Panel ordered this action transferred

to MDL No. 2179 on the erroneous grounds that "[T]his action, similar to other actions already

in the MDL, *arises from alleged injury to plaintiff's business resulting from the oil spill*."

*Salvesen. v. Feinberg, et al.* is one of only two cases of its kind filed in any court in the

-6-

country. The complaint alleges, in part, that Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, Gulf Coast Claims Facility ("GCCF"), and William G. Green, Jr. misled Plaintiff by employing a "Delay, Deny, Defend" strategy against him. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue." This action, originally filed in Florida state court, is brought by Plaintiff under the following seven causes of action: (a) Gross Negligence; (b) Negligence; (c) Negligence Per Se; (d) Fraud; (e) Fraudulent Inducement; (f) Promissory Estoppel; and (g) Unjust Enrichment.

Defendants rely on two federal statutes - OPA and the Outer Continental Shelf Lands Act ("OCSLA") - to allege the federal court has original federal subject matter jurisdiction over this action. With respect to OPA, Plaintiff does not assert any claims under OPA and relies solely on state law. Plaintiff's allegation that Defendants are in violation of OPA is merely evidence of, at the very least, Defendants' negligence. In addition, the Court should reject Defendants' argument that they could remove this action based on OCSLA because OCSLA does not create a federal question that justifies removal from state court. (Rec. Doc. 4575).

The clarity of the analysis of the scope of OCSLA by Judge Carlton W. Reeves in *State of Mississippi v. Gulf Coast Claims Facility, et al*., C.A. No. 3:11-00509 (S.D. Miss. 2011) is instructive. On July 12, 2011, Attorney General Jim Hood ("Hood") filed suit on behalf of the State of Mississippi against the GCCF and Kenneth Feinberg in Hinds County Chancery Court. On August 11, 2011, the GCCF removed the case to the United States District Court for the

Southern District of Mississippi ("MSSD") claiming that original jurisdiction lies with the MSSD by virtue of the OCSLA. Hood moved to remand the case to state court on September 12, 2011. On November 15, 2011, Judge Reeves granted Hood's motion to remand.

Judge Reeves found "GCCF's argument that Hood has unwittingly stated a claim under OCSLA is likewise not compelling. According to OCSLA, federal courts enjoy subject-matter jurisdiction 'of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . .' The Fifth Circuit has written that it "applies a broad 'but-for' test to determine whether a cause of action arises under OCSLA." *Hufnagel v. Omega Serv. Indust., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999). "And in GCCF's view, because it would not exist but for the Deepwater Horizon's explosion, this case (and, presumably, any other case to which it could ever be a party) necessarily implicates OCSLA." *State of Mississippi v. Gulf Coast Claims Facility, et al*., C.A. No. 3:11-00509 (S.D. Miss. 2011), Order of Remand at Page 10.

"GCCF is correct that the Fifth Circuit views 'the jurisdictional grant contained in U.S.C. § 1349(b)(1) as very broad.' *But to view OCSLA's scope so far-reaching as does GCCF would render GCCF's every potentially actionable decision a federal case, be it related to the claims process at hand or a GCCF employee's car wreck en route to the office*." (Emphasis added)  *Id.*

Neither OCSLA's plain language nor the Fifth Circuit's decisions interpreting it contain any indication that matters so far removed as these - occurring not on the outer Continental Shelf but doing business in Dublin, Ohio, and aimed not at the "exploration, development, or product of . . . minerals" but rather at "developing and publishing standards for recoverable claims"

related to the Deepwater Horizon spill - fall within the purview of Section 1349(b)(1), which addresses "any operation conducted on the outer Continental Shelf . . . ." Plainly, although GCCF's activities amount [to] an operation, that operation is not conducted "on the outer Continental Shelf." Therefore, *OCSLA does not apply and is not a proper basis for federal jurisdiction.*(Emphasis added) *Id.*

In order to efficiently manage this complex MDL, the MDL 2179 Court consolidated and organized the various types of claims into several "pleading bundles." The "B1" pleading bundle includes all claims for private or "non-governmental economic loss and property damages." There are in excess of 100,000 individual claims encompassed within the B1 bundle (Rec. Doc. 3830 at Page 1). In accordance with Pretrial Order No. 11, the PSC filed a B1 Master Complaint (Rec. Doc. 879) and a First Amended Master Complaint (Rec. Doc. 1128) (collectively "B1 Master Complaint").

On January 12, 2011, the MDL 2179 Court issued PTO No. 25 (Rec. Doc. 983), in order to clarify "the scope and effect" of the B1 bundle Master Complaint. Any individual plaintiff who is a named plaintiff in a case that falls within pleading bundle B1 "is deemed to be a plaintiff in the applicable Master Complaint." Also, for the procedural and administrative purpose of answering or otherwise responding to the complaints in pleading bundle B1, as to any Defendant named in the Master Complaint, "the allegations, claims, theories of recovery and/or prayers for relief contained within the pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery, and/or prayers for relief in the respective Master Complaint(s) in which the Defendant is named." (Rec. Doc. 983 at 3.) And, of particular note, all individual petitions or complaints that fall within

pleading Bundle B1, whether pre-existing or filed hereafter, are stayed until further order of the Court. *Id*. at 4.

The PSC did not name Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, GCCF, and William G. Green, Jr. as Defendants in their B1 Master Complaint. Most importantly, *Salvesen v. Feinberg, et al*. was transferred to MDL 2179 by the JPML before the FLMD determined the threshold jurisdictional issue: whether removal from state court was proper. On November 10, 2011, Plaintiff refiled his Motion to Remand with the MDL 2179 Court (Rec. Doc. 4575).

## **LAW AND ARGUMENT**

In *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2011 U.S. Dist. LEXIS 85696 (E.D. La. July 26, 2011) (Wilkinson, Jr., J.), this court eloquently summarized the prerequisites for class certification under Federal Rule of Civil Procedure 23 as follows.

## I.    CLASS ACTIONS UNDER FED. R. CIV. P. 23

Federal Rule of Civil Procedure 23 provides that one or more members of a class may sue as representative parties on behalf of all members only if the proposed class satisfies the threshold requirements of Rule 23(a) <u>and</u> one of three possible types of classes under Rule 23(b). Plaintiffs bear the evidentiary burden to show that their proposed class meets all the requirements of both Rule 23(a) and whichever Rule 23(b) subpart supplies the framework for the type of class sought to be certified. *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554-55 (5th Cir. 2011).

The United States Supreme Court recently summarized plaintiffs' burden as follows. Rule 23 does not set forth a mere pleading standard. A party seeking class certification must

affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. We recognized in [*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)] that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," . . . and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," . . . ; ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 160, 161) (internal quotations omitted) (emphasis added).

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements - numerosity, commonality, typicality, and adequate representation - effectively limit the class claims to those fairly encompassed by the named plaintiff's claims. *Dukes*, 131 S. Ct. at 2550 (quotations and citations omitted).

## A.       The Prerequisites of Rule 23(a)

Rule 23(a) contains four prerequisites that must be satisfied in all cases:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

## B.     The Three Types of Classes Under Rule 23(b)

If plaintiffs can meet the threshold requirements of Rule 23(a), they must also satisfy one of the three subparts of Rule 23(b). *Cole v. Gen. Motors Corp*., 484 F.3d at 723 (5th Cir. 2007).

### 1.        The Prerequisites of Rule 23(b)(1)

A class may be certified under Rule 23(b)(1) if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

 Fed. R. Civ. P. 23(b)(1).

### 2.        The Prerequisites of Rule 23(b)(2)

A Rule 23(b)(2) class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### 3.        The Prerequisites of Rule 23(b)(3)

A class may be certified under Rule 23(b)(3) if:

-12-

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## II.    ANALYSIS

### A.    Plaintiffs in MDL No. 2179 Fail to Carry Their Burden to Prove the Existence of All Four Prerequisites of Rule 23(a)

#### 1.    Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.' 'The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite.'" *Myers v. BP Am., Inc*.,, No. 08-0168, 2009 WL 2341983, at *10 n.7 (W.D. La. July 29, 2009).

In order to efficiently manage this complex MDL, the Court consolidated and organized the various types of claims into several "pleading bundles." The "B1" pleading bundle includes all claims for private or "non-governmental economic loss and property damages." There are in excess of 100,000 individual claims encompassed just within the B1 bundle. The Fifth Circuit has held that 100 to 150 members generally would be "within the range that satisfies the

numerosity requirement." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d at 625 (5th Cir. 1999)). Therefore, the numerosity requirement should easily be met.

  **2.  Commonality**

  To demonstrate commonality, plaintiffs must show that there are questions of law or fact common to the class.

  The test for commonality is not demanding. . . All that is required for each class is that there is one common question of law or fact: The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. Therefore, the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) (quotations omitted). "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do . . . ." *Dukes*, 131 S. Ct. at 2556 (quotation and citation omitted).

  What matters to class certification . . is not the raising of common "questions" - even in droves - but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. *Id.* at 2551 (quotations, citations and footnote omitted).

  The determination of whether damages directly resulted from the oil spill or the "Delay, Deny, Defend" strategy of Feinberg, et al. is a question common to all class members. Therefore, MDL 2179 plaintiffs should satisfy the undemanding commonality requirement.

-14-

### 3.      Typicality

To meet the typicality requirement, the claims of the representative plaintiffs must be typical of the claims of the class.

Like commonality, the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *James*, 254 F.3d at 571 (quotations and citations omitted). MDL 2179 representative plaintiffs should sufficiently show that their claims are typical of the class claims.

### 4.      Adequacy of Representation

Finally, Rule 23(a) requires that the representative plaintiffs fairly and adequately protect the interests of the class.

This requirement is essential to due process, because a final judgment in a class action is binding on all class members. To meet the adequacy requirement, the class representatives, their counsel, and the relationship between the two [must be] adequate to protect the interests of absent class members. The Court must be satisfied that class representatives, and not their counsel, are directing the litigation. Thus they must show themselves sufficiently informed about the litigation to manage the litigation effort. *In re OCA, Inc. Secs. & Derivative Litig*., No. 05-2165, 2008 WL 4681369, at *8 (E.D. La. Oct. 17, 2008) (Vance, J.) (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Unger v. Amedisys Inc*., 401 F.3d 316, 321 (5th Cir. 2005); *Stirman*

*v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

The long-established standard for the adequacy determination . . . requires an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.] In addition to determining the proposed class counsel's zeal and competence and the proposed class representative's willingness and ability, the district court's adequacy inquiry also serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130-31 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001).

The MDL 2179 representative plaintiffs, given their diverse sophistication and experience, will most likely have difficulty presenting evidence to demonstrate that they are directing the litigation, are sufficiently informed about it to manage the litigation effort or have the willingness and ability to take an active role and protect the interests of absentee class members. In the absence of such evidence, MDL 2179 plaintiffs will most likely not carry their burden to demonstrate adequacy of representation.

MDL 2179 plaintiffs' failure to prove all four prerequisites of Rule 23(a) will defeat their motion for class certification. Even if they could establish adequacy of representation, their proposed class would fail to satisfy any of the Rule 23(b) categories, as discussed below.

**B.      Plaintiffs Fail to Carry Their Burden Under Rule 23(b)**

**1.      Rule 23(b)(1)**

Certification under Rule 23(b)(1)(A) is inappropriate here because MDL 2179 Plaintiffs predominately seek monetary relief. The Fifth Circuit has explained that certification under this

provision is "seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of monetary damages to different plaintiffs." *Casa Orlando Apts. v. Federal Nat. Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010) (citations omitted). District courts within the Fifth Circuit have also found certification under Rule 23(b)(1)(A) inappropriate under such circumstances. *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007) (finding certification of class under Rule 23(b)(1)(A) inappropriate where plaintiffs predominately sought monetary relief in form of damages for breach of contract and granting motion to strike class allegations); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 n.16 (5th Cir. 1998), *rehearing denied*, 1998 U.S. App. LEXIS 24651 (5th Cir. 1998) ("Given the individual-specific nature of the plaintiffs' claims for compensatory and punitive damages, we perceive no risk of inconsistent adjudications or incompatible standards of conduct in having *those claims* adjudicated separately.").

Certification of the proposed class under Rule 23(b)(1)(B) is similarly inappropriate. This provision "necessarily contemplates the allocation of a limited resource . . . for only where the class members' interests are to some degree mutually exclusive will the individuals' litigation 'substantially impair' the others' rights." *Caruso*, 2007 U.S. Dist. LEXIS 56760 at *15 (citation omitted). Here, Plaintiffs seek monetary damages, so "the paradigm is of a 'limited fund' to be distributed for the class members' benefit." *Id.* (citation omitted). There is no limited resource that is affected by an MDL 2179 Plaintiffs' lawsuit, and courts within the Fifth Circuit have found certification under Rule 23(b)(1)(B) is inappropriate under these circumstances. *Id.* at *15 ("Because plaintiffs have not identified, and the Court does not find, any such limited resource that is affected by plaintiffs' lawsuit, certification under Rule

-17-

23(b)(1)(B) is improper."). Thus, an MDL 2179 class action should not be certified under either Rule 23(b)(1)(A) or 23(b)(1)(B).

2.      **Rule 23(b)(2)**

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Dukes*, 564 U.S. at *20; *see also* Fed. R. Civ. P. 23(b)(2).

In *Caruso*, Chief Judge Vance of this court reviewed the Fifth Circuit's precedents and explained that neither Rule 23(b)(1) nor 23(b)(2) certification is appropriate when the complaint *primarily* seeks money damages.(Emphasis added). In *Allison*, the Fifth Circuit determined that monetary relief may be obtained in a Rule 23(b)(2) class action as long as the *predominant* relief sought is injunctive or declaratory. The court stated that "monetary relief 'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each class member's case." *Id*. at 414. Monetary relief predominates "unless it is incidental to requested injunctive or declaratory relief." *Id.* at 415. To be "incidental," damages must: "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive" relief; be damages "to which class members automatically would be entitled once liability to the class . . . as a whole is established;" and be at least "capable of computation by means of objective standards and . . . should not require additional hearings to resolve the disparate merits of each individual's case." *Id.* Rule 23 (b)(2) does not authorize class certification when each class

-18-

member would be entitled to an individualized award of monetary damages. *Dukes*, 131 S. Ct. at 2557 (quotation and citation omitted). Moreover, the Supreme Court recently questioned whether "incidental" monetary relief can even be awarded to a 23(b)(2) class. *Dukes*, 564 U.S. at *27.

Just as in *Caruso*, MDL 2179 Plaintiffs seek primarily monetary damages rather than declaratory or injunctive relief. Therefore, an MDL 2179 Plaintiffs' motion to certify a Rule 23(b)(2) class should be denied.

### 3.        Rule 23(b)(3)

Before certifying a class under Rule 23(b)(3), the court must find (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To predominate, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626. The predominance "requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Unger*, 401 F.3d at 320 (quoting *Amchem Prods.*, 521 U.S. at 623-24).

Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider how a trial on the merits would be conducted if a class were certified. This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials. *Madison*, 637 F.3d at 555 (quotations and citations omitted). The district

court abuses its discretion if it certifies a Rule 23(b)(3) class without having "meaningfully consider[ed] how Plaintiffs' claims would be tried." Id. at 556.

In the B1 Master Complaint (Rec. Doc. 879 and Rec. Doc. 1128), the PSC identifies a number of categories of claimants seeking various types of economic damages, including Commercial Fishermen Plaintiffs, Processing and Distributing Plaintiffs, Recreational Business Plaintiffs, Commercial Business Plaintiffs, Recreation Plaintiffs, Plant and Dock Worker Plaintiffs, Vessel of Opportunity ("VoO") Plaintiffs, Real Property Plaintiffs, Real Property/Tourism Plaintiffs, Banking/Retail Business Plaintiffs, Subsistence Plaintiffs, Moratorium Plaintiffs, and Dealer Claimants.

An MDL 2179 class action would involve a multitude of significant individualized damages issues which would have to be calculated for each plaintiff on a per case basis. Accordingly, MDL 2179 plaintiffs would fail to carry their burden to prove that common issues of law or fact predominate over individual issues. Their mere assertion that each class member brings the same cause of action under the same oil spill incident or type of claim submitted to the Gulf Coast Claims Facility would be insufficient to establish predominance. *Caruso*, 2007 WL 2265100, at *5 ("Their mere assertion that each class member brings the same cause of action under the same type of contract is insufficient to establish predominance."); *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2011 U.S. Dist. LEXIS 85696 (E.D. La. July 26, 2011) (Wilkinson, Jr., J.) (denying Rule 23(b)(3) class certification where plaintiffs alleged defendant breached employment contract with adjusters by paying them less than the contracted rate; plaintiffs failed to show that common issues of law predominated over individual issues, despite the fact that action is based on one underlying contract, because the action involved significant

-20-

individualized damages and varying evidentiary issues regarding each contract).

As to the second part of Rule 23(b)(3), "[t]he superiority requirement is simply that 'class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Doiron v. Conseco Health Ins. Co.,* 279 F. App'x at 317 (5th Cir. 2008) (quoting Fed R. Civ. P. 23(b)(3)). "Determining whether the superiority requirement is met requires a fact-specific analysis and will vary depending on the circumstances of any given case." *Madison*, 637 F.3d at 555.

MDL 2179 plaintiffs would not meet their burden of demonstrating that a class action would be "superior" under Fed. R. Civ. P. 23(b)(3). The superiority analysis "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Allison*, 151 F.3d at 419. Given the multitude of individualized questions and answers at issue, a class action is simply not the superior method of adjudicating the instant dispute.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that all Plaintiffs' Motions for Class Certification Pursuant to Federal Rule of Civil Procedure 23 in MDL No. 2179, whether pending or filed hereafter, be denied.

DATED: December 4, 2011                    Respectfully submitted,

                                                 **s/ Brian J. Donovan**
                                                 Brian J. Donovan
                                                 Attorney for Plaintiff
                                                 Florida Bar No. 143900
                                                 3102 Seaway Court, Suite 304
                                                 Tampa, FL 33629
                                                 Tel: (352)328-7469
                                                 BrianJDonovan@verizon.net

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing Plaintiff's Motion in Opposition to Class

Certification of Any Action in MDL 2179 and Memorandum of Law has been served on All

Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with

Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of

the United States District Court for the Eastern District of Louisiana by using the CM/ECF

System, which will send a notice of electronic filing in accordance with the procedures

established in MDL 2179, on this <u>4th</u> day of December, 2011.

**s/ Brian J. Donovan_____**
Brian J. Donovan
Attorney for Plaintiff
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net
