# Exhibit 30



36693847

Mar 25 2011
4:17PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  **Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon" in the** | * | |
| **Gulf of Mexico, on April 20, 2010** | * | **SECTION:  J** |
| | * | |
| **This Document Relates To:  All Cases** | * | **JUDGE BARBIER** |
| | * | **MAGISTRATE JUDGE SHUSHAN** |
| * * * * * * * * * * * * * * * | * | |

## THE BP PARTIES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO HALLIBURTON

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") propound the following Requests for Production of Documents to Defendant Halliburton Energy Services, Inc. ("Halliburton") to be responded to within 30 days of service.  The BP Parties request that all documents and electronically stored information responsive to the following First Request for Production of Documents be produced at the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654.

## DEFINITIONS

1.      "You," "your," and "yours" shall mean Halliburton, including without limitation all of Halliburton's present or former employees, agents or representatives, or anyone acting or purporting to act for or on Halliburton's behalf for any purpose whatsoever, and includes any and all affiliates, subsidiaries, contractors and divisions, such as Sperry Drilling, and includes the present employees, agents and representatives of those affiliates, subsidiaries, contractors and divisions.

2.      "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, or any other organization.

3.      "Communication" means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail (including both business and personal email), text messages, computer linkups, written memoranda, and face-to-face conversations; "communication" also includes all documents and ESI containing, summarizing, or memorializing any communication.

4.      "Document" or "documents" includes "communications" as defined above, and has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including electronically stored information ("ESI"), and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and

statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

5.      "Identify," when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

6.      "Including" or "includes" means "including but not limited to" or "including without limitation."

7.      "Relating to" or "related to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

8.      The words "and" and "or" should be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

9.      "Any" should be construed, when possible, to mean "any and all."

10.     "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

11.     The singular includes the plural, and the plural includes the singular.

12.     "MC252 well" and "Macondo well" refer to the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the

outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New

Orleans, Louisiana.

13.     "Halliburton" means Halliburton Energy Services, Inc. and all of its affiliates,

subsidiaries, contractors and divisions, such as Sperry Drilling, and includes the present

employees, agents and representatives of those affiliates, subsidiaries, contractors and divisions.

14.     "BP" means BP p.l.c and all of its affiliates and subsidiaries.

15.     "Kick," whether or not capitalized, means the intrusion of hydrocarbons into a

wellbore.

16.     "Blowout," whether or not capitalized, means an uncontrolled release of

hydrocarbons from a well.

17.     "OptiCem" means Halliburton's proprietary software used to model cement slurry

operations and as that term was used by Halliburton in communications with BP.

## INSTRUCTIONS

1.     All documents are to be produced in accord with Pre-Trial Order No. 16.

2.     Produce all documents in the order in which they appear in your files. Documents

that, in their original condition, are stapled, clipped, or otherwise fastened together shall be

produced in this same condition.

3.     Produce all documents within your possession, custody, or control including all

documents in the possession, custody or control of your affiliates, partners, employees, agents,

attorneys, accountants, advisors, consultants, or other persons directly or indirectly connected

with you or subject to your control.

4.      If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction or removal.

5.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, then you must comply with the requirements of Pre-Trial Order No. 14 and Federal Rule of Civil Procedure 26(b)(5).

6.      Each request is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular request.

7.      If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language. Regardless of any vagueness or ambiguity you claim, you are to answer the request for production and produce the requested documents to the best of your ability.

8.      If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

9.      Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

## REQUESTS FOR PRODUCTION

1.      Please produce all documents discussing, reflecting or relating to the Macondo well and any services performed by Halliburton at the Macondo well.

2.      Please produce all documents discussing, reflecting or relating to communications, both internal and with any party, concerning the Macondo well and any services provided by Halliburton at the Macondo well.

3.      Please produce all documents discussing, reflecting or relating to standards, practices, protocols, guidelines and recommendations for well drilling operations, including cement design, cement testing, cementing operations, coring, drilling, fluid services, formation evaluation, mud logging, real time services, reservoir testing/analysis, subsea, software relating to drilling, well completions and wireline.

4.      Please produce all training materials discussing, reflecting or relating to cement design, cement testing, cementing operations, mud logging, real time services, and software relating to drilling, including documents relating to the training and certification of any Halliburton employee that performed or supervised cement testing or modeling for the Macondo well.

5.      Please produce all documents discussing, reflecting or relating to the education, training and certifications for any Halliburton employee that performed services at or for the Macondo well, including cement design, cement testing, cement operations and mud logging.

6.      Please produce all documents discussing, reflecting or relating to performance reviews or assessments, including evaluations and disciplinary actions, of the Halliburton employees that planned, performed or supervised Halliburton services provided at the Macondo well, including cementing and mud logging services.

7.      Please produce all documents discussing, reflecting or relating to any audits that Halliburton conducted on its services, facilities and personnel that were used to service the Macondo well, including audits on its cementing and mud logging services, facilities, cementing or mud logging equipment, cementing or mud logging procedures, and personnel competency.

8.      Please produce all documents discussing, reflecting or relating to any communication, whether within Halliburton or between Halliburton and any other party, that the temporary abandonment plans, including the cementing portion of the plans, were unsafe.

9.      Please produce all documents discussing, reflecting or relating to the evaluations of risks of channeling and/or potential gas migration at the Macondo well under the various engineering designs and/or models considered.

10.     Please produce all documents discussing, reflecting or relating to meeting(s) with rig members or other employees or persons regarding the drilling, cementing, completion, or temporary abandonment of the Macondo Well, including all presentations or materials distributed at such meeting(s).

11.     Please produce all documentation of bonuses or incentives provided to any Halliburton employees, or other persons for the completion of the Macondo well.

12.     Please produce all documents discussing, reflecting or relating to all contracts, agreements, job orders, work orders, and/or engagement letters between Halliburton and BP relating to the Macondo well.

13.     Please produce all documents discussing, reflecting or relating to Halliburton cement plans, cement design reports, OptiCem or other modeling, post-job reports, and any other plans, reports or modeling prepared for the Macondo well, including drafts.

14.     Please produce an executable copy of, a source code copy of and manuals for each version of the OptiCem program used by Jesse Gagliano to run models for the Macondo well.

15.     Please produce all data files for the Macondo well, including ".adi" data files, real time OptiCem data stored or processed on the Macondo well on April 19 and 20, 2010, and all data for the Macondo well stored on Halliburton employee computers, including Nathaniel Chaisson's laptop computer used on the *Deepwater Horizon* on April 19 and 20, 2010.

16.     Please produce all documents discussing, reflecting or relating to the design and composition of the cement slurry for the Macondo well.

17.     Please produce all documents discussing, reflecting or relating to audits or assessments of Halliburton's cementing and mud logging facilities and services, including audits or assessments on competency, training, and performance.

18.     Please produce all documents discussing, reflecting or relating to the properties of the components of the cement slurry used at the Macondo well, including the effect of each additive on foam stability.

19.     Please produce all documents discussing, reflecting or relating to the advantages and disadvantages of using foamed cement in a deepwater well.

20.     Please produce all documents discussing, reflecting or relating to cement testing, modeling or laboratory test results for the cement slurry for the Macondo well, including pre-incident and post-incident testing, and including all material in the Viking database relating to the Macondo well.

21.     Please produce all documents discussing, reflecting or relating to any investigations or reviews that Halliburton conducted on its cementing operations and facilities,

including any investigations or reviews that identified issues with foam cement stability or foam cement stability testing methods.

22.     Please produce all documents discussing, reflecting or relating to electronic notifications of lab testing status for any lab tests conducted by Halliburton for the Macondo well, including electronic notifications of lab testing status of any foam stability tests and documents showing such notifications were received by Halliburton employees.

23.     Please produce all documents discussing, reflecting or relating to Halliburton communications regarding the stability of the foamed and unfoamed slurry for the Macondo well, including communications with BP, Transocean and any others concerning the cement slurry.

24.     Please produce all documents discussing, reflecting or relating to the "lab technician error in weighing up the sample of the cement mix" identified in Halliburton's January 11, 2010 press release.

25.     Please produce all documents discussing, reflecting, or relating to conditioning the cement slurry before running foamed cement slurry tests, including all documents supporting Halliburton's contention that the cement slurry should be conditioned before running foamed slurry tests.

26.     Please produce a full copy of all reference materials available at the cement laboratory at Broussard, including "Global Laboratory Best Practices" and "Cementing Technology Manual."

27.     Please produce all documents discussing, reflecting or relating to Halliburton's planning and execution of the cement job for the production interval of the Macondo well, including the notes of any person involved in the cementing of the Macondo well.

28.     Please produce all documents discussing, reflecting or relating to Halliburton's cement job plan, including the basis for Halliburton's plan and the amount of cement slurry pumped for the production interval of the Macondo well.

29.     Please produce all documents discussing, reflecting or relating to the displacement efficiency of the spacer fluid used in the Macondo well, including simulations.

30.     Please produce all documents discussing, reflecting or relating to the timing of when the darts for the wiper plugs were deployed during the cementing procedure for the Macondo well, including the plumbing of the cement unit and the dimensions and volume of the plumbing line between the cement unit and the dart unit.

31.     Please produce all documents discussing, reflecting or relating to any communication, within Halliburton or to any party, that the cement job on April 19 and 20, 2010 was or was not successful.

32.     Please produce all documents discussing, reflecting or relating to the post-job report, including any edits and drafts, documents reflecting how the post-job report was prepared, data or results reported in the post-job report, procedures on preparing post-job reports, procedures for approving post-job reports, and procedures for transmitting post-job reports.

33.     Please produce all documents discussing, reflecting or relating to any concerns or analysis about the Halliburton cementing services provided at the Macondo well.

34.     Please produce all documents discussing, reflecting or relating to the operational decisions at the Macondo well, including the decisions on casing design, centralizers, float collar, circulation, pump rate, cement volume, rat hole, positive pressure test and cement bond log.

35.     Please produce all documents discussing, reflecting or relating to any communication by Halliburton to BP regarding the operational decisions at the Macondo well, including the decisions on casing design, centralizers, float collar, circulation, pump rate, cement volume, rat hole, positive pressure test and cement bond log.

36.     Please produce all documents discussing, reflecting or relating to the Halliburton mud logging services provided at the Macondo well.

37.     Please produce all documents discussing, reflecting or relating to mud logging engineering practices, including transfer of well data to BP, ongoing engineering research, accuracy and reliability of current monitoring systems and adherence to standard engineering practices for well site services.

38.     Please produce all documents discussing, reflecting or relating to any equipment that the mud loggers used to assist them in monitoring the Macondo well, including gauges, meters and alarms, and whether such systems were available or unavailable on the *Deepwater Horizon*, and if available whether they were properly functioning or disabled.

39.     Please produce all documents discussing, reflecting or relating to the function, maintenance or calibration of Halliburton's mud logging equipment available on the *Deepwater Horizon*, including the maintenance and calibration records, written maintenance procedures and schedules, and the maintenance schedules set by the equipment manufacture.

40.     Please produce all documents discussing, reflecting or relating to audits or assessments of Halliburton's mud logging services, including audits or assessments on competency, training, and performance.

41.     Please produce all documents discussing, reflecting or relating to an accounting for mud losses during operations at the Macondo well on April 19 and 20, 2010.

42.     Please produce all documents discussing, reflecting or relating to Halliburton's ability to monitor the in and out mud flows at the Macondo well on April 19 and 20, 2010.

43.     Please produce any notes, logs, or diaries created by the mud loggers on the *Deepwater Horizon*.

44.     Please produce all documents discussing, reflecting or relating to any and all alarms that were available for use, or were used, for mud logging services on the Macondo well, including any Halliburton and/or Sperry Sun standards, practices or guidelines concerning the use of alarms or whether alarms should be disabled or disregarded, any documents or data that show whether and how the alarms were used by the mud loggers on April 20, 2010, and any studies or analyses regarding the use, condition or efficacy of any of the mud logging alarms on the Macondo well on April 20, 2010.

45.     Please produce all documents discussing, reflecting or relating to the interpretation of the flow-in and flow-out data taken during negative pressure test procedures.

46.     For each foam cement job done by Halliburton on any deepwater well in the Gulf of Mexico during the preceding ten years where Halliburton provided mud logging services and a kick or blowout occurred, or where Halliburton mud logging services were criticized, please produce all documents discussing, reflecting or relating to incident reports, investigation materials, lessons learned, evaluations, and training materials.

47.     Please produce all documents discussing, reflecting or relating to the December 23, 2009 incident at the Bardolino field, including incident reports, investigation materials, lessons learned, evaluations, and training materials.

48.     Please produce all documents that discuss, refer or relate to why Halliburton's mud loggers did not detect that the Macondo well was flowing on April 20, 2010 prior to the well blowing out.

49.     Please produce all documents that support Halliburton's report to BP that "full returns" were observed throughout the cement job.

50.     Please produce all documents discussing, reflecting or relating to any pre- or post-incident concerns or analysis about Halliburton mud logging services provided at the Macondo well.

51.     Please produce all data (including, but not limited to, electronic, computer or real time data) for the Macondo well, including the following data:

     a.  All well data, including seismic, geological or geophysical data (including resistivity data), data relating to downhole conditions, or reservoir conditions;

     b.  All operational data, including any data relating to drilling or operating parameters, kicks, well flow, or well control;

     c.  All cementing data, including any flow, pressure, temperature or density data during the cementing operations;

     d.  All pressure testing data, including data generated during any positive or negative pressure tests;

     e.  All Macondo well data in the possession, custody or control of Halliburton;

     f.  All Macondo well data in the possession, custody or control of Sperry Sun; and

g.   All data that was uploaded to Insite.

52.     Please produce all documents discussing, reflecting or relating to data for the Macondo well (including real-time rig data), including communications within Halliburton and between Halliburton and any other persons.

53.     Please produce all Halliburton standards, practices, protocols, guidelines and recommendations relating to the proper or improper monitoring and interpretation of well data, including real-time rig data.

54.     Please produce all documents discussing, reflecting or relating to Halliburton's investigation of the *Deepwater Horizon* incident.

55.     Please produce all documents discussing, reflecting or relating to meetings with any entity concerning the Macondo well, including Congress, the MBI, the Presidential Commission, and the National Academy of Engineering, including presentation materials, draft presentations, speaking points, preparation materials, and supporting documents.

56.     Please produce all documentation (including notes, logs, and diaries) created by Halliburton employees discussing, reflecting or relating to any aspect of Halliburton's work at the Macondo well, including cement testing, cement slurry design, or cement job performance.

57.     Please produce all documents discussing, reflecting or relating to documentation created by Halliburton employees discussing, reflecting or relating to the Macondo well or any aspect of Halliburton's work at the Macondo well.

58.     Please produce all documents discussing, reflecting or relating to the storage or preservation of any cementing materials from the Macondo well, including dry cement blend, dry or wet additives, rig water, spacer, and base oil.

59.     Please produce all documents discussing, reflecting or relating to flow path of the hydrocarbons up the Macondo well, including documents supporting Halliburton's contention that any hydrocarbon or gas flow was up the annulus around the casing (as opposed to through the casing).

60.     Please produce all documents discussing, reflecting or relating to the hydrocarbon flow data on April 19 and 20, 2010 from the Macondo well, including any analysis of the flow data, reports, and presentation materials.

61.     Please produce all documents discussing, reflecting or relating to any post-April 20, 2010 laboratory testing on the cement slurry for the Macondo well, including the purpose of the testing at the Duncan facility, results of the testing, reports and communications.

62.     Please produce all documents discussing, reflecting or relating to the post-incident cement tests performed by Tim Quirk and any communications regarding the tests or test results, including the tests performed at the direction of Ronnie Faul.

63.     Please produce all documents discussing, reflecting or relating to each instance in the last five years when Halliburton executed a cement job in the Gulf of Mexico despite conditions that were not optimal, including when OptiCem models showed that there was a possibility of gas flow, channeling or failure, or when the operator did not adopt all of Halliburton's suggestions, including suggestions on the number of centralizers and circulation.

64.     Please produce all documents discussing, reflecting or relating to each Halliburton cement job in the Gulf of Mexico in the preceding five years where Halliburton concluded, or any person made a claim, that the cement failed to achieve zonal isolation for any reason, including channeling, nitrogen breakout, contamination, or poor design, including documents concerning or discussing the identity of the well, the composition of the cement used, the pre-

15

and post-job testing, the reports prepared for the job, any claim or conclusion that the cement failed, the known or suspected reason why the cement failed, and how the issue was resolved.

65.     Please produce all documents discussing, reflecting or relating to any issues or concerns expressed about Halliburton's use of foamed cement slurry in other deepwater wells within the last ten years.

66.     For each prior foam cement job executed by Halliburton on any deepwater well in the Gulf of Mexico during the preceding ten years where a defoamer was included in the slurry composition, please produce all cement plans, simulations, laboratory test results and post-job reports.

67.     For each foam cement job executed by Halliburton on any deepwater well in the Gulf of Mexico during the preceding ten years where the calculated GFP value was greater than 8, please produce all cement plans, simulations, laboratory tests reports and post-job reports.

68.     For each foam cement job executed by Halliburton in the Gulf of Mexico where the cement job actually failed or was alleged to have failed, including any job where a remedial cement job was needed, please produce all cement plans, simulations, laboratory tests reports and post-job reports.

69.     For each foam cement job executed by Halliburton in the Gulf of Mexico where a kick or blowout occurred following the cement job, please produce all cement plans, simulations, laboratory tests reports and post-job reports.

70.     Please produce all documents and exhibits that Halliburton intends to rely upon in any deposition, briefing, hearing or at trial.

71.     Please produce all published articles and other documents authored, in part or in total, by any fact or expert witness that Halliburton intends to rely upon at any hearing or trial.

16

72.     Please produce all documents discussing, reflecting or relating to the recorded testimony, including interviews, of any fact or expert witness that Halliburton intends to rely upon at any hearing or trial.

73.     Please produce all documents discussing, reflecting or relating to the prior sworn testimony of each Halliburton employee that performed any work relating to the Macondo well.

74.     Please produce all documents discussing, reflecting or relating to Fred Sabins's employment with Halliburton and any work that Mr. Sabins performed for or with Halliburton since he left Halliburton.

Dated: March 25, 2011                    Respectfully submitted,

/s/ J. Andrew Langan, P.C.
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:     (202) 662-5985

*Attorneys for BP Exploration & Production
Inc. and BP America Production Company*

17

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 25th day of March, 2011.

/s/ J. Andrew Langan, P.C.