UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : : | MDL NO. 2179  SECTION: J  JUDGE BARBIER |
| **THIS DOCUMENT RELATES TO ALL CASES** | : : : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**MEMORANDUM IN SUPPORT OF**
**MOTION TO EXCLUDE NON-GOVERNMENTAL REPORTS**

Pursuant to the Court's Order Amending Schedule for BP Motions *in Limine* and Responses to PSC Issues, Dkt. No. 4572, Cameron respectfully files this memorandum in support of its motion for an order excluding, except as set forth below, the introduction at trial of non-governmental reports.

**I.  Non-Governmental Investigation Reports are Inadmissible Hearsay**

This Motion seeks to exclude the introduction at trial of BP's internal *Deepwater Horizon* Accident Investigation Report, dated September 8, 2010 (the "Bly Report")[1], Transocean's Macondo Well Incident Investigation Report, dated June 2011 (the "TO Report")[2], the *Deepwater Horizon* Study Group's Final Report on the Investigation of the Macondo Well Blowout, dated March 1, 2011 (the "Berkeley Report")[3], and any other non-governmental reports

---

[1]  *Available at* http://www.bp.com/liveassets/bp_internet/globalbp/globalbp_uk_english/gom_response/STAGING/local_assets/downloads_pdfs/Deepwater_Horizon_Accident_Investigation_Report.pdf.

[2]  *Available at* http://www.deepwater.com/fw/main/Public-Report-1076.html.

[3]  *Available at* http://ccrm.berkeley.edu/pdfs_papers/bea_pdfs/DHSGFinalReport-March2011-tag.pdf.

1

regarding the Macondo disaster (collectively "non-governmental reports"), except to the extent admissible as admissions of party opponents or for impeachment purposes, as set out below.

The non-governmental reports prepared by BP, TO, and others are hearsay and should be excluded from evidence unless they meet a hearsay exception. It may be argued that the reports are business records under Rule 803(6).

Rule 803(6) excepts from hearsay

A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The non-governmental reports are not business records because they were not made as a regular practice of a regularly conducted activity of the entity that created them. The non-governmental reports were created in response to the largest environmental disaster in U.S. history, during the course of ongoing criminal and regulatory investigations, and after hundreds, if not thousands of lawsuits had been filed across the Gulf Coast.

It is well established that documents prepared for the purposes of litigation do not qualify for the business records exception. *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943) (holding railroad engineer statement inadmissible because, based on its use for "litigating, not in railroading," it was not "in the regular course of business"); *see also Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2538 (2009). In *Palmer*, the engineer of the train involved in an

accident gave a statement to an assistant superintendent who was interviewing him pursuant to railroad policy that required post-accident investigations. The Court unanimously held that this statement and the report containing it did not fall within the business record exception to the hearsay rule:

> [W]e do not think [the statement] was made 'in the regular course' of business within the meaning of the Act [making admissible any writing or record made in the regular course of business and where it was part of the regular course of business to make that writing or record]. The business of the petitioners is the railroad business . . . . An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine . . . . The fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act.

318 U.S. at 111–13. In *Melendez-Diaz*, the Supreme Court reviewed its decision in *Palmer* and reaffirmed the Court's refusal to include accident reports under the business records exception to the hearsay rule, because they lack the regularity that insures reliability that permits the evidence to be received without cross-examination. 129 S.Ct. 2527.

Even where a non-governmental report does not explicitly indicate that it was prepared in preparation for litigation, federal courts will not admit such a report if "(1) it was prepared with the knowledge that the event [discussed in the report] could lead to litigation and (2) it was not routinely created." *Ebenhoech v. Koppers Indus.*, 239 F. Supp. 2d 455, 463-464 (D.N.J. 2002) (holding that incident report created by employer did not qualify for business records exception and finding that "a report created after an 'unusual incident' that . . . led to the 'uncertain consequence' of 'injury' is not a report made in the regular course of business").

Courts have interpreted *Palmer* to hold that post-accident investigation reports are generally presumed to fall outside of Rule 803(6) since "the reports by very nature do not involve the kind of systematic activities whose very repetitiveness insures that degree of reliability and accuracy that allow the report to be received in evidence without cross-examination." *Thakore v. Universal Mach. Co. of Pottstown*, 670 F. Supp. 2d 705, 722 (N.D. Ill. 2009) (refusing to admit manufacturing accident internal investigation report and noting that "post-accident investigations are, in short, the antithesis of the kinds of 'regularly conducted activity' that Rule 803(6) envisions."); *see also United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) ("Documents produced in a full-fledged, one-time internal investigation into alleged corporate malfeasance do not fall under [803(6)]. And for good reason: they lack the hallmarks of reliability that justify the admission of run-of-the-mill business records.").

Although both the Bly Report and TO Report contain language suggesting a purpose other than preparation for litigation, neither proclamation warrants the reports' admission. BP's report indicates that "BP formed an investigation team that was charged with gathering the facts surrounding the accident, analyzing available information to identify possible causes and making recommendations to enable prevention of similar accidents in the future." Bly Report, at 9. It explicitly claims that "it has not been prepared in response to any third party investigation, inquiry or litigation." *Id.* at 2. Similarly, the TO Report states that "Transocean commissioned an internal investigation team comprised of experts from relevant technical fields and specialists in accident investigation to gather, review, and analyze the facts and information surrounding the incident to determine its causes." TO Report, at 9. The TO Report also claims that it "does not represent the legal position of Transocean, nor does it attempt to assign legal responsibility or fault." *Id.*

Despite these assertions, the unusual circumstances triggering the investigations demonstrate that the reports were not produced in the companies' "regular course of business." When the BP Report was released in September 2010, hundreds of lawsuits were pending, and BP had already set up its $20 billion claim fund. By the time the TO Report was released, more than a year had passed since the blowout and the parties were less than a year away from the February 2012 trial date set by this Court. The size and scale of this unprecedented disaster, the volume of lawsuits, and the potential liability at stake all evidence the fact that neither the BP Report nor the TO Report were created in the "regular course of business."

Indeed, the scope of the BP Report varied from BP's internal protocols for conducting incident investigations, in part because the "U.S. is a litigious place [and] any unprivileged reports on culture would expose BP to more litigation." Depo. W. Castell at 152:4–15; Depo. Ex. 6250. BP's incident investigation protocols require examination of three types of causes: immediate, system, and systemic. Depo. W. Castell at 152:16—154:10. The Bly Report omitted any investigation of systemic causes, despite the fact that the Macondo disaster was a "game changing" event for the industry. *Id.*; BP Report at 12; Depo. Ex. 6250. Accordingly, the Bly Report was not created as a matter of BP's routine business practices.

## II. The Non-Governmental Reports are, however, Admissible Against the Authoring Party

Notwithstanding the above, the BP Report and TO Report are admissible against those parties as admissions of party-opponents pursuant to Rule 801(d)(2), which provides that a statement is not hearsay if it

> is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

5

BP and TO both specifically authorized their respective investigation teams to produce the reports. *See* BP Report, at 9; TO Report, at 9. Accordingly, even if the members of the investigation team were not official employees of BP and TO under 801(d)(2)(D), *cf. Mister v. Ne. Ill. Commuter R.R. Corp.*, 571 F.3d 696, 698-699 (7th Cir. 2009) (admitting accident investigation report prepared by employee against employer pursuant to 801(d)(2)(D)), the authorized reports qualify as admissions of BP and TO under 801(d)(2)(C) and are admissible for such purposes.

The reports also are admissible to impeach witnesses who participated in them or other witnesses who testify on behalf of those entities. Finally, the nongovernmental reports, or portions thereof, may be admissible against other parties depending on the circumstances in the record at the time the party seeking to introduce a report attempts to do so. *See, e.g.*, Fed. R. Evid. 807.

### III. Conclusion

For the reasons set out above, Cameron International Corporation respectfully requests the Court enter an order excluding the blanket introduction into evidence any non-governmental reports, except to the extent such reports are admissible as an admission of a party under Rule 801(d)(2), as impeachment testimony, or as the law and facts might otherwise permit.

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A.<br>    dbeck@brsfirm.com<br>Joe W. Redden, Jr.<br>    jredden@brsfirm.com<br>David W. Jones<br>    djones@brsfirm.com<br>Geoffrey Gannaway<br>    ggannaway@brsfirm.com<br><br>BECK, REDDEN & SECREST, L.L.P.<br>One Houston Center<br>1221 McKinney, Suite 4500<br>Houston, TX  77010-2010<br>713-951-3700<br>713-951-3720 (fax) | /s/ Phillip A. Wittmann<br>Phillip A. Wittmann, 13625<br>    pwittman@stonepigman.com<br>Carmelite M. Bertaut, 3054<br>    cbertaut@stonepigman.com<br>Keith B. Hall, 24444<br>    khall@stonepigman.com<br>Jared A. Davidson, 32419<br>    jdavidson@stonepigman.com<br><br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, Louisiana  70130<br>504-581-3200<br>504-581-3361 (fax)<br><br>**ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION** |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Motion to Exclude Non-Governmental Reports has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2011.

/s/ Phillip A. Wittmann

1077712v.1