UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## TRANSOCEAN'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE BP'S INTERNAL INVESTIGATION REPORT (BLY REPORT) AND OTHER NON-GOVERNMENTAL REPORTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling, Inc.; Transocean Holdings LLC; Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (collectively "Transocean"), by and through their undersigned counsel, and respectfully submit this Memorandum in Support of Motion in Limine to preclude from the February 27, 2011 trial of liability, limitation, exoneration and fault allocation the introduction into evidence of the BP Internal Investigation Report ("Bly Report"), testimony based on that report, and any other non-governmental report regarding the Macondo incident. This memorandum also serves as Transocean's response to the PSC's letter to the Court dated October 17, 2011 in which the PSC *inter alia* seeks a ruling that the Bly Report is admissible in its entirety as a business record under Fed. R. Evid. 803(6). [Dkt. 4340-6.] The Bly Report and other non-governmental reports on the Macondo incident should not be admitted because they do not satisfy the criteria of Fed. R. Evid. 803(6) or any other

exception to the hearsay rule and contain opinion testimony inadmissible under Fed. R. Evid. 701 and 702.

### A. The Bly Report is Hearsay.

The Bly Report was prepared by BP employees, based on interviews with BP employees and many others, some with direct knowledge of the Macondo incident, some with no such knowledge. The preamble to the Bly Report states that "[a]t times, the evidence available to the investigation team was contradictory, unclear or uncorroborated. The investigation team did not seek to make credibility determinations in such cases." (BP Trial Exhibit 00001 Deepwater Horizon Accident Investigation Report ("Bly Report"), p. 2.) The preamble goes on to state that "[i]n the course of the investigation, members of the team conducted interviews, and this report draws upon the team members' understanding of those interviews. The investigation team did not record or produce verbatim transcripts of any interviews, nor did the team ask interviewees to review or endorse the notes taken by the interview team members." The Bly Report is plainly hearsay, and in many cases multiple hearsay, lacking foundation under Fed.R.Evid. 602 and inadmissible under Fed.R.Evid. 802.

In addition, the Bly Report contains opinions which do not comply with the requirements of Fed.R. Evid. 701 or 702. Many of the conclusions in the Report require a technical expertise, and there is no showing of the necessary qualifications for such expert testimony. For example, the Bly Report opines: "[t]he annulus cement barrier did not isolate the hydrocarbons" (Bly Report, p. 33); "initial flow into the well came through the show track barriers" (*Id.*, p. 36); "negative-pressure test results indicated that well integrity had not been established" (*Id.*, p. 39); and, "[t]he decision to use 21 centralizers increased the possibility of channeling above the main hydrocarbon zones, but it likely did not contribute to the cement's failure to isolate the main

hydrocarbon zones or to the failure of the shoe track cement." (*Id.*, p. 65.) These findings span a range of specialties, each highly technical. And each is the subject of actual expert testimony (in some cases conflicting) in the case from witnesses whose qualifications are available and who are subject to cross-examination and *Daubert* challenge. Opinions of this nature from the Bly Report are either highly technical expert testimony for which no qualifications have been given or lay testimony based on technical information properly in the ambit of expert testimony; either way, the Bly Report fails to meet the evidentiary standards of Rules 701 and 702.

**B.     The Bly Report is Not Admissible Under Rule 803(6).**

The PSC and BP acknowledge that the Bly Report is hearsay, but contend it is admissible under the "business record" exception of Rule 803(6). The PSC and BP are wrong.

1.     The Requirements of Rule 803(6).

As relevant here, the Fed.R.Evid. Rule 803(6) exception to the hearsay rule, effective December 1, 2011,[1] reads as follows:

> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>
> **(A)** the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> **(B)** the record was kept in the course of a regularly conducted activity of a business . . .;
>
> **(C)** making the record was a regular practice of that activity;

---

[1] The December 1, 2011 changes to the Rule were intended to be stylistic only, and there was "no intent to change any result in any ruling on evidence admissibility." FED. R. EVID. 803, Committee Note.

3

> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, . . .; and
>
> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The "inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001) (quoting FED. R. EVID. 803(6) Committee Note). "The lynchpin of the business record exception is trustworthiness." *International Marine, LLC v. Delta Towing, LLC*, 2011 U.S. Dist. LEXIS 2556, at **14-15 (E. D. La. March 11, 2011) (McNamara, J.). Ordinary business records are trustworthy because "[a]ll participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short in the regular course of business. FED. R. EVID. 803(6) Committee Note.

In contrast, a company's investigation of an accident which has resulted in litigation against the company is classically untrustworthy and typically viewed by courts as not done in the regular course of business. The seminal case, cited in the Committee Note to the rule, is *Palmer v. Hoffman*, 318 U.S. 109 (1943), upholding the exclusion of an accident report made by the since deceased engineer, offered by the defendant railroad trustees in a grade crossing collision case. *See also Melendez-Diaz v. Massachusetts*, 557 U.S. ___, 129 S. Ct. 2527, 2538 (2009) (reaffirming *Palmer*'s holding). While Rule 803(6) is not restricted to only those records prepared before litigation is filed, the preparation of a document after litigation has begun is

4

properly considered a factor of the "circumstances of preparation" that can "indicate a lack of trustworthiness." *United States v. Casoni*, 950 F.2d 893, 912 (3rd Cir. 1991).[2]

### 2. The Bly Report is Not Shown to be Based on "Someone with Knowledge."

It is apparent that much of the Bly Report was not based on information taken from "someone with knowledge" of the Macondo incident, and the Report does not reveal which parts, if any, did meet that requirement of the rule. In addition, to the extent the Bly Report findings are based on information from non-BP employees, Rule 803(6) would not permit admission of the Report as a business record, even if the requirements of 803(6) were otherwise satisfied. That information would not be available from an employee "with knowledge" as required by the first prong of Rule 803(6). The outsider's statement would have to fall within another hearsay exception. *See United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982); *see also Datamatic Svcs., Inc. v. U.S.*, 909 F.2d 1029, 1033 (7th Cir. 1990).

In conducting the investigation and drafting the Report, BP apparently employed multiple unidentified outside technical experts, lawyers and public relations consultants who undoubtedly contributed to the final report. BP states in the Executive Summary to the Bly Report that the investigation "team involved over 50 internal and external specialists from a variety of fields." (Bly Report, p. 9.) Furthermore, the Preamble readily admits that the report includes discussion and analysis that is based "on work carried out by third parties – for example, on laboratory or consultant reports commissioned by the investigation team." (*Id.*, p. 2). To the extent materials

---

[2] This analysis also requires the exclusion of all other non-governmental reports prepared by interested parties in this case. Other non-governmental reports, such as the Berkeley Report, fail to meet the Rule's "regularly conducted activity . . ." and "regular practice" requirements, and also must be excluded.

were obtained from those third parties,[3] information in the Report based on those materials is not admissible under Rule 803(6). *Id.*

        3.      <u>The Bly Report Was Not the Result of "Regular" Activity and Lacks Trustworthiness.</u>

While the Bly Report was being prepared, the Macondo spill was becoming the largest in history, and BP had been targeted in hundreds of class action lawsuits and in numerous criminal, regulatory and Congressional investigations. There was nothing "regular" about this incident, nor was BP's investigation into it and report about it "regular" in the sense required by Rule 803(6). BP plainly had a strong motivation in those proceedings to avoid blame for the incident to the extent possible, and to seek to shift blame to others. BP employees preparing the Bly Report or providing information on which the Report would be based of course were well aware of those powerful motivations.

BP's investigation of the Macondo incident and preparation of the Bly Report was thus far from a "regularly conducted business activity." The fact that BP may have internal rules requiring reports on incidents does not make those reports admissible in litigation regarding the incidents. *See, e.g.*, *Dreyfus Ashly, Inc. v. S/S "Rouen,"* 1989 WL 151685 (S.D. N.Y. Dec. 12, 1989) at * 3 ("But even assuming without deciding that Dunston's statement was taken pursuant to Maher's ordinary and regular practice following any mishap, this case comes within the rationale of *Palmer v. Hoffman*, . . . where the Supreme Court upheld the exclusion from

---

[3] For example, the Report Chronology section cites to MBI Testimony (Bly Report, pp. 24-29) (which means the Report is also inadmissible under 46 U.S.C. §6308, as Transocean has argued in a separate motion), M/V Damon Bankston logs (*Id.*, pp. 24-25, 29), M-I SWACO Displacement Procedures (*Id.,* p. 24), Halliburton 9 7/8 in. x 7 in. Production Casing Report (*Id.*, p. 22), and the Transocean Well Control Handbook (*Id.*, p. 42.) Section 5A of the Report alone cites blanket reliance on MBI testimony, a litany of Halliburton documents, Sperry-Sun data, Halliburton laboratory results, a commissioned CSI Technologies cement report, and a Stress Engineering report. (*Id.*, p. 52.)

evidence of an accident report prepared by a subsequently deceased railroad engineer on the ground that the business of a railroad is railroading, not litigating.").

There is every reason to be concerned that both the BP employees providing information and the BP employees and consultants preparing the Report were motivated to find "facts" which suggested fault by others than BP. The Report is thus akin to that found self-serving and inadmissible in *Palmer, supra*. The Bly Report, and the opinions stated therein, are properly viewed as "a tool of controversy, not a routine record of fact." *Casoni*, 950 F.2d at 912.[4]

### C.    Parts of the Bly Report May Constitute Party Admissions by BP.

Transocean acknowledges that portions of the Bly Report, and testimony of BP witnesses regarding the Bly Report may be admissible in appropriate circumstances against BP as an admission by a party opponent. However, those circumstances need to be evaluated on a case-by-case basis consistent with the requirements of relevant federal rules. *See* FED. R. EVID. 801(d)(2).

### D.    Conclusion

For the foregoing reasons, Transocean respectfully requests that the Court deny the PSC's request, with which BP apparently concurs, that the Bly Report and all of the documents on which it may have been based, along with all of its exhibits, be admitted into evidence.

---

[4] The PSC's citation of cases admitting reports of prompt investigations of sexual harassment allegations according to company policy does not suggest a different result. *See, e.g.*, *Brauninger v. Moates*, 260 F. App'x, 634 (5th Cir. 2007). In *Brauninger* the underlying statements were not hearsay because they were not offered for their truth but instead to show what the employer relied upon in the termination decision. The affidavits of the investigators who did the reports (submitted in the support of the summary judgment motion) established that they were done promptly, in the regular course of business, and with indicia of trustworthiness.

Transocean requests instead that the Bly Report and testimony based on the Bly Report, as well as any other non-governmental reports on the Macondo incident, be excluded from testimony.

Respectfully submitted, this 5th day of December, 2011,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
Email:  steven.roberts@sutherland.com
rachel.clingman@sutherland.com
kent.sullivan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller