# EXHIBIT 3.B


In Support of


Plaintiff United States' Memorandum of Law in Support of the
United States' Second Motion for Partial Summary Judgment; and
Statement of Undisputed Material Facts in Support Thereof

**Exhibit D – Form of AMI Assignment**

Attached to and made a part of that certain Well Participation Agreement dated effective October 1, 2009, by and between BP Exploration & Production Inc., Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation

# FORM OF AMI ASSIGNMENT

Page 1 of 6

ANA-MDL-000030629

U. S. Department of the Interior       OMB Control Number: 1010-0006
Minerals Management Service

OMB Approval Expires: March 31, 2007

ASSIGNMENT   OF   RECORD   TITLE   INTEREST   IN
FEDERAL OCS OIL AND GAS LEASE

Lease No. _____

Lease Effective Date _____

New Lease No. (MMS Use Only) _____

Part A: Assignment

Legal description of land/area being assigned:

Assignor(s) does hereby sell, assign, transfer and convey unto Assignee(s) the following undivided right, title and interest:

Insert name and Company number of each Assignor and Assignee.

Assignor(s):                                           Percentage Interest Conveyed

Assignee(s):                                           Percentage Interest Received

The approval of this assignment is restricted to record title interest only.

☐ Exhibit "A," which sets forth other provisions between Assignor(s) and Assignee(s), is attached to and made a part of this assignment.

For MMS Use only - Do Not Type Below This Line

This Assignment of Record Title Interest has been filed as of the date stamped on this document and hereby approved by the Minerals Management Service on the date below.

By_____
    Authorized Official for MMS                      Title                          Approval Date

Paperwork Reduction Act of 1995 (PRA) Statement: The PRA (44 U.S.C. 3501 et seq.) requires us to inform you that we collect this information to use in the adjudication process involved in leasing and lease operations. The MMS uses the information to track ownership of leases in the Federal OCS. Responses are mandatory (43 U.S.C. 1334). Proprietary data are covered under 30 CFR 250.196. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden of this form is estimated to average 30 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Direct comments regarding the burden estimate or any other aspect of this form to the Information Collection Clearance Officer, Mail Stop 4230, Minerals Management
Service, 1849 C Street, NW, Washington, DC 20240.

MMS FORM MMS-150       (June 2006)                                      Page 1 of 2

ANA-MDL-000030630

Part B - Certification and Acceptance

1. Assignor(s) certifies it is the owner of the record title interest in the above-described lease that is hereby assigned to the Assignee(s)
   specified above.
2. DEBARMENT COMPLIANCE: Assignee shall comply with the Department of the Interior's nonprocurement debarment and
   suspension regulations as required by Subpart C of 43 CFR Part 42 and shall communicate the requirement to comply with these
   regulations to persons with whom it does business related to this record title interest assignment by including this term in its contracts and
   transactions.
3. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION COMPLIANCE CERTIFICATION: Assignor(s) and Assignee(s)
   certify that they are in full compliance with Equal Opportunity Executive Order 11246, as amended, and the implementing regulations
   at 41 CFR 60-01 - Obligations of Contractors and Subcontractors; and 41 CFR 60-2 - Affirmative Action Programs. These requirements
   are for the purpose of preventing discrimination against persons on the basis of race, color, religion, sex, or national origin. These regulations have specific performance requirements.
4. Assignee's execution of this assignment constitutes acceptance of all applicable terms, conditions, stipulations and restrictions pertaining
   to the lease described herein. Applicable terms and conditions include, but are not limited to, an obligation to conduct all operations on
   the leasehold in accordance with the terms and conditions of the lease, to condition all wells for proper abandonment, to restore the leased
   lands upon completion of any operations as described in the lease, and to furnish and maintain bond(s) pursuant to regulations at 30 CFR 256. This assignment is subject to the Outer Continental Shelf Lands Act of August 7, 1953, 67 Stat. 462; 43 U.S.C. 1331 et seq., as amended (the "Act"), and Assignee(s) is subject to, and shall fully comply with, all applicable regulations now or to be issued under the Act. Notwithstanding any agreement between the Assignor(s) and Assignee(s), the parties' liability to the Minerals Management Service is governed by 30 CFR 256.

This Assignment of Record Title Interest will be made effective between the parties hereto as of _____, upon approval by the Minerals Management Service, United States Department of the Interior.

This instrument may be executed in any number of counterparts, each of which willl be deemed an original instrument, but all of which together shall constitute but one and the same instrument provided, however, this instrument and any other counterpart hereof, will not be binding unless and until executed by all of the parties, and will not be accepted by the Minerals Management Service unless all counterparts are filed simultaneously.

I certify that the statements made herein by the undersigned are true, complete and correct to the best of my knowledge and belief and are made in good faith.

Title 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

ASSIGNOR                                          ASSIGNOR

By:_____                          By:_____
Name:                                             Name:
Title:                                            Title:

        Execution Date                                    Execution Date

ASSIGNEE                                          ASSIGNEE

By:_____                          By:_____
Name:                                             Name:
Title:                                            Title:

        Execution Date                                    Execution Date

ANA-MDL-000030631

MMS FORM MMS-150        (June 2006)        Page 2 of 2

Page 4 of 6

:ondo Prospect
bit D to Well Participation Agreement
APC/ KMG

ANA-MDL-000030632

EXHIBIT "A"

## ATTACHED TO AND MADE A PART OF THAT CERTAIN ASSIGNMENT OF RECORD TITLE INTEREST IN FEDERAL OCS OIL & GAS LEASE FOR OCS-G XXXXX

**ASSIGNOR:**

**ASSIGNEE:**

To have and to hold the percentage of record title interest conveyed in Federal OCS Oil & Gas Lease OCS-G _____ covering _____ block _____ ("Assigned Lease") (and all appurtenant property, if any [in the case of Mississippi Canyon 252 into APC, including the wellbore and other personal property associated with the Mississippi Canyon Block 252 #1  OCS-G 32306 well (API #6081741169)]) unto the Assignee forever, subject to and in accordance with all the terms and provisions of the Assigned Lease and subject to the limitations, exceptions, reservations, and conditions set forth below.

### Assignment Subject to Prior Contracts

The record title interest conveyed in the Assigned Lease is subject to Assignee's assumption of the express and implied terms and conditions of the Assigned Lease and the following agreement(s), collectively the "Agreements":

1. That certain Lease Exchange Agreement dated October 1, 2009, by and between BP Exploration and Production Inc., Anadarko E&P Company LP and Anadarko Petroleum Corporation.

2. That certain Well Participation Agreement dated effective October 1, 2009, by and between BP Exploration and Production Inc., Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation.

3. **Applicable OA**

Should any terms of this Assignment conflict with the terms of the Agreements listed above, the terms of the Agreements shall control.

### Limited Warranty of Title

Page 5 of 6

Macondo Prospect
Exhibit D to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030633

The Assignment is delivered and accepted:

(a) without warranty of title or any other type of warranty (express or implied); except as to claims by persons claiming the same property, or any part thereof, by, through or under the assigning party, but not otherwise, but with full subrogation and substitution in and to all actions in warranty; and

(b) free and clear of any overriding royalties, production payments, mortgages, pledges or other burdens, liens or encumbrances on production (including but not limited to dedications of production, production handling agreements, and/or processing agreements) other than the lessor's royalty; and

(c) subject to approval by the MMS.

### Binding Effect

This Assignment and the rights, titles, interests, and obligations assigned, reserved, excepted, or retained in this Assignment, shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Assignor and Assignee. The covenants, obligations and agreements contained in this Assignment shall be construed as covenants running with the land and the Assigned Lease.

Page 6 of 6

Macondo Prospect
Exhibit D to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030634

**Exhibit D – Form of AMI Assignment**

Attached to and made a part of that certain Well Participation Agreement dated
effective October 1, 2009, by and between BP Exploration & Production Inc.,
Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation

# FORM OF AMI ASSIGNMENT

Page 1 of 6

Macondo Prospect (MC 252)
Exhibit "D" to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030635

U. S. Department of the Interior          OMB Control Number: 1010-0006
Minerals Management Service

OMB Approval Expires: March 31, 2007

ASSIGNMENT   OF   RECORD   TITLE   INTEREST   IN
FEDERAL OCS OIL AND GAS LEASE

Lease No. _____

Lease Effective Date _____

New Lease No. (MMS Use Only) _____

Part A: Assignment

Legal description of land/area being assigned:

Assignor(s) does hereby sell, assign, transfer and convey unto Assignee(s) the following undivided right, title and interest:

Insert name and Company number of each Assignor and Assignee.

Assignor(s):                                                    Percentage Interest Conveyed

Assignee(s):                                                   Percentage Interest Received

The approval of this assignment is restricted to record title interest only.

⊐ Exhibit "A," which sets forth other provisions between Assignor(s) and Assignee(s), is attached to and made a part of this assignment.

For MMS Use only - Do Not Type Below This Line

This Assignment of Record Title Interest has been filed as of the date stamped on this document and hereby approved by the Minerals Management Service on the date below.

By_____

    Authorized Official for MMS                    Title                              Approval Date

Paperwork Reduction Act of 1995 (PRA) Statement: The PRA (44 U.S.C. 3501 et seq.) requires us to inform you that we collect this information to use in the adjudication process involved in leasing and lease operations. The MMS uses the information to track ownership of leases in the Federal OCS. Responses are mandatory (43 U.S.C. 1334). Proprietary data are covered under 30 CFR 250.196. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden of this form is estimated to average 30 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Direct comments regarding the burden estimate or any other aspect of the this form to the Information Collection Clearance Officer, Mail Stop 4230, Minerals Management Service, 1849 C Street, NW, Washington, DC 20240.

MMS FORM MMS-150      (June 2006)                                              Page 1 of 2

Part B - Certification and Acceptance

1. Assignor(s) certifies it is the owner of the record title interest in the above-described lease that is hereby assigned to the Assignee(s)
   specified above.

2. DEBARMENT COMPLIANCE: Assignee shall comply with the Department of the Interior's nonprocurement debarment and
   suspension regulations as required by Subpart C of 43 CFR Part 42 and shall communicate the requirement to comply with these
   regulations to persons with whom it does business related to this record title interest assignment by including this term in its contracts and
   transactions.

3. EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION COMPLIANCE CERTIFICATION: Assignor(s) and Assignee(s)
   certify that they are in full compliance with Equal Opportunity Executive Order 11246, as amended, and the implementing regulations
   41 CFR 60-01 - Obligations of Contractors and Subcontractors; and 41 CFR 60-2 - Affirmative Action Programs. These requirements
   are for the purpose of preventing discrimination against persons on the basis of race, color, religion, sex, or national origin.
   These regulations have specific performance requirements.

4. Assignee's execution of this assignment constitutes acceptance of all applicable terms, conditions, stipulations and restrictions pertaining
   to the lease described herein. Applicable terms and conditions include, but are not limited to, an obligation to conduct all operations on
   the leasehold in accordance with the terms and conditions of the lease, to condition all wells for proper abandonment, to restore the leased
   lands upon completion of any operations as described in the lease, and to furnish and maintain bond(s) pursuant to regulations
   at 30 CFR 256. This assignment is subject to the Outer Continental Shelf Lands Act of August 7, 1953, 67 Stat. 462; 43 U.S.C.
   1331 et seq., as amended (the "Act"), and Assignee(s) is subject to and, shall fully comply with, all applicable regulations now or
   to be issued under the Act. Notwithstanding any agreement between the Assignor(s) and Assignee(s), the parties' liability to the
   Minerals Management Service is governed by 30 CFR 256.

This Assignment of Record Title Interest will be made effective between the parties hereto as of _____, upon approval by the Minerals Management Service, United States Department of the Interior.

This instrument may be executed in any number of counterparts, each of which will be deemed an original instrument, but all of which together shall constitute but one and the same instrument provided, however, this instrument and any other counterpart hereof, will not be binding unless and until executed by all of the parties, and will not be accepted by the Minerals Management Service unless all counterparts are filed simultaneously.

I certify that the statements made herein by the undersigned are true, complete and correct to the best of my knowledge and belief and are made in good faith.

Title 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

ASSIGNOR                                    ASSIGNOR


By:_____                  By:_____
Name:                                       Name:
Title:                                      Title:

       Execution Date                              Execution Date

ASSIGNEE                                    ASSIGNEE


By:_____                  By:_____
Name:                                       Name:
Title:                                      Title:

       Execution Date                              Execution Date

ANA-MDL-000030637

MMS FORM MMS-150     (June 2006)     Page 2 of 2

Page 4 of 6

:ondo Prospect
bit D to Well Participation Agreement
APC/ KMG

ANA-MDL-000030638

EXHIBIT "A"

**ATTACHED TO AND MADE A PART OF THAT CERTAIN
ASSIGNMENT OF RECORD TITLE INTEREST
IN FEDERAL OCS OIL & GAS LEASE FOR OCS-G XXXXX**

**ASSIGNOR:**

**ASSIGNEE:**

To have and to hold the percentage of record title interest conveyed in Federal OCS Oil & Gas Lease OCS-G _____ covering _____ block _____ ("Assigned Lease") (and all appurtenant property, if any [in the case of Mississippi Canyon 252 into APC, including the wellbore and other personal property associated with the Mississippi Canyon Block 252 #1 OCS-G 32306 well (API #6081741169)]) unto the Assignee forever, subject to and in accordance with all the terms and provisions of the Assigned Lease and subject to the limitations, exceptions, reservations, and conditions set forth below.

<u>Assignment Subject to Prior Contracts</u>
The record title interest conveyed in the Assigned Lease is subject to Assignee's assumption of the express and implied terms and conditions of the Assigned Lease and the following agreement(s), collectively the "Agreements":
1. That certain Lease Exchange Agreement dated October 1, 2009, by and between BP Exploration and Production Inc., Anadarko E&P Company LP and Anadarko Petroleum Corporation.
2. That certain Well Participation Agreement dated effective October 1, 2009, by and between BP Exploration and Production Inc., Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation.
3. **Applicable OA**

Should any terms of this Assignment conflict with the terms of the Agreements listed above, the terms of the Agreements shall control.

<u>Limited Warranty of Title</u>

Page 5 of 6

Macondo Prospect
Exhibit D to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030639

The Assignment is delivered and accepted:

(a) without warranty of title or any other type of warranty (express or implied); except as to claims by persons claiming the same property, or any part thereof, by, through or under the assigning party, but not otherwise, but with full subrogation and substitution in and to all actions in warranty; and

(b) free and clear of any overriding royalties, production payments, mortgages, pledges or other burdens, liens or encumbrances on production (including but not limited to dedications of production, production handling agreements, and/or processing agreements) other than the lessor's royalty; and

(c) subject to approval by the MMS.

## Binding Effect

This Assignment and the rights, titles, interests, and obligations assigned, reserved, excepted, or retained in this Assignment, shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Assignor and Assignee.   The covenants, obligations and agreements contained in this Assignment shall be construed as covenants running with the land and the Assigned Lease.

Macondo Prospect
Exhibit D to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030640

Exhibit "E" - Tax Partnership Provisions

**Attached to and made a part of that certain Well Participation Agreement
dated effective October 1, 2009, by and between BP Exploration & Production Inc.,
Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas Corporation.**

<u>TAX PARTNERSHIP PROVISIONS</u>

1.    General Provisions

1.1    **Designation of Documents.**  This exhibit is referred to in, and is made a part of that certain Well Participation Agreement dated effective October 1, 2009, by and between BP Exploration & Production Inc. ("BP"), Anadarko Petroleum Corporation("APC") and Kerr-McGee Oil & Gas Corporation ("KMG").  Such agreement (including all exhibits thereto, other than this exhibit) shall be hereinafter referred to as the "Agreement"; and this exhibit to the Agreement is hereinafter referred to as this "Exhibit".  Except as may be otherwise provided in this Exhibit, terms defined in the Agreement shall have the same meaning when used in this Exhibit as in the Agreement.

1.2    **Name of Partnership.**  The Parties hereby agree to name this tax partnership the Macondo Prospect Partnership.

1.3    **Relationship of Parties.**   The parties to this Agreement shall be hereinafter referred to singularly as the "Party" or collectively as the "Parties." The Parties understand and agree that the arrangement and undertakings evidenced by the Agreement, taken together, result in a partnership for purposes of federal income taxation pursuant to subchapter K of Chapter 1 of subtitle A of the Internal Revenue Code of 1986, as amended, and for purposes of certain state income tax laws which incorporate or follow federal income tax principles as to tax partnerships.  Such partnership for tax purposes is hereinafter referred to as the "Tax partnership."  For every other purpose of the Agreement, however, and notwithstanding any other provisions of the Agreement, express or implied, to the contrary, the Parties understand and agree that their legal relationship to each other under applicable state law with respect to all property subject to the Agreement, is one of tenants-in-common, or undivided interest owners, or lessee-sublessees and not one of partnership; or undivided liabilities of the Parties shall be several and not joint or collective; and that each Party shall be solely responsible for its obligations under the Agreement.

1.4    **Priority of Provisions.**  In the event of a conflict or inconsistency, whether direct or indirect, actual or apparent, between the terms and conditions of this Exhibit and the terms and conditions of the Agreement or any other Exhibit or any part thereof, the terms and conditions of this Exhibit shall govern and control.

1.5    **Survivorship.**

1

ANA-MDL-000030641

(a)     Any termination of the Agreement shall not affect the continuing application of the Tax Partnership Provisions as necessary for the termination and liquidation of the Tax Partnership.

(b)     Any termination of the Agreement shall not affect the continuing application of the Tax Partnership Provisions as necessary to resolve all matters regarding federal and state income taxation of the Tax Partnership.

(c)     These Tax Partnership Provisions shall inure to the benefit of, and the binding upon, the Parties hereto and their successors and assigns.

1.6     **Term.** The effective date of the Tax Partnership shall be the closing date of the Agreement. The Tax Partnership shall continue in full force and effect from and after such date until termination.

2.     **Income Tax Compliance and Capital Accounts.**

2.1     **Tax Returns.** The Operator as the Tax Reporting Partner ("TRP") shall prepare and file all required federal and state partnership income tax returns. In preparing such returns, the TRP shall use its best efforts and in doing so shall incur no liability to any other Party with regard to such returns. Not less than thirty (30) days prior to the proposed filing date of any such tax return the TRP shall submit to each Party, at the addresses listed below, a copy of the return as proposed for review.

In the event of a change in Operator, the Party serving as TRP at the beginning of a given taxable year will continue as TRP with respect to all matters concerning that year. In the event of such change in Operator, the party serving as TRP shall promptly provide notice to the new Operator's tax department and provide such information as reasonably necessary to transition TRP responsibilities to the new Operator.

2.2     **Fair Market Value Capital Accounts.** The TRP shall establish and maintain fair market value (hereinafter referred to as "FMV") capital accounts and tax basis capital accounts for each Party. Upon request, the TRP shall submit to each party along with a copy of any proposed partnership income tax return an accounting of its respective FMV capital accounts as of the end of the tax return period.

2.3     **Information Requests.** Each Party agrees to furnish to the TRP no later than thirty (60) days before the return due date (including extensions) such information relating to the operations conducted under this Agreement as may be required for the proper preparation of such returns and capital accounts. Similarly, each Party agrees to furnish timely to the TRP, as requested, any information and data necessary for the preparation and/or filing of other required reports and notifications. As provided in Internal Code Section ("I.R.C.")

2

ANA-MDL-000030642

6050K(c), a Party transferring it interest must notify the TRP to allow compliance with I.R.C. § 6050K(a) (see also Sec. 8.1).

3.    **TRP as Tax Matters Partner**

3.1    If the Partnership does not qualify for the "small partnership exception" from §§ 6221 *et seq.*, Subchapter C of Chapter 53 of Subtitle A (the "TEFRA rules") of the I.R.C., the TRP shall also be the Tax Matters Partner as defined in I.R.C. § 6231(a)(7) (the "TMP") and references to the TRP shall then include references to the TMP and *vice versa*. In the event of any change in the Operator, the Party serving as TRP at the beginning of a given taxable year shall continue as TRP with respect to all matters concerning such year. In the event of a change in the TRP, the party serving as TRP shall promptly provide notice to the new Operator's tax department and provide such information as reasonably necessary to transition TRP responsibilities to the new Operator. The TRP and other Parties shall use their best efforts to comply with responsibilities outlined in this section and in I.R.C. §§ 6222 through 6233, and § 6050K (including any Treasury Regulations promulgated thereunder) and in doing so shall incur no liability to any other Party. Notwithstanding the TRP's obligation to use its best efforts in the fulfillment of its responsibilities, the TRP shall not be required to incur any expenses for the preparation for, or pursuance of, administrative, or judicial proceedings, unless the Parties agree on a method for sharing such expenses.

3.2    **Information Request by the TRP.** The Parties shall furnish the TRP within two weeks from the receipt of the request with such information (including information specified in I.R.C. §§ 6230(e) and 6050K) as the TRP may reasonably request to comply with the requirements on furnishing information to the Internal Revenue Service.

3.3    **TRP Agreements with IRS.** The TRP shall not agree to any extension of the statute of limitations for making assessments on behalf of any other Party without first obtaining the written consent of that Party. The TRP shall not bind any other Party to a settlement agreement of tax matters without obtaining the written concurrence of any such Party.

Any other Party who enters into a settlement agreement with the Secretary of the Treasury with respect to any partnership items, as defined by I.R.C. § 6231(a)(3), shall notify the other Parties of such settlement agreement and its terms within ninety (90) days from the date of settlement.

3.4    **Inconsistent Treatment of Tax Partnership Item.** If any Party intends to file a notice of inconsistent treatment under I.R.C. § 6222(b), such Party shall, prior to the filing of such notice, notify the TRP of such intent and the manner in which the Party's intended treatment of a partnership item is (or may be) inconsistent with the treatment of a partnership item is (or may be) inconsistent with the treatment of that item by the Tax Partnership. Within one week of receipt, the TRP shall remit copies of such notification to other Parties to the Tax

3

ANA-MDL-000030643

Partnership.  If an inconsistency notice is filed solely because of a party not having received a Schedule K-1 in time for the filing of its income tax return, the TRP need not be notified.

3.5    **Requests for Administrative Adjustment.**  No party shall file a request for an administrative adjustment of partnership items pursuant to I.R.C. § 6227 for any Tax Partnership taxable year without first notifying all other Parties.  If all other Parties agree with the requested adjustment, the TRP shall file the request for administrative adjustment on behalf of the Tax Partnership.  If unanimous consent is not obtained within thirty (30) days from such notice, or within the period required to timely file the request for administrative adjustment, if shorter, any Party, including the TRP, may file a request for administrative adjustment on its own behalf.

**Judicial Proceedings.**  Any Party intending to file a petition under I.R.C. §§ 6226, 6228, or any other I.R.C. section with respect to any partnership item, or other tax matters involving the Tax Partnership, shall notify the other Parties, prior to such filing, of the nature of the contemplated proceeding.  In the case where the TRP is the Party intending to file such petition, such notice shall be given within a reasonable time to allow the other Parties to participate in the choosing of the forum in which such petition will be filed.  If the Parties do not agree on the appropriate forum, then the appropriate forum shall be decided by majority vote.  Each Party shall have a vote in accordance with its percentage interest in the Tax Partnership for the year under audit.  If a majority cannot agree, the TRP shall choose the forum.  If a Party intends to seek review of any court decision rendered as a result of such a proceeding, such party shall notify the other Parties prior to seeking such review.

4.    **Elections**

4.1    **General Elections.**  For both income tax return and capital account purposes, the Tax Partnership shall elect:

(a)    To deduct currently intangible drilling and development costs (hereinafter referred to as "IDC");

(b)    To use the maximum allowable accelerated tax method and the shortest permissible tax life for depreciation purposes;

(c)    To use the accrual method of accounting;

(d)    To report income on a calendar year basis;

(e)    To amortize organizational expense over a period of sixty (60) months under I.R.C. §709;

4

ANA-MDL-000030644

(f)     To expense research and experimental expenditures under I.R.C. §174;

(g)     To elect under I.R.C. §451 (a) and Treas. Reg. § 1.451-5 to include advance payments in income in the year properly accruable under the Partnership's method of accounting; and

(h)     Under I.R.C. §754 to adjust the basis of partnership property, with the adjustments provided in I.R.C. §734 for a distribution of property and in I.R.C. §743 for a transfer of a partnership interest. In case of a distribution of property, the TRP shall adjust all capital accounts to the extent required in Treas. Reg. §1.704-1(b)(2)(iv)(m). In the case of a transfer of a partnership interest, the acquiring Partner(s) shall separately establish and maintain its (their) tax basis capital account(s).

4.2     **Depletion.**  Solely for FMV capital account purposes depletion shall be calculated by using simulated cost depletion within the meaning of Treasury Regulation § 1.704-1(b)(2)(iv)(k)(2). The simulated cost depletion allowance shall be determined under the principles of I.R.C. § 612 and be based on the FMV capital account basis of each Lease.  Solely for purposes of this calculation, remaining reserves shall be determined consistently by the TRP.

4.3     **Electing Out Under I.R.C. § 761(a).**  The TRP shall notify all Parties of an election to be excluded from the application of subchapter K of Chapter 1 of Subtitle A of the Internal Revenue Code within thirty (30) days of the proposed filing date for the federal partnership income tax return.  Any Party objecting to said election must do so in writing not less than seven (7) days prior to the proposed filing date for the federal partnership income tax return. **After an election-out, to avoid an unintended impairment of the election-out: The Parties will avoid, without prior coordination, any operational changes which would terminate the qualification for the election-out status; all Parties will monitor the continuing qualification of the Partnership for the election-out status and will notify the other Parties if, in their opinion, a change in operations will jeopardize the election-out; and, all Parties will use, unless agreed to by them otherwise, the cumulative gas balancing method as described in Treas. Reg. §1.761-2(d)(2).**

4.4     **Other Elections or Consents.**  Any tax elections other than those referenced above must be approved by the affirmative vote of two (2) or more Parties owning a Majority Working Interest based upon post-Payout ownership. Such approval shall not be unreasonably withheld.

5.      **Capital Contributions and FMV Capital Accounts**
        The provisions of this Sec. 5 and any other provisions of the Tax Partnership Provisions relating to the maintenance of the capital accounts are intended to comply with Treas. Reg. §1.704-1(b) and shall be interpreted and applied in a manner consistent with such regulations.

5

ANA-MDL-000030645

5.1    **Capital Contributions.**  The respective capital contributions of each party to the Tax partnership shall be (a) each Party's interest in the oil and gas leases committed to this Tax Partnership, and all properties associated with the leases, and (b) all amounts paid by each party in connection with the acquisition, exploration, development and operation of the leases, and all other costs characterized as contributions or expenses borne by such Party under this Tax Partnership. The contribution of the leases and any other properties committed to this Tax Partnership shall be made by each Party's agreement to hold legal title to its interest in such leases or any other properties as nominee for this Tax Partnership.

5.2    **FMV Capital Accounts.**  The FMV capital accounts shall be increased and decreased as follows:

(a)    The FMV capital accounts shall be increased by: (i) the amount of money and the FMV of any property contributed by each Party, respectively, to the Tax Partnership (net of liabilities assumed by the Tax Partnership or to which the contributed property is subject); (ii) that Party's Section 6.1 allocated share of Tax Partnership income and gains, or items thereof; (iii) any basis increases required by I.R.C. § 1016(a)(20); and (iv) that Party's share of I.R.C. § 705(a)(1)(B) and (C) items.

(b)    The FMV capital accounts shall be decreased by: (i) the amount of money and the FMV of any property distributed to each Party, respectively, by the Tax Partnership (net of liabilities assumed by each Party or to which the distributed property is subject); (ii) that Party's Section 6.1 allocated share of Tax Partnership deductions and losses, or items thereof; (iii) any basis decreases required by I.R.C. § 1016(a)(20); and (iv) that Party's share of I.R.C. § 705(a)(2)(B) items and I.R.C. § 709 nondeductible and nonamortizable items.

"FMV" when it applies to property contributed by a Party to the Tax Partnership shall be assumed to equal the adjusted basis, as defined in I.R.C. § 1011, of that property unless the Parties agree otherwise as indicated below or in a separate written agreement.

| Party | Property Contributed | FMV |
|-------|----------------------|-----|
| BP | 65% working interest Mississippi Canyon Block 252 | US$260 million |
| APC | 25% working interest Mississippi Canyon Block 252 | US$100 million |

5.3    **FMV Capital Account Revaluation.**  The FMV capital accounts will be revalued as provided in Treas. Reg. § 1.704-1(b)(2)(iv)(e), upon the distribution of Tax Partnership property to a Party, and to reflect revaluation of partnership property according to Treas. Reg. § 1.704-1(b)(2)(iv)(f).

Macondo Prospect (MC 252)
Exhibt "E "to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030646

6.1 **FMV Capital Account Allocations.**   Each item of income, gain, loss, or deduction shall be allocated to each Party as follows:

(a) Actual or deemed income from the sale, exchange distribution, or other disposition of production shall be allocated to the Party entitled to such production or the proceeds from the sale of such production. The amount of income from the sale and FMV of production taken in kind by the Parties are deemed to be identical; accordingly, such items may be omitted from the adjustments made to the Parties' FMV capital accounts.

(b) Exploration cost, IDC, and operating and maintenance cost shall be allocated to each Party in accordance with its respective contribution, or obligation to contribute, to such cost.

(c) Depreciation shall be allocated to each Party in accordance with its contribution, or obligation to contribute, to such cost.

(d) Simulated depletion shall be allocated to each Party in accordance with its FMV capital account adjusted basis in each oil and gas property.

(e) Loss or deemed loss upon the sale, exchange, distribution, abandonment, or other disposition of depreciable or depletable property, shall be allocated to the Parties in the ratio of their respective FMV capital account adjusted basis in the depreciable or depletable property to the total FMV capital account adjusted basis in the depreciable or depletable property.

(f) Gain or deemed gain upon the sale, exchange, distribution, abandonment or other disposition of depreciable or depletable property shall be allocated to the Parties so that the FMV capital account balances of the Parties will most closely reflect their overall Working Interests under the Agreement.

(g) Costs or expenses of any other kind shall be allocated to each Party in accordance with its respective contribution, or obligation to contribute, to such costs or expenses.

(h) Any other item of income shall be allocated to the Parties in accordance with the manner in which such income is realized by each Party.

6.2 **Tax Returns and Tax Basis Capital Account Allocations:**

(a) Unless otherwise expressly provided herein the allocations of Tax Partnership items of income, gain, loss, or deduction for tax return and tax basis capital account purposes shall be the same as and follow the principles of  those contained in Section 6.1 hereof. However, the Partnership's gain or loss on the taxable disposition of a Partnership property in excess of the gain or loss under Sec. 6.1, if any, is allocated to

7

Macondo Prospect (MC 252)
Exhibt "E "to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030647

the contributing Party to the extent of such Party's pre-contribution gain or loss.

(b)     The Parties recognize that under I.R.C. § 613A(c)(7)(D), any depletion allowance is to be computed separately by each Party. For this purpose, each Party's share of the adjusted basis of each oil and gas property shall be equal to its contribution to the adjusted tax basis of such property.

(c)     The Parties recognize that under I.R.C. § 613A(c)(7)(D), the computation of gain or loss on the taxable disposition of an oil or gas property is to be computed separately by each Party. For this purpose the portion of the total amount realized by the Tax Partnership that represents a recovery of simulated adjusted basis in an oil and gas property will be allocated to the Parties in the same ratio that simulated depletion is allocated to them under Section 6.1(d) hereof. Any additional amount realized will be allocated in accordance with the ratio of simulated gain allocation for such property under Section 6.1(f) hereof subject first, however, to the requirements set forth in Section 6.2(g) hereof.

(d)     Depreciation shall be allocated to each Party in accordance with its contribution to the adjusted basis of the depreciable asset.

(e)     Any recapture of depreciation, IDC, and any other item of deduction or credit shall, to the extent possible, be allocated among the Parties in accordance with their sharing of the depreciation, IDC, or other item of deduction or credit which is recaptured.

(f)     Any recapture of depletion shall be computed separately by each Party, in accordance with its depletion allowance computed pursuant to Section 6.2(b) hereof.

(g)     For Tax Partnership property that has a value in the FMV capital accounts which differs from the adjusted tax basis of such property, any tax items relating to such property will be allocated to the Parties in a manner which takes into account the variation between the adjusted basis of such property and its FMV capital account value in accordance with I.R.C. § 704(c). The Parties intend that the allocations described in this Section 6 constitute a "reasonable method" of allocating income, gain, loss and deduction under Treas. Reg. § 1.704-3(a)(1).

(h)     The income attributable to take-in-kind production will not be reflected on the tax return.


7.     **Termination and Liquidating Distributions**

8

Macondo Prospect (MC 252)
Exhibt "E "to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030648

7.1     **Termination of the Tax Partnership.**  Termination shall occur on the earlier of the events described in I.R.C. §§ 708(b)(1)(B) or 708(b)(1)(A).

(a)     <u>Termination Under I.R.C. § 708(b)(1)(A)</u>.  Upon termination under I.R.C. § 708(b)(1)(A), the business of the Tax Partnership shall be wound-up and concluded, and the assets shall be distributed to the Parties as described in Sections 7.2 through 7.4 hereof by the end of such calendar year (or, if later, within ninety (90) days after the date of such termination)

(b)     <u>Termination under I.R.C. §708(b)(1)(B)</u>.  Upon termination under I.R.C. § 708(b)(1)(B), the Tax Partnership will be deemed to contribute all of its assets and liabilities to a new partnership in exchange for an interest in the new partnership, the terms of which are identical to those contained in this Exhibit.  Immediately thereafter, the terminated partnership will be deemed to distribute the interests in the new partnership to the Parties in proportion to their respective interests in the terminated partnership.  The capital accounts of the Parties shall carry over to the new partnership and the deemed contribution of assets and liabilities by the terminated partnership to the new partnership and the deemed liquidation of the terminated partnership shall be disregarded for purposes of maintaining each Party's FMV capital account.

7.2     **Reversion.**  First, all money representing unexpended contributions by any Party and any property where no interest has been earned in that property under the Agreement by any other Party shall be returned to the contributing Party.

7.3     **Balancing.**  Second, the TRP shall take the actions specified under this Section 7.3 in order to cause the ratio of the Parties' FMV capital accounts to reflect as closely as possible their Working Interests under the Agreement.  The ratio of a Party's FMV capital account is represented by a fraction, the numerator of which is the Party's FMV capital balance and the denominator of which is the sum of all Parties' FMV capital account balances.  Such actions are hereafter referred to as "balancing the FMV capital accounts," and when completed, the FMV capital accounts of the Parties shall be referred to as being "balanced."  The manner in which the FMV capital accounts of the Parties are to be balanced shall be as follows:

> The FMV of all Tax partnership properties shall be determined and the gain or loss for each property which would have resulted if a sale thereof has occurred at such FMV shall be allocated in accordance with Section 6.1(e) and (f) hereof.  If thereafter, any Party has a negative FMV capital account balance, that is, a balance less than zero, such party shall contribute an amount of money to the Tax partnership sufficient to achieve a zero balance FMV capital account.  Any Party may contribute an amount of

9

ANA-MDL-000030649

money to the Tax Partnership to facilitate the balancing of the FMV capital accounts.

7.4     **Distribution.**  Third, after the FMV capital accounts have been adjusted pursuant to Section 7.3 above, all remaining Tax Partnership property shall be distributed to the Parties in accordance with the ratios of their FMV capital accounts balances.   This distribution may be accomplished by one of the following two methods:

(a)     If all Parties consent, selected Tax Partnership properties shall be distributed to one or more of the Parties; or

(b)     If (a) above does not apply, an undivided interest in each and every Tax Partnership property shall be distributed to the Parties.

7.5     **Fair Market Valuation.**  For purposes of Sections 7.3 and 7.4, the FMV of any Tax Partnership property shall be agreed to by all the Parties.  In the event that all of the Parties do not reach such an agreement, the TRP shall retain a nationally-recognized independent engineering firm to prepare an evaluation of the FMV of such property.

8.     **Transfers, Indemnification, and Correspondence**

8.1     **Transfers of Tax Partnership Interests.**  Transfers of Tax Partnership interests shall be governed by the Agreement.  A Party transferring its interest, or any part thereof shall notify the TRP in writing within two weeks of such transfer.

8.2     **Indemnification.**  This Agreement does not include any indemnification provisions to protect Parties against any harm caused by an I.R.C. § 708(b)(1)(B) termination.   If the Parties desire indemnification provisions, a separate indemnification agreement must be drafted and incorporated by reference to the Agreement and this Exhibit.

8.3     **Correspondence.**  All correspondence relating to the preparation and filing of the Tax Partnership's income tax returns and capital accounts shall be forwarded to:

Anadarko Petroleum Corporation         BP Exploration & Production Inc.
Attn:  Robbie Lewis                    Attn:  Ray Yackell, Sr Tax Accountant
Tax Department                         BP Tax Department
P.O. Box 1330                          501 Westlake Park Boulevard
Houston, TX  77251-1330                Houston, TX 77079

10

Macondo Prospect (MC 252)
Exhibt "E "to Well Participation Agreement
BP/ APC/ KMG

ANA-MDL-000030650