UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION: J<br>JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BP'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
HALLIBURTON ENERGY SERVICES, INC. TO PRODUCE
<u>DOCUMENTS WRONGFULLY WITHHELD</u>**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
504 -581-7979 (Tel.)
504 -556-4108 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985 (Tel.)

*Attorneys for BP Exploration &
Production Company and BP America
Production Company*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

      A.     The Court's September 27, 2011 Order. .......................................................2

      B.     Halliburton's Failure to Comply with the September 27 Order. .................3

      C.     BP Has Patiently But Unsuccessfully Attempted to Resolve These Issues Without Further Court Intervention. .................................................5

ARGUMENT..........................................................................................................................7

    I.     Halliburton Was Required To Provide Evidence *Specifically* Demonstrating the Basis for Its Work Product Assertions. ....................................7

    II.    The Ferguson Affidavit Fails to Satisfy Halliburton's Burden..............................8

# TABLE OF AUTHORITIES

Page

## CASES

*AIU Ins. Co. v. TIG Ins. Co.*,
  No. 07 Civ. 7052, 2008 WL 4067437 (S.D.N.Y. Aug. 28, 2008) ............................................. 11

*Carroll v. Praxair, Inc.*,
  No. 2:05-cv-307, 2006 WL 1793656 (W.D. La. June 28, 2006) ............................................... 7

*Caruso v. Coleman Co.*,
  No. 93-CV-6733, 1995 WL 384602 (E.D. Pa. June 22, 1995) ............................................... 8, 9

*Disidore v. Mail Contractors of America, Inc.*,
  196 F.R.D. 410 (D. Kan. 2000) ....................................................................................... 11, 12

*Evans v. United Fire & Cas. Ins. Co.*,
  No. 06-6783, 2007 WL 2323363 (E.D. La. Aug. 9, 2007) ..................................................... 7, 8

*Guardsmark, Inc. v. Blue Cross & Blue Shield*,
  206 F.R.D. 202 (W.D. Tenn. 2002) ............................................................................................ 8

*In re Kaiser Aluminum & Chem. Co.*,
  214 F.3d 586 (5th Cir. 2000) ....................................................................................................... 7

*Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*,
  120 F.R.D. 504 (W.D. La. 1988) ............................................................................................ 7, 8

*Pennsylvania Dept. of Pub. Welfare v. United States*,
  No. 05-1285, 2006 WL 3792628 (W.D. Pa. Dec. 21, 2006) .................................................... 11

*Pippenger v. Gruppe*,
  883 F. Supp. 1201 (S.D. Ind. 1994) ..................................................................... 8, 10, 11, 12

*SEC v. Microtune, Inc.*,
  258 F.R.D. 310 (N.D. Tex. 2009) ............................................................................................... 7

*Smithkline Beecham Corp. v. Apotex Corp.*,
  193 F.R.D. 530 (N.D. Ill. 2000) ................................................................................................ 11

## INTRODUCTION

On September 27, 2011, as the result of a previous BP Motion to Compel, this Court ordered Halliburton to produce "documents related to non-privileged post-incident activities which have not been produced" by October 12, 2011, and to "provide affidavits *specifically demonstrating* that modeling or other post-incident activities were undertaken at the direction of counsel." Ex. A (9/27/2011 Order "Regarding BP's Motion to Compel Halliburton Investigation Materials" at 2-3) (hereinafter "9/27/2011 Order" or "September 27 Order") (emphasis added).

More than two months have passed since this Court's Order, yet Halliburton still has not complied with its terms. Instead of providing the "specific demonstration" required by the September 27 Order, Halliburton has merely provided an affidavit from a Halliburton Senior Vice President and Deputy General Counsel, James W. Ferguson ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Under this Court's Order and prevailing case law, the Ferguson Affidavit is not adequate and fails to "provide" necessary testimony "specifically demonstrating" the applicability of the work-product doctrine. All the Ferguson Affidavit attempts to do is encase a wide swath of documents within work product protection without providing an appropriate justification for doing so. Such an attempt to circumvent the September 27 Order should not be countenanced.

Even before September 27, 2011, Halliburton's counsel represented to the Court that all withheld materials were protected by the work product doctrine. The Court considered that argument, and found it insufficient. Halliburton should not now be able to evade its obligations by submitting a supporting affidavit from a lawyer making blanket claims that simply parrot the legal standard for work product immunity while not actually assisting the Court or BP in

1

determining whether the privilege applies to any given document identified in Halliburton's privilege logs.

In short, Halliburton has failed to produce relevant evidence or supply the "specific" affidavit testimony the Court's Order envisions. And Halliburton has persisted in this posture, notwithstanding a prolonged meet-and-confer process in which BP has patiently tried to convince Halliburton to comply voluntarily with its legal responsibilities under the Federal Rules and this Court's Order.

Because Halliburton is wrongfully withholding documents in contravention of a Court Order, BP respectfully requests that the Court now directly and unqualifiedly order Halliburton to produce all documents identified in Attachment A to BP's Motion to Compel Halliburton Energy Services, Inc. to Produce Documents Wrongfully Withheld, filed concurrently herewith.

## BACKGROUND

### A.   The Court's September 27, 2011 Order.

On August 29, 2011, BP moved to compel Halliburton to produce documents and witnesses (i) relevant to its post-incident investigative activities, (ii) but not conducted at the direction of counsel. Halliburton's failure to explain the criteria it had used to parse which of its post-incident investigative activities merited work product protection and which did not prompted BP's August 29 motion.

In opposition, Halliburton argued that no order to compel was necessary because, on the one hand, it had already agreed to produce documents related to any non-privileged, post-incident activities undertaken by its employees, and, on the other hand, "[*a*]*ny privileged post-incident activity conducted by [Halliburton] ... was done at the direction of counsel*." Ex. C (9/8/2011 HESI Response to BP's Motion to Compel Investigative Materials at 1, 3) (hereinafter "Halliburton Response") (emphasis added). Halliburton did not, however, describe the post-incident activities that purportedly had been "done at the direction of counsel." Nor did

2

Halliburton provide evidence to substantiate its claims that *any* post-incident activities had, in fact, been conducted at the direction of counsel.

On September 27, 2011, the Court *first* ordered Halliburton to complete its production of documents admittedly "related to non-privileged post-incident activities which have not been produced" and to do so by no later than October 12, 2011. Ex. A (9/27/2011 Order). ***Second,*** the Court also ordered Halliburton to "provide affidavits *specifically* demonstrating that modeling or other post-incident activities [over which Halliburton claims work product immunity] were undertaken at the direction of counsel." *Id*. at 4 (emphasis added). ***Finally***, the Court ordered Halliburton to provide affidavits demonstrating that the post-incident analyses conducted by Ronald Chemali, whose deposition Halliburton had opposed on work product grounds, were conducted at the direction of counsel. *See id*. at 6.

### B. Halliburton's Failure to Comply with the September 27 Order.

Halliburton did none of the things required by this Court's Order.

*First*, Halliburton failed to complete its production of documents. In the period leading up to the October 12, 2011 deadline, Halliburton produced documents, including approximately 736 documents off of its privilege logs. *See* Ex. D (Halliburton Amended Privilege Logs) (removing specified entries from Halliburton's privilege logs). But Halliburton still has not finished what this Court directed it to do: produce ***all*** documents reflecting the non-privileged, post-incident activities of its employees. For example, Halliburton still has not produced documents reflecting the post-incident activities of its employees who were members of a team of engineers and technical personnel that Halliburton ***admits*** investigated issues related to the Macondo well without being directed to do so by counsel. *See*, *e.g.*, Ex. E (Halliburton's 19th Privilege Log, Entry Nos. 14 and 17) (withholding documents reflecting Ronald Sweatman's post-incident activities as work product); Ex. F (12/5/2011 Halliburton Letter at 1) (admitting

3

that Ronald Sweatman organized a team to investigate issues related to the Macondo incident, not at the direction of counsel).[1]

***Second***, Halliburton failed to provide affidavits ***specifically*** demonstrating that modeling or other post-incident activities were undertaken at the direction of counsel.  On October 4, 2011, Halliburton submitted the Ferguson Affidavit.  ███████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████

***Third***, Halliburton failed to provide an affidavit demonstrating that Ronald Chemali's post-incident analyses had been performed at the direction of counsel.  Rather, on the same day it submitted the Ferguson Affidavit, Halliburton revealed that it had ***inaccurately represented*** the nature of Mr. Chemali's post-incident activities to the Court.  Specifically, Halliburton had represented in briefing that Mr. Chemali "is an inappropriate Phase One deponent because ***any*** of his involvement relating to the *Deepwater Horizon* incident . . . ***falls squarely within work-product protection*** as it was performed at the direction of counsel in preparation for litigation." Ex. C (Halliburton Response at 4) (emphasis added).  But when the time came for Halliburton to provide an affidavit to that effect, Halliburton instead conceded that "[u]pon further

---

[1] Nor has Halliburton produced critical post-incident "Displace" 3-D modeling results that Halliburton has never claimed to be privileged.  *See* Ex. G (10/24/2011 Halliburton letter promising to search for and produce "Displace" 3-D modeling results without raising any claim of privilege).  These post-incident "Displace" 3-D modeling results (and documents related to them) are the subject of a separate but related motion filed December 5, 2011.

4

investigation, *it does not appear that Mr. Chemali conducted any post-Incident activities at the direction of counsel*." Ex. H (10/4/2011 J. Martinez e-mail) (emphasis added). Notably, Halliburton offered no explanation why it mischaracterized the nature of Mr. Chemali's post-incident activities in the first place.

      **C.    BP Has Patiently But Unsuccessfully Attempted to Resolve These Issues Without Further Court Intervention.**

On November 9, 2011, BP wrote to Halliburton concerning the insufficiency of the Ferguson Affidavit to justify Halliburton's continued withholding of scores of post-incident investigative materials based solely on work product grounds. *See* Ex. I (11/9/2011 BP letter to Halliburton). In particular, BP specifically identified documents from Halliburton's privilege logs for which the Ferguson Affidavit failed to provide facts sufficient to substantiate Halliburton's claim of privilege. *See id.* at Attachment A (listing privilege log entries for which Ferguson Affidavit fails to provide evidence of privilege). BP waited for Halliburton's response, but no response came.

Thus, on November 22, 2011, BP wrote to Halliburton again concerning the insufficiency of the Ferguson Affidavit. *See* Ex. J (11/22/2011 BP e-mail to Halliburton). At BP's request, the parties held a meet-and-confer conference the following day on the subject. During that conference, BP explained that the Court's September 27 Order requires Halliburton to "provide affidavits specifically demonstrating that modeling or other post-incident activities were undertaken at the direction of counsel" (Ex. A at 4), and that satisfying that burden requires more than the generalized and conclusory assertions contained in the Ferguson Affidavit. Rather, Halliburton is required to provide sufficient facts to enable the Court and BP to assess whether documents still being withheld as work product are, in fact, entitled to such protection. At a minimum, BP explained that the Order requires Halliburton to explain (i) which Halliburton employees purportedly conducted inquiries; (ii) which lawyers were involved in directing those inquiries be conducted; (iii) for what specific purpose; and (iv) when such employees conducted this purportedly privileged work.

5

For its part, Halliburton disputed that it needed to provide an affidavit with greater specificity. Nevertheless, Halliburton promised to let BP know by Monday, November 28, 2011, whether it would agree to provide further evidentiary support to substantiate its assertions. *See* Ex. K (11/30/2011 BP e-mail to Halliburton).

Halliburton did not get back to BP on November 28, as promised. Thus, BP wrote to Halliburton once more on November 30, 2011, stating:

> During our meet and confer conference last Wednesday, you promised to let us know by Monday (November 28, 2011) whether or not Halliburton would agree to provide a supplemental affidavit to substantiate its assertions of work product immunity over the documents we identified in our November 9, 2011 letter. We have not heard back from you. Nor have you responded to our request for an agreement to continue to work through the issues in our November 9, 2011 letter. Accordingly, we assume that Halliburton is not willing to provide any further evidentiary support for its assertions of work product privilege pursuant to the Court's order, and, therefore, we will proceed to file our motion. If we are mistaken regarding Halliburton's intentions in any way, please let us know immediately.

Ex. K (11/30/2011 BP letter to Halliburton).

Five days later, on December 5, 2011, Halliburton wrote that the Ferguson Affidavit "more than sufficiently satisfies Judge Shushan's request for sworn testimony demonstrating that the activities relevant to the documents on HESI's privilege logs were undertaken at the direction of counsel." Ex. F (12/05/2011 Halliburton letter to BP). Halliburton, however, expressed its "understanding that BP will send an explanation of the specificity that BP thinks is required of HESI to satisfy Judge Shushan's September 27, 2011 Order." Ex. F at 3. Even though BP had already explained to Halliburton what is required under the case law and the September 27 Order during the parties' meet-and-confer conference nearly two weeks earlier, BP promptly wrote back to Halliburton on December 6, 2011, reiterating the evidentiary standards Halliburton is required to meet. *See* Ex. L (12/6/2011 BP Letter to Halliburton). BP was then forced to incur

6

the additional cost and expense to file this motion after Halliburton failed to provide the necessary evidentiary support for its work product assertions.

## ARGUMENT

I.  **Halliburton Was Required To Provide Evidence *Specifically* Demonstrating the Basis for Its Work Product Assertions.**

As set forth in BP's initial Motion to Compel, the work product doctrine provides qualified protection for "documents and tangible things prepared by or for a party or that party's representative in anticipation of litigation." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 318 (N.D. Tex. 2009). The party who seeks "the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation." *Carroll v. Praxair, Inc.*, No. 2:05-cv-307, 2006 WL 1793656, at *1 (W.D. La. June 28, 2006); *see also Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D. La. 1988).

A document is prepared in anticipation of litigation if "the primary motivating purpose" behind the document's creation "was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). "The mere assertion of a lawyer in [an] opposition memorandum or in a privilege log that materials were prepared in anticipation of litigation *is not evidence* sufficient to bear the burden." *Evans v. United Fire & Cas. Ins. Co.*, No. 06-6783, 2007 WL 2323363, at *4 (E.D. La. Aug. 9, 2007) (emphasis in original); *see also Nutmeg*, 120 F.R.D. at 510 (general allegation of work product is insufficient).

Rather, a showing must be made with sufficient facts provided by way of "***detailed affidavits***" or other evidence to enable the court to determine whether the documents constitute work product." *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 1995) (emphasis added). In other words, the party claiming the privilege must offer "a ***detailed description of the materials*** in dispute and state ***specific and precise reasons*** for their

7

claim of protection from disclosure." *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1212 (S.D. Ind. 1994) (emphasis added).[2]

Judged against this standard, the Ferguson Affidavit fails to satisfy Halliburton's burden of proof with respect to any of the documents identified in Attachment A to BP's November 9, 2011 letter.

## II. The Ferguson Affidavit Fails to Satisfy Halliburton's Burden.

The Ferguson Affidavit falls short of compliance with the Court's September 27 Order that Halliburton "provide affidavits *specifically* demonstrating that modeling or other post-incident activities were undertaken at the direction of counsel." Ex. A at 4 (emphasis added). ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████ That, quite simply, is not enough.

As illustrated by the examples below, Halliburton's failure to include "specific and precise" facts in the Ferguson Affidavit leaves the Court and BP in essentially the same position as they were in *before* the Court issued its September 27 Order: unable to fairly assess the propriety of Halliburton's privilege assertions over any document or categories of documents identified as work product in its privilege logs. ████████████████████████████ ████████████████████████████████████████

---

[2] *See also Evans*, 2007 WL 2323363 at *3 ("The party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege."); *Nutmeg Ins.*, 120 F.R.D. at 510 ("[T]he proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that the precise facts exist to support the claim of privilege."); *Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002) (rejecting work product claim where party asserting privilege relied solely on affidavit containing conclusory statements).

8

**Documents Related to Ronald Sweatman's Post-Incident Activities:** As the Court may recall, Halliburton has admitted that Mr. Sweatman was a member of a Halliburton team of engineers and technical personnel that investigated certain issues related to the Macondo incident *not* at the direction of counsel. *See* Ex. C (Halliburton Response at 2). Yet, Halliburton's privilege logs still include entries reflecting documents authored by, or sent to, Mr. Sweatman during the same time period that Mr. Sweatman was conducting admittedly ***non-privileged*** post-incident investigative activities. *Compare* Ex. E (Entry Nos. 14 and 17 in Halliburton's 19th Privilege Log withholding as work product e-mails sent to or from Mr. Sweatman during the June 2010 time period concerning post-incident activities) *with* Ex. M ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Caruso*, 1995 WL 384602, at *1 (proponent of privilege "must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege").

**Documents Related to Tommy Roth's Post-Incident Activities:** Similarly, Mr. Roth was the team leader of the group comprising Mr. Sweatman and other Halliburton engineers that conducted post-incident investigative activities not at the direction of counsel. *See* Ex. C (Halliburton Response at 2). Yet Halliburton's privilege logs continue to include numerous entries reflecting tests, analyses, and other post-incident activities conducted by Mr. Roth. *See, e.g.*, Ex. N (Halliburton's Second Am. 10th Privilege Log, Entry Nos. 1034, 1036, 1057, 1143, 1145, 1146, 1147, 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157, 1158, 1159, 1160, 1161, 1162, 1163, 1164, 1165, 1167, 1168, 1169, 1170, 1171, 1172, 1173, 1174, 1176, 1288, 1289, 1290, 1291); Ex. O (Halliburton's 24th Privilege Log, Entry Nos. 18, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████
████████████████████████████

**Documents Related to Anthony Badalamenti's Post-Incident Activities:** Like Messrs. Sweatman and Roth, Mr. Badalamenti was a member of the Halliburton team that conducted post-incident investigative activities that were done outside of counsel's direction. *See* Ex. C (Halliburton Response at 2). Nevertheless, Halliburton continues to withhold documents sent to, or created by, Mr. Badalamenti in the course of his post-investigative activities. *See, e.g.*, Ex. N (Halliburton's Second Am. 10th Privilege Log, Entry No. 38). ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Because Halliburton apparently contends that Messrs. Sweatman, Roth, Badalamenti, and others conducted both privileged and non-privileged post-incident activities and did so within the same general time periods, Halliburton bears the burden of providing appropriate facts adequate to enable the Court and BP to assess which post-incident activities are entitled to work product protection and which are not. *Pippenger*, 883 F. Supp. at 1212. This requires more than a generalized assertion by Halliburton's inside and outside lawyers that merely parrots the legal standard and states in conclusory fashion that the documents withheld by Halliburton reflect post-incident activities conducted at the direction of counsel. *See Disidore v. Mail Contractors of America, Inc.*, 196 F.R.D. 410, 413 (D. Kan. 2000) (party invoking work product privilege "has the burden to establish *all elements* of the immunity" and that burden "cannot be discharged by mere conclusory or ipse dixit assertions") (emphasis in original); *see also AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052, 2008 WL 4067437, at *13 (S.D.N.Y. Aug. 28, 2008) (rejecting work product claim where party's supporting declarations "mostly contain[ed] conclusory statements that do not refer to any particular document on its privilege or redaction log"); *Pennsylvania Dept. of Pub. Welfare v. United States*, No. 05-1285, 2006 WL 379628, at *27 (W.D. Pa. Dec. 21, 2006) (rejecting party's claims of work product where declarations failed to provide

sufficient detail to show attorney work product applied to documents withheld); *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540–41 (N.D. Ill. 2000) (holding conclusory, unsupported statement in affidavit of patent agent insufficient to support claim of work product privilege), *affirmed on reconsideration in other part*, 194 F.R.D. 624 (N.D. Ill. 2000).

Requiring Halliburton to meet its evidentiary obligation to provide "specific and precise facts" sufficient to substantiate its work product assertions is especially important here. *See Pippenger*, 883 F. Supp. at 1212. On multiple occasions, Halliburton has demonstrated a tendency to use the work product privilege to shield documents and witnesses that are properly subject to discovery. This tendency has been evidenced by (among other things):

- Halliburton's representation to this Court made for purposes of resisting Roland Chemali's deposition that "any of [Mr. Chemali's] involvement relating to the *Deepwater Horizon* incident ... was performed at the direction of counsel in preparation of litigation" (Ex. C at 4) when in fact there was apparently no truth to that statement given that Halliburton had to retract the statement when Halliburton was later put to the test of substantiating it with actual evidence. *See* Ex. H (10/4/2011 Halliburton e-mail admitting that "it does not appear that Mr. Chemali conducted any post-Incident activities at the direction of counsel").

- Halliburton's attempt to "clawback" documents related to disputed post-incident investigative activities on grounds of purported work product (*see* Ex. P (9/3/2011 Halliburton "clawback letter"), even though Halliburton was later unable or unwilling to confirm in writing that the disputed documents were, in fact, created at the direction of counsel in anticipation of litigation. *See* Ex. Q (9/13/2011 Halliburton letter); *see also* 9/16/2011 BP Reply to HESI Response to BP Motion re Investigative Materials at 3 [Doc. No. 4066].

- Halliburton's unwarranted assertion of work product immunity over hundreds of documents reflecting non-privileged post-incident investigative activities that Halliburton withheld from BP for the entire period of Phase One fact discovery. *See* Ex. D (Halliburton's Amended Privilege Logs removing over 736 entries as work product).

To be sure, given the rigorous demands of this litigation, some measure of error in the privilege determinations of the parties is to be expected. But Halliburton's repeated and deliberate invocation of work product immunity without justification goes beyond any reasonable expectation and serves only to underscore that BP has ***not received*** (and will not

11

timely receive) from Halliburton the non-privileged post-incident investigative materials to which BP is entitled under this Court's Order.

At this late stage in the proceedings, Halliburton has had many opportunities to conduct an appropriate privilege review and analysis of the documents and to collect and present evidence of "specific and precise" facts sufficient to validate its work product assertions. *See Pippenger*, 883 F. Supp. at 1212. Having failed to present such evidence when ordered to do so, Halliburton should not now be allowed to continue depriving BP of relevant documents and information for which Halliburton's claims of privilege remain unsubstantiated. *See Disidore*, 196 F.R.D. at 413 (party's failure to meet its burden "when the trial court is asked to rule upon the existence of the work product immunity is not excused [even if] the document is later shown to be one that would have been privileged if a timely showing had been made"). Accordingly, because the overly general Ferguson Affidavit lacks facts sufficient to enable the Court or BP to fairly assess whether any of the documents identified in Attachment A to BP's Motion are properly withheld based on work product, BP respectfully requests an order compelling Halliburton to produce all such documents without further delay.

## CONCLUSION

For all of the foregoing reasons, BP respectfully requests an order requiring Halliburton to produce the documents identified in Attachment A to BP's Motion to Compel Halliburton Energy Services, Inc. to Produce Documents Wrongfully Withheld.

Dated: December 7, 2011                                             Respectfully submitted,

                                                                    /s/ Don K. Haycraft
                                                                    Don K. Haycraft (Bar #14361)
                                                                    R. Keith Jarrett (Bar #16984)
                                                                    Liskow & Lewis
                                                                    701 Poydras Street, Suite 5000

New Orleans, Louisiana 70139-5099
504 -581-7979 (Tel.)
504 -556-4108 (Fax)

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985 (Tel.)

***Attorneys for BP Exploration & Production Company and BP America Production Company***

14

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of December, 2011.

                                            /s/ Don K. Haycraft

                                            Don K. Haycraft