# Exhibit C



**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

JENNY L. MARTINEZ - SHAREHOLDER
DIRECT DIAL:      214.939.4620
DIRECT FAX:      214.527.3119
JMartinez@GodwinRonquillo.com

September 8, 2011

**VIA E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
for the Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA  70130

  Re: In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179 – BP's Motion to Compel Duplicative Depositions and Documents HESI Has Already Agreed to Produce

Dear Judge Shushan:

  Halliburton Energy Services, Inc. ("HESI") submits this letter in response to BP Exploration and Production Inc. and BP America Production Co.'s ("BP") request that the Court compel the production of documents and witnesses related to an alleged "investigation" conducted by HESI.  The majority of BP's August 29, 2011 letter ("Letter" or "BP Letter") concerns issues that have already been resolved or are not in dispute.  Specifically, and as further detailed below, HESI previously produced documents, and has agreed to produce additional documents, related to any testing or modeling done by HESI employees not at the direction of counsel.  In addition, HESI has already begun revising its privilege logs to release and produce any inadvertently withheld documents.  Accordingly, the only issue to be decided is whether BP should be able to compel the depositions of three HESI employees: Marc Edwards, Ronald Sweatman, and Roland Chemali.  HESI maintains that those depositions would be duplicative of prior depositions and discovery in this MDL proceeding and are thus unnecessary and burdensome.

  Despite BP's attempt to create confusion regarding HESI's position, HESI has consistently maintained that there was no HESI "post-incident investigation" or "root cause analysis" for which HESI is claiming privilege.  *See* BP Ex. 18 at 2.  HESI clearly explained its position to BP on August 26, 2011:

Case 2:10-md-02179-CJB-DPC Document 4824-4 Filed 12/07/11 Page 3 of 8
Case 2:10-md-02179-CJB-SS Document 3939-4 Filed 09/08/11 Page 2 of 7

The Honorable Sally Shushan
September 8, 2011
Page 2

1. Documents relating to activities HESI undertook post-incident at the direction of counsel are privileged. HESI denies that it has waived any such privilege.

2. Documents relating to certain activities that were undertaken by individual employees of HESI, that were not done at the direction of counsel, and that are not covered by any separate privilege are not protected by the work product privilege. HESI has and continues to produce those documents pursuant to the previously agreed upon search terms.

3. There was no "official" HESI "post-incident investigation" or "root cause analysis" done at the direction of counsel or the company for which HESI is claiming privilege. Instead, HESI's claim of privilege relates to fact finding and analysis done specifically at the direction of counsel and in anticipation of litigation, or to matters involving direct communication with counsel. Again, HESI denies that it has waived any privilege attached to those activities.

See BP Ex. 18 at 2.

## I. BP Acknowledges that HESI has Already Agreed to Produce Documents Related to Non-Privileged Post-Incident Activities and to Revise Its Privilege Logs.

In various meet-and-confer sessions and correspondence, HESI has assured BP that HESI has produced or will produce any documents related to testing or modeling that was not done at the direction of counsel ("Non-Privileged Post-Incident Activities"). BP admits in its Letter that Halliburton has agreed to produce such materials and BP quotes HESI's August 29, 2011 statement that

> HESI has produced many documents concerning the activities undertaken by individual employees of HESI, not done at the direction of counsel, and not covered by any separate privilege ("Non-Privileged Post Incident Activities"). HESI will produce any additional documents, including those, if any, currently listed on HESI's privilege logs . . . .

BP Letter at 7 (quoting BP Ex. 19, Martinez email).

Such previously produced documents include those referenced in the May 22, 2010 email from Ronald Sweatman, in which the organization of a team to investigate certain issues related to the Macondo incident is contemplated. BP Ex. 1. HESI has explained to BP that this effort was initiated by a few individuals within HESI and not at the request of the company. *See* Ex. 1 (Roth Dep. 306:3-308:2). Documents relating to the "fact gathering" or analysis done by these HESI employees, including the emails referenced in Tommy Roth's testimony, have already been produced pursuant to previously agreed upon search terms. HESI has recently become aware of additional documents in Ronald Sweatman's possession, and HESI is reviewing and producing any responsive, non-privileged documents as quickly as possible.

The Honorable Sally Shushan
September 8, 2011
Page 3

## II. Because There Was No Company-Led or Sanctioned "Investigation," the Requested Depositions Would be Irrelevant and Redundant.

BP and Transocean conducted company-led and sponsored investigations which were released to the public as the companies' official version of the incident's root cause(s). Accordingly, individuals involved in those company-directed investigations were appropriately deposed. Alternatively, HESI has not conducted a comparable investigation. Any post-incident activities undertaken by individuals on their own accord cannot be considered a company-sanctioned or led "investigation." However, HESI has presented witnesses who have testified at length regarding their personal knowledge of any "fact finding" or "investigative" activities done on their own accord during the relevant timeframe. Given the HESI witnesses who have already been deposed regarding any post-incident activities, the depositions now requested by BP would be both irrelevant and unreasonably duplicative.

### A. No HESI-Sanctioned, Non-Privileged "Investigation"

Unlike BP and Transocean, HESI did not undertake a company-directed, non-privileged, post-incident investigation into the root cause(s) of the Macondo incident. *See* BP Ex. 18, Aug. 26 Hill email. Tommy Roth's initial "investigation," and the activities of others who gathered facts to help facilitate it, did not involve the type of root cause analysis that BP might dub an internal "investigation" similar to what BP purported to undertake with the Bly Report. HESI witnesses have been very clear about that point. *See* Ex. 2 (Roth Dep., 248:5-25); Ex. 3 (Probert Dep., 466:1-467:11); and Ex. 4 (Faul Dep., 193:8-21, 248:9-249:1, 572:11-25). Mr. Roth expressly testified that any "investigation" that he and his "presentation team" may have conducted pertained to gathering publicly available facts and other information for the purpose of preparing presentations to various governmental and quasi-governmental bodies. Ex. 5 (Roth Dep., 213:10-214:4; 250:25-252:5). The deposition testimony of Tim Probert and Ronnie Faul confirm the same. *See* Ex. 6 (Probert Dep., 341:15-342:25); Ex. 7 (Faul Dep., 193:8-21; 248:9-249:1; 388:9-389:2; 422:1-11). These documents and presentations have been produced, and Messrs. Roth, Probert and Faul answered numerous questions about them in their respective depositions.

Any privileged post-incident activity conducted by HESI – as opposed to Non-Privileged Post-Incident Activities conducted by various individuals – was done at the direction of counsel. In the BP Letter, BP acknowledges Mr. Probert's testimony that any investigation conducted by HESI into the Deepwater Horizon incident was conducted at the direction of counsel. The BP Letter also attaches a deposition excerpt in which Mr. Probert states, "I have no knowledge that there is one [an investigation], but to the extent there was one [] it would be under the direction of counsel." BP Ex. 13, Probert Dep. at 188:4-9. BP's assertion that HESI is "shielding" disclosure of a non-privileged, internal investigation (Letter at 11) is without basis in light of the documents produced by HESI and the testimony of HESI witnesses. For example, Mr. Faul testified that he personally requested certain post-incident testing for his own informational purposes, but not as part of any internal HESI investigation. Ex. 8 (Ronnie Faul Dep., 705:25-706:9). Both Ronnie Faul and Tim Quirk, the individuals personally knowledgeable about this post-incident testing, testified about it at length, and any available documents related to such

The Honorable Sally Shushan
September 8, 2011
Page 4

testing were produced by HESI without a claim of privilege or work product. Ex. 9 (Faul Dep., 299:16-300:16, 386:10-388:8, 705:25-706:1); Ex. 10 (Quirk Dep., 88:22-90:19, 120:12-121:19, 213:7-220:17, 499:19-502:23).

HESI has produced and will continue to produce documents not created at the direction of counsel in preparation for litigation or otherwise privileged. *See id.* In short, HESI is not alleging the work product privilege as to such documents, as evidenced by the documents it has produced. *See* BP Exs. 1, 5, 6, and 9.

### B. Requested Depositions Unreasonably Duplicative

BP's request to depose Marc Edwards, Ronald Sweatman, and Roland Chemali regarding their post-incident activities should be denied because the depositions of these individuals would be improper and unnecessary. No fewer than four HESI witnesses have testified openly about post-incident testing. *See* Ex. 11 (Dubois Dep., 99:13-104:4); Ex. 12 (Roth Dep., 346:10-347:15). Any additional depositions related to such activities would be solely for the purpose of harassment. The Court must limit discovery, even if it would otherwise be allowed, if it finds (as in this case) that "the discovery sought is unreasonably cumulative or duplicative[.]" FED. R. CIV. P. 26(b)(2)(C)(i); *see also Snoddy v. City of Nacogdoches*, 98 Fed. Appx. 338, 340-41 (5th Cir. 2004); *Cont. Ill. Nat. Bank & Trust Co. of Chicago v. Wooten (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1321 (5th Cir. 1989) (finding that the court did not abuse its discretion by quashing a subpoena for a deposition which was of limited probative value and largely cumulative).

Marc Edwards has no personal knowledge of events relating to the Macondo well or the *Deepwater Horizon* incident. Mr. Edwards is a senior executive over one of the two divisions of HESI. As a senior executive for HESI, his involvement in conversations regarding general processes and/or media releases is tangential at best to Phase One issues. Mr. Edwards did not participate in any way in any alleged internal HESI investigation. His only knowledge relating to this litigation results from briefings by Ronnie Faul, Anthony Badalamenti, and/or HESI's legal team regarding various third party investigations and reports.

Ronald Sweatman is also an inappropriate Phase One deponent. BP claims to need Mr. Sweatman's deposition because he was listed as a recipient on certain email communications and discussions with Tommy Roth regarding certain calculations and potential modeling. However, Mr. Roth has already testified about his discussions with Mr. Sweatman regarding the subject calculations, and Mr. Roth has further testified that any work Mr. Sweatman may have done on modeling was not part of any "team." As described *supra*, Mr. Sweatman's deposition would be duplicative of prior testimony, and unnecessary.

Roland Chemali is an inappropriate Phase One deponent because any of his involvement relating to the *Deepwater Horizon* incident, and specifically relating to analysis of Sperry data and hydrocarbon zones, falls squarely within work-product protection as it was performed at the direction of counsel in preparation for litigation.

The Honorable Sally Shushan
September 8, 2011
Page 5

### III. HESI is Entitled to Protect from Discovery any Testing Conducted in Anticipation of Litigation.

BP wants HESI to assist it "in understanding the criteria used to separate [] which materials will be produced and which materials will be withheld." HESI's criteria are as follows: Responsive documents related to any activities conducted not at the direction of counsel have been or will be produced; responsive documents related to HESI's preparations for trial, prepared at the direction of counsel and/or prepared by HESI's consulting experts, including in-house consulting experts, will continue to be withheld as immune from discovery under the work-product doctrine. HESI should not have to turn over its post-incident work product materials produced in connection with responding to the ongoing and exponentially growing litigation.

BP's suggestion that HESI's post-incident activities conducted at the direction of counsel are not privileged is unfounded. Letter at 10 (claiming that "HESI's investigation is not privileged, even if it was 'conducted at the direction of counsel'"). BP is correct that the involvement of counsel is not entirely dispositive of the "in anticipation of litigation" requirement of the work product doctrine. However, the direction of counsel is "a highly relevant factor that makes materials more likely to have been prepared in anticipation of litigation." *See In re Rainbow Marine Contrs., Inc.*, No. 09-4516, 2010 U.S. Dist. LEXIS 88008, at *7 (E.D. La. Jul. 30, 2010). Although HESI concedes that there was some initial, discoverable fact-gathering done by its employees for business purposes, subsequent efforts undertaken at the direction of both in-house and outside counsel after the commencement of litigation are entitled to work product protection. *See generally Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-CV-225, 2003 U.S. Dist. LEXIS 11818, at *22-23 (E.D. Tex. Jul. 9, 2003) (ordering production of initial internal investigation efforts that were a "precaution for the remote prospect of litigation," but finding that documents generated after "litigation was a near certainty" were protected by the work product doctrine).

BP's claim that the fact gathering and analysis performed by HESI employees at the direction of counsel was "in the ordinary course of business" is inapposite to relevant case law. Documents made in the ordinary course of business are those that "have been created without regard to whether litigation was expected to ensue." *See Elec. Data Sys. Corp*, 2003 U.S. Dist. LEXIS 11818, at *14-15. In evaluating the standard, courts consider "whether it is a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *See Piatkowski v. Abdon Callais Offshore, LLC*, No. 99-3759, 2000 U.S. Dist. LEXIS 12067, at *6-7 (E.D. La. Aug. 11, 2000). Documents created and materials prepared by HESI's in-house consulting experts in preparation for litigation are privileged. HESI has and will continue to produce documents related to Non-Privileged Post-Incident Activities, but HESI must withhold as privileged any work product created in preparation for this litigation.

Because HESI has already agreed to search for and produce any additional documents related to Non-Privileged Post-Incident Activities, no order compelling HESI to do the same is necessary. Similarly, because HESI has agreed to revise its privilege logs and produce any inadvertently withheld documents related to such Non-Privileged Post-Incident Activities, no

The Honorable Sally Shushan
September 8, 2011
Page 6

order compelling HESI to do so is needed.  The only remaining issue is whether BP may compel the depositions of three individuals whose testimony is irrelevant or has already been exhaustively covered by other deponents.  HESI therefore respectfully requests that the Court deny BP's motion in its entirety.

                              Best regards,

                              Jenny L. Martinez

cc:    Donald E. Godwin
        R. Alan York
        Bruce W. Bowman, Jr.
        Carolyn Raines

The Honorable Sally Shushan
September 8, 2011
Page 7

The following exhibits are included with this letter:

Exhibit 1 – Roth Dep., 306:3-308:2

Exhibit 2 – Roth Dep., 248:5-25

Exhibit 3 – Probert Dep., 466:1-467:11

Exhibit 4 – Faul Dep., 193:8-21, 248:9-249:1, 572:11-25

Exhibit 5 – Roth Dep., 213:10-214:4; 250:25-252:5

Exhibit 6 – Probert Dep., 341:15-342:25

Exhibit 7 – Faul Dep., 193:8-21; 248:9-249:1; 388:9-389:2; 422:1-11

Exhibit 8 – Ronnie Faul Dep., 705:25-706:9

Exhibit 9 – Faul Dep., 299:16-300:16, 386:10-388:8, 705:25-706:1

Exhibit 10 – Quirk Dep., 88:22-90:19, 120:12-121:19, 213:7-220:17, 499:19-502:23

Exhibit 11 – Dubois Dep., 99:13-104:4

Exhibit 12 – Roth Dep., 346:10-347:15