# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 <br><br> SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All Cases* | * * | Magistrate Judge Shushan |

## BP'S MEMORANDUM IN OPPOSITION TO TRANSOCEAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF BP'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RELATING TO ALLEGED CONTRACTUAL INDEMNITIES

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC  20002
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Patrick F. Philbin
Kirkland & Ellis LLP
655 Fifteenth Street N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,*
*and BP America Production Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.      BPAP HAS NO CONTRACTUAL DUTY TO INDEMNIFY TRANSOCEAN
        FOR POLLUTION LOSSES FROM GROSS NEGLIGENCE OR STRICT
        LIABILITY. ........................................................................................................ 2

        A.      The Plain Terms of the Drilling Contract Provide No Indemnity for Losses
                Resulting from Gross Negligence or Strict Liability. ................................. 2

        B.      By Its Plain Terms, Paragraph 25.1 Does Not Apply to Paragraph 24.2. .............. 5

II.     TRANSOCEAN CANNOT BE INDEMNIFIED FOR ITS GROSS
        NEGLIGENCE. .................................................................................................. 6

        A.      Maritime Law Prohibits Indemnification for Gross Negligence. ............................ 6

        B.      OPA Does Not Displace Public Policy Limits under Maritime Law. .................. 12

III.    UNDER SETTLED CONTRACT LAW, TRANSOCEAN'S CONDUCT CAN
        DISCHARGE BPAP FROM ANY PURPORTED DUTY TO INDEMNIFY. ................ 13

        A.      Any Indemnity Obligation Was Discharged Because Transocean's Actions
                Materially Increased the Risks to BPAP. .............................................. 13

        B.      Transocean's Multiple Breaches of the Drilling Contract Released BPAP
                from Any Duty To Indemnify. .......................................................... 14

IV.     PUBLIC POLICY PROHIBITS INDEMNIFICATION FOR FINES,
        PENALTIES, AND PUNITIVE DAMAGES. .................................................... 18

        A.      Indemnification for Fines and Penalties Is Contrary to Federal Law. ................... 18

                1.      Indemnity Agreements Seeking To Shift Financial Responsibility
                        for Clean Water Act Penalties Are Void as Contrary to Public
                        Policy. ....................................................................................... 18

                2.      No Statute Authorizes or Permits Enforcement of Prospective
                        Contractual Indemnities for CWA Penalties. ............................ 22

        B.      The Drilling Contract Does Not, and as a Matter of Public Policy Cannot,
                Provide Indemnification for Punitive Damages. ................................. 23

V.      BPAP HAS NO CURRENT DUTY TO COVER DEFENSE COSTS. ........................... 24

i

CONCLUSION .................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>CASES</u>

*A/S/J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co.*,
   256 F.2d 227 (2d Cir. 1958)................................................................................................16

*Acosta v. Honda Motor Co.*,
   717 F.2d 828 (3d Cir. 1983)................................................................................................27

*Ala. Great S. Ry. Co. v. Louisville & Nashville Ry. Co.*,
   224 F.2d 1 (5th Cir. 1955) ..................................................................................................12

*Albert Trostel & Sons Co. v. Canadian Imperial Bank of Comm.*,
   1984 WL 868 (N.D. Ill. Aug. 21, 1984) .............................................................................13

*Am. Star Ins. Co. v. Girdley*,
   19 F.3d 966 (5th Cir. 1994) ................................................................................................15

*Am. Stevedores, Inc. v. Porello*,
   330 U.S. 446 (1947)............................................................................................................16

*Babcock v. Cont'l Oil Co.*,
   792 F.2d 1346 (5th Cir. 1986) ..............................................................................................3

*Bank of Columbia v. Hagner*,
   26 U.S. 455 (1828)..............................................................................................................22

*Barton-Malow Co. v. Grunau Co.*,
   835 So. 2d 1164 (Fla. Dist. Ct. App. 2003) .......................................................................34

*Beazer E., Inc. v. Mead Corp.*,
   34 F.3d 206 (3d Cir. 1994)..................................................................................................18

*Becker v. Tidewater, Inc.*,
   586 F.3d 358 (5th Cir. 2009) ........................................................................................passim

*Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*,
   653 N.E.2d 1218 (Ohio Ct. App. 1995) .............................................................................28

*Biondi v. Beekman Hill House Apt. Corp.*,
   731 N.E.2d 577 (N.Y. 2000)..............................................................................................33

*Bishop v. GenTec Inc.*,
   48 P.3d 218 (Utah 2002) ......................................................................................................6

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Britt v. May Dep't Stores Co.*,
  1994 WL 585930 (E.D. Pa. Oct. 14, 1994) .............................................................................13

*Broadley v. Mashpee Neck Marina, Inc.*,
  471 F.3d 272 (1st Cir. 2006) .................................................................................................9

*Brock v. Coral Drilling,*
  477 F.2d 211 (5th Cir. 1973) .................................................................................................6

*Caldwell v. Enyeart*,
  1995 WL 807110 (6th Cir. Dec. 8, 1995) .............................................................................12

*Capitol Indem. Corp. v. United States*,
  71 Fed. Cl. 98 (Fed. Cl. 2006) .............................................................................................23

*Castleberry v. Goldom Credit Corp.*
  418 F.3d 1267 (11th Cir. 2005) ....................................................................................15, 35

*Chandris, Inc. v. Latsis*,
  515 U.S. 347 (1995) ..............................................................................................................14

*Chembulk Trading LLC v. Chemex Ltd.,*
  393 F.3d 550 (5th Cir. 2004) .................................................................................................8

*Chung v. Overseas Navigation Co.*,
  774 F.2d 1043 (11th Cir. 1985) ...........................................................................................27

*Corbitt v. Diamond M. Drilling Co.*,
  654 F.2d 329 (5th Cir. 1981) ...............................................................................3, 4, 20, 32

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*,
  697 F. Supp. 2d 213 (D. Mass. 2010) ...........................................................................13, 14

*Dana Corp. v. Fireman's Fund Ins. Co.,*
  169 F. Supp. 2d 732 (N.D. Ohio 1999) ................................................................................19

*Daughdrill v. Ocean Drilling & Exploration Co.*,
  665 F. Supp. 477 (E.D. La. 1987) ...........................................................................16, 33, 35

*Dixon Distrib. Co. v. Hanover Ins. Co.*,
  641 N.E.2d 395 (Ill. 1994) ...................................................................................................14

*Dohm & Nelke v. Wilson Foods Corp.*,
  531 N.E.2d 512 (Ind. Ct. App. 1988) ....................................................................................6

*Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*,
  787 F. Supp. 2d 590 (S.D. Tex. 2011) .............................................................................9, 24

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Estate of King v. Wagoner Cnty. Bd. of Cnty. Comm'rs*,
    146 P.3d 833 (Okla. Civ. App. 2006) ...................................................................34

*Fina, Inc. v. ARCO*,
    200 F.3d 266 (5th Cir. 2000) ...........................................................................5

*Foley Lumber Indus., Inc. v. Buckeye Cellulose Corp.*,
    286. F.2d 697 (5th Cir. 1961) ........................................................................22

*Foster Wheeler Energy Corp. v. An Ning Jiang MV*,
    383 F.3d 349 (5th Cir. 2004) ...........................................................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) .........................................................................................25

*Gen. Ins. Co. of Am. v. Fleeger*,
    389 F.2d 159 (5th Cir. 1968) .........................................................................19

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .........................................................................................32

*Globus v. Law Research Serv., Inc.*,
    418 F.2d 1276 (2d Cir. 1969)..........................................................................27

*Grand Trunk W. R.R. v. Auto Warehousing Co.*,
    686 N.W.2d 756 (Mich. Ct. App. 2004) ...................................................34, 35

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982) .........................................................................................27

*Griffin v. Tenneco Oil Co.*,
    625 So. 2d 1090 (La. Ct. App. 1993).............................................................12

*Hanks v. GAB Bus. Servs., Inc.*,
    644 S.W.2d 707 (Tex. 1982)...........................................................................24

*Harley-Davidson, Inc. v. Minstar, Inc.*,
    41 F.3d 341 (7th Cir. 1994) ......................................................................18, 19

*Harris v. Blockbuster Inc.*,
    622 F. Supp. 2d 396 (N.D. Tex. 2009) ...........................................................22

*Harris v. Howard Univ., Inc.*,
    28 F. Supp. 2d 1 (D.D.C. 1998);.....................................................................13

*Hiern v. St. Paul-Mercury Indem. Co.*,
    262 F.2d 526 (5th Cir. 1959) .........................................................................18

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
    2000 WL 423909 (E.D. La. Apr. 18, 2000) ..........................................................................9, 10

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
    269 F.3d 528 (5th Cir. 2001) ...................................................................................................4, 11

*Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry.*,
    890 S.W.2d 455 (Tex. 1994) ..........................................................................................................6

*Hudson v. Forest Oil Corp.*,
    2003 WL 21276385 (E.D. La. June 2, 2003) ..............................................................................19

*In re Firstline Corp.*,
    2007 WL 269086 (Bankr. M.D. Ga. Jan. 25, 2007) ...................................................................13

*In re Messina*,
    574 F.3d 119 (2d Cir. 2009) ...........................................................................................................6

*In re Needham*,
    354 F.3d 340 (5th Cir. 2003) ..........................................................................................................5

*In re Signal Int'l, LLC*,
    579 F.3d 478 (5th Cir. 2009) ..........................................................................................................6

*In re Torch, Inc.*,
    1996 WL 185765 (E.D. La. Apr. 16, 1996) ......................................................................5, 12, 23

*In re TT Boat Corp.*,
    1999 WL 1442054 (E.D. La. Sept. 8, 1999) ..........................................................................5, 12

*Indem. Ins. Co. of N. Am. v. Cal. Stevedore & Ballast Co.*,
    307 F.2d 513 (9th Cir. 1962) .......................................................................................................16

*Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*,
    913 N.Y.S.2d 29 (N.Y. App. Div. 2010) ..............................................................................34, 35

*Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*,
    376 U.S. 315 (1964) ..............................................................................................................14, 19

*IU North Am. Inc. v. Gage Co.*,
    2002 WL 1277327 (E.D. Pa. Jun. 4, 2002) ..................................................................................6

*Jackson v. Lloyd Brasileirs Patrimonio Nacional*,
    324 F. Supp. 556 (S.D. Tex. 1970) ..................................................................................20, 23, 24

*Joseph Thomas, Inc. v. Graham*,
    842 S.W.2d 343 (Tex. App. 1992) ...............................................................................................24

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Joslyn Mfg. Co. v. Koppers Co.*,
   40 F.3d 750 (5th Cir. 1994) ...................................................................................18

*Katun Corp. v. Clarke*,
   484 F.3d 972 (8th Cir. 2007) ..................................................................................17

*La Esperanza de P.R., Inc., v. Perez y Cia de P.R., Inc.*,
   124 F.3d 10 (1st Cir. 1997) .......................................................................................9

*Marquette Transp. Co. v. La. Mach. Co.*,
   367 F.3d 398 (5th Cir. 2004) ..................................................................................24

*Marquette Transp. Co. v. La. Mach. Co.*,
   2002 WL 1809092 (E.D. La. Aug. 7, 2002) .............................................................9

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,
   174 F.3d 653 (5th Cir. 1999) ....................................................................................4

*Meloy v. Conoco, Inc.*,
   504 So. 2d 833 (La. 1987) .................................................................................15, 34

*Mid-Continent Cas. Co. v. Swift Energy Co.*,
   206 F.3d 487 (5th Cir. 2000) ..................................................................................15

*Mobil Chem. Co. v. Blount Bros. Corp.*,
   809 F.2d 1175 (5th Cir. 1987) ................................................................................22

*Montauk Oil Transp. Corp. v. Tug "El Zorro Grande,"*
   54 F.3d 111 (2d Cir. 1995)......................................................................................29

*Morris v. Homco Int'l, Inc.*,
   853 F.2d 337 (5th Cir. 1988) ..................................................................................20

*Nagim v. N.J. Transit*,
   848 A.2d 61 (N.J. Super. Law Div. 2003) ..............................................................34

*Nat'l R.R. Pass. Corp. v. Consol. Rail Corp.*,
   698 F. Supp. 951 (D.D.C. 1988) ...............................................................................5

*New Eng. Tel. & Tel. v. Cent. Vt. Pub. Serv. Corp.*,
   391 F. Supp. 420 (D. Vt. 1975)...............................................................................23

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*,
   497 F. Supp. 2d 787 (E.D. La. 2007)..............................................................8, 11, 12

*Nw. Nat'l Cas. Co. v. McNulty*,
   307 F.2d 432 (5th Cir. 1962) ..................................................................................27

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Pac. Mut. Life Ins. Co. v. Haslip*,
499 U.S. 1 (1991) ................................................................................................32

*Pettus v. Grace Line, Inc.*,
305 F.2d 151 (2d Cir. 1962) ..........................................................................21, 23

*Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*,
78 S.W.3d 885 (Tenn. 2002) ................................................................................13

*Poole v. Elevating Boats, LLC*,
956 So. 2d 657 (La. Ct. App. 2007) .......................................................................7

*Ratti v. Wheeling Pittsburgh Steel Corp.*,
758 A.2d 695 (Pa. Super. Ct. 2000) .......................................................................5

*Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*,
484 F.2d 877 (7th Cir. 1973) ...............................................................................19

*Rollins v. Peterson Builders, Inc.*,
761 F. Supp. 918 (D.R.I. 1990) ............................................................................33

*Rosenbloom v. Flygare*,
501 N.W.2d 597 (Minn. 1993) .............................................................................33

*Royal Indem. Co. v. Sec. Guards, Inc.*,
255 F. Supp. 2d 497 (E.D. Pa. 2003) .....................................................................5

*Royal Ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) ...............................................................................9

*Ruehs v. Alliance Offshore, L.L.C.*,
2007 WL 275915 (E.D. La. Jan. 26, 2007) ..........................................................33

*S. Ry. v. Foote Mineral Co.*,
384 F.2d 224 (6th Cir. 1967) ...............................................................................12

*Sander v. Alexander Richardson Invs.*,
334 F.3d 712 (8th Cir. 2003) .................................................................................9

*Sargent v. Johnson*,
601 F.2d 964 (8th Cir. 1979) ...............................................................................34

*Schmahl v. Macy's Dep't Stores, Inc.*,
2010 WL 3061526 (E.D. Wash. July 30, 2010) ..............................................22, 23

*Smith v. Clark Equip. Co.*,
483 N.E.2d 1006 (Ill. App. Ct. 1985) .....................................................................6

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Smith v. Tenneco Oil Co.*,
803 F.2d 1386 (5th Cir. 1986) ................................................................................3

*Suire v. Lafayette City-Parish Consol. Gov't*,
907 So. 2d 37 (La. 2005) ...........................................................................34, 35

*Taracorp, Inc. v. NL Indus., Inc.*,
73 F.3d 738 (7th Cir. 1996) ....................................................................................4

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*,
106 S.W.3d 118 (Tex. App. 2002) ........................................................................24

*Todd Shipyards Corp. v. Turbine Serv., Inc.*,
674 F.2d 401 (5th Cir. 1982) ................................................................................8

*Transocean Enter., Inc. v. Ingalls Shipbuilding, Inc.*,
33 So. 3d 459 (Miss. 2010) ....................................................................................17

*Tug Ocean Prince, Inc. v. United States*,
436 F. Supp. 907, 926 (S.D.N.Y. 1977) ................................................................29

*Tull v. United States*,
481 U.S. 412 (1987) ......................................................................................25, 27

*U. S. Fid. & Guar. Co. v. Putfark*,
158 So. 9 (La. 1934) ..............................................................................................18

*U. S. Fire Ins. Co. v. Liberati*,
1989 A.M.C. 1436 (N.D. Cal. 1989) ....................................................................23

*United Consulting Eng'rs v. Board of Comm'rs of Hancock Cnty.*,
810 N.E.2d 351 (Ind. App. 2004) ........................................................................34

*United States for use of Wallace v. Flintco, Inc.*,
143 F.3d 955 (5th Cir. 1998) ................................................................................20

*United States v. Coastal States Crude Gathering Co.*,
643 F.2d 1125 (5th Cir. 1981) ..............................................................................25

*United States v. Hardage*,
985 F.2d 1427 (10th Cir. 1993) ............................................................................18

*United States v. Tex-Tow, Inc.*,
589 F.2d 1310 (7th Cir. 1978) ..............................................................................28

*United States v. Ward*,
448 U.S. 242 (1980) ..............................................................................................26

ix

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Vesta Ins. Co. v. Amoco Prod. Co.*,
  986 F.2d 981 (5th Cir. 1993) .................................................................................15

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
  348 U.S. 310 (1955).............................................................................................15

## STATUTES

33 U.S.C. § 1251 .........................................................................................................25

33 U.S.C. § 1321 .....................................................................................25, 26, 28, 31

33 U.S.C. § 2701 .........................................................................................................31

33 U.S.C. § 2710 ...........................................................................................2, 17, 31, 32

42 U.S.C. § 9607 .........................................................................................................17

46 U.S.C. § 596 ...........................................................................................................27

49 U.S.C. § 28103 .......................................................................................................18

Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 507, 33 U.S.C. § 1321 .....................31

## OTHER AUTHORITIES

42 C.J.S. *Indemnity* § 8 (2011) ...............................................................................20

42 C.J.S. *Indemnity* § 61 (2011) ......................................................................13, 16

3 Richard A. Lord, WILLISTON ON CONTRACTS § 7:7 (4th ed. 2011) ..........................16

8 Richard A. Lord, WILLISTON ON CONTRACTS § 19:20 (4th ed. 2011) ......................10

Restatement (Second) of Contracts § 195 ...................................................................10

Restatement (Second) of Contracts § 232 ...................................................................16

Restatement (Second) of Contracts § 237 ...................................................................14

1 Lee R. Russ, COUCH ON INSURANCE, § 1:7 (3d ed. 2011) .......................................11

14 Lee R. Russ, COUCH ON INSURANCE § 200:3 (3d ed. 2011) ..................................24

1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5-9 at 229 (4th ed. 2004) ...........5

Daniel B. Shilliday *et al.*, *Contractual Risk-Shifting in Offshore Energy Operations*,
  81 TUL. L. REV. 1579, 1604 (2007) ..................................................................7

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

S. Rep. No. 92-414, at 64 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3732 ...........................19

## INTRODUCTION

Transocean's ponderous filing is long on rhetoric but short on accurate analysis of both the contract language and the law defining the indemnity obligations of BP America Production Company ("BPAP").[1]   Transocean's lengthy efforts to rehabilitate its conduct are also a clear give-away that myriad factual disputes remain to be resolved at trial.   Contrary to Transocean's claims, facts about Transocean's conduct — including whether Transocean was grossly negligent, whether its misconduct increased BPAP's risks, and whether it breached the Drilling Contract — are relevant for limiting BPAP's indemnity obligations and thus preclude summary judgment on most of Transocean's claims.   BPAP's cross-motion focuses on two issues raised by Transocean on which summary judgment is appropriate — in BPAP's favor.   The Court can and should determine now, as a matter of law, that BPAP has no obligation to indemnify Transocean for either (i) statutory fines or penalties or (ii) punitive damages.[2]

Transocean's motion fails, and BP's cross-motion should be granted, for multiple reasons.   *First*, under the plain terms of the Drilling Contract, BPAP has no duty to indemnify Transocean for pollution losses arising from gross negligence or strict liability claims, such as for unseaworthiness or for Oil Pollution Act ("OPA") damages.   Paragraph 24.2 specifically addresses indemnification for pollution and applies to losses caused by "negligence or fault."   It does not extend to gross negligence or strict liability.   Transocean's theory for stretching the indemnity further hinges on a fallback definition in Paragraph 25.1 that expressly does not apply to indemnity provisions (like Paragraph 24.2) that contain their own specific limitations.

---

[1]   BPAP is the only BP entity that is a party to the Drilling Contract and has duties under it.   In any event, the arguments here apply to any BP entity alleged to have a duty to indemnify under the Drilling Contract.

[2]   In compliance with the Court's Order of November 16, 2011, Dkt. 4618, BPAP addresses solely "predominantly legal issues."   BPAP understands the Court's instruction not to address "predominantly factual issues," to mean that BPAP need not demonstrate through lengthy citations to the record that disputed issues of fact remain and that BPAP instead should address only the legal relevance of disputed factual matters.

*Second*, under maritime law, a contract to indemnify another for gross negligence is void as contrary to public policy.  Transocean's purported distinction between "exculpatory" and "indemnity" clauses has no support in maritime law and contradicts precedent from the Fifth Circuit and this Court.  OPA also does not aid Transocean.  By providing that "[n]othing *in this Act*" prohibits indemnities, 33 U.S.C. § 2710(a) (emphasis added), the statute says nothing about the separate maritime law prohibition against indemnifying grossly negligent conduct.

*Third*, under established principles of contract law, BPAP is discharged from any duty to indemnify if Transocean's conduct in causing the *Deepwater Horizon* accident materially increased risks to BPAP as indemnitor or breached the terms of the Drilling Contract.

*Fourth*, as a matter of public policy, federal law prohibits indemnification for fines, penalties, and punitive damages that are intended, through punishment, to influence the primary conduct of the party against whom they are levied.  This prohibition presents a pure issue of law foreclosing Transocean's claims for indemnification, and thus BP's cross-motion for partial summary judgment on these points should be granted.

*Fifth*, contrary to Transocean's claims, a contractual indemnitor's duty to defend simply requires paying attorneys' fees if the indemnitor is ultimately found to have a duty to indemnify.

## ARGUMENT

I. **BPAP HAS NO CONTRACTUAL DUTY TO INDEMNIFY TRANSOCEAN FOR POLLUTION LOSSES FROM GROSS NEGLIGENCE OR STRICT LIABILITY.**

A. **The Plain Terms of the Drilling Contract Provide No Indemnity for Losses Resulting from Gross Negligence or Strict Liability.**

Paragraph 24.2 of the Drilling Contract defines BPAP's duty to indemnify Transocean for pollution losses, and by its terms does not extend to pollution caused by Transocean's gross negligence or conduct for which Transocean is strictly liable, such as violations of OPA or the duty to provide a seaworthy vessel.  The paragraph states that BPAP will indemnify Transocean

2

"without regard for *negligence* of any party or parties and specifically without regard for whether the pollution . . . is caused in whole or in part by the *negligence or fault* of contractor."  Ex. 1, Drilling Contract ¶ 24.2 (emphases added).   By specifying that the indemnity covers "negligence" or "fault," the parties did not extend it to cover the distinct concepts of strict liability or gross negligence.  Where the parties have specified particular causes of loss that are covered by an indemnity, the indemnity cannot be expanded to cover *other* causes not within the natural meaning of the terms the parties have chosen.  *See, e.g.*, *Babcock v. Cont'l Oil Co.*, 792 F.2d 1346, 1350-51 (5th Cir. 1986); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981); *see also Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986) ("Indemnity agreements are to be strictly construed.").

        That is especially the case here, since other provisions of the Drilling Contract show that the parties knew how to specify gross negligence and strict liability when they intended to address them.  For example, Paragraph 23.1 specifically addresses obligations in the event of "gross negligence" or "willful misconduct" resulting in loss of or damage to the hole.  Ex. 1 ¶ 23.1.  Likewise, Paragraph 25.1 expressly includes losses arising from "strict liability" and "unseaworthiness."  *Id.* ¶ 25.1.  As this Court has explained, in these varying indemnity provisions, the parties "made specific, 'blow-by-blow' allocations of liabilities between themselves."  Dkt. 4588, Order and Reasons at 38.  The different terms the parties chose to specify the causes of loss that would be covered by the different indemnities must be given effect.  *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 656-57 (5th Cir. 1999); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744-45 (7th Cir. 1996).  Indeed, the importance of the different terms used in each paragraph of the indemnity provisions is buttressed by the Court's determination that the *expressio unius* canon of construction applies to

3

interpreting this contract.  Dkt. 4588 at 38-39.  Here, the *inclusion* of "negligence or fault" in Paragraph 24.2 necessarily *excludes* from the indemnity losses resulting from other causes not specifically included, such as "gross negligence," "strict liability," and "unseaworthiness."

That textual limitation in Paragraph 24.2 is further reinforced by the rule under maritime law that an "extraordinary obligation" in an indemnity must be "clearly express[ed] . . . in unequivocal terms."  *Corbitt*, 654 F.2d at 333.  An agreement to indemnify another even for simple negligence is an "extraordinary obligation" requiring a clear statement.  *Id.*  *A fortiori*, covering gross negligence or violation of duties giving rise to strict liability requires unequivocal language.  Gross negligence, after all, "is substantially and appreciably higher in magnitude than ordinary negligence."  *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531-32 (5th Cir. 2001).  Accordingly, this Court has held that "silence dictates . . . exclusion" of gross negligence from an indemnity, and specifically has held that terms similar to those in Paragraph 24.2 indemnifying in the event of the indemnitee's "fault or liability" do not cover gross negligence.  *In re Torch, Inc.*, 1996 WL 185765, at *8-9 (E.D. La. Apr. 16, 1996); *see also In re TT Boat Corp.*, 1999 WL 1442054, at *6 (E.D. La. Sept. 8, 1999); *Nat'l R.R. Pass. Corp. v. Consol. Rail Corp.*, 698 F. Supp. 951, 954, 972 (D.D.C. 1988) (indemnity that applied "irrespective of any negligence or fault" did not "clearly [and] unequivocally . . . extend to and cover the indemnitee's reckless, wanton, or willful misconduct"), *rev'd on other grounds,* 892 F.2d 1066 (D.C. Cir. 1990).[3]

And the Fifth Circuit, applying Delaware law, has held that the logic demanding "clear and unequivocal" language to cover negligence applies equally to strict liability.  *See Fina, Inc.*

---

[3]  *See also, e.g., Royal Indem. Co. v. Sec. Guards, Inc.*, 255 F. Supp. 2d 497, 503 (E.D. Pa. 2003); *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 705 (Pa. Super. Ct. 2000) (insisting on "clear and unequivocal" language for indemnity to cover gross negligence and rejecting the "notion that the mere use of the term negligence encompasses gross negligence").

*v. ARCO*, 200 F.3d 266, 271 (5th Cir. 2000).  By parity of reasoning, maritime law (which applies the same clear statement rule as Delaware for an indemnity to cover negligence) similarly requires unequivocal terms to cover strict liability claims (including both OPA damages and unseaworthiness).  *In re Needham*, 354 F.3d 340, 344 (5th Cir. 2003) (OPA); *Brock v. Coral Drilling,* 477 F.2d 211, 215 (5th Cir. 1973) (unseaworthiness).  Courts, however, have held that provisions like Paragraph 24.2 providing an indemnity "without regard to negligence or fault," do not meet that clear statement test.[4]  As a result, strict liability claims are not covered here.[5]

### B.     By Its Plain Terms, Paragraph 25.1 Does Not Apply to Paragraph 24.2.

To avoid the limited terms of Paragraph 24.2, Transocean relies entirely on Paragraph 25.1, which defines the phrase "shall protect, release, defend, indemnify and hold harmless" to provide an indemnity covering losses caused by, *inter alia*, gross negligence, strict liability claims, and unseaworthiness.  But Paragraph 25.1 makes clear that this definition is solely a fallback that applies "*[e]xcept* to the extent any such [indemnity] obligation is specifically limited to certain causes elsewhere in this contract."  Ex. 1 ¶ 25.1 (emphasis added).  Paragraph 24.2 has precisely such a specific limitation, as it provides an indemnity for pollution losses caused by "negligence or fault" without including other causes.  By its own terms, the fallback

---

[4]  *Houston Lighting & Power Co. v. Atchison, Top. & Santa Fe Ry.*, 890 S.W.2d 455, 458-59 (Tex. 1994) (clause that applies "whether such loss . . . [was] caused . . . by negligence . . . or otherwise" is not sufficient to reach strict liability); *see also Bishop v. GenTec Inc.*, 48 P.3d 218, 224-25 (Utah 2002) (indemnity covering negligence does not extend to strict liability because "we will not infer an intention to indemnify against other kinds of liability, including strict liability, where such intention is not clearly expressed"); *see generally IU North Am. Inc. v. Gage Co.*, 2002 WL 1277327, at *5 (E.D. Pa. Jun. 4, 2002); *Smith v. Clark Equip. Co.*, 483 N.E.2d 1006, 1010 (Ill. App. Ct. 1985); *Dohm & Nelke v. Wilson Foods Corp.*, 531 N.E.2d 512, 514 (Ind. Ct. App. 1988).

[5]  Moreover, providing a seaworthy vessel is the "absolute" and "nondelegable" duty of the vessel owner.  *In re Signal Int'l, LLC*, 579 F.3d 478, 498 (5th Cir. 2009); *see generally* 1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5-9 at 229 (4th ed. 2004).  And it is a matter particularly within the owner's control.  *Signal Int'l,* 579 F.3d at 498*; In re Messina*, 574 F.3d 119, 127 (2d Cir. 2009).  Indemnifying for breach of the duty to provide a seaworthy vessel is thus at least as extraordinary as indemnifying for simple negligence.  In addition, unseaworthiness does not depend on the fault or negligence of the vessel owner, *Signal Int'l*, 579 F.3d at 498, and therefore the terms "fault" or "negligence" cannot be read to indicate that an indemnity obligation covers unseaworthiness.  *Cf. Poole v. Elevating Boats, LLC*, 956 So. 2d 657, 679-80 (La. Ct. App. 2007).

definition in Paragraph 25.1 does not displace the more specific scope for the indemnity identified in Paragraph 24.2.

Transocean's effort to use Paragraph 25.1 to override the terms of Paragraph 24.2 is further flawed because it would render meaningless Paragraph 24.2's reference to "negligence or fault." Unlike Paragraph 24.2, some indemnity clauses in the contract have no terms specifying covered causes of loss (such as negligence). *See, e.g.*, Ex. 1 ¶¶ 21.1, 21.2. For these clauses, the fallback in Paragraph 25.1 defines the scope of the indemnity. In Paragraph 24.2, however, the parties specified that the indemnity covered "negligence or fault." Transocean would ignore that difference and apply Paragraph 25.1 just as if Paragraph 24.2 were silent, thereby making the reference to "negligence or fault" mere surplusage. That approach violates the "basic principle of contract interpretation in admiralty law" that a court must "interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.,* 393 F.3d 550, 555 (5th Cir. 2004); *see also Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); Dkt. 4588 at 35-36.

## II.     TRANSOCEAN CANNOT BE INDEMNIFIED FOR ITS GROSS NEGLIGENCE.

### A.     Maritime Law Prohibits Indemnification for Gross Negligence.

Under maritime law, a contract that purports to indemnify a party for its gross negligence is void as contrary to public policy. In *Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir. 2009), the Fifth Circuit made clear the rule that an indemnitor "escapes indemnity" if an indemnitee's actions "were grossly negligent" and rooted that result in the principle that "a waiver of liability for gross negligence is void." *Id.* at 367; *accord Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) (explaining that "[g]ross negligence [] will invalidate an

exemption from liability").[6]  Similarly, this Court has held that a party cannot be indemnified for its own gross negligence.  *See Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 2000 WL 423909 (E.D. La. Apr. 18, 2000) (Barbier, J.), *vacated and rem. on other grounds*, 269 F.3d 528, 531-32 (5th Cir. 2001) (reversing factual finding of gross negligence and remanding).  In *Houston Exploration*, a service contractor sought contractual indemnity from a well owner after a blowout.  *Id.* at *4-5.  This Court found that the contractor's gross negligence caused the blowout and as a result held that, under both maritime and Louisiana law, "the release and indemnity clause involved in this case is utterly invalid and of no effect whatsoever."  *Id.* at *7 & n.11.  As one recent commentary has summarized: "Courts sitting in admiralty are clear that it is against public policy for a party to a maritime contract to be indemnified for its own gross negligence."    Daniel  B.  Shilliday  *et al.*,  *Contractual Risk-Shifting in Offshore Energy Operations*, 81 TUL. L. REV. 1579, 1604 (2007).

To  avoid  the  straightforward  rule  applied  in  *Becker*,  *Houston Exploration*,  and  similar cases, Transocean seeks to import into maritime law a distinction between "exculpatory" clauses (which eliminate liability for injury *to the other contracting party*) and "indemnity" clauses (which shift the cost of injuries suffered by a *third party* from one contracting party to another).  TO Mem. at 31-35.  All of Transocean's cases are inapposite, however, because none applies maritime  law.    Indeed, Transocean concedes that it cannot cite a single maritime-law case endorsing its proposed distinction.  *Id.* at 33.  Worse, the proposed distinction is flatly contrary to

---

[6]  *See also Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007); *Marquette Transp. Co. v. La. Mach. Co.*, 2002 WL 1809092, at *18 (E.D. La. Aug. 7, 2002), *aff'd in part and rev'd in part on other grounds*, 367 F.3d 398 (5th Cir. 2004); *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590, 609-11 (S.D. Tex. 2011).

Maritime law in other circuits is in accord.  *See, e.g.*, *Broadley v. Mashpee Neck Marina, Inc.*, 471 F.3d 272, 274-75 (1st Cir. 2006); *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 717 n.3 (8th Cir. 2003); *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999); *La Esperanza de P.R., Inc., v. Perez y Cia de P.R., Inc.*, 124 F.3d 10, 19 (1st Cir. 1997).

maritime precedent from both the Fifth Circuit and this Court holding that gross negligence invalidates what Transocean calls "true indemnity provisions."

For example, in *Becker*, before ultimately finding that there had been no gross negligence, the court held that gross negligence would void an indemnity for third-party costs. The issue was whether one contracting party (Baker) would have to indemnify the other party (Tidewater) for injuries to an employee (Seth Becker) — a "third party" as Transocean uses that term.  The Fifth Circuit made clear the rule that "Baker escapes indemnity if Tidewater's actions leading to Seth's injuries were grossly negligent" and squarely grounded that result in the principle that "a waiver of liability for gross negligence is void."  586 F.3d at 367 (citing *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001)).

Transocean tries to avoid *Becker's* clear statement of the law with an elaborate argument about the parties' briefs and the absence of express terms covering gross negligence in their contract.  TO Mem. at 34-35 & n.j.  But the parties' briefs do not determine the law of this Circuit.  The law is set by the opinions of the Court of Appeals.  And the Fifth Circuit plainly did not focus its opinion on the contractual language.  Instead, it cited precedent for the principle that "a waiver of liability for gross negligence is *void*," 586 F.3d at 367 (emphasis added), and applied that principle to frame the rule for the case that an indemnitor "escapes indemnity" — including for injuries to third parties — where the indemnitee has been "grossly negligent."  *Id.*

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007), similarly held that a party cannot be indemnified for damage to third parties resulting from its own gross negligence.  Nexen Petroleum had contracted with Sea Mar to support offshore drilling operations.  After Sea Mar's vessel allided with the drilling vessel, Sea Mar claimed that Nexen Petroleum was contractually obligated to indemnify it for the damages

8

sustained by two third parties: the owner of the drilling vessel (Global) and the owner of the well hole (Nexen Offshore).  *Id.* at 799.  After noting that the "Fifth Circuit has also endorsed the view that under the general federal maritime law, a party may not contractually stipulate out of liability for its gross negligence," *id.,* the court endorsed the rule that "gross negligence is a defense to the enforcement of the exculpatory/indemnification clauses" and held that gross negligence "is another reason why Sea Mar is not entitled to summary judgment on Nexen Petroleum's claim for lost charter hire paid to Global [*i.e.*, Global's economic damages],[7] nor on Nexen Offshore's claim for damage to its well hole."  *Id.* at 799 n.33.

Lacking any support in maritime law,[8] Transocean advances a series of arguments in an attempt to induce this Court to become the first to adopt its proposed distinction in a maritime case.  None provides any basis for ignoring the rule recognized in *Becker* and similar cases.

*First*, Transocean overstates the extent to which the distinction between exculpatory and indemnity clauses has been adopted even in non-maritime cases.  Many jurisdictions reject the distinction and hold that a party cannot be indemnified for harm caused by its own gross negligence.[9]  And Transocean simply distorts treatises to manufacture endorsements for its proposed rule.  What Transocean presents as a quotation from Williston on Contracts (TO Mem. at 32) is actually the treatise *quoting* a New York case, not presenting the position of the treatise

---

[7]  The court made clear that Nexen Petroleum's claim for the charter hire reflected Global's economic damages and "is in the nature of an equitable subrogation to *Global's* rights."  497 F. Supp. 2d at 794 (emphasis in original).

[8]  The cases Transocean cites as "consistent" with its theory actually provide no support for it.  TO Mem. at 34 & n.112.  *TT Boat* and *Torch* each held that the indemnity contracts at issue did not cover gross negligence and thus neither case considered whether an indemnity for gross negligence would be void.  *Griffin v. Tenneco Oil Co.*, 625 So. 2d 1090 (La. Ct. App. 1993), a non-maritime case, also did not address public policy arguments.

[9]  *E.g., Caldwell v. Enyeart*, 1995 WL 807110, at *4 (6th Cir. Dec. 8, 1995) (unpub.) (Mich. law); *S. Ry. v. Foote Mineral Co.*, 384 F.2d 224, 226 (6th Cir. 1967) (Tenn. law); *Ala. Great S. Ry. Co. v. Louisville & Nashville Ry. Co.*, 224 F.2d 1, 4 (5th Cir. 1955); *CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, 697 F. Supp. 2d 213 (D. Mass. 2010) (Mass. law); *Harris v. Howard Univ., Inc.*, 28 F. Supp. 2d 1, 14-15 (D.D.C. 1998); *In re Firstline Corp.*, 2007 WL 269086, at *2-3 (Bankr. M.D. Ga. Jan. 25, 2007); *Planters Gin Co. v. Fed. Compress & Whse. Co., Inc.*, 78 S.W.3d 885, 893 (Tenn. 2002); *Britt v. May Dep't Stores Co.*, 1994 WL 585930, at *3 (E.D. Pa. Oct. 14, 1994); *Albert Trostel & Sons Co. v. Canadian Imp. Bank of Comm.*, 1984 WL 868, at *2 (N.D. Ill. Aug. 21, 1984) (Wisc. law).

itself.  The treatise explains that indemnification for gross negligence raises "difficult policy concerns" and that "courts are, with good cause, reluctant to encourage wrongdoing by permitting the wrongdoer to be indemnified for misconduct."  8 Richard A. Lord, WILLISTON ON CONTRACTS § 19:20 (4th ed. 2011).  The Restatement (Second) of Contracts also does not support Transocean.  After stating the general rule that contracts to exempt a party from liability for "reckless" conduct are void, a comment explains that this rule "does not apply to an agreement by a third person to indemnify a party against liability in tort." § 195, comment b.  Contrary to Transocean's claim, the reference to a "third person" does not include BPAP, because it is a *party* to the contract.  Instead, a "third person" means a person not a party to the contract, such as an insurer.  Indeed, the case Transocean cites interpreting comment b addresses insurers. *See Dixon Distrib. Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 401-02 (Ill. 1994).

*Second*, Transocean's purported policy justifications for its rule ignore the negative effects indemnity contracts have in reducing deterrence for grossly negligent behavior.  TO Mem. at 32.  According to Transocean, the "key difference" between an exculpatory clause and an indemnity clause is that the former leaves an injured party with no recovery, while the latter shifts the costs of paying third-party damages from one contractual party to another.  That oversimplified analysis fails to acknowledge that, by shielding a party from liability for gross negligence, both types of clauses reduce incentives that deter grossly negligent behavior.  Public policy is not "focused solely" on ensuring compensation; instead, it "seeks also to deter and punish grossly negligent conduct — goals that would be subverted by enforcing [an] indemnification agreement" as to third-party costs.  *CSX Transp. Inc. v. Mass. Bay Transp. Auth.*, 697 F. Supp. 2d 213, 227-28 (D. Mass. 2010) (Mass. law).  Maintaining such deterrence is a particularly acute concern in maritime law given the overarching policy of protecting seamen

from injuries.  *Cf. Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*, 376 U.S. 315,

324 (1964); *see generally Chandris, Inc. v. Latsis*, 515 U.S. 347, 354-55 (1995).

*Third*, Transocean claims that *insurance* contracts may cover gross negligence.  TO

Mem. at 34.  But insurance contracts and indemnity contracts are fundamentally different.  *See,*

*e.g.*, *Castleberry v. Goldom Credit Corp.* 418 F.3d 1267, 1271-73 (11th Cir. 2005); *Mid-*

*Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492-93 (5th Cir. 2000).[10]  Unlike an

ancillary indemnity in a commercial contract, the entire point of an insurance contract is to

provide protection for losses, and the insurer is paid to provide that protection.  Based on these

(and other) differences, courts generally approach such contracts with the diametrically opposing

rules that insurance contracts are interpreted in favor of coverage while indemnities are

construed narrowly.  *See, e.g.*, *Castleberry*, 418 F.3d at 1271-72.  Indeed, the Supreme Court has

highlighted differences between such contracts in the maritime context by holding that indemnity

contracts should be governed by uniform rules under maritime law, while marine insurance

contracts may be governed by the varying laws of the 50 States.  *Compare Wilburn Boat Co. v.*

*Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955), *with Am. Stevedores, Inc. v. Porello*, 330

U.S. 446, 456 (1947).[11]  Given that different legal regimes apply to insurance and indemnity

contracts in myriad situations, there is no tension between a rule that gross negligence might be

covered by insurance and the maritime law rule forbidding an indemnity for gross negligence.

Notably, permitting insurance to cover gross negligence would have more limited effects in

reducing incentives to avoid grossly negligent behavior.  Insurers spread risk among a pool of

---

[10]  *See also Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 985-86 (5th Cir. 1993); *Am. Star Ins. Co. v. Girdley*, 19 F.3d 966, 968 (5th Cir. 1994); *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 & n.10 (La. 1987); 1 Lee R. Russ, COUCH ON INSURANCE § 1:7 (3d ed. 2011).

[11]  *See also A/S/J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co.*, 256 F.2d 227, 229-231 (2d Cir. 1958); *Indem. Ins. Co. of N. Am. v. Cal. Stevedore & Ballast Co.*, 307 F.2d 513, 516-17 & n.3 (9th Cir. 1962).

their insureds.  An insurer will pass along the increased costs of covering risky behavior (like gross negligence) to its insureds through higher premiums, thereby deterring that behavior.  *Cf. Daughdrill v. Ocean Drilling & Exploration Co.*, 665 F. Supp. 477, 481 (E.D. La. 1987).  The same cannot be said of a contractual indemnity.

*Fourth*, whether BP and others enter into other drilling contracts that purport to indemnify for gross negligence is irrelevant.  *See* TO Mem. at 34.  Whatever terms any private party may include in contracts cannot change the rule under maritime law that indemnification for gross negligence is barred.[12]  And settlement agreements are even more irrelevant.  Settlements resolve litigation about losses caused by *past* conduct and thus do not present the same public policy concerns as indemnities that purport to insulate a party from the costs of its *future* grossly negligent acts.  *E.g.*, *Katun Corp. v. Clarke*, 484 F.3d 972, 977-78 (8th Cir. 2007).

### B.    OPA Does Not Displace Public Policy Limits under Maritime Law.

Transocean is also wrong in claiming that Congress has somehow authorized or endorsed contractual indemnity for gross negligence under section 2710 of OPA.  33 U.S.C. § 2710(a).  Section 2710(a) states in full that "Nothing in this Act prohibits any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this Act."  *Id.*  By making clear solely that the statute does not *prohibit* indemnity agreements, the section in no way provides an affirmative *authorization*.  And by saying that "[n]othing *in this Act*" prohibits indemnity agreements, it says nothing about prohibitions imposed by *other* law outside OPA, including maritime law.  The statute leaves that law untouched.

The cases Transocean cites either support BPAP or are inapposite.  TO Mem. at 25-26 nn. 81 & h.  Cases about a similar provision in CERCLA, *see* 42 U.S.C. § 9607(e)(1), recognize

---

[12]  Transocean is in a similar position to BPAP.  It is a party to various reciprocal indemnities for personal injury, but has recently argued that a Mississippi statute should void such indemnities.  *Transocean Enter., Inc. v. Ingalls Shipbuilding, Inc.*, 33 So. 3d 459 (Miss. 2010).

that the statute does not *authorize* indemnity agreements and apply state law to interpret and determine the validity of such agreements.[13]  Amtrak Reform Act cases are irrelevant.  As part of comprehensive regulation of certain railroads, that statute contains an affirmative authorization: "A provider of rail passenger transportation *may enter into contracts* that allocate financial responsibility for claims."  49 U.S.C. § 28103(b) (emphasis added).  OPA has no such language.

## III.   UNDER SETTLED CONTRACT LAW, TRANSOCEAN'S CONDUCT CAN DISCHARGE BPAP FROM ANY PURPORTED DUTY TO INDEMNIFY.

### A.   Any Indemnity Obligation Was Discharged Because Transocean's Actions Materially Increased the Risks to BPAP.

Transocean's bid for summary judgment holding BPAP liable to indemnify Transocean also fails under a settled rule of contract law.  As the Fifth Circuit has explained, it is a "general rule of law that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity."  *Hiern v. St. Paul-Mercury Indem. Co.*, 262 F.2d 526, 529 (5th Cir. 1959) (La. law; citing *U. S. Fid. & Guar. Co. v. Putfark*, 158 So. 9, 10 (La. 1934)); *see also Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 n.3 (5th Cir. 1968) (Tex. law); *Hudson v. Forest Oil Corp.*, 2003 WL 21276385, at *4 (E.D. La. June 2, 2003) (Barbier, J.) (maritime law).  For example, where an indemnitee bail bondsman failed to supervise a bailee to ensure his appearance, the Seventh Circuit held that the bondsman had "increased . . . risk under [an] indemnity agreement" with the underwriter of the bond and thereby "extinguished" its obligation.  *Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*, 484 F.2d 877, 879 (7th Cir. 1973); *see also, e.g.*, *Dana Corp. v. Fireman's Fund Ins. Co.,* 169 F. Supp. 2d 732, 743 (N.D. Ohio 1999); *cf.* 42 C.J.S. *Indemnity* § 61 (2011).

---

[13]   *See United States v. Hardage*, 985 F.2d 1427, 1433-34 (10th Cir. 1993) (declaring that CERCLA does not prohibit an indemnity agreement and applying Oklahoma law to determine whether an indemnity for negligence was valid); *Joslyn Mfg. Co. v. Koppers Co.*, 40 F.3d 750, 754-58 (5th Cir. 1994) (applying Louisiana law to determine whether party was obligated to indemnify for CERCLA liabilities); *Beazer E., Inc. v. Mead Corp.*, 34 F.3d 206, 210-15 (3d Cir. 1994); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994).

The rule is grounded in policy considerations related to the moral hazard that would be created if indemnities were applied without regard to the way an indemnitee increased risks of loss.  If that were the rule, indemnitees would be freed of a crucial incentive for avoiding risky behavior — including conduct that might injure numerous innocent third parties.  *See generally Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994).  Concern for such moral hazard is particularly acute here given that maritime law seeks to deter conduct that may result in injuries to seamen.  *See, e.g.*, *Or. Stevedoring*, 376 U.S. at 324.

Here, the PSC and BP have alleged (and the evidence developed to date shows) that Transocean greatly increased the risk of a blowout by numerous acts, including not properly monitoring the well, failing adequately to train its crew, and providing a vessel with poorly maintained equipment.  Because the facts relating to Transocean's conduct must be determined at trial, and will likely discharge BPAP from any indemnity, summary judgment is inappropriate.

**B.     Transocean's Multiple Breaches of the Drilling Contract Released BPAP from Any Duty To Indemnify.**

Transocean is also wrong in claiming that its breaches of the Drilling Contract provide no basis for relieving BPAP of its indemnity obligations.[14]  It is a bedrock principle of contract law that, as a general matter, "if one party to a contract breaches, there is no obligation for the non-breaching party to continue performance."  *United States for use of Wallace v. Flintco, Inc.*, 143 F.3d 955, 968 (5th Cir. 1998); *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 345 (5th Cir. 1988) (same); *see also* Restatement (Second) of Contracts § 237.  Contracts for indemnity are interpreted using the same principles of law that apply to all contracts.  *See, e.g.*, *Corbitt*, 654 F.2d at 332-33.  Thus, the Southern District of Texas applying maritime law to an indemnity contract has concluded that a breach of a material provision will release a party from its duty to

---

[14]  Transocean's breaches of the contract also bar its claim for unpaid invoices.  TO Mem. at 30.

indemnify.  *See Jackson v. Lloyd Brasileirs Patrimonio Nacional*, 324 F. Supp. 556, 562 n.9 (S.D. Tex. 1970); *see also Pettus v. Grace Line, Inc.*, 305 F.2d 151, 153-54 (2d Cir. 1962). Transocean's theories for avoiding that straightforward result are meritless.

*First*, Transocean distorts the contract's terms by claiming that BPAP agreed to indemnify Transocean despite any and all breaches of contract.  That theory again hinges on the fallback definition in Paragraph 25.1, which defines an indemnity to cover losses caused by "breach of contract" and "breach of representation or warranty."  But that definition does not apply "to the extent any such [indemnity] obligation is specifically limited to certain causes elsewhere in this contract."  Ex. 1 ¶ 25.1.  As explained above, the pollution indemnity in Paragraph 24.2 is limited by the specific reference to "negligence or fault" and does not extend to the other causes listed in Paragraph 25.1.  To give effect to the different choice of words in the two provisions, the more specifically defined indemnity provided in Paragraph 24.2 cannot be given the same broad scope as Paragraph 25.1.  Thus, where Transocean has breached a specific contractual obligation such as would give rise to a claim under the contract distinct from a breach of the general duty of care imposed by tort law, the indemnity does not apply.

Even if Paragraph 25.1 did apply, "breach of contract" in that paragraph is best read as referring to breach of *some other contract*, not the Drilling Contract itself.  If the parties meant the Drilling Contract, they would not have referred generically to a breach "of contract," but instead would have specified *"this* Contract" — the phrase used in the first clause of Paragraph 25.1 and elsewhere when they intended to indicate the Drilling Contract itself.  *See* Ex. 1 ¶ 25.1 (referring to limitations "elsewhere in *this* contract") (emphasis added); ¶ 25.3 (only signatories may sue "for any breach of *this* Contract") (emphasis added).  Moreover, a party generally "may not breach a contract and then rely on an indemnity provision to hold itself harmless." *Schmahl*

15

*v. Macy's Dep't Stores, Inc.*, 2010 WL 3061526, at *5 (E.D. Wash. July 30, 2010) (internal quotation marks omitted).  At a minimum, the Drilling Contract should not be construed to reach that counterintuitive result absent a clear statement of the parties' intent.  Paragraph 25.1's generic reference to "breach of contract" does not meet that standard.[15]

*Second*, Transocean claims that an indemnity is an "independent covenant" that cannot be discharged by breach of other terms.  TO Mem. at 29.  That misstates the law.  Breach of a given contract term excuses performance of mutually dependent terms, and the general rule is that all terms are mutually dependent unless a contrary intent is shown.[16]  Nothing in the law removes indemnity provisions from that elementary principle.  Where a term is breached that is material to an indemnity (and breach would prejudice the indemnitor's rights), that breach discharges the indemnity.  *See, e.g.*, *Mobil Chem. Co. v. Blount Bros. Corp.*, 809 F.2d 1175, 1181-82 (5th Cir. 1987); *New Eng. Tel. & Tel. v. Cent. Vt. Pub. Serv. Corp.*, 391 F. Supp. 420, 429-30 (D. Vt. 1975); *Schmahl*, 2010 WL 3061526, at *5; 42 C.J.S. *Indemnity* § 61 ("Any act or omission on the part of the indemnitee in breach of his or her duty under the contract of indemnity that increases the indemnitor's risk or liability, or otherwise injures his or her rights and remedies, ordinarily discharges the indemnitor from liability under the indemnity contract.");[17] *cf. In re Torch, Inc.*, 1996 WL 185765, at *10 (whether party had breached contract and whether that breach should discharge an indemnity raised factual questions precluding summary judgment).

---

[15]   Taken to its logical extreme, Transocean's view that breach of contract cannot discharge BPAP's duty to indemnify would make the contract void for lack of mutuality.  *See Mobil Chem. Co.*, 809 F.2d at 1182; *cf., e.g.*, *Harris v. Blockbuster Inc.*, 622 F. Supp. 2d 396, 398 (N.D. Tex. 2009); 3 Lord, WILLISTON ON CONTRACTS § 7:7.

[16]   *See, e.g.*, *Foley Lumber Indus., Inc. v. Buckeye Cellulose Corp.*, 286 F.2d 697, 700 (5th Cir. 1961) (quoting *Bank of Columbia v. Hagner*, 26 U.S. 455, 465 (1828)); *see also* Restatement (Second) of Contracts § 232.

[17]   *Cf. also Capitol Indem. Corp. v. United States*, 71 Fed. Cl. 98, 103 n.6 (Fed. Cl. 2006) (in context of surety contracts, if a party "breaches or alters any specific contractual provision so as to materially alter the risk to the surety . . . then the surety's obligations under its bond are discharged").  Even for insurance contracts, which are construed in favor of coverage, breach of a material term will discharge the insurer from its duty to indemnify the insured.  *See, e.g.*, *U. S. Fire Ins. Co. v. Liberati*, 1989 A.M.C. 1436, 1441-42 (N.D. Cal. 1989).

Applying these straightforward principles under maritime law, the Southern District of Texas has concluded that a shipowner's breach of contract "entitled [a] stevedore to rescind its express duty to indemnify the shipowner." *Jackson*, 324 F. Supp. at 562 n.9; *see also Pettus*, 305 F.2d at 153-54 (explaining that "a material breach of that contract by [the indemnitee] would preclude its enforcing the contract to recover indemnity").[18]

Transocean has not cited a single maritime case holding to the contrary. Instead, it relies primarily on a case applying Texas law.[19] *But see Energy XXI, GoM, LLC*, 787 F. Supp. 2d at 610-11 (where an "indemnity provision . . . must be interpreted pursuant to maritime law" the court "does not find the Texas cases persuasive"). In *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126 (Tex. App. 2002), however, the court found that the indemnitor had not even raised a factual issue showing that the indemnitee's actions had caused the loss in question. That holding undoubtedly influenced the court's conclusion that casting the indemnitee's actions as a breach of contract could not discharge the indemnitor's obligations. *See id.* at 127. In any event, to the extent the *Tesoro* court broadly suggested that indemnity covenants are *always* independent of all other terms of a contract, that statement contradicts basic principles of contract law and the specific maritime law holding in *Jackson*.

---

[18] In keeping with the holding in *Mobil Chemical*, the Fifth Circuit has indicated in a maritime case that breach of contract can discharge an indemnity. *See Marquette Transp. Co. v. La. Mach. Co.*, 367 F.3d 398, 408 (5th Cir. 2004). Although the court has observed that "*Marquette* does not hold that breach of a contract *necessitates* invalidation of an indemnity agreement included therein," *Becker*, 586 F.3d at 370 (emphasis added), that commentary does not undermine the rule applied in *Mobil Chemical* and noted in *Marquette* that, in an appropriate case (where the breach is material to the indemnity), breach of contract will discharge the duty to indemnify.

Transocean's reliance on the district court in *Becker* is misplaced. That court simply held that the flaws in the vessel at issue "d[o] not rise to the level of a breach of contract that would render the indemnity provisions of the contract null and void." 2007 WL 3231655, at *11. The court acknowledged that, under circuit law, "an indemnitee's obligations under a contract *are relevant* to the determination of its entitlement to indemnity." *Id.* (emphasis added).

[19] Transocean's other Texas cases are inapposite. *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982), does not discuss indemnities, and *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App. 1992), addresses statute of limitations issues, not discharge of an indemnity upon breach of contract.

IV.    **PUBLIC POLICY PROHIBITS INDEMNIFICATION FOR FINES, PENALTIES, AND PUNITIVE DAMAGES.**

   A.    **Indemnification for Fines and Penalties Is Contrary to Federal Law.**

      1.    **Indemnity Agreements Seeking To Shift Financial Responsibility for Clean Water Act Penalties Are Void as Contrary to Public Policy.**

Fundamental public policy concerns prohibit efforts to shift civil penalties under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), from one person to another by means of a contract entered into before the events giving rise to the penalties.  For penalties to serve their purpose of punishment and deterrence, they must be borne by the party responsible for the violation of the Act, not reassigned in advance by private agreement.

The Supreme Court has made clear that, "in addition to restitution," a central objective of civil penalties under the CWA is to provide for "retribution and deterrence," and that an "important characteristic" of the penalties is that they are designed to "exac[t] punishment."  *Tull v. United States*, 481 U.S. 412, 422, 423 n.7 (1987); *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000) (CWA penalties designed to "deter future violations"); *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1128 (5th Cir. 1981) (CWA penalties intended "to deter conduct causing spills").  The Department of Justice ("DOJ"), which is charged with enforcing the CWA, has similarly explained that the "punitive and deterrent value of Section 311(b)(7)(A) civil penalties is central to achieving the policies and purposes of the Clean Water Act:  the threat of significant civil penalties creates a strong incentive for industry to take precautions to prevent oil spills."[20]

The text of the very first provision in the section establishing the penalties confirms the primary focus of the scheme on preventing violations, rather than merely remediating, as it

---

[20]  Ex. 2, United States' Citations on the Interp. & Application of the Penalty Provisions in Section 311(b) of the Clean Water Act, at 4, *United States v. Citgo Petroleum Corp.*, No. 08-cv-893 (W.D. La. Apr. 11, 2011).

declares that the "policy of the United States" is that "there should be *no* discharges of oil" into the navigable waters or in connection with OCSLA activities.  33 U.S.C. § 1321(b)(1) (emphasis added).  The legislative history confirms the same focus.  The Senate Committee on Public Works explained that the discharge of pollutants "should be subject to penalty even though clean up is not practicable," because penalties would deter violations by ensuring that the "carrier or handler evaluates the risk of discharge and determines whether or not the potential[] penalty is worth the risk."  S. Rep. No. 92-414, at 64 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3732.

In claiming that the Supreme Court has held that CWA penalties are "primarily 'remedial'" and are "'analogous to traditional civil damages,'" TO Mem. at 36, Transocean distorts *United States v. Ward*, 448 U.S. 242 (1980).  *Ward* did not address whether CWA penalties are "primarily" remedial.  It addressed solely the question whether they are "so punitive" that they are criminal in nature and thus trigger the Fifth Amendment right against self incrimination.  *Id.* at 248-49.  It was only in that Fifth Amendment context that the Court described CWA penalties as "more analogous to traditional civil damages."  *Id.* at 254.  That limited holding cannot be used to undermine the Court's subsequent determination in *Tull* that the penalties are designed to "exac[t] punishment."  481 U.S. at 423 n.7.

Given the objectives of punishment and deterrence that underpin CWA penalties, settled principles dictate that an agreement purporting to shift the penalties is unenforceable.  Under other federal statutory schemes imposing similar penalties, contracts purporting to shift costs for the penalties are not enforceable because they undermine the policy embodied in the statute.  For example, the Eleventh Circuit has held that a contractual indemnity covering a penalty imposed for a violation of former 46 U.S.C. § 596 — which required prompt payment of seamen's wages — "would contravene the public policy implicit in the statute."  *Chung v. Overseas Navigation*

*Co.*, 774 F.2d 1043, 1052 (11th Cir. 1985).  Indemnification would "lessen[]" the "coercive effect" of the statutory penalty, *id.* at 1052-53, and thus weaken the "'punitive sanctions designed to deter negligent or arbitrary delays in payment,'" *id.* at 1052 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 572 (1982)).[21]  *See also Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) (where "[c]ivil liability under section 11 [of the Securities Act of 1933] was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence," it would be contrary to public policy to permit indemnification of underwriter).  Similarly, courts have held that indemnity agreements for penalties under the Clean Air Act ("CAA") are unenforceable because they undermine Congress's purpose of encouraging compliance with the law.  *See, e.g.*, *Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 653 N.E.2d 1218, 1223 (Ohio Ct. App. 1995).

The same principles apply here.  Permitting Transocean to avoid the costs of CWA civil penalties through a prospective contractual indemnity would undermine the deterrent purpose behind section 1321(b).  BP is aware of no court that has enforced such a contract.

Transocean relies solely on cases permitting *equitable* indemnification.  TO Mem. at 36-37.  But such cases are inapposite.  Equitable indemnification arises only *after* an incident has occurred and permits a party to recover penalties imposed on it from another party whose negligence caused the incident.  That result does not implicate the same public policy concerns that arise when a party is able to avoid the deterrent effect of future civil penalties by an *ex ante* contractual agreement.  Equitable indemnification apportions penalties between joint tortfeasors based on their relative culpability and thereby preserves the deterrent and punitive effect of the penalties by letting ultimate responsibility for the penalties follow culpability for the violation.

---

[21]  Analogous public policy constraints are reflected in the rule precluding enforcement of indemnities for future criminal fines and penalties.  *See, e.g.*, *Acosta v. Honda Motor Co.*, 717 F.2d 828, 838, n.14 (3d Cir. 1983); *Nw. Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 440 (5th Cir. 1962); *see also* 42 C.J.S. Indemnity § 8.

Even in the context of causes of action for indemnification, moreover, courts have declined to endorse indemnification for CWA penalties where it would undermine the deterrent function of the penalties.  *See United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1314-15 (7th Cir. 1978); *Tug Ocean Prince, Inc. v. United States*, 436 F. Supp. 907, 926 (S.D.N.Y. 1977), *rev'd in part on other grounds*, 584 F.2d 1151 (2d Cir. 1978).

The Second Circuit's decision in *Montauk Oil Transp. Corp. v. Tug "El Zorro Grande,"* 54 F.3d 111 (2d Cir. 1995), provides Transocean no support because it is a straightforward equitable indemnification case.  There, the owner of a barge subject to a fine sought to recover the fine from a tugboat owner that had "admitted that its negligence . . . caused the spill."  54 F.3d at 112.  The Second Circuit reasoned that if the spill "was caused by the negligence of [the tugboat], established equitable principles of admiralty and tort should provide Montauk with a third-party claim," *id.* at 114, and that the tugboat owner's "conceded negligence should make it responsible for the damage sustained by the barge owner, in this instance the civil penalty."  *Id.* Nothing in *Montauk* suggests that a responsible party may effectively escape civil penalties under the CWA by means of an indemnity contract entered into prior to an incident.

Finally, Transocean argues that indemnity for CWA penalties should be permitted because, in some circumstances, when a vessel subject to civil fines is being held in a port, a bond or surety can be posted to release the vessel.  TO Mem. at 40.  The single case Transocean cites (from 1944 and concerning penalties for stowaways under the Immigration Act of 1924) is inapt.  That the *ex post* provision of a bond or surety (which preserves deterrence by maintaining recourse against the party liable for the fines) may be permitted in that situation says nothing about the validity of an *ex ante* agreement to shift responsibility for CWA penalties.

### 2.    No Statute Authorizes or Permits Enforcement of Prospective Contractual Indemnities for CWA Penalties.

Nothing in the CWA or in OPA allows a contractual indemnity that applies to CWA penalties.  *First*, CWA section 1321(h) is inapplicable here.  That section states that "[t]he liabilities established by" section 1321 "shall in no way affect any rights which . . . [an] operator of a vessel . . . may have against any third party whose acts may in any way have caused or contributed to" the spill.  33 U.S.C. § 1321(h).  But as Transocean concedes (TO Mem. at 37), section 1321(h) does not apply here because it is expressly displaced by OPA section 2002(a).  Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 507, 33 U.S.C. § 1321 *note*.  That provision cross-references section 1321(h) and declares that it "shall not apply with respect to any incident for which liability is established under" OPA.  In this case, there is no dispute that the events at the *Deepwater Horizon* beginning April 20, 2010 constitute an "incident," 33 U.S.C. § 2701(14), subject to strict liability under OPA, *id.* § 2701(17).[22]

*Second*, OPA section 2710 does not authorize indemnification of CWA penalties.  Section 2710 merely disclaims any intent to prohibit indemnities *for liabilities imposed by OPA*.  It says only that "[n]othing *in this Act*" (the OPA) prohibits an indemnity agreement "for any liability *under this Act*."  33 U.S.C. § 2710(a) (emphases added).  It says nothing at all about indemnities covering penalties imposed by *other* statutes, like the CWA.  In addition, section 2710 states solely that nothing in OPA "*prohibits*" an indemnity.  The absence of a prohibition is not equivalent to an authorization.  *See supra* Part II.B.

---

[22]   Even absent OPA section 2002(a), CWA section 1321(h) is best read as extending only to the remedial "liabilities" established in sections 1321(f) and (g) — *i.e.*, "liability" for the "actual costs" of cleanup and removal, § 1321(f), and the "third party liability" for the costs of removal caused solely by an act or omission of a third party, § 1321(g).  The word "liabilities" does not extend to the *penalties* in section 1321(b)(7).  Congress has authorized indemnification only where it is consistent with the goals of the statutory scheme to prevent oil pollution and where the associated consequence for a violation is remedial as opposed to punitive in nature.

B.      **The Drilling Contract Does Not, and as a Matter of Public Policy Cannot, Provide Indemnification for Punitive Damages.**

Nothing in the indemnity provisions of the Drilling Contract purports to include punitive damages.  Ex. 1 ¶ 21.1-25.3.  When the parties sought to address punitive damages, they did so expressly, as in Paragraph 34.1, which purports to waive various claims for damages, including "punitive" damages.  *Id.* ¶ 34.1.  The absence of similar language in the indemnity provisions means that punitive damages are not within the scope of the indemnities.

In addition, as explained in Section I.B., maritime law requires express and unequivocal terms for an indemnity to extend to an "extraordinary obligation."  *Corbitt*, 654 F.2d at 333.  Indemnifying another party for punitive damages is certainly an "extraordinary obligation," since such damages are intended as retribution and deterrence against a specific defendant.  *E.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).  Admiralty courts require a clear statement to show an intent to shift punitive damages and thus have held that, where an "indemnity provision does not specify that it encompasses punitive damages, the Court will not enforce the indemnity obligation with respect to any such damages." *Ruehs v. Alliance Offshore, L.L.C.*, 2007 WL 275915, at *1 (E.D. La. Jan. 26, 2007).

Even if the indemnity clauses in the Drilling Contract could be stretched to cover punitive damages, they would be unenforceable as contrary to public policy under maritime law.  As another judge of this Court has explained, permitting a contractual indemnity to shift punitive damages would frustrate the very purpose behind the damages:

> [I]n the case at bar we are confronted with contractual indemnification.  No clearer example of a situation which would subvert the purposes of awarding punitive damages can be imagined than to permit such indemnification.  To require a party, without recompense, to shoulder the burden of egregious conduct by another and hence permit that other to avoid punitive damage liability would make a mockery of the very concept.  In situations where the defendant's conduct is so extreme as to merit an award of punitive damages, the cost of such must be

23

placed upon the party responsible, and not transferred to a party innocent of any wrongdoing.

*Daughdrill v. Ocean Drilling & Exploration Co. (ODECO)*, 665 F. Supp. 477, 481-82 (E.D. La. 1987); *see also Rollins v. Peterson Builders, Inc.*, 761 F. Supp. 918, 929 (D.R.I. 1990).[23]

## V.    BPAP HAS NO CURRENT DUTY TO COVER DEFENSE COSTS.

Even if BPAP might ultimately be found liable to indemnify Transocean for some losses, BPAP has no obligation *now* to undertake the costs of Transocean's defense.  The duty to defend requires an indemnitor simply to pay attorneys' fees if, at the conclusion of trial, the indemnitee is found entitled to indemnification.  The general rule is that "an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss," and as a result, a "cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid."  *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987); *see also Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 51 (La. 2005) ("As this lawsuit is still pending, and no determination of liability has been made, the court of appeal erred in finding that [indemnitor] owed a duty to defend, or pay for defense costs . . . .").[24]

This rule is grounded in settled differences between insurance and indemnity contracts. *See supra* Part II.A.  An insurer's duty to defend is distinct from its duty to indemnify and generally is triggered if the allegations in a complaint indicate the potential for liability under an insurance policy.  *E.g.*, 14 Lee R. Russ, COUCH ON INSURANCE § 200:3 (3d ed. 2011).  A contractual indemnitor's duty to defend, in contrast, generally is co-extensive with its duty to

---

[23] Non-maritime cases also prohibit indemnities for punitive damages.  *E.g.*, *Biondi v. Beekman Hill House Apt. Corp.*, 731 N.E.2d 577, 579 (N.Y. 2000); *Rosenbloom v. Flygare*, 501 N.W.2d 597, 602 (Minn. 1993).

[24] *See also, e.g.*, *Barton-Malow Co. v. Grunau Co.*, 835 So. 2d 1164, 1167 (Fla. Dist. Ct. App. 2003); *United Consulting Eng'rs v. Board of Comm'rs of Hancock Cnty.*, 810 N.E.2d 351, 354 (Ind. App. 2004); *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756 (Mich. Ct. App. 2004); *Sargent v. Johnson*, 601 F.2d 964, 967 (8th Cir. 1979) (Minn. law); *Nagim v. N.J. Transit*, 848 A.2d 61, 70 (N.J. Super. Law Div. 2003); *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010); *Estate of King v. Wagoner Cnty. Bd. of Cnty. Comm'rs*, 146 P.3d 833, 845-46 (Okla. Civ. App. 2006).

indemnify and is triggered only if an indemnified loss is established at the end of a case. *E.g.*, *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 762-63 (Mich. Ct. App. 2004); *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010). For example, if an indemnity does not cover losses arising from negligence, a finding that the indemnitee was negligent will mean that the indemnitor has no duty to indemnify *and* no duty to pay for defense costs. *Suire*, 907 So. 2d at 51; *Inner City*, 913 N.Y.S.2d at 30. The more limited duty imposed on contractual indemnitors makes sense given that the entire purpose of insurance policies is to protect insureds from harm, provide for a defense, and spread risk, while contractual indemnities are merely incidental to other businesses of the parties (such as operating oil wells). *E.g.*, *Castleberry*, 418 F.3d at 1272-73; *Daughdrill*, 665 F. Supp. 481-82.

In addition, the plain terms of the Drilling Contract confirm that BPAP's duties to indemnify and defend are co-extensive. The indemnity clauses state that the indemnitor "shall protect, release, defend, indemnify, and hold . . . harmless" the indemnitee. *E.g.*, Ex. 1, ¶ 24.2. That language treats the duties to defend and indemnify identically, without giving either one a broader scope than the other. By pointing to starkly different terms in *other* contracts that BP made with *other* parties (TO Mem. at 28), Transocean proves BPAP's point. If BPAP and Transocean had intended a broader duty like the one in the contracts Transocean invokes, they could have used the sort of language used in those contracts. But they chose not to. Instead, the Drilling Contract makes the duties to defend and to indemnify parallel.

## CONCLUSION

Transocean's motion should be denied. The Court should grant BP's cross-motion and hold that BPAP has no duty to indemnify Transocean for statutory penalties or punitive damages.

Date:  December 7, 2011     Respectfully submitted,

           /s/ Don K. Haycraft
           Don K. Haycraft (Bar #14361)
           R. Keith Jarrett (Bar #16984)
           Liskow & Lewis
           701 Poydras Street, Suite 5000
           New Orleans, Louisiana 70139-5099
           Telephone: (504) 581-7979
           Facsimile: (504) 556-4108

           and

           Richard C. Godfrey, P.C.
           J. Andrew Langan, P.C.
           R. Chris Heck
           Kirkland & Ellis LLP
           300 North LaSalle Street
           Chicago, IL 60654
           Telephone: (312) 862-2000
           Facsimile: (312) 862-2200

           Patrick F. Philbin
           Kirkland & Ellis LLP
           655 Fifteenth Street N.W.
           Washington, DC  20005
           Telephone: (202) 879-5000
           Facsimile: (202) 879-5200

           Robert C. "Mike" Brock
           Covington & Burling LLP
           1201 Pennsylvania Avenue, NW
           Washington, DC 20004-2401
           Telephone: (202) 662-5985

           Joel M. Gross
           Arnold & Porter, LLP
           555 12th Street N.W.
           Washington, DC  20002
           Telephone: (202) 942-5705
           Facsimile: (202) 942-5999

           *Attorneys for BP p.l.c., BP Exploration &*
           *Production Inc., and BP America Production*
           *Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of December, 2011.

/s/ Don K. Haycraft
Don K. Haycraft