# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All Cases* | * * | Magistrate Judge Shushan |

## BP'S OPPOSITION TO MOTION OF CAMERON INTERNATIONAL CORPORATION FOR SUMMARY JUDGMENT DENYING ALL CLAIMS ASSERTED BY TRANSOCEAN AND DECLARING OBLIGATION OF TRANSOCEAN TO INDEMNIFY AND DEFEND CAMERON

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Patrick F. Philbin
Kirkland & Ellis LLP
655 Fifteenth Street N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,*
*and BP America Production Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.      CAMERON HAS NO INDEMNITY CLAIM DIRECTLY AGAINST BP ...................... 4

II.     THE PLAIN TERMS OF THE CONTRACTS DO NOT REQUIRE
TRANSOCEAN TO INDEMNIFY CAMERON FOR POLLUTION COSTS. ................. 5

III.   ANY INDEMNITY OBLIGATION IS LIMITED BY THE CONTRACTS AND
FEDERAL LAW. ........................................................................................................ 8

        A.     The BOP Purchase Order Terms and Conditions Do Not Include
Indemnification for Cameron's Negligence, Gross Negligence, or Strict
Liability. ........................................................................................................... 8

        B.     Transocean's Obligation To Indemnify Cameron Can Be No Broader
Than BPAP's Obligation To Indemnify Transocean. ....................................... 10

        C.     Public Policy Prohibits Transocean From Indemnifying Cameron For
Certain Conduct And Categories of Damages. ................................................. 10

                1.     Maritime Law Prohibits Indemnification For Gross Negligence. ............. 11

                2.     By Its Own Terms, OPA Does Not Displace Any Public Policy
Limits of Maritime or Other Federal Law. ................................................. 14

                3.     Cameron's Arguments Against Applying *Hiern* and *Fleeger*
Contradict The Fifth Circuit's Holdings. ................................................... 14

                4.     If Transocean Cannot Obtain Indemnity from BPAP, It Has No
Duty To Indemnify Cameron. .................................................................... 16

CONCLUSION ................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*Babcock v. Cont'l Oil Co.*,
   792 F.2d 1346 (5th Cir. 1986) ...................................................................................7

*Becker v. Tidewater, Inc.*,
   586 F.3d 358 (5th Cir. 2009) ...........................................................................passim

*Corbitt v. Diamond M. Drilling Co.*,
   654 F.2d 329 (5th Cir. 1981) ............................................................................6, 7, 9

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*,
   697 F. Supp. 2d 213 (D. Mass. 2010) ......................................................................14

*Davis & Sons, Inc. v. Gulf Oil Corp.*,
   919 F.2d 313 (5th Cir. 1990) ...................................................................................5

*Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*,
   787 F. Supp. 2d 590 (S.D. Tex. 2011) .....................................................................13

*Gaspard v. Offshore Crane & Equip., Inc.*,
   106 F.3d 1232 (5th Cir. 1997) ..................................................................................9

*Gen. Ins. Co. of Am. v. Fleeger*,
   389 F.2d 159 (5th Cir. 1968) ............................................................................16, 17

*Hardy v. Gulf Oil Corp.*,
   949 F.2d 826 (5th Cir. 1992) ...................................................................................9

*Hiern v. St. Paul-Mercury Indem. Co.*,
   262 F.2d 526 (5th Cir. 1959) ............................................................................16, 17

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
   269 F.3d 528 (5th Cir. 2001) ..................................................................................12

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
   2000 WL 423909 (E.D. La. Apr. 18, 2000) .......................................................13, 15

*In re Cossu*,
   410 F.3d 591 (9th Cir. 2005) ............................................................................10, 11

*Ingalls Shipbuilding v. Fed. Ins. Co.*,
   410 F.3d 214 (5th Cir. 2005) ...................................................................................6

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*M/V Little Kelly, LLC v. Burlington Res. Oil & Gas Co.*,
  2011 WL 3300375 (E.D. La. Aug. 1, 2011) ...............................................................6

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,
  174 F.3d 653 (5th Cir. 1999) ...............................................................10

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*,
  497 F. Supp. 2d 787 (E.D. La. 2007)...............................................................13

*Smith v. Tenneco Oil Co.*,
  803 F.2d 1386 (5th Cir. 1986) ...............................................................7, 9

*Taracorp, Inc. v. NL Indus., Inc.*,
  73 F.3d 738 (7th Cir. 1996) ...............................................................10

*U. S. Fid. & Guar. Co. v. Putfark*,
  158 So. 9 (La. 1934) ...............................................................16

## STATUTES

33 U.S.C. § 2710 ...............................................................15, 16

## OTHER AUTHORITIES

41 Am. Jur. 2d *Indemnity* § 27 ...............................................................11

Restatement (Second) of Contract § 183...............................................................18

Restatement (Second) of Contract § 184...............................................................18

## INTRODUCTION

Cameron's motion for summary judgment fundamentally misreads Cameron's own contracts with Transocean, the Drilling Contract between BP America Production Company ("BPAP") and Transocean Holdings LLC, and maritime law regarding indemnities. The plain terms of both Cameron's contracts with Transocean and the Drilling Contract demonstrate that Cameron is not entitled to any indemnity from Transocean for pollution claims. In addition, well-established public policy limitations bar Cameron from being indemnified for its own gross negligence (which could be determined only after trial on the merits) and for fines and penalties. Cameron's efforts to cobble together a sweeping indemnity for itself suffer from a host of flaws.

*First*, it is important to note what is *not* at issue here. Cameron has not made any claim directly against any BP entity. No BP entity has a contract with Cameron relating to the Macondo well or the *Deepwater Horizon* incident, nor can Cameron claim third party beneficiary status under any BP contract. Accordingly, Cameron filed its motion for summary judgment solely against Transocean. BP has been dragged into the dispute between Cameron and Transocean solely because the contract provision on which Cameron relies, to the extent it provides an indemnity, expressly limits Transocean's obligation to indemnify Cameron for pollution costs to apply only "[i]n the event" that Transocean itself is indemnified by its customer — here BPAP. Cameron thus seeks to establish that Transocean can pass the costs of indemnifying Cameron on to BPAP via an indemnity under the Drilling Contract. But Cameron's motion against Transocean is not the place for determining whether Transocean is entitled to indemnification from BPAP for contractual obligations to indemnify third parties like Cameron. If Transocean had wanted a judgment on that aspect of the Drilling Contract, it should have included that issue in its motion for summary judgment against BPAP.

*Second*, the Cameron-Transocean contracts and the Drilling Contract establish that Cameron is not entitled to indemnity from Transocean for pollution or contamination costs.  As Transocean has explained in its own Opposition to Cameron's Motion for Summary Judgment, Dkt. 4778, the conditional terms of the provision on which Cameron relies simply do not create a duty for Transocean to indemnify Cameron for pollution costs.  That in itself forecloses any indemnity that might be passed on by Transocean to BPAP.  In addition, the Cameron-Transocean contracts are clear that Transocean could have a duty to indemnify Cameron only "in the event" Transocean is entitled to an indemnity from its customer — here, BPAP.  But the relevant provision of the Drilling Contract — Paragraph 24.2, which defines BPAP's indemnity obligation for pollution losses — does not obligate BPAP to indemnify Transocean for contractual indemnity obligations Transocean undertakes with respect to third parties (like Cameron).  Cameron attempts to create such an obligation by relying on a fallback definition in Paragraph 25.1.  Contrary to Cameron's theory, however, that definition does not "amplify" the meaning of "all" indemnity provisions in the Drilling Contract.  Instead, Paragraph 25.1 is expressly limited so that it does not apply to indemnity provisions (like Paragraph 24.2) that contain their own specific limitations.  Because there is no indemnity running from BPAP to Transocean for Transocean's contractual indemnities to others, there can be no indemnity obligation from Transocean to Cameron.

*Third*, even if BPAP did have some obligation to indemnify Transocean for contractual indemnities, and Transocean had some duty to Cameron, both duties to indemnify would be substantially limited by the plain terms of the contracts and federal law.  Cameron's contract with Transocean does not obligate Transocean to indemnify Cameron for pollution caused by Cameron's negligence, gross negligence, or strict liability claims such as products liability.  In

addition, any obligation that Transocean has to indemnify Cameron cannot be any broader in scope than BPAP's duty to indemnify Transocean.   As explained in BP's Memorandum in Opposition to Transocean's Motion for Partial Summary Judgment and in Support of BP's Cross-Motion for Partial Summary Judgment Relating to Alleged Contractual Indemnities ("BP's Memorandum Regarding Transocean" or "BP Mem. re TO"),[1] BPAP's obligations to indemnify Transocean for third-party pollution costs are limited.   Under Paragraph 24.2 of the Drilling Contract, BPAP has no duty to indemnify Transocean for pollution losses resulting from gross negligence or strict liability claims, including product defect claims.   Accordingly, Transocean also has no duty to indemnify Cameron for such claims.   In addition, where Transocean is not entitled to indemnity from BPAP (because, for example, Transocean has been grossly negligent), the condition in the Cameron-Transocean contract is not triggered (any indemnity arises only "[i]n the event" that Transocean is entitled to indemnity) and as a result Transocean again has no duty to indemnify Cameron.

Even putting aside the terms of the contracts, under federal law, public policy prohibits contractual indemnification for certain conduct and categories of damages, including grossly negligent conduct, fines and penalties, and punitive damages.   Lastly, under established principles of contract law, an indemnitor is discharged if the indemnitee's conduct materially increases risks to the indemnitor or breaches terms of the indemnity contract.

For these reasons, Transocean has no duty to indemnify Cameron for pollution costs. And for these reasons as well as those set forth in BP's Memorandum Regarding Transocean, BPAP has no obligation to indemnify Transocean for Cameron's pollution costs.

---

[1]    To spare the Court unnecessary repetition, this opposition will cross reference, with minimal elaboration, legal arguments concerning the Drilling Contract already set out fully in BP's Memorandum Regarding Transocean.

## ARGUMENT

## I.   CAMERON HAS NO INDEMNITY CLAIM DIRECTLY AGAINST BP.

Cameron's motion raises no claim directly against any BP entity, and for good reason. Cameron does not have any indemnification agreement with a BP entity.  As a result, Cameron filed its summary judgment motion solely against Transocean.  Cameron claims it is entitled to indemnity for pollution costs from Transocean, and that Transocean can recover Cameron's costs from BPAP through an indemnity in the Drilling Contract between BPAP and Transocean Holdings LLC.  Dkt. 4694-2, Cameron Br. in Supp. of TO at 1-2.  But Cameron cannot, and does not, claim that it is entitled to indemnity under the Drilling Contract.  The only parties to the Drilling Contract are BPAP, as successor to Vastar Resources, Inc., and Transocean Holdings LLC, as successor to R&B Falcon Drilling Co.  Ex. 1, Drilling Contract at pp. 1, 36.  Moreover, while the Drilling Contract does extend indemnities to each party's affiliates, joint venturers, and employees, the indemnities do not cover a party's contractors such as Cameron.  *Id.* ¶ 25.2.  The Drilling Contract also expressly provides that no other "persons or entities are intended to be or become third party beneficiaries of this contract."  *Id.* ¶ 25.3.  Indeed, Cameron affirmatively *disclaims* any attempt to seek third party beneficiary status under the Drilling Contract.  Dkt. 4524, Cameron Mot. for Partial Summ. J. against TO at pp. 15-16.  Thus, no BP entity has any obligation to indemnify Cameron.

Moreover, Cameron's motion solely against Transocean is not the proper vehicle for deciding whether BPAP has an obligation under the Drilling Contract to indemnify Transocean for contractual indemnity obligations Transocean may have undertaken with respect to third parties (like Cameron).  Transocean filed its own summary judgment motion against BPAP seeking a ruling on the meaning and enforceability of various indemnity provisions in the Drilling Contract, but it did not include any claim that the Drilling Contract required BPAP to

indemnify Transocean for alleged contractual indemnities owed to Cameron or other third parties.  Dkt. 4477, TO Mot. for Summ. J. Against BP.  If Transocean wanted a ruling about third party indemnity contracts it should have sought one.  Cameron's motion against Transocean is not the place in which BPAP's contract obligations to Transocean should be decided.  Nonetheless, because Cameron has extensively argued that Transocean can recover Cameron's costs from BPAP, BP explains here why, for multiple independent reasons, BPAP can have no obligation to indemnify Transocean for Cameron's costs.

## II. THE PLAIN TERMS OF THE CONTRACTS DO NOT REQUIRE TRANSOCEAN TO INDEMNIFY CAMERON FOR POLLUTION COSTS.

The plain terms of the Cameron-Transocean contracts and the Drilling Contract, read together, show that Cameron is not entitled to any indemnity from Transocean for pollution costs.  Cameron premises its indemnification claims on the "terms and conditions" of the Cameron-Transocean purchase orders for blow-out preventer ("BOP") equipment.[2]  Specifically, the provision on which Cameron relies states:

> In the event that Purchaser [Transocean] is entitled to indemnity under any contract with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, Purchaser [Transocean] will provide Seller Group [Cameron] with the benefit of such indemnity to the fullest extent possible.

Dkt. No. 4524 at p. 6; *id.*, Ex. 4.  Transocean has explained that this conditional provision, limited solely to extending "benefits" created by other contracts, creates no contractual duty to

---

[2]  Cameron also purports to rely on a Master Service Agreement ("MSA") with Transocean, but Cameron has not shown that the MSA applies.  The primary claims against Cameron relate to the design and manufacture of the BOP.  *E.g.*, Dkt. 1128, First Amended B1 Bundle ¶¶ 440, 442-49, 572, 603-06, 636-58.  Thus, the purchase orders pursuant to which the BOP was originally built and designed are the relevant contracts.  Moreover, as Transocean notes, Dkt. 4778 at p. 2 n. 1, a work order must be issued under the MSA for the terms of the MSA to become effective.  *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir. 1990) ("The blanket contract is not of itself complete and calls for no specific work. The actual contract between the parties therefore consists of the blanket agreement as modified by the later work order.").  Cameron's filings do not identify any relevant work orders under the MSA.

indemnify Cameron for pollution costs.  Dkt. 4778 at 6-10.  BP agrees with that analysis, which forecloses Cameron's claim for indemnification.

In addition, reading the conditional terms of the Cameron-Transocean purchase orders in light of the limited indemnity BPAP provided Transocean in the Drilling Contract shows another reason why Transocean has no obligation to indemnify Cameron for pollution costs.  The purchase orders make clear that Transocean could have a duty to indemnify Cameron only "[i]n the event" and "to the fullest extent" that Transocean is entitled to an indemnity from a customer such as BPAP.  But under Paragraph 24.2 of the Drilling Contract (which governs BPAP's obligation to indemnify Transocean for pollution and contamination costs), BPAP has no duty to indemnify Transocean for pollution or contamination costs resulting from Transocean's own contractual indemnity obligations to others (like Cameron).

Indemnifying another party for that party's contractual indemnification obligations to a third party is an "extraordinary obligation" that must be "clearly express[ed] . . . in unequivocal terms."  *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981); *see also Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 222 (5th Cir. 2005); *M/V Little Kelly, LLC v. Burlington Res. Oil & Gas Co.,* 2011 WL 3300375, at *2-3 (E.D. La. Aug. 1, 2011); BP Mem. re TO at 4.  But nothing in Paragraph 24.2 of the Drilling Contract remotely suggests that BPAP undertook to indemnify Transocean for such indemnification obligations to third parties.  Paragraph 24.2 says that BPAP will indemnify Transocean for pollution or contamination "without regard for *negligence* of any party or parties and specifically without regard for whether the pollution . . . is caused in whole or in part by the *negligence or fault* of contractor."  Drilling Contract, Ex. 1 ¶ 24.2 (emphases added).  The paragraph thus specifically refers to one extraordinary obligation — covering losses caused by Transocean's "negligence or fault" — but

not to any others.  The parties' decision to include negligence and exclude other extraordinary obligations from Paragraph 24.2 should be given effect.  *See, e.g.*, *Babcock v. Cont'l Oil Co.*, 792 F.2d 1346, 1350-51 (5th Cir. 1986) (excluding from indemnification employees who were not expressly within the scope of the indemnity); *Corbitt*, 654 F.2d at 332-33 (explaining that an indemnity contract "should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage"); *see also Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986) ("Indemnity agreements are to be strictly construed.").

Indeed, the parties' choice of terms is especially significant in light of the Court's determination that the *expressio unius* canon of construction applies to interpreting the Drilling Contract.  Dkt. 4588, Order and Reasons at 38-39.  Here, the *inclusion* of "negligence or fault" in Paragraph 24.2 necessarily *excludes* from the indemnity losses resulting from other extraordinary obligations not specifically included, such as indemnification obligations to a third party.

Cameron claims that Paragraph 25.1 covers such pass-through indemnification obligations.  Dkt. 4694-2 at p. 6.  But that theory ignores the limitations on Paragraph 25.1.  Indeed, Cameron's assertion that Paragraph 25.1 "*amplifies* the coverage of the language used in *all* the indemnity provisions" of the Drilling Contract, Dkt. 4524-1 at 13 (emphases added), directly contradicts the plain language of the provision.  Paragraph 25.1 states that it applies "*[e]xcept* to the extent any such [indemnity] obligation is specifically limited to certain causes elsewhere in this contract."  Ex. 1 ¶ 25.1 (emphasis added).  Far from "amplifying" every indemnity in the contract, Paragraph 25.1 is restricted so that it does not apply to expand indemnities that, by their terms, are more limited.  Paragraph 24.2 has precisely such a specific

limitation, as it provides an indemnity for pollution losses caused by "negligence or fault" without including other extraordinary obligations.  BP Mem. re TO at 5-6.  Therefore, Paragraph 24.2 creates no duty for BPAP to indemnify Transocean for any indemnification obligations to third parties.

Under the BOP purchase orders, any duty for Transocean to indemnify Cameron could arise only "[i]n the event" that Transocean itself is entitled to an indemnity.  Given that BPAP has no obligation to indemnify Transocean for contractual indemnity claims for pollution costs, Transocean likewise has no obligation to indemnify Cameron.

## III.   ANY INDEMNITY OBLIGATION IS LIMITED BY THE CONTRACTS AND FEDERAL LAW.

### A.   The BOP Purchase Order Terms and Conditions Do Not Include Indemnification for Cameron's Negligence, Gross Negligence, or Strict Liability.

Even if the terms of the purchase orders, read in light of the Drilling Contract, do not entirely foreclose any duty for Transocean to indemnify Cameron, any indemnity that exists does not extend to extraordinary obligations such as indemnifying Cameron for negligence, gross negligence, or strict liability claims.  It is well settled that "[i]ndemnity agreements are to be strictly construed."  *Tenneco Oil Co.*, 803 F.2d at 1388.  Cognizant of that principle, the Fifth Circuit has explained that, in approaching an indemnity, courts should "refus[e] to adopt the fullest meaning which lexicography would permit."  *Gaspard v. Offshore Crane & Equip., Inc.*, 106 F.3d 1232, 1236 (5th Cir. 1997) (internal quotation marks omitted).  In particular, certain extraordinary obligations must be "clearly express[ed] . . . in unequivocal terms."  *Corbitt*, 654 F.2d at 333.  As explained in BP's Memorandum Regarding Transocean, these extraordinary obligations include indemnifying another for negligence, gross negligence, and strict liability claims (including products liability).  BP Mem. re TO at 4-5.  Parties including the PSC have

brought such claims against Cameron.  Dkt. 1128, First Amended B1 Bundle ¶¶ 440, 442-49, 572, 603-06, 629-31, 636-58.  Yet the supposed pollution indemnity in the Cameron-Transocean purchase orders does not mention negligence, gross negligence, or strict liability, or otherwise clearly and unequivocally cover those extraordinary obligations.  As a result, Transocean has no obligation to indemnify Cameron if Cameron is found liable under these theories.

Other indemnity language in the purchase orders reinforces the conclusion that Transocean need not indemnify Cameron for losses arising from Cameron's own negligence or gross negligence or from strict liability claims.  *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992) (maritime contracts containing indemnities "should be read as a whole").  In addition to the pollution indemnity, the purchase order terms and conditions contain "knock-for-knock" personal injury and property damages indemnities between Cameron and Transocean.  Those indemnities plainly state that they apply regardless of whether the damages were caused by "sole, joint and/or several negligence" or "strict liability."  Dkt. No. 4524 at p. 6; *id.*, Ex. 4.  No comparable language appears in the purported pollution indemnity, and the parties' choice of different language must be given effect.  *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 656-57 (5th Cir. 1999); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744-45 (7th Cir. 1996).  The parties clearly knew how to specify negligence and strict liability when they intended to, and they included no such obligation in the provision on which Cameron relies.[3]

---

[3]    Of course, because Transocean has no obligation to indemnify Cameron for such conduct, Transocean cannot gratuitously indemnify Cameron and then seek to pass on Cameron's liabilities to BPAP.  It is well-established law that a "party cannot make a voluntary payment to settle an action and then hold another responsible for that payment through indemnity."  *In re Cossu*, 410 F.3d 591, 595-96 (9th Cir. 2005); 41 Am. Jur. 2d *Indemnity* § 27 ("Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which the indemnitee improperly pays.").

**B.      Transocean's Obligation To Indemnify Cameron Can Be No Broader Than BPAP's Obligation To Indemnify Transocean.**

The supposed pollution indemnity in the Cameron-Transocean purchase orders states that, "[i]n the event" that Transocean is entitled to an indemnity, Transocean "will provide Seller Group [Cameron] with the benefit of *such* indemnity to the fullest extent possible."  Dkt. No. 4524 at p. 6 (emphasis added); *id.*, Ex. 4.  Under the plain language of this provision, even if Transocean had some obligation to indemnify Cameron, that obligation could be no broader than the indemnity BPAP provided Transocean under the Drilling Contract.  As explained in BP's Memorandum Regarding Transocean, however, BPAP's indemnity to Transocean for pollution costs is expressly limited.   BP Mem. re TO at 2-6.   Paragraph 24.2 does not provide indemnification for gross negligence or strict liability claims, including products liability.  *Id.*

As a result, any duty Transocean could have to indemnify Cameron likewise excludes gross negligence or strict liability claims (including product liability claims).  Parties including the PSC have brought claims against Cameron for gross negligence and strict liability.  *E.g.*, Dkt. 1128 ¶¶ 440, 442-49, 572, 603-06, 629-31, 636-58.  If Cameron is found liable for such claims, Transocean has no obligation to indemnify Cameron, and any payment of Cameron's pollution costs by Transocean would be gratuitous.  *In re Cossu*, 410 F.3d at 595-96; 41 Am. Jur. 2d *Indemnity* § 27.

**C.      Public Policy Prohibits Transocean From Indemnifying Cameron For Certain Conduct And Categories of Damages.**

Under maritime law, a party cannot be indemnified for gross negligence, or for fines, penalties, or punitive damages.   BP Mem. re TO at 6-13, 18-24.   Moreover, indemnity obligations are discharged if the indemnitee materially increases the risks to the indemnitor or breaches the terms of the contract containing the indemnity.  *Id.* at 13-17.  These doctrines limit any duty Transocean may have to indemnify Cameron.  If Cameron is found to have been

grossly negligent, then regardless of any contractual language Transocean cannot have any obligation to indemnify Cameron.  *Id.* at 6-13.  Likewise, if Cameron is found to have defectively designed or manufactured the BOP so as to materially increase Transocean's risk, Cameron cannot enforce an indemnity.  *Id.* at 13-14.  Nor can Cameron seek indemnity for any punitive damages or fines or penalties.  *Id.* at 18-24.  Cameron's arguments to limit these well-established doctrines are meritless.

### 1.    Maritime Law Prohibits Indemnification For Gross Negligence.

According to Cameron, it is still an open question whether maritime law permits indemnification for gross negligence.  That claim, however, cannot withstand scrutiny.  Multiple cases from the Fifth Circuit, district courts within the Fifth Circuit, and courts outside the Fifth Circuit make clear that a party cannot be indemnified for its own gross negligence.  BP Mem. re TO at 6-7 & n.6 (collecting cases under maritime law).  Nor can these rulings be dismissed as dicta.  The Fifth Circuit has squarely stated that an indemnity for gross negligence is void:

> Baker and Seth also contend that the indemnity provision is invalid because they allege that Tidewater committed gross negligence.  It is undisputed that Baker escapes indemnity if Tidewater's actions leading to Seth's injuries were grossly negligent.  *See Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) (noting that a waiver of liability for gross negligence is void).

*Becker v. Tidewater, Inc.*, 586 F.3d 358, 367 (5th Cir. 2009).  This passage in *Becker* is not some unsupported aside, divorced from the dispute at hand, that may not represent the appellate court's most careful thinking.  Instead, the Fifth Circuit stated that indemnification of gross negligence is void as a key part of the opinion explaining why the characterization of Tidewater's conduct as negligence or gross negligence determined the outcome of the appeal.  Moreover, the Fifth Circuit supported its statement with citation to precedent, which the court expressly characterized as holding that "a waiver of liability for gross negligence is void."  *Id.*  That further

11

confirms that the Court's analysis was not some stray remark meant to be ignored.   This is binding language from the Fifth Circuit and should be followed by this Court.

Cameron also ignores that courts within the Fifth Circuit — including this one — have squarely held that under maritime law a party cannot be indemnified for its gross negligence.  In *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007), the court explained that the "Fifth Circuit has also endorsed the view that under the general federal maritime law, a party may not contractually stipulate out of liability for its gross negligence." *Id.* at 799.  The court then held that "gross negligence is a defense to the enforcement of the exculpatory/indemnification clauses" and on that basis rejected a party's motion for summary judgment premised on a contractual indemnity.  *Id.* at 799 n.33.  Likewise, in *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590 (S.D. Tex. 2011), the court denied a motion for summary judgment because "the indemnity provision in this case, to the extent it encompasses claims for gross negligence, is unenforceable."  *Id.* at 611.  And in *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 2000 WL 423909 (E.D. La. Apr. 18, 2000) (Barbier, J.), *vacated and rem. on other grounds*, 269 F.3d 528, 531-32 (5th Cir. 2001) (reversing factual finding of gross negligence and remanding), this Court held that, under both maritime and Louisiana law, "the release and indemnity clause involved in this case is utterly invalid and of no effect whatsoever" because of the indemnitee's gross negligence.  *Id.* at *7 & n.11.  In short, this Court should not adopt a new and unsupported position that contradicts the Fifth Circuit, other circuit and district courts, and even its own prior opinion.  Instead, it should follow the established rule under maritime law that indemnification for gross negligence is against public policy.

Moreover, Cameron gives no basis in policy or precedent to deviate from this established case law.  Cameron claims that the "policy considerations weighing in favor of upholding indemnity for gross negligence are the same as those supporting enforcement of red letter clauses" — namely, "freedom of contract."  Dkt. 4694-2 at p. 12.  But that concession cuts *against* Cameron's position, because in the context of so-called "red letter" clauses, courts consistently hold that such policy considerations are insufficient to support the clauses and hold such clauses invalid when applied to grossly negligent conduct.  Indeed, even Transocean admits that "[c]ontract law generally recognizes a public policy prohibition against 'red letter' contractual clauses whereby one party to the contract seeks to exculpate itself in the event its gross negligence in the performance of the contract causes injury to the other contracting party."  Dkt. 4477-1 at p. 31.  Cameron posits that, while the policy considerations in favor of indemnity contracts and red letter clauses are the same, the policy considerations *against* enforcement of an indemnity for gross negligence are somehow weaker.  Dkt. 4694-2 at 12.  But, as many courts have recognized in rejecting precisely that theory, Cameron's approach fails to acknowledge that an indemnity, just like a red letter clause, eliminates incentives for a party to avoid grossly negligent conduct.  *See, e.g.*, *CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, 697 F. Supp. 2d 213, 227-28 (D. Mass. 2010); BP Mem. re TO at 9-12.

Finally, Cameron lists various stock arguments made against public policy restrictions on contracts, such as that they should not apply to sophisticated parties.  Dkt. 4694-2 at 12-13.  None of these arguments has persuaded the Fifth Circuit or other courts considering whether maritime law allows parties to be indemnified for their own gross negligence.  The cases holding that a party cannot be indemnified for its own gross negligence involved large corporations such as Baker Hughes, Inc., Tidewater Inc., The Houston Exploration Company, and Halliburton

Energy Services, Inc.  *See Becker*, 586 F.3d at 363; *Houston Exploration*,  2000 WL 423909, at *1.  Cameron also claims that an indemnity for gross negligence should be upheld here because Transocean has indemnity obligations to BP.  But the *Becker* court held that gross negligence invalidates indemnification for gross negligence even though there were reciprocal indemnities in that case.  586 F.3d at 365.  None of Cameron's policy arguments can overcome the settled rule that public policy prohibits an indemnity for gross negligence.

> **2.     By Its Own Terms, OPA Does Not Displace Any Public Policy Limits of Maritime or Other Federal Law.**

Cameron claims that Oil Pollution Act ("OPA") requires enforcement of contractual indemnities that cover gross negligence, but that theory ignores the plain language of OPA. OPA Section 2710(a) states in full that "Nothing in this Act prohibits any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this Act."  33 U.S.C. § 2710(a).  Nothing in that language *authorizes* any indemnity.  Instead, the provision merely states that OPA itself does not *prohibit* indemnities.  As BP has explained, the mere absence of a prohibition is not an affirmative authorization.   The prohibition against indemnifying for gross negligence comes from maritime and federal common law.  By its plain terms, Section 2710(a) has no effect on that law.  BP Mem. re TO at 12-13.

> **3.     Cameron's Arguments Against Applying *Hiern* and *Fleeger* Contradict The Fifth Circuit's Holdings.**

The Fifth Circuit has explained that it is a "general rule of law that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity."  *Hiern v. St. Paul-Mercury Indem. Co.*, 262 F.2d 526, 529 (5th Cir. 1959) (La. law; citing *U. S. Fid. & Guar. Co. v. Putfark*, 158 So. 9 (La. 1934)); *see Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 n.3 (5th Cir. 1968) (Tex. law); BP Mem. re TO at 13-14.  According to Cameron, BPAP and Transocean agreed to

indemnify each other for gross negligence and so gross negligence cannot increase risk or prejudice the rights of BPAP under the Drilling Contract.  Dkt. 4694-2 at 8-9.  That argument suffers from a number of flaws.

*First*, Cameron's initial premise that BPAP agreed to indemnify Transocean for gross negligence is demonstrably wrong.   By its plain language, Paragraph 24.2 of the Drilling Contract does not cover losses caused by Transocean's gross negligence.  *See supra* Part III.B.; BP Mem. re TO at 2-6.  Moreover, under maritime law, indemnification for gross negligence is not allowed.

*Second*, BP does not rely on *Hiern* or *Fleeger* to claim that it has no duty to indemnify Transocean for gross negligence.  The language of the Drilling Contract and uniform holdings of maritime cases such as *Becker* establish that BPAP need not indemnify Transocean for gross negligence.   Instead, BP's argument is that Transocean's conduct such as not properly monitoring the well, failing adequately to train its crew, and providing a vessel with poorly maintained equipment increased the risk to BPAP.  Nothing in the Drilling Contract provides that BPAP must indemnify Transocean for such conduct.   To the contrary, in the Drilling Contract Transocean represented that it would use all reasonable means to prevent blowouts, properly maintain the vessel's equipment, and adequately train its crew. Ex. 1 ¶¶ 3.1.4, 14.1.1, 15.2, 15.6.

*Third*, Cameron's argument contradicts *Hiern* and *Fleeger* and would swallow them whole.   Cameron claims that if an indemnitor agrees to indemnify an indemnitee for gross negligence, there can be no increased risk or material prejudice resulting from gross negligence. But in *Hiern*, the indemnitor agreed to indemnify "against any and all liability or expense which appellee should sustain in consequence of having executed and issued the surety agreements."

15

262 F.2d at 527.   Under Cameron's argument, when those liabilities materialized under the

surety agreement, the *Hiern* court should have held that there could be no increased risk or

material prejudice because the indemnitor agreed to indemnify for those liabilities.   But that was

not the Fifth Circuit's decision.   Instead, the Fifth Circuit held that, even though the indemnitor

had agreed to indemnify for liabilities resulting from the surety agreements, the indemnitee's

actions increased the risk to the indemnitor and thus discharged any indemnity obligations.   *Id.* at

529.   The facts and holdings of *Fleeger* are parallel.   389 F.2d at 161 & n.3.   Likewise,

Transocean's conduct here increased the risk of a blowout by numerous acts, and because

Transocean materially increased BPAP's risks, any indemnity obligation of BPAP is discharged.

BP Mem. re TO at 13-14.

### 4.      If Transocean Cannot Obtain Indemnity from BPAP, It Has No Duty To Indemnify Cameron.

Finally, Cameron claims that that BPAP must indemnify Transocean for Cameron's

pollution costs regardless of Transocean's conduct.   In other words, even if Transocean were

grossly negligent and as a result can claim no indemnity from BPAP, Cameron thinks that its

losses should be passed through Transocean and absorbed by BPAP.   That claim is specious.

Cameron invokes the Restatement (Second) of Contracts §§ 183 and 184 to assert that

under certain circumstances if part of a contract is against public policy, the remainder can be

severed and enforced.   Dkt. 4694-2 at 16-17.   But Cameron's argument about ignoring

Transocean's gross negligence has nothing to do with severability of contract provisions.   As

Illustration 4 of Restatement (Second) of Contract § 184 indicates, the principle described in the

Restatement means that if a contract purports to indemnify a party for both negligence and gross

negligence, a party can be indemnified if it is found liable for simple negligence even if it cannot

be indemnified for gross negligence.   But if the party is found liable for gross negligence, the

16

party cannot recover anything.  Moreover, by the terms of the Cameron-Transocean purchase

orders, Cameron has an argument for an indemnity from Transocean only "[i]n the event" that

Transocean is entitled to an indemnity, and then Cameron can receive solely the "benefit of such

indemnity" to the "extent possible."  Dkt. 4524 at 6.  Thus if Transocean was grossly negligent,

it is not entitled to *any* indemnity from BPAP.  Furthermore, under the terms of the purchase

orders, there is no indemnity that can be provided to Cameron from Transocean.  Likewise, if

Transocean breached the Drilling Contract or materially increased BPAP's risks so as to

discharge any indemnity duty under the Drilling Contract, Transocean similarly has no

indemnity from BPAP.  As a consequence, under the purchase orders Transocean has no duty to

indemnify Cameron.  In short, where Transocean's conduct has eliminated the indemnity from

BPAP, Transocean cannot recover Cameron's costs from BPAP, and Cameron cannot recover

indemnity from Transocean.  Cameron cannot simply pretend that Transocean does not exist and

that it has an indemnity directly from BPAP that overlooks Transocean's conduct.

Even apart from the express contractual limitation in the purchase order terms and

conditions, Cameron's theory for ignoring Transocean's gross negligence would turn public

policy constraints on indemnities on their head.  In effect, Cameron's theory means that, in

applying public policy exceptions to indemnification, a court must not look to the conduct of the

indemnitee, but instead should examine the conduct of the third party whose liability the

indemnitee is seeking to recover.  Dkt. 4694-2 at 18.  This would mean that regardless of the

indemnitee's acts, it could recover indemnification for the costs of innocent third parties.  That

simply is not the law.  For example, in *Becker*, Tidewater sought indemnification from Baker for

the costs of third party Seth Becker, who was injured while working.  BP Mem. re TO at 7-8.

The Fifth Circuit did not look to the conduct of Seth Becker to determine whether Tidewater

could recover Becker's costs from Baker.  Instead, it looked to the conduct of Tidewater as the indemnitee.  586 F.3d at 367-68.  Every other case involving indemnity and public policy that BP has cited likewise examines the conduct of the indemnitee, not the conduct of the third parties for whose costs the indemnitee is seeking indemnification.

Indeed, Cameron's theory would produce absurd results and wholly eliminate the public policy against indemnification for gross negligence, or even for intentional harm.  Consider a case in which thousands of plaintiffs sued an indemnitee who had harmed them intentionally or through gross negligence.  According to Cameron, one looks to the conduct of those plaintiffs rather than the conduct of the indemnitee to determine whether the indemnitor must indemnify the indemnitee.  If those plaintiffs are blameless, the indemnitee supposedly becomes a mere pass-through and can recover from the indemnitor regardless of how reckless it was in injuring the plaintiffs.  That theory is nothing but a back-door attempt to dismantle the clear maritime public policy against indemnification for gross negligence in defiance of *Becker* and other decisions from the Fifth Circuit and this Court.

Here, for purposes of BPAP's indemnification obligations, Transocean is the indemnitee and Cameron is a third party.  In determining whether Transocean can recover indemnity from BPAP, Transocean's conduct is what matters, not the conduct of Cameron.[4]  Thus, if Transocean were grossly negligent or its conduct discharged BPAP's indemnification obligation, Transocean cannot recover indemnification from BPAP for the costs of Cameron or any other party.  Moreover, if Transocean's conduct discharges any indemnity obligation that BPAP would

---

[4]   Cameron's own conduct presents an independent hurdle Cameron must clear before it could enforce any indemnity obligation against Transocean.  When Cameron seeks indemnification from Transocean, Cameron is the indemnitee and Cameron's conduct must be examined to determine whether indemnification is permissible.  As explained above, if Cameron was grossly negligent, for example, Transocean cannot have a duty to indemnify Cameron.  *See supra* Part III.C.1; *see also* BP Mem. re TO at 6-13.

otherwise have to Transocean, then, because Cameron's supposed indemnity rights are purely derivative of Transocean's rights against BPAP, Cameron would have no indemnity right against Transocean.

## CONCLUSION

Cameron's motion for partial summary judgment against Transocean should be denied. Even if Transocean must indemnify Cameron, under the governing contracts and federal law Transocean's conduct prevents it from recovering Cameron's costs from BPAP.

Date:  December 7, 2011                    Respectfully submitted,


                                           /s/ Don K. Haycraft
                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #16984)
                                           Liskow & Lewis
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108

                                           and

                                           Richard C. Godfrey, P.C.
                                           J. Andrew Langan, P.C.
                                           R. Chris Heck
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200

                                           Patrick F. Philbin
                                           Kirkland & Ellis LLP
                                           655 Fifteenth Street N.W.
                                           Washington, DC  20005
                                           Telephone: (202) 879-5000
                                           Facsimile: (202) 879-5200


                                           Robert C. "Mike" Brock
                                           Covington & Burling LLP
                                           1201 Pennsylvania Avenue, NW
                                           Washington, DC 20004-2401
                                           Telephone: (202) 662-5985

                                           *Attorneys for BP p.l.c., BP Exploration &*
                                           *Production Inc. and BP America Production*
                                           *Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of December, 2011.

/s/ Don K. Haycraft
Don K. Haycraft