**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" | * | |
| in the Gulf of Mexico, | * | SECTION: J |
| on April 20, 2010 | * | |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| 2:10-cv-04536 | * | MAGISTRATE SHUSHAN |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**PLAINTIFF UNITED STATES' SECOND MOTION FOR PARTIAL SUMMARY**
**JUDGEMENT**

Plaintiff United States submits this statement of undisputed material facts in support of its

Second Motion for Partial Summary Judgment as to the Liability of Defendants BP Exploration

& Production, Inc. ("BP"); Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater

Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH (collectively "Transocean

Defendants"); Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("A

E&P") (collectively "Anadarko Defendants") pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1

(February 2011).

**Undisputed Material Facts Relevant to Drilling the Macondo Well**

1. BP acquired Lease OCS-G 32306 for Block 252, Mississippi Canyon, OCS Official
   Protraction Diagram, NH 16-10 ("Lease"), effective June 1, 2008.

   - Answer of BP at ¶¶ 24, 25, United States v. BP Exploration & Production, Inc., et
     al., 2:10-cv-04536 (E.D. La.) ("BP Answer") [Rec. Doc. 1858].

   - Answer of APC at ¶¶ 24, 25, United States v. BP Exploration and Production,
     Inc., et al., 2:10-cv-04536 (E.D. La.) ("APC Answer") [Rec. Doc. 1860].

   - Statement of Undisputed Material Facts ("First SMF") in Support of United
     States' Motion for Partial Summary Judgment ("First MSJ") at ¶ 1, United States
     v. BP Exploration and Production, Inc., et al., 2:10-cv-04536 (E.D. La.) [Rec.

1

Doc. 2587] (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner ¶¶ 1, 3; Ex. 2 to First MSJ,Oil and Gas Lease of Submerged Lands under OCSLA, OCS-G 32306, Block 252, Mississippi Canyon).

2. An exploratory well was constructed on Block 252, Mississippi Canyon, the "Macondo Well."

- BP Answer ¶ 41 (admitting that "on or about October 2009, drilling began of an exploratory well pursuant to the Lease at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10").

- Answer of Transocean at ¶ 41, United States v. BP Exploration & Production, Inc., et al., 2:10-cv-04536 (E.D. La.) ("Transocean Answer") [Rec. Doc. 1420] (admitting that "on or about October 2009 drilling began in Block 252 of Mississippi Canyon").

- APC Answer ¶ 41 (admitting that "drilling operations for an exploratory well within Block 252, Mississippi Canyon, Official Protraction Diagram NH 16-10, pursuant to Lease No. OCS-G 32306 began on or about October of 2009").

- Supplemental Objections and Responses of Defendant Anadarko Petroleum Corporation to Revisions to the United States' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Sept. 20, 2011 ("APC Discovery Responses"), APC Response to U.S. Request for Admission ("RFA") No. 1 (admitting that "an exploratory well was constructed on the Macondo Prospect, the 'Macondo Well'") (Ex. 34 hereto).

- First SMF ¶ 15 (citing Ex. 3 to First MSJ, Report to the President, January 2011, National Commission on the BP  Deepwater Horizon Oil Spill and Offshore Drilling at 90-104  ("Commission Report") available at http://www.oilspillcommission.gov/final-report; Ex. 10 to First MSJ, BOEMRE Declaration of David Troquet at ¶ 3).

3. The Macondo Well is located on the Outer Continental Shelf approximately 50 miles from the Mississippi River delta.

- APC Discovery Responses, RFA No. 2 (Ex. 34 hereto).

- BP Answer ¶ 1.

- First SMF ¶ 15 (citing government reports and websites, including Ex. 3 to First MSJ, Commission Report, at viii, 197-98; Ex. 14 to First MSJ, NASA's Satellite Image of the Gulf of Mexico on April 25, 2010).

4. From at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants.  In or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well.

   - BP Answer ¶ 43.

   - Transocean Answer ¶ 43 [Rec. Doc. 1420] (admitting that "on October 1, 2009, one or more of the Transocean Defendants were the managing owners, owners pro hac vice, and/or operators of the MODU Transocean Marianas, and that the Transocean Marianas engaged in drilling activities at the BP well").

   - APC Answer ¶ 43 (admitting that "that Transocean Marianas, a mobile offshore drilling unit, was used for the drilling operations within Block 252, Mississippi Canyon, Official Protraction Diagram NH 16-10, pursuant to Lease No. OCS-G 32306 starting on or about October of 2009 and ending on or about November 2009").

5. Beginning on or about February 2010, the MODU *Deepwater Horizon* replaced the *Transocean Marinas* for the purpose of continuing the drilling of the Macondo Well.  Drilling of the Macondo Well using the *Deepwater Horizon* continued in February 2010 and through March and a portion of April 2010.

   - BP Answer ¶ 44.

   - APC Answer ¶ 44.

   - Transocean Answer ¶ 44 (admitting that "the Deepwater Horizon engaged in drilling activities at the BP well after the *Transocean Marianas* ceased drilling activities at the BP well and that the Deepwater Horizon was on location at the BP well in March and a portion of April 2010").

6. The *Deepwater Horizon* is a vessel.

   - BP Answer ¶ 11.  *See also* BP Answer ¶ 12 (admitting that the BOP, riser and associated equipment all constitute "appurtenances").

   - Transocean Answer ¶ 11, 85.

   - Transocean's Response to BP Parties' First Set of Requests for Admission ("Transocean Responses to BP RFAs"), RFA No. 1 (Ex. 36 hereto).

   - Transocean Responses to BP's RFAs, RFA No. 3 (admitting that the blow-out preventer ("BOP") are appurtenances of the *Deepwater Horizon*) (Ex. 36 hereto).

7.  The *Deepwater Horizon* is a mobile offshore drilling unit.

- Transocean Answer ¶ 1.

- Transocean Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-02771, ¶ 6 and *passim* (originally filed in S.D. Tx. May 13, 2010) (Ex. 38 hereto).

- BP Answer ¶ 1.

8.  Casings, tubulars, the well head and/or other components of the Macondo Well were installed in the wellbore prior to April 20, 2010.

- BP Answer ¶ 45 (admitting that "As of April 20, 2010, various sub-sea equipment and components of the Macondo Well had been installed on or below the seafloor of the Outer Continental Shelf, including, but not limited to, the well casing and the well head").

- Transocean Answer ¶ 45 (admitting that "as of April 20, 2010, the BP well contained certain well casing").

- APC Discovery Responses, RFA No. 3 (admitting that "strings of casing, cement, production casing, casing hanger, casing accessories, and the well head were installed in the Macondo Well prior to April 20, 2010") (Ex. 34 hereto).

- First SMF ¶¶ 10, 11 (citing Ex. 3 to First MSJ, Commission Report at 90-94; Ex. 10 to First MSJ, BOEMRE Declaration of David Troquet at ¶ 3).

9.  The Macondo Well is an "offshore facility" for purposes of the Clean Water Act, 33 U.S.C. § 1321(b), and the Oil Pollution Act, 33 U.S.C. § 2701 et al.

- BP Answer ¶ 42 (admitting that the Macondo Well is an "offshore facility" under the Clean Water Act).

**<u>Undisputed Material Facts Related to the April 20, 2010 Incident<br>and Subsequent Discharge of Oil</u>**

10. The Macondo Well cement job was critical for maintaining well control.

- Deposition of Jonathan Sprague ("Sprague Dep."), Mar. 21, 2011, at 83:9-84:9. (Ex. 33 hereto).

11. The Macondo Well's cement job failed to prevent hydrocarbons from migrating into the wellbore.

- Sprague Dep., at 140:15-141:4 (Ex. 33 hereto).

- BP's Memorandum in Support of its Motion for Spoilation Sanctions, Dec. 5, 2011 [Rec. Doc. 4799] at 4 ("There is no serious dispute that Halliburton's cement job failed to isolate hydrocarbons in the Macondo Well.").

12. On April 20, 2011, there was a blowout of the Macondo Well, and fires and explosions on the drilling rig Deepwater Horizon.

- APC Answer ¶ 13.

- APC Response to US RFA No. 4 (Ex. 34 hereto).

- BP Answer ¶ 1 (admitting that "this action arises from the loss of control of the Macondo well on April 20, 2010, which resulted in one or more explosions or fires on the Mobile Offshore Drilling Unit ('MODU') *Deepwater Horizon*").

- Transocean Answer ¶¶ 1, 47 (admitting that "on April 20, 2010 an explosion and fire occurred aboard the Mobile Offshore Drilling Unit ('MODU') *Deepwater Horizon* while located on the Macondo Prospect in Mississippi Canyon Block 252 ('BP well')"… and that on that date "there was a blowout of the BP well, including oil and gas").

- First SMF ¶ 12 (citing Ex. 9 to First MSJ, Commission Report, at vi-viii).

13. Eleven men died as a result of the blowout.

- APC Answer ¶ 58.

- Transocean Answer ¶ 58.

- BP Answer ¶ 58.

14. Following the blowout on April 20, 2010, there was a discharge of oil into the Gulf of Mexico.

- BP Answer ¶ 60 (admitting that "a still undetermined amount of oil was discharged into and upon waters of the Gulf of Mexico").

- Transocean Answer ¶¶ 60, 61 (admitting that oil has leaked from the "BP well" into the Gulf of Mexico).

5

- APC Discovery Responses, RFA No. 6 (admitting that oil was discharged into the Gulf of Mexico) (Ex. 34 hereto).

- First SMF ¶ 13 (citing reports and government websites, including Ex. 9 to First MSJ, Commission Report, at 131-136, 139-71; NASA Satellites' View of Gulf Oil Spill Over Time, *available at* http://www.nasa.gov/topics/earth/features/oilspillvideo.html).

15. Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe and/or BOP after the *Deepwater Horizon's* sinking.

- APC Supplemental Response to U.S. RFA 6 ("Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe and/or BOP after the Deepwater Horizon's sinking.") (Ex. 34 hereto).

- BP Answer ¶ 61 (admitting that "on and for a period of time after April 20, 2010, oil flowed from the Macondo well, some of which flowed into and upon waters of the Gulf of Mexico and some of which reached the shoreline of the United States . . . [and] at certain times on or after April 20, 2010, oil flowed, *inter alia*, through the BOP stack, the marine riser, and/or other equipment.").

16. The discharge also emanated from the *Deepwater Horizon* vessel, including from its appurtenances the BOP and riser, into the Gulf of Mexico.

- BP Answer ¶ 61 (admitting that "at certain times on or after April 20, 2010, oil flowed, *inter alia*, through the BOP stack, the marine riser, and/or other equipment").

- Macondo Well Incident: Transocean Investigation Report, Vol. 1 (June 2011), Dep. Ex. 4248 (Ex 25 hereto), Section 3.4.3, at 153-57.

- Deposition of William Ambrose, July 18, 2011, at 26-28 (Ex 27 hereto) (authenticating Dep. Ex. 4248 as Transocean Investigation Report).

- Transocean: BOP Video (Transocean video with animation of *Deepwater Horizon* BOP showing passage of oil and hydrocarbons through the BOP), available at http://www.deepwater.com/fw/main/BOP-Video-1079.html.[1]

---

[1] The video itself is not being attached as an exhibit but can be viewed online at the web address indicated above.  If the Court would like a copy of the video, the United States will prepare it and submit it as a supplemental exhibit.

17. The oil caused a film or sheen or discoloration on the surface of the water.

- APC Discovery Responses, RFA No. 7 (admitting "there was a film, sheen, or discoloration on the surface of some portions of the Gulf of Mexico") (Ex. 34 hereto).

- First SMF ¶ 14 (citing to reports and government websites, including links to photographs documenting extensive oil slicks).

18. The discharge of oil was in such quantities as may be harmful.

- BP Answer ¶ 64 (admitting that "Deepwater Horizon Spill was a discharge of oil 'in such quantities as may be harmful,' within the meaning of CWA, 33 U.S.C. § 1321(b)(3)").

19. Some of the oil spread to within 200 nautical miles of the United States' coastline.

- APC Discovery Responses, RFA No. 5 ("Responding Party [APC] further admits that, in some areas, oil migrated to within 200 nautical miles of the United State's coastline.") (Ex. 34 hereto).

- BP Answer ¶ 63 (admitting that "some of the oil [from the Macondo Well] reached the shoreline of the United States.").

- First SMF ¶ 15 (citing to government reports and websites, including links to photographs documenting extensive oil slicks).

20. Some of the oil spread to within 3 miles of the coastline of the United States and onto adjoining shorelines.

- APC Discovery Responses, No. 8 (admitting that, in some areas, oil migrated to within 3 miles of the coastline of the United States) (Ex. 34 hereto).

- BP Answer ¶ 61, 63 (admitting that some of the oil from the Macondo Well reached the shoreline of the United States).

- First SMF ¶15 (citing to government records and websites, including links to photographs documenting extensive oil slicks).

21. The uncontrolled flow of oil continued for several months thereafter.

- BP Answer ¶ 1 (admitting that following the loss of well control which resulted in the explosions or fires on the Deepwater Horizon, "oil flowed into the Gulf of Mexico from the Macondo well for 87 days").

- APC Discovery Responses, RFA No. 6 (admitting that "oil flowed from the Macondo Well and was discharged into the Gulf of Mexico . . ." and that "oil flowed from April 20, 2010 to July 15, 2010") (Ex. 34 hereto).

- Transocean's Brief in Response to the Court's Order Re: Requested Briefing on Trial Plan Issues [Rec. Doc. 2665] at 2 (referring to the time period from when the oil discharge began until July 15, 2010, the date "the Macondo Well was capped").

- First SMF ¶15 (citing to government records and websites documenting oil flow over time).

22. The Macondo Well was capped on July 15, 2010.

- APC Discovery Responses, RFA No. 6 (admitting that "oil flowed from the Macondo Well and was discharged into the Gulf of Mexico . . ." and that "oil flowed from April 20, 2010 to July 15, 2010") (Ex. 34 hereto).

- BP Answer ¶ 1 (admitting that following the loss of well control which resulted in the explosions or fires on the Deepwater Horizon, "oil flowed into the Gulf of Mexico from the Macondo well for 87 days").

- Transocean's Brief in Response to the Court's Order Re: Requested Briefing on Trial Plan Issues [Rec. Doc. 2665] at 2 (referring to July, 15, 2010 as date Macondo Well "was capped").

**The Contractual Arrangements Among the Lessees**

23. On or about November 18, 2009, BP and MOEX executed a Lease Exchange Agreement, whereby BP assigned to MOEX a 10% interest in the Lease.  (Ex. 1 hereto).

- BP Answer ¶ 27 (admitting that "BPXP and MOEX entered into a Lease Exchange Agreement, pursuant to which BPXP assigned to MOEX an undivided 10% Record Title Interest in the Lease").

- Deposition of Michael Beirne ("Beirne Dep."), July 27, 2011, at 230 (Ex. 28 hereto) (authenticating Dep. Ex. 1244 (Ex. 1 hereto), as the final copy of the Lease Exchange Agreement between BP and MOEX excluding the exhibits to the Agreement).

24. After MOEX and BP executed the assignment, it was submitted to MMS, which approved the assignment on February 23, 2010.

- BP Answer ¶ 28.

25. BP assigned a 22.5% Record Title Interest in the Lease to A E&P Company LP ("A E&P"), effective October 1, 2009.  BP executed the assignment on or about December 17, 2009, A E&P submitted the assignment to MMS on February 11, 2010, and MMS approved the assignment on February 23, 2010.

- Deposition of Jim W. Bryan ("Bryan Dep."), May 6, 2011, at 94-95 (Ex. 29 hereto) (authenticating Dep. Ex. 1944 (Ex. 4 hereto), as containing the documents filed by Anadarko, and approved by MMS, for BP's assignment to A E&P of 22.5% Record Title Interest in the Lease).

- APC Answer ¶¶ 29, 30.

- BP Answer ¶¶ 29, 30.

- First SMF ¶¶ 2, 3 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner, ¶ 4, and Ex. 3 to First MSJ, Assignment of Record Title Interest Conveying 22.5% Interest in MC 252 to Anadarko A E&P).

26. BP assigned a 2.5% Record Title Interest in the Lease to APC.  BP executed the assignment on or about December 17, 2009, APC submitted the assignment to MMS on or about February 12, 2010, and MMS approved the assignment on February 23, 2010.

- Bryan Dep., at 94-95 (Ex. 29 hereto) (authenticating Dep. Ex. 1944 (Ex. 4 hereto), as containing the documents filed by Anadarko, and approved by MMS, for BP's assignment to APC of 2.5% Record Title Interest in the Lease).

- APC Answer ¶¶ 29, 31.

- BP Answer ¶¶ 29, 31.

- First SMF ¶¶ 4, 5 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner ¶ 5; Ex. 4, Assignment of Record Title Interest Conveying 2.5% Interest in MC 252 to APC).

27. On or about December 17, 2009, APC, AE&P and BP executed a Lease Exchange
Agreement, whereby BP assigned to APC and AE&P collectively a 25% interest in the
Lease.  (Ex. 2 hereto).

- APC Answer ¶ 29.

- BP Answer ¶ 29.

- Bryan Dep., at 69-70 (Ex. 29 hereto) (authenticating the APC-AE&P-BP Lease
  Exchange Agreement, Dep. Ex. 1942, Ex. 2 hereto).

- APC Discovery Responses, RFA No. 36 (Ex. 34 hereto) (admitting that a true,
  complete and accurate copy of the Lease Exchange Agreement is Bates No.
  ANA-MDL-000030651-000030681) (This is the same document as Dep. Ex.
  1942, Ex. 2 hereto, but stamped with a different Bates number range).

- Beirne Dep., at 98:18-99:15 (Ex. 28 hereto) (explaining that Dep. Ex. 2824 is "a
  lease exchange agreement that sets out the exchange between BP and two
  Anadarko entities for their assignment of a portion of BP's interests in Macondo
  for an assignment of some other leases from the two Anadarko entities") (Dep.
  Ex. 2824 is the same document as Dep. Ex. 1942, Ex. 2 hereto, but stamped with
  a different Bates number range and containing marginalia on the first page).

28. A E&P assigned its 22.5% Record Title Interest in the Lease to APC.  A E&P submitted
the assignment to MMS on or about April 20, 2010, and MMS approved the assignment
on April 28, 2010.  APC and A E&P had agreed to an effective date of April 1, 2010.

- APC  Discovery Responses, Supplemental Response to Interrogatory No. 7
  (stating that the assignment form transferring AEP's 22.5% interest to APC was
  sent to MMS on April 20, 2010 and was approved on April 28, 2010) (Ex. 34
  hereto).

- Bryan Dep., at 100-03 (Ex. 29 hereto) (discussing A E&P's assignment of 22.5%
  interest to APC).

- A E&P Memorandum in Support of Motion to Dismiss United States Complaint
  [Rec Doc. 1861], Ex. 5, Assignment Forms (Ex. 5 hereto).

- First SMF ¶ 7 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner, ¶ 8; Ex.).

29. As of April 20, 2010, MMS had not approved the A E&P reassignment of its interest in the Lease, and A E&P held 22.5% of the Lease.

- First SMF ¶ 8 (citing A E&P Memorandum in Support of Motion to Dismiss United States' Complaint [Rec. Doc. 1861], Ex. 5; First MSJ, Ex. 1, Declaration of Ann H. Glazner, ¶ 8).

- Assignment of Record Title Interest Conveying 22.5& Interest in MC 252 from A E&P to APC, Dep. Ex. 1945 (Ex. 5 hereto) (indicating MMS approval date of April 28, 2010).

30. After its assignments to MOEX, APC and AE&P, BP retained a 65% interest in the Lease.

- BP Answer ¶ 33 (admitting that "as of April 20, and continuing through at least April 28, 2010, BPXP held a 65% interest in the Lease").

- Beirne Dep., at 99-100 (Ex. 28 hereto).

31. On or about December 17, 2009, BP, APC and an APC subsidiary, Kerr-McGee Oil and Gas Corporation, also entered into a Well Participation Agreement for the Macondo Prospect, whereby APC would own a 25% interest in the Macondo Well.  (Ex. 3 hereto).

- Bryan Dep., at 75-76 (Ex. 29 hereto) (authenticating the Well Participation Agreement, Dep. Ex. 1943 (Ex. 3 hereto)).

- APC Discovery Responses, RFA No. 25 and Interrogatory No. 2(x) (Ex. 34 hereto) (admitting that true, complete and accurate copy of the Well Participation Agreement is ANA-MDL-000030613 through ANA-MDL-000030650) (same document as Dep. Ex. 1943, Ex. 3 hereto).

- Beirne Dep., at 249 (Ex. 28 hereto).

- APC Discovery Responses, RFA No. 12 (admitting that APC "signed a well participation agreement which indicates that APC has agreed to participate in the Initial Exploratory Well.  The IEW was defined as 'consisting of all tangible personal property in the well.'") (Ex. 34 hereto).

- Deposition of Nicholas G. Huch ("Huch Dep."), May 16, 2011, at 262:13-264:19 (Ex. 31 hereto).

11

32. As consideration for its 25% proportionate share of the Macondo Well, BP and APC agreed that APC would pay "1/3 for 1/4," or 33.33% of up to 110% of the estimated costs of the Macondo Well as set forth in the Initial Authorization for Expenditure.

- Section 4.1 of the Well Participation Agreement (Ex. 3 hereto).

- APC Discovery Responses, RFA No. 25 and Interrogatory No. 2(x) (Ex. 34 hereto) (admitting that true, complete and accurate copy of the Well Participation Agreement is ANA-MDL-000030613 through ANA-MDL-000030650) [authenticating Well Participation Agreement] (Ex. 3 hereto).

- Bryan Dep., at 51:2-52:24 (Ex. 29 hereto).

- Beirne Dep., at 209:7-23 (Ex. 28 hereto)

33. On or about November 18, 2009, BP and MOEX executed a Joint Operating Agreement that set forth their agreement among themselves as to their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect.  The Anadarko Defendants executed a Ratification and Joinder of the Joint Operating Agreement on or about December 17, 2009.  All signatories agreed that the Joint Operating Agreement would be retroactively effective as of October 1, 2009.

- Ex. 8 to First MSJ [Dep. Ex. 1243].[2]

- APC Answer ¶ 27, 29.

- BP Answer ¶ 29 (admitting that "on December 17, 2009, BPXP entered into a Ratification and Joinder of Operating Agreement with MOEX, Anadarko Petroleum and Anadarko E&P Company LP, effective October 1, 2009").

- Bryan Dep., at 84-87 (Ex. 29 hereto) (authenticating and discussing Dep. Ex. 1243, Ex. 8 to First MSJ).

- Huch Dep., at 173-76 (Ex. 31 hereto) (same).

- BP Exploration & Production Inc.'s Responses and Objections to the United States' First Set of Interrogatories and Second Set of Requests for Production ("BP Discovery Responses"), Interrogatory No. 32 (Ex. 35 hereto) (providing

---

[2] A copy of the Joint Operating Agreement (JOA) and executed Ratification and Joinder of the JOA is attached as Exhibit 8 to the United States' First MSJ.  Sections of the JOA referenced in the instant Statement of Undisputed Material Facts and the concurrently filed United States' Memorandum in Support of Partial Summary Judgment are attached hereto as Exhibit 26.

Bates Nos. for final, signed operating agreement, BP-HZN-2179MDL00054328 through BP-HZN-2179MDL00054572) (This Bates range is, in relevant part, substantively the same document as Ex. 8 to First MSJ [Dep. Ex. 1243]).

**<u>Additional Undisputed Facts relevant to BP's Liability:</u>**

34. BP is liable as an "operator" of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7).

35. Pursuant to BP's obligations under its Agreements with MOEX and Anadarko, BP prepared an Authorization for Expenditure for the drilling of the initial exploratory well, Macondo Well.  The AFE was executed by BP, MOEX, and Anadarko (Exs. 6, 7 hereto).

   - BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BP-HZN-2179MDL00057193 through BP-HZN-2179MDL00057208) (Initial AFE as executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, is Bates Nos. BP-HZN-2179MDL00057193-00057198)

   - Beirne Dep., at 105 (Ex. 29 hereto) (Q: All right. Explain to us: What is an authorization for expenditure?          A. It's my understanding it is a document that's generated under the joint operating agreement that provides for the funding of an operation or drilling of a well").

   - Deposition of Alan O'Donnell ("O'Donnell Dep."), May 5, 2011, at 127-28 (Ex. 32 hereto) (authenticating Dep. Ex. 1919 (Ex. 7 hereto) as initial AFE executed by Anadarko).

   - APC Discovery Responses, RFA No. 37 (Ex. 34 hereto) (admitting that Bates range for Dep. Ex. 1919 (Ex. 7 hereto) is a true, complete and accurate copy of the initial Authorization for Expenditure).

36. Two supplemental AFEs were prepared to cover additional costs related to the drilling of the Macondo Well.  These AFEs were executed by BP, MOEX, and Anadarko.  (Exs. 6, 8, 9 hereto).

   - BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BP-HZN-2179MDL00057193 through BP-HZN-2179MDL00057208).  (First and Second Supplemental AFEs executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, are Bates Nos. BP-HZN-2179MDL00057199-00057205).

- O'Donnell Dep., at 131-32; 135-36 (Ex. 32 hereto) (authenticating Dep. Exs. 1920 and 1921, respectively the First and Second Supplemental AFEs executed by Anadarko (Exs. 8 and 9 hereto).

- APC Discovery Responses, RFA Nos. 38 and 39 (Ex. 34 hereto) (admitting that Bates range for Dep. Exs. 1920 and 1921, Exs. 8 and 9 hereto, represent true, complete and accurate copies of the First and Second Supplemental AFEs).

37. A fourth AFE was prepared to authorize funding for the production casing for the Macondo Well.  This AFE was executed on or around April 15, 2010, by BP, MOEX and Anadarko.  (Exs. 6, 10 hereto).

- BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BP-HZN-2179MDL00057193 through BP-HZN-2179MDL00057208). (The executed AFEs for the production casing executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, is Bates Nos. BP-HZN-2179MDL00057206-00057208).

- Beirne Dep., at 266-68 (Ex. 28 hereto) (discussing Anadarko's execution of the production casing AFE).

- O'Donnell Dep., at 139-142 (Ex. 32 hereto) (authenticating Dep. Ex. 1922, Production Casing AFE, Ex. 10 hereto).

- APC Discovery Responses, RFA No. 40 (Ex. 34 hereto) (admitting that Bates range for Dep. Ex. 1922, Ex. 10 hereto, is a true, complete and accurate copy of the Production Casing AFE).

38. From January through May, 2010, BP sent "Joint Interest Billings" (JIBs) or invoices to co-owners MOEX and APC, which requested reimbursement to BP for the MOEX and APC's proportionate share of costs of casing and other physical components of the Macondo Well.

- Anadarko invoices – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs.  15, 17, 19, 21 and 23 hereto).

- APC  Discovery Responses, Interrogatory No. 17 (Ex. 34 hereto) (identifying Bates numbers for requests for payment sent by BP to APC pursuant to the Macondo JOA that correspond to Bates Numbers of Dep. Exs. 4204; 4206; 4208; 4210; 4212).

- MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896; (Exs. 11, 12, 13 and 14 hereto).

- BP Discovery Responses, RFA No. 27 (Ex. 35 hereto) (identifying Bates numbers for "joint interest billings to Anadarko and MOEX for the Macondo Well") (These Bates numbers include the same Bates ranges or substantively the same documents as Dep. Exs. 2891; 2893; 2895; 2896; 4204; 4206; 4208; 4210; 4212.).

- Beirne Dep., at 237-38 (Ex. 28 hereto) (confirming that an invoice for the Macondo Well contained itemization of tangible equipment).

39. The JIBs itemized tangible equipment – physical assets, such as the well head and casing – which was included as part of the proportionate costs to be reimbursed by APC and MOEX.

- Beirne Dep., at 237-38 (Ex. 28 hereto) (confirming that an invoice for the Macondo Well contained itemization of tangible equipment).

- Deposition of Jeremy Byrd ("Byrd Dep."), July 13, 2011, at 76:1-21 (Ex. 30 hereto) (confirming that an invoice to APC for the Macondo Well included costs of "tangible controllable equipment").

- Anadarko invoices – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs. 15, 17, 19, 21, and 23 hereto).

- MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896 (Exs. 11, 12, 13, and 14 hereto).

40. The JIBs for Macondo well costs did not include BP's proportionate share of the Macondo Well.  BP retained a 65% ownership interest in the Macondo Well.

- MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896 (Exs. 11, 12, 13 and 14 hereto) (identifying MOEX's 10% share of costs).

- Anadarko invoices  – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs. 15, 17, 19, 21 and 23 hereto) (identifying Anadarko's 33.33% share of costs up to April, where promote was exceeded and it was billed for a 25% share of costs).

41. BP is a Delaware corporation.

- BP Answer ¶ 15.

**<u>Additional Undisputed Facts Relevant to
Transocean Defendants' Liability:</u>**

42. The Transocean Defendants admits that one or more of the Transocean Defendants were the owners, owners *pro hoc vice*, and/or operators of the MODU *Deepwater Horizon*.

- Transocean Answer ¶¶ 19-21, 74.

- Drilling Contract No. 980249, RBS-8D Semisubmersible Drilling Unit, between Vastar Resources, Inc. and R&B Falcon Drilling Co., Dep. Ex. 4271 (Ex. 24 hereto).

43. The Transocean Defendants have admitted their ownership of the *Deepwater Horizon* in pleadings, discovery, and public reports.

- Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-02771, ¶ 6 (originally filed in S.D. Tx. May 13, 2010) ("Petitioners were at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice … of the MODU Deepwater Horizon, etc., and/or are considered "owners" of the vessel under the Limitation of Liability Act, 46 U.S.C. 30501 et seq., as a party sought to be held liable "as owner" of the MODU…") (Ex. 38 hereto).

- Transocean's Response to BP Parties' First Set of Requests for Admission ("Transocean RFA Responses"), RFA Nos. 5, 6 ("TO admits that Triton Asset Leasing GmbH was the owner of the Deepwater Horizon" … "and no other entity.") (Ex. 36 hereto).

- Transocean's Response to BP Parties' First Set of Interrogatories, Interrogatory No. 34 ("Transocean owns more than 130 rigs, but only two, the Marianas and Deepwater Horizon, performed work on the Macondo Well.") (Ex. 37 hereto).

- Macondo Well Incident: Transocean Internal Investigation, June 2011, at 9 ("Transocean was contracted by BP Exploration & Production Inc. (BP) to provide the Deepwater Horizon  rig and personnel to drill the Macondo well …"). (Ex. 25 hereto).

44. The Transocean Defendants have admitted their operation of the MODU *Deepwater Horizon* in pleadings and discovery.

- Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-02771, ¶ 6 (originally filed in S.D. Tx. May 13, 2010) ("Petitioners were at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice … of the MODU Deepwater Horizon, etc., and/or are considered "owners" of the vessel under the Limitation of Liability Act, 46 U.S.C. 30501 et seq., as a party sought to be held liable "as owner" of the MODU…") (Ex. 38 hereto).

- Transocean RFA Responses, RFA Nos. 7 and 44 ("TO was involved in the day-to-day operations of the *Deepwater Horizon*") (Ex. 36 hereto).

16

- Transocean RFA Responses, RFA No. 12 (OIMs are employed by Transocean Deepwater Inc. and Jimmy Harrell was the OIM aboard the *Deepwater Horizon* on April 20, 2010) (Ex. 36 hereto).

- Transocean RFA Responses, RFA No. 17 (The OIM was the senior Transocean manager onboard who coordinated rig operations while a well is being drilled with BP's well site leaders and generally managed the Transocean crew.) (Ex. 36 hereto).

- Transocean RFA Responses, RFA No. 21 (The Transocean person in charge holds overriding authority in situations involving safety and pollution prevention based upon written procedures, policies, recognized industry safe working practice, and relevant codes and standards.) (Ex. 36 hereto).

45. The Transocean Defendants are corporations.

- Transocean Offshore Deepwater Drilling Inc. is a Delaware corporation. Transocean Answer ¶ 21.

- Transocean Holdings LLC is a Delaware corporation.  Transocean Answer ¶ 20.

- Transocean Deepwater Inc. is a Delaware corporation.  Transocean Answer ¶ 22.

- Triton Asset Leasing GmbH is a Swiss corporation.  Transocean Answer ¶ 19.

**Additional Undisputed Facts Relevant to
Anadarko Defendants' Liability:**

46. Beginning in January, 2010, and continuing through May, 2010, APC received requests for payment from BP for costs associated with the construction of the Macondo Well in the form of invoices and cash call advances, which it paid timely.  APC paid invoices from BP for its proportionate share of the costs of the components that were installed in the Macondo Well.

- APC  Discovery Responses, Interrogatory No. 2(g) ("APC made payments on certain Joint Interest Billing invoices ('JIBs') from BP which provide a description of the items as covered as set forth therein," and referring the United States to certain JIBs) (Ex. 34 hereto).

- APC Discovery Responses, Interrogatory Nos. 17 and 18 (providing tables linking invoices to payments) (Ex. 34 hereto).

- January 2010 Invoice (Dep. Ex. 4204, Ex. 15 hereto); Payment (Dep. Ex. 4205, Ex. 16 hereto); Byrd Dep., at 74:7-76:21; 79:16-80:1 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment in full on February 26, 2010).

- February 2010 Invoice (Dep. Ex. 4206, Ex. 17 hereto); Payment (Ex. 4207, Ex. 18 hereto); Byrd Dep., at 82:12-20; 82:25 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment on March 25, 2010).

- March 2010 Invoice (Dep. Ex. 4208, Ex. 19 hereto); Payment (Dep. Ex. 4209, Ex. 20 hereto); Byrd Dep., at 85:2-6; 85:19-20; 87:4-16 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment in full on April 23, 2010).

- April Invoice (Dep. Ex. 4210, Ex. 21 hereto); Payment (Dep. Ex. 4211, Ex. 22 hereto); Byrd Dep., at 89:2; 89:6-9; 89:13-15; 91:24; 92:2-13 (Ex. 30 hereto) (authenticating invoice and remittance; confirming that APC paid on June 1, 2010 in full for all Macondo Well-related costs, less costs of response to incident).

- May Invoice (Dep. Ex. 4212, Ex. 23 hereto); Byrd Dep., at 92:17; 94:18-21; 94:23-95:2; 96:7-9; 96:11-97:16 (Ex. 30 hereto) (explaining that well-related costs specified on May invoice were paid through cash call advances, not a physical check).

47. In the invoices, which also include costs associated with other Wells, the costs for the Macondo Well are identified and tracked by the reference number to the Authorization for Expenditure executed by APC for the Macondo Well.

- Byrd Dep., at 30:22-31:2; 40:11-17 (Ex. 30 hereto).

48. The invoices were itemized to include strings of casing, cement, production casing, casing hanger, casing accessories, and the well head.

- Byrd Dep., at 76:1-21 (Ex. 30 hereto) (confirming that January invoice to APC for Macondo includes costs of "tangible controllable equipment").

49. APC paid its 33.33% (or, 25% after 110% of the well costs of the initial AFE was exceeded) proportionate share of costs associated with the Macondo Well, including the costs of the tangible personal property, from October 1, through April 20, 2010.  It did not pay any of the costs of the incident or response to the explosion and spill.  The final costs were paid through draw-down of a cash advance or cash call.

18

- Byrd Dep., at 92:17; 94:18-21; 94:23-95:2; 96:7-9; 96:11-97:16 (Ex. 30 hereto) (explaining that Macondo well-related costs specified on May invoice were paid through cash call advances, not a physical check).

- Byrd Dep., at 79:16-19; 79:22-80:1 (Ex. 30 hereto) (explaining that January invoice included costs dating from the spudding of the Macondo well in October 2009).

- Bryan Dep., at 51:2-52:24 (Ex. 29 hereto).

50. APC paid the proportionate share of costs sent to it on its own behalf.

- Byrd Dep., at 87:17-88:16 (Ex. 30 hereto) ("Anadarko Petroleum Corporation . . . [is] the only party that's being billed on this invoice for 33 percent.").

51. APC was a partial owner of the components that were installed in the Macondo Well, including the strings of casing, cement, production casing, casing hanger, and the well head.

- Byrd Dep., at 68:7-19; 67:17-24 (stating that APC's payment of invoices listing equipment meant that APC would hold a share in such equipment) (Ex. 30 hereto).

- Huch Dep., at 257:25-258:23 (stating that APC intended to own the tangible personal property comprising the Macondo Well, and clarifying that tangible personal property included equipment associated with the well, such as downhole pipe, wellheads, and casing equipment downhole) (Ex. 31 hereto).

- APC Discovery Responses, RFA No. 12 (admitting that APC "signed a well participation agreement which indicates that APC has agreed to participate in the Initial Exploratory Well.  The IEW was defined as 'consisting of all tangible personal property in the well.'") (Ex. 34 hereto).

- Huch Dep., at 262:13-264:19 (Ex. 31 hereto).

52. APC was a partial owner of tangible personal property comprising the Macondo Well.

- APC Discovery Responses, RFA Nos. 12, 13, 33 (Ex. 34 hereto).

53. APC was an owner of the Macondo Well.

- APC Discovery Responses, RFA No. 33 (In response to a contention interrogatory, APC responded that "it does not contend that APC is not a partial owner in the Macondo Well") (Ex. 34 hereto).

54. Anadarko E&P is a limited liability company incorporated in the State of Delaware.

- APC Answer ¶ 16.

55. Anadarko Petroleum Corporation is a corporation incorporated in the State of Delaware.

- APC Answer ¶ 17.

### <u>Admissibility of Exhibits</u>

A court may take judicial notice "at any stage of the proceeding" of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b) & (f). *See also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 & n.9 (5th Cir. 2005) (information available, *inter alia*, "on [an] agency's website" was "capable of accurate and ready determination by resort to a source whose accuracy on the matter cannot reasonably be questioned"); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports."); *In re Katrina Canal Breaches Consol. Litig.*, 533 F. Supp. 2d 615, 632 (E.D. La. 2008) (explaining that courts may take judicial notice of information published on government websites and compiling cases discussing same); *Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) ("[D]ue to the fact that the document is located on the website for the United States [agency], it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' and therefore subject to judicial notice by the Court" under Fed. R. Evid. 201. (quoting Fed. R. Evid. 201(b)).

Respectfully submitted,


IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources
   Division


JAMES NICOLL
Senior Counsel
NANCY FLICKINGER
Senior Attorney
SARAH HIMMELHOCH
Senior Litigation Counsel
DEANNA CHANG
Trial Attorney
SCOTT CERNICH
Trial Attorney
A. NATHANIEL CHAKERES
Trial Attorney
JUDY HARVEY
Trial Attorney
MATT LEOPOLD
Trial Attorney
ABIGAIL ANDRE
Trial Attorney


TONY WEST
Assistant Attorney General
Civil Division


PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
MICHELLE DELEMARRE
Trial Attorney
SHARON SHUTLER
Trial Attorney
JESSICA SULLIVAN
Trial Attorney
JESSICA MCCLELLAN
Trial Attorney
DAVID PFEFFER
Trial Attorney
MALINDA LAWRENCE
Trial Attorney
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
Telephone: 202-616-4000
Facsimile: 202-616-4002


*/s/ Steven O'Rourke*
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov


*/s/ R. Michael Underhill*
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130
Attorneys for the UNITED STATES OF AMERICA