# EXHIBIT 39

In Support of

Plaintiff United States' Memorandum of Law in Support of the
United States' Second Motion for Partial Summary Judgment; and
Statement of Undisputed Material Facts in Support Thereof

# United States Department of the Interior

## MINERALS MANAGEMENT SERVICE
Gulf of Mexico OCS Region
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70123-2394

OCS-G 32306

**DECISION**

| | |
|---|---|
| Offering Date | Map Area and Block Number |
| 03/19/2008 | NH16-10 - Mississippi Canyon - 252 |
| Rental | Balance of Bonus |
| $54,720.00 | $27,202,742.40 |
| Total Amount Due | $27,257,462.40 |

BP Exploration & Production Inc.
501 WestLake Park Boulevard
Houston, Texas 77079

## LEASE FORMS TRANSMITTED FOR EXECUTION

Pursuant to Section 8 of the Outer Continental Shelf Lands Act (67 Stat. 462; 43 U.S.C. 1337) as amended (92 Stat. 629), and the regulations pertaining thereto (30 CFR 256), your bid for the above block is accepted. Accordingly, in order to perfect your rights hereunder, the following actions must be taken:

1. Execute and return the three copies of attached lease. *(If lease is executed by an agent, evidence must be furnished of agent's authorization.)*

2. Pay the balance of bonus and the first year's rental indicated above in accordance with the attached Instructions for Electronic Transfer. Payment must be received by the Federal Reserve Bank of New York no later than noon, eastern standard time, on the 11th business day after receipt of this decision (30 CFR 256.47). That day is **May 20, 2008.**

3. [ ] Comply with bonding requirements according to 30 CFR 256, Subpart I.

Compliance with requirements 1, 2, and 3 above must be made not later than the 11th business day after receipt of this decision. Failure to comply with above requirements will result in forfeiture of the 1/5 bonus deposit and your rights to acquire the lease.

IMPORTANT: *The lease form requires the attachment of the* CORPORATE SEAL *to all leases executed by corporations.*

_____John L. Rodi_____
Acting Regional Director

Attachments                Date _____May 2, 2008_____


TAKE PRIDE IN AMERICA

| | Office | Serial number |
|---|---|---|
| | New Orleans, LA | OCS-G 32306 |
| UNITED STATES<br>DEPARTMENT OF THE INTERIOR<br>MINERALS MANAGEMENT SERVICE | Cash bonus<br><br>$34,003,428.00 | Rental rate per acre, hectare or fraction thereof<br>$9.50 per acre |
| OIL AND GAS LEASE OF<br>SUBMERGED LANDS UNDER THE<br>OUTER CONTINENTAL SHELF LANDS ACT<br><br>*This form does not constitute an information collection as defined by 44 U.S.C. 3502 and therefore does not require approval by the Office of Management and Budget.* | Minimum royalty rate per acre, hectare or fraction thereof<br><br>$9.50 per acre | Royalty rate<br><br>18 3/4 percent<br>Profit share rate |

This lease is effective as of **JUN 0 1 2008** (hereinafter called the "Effective Date") and shall continue for an initial period of **ten** years (hereinafter called the "Initial Period") by and between the United States of America (hereinafter called the "Lessor"), by the **Regional Director, Gulf of Mexico OCS Region**, Minerals Management Service, its authorized officer, and

**BP Exploration & Production Inc.**                                                                                                                                    **100%**



(hereinafter called the "Lessee"). In consideration of any cash payment heretofore made by the Lessee to the Lessor and in consideration of the promises, terms, conditions, and covenants contained herein, including the Stipulation(s) numbered **8** attached hereto, the Lessee and Lessor agree as follows:

**Sec. 1. Statutes and Regulations.** This lease is issued pursuant to the Outer Continental Shelf Lands Act of August 7, 1953, 67 Stat. 462; 43 U.S.C. 1331 et seq., as amended (92 Stat. 629), (hereinafter called the "Act"). The lease is issued subject to the Act; all regulations issued pursuant to the Act and in existence upon the Effective Date of this lease; all regulations issued pursuant to the statute in the future which provide for the prevention of waste and conservation of the natural resources of the Outer Continental Shelf and the protection of correlative rights therein; and all other applicable statutes and regulations.

**Sec. 2. Rights of Lessee.** The Lessor hereby grants and leases to the Lessee the exclusive right and privilege to drill for, develop, and produce oil and gas resources, except helium gas, in the submerged lands of the Outer Continental Shelf containing approximately **5,760.00** acres or                hectares (hereinafter referred to as the "leased area"), described as follows:

**All of Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10.**

This lease instrument is amended by this addendum pursuant to the Final Notice of Sale for OCS Oil and Gas Lease Sale 206 and in accordance with debarment and suspension (nonprocurement) regulations.

Form MMS-2005 (March 1986)
(Supersedes MMS-2005 August 1982)

These rights include:
  (a) the nonexclusive right to conduct within the leased area geological and geophysical explorations in accordance with applicable regulations;
  (b) the nonexclusive right to drill water wells within the leased area, unless the water is part of geopressured-geothermal and associated resources, and to use the water produced therefrom for operations pursuant to the Act free of cost, on the condition that the drilling is conducted in accordance with procedures approved by the Director of the Minerals Management Service or the Director's delegate (hereinafter called the "Director"); and
  (c) the right to construct or erect and to maintain within the leased area artificial islands, installations, and other devices permanently or temporarily attached to the seabed and other works and structures necessary to the full enjoyment of the lease, subject to compliance with applicable laws and regulations.

**Sec. 3. Term.** This lease shall continue from the Effective Date of the lease for the Initial Period and so long thereafter as oil or gas is produced from the leased area in paying quantities, or drilling or well reworking operations, as approved by the Lessor, are conducted thereon, or as otherwise provided by regulation.

**Sec. 4. Rentals.** ~~The Lessee shall pay the Lessor, on or before the first day of each lease year which commences prior to a discovery in paying quantities of oil or gas on the leased area, a rental as shown on the face hereof.~~
**See attached Lease Addendum for Rentals, under Sec. 4.**

**Sec. 5. Minimum Royalty.** ~~The Lessee shall pay the Lessor, at the expiration of each lease year which commences after a discovery of oil and gas in paying quantities, a minimum royalty as shown on the face hereof or, if there is production, the difference between the actual royalty required to be paid with respect to such lease year and the prescribed minimum royalty if the actual royalty paid is less than the minimum royalty.~~
**See attached Lease Addendum for Minimum Royalty, under Sec. 5.**

**Sec. 6. Royalty on Production.**
  (a) The Lessee shall pay a fixed royalty as shown on the face hereof in amount or value of production saved, removed, or sold from the leased area. Gas (except helium) and oil of all kinds are subject to royalty. Any Lessee is liable for royalty payments on oil or gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator of the lease, or due to the failure to comply with any rule or regulation, order, or citation issued under the Federal Oil and Gas Royalty Management Act of 1982 or the Act. The Lessor shall determine whether production royalty shall be paid in amount or value.
  (b) The value of production for purposes of computing royalty on production from this lease shall never be less than the fair market value of the production. The value of production shall be the estimated reasonable value of the production as determined by the Lessor, due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field or area, to the price received by the Lessee, to posted prices, to regulated prices, and to other relevant matters. Except when the Lessor, in its discretion, determines not to consider special pricing relief from otherwise applicable Federal regulatory requirements, the value of production for the purposes of computing royalty shall not be deemed to be less than the gross proceeds accruing to the Lessee from the sale thereof. In the absence of good reason to the contrary, value computed on the basis of the highest price paid or offered at the time of production in a fair and open market for the major portion of like-quality products produced and sold from the field or area where the leased area is situated will be considered to be a reasonable value.
  (c) When paid in value, royalties on production shall be due and payable monthly on the last day of the month next following the month in which the production is obtained, unless the Lessor designates a later time. When paid in amount, such royalties shall be delivered at pipeline connections or in tanks provided by the Lessee. Such deliveries shall be made at reasonable times and intervals and, at the Lessor's option, shall be effected either (i) on or immediately adjacent to the leased area, without cost to the Lessor, or (ii) at a more convenient point closer to shore or on shore, in which event the Lessee shall be entitled to reimbursement for the reasonable cost of transporting the royalty substance to such delivery point. **See attached Lease Addendum for Royalty Suspension Provisions, under Sec. 6.**

**Sec. 7. Payments.** The Lessee shall make all payments (rentals, royalties and any other payments required by this lease) to the Lessor by electronic transfer of funds, check, draft on a solvent bank, or money order unless otherwise provided by regulations or by direction of the Lessor. Rentals, royalties, and any other payments required by this lease shall be made payable to the Minerals Management Service and tendered to the Director. Determinations made by the Lessor as to the amount of payment due shall be presumed to be correct and paid as due.

**Sec. 8. Bonds.** The Lessee shall maintain at all times the bond(s) required by regulation prior to the issuance of the lease and shall furnish such additional security as may be required by the Lessor if, after operations have begun, the Lessor deems such additional security to be necessary.

**Sec. 9. Plans.** The Lessee shall conduct all operations on the lease area in accordance with approved exploration plans and approved development and production plans as are required by regulations. The Lessee may depart from an approved plan only as provided by applicable regulations.

**Sec. 10. Performance.** The Lessee shall comply with all regulations and Orders. After due notice in writing, the Lessee shall drill such wells and produce at such rates as the Lessor may require in order that the leased area or any part thereof may be properly and timely developed and produced in accordance with sound operating principles.

**Sec. 11. Directional Drilling.** A directional well drilled under the leased area from a surface location on nearby land not covered by this lease shall be deemed to have the same effect for all purposes of the lease as a well drilled from a surface location on the leased area. In those circumstances, drilling shall be considered to have been commenced on the leased area when drilling is commenced on the nearby land for the purpose of directionally drilling under the leased area, and production of oil or gas from the leased area through any directional well surfaced on nearby land or drilling or reworking of any such directional well shall be considered production or drilling or reworking operations on the leased area for all purposes of the lease. Nothing contained in this Section shall be construed as granting to the Lessee any interest, license, easement, or other right in any nearby land.

Page 2

## Sale 206 Lease Addendum – RS18
## Leases in Water Depths from 1600 – 2000 Meters

*This lease instrument is amended by this addendum pursuant to the Final Notice of Sale for OCS Oil and Gas Lease Sale 206 and in accordance with debarment and suspension (nonprocurement) regulations.*

### Sec. 1. Statutes and Regulations.

Notwithstanding the language in Sec. 1 of the lease instrument, and in accordance with regulations at 2 CFR Parts 180 and 1400, the Lessee shall comply with the U.S. Department of the Interior's nonprocurement debarment and suspension requirements and agrees to communicate this requirement to comply with these regulations to persons with whom the lessee does business as it relates to this lease by including this term as a condition to enter into their contracts and other transactions.

### Sec. 4. Rentals.

Annual rental as shown on the face of this lease shall be paid on or before the 1st day of each lease year until determination of well producibility is made, then at the expiration of each lease year until the start of royalty-bearing production.

### Sec. 5. Minimum Royalty.

After the start of royalty-bearing production, regardless of the year of the lease and notwithstanding any royalty suspension that may apply: $9.50 per acre or fraction thereof per year, to be paid at the expiration of each lease year with credit applied for actual royalty paid during the lease year. If actual royalty paid exceeds the minimum royalty requirement, then no minimum royalty payment is due.

### Sec. 6. Royalty on Production.

Notwithstanding the language in Sec. 6 of the lease instrument, and in accordance with regulations at 30 CFR Part 260, this lease may be eligible for royalty relief under the Energy Policy Act of 2005 (EPAct05), Section 345 (Royalty Relief for Deep Water Production). The following Royalty Suspension Provisions for deepwater oil and gas production apply to this lease. In addition to these provisions, and the EPAct05, refer to 30 CFR 218.151 and applicable provisions of Sections 260.120-260.124 for regulations on how royalty suspensions relate to field assignment, product types, rental obligations, and supplemental royalty relief.

1. This lease will receive a royalty suspension of 12 million barrels of oil equivalent (BOE).

2. In any calendar year during which the arithmetic average of the daily closing prices for the nearby delivery month on the New York Mercantile Exchange (NYMEX) for the applicable product exceeds the adjusted product price threshold, the Lessee must pay royalty on production that would otherwise receive royalty relief under 30 CFR Part 260 or supplemental relief under 30 CFR Part 203, and such production will count towards the royalty suspension volume (RSV).

   a) The base level price threshold for light sweet crude oil is set at $35.75 per barrel in 2006. The adjusted oil price threshold in any subsequent calendar year is computed by changing the price threshold applicable in the immediately preceding calendar year by the percentage by which the implicit price deflator for the gross domestic product has changed during the calendar year.

Page 2a

b) The base level price threshold for natural gas is set at $4.47 per million British thermal units (MMBTU) in 2006. The adjusted gas price threshold in any subsequent calendar year is computed by changing the price threshold applicable in the immediately preceding calendar year by the percentage by which the implicit price deflator for the gross domestic product has changed during the calendar year.

c) As an example, if the implicit price deflator indicates that inflation is 2.5 percent in 2007 and 2 percent in 2008, then the price threshold in calendar year 2008 would become $37.37 per barrel for oil and $4.67 for gas. Therefore, royalty on oil production in calendar year 2008 would be due if the average of the daily closing prices for the nearby delivery month on the NYMEX in 2008 exceeds $37.37 per barrel, and royalty on gas production in calendar year 2008 would be due if the average of the daily closing prices for the nearby delivery month on the NYMEX in 2008 exceeds $4.67 per MMBTU.

d) The MMS plans to provide notice in March of each year when adjusted price thresholds for the preceding year were exceeded. Once this determination is made, based on the then-most-recent implicit price deflator information, it will not be revised regardless of any subsequent adjustments in the implicit price deflator published by the U.S. Government for the preceding year. Information on price thresholds is available at the MMS web site http://www.mms.gov/econ.

e) In cases where the actual average price for the product exceeds the adjusted price threshold in any calendar year, royalties must be paid no later than 90 days after the end of the year (see 30 CFR 260.122 (b)(2) for more detail), and royalties must be paid provisionally in the following calendar year (See 30 CFR 260.122 (c) for more detail).

f) Full royalties are owed on all production from a lease after the RSV is exhausted, beginning on the first day of the month following the month in which the RSV is exhausted.

Page 2b

**Stipulation No. 8 - Protected Species**

The Outer Continental Shelf Lands Act (OCSLA) at 43 U.S.C. 1333 extends the laws of the United States to the subsoil and seabed of the OCS and to all artificial islands, and all installations and other devices erected thereon for the purpose of exploring for, developing, producing resources, or transporting such resources. The laws of the United States include the Endangered Species Act and the Marine Mammal Protection Act, which are designed to protect threatened and endangered species and marine mammals. The OCSLA at 43 U.S.C. 1332 also requires expeditious and orderly development of the OCS, subject to environmental safeguards. The MMS implements those laws in 30 CFR part 250, Subpart A (250.101, 250.106) and Subpart B Plans and Information ("implementing regulations").

In response to these laws and MMS implementing regulations, the lessee and its operators must:

(a) collect and remove flotsam resulting from activities related to exploration, development, and production of this lease;

(b) post signs in prominent places on all vessels and platforms used as a result of activities related to exploration, development, and production of this lease detailing the reasons (legal and ecological) why release of debris must be eliminated;

(c) observe for marine mammals and sea turtles while on vessels, reduce vessel speed to 10 knots or less when assemblages of cetaceans are observed, and maintain a distance of 90 meters or greater from whales, and a distance of 45 meters or greater from small cetaceans and sea turtles;

(d) employ mandatory mitigation measures prescribed by MMS or National Oceanic and Atmospheric Administration for all seismic surveys including the use of an "exclusion zone" based upon the appropriate water depth, ramp-up and shutdown procedures, visual monitoring, and reporting;

(e) immediately report all sightings and locations of injured or dead protected species (marine mammals and sea turtles) to the appropriate stranding network. If oil and gas industry activity is responsible for the injured or dead animal (e.g., because of a vessel strike), the responsible parties should remain available to assist the stranding network. If the injury or death was caused by a collision with the lessee's vessel, the lessee must notify MMS within 24 hours of the strike; and

(f) identify important habitats, including designated critical habitat,- used by listed species (e.g., sea turtle nesting beaches, piping plover critical habitat), in oil spill contingency planning and require the strategic placement of spill cleanup equipment to be used only by personnel trained in less-intrusive cleanup techniques on beach and bay shores.

The lessee and its operators, personnel, and subcontractors are responsible for carrying out the specific mitigation measures outlined in the most current MMS Notices to Lessees, which interpret requirements in the above-mentioned implementing regulations.

Sec. 12. Safety Requirements. The Lessee shall:

(a) maintain all places of employment within the leased area in compliance with occupational safety and health standards and, in addition, free from recognized hazards to employees of the Lessee or of any contractor or subcontractor operating within the lease area;

(b) maintain all operations within the leased area in compliance with regulations or orders intended to protect persons, property, and the environment on the Outer Continental Shelf; and

(c) allow prompt access, at the site of any operation subject to safety regulations, to any authorized Federal inspector and shall provide any documents and records which are pertinent to occupational or public health, safety, or environmental protection as may be requested.

Sec. 13. Suspension and Cancellation.

(a) The Lessor may suspend or cancel this lease pursuant to section 5 of the Act, and compensation shall be paid when provided by the Act.

(b) The Lessor may, upon recommendation of the Secretary of Defense, during a state of war or national emergency declared by Congress or the President of the United States, suspend operations under the lease, as provided in section 12(c) of the Act, and just compensation shall be paid to the Lessee for such suspension.

Sec. 14. Indemnification. The Lessee shall indemnify the Lessor for, and hold it harmless from, any claim, including claims for loss or damage to property or injury to persons caused by or resulting from any operation on the leased area conducted by or on behalf of the Lessee. However, the Lessee shall not be held responsible to the Lessor under this section for any loss, damage, or injury caused by or resulting from:

(a) negligence of the Lessor other than the commission or omission of a discretionary function or duty on the part of a Federal Agency whether or not the discretion involved is abused; or

(b) the Lessee's compliance with an order or directive of the Lessor against which an administrative appeal by the Lessee is filed before the cause of action for the claim arises and is pursued diligently thereafter.

Sec. 15. Disposition of Production.

(a) As provided in section 27(a)(2) of the Act, the Lessor shall have the right to purchase not more than 16 2/3 percent by volume of the oil and gas produced pursuant to the lease at the regulated price or, if no regulated price applies, at the fair market value at the wellhead of the oil and gas saved, removed, or sold, except that any oil or gas obtained by the Lessor as royalty or net profit share shall be credited against the amount that may be purchased under this subsection.

(b) Pursuant to section 27(b) and (c) of the Act, the Lessor may offer and sell certain oil and gas obtained or purchased pursuant to a lease. As provided in section 27(d) of the Act, the Lessee shall take any Federal oil or gas for which no acceptable bids are received, as determined by the Lessor, and which is not transferred to a Federal Agency pursuant to section 27(a)(3) of the Act, and shall pay to the Lessor a cash amount equal to the regulated price or, if no regulated price applies, the fair market value of the oil or gas so obtained.

(c) As provided in section 8(b)(7) of the Act, the Lessee shall offer 20 percent of the crude oil, condensate, and natural gas liquids produced on the lease, at the market value and point of delivery as provided by regulations applicable to Federal royalty oil, to small or independent refiners as defined in the Emergency Petroleum Allocation Act of 1973.

(d) In time of war or when the president of the United States shall so prescribe, the Lessor shall have the right of first refusal to purchase at the market price all or any portion of the oil or gas produced from the leased area, as provided in section 12(b) of the Act.

Sec. 16. Unitization, Pooling, and Drilling Agreements. Within such time as the Lessor may prescribe, the Lessee shall subscribe to and operate under a unit, pooling, or drilling agreement embracing all or part of the lands subject to this lease as the Lessor may determine to be appropriate or necessary. Where any provision of a unit, pooling, or drilling agreement, approved by the Lessor, is inconsistent with a provision of this lease, the provision of the agreement shall govern.

Sec. 17. Equal Opportunity Clause. During the performance of this lease, the Lessee shall fully comply with paragraphs (1) through (7) of section 202 of Executive Order 11246, as amended (reprinted in 41 CFR 60-1.4(a)), and the implementing regulations which are for the purpose of preventing employment discrimination against persons on the basis of race, color, religion, sex, or national origin. Paragraphs (1) through (7) of section 202 of Executive Order 11246, as amended, are incorporated in this lease by reference.

Sec. 18. Certification of Nonsegregated Facilities. By entering into this lease, the Lessee certifies, as specified in 41 CFR 60-1.8, that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments and that it does not and will not permit its employees to perform their services at any location under its control where segregated facilities are maintained. As used in this certification, the term "segregated facilities" means, but is not limited to, any waiting rooms, work areas, restrooms and washrooms, restaurants and other eating areas, timeclocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin, because of habit, local custom, or otherwise. The Lessee further agrees that it will obtain identical certifications from proposed contractors and subcontractors prior to award of contracts or subcontracts unless they are exempt under 41 CFR 60-1.5.

Sec. 19. Reservations to Lessor. All rights in the leased area not expressly granted to the Lessee by the Act, the regulations, or this lease are hereby reserved to the Lessor. Without limiting the generality of the foregoing, reserved rights included:

(a) the right to authorize geological and geophysical exploration in the lease area which does not unreasonably interfere with or endanger actual operations under the lease, and the right to grant such easements or rights-of-way upon, through, or in the leased area as may be necessary or appropriate to the working of other lands or to the treatment and shipment of products thereof by or under authority of the Lessor;

(b) the right to grant leases for any minerals other than oil and gas within the leased area, except that operations under such leases shall not unreasonably interfere with or endanger operations under this lease;

(c) the right, as provided in section 12(d) of the Act, to restrict operations in the leased area or any part thereof which may be designated by the Secretary of Defense, with approval of the President, as being within an area needed for national defense and, so long as such designation remains in effect, no operations may be conducted on the surface of the leased area or the part thereof included within the designation except with the concurrence of the Secretary of Defense. If operations or production under this lease within any designated area are suspended pursuant to this paragraph, any payments of rentals and royalty prescribed by this lease likewise shall be suspended during such period of suspension of operations and production, the term of this lease shall be extended by adding thereto any such suspension period, and the Lessor shall be liable to the Lessee for such compensation as is required to be paid under the Constitution of the United States.

Sec. 20. Transfer of Lease. The Lessee shall file for approval with the appropriate field office of the Minerals Management Service any instrument of assignment or other transfer of this lease, or any interest therein, in accordance with applicable regulations.

Sec. 21. Surrender of Lease. The Lessee may surrender this entire lease or any officially designated subdivision of the leased area by filing with the appropriate field office of the Minerals Management Service a written relinquishment, in triplicate, which shall be effective as of the date of filing. No surrender of this lease or of any portion of the leased area shall relieve the Lessee or its surety of the obligation to pay all accrued rentals, royalties, and other financial obligations or to abandon all wells on the area to be surrendered in a manner satisfactory to the Director.

(Continued on reverse)

**Sec. 22. Removal of Property on Termination of Lease.** Within a period of 1 year after termination of this lease in whole or in part, the Lessee shall remove all devices, works, and structures from the premises no longer subject to the lease in accordance with applicable regulations and Orders of the Director. However, the Lessee may, with the approval of the Director, continue to maintain devices, works, and structures on the leased area for drilling or producing on other leases.

**Sec. 23. Remedies in Case of Default.**
(a) Whenever the Lessee fails to comply with any of the provisions of the Act, the regulations issued pursuant to the Act, or the terms of this lease, the lease shall be subject to cancellation in accordance with the provisions of section 5(c) and (d) of the Act and the Lessor may exercise any other remedies which the Lessor may have, including the penalty provisions of section 24 of the Act. Furthermore, pursuant to section 8(o) of the Act, the Lessor may cancel the lease if it is obtained by fraud or misrepresentation.

(b) Nonenforcement by the Lessor of a remedy for any particular violation of the provisions of the Act, the regulations issued pursuant to the Act, or the terms of this lease shall not prevent the cancellation of this lease or the exercise of any other remedies under paragraph (a) of this section for any other violation or for the same violation occurring at any other time.

**Sec. 24. Unlawful Interest.** No member of, or Delegate to, Congress, or Resident Commissioner, after election or appointment, or either before or after they have qualified and during their continuance in office, and no officer, agent, or employee of the Department of the Interior, except as provided in 43 CFR Part 20, shall be admitted to any share or part in this lease or derive any benefit that may arise therefrom. The provisions of Section 3741 of the Revised Statutes, as amended, 41 U.S.C. 22, and the Act of June 25, 1948, 62 Stat. 702, as amended, 18 U.S.C. 431-433, relating to contracts made or entered into, or accepted by or on behalf of the United States, form a part of this lease insofar as they may be applicable.

BP Exploration & Production Inc.

_____
(Lessee)
(Signature of Authorized Officer)

Kemper Howe
_____
(Name of Signatory)

Attorney-in-Fact
_____
(Title)

May 8, 2008
_____
(Date)

THE UNITED STATES OF AMERICA, Lessor

_____
(Signature of Authorized Officer)

**Lars Herbst**
_____
(Name of Signatory)

Regional Director
Gulf of Mexico OCS Region
Minerals Management Service
_____
(Title)

**1 4 MAY 2008**
_____
(Date)

501 WestLake Park Boulevard
Houston, Texas 77079
_____
(Address of Lessee)

*If this lease is executed by a corporation, it must bear the corporate seal.*

Page 4

DEPARTMENT OF THE INTERIOR
MINERALS MANAGEMENT SERVICE
RECEIPT CONFIRMATION REPORT LIST FOR
GULF OF MEXICO LEASE SALE 206

DCN: 051408

| OCS-G# | QUAL# | COMPANY | AMOUNT |
|---|---|---|---|
| 32395 | 02079 | Nexen Petroleum Offshore U.S.A. Inc. | $2,014,470.40 |
| 32636 | 01207 | Petrobras America Inc. | 1,855,120.00 |
| 32656 | 01207 | Petrobras America Inc. | 3,382,720.00 |
| 32608 | 02748 | Statoil Gulf of Mexico LLC | 855,137.60 |
| 32306 | 02481 | BP Exploration & Production Inc. | 27,257,462.40 |
| 32557 | 02481 | BP Exploration & Production Inc. | 51,333,744.00 |
| 32637 | 02481 | BP Exploration & Production Inc. | 937,462.40 |
| 32623 | 00276 | Exxon Mobil Corporation | 507,120.00 |
| 32444 | 02873 | Cobalt International Energy, L.P. | 4,893,120.00 |
| 32458 | 02873 | Cobalt International Energy, L.P. | 1,989,831.20 |
| 32459 | 02873 | Cobalt International Energy, L.P. | 647,336.00 |
| 32460 | 02873 | Cobalt International Energy, L.P. | 9,989,831.20 |
| 32465 | 02873 | Cobalt International Energy, L.P. | 807,336.00 |
| 32540 | 02873 | Cobalt International Energy, L.P. | 1,189,831.20 |
| 32608 | 02748 | Statoil Gulf of Mexico LLC | 855,137.60 |

**TOTAL   $107,660,522.40**

The above leases were   paid in full on May 14, 2008.

_Sue Dickson_
**SIGNATURE**

**Adjudication Assistant**
**TITLE**

**May 15, 2008**
**DATE**

**bp**

BP Exploration & Production Inc.
501 WestLake Park Boulevard
Houston, Texas 77079

## Via Overnight Delivery

May 15, 2008

Minerals Management Service
1201 Elmwood Park Boulevard
New Orleans, LA 70123-2394



ATTN: Debbie Armond -- MS5421

Dear Ms. Armond:

We have executed and affixed the corporate seat to the following lease(s) which are being returned for your further handling:

| OCS Number | Area/Block |
| --- | --- |
| G 32557 | Atwater Valley 47 |
| G 32637 | Keathley Canyon 561 |
| G 32306 | Mississippi Canyon 252 |

The balance of the bonus due and first year rental for these lease(s) will be submitted by Electronic Funds Transfer (EFT) on or before May 20, 2008.

Please acknowledge receipt of this letter and enclosures by stamping "RECEIVED" on the enclosed copy of this letter and return it to my attention.

Also enclosed are three Designations of Operator forms whereby Woodside Energy (USA) Inc. designates BP as the Operator of Atwater Valley Block 47.

Very truly yours,

BP Exploration & Production Inc.

Dianna Stein

Sale Coordinator

Enclosures

# BID FORM

Regional Director  
Minerals Management Service, DOI  
Gulf of Mexico OCS Region  
1201 Elmwood Park Boulevard  
New Orleans, Louisiana 70123-2394

Oil and Gas Lease Sale __206__

Date of Lease Sale: __March 19, 2008__

Company Submitting Bid:  
__BP Exploration & Production Inc.__

GOM Company Number: __02481__

## Oil and Gas Lease Bid

It is understood that this bid legally binds the bidder(s) to comply with all applicable regulations, including paying the 1/5th bonus on all high bids, as provided in the Final Notice of Sale.

The following bid is submitted for an oil and gas lease on the area and block of the Outer Continental Shelf specified below:

| Map Name | Map Number | Block Number | Amount Bid |
|---|---|---|---|
| **Mississippi Canyon** | **NH16-10** | **252** | **$34,003,428.00** |

| GOM Company Number | Percent Interest | Company Name(s), Address(es), and Signature(s) |
|---|---|---|
| **02481** | **100.00%** | **BP Exploration & Production Inc.**<br>501 WestLake Park Boulevard<br>Houston, Texas 77079<br><br>By: _[signature]_<br>O. Kirk Wardlaw<br>Attorney-in-Fact |
| | Total: 100.00% | |