# EXHIBIT 41

In Support of

Plaintiff United States' Memorandum of Law in Support of the
United States' Second Motion for Partial Summary Judgment; and
Statement of Undisputed Material Facts in Support Thereof



Apr 4 2011
1:12PM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico, on April 20, 2010 | *<br>*<br>*<br>* | MDL No. 2179<br><br>SECTION: J |
| Applies to: *All Cases.* | *<br>* | JUDGE BARBIER |
| * * * * * * * * * * * * | | MAGISTRATE SHUSHAN |

## AGREED 30(b)(6) DEPOSITION NOTICE OF ANADARKO
## (WITH 30(b)(5) DOCUMENT REQUESTS)

By agreement of Plaintiffs Liaison Counsel, Defense Liaison Counsel, Coordinating

Counsel for the States, Coordinating Counsel for the U.S., and Counsel for Defendants,

Anadarko Petroleum Corporation and Anadarko E&P Company, LP, (collectively "Anadarko"),

Anadarko shall, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-

TRIAL ORDER NO. 17, as supplemented and amended by PRE-TRIAL ORDER 27, designate and

produce one or more officers, managers, agents, employees, or other representatives of Anadarko

to discuss the Areas of Inquiry identified below. The times and locations of the depositions will

be scheduled in conjunction with the fact depositions of the designees in their individual

capacities, or otherwise as may be scheduled with Judge Shushan and the parties.



EXHIBIT # 1597

WIT:

## Areas of Inquiry

1.    The application, permitting, licensing, lease, regulatory, contracting and/or other process by which BP obtained (and retained) the rights by, from and/or thru the (former) Minerals Management Services ("MMS") to explore, drill for, develop and/or produce oil and/or other hydrocarbons from the Macondo Prospect (Mississippi Canyon Block 252).

2.    The application, permitting, licensing, lease, regulatory, contracting and/or other process by which Anadarko obtained (and retained) the rights by, from and/or thru the (former) Minerals Management Services ("MMS"), and/or BP, to participate in the exploration, drilling, development and/or production of oil and/or other hydrocarbons from the Macondo Prospect (Mississippi Canyon Block 252).

3.    The preparation, drafting, approval and submission of any and all BP regional spill response plans relating to the Macondo Prospect (Mississippi Canyon Block 252) or considered or reviewed by Anadarko prior to April 21, 2010 in connection with the Macondo Prospect.

4.    Contribution, participation or review by Anadarko of any and all BP regional spill response plans relating to the Macondo Well or considered or reviewed by Anadarko prior to April 21, 2010 in connection with the Macondo Well.

5.    The existence, nature, scope, meaning and intent of drilling contracts, service agreements, mineral lease and/or mineral rights and/or royalty agreements, joint operation and/or exploration and/or production and/or joint-venture agreements, indemnity agreements, and/or charter agreements, relating or pertaining to the Macondo Prospect, the Deepwater Horizon, and/or the Macondo Well, including, but not limited to, contracts and/or agreements with: (a) Minerals Management Services ("MMS"); (b) BP; (c) MOEX; (d) Transocean; (e) Halliburton; (f) M1 LLC and/or M1-Swaco; (g) Weatherford; and/or (h) Schlumberger.

6.    The existence, contents, scope and nature of your communications with BP, other co-lessees, and MMS prior to your entering into, joining or ratifying the Lease and the Joint Operating Agreement, including without limitation any analyses, forecasts, evaluations, appraisals, or other assessments of the productivity of the Lease.

7.    Any investigation, evaluation, due diligence, or other assessment performed by you prior to entering into or joining the Lease and JOA (and designating BP as the Lease operator), including without limitation any analyses, forecasts, appraisals, or other studies, concerning (1) BP, and its affiliates, parents, and related companies, and their environmental, health and safety record; (2) any other party to the Lease and Joint Operating Agreement, and (3) the productivity of the exploration and production under the Lease; and any communication with BP or others concerning such investigations or assessments.

8.    The existence, scope and meaning of your relationship with BP, pursuant to the JOA or otherwise, including without limitation (1) the terms of the JOA; (2) provisions,

mechanisms, or rights you could exercise in the event of a health, safety or environmental issue or concern; (3) rights you had to refuse to finance a phase of exploration, cost overruns, or other action under the JOA/Lease and the treatment of such a refusal under the JOA.

9.    The existence, nature, scope and contents of any and all Quantified Risk Assessment ("QRA") and/or Major Accident Risk ("MAR") analysis or evaluation relating to the exploration, development, production and/or drilling of the Macondo Well including, but not limited to, any cost-benefit or risk-benefit analysis which attempts to quantify or otherwise place a cost on the value of human life.

10.   The existence, nature and substance of economic, financial, accounting, or other evaluations, projections or analyses of (and/or communications regarding) the anticipated, projected or potential income, revenue and/or profit anticipated or expected to be realized from the Macondo Prospect (Mississippi Canyon Block 252).

11.   The existence, nature and substance of mud log communications and/or analyses, and/or post-mud log communications and/or analyses, regarding the commercial viability of the Macondo Prospect (Mississippi Canyon Block 252).

12.   The overall budget for the Macondo Well exploration, drilling, development and/or temporary abandonment project, including the process for approving cost overruns or other changes by Anadarko and/or its officers, divisions, parent companies.

13.   Contribution, participation, authorization, criticism, objection, approval or review by Anadarko of budgetary changes, cost overruns, or other modifications to the operational expenses of the Macondo Well drilling, exploration, development or production process.

14.   All financial transactions occurring pursuant to the JOA, including without limitation the preparation, existence, purpose and amount of any and all Authorizations for Expenditures (AFEs) and your approval thereof; any invoices from BP or others that you received pursuant to the JOA or the Joint Account created thereunder; any payments you made to BP, to other participants in the JOA, to contractors, or to MMS in connection with the Macondo Well, the Lease, or the JOA; and proceeds from salvage operations or any other activities post-spill that you received pursuant to the JOA or the Joint Account created thereunder.

15.   The existence, nature, scope, access and/or use of any and all real-time data feeds, data dumps, or other electronic communications to, from and/or regarding the navigational, drilling, completion, temporary abandonment or other operations of the Deepwater Horizon and/or the Macondo Well, including, but not limited to, the "Hitec" system, and/or the "INSITE" (or "Sperry Sun") real-time feed data that was transmitted from the Deepwater Horizon, including, but not limited to, the access and/or use of any such systems and/or review of such data by officers, directors or employees of Anadarko.

16.   Any specific information or real time data to which you or your designees had access or received on April 20, 2011 concerning the Macondo Well.

17. Any specific information concerning the Macondo Well actually monitored or reviewed by you or your designees on April 20, 2011.

18. The existence, nature and contents of any discussions with MOEX, BP, Transocean, Cameron and/or Halliburton regarding the potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.

19. The existence, nature, scope, contents and results of any and all geological, technical, engineering, professional, management, economic and/or other testing, evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other consequences thereof.

20. The extraction, handling, storage, chain-of-custody documentation, physical property documentation, analysis, evaluation and/or testing of the Blow-Out Preventer ("BOP") on the Deepwater Horizon on April 20, 2010.

21. Any and all communications or discussions between or among You, BP and/or MOEX, and/or any other knowledge or experience known to you prior to April 21, 2010 regarding the estimated, budgeted, expected and/or actual time and/or cost savings realized at the Macondo Well or similar wells by:

    1. Number and Nature of Centralizers Utilized
    2. Foregoing Substantiated Foam Stability Test Results
    3. Not Running Cement Bond or other Evaluation Log
    4. Using Spacer Made from Combined Lost Circulation Materials to Avoid Disposal Issues
    5. Displacing Mud from Riser Before Setting Surface Cement Plug
    6. Setting Surface Cement Plug 3,000 Feet Below Mud Line in Seawater
    7. Not Installing Additional Barriers During Temporary Abandonment Procedure
    8. Not Performing Further Well Integrity Diagnostics in Light of Troubling and Unexpected Negative Pressure Test Results
    9. Bypassing Pits and Conducting Other Simultaneous Operations During Displacement

22. The presence, participation, supervision or other involvement of officers, directors or other employees of BP p.l.c.: (i) in the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (ii) in the advertising and/or public relations effort directed to and/or conducted within the United States from April 20, 2010, thru the present; (iii) in responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; (iv) in the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010; and/or (v) in the establishment, maintenance, staffing, funding and/or administration of the BP Claims Facility and/or Gulf Coast Claims Facility.

23.     The presence, participation, supervision or other involvement of Mitsui Oil Exploration Company Ltd ("MOECO") and/or Mitsui & Co, Ltd ("Mitsui"), and/or their officers, directors or employees, in: (i) investment in the Macondo Well, including any and all related rights, interests and/or operations; (ii) the exploration, development, drilling and/or production of the Macondo Well, from January 1, 2010 thru April 20, 2010; (iii) responding to Federal, State and/or Local executive, legislative and/or regulatory officers, bodies and/or agencies within the United States from April 20, 2010, thru the present; and/or (iv) the well-control, containment, capping and/or kill efforts regarding the Macondo Well, from April 20, 2010 thru August of 2010.

24.     The existence, nature, scope, coverages, exclusions, defenses, applications, renewals, binders, endorsements, underwriting submissions and/or audits and/or investigations, claims, primary contacts, reservation of rights letters, relating and/or in any way pertaining to policies or contracts of insurance and/or indemnity, which may provide primary, excess, umbrella liability, professional services, errors and omissions, professional services, environmental, and/or any other type of coverage and/or indemnity to Anadarko and/or the Plaintiffs and/or any other Defendants with respect to the Deepwater Horizon and/or Macondo Well blow-out, explosion, fire and/or oil spill.

25.     The existence, nature and substance of any discussions with MOEX and/or BP relating to the use of foam cement on the Macondo Well.

26.     With respect to the Macondo Well, the existence, nature and substance of any discussions and/or communications, including but not limited to e-mail correspondence, with MOEX and/or BP relating to foam stability, cement testing, centralizers, kicks or other well control events prior to April 20, 2010, and/or kick detection.

27.     The existence, nature and substance of any discussions and/or communications, including but not limited to e-mail correspondence, with MOEX and/or BP regarding the March 8th well control event on the Deepwater Horizon at the Macondo Well.

28.     With respect to the Macondo Well, all documents provided to Anadarko by BP relating to cement, centralizers, well control events, status reports, daily drilling reports, and/or kick detection.

29.     Any communications that anyone in Anadarko E&P had with BP, Transocean, Halliburton or other entities/persons aboard the Deepwater Horizon concerning progress or activities at the Macondo Well.

30.     Any questions, disagreements, concerns or objections voiced by you to BP, directly or indirectly, at any time concerning the Macondo Well, including the response to the oil spill.

31.     Any communications of which you were aware with MMS concerning the Macondo Well, when you became aware of such communications, and your role with respect to those communications.

**Document Requests**

Anadarko is further requested, in accordance with Rule 30(b)(5) of the Federal Rules of Civil Procedure, as well as Rule 26, Rule 34, and PRE-TRIAL ORDERS NOS. 16, 17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the following documents, at least ten (10) days prior to the time of the relevant designee's deposition:

**First Set of Requests**

For each Area of Inquiry identified above, please produce all documents provided to, reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

**Second Set of Requests**

For each Area of Inquiry identified above, please produce all documents which relate, pertain, evidence and/or reflect the issues, topics and/or events described therein or associated therewith.

**Third Set of Requests**

For each corporate designee, a copy of his or her current resume or CV, as well as a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

This 4th day of April, 2011.

Respectfully submitted,

    /s/   Stephen J. Herman
Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs Liaison Counsel*

    /s/ James Parkerson Roy
James Parkerson Roy, La. Bar No. 11511
DOMENGEAUX WRIGHT ROY & EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*