# Appendix 6

REMARKS OF W. B. HUTHNANCE

PRESIDENT, HUTHNANCE DRILLING COMPANY

My name is Bill Huthnance and I am President of Huthnance Drilling Company. While attending and after my graduation from LSU, I worked my way from roughneck to engineer in the oil fields of South Louisiana. My first company was Walker-Huthnance Drilling Company which was merged into Atlantic Pacific Marine in 1973. Since that time I have built a small offshore drilling company with 5 rigs, 4 offshore Louisiana and 1 offshore Texas. Our operations headquarters is in New Iberia, and last year we paid accounts of approximately $17 million into the Louisiana economy. Huthnance Drilling Company is a member of the International Association of Drilling Contractors, and I believe my remarks reflect the view of most offshore contractors in our position.

Huthnance Drilling Company began with one platform drilling rig in 1976 and we now have 5 rigs in operation with 4 others under construction. We contract with the oil companies to drill for them on their offshore leases, with Huthnance Drilling Company supplying the rig and drilling crew. We are paid at a day rate for this by the oil company, and consequently you can see that the contract with the oil company which governs our drilling is our controlling document.

I have been in this business for 25 years and when I started, drilling contracts were heavily stacked in favor of the

oil companies and against the contractors.  As the industry has grown and as Huthnance Drilling Company has grown, the drilling contractors have fought a long and hard battle with the oil companies trying to equalize the contractual provisions.  In good times we obtained concessions and we fought to keep them in hard times.  Although Huthnance Drilling Company may be small by the standards of some contractors and certainly in comparison to the oil companies, when we negotiate a contract with the oil companies now we look them straight in the eye, and we have fair but tough bargaining over all of the important terms, including indemnity.  Most of our contracts contain some type of reciprocal or mutual indemnity with the oil companies for personal injury and property damage so that we bear responsibility for our employees and property and the oil company bears responsibility for its people and property.  But more important than those covenants in financial terms are the indemnity covenants for reservoir damage, pollution and control of well.

When an offshore contractor goes to the bargaining table with an oil company, one of the most important considerations is the potential liability for risks which the contractor cannot absorb or cover by insurance.  For our property and employees we can easily obtain adequate insurance to cover our losses, and I have always believed our employees and property are our responsibility regardless of negligence by the oil company. Since the contractor is actually doing the drilling, we can control losses through our careful safety program which has put us in the top three in the industry.  If we do have an accident to one of our employees or to our property, we are in a position

- 3 -

to control and minimize the losses after the casualty. The fact that we pick up the tab despite any negligence of the operator does not, as some people may suggest, foster a lack of care on the part of the operator. The operator has far more invested in the operation than we do with the value of the oil in the reservoir, possible liability from pollution in the event of an accident, lost production time and when the drilling is from a platform, the investment of the oil company's platform. An accident could cost upwards of hundreds of millions of dollars to the operator and we have seen in our experience that this is more than sufficient to ensure safety on the operator's part.

The indemnity which we must give the oil company for property and injury does put some burden on us through the time we have to expend in controlling and processing claims, but the cost of insuring the losses and indemnity obligations is passed directly to the oil company through our day rate. The oil company pays, but we maintain the day-to-day control.

Thus, the indemnity we must supply to the operator, while being an administrative burden, in no way threatens the financial position of Huthnance Drilling Company. What threatens us is the potentially devastating losses from a major blowout in connection with the pollution and loss of oil. An example is an incident such as the Bay of Campeche blowout. In the event of a large spill with pollution damage, loss of oil and great expenses to control the well, a contractor such as Huthnance Drilling Company could not begin to respond in damages, and insurance to cover these various items is not reasonably available to us. Under the 1978 amendments to the Outer Continental Shelf Lands Act

there is potentially unlimited liability for cleanup costs, and in a major disaster the damages for pollution and cleanup could run into the hundreds of millions of dollars.

With the current freedom of contract, we come to the bargaining table demanding indemnity for those elements which we cannot reasonably insure and to which we cannot respond.  The oil companies, on the other hand, have the wherewithall to respond to a claim in the hundreds of millions of dollars, and they have been willing to trade this indemnity for our indemnifying them on the property and injury claims.  Huthnance Drilling Company could not sign a drilling contract without these covenants and we cannot work offshore without them.  The indemnity covenants are a balance by which we are able to stay in business in exchange for absorbing the day-to-day administration of claims handling.  It was the total freedom of contract which led to this balance, and a statute destroying our freedom of contract could seriously jeopardize offshore drilling.  Currently there is give and take, and indemnity is a two-way street.  I only ask that you allow us to maintain our ability to freely negotiate so that everyone may bargain for those covenants that they need.