UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 |
| | * | SECTION: J(1) |
| This Document Applies to: | * * | |
| Pleading Bundle "C," in part: | * * | JUDGE BARBIER |
| Local Government Entity Master Complaint (Rec. Doc. 1510) and cases by local government entities and certain States of the United Mexican States (10-1757, 10-1758, 10-1759, 10-1760, 10-2087 10-2731,10-2996, 10-2997, 10-4185, 10-4239, 10-4240, 10-4241) | * * * * * * * * | MAG. JUDGE SHUSHAN |

## ORDER AND REASONS

### [As to the Local Government Entity Master Complaint and certain other cases within Pleading Bundle "C"]

Before the Court are multiple Motions to Dismiss the Local Government Entity Master Complaint and other individual actions falling within Pleading Bundle "C." (Rec. Docs. 1152, 1421, 1422, 1423, 1424, 1781, 1782, 1783, 1786, 2214, 2218, 2220, 2221, 2224, 2442, 2636, 2638, 2642, 2657).[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

This Multi-district Litigation ("MDL") consists of hundreds of consolidated cases, with thousands of claimants. These cases arise from the April 20, 2010 explosion, fire, and sinking of

---

[1] Opposition briefs appear at Record Documents 1820, 2110, 2138, 2139, 2161, and 3186. Reply briefs appear at 2738, 2741, 2742, 3554, 3555, 3558, 3563, 3579, 3580, 3582, and 3585. Sur-Reply and Supplemental Briefs appear at 3100, 3978, 3981, 3982, 3997, 3998, 3999 4000, 4002, 4005.

the DEEPWATER HORIZON mobile offshore drilling unit ("MODU"), and the subsequent discharge of millions of gallons of oil into the Gulf of Mexico. Pretrial Order No. 11/Case Management Order No. 1 (Rec. Doc. 569) consolidated and organized claims into several "pleading bundles." As amended by Pretrial Order No. 33, Bundle "C" is defined as:

> **Public Damage Claims.** This pleading bundle will include claims brought by governmental entities for, inter alia, loss of resources, loss of tax revenue, property damages, response or restoration costs, and civil penalties.

(Rec. Doc. 1549). Actions were filed by District Attorneys for certain coastal parishes in the State of Louisiana (Civ. A. Nos. 10-1757, 10-1758, 10-1759, 10-1760, 10-2087, 10-2731, 10-2996, 10-2997; hereinafter "Louisiana Parish DA Cases"), four cities in the State of Alabama (Civ. A. No. 10-4185; hereinafter "Alabama Cities Case"), and three States from the United Mexican States (Civ. A. Nos. 10-4239, 10-4240, 10-4241; hereinafter "Mexican State Cases"), all of which were consolidated with this MDL. Motions to Dismiss were filed in response to these actions (Rec. Docs. 1152, 1421, 1422, 1423, 1424, 1781, 1782, 1783, 1786).

After these individual actions were filed, the Plaintiffs' Steering Committee was granted leave to file a voluntary Local Government Entity Master Complaint (sometimes referred to as "Master Complaint," Rec. Doc. 1510; Pretrial Order No. 33, Rec. Doc. 1549). Local government entities could adopt the Master Complaint by filing a "Local Government Short Form Joinder" into member case 10-9999 (Pretrial Order No. 33, Rec. Doc. 1549).[2] Any answer, motion to dismiss, or other pleading filed in response to the Master Complaint was deemed responsive to the common

---

[2] The Local Government Entity Master Complaint also included an answer to and claim in the Transocean entities' Limitation Proceeding (Civ. A. No. 10-2771). By filing a Local Government Short Form Joinder, a plaintiff was deemed to have filed a claim in the Limitation Action as well as adopting the Master Complaint. (Pretrial Order No. 33, Rec. Doc. 1549 ¶ 3). Filing a Local Government Short Form Joinder does not waive any defenses, objections, motions, allegations, claims, etc., unique to a plaintiff or contained within a pre-existing petition or complaint. (Pretrial Order No. 33, Rec. Doc. 1549 ¶¶ 5, 8; Stip. Order of May 6, 2011, Rec. Doc. 2273 ¶ 4).

legal and factual issues contained in individual civil actions within Bundle C as well (Stipulated Order of May 6, 2011, Rec. Doc. 2273). Multiple Motions to Dismiss were filed with respect to the Local Government Entity Master Complaint (Rec. Docs. 2214, 2218, 2220, 2221, 2224, 2442, 2636, 2638, 2642, 2657).

## II. THE LOCAL GOVERNMENT ENTITY MASTER COMPLAINT

The Local Government Entity Master Complaint named the following Defendants: BP Exploration & Production, Inc. and its related entities (collectively, "BP"), Transocean Offshore Deepwater Drilling, Inc. and its related entities (collectively, "Transocean"), Halliburton Energy Services, Inc. and its related entities (collectively, "Halliburton;"), M-I, LLC ("M-I"), Cameron International Corp. ("Cameron"), Weatherford U.S., L.P. ("Weatherford"), Anadarko Petroleum Corporation Co. and Anadarko E&P Company LP (collectively, "Anadarko"), MOEX Offshore 2007 LLC and MOEX USA Corp. (collectively, "MOEX"), and Mitsui Oil Exploration Co., Ltd. ("MOECO"). The Master Complaint asserts the following claims under general maritime law: negligence (asserted against all Defendants), gross negligence and willful misconduct (asserted against BP, Transocean, Halliburton, M-I, and Cameron), and products liability (asserted against Cameron, Halliburton, and Weatherford). Claims under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq.*, are asserted against BP, Transocean, Anadarko, and MOEX. Under state law, the Master Complaint asserts certain common-law and statutory claims: public nuisance and nuisance (asserted against BP, Transocean, Halliburton, M-I, Cameron, and Weatherford), trespass (same), fraudulent concealment or suppression of material facts (asserted against BP, Halliburton, and Transocean), the Florida Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.011, *et seq.* (asserted by Florida plaintiffs against BP and Transocean), the Louisiana Oil Spill Prevention

3

and Response Act ("LOSPRA"), La. R.S. 30:2451, *et seq.* (asserted by Louisiana plaintiffs against all Defendants), penalties under La. R.S. 56:40.1, *et seq.* (same), and the Texas Oil Spill Prevention and Response Act of 1991, Tex. Nat. Res. Code Ann. § 40.001, *et seq.* (asserted by Texas plaintiffs against all Defendants). Punitive damages are sought under general maritime law. Finally, the Master Complaint requests a declaratory judgment that "any settlement provisions that purport, directly or indirectly, to release or to affect the calculation of punitive damages without a judicial determination of fairness, adequacy, and reasonableness are ineffective as contrary to law, equity and public policy."

The Court has previously issued rulings in this MDL on the Motions to Dismiss the complaints by the States of Alabama and Louisiana ("Order on the States' Actions," Rec. Doc. 4578) and the Motions to Dismiss the B1 Master Complaint ("B1 Order," Rec. Doc. 3830). Those rulings resolve all of the issues raised by the instant Motions to Dismiss with respect to the Local Government Master Complaint. Accordingly, the Court finds as follows:

1.  All claims pled under state law, including penalties under state law, are dismissed. (*See* Order on the States' Actions, Rec. Doc. 4578 at 6-17; B1 Order, Rec. Doc. 3830 at 8-18; *see also* note 5, *infra*).

2.  General maritime law claims that do not allege physical damage to a proprietary interest are dismissed under the *Robins Dry Dock* rule.[3] (*See* B1 Order, Rec. Doc. 3830 at 19-25). Otherwise, and subject to the paragraphs below, the Master Complaint plausibly states claims for negligence and products liability under general maritime law. Most claims asserted under OPA do not require physical damage to a proprietary interest. (*See* B1 Order,

---

[3] The Bundle C Master Complaint alleges that at least some of the Local Government Entities have suffered physical damage to a proprietary interest from the oil spill. (Rec. Doc. 1510 ¶¶ 115, 513, 585).

4

Rec. Doc. 3830 at 20-21; *see also* 33 U.S.C. § 2702(b)(2)).

3. OPA does not displace general maritime law claims asserted against parties who are not "Responsible Parties" under OPA. Accordingly, the Master Complaint plausibly alleges general maritime law claims directly against non-Responsible Parties. OPA does displace general maritime law claims against Responsible Parties, but only with regard to procedure, as described below. (*See* B1 Order, Rec. Doc. 3830 18-26).

4. As to claims asserted against an OPA Responsible Party, the Local Government Entities are subject to OPA's presentment procedure, 33 U.S.C. § 2713. (*See* Order on States' Actions, Rec. Doc. 4578 at 17-21). The Master Complaint alleges that some of the Local Government Entities have complied with this procedure (Rec. Doc. 1510 ¶ 668).[4] Those who have not complied with the presentment requirement are subject to dismissal without prejudice, allowing them to exhaust the presentment of their claims before returning to Court. (*See* B1 Order, Rec. Doc. 3830 at 30).

5. There is no presentment requirement for general maritime law claims asserted against non-Responsible Parties (*See* B1 Order, Rec. Doc. 3830 at 31 n.15).

6. Punitive damages are available under general maritime law. Those Local Government Entities that have valid general maritime law claims against non-Responsible Parties may be entitled to punitive damages under general maritime law. Those Local Government Entities that have valid general maritime law claims against Responsible Parties and complied with OPA's presentment procedure may be entitled to punitive damages under

---

[4] "To the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §§ 2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees." (Rec. Doc. 1510 ¶ 668).

5

general maritime law.  (*See* B1 Order, Rec. Doc. 3830 at 26-27).

7. The negligence claims asserted against Anadarko and MOEX are dismissed.  (*See* B1 Order, Rec. Doc. 3830 at 27-29).  The Bundle C Master Complaint plausibly alleges OPA claims against these entities.  (*See* B1 Order, Rec. Doc. 3830 at 35, 29 n.12).

8. The Court does not define at this time the precise contours of OPA causation.  (*See* B1 Order, Rec. Doc. 3830 at 32-33).

9. The claim for declaratory relief is dismissed.  (*See* B1 Order, Rec. Doc. 3830 at 34-35).

10. Dril-Quip, Inc. was not named in the Bundle C Master Complaint, but was tendered to the Local Government entities via Transocean's Rule 14(c) Third Party-Complaint (Rec. Doc. 1320 ¶¶ XIX, XLVII).  Transocean demanded judgment in favor of the Plaintiffs, which required Dril-Quip to defend against "the plaintiff's claim as well as the third-party defendant's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff."  Fed. R. Civ. P. 14(c)(2).  Dril-Quip filed a Motion to Dismiss "all claims in Bundle C."  (Rec. Doc. 2442 at 1).  Dril-Quip, Inc. remains a 14(c) Defendant with respect to the claims saved by this Order; Dril-Quip's arguments particular to it that have not been addressed are preserved.  (*See* B1 Order, Rec. Doc. 3830 at 33-34; Amended B3 Order, Rec. Doc. 4209 at 23).

Accordingly,

**IT IS ORDERED** that, with respect to the Local Government Entity Master Complaint, the Motions to Dismiss (Rec. Docs. 2214, 2218, 2220, 2221, 2224, 2442, 2636, 2638, 2642, 2657) are **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

## III. THE LOUISIANA PARISH DA CASES

As mentioned, multiple actions were filed by District Attorneys for certain coastal parishes in Louisiana, which were consolidated with the MDL. The Louisiana Parish DA Cases *only* assert claims under Louisiana Revised Statute 56:40.1 against the BP entities:

> A person who kills, catches, takes, possesses, or injures any fish, wild birds, wild quadrupeds, and other wildlife and aquatic life in violation of this Title, or a regulation adopted pursuant to this Title, or a federal statute or regulation governing fish and wildlife, or who, through the violation of any other state or federal law or regulation, kills or injures any fish, wild birds, wild quadrupeds, and other wildlife and aquatic life, is liable to the state for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life, unlawfully killed, caught, taken, possessed, or injured.

La. R.S. 56:40.1; *see also* LOSPRA, La. R.S. 30:2491(B) ("Notwithstanding any other provision of this law, nothing herein shall be construed to preclude the Department of Wildlife and Fisheries from bringing a civil suit to recover penalties for the value of each fish, wild bird, wild quadruped, and other wildlife and aquatic life unlawfully killed, caught, taken, possessed, or injured pursuant to R.S. 56:40.1 et seq.").

BP filed a Motion to Dismiss the Louisiana Parish DA Cases (Rec. Doc. 1786). Further, and as mentioned above, the Motions to Dismiss the Local Government Entity Master Complaint were also deemed responsive to the common legal and factual issues contained in the Louisiana Parish DA cases. For reasons explained in the Order on the States' Actions, claims under La. R.S. 56:40.1, *et seq.*, are preempted.[5] Because the Louisiana Parish DA Cases assert no other causes of actions,

---

[5] The Order on the States' Actions held that penalties asserted by the States under their respective pollution laws were preempted in this instance by the Clean Water Act, largely due to the Supreme Court's interpretation of the Clean Water Act in *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). (Rec. Doc. 4578 at 9-17). This reasoning is equally applicable to penalties asserted under La. R.S. 56:40.1. In addition to these reasons, it also bears mention that the amounts sought under La. R.S. 56:40.1 appear potentially duplicative of natural resources damage under OPA, *see* 33 U.S.C. §§ 2702(b)(2)(A), 2706, which are sought in this MDL.

OPA provides that "[t]here shall be no double recovery under this Act for natural resource damages . . . ." 33 U.S.C.§ 2706(d)(3); *see also* 15 C.F.R. § 990.22. Under OPA, "natural resources" include "land, fish, wildlife, biota,

these member cases fail to state any claims upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that, with respect to the Louisiana Parish DA Cases, the Motions to Dismiss (Rec. Docs. 1786, 2214, 2218, 2220, 2221, 2224, 2442, 2636, 2638, 2642, 2657) are **GRANTED.**

**IT IS FURTHER ORDERED** that claims asserted under La. R.S. 56:40.1 are **DISMISSED WITH PREJUDICE**. Because La. R.S. 56:40.1 is the only cause of action asserted in the Louisiana Parish DA Cases, those cases (Civ. A. Nos. 10-1757, 10-1758, 10-1759, 10-1760, 10-2087, 10-2731, 10-2996, 10-2997) are also **DISMISSED**.

However, to the extent they have not already done so, the Plaintiffs in the Louisiana Parish DA Cases are not prejudiced from seeking removal costs and/or damages under OPA (subject to OPA's presentment requirement) and general maritime law by filing a Local Government Entity

---

air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government." 33 U.S.C. § 2701(20). Damages are defined as "(A) the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of, the damaged natural resources; (B) the diminution in value of those natural resources pending restoration; plus (C) the reasonable cost of assessing those damages." 33 U.S.C. § 2706(d). OPA's corresponding regulations, the Natural Resource Damage Assessment, or "NRDA," provide "a range of assessment procedures for evaluating injuries to natural resources and services, and a means for selecting restoration actions from a reasonable range of alternatives." 15 C.F.R. § 990.10.

Thus, while it is acknowledged that La. R.S. 56:40.1 is framed as a "penalty," *see* La. R.S. 56:40.7, 30:2491(B), the fact that La. R.S. 56:40.1 is based on the "value" of each animal injured or killed arguably resembles a compensatory claim, which would impermissibly overlap with recovery under OPA, *see* La. R.S. 56:40.3 ("Whenever the department determines that a violation of R.S. 56:40.1 has occurred . . . it shall demand ***restitution*** from him for the ***value of such wildlife or aquatic life***, the value of which has been determined in accordance with R.S. 56:40.2. . . ." (emphasis added)). Furthermore, "per animal" valuation appears to be inconsistent with NRDA's methods of estimating this damage. *See, e.g.,* Melissa Trosclair Daigle, *The Value of a Pelican: An Overview of the Natural Resource Damage Assessment under Federal and Louisiana Law*, 16 Ocean & Coastal L.J. 253, 266-267 (2011) ("Because the NRDA process will often result in a monetary value being put on the restoration of affected resources, the public will often think that each affected individual organism is counted. However, the value of the damage is established by looking at the affected ecosystem—or in this case, ecosystems—as a whole. ***This is a more manageable process than putting a value on each animal lost, as the state is not required to keep a freezer full of dead organisms to prove impact.*** This process is especially helpful in situations like the Deepwater Horizon spill, where the true death toll of organisms cannot be known." (emphasis added)).

8

Short Form or filing an individual complaint.

## IV. THE MEXICAN STATE CASES

The Mexican States of Tamaulipas, Quintana Roo, and Veracruz (collectively, "the Mexican States"), each brought substantially similar actions (Civ. A. Nos. 10-4239, 10-4240, 10-4241), which were consolidated with this MDL. Claims are asserted under OPA, in addition to claims of negligence, gross negligence, negligence per se, private nuisance, and public nuisance. The actions name as defendants BP, Transocean, Halliburton, Anadarko, and Cameron. Defendants moved to dismiss these actions. (Rec. Docs. 1422, 1423, 1424, 1784, 1786, 2636).[6]

As to the Mexican States' OPA claims, foreign claimants[7] may recover under OPA only in select situations:

> (a) Required showing by foreign claimants
>     (1) In general
>     In addition to satisfying the other requirements of this Act, to recover removal costs or damages resulting from an incident a foreign claimant shall demonstrate that—
>         (A) the claimant has not been otherwise compensated for the removal costs or damages; and
>         (B) recovery is authorized by a treaty or executive agreement between the United States and the claimant's country, or the Secretary of State, in consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants.

33 U.S.C. § 2707(a)(1). The Mexican States do not contend that "the Secretary of State, in

---

[6] The Motions appearing at Record Documents 1422, 1423, 1424, 1784, and 1786 specifically addressed the Mexican State cases. Cameron moved to dismiss the Local Government Complaint (Rec. Doc. 2636), which does not purport to include Mexican States. However, consistent with the Court's Order of May 6, 2011 (Rec. Doc. 2273), the Court construes Cameron's motion as moving to dismiss the Mexican States as well.

[7] "Foreign claimant" is defined as "(1) a person residing in a foreign country; (2) the government of a foreign country; and (3) an agency or political subdivision of a foreign country." 33 U.S.C. § 2707(c).

9

consultation with the Attorney General and other appropriate officials, has certified that the claimant's country provides a comparable remedy for United States claimants." Instead, the Mexican States urge that four documents demonstrate that "recovery is authorized by a treaty or executive agreement." However, the Court finds that none of these authorize their recovery under OPA.

The first treaty on which the Mexican States rely, the Agreement of Cooperation Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons and Other Hazardous Substances, U.S.-Mex., July 24, 1980, 32 U.S.T. 5899, does not purport to deal with the recovery of removal costs or damages. Rather, that treaty constitutes an agreement to establish a joint contingency plan for oil spills. *See id.*, Art. I. The resulting joint contingency plan, called the MEXUS Plan, is similarly silent with respect to the recovery of removal costs or damages.[8] According to Section 105 of the MEXUS Plan, its only purpose is to "provide standard operational procedures, in accordance with the 1980 Agreement, to coordinate bilateral responses to pollution incidents . . . ." The MEXUS Plan's Annex for the Gulf of Mexico Region also says nothing about the recovery of removal costs or damages; its stated purpose is "to augment the MEXUS Plan with regional details."

The second treaty relied upon by the Mexican States, the Cartagena Convention, also does not authorize the recovery under OPA. *See* Convention for the Protection and Development of the Marine Environment of the Wider Caribbean Region and Protocol Concerning Co-operation in Combating Oil Spills in the Wider Caribbean Region, Mar. 24, 1983, T.I.A.S. No. 11,085. Like the

---

[8] The Joint Contingency Plan Between the United Mexican States and The United States of America Regarding Pollution of the Marine Environment By Discharges of Hydrocarbons or Other Hazardous Substances, U.S.-Mex., Feb. 25, 2000, *available at* http://www.epa.gov/region6/6sf/pdffiles/mexusplan.pdf.

MEXUS Plan, the Cartagena Convention focuses on the prevention, reduction, and control of pollution. *Id.* Art. 4.[9] While Article 14 of the Cartagena Convention, entitled "Liability and Compensation," does state that "[t]he Contracting Parties shall co-operate with a view to adopting appropriate rules and procedures, which are in conformity with international law, in the field of liability and compensation for damage resulting from pollution of the Convention area," it does not authorize the Mexican States' recovery under OPA. Rather, Article 14 leaves that subject for some other law to address.

Third, the Mexican States' reference to the Protocol of 1992 to Amend the International Convention on Civil Liability for Oil Pollution Damage, 1969, is unhelpful because the United States has not ratified that treaty, its predecessors, or its attendant protocols.

Finally, the Treaty on Maritime Boundaries between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 17 I.L.M. 1073 (1978), does not authorize the recovery of removal costs or damages under OPA. Article 3 of that treaty states that its purpose is to establish the location of maritime boundaries between the United States of America and the United Mexican States.

Because the Mexican States have failed to demonstrate that "recovery is authorized by a treaty or executive agreement between the United States and the claimant's country," the Mexican States' claims under OPA are dismissed. The Court does not reach the parties' arguments regarding presentment under OPA.

Turning to the remaining claims, the complaints fail to plead any specific statutes on which the negligence per se claims are based; therefore, those claims are dismissed. Because substantive

---

[9] Similarly, the Oil Spill Protocol to the Cartagena Convention focuses on responding to oil spills, not liability.

11

maritime law applies to this case (*see* B1 Order, Rec. Doc. 3830 at 8), the nuisance claims are also dismissed. (*See* Order on the States' Actions, Rec. Doc. 4578 at 25). The negligence and gross negligence claims asserted against Anadarko are dismissed. (*See* B1 Order, Rec. Doc. 3830 at 27-29). The Mexican States' negligence and gross negligence claims asserted against Defendants other than Anadarko are preserved, but only to the extent there has been a physical injury to a proprietary interest. (*See* B1 Order, Rec. Doc. 3830 at 19-25).

Accordingly,

**IT IS ORDERED** that, as to the Mexican State Cases, the Motions to Dismiss (Rec. Docs. 1786, 1422, 1423, 1424, 1784, 2636) are **GRANTED IN PART** and **DENIED IN PART**, as set forth above**.**

## V. THE ALABAMA CITIES CASE

Three cities and one town in Alabama—Greenville, Evergreen, Georgiana, and McKenzie ("the Alabama Cities")—filed a single action that was consolidated with this MDL. (Civ. A. No. 10-4185). Named as defendants are BP, Transocean, Anadarko, MOEX, Mitsui & Co., Halliburton, Cameron, and M-I. The Alabama Cities seek recovery under OPA and also assert claims of negligence, gross negligence, and negligence per se. Defendants moved to dismiss these actions. (Rec. Docs. 1152, 1786, 1421, 2214, 2218, 2220, 2224, 2636, 2642, 2657).

The Complaint does not allege presentment in accordance with 33 U.S.C. § 2713. The Local Government Short Forms filed by the Alabama Cities similarly do not reflect presentment. (*See* Civ. A. 10-9999, Rec. Docs. 2, 3, 4, 5). Consequently, the claims under OPA, which are asserted against all Defendants (Complaint ¶ 61), are dismissed without prejudice. Although the Court does not require the Plaintiffs to present claims to each party that may be liable under OPA, claims must be

presented to the party that has been formally designated as the Responsible Party and established a claims procedure in accordance with 33 U.S.C. § 2714(b); i.e., BP. (*See* Order on States' Actions, Rec. Doc. 4578 at 17-21; B1 Order, Rec. Doc. 3830 at 30).

As to the remaining claims, the complaint does not allege physical damage to a proprietary interest; rather, the Alabama Cities claim only economic losses. The Court also takes notice of the fact that the Alabama Cities are not located directly on the coast, but are some distance inland. Thus, the remaining negligence claims are precluded by the *Robins Dry Dock* rule. (*See* B1 Order, Rec. Doc. 3830 at 19-25).

Accordingly,

**IT IS ORDERED** that, as to the Alabama Cities Case, the Motions to Dismiss (Rec. Docs. 1152, 1786, 1421, 2214, 2218, 2220, 2224, 2636, 2642, 2657) are **GRANTED.** The claims of the Alabama Cities are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

New Orleans, Louisiana, this 9th day of December, 2011.

_____
United States District Judge