UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| **THIS DOCUMENT RELATES TO ALL** | : | |
| **CASES AND NO. 10-2771** | : | JURY TRIAL DEMANDED |
| | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

### REPLY OF CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT <u>CONFIRMING THE INDEMNITY OBLIGATIONS OF TRANSOCEAN</u>

Cameron International Corporation ("Cameron") submits this reply in support of its summary judgment motion concerning Transocean's indemnity obligations (Doc. 4524), primarily to address Transocean's Response in Opposition (Doc. 4778; "Response") and the accompanying Memorandum (Doc. 4778-1; "Memorandum").

### INTRODUCTION

Transocean now admits "that it is obligated to indemnify Cameron for injuries and deaths of Purchaser Group and for damage to and loss of property of the Purchaser Group." Response, p. 2.[1]  It does not oppose Cameron's motion on those two points.  In those respects, therefore, the motion is uncontested.

Transocean suggests that it has never taken a contrary position, but that is not so. Transocean filed cross-claims against Cameron for indemnity and contribution with respect to *all* injury and death claims (of Transocean employees as well as invitees) and all pollution claims.

---

[1] Nor does Transocean dispute that its obligations include reimbursement of defense costs.  *See* Doc. 4524, p. 24.

Doc. 2068.  In addition, Transocean asserted a direct claim against Cameron for loss of the uninsured value of the *Deepwater Horizon*.  Doc. 2068, Count 9, ¶¶ 126-34.  Transocean has now conceded that those claims are not viable, as a matter of law.

As for pollution claims and related liabilities, respectfully, this Court should rule that Transocean owes Cameron indemnity because (i) Transocean is "entitled" to indemnity from BP under the Drilling Contract, and (ii) Transocean is therefore obligated to provide Cameron with "the benefit of such indemnity to the fullest extent possible."  Transocean does not dispute the first prong, agreeing that it is "entitled" to indemnity from BP.  Memorandum, pp. 4-5. (Cameron will address that point in greater detail in its reply to BP's response.)  Transocean does dispute the second prong.  *Id*., pp. 5-10.  But Transocean is wrong.

Transocean wants it both ways.  Transocean has expressed righteous indignation that BP has failed to honor the Drilling Contract's indemnity obligations, Doc. 4477-1, yet now it refuses to honor the pollution indemnity obligation of *its* contracts with Cameron.  It justifies that refusal on two grounds.  First, Transocean says that its contract with Cameron does not provide "clear and unequivocal" language creating a valid indemnity obligation.  Memorandum, pp. 5-7. Second, Transocean says Cameron is not an "extended beneficiary" under the Drilling Contract between Transocean and BP, so Cameron is not entitled to indemnity under its own contracts with Transocean.  *Id*., pp. 8-10.  Both of these arguments are wrong, as we shall explain. Transocean's attempt to evade its explicit indemnity obligation to Cameron is a breach of contract that warrants a summary judgment in Cameron's favor.

## ARGUMENT IN REPLY

**I.     Cameron Is Entitled to Indemnity for Purchaser Group Injury and Death and Property Damage Claims.**

There is no dispute that Cameron is entitled to summary judgment with respect to personal injury, death, and property damage claims by those affiliated with the Purchaser Group: "Transocean agrees it is obligated to indemnify Cameron for injuries and deaths of Purchaser Group and for damage to and loss of property of the Purchaser Group."  Response, p. 2; *accord* Memorandum, p. 1.  In order to formulate the relief to which Cameron is entitled, it is critical to examine the precise scope of the conceded obligation.

Under the relevant indemnity provision, "Purchaser Group" includes Transocean "and ***its customers,*** their parent, subsidiary and affiliated companies, ***and their subcontractors*** together with their ***agents***, employees, ***invitees*** . . . ."  SJ Ex. 4 ¶ 18, 1st ¶ (Doc. 4524-8, p. 5) (emphasis added).  Because there is no dispute that BP was a "customer" of Transocean under the terms of the Drilling Contract, BP and its affiliates and subcontractors fall squarely within the definition of the "Purchaser Group."

Therefore, Transocean's uncontested indemnity/hold harmless obligation extends beyond the injury and death claims of all invitees and the property damage claims of Transocean. Because BP is part of the "Purchaser Group," the indemnity also extends to the claims of BP against Cameron for loss of drilling equipment, loss of hole, and loss of reservoir, which are undeniably claims "for damage to or loss of property owned or leased by the Purchaser Group." *See* Docs. 2064, 2065.  Transocean's claims against Cameron with respect to these indemnified categories of loss should be rejected, and summary judgment confirming Transocean's indemnity obligation with respect to all these categories of loss should be entered.

- 3 -

II.     **Cameron Is Entitled to Indemnity for Pollution Claims and Related Liabilities.**

With respect to the pollution claims and related liabilities, Transocean agrees that BP must indemnify Transocean and hold it harmless for its indemnity obligation to Cameron. Memorandum, pp. 4-5.  As Transocean correctly notes, Section 24.2 of the Drilling Contract "requires BP to fully indemnify Transocean for pollution liability from the Macondo well." *Id.* And Section 25.1 reinforces that indemnity protection by providing that Transocean is entitled to indemnity from BP even if "the claim against [Transocean] is the result of an indemnification agreement with a third party." *Id.*; *see also* SJ Ex. 1 (Doc. 4524-5, p. 29).  This agreement should end the matter between Transocean and Cameron, because their agreement provides that "[i]n the event that [Transocean] is entitled to indemnity" from BP for pollution-related claims, Transocean is obligated to provide Cameron "with the benefit of such indemnity to the fullest extent possible." SJ Ex. 4 ¶ 18.

Yet even though it is indemnified by BP for its indemnity obligation to Cameron, Transocean says (i) there is no clear and unequivocal language imposing an indemnity obligation in favor of Cameron, Memorandum, pp. 5-7, and (ii) Cameron is not an "extended beneficiary" of the indemnity agreements between BP and Transocean, so it is not entitled to indemnity under the agreement between Transocean and Cameron. *Id.*, pp. 8-10.  Both arguments are baseless.

A.      **Transocean's "Clear and Unequivocal" Test Is Misguided.**

Transocean says there is a "clear and unequivocal" test for indemnity obligations. Memorandum, pp. 5-6.  But this Court has stated the true test: "[I]ndemnity provisions should not be interpreted to impose liability for losses that are not expressly within the terms of the agreement ***or are not reasonably inferred from the agreement.***"  *Denesse v. Island Oper. Co.*, No. 03-3280, 2006 WL 1560794, *3 (E.D. La. June 1, 2006) (Barbier, J.) (emphasis added).

- 4 -

Transocean quotes *Denesse*, Memorandum, p. 5, but then ignores its reference to "reasonable inferences." That will not do. The Fifth Circuit recently reiterated the *Denesse* rule, squarely stating that a "court should construe an indemnity clause to cover all losses which ***reasonably appear*** to have been within the parties' contemplation." *Breaux v. Halliburton Energy Serv., Inc.*, 562 F.3d 358, 364 (5th Cir. 2009) (citations omitted; emphasis added). Thus, there is no general "clear and unambiguous" test for maritime indemnities, as Transocean claims. This Court should consider all the relevant indemnity language of these interrelated contracts, from which it may be "reasonably inferred" that Transocean agreed to indemnify Cameron.

In search of support for its "clear and unequivocal" test, Transocean cites cases discussing the requirements for contracts that provide indemnity for a party's own negligence. Memorandum, pp. 5-6. Those rules are not disputed; Cameron has freely acknowledged that shifting responsibility for a party's own fault requires such clear notice. *See* Doc. 4524-1, p. 20. But they have no bearing on Transocean's obligation here.

This motion does not involve the interpretation of an indemnity clause in which Cameron is granted indemnity for its own negligence. The pollution indemnity provision is an entirely different species of indemnity. It simply provides that "[i]n the event" that Transocean "is entitled to indemnity under any contract with its customers . . . with respect to pollution," Transocean is obligated to "provide Seller Group [Cameron] with the benefit of such indemnity." SJ Ex. 4, ¶ 18 (Doc. 4524-8, p. 6). This provision does not shift Cameron's responsibility for its own negligence to an indemnitor; it simply provides that Cameron will receive the benefit of any indemnity granted to Transocean by a third party (*i.e.*, BP) "to the fullest extent possible." *Id*. This risk allocation is common to the drilling industry, placing the ultimate risk of pollution loss on the party best able to manage, avoid, and insure these risks (here, BP).

- 5 -

Under this provision, the indemnity owed by Transocean to Cameron depends on the indemnity to which Transocean is "entitled" under its Drilling Contract with BP. Therefore, to the extent that "express negligence" and "conspicuousness" concepts have any application, they must be applied to the Drilling Contract. And Section 25.1 of the Drilling Contract states, in **BOLD AND ALL CAPS**, that the subsurface pollution indemnity of Section 24.2 to which Transocean is entitled applies to "any and all claims of any kind or character . . . without limit and without regard to the causes thereof," whether it be a defective "condition," the indemnitee's or another person's "negligence," "strict liability," or other "tort." SJ Ex. 1 (Doc. 4524-5, p. 29). It is settled that such "without regard to cause" language fully satisfies the clarity requirement for a party to shift responsibility for its own fault. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986). Because the indemnity to which Transocean is entitled from BP complies with all legal requirements, Transocean must provide the benefit of "such" indemnity to Cameron. That obligation "reasonably appear[s] to have been within the parties' contemplation," *Breaux*, 562 F.3d at 364, which is the only applicable legal standard.

Transocean calls this pollution indemnity "a contingent, conditional obligation," Memorandum, p. 5, but that does not make it invalid. It simply means performance is not due unless and until the condition is met. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 224, 225. In this case, the stated condition ("[i]n the event that [Transocean] is entitled to indemnity under any contract with its customers . . . with respect to pollution") is met by the Drilling Contract between Transocean and BP. As such, under *Breaux* and *Denesse*, it "reasonably appears" that Transocean agreed to "provide Seller Group [Cameron] with the benefit of such indemnity to the fullest extent possible." Thus, Transocean is fully obligated to perform that indemnity obligation for the benefit of Cameron.

- 6 -

**B.    Transocean's Reliance on the "Extended Beneficiaries" Provision of the Drilling Contract Is Misguided.**

Transocean's second effort to avoid the pollution indemnity clause is to invent an artificial conflict with the "extended beneficiaries" clause of the Drilling Contract. That clause defines certain parties as "extended beneficiaries of indemnification." Except for those parties, "no persons or entities are intended to be or become third party beneficiaries *of this contract*." SJ Ex. 1 ¶ 25.3 (emphasis added). Transocean contends that Cameron's indemnity claim is barred by that clause. Memorandum, pp. 8-9. But that argument blurs two separate contracts.

The "extended beneficiaries" clause in the Drilling Contract is meaningless here, because Cameron is not seeking indemnity from Transocean under the Drilling Contract; it seeks indemnity under the entirely separate indemnity provisions of its own contracts with Transocean. It is wholly irrelevant that non-signatories to the Drilling Contract may not sue BP or Transocean "*for any breach of this Contract*," SJ Ex. 1 ¶ 25.3 (emphasis added), because Cameron is not suing Transocean under "this Contract." It is suing under its own contracts, and nothing in the Drilling Contract purports to extinguish Transocean's obligations under those contracts.

Transocean dismisses this claim as an "attempt to incorporate the indemnity provisions of the Drilling Contract into the Terms and Conditions," Memorandum, p. 9, but that is plainly not the case. Cameron simply seeks to enforce the pollution indemnity provision according to its express terms. By contrast, Transocean seeks to add a gloss onto that provision, limiting it to hypothetical situations in which Cameron might have a direct claim for indemnity against BP under the Drilling Contract. *Id.*, p. 10. But that interpretation would render the pollution indemnity meaningless; Cameron would not need indemnity from Transocean if it could seek indemnity directly from BP. Transocean's understanding of the "benefit" it is bound to provide Cameron is unsound as a matter of contract interpretation.

BP seems to agree on this point.  *See* Doc. 4828, p. 10.  As BP fully recognizes, Transocean's obligation to Cameron is to provide Cameron "with the benefit" of "the indemnity" that BP "provided Transocean under the Drilling Contract":

> In the event that Purchaser [i.e., Transocean] is entitled to indemnity under any contract with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, Purchaser [Transocean] will provide Seller [Cameron] with the benefit of such indemnity to the fullest extent possible.

SJ Ex. 4 (quoted in BP Opposition, p. 5).  The premise for Transocean's obligation to Cameron is a "customer" contract under which Transocean "is entitled to indemnity . . . with respect to pollution associated with blowout or loss of well control."   The Drilling Contract provides such indemnity to Transocean, and the pollution indemnity clause dictates, in turn, that Transocean must provide Cameron "with the benefit of such indemnity."

In this respect, it is essential to recall that the Drilling Contract had been signed by Transocean and BP *before* the Equipment Contract was signed by Transocean and Cameron. When the Drilling Contract was signed, BP and Transocean surely anticipated that Transocean would give a pollution indemnity to its equipment suppliers, following the time-honored practice of allocating pollution risk back to the operator.  Transocean's reading of the Drilling Contract, which would extinguish the pollution indemnity obligation created by its contract with Cameron, would frustrate the entire purpose of this settled practice for allocation of pollution risk.  Indeed, far from giving meaning to Transocean's obligation to "provide" the "benefit of such indemnity" to Cameron, that reading would nullify the "benefit" of the pollution indemnity clause entirely. Such an interpretation is unreasonable as a matter of maritime law.  *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

Notably, Transocean does not dispute Cameron's explanation that Section 25.3 of the Drilling Contract supplies intrinsic evidence for interpreting the phrase "provide the benefit." *See* Doc. 4524-1, pp. 15-16.  As Transocean must have understood from its own entry into the Drilling Contract, being provided the "benefit" of the indemnity means that the recipient of the benefit is "entitled" to the indemnity.  *Id.*  Indeed, when Cameron first demanded indemnity, Transocean did not respond that it had no obligation to Cameron.  Instead, it made a demand on BP grounded in the indemnity provisions of the Drilling Contract.  SJ Ex. 11 (Doc. 4524-17). By tendering Cameron's claim to BP and taking the position that the claim is "expressly covered by section 24.2, as amplified by section 25.1," SJ Ex. 11, Transocean essentially acknowledged that Cameron's interpretation of these contracts is correct.  Thus, Transocean plainly understands the proper reading of the pollution indemnity provision: Cameron is entitled to receive from Transocean the full benefit of the pollution indemnity in the Drilling Contract.

## CONCLUSION

Cameron's interpretation of the clear and unambiguous language of the Transocean pollution indemnity obligation is the only reasonable interpretation presented.[2] Cameron is therefore entitled not only to summary judgment denying the Transocean claims against Cameron for recovery related to personal injury, death, and property damages of persons affiliated with the Purchaser Group, but also to summary judgment denying Transocean's pollution claims and holding that Transocean has breached its obligation to provide Cameron the benefit of the Drilling Contract pollution indemnity "to the fullest extent possible."

---

[2] As this Court explained in its ruling on the insurance provisions in the Drilling Contract, a party can demonstrate an ambiguity defeating summary judgment only by establishing a reasonable competing interpretation of the provision.  Doc. 4588, pp. 31-32.  Transocean clearly has not done so.

1078452v.1

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney, Suite 4500
Houston, TX 77010-2010
713-951-3700
713-951-3720 (fax)

/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittman@stonepigman.com
Carmelite M. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared A. Davidson, 32419
    jdavidson@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)
**ATTORNEYS FOR CAMERON
INTERNATIONAL CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply of Cameron International Corporation in Support of its Motion for Summary Judgment Confirming the Indemnity Obligations of Transocean has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2011.

/s/ Phillip A. Wittmann