UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | |
| GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| **THIS DOCUMENT RELATES TO ALL** | : | |
| **CASES AND NO. 10-2771** | : | JURY TRIAL DEMANDED |
| | : | |

. .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

# REPLY OF CAMERON INTERNATIONAL CORPORATION ADDRESSING BP'S OPPOSITION TO CAMERON'S MOTION FOR SUMMARY JUDGMENT CONFIRMING THE INDEMNITY OBLIGATIONS OF TRANSOCEAN

Cameron International Corporation ("Cameron") submits this reply to address BP's Opposition (Doc. 4828 "BP Opposition") to Cameron's summary judgment motion concerning the indemnity obligations of Transocean to Cameron (Doc. 4524).

## THE HEART OF THE MATTER

BP continues to disavow and evade its full responsibility for subsurface pollution from the Macondo well.  Just as BP tried to rewrite Transocean's insurance obligations under the Drilling Contract, BP now tries to rewrite its indemnity obligations under that same contract. Just as this Court rejected BP's arguments about the insurance provisions, Doc. 4588, it should reject BP's arguments about its indemnity obligations and Cameron's related indemnity rights. BP owes indemnity to Transocean for pollution and related liabilities under the Drilling Contract, and Transocean, in turn, owes Cameron the full benefit of that indemnity.  Holding these parties to the terms of their sophisticated bargains will assure proper allocation of the pollution risk.

- 1 -

BP tries to avoid this conclusion in a response that presents three primary points. First, BP argues that Cameron does not have a direct claim for indemnity from BP. That is true, but it is beside the point, because Cameron is entitled to the benefit of any pollution indemnity to which Transocean is "entitled" under the Drilling Contract. This point need not detain the Court.

Second, BP argues that the language of the Drilling Contract does not support the indemnity asserted by Cameron. That is false, as any fair reading of the contract will confirm. Cameron's motion provided a detailed discussion of all the relevant provisions; this reply brief will focus on the specific provisions that disprove BP's textual argument.

Third, BP argues that its contractual indemnity obligations to Transocean are limited by extra-contractual rules that prevent indemnity for gross negligence, punitive damages, and the like. This argument raises a host of issues that Cameron has addressed in other briefing, so this reply will touch those issues only briefly. More important, those extra-contractual rules have nothing to do with the precise claim here: Cameron is entitled to "the fullest extent" of the benefit of any indemnity to which Transocean is "entitled"—not any indemnity that Transocean actually recovers from BP. If Transocean was "entitled" to indemnity from BP, but forfeited its entitlement to indemnity by engaging in conduct that defeats the coverage (*i.e.*, gross negligence or conduct that materially increased the risk to BP), that forfeiture does not prejudice Cameron. Transocean still must provide "the fullest extent" of "the benefit of such indemnity" to Cameron, and in such a case, the risk of loss would fall ultimately on Transocean.

These pollution indemnities were structured in accordance with industry practice. The risk of loss may fall on BP (which assumed that primary risk), or it may fall on Transocean (which may have forfeited its right to indemnity by its conduct). But under no circumstances may it fall on Cameron. Cameron is entitled to summary judgment.

**ARGUMENT IN REPLY**

**I.     The Lack of a "Direct" Indemnity Claim Against BP Is Beside the Point.**

BP opens its response by pointing out that Cameron has no direct indemnity claim against it.  BP Opposition, pp. 4-5.  That is true, but it is entirely beside the point.  As BP notes, Cameron's contract with Transocean provides that "[i]n the event that [Transocean] is entitled to indemnity under any contract with its customers" with respect to pollution and related liabilities, Transocean must provide Cameron "the benefit of such indemnity to the fullest extent possible."  SJ Ex. 4.  Thus, the scope of BP's indemnity obligation to Transocean is material to determining the scope of Transocean's obligation to Cameron.  BP cannot hide from that inquiry.

**II.    The Plain Language of the Pollution Indemnity Provision Requires Transocean to Indemnify Cameron for Pollution and Related Liabilities.**

Turning to the text of the indemnity provision between Transocean and Cameron, BP suggests two reasons to conclude that Transocean is not bound to indemnify Cameron for pollution and related liabilities.  First, BP adopts Transocean's interpretation of the provision, which would essentially nullify it.  BP Opposition, pp. 5-6.  Cameron answers that interpretation in its reply to Transocean, explaining that maritime law will not tolerate a contract interpretation that renders such important provisions meaningless.  *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).  We will not belabor that point here.

Second, BP argues that it has no duty to indemnify Transocean for any costs "resulting from Transocean's own contractual indemnity obligations to others (like Cameron)."  BP Opposition, p. 6.  According to BP, its duty is limited to indemnifying Transocean for losses caused by Transocean's "negligence or fault."  *Id.*, pp. 6-7.  BP misreads the Drilling Contract.  As this Court already has ruled, Section 24.2 requires BP to assume "full responsibility" for all subsurface pollution.  Doc. 4588 at 40-41.  That responsibility is broader than BP admits.

- 3 -

Section 24.2 provides that BP "**SHALL ASSUME FULL RESPONSIBILITY FOR AND SHALL PROTECT, RELEASE, DEFEND, INDEMNIFY, AND HOLD [TRANSOCEAN] HARMLESS FROM AND AGAINST ANY LOSS, DAMAGE, EXPENSE, CLAIM, FINE, PENALTY, DEMAND OR LIABILITY FOR POLLUTION OR CONTAMINATION, INCLUDING CONTROL AND REMOVAL THEREOF, ARISING OUT OF OR CONNECTION WITH OPERATIONS UNDER THIS CONTRACT HEREUNDER**. SJ Ex. 1 ¶ 24.2. This is a sweeping indemnity provision.

BP argues that Section 24.2 does not clearly and unequivocally include claims based on contractual indemnity obligations to third parties like Cameron, BP Opposition, pp. 6-7, but Section 25.1 plainly does so. Under Section 25.1, BP's subsurface pollution responsibility in Section 24.2 extends to "**ANY AND ALL CLAIMS . . . OF ANY KIND OR CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF.**" SJ Ex. 1 ¶ 25.1. This includes claims for "**BREACH OF CONTRACT . . . WITHOUT REGARD TO WHETHER THE CLAIM AGAINST [TRANSOCEAN] IS THE RESULT OF AN INDEMNIFICATION AGREEMENT WITH A THIRD PARTY.**" *Id*. Thus, Section 25.1 provides precisely the clear and unequivocal language BP demands.

BP offers only one answer. It notes that Section 25.1 applies "[e]xcept to the extent any such [indemnity] obligation is specifically limited to certain causes," SJ Ex. 1 ¶ 25.1, and insists "Paragraph 24.2 has precisely such a specific limitation, as it provides an indemnity for pollution losses caused by 'negligence or fault' without including other extraordinary obligations." BP Opposition, pp. 7-8. BP's entire textual argument rests on this single premise, but it is mistaken. Section 24.2 is not "specifically limited to certain causes." On the contrary, that provision imposes on BP "full responsibility" for "any" subsurface pollution loss.

BP's argument would turn Section 24.2 upside down. Its sweeping language simply provides that BP's indemnity obligation applies "**WITHOUT REGARD FOR**" for Transocean's "**NEGLIGENCE OR FAULT.**" SJ Ex. 1 ¶ 25.1. The purpose of that clause is to broaden the scope of the indemnity—not to narrow it. That clause does not "specifically limit" the indemnity obligation to cases involving Transocean's negligence or fault, as BP asserts. *Id*. Section 23.1, by contrast, does incorporate such a specific limitation on indemnity obligations, making clear that the parties knew how to limit the obligation; they did not do so in Section 24.2. Properly construed, Section 24.2 covers "any" claim of subsurface pollution "without regard to" Transocean's "negligence or fault." It is not "specifically limited" to such claims.

Because nothing in Section 24.2 "specifically limits" the scope of that provision, BP's attempt to sidestep Section 25.1 fails. And as noted, Section 25.1 unambiguously states that the subsurface pollution indemnity provision in Section 24.2 covers "any and all claims . . . of any kind or character," including claims for "breach of contract, . . . without regard to whether the claim . . . is the result of an indemnification agreement with a third party." SJ Ex. 1 ¶ 25.1. BP does not dispute that, if it applies here, the clear and unequivocal language of Section 25.1 satisfies the Fifth Circuit's requirements for an enforceable indemnity obligation. *See, e.g., Breaux v. Halliburton Energy Serv., Inc.*, 562 F.3d 358, 364-66 (5th Cir. 2009); *Campbell v. Sonat Offshore Drilling, Inc.*, 27 F.3d 185 (5th Cir. 1994). This should end the textual debate.

As a textual matter, therefore, Section 24.2 of the Drilling Contract requires BP to indemnify Transocean both for pollution caused by Transocean's breach of the Drilling Contract and for Transocean's breach of its contractual indemnity obligation to Cameron. This Court has already determined that Section 24.2 entitles Transocean to indemnity for subsurface pollution. Doc. 4588 at 40-41. Transocean must give Cameron the benefit of that pollution indemnity.

**III.    The Pollution Indemnity Obligation Is Not Limited, as BP Suggests.**

Recognizing that it is unlikely to win the interpretive battle over Section 24.2 and Section 25.1, BP turns to a series of arguments that would limit a pollution indemnity obligation (either as a matter of contract or as a matter of extra-contractual rules).

**A.    BP's Allusion to a "Clear and Unequivocal" Test Is Misguided.**

First, BP contends that the Transocean pollution indemnity obligation does not "clearly and unequivocally" cover Cameron's negligence, gross negligence, or product liability. BP Opposition, pp. 8-9. That argument echoes a similar contention in the Transocean response, which Cameron answers fully in its reply to Transocean. In brief, the argument misunderstands the nature of the pollution indemnity provision. This is not a provision in which Cameron sought to shift responsibility for its own negligence to another party; Cameron and Transocean simply agreed that, insofar as Transocean was entitled to indemnity for pollution and related liabilities, Cameron would be entitled to receive the benefit of such indemnity to the fullest extent possible. That reference relieved the contract drafters of the need to restate the indemnity obligations that might appear in scores of different customer contracts. By tying Transocean's obligation to the "indemnity in any contract" with a customer, the contract effectively assured Cameron that it would receive the benefit of all those contracts, maintaining consistent allocation of these risks.

As such, the "express negligence" and "conspicuousness" concepts upon which BP relies are inapposite to the pollution indemnity provision between Transocean and Cameron. Those concepts would apply, if at all, to Section 24.2 and Section 25.1 of the Drilling Contract, the underlying indemnity provision, which met all those requirements. Indeed, the whole point of the bold, capitalized text in Section 24.2 and Section 25.1 was to comply with these rules. Hence the pollution indemnity clause is valid.

### B.  Transocean's Indemnity Obligation May Be Broader Than BP's Obligation.

BP next argues that Transocean's indemnity obligation to Cameron could be no broader than BP's indemnity obligation to Transocean. BP Opposition, p. 10. In a normal case, that would be true. Transocean's indemnity obligations to Cameron would be co-extensive with BP's obligations to Transocean. But BP's claim that Transocean is guilty of gross negligence and conduct that materially increased the risk to BP may alter the scope of the two obligations. Theoretically, BP might be able to defeat Transocean's claims based on Transocean's conduct. But that would not alter the fact that, to the "fullest extent possible," Transocean is obligated to provide Cameron with the benefit of the pollution indemnity to which Transocean was "entitled." "In its usual sense, to entitle is to give a right or legal title to." BLACK'S LAW DICTIONARY 532 (6th ed. 1990). In the Drilling Contract, Transocean was "give[n] a right" to pollution indemnity. Whether Transocean forfeited that right is immaterial to Cameron; Cameron's right to indemnity could not be frustrated by the misconduct of its indemnitor. Any other reading would lead to an absurd result and would render Cameron's indemnity meaningless, which is impermissible.

On this point, BP refers to certain plaintiffs' pleadings alleging gross negligence by Cameron and insists that a gross negligence finding would defeat Cameron's indemnity claim. BP Opposition, p. 10. But neither BP nor Transocean alleges any gross negligence by Cameron. Docs. 2064, 2065, 2068. More important, there is no evidence to support any such allegations. It is axiomatic that pleadings are not evidence, so the pleadings of a few plaintiffs cannot defeat Cameron's right to summary judgment on its indemnity claim. That rule is especially true here, because even the conclusory allegations cited by BP provide no explanation for how Cameron committed gross negligence in supplying BOP equipment *specified* by BP and/or Transocean. *See* Doc. 4524-1, pp. 13-15. There is no serious claim of gross negligence against Cameron.

### C.     BP's Public Policy Arguments Are Misguided.

BP continues to argue that maritime law prohibits indemnity for gross negligence. BP Opposition, pp. 11-14.  The thrust of BP's argument is that, if Transocean is ultimately found guilty of gross negligence, BP has no indemnity obligation to Transocean—and by extension, Transocean has no indemnity obligation to Cameron.  These arguments are immaterial because, as explained above, any forfeiture of Transocean's right to indemnity to which it was "entitled" could not defeat Cameron's right to "the benefit of such indemnity to the fullest extent possible." SJ Ex. 4.  It would be a perverse injustice if an indemnitor (here, Transocean) could avoid its obligations to its indemnitee (here, Cameron) by engaging in conduct contrary to public policy. The law will not sanction such an absurd interpretation, which would allow Transocean to render Cameron's right to indemnity meaningless.  *See Chembulk Trading*, 393 F.3d at 555.  In short, Cameron's independent right to indemnity cannot be defeated by Transocean's conduct.

Cameron already has addressed the merits of the gross negligence issues at length. *See* Doc. 4701, pp. 10-14.  Cameron will not repeat those arguments, but will simply address a few points raised by BP's briefing.  BP Opposition, pp. 10-14.

BP argues that *Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir. 2009) held that a party cannot be indemnified for gross negligence.  BP Opposition, pp. 11-12.  That is not correct; *Becker* did not definitively resolve the issue because there was no evidence of gross negligence. *Becker*, 586 F.3d at 367.  Neither *Becker* nor any Fifth Circuit case has **held** as a matter of law that gross negligence invariably invalidates an indemnification promise.  Doc. 4701, pp. 10-11. It is true that gross negligence has been held to invalidate indemnity provisions in some cases (*e.g.*, *Nexen*, *Houston Exploration*), but the Court should not reach that conclusion in this case, which involves reciprocal indemnity obligations among sophisticated parties.

On this point, BP contends that Cameron "gives no basis in policy or precedent" to defend the explicit gross negligence indemnity in the Drilling Contract. BP Opposition, p. 13. To the contrary, Cameron invoked the very policy considerations adopted by the Fifth Circuit and other courts in addressing "red letter" clauses that exculpate a party for its own negligence. Doc. 4701, pp. 11-12. BP claims the "red letter" cases favor its position, BP Opposition, p. 13, but fails to read them carefully. To be sure, those cases may invalidate exculpatory clauses that provide *complete* exoneration from a party's gross negligence. But as Cameron has explained, those cases do not apply to the risk allocation provisions of the Drilling Contract, which leave Transocean exposed to the threat of significant liability for gross negligence. Doc. 4701, p. 13. This is not a case about a one-sided bargain in which a party shifted all the risk and thereby "eliminate[d] incentives for a party to avoid grossly negligent conduct." BP Opposition, p. 13. Transocean retained real risk, and its indemnity agreements should be enforced as written.

Cameron presented a detailed policy analysis of the risk allocation provisions in the Drilling Contract to illustrate this very point. Doc. 4701, pp. 12-14. BP dismisses it as "various stock arguments against public policy restrictions on contracts," BP Opposition, p. 13, but it does not cite any authority that addresses either the type of risk allocation provisions in the Drilling Contract or the proper analysis of applicable public policy in light of those provisions. Similarly, Cameron relied on OPA's liability and indemnity provisions as a reliable indication that allowing indemnification for gross negligence would not offend public policy as expressed by Congress. Doc. 4701, pp. 14-16. Again, BP has no answer; it simply argues that OPA itself neither authorizes nor prohibits indemnities. BP Opposition, p. 14. But it does not (and cannot) deny that the OPA scheme is perfectly congruent with BP's unflinching indemnity promise to "assume full responsibility" for subsurface pollution. That obligation should be enforced in full.

### D. BP's Arguments About "Material Increases in Risk" Are Misguided.

BP makes far too much of *Hiern* and *Fleeger* and the supposed "general rule" regarding increased risk. BP Opposition, pp. 14-16. Those cases involved situations in which a party engaged in conduct, ***not contemplated by the contract***, that increased the indemnitor's risk. For example, in *Fleeger*, the indemnitee made material extra-contractual misrepresentations that caused the indemnitor to overpay the claims of several contractors. *General Ins. Co. v. Fleeger*, 389 F.2d 159, 161 (5th Cir. 1968). Here, by contrast, the parties bargained for indemnification of gross negligence and consciously allocated that risk. Thus, the indemnitee's gross negligence did not "increase the risk" or "prejudice the rights" of the indemnitor. *See* Doc. 2701, pp. 9-10. That risk was priced into the bargain from the beginning. Thus, BP's argument proves too much. It would invalidate indemnity even for routine risks that the parties anticipated and bargained for. *See* BP Opposition, p. 15 (citing examples). To steal BP's phrase, if this run-of-the-mill conduct were enough to defeat BP's indemnity obligations, this rule would "swallow them whole." *Id*.

Finally, *Fleeger* confirms Cameron's position that the unenforceability of one part of an indemnity agreement does not invalidate the entire provision. *See* Doc. 4701, pp. 16-18. The misrepresentations in *Fleeger* did not invalidate the indemnity wholesale; the indemnitor recovered only the additional expenses incurred as a result of the misrepresentations. *Fleeger*, 389 F.2d at 161. Likewise, as even the authorities cited by BP agree, "a party can be indemnified if it is found liable for simple negligence even if it cannot be indemnified for gross negligence." BP Opposition, p. 16 (citing the Restatement); *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp.2d 590, 608 (S.D. Tex. 2011) (same). At the very least, that rule is controlling here.

### CONCLUSION

Cameron renews the prayer for relief in its reply to Transocean's response.

1078453v.1

Respectfully submitted,

| | |
|---|---|
| David J. Beck, T.A. | /s/ Phillip A. Wittmann |
|    dbeck@brsfirm.com | Phillip A. Wittmann, 13625 |
| Joe W. Redden, Jr. |    pwittman@stonepigman.com |
|    jredden@brsfirm.com | Carmelite M. Bertaut, 3054 |
| David W. Jones |    cbertaut@stonepigman.com |
|    djones@brsfirm.com | Keith B. Hall, 24444 |
| Geoffrey Gannaway |    khall@stonepigman.com |
|    ggannaway@brsfirm.com | Jared A. Davidson, 32419 |
| BECK, REDDEN & SECREST, L.L.P. |    jdavidson@stonepigman.com |
| One Houston Center | STONE PIGMAN WALTHER WITTMANN L.L.C. |
| 1221 McKinney, Suite 4500 | 546 Carondelet Street |
| Houston, TX 77010-2010 | New Orleans, Louisiana 70130 |
| 713-951-3700 | 504-581-3200 |
| 713-951-3720 (fax) | 504-581-3361 (fax) |
| | **ATTORNEYS FOR CAMERON INTERNATIONAL CORPORATION** |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply of Cameron International Corporation Addressing BP's Opposition to Cameron's Motion for Summary Judgment Confirming the Indemnity Obligations of Transocean has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2011.

                                              /s/ Phillip A. Wittmann

1078453v.1