UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN OPPOSITION TO VARIOUS MOTIONS IN LIMINE TO PRECLUDE THE INTRODUCTION OF NON-GOVERNMENTAL REPORTS**

BP opposes the motions filed to exclude from evidence the report of BP's Internal Investigation Team (a/k/a the "Bly Report"). As explained herein, the report is admissible because it is a business record of BP, its reliability can be shown through extensive information, produced to all parties, establishing its pedigree, and it is independently relevant and probative of how BP responded to the *Deepwater Horizon* incident.[1]

**I.      The Internal Investigation Team's Report is Admissible Under Rule 803(6).**

In arguing that the Internal Investigation Team's report (the "IIT Report") is not admissible under Rule 803(6), the moving parties attempt what might charitably be termed legal sleight-of-hand: combining non-controlling and inapposite precedent from beyond this circuit, with unsupported insinuations about the IIT Report, to try and paint a distorted picture of the facts and applicable law. Contrary to their assertions, the IIT Report does satisfy the

---

[1] To the extent parties have requested that Transocean's internal investigation report also be excluded, BP believes that all defendants' internal reports of this nature should be treated in the same manner and, thus, that Transocean's report should be available for use to the same extent as the Bly Report. BP agrees, however, that reports by other non-governmental entities that were not involved in the drilling of the Macondo Well should not be admitted into evidence. None of these arguments supporting the admission of the Bly Report, and potentially other party-generated reports, apply to reports generated by entities that played no role in events at issue. Such reports are neither relevant to, nor probative of, the conduct of any party to this case. BP therefore does not oppose the motions to the extent they seek to exclude non-governmental reports prepared by others, such as the so-called Berkeley Report, to which BP intends to object in due course.

1

requirements of Rule 803(6), and documents such as the IIT Report are routinely admitted into evidence. Moving parties' arguments to the contrary amount to wishful thinking.

### A. Post-Incident Reports are Routinely Admitted Under Rule 803(6).

Courts in this circuit have routinely admitted companies' post-incident investigation reports as business records under Rule 803(6). *E.g.*, *Brauninger v. Motes*, 260 Fed. App'x 634, 637-38 (5th Cir. 2007) (unpublished);[2] *West v. Drury Co.*, Civil Action No. 2:07CV215-P-A, 2009 WL 1532491, at *2 (N.D. Miss. June 2, 2009); *Matthews v. Remington Arms Co.*, Civil Action No. 07-1392, 2009 WL 1220541, at *5 (W.D. La. May 4, 2009); *see also, e.g.*, *Dawson Farms, LLC v. BASF Corp.*, Civil Action No. 06-0737, 2008 WL 4600934, at *4 (W.D. La. Oct. 15, 2008); *DiStefano v. Otis Elevator Co.*, No. CIV.A. 95-3976, 1997 WL 572895, at *1 (E.D. La. Sept. 15, 1997).

Unquestionably, under certain circumstances, these same courts have had occasion to exclude companies' reports offered under Rule 803(6). *E.g.*, *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991); *McNeese v. Reading and Bates Drilling Co.*, 749 F.2d 270, 275 (5th Cir. 1985). But this merely reflects the fact that there is no bright-line rule – as wrongly suggested by the moving parties – regarding such documents. Rather, as with any other item generated by a business, admissibility hinges on the specific facts and circumstances of the item.

---

[2] Transocean's assertion that *Brauninger* does not involve the admission of investigation reports under Rule 803(6) is facially incorrect. Transocean's Motion in Limine to Exclude BP's Internal Investigation Report (Bly Report) and Other Non-Governmental Reports at 7, n.4, MDL No. 2179. It is true that, in the lower court proceedings at issue in the case, "[b]ecause [the statements in the investigation reports] were offered to prove what was said . . . and thus what [was] . . . relied on in making the decision to fire [the appellant], the statements were not offered to prove the truth of the matter asserted." *Brauninger*, 260 Fed. App'x at 637. **But in the very next paragraph of that same opinion,** the court of appeals notes that "[a]lthough the statements [discussed above and] contained in the [investigation] reports were not hearsay [for the reasons discussed above], the [investigation] reports constitute out-of-court statements by [other individuals] that are hearsay." *Id.* Nevertheless, both the lower court and, on appeal, the court of appeals deemed these portions of the reports admissible because "the [investigation] reports are admissible under [R]ule 803(6)'s exception to the hearsay exclusion." *Id.* In short, contrary to Transocean's submission, portions of the "underlying statements" embodied in the investigation reports in *Brauninger* **were** hearsay but were nevertheless found admissible through Rule 803(6).

B.     **The IIT Report Was Created as Part of a Regular Business Activity.**

The linchpin of admissibility under Rule 803(6) is ***regularity***.  *See International Marine, L.L.C. v. Delta Towing, L.L.C.*, Civil action No. 10-0044, 2011 WL 890680, at *4 & n.31 (E.D. La. Mar. 11, 2011) (quoting *Small v. E.I. DuPont de Nemours & Co.*, Civil Action No. 05-216, 2006 WL 2710439, at *2 (E.D. La. Sept. 19, 2006)).  When the document in question can be shown to have been made in the regular course of business activity at the company, it gains a strong presumption of trustworthiness and reliability and, by extension, admissibility.  *Id.*  BP's policies on this point could not be clearer:  incidents such as those occurring onboard deepwater drilling rigs are routinely analyzed, investigated and, where appropriate, reported on.  The moving parties' emphasis on the unprecedented nature of the incident which the IIT was tasked with investigating is misplaced.  They characterize the *Deepwater Horizon* incident as "[not] 'regular'" and "unprecedented."  But, for purposes of admissibility under Rule 803(6), what matters is ***not*** the nature of the incident for which the report is generated, but the regularity of the company's internal investigation and report-generating process.

Here, of course, as clearly indicated in the IIT Report, both the investigation and the report documenting its findings were conducted pursuant to and in accordance with established BP procedures for post-incident root cause analyses.  The fact that the IIT Report reflected a decision to omit a "systemic" analysis while keeping in "immediate" and "system" analyses is irrelevant for purposes of admissibility under Rule 803(6).  There is no evidence that the analyses conducted were in any way unusual or unprecedented in their character – notwithstanding the unique circumstances of the incident itself.

### C.     The IIT Report is Trustworthy.

The moving parties suggest that, in light of the litigation which has arisen following the *Deepwater Horizon* incident, the IIT Report is untrustworthy for purposes of admissibility under Rule 803(6). Not so. The presence of litigation does not render a company incapable of generating a trustworthy report. Particularly here, where the IIT Report was purposefully insulated from the effects of ongoing and potential litigation arising out of the incident. The IIT Report was created precisely because the Company recognized a legitimate **non-litigation-driven** business need to perform an objective investigation into the events on April 20, 2010, drawing on the experience and expertise of its personnel separate and apart from pending or anticipated litigation efforts.

Courts in this circuit have repeatedly shunned parties' efforts to impugn the trustworthiness of a document under Rule 803(6) merely because that document was prepared when it was apparent that the company would be or was involved in litigation. *See, e.g.*, *Brauninger*, 260 Fed. App'x at 635, 637-38 (finding that the "primary utility" or "purpose" of investigative reports regarding sexual harassment allegations against employee was not their use in litigation and thus affirming a ruling that reports were admissible under Rule 803(6) in suit by employee against company despite fact that reports were prepared following employee's termination from company and company learned during investigation that employee intended to "'sue . . . everyone'" (quoting *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988))); *Montes v. Phelps Dodge Industries, Inc.*, 481 F. Supp. 2d 700, 709, 714 (W.D. Tex. 2006) (finding company document evaluating possibility of Plaintiff's termination and discussing advantages of termination to company admissible under Rule 803(6) and rejecting plaintiff's unsubstantiated argument that document was prepared "with litigation in mind"); *cf.*,

*e.g.*, *Georgia-Pacific Corp. v. M/V Anthos*, No. 96-30579, 1997 WL 33495, at *4 (5th Cir. 1997) (finding that data records of business were created as part of "normal" operations and thus affirming admission of data under Rule 803(6) despite fact that "the printouts themselves may have been prepared for litigation"). Rather than some sort of ill-founded presumption of inadmissibility based merely on the knowledge of possible litigation, what matters in these cases is the presence of telltale indicators of reliability and regularity in combination with evidence that the items' "primary utility" was something other than mere "litigation."

        **D.**       **The IIT Report Was Made by Someone "With Knowledge."**

The content of the IIT Report plainly belies the assertion that it was "not based on information taken from 'someone with knowledge.' The Report is based on a combination of employee interviews, detailed day-of-incident factual records and real-time data, and analysis by trained specialists. IIT Report at 9. Setting aside the legally distinct issue of the effect of double hearsay, courts have readily admitted reports containing analysis by specialists or other investigative agents utilized by a company, provided all the other requirements of Rule 803(6) are met. *See, e.g.*, *United States v. Irvin*, 656 F.3d 1151, 1162 (10th Cir. 2011) ("Put simply, if it can be established that a given document was relied on by a business and incorporated into that business's records in the ordinary course, it is irrelevant that the record was generated by a third party so long as Rule 803(6) is otherwise satisfied."); *cf. e.g.*, *Brawner v. Allstate Indemnity Co.*, 591 F.3d 984, 987 (8th Cir. 2010) (citing *United States v. Duncan*, 919 F.2d 981, 986-87 (5th Cir. 1990)).

**II.**    **Even if the IIT Report Were Not Admissible for the Truth of Matter Asserted, it Would Still Be Admissible for a Variety of Other Purposes.**

Even if, contrary to fact, the IIT Report were inadmissible to prove the truth of a contested matter in these proceedings, it would still be admissible for numerous other purposes,

subject to the usual requirements of, *e.g.*, Rules 402 and 403. *See, e.g.*, *Willis v. KIA Motors Corp.*, Civil Action No. 2:07CV062-P-A, 2009 WL 2351766, at *2 (N.D. Miss. July 29, 2009) (declaring that business' records of customer complaint are "not hearsay because they are not being used to prove the truth of the matter asserted" and permitting their use for purposes of establishing company's knowledge of safety incident); *Pena v. Stewart Title Co.*, Civil Action No. H-06-3003, 2007 WL 2903844, at *4 (S.D. Tex. Oct. 3, 2007) (overruling party's evidentiary objections regarding business records of opposing party and noting that certain of those records were only relied on by the court not for the truth of the matters asserted therein but merely to determine the opposing party's awareness of a charge filed against it); *Cain v. Herrera*, No. Civ.A. C-04-502, 2005 WL 3312636, at *1 & n.2 (S.D. Tex. Dec. 7, 2005) (overruling plaintiff's objection to admission of business' classification and disciplinary records because records "serve only to document the chronology of events in this case" and "are not being offered to establish the truth of the matter asserted").

Thus, the IIT Report would still be admissible in these proceedings for such other purposes as providing information about the conduct of the investigation, detailing the personnel involved in the investigation, establishing general BP policies and procedures, describing other parties' cooperation (or lack thereof) in determining issues of root cause following the incident, and connecting BP's post-incident efforts to the broader safety culture at the Company. As the Court is well aware, multiple parties have sought to make BP's safety record and response to prior incidents a major theme in this case. Regardless of the extent to which these matters do come into evidence in light of pending motions, no other party has standing to argue that BP's response to the *Deepwater Horizon* incident, including the extensive work it undertook to produce the IIT Report, should be excluded from evidence. Regardless of whether the finder of

6

fact accepts the truth of the findings and conclusions of the IIT Report, its generation and its content have independent relevance to this case.

### III. The IIT Report Is Not Barred By Rules 701 or 702.

The fact that the IIT Report was prepared by experienced, capable personnel, often in reliance on the work and analysis of field specialists, does not render it an expert report subject to the application of Rule 702. *See In re Acceptance Insurance Cos., Securities Litigation*, 352 F. Supp. 2d 940, 946 (D. Neb. 2004) (recognizing that "expertise in a given field does not transform that witness into an expert . . . under Rule 702" and admitting analysts' reports through Rule 803(6) over opposing party's Rule 702 objection). Moreover, the fact that parties to the case have proffered expert witnesses who discuss some of the same issues as addressed in the IIT Report does not transform the IIT Report into an expert report. *See id.* (rejecting application of Rule 702 and treating proffered reports as "part of the factual record of [the] case"). Finally, ruling the IIT Report inadmissible as an expert report ignores the other, separate purposes for which the IIT Report remains admissible; namely, to show BP's response to the *Deepwater Horizon* incident, which is a matter of fact – notwithstanding expert opinions on related subjects.

### IV. The Use of the IIT Report for Impeachment Purposes.

Unlike in instances where there is a clear statutory prohibition on an item's admissibility (such as Coast Guard investigation materials), it ***may*** be permissible to use portions of the IIT Report for impeachment purposes, subject to requirements that: (1) they can be properly authenticated prior to the impeachment, *see Anthony v. Henry*, No. 06-15396, 2008 WL 1913042, at *1 (9th Cir. Apr. 30, 2008); (2) the party seeking to impeach can establish that the proffered portion of the IIT Report represents a position taken by whomever is to be impeached, *see Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 858 (D.N.D. 2006); and (3) the party seeking

to impeach can establish that the proffered portion of the report would actually serve an impeachment purpose, *see Kehm v. Procter & Gamble Manufacturing Co.*, 724 F.2d 613, 626 (8th Cir. 1983). However, because of the highly contingent nature of these inquiries, courts will often reserve determinations of admissibility for impeachment purposes until the issue is immediately before the court in the course of trial proceedings. *See, e.g.*, *Olson*, 410 F. Supp. 2d at 865. The Court should therefore delay any ruling on whether the IIT Report may be used for any particular impeachment purpose until such time as these predicates are established.

Critically, however, in the event that portions of the IIT Report are deemed admissible for purposes of impeachment, pursuant to Rule 106, BP should be permitted to introduce further portions of that same report to provide context and completeness and rebut adverse parties' impeachment efforts. *See United States v. Garcia*, 530 F.3d 348, 354 (5th Cir. 2008) (describing state equivalent to Rule 106 as relieving the "tactical disadvantage" which arises when one party is permitted to introduce a "'cold'" document as, for example, with the introduction of a transcript used against a witness during cross-examination); *United States v. Baron*, 602 F.2d 1248, 1251-52 (7th Cir. 1979) (affirming introduction of memoranda under Rule 106 to counteract opposing counsel's impeachment efforts).

V.     **The Use of the IIT Report as a Party Admission by BP.**

BP acknowledges that it may be possible for a party to establish the prerequisites for the introduction of some portion of the IIT Report as a party admission by BP under Rule 801(d)(2). Doing so, though, would require a showing both that the excerpt could be used "against" BP and that the particular excerpt was: (1) "made by [BP] in an individual or representative capacity;" (2) one which BP "manifested that it adopted or believed to be true;" (3) "made by a person whom . . . [BP] authorized" to make such statements on that topic; or (4) "made by [BP]'s agent

8

or employee on a matter within the scope of that relationship and while it existed. *See* FED. R. EVID. 801(d)(2). It would also require establishing a proper foundation for the document's introduction under that Rule. *See Beaudoin v. Westlake Styrene LP*, No. 2:06 CV 0900, 2007 WL 4622779, at *5 n.26 (W.D. La. Dec. 28, 2007); *Sowders v. TIC United Corp.*, Civil Action No. SA-05-CA-309-OG, 2007 WL 3171797, at *2 & n.6 (W.D. Tex. Aug. 15, 2007).

Here, too, however, it would be premature to conclude as much unless and until a party establishes these requirements. And just as with the use of the IIT Report for impeachment purposes, the rule of completeness – not to mention basic fairness – would mandate allowing BP to introduce such other portions of the IIT Report as necessary to explain its pedigree, scope, and conclusions to dispel any mischaracterization resulting from selective "admissions" cited by other parties.

## CONCLUSION

BP respectfully requests that the Court deny the parties' motions to exclude the IIT Report from evidence, and rule that non-governmental reports prepared by other parties generally be treated in the same manner as the IIT Report, but that non-governmental reports generated by non-parties be excluded from evidence as requested by the movants.

Dated: December 12, 2011                     Respectfully submitted,

/s / Don K. Haycraft.

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979

Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2011.

/s/ Don K. Haycraft__