Exhibit 4

Tom Roth Deposition

415

```
1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF LOUISIANA
3    IN RE: OIL SPILL          )   MDL NO. 2179
     by the OIL RIG            )
4    "DEEPWATER HORIZON" in    )   SECTION "J"
     the GULF OF MEXICO, ON    )
5    APRIL 20, 2010            )   JUDGE BARBIER
                                )
6                               )   MAG. JUDGE
                                )   SHUSHAN
```

VOLUME 2 OF 2

Deposition of THOMAS ROTH, taken at Hilton St. Charles Hotel, 333 St. Charles Avenue, Le Moyne Room, New Orleans, Louisiana, on the 26th of July, 2011.

1  alternative.
2      Q.  (BY MS. HARDING)  Okay.  And you
3  would agree with me that the BP wells team
4  should have been informed of that if that
5  were the case?
6          MR. HILL:  Object to form.
7          MR. MADIGAN:  The same
8  objection.
9      A.  Again, I answered that previously
10 by saying that in support of operations
11 that information would be valuable.
12          (Exhibit Number 4352 marked.)
13     Q.  (BY MS. HARDING)  I'm going to
14 show you Exhibit -- it's been marked 4352,
15 HAL_1071448.  We don't have it in the tab.
16 I think we just found it.
17          It says Mr. -- I'm going to
18 read.  It's from Simon Turton to you.
19          FYI, Fred Sabins is consulting
20 to BP, performing an investigation into
21 our foam slurry.  Rumor is that he's
22 determined to prove slurry instability --
23         MR. HILL:  What tab are you
24 on, please?
25         MS. HARDING:  It's not a tab,

```
 1    sorry.
 2         Q.  (BY MS. HARDING)  -- as a
 3    stand-alone system and when contaminated
 4    with spacer mud.
 5              Did you have any conversations
 6    with anyone about this e-mail?
 7         A.  Could I see the e-mail?
 8         Q.  Yes, I'm sorry.  I'm sorry I don't
 9    have another copy.
10         A.  Yeah.  This is dated July the
11    23rd.  I don't recall if I had any
12    conversation with -- with Simon.  I see
13    the reply that is indicated here.
14         Q.  Okay.  The point I wanted to ask
15    you about is, you sent an e-mail at the
16    top to Anthony Badalamenti --
17         A.  Badalamenti.
18         Q.  -- and Simon Turton and you said
19    spacer volume was sufficient to sweep
20    entire annulus volume.  As such, spacer
21    was sufficient to sweep channel.
22    Subsequent testing with 3-D confirms
23    statement that spacer was sufficient.
24         A.  Can I see that, please?
25         Q.  Do you see that?
```

Case 2:10-md-02179-CJB-DPC   Document 4871-5   Filed 12/12/11   Page 5 of 5

496

1  A. Yes, I see that.
2  Q. Okay. Was that a correct
3  statement when you made it?
4  A. I would think that that -- that
5  statement is correct.
6  Q. Okay. And what 3-D modeling are
7  you referring to there?
8  A. 3-D modeling is a software program
9  that's -- that's available to track
10 placement of fluids in a well.
11 Q. Okay. And are you referring to
12 the 3-D modeling that was done after --
13 done after the cement -- after the
14 incident or before the incident?
15 A. This work is after.
16 Q. Okay. And who did the work that
17 you're referring to there?
18 A. I believe Mark Savery.
19 Q. Okay. And do you know whether or
20 not -- because it looks like it was in
21 your possession -- do you know that that
22 was part of the materials that you've
23 turned over to legal counsel?
24 A. I don't know.
25 Q. Okay. Agree with me -- would you