UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179<br><br>SECTION: J |
| This document relates to:<br><br>*All Cases* | § § § § | **Judge Carl J. Barbier**<br>**Magistrate Judge Sally Shushan** |

**M-I L.L.C.'S RESPONSE TO
TRANSOCEAN'S MOTION IN LIMINE TO EXCLUDE
BP'S INTERNAL INVESTIGATION REPORT (BLY REPORT) AND
OTHER NON-GOVERNMENTAL REPORTS AND TO
CAMERON'S MOTION TO EXCLUDE NON-GOVERNMENTAL REPORTS**

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:   (305) 415-3000
Facsimile:   (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:   (713) 890-5000
Facsimile:   (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

December 12, 2011

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
     Hugh E. Tanner
     htanner@morganlewis.com
     Texas Bar No. 19637400
     1000 Louisiana, Suite 4000
     Houston, Texas  77002
     Telephone:   (713) 890-5000
     Facsimile:   (713) 890-5001

**ATTORNEY FOR DEFENDANT
M-I L.L.C.**

**I.      INTRODUCTION**

Transocean and Cameron each filed a motion in limine to exclude BP's *Deepwater Horizon* Accident Investigation Report (the "Bly Report") along with any other non-governmental reports. Under the Federal Rules of Evidence, however, the Bly Report is admissible as a business record.[1] Additionally, although no party has sought specifically to exclude the BP Project Spacer Report or Intertek Westport Technology Center's report regarding the Potential for Settlement of Form-a-Squeeze and Form-A-Set AK Blends (the "Intertek Spacer Report"), M-I, out of an abundance of caution, also responds to Transocean's and Cameron's arguments as applied to these other reports, as they too are admissible as business records.

**II.     BACKGROUND**

Prior to the *Deepwater Horizon* incident, BP had an established, standardized protocol (the "Protocol") for investigating health, safety, security, and environmental ("HSSE")-related incidents.[2] According to the Protocol, BP "openly investigates HSSE related incidents with the primary intention of reducing risk across operations." Protocol 3. The Protocol "sets out BP's required approach for an incident investigation." *Id.* at 4. The Protocol requires, at the conclusion of the investigation, the preparation of an incident investigation report setting forth the investigation's findings and conclusions and "propos[ing] corrective actions for consideration by [BP]." *Id.* at 9. The Protocol requires that the report be retained for at least ten years. *Id.* at 10. The *Deepwater Horizon* incident is an "incident" within the meaning of the Protocol.

Pursuant to its normal business practices as outlined in the Protocol, immediately following the *Deepwater Horizon* incident, BP formed an investigation team charged with

---

[1] Additionally, in an October 17, 2011, letter to this Court, the Plaintiffs Steering Committee (PSC) demonstrated that the Bly Report was admissible in its entirety under the business-records hearsay exception. This response incorporates the arguments in that letter as if set forth in their entirety.

[2] Group Defined Practice-GDP4.4-0002-Incident Investigation-BP-HZN-BLY00205082 (Oct. 14, 2009).

gathering the facts surrounding the incident, analyzing available information to identify possible causes, and making recommendations to prevent similar incidents in the future.  Bly Report  9.  As part of the investigation, the team conducted a fluids-specific study to determine whether the spacer used for displacement played a role in the *Deepwater Horizon* incident.  BP Project Spacer Report § 1.0.  As part of the study, the team selected Intertek to conduct laboratory testing, which BP oversaw, and to produce a report of its findings.  *Id.* § 9.1.  On June 16, 2010, the team produced the BP Project Spacer Report, based in part on the Intertek Spacer Report.  In turn, on September 8, 2010, per BP's standing procedures, the investigation team issued the Bly Report, based in part on the BP Project Spacer Report.

### III.   ANALYSIS

####     A.   The Reports Are Admissible As Business Records Under Rule 803(6).

The Bly Report, the BP Project Spacer Report, and the Intertek Spacer Report are each admissible under the business-records exception to the rule against hearsay.  *See* FED. R. EVID. 803(6).  Rule 803(6) excepts from the rule against hearsay "[a] record of an act, event, condition, opinion, or diagnosis if:"

- (A)   the record was made at or near the time by—or from information transmitted by—someone with knowledge;

- (B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

- (C)   making the record was a regular practice of that activity;

- (D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

- (E)   neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6).  The Rules define a "record" as including "a memorandum, report, or data compilation."  FED. R. EVID. 101(b)(4).  "[T]he rationale underlying this exception to the rule against hearsay is that the inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, *or* by a duty to make an accurate record as part of a continuing job or occupation.'"  *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001) (quoting FED. R. EVID. 803(6), Advisory Committee Notes) (emphasis added).

The parties do not dispute that the reports were made at or near the time of the events or opinion they concern.  *See* FED. R. EVID. 803(6)(A).  Similarly, the parties do not dispute that the records were "kept" by the relevant business entities; rather, the dispute concerns whether the relevant activity was a "regular business activity" within the meaning of Rule 803(6).  *See* FED. R. EVID. 803(6)(B).  The applicable case law demonstrates that these three reports meet this requirement and, thus, are admissible.

### 1. The Bly Report

Transocean and Cameron contend that the preparation of the Bly Report was not a regular practice of a regularly conducted activity of BP's business and thus does not qualify as a business records under Rule 803(6).  Rather, they assert that the Bly Report was prepared for the purpose of litigation.  For support, they both rely on the Supreme Court's opinion in *Palmer v. Hoffman*, 318 U.S. 109 (1943).

In *Palmer*, the Supreme Court considered whether a railroad engineer's statements reporting an accident in which he had been involved were made in the course of the railroad company's business within the meaning of the statutory predecessor to Rule 803(6).  *Palmer*, 318 U.S. at 111.  The Court held, "[*I*]*n this case* those reports are not for the systematic conduct of the enterprise as a railroad business. . . . [T]hese reports are calculated for use essentially in

3

the court, not in the business. Their primary utility is in litigating, not in railroading." *Id.* at 114. (emphasis added); *see also Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2538 (2009) (reaffirming that documents are not admissible under Rule 803(6) "if the regularly conducted business activity is the production of evidence for use at trial"). Applying *Palmer*, the Fifth Circuit has deemed reports inadmissible where their "primary utility" is for litigation. *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988).

Unlike the engineer's statements in *Palmer*, the primary utility of the Bly Report is to reduce risk by providing recommendations to prevent similar incidents in the future. Bly Report 9; Protocol 3. To do this, the investigation team gathered the facts surrounding the *Deepwater Horizon* incident and analyzed the available information to identify possible causes. Bly Report 9. The Bly Report's utility for litigation was limited: The investigation team "did not evaluate the evidence against legal standards." *Id.* at 2. Additionally, the Bly Report was not made "in response to any third party investigation, inquiry, or litigation." *Id.* Because BP relies on accident-investigation reports, such as the Bly Report, to prevent future accidents, BP has a strong interest in ensuring the accuracy of the facts gathered and the analysis provided. *See Wells*, 262 F.3d at 462 ("inherent reliability of business records is 'supplied by . . . by actual experience of business in relying upon them'" (quoting FED. R. EVID. 803(6), Advisory Committee Notes)).

Cameron contends that federal courts exclude non-governmental reports when litigation is merely anticipated and that post-accident investigations are generally presumed to fall outside Rule 803(6). This is not the law of the Fifth Circuit.

In *Brauninger v. Motes*, the Fifth Circuit affirmed the trial court's admission of two incident-investigation reports under the Rule 803(6). 260 Fed. Appx. 634, 637 (5th Cir. 2007).

4

The court affirmed the trial court's determinations that the reports "were based on [the human-resource managers'] personal knowledge of their own investigations, and were the result of a regularly conducted business activity." *Id.* Specifically, the Fifth Circuit explained, "[T]he investigation and documentation of sexual harassment allegations are ordinary business practices and regular parts of [the human-resource managers'] duties as human resource managers." *Id.* Distinguishing from the reports at issue in *Palmer*, the court explained, "[T]he primary purpose of [the] reports had little to do with any anticipated litigation . . . . The harassment investigation was triggered by employees' sexual harassment complaints and not by [the] subsequent threat to sue." *Id.* at 637-38.

Similarly, here, the BP investigation was not triggered by the prospect of litigation; rather, it was triggered by the occurrence of the *Deepwater Horizon* incident. *See* Bly Report 2; Protocol 3. Likewise, the investigation, having been conducted pursuant to the established Protocol, *see* Feb. 24, 2011 Deposition of Matthew Lucas 306:3-14, constitutes a regularly conducted activity of BP's business. In turn, making the subsequent Bly Report constitutes a regular practice of such an investigation. The Bly Report, like the reports in *Brauninger*, was prepared by persons having personal knowledge of the investigation.

Transocean attempts to distinguish *Brauninger*. Tranocean's Mot. in Limine 7 n.4. Transocean correctly notes that the statements made by the employees during the investigation were not hearsay because those statements were not offered for the truth of the matter asserted— namely, that the sexual harasser had made certain harassing comments. *See Brauninger*, 260 Fed. Appx. at 637. Because in the particular context of the litigation, the underlying statements were not hearsay, it was unnecessary to decide whether they too would have fit within the business-records exception. Transocean's attempt to distinguish *Brauninger* misses the true

5

importance of the case: the Fifth Circuit's holding that a report documenting an incident investigation can constitute a "regular practice" of a "regularly conducted activity" and thus can be admissible within the business-records exception. *See id.*

Transocean and Cameron contend that the circumstances of the preparation of the Bly Report indicate a lack of trustworthiness. In particular, they focus on the size and significance of the *Deepwater Horizon* incident. The size of the event being reported is not determinative of or important to admissibility under Rule 803(6). Rather, what is important is how the report was prepared. Here, BP followed the same standardized Protocol that it regularly uses to investigate all HSSE events. Such an established routine carries with it the requisite indicia of trustworthiness to be admissible as a business record. *See Wells*, 262 F.3d at 462 ("'inherent reliability of business records is 'supplied by . . . regularity and continuity which produce habits of precision'" (quoting FED. R. EVID. 803(6), Advisory Committee Notes)); *Herdman v. Smith*, 707 F.2d 839, 842 (5th Cir. 1983) (equating trustworthiness with reliability); *cf. Brauninger*, 260 Fed. Appx. at 637. The Bly Report's trustworthiness is further bolstered by the fact that the investigation team worked independently from all other BP organizations and spill-response activities. Bly Report 9, 13. To the extent that Transocean or Cameron feels a specific portion of the Bly Report is biased, that goes to the weight of the evidence, not to its admissibility. *See* FED. R. EVID. 803(6), Advisory Committee Note ("that records might be self-serving has not been a ground for exclusion"); *United States v. Scholl*, 166 F.3d 964, 978 (9th Cir. 1999) ("Generally, objections that an exhibit [admitted under Rule 803(6)] may contain inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence." (quoting *United States v. Keplinger*, 776 F.2d 678, 694 (7th Cir. 1985) (internal quotation marks omitted)).

Transocean also contends that the Bly Report does not qualify for the business-records exception to the extent that it was based on materials provided by third parties.[3] Such documents, however—which included real-time data from the rig and documents relating to the development of the Macondo well—themselves qualify as business records of their respective entities in their own right, irrespective of their incorporation into the Bly Report. *See* FED. R. EVID. 805; *United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996) (explaining that a business record may be based on information from outsiders if such information falls within another hearsay exception); *see also Matador Drilling Co. v. Post*, 662 F.2d 1190, 1198-99 (5th Cir. 1981) (holding that daily drilling reports were admissible under the business-records exception).

Transocean also contends that the Bly Report does not qualify for the business-records exception to the extent that it was based on analysis and reports of third-party specialists commissioned by BP. To the contrary, the Fifth Circuit has explained that "[i]f both the source and the recorder of the information . . . are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6)." *Ismoila*, 100 F.3d at 392. By being commissioned by BP to assist in the investigation, these third-party specialists effectively functioned as members of the investigation team. Therefore, these specialists were "participants . . . acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'" FED. R. EVID. 803(6), Advisory Committee Notes.

Additionally, the analysis and report of each third-party specialist constituted business records of those entities in their own right. With respect to its own area of expertise, each third-party specialist routinely conducts analysis and prepares reports as a regular practice of its

---

[3] Transocean similarly contends that the Bly Report does not qualify for the business-records exception to the extent that it was based on statements of non-BP employees. Because the spacer analysis in the Bly Report is not dependent upon any such statements, M-I takes no stance on this issue.

7

regularly conducted businesses activities. For these third-party specialists, such analysis and reports are "made for the systematic conduct of the[ir] business *as a business*." *Palmer*, 318 U.S. at 113 (emphasis added).

### 2. BP Project Spacer Report

The BP Project Spacer Report is admissible under the business-records hearsay exception for the same reasons that the Bly Report is admissible. Both reports were prepared by the same investigation team, around the same time, and for the same purposes. The chief distinction between the two reports is that the BP Project Spacer Report concerns only a narrow issue of the larger overall investigation. Accordingly, the BP Project Spacer Report is based on a smaller set of underlying documents.

### 3. Intertek Spacer Report

Being one of the third-party specialist reports discussed above, the Intertek Spacer Report is admissible as a business record under Rule 803(6), both in its own right and having been made in the course of the BP investigation. The report was made at or near the time of the laboratory testing by those with knowledge of the laboratory testing. Intertek regularly conducts this kind of testing as one of its business activities.[4] Intertek in turn prepares laboratory reports as a regular practice of such business activity.

### 4. Applicability Of Federal Rule Of Evidence 702 To Opinions Admissible Under Federal Rule Of Evidence 803(6)

Transocean contends that the Bly Report is inadmissible because "[m]any of the conclusions in the Report require a technical expertise, and there is no showing of the necessary qualifications for such expert testimony." Transocean Mot. in Limine 2. In particular, Transocean complains that this "expert testimony" does not comply with the requirements of

---

[4] *See* Intertek West Port Technology Center, http://www.intertek.com/oil-and-gas/westport (last visited Dec. 12, 2011).

8

Federal Rule of Evidence 702. *Id.* Where a report qualifies as a business record under Rule 803(6), however, it is not also subject to the Federal Rules of Evidence governing the requirements for expert testimony. *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979) (finding expert appraisal of painting's value admissible under Rule 803(6) and refusing to "adopt an inflexible rule that every case requires the proponent of a business record containing expert opinion to affirmatively establish the qualifications of the person forming the opinion" because "Rule 803(6) expressly provides for the exclusion of a business record if the source of information indicates a lack of trustworthiness"); *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 85 (D.N.H. 2009) (stating that "most authorities take the view that a party offering a document admissible [under Rule 803(6)] . . . need not also show, under Rule 702, the qualifications of the document's author to render any opinions in the report"); *see*, *e.g.*, *Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1009-10, n.8 (8th Cir. 2002) (holding that laboratory-testing reports constituted business records under Rule 803(6) and therefore consideration of whether the report qualified under Rule 702 was unnecessary). To exclude the opinion, "the adverse party bears the burden to show that 'the source of information or the method or circumstances of preparation lack trustworthiness,' as provided by Rule 803(6) itself." *Aumand*, 611 F. Supp. 2d at 86 (quoting *Licavoli*, 604 F.2d at 622). Neither Transocean nor Cameron has made this showing. Moreover, the specific complaints that Transocean has concerning the competency of the persons who prepared the Bly Report go to the potential weight of the evidence, not its admissibility. *See United States v. Evans*, 572 F.2d 455, 490 (5th Cir. 1978) ("objections, relating to the identity or competency of the actual preparer, may have been relevant to the evidentiary weight or credibility of the documents, but did not effect [sic] their admissibility" under Rule 803(6)).

9

### B. Admission by Party-Opponent

It is undisputed that the Bly Report, the BP Project Spacer Report, and the Intertek Spacer Report, even if not admissible for all purposes, are admissible against BP as admissions by a party-opponent. *See* FED. R. EVID. 801(d)(2).

## IV. CONCLUSION

This Court should deny Transocean's and Cameron's motions in limine to exclude the non-governmental reports, and hold that the Bly Report, the BP Project Spacer Report, and the Intertek Spacer Report are admissible as business records under Rule 803(6).

Respectfully submitted,

| | |
|---|---|
| **OF COUNSEL:**<br>MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| Derek E. Leon<br>dleon@morganlewis.com<br>Texas Bar No. 24002463<br>5300 Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Miami, Florida  33131<br>Telephone:     (305) 415-3000<br>Facsimile:      (305) 415-3001 | By: /s/ *Hugh E. Tanner*<br>       Hugh E. Tanner<br>       htanner@morganlewis.com<br>       Texas Bar No. 19637400<br>       1000 Louisiana, Suite 4000<br>       Houston, Texas  77002<br>       Telephone:     (713) 890-5000<br>       Facsimile:      (713) 890-5001 |
| Denise Scofield<br>dscofield@morganlewis.com<br>Texas Bar No. 00784934<br>1000 Louisiana, Suite 4000<br>Houston, Texas  77002<br>Telephone:     (713) 890-5000<br>Facsimile:      (713) 890-5001 | **ATTORNEY FOR DEFENDANT**<br>**M-I L.L.C.** |

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing M-I L.L.C.'s Response to Transocean's Motion in Limine to Exclude BP's Internal Investigation Report (Bly Report) and Other Non-Governmental Reports and Cameron's Motion to Exclude Non-Governmental Reports has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2011.

                                                                 /s/ *Hugh E. Tanner*
                                                                  Hugh E. Tanner