## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig**<br>**"Deepwater Horizon" in the Gulf**<br>**of Mexico, on April 20, 2010**<br><br>**This Document Relates to:**<br>*All Cases*<br><br>**(Including No. 10-2771)** | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTIONS *IN LIMINE*
OR TO EXCLUDE NON-GOVERNMENTAL REPORTS AND/OR OTHER
BUSINESS RECORDS ON BASIS OF *DAUBERT* / FED. R. EVID. 702**

Further to their original LETTER BRIEF dated October 17, 2010 [Doc 4340-6],[1]

Plaintiffs respectfully submit the following Memorandum in Opposition to: (i) Cameron's

Memorandum in Support of Motion to Exclude Non-Governmental Reports [Doc 4811-

1]; (ii) Transocean's Memorandum in Support of Motion *in Limine* to Exclude BP's

Internal Investigation Report (Bly Report) And Other Non-Governmental Reports [Doc

4812-1]; and Halliburton's Letter Brief dated December 5, 2011, regarding alleged

*Daubert/*702 Issues:

**MAY IT PLEASE THE COURT:**

It is well-settled that opinions contained within business records are not subject to

the requirements of Rule 702. *See, e.g., United States v. Licavoli,* 604 F.2d 613, 622 (9th

Cir. 1979); *Aumand v. Dartmouth Hitchcock Med. Ctr.,* 611 F.Supp.2d 78, 85 (D.N.H.

---

[1] *See also,* LETTER BRIEF (submitted *in camera*) dated November 18, 2011 (noting that
BP agrees that its September 8, 2010 Deepwater Horizon Accident Investigation Report [the
"Bly Report"] [TREX-00001] is generally admissible as a business record of BP).

2009).  This is "consistent with the structure of the Federal Rule, which explicitly admits opinions, and accordingly should allow their admission if they are made and recorded in the regular course of a business unless the opponent raises a challenge to their trustworthiness." 2 MCCORMICK ON EVIDENCE, § 287, at 307 n.10 (6th ed.) (2009); *see Shelton v. Consumer Prods. Safety Comm'n,* 277 F.3d 998, 1009 (8th Cir. 2002) (ruling that because the district court did not abuse its discretion in concluding that a lab report satisfied the trustworthiness requirement of Rule 803(6), the court did not need to consider the opponent's Rule 702 challenge to the report); *Int'l Marine, L.L.C. v. Delta Towing,* L.L.C., No. 10-0044, 2011 U.S. Dist. LEXIS 25556, *14-15 (E.D. La. Mar. 11, 2011) (McNamara, J.) (finding that valuation surveys of two vessels were "business records" and therefore constituted "documentary evidence that need not meet the evidentiary standards of expert testimony").

The BP and Transocean Reports at issue here are business records that meet the standard of trustworthiness under Rule 803.[2]

They are, moreover, and in any event, party admissions and/or (in many respects) statements against interest, by BP and Transocean respectively.

This Court's role as gatekeeper for purposes of Rule 702 is greatly diminished because this case will not be tried to a jury. *Whitehouse Hotel L.P. v. Comm'r,* 615 F.3d 321, 330 (5th Cir. 2010). Simply put, where there is no jury "there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Id.* (citing *Gibbs v. Gibbs*, 210 F.3d

---

[2] The Chief Counsel's Report is a government report admissible under Rule 803(8) as addressed in separate motions *in limine*;  the Deepwater Horizon Study Group ("Berkeley") Report is addressed separately *infra* herein.

491, 500 (5th Cir. 2000)).  Notably, the *Thakore*[3] case relied upon by Halliburton was to be tried before a jury.

### The Non-Governmental Reports At Issue Fall Within The Business Records Exception to the Hearsay Rule.

Rule 803(6) of the Federal Rules of Evidence was specifically intended to "relax[] the requirement of producing as witnesses, or accounting for the nonproduction of, all participants in the process of gathering, transmitting, and recording information which the common law had evolved," which was "a burdensome and crippling aspect of using records of this type." ADVISORY COMMITTEE NOTE, Fed. R. Evid. 803(6).  The rule assumes that "[a]ll participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short, 'in the regular course of business.'" *Id.* (quoting Fed. R. Evid. 803(6)).  The presumed reliability of information contained in ordinary business records therefore overcomes the hearsay objection.  "In order to make clear its adherence to the [position favoring admissibility] . . . the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries." ADVISORY COMMITTEE NOTE, Fed. R. Evid. 803(6).

Halliburton, Transocean, and Cameron rely on the Supreme Court's decisions in *Palmer v. Hoffman,* 318 U.S. 109 (1943) and *Melendez-Diaz v. Massachusetts,* 129 St. Ct. 2527 (2009) (reaffirming *Palmer*) as support for their arguments that post-incident investigation reports are not "business records" within the meaning of Rule 803(6).  In *Palmer*, a train engineer made a statement concerning a train accident.  He made the

---

[3] *Thakore v. Universal Mach. Co. of Pottstown,* 670 F.Supp.2d 705 (N.D.Ill. 2009).

statement at the railroad office after an interview by a railroad official. Before trial, the engineer died. The Supreme Court ruled the statement was properly excluded in a negligence trial that resulted from the train accident. Interpreting the predecessor of 28 U.S.C. §1732, the Court ruled that the report was not made in the "regular course" of business since such "reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." 318 U.S. at 114.[4]

Here, by contrast, the record clearly establishes that the internal investigations at issue were performed in accordance with company policy to improve technical and safety practices, and to prevent other similar incidents from occurring in the future [5] – irrespective of the anticipation or pendency of litigation.

Indeed, the Fifth Circuit has interpreted *Palmer* to mean that reports are inadmissible as created in anticipation of litigation only where their "primary utility" is for litigation. *Brauninger v. Motes,* 260 Fed.Appx. 634, 637-638 (5th Cir. 2007); *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 238 (5th Cir. 1988); *see also, e.g., Lewis v. Baker,* 526 F.2d 470, 473 (2d Cir. 1975) ("the mere fact that a record might ultimately be of some value in the event of litigation does not *per se* mandate its exclusion….").

In this case, both the Bly Report and the Transocean Report were the result of investigations that were initiated within days of the disaster. The Bly Report itself explains that "BP formed an investigation team that was charged with gathering the fact surrounding the accident, analyzing available information to identify possible causes and

---

[4] Halliburton argues that, according to *Palmer,* "business records" are limited to "payrolls, accounts receivables, accounts payable, [and] bills of lading." (Halliburton Letter Brief, p.2.) This is a gross overstatement of the breadth of the *Palmer* holding.

[5] *See generally:* PLAINTIFFS' CONSOLIDATED OPPOSITION TO BP'S MOTIONS *IN LIMINE* RE PRIOR BAD ACTS [Doc 4648] (11/18/2011).

making recommendations to enable prevention of similar accidents in the future" (Bly Report, p.9), and was "not prepared in response to any third party investigation, inquiry or litigation" (Bly Report, p.2).   The Transocean Report similarly represents that "Transocean commissioned an internal investigation team comprised of experts from relevant technical fields and specialists in accident investigation to gather, review, and analyze the facts and information surrounding the incident to determine its causes" (Transocean Report, p.9), and "does not represent the legal position of Transocean, nor does it attempt to assign legal responsibility or fault" (Transocean Report, p.9).

Indeed, BP was required by pre-existing business policies to investigate the incident and prepare the report regardless of whether litigation would result, pursuant to its Group Defined Practices ("GDP").  On October 14, 2009 - long before the April 20, 2010 disaster - BP issued GDP4.4-0002-Incident Investigation [TREX-01742], which outlines the protocol for the investigation of incidents that occur within BP's ordinary course of business.  According to such policies, BP "openly investigates HSSE [Health, Safety, Security and Environment] related incidents with the primary intention of reducing risk across operations." *Id.* at 3.  "The reduction of risk can be achieved by adherence to this practice in identifying those systemic failures within the management systems and applying appropriate corrective actions." *Id.* at 3.  The GDP "sets out BP's required approach for an incident investigation" and "applies to all incidents that require reporting under the GDP 4.4-0001 Reporting HSSE and Operational Incidents." *Id.* at 4. The *Deepwater Horizon* disaster was an "incident" within the meaning of the GDP, and was undertaken as a part of a "regularly conducted business activity."  It was prepared

not primarily for the purpose of litigation, but to identify possible causes and make recommendations for the prevention of future incidents.

Kevin Fontenot, a BP Root Cause Specialist and member of the investigation team for the Bly Report testified that it is the general business practice of BP to conduct such investigations. (Fontenot Deposition, pp.118-119, 124.)  Likewise, Matthew Lucas, a BP senior safety advisor for incident investigation and the Master Root Cause Specialist for the investigation, testified that the investigation was conducted in accordance with the Group Defined Practice. (Lucas Deposition, p.306.)

Unlike the "unauthored report" proffered in *Thakore,*[6] the Bly Report and the Transocean Report were footnoted, with the investigators and authors subject to hours and hours of cross-examination regarding the bases for the statements and conclusions provided therein.

They are also, moreover, and unlike the accident report in *Palmer*, part of the systematic conduct of running a business, and were kept according to a regular procedure and for a routine business purpose that tends to insure reliability – as investigations are conducted, and reports are created, not only in response to "unusual" incidents, but to all incidents.

Finally, in *Palmer*, the defendant railroad sought admission of its own report for its own purposes.  Here, by contrast, the reports are being offered by Plaintiffs, and other adverse parties. *See, e.g., Wertz v. Consolidated Rail Corp.,* 1993 U.S. Dist. LEXIS 13563, 9-12 (E.D. Pa. Aug. 16, 1993) (Railroad's report of accident was admissible where offered by plaintiff employee because the head of safety committee for the railroad

---

[6] *Thakore,* 670 F.Supp.2d at 723 ("it is impossible to determine who provided the underlying factual information on which their conclusions are based and whether those persons were persons with knowledge").

who drafted the report was employed by the railroad and had no motivation to fabricate a report in favor of plaintiff).

Separate and apart from the business records exception, the BP and Transocean Reports can be introduced as party admissions, and/or (at least in several respects) as statements against interest by BP and Transocean, respectively.

### The Portions of the Bly Report That Are Based on Information Obtained From Third Parties Are Admissible.

Transocean argues that any information or findings contained in the Bly Report that were based on information gleaned from third parties, (as opposed to BP employees), would be hearsay and inadmissible under Rule 803(6).  As detailed in the PSC's October 17, 2011 and November 18, 2011 letters, the Bly Report and all of the documents relied upon in its preparation are admissible.   The existence of information gathered from outside of BP does not render the report inadmissible.[7]  All of the documents Transocean cites as "examples" in its Footnote No. 3 are either Business Records or Government Reports; accordingly, they would be independently admissible and reliance upon them does not render the By Report inadmissible.

### The Bly Report and the Transocean Report Meet The Trustworthiness Requirement of Fed. R. Evid. 803 (6).

Admissibility of evidence under Rule 803(6) "is chiefly a matter of trustworthiness." *United States v. Wells,* 262 F.3d 455, 462 (5th Cir. 2001); *Brauninger v. Motes,* 260 Fed. Appx. 634, 638 (5th Cir. 2007); *Int'l Marine, L.L.C., supra* at *14 ("The 'lynchpin' of Rule 803(6) is trustworthiness"). "The inherent reliability of business records is supplied by systematic checking, by regularity and continuity which produce

---

[7] Statements by the employees or other representatives of co-defendants may additionally or alternatively be party admissions, adoptive admissions, and/or statements against interest; and/or may go to notice, knowledge or state of mind.

habits of precision, by actual experience of business relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." *Int'l Marine, L.L.C., supra* at *15   (citing *United States v. Wells,* 262 F.3d 455, 462 (5th Cir. 2001)).   The theory behind the business records exception to the hearsay rule is that "[r]eports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204-05 (4th Cir. 2000).   Under the exception, trial courts have "wide discretion in determining whether the document offered has the inherent probability of trustworthiness." *United States v. Jones,* 554 F.2d 251, 252 (5th Cir. 1976).   Notably, the lack of a "motive to misrepresent has not traditionally been a requirement of the rule; that records might be self-serving has not been a ground for exclusion." ADVISORY COMMITTEE NOTE, Fed. R. Evid. 803(6).

While Plaintiffs agree with Halliburton's charge that BP should not have excluded systemic causes from the Bly Investigation and Report,[8] complaints of incompleteness or inaccuracies generally go to the weight of the evidence, not admissibility. *Matador Drilling Co. v. Post,* 662 F.2d 1190, 1199 (5th Cir. 1981); *Crompton Richmond Co., Inc. v. Briggs*, 560 F.2d 1195, 1202 n.12 (5th Cir. 1977); *United States v. Gremillion,* 464 F.2d 901, 907 (5th Cir.), *cert. denied,* 409 U.S. 1085 (1972); *United States v. Scholl,* 166 F.3d 964, 978 (9th Cir. 1999).[9]

---

[8] Interestingly, while Transocean seeks to exclude the Bly Report and the Study Group Report, it does not specifically challenge the trustworthiness of its own in-house investigatory report.  *See Seymour v. United States,* 1978 U.S. Dist. LEXIS 17692, *2-3 (W.D. Tex. May 18, 1978) ("As the product of defendant's own investigation into the accident, certainly defendant is in no position to question the trustworthiness of these reports").

[9] "The primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced." United States v. Duncan, 919 F.2d 981, 986 (5th Cir.1990).  *See United States v. Puente,* 826 F.2d 1415, 1418 (5th Cir.1987) (affirming trial court's conclusion that

As Fontenot and Lucas testified, the investigation of incidents, and the creation of reports, is a regular business practice of BP and is mandated by BP's pre-existing GDP. That a deviation was obtained, or that various information may have been omitted, does not, in and of itself, render the Report "untrustworthy" or inadmissible.  Defendants will be free to challenge the credibility of the Bly Report and the opinions contained therein at trial.

### The Deepwater Horizon Study Group ("Berkeley") Report.

The Deepwater Horizon Study Group ("DHSG") was formed by members of the Center for Catastrophic Risk Management ("CCRM") in May 2010 in response to the *Deepwater Horizon* disaster.[10]   CCRM is "a group of academic researchers and practitioners who recognize the need for interdisciplinary solutions to avoid and mitigate tragic events.  This group of internationally recognized experts in the fields of engineering, social science, medicine, public health, public policy, and law was formed following the mismanagement and tragic consequences of Hurricane Katrina to formulate ways for researchers and experts to share their lifesaving knowledge and experience with industry and government.  CCRM members and affiliates present seminars, perform analyses, and do focused research to assist industries and organizations to implement their own improvements in safety, economy, and efficiency."[11]  Hence, it is the regularly conducted, normal and ordinary business practice of the CCRM to research and analyze

---

document was reliable and therefore admissible; noting that circumstances under which information was recorded did not indicate that the document was unreliable). Reliability is not a matter of credibility. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1307-1308 (5th Cir. Miss. 1991); *United States v. Tafoya*, 757 F.2d 1522, 1529 (5th Cir. 1985) (noting that although a business record is trustworthy, the parties could still argue to the jury that the record was not credible).

[10] *See* http://ccrm.berkeley.edu/deepwaterhorizonstudygroup/index.shtml.
[11] *See* http://ccrm.berkeley.edu/index.shtml.

issues of safety, economy, and efficiency. The DHSG Report [TREX-20434] – which may be considered a "business record" of CCRM - is trustworthy.

Nevertheless, and in any event, the lead editor of the DHSG, (Bob Bea), and several of its members and authors, (Bea, Gale and Pritchard), were – subsequent to the issuance of the Report – retained by the PSC to testify as experts in the present matter. To the extent that the credibility of these witnesses or the reliability of their expert opinions may be questioned by Defendants, the Report is relevant to the existence, nature, scope, breadth and depth of the investigation and analysis conducted by Plaintiffs' experts, (independently of, and prior to, their work as retained consultants in this litigation), irrespective of the truth of the matters asserted therein.

Finally, it is the PSC's understanding that, for logistical purposes, Learned Treatises are to be identified with formal Trial Exhibit Numbers, so that they can be effectively called up and displayed in the courtroom during trial, or otherwise referenced by the parties or the Court as may be appropriate in these proceedings.

This 12th day of December, 2011.


Respectfully submitted,


      /s/  Stephen J. Herman              /s/ James Parkerson Roy
**Stephen J. Herman**, La. Bar No. 23129       **James Parkerson Roy**, La. Bar No.11511
HERMAN HERMAN KATZ & COTLAR LLP       DOMENGEAUX WRIGHT ROY & EDWARDS  LLC
820 O'Keefe Avenue                    556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113          Lafayette, Louisiana 70501
Telephone: (504) 581-4892             Telephone: (337) 233-3033
Fax No. (504) 569-6024                Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com              E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*          *Plaintiffs Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130

Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2011.

s/  James Parkerson Roy and Stephen J. Herman