UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: **Oil Spill by the Oil Rig** | * | **MDL No. 2179** |
| **"Deepwater Horizon"** | * | |
| **in the Gulf of Mexico,** | * | **SECTION: J** |
| **on April 20, 2010** | * | |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| **10-1308, 10-1325, 10-1539, 10-2078** | * | **MAGISTRATE SHUSHAN** |
| **10-2764, 10-2976, 10-2994,** | * | |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGEMENT AS TO THE LIABILITY
OF BP EXPLORATION & PRODUCTION INC., THE TRANSOCEAN
DEFENDANTS, AND THE ANADARKO DEFENDANTS**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................... iii

Table of Exhibits.................................................................................................... vi

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND .....................................................................................2

ARGUMENT ...........................................................................................................4

I.      THE TRANSOCEAN DEFENDANTS, BP EXPLORATION & PRODUCTION INC.,
        AND THE ANADARKO DEFENDANTS ARE LIABLE UNDER
        OPA.......................................................................................................................4

        A.      Statutory Background and Elements of Liability for OPA ......................................4

        B.      The Elements Common to the Transocean and Anadarko Defendants Are Widely
                Known and Not Genuinely Contested.................................................................5

        C.      Transocean Admits that it was an Owner and Operator
                of the *Deepwater Horizon*............................................................................6

        D.      The BP Exploration & Production Inc. and Anadarko Defendants are Both
                Liable under OPA as Lessees .............................................................................7

                1.      A E&P's retroactive assignment to APC does not vitiate
                        A E&P's liability resulting from the April 20, 2010 Macondo
                        well blowout and subsequent oil spill........................................................8

                2.      A E&P's argument that OPA and CWA liability are not
                        'lease obligations' is not dispositive of its liability for the
                        oil spill and is incorrect as a matter of law ...............................................11

        E.      BP and Both Anadarko Defendants are Liable under OPA with no
                'Limit' on their Liability....................................................................................13

                1.      Legal Standards on Limited Liability under OPA .....................................13

                2.      BP and Both Anadarko Defendants are Liable without Limitation
                        due to Violations of MMS Regulations ....................................................15

F.    Summary ..................................................................................................................31

CONCLUSION................................................................................................................................32

TABLE OF AUTHORITIES

FEDERAL CASES

*Amber Res. Co. v. United States*, 538 F.3d 1358 (Fed. Cir. 2008) ...............................13

*Apex Oil Co., Inc. v. United States*, 208 F. Supp. 2d 642 (E.D. La. 2002) .............................4, 17

*Coy/Superior Team v. BNFL, Inc.*, 174 F. App=x. 901 (6th Cir. 2006) ........................10

*Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104 (3d Cir. 1994) ........................10

*Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir. 2003) .................................15

*Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400 (3d Cir. 1995) ........................10

*In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710 (E.D. La. 2010) ........................4, 10

*John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401 (1st Cir. 1993) ....................................10

*Liberty Servs., Inc. v. Amoco Prod. Co., et al.*, No. 90-4490, 1991 WL 278673
  (E.D. La. Dec. 23, 1991) .............................................................................................9

*Mobil Oil Exploration & Producing Southeast v. United States*, 530 U.S. 604 (U.S. 2000) .......13

*Noble Energy, Inc. v. Salazar*, 770 F. Supp. 2d 322 (D.D.C. 2011) ...........................................12

*Rice v. Harken Exploration Co.*, 250 F.3d 264 (5th Cir. 2001) ......................................................4

*Smith Prop. Holdings v. United States*, 311 F. Supp. 2d 69 (D.D.C. 2004) ...................................4

*United States v. Bodenger*, No. 03-272, 2003 WL 22228517 (E.D. La. Sept. 25, 2003) ........4, 17

*United States v. Bois D=Arc Operating Corp.*, No. 98-157, 1999 WL 130635
  (E.D. La. Mar. 10, 1999) ..............................................................................................4

FEDERAL STATUTES

28 U.S.C. § 2201 ...........................................................................................................1

33 U.S.C. § 1321(b) .......................................................................................................1

33 U.S.C. § 2701 ...........................................................................................................1

33 U.S.C. § 2701(14) ...................................................................................................14

33 U.S.C. § 2701(16) ..................................................................................................7, 9

33 U.S.C. § 2701(21) .....................................................................................................5

33 U.S.C. § 2701(22) .................................................................................................6

33 U.S.C. § 2701(23) .................................................................................................5

33 U.S.C. § 2701(32)(A) ............................................................................................7

33 U.S.C. § 2701(32)(C) ............................................................................................7

33 U.S.C. § 2701(35) .................................................................................................5

33 U.S.C. § 2701(37) .................................................................................................6

33 U.S.C. § 2701(7) ...................................................................................................5

33 U.S.C. § 2701(8) ...................................................................................................5

33 U.S.C. § 2701(9) ...................................................................................................6

33 U.S.C. § 2702(a) ................................................................................................5, 7

33 U.S.C. § 2704(a)(3) .............................................................................................13

33 U.S.C. § 2704(c)(1)(B) ................................................................................... 13-16

33 U.S.C. § 2710 ......................................................................................................10

33 U.S.C. § 2710(b) ...................................................................................................9

42 U.S.C. § 9607(e) .................................................................................................10

43 U.S.C. § 1331 et seq.........................................................................................7, 9,

43 U.S.C. § 1337(e) ...................................................................................................9

FEDERAL RULES

Fed. R. Evid. 201(b) ..................................................................................................5

Fed. R. Evid. 201(f) ...................................................................................................5

FEDERAL REGULATIONS

30 C.F.R. § 250.102 (now codified at 30 C.F.R. §550.102) .........................................14

30 C.F.R. § 250.105 (now codified at 30 C.F.R. §550.105) .........................................14

30 C.F.R. § 250.143 (now codified at 30 C.F.R. § 550.143)...........................................3

30 C.F.R. § 250.145 (now codified at 30 C.F.R. § 550.145)...........................................3

30 C.F.R. § 250.146(a) (now codified at 30 C.F.R. § 550.146(a))................................15

30 C.F.R. § 250.300(a) ...................................................................................................16

30 C.F.R. § 250.420(a)(2) .........................................................................................15, 16

30 C.F.R. § 256.62 (now codified at 30 C.F.R. § 556.62).............................................12

30 C.F.R. § 256.62(a) (now codified at 30 C.F.R. § 556.62(a)).................................9, 10

30 C.F.R. § 256.62(c) (now codified at 30 C.F.R. § 556.62(c)).....................................12

30 C.F.R. § 256.62(d) (now codified at 30 C.F.R. § 556.62(d)) ....................................12

30 C.F.R. § 256.62(e) (now codified at 30 C.F.R. § 556.62(e))....................................12

33 C.F.R. § 2.30 ...............................................................................................................5

48 Fed. Reg. 10,605 (Mar. 10, 1983)................................................................................5

76 Fed. Reg. 64,432 (Oct. 18, 2011) ................................................................................3

LEGISLATIVE HISTORY

H.R. Rep. No. 101-653 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779.............…......14

S. Rep. No. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722.................................................4,

TABLE OF
EXHIBITS

Exhibit #      Description

1.             Transocean's Response to BP Parties' First Set of Request for Admission (RFA
               Response Nos. 1,3,5,6,7,12,17,21,44)

2.             Transocean Complaint and Petition for Exoneration From or Limitation of
               Liability, No. 2:10-cv-02771 (originally filed in S.D. Tex. May 13, 2010)
               (Paragraph 6 excerpted)

3.             Supplemental Objections and Responses of Defendant Anadarko Petroleum
               Corporation to Revisions to the United States' First Set of Interrogatories,
               Requests for Production of Documents, and Requests for Admissions, dated
               Sept 20, 2011 (RFA Response Nos. 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 25, 26, 33, 36,
               37, 38, 39, 40 and Interrogatory Response Nos. 2(g), 2(x), 17, 18)

4.             Deposition of Jonathan Sprague, Vol. 1, dated March 21, 2011 (excerpts)

5.             Excerpts from Transocean Internal Investigation Report (Dep. Ex. 4248)

6.             Deposition of William ("Billy") Dean Ambrose, Vol. 1, dated July 18,
               2011 (excerpts)

7.             Omitted

8.             Deposition of Michael Beirne, Vol. 1, dated June 27, 2011 (excerpts)

9.             Deposition of Jim W. Bryan, dated May 6, 2011 (excerpts)

10.            AEP Assignment of Record Title Interest in Lease to APC

11.            Well Participation Agreement – BP-APC-Kerr McGee (Dep. Ex. 1943)

12.            Deposition of Nicholas G. Huch, dated May 16, 2011 (excerpts)

13.            BP Exploration & Production Inc.'s Responses and Objections to the United
               States' First Set of Interrogatories and Second Set of Requests for
               Production (Interrogatory Response Nos. 26, 27, 32)

14.         Deposition of Alan O'Donnell, dated May 5, 2011 (excerpts)

15.         Deposition of Jeremy Byrd, dated July 13, 2011 (excerpts)

16.         Transocean's Response to BP Parties' First Set of Interrogatories (Interrogatory Response No. 34)

17.         1st Payment by APC for January 2010 Invoice, paid 2/26/10 (Dep. Ex. 4205)

18.         2nd Payment by APC for February 2010 Invoice, paid 3/25/10 (Dep. Ex. 4207)

19.         3rd Payment by APC for March 2010 Invoice, paid 4/23/10 (Dep. Ex. 4209)

## INTRODUCTION

In the above referenced matters there is a claim for Relief in the Complaint that seeks damages under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 *et seq.*

The general elements of liability under OPA—such a whether there was a discharge of oil into waters that are subject to the OPA—are so widely known that they can be readily established through Defendants' admissions or otherwise. Moreover, liability is strict, defenses are limited, and there is no dispute as to the material facts. Plaintiffs accordingly move for partial summary judgment as to each of the foregoing Defendants – BP Exploration & Production, Inc. ("BP"), the Transocean Defendants,[1] and the Anadarko Defendants[2 · 3] – based on their Answers to the Complaints, admissions in written discovery, or the testimony of their own witnesses, which establish the following:

> *The Transocean Defendants* are owners and operators of the mobile offshore drilling unit ("MODU") *Deepwater Horizon* and its appurtenances, including the riser and BOP, which renders them liable under OPA as "responsible parties";
>
> *BP* is an owner and operator of the Macondo Well, an offshore facility, and thus liable under the OPA;
>
> *The Anadarko Defendants* are "responsible parties" and so are liable under OPA.

---

[1] The Transocean Defendants are defendants Transocean Deepwater Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.

[2] The Anadarko Defendants are defendants Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("A E&P").

[3] Any references herein to MOEX are purely for background information.

# FACTUAL BACKGROUND

*Drilling of the Macondo Well.*

- On June 1, 2008, BP Exploration & Production's ("BP") Lease for Mississippi Canyon Block 252 ("MC 252") from the Minerals Management Service ("MMS")[4] became effective.

- BP retained Transocean to provide a rig and personnel to drill the well.

- On or about October 6, 2009, BP and Transocean "spudded" (began drilling) the Macondo Well.

- In February, 2010, the Transocean rig *Deepwater Horizon* arrived at the Macondo Prospect, replacing another Transocean rig, and took over the drilling of the well.

- Between February, 2010, and April 20, 2010, the rig *Deepwater Horizon* continued drilling the Macondo Well, and the wellhead, casing, tubular, and other components were installed.

*The contractual agreements among BP and the Anadarko Defendants:*

- December 17, 2009:  BP assigned APC a 2.5% record title interest in the Lease.  BP assigned A E&P a 22.5% record title interest in the Lease.  BP, APC and A E&P executed a Lease Exchange Agreement and ratified a Joint Operating Agreement.  On this date, BP and APC also entered into a Well Participation Agreement for the Macondo Well at MC 252.

- BP acted as the Anadarko Defendants' operator and local agent on the rig, pursuant to 30 C.F.R. §§ 250.143 and 250.145 (2009). [5]

- January through May, 2010:  BP sent "Joint Interest Billings" or invoices to APC, which APC paid and which included reimbursement to BP for APC's proportionate share of the costs of the casing and other physical components of the well

- February 23, 2010:  MMS approved the lease assignments from BP to APC and A E&P.

- April 20, 2010:  On the same date as the explosion, APC put into overnight mail a reassignment of A E&P's 22.5% interest in the Lease for MMS approval, and on April 21, 2010, MMS stamped the assignment received.

- April 28, 2010:  MMS approved the assignment from A E&P to APC.  Once MMS approved the assignment, the agreement between the parties indicated that it would be effective as of April 1, 2010.

*The explosion at Macondo:*

- On April 20, 2010, the cement at the bottom of the Macondo Well failed to isolate hydrocarbons from the Gulf of Mexico.

- On April 20, 2010, control of the Macondo Well was lost.

- On April 20, 2010, there was a blowout of the Macondo Well, and fires and explosions on the *Deepwater Horizon*. Following the blowout, oil was discharged from the Macondo Well and the *Deepwater Horizon*, including from the blow-out preventer, riser, and other appurtenances, and continued to flow into the waters of the Gulf of Mexico.

- On July 15, 2010, the Macondo Well was capped.

---

[4] MMS regulations cited herein are to the July 2009 edition of Title 30 of the Code of Federal Regulations, which was in effect at the time of the incident. Due to the reorganization of BOEMRE, former MMS regulations were reorganized and re-codified in October 2011, and some section numbers have since changed. *See* 76 Fed. Reg. 64432 (Oct. 18, 2011). Where this re-organization has affected regulatory provisions cited herein, parallel cites to the new section numbers (which are substantively the same as the July 2009 regulations) are provided.

[5] 30 C.F.R. §§ 250.143 and 250.145 have since been re-codified at 30 C.F.R. §§ 550.143 and 550.145.

## ARGUMENT

## THE TRANSOCEAN DEFENDANTS, BP DEFENDANTS AND THE ANADARKO DEFENDANTS ARE LIABLE UNDER OPA

A.    Statutory Background and Elements of Liability for OPA.

Congress enacted OPA in response to the *Exxon Valdez* oil spill in Prince William Sound, Alaska, and intended the law to "provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing S. Rep. No. 101-94 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 723).  OPA contemplates the possibility of more than one responsible party, and courts have held that the standard of liability in such circumstances is "strict, joint, and several . . . ." *Apex Oil Co., Inc. v. United States*, 208 F. Supp. 2d 642, 654 (E.D. La. 2002) (quoting S. Rep. No. 101-94, at 11, *as reprinted in* 1990 U.S.C.C.A.N. 722, 732–33, which states that OPA adopts CWA Section 311's standard for liability of dischargers and "[t]hat standard of liability has been determined repeatedly to be strict, joint, and several liability"); *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 714 (E.D. La. 2010) (same); *Smith Prop. Holdings v. United States*, 311 F. Supp. 2d 69, 81 (D.D.C. 2004) (quoting *United States v. Bois D'Arc Operating Corp.*, No. 98-157, 1999 WL 130635, at *3 (E.D. La. Mar. 10, 1999) ("OPA does not limit the number of responsible parties" and "Congress made certain that more than one entity could be held accountable for the costs of pollution stemming from oil discharges."); *United States v. Bodenger*, No. 03-272, 2003 WL 22228517, at *2 (E.D. La. Sept. 25,  2003).

Liability for purposes of OPA is established upon a showing of just a few simple elements:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each *responsible party* for a *vessel or a facility* from which *oil is discharged*, or which poses the substantial threat of a discharge of oil, into or upon the *navigable waters or adjoining shorelines or the exclusive economic zone* is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

33 U.S.C. § 2702(a) (emphasis added).  These elements are easily established in this case.

B.    The Elements Common to the Transocean, BP  and Anadarko Defendants Are Widely Known and Not Genuinely Contested.

The Transocean, BP, and Anadarko Defendants have admitted virtually all of the elements of OPA liability common to this incident.  Moreover, in any event, the Court can take judicial notice of the underlying facts supporting these elements because they are so widely known.[6]

First, there was a "discharge" of "oil," as defined in OPA, resulting from the April 20, 2010 incident.[7]    Indeed, the Transocean Defendants admit that oil flowed or leaked from the Macondo Well into the Gulf of Mexico, and APC admits that oil flowed from the Macondo Well through the BOP and riser into the Gulf of Mexico.  Second, the oil was discharged "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone . . . ."  33 U.S.C. § 2702(a);[8].

Third, this discharge emanated from a "vessel" and an "offshore facility."  The Macondo Well included the wellbore, wellhead, casings, and other components below the sea floor in the

---

[6] *See* Fed. R. Evid. 201(b), (f) and SMF at 20 (discussing admissibility of evidence cited and standards for judicial notice).

[7] "Discharge" means "any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping." 33 U.S.C. § 2701(7).  "Oil" means "oil of any kind or in any form, including petroleum . . . and oil mixed with [other] wastes . . . ."  33 U.S.C. § 2701(23).

[8] OPA defines "exclusive economic zone" to mean "the zone established by Presidential Proclamation Numbered 5030, dated March 10, 1983 . . . ."  33 U.S.C. § 2701(8).  In turn, Proclamation 5030 provides that the EEZ "extends to a distance 200 nautical miles" offshore.  Proclamation No. 5030, 48 Fed. Reg. 10,605 (Mar. 10, 1983); *see also* 33 C.F.R. § 2.30.  "'[N]avigable waters' means the waters of the United States, including the territorial sea."  33 U.S.C. § 2701(21).  Territorial seas are also defined as extending from the shore to 3 miles seaward.  33 U.S.C. § 2701(35).

wellbore, and was located in waters subject to United States jurisdiction.  Accordingly, it was an "offshore facility" under OPA.  33 U.S.C. § 2701(9).[9]

The *Deepwater Horizon* was a "vessel."[10] Transocean does not dispute that the MODU *Deepwater Horizon* is a vessel for purposes of OPA, and Transocean admits that the blow-out preventer is an appurtenance of the vessel.[11]  The fact that oil exited from the appurtenances of the *Deepwater Horizon* is a matter of public knowledge.

C.    Transocean Admits that it was an Owner and Operator of the *Deepwater Horizon.*

The Transocean Defendants admit in their pleadings and discovery that they were the owners, owners *pro hac vice*, and/or operators of the *Deepwater Horizon*.  Even though the admissions in their Answer suffice to eliminate any factual issues, facts adduced in discovery also show that the Transocean Defendants are liable as operators of the *Deepwater Horizon.* Transocean has responded that

> BP contracted with Transocean to provide the *Deepwater Horizon* drilling rig and the personnel to operate it.  As such, Transocean was involved in the day-to-day operations of the *Deepwater Horizon.*

---

[9] OPA defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing… oil."). 33 U.S.C. § 2701(22). OPA defines "offshore facility" to mean "any facility of any kind located in, on, or under any of the navigable waters of the United States, and any facility of any kind which is subject to the jurisdiction of the United States and is located in, on, or under any other waters, other than a vessel or a public vessel." 33 U.S.C. § 2701(9).

[10] OPA defines "vessel" to mean "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel." 33 U.S.C. § 2701(37).

[11] A finding that the *Deepwater Horizon* was either a "vessel" or an "offshore facility," as defined in OPA or the CWA Section 311(a), or both, is sufficient to establish liability under OPA or the CWA Section 311(b). The Plaintiffs note, however, that the *Deepwater Horizon* was in use as an offshore facility at the time of the April 20, 2010 incident.

In the case of a vessel, a "responsible party" for purposes of OPA means "any person owning, operating, or demise chartering the vessel." 33 U.S.C. § 2701(32)(A). As discussed above, there is no dispute that the blow-out preventer ("BOP") and riser are appurtenances of the *Deepwater Horizon.*

### D.   BP and The Anadarko Defendants are Both Liable under OPA as Lessees.

BP, APC and A E&P were lessees at the time of the discharge from the Macondo Well resulting from the blowout that occurred on April 20, 2010. As lessees, these defendants are responsible parties as defined in OPA Section 1001(32)(C), 33 U.S.C. § 2701(16) and (32)(C), and as responsible parties they are liable under OPA Section 1002(a), 33 U.S.C. §2702(a).[12]

Therefore, the Plaintiffs' Motion for Summary Judgment seeking to hold BP and the Anadarko Defendants liable under OPA should be granted. With respect to APC, the analysis is complete, but A E&P has tried to create a liability loophole: on April 20, 2010—the very day of the Macondo Well blowout that caused an explosion and fire that killed 11 men aboard the Deepwater Horizon—A E&P submitted a reassignment of its lease to MMS for approval. A E&P argues it is not liable based on this reassignment. However, A E&P's reassignment does not eliminate its liability. The issue presented is purely a legal one, and the Court should reject A E&P's arguments, and grant Plaintiffs summary judgment as to its OPA claim against BP, A E&P as well as APC.

---

[12] For discharges from offshore facilities such as the Macondo Well, a "responsible party" for purposes of OPA liability includes "the lessee or permittee of the area in which the facility is located." 33 U.S.C. § 2701(32)(C). "Lessee," in turn, is defined as "a person holding a leasehold interest in an oil or gas lease . . . on submerged lands of the Outer Continental Shelf, granted or maintained under . . . the Outer Continental Shelf Lands Act (43 U.S.C. 1331 et seq.)." 33 U.S.C. § 2701(16).

1.  A E&P's retroactive assignment to APC does not vitiate A E&P's liability resulting from the April 20, 2010 Macondo well blowout and subsequent oil spill.

The basic facts are not in dispute. A E&P submitted its application to reassign its 22.5% interest in the Macondo Lease to APC on April 20, and MMS approved that application on April 28, 2010. The Anadarko Defendants had agreed on an effective date of April 1, 2010. As of April 20, 2010, however, MMS had not approved the reassignment. Based on this sequence of events, Defendant A E&P denied it is a responsible party under OPA or that it was a lessee on April 20, 2010. It moved to dismiss the Complaint as to it, arguing that its last-minute reassignment of its 22.5% leasehold interest to APC would be retroactively effective to April, 1 2010. That Motion is still pending, but A E&P's arguments are unavailing. Indeed, A E&P raised similar arguments in its Motion to Dismiss the Private Plaintiffs' OPA claims against it in the B-1 Master Complaint, but the Court nonetheless found that the Plaintiffs had stated a "colorable claim" in the B-1 Master Complaint. Order, Aug. 26, 2011 [Rec. Doc. 3830] at 36. Since the issue ruled upon was based on the same undisputed facts as A E&P's Motion to Dismiss the OPA claim in the instant case, and the issue as framed is purely a legal one, the Court's refusal to accept A E&P's position further supports the Plaintiffs' interpretation of OPA and the OCSLA regulations.

As noted above, OPA defines "lessee" by reference to OCSLA and points to the OCSLA legal regime to answer the question of who holds a leasehold interest. *See* OPA Section 1001(16), 33 U.S.C. § 2701(16).[13] OCSLA expressly states that "[n]o lease issued under this subchapter may be sold, exchanged, assigned, or otherwise transferred except with the approval of the Secretary." 43 U.S.C. § 1337(e). In accordance with the statute, the regulations provide that an assignment of an OCS lease or interest in a lease pursuant to OCSLA is ineffective unless it is approved by the Regional Director of the MMS. 30 C.F.R. § 256.62(a)

---

and APC under OPA. [Rec. Doc. 2587].

("MMS may approve the assignment . . . of the ownership of the record title to a lease . . . only if
. . . [t]he Regional Director approves the assignment."); *see also Liberty Servs., Inc. v. Amoco
Prod. Co., et al.*, No. 90-4490, 1991 WL 278673, at *6 (E.D. La. Dec. 23, 1991) (reasoning that
because a lessee's assignment to another party had not been approved by MMS, the lessee was
"still deemed to possess" its interest in the lease and retained its lease obligations). On the first
day of the discharge resulting from the April 20, 2010 well blowout, the MMS Regional Director
(or a designee) had not yet approved the lease assignment between A E&P and APC. As the
assignment was not approved until April 28, A E&P was a lessee on the day the discharge
commenced and OPA liability accrued.

A E&P's argument that it avoids OPA liability through a retroactively-effective lease
assignment contravenes Section 2710(b) of OPA, which states:

> No indemnification, hold harmless, or similar agreement or conveyance shall be
> effective to transfer liability imposed under this Act from a responsible party or
> from any person who may be liable for an incident under this Act to any other
> person.

33 U.S.C. § 2710(b). In this section, Congress established that accrued OPA liabilities are non-

delegable, requiring responsible parties to shoulder the burden for incidents that occurred on

---

[13]   That section defines lessee as "a person holding a leasehold interest in an oil or gas lease on lands
beneath navigable waters [as that term is defined in the Outer Continental Shelf Lands Act] or on
submerged lands of the Outer Continental Shelf, granted or maintained under applicable State law or the
Outer Continental Shelf Lands Act (43 U.S.C. 1331 et seq.)." 33 U.S.C. § 2701(16).

their watch.   As with post-incident hold harmless agreements or conveyances purporting to

transfer liability, a retroactive lease assignment cannot change one's status as a responsible party

under OPA.[15]   *Settoon Towing*, 722 F. Supp. 2d at 714 (relying on Section 2710(b) to hold that a

retroactive lease assignment did not change responsible party's status under OPA).   In *Settoon*

*Towing*, a lessee, Alpine, assigned its interest in a state-granted lease effective to a date prior to

when a barge struck a well, causing an oil spill.   *Id.* at 711–12.   The state, the lessor (as the lease

area was within the state's territorial waters), approved the lease assignment eleven months after

the incident.   *Id.* at 712.   Relying on Section 2710, the court held that "Alpine may contract with

[its assignee] for indemnity, and pursue those rights between themselves, but Alpine cannot

under OPA transfer its liability as a responsible party."   722 F. Supp. 2d at 714.[16]

Accordingly, the retroactive transfer of the record title interest from A E&P to APC in

this case has no bearing on A E&P's OPA liabilities, which accrued in connection with the

---

[15] This conclusion is consistent with cases decided under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which contains a provision virtually identical to OPA Section 2710 and similarly prohibits indemnification or similar agreements or conveyances to transfer liability for a release or threatened release of hazardous substances. 42 U.S.C. § 9607(e). Courts have interpreted this provision in CERCLA as prohibiting a party who is responsible for cleanup costs to escape liability vis-a-vis the federal government, although parties may still contractually allocate the costs of environmental clean up among themselves. *Coy/Superior Team v. BNFL, Inc.*, 174 F. App'x. 901, 908 (6th Cir. 2006); *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 404 (3d Cir. 1995) (private agreements to indemnify or hold harmless "cannot nullify a party's underlying CERCLA liability," although they are effective to shift the ultimate financial loss); *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3d Cir. 1994); *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993) ("[A] party . . . cannot escape liability by means of a contract with another party" but parties "can allocate ultimate responsibility among themselves by contract.").

[16] A E&P argues that *Settoon Towing* is materially distinguishable because in *Settoon Towing* the parties' execution of the transfer of the lease occurred nine months after the incident, whereas the document between A E&P and APC assigning the lease interest appears (on its face) to have been signed on April 15, 2010, before the explosion of the *Deepwater Horizon*. *See* A E& P Memorandum in Support of Motion to Dismiss [Rec. Doc. 1861] at 13-14. This is unpersuasive. The date when the parties execute a lease interest transfer does not complete the assignment. The OCSLA regulations state unequivocally that a transfer is effective "only if . . . [t]he Regional Director approves the Assignment." 30 C.F.R. § 256.62(a) (re-codified at 30 C.F.R. § 556.62(a)). In both *Settoon Towing* and this case, the lease assignment had not been approved by the relevant lessor, and thus was not effectuated when OPA liability accrued.

discharge resulting from the well blowout on April 20, 2010, before the date that MMS approved the lease assignment and effectuated the transfer.

Indeed, discovery has shown that A E&P exercised the rights of a co-owner of the lease several times between April 1, 2010 and April 20, 2010. On April 15, 2010, A E&P executed an Authorization for Expenditure ("AFE") along with APC.[17] And, on April 20, 2010, it executed a letter authorizing BP to temporarily abandon the Macondo Well.[18]

In response to the Court's invitation to brief the impact of its B-1 Order, A E&P conceded that its motion to dismiss the United States' OPA claims on this ground would be denied.[19] Although the ruling in the B-1 Order was a denial of A E&P's Motion to Dismiss, the underlying material facts are not in dispute, and the issue presented is solely a legal one. Thus the issue is appropriate for summary judgment and the Plaintiffs respectfully submit that the Court's ruling in its B-1 Order provides further support for the Plaintiffs' position that A E&P is liable under OPA for the discharge from the Macondo Well.

> 2. <u>A E&P's argument that OPA liability are not "lease obligations" is not dispositive of its liability for the oil spill and is incorrect as a matter of law.</u>

Like OPA, OCSLA regulations expressly prohibit a lessee from using a retroactive assignment to escape obligations it accrued under the lease or regulations. Although the OCSLA

---

[17] Supplemental Objections and Responses of Defendant Anadarko Petroleum Corp. to Revisions to the United States' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, dated Sept 20, 2011, Request for Admission No. 26 (admitting that Alan O'Donnell, on behalf of A E&P, signed an Authorization for Expenditure for the Macondo Well on April 15, 2010). *See also* Deposition of Alan O'Donnell ("O'Donnell Dep."), May 5, 2011, at 140–42 (Ex. 32 hereto) (discussing April 15 AFE for production casing and authenticating Ex. 1922 (Ex. 10 hereto) as copy of that AFE).

[18] O'Donnell Dep., at 216–17 (Ex. 32 hereto) (discussing Anadarko's approval to temporarily abandon the Macondo Well, Dep. Ex. 1931, and fact that O'Donnell signed on behalf of both APC and A E&P).

[19] Mem. of APC and A E&P on the Effect of the Court's Order on the Motions to Dismiss the B1 Master Complaint [Rec. Doc. 3991] at 2.

regulations allow for retroactive effective dates, *see* 30 C.F.R. § 256.62(c), they expressly extend duties on assignors of lessees beyond the effective date of a lease transfer.  30 C.F.R. § 256.62(d).[20]  These regulations make assignors "liable for all obligations that accrue under [the assignor's] lease before the date that the Regional Director approves [the assignor's] request for assignment of the record title in the lease."  *Id*.[21]  Where a lease has been terminated or rescinded, lessees remain responsible to the United States for fulfilling accrued OCSLA regulatory obligations.  *See Noble Energy, Inc. v. Salazar*, 770 F. Supp. 2d 322, 324 (D.D.C. 2011).  OCSLA regulations thus reinforce that a lessee cannot avoid an accrued obligation merely by assigning its interest to another party.  *See also* 62 Fed. Reg. 27,948, 27,953 (May 22, 1997).

A E&P argues that the  OPA liability is not a "lease obligation" that extends beyond the effective date of an assignment under 30 C.F.R. § 256.62(d) because that regulation does not cover obligations that may arise under statutes other than OCSLA.  This assertion is contrary to the terms of the MC 252 lease and case precedent construing those terms.  The lease terms provide that A E&P, as a lessee, is "subject to OCSLA, all regulations implemented pursuant to that Act," and "*all other applicable statutes and regulations*."  *See* Oil and Gas Lease of Submerged Lands under OCSLA, OCS-G 32306, Block 252, Mississippi Canyon, at Sec. 1 (Ex. 39 hereto).  OPA, which impose legal requirements and obligations related to the prevention of, response to, and compensation for, oil spills on the OCS, constitute "other

---

[20] 30 C.F.R. § 256.62 is now re-codified at 30 C.F.R. § 556.62.

[21] By contrast, lease obligations that accrue "*after* the date that the Regional Director approves the governing assignment" are the responsibility of the assignee, not the assignor.  30 C.F.R. § 256.62(e) (emphasis added).

applicable statutes" whose requirements are incorporated into a federal lease for oil and gas exploration, drilling and development rights.[22]

The liability provisions of OPA that are the subject of this litigation were enacted well before June 1, 2008, when the lease for MC252 was issued. Thus, these statutes are incorporated into the MC 252 Lease, and A E&P is bound to fulfill its responsibilities under the OPA in contract as well as in law.

In short, just as with APC, Plaintiffs have established the prima facie elements of OPA liability as to A E&P, which was a leaseholder at the time of the discharge and therefore a responsible party under OPA. There is no genuine dispute as to the underlying facts concerning A E&P's assumption of 22.5% of the record title interest in the lease, and of MMS' approval on April 28, 2010 of A E&P's reassignment of that interest to APC. Accordingly, partial summary judgment regarding A E&P's liability under OPA is appropriate at this time.

     E.     <u>Both BP and Anadarko Defendants are Liable under OPA with no "Limit" on their Liability.</u>

          1.     <u>Legal Standards on Limited Liability under OPA.</u>

OPA provides responsible parties a limit on the liability in some cases. In the case of offshore facilities, liability is limited to "the total of all removal costs plus $75,000,000." 33 U.S.C. § 2704(a)(3). This liability limitation does not apply if:

the incident was proximately caused by . . .

---

[22] Two cases construing this identical provision, "other applicable statutes and regulations," which is also found in Section 1 of the MC 252 Lease, found that applicable environmental laws in force at the time those leases were approved were incorporated into the lease. *See Mobil Oil Exploration & Producing Se. v. United States*, 530 U.S. 604, 615–16 (U.S. 2000) (reasoning that this same "catch-all" provision incorporated other applicable statutes, like the Coastal Zone Management Act ("CZMA"), in force as of the lease's effective date, but not amendments to such statutes or regulations enacted *after* the lease's effective date.); *Amber Res. Co. v. United States*, 538 F.3d 1358, 1371–77 (Fed. Cir. 2008) (concluding that the amendments to the CZMA which created more onerous obligations than those in effect at the time the leases became effective were not incorporated into the OCS lease, but assuming that the terms of the statute in operation at the time of the leases' effective date had been incorporated).

(B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party, an agent or employee of the responsible party, or a person acting pursuant to contractual relationship with the responsible party . . .

33 U.S.C. § 2704(c)(1)(B). Therefore, a responsible party loses OPA's liability cap if its violation of an applicable regulation proximately caused an incident, as defined by the statute.[23] A responsible party may also lose OPA's liability cap when its agents' and contractors' violation of applicable regulations proximately caused an incident. 33 U.S.C. § 2704(c)(1)(B).

Because the Macondo Well was located on the Outer Continental Shelf, MMS' regulations are "applicable" federal regulations under 33 U.S.C. § 2704(c)(1)(B). These regulations "govern oil, gas, and sulphur exploration, development, and production, operations on the [Outer Continental Shelf]." 30 C.F.R. § 250.102 (now re-codified at 30 C.F.R. § 550.102). BP and The Anadarko Defendants had obligations under MMS regulations based on their roles as co-lessees of the Macondo Lease.

MMS regulations impose duties on "lessees." 30 C.F.R. § 250.105 (now re-codified at 30 C.F.R. § 550.105). "Lessee" is defined as an entity that "has entered into a lease with the United States to explore for, develop, and produce the leased minerals. The term lessee also includes the MMS-approved assignee of the lease. . . ." *Id.* As MMS-approved assignees of the Macondo Lease, BP and the Anadarko Defendants are both "lessees."[24]

---

[23] OPA defines an incident as "any occurrence or series of occurrences having the same origin…resulting in the discharge or substantial threat of discharge of oil[.]" 33 U.S.C. § 2701(14). OPA's Conference Report explains that:

> "Incident" is defined to mean an occurrence or series of related occurrences because, as under other Federal law it is the intent of the Conferees that the entire series of events resulting in the spill of oil comprises one "incident". [sic]

H.R. Rep. No. 101-653, at 2 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779, 1990 WL 132747.

[24] Some of the regulations impose obligations on "you," which is defined to include "lessee." 30 C.F.R. § 250.105 (now re-codified at 30 C.F.R. § 550.105).

Additionally, 30 C.F.R. 250.146(a) holds co-lessees jointly and severally liable for fulfilling regulatory obligations: "When you are not the sole lessee, you and your co-lessee(s) are jointly and severally responsible for fulfilling your obligations under the provisions of 30 C.F.R. parts 250 through 282, unless otherwise provided in these regulations . . . ."[25] Therefore, the Anadarko Defendants are also liable for obligations breached by BP. *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 561–564 (5th Cir. 2003).

Finally, it is beyond dispute that BP was acting pursuant to a contractual relationship with the Anadarko Defendants while drilling the Macondo Well.

Thus, any violations of MMS regulations that proximately caused the Macondo Well incident and resulting discharge ("Macondo Well incident")—either by the Anadarko Defendants or by BP—will eliminate the Anadarko Defendants' limit on liability under OPA.[26]

### 2. BP and Both Anadarko Defendants are Liable without Limitation due to Violations of MMS Regulations.

Defendants are responsible for violating numerous MMS' Regulations. However, the following Section only outlines MMS regulatory violations linked to the causes of the Macondo Well incident that do not require this Court to make findings on disputed facts. 33 U.S.C. § 2704(c)(1)(B). There are two relevant violations.

First, the cement did not isolate hydrocarbons from the Gulf of Mexico. MMS regulations state that lessees must cement all wells, and that the cementing programs must "Prevent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters . . . ." 30 C.F.R. § 250.420(a)(2). This regulation amounts to a strict liability

---

[25] The current version of 30 C.F.R. § 250.146(a) is codified at § 550.146(a), and makes lessees responsible for fulfilling obligations under 30 parts 250 through 282 in addition to the newly-codified parts 550 through 582.

[26] This motion does not address the Transocean Defendants' limit of liability, if any applies.

provision.  It is beyond dispute that the cement pumped into the Macondo Well did not prevent the direct or indirect release of fluids from the formation through the wellbore into offshore waters.  Had the Macondo Well cement job provided a barrier to hydrocarbon flow in the well, the blowout and subsequent oil spill would have been prevented.  Identifying the reason why the Macondo Well cement did not prevent oil from flowing to the waters is not necessary to find violations of this regulation.

Second, this oil spill posed an unreasonable risk to human life and wildlife.  MMS regulations also state that lessees:

> shall not create conditions that will pose unreasonable risk to public health, life, property, aquatic life, wildlife, recreation, navigation, commercial fishing, or other uses of the ocean.

30 C.F.R. § 250.300(a).  This is also a strict liability regulation, and it is beyond dispute that the blowout was a condition created by BP and its co-lessees that posed "unreasonable" risk to human life:  eleven men are dead.  Identifying what caused the blowout is not necessary to find violations of this regulation:  its occurrence is sufficient to prove that the actions taken by the co-lessees and their contractors posed unreasonable risk to human life.

As to each violation, it does not matter whether the Anadarko Defendants committed the violation themselves or BP committed the violation:   the limitation is inapplicable in either circumstance.  Accordingly, because the Anadarko Defendants and/or BP violated 30 C.F.R. §§ 250.300(a) and 250.420(a)(2), BP and the Anadarko Defendants cannot limit their liability under OPA § 2704(c)(1)(B).

Summary.

In summary, BP, the Transocean Defendants, and the Anadarko Defendants are liable as a matter of law, because there is no genuine dispute as to the materials facts on which their liability rests:[26]

> *The Transocean Defendants* admit that they are owners of the *Deepwater Horizon*, which they also admit is a vessel and a MODU, and therefore they are liable under OPA. They further are liable as operators of the *Deepwater Horizon* under the OPA, based on admissions in their Answers and the fact that they exercised "day to day" control and had in place Offshore Installation Managers ("OIMs") who directed and controlled the drilling crew.

> *The BP Defendants and the Anadarko Defendants* as lessees are liable without limitation under OPA, which defines lessees to be Responsible Parties.  Moreover, defendant APC is liable as an owner of its proportionate share of the Macondo Well, an offshore facility.

Given the strict liability scheme of the OPA, and the undisputed facts upon which this motion is based, there is no need for a trial as to the liability of the defendants outlined above, and the Court should grant the Plaintiffs' Motion for Summary Judgment.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment (1) as to the liability of  BP, the Transocean Defendants, and the Anadarko Defendants under OPA Section 1002, and (2) that the BP Defendants and Anadarko Defendants are not entitled to limited liability under OPA Section 1004, 33 U.S.C. §2704.

---

[26] Even if the Court does not enter a partial summary judgment in the Plaintiffs' favor as to each Defendant under each claim, it should still grant the Plaintiffs' motion for summary judgment with respect to those matters on which it finds that there is no genuine factual dispute, pursuant to Fed. R. Civ. P. 56(g).

Respectfully submitted,

By: s/Daniel E. Becnel, Jr.
BECNEL LAW FIRM LLC
Daniel E. Becnel Jr. (T.A. LA Bar No.24567)
 P. O. Drawer H
Reserve, LA 70084
(985) 536-1186
(985) 536-6445 Fax
dbecnel@becnellaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Plaintiffs' Motion for Partial

Summary Judgment, Statement of Undisputed Material Facts, Memorandum of Law in Support

of the Plaintiffs' Motion, and Exhibits thereto has been served on all counsel by electronically

uploading the same to Lexis-Nexis File & Serve in accordance with Pretrial Order #12, and the

foregoing was also electronically filed with the Clerk of the Court of the United States District

Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a

notice of electronic filing in accordance with the procedures established in MDL 2719, on this

13th day of December, 2011.

*/s/ Daniel E. Becnel, Jr*