# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG        )        MDL NO. 2179
"DEEPWATER HORIZON" in the             )
GULF OF MEXICO, on                     )        SECTION: J
APRIL 20, 2010                         )
                                       )        JUDGE BARBIER
                                       )
                                       )        MAG. JUDGE SHUSHAN

## CONFIDENTIAL

### WorldwideVIEW™
### Interactive Deposition Digital Display

ORAL AND VIDEOTAPED DEPOSITION OF:



## Michael Beirne

VOLUME 1

JUNE 27, 2011

## COPY



*Systems Technology for the Litigation World*

Litigation Group • Court Reporting • Video Production • Videoconferencing
For U.S. & International Services

```
48   1    potential co-owner as of September 17th,
52   2    2009?
52   3         A.    No, sir.
53   4         Q.    All right.  But the well had
58   5    already -- the drilling of the well had begun
01   6    by that time.  Isn't that true?
07   7         A.    No, sir.  I don't believe the
03   8    well began drilling until October.
10   9         Q.    Okay.  Let's go to the next
23  10    document, which is 1951703, in seriatim,
36  11    to -- no.  I apologize.  These are not in
33  12    seriatim.  This is just a single document.
47  13    We'll skip that.
48  14              All right.  Let's go to Tab 3.
46  15    This is BP-HZN-2179MDL2319086, in seriatim,
54  16    to 16 -- 116.  2319116.  I'm going to mark
10  17    this as Exhibit 2824.
10  18              (Exhibit 2824 was marked.)
13  19         Q.    (BY MR. BRUNO)  Do you know what
19  20    this is, sir?
20  21         A.    Sir, this appears to be a lease
22  22    exchange agreement between BP and two
27  23    Anadarko entities.
38  24         Q.    This is a draft, I think, right?
53  25    Look at the next document.  I just want to
```

54  1    see if we can --
54  2        A.    Sir, this one appears to be
57  3    executed on Page 13 of 13.
20  4        Q.    Okay.  All right.  Thank you.
22  5    There is an attachment, Exhibit A-1, the
23  6    assigned leases.
26  7        A.    Okay.  I see it.
27  8        Q.    All right.  Tell us what this
34  9    is.
34 10        A.    This is a lease exchange
36 11    agreement that sets out the exchange between
42 12    BP and two Anadarko entities for their
45 13    assignment of a portion of BP's interests in
43 14    Macondo for an assignment of some other
51 15    leases from the two Anadarko entities.
54 16        Q.    All right.  What -- what
55 17    ownership interest did Anadarko get as a
59 18    result of the signing of this agreement?
09 19        A.    I believe -- I need to look at
12 20    the exhibit to be certain.
20 21        Q.    Look at 2319101.  Maybe I got it
24 22    wrong.
24 23        A.    Yeah, it's that exhibit.
27 24              Yes, sir.  This agreement would
30 25    have BP, after BP had owned it at a -- I'm

35   1    not sure if it was 90 percent at this point.

38   2    I believe it was 90 percent.  It reflects

41   3    BP's after -- after-exchange interests of

47   4    65 percent, and then one of the Anadarko

48   5    entities with 22 and a half percent and the

51   6    other with 2.5 percent.

53   7            Q.     Okay.  So the -- so essentially

56   8    the Anadarko interests owned 25 percent after

59   9    this document was signed?

01  10            MS. KUCHLER:  Objection; form.

04  11            A.     Being the two -- the two

05  12    Anadarko entities combined --

05  13            Q.     (BY MR. BRUNO)  Yes.

08  14            A.     -- owned 25 percent, yes, sir.

09  15            Q.     All right.  And do I gather,

11  16    then, that BP had previously sold 10 percent

13  17    to someone else?

14  18            A.     Yes, sir.  I believe at that

16  19    point we had assigned 10 percent to MOEX.

20  20            Q.     All right.  And this document

23  21    was signed on December the 17th of '09?

28  22            A.     It appears.  The date is

32  23    December 17th on Page 13, yes, sir.

35  24            Q.     All right.  And do you know if

38  25    Anadarko still had an obligation to fund the

        Q.    All right.  Explain to us:  What
is an authorization for expenditure?
        A.    It's my understanding it is a
document that's generated under the joint
operating agreement that provides for the
funding of an operation or drilling of a
well.
        Q.    All right.  Who is the person
giving the authorization?
        A.    In the Macondo well?
        Q.    Yes.  This one right here.
        A.    The authorization was sent out
or provided for in these agreements where BP
would send it, and then it would go as an
election to the nonoperating parties.
        Q.    All right.  But that's why I
asked the question.  I know that it was sent
out to the nonoperating parties to approve or
disapprove.
              What I'm trying to find out is:
Who authorizes the expenditure?  Who signs
this document, Authorization for Expenditure?
        A.    Without seeing the actual one
that was signed, there were several people
who signed it, several individuals.

```
54   1    when the AFE is prepared, it's broken down --
01   2    each participating party contributes its --
04   3    its share of -- for the proposed operation;
08   4    is that correct?
08   5         A.    Yes, ma'am.  The shares can vary
13   6    depending on the operation.
14   7         Q.    Right.  And in this case, at
16   8    least with respect to the initial AFE,
21   9    Anadarko was paying for 33 percent of those
24  10    costs; is that correct?
26  11         A.    Yes, ma'am.  With certain
30  12    limitations in their -- in the well
34  13    participation agreement, it provides that
36  14    they'll pay, I believe -- I'm summarizing
40  15    from what I remember -- 33.33 percent, up to
43  16    a limit of 110 percent of the AFE or
49  17    objective depth -- reaching objective depth,
51  18    the earlier of the two.
52  19         Q.    That's for operations with
55  20    respect to that initial exploratory well,
00  21    correct?
00  22         A.    Operate at the initial
01  23    exploratory AFE.
03  24         Q.    Yeah.
03  25         A.    Yes, ma'am.
```

```
24   1              Q.     Right.
24   2              A.     -- to the e-mail.
25   3              Q.     It's an e-mail forwarding an
27   4        attachment, and the attachment is the
29   5        approval?
30   6              A.     Yes, ma'am.
30   7              Q.     All right.  Let's talk about the
43   8        lease exchange agreement.  Switch gears.  And
47   9        in -- at Tab -- we'll start with Tab No. 3,
51  10        which is the MOEX -- previously introduced
57  11        Exhibit 1244.
08  12                     Can you tell me what this is.
10  13              A.     This is a copy of the lease
12  14        exchange agreement between BP and MOEX.
16  15              Q.     To your knowledge, is it a final
20  16        copy of the agreement?
21  17              A.     Yes, ma'am, it appears it is.
25  18        It does not appear it has the exhibits on
27  19        here, but --
29  20              Q.     Okay.  So this is a copy without
30  21        the exhibits?
32  22              A.     It -- yes, ma'am, that appears
34  23        to be the case.
35  24              Q.     Okay.  If you could generally
43  25        describe what is being exchanged in this
```

34   1      you first sent over the initial draft to when

39   2      the MOEX and BP signed this agreement, do you

46   3      recall that timeframe?

52   4             A.      I don't recall the exact

53   5      timeframe, but it was two, three months

57   6      maybe, from my memory.

58   7             Q.      Okay.  And I'll turn your

10   8      attention to Article 1.4 of this agreement.

13   9             A.      Yes, ma'am.

18  10             Q.      And that's titled BP Property.

20  11                     Is that correct?

21  12             A.      Yes, ma'am.

22  13             Q.      And it's your understanding that

25  14      is a description of the property BP was

29  15      conveying to MOEX by this agreement?

34  16             A.      Yes, that's my understanding in

37  17      reading that provision.

38  18             Q.      And do you understand what that

49  19      final clause means that it -- that says:

53  20      Excluding all tangible personal property such

55  21      as the tubulars and wellheads set forth in

02  22      Exhibit C, Macondo well plan and AFE?

06  23             A.      I don't recall the exact reason

07  24      for that, but I believe that was a comment

09  25      from our tax legal group.

Worldwide Court Reporters, Inc.

```
34   1              A.    Yes, ma'am.  I'm not sure what
36   2       the procedure is, but in my understanding
38   3       we -- as costs are incurred in drilling,
43   4       joint interest bills are issued.
47   5              Q.    Okay.  If you could actually
49   6       turn to one of those bills at Tab 13.  And I
12   7       just want to make sure I get the -- starting
16   8       with Bates No. ANA-MDL 000031079.
25   9                    Is this an example of an invoice
32  10       that was sent to Anadarko providing billing
44  11       that party for costs associated with the
46  12       Macondo well?
51  13              A.    I don't receive these.  It
55  14       appears that, but I'm not familiar with these
58  15       documents.
59  16              Q.    And if --
00  17              A.    It does appear be an invoice.
02  18              Q.    That was sent to Anadarko?
03  19              A.    Yes, ma'am.
05  20              Q.    And if you'd turn to the Bates
11  21       number ending 31084.
18  22              A.    31 -- okay.  Yes, ma'am.
23  23              Q.    Does that appear to itemize
27  24       certain tangible equipment for the Macondo
34  25       well?
```

```
 1   MR. FLANDERS:  Objection; form.
 2   MS. KUCHLER:  Objection; form.
 3   A.    In my understanding of tangible,
 4   a casing line pipe conductor, that would be
 5   considered tangible.  It does itemize that.
 6   Quite a few casing -- or CSG, which is -- my
 7   understanding is casing.
 8   Q.    (BY MS. HARVEY)  And it also
 9   appears that in addition to the casings,
10   there is an item labeled Wellhead on the next
11   page; is that correct?
12   MR. FLANDERS:  Objection; form.
13   Q.    (BY MS. HARVEY)  Housing subsea
14   wellhead:  36 inch, DQ, 2-401472?
15   A.    Yes, ma'am, I see it, and it
16   appears that was billed, yes, ma'am.
17   Q.    Can we mark that -- the invoice
18   as Exhibit 2857.
19   MS. KUCHLER:  Which invoice, please?
20   MS. HARVEY:  This is the invoice from
21   January 2010, and it begins Bates
22   No. ANA-MDL 0003107079, and it goes to 31085.
23   (Exhibit 2857 was marked.)
24   And we'll have to take a break
25   to change the tapes.
```

```
02    1      regarding a possible tieback to the Pompano
07    2      platform in which Kerr-McGee is the record --
10    3      the record title of -- owner of.
12    4           Q.    And so this --
17    5           MS. KUCHLER:  Object to the
19    6      responsiveness of the answer.
21    7           Q.    (BY MS. HARVEY)  -- this
21    8      agreement is between BP Exploration &
23    9      Production, Anadarko Petroleum Corporation,
28   10      and Kerr-McGee Oil & Gas Corporation; is that
29   11      correct?
29   12           A.    Yes, ma'am.
30   13           Q.    Do you recall why Anadarko
32   14      Exploration & Production was not a party to
33   15      this agreement?
34   16           MS. KUCHLER:  Object to the form.
34   17           A.    From what I recall, it was
36   18      because we were -- the lease exchange
39   19      agreement, that was done to those two
41   20      entities at the direction of our tax
45   21      department in that ultimately, everything was
47   22      going to be in Anadarko Petroleum
52   23      Corporation, so we did not need Anadarko E&P.
56   24           Q.    (BY MS. HARVEY)  And if you
57   25      could look at the recitals portion on the
```

Worldwide Court Reporters, Inc.

52   1     information about the need for the second

54   2     supplemental?

55   3              A.   Yes, ma'am.

56   4              Q.   Okay.  The second supplemental

04   5     AFE, the final signed version from MOEX is

10   6     2861.

13   7              (Exhibit 2861 was marked.)

13   8              MS. HARVEY:  Can we take a quick break.

16   9              THE VIDEOGRAPHER:  Off the record at

18   10    3:56 p.m.

20   11                     (Break.)

51   12             THE VIDEOGRAPHER:  Back on the record

41   13    at 4:06 p.m.

46   14             Q.   (BY MS. HARVEY)  Mr. Beirne,

47   15    let's turn to Tab 8.  This is previously

53   16    marked Exhibit 1922.

55   17             A.   Yes, ma'am.

56   18             Q.   It's a letter from Mr. Huch to

04   19    the attention of Aimee Patel; is that

09   20    correct?

09   21             A.   Yes, ma'am.

09   22             Q.   Can you describe what Mr. Huch's

15   23    letter -- would you please summarize

19   24    Mr. Huch's letter.

20   25             MS. KUCHLER:  Object to the form.

A.      Yes, ma'am.  His letter is a
cover letter sending the Anadarko entities
their collective 25 percent approval of the
production casing AFE.
        Q.      (BY MS. HARVEY)  And this is for
the operation that occurs after you've
reached total depth; is that correct?
        A.      Yes, ma'am, after objective
depth.
        Q.      Or after objective depth.
                And it's dated April 15th, 2010?
        A.      Yes, ma'am, Mr. Huch's letter is
dated April 15, yes, ma'am.
        Q.      And does that comport with your
recollection of the timing of when this
letter was sent?
        MS. KUCHLER:  Object to the form.
        A.      The letter from Mr. Huch?
        Q.      (BY MS. HARVEY)  Yes.
        A.      Yes, ma'am.
        Q.      And the next two pages that --
are these attachments to the letter?
        MS. KUCHLER:  Object to the form.
        A.      The -- speaking of the two AFEs
that are executed?

```
29   1              Q.    (BY MS. HARVEY)   Yes.
30   2              A.    Yes, ma'am.  They appear to be
32   3    enclosures or attachments, yes.
35   4              Q.    And are they documents
41   5    representing Anadarko -- the two Anadarko
44   6    entities' approval to set the -- to fund
48   7    setting the production casing?
50   8              MS. KUCHLER:  Object to the form.
51   9              A.    Yes, ma'am.
53  10              Q.    (BY MS. HARVEY)  And one appears
57  11    to be signed by Anadarko E&P Company, and the
01  12    other appears to be signed by Anadarko
04  13    Petroleum Corporation; is that correct?
05  14              MS. KUCHLER:  Object to the form.
06  15              A.    Yes, ma'am.
08  16              Q.    (BY MS. HARVEY)  And are you
11  17    aware of why Anadarko Exploration &
18  18    Petroleum -- Anadarko E&P was signing this
24  19    AFE?
26  20              MS. KUCHLER:  Object to the form.
26  21              A.    I believe at the time we had not
30  22    received the approved assignments into the
35  23    Anadarko -- the combined 25 percent into
38  24    Anadarko Petroleum Corporation, so that was
40  25    why the AFE was drafted in that manner.
```

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2
 3        IN RE:  OIL SPILL        )    MDL NO. 2179
          by the OIL RIG,          )
 4        DEEPWATER HORIZON in     )    SECTION "J"
          the GULF OF MEXICO,      )
 5        April 20, 2010           )    JUDGE BARBIER
                                   )
 6                                 )    MAG. JUDGE
                                   )    SHUSHAN
 7
                         REPORTER'S CERTIFICATION
 8                    DEPOSITION OF MICHAEL BEIRNE
                          TAKEN JUNE 27, 2011
 9
               I, Tamara Chapman, Certified Shorthand
10        Reporter in and for the State of Texas,
          hereby certify to the following:
11
               That the witness, MICHAEL BEIRNE, was
12        duly sworn by the officer and that the
          transcript of the oral deposition is a true
13        record of the testimony given by the witness;
               That the deposition transcript was
14        submitted on _____, 2011, to the
          witness or to Attorney _____ for
15        examination, signature and return to
          Worldwide Court Reporters, Inc., by
16        _____, 2011.
               That the amount of time used by each
17        party at the deposition is as follows:
18             MR. BRUNO - 3:48
               MS. HARVEY - 1:50
19             MR. POTE - 00:09
               MR. ROTH - 00:18
20             MR. BOWMAN - 00:34
21             I further certify that I am neither
          counsel for, related to, nor employed by any
22        of the parties in the action in which this
          proceeding was taken, and further that I am
23        not financially or otherwise interested in
          the outcome of the action.
24
25
```

1          SUBSCRIBED AND SWORN to by me this _____ day
      of _____, 2011.

2

3

4          _____
           TAMARA CHAPMAN, CSR
5          CSR NO. 7248; Expiration Date: 12-31-12
6          Worldwide Court Reporters
           Firm Registration No. 223
7          3000 Weslayan, Suite 235
           Houston, TX 77027
8          (713) 572-2000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



*Systems Technology for the Litigation World*

Litigation Group•Court Reporting•Video Production•Videoconferencing

August 15, 2011

J. Robert Warren
HERMAN HERMAN KATZ & COTLAR
820 O'Keefe Avenue
New Orleans, LA 70113

Re:    Deposition of **Michael Beirne, Vol. 1**
       06/27/2011
       In Re: Oil Spill by the Oil Rig "Deepwater Horizon"

Dear Mr. Warren:

Enclosed herewith please find the original deposition transcript of the witness named above
which has been signed and notarized. We would appreciate you filing it with your records. By
copy of this letter, we are informing all interested counsel of the **amendments** made to the
deposition transcript by the witness.

We sincerely appreciate your choosing Worldwide Court Reporters, Inc. and look forward to
working with you in the future. If you have any questions regarding this matter, please feel free
to contact our office.

Sincerely,

Mary Perez
Worldwide Court Reporters, Inc.

No. 1-37247

cc:    Sandi Anderson
       Wayne Boulton
       Don K. Haycraft
       Allan Kanner
       Richard W. Mithoff
       Linda Price

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG )          MDL NO.  2179
"DEEPWATER HORIZON" in the )
GULF OF MEXICO,  on )          SECTION: J
APRIL 20, 2010 )
 )          JUDGE BARBIER
 )
 )          MAG. JUDGE SHUSHAN

## *CONFIDENTIAL*

### *WorldwideVIEW*™
#### Interactive Deposition Digital Display

ORAL AND VIDEOTAPED DEPOSITION OF:



## Michael Beirne
### VOLUME 1

JUNE 27, 2011

## *ORIGINAL*



*Systems Technology for the Litigation World*

Litigation Group • Court Reporting • Video Production • Videoconferencing
For U.S. & International Services

```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
 2
 3    IN RE:  OIL SPILL        )    MDL NO. 2179
      by the OIL RIG,          )
 4    DEEPWATER HORIZON in     )    SECTION "J"
      the GULF OF MEXICO,      )
 5    April 20, 2010           )    JUDGE BARBIER
                               )
 6                             )    MAG. JUDGE
                               )    SHUSHAN
 7
                    REPORTER'S CERTIFICATION
 8               DEPOSITION OF MICHAEL BEIRNE
                     TAKEN JUNE 27, 2011
 9
           I, Tamara Chapman, Certified Shorthand
10    Reporter in and for the State of Texas,
      hereby certify to the following:
11
           That the witness, MICHAEL BEIRNE, was
12    duly sworn by the officer and that the
      transcript of the oral deposition is a true
13    record of the testimony given by the witness;
           That the deposition transcript was
14    submitted on  July 21          , 2011, to the
      witness or to Attorney  A. Robert Warren  for
15    examination, signature and return to
      Worldwide Court Reporters, Inc., by
16    September 4        , 2011.
           That the amount of time used by each
17    party at the deposition is as follows:
18         MR. BRUNO - 3:48
           MS. HARVEY - 1:50
19         MR. POTE - 00:09
           MR. ROTH - 00:18
20         MR. BOWMAN - 00:34
21         I further certify that I am neither
      counsel for, related to, nor employed by any
22    of the parties in the action in which this
      proceeding was taken, and further that I am
23    not financially or otherwise interested in
      the outcome of the action.
24
25
```

1          SUBSCRIBED AND SWORN to by me this _2/_ day

     of _July_____, 2011.

2

3

4

     _Tamara Chapman_____

5    TAMARA CHAPMAN, CSR

     CSR NO. 7248; Expiration Date: 12-31-12

6    Worldwide Court Reporters

     Firm Registration No. 223

7    3000 Weslayan, Suite 235

     Houston, TX 77027

8    (713) 572-2000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

**333**

CORRECTION PAGE

WITNESS NAME: MICHAEL BEIRNE  DATE: 06/27/2011

PAGE  LINE  CHANGE          REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

**335**

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF LOUISIANA

3    IN RE: OIL SPILL    ) MDL NO. 2179
     by the OIL RIG,      )
4    DEEPWATER HORIZON in ) SECTION "J"
     the GULF OF MEXICO,  )
5    April 20, 2010       ) JUDGE BARBIER
                          )
6                         ) MAG. JUDGE
                          ) SHUSHAN
7

8    REPORTER'S CERTIFICATION
     DEPOSITION OF MICHAEL BEIRNE
9    TAKEN JUNE 27, 2011

10   I, Tamara Chapman, Certified Shorthand
     Reporter in and for the State of Texas,
11   hereby certify to the following:

12   That the witness, MICHAEL BEIRNE, was
     duly sworn by the officer and that the
13   transcript of the oral deposition is a true
     record of the testimony given by the witness;
14   That the deposition transcript was
     submitted on _____, 2011, to the
15   witness or to Attorney _____ for
     examination, signature and return to
16   Worldwide Court Reporters, Inc., by
     _____, 2011.
17   That the amount of time used by each
     party at the deposition is as follows:
18        MR. BRUNO - 3:48
          MS. HARVEY - 1:30
19        MR. POTE - 60:09
          MR. ROTH - 00:15
20        MR. BOWMAN - 62:34
21   I further certify that I am neither
     counsel for, related to, nor employed by any
22   of the parties in the action in which this
     proceeding was taken, and further that I am
23   not financially or otherwise interested in
     the outcome of the action.
24

---

**334**

SIGNATURE PAGE

I, MICHAEL BEIRNE, have read the
foregoing deposition and hereby affix my
signature that same is true and correct,
except as noted on the correction page.

MICHAEL BEIRNE

THE STATE OF    )
COUNTY OF       )

Before me, KAREN GAIL CROW, this
day personally appeared Michael Beirne
known to me [or proved to me on the oath of
Drivers License or through
_____ (description of
identity card or other document)] to be the
person whose name is subscribed to the
foregoing instrument and acknowledged to me
that he/she executed the same for the
purposes and consideration therein expressed.
Given under my hand and seal of office
this 9th day of August, 2011.

NOTARY PUBLIC IN AND FOR KAREN GAIL CROW
THE STATE OF        Notary Public, State of Texas
                    My Commission Expires
My Commission Expires    December 17, 2013

---

**336**

1    SUBSCRIBED AND SWORN to by me this ____ day
2    of _____, 2011.
3
4
5    Tamara Chapman
     TAMARA CHAPMAN, CSR
6    CSR NO. 7248; Expiration Date: 12-31-12
     Worldwide Court Reporters
7    Firm Registration No. 223
     3000 Weslayan, Suite 235
8    Houston, TX 77027
9    (713) 572-2000
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

84  (Pages 333 to 336)

WITNESS NAME:          Michael Beirne

DATE TAKEN:            27 June 2011

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL
20, 2010

### CORRECTIONS:

PAGE: _216_ LINE: _8_ CHANGE: _____ "provide" to "provided"
PAGE: _216_ LINE: _9_ CHANGE: _____ "and in" to "in"
PAGE: _216_ LINE: _12_ CHANGE: _____ "in wells" to "and wells"
PAGE: _232_ LINE: _19_ CHANGE: _____ "Hip Notes" to "Hypnos"
PAGE: _260_ LINE: _18_ CHANGE: _____ "Moiko" to "MOECO"
PAGE: _261_ LINE: _25_ CHANGE: _____ "Moiko" to "MOECO"
PAGE: _279_ LINE: _21_ CHANGE: _____ "it would" to "they would"
PAGE: _315_ LINE: _18_ CHANGE: _____ "Yes" to "No, sir."
PAGE: _323_ LINE: _19_ CHANGE: _____ "form" to "perform"
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____
PAGE: _____ LINE: _____ CHANGE: _____



KAREN GAIL CROW
Notary Public, State of Texas
My Commission Expires
December 17, 2013