

GODWIN RONQUILLO

A Professional Corporation

DALLAS HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

**GodwinRonquillo.com**

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:    214.939.4412
DIRECT FAX:    214.939.4803
DGodwin@GodwinRonquillo.com

December 5, 2011

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130

> Re:    Motion to Exclude Non-Governmental Reports and Response to PSC's
> October 17, 2011 Letter Regarding Alleged *Daubert*/702 Issues

Dear Judge Barbier:

In accordance with the Court's November 14, 2011 Order setting a briefing schedule concerning motions *in limine* [Rec. doc. 4572, ¶¶ 4, 8], Halliburton Energy Services, Inc. ("HESI") moves to exclude evidence regarding non-governmental reports and submits the following response to the PSC's October 17, 2011 letter regarding alleged *Daubert*/702 issues.

I.    **Objections to and Motion to Strike Exhibits Containing Inadmissible Hearsay and Which are Functionally Equivalent to Premature Expert Reports**

HESI objects to all exhibits that contain inadmissible hearsay (or double hearsay) and that are, in essence, premature expert reports and/or offer expert opinions at this stage in the litigation, including but not limited to The National Commission on the Deepwater Horizon Oil Spill and Offshore Drilling's Chief Counsel's Report, Chevron's report to the National Oil Spill Commission, the Bly Report, Transocean's Investigation Report, the Deepwater Horizon Study Group Reports (University of California, Berkeley), and other similar exhibits including Exhibit TREX-00986, TREX-06300, TREX-04572, TREX-0001, TREX-0002, TREX-02968, TREX 002968, TREX 0020012, and TREX-04576. All such exhibits contain inadmissible hearsay, and all are, by their content, expert reports subject to the restrictions of Federal Rules of Evidence 26 and 702 and to challenges under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). *See Thakore v. Universal Machine Co. of Pottstown*, 670 F. Supp. 2d 705, 720-24 (N.D. Ill. 2009) (rejecting "business record" exception to accident report and noting that the report was the "functional equivalent" of an expert report under Rule 26, but without the informative detail necessary to support and evaluate such an expert report).

The Honorable Carl J. Barbier
December 5, 2011
Page 2

This Court should defer ruling on the admissibility of such documents until the conclusion of the *Daubert* briefing which is scheduled to begin on January 9, 2012. *See* Rec. doc. 1506-1 at 3. Depositions of expert witnesses are under way, and the Court is scheduled to revisit the best process for resolving remaining objections to exhibits on January 9, 2012. *See* Rec. doc. 3916 at 7. Accordingly, if the Court chooses to rule on the disputed Rule 702 issues prior to motions *in limine*, it can do so after the expert record is established on January 9, 2012. The admission of the foregoing exhibits at this stage in the litigation would, in effect, bypass this Court's *Daubert* review. HESI also objects to these exhibits for the PSC's failure to comply with Rule 702. The PSC has not established that the authors of the reports are qualified as experts with knowledge, skill, experience, training, or education. Nor has the PSC established that: (1) the reports are based upon sufficient facts or data; (2) the reports are the products of reliable principles and methods; or (3) the authors have applied the principles and methods reliably to the facts of this case. FED. R. EVID. 702. Because the "expert" exhibits do not comply with Rule 702, they are not admissible at this stage of the litigation.

## II.     The PSC Fails to Establish Admissibility As "Business Records" Under Fed. R. Evid. 803(6).

In its letter, the PSC focuses primarily on the Bly Report; Appendix K to the Bly Report (cement testing results from CSI Technologies), and on interviews and notes taken in connection with BP's post-incident investigation. Such materials may be admissible against BP as an admission by a party opponent under FED. R. EVID. 801(d)(2), as a statement against interest under FED. R. CIV. P. 804(b)(3), or under other provisions of the rules of evidence, and it is not surprising that BP does not object to these documents. However, such materials are not admissible against HESI.

These materials are inadmissible against HESI because they contain inadmissible hearsay or double hearsay. Contrary to the PSC's contention, the "business records" exception to the hearsay rule does not apply because these documents were not prepared by, or from information transmitted by, a person with knowledge of the matters recorded; they were not prepared in accordance with an undertaking that can fairly be termed a "regularly conducted business activity"; and it was not the regular practice of the business to make documents of this nature. *See* FED. R. EVID. 803(6). Furthermore, "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," satisfying an independent reason for rejecting these and similar documents as "business records." *Id.*

Genuine "business records" which are entitled to an exception from the hearsay rule are items such as payrolls, account receivables, accounts payable, bills of lading and the like, which a business generates as a routine aspect of its operation as a business, and which the business itself relies upon to be accurate. *See Palmer v. Hoffman*, 318 U.S. 109, 114 (1943); *see also Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2538 (2009) (affirming analysis of *Palmer*). Because such documents are created as a matter of routine operation of the business as a

The Honorable Carl J. Barbier
December 5, 2011
Page 3

business, and they are relied upon by the business to conduct its affairs, such records are deemed trustworthy enough to merit an exception to the hearsay rule. *See id.*

> A.    Accident Reports are Not "Business Records"

In stark contrast, the Bly Report and related documents are classic examples of **accident reports** that are *not* prepared as part of the systematic conduct of "the business as a business." Instead, these were documents created with an eye towards litigation, not in the conduct of the business. Accordingly, they are not entitled to exemption from the prohibition against hearsay. *See id.* (excluding railroad engineer's accident report because its primary utility was for litigation, not for the business of railroading); *see also, Thakore* 670 F. Supp. 2d at 720-24 (rejecting "business record" exception to accident report that employed a "TapRoot Root Cause Tree" analysis). The Bly Report and related documents were not created by BP as part of its normal business of being an oil and gas exploration and production company. The blowout and resulting release of hydrocarbons occurred on April 20, 2010, and lawsuits were filed against BP within days. The reports and documents at issue were created long after BP knew it would be subjected to intense litigation and were obviously created with an eye towards such litigation. These documents contain a "Swiss Cheese" model of accident causation that is analogous to the "Root Cause Tree" analysis rejected as a "business record" in *Thakore*. These documents are inadmissible accident reports and not "business records" entitled to an exception to the prohibition against hearsay. *See Palmer* 318 U.S. at 114; *see also Thakore*, 670 F. Supp. 2d at 720-241.

The PSC does not squarely confront the longstanding rejection of **accident reports** as "business records," but instead cites to a handful of cases concerning investigations of sexual harassment by employers. Cases involving sexual harassment are obviously distinguishable from the sort of accident investigation documents at issue in this litigation, documents which have long been rejected as hearsay by *Palmer* and its progeny. Furthermore, some of the cases cited by the PSC are poor support for the proposition that sexual harassment reports are non-hearsay. *See, e.g., Crimm v. Missouri R. R. Co.*, 750 F.2d 703, 709 (8th Cir. 1984) (records were not hearsay because they were not offered for the truth of the matter asserted, but merely to show fact that an investigation occurred and what information the employer relied upon in making decision); *Gardner v. Chevron*, 675 F.2d 658, 660 (5th Cir. 1982) (holding in the alternative that any error in admitting reports was harmless because jury did not see the reports at issue).

> B.    Documents Not Generated in Regular Course of Business

The PSC nevertheless devotes much of its letter brief to arguing that the materials at issue were created in the regular course of BP's business. This conclusion is incorrect for at least two reasons. First, the U.S. Supreme Court has long recognized that a business cannot evade the prohibition against hearsay by making it a routine practice to record its version of events in accident reports. *See Palmer*, 318 U.S. at 113-114 ("But the fact that a company makes a business out of recoding its employees' versions of their accidents does not put those statements

The Honorable Carl J. Barbier
December 5, 2011
Page 4

in the class of records made 'in the regular course of business' . . . [otherwise] any business, by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify these reports under the Act.").

Second, the evidence cited by the PSC does not show that BP created these reports as part of its regular course of business. The PSC cites to the deposition testimony of Kevin Fontenot and John Lucas for its claim that BP generated these materials in accordance with its Group Defined Practice GDP 4.4-0002 Incident Investigation Protocol. However, these depositions established the opposite conclusion. In generating the Bly Report and related documents, BP did not routinely follow its GDP 4.4-002 Incident Investigation Protocol. Instead, BP sought an exception from the GDP 4.4-0002 protocol, which was granted by the London office of BP, Plc. *See* Ex. A [John Lucas Dep. pp. 344-51, 383]; Ex. B [Kevin Fontenot Dep. pp. 147]. Significantly, GDP 4.4-0002 would have required an investigation of systemic causes of the Macondo blowout. Ex. A [Lucas Dep. pp. 344-46]. Because an exception to GDP 4.4-0002 was obtained, the Bly Report does not include an analysis of systemic causes of the Macondo blowout. *Id.* The Bly Report and related materials were not created in accordance with BP's routine practice. John Lucas, BP's senior safety advisor for BP worldwide, admitted that "[t]here was a difference between what we normally do on an investigation and this investigation." *See* Ex. A [Lucas Dep. p. 383]. In short, the PSC's own evidence establishes that the Bly Report and related documents are not the sort of documents that are routinely created by a "business operating as a business" that would warrant an exception to the hearsay prohibition under FED. R. EVID. 803(6).

C.    Documents Indicate a Lack of Trustworthiness

Even if the documents at issue were business records, they would be inadmissible under the separate and independent basis for rejecting application of the "business records" hearsay exception: the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. FED. R. EVID. 803(6). The Bly Report and related materials lack trustworthiness for a variety of reasons. As discussed above, the Bly Team did not attempt to determine any systemic root causes of the accident, despite the fact that the report purports to attribute blame and liability to other parties, such as HESI. This deficiency was expressly noted in the Bly Report which states that "[i]t may be appropriate for BP to consider further work to examine potential systemic issues beyond the immediate cause and system cause scope of this investigation." *See* Ex. C [Bly Report, p. 9]; *see also* Ex. B [Fontenot Dep. pp. 147-48]; Ex. A [Lucas Dep. pp. 344-51]. The Bly Report itself acknowledges that the investigation was "limited by a scarcity of physical evidence and restricted access to potentially relevant witnesses," and that "[a]dditional physical evidence may become available following the recovery of the subsea equipment." *See* Ex. C [Bly Report, pp. 9, 12].

More particularly, despite the fact that BP blames HESI for alleged deficiencies in the cement job for the production casing, the Bly team did not utilize an in-house cement expert. *See* Ex. B [Fontenot Dep. pp. 225-27]; Ex. D [Bly Dep. pp. 421-24]. Even more incredibly, the

The Honorable Carl J. Barbier
December 5, 2011
Page 5

Bly Report does not address the crucial fact that BP and the Bly investigation team were aware of the existence of a hydrocarbon bearing zone at M57B at a depth of 17,467' (which BP did not cover with cement before displacing the well). *See* Ex. E [Skripnikova Dep. pp. 211-12, 377, 434-35, and 441-44]. For the foregoing reasons, the Bly Report and related documents display all the hallmarks of self-serving, non-trustworthy documents that must be excluded from the application of Rule 803(6). In addition, these materials are certainly not entitled to admission into evidence as the functional equivalent of a (premature) expert report, thereby circumventing the requirements of Rules 26 and 701. *Thakore*, 670 F. Supp. 2d at 720-241.

> D.      Double-Hearsay of Incorporated Statements and Reports

Finally, the PSC suggests that interview notes and reports from third parties (*e.g.* the CSI Report attached as Appendix K to the Bly Report) are somehow not hearsay because the investigation team made it their business to conduct such interviews, attempted to transcribe notes accurately, or solicited information from third-parties such as CSI Investigation. As explained above, the Bly Report is itself inadmissible hearsay. However, even if one assumes for the sake of argument that portions of the Bly Report are not hearsay, it is not the case that out-of-court statements incorporated into the Bly Report are not hearsay merely because they were incorporated into the report. For example, while a police report may qualify as a business record, out-of-court statement by a third-party witness contained in the police report may still be objectionable as hearsay. *See, e.g., Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271-72 (5th Cir. 1991) (double hearsay in hospital report). Contrary to the PSC's assertions, the Bly Report is itself inadmissible hearsay, and out-of-court statements incorporated into that report are double hearsay. Such double hearsay statements are only admissible under Fed. R. Evid. 805 if each part of the combined statements satisfies some exception to the hearsay rules.

For the foregoing reasons, HESI respectfully requests that the Court strike the above-referenced exhibits and non-governmental reports as inadmissible hearsay, or, in the alternative, postpone a ruling on this issue until such time as the expert record is complete and *Daubert* challenges are heard.

Respectfully submitted,

Donald E. Godwin

DEG:PWS

1782172 v7-24010/0002 CORR