

34127340

Nov 1 2010
9:05PM

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| | "DEEPWATER HORIZON" | § | |
| | in the GULF OF MEXICO, | § | |
| | on APRIL 20, 2010 | § | SECTION: J |
| | | § | |
| This Document Relates To: ALL CASES | | § | |
| | | § | JUDGE BARBIER |
| | | § | MAG. JUDGE SHUSHAN |
| | | § | |
| | | § | |

### PLAINTIFFS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO BP AMERICA PRODUCTION COMPANY

**NOW COME** Plaintiffs, through Plaintiffs' Liaison Counsel, and, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, serve the following requests upon BP America Production Company and request that responses be served upon Plaintiffs' Liaison Counsel within thirty (30) days, or as otherwise provided herein, (or upon a rolling or other alternative schedule mutually agreed upon by Plaintiffs' Liaison Counsel and Counsel for Defendant).

### INSTRUCTIONS

(a)     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these interrogatories and requests for production are continuing in nature so that if, after answering, you acquire additional responsive knowledge or information or determine that an answer you provided was false, incomplete, or misleading, Plaintiffs direct that you serve supplemental or amended answers as soon as reasonably possible after acquiring such additional knowledge or information. Furthermore, documents or electronically stored information ("ESI") prepared prior to or subsequent to the period covered by these interrogatories, but which nonetheless relate or refer thereto, are to be included in your response.

(b)     As defined below, you are to produce all documents in your control. Production of documents shall be in conformance with all procedures and formats set forth by the Court.

1

(c)     Pursuant to Rule 34(b)(1)(c), all ESI responses to these discovery requests must be produced in native file format, including embedded data or metadata associated with each electronic file.  At a minimum, you shall include in your ESI production all metadata fields recommended by the Electronic Discovery Reference Model ("EDRM") and hash values in the format set forth by the EDRM.  Furthermore, if any responsive ESI is not in a "reasonably usable form," you must notify Plaintiffs' Liaison Counsel immediately, in order to confer regarding any translation necessary to put the ESI in a reasonably usable form.  Any images of documents which exist in hard copy paper format shall be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format").  All images generated from hard copy documents shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. All images generated from native electronic documents with the exception of source code, dynamic web pages, and web content, shall be saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document.  The parties shall produce a "load file" that is compatible with a commercially available document management software, such as Concordance, to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system.

(d)     All produced documents shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source document.  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. With respect to the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e)     Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF". In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(f)     If you refuse to respond to any of these interrogatories or requests for production based on a claim of privilege, pursuant to Federal Rule of Civil Procedure 26(b)(5), you must provide a "Privilege Log" setting forth, with specificity, a statement of the claim of privilege and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or ESI supporting the privileged information, including the dates, authors, recipients, title, and subject matter, and present location of any documents or ESI involved. In the case of attorney work product privilege, you must also identify the litigation for which the work product was prepared.

2

(g)     If you allege that any request is in any manner ambiguous, you are instructed to describe in detail the reasons for your allegations, including but not limited to, each interpretation to which you allege the specific request for discovery is subject.  Notwithstanding any of the foregoing, you are instructed to respond, to the best of your ability, to the request for production and produce the documents requested.

(h)     If you or any of your attorneys, agents, or representatives at any time had possession or control of a document requested and that document has been lost, destroyed, or purged or is not presently in your possession, custody, or control, identify the document and describe the circumstances surrounding the loss, destruction, purge, or separation from your possession, custody, or control, indicating the dates that those circumstances occurred.

## <u>DEFINITIONS</u>

As used herein, the following terms are defined as follows:

(i)     "Deepwater Horizon" means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the Macondo Well, or any component thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

(j)     "Macondo Well" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion in April 20, 2010.

(k)     "Incident" refers to the explosion that occurred on the Deepwater Horizon on or around April 20, 2010.

(l)     "Oil spill" refers to all releases, leaks, or emanations of oil, hydrocarbons, gases, or other materials of any kind into the Gulf of Mexico from the Macondo Well or the formation into which the Macondo Well was drilled at any time since April 20, 2010.

(m)     "BOP" or "Blowout preventer" relates to the large valve device(s) created by Defendant to ensure safety through the sealing, controlling, and monitoring of oil and gas wells including the associated, monitoring, warning, electronic, and hydraulic systems.

(n)     "Deepwater Horizon Blowout Preventer" refers to the large valve device(s) specifically created by Defendant to ensure safety through the sealing, controlling, and monitoring of the Macondo Well including the associated, monitoring, warning, electronic, and hydraulic systems for the Deepwater Horizon rig.

(o)     "Clean up" refers to any efforts by you to remove, dispense, clean, mitigate, minimize, collect, or eliminate any oil, hydrocarbons, gases, or other materials of any kind that have been released, leaked, or have emanated into the Gulf of Mexico from the Macondo Well since April 20, 2010.

3

(p)     "Relevant time period" refers to the time period from January 1, 1997 through the current date.

(q)     "Defendant," "you," "your," "your company" or "BP" refers to, without limitation, the interests of BP America Production Company including relevant predecessors, successors, subsidiaries, departments, divisions or affiliates, and including, without limitation, any organization or entities in which BP has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting, or purporting to act, on its behalf.

(r)     "Anadarko" refers to, without limitation, the interests of Anadarko Petroleum Corporation and Anadarko E&P Company, including relevant predecessors, successors, subsidiaries, departments, divisions and/or affiliates, and including, without limitation, any organization or entities in which Anadarko has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting or purporting to act on its behalf.

(s)     "Cameron" refers to, without limitation, the interests Cameron, Cameron International, Cameron International Corporation, Cooper Cameron Corporation, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, and including, without limitation, any organization or entities in which Cameron has a ten percent (10%) or greater ownership interest, together with all current and former officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to Jack Moore, David Jones, Scott Amann, Richard Coronado, Bolie Williams, Brad Eastman, and including attorneys and accountants.

(t)     "Halliburton" refers to, without limitation, the interests of Halliburton, any entity names and any variations thereof of that entity, including Halliburton Energy Services, Inc., any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates, and branches, any organization or entity which Halliburton manages, controls or subcontracts, and including, without limitation, any organization or entities in which Halliburton has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.

(u)     "M-I SWACO" refers to, without limitation, the interests M-I L.L.C d/b/a M-I Drilling Fluids L.L.C., any entity names and any variations thereof of that entity, including M-I SWACO, any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates, and branches, any organization or entity which M-I Swaco manages, controls or subcontracts, and including, without limitation, any organization or entities in which M-I Swaco has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.

(v)     "MOEX" refers to, without limitation, the interests of Mitsui & Co., Mitsui Oil Exploration Co., MOEX USA Corporation, and MOEX Offshore 2007, LLC, including relevant predecessors, successors, subsidiaries, departments, divisions and affiliates, and including, without limitation, any organization or entities in which MOEX has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting or purporting to act on its behalf.

(w)     "Transocean" refers to, without limitation, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., as owners, managing owners, owners pro-hac vice, and/or operators of the MODU Deepwater Horizon.

(x)     "Weatherford" refers to, without limitation, the interests of Weatherford International, Ltd., Weatherford U.S., L.P., any entity names and any variations thereof of those entities, any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates, and branches, any organization or entity which Weatherford manages, controls or subcontracts, and including, without limitation, any organization or entities in which Weatherford has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.

(y)     "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(z)     "Employee" refers to, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other person who is or was employed or subcontracted by you.

(aa)    "Investigation Team" refers to the internal investigation team utilized by BP, who produced the report released by BP, dated September 8, 2010.

(bb)    "Government" refers to, without limitation, any branch, department, or agency of federal or state government, including the United States Coast Guard, Minerals Management Service, Bureau of Ocean Energy Management, Office of Natural Resources Revenue, Environmental Protection Agency, Senate Committee on Energy and Natural Resources and House Committees on Energy and Commerce, Chemical Safety Board, the Department of the Interior, National Oceanic and Atmospheric Administration, Department of Energy, and Joint Investigation team, including any committee, subcommittee, or advisory committee thereof, together with all current or former officials, directors, staff members or other persons employed by the government, or purporting to act on its behalf.

(cc)    "Communication" means any writing transmitted between persons or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of documents, ESI (as defined in

section (gg)) and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other representatives of any defendant.

(dd)    "Statement" should be construed as any written or graphic statement signed or otherwise adopted or approved by the person making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

(ee)    "Meeting" refers to, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger$^{TM}$, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype$^{TM}$, or similar programs.

(ff)    "Document" refers to, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, workpapers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, computer discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of meetings, telephone conversations or other conversation or communication  in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, officers, directors, shareholders, employees, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that document or record ideas, words or impressions.  The term "document" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (ff)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(gg)    "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic,

digital or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, documents management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(hh)    **"Computer"** means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(ii)    "Privilege log" should be construed as a listing of each document for which a privilege is claimed, which should include with specificity, the title of the document, the nature of the privilege or protection asserted, the author and date of the document, the identity of all intended recipients of the document, any documents or ESI supporting the privileged information, title and subject matter, present location of any documents or ESI involved, and a description of how you contend the alleged privilege or other protection applies. Any Privilege log that you submit must also comply with any Case Management Order entered in this case that governs Privilege Logs.

(jj)    "Control" refers to ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public and private entity having physical possession thereof.

(kk)    "Relating to," "Referring to," "Regarding," "Concerning" or "With respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(ll)    "Identify" when used in reference to a person means to state the person's:

(1) Full name;

(2) Social security number;

(3) Present or last known address;

(4) Office, home, cellular, and facsimile telephone numbers;

(5) Present or last known employment position, including the employer name; and

(6) Job description, title, responsibilities, and business affiliation for the relevant time period.

(mm)   "Identify" when used in reference to a document or ESI means to state:

(1) The type of document or ESI;

(2) Its date;

(3) Its author(s) and author(s) address(es), including every author involved, whether or not such person signed the document;

(4) Its subject matter or response;

(5) Its present location or custodian;

(6) Every person to whom such document or ESI, or any copy thereof, was given or sent;

(7) Every person known to you to have received the document or information, or to have learned the substance of its contents; and

(8) If any such document or ESI was, but is no longer, in your possession or subject to your control, state what disposition was made of it.

(nn)   "Identify" when used with respect to a communication other than a writing means to state:

(1) The full name of any person who was a party to the communication;

(2) The type of communication, e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form ; and

(3) The full name of any persons participating therein, along with the date, duration, location(s) and the substance of the communication.

(oo)   "And" as well as "Or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B", you should produce all information about A and all information

about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or."

(pp)    "Any" should be construed, when possible, to mean "any and all."

(qq)    "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way.  Including should be read as "including, but not limited to."

(rr)    "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(ss)    A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(tt)    The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(uu)    Words of one gender shall be construed to include words of all genders so that each request in the request for production of documents shall be given its broadest possible application.

(vv)    Definitions provided herein apply to any grammatical variance of the term or phrase defined.

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

### Interrogatory No. 1

Please describe in detail the general chain of command and organizational structure for the Deepwater Horizon during the relevant time period, beginning with the lowest ranking person aboard the rig, up to and through the highest ranking person on-shore.

### Request for Production No. 1

Please produce any documents relating to the chain of command and organizational structure aboard the Deepwater Horizon during the relevant time period.

### Interrogatory No. 2

Please describe in detail how persons aboard the Deepwater Horizon communicated with each other during the relevant time period, including in your answer a description of the methods used by persons aboard the Deepwater Horizon to communicate with each other, a description of any real-time information available to persons aboard the Deepwater Horizon regarding the operations and drilling activities of the Deepwater Horizon, and a description of any other information available to persons aboard the Deepwater Horizon regarding the operations and drilling activities of the Deepwater Horizon.

**Interrogatory No. 3**

Please describe in detail how persons aboard the Deepwater Horizon communicated with persons on-shore during the relevant time period, including in your answer a description of the methods used by persons aboard the Deepwater Horizon to communicate with any person on-shore, a description of any real-time information available to any person on-shore regarding the operations and drilling activities of the Deepwater Horizon, and a description of any other information available to any person on-shore regarding the operations and drilling activities of the Deepwater Horizon.

**Request for Production No. 2**

Please produce any communications between and among persons aboard the Deepwater Horizon during the relevant time period.

**Request for Production No. 3**

Please produce any communications between persons aboard the Deepwater Horizon and any person on-shore during the relevant time period.

**Request for Production No. 4**

Please produce any communications between persons aboard the Deepwater Horizon and any other person during the relevant time period.

**Request for Production No. 5**

Please produce any communications between any persons on-shore who participated in, were aware of, or were in anyway involved with the operations and drilling activities of the Deepwater Horizon during the relevant time period.

**Request for Production No. 6**

Please produce any communications between any persons on-shore who participated in, were aware of, or were in anyway involved with the operations and drilling activities of the Deepwater Horizon and any other person during the relevant time period.

**Request for Production No. 7**

Please produce any documents, information, or data that was transmitted to or stored by any computer, server, or other electronic database, relating to any operations or drilling activities of the Deepwater Horizon, the Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform involved in any operations or drilling activities at or on the Macondo Well during the relevant time period.

**Request for Production No. 8**

Please produce any documents relating to any operations or drilling activities performed by the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform with respect to the Macondo Well, during the relevant time period.

**Interrogatory No. 4**

Please identify any person who was aboard the Deepwater Horizon during the relevant time period, and for any such person, identify that person's supervisor(s) and subordinates, and state

the dates and time that person was aboard the Deepwater Horizon and financial compensation received for the work performed.

**Request for Production No. 9**

Please produce any documents, including logs, that evidence or show the persons that were aboard the Deepwater Horizon during the relevant time period.

**Interrogatory No. 5**

Please identify any person on-shore who participated in, was aware of, or was in anyway involved with the operations and drilling activities of the Deepwater Horizon during the relevant time period.

**Request for Production No. 10**

Please produce any documents, including logs, that evidence or show persons on-shore who participated in, were aware of, or were in anyway involved with the operations aboard the Deepwater Horizon during the relevant time period.

**Interrogatory No. 6**

Please identify the persons responsible for scheduling activities and operations for the Deepwater Horizon.

**Interrogatory No. 7**

Other than the Deepwater Horizon, please identify any other mobile offshore drilling unit, rig, or platform that were involved with or participated in any operations or drilling activities at or on the Macondo Well during the relevant time period, including the Transocean Marianas.

**Interrogatory No. 8**

For each mobile offshore drilling unit, rig, or platform  identified in response to Interrogatory No. 7, please identify the owner, any person aboard, and any person on-shore who participated

in, was aware of, or was in anyway involved with the mobile offshore drilling unit, rig, or platform during the relevant time period, state the dates the mobile offshore drilling unit, rig, or platform  was involved with or participated in any operations or drilling activities in or at the Macondo Well, and state the dates the identified persons were aboard the mobile drilling unit, rig or platform.

**Request for Production No. 11**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any contracts, agreements, or other documents relating to the operations and drilling activities of the mobile offshore drilling unit, rig, or platform involved in drilling the Macondo Well during the relevant time period.

**Request for Production No. 12**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any documents relating to the operations and drilling activities of the mobile offshore drilling unit, rig, or platform involved in drilling the Macondo Well during the relevant time period.

**Request for Production No. 13**

For each mobile offshore drilling unit, rig, or platform identified in response to Interrogatory No. 7, please produce any documents and logs, that evidence or show the persons aboard the mobile drilling unit, rig, or platform during the relevant time period, and any person on-shore who participated in, was aware of, or was in anyway involved with the mobile offshore drilling unit, rig, or platform's operations or drilling activities during the relevant time period.

**Interrogatory No. 9**

Please identify any rig(s) operating offshore by you during the relevant time period, including the permitting authority and location.

**Request for Production No. 14**

Please produce copies of any documents or communications relating to the expected, anticipated, and actual budget for costs and expenses of the Deepwater Horizon, Transocean Marianas, or the Macondo Well, including all documents and communications relating to the daily operational cost of the Deepwater Horizon, the Transocean Marianas, or the Macondo Well and whether the Deepwater Horizon, Transocean Marianas, or Macondo Well were on, over, or under budget.

**Request for Production No. 15**

Please produce copies of any documents or communications relating to the scheduling of operations and activities for the Deepwater Horizon, including documents and communications relating to whether the Deepwater Horizon was "on schedule" at the time of the incident.

**Request for Production No. 16**

Please produce any leases, charters, or similar documents relating to any mobile offshore drilling unit, rig, or platform that participated in or was involved with any operations or drilling activities involved in the drilling of the Macondo Well, including the Deepwater Horizon or Transocean Marianas.

**Request for Production No. 17**

Please produce any documents or communications relating to the expected or anticipated activities and operations of the Deepwater Horizon after it completed or sealed the Macondo Well.

**Interrogatory No. 10**

Please identify any persons on-shore who participated in or were in anyway involved with the operations aboard the Deepwater Horizon during the relevant time period.

**Request for Production No. 18**

Please produce the personnel files for each person identified in response to Interrogatory No. 4, 5, 6, 8, and 10.

**Interrogatory No. 11**

Please identify any crew boats, supply boats, or vessels that were within a one (1) mile radius of the Deepwater Horizon at any time between April 20, 2010 and April 22, 2010 and for each such crew boat, supply boat, or vessel, please identify the owner or charterer of the crew boat, supply boat, or vessel, and any persons aboard the crew boat, supply boat, or vessel between April 20, 2010 and April 22, 2010.

**Request for Production No. 19**

For each crew boat, supply boat, or vessel you identified in response to Interrogatory No. 11, please produce any contracts, leases, charters, agreements, or other documents relating to the crew boat, supply boat, or vessel.

**Request for Production No. 20**

Please produce all communications between any person aboard the Deepwater Horizon, you, any person on-shore, or any person aboard any crew boat, supply boat, or vessel identified in your response to Interrogatory No. 11 that took place from April 20, 2010 to April 22, 2010.

**Interrogatory No. 12**

Please identify any persons who provided you or any other person with an alternative suggested course of action, warning, expression of concern, disagreement, or criticism regarding the decisions or operations aboard the Deepwater Horizon during the relevant time period.

**Request for Production No. 21**

Please produce any documents or communications relating to any agreements between you and any federal, state or local governmental agency regarding reparations for any economic or physical damages, costs, losses, expenses, or injuries caused by the incident.

**Request for Production No. 22**

Please produce any documents relating to any calculations or estimates of the amount of oil spilled in the Gulf of Mexico.

**Request for Production No. 23**

Please produce any documents relating to the ecological, health, or environmental impacts of any substance used as a dispersant(s), e.g., Corexit.

**Request for Production No. 24**

Please produce any documents or communications relating to any marketing, public relations campaigns, or similar activities you have authorized, participated in, or been involved with as a result of the incident.

**Request for Production No. 25**

Please produce any documents relating to the budget for any economic damages, costs, losses, expenses, or injuries resulting from the incident, including any economic or physical damages, costs, losses, expenses, or injuries suffered or to be suffered by individuals, businesses, governments, and wildlife and any steps taken by you to mitigate any such damages, costs, losses, expenses, or injuries through advertising or other means.

**Request for Production No. 26**

Please produce copies of any documents or communications relating to any statements, including drafts, you have released to the press since the incident.

**Request for Production No. 27**

Please produce any documents relating to any efforts, considerations, or communications regarding whether the Macondo Well would or could be used for production of hydrocarbons at any time after April 20, 2010.

**Request for Production No. 28**

Please produce any documents relating to any studies that were performed, reviewed, considered or relied upon in attempting to seal the Macondo Well following the incident.

**Request for Production No. 29**

Please produce any documents relating to the use and effectiveness of "junk shots," "top hats," or "relief wells" as a means of controlling or sealing a well, including the Macondo Well.

**Interrogatory No. 13**

Please identify any person that has conducted or is in the process of conducting a formal or informal investigation of the operations, events, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Request for Production No. 30**

Please produce any documents or communications relating to all formal and informal reports or investigations that were or are in the process of being conducted as a result of the incident.

**Interrogatory No. 14**

Please identify any person you have interviewed or from whom a statement was taken regarding any of the events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Request for Production No. 31**

Please produce any documents that relate to any interviews or statements taken of or from each person identified in your response to Interrogatory No. 14.

**Interrogatory No. 15**

Please identify any person who has taken or is in possession of any photographs, video recordings, or audio recordings that relate to any events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Request for Production No. 32**

Please produce any photographs, video recordings, or audio recordings that relate to the incident or any events, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period along with any documents or communications that reference or refer to any photographs, video recordings or audio recordings that relate to the incident, operations, or activities that took place aboard the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Interrogatory No. 16**

Please identify any person who was on the Investigation Team referenced in the report released by BP, dated September 8, 2010, or who participated in the investigation referenced in the report released by BP, dated September 8, 2010, or participated in or was involved with the selection, appointment, or assignment of (a) the Investigation Team referenced in the report released by BP, dated September 8, 2010; or (b) any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010; or (c) any person who drafted, participated in drafting, editing, or reviewing the report released by BP, dated September 8, 2010, or any part thereof, before the report was released.

**Request for Production No. 33**

Please produce any documents or communications relating to the selection, appointment, or assignment of (a) the Investigation Team referenced in the report released by BP, dated September 8, 2010; or (b) any person who participated in the investigation referenced in the report released by BP, dated September 8, 2010; or (c) any person who participated in drafting, editing, or reviewing the report released by BP, dated September 8, 2010, or any part thereof, before the report was released.

**Request for Production No. 34**

Please produce any communications between and among members of the Investigation Team referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**Request for Production No. 35**

Please produce any communications between members of the Investigation Team referenced in the report released by BP, dated September 8, 2010, and any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**Request for Production No. 36**

Please produce any communications between any persons who participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**Request for Production No. 37**

Please produce any communications between the Investigation Team referenced in the report released by BP, dated September 8, 2010, and any other person that took place since April 20, 2010.

**Request for Production No. 38**

Please produce any communications between anyone who participated in the investigation referenced in the report released by BP, dated September 8, 2010, and any other person, that took place since April 20, 2010.

**Request for Production No. 39**

Please produce any communications between you and the Investigation Team referenced in the report released by BP, dated September 8, 2010, or any person that participated in the investigation referenced in the report released by BP, dated September 8, 2010, that took place since April 20, 2010.

**Interrogatory No. 17**

Please identify any person that was interviewed or contacted as part of the investigation referenced in the report released by BP, dated September 8, 2010.

**Request for Production No. 40**

Please produce any documents or communications relating to any written or recorded statements taken in connection with the investigation referenced in the report released by BP, dated September 8, 2010.

**Request for Production No. 41**

Please produce any documents relating to any persons that were interviewed or contacted as part of the investigation referenced in the report released by BP, dated September 8, 2010.

**Interrogatory No. 18**

Please identify any person that supports, refutes, or has any knowledge or information concerning the following statements in the report released by BP, dated September 8, 2010:

      (a)    "The annulus cement barrier did not isolate the hydrocarbons;"

(b)      "The shoe track barriers did not isolate the hydrocarbons;"

(c)      "The negative-pressure test was accepted although well integrity had not been established;"

(d)      "Influx was not recognized until hydrocarbons were in the riser;"

(e)      "Well control response actions failed to regain control of the well;"

(f)      "Diversion to the mud gas separator resulted in gas venting onto the rig;

(g)      "The fire and gas system did not prevent hydrocarbon ignition;" and

(h)      "The BOP emergency mode did not seal the well."

**<u>Request for Production No. 42</u>**

Please produce any documents that support or refute the following statements in the report released by BP, dated September 8, 2010:

(a)      "The annulus cement barrier did not isolate the hydrocarbons;"

(b)      "The shoe track barriers did not isolate the hydrocarbons;"

(c)      "The negative-pressure test was accepted although well integrity had not been established;"

(d)      "Influx was not recognized until hydrocarbons were in the riser;"

(e)      "Well control response actions failed to regain control of the well;"

(f)      "Diversion to the mud gas separator resulted in gas venting onto the rig;

(g)      "The fire and gas system did not prevent hydrocarbon ignition;" and

(h)      "The BOP emergency mode did not seal the well."

**<u>Request for Production No. 43</u>**

Please produce any documents or communications relating to the report released by BP, dated September 8, 2010, including drafts that were made or created by (a) the Investigation Team

referenced in the report released by BP, dated September 8, 2010; or (b) any other person who participated in the investigation referenced in the report released by BP, dated September 8, 2010.

**Request for Production No. 44**

Please produce any drafts or markups of the report, or any part thereof, released by BP, dated September 8, 2010, including drafts or markups of specific sections or parts of the report released by BP, dated September 8, 2010.

**Request for Production No. 45**

Please produce any documents or studies relied upon, referred to, or reviewed in connection with the investigation referenced in the report released by BP, dated September 8, 2010 or the drafting of the report released by BP, dated September 8, 2010.

**Request for Production No. 46**

Please produce any documents relating to or concerning the report released by BP, dated September 8, 2010 or the investigation referenced in the report released by BP, dated September 8, 2010.

**Request for Production No. 47**

Please produce any documents identified or referenced in the report released by BP, dated September 8, 2010.

**Interrogatory No. 19**

Please identify any person known to you who have conducted a surface or subsurface inspection of the Macondo Well, the Deepwater Horizon, or any component of the Macondo Well or Deepwater Horizon, including the blowout preventer, riser, or any other drilling equipment that were made, conducted, or done after April 20, 2010.

**Request for Production No. 48**

Please produce any documents or communications relating to any surface or subsurface inspections of the Macondo Well, the Deepwater Horizon, or any component of the Macondo Well or Deepwater Horizon, including the blowout preventer, riser, or any other drilling equipment that were made, conducted, or done after April 20, 2010.

**Interrogatory No. 20**

Please identify any persons who inspected or performed any analysis for failure of any equipment, products, property or services in connection with the incident, including the events leading up to and following the incident.

**Request for Production No. 49**

Please produce any documents or communications relating to any analysis for failure of any equipment, products, property or services in connection with the incident, including the events leading up to and following the incident.

**Request for Production No. 50**

Please produce any documents or communications relating to any appearances at any hearing conducted by the government in connection with the incident, including any communications between you and the government or any other person regarding the hearing and any documents produced by or to you as a result of your designation as a party in interest at such hearings.

**Request for Production No. 51**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to rig workers.

**Request for Production No. 52**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to other individuals.

**Request for Production No. 53**

Please produce copies of any assessments of damages associated with the oil spill, including economic damages.

**Request for Production No. 54**

Please produce any documents, assessments, or testing showing the potential risks to marine life in the Gulf of Mexico.

**Request for Production No. 55**

Please produce Appendix "M" of the report released by BP, dated September 8, 2010.

**Interrogatory No. 21**

Please identify any internal reports or investigations about the incident, including any disciplinary investigations of the actions of the workers on the Deepwater Horizon or any internal executive accountability investigations into the role of management in the incident for the relevant time period.

**Request for Production No. 56**

Please produce any documents or communications relating to any report or investigation identified or listed in your response to Interrogatory No. 21.

**Request for Production No. 57**

Please produce any documents or communications relating to any studies, investigations, or analyses done during the relevant time period regarding your safety history or safety culture, including any studies, investigations or analyses done by any consulting firm, insurance company, or government.

**Request for Production No. 58**

Please produce any witness statements taken by any person regarding the operations or activities of the Deepwater Horizon for the relevant time period.

**Interrogatory No. 22**

Please state whether any worker on an oil or gas rig operated by you has ever called for a work stoppage or refused to work for any reason, including unsafe conditions or safety reasons.  If so, please identify the worker, dates, locations, and outcome of the work stoppage request.

**Request for Production No. 59**

Please produce any documents or communications relating to the information provided in your response to Interrogatory No. 22.

**Interrogatory No. 23**

Please identify any safety incidents or violations that occurred on any offshore rig or facility operated by you including but not limited to, the following:

      (a)      Near Misses;

      (b)      Government Reported;

      (c)      Industry Reported;

      (d)      Days Away From Work (DAFW), Lost Time, or Injury Reports;

      (e)      Fatalities;

      (f)      Fires; or

      (g)      Work Stoppages.

**Request for Production No. 60**

Please produce any documents or communications, including internal and external reports, reflecting analysis that is the subject of Interrogatory No. 23.

**Request for Production No. 61**

Please produce copies of any government citations to any BP rig operating in American waters during the relevant time period.

**Request for Production No. 62**

Please produce any documents or communications from any government reported incident involving oil or gas rigs, or spills, including any root cause analysis, reports, and documents including the following spills and spills occurring in the following countries:

    (a)    Exxon Valdez in 1989;

    (b)    The Ixtoc I in 1979;

    (c)    The Santa Barbara in 1969;

    (d)    The Thunder Horse in May 2007;

    (e)    Australia; and

    (f)    Saudi Arabia.

**Request for Production No. 63**

Please produce any documents or communications regarding any safety or environmental violations, near misses, incidents, or occurrences that occurred on the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, rig, or platform involved with any operations or drilling activities at the Macondo Well.

**Request for Production No. 64**

Please produce copies of any videos or presentations created by Gulf of Mexico Deepwater Productions.

**Request for Production No. 65**

Please produce any documents or communications of any drilling operation or construction of the Macondo Well during the relevant time period.

**Request for Production No. 66**

Please produce any documents or communications showing the cost benefit analysis in the drilling and operation of deep water wells in the Gulf of Mexico.

**Request for Production No. 67**

Please produce any risk assessments in the drilling and operation of deep water wells in the Gulf of Mexico.

**Request for Production No. 68**

Please produce any citations or fines paid by you to Minerals Management Service during the relevant time period.

**Request for Production No. 69**

Please provide the organizational chart for the following entities for every year during the relevant time period:

      (a)      BP Exploration and Production;

      (b)      BP America, Inc.;

      (c)      BP Products North America, Inc.;

      (d)      BP, P.L.C.; and

      (e)      BP America Production Company.

**Request for Production No. 70**

Please produce any documents reflecting the oversight or performance of: (1) any aspect of BP America Production Company; (2) of anyone in management at BP, P.L.C.; or (3) the board of directors at BP, P.L.C.

**Request for Production No. 71**

Please produce any by-laws for BP America Production Company.

**Request for Production No. 72**

Please produce documents showing all members of the board of directors and their position for BP America Production Company, during the relevant time period.

**Interrogatory No. 24**

Please identify any person that designed, constructed, participated in the design or construction, or was involved with the design or construction of the Macondo Well, as well as any person involved in the changes or amendments to the design or construction of the Macondo Well.

**Request for Production No. 73**

Please produce any documents or communications relating to the design or construction of the Macondo Well, as well as any documents or communications relating to any changes or amendments to the design or construction of the Macondo Well, including all logs, tests, charts, diagrams, or drawings or similar documents relating to the design and construction of the Macondo Well, or any component part of the Macondo Well, along with all documents and communications relating to any construction delays and contract penalties with respect to the Macondo Well.

**Interrogatory No. 25**

Please identify any person who was involved in any discussion, plan, or meeting regarding the procedures which would be used to seal the Macondo Well.

**Request for Production No. 74**

Please produce any documents or communications relating to any plan or procedures to implement if control of the Macondo Well was lost.

**Request for Production No. 75**

Please produce any documents or communications relating to any plan or procedures to implement once control of the Macondo Well was lost.

**Request for Production No. 76**

Please produce true and correct copies of any diagrams, drawings, or similar documents relating to the Macondo Well, including but not limited to the:

      (a)      The annulus cement barrier;

      (b)      Production casing;

      (c)      Wellbore annulus;

      (d)      Reservoir;

      (e)      Shoe track;

      (f)      Float collar;

      (g)      Casing hangar seal assembly;

      (h)      Riser;

      (i)      Blow out preventer; and

      (j)      Diverter.

**Request for Production No. 77**

Please produce any documents or communications relating to test results used to measure the integrity of the well casing, as it relates to the Deepwater Horizon and Macondo Well.

**Request for Production No. 78**

Please produce any documents or communications reflecting any condition of the Macondo Well, including but not limited to logs, flow data or any other data collected or created by you.

**Request for Production No. 79**

Please produce any documents or communications relating to any studies, investigations, or analyses, conducted with respect to the reservoir into which the Macondo Well was drilled.

**Request for Production No. 80**

Please produce any documents or communications relating to construction delays relating to the Macondo Well.

**Request for Production No. 81**

Please produce any documents or communications relating to contract penalties regarding delays in the construction of the Macondo Well.

**Interrogatory No. 26**

Please identify any test procedures or protocols performed on any equipment, products, property, or services provided by you in connection with the Macondo Well, and identify any equipment, products, property and services subjected to any test procedures or protocols.

**Request for Production No. 82**

Please produce any documents or communications relating to any test procedures or protocols performed on any equipment, products, property, or services provided by you or any other person in connection with the Macondo Well.

**Request for Production No. 83**

Please produce any documents or communications relating to any applications for or permitting of the Macondo Well, including any documents or communications regarding permission to make changes as an approved operation.

**Request for Production No. 84**

Please produce any documents or communications between you and any government or quasi-government permitting authority regarding the Macondo Well.

**Request for Production No. 85**

Please produce any permits including any revised permits to drill at the Macondo Well.

**Interrogatory No. 27**

Please identify any person that designed, manufactured, sold, or distributed any of the materials or components used in the design or construction of the Macondo Well, and state specifically which material or component of the Macondo Well was designed, constructed, manufactured, sold, or distributed by that person.   Your answer should include the persons that designed, constructed, manufactured, sold, or distributed the following with respect to the Macondo Well:

      (a)     The annulus cement barrier;

      (b)     Production casing;

      (c)     Wellbore annulus;

      (d)     Reservoir;

      (e)     Shoe track;

      (f)     Float collar;

      (g)     Casing hangar seal assembly;

      (h)     Riser;

      (i)     Blow out preventer; and

      (j)     Diverter.

**Request for Production No. 86**

Please produce any documents or communications evidencing or demonstrating any person that designed, constructed, manufactured, sold, or distributed any of the materials or components used in the design and construction of the Macondo Well.

**Request for Production No. 87**

Please produce any documents or communications relating to the materials or components used in the design and construction of the Macondo Well.

**Request for Production No. 88**

Please produce a copy of any studies regarding the effectiveness of blow out preventers in offshore drilling operations.

**Request for Production No. 89**

Please produce a copy of any studies regarding the effectiveness of utilization of centralizers in offshore drilling operations.

**Interrogatory No. 28**

Please identify each person that participated or should have participated in any cementing operation for any casing of the Macondo Well, including all persons that participated in the actual cementing process and all persons that participated or should have participated in the approval process for the cementing of the Macondo Well.

**Interrogatory No. 29**

Please describe in detail the cementing process for the Macondo Well. Your answer should include a description of the approval process, if any, that was actually performed for any cementing job performed at or on the Macondo Well, along with any policies, procedures, or steps, approved or otherwise, that were required to be followed as part of the cementing process.

**Request for Production No. 90**

Please produce any documents or communications relating to the cementing of the Macondo Well, including the approval process for any cementing job performed prior to the incident.

**Request for Production No. 91**

Please produce any directional surveys of or for the Macondo Well for the relevant time period.

**Request For Production No. 92**

Please produce any caliper logs of or for the Macondo Well for the relevant time period.

**Request For Production No. 93**

Please produce any documents reflecting rate, density, and pressure information taken before, during, and after any cement job of or for the Macondo Well, including the description of events for the relevant time period.

**Request For Production No. 94**

Please produce any documents reflecting rate, pressure, temperature, porosity, permeability information, or any other information maintained by any equipment on the Deepwater Horizon.

**Request For Production No. 95**

Please produce any copies of the Opticem$^{©}$ runs performed as part of or in preparation for any cementing operations performed in the drilling of the Macondo Well.

**Request For Production No. 96**

Please produce copies of any tests by the Halliburton laboratory on cement in preparation for any cementing operation(s) performed during the drilling of the Macondo Well.

**Request For Production No. 97**

Please produce copies of any tests by the Halliburton laboratory on spacer in preparation for any cementing operation(s) performed during the drilling of the Macondo Well.

**Request For Production No. 98**

Please produce copies of any CSI Technologies laboratory testing results that were performed as part of or in preparation for any cementing operations performed in the drilling of the Macondo Well.

**Request For Production No. 99**

Please produce any detailed technical drawings, specifications, or running and activating procedures for:

        (a)     The casing hanger/landing area;

        (b)     The annular pack-off; and

        (c)     The lock down device.

**Request For Production No. 100**

Please produce any casing tallies, complete with float equipment, centralizer placement, casing hanger information, sub-sea plug set, drill pipe information, and Allemon tool placement.

**Request For Production No. 101**

Please produce any pressure charts and documents detailing technical discussion of any attempts to initiate circulation for the relevant time period.

**Request For Production No. 102**

Please produce documents detailing formation information for the open hole section, including top and bottom of permeable formations (total vertical depth and measured depth) and pore pressure of each formation.

**Request For Production No. 103**

Please produce documents detailing the technical specifications on the tools used in the shoe track, including the reamer shoe and automatic fill float equipment.

**Request For Production No. 104**

Please produce the technical specifications on the sub-sea plug set.

**Request For Production No. 105**

Please produce the technical specifications for Allemon tool.

**Request For Production No. 106**

Please produce the technical specifications for the cement head.

**Request For Production No. 107**

Please produce the schematic of pumping and wash up lines from the cement head to the rig floor.

**Request For Production No. 108**

Please produce documents detailing the drilling fluid technical specifications, including detailed composition, target drilling fluid properties at surface and down hole conditions, and actual drilling fluid properties when running casing at surface and down hole conditions, pumped into the well during circulation prior to cementing, and of fluid coming out of the well during circulation prior to cementing, including density, Pv, Yp, fluid loss, electrical stability, and Fann rheometer readings.

**Request For Production No. 109**

Please produce documents detailing the volume and rates of circulation, if any, during casing running but prior to reaching total vertical depth.

**Request For Production No. 110**

Please produce documents detailing the volume and rates pumped during circulation after the casing reaches the bottom of the well, but prior to cementing.

**Request For Production No. 111**

Please produce documents detailing the volume and rates pumped for base oil at the start of any cement job during the drilling of the Macondo Well, including base oil technical specifications.

**Request For Production No. 112**

Please produce documents detailing the volume and rates pumped for spacer at the start of any cement job, including spacer technical specifications, performance targets, performance

information, and formulation used on any cement job during the drilling of the Macondo Well, including surfactants, mutual solvents, or anti-foamers.

**Request For Production No. 113**

Please produce documents detailing the volume and rates pumped for cap cement slurry for the relevant time period.

**Request For Production No. 114**

Please produce documents detailing the volume and rates pumped for foamed cement base slurry for the relevant time period.

**Request For Production No. 115**

Please produce documents detailing the volume, rates and pressure of the nitrogen that was pumped for the relevant time period.

**Request For Production No. 116**

Please produce documents detailing the volume and rates of the surfactant that was pumped for the relevant time period.

**Request For Production No. 117**

Please produce documents detailing the volume and rates pumped for the tail cement slurry for the relevant time period.

**Request For Production No. 118**

Please produce documents detailing the procedure that was used to clean the Halliburton high pressure cementing line to the cement head after the last of the tail cement was pumped.  Please indicate whether the line was washed up so that the cement in the high pressure line was not placed on top of the top plug, or if the cement in the high pressure cementing line was placed on top of the top plug.

**Request For Production No. 119**

Please produce documents detailing information on bumping the plug, pressuring up on the plug, holding pressure on the plug, and bleeding off pressure, including volume of flow back and any information on the floats holding back pressure for the relevant time period.

**Request For Production No. 120**

Please produce documents or communications detailing inventory of any cementing chemicals, prior to or after the cementing operation, including spacer materials.

**Request For Production No. 121**

Please produce documents or communications detailing the break down of the timing of setting and testing the annular pack-off for the relevant time period.

**Request For Production No. 122**

Please produce documents detailing information on the spacer fluid that was used to separate the drilling fluid and the sea water during the operation in preparation to abandon the well.  Please include spacer volume, density, rheological properties, and compatibility properties with the drilling fluid and sea water.

**Request for Production No. 123**

Please produce documents relating to any studies regarding the effectiveness of adding nitrogen to the cement mix in offshore drilling operations.

**Request for Production No. 124**

Please produce all documents regarding any investigations or reports on the utilization of centralizers

**Request for Production No. 125**

Please produce all documents regarding any investigations or reports on the utilization of cements.

**Interrogatory No. 30**

Were you made aware of any process malfunction of a blow out preventer during a well site in the last twenty (20) years?  If yes, please state:

(a)     The ownership of the blow out preventer;

(b)     The nature of the malfunction of the blow out preventer;

(c)     The person(s) involved in the drilling of the well;

(d)     Whether the malfunction resulted in a casualty or spill;

(e)     Whether remedial measures were taken as a consequence in a failure or the spill; and

(f)     Whether any representative from your company was involved in the failure or the spill.

**Request for Production No. 126**

Please produce copies of any and all documents identifying subject matter contained in Interrogatory No. 30.

**Request for Production No. 127**

Please produce all documents regarding any investigations or reports on blow out preventers.

**Request for Production No. 128**

Please produce all documents regarding any investigations or reports on pressure testing.

**Request for Production No. 129**

Please produce all documents regarding any investigations or reports on the utilization of well casings.

**Request for Production No. 130**

Please produce any documents or communications relating to positive or negative pressure tests regarding the Deepwater Horizon and Macondo Well.

**Interrogatory No. 31**

Please identify the persons who performed or should have performed any inspection, surveys, testing, maintenance, modifications, or alterations of or to the blowout preventer on the Macondo Well at the time of the incident, and describe in detail any such inspections, surveys, testing, maintenance, modifications, or alterations.

**Request for Production No. 131**

Please produce any documents or communications relating to any inspections, surveys, testing, maintenance, modifications, or alterations of or to the blowout preventers located on the Macondo Well at the time of the incident, including any negative or positive pressure tests and stump tests conducted on such blowout preventers or any statutory, annual, continuous, special, class, or similar inspections, surveys, or testing done by any person.

**Request For Production No. 132**

Please produce any documents or communications showing any modifications of the blowout preventer on the Macondo Well for the relevant time period, which affected the access or control of the blowout preventer.

**Request for Production No. 133**

Please produce any documents or communications that describe, discuss, or depict each blowout preventer installed on the Macondo Well at the time of the incident, the amount of pressure each blowout preventer must generate to seal off the well, and the accumulator system or accumulator charging system for each blowout preventer.

**Request for Production No. 134**

Please produce any documents or communications identifying any persons who participated in selecting or configuring the blowout preventers that were installed on the Macondo Well at the time of the incident, or who provided technical advice to you or any other person in selecting or configuring any of the blowout preventers that were installed on the Macondo Well at the time of the incident.

**Request for Production No. 135**

Please produce any documents or communications relating to the selection or configuration of the blowout preventers installed on the Macondo Well at the time of the incident, or any technical advice that was provided to you or any other person in selecting and configuring any of the blowout preventers that were installed on the Macondo Well at the time of the incident.

**Interrogatory No. 32**

Please identify any person who participated in selecting, configured, or provided technical advice to you or any other person in selecting and configuring any of the blowout preventers that were on the Macondo Well at the time of the incident.

**Request for Production No. 136**

Please produce any documents or communications relating to any processes, tests, design considerations, safety devices, or other steps, products, or considerations that were taken or used to prevent a blowout of the Macondo Well, or to minimize or limit the effects of a blowout of the Macondo Well.

**Request for Production No. 137**

Please produce any diagrams, drawings, or similar documents relating to any processes, tests, design considerations, safety devices, or other steps, products, or considerations that were taken

or used to prevent a blowout of the Macondo Well, or to minimize or limit the effects of a blowout of the Macondo Well.

**Request for Production No. 138**

Please produce copies of any documents or communications reflecting the failure of the blowout preventer.

**Request for Production No. 139**

Please produce any documents or communications relating to the maximum drilling depth capability of the Deepwater Horizon.

**Request for Production No. 140**

Please produce any documents or communications evidencing, discussing, or demonstrating any safety devices or designs that were incorporated into or considered for the Deepwater Horizon, in order to prevent or minimize an explosion, in the event the engines electrical systems or other equipment were exposed to a flammable gas, liquid, or other material.

**Request for Production No. 141**

Please produce any internal or external studies regarding the operational integrity of the Deepwater Horizon.

**Request for Production No. 142**

Please produce any of your policies, procedures, guidelines, protocols, instructions, training materials, or similar documents relating to any of the following:

(a)     The Deepwater Horizon;

(b)     The Macondo Well;

(c)     Well design;

(d)     Drilling;

    (e)       Blowout preventers;

    (f)       Pressure testing of wells or blowout preventers;

    (g)       Well control;

    (h)       Well control response;

    (i)       Mud gas seperators;

    (j)       Safety; and

    (k)       Accident response.

**Request for Production No. 143**

Please produce any documents or communications any person provided to you regarding the operating procedures that would or should be followed when the Deepwater Horizon drilled a well.

**Request for Production No. 144**

Please produce any training manuals, materials, guidelines, instructions, or similar documents used on or applicable to the Deepwater Horizon, the activities and operations of the Deepwater Horizon, or any person aboard the Deepwater Horizon.

**Request for Production No. 145**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding blowout preventers for the relevant time period.

**Request for Production No. 146**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding cementing well production casing for the relevant time period.

**Request for Production No. 147**

Please produce any internal standards, process safety standards, recommended best practices, engineering technical practices, or other policies regarding well negative pressure tests for the relevant time period.

**Request for Production No. 148**

Please produce any internal standards, recommended best practices, engineering technical practices, or other policies regarding well control response actions for the relevant time period.

**Request for Production No. 149**

Please produce any internal standards, recommended best practices, engineering technical practices, or other policies regarding the mud gas separator for the relevant time period.

**Request for Production No. 150**

Please produce any management of changes or other documents reflecting approved deviations of Standard Operating Procedure generated on or for the Deepwater Horizon or Macondo Well during the relevant time period.

**Request for Production No. 151**

Please produce any HAZOPs, Process Hazard Analyses, process safety management studies, or job safety analyses generated on or for the Deepwater Horizon or Macondo Well during the relevant time period.

**Request for Production No. 152**

Please produce any traction reports regarding the Deepwater Horizon for the relevant time period.

**Request for Production No. 153**

Please produce any committee minutes used by you to assess or evaluate health, safety, security, or environment on oil or gas rigs in the Gulf of Mexico during the relevant time period.

**Request for Production No. 154**

Please produce copies of any documents or communications detailing employee complaints about the policies and procedures on the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Request for Production No. 155**

Please produce copies of documents reflecting any standards on the blow out preventer on the Deep Water Horizon including 29 C.F.R. 350, requesting 14 day testing.

**Request for Production No. 156**

Please produce any analyses performed subject to any applicable guidelines and regulations, including 30 C.F.R. 250, and any applicable American Petroleum Institute specifications or standards for oil or gas rigs operating in the Gulf of Mexico during the relevant time period.

**Request for Production No. 157**

Please produce the safety committee meeting minutes for the Society of Petroleum Engineers for the relevant time period.

**Request for Production No. 158**

Please produce any procedures and policies for monitoring and recording radio communications between employees and contractors involved with the operations and drilling activities of the Deepwater Horizon for the relevant time period.

**Request for Production No. 159**

Please produce the safety committee meeting minutes for the International Association of Drilling Contractors for the relevant time period.

**Request for Production No. 160**

Please produce any documents or communications which evidence the training, education, and experience of the persons working on the Deepwater Horizon or at the Macondo Well during the relevant time period.

**Interrogatory No. 33**

Please describe in detail how the employees who participated in or were involved with the operations and activities of the Deepwater Horizon were paid or compensated.  Your description should include information related to whether any such employee's compensation was in any way tied to the time it takes to complete a job or project, or the costs, expenses, or profits of any such projects.

**Request for Production No. 161**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon.

**Request for Production No. 162**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon for exceeding deadlines.

**Request for Production No. 163**

Please produce copies of any documents or communications outlining potential financial disincentives to your personnel involved in the operation of the Deepwater Horizon for being over budget.

**Request for Production No. 164**

Please produce any documents reflecting how your implementation of cost cutting measures in 1999 affected oil or gas rig operations in the Gulf of Mexico, including the Deepwater Horizon, during the relevant time period.

**Request for Production No. 165**

Please produce a copy of any Group HSSE, formerly HSE, standards employed by you for any year during the relevant time period.

**Request for Production No. 166**

Please produce any documents or communications regarding major accident risk awareness for the relevant time period including but not limited to the following areas:

      (a)     Hazard identification;

      (b)     Consequence assessment;

      (c)     Frequency assessment;

      (d)     Risk & tolerability;

      (e)     Risk matrix tool;

      (f)     Societal risk;

      (g)     Environmental risk; and

      (h)     Multiple fatality events.

**Request for Production No. 167**

Please produce any documents or communications related to any safety management system you had in place during the relevant time period, along with any safety management systems or bridging documents in place or applicable to the Deepwater Horizon, Transocean Marianas, or any other mobile offshore drilling unit, platform, or rig that participated in, or was involved with, any operations or drilling activities with respect to the Macondo Well.

**Request for Production No. 168**

Please produce any documents or communications relating to any government permits issued for the Deepwater Horizon or Macondo Well during the relevant time period.

**Request for Production No. 169**

Please produce documents or communications relating to any inspections or surveys of the Deepwater Horizon, Macondo Well, or any component or appurtenance of the Deepwater Horizon or Macondo Well during the relevant time period, including any government, statutory, special, class, or continuing inspections or surveys conducted by or on behalf of the United States, Marshall Islands, Panama, a classification society, or a recognized organization.

**Request for Production No. 170**

Please produce copies of any documents or communications provided to the British Government as a result of the incident.

**Request for Production No. 171**

Please produce any communications between BP and the federal, state, or local government regarding the Gulf Coast Claims Facility.

**Request for Production No. 172**

Please produce copies of any documents you have released to Congress.

**Request for Production No. 173**

Please produce copies of any documents released to any federal, state, or local official regarding the Gulf Coast Claims Facility.

**Request for Production No. 174**

Please produce copies of any transcripts from the Coast Guard hearings regarding the incident.

**Request for Production No. 175**

Please produce any documents or communications you have provided to any government entity or agency in connection to or as a result of the incident.

**Request for Production No. 176**

Please produce copies of any documents or communications generated to any state's Attorney General regarding the Gulf Coast Claims Facility.

**Interrogatory No. 34**

With respect to the Vessels of Opportunity program, please list the following:

      (a)     The number of vessels procured in the rescue program;

      (b)     The number of vessels commissioned and the number of days each worked; and

      (c)     The amount paid by you to each vessel in the program.

**Request for Production No. 177**

Please produce copies of any documents or communications provided by you to the U.S. Chemical Safety Board as a result of the incident.

**Request for Production No. 178**

Please produce copies of any documents or communications provided by you to the Minerals Management Service, now known as the Bureau of Ocean Energy Management, as a result of the Deepwater Horizon incident.

**Request for Production No. 179**

Please produce any and all copies of any documents or activity reports remitted to Minerals Management Service, now know as the Bureau of Ocean Energy Management, during the relevant time frame.

**Request for Production No. 180**

Please produce any document relating to any Potential Incidents of Non-Compliance from Minerals Management Service, now know as the Bureau of Ocean Energy Management, regarding the Macondo Well.

**Request for Production No. 181**

Please produce documents showing your former employees currently employed by any governmental regulatory agency.

**Request for Production No. 182**

Please produce any documents relating to the amount of political contributions paid or donated by you to any state official, federal official, or political action committee during the relevant time period.

**Request for Production No. 183**

Please produce copies of any documents that reflect any lobbying activities paid by you regarding the regulation and oversight of offshore drilling in United States waters, to avoid the required use of acoustic switches or activators on blowout preventers, or to avoid required environmental impact studies.

**Request for Production No. 184**

Please produce all documents utilizing standards by vessels and any correspondence between you and the government or any lobby or group opposing any government involving opposition regarding this subject matter.

**Request for Production No. 185**

Please produce any documents regarding gifts, trips, prizes, meals paid, given or made to any Minerals Management Service, now known as the Bureau of Ocean Energy Management, employees.

**Request for Production No. 186**

Please produce any documents produced by you in any government investigation between you and any governmental representatives regarding the incident and oil spill.

**Request for Production No. 187**

Please produce any documents reflecting the identity of any previous employee in a government position that is now in the employment of BP.

**Request for Production No. 188**

Please produce any documents reflecting the identity of any of your previous employees that are now in the employment of a governmental entity.

**Request for Production No. 189**

Please produce any documents or communications relating to any efforts, including lobbying or contributions to political action committees, by you or any organization or society of which you are a member, to obtain deferment of any inspections, to avoid use of redundant blow out preventers, or to avoid the drilling of relief wells.

**Request for Production No. 190**

 Please produce all diagrams, drawings, or blueprints of the Deepwater Horizon, both as manufactured and as it existed at the time of the incident.

**Request for Production No. 191**

Please produce any documents or communications evidencing or relating to your or any other person's relationship to or interest in the Deepwater Horizon, including all contracts, agreements, charters, leases, or similar documents.

**Request for Production No. 192**

Please produce any documents identifying any person who owned, chartered, leased, rented, or had any other interest whatsoever in the Deepwater Horizon.  For any person identified, please provide the following information:

      (a)     Produce any documents describing that person's interest in the Deepwater Horizon;

      (b)     Produce any contracts, agreements, or other legal documents relating to or concerning that person's interest in the Deepwater Horizon;

      (c)     Produce any communications relating to or concerning that person's interest in the Deepwater Horizon;

      (d)     Produce any documents relating to or concerning that person's interest in the Deepwater Horizon.

**Request for Production No. 193**

Please produce any documents or communications evidencing or relating to your or any other person's relationship to or interest in the Macondo Well, including all contracts, agreements, charters, leases, or similar documents.

**Interrogatory No. 35**

Please identify the persons within your organization who were primarily responsible for monitoring or overseeing the operations and activities of the Deepwater Horizon or the operations and activities that took place at the Macondo Well during the relevant time period.

**Request for Production No. 194**

Please produce any documents or communications relating to the assignment of persons by you to work on any project relating to the Macondo Well.

**Request for Production No. 195**

Please produce the BP database file of engineering documents for the Macondo Well including but not limited to:

      (a)      Any Piping & Instrument Drawings;

      (b)      Any P&ID's issued for construction;

      (c)      Any P&ID's issued "design";

      (d)      Any P&ID's issued "as-built";

      (e)      Any P&ID's issued DC-1 Welding Procedure Specifications;

      (f)      Any P&ID's issued Procedure Qualification Records;

      (g)      Any P&ID's issued safety shutdown logic drawings; and

      (h)      Any P&ID's issued "as-built" safety shutdown logic calls.

**Request for Production No. 196**

Please produce any documents or communications concerning the Macondo Well project, including communications concerning meetings, minutes of meetings, organization charts, operational charts, and operational chains of command.

**Request for Production No. 197**

Please produce any documents or communications regarding any joint defense agreement entered into with any person relating to the incident, or any oil spill, clean up, control efforts, or mitigation efforts growing out of the incident.

**Request for Production No. 198**

Please produce any documents or communications relating to the terms of any contractual or financial relationship or agreements regarding your duties, responsibilities, obligations, or liabilities in connection with the Deepwater Horizon or Macondo Well.

**Request for Production No. 199**

Please produce any documents or communications between you and other person concerning any work, or proposed work, on the Macondo Well, including any testing or proposed testing during the relevant time period.

**Request for Production No. 200**

Please produce any documents or communications between you and any other person regarding any work, proposed work, or suggested work on the Deepwater Horizon or Macondo Well, including all documents and communications relating to any bids, invoices, tests, or proposed tests for the Deepwater Horizon or Macondo Well.

**Request for Production No. 201**

Please produce any documents or communications to or from you and the following persons, firms, corporations, political subdivisions, government agencies and entities that relate to the Macondo Well or the Deepwater Horizon:

      (a)     Halliburton;

      (b)     Transocean;

      (c)     Weatherford;

      (d)     M I Swaco;

      (e)     Anadarko;

      (f)     MOEX;

      (g)     Cameron International;

      (h)     Materials Management Services;

      (i)     Tidewater Marine;

      (j)     United States Coast Guard;

      (k)     Schlumberger;

  (l)  NALCO;

  (m)  Seacorp;

  (n)  Department of Interior;

  (o)  Department of Energy;

  (p)  Environmental Protection Agency;

  (q)  Chemical Safety Board;

  (r)  House Committee on Energy and Finance;

  (s)  Senate Committee on Natural Resources and Energy; and

  (t)  Any other defendant named in Multi District Litigation No. 2179.

**Request for Production No. 202**

Please produce any contracts, agreements, purchase orders, or memoranda of understanding with any person relating to any work, products, services, or supplies for use in drilling the Macondo Well or Deepwater Horizon during the relevant time period.

**Request for Production No. 203**

Please produce any documents evidencing any compensation and payments provided or made from you to any other person during the relevant time period for any products, services, contracts, or agreements with respect to the Macondo Well.

**Request for Production No. 204**

Please produce a copy of the contract or lease agreement between BP America Production Company, Mitsui & Co., Mitsui Oil Exploration Co., MOEX Offshore 2007, L.L.C., or Anadarko Petroleum Corporation.

**Interrogatory No. 36**

Please state whether you contend any person other than you caused, contributed to, is liable for, is at fault for, is responsible for, or is otherwise accountable for the incident, blowout, explosion, accident, oil spill, or resulting injuries and damages.  If you do, please identify any such person and for any person identified, please provide the following information and documents

      (a)     State any fact upon which you base your contention that someone other than you caused, contributed to, is liable for, is at fault for, is responsible for, or is otherwise accountable for the blowout, explosion, accident, oil spill, or resulting injuries and damages; and

      (b)     Identify any documents supporting your contention that such person is liable.

**Request for Production No. 205**

Please produce any documents identified in your response to Interrogatory No. 36.

**Interrogatory No. 37**

Please state whether you contend that one of your affiliated, related, parent, or subsidiary corporations or entities should have been named in the complaint instead of you.  If you do, please provide the following information:

      (a)     Identify any such corporations or entities;

      (b)     For any corporation or entity identified, describe in detail that corporation or entity's relationship to you and identify any documents relating to that corporation or entity's relationship to you; and

      (c)     For any corporation or entity identified, describe in detail that corporation or entity's relationship to the other defendants in this Multi District Litigation, the Macondo Well, and the Deepwater Horizon, and identify any documents relating to that corporation or entity's relationship to the other defendants, the Macondo Well, or the Deepwater Horizon.

**Request for Production No. 206**

Please produce any documents identified in your response to Interrogatory No. 37.

**Interrogatory No. 38**

With respect to the crew aboard the Deep Water Horizon at the time of the incident, do you contend you are legally entitled to any statutory cap or limitation of liability?  If so, please state the legal basis of the limitation or cap.

**Interrogatory No. 39**

As to any document or communication which has not been produced because it has been destroyed, lost, or is no longer in your possession, please identify the document and also state when and why the document was destroyed, lost, or is no longer in your possession.

**Interrogatory No. 40**

Please identify any records, logs, reports or other documentation kept in reference to the use of any of your products, property, services, or equipment on the Deepwater Horizon or at or in the Macondo Well.

**Request for Production No. 207**

Please produce any documents or communications relating to any records, logs, reports or other documentation kept in reference to the use of any your products, property, services, or equipment on the Deepwater Horizon or at or in the Macondo Well.

**Request for Production No. 208**

Please produce any documents or communications relating to any internal communications concerning any work or proposed work on the Macondo Well, including any testing or proposed testing and any decisions to remove your employees from the Deepwater Horizon.

**Request for Production No. 209**

Please produce any documents or communications relating to any notices of claim, defenses and indemnity demands, demands for contribution, or demands for damages you have received from any persons in connection with the casualty.

**Interrogatory No. 41**

Please state whether you, anyone in your employ, or anyone acting on your behalf in connection with the events leading up to and the incident has consulted or retained any person deemed to be an expert in their field.  If so, please identify any experts.

**Request for Production No. 210**

Please produce a current curriculum vitae of any expert retained by you, any report offered in connection with this incident, and any materials used by the expert to render such report.

**Interrogatory No. 42**

Please identify and describe any exhibits you may or will use at trial.

**Request for Production No. 211**

Please produce any documents or communications relating to emergency preparedness, planning, and implementation, including emergency preparedness in the event of a blowout preventer failure.

**Request for Production No. 212**

Please produce any reports or assessments dealing with criminal penalties associated with environmental fines for releasing oil in the Gulf of Mexico, or the killing or injuring of fish, wild birds, wild quadrupeds, and other wildlife and aquatic life.

**Request for Production No. 213**

Please produce any documents or communications regarding the potential economic impact to tourism along the Gulf Coast as a result of the oil spill.

**Request for Production No. 214**

Please produce any documents or communications regarding the potential economic impact to fish, wild birds, wild quadrupeds, and other wildlife and aquatic life.

**Request for Production No. 215**

Please produce documents between you and the National Offshore Safety Advisory Committe.

**Request for Production No. 216**

Please produce all documents establishing your relationship with the International Association of Drilling Contractors.

**Request for Production No. 217**

Please produce any documents or communications regarding the demotion, resignation or reassignment of Tony Hayward from Chief Executive Officer of BP, P.L.C. at the time of the incident.

**Request for Production No. 218**

Please produce any documents identifying any law firms hired by you in this matter.

**Request for Production No. 219**

Please produce any documents and communications showing your relationship to or contribution to The Louisiana Record.

**Request for Production No. 220**

Please produce any documents or communications putting a cost on the value of human life.

**Request for Production No. 221**

Please produce any documents or communications comparing individuals to pigs or any other domestic commodity or animal.

**Request for Production No. 222**

Please produce the production sharing agreement on joint exploration and development of the Shafag-Asiman structure in the Azerbaijan sector of the Caspian Sea.

**Request for Production No. 223**

Please produce any documents or communications by your employees which include the words or phrases "jail," "prison," "penitentiary," "the pen" or any other euphemism for incarceration.

**Request for Production No. 224**

Please produce any documents or communications by your employees which include the words or phrases reference someone being killed, losing their life, or dying aboard a Gulf of Mexico oil or gas rig.

**Request for Production No. 225**

Please produce any documents or communications by your employees which reference to your not being in compliance with or being in violation of 30 C.F.R. 250 or any other applicable regulation.

**Request for Production No. 226**

Please produce any employee surveys for workers on oil rigs in the Gulf of Mexico.

**Request for Production No. 227**

Please produce any documents relating to demands and responses thereto for reimbursement of Oil Pollution Act response costs by you to Anadarko or MOEX.

**Request for Production No. 228**

Please produce all documents relating to demands and any responses thereto for contribution to the Gulf Coast Claims Facility or any predecessor interim payment scheme for Oil Pollution Act claimants by you to Anadarko or MOEX.

**Request for Production No. 229**

Please produce all documents related to your obligation of notice and reporting as the Macondo Well Operator under the Joint Operating Agreement to the non-operating interest owners.

**Request for Production No. 230**

Please produce any documents or communications, including invoices, payments, and operational information, between Anadarko or MOEX and you.

**Request for Production No. 231**

Please produce the following documents:

      (a)     Morning Reports or Daily Drilling Reports;

      (b)     International Association of Drilling Contractors;

      (c)     Casing Landing Details;

      (d)     Cementing Plan Details;

      (e)     Drilling Program; and

      (f)     Approved Drilling Permit.

**Interrogatory No. 43**

Please state whether or not your response to any request for admission served with these interrogatories and requests for production is an unqualified admission.  If not, for any response that is not an unqualified admission:

      (a)     State the number of the Request for Admission;

      (b)     State any facts upon which you base your response;

      (c)     Identify any persons who have knowledge of those facts; and

      (d)     Identify any documents and other tangible things that support your response and identify the person who has any document or thing

**Request for Admission No. 1**

Please admit or deny that prior to the incident you were in constructive possession of a copy of the 2001 Transocean Study on the use and effectiveness of blowout preventers.

**Request for Admission No. 2**

Please admit or deny you were aware before April 20, 2010 blowout preventers are not a fail safe.

**Request for Admission No. 3**

Please admit or deny that prior to the incident you were in constructive possession of Cameron's Engineering Bulletin (EB 891D) recommending battery banks be replaced after one year of operation or when the number of actuations exceeds 33 for that year, whichever comes first.

**Request for Admission No. 4**

Please admit or deny that prior to the incident you had in your constructive possession a copy of the Lloyd's Register Report.

**Request for Admission No. 5**

Please admit or deny you have in your constructive possession any document instructing employees not to use specific words or phrases in reports, including the following:

      (a)     Alarming;

      (b)     Appalling;

      (c)     Careless;

      (d)     Criminal;

      (e)     Dangerous;

      (f)     Deliberately;

      (g)     Deplorable;

      (h)     Dishonest;

(i)      Disorderly;

(j)      Fraudulent;

(k)      Gross neglect;

(l)      Incompetent;

(m)      Intentional;

(n)      Neglect;

(o)      Perjured;

(p)      Reckless;

(q)      Serious problem;

(r)      Terrible;

(s)      Violation; and

(t)      Willful misconduct.

**Request for Admission No. 6**

Please admit or deny you are a member of the American Petroleum Institute.

**Request for Admission No. 7**

Please admit or deny you are a member of the U. S. Chamber of Commerce.

**Request for Admission No. 8**

Please admit or deny you are a member of the Institute for Legal Reform.

**Request for Admission No. 9**

Please admit or deny you contribute capital to The Louisiana Record.

**Request for Admission No. 10**

Please admit or deny Robert Kaluza was an employee of yours at the time of the incident.

**Request for Admission No. 11**

Please admit or deny at all times on the date of the incident Robert Kaluza was acting in the course and scope of his employment with you.

**Request for Admission No. 12**

Please admit or deny Robert Kaluza was informed prior to the explosion approximately 21 centralizers were recommended to stabilize the well site.

**Request for Admission No. 13**

Please admit or deny Robert Kaluza ignored this advice and ordered the Macondo Well to be completed utilizing six centralizers.

**Request for Admission No. 14**

Please admit or deny Robert Kaluza made this decision at least in part to expedite the process of completing the Macondo Well.

**Request for Admission No. 15**

Please admit or deny Robert Kaluza was advised prior to the incident to utilize three cement plugs.

**Request for Admission No. 16**

Please admit or deny Robert Kaluza disregarded this advice and ordered the Macondo Well to be completed with two cement plugs.

**Request for Admission No. 17**

Please admit or deny Robert Kaluza was advised cement bond logs would need to be completed as part of the well completion process.

**Request for Admission No. 18**

Please admit or deny the cement bond logs would cost over $100,000.00.

**Request for Admission No. 19**

Please admit or deny Robert Kaluza ignored this advice and ordered the Macondo Well to be completed without performing the cement bond logs.

**Request for Admission No. 20**

Please admit or deny Robert Kaluza decided to forego the cement bond logs in part as a cost and time saving mechanism.

**Request for Admission No. 21**

Please admit or deny Robert Kaluza was employed at the time by you under a performance contract providing financial incentives and disincentives for work performed and costs associated with drilling the Macondo Well.

**Request for Admission No. 22**

Please admit or deny you have retained criminal counsel for Robert Kaluza.

**Request for Admission No. 23**

Please admit or deny you have compared individuals to pigs.

**Request for Admission No. 24**

Please admit or deny a BP engineer described the Macondo Well as a "nightmare well" prior to April 20, 2010.

**Request for Admission No. 25**

Please admit or deny you acknowledged "well-control" problems at the Macondo Well in March 2010.

**Request for Admission No. 26**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying, "what the hell did we do to deserve this."

**Request for Admission No. 27**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 18, 2010, "Yeah of course I am"– when asked if he sleeps at night.

**Request for Admission No. 28**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying, "I'd like my life back."

**Request for Admission No. 29**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 18, 2010, "I think the environmental impact of this disaster is likely to have been very, very modest."

**Request for Admission No. 30**

Please admit of deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 14, 2010, "The Gulf of Mexico is a very big ocean.  The amount of volume or oil and dispersant we are putting into it is tiny in relation to the total water volume."

**Request for Admission No. 31**

Please admit or deny BP official, Carl Henric Svanberg, was quoted in substance saying BP cares about the "small people."

**Request for Admission No. 32**

Please admit or deny other countries require simultaneous drilling of a relief well.

**Request for Admission No. 33**

Please admit or deny your executives working for then BP, P.L.C. Chief Executive Officer, Lord Browne, spent millions of pounds on champagne-fueled sex parties to help secure lucrative international oil contracts.

**Request for Admission No. 34**

Please admit or deny your executives spent £45,000,000 in expenses over just four months of negotiations with Azerbaijan's state oil company.

**Request for Admission No. 35**

Please admit or deny you recently signed a thirty (30) year deal with Azerbaijan for production of oil in and around the Caspian Sea.

**Request for Admission No. 36**

Please admit or deny your "Regional Oil Spill Response Plan – Gulf of Mexico," submitted to the United States government, outlined the sensitivities of marine mammals, including walruses, sea otters, and sea lions, to an oil spill in the Gulf of Mexico.

**Request for Admission No. 37**

Please admit or deny there are no walruses in the Gulf of Mexico.

**Request for Admission No. 38**

Please admit or deny there are no sea otters in the Gulf of Mexico.

**Request for Admission No. 39**

Please admit or deny there are no sea lions in the Gulf of Mexico.

**Request for Admission No. 40**

Please admit or deny you did not conduct a Regional Oil Spill Response Plan for the Gulf of Mexico.

**Request for Admission No. 41**

Please admit or deny you copied the Regional Oil Spill Response Plan- Alaska, and re-labeled it the Regional Oil Spill Response Plan- Gulf of Mexico.

**Request for Admission No. 42**

Please admit or deny you hired Transocean to drill the Macondo Well.

**Request for Admission No. 43**

Please admit or deny you had operational control at any time over the Macondo Well.

**Request for Admission No. 44**

Please admit or deny the Macondo Well project was approximately six months behind schedule on April 20, 2010.

**Request for Admission No. 45**

Please admit or deny the delay in completing the drilling of the Macondo Well was costing you more than $500,000 per day as of April 20, 2010.

**Request for Admission No. 46**

Please admit or deny in April of 2010, an explosion and fire destroyed the Deepwater Horizon Oil Rig, releasing millions of gallons of crude oil into the Gulf of Mexico.

**Request for Admission No. 47**

Please admit or deny hydrocarbons from the Macondo Well caused the explosion and demise of the Deepwater Horizon.

**Request for Admission No. 48**

Please admit or deny vapors emanating from the Macondo Well eventually reached the generators causing one or more generators to ignite the vapors.

**Request for Admission No. 49**

Please admit or deny the shoe track barriers did not isolate the hydrocarbons on April 20, 2010.

**Request for Admission No. 50**

Please admit or deny a diversion to the mud gas separator resulted in gas venting onto the rig on April 20, 2010.

**Request for Admission No. 51**

Please admit or deny on April 20, 2010, you did not act to control the well until hydrocarbons had passed through the blowout preventer and into the riser.

**Request for Admission No. 52**

Please admit or deny you failed to divert fluids, including hydrocarbons, exiting the riser to the overboard diverter line.

**Request for Admission No. 53**

Please admit or deny if fluids had been diverted overboard, rather than to the mud gas separator system, there may have been more time to respond, and the consequences of the accident may have been reduced.

**Request for Admission No. 54**

Please admit or deny you directed fluids, including hydrocarbons exiting the riser, to the Deepwater Horizon mud gas separator system.

**Request for Admission No. 55**

Please admit or deny all persons aboard the Deepwater Horizon at the time of the incident were seamen.

**Request for Admission No. 56**

Please admit or deny the Deepwater Horizon is designed to disengage and reposition in an area away from the Macondo Well in the event of an emergency.

**Request for Admission No. 57**

Please admit or deny at the time of the incident the Deepwater Horizon did not disengage or make any affirmative action to reposition after the explosion and fire.

**Request for Admission No. 58**

Please admit or deny the Macondo Well was designed with few barriers to gas flow.

**Request for Admission No. 59**

Please admit or deny the Macondo Well failed to utilize a sufficient number of "centralizers" to prevent channeling during the cementing process.

**Request for Admission No. 60**

Please admit or deny you failed to secure the wellhead on the Macondo Well with a lockdown sleeve before allowing pressure on the seal from below.

**Request for Admission No. 61**

Please admit or deny only two negative pressure tests of the Macondo Well casing's integrity were performed between April 1, 2010 and April 20, 2010.

**Request for Admission No. 62**

Please admit or deny the negative pressure tests of the Macondo Well casing's integrity performed between April 1, 2010 and April 20, 2010 did not satisfy your safety guidelines.

**Request for Admission No. 63**

Please admit or deny Pat O'Brien is an authority on downhole pressure issues.

**Request for Admission No. 64**

Please admit or deny Pat O'Brien was present on the Deepwater Horizon on the date of the incident.

**Request for Admission No. 65**

Please admit or deny Pat O'Brien overheard crew state the well was experiencing returns in a negative pressure test.

**Request for Admission No. 66**

Please admit or deny Pat O'Brien took no action when he overheard the crew state the well was experiencing returns on a negative pressure test.

**Request for Admission No. 67**

Please admit or deny Pat O'Brien had the authority to stop or avoid the consequences of the incident.

**Request for Admission No. 68**

Please admit or deny there were discussions held between you and Transocean to do additional testing on the blowout preventer prior to the incident in question.

**Request for Admission No. 69**

Please admit or deny there were discussions held to do additional testing on the blowout preventer by you and Halliburton prior to the incident in question.

**Request for Admission No. 70**

Please admit or deny there were discussions held to do additional testing on the blowout preventer by you and Schlumberger prior to the incident in question.

**Request for Admission No. 71**

Please admit or deny the maintenance records from 2001 to 2010 indicate during this period the automatic mode function batteries were changed at a frequency less than the manufacturer's recommendations.

**Request for Admission No. 72**

Please admit or deny the automatic mode function failed to activate the blind shear ram before the incident.

**Request for Admission No. 73**

Please admit or deny the automatic mode function failed to activate the blind shear ram during the incident.

**Request for Admission No. 74**

Please admit or deny the automatic mode function failed to activate the blind shear ram after the incident.

**Request for Admission No. 75**

Please admit or deny the blind sheer ram failed to seal at the time of the incident.

**Request for Admission No. 76**

Please admit or deny the blind sheer ram failed to seal after the incident.

**Request for Admission No. 77**

Please admit or deny the blowout preventer's backup system, called a "pod," lost functionality before the incident.

**Request for Admission No. 78**

Please admit or deny that you knew the blowout preventer's backup system, called a "pod," lost functionality before the incident.

**Request for Admission No. 79**

Please admit or deny that the blowout preventer's damaged pod backup system lost functionality or was not repaired before the incident.

**Request for Admission No. 80**

Please admit or deny there was a faulty solenoid in the yellow pod before the incident.

**Request for Admission No. 81**

Please admit or deny there was a faulty solenoid in the yellow pod during the incident.

**Request for Admission No. 82**

Please admit or deny there was a faulty solenoid in the yellow pod after the incident.

**Request for Admission No. 83**

Please admit or deny there were low charge batteries in the blue pod of the blowout preventer central before the incident.

**Request for Admission No. 84**

Please admit or deny there were low charge batteries in the blue pod of the blowout preventer central during the incident.

**Request for Admission No. 85**

Please admit or deny there were low charge batteries in the blue pod blowout preventer central after the incident.

**Request for Admission No. 86**

Please admit or deny during drilling operations rubber shavings were observed in mud from the downhole operations.

**Request for Admission No. 87**

Please admit or deny rubber does not exist in natural subsea strata.

**Request for Admission No. 88**

Please admit or deny the only source of rubber in the mud from downhole was the blowout preventer annular preventer.

**Request for Admission No. 89**

Please admit or deny within the 30 days prior to the April 20, 2010 explosion, the blowout preventer's annular preventer was damaged.

**Request for Admission No. 90**

Please admit or deny you knew the blowout preventer annular preventer was damaged before the incident.

**Request for Admission No. 91**

Please admit or deny drilling operations continued after you knew of the damage to the blowout preventer annular preventer.

**Request for Admission No. 92**

Please admit or deny you damaged the blowout preventer annular preventer.

**Request for Admission No. 93**

Please admit or deny that within the thirty (30) days prior to the incident, the blowout preventer's damaged annular preventer was not repaired.

**Request for Admission No. 94**

Please admit or deny the blowout preventer had a hydraulic leak before the incident.

**Request for Admission No. 95**

Please admit or deny you knew the blowout preventer had a hydraulic leak before the incident.

**Request for Admission No. 96**

Please admit or deny you did not repair the blowout preventer's hydraulic leak before the incident.

**Request for Admission No. 97**

Please admit or deny the blowout preventer's hydraulic leak caused the blowout preventer to lose functionality, and caused the incident.

**Request for Admission No. 98**

Please admit or deny the blowout preventer emergency mode did not seal the well at the time of the incident.

**Request for Admission No. 99**

Please admit or deny the blowout preventer emergency mode did not function before the incident.

**Request for Admission No. 100**

Please admit or deny the blowout preventer emergency mode did not function during the incident.

**Request for Admission No. 101**

Please admit or deny the blowout preventer emergency mode did not function after the incident.

**Request for Admission No. 102**

Please admit or deny the Macondo Well was not plumbed properly and the gasket seal was not sealed.

**Request for Admission No. 103**

Please admit or deny the telescope casing was not a fail safe.

**Request for Admission No. 104**

Please admit or deny the telescope casing was cheaper to utilize.

**Request for Admission No. 105**

Please admit or deny the telescope tubing is cheaper to use.

**Request for Admission No. 106**

Please admit or deny the shoe track device malfunctioned after repeated efforts to close at the time of the incident.

**Request for Admission No. 107**

Please admit or deny the shoe track device failed to close until approximately four times the normal pressure was exerted.

**Request for Admission No. 108**

Please admit or deny the Deepwater Horizon had an automated alarm system.

**Request for Admission No. 109**

Please admit or deny the automated alarm system was designed to shut down all end sources in the event of a vapor cloud explosion.

**Request for Admission No. 110**

Please admit or deny on the Deepwater Horizon the automated alarm system was switched to manual mode.

**Request for Admission No. 111**

Please admit or deny switching the automated alarm system to manual mode overrode the automatic heat source shut down process.

**Request for Admission No. 112**

Please admit or deny as a consequence of changing to automated mode, the generators on the Deepwater Horizon continued to run.

**Request for Admission No. 113**

Please admit or deny you were made aware of additional safety advisories from Minerals Management Service, now known as the Bureau of Ocean Energy Management, prior to the incident recommending back up systems for blowout preventers.

**Request for Admission No. 114**

Please admit or deny you were aware studies by the Minerals Management Service, now known as the Bureau of Ocean Energy Management, establishing blowout preventers could not shear larger sizes of pipes.

### Request for Admission No. 115

Please admit or deny blowout preventers utilized in this incident did not have an acoustic switch system as an additional safety device.

### Request for Admission No. 116

Please admit or deny you were aware acoustic safety systems were mandated on blowout preventers in some other countries prior to this incident.

### Request for Admission No. 117

Please admit or deny you were made lessees by Minerals Management Service, now known as the Bureau of Ocean Energy Management, in approximately 2001 of a safety alert recommending a back up system on offshore drilling blowout preventers.

### Request for Admission No. 118

Please admit or deny you were aware of studies, performed several years prior, by Minerals Management Service, now known as the Bureau of Ocean Energy Management, indicating shear rams were unable to cut through drill pipe.

### Request for Admission No. 119

Please admit or deny you were aware of studies of Minerals Management Service, now known as the Bureau of Ocean Energy Management, establishing the shears could not cut through the pipe joints or couplings.

### Request for Admission No. 120

Please admit or deny you support lobbying efforts to avoid a Minerals Management Service, now known as the Bureau of Ocean Energy Management, mandate to acquire an acoustic system on blowout preventers.

**Request for Admission No. 121**

Please admit or deny you supported efforts to avoid the mandated use of acoustic switch systems on blowout preventers in order to avoid additional costs.

**Request for Admission No. 122**

Please admit or deny there is no government oversight in the design, manufacturing or installation of blowout preventers.

**Request for Admission No. 123**

Please admit or deny the blowout preventer was equipped with a dead man switch which was designed to automatically engage the shear rams.

**Request for Admission No. 124**

Please admit or deny at the time of the incident the shear ram failed to engage.

**Request for Admission No. 125**

Please admit or deny there were weaknesses in design, testing, quality assurance, and risk assessment regarding cement pumped down the production casing and up into the wellbore annulus to prevent hydrocarbons from entering the wellbore from the reservoir immediately prior to the incident.

**Request for Admission No. 126**

Please admit or deny that you failed to run a cement bond log to evaluate the effectiveness of the cement job in the Macondo Well.

**Request for Admission No. 127**

Please admit or deny that you failed to circulate heavy drilling mud in the Macondo Well outside the casing before cementing it.

**Request for Admission No. 128**

Please admit or deny that you replaced heavy drilling mud in the Macondo Well with seawater immediately prior to April 20, 2010.

**Request for Admission No. 129**

Please admit or deny that you failed to circulate potentially gas-bearing drilling muds out of the Macondo Well.

**Request for Admission No. 130**

Please admit or deny removing the heavy mud with light sea water before closing off the well was a deviation of normal industry practices.

**Request for Admission No. 131**

Please admit or deny your agents or  employees  ordered the heavy mud to be replaced with light sea water before closing the well on the Macondo Well.

**Request for Admission No. 132**

Please admit or deny your agents  and employees  made this decision for cost saving reasons.

**Request for Admission No. 133**

Please admit or deny other personnel aboard the Deepwater Horizon opposed this decision but were overruled by one or more of your agents or employees.

**Request for Admission No. 134**

Please admit or deny this decision resulted in displacement of too much heavy mud resulting in gas and oil emanating back on the drilling platform.

**Request for Admission No. 135**

Please admit or deny you did not have an emergency evacuation vessel stationed within close proximity to the Deepwater Horizon on or about April 20, 2010.

**Request for Admission No. 136**

Please admit or deny the Damon B. Bankston was near the Deepwater Horizon at the time of the incident in order to transport drilling mud.

**Request for Admission No. 137**

Please admit or deny the Damon B. Bankston was not equipped as an emergency rescue vessel, nor was it hired to act as an emergency rescue vessel.

**Request for Admission No. 138**

Please admit or deny that more than a hundred rig workers were forced to stay about the Damon B. Bankston for more than 24 hours after the Deepwater Horizon exploded.

**Request for Admission No. 139**

Please admit or deny you made an intentional decision not to transport the rig workers to shore immediately after the incident.

**Request for Admission No. 140**

Please admit or deny you forced any of the rig workers to consent to drug testing before being transported to shore.

**Request for Admission No. 141**

Please admit or deny you utilized Corexit dispersant in the Deepwater Horizon Oil Spill when other non-toxic dispersants were available.

**Request for Admission No. 142**

Please admit or deny you had publicly acknowledged you would pay "all legitimate claims" related to the incident.

**Request for Admission No. 143**

Please admit or deny you have yet to define "legitimate claim."

**Request for Admission No. 144**

Please admit or deny you are a guarantor of the $20 billion for the Gulf Coast Claims Facility

Trust Fund.

**Request for Admission No. 145**

Please admit or deny you do not presently have reserves to cover the Gulf Coast Claims Facility

Trust Fund.

**Request for Admission No. 146**

Please admit or deny it is presently unknown whether you will have the funds to cover the Gulf

Coast Claims Facility Trust Fund.

**Request for Admission No. 147**

Please admit or deny you will receive a tax credit or deduction on the $20 billion for the Gulf

Coast Claims Facility Trust Fund.

**Request for Admission No. 148**

**[INTENTIONALLY LEFT BLANK]**

**Request for Admission No. 149**

Please admit or deny BP officials have asserted the Fifth Amendment protection against self

incrimination in lieu of testifying before any Congressional hearing.

**Request for Admission No. 150**

Please admit or deny you are not going to claim a credit or offset in the Vessels of Opportunity program for work performed against any other claim made against you for any harm or damage suffered from the casualty or ensuing oil spill.

**Request for Admission No. 151**

Please admit or deny you will not admit to claim a credit or offset of any damages asserted against you by any claimant from any monies paid to you by any services rendered in the oil containment program.

**Request for Admission No. 152**

Please admit or deny you will not file bankruptcy in an effort to avoid, stall, or mitigate any of your liabilities resulting from the casualty or oil spill.

**Request for Admission No. 153**

Please admit or deny the amount of oil released from the oil spill is unknown.

**Request for Admission No. 154**

Please admit or deny the amount of oil remaining in the Gulf of Mexico, released by the oil spill, is unknown.

**Request for Admission No. 155**

Please admit or deny the oil slick from the oil spill has migrated hundreds of miles.

**Request for Admission No. 156**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Texas.

**Request for Admission No. 157**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Louisiana.

**Request for Admission No. 158**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Alabama.

**Request for Admission No. 159**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Mississippi.

**Request for Admission No. 160**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Florida.

**Request for Admission No. 161**

Please admit or deny the effects of oil with dispersants upon larva shrimp are unknown.

**Request for Admission No. 162**

Please admit or deny the long term impact of the oil spill on the commercial fisheries is presently unknown.

**Request for Admission No. 163**

Please admit or deny tourism on many Gulf Coast destinations will be impacted for many years as a result of the incident.

**Request for Admission No. 164**

Please admit or deny individuals who lived along the Gulf Coast were exposed to Corexit in a manner in which they have suffered physical harm.

**Request for Admission No. 165**

Please admit or deny the incident resulted from a failure of your risk management policies.

**Request for Admission No. 166**

Please admit or deny the oil spill that resulted from the incident represents a failure of your risk management policies.

**Request for Admission No. 167**

Please admit or deny the incident was proximately caused by your gross negligence.

**Request for Admission No. 168**

Please admit or deny the incident was proximately caused by your willful misconduct.

**Request for Admission No. 169**

Please admit or deny the negligence of your company was a proximate cause of the injuries and loss of life of the rig workers of the Deepwater Horizon on April 20, 2010.

**Request for Admission No. 170**

Please admit or deny the incident was proximately caused by a violation of an applicable federal safety, construction or operation regulation.

**Request for Admission No. 171**

Please admit or deny you are liable for damages arising from the incident.

**Request for Admission No. 172**

Please admit or deny you or your company is responsible for the injuries that occurred to persons aboard the Deepwater Horizon at the time of the incident.

**Request for Admission No. 173**

Please admit or deny you are or your company is responsible for the fatalities that occurred as a result of the incident.

**Request for Admission No. 174**

Please admit or deny you are a responsible party under the Oil Pollution Act for the damages from the incident.

**Request for Admission No. 175**

Please admit or deny you will not assert any caps of liability under the Oil Pollution Act.

**Request for Admission No. 176**

Please admit or deny you are liable under the Florida Oil Spill Statute.

**Request for Admission No. 177**

Please admit or deny the Florida Oil Spill Statute mandates a responsible party reimburse all transactional costs, including accounting expenses and attorneys fees.

**Request for Admission No. 178**

Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of the facts of the incident.

**Request for Admission No. 179**

Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of the facts of your response to the incident.

**Request for Admission No. 180**

Please admit or deny your 10-Q report to the Securities and Exchange Commission effective June 30, 2010 provided a full and fair statement of your potential liabilities for the incident.

**Request for Admission No. 181**

Please admit or deny in August of 2001, a worker was killed at the BP Texas City refinery.

**Request for Admission No. 182**

Please admit or deny in March of 2004, an explosion occurred at the UU4 unit at the BP Texas City refinery.

**Request for Admission No. 183**

Please admit or deny in May of 2004, a worker fell to his death inside a tank at the BP Texas City refinery.

**Request for Admission No. 184**

Please admit or deny in September of 2004, two workers were killed and a third severely injured during a steam release at the BP Texas City refinery.

**Request for Admission No. 185**

Please admit or deny on March 23, 2005, 15 people were killed in an explosion at the BP Texas City refinery.

**Request for Admission No. 186**

Please admit or deny in May of 2005, a worker died at the BP Cherry Point refinery.

**Request for Admission No. 187**

Please admit or deny in July of 2005, there was an explosion and fire at the BP Texas City refinery.

**Request for Admission No. 188**

Please admit or deny in March of 2006, you were the operator of the corroded pipeline in Prudhoe Bay, Alaska, which ruptured and spilled oil.

**Request for Admission No. 189**

Please admit or deny in July of 2006, a worker died at the BP Texas City refinery.

**Request for Admission No. 190**

Please admit or deny in March of 2007, the United States Chemical Safety and Hazard Board concluded that the Texas City refinery disaster was caused by organization and safety deficiencies at all levels of your corporation.

**Request for Admission No. 191**

Please admit or deny in April of 2007, there was a chemical release at the BP Texas City refinery.

**Request for Admission No. 192**

Please admit or deny in June of 2007, a worker died by electrocution at the BP Texas City refinery.

**Request for Admission No. 193**

Please admit or deny in August of 2007, a diver was killed at the BP Cherry Point refinery.

**Request for Admission No. 194**

Please admit or deny in January of 2008, your employee died at the BP Texas City refinery.

**Request for Admission No. 195**

Please admit or deny the British Health and Safety Executive has cited you for safety violations in your offshore drilling programs more than forty (40) times in the previous ten years.

**Request for Admission No. 196**

Please admit or deny in January of 2001, you paid $10,000,000 to resolve allegations you violated the Clean Air Act at eight (8) of your refineries.

**Request for Admission No. 197**

Please admit or deny in January of 2001, the Minerals Management Service fined you $20,000 for a safety violation.

**Request for Admission No. 198**

Please admit or deny in February of 2001, the Minerals Management Service fined you $20,000 for workplace violations resulting in serious injury to an employee.

**Request for Admission No. 199**

Please admit or deny in September of 2001, the Occupational Safety and Health Administration fined you $141,000 after an explosion killed three workers at the BP Clanton Road facility.

**Request for Admission No. 200**

Please admit or deny in May of 2002, the Minerals Management Service fined you $23,000 for a workplace safety violation that resulted in a worker having his hand injured from an electrical shock.

**Request for Admission No. 201**

Please admit or deny in May of 2002, the Alaska Department of Environemntal Conservation required you to pay a $150,000 fine for pipeline leaks.

**Request for Admission No. 202**

Please admit or deny in September of 2002, the Minerals Management Service fined you $39,000 for missing 13 monthly tests of an oil low level sensor.

**Request for Admission No. 203**

Please admit or deny in January of 2003, you were fined $70,000 by the Minerals Management Service for a faulty fire water system.

**Request for Admission No. 204**

Please admit or deny in January of 2003, you were fined $80,000 by the Minerals Management Service for bypassing pressure safety relays.

**Request for Admission No. 205**

Please admit or deny in July of 2003, the Minerals Management Service fined you $20,000 because a subsurface safety valve was blocked out of service.

**Request for Admission No. 206**

Please admit or deny in February of 2004, the Minerals Management Service fined you $25,000 because you had bypassed the oil rigs gas detection systems.

**Request for Admission No. 207**

Please admit or deny in July of 2004, the Minerals Management Service fined you $190,000 for safety violations that resulted in a fire.

**Request for Admission No. 208**

Please admit or deny in September of 2005, the Occupational Safety and Health Administration cited you for 296 egregious willful violations associated with the March 23, 2005 explosion at the BP Texas City refinery and fined you $21,000,000 dollars.

**Request for Admission No. 209**

Please admit or deny in February of 2006, the Texas Commission on Environmental Quality fined you $130,625 for unlawful releases of harmful pollutants at the BP Texas City refinery.

**Request for Admission No. 210**

Please admit or deny in April of 2006, the Occupational Safety and Health Administration fined you $2,400,000 for safety violations at the BP Toledo, Ohio Refinery.

**Request for Admission No. 211**

Please admit or deny in October of 2006, the Minerals Management Service fined you $25,000 because operations were not performed in a safe and workmanlike manner.

**Request for Admission No. 212**

Please admit or deny in October of 2007, you agreed to pay a $50,000,000 fine for the Texas City refinery explosion.

**Request for Admission No. 213**

Please admit or deny in October of 2007, the Minerals Management Service fined you $41,000 for various safety violations.

**Request for Admission No. 214**

Please admit or deny in October of 2007, you paid a $20,000,000 fine related to two separate oil spills that occurred in the North Slope in March and August of 2006.

**Request for Admission No. 215**

Please admit or deny in October of 2009, the Occupational Safety and Health Administration fined you an additional $87,000,000 dollars for the failure to abate the violations from the March 23, 2005 explosion.

**Request for Admission No. 216**

Please admit or deny in December of 2009, a Texas jury returned a $100,000,000 award against BP on behalf of workers injured in a 2007 chemical release at the BP Texas City refinery.

**Request for Admission No. 217**

Please admit or deny in April of 2010, the Occupational Safety and Health Administration fined you $2,000,000 for willful safety violations at the BP Toledo, Ohio refinery.

**Request for Admission No. 218**

Please admit or deny you admitted felony violations of the Clean Air Act relating to the March 23, 2005 explosion at the BP Texas City refinery.

**Request for Admission No. 219**

Please admit or deny in October of 2007, you pled guilty to a felony violation of the Clean Air Act and agreed to serve three years of probation for the Texas City refinery explosion.

**Request for Admission No. 220**

Please admit or deny in October of 2007, you pled guilty to a criminal violation of the Clean Water Act related to two separate oil spills that occurred in the North Slope in March and August of 2006.

**Request for Admission No. 221**

Please admit or deny in April of 2009, a whistleblower filed a lawsuit against you for breaking federal laws and violating your own internal procedures by failing to maintain crucial safety and engineering documents related to the Atlantis Deepwater Drilling Rig.

Dated: November 1, 2010

Respectfully submitted,

<table>
<tr><td>

   /s/  Stephen J. Herman             

Stephen J. Herman, La. Bar No. 23129
HERMAN HERMAN KATZ & COTLAR LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com

*Plaintiffs Liaison Counsel*
*MDL 2179*

</td><td>

   /s/ James Parkerson Roy          

James Parkerson Roy, La. Bar No. 11511
DOMENGEAUX WRIGHT ROY & EDWARDS LLC
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com

*Plaintiffs Liaison Counsel*
*MDL2179*

</td></tr>
</table>

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL,<br>ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office:  (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com<br><br>Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office:  (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY  10003<br>Office:  (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail:  rgreenwald@weitzlux.com<br><br>Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS &<br>MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office:  (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail:  rhon.jones@beasleyallen.com |

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on November 1, 2010.

_____/s/   Stephen J. Herman and James Parkerson Roy_____